1  THOMAS J. NOLAN (Bar No. 66992)
   (tnolan@skadden.com)
2  JASON D. RUSSELL (Bar No. 169219)
   (jrussell@skadden.com)
3  MARINA V. BOGORAD (Bar No. 217524)
   (mbogorad@skadden.com)
4  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue, Suite 3400
5  Los Angeles, CA  90071
   Tel.: (213) 687-5000/Fax: (213) 687-5600
6
7  RAOUL D. KENNEDY (Bar No. 40892)
   (rkennedy@skadden.com)
8  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   4 Embarcadero Center, Suite 3800
9  San Francisco, CA  94111-5974
   Tel.: (415) 984-2698 / Fax: (415) 984-2626

10  Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and
    Isaac Larian

11                  UNITED STATES DISTRICT COURT

12                 CENTRAL DISTRICT OF CALIFORNIA

13                       EASTERN DIVISION

14
15  CARTER BRYANT, an individual,      )  CASE  NO.  CV  04-9049  SGL
                                       )  (RNBx)
                Plaintiff,             )
16                                     )  Consolidated  with  Case  No.  04-
         v.                            )  9059 and Case No. 05-2727
17                                     )
    MATTEL,    INC.,    a    Delaware  )  Honorable Stephen G. Larson
18  corporation,                       )
                                       )  OBJECTIONS AND RESPONSES
19                Defendant.           )  REGARDING THE MGA
                                       )  PARTIES' REVISED DISPUTED
20  ─────────────────────────────      )  [PROPOSED] SPECIAL VERDICT
                                       )  FORMS
21  AND CONSOLIDATED ACTIONS.          )
    ─────────────────────────────      )

22
23
24
25
26
27
28

## PHASE 1-A VERDICT FORMS

| No. | Special Verdict Form | Page |
|---|---|---|
| 1 | Proposed Form of Verdict No. 1 (Section 2(a) – Scope of Inventions Agreement) | 15 |
| 2 | Proposed Form of Verdict No. 2 (Breach of Section 2(a) of Inventions Agreement) | 19 |
| 3 | Proposed Form of Verdict No. __ (Breach of Section 3(a) Inventions Agreement) | 36 |
| 4 | Proposed Form of Verdict No. __ (Validity of Conflict of Interest Questionnaire) | 36 |
| 5 | Proposed Form of Verdict No. __ (Breach of Conflict of Interest Questionnaire) | 36 |
| 6 | Proposed Form of Verdict No. 3 (17 U.S.C. Section 204(a) and Cal. Civ. Code Section 988) | 37 |
| 7 | Proposed Form of Verdict No. 4 (Declaratory Relief) | 41 |
| 8 | Proposed Form of Verdict No. 5 (Fiduciary Duty) | 45 |
| 9 | Proposed Form of Verdict No. 6 (Liability for Aiding and Abetting Breach of Fiduciary Duty) | 50 |
| 10 | Proposed Form of Verdict No. 7 (Duty of Loyalty) | 62 |
| 11 | Proposed Form of Verdict No. 8 (Liability for Aiding and Abetting Breach of Duty of Loyalty) | 68 |
| 12 | Proposed Form of Verdict No. 9 (Liability for Intentional Interference with Contract) | 78 |
| 13 | Proposed Form of Verdict No. 10 (Conversion) | 92 |
| 14 | Proposed Form of Verdict No. __ (Statutory Unfair Competition) | 100 |

## PHASE 1-B VERDICT FORMS

| No. | Special Verdict Form | Page |
|---|---|---|
| 1 | Proposed Form of Verdict No. 1 (Copyright Ownership) | 101 |
| 2 | Proposed Form of Verdict No. 2 (Copyright Infringement) | 107 |
| 3 | Proposed Form of Verdict No. 3 (Copyright Infringement – Vicarious and Contributory Infringement) | 139 |
| 4 | Proposed Form of Verdict No. __ (Inventions Agreement Damages) | 144 |
| 5 | Proposed Form of Verdict No. __(Questionnaire Damages) | 144 |
| 6 | Proposed Form of Verdict No. __(Fiduciary Duty Damages) | 144 |

i

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| 7 | Proposed Form of Verdict No. 4 (Aiding and Abetting Breach of Fiduciary Duty Damages) | 145 |
|----|----|----|
| 8 | Proposed Form of Verdict No. __ (Breach of Duty of Loyalty Damages) | 148 |
| 9 | Proposed Form of Verdict No. 5 (Aiding and Abetting Breach of Duty of Loyalty Damages) | 149 |
| 10 | Proposed Form of Verdict No. 6 (Intentional Interference Damages) | 152 |
| 11 | Proposed Form of Verdict No. 7 (Conversion Damages) | 157 |

ii

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

# GENERAL OBJECTIONS

Each of the following General Objections is hereby incorporated in full into the objections to specific verdict forms and proposed findings set forth below:

1.      Mattel objects generally to defendants' proposal to present the jury with a 57-page, Byzantine set of argumentative and defense-slanted verdict forms. Defendants will be afforded an opportunity at the close of the evidence to present argument as to any issues properly presented to the jury.  There is no reason for defendants to attempt to re-argue the issues in their proposed verdict forms.  Yet defendants now propose to bombard the jury with forms containing every argument and addressing every sub-issue they believe is in the case, each framed as a special verdict question.  The result is a convoluted, over-length set of forms that appears calculated to require the jury unnecessarily to deliberate for weeks if they are to find for Mattel.

Overall, defendants unnecessarily propose that the jury be required to answer 216 questions in the course of its deliberations – 109 in Phase 1A and 107 in Phase 1B.  There is no reason to pose unnecessary questions to the jury that will prolong both deliberations and, presumably, argument on both sides about how to complete the form.  Reasonable and appropriate verdict forms in this case can easily be limited to a few dozen questions, not the over 200 questions proposed by the defense.  *See* Mattel's Proposed Verdict Forms.

2.      Mattel further objects to defendants' proposed verdict forms for Phase 1A on the ground that they improperly and confusingly ask the jury to make findings on issues the Court has already adjudicated in connection with the parties' motions for partial summary judgment and are contrary to the Court's findings.  *See, e.g.*, April 25, 2008 Order Granting in Part, Denying in Part, and Deferring in Part the Parties' Motions for Partial Summary Judgment ("April 25, 2008 Order"); June 7,

1

1  2008 Final Pre-Trial Conference Order for Phase 1 Trial ("Final Pre-Trial
2  Conference Order").

3       For example, with respect to the Inventions Agreement, the Court has already
4  found as a matter of law that the Inventions Agreement is a valid and enforceable
5  contract. *See* April 25, 2008 Order, at 4-5; Final Pre-Trial Conference Order, at 4.
6  The Court also found that (1) the Inventions Agreement is not ambiguous, (2) "the
7  original Bratz drawings clearly fall within the scope of the Inventions Agreement" to
8  the extent created during Bryant's employment with Mattel, and (3) the issue of
9  whether Bryant conceived or created Bratz works on his own time during that period
10  is irrelevant because Bryant cannot rely on *Labor Code* § 2870 because Bratz works
11  relate to Mattel's business. *See* April 25, 2008 Order, at 4-5; Final Pre-Trial
12  Conference Order, at 4. The Court also found that Bryant cannot defend his actions
13  as "lawful preparations to compete" because he "directly competed with Mattel by
14  entering into a contract with its competitor to produce a competing product while
15  still employed by Mattel." *Id.* at 5.

16       The Court also found as a matter of law that Bryant owed a fiduciary duty and
17  duty of loyalty to Mattel and that he breached his duty of loyalty when he "secretly
18  entered into a contract with Mattel's competitor, while still employed by Mattel, to
19  produce a line of fashion dolls to be marketed in direct competition with Mattel's
20  products." April 25, 2008 Order, at 5-6.

21       The Court also ruled that Mattel has satisfied at least two elements of its claim
22  against MGA and Larian for intentional interference with contractual relations.
23  April 25, 2008 Order, at 6; May 21, 2008 Order, at 9-10 (finding that the first
24  element [a valid contract] and fifth element [resulting damage] are met).

25       Finally, the Court found that almost all of defendants' affirmative defenses are
26  equitable in nature, and indicated that the Court (and not the jury) will rule on those
27  affirmative defenses—including abandonment, acquiescence, consent, estoppel,
28

1  failure to mitigate, laches, unclean hands and waiver—after trial.  April 25, 2008

2  Order, at 7.

3       3.     Mattel further objects to the defendants' proposed verdict forms to the

4  extent they continue to incorporate and seek findings as to affirmative defenses that

5  were arguably relevant only to claims against Carter Bryant (as acknowledged in

6  prior versions of defendants' proposed verdict forms, e.g., "On the claim of Carter

7  Bryant that Mattel has waived [acquiesced] [consented]. . .").  Carter Bryant is no

8  longer a defendant in this case, and defendants have not shown that they are entitled

9  to assert such affirmative defenses as to the claims against them.

10       4.     Mattel further objects to the defendants' proposed verdict forms on the

11  ground that the questions they pose deviate substantially from the model instructions

12  found in the Ninth Circuit Manual of Model Jury Instructions and CACI.

13       5.     Mattel further objects to the defendants' proposed verdict forms on the

14  ground that the questions they pose incorporate the same erroneous statements of law

15  that are set forth in the defendants' revised disputed proposed jury instructions.  *See*

16  Mattel's Objections to the Defendants' Revised Disputed Proposed Jury Instructions.

17  If these erroneous statements of law are included in the final verdict form, any

18  verdict would be subject to reversal on appeal.

19       6.     Mattel further objects to the defendants' proposed verdict forms on the

20  ground that they are overly complicated.  Not only do the forms contain 216

21  questions, but most of the questions refer the jury to some other section of the form

22  based on the response, thereby making it nearly impossible for the jury to determine

23  what it is really being asked to decide.  Defendants' voluminous, convoluted forms

24  would inevitably confuse the jury far more than they would provide assistance.  The

25  goal of any verdict form should be to assist the jury in rendering its verdict, not to

26  make the process as difficult and confusing as possible.

27       7.     Mattel further objects to the defendants' proposed verdict forms on the

28  ground that they are excessively fact-specific and argumentative, which makes them

3

1  hopelessly confusing and prejudicial.  Many of the "facts" assumed by the
2  defendants in their proposed verdict forms are argumentative, biased and inaccurate.
3  The defendants make numerous assumptions in their proposed verdict forms
4  regarding what Mattel claims, many of which are irrelevant and unnecessary the
5  causes of action at issue in this case.  For example, defendants ask the jury to make
6  numerous findings regarding whether Bryant breached his contracts with Mattel,
7  even though Mattel need not prove actual breach to recover against defendants for
8  intentional interference with contractual relations.

9      8.    Mattel further objects to the defendants' proposed verdict forms on the
10  ground that they consistently misstate the applicable burden of proof, or
11  misleadingly describe the applicable burden of proof.  For example, apparently not
12  content with the preponderance of the evidence standard set forth in the model
13  instructions, defendants consistently use the phrase "fair preponderance of the
14  credible evidence" in their Phase 1B verdict forms.  There is no basis for defendants
15  to attempt to alter the standard, accepted language applicable to the burden of proof,
16  by adding extra adjectives or otherwise.

17     9.    Mattel further objects to the defendants' proposed verdict forms on the
18  ground that they are materially biased toward the defendants.

19     10.   Mattel further objects to the defendants' proposed verdict forms on the
20  ground that many of the questions posed to the jury are unintelligible.  *E.g.*, "With
21  respect to whether Mattel's interpretation of Section 2(a) of the Inventions
22  Agreement falls within the reasonable expectations of the weaker party (Carter
23  Bryant), we find:  yes or no."  A reasonable juror would not understand how to
24  respond to such a question, and other similarly unintelligible questions are found
25  throughout the proposed verdict forms.

26     11.   Mattel further objects to defendants' proposed verdict forms on the
27  ground that defendants' instructions are inconsistent with applicable legal standards,
28  as set forth in the briefing on Mattel's motion for partial summary judgment, Mattel's

4

motions in limine and Mattel's proposed jury instructions, which are hereby incorporated herein.

12.   Mattel incorporates by reference herein, each of the objections that it has made or may make to the jury instructions proposed by MGA to the extent that they relate to the same subject matter addressed by those objections.

13.   Mattel further objects to defendants' proposed verdict forms insofar as they use the pejorative term "sketches" when referring to Carter Bryant's drawings and designs.

14.   Based on the foregoing General Objections, Mattel respectfully requests that the Court reject defendants' proposed verdict forms in their entirety.  To the extent the Court intends to adopt any portion of defendants' proposed verdict forms, Mattel reserves the right to assert additional General and Specific Objections to defendants' proposed forms.

5

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

## RESPONSE TO GENERAL OBJECTIONS

1.    As discussed at length in MGA Parties' Objections to Mattel's Proposed Verdict Forms set forth below, Mattel fundamentally misunderstands the purpose of a special verdict form.  Fed. R. Civ. P. 49(a)(1), requires that the jury return, "a special verdict in the form of a special written finding on <u>each issue of fact</u>." (emphasis added).  This Court's Order Regarding Pretrial Deadlines dated March 11, 2008 specifically states that the parties are to file "special verdict forms." <u>See</u> Order Regarding Pretrial Deadlines ¶ 2.  Mattel now objects on the grounds that MGA Parties followed the Court's instruction, while Mattel turned in verdict forms that call for the jury's conclusions on law.

The purpose of a special verdict is to concentrate the jury on its fact-finding role.  <u>See</u> <u>Zhang v. Am. Gem. Seafoods, Inc.</u>, 339 F.3d 1020, 1031 (9th Cir. 2003) (discussing differences between special verdicts and general verdicts and noting that "special verdicts 'compel the jury to focus exclusively on its fact-finding role'") (quoting <u>Floyd v. Laws</u>, 929 F.2d 1390, 1395 (9th Cir. 1991)).  Indeed, particularly where cases are complex and fact-intensive, special verdict forms provide the jurors with assistance in framing their understanding of the issue.  For example, in a First Amendment case, <u>Tavoulareas v. Piro</u>, then Circuit Court Judge Ruth Bader Ginsburg lauded the use of detailed special verdict forms, noting that they "impel the jurors to advert to the framework within which the judge has instructed them to consider the case and could assist them to hold the distinct legal questions in clear and separate view" and "thus may promote both comprehension and actual application of the governing … law." 817 F.2d 762, 809 (D.C. Cir. 1987) (Ginsburg, J., concurring).  She described with approval the use of "a jury verdict form which 'took the jury step by step through each of the theories on which plaintiff relied.'" <u>Id.</u> at 809 n.4 (internal citations omitted).

Mattel objects on the grounds that MGA Parties' Proposed Verdict Forms would require the jury to answer a large number of questions.  This is an extremely

1  complicated proceeding, largely because Mattel has chosen to assert numerous legal

2  claims.  Mattel now expresses concern that it will take the jury a long time to

3  complete the forms proposed.  Evidently, Mattel's preferred alternative is to present

4  cursory verdict forms that fail to cover substantive issues and which would have the

5  jury make conclusions of law without any findings of fact.  As discussed above, this

6  is not the purpose of a special verdict form.  Using Mattel's proposed verdict forms

7  would all but guarantee a drawn-out appeals process, as the parties and the Court try

8  to sort out the jury's findings of fact from its conclusions of law.

9      2.    Mattel's objection reflect a number of mischaracterizations of the

10  Court's rulings.

11      Mattel overstates the Court's ruling with respect to the Inventions Agreement.

12  The Court found as a matter of law that the Inventions Agreement was a valid and

13  enforceable contract and that it creates certain rights for Mattel over "any Bratz-

14  related 'inventions' (including any designs, improvements, ideas, concepts and

15  copyrightable subject matter" that Bryant "created during the period of his

16  employment with Mattel") and rejected certain defenses (Labor Code § 2870 and

17  preparations to compete). Final Pre-Trial Conference Order at 4.  The MGA Parties'

18  revised jury instructions reflect this ruling.  However, that is where the ruling ends,

19  and it leaves much for the jury to decide.  For example, as the Court noted, its

20  holding was contingent on "the resolution of certain (as yet unresolved) issues of

21  timing of creation and/or alteration."  April 25, 2008 Order at 4.  In order to decide

22  the timing of creation, the jury must first decide what sorts of acts count as

23  "creation" in the context of this contract.  This will require the jury to interpret the

24  contract.  The jury will also have to decide the scope of the term "inventions" –

25  while the Court has laid out in general terms what is included, it will be for the jury

26  to look at an individual purported "invention" and determine whether that particular

27  item falls within the scope.  Indeed, the Court has already observed the complexity

28  of this process, noting that "it is uncontroverted that four drawings (each with a color

1   and black and white version) of dolls in evening wear were created by Bryant during

2   the period of his employment with Mattel", yet "the scope of the rights that may be

3   assigned to Mattel under the Inventions Agreement is unclear in light of the larger

4   disputed factual issue regarding the remaining Bratz drawings." May 21, 2008 Order

5   at 8. As such, instructions on the interpretation of contractual terms, and any other

6   instructions that aid the jury in applying the terms of the Inventions Agreement to

7   specific pieces of evidence, continue to be important.

8       Mattel's characterization of the Court's holding on Bryant's fiduciary duty and

9   the duty of loyalty is accurate as far as it goes but also excludes some critical

10  explanation. The Court held that Bryant owed Mattel a fiduciary duty "by virtue of

11  the language set forth in ¶ 1(a) of the Inventions Agreement." April 25, 2008 Order

12  at 5. However, the Court's ruling on that duty was limited to Bryant's duty vis-à-vis

13  Mattel's confidential information. May 21, 2008 Order at 4. Thus, the jurors must

14  still consider both the proper scope of that duty and then determine whether it applies.

15  Likewise, to determine the harm attributable to either a breach of loyalty or a breach

16  of fiduciary duty, the jury must first be instructed on the nature of each duty and each

17  breach.

18      Mattel also mischaracterizes the Court's rulings on its intentional interference

19  claim. Mattel had not moved for summary judgment on its claim for intentional

20  interference with contract. The Court was explicit that it only ruled on the MGA

21  Parties' motion for partial summary judgment in connection with that claim (see

22  April 25, 2008 Order at 6) and recited those elements that the were undisputed for

23  purposes of summary judgment (id. at 6-7). This recitation, however, was not a

24  holding for Mattel as a matter of law, because Mattel had not even made a motion on

25  this claim. Rather, the Court's ruling was only to grant the MGA Parties' motion on

26  this claim to the extent it was "based on Mattel's rights to Bratz." April 25, 2008

27  Order at 2; Final Pre-Trial Conference Order at 5.

28      Finally, Mattel mischaracterizes the import of the Court's decision to defer

8

1  ruling on certain affirmative defenses.  While the Court ultimately may rule on the

2  effect of these defenses, it is apparent from the Court's Order that it expects the jury

3  to make the factual determinations underlying its decision.  See Final Pre-Trial

4  Conference Order at 8.  Indeed, in its Order, the Court noted that factual issues

5  concerning the bona fide purchaser defense such as good faith and notice would be

6  resolved at trial, such that the Court would be left only with legal issues. (See April

7  25, 2008 Order at 8.) The factual determinations supporting each of the other

8  affirmative defenses should likewise be placed before the jury.  See, e.g., Bickel v.

9  City of Piedmont, 16 Cal. 4th 1040, 1052 (1997) ("Whether there has been a waiver

10  is a question of fact."), abrogated on other grounds, DeBerard Props., Ltd. v. Lim, 20

11  Cal. 4th 659, 668 (1999); Posey v. Leavitt, 229 Cal. App. 3d 1236, 1244 n.4 (1991)

12  ("[F]actual issues raised by the consent defense would be properly triable by the

13  jury…."); Elmore v. Oak Valley Hosp. Dist., 204 Cal. App. 3d 716, 724 (1988)

14  ("The existence of estoppel is a question of fact for the trial court."); Muraoka v.

15  Budget Rent-a-Car, 160 Cal. App. 3d 107, 117 (1984) (holding trial court erred in

16  granting defendant's demurrer stating, "[the estoppel question] is one of fact which

17  should be left for resolution by a jury and not determined upon general demurrer");

18  see also Posner v. Grunwald-Marx, Inc., 56 Cal. 2d 169, 189 (1961) ("Whether there

19  has been a waiver is usually regarded as a question of fact to be determined by the

20  jury, or by the trial court if there is no jury.") (internal quotations and citations

21  omitted).

22          3.      Mattel's objection that the certain defenses applied only to Bryant's

23  claims and should thus be eliminated is meritless.  While Bryant is no longer a party

24  to this lawsuit, the effect of the contracts between Bryant and Mattel is central to this

25  lawsuit.  Thus, if Mattel's actions somehow undermined its contractual relationship

26  with Bryant, its claims based on that contractual relationship must also fail.

27  Moreover, the existence of affirmative defenses that negate or limit the contractual

28  relationship may in turn undermine Mattel's claims that the MGA Parties intended to

9

1   cause harm to that relationship.   For these reasons, this issues continue to be

2   appropriate.

3         4.     Mattel does not explain how MGA Parties' Proposed Verdict Forms

4   "deviate substantially" from the model instructions.   In any event, the parties are

5   permitted to modify the language of any model instruction to make it less confusing

6   or more appropriate in the context of a particular case.   See McDowell v. Calderon,

7   130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit

8   Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not

9   debated and hammered out by legislators, but by ad hoc committees of lawyers and

10  judges.   Jury instructions do not come down from any mountain or rise up from any

11  sea.   Their precise wording, although extremely useful, is not blessed with any

12  special precedential or binding authority.   This description does not denigrate their

13  value, it simply places them in the niche where they belong.").   Indeed, modification

14  is sometimes necessary to make an instruction accurate and complete.   See, e.g.,

15  United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving

16  modification of Ninth Circuit model instruction to include additional elements,

17  noting that "[h]ad the district court merely read the model jury instruction, it would

18  have committed plain error, since that instruction makes no reference whatsoever to

19  knowledge or intent."). The MGA Parties' responses to specific objections are below.

20        5.     As discussed in detail below, MGA Parties' Proposed Verdict Forms

21  are entirely proper and suitable for use by the jury.

22        6.     Mattel's sixth general objection confuses length with complication.

23  While the verdict forms proposed by the MGA Parties are not necessarily compact,

24  their length is necessitated by the significant number of factual findings the jury must

25  make in this highly complicated case.   Actually, the forms are easy to follow.   For

26  each question the jury is required to make a single finding of fact.   This is a far

27  simpler format than, for example, asking "Does Mattel own any of the Bratz works

28  Mattel claims it owns pursuant to the Inventions Agreement?" as a yes-or-no

10

1   question.  (See Mattel Inc.'s Proposed Special Verdict Forms – Special Verdict Form

2   for Phase 1(a) No. 2.)  Moreover, it is the format required in a special verdict form.

3   Fed. R. Civ. P. 49(a)(1), requires that the jury return, "a special verdict in the form of

4   a special written finding on each issue of fact" (emphasis added).

5        At every point throughout the verdict forms proposed by the MGA Parties, the

6   jury is given instructions on how to proceed.  References to other sections are present

7   to prevent the jury from making inconsistent findings.  Moreover, the instruction "(If

8   no, please proceed to Verdict Form No. 10)" is hardly too complicated for the jury to

9   follow.  (See infra (MGA Parties Proposed Form of Verdict No. 8 (Fiduciary Duty)).)

10  The MGA Parties' Proposed Verdict Forms are the simplest and easiest way to walk

11  the jury through the numerous findings of facts required to resolve Mattel's

12  innumerable claims.

13        See also infra, Response to General Objection 8.

14        7.    Mattel's objection that MGA Parties' Proposed Verdict Forms are

15  "excessively fact-specific" is not a valid objection to special verdict forms.  Fed. R.

16  Civ. P. 49(a)(1), requires that the jury return, "a special verdict in the form of a

17  special written finding on each issue of fact." (emphasis added).  MGA Parties'

18  Proposed Special Verdict Forms are fact specific because that is precisely what the

19  Federal Rules of Civil Procedure require.  Mattel has offered no explanation for why

20  the proposed verdict forms are confusing other than the fact that there are a large

21  number of questions.  At the same time, Mattel had no reservations about bringing a

22  large number of claims.

23  Moreover, Mattel's claim that there is no need to ask questions regarding breach

24  is inaccurate.   While Mattel is correct that the fourth element of a claim for

25  intentional interference with contractual relations is sometimes phrased "breach or

26  disruption," it is quite apparent that Mattel has not brought this claim on the basis of

27  a purported disruption, but rather a purported actual breach.  Indeed, in denying

28  MGA motion's for summary judgment on this claim, the Court noted that "as set

11

1  forth above, Mattel has also raised triable issues of fact regarding its claim for breach

2  of contract, the fourth element." May 21, 2008 Order at 9. Put simply, Mattel is not

3  contending Bryant took a leave of absence – he left. The relationship was not

4  "disrupted," it was terminated. Thus, Mattel will not succeed in its claim unless it

5  shows a breach. See Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc., 7

6  F.3d 1434, 1442 (9th Cir. 1993) ("To recover for intentional interference with a

7  contractual relationship, Summit must show '(1) that [it] had a valid and existing

8  contract, (2) that [Victor] had knowledge of the contract and intended to induce its

9  breach, (3) that the contract was in fact breached by [ZMTW], (4) that the breach

10 was caused by [Victor's] unjustified and wrongful conduct, and (5) that [Summit] has

11 suffered damage.'") (emphasis added); see also Anlin Industries, Inc. v. Burgess,

12 2006 WL 2308476, at *3 (E.D. Cal. Aug. 9, 2006) ("To state a cause of action for

13 interference with contract under California law, a plaintiff must allege (1) a valid

14 contract between the plaintiff and a third party; (2) that the defendant had knowledge

15 of this contract and intended to induce its breach; (3) that the contract was breached;

16 (4) that the breach was caused by the defendant's wrongful and unjustified conduct;

17 and (5) that the plaintiff suffered damage.") (emphasis added); Farmers Ins.

18 Exchange v. State of California, 175 Cal. App. 3d 494, 506 (1985) ("The elements of

19 this tort [for intentional interference with contract] include: 1) The existence of a

20 valid contract; 2) knowledge of the contract on the part of defendant and intent to

21 induce its breach; 3) breach of the contract by the third party; 4) proximate cause; 5)

22 damages.") (emphasis added).

23    8.    Mattel objects that the MGA Parties' use of the words "fair" and

24 "credible" somehow prejudices the jury against them. Specifically, Mattel objects to

25 the phrase "fair preponderance of credible evidence" instead of "preponderance of

26 evidence." However, the phrase "fair preponderance of credible evidence" is not an

27 original creation by the MGA Parties and is used to signify the same standard. See,

28 e.g., Sogem-Afrimet, Inc. v. M/V Ikan Selayang,  951 F. Supp. 429, 441 (S.D.N.Y.

12

1   1996) ("Upon examination, the fair preponderance of credible evidence supports

2   plaintiff's allegation that it delivered the cargo to defendant in good condition and

3   received damaged goods at outturn. Accordingly, the court finds that plaintiff has

4   sustained its burden of proving its prima facie case."), aff'd, 122 F.3d 1057 (2d Cir.

5   1997). It is simply more descriptive. Mattel's continual insistence that "less is more"

6   in the face of a long and complex trial with myriad legal terms and concepts is, in the

7   MGA Parties view, misguided.

8        9.     Mattel has not explained how MGA Parties' Proposed Verdict Forms

9   are "materially biased." Mattel's objections to individual forms are addressed below.

10        10.    Mattel has not explained why the verdict form question, "With respect

11   to whether Mattel's interpretation of Section 2(a) of the Inventions Agreement falls

12   within the reasonable expectations of the weaker party (Carter Bryant), we find[,]" is

13   unintelligible. The format is simple and is used throughout the instructions: it tells

14   the jury to consider a specific contention ("with respect to"), it tells the jury to

15   consider whether the contention is accurate or not ("whether"), it identifies the

16   subject of the contention ("Mattel's interpretation of Section 2(a) of the Inventions

17   Agreement"), and it identifies the substance of the contention ("falls within the

18   reasonable expectations of the weaker party (Carter Bryant)"). It then asks what the

19   jury finds. If the form asked "With respect to whether Driver A ran the red light, we

20   find: [] yes or [] no," Mattel would certainly not have objected that it was overly

21   complex or unintelligible. The subject matter of this litigation, however, is decidedly

22   complicated, and it is unavoidable that the verdict forms will reflect this fact. That

23   does not mean, as Mattel proposes, that the form should avoid this complexity by

24   simply ignoring it.

