THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
LAUREN AGUIAR (Admitted Pro Hac Vice)
(laguiar@skadden.com)
CARL ALAN ROTH (Bar No. 151517)
(croth@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Tel.: (213) 687-5000/Fax: (213) 687-5600

Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and Isaac Larian

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| v. | Honorable Stephen G. Larson |
| MATTEL, INC., a Delaware corporation, | MGA PARTIES' RESPONSES TO MATTEL'S OBJECTIONS TO MGA PARTIES' SECOND REVISED [PROPOSED] PHASE 1-A SPECIAL VERDICT FORM |
| Defendant. | |
| AND CONSOLIDATED ACTIONS. | |

| No. | Title | Page |
|-----|-------|------|
| 1 | Ownership of Drawings | 9 |
| 2 | Intentional Interference With Contract | 13 |
| 3 | Conversion | 24 |
| 4 | Aiding And Abetting Breach Of Fiduciary Duty Other Than To Maintain The Confidentiality Of Information Provided To Him By Mattel | 29 |
| 5 | Aiding And Abetting Breach Of Fiduciary Duty To Maintain The Confidentiality Of Information Provided To Him By Mattel | 37 |
| 6 | Aiding And Abetting Breach Of Duty Of Loyalty Other Than Not Entering Into A Contract With Another Company While Employed At Mattel | 46 |
| 7 | Aiding And Abetting Breach Of Duty Of Loyalty By Entering Into A Contract With Another Company While Employed At Mattel | 56 |

i

## MATTEL'S GENERAL OBJECTIONS

Each of the following General Objections is hereby incorporated in full into the objections to specific verdict forms and proposed findings set forth below:

1. Mattel objects generally to defendants' proposal to present the jury with an argumentative and defense-slanted verdict form. Defendants will be afforded an opportunity at the close of the evidence to present argument as to any issues properly presented to the jury. There is no reason for defendants to attempt to reargue the issues in their proposed verdict forms. Yet defendants now propose to bombard the jury with forms containing every argument and addressing every subissue they believe is in the case, each framed as a special verdict question. The result is a convoluted, over-length set of forms. There is no reason to require the jury to make explicit findings on every element of every claim. Instead, defendants have proposed this to attempt to induce the jury to find for them by improperly erecting hurdles the jury must jump over to find for Mattel.

2. Mattel further objects to defendants' proposed verdict forms for Phase 1A on the ground that they improperly and confusingly ask the jury to make findings on issues the Court has already adjudicated in connection with the parties' motions for partial summary judgment and are contrary to the Court's findings. *See, e.g.*, April 25, 2008 Order Granting in Part, Denying in Part, and Deferring in Part the Parties' Motions for Partial Summary Judgment ("April 25, 2008 Order"); June 7, 2008 Final Pre-Trial Conference Order for Phase 1 Trial ("Final Pre-Trial Conference Order").

The Court has already held as a matter of law that the "Inventions Agreement explicitly conveys to Mattel an employee's interest in any copyright applications" and that, assuming copyrightability and resolution of timing issues in Mattel's favor, "the original Bratz drawings clearly fall within the scope of the Inventions Agreement." April 25, 2008 Order, at 4. The Court confirmed in the Final Pre-Trial Conference Order that "Mattel owns 'any Bratz-related "inventions" (including any designs, improvements, ideas, concepts and copyrightable subject matter)' that Carter

1

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

1  Bryant 'created during the period of his employment with Mattel.'" Final Pre- Trial
2  Conference Order, at 4.

3       The Court also found as a matter of law that Bryant owed a fiduciary duty and
4  duty of loyalty to Mattel and that he breached his duty of loyalty when he "secretly
5  entered into a contract with Mattel's competitor, while still employed by Mattel, to
6  produce a line of fashion dolls to be marketed in direct competition with Mattel's
7  products." April 25, 2008 Order, at 5-6.

8       The Court also ruled that Mattel has satisfied at least two elements of its claim
9  against MGA and Larian for intentional interference with contractual relations. April
10  25, 2008 Order, at 6; May 21, 2008 Order, at 9-10 (finding that the first element [a
11  valid contract] and fifth element [resulting damage] are met).

12       3. Mattel further objects to the defendants' proposed verdict forms on the
13  ground that the questions they pose deviate substantially from the model instructions
14  found in the Ninth Circuit Manual of Model Jury Instructions and CACI.

15       4. Mattel further objects to the defendants' proposed verdict forms on the
16  ground that the questions they pose incorporate the same erroneous statements of law
17  that are set forth in the defendants' revised disputed proposed jury instructions. *See*
18  Mattel's Objections to the Defendants' Revised Disputed Proposed Jury Instructions.
19  If these erroneous statements of law are included in the final verdict form, an
20  unfavorable verdict would be subject to reversal on appeal.

21       5. Mattel further objects to the defendants' proposed verdict forms on the
22  ground that they are excessively fact-specific and argumentative, which makes them
23  hopelessly confusing and prejudicial. Many of the "facts" assumed by the defendants
24  in their proposed verdict forms are argumentative, biased and inaccurate.  The
25  defendants make numerous assumptions in their proposed verdict forms regarding
26  what Mattel claims, many of which are irrelevant and unnecessary the causes of
27  action at issue in this case. For example, defendants ask the jury to make numerous
28  findings regarding whether Bryant breached his contracts with Mattel, even though

Mattel need not prove actual breach to recover against defendants for intentional interference with contractual relations.

6. Mattel further objects to the defendants' proposed verdict forms on the ground that they are materially biased toward the defendants.

7. Mattel further objects to defendants' proposed verdict forms on the ground that defendants' instructions are inconsistent with applicable legal standards, as set forth in the briefing on Mattel's motion for partial summary judgment, Mattel's motions in limine and Mattel's proposed jury instructions, which are hereby incorporated herein.

8. Mattel incorporates by reference herein, each of the objections that it has made or may make to the jury instructions proposed by MGA to the extent that they relate to the same subject matter addressed by those objections.

9. Based on the foregoing General Objections, Mattel respectfully requests that the Court reject defendants' proposed verdict form in its entirety. To the extent the Court intends to adopt any portion of defendants' proposed verdict form, Mattel reserves the right to assert additional General and Specific Objections to defendants' proposed form.

3

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

## MGA PARTIES' RESPONSES TO MATTEL'S GENERAL OBJECTIONS

1.     As discussed at length in MGA Parties' Objections to Mattel's Proposed Verdict Forms, Mattel fundamentally misunderstands the purpose of a special verdict form.  Fed. R. Civ. P. 49(a)(1), requires that the jury return, "a special verdict in the form of a special written finding on each issue of fact." (emphasis added).  This Court's Order Regarding Pretrial Deadlines dated March 11, 2008 specifically states that the parties are to file "special verdict forms."  See Order Regarding Pretrial Deadlines ¶ 2.  Mattel now objects on the grounds that MGA Parties followed the Court's instruction, while Mattel turned in verdict forms that call for the jury's conclusions on law.

The purpose of a special verdict is to concentrate the jury on its fact-finding role.  See Zhang v. Am. Gem. Seafoods, Inc., 339 F.3d 1020, 1031 (9th Cir. 2003) (discussing differences between special verdicts and general verdicts and noting that "special verdicts 'compel the jury to focus exclusively on its fact-finding role'") (quoting Floyd v. Laws, 929 F.2d 1390, 1395 (9th Cir. 1991)).  Indeed, particularly where cases are complex and fact-intensive, special verdict forms provide the jurors with assistance in framing their understanding of the issue.  For example, in a First Amendment case, Tavoulareas v. Piro, then Circuit Court Judge Ruth Bader Ginsburg lauded the use of detailed special verdict forms, noting that they "impel the jurors to advert to the framework within which the judge has instructed them to consider the case and could assist them to hold the distinct legal questions in clear and separate view" and "thus may promote both comprehension and actual application of the governing … law." 817 F.2d 762, 809 (D.C. Cir. 1987) (Ginsburg, J., concurring).  She described with approval the use of "a jury verdict form which 'took the jury step by step through each of the theories on which plaintiff relied.'" Id. at 809 n.4 (internal citations omitted).

Mattel objects on the grounds that MGA Parties' Proposed Verdict Forms would require the jury to answer a large number of questions.  This is an extremely

4

complicated proceeding, largely because Mattel has chosen to assert numerous legal claims. Mattel now expresses concern that it will take the jury a long time to complete the forms proposed. Evidently, Mattel's preferred alternative is to present cursory verdict forms that fail to cover substantive issues and which would have the jury make conclusions of law without any findings of fact. As discussed above, this is not the purpose of a special verdict form. Using Mattel's proposed verdict forms would all but guarantee a drawn-out appeals process, as the parties and the Court try to sort out the jury's findings of fact from its conclusions of law.

2.  Mattel's objection reflect a number of mischaracterizations of the Court's rulings.

Mattel overstates the Court's ruling with respect to the Inventions Agreement. The Court found as a matter of law that Mattel has certain rights over "any Bratz-related 'inventions' (including any designs, improvements, ideas, concepts and copyrightable subject matter)" that Bryant "created during the period of his employment with Mattel." Final Pre-Trial Conference Order at 4. As the Court noted, its holding was contingent on "the resolution of certain (as yet unresolved) issues of timing of creation and/or alteration." April 25, 2008 Order at 4. More specifically, the Court's May 21, 2008 Order establishes that the act of drawing, in and of itself, is not dispositive of Mattel's rights, but rather depends in part upon the origin of the idea for the drawing. The Court noted that one drawing was undisputedly "created during the period of Bryant's employment with Mattel" but found that "the record also reflects that this drawing was made on the basis of an earlier sculpt, and the record is not entirely clear as to who had input into that sculpt," and that without this information, the Court could not reach any legal conclusions on Mattel's rights to that drawing. May 21, 2008 Order at 8. Thus, it is entirely appropriate for the MGA Parties to ask, for example, both when Bryant conceived of the idea for his works and when he actually committed them to paper.

1  Mattel's characterization of the Court's holding on Bryant's fiduciary duty and
2  the duty of loyalty is accurate as far as it goes but also excludes some critical
3  explanation.  The Court held that Bryant owed Mattel a fiduciary duty "by virtue of
4  the language set forth in ¶ 1(a) of the Inventions Agreement."  April 25, 2008 Order
5  at 5.  However, the Court's ruling on that duty was limited to Bryant's duty vis-à-vis
6  Mattel's confidential information.  May 21, 2008 Order at 4.  Thus, the jurors must
7  still consider both the proper scope of that duty and then determine whether it applies.
8  Likewise, to determine the harm attributable to either a breach of loyalty or a breach
9  of fiduciary duty, the jury must first be consider the nature of each duty and each
10 breach.

11  Mattel also mischaracterizes the Court's rulings on its intentional interference
12 claim.  Mattel had not moved for summary judgment on its claim for intentional
13 interference with contract.  The Court was explicit that it only ruled on the MGA
14 Parties' motion for partial summary judgment in connection with that claim (see
15 April 25, 2008 Order at 6) and recited those elements that were undisputed for
16 purposes of summary judgment (id. at 6-7).  This recitation, however, was not a
17 holding for Mattel as a matter of law, because Mattel had not even made a motion on
18 this claim.  Rather, the Court's ruling was only to grant the MGA Parties' motion on
19 this claim to the extent it was "based on Mattel's rights to Bratz."  April 25, 2008
20 Order at 2; Final Pre-Trial Conference Order at 5.

21  3.  Mattel does not explain how MGA Parties' Proposed Verdict Forms
22 "deviate substantially" from the model instructions.  In any event, the parties are
23 permitted to modify the language of any model instruction to make it less confusing
24 or more appropriate in the context of a particular case.  See McDowell v. Calderon,
25 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit
26 Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not
27 debated and hammered out by legislators, but by ad hoc committees of lawyers and
28 judges.  Jury instructions do not come down from any mountain or rise up from any

6

1  sea.  Their precise wording, although extremely useful, is not blessed with any

2  special precedential or binding authority.  This description does not denigrate their

3  value, it simply places them in the niche where they belong.").  Indeed, modification

4  is sometimes necessary to make an instruction accurate and complete.  See, e.g.,

5  United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving

6  modification of Ninth Circuit model instruction to include additional elements,

7  noting that "[h]ad the district court merely read the model jury instruction, it would

8  have committed plain error, since that instruction makes no reference whatsoever to

9  knowledge or intent."). The MGA Parties' responses to specific objections are below.

