**Exhibit 1**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**Exhibit 2**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 90378)
2    (johnquinn@quinnemanuel.com)
    Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8           UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11  CARTER BRYANT, an individual,      CASE NO. CV 04-9049 SGL (RNBx)

12           Plaintiff,                Consolidated with
                                       Case No. CV 04-09059
13      vs.                            Case No. CV 05-02727

14  MATTEL, INC., a Delaware           MATTEL, INC.'S CONSOLIDATED
    corporation,                       SEPARATE STATEMENT IN SUPPORT
15                                     OF MOTION TO COMPEL
           Defendant.                  PRODUCTION OF DOCUMENTS BY
16                                     ISAAC LARIAN

17  AND CONSOLIDATED ACTIONS           DISCOVERY MATTER

18                                     [To Be Heard By Discovery Master
                                       Hon. Edward Infante (Ret.) Pursuant To
19                                     The Court's Order Of December 6, 2006]

20                                     Hearing Date:  December 14, 2007
                                       Time:          9:30 a.m.
21                                     Place:         JAMS S.F. Office

22

23

24

25

26        CONFIDENTIAL – ATTORNEYS' EYES ONLY

27    FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

28              EXHIBIT _____2_____

              PAGE ____19____

07209/2320027.1
       MATTEL INC.'S CONSOLIDATED SEPARATE STATEMENT IN SUPPORT OF MOTION TO COMPEL

**D.**    **The Court Should Compel Larian to Produce Documents Regarding His Financial Condition (Request Nos. 207-209 and 269)**

**1.    Mattel's Requests and Larian's Responses**

**REQUEST FOR PRODUCTION NO. 207:**

DOCUMENTS sufficient to IDENTIFY each account with any bank or financial institution that YOU have or have had, or that YOU have or have had any legal or beneficial interest in, since January 1, 1999.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 207:**

Larian incorporates by reference the above-stated general objections as if fully set forth herein. Larian also specifically objects to this request on the grounds that it is overbroad and seeks information not relevant to the subject matter of this lawsuit or reasonably calculated to lead to the discovery of admissible evidence. Larian also objects to this request on the grounds that it seeks information in violation of the right of privacy. Larian also objects to this requests on the grounds that it is vague and ambiguous in that Larian cannot determine what is meant by the phrase "any legal or beneficial interest." Larian also objects to this request on the grounds that it seeks confidential, proprietary or commercially sensitive information, the disclosure of which would be inimical to the business interests of Larian and one or more third parties. Larian also objects to this request to the extent it seeks information the disclosure of which would implicate the rights of third parties to protect private, confidential, proprietary or trade secret information. Larian also objects to this request to the extent it calls for the disclosure of attorney-client privileged information or information protected from disclosure by the work-product doctrine, joint defense or common interest privilege, or other privilege.

EXHIBIT 2

PAGE 90

MATTEL INC.'S CONSOLIDATED SEPARATE STATEMENT IN SUPPORT OF MOTION TO COMPEL

07209/2320027.1

**REQUEST FOR PRODUCTION NO. 208:**

Documents sufficient to establish YOUR gross income, and the sources of that gross income, for the years 1999 through the present, inclusive.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 208:**

Larian incorporates by reference the above-stated general objections as if fully set forth herein. Larian also specifically objects to this request on the grounds that it is overbroad and seeks information not relevant to the subject matter of this lawsuit or reasonably calculated to lead to the discovery of admissible evidence. Larian also objects to this request on the grounds that it seeks information in violation of the right of privacy. Larian also objects to this request on the grounds that it seeks confidential, proprietary or commercially sensitive information, the disclosure of which would be inimical to the business interests of Larian and one or more third parties. Larian also objects to this request to the extent it calls for the disclosure of attorney-client privileged information or information protected from disclosure by the work-product doctrine, joint defense or common interest privilege, or other privilege.

**REQUEST FOR PRODUCTION NO. 209:**

YOUR federal and state tax returns for each of the years 1999 through the present, inclusive.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 209:**

Larian incorporates by reference the above-stated general objections as if fully set forth herein. Larian also specifically objects to this request on the grounds that it is overbroad and seeks information not relevant to the subject matter of this lawsuit or reasonably calculated to lead to the discovery of admissible evidence. Larian also objects to this request on the grounds that it seeks information in violation of the right of privacy. Larian also objects to this request on the grounds that it seeks confidential, proprietary or commercially sensitive information, the disclosure of which would be inimical to the business interests of

EXHIBIT _____ 2 _____
PAGE _____

1  Larian and one or more third parties.  Larian also objects to this request to the extent

2  it calls for the disclosure of attorney-client privileged information or information

3  protected from disclosure by the work-product doctrine, joint defense or common

4  interest privilege, or other privilege.

5  **REQUEST FOR PRODUCTION NO. 269:**

6      DOCUMENTS sufficient to show or calculate YOUR net worth on a yearly

7  basis for each year from 1999 to the present.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 269:**

9      Larian incorporates by reference the above-stated general objections as if

10  fully set forth herein.  Larian also specifically objects to this request on the grounds

11  that it is overbroad and seeks information not relevant to the subject matter of this

12  lawsuit or reasonably calculated to lead to the discovery of admissible evidence.

13  Larian also objects to this request on the grounds that it is overbroad, unduly

14  burdensome, and oppressive in seeking All DOCUMENTS sufficient to calculate

15  Larian's net worth on a yearly basis for each year from 1999 to the present.  Larian

16  also objects to this request on the grounds that it is vague and ambiguous in that

17  Larian cannot determine what is meant by "YOUR net worth."  Larian also objects

18  to this request on the grounds that it seeks confidential, proprietary or commercially

19  sensitive information, the disclosure of which would be inimical to the business

20  interests of Larian and one or more third parties.  Larian also objects to this request

21  to the extent it seeks information the disclosure of which would implicate the rights

22  of third parties to protect private, confidential, proprietary or trade secret

23  information.  Larian also objects to this request to the extent it calls for the

24  disclosure of attorney-client privileged information or information protected from

25  disclosure by the work-product doctrine, joint defense or common interest privilege,

26  or other privilege.  Larian also objects to this request to the extent it seeks

27  documents not within Larian's possession, custody or control.

EXHIBIT _2_

28

PAGE _22_

MATTEL INC.'S CONSOLIDATED SEPARATE STATEMENT IN SUPPORT OF MOTION TO COMPEL

07209/2320027.1

2.   **Mattel's Statement of Position, Larian's Response, and Mattel's Reply**

    (a)    **Mattel's Statement of Position**

Request No. 207 seeks information regarding the identity of Larian's accounts with banks and other financial institutions. Such information is discoverable because it is reasonably calculated to lead to information showing the timing of payments by Larian to Bryant and others. Evidence of payments in turn is relevant to the timing of the development of Bratz, issues of credibility and bias and to Mattel's allegation of commercial bribery, as the Discovery Master has previously held.

Request Nos. 208-209 and 269 seek information that directly relates to Larian's financial condition. Such documents are relevant to Mattel's claims against Larian for damages, including punitive damages. Both the Discovery Master and Judge Larsen have held information regarding net worth is discoverable and relevant for these very reasons. (See Judge Larson's Order dated July 2, 2007 at 4-5, Kidman Dec., Exh. 18.) The requested documents may also show that Larian has siphoned off MGA assets for his own personal benefit and thus are also relevant to Mattel's damages claims against the MGA entities. Similarly, because Mattel's the disgorgement of all benefit Larian has received as a result of his wrongful conduct, Mattel is entitled to discover not only Larian's gross income, but the sources of that income to determine whether they are attributable to the misconduct for which Mattel seeks to hold him liable.

Larian's federal and state tax returns are also discoverable and highly relevant. Tax returns are not privileged under federal law. See St. Regis Paper Co. v. United States, 368 U.S. 208, 218-219, 82 S. Ct. 289, 295-96, 7 L. Ed. 2d 240 (1961) ("[A]lthough tax returns, like these census reports, are made confidential within the government bureau, copies in the hands of the taxpayer are held subject to

**EXHIBIT** __2__

1   discovery.") (citations omitted).  Further, the Protective Order allows Larian to

2   designate such records as confidential, thus obviating any privacy concern.  In re

3   Heritage Bond Litigation, 2004 WL 1970058 at *5, n.12; A. Farber and

4   Partners, Inc., 234 F.R.D. at 191-92.  Larian's tax returns are relevant here for all the

5   reasons discussed above.  In addition, Larian's tax returns--which he must personally

6   sign--go to impeach testimony by Larian that he invests all the money he makes

7   from MGA back into the company.[118]  Larian also testified that he could not

8   remember whether he received any kind of bonus from MGA for any of the years

9   from 2001 to 2006.[119]  In fact, financial information provided by MGA to date

10  shows that between 2001 and 2006 the company distributed hundreds of millions of

11  dollars in profits to its shareholders.  Mattel is entitled to full and accurate

12  information regarding Larian's financial condition and the amounts he has received

13  from MGA to impeach testimony that he did not make any money from MGA or

14  Bratz or that he does not remember if he did.  And, because Larian must sign them,

15  tax returns, even more than other documents relating to net worth and income, are a

16  unique source of directly pertinent financial information that Larian will not be able

17  to disavow or claim ignorance of at trial.

**(b)   Larian's Argument in Response**

19      Mattel should not be permitted to obtain the personal financial information it

20  seeks from Mr. Larian in Requests 207-209 and 269.  In those requests, Mattel seeks

21  personal financial information from Mr. Larian that is not relevant to the claims or

22  defenses at issue.  Alternatively, to the extent that those requests somehow might be

---

[118]   See excerpts of trial testimony on May 1, 2007 in the matter entitled Art Attacks Ink, LLC v. MGA Entertainment, Inc., at 23:2-27:11, Kidman Dec., Exh. 22.  Showing the lengths to which Larian and MGA have gone to hide financial information from Mattel, Larian and MGA's counsel sought to preclude Mattel's counsel from hearing any of this testimony by flatly misrepresenting to Judge Brewster that Mattel had not "been provided this information by court order." Id. at 9:9-13:14.

EXHIBIT  2

PAGE  24

1    considered calculated to lead to the discovery of admissible evidence, they are

2    duplicative of prior requests to MGA and unduly burdensome to Mr. Larian.  This

3    Court should, therefore, reject Mattel's arguments and attempts to obtain such

4    documents.

5        Request No. 209, for example, seeks Mr. Larian's state and federal tax

6    returns--exactly the same information that this Court held Mattel was not entitled to

7    obtain from Carter Bryant.[120]  In fact, this Court declined to order production of Mr.

8    Bryant's tax returns even though it had ordered production of other financial

9    information from Mr. Bryant.  Mattel has not shown why this Court should rule

10   differently in the case of Mr. Larian.  Furthermore, in Mr. Bryant's case, he was the

11   only source of the requested financial information, whereas Mattel can obtain any

12   relevant information it seeks to learn from Mr. Larian's private financial documents

13   through its requests to MGA, without the need for unduly burdening Mr. Larian.

14   Thus, this Court should reject Mattel's request to compel production of tax returns

15   and similar information.

16       Moreover, this Court and the Ninth Circuit recognize a public policy favoring

17   confidentiality and against the disclosure of tax returns, and require that a party

18   seeking production of tax returns make a two-pronged showing (1) that the returns

19   are relevant, and (2) "that there is a compelling need for the returns because the

20   information contained therein is not otherwise readily obtainable." *S. Cal. Hous.*

21   *Rights Ctr. v. Krug,* No. CV06-1420, 2006 WL 4122148, *3 (C.D. Cal. Sept. 5,

22   2006); *Premium Service Corp. v. Sperry & Hutchinson Co.,* 511 F.2d 225, 229 (9th

23   Cir. 1975) (noting public policy against disclosure as a viable ground for quashing

24   subpoena).  Using this two-pronged analysis, this Court declined to compel

25   production of defendants' tax returns, which were sought to determine defendants'

26

27   [119]  Id. at 23:2-27:11.

28   [120]  Kennedy Decl. Ex. 1 (January 25, 2007 Order Granting Mattel's Motion to Compel) at 14:29-15:2).

EXHIBIT 2

PAGE 25

07209/2320027.1

-187-

MATTEL INC.'S CONSOLIDATED SEPARATE STATEMENT IN SUPPORT OF MOTION TO COMPEL

1   net worth, because the court found no compelling need for the returns. *Southern*

2   *Cal. v. Krug*, at *3. This Court is not alone in applying the two-pronged test, and

3   denying requests for tax returns when the information sought can be obtained by

4   other less-intrusive means.[121] In this case, in addition to failing to show a

5   compelling need for the tax returns, Mattel has also failed to show their relevance.

6   Hence, Mattel has not met either prong of this Court's two-pronged test.[122]

7        Regarding the remaining requests for Mr. Larian's personal financial

8   information, Mattel has already sought ***and obtained*** broad discovery of financial

9   information from MGA, including: audited and unaudited quarterly and annual

10   profit and loss statements, audited and unaudited quarterly and annual statements,

11   and annual reports.[123] Mattel has also sought additional expansive discovery from

12   MGA requesting all documents related to: all salary, benefits, other compensation,

13   payments, transfers of value, dividend distributions, fund advances, gifts, loans, and

14   stock conveyed to Mr. Larian or any business affiliated with him;[124] all statements

15   for banks or other financial institutions from the date of MGA's incorporation to the

16   present, including all statements showing any payments to Mr. Larian or any

17

18   [121]  *See Aliotti v. Senora*, 217 F.R.D 496 (ND. Cal. 2003) (denying employer's motion to compel production of employee's. financial documents including tax returns where a less intrusive means of obtaining the information existed); *San Francisco BART Dist. v. Spencer*, No. C04-04632, 2006 U.S. Dist. LEXIS 81681 (N.D. Cal. Oct. 23, 2006) (denying motion to compel production of tax returns where information sought is available from other documents).

22   [122]  Additionally, California privilege law may apply (*see Platypus Wear, Inc. v. K.D. Co.*, 905F. Supp. 808 (S.D. Cal. 1995); *see also Fed. R. Evid. 501*) which arguably provides more protection against the disclosure of tax returns than its federal counterpart. *See Webb v. Standard Oil Co.*, 49 Cal. 2d. 509, 513-14 (1957); *Sav-On Drugs, Inc. v. Superior Court*, 15 Cal. 3d 1, 6-8 (1975); *Sammut v. Sammut*, 103 Cal. App. 3d 557, 562 (1982).

25   [123]  Kennedy Decl. Ex. 7 (Mattel, Inc.'s First Set of Requests for Documents and Things re Claims of Unfair Competition to MGA Entertainment, Inc.) at 45-46, Request Nos. 158, 159, and 160.

EXHIBIT __2__

PAGE __26__

-188-

07209/2320027.1

1  business affiliated with him;[125] documents related to all obligations between Mr.

2  Lairan;[126] and numerous other financially related requests.[127]

3      Hence, Request Nos. 207-209 and 269 to Mr. Larian are unnecessary, as they

4  are duplicative of Mattel's other requests to MGA, particularly considering that the

5  Mattel's requests to MGA include documents that are the best source for obtaining

6  the information Mattel indicates it is seeking through its requests to Mr. Larian.

