QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER**<br>**[To Be Heard By Hon. Edward Infante (Ret.) Pursuant To Order Of December 6, 2006]** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | [PUBLIC REDACTED] MATTEL, INC.'S REPLY IN SUPPORT OF ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS |
| | [Supplemental Declaration of Jon D. Corey and Mattel, Inc's Consolidated Separate Statements No. 1 and No. 2 filed concurrently] |
| | Hearing Date: January 3, 2008<br>Time:          1:30 p.m.<br>Place:         JAMS<br>               Two Embarcadero Center<br>               Suite 1500<br>               San Francisco, California |
| | **Phase 1**<br>Discovery Cut-off:        January 28, 2008<br>Pre-trial Conference:   May 5, 2008<br>Trial Date:                  May 27, 2008 |

07209/2335422.2

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................. 1

I.  MGA WILLFULLY FAILED TO COMPLY WITH THE
    DISCOVERY MASTER'S ORDERS ............................................... 2

II. MGA VIOLATED THE ORDERS WHEN IT FAILED TO PRODUCE
    A WITNESS TO TESTIFY REGARDING TOPIC NOS. 21, 24, 25,
    31, 39 AND 40 ..................................................................... 6

    A.  MGA Has Violated The Court's Orders With Respect To
        Testimony About Document And Electronic Evidence
        Preservation Collection And Destruction, Topic Nos. 39 and 40 .......... 6

    B.  MGA Should Be Compelled To Produce A Competent Witness
        In Response To Topics 21, 23, 24, 25 AND 31 ........................... 9

III. MGA VIOLATED THE ORDERS WHEN IT FAILED TO PRODUCE
     A COMPETENT WITNESS TO TESTIFY REGARDING TOPIC
     NOS. 11, 13, 14, 19, 22, 23, 27 AND 28, AND MGA'S DESIGNEE
     HARRIS SHOULD BE COMPELLED TO RETURN SO THAT
     MATTEL CAN FINISH HER DEPOSITION ON THE COMPELLED
     TOPICS ........................................................................ 11

    A.  Harris Lacked Knowledge Reasonably Available to MGA On
        Topic No. 11 ................................................................ 11

    B.  Harris Lacked Knowledge On Topic No. 13 .............................. 14

    C.  Harris Lacked Knowledge On Topic No. 14 .............................. 17

    D.  Harris Lacked Knowledge On Topic Nos. 27 And 28 .................... 20

    E.  MGA Should Be Compelled to Comply With Its Prior
        Agreement to Produce Harris for an Additional Day ..................... 22

IV. MGA VIOLATED THE ORDERS WHEN IT FAILED TO PRODUCE
    A COMPETENT WITNESS TO TESTIFY REGARDING TOPIC NO.
    34, AND MGA'S DESIGNEE WOODMAN SHOULD BE
    COMPELLED TO RETURN ..................................................... 25

    A.  MGA Defends Itself By Pointing to Woodman's Admittedly
        False Testimony On Topic No. 34 ......................................... 26

    B.  MGA's Statements to the Patent and Trademark Office and
        Copyright Office Are Unquestionably "Sworn Statements" ............. 27

        1.  Testimony Relating to Statements In Or In Support of
            Patent Applications ................................................... 27

-i-

2.   Testimony Relating to Statements In Or In Support of Trademark Registration Applications..................................29

3.   Testimony Relating to Statements In Or In Support of Copyright Registration Applications...........................................30

C.   MGA's Sentence-by-Sentence Approach To The Topic Makes Examination on Topic No. 34 Incomplete and Unintelligible; Mattel Deserves Full and Complete Testimony on Topic 34..............31

D.   MGA's Halfhearted New Privilege Claim Has No Legitimate Basis...............................................................................32

V.   MGA VIOLATED THE ORDERS WHEN IT FAILED TO PRODUCE A COMPETENT WITNESS TO TESTIFY REGARDING SPECKIN'S INK AND PAPER TESTING (TOPIC NO. 41), AND MGA'S DESIGNEE TONNU SHOULD BE COMPELLED TO RETURN TO ANSWER QUESTIONS REGARDING THAT TOPIC.............................34

A.   Mattel is Entitled to Information Concerning the Factual Circumstances Surrounding Mr. Speckin's Testing..................34

1.   MGA Admits Mattel is Entitled to the Factual Information Surrounding Mr. Speckin's Testing..............................35

2.   MGA Concedes That The Federal Rules Abolish The Notion That This Information Is "Privileged" Or Protectable As "Work Product"..................................42

(a)   MGA Concedes That the Rules Permit Discovery of Facts Surrounding Mr. Speckin's Testing.....................43

3.   MGA's Objections To Providing Information Concerning the Testing of Original Bratz Documents Were Overruled and MGA was Compelled to Produce A Competent Witness to Provide Complete Testimony.........................44

VI.  MGA WAIVED ANY CLAIM OF PRIVILEGE TO DOCUMENTS USED TO REFRESH LOCKHART'S RECOLLECTION..........................45

A.   MGA Failed to Present Any Evidence Demonstrating that the Logged Documents are Privileged.........................................45

B.   Because the Documents Refreshed Lockhart's Recollection, They Must Be Produced................................................46

C.   MGA Has Waived the Work Product Doctrine....................48

D.   The Legislative History Underlying Federal Rule of Evidence 612 Does Not Aid MGA........................................48

E.   MGA's Cases Are Inapposite...........................................49

VII. TONNU'S DEPOSITION SHOULD BE REOPENED.............................50

07209/2335422.2

-ii-

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

A.   Tonnu's Deposition Should Be Reopened As A Result Of Material Revisions To Her Deposition Transcripts ..................................... 50

B.   The Discovery Master Should Overrule MGA'S Improper Instructions Not To Answer Questions At The Tonnu Deposition And Impose Sanctions For Counsel For MGA's Interference With Questioning ..................................................................................... 51

VIII.   MGA SHOULD BE SANCTIONED FOR ITS FAILURE TO COMPLY WITH THE ORDERS AND DISCOVERY ABUSES ................. 56

A.   Mattel Has Been Unfairly Prejudiced By MGA's Discovery Violations And Is Entitled To Monetary Sanctions............................... 56

CONCLUSION.................................................................................................. 57

07209/2335422.2

-iii-

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

# TABLE OF AUTHORITIES

<u>Page</u>

## CASES

A. Farber and Partners, Inc. v. Garber,
234 F.R.D. 186 (C.D. Cal. 2006) ........................................................... 54

AK Steel Corp. v. Sollac & Ugine,
234 F. Supp. 2d 711 (S.D. Ohio 2002) ................................................... 35

Anderson v. Air West, Inc.,
542 F.2d 522 (9th Cir. 1976) ......................................................... 56, 57

Bailey v. Meister-Brau, Inc.,
57 F.R.D. 11 (N.D. Ill. 1972) ............................................................... 47

Baker Oil Tools v. Geo Vann, Inc.,
828 F.2d 1558 (Fed. Cir. 1987) ........................................................... 28

Barrer v. Women's National Bank,
96 F.R.D. 202 (D.D.C. 1982) ............................................................... 49

Bd. of Trustees of Leland Stanford Junior Univ. v. Superior Court,
119 Cal. App. 3d 516 (1981) ............................................................... 55

Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.,
228 F.3d 275 (3d Cir. 2000) ................................................................. 3

CEH, Inc. v. FV "Seafarer",
153 F.R.D. 491 (D.R.I. 1994) ............................................................... 54

Charles O. Bradley Trust v. Zenith Capital LLC,
2005 WL 1030218 *2 (N.D.Cal. May 3, 2005) ................................... 52

Clavo v. Zarrabian,
2003 WL 24272448, *2 (C.D. Cal. July 9, 2003) ................................. 45

Cook v. Yellow Freight Sys., Inc.,
132 F.R.D. 548 (E.D.Cal. 1990) ........................................................... 55

Davidson v. Goord,
215 F.R.D. 73 (W.D.N.Y. 2003) ........................................................... 20

Davis v. City of Seattle
2007 WL 4166154, at *3-4 (W.D. Wash. Nov. 20, 2007) ................... 34

Denius v. Dunlap,
209 F.3d 944 (7th Cir. 2000) ......................................................... 52, 53

EEOC v. Safeway Store, Inc.,
2002 WL 31947153 * 3 (N.D. Cal. Sept. 16, 2002) ........................... 45

Ehrlich v. Howe,
    848 F. Supp. 482 (S.D.N.Y. 1994)................................................................ 46

FMC Corp. v. Vendo Co.,
    196 F. Supp. 2d 1023 (E.D. Cal. 2002)....................................................... 43

Hernandez v. City of El Monte,
    138 F.3d 393 (9th Cir. 1998)........................................................................ 56

Hogan v. Robinson,
    slip op. 2006 WL 1049979, *4-5 (E.D.Cal. Apr. 20, 2006) .................... 55

In re Heritage Bond Litigation,
    2004 WL 1970058, *5 n. 12 (C.D. Cal. July 23, 2004)............................ 54

In re Managed Care Litigation,
    415 F. Supp. 2d 1378 (S.D. Fla. 2006) ...................................................... 49

In re Phenylpropanolamine (PPA) Prods. Liability Litig.,
    460 F.3d 1217 (9th Cir. 2006)..................................................................... 56

James Julian, Inc. v. Raytheon Co.,
    93 F.R.D. 138 (D. Del.1982)................................................................ 47, 49

Judicial Watch, Inc. v. U.S. Dept. of Comm.,
    201 F.R.D. 265 (D.D.C. 2001).................................................................... 34

Keith H. v. Long Beach Unified School,
    228 F.R.D. 652 (C.D. Cal. 2005) .......................................................... 52, 54

Koch v. The Burlington Northern & Santa Fe Railway Co.,
    2006 WL 2927665 (W.D. Wash. 2006) ...................................................... 56

Mackey v. IBP, Inc.,
    167 F.R.D. 186 (D. Kan. 1996)................................................................... 32

Marshall v. United States Postal Service,
    88 F.R.D. 348 (D.D.C. 1980)................................................................ 46, 47

Medtronic Xomed, Inc. v. Gyrus Ent LLC,
    2006 WL 786425 (M.D. Fla. Mar. 27, 2006)............................................. 50

Moneymaker v. CoBen (In re Eisen),
    31 F.3d 1447 (9th Cir. 1994)....................................................................... 56

Morris v. Morgan Stanley & Co.,
    942 F.2d 648 (9th Cir. 1991)....................................................................... 56

Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust,
    230 F.R.D. 398 (D. Md. 2005).................................................................... 33

Nguyen v. Excel Corp.,
    197 F.3d 200 n.16 (5th Cir. 1999)............................................................... 33

-v-

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

07209/2335422.2

<u>Pagtalunan v. Galaza,</u>
291 F.3d 639 (9th Cir. 2002) ............................................................ 56

<u>Palazzetti Import/Export, Inc. v. Morson,</u>
2000 WL 1015921, at *1 (S.D.N.Y. Jul. 21, 2000) ........................ 32

<u>Perrignon v. Bergen Brunswig Corp.,</u>
77 F.R.D. 455 (N.D. Cal. 1978) ....................................................... 33

<u>Resolution Trust Corp. v. Southern Union Co.,</u>
985 F.2d 196 (5th Cir. 1993) .............................................................. 3

<u>S&A Painting Co., Inc. v. O.W.B. Corporation,</u>
103 F.R.D. 407 (W.D. Pa. 1984) ........................................... 47, 48, 50

<u>U.S. v. 22.80 Acres of Land,</u>
107 F.R.D. 20 (N.D. Cal. 1985) ............................................ 46, 48, 50

<u>U.S. v. Landof,</u>
591 F.2d 36 (9th Cir. 1978) ............................................................. 45

<u>United States ex rel. Bagley v. TRW Inc.,</u>
212 F.R.D. 554 (C.D. Cal. 2003) ................................................ 48, 50

<u>United States v. Bueno-Vargas,</u>
383 F.3d 1104 (9th Cir. 2004) ........................................................ 28

<u>Vardon Golf Co. v. BBMG Golf Ltd.,</u>
156 F.R.D. 641 (N.D. Ill. 1994) ................................................. 35, 38

<u>Warnaco, Inc. v. Freund,</u>
94 F.R.D. 237 (E.D.N.Y. 1980) ...................................................... 34

<u>Wells v. Xpedx,</u>
2007 WL 1200955, at *4 (M.D. Fla. Apr. 23, 2007) ...................... 34

<u>Wheeling-Pittsburgh Steel Corp. v. Underwriters Laboratories, Inc.,</u>
81 F.R.D. 8 (N.D. Ill. 1978) ...................................................... 47, 50

<u>Willis v. Mullins,</u>
2006 WL 302343, *5 (E.D.Cal. Feb. 8, 2006) ............................... 55

## **STATUTES**

<u>Fed. R. Civ. P.</u> 26(b)(4)(B) ..................................................... 35, 43

<u>Fed. R. Civ. P.</u> 26(c) ....................................................................... 23

<u>Fed. R. Civ. P.</u> 30 ............................................................................ 23

<u>Fed. R. Civ. P.</u> 30(b)(6) .................................................................... 2

<u>Fed. R. Civ. P.</u> 30(d)(2) ................................................................. 22

1

## OTHER AUTHORITIES

2   6 James Moore et al., Moore's Federal Practice § 26.47(1) (3d ed. 1999)...............33

3   Schwarzer, Tashima & Wagstaffe, Fed. Prac. Guide: Civ. Proc. Before Trial,
      § 11:927 (Rutter's Group 2007)...........................................................43

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2335422.2

-vii-

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO
COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

## Preliminary Statement

MGA does not dispute that the witnesses it produced were incapable of testifying about topics that the Discovery Master compelled. To the contrary, MGA urges the Discovery Master to deny the Motion because "MGA's Rule 30(b)(6) deposition testimony is not complete." MGA thereby admits that it violated the Orders, because the Discovery Master had required MGA to "complete" the testimony on these topics no later than June 30, 2007 or September 30, 2007.

MGA makes no credible effort to claim that its witnesses possessed, much less testified to, the information the Discovery Master found relevant, that is uniquely within MGA's possession, and that goes to the heart of the case, such as Bratz development, Bratz revenues, Bratz manufacturing dates, and Bratz sales dates, among many others. Instead, MGA takes the breathtakingly narrow and indefensible position that the Discovery Master only ordered MGA to prop up warm bodies to repeat the mantra "I don't know." That practice violates the letter and the spirit of both Rule 30 and the Orders.

Further, MGA offered to "complete" the testimony on only six of the sixteen topics (with limitations on even the six). MGA has to make this offer because its designees' ability to testify competently is indefensible. But, having tolerated months of empty promises of compliance and with the deadline for MGA's compliance having passed and with the discovery cut-off less than one month away, Mattel should not have to wait any longer for information the Discovery Master already has ruled -- more than once -- that Mattel is entitled to. For the other ten topics, MGA apparently believes that the testimony is full and complete. It is not, as Mattel has shown.

MGA's willful violation of the Orders has prejudiced Mattel. MGA has successfully prevented Mattel from obtaining the compelled information related to Bratz development, manufacture, sales, costs, etc., for months. Even if Mattel obtains this information at this stage, Mattel will get it within days of the discovery cut-off, preventing follow-up discovery, and within weeks of the expert report due date,

-1-

1 | potentially jeopardizing or limiting the type of analysis that Mattel's consultants can do.
2 | For example, the Court compelled a witness to testify about Bratz' revenues, costs and
3 | profits. MGA has yet to provide Mattel with the "starting point" for those calculations
4 | (and has implicitly admitted that these "starting point" documents were not shown to
5 | the designee prior to her testimony).

6 |      MGA must bear the consequences of its decision not to comply with the Orders,
7 | despite having had months to do so. Mattel, therefore, respectfully requests that the
8 | Discovery Master grant Mattel's Motion.

9 | **Argument**

10 | **I.  MGA WILLFULLY FAILED TO COMPLY WITH THE DISCOVERY**
11 | **MASTER'S ORDERS**

12 |      The Discovery Master could not have been clearer in overruling all of MGA's
13 | objections and limitations to the topics in Mattel's <u>Rule</u> 30(b)(6) notice: "I find all of
14 | the topics relevant. I overrule the objections, the limitations, and the conditions
15 | asserted by MGA as to each topic."[1]  The Discovery Master compelled MGA to
16 | produce its witnesses to testify regarding all of the Topics at issue by July 30, 2007,
17 | except for Topics Nos. 25 and 26, which had a September 30, 2007 deadline.