25        11.    As discussed in detail below, MGA Parties' Proposed Verdict Forms

26   are entirely proper and suitable for use by the jury.

27

28

12.   MGA Parties responded to Mattel's Objections to MGA Parties' Proposed Jury Instructions in their [Proposed] Disputed Jury Instructions, concurrently filed herewith.

13.   The term "sketch" is not pejorative or derogatory and Mattel has not cited anything to support its contention that the term is "pejorative."  Mattel's own expert used the term repeatedly in reference to Bryant's works at issue here.  (See, e.g., Loetz Report, at 2 ("When a designer has an idea, he sketches it out."); id. at 4 ("In Carter Bryant's sketches, the Bratz figures are posed ...."); id. at 6 ("The Bratz sketches were drawn ...."); id. at 9 ("[i]t is the industry standard when creating a new toy ... to have the original artist draw sketches");  Loetz Depo. at 83:6-13 ("Q. Does the term 'sketch' versus 'drawing' have any distinct meaning to you?  A.  Not really ....  I don't think there's any real distinction and I think they're used interchangeably.").)

14.   As discussed in detail below, MGA Parties' Proposed Verdict Forms are entirely proper and suitable for use by the jury.

14

**PHASE 1-A VERDICT FORMS**

## -REVISED-

**Proposed Form of Verdict No. 1 (Section 2(a) – Scope of Inventions Agreement)**

  Regarding the interpretation of the applicability of Section 2(a) of the January 4, 1999 Inventions Agreement between Mattel and Bryant, we, the jury, find as follows:

   (a) With respect to Mattel's claim that Carter Bryant conceived the BRATZ concept between 1/4/99 and 10/19/00, we find:

     ☐ yes or

     ☐ no.  (If no, please proceed to Verdict Form No. 3)

   (b) With respect to Mattel's claim that Carter Bryant reduced to practice his sketches of the BRATZ concept between 1/4/99 and 10/19/00, we find:

     ☐ yes or

     ☐ no.  (If no, please proceed to Verdict Form No. 3)

**Mattel's Objections**

Mattel objects to defendants' proposed verdict form as follows:

Defendants proposed verdict forms pose numerous questions that are not consistent with defendants' own proposed jury instructions.  The detailed findings offered by defendants are not required and will not assist the jury.  Defendants are using the special verdict form as a vehicle to emphasize their arguments.

Additionally, defendants' proposed form is contrary to the Court's April 25, 2008 Order.  The Court has already ruled that defendants cannot rely on *Labor Code* § 2870.  Accordingly, "the factual question of whether Bryant work on [the Bratz works] on his own time, rather than during his working hours at Mattel, is not relevant."  April 25, 2008 Order, at 5.  Moreover, the Court has already ruled that Mattel owns all Bratz works "created" by Bryant while employed by Mattel.  *Id.*; June 7, 2008 Final Pre-Trial Conference Order for Phase 1 Trial, at 4.  Hence, defendants' question about Bryant having "reduced to practice his sketches" is misplaced.

**MGA Parties' Response**

The MGA Parties' Proposed Verdict Form is proper.   Mattel offers no explanation as to the alleged inconsistencies between MGA Parties' Proposed Verdict Form and Proposed Jury Instructions.  Mattel contends that detailed findings of fact are not required.  As discussed in the responses to Mattel's general objections, this amounts to a fundamental misunderstanding of purpose of a special verdict form. Moreover, it is not at all clear why asking the jury to answer four factual questions, which go directly to the heart of the critical issues in this case, is not required.  The MGA Parties fail to understand how querying the jury whether the term "inventions" in the Inventions Agreement applies to Bryant's sketches is confusing.  Mattel does not explain why the jury should not determine whether Mattel's inventions agreement applies to the BRATZ drawings, as that is one of the primary issues in this case.

Mattel overstates the Court's ruling with respect to the Inventions Agreement. The Court found as a matter of law that the inventions agreement was a valid and enforceable contract and that it creates certain rights for Mattel over "any Bratz-related 'inventions' (including any designs, improvements, ideas, concepts and copyrightable subject matter" that Bryant "created during the period of his employment with Mattel") and rejected certain defenses (Labor Code § 2870 and preparations to compete). Final Pre-Trial Conference Order at 4.  The MGA Parties intended to remove all questions deriving from Labor Code § 2870 and have corrected this error.  The MGA Parties' revised jury instructions reflect this ruling. However, that is where the ruling ends, and it leaves much for the jury to decide. For example, as the court noted, its holding was contingent on "the resolution of certain (as yet unresolved) issues of timing of creation and/or alteration."  April 25, 2008 Order at 4.  In order to decide the timing of creation, the jury must first decide what sorts of acts count as "creation" in the context of this contract.  This will require the jury to interpret the contract.  The jury will also have to decide the scope

17

1  of the term "inventions" – while the Court has laid out in general terms what is
2  included, it will be for the jury to look at an individual purported "invention" and
3  determine whether that particular item falls within the scope.  Indeed, the Court has
4  already observed the complexity of this process, noting that "it is uncontroverted that
5  four drawings (each with a color and black and white version) of dolls in evening
6  wear were created by Bryant during the period of his employment with Mattel" yet
7  "the scope of the rights that may be assigned to Mattel under the Inventions
8  Agreement is unclear in light of the larger disputed factual issue regarding the
9  remaining Bratz drawings."  May 21, 2008 Order at 8 (emphasis added).  Thus, the
10  Proposed Verdict Form regarding the scope of the agreement is appropriate.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

1    **-REVISED-**

2    **Proposed Form of Verdict No. 2 (Breach of Section 2(a) of Inventions**

3    **Agreement)**

4    *Regarding the breach of Section 2(a) of the January 4, 1999 Inventions*

5    *Agreement between Mattel and Bryant, we, the jury, find as follows:*

6    (a)    With respect to Mattel's claim that it did all, or substantially all, of the

7    significant things that the contract required it to do, we find:

8    ☐ yes or

9    ☐ no. (If no, please proceed to Verdict Form No. 3)

10    (b)    With respect to Bryant's claim that all the conditions by the contract for

11    Carter Bryant's performance had occurred, we find:

12    ☐ yes or

13    ☐ no. (If no, please proceed to Verdict Form No. 3)

14    (c)    With respect to Mattel's claim that Carter Bryant did something that the

15    contract prohibited him from doing, we find:

16    ☐ yes or

17    ☐ no. (If no, please proceed to Verdict Form No. 3)

18    (d)    With respect to Mattel's claim that Mattel was harmed by that failure,

19    we find:

20    ☐ yes or

21    ☐ no. (If no, please proceed to Verdict Form No. 3)

22

23    ***If you have found that Carter Bryant breached the Inventions Agreement,,***

24    ***next consider whether Mattel should be barred from recovery on any of the***

25    ***following grounds:***

26

27    *On the claim that Mattel is estopped from asserting claims arising out of*

28    *Section 2(a) of Carter Bryant's Inventions Agreement, we, the jury, find as follows:*

19

(e)  With respect to whether Mattel made a representation of fact, at any
     relevant time, by its actions, silence or omission, we find:
     ☐ yes or
     ☐ no. (If no, please proceed to 2(h))

(f)  With respect to whether Mattel had knowledge that its employees
     moonlighted or created independent artistic works during their
     employment , we find:
     ☐ yes or
     ☐ no. (If no, please proceed to 2(h))

(g)  With respect to whether Carter Bryant was ignorant of the fact that
     Mattel intended to make claims to independently created artistic works
     or works created while moonlighting, we find:
     ☐ yes or
     ☐ no. (If no, please proceed to 2(h))

(h)  With respect to whether Carter Bryant reasonably relied on Mattel's
     silence to his detriment, we find:
     ☐ yes or
     ☐ no. (If no, please proceed to 2(h))


*On the claim that Mattel has acquiesced, at any relevant time, to its employees moonlighting or independent creation of artistic works, we, the jury, find as follows:*

(i)  With respect to whether Mattel's acts or words, silence or inaction,
     would be understood by a reasonable person as intended to indicate that
     the conduct is allowed, we find:
     ☐ yes or
     ☐ no. (If no, please proceed to 2(k))

1    (j)    With respect to whether Carter Bryant understood Mattel's acts or

2           words, silence or inaction to indicate that it allowed its employees to

3           moonlight or to independently create artistic works, we find:

4           ☐ yes or

5           ☐ no. (If no, please proceed to 2(k))

6

7    *On the claim that Mattel has consented, at any relevant time, to its employees*

8    *moonlighting or independent artistic work, we, the jury, find as follows*:

9    (k)    With respect to whether Mattel's acts or words, silence or inaction,

10          would be understood by a reasonable person as intended to indicate

11          consent to moonlighting or independent artistic work, we find:

12          ☐ yes or

13          ☐ no. (If no, please proceed to 2(m))

14   (l)    With respect to whether Carter Bryant understood Mattel's acts or

15          words, silence or inaction to indicate consent to moonlighting or

16          independent artistic work, we find:

17          ☐ yes or

18          ☐ no. (If no, please proceed to 2(m))

19

20   *On the claim that Mattel has waived any right to seek damages on its claims*

21   *for breach of Section 2(a) of the Inventions Agreement, we, the jury, find as follows*:

22   (m)    With respect to whether Mattel was aware of its violations of its

23          employment agreements, we find:

24          ☐ yes or

25          ☐ no.

26

27

28

21

1      (n)     With respect to whether Mattel indicated, by its words, actions or

2              silence that it did not intend to enforce section 2(a) of the Inventions

3              Agreement, we find:

4              ☐ yes or

5              ☐ no.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

1 **Mattel's Objections**

2

3      Mattel objects to defendants' proposed verdict form as follows:

4      (a)-(m)      The detailed findings required by defendants' proposed verdict

5 forms are not required as a matter of law and will not assist the jury.  For example,

6 defendants' proposed questions regarding breach of the Inventions Agreement are

7 unnecessary and confusing.  Mattel need not prove that Bryant actually breached his

8 contracts to recover against defendants for intentional interference with contractual

9 relations.  *See* CACI No. 2201.  Moreover, all of the "affirmative defenses" raised by

10 defendants in this proposed form of verdict are inapplicable and misleading.

11 Defendants previously recognized that these are claims of Carter Bryant, who is no

12 longer a defendant in this action.  Accordingly, there is no reason to ask the jury to

13 make findings regarding Bryant's previous affirmative defenses, which are not

14 relevant to Mattel's claims against defendants for intentional interference with

15 contractual relations.  Defendants are duplicating questions and using inconsistent

16 terminology that will confuse and mislead the jury.  Defendants are slanting (and

17 multiplying) the questions posed to favor defendants' theories and arguments.

18      Specifically:

19      (b)      This proposed question is confusing to the extent it refers to "Bryant's

20 claim" because Bryant is no longer a defendant in this case.  The proposed question

21 is also unnecessary and misleading because there were no "conditions" to

22 performance of the Inventions Agreement.

23      (d)      The Court has already found, as a matter of law, that Mattel was harmed

24 by defendants' conduct.  *See* April 25, 2008 Order, at 6 (finding that the "resulting

25 damage" element of Mattel's claim for intentional interference with contractual

26 relations has been met).  Hence, the jury need not make such a finding.

27      (e)-(h)      These proposed questions regarding a purported estoppel defense

28 are contrary to the Court's April 25, 2008 Order and therefore moot.  The Court

1  found that this affirmative defense is equitable in nature and expressly deferred

2  ruling on this defense until after trial.  *See* April 25, 2008 Order, at 7.  In any event,

3  defendants' use of the word "silence" is misleading.  Silence can support an estoppel

4  defense only where it can be established that the party had a duty to speak or act

5  under the particular circumstances and chose not to do so.  *See* Mattel's Objections to

6  Defendants' Proposed Jury Instructions re: Estoppel.  That is not the case here.

7  Moreover, Mattel's knowledge regarding the actions of employees other than Bryant

8  is irrelevant to any estoppel defense in this case.  The proper inquiry is whether or

9  not Mattel had knowledge of the facts surrounding *Bryant's* creation of Bratz works

10  and his secret involvement with MGA while he was employed by Mattel, not

11  whether any of its employees "created independent artistic works."  The proposed

12  questions are also confusing and prejudicial because they are vague and not tied to

13  the conduct at issue in this lawsuit.

14  (i)-(j)        These proposed questions regarding a purported acquiescence

15  defense are contrary to the Court's April 25, 2008 Order and therefore moot.  The

16  Court found that this affirmative defense is equitable in nature and expressly

17  deferred ruling on this defense until after trial.  *See* April 25, 2008 Order, at 7.  In

18  any event, the proposed questions are misleading and erroneous to the extent they

19  focus on the conduct of employees other than Bryant.  The relevant issue is whether

20  Mattel acquiesced to *Bryant's* contractual breaches.  *See* Mattel's Objections to

21  Defendants Proposed Jury Instruction re: Acquiescence.  The proposed questions fail

22  to inform the jury that Bryant must show that Mattel assured him, expressly or

23  impliedly, that it would not pursue its legal rights against him.  Mattel further objects

24  to these proposed findings on the ground that they are based on an affirmative

25  defense that was arguably relevant only to claims against Carter Bryant (as

26  acknowledged in prior versions of defendants' proposed verdict forms, e.g., "On the

27  claim of Carter Bryant that Mattel has waived [acquiesced] [consented]. . .").  Carter

28

1    Bryant is no longer a defendant in this case, and defendants have not shown that they

2    are entitled to assert this affirmative defense as to the claims against them.

3            (k)-(l)         These proposed questions regarding a purported consent defense

4    are contrary to the Court's April 25, 2008 Order and therefore moot.  The Court

5    found that this affirmative defense is equitable in nature and expressly deferred

6    ruling on this defense until after trial.  *See* April 25, 2008 Order, at 7.  In any event,

7    defendants' proposed questions again improperly focus on alleged consent to

8    "moonlighting and independent artistic work" by employees other than Bryant.  As a

9    matter of law, the issue is whether Mattel consented to Bryant's wrongful conduct.

10   The law is also clear that a litigant need not choose between pursuing all offenders or

11   none at all.  Defendants' reference to "silence or inaction" is also misleading.  The

12   correct legal standard is whether (1) Mattel consented to Bryant's breaches of his

13   legal duties, and (2) whether Mattel knowingly consented to such breaches in the

14   absence of any fraud or mistake.  *See* Mattel's Objections to Defendants' Proposed

15   Jury Instruction re: Consent.  Mattel further objects to these proposed findings on the

16   ground that they are based on an affirmative defense that was arguably relevant only

17   to claims against Carter Bryant (as acknowledged in prior versions of defendants'

18   proposed verdict forms, e.g., "On the claim of Carter Bryant that Mattel has waived

19   [acquiesced] [consented]. . .").  Carter Bryant is no longer a defendant in this case,

20   and defendants have not shown that they are entitled to assert this affirmative

21   defense as to the claims against them.

22           (m)-(n)        These proposed questions regarding a purported defense of

23   waiver are contrary to the Court's April 25, 2008 Order and therefore moot.  The

24   Court found that this affirmative defense is equitable in nature and expressly

25   deferred ruling on this defense until after trial.  *See* April 25, 2008 Order, at 7.  In

26   any event, defendants' proposed questions regarding waiver deviate from the

27   standards articulated in the model instruction found in CACI.  *See* CACI No. 336.

28   Defendants erroneously suggest that waiver may be found based on Mattel's actions

25

1  with respect to other employees or other violations of Mattel's employment

2  agreements.  The relevant issue is whether Mattel waived its right to enforce its legal

3  rights with respect to Bryant and his breaches.  Moreover, defendants' proposed

4  questions erroneously permit the jury to find waiver based on "silence" when the law

5  clearly establishes that inaction alone is insufficient to support a waiver defense. *See*

6  Mattel's Objections to Defendants' Proposed Jury Instructions re: Waiver.  Mattel

7  further objects to these proposed findings on the ground that they are based on an

8  affirmative defense that was arguably relevant only to claims against Carter Bryant

9  (as acknowledged in prior versions of defendants' proposed verdict forms, e.g., "On

10 the claim of Carter Bryant that Mattel has waived [acquiesced] [consented]. . .").

11 Carter Bryant is no longer a defendant in this case, and defendants have not shown

12 that they are entitled to assert this affirmative defense as to the claims against them.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MGA Parties' Response**

(a) – (m)      As discussed in detail above and in MGA Parties Objections to Mattel's Proposed Verdict Forms, Fed. R. Civ. P. 49(a)(1), requires that the jury return, "a special verdict in the form of a special written finding on each issue of fact." (emphasis added).  Thus, Mattel's objection on the grounds that these questions call for "detailed findings" has no merit.  There is also no merit to the argument that MGA Parties are "slanting (and multiplying)."  Moreover, these questions are entirely necessary. To begin with, it goes to Mattel's claim for declaratory relief, which turns on its assertion of a breach of contract.  As noted above, the jury will be focused on interpreting the Inventions Agreement when decides Mattel's claim for declaratory relief. Moreover, it is also relevant to Mattel's intentional interference with contract claim.  See Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc., 7 F.3d 1434, 1442 (9th Cir. 1993) ("To recover for intentional interference with a contractual relationship, Summit must show '(1) that [it] had a valid and existing contract, (2) that [Victor] had knowledge of the contract and intended to induce its breach, (3) that the contract was in fact breached by [ZMTW], (4) that the breach was caused by [Victor's] unjustified and wrongful conduct, and (5) that [Summit] has suffered damage.'") (emphasis added); see also Anlin Industries, Inc. v. Burgess, 2006 WL 2308476, at *3 (E.D. Cal. Aug. 9, 2006) ("To state a cause of action for interference with contract under California law, a plaintiff must allege (1) a valid contract between the plaintiff and a third party; (2) that the defendant had knowledge of this contract and intended to induce its breach; (3) that the contract was breached; (4) that the breach was caused by the defendant's wrongful and unjustified conduct; and (5) that the plaintiff suffered damage.") (emphasis added); Farmers Ins. Exchange v. State of California, 175 Cal. App. 3d 494, 506 (1985) ("The elements of this tort [for intentional interference with contract] include: 1) The existence of a valid contract; 2) knowledge of the contract on the part of defendant and intent to

27

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

1   induce its breach; 3) breach of the contract by the third party; 4) proximate cause; 5)

2   damages.") (emphasis added).

3        Mattel's objection that the certain defenses applied only to Bryant's claims

4   and should thus be eliminated is meritless.  While Bryant is no longer a party to this

5   lawsuit, the effect of the contracts between Bryant and Mattel is central to this

6   lawsuit.  Thus, if Mattel's actions somehow undermined its contractual relationship

7   with Bryant, its claims based on that contractual relationship must also fail.

8   Moreover, the existence of affirmative defenses that negate or limit the contractual

9   relationship may in turn undermine Mattel's claims that the MGA Parties intended to

10  cause harm to that relationship.  For these reasons, this instruction continues to be

11  appropriate.

12       (b)    As noted, Bryant's affirmative defenses to the contractual relationships

13  between Bryant and Mattel continue to be relevant, as does the question of whether

14  or not there was breach of that contractual relationship.

15       (d)    Mattel mischaracterizes the Court's rulings on its intentional

16  interference claim.  Mattel had not moved for summary judgment on its claim for

17  intentional interference with contract.  The Court is explicit that it is only ruling on

18  the MGA Parties' motion for partial summary judgment (see April 25, 2008 Order at

19  6) and recites those elements that they were undisputed *for purposes of summary*

20  *judgment* (id. at 6-7).  This recitation, however, was not a holding for Mattel as a

21  matter of law, because Mattel had not even made a motion on this claim.  Rather, the

22  Court's ruling was only to grant the MGA Parties' motion on this claim to the extent

23  it was "based on Mattel's rights to Bratz."  April 25, 2008 Order at 2; Final Pre-Trial

24  Conference Order at 5.

25       (e)-(h)    Mattel mischaracterizes the import of the Court's decision to

26  defer ruling on certain affirmative defenses.  While the Court may ultimately rule on

27  the effect of these defenses, it is apparent from the Court's Final Pre-Trial

28  Conference Order that it expects the jury to make the factual determinations

28

1  underlying its decision.   Final Pre-Trial Conference Order at 8.   Estoppel is a
2  question of fact properly tried to the jury.  "The existence of estoppel is generally a
3  question of fact for the trial court." <u>Kramer v. Thomas</u>, 2006 WL 4729242, at 9 (C.D.
4  Cal. Sept. 28, 2006) (holding that even when the defendant's had met all the
5  elements of estoppel, summary judgment was inappropriate as estoppel is a fact
6  question for the jury).  "The existence of estoppel is a question of fact for the trial
7  court." <u>Elmore v. Oak Valley Hospital District</u>, 204 Cal. App. 3d 716, 724 (1988)
8  (overruling the court below which sustained a demurrer on plaintiff's estoppel claim
9  stating, "The existence of estoppel is a question of fact for the trial court."); <u>see also</u>
10  <u>Ard v. County of Contra Costa</u>, 93 Cal. App. 4th 339, 347 (2001) ("[t]he existence of
11  an estoppel is generally a question of fact for the trial court") (citation omitted);
12  <u>Muraoka v. Budget Rent-a-Car</u>, 160 Cal. App. 3d 107, 117 (Cal. App. 1984)
13  (holding trial court erred in granting defendant's demurrer stating, "[the estoppel
14  question] is one of fact which should be left for resolution by a jury and not
15  determined upon general demurrer").  Ninth Circuit courts regularly try estoppel to
16  the jury.  <u>See, e.g.</u>, <u>Humetrix v. Gemplus S.C.A.</u>, 268 F.3d 910, 918 (9th Cir. 2001)
17  (upholding verdict in case in which equitable estoppel defense was tried to jury);
18  <u>Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply</u>, 106 F.3d 894
19  (9th Cir. 1997) (upholding ruling of the Central District denying an injunction in
20  case where the jury found equitable estoppel, acquiescence, laches, and unclean
21  hands applied).

22      It is unquestionable that estoppel can arise from the silence of the party to be
23  estopped.   "The doctrine of estoppel by conduct is embodied in Evidence Code
24  section 623, which states: 'Whenever a party has, by his own statement or conduct,
25  intentionally and deliberately led another to believe a particular thing true and to act
26  upon such belief, he is not, in any litigation arising out of such statement or conduct,
27  permitted to contradict it.'"   <u>Hill v. Kaiser Aetna</u>, 130 Cal. App. 3d 188, 195 (1982).
28  Conduct is given the broadest possible meaning.  "Equitable estoppel in the modern

29

1   sense arises from the conduct of a party, using that word in its broadest meaning as
2   including his spoken or written words, his positive acts, and his silence or negative
3   omission to do anything."  City of Long Beach v. Mansell, 3 Cal. 3d 462, 488 n.22
4   (1970) (holding city was estopped from enforcing constitutional prohibition)
5   (citations omitted).  Mattel's contention that there is a duty to speak requirement has
6   no bearing on the instruction.  The case Mattel cites for this principle,  Feduniak v.
7   Cal. Coastal Comm'n, 148 Cal. App. 4th 1346, 1362 (2007), states, "It is not
8   necessary that the duty to speak should arise out of any agreement, or rest upon any
9   legal obligation in the ordinary sense. Courts of equity apply in such cases the
10  principles of natural justice, and whenever these require disclosure they raise the
11  duty and bind the conscience and base upon the omission an equitable forfeiture to
12  the extent necessary to the protection of the innocent party." (citations omitted).  The
13  "duty" is simply a determination that under the circumstances, a party wishing to
14  assert its rights must speak.  Mattel certainly had a duty in this case given that it
15  knew of the alleged infringement and remained silent.  This is covered by MGA
16  Parties' Proposed Verdict Form.

17      Moreover, Mattel offers no legal support for its position that its knowledge of
18  the actions of other employees is irrelevant.  Mattel seeks to enforce claims against
19  MGA Parties for Bryant's alleged breaches of his employment agreement by
20  moonlighting or creating independent artistic works.  The evidence shows that
21  Mattel had knowledge that large numbers of design center employees, all of whom
22  signed the same agreement as Bryant, were moonlighting or creating independent
23  artistic works.  Mattel never brought a single claim to object to this conduct.  Equity
24  does not allow Mattel to effectively permit moonlighting and the creation of
25  independent artistic works, then to bring a action against Bryant who reasonably
26  assumed, from the conduct of his co-workers and Mattel's lack of response, that his
27  conduct was permissible.   As Mattel's claims against MGA Parties are wholly
28  derivative, it cannot equitably bring these claims.

1   MGA Parties' Proposed Verdict Form is proper.  Mattel does not produce any

2   legal support for it "duty to speak" argument.  (See supra (MGA Parties' Reply to

3   Mattel's Objection to MGA Parties Proposed Verdict Form to 2(j)).)   To the extent

4   such a duty requirement exists, Mattel clearly had a duty to speak given that it knew

5   of the alleged violations are remained silent.

6   Finally, the proposed form is not vague.  The combined questions in this form

7   address whether Mattel was aware its employees created independent artistic works

8   or engaged in moonlighting and remained silent.   This properly spells out the

9   standard for estoppel.   Bryant must only convince a jury that his conduct was

10  reasonable in light of Mattel's conduct.

11  (i)-(j) Mattel mischaracterizes the import of the Court's decision to defer

12  ruling on certain affirmative defenses.  While the Court may ultimately rule on the

13  effect of these defenses, it is apparent from the Court's Final Pre-Trial Conference

14  Order that it expects the jury to make the factual determinations underlying its

15  decision.   Final Pre-Trial Conference Order at 8.   The factual determinations

16  supporting each other affirmative defense should likewise be placed before the jury.

17  See Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply, 106 F.3d

18  894, 899 (9th Cir. 1997) (upholding district court's ruling where jury decided

19  questions central to defenses of laches, equitable estoppel, acquiescence, and unclean

20  hands).

21  Mattel's objection to MGA Parties' Proposed Verdict Form has no merit.

22  Mattel argues that in order to establish acquiescence, the only relevant consideration

23  is Mattel's conduct as to Bryant and MGA Parties.  Mattel has no legal support for

24  this position.  The case law only requires conduct (which as discussed above is given

25  the widest possible meaning) which shows acquiescence. The relevant question here

26  is whether the Mattel's conduct was such that Bryant was reasonable in believing

27  that it acquiesced to independently creating artistic works and/or moonlighting.  The

28  fact that Mattel allowed its employees, who signed the same agreement as Bryant, to

31

1   independently create artistic works and/or moonlight without ever taking any actions
2   is clearly relevant to whether it was reasonable for Bryant to conclude that Mattel
3   acquiesced to him engaging in the same conduct.  Nor is Mattel's position logical:
4   proof that Mattel acquiesced to an entire category of employee conduct—
5   moonlighting and the creation of independent artistic work—certainly demonstrates
6   acquiescence to one employee engaging in that same conduct.

7        Further, Mattel has no legal support for the position that the only relevant
8   conduct is Mattel's conduct toward Bryant.  (See supra (MGA Parties' Reply to
9   Mattel's Objection to MGA Parties Proposed Verdict Form to 2(j)-(m)).)

10       Mattel's objection that certain defenses applied only to Bryant's claims and
11  should thus be eliminated is meritless.  While Bryant is no longer a party to this
12  lawsuit, the effect of the contracts between Bryant and Mattel is central to this
13  lawsuit.  Thus, if Mattel's actions somehow undermined its contractual relationship
14  with Bryant, its claims based on that contractual relationship must also fail.
15  Moreover, the existence of affirmative defenses that negate or limit the contractual
16  relationship may in turn undermine Mattel's claims that the MGA Parties intended to
17  cause harm to that relationship.  For these reasons, this instruction continues to be
18  appropriate.

19       (k)-(l) Mattel mischaracterizes the import of the Court's decision to defer
20  ruling on certain affirmative defenses.  While the Court may ultimately rule on the
21  effect of these defenses, it is apparent from the Court's Final Pre-Trial Conference
22  Order that it expects the jury to make the factual determinations underlying its
23  decision.   Final Pre-Trial Conference Order at 8.  The factual determinations
24  supporting each other affirmative defense should likewise be placed before the jury.
25  See, e.g., Posey v. Leavitt, 229 Cal. App. 3d 1236, 1244 n.4 (1991) ("[F]actual issues
26  raised by the consent defense would be properly triable by the jury….").