10      4.  MGA Parties responded to Mattel's Objections to MGA Parties'

11  Proposed Jury Instructions in their Disputed [Proposed] Jury Instructions.

12      5.  Mattel's objection that MGA Parties' Proposed Verdict Forms are

13  "excessively fact-specific" is not a valid objection to special verdict forms.  Fed. R.

14  Civ. P. 49(a)(1), requires that the jury return, "a special verdict in the form of a

15  special written finding on each issue of fact." (emphasis added).  MGA Parties'

16  Proposed Special Verdict Forms are fact specific because that is precisely what the

17  Federal Rules of Civil Procedure require.  Mattel has offered no explanation for why

18  the proposed verdict forms are confusing other than the fact that there are a large

19  number of questions.  At the same time, Mattel had no reservations about bringing a

20  large number of claims.

21      Moreover, Mattel's claim that there is no need to ask questions regarding

22  breach is inaccurate.  While Mattel is correct that the fourth element of a claim for

23  intentional interference with contractual relations is sometimes phrased "breach or

24  disruption," it is quite apparent that Mattel has not brought this claim on the basis of

25  a purported disruption, but rather a purported actual breach.  Indeed, in denying

26  MGA motion's for summary judgment on this claim, the Court noted that "as set

27  forth above, Mattel has also raised triable issues of fact regarding its claim for breach

28  of contract, the fourth element." May 21, 2008 Order at 9.  Put simply, Mattel is not

7

1    contending Bryant took a leave of absence – he left. The relationship was not

2    "disrupted," it was terminated.   Thus, Mattel will not succeed in its claim unless it

3    shows a breach.  <u>See</u> <u>Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc</u>., 7

4    F.3d 1434, 1442 (9th Cir. 1993) ("To recover for intentional interference with a

5    contractual relationship, Summit must show '… (3) that the contract was in fact

6    breached by [ZMTW], …'"); <u>see also</u> <u>Anlin Indus., Inc. v. Burgess</u>, 2006 WL

7    2308476, at *3 (E.D. Cal. Aug. 9, 2006) ("To state a cause of action for interference

8    with contract under California law, a plaintiff must allege …(3) that the contract was

9    breached; …"); <u>Farmers Ins. Exch. v. State of Cal.</u>, 175 Cal. App. 3d 494, 506 (1985)

10   ("The elements of this tort [for intentional interference with contract] include: …3)

11   breach of the contract by the third party; … ").

12         6.     Mattel has not explained how the MGA Parties' Proposed Verdict

13   Forms are "materially biased."  Mattel's objections to individual forms are addressed

14   below.

15         7.     Mattel has not explained how the MGA Parties' Proposed Verdict

16   Forms are inconsistent. Mattel's objections to individual forms are addressed below.

17         8.     MGA Parties responded to Mattel's Objections to MGA Parties'

18   Proposed Jury Instructions in their Disputed [Proposed] Jury Instructions.

19         9.     The MGA Parties' Proposed Verdict Forms are entirely suitable for

20   use by the jury.

21

22

23

24

25

26

27

28

8

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

**QUESTION NO. 1:**

**<u>Ownership of Drawings</u>**

a) Has Mattel proven by a preponderance of the evidence that Carter Bryant conceived of the idea for and drew the initial master drawings of the Bratz characters while Mr. Bryant was employed by Mattel?

☐  YES

or

☐  NO

9

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

**Mattel's Objections**

Mattel objects to defendants' proposed verdict form as follows:

Defendants proposed verdict form is vague and ambiguous because it does not specify the Bratz-related works that Mattel claims it owns pursuant to the Inventions Agreement, as Mattel's proposed form does. Accordingly, the proposed jury finding would be unclear and insufficient for purposes of Mattel's declaratory relief claim.

Defendants' proposed form is also compound and therefore misleading. As the Court has already ruled as a matter of law, Mattel owns all Bratz-related inventions created by Bryant while he was employed by Mattel. *See* April 25, 2008 Order, at 4-5; June 7, 2008 Final Pre-Trial Conference Order, at 4. Mattel owns those works regardless of when Bryant "conceived of the idea for" Bratz. Accordingly, it is misleading and improper for defendants to suggest – as this proposed form does – that Mattel must prove that Bryant both conceived of the idea and created works while he was employed by Mattel in order for Mattel to own Bratz-related works.

Further, the proposed form improperly attempts to limit Mattel's claim to the idea for Bratz and the "initial master drawings of the Bratz characters." Mattel's claim is not so limited. As set forth in Mattel's proposed verdict form, Mattel claims that it owns numerous Bratz-related works created by Bryant while he was employed by Mattel. It is up to the jury to make findings as to the ownership of those works. It is improper and misleading for defendants to limit the jury's findings to some sub-set of the works identified in Mattel's proposed verdict form. Nor is the phrase "initial master drawings of the Bratz characters" defined, rendering the question hopelessly vague. Nor is this phrase proper in the first place -- it is a slanted, loaded phrase designed to further MGA's theory of the case.

Defendants' proposed question should be rejected.

10

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

**MGA Parties' Response**

The phrase initial master drawings has been used by counsel for the MGA Parties throughout the trial and will be familiar to the jury.  If the Court deems it necessary, the MGA Parties can provide a jury instruction defining the term for the jury.  However, the MGA Parties respectfully suggest that the jury is already familiar with the term and would not deem it vague or ambiguous.

Mattel overstates the Court's ruling with respect to the Inventions Agreement. The Court found as a matter of law that Mattel has certain rights over "any Bratz-related 'inventions' (including any designs, improvements, ideas, concepts and copyrightable subject matter)" that Bryant "created during the period of his employment with Mattel."  Final Pre-Trial Conference Order at 4.  As the Court noted, its holding was contingent on "the resolution of certain (as yet unresolved) issues of timing of creation and/or alteration."  April 25, 2008 Order at 4.  More specifically, the Court's May 21, 2008 Order establishes that the act of drawing, in and of itself, is not dispositive of Mattel's rights, but rather depends in part upon the origin of the idea for the drawing.  The Court noted that one drawing was undisputedly "created during the period of Bryant's employment with Mattel" but found that "the record also reflects that this drawing was made on the basis of an earlier sculpt, and the record is not entirely clear as to who had input into that sculpt," and that without this information, the Court could not reach any legal conclusions on Mattel's rights to that drawing.  May 21, 2008 Order at 8.  Thus, it is entirely appropriate for the MGA Parties to ask both when Bryant conceived of the idea for his works and when he actually committed them to paper.

Mattel's objection that the MGA Parties have asked only about the initial master drawings of the Bratz characters is misplaced.  The Bratz initial master drawings are the drawing as issue in this case and are the basis for all future drawings.  If the initial master drawings were done in 1998, and the jury so finds, that would be dispositive of Mattel's copyright claims against the MGA Parties.

11

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

1   Mattel's objection (and its verdict form) attempts to categorize as "Bratz-related"

2   drawings that have nothing to do with the actual Bratz dolls.   The MGA Parties

3   question properly limits the scope of the jury's inquiry.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**QUESTION NO. 2:**

**<u>Intentional Interference with Contract</u>**

a) Has Mattel proven by a preponderance of the evidence that either MGA or Isaac Larian approached Carter Bryant and induced him to breach his contract with Mattel?

As to MGA:

 ☐ YES

 or

 ☐ NO

As to Isaac Larian:

 ☐ YES

 or

 ☐ NO

 (If NO to both, please proceed to QUESTION NO. 3)

b) Has Mattel proven by a preponderance of the evidence that MGA or Isaac Larian were aware of the material terms of the contract between Carter Bryant and Mattel?

As to MGA:

 ☐ YES

 or

 ☐ NO

As to Isaac Larian:

 ☐ YES

 or

 ☐ NO

 (If NO to both, please proceed to QUESTION NO. 3)

13

**QUESTION NO. 2** *(continued)*:

c) Has Mattel proven by a preponderance of the evidence that Carter Bryant breached his contract with Mattel?

☐  YES

or

☐  NO

(If NO, please proceed to QUESTION NO. 3)

d) Has Mattel proven by a preponderance of the evidence that Mattel suffered any harm by Carter Bryant's breach of his contract with Mattel?

☐  YES

or

☐  NO

(If NO, please proceed to QUESTION NO. 3)

**QUESTION NO. 2** *(continued)*:

e) Has Mattel proven by a preponderance of the evidence that either MGA or Isaac Larian, by entering into an agreement with Carter Bryant, was a substantial factor in any harm suffered by Mattel from Carter Bryant's breach of his contract with Mattel?

As to MGA:

☐ YES

or

☐ NO

As to Isaac Larian:

☐ YES

or

☐ NO

(If NO to both, please proceed to QUESTION NO. 3)

f) Has Mattel proven by a preponderance of the evidence that either MGA or Isaac Larian were certain that they were contracting for something that belonged to Mattel when MGA contracted with Bryant for the rights to Bratz?

As to MGA:

☐ YES

or

☐ NO

As to Isaac Larian:

☐ YES

or

☐ NO

15

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

## Mattel's Objections

Defendants' proposed form regarding intentional interference with contract incorporates the same erroneous statements of law as their proposed jury instructions and should be rejected on that basis alone. To the extent the Court is inclined to ask the jury to make such specific findings regarding Mattel's claims (which Mattel does not think is necessary), such findings should track the elements of the claim as set forth in the model instruction found in CACI (as Mattel's proposed jury instruction does). Defendants' proposed form does not conform to the model instruction.

Mattel objects to defendants' specific proposed questions follows:

(a) This proposed question is erroneous as a matter of law and therefore misleading and prejudicial to Mattel. Defendants are simply making up elements of an intentional interference claim that are contrary to the law. The issue of whether or not MGA or Larian approached Carter Bryant first is irrelevant. That is not an element of this claim. *See* CACI No. 2201; April 25, 2008 Order, at 6. MGA and Larian are liable if they knew of Bryant's contract(s) with Mattel; intended to disrupt the performance of the contract; prevented performance or made performance more difficult; Mattel was harmed; and MGA and/or Larian's conduct was a substantial factor in causing Mattel's harm. *See* CACI No. 2201; *Plessinger v. Castleman and Haskell*, 838 F. Supp 448, 452 (N.D. Cal. 1993) ("[I]ntent can be met by an allegation that the defendant engaged in an intentional act designed to 'disrupt' the plaintiff's contractual relationship.... and that disruption includes acts which make the plaintiff's performance under the contract more difficult or burdensome"); *Pacific Gas & Electric Co. v . Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

Even if the issue of initial contact were somehow relevant (which it is not), it certainly would not be Mattel's burden of proof.

(b) This proposed question is erroneous as a matter of law and therefore misleading and prejudicial to Mattel. Defendants wrongly state that Mattel must prove that defendants were aware of the "material terms" of the contract or contracts

16

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

1  between Bryant and Mattel. That is not the law. Mattel need only prove that
2  defendants "knew of the contract." *See* CACI No. 2201.

3      (c) This proposed question is erroneous as a matter of law and therefore
4  misleading and prejudicial to Mattel. Mattel need not prove that Bryant actually
5  breached his contract with Mattel to recover against defendants for intentional
6  interference with contractual relations. Mattel need only prove that performance of
7  the contract was disrupted or made more difficult. *See* CACI No. 2201; *see also*
8  April 25, 2008 Order, at 6.

9      (d) The Court has already found, as a matter of law, that Mattel was harmed
10 by defendants' conduct. *See* April 25, 2008 Order, at 6 (finding that the "resulting
11 damage" element of Mattel's claim for intentional interference with contractual
12 relations has been met). Hence, the jury need not make such a finding.

13     (e) This proposed question is duplicative and unnecessary. The Court has
14 already found that Mattel was harmed as a result of the disruption of its contractual
15 relationship with Bryant. *See* April 25, 2008 Order, at 6. There is no need for the jury
16 to make a separate finding that defendants were a "substantial factor" in causing that
17 harm, which is implicit in any finding of harm.