7  Indeed, some of the documents that Mattel has *already obtained* regarding MGA's

8  financial information show disbursements and payments of the company to Mr.

9  Larian, thereby fulfilling the purposes for which Mattel claims it needs the

10  documents from Mr. Larian, including determining any potential damages and

11  disgorgement of profits, as well as for challenging Mr. Larian's credibility based on

12  his prior testimony about MGA's financial status.[128]

13          **(c)   Mattel's Reply**

14      Larian's bald assertion that the financial information Mattel seeks from

15  him is not relevant to any of the issues in this lawsuit is without merit. Tellingly,

16  Larian makes no attempt to respond to, let alone dispute, any of the showings made

17  by Mattel as to the why this information is highly relevant.  Nor could he.  The

18  requested information is clearly relevant and, among other things, is reasonably

19  calculated to obtain information that will show: (1) payments from Larian to Bryant

20  _____

21  [124]   Kennedy Decl. Ex. 8 (Mattel's Fifth Set of Requests for Documents and Things to MGA) at 7-10, Request Nos. 12, 13, 15-20, and 23-26.

22  [125]   *Id.* at 8, Request No. 14; 15, Request No. 47.

      [126]   *Id.* at 9, Request Nos. 21 and 22.

23  [127]   *See, e.g., Id.* at 6, Request Nos. 4 - 7; 10-12, Request Nos. 27 - 32; 12-15,

24  Request Nos. 34 - 46.

      [128]   Mattel has asserted that this Court has held that information regarding net

25  worth is discoverable (Mattel's Sep. Statement at 153).  Unlike Request No. 269,

26  however, the Rule 30(b)(6) deposition topics Mattel cites are directed at the net worth of a corporation (MGA), and did not involve the invasive inquiry into an

27  individual's documents relating to his private net worth.  (*See* Kennedy Decl. Ex. 9

28  (July 2, 2007 Minute Order of J. Larson) at 5.)   EXHIBIT _2_____

MATTEL INC.'S CONSOLIDATED SEPARATE STATEMENT IN SUPPORT OF MOTION TO COMPEL

07209/2320027.1

1  and others which bear directly on the timing of the creation of Bratz, as well as

2  Mattel's allegations of commercial bribery and issues of bias and credibility; (2)

3  income Larian received has made from the misconduct at issue in this lawsuit,

4  which go directly to Mattel's damages claims against him; (3) amounts Larian has

5  siphoned away from MGA for his own personal benefit which go to Mattel's

6  damages claims against the MGA entities;[129] (4) the net worth of Larian and MGA,

7  which the District Court and the Discovery Master have held is relevant to punitive

8  damages;[130] and (5) the falsity of Larian's sworn testimony that he has made no

9  profits from Bratz because he puts all such profits back into the company.

10          Instead, Larian makes two other arguments that are equally without

11  merit:  (1) that because Bryant was not compelled to produce his tax returns, Larian

12  should not be compelled to produce his; and (2) Mattel should be required to obtain

13  all of the remaining financial information it seeks regarding Larian from MGA.

14          As for his tax returns, as a preliminary matter, each of the cases cited

15  by Larian acknowledges that "[t]ax returns do not enjoy an absolute privilege from

16  discovery." Premium Services Corp. v. Sperry & Hutchinson Co., 511 F.2d 225,

17  229 (9th Cir. 1975); Southern California Housing Rights Center v. Krug, 2006 WL

18  4122148, *3 (C.D. Cal. 2006) (same).  Moreover, each acknowledge that the reason

19  for the rule is a "public policy against unnecessary **public** disclosure."  Id.

20  (emphasis added).  Here, the documents could be produced subject to the protective

21

22  [129]  Indeed, the Discovery Master already found this topic to be relevant in a an

23  Order compelling MGA to provide Rule 30(b)(6) designees.  See Order Granting In
    Part And Denying In Part Mattel's Motion To Compel MGA to Produce Witnesses

24  Pursuant to Third Notice of Deposition Under Rule 30(B)(6); Denying Request For
    Sanctions, dated September 26, 2007, at p. 11, Albán Dec., Exh. 46 ("MGA's

25  payments to Isaac Larian and Farhad Larian are relevant to the claims and defenses

26  in this case.").

    [130]  Order Granting Mattel, Inc.'s Motion to Compel MGA to Produce Witnesses

27  for Deposition Pursuant to Rule 30(b)(6), dated May 16, 2007, Albán Dec., Exh. 44;

28  Minute Order dated July 2, 2007, at pp. 4-5, Albán Dec., Exh. 45.

EXHIBIT ___2___

PAGE ___28___

1    order in this case, and as such would not be public. <u>See, e.g.</u>, <u>In re Heritage Bond</u>

2    <u>Litigation</u>, 2004 WL 1970058, *5, n.12 (granting motion to compel production of

3    defendant's financial records because "[a]ny privacy concerns . . . defendants have in

4    their bank records and related financial statements are adequately protected by the

5    protective order, and are not sufficient to prevent production in this matter"); <u>A.</u>

6    <u>Farber and Partners, Inc.</u>, 234 F.R.D. 186, 191-92 (C.D. Cal. 2006) ("plaintiff's need

7    for defendant Garber's financial documents outweighs defendant Garber's claim of

8    privacy, especially when the 'impact' of the disclosure of the information can be

9    protected by a 'carefully drafted' protective order"); <u>Gohler v. Wood</u>, 162 F.R.D.

10   691, 697 (D. Utah 1995) ("Because the protective order limits disclosure of

11   confidential material to those who are necessarily involved in the case, and these

12   parties may use this information only for purposes of litigating this case, excluding

13   any business purpose, the court concludes Deloitte's confidentiality concerns have

14   been addressed adequately.").

15          In any case, there is a compelling need for Larian's tax returns here.

16   Larian has already testified under oath that he has made only a limited amount of

17   money from Bratz because he puts all of the profits back into the company. This

18   testimony is contrary to information Mattel has obtained in documents produced in

19   this lawsuit. Undoubtedly, Larian will attempt to disclaim knowledge of or the

20   accuracy of those documents, MGA's audited financial statements, at trial. Only his

21   tax returns, however, have his signature attesting to the federal government of their

22   truth and accuracy. Thus, they are critical impeachment evidence that is not

23   available by any other means.

24          Moreover, Mr. Larian's finances are far more complex than those of

25   Carter Bryant. For example, Bryant's profits from Bratz are largely set forth in this

26   royalty statements from MGA. Larian, on the other hand, is a position to conceal

27   payments through personal use of corporate assets, transfers of assets among a

28   multitude of corporate entities, trusts, and other transactions that will be difficult, if

EXHIBIT ___2___

-191-

MATTEL INC.'S CONSOLIDATED SEPARATE STATEMENT IN SUPPORT OF MOTION TO COMPEL

PAGE ___39___

1  not impossible, to unravel.  For example, Mattel now knows that Larian's controlling

2  interest in MGA is held not by him personally, but through a trust or trusts.[131]  And

3  far from getting information on this issue from MGA, MGA's counsel instructed

4  Ms. Tonnu not to answer questions about Larian's trusts.[132]  MGA does not know

5  about Larian's financial dealings or holdings.  Tonnu does not prepare Larian's

6  taxes.[133]  He and MGA use different accountants.[134]  Only Larian's tax returns offer

7  a plain—and sworn—summary number as to what Larian himself has concluded he

8  has made.

9          Larian's claim that Mattel should obtain documents regarding his

10  financial condition from MGA makes no sense.  Larian is party to this lawsuit and

11  Mattel is entitled to seek information about Larian's financial condition from Larian.

12  Larian does not get to dictate what discovery devices Mattel must use to obtain

13  information that is relevant to this lawsuit.  Nor should Larian be permitted to turn

14  Mattel's efforts to obtain relevant information about his finances into a shell game

15  whereby Larian directs Mattel to get the information from MGA and then MGA

16  does not produce the information because it claims, for example, that the

17  information is in Larian's "personal files."[135]

18          In addition, by Larian's own admission, any documents Mattel receives

19  from MGA will include only payments, salary, and dividends Larian has received

20  _____

21  [131]  Depo. Tr. of Lisa Tonnu (Vols. 1 and 2), dated July 19, 2007, and September 24, 2007 ("Tonnu Tr."), at 49:3-25, Albán Dec., Exh. 36.

22  [132]  Id. at 53:15-55:8.

23  [133]  Id. at 53:12-14; 363:5-364:10.

23  [134]  Id. at 363:5-364:10.

24  [135]  Moreover, while Larian claims that these requests are duplicative of Mattel's other requests to MGA, the only requests it points to are Mattel's Fifth Set of

25  Requests for Documents and Things to MGA.  Larian fails to mention, however, that MGA's response to those requests is not even due until December 27, 2007 and

26  Mattel has no way of knowing how MGA will respond.  In any event, Mattel is

27  entitled to information from Larian to determine if they conflict with any information provided by MGA, a fact that itself would be highly relevant.

28

EXHIBIT _____2_____

07209/2320027.1

1  **from MGA**.  They offer nothing as to Larian's net worth generally.  Larian's net

2  worth as a whole is relevant to Mattel's punitive damages claims.  Minute Order

3  dated July 2, 2007, at pp. 4-5, Kidman Dec., Exh. 18.  See also Hilao v. Estate of

4  Marcos, 103 F.3d 767, 781-82 & n. 7 (9th Cir. 1996) (defendant's financial

5  condition a relevant factor in awarding punitive damages); Housing Rights Center v.

6  King, 2006 WL 4122148, *4 (C.D. Cal. 2006) ("When a punitive damages claim has

7  been asserted, a majority of federal courts permit pretrial discovery of financial

8  information about defendants without requiring the plaintiff to establish a prima

9  facie case on the issue of punitive damages.").

10          Mattel is entitled to discovery about Larian's financial condition from

11  Larian.  He should be ordered to produce it.

12      E.  **The Court Should Compel Larian to Produce Documents**

13          **Regarding Computers and Devices Used to Store Information**

14          **About Bratz, Angel or Bryant (Request Nos. 222-225 and 227-228)**

15          1.  **Mattel's Request and Larian's Responses**

16  **REQUEST FOR PRODUCTION NO. 222:**

17          Each STORAGE DEVICE that YOU have used to create, prepare, generate,

18  copy, transmit, receive, delete or modify any DIGITAL INFORMATION

19  RELATING TO BRATZ, ANGEL or BRYANT.

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 222:**

21          Larian incorporates by reference the above-stated general objections as if

22  fully set forth herein.  Larian also specifically objects to this request on the grounds

23  that it is overbroad and seeks information not relevant to the subject matter of this

24  lawsuit or reasonably calculated to lead to the discovery of admissible evidence.

25  Larian also objects to this request on the grounds that it seeks confidential,

26  proprietary or commercially sensitive information, the disclosure of which would be

27  inimical to the business interests of Larian and one or more third parties.  Larian

28  also objects to this request to the extent it calls for the disclosure of attorney-client

EXHIBIT _____ 3/

-193-

      (g)    **Mattel's Reply Regarding Request Nos. 225, 227, and 228**

These Requests ask for hard drives and related documents that belong to Carter Bryant. Mr. Larian makes the same objections that he did in response to Request Nos. 222 and 224, above, and the same response applies. Namely, Mattel has evidence of spoliation, and is entitled to learn if other data has been destroyed. Indeed, it was Carter Bryant's hard drive on which Mattel has learned that the "Evidence Eliminator" software was installed. If Larian is in possession of other Carter Bryant hard drives, Mattel is entitled to know about it.

In addition to those arguments, Larian also objects that he is being asked to produce hard drives and documents he does not possess. This is a curious objection. If he does not possess these documents, he will not be producing them. The Requests are designed to find out, for example, if Carter Bryant transferred a hard drive of his to Isaac Larian, or if Mr. Larian is in possession of an MGA drive that Carter Bryant used for work on Bratz. If either is the case, Mattel is entitled to know about it. If not, Mattel is entitled to know that too.

Indeed, if Larian does not possess such drives, that only means that the burden of producing them is completely absent, because there is nothing to produce. For these reasons, Larian should be ordered to produce drives and documents in response to Request Nos. 225, 227, and 228.


DATED: December 10, 2007    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By /s/ Scott B. Kidman
    Scott B. Kidman
    Attorneys for Mattel, Inc.


EXHIBIT   2

PAGE   32

07209/2320027.1

**Exhibit 3**

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California 94111
Telephone:     (415) 774-2611
Facsimile:     (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

v.

MATTEL, INC., a Delaware corporation,

Defendant.

CONSOLIDATED WITH
MATTEL, INC. v. BRYANT and
MGA ENTERTAINMENT, INC. v. MATTEL,
INC.

CASE NO. CV 04-09049 SGL (RNBx)
JAMS Reference No. 1100049530

Consolidated with
Case No. CV 04-09059
Case No. CV 05-2727

**ORDER GRANTING IN PART AND
DENYING IN PART MATTEL'S
MOTION TO COMPEL PRODUCTION
OF DOCUMENTS BY ISAAC LARIAN;
DENYING REQUEST FOR
SANCTIONS**

## I. INTRODUCTION

On October 11, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Compel Production of Documents by Isaac Larian and for Award of Monetary Sanctions." Specifically, Mattel seeks an order compelling Isaac Larian ("Larian") to produce documents responsive to Mattel's First Set of Requests for Documents and Things, including, without limitation, Request Nos. 1, 2, 13,

EXHIBIT ___3___

PAGE ___33___

1   15, 32, 33, 35, 41, 61-76, 79-101, 113-115, 123-125, 139-146, 178, 180, 181, 190-192, 194-199,

2   207-209, 213, 221-225, 227-228, 269, 272 and 273 and a privilege log identifying all documents

3   withheld based on any claimed privilege.  Mattel also seeks an award of sanctions against Larian

4   in the amount of $4,500, which represents a portion of the costs incurred by Mattel in bringing

5   this motion.  Larian submitted an opposition on December 5, 2007.[1]  Mattel submitted a reply on

6   December 10, 2007.  The matter was heard on December 14, 2007.  Having considered the

7   motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in

8   part and denied in part, and the request for sanctions is denied.

## II. BACKGROUND

On June 13, 2007, Mattel propounded its First Set of Requests for Production of

Documents and Things to Larian, the CEO and majority owner of MGA.  On August 6, 2007,

Larian filed his initial responses and objections.  The parties met and conferred, and on September

25, 2007, Larian served supplemental responses and objections.

Mattel filed the instant motion on October 11, 2007 seeking further responses to 87 of the

276 Requests.  The parties met and conferred further, and Larian ultimately agreed to provide

further responses to 55 of the disputed 87 Requests.  Specifically, Larian agreed to supplement his

responses and to produce documents responsive to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-

76, 82-101, 139-146, 213, 221 and 223, "to include documents, if any, in his personal files that

have not previously been produced."  MGA's Opposition at pp. 1-2.

The remaining 32 Requests at issue can be grouped into ten categories:  (1) personal

financial data; (2) communications with Mattel employees; (3) statements to the media; (4)

telephone records; (5) storage devices; (6) Carter Bryant's ("Bryant") storage devices; (7) market

research concerning products not at issue; (8) Bryant's attorney and niece; (9) the Larian brother's

arbitration; and (10) MGA Hong Kong and MGA Mexico.