18 |      There is no dispute by MGA that its <u>Rule</u> 30(b)(6) witness must be able to
19 | provide, information "known or reasonably available to the organization". <u>Fed. R. Civ.</u>
20 | <u>P.</u> 30(b)(6); <u>see also</u> July 2, 2007 Minute Order at 4, attached to the Corey Dec.,
21 | Exh. 15. <u>Compare</u> Opp. at 42:24-26. MGA has no justification for its failure to
22 | produce such witnesses with this information for the compelled Topics. Mattel proved
23 | in its moving papers that the information in the Topics is reasonably available to MGA.
24 | <u>See</u> Motion at 39-45. Such proof is not difficult, given that the Topics related to
25 | information exclusively within MGA's possession: Bratz design, development, sales
26 |
27 |
28 |

07209/2335422.2

-2-

1 | and manufacture; Bratz revenues, costs and profits; and MGA's own document
2 | preservation, collection and destruction, for example.  Given that the information
3 | sought by the Topics is reasonably available to MGA—a proposition that MGA does
4 | not dispute in the least—MGA's non-compliance is transparent. The witnesses did not
5 | provide basic information on the compelled topics, in violation of the Court's Orders
6 | and to Mattel's detriment and prejudice.

7 |     MGA declares compliance because it designated a witness and the witness was
8 | sworn.  For Rule 30(b)(6), however, the test is not whether a person understands the
9 | oath and can be sworn, but the knowledge of a witness on the Topic.  Black Horse Lane
10 | Assoc., L.P. v. Dow Chemical Corp., 228 F.3d 275, 300, 304 (3d Cir. 2000) (affirming
11 | district court order imposing sanctions for producing a Rule 30(b)(6) designee who
12 | lacked information in the possession of the corporation and noting that "[p]roducing an
13 | unprepared witness is tantamount to a failure to appear that is sanctionable under Rule
14 | 37(d)"); see also Resolution Trust Corp. v. Southern Union Co., 985 F.2d 196, 197 (5th
15 | Cir. 1993) (affirming sanctions order and stating that if the corporate designee "is not
16 | knowledgeable about relevant facts . . . then the appearance is, for all practical
17 | purposes, no appearance at all.").  MGA's argument is also without merit on its face.
18 | The purpose and effect of the Orders were to compel MGA to provide Mattel with
19 | information relevant to this suit. Were MGA's position accepted, it would mean that
20 | the Discovery Master's (and Judge Larson's) Orders were a nullity when they were
21 | entered.

22 |     And even a cursory review of MGA's designees shows that MGA failed to
23 | comply with the Discovery Master's Orders. This included basic information relating to
24 | Bratz project milestones and the timing thereof.  Thus:

25 |
26 |   [1]  Transcript of May 15, 2007 Motion to Compel Hearing, 21:22-25, attached to
27 | the Corey Dec., Exh. 10; see also May 16, 2007 Order, ¶ 5, attached to the Corey
28 | Dec., Exh. 11.

1  For Topic No. 11, regarding the first exhibition of Bratz or Bratz designs, Harris

2  could not identify any of the "boards" shown to retailers, including the drawings that

3  they contained.[2]

4  For Topic Nos. 13-14, relating to Bratz' first manufacture, shipment and sale,

5  Harris did not identify any dates and knew nothing of distribution agreements that had

6  obviously been negotiated and entered into in 2000.

7  For Topic No. 21, regarding MGA's access to aspects of Mattel's DIVA STARZ

8  project, MGA's designee did not know even what DIVA STARZ was and testified that

9  MGA employees and contractors had no such access, even though others had and have

10  since then testified that they did have access.[3]

11  For Topic No. 24, regarding fee and indemnity agreements, MGA's designee was

12  unable to discuss negotiations, term meanings, payments, amendments, threats to

13  enforce, or any facts other than the identification of the agreements and, in some cases,

14  of the persons who negotiated for MGA.

15  For Topic No. 25, regarding Bratz revenues, costs and profits, MGA's designee

16  was unable to identify Bratz revenues, costs and profits.

17  For Topic Nos. 27 and 28, regarding payments to Elise Cloonan and

18  communications between MGA and Cloonan relating to Bryant, Bratz, Mattel or Anna

19  Rhee, MGA's designee was unable to identify the amounts that MGA had paid to or on

20  behalf of Elise Cloonan or to testify about communications with Cloonan.

21  For Topic No. 31, regarding which Mattel employees had worked for MGA,

22  what they did and what they were paid, MGA's designee did not even inquire about

23

24  [2]  Harris Tr., 288:6-23, attached to the Corey Dec., Exh. 7.

25  [3]  Deposition of Margaret Leahy, dated December 12, 2007, at 48:10-52:23, attached to the Supp. Corey Dec., Exh. 5. Deposition of Paula Garcia, dated May 25,

26  2007, at 568:13-570:12, attached to the Supp. Corey Dec., Exh. 13. Deposition of Paula Garcia, dated October 10, 2007, at 1099:3-1113:16; 1147:6-1151:15, attached

27  to the Supp. Corey Dec., Exh. 14.

28

07209/2335422.2

-4-

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

1  many Mattel employees, did not know whether some had worked for MGA while a
2  employed by Mattel or, if they did, what they were paid.

3      For Topic No. 34, regarding prior sworn statements regarding Bratz prior to
4  June 30, 2001, MGA's designee was instructed not to testify about most such statements
5  and admittedly knew nothing about the rest. Furthermore, only a few days ago, in
6  violation of another Discovery Master Order requiring its production months ago,
7  MGA produced yet another sworn statement of Isaac Larian attesting that he was the
8  creator of Bratz features Carter Bryant testified in this case that he had purportedly
9  created before ever even meeting Larian.[4]

10     For Topic Nos. 39-40, regarding the collection, preservation or destruction of
11  documents and evidence responsive to Mattel's requests, MGA's designees did not
12  know what steps had been taken to collect and preserve electronic evidence, including
13  documents authored by Mattel, or to identify what physical files had been searched for
14  responsive documents.

15     For Topic No. 41, regarding defendants' destructive handling of the Bratz
16  drawings, MGA's designee did no more than identify the declaration of MGA's
17  consultant -- she could not say whether it was true or accurate -- and identify some
18  documents that he tested (but not all).

19     That MGA's designees say "I don't know" for hours and hours and pages and
20  pages of deposition transcript does not prove compliance. See Opp. at 1:27. At
21  bottom, the witnesses were unable to testify about the basic information for each Topic.
22  The Discovery Master can see for himself by simply opening any of the designees'
23  transcripts and following the questioning for any Topic at issue.

24     Rather than address these issues head-on, MGA tries to distract from its lack of
25  compliance with the Orders by chastising Mattel for seeking discovery Mattel needs to
26  prosecute the case. Of course, MGA's complaints are unavailing here since the

27
28     [4]   Declaration of Isaac Larian, attached to the Supp. Corey Dec., Exh. 12.

209/2335422.2

-5-

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO
COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

1   Discovery Master has already found, in some cases more than once, that each of the

2   Topics at issue on this motion seeks relevant information that Mattel is entitled to.

3   Judge Larson subsequently upheld each of those rulings which MGA challenged before

4   him. MGA cannot, at this stage, legitimately seek to justify its violation of the Court's

5   Orders through such matters that are at best irrelevant and at worse constitute collateral

6   attacks on the Court's Orders.[5]

7   **II.**   **MGA VIOLATED THE ORDERS WHEN IT FAILED TO PRODUCE**

8        **A WITNESS TO TESTIFY REGARDING TOPIC NOS. 21, 24, 25, 31,**

9        **39 AND 40**

10        **A.**   **MGA Has Violated The Court's Orders With Respect To**

11              **Testimony About Document And Electronic Evidence Preservation**

12              **Collection And Destruction, Topic Nos. 39 and 40**

13        At the time that Mattel filed this Motion, MGA had refused to produce a witness

14   to testify on Topic No. 39, regarding MGA's preservation, collection and destruction of

15   evidence that Mattel had requested. After Mattel demonstrated in its moving papers

16   that Lockhart and Tonnu's testimony (or lack of testimony) regarding this Topic fell far

17   short of compliance with the Order, MGA blinked and agreed to produce an as yet

18   unidentified witness on an as yet unidentified date, but only on the topic of

19          [5]   Apart from being ultimately irrelevant here because they do not excuse

20   MGA's violation of Court Orders, MGA's generalized complaints about the scope of

21   Mattel's discovery requests are without merit. First, the discovery request numbers

22   MGA cites are misleading, given that Mattel must take discovery from five

23   defendants. Indeed, MGA and the other defendants have propounded as much

24   discovery as Mattel has and in some instances even more than Mattel has. Supp.

25   Hauss Dec., ¶ 1. Second, as the Discovery Master is aware, the stakes in this case

26   are considerable -- MGA itself claims this litigation is worth "billions" -- and MGA

27   has a pattern of obstructing discovery on what Judge Larson has observed includes

28   even obvious, basic information defendants should have turned over voluntarily but

   had to be ordered to produce but still have not produced. If MGA simply chose to

   comply with its discovery obligations, then Mattel would not need to seek relief

   from the Discovery Master and expensive motion practice would not be necessary.

1  "collection."[6] Thus, even apart from being belated and vague, MGA's offer to produce

2  a witness on only "collection" is deficient. Agreeing, yet again, to produce a witness on

3  only a portion of the ordered topic does not absolve MGA of its complete failure to

4  produce a witness knowledgeable on the entirety of the topic within the time required.

5       Topic No. 39 seeks testimony on a variety of MGA policies, procedures and

6  methods, and MGA's efforts to *collect* the requested documents is just one of them.

7  The remainder of Topic No. 39 seeks MGA's policies regarding "preservation, . . .

8  destruction, removal, transfer, loss or impairment" of MGA's documents and digital

9  information in connection with this case.[7]  MGA should be compelled to produce a

10  deponent on the entirety of the subject matter encompassed by Topic No. 39—not

11  merely one small aspect of it.

12       MGA purports to demonstrate that Lockhart knew what he was talking about by

13  arguing sweeping generalities, such as "Lockhart testified regarding policies, practices

14  and procedures pre-dating his employment by MGA" and "Lockhart testified at length

15  about the configuration of MGA's computer systems and MGA's policies, practices and

16  procedures for the retention and preservation of electronic documents."[8]

17       But, the proof of the pudding is in the eating.  Whatever generalities MGA

18  invokes, Lockhart was utterly ignorant on numerous areas well within Topic No. 39.

19  For example, Mr. Lockhart did not know whether any effort had been made to

20  determine whether documents, including emails, responsive to Mattel's document

21  requests appears in MGA e-mail archive or ".pst" files;[9] he did not know whether these

22  pst files had been searched;[10] he did not know whether various other servers, including

---

6  MGA has offered "to produce an additional witness to discuss the *collection* of hard copy and electronic documents in connection with this action under Topic 39." Opp. at 50:10-11 (emphasis added).

7  See Second Notice, attached to the Corey Dec., Exh. 8.

8  Opp. at 54.

9  Lockhart Tr. at 108:12-17, attached to the Corey Dec., Exh. 6.

10  Lockhart Tr. at 109:13-16, attached to the Corey Dec., Exh. 6.

1    snap servers and data file servers, had been searched for documents requested by
2    Mattel;[11] he did not know the details of the efforts, if any, made by MGA to collect
3    information related to Bratz development in 2000 and 2001;[12] he did not know whether
4    any Mattel-authored documents have been deleted or otherwise removed from MGA
5    user's local hard drives; and, other than limited testimony regarding e-mail searches and
6    a single search of Isaac Larian's computer, Mr. Lockhart did not know of any effort
7    undertaken by MGA to search MGA employees' hard drives for documents requested
8    by Mattel.[13]

9         Tonnu, also a designee on this Topic, had no idea what hard copy files or
10   documents MGA had preserved or collected or destroyed, and went so far as to testify
11   that MGA had not searched any of the off-site documents -- although, in fact, it is
12   apparent from the labels of the boxes stored in one off-site location that they contain
13   documents relating to the Larian v. Larian disputes and other categories of documents
14   that the Discovery Master compelled MGA to produce.   Tonnu testified on
15   September 25, 2007, that MGA had not reviewed the off-site files for documents
16   responsive to Mattel's requests.   Mattel subpoenaed FileKeepers' (MGA's off-site
17   document storage vendor) log of over 1000 boxes of documents that it stores for MGA.
18   Mattel reviewed the log and asked MGA to confirm that it had searched for responsive
19   documents from boxes on the FileKeepers log that Mattel specifically identified,
20   including boxes labeled HK Financial Statement, Larian vs. Larian Lit. Files (multiple
21   sets of documents), Larian vs. Larian Litigation, Trademark Searches, TM
22   Searches/Clearances, Name Clearances (multiple sets of documents), and Original
23   Dolls (multiple sets of documents).

24

25

26   [11]   Lockhart Tr. at 150:21-24, attached to the Corey Dec., Exh. 6.
27   [12]   Lockhart Tr. at 271:2-7, attached to the Corey Dec., Exh. 6.
     [13]   Lockhart Tr. at 288:9-14, attached to the Corey Dec., Exh. 6.
28

07209/2335422.2

-8-
MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO
COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

1    MGA wrote back, but did not confirm that it had searched any of the identified
2  boxes for responsive documents.[14]  The bulk of these documents are from 2000 and
3  2001, the critical time period, including those for 2000 sales and trademark searches
4  and clearances, that the Court has compelled.  Most tellingly, MGA refused to confirm
5  that it had searched the Larian v. Larian boxes for responsive documents, even though
6  the Discovery Master also ordered MGA to produce these documents as well.  To date,
7  MGA has produced only *four* documents related to those disputes; presumably the
8  boxes have more than four documents.  Mattel has brought a separate motion to address
9  MGA's apparent failure to comply with the Discovery Master's order.[15]

10    If nothing else, this proves that MGA persists in its tactic of stonewalling efforts
11  to determine what documents it is improperly withholding from Mattel and that its
12  gamesmanship continues to this day.  The Discovery Master ordered, and Mattel is
13  entitled, to a competent witness to testify regarding the MGA's corporate knowledge on
14  this Topic.

15    **B.  MGA Should Be Compelled To Produce A Competent Witness In**
16        **Response To Topics 21, 23, 24, 25 AND 31**

17    MGA states that it will reproduce Ms. Tonnu or another Rule 30(b)(6) designee
18  to "supplement" prior testimony, with the exception of Topic No. 41.[16]  MGA asserts
19  that, therefore, there is no basis to compel further testimony.  An order compelling
20  MGA to provide further testimony is still necessary for several reasons.

21    First, MGA promised, or was compelled, to "supplement" prior testimony.  As
22  MGA admits,[17] it failed to do so, flouting such Orders and breaking promises like those

23  ─────────────────────────────────

24  [14]  Letter from Andrew C. Temkin to Jon Corey dated December 20, 2007,
     Supp. Corey Dec., Exh. 19.
25  [15]  Letter from Jon Corey to Amy Park, dated December 12, 2007, Supp. Corey
     Dec. Ex. 18.
26  [16]  Opp. at 52:10-12.
27  [17]  See e.g. Opp. at 46:16-17 (admitting that during Ms. Tonnu's second
28  deposition, in response to Topic No. 24, she was "not able to testify" about the
     (footnote continued)

1   it now repeats in response to Mattel's Motion.  Even in its Opposition, MGA places

2   improper restrictions or conditions on the "supplemental" testimony.[18]

3        Second, MGA for months stood by its deficient testimony and objections,

4   including professing during the meet and confer process that the testimony of its

5   designees was full and complete.[19]  MGA agreed to supplement any testimony only

6   after Mattel informed MGA that Mattel would bring a motion and, in some instances,

7   only after Mattel filed it.  Based on this history, Mattel is entitled to an order and clear

8   guidance from the Discovery Master.  Accordingly, Mattel respectfully requests that

9   MGA be ordered to produce a witness properly prepared to provide complete testimony

10   for Topic Nos. 21, 24, 25, 40 and 41.

11        Finally, rather than put its specific responses to MGA's purported justifications

12   with respect to these Topics in the reply, Mattel refers the Discovery Master to

13   Consolidated Separate Statement No. 1, in which MGA has pasted its topic-specific

14   arguments and where Mattel sets forth its rejoinder.