27       Further, there is no legal support for Mattel's position that the only relevant
28  conduct is Mattel's conduct towards Bryant.  The case law only requires conduct

32

(which as discussed above is given the widest possible meaning) which shows consent. The relevant question here is whether the Mattel's conduct was such that Bryant was reasonable in believing that Mattel consented to independently creating artistic works and moonlighting. The fact that Mattel allowed its employees, who signed the same agreement as Bryant, to independently create artistic works and moonlight without ever taking any action is clearly relevant to whether it was reasonable for Bryant to conclude that Mattel consented to him engaging in the same conduct. Mattel second point, that "Ninth Circuit case law clearly establishes that a litigant need not choose between pursuing all offenders or none at all" is inapposite. This is not a case about not pursuing every single offender. Mattel allowed its employees to independently create artistic works and moonlight without protestation. It did not bring a single action against an employee for moonlighting or creating independent artistic work. This conduct is unquestionably relevant to whether Bryant was reasonable in believing that Mattel consented to his conduct.

Thus, as properly stated in MGA Parties' Proposed Verdict Form above, the relevant question is "whether Carter Bryant understood Mattel's acts or words, silence or inaction to indicate consent to moonlighting and independent artistic work." Finally, Mattel's phrasing of the consent defense is not only incorrect but also prejudicial. The relevant inquiry is not whether Mattel consented to "Bryant's breaches of his legal duties" but whether Mattel consented to certain conduct as explained above.

Mattel's objection that certain defenses applied only to Bryant's claims and should thus be eliminated is meritless. While Bryant is no longer a party to this lawsuit, the effect of the contracts between Bryant and Mattel is central to this lawsuit. Thus, if Mattel's actions somehow undermined its contractual relationship with Bryant, its claims based on that contractual relationship must also fail. Moreover, the existence of affirmative defenses that negate or limit the contractual relationship may in turn undermine Mattel's claims that the MGA Parties intended to

33

1   cause harm to that relationship.  For these reasons, this instruction continues to be
2   appropriate.

3       (m)-(n)      Mattel mischaracterizes the import of the Court's decision to
4   defer ruling on certain affirmative defenses.  While the Court may ultimately rule on
5   the effect of these defenses, it is apparent from the Court's Final Pre-Trial
6   Conference Order that it expects the jury to make the factual determinations
7   underlying its decision.    Final Pre-Trial Conference Order at 8.  The factual
8   determinations supporting each other affirmative defense should likewise be placed
9   before the jury.  See, e.g., Bickel v. City of Piedmont, 16 Cal. 4th 1040, 1052 (1997)
10  ("Whether there has been a waiver is a question of fact."), abrogated on other
11  grounds, DeBerard Properties, Ltd. v. Lim, 20 Cal. 4th 659, 668 (1999); Posner v.
12  Grunwald-Marx, Inc., 56 Cal. 2d 169, 189 (1961) ("Whether there has been a waiver
13  is usually regarded as a question of fact to be determined by the jury, or by the trial
14  court if there is no jury.") (internal quotations and citations omitted).

15      Mattel continues to improperly argue that the only relevant consideration is
16  Mattel's conduct towards Bryant.   The issue is whether Mattel was aware of
17  employee conduct it now claims is in violations of its employment agreements.  Its
18  conduct towards other employees is clearly relevant to that question.

19      Mattel's failure to act amounts to conduct inconsistent with the intent to
20  enforce its alleged rights.  This Court can find that Mattel has waived its rights even
21  if there was no express waiver.  "A waiver can be explicit or it can be implied from a
22  party's conduct and waiver does not require consideration to support it."  Oliker v.
23  Gershunoff, 195 Cal. App. 3d 1288, 1297 (1987) (holding that an attorney had
24  waived the right to a dissolution of partnership by his delay in action).  See also
25  Ganley v. County of San Mateo, 2007 WL 902551, at *6 (N.D. Cal. Mar. 22, 2007)
26  (court denies plaintiff's motion to strike defendants affirmative defense that plaintiff
27  has waived claims stating, "If an individual intentionally relinquishes a known right,
28

34

1  either expressly or by conduct inconsistent with an intent to enforce that right, he has
2  waived it").

3        Mattel's objection that certain defenses applied only to Bryant's claims and
4  should thus be eliminated is meritless.  While Bryant is no longer a party to this
5  lawsuit, the effect of the contracts between Bryant and Mattel is central to this
6  lawsuit.  Thus, if Mattel's actions somehow undermined its contractual relationship
7  with Bryant, its claims based on that contractual relationship must also fail.
8  Moreover, the existence of affirmative defenses that negate or limit the contractual
9  relationship may in turn undermine Mattel's claims that the MGA Parties intended to
10 cause harm to that relationship.  For these reasons, this instruction continues to be
11 appropriate.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
**Proposed Form of Verdict No.  (Breach of Section 3(a) Inventions Agreement)**

3
*-NO LONGER APPLICABLE AND WITHDRAWN-*

4
5
**Proposed Form of Verdict No. (Validity of Conflict of Interest Questionnaire)**

6
7
*-NO LONGER APPLICABLE AND WITHDRAWN-*

8
9
**Proposed Form of Verdict No. (Breach of Conflict of Interest Questionnaire)**

10
11
*-NO LONGER APPLICABLE AND WITHDRAWN-*

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

**<u>-REVISED-</u>**

**<u>Proposed Form of Verdict No. 3 (17 U.S.C. Section 204(a) and Cal. Civ. Code Section 988)</u>**

*On the claim of Mattel respecting the existence of a valid transfer agreement between Mattel and Carter Bryant under Section 204(a) of the Copyright Act or Section 988 of the California Civil Code, we, the jury, find as follows:*

(a)     With respect to Mattel's claim that Section 2(a) of Bryant's Inventions Agreement is a valid transfer of copyright under Section 204(a) of the Copyright Act, we find:

☐yes or

☐no.  (If no, please proceed to Verdict Form No. 4)

(b)     With respect to Mattel's claim that Section 2(a) of Bryant's Inventions Agreement is a valid transfer of copyright under California Civil Code Section 988, we find:

☐yes or

☐no.  (If no, please proceed to Verdict Form No. 4)

1 | **<u>Mattel's Objections</u>**

2

3   Mattel objects to defendants' proposed verdict form as follows:

4   (a)-(b)   This proposed instruction is contrary to the Court's April 25, 2008

5 Order.  The Court has already held that the Inventions Agreement is a valid and

6 enforceable contract and that it "is not ambiguous on the issue of its scope with

7 respect to copyrightable materials."  *See* April 25, 2008 Order, at 4.  The Court found

8 that the "Inventions Agreement explicitly conveys to Mattel an employee's interests

9 in any copyright or copyrights."  *Id.*  Finally, the Court held that "the original Bratz

10 drawings clearly fall within the scope of the Inventions Agreement."  *Id.*

11 Accordingly, this proposed instruction, which  purports to tell the jury circumstances

12 under which a transfer of ownership might not be valid, is improper and misleading.

13 In any event, the effect of statutes are for the Court, not the jury.

14   In any event, neither proposed question is actually a question.  Defendants are

15 simply misstating the law and asking the jury to reach a legal conclusion.  The

16 proposed questions use legal phrases and statutes that are incomprehensible to the

17 jury, e.g. defendants' reference to "Section 204(a) of the Copyright Act."  This

18 convoluted phrasing unnecessarily complicates the jury's analysis.

19

20

21

22

23

24

25

26

27

28

**MGA Parties' Response**

(a)-(b)  Mattel overstates the Court's ruling with respect to the Inventions Agreement.  The Court found as a matter of law that the inventions agreement was a valid and enforceable contract and that it creates certain rights for Mattel over "any Bratz-related 'inventions' (including any designs, improvements, ideas, concepts and copyrightable subject matter" that Bryant "created during the period of his employment with Mattel") and rejected certain defenses (Labor Code § 2870 and preparations to compete). Final Pre-Trial Conference Order at 4.  The MGA Parties' revised jury instructions reflect this ruling.  However, that is where the ruling ends, and it leaves much for the jury to decide.  For example, as the court noted, its holding was contingent on "the resolution of certain (as yet unresolved) issues of timing of creation and/or alteration."  April 25, 2008 Order at 4.  In order to decide the timing of creation, the jury must first decide what sorts of acts count as "creation" in the context of this contract.  This will require the jury to interpret the contract.  The jury will also have to decide the scope of the term "inventions" – while the Court has laid out in general terms what is included, it will be for the jury to look at an individual purported "invention" and determine whether that particular item falls within the scope.   Indeed, the Court has already observed the complexity of this process, noting that "it is uncontroverted that four drawings (each with a color and black and white version) of dolls in evening wear were created by Bryant during the period of his employment with Mattel" yet "the scope of the rights that may be assigned to Mattel under the Inventions Agreement is unclear in light of the larger disputed factual issue regarding the remaining Bratz drawings." May 21, 2008 Order at 8.  As such, interpretation of contractual terms continues to be important.

Section 204(a) requires a jury to consider whether the terms of the alleged transfer document are "explicit," "precis[e]," "clear," and "unequivocal." Foraste v. Brown Univ., 290 F. Supp. 2d 234, 240-41 (D.R.I. 2003) (collecting cases).  Here,

39

1  the sufficiency of the purported assignment is in dispute, and its terms properly

2  before the jury.  To the extent Mattel suggests this form raises a legal question that is

3  not for the jury, Mattel has ignored federal and California case law requiring the jury

4  to interpret factual questions implicating a statute's effect.  See Panther Oil & Grease

5  Mfg. Co. v. Segerstrom, 224 F.2d 216, 218 (9th Cir. 1955) ("The question whether

6  the product contained substances mentioned in the statute was largely one of fact;

7  and the testimony pro and con on this point was not without conflict. We think

8  submission to the jury of the matter of the applicability of the statute was not error.");

9  John Norton Farms, Inc. v. Todagco, 124 Cal. App. 3d 149, 169-70 (1981) (while

10  ultimate question of liability under statute regarding off-label uses of poison was

11  technically a question of law, all of the findings that would dictate that decision –

12  whether label was accurate and sufficient, whether product was used appropriately,

13  whether misuse was cause of damage – were questions of fact for the jury); see also

14  Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coalition of Life Activists,

15  290 F.3d 1058, 1068-69 (9th Cir. 2002) (jury to consider whether statement was

16  genuine "threat" because issues presenting "widely varying fact patterns [] should be

17  left to the trier of fact").

18

19

20

21

22

23

24

25

26

27

28

40

**-REVISED-**

**Proposed Form of Verdict No. 4 (Declaratory Relief)**

*On the claim of Mattel against MGA and Isaac Larian respecting Mattel's claim for declaratory relief, we, the jury, find as follows:*

    (a)    With respect to whether Mattel has met its burden in proving its declaratory relief claim, we find:

        ☐ yes or

        ☐ no.  (If no, please proceed to Verdict Form No. 5)

    (b)    With respect to whether Mattel has met its burden in proving that MGA did not purchase its rights in good faith, we find:

        ☐ yes or

        ☐ no.  (If no, please proceed to Verdict Form No. 5)

*On the claim of MGA respecting the date when Mattel suspected or had reason to suspect that wrongdoing on the part of MGA had taken place, we, the jury, find as follows:*

    (c)    With respect to whether MGA have proven that Mattel suspected or had reason to suspect that wrongdoing had taken place before April 27, 2001, we find:

        ☐ yes or

        ☐ no.  (If no, please proceed to Verdict Form No. 5)

**Mattel's Objections**

Mattel objects to defendants' proposed verdict form as follows:

(a)-(b)        These questions are improper and misleading.  Mattel's claim for declaratory relief is an equitable claim to be determined by the Court, not the jury.  Moreover, defendants' proposed questions are phrased in oblique, intentionally vague language designed to confuse the jury.  And, (b) misstates the law – Mattel need not prove that MGA did not acquire its rights in good faith because there is no "good faith" defense to Mattel's claim with respect to ownership of Bratz works.  This contractual right does not turn on MGA's intent or good faith in any way.

(c)        This proposed question is improper because it is for the Court to determine whether or not this equitable claim is timely.  Moreover, this proposed question ignores that the Court has already rejected all of defendants' arguments regarding when Mattel was purportedly on notice of its claims.

42

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

**MGA Parties' Response**

(a) – (b)       Mattel has not explained why the questions are misleading.   A legal action with a declaratory relief label may still be tried to the jury.   "Unlike other equitable actions, declaratory relief is for some purposes treated as if it were a coercive proceeding, and the courts will not permit it to be used as a device to circumvent the right to a jury trial."  7 B.E. Witkin, Cal. Proc.: Trial § 95, p. 115 (4th ed. 1997).

Mattel's blanket assertion that all declaratory relief claims are equitable in nature runs directly counter to long-established case law.  "Insofar as the right to a jury trial is concerned, it is erroneous to say that all declaratory relief actions are equitable; an action for declaratory relief has been characterized as 'sui generis.' Where an action for declaratory relief is in effect used as a substitute for an action at law for breach of contract, a party is entitled to a jury trial as a matter of right." Patterson v. Ins. Co. of N. Am., 6 Cal. App. 3d 310, 315 (1970) (internal citations omitted); see also B.E. Witkin, Cal. Proc.: Trial § 95, p. 115 (4th ed. 1997) ("Unlike other equitable actions, declaratory relief is for some purposes treated as if it were a coercive proceeding, and the courts will not permit it to be used as a device to circumvent the right to a jury trial.")  This is precisely the case here.

Mattel's objection that good faith is not relevant ignores that any claim that is pled as including an element of scienter will require the jury to determine whether the MGA Parties acted with good faith.  Good faith is relevant to any claim where intent is required or pled as an element.  See, e.g., State Farm Mut. Auto. Ins. Co. v. Superior Court, 228 Cal. App. 3d 721, 727 (1991) (holding that, where purported affirmative defense was relevant to negate alleged intent, it was not properly considered an affirmative defense but rather a denial of plaintiff's allegations, which could be proven as such at trial).

(c) As Mattel's declaratory relief claim is essentially a conversion claim, and

43

1   the Court has expressly left undecided the timeliness of Mattel's conversion claim,

2   the form is proper. Final Pre-Trial Conference Order at 6.  Mattel offers no reason

3   why the jury should not be asked about the timeliness of this claim just like any other

4   that the Court determined involve factual issues to be decided by the jury.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

**-REVISED-**

**Proposed Form of Verdict No. 5 (Aiding and Abetting Breach of Fiduciary Duty – Existence of Underlying Breach)**

*On the claim of Mattel that Carter Bryant breached his fiduciary duty, we, the jury, find as follows:*

(a)   With respect to whether Mattel has proven that Carter Bryant owed a fiduciary duty to Mattel in addition to the duty to maintain in confidence information provided to Bryant by Mattel, we find:

☐ yes or

☐ no.

(b)   With respect to whether Mattel has proven that Carter Bryant deliberately acted against Mattel's interests prior to terminating his employment with Mattel in breach of any fiduciary duty owed, we find:

☐ yes or

☐ no.  ((If no, please proceed to Verdict Form No. 7)

(c)   With respect to whether Mattel has proven Bryant's actions (other than entering into a contract with MGA while a Mattel employee) were in direct competition with Mattel and not merely preparations to compete with Mattel, we find:

☐ yes or

☐ no.

(d)   With respect to whether Mattel has proven it was harmed during the term of Bryant's employment by Carter Bryant's breach of fiduciary duty, we find:

☐ yes or

☐ no.  (If no, please proceed to Verdict Form No. 7)

45

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(e)    With respect to whether Mattel has proven that the conduct of Bryant was a substantial reason for any harm Mattel incurred during the term of Bryant's employment, we find:

☐ yes or

☐ no.  (If no, please proceed to Verdict Form No. 7)

***If you have answered YES to 5(a)-5(e), proceed to Verdict Form No. 6.***

46

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

**Mattel's Objections**

Mattel objects to defendants' proposed verdict form as follows:

(a)-(e)        These questions are contrary to the Court's April 25, 2008 and May 21, 2008 Orders.  The Court has already found as a matter of law that Bryant owed a fiduciary duty to Mattel.  *See* April 25, 2008 Order, at 5-6.  And it is not necessary that the jury find that Bryant's actions "were in direct competition" with Mattel, but only that he "acted against Mattel's interest" or "acted on behalf of a party whose interests were adverse to Mattel."  *See* CACI No. 4102.  Even if that were the standard, the Court already ruled that Bryant "directly compete[d]" with Bryant.  *See* April 25, 2008 Order, at 6.  The Court also already found that Bryant cannot defend his actions as mere "preparations to compete."  *Id.* at 5.  Moreover, aside from being erroneous, defendants' proposed questions also are confusing and hard to follow.  For example, jurors will likely be confused by proposed questions such as:  "With respect to whether Mattel has proven Bryant's actions (other than entering into a contract with MGA while a Mattel employee) were in direct competition with Mattel . . ."  It is unclear what defendants are even attempting to convey to the jury with the phrase "other than entering into a contract with MGA."

The proposed questions are also erroneous in other respects.  The intent requirement for breach of fiduciary duty is that a defendant acted "knowingly," not "deliberately."  *See* CACI No. 4102.  Moreover, the proposed questions improperly limit Mattel's claims to acts taken or harm incurred by Mattel while Bryant was employed by Mattel.  That purported limitation is not supported by law.  *See* CACI No. 4102.

Defendants' proposed questions should be rejected.

**MGA Parties' Response**

(a) – (e)     The Court held that Bryant owed Mattel a fiduciary duty "by virtue of the language set forth in ¶ 1(a) of the Inventions Agreement."  April 25, 2008 Order at 5.  However, the Court's ruling on that duty was limited to Bryant's duty vis-à-vis Mattel's confidential information.  May 21, 2008 Order at 4.  Thus, the jurors must still consider both the proper scope of that duty and then determine whether it applies.  Likewise, to determine the harm attributable to either a breach of loyalty or a breach of fiduciary duty, the jury must first be decide on the nature of the duty and the breach.

MGA Parties' Proposed Verdict Form is entirely proper and suitable for use by the jury.  "Deliberately" has the same meaning as "knowingly" but the MGA Parties submit that it is an easier term for the jury to understand. Moreover, Mattel must be harmed by the breach during the term of Bryant's employment and not by Bryant's conduct after he left employment.  Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966) (remanding to assess damage to plaintiff book publisher for the costs incurred to replace personnel recruited by president and competitor using confidential information in breach of president's fiduciary duty); GAB Business Services, Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000) (damages for breach of fiduciary duty were expenses incurred to recruit new employees); Charles T. Powner, Inc. v. Smith, 91 Cal. App. 101 (1928) (damages were profits on directly competitive sales resulting from use of employer's time and facilities); Sumner v. Nevin, 4 Cal. App. 347, 350 (1906) (damages were commissions received while still employed); see also Design Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005) (damages were amount of salary earned during time employee was disloyal, and not the profits from a contract that evidence showed employer would not have been awarded); Frye-Tech, Inc. v. Harris, 46 F. Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of resources including employee

48

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

Case 2:04-cv-09049-DOC-RNB   Document 3989   Filed 06/18/08   Page 52 of 163   Page ID
#:94064

1   time used to develop competing products).  Courts consistently distinguish between

2   harm incurred while employee still employed and harm from later competition.  See

3   e.g., GAB Business Services, Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal.

4   App. 4th 409, 426 (2000) (damages for breach of fiduciary duty were expenses

5   incurred to recruit new employees).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

49
Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

1

**-REVISED-**

2  **Proposed Form of Verdict No. 6 (Liability for Aiding and Abetting Breach of**

3  **Fiduciary Duty)**

4

5       *On the claim of Mattel against MGA and Isaac Larian for aiding and abetting*

6  *breach of fiduciary duty, we, the jury, find as follows:*

7       (a)    With respect to whether Mattel has proven that MGA and/or Isaac

8            Larian actually knew that Carter Bryant owed a fiduciary duty to Mattel,

9            we find:

10            ☐yes or

11            ☐no. (If no, please proceed to Verdict Form No. 7)

12       (b)    With respect to whether Mattel has proven that MGA and/or Isaac

13            Larian actually knew, when they contracted with Bryant for the rights to

14            BRATZ, that Bryant was breaching a fiduciary duty to Mattel, we find.

15            ☐yes or

16            ☐no. (If no, please proceed to Verdict Form No. 7)

17       (c)    With respect to whether Mattel has proven that MGA and/or Isaac

18            Larian made a conscious decision to participate in wrongful activity

19            designed to substantially assist Bryant in a breach of fiduciary duty

20            while he was employed at Mattel, we find:

21            ☐yes or

22            ☐no.  (If no, please proceed to Verdict Form No. 7)

23       (d)    With respect to whether Mattel has proven that MGA and/or Isaac

24            Larian knew that Bryant did not immediately leave Mattel on signing

25            the contract with MGA, as instructed by MGA and Isaac Larian, we find.

26            ☐yes or

27            ☐no. (If no, please proceed to Verdict Form No. 7)

28

1   (e)   With respect to whether Mattel has proven that MGA and/or Isaac

2         Larian knowingly provided substantial assistance or encouragement to

3         Bryant while Bryant was employed at Mattel, we find:

4         ☐ yes or

5         ☐ no.  (If no, please proceed to Verdict Form No. 7)

6   (f)   With respect to whether Mattel has shown the extent to which MGA

7         and/or Isaac Larian knew of and intended to assist in Bryant's breach of

8         fiduciary duty to Mattel, Mattel has shown that MGA and Isaac Larian

9         rendered a sufficiently high degree of substantial assistance in Bryant's

10        breach, we find:

11        ☐ yes or

12        ☐ no.  (If no, please proceed to Verdict Form No. 7)

13  (g)   With respect to whether Mattel has proven that the conduct of MGA

14        and/or Isaac Larian in meeting with, negotiating and signing a contract

15        with Bryant was a substantial reason for any harm Mattel incurred while

16        Bryant was employed by Mattel due to Bryant's breach of his fiduciary

17        duty with Mattel, we find:

18        ☐ yes or

19        ☐ no.  (If no, please proceed to Verdict Form No. 7)

20

21  ***If you have found that MGA or Isaac Larian are liable for aiding and***

22  ***abetting Carter Bryant's breach of fiduciary duty, next consider whether Mattel***

23  ***should be barred from recovery on any of the following grounds:***

24

25  *On the claim of MGA and Larian that Mattel is estopped from asserting*

26  *claims arising out of Carter Bryant's employment agreement, we, the jury, find as*

27  *follows*:

28

1     (h)    With respect to whether Mattel made a representation of fact, at any

2           relevant time, by its actions, silence or omission, we find:

3           ☐yes or

4           ☐no. (If no, please proceed to 6(l))

5     (i)    With respect to whether Mattel had knowledge that its employees were

6           moonlighting or working on independent artistic projects, we find:

7           ☐yes or

8           ☐no. (If no, please proceed to 6(l))

9     (j)    With respect to whether Carter Bryant was ignorant of the fact that

10          Mattel's failure to prevent moonlighting or independent artistic work

11          was not intended as a policy, we find:

12          ☐yes or

13          ☐no. (If no, please proceed to 6(l))

14     (k)    With respect to whether MGA and/or Isaac Larian reasonably relied on

15          Mattel's silence to their detriment, we find:

16          ☐yes or

17          ☐no. (If no, please proceed to 6(m))

18

19     *On the claim of MGA and Isaac Larian that Mattel has acquiesced, at any*

20 *relevant time, to its employees' moonlighting or independent artistic work, we, the*

21 *jury, find as follows*:

22     (l)    With respect to whether Mattel's acts or words, silence or inaction,

23          would be understood by a reasonable person as intended to indicate that

24          the conduct is allowed, we find:

25          ☐yes or

26          ☐no. (If no, please proceed to 6(n))

27

28

(m)   With respect to whether Carter Bryant understood Mattel's acts or words, silence or inaction to indicate that it allowed moonlighting or independent artistic work, we find:

☐ yes or

☐ no. (If no, please proceed to 6(n))

*On the claim of MGA and Isaac Larian that Mattel has consented, at any relevant time, to its employees moonlighting or independent artistic work, we, the jury, find as follows:*

(n)   With respect to whether Mattel's acts or words, silence or inaction, would be understood by a reasonable person as intended to indicate consent to moonlighting or independent artistic work, we find:

☐ yes or

☐ no. (If no, please proceed to 6(p))

(o)   With respect to whether Carter Bryant understood Mattel's acts or words, silence or inaction to indicate consent to moonlighting or independent artistic work, we find:

☐ yes or

☐ no. (If no, please proceed to 6(p))

*On the claim of MGA and Isaac Larian that Mattel has waived any right to seek damages on its breach of employment agreement claims, we, the jury, find as follows:*

(p)   With respect to whether Mattel was aware of its violations of its employment agreements, we find:

☐ yes or

☐ no. (If no, please proceed to 6(r))

(q) With respect to whether Mattel indicated, by its words, actions or
silence that it did not intend to enforce its employment agreements, we
find:

☐ yes or

☐ no. (If no, please proceed to 6(r))

*On the affirmative defense of laches, we, the jury, find as follows:*

(r) With respect to whether MGA and/or Isaac Larian have established that
Mattel delayed unreasonably in asserting its claim that MGA and/or
Isaac Larian aided and abetted Carter Bryant's breach of his fiduciary
duty, we find:

☐ yes or

☐ no.

(s) With respect to whether the MGA and/or Isaac Larian have established
that they were prejudiced by Mattel's delay because evidence has been
lost or witnesses memories have faded, we find:

☐ yes or

☐ no.

(t) With respect to whether MGA and/or Isaac Larian have established that
they were prejudiced by Mattel's delay because MGA and/or Isaac
Larian have expended time, resources, or money in reliance on Mattel's
failure to file suit, we find:

☐ yes or

☐ no.

1  **Mattel's Objections**

2

3      Mattel objects to defendants' proposed verdict form as follows:

4      (a)    This proposed question is argumentative to the extent it uses the phrase

5  "actually knew," which is not required.  It is also duplicative of (b) and therefore

6  prejudicial.  Mattel need not separately prove both that defendants knew (1) that

7  Bryant owed a fiduciary duty to Mattel and (2) that Bryant was breaching a fiduciary

8  duty to Mattel.  Defendants are simply trying to overcomplicate the issues before the

9  jury.

10      (b)    As stated above, this proposed question is duplicative of (a) and

11  therefore prejudicial.  This proposed question also erroneously suggests that Bryant's

12  breach of duty is limited to his contracting with MGA for the rights to Bratz.

13  Moreover, the relevant time frame with respect to MGA and/or Larian's knowledge

14  is not limited to "when they contracted with Bryant for the rights to BRATZ."

15      (c)    This proposed question is erroneous as a matter of law.  Mattel is not

16  required to prove that MGA and/or Larian "made a conscious decision to participate

17  in wrongful activity designed to substantially assist Bryant in a breach of fiduciary

18  duty."  *See Berg & Berg Enter. LLC v. Sherwood Partners, Inc.*, 131 Cal. App.

19  4th 802, 823 n.10 (2005) (finding aiding and abetting does not require that a

20  defendant agree to join the wrongful conduct).  As set forth in Mattel's proposed jury

21  instructions, MGA and/or Larian are liable for aiding and abetting Bryant's breaches

22  of duty if they knowingly provided him substantial assistance in so acting.  Indeed,

23  even ordinary business transactions can constitute substantial assistance.  *Casey v.*

24  *U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145 (2005) (finding that ordinary

25  business transactions by a bank were sufficient to constitute substantial assistance).

26      (d)    This proposed instruction is misleading and improper.  It is irrelevant

27  whether or not MGA or Larian told Bryant to immediately leave Mattel after

28  entering into a contract with him—at that point, the breach of duty had likely already

1   occurred, and Mattel claims that defendants aided and abetted that breach.  This

2   proposed question also improperly assumes facts in dispute in this case (i.e., that

3   Bryant was "instructed by MGA and/or Isaac Larian" to "immediately leave Mattel

4   on signing the contract with MGA.").  Finally, this proposed question erroneously

5   suggests that Mattel is required to prove that defendants knew that Bryant did not

6   immediately leave Mattel upon signing the contract with MGA in order to prove its

7   claims for aiding and abetting breach of fiduciary duty.  That is not the law.

8   Defendants have simply made up an element for this claim which does not exist.

9        (e)    The defendants' insertion of the word "knowingly" is unnecessary and

10  prejudicial in light of the fact that previous proposed questions ask the jury to make

11  findings regarding the defendants' knowledge.