18     Defendants' proposed question also improperly attempts to limit their
19 wrongful conduct to "entering into an agreement with Carter Bryant" when Mattel's
20 claim is based on all of defendants' conduct that interfered with the contractual
21 relationship between Mattel and Bryant.

22     (f) This proposed question is erroneous as a matter of law and therefore
23 misleading and prejudicial to Mattel. Defendants are simply making up elements of
24 this claim that are contrary to law. Defendants have no basis to inform the jury that
25 Mattel must prove that defendants were "certain that they were contracting for
26 something that belonged to Mattel when [they] contracted with Bryant for the rights
27 to Bratz." That is not an element of an intentional interference claim. *See* CACI No.
28 2201; April 25, 2008 Order, at 6. Accordingly, it is improper and prejudicial for

17

1   defendants to inform the jury that Mattel must prove that issue in order to establish

2   liability.

3       Defendants' proposed question also improperly attempts to limit their

4   wrongful conduct to "contract[ing] with Bryant for the rights to Bratz" when Mattel's

5   claim is based on all of defendants' conduct that interfered with the contractual

6   relationship between Mattel and Bryant. Defendants' proposed questions should be

7   rejected.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MGA Parties' Response**

The MGA Parties have already responded to Mattel's Objections to MGA Parties' Proposed Jury Instructions.  For all the reasons stated in those responses, the MGA Parties' Proposed Jury Instructions are accurate statements of the law, as are the questions in the MGA Parties' Verdict Form Question 2(a-f).  Moreover, the fact that the MGA Parties phrase certain elements of this tort in a way that is specific to this case, rather than using the generic formulation found in the CACI, is no reason to reject the MGA Parties' form.  Parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case.  See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997).  Indeed, modification is sometimes necessary to make an instruction accurate and complete.  See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992).

As for Mattel's comment that specific findings on the elements of its claims are not necessary, Mattel fundamentally misunderstands the purpose of a special verdict form.  Fed. R. Civ. P. 49(a)(1), requires that the jury return, "a special verdict in the form of a special written finding on each issue of fact." (emphasis added).  The purpose of a special verdict is to concentrate the jury on its fact-finding role.  See Zhang v. Am. Gem. Seafoods, Inc., 339 F.3d 1020, 1031 (9th Cir. 2003).

(a)   It is settled that a contracting party is not liable for intentional interference with contract where the breaching party initiates the contact with him.  See Restatement (Second) of Torts § 766, cmt. n (2007).  See also DeVoto v. Pacific Fidelity Life Ins. Co., 618 F.2d 1340, 1348 (9th Cir. 1980) (noting that "where a contract has been abrogated, competitors may thereafter offer to deal with the party who repudiated the contract without incurring liability in tort: there is no act of inducement, and once the contract is abrogated there is no advantage to appropriate") (citing Restatement (Second) of Torts § 766, cmt. n); Bauer v. Interpublic Group of Companies, Inc.,  255 F. Supp. 2d 1086, 1093, 1095 (N.D. Cal. 2003); 1-800 Contacts, Inc. v. Steinberg, 107 Cal. App. 4th 568, 586 (2003) (where breaching

19

1  party approached defendant, defendant agreed to work with and set up meetings for

2  others to work with breaching party not enough to show inducement).   Thus,

3  Mattel's objection that whether Bryant approached MGA or Larian first, or was first

4  approached by them is not an element of intentional interference with contract is

5  beside the point.

6  Moreover, it is not wrongful for a company to solicit or hire the at-will

7  employee of its competitor, because California law protects employees and their

8  pursuit of any employment or enterprise of their choice as more important than the

9  competitive business interests of the employers.   Likewise, competitor employers

10  have the right to offer more pay or better terms to another's employee, so long as the

11  employee is free to leave.  See Reeves v. Hanlon, 33 Cal. 4th 1140, 1151 (2004)

12  (California "public policy generally supports a competitor's right to offer more pay

13  or better terms to another's employee, so long as the employee is free to leave. …

14  [I]f the law were to the contrary, the result 'would be intolerable, both to such

15  employers as could use the employe[e] more effectively and to such employe[e]s as

16  might receive added pay. It would put an end to any kind of competition.'") (citation

17  omitted).[1]

18

19

---

20  [1] See also Metro Traffic Control, Inc. v. Shadow Traffic Network, 22 Cal. App. 4th 853, 859 (1994)
("California courts have consistently declared  … an expression of public policy to ensure that
21  every citizen shall retain the right to pursue any lawful employment and enterprise of their choice");
Diodes, Inc. v. Franzen, 260 Cal. App. 2d 244, 255 (1968) (California public policy recognizes
22  "[t]he interests of the employee in his own mobility and betterment are deemed paramount to the
competitive business interests of the employers"); Hollingsworth Solderless Terminal Co. v.
23  Turley,  622 F.2d 1324, 1337 (9th Cir. 1980) ("[m]ere solicitation of an employee, under no
contract of employment, to leave and associate with a competing firm is not illegal"); Interloc
24  Solutions, Inc. v. Tech. Assoc. Int'l. Corp., 2007 WL 2429715, at *2 (E.D. Cal. Aug. 24, 2007)
(citing Reeves for the proposition that "employees are not precluded from seeking new
25  employment on their own initiative"); Posdata Co. Ltd. v. Kim, 2007 WL 1848661, *7 (N.D. Cal.
June 27, 2007); Continental Car-Na-Var Corp. v. Moseley, 24 Cal. 2d 104, 110 (1944) ("[a] former
26  employee has the right to engage in a competitive business for himself and to enter into
competition with his former employer, even for the business of ... his former employer, provided
27  such competition is fairly and legally conducted."); accord VL Sys., Inc. v. Unisen, Inc., 152 Cal.
App. 4th 708, 713, 715 (2007) (quoting Diodes and finding no unlawful solicitation of employee
28  where the employee initiated the new agreement with the defendant and "chose to seek the job
with" the defendant).

20

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

1   Mattel's objection ignores that a claim for intentional interference with an <u>at-</u>
2   <u>will</u> contract, such as the contract at issue here, requires Mattel to prove that Larian
3   and MGA engaged in wrongful conduct <u>independent</u> of "interfering" with Bryant's
4   contracts with Mattel. <u>See</u> <u>Reeves</u>, 33 Cal. 4th at 1152-53 (2004) ("[T]o recover for a
5   defendant's interference with an at-will employment relation, a plaintiff must plead
6   and prove that the defendant engaged in an independently wrongful act -- i.e., an act
7   'proscribed by some constitutional, statutory, regulatory, common law, or other
8   determinable legal standard' -- that induced an at-will employee to leave the
9   plaintiff.") (citations omitted).

10   (b)   The MGA Parties modified the language of CACI No. 2201 to assist the
11   jury in understanding that a defendant need not know only of the contract, but of the
12   effect of the contract.  The only authority Mattel has identified to the contrary (in its
13   objections to the corresponding instruction), <u>Sebastian Int'l Inc. v. Russolillo</u>, 162 F.
14   Supp. 2d 1198, 1203- 04 (C.D. Cal. 2001), involved a pleading standard on a motion
15   to dismiss, which required that defendants "ha[ve] knowledge of the class of
16   contractual relations potentially disrupted by their actions." <u>Id.</u> at 1204 (emphasis
17   added).

18   (c)   While Mattel is correct that the fourth element of a claim for intentional
19   interference with contractual relations is sometimes phrased "breach or disruption,"
20   it is quite apparent that Mattel has not brought this claim on the basis of a purported
21   disruption, but rather a purported actual breach.  Indeed, in denying MGA motion's
22   for summary judgment on this claim, the Court noted that "as set forth above, Mattel
23   has also raised triable issues of fact regarding its claim for breach of contract, the
24   fourth element."  May 21, 2008 Order at 9.  Put simply, Mattel is not contending
25   Bryant took a leave of absence – he left.  The relationship was not "disrupted," it was
26   terminated.  Thus, Mattel will not succeed in its claim unless it shows a breach. <u>See</u>
27   <u>Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc.</u>, 7 F.3d 1434, 1442 (9th
28   Cir. 1993) ("To recover for intentional interference with a contractual relationship,

21

Summit must show '(1) that [it] had a valid and existing contract, (2) that [Victor] had knowledge of the contract and intended to induce its breach, (3) <u>that the contract was in fact breached by [ZMTW]</u>, (4) that the breach was caused by [Victor's] unjustified and wrongful conduct, and (5) that [Summit] has suffered damage.'") (emphasis added); <u>see also</u> <u>Anlin Indus., Inc. v. Burgess</u>, 2006 WL 2308476, at *3 (E.D. Cal. Aug. 9, 2006) ("To state a cause of action for interference with contract under California law, a plaintiff must allege (1) a valid contract between the plaintiff and a third party; (2) that the defendant had knowledge of this contract and intended to induce its breach; (3)<u> that the contract was breached</u>; (4) that the breach was caused by the defendant's wrongful and unjustified conduct; and (5) that the plaintiff suffered damage.") (emphasis added); <u>Farmers Ins. Exchange v. State of California</u>, 175 Cal. App. 3d 494, 506 (1985) ("The elements of this tort [for intentional interference with contract] include: 1) The existence of a valid contract; 2) knowledge of the contract on the part of defendant and intent to induce its breach; 3) <u>breach of the contract by the third party</u>; 4) proximate cause; 5) damages.") (emphasis added).

(d)     Although Mattel's objection relies on the Court's summary judgment findings, the objection misinterprets the Court's ruling, as Mattel had not moved for summary judgment on its claim for intentional interference with contract.  Rather, for purposes of summary judgment, the Court made certain statements in dicta.  The Court did not grant summary judgment to Mattel on this issue, nor could it have done so as Mattel did not seek relief on this issue and neither party briefed the issue of whether Mattel had been harmed as a matter of law.

(e)     As explained above in response to Mattel's objection to Question 2(c), Mattel's claim is quite plainly based on Bryant's departure from Mattel and arrival at MGA.  Thus, Mattel's objection that the MGA Parties' Verdict Form "improperly limits" the conduct at issue is meritless.  Indeed, Mattel does not identify any other conduct that could be added.  As explained above in response to Mattel's objection

22

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

1  to Question 2(d), the Court's discussion in its April 25 Order on summary judgment
2  is not applicable here, because Mattel did not move for summary judgment on this
3  claim nor was it granted summary judgment on this claim.

4      (f)     As explained above in response to Mattel's objection to Question 2(c),
5  Mattel's claim is quite plainly based on Bryant's departure from Mattel and arrival at
6  MGA.   Thus, Mattel's objection that the MGA Parties' Verdict Form "improperly
7  limits" the conduct at issue is meritless.

8      Mattel's objection ignores that there can be no intent to interfere where the
9  defendant knows or believes its agreement with a third party will not infringe the
10 rights of the plaintiff. See 1-800 Contacts, Inc., 107 Cal. App. 4th at 586. "The
11 required intent is shown if the defendant knows that the interference is certain or
12 substantially certain to occur as a result of his action." Tuchscher Dev. Enters., Inc.
13 v. San Diego Unified Port Dist., 106 Cal. App. 4th 1219, 1239 (2003) (emphasis
14 added, internal quotations and citations omitted).

15
16
17
18
19
20
21
22
23
24
25
26
27
28

**QUESTION NO. 3:**

**Conversion**

a) Has Mattel proven by a preponderance of the evidence that, under its contract with Carter Bryant, it owns any of Mr. Bryant's Bratz drawings?

☐ YES

or

☐ NO

(If NO, please proceed to QUESTION NO. 4)

b) Has Mattel proven by a preponderance of the evidence that either MGA or Isaac Larian intentionally prevented Mattel from having access to any of Carter Bryant's drawings, or destroyed those drawings?

As to MGA:

☐ YES

or

☐ NO

As to Isaac Larian:

☐ YES

or

☐ NO

(If NO to both, please proceed to QUESTION NO. 4)

c) Has Mattel proven by a preponderance of the evidence that it suffered any harm as a result of any of the above conduct?

☐ YES

or

☐ NO

24

**QUESTION NO. 3** *(continued)*:

d)  Has Mattel proven by a preponderance of the evidence that either MGA or

Isaac Larian's conduct was a substantial factor in any harm suffered by Mattel?