//

---

[1] Mattel filed an Objection to Larian's Opposition and Response to Mattel's Separate Statement, asserting that the submissions should not be considered because they are untimely and because the Response to Mattel's Separate Statement fails to set forth a complete and verbatim statement of Mattel's position.  The Objection is overruled because Mattel has not been prejudiced and because of the court's preference to resolve Mattel's motion on the merits.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___3___

PAGE ___34___

2

## II. DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000) (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for the phrase "subject matter involved in the pending action," were intended to prevent discovery that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to develop new claims or defenses.).

Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or extent of use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

### The 55 Requests Resolved During Meet and Confer Session

During the meet and confer session held after the instant motion was filed, Larian agreed to produce documents responsive to 55 requests. In his Opposition brief, Larian states that the 55 requests are no longer in dispute.

Nevertheless, a court order compelling production is warranted for two reasons. First, Larian has not yet produced documents responsive to the 55 requests or provided a date by which

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___3___

PAGE ___35___

3

1  he will do so.  Second, Larian's agreement to produce responsive documents is apparently limited

2  to documents from his so-called "personal files."  See Opposition at 2:2-3.

3          Mattel's counsel "never agreed that Larian could limit his response to the above requests

4  to documents in his 'personal files' and Larian's counsel did not state that Larian would limit his

5  response to documents in Larian's 'personal files.'"  Supp. Decl. of Scott B. Kidman.

6  Furthermore, the limitation to "personal files" suggested by Larian is contrary to Rule 34,

7  Fed.R.Civ.P, which imposes a duty to produce responsive documents within the responding

8  parties' "possession, custody or control."  The limitation is also unworkable because, as Mattel

9  points out, it "would create a situation by which responsive and highly relevant documents might

10  never be produced because MGA, on the one hand, deems [a] document to belong to Larian, and

11  Larian, on the other hand, deems [a] document not to be part of his 'personal files.'"  Reply at p.6.

12  Market Research for Products Not at Issue:  Request Nos. 79-81

13          In Request No. 79, Mattel seeks all documents relating to any focus groups relating to

14  Bratz and/or Angel, including without limitation all videotapes, summaries, notes and reports.  In

15  his supplemental response, Larian agrees to produce the following documents, subject to his

16  general objections:

> Larian will produce all documents within his possession, custody, or control that
> relate to focus groups for "MGA contested products" and "Mattel contested
> products," as those terms are defined in Mattel's First Requests for Production
> regarding Claims of Unfair Competition, if any, and that have not already been
> produced, that he discovers in the course of his reasonable search and diligent
> inquiry, and to which no privilege or other protection applies, including without
> limitation, the attorney-client privilege or attorney's work product doctrine.

22  Mattel's Consolidated Separate Statement at pp. 20-21.

23          In Request No. 80, Mattel seeks all documents relating to any services or work performed

24  by L.A. Focus between January 1, 1999 and December 31, 2001, including without limitation, all

25  videotapes, summaries, notes and reports associated therewith.  In his supplemental response,

26  Larian agrees to produce documents relating or referring to Bratz or Angel that are responsive to

27  the request and to which no privilege or other protection applies.

28  Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

**EXHIBIT** ___3___

**PAGE** ___36___

4

In Request No. 81, Mattel seeks all documents relating to Alaska Momma.  In his supplemental response, Larian agrees to produce all documents relating or referring to Bratz, Angel or Bryant that are responsive to the request and to which no privilege or other protection applies.

Mattel contends that the requests are as narrowly tailored as possible to capture relevant information.  More specifically, Mattel contends that Request No. 79 seeks documents that bear directly on the timing of the development of Bratz, as well as MGA's unfair competition claims and Mattel's defense thereto.  Mattel contends that the requested documents may demonstrate that MGA is guilty of copying Mattel's Barbie and My Scene products.

Larian contends that Request Nos. 79-81 are overbroad and unduly burdensome.  As an example, Larian points to Request No. 80, which requests all documents relating to any services or work performed by L.A. Focus, regardless of whether that work has any relation to the claims and defenses in the action or any of the products at issue.  Larian similarly contends that Request Nos. 79 and 81 are unbounded by subject matter or time, and are untethered to any claim or defense in this case.

Mattel's motion to compel Larian to produce all documents responsive to Request No. 79 is granted.  The request is reasonably limited in subject matter to Bratz and Angel.  The requested documents are relevant to several issues in the case, including the origin, conception and creation of Bratz.  The requested documents are also relevant to the unfair competition claims.  Larian's supplemental response to Request No. 79 is unduly restrictive.  Among other things, the definitions of "contested MGA products" encompass only those products that provide a basis for any claim by MGA against Mattel, and not claims by Mattel against MGA.

Mattel's motion to compel Larian to produce all documents responsive to Request Nos. 80-81 is denied.  These requests, as drafted, are clearly overbroad because they have no reasonable limitations on subject matter or time.  In particular, the requests are directed to L.A. Focus and Alaska Momma without regard to whether the services or work the companies provided has any relation to any product at issue.

Larian's supplemental responses to Request Nos. 80 and 81 are reasonably limited to

documents related to the products at issue: Bratz and Angel. In Mattel's view, Larian's supplemental response is too narrow and "may result in the exclusion of highly relevant documents because the project, concept or design that is the subject of the focus group is deemed not to relate to something then known as Bratz or Angel." However, Larian acknowledges that these types of hypothetical documents would still fall within the narrower scope of production proposed in his supplemental response.

Mattel also contends that it is entitled to all of the requested documents called for by Request No. 80 because they are relevant to credibility and bias, particularly if the documents show that work relating to Bratz or Angel deviate from standard procedures that MGA and L.A. Focus used. It is, however, not apparent how deviations from standard procedures would impact credibility or bias.

As to Request No. 81, Mattel contends that the documents showing the relationship between Larian or MGA and Alaska Momma are relevant, even if they do not themselves specifically relate to Bratz, Angel or Bryant. Mattel contends that communications from Larian or MGA asking Alaska Momma to look for fashion doll opportunities around the time Bryant claims to have pitched Bratz to Alaska Momma would be highly relevant in impeaching MGA's and Bryant's stories about how and when they came to be introduced. Mattel also contends that documents showing other dealings between Larian or MGA and Alaska Momma are relevant to the issues of bias and credibility. Mattel's supposition about the types of documents that might exist does not justify the type of far-reaching request it has propounded. Request No. 81 is also not limited by either subject matter or time.

Accordingly, Larian shall produce documents responsive to Request Nos. 80 and 81 in accordance with his supplemental responses.

Bryant's Attorney and Niece: Request Nos. 113-115

In Request No. 113, Mattel seeks all communications between Larian or MGA and Anne Wang, a lawyer who represented Bryant in his contract negotiations with MGA. In Request No. 114, Mattel seeks all documents, including without limitation all communications, between

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___3___

PAGE ___38___

6

1  Larian or MGA and Anne Wang. In Request No. 115, Mattel seeks documents relating to Brooke

2  Gilbert, Bryant's niece. In his supplemental responses, Larian agrees to produce documents

3  relating to Bratz, Angel or Bryant that are responsive to the requests and to which no privilege or

4  other protection applies. Thus, the only issue is whether Larian should be required to produce

5  responsive documents that do not relate to Bratz, Angel or Bryant.

6      Mattel contends that Request Nos. 113-114 seek documents that are relevant to the origin

7  and conception of Bratz and the timing thereof. Mattel also contends that the documents may

8  disclose relevant information regarding Mattel's claims for breach of contract and inducing

9  breach of contract, including information regarding Bryant's or MGA's knowledge of Bryant's

10  contractual obligations with Mattel. Mattel also contends that Larian has failed to carry his

   burden of demonstrating that the requests are overly burdensome.

11      Mattel further contends that Larian's supplemental responses to Request Nos. 113 and 114

12  are inadequate because the limitations on scope may eliminate otherwise relevant documents that

13  do not specifically refer to Bratz, Angel or Bryant. For example, Mattel contends that

14  communications with or about Bryant's lawyer that do not specifically relate to Bratz, Angel or

15  Bryant may be relevant to the issues of credibility and bias.

16      Mattel contends that Request No. 115 seeks documents that are relevant to determine

17  whether evidence on Bryant's computer was destroyed by the "Evidence Eliminator" software

18  that had been installed and run on the hard drive. Bryant claims to have given his computer to his

19  niece. Mattel also contends that the requested documents are relevant to the issues of credibility

20  and bias. Further, Mattel contends that Larian's supplemental response to Request No. 115 is

21  inadequate, because evidence of any communication between Larian and his niece, regardless of

22  subject matter, is significant.

23      Larian contends that Request Nos. 113-115 are overbroad and unduly burdensome

24  because they lack any subject matter or time constraints. Further, Larian contends that the

25  requests constitute an improper fishing expedition and necessarily sweep in documents that are

26  not relevant to any claim or defense.

27  //

28

1    Mattel's motion to compel documents responsive to Request Nos. 113-115 is denied. The

2    requests are overbroad because they are not focused on relevant subject matter and are untethered

3    to any claim or defense. Although Mattel asserts that responsive documents unrelated to Bratz,

4    Angel or Bryant might be relevant to the issues of credibility and bias, that speculative possibility

5    is too remote to justify the breadth of Mattel's requests.

6    Larian's supplemental responses are sufficient to provide Mattel with relevant and

7    responsive documents.  Larian shall produce documents responsive to Request Nos. 113-115 in

8    accordance with his supplemental responses.

9    The Larian Brothers' "Arbitrations and Suits":  Request Nos. 123-125

10    In Request No. 123, Mattel seeks all documents relating to any and all arbitrations and

11    suits between Larian and his brother, Farhad Larian.  In Request No. 124, Mattel seeks all

12    documents filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad

13    Larian against Larian, including without limitation all declarations, affidavits, transcripts, video

14    and/or audio recordings and sworn testimony given by any person in such suit or arbitration

15    proceedings.  In Request No. 125, Mattel seeks all documents relating to any and all settlements,

16    resolutions, or compromises of any suit and/or arbitration proceedings between Larian and Farhad

17    Larian.  In his supplemental responses, Larian agrees to produce all documents referring or

18    relating to Bratz that are responsive to the requests and to which no privilege or other protection

19    applies.

20    Mattel contends that the court has already ruled that the arbitration proceedings between

21    Larian and his brother are relevant because they involve, among other matters, the conception and

22    creation date for Bratz.  Mattel contends that Larian's supplemental responses improperly limit

23    the requests to the exclusion of potentially relevant documents.  For example, Mattel contends

24    that documents that relate to the business, activities and plans of MGA in early 2000 are relevant

25    to the timing of the development of Bratz, whether or not they specifically refer to Bratz.

26    Mattel also contends that the requested documents are relevant to the value of the Bratz brand and

27    the net worths of Larian and MGA, as well as Mattel's claims for damages, including, for

28

EXHIBIT ___3___

PAGE ___40___

8

example, profits from the sale and licensing of Bratz and other information that would impeach Larian's testimony that he has not made any profits from Bratz. Further, Mattel contends that the requested documents may lead to evidence of the assessments or valuations of the net worth or value of MGA or Larian, regardless of any reference to Bratz specifically. Mattel also contends that settlement documents may contain information that bears on the merit of Farhad Larian's claims and the value of Bratz. Mattel also claims that the requested documents are relevant to motive, intent, bias and credibility.

Larian contends the instant requests are overbroad and unduly burdensome. Further, Larian contends that the relationship of the requested documents to any of the claims or defenses in the present action is questionable, and the existence of such documents is conjectural. Moreover, Larian contends that many of the categories of documents of interest to Mattel are already the subject of other requests. Larian also contends that Request Nos. 123-125 impose an undue burden because of the protective orders in place that strictly limit the use of any documents from an arbitration and suit between Larian and his brother. Larian represents that he is currently working with Mattel and his brother in an attempt to achieve suitable modifications to the orders that are agreeable to all parties.

Mattel's motion to compel documents responsive to Request Nos. 123-125 as drafted is denied. The requests are clearly overbroad in calling for all documents from the arbitrations and suits between Larian and his brother, without any subject matter limitations. Furthermore, these requests are unduly burdensome to the extent they require production of documents that do not refer or relate to Bratz. Such documents have marginal relevance, at best, to the claims and defenses in the case.

Larian's supplemental responses to Request Nos. 123 -125 are sufficient. Larian's agreement to produce documents that refer or relate to Bratz is a reasonable compromise that will enable Mattel to obtain documents relevant to the claims and defenses in the case, including many of the categories of documents of interest to Mattel. For example, under Larian's proposed limitation, documents that relate to the business, activities and plans of MGA in 2000 that also refer or relate to Bratz must be produced. Documents relating to the value of the Bratz brand are

EXHIBIT 3

PAGE 41

9

1   also within the scope of Larian's proposed limitation and would have to be produced. Documents

2   relating to the net worth of Larian or MGA that refer or relate to Bratz would also have to be

3   produced. Further, Larian's proposed limitation does not necessarily foreclose discovery

4   regarding the appraisal of MGA prepared by Mr. Dutcher. In particular, documents relating to

5   MGA's liabilities, debt, intangible assets, inventory, loans, growth rate projection, and revenue

6   projections must be produced if such documents refer or relate to Bratz. Accordingly, Larian

7   shall produce documents responsive to Request Nos. 123-125 in accordance with his

8   supplemental responses.

9   Telephone Records: Request Nos. 178-181

10       In Request No. 178, Mattel seeks all documents relating to, including without limitation

11   phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

12   from January 1, 1998 through January 1, 2001. Larian objects to this request.

13       In Request No. 179, Mattel seeks all documents relating to, including without limitation

14   phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

15   from January 1, 1998 through January 1, 2001 relating to Bratz and/or Angel. In his supplemental

16   responses, Larian agrees to produce documents responsive to Request No. 179. In response to

17   this motion, however, Larian contends that he should be permitted to produce documents

18   responsive to Request No. 179 in redacted form as discussed more fully below.

19       In Request No. 180, Mattel seeks all documents relating to, including without limitation

20   phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

21   from April 1, 2004 through June 1, 2004. Larian objects to this request.

22       In Request No. 181, Mattel seeks all documents relating to, including without limitation

23   phone records for, telephone calls relating to Bryant by or to Larian or anyone on Larian's behalf

24   at any time. In his supplemental response, Larian agrees to produce all documents pertaining to

25   communications made prior to January 1, 2001 that are responsive to the request and to which no

26   privilege or other protection applies.

27   //

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___3___

PAGE ___42___

10

1    Mattel contends that Request No. 178 seeks documents relevant to show Larian's

2    communications with Bryant and other Mattel employees while such employees may still have

3    been employed by Mattel and before Larian claims to have known about Bratz.  Similarly, Mattel

4    contends that Request No. 180 seeks documents relevant to Mattel's allegation that MGA, and

5    Larian in particular, were recruiting employees of Mattel's Mexican subsidiary and enticing them

6    to steal Mattel trade secrets.