15

16

17

18

19

20

21   specifics of key information called for by the Topic); and 50:7-8 (admitting that

22   Ms. Tonnu was unable to testify concerning the "actual collection of documents for production in this action," in response to Topic No. 39.  Topic 39 specifically seeks

23   information concerning MGA's collection of documents in this action.  Importantly, MGA acknowledge that Ms. Tonnu was unable to provide this key information,

24   despite the fact that MGA was twice compelled to produce a witness to testify on

25   the same.).

26    [18]  See e.g. Opp. at 45:18-19:6 (Topic No. 21); 47:17-48:4 (Topic No. 25); and 48:27-49:8 (Topic No. 31).

27    [19]  Supp. Corey Dec. ¶ 23; Letter from Jon Corey to Raoul Kennedy, dated November 21, 2007, attached to the Corey Dec., Exh. 54.

28

07209/2335422.2

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

**III.   MGA VIOLATED THE ORDERS WHEN IT FAILED TO PRODUCE A COMPETENT WITNESS TO TESTIFY REGARDING TOPIC NOS. 11, 13, 14, 19, 22, 23, 27 AND 28, AND MGA'S DESIGNEE HARRIS SHOULD BE COMPELLED TO RETURN SO THAT MATTEL CAN FINISH HER DEPOSITION ON THE COMPELLED TOPICS**

Unlike the Tonnu and Lockhart topics, MGA now refuses to produce Harris to testify about the eight topics on which she was designated.[20] Remarkably, MGA's counsel originally recognized that Harris' testimony was deficient and that Mattel did not have sufficient time to examine Harris on those eight topics.[21] MGA agreed to produce Harris for an additional day of testimony.[22] Before MGA provided a date, however, it reneged. MGA now argues that Harris "substantially discharged" MGA's obligations to provide testimony on those Topics.[23] This is demonstrably incorrect because Harris knew precious little about the topics Mattel had time to ask about, but did not even get to some of the eight topics on the single day of Harris' deposition.

**A.   Harris Lacked Knowledge Reasonably Available to MGA On Topic No. 11**

Contrary to MGA's conclusory and unsupported claim, Rebecca Harris did not know basic information reasonably available to MGA about Topic No. 11, the exhibition or proposed exhibition of Bratz to any third party prior to June 30, 2001.[24] For example, MGA suggests that her testimony was adequate because she "learned that

---

[20]   In its Opposition, MGA inaccurately states that she was designated on nine topics, but Tonnu, not Harris, was MGA's designee on Topic No. 21. Opp. at 30:9.

[21]   Letter from Scott Gizer to Jon Corey, dated September 25, 2007, attached to the Corey Dec., Exh. 48.

[22]   Id.

[23]   Opp. at 30

7209/2335422.2

1   MGA used boards to present Bratz."[25]  But this ignores that  Harris did not have any

2   information regarding exhibitions of Bratz referenced in a planner produced by MGA,

3   including presentations to retailers on November 6, 2000,[26] November 7, 2000,[27] and

4   November 27, 2000,.[28] or a November 22, 2000 focus group,[29] or a 2000 presentation of

5   Bratz to Toys-R-Us.[30]  It also ignores that, even as to the "boards" she testified about

6   with respect to a single retailer presentation, Harris could not identify Bratz drawings,

7   images, photos or other content they contained:

8           Q.  And what boards were they?

9           A.  They were sketched -- you know, the sketched
            drawings to present them and show them to retailers.

10

11          Q.  Were they any of the drawings that are depicted in
            Exhibit 302?

12          A.  I did not get into specifics.

13          Q.  Is it true that you can't tell me which drawings were
            shown to retailers or what boards were shown to retailers

14          during the year 2000 as it pertained to Bratz?

15          A.  That is true.[31]

16   Harris displayed a similar lack of knowledge regarding (a) the form in which Bratz

17   dolls were exhibited, and (b) which specific Bratz products were shown during the key

18   time period:

19          Q.  Is it true that you don't know one way or another
            whether or not anyone at M.G.A. showed those initial

20          sculpts to a retailer during the year 2000?

21   _____

22   [24]   Additionally, the Discovery Master overruled all of MGA's objections and
     limitations concerning the topics set forth in the Second Notice.  See May 16 Order,

23   ¶ 5, attached to the Corey Dec., Exh. 11.
     [25]   Opp. at 31:21-22.

24   [26]   Harris Tr., 291:12-292:19, attached to the Supp. Corey Dec., Exh. 7.

25   [27]   Harris Tr., 293:16-294:17, attached to the Corey Dec., Exh. 7.
     [28]   Harris Tr., 294:19-295:10, attached to the Corey Dec., Exh. 7.

26   [29]   Harris Tr., 297:3-18, attached to the Corey Dec., Exh. 7.

27   [30]   Harris Tr., 296:5-22, attached to the Corey Dec., Exh. 7.
     [31]   Harris Tr., 288:6-23, attached to the Corey Dec., Exh. 7.

28

07209/2335422.2

-12-

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

1    Ms. Torres:  Objection.

2    The Deponent:  True, I can't --

3    Ms. Torres:  Wait. Objection. Vague. Asked and answered. Go ahead.

4

5    The Deponent:  Yes, I cannot guarantee that.

6    By Mr. Zeller:

7    Q.  What investigation did you make to determine whether or not those initial sculpts of Bratz were shown to any retailers during the year 2000?

8

9    Ms. Torres:  Objection. Beyond the scope of the 30(b)(6) designation, asked and answered, vague. Go ahead.

10

11   The Deponent:  I did not ask anybody if they brought these sculpts. I mean, all the correspondences that I read said there was no samples and that sketch boards were brought to the meetings.

12

13   By Mr. Zeller:

14   Q.  Other than what you read, did you undertake any investigation or did you do anything to try and determine one way or another whether any three-dimensional prototypes or samples or sculpts were shown to retailers of Bratz during the year 2000?

15

16

17   Ms. Torres:  Same objections.

18   The Deponent:  No.

19   By Mr. Zeller:

20   Q.  So you can't be sure one way or another whether or not that happened; is that true?

21

22   Ms. Torres:  Objection. Vague. Asked and answered. Beyond the scope of the 30(b)(6) designation. Go ahead.

23   The Deponent:  True.[32]

24   * * *

25   . . .

26   Q.  Is it fair to say that you can't tell me when the [Bratz] fashion packs were first pitched or presented to retailers?

27

28   [32]  Harris Tr., 284:6-285:21, attached to the Corey Dec., Exh. 7.

709/2335422.2

-13-

A.  Yes.  Without -- I believe there is a document.  I don't want to go back down that path, so no, I don't.[33]

In overruling MGA's objections and compelling the production of a witness, the Discovery Master determined (a) that this information is reasonably available to MGA and (b) that the Topic is reasonably particularized.  It is therefore no defense to rehash, as MGA does, that the Topic is too general[34] or that the basic information Mattel seeks requires "clairvoyance" or to "anticipate every possible minute detail of a topic,"[35] particularly when the witness can learn some of it in a mid-deposition phone call.[36]

Also unavailing is MGA's argument that Ms. Harris' testimony "substantially" complied with the Discovery Master's Order.  In fact, Harris could not even provide the most basic details regarding MGA's exhibitions of Bratz.  MGA does not dispute that information responsive to Topic No. 11 is reasonably available to MGA, nor could it.  Ms. Harris testified that Julie Chemo likely attended presentations in which Bratz were exhibited to retailers during the relevant time period.[37]  Further, as MGA notes, Ms. Harris contacted Paula Garcia during a break to inquire whether Bratz sculpts were shown to third parties during the period at issue, thus indicating that Ms. Garcia likewise has detailed knowledge regarding the exhibition of Bratz prior to June 30, 2001.[38]  Since this information is available to MGA, it was obligated to produce a witness capable of testifying to it, but failed to do so.

**B.    Harris Lacked Knowledge On Topic No. 13**

The Discovery Master again found Topic No. 13, regarding communications referring or relating to Bratz between MGA and any manufacturer, distributor, wholesaler or retailer prior to June 30, 2001, to be reasonably particularized and to be

---

[33]  Harris Tr., 302:16-303:7, attached to the Supp. Corey Dec., Exh. 7.
[34]  Opp. at 31.
[35]  Opp. at 31.
[36]  Harris Tr., 303:8 - 306:9, attached to the Corey Dec., Exh. 7.
[37]  Harris Tr., 288:24-289:2; 289:8-291:5, attached to the Corey Dec., Exh. 7.
[38]  Harris Tr., 303:8 - 306:9, attached to the Corey Dec., Exh. 7.

-14-

1  reasonably available to MGA.  Again, contrary to MGA's claim, Harris knew little, if

2  anything.

3        Bandai agreed with MGA to distribute Bratz in Spain, the first market in

4  which it was allegedly sold.  MGA has produced documents referencing agreements

5  *already* reached between MGA and Bandai--clearly evidencing the existence of

6  communications predating these documents.[39]  Harris, however, knew nothing about

7  communications or negotiations that led to the agreement or agreements.[40]

8        Q.  Sure.  I take it that at some point -- and I think you
       agree with me -- that at some point, Exhibit 532 was
9       actually signed by Bandai and by M.G.A.

10       A.  Correct.

11       Q.  Were there any discussions, negotiations,
       communications of any kind between Bandai on the one
12      hand and M.G.A. on the other hand as it pertained to
       negotiations leading up to this deal memo that we've
13      marked as Exhibit 532?

14       A.  There was one document in one of -- an e-mail that I
       did read.  I'm not sure it quite talked about negotiations.  It
15      did talk about selling of the Bratz, though.  We would
       need to find that document.  That's the only other thing I
16      can recall besides this.

17       Q.  Do you have any knowledge or information about any
       oral communications between Bandai and M.G.A.
18      surrounding this deal memo that we've marked as
       Exhibit 532?

19       A.  No.[41]

20

21  _____

22  [39]  Harris Tr., 174:19 - 176:3, 189:13 - 192:12, 200:10 - 203:9, attached to the
   Corey Dec., Exh. 7; Harris Deposition Exhibit 532, attached to the Supp. Corey
23  Dec., Exh. 20; Harris Deposition Exhibit 534, attached to the Supp. Corey Dec.,
   Exh. 21; Harris Deposition Exhibit 535, attached to the Supp. Corey Dec., Exh. 22.
24  [40]  Harris Tr., 193:15 - 195:11, attached to the Corey Dec., Exh. 7.  Harris was
25  similarly unable to testify properly as to MGA's communications with other
   distributors and retailers.  See, e.g., Harris Tr., 204:10 - 205:12, attached to the
26  Corey Dec., Exh. 7.
27  [41]  Harris Tr., 176:8-177:9, attached to the Corey Dec., Exh. 7; Harris Deposition
   Exhibit 532, attached to the Supp. Corey Dec., Exh. 20.
28

'09/2335422.2

Nor could she say when MGA and Bandai first discussed Bratz.[42]  Similarly, she was not competent to testify as to communications leading up to existing agreements with other distributors:

> Q.  Do you have any knowledge or information as to when the communications between M.G.A. and J.H.N. regarding the sale of Bratz dolls into Australia began?
>
> A.  I know there is some correspondences with J.H.N., so I don't know if that was the first dates or not.
>
> Q.  Is it fair to say that you don't know what the first date of any kind of contact was on the subject of potentially selling Bratz into Australia?
>
> Ms. Torres:  Objection. Misstates the witness's testimony. Vague. Go ahead.
>
> The Deponent:  Yeah, specifically, no, I don't, besides looking at the written documents, you know, that could give us some kind of timelines.
>
> By Mr. Zeller:
>
> Q.  But my question is:  You can't be certain as to how far in advance of those written communications that you saw when M.G.A. and J.H.N. actually began communications or discussions over the potential selling of Bratz in Australia; is that true?
>
> A.  That's true.
>
> Ms. Torres:  Objection. Assumes facts not in evidence. Go ahead.
>
> The Deponent:  True.[43]

The documents prove that such agreements exist; they did not appear from whole cloth; communications or negotiations occurred; they are reasonably available to MGA; and MGA must produce a witness to testify about them.

Mattel does not have to show that Mr. Hitch did or did not have files before MGA must comply with the Order and produce a competent witness.[44]  Harris testified

---

[42]  Harris Tr., 195:2-6, attached to the Corey Dec., Exh. 7.

[43]  Harris Tr., 204:10-205:12, attached to the Corey Dec., Exh. 7.

[44]  Opp. at 31.

07209/2335422.2

-16-

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

1 that Martin Hitch, a former MGA employee, was involved in discussions between
2 MGA and Bandai, and that Alice Kao, MGA's Hong Kong employee, could get
3 Mr. Hitch's files.[45] Neither Harris nor counsel made any effort to educate her with
4 information contained in those files.[46] Nor did she speak to Isaac Larian or Jim
5 Olmstead regarding communications between MGA and distributors, despite the fact
6 that Larian and Olmstead authored e-mail messages referencing existing distributorship
7 deals in Europe and Australia, and thus likely have information responsive to this
8 topic.[47] Rather, as Harris testified, she took no steps to prepare for her testimony on
9 Topic No. 13 beyond reviewing MGA's produced documents and speaking with
10 counsel, which did not arguably cover the information sought by the Topic and which is
11 reasonably available to MGA.  The Discovery Master should order MGA to fully
12 prepare a witness to testify regarding Topic No. 13.

13     **C.**   <u>**Harris Lacked Knowledge On Topic No. 14**</u>

14     Harris's testimony on Topic No. 14, concerning the first manufacture, shipment,
15 distribution and sale of Bratz, was woefully deficient, contrary to MGA's claim.  The
16 timing of Bratz creation is critical, but Harris could not identify when Bratz was first
17 manufactured.[48]  She must be compelled to return on that ground alone.  She lacked
18 knowledge regarding the identity or role of any person who was involved in the first
19 manufacture of Bratz dolls.[49]  MGA's failure to produce a witness prepared to testify on
20 Topic No. 14 violated the May 16 Order.

21     In its Opposition, MGA does not dispute that Harris was unable to competently
22 testify as to Topic No. 14, apparently conceding that it failed to provide a
23 knowledgeable witness on this topic.  MGA merely argues that Mattel had a "full and

---

25 [45] Harris Tr., 178:1 - 178:7; 199:7 - 199:23, attached to the Corey Dec., Exh. 7.
26 [46] Harris Tr., 194:12-24, attached to the Corey Dec., Exh. 7.
27 [47] Harris Tr., 187:6 - 192:11; 200:10 - 203:9, attached to the Corey Dec., Exh. 7.
[48] Harris Tr., 115:5-12, attached to the Corey Dec., Exh. 7.
28 [49] Harris Tr., 116:15-117:16; 117:18-118:11, attached to the Corey Dec., Exh. 7.

109/2335422.2

1    fair opportunity" to examine Edmond Lee, MGA Hong Kong's 30(b)(6) designee, on

2    this topic. This argument fails for a number of reasons. First, the Discovery Master's

3    May 16, 2007 Order compelling the production of a Rule 30(b)(6) on this topic was

4    directed at MGA, not MGA Hong Kong.[50]  That Mattel also seeks testimony from

5    MGA's Hong Kong affiliate on this topic simply does not excuse MGA's direct

6    violation of the Court's clear and express order on information in MGA's possession.

7            Second, Harris did not testify that information responsive to this topic is not

8    reasonably available to MGA, nor does MGA make that contention now. Rather, when

9    questioned on this subject, Harris repeatedly responded "I don't know."[51]

10           Q.   Who at MGA first had contact with Early Light [the
             manufacturer of Bratz] as it pertained to Early Light
11           potentially manufacturing Bratz dolls?

12           Ms. Torres: Objection. Vague. Assumes facts not in
             evidence.
13
             The Deponent: I don't know.
14
         By Mr. Zeller:
15
             Q.   Do you have any knowledge or information as to who
16           at Early Light first had contact with MGA insofar as it
             pertained to the potential manufacture of Bratz dolls?
17
             Ms. Torres: Objection. Vague. Assumes facts not in
18           evidence.

19           The Deponent: I don't know.

20       By Mr. Zeller:

21           Q.   Do you know the identity of any person there at Early
             Light who was involved in the first manufacture of Bratz
22           dolls?

23           A.   I don't.

24           Q.   Do you know the identity of any person at MGA who
             was involved in the first manufacture of the Bratz dolls?
25

26
     ───────────────
27   [50]  May 16 Order, attached to the Corey Dec. Exh. 11.
     [51]  Harris Tr., 116:15-117:16, attached to the Corey Dec., Exh. 7.
28

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO
COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

1    Ms. Torres:  Objection.  Vague.  Assumes facts not in evidence.

2

3    The Deponent:  I mean, I would assume it's people, you know, in our Hong Kong office, but I personally do not know.[52]

4

5            . . .