12       (f)    This proposed question is erroneous as a matter of law and prejudicial

13  because it is duplicative of previous proposed questions.  Again, defendants are

14  simply trying to overcomplicate the issues before the jury.  Mattel is not required to

15  prove that defendants both "knew of and intended to assist in Bryant's breach of duty

16  of loyalty."  As set forth in Mattel's proposed jury instructions, the required elements

17  are knowledge and substantial assistance.  Defendants also overstate the substantial

18  assistance element as requiring "a sufficiently high degree of substantial assistance,"

19  which is not the law.  *See Neilson v. Union Bank of Calif.*, 290 F. Supp. 2d 1101,

20  1119 (C.D. Cal. 2003).  This proposed question is also confusing and unintelligible.

21       (g)    Defendants' proposed question improperly limits defendants' wrongful

22  conduct to "meeting with, negotiating and signing a contract" with Bryant, ignoring

23  additional acts that constitute aiding and abetting such as making payments to Carter

24  Bryant or assisting his efforts to conceal his actions from Mattel.  The proposed

25  question also improperly limits the compensable harm to Mattel to harm "incurred

26  while Bryant was employed by Mattel."  Mattel is entitled to recover all damages

27  caused by defendants' wrongful conduct.  *See* CACI No. 3901.

28

56

1    (h)-(k)    Defendants repeat the same objectionable and erroneous

2  questions regarding estoppel proposed in their Proposed Form of Verdict Form

3  No. 2(e)-(h), and Mattel incorporates its objections to those questions by reference.

4    (l)-(m)    Defendants repeat the same objectionable and erroneous

5  questions regarding acquiescence proposed in their Proposed Form of Verdict Form

6  No. 2(i)-(j), and Mattel incorporates its objections to those questions by reference.

7    (n)-(o)    Defendants repeat the same objectionable and erroneous

8  questions regarding consent proposed in their Proposed Form of Verdict Form

9  No. 2(k)-(l) and Mattel incorporates its objections to those questions by reference.

10   (p)-(q)    Defendants repeat the same objectionable and erroneous

11  questions regarding waiver proposed in their Proposed Form of Verdict Form

12  No. 2(m)-(n), and Mattel incorporates its objections to those questions by reference.

13   (r)-(t)    These proposed questions regarding a purported laches defense

14  are contrary to the Court's April 25, 2008 Order and therefore moot.  The Court

15  found that this affirmative defense is equitable in nature and expressly deferred

16  ruling on this defense until after trial.  *See* April 25, 2008 Order, at 7.  In any event,

17  defendants cannot assert laches, an equitable defense, with respect to a legal claim

18  for aiding and abetting breach of fiduciary duty.

19

20

21

22

23

24

25

26

27

28

57

1  **MGA Parties' Response**

2

3          (a)    The MGA Parties' form accurately reflects the legal standard.  Mattel

4  must prove the MGA Parties' (1) "substantial assistance or encouragement in

5  accomplishing the breach", and (2) "actual knowledge" of the specific wrong they

6  substantially assisted.    MJT Sec., LLC v. Toronto-Dominion Bank, 2007 WL

7  1725421, at **7-8  (N.D. Cal. June 14, 2007).

8          (b)    The MGA Parties' form accurately reflects the legal standard.   The

9  relevant time period is the term of Bryant's employment.  Bancroft-Whitney Co. v.

10  Glen, 64 Cal. 2d 327, 356-57 (1966) (remanding to assess damage to plaintiff book

11  publisher for the costs incurred to replace personnel recruited by president and

12  competitor using confidential information in breach of president's fiduciary duty);

13  GAB Business Services, Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App.

14  4th 409, 426 (2000) (damages for breach of fiduciary duty were expenses incurred to

15  recruit new employees); Charles T. Powner, Inc. v. Smith, 91 Cal. App. 101 (1928)

16  (damages were profits on directly competitive sales resulting from use of employer's

17  time and facilities); Sumner v. Nevin, 4 Cal. App. 347, 350 (1906) (damages were

18  commissions received while still employed); see also Design Strategies v. Davis, 384

19  F. Supp. 649 (S.D.N.Y. 2005) (damages were amount of salary earned during time

20  employee was disloyal, and not the profits from a contract that evidence showed

21  employer would not have been awarded); Frye-Tech, Inc. v. Harris, 46 F. Supp. 2d

22  1144 (D. Kan. 1999) (awarding damages for value of resources including employee

23  time used to develop competing products).

24          (c)    Mattel's objection is directly contrary to prevailing law.  Assuming a

25  duty existed, Mattel must prove the MGA Parties' (1) "substantial assistance or

26  encouragement in accomplishing the breach", and (2) "actual knowledge" of the

27  specific wrong they substantially assisted.    MJT Sec., LLC v. Toronto-Dominion

28  Bank, 2007 WL 1725421, at **7-8  (N.D. Cal. June 14, 2007).  The suggestion that

58

1   any action, absent some wrong amounts to aiding and abetting would have the effect

2   of making any company that hired a new employee strictly liable for the employee's

3   breach of fiduciary duty.   Mattel's objection glosses over the intent element by

4   seeking to distinguish its aiding and abetting claim from one for conspiracy, but its

5   own case, <u>Berg & Berg Enters., LLC v. Sherwood Partners, Inc.</u>, notes that while

6   "aiding and abetting may not require a defendant to agree to join the wrongful

7   conduct, <u>it necessarily requires a defendant to reach a conscious decision to</u>

8   <u>participate in tortious activity for the purpose of assisting another in performing a</u>

9   <u>wrongful act</u>."  131 Cal. App. 4th 802, 823 n.10 (2005) (emphasis added).

10       (d)    As discussed above, to prove a claim for aiding and abetting breach of

11   fiduciary duty, Mattel must prove the MGA Parties' (1) "substantial assistance or

12   encouragement in accomplishing the breach", <u>and</u> (2) "actual knowledge" of the

13   specific wrong they substantially assisted.  <u>MJT Sec., LLC v. Toronto-Dominion</u>

14   <u>Bank</u>, 2007 WL 1725421, at **7-8  (N.D. Cal. June 14, 2007).  If MGA Parties did

15   not know that Bryant did not immediately leave, then they did not have "actual

16   knowledge" of the specific wrong and cannot be held liable.

17       (e)    The use of "knowingly" is proper. Mattel must prove the MGA Parties'

18   (1) "substantial assistance or encouragement in accomplishing the breach", <u>and</u> (2)

19   "actual knowledge" of the specific wrong they substantially assisted.  <u>MJT Sec.</u>,

20   <u>LLC v. Toronto-Dominion Bank</u>, 2007 WL 1725421, at **7-8  (N.D. Cal. June 14,

21   2007); <u>see also</u> <u>Neilson v. Union Bank of Cal., N.A.</u>, 290 F. Supp. 2d 1101, 1118-20

22   (C.D. Cal. 2003).

23       (f)    Mattel must prove the MGA Parties' (1) "substantial assistance or

24   encouragement in accomplishing the breach", <u>and</u> (2) "actual knowledge" of the

25   specific wrong they substantially assisted.  <u>MJT Sec., LLC v. Toronto-Dominion</u>

26   <u>Bank</u>, 2007 WL 1725421, at **7-8  (N.D. Cal. June 14, 2007).  The language "in

27   accomplishing the breach" makes it clear that mere substantial assistance is not

28   adequate to establish a claim for aiding and abetting the breach of fiduciary duty.

59

1  The question properly asks whether Mattel has demonstrated the extent to which
2  defendants had knowledge and assisted.

3     (g)   Mattel must be harmed by the breach during the term of Bryant's
4  employment and not by Bryant's conduct after he left employment.  Bancroft-
5  Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966) (remanding to assess damage to
6  plaintiff book publisher for the costs incurred to replace personnel recruited by
7  president and competitor using confidential information in breach of president's
8  fiduciary duty); GAB Business Services, Inc. v. Lindsey & Newsom Claim Servs.,
9  Inc., 83 Cal. App. 4th 409, 426 (2000) (damages for breach of fiduciary duty were
10 expenses incurred to recruit new employees); Charles T. Powner, Inc. v. Smith, 91
11 Cal. App. 101 (1928) (damages were profits on directly competitive sales resulting
12 from use of employer's time and facilities); Sumner v. Nevin, 4 Cal. App. 347, 350
13 (1906) (damages were commissions received while still employed); see also Design
14 Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005) (damages were amount of
15 salary earned during time employee was disloyal, and not the profits from a contract
16 that evidence showed employer would not have been awarded); Frye-Tech, Inc. v.
17 Harris, 46 F. Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of
18 resources including employee time used to develop competing products).  Courts
19 consistently distinguish between harm incurred while employee still employed and
20 harm from later competition.  See e.g., GAB Business Services, Inc. v. Lindsey &
21 Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000) (damages for breach
22 of fiduciary duty were expenses incurred to recruit new employees).

23     (h) – (k)   See supra (MGA Parties' Reply to Mattel's Objection to MGA
24 Parties Proposed Verdict Form No. 2 (e)-(h)).

25     (l) – (m)   See supra (MGA Parties' Reply to Mattel's Objection to MGA
26 Parties Proposed Verdict Form No. 2 (i)-(j)).

27     (n) – (o)   See supra (MGA Parties' Reply to Mattel's Objection to MGA
28 Parties Proposed Verdict Form No. 2 (k)-(l)).

60

1    (p) – (q)    See supra (MGA Parties' Reply to Mattel's Objection to MGA

2  Parties Proposed Verdict Form No. 2 (m)-(n)).

3    (r)-(t)   Mattel mischaracterizes the import of the Court's decision to defer

4  ruling on certain affirmative defenses.  While the Court may ultimately rule on the

5  effect of these defenses, it is apparent from the Court's Final Pre-Trial Conference

6  Order that it expects the jury to make the factual determinations underlying its

7  decision.   Final Pre-Trial Conference Order at 8.   This is entirely consistent with

8  established legal principles:  the factual determinations supporting each affirmative

9  defense should be placed before the jury.  Laches is regularly tried to juries in the

10  Ninth Circuit.   The case that Mattel cites in opposition to this position is

11  Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply, 106 F.3d 984

12  (9th Cir. 1997).  In this case, the Ninth Circuit upheld ruling of the Central District

13  denying an injunction in case in which laches, equitable estoppel, acquiescence, and

14  unclean hands were all tried to the jury.  See also U.S. Fidelity & Guar. Co. v. Lee

15  Invs. LLC, 2008 WL 746541, at *13 (E.D. Cal. Mar. 18, 2008) (laches, estoppel,

16  waiver and unclean hands submitted to jury); San Francisco Bay Area Rapid Transit

17  Dist. v. Spencer, 2007 WL 1450350, at *10 (N.D. Cal. May 14, 2007) (laches

18  submitted to jury). Laches questions are inherently fact questions.   See Kling v.

19  Hallmark Cards, Inc., 225 F.3d 1030, 1041 (9th Cir. 2000) (holding that summary

20  judgment on laches grounds is improper "because a claim of laches depends on a

21  close evaluation of all the particular facts in a case, it is seldom susceptible to

22  resolution by summary judgment.") (internal quotations omitted) (citations omitted).

23  Although Mattel seeks damages, the gravamen of its claims in Phase 1(a) is to

24  establish ownership as to BRATZ, this is at its core an equitable claim and thus the

25  defense of laches applies.

26

27

28

61

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

**-REVISED-**

**Proposed Form of Verdict No. 7 (Aiding and Abetting Breach of Duty of Loyalty – Existence of Underlying Breach)**

*On the claim of Mattel for breach of duty of loyalty, we, the jury, find as follows:*

(a)   With respect to whether Mattel has proven Carter Bryant deliberately acted against Mattel's interests in connection with the BRATZ idea and sketches prior to terminating his employment with Mattel, we find:
☐yes or
☐no.

(b)   For any actions by Bryant other than entering into a contract with MGA while a Mattel employee, whether Mattel has proven Bryant's actions were in direct competition with Mattel and not merely preparations to compete with Mattel, we find:
☐yes or
☐no.

(c)   With respect to whether Mattel has proven that it did not give informed consent to Bryant's conduct or otherwise ratify Bryant's conduct, we find:
☐yes or
☐no. (If no, please proceed to Verdict Form No. 9)

(d)   With respect to whether Mattel has proven it was harmed during the term of Bryant's employment by any conduct of Carter Bryant that has been found to be a breach of duty of loyalty, we find:
☐yes or
☐no. (If no, please proceed to Verdict Form No. 9)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(e)     With respect to whether Mattel has proven that the conduct of Bryant was a substantial reason for any harm Mattel incurred during the term of Bryant's employment, we find:

☐yes or

☐no. (If no, please proceed to Verdict Form No. 9)

***If you have answered YES to 7(a)-7(e), proceed to Verdict Form No. 8.***

1  **Mattel's Objections**

2

3        Mattel objects to defendants' proposed verdict form as follows:

4        (a)-(e)          These questions are contrary to the Court's April 25, 2008 Order.

5  The Court has already found as a matter of law that Bryant owed a duty of loyalty to

6  Mattel, and that Bryant breached that duty when he "secretly entered into a contract

7  with Mattel's competitor, while still employed by Mattel, to produce a line of fashion

8  dolls to be marketed in direct competition with Mattel's products."  April 25, 2008

9  Order, at 5-6.  Defendants' proposed questions do not properly reflect the Court's

10 prior findings, which makes them very confusing and hard to follow.  For example,

11 jurors will likely be confused by proposed questions such as:  "For any actions by

12 Bryant other than entering into a contract with MGA while a Mattel employee,

13 whether Mattel has proven Bryant's actions were in direct competition with Mattel . .

14 ."  It is unclear what defendants are even attempting to convey to the jury with the

15 phrase "other than entering into a contract with MGA."  In any event, the proposed

16 questions are misleading and erroneous.  The intent requirement for breach of duty is

17 that a defendant acted "knowingly," not "deliberately."  *See* CACI No. 4102.  And it

18 is not necessary that the jury find that Bryant's actions "were in direct competition"

19 with Mattel, but only that he "acted against Mattel's interest" or "acted on behalf of a

20 party whose interests were adverse to Mattel."  *See* CACI No. 4102.  Even if that

21 were the standard, the Court already ruled that Bryant "directly compete[d]" with

22 Bryant.  *See* April 25, 2008 Order, at 6.  (c) is also misleading in stating that Mattel

23 must prove both that it did not give "informed consent" to Bryant's conduct and also

24 that it did not "otherwise ratify" Bryant's conduct.  There is no support for this

25 language in the model instructions (*see* CACI No. 4102), and the question

26 erroneously suggests that something less than informed consent might constitute

27 informed consent.  The proposed questions improperly limit Mattel's claims to acts

28 taken or harm incurred by Mattel while Bryant was employed by Mattel.  That

1   purported limitation is not supported by law.  Finally, this whole line of proposed

2   questions is confusing and unnecessary because the Court has already found that

3   Bryant did in fact breach his duty of loyalty to Mattel.  *See* April 25, 2008 Order, at

4   5-6.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MGA Parties' Response**

(a)-(e)      Mattel's characterization of the Court's holding on Bryant's duty of loyalty is problematic.  The Court held that Bryant owed Mattel a duty of loyalty and that he breached it.  Final Pre-Trial Conference Order at 4.   However, to determine the harm attributable to a breach of a duty of loyalty, the jury must first be decide on the nature of that duty and the breach.

"Deliberately" has the same meaning as "knowingly" but the MGA Parties submit that it is an easier term for the jury to understand. Moreover, Mattel's objection ignores that Mattel must be harmed by the breach during the term of Bryant's employment and not by Bryant's conduct after he left employment. Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966) (remanding to assess damage to plaintiff book publisher for the costs incurred to replace personnel recruited by president and competitor using confidential information in breach of president's fiduciary duty); GAB Business Services, Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000) (damages for breach of fiduciary duty were expenses incurred to recruit new employees); Charles T. Powner, Inc. v. Smith, 91 Cal. App. 101 (1928) (damages were profits on directly competitive sales resulting from use of employer's time and facilities); Sumner v. Nevin, 4 Cal. App. 347, 350 (1906) (damages were commissions received while still employed); see also Design Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005) (damages were amount of salary earned during time employee was disloyal, and not the profits from a contract that evidence showed employer would not have been awarded); Frye-Tech, Inc. v. Harris, 46 F. Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of resources including employee time used to develop competing products). Courts consistently distinguish between harm incurred while employee still employed and harm from later competition.  See, e.g., GAB Business Services, Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000)

1  (damages for breach of fiduciary duty were expenses incurred to recruit new

2  employees).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

67

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

1

**-REVISED-**

2  **Proposed Form of Verdict No. 8 (Liability for Aiding and Abetting Breach of**

3  **Duty of Loyalty)**

4

5      *On the claim of Mattel against MGA and Larian for aiding and abetting*

*breach of duty of loyalty, we, the jury, find as follows:*

6

7  (a)   With respect to whether Mattel has proven Bryant breached a duty of

loyalty he owed to Mattel in licensing the BRATZ to MGA, we find:

8

☐ yes or

9

☐ no. (If no, please proceed to Verdict Form No. 9)

10

11  (b)   With respect to whether Mattel has proven that Carter Bryant's

12       licensing the rights to BRATZ to MGA before his departure from

13       Mattel were not permissible preparations to compete with Mattel, we

       find:

14

☐ yes or

15

☐ no. (If no, please proceed to Verdict Form No. 9)

16

17  (c)   With respect to whether Mattel has proven that MGA and/or Isaac

18       Larian knew, when they contracted with Bryant for the rights to BRATZ,

       that Bryant was breaching a duty of loyalty to Mattel, we find.

19

☐ yes or

20

☐ no. (If no, please proceed to Verdict Form No. 9)

21

22  (d)   With respect to whether Mattel has proven that MGA and/or Isaac

23       Larian knew that Bryant did not immediately leave Mattel on signing

       the contract with MGA, as instructed by MGA and/or Isaac Larian, we

24       find.

25

☐ yes or

26

☐ no. (If no, please proceed to Verdict Form No. 9)

27

28

1    (e)    With respect to whether Mattel has proven that MGA and/or Isaac
2           Larian made a conscious decision to participate in wrongful activity
3           designed to assist Bryant in a breach of duty of loyalty while Bryant
4           was employed at Mattel, we find:
5           ☐yes or
6           ☐no.  (If no, please proceed to Verdict Form No. 9)
7    (f)    With respect to whether Mattel has proven that MGA and/or Isaac
8           Larian knowingly provided substantial assistance or encouragement to
9           Bryant in his breach of duty of loyalty while Bryant was employed at
10          Mattel, we find:
11          ☐yes or
12          ☐no.  (If no, please proceed to Verdict Form No. 9)
13   (g)    With respect to whether Mattel has shown the extent to which MGA
14          and/or Isaac Larian knew of and intended to assist in Bryant's breach of
15          duty of loyalty to Mattel, Mattel has shown that MGA and/or Isaac
16          Larian rendered a sufficiently high degree of substantial assistance in
17          Bryant's breach, we find:
18          ☐yes or
19          ☐no. (If no, please proceed to Verdict Form No. 9)
20   (h)    With respect to whether Mattel has proven that the conduct of MGA
21          and/or Isaac Larian was a substantial reason for any harm Mattel
22          incurred due to Bryant's breach of his duty of loyalty with Mattel, we
23          find:
24          ☐yes or
25          ☐no. (If no, please proceed to Verdict Form No. 9)
26
27
28

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

1    *If you have found that MGA or Larian are liable for aiding and abetting*
2    *Carter Bryant's breach of his duty of loyalty, next consider whether Mattel should*
3    *be barred from recovery on any of the following grounds:*

4

5    *On the claim of MGA and Isaac Larian that Mattel is estopped from asserting*
6    *claims arising out of Carter Bryant's breach of his duty of loyalty, we, the jury, find*
7    *as follows*:

8       (i)     With respect to whether Mattel made a representation of fact, at any
9               relevant time, by its actions, silence or omission, we find:
10              ☐ yes or
11              ☐ no. (If no, please proceed to 8(m))
12      (j)     With respect to whether Mattel had knowledge that its employees were
13              moonlighting or working on independent artistic projects, we find:
14              ☐ yes or
15              ☐ no. (If no, please proceed to 8(m))
16      (k)     With respect to whether Carter Bryant was ignorant of the fact that
17              Mattel's failure to prevent moonlighting or independent artistic work
18              was not intended as a policy, we find:
19              ☐ yes or
20              ☐ no. (If no, please proceed to 8(m))
21      (l)     With respect to whether MGA and/or Isaac Larian reasonably relied on
22              Mattel's silence to their detriment, we find:
23              ☐ yes or
24              ☐ no. (If no, please proceed to 8(m))

25

26   *On the claim of MGA and Larian that Mattel has acquiesced, at any relevant*
27   *time, to its employees' moonlighting or independent artistic work, we, the jury, find*
28   *as follows*:

70

1      (m)    With respect to whether Mattel's acts or words, silence or inaction,

2                would be understood by a reasonable person as intended to indicate that

3                the conduct is allowed, we find:

4                ☐yes or

5                ☐no. (If no, please proceed to 8(o))

6      (n)    With respect to whether Carter Bryant understood Mattel's acts or

7                words, silence or inaction to indicate that it allowed moonlighting or

8                independent artistic work, we find:

9                ☐yes or

10              ☐no. (If no, please proceed to 8(o))

11

12        *On the claim of MGA and Isaac Larian that Mattel has consented, at any*

13 *relevant time, to its employees' moonlighting or independent artistic work, we, the*

14 *jury, find as follows*:

15      (o)    With respect to whether Mattel's acts or words, silence or inaction,

16                would be understood by a reasonable person as intended to indicate

17                consent to moonlighting or independent artistic work, we find:

18                ☐yes or

19                ☐no. (If no, please proceed to 8(q))

20      (p)    With respect to whether Carter Bryant understood Mattel's acts or

21                words, silence or inaction to indicate consent to moonlighting or

22                independent artistic work, we find:

23                ☐yes or

24                ☐no. (If no, please proceed to 8(q))

25

26        *On the claim of MGA and Larian that Mattel has waived any right to seek*

27 *damages on its breach of duty of loyalty claims, we, the jury, find as follows*:

28

71

(q)     With respect to whether Mattel was aware of its violations of its employment agreements, we find:

☐ yes or

☐ no. (If no, please proceed to 8(s))

(r)     With respect to whether Mattel indicated, by its words, actions or silence that it did not intend to enforce its employment agreements, we find:

☐ yes or

☐ no. (If no, please proceed to 8(s))


*On the affirmative defense of laches, we, the jury, find as follows:*

(s)     With respect to whether MGA and/or Isaac Larian have established that Mattel delayed unreasonably in asserting its claim that MGA and Isaac Larian aided and abetted Carter Bryant's breach of his duty of loyalty, we find:

☐ yes or

☐ no.

(t)     With respect to whether the MGA and/or Isaac Larian have established that they were prejudiced by Mattel's delay because evidence has been lost or witnesses memories have faded, we find:

☐ yes or

☐ no.

(u)     With respect to whether MGA and/or Isaac Larian have established that they were prejudiced by Mattel's delay because MGA and/or Isaac Larian have expended time, resources, or money in reliance on Mattel's failure to file suit, we find:

☐ yes or

☐ no.

1  **<u>Mattel's Objections</u>**

2

3      Mattel objects to the defendants' proposed verdict form as follows:

4      (a)     This proposed question is contrary to the Court's April 25, 2008 Order

5  and therefore moot.  The Court found as a matter of law that Bryant breached his

6  duty of loyalty to Mattel.  *See* April 25, 2008 Order, at 5. The question is also

7  misleading because Mattel's claim against Bryant for breach of the duty of loyalty is

8  not limited to Bryant "licensing the BRATZ to MGA."

9      (b)     This proposed question is contrary to the Court's April 25, 2008 Order

10 and therefore moot.  The Court ruled that Bryant cannot defend his actions as "lawful

11 preparations to compete" because he "directly competed with Mattel by entering into

12 a contract with its competitor to produce a competing product while still employed

13 by Mattel."  April 25, 2008 Order, at 5.  The question is also erroneous as a matter of

14 law because it suggests that Mattel is required to prove that none of the actions

15 Bryant took were permissible preparations to compete with Mattel.  The burden of

16 proof would be on the party claiming lawful preparations to compete, but, in any

17 event, the issue is moot because the Court held that Bryant cannot make such a claim

18 here.

19     (c)     This proposed question erroneously suggests that Bryant's breach of

20 duty is limited to his contracting with MGA for the rights to Bratz.  Moreover, the

21 relevant time frame with respect to MGA and/or Larian's knowledge is not limited to

22 "when they contracted with Bryant for the rights to BRATZ."

23     (d)     This proposed instruction is misleading and improper in light of the

24 Court's April 25, 2008 Order and therefore moot.  The Court found that Bryant

25 breached his duty of loyalty "by entering into a contract with Mattel's competitor,

26 while still employed by Mattel, to produce a line of fashion dolls to be marketed in

27 direct competition with Mattel's products."  April 25, 2008 Order, at 5.  Accordingly,

28 it is irrelevant whether or not MGA or Larian told Bryant to immediately leave

1   Mattel after entering into that contract—the breach had already occurred, and Mattel

2   claims that defendants aided and abetted that breach.  This proposed question also

3   improperly assumes facts (i.e., that Bryant was "instructed by MGA and/or Isaac

4   Larian" to "immediately leave Mattel on signing the contract with MGA.").

5           (e)     This proposed question is erroneous as a matter of law.  Mattel is not

6   required to prove that MGA and/or Larian "made a conscious decision to participate

7   in wrongful activity designed to assist Bryant in a breach of loyalty." *See Berg &*

8   *Berg Enter. LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, 823 n.10 (2005)

9   (finding aiding and abetting does not require that a defendant agree to join the

10  wrongful conduct).  As set forth in Mattel's proposed jury instructions, MGA and/or

11  Larian are liable for aiding and abetting Bryant's breaches of duty if they knowingly

12  provided him substantial assistance in so acting.  Indeed, even ordinary business

13  transactions can constitute substantial assistance.  *Casey v. U.S. Bank Nat'l Ass'n*,

14  127 Cal. App. 4th 1138, 1145 (2005) (finding that ordinary business transactions by

15  a bank were sufficient to constitute substantial assistance).

16          (f)     The defendants' insertion of the word "knowingly" is unnecessary and

17  prejudicial in light of the fact that previous proposed questions ask the jury to make

18  findings regarding the defendants' knowledge.  This proposed finding is also

19  confusing to the extent it asks the jury to find "substantial assistance or

20  encouragement to Bryant" without regard to any particular conduct or breach at

21  issue.

22          (g)     This proposed question is erroneous as a matter of law and prejudicial to

23  the extent it is duplicative of previous proposed questions.  Again, defendants are

24  simply trying to overcomplicate the issues before the jury.  Mattel is not required to

25  prove that defendants both "knew of and intended to assist in Bryant's breach of duty

26  of loyalty."  As set forth in Mattel's proposed jury instructions, the required elements

27  are knowledge and substantial assistance.  Defendants also overstate the substantial

28  assistance element as requiring "a sufficiently high degree of substantial assistance,"

74

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

1    which is not the law.  *See Neilson v. Union Bank of Calif.*, 290 F. Supp. 2d 1101,

2    1119 (C.D. Cal. 2003).

3        (i)-(l)        Defendants repeat the same objectionable and erroneous

4    questions regarding estoppel proposed in their Proposed Form of Verdict Form

5    No. 2(e)-(h), and Mattel incorporates its objections to those questions by reference.

6        (m)-(n)        Defendants repeat the same objectionable and erroneous

7    questions regarding acquiescence proposed in their Proposed Form of Verdict Form

8    No. 2(i)-(j), and Mattel incorporates its objections to those questions by reference.

9        (o)-(p)        Defendants repeat the same objectionable and erroneous

10   questions regarding consent proposed in their Proposed Form of Verdict Form

11   No. 2(k)-(l), and Mattel incorporates its objections to those questions by reference.

12       (q)-(r)        Defendants repeat the same objectionable and erroneous

13   questions regarding waiver proposed in their Proposed Form of Verdict Form

14   No. 2(m)-(n), and Mattel incorporates its objections to those questions by reference.

15       (s)-(u)        Defendants repeat the same objectionable and erroneous

16   questions regarding laches proposed in their Proposed Form of Verdict Form

17   No. 6(r)-(t), and Mattel incorporates its objections to those questions by reference.

18

19

20

21

22

23

24

25

26

27

28

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

**MGA Parties' Response**

(a)    <u>See</u> <u>supra</u> (MGA Parties' Reply to Mattel's Objection to MGA Parties Proposed Verdict Form No. 7 (a)-(e)).