As to MGA:

☐  YES

or

☐  NO

As to Isaac Larian:

☐  YES

or

☐  NO

25

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

## Mattel's Objections

All of defendants' proposed questions regarding Mattel's conversion claim are erroneous and misleading to the extent they omit reference to MGA (HK). Mattel is pursuing a conversion claim against MGA, Isaac Larian and MGA (HK). *See* Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and Counterclaims ("Mattel's Counterclaims"), at 72 (conversion claim "Against All Counterdefendants"); *see also* Final Pre-Trial Conference Order, at 11.

Mattel objects to defendants' specific proposed questions as follows:

(a) This proposed instruction is vague, ambiguous and confusing as written. To the extent the Court is inclined to ask the jury to make specific findings regarding Mattel's conversion claim (which Mattel does not think is necessary), the question should simply ask whether Mattel has proved it owns tangible Bratz-related works. The inclusion of the phrase "under its contract with Carter Bryant" is unnecessary and makes the proposed question confusing to the extent it suggests that the jury must make some sort of finding regarding Mattel's contract with Bryant. As set forth above, the Court has already ruled as a matter of law that Mattel owns any Bratz-related works that Bryant created while employed with Mattel. *See* April 25, 2008 Order, at 4-5; June 7, 2008 Final Pre-Trial Conference Order, at 4.

While defendants' proposed question is improper, it is worth noting that defendants refer to Mr. Bryant's works as "Bratz drawings" in it. Defendants should not be heard to object when Mattel does the same in its proposed verdict forms.

(b) This proposed question is erroneous as a matter of law and therefore misleading and prejudicial to Mattel. Defendants' proposed question wrongly states that Mattel must prove that defendants "intentionally prevented Mattel from having access to" the tangible items in question, when it is sufficient for Mattel to prove that defendants either intentionally took possession of the items or prevented access to them. *See* CACI No. 2100.

26

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

1     (c) This proposed question is vague and ambiguous in its reference to "any of

2 the above conduct."

3     (d) This proposed question is duplicative and unnecessary. There is no need

4 for the jury to make a separate finding that defendants were a "substantial factor" in

5 causing harm, when that is implicit in any finding of harm. Defendants' proposed

6 questions should be rejected.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

**MGA Parties' Response**

Mattel has presented no evidence which could conceivably support a claim against MGA (HK) and thus the MGA Parties are assuming that this claim will not reach the jury.  Should Mattel's claim against MGA (HK) be presented to the jury, MGA (HK) can be easily added to this Verdict Form.

(a)    Per the Court's ruling on the MGA Parties' Motion for Partial Summary Judgment, Mattel's conversion claim is limited to tangible property, and may not be applied to ideas or concepts.  <u>See</u> April 25, 2008 MSJ Order at 3.  Mattel has not identified any non-discarded tangible property that should be included beyond the drawings which it purports to own by virtue of its contract with Bryant.

(b)    Mattel's suggestion that the MGA Parties' Verdict Form must separate "taking possession" from "preventing access" or "destroying" is simply a request to make the question longer and more complicated.  As Mattel has observed in its objections, due to the nature of Mattel's claims, the Verdict Form in this case is already necessarily extensive.  There is no reason to make it longer.  Indeed, the model instruction Mattel cites states that the party proposing the instruction should "[insert <u>one or more</u> of the following:] took possession of the [...] for a significant period of time; [<u>or</u>] prevented [...] from having access to the [...] for a significant period of time; [<u>or</u>] destroyed the [...]."  CACI No. 2100 (emphasis added).  Mattel's suggested phrase adds nothing to the question and is not required.

(c)    The MGA Parties respectfully suggest that their reference to "any of the above conduct" is a clear reference to the conduct referenced in the previous subparts of Question 3 and will be so understood by the jury.

(d)    Whether or not defendant's conduct was a substantial factor in a plaintiff's harm is a well established element of a claim for conversion.  <u>See</u> CACI No. 2100.

28

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

**QUESTION NO. 4:**

**<u>Aiding and Abetting Breach of Fiduciary Duty Other Than to Maintain the Confidentiality of Information Provided to Him by Mattel</u>**

a) Has Mattel proven by a preponderance of the evidence that Carter Bryant expressly agreed to assume a fiduciary duty to Mattel <u>other than</u> to maintain the confidentiality of information provided to him by Mattel?

☐ YES

or

☐ NO

(If NO, please proceed to QUESTION NO. 5)

b) Has Mattel proven by a preponderance of the evidence that Carter Bryant breached the fiduciary duty that you found in QUESTION 4(a)?

☐ YES

or

☐ NO

(If NO, please proceed to QUESTION NO. 5)

c) Has Mattel proven by a preponderance of the evidence that Mattel suffered any harm while Carter Bryant was employed at Mattel as a result of the breach of the fiduciary duty that you found in QUESTION NO. 4(b)?

☐ YES

or

☐ NO

(If NO, please proceed to QUESTION NO. 5)

29

**QUESTION NO. 4 (*continued*):**

d)  Has Mattel proven by a preponderance of the evidence that either MGA or Isaac Larian was aware of Carter Bryant's breach of the fiduciary duty you found in QUESTION NO. 4(b)?

As to MGA:

☐  YES

or

☐  NO

As to Isaac Larian:

☐  YES

or

☐  NO

(If NO to both, please proceed to QUESTION NO. 5)

e)  Has Mattel proven by a preponderance of the evidence that either MGA or Isaac Larian made a conscious decision to participate in wrongful activity designed to assist Carter Bryant's breach of the fiduciary duty to Mattel that you found in QUESTION NO. 4(b)?

As to MGA:

☐  YES

or

☐  NO

As to Isaac Larian:

☐  YES

or

☐  NO

**Mattel's Objections**

Mattel objects to the title of this question as argumentative and misleading, and because it misstates the Court's rulings regarding Bryant's fiduciary duty to Mattel. The Court ruled as a matter of law that Bryant owed a fiduciary duty to Mattel with respect to "Mattel's confidential information," which would include any Bratz-related materials provided by Bryant to defendants that Mattel proves that it owns. *See* May 21, 2008 Order re Motion for Reconsideration, at 4 & n.2. Accordingly, Bryant's fiduciary duty already established as a matter of law is not limited to "Information Provided to [Bryant] by Mattel," as defendants misleadingly suggest. The title is also vague and ambiguous to the extent it refers to "Him" instead of Carter Bryant.

Further, defendants' proposed form regarding Mattel's claim for aiding and abetting breach of fiduciary duty (Question Nos. 4 and 5) is unintelligible and confusing. Defendants attempt to artificially separate this claim into two parts: "Breach of Fiduciary Duty Other Than to Maintain the Confidentiality of Information Provided to Him by Mattel" and "Breach of Fiduciary Duty to Maintain the Confidentiality of Information Provided to Him by Mattel." The proposed form as written is convoluted, and the jury is sure to be confused by defendants' artificial separation. Mattel's claim is that defendants aided and abetted Bryant's breaches of fiduciary duty, whatever the jury finds those breaches to be based on the evidence admitted at trial. It is improper and prejudicial to Mattel for defendants to attempt to break down Mattel's claim in this manner.

Mattel further objects to defendants' specific proposed questions as follows:

(a) This proposed question is unintelligible and confusing to the extent it (like the title of this proposed form) references a "fiduciary duty to Mattel other than to maintain the confidentiality of information provided to him by Mattel." Mattel's claim is that defendants aided and abetted Bryant's breaches of fiduciary duty, whatever the jury finds those breaches to be based on the evidence admitted at trial.

31

1  It is improper and prejudicial to Mattel for defendants to attempt to break down

2  Mattel's claim in this artificial manner.

3      This proposed question also misstates the Court's rulings regarding Bryant's

4  fiduciary duty to Mattel. The Court ruled as a matter of law that Bryant owed a

5  fiduciary duty to Mattel with respect to "Mattel's confidential information," which

6  would include any Bratz-related materials provided by Bryant to defendants that

7  Mattel proves that it owns. *See* May 21, 2008 Order re Motion for Reconsideration,

8  at 4 & n.2. Accordingly, Bryant's fiduciary duty already established as a matter of

9  law is not limited to "Information Provided to [Bryant] by Mattel," as defendants

10  misleadingly suggest.

11     Finally, defendants' question is also erroneous to the extent it purports to

12  inform the jury that Mattel must prove that Bryant "expressly agreed" to assume a

13  fiduciary duty to Mattel. That is not the law. *See, e.g.*, *Michelson v. Hamada*, 29 Cal.

14  App. 4th 1566, 1581 (1991) (fiduciary relationships arise "whenever trust and

15  confidence is reposed by one person in the integrity of another"); *Carpenter v.*

16  *United States*, 484 U.S. 19, 27 (1987) (at common law, "even in the absence of a

17  written contract, an employee has a fiduciary obligation to protect confidential

18  information obtained during the course of his employment). In any case, the Court

19  has already found that Mr. Bryant did so agree. There is no reason to ask the jury to

20  make such a finding again.

21     (c) The proposed question misstates the law and erroneously states that Mattel

22  must prove that it suffered harm "while Carter Bryant was employed at Mattel." That

23  is not supported by law. Mattel need only prove that it was harmed by Bryant's

24  breach of fiduciary duty. *See, e.g.*, CACI No. 4102. Mattel is entitled to recover

25  damages for all harm caused by defendants' wrongful conduct, including harm to

26  Mattel after Bryant left Mattel. *See Cal. Civ. Code* § 3333 ("For the breach of an

27  obligation not arising from contract, the measure of damages . . . is the amount which

28  will compensate *for all the detriment proximately caused thereby, whether it could*

32

1  *have been anticipated or not*."); *see also County of San Bernardino v. Walsh*, 158

2  Cal. App. 4th 533, 543 (2007) ("Disgorgement of profits is particularly applicable in

3  cases dealing with breach of a fiduciary duty"; "Active participants in the breach of

4  fiduciary duty by another are accountable for all advantages they gained thereby and

5  are liable to the beneficiary of the duty").

6       (d) The jury instructions set forth the elements of Mattel's claims. There is no

7  reason to include each and every element of a claim in the verdict form as well.

8  Moreover, defendants' phrasing misstates the legal elements of Mattel's claim.

9       (e) This proposed question is erroneous as a matter of law and therefore

10  misleading and prejudicial to Mattel. Contrary to defendants' proposed form, Mattel

11  is not required to prove that MGA and/or Larian "made a conscious decision to

12  participate in wrongful activity designed to assist Carter Bryant's breach of []

13  fiduciary duty." *See Berg & Berg Enter. LLC v. Sherwood Partners, Inc.*, 131 Cal.

14  App. 4th 802, 823 n.10 (2005) (finding aiding and abetting does not require that a

15  defendant agree to join the wrongful conduct). As set forth in Mattel's proposed jury

16  instructions, MGA and/or Larian are liable for aiding and abetting Bryant's breaches

17  of duty if they knowingly provided him substantial assistance in so acting. *See*

18  *Neilson v. Union Bank of Calif.*, 290 F. Supp. 2d 1101, 1119 (C.D. Cal. 2003).

19  Indeed, even ordinary business transactions can constitute substantial assistance.

20  *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145 (2005) (finding that

21  ordinary business transactions by a bank were sufficient to constitute substantial

22  assistance).

23       Defendants' proposed questions should be rejected.

24

25

26

27

28

## MGA Parties' Response

The MGA Parties have separated Mattel's claim for aiding and abetting breach of fiduciary duty into two verdict forms because this is the easiest and most logical way in which to give Mattel the benefit of summary judgment rulings that were made in its favor without overstating those rulings.  In its May 21, 2008 Order, the Court stated that "[u]pon re-examination of the Inventions Agreement, however, although the Court can conclude that, as a matter of law, Carter Bryant agreed to undertake a fiduciary duty vis-à-vis Mattel's confidential information, the Court cannot make the same conclusion – as a matter of law – regarding whether the fiduciary duty extends beyond Mattel's confidential information."  May 21, 2008 Order at 4.  This decision by the Court created, in essence, two different analyses for the jury to undertake – one regarding the established duty and one regarding other, un-established duties.  In Question 4, the MGA Parties ask the jury to address any fiduciary duty extends beyond Mattel's confidential information.  In Question 5, the MGA Parties ask the jury to address the fiduciary duty with respect to Mattel's confidential information.  The MGA Parties' Jury Instructions direct the jury to assume the duty exists on the latter issue but not the former.