7    Further, Mattel contends that the requested documents regarding telephone records are

8    relevant to (a) Mattel's claims regarding ownership of Bratz to the extent they show

9    communications with Carter Bryant; (b) Mattel's claims for theft of trade secrets to the extent

10   they show communications with current and former Mattel employees, including Machado,

11   Vargas, Trueba, Brawer, and Brisbois; (c) Mattel's claims regarding allegedly false statements

12   Larian made to retailers; (d) MGA's counterclaims; and (e) Mattel's defenses.  With respect to

13   burden, Mattel contends that it would be more burdensome to attempt to produce the requested

14   records in redacted form, and further, that the protective order in place is sufficient to protect

15   Larian's privacy concerns.

16   Larian contends that the requests regarding telephone records are overbroad, completely

17   unbounded as to subject matter, and necessarily sweep in private information that is completely

18   irrelevant to any of the claims or defenses in the case.  Larian also points out that the court

19   previously considered similar requests served on Bryant and allowed production of redacted

20   copies of telephone records as long as Bryant provided a signed verification that none of his

21   redactions related to Bratz, MGA or any other project he worked on for MGA.  Specifically,

22   Bryant was permitted to produce redacted phone records as long as he provided a "signed

23   verification that none of the telephone records that were redacted relate or refer in any way to

24   MGA, Bratz, or any other project that Bryant worked on, with, for or on behalf of MGA."

25   Kennedy Decl., Ex. 1 (January 25, 2007 Order Granting Mattel's Motion to Compel Production

26   of Documents by Bryant).  Larian contends that he should be permitted to redact responsive

27   documents consistent with the court's prior order.  During the meet and confer, Larian offered to

28   provide redacted records and a signed verification that none of the redacted information was

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____3_____

PAGE _____43_____

11

relevant to the case, but Mattel did not respond to the offer.

Mattel's motion to compel documents responsive to Request Nos. 178 (all documents relating to phone records by or to Larian for January 1, 1998 – January 1, 2001) is denied. The request is overbroad because it lacks any subject matter limitation, and thus necessarily sweeps in private information that is completely irrelevant to the case. Larian should not be subjected to such an intrusion into his private and business affairs when Mattel has made no attempt to tailor the request to the communications, claims, and defenses identified above.

In contrast to Request No. 178, Request No. 179 is reasonably tailored to phone records for a particular time frame (January 1, 1998 to January 1, 2001), and to particular subject matters (Bratz and/or Angel). Accordingly, Larian shall abide by his agreement to comply with Request No. 179, as stated in his supplemental response. Larian's proposal to produce responsive documents in redacted form is appropriate to address his privacy concerns. More specifically, Larian may produce documents responsive to Request No. 179 in redacted form as long as Larian provides a signed verification that none of the redacted material refers or relates in any way to MGA, Bratz, or any other proposed or actual project worked on, with, for or on behalf of MGA, or that are otherwise relevant to the case.

Mattel's motion to compel documents responsive to Request No. 180 (documents relating to telephone calls by or to Larian from April 1, 2004 – June 1, 2004) is granted. Request No. 180 is reasonably tailored to a two month period during which MGA and Larian allegedly recruited employees out of Mattel's Mexican subsidiary and enticed them to steal Mattel trade secrets. See Mattel's Second Amended Answer and Counterclaims, ¶¶37-54. Larian may produce documents responsive to Request No. 180 in redacted form as specified above with respect to Request No. 179.

Request No. 181 (documents relating to telephone calls relating to Bryant by or to Larian) is overbroad as written because it has no time limits. In his supplemental response, Larian agrees to produce communications prior to January 1, 2001 that are responsive to the request. Larian's proposed limitation is a reasonable compromise that will provide Mattel with relevant documents without imposing an undue burden. Accordingly, Larian shall produce documents responsive to

EXHIBIT    3
PAGE _____ 44

12

1    Request No. 181 consistent with his supplemental response, and may produce such documents in

2    redacted form as specified above with respect to Request No. 179.

3

4    Statements to the Media:  Request Nos. 190-192, 194-197 and 199

5            In Request Nos. 190-192, 194-197 and 199, Mattel seeks communications between Larian

6    and members of the press or financial institutions relating to Bratz, Bryant, Mattel or this action.

7    Mattel contends that the requests are sufficiently narrowly tailored to seek information that goes

8    to the issues in the lawsuit.  More specifically, Mattel contends that the request are relevant to

9    Mattel's allegation that MGA and Larian repeatedly issued false and misleading press releases

10   regarding Bratz's sales, Bratz's market share, Bratz's position relative to Mattel's Barbie

11   products, sales of Mattel's Barbie products, and the market share of Mattel's Barbie products.

12   Further, Mattel contends that statements to lenders or investors relating to Bratz or Bryant may

13   also contain admissions regarding the origin and conception of Bratz and statements relevant to

14   damages.

15           Larian contends that the requests are overbroad and unduly burdensome, particularly

16   because several of the requests seek publicly available information.  Further, Larian points out

17   that the court has already considered and rejected as overbroad a nearly identical request served

18   on MGA that called for all documents relating to any communications by MGA with any news

19   organization regarding the contested MGA products or the contested Mattel products.  Larian

     contends that the same reasoning applies to the instant requests.

20           Mattel's motion to compel documents responsive to Request Nos. 190-192, 194-197 and

21   199 is denied.  Although several of the requests encompass potentially relevant documents, the

22   requests are overbroad and encompass documents that have little to no relevance to the claims and

23   defenses in the case.  Not one of the requests is limited to relevant subject matters, such as Bratz's

24   sales, Bratz's market share, Bratz's position relative to Mattel's Barbie products, sales of Mattel's

25   Barbie products, the market share of Mattel's Barbie products, the origin and conception of Bratz,

26   or damages.

27   //

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___3___

PAGE ___45___

13

1    Furthermore, many of these overbroad requests seek publicly available information that is

2  readily accessible to Mattel for which Larian should not be burdened.  To the extent the requested

3  documents and information are not publicly available, such documents and information are

4  marginally, if at all, relevant because they are not likely to have caused Mattel compensable harm.

5  In either case, the burden and expense of searching for and producing responsive documents are

6  unjustified.

7

8  Communications With Mattel Employees:  Request No. 198

9    In Request No. 198, Mattel seeks all communications between Larian and any individual

10  while the individual was employed by Mattel.  Mattel contends that this request is directly

11  relevant to Mattel's claims of trade secret theft, and that the relevancy outweighs any purported

12  burden of production.

13    Larian contends that the request is overbroad and unduly burdensome because it is

14  unrestricted as to time and subject matter.  Larian also points out that the court has previously

15  found a similar request overbroad.  Larian further contends that employees in the toy industry are

16  likely to maintain contacts with other toy manufacturers, and that a large corporation such as

17  Mattel is likely to have a high number of employees communicating with MGA or its officers,

18  which makes the request more unduly burdensome and unreasonable than it appears on its face.

19    Unlike other requests regarding communications, Request No. 198 is reasonably tailored

20  to the specific and numerous allegations in the case regarding alleged trade secret theft.  Although

21  the request is not limited by subject matter, it is limited in other respects to seek relevant

22  documents without imposing an undue burden.  The request is limited to communications

23  between Larian (and not MGA or persons acting on his behalf) and individuals employed at

24  Mattel.  The request is also limited to only those communications that took place while the

25  individuals were employed at Mattel.

26    Nevertheless, an additional temporal limit is appropriate to tailor the request to Mattel's

27  allegations of trade secret theft.  The alleged trade secret theft began with Bryant's conduct in

28  1999 and continued to 2005.  Accordingly, Larian shall produce documents responsive to Request

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ____3____

PAGE ____46____

14

1   No. 198 that are limited to the time frame 1999 to 2005.

2

3   Personal Financial Data:  Request Nos. 207-209 and 269

4          In Request No. 207, Mattel seeks documents sufficient to identify each of Larian's banks

5   or financial institutions and other banking relationships since January 1, 1999.  In Request No.

6   208, Mattel seeks documents sufficient to establish Larian's gross income and sources for such

7   income for each year from 1999 to the present.  In Request No. 209, Mattel seeks Larian's federal

8   and state tax returns for each year from 1999 to the present.  In Request No. 269, Mattel seeks

9   documents sufficient to show or calculate Larian's net worth on a yearly basis for each year from

10  1999 to the present.

11         Mattel contends that Request No. 207 seeks information reasonably calculated to lead to

12  information showing the timing of payments to Bryant and others, which in turn is relevant to the

13  timing of the development of Bratz and issues of credibility.  Mattel contends that Request Nos.

14  208-209 and 269 seek non-privileged information that is directly relevant to Larian's financial

15  condition, which in turn is relevant to damages.  Further, Mattel contends that it is entitled to

16  information regarding the sources of Larian's income to determine whether they are attributable

17  to the alleged misconduct and thus subject to disgorgement.

18         Larian contends that the requested personal financial information is not relevant to the

19  claims or defenses at issue.  More specifically, Larian contends that neither the names of his

20  banks nor his gross income have any bearing upon either compensatory or punitive damages or

21  Mattel's claim for disgorgement of profits.  Larian further contends that there is no support for

22  Mattel's supposition that Larian has siphoned off MGA assets for his own personal benefit.

23         Larian also contends that all three of the requests overlap substantially with requests

24  Mattel previously propounded upon MGA, and that Mattel has failed to justify the duplication or

25  burden posed by these requests to him.  Further, Larian contends that the court has previously

26  found that Mattel was not entitled to obtain tax returns from Bryant, and that Mattel has offered

27  no reason why the same result should not apply here.

28         Mattel's motion to compel responses to Request Nos. 207-208 and 269 is granted.  The

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __3__

PAGE __47__

15

1    requests are reasonably calculated to lead to the discovery of admissible evidence relevant to

2    several issues in the case.  For example, the requested information is likely to lead to information

3    regarding payments from Larian to Bryant, which is relevant to, among other things, the timing of

4    the creation of Bratz.  The requested information is also likely to show Larian's income and net

5    worth, which are relevant to damages.  Further, Larian has failed to establish that the requests are

6    unduly burdensome.  Although Mattel has sought and obtained broad discovery of financial

7    information from MGA, Mattel is also entitled to seek financial information directly from Larian.

8         Mattel's motion is denied as to Request No. 209, provided that Larian complies with

9    Request Nos. 207, 208 and 269.  In light of the discovery of financial information ordered herein

10    and other requests propounded to MGA, Mattel has not shown a compelling need for Larian's tax

      returns.

11

12    Storage Devices:  Request Nos. 222 and 224

13         In Request Nos. 222 and 224, Mattel seeks digital storage devices and documents relating

14    to digital storage devices used by Larian to create, prepare, generate, copy, transmit, receive,

15    delete or modify digital information relating to Bratz, Angel, or Bryant.  Mattel contends that a

16    request for documents under Rule 34, Fed.R.Civ.P., operates as a request for documents stored in

17    electronic form.  Mattel also contends that Rule 34 permits a party to obtain and test computer

18    hard drives and other storage devices.

19         Larian contends that the requests are overbroad, unduly burdensome, duplicative, and

20    ignore his privilege and privacy interests.  Larian also objects to an inspection of his actual hard

21    drives or other storage devices based upon the Committee Note to Rule 34, Fed.R.Civ.P., which

22    states that the amendment of Rule 34 relating to "electronically stored information is not meant to

23    create a routine right of direct access to a party's electronic information system."  See

24    Fed.R.Civ.P. 34(a)(1), 2006 Adv. Comm. Notes.  Larian contends that there is no justification for

25    an inspection of his electronic devices because there is no allegation that he improperly deleted

26    documents.

27         Mattel's motion to compel documents responsive to Request Nos. 222 and 224 is denied.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___3___

PAGE ___48___

16

With respect to Request No. 222, Larian correctly notes that Rule 34 was not intended to authorize the routine production of a party's electronic devices.  Mattel attempts to justify Request No. 222 by pointing to various instances of alleged destruction of evidence.  See Mattel's Consolidated Separate Statement at pp. 203-204 (purported destruction of Larian's computer laptops; "wiping" information from the hard drives of Larian's computer laptops every six months; redacting "Barbie Collectibles" from a faxed version of Bryant's Bratz agreement; and destructive testing of Bryant's original Bratz drawings).  However, Mattel fails to explain how these alleged instances of evidence destruction justify Request No. 222, other than to assert that it has a right to inspect Larian's storage devices to ensure that relevant information has not been deleted or permanently destroyed.  Mattel's stated purpose suggests instead that Mattel is launching a fishing expedition in pursuit of new claims, which is not permitted by the Federal Rules of Civil Procedure.  See e.g. Rivera v. NIBCO, Inc., supra.  Furthermore, Mattel's stated purpose for inspecting Larian's storage devices does not justify the breadth of Request No. 222.  Among other things, Request No. 222 encompasses every storage device that Larian has used to copy digital information relating to Bratz.  Mattel does not need every CD and DVD containing copies of Bratz-related video and audio content, but that is what the request seeks.

Request No. 222 is also duplicative because it requests information that is sought in numerous other requests served on Larian as well as MGA.  Mattel has served hundreds of requests for documents and communications relating to Bratz, Angel, and Bryant.  To comply with the requests, Larian was required to search for documents in both hard-copy and electronic form.  Under the circumstances, it is unnecessary for Larian to also produce the requested storage devices.

Documents responsive to Request No. 224 are minimally relevant (if at all) to the claims and defenses in the case, and therefore do not justify the burden of production on Larian.

Bryant's Storage Devices:  Request Nos. 225, 227 and 228

In Request Nos. 225, 227 and 228, Mattel seeks digital storage devices and documents relating to digital storage devices used by Bryant to create, prepare, generate, copy, transmit,

EXHIBIT ___3___

PAGE ___49___

17

1   receive, delete or modify digital information relating to Bratz, Angel, or MGA.

2        Larian contends that the requests are improperly directed to him because he does not have

3   personal possession of Bryant's hard drive or storage devices, or other information about those

4   devices. Mattel's Consolidated Separate Statement at p. 206. Larian also contends that the

5   requests are overbroad and unduly burdensome for the reasons discussed above in connection

6   with Request Nos. 222 and 224.

7        Mattel's motion to compel documents responsive to Request Nos. 225, 227 and 228 is

8   denied for the reasons already discussed in connection with Request Nos. 222 and 224.

9   MGA Hong Kong and MGA Mexico:  Request Nos. 272 and 273

10       In Request Nos. 272 and 273, Mattel seeks documents relating to the ownership of MGA

11  Entertainment HK Ltd. ("MGA Hong Kong") and MGAE de Mexico S.r.l. de C.V. ("MGA

12  Mexico"), both of which are named defendants. In his supplemental responses, Larian agrees to

13  produce documents sufficient to show the ownership of these entities.

14       Mattel contends that the requests seek information relevant to refute MGA Mexico's

15  personal jurisdiction defense, and which bear on whether the acts of Larian and others are

16  attributable to the entities. Mattel also contends that Larian's (or MGA's ) ownership interest in

17  these companies is relevant to net worth. Mattel contends that Larian's supplemental response is

18  inadequate because it would allow Larian to withhold contradictory information and conceal the

19  true ownership of the business entities. Furthermore, Mattel contends that it is entitled to know

20  the ownership of these entities at times when different allegedly wrongful acts took place and to

21  determine if the ownership structure changed as a means of concealing assets or concealing the

22  payments of commercial bribes.