6    Q.   So is it fair to say you don't have any information or knowledge regarding the identity or role of any person who was involved in the first manufacture of Bratz dolls?

7

8    A.   Not on the -- yes.  Not on the manufacturing.

9    Q.   And that's not something you looked into or investigated; is that correct?

10   A.   That is correct.[53]

11   Mattel is entitled to depose a knowledgeable <u>Rule</u> 30(b)(6) witness to obtain MGA's

12   corporate knowledge on Topic No. 14, in addition to any information possessed by

13   MGA Hong Kong.

14           Finally, MGA's contention that Mattel had a "full and fair opportunity" to

15   examine Mr. Lee regarding the first manufacture, shipment, distribution and sale of

16   Bratz during his two days of deposition is disingenuous at best.  As an initial matter,

17   Mr. Lee was designated as MGA Hong Kong's 30(b)(6) witness on all 61 topics to

18   Mattel's Notice of Deposition to MGA Hong Kong.[54]  It is unreasonable to expect

19   Mattel, under the best circumstances, to fully examine one witness on 61 separate

20   topics in a two-day span.  In this case, Mr. Lee also required the assistance of a

21   translator, causing the pace of the examination to proceed more slowly than usual.[55]

22   Further, MGA compounded this problem by improperly coaching the witness and

23   improperly instructing Mr. Lee not to answer questions that did not invade the attorney-

24

25   [52]  Harris Tr., 116:15-117:16, attached to the Corey Dec., Exh. 7.

26   [53]  Harris Tr., 118:3-11, attached to the Corey Dec., Exh. 7.
     [54]  Letter from Michael T. Zeller to Thomas Nolan, dated November 15, 2007,

27   attached to the Supp. Corey Dec., Exh. 8.

28

1  client privilege -- as it did with many of the depositions at issue here.[56]  Mattel has

2  written to MGA, outlining the deficiencies in Mr. Lee's deposition and requesting

3  additional time to examine him.[57]  To date, however, MGA has not produced Mr. Lee

4  for further deposition.[58]   MGA should not be permitted to rely on the deficient

5  testimony of MGA Hong Kong's corporate designee to evade its own obligation,

6  pursuant to the May 16 Order, to produce a competent witness on Topic No. 14.  MGA

7  should again be compelled to produce a knowledgeable witness now.  See Davidson v.

8  Goord, 215 F.R.D. 73, 77 (W.D.N.Y. 2003) ("A requested party cannot refuse to

9  respond to a requesting party's discovery request on the ground that the requested

10  information is in the possession of the requesting party.").

11      **D.    Harris Lacked Knowledge On Topic Nos. 27 And 28**

12      Harris should also be compelled to return for no other reason than she was unable

13  to identify the amounts paid to Cloonan or to her counsel in connection with this case,

14  which is squarely within the scope of Topic No. 27:

15      Q.   Does M.G.A. have any kind of agreement with Elise
        Cloonan with respect to the payment of her legal fees in
16      this case?

17      A.   I have no idea.

18      Q.   Did you do anything to investigate that?

19      A.   No.

20      Q.   Do you have any knowledge or information as to who
        is paying her legal fees in connection with this case?
21

22      A.   I have no idea.

23      [55]  Letter from Michael T. Zeller to Thomas Nolan, dated November 15, 2007,
        attached to the Supp. Corey Dec., Exh. 8.
24      [56]  Letter from Michael T. Zeller to Thomas Nolan, dated November 15, 2007,
25      attached to the Supp. Corey Dec., Exh. 8.
        [57]  Letter from Michael T. Zeller to Thomas Nolan, dated November 15, 2007,
26      attached to the Supp. Corey Dec., Exh. 8.  Letter from B. Dylan Proctor to Timothy
27      Miller, dated December 20, 2007, attached to the Supp. Corey Dec., Exh. 9.
        [58]  Supp. Corey Dec., ¶ 10.
28

07209/2335422.2

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

1       Q.  So you don't have such information or knowledge?

2       A.  No knowledge.[59]

3    In an attempt to refute Mattel's claim that Harris was not properly prepared on

4 these subjects, MGA states that "Harris reviewed numerous MGA business records

5 where the requested information was most likely to be found and discussed the matter

6 with MGA's senior management."[60] But Harris's deposition testimony defeats this

7 argument. She testified that her so-called "review" of "numerous MGA business

8 records" was searching cherry-picked portions of MGA's vendor files and its electronic

9 purchase order files for the names "Elise" and "Cloonan," but she reviewed no

10 documents within these files:

11       Q.  Then to go back to my question, in terms of what you
looked at when you did this research through the account
12       payable vendor files, did you look at it at the file-folder-
label level, or did you look further into the particular
13       documents, the individual pages that were in any of those?

14    Ms. Torres: Objection. Vague.

15    The Deponent:  I just looked for a file title "Elise
Cloonan" or "Cloonan, Elise."
16

    By Mr. Zeller:
17
    Q.  Did you or anyone that you know of look at the
18    individual documents in those account payable vendor
files looking for Elise Cloonan's name?
19
    Ms. Torres: Objection. Vague. Calls for speculation.
20
    The Deponent: I did not.[61]
21

22    Beyond this superficial search, Harris took no steps on this topic except to ask

23 Paula Garcia and Isaac Larian if they knew Ms. Cloonan.[62] With respect to Topic

24 No. 28, Harris could not confirm specifically what, if anything, MGA searched for

25

26  [59]  Harris Tr., 204:10-205:12, attached to the Corey Dec., Exh. 7.
    [60]  Opp. at 33.
27  [61]  Harris Tr., 69:12 - 70:18, attached to the Corey Dec., Exh. 7.
    [62]  Harris Tr., 70:20-71:16, 81:17-82:11, attached to the Corey Dec., Exh. 7.
28

1  communications between MGA and Elise Cloonan referring or relating to Bryant,

2  Mattel, Bratz, and/or Anna Rhee.[63]  MGA should again be compelled to produce a

3  properly prepared witness on these topics.

### E.  MGA Should Be Compelled to Comply With Its Prior Agreement to Produce Harris for an Additional Day

6      MGA designated Harris to testify on eight separate topics, each of which go to

7  the heart of this action, including the origin, creation, design and development of Bratz

8  prior to June 30, 2001; relevant contracts concerning Carter Bryant and Bratz;

9  payments made to Bryant and other financial information relating to Bratz; and third

10  parties who were involved in or otherwise have knowledge about the creation, design

11  and development of Bratz.[64]  MGA does not dispute this, but has produced Harris for

12  only seven hours of examination.[65]  Less than one hour per topic is not sufficient.  The

13  Court should grant additional deposition time so that Mattel may fully inquire into the

14  Topics.  See Fed. R. Civ. P. 30(d)(2) (Court "must allow additional time . . . if needed

15  for a fair examination of the deponent or if the deponent or another person, or other

16  circumstance, impedes or delays the examination").

---

[63]  Harris Tr., 97:17-20, attached to the Corey Dec., Exh. 7.

[64]  See Second Notice, attached to the Corey Dec., Exh. 8.  In its Opposition, MGA states that Mattel failed to ask Harris questions on Topic Nos. 19, 21, 22 and 23.  Opp. at 34-35, n.9.  This is incorrect.  Mattel asked Harris questions regarding both Topic Nos. 19 (Harris Tr., 78:10-81:2; 138:17-139:9; 259:18-280:6, attached to the Supp. Corey Dec., Exh. 7.) and 23 (Harris Tr., 127:4-131:12; 135:17-137:19, attached to the Supp. Corey Dec., Exh. 7.).  However, due to the unreasonable time constraint imposed by MGA, Mattel was unable to adequately examine Harris on these key issues in any depth.  Mattel was not able to ask Harris any questions at all regarding Topic No. 22 (as stated above, Tonnu, not Harris, was MGA's designee on Topic No. 21).  It is for precisely this reason that the Court also should grant additional deposition time.  See Fed. R. Evid. 30(d)(2).

[65]  Corey Dec., ¶¶ 62-68.

07209/2535422.2

1    Following Ms. Harris's deposition, MGA agreed that Mattel was entitled to

2    additional time and agreed to produce her for another day of deposition.[66]   MGA

3    reneged and now refused to produce her, to Mattel's prejudice.   As its justification,

4    MGA now claims that Mattel's counsel purportedly badgered and harassed the witness

5    (or was frustrated with Harris' lack of knowledge) and did not proceed efficiently

6    through the designated topics (on which Harris was not educated).[67]   The testimony

7    regarding Mattel's examination about agreements between MGA and Margaret Hatch-

8    Leahy (the subject of Topic No. 19), was not harassing.   If it had been, MGA could

9    have terminated the deposition and moved for a protective order.   Fed. R. Civ. P. 26(c),

10   30(d).[68]   The relevant testimony reveals that any inefficiency was not due to

11   "badgering" but to MGA's failure to present an adequately knowledgeable designee and

12   Ms. Harris's refusal to respond to straightforward questions.   For example:

13       Q. . . . I'm trying to give you an opportunity to make your

14   testimony clear.   And so please tell me -- there are really only three options here:  Exhibit 538 are the agreements

15   that M.G.A. and Margaret Hatch-Leahy [sculptor of Bratz] had during the year 2000, or Exhibit 538 are not all the

16   agreement, or you don't know.   Please tell me which of those three your testimony is as M.G.A.'s representative on

17   this subject.

18       A. Okay.   I still go back to that I saw a lot of different agreements and I've gone through tons of paperwork, and

19   if we have all the agreements that are in these books, I will look at them real quick and I will verify for you that there

20   is only these two agreements.   All agreements have been turned over.

21       Q. Well, please go ahead and look at whatever you need

22   to do to answer my question.

23       A. So do we have all agreements in one place?

24       Q. I think you need to discuss that with your counsel.

25

26   [66]   Letter from Scott Gizer to Jon Corey, dated September 25, 2007, attached to the Corey Dec., Exh. 48.

27   [67]   Opp. at 34-36.

28   [68]   Opp. at 35.

1    Ms. Anderson:  There's no question pending.  Ask a
     question.  We're not going to sit here in that regard.  If you
2    have a question, Mr. Zeller, ask it.

3    Mr. Zeller:  The witness asked to look at something that's
     in the possession of her counsel in order to apparently
4    answer my question.  If she wants to do that, I'm giving
     her the opportunity.

5
     Ms. Anderson:  Actually, I believe she was gesturing at
6    your books --

7    Ms. Torres:  At your books.

8    Ms. Anderson:  -- As she was talking.  So if you want to
     share your books with her, go ahead.

9
     The Deponent:  So do you want me to look at your books?
10
     By Mr. Zeller:
11
     Q.  So are you telling me you cannot answer my question
12   unless you look at my books?  Is that -- as M.G.A.'s
     representative on this subject?
13
     A.  You know what?
14
     Ms. Torres:  Objection.  Objection.  That's not a question.
15   It's an argument.  It's harassing.  It is -- it has been asked
     and answered.  She's given you her testimony --
16
     Mr. Zeller:  She has not answered the question.  You can -
17   - it has certainly been asked.  It has not been answered.

18   Ms. Torres:  Yes, it has.

19   By Mr. Zeller:

20   Q.  As M.G.A.'s representative on this subject, identify for
     me every agreement that M.G.A. and Margaret Hatch-
21   Leahy had pertaining to her work on Bratz during the year
     2000.
22
     A.  I would have to go through all the documents that we
23   have.[69]

24                              * * *

25   Q.  There might be more agreements, there might not be.
     You can't tell me as you sit here now; is that true?
26
     Ms. Torres:  Objection.  Asked and answered.
27
     ─────────────────────────────────────────────
     [69]  Harris Tr., 268:10-270:16, attached to the Supp. Corey Dec., Exh. 7.
28

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO
COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

1  The Deponent:  Not without going through all the documents and looking at all of the agreements.

2

3  By Mr. Zeller:

4  Q.  Which you said that you did before you came to the deposition; is that correct?

5  A.  That is correct.[70]

6       MGA should not be permitted to stonewall Mattel's discovery efforts by

7  providing an unprepared 30(b)(6) witness, let alone on the grounds that MGA's own

8  failure to present a witness who can confirm or deny that it had additional agreements

9  with the sculptor of Bratz permits it to now refuse to provide information the Discovery

10  Master compelled.  The Court should grant Mattel leave for additional time to examine

11  a competent witness on Topic Nos. 11, 13, 14, 19, 22, 23, 27 and 28.

12  IV.  **MGA VIOLATED THE ORDERS WHEN IT FAILED TO PRODUCE**

13      **A COMPETENT WITNESS TO TESTIFY REGARDING TOPIC NO.**

14      **34, AND MGA'S DESIGNEE WOODMAN SHOULD BE COMPELLED**

15      **TO RETURN**

16       MGA has gone to extraordinary lengths to avoid giving testimony on its past

17  sworn statements and those of its agents.  It is not difficult to understand MGA's

18  resistance.  It would prefer not to explain why MGA made statements under oath to the

19  Patent Office and to other courts to obtain or benefit from Bratz-related purported

20  intellectual property rights, but made contrary sworn statements in connection with this

21  action.  Or to explain why MGA felt the need to change basic information it had

22  included in applications for copyright registrations on Bratz-related intellectual

23  property at least 11 times.

24       These are just two of many reasons why Mattel has now had to bring three

25  motions on this one topic, why MGA keeps coming up with new objections even

26  though the Court overruled all of MGA's "objections, . . . limitations . . . and

27

28  [70]  Harris Tr., 272:6-17, attached to the Supp. Corey Dec., Exh. 7.

109/2335422.2

-25-

1  conditions," why the monetary sanctions imposed on MGA after the second motion

2  have not deterred it from blocking the testimony,[71] and why MGA instructed Woodman

3  not to answer about seventy five percent of the questions put to Woodman, and

4  presented false testimony, or no testimony, on the rest.  This Court should order MGA

5  again to provide full and complete testimony on Topic 34 or should issue preclusion

6  sanctions.

7       A.    **MGA Defends Itself By Pointing to Woodman's Admittedly False**

8          **Testimony On Topic No. 34**

9      While trying to distance itself from prior counsel's improper instructions not to

10  answer, MGA points to the testimony that Woodman did provide as supposed evidence

11  that it provided an competent witness on Topic No. 34.  But the testimony MGA now

12  tells this Court to consider "binding" on the company is not even real testimony; it is

13  just "MGA's position."

14      MGA's argument in this regard was delicately and tellingly worded:

15          Mr. Woodman reviewed 30-50 sworn statements, read the
16          transcripts of the depositions of Carter Bryant . . . and
        Victoria O'Connor, . . . and interviewed Leon
17          Djiguerian, . . . in preparation for his testimony [citations
        omitted].[72]  Based on that review, Mr. Woodman
18          <u>answered questions as to the correctness or incorrectness</u>
        of many factual statements plucked out of the multi-page
19          sworn statements placed in front of him by Mattel's
        counsel. . . .  Mr. Woodman's <u>testimony regarding the</u>
20          <u>correctness or incorrectness of factual statements</u>
        identified from these sworn statements at the deposition is
        binding on MGA.[73]

21

22

23

24     [71]  Underscoring MGA's recalcitrance, it even claims now that it "fully complied

25  with its obligations under the May 16, 2007 Order" that this Court already found it

to have violated.  Opp. at 11.

26     [72]  MGA does not deny the limited nature of Mr. Woodman's preparation, but

27  merely argues that it was sufficient.  *Cf.* Motion at 21 and Opp. at 22.

   [73]  Opp. at 22-23 (emphasis added).

28

-26-

1  Further, MGA suggests that the testimony in question pertained to "whether MGA now
2  believes that the factual statements identified in those sworn statements were correct or
3  incorrect based on the materials reviewed in his investigation."[74]

4      But as Woodman himself revealed, the "testimony" he gave had nothing to do
5  with MGA's current beliefs, was not based on any "investigation," and certainly had
6  nothing to do with actual correctness or incorrectness of these statements. Woodman
7  admitted (in what even MGA would define as sworn statements) that no matter what
8  inconsistencies existed between Bryant's testimony and MGA's sworn statements, he
9  always presented Carter Bryant's testimony as "true," not knowing whether the "facts"
10  were actually true or not, and not caring to investigate because he was there to testify
11  about "MGA's position."[75]   The Topic, however, sought facts, not conclusory
12  proclamations of MGA's "position."  Mattel is entitled to a witness willing and able to
13  testify truthfully regarding the facts concerning MGA's sworn statements.