(b)    <u>See</u> <u>supra</u> (MGA Parties' Reply to Mattel's Objection to MGA Parties Proposed Verdict Form No. 7 (a)-(e)).

(c)    <u>See</u> <u>supra</u> (MGA Parties' Reply to Mattel's Objection to MGA Parties Proposed Verdict Form No. 7 (a)-(e)).

(d)    <u>See</u> <u>supra</u> (MGA Parties' Reply to Mattel's Objection to MGA Parties Proposed Verdict Form No. 7 (a)-(e)).

(e)    <u>See</u> <u>supra</u> (MGA Parties' Reply to Mattel's Objection to MGA Parties Proposed Verdict Form No. 6 (c)).

(f)    As discussed above, to prove a claim for aiding and abetting breach of the duty of loyalty, Mattel must prove the MGA Parties' (1) "substantial assistance or encouragement in accomplishing the breach", <u>and</u> (2) "actual knowledge" of the specific wrong they substantially assisted.  <u>MJT Sec., LLC v. Toronto-Dominion Bank</u>, 2007 WL 1725421, at **7-8  (N.D. Cal. June 14, 2007).  If MGA Parties did not know that Bryant did not immediately leave Mattel, then they did not have "actual knowledge" of the specific wrong and cannot be held liable.

(g)    Mattel must prove the MGA Parties' (1) "substantial assistance or encouragement in accomplishing the breach", <u>and</u> (2) "actual knowledge" of the specific wrong they substantially assisted.  <u>MJT Sec., LLC v. Toronto-Dominion Bank</u>, 2007 WL 1725421, at **7-8  (N.D. Cal. June 14, 2007).  The language "in accomplishing the breach" makes it clear that mere substantial assistance is not adequate to establish a claim for aiding and abetting the breach of the duty of loyalty. The fact that both "actual knowledge" and "substantial assistance or encouragement in accomplishing the breach" demonstrates the requirement of intent.

1    (i) – (l)    See supra (MGA Parties' Reply to Mattel's Objection to MGA
2 Parties Proposed Verdict Form No. 2 (e)-(h)).

3    (m) – (n)    See supra (MGA Parties' Reply to Mattel's Objection to MGA
4 Parties Proposed Verdict Form No. 2 (i)-(j)).

5    (o) – (p)    See supra (MGA Parties' Reply to Mattel's Objection to MGA
6 Parties Proposed Verdict Form No. 2 (k)-(l)).

7    (q) – (r)    See supra (MGA Parties' Reply to Mattel's Objection to MGA
8 Parties Proposed Verdict Form No. 2 (m)-(n)).

9    (s)-(u)    See supra (MGA Parties' Reply to Mattel's Objection to MGA
10 Parties Proposed Verdict Form No. 6 (r)-(t)).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

**Proposed Form of Verdict No. 9 (Liability for Intentional Interference with Contract)**

*On the claim of Mattel against MGA and Isaac Larian for intentional interference with contract, we, the jury, find as follows:*

(a)    With respect to whether Mattel has proven MGA and/or Isaac Larian actually knew there was a contract between Mattel and Carter Bryant and its material terms, we find:

☐ yes or

☐ no. (If no, please proceed to Verdict Form No. 10)

(b)    With respect to whether Mattel has proven that Bryant breached his contract with Mattel in selling BRATZ to MGA and Isaac Larian, we find:

☐ yes; or

☐ no. (If no, please proceed to Verdict Form No. 10)

(c)    With respect to whether Mattel has proven that MGA and/or Isaac Larian were certain or substantially certain that they were contracting for something that rightfully belonged to Mattel when MGA contracted with Bryant for the rights to BRATZ, we find:

☐ yes or

☐ no.  (If no, please proceed to Verdict Form No. 10)

(d)    With respect to whether Mattel has proven that MGA and/or Isaac Larian approached Carter Bryant first about an offer to license BRATZ to them, we find:

☐ yes or

☐ no. (If no, please proceed to Verdict Form No. 10)

(e)    With respect to whether Mattel has proven it was harmed by Carter Bryant's breach of his contract with Mattel, we find:

78

1    ☐ yes or

2    ☐ no. (If no, please proceed to Verdict Form No. 10)

3    (f)   With respect to whether Mattel has proven that the conduct of MGA

4          and/or Isaac Larian in hiring Bryant as an independent contractor was a

5          substantial factor in the harm Mattel incurred from Bryant's breach of

6          his contract with Mattel, we find:

7          ☐ yes or

8          ☐ no. (If no, please proceed to Verdict Form No. 10)

9    (g)   With respect to whether Mattel has proven that MGA and/or Isaac

10          Larian engaged in an additional unlawful act independent of interfering

11          with Bryant's contract with Mattel, we find:

12          ☐  There was no additional unlawful act by Isaac Larian and/or MGA;

13          ☐ MGA and/or Isaac Larian aided and abetted Bryant in a breach of the

14             duty of loyalty he owed Mattel;

15          ☐ MGA and/or Isaac Larian aided and abetted Bryant in a breach of the

16             fiduciary duty he owed Mattel;

17          ☐  MGA and/or Isaac Larian engaged in acts of unfair competition.

18

19    ***If you have found that MGA or Larian are liable for intentional interference***

20    ***with contract, next consider whether Mattel should be barred from recovery on any***

21    ***of the following grounds:***

22

23    *On the claim of MGA or Larian that Mattel is estopped from asserting its*

24    *claim that MGA or Larian intentionally interfered with the Mattel-Bryant contract,*

25    *we, the jury, find as follows*:

26    (h)   With respect to whether Mattel made a representation of fact, at any

27          relevant time, by its actions, silence or omission, we find:

28          ☐ yes or

79

1            □no. (If no, please proceed to 9(l))

2      (i)      With respect to whether Mattel had knowledge that its employees were

3            moonlighting or working on independent artistic projects, we find:

4            □yes or

5            □no. (If no, please proceed to 9(l))

6      (j)      With respect to whether Carter Bryant was ignorant of the fact that

7            Mattel was allowed moonlighting or independent artistic work was not

8            intended as a policy, we find:

9            □yes or

10           □no. (If no, please proceed to 9(l))

11      (k)      With respect to whether Carter Bryant, MGA and/or Isaac Larian

12           reasonably relied on Mattel's silence to their detriment, we find:

13           □yes or

14           □no. (If no, please proceed to 9(l))

15

16      *On the claim of MGA and Isaac Larian that Mattel has acquiesced, at any*

17 *relevant time, to its employees moonlighting or independent artistic work, we, the*

18 *jury, find as follows*:

19      (l)      With respect to whether Mattel's acts or words, silence or inaction,

20           would be understood by a reasonable person as intended to indicate that

21           the conduct is allowed, we find:

22           □yes or

23           □no. (If no, please proceed to 9(n))

24      (m)      With respect to whether Carter Bryant understood Mattel's acts or

25           words, silence or inaction to indicate that it allowed moonlighting or

26           independent artistic work, we find:

27           □yes or

28           □no. (If no, please proceed to 9(n))

1

2     *On the claim of MGA and Isaac Larian that Mattel has consented, at any*

3  *relevant time, to its employees moonlighting or independent artistic work, we, the*

4  *jury, find as follows*:

5     (n)   With respect to whether Mattel's acts or words, silence or inaction,

6            would be understood by a reasonable person as intended to indicate

7            consent to moonlighting or independent artistic work, we find:

8            ☐yes or

9            ☐no. (If no, please proceed to 9(p))

10    (o)   With respect to whether Carter Bryant understood Mattel's acts or

11           words, silence or inaction to indicate consent to moonlighting or

12           independent artistic work, we find:

13           ☐yes or

14           ☐no. (If no, please proceed to 9(p))

15

16    *On the claim of MGA and Isaac Larian that Mattel has waived any right to*

17  *seek damages for any claims arising out of Carter Bryant's breach of his*

18  *employment agreement, we, the jury, find as follows*:

19    (p)   With respect to whether Mattel was aware of its violations of its

20           employment agreements, we find:

21           ☐yes or

22           ☐no. (If no, please proceed to 9(r))

23    (q)   With respect to whether Mattel indicated, by its words, actions or

24           silence that it did not intend to enforce its employment agreements, we

25           find:

26           ☐yes or

27           ☐no. (If no, please proceed to 9(r))

28

*On the claim of MGA and Isaac Larian respecting the date when the alleged wrongdoing on the part of MGA or Isaac Larian had taken place, we, the jury, find as follows:*

 (r) With respect to whether MGA have proven that Mattel suspected or had reason to suspect that wrongdoing had taken place before April 27, 2002, we find:

   ☐yes or

   ☐no.


*On the affirmative defense of laches, we, the jury, find as follows:*

 (s) With respect to whether MGA and/or Isaac Larian have established that Mattel delayed unreasonably in asserting its claim of intentional interference with contract against them, we find:

   ☐yes or

   ☐no.

 (t) With respect to whether MGA and/or Isaac Larian have established that they were prejudiced by Mattel's delay because evidence has been lost or witnesses memories have faded, we find:

   ☐yes or

   ☐no.

 (u) With respect to whether MGA and/or Isaac Larian have established that they were prejudiced by Mattel's delay because the MGA Parties have expended time, resources, or money in reliance on Mattel's failure to file suit, we find:

   ☐yes or

   ☐no.

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

## Mattel's Objections

Mattel objects to the defendants' proposed verdict form as follows:

(a)      This proposed question is argumentative to the extent is uses the phrase "actually knew."  The proposed question is also erroneous as a matter of law to the extent it states that Mattel must prove that defendants knew the "material terms" of the contract or contracts between Bryant and Mattel.  That is not the law.  Mattel need only prove that defendants "knew of the contract."  *See* CACI No. 2201.

(b)      This question falsely suggests that Mattel's claim for intentional interference with contract is limited to Bryant's selling BRATZ to MGA.  This proposed question is also misleading in light of the Court's ruling that Bryant "enter[ed] into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products."  April 25, 2008 Order, at 5.  Moreover, the proposed question is erroneous because Mattel need not prove that Bryant actually breached his contracts to recover against defendants for intentional interference with contractual relations.  Mattel need only prove that performance was disrupted or made more difficult.  *See* CACI No. 2201.

(c)      This question is misleading and improper.  The elements for Mattel's claim for intentional interference with contractual relations is set forth in the model instruction found in CACI (and incorporated into Mattel's proposed jury instructions).  This question, which purports to require some highly specific knowledge on the part of defendants is not supported by law and improperly limits Mattel's claim.  Moreover, the question fails to note that willful blindness is not a defense to any required knowledge of the contract.

(d)      This question improperly suggests that whether Bryant approached MGA or Larian first, or was first approached by them, is an element of intentional interference with contract.  It is not.  *See* CACI No. 2201.  MGA and/or Larian are

83

1  liable if they knew of Bryant's contract(s) with Mattel; intended to disrupt the

2  performance of the contract; prevented performance or made performance more

3  difficult; Mattel was harmed; and MGA and/or Larian's conduct was a substantial

4  factor in causing Mattel's harm.  Even if the issue of initial contact were somehow

5  relevant (which it is not), it certainly would not be Mattel's burden of proof.

6          (e)     This proposed question is contrary to the Court's April 25, 2008 Order

7  and therefore moot.  The Court has ruled that "[t]he undisputed facts show that the ...

8  fifth element[] [resulting harm to Mattel] [is] met."  April 25, 2008 Order, at 6.

9          (f)     Defendants' characterization of the wrongful conduct at issue in this

10 claim to "hiring Bryant as an independent contractor" misstates the facts and is

11 prejudicial to Mattel.  Defendants are liable for the harm caused by all their wrongful

12 conduct.

13         (g)     This proposed question is contrary to the Court's April 25, 2008 Order,

14 erroneous as a matter of law and prejudicial to Mattel.  As recognized by the Court,

15 there is no additional element of an "additional unlawful act independent" of the

16 interference.  *See* April 25, 2008 Order, at 6; *see also* CACI No. 2201.  Accordingly,

17 this proposed question, which purports to require the jury to make findings as to

18 "additional unlawful act" is erroneous and improper.

19         (h)-(k)        Defendants repeat the same objectionable and erroneous

20 questions regarding estoppel proposed in their Proposed Form of Verdict Form

21 No. 2(e)-(h), and Mattel incorporates its objections to those questions by reference.

22         (l)-(m)        Defendants repeat the same objectionable and erroneous

23 questions regarding acquiescence proposed in their Proposed Form of Verdict Form

24 No. 2(i)-(j), and Mattel incorporates its objections to those questions by reference.

25         (n)-(o)        Defendants repeat the same objectionable and erroneous

26 questions regarding consent proposed in their Proposed Form of Verdict Form

27 No. 2(k)-(l), and Mattel incorporates its objections to those questions by reference.

28

84

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

1    (p)-(q)    Defendants repeat the same objectionable and erroneous

2  questions regarding waiver proposed in their Proposed Form of Verdict Form

3  No. 2(m)-(n), and Mattel incorporates its objections to those questions by reference.

4    (r)    This question misstates the issue and the applicable legal standard.  The

5  Court has already ruled that the discovery rules does not apply to Mattel's claim for

6  intentional interference with contractual relations.  Hence, the only remaining

7  question for the jury is whether there was fraudulent concealment and resulting

8  tolling.  To answer this, the jury should be asked (as in Mattel's proposed verdict

9  form):  Did defendants fraudulently conceal the bases for Mattel's claim of

10 intentional interference with contract against them until on or after April 27, 2002?

11 Defendants' proposed question misstates the legal standard and is therefore

12 erroneous.

13    (s)-(u)    Defendants repeat the same objectionable and erroneous

14 questions regarding laches proposed in their Proposed Form of Verdict Form

15 No. 6(r)-(t), and Mattel incorporates its objections to those questions by reference.

16

17

18

19

20

21

22

23

24

25

26

27

28

**MGA Parties' Response**

(a)     The MGA Parties modified the language of CACI No. 2201 to assist the jury in understanding that a defendant need not know only of the contract, but of the effect of the contract.  The only authority Mattel has identified to the contrary (in its objections to the corresponding instruction), <u>Sebastian Int'l Inc. v. Russolillo</u>, 162 F. Supp. 2d 1198, 1203- 04 (C.D. Cal. 2001), involved a pleading standard on a motion to dismiss, which required that defendants "ha[ve] knowledge of the class of contractual relations potentially disrupted by their actions."   <u>Id.</u> at 1204 (emphasis added).

(b)     Mattel does not explain what claims should be added to the Proposed Verdict Form.  Mattel's citation to the Court's Order does not suggest any additional tortious conduct.  While Mattel is correct that the fourth element of a claim for intentional interference with contractual relations is sometimes phrased "breach or disruption," it is quite apparent that Mattel has not brought this claim on the basis of a purported disruption, but rather a purported actual breach.  Indeed, in denying MGA motion's for summary judgment on this claim, the Court noted that "as set forth above, Mattel has also raised triable issues of fact regarding its claim for breach of contract, the fourth element."  May 21, 2008 Order at 9.  Put simply, Mattel is not contending Bryant took a leave of absence – he left.   The relationship was not "disrupted," it was terminated.   Thus, Mattel will not succeed in its claim unless it shows a breach. <u>See</u> <u>Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc.</u>, 7 F.3d 1434, 1442 (9th Cir. 1993) ("To recover for intentional interference with a contractual relationship, Summit must show '(1) that [it] had a valid and existing contract, (2) that [Victor] had knowledge of the contract and intended to induce its breach, (3) <u>that the contract was in fact breached by [ZMTW]</u>, (4) that the breach was caused by [Victor's] unjustified and wrongful conduct, and (5) that [Summit] has suffered damage.'") (emphasis added); <u>see also</u> <u>Anlin Industries, Inc. v. Burgess</u>,

86

1  2006 WL 2308476, at *3 (E.D. Cal. Aug. 9, 2006) ("To state a cause of action for

2  interference with contract under California law, a plaintiff must allege (1) a valid

3  contract between the plaintiff and a third party; (2) that the defendant had knowledge

4  of this contract and intended to induce its breach; (3) that the contract was breached;

5  (4) that the breach was caused by the defendant's wrongful and unjustified conduct;

6  and (5) that the plaintiff suffered damage.") (emphasis added); Farmers Ins.

7  Exchange v. State of California, 175 Cal. App. 3d 494, 506 (1985) ("The elements of

8  this tort [for intentional interference with contract] include: 1) The existence of a

9  valid contract; 2) knowledge of the contract on the part of defendant and intent to

10 induce its breach; 3) breach of the contract by the third party; 4) proximate cause; 5)

11 damages.") (emphasis added).

12       (c)    Mattel's objection ignores that there can be no intent to interfere where

13 the defendant knows or believes its agreement with a third party will not infringe the

14 rights of the plaintiff. See 1-800 Contacts, Inc. v. Steinberg, 107 Cal. App. 4th 568,

15 586 (2003). "The required intent is shown if the defendant knows that the

16 interference is certain or substantially certain to occur as a result of his action."

17 Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist., 106 Cal. App. 4th 1219,

18 1239 (2003) (emphasis added, internal quotations and citations omitted).

19       (d)    It is settled that a contracting party is not liable for intentional

20 interference with contract where the breaching party initiates the contact with him.

21 See Restatement (Second) of Torts § 766, cmt. n (2007). See also DeVoto v. Pacific

22 Fidelity Life Ins. Co., 618 F.2d 1340, 1348 (9th Cir. 1980) (noting that "where a

23 contract has been abrogated, competitors may thereafter offer to deal with the party

24 who repudiated the contract without incurring liability in tort: there is no act of

25 inducement, and once the contract is abrogated there is no advantage to appropriate")

26 (citing Restatement (Second) of Torts § 766, cmt. n); Bauer v. Interpublic Group of

27 Companies, Inc.,   255 F. Supp. 2d 1086, 1093, 1095 (N.D. Cal. 2003); 1-800

28 Contacts, Inc., 107 Cal. App. 4th at 586 (where breaching party approached

87

1   defendant, defendant agreed to work with and set up meetings for others to work

2   with breaching party not enough to show inducement).  Thus, Mattel's objection that

3   "whether Bryant approached MGA or Larian first, or was first approached by them"

4   is not an element of intentional interference with contract is besides the point.

5          Moreover, it is not wrongful for a company to solicit or hire the at-will

6   employee of its competitor, because California law protects employees and their

7   pursuit of any employment or enterprise of their choice as more important than the

8   competitive business interests of the employers.   Likewise, competitor employers

9   have the right to offer more pay or better terms to another's employee, so long as the

10  employee is free to leave.  See also Reeves v. Hanlon, 33 Cal. 4th 1140, 1151 (2004)

11  (California "public policy generally supports a competitor's right to offer more pay

12  or better terms to another's employee, so long as the employee is free to leave. …

13  [I]f the law were to the contrary, the result 'would be intolerable, both to such

14  employers as could use the employe[e] more effectively and to such employe[e]s as

15  might receive added pay. It would put an end to any kind of competition.'") (citation

16  omitted); Metro Traffic Control, Inc. v. Shadow Traffic Network, 22 Cal. App. 4th

17  853, 859 (1994) ("California courts have consistently declared  … an expression of

18  public policy to ensure that every citizen shall retain the right to pursue any lawful

19  employment and enterprise of their choice"); Diodes, Inc. v. Franzen, 260 Cal. App.

20  2d 244, 255 (1968) (California public policy recognizes "[t]he interests of the

21  employee in his own mobility and betterment are deemed paramount to the

22  competitive business interests of the employers"); see also Hollingsworth Solderless

23  Terminal Co. v. Turley,  622 F.2d 1324, 1337 (9th Cir. 1980) ("[m]ere solicitation of

24  an employee, under no contract of employment, to leave and associate with a

25  competing firm is not illegal"); Interloc Solutions, Inc. v. Tech. Assoc. Int'l. Corp.,

26  2007 WL 2429715, at *2 (E.D. Cal. Aug. 24, 2007) (citing Reeves for the

27  proposition that "employees are not precluded from seeking new employment on

28  their own initiative"); Posdata Co. Ltd. v. Kim, 2007 WL 1848661, *7 (N.D. Cal.

88

1   June 27, 2007); <u>Continental Car-Na-Var Corp. v. Moseley</u>, 24 Cal. 2d 104, 110
2   (1944) (**"**[a] former employee has the right to engage in a competitive business for
3   himself and to enter into competition with his former employer, even for the business
4   of ... his former employer, provided such competition is fairly and legally
5   conducted.**"**); <u>accord</u> <u>VL Sys., Inc. v. Unisen, Inc.</u>, 152 Cal. App. 4th 708, 713, 715
6   (2007) (quoting <u>Diodes</u> and finding no unlawful solicitation of employee where the
7   employee initiated the new agreement with the defendant and **"**chose to seek the job
8   with**"** the defendant).

9       Mattel's objection ignores that a claim for intentional interference with an <u>at-</u>
10  <u>will</u> contract, such as the contract at issue here, requires Mattel to prove that Larian
11  and MGA engaged in wrongful conduct <u>independent</u> of "interfering" with Bryant's
12  contracts with Mattel. <u>See</u>   <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140, 1152-53 (2004)
13  ("[T]o recover for a defendant's interference with an at-will employment relation, a
14  plaintiff must plead and prove that the defendant engaged in an independently
15  wrongful act -- i.e., an act 'proscribed by some constitutional, statutory, regulatory,
16  common law, or other determinable legal standard' -- that induced an at-will
17  employee to leave the plaintiff.") (citations omitted).

18      (e)   Although the preceding objection relies on the Court's summary
19  judgment findings, the objection misinterprets the Court's ruling, as Mattel had not
20  moved for summary judgment on its claim for intentional interference with contract.
21  Rather, *for purposes of summary judgment*, the Court made certain statements in
22  dicta.  The Court did not grant summary judgment to Mattel on this issue, nor could
23  it have done so as Mattel did not seek relief on this issue and neither party briefed the
24  issue of whether Mattel had been harmed as a matter of law.

25      (f)   MGA Parties hired Bryant as an independent contractor.  Mattel does
26  not explain what additional actions should be included in the instructions.

27      (g)   Although the preceding objection relies on the Court's summary
28  judgment findings, the instruction misinterprets the Court's ruling, as Mattel had not

1    moved for summary judgment on its claim for intentional interference with contract.

2    Mattel's objection ignores that a claim for intentional interference with an <u>at-</u>
3    <u>will</u> contract, such as the contract at issue here, requires Mattel to prove that Larian
4    and MGA engaged in wrongful conduct <u>independent</u> of "interfering" with Bryant's
5    contracts with Mattel. <u>See</u>  <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140, 1152-53 (2004)
6    ("[T]o recover for a defendant's interference with an at-will employment relation, a
7    plaintiff must plead and prove that the defendant engaged in an independently
8    wrongful act -- i.e., an act 'proscribed by some constitutional, statutory, regulatory,
9    common law, or other determinable legal standard' -- that induced an at-will
10   employee to leave the plaintiff.") (citations omitted).

11   (h) – (k)      <u>See</u> <u>supra</u> (MGA Parties' Reply to Mattel's Objection to MGA
12   Parties Proposed Verdict Form No. 2 (e)-(h)).

13   (l) – (m)      <u>See</u> <u>supra</u> (MGA Parties' Reply to Mattel's Objection to MGA
14   Parties Proposed Verdict Form No. 2 (i)-(j)).

15   (n) – (o)      <u>See</u> <u>supra</u> (MGA Parties' Reply to Mattel's Objection to MGA
16   Parties Proposed Verdict Form No. 2 (k)-(l)).

17   (p) – (q)      <u>See</u> <u>supra</u> (MGA Parties' Reply to Mattel's Objection to MGA
18   Parties Proposed Verdict Form No. 2 (m)-(n)).

19   (r)      Under California law, "a suspicion of wrongdoing, coupled with a
20   knowledge of the harm and its cause" is sufficient to end tolling based on fraudulent
21   concealment. <u>Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame</u>
22   <u>Robertson</u>, 96 Cal. App. 4th 884, 890-91 (2002); <u>see also</u> <u>Platt Elec. Supply, Inc. v.</u>
23   <u>EOFF Elec., Inc.</u>, __ F.3d __, 2008 WL 1722882, at *5 (9th Cir. Apr. 15, 2008)
24   (inquiry notice ends tolling based on fraudulent concealment); <u>Soliman v. Philip</u>
25   <u>Morris Inc.</u>, 311 F.3d 966, 971-72 (9th Cir. 2002) (plaintiff "need not be aware of the
26   specific 'facts' necessary to establish the claim" for him to be on inquiry notice,  nor
27   need he be aware of the particular legal theory that will support it; his claim accrues
28   "when, simply put, he at least 'suspects ... that someone has done something wrong'

90

1   to him"). Mattel's theory of fraudulent concealment is also improper to the extent it

2   suggests that fraudulent concealment by one defendant would necessarily toll the

3   statute as to another defendant not found culpable in the alleged concealment. See

4   Sanchez v. South Hoover Hospital, 18 Cal. 3d 93, 100 ("The rationale for the

5   foregoing rule [of fraudulent concealment] is that the culpable defendant should be

6   estopped from profiting by his own wrong [t]o the extent that it hindered an

7   'otherwise diligent' plaintiff in discovering his cause of action.") (emphasis added).

8       (s)-(u)       See supra (MGA Parties' Reply to Mattel's Objection to MGA

9   Parties Proposed Verdict Form No. 6 (r)-(t)).

## -REVISED-

## Proposed Form of Verdict No. 10 (Conversion)

*On the claim of Mattel against MGA, MGA (HK) and Isaac Larian for conversion, we, the jury, find as follows:*

    (a)    With respect to whether Mattel has established whether Mattel owned the BRATZ sketches under Section 2(a) of the Inventions Agreement, we find:

☐ yes or

☐ no. (If no, please proceed to Verdict Form No. 11)

    (b)    With respect to Mattel's claims that MGA, Isaac Larian and MGA (HK) intentionally prevented Mattel from having access to the above-mentioned items for a significant period of time, or destroyed Mattel's personal property;

☐ yes or

☐ no. (If no, please proceed to Verdict Form No. 11)

    (c)    With respect to Mattel's claim that Mattel did not consent to MGA, Isaac Larian and/or MGA (HK) interference with Mattel's access to the above-mentioned items for a significant period of time, or destroyed Mattel's personal property;

☐ yes or

☐ no. (If no, please proceed to Verdict Form No. 11)

    (d)    With respect to Mattel's claim that it was harmed by such conduct, we find:

☐ yes or

☐ no. (If no, please proceed to Verdict Form No. 11)

(e)   With respect to Mattel's claims that MGA, Isaac Larian and/or MGA (HK)'s conduct was a substantial factor in causing Mattel's harm, we find:

☐ yes or

☐ no. (If no, please proceed to Verdict Form No. 11)

*If you have found that MGA(HK) or Larian are liable for conversion, next consider whether Mattel should be barred from recovery on any of the following grounds:*

*On the claim of MGA, MGA (HK) or Larian that Mattel is estopped from asserting its claim that MGA, MGA (HK) or Larian converted its property, we, the jury, find as follows*:

(f)   With respect to whether Mattel made a representation of fact, at any relevant time, by its actions, silence or omission, we find:

☐ yes or

☐ no. (If no, please proceed to 10(j))

(g)   With respect to whether Mattel had knowledge that MGA, MGA (HK) and/or Isaac Larian had converted its property, we find:

☐ yes or

☐ no. (If no, please proceed to 10(j))

(h)   With respect to whether MGA, MGA (HK) and/or Isaac Larian were ignorant of the fact that Mattel objected to the use of its property, we find:

☐ yes or

☐ no. (If no, please proceed to 10(j))

(i)   With respect to whether MGA, MGA (HK) and/or Isaac Larian reasonably relied on Mattel's silence to their detriment, we find:

93

1      ☐ yes or

2      ☐ no. (If no, please proceed to 10(j))

3

4      *On the claim of MGA, MGA (HK) and Isaac Larian that Mattel has waived*

5      *any right to seek damages for its conversion claims, we, the jury, find as follows*:

6      (j)   With respect to whether Mattel was aware of the use of its property, we

7            find:

8            ☐ yes or

9            ☐ no. (If no, please proceed to 10(l))

10     (k)   With respect to whether Mattel indicated, by its words, actions or

11           silence that it did not intend to enforce claims for the use of its property,

12           we find:

13           ☐ yes or

14           ☐ no. (If no, please proceed to 10(l))

15

16     *On the claim of MGA respecting the date when the Mattel suspected or had*

17     *reason to suspect the alleged wrongdoing on the part of MGA had taken place, we,*

18     *the jury, find as follows:*

19     (l)   With respect to whether MGA have proven that Mattel suspected or had

20           reason to suspect that wrongdoing had taken place before April 27, 2001,

21           we find:

22           ☐ yes or

23           ☐ no.