The Court's Order provides that Bryant had a fiduciary duty to "maintain the confidentiality" of "Mattel's confidential information" – its "Proprietary Information" and "Trade Secrets" – as discussed in Paragraph 1(a) of the Inventions Agreement.  Id. at 3-4.  Mattel's objection that this includes something beyond confidential information provided by Mattel is not supported by the Order.  The Court only observes in a footnote that it cannot conclude that Bryant breached his duty as a matter of law because it cannot conclude as a matter of law that the materials provided by Bryant to MGA were Mattel's property.  Id. at 4 n.2.

The MGA Parties have titled the Forms appropriately given the distinction between them.  Any confusion arising out of the MGA Parties' use of the pronoun

34

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

1  "him" (and the MGA Parties find the likelihood of such confusion low) is quickly
2  remedied in the questions themselves, which refer explicitly to Carter Bryant.

3      (a)    The MGA Parties' have laid out their response to Mattel's first two
4  points above.  As for Mattel's third point, Mattel is mistaken in continuing to argue
5  that Bryant could assume a fiduciary duty without expressly agreeing to it.  As the
6  Court explained in its summary judgment Orders, a fiduciary duty only arise out of a
7  contract when a party "voluntarily accepts or assumes to accept" the duty.  May 21,
8  2008 Order at 3, citing April 25, 2008 Order and City Solutions, Inc. v. Clear
9  Channel Communications, Inc., 201 F. Supp. 2d 1048, 1050-51 (N.D. Cal. 2002).

10     (c)    Mattel is mistaken in stating that harm outside of the period of Bryant's
11  employment is relevant.   The relevant time period is the term of Bryant's
12  employment.   Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966)
13  (remanding to assess damage to plaintiff book publisher for the costs incurred to
14  replace personnel recruited by president and competitor using confidential
15  information in breach of president's fiduciary duty); GAB Business Services, Inc. v.
16  Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000) (damages
17  for breach of fiduciary duty were expenses incurred to recruit new employees);
18  Charles T. Powner, Inc. v. Smith, 91 Cal. App. 101 (1928) (damages were profits on
19  directly competitive sales resulting from use of employer's time and facilities);
20  Sumner v. Nevin, 4 Cal. App. 347, 350 (1906) (damages were commissions received
21  while still employed); see also Design Strategies v. Davis, 384 F. Supp. 649
22  (S.D.N.Y. 2005) (damages were amount of salary earned during time employee was
23  disloyal, and not the profits from a contract that evidence showed employer would
24  not have been awarded); Frye-Tech, Inc. v. Harris, 46 F. Supp. 2d 1144 (D. Kan.
25  1999) (awarding damages for value of resources including employee time used to
26  develop competing products).

27     (d)    Again, Mattel fundamentally misunderstands the purpose of a special
28  verdict form.  Fed. R. Civ. P. 49(a)(1), requires that the jury return, "a special verdict

35

1   in the form of a special written finding <u>on each issue of fact</u>." (emphasis added).  The

2   purpose of a special verdict is to concentrate the jury on its fact-finding role.  <u>See</u>

3   <u>Zhang v. Am. Gem. Seafoods, Inc.</u>, 339 F.3d 1020, 1031 (9th Cir. 2003).

4         (e)     Mattel's objection is directly contrary to prevailing law.   Assuming a

5   duty existed, Mattel must prove the MGA Parties' (1) "substantial assistance or

6   encouragement in accomplishing the breach", <u>and</u> (2) "actual knowledge" of the

7   specific wrong they substantially assisted.   <u>MJT Sec., LLC v. Toronto-Dominion</u>

8   <u>Bank</u>, 2007 WL 1725421, at **7-8  (N.D. Cal. June 14, 2007).  The suggestion that

9   any action, absent some wrong amounts to aiding and abetting would have the effect

10  of making any company that hired a new employee strictly liable for the employee's

11  breach of fiduciary duty.   Mattel's objection glosses over the intent element by

12  seeking to distinguish its aiding and abetting claim from one for conspiracy, but its

13  own case, <u>Berg & Berg Enters., LLC v. Sherwood Partners, Inc.</u>, notes that while

14  "aiding and abetting may not require a defendant to agree to join the wrongful

15  conduct, <u>it necessarily requires a defendant to reach a conscious decision to</u>

16  <u>participate in tortious activity for the purpose of assisting another in performing a</u>

17  <u>wrongful act</u>."  131 Cal. App. 4th 802, 823 n.10 (2005) (emphasis added).

18

19

20

21

22

23

24

25

26

27

28

**QUESTION NO. 5:**

**Aiding and Abetting Breach of Fiduciary Duty to Maintain the Confidentiality of Information Provided to Him by Mattel**

a) Has Mattel proven by a preponderance of the evidence that Carter Bryant expressly agreed to assume a fiduciary duty to Mattel to maintain the confidentiality of information provided to him by Mattel?

☐ YES

or

☐ NO

(If NO, please proceed to QUESTION NO. 6)

b) Has Mattel proven by a preponderance of the evidence that Carter Bryant breached his fiduciary duty to maintain the confidentiality of information provided to him by Mattel?

☐ YES

or

☐ NO

(If NO, please proceed to QUESTION NO. 6)

c) Has Mattel proven by a preponderance of the evidence that Mattel suffered any harm while Carter Bryant was employed at Mattel as a result of the breach of the fiduciary duty that you found in QUESTION NO. 5(b)?

☐ YES

or

☐ NO

(If NO, please proceed to QUESTION NO. 6)

**QUESTION NO. 5 (*continued*):**

d) Has Mattel proven by a preponderance of the evidence that either MGA or Isaac Larian was aware of Carter Bryant's breach of the fiduciary duty you found in QUESTION NO. 5(b)?

As to MGA:

      ☐ YES

    or

      ☐ NO

As to Isaac Larian:

      ☐ YES

    or

      ☐ NO

      (If NO to both, please proceed to QUESTION NO. 6)

e) Has Mattel proven by a preponderance of the evidence that either MGA or Isaac Larian made a conscious decision to participate in wrongful activity designed to assist Carter Bryant's breach of the fiduciary duty to Mattel that you found in QUESTION NO. 5(b)?

As to MGA:

      ☐ YES

    or

      ☐ NO

As to Isaac Larian:

      ☐ YES

    or

      ☐ NO

**Mattel's Objections**

Mattel objects to the title of this question as argumentative and misleading, and because it misstates the Court's rulings regarding Bryant's fiduciary duty to Mattel. The Court ruled as a matter of law that Bryant owed a fiduciary duty to Mattel with respect to "Mattel's confidential information," which would include any Bratz-related materials provided by Bryant to defendants that Mattel proves that it owns. *See* May 21, 2008 Order re Motion for Reconsideration, at 4 & n.2. Accordingly, Bryant's fiduciary duty already established as a matter of law is not limited to "Information Provided to [Bryant] by Mattel," as defendants misleadingly suggest. The title is also vague and ambiguous to the extent it refers to "Him" instead of Carter Bryant.

Further, defendants' proposed form regarding Mattel's claim for aiding and abetting breach of fiduciary duty (Question Nos. 4 and 5) is unintelligible and confusing. Defendants attempt to artificially separate this claim into two parts: "Breach of Fiduciary Duty Other Than to Maintain the Confidentiality of Information Provided to Him by Mattel" and "Breach of Fiduciary Duty to Maintain the Confidentiality of Information Provided to Him by Mattel." The proposed form as written is convoluted, and the jury is sure to be confused by defendants' artificial separation. Mattel's claim is that defendants aided and abetted Bryant's breaches of fiduciary duty, whatever the jury finds those breaches to be based on the evidence admitted at trial. It is improper and prejudicial to Mattel for defendants to attempt to break down Mattel's claim in this manner.

Mattel further objects to defendants' specific proposed questions as follows:

(a) This proposed instruction is contrary to the Court's April 25, 2008 Order. The Court has already found as a matter of law that Bryant owed a fiduciary duty to Mattel with respect to Mattel's confidential information. *See* April 25, 2008 Order, at 5-6; May 21, 2008 Order, at 4. Hence, the jury need not make such a finding.

39

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

1    In any event, this proposed question is unintelligible and confusing to the

2 extent it (like the title of this proposed form) references a "fiduciary duty to Mattel to

3 maintain the confidentiality of information provided to him by Mattel." Mattel's

4 claim is that defendants aided and abetted Bryant's breaches of fiduciary duty,

5 whatever the jury finds those breaches to be based on the evidence admitted at trial.

6 It is improper and prejudicial to Mattel for defendants to attempt to break down

7 Mattel's claim in this artificial manner.

8    This proposed question also misstates the Court's rulings regarding Bryant's

9 fiduciary duty to Mattel. The Court ruled as a matter of law that Bryant owed a

10 fiduciary duty to Mattel with respect to "Mattel's confidential information," which

11 would include any Bratz-related materials provided by Bryant to defendants that

12 Mattel proves that it owns. *See* May 21, 2008 Order re Motion for Reconsideration,

13 at 4 & n.2. Accordingly, Bryant's fiduciary duty already established as a matter of

14 law is not limited to "Information Provided to [Bryant] by Mattel," as defendants

15 misleadingly suggest.

16    Finally, defendants' question is also erroneous to the extent it purports to

17 inform the jury that Mattel must prove that Bryant "expressly agreed" to assume a

18 fiduciary duty to Mattel. That is not the law. *See, e.g.*, *Michelson v. Hamada*, 29 Cal.

19 App. 4th 1566, 1581 (1991) (fiduciary relationships arise "whenever trust and

20 confidence is reposed by one person in the integrity of another"); *Carpenter v.*

21 *United States*, 484 U.S. 19, 27 (1987) (at common law, "even in the absence of a

22 written contract, an employee has a fiduciary obligation to protect confidential

23 information obtained during the course of his employment). In any case, the Court

24 has already found that Mr. Bryant did so agree. There is no reason to ask the jury to

25 make such a finding again.

26    (b) This proposed question misstates the Court's rulings regarding Bryant's

27 fiduciary duty to Mattel established as a matter of law. The Court ruled that Bryant

28 owed a fiduciary duty to Mattel with respect to "Mattel's confidential information,"

40

1   which would include any Bratz-related materials provided by Bryant to defendants
2   that Mattel proves that it owns. *See* May 21, 2008 Order re Motion for
3   Reconsideration, at 4 & n.2. Accordingly, Bryant's fiduciary duty already established
4   as a matter of law is not limited to "Information Provided to [Bryant] by Mattel," as
5   defendants misleadingly suggest.

6       (c) The proposed question misstates the law and erroneously states that Mattel
7   must prove that it suffered harm "while Carter Bryant was employed at Mattel." That
8   is not supported by law. Mattel need only prove that it was harmed by Bryant's
9   breach of fiduciary duty. *See, e.g.*, CACI No. 4102. Mattel is entitled to recover
10  damages for all harm caused by defendants' wrongful conduct, including harm to
11  Mattel after Bryant left Mattel. *See Cal. Civ. Code* § 3333 ("For the breach of an
12  obligation not arising from contract, the measure of damages . . . is the amount which
13  will compensate *for all the detriment proximately caused thereby, whether it could*
14  *have been anticipated or not*."); *see also County of San Bernardino v. Walsh*, 158
15  Cal. App. 4th 533, 543 (2007) ("Disgorgement of profits is particularly applicable in
16  cases dealing with breach of a fiduciary duty"; "Active participants in the breach of
17  fiduciary duty by another are accountable for all advantages they gained thereby and
18  are liable to the beneficiary of the duty").

19      (d) The jury instructions set forth the elements of Mattel's claims. There is no
20  reason to include each and every element of a claim in the verdict form as well.
21  Moreover, defendants' phrasing misstates the legal elements of Mattel's claim.