23       Larian contends that these requests should not be made to him, but to the entities

24  themselves or to MGA. Further, Larian contends that the requests are duplicative of a request

25  Mattel served on MGA Mexico, another request served on MGA Hong Kong, and another request

26  served on MGA. Moreover, Larian contends that the requests are overbroad and unduly

27  burdensome, and that at most, he should only have to produce a list of owners.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___3___

PAGE ___50___

18

1   Mattel contends that Larian cannot avoid his duty to respond to these requests simply by

2   saying that the information is obtainable from another source.  Further, Mattel contends that

3   Larian has failed to establish that the requests are unduly burdensome.

4   Mattel's motion to compel documents responsive to Request Nos. 272-273 is denied

5   pursuant to Rule 26(b)(2), Fed.R.Civ.P., because the requested information is clearly obtainable

6   from another source that is more convenient, less burdensome, or less expensive, namely MGA

7   Mexico and MGA Hong Kong.  The requests are also overbroad and unduly burdensome.

8                                   IV. CONCLUSION

9   For the reasons set forth above, it is hereby ordered as follows:

10      1.      At meet and confer sessions held after the filing of this motion, Larian agreed to

    produce documents in response to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-

11  146, 213, 221 and 223.  Accordingly, Larian shall produce, without limitation, all non-privileged

12  documents that are responsive to these Requests.

13      2.      With respect to the remaining requests that are at issue in this motion, Larian shall:

14          A.      produce, without limitation, all non-privileged documents that are

15  responsive to Request Nos.  79, 180, 198 (for the time period 1999-2005), 207, 208 and

16  269; and

17          B.      produce, in accordance with his supplemental responses, non-privileged

18  documents that are responsive to Request Nos. 80, 81, 113-115, 123-125, 179, 181 and

19  209.

20          C.      Larian may produce documents responsive to Request Nos. 179, 180 and

21  181 in redacted form as provided herein.

22          D.      Mattel's motion is denied as to Request No. 178, 190-192, 194-197, 199,

23  209, 222, 224, 225, 227, 228, 272 and 273.

24      3.      Larian shall produce all non-privileged documents that are required by this Order

25  that are in his possession, custody or control and that have not already been produced no later

26  than January 11, 2008.

27      4.      Larian shall produce a privilege log no later than January 15, 2008.

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT _____3_____

PAGE _____51_____

19

1      5.     Mattel's request for sanctions is denied.

2         Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

3 Master, Mattel shall file this Order with the Clerk of Court forthwith.

4

5 Dated: December 31, 2007

                         HON. EDWARD A. INFANTE (Ret.)

6                             Discovery Master

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT ___3___

PAGE ___52___

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 2, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY ISAAC LARIAN; DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 2, 2008, at San Francisco, California.

_____
                        Sandra Chan

EXHIBIT ___3___

PAGE ___53___

**Exhibit 4**

CER...FIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL, )
)
PLAINTIFF, )
)
V. )       NO. CV 04-9040 SGL (RNBX)
)
MATTEL, INC., A DELAWARE )
CORPORATION, )
              DEFENDANT. )
_____ )
)
AND CONSOLIDATED ACTION(S). )
_____ )

**C O N F I D E N T I A L**
**FOR ATTORNEYS EYES ONLY**

**DEPOSITION OF LISA TONNU**

**VOLUME I**

**JULY 19, 2007**



COURT REPORTERS
700 S. Flower Street
Suite 1100
Los Angeles, California 90017
Office: (213) 955-0070
Fax: (213) 955-0077

REPORTED BY:
APRIL PRAXMARER
CSR NO. 12437
JOB NO. 07AE487-AC

EXHIBIT ____
PAGE ____ 54

| | | |
|---|---|---|
| 1 | /// | 10:02:25 |
| 2 | LISA TONNU, | 10:02:25 |
| 3 | HAVING BEEN FIRST DULY AFFIRMED BY THE REPORTER, WAS | 10:02:25 |
| 4 | EXAMINED AND TESTIFIED AS FOLLOWS: | 10:02:25 |
| 5 | | 10:02:25 |
| 6 | EXAMINATION | 10:02:25 |
| 7 | BY MR. COREY: | 10:02:35 |
| 8 |     Q    GOOD MORNING, MS. TONNU.  IS THAT -- IS THAT | 10:02:35 |
| 9 | HOW YOU SAY YOUR NAME? | 10:02:39 |
| 10 |     A    YES. | 10:02:42 |
| 11 |     Q    TONNU? | 10:02:43 |
| 12 |     A    TONNU. | 10:02:44 |
| 13 |     Q    TONNU.  I'LL TRY AND GET THAT RIGHT. | 10:02:46 |
| 14 |     HAVE YOU EVER HAD YOUR DEPOSITION TAKEN | 10:02:49 |
| 15 | BEFORE? | 10:02:50 |
| 16 |     A    NO. | 10:02:51 |
| 17 |     Q    I'M SURE YOUR COUNSEL HAS TALKED TO YOU A | 10:02:51 |
| 18 | LITTLE BIT ABOUT DEPOSITIONS, BUT JUST TO MAKE SURE | 10:02:56 |
| 19 | WE'RE ALL ON THE SAME PAGE, WE'RE GOING TO GO OVER | 10:02:59 |
| 20 | SOME -- A COUPLE OF GROUND RULES. | 10:03:02 |
| 21 |     DO YOU UNDERSTAND THAT THE COURT REPORTER | 10:03:03 |
| 22 | SEATED TO YOUR RIGHT IS TAKING DOWN EVERYTHING THAT | 10:03:04 |
| 23 | EVERYONE IN THE ROOM SAYS? | 10:03:07 |
| 24 |     A    YES. | 10:03:07 |
| 25 |     Q    DO YOU UNDERSTAND THAT SHE WILL PREPARE A | 10:03:08 |

EXHIBIT ___4___

PAGE ___55___

7

| | | |
|---|---|---|
| 1 | Q.   AND HOW -- HOW DO YOU KNOW WHAT THE CORPORATE | 11:21:23 |
| 2 | ORGANIZATION OF MGA AND ITS SUBSIDIARIES IS? | 11:21:35 |
| 3 | A    I HAVE BEEN MAINTAINING THE STRUCTURE, | 11:21:38 |
| 4 | CORPORATE STRUCTURE, SINCE JOINING THE COMPANY. | 11:21:40 |
| 5 | Q    WHAT DO YOU MEAN, "MAINTAINING THE CORPORATE | 11:21:43 |
| 6 | STRUCTURE"? | 11:21:46 |
| 7 | A    THE ACTUAL PRESENTATION, THE ORGANIZATION | 11:21:46 |
| 8 | CHART. | 11:21:51 |
| 9 | Q    YOU KEEP TRACK -- YOU'RE RESPONSIBLE FOR THE | 11:21:51 |
| 10 | ORGANIZATIONAL CHART AND MAKING SURE IT'S UP-TO-DATE? | 11:21:54 |
| 11 | A    CORRECT. | 11:21:57 |
| 12 | Q    AND THEN YOU'VE GOT -- ALL RIGHT.  LET'S JUST | 11:21:57 |
| 13 | GO THROUGH THIS VERY -- LET'S JUST GO THROUGH THIS. | 11:22:17 |
| 14 | YOU'VE GOT MGA ENTERTAINMENT? | 11:22:20 |
| 15 | MR. JENAL:  SORRY, JON.  I JUST NEED TO | 11:22:23 |
| 16 | INTERJECT. | 11:22:24 |
| 17 | GIVEN THAT WE'RE GOING TO GO INTO THE DETAILS | 11:22:24 |
| 18 | ON THIS CHART, WE'LL DESIGNATE AT LEAST THIS PORTION OF | 11:22:27 |
| 19 | THE TESTIMONY ATTORNEYS' EYES.  THERE MAY BE OTHER | 11:22:30 |
| 20 | SECTIONS AS WELL, BUT CERTAINLY THIS PART. | 11:22:33 |
| 21 | MR. COREY:  OKAY.  AND I ASSUME, THEN, YOU'RE | 11:22:38 |
| 22 | DESIGNATING THIS -- | 11:22:40 |
| 23 | MR. JENAL:  CORRECT. | 11:22:41 |
| 24 | MR. COREY:  -- EXHIBIT 515 AS ATTORNEYS EYES | 11:22:41 |
| 25 | ONLY AS WELL? | 11:22:44 |

EXHIBIT ____4____

PAGE ____56____

48

| | | |
|---|---|---|
| 1 | MR. JENAL:  CORRECT. | 11:22:46 |
| 2 | BY MR. COREY: | 11:22:46 |
| 3 | Q    YOU'VE GOT MG -- MGA ENTERTAINMENT, INC. | 11:22:46 |
| 4 | IS THERE A -- IS THERE A HOLDING COMPANY | 11:22:52 |
| 5 | ABOVE MGA ENTERTAINMENT, INC.? | 11:22:53 |
| 6 | A    NO. | 11:22:58 |
| 7 | Q    JUST SHAREHOLDERS? | 11:22:58 |
| 8 | A    YES. | 11:22:59 |
| 9 | Q    ONE SHAREHOLDER?  HOW MANY SHAREHOLDERS ARE | 11:22:59 |
| 10 | THERE? | 11:23:03 |
| 11 | A    THERE ARE TWO SHAREHOLDERS. | 11:23:04 |
| 12 | Q    AND WHO ARE THEY? | 11:23:05 |
| 13 | A    MR. ISAAC LARIAN AND MR. ELI MAKABI. | 11:23:07 |
| 14 | Q    DID YOU SAY ELI? | 11:23:14 |
| 15 | A    ELI, E-L-I.  HIS -- I THINK -- I BELIEVE HIS | 11:23:16 |
| 16 | LEGAL NAME IS JAHANGIR MAKABI. | 11:23:22 |
| 17 | Q    CAN YOU SPELL THAT? | 11:23:24 |
| 18 | A    J-A-H-A-N-G-I-R. | 11:23:25 |
| 19 | Q    AND HOW DO YOU PRONOUNCE THAT? | 11:23:31 |
| 20 | A    JAHANGIR. | 11:23:34 |
| 21 | Q    JAHANGIR. | 11:23:35 |
| 22 | AND ARE THEY -- ARE THEY SHAREHOLDERS | 11:23:39 |
| 23 | INDIVIDUALLY, OR ARE THOSE THROUGH TRUSTS OR SOMETHING | 11:23:42 |
| 24 | LIKE THAT? | 11:23:45 |
| 25 | A    THEY'RE HELD THROUGH TRUSTS. | 11:23:45 |

EXHIBIT 4

PAGE 57

49

| | | |
|---|---|---|
| 1 | Q    OKAY.  AND DO YOU KNOW WHAT THE PERCENTAGE OF | 11:23:47 |
| 2 | SHARE OWNERSHIP IS BETWEEN THE TWO? | 11:23:51 |
| 3 | A    YES. | 11:23:54 |
| 4 | Q    WHAT IS THAT? | 11:23:54 |
| 5 | A    MR. ISAAC LARIAN HAS 81.82 AND MR. MAKABI HAS | 11:23:55 |
| 6 | THE REMAINDER. | 11:24:03 |
| 7 | Q    WHEN YOU SAY -- 81.82? | 11:24:04 |
| 8 | A    CORRECT.  PERCENT. | 11:24:07 |
| 9 | 18.18. | 11:24:15 |
| 10 | Q    AND THAT'S CURRENTLY.  HOW LONG HAS THAT | 11:24:16 |
| 11 | BEEN -- HAS THAT DIVISION OF SHARES BEEN LIKE THAT? | 11:24:20 |
| 12 | A    DIVISION OF SHARES HAS BEEN LIKE THAT SINCE | 11:24:22 |
| 13 | 2002. | 11:24:28 |
| 14 | Q    AND PRIOR TO 2002, WHAT WAS IT? | 11:24:28 |
| 15 | A    PRIOR TO 2002, IT WAS 90/10. | 11:24:36 |
| 16 | Q    BETWEEN MR. LARIAN AND MR. MAKABI? | 11:24:43 |
| 17 | A    CORRECT. | 11:24:49 |
| 18 | Q    AND DO YOU KNOW WHY THAT CHANGED? | 11:24:50 |
| 19 | A    I DO NOT KNOW WHY. | 11:24:55 |
| 20 | Q    WHO WOULD KNOW WHY THE SHARE DIVISION | 11:24:57 |
| 21 | CHANGED? | 11:25:01 |
| 22 | A    I DO NOT KNOW. | 11:25:01 |
| 23 | Q    WELL, PRESUMABLY MR. LARIAN OR MR. MAKABI MAY | 11:25:02 |
| 24 | KNOW. | 11:25:07 |
| 25 | A    YES. | 11:25:07 |

EXHIBIT _____4_____

PAGE _____58_____

50

| | | |
|---|---|---|
| 1 | Q    WOULD MR. WING? | 11:25:08 |
| 2 | A    KNOW?  IS THAT YOUR QUESTION? | 11:25:14 |
| 3 | Q    WOULD HE KNOW, YES. | 11:25:16 |
| 4 | A    YES.  I DO NOT KNOW IF HE WOULD KNOW. | 11:25:17 |
| 5 | Q    AND HOW LONG WAS IT 90/10? | 11:25:19 |
| 6 | A    PRIOR TO THAT, IT WAS A DIFFERENT OWNERSHIP. | 11:25:23 |
| 7 | PRIOR TO THE 90/10, THERE WAS A DIFFERENT OWNERSHIP. | 11:25:29 |
| 8 | Q    AND MR. -- MR. LARIAN ACQUIRED THE COMPANY, | 11:25:33 |
| 9 | IS THAT WHAT YOU'RE SAYING? | 11:25:35 |
| 10 | A    NO.  PRIOR TO THAT, MR. LARIAN HAD A | 11:25:36 |
| 11 | DIFFERENT OWNERSHIP AMOUNT. | 11:25:39 |
| 12 | Q    PERCENTAGE? | 11:25:41 |
| 13 | A    PERCENTAGE. | 11:25:41 |
| 14 | Q    OKAY.  HOW LONG -- AND HOW LONG WAS IT 90/10? | 11:25:41 |
| 15 | A    IT WAS 90/10 BETWEEN 2000 TO 2002. | 11:25:43 |
| 16 | Q    AND IN 2000 OR PRIOR TO 2000, WHAT WAS IT? | 11:25:48 |
| 17 | A    IT WAS 45 PERCENT WAS HELD BY MR. ISAAC | 11:25:58 |
| 18 | LARIAN; 45 HELD BY FAHAD LARIAN, FRED LARIAN, AND | 11:26:01 |
| 19 | 10 PERCENT WAS OWNED BY MR. MAKABI. | 11:26:09 |
| 20 | Q    DID ISAAC LARIAN ACQUIRE FRED LARIAN'S | 11:26:18 |
| 21 | OWNERSHIP INTEREST? | 11:26:32 |
| 22 | A    YES. | 11:26:33 |
| 23 | Q    AND THAT HAPPENED IN 2000? | 11:26:33 |
| 24 | A    THAT HAPPENED IN 2000. | 11:26:36 |
| 25 | Q    WHEN YOU WERE AT ERNST & YOUNG, WERE YOU -- | 11:26:42 |