**B.**   **MGA's Statements to the Patent and Trademark Office and**
15      **Copyright Office Are Unquestionably "Sworn Statements"**

**1.**   **Testimony Relating to Statements In Or In Support of Patent**
17      **Applications.**

18      MGA effectively concedes that Larian's statements to the Patent and Trademark
19  Office ("PTO") in support of the patentability of his invention—in his patent
20  application and the related materials—were sworn, under oath, pursuant to § 115. See
21  Motion at 65-66. MGA never addresses the application of § 115, choosing instead to
22  set up a straw man argument that Carter Bryant's declaration does not render Larian's
23  statements to the Patent Office "sworn."[75]   MGA similarly fails to address the fact that
24  the Office Action, Exhibit 501, relates directly to the sworn statements made by Larian

25

---

26  [74] Opp. at 23.
27  [75] Motion at 30-33.
28  [76] Opp. at 26.

209/2335422.2

1  and Bryant in Exhibits 500, 502 and 548, instead pointing out the irrelevant and

2  obvious fact that Exhibit 501 is not itself a sworn statement of MGA.

3    Further, MGA acknowledges that both the Baker Oil and Control Components

4  courts treated statements made to the Patent Office as sworn statements.[77]  Indeed,

5  MGA tries to distinguish them on that basis.  It argues that those courts assumed the

6  statements to be sworn, whereas in the present case whether the statements are sworn is

7  disputed.  MGA misses the point.  These courts recognized the statements were sworn

8  because they are, and because it is frivolous to suggest otherwise.  Indeed, MGA's

9  argument cuts against the very essence of our common law, which is accretive by

10 nature and builds upon prior decisions exactly in this manner.  Further, in Baker Oil,

11 the Federal Circuit did *not* reverse the district court because it had treated the

12 statements in question as sworn statements.  The sole issue there was the *weight* those

13 sworn statements should have been given.[78]

14   Despite these concessions, MGA now argues that it will allow testimony from

15 Mr. Khare on the application, amendment and Bryant declaration it previously

16 instructed on, but only to the extent that the Larian inventorship declaration,

17 MGA3765285-86 (which MGA neither identified in its Opposition brief nor attached it

18 to its declaration) "makes specific reference to the contents of the patent application."

19 Miller Dec. ¶ 38.  According to MGA's hyper-literal view of the world, this means that

20 Mattel will again get no testimony.  MGA will say that Larian's declaration that he is

21 "the original, first and sole inventor" of the subject of his patent application and that

22

23  [77]  Opp. at 26, 27.

24  [78]  Baker Oil Tools v. Geo Vann, Inc., 828 F.2d 1558 (Fed. Cir. 1987).  Further,
    United States v. Bueno-Vargas, cited by MGA, does not even address the question

25  of whether defendants' trademark and patent applications are "sworn statements."
    That decision—interpreting issues of constitutional criminal procedure—simply

26  held that statements made under penalty of perjury satisfied the Fourth

27  Amendment's oath or affirmation requirement, an irrelevant issue here.  383

28  F.3d 1104, 1111 (9th Cir. 2004).

1  "[a]ll statements of [his] own knowledge are true,"[79] does not reference any of the

2  patent application's or other documents' contents sufficiently to be within the scope of

3  Topic 34, and will again instruct not to answer.

4      Under the Discovery Master's Order, MGA's limitations and objections were

5  overruled and Mattel is entitled to discovery of MGA's sworn submissions to the Patent

6  Office, not just a sentence or two plucked out of context. Even where some testimony

7  about a document was permitted, MGA's improper instructions not to answer on closely

8  related documents, or on other parts of the same document, tended to render this limited

9  questioning useless. Mattel is entitled to test—with a Rule 30(b)(6) witness—the

10  individual sworn statements that were made relating to the Bratz intellectual property;

11  as well as any statements made along with, or in support of, or facts that were

12  consistent, or inconsistent, with, those statements.[80]

13      2.   **Testimony Relating to Statements In Or In Support of**

14      **Trademark Registration Applications.**

15      MGA also proposed that it allow Mr. Khare to present testimony on the sworn

16  statements in the applications for trademark registration filed by MGA.[81] But since

17  MGA's idea of testimony excludes everything about the statements, such as the

18  circumstances in which they were made, the factual basis of the statements or the lack

19  thereof, and even basic information about the drafting, investigation, review, or

20  authorization of the statements, this is not much of an offer. Again, Mattel is entitled to

21

[79]   See Letter from Timothy A. Miller to Scott Kidman, dated December 20,
22  2007, Supp. Corey Dec., Exh. 11; Declaration of Isaac Larain, dated February 24,
23  2003, Supp. Corey Dec., Exh. 12.
[80]   Without relief from the many limitations MGA has improperly read into
24  Topic 34, there is little point in deposing Mr. Khare or anyone else on the topic.
25  MGA makes much of its last-minute offer of a new witness on a tiny slice of Topic
26  34, but since the proposed testimony again was so narrow as to be useless, Mattel
chose to reject this "offer" and brought this motion instead. There is no basis for
27  MGA's presumption that Mattel accepted it. Opp. at 15.
[81]   Opp. at 26.
28

1  discovery relating to the sworn statements, including the certificates of registration that
2  are the result of the sworn statements in the applications for trademark registration.

3         **3.**     **Testimony Relating to Statements In Or In Support of**
4                  **Copyright Registration Applications.**

5        As for the copyright registrations and certificates, MGA merely assumes that the
6  test for a "sworn statement" in this action is that required to establish the basis for a
7  search warrant.   But MGA never explains why the statements must meet the
8  requirements of "sworn statement" needed for a search warrant, especially since Topic
9  No. 34 specifically includes "other sworn written statements of any type."

10        MGA argues, in effect, that registrations and certificates in question are not
11  "sworn" enough to count as "sworn statements" because they only include a statement
12  that the information is correct to the best of the swearer's knowledge.[82] MGA does not
13  seem to appreciate the irony that it seeks to avoid scrutiny into the very loose
14  statements it made under oath to the Copyright Office by arguing that they were loosely
15  made. It is MGA's looseness with these statements that justifies a deposition relating to
16  them.

17        Although MGA argues that these statements were not made under penalty of
18  perjury, it does not acknowledge or deal with the fact that each of the exhibits in
19  question were made pursuant to 17 U.S.C. § 506(e) and state on their face that "Any
20  person who knowingly makes a false representation of a material fact in the application
21  for copyright registration provided for by section 409 or in any written statement filed
22  in connection with the application shall be fined not more than $2500." Certainly, the
23  same logic that makes a statement made under penalty of perjury a sworn statement
24  makes a statement made under threat of other penalties sworn also.[83]

25

26     [82]  Opp. at 25.
27     [83]  MGA halfheartedly resurrects its "Topic No. 33" objection, which seeks to
     block testimony on one topic because it arguably happens to overlap with another
28     (footnote continued)

07209/2535422.2

C.   **MGA's Sentence-by-Sentence Approach To The Topic Makes Examination on Topic No. 34 Incomplete and Unintelligible; Mattel Deserves Full and Complete Testimony on Topic 34**

MGA's discussion of its instructions not to answer based on its date restriction, and relating to sworn statements made during the Art Attacks trial, is both meritless and confirms that its obstruction and non-compliance were deliberate.

On the date issue, MGA states that will allow testimony "regarding statements that refer or relate to the specified time period" but simultaneously argues that "prior counsel's interpretation of Topic 34 was correct."[84] Thus, at best, MGA will continue to go sentence by sentence through the sworn documents it presented to courts, the PTO, the Copyright Office, and other bodies to obtain or enforce purported Bratz-related intellectual property rights, allowing narrow questioning on just those sentences that unquestionably relate to the period before June 30, 2001 and refusing questions on the other sentences in the same document, and on related documents so that Mattel cannot get a full picture of the circumstances in which these representations were made. This is improper.

MGA's Opposition presents no reasoned defense of its instruction as to the Art Attacks trial testimony. Even if these statements were not within the scope of Topic No. 34 because Mattel counsel was observing the trial along with other members of the public, they should be fair game for discussion at the deposition because they are part of the inconsistencies that exist between them and sworn statements made by MGA elsewhere. MGA continues to gut Topic No. 34 by carving out chunks to obscure MGA's web of inconsistencies about the origins, creation and timing of Bratz.

Oddly, MGA tries to downplay the harm caused by its instructions not to answer by arguing that Mr. Woodman did not have any knowledge of the relevant facts

topic. MGA presents no authority for this novel position; indeed, it would render the Rule 30(b)(6) procedure useless if carried to its logical extreme.

1  anyway.[85] While Mattel does not dispute that Mr. Woodman was ignorant of the facts
2  he was supposed to be able to testify to, that does not relieve Mattel of the prejudice it
3  suffered through MGA's endless instructions.  Due to these instructions, Mattel's
4  counsel was not permitted to learn of basic background information it needed to
5  formulate questions on the permitted materials.  Nor could Mattel's counsel test a
6  document that contained a sworn statement with a document that supported, refuted, or
7  challenged that statement.  MGA should be ordered—again—to provide unrestricted
8  testimony on Topic No. 34.

9  **D.    MGA's Halfhearted New Privilege Claim Has No Legitimate Basis**

10  As set forth in specific examples in Mattel's motion, as to those statements that
11  even MGA would admit were sworn enough to provide testimony on, Woodman
12  admittedly knew nothing at all and was just testifying to "MGA's position."[86]  But if
13  that somehow weren't enough to completely block the facts Mattel is entitled to, MGA
14  now argues that much of the information Mattel seeks is protected from disclosure by
15  the attorney-client communications privilege and work product doctrine.[87]

16  MGA is wrong for three reasons.  First, if that type of questioning implicated
17  privileged or otherwise protected information, as MGA now claims, the privilege or
18  protection was waived when Mr. Klevens failed to object, or to instruct, on the basis of
19  the privilege or protection.  "Failure to timely assert an objection, even one of privilege,
20  constitutes a waiver of such objection."  Mackey v. IBP, Inc., 167 F.R.D. 186, 200 (D.
21  Kan. 1996); see also Rascon v. Hardiman, 803 F.2d 269, 277 (7th Cir. 1986) ("[f]ailure
22  to object at the time of the deposition results in a waiver of those objections");
23  Palazzetti Import/Export, Inc. v. Morson, 2000 WL 1015921, at *1 (S.D.N.Y. Jul. 21,
24  2000) (failure to object to deposition questions or instruct not answer on the basis of

25
26  [84]  Opp. at 29.
     [85]  Opp. at 28.
27  [86]  Motion at 24-25, 28-33.
     [87]  Opp. at 23-24.
28

1   privilege constitutes waiver of that privilege); <u>Perrignon v. Bergen Brunswig Corp.</u>, 77

2   F.R.D. 455, 461 (N.D. Cal. 1978) (attorney waives client's privilege when he fails to

3   object to deposition).  Despite Mr. Kleven's predilection for instructing not to answer,

4   he never once instructed, or even objected, on the basis of privilege during the

5   deposition when Mr. Woodman was being questioned as to information on the

6   preparation, review and approval of MGA's sworn statements.  Mr. Richard Daniels,

7   MGA's in-house counsel and the declarant purportedly supporting MGA's brand-new

8   privilege claim, was sitting next to Mr. Klevens throughout Mr. Woodman's deposition

9   and did nothing to assert any claims of privilege as to the documents he lists in his

10  declaration.

11       Second, to the extent Mr. Daniels' declaration provides any support for a

12  privilege assertion at all, such "blanket claims of privilege" are improper.  <u>Nguyen v.</u>

13  <u>Excel Corp.</u>, 197 F.3d 200, 207 n.16 (5th Cir. 1999); <u>see also</u> 6 James Moore et al.,

14  <u>Moore's Federal Practice</u> § 26.47(1) (3d ed. 1999) ("A bald assertion of privilege is

15  insufficient.... [A] claim of privilege must be directed to specific questions ..., so that

16  the trial court has enough information so as to rule on the privilege claim.") (footnotes

17  omitted).  Even a generalized claim in an affidavit or declaration setting forth facts

18  supporting the assertion of privilege over the category of communications inquired

19  into—which is far beyond Daniels' attestation that lawyers were just "involved in the

20  preparation" of these exhibits—is not sufficient.  Rather, each document or

21  communication must be inquired into individually to assess the applicability of the

22  privilege.  <u>Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust</u>, 230

23  F.R.D. 398, 407 (D. Md. 2005) (noting that attorney's "general and conclusory"

24  affidavit "rel[ied] mistakenly on his status as a lawyer and status of the other party to

25  the communication as a client, or agent of a client" to improperly shield discovery).

26       Finally, the information MGA seeks to protect from disclosure is not privileged.

27  Courts allow inquiries into the circumstances surrounding the creation of affidavits and

28  declarations, even when the parts of those documents may well be protected by the

J09/2335422.2

-33-

1   privilege.  See, e.g., Davis v. City of Seattle 2007 WL 4166154, at *3-4 (W.D. Wash.

2   Nov. 20, 2007) (allowing inquiry into factual information surrounding preparation of an

3   otherwise privileged report); Wells v. Xpedx, 2007 WL 1200955, at *4 (M.D. Fla. Apr.

4   23, 2007) (same); Judicial Watch, Inc. v. U.S. Dept. of Comm., 201 F.R.D. 265, 269-

5   270 (D.D.C. 2001) (allowing inquiry into draft declaration over work-product

6   objections); Warnaco, Inc. v. Freund, 94 F.R.D. 237, 238 (E.D.N.Y. 1980) (permitting

7   inquiry into factual information regarding preparation of an affidavit.  Here not even

8   the underlying documents are privileged; in fact, every last one of them was submitted

9   to a third party, like a court, the Patent and Trademark Office or the Copyright Office.

10        MGA should be ordered to provide full and complete testimony as to the

11  circumstances of MGA's sworn statements—including the context, the preparation, the

12  review, the confirmation of facts, the approval and the authorization of the statements—

13  without further objection or qualification.

14  V.   **MGA VIOLATED THE ORDERS WHEN IT FAILED TO PRODUCE**

15       **A COMPETENT WITNESS TO TESTIFY REGARDING SPECKIN'S**

16       **INK AND PAPER TESTING (TOPIC NO. 41), AND MGA'S**

17       **DESIGNEE TONNU SHOULD BE COMPELLED TO RETURN TO**

18       **ANSWER QUESTIONS REGARDING THAT TOPIC**

19       A.   **Mattel is Entitled to Information Concerning the Factual**

20            **Circumstances Surrounding Mr. Speckin's Testing**

21       Mattel does not seek information concerning Mr. Speckin's opinions or the

22  results of his tests on Bratz documents, which is the sole predicate of MGA's work

23  product objections.[88]  Rather, Mattel seeks factual information concerning the handling

24

---

25      [88]   MGA knows this.  See e.g. Tonnu Tr. 164:10-165:19, attached to the Supp.
    Corey Dec., Exh. 1; 9/25/07 Tonnu Tr. 571:22-579:12, attached to the Supp. Corey
26  Dec., Exh. 3.  MGA's objections must be put into context with its past, similar
27  (overruled) objections concerning Topic No. 41.  MGA at first refused to produce
    any witness in response to Topic No. 41, asserting that the results of testing by Erich
28  (footnote continued)

07209/2335422.2

1  of original Bratz documents, as well as the identification of specific documents which

2  were subjected to handling by Mr. Speckin.[89] These factual circumstances *surrounding*

3  Mr. Speckin's testing are not protected from discovery by the work-product doctrine.[90]

4  MGA does not dispute that Mattel is entitled to this information by law and pursuant to

5  Court Order.[91]   MGA's improper instructions not to answer deposition questions

6  concerning these surrounding facts should be overruled and sanctions should be

7  imposed against MGA.