24

25     *On the affirmative defense of laches, we, the jury, find as follows:*

26     (m)   With respect to whether MGA, MGA (HK) and/or Isaac Larian have

27           established that Mattel delayed unreasonably in asserting its claim for

28           conversion against them, we find:

94

1          ☐ yes or

2          ☐ no.

3      (n)    With respect to whether MGA, MGA (HK) and/or Isaac Larian have

4          established that they were prejudiced by Mattel's delay because

5          evidence has been lost or witnesses memories have faded, we find:

6          ☐ yes or

7          ☐ no.

8      (o)    With respect to whether MGA, MGA (HK) and/or Isaac Larian have

9          established that they were prejudiced by Mattel's delay because the

10         MGA Parties have expended time, resources, or money in reliance on

11         Mattel's failure to file suit, we find:

12         ☐ yes or

13         ☐ no.

## Mattel's Objections

Mattel objects to the defendants' proposed verdict form as follows:

All of defendants' proposed questions regarding Mattel's conversion claim are erroneous and misleading to the extent they omit reference to MGA.  Mattel is pursuing its conversion claim against MGA, Isaac Larian and MGA (HK).  *See* Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and Counterclaims ("Mattel's Counterclaims"), at 72 (conversion claim "Against All Counter-defendants"); *see also* Final Pre-Trial Conference Order, at 11.

(a)    This question improperly suggests that Mattel's conversion claim is limited to the Bratz drawings, when it relates to all tangible items wrongfully converted by defendants.  Mattel also objects to defendants' use of the pejorative term "sketches" to refer to Bryant's Bratz drawings and designs.

(b)    Defendants' proposed question wrongly asks whether all of the defendants intentionally prevented Mattel from having access to the items in question or destroyed Mattel's personal property, when it is sufficient for Mattel to prove that any of the defendants either intentionally took possession of the objects *or* prevented access *or* destroyed them.  *See* CACI No. 2100.

(c)    As noted above, this question improperly eliminates the possibility of taking possession.

(f)-(i)    Defendants repeat the same objectionable and erroneous questions regarding estoppel proposed in their Proposed Form of Verdict Form No. 2(e)-(h), and Mattel incorporates its objections to those questions by reference.

(j)-(k)    Defendants repeat the same objectionable and erroneous questions regarding waiver proposed in their Proposed Form of Verdict Form No. 2(m)-(n), and Mattel incorporates its objections to those questions by reference.

(l)    This question misstates the issue and the applicable legal standard.  The Court has already ruled that the discovery rules does not apply to Mattel's conversion

96

1   claim.  Hence, the only remaining question for the jury is whether there was

2   fraudulent concealment and resulting tolling.  To answer this, the jury should be

3   asked (as in Mattel's proposed verdict form):  Did defendants fraudulently conceal

4   the bases for Mattel's claim of intentional interference with contract against them

5   until on or after April 27, 2001?  Defendants' proposed question misstates the legal

6   standard and is therefore erroneous.

7          (m)-(o)        Defendants repeat the same objectionable and erroneous

8   questions regarding laches proposed in their Proposed Form of Verdict Form

9   No. 6(r)-(t), and Mattel incorporates its objections to those questions by reference.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MGA Parties' Response**

The MGA Parties have corrected this form to reflect the missing conversion claim against MGA because it is included in the Final Pre-Trial Conference Order. However, the MGA Parties note that although Mattel's complaint asserts a conversion claim against all defendants, in its Motion for Summary Judgment, Mattel does not list this claim as one of the claims asserted against MGA in Phase One. (Mattel MSJ at 50:18-20.) Because Mattel apparently dropped MGA from the claim for Phase One purposes, and MGA relied upon that assertion during the summary judgment process, Mattel should be estopped from now resurrecting the claim against MGA.

(a)   Per the Court's ruling on the MGA Parties' Motion for Partial Summary Judgment, Mattel's conversion claim is limited to tangible property, and may not be applied to ideas or concepts. See April 25, 2008 MSJ Order at 3. Mattel has not identified any non-discarded tangible property that should be included beyond the sketches. The term "sketch" is not pejorative or derogatory and Mattel has not cited anything to support its contention that the term is "pejorative." Mattel's own expert used the term repeatedly in reference to Bryant's works at issue here. (See, e.g., Loetz Report, at 2 ("When a designer has an idea, he sketches it out."); id. at 4 ("In Carter Bryant's sketches, the Bratz figures are posed …."); id. at 6 ("The Bratz sketches were drawn …."); id. at 9 ("[i]t is the industry standard when creating a new toy … to have the original artist draw sketches"); Loetz Depo. at 83:6-13 ("Q. Does the term 'sketch' versus 'drawing' have any distinct meaning to you?  A.  Not really …. I don't think there's any real distinction and I think they're used interchangeably.").)

(b)   MGA Parties' Proposed Form includes Bryant and Larian.  The Proposed Form does not include MGA, as Mattel waived its claims as to MGA for Phase One purposes. See Mattel MSJ at 50:18-20.  Mattel's contention that "took

98

1  possession of" should be added is duplicative and unnecessary.  Further, contrary to

2  Mattel's objection, Mattel's must prove this claim against each defendant

3  independently.

4        (c)    <u>See</u> <u>supra</u> (b).

5        (f) – (i)    <u>See</u> <u>supra</u> (MGA Parties' Reply to Mattel's Objection to MGA

6  Parties Proposed Verdict Form No. 2 (e)-(h)).

7        (j) – (k)    <u>See</u> <u>supra</u> (MGA Parties' Reply to Mattel's Objection to MGA

8  Parties Proposed Verdict Form No. 2 (m)-(n)).

9        (l)    <u>See</u> <u>supra</u> (MGA Parties' Reply to Mattel's Objection to MGA Parties

10  Proposed Verdict Form No. 9 (r)).

11        (m) – (o)    <u>See</u> <u>supra</u> (MGA Parties' Reply to Mattel's Objection to MGA

12  Parties Proposed Verdict Form No. 6 (r)-(t)).

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

**<u>Proposed Form of Verdict No. 14 (Statutory Unfair Competition)</u>**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

## PHASE 1-B VERDICT FORMS

## Proposed Form of Verdict No. 1 (Copyright Ownership)

*Do you find that Mattel has established by a fair preponderance of the credible evidence that it is the owner of any of the following works?*

    (a)    With respect to Mattel's claim that it owns Carter Bryant's drawing referred to as "drawing of Doll No. 1", contained in Mattel Registration VA 1-387-648, we find:

☐yes or

☐no.

    (b)    With respect to Mattel's claim that it owns Carter Bryant's drawing referred to as "drawing of Doll No. 2", contained in Mattel Registration VA 1-387-649, we find:

☐yes or

☐no.

    (c)    With respect to Mattel's claim that it owns Carter Bryant's drawing referred to as "group drawing of Dolls", contained in Mattel Registration VA 1-387-650, we find:

☐yes or

☐no.

    (d)    With respect to Mattel's claim that it owns Carter Bryant's drawing referred to as "drawing of Doll No. 3", contained in Mattel Registration VA 1-387-651, we find:

☐yes or

☐no.

(e)  With respect to Mattel's claim that it owns Carter Bryant's drawing referred to as "drawing of Doll No. 4", contained in Mattel Registration VA 1-387-652, we find:

☐ yes or

☐ no.

(f)  With respect to Mattel's claim that it owns Carter Bryant's drawing referred to as "drawing of Doll No. 5", contained in Mattel Registration VA 1-387-653, we find:

☐ yes or

☐ no.

(g)  With respect to Mattel's claim that it owns Carter Bryant's drawing referred to as "drawing of Doll No. 6", contained in Mattel Registration VA 1-387-654, we find:

☐ yes or

☐ no.

(h)  With respect to Mattel's claim that it owns Carter Bryant's drawing referred to as "drawing of Doll No. 7", contained in Mattel Registration VA 1-387-655, we find:

☐ yes or

☐ no.

(i)  With respect to Mattel's claim that it owns Carter Bryant's drawing referred to as "drawing of Doll No. 8", contained in Mattel Registration VA 1-387-656, we find:

☐ yes or

☐ no.

(j)  With respect to Mattel's claim that it owns Carter Bryant's drawing referred to as "drawing of Doll No. 9", contained in Mattel Registration VA 1-387-657, we find:

1           ☐ yes or

2           ☐ no.

3    (k)    With respect to Mattel's claim that it owns Carter Bryant's drawing

4         referred to as "drawing of Doll No. 10", contained in Mattel

5         Registration VA 1-387-658, we find:

6           ☐ yes or

7           ☐ no.

8    (l)     With respect to Mattel's claim that it owns Carter Bryant's drawing

9         referred to as "drawing of Doll No. 11", contained in Mattel

10        Registration VA 1-387-659, we find:

11          ☐ yes or

12          ☐ no.

13   (m)   With respect to Mattel's claim that it owns Carter Bryant's drawing

14        referred to as "drawing of Doll No. 12", contained in Mattel

15        Registration VA 1-387-660, we find:

16          ☐ yes or

17          ☐ no.

18   (n)    With respect to Mattel's claim that it owns Carter Bryant's drawing

19        referred to as "body drawing", contained in Registration Mattel VAu

20        715-270, we find:

21          ☐ yes or

22          ☐ no.

23   (o)    With respect to Mattel's claim that it owns Carter Bryant's drawing

24        referred to as "drawing of two dolls", contained in Mattel Registration

25        VAu 715-271, we find:

26          ☐ yes or

27          ☐ no.

28

1

(p)     With respect to Mattel's claim that it owns Carter Bryant's drawing

2                referred to as "drawing of heads", contained in Mattel Registration VAu

3                715-273 , we find:

4                ☐yes or

5                ☐no.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

104

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

## Mattel's Objections

Mattel objects to defendants' proposed verdict form as follows:

(a)-(p)        Mattel objects to defendants' proposed verdict form and all of the findings requested therein on the grounds that they are unnecessary and improper. Mattel's ownership of the copyrights at issue will be determined by the Court and/or the jury in Phase 1A.  Accordingly, there is no need to ask the jury to make findings on this issue in Phase 1B.  The proposed form is also misleading and argumentative in that it asks the jury to find that Mattel established ownership by "a *fair* preponderance of the *credible* evidence."  The burden of proof is a preponderance of the evidence, and to the extent that the defendants' proposed form erroneously suggests that Mattel's burden is heightened, it is prejudicial.

105

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

**MGA Parties' Response**

(a) – (p)      Mattel has brought an action for copyright infringement.   A necessary precondition to finding infringement is determining copyright ownership. This Proposed Verdict Form seeks to have the jury determine Mattel's copyright interest in Bryant's various drawings.   By having the jury answer a question a to each drawing, the Verdict Form reduces the risk of confusion and helps to ensure a clear verdict on infringement.   It is not clear how the form is "misleading" or "argumentative."

Mattel objects that the MGA Parties' use of the words "fair" and "credible" somehow prejudices the jury against them.  Specifically, Mattel objects to the phrase "fair preponderance of credible evidence" instead of "preponderance of evidence." However, the phrase "fair preponderance of credible evidence" is not an original creation by the MGA Parties and is used to signify the same standard.   See, e.g., Sogem-Afrimet, Inc. v. M/V Ikan Selayang, 951 F. Supp. 429, 441 (S.D.N.Y. 1996), ("Upon examination, the fair preponderance of credible evidence supports plaintiff's allegation that it delivered the cargo to defendant in good condition and received damaged goods at outturn. Accordingly, the court finds that plaintiff has sustained its burden of proving its prima facie case."), aff'd, 122 F.3d 1057 (2d Cir. 1997).  It is simply more descriptive.  Mattel's continual insistence that "less is more" in the face of a long and complex trial with myriad legal terms and concepts is, in the MGA Parties view, misguided.

1

## -REVISED-

2

## Proposed Form of Verdict No. 2 (Copyright Infringement)

3

4    *Do you find, after considering each essential element of copyright*

5    *infringement, including the filtration required for the extrinsic and intrinsic tests,*

6    *that Mattel has established by a fair preponderance of the credible evidence that*

7    *MGA, MGA (HK), or Isaac Larian infringed Mattel's copyrights with respect to the*

8    *following works, each considered separately?*

9    (a)    With respect to Mattel's claim that MGA, MGA (HK), and/or Isaac

10        Larian infringed Carter Bryant's drawing referred to as "drawing of

11        Doll No. 1", contained in Registration VA 1-387-648, we find:

12        **YES** ____    **NO** ____

13        If YES:

14        (i)    As to BRATZ dolls

15

16        ☐yes or  (If yes, as to which defendant(s) _____)

17        ☐no.

18        (ii)    As to character art

19

20        ☐yes or  (If yes, as to which defendant(s) _____)

21        ☐no.

22    (b)    With respect to Mattel's claim that MGA, MGA (HK), and/or Isaac

23        Larian infringed Carter Bryant's drawing referred to as "drawing of

24        Doll No. 2", contained in Registration VA 1-387-649, we find:

25        **YES** ____    **NO** ____

26        If YES:

27        **(i)**    As to BRATZ dolls

28

107

1      ☐yes or (If yes, as to which defendant(s) _____)

2      ☐no.

3

4      **(ii)**    As to character art

5      ☐yes or (If yes, as to which defendant(s) _____)

6      ☐no.

7      (c)    With respect to Mattel's claim that MGA, MGA (HK), and/or Isaac

8            Larian infringed Carter Bryant's drawing referred to as "group drawing

9            of Dolls", contained in Registration VA 1-387-650, we find:

10     **YES** ____    **NO** ____

11           If YES:

12

13     **(i)**    As to BRATZ dolls

14     ☐yes or (If yes, as to which defendant(s) _____)

15     ☐no.

16

17     **(ii)**    As to character art

18     ☐yes or (If yes, as to which defendant(s) _____)

19     ☐no.

20     (d)    With respect to Mattel's claim that MGA, MGA (HK), and/or Isaac

21           Larian infringed Carter Bryant's drawing referred to as "drawing of

22           Doll No. 3", contained in Registration VA 1-387-651, we find:

23     **YES** ____    **NO** ____

24           If YES:

25

26     **(i)**    As to BRATZ dolls

27     ☐yes or (If yes, as to which defendant(s) _____)

28     ☐no.

**(ii)**   As to character art

☐yes or  (If yes, as to which defendant(s) _____)
☐no.

(e)   With respect to Mattel's claim that MGA, MGA (HK), and/or Isaac Larian infringed Carter Bryant's drawing referred to as "drawing of Doll No. 4", contained in Registration VA 1-387-652, we find:

**YES \_\_\_\_   NO \_\_\_\_**

If YES:

**(i)**   As to BRATZ dolls

☐yes or (If yes, as to which defendant(s) _____)
☐no.

**(ii)**   As to character art

☐yes or  (If yes, as to which defendant(s) _____)
☐no.

(f)   With respect to Mattel's claim that MGA, MGA (HK), and/or Isaac Larian infringed Carter Bryant's drawing referred to as "drawing of Doll No. 5", contained in Registration VA 1-387-653, we find:

**YES \_\_\_\_   NO \_\_\_\_**

If YES:

**(i)**   As to BRATZ dolls

☐yes or  (If yes, as to which defendant(s) _____)
☐no.

**(ii)**   As to character art

109

1    ☐yes or (If yes, as to which defendant(s) _____)

2    ☐no.

3    (g)   With respect to Mattel's claim that MGA, MGA (HK), and/or Isaac

4    Larian infringed Carter Bryant's drawing referred to as "drawing of

5    Doll No. 6", contained in Registration VA 1-387-654, we find:

6    **YES _____   NO _____**

7        If YES:

8/9    **(i)**    As to BRATZ dolls

10    ☐yes or  (If yes, as to which defendant(s) _____)

11    ☐no.

12/13    **(ii)**   As to character art

14    ☐yes or  (If yes, as to which defendant(s) _____)

15    ☐no.

16    (h)   With respect to Mattel's claim that MGA, MGA (HK), and/or Isaac

17    Larian infringed Carter Bryant's drawing referred to as "drawing of

18    Doll No. 7", contained in Registration VA 1-387-655**,** we find:

19    **YES _____   NO _____**

20        If YES:

21/22    **(i)**    As to BRATZ dolls

23    ☐yes or  (If yes, as to which defendant(s) _____)

24    ☐no.

25/26    **(ii)**   As to character art

27    ☐yes or  (If yes, as to which defendant(s) _____)

28    ☐no.

1      (i)     With respect to Mattel's claim that MGA, MGA (HK), and/or Isaac

2               Larian infringed Carter Bryant's drawing referred to as "drawing of

3               Doll No. 8", contained in Registration VA 1-387-656, we find:

4               **YES \_\_\_\_   NO \_\_\_\_**

5                  If YES:

6

7                 **(i)**    As to BRATZ dolls

8                   ☐yes or  (If yes, as to which defendant(s) _____)

9                   ☐no.

10

11              **(ii)**   As to character art

12                ☐yes or  (If yes, as to which defendant(s) _____)

13                ☐no.

14     (j)     With respect to Mattel's claim that MGA, MGA (HK), and/or Isaac

15              Larian infringed Carter Bryant's drawing referred to as "drawing of

16              Doll No. 9", contained in Registration VA 1-387-657, we find:

17              **YES \_\_\_\_   NO \_\_\_\_**

18                If YES:

19

20              **(i)**    As to BRATZ dolls

21               ☐yes or  (If yes, as to which defendant(s) _____)

22               ☐no.

23

24            **(ii)**   As to character art

25             ☐yes or (If yes, as to which defendant(s) _____)

26               ☐no.

27

28

1      (k)     With respect to Mattel's claim that MGA, MGA (HK), and/or Isaac

2                Larian infringed Carter Bryant's drawing referred to as "drawing of

3                Doll No. 10", contained in Registration VA 1-387-658, we find:

4                **YES \_\_\_\_   NO \_\_\_\_**

5                    If YES:

6

7                   **(i)**    As to BRATZ dolls

8                    ☐yes or  (If yes, as to which defendant(s) _____)

9                    ☐no.

10

11               **(ii)**   As to character art

12                   ☐yes or  (If yes, as to which defendant(s) _____)

13                   ☐no.

14    (l)     With respect to Mattel's claim that MGA, MGA (HK), and/or Isaac

15               Larian infringed Carter Bryant's drawing referred to as "drawing of

16               Doll No. 11", contained in Registration VA 1-387-659, we find:

17               **YES \_\_\_\_   NO \_\_\_\_**

18                  If YES:

19

20            **(i)**    As to BRATZ dolls

21                ☐yes or  (If yes, as to which defendant(s) _____)

22              ☐no.

23

24            **(ii)**   As to character art

25                ☐yes or  (If yes, as to which defendant(s) _____)

26              ☐no.

27

28

(m) With respect to Mattel's claim that MGA, MGA (HK), and/or Isaac Larian infringed Carter Bryant's drawing referred to as "drawing of Doll No. 12", contained in Registration VA 1-387-660, we find:

**YES** _____   **NO** _____

If YES:

**(i)** As to BRATZ dolls

☐ yes or  (If yes, as to which defendant(s) _____)
☐ no.

**(ii)** As to character art

☐ yes or  (If yes, as to which defendant(s) _____)
☐ no.

(n) With respect to Mattel's claim that MGA, MGA (HK), and/or Isaac Larian infringed Carter Bryant's drawing referred to as "body drawing", contained in Registration VAu 715-270, we find:

**YES** _____   **NO** _____

If YES:

**(i)** As to BRATZ dolls

☐ yes or  (If yes, as to which defendant(s) _____)
☐ no.

**(ii)** As to character art

☐ yes or  (If yes, as to which defendant(s) _____)
☐ no.

113

1    (o)    With respect to Mattel's claim that MGA, MGA (HK), and/or Isaac

2           Larian infringed Carter Bryant's drawing referred to as "drawing of two

3           dolls", contained in Registration VAu 715-271, we find:

4           **YES \_\_\_\_    NO \_\_\_\_**

5                If YES:

6

7           **(i)**    As to BRATZ dolls

8                ☐yes or  (If yes, as to which defendant(s) _____)

9                ☐no.

10

11          **(ii)**    As to character art

12                ☐yes or  (If yes, as to which defendant(s) _____)

13                ☐no.

14   (p)    With respect to Mattel's claim that MGA, MGA (HK), and/or Isaac

15          Larian infringed Carter Bryant's drawing referred to as "drawing of

16          heads", contained in Registration VAu 715-273, we find:

17          **YES \_\_\_\_    NO \_\_\_\_**

18                If YES:

19

20          **(i)**    As to BRATZ dolls

21                ☐yes or  (If yes, as to which defendant(s) _____)

22                ☐no.

23

24          **(ii)**    As to character art

25                ☐yes or (If yes, as to which defendant(s) _____)

26                ☐no.

27

28

1  *If you have found that MGA, MGA (HK), or Larian are liable for copyright*
2  *infringement, next consider whether Mattel should be barred from recovery on any*
3  *of the following grounds:*
4
5  *On the claim of MGA , MGA (HK), and Isaac Larian that Mattel is estopped*
6  *from asserting claims for copyright infringement, we, the jury, find as follows:*
7      (q)    With respect to whether Mattel made a representation of fact, at any
8               relevant time, by its actions, silence or omission, we find:
9               ☐yes or
10              ☐no.  (If no, please proceed to 2(u))
11     (r)    With respect to whether Mattel had knowledge that BRATZ potentially
12              infringed on its intellectual property, we find:
13              ☐yes or
14              ☐no. (If no, please proceed to 2(u))
15     (s)    With respect to whether MGA, MGA (HK), and/or Isaac Larian were
16              ignorant of Mattel's claims of ownership of Bryant's BRATZ sketches,
17              we find:
18              ☐yes or
19              ☐no. (If no, please proceed to 2(u))
20     (t)    With respect to whether MGA, MGA (HK), and/or Isaac Larian
21              reasonably relied on Mattel's silence to their detriment, we find:
22              ☐yes or
23              ☐no. (If no, please proceed to 2(u))
24
25 *On the claim of MGA, MGA (HK), and Isaac Larian that Mattel has*
26 *acquiesced, at any relevant time, to the infringement of its alleged copyrights, we,*
27 *the jury, find as follows:*
28

1   (u)  With respect to whether Mattel's acts or words, silence or inaction,

2      would be understood by a reasonable person as intended to indicate that

3      the conduct is allowed, we find:

4      ☐ yes or

5      ☐ no. (If no, please proceed to 2(w))

6   (v)  With respect to whether MGA, MGA (HK), and/or Isaac Larian

7      understood Mattel's acts or words, silence or inaction to indicate that it

8      had no objection to the development and marketing of the BRATZ, we

9      find:

10      ☐ yes or

11      ☐ no. (If no, please proceed to 2(w))

12

13   *On the claim of MGA, MGA (HK),and Isaac Larian that Mattel has*

14 *abandoned its claims for copyright infringement, we, the jury, find as follows:*

15   (w)  With respect to whether Mattel intended to surrender ownership rights

16      in the work, we find:

17      ☐ yes or

18      ☐ no. (If no, please proceed to 2(y))

19   (x)  With respect to whether Mattel's conduct was consistent with an intent

20      to abandon or implied an abandonment, we find:

21      ☐ yes or

22      ☐ no. (If no, please proceed to 2(y))

23

24   *On the claim of MGA, MGA (HK),and Isaac Larian that Mattel cannot*

25 *recover on an action for copyright infringement as the similarities between the*

26 *protectable elements of the BRATZ drawings and the BRATZ dolls are de minimis,*

27 *we, the jury, find as follows:*

28

(y)   With respect to whether the similarities between the drawings and the dolls consist primarily of unprotectable elements:

☐ yes or

☐ no. (If no, please proceed to 2(aa))

(z)   With respect to whether the drawings and the dolls are virtually identical:

☐ yes or

☐ no. (If no, please proceed to 2(aa))

*On the affirmative defense of laches, we, the jury, find as follows:*

(aa)   With respect to whether MGA, MGA (HK), and/or Isaac Larian have established that Mattel delayed unreasonably in asserting its claim against them for copyright infringement, we find:

☐ yes or

☐ no.

(bb)   With respect to whether MGA, MGA (HK), and/or Isaac Larian have established that they were prejudiced by Mattel's delay because evidence has been lost or witnesses memories have faded, we find:

☐ yes or

☐ no.

(cc)   With respect to whether MGA, MGA (HK), and/or Isaac Larian have established that they were prejudiced by Mattel's delay because they have expended time, resources, or money in reliance on Mattel's failure to file suit, we find:

☐ yes or

☐ no.

117

1    *If you have found that MGA, MGA (HK), or Isaac Larian are liable for*
2    *copyright infringement, that none of their affirmative defenses apply, and that*
3    *Mattel's recovery is not barred by the statute of limitations, next consider whether*
4    *Mattel is entitled to damages resulting from MGA, MGA (HK), or Isaac Larian's*
5    *infringement.*

6    (dd)   *For each drawing you found to be infringed,* do you find that Mattel
7           has established by a fair preponderance of the evidence that it is entitled
8           to recover more than nominal damages from MGA and MGA (HK) as a
9           consequence of a finding or findings of copyright infringement?
10          ☐ yes or
11          ☐ no.

12   (ee)   If your answer is YES, state the amount of gross revenues that Mattel
13          has proven are attributable to the protectable portion of the copyrighted
14          work:
15          $_____

16   (ff)   Next, state the deductible expenses associated with the infringing
17          products:
18          $_____

19   (gg)   Finally, what are the profits attributable to the protectable portion of the
20          infringing product that Mattel has established will fairly and reasonably
21          compensate it for the losses that it has incurred as a consequence of
22          MGA and MGA (HK)'s copyright infringement.
23          $_____

24   (hh)   *For each drawing you found to be infringed,* do you find that Mattel
25          has established by a fair preponderance of the evidence that it is entitled
26          to recover more than nominal damages from Isaac Larian as a
27          consequence of a finding or findings of copyright infringement?
28          ☐ yes or

118

1   ☐no.

2   (ii)   If your answer is YES, state the amount of gross revenues that Mattel

3   has proven are attributable to the protectable portion of the copyrighted

4   work

5   $_____

6   (jj)   Next, state the deductible expenses associated with the infringing

7   products:

8   $_____

9   (kk)   Finally, what are the profits attributable to the protectable portion of the

10   infringing product that Mattel has established will fairly and reasonably

11   compensate it for the losses that it has incurred as a consequence of

12   Isaac Larian's copyright infringement.

13   $_____

## Mattel's Objections

Mattel objects to defendants' proposed verdict form as follows:

(a)-(p)    The proposed form is misleading and argumentative in that it asks the jury to find that Mattel established infringement by "a *fair* preponderance of the *credible* evidence."  The burden of proof is a preponderance of the evidence, and to the extent that the defendants' proposed form erroneously suggests that Mattel's burden is heightened, it is prejudicial.  The proposed form is also improper and prejudicial in that defendants tell the jury that filtration analysis is "required for the extrinsic and intrinsic tests," which is erroneous as a matter of law for a variety of reasons.  First, the jury does not apply filtration – if any one does, it would be the Court.  Second, filtration does not apply to visual works of art such as Bryant's Bratz works.  Third, filtration is not required for both the extrinsic and intrinsic tests even where it does apply.  Accordingly, there is no requirement that Mattel's copyrights be considered separately.  Nor is there any reason to separate out Bratz dolls and character art as defendants have.  *See generally* Mattel's Objections to Defendants' Proposed Jury Instructions re: Copyright.

(q)-(t)    These proposed questions regarding the purported "estoppel of copyright" defense are contrary to the Court's April 25, 2008 Order and therefore moot.  The Court found that the defense of estoppel is equitable in nature and expressly deferred ruling on this defense until after trial.  *See* April 25, 2008 Order, at 7.  In any event, "estoppel of copyright" is not an affirmative defense, and the proposed form is erroneous as a matter of law.  Defendants improperly seek to create a novel defense which has no support in Ninth Circuit case law.  The relevant defense would be abandonment of copyright, which the Court has also expressly deferred ruling on until after trial.  *Id.*  The abandonment defense requires some overt act; mere inaction is insufficient to demonstrate an intent to abandon a copyright.  *See* 9th Cir. Civ. Jury Instr. 17.19 (2007).  Even if framed as a general

120

1  estoppel defense, the proposed verdict form is erroneous because it focuses on

2  defendants' ignorance of "Mattel's claims of ownership of Bryant's BRATZ

3  sketches," instead of Mattel's undisputed lack of knowledge of the true facts involved

4  in the dispute.  Mattel also objects to defendants' use of the pejorative term

5  "sketches" when referring to Mr. Bryant's drawings and designs.