22      (e) This proposed question is erroneous as a matter of law and therefore
23  misleading and prejudicial to Mattel. Contrary to defendants' proposed form, Mattel
24  is not required to prove that MGA and/or Larian "made a conscious decision to
25  participate in wrongful activity designed to assist Carter Bryant's breach of []
26  fiduciary duty." *See Berg & Berg Enter. LLC v. Sherwood Partners, Inc.*, 131 Cal.
27  App. 4th 802, 823 n.10 (2005) (finding aiding and abetting does not require that a
28  defendant agree to join the wrongful conduct). As set forth in Mattel's proposed jury

41

1   instructions, MGA and/or Larian are liable for aiding and abetting Bryant's breaches

2   of duty if they knowingly provided him substantial assistance in so acting. *See*

3   *Neilson v. Union Bank of Calif.*, 290 F. Supp. 2d 1101, 1119 (C.D. Cal. 2003).

4   Indeed, even ordinary business transactions can constitute substantial assistance.

5   *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145 (2005) (finding that

6   ordinary business transactions by a bank were sufficient to constitute substantial

7   assistance).

8          Defendants' proposed questions should be rejected.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MGA Parties' Response

The MGA Parties have separated Mattel's claim for aiding and abetting breach of fiduciary duty into two verdict forms because this is the easiest and most logical way in which to give Mattel the benefit of summary judgment rulings that were made in its favor without overstating those rulings. In its May 21, 2008 Order, the Court stated that "[u]pon re-examination of the Inventions Agreement, however, although the Court can conclude that, as a matter of law, Carter Bryant agreed to undertake a fiduciary duty vis-à-vis Mattel's confidential information, the Court cannot make the same conclusion – as a matter of law – regarding whether the fiduciary duty extends beyond Mattel's confidential information." May 21, 2008 Order at 4. This decision by the Court created, in essence, two different analyses for the jury to undertake – one regarding the established duty and one regarding other, un-established duties. In Question 4, the MGA Parties ask the jury to address any fiduciary duty extends beyond Mattel's confidential information. In Question 5, the MGA Parties ask the jury to address the fiduciary duty with respect to Mattel's confidential information. The MGA Parties' Jury Instructions direct the jury to assume the duty exists on the latter issue but not the former.

The Court's Order provides that Bryant had a fiduciary duty to "maintain the confidentiality" of "Mattel's confidential information" – its "Proprietary Information" and "Trade Secrets" – as discussed in Paragraph 1(a) of the Inventions Agreement. Id. at 3-4. Mattel's objection that this includes something beyond confidential information provided by Mattel is not supported by the Order. The Court only observes in a footnote that it cannot conclude that Bryant breached his duty as a matter of law because it cannot conclude as a matter of law that the materials provided by Bryant to MGA were Mattel's property. Id. at 4 n.2.

The MGA Parties have titled the Forms appropriately given the distinction between them. Any confusion arising out of the MGA Parties' use of the pronoun

43

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

1  "him" (and the MGA Parties find the likelihood of such confusion low) is quickly

2  remedied in the questions themselves, which refer explicitly to Carter Bryant.

3      (a)    The MGA Parties' have laid out their response to Mattel's first two

4  points above. The jury instructions direct the jury to assume this element has been

5  made out. As for Mattel's third point, Mattel is mistaken in continuing to argue that

6  Bryant could assume a fiduciary duty without expressly agreeing to it. As the Court

7  explained in its summary judgment Orders, a fiduciary duty only arise out of a

8  contract when a party "voluntarily accepts or assumes to accept" the duty. May 21,

9  2008 Order at 3, citing April 25, 2008 Order and City Solutions, Inc. v. Clear

10 Channel Communications, Inc., 201 F. Supp. 2d 1048, 1050-51 (N.D. Cal. 2002).

11     (b)    As explained above, the Court's Order provides that Bryant had a

12 fiduciary duty to "maintain the confidentiality" of "Mattel's confidential

13 information" – its "Proprietary Information" and "Trade Secrets" – as discussed in

14 Paragraph 1(a) of the Inventions Agreement. May 21, 2008 Order at 3-4. Mattel's

15 objection that this includes something beyond confidential information provided by

16 Mattel is not supported by the Order. The Court only observes in a footnote that it

17 cannot conclude that Bryant breached his duty as a matter of law because it cannot

18 conclude as a matter of law that the materials provided by Bryant to MGA were

19 Mattel's property. Id. at 4 n.2.

20     (c)    Mattel is mistaken in stating that harm outside of the period of Bryant's

21 employment is relevant. The relevant time period is the term of Bryant's

22 employment. Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966)

23 (remanding to assess damage to plaintiff book publisher for the costs incurred to

24 replace personnel recruited by president and competitor using confidential

25 information in breach of president's fiduciary duty); GAB Business Services, Inc. v.

26 Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000) (damages

27 for breach of fiduciary duty were expenses incurred to recruit new employees);

28 Charles T. Powner, Inc. v. Smith, 91 Cal. App. 101 (1928) (damages were profits on

44

1  directly competitive sales resulting from use of employer's time and facilities);
2  Sumner v. Nevin, 4 Cal. App. 347, 350 (1906) (damages were commissions received
3  while still employed); see also Design Strategies v. Davis, 384 F. Supp. 649
4  (S.D.N.Y. 2005) (damages were amount of salary earned during time employee was
5  disloyal, and not the profits from a contract that evidence showed employer would
6  not have been awarded); Frye-Tech, Inc. v. Harris, 46 F. Supp. 2d 1144 (D. Kan.
7  1999) (awarding damages for value of resources including employee time used to
8  develop competing products).

9      (d)    Again, Mattel fundamentally misunderstands the purpose of a special
10  verdict form. Fed. R. Civ. P. 49(a)(1), requires that the jury return, "a special verdict
11  in the form of a special written finding on each issue of fact." (emphasis added). The
12  purpose of a special verdict is to concentrate the jury on its fact-finding role. See
13  Zhang v. Am. Gem. Seafoods, Inc., 339 F.3d 1020, 1031 (9th Cir. 2003).

14      (e)    Mattel's objection is directly contrary to prevailing law. Assuming a
15  duty existed, Mattel must prove the MGA Parties' (1) "substantial assistance or
16  encouragement in accomplishing the breach", and (2) "actual knowledge" of the
17  specific wrong they substantially assisted. MJT Sec., LLC v. Toronto-Dominion
18  Bank, 2007 WL 1725421, at **7-8 (N.D. Cal. June 14, 2007). The suggestion that
19  any action, absent some wrong amounts to aiding and abetting would have the effect
20  of making any company that hired a new employee strictly liable for the employee's
21  breach of fiduciary duty. Mattel's objection glosses over the intent element by
22  seeking to distinguish its aiding and abetting claim from one for conspiracy, but its
23  own case, Berg & Berg Enters., LLC v. Sherwood Partners, Inc., notes that while
24  "aiding and abetting may not require a defendant to agree to join the wrongful
25  conduct, it necessarily requires a defendant to reach a conscious decision to
26  participate in tortious activity for the purpose of assisting another in performing a
27  wrongful act." 131 Cal. App. 4th 802, 823 n.10 (2005) (emphasis added).

28

45

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

**QUESTION NO. 6:**

**Aiding and Abetting Breach of Duty of Loyalty Other Than Not Entering Into a Contract with Another Company While Employed at Mattel**

a) Has Mattel proven by a preponderance of the evidence that Carter Bryant expressly agreed to assume a duty of loyalty <u>other than</u> not entering into a contract with another company while employed at Mattel?

☐   YES

or

☐   NO

(If NO, please proceed to QUESTION NO. 7)

b) Has Mattel proven by a preponderance of the evidence that Carter Bryant breached the duty of loyalty that you found in QUESTION NO. 6(a)?

☐   YES

or

☐   NO

(If NO, please proceed to QUESTION NO. 7)

c) Has Mattel proven by a preponderance of the evidence that Mattel suffered any harm while Carter Bryant was employed at Mattel as a result of the breach of the duty of loyalty that you found in QUESTION NO. 6(b)?

☐   YES

or

☐   NO

(If NO, please proceed to QUESTION NO. 7)

d) Has Mattel proven by a preponderance of the evidence that either MGA or Isaac Larian was aware of Carter Bryant's breach of the duty of loyalty to Mattel?

As to MGA:

☐ YES

or

☐ NO

As to Isaac Larian:

☐ YES

or

☐ NO

(If NO to both, please proceed to QUESTION NO. 7)

e) Has Mattel proven by a preponderance of the evidence that either MGA or Isaac Larian made a conscious decision to participate in wrongful activity designed to assist Carter Bryant's breach of the duty of loyalty to Mattel?

As to MGA:

☐ YES

or

☐ NO

As to Isaac Larian:

☐ YES

or

☐ NO

47

1   **Mattel's Objections**

2        Mattel objects to the title of this question as argumentative and misleading,

3   and because it misstates the Court's rulings regarding Bryant's duty of loyalty. The

4   Court ruled as a matter of law that Bryant owed a duty of loyalty to Mattel and that

5   he breached that duty. *See* April 25, 2008 Order, at 5 (finding that "Bryant, like all

6   other California employees, owed a duty of loyalty to Mattel while employed there").

7   An employee's duty of loyalty is a general duty of undivided loyalty, which

8   precludes an employee from acting against his employer's best interests. *See* CACI

9   No. 4102. The Court did not purport to limit Bryant's duty of loyalty to some limited

10  duty to "not enter into a contract with another company while employed at Mattel,"

11  as defendants misleadingly suggest. The title is also vague and ambiguous to the

12  extent it does not refer to Carter Bryant.

13       Further, defendants' proposed form regarding Mattel's claim for aiding and

14  abetting breach of the duty of loyalty (Question Nos. 6 and 7) is unintelligible and

15  confusing. Defendants attempt to artificially separate this claim into two parts:

16  "Breach of Duty of Loyalty Other Than Not Entering Into a Contract with Another

17  Company While Employed at Mattel" and "Breach of Duty of Loyalty by Entering

18  Into a Contract with Another Company While Employed at Mattel." The proposed

19  form as written is convoluted, and the jury is sure to be confused by defendants'

20  artificial separation. As set forth above, an employee's duty of loyalty is a general

21  duty of undivided loyalty, which precludes an employee from acting against his

22  employer's best interests. Such a duty of loyalty is not appropriately broken down, as

23  defendants suggest, into some lesser duties not to do certain specific things (like

24  entering into a contract with a competitor). Mattel's claim is that defendants aided

25  and abetted Bryant's breaches of the duty of loyalty, which includes the specific

26  breaches that the Court has found as a matter of law (*see* April 25, 2008 Order, at 5-

27  6), as well as any additional breaches of the duty of loyalty that the jury finds based

28

48

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

1  on the evidence admitted at trial. It is improper and prejudicial for defendants to

2  attempt to break down Mattel's claim in this manner.

3       Finally, several of defendants' proposed questions regarding breach of the duty

4  of loyalty are confusing and unnecessary because the Court has already found that

5  Bryant did in fact breach his duty of loyalty to Mattel. *See* April 25, 2008 Order, at

6  5-6.

7       Mattel further objects to defendants' specific proposed questions as follows:

8       (a) This proposed question is contrary to the Court's April 25, 2008 Order and

9  therefore moot. The Court found as a matter of law that Bryant owed a duty of

10 loyalty to Mattel. *See* April 25, 2008 Order, at 5. Hence, the jury need not make such

11 a finding.

12      In any event, this proposed question is unintelligible and confusing to the

13 extent it (like the title of this proposed form) references a "duty of loyalty other than

14 not entering into a contract with another company." As recognized by the Court, an

15 employee's duty of loyalty is a general duty of undivided loyalty, which precludes an

16 employee from acting against his employer's best interests. *See* CACI No. 4102;

17 April 25, 2008 Order, at 5 (ruling that "Bryant, like all other California employees,

18 owed a duty of loyalty to Mattel while employed there"). Such a duty of loyalty is

19 not appropriately broken down, as defendants suggest, into some lesser duties not to

20 do certain specific things (like entering into a contract with a competitor). It is

21 improper and prejudicial for defendants to attempt to break down Mattel's claim in

22 this artificial manner.