EXHIBIT _____4_____

PAGE _____59_____

| | | |
|---|---|---|
| 1 | WERE YOU PROVIDING TAX ADVICE TO MGA ENTERTAINMENT | 11:26:48 |
| 2 | BEFORE YOU JOINED THEM? | 11:26:52 |
| 3 | A    NO. | 11:26:53 |
| 4 | Q    HOW LONG WAS THE OWNERSHIP OF MGA | 11:26:53 |
| 5 | ENTERTAINMENT, INC. 45/45/10? | 11:26:59 |
| 6 | MR. JENAL:  UP THROUGH OR BACK TO JANUARY 1, | 11:27:03 |
| 7 | 1999, THE TOPIC? | 11:27:05 |
| 8 | MR. COREY:  THAT'S FINE. | 11:27:10 |
| 9 | THE WITNESS:  I'M AWARE THAT FROM '99 TO 2000 | 11:27:12 |
| 10 | IT WAS 45/45/10. | 11:27:15 |
| 11 | BY MR. COREY: | 11:27:17 |
| 12 | Q    DO YOU KNOW WHAT IT WAS PRIOR TO '99? | 11:27:18 |
| 13 | MR. JENAL:  OBJECTION.  SCOPE.  CALLS FOR | 11:27:32 |
| 14 | SPECULATION. | 11:27:34 |
| 15 | THE WITNESS:  I DO NOT KNOW. | 11:27:35 |
| 16 | BY MR. COREY: | 11:27:37 |
| 17 | Q    NOW, OTHER THAN WHAT I ASSUME ARE PERSONAL | 11:27:37 |
| 18 | TRUSTS, THERE ARE NO OTHER COMPANIES BETWEEN MR. LARIAN | 11:27:58 |
| 19 | AND MGA ENTERTAINMENT, INC.? | 11:28:03 |
| 20 | A    NO. | 11:28:05 |
| 21 | Q    AND MR. MAKABI AND MGA ENTERTAINMENT, INC.? | 11:28:05 |
| 22 | A    NO. | 11:28:10 |
| 23 | Q    DO YOU HAVE ANY RESPONSIBILITY FOR THE | 11:28:11 |
| 24 | TRUSTS? | 11:28:15 |
| 25 | MR. JENAL:  THAT'S A "YES" OR "NO" QUESTION. | 11:28:20 |

EXHIBIT ___9___

PAGE ___60___

52

| | | |
|---|---|---|
| 1 | THE WITNESS:  WHAT DO YOU MEAN BY | 11:28:20 |
| 2 | "RESPONSIBILITY"? | 11:28:20 |
| 3 | BY MR. COREY: | 11:28:20 |
| 4 | Q    WELL, YOU'RE AN EMPLOYEE OF MGA | 11:28:20 |
| 5 | ENTERTAINMENT, INC.? | 11:28:22 |
| 6 | A    THAT'S CORRECT. | 11:28:23 |
| 7 | Q    AND LET ME -- LET ME TAKE IT BACK -- LET ME | 11:28:25 |
| 8 | TAKE YOU BACK A LITTLE BIT. | 11:28:31 |
| 9 | DO YOU PROVIDE ANY SERVICES TO MR. LARIAN | 11:28:33 |
| 10 | PERSONALLY WITH RESPECT TO THIS TAXATION? | 11:28:38 |
| 11 | A    YES. | 11:28:39 |
| 12 | Q    OKAY.  SO YOU HAVE RESPONSIBILITY FOR | 11:28:39 |
| 13 | PREPARING HIS TAX RETURNS FOR THE TRUSTS? | 11:28:43 |
| 14 | A    I DO NOT PREPARE THEM. | 11:28:44 |
| 15 | Q    WHAT ROLE DO YOU PLAY IN -- WELL, LET'S JUST | 11:28:46 |
| 16 | DO IT LIKE THIS: | 11:28:51 |
| 17 | HOW MANY TRUSTS FOR MR. LARIAN DO YOU HAVE | 11:28:52 |
| 18 | RESPONSIBILITY FOR? | 11:28:56 |
| 19 | MR. JENAL:  I'M GOING TO OBJECT.  FIRST OF | 11:28:56 |
| 20 | ALL, IT'S OUTSIDE THE SCOPE.  SECOND OF ALL, THE | 11:28:58 |
| 21 | STRUCTURING OF MR. LARIAN'S PERSONAL FINANCES IS NOT AT | 11:29:02 |
| 22 | ISSUE HERE AND MAY CALL FOR PRIVILEGED COMMUNICATIONS | 11:29:06 |
| 23 | WITH REGARDS TO ATTORNEYS INVOLVED WITH THAT. | 11:29:09 |
| 24 | SO I'LL -- YOU CAN ASK A "YES" OR "NO" | 11:29:14 |
| 25 | QUESTION AS TO WHETHER SHE WAS INVOLVEMENT WITH THAT, | 11:29:16 |

EXHIBIT ___4___

PAGE ___61___

53

| | | |
|---|---|---|
| 1 | BUT WE'RE GOING TO OBJECT ON PRIVILEGE AND PRIVACY | 11:29:19 |
| 2 | GROUNDS BOTH FOR QUESTIONS AS TO WHAT SHE MAY HAVE | 11:29:23 |
| 3 | DONE, ET CETERA, ON THAT. | 11:29:27 |
| 4 | SO CAN WE HAVE THE QUESTION BACK AND SEE IF | 11:29:31 |
| 5 | IT'S A "YES" OR "NO" ANSWER. | 11:29:33 |
| 6 | (RECORD READ.) | 11:29:47 |
| 7 | MR. JENAL:  I'M GOING TO INSTRUCT THE WITNESS | 11:29:48 |
| 8 | NOT TO ANSWER THAT QUESTION. | 11:29:50 |
| 9 | MR. COREY:  ON WHAT GROUNDS? | 11:29:52 |
| 10 | MR. JENAL:  ON THE GROUNDS JUST CITED FOR | 11:29:53 |
| 11 | BOTH PRIVILEGE AND PRIVACY.  AND OUTSIDE THE SCOPE, FOR | 11:29:55 |
| 12 | THAT MATTER. | 11:29:59 |
| 13 | BY MR. COREY: | 11:30:00 |
| 14 | Q    ARE YOU GOING TO FOLLOW YOUR COUNSEL'S | 11:30:00 |
| 15 | INSTRUCTION? | 11:30:03 |
| 16 | A    YES. | 11:30:03 |
| 17 | Q    IS THERE ONE TRUST THAT HOLDS THE SHARES FOR | 11:30:04 |
| 18 | MR. LARIAN IN MGA ENTERTAINMENT, INC.? | 11:30:14 |
| 19 | MR. JENAL:  SAME OBJECTIONS; SAME | 11:30:18 |
| 20 | INSTRUCTION. | 11:30:20 |
| 21 | MR. COREY:  IT'S A "YES" OR "NO" QUESTION. | 11:30:21 |
| 22 | MR. JENAL:  SAME OBJECTION; SAME INSTRUCTION. | 11:30:23 |
| 23 | BY MR. COREY: | 11:30:26 |
| 24 | Q    ARE YOU GOING FOLLOW YOUR COUNSEL'S | 11:30:26 |
| 25 | INSTRUCTION? | 11:30:28 |

EXHIBIT ___4___

PAGE ___62___

54

STATE OF CALIFORNIA        )
                           )   SS.
COUNTY OF LOS ANGELES      )


    I, APRIL CRUZ CACULITAN, CSR 12437, IN AND FOR THE

STATE OF CALIFORNIA, DO HEREBY CERTIFY;

    THAT, PRIOR TO BEING EXAMINED, THE DEPONENT NAMED

IN THE FOREGOING DEPOSITION WAS BY ME DULY SWORN TO

TESTIFY THE TRUTH, THE WHOLE TRUTH AND NOTHING BUT THE

TRUTH;

    THAT SAID DEPOSITION WAS TAKEN DOWN BY ME IN

SHORTHAND AT THE TIME AND PLACE THEREIN NAMED, AND

THEREAFTER REDUCED TO TYPEWRITING UNDER MY DIRECTION,

AND THE SAME IS A TRUE, CORRECT AND COMPLETE TRANSCRIPT

OF SAID PROCEEDINGS;

    I FURTHER CERTIFY THAT I AM NOT INTERESTED IN THE

EVENT OF THE ACTION.

    WITNESS MY HAND THIS _____2_____ DAY OF

_____August_____, 2007.



                         CERTIFIED SHORTHAND

                         REPORTER FOR THE

                         STATE OF CALIFORNIA


        EXHIBIT ___4_____
        PAGE _____63_____

⌐ERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT,  AN INDIVIDUAL,  )
                                )
              PLAINTIFF,         )
                                )
       V.                       )      NO.  CV 04-9040  SGL (RNBX)
                                )
MATTEL, INC., A DELAWARE        )
CORPORATION,                    )
                                )
            DEFENDANTS.          )
————————————————————————————————)
                                )
AND CONSOLIDATED ACTION (S).    )
                                )

# C O N F I D E N T I A L

### ATTORNEYS' EYES ONLY

## DEPOSITION OF LISA TONNU

## VOLUME II

## SEPTEMBER 24, 2007



REPORTED BY:
J'ANA SIEGERS
CSR NO.  10845
JOB NO. 07AE614-JS

515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT ___4___

PAGE ___64___

10:08:25    1          THE VIDEOGRAPHER: AND YOU MAY SWEAR IN

10:08:25    2   THE WITNESS.

        3                 - - -

        4              LISA TONNU,

        5        HAVING BEEN FIRST DULY AFFIRMED

        6         BY THE REPORTER, WAS EXAMINED,

        7          AND TESTIFIED AS FOLLOWS:

        8                 - - -

        9         DEPOSITION OFFICER: PLEASE RAISE YOUR

      10   RIGHT HAND.

      11          DO YOU SOLEMNLY SWEAR OR AFFIRM THAT THE

      12   TESTIMONY YOU ARE ABOUT TO GIVE IN THIS DEPOSITION

      13   SHALL BE THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT

      14   THE TRUTH?

10:08:37   15         THE DEPONENT: YES.

      16                 - - -

      17          FURTHER EXAMINATION

10:08:37   18   BY MR. COREY:

10:08:39   19      Q.   GOOD MORNING, MS. TONNU. HOW ARE YOU?

10:08:41   20      A.   GOOD.  THANK YOU.

10:08:44   21      Q.   WE'VE BEEN THROUGH THIS BEFORE.  JUST A

10:08:45   22   COUPLE OF QUICK QUESTIONS.

10:08:47   23         DO YOU UNDERSTAND THAT THE OATH THAT YOU

10:08:48   24   JUST TOOK IS THE SAME OATH THAT YOU WOULD TAKE AS IF

10:08:51   25   YOU WERE TESTIFYING IN A COURT OF LAW?

EXHIBIT 4

PAGE 65

246

| | | |
|---|---|---|
| 02:00:50 | 1 | SHAREHOLDERS AFTER DECEMBER 31ST, 2006? |
| 02:00:53 | 2 | A.   YES. |
| 02:00:55 | 3 | Q.   AND DO YOU KNOW HOW MUCH THEY WERE? |
| 02:00:57 | 4 | A.   I DO NOT RECALL THE AMOUNT. |
| 02:00:58 | 5 | Q.   DO YOU HAVE AN ESTIMATE? |
| 02:01:04 | 6 | MS. MORGENTHALER LEVER:   CALLS FOR |
| 02:01:04 | 7 | SPECULATION.   LACK OF FOUNDATION.   OUTSIDE THE |
| 02:01:07 | 8 | SCOPE. |
| 02:01:09 | 9 | CAUTION THE WITNESS NOT TO GUESS. |
| 02:01:14 | 10 | THE DEPONENT:   I CANNOT RECALL. |
| 02:01:14 | 11 | BY MR. COREY: |
| 02:01:15 | 12 | Q.   HOW MANY DISTRIBUTIONS HAVE THERE BEEN? |
| 02:01:19 | 13 | MS. MORGENTHALER LEVER:   SAME OBJECTIONS. |
| 02:01:22 | 14 | THE DEPONENT:   ONE THAT I'M AWARE OF. |
| 02:01:23 | 15 | BY MR. COREY: |
| 02:01:24 | 16 | Q.   WHEN DID THAT TAKE PLACE? |
| 02:01:28 | 17 | MS. MORGENTHALER LEVER:   SAME OBJECTIONS. |
| 02:01:31 | 18 | THE DEPONENT:   IT WAS SOMETIME DURING THE |
| 02:01:33 | 19 | FIRST QUARTER OF THIS YEAR. |
| 02:01:38 | 20 | BY MR. COREY: |
| 02:01:42 | 21 | Q.   DO YOU KNOW WHY THAT DISTRIBUTION WAS |
| 02:01:44 | 22 | MADE? |
| 02:01:44 | 23 | MS. MORGENTHALER LEVER:   OBJECTION.   CALLS |
| 02:01:44 | 24 | FOR SPECULATION.   OUTSIDE THE SCOPE.   LACK OF |
| 02:01:48 | 25 | FOUNDATION.   AND ALSO CAUTION THE WITNESS NOT TO |

EXHIBIT 4

PAGE 66

362

| | | |
|---|---|---|
| 02:01:54 | 1 | DIVULGE ANY INFORMATION THAT DERIVES SOLELY FROM |
| 02:01:57 | 2 | ATTORNEY-CLIENT COMMUNICATIONS. |
| 02:02:01 | 3 | THE DEPONENT:  FOR TAX PAYMENTS. |
| 02:02:05 | 4 | BY MR. COREY: |
| 02:02:15 | 5 | Q.   DO YOU CALCULATE THE AMOUNT OF TAX OWED? |
| 02:02:18 | 6 | A.   NO. |
| 02:02:19 | 7 | Q.   DOES SOMEONE IN YOUR DEPARTMENT? |
| 02:02:21 | 8 | A.   NO. |
| 02:02:22 | 9 | Q.   WHO DOES THAT? |
| 02:02:26 | 10 | A.   A THIRD-PARTY ACCOUNTING FIRM. |
| 02:02:28 | 11 | Q.   YOUR OUTSIDE ACCOUNTANTS? |
| 02:02:32 | 12 | A.   MR. LARIAN'S AND MR. MAKABI'S OUTSIDE |
| 02:02:36 | 13 | ACCOUNTANTS. |
| 02:02:37 | 14 | Q.   MR. LARIAN'S AND MR. MAKABI'S OUTSIDE |
| 02:02:40 | 15 | ACCOUNTANTS CALCULATE THE TAXES THAT THEY OWE BASED |
| 02:02:45 | 16 | ON THE PERFORMANCE OF MGA ENTERTAINMENT AND ITS |
| 02:02:50 | 17 | SUBSIDIARIES? |
| 02:02:54 | 18 | MS. MORGENTHALER LEVER:  OBJECTION.  VAGUE |
| 02:02:55 | 19 | AND AMBIGUOUS.  OUTSIDE THE SCOPE. |
| 02:03:00 | 20 | THE DEPONENT:  YES. |
| 02:03:01 | 21 | BY MR. COREY: |
| 02:03:04 | 22 | Q.   AND THEN DOES -- I KNOW MGA HAS AN |
| 02:03:10 | 23 | INTERNAL TAX DEPARTMENT THAT YOU'RE THE HEAD OF, |
| 02:03:15 | 24 | RIGHT? |
| 02:03:15 | 25 | A.   YES. |