8          **1.**    **MGA Admits Mattel is Entitled to the Factual Information**

9                **Surrounding Mr. Speckin's Testing**

10      MGA objects to providing information concerning which documents were tested,

11  asserting that the "selection of certain pieces of evidence from a mass of evidence is an

12

---

13  Speckin, its alleged expert, are protected by attorney work product and privilege

14  until it designates him to testify.  MGA Entertainment Inc.'s Opposition to

15  Mattel, Inc.'s Motion to Compel MGA to Produce Witnesses for Deposition

16  Pursuant to Rule 30(b)(6) and for Sanctions, dated April 26, 2007 ("MGA

17  Opposition"), at 9-10, attached to the Corey Dec., Exh. 18.  The Discovery Master

18  and then the District Court overruled MGA's objections.  May 16 Order, ¶ 5,

19  attached to the Corey Dec., Exh. 11; Judge Larson's Minute Order dated July 2,

20  2007, attached to the Corey Dec., Exh. 15.  Still, MGA refused to comply, and the

21  Discovery Master in his August Order sanctioned MGA for its willful failure to

22  provide a witness to testify on this Topic.  When MGA's witness eventually did

23  appear, MGA instructed her not to answer.  Motion at 46:21-47:5.

[89]  Opp. at 16-18.  The case law relied upon by MGA focuses on whether a party may discover its opponent's consulting expert's test results, as opposed to the factual circumstances surrounding the testing.  See e.g. AK Steel Corp. v. Sollac & Ugine, 234 F. Supp. 2d 711, 713-14 (S.D. Ohio 2002) (plaintiff moved to compel production "of *the results* of gas composition tests" performed by defendant) (emphasis added); Vardon Golf Co. v. BBMG Golf Ltd., 156 F.R.D. 641, 646 (N.D. Ill. 1994) (plaintiff sought the information regarding the selection process for how certain golf club heads were determined to be those selected for testing).  It is therefore irrelevant to this matter.

[90]  See Fed. R. Civ. P. 26(b)(4)(B); Motion at 47:8-48:18.

[91]  See May 16 Order, ¶ 5, attached to the Corey Dec., Exh. 11; Judge Larson's Minute Order dated July 2, 2007, attached to the Corey Dec., Exh. 15.

/209/2335422.2

1  essentially important part of an attorneys' preparations."[92]   MGA itself, however,

2  *knowingly provided to Mattel's counsel a list identifying the documents that*

3  *Mr. Speckin tested to Mattel during the deposition of MGA designee Lisa Tonnu.*[93]

4       MR. JENAL:  Jon, maybe I can help cut to the chase on this just a little bit.  This [Exhibit 521] is a document that
5       she referred to that she was provided by way of explanation.  There is a reference in Mr. Spekin's [sic]
6       declaration as to a series of -- he looked as a series of Bratz drawings, but they're not itemized in the declaration.
7       *This is the itemized list of what documents were provided to Mr. Spekin for purposes of his analysis.*  So this is
8       essentially provided to you in the nature of a privilege log entry logging the documents that were provided to him, so
9       that's its provenance.

10      Mr. Corey:  And did he prepare this or did you prepare this?

11

12      Mr. Jenal:  I believe this was prepared internally at O'Melveny & Meyers --

13      Mr. Corey:  Okay.

14      Mr. Jenal:  -- as a log of the documents that were provided to him.  I guess the last part is, I believe, some of the --
15      maybe all of them.  I'm not sure.  But certainly some of the drawings that are associated with these were subsequently
16      produced in bates-numbered form.  But at the time this log was created, there were no bates numbers.[94]

17

18         . . .

19      Mr. Corey:  And then just to make sure that I'm clear, I'm looking at paragraph 8 on page 3.  And that says: "I flew
20      to Los Angeles to perform ink and document testing on various Bratz documents."  Is that what you're referring
21      to?

22      Mr. Jenal:  That is correct.  So my understanding -- I wasn't on the case at the time, so this is relayed to me.  But
23      my understanding is that Exhibit 521 is the log of those documents.

24

25  _____

26  [92]  Opp. at 17:23-24.
    [93]  <u>See</u> Tonnu Deposition Exhibit 521, attached to the Supp. Corey Dec., Exh. 4.
27  [94]  Tonnu Tr. 164:10-165:19, attached to the Supp Corey Dec., Exh. 1 (emphasis
28  added).

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

07209/2335422.2

1        Mr. Corey:  It's -- it's the log of the various --
quote/unquote, various Bratz documents being referred to
2        in paragraph 8?

3        Mr. Jenal:  That's my understanding.[95]

4  MGA now states that it will *not* produce any information concerning the identification

5  of the documents to which Speckin referred in paragraph 8 of his declaration because

6  that is work product.[96]

7       To be clear, Mattel does not want the list of documents reproduced.  As MGA's

8  counsel stated, the list of documents provides no bates numbers for the documents, or

9  other specific identification information, other than vague characterizations.  For

10  example, the list "identifies" documents such as "Three girls, big boots," and "Pointing

11  finger, sculpt drawings."[97]  The parties agreed that MGA would provide identification

12  information for which documents the list referred to, and MGA reproduced Ms. Tonnu

13  to testify accordingly.[98]  MGA, after agreeing to do so, failed to educate Ms. Tonnu and

14  provided no explanation for reneging on its agreement to provide document

15  identification information.

16       Nor did MGA assert any work product objection to questions about the

17  identification of the documents.  MGA instructed the witness not to disclose Speckin's

18  results.  MGA raised no work product objection to questions about the identification of

19  the documents.  To the contrary, MGA's counsel instructed the designee *to answer the*

20  *question*, thus waiving any claim that the identity of the documents is subject to the

21  work product protection.[99]

22

23   [95]  Tonnu Tr. 165:25-166:15, attached to the Supp. Corey Dec., Exh. 1.
     [96]  Opp. at 18:11-16.
24   [97]  Tonnu Deposition Exhibit 521, attached to the Supp. Corey Dec., Exh. 4.
25   [98]  See Letter from Jon Corey to Jim Jenal, dated July 24, 2007, attached to the
    Supp. Corey Dec., Exh. 6..
26   [99]  MGA does not object to all information requested by Mattel in this instance
27  as protected work-product, and thereby implicitly admits it is not privileged.  MGA
    asserts the following information is protected work-product: "information
28  (footnote continued)

-37-

1    Q.   Can you -- have you made any effort to identify which drawings are described in Exhibit 521?

2    Ms. Morgenthaler-Lever:  Objection. Assumes facts not in evidence. Lack of foundation. Calls for speculation. Seeks work product information and possibly attorney-client communications.

3

4

5    The deponent:  No.

6    Mr. Corey:  Counsel, can you identify for me the bates numbers that are associated with these drawings?  Which is a request that I've made of Mr. Jenal on the record and repeatedly, and it was one of the -- it was one of the topics of our discussion during the meeting of counsel, that Ms. Tonnu would be able to do that.  And I have the drawings here, and I'm prepared to show them to her.

7

8

9

10    Ms. Morgenthaler-Lever:  Not that I was told.

11    Mr. Corey:  So you're not prepared to do that as we sit here today?

12

13    Ms. Morgenthaler-Lever:  I am unaware of any such agreement.  I mean, Mr. Jenal did not advise me of any set agreement.

14

15    . . .

16    By Mr. Corey:

17

18    concerning the selection of evidence for testing, choice of tests, testing conditions, and the logistics of tests" conducted by Mr. Speckin.  Opp. at 17:1-4.  By implication, even MGA does not believe information concerning how the tested documents were handled, how they were shipped and how they were stored is work product, or objectionable. Further, MGA fails to explain, as it must to carry its burden, how information concerning shipping, handling and storage is "opinion work-product," containing " "the mental impressions, conclusions, opinions or legal theories as an attorney," and therefore is "privileged from discovery." See Vardon Golf Co. v. BBMG Golf Ltd., 156 F.R.D. 641, 646 (N.D. Ill. 1994), discussed at Opp. at 17:23-18:10.  Nor can it—such a position is illogical. MGA would have to claim work-product privilege as to whether the documents were shipped via Federal Express or UPS, and the type of packing and handling material used, for example. This makes no sense.  Tellingly, MGA cites no authority supporting the position that such information concerning a consulting expert's work is work-product and privileged.  Thus, for this reason and the reasons discussed herein and in the Motion, MGA's instructions not to answer related deposition questions should be overruled.

19

20

21

22

23

24

25

26

27

28

07209/2335422.2

1   Q.  As we sit here today, Ms. Tonnu, can you identify or describe for me any of the documents that were tested by
2   Mr. Speckin?

3   *Ms. Morgenthaler-Lever:  Objection. Attorney work -- you're seeking work product information.*
4

5   *Mr. Corey:  What's the work product?*

6   *Ms. Morgenthaler-Lever:  This was all gone over last time.  I'm not going to go over it again. We -- as you --*

7   *Mr. Corey:  What was gone over last time --*

8   *Ms. Morgenthaler-Lever:  As you well know, we are going to be taking the position that the results obtained by
9   Mr. Speckin are work product --*

10  *Mr. Corey:  I understand that position, and that question did not --*
11

12  *Ms. Morgenthaler-Lever:  -- information, and we're not testifying as to any results.*

13  *Mr. Corey:  The question had nothing to do with results.*
    What I am entitled to testimony about is the documents
14  that were tested, the handling of those documents, and the tests that were done on those documents.  That is directly
15  relevant and within the scope of this topic, as Judge Infante has ruled, because those are absolutely relevant to
16  the testing that our witnesses -- our consultants will do on those documents.  I didn't -- that question did not ask for
17  results at all.  Are you going to continue in your instruction, counsel?  I would --
18

19  Ms. Morgenthaler-Lever:  I'm looking to see if the question was -- you claimed -- you just told me that the
20  question was not answered before, and I'm --

21  Mr. Corey:  No, I think the question was answered before. So I'm not sure what the basis for the instruction was if the
22  same question was asked, and I don't believe that it was.

23  Ms. Morgenthaler-Lever:  Yeah, that's what I'm looking for.

24  Okay.  Restate the question.

25  By Mr. Corey:

26  Q.  *As you sit here today, Ms. Tonnu, can you identify for me or describe for me any document upon which*
27  *Mr. Speckin performed any tests?*

28  *Ms. Morgenthaler-Lever:  Any document?*

1    *Mr. Corey: Any document.*

2    *Ms. Morgenthaler-Lever: Vague and ambiguous as to*
3    *time. Calls for speculation. Lacks foundation. You can*
     *answer if you know.*

4    The deponent: I believe Exhibit 521 is a list of the various
     documents that Mr. Speckin referred to as conducting
5    some of the various tests.

6    By Mr. Corey:

7    Q.  Right. And I understand that. And the problem is the
     list is vague, and so what I'm asking you is a little bit
8    different. It's: Can you describe for me what a drawing
     looks like that Mr. Speckin tested? Can you identify it
9    visually or by an identifying number? That's the question.

10   Ms. Morgenthaler-Lever: By bates number or --

11   Mr. Corey: any identifying number. I mean -- and to help
     you along, counsel, my understanding, or at least as
12   Mr. Jenal represented it, was that the drawings were given
     to Mr. Speckin before they were bates-numbered. And so
13   I don't know if there's a separate numbering system that
     was used, but that's my question.
14
     Q.  Do you want me to restate it?
15
     Ms. Morgenthaler-Lever: Yeah.
16
     The deponent: Yes.
17
     By Mr. Corey:
18
     *Q.  Ms. Tonnu, can you identify or describe for me any of*
19   *the documents that Mr. Speckin tested in connection with*
     *this action?*
20
     Ms. Morgenthaler-Lever: Other than -- that's the same
21   question you just asked her.

22   Mr. Corey: Mo, and I clarified it, and I think the witness
     knows what -- understands the question now.
23
     Ms. Morgenthaler-Lever: Objection. Asked and
24   answered. Same objections as to the previous question.
     *You can answer.*
25
     The deponent: I wasn't aware that I had to provide some
26   identification. It is not within the scope that I was aware
     of in responding to this --
27
     By Mr. Corey:
28

-40-

1 Q. Have you seen any of the —

2 A. -- question.

3 Q. I'm sorry.  Did you finish your answer?

4 A. No.  I was just going to say I wasn't aware that I had to do that as part of the deposition.

5

6 Q. Have you seen any of the documents that Mr. Speckin tested?

7 Ms. Morgenthaler-Lever:  Counsel, I don't know why you're badgering this witness.  You've seen -- the documents were produced to you, is my understanding. But she can answer the question.

8

9 The deponent: No.[100]

10

11 MGA does not explain why it reneged on its agreement.  A witness capable of

12 identifying the documents tested—by Bates number or other sufficient specificity—

13 must be produced.[101]

14  Similarly, MGA claims that the tests Speckin performed are also protected by the

15 work product doctrine.  Opp. at 17.  MGA overlooks that it disclosed the tests—

16 "sidelight testing," examination using "infrared light," Electrostatic Detection

17 Apparatus testing, "ink identification tests," and "ink dating chemical analysis"—that

18 Speckin conducted in the declaration that it submitted to Judge Larson.[102]  Ms. Tonnu

19 testified to the same.[103]  Having disclosed them, MGA cannot claim that they are

20 covered by the work product protection and must produce a witness to testify regarding

21 them, something Tonnu could not do.

22

23

24

25 [100] 9/25/07 Tonnu Tr. 571:22-579:12, attached to the Supp. Corey Dec., Exh. 3.
 [101] Tonnu testified that all of the tested documents were produced to Mattel.

26 Tonnu Tr. at 578:3-579:5, attached to the Corey Dec. Ex. 2.

27 [102] See Speckin Decl., attached to the Corey Dec., Exh. 19.
 [103] 9/25/07 Tonnu Tr., 579:13-20, attached to the Corey Dec., Exh. 2.

28

1    **2.    MGA Concedes That The Federal Rules Abolish The Notion**

2    **That This Information Is "Privileged" Or Protectable As**

3    **"Work Product"**

4    MGA cites no authority proving that information tangential to its consulting

5    expert's testing of documents is work product, nor can it. MGA does not refute, and

6    implicitly concedes that, as explained in the Advisory Committee Notes for Rule

7    26(b)(4)(B), the governing rule for discovery of information from a consulting expert is

8    not "work product," but rather the doctrine of "unfairness:"

9        Subdivision (b)(4)(B) deals with an expert who has been
10   retained or specially employed by the party in anticipation
     of litigation or preparation for trial (thus excluding an
11   expert who is simply a general employee of the party not
     specially employed on the case), but who is not expected
12   to be called as a witness. Under its provisions, a party may
     discover facts known or opinions held by such an expert
13   only on a showing of exceptional circumstances under
     which it is impracticable for the party seeking discovery to
14   obtain facts or opinions on the same subject by other
     means.

15      . . .

16       These new provisions of subdivision (b)(4) repudiate the
     few decisions that have held an expert's information
17   privileged simply because of his status as an expert, e.g.,
     American Oil Co. v. Pennsylvania Petroleum Products
18   Co., 23 F.R.D. 680, 685-686 (D.R.I.1959). See Louisell,
     Modern California Discovery 315-316 (1963). They also
19   reject as ill-considered the decisions which have sought to
     bring expert information within the work-product doctrine.
20   See United States v. McKay, 372 F.2d 174, 176-177 (5th
     Cir.1967). The provisions adopt a form of the more
21   recently developed doctrine of "unfairness." See e.g.,
     United States v. 23.76 Acres of Land, 32 F.R.D. 593, 597
22   (D.Md.1963); Louisell, supra, at 317-318; 4 Moore's
     Federal Practice ¶ 26.24 (2d ed. 1966).[104]

23   The work-product privilege does not apply to information concerning the facts

24   surrounding Mr. Speckin's handling and testing of the Bratz documents.

25

26

27     [104]   Advisory Comm. Notes (1970) 48 FRD 487, 505 (emphasis added); see also
     Motion at 47:8-48:18.

28

07209/2335422.2

-42-

| | | |
|---|---|---|
| 1 | (a) | **MGA Concedes That the Rules Permit Discovery of** |
| 2 | | **Facts Surrounding Mr. Speckin's Testing** |

3    "In assessing 'unfairness,' courts balance the intrusion on the resisting party's

4  work product and the coerced appropriation of the nontestifying expert's knowledge

5  *against the need for information that cannot be obtained in any other way,* in order to

6  make an accurate determination of the facts." Schwarzer, Tashima & Wagstaffe, Fed.