6       (u)-(v)     These proposed questions regarding the purported acquiescence

7  defense are contrary to the Court's April 25, 2008 Order and therefore moot.  The

8  Court found that the affirmative defense of acquiescence is equitable in nature and

9  expressly deferred ruling on this defense until after trial.  *See* April 25, 2008 Order,

10  at 7.  In any event, defendants' introductory sentence to the questions on the

11  acquiescence defense is inaccurate because it focuses on the conduct of other

12  employees when the only relevant issue is whether Mattel acquiesced to Bryant's

13  violations of his legal duties.  *See* Mattel's Objections to Defendants' Proposed Jury

14  Instruction re Acquiescence.  Additionally, the question fails to recognize that

15  acquiescence requires an assurance to the defendant, express or implied, that the

16  plaintiff would not assert legal claims against him.  The element of assurance may

17  not ordinarily be found from silence.  *See id.*  Defendants have offered no legal

18  support for this erroneous construction of the standard.  Further, defendants

19  impermissibly focus the jurors' attention on silence or omissions and the conduct of

20  other employees, which could distract the jurors from the relevant issue of whether

21  Mattel assented to Bryant's breaches.  *See id.*

22       (w)     Here again, this is not an issue to be presented to the jury.  And, if any

23  proposed question were to be given, rather than stating "work" singular, the form

24  should state "Bratz-related materials" so as to avoid jury confusion.

25       (x)     This proposed finding deviates from the Ninth Circuit Model Jury

26  Instruction 17.19 by suggesting that Mattel's conduct need only be "consistent with

27  an intent to abandon" or "implied an abandonment."  The Model Instruction requires

28  defendants to prove "an act by the plaintiff evidencing that intent."  *See* 9th Cir. Civ.

121

1   Jury Instr. 17.19 (2007).  The verdict form should conform to that language, to the

2   extent the jury addresses this issue at all.

3        (y)-(z)        These proposed findings improperly assign to the jury the task of

4   determining which elements of a work are protectable, which is a task for the Court,

5   and not the jury, and erroneously impose a standard of "virtually identical" rather

6   than "substantially similar," which is the proper standard.  *See* Mattel's Objection to

7   Instruction No. 1C.  Moreover, defendants omit essential aspects of the *de minimis*

8   use test.  The form must make clear that use is considered *de minimis* only if it is so

9   meager and fragmentary that the average audience would not recognize the

10  appropriation.  *See* Mattel's Objections to Defendants' Proposed Jury Instruction re:

11  *De Minimis* Use.  Moreover, the proposed form should make clear that the jury must

12  compare the qualitative and quantitative significance of Bryant's original drawings in

13  relation to the Bratz dolls as a whole and find Bryant's copying inconsequential.

14       (aa)-(cc)      These proposed questions regarding the purported laches defense

15  are contrary to the Court's April 25, 2008 Order and therefore moot.  The Court

16  found that the affirmative defense of laches is equitable in nature and expressly

17  deferred ruling on this defense until after trial.  *See* April 25, 2008 Order, at 7.  In

18  any event, defendants cannot raise a laches to defense to a claim for copyright

19  infringement.

20       (dd)   Defendants' preamble to the damages forms is confusing and overly

21  complicated.  For example, it asks the jury to confirm that the statute of limitations

22  does not bar Mattel's copyright infringement claim when the Court already held that

23  Mattel's copyright infringement claim is timely in its own right.  *See* June 2, 2008

24  Order, at 4.  It also asks the jury to confirm that none of defendants' affirmative

25  defenses apply when the Court has found that the majority of defendants' affirmative

26  defenses are equitable and that the Court (and not the jury) will rule on them after

27  trial.  *See* April 25, 2008 Order, at 7.  The proposed form itself is also misleading and

28  argumentative.  It misleadingly asks the jury to find that Mattel established damages

122

1   by "a fair preponderance of the evidence," when the burden of proof is a

2   preponderance of the evidence.  It is erroneous in requiring the jury to go drawing by

3   drawing.  It is also argumentative in asking the jury whether Mattel established that it

4   is entitled to recover "more than nominal damages."  The form should simply ask the

5   jury whether Mattel proved damages for this claim.

6          (ee)   Defendants' proposed form deviates from the Ninth Circuit Model

7   Instruction, which provides that Mattel may recover profits attributable to the

8   infringement of copyrighted work.  *See* 9th Cir. Civ. Jur. Instr. 17.24.  Defendants

9   have inserted the argumentative and confusing phrase "attributable to the protectable

10  portion of the copyrighted work."

11         (ff)   Defendants' proposed form fails to reflect that the defendants bear the

12  burden of proving any deductible expenses permitted under the law.  (*Compare*

13  defendants' proposed form regarding gross revenues:  "state the amount of gross

14  revenues that Mattel has proven are attributable to . . ..").

15         (gg)   Defendants' proposed form deviates from the Ninth Circuit Model

16  Instruction and is misleading and prejudicial.  The form erroneously indicates that

17  the jury must make another determination as to "profits attributable to the protectable

18  portion of the infringing product that Mattel has established will fairly and

19  reasonably compensate it for the losses that it has incurred as a consequence of . . .

20  copyright infringement."  All the jury needs to do is subtract the allowable

21  deductions proved by the defendants from the gross revenues proved by Mattel to

22  arrive at the damages figure.  Defendants' insertion of the phrases "attributable to the

23  protectable portion of the infringing product" and "fairly and reasonably

24  compensate" are argumentative and not supported by the model instruction.  The

25  forms also misstate the burden of proof as to apportionment.

26         (hh)   This proposed form is substantially the same as (dd) above.  Mattel

27  incorporates its objections to (dd) as if fully set forth herein.

28

1   (ii) This proposed form is substantially the same as (ee) above.  Mattel

2 incorporates its objections to (ee) as if fully set forth herein.

3   (jj) This proposed form is substantially the same as (ff) above.  Mattel

4 incorporates its objections to (ff) as if fully set forth herein.

5   (kk) This proposed form is substantially the same as (gg) above.  Mattel

6 incorporates its objections to (gg) as if fully set forth herein.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

**MGA Parties' Response**

(a) – (p)     MGA Parties' Proposed Verdict Form is the correct statement of law.  Although it does not correctly apply it, Mattel admits that determining whether two works are substantially similar involves an extrinsic (objective) test and intrinsic (subjective) test.  (Mattel MSJ at 12.) See also Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir. 2004); Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994).

The extrinsic test considers whether two works share a similarity of ideas and expression measured by external, objective criteria. Swirsky, 376 F.3d at 845. The "extrinsic" analysis "is objective in nature.  '[I]t depends not on the responses of the trier of fact, but on specific criteria which can be listed and analyzed.'" Funky Films, Inc. v. Time Warner Entertainment Co., L.P., 462 F.3d 1072, 1077 (9th Cir. 2006), quoting Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp., 562 F.2d 1157, 1164 (9th Cir. 1977). The extrinsic test requires "analytical dissection of [the copyrighted] work," which involves breaking the work down into its "constituent elements."  Swirsky, 376 F.3d at 845. As the "substantial similarity" analysis involved in the extrinsic test is limited to protected elements of copyrighted work, "it is essential to distinguish between the protected and unprotected material in a plaintiff's work."  Id.; see also Funky Films, 462 F.3d at 1077 (court "must take care to inquire only whether 'the protectable elements, standing alone, are substantially similar'"), citing Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002).

"The unprotectable elements have to be identified, or filtered, before the works can be considered as a whole."  Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176-77 (C.D. Cal. 2001).  Such filtration is necessary as "nearly any two (or more) works" will show a certain similarity "at a sufficient level of abstraction."  Id. at 1178-79 (citing Berkic v. Crichton, 761 F.2d 1289, 1293 (9th Cir. 1985)).  "What is required is not just 'similarity,' but 'substantial similarity,' and it must be measured

125

1   at the level of the concrete 'elements' of each work." Id. at 1179; see also CDN Inc.

2   v. Kapes, 197 F.3d 1256, 1261-62 (9th Cir. 1999) ("We have endorsed Judge Hand's

3   abstractions formulation laid out in Nichols v. Universal Pictures Corp., 45 F.2d 119,

4   121 (2d Cir. 1930). The formulation recognizes that every work can be described at

5   varying levels of abstraction, and the higher the level of abstraction copied, the less

6   likely this taking will be infringement of a copyright."); Siegel v. Time Warner Inc.,

7   496 F. Supp. 2d 1111, 1154 (C.D. Cal. 2007) ("The controlling principle was stated

8   by Judge Learned Hand long ago" in Nichols).  Filtering is crucial for fashion dolls.

9   See, e.g., Mattel, Inc. v. Goldberger Doll Mfg Co., 365 F.3d 133 (2d Cir. 2004) ("An

10  upturned nose, full lips and wide eyes are the 'idea' of a certain type of doll face.

11  That idea belongs not to Mattel but to the public domain."); Williams v. Critchton,

12  84 F.3d 581 (2d Cir. 1996) (no infringement even where dolls looked "remarkably

13  similar" as "similarities are all attributable to the unprotectable idea of a superhuman

14  muscleman crouching in what since Neanderthal Times has been a traditional

15  fighting pose").

16          Among the "unprotectable" elements that must be "filter[ed] out" are ideas,

17  elements borrowed from preexisting works, "public domain" works and "scenes-a-

18  faire", Idema, 162 F. Supp. 2d at 1176-77, which Mattel's copyright expert confirms.

19  Robert C. Lind, Copyright Law (3d ed.) ("Lind, Copyright Law") at 169 ("court

20  must distill the material in the plaintiff's work which is not protected by copyright,

21  such as ideas, facts, scene a faire, elements dictated by efficiency or non-original

22  material, from the material in plaintiff's work which is protected by copyright. This

23  latter material constitutes the only elements for which plaintiff may press her

24  claim").  As the Court recognized in its April 25, 2008 Order:  "Both sides

25  acknowledge, as this Court certainly agrees, that one cannot copyright an idea."

26  (April 25, 2008 Order at 3.).  Until unprotectable elements are filtered, a fact finder

27  cannot evaluate the alleged similarities between two works at issue.  Swirsky, 376

28  F.3d at 845.

1    Filtration is required for visual works like the Bryant sketches.  The Supreme
2    Court held in Feist Publications, Inc. v. Rural Telegraph Service Co., 499 U.S. 340
3    (1991), that "[t]he mere fact that a work is copyrighted does not mean that every
4    element of the work may be protected.  Originality remains the *sine qua non* of
5    copyright; accordingly, copyright protection may extend only to those components of
6    a work that are original to the author." Id. at 348 (emphasis added).  In other words,
7    it is only copying of copyrightable elements of a work that is answerable under the
8    federal Copyright Act.

9    Consistent with Feist, applicable Ninth Circuit precedent holds that, because
10   only those elements of a work that are protectible can be compared when it comes to
11   the question of copyright infringement, the unprotectible elements of the work need
12   to be filtered out and disregarded.  As summarized in Cavalier v. Random House,
13   Inc., 297 F.3d 815 (9th Cir. 2002):

14   A court "must take care to inquire only whether 'the protectible
15   elements, standing alone, are substantially similar.'" Williams v.
16   Crichton, 84 F.3d 581, 588 (2d Cir. 1996) (emphasis in original)
17   (citation omitted); accord Apple Computer, Inc. v. Microsoft Corp.,
18   35 F.3d 1435, 1442-43 (9th Cir. 1994).  Therefore, when applying the
19   extrinsic test, a court must filter out and disregard the non-protectible
20   elements in making its substantial similarity determination.  See Shaw
21   [v. Lindheim], 919 F.2d [1353, 1361 (9th Cir. 1990)] (applying the
22   extrinsic test to determine "whether there is substantial similarity
23   between the protected expression of ideas in two literary works")
24   (emphasis added); Berkic v. Crichton, 761 F.2d 1289, 1293-94 (9th
25   Cir. 1985) (rejecting consideration of general ideas as well as scenes-
26   a-faire in determining substantial similarity under the extrinsic test).

27
28

127

1   297 F.3d at 822-23.  See also Apple Computer Inc. v. Microsoft Corp., 35 F.3d 1435,

2   1439 (9th Cir. 1994) ("When the range of protectable and unauthorized expression is

3   narrow, the appropriate standard for illicit copying is virtual identity.").  The MGA

4   Parties' proposed instruction properly focuses the jury on the protectable elements of

5   Mattel's work, rather than every element.

6        In Cavalier, the Ninth Circuit expressly held that "[t]he basic mode of analysis

7   for comparison of the literary elements applies to comparison of the art work.  As

8   with literary works, unprotectible elements should not be considered when

9   applying  the extrinsic test to art work."  297 F.3d at 825-26.

10       Similarly, Apple Computer involved a claim that the "artistic look" of

11  Microsoft's user interface was "substantially similar" to Apple's copyrighted user

12  interface.  The Ninth Circuit affirmed the district court's decision to "analytically

13  dissect" Apple's user interface to "eliminate" unprotectible elements, holding that:

14  "The district court's approach was on target."  35 F.3d at 1439.  The court further

15  stated:

16       [T]he extrinsic test now objectively considers whether there are

17       substantial similarities in both ideas and expression, whereas the

18       intrinsic test continues to measure expression subjectively.  Because

19       only those elements of a work that are protectable and used without

20       the author's permission can be compared when it comes to the

21       ultimate question of illicit copying, we use analytic dissection to

22       determine the scope of copyright protection before works are

23       considered "as a whole."

24  Id. at 1442-43; see also id. at 1446 ("the party claiming infringement may place 'no

25  reliance upon any similarity in expression resulting from' unprotectable elements.

26  Otherwise, there would be no point to the extrinsic test, or to distinguishing ideas

27  from expression. …  [T]he unprotectable elements have to be identified, or filtered,

28  before the works can be considered as a whole.").

1    This framework has been applied in a variety of cases involving graphic or
2    artistic works, like <u>Satava v. Lowry</u>, 323 F.3d 805 (9th Cir. 2003) the "jellyfish in
3    glass" case, which unquestionably filtered out elements of the art at issue.  There, the
4    Ninth Circuit held that "ideas, first expressed by nature, are the common heritage of
5    humankind, and no artist may use copyright law to prevent others from depicting
6    them."  <u>Id.</u> at 812.  The Ninth Circuit's overriding concern in <u>Satava</u> was to prevent
7    copyright protection from "cheat[ing] the public domain" by expanding to the point
8    of providing a monopoly on the "use of ideas that properly belong to us all." <u>Id.</u>  <u>See</u>
9    <u>also</u> <u>Dyer v. Napier</u>, 2006 U.S. Dist. LEXIS 68990 (D. Ariz. 2006) (filtering when
10   comparing photo of mountain lion with cub to allegedly infringing sculpture); <u>see</u>
11   <u>also</u> <u>Reece v. Island Treasures Art Gallery, Inc.</u>, 468 F. Supp. 2d 1197 (D. Haw.
12   2006) (applying filtering in action involving "stained glass artwork").[1]

13       The <u>Apple Computer</u> court set forth the following three part test to be used in
14   connection with copyright infringement cases involving all forms of copyrighted
15   work, including visual works like the Bryant sketches:

16       (1)  The plaintiff must identify the source(s) of the alleged similarity
17            between his work and the defendant's work.

18       (2)  Using analytic dissection, and, if necessary, expert testimony, the
19            court must determine whether any of the allegedly similar features
20            are protected by copyright….   [U]nprotectable ideas must be
21            separated from potentially protectable expression; to that
22            expression, the court must then apply the relevant limiting

---

[1]   In fact, albeit in an unpublished opinion, the Ninth Circuit affirmed sanctions awarded by the district court against a plaintiff based on its opposition to use of analytic dissection under the extrinsic test in connection with a visual work.  <u>Domingo Cambeiro Prof'l Corp. v. Advent</u>, 2000 U.S. App. LEXIS 3658, at *9 (9th Cir. Mar. 7, 2000) ("It was also objectively unreasonable for Cambeiro to oppose the use of analytic dissection under the extrinsic test.").

1   doctrines in the context of the particular medium involved,

2   through the eyes of the ordinary consumer of that product.

3   (3)  Having dissected the alleged similarities and considered the range

4   of possible expression, the court must define the scope of the

5   plaintiff's copyright - that is, decide whether the work is entitled to

6   "broad" or "thin" protection.   Depending on the degree of

7   protection, the court must set the appropriate standard for a

8   subjective comparison of the works to determine whether, as a

9   whole, they are sufficiently similar to support a finding of illicit

10   copying.

11   35 F.3d at 1443.

12   The Ninth Circuit's application of "analytical dissection" and "filtering" to

13   visual works is also confirmed by the law review article referenced by Mattel in

14   connection with its partial summary judgment motion, Michael D. Murray,

15   Copyright, Originality, and the End of the Scenes a Faire and Merger Doctrines for

16   Visual Works, 58 Baylor L. Rev. 779 (2006).   (See Mattel MSJ Reply at 13.)

17   Although the author (like Mattel) clearly disagrees with and is hostile to the Ninth

18   Circuit approach, he confirms that the Ninth Circuit requires that visual works, like

19   other copyrighted works, must be filtered of unprotectible elements:

20   Apple drove a stake through the heart of evaluation of visual works:

21   There would be a two stage test with analytical dissection at each

22   stage and rejection of parts that were supposedly subject to the

23   merger and scenes a faire doctrines.   There would be no subjective

24   evaluation of the total concept and feel of any visual work that

25   allegedly merged with its underlying ideas (there being a drastically

26   limited number of ways of depicting the idea visually) or allegedly

27   embodied stock images that must be copied in order to depict the idea.

28

1  In <u>Cavalier v. Random House, Inc.</u>, Apple's holding was interpreted

2  to mean that in visual art cases, the court is to filter out unprotectable

3  elements in both the extrinsic and intrinsic similarity tests.

4  58 Baylor L. Rev. at 810-11.

5  It is also noteworthy that Mattel argued for this very same approach in

6  connection with the district court proceedings in the <u>Goldberger</u> case referenced

7  repeatedly by Mattel in its opposition to MGA's proposed instruction, in its briefs in

8  this case, and by Mattel's copyright law expert, Professor Robert Lind, in his report.

9  Thus, in connection with the plaintiffs summary judgment motion, Mattel argued:

10  To determine whether Radio City misappropriated protected

11  expression, or illegally copied, the Court should (i) isolate the

12  elements of Mattel's Barbie Copyrights that are protectible from

13  those that are unprotectible, and (ii) determine whether there is a

14  "substantial similarity" between the Radio City Head and the

15  protectible elements of the Barbie Copyrights…. "**<u>Where, as here,</u>**

16  **<u>we compare products that have both protectible and</u>**

17  **<u>unprotectible elements, we must exclude comparison of the</u>**

18  **<u>unprotectible elements from our application of the ordinary</u>**

19  **<u>observer test</u>**."

20  (Memorandum of Plaintiff Mattel, Inc. in Opposition to Defendant' Motion For

21  Summary Judgment at 6, in <u>Mattel Inc., v. Radio City Entertainment</u> (S.D.N.Y. No.

22  00 Civ. 6272 (JSR)), filed April 16, 2001)) (citations omitted, emphasis added).)

23  Thus, contrary to Mattel's argument, a "filtering" analysis is not only

24  consistent with Ninth Circuit law, it is <u>required</u> by it.  Only *after* the unprotected

25  elements are filtered, the test is whether the protected elements in the copyrighted

26  and accused works are "substantially similar."  If the copyright holder cannot show

27  "substantial similarity" under the extrinsic, objective evaluation of the works, there is

28  no infringement.

131

1    Mattel has cited no pertinent authority to support its contention that dissection
2    and filtering is an issue of law for the Court, but MGA is opening to discussing this
3    issue further.

4    Mattel's argument that "there is no requirement that Mattel's copyrights be
5    considered separately" is simply wrong and addressed fully in connection with MGA
6    Parties' Response to Mattel's Objection To MGA Instruction 12C.

7    (q) – (t)    Mattel confuses a defense of abandonment with estoppel.  Indeed,
8    there is a separate estoppel defense to a claim for copyright infringement.  See 4
9    Nimmer on Copyright § 13.07 (2008) (noting that equitable estoppel applies in
10   copyright infringement actions, and may deprive a plaintiff of an otherwise
11   meritorious copyright infringement claim); see also Hampton v. Paramount Pictures
12   Corp., 279 F.2d 100, 104 (9th Cir. 1960).  Mattel's own authority, Metro-Goldwyn-
13   Mayer Studios, Inc. v. Grokster, Ltd., 518 F. Supp. 2d 1197, 1225 (9th Cir. 2007),
14   confirms this and cites the elements set forth for this very defense in Hampton.
15   Moreover, Mattel's squabble over the instruction's "silence or inaction" element is
16   unavailing, as "[a] copyright owner can be estopped not only by words and actions
17   but also by silence and inaction."  HGI Associates, Inc. v. Wetmore Printing Co.,
18   427 F.3d 867, 875 (11th Cir. 2005).  In this connection, the "duty to speak"
19   requirement is simply a determination that under the circumstances, a party wishing
20   to assert its right must speak.  Mattel certainly had such a duty in this case given that
21   it knew of the alleged infringement and remained silent.  See, e.g., Stambler v.
22   Diebold, Inc., 1988 WL 95479, 11 U.S.P.Q. 2d 1709, 1715 (E.D.N.Y. 1988) (finding
23   that patent owner had a duty to speak and its silence was intentionally misleading
24   where it had long known of the alleged infringement and permitted the conduct to
25   continue), aff'd, 878 F.2d 1445 (Fed. Cir. 1989).

26   (u) – (v)    First, the Proposed Form makes no mention of "other
27   employees".   Second, the Proposed Form properly states the standard for
28   acquiescence.   Acquiescence exists when a person's acts or words, silence or

1  inaction, would be understood by a reasonable person as intended to indicate that the

2  conduct is allowed, and in fact is so understood by the person doing the alleged

3  wrongful act. <u>See</u> <u>Security Pac. Nat'l Bank v. Wozab</u>, 51 Cal. 3d 991, 1005 (1990).

4  Indeed, as the doctrine of acquiescence is a close cousin of the estoppel doctrine, the

5  authorities indicating that silence or inaction could provide a basis for estoppel apply

6  with full force here.  <u>See</u> <u>John H. Spohn Co. v. Bender</u>, 18 Cal. App. 2d 447, 451

7  (1937) ("The principle … known as the doctrine of acquiescence … [is] often

8  referred to as quasi estoppel."); <u>see also</u> <u>City of Long Beach v. Mansell</u>, 3 Cal. 3d

9  462, 488 n.22 (1970) (conduct giving rise to estoppel includes "silence or negative

10  omission to do anything").

11  (w)    As there are multiple works at issue, using the plural rather than the

12  singular would only serve to create confusion.

13  (x)    The language in MGA Parties' Proposed Verdict Form is a proper

14  statement of law.  "[A]bandonment occurs when the proprietor engages in some

15  overt act which manifests his purpose to surrender his rights."  <u>Lopez v. Elec.</u>

16  <u>Rebuilders, Inc.</u>, 416 F. Supp. 1133, 1135 (C.D. Cal. 1976) (holding that even

17  though plaintiff may not have intended to lose her copyright, her conduct was

18  "consistent with an intent to abandon").  Moreover, the language is a minor deviation

19  from Mattel's proposed language, and more clearly explains the standard to the jury.

20  (y) – (z)    Mattel's objections ignore the clear and concise language of the

21  case law on point:  "For an unauthorized use of a copyrighted work to be actionable,

22  the use must be significant enough to constitute infringement.  This means that even

23  where the fact of copying is conceded, no legal consequences will follow from that

24  fact unless the copying is substantial.  The principle that trivial copying does not

25  constitute actionable infringement has long been a part of copyright law. Indeed, as

26  Judge Learned Hand observed over 80 years ago: 'Even where there is some copying,

27  that fact is not conclusive of infringement. Some copying is permitted. In addition to

28  copying, it must be shown that this has been done to an unfair extent.' This principle

133

1   reflects the legal maxim, de minimis non curatlex (often rendered as, 'the law does

2   not concern itself with trifles')."  Newton v. Diamond, 388 F.3d 1189, 1192-93 (9th

3   Cir. 2004) (internal citations omitted).

4        As the Supreme Court held in Feist Publications, Inc. v. Rural Telegraph

5   Service Co., 499 U.S. 340, 349-50 (1991), "The primary objective of copyright is not

6   to reward the labor of authors, but 'to promote the Progress of Science and useful

7   Arts.'" Art. I, § 8, cl. 8.  Accord, Twentieth Century Music Corp. v. Aiken, 422 U.S.

8   151, 156 (1975). To this end, copyright assures authors the right to their original

9   expression, but encourages others to build freely upon the ideas and information

10  conveyed by a work.  Harper & Row, supra, at 556-557. This principle, known as the

11  idea/expression or fact/expression dichotomy, applies to all works of authorship."

12       Consistent with Feist, applicable Ninth Circuit precedent holds that, because

13  only those elements of a work that are protectible can be compared when it comes to

14  the question of copyright infringement, the unprotectible elements of the work need

15  to be filtered out and disregarded.  As summarized in Cavalier v. Random House,

16  Inc., 297 F.3d 815 (9th Cir. 2002):

17       A court "must take care to inquire only whether 'the protectible

18       elements, standing alone, are substantially similar.'"  Williams v.

19       Crichton, 84 F.3d 581, 588 (2d Cir. 1996) (emphasis in original)

20       (citation omitted); accord Apple Computer, Inc. v. Microsoft Corp., 35

21       F.3d 1435, 1442-43 (9th Cir. 1994).  Therefore, when applying the

22       extrinsic test, a court must filter out and disregard the non-protectible

23       elements in making its substantial similarity determination.  See Shaw

24       [v. Lindheim], 919 F.2d [1353, 1361 (9th Cir. 1990)] (applying the

25       extrinsic test to determine "whether there is substantial similarity

26       between the protected expression of ideas in two literary works")

27       (emphasis added); Berkic v. Crichton, 761 F.2d 1289, 1293-94 (9th Cir.

28

134

1    1985) (rejecting consideration of general ideas as well as scenes-a-faire

2    in determining substantial similarity under the extrinsic test).

3    297 F.3d at 822-23.  See also Apple Computer Inc. v. Microsoft Corp., 35 F.3d 1435,

4    1439 (9th Cir. 1994) ("When the range of protectable and unauthorized expression is

5    narrow, the appropriate standard for illicit copying is virtual identity.").  The MGA

6    Parties' proposed instruction properly focuses the jury on the protectable elements of

7    Mattel's work, rather than every element.

8        Moreover, Mattel's objection ignores the discussion in Newton v. Diamond

9    explaining that "[s]ubstantiality is measured by considering the qualitative and

10   quantitative significance of the copied portion in relation to" Bryant's drawings as a

11   whole," (emphasis added), and inaccurately argues that "the jury should be instructed

12   that 'substantiality is measured by considering the qualitative and quantitative

13   significance of Bryant's original drawings in relation to the Bratz dolls as a whole,'"

14   which is a clear misstatement of the applicable legal principles.

15       (aa)-(cc)    As the Court explained in its Final Pre-Trial Conference Order,

16   evidence supporting equitable defenses is to be presented to the jury and the jury

17   may make specific findings of fact with respect to those defenses.  See Final Pre-

18   Trial Conference Order at 8.

19       As to Mattel's assertion that laches only applies to certain "equitable" state

20   law claims, Mattel's "counter-instruction", along with its objections, ignores that

21   laches is also a defense to copyright actions.  Indeed, courts have stated quite

22   emphatically:  "[i]t is inequitable for the [alleged] owner of a copyright, with full

23   notice of an intended infringement, to stand inactive while the proposed infringer

24   spends large sums of money in its exploitation, and to intervene only when his

25   speculation has proved a success.  Delay under such circumstances allows the owner

26   to speculate without risk with the other's money; he cannot possibly lose, and he

27   may win." Haas v. Leo Feist, Inc., 234 F. 105, 108 (S.D.N.Y. 1916); see also Danjaq

28   LLC v. Sony Corp., 263 F.3d 942, 954 (9th Cir. 2001); Watermark Publishers v.

135

1   High Tech. Sys., Inc., 1997 WL 717677, 44 U.S.P.Q.2d 1578, 1583-84 (S.D. Cal.

2   1997) (barring plaintiff's claims on laches grounds after 4 year delay in suing).  In

3   addition to being inappropriate, Mattel's objection is disingenuous: Mattel concedes

4   that this defense is applicable to copyright in its motion for partial summary

5   judgment.  (See Mattel MSJ at n.138.)