23      This proposed question also misstates the Court's rulings regarding Bryant's

24 duty of loyalty to Mattel. The Court did not rule, as defendants suggest, that Bryant

25 only owed Mattel some lesser duty of loyalty to Mattel not to enter into a contract

26 with a competitor. *See* April 25, 2008 Order, at 5.

27      Finally, defendants' question is also erroneous as a matter of law because it

28 purports to inform the jury that Mattel must prove that Bryant "expressly agreed" to

49

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

1  assume a duty of loyalty to Mattel. An employee owes a duty of loyalty to his

2  employer as a matter of law. *See* April 25, 2008 Order, at 5; *see also Cal. Labor*

3  *Code* § 2863; CACI No. 4102.

4      (b) This proposed question is contrary to the Court's April 25, 2008 Order and

5  therefore moot. The Court found as a matter of law that Bryant owed a duty of

6  loyalty to Mattel and that he breached his duty of loyalty to Mattel. *See* April 25,

7  2008 Order, at 5. Hence, the jury need not make such a finding.

8      (c) The proposed question misstates the law and erroneously states that Mattel

9  must prove that it suffered harm "while Carter Bryant was employed at Mattel." That

10 is not supported by law. Mattel need only prove that it was harmed by Bryant's

11 breach of the duty of loyalty. *See, e.g.*, CACI No. 4102. Mattel is entitled to recover

12 damages for all harm caused by defendants' wrongful conduct, including harm to

13 Mattel after Bryant left Mattel. *See Cal. Civ. Code* § 3333 ("For the breach of an

14 obligation not arising from contract, the measure of damages . . . is the amount which

15 will compensate *for all the detriment proximately caused thereby, whether it could*

16 *have been anticipated or not*."); *see also County of San Bernardino v. Walsh*, 158

17 Cal. App. 4th 533, 543 (2007) ("Disgorgement of profits is particularly applicable in

18 cases dealing with breach of a fiduciary duty"; "Active participants in the breach of

19 fiduciary duty by another are accountable for all advantages they gained thereby and

20 are liable to the beneficiary of the duty").

21     (d) The jury instructions set forth the elements of Mattel's claims. There is no

22 reason to include each and every element of a claim in the verdict form as well.

23 Moreover, defendants' phrasing misstates the legal elements of Mattel's claim.

24     (e) This proposed question is erroneous as a matter of law. Mattel is not

25 required to prove that MGA and/or Larian "made a conscious decision to participate

26 in wrongful activity designed to assist Bryant in a breach of loyalty." *See Berg &*

27 *Berg Enter. LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, 823 n.10 (2005)

28 (finding aiding and abetting does not require that a defendant agree to join the

50

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

1  wrongful conduct). As set forth in Mattel's proposed jury instructions, MGA and/or

2  Larian are liable for aiding and abetting Bryant's breaches of duty if they knowingly

3  provided him substantial assistance in so acting. Indeed, even ordinary business

4  transactions can constitute substantial assistance. *Casey v. U.S. Bank Nat'l Ass'n*, 127

5  Cal. App. 4th 1138, 1145 (2005) (finding that ordinary business transactions by a

6  bank were sufficient to constitute substantial assistance).

7       Defendants' proposed questions should be rejected.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

51

## MGA Parties' Response

The MGA Parties have separated Mattel's claim for aiding and abetting breach of the duty of loyalty into two verdict forms because this is the easiest and most logical way in which to give Mattel the benefit of summary judgment rulings that were made in its favor without overstating those rulings. In its April 25, 2008 Order, recounted in the Final Pre-Trial Conference Order, the Court stated that "Carter Bryant owed Mattel a duty of loyalty and that Bryant 'breached this duty by entering into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products." Final Pre-Trial Conference Order at 4-5. This decision by the Court created, in essence, two different analyses for the jury to undertake – one regarding identified breach and one regarding other, unidentified breaches. In order to determine whether there were any other breaches, the jury must consider whether Bryant's duty extended beyond a duty not to enter into contracts with competitors to produce competing products. Thus, in Question 6, the MGA Parties ask the jury to address the scope of the duty of loyalty and any unidentified breaches. In Question 7, the MGA Parties ask the jury to address the breach already identified by the Court. The MGA Parties' Jury Instructions direct the jury to make the appropriate assumptions in this latter analysis.

The MGA Parties approach does not imply that an employee's loyalty should not be "undivided," as Mattel claims, but rather addresses the scope of that loyalty. Williston supports the position that employees of varying levels have different level of duty, i.e., an officer's duty is different than low level non-managerial employee. 19 Williston on Contracts § 54:26 (4th ed.). The scope of Bryant's duty would be limited to the nature/level of his employment, and would not be comparable to the duty of loyalty owed by, for example, a Chief Executive Officer.

The MGA Parties have titled the Forms appropriately given the distinction between them.

52

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

1    (a)    This question is not moot.  In order to establish breaches other than the

2  breach identified by the Court, the jury must first determine the scope of Bryant's

3  duty of loyalty.  This question asks the jury if it extends beyond the duty implied by

4  the identified breach.  The duty and breach that have already been identified are dealt

5  with in Question 7.

6    The MGA Parties' have laid out their response to Mattel's other points above.

7    (b)    This question in not moot.  The duty and breach that have already been

8  identified by the Court are dealt with in Question 7.  This question asks about <u>other</u>

9  breaches.

10    (c)    Mattel is mistaken in stating that harm outside of the period of Bryant's

11  employment is relevant.  The relevant time period is the term of Bryant's

12  employment.  <u>See</u> <u>Bancroft-Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 356-57 (1966)

13  (remanding to assess damage to plaintiff book publisher for the costs incurred to

14  replace personnel recruited by president and competitor using confidential

15  information in breach of president's fiduciary duty); <u>GAB Bus. Servs., Inc. v.</u>

16  <u>Lindsey & Newsom Claim Servs., Inc.</u>, 83 Cal. App. 4th 409, 426 (2000) (damages

17  for breach of fiduciary duty were expenses incurred to recruit new employees);

18  <u>Charles T. Powner, Inc. v. Smith</u>, 91 Cal. App. 101 (1928) (damages were profits on

19  directly competitive sales resulting from use of employer's time and facilities);

20  <u>Sumner v. Nevin</u>, 4 Cal. App. 347, 350 (1906) (damages were commissions received

21  while still employed); <u>see also</u> <u>Design Strategies v. Davis</u>, 384 F. Supp. 649

22  (S.D.N.Y. 2005) (damages were amount of salary earned during time employee was

23  disloyal, and not the profits from a contract that evidence showed employer would

24  not have been awarded); <u>Frye-Tech, Inc. v. Harris</u>, 46 F. Supp. 2d 1144 (D. Kan.

25  1999) (awarding damages for value of resources including employee time used to

26  develop competing products).    Courts consistently distinguish between harm

27  incurred while employee still employed and harm from later competition.  <u>See e.g.</u>,

28  <u>GAB Bus. Servs., Inc.</u>, 83 Cal. App. 4th at 426 (damages for breach of fiduciary duty

53

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

1   were expenses incurred to recruit new employees).   Moreover, "[p]roof of serious

2   employee misconduct causing injury to the employer must also be shown before

3   relief will generally be granted."   <u>Sci. Accessories Corp. v. Summagraphics Corp.</u>,

4   425 A. 2d 957, 965 (Del. 1980). Even an officer (which Bryant indisputably was not),

5   who has a far greater duty to a company, may engage in a competing business while

6   he remains an officer provided that he does not cripple or injure the business.  <u>See</u>

7   <u>Sequoia Vacuum Systems v. Stransky</u>, 229 Cal. App. 2d 281, 286 (1964) (citing

8   <u>Daniel Orifice Fitting Co. v. Whalen</u>, 198 Cal. App. 2d 791, 800 (1962) ("a party

9   may not enter into a competing enterprise which cripples or injures a business or

10  corporation <u>of which he remains an officer or director</u>") (emphasis added)).

11      (d)    Again, Mattel fundamentally misunderstands the purpose of a special

12  verdict form.  Fed. R. Civ. P. 49(a)(1), requires that the jury return, "a special verdict

13  in the form of a special written finding <u>on each issue of fact</u>." (emphasis added).  The

14  purpose of a special verdict is to concentrate the jury on its fact-finding role.  <u>See</u>

15  <u>Zhang v. Am. Gem. Seafoods, Inc.</u>, 339 F.3d 1020, 1031 (9th Cir. 2003).

16      (e)    Mattel's objection is directly contrary to prevailing law.  Assuming a

17  duty existed, Mattel must prove the MGA Parties' (1) "substantial assistance or

18  encouragement in accomplishing the breach", <u>and</u> (2) "actual knowledge" of the

19  specific wrong they substantially assisted.  <u>MJT Sec., LLC v. Toronto-Dominion</u>

20  <u>Bank</u>, 2007 WL 1725421, at **7-8  (N.D. Cal. June 14, 2007).  The suggestion that

21  any action, absent some wrong amounts to aiding and abetting would have the effect

22  of making any company that hired a new employee strictly liable for the employee's

23  breach of fiduciary duty.   Mattel's objection glosses over the intent element by

24  seeking to distinguish its aiding and abetting claim from one for conspiracy, but its

25  own case, <u>Berg & Berg Enters., LLC v. Sherwood Partners, Inc.</u>, notes that while

26  "aiding and abetting may not require a defendant to agree to join the wrongful

27  conduct, <u>it necessarily requires a defendant to reach a conscious decision to</u>

28

54

1  participate in tortious activity for the purpose of assisting another in performing a

2  wrongful act." 131 Cal. App. 4th 802, 823 n.10 (2005) (emphasis added).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**QUESTION NO. 7:**

**Aiding and Abetting Breach of Duty of Loyalty By Entering Into a Contract with Another Company While Employed at Mattel**

a) Has Mattel proven by a preponderance of the evidence that Carter Bryant expressly agreed to assume a duty of loyalty of not entering into a contract with another company while employed at Mattel?

☐  YES

or

☐  NO

(If NO, please proceed to end, and sign and date the verdict form)

b) Has Mattel proven by a preponderance of the evidence that Carter Bryant breached the duty of loyalty that you found in QUESTION NO. 7(a)?

☐  YES

or

☐  NO

(If NO, please proceed to end, and sign and date the verdict form)

c) Has Mattel proven by a preponderance of the evidence that Mattel suffered any harm while Carter Bryant was employed at Mattel as a result of the breach of the duty of loyalty that you found in QUESTION NO. 7(b)?

☐  YES

or

☐  NO

(If NO, please proceed to end, and sign and date the verdict form)

1       d)  Has Mattel proven by a preponderance of the evidence that either MGA or

2           Isaac Larian was aware of Carter Bryant's breach of the duty of loyalty to

3           Mattel?

4           As to MGA:

5               ☐ YES

6               or

7               ☐ NO

8           As to Isaac Larian:

9               ☐ YES

10              or

11              ☐ NO

12              (If NO to both, please proceed to end and sign and date the verdict form)

13

14      e)  Has Mattel proven by a preponderance of the evidence that either MGA or

15          Isaac Larian made a conscious decision to participate in wrongful activity

16          designed to assist Carter Bryant's breach of the duty of loyalty to Mattel?

17          As to MGA:

18              ☐ YES

19              or

20              ☐ NO

21          As to Isaac Larian:

22              ☐ YES

23              or

24              ☐ NO

25              (Please sign and date the verdict form)

26

27  _____          _____

28          Jury Foreperson                                      Date

1  **Mattel's Objections**

2        Mattel objects to the title of this question as argumentative and misleading,

3  and because it misstates the Court's rulings regarding Bryant's duty of loyalty. The

4  Court ruled as a matter of law that Bryant owed a duty of loyalty to Mattel and that

5  he breached that duty. *See* April 25, 2008 Order, at 5 (finding that "Bryant, like all

6  other California employees, owed a duty of loyalty to Mattel while employed there").

7  An employee's duty of loyalty is a general duty of undivided loyalty, which

8  precludes an employee from acting against his employer's best interests. *See* CACI

9  No. 4102. The Court did not purport to limit Bryant's duty of loyalty to some limited

10  duty to "not enter into a contract with another company while employed at Mattel,"

11  as defendants misleadingly suggest. The title is also vague and ambiguous to the

12  extent it does not refer to Carter Bryant.