EXHIBIT __4__

PAGE __67__

363

| | | |
|---|---|---|
| 02:03:15 | 1 | Q.    OKAY.    AND DOES MGA ITSELF HAVE SEPARATE |
| 02:03:21 | 2 | OUTSIDE TAX ACCOUNTANTS? |
| 02:03:22 | 3 | A.    YES. |
| 02:03:32 | 4 | Q.    AND WHO ARE MGA'S TAX ACCOUNTANTS? |
| 02:03:35 | 5 | A.    ERNST & YOUNG. |
| 02:03:39 | 6 | Q.    AND WHO'S MR. LARIAN'S TAX ACCOUNTANT? |
| 02:03:42 | 7 | MS. MORGENTHALER LEVER:    OBJECTION. |
| 02:03:44 | 8 | VIOLATES RIGHT TO FINANCIAL PRIVACY. |
| 02:03:48 | 9 | IF YOU KNOW. |
| 02:03:49 | 10 | THE DEPONENT:    MOSS ADAMS. |
| 02:03:52 | 11 | BY MR. COREY: |
| 02:03:53 | 12 | Q.    ANYONE ELSE? |
| 02:03:56 | 13 | MS. MORGENTHALER LEVER:    OBJECTION.    CALLS |
| 02:03:56 | 14 | FOR SPECULATION.    ASKED AND ANSWERED.    LACK OF |
| 02:04:00 | 15 | FOUNDATION.    OUTSIDE THE SCOPE. |
| 02:04:04 | 16 | THE DEPONENT:    NOT THAT I'M AWARE OF. |
| 02:04:05 | 17 | BY MR. COREY: |
| 02:04:09 | 18 | Q.    DOES MGA HAVE TAX ACCOUNTANTS IN ADDITION |
| 02:04:13 | 19 | TO ERNST & YOUNG? |
| 02:04:14 | 20 | MS. MORGENTHALER LEVER:    OBJECTION.    ASKED |
| 02:04:15 | 21 | AND ANSWERED.    LACK OF FOUNDATION.    CALLS FOR |
| 02:04:18 | 22 | SPECULATION.    OUTSIDE THE SCOPE. |
| 02:04:22 | 23 | THE DEPONENT:    NO. |
| 02:04:22 | 24 | BY MR. COREY: |
| 02:04:30 | 25 | Q.    I CAN'T REMEMBER IF I ASKED YOU THIS OR |

EXHIBIT 4

PAGE 68

364

| | | |
|---|---|---|
| 02:04:32 | 1 | NOT: DO YOU KNOW -- LOOKING AT THE "STOCKHOLDERS' |
| 02:04:33 | 2 | EQUITY" LINE ITEM, $107,687,000, DO YOU KNOW WHETHER |
| 02:04:39 | 3 | THAT AMOUNT HAS INCREASED OR DECREASED IN THE |
| 02:04:41 | 4 | LAST -- EXCUSE ME -- SINCE DECEMBER 31ST, 2006? |
| 02:04:49 | 5 | MS. MORGENTHALER LEVER:  CALLS FOR |
| 02:04:49 | 6 | SPECULATION.  LACK OF FOUNDATION. |
| 02:04:51 | 7 | YOU CAN ANSWER. |
| 02:04:56 | 8 | THE DEPONENT:  DO I KNOW?  YES, I DO KNOW. |
| 02:04:58 | 9 | BY MR. COREY: |
| 02:05:00 | 10 | Q.   HOW HAS THAT BALANCE CHANGED? |
| 02:05:07 | 11 | A.   I BELIEVE THE AMOUNT HAS DECREASED BASED |
| 02:05:10 | 12 | ON UNAUDITED INFORMATION. |
| 02:05:13 | 13 | Q.   BASED ON? |
| 02:05:20 | 14 | A.   UNAUDITED INFORMATION. |
| 02:05:20 | 15 | Q.   WHAT ABOUT THE FINANCIAL STATEMENTS -- THE |
| 02:05:20 | 16 | PERIODIC FINANCIAL STATEMENTS THAT YOU RECEIVE SHOW |
| 02:05:21 | 17 | THAT THAT HAS GONE DOWN -- THAT -- EXCUSE ME -- THAT |
| 02:05:24 | 18 | THE STOCKHOLDERS' EQUITY BALANCE HAS GONE DOWN? |
| 02:05:30 | 19 | MS. MORGENTHALER LEVER:  OBJECTION.  CALLS |
| 02:05:30 | 20 | FOR SPECULATION.  LACK OF FOUNDATION.  VAGUE AND |
| 02:05:33 | 21 | AMBIGUOUS. |
| 02:05:33 | 22 | BY MR. COREY: |
| 02:05:37 | 23 | Q.   I'M JUST TRYING TO UNDERSTAND THE |
| 02:05:38 | 24 | QUALIFICATION THAT YOU PUT ON IT. |
| 02:05:39 | 25 | A.   YES.  THE QUARTERLY INFORMATION I |

EXHIBIT 4
PAGE 69

365

1          DEPOSITION OFFICER'S CERTIFICATE

2

3    STATE OF CALIFORNIA        )
                                )    SS.
4    COUNTY OF ORANGE           )

5

6         I, J'ANA SIEGERS, HEREBY CERTIFY:

7         I AM A DULY QUALIFIED CERTIFIED SHORTHAND

8    REPORTER IN THE STATE OF CALIFORNIA, HOLDER OF

9    CERTIFICATE NUMBER CSR 10845 ISSUED BY THE COURT

10   REPORTERS BOARD OF CALIFORNIA AND WHICH IS IN FULL

11   FORCE AND EFFECT.  [FED. R. DIV. P. 28(A)].

12        I AM AUTHORIZED TO ADMINISTER OATHS OR

13   AFFIRMATIONS PURSUANT TO CALIFORNIA CODE OF CIVIL

14   PROCEDURE, SECTION 2093(B) AND PRIOR TO BEING

15   EXAMINED, THE DEPONENT WAS FIRST DULY SWORN BY ME.

16   [FED. R. CIV. P. 28(A), 30(F)(1)].

17        I AM NOT A RELATIVE OR EMPLOYEE OR ATTORNEY OR

18   COUNSEL OF ANY OF THE PARTIES, NOR AM I A RELATIVE

19   OR EMPLOYEE OF SUCH ATTORNEY OR COUNSEL, NOR AM I

20   FINANCIALLY INTERESTED IN THIS ACTION.

21   [FED. R. CIV. P. 28].

22        I AM THE DEPOSITION OFFICER THAT

23   STENOGRAPHICALLY RECORDED THE TESTIMONY IN THE

24   FOREGOING DEPOSITION AND THE FOREGOING TRANSCRIPT IS

25   A TRUE RECORD OF THE TESTIMONY GIVEN BY THE

EXHIBIT ___4___
            ___70___                    503
PAGE _____

1  DEPONENT.   [FED. R. CIV. P. 30(F)(1)].

2      BEFORE COMPLETION OF THE DEPOSITION, REVIEW OF

3  THE TRANSCRIPT [X] WAS [ ] WAS NOT REQUESTED.  IF

4  REQUESTED, ANY CHANGES MADE BY THE DEPONENT (AND

5  PROVIDED TO THE REPORTER) DURING THE PERIOD ALLOWED

6  ARE APPENDED HERETO.  [FED. R. CIV. P. 30(E)].

7

8

9  DATED:  OCTOBER 7, 2007.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
                                    EXHIBIT _____4_____

                                    PAGE _____71_____          504

RECEIVED

NOV 1 3 2007

LAW OFFICES

CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP

10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000
FAX (310) 556-2920

DIRECT DIAL NUMBER
(310) 556-7852
EMAIL: SGIZEN@CHRISGLASE.COM

November 12, 2007

 TTT MERITAS LAW FIRMS WORLDWIDE

**VIA FACSIMILE AND U.S. MAIL**

Jon D. Corey, Esq.
QUINN, EMANUEL, URQUHART, OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

Re:  Carter Bryant v. Mattel, Inc. (and consolidated cases)
Case No. CV 04-9049 SGL (RNBx)

Dear Mr. Corey:

MGA Entertainment, Inc.'s Rule 30(b)(6) witness, Lisa Tonnu, has the following revisions to the transcript of her deposition taken on September 24, 2007 and September 25, 2007:

Page 256, line 2: "Jenna" should be "Jinna"
Page 316, line 10: "Kaye Schuler" should be "Kaye Scholer"
Page 322, line 6: "Yes" should be "Yes. Outside legal counsel were also involved"
Page 357, line 19: "Mandana" should be "Mondana"
Page 376, line 5: "No" should be "Yes"
Page 393, line 14: "target" should be "Targit"
Page 408, line 19: "target" should be "Targit"
Page 454, line 6: "six" should be "sixty"
Page 514, line 8: "Jenna" should be "Jinna"
Page 529, line 3: "Jim Jenal and Janet Jenal" should be "Jim Jenal"
Page 567, line 23: "other than confidential and" should be "that is confidential and"
Page 600, line 21: "Filenet" should be "File Keepers"
Page 618, line 14: "No" should be "Yes"
Page 618, line 22: "No" should be "Yes"
Page 619, line 1: "No" should be "Yes"
Page 619, line 12: "No" should be "Yes"
Page 620, line 1: "Filenet" should be "File Keepers"
Page 621, line 1: "Yes" should be "He did"
Page 621, lines 3-6 should read as follows: "Documents responsive to the requests were searched and collected"
Page 621, line 16: "No" should be "Yes"

606247

EXHIBIT  4

PAGE  72

Jon D. Corey, Esq.
November 12, 2007
Page 2

Page 621, line 21: "don't" should be deleted and "are being" should be "were"
Page 622, line 16: "No" should be "Yes.
Page 626, line 16: "target" should be "Targit"
Page 634, line 10: "target" should be "Targit"

In addition, the word "Filenet" should be "File Keepers" wherever it appears in the transcript, and the word "target" should be "Targit" wherever it appears in the transcript.

Please do not hesitate to contact me if you have questions regarding the foregoing.

Very truly yours,

Alisa Morgenthaler Lever
of CHRISTENSEN, GLASER, FINK, JACOBS,
WEIL & SHAPIRO, LLP

cc:    Patricia Glaser, Esq.
       Thomas Nolan, Esq.

60949

EXHIBIT    4
PAGE    73

**Exhibit 5**

CONSOLIDATED FINANCIAL STATEMENTS

MGA Entertainment, Inc.
Years Ended December 31, 2004 and 2003

EXHIBIT __5__

Confidential - Attorney's Eyes Only

PAGE __74__

MGA 0863888

MGA Entertainment, Inc.

Consolidated Financial Statements

Years Ended December 31, 2004 and 2003

### Contents

Report of Independent Auditors......................................................................................1

Consolidated Financial Statements

Consolidated Balance Sheets........................................................................................2
Consolidated Statements of Income............................................................................3
Consolidated Statements of Stockholders' Equity...................................................4
Consolidated Statements of Cash Flows....................................................................5
Notes to Consolidated Financial Statements............................................................6

EXHIBIT _____5_____

PAGE _____75_____

Confidential - Attorney's Eyes Only

MGA 0863889

≡Ⅱ **ERNST & YOUNG**

■ Ernst & Young LLP
Warner Center Tower 5
Suite 500
21800 Oxnard Street
Woodland Hills, California 91367-7534

■ Phone: (818) 703-4700
Fax:   (818) 703-4833
www.ey.com

Report of Independent Auditors

Board of Directors and Stockholders
MGA Entertainment, Inc.

We have audited the accompanying consolidated balance sheets of MGA Entertainment, Inc. (the Company) as of December 31, 2004 and 2003, and the related statements of income, stockholders' equity and cash flows for the years then ended. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audits.

We conducted our audits in accordance with auditing standards generally accepted in the United States. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. We were not engaged to perform an audit of the Company's internal control over financial reporting. Our audits included consideration of internal control over financial reporting as a basis for designing audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly, we express no such opinion. An audit also includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, and evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the consolidated financial statements present fairly, in all material respects, the financial position of the Company as of December 31, 2004 and 2003, and the results of its operations and its cash flows for the years then ended in conformity with accounting principles generally accepted in the United States.

*Ernst + Young LLP*

May 6, 2005

— A Member Practice of Ernst & Young Global

1

EXHIBIT ___5___

PAGE ___76___

**Confidential - Attorney's Eyes Only**

MGA 0863890

MGA Entertainment, Inc.

Consolidated Balance Sheets

| | December 31 | |
|---|---|---|
| | 2004 | 2003 |
| **Assets** | | |
| Current assets: | | |
| Cash and cash equivalents | $ | |
| Accounts receivable, net of allowances for doubtful accounts of $7,838,174 and $7,158,174, respectively | | |
| Inventories | | |
| Prepaid expenses and other current assets | | |
| Total current assets | | |
| | | |
| Property and equipment | | |
| Equipment | | |
| Leasehold improvements | | |
| | | |
| Accumulated depreciation and amortization | | |
| Property and equipment, net | | |
| | | |
| Other assets | | |
| Total assets | $ | |
| | | |
| **Liabilities and stockholders' equity** | | |
| Current liabilities: | | |
| Accounts payable | $ | |
| Accrued liabilities | | |
| Accrued discounts and allowances | | |
| Accrued royalties | | |
| Notes payable to related parties | | |
| Total current liabilities | | |
| | | |
| Deferred income tax liabilities | | |
| | | |
| Stockholders' equity | | |
| Common stock, no par value — authorized, 100,000,000 shares; issued and outstanding — 22,200,000 shares | | |
| Stockholder receivable | | |
| Retained earnings | | |
| Accumulated other comprehensive loss | | |
| Total stockholders' equity | | |
| Total liabilities and stockholders' equity | | |

*See accompanying notes.*

2

EXHIBIT ___5___

PAGE ___77___

Confidential - Attorney's Eyes Only

MGA 0863891

MGA Entertainment, Inc.

Consolidated Statements of Income

|  | Years Ended December 31, | |
|---|---|---|
|  | 2004 | 2003 |
| Net sales |  |  |
| Cost of sales |  |  |
| Gross profit |  |  |
|  |  |  |
| Operating expenses: |  |  |
| Sales and marketing |  |  |
| General and administrative |  |  |
| Income from operations |  |  |
|  |  |  |
| Other income: |  |  |
| Interest income, net |  |  |
| Other income |  |  |
| Total other income |  |  |
|  |  |  |
| Income before provision for income taxes |  |  |
| Provision for income taxes |  |  |
| Net income |  |  |

*See accompanying notes.*

3

EXHIBIT ___5___

PAGE ___78___

**Confidential - Attorney's Eyes Only**

MGA 0863892

MGA Entertainment, Inc.