7  Prac. Guide: Civ. Proc. Before Trial, § 11:927 (Rutter's Group 2007) (emphasis in

8  original) (citations omitted).[105] MGA does not address the "unfairness" issue raised in

9  Mattel's motion, implicitly conceding that it is not only impracticable, but impossible

10  for Mattel to obtain these facts elsewhere, that such facts are uniquely known to MGA's

11  expert Mr. Speckin, and that MGA's refusal to provide the same precludes Mattel from

12  properly discovering how original evidence was handled (or mis-handled), which is

13  inherently unfair. MGA instead implies that Mattel seeks this information to make up

14  for problems MGA believes Mattel has in its testing of the Bratz documents.[106] MGA's

15

---

16    [105]    Assuming that the information Mattel seeks contains "facts known or
17  opinions held by" Mr. Speckin, Rule 26(b)(4)(B) permits discovery of this
18  information, as MGA concedes, upon "showing exceptional circumstances under
     which it is impracticable for the party to obtain facts or opinions on the same subject
19  by other means." Fed. R. Civ. P. 26(b)(4)(B); see also Motion at 47:8-50:4.
     Further, MGA states that "exceptional circumstances" may exist "where 1) the
20  object or condition at issue is destroyed or has deteriorated after the non-testifying
     expert observes it but before the moving party's expert has an opportunity to observe
21  it; or 2) there are no other available experts in the same field or subject area." Opp.
     at 19:11-14 (citing FMC Corp. v. Vendo Co., 196 F. Supp. 2d 1023, 1046 (E.D. Cal.
22  2002). MGA misrepresents the case law by implying that these are the only
23  "exceptional circumstances" permitting discovery. See Opp. at 19:15-16, 20:4-22:5.
     [106]    See, e.g. Opp. at 21:14-19. Based on its incorrect assertion concerning what
24  Mattel seeks through deposition testimony, MGA argues at length that Mattel is
25  unable to prove spoliation. MGA's argument is a red herring. Mattel does not seek
     information in response to Topic 41 solely to determine whether there was
26  spoliation. Mattel seeks information in response to Topic No. 41 so that its
27  consultants may be fully informed about the handling and treatment of the originals.
     (footnote continued)
28

209/2335422.2

-43-

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

1   argument is nothing more than speculation and misses the point.  Mattel needs

2   information concerning what, if any, changes, damage, or other alterations were made

3   to the Bratz design documents.  Without such information, Mattel experts cannot

4   ascertain whether they arose as a result of Bryant's doings, or in the shipping, handling,

5   and/or testing by MGA or Mr. Speckin.

6      **3.   MGA's Objections To Providing Information Concerning the**

7          **Testing of Original Bratz Documents Were Overruled and**

8          **MGA was Compelled to Produce A Competent Witness to**

9          **Provide Complete Testimony**

10      MGA does not dispute, and thereby concedes, that all of its objections and

11   limitations to information concerning the testing or sampling of Bratz documents were

12   overruled.[107]  Further, MGA does not dispute, and thereby concedes, that it was

13   sanctioned for its "clear and flagrant violation of a court order" in failing to produce a

14   witness to discuss this information in response to Topic No. 41.[108]  MGA does not

15   refute, and thereby concedes, that it had an obligation to produce a competent witness

16   properly prepared to respond to Topic No. 41 and, for the third time, failed to do so.

17   Finally, MGA does not refute that it failed to produce a witness properly prepared to

18   testify on Topic No. 41.  Pursuant to the Court's Orders, Mattel is entitled to the

19   information concerning the shipping, handling and testing of Bratz documents,

20

21   _____

22   For the same reasons, MGA's unsubstantiated argument that Mattel is somehow at fault for not testing the Bratz documents is a red herring as well.

23   [107]   May 16 Order, ¶ 5, attached to the Corey Dec., Exh. 11.  This information

24   was requested in Topic 41 of the Second Notice, which seeks: "The testing of or sampling from DOCUMENTS that REFER OR RELATE TO BRATZ or

25   BRYANT, including without limitation such testing or sampling in connection with any ink, paper or chemical analysis performed or attempted to be performed to date,

26   and DOCUMENTS that REFER OR RELATE thereto and all results and reports

27   relating thereto."  See Corey Dec., Exh. 8.

28   [108]   August Order, 9:15-22, Corey Dec., Exh. 12.

1  including while in Mr. Speckin's possession.  MGA's instructions to the contrary should

2  be overruled.

3  **VI.**  **MGA WAIVED ANY CLAIM OF PRIVILEGE TO DOCUMENTS**

4  **USED TO REFRESH LOCKHART'S RECOLLECTION**

5  **A.**  **MGA Failed to Present Any Evidence Demonstrating that the**

6  **Logged Documents are Privileged.**

7  MGA claims that the privilege log, and the privilege log alone, is sufficient to

8  evidence for the Discovery Master to conclude that the document preservation e-mail

9  messages are privileged.[109]  A conclusory privilege log, however, is not evidence.

10  As the party asserting the privilege, MGA bears the burden of proving that the

11  document preservation-related documents are privileged.  See U.S. v. Landof, 591

12  F.2d 36, 37 (9th Cir, 1978) (party asserting the attorney-client privilege must prove

13  that: "(1) Where legal advice of any kind is sought (2) from a professional legal advisor

14  in his capacity as such, (3) the communications relating to that purpose, (4) made in

15  confidence (5) by the client, (6) are at his instance permanently protected (7) from

16  disclosure by himself or by the legal advisor, (8) except the protection be waived....").

17  MGA submitted no deposition testimony, no declarations and no other evidence that

18  tends to prove the required elements to establish that the documents are privileged, not

19  even the documents themselves. Absent any evidence supporting the objection, it must

20  be overruled. See, e.g., id. The only "evidence" supporting any claim of the privilege

21  is the privilege log, which is not competent evidence of the privilege.  EEOC v.

22  Safeway Store, Inc., 2002 WL 31947153 * 3 (N.D. Cal. Sept. 16, 2002) (noting that

23  when the court has only documents and a conclusory privilege log to support a claim a

24  privilege, the court must evaluate the claim of privilege *based on the face of the*

25  *documents themselves*); Clavo v. Zarrabian, 2003 WL 24272448, *2 (C.D. Cal. July 9,

26  2003) (burden to establish privilege cannot be met by mere conclusory assertions).

---

27  [109]  Opp. at 36-37.

28

1 | Because MGA presented no evidence, much less evidence sufficient to prove that the
2 | documents are privileged, their production should be compelled.

3 | **B.    Because the Documents Refreshed Lockhart's Recollection, They**
4 | **Must Be Produced**

5 | Furthermore, MGA does not dispute that Lockhart reviewed the documents to
6 | prepare for his deposition and they refreshed his recollection. MGA's only argument is
7 | that MGA's counsel provided these documents to Lockhart to provide information to
8 | testify as MGA's Rule 30(b)(6) topics related to document preservation. That does not
9 | change the result; the documents must be produced.

10 | It is well settled that when a witness' recollection is refreshed, as Lockhart's was
11 | with the preservation-related documents, any claim of privilege respecting that
12 | privilege is waived. See Ehrlich v. Howe, 848 F. Supp. 482, 493 (S.D.N.Y. 1994)
13 | ("when [c]onfronted with the conflict between the command of Rule 612 to disclose
14 | materials used to refresh recollection and the protection afforded by the attorney-client
15 | privilege . . . the weight of authority holds that the privilege . . . is waived") (internal
16 | quotations omitted); U.S. v. 22.80 Acres of Land, 107 F.R.D. 20, 25-26 (N.D. Cal.
17 | 1985) (work product privilege waived where deponents used documents to refresh
18 | recollection).

19 | That Lockhart was a Rule 30(b)(6) designee does not change that result. Citing
20 | two cases from the Southern and Middle Districts of Florida and an excerpt from the
21 | legislative history of Federal Rule of Evidence 612, MGA asserts that the general rule
22 | of waiver when a document refreshes a deponent's recollection does not apply if the
23 | deponent is also a corporate designee. Opp. at 6:4 to 7:9. When the corporate designee
24 | deponent has reviewed documents to refresh his recollection prior to deposition, the
25 | greater weight of authority, militates in favor of disclosing those documents. See, e.g.,
26 | Marshall v. United States Postal Service, 88 F.R.D. 348, 350 (D.D.C. 1980) ("[I]t is
27 | apparent that once a document is used to refresh the recollection of a witness, privileges
28 | as to that document have been waived."); Wheeling-Pittsburgh Steel Corp. v.

1  <u>Underwriters Laboratories, Inc.</u>, 81 F.R.D. 8, 10-11 (N.D. Ill. 1978) (holding that

2  plaintiff waived the attorney-client privilege as to the documents in question by

3  allowing their use for the purpose of refreshing deponent's recollection); <u>S&A Painting</u>

4  <u>Co., Inc. v. O.W.B. Corporation</u>, 103 F.R.D. 407, 409 (W.D. Pa. 1984) (finding

5  attorney-client privilege waived and noting that "[c]onfronted with the conflict between

6  the command of Rule 612 to disclose materials used to refresh recollection and the

7  protections afforded by the attorney-client privilege and the work product doctrine, the

8  weight of authority holds that the privilege and protections are waived.") (*citing* <u>James</u>

9  <u>Julian, Inc. v. Raytheon Co.</u>, 93 F.R.D. 138 (D. Del.1982) (work-product protection

10 waived); <u>Marshall v. United States Postal Service</u>, 88 F.R.D. 348, 350 (D.D.C. 1980)

11 (attorney-client privilege waived); <u>Wheeling-Pittsburgh Steel Corp. v. Underwriters</u>

12 <u>Laboratories, Inc.</u>, 81 F.R.D. 8, 9 (N.D. Ill. 1978) (attorney-client privilege waived);

13 <u>Bailey v. Meister-Brau, Inc.</u>, 57 F.R.D. 11, 13 (N.D. Ill. 1972) (attorney-client privilege

14 and work-product protection waived)).  Therefore, in accordance with the foregoing

15 authorities, MGA should be ordered to produce the documents reviewed by

16 Mr. Lockhart in preparing for his 30(b)(6) deposition.

17       Further, even if MGA's standard applied, the "interests of justice"[110] compel the

18 production of the documents.  MGA states unequivocally that "Mr. Lockhart was

19 required to review the purportedly privileged document preservation e-mail messages

20 because they related to MGA's preservation of documents in connection with this action

21 and they were reasonably available to MGA."[111]  The only reason Lockhart reviewed

22 those e-mail messages *was to provide the information that they contained to Mattel at*

23 *deposition.*  Indeed, MGA concedes that this is information that Lockhart should have

24 provided to Mattel.  Given these circumstances, the "interests of justice" compel the

25 production of those documents so that Mattel may have that information.

26

---

27  [110]  Opp. at 38:27.

28  [111]  Opp. at 38:11-14.

-47-

C.     **MGA Has Waived the Work Product Doctrine.**

MGA's attempt to invoke the work product doctrine to prevent disclosure of the documents relied upon by Mr. Lockhart in preparing for his deposition is equally unavailing.  See Opp. at 7:7-8; 38:1-7.  Decisions from district courts in this Circuit make clear that MGA's claims of work product protection were also waived once Mr. Lockhart reviewed the requested documents to refresh his recollection in preparation for his deposition.  See United States ex rel. Bagley v. TRW Inc., 212 F.R.D. 554, 565-66 (C.D. Cal. 2003) (requiring disclosure of documents reviewed by relator in preparing for his deposition based upon waived of work product doctrine); United States v. 22.80 Acres of Land, 107 F.R.D. 20, 25-26 (N.D. Cal. 1985) (work product privilege waived where deponents used documents to refresh recollection).  Therefore, MGA's claims of work product are also meritless.

D.     **The Legislative History Underlying Federal Rule of Evidence 612 Does Not Aid MGA.**

MGA's citation to the legislative history underlying Federal Rule of Evidence 612 is misguided.  At the outset, the purpose underlying Rule 612 is clear—"to test the credibility of a witness's claim that memory has been revived and to expose any discrepancies between the writing and the testimony." S&A Painting Co., 103 F.R.D. at 410.  This purpose cannot be served unless MGA be compelled to produce the documents purportedly reviewed by Mr. Lockhart in preparation for his 30(b)(6) deposition, particularly when Lockhart was unable to convey the information contained in those documents at deposition.

Furthermore, uncertainties in the legislative history of the Rule render it inappropriate to rely upon facts in the face of contrary court decisions.  In examining Rule 612's legislative history, one court commented:

> The legislative history of Rule 612 is ambiguous.  It can be read to
> indicate a congressional intent to leave the decision as to privileged
> documents to the sound discretion of the district courts, for

-48-

1    resolution on a case by case basis.  It is also possible to view the

2    record as reflecting an intent to exempt privileged documents from

3    the operation of the expanded rule.

4  James Julian, Inc. v. Raytheon Co., 93 F.R.D. 138, 145 (D. Del. 1982).  When likewise

5  presented with the same argument regarding Rule 612's legislative history as that

6  proffered by MGA, another court recognized that the "history is not so clear and

7  unambiguous as to preclude the court from requiring production in the interests of

8  justice, when the circumstances may warrant such production in the exercise of sound

9  judicial discretion."   Barrer v. Women's National Bank, 96 F.R.D. 202, 204-205

10  (D.D.C. 1982)  (rejecting plaintiff's argument based upon legislative history and

11  requiring in camera examination of purportedly privileged documents to ascertain if

12  disclosure should be ordered).   MGA's reliance on ambiguous and unexplained

13  congressional intimations should be rejected.

14         **E.      MGA's Cases Are Inapposite.**

15         MGA cites In re Managed Care Litigation, 415 F. Supp. 2d 1378 (S.D. Fla.

16  2006), for the proposition that a deponent's review of privileged documents in

17  preparation for deposition does not waive the attorney-client privilege.  See Opp. at

18  38:15-22.  The deponent in Managed Care was in-house counsel for the American

19  Medical Association and, therefore, in that capacity his preparation for deposition

20  undoubtedly required review of privileged materials. See id. at 1379.  That the district

21  court in Managed Care would not extend the rule of law set forth by other district

22  courts interpreting Rule 612 regarding waiver of attorney-client privilege to in-house

23  counsel is an unremarkable proposition.  See id.

24         Further, the district court in Managed Care reasoned that "the production of

25  writings used to refresh a witness' recollection prior to testifying is left to the discretion

26  of the court in the interests of justice."  Id. at 1380.  Applying this reasoning to this

27  instant case should require that the requested documents be produced.  Mattel is entitled

28  to the documents reviewed by Mr. Lockhart so that Mattel may "search out any

209/2335422.2

-49-

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

1 discrepancies between the writing and [his] testimony. . . . " <u>Wheeling-Pittsburgh Steel</u>
2 <u>Corp.</u>, 81 F.R.D. at 10.  Unless disclosure of these documents is ordered, Mattel will
3 have no other manner in which to identify these discrepancies—a determination which
4 bears directly on Mr. Lockhart's credibility.  <u>See, e.g.</u>, <u>S&A Painting Co.</u>, 103 F.R.D. at
5 410.  Given that the "paramount purpose of the federal discovery rules is the
6 ascertainment of the truth,"  the interests of justice require disclosure.  <u>Wheeling-</u>
7 <u>Pittsburgh Steel Corp.</u>, 81 F.R.D. at 10.

8     MGA's additional cite to an unpublished district court decision, <u>Medtronic</u>
9 <u>Xomed, Inc. v. Gyrus Ent LLC</u>, 2006 WL 786425 (M.D. Fla. Mar. 27, 2006), is
10 similarly misguided.  <u>See</u> Opp. at 39:2-7.  The sole issue in <u>Medtronic</u> was whether
11 plaintiff waived the work product doctrine when plaintiff's <u>Rule</u> 30(b)(6) deponent
12 reviewed a protected document to prepare for his deposition.  <u>See id.</u> at *3.  Ninth
13 Circuit district courts, however, make clear that where, as here, a deponent has
14 reviewed a document in preparing for his deposition, the protections afforded by the
15 work product doctrine are waived.  <u>See United States ex rel. Bagley</u>, 212 F.R.D. at 565-
16 66; <u>22.80 Acres of Land</u>, 107 F.R.D. at 25-26.  Given the holdings of these Ninth
17 Circuit district courts, one unpublished decision from the Middle District of Florida
18 should not be given weight.