6        (dd)  MGA Parties' Proposed Verdict Form is the correct statement of the law.

7   Mattel argues that the form should "simply ask the jury whether Mattel proved

8   damages for this claim".  This is an argument for simplicity over accuracy.  The

9   correct question after determining whether copyright infringement has occurred is

10   whether the plaintiff is entitled to more than nominal damages.

11        Mattel's argument that it is erroneous to require "the jury to go drawing by

12   drawing" is simply wrong and addressed in connection with MGA's Reponse To

13   Mattel's Opposition to MGA Instruction 12C.

14        (ee)  If it prevails on its copyright claim, Mattel may recover only profits

15   attributable to the protectable portion of the copyrighted work.  See supra, discussion

16   of filtration analysis in MGA Parties' Proposed Verdict Form No. 2 (a-p).

17        Accordingly, in assessing MGA's "profits attributable to the infringement,"

18   the jury must consider the extent to which those profits resulted from MGA's use of

19   nonprotectable elements of the copyrighted work.  See Apple Computer, Inc. v.

20   Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994) (A "party claiming infringement

21   may place no reliance upon any similarity in expression resulting from unprotectable

22   elements.") (quoting Dakin & Co., 831 F.2d 898, 901 (9th Cir. 1987)); see also

23   Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002) (the court "must

24   take care to inquire only whether the protectable elements, standing alone, are

25   substantially similar." (emphasis in original).  Thus, in Sheldon v. Metro-Goldwyn

26   Pictures Corp., 106 F.2d 45, 51 (2d Cir. 1939), the Court reduced an award of the

27   infringer's profits because, inter alia, the "general skeleton" of the infringing story

28   was "already in the public demesne."  See also Burns v. Imagine Films Entm't, Inc.,

136

1   2001 U.S. Dist. LEXIS 24653, at *43 (W.D.N.Y. Aug. 23, 2001) (rejecting
2   plaintiff's attempt to group protectable and nonprotectable elements of film into an
3   "indivisible unit" as "contrary to the unequivocal language of § 504(b)").

4       (ff)    MGA Parties' Proposed Verdict Form is the correct statement of the
5   law, as it properly directs the jury to deduct MGA's costs from its gross revenues.
6   See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 886 F.2d 1545, 1548 (9th
7   Cir. 1989) ("On remand, the district court calculated MGM Grand's net profit from
8   Hallelujah Hollywood at $6,131,606, by deducting from its gross revenues the direct
9   costs MGM Grand proved it had incurred.    Neither party challenges this
10  calculation.").    Read together, MGA Parties' Proposed Verdict Form reflects the
11  appropriate burdens of proof for both defendants.   See, e.g., United States v. Gering,
12  716 F.2d 615, 622 (9th Cir. 1983) ("The adequacy of the jury instructions is…
13  determined by… examining the instructions as a whole.").    Moreover, jury
14  instructions need not expressly indicate defendants' burden of proof regarding
15  deductible expenses.   McRoberts Software, Inc. v. Media 100, Inc., 329 F.3d 557,
16  569 (7th Cir. 2003) (finding that an instruction defining recoverable profits as "the
17  amount of money that Media 100 made because of the infringement minus
18  deductions for expenses in producing and marketing the infringing work" was
19  "proper as a matter of law").   This is particularly true where, as here, the defendants'
20  burden of proof was noted explicitly in a prior instruction.   See Instruction No. [2]
21  (COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS (17 U.S.C. § 504(b)).
22  Therefore, MGA Parties' Proposed Verdict Form provides a fair and accurate
23  statement of the law.

24      (gg)   If it prevails on its copyright claim, Mattel is entitled to recover only
25  "profits attributable to the protectable portion of the infringing product." See supra
26  (Discussion of filtration analysis in MGA Parties' Proposed Verdict Form No. 2 (a-
27  p) and discussion of appropriate level of specificity in awarding profits in MGA
28  Parties' Proposed Verdict Form No. 2 (jj)).   Further, Mattel's recovery is limited to

137

1   an amount that provides "just compensation" for the alleged wrong.  Sheldon v.

2   Metro-Goldwyn Pictures Corp., 309 U.S. 390, 399 (1940) ("the purpose is thus to

3   provide just compensation for the wrong, not to impose a penalty by giving the

4   copyright proprietor profits which are not attributable to the infringement.");  Walker

5   v. Forbes, Inc., 28 F.3d 409, 416 (4th Cir. 1994) (praising the district court's "rich

6   and detailed instructions" regarding an award of an infringer's profits which stated

7   "The purpose of the law regarding compensation for damages, which I have

8   explained, is to provide just compensation for the wrong, not to impose a penalty by

9   giving to the copyright owner the profits which are not attributable to the

10  infringement.").  MGA Parties' Proposed Verdict Form accurately states the law.

11      (hh)    See supra (MGA Parties' Reply to Mattel's Objection to MGA Parties'

12  Proposed Verdict Form No. 2 (dd)).

13      (ii)    See supra (MGA Parties' Reply to Mattel's Objection to MGA Parties'

14  Proposed Verdict Form No. 2 (ee)).

15      (jj)    See supra (MGA Parties' Reply to Mattel's Objection to MGA Parties'

16  Proposed Verdict Form No. 2 (ff)).

17      (kk)    See supra (MGA Parties' Reply to Mattel's Objection to MGA Parties'

18  Proposed Verdict Form No. 2 (gg)).

**-REVISED-**

**Proposed Form of Verdict No. 3 (Copyright Infringement – Vicarious and Contributory Infringement)**

(a)   Do you find by a fair preponderance of the evidence that Mattel has established that Isaac Larian is liable for copyright infringement as a consequence of:

   (i)   vicarious infringement?

      ☐yes or

      ☐no.

   (ii)   contributory infringement?

      ☐yes or

      ☐no.

*If you have found that Isaac Larian is liable for vicarious or contributory copyright infringement, that none of his affirmative defenses apply, next consider whether Mattel is entitled to damages resulting from Isaac Larian's vicarious or contributory infringement.*

(b)   *For each drawing you found to be infringed,* do you find that Mattel has established by a fair preponderance of the evidence that it is entitled to recover more than nominal damages from Isaac Larian as a consequence of a finding or findings of copyright infringement?

   ☐yes or

   ☐no.

(c)   If your answer is YES, state the amount of gross revenues that Mattel has proven are attributable to the copyrighted work

   $_____

(d)   Next, state the deductible expenses associated with the infringing products:

139

1    $_____

2    (e)    Finally, what are the profits attributable to the protectable portion of the

3           infringing product that Mattel has established will fairly and reasonably

4           compensate it for the losses that it has incurred as a consequence of

5           Isaac Larian's copyright infringement.

6           $_____

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Mattel's Objections**

Mattel objects to defendants' proposed verdict form on the following grounds:

The proposed form is misleading in that it omits reference to MGA (HK) as potentially liable for contributory infringement.

(a)     The proposed findings are misleading and argumentative in that they ask the jury to find that Mattel established infringement by "a *fair* preponderance of the *credible* evidence."  The burden of proof is a preponderance of the evidence, and to the extent that the defendants' proposed form erroneously suggests that Mattel's burden is heightened, it is prejudicial.  The proposed findings are also overly complicated and confusing as written.  The finding should be more straightforward: e.g., "Do you find Larian liable for vicarious copyright infringement?"

(b)     Mattel objects to defendants' preamble to this question on the ground that it is confusing and erroneous.  It improperly asks the jury to confirm that none of their affirmative defenses apply when the Court has found that the majority of defendants' affirmative defenses are equitable and that the Court (and not the jury) will rule on them after trial.  *See* April 25, 2008 Order, at 7.  It also asks the jury to confirm that the statute of limitations does not bar Mattel's copyright infringement claim when the Court has already rejected that defense.  *See* June 2, 2008 Order, at 4. It is also argumentative in asking the jury whether Mattel established that it is entitled to recover "more than nominal damages."  The form should simply ask the jury whether Mattel proved damages for this claim.

(c)     This proposed form is substantially the same as Phase I-B Proposed Form of Verdict No. 2 (ee).  Mattel incorporates its objections to 2 (ee) as if fully set forth herein.

(d)     This proposed form is substantially the same as Phase I-B Proposed Form of Verdict No. 2 (ff).  Mattel incorporates its objections to 2 (ff) as if fully set forth herein.

141

1        (e)     This proposed form is substantially the same as Phase I-B Proposed

2 Form of Verdict No. 2 (gg).  Mattel incorporates its objections to 2 (gg) as if fully set

3 forth herein.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

**MGA Parties' Response**

 

(a)     The phrase "fair preponderance of credible evidence" is not an original creation by the MGA Parties and is used to signify the same standard as Mattel's suggested language.  See, e.g., Sogem-Afrimet, Inc. v. M/V Ikan Selayang,  951 F. Supp. 429, 441 (S.D.N.Y. 1996) ("Upon examination, the fair preponderance of credible evidence supports plaintiff's allegation that it delivered the cargo to defendant in good condition and received damaged goods at outturn. Accordingly, the court finds that plaintiff has sustained its burden of proving its prima facie case."), aff'd, 122 F.3d 1057 (2d Cir. 1997).

(b)     Mattel mischaracterizes the import of the Court's decision to defer ruling on certain affirmative defenses.  While the Court may ultimately rule on the effect of these defenses, it is apparent from the Court's Final Pre-Trial Conference Order that it expects the jury to make the factual determinations underlying its decision.  Final Pre-Trial Conference Order at 8.  Pursuant to the MGA Parties' Jury Instructions, the jury will understand what facts it must find in order to determine whether a particular affirmative defense applies.  The questions in this verdict form will memorialize those findings for the Court, which may then use them to make its own final determination.  The MGA Parties contend that nominal damages apply to every claim in this case.  See, e.g., Midland Pacific Building Corp. v. King, 157 Cal. App. 4th 264, 275 (2007) (nominal damages are available in actions upon a contract).  The MGA Parties have deleted the reference to the statute of limitations.

(c)     See supra (MGA Parties' Reply to Mattel's Objection to MGA Parties' Proposed Verdict Form No. 2 (ee)).

(d)     See supra (MGA Parties' Reply to Mattel's Objection to MGA Parties' Proposed Verdict Form No. 2 (ff)).

(e)     See supra (MGA Parties' Reply to Mattel's Objection to MGA Parties' Proposed Verdict Form No. 2 (gg)).

143

**<u>Proposed Form of Verdict No.  (Inventions Agreement Damages)</u>**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

**<u>Proposed Form of Verdict No.  (Questionnaire Damages)</u>**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

**<u>Proposed Form of Verdict No.  (Fiduciary Duty Damages)</u>**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

**<u>Proposed Form of Verdict No. 4 (Aiding and Abetting Breach of Fiduciary Duty Damages)</u>**

*If you have found that MGA or Isaac Larian are liable for aiding and abetting a breach of fiduciary duty by Carter Bryant, that none of their affirmative defenses apply, next consider whether Mattel is entitled to damages resulting from MGA or Isaac Larian's aiding and abetting of Carter Bryant's breach of fiduciary duty.*

    (a)    Do you find by a fair preponderance of the credible evidence that Mattel has established that it is entitled to more than nominal damages as a consequence of MGA's aiding and abetting of Carter Bryant's breach of fiduciary duty?

☐ yes or

☐ no.

    (b)    If your answer is YES, state the amount of damages to which Mattel is entitled based on the jury instructions given with respect to this claim:

$_____

    (c)    Do you find by a fair preponderance of the credible evidence that Mattel has established that it is entitled to more than nominal damages as a consequence of Isaac Larian's aiding and abetting of Carter Bryant's breach of fiduciary duty?

☐ yes or

☐ no.

    (d)    If your answer is YES, state the amount of damages to which Mattel is entitled based on the jury instructions given with respect to this claim:

$_____

145

1  **<u>Mattel's Objections</u>**

2

3          Mattel objects to defendants' proposed verdict forms as follows:

4          Mattel objects to defendants' preamble on the ground that it is misleading and

5  confusing given that the jury will already have determined defendants' liability for all

6  claims other than copyright infringement in Phase 1A.  Accordingly, there is no basis

7  for defendants to ask the jury to confirm that it has found liability and rejected

8  affirmative defenses.  It is also erroneous and misleading to the extent it asks the jury

9  to indicate that it has found that none of defendants' affirmative defenses apply

10  because the Court has indicated that the majority of those affirmative defenses are

11  equitable in nature, and the Court will rule on them after trial.  Defendants' proposed

12  forms are also misleading in that they do not reflect that Mattel seeks punitive

13  damages against the defendants on this claim.

14          (a), (c)        Each of the proposed forms is misleading and argumentative.

15  They misleadingly ask the jury to find that Mattel established damages by "a *fair*

16  preponderance of the *credible* evidence."  The burden of proof is a preponderance of

17  the evidence, and to the extent that the defendants' proposed forms erroneously

18  suggest that Mattel's burden is heightened, they are prejudicial.  They are also

19  argumentative in asking the jury whether Mattel established that it is entitled to

20  recover "more than nominal damages."  The forms should simply ask the jury what

21  Mattel's damages are.

22

23

24

25

26

27

28

**MGA Parties' Response**

MGA Parties' Proposed Form simply asks the jury to confirm that it has found liability for aiding and abetting.  This is a reasonable question to ask prior to proceeding to damages and reduces the risk of mistake or confusion of the jury. Moreover, as for Mattel's complaint that the form does not contain Mattel's claim for punitive damages, Mattel lacks any evidentiary basis to seek punitive damages, so such an question is unnecessary. See Barry v. Raskov, 232 Cal. App. 3d 447, 457 (1991) (trial court properly refused to instruct jury on punitive damages, as there was not clear and convincing evidence of fraud); see also Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence").

Mattel mischaracterizes the import of the Court's decision to defer ruling on certain affirmative defenses.  While the Court may ultimately rule on the effect of these defenses, it is apparent from the Court's Final Pre-Trial Conference Order that it expects the jury to make the factual determinations underlying its decision.  Final Pre-Trial Conference Order at 8.  Pursuant to the MGA Parties' Jury Instructions, the jury will understand what facts it must find in order to determine whether a particular affirmative defense applies.  The questions in this verdict form will memorialize those findings for the Court, which may then use them to make its own final determination.

(a), (c)  MGA Parties' Proposed Verdict Form is entirely proper and suitable for use by the jury.  Mattel argues that the form should "simply ask the jury whether Mattel proved damages for this claim".  This is an argument for simplicity over accuracy.  The correct question after determining whether a breach has occurred and whether there was aiding and abetting is whether the plaintiff is entitled to more than nominal damages.

147

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

1

2

**<u>Proposed Form of Verdict No.  (Breach of Duty of Loyalty Damages)</u>**

3

*-NO LONGER APPLICABLE AND WITHDRAWN-*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

**Proposed Form of Verdict No. 5 (Aiding and Abetting Breach of Duty of Loyalty Damages)**

*If you have found that MGA or Isaac Larian are liable for aiding and abetting a breach of the duty of loyalty, that none of their affirmative defenses apply, next consider whether Mattel is entitled to damages resulting from MGA or Isaac Larian's aiding and abetting of Carter Bryant's duty of loyalty.*

(a)   Do you find by a fair preponderance of the credible evidence that Mattel has established that it is entitled to more than nominal damages as a consequence of MGA and MGA (HK)'s aiding and abetting of Carter Bryant's breach of his duty of loyalty?

☐yes or

☐no.

(b)   If your answer is YES, state the amount of damages to which Mattel is entitled based on the jury instructions given with respect to this claim:

$_____

(c)   Do you find by a fair preponderance of the credible evidence that Mattel has established that it is entitled to more than nominal damages as a consequence of Larian's aiding and abetting of Carter Bryant's breach of his duty of loyalty?

☐yes or

☐no.

(d)   If your answer is YES, state the amount of damages to which Mattel is entitled based on the jury instructions given with respect to this claim:

$_____

**Mattel's Objections**

Mattel objects to defendants' proposed verdict forms as follows:

Mattel objects to defendants' preamble on the ground that it is misleading and confusing given that the jury will already have determined defendants' liability for all claims other than copyright infringement in Phase 1A.  Accordingly, there is no basis for defendants to ask the jury to confirm that it has found liability and rejected affirmative defenses.  It is also erroneous and misleading to the extent it asks the jury to indicate that it has found that none of defendants' affirmative defenses apply because the Court has indicated that the majority of those affirmative defenses are equitable in nature, and the Court will rule on them after trial.  Defendants' proposed forms are also misleading in that they do not reflect that Mattel seeks punitive damages against the defendants on this claim.

(a), (c)        Each of the proposed forms is misleading and argumentative.  They misleadingly ask the jury to find that Mattel established damages by "a *fair* preponderance of the *credible* evidence."  The burden of proof is a preponderance of the evidence, and to the extent that the defendants' proposed forms erroneously suggest that Mattel's burden is heightened, they are prejudicial.  They are also argumentative in asking the jury whether Mattel established that it is entitled to recover "more than nominal damages."  The forms should simply ask the jury what Mattel's damages are.

1    **MGA Parties' Response**

2

3         MGA Parties' Proposed Form simply asks the jury to confirm that it has

4    liability for aiding and abetting.   This is a reasonable question to ask prior to

5    proceeding to damages and reduces the risk of mistake or confusion of the jury.

6    Moreover, as for Mattel's complaint that the form does not contain Mattel's claim

7    for punitive damages, Mattel lacks any evidentiary basis to seek punitive damages,

8    so such an question is unnecessary. See Barry v. Raskov, 232 Cal. App. 3d 447, 457

9    (1991) (trial court properly refused to instruct jury on punitive damages, as there was

10   not clear and convincing evidence of fraud); see also Jones v. Williams, 297 F.3d

11   930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or her

12   theory of the case if it is supported by law and has foundation in the evidence").

13        Mattel mischaracterizes the import of the Court's decision to defer ruling on

14   certain affirmative defenses.   While the Court may ultimately rule on the effect of

15   these defenses, it is apparent from the Court's Final Pre-Trial Conference Order that

16   it expects the jury to make the factual determinations underlying its decision.   Final

17   Pre-Trial Conference Order at 8.   Pursuant to the MGA Parties' Jury Instructions, the

18   jury will understand what facts it must find in order to determine whether a particular

19   affirmative defense applies.   The questions in this verdict form will memorialize

20   those findings for the Court, which may then use them to make its own final

21   determination.

22        (a), (c)  MGA Parties' Proposed Verdict Form is entirely proper and suitable

23   for use by the jury.  Mattel argues that the form should "simply ask the jury whether

24   Mattel proved damages for this claim".   This is an argument for simplicity over

25   accuracy.  The correct question after determining whether a breach has occurred and

26   whether there was aiding and abetting is whether the plaintiff is entitled to more than

27   nominal damages.

28

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

**<u>Proposed Form of Verdict No. 6 (Intentional Interference Damages)</u>**

*If you have found that MGA or Larian are liable for intentional interference of contract, that none of their affirmative defenses apply, and that Mattel's recovery is not barred by the statute of limitations, next consider whether Mattel is entitled to damages resulting from MGA and/or Isaac Larian's intentional interference with contract.*

     (a)    Do you find by a fair preponderance of the credible evidence that Mattel has established that it is entitled to more than nominal damages as a consequence of MGA's intentional interference with Bryant's agreement?

         ☐ yes or

         ☐ no.

     (b)    If your answer is YES, state the amount of damages to which Mattel is entitled based on the jury instructions given with respect to this claim:

         $_____

     (c)    Do you find by a fair preponderance of the credible evidence that Mattel has established that it is entitled to more than nominal damages as a consequence of Isaac Larian's intentional interference with Bryant's agreement?

         ☐ yes or

         ☐ no.

     (d)    If your answer is YES, state the amount of damages to which Mattel is entitled based on the jury instructions given with respect to this claim:

         $_____

**Mattel's Objections**

Mattel objects to defendants' proposed verdict forms as follows:

Mattel objects to defendants' preamble on the ground that it is misleading and confusing given that the jury will already have determined defendants' liability for all claims other than copyright infringement in Phase 1A. Moreover, the Court has already found that Mattel has proved that it suffered "resulting damage" in connection with its claim for intentional interference with contractual relations. *See* April 25, 2008 Order, at 6. Accordingly, there is no basis for defendants to ask the jury to confirm that it has found liability and rejected affirmative defenses. It is also erroneous and misleading to the extent it asks the jury to indicate that it has found that none of defendants' affirmative defenses apply because the Court has indicated that the majority of those affirmative defenses are equitable in nature, and the Court will rule on them after trial. Defendants' proposed forms are also misleading in that they do not reflect that Mattel seeks punitive damages against the defendants on this claim.

Mattel mischaracterizes the import of the Court's decision to defer ruling on certain affirmative defenses. While the Court may ultimately rule on the effect of these defenses, it is apparent from the Court's Final Pre-Trial Conference Order that it expects the jury to make the factual determinations underlying its decision. Final Pre-Trial Conference Order at 8. Pursuant to the MGA Parties' Jury Instructions, the jury will understand what facts it must find in order to determine whether a particular affirmative defense applies. The questions in this verdict form will memorialize those findings for the Court, which may then use them to make its own final determination.

(a), (c)     Each of the proposed forms is misleading and argumentative. They misleadingly ask the jury to find that Mattel established damages by "a *fair* preponderance of the *credible* evidence." The burden of proof is a preponderance of

153

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

1   the evidence, and to the extent that the defendants' proposed forms erroneously

2   suggest that Mattel's burden is heightened, they are prejudicial.  They are also

3   argumentative in asking the jury whether Mattel established that it is entitled to

4   recover "more than nominal damages."  The forms should simply ask the jury what

5   Mattel's damages are.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

1   **MGA Parties' Response**

2

3       Although the preceding objection relies on the Court's summary judgment

4   findings, the instruction misinterprets the Court's ruling, as Mattel had not moved for

5   summary judgment on its claim for intentional interference with contract. The Court

6   was explicit that it only ruled on the MGA Parties' motion for partial summary

7   judgment in connection with that claim (see April 25, 2008 Order at 6) and recited

8   those elements that the were undisputed for purposes of summary judgment (id. at 6-

9   7).   This recitation, however, was not a holding for Mattel as a matter of law,

10  because Mattel had not even made a motion on this claim.   Rather, the Court's ruling

11  was only to grant the MGA Parties' motion on this claim to the extent it was "based

12  on Mattel's rights to Bratz."   April 25, 2008 Order at 2; Final Pre-Trial Conference

13  Order at 5.

14      MGA Parties' Proposed Form simply asks the jury to confirm that it has found

15  liability for intentional interference.   This is a reasonable question to ask prior to

16  proceeding to damages and reduces the risk of mistake or confusion of the jury.

17  Moreover, as for Mattel's complaint that the form does not contain Mattel's claim

18  for punitive damages, Mattel lacks any evidentiary basis to seek punitive damages,

19  so such an question is unnecessary. See Barry v. Raskov, 232 Cal. App. 3d 447, 457

20  (1991) (trial court properly refused to instruct jury on punitive damages, as there was

21  not clear and convincing evidence of fraud); see also Jones v. Williams, 297 F.3d

22  930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or her

23  theory of the case if it is supported by law and has foundation in the evidence").

24      Mattel mischaracterizes the import of the Court's decision to defer ruling on

25  certain affirmative defenses.   While the Court may ultimately rule on the effect of

26  these defenses, it is apparent from the Court's Final Pre-Trial Conference Order that

27  it expects the jury to make the factual determinations underlying its decision.   Final

28  Pre-Trial Conference Order at 8.   Pursuant to the MGA Parties' Jury Instructions, the

1   jury will understand what facts it must find in order to determine whether a particular
2   affirmative defense applies.  The questions in this verdict form will memorialize
3   those findings for the Court, which may then use them to make its own final
4   determination.

5       (a), (c)  MGA Parties' Proposed Verdict Form is entirely proper and suitable
6   for use by the jury.  Mattel argues that the form should "simply ask the jury whether
7   Mattel proved damages for this claim".  This is an argument for simplicity over
8   accuracy.  The correct question after determining whether there was intentional
9   interference is whether the plaintiff is entitled to more than nominal damages.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)

**-REVISED-**

**Proposed Form of Verdict No. 7 (Conversion Damages)**

*If you have found that MGA, MGA (HK), or Larian are liable for conversion, that none of their affirmative defenses apply, and that Mattel's recovery is not barred by the statute of limitations, next consider whether Mattel is entitled to damages resulting from MGA, MGA (HK), or Larian's conversion of certain tangible materials*

    (a)    Do you find by a fair preponderance of the credible evidence that Mattel has established that it is entitled to more than nominal damages as a consequence of MGA or MGA (HK)'s conversion of certain tangible materials?

☐yes or

☐no.

    (b)    If your answer is YES, state the amount of damages to which Mattel is entitled based on the jury instructions given with respect to this claim:

$_____

    (c)    Do you find by a fair preponderance of the credible evidence that Mattel has established that it is entitled to more than nominal damages as a consequence of Larian's conversion of certain tangible materials?

☐yes or

☐no.

    (d)    If your answer is YES, state the amount of damages to which Mattel is entitled based on the jury instructions given with respect to this claim:

$_____

157

**Mattel's Objections**

Mattel objects to defendants' proposed verdict forms as follows:

Mattel objects to defendants' preamble on the ground that it is misleading and confusing given that the jury will already have determined the defendants' liability for all claims other than copyright infringement in Phase 1A.  Accordingly, there is no basis for defendants to ask the jury to confirm that it has found liability and rejected affirmative defenses.  It is also erroneous and misleading to the extent it asks the jury to indicate that it has found that none of defendants' affirmative defenses apply because the Court has indicated that the majority of those affirmative defenses are equitable in nature, and the Court will rule on them after trial.  Defendants' proposed forms are also misleading in that they do not reflect that Mattel seeks punitive damages against the defendants on this claim.

(a), (c)       Each of the proposed forms is misleading and argumentative. They misleadingly ask the jury to find that Mattel established damages by "a *fair* preponderance of the *credible* evidence."  The burden of proof is a preponderance of the evidence, and to the extent that the defendants' proposed forms erroneously suggest that Mattel's burden is heightened, they are prejudicial.  They are also argumentative in asking the jury whether Mattel established that it is entitled to recover "more than nominal damages."  The forms should simply ask the jury what Mattel's damages are.

**MGA Parties' Response**

MGA Parties' Proposed Form simply asks the jury to confirm that it has found liability for conversion.  This is a reasonable question to ask prior to proceeding to damages and reduces the risk of mistake or confusion of the jury. Moreover, as for Mattel's complaint that the form does not contain Mattel's claim for punitive damages, Mattel lacks any evidentiary basis to seek punitive damages, so such an question is unnecessary. See Barry v. Raskov, 232 Cal. App. 3d 447, 457 (1991) (trial court properly refused to instruct jury on punitive damages, as there was not clear and convincing evidence of fraud); see also Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence").

Mattel mischaracterizes the import of the Court's decision to defer ruling on certain affirmative defenses.  While the Court may ultimately rule on the effect of these defenses, it is apparent from the Court's Final Pre-Trial Conference Order that it expects the jury to make the factual determinations underlying its decision.  Final Pre-Trial Conference Order at 8.  Pursuant to the MGA Parties' Jury Instructions, the jury will understand what facts it must find in order to determine whether a particular affirmative defense applies.  The questions in this verdict form will memorialize those findings for the Court, which may then use them to make its own final determination.

(a), (c)  MGA Parties' Proposed Verdict Form is entirely proper and suitable for use by the jury.  Mattel argues that the form should "simply ask the jury whether Mattel proved damages for this claim".  This is an argument for simplicity over accuracy.  The correct question after determining whether there was conversion is whether the plaintiff is entitled to more than nominal damages.

159

1

2

3
DATED:  June 18, 2008     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

4
By:   _____ /s/ Jason D. Russell _____

5
Jason D. Russell
Attorneys for the MGA Parties

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objs. & Resp. Re: MGA Parties' Revised [Proposed] Spec. Verdict Forms– Case No. CV 04-9049 SGL (RNBx)
513081.02-Los Angeles Server 1A - MSW