13        Further, defendants' proposed form regarding Mattel's claim for aiding and

14  abetting breach of the duty of loyalty (Question Nos. 6 and 7) is unintelligible and

15  confusing. Defendants attempt to artificially separate this claim into two parts:

16  "Breach of Duty of Loyalty Other Than Not Entering Into a Contract with Another

17  Company While Employed at Mattel" and "Breach of Duty of Loyalty by Entering

18  Into a Contract with Another Company While Employed at Mattel." The proposed

19  form as written is convoluted, and the jury is sure to be confused by defendants'

20  artificial separation. As set forth above, an employee's duty of loyalty is a general

21  duty of undivided loyalty, which precludes an employee from acting against his

22  employer's best interests. Such a duty of loyalty is not appropriately broken down, as

23  defendants suggest, into some lesser duties not to do certain specific things (like

24  entering into a contract with a competitor). Mattel's claim is that defendants aided

25  and abetted Bryant's breaches of the duty of loyalty, which includes the specific

26  breaches that the Court has found as a matter of law (*see* April 25, 2008 Order, at 5-

27  6), as well as any additional breaches of the duty of loyalty that the jury finds based

28

58

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

1   on the evidence admitted at trial. It is improper and prejudicial for defendants to

2   attempt to break down Mattel's claim in this manner.

3         Finally, several of defendants' proposed questions regarding breach of the duty

4   of loyalty are confusing and unnecessary because the Court has already found that

5   Bryant did in fact breach his duty of loyalty to Mattel. *See* April 25, 2008 Order, at

6   5-6.

7         Mattel further objects to defendants' specific proposed questions as follows:

8         (a) This proposed question is contrary to the Court's April 25, 2008 Order and

9   therefore moot. The Court found as a matter of law that Bryant owed a duty of

10  loyalty to Mattel. *See* April 25, 2008 Order, at 5. Hence, the jury need not make such

11  a finding.

12        In any event, this proposed question is unintelligible and confusing to the

13  extent it (like the title of this proposed form) references a "duty of loyalty other than

14  not entering into a contract with another company." As recognized by the Court, an

15  employee's duty of loyalty is a general duty of undivided loyalty, which precludes an

16  employee from acting against his employer's best interests. *See* CACI No. 4102;

17  April 25, 2008 Order, at 5 (ruling that "Bryant, like all other California employees,

18  owed a duty of loyalty to Mattel while employed there"). Such a duty of loyalty is

19  not appropriately broken down, as defendants suggest, into some lesser duties not to

20  do certain specific things (like entering into a contract with a competitor). It is

21  improper and prejudicial for defendants to attempt to break down Mattel's claim in

22  this artificial manner.

23        This proposed question also misstates the Court's rulings regarding Bryant's

24  duty of loyalty to Mattel. The Court did not rule, as defendants suggest, that Bryant

25  only owed Mattel some lesser duty of loyalty to Mattel not to enter into a contract

26  with a competitor. *See* April 25, 2008 Order, at 5.

27        Finally, defendants' question is also erroneous as a matter of law because it

28  purports to inform the jury that Mattel must prove that Bryant "expressly agreed" to

59

1 assume a duty of loyalty to Mattel. An employee owes a duty of loyalty to his

2 employer as a matter of law. *See* April 25, 2008 Order, at 5; *see also Cal. Labor*

3 *Code*§ 2863; CACI No. 4102.

4       (b) This proposed question is contrary to the Court's April 25, 2008 Order and

5 therefore moot. The Court found as a matter of law that Bryant owed a duty of

6 loyalty to Mattel and that he breached his duty of loyalty to Mattel. *See* April 25,

7 2008 Order, at 5. Hence, the jury need not make such a finding.

8       (c) The proposed question misstates the law and erroneously states that Mattel

9 must prove that it suffered harm "while Carter Bryant was employed at Mattel." That

10 is not supported by law. Mattel need only prove that it was harmed by Bryant's

11 breach of the duty of loyalty. *See, e.g.*, CACI No. 4102. Mattel is entitled to recover

12 damages for all harm caused by defendants' wrongful conduct, including harm to

13 Mattel after Bryant left Mattel. *See Cal. Civ. Code* § 3333 ("For the breach of an

14 obligation not arising from contract, the measure of damages . . . is the amount which

15 will compensate *for all the detriment proximately caused thereby, whether it could*

16 *have been anticipated or not*."); *see also County of San Bernardino v. Walsh*, 158

17 Cal. App. 4th 533, 543 (2007) ("Disgorgement of profits is particularly applicable in

18 cases dealing with breach of a fiduciary duty"; "Active participants in the breach of

19 fiduciary duty by another are accountable for all advantages they gained thereby and

20 are liable to the beneficiary of the duty").

21       (d) The jury instructions set forth the elements of Mattel's claims. There is no

22 reason to include each and every element of a claim in the verdict form as well.

23 Moreover, defendants' phrasing misstates the legal elements of Mattel's claim.

24       (e) This proposed question is erroneous as a matter of law. Mattel is not

25 required to prove that MGA and/or Larian "made a conscious decision to participate

26 in wrongful activity designed to assist Bryant in a breach of loyalty." *See Berg &*

27 *Berg Enter. LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, 823 n.10 (2005)

28 (finding aiding and abetting does not require that a defendant agree to join the

60

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

1  wrongful conduct). As set forth in Mattel's proposed jury instructions, MGA and/or

2  Larian are liable for aiding and abetting Bryant's breaches of duty if they knowingly

3  provided him substantial assistance in so acting. Indeed, even ordinary business

4  transactions can constitute substantial assistance. *Casey v. U.S. Bank Nat'l Ass'n*, 127

5  Cal. App. 4th 1138, 1145 (2005) (finding that ordinary business transactions by a

6  bank were sufficient to constitute substantial assistance).

7        Defendants' proposed questions should be rejected.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MGA Parties' Response

The MGA Parties have separated Mattel's claim for aiding and abetting breach of the duty of loyalty into two verdict forms because this is the easiest and most logical way in which to give Mattel the benefit of summary judgment rulings that were made in its favor without overstating those rulings. In its April 25, 2008 Order, recounted in the Final Pre-Trial Conference Order, the Court stated that "Carter Bryant owed Mattel a duty of loyalty and that Bryant 'breached this duty by entering into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products." Final Pre-Trial Conference Order at 4-5. This decision by the Court created, in essence, two different analyses for the jury to undertake – one regarding identified breach and one regarding other, unidentified breaches. In order to determine whether there were any other breaches, the jury must consider whether Bryant's duty extended beyond a duty not to enter into contracts with competitors to produce competing products. Thus, in Question 6, the MGA Parties ask the jury to address the scope of the duty of loyalty and any unidentified breaches. In Question 7, the MGA Parties ask the jury to address the breach already identified by the Court. The MGA Parties' Jury Instructions direct the jury to make the appropriate assumptions in this latter analysis.

The MGA Parties approach does not imply that an employee's loyalty should not be "undivided," as Mattel claims, but rather addresses the scope of that loyalty. Williston supports the position that employees of varying levels have different level of duty, i.e., an officer's duty is different than low level non-managerial employee. 19 Williston on Contracts § 54:26 (4th ed.). The scope of Bryant's duty would be limited to the nature/level of his employment, and would not be comparable to the duty of loyalty owed by, for example, a Chief Executive Officer.

The MGA Parties have titled the Forms appropriately given the distinction between them.

62

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

1    (a)    The MGA Parties' Jury Instructions direct the jury to make the
2 appropriate assumptions with respect to this question.

3    The MGA Parties' have laid out their response to Mattel's other points above.

4    (b)    The MGA Parties' Jury Instructions direct the jury to make the
5 appropriate assumptions with respect to this question.

6    (c)    Mattel is mistaken in stating that harm outside of the period of Bryant's
7 employment is relevant.  The relevant time period is the term of Bryant's
8 employment.  See Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966)
9 (remanding to assess damage to plaintiff book publisher for the costs incurred to
10 replace personnel recruited by president and competitor using confidential
11 information in breach of president's fiduciary duty); GAB Bus. Servs., Inc. v.
12 Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000) (damages
13 for breach of fiduciary duty were expenses incurred to recruit new employees);
14 Charles T. Powner, Inc. v. Smith, 91 Cal. App. 101 (1928) (damages were profits on
15 directly competitive sales resulting from use of employer's time and facilities);
16 Sumner v. Nevin, 4 Cal. App. 347, 350 (1906) (damages were commissions received
17 while still employed); see also Design Strategies v. Davis, 384 F. Supp. 649
18 (S.D.N.Y. 2005) (damages were amount of salary earned during time employee was
19 disloyal, and not the profits from a contract that evidence showed employer would
20 not have been awarded); Frye-Tech, Inc. v. Harris, 46 F. Supp. 2d 1144 (D. Kan.
21 1999) (awarding damages for value of resources including employee time used to
22 develop competing products).   Courts consistently distinguish between harm
23 incurred while employee still employed and harm from later competition.  See e.g.,
24 GAB Bus. Servs., Inc., 83 Cal. App. 4th at 426 (damages for breach of fiduciary duty
25 were expenses incurred to recruit new employees).  Moreover, "[p]roof of serious
26 employee misconduct causing injury to the employer must also be shown before
27 relief will generally be granted."  Sci. Accessories Corp. v. Summagraphics Corp.,
28 425 A. 2d 957, 965 (Del. 1980). Even an officer (which Bryant indisputably was not),

63

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)

1   who has a far greater duty to a company, may engage in a competing business while

2   he remains an officer provided that he does not cripple or injure the business.  <u>See</u>

3   <u>Sequoia Vacuum Systems v. Stransky</u>, 229 Cal. App. 2d 281, 286 (1964) (citing

4   <u>Daniel Orifice Fitting Co. v. Whalen</u>, 198 Cal. App. 2d 791, 800 (1962) ("a party

5   may not enter into a competing enterprise which cripples or injures a business or

6   corporation <u>of which he remains an officer or director</u>") (emphasis added)).

7       (d)   Again, Mattel fundamentally misunderstands the purpose of a special

8   verdict form.  Fed. R. Civ. P. 49(a)(1), requires that the jury return, "a special verdict

9   in the form of a special written finding <u>on each issue of fact</u>." (emphasis added).  The

10  purpose of a special verdict is to concentrate the jury on its fact-finding role.  <u>See</u>

11  <u>Zhang v. Am. Gem. Seafoods, Inc.</u>, 339 F.3d 1020, 1031 (9th Cir. 2003).

12      (e)   Mattel's objection is directly contrary to prevailing law.  Assuming a

13  duty existed, Mattel must prove the MGA Parties' (1) "substantial assistance or

14  encouragement in accomplishing the breach", <u>and</u> (2) "actual knowledge" of the

15  specific wrong they substantially assisted.  <u>MJT Sec., LLC v. Toronto-Dominion</u>

16  <u>Bank</u>, 2007 WL 1725421, at **7-8  (N.D. Cal. June 14, 2007).  The suggestion that

17  any action, absent some wrong amounts to aiding and abetting would have the effect

18  of making any company that hired a new employee strictly liable for the employee's

19  breach of fiduciary duty.  Mattel's objection glosses over the intent element by

20  seeking to distinguish its aiding and abetting claim from one for conspiracy, but its

21  own case, <u>Berg & Berg Enters., LLC v. Sherwood Partners, Inc.</u>, notes that while

22  "aiding and abetting may not require a defendant to agree to join the wrongful

23  conduct, <u>it necessarily requires a defendant to reach a conscious decision to</u>

24  <u>participate in tortious activity for the purpose of assisting another in performing a</u>

25  <u>wrongful act</u>."  131 Cal. App. 4th 802, 823 n.10 (2005) (emphasis added).

26

27

28

1    DATED:  June 27, 2008

2                     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

3

4                         By:    _____/s/ Thomas J. Nolan_____
                                          Thomas J. Nolan
5                                    Attorneys for the MGA Parties

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

65

MGA Parties' Resp. to Mattel's Obj. to MGA Parties' Spec. Verdict Form – Case No. CV 04-9049 SGL (RNBx)