Consolidated Statements of Stockholders' Equity

| | Common Stock | | Stockholder Receivable | Retained Earnings | Accumulated Other Comprehensive Loss | Total Stockholders' Equity |
|---|---|---|---|---|---|---|
| | Number of Shares | Amount | | | | |
| Balance at January 1, 2003 | | | | | | |
| Net Income | | | | | | |
| Distributions to stockholders | | | | | | |
| Advances to stockholder | | | | | | |
| Balance at December 31, 2003 | | | | | | |
| Net Income | | | | | | |
| Other comprehensive income (loss): | | | | | | |
| Translation loss | | | | | | |
| Total other comprehensive income | | | | | | |
| Distributions to stockholders | | | | | | |
| Reduction in advances to stockholder | | | | | | |
| Balance at December 31, 2004 | | | | | | |

*See accompanying notes.*

4

EXHIBIT 5

PAGE 79

Confidential - Attorney's Eyes Only

MGA 0863893

REDACTED

MGA Entertainment, Inc.

Consolidated Statements of Cash Flows

|  | Years Ended December 31, | |
|--|:--:|:--:|
|  | 2004 | 2003 |
| **Operating activities** | | |
| Net income | $ | |
| Adjustments to reconcile net income to net cash provided by operating activities: | | |
| Depreciation and amortization | | |
| Loss on disposal of property and equipment | | |
| Deferred income taxes | | |
| Changes in operating assets and liabilities: | | |
| Accounts receivable | | |
| Inventories | | |
| Prepaid expenses and other current assets | | |
| Other assets | | |
| Accounts payable | | |
| Accrued liabilities | | |
| Accrued discounts and allowances | | |
| Accrued royalties | | |
| Net cash provided by operating activities | | |
| | | |
| **Investing activities** | | |
| Purchase of property and equipment | | |
| Net cash used in investing activities | | |
| | | |
| **Financing activities** | | |
| Principal payments of notes payable | | |
| Principal payments of notes payable to related parties | | |
| Advances to stockholders | | |
| Distributions to stockholders | | |
| Net cash used in financing activities | | |
| Effect of exchange rate changes on cash and cash equivalents | | |
| Net increase in cash and cash equivalents | | |
| Cash and cash equivalents at beginning of year | | |
| Cash and cash equivalents at end of year | | |
| | | |
| Supplemental disclosure of cash flow information | | |
| Cash paid during the year for: . | | |
| Interest | $ | |
| Income taxes | $ | |

*See accompanying notes.*

5

Confidential - Attorney's Eyes Only

EXHIBIT __5__

PAGE __80__

MGA 0863894

REDACTED

MGA Entertainment, Inc.

Notes to Consolidated Financial Statements

December 31, 2004

1. Summary of Significant Accounting Policies

Principles of Consolidation

The accompanying consolidated financial statements include MGA Entertainment, Inc. (MGA or the Company) and its wholly owed subsidiaries, MGA Entertainment (Mauritius) Limited (Mauritius), MGA Entertainment (H.K.) Ltd (Hong Kong), MGA Entertainment (Canada) Limited (Canada) and MGA Entertainment (Mexico) Limited (Mexico). All significant intercompany balances and transactions have been eliminated. The consolidated entities are collectively referred to as the Company.

The Company is engaged in designing, manufacturing, distributing and licensing of dolls, handheld electronics, toys and entertainment devices. During the years ended December 31, 2004 and 2003, a significant portion of its revenue was derived from the sale of toys, dolls and other products in the Company's "Bratz" product line. The Company sells its products to foreign and domestic retail and wholesale customers.

Cash and Cash Equivalents

The Company considers all highly liquid instruments with an original maturity of three months or less to be cash equivalents.

Revenue Recognition

Revenue is recognized when a product is shipped and both title and risk of loss have passed, which can range up to 60 days after shipment. At December 31, 2004 and 2003, accounts receivable have been reduced by                                  respectively, along with inventories, which have been increased by                  and                  respectively, for unrecognized revenue related to products shipped for which title and risk of loss have not passed.

Royalty Income

The Company licenses the distribution of certain products in exchange for a royalty fee generally based on a percentage of sales of the licensed products. Certain license arrangements provide for advance royalty payments. At December 31, 2004 and 2003, unearned royalties amounted to                  and                  , respectively, and were included in accrued liabilities in the accompanying consolidated balance sheets.

6

EXHIBIT   5

PAGE   81

Confidential - Attorney's Eyes Only

MGA 0863895

REDACTED

MGA Entertainment, Inc.

Notes to Consolidated Financial Statements (continued)

1. Summary of Significant Accounting Policies (continued)

**Property and Equipment**

Property and equipment are stated at cost, less accumulated depreciation and amortization. Property and equipment are depreciated using the straight-line method over the estimated useful lives of the related assets, generally ranging from one to five years. Leasehold improvements are amortized over the shorter of the lease term or the estimated life of the improvement.

**Royalty Expense**

Advance royalties, paid by the Company for the right to use certain trade names and characters, are included in prepaid expenses and other current assets, and are amortized at the contractual royalty rate based on actual net product sales. Minimum guaranteed royalty commitments are expensed when it is determined by the Company that the minimum will not be attained through future sales of the related products. Royalty liabilities, in excess of the minimum guaranteed amount, are recorded when such amounts are earned by the licensor. Royalties expense totaled $         in 2004 and                      2003, and is included in cost of sales in the accompanying consolidated statements of income.

**Advertising Costs**

Advertising costs are generally expensed as incurred and for the years ended December 31, 2004 and 2003, amounted to                      , respectively.

**Income Taxes**

MGA has elected to be taxed as an S Corporation for federal income tax and California franchise tax purposes. As an S Corporation, United States taxable income or loss of the Company is allocated to stockholders based on their respective ownership. Additionally, S Corporations are subject to a California franchise tax of 1.5% of taxable income. As a result of the S Corporation election, the California current and deferred income tax expense for MGA Entertainment, Inc. for the years ended December 31, 2004 and 2003, amounted to                      $, respectively. Additionally, income taxes include foreign taxes on the Company's subsidiaries, Mauritius of                      and Hong Kong of                      for the years ended December 31, 2004 and 2003, respectively. There was no current or deferred tax provision for Mexico in 2004 and 2003.

8

EXHIBIT 5
PAGE 83

Confidential - Attorney's Eyes Only

MGA 0863897

REDACTED

MGA Entertainment, Inc.

Notes to Consolidated Financial Statements (continued)

**1. Summary of Significant Accounting Policies (continued)**

**Concentrations**

Financial instruments that subject the Company to credit risk consist primarily of cash and cash equivalents and accounts receivable. The Company maintains cash and cash equivalents balances with certain high-quality major financial institutions in excess of federally insured deposit limits.

For the years ended December 31, 2004 and 2003, sales to two largest customers accounted for 32% and 21%, and 19% and 21%, respectively, of sales. The same two significant customers represented 47% and 26%, and 51% and 40%, of accounts receivable at December 31, 2004 and 2003, respectively.

The Company performs periodic credit evaluations of its customers and maintains allowances for potential credit losses. The Company estimates credit losses based on management's evaluation of historical experience and current industry trends. Although the Company expects to collect amounts due, actual collections may differ from the estimated amounts.

Inventory purchases from one significant vendor accounted for substantially all of inventory purchases for the years ended December 31, 2004 and 2003.

**Foreign Currency Translation**

Assets and liabilities of foreign subsidiaries with functional currencies other than the U.S. dollar are translated into U.S. dollars using the exchange rates in effect at the balance sheet date. Results of their operations are translated using the average exchange rates during the period. The resulting foreign currency translation adjustment is included in stockholders' equity as a component of accumulated other comprehensive income (loss). Transaction gains and losses are recorded in the consolidated statements of income.

**Inventories**

Inventories are stated at the lower of cost or market, cost being determined using the average-cost method. Inventories are composed primarily of finished goods and raw materials.

7

EXHIBIT _____ 5 _____

PAGE _____ 82 _____

Confidential - Attorney's Eyes Only

MGA 0863896

MGA Entertainment, Inc.

Notes to Consolidated Financial Statements (continued)

**2. Related Party Transactions (continued)**

Leases

The Company entered into a month-to-month lease agreement with a partnership in which the stockholders are partners. The total rent expense for 2004 and 2003 were $251,904 and          respectively.

In addition, in 2004 the Company entered into facilities lease agreements with an entity owned by the majority stockholder of the Company with a total commitment of          over the next five years.

**3. Employee Benefit Plan**

The Company has a 401(k) plan covering eligible employees. Employer contributions are made at a rate of 25% of the employee's contributions, up to 5% of the employee's salary. Total contributions are not to exceed the annual amounts deductible under federal income tax regulations. The Company contributed $          4 to the 401(k) plan for the years ended December 31, 2004, and 2003, respectively.

**4. Commitments and Contingencies**

Leases

The Company leases facilities and certain equipment under noncancelable operating leases expiring during 2009. The leases are generally on a net-rent basis, whereby the Company pays taxes, maintenance and insurance.

The future minimum lease commitments under these leases are as follows:

| Year ending December 31: | Related Party | Other | Total |
|---|---|---|---|
| 2005 | | | |
| 2006 | | | |
| 2007 | | | |
| 2008 | | | |
| 2009 | | | |

10

EXHIBIT _____ 5 _____

PAGE _____ 85 _____

Confidential - Attorney's Eyes Only

MGA 0863899

REDACTED

MGA Entertainment, Inc.

Notes to Consolidated Financial Statements (continued)

1. Summary of Significant Accounting Policies (continued)

Impairment of Long-Lived Assets

The Company reviews the recoverability of other long-lived assets whenever events or changes in circumstances indicate that the carrying value of such assets may not be recoverable. If the expected future cash flows from the use of such assets (undiscounted and without interest charges) are less than the carrying value, the Company's policy is to record an impairment loss for the difference between the carrying value and estimated fair value of the assets.

Use of Estimates

The preparation of financial statements in conformity with accounting principles generally accepted in the United States requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the periods reported. Actual results could materially differ from those estimates.

2. Related Party Transactions

Notes Payable to Related Parties

Notes payable to related parties are to stockholders, a former stockholder and others related to the stockholders. Borrowings are unsecured advances. Interest is accrued at 10% and was $138,388 and $181,238 for the years ended December 31, 2004 and 2003, respectively.

On January 1, 2001, the Company entered into a five-year consulting agreement with the former stockholder, which provides for monthly payments of ⸻

Stockholder Receivable

At December 31, 2004 and 2003, the Company had a stockholder receivable of            88 and            espectively, which arose from advances made to the majority stockholder and chief executive officer.

9

Confidential - Attorney's Eyes Only

EXHIBIT   5
PAGE   84

MGA 0863898

REDACTED

MGA Entertainment, Inc.

Notes to Consolidated Financial Statements (continued)

**5. Phantom Stock Plan**

The Company implemented a phantom stock plan in 2003, with aggregate authorized units of          ]  The phantom stock plan provides unit awards to be granted at fair value as determined by the Company's board of directors. Awards vest over five years. In 2004, the Company granted            units under the plan. Upon death, termination without cause or a change in control, the holder of the unit is entitled to a cash payment equal to the difference between the current fair market value and the fair market value on the date of grant times the number of vested units held. At December 31, 2004, the Company recorded a compensation expense amounting to          , related to          units of vested phantom stocks.

12

EXHIBIT ___5___

PAGE ___87___

Confidential - Attorney's Eyes Only

MGA 0863901

REDACTED

MGA Entertainment, Inc.

Notes to Consolidated Financial Statements (continued)

4. Commitments and Contingencies (continued)

Leases (continued)

Total rent expense was _____ 117 for the years ended December 31, 2004 and 2003, respectively, including _____ in 2004 and _____ 2003, paid to the partnerships in which stockholders are partners.

Litigation

In 2003, the U.S. Customs Service has asserted that the Company owes approximately _____ for invalid duty drawback filings. The Company settled the suit in 2004 for _____ Per the settlement agreement, the Company agreed to pay _____ ) on September 27, 2004, with the remaining amount paid in four installments of _____ on October 25, 2004, November 25, 2004, December 25, 2004, and the last payment payable on January 25, 2005.

In April 2004, an action was filed by Mattel, Inc. (Mattel) against an independent contractor of the Company, who was the original creator of the dolls sold since 2001 by the Company under the trade name "Bratz." The complaint alleges causes of action for breach of contract, breach of duty of loyalty, breach of fiduciary duty, unjust enrichment and conversion. The compliant alleges that the contractor performed services for an unnamed "competitor" while employed by Mattel, and that in violation of a Mattel inventions and assignments agreement and conflict of interest agreement executed by the contractor, the contractor allegedly misappropriated Mattel property for his own gain and the gain of the unnamed "competitor." The Company is not named in the complaint but has a substantial interest in the case outcome. The contractor and the Company intend to vigorously defend this action. Discovery in this matter has begun, but it is too early to assess whether there will ultimately be any significant adverse effect on MGA financial statements or its business.

In 2004, the Company filed two suits against two defendants in Italy for damages. In January 2005, one of the defendants settled the suit for the sum of _____ The other suit is currently still pending judgment. The Company will recognize the settlement income in 2005, when received.

The Company is also subject to other claims arising in the ordinary course of business. In the opinion of management, the ultimate resolution of such pending claims and legal proceedings will not have a materially adverse effect on the Company's business or financial condition.

11

EXHIBIT   5
PAGE   86

Confidential - Attorney's Eyes Only

MGA 0863900

REDACTED

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On January 16, 2008, I served true copies of the following document(s) described as **DECLARATION OF SCOTT B. KIDMAN IN SUPPORT OF MATTEL, INC.'S MOTION OBJECTING TO PORTIONS OF DISCOVERY MASTER'S DECEMBER 31, 2007 ORDER REGARDING TAX RETURNS** on the parties in this action as follows:

John W. Keker
Michael H. Page
Christa M. Anderson
**Keker & Van Nest, LLP**
710 Sansome Street
San Francisco, CA 94111
*Attorneys for CARTER BRYANT*

Mark E. Overland, Esq.
David E. Scheper, Esq.
Alexander H. Cote, Esq.
**Overland Borenstein Scheper & Kim, LLP**
300 South Grand Avenue
Suite 2750
Los Angeles, CA 90071-3144
*Attorneys for Carlos Gustavo Machado*

**BY MAIL:** I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 16, 2008, at Los Angeles, California.

Yolonda J. Dekle

07209/2081332.1

1

### PROOF OF SERVICE

2      I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service,

3  1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

4  On January 16, 2008, I served true copies of the following document(s) described as **DECLARATION OF SCOTT B. KIDMAN IN SUPPORT OF MATTEL, INC.'S MOTION**

5  **OBJECTING TO PORTIONS OF DISCOVERY MASTER'S DECEMBER 31, 2007 ORDER REGARDING TAX RETURNS** on the parties in this action as follows:

6

7      Thomas J. Nolan
       **Skadden, Arps, Slate, Meagher & Flom**

8      **LLP**
       300 South Grand Ave., Ste. 3400

9      Los Angeles, California 90071
       *Attorneys for MGA ENTERTAINMENT,*

10     *INC.*

11

12  **BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the office of the person(s) being served.

13      I declare that I am employed in the office of a member of the bar of this Court at whose

14  direction the service was made.

15      Executed on January 16, 2008, at Los Angeles, California.

16

17                                          _____
                                            NOW LEGAL -- Dave Quintana

18

19

20

21

22

23

24

25

26

27

28

07209/2169461.1