19 **VII.  <u>TONNU'S DEPOSITION SHOULD BE REOPENED</u>**

20     **A.  <u>Tonnu's Deposition Should Be Reopened As A Result Of Material</u>**
21         **<u>Revisions To Her Deposition Transcripts</u>**

22     Contrary to MGA's assertion, the revisions allegedly made by Ms. Tonnu to her
23 transcript were material.  MGA does not refute that when Ms. Tonnu had answered
24 "no," Mattel's counsel stopped a line of questioning at the deposition and moved on to
25 another one.  Further, MGA admits that Ms. Tonnu was improperly prepared, and thus
26 provided "mistaken" testimony concerning whether she knew if documents were
27 collected.   Such "mistaken" testimony precluded a line of questions into what
28 documents were collected, how they were collected and by whom.  MGA does not deny

07209/2335422.2

that these questions fall squarely within Topic Nos. 39 and 40, Topics on which Ms. Tonnu was twice designated.  MGA does not deny that it should have been prepared to provide a correct response and provide Mattel with essential information but failed.  For the reasons discussed herein, at a minimum Mattel is entitled to a Court Order compelling the reopening of Ms. Tonnu's deposition for Mattel to explore the reasons for Ms. Tonnu's "revised" testimony and to complete the lines of questioning previously precluded by Ms. Tonnu's answers.

**B.**     **The Discovery Master Should Overrule MGA'S Improper Instructions Not To Answer Questions At The Tonnu Deposition And Impose Sanctions For Counsel For MGA's Interference With Questioning**

MGA does not defend the conduct of its prior counsel or defend against Mattel's arguments concerning MGA's counsel's multitude of improper instructions and interference with the questioning at the deposition of Lisa Tonnu.[112]  MGA does not refute, and thereby concedes, that MGA's counsel's objections were improper (for a variety of reasons as discussed in the Motion), and interfered with the deposition.  It cannot—as MGA implicitly concedes.  The information sought was relevant and all of MGA's objections and limitations to the Topics were overruled.

MGA, instead, asserts that the majority of the instructions simply "do not justify additional Rule 30(b)(6) testimony."[113]  MGA does not oppose Mattel's request to reopen Ms. Tonnu's deposition in light of MGA's counsel's misconduct.  Further still,

---

[112]    MGA states that it should not be "burdened" as a result of its "prior counsel's" misconduct.  To the extent that MGA is implying it is absolved of its prior counsel's misconduct, simply because MGA replaced such counsel, MGA misses the point.  Who asserted the improper objections is irrelevant.  At issue here is that Mattel could not obtain the deposition testimony to which it was entitled, and for which MGA has been compelled to provide, and must therefore again be compelled to provide.

[113]    Opp. at 39:21-22.

1  MGA does not specifically oppose Mattel's request for sanctions for such misconduct.

2  Accordingly, Mattel asks that its unopposed request to reopen Ms Tonnu's deposition

3  and for sanctions be granted.[114]

4      MGA, however, cherry-picks one area of testimony concerning MGA's corporate

5  structure and states that its objections were proper.  MGA asserts that because the

6  questions at issue seek information concerning the personal finances of MGA

7  executives, MGA's counsel's instructions not to answer were proper on privacy

8  grounds.  MGA is incorrect.  Discovery on the issue is not automatically foreclosed,

9  simply because privacy concerns are asserted.  As MGA's legal authority states, MGA

10  has the burden of establishing an existence of a clearly established constitutional right,

11  and the burden to show discovery should not be allowed.[115]  MGA has not met its

12  burden.

13  ——————————

[114]  MGA asserts that "Mattel has been deprived of no Rule 30(b)(6) testimony

14  to which it may be entitled as a result of any conduct by prior counsel."  Opp. at

15  41:23-24.  MGA does not address the specific instructions not to answer, coaching

16  of the witness, or otherwise improper conduct of MGA's counsel.  MGA states that

    it will produce Ms. Tonnu for additional testimony on Topic Nos. 21 and 31.  MGA,

17  however, does not state whether it will withdraw its instructions for these topics, or

    the remainder of the topics as set forth in the Motion.  Accordingly, MGA's

18  improper instructions should be overruled and that MGA be compelled to bring

19  itself into compliance with the Court's Order.

[115]  See e.g. Denius v. Dunlap, 209 F.3d 944, 950 (7th Cir. 2000); Keith H. v.

20  Long Beach Unified School, 228 F.R.D. 652, 656-657 (C.D. Cal. 2005); Charles O.

21  Bradley Trust v. Zenith Capital LLC, 2005 WL 1030218 *2 (N.D.Cal. May 3, 2005)

    ("Courts that have considered whether a disclosure of financial information might

22  violate a constitutional right to privacy have employed a balancing test to determine

23  whether there has been a violation . . . Following those courts and applying a

    balancing test, the Court concludes that information on Defendants' net worth and

24  financial condition should be disclosed because the interests favoring disclosure (

25  e.g., ascertaining the truth, addressing potentially severe wrongdoing by Defendants,

    ensuring enforcement of rights) outweigh the interests favoring nondisclosure.").

26  MGA misstates the case law by implying that all personal financial information is

27  subject to a constitutional right of privacy.  In reality, those cases reflect only that

    "some types of financial information involve the degree and kind of confidentiality

28  (footnote continued)

1    First, MGA presented no evidence that the subject of the questions is "personal

2  financial information," nor did Mr. Larian or Mr. Makabi, as MGA suggested they

3  would. Bearing the burden of preventing the disclosure of such information, MGA (or

4  Larian or Makabi) must show that the information sought is, in fact, "private" within

5  the scope of the any applicable constitutional guarantees. They have not done that.

6  For example, two of Mr. Larian's trusts hold significant interests in Zapf, a publicly

7  traded company in Europe. Zapf's publicly available annual report identifies no fewer

8  than three trusts that Isaac Larian used to acquire shares of Zapf, including the Isaac

9  Larian and Angela Larian Trust, The Isaac Larian Qualified Annuity Trust 2004 DTD

10  6/30/04, and the Isaac Larian Annuity Trust.[116] And, on December 21, 2007, Amy

11  Park, counsel for MGA, identified two of these trusts for Jon Corey, counsel for Mattel,

12  with no suggestion that the identity of the trusts was confidential or otherwise subject to

13  the protective order.[117] This information is not private.

14    Second, MGA does not refute that the information sought is relevant. One or

15  more Larian trusts owns the shares of defendant MGA.[118] The identity and specifics of

16  MGA's shareholders is relevant for a number of reasons. First, it is relevant to

17  damages, given that since 2001,

18                                    [9]  Second, depending on the structure of

19  the trusts, they may be relevant to a showing of Larian's net worth for punitive damages

20  claims. Mattel cannot make that determination without first knowing the trusts' basic

21  information. Third, MGA and Isaac Larian themselves have asserted unclean hands

22  _____

23  that is entitled to a measure of protection under the federal constitutional right of privacy," Denius, 209 F.3d at 958 (emphasis added).

24  [116]  Zapf 2006 Annual Report at 13-15, attached to the Supp. Corey Dec. Exh. 17.

25  [117]  Supp. Corey Dec. ¶ 12.

26  [118]  Tonnu Tr. at 49:3 to 52:15, Corey Dec., Exh. 1.

27

28                                              REDACTED

1  defenses that include a claim that Mattel interfered with the acquisition of Zapf. As
2  demonstrated above, this acquisition was not by MGA or by Mr. Larian, but by certain
3  trusts who are not a party to this litigation.[120]  Mattel is entitled to the identification of
4  the trusts and the details of those acquisitions to show that Zapf was not acquired by a
5  party, and on that basis the unclean hands defense not only fails, but that MGA and
6  Larian lack standing to even assert it.

7          Third, upon disclosure, the requested information is adequately protected and
8  maintained as confidential. MGA does not refute, and thereby concedes, that, to the
9  extent privacy concerns are implicated (and it is unclear that they are), MGA's remedy
10 is to rely on the Protective Order in place in this matter. Again, the case law MGA
11 relies upon holds as much. See e.g. A. Farber and Partners, Inc. v. Garber, 234 F.R.D.
12 186, 191 (C.D. Cal. 2006) ("Resolution of a privacy objection . . . requires a balancing
13 of the need for the information sought against the privacy right asserted . . . *Here,*
14 *plaintiff's need for defendant Garber's financial documents outweighs defendant*
15 *Garber's claim of privacy, especially when the 'impact' of the disclosure of the*
16 *information can be protected by a 'carefully drafted' protective order.*") (citing In re
17 Heritage Bond Litigation, 2004 WL 1970058, *5 n. 12 (C.D. Cal. July 23, 2004) ("Any
18 privacy concerns Kasirer defendants have in their bank records and related financial
19 statements are adequately protected by the protective order, and are not sufficient to
20 prevent production in this matter."); CEH, Inc. v. FV "Seafarer", 153 F.R.D. 491, 499
21 (D.R.I. 1994) ("While a party does have an interest in nondisclosure and confidentiality
22 of its financial records, this interest can be adequately protected by a protective
23 order.")) (other citations omitted) (emphasis added) (Opp. at 40:8-9); Keith H. v. Long
24

25 ___ 119 _____

26 _____

27    [120]  Zapf 2006 Annual Report at 13-15, attached to the Supp. Corey Dec. Exh. 17
28 (showing Larian trusts acquisition of shares of Zapf).

07209/2335422.2

-54-

REDACTED

1   Beach Unified School, 228 F.R.D. 652, 657 (C.D. Cal. 2005) ("Resolution of a privacy

2   objection . . . requires a balancing of the need for the information sought against the

3   privacy right asserted . . . 'a carefully drafted protective order [can] minimize the impact

4   of this disclosure.'") (citations omitted) (emphasis added) (Opp. at 40:4-6).  MGA is

5   obviously aware that the Protective Order in place in this matter is sufficient.  The

6   Discovery Master previously so found with respect to Bryant's financial information,

7   and MGA itself invoked the Protective Order for previous testimony concerning MGA's

8   corporate structure.[121]  MGA's instructions not to answer are therefore improper and

9   should be overruled.  Mattel has no objection to doing so subject to the Protective

10  Order.

11

12

13

14

---

15  [121]   Tonnu Tr., 48:9-49:1, attached to the Supp. Corey Dec., Exh. 1.  MGA's
    argument that neither Ms. Tonnu nor MGA had the right to "invade the
16  constitutional privacy rights" of Messrs. Larian and Makabi because MGA and
    Tonnu are "custodians" of private information, is a red herring.  MGA asserts no
17  evidence, or any explanation, as to how MGA and/or Ms. Tonnu is a "custodian" of
18  such information.  If anything, MGA failure to prove the information was provided
    to Ms. Tonnu with any restriction of confidentiality actually *refutes* its claims here.
19  In any event, the case law relied upon by MGA states that regardless of whether a
20  privacy right exists, protected by a custodian or not, the information may be
    compelled if relevant or otherwise necessary for the case.  See e.g. Cook v. Yellow
21  Freight Sys., Inc., 132 F.R.D. 548, 552 (E.D.Cal. 1990) (overruling the privacy
22  considerations associated with third-party names because it was "outweighed by the
    importance of such discovery to the case."); Willis v. Mullins, 2006 WL 302343, *5
23  (E.D.Cal. Feb. 8, 2006); Hogan v. Robinson, slip op. 2006 WL 1049979, *4-5
24  (E.D.Cal. Apr. 20, 2006); and Bd. of Trustees of Leland Stanford Junior Univ. v.
    Superior Court, 119 Cal. App. 3d 516, 526 (1981).  The information Mattel sought
25  is relevant to this matter and fell squarely within Topic Nos. 26 and 37, and relates
26  to a party to this litigation.  MGA was compelled to produce a witness competent to
    testify concerning this information and its objections and limitations thereto were
27  overruled.  Tellingly, MGA does not refute these points.
28

.09/23354422.2

**VIII. MGA SHOULD BE SANCTIONED FOR ITS FAILURE TO COMPLY WITH THE ORDERS AND DISCOVERY ABUSES**

    **A.    Mattel Has Been Unfairly Prejudiced By MGA's Discovery Violations And Is Entitled To Monetary Sanctions**

        MGA argues that Mattel has not been prejudiced by MGA's repeated flouting of its discovery obligations and this Court's Orders. This contention is without merit. The Ninth Circuit has held that the "law presumes prejudice from unreasonable delay." In re Phenylpropanolamine (PPA) Prods. Liability Litig., 460 F.3d 1217, 1227-28 (9th Cir. 2006); Moneymaker v. CoBen (In re Eisen), 31 F.3d 1447, 1453 (9th Cir. 1994) (quoting Anderson v. Air West, Inc., 542 F.2d 522, 524 (9th Cir. 1976)); Morris v. Morgan Stanley & Co., 942 F.2d 648, 652 (9th Cir. 1991) (presuming prejudice to defendants due to delay). While this presumption of prejudice may be rebutted,[122] MGA has failed to do so here, as it offers no justification for its refusal to comply with the Court's express Orders. See Hernandez v. City of El Monte, 138 F.3d 393, 401 (9th Cir. 1998) (indicating that the burden of production shifts to defendant to show at least some actual prejudice only after plaintiff has given a non-frivolous excuse for delay).

        Even if MGA presented a legitimate excuse for its repeated violations of the Court's Orders (and it has not), Mattel would nonetheless be entitled to the monetary sanctions it seeks, because it has suffered actual prejudice as a result of MGA's misconduct. Actual prejudice may "consist of costs or burdens of litigation." PPA Prods. Liability Litig., 460 F.3d at 1228 (citing Pagtalunan v. Galaza, 291 F.3d 639, 642 (9th Cir. 2002)). Here, Mattel has incurred the cost and burden of bringing the present motion to compel MGA's compliance with the Court's May 16 and August 14 Orders. See Koch v. The Burlington Northern & Santa Fe Railway Co., 2006 WL 2927665 (W.D. Wash. 2006) (rejecting defendant's argument that plaintiff was not prejudiced by delay because "defendant's dilatory conduct, including months of

---

[122]  See PPA Prods. Liability Litig., 460 F.3d at 1228.

07209/2335422.2

-56-

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

1  unfulfilled promises, forced plaintiff to file a motion to compel to obtain discovery

2  which defendant was undisputedly required to provide months ago"). Moreover, this is

3  a complex, high-stakes litigation which involves a number of complicated issues. As

4  the Discovery Master is well-aware, the cut off for Phase 1 discovery in this case is

5  January 28, 2008, with expert reports for Phase 1 due two weeks later, on February 11,

6  2008. With no prospect of any effort by MGA to comply with the Orders before the

7  second week of January, Mattel will have less than a month to prepare its expert

8  reports. This is also prejudicial. See Anderson, 542 F.2d at 525 (that the case "is an

9  involved, complex case increases the prejudice from the delay. Early preparation and

10  participation are essential in such circumstances").

11      MGA should not be rewarded for its delay tactics and violation of the Court's

12  Orders. Accordingly, the Court should grant Mattel's request for partial reimbursement

13  of its fees and costs.[123]

14

15

16

17

18  [123]   Based upon the December 14, 2007 hearing, MGA declines to address

19  Mattel's request for preclusion sanctions and for an order recommending a finding

20  of contempt, stating that it "will address any such claims, if Mattel chooses to press
them, at the appropriate time." Opp. at 59. Mattel understands that a single report

21  to the Discovery Master following the close of Phase 1 discovery is appropriate.

22  Accordingly, Mattel does not further address the recommendation for either
preclusion sanctions or contempt at this juncture with the understanding that Mattel

23  will not be prejudiced or otherwise lose its ability to pursue those remedies for the
violations identified in this Motion and Reply. Carter Bryant also filed a response to

24  Mattel's Motion on December 18, 2007, arguing that he allegedly would be

25  adversely affected by Mattel's requested preclusion sanctions, and asking that they
be denied on that basis. As indicated above, and in accordance with the Court's

26  directive at the December 14, 2007 hearing, Mattel does not address Bryant's

27  arguments at this time. Mattel reserves the right, however, to brief this issue and

28  otherwise respond to Bryant's contentions following the close of Phase 1 discovery.

209/2335422.2

-57-

MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO
COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

1

2     **Conclusion**

3     For the reasons set forth above, in the accompanying Responses to the Separate

4 Statements, and in Mattel's Motion and in the accompanying Separate Statements,

5 Mattel respectfully requests that its Motion be granted in its entirety.

6 DATED: December 26, 2007      QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP

7

8     By _Jon D. Corey /sh_

9     Jon D. Corey
Attorneys for Mattel, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2335422.2

-58-
MATTEL, INC.'S REPLY I.S.O. ITS MOTION (1) TO ENFORCE COURT'S DISCOVERY ORDERS AND TO
COMPEL; (2) TO OVERRULE IMPROPER INSTRUCTIONS; AND (3) FOR SANCTIONS

ER00001606:1-ALL