**EXHIBIT 22**

# CONFORMED COPY

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

**FILED**

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

2007 SEP 26  PM 2: 28

5

6

7                     UNITED STATES DISTRICT COURT

8                     CENTRAL DISTRICT OF CALIFORNIA

                              EASTERN DIVISION

9

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
12              Plaintiff,

13        v.                               Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15              Defendant.                 **ORDER GRANTING IN PART AND
                                           DENYING IN PART MATTEL'S
16                                         MOTION TO COMPEL MGA TO
                                           PRODUCE WITNESSES PURSUANT
17                                         TO THIRD NOTICE OF DEPOSITION
                                           UNDER RULE 30(b)(6); DENYING
18                                         REQUEST FOR SANCTIONS**

19  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
20  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
21

22

23                          I. INTRODUCTION

24        On July 13, 2007, Mattel, Inc. ("Mattel") submitted its "Motion to Compel MGA to

25  Produce Witnesses Pursuant to Mattel's Third Notice of Deposition Under Rule 30(b)(6) and for

26  Sanctions." Specifically, Mattel seeks an order compelling MGA Entertainment, Inc. ("MGA")

27  to produce witnesses on Topics 1-3, 6-8, 9 and 11-13 of Mattel's Third Rule 30(b)(6) Notice. On

28

EXHIBIT 22 PAGE 384

1    July 31, 2007, MGA submitted an opposition brief.  On August 6, 2007, Mattel submitted a reply

2    brief.  The matter was heard on September 24, 2007.  Having considered the motion papers and

3    the comments of counsel, Mattel's motion is granted in part and denied in part, and the request for

4    sanctions is denied.

5                                   II. BACKGROUND

6          Mattel first served a Rule 30(b)(6) Notice of Deposition of MGA in February of 2005,

7    which specified eight topics for deposition.  Mattel served a Second Notice of Deposition of

8    MGA in February of 2007, which specified forty-six topics for deposition.  On June 5, 2007,

9    Mattel served a Third Notice of Deposition of MGA (the "Third Notice"), which is the subject of

10   the present motion to compel.  The Third Notice specifies sixteen topics for deposition.  On June

11   29, 2007, MGA served objections to the Third Notice, and on July 5, 2007, the parties met and

12   conferred.  The parties were not able to resolve their disputes regarding four subject matters: hard

13   drives and other storage devices (Topics 1-3); prior inconsistent statements to the press (Topics 6-

14   8); "test projects" for MGA (Topic 9); and payments MGA made to Isaac Larian, Farhad Larian

15   and Morad Zarabi (Topic 11-13).  The topics at issue are set forth below.

16                          Hard Drives and Other Storage Devices

17          1.     The IDENTITY, current or last known location, and disposition of

18          each STORAGE DEVICE that each of the following PERSONS has used to

19          create, generate, prepare, draft, send and/or receive any DOCUMENT or

20          DIGITAL INFORMATION that REFERS OR RELATES TO BRATZ and/or

21          ANGEL at any time since January 1, 1999, including without limitation the date

22          of acquisition and the date of disposition of each STORAGE DEVICE:  Isaac

23          Larian, Farhad Larian, Paula Garcia, BRYANT, Kami Gillmour, Veronica

24          Marlow, Mercedeh Ward, Margaret Hatch-Leahy, Jennifer Maurus, Judy Rich,

25          Ninette Pembleton, Kerrie Brode, Victoria O'Connor, Aileen Storer, Charles

26          O'Connor, Helene Bartels, Colleen O'Higgins, Vivian Matt, Maureen Mullen,

27          Rachel Harris, Barbara Malcolm, David Dees, Ben Ton, Dave Malacrida.

28

EXHIBIT 22 PAGE 355

1    2.    The IDENTITY, current or last known location, and disposition of

2 each backup, copy or image of the STORAGE DEVICES referenced in Topic 1 of

3 this Notice, including without limitation the date of creation and the date of

4 disposition of each such backup or copy.

5    3.    YOUR search for and production of DOCUMENTS and DIGITAL

6 INFORMATION from the STORAGE DEVICES referenced in Topic 1 of this

7 Notice.

8 <u>Prior Inconsistent Statements to the Press</u>

9    6.    YOUR statements to Christopher Palmeri in connection with the

10 Business Week article entitled "To Really Be A Player, Mattel Needs Hotter

11 Toys," published on or about July 28, 2003, including without limitation in

12 connection with the statement that Isaac Larian "got the idea for Bratz after seeing

13 his own kids run around in navel-bearing tops and hip-huggers."

14    7.    YOUR statements to Denise I. O'Neal in connection with the

15 Chicago Sun-Times article entitled "Bratz Packers Are What's Cool in Doll

16 World," published on or about March 5, 2004, including without limitation in

17 connection with the statements that MGA's "creative team decided the name

18 should be catchy and not have more than six letters. Keeping with today's trend

19 of making names more 'cool' by changing the spelling, MGA executives decided

20 to replace the 's' with a 'z'"

21    8.    YOUR statements to Jeff Weiss in connection with the San

22 Fernando Valley Business Journal article entitled "Immigrant's Creative

23 Company Shakes Up Toy Industry," published on or about March 29, 2004,

24 including without limitation in connection with the statement that "[i]t was

25 Jason's idea for Bratz."

26 <u>"Test Projects" for MGA</u>

27    9.    The IDENTITY of each PERSON who YOU had perform, or who

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT 22 PAGE 356

1  YOU requested, asked or solicited to perform, any "test project" in advance of or

2  in consideration of employment by YOU since January 1, 1995, including without

3  limitation the IDENTITY of each such PERSON who was a MATTEL employee

4  at the time.

5  <u>Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi</u>

6  11.  Payments of money or any other item of value that YOU have

7  made to, for or on behalf of Isaac Larian or any FAMILY MEMBER of Isaac

8  Larian since January 1, 1999, including without limitation (a) the amounts of such

9  payment and the equivalent dollar value of each of item of value, (b) the dates of

10 such payment, (c) the IDENTITY of each recipient of such payment, (d) the

11 IDENTITY of each bank or financial institution account to which such payment

12 was made and (e) the reasons for each such payment.

13 12.  Payments of money or any other item of value that YOU have

14 made to, for or on behalf of Farhad Larian or any FAMILY MEMBER of Farhad

15 Larian since January 1, 1999, including without limitation (a) the amounts of each

16 such payment and the equivalent dollar value of each of item of value, (b) the

17 timing of each such payment, (c) the IDENTITY of each recipient of each such

18 payment, (d) the IDENTITY of each bank or financial institution account to

19 which such payment was made and (e) the reasons for each such payment.

20 13.  Payments of money or any other item of value that YOU have

21 made to, for or on behalf of Morad Zarabi or any FAMILY MEMBER of Morad

22 Zarabi since January 1, 1999, including without limitation (a) the amounts of each

23 such payment and the equivalent dollar value of each item of value, (b) the timing

24 of each such payment, (c) the IDENTITY of each recipient of each such payment,

25 (d) the IDENTITY of each bank or financial institution account to which such

26 payment was made and (e) the reasons for each such payment.

27 Zeller Decl., Ex. 23.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT 22 PAGE 357

1  Mattel seeks an order compelling MGA to produce witnesses to testify on Topics 1-3, 6-8,

2  9 and 11-13, and overruling all of MGA's objections and limitations.  Mattel contends that the

3  testimony it seeks is relevant, not unduly burdensome, and not otherwise objectionable as

4  cumulative or duplicative of any other deposition testimony already given in the case.

5  MGA contends that Mattel's Third Notice is invalid because Mattel failed to obtain leave

6  of court to take MGA's deposition after having previously deposed several 30(b)(6) designees.

7  MGA contends that Rule 30(a)(2)(B), Fed.R.Civ.P., requires Mattel to establish good cause for

8  examining MGA any further.  MGA further contends that Mattel has not established the requisite

9  good cause, and instead improperly has attempted to shift the burden of proof to MGA to justify

10  its objections to the Third Notice.  Lastly, MGA contends that Mattel has had many opportunities

11  to obtain, and in many cases has already obtained, the information it now moves to compel.

12  <center>III. STANDARDS</center>

13  Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

14  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

15  party." Fed.R.Civ.P. 26(b)(1).  "Relevant information need not be admissible at trial if the

16  discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

17  Pursuant to Rule 26(b)(2)(C), Fed.R.Civ.P., the court shall limit the frequency or extent of

18  use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably

19  cumulative or duplicative, or is obtainable from some other source that is more convenient, less

20  burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by

21  discovery in the action to obtain the information sought; or (iii) the burden or expense of the

22  proposed discovery outweighs its likely benefit, taking into account the needs of the case, the

23  amount in controversy, the parties' resources, the importance of the issues at stake in the

24  litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

25  26(b)(2)(C).

26  Pursuant to Rule 30, Fed.R.Civ.P., a party may take the testimony of any person, including

27  a party, by deposition upon oral examination without leave of court, except as provided in Rule

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT 22 PAGE 358

1   30(a)(2), Fed.R.Civ.P.  In particular, Rule 30(a)(2) specifies that a party must obtain leave of

2   court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2),

3   Fed.R.Civ.P., if "the person to be examined already has been deposed in the case."  Fed.R.Civ.P.

4   30(a)(2)(B).

5                               IV. DISCUSSION

6        As a threshold matter, the parties dispute whether Rule 30(a)(2)(B), Fed.R.Civ.P., applies

7   to depositions taken pursuant Rule 30(b)(6), Fed.R.Civ.P.  There is caselaw to support each

8   party's position.  See e.g. Ameristar Jet Starter, Inc. v. Signal Composites, Inc., 244 F.3d 189 (1st

9   Cir. 2001) (second Rule 30(b)(6) subpoena issued without leave of court was invalid); In re

10  Sulfuric Acid Antitrust Litig., 2005 WL 1994105 (D. Ill. Aug. 19, 2005) (holding that second

11  Rule 30(b)(6) subpoena issued without leave of court was invalid); Innomed Labs, LLC v. Alza

12  Corp., 211 F.R.D. 237 (S.D. N.Y. 2002) (quashing overbroad 30(b)(6) subpoena issued without

13  leave of court); Quality Aero Tech., Inc. v. Telemetrie Elektronik, 212 F.R.D. 313, 319 (E.D.

14  N.C. 2002) (holding that Rule 30(a)(2)(B) does not apply to Rule 30(b)(6) depositions).  For

15  purposes of the present motion, however, it is unnecessary to resolve this conflict in the law

16  because the debate is purely academic and inconsequential.  As Mattel has requested, Mattel's

17  motion is treated herein as a motion for leave to serve an additional 30(b)(6) notice with

18  additional topics.  In evaluating the appropriateness of the topics, it is Mattel's burden to

19  demonstrate that there is good cause for such discovery (see e.g. Boston Scientific Corp. v. Cordis

20  Corp., 2004 WL 1945643 (N.D.Cal. 2004)), applying the principles stated in Rule 26(b)(2),

21  Fed.R.Civ.P.

22                  Hard Drives and Other Storage Devices (Topics 1-3)

23        Topic 1 seeks information regarding the location and disposition of computer hard drives

24  or other storage devices used by specified MGA employees or contractors that contain or

25  contained documents related to the Bratz or Angel projects.  Topic 2 seeks the identification and

26  last known location of any backup, copy or image of the hard drives or storage devices identified

27  in Topic 1. Topic 3 seeks information regarding MGA's search for and production of documents

28  

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                          6

EXHIBIT 22 PAGE 359

1   and digital information from the hard drives and storage devices referenced in Topic 1.

2        MGA objected to Topics 1-3 as overbroad, unduly burdensome, vague, ambiguous,

3   irrelevant, and not reasonably calculated to lead to admissible evidence. MGA also objected to

4   Topics 1-3 to the extent that the information sought is obtainable through other more convenient,

5   less burdensome and less expensive means. Lastly, MGA objected to Topics 1-3 as unreasonably

6   cumulative and duplicative of information already provided by Ken Lockhart, Vice President and

7   Chief Information Officer for MGA.

8        Topics 1-3 unquestionably seek information that is relevant within the meaning of Rule

9   26(b)(1), Fed.R.Civ.P., which specifically authorizes discovery regarding any matter, not

10  privileged, that is relevant to the claim or defense of any party, including "the existence,

11  description, nature, custody, condition, and location of any books, documents or other things." A

12  portion of the discovery sought, however, is unreasonably cumulative and duplicative of

13  information already provided by Mr. Lockhart. MGA designated Mr. Lockhart as a 30(b)(6)

14  witness to testify about MGA's retention, destruction and data back-up policies, MGA's digital

15  information systems and application software, employees' electronic messaging systems, and

16  MGA's policies regarding the use of transportable media. Mr. Lockhart testified about the

17  location and disposition of MGA employees' hard drives and storage devices in general.

18       Mattel contends that Topics 1-3 differ from the topics in the Second Notice and the

19  testimony previously given by Mr. Lockhart in that Mattel now seeks information about the

20  locations and dispositions of hard drives used by 24 named individuals. Mattel contends that the

21  testimony it seeks will enable it to assess MGA's production, including whether any documents

22  requested or compelled by the Court were destroyed, not collected or otherwise made unavailable

23  to Mattel. Mattel's Reply at p.7.

24       Although Mattel's stated objective for seeking testimony regarding Topics 1-3 may be

25  legitimate, the burden and expense of a Rule 30(b)(6) deposition is not justified under the

26  circumstances of this case. Mattel has accused MGA of obstructing discovery, and in particular

27  withholding Bryant's computer. There is no evidence, however, to suggest that MGA has refused

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT 22 PAGE 360

1 | or failed to search for and produce responsive documents located on the hard drives of the other

2 | individuals named in Topic 1. It is burdensome and expensive to prepare a witness to testify

3 | about the locations and dispositions of hard drives used for 24 different individuals. The likely

4 | benefit of undergoing such a burden and expense is doubtful. Furthermore, there are other less

5 | burdensome and less expensive means of assessing whether MGA has complied with its

6 | discovery obligations, including for example, document requests and interrogatories. Therefore,

7 | Mattel's motion is denied as to Topics 1-3.

8 | <u>Prior Inconsistent Statements to the Press (Topics 6-8)</u>

9 | Topics 6-8 seek testimony regarding three public statements made by Isaac Larian

10 | regarding who conceived of Bratz. MGA objected to Topics 6-8 as irrelevant and not reasonably

11 | calculated to lead to admissible evidence. MGA also objected to Topics 6-8 to the extent that the

12 | information sought is obtainable through other more convenient, less burdensome and less

13 | expensive means. Further, MGA objected to Topics 6-8 as unreasonably cumulative and

14 | duplicative of information already provided by MGA and/or Carter Bryant. MGA also objected

15 | to a deposition on these Topics "to the extent that the statements referenced above were not made

16 | by MGA as a corporate actor and thus they are not the appropriate subject of a 30(b)(6)

17 | designation." Zeller Decl., Ex. 24.

18 | Mattel contends that Topics 6-8 are the proper subject of a Rule 30(b)(6) deposition

19 | because each of the statements identified therein was made by MGA's Chief Executive Officer,

20 | Isaac Larian. Mattel acknowledges that it already deposed Isaac Larian regarding one of the

21 | articles identified in Topics 6-8, but contends that it is not attempting to re-depose him. Rather,

22 | Mattel contends that it is entitled to elicit testimony that will bind the corporation so that it will

23 | not be "sandbagged" at trial. Mattel's Reply at p.6.

24 | MGA accuses Mattel of misusing the 30(b)(6) procedure when Mattel knows that Isaac

25 | Larian is the person who should be, and already has been, deposed about the statements identified

26 | in Topics 6-8. MGA also contends that Mattel opted to limit its examination of Isaac Larian to

27 | one article, and that Mattel's failure to fully question Isaac Larian in no way justifies deposing

28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT 22 PAGE 361

1   MGA now. MGA also contends that Mattel could avail itself of other discovery methods, such as
2   interrogatories or requests for admission, to obtain further information about the publications
3   identified in Topics 6-8.

4         Topics 6-8 seek information relevant to the central issue in the case: who conceived of
5   Bratz. Mattel's use of the 30(b)(6) procedure is justified in order to obtain testimony that will
6   bind the corporation. The testimony Mattel now seeks is not unreasonably cumulative or
7   duplicative of testimony it has already sought from Isaac Larian because Mattel previously
8   questioned Isaac Larian about only one of the articles identified in Topics 6-8. Further, the likely
9   benefit to Mattel of testimony from Isaac Larian (or another corporate designee) regarding Topics
10   6-8 outweighs the burden and expense to MGA, given the importance of the testimony Mattel
11   seeks. Mattel's motion is granted as to Topics 6-8.

12   <div align="center">"Test Projects" for MGA (Topic 9)</div>

13         In Topic 9, Mattel seeks the identity of each person MGA had perform or who MGA
14   requested, asked or solicited to perform, any "test project" in advance of or in consideration of
15   employment by MGA since January 1, 1995. MGA objected to Topic 9 as irrelevant, not
16   reasonably calculated to lead to the discovery of admissible evidence, overbroad, unduly
17   burdensome, and unreasonably cumulative and duplicative. MGA also objected to Topic 9 as
18   vague and ambiguous, particularly with respect to the term "test project." MGA also objected to
19   Topic 9 to the extent that the information sought is obtainable through other, more convenient,
20   less burdensome and less expensive means. MGA also objected to Topic 9 as seeking
21   confidential, proprietary, and commercially sensitive information with no relevance to the
22   litigation.

23         When Carter Bryant was deposed by Mattel, he testified that he "did sort of a tryout kind
24   of a project for" MGA. Zeller Decl., Ex. 29 at 9:19-20. He also referred to this "tryout" project
25   as a "test assignment." Id. at 515-516. In light of Bryant's testimony, Mattel's stated purpose of
26   Topic 9 is to "obtain information that will refute MGA and Bryant's assertions that Bryant's
27   working for MGA while employed by Mattel was no different than a supposedly standard

28   Bryant v. Mattel, Inc.,
    CV-04-09049 SOL (RNBx)
                                                  9

EXHIBIT 22 PAGE 362

1  industry practice of having candidates for creative positions make artwork as part of the job
2  interview." Mattel's Motion at p.22.

3      MGA acknowledges that Mattel provided a definition for the phrase "test assignment" in
4  its motion papers. MGA's Opposition at p.10. MGA nevertheless contends that Topic 9 remains
5  objectionable as overbroad, reasoning that it would require MGA to provide information "with
6  regard to how it proceeded with hiring virtually every single employee hired since 1995."
7  MGA's Opposition at p.9. MGA also contends that it would be unduly burdensome to require
8  MGA to have a designee review and potentially memorize information about every single person
9  who has applied for a job at MGA since 1995, particularly when Bryant only began working for
10  MGA in 2000. MGA contends that a contention interrogatory is more appropriate than a 30(b)(6)
11  deposition to obtain the information called for in Topic 9.

12      Topic 9 seeks information relevant to one of MGA and Bryant's defenses, namely their
13  claim that Bryant's work for MGA while employed by Mattel was no different than a standard
14  industry practice of having candidates for creative positions make artwork as part of the job
15  interview. Topic 9, however, is objectionable because it is overbroad and burdensome. In
16  particular, Topic 9 is overbroad in terms of the specified time frame because Bryant did not begin
17  working at MGA until the year 2000. Topic 9 is also objectionable because the information
18  sought is more appropriately obtained through a contention interrogatory, which would be
19  significantly less burdensome and less expensive than a 30(b)(6) deposition. Therefore, Mattel's
20  motion is denied as to Topic 9. In lieu of taking a 30(b)(6) deposition on Topic 9, Mattel is
21  granted leave to serve a contention interrogatory regarding Topic 9 limited to the years 1998
22  through 2004.

23      Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi (Topics 11-13)
24      In Topics 11-13, Mattel seeks information regarding payments made by MGA to Isaac
25  Larian (Topic 11), Farhad Larian (Topic 12), and Morad Zarabi (Topic 13). MGA objected to
26  these Topics as irrelevant, not reasonably calculated to lead to the discovery of admissible
27  evidence, overbroad, unduly burdensome, and unreasonably cumulative and duplicative. MGA
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                    10

EXHIBIT 22 PAGE 363

1   also objected to Topics 11-13 to the extent that the information sought is obtainable through
2   other, more convenient, less burdensome and less expensive means.  MGA also objected to
3   Topics 11-13 as seeking confidential, proprietary, and commercially sensitive information with no
4   relevance to the litigation.

5       Mattel explains that Morad Zarabi arbitrated a dispute between Isaac Larian and Farhad
6   Larian that involved the timing of the creation of Bratz.  More specifically, Farhad Larian claimed
7   that Isaac Larian concealed from him MGA's development with Carter Bryant of Bratz dolls and
8   alleged that Bryant began working with MGA during a time Bryant was employed by Mattel.
9   Mattel considers all three individuals involved in the arbitration as witnesses in this litigation, and
10  therefore seeks information that may establish their bias.  Mattel also emphasizes that Isaac
11  Larian is a party to the litigation, and that payments made by MGA to him are relevant to Mattel's
12  claim for punitive damages, and may be used as impeachment evidence.  Lastly, although Mattel
13  acknowledges that it deposed Isaac Larian regarding payments he received from MGA, Mattel
14  contends that it is entitled to testimony from MGA to corroborate or refute his testimony.

15      MGA contends that Topics 11-13 are not relevant to this lawsuit.  In particular, MGA
16  objects to Topics 12 and 13 as seeking "private financial records of persons who are neither
17  parties nor witnesses in this action, and whose only connection is knowing people involved in the
18  lawsuit."  MGA's Opposition at p. 13.  With regard to payments to Isaac Larian, MGA contends
19  that Mattel already had the opportunity to ask him about payments during his deposition.  MGA
20  also contends that Mattel is not entitled to conduct discovery regarding Isaac Larian's net worth at
21  this time.  Even if Mattel is entitled to conduct such discovery, MGA contends that payments
22  made to him would not establish his net worth because they represent only one of many sources
23  of income and do not account for his other assets and liabilities.

24      MGA's payments to Isaac Larian and Farhad Larian are relevant to the claims and
25  defenses in the case.  Payments to Isaac Larian and Farhad Larian may also show possible bias
26  and be used for impeachment purposes.  Moreover, MGA's payments to Isaac Larian may be
27  relevant to Mattel's claim for punitive damages.  Payments to Isaac Larian are a component of his
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                                 11

EXHIBIT _22_ PAGE _360_

1   net worth, even if they represent one source of income. The burden of producing such information

2   does not outweigh its relevance, taking into consideration the circumstances of this case.

3   Furthermore, there is no stay on discovery pertaining to punitive damages. Accordingly, Mattel's

4   motion is granted as to Topics 11 and 12.

5        In contrast, MGA's payments to Morad Zarabi are irrelevant. His only connection to this

6   litigation appears to be with the arbitration proceedings. Any potential relevance of MGA's

7   payments to Morad Zarabi is outweighed by the burden and the intrusion into his private financial

8   affairs. Mattel's motion is denied as to Topic 13.

9                        V. CONCLUSION

10      For the reasons set forth above, it is hereby ordered as follows:

11      1.    Mattel's motion to compel is granted as to Topics 6-8, 11 and 12.

12      2.    Mattel's motion to compel is denied as to Topics 1-3, 9 and 13. In lieu of taking a

13   deposition on Topic 9, Mattel is hereby granted leave to serve a contention interrogatory

14   regarding Topic 9 that is limited to the years 1998 through 2004.

15      3. Mattel's request for sanctions is denied.

16   Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

17   Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20   Dated: September 25, 2007

21                               HON. EDWARD A. INFANTE (Ret.)

                                 Discovery Master

22

23

24

25

26

27

28

EXHIBIT 22 PAGE 305

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on September 26, 2007, I served the attached ORDER GRANTING IN PART AND DENYI8NG IN PART MATTEL'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES PURSUANT TO THIRD NOTICE OF DEPOSITION UNDER RULE 30(b)(6); DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart; Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on September 26, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT 22 PAGE 366

**EXHIBIT 23**



☒ Close Window

🖶 **Print**

# The man with a passion for fashion dolls

Oct 1, 2003
By: <u>Sam Phillips</u>
License! Europe



## When did you launch your first doll?

Our first doll was produced in 1997, called Singing Bouncy Baby. I saw it from a toy inventor and didn't like it. But I presented it to a buyer at Target Stores. He said 'Your company's called Micro Games. What are you doing with dolls?!' I said if that's the only issue I'll change the name. So we became MGA Entertainment and in 1997 that doll won toy of the year award and we sold over a million pieces – unusual for a large doll.

## How did the idea for Bratz come about?

A Wal-Mart buyer told me if I could bring in a product that could compete with Barbie, he'd take it. So I spent 18 months researching it. Finally a designer came up with the Bratz look. We tested it and found it worked. Now we have 18ft of shelf space at Wal-Mart. The funny thing is that the buyer turned out to be

EXHIBIT 23 PAGE 367

License Europe - The man with a passion for ~ n dolls

one of the last buyers to take Bra...



## How did you know there was a gap in the market?

I have three children and they have 22 cousins so I've always been in touch with children and what they are looking for. We all know kids are getting older younger and at MGA we observed children at the stage they were no longer interested in Barbie dolls. They were looking for fashion and for products that inspire them and reflect how they are. I saw that girls didn't want Barbie after the age of seven.

## Why were you so sure it would work?

Isaac Larian, president and CEO of MGA Entertainment, is originally from Iran. He left to travel to the USA aged 17 with a few dollars in his pocket. They ran out after a month and he worked in restaurants to pay his way through a civil engineering degree at college and then business school. A year after graduating, he founded the company that would become MGA Entertainment and the power behind the fashion doll phenomenon Bratz. He is reputed to be earning tens of thousands of dollars a minute and his company is turning over in excess of $2bn. He is described as a quintessential entrepreneur, a bold thinker and a workaholic.

To be frank it was a gut feeling. Instinct, validated by research with children. I remember seeing their eyes light up when they handled the dolls.

The clothes are very fashionable -- it's the look of urban America. The other thing is that most fashion dolls are 11 inches high. This equates to a woman over six feet tall, which just isn't likely. We made Bratz 10 inches on purpose so their proportions are more realistic. We also gave them diverse ethnicity and colouring.

## Why is 'detail' always mentioned in relation to Bratz?

It's amazing how kids, especially girls, pay attention to detail in fashion, clothing, make up and so on. The first Chloe doll had embroidery on her pants. For the UK, Bandai wanted to offer the doll at a slightly lower price and removed the embroidery. We received emails pointing out the differences.



MGA Entertainment

## Did you know Bratz would be a worldwide hit?

I knew it would be a hit in the UK where there is common language with the US. But I didn't believe it would be so big elsewhere. It's now the top fashion doll in Brazil, Hong Kong and Spain.

## How important are non US markets for you?

At the moment we do 20% of our turnover outside the US but want to grow that to 40-50%.

## Why did you license Bratz yourselves?

After being a licensee for so long, we felt we should have our own brands. We did try a couple of things that weren't successful. Now we're launching three new properties that are complementary to Bratz: Sugar Planet, Lil Bratz for younger kids and Happy Kids mini dolls.

## How has Bratz affected your company?

FL 0695

EXHIBIT 23 PAGE 368

License Europe - The man with a passion for ~ n dolls



MGA was growing by 40-60% each year before Bratz because we'd always believed in product innovation and launching new stuff. Now we're growing at 200-300%. Bratz non-licensed products (dolls and playsets) will turnover over $1bn (wholesale) this year. This probably means the brand is currently worth $2-3bn worldwide.

## What percentage of MGA's business is from Bratz?

65 - 70%.

## Is it a worry having all your eggs in one basket?

The other 30% amounts to hundreds of millions of dollars of business so I don't feel we have all our eggs in one basket. We plan to keep the brand growing for years to come and to develop new brands to complement it.

## What was your vision for the how Bratz would develop?

When we went to the New York Licensing Show in 2001 people looked at us as if we were mad. But from the start we didn't want the story to be just about the dolls. We wanted Bratz to be a lifestyle brand and the licensing came quickly, two or three months after the dolls.

You are very tough on approvals.

You've heard about that?!

## Yes. Why are you so tough?

It's very important. You can't cheat children. Consumers have come to expect quality in products. It would be easy to give out too many licences, but that isn't good for long term health. We are also tough on the type of partners we take on but it works. We now have over 200 licensees, a Bratz TV series in development and the number one selling girls' shoes in the US.

## What's your view of licensing in general?

I think it's a good thing as long as licensees don't abuse their situation by not investing time in product development.

## Bratz is a very expensive licence, isn't it?

EXHIBIT 23 PAGE 369

License Europe - The man with a passion for ⟨ ⟩n dolls

Yes it is. We've spent time and resources on creating and designing product, an annual spend of $40m on TV advertising and so on so it's worth it.



## How will Bratz impact the toy industry?

It has already shaken up the toy industry. Barbie reigned for 43 years. But now, in Spain for example, Bratz has a bigger market share than Barbie. In the USA we hope to gain 40-50% of the market share. And in the UK in May, NPD reported a 28.4% market share of the fashion doll market.

Bratz Boyz and Lil Bratz

## Did you go out to steal market share from Barbie?

We never thought we'd knock Barbie off the top spot and you will always need Barbie for young girls. Bratz dolls tend to do more business from fewer stock control units but Barbie is still incredibly strong. The important thing about Bratz is that it has grown the fashion doll category in most territories as well as gaining a big portion of market share.

## What excites you about licensing?

The success of retro properties like the Care Bears has surprised me. And it's good to see Spider Man doing well and the return of the Turtles. But there is not much out there now. The industry needs a major hit. I don't see much newness, which creates a space for companies that are innovative to launch new concepts into.

## Do you see a lack of newness in products, too?

You can't generalise here. There are some very good licensees with highly innovative product development ideas. But being a licensee I also know how easy it is to be lazy – a product works for one licence so you try it on another. Consumers are greedy for innovation.



The view from Scandinavia

## How do you keep up that innovation?

We talk to girls aged seven to fourteen most days, in groups of 10-20. We ask them and show them ideas and listen to their feedback. If it doesn't work, you have to let it drop. We also have great designers, many from the fashion industry.

## So could Bratz look completely different in a few years?

Yes. Every year we want new details to freshen the look. For example, to start with Yasmin had brown eyes. Now she has green or blue. It keeps it interesting. We'll change according to what children are wanting. Otherwise the competition will take over.

## What do you think about all the copycat dolls on the market?

FL 0697

EXHIBIT 23 PAGE 370

License Europe - The man with a passion for    dolls

I guess it's the way of the industry. It's to be expected from small companies. It's a nice compliment to us but it's a sad day for the industry when people imitate rather than innovate. But overall, kids are smart. They want the real thing. I remember the early days in consumer electronics. Sony Walkman came out and attracted lots of copycats but Sony was and still is the leader.



### How will Bratz shape the future of MGA?

MGA is a private company and I'll try and keep it like that for as long as possible. Then we have the advantage of doing what we want without pressure from analysts and so on. We see ourselves as a consumer entertainment products company. We exist in lots of categories and don't want to limit ourselves to just being a toy company.

### Do you think there are dangers for a company having such a big hit?

Not always. In the case of Pokemon, for example, the property relied on a TV show and video game. When you have a lifestyle brand it's different.

### How can you be sure Bratz won't be just a fad?

By making sure we don't over-supply, watching the quality and approvals with our fashion police, being careful with licensing and with advertising and marketing support. That's how I think we'll keep the brand going.

### Do you know how much MGA is worth now?

I don't think about it. I guess it's at least a billion dollars. The most important thing is that I'm having the greatest time of my life.

### Why are you having such a good time?

I love the challenge, seeing the faces of children when they have Bratz, being interviewed by the Wall Street Journal and License! Europe! I like looking at the charts and seeing that, against all conventional wisdom, we're doing very well. I'm very competitive by nature and all this keeps me going.

### What are your personal ambitions for Bratz?

In five years time I'd like to see it as an established lifestyle brand. Just as Mattel has done with Barbie for 43 years. My vision is to keep it going by keeping it fresh and new for consumers.



### Your vision has a strong impact on the business. Can you continue to exert your individual influence on a global brand?

FL 0698

EXHIBIT 23 PAGE 371

License Europe - The man with a passion for       n dolls

My vision is very important to Bratz and the company. I'm very hands on. Other companies have red tape which is meaningless. For example, I see approvals. My personal opinion is that you have to stay involved, which is very demanding.

## Are there any secrets to marketing to the tween age group?

I'm 49 years old. I can't make decisions for 11 or 12 year olds. The best thing is to listen to them. If it works let it stay. If it doesn't, let it go.

FL 0699

EXHIBIT 23  PAGE 372

**EXHIBIT 24**

DIANA M. TORRES (S.B. #162284)
JAMES P. JENAL (S.B. #180190)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: dtorres@omm.com

DALE M. CENDALI (admitted pro hac vice)
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: dcendali@omm.com

PATRICIA GLASER (S.B. # 55668)
CHRISTENSEN, GLASER, FINK,
JACOBS, WEIL & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920
Email: pglaser@chrisglase.com

Attorneys for Plaintiff
MGA Entertainment, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., | Case No. CV 04-09049 SGL (RNBx) |
| Plaintiff, | **MGA'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS** |
| v. | |
| MATTEL, INC., a Delaware Corporation, and DOES 1-10, Defendants. | |

EXHIBIT 24 PAGE 373

11-22

| | |
|---|---|
| PROPOUNDING PARTY: | MGA ENTERTAINMENT, INC. |
| RESPONDING PARTY: | MATTEL, INC. |
| SET NO. | ONE |
| NOS. | 1-115 |

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, plaintiff MGA Entertainment, Inc. ("MGA") requests that defendant Mattel, Inc. ("Mattel") produce all documents and tangible things described, in accordance with the Definitions and Instructions set forth below, on December 22, 2006, at the offices of O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles, California 90071.

### DEFINITIONS

As used in these Requests:

1.      "BRATZ" means and refers to each image, character, logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license, as part of a line of goods or merchandise commonly known as, or sold and marketed under the "Bratz" trademark or trade dress including but not limited to the "BRATZ CONCEPT," "FIRST BRATZ DOLLS," "BRATZ DOLLS," "BRATZ PACK," "LIL' BRATZ," "BRATZ PETZ," "BRATZ BABYZ," and "BRATZ BOYZ."

2.      "BRATZ CONCEPT" means and refers to each "BRATZ"-related image, drawing, picture, sculpt, mold, prototype and any other form of artwork predating the FIRST BRATZ DOLLS, examples of which have been the subject of Mr. Bryant's testimony and produced by Mr. Bryant in *Mattel v. Bryant,* now part of consolidated Case No. CV 04-09049 SGL (RNBx), bearing Bates serial numbers

- 1 -

<div align="right">MGA'S FIRST SET OF REQUESTS FOR THE<br>PRODUCTION OF DOCUMENTS AND THINGS</div>

EXHIBIT 24 PAGE 374

1  Bryant 00175-177; 00179-00182; 00189-00190; 00192-00196; 00198-00216;

2  00218; 00341; 00972; 01014; and 01116-01118.

3      3.   "FIRST BRATZ DOLLS" means and refers to each image, character,

4  logo, doll, toy, accessory, product, packaging or other thing or matter that is or has

5  ever been manufactured, marketed or sold by MGA, or others under license, as part

6  of a line of goods or merchandise commonly known as, or sold and marketed under

7  the "Bratz" trademark or trade dress and consisting of the following:  "Bratz Cloe,"

8  SKU 248521; "Bratz Cloe," SKU 248538; "Bratz Jade," SKU 248545; "Bratz

9  Sasha," SKU 248552; "Bratz Yasmin," SKU 248569; "Bratz Pajama Power

10 Fashion," SKU 248576; "Bratz Study Hall Fashion," SKU 248583; and "Bratz

11 Dynamite Dance Fashion," SKU 248682.

12     4.   "BRATZ DOLLS" means and refers to each image, character, logo,

13 doll, toy, accessory, product, packaging or other thing or matter that is or has ever

14 been manufactured, marketed or sold by MGA, or others under license, as part of a

15 line of goods or merchandise commonly known as, or sold and marketed under the

16 "Bratz" trademark or trade dress excluding the "FIRST BRATZ DOLLS," "LIL'

17 BRATZ," "BRATZ PETZ," and "BRATZ BABYZ" and including, without

18 limitation, the styling head commonly known as or sold and marketed as the "Bratz

19 Funky Fashion Make Over" styling head, and specifically including, without

20 limitation, the images, characters, dolls, playsets and other products and toys called

21 or referred to as, or named or marketed in association with the names "Cloe,"

22 "Jade," "Sasha," "Yasmin," "Meygan," "Dana," "Fianna," "Nevra," "Cameron,"

23 "Dylan," "Eitan," "Koby," "Cade," "Ailani," "Nazalia," "Talia," "Zada,"

24 "Mikko," "Colin," "Deavon," "Lakin," "Flaunt It," "Beach Party," "Micro

25 Bratz," "Xpress It," "Bratz Boyz," "Funk 'n' Glow," "Funky Fashion Makeover,"

26 "Holiday Bratz – Sweetheart," "Holiday Bratz – Spring Fling," "Holiday Bratz –

27 Independence Dance," "Slumber Party," "Strut It," "Spring Break," "Formal

28 Funk," "Bratz Boyz Formal Funk," "Wintertime Wonderland," "Style It!," "Funk

- 2 -

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 375

1   Out!," "Sun-Kissed Summer," "Girls Nite Out!," "Wild Life Safari," "Forever

2   Diamondz," "Rock Angelz," "Genie Magic," "Ice Champions," "Bratz Rodeo,"

3   "Bratz Play Sportz," "Bratz Boyz Play Sportz," "Bratz Baby Sitter," "Bratz

4   Princess," "Bratz Boyz Prince," "Bratz Boyz Twiinz," "Bratz Class," "Bratz

5   Costume Party," "Bratz Fit It!," "Bratz Holiday Trinity," "Bratz Passion 4

6   Fashion" and any other released, or yet to be released, BRATZ named character or

7   product theme.

8       5.    "BRATZ PACK" means and refers to any collection, compilation or

9   grouping of two or more images, characters or dolls that are or have ever been

10  manufactured, marketed or sold by MGA, or others under license, as part of a line

11  of goods or merchandise commonly known as, or sold and marketed under the

12  "Bratz" trademark or trade dress including, without limitation, the collection,

13  compilation or grouping of four female images, characters or dolls individually

14  named, called or referred to as "Bratz Cloe," "Bratz Jade," "Bratz Sasha," and

15  "Bratz Yasmin" and any other similar collection, compilation or grouping of two or

16  more images, characters or dolls, male or female, and specifically including,

17  without limitation, the images, characters and dolls called or referred to as, or

18  named or marketed in association with the names "Cloe," "Jade," "Sasha,"

19  "Yasmin," "Meygan," "Dana," "Fianna," "Nevra," "Cameron," "Dylan," "Eitan,"

20  "Koby," "Cade," "Ailani," "Nazalia," "Talia," "Zada," "Mikko," "Colin,"

21  "Deavon," "Lakin," "Alek," "Zack," "Sharidan," "Bebe," "Roxxi," "Vinessa,"

22  "Maribel," "Lilee," "Katia," "Phoebe," "Leah," "Kiani," "Lilani," "Lana,"

23  "Alicia," "Krysta," "Lela," "Rina," "Sorya," "and any other released, or yet to be

24  released, "BRATZ" character.

25      6.    "LIL' BRATZ" means and refers to each image, character, logo, doll,

26  toy, accessory, product, packaging or other thing or matter that is or has ever been

27  manufactured, marketed or sold by MGA, or others under license, as part of a line

28  of goods or merchandise commonly known as, or sold and marketed under the

-3-

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 376

1 "Bratz" trademark or trade dress and commonly labeled, called, referred to, named

2 or identified as "LIL' BRATZ," and specifically including, without limitation, the

3 images, characters, dolls, playsets and other products and toys called or referred to

4 as, or named or marketed in association with the names "Cloe," "Yasmin,"

5 "Sasha," "Jade," "Ailani," "Nazalia," "Talia," "Zada," "Lil' Boyz," "Cameron,"

6 "Dylan," "Eitan," "Koby," "Mikko," "Colin," "Deavon," "Lakin," "Lil' Bratz

7 Slumber Party," "Lil' Bratz Tote," "Lil' Bratz Spring Break," "Lil Bratz

8 Dancefloor Funk," "Lil' Boyz Dancefloor Funk," and any other released, or yet to

9 be released, LIL' BRATZ character or product theme.

10      7.    "BRATZ PETZ" means and refers to each image, character, logo, doll,

11 toy, accessory, product, packaging or other thing or matter that is or has ever been

12 manufactured, marketed or sold by MGA, or others under license, as part of a line

13 of goods or merchandise commonly known as, or sold and marketed under the

14 "Bratz" trademark or trade dress and commonly labeled, called, referred to, named

15 or identified as "BRATZ PETZ," and specifically including, without limitation, the

16 images, characters and toys called or referred to as, or named or marketed in

17 association with the names, "Bratz Petz Catz," "Brigitte," "Jolie," "Kendall,"

18 "Daphne," "Bratz Petz Tokyo Catz," "Kyoto," "Cho," "Nami," "Yukiko," "Bratz

19 Petz Foxz," "Carly," "Reilly," "Shayna," "Bree," "Bratz Petz Dogz," "Shae,"

20 "Kali," "Pilar," "Abby," and any other released, or yet to be released, BRATZ

21 PETZ character or product theme.

22      8.    "BRATZ BABYZ" means and refers to each image, character, logo,

23 doll, toy, accessory, product, packaging or other thing or matter that is or has ever

24 been manufactured, marketed or sold by MGA, or others under license, as part of a

25 line of goods or merchandise commonly known as, or sold and marketed under the

26 "Bratz" trademark or trade dress and commonly labeled, called, referred to, named

27 or identified as "BRATZ BABYZ," and specifically including, without limitation,

28 the images, characters and dolls called or referred to as, or named or marketed in

- 4 -

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 377

1   association with the names, "Cloe," "Sasha," "Jade," "Yasmin," and any other

2   released, or yet to be released, BRATZ BABYZ character or product theme.

3        9.    "BRATZ BOYZ" means and refers to each male image, character,

4   logo, doll, toy, accessory, product, packaging or other thing or matter that is or has

5   ever been manufactured, marketed or sold by MGA, or others under license, as part

6   of a line of goods or merchandise commonly known as, or sold and marketed under

7   the "Bratz" trademark or trade dress and commonly labeled, called, referred to,

8   named or identified as "BRATZ BOYZ," and specifically including, without

9   limitation, the images characters, dolls, playsets and other products and toys called

10   or referred to as, or named or marketed in association with the names "Cameron,"

11   "Dylan," "Eitan," "Koby," "Cade," "Mikko," "Colin," "Deavon," "Lakin,"

12   "Alek," "Zack," "Bratz Boyz Formal Funk," "Boyz Funk Out!," "Boyz Sun-

13   Kissed Summer," "Bratz Boyz Twiinz," "Bratz Boyz Prince," "Bratz Boyz Sportz

14   and any other released, or yet to be released BRATZ BOYZ character or product

15   theme.

16       10.    "BRYANT" means Carter Bryant.

17       11.    "COMMUNICATION[S]" means any transmission of information

18   from one person or entity to another, including, without limitation, by personal

19   meeting, conversation, letter, telephone, facsimile or electronic mail.  Each request

20   that encompasses information relating in any way to communications to, from or

21   within a business or corporate entity is hereby designated to mean, and should be

22   construed to include, all communications by and between representatives,

23   employees, agents or servants of the business or corporate entity.

24       12.    "DOCUMENT[S]" incorporates the full meaning of Federal Rule of

25   Civil Procedure 34, and shall be construed in the broadest sense to mean any and

26   all writings, tangible things and property, of any kind, that are now or that have

27   been in YOUR actual or constructive possession, custody or control, including, but

28   not limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed,

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT __24__ PAGE __378__

1  punched, copied, recorded, transcribed, graphic or photographic matter of any kind

2  or nature, in, through, or from which information may be embodied, translated,

3  conveyed or stored, whether an original, a draft or copy, however produced or

4  reproduced, whether sent or received or neither, including, but not limited to,

5  notes, memoranda, correspondence, letters, facsimiles and facsimile transmittals,

6  reports, inter- and intra-office COMMUNICATIONS, work papers, work sheets,

7  work records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost

8  sheets, estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase

9  orders, telephone records, telegrams, telexes, literature, invoices, contracts,

10  purchase orders, estimates, recordings, transcriptions of recordings, records,

11  books, pamphlets, periodicals, publications, papers, tapes, DVDs, video CDs,

12  video, audio and digital recordings, television commercials, story boards, website

13  or other spot advertisements, movies, movie trailers, prototypes, products, diaries,

14  calendars, charts, drawings, sketches, messages, photographs and data contained in

15  or accessible through any electronic data processing system, including, but not

16  limited to, computer databases, data sheets, data processing cards, computer files

17  and tapes, computer disks, CD-ROMs, computer meta-data, microfilm,

18  microfiche, electronic mail, website and web pages and transcriptions thereof and

19  all other memorializations of any conversations, meetings and conference, by

20  telephone or otherwise. The term DOCUMENT also means every copy of a

21  DOCUMENT, where such copy is not an identical duplicate of the original,

22  whether because of deletions, underlinings, showing of blind copies, initialing,

23  signatures, receipt stamps, comments, notations, differences in stationery or any

24  other difference or modification of any kind.

25      13.   "MARKET RESEARCH" means any type of research, study, survey

26  or analysis of consumers or potential consumers of a product or potential product

27  including, without limitation, focus groups, consumer surveys, market analyses,

28  behavioral analyses and consumer research.

- 6 -

EXHIBIT *24* PAGE *379*

1    14.    "MATTEL," "YOU" or "YOUR" means MATTEL, Inc. and any of its

2    past or present officers, directors, agents, employees, representatives, consultants,

3    attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and

4    successors-in-interest, entities and persons acting in joint venture or partnership

5    relationships with YOU and any others acting on YOUR behalf, pursuant to

6    YOUR authority or subject to YOUR control.

7    15.    "MGA" means MGA Entertainment, Inc. and any of its past or present

8    officers, directors, agents, employees, representatives, consultants, attorneys,

9    parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-

10    in-interest, entities and persons acting in joint venture or partnership relationships

11    with MGA and any others acting on MGA's behalf, pursuant to its authority or

12    subject to its control.

13    16.    "LARIAN" means MGA's Chief Executive Officer Isaac Larian.

14    17.    "MGA PRODUCTS" means any and all products offered for sale by

15    MGA Entertainment, Inc. including, without limitation, "Bratz," "4-Ever Best

16    Friends," "Alien Racers," and "Miuchiz."

17    18.    "MY SCENE" means and refers to each image, character, logo, doll,

18    toy, accessory, product, packaging or other thing or matter that is or has ever been

19    manufactured, marketed or sold by Mattel, or others under license by Mattel, as part

20    of a line of goods or merchandise commonly known as, or sold and marketed under

21    the name, "My Scene."

22    19.    "COMPLAINT" means the complaint filed April 13, 2005 in *MGA*

23    *Entertainment, Inc. v. Mattel, Inc.,* CV 05-02727.

24    20.    "ANSWER" means the answer filed May 13, 2005 in *MGA*

25    *Entertainment, Inc. v. Mattel, Inc.,* CV 05-02727.

26    21.    "PERSON" or "PERSONS" means all natural persons, partnerships,

27    corporations, joint ventures and any kind of business, legal or public entity or

28    organization, as well as its, his or her agents, representatives, employees, officers

- 7 -

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 380

1  and directors and any one else acting on its, his or her behalf, pursuant to its, his or
2  her authority or subject to its, his or her control.

3      22.   "REFERRING OR RELATING TO" should be construed in the
4  broadest possible sense to mean concerning, consisting of, referring to, relating to,
5  describing, discussing, constituting, evidencing, containing, reflecting, mentioning,
6  pertaining to, citing, summarizing, analyzing or bearing any logical or factual
7  connection with the matter requested or described.

8      23.   The singular form includes the plural, and vice versa.

9      24.   The terms "any" and "all" are interchangeable.

10     25.   The terms "and" and "or" shall be construed disjunctively and
11 conjunctively, and each shall include the other whenever such dual construction
12 will serve to bring within the scope of any interrogatory, information that would
13 otherwise not be within its scope.

14                          **INSTRUCTIONS**

15     1.   YOU are instructed to produce all non-privileged DOCUMENTS in
16 YOUR possession, custody or control. A document is in YOUR "possession,
17 custody, or control" if it is in YOUR physical possession, or if, as a practical
18 matter, YOU have the right, upon request, to obtain possession of the DOCUMENT
19 or a copy thereof from another person or entity who has physical possession of the
20 DOCUMENT.

21     2.   If any DOCUMENT or category of DOCUMENTS is not produced in
22 full, please state with particularity the reason or reasons it is not being produced in
23 full, and describe, to the best of YOUR knowledge, information and belief, and
24 with as much particularity as possible, the DOCUMENT or portions of the
25 DOCUMENT that are not being produced.

26     3.   Each DOCUMENT is to be produced as it is kept in the usual course
27 of business, including all file folders, binders, notebooks, and other devices by
28 which such DOCUMENTS may be organized or separated.

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT _24_ PAGE _381_

1    4.    If YOU withhold any DOCUMENT, or portion of a DOCUMENT, on
2    grounds that it is protected from discovery by the attorney-client privilege, work
3    product doctrine, or other privilege, please set forth for each DOCUMENT or
4    portion of a DOCUMENT withheld:

5          (a)    The place, approximate date, and manner of recording, creating
6                 or otherwise preparing the DOCUMENT;
7          (b)    The names and organization position, if any, of each author,
8                 sender, and recipient of the DOCUMENT;
9          (c)    A general description of the subject matter of the DOCUMENT;
10         (d)    The basis of any claim of privilege; and
11         (e)    If work-product is asserted, the proceeding for which the
12                DOCUMENT was created.

13   5.    For any DOCUMENT or category of DOCUMENTS that was, but no
14   longer is, in YOUR possession, custody or control, please describe each such
15   DOCUMENT as completely as possible and provide the following information:

16         (a)    The reason the DOCUMENT is no longer in YOUR possession,
17                custody or control;
18         (b)    The person or entity, if any, who has possession, custody or
19                control or, if unknown, so state;
20         (c)    If the DOCUMENT was destroyed or otherwise disposed of,
21                state (i) the manner of disposal (*i.e.* destruction, loss, discarding
22                or other means of disposal); (ii) the date of disposal; (iii) the
23                reason for disposal; (iv) the person authorizing disposal; (v) the
24                person disposing of the DOCUMENT; and (vi) the name and
25                address of the most recent custodian of the DOCUMENT.

26   6.    These Requests impose a continuing obligation subsequent to your
27   initial production to the full extent provided for in Rule 26(e) of the Federal Rules
28   of Civil Procedure.

- 9 -

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT _24_ PAGE _382_

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

All DOCUMENTS REFERRING OR RELATING TO the origins or sources of inspiration of "MY SCENE" including, without limitation, the purpose for which "MY SCENE" products were created.

**REQUEST NO. 2:**

All DOCUMENTS REFERRING OR RELATING TO the initial design and development of "MY SCENE" dolls as identified in paragraph 34 of the COMPLAINT, including but not limited to design drawings, sculpts, internal memos, MARKET RESEARCH, and approval memos.

**REQUEST NO. 3:**

All DOCUMENTS REFERRING OR RELATING TO the initial design and development of the doll YOU refer to as "a Mattel doll character called BARBIE" as asserted in paragraph 25 of YOUR ANSWER responding to paragraph 34 of the COMPLAINT, including but not limited to design drawings, sculpts, internal memos, MARKET RESEARCH, and approval memos.

**REQUEST NO. 4:**

All DOCUMENTS REFERRING OR RELATING TO consideration being given to changing the appearance, including but not limited to DOCUMENTS REFERRING OR RELATING TO sculpts, face paint, and eye design, of the "MY SCENE" dolls, as identified in paragraph 34 of the COMPLAINT, to the appearance as identified in paragraphs 37-40 of the COMPLAINT.

**REQUEST NO. 5:**

Photographs or pictures sufficient to illustrate every variation or version of "MY SCENE" dolls ever released as a commercial product, including without limitation, face paint, face paint plans or designs, eye designs, drafts, ideas or concepts.

- 10 -

MGA'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 383

**REQUEST NO. 6:**

Photographs or pictures sufficient to illustrate every variation or version of "MY SCENE" dolls considered by YOU but never released as a commercial product, including without limitation, face paint, face paint plans or designs, eye designs, drafts, ideas or concepts.

**REQUEST NO. 7:**

All DOCUMENTS REFERRING OR RELATING TO changes to "MY SCENE" from the appearance as identified in paragraph 34 of the COMPLAINT to the appearance as identified in paragraphs 37-40 of the COMPLAINT including, without limitation, the sculpt, face paint plans or designs, eye designs, ideas, and drafts.

**REQUEST NO. 8:**

All DOCUMENTS which support YOUR assertions in paragraphs 27 and 30 of YOUR ANSWER regarding dolls identified in paragraphs 37 and 40 of the COMPLAINT.

**REQUEST NO. 9:**

All DOCUMENTS which support YOUR assertions in paragraphs 28 and 29 of YOUR ANSWER regarding eye designs identified in paragraphs 38 and 39 of the COMPLAINT.

**REQUEST NO. 10:**

All DOCUMENTS REFERRING OR RELATING TO the design, development, themes, conception or creation of the packaging or artwork of "MY SCENE" including without limitation, the motivation, purpose, or inspiration for the packaging or artwork.

**REQUEST NO. 11:**

All DOCUMENTS REFERRING OR RELATING TO the development of the product design trade dress or packaging trade dress of "MY SCENE," including but not limited to the total image, design and appearance of the "MY SCENE"

- 11 -

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 384

1  product, as well as features of the "MY SCENE" product such as size, shape, color,
2  color combinations, texture or graphics, or anything else MATTEL considers to be
3  its proprietary trade dress of "MY SCENE," and any changes thereto.

4  **REQUEST NO. 12:**

5      DOCUMENTS sufficient to show any position MATTEL has taken with
6  respect to its claimed trade dress in connection with any "MY SCENE" product,
7  including but not limited to internal COMMUNICATIONS, COMMUNICATIONS
8  with third parties, trademark applications and related DOCUMENTS, filings in
9  judicial proceedings or regulatory filings.

10  **REQUEST NO. 13:**

11     All DOCUMENTS REFERRING OR RELATING TO any MARKET
12  RESEARCH, projections or plans pertaining to the release of "MY SCENE" to the
13  market.

14  **REQUEST NO. 14:**

15     All DOCUMENTS REFERRING OR RELATING TO the creation or
16  development of the "Chillin' Out!," "Night on the Town," "Jammin' in Jamaica,"
17  "Guava Gulch Tiki Lounge," "Sound Lounge," and "My Bling Bling" (including
18  without limitation "My Bling Bling with Real Gem" and "My Bling Bling with
19  Real Diamond") themes including but not limited to DOCUMENTS showing when
20  and how they were first conceived and any awareness by MATTEL of similar or
21  proposed MGA themes.

22  **REQUEST NO. 15:**

23     All DOCUMENTS REFERRING OR RELATING TO the timing or plans
24  for release of the "MY SCENE" themes "Chillin' Out!," "Night on the Town,"
25  "Jammin' in Jamaica," "Guava Gulch Tiki Lounge," "Sound Lounge," and "My
26  Bling Bling" (including without limitation "My Bling Bling with Real Gem" and
27  "My Bling Bling with Real Diamond").

28

MGA'S FIRST SET OF REQUESTS FOR THE
                  PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 385

1    **REQUEST NO. 16:**

2         All DOCUMENTS REFERRING OR RELATING TO the "BRATZ" themes

3    including but not limited to "Forever Diamondz," "Rock Angelz," "Bratz Rodeo,"

4    "Wild Life Safari," "Bratz Passion 4 Fashion," "Formal Funk," "Funky Fashion

5    Makeover," "Wintertime Wonderland," and "Sun Kissed Summer" before they

6    were advertised or otherwise made publicly available.

7    **REQUEST NO. 17:**

8         All DOCUMENTS REFERRING OR RELATING TO "BRATZ," or

9    showing any awareness by MATTEL of "BRATZ," prior to the January 2001 Hong

10   Kong toy fair.

11   **REQUEST NO. 18:**

12        All DOCUMENTS REFERRING OR RELATING TO any "BRATZ"

13   product or theme as an inspiration or factor in the development of any "MY

14   SCENE" product.

15   **REQUEST NO. 19:**

16        All DOCUMENTS REFERRING OR RELATING TO the packaging of

17   "BRATZ, including but not limited to "Forever Diamondz," "Rock Angelz," "Bratz

18   Rode," "Wild Life Safari," "Bratz Passion 4 Fashion," "Formal Funk," "Funky

19   Fashion Makeover," "Wintertime Wonderland," and "Sun Kissed Summer."

20   **REQUEST NO. 20:**

21        All DOCUMENTS REFERRING OR RELATING TO any similarity or

22   dissimilarity between "BRATZ" and "MY SCENE" packaging, including without

23   limitation, advertising (including commercials), color schemes, product display,

24   shape, and the transparent style of packaging.

25   **REQUEST NO. 21:**

26        All DOCUMENTS REFERRING OR RELATING TO any similarity or

27   dissimilarity between "BRATZ" and "MY SCENE," including without limitation,

28   themes, accessories, clothing, and shoes.

- 13 -

1    **REQUEST NO. 22:**

2         All DOCUMENTS REFERRING OR RELATING TO any similarity or

3    dissimilarity between "BRATZ" and "MY SCENE" dolls, including without

4    limitation, feet, hair, removable heads, face paint, eye design, head size, body

5    proportions, and any other physical attributes.

6    **REQUEST NO. 23:**

7         All DOCUMENTS REFERRING OR RELATING TO whether the

8    appearance of "MY SCENE" copies, replicates, or in any way imitates the

9    appearance of "BRATZ."

10   **REQUEST NO. 24:**

11        All DOCUMENTS REFERRING OR RELATING TO whether the

12   appearance of "BRATZ" copies, replicates, or in any way imitates the appearance

13   of "MY SCENE."

14   **REQUEST NO. 25:**

15        All DOCUMENTS REFERRING OR RELATING TO whether "MY

16   SCENE" infringes or potentially infringes the copyrights, trademarks, or trade dress

17   of "BRATZ."

18   **REQUEST NO. 26:**

19        All DOCUMENTS REFERRING OR RELATING TO whether "BRATZ"

20   infringes or potentially infringes the copyrights, trademarks, or trade dress of "MY

21   SCENE."

22   **REQUEST NO. 27:**

23        All DOCUMENTS REFERRING OR RELATING TO actual or potential

24   consumer confusion between any "MY SCENE" product and any "BRATZ"

25   product.

26   **REQUEST NO. 28:**

27        All MATTEL product catalogs, sell sheets and product information sheets

28   that include "MY SCENE" products, from 2001 to the present.

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT _24_ PAGE _382_

**REQUEST NO. 29:**

DOCUMENTS sufficient to show all iterations of the www.myscene.com, www.myscene.everythinggirl.com, or http://myscene.everythinggirl.com websites.

**REQUEST NO. 30:**

All DOCUMENTS REFERRING OR RELATING TO any exhibition, or proposed, offered or requested exhibition, of "BRATZ" prior to its release to the public.

**REQUEST NO. 31:**

All DOCUMENTS REFERRING OR RELATING TO whether MATTEL had access to any exhibits, displays or show rooms containing any of MGA's "BRATZ" lines prior to its release to the public.

**REQUEST NO. 32:**

All COMMUNICATIONS between YOU and YOUR sales personnel REFERRING OR RELATING TO any alteration, manipulation or change of displays or retail spacing of MGA's PRODUCTS.

**REQUEST NO. 33:**

All COMMUNICATIONS between YOU and any merchandiser REFERRING OR RELATING TO any alteration, manipulation or change of displays or retail spacing of MGA's PRODUCTS.

**REQUEST NO. 34:**

All COMMUNICATIONS between YOU and NPD Group, Inc., including NPD Funworld, ("NPD Funworld") REFERRING OR RELATING TO MGA's subscription to NPD Funworld data, including but not limited to the termination thereof.

**REQUEST NO. 35:**

All COMMUNICATIONS between YOU and NPD Funworld REFERRING OR RELATING TO any alleged misuse of NPD Funworld data by MGA.

MGA'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 388

1  **REQUEST NO. 36:**

2      All COMMUNICATIONS between YOU and NPD Funworld REFERRING

3  OR RELATING TO MGA, LARIAN, "BRATZ," or MGA PRODUCTS, including

4  but not limited to COMMUNICATIONS as alleged in paragraphs 85 and 86 of the

5  COMPLAINT.

6  **REQUEST NO. 37:**

7      All COMMUNICATIONS between YOU and the Children's Advertising

8  Review Unit REFERRING OR RELATING TO MGA's advertisements,

9  commercials, amendments to MGA commercials, or MGA's website, including but

10  not limited to restrictions placed or suggested to be placed on any of the foregoing.

11  **REQUEST NO. 38:**

12      All COMMUNICATIONS between YOU and the Children's Advertising

13  Review Unit REFERRING OR RELATING TO MGA, LARIAN, "BRATZ," or

14  MGA PRODUCTS, including but not limited to COMMUNICATIONS as alleged

15  in paragraphs 89, 90, and 91 of the COMPLAINT.

16  **REQUEST NO. 39:**

17      All DOCUMENTS supporting YOUR assertion of "MGA's violations of the

18  Children's Advertising Review Unit standards" as set forth in paragraph 80 of

19  YOUR ANSWER.

20  **REQUEST NO. 40:**

21      All COMMUNICATIONS between YOU and the Toy Industry Association

22  REFERRING OR RELATING TO the voting procedure or rules pertaining to the

23  People's Choice Toy of the Year Award from 2001 to the present.

24  **REQUEST NO. 41:**

25      All COMMUNICATIONS between Neil Friedman and anyone REFERRING

26  OR RELATING TO the voting procedure or rules pertaining to the People's Choice

27  Toy of the Year Award from 2001 to the present as alleged in paragraph 94 of the

28  COMPLAINT.

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 389

1   **REQUEST NO. 42:**

2       All COMMUNICATIONS between YOU and the Toy Industry Association

3   REFERRING OR RELATING TO MGA's sponsorship of the "Kids' Choice

4   Awards" as alleged in paragraph 97 of the COMPLAINT.

5   **REQUEST NO. 43:**

6       All DOCUMENTS REFERRING OR RELATING TO any attempt by

7   MATTEL to price "MY SCENE" below "BRATZ" generally or to price any "MY

8   SCENE" product below the price of any corresponding "BRATZ" product.

9   **REQUEST NO. 44:**

10      All DOCUMENTS REFERRING OR RELATING TO any attempt by

11  MATTEL to limit the availability or supply of doll hair to MGA or any

12  competitors, at any time since June 2001 as alleged in paragraph 78 of the

13  COMPLAINT.

14  **REQUEST NO. 45:**

15      All DOCUMENTS REFERRING OR RELATING TO MATTEL's purchase

16  of  doll hair, at any time since June 2001.

17  **REQUEST NO. 46:**

18      All meeting minutes of YOUR Board of Directors meetings REFERRING

19  OR RELATING TO MGA, LARIAN, BRYANT, or "BRATZ."

20  **REQUEST NO. 47:**

21      All DOCUMENTS REFERRING OR RELATING TO any

22  COMMUNICATIONS between MATTEL and any buyers, merchandisers, general

23  merchandise managers or retailers world wide REFERRING OR RELATING TO

24  whether MGA was giving another United States retailer below-market pricing, or

25  whether MGA was discontinuing one of its lines as alleged in paragraph 79 of the

26  COMPLAINT world wide.

27

28

- 17 -

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 390

**REQUEST NO. 48:**

All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS between MATTEL and any buyers, merchandisers, general merchandise managers or retailers world wide REFERRING OR RELATING TO "BRATZ," LARIAN or MGA, regarding the origins, design, development, product launch, sales, promotions, advertising, quality, or price of "BRATZ" or any MGA PRODUCT world wide.

**REQUEST NO. 49:**

All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS between MATTEL and any suppliers (including but not limited to MATTEL suppliers) world wide REFERRING OR RELATING TO "BRATZ," LARIAN or MGA, regarding the origins, design, development, product launch, sales, promotions, advertising, quality, or price of "BRATZ" or any MGA PRODUCT world wide.

**REQUEST NO. 50:**

All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS between MATTEL and any licensees or potential licensees world wide REFERRING OR RELATING TO "BRATZ," LARIAN or MGA, regarding the origins, design, development, product launch, sales, promotions, advertising, quality, or price of "BRATZ" or any MGA PRODUCT world wide.

**REQUEST NO. 51:**

All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS between MATTEL and any public relations firms world wide REFERRING OR RELATING TO "BRATZ," LARIAN or MGA, regarding the origins, design, development, product launch, sales, promotions, advertising, quality, or price of "BRATZ" or any MGA PRODUCT world wide.

- 18 -

MGA'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 21 PAGE 391

1  **REQUEST NO. 52:**

2      All DOCUMENTS REFERRING OR RELATING TO any

3  COMMUNICATIONS between MATTEL and any member of the press world

4  wide REFERRING OR RELATING TO "BRATZ," LARIAN or MGA, regarding

5  the origins, design, development, product launch, sales, promotions, advertising,

6  quality, or price of "BRATZ" or any MGA PRODUCT world wide.

7  **REQUEST NO. 53:**

8      All DOCUMENTS REFERRING OR RELATING TO any

9  COMMUNICATIONS between MATTEL and any current MGA employees world

10 wide REFERRING OR RELATING TO "BRATZ," LARIAN or MGA, regarding

11 the origins, design, development, product launch, sales, promotions, advertising,

12 quality, or price of "BRATZ" or any MGA PRODUCT world wide.

13 **REQUEST NO. 54:**

14      All DOCUMENTS REFERRING OR RELATING TO any

15 COMMUNICATIONS between MATTEL and any former MGA employees world

16 wide REFERRING OR RELATING TO "BRATZ," LARIAN or MGA, regarding

17 the origins, design, development, product launch, sales, promotions, advertising,

18 quality, or price of "BRATZ" or any MGA PRODUCT world wide.

19 **REQUEST NO. 55:**

20      All DOCUMENTS REFERRING OR RELATING TO any

21 COMMUNICATIONS between MATTEL and any former MATTEL employees

22 world wide REFERRING OR RELATING TO "BRATZ," LARIAN or MGA,

23 regarding the origins, design, development, product launch, sales, promotions,

24 advertising, quality, or price of "BRATZ" or any MGA PRODUCT world wide.

25 **REQUEST NO. 56:**

26      All DOCUMENTS REFERRING OR RELATING TO any business dealings

27 between any licensee, supplier, manufacturer, retailer, distributor or merchandiser

28 world wide and MGA.

- 19 -

EXHIBIT 24 PAGE 392

**REQUEST NO. 57:**

All DOCUMENTS REFERRING OR RELATING TO MATTEL's business dealings with any licensee, supplier, manufacturer, retailer, distributor or merchandiser world wide to the extent that the DOCUMENT refers, explicitly or implicitly, to the business dealings between that licensee, supplier, manufacturer, retailer, distributor or merchandiser and MGA.

**REQUEST NO. 58:**

All DOCUMENTS REFERRING OR RELATING TO MATTEL's business dealings with any licensee, supplier, manufacturer, retailer, distributor or merchandiser world wide to the extent that the DOCUMENT refers, explicitly or implicitly, to the business dealings of that licensee, supplier, manufacturer, retailer, distributor or merchandiser that involve, in any way, "BRATZ" or any MGA PRODUCT world wide.

**REQUEST NO. 59:**

All DOCUMENTS REFERRING OR RELATING TO any interference with or inhibition of the licensing or potential licensing of MGA's products (including but not limited to "BRATZ") world wide or REFERRING OR RELATING TO any limitations or restrictions on any licensee's ability to purchase, promote, advertise, develop, design or sell "BRATZ" or other MGA products world wide.

**REQUEST NO. 60:**

All DOCUMENTS REFERRING OR RELATING TO any third party's licensing or potential licensing of MGA PRODUCTS world wide, or REFERRING OR RELATING TO any licensee's ability to purchase, promote, advertise, develop, design or sell MGA PRODUCTS world wide.

**REQUEST NO. 61:**

All COMMUNICATIONS between YOU and any retailer, sales person or merchandiser world wide REFERRING OR RELATING TO the allocation of shelf space, altering of retail displays, or placement of "BRATZ" in retail stores,

- 20 -

MGA'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 373

1   including but not limited to COMMUNICATIONS concerning the placement of

2   "BRATZ" relative to "MY SCENE" products world wide.

3   **REQUEST NO. 62:**

4       All DOCUMENTS, including but not limited to COMMUNICATIONS,

5   REFERRING OR RELATING TO any interference with or inhibition of the sales

6   or potential sales of MGA's products (including but not limited to "BRATZ") or

7   REFERRING OR RELATING TO any limitations or restrictions on any retailer's

8   ability to purchase, promote, advertise, develop, design or sell "BRATZ" or other

9   MGA products world wide.

10  **REQUEST NO. 63:**

11      All DOCUMENTS, including but not limited to COMMUNICATIONS,

12  REFERRING OR RELATING TO any contracts, licenses or agreements between

13  MATTEL and any third party world wide that place any limitations, prohibitions or

14  restriction on that third party's ability to license, manufacture, promote, distribute

15  or sell any MGA products or to supply materials or services to MGA world wide.

16  **REQUEST NO. 64:**

17      All DOCUMENTS, including but not limited to COMMUNICATIONS,

18  REFERRING OR RELATING TO any third party's agreement or decision not to

19  license, manufacture, promote, distribute or sell any MGA products, or supply

20  materials or services to MGA world wide.

21  **REQUEST NO. 65:**

22      All DOCUMENTS, including but not limited to COMMUNICATIONS,

23  REFERRING OR RELATING TO any third party's agreement or decision to limit,

24  restrict, curtail or reduce its license, manufacture, promotion, distribution or sales of

25  any MGA products, or its supply of materials or services to MGA world wide.

26  **REQUEST NO. 66:**

27      All DOCUMENTS, including but not limited to COMMUNICATIONS,

28  REFERRING OR RELATING TO any interference with or inhibition of the supply

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS



EXHIBIT 24 PAGE 394

1  of goods or services, or the potential supply of goods or services, to MGA or

2  REFERRING OR RELATING TO any limitations or restrictions on any supplier's

3  ability to do business with MGA world wide.

4  **REQUEST NO. 67:**

5      All DOCUMENTS, including but not limited to COMMUNICATIONS,

6  REFERRING OR RELATING TO any interference with or inhibition of the

7  distribution or potential distribution of MGA's products (including but not limited

8  to "BRATZ") or REFERRING OR RELATING TO any limitations or restrictions

9  on any distributor's ability to purchase, promote, advertise, develop, design, or sell

10  "BRATZ" or other MGA products world wide.

11  **REQUEST NO. 68:**

12      All commercials referenced in paragraph 47 of YOUR ANSWER.

13  **REQUEST NO. 69:**

14      All television commercials for "MY SCENE" and DOCUMENTS sufficient

15  to identify all personnel involved in the creation of those commercials.

16  **REQUEST NO. 70:**

17      All studies, analyses, presentations or investigations, including internal

18  studies, analyses, presentations or investigations, REFERRING OR RELATING

19  TO actual or potential market competition between "MY SCENE" and "BRATZ."

20  **REQUEST NO. 71:**

21      All internal studies, analyses, presentations or investigations REFERRING

22  OR RELATING TO the overall market shares and market position of "MY

23  SCENE" and "Barbie", from 2001 to the present.

24  **REQUEST NO. 72:**

25      All studies, analyses, presentations or investigations of the target audience,

26  age groups, market share, or projections for "MY SCENE."

27

28

- 22 -      MGA'S FIRST SET OF REQUESTS FOR THE
         PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 395

1   **REQUEST NO. 73:**

2        All studies, analyses, presentations or investigations of the target audience,

3   age groups, market share, or projections for "BRATZ."

4   **REQUEST NO. 74:**

5        DOCUMENTS sufficient to determine total sales, revenue, royalties, costs of

6   goods sold and any other costs attributable to net profits REFERRING OR

7   RELATING TO "MY SCENE."

8   **REQUEST NO. 75:**

9        All DOCUMENTS REFERRING OR RELATING TO whether MATTEL is

10  funding, contributing to, or reimbursing the fees, costs or expenses incurred in

11  connection with any lawsuit involving MGA, to which MATTEL is not a party.

12  **REQUEST NO. 76:**

13       All DOCUMENTS REFERRING OR RELATING TO the quality or

14  reputation of "MY SCENE" including, without limitation, accolades or awards for

15  "MY SCENE."

16  **REQUEST NO. 77:**

17       All DOCUMENTS REFERRING OR RELATING TO any evaluation,

18  criticism or comparison of "MY SCENE," including in relation to "BRATZ" by

19  any third party.

20  **REQUEST NO. 78:**

21       All DOCUMENTS REFERRING OR RELATING TO any evaluation,

22  criticism or comparison of "BRATZ," including in relation to "MY SCENE."

23  **REQUEST NO. 79:**

24       All DOCUMENTS evidencing confusion between "BRATZ" and "MY

25  SCENE," including without limitation DOCUMENTS in which photographs of one

26  party's products have been used to depict another party's products or reference to

27  one party's products have been made in lieu of the other party's products.

28

- 23 -

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 396

**REQUEST NO. 80:**

DOCUMENTS, including but not limited to organizational charts, sufficient to identify (by name and job function) all MATTEL personnel with responsibility, at any time since January 2001, for marketing or MARKET RESEARCH, REFERRING OR RELATING TO "MY SCENE."

**REQUEST NO. 81:**

DOCUMENTS, including but not limited to organizational charts, sufficient to identify (by name and job function) all MATTEL personnel with responsibility for "MY SCENE" sales, promotions, marketing, packaging, advertising (including but not limited to television commercials), development or design, including without limitation internal departments, teams or organizations with responsibility for any specific retailer, licensee or others in the industry.

**REQUEST NO. 82:**

DOCUMENTS, including but not limited to organizational charts, sufficient to identify (by name and job function) all MATTEL personnel comprising the primary team that worked on the design and development of the original "MY SCENE" products as identified in paragraph 34 of the COMPLAINT.

**REQUEST NO. 83:**

DOCUMENTS, including but not limited to organizational charts, sufficient to identify (by name and job function) all MATTEL personnel comprising the primary team that worked on the design and development of the more recent "MY SCENE" products as identified in paragraphs 37 and 38 of the COMPLAINT.

**REQUEST NO. 84:**

DOCUMENTS, including but not limited to organizational charts, sufficient to identify (by name and job function) all current MATTEL personnel comprising the primary team currently working on the design and development of "MY SCENE" products.

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 397

1   **REQUEST NO. 85:**

2        DOCUMENTS, including but not limited to organizational charts, sufficient

3   to identify (by name and job function) all former MATTEL personnel who were

4   ever a member of the primary team that worked on the design and development of

5   "MY SCENE" products.

6   **REQUEST NO. 86:**

7        DOCUMENTS sufficient to describe fully MATTEL's document retention

8   policies (including its policies with respect to the retention or destruction of

9   physical documents, physical objects, samples or specimens, electronic mail and

10   other electronic documents) in effect at any time since January 2001.

11   **REQUEST NO. 87:**

12        DOCUMENTS sufficient to describe fully MATTEL's actions to preserve

13   DOCUMENTS in response to the COMPLAINT and the document retention letter

14   from Diana M. Torres, Esq. to Robert Normile, Esq. dated April 16, 2005.

15   **REQUEST NO. 88:**

16        DOCUMENTS sufficient to identify all DOCUMENTS REFERRING OR

17   RELATING TO "MY SCENE," "BRATZ," MGA or LARIAN that have been

18   destroyed or discarded since April 16, 2005.

19   **REQUEST NO. 89:**

20        All DOCUMENTS REFERRING OR RELATING TO

21   COMMUNICATIONS with or among third parties concerning this litigation, the

22   allegations in the COMPLAINT, Mattel's responses to or views on the allegations

23   in the COMPLAINT or any alleged improper conduct by MATTEL.

24   **REQUEST NO. 90:**

25        All DOCUMENTS REFERRING OR RELATING TO the commercial

26   success or recognition of "MY SCENE" including, without limitation, MARKET

27   RESEARCH.

28

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 388

**REQUEST NO. 91:**

     All DOCUMENTS REFERRING OR RELATING TO the commercial success or recognition of MGA's "BRATZ" including, without limitation, MARKET RESEARCH.

**REQUEST NO. 92:**

     All "New Toy Status Reports" for "MY SCENE."

**REQUEST NO. 93:**

     DOCUMENTS sufficient to indicate when a project number was first assigned to "MY SCENE."

**REQUEST NO. 94:**

     All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATION between MATTEL and any participant in any MARKET RESEARCH REFERRING OR RELATING TO "MY SCENE," MGA or "BRATZ."

**REQUEST NO. 95:**

     All DOCUMENTS REFERRING OR RELATING TO COMMUNICATIONS that pertain in any way, explicitly or implicitly, to "BRATZ" between LARIAN, BRYANT, Paula Garcia (a.k.a. Paula Treantafelles), Mercedeh Ward, Victoria O'Connor, or anyone with an email address in the form of _____@mgae.com, on the one hand, and any of the following, on the other hand:

    a)    Ivy Ross

    b)    Lily Martinez

    c)    Cassidy Park

    d)    Margaret Leahy (a.k.a. Margaret Hatch or Margaret Hatch Leahy)

    e)    Elise Cloonan

    f)    Anna Rhee

MGA'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT _24_ PAGE _399_

g)    any PERSON formerly or currently employed by MATTEL in marketing, sales, design, or development

h)    any PERSON who provided services to MATTEL on a contract or temporary basis in marketing, sales, design, or development

i)    any shareholders, directors or officers of MATTEL.

**REQUEST NO. 96:**

All DOCUMENTS REFERRING OR RELATING TO this lawsuit including, without limitation, COMMUNICATIONS REFERRING OR RELATING TO this lawsuit from any MATTEL executive, anyone that worked on "MY SCENE," or anyone at MATTEL with responsibility for communications with NPD Funworld, Children's Advertising Review Unit, or the Toy Industry Association.

**REQUEST NO. 97:**

All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATION between MATTEL and any person consulted regarding any fact or issue relating to this lawsuit, including, without limitation, any experts, investigators, or witnesses, excluding privileged COMMUNICATIONS with or on behalf of counsel for MATTEL.

**REQUEST NO. 98:**

All COMMUNICATIONS, and all DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS, between YOU on the one hand and any employee, officer, director, agent, representative, or counsel for any competitor of MGA REFERRING OR RELATING TO MGA, "BRATZ," or this lawsuit, or other litigation involving the parties hereto or their employees.

**REQUEST NO. 99:**

All COMMUNICATIONS, and all DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS, between YOU on the one hand and any employee, officer, director, agent, representative, or counsel for any licensee or

MGA'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 400

1  distributor of MGA REFERRING OR RELATING TO MGA, "BRATZ," or this

2  lawsuit, or other litigation involving the parties hereto or their employees.

3  **REQUEST NO. 100:**

4       All COMMUNICATIONS, and all DOCUMENTS REFERRING OR

5  RELATING TO any COMMUNICATIONS, between YOU on the one hand and

6  any employee, officer, director, agent, representative, or counsel for any competitor

7  of MGA REFERRING OR RELATING TO claims by MGA against MATTEL, or

8  claims by MATTEL against MGA or its employees.

9  **REQUEST NO. 101:**

10      All COMMUNICATIONS, and all DOCUMENTS REFERRING OR

11  RELATING TO any COMMUNICATIONS, between YOU on the one hand and

12  any employee, officer, director, agent, representative, or counsel for any licensee or

13  distributor of MGA REFERRING OR RELATING TO claims by MGA against

14  MATTEL, or claims by MATTEL against MGA or its employees.

15  **REQUEST NO. 102:**

16      All COMMUNICATIONS, and all DOCUMENTS REFERRING OR

17  RELATING TO any COMMUNICATIONS, between YOU on the one hand and

18  any employee, officer, director, agent, representative, or counsel for Nickelodeon

19  REFERRING OR RELATING TO MGA, "BRATZ," or LARIAN.

20  **REQUEST NO. 103:**

21      All COMMUNICATIONS, and all DOCUMENTS REFERRING OR

22  RELATING TO any COMMUNICATIONS, between YOU on the one hand and

23  any employee, officer, director, agent, representative, or counsel for Cartoon

24  Network REFERRING OR RELATING TO MGA, "BRATZ," or LARIAN.

25  **REQUEST NO. 104:**

26      All COMMUNICATIONS, and all DOCUMENTS REFERRING OR

27  RELATING TO any COMMUNICATIONS, between YOU on the one hand and

28  any employee, officer, director, agent, representative, or counsel for 4Kids

- 28 -                    MGA'S FIRST SET OF REQUESTS FOR THE
                         PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT 24 PAGE 401

1  Entertainment, Inc. REFERRING OR RELATING TO MGA, "BRATZ," or

2  LARIAN.

3  **REQUEST NO. 105:**

4      All DOCUMENTS received in response to any requests made by YOU at

5  any time relating to this litigation, other than those produced by BRYANT OR

6  MGA.

7  **REQUEST NO. 106:**

8      All DOCUMENTS tending to support or refute MATTEL's claims, if any,

9  that "BRATZ" copies, replicates, or in any way imitates the appearance of "MY

10  SCENE" or any other MATTEL product.

11  **REQUEST NO. 107:**

12      All COMMUNICATIONS between YOU and any retailer REFERRING OR

13  RELATING TO whether "BRATZ" copies, replicates, or in any way imitates the

14  appearance of "MY SCENE" or any other MATTEL product.

15  **REQUEST NO. 108:**

16      All COMMUNICATIONS between YOU and any retailer REFERRING OR

17  RELATING TO whether "MY SCENE" copies, replicates, or in any way imitates

18  the appearance of "BRATZ."

19  **REQUEST NO. 109:**

20      All COMMUNICATIONS between YOU and any customer REFERRING

21  OR RELATING TO whether "MY SCENE" copies, replicates, or in any way

22  imitates the appearance of "BRATZ."

23  **REQUEST NO. 110:**

24      All COMMUNICATIONS between YOU and any member of the press

25  REFERRING OR RELATING TO whether "MY SCENE" copies, replicates, or in

26  any way imitates the appearance of "BRATZ."

27

28

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT _21_ PAGE _402_

1   **REQUEST NO. 111:**

2       All COMMUNICATIONS between YOU and any supplier REFERRING OR

3   RELATING TO whether "MY SCENE" copies, replicates, or in any way imitates

4   the appearance of "BRATZ."

5   **REQUEST NO. 112:**

6       All COMMUNICATIONS between YOU and any other third party

7   REFERRING OR RELATING TO whether "MY SCENE" copies, replicates, or in

8   any way imitates the appearance of "BRATZ".

9   **REQUEST NO. 113:**

10      Documents sufficient to identify those persons, by name and title, for the

11  time period from October 1998 through the end of December 2000, associated with

12  the originating telephone numbers contained in the documents produced by YOU in

13  *Mattel v. Bryant,* now part of consolidated Case No. CV 04-09049 SGL (RNBx),

14  with Bates numbers M0001825-M0012534.

15  **REQUEST NO. 114:**

16      All DOCUMENTS tending to support or refute any of the denials, allegations

17  or statements in YOUR ANSWER, not produced in response to another Request.

18  **REQUEST NO. 115:**

19      All DOCUMENTS tending to support or refute YOUR affirmative defenses

20  to the COMPLAINT, not produced in response to another Request.

21

22

23      Dated: November 22, 2006    O'MELVENY & MYERS LLP

24

25

26                              James P. Jenal
                            Attorneys for MGA Entertainment, Inc.

27

28

MGA'S FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS

EXHIBIT _24_ PAGE _403_

1

## PROOF OF SERVICE

2          I, Karen A. Nakatsu, declare:

3          I am a resident of the State of California and over the age of eighteen years, and
not a party to the within action; my business address is 400 South Hope Street, Los Angeles,
4     California 90071-2899. On November 22, 2006, I served the within document(s):

5          **MGA'S FIRST SET OF REQUESTS FOR THE**
           **PRODUCTION OF DOCUMENTS AND THINGS**
6

7     ☒     by causing to be personally served the document(s) listed above to the person(s)
             listed below.
8
             John Quinn, Esq.
9            Michael T. Zeller, Esq.
             Quinn Emanuel Urquhart Oliver & Hedges, LLP
10           865 South Figueroa Street, 10th Floor
             Los Angeles, CA 90017
11

12    ☒     by placing the document(s) listed above in a sealed envelope with postage thereon
             fully prepaid, in the United States mail at Los Angeles, California addressed as set
13           forth below. I am readily familiar with the firm's practice of collecting and
             processing correspondence for mailing. Under that practice it would be deposited
14           with the U.S. Postal Service on that same day with postage thereon fully prepaid in
             the ordinary course of business. I am aware that on motion of the party served,
15           service is presumed invalid if the postal cancellation date or postage meter date is
             more than one day after date of deposit for mailing in affidavit.
16

17           Keith A. Jacoby, Esq.              Patricia Glaser, Esq.
             Littler Mendelson, P.C.            Christensen, Glaser, Fink, Jacobs,
18           2049 Century Park East,            Weil & Shapiro, LLP
             Fifth Floor                        10250 Constellation Blvd.,
19           Los Angeles, CA 90067             19th Floor
                                                Los Angeles, CA 90067
20

21          I declare under penalty of perjury under the laws of the United States that the
       above is true and correct.
22
            Executed on November 22, 2006, at Los Angeles, California.
23

24
                                    _Karen A. Nakatsu_
25                                      Karen A. Nakatsu

26

27

28

LA2:817525.1

EXHIBIT 24 PAGE 404

EXHIBIT 25

CONFORMED COPY

FILED

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

2007 APR 19  PM 11: 07

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY _____

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                         EASTERN DIVISION

10

11   CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                            JAMS Reference No.1100049530
12              Plaintiff,

13       v.                                 Consolidated with
                                            Case No. CV 04-09059
14   MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15              Defendant.                  **ORDER GRANTING IN PART AND
                                            DENYING IN PART MATTEL'S
16                                          MOTION FOR PROTECTIVE ORDER
                                            REGARDING "POLLY POCKET"
17   CONSOLIDATED WITH                      DOCUMENTS**
     MATTEL, INC. v. BRYANT and
18   MGA ENTERTAINMENT, INC. v. MATTEL,
     INC.
19

20

21                         I. INTRODUCTION

22        On March 30, 2007, Mattel, Inc. ("Mattel") submitted its Motion For Protective Order

23   Regarding "Polly Pocket" Documents.  Pursuant to Rule 26(c), Fed.R.Civ.P., Mattel seeks a

24   protective order to limit the scope of MGA Entertainment, Inc.'s ("MGA") and Carter Bryant's

25   ("Bryant") subpoenas for production of documents relating to Polly Pocket to only those

26   documents that relate to a single Polly Pocket commercial identified by MGA in an interrogatory

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                              1

EXHIBIT 25 PAGE 405

04|19|07

response.  On April 6, 2007, MGA submitted its opposition brief, and on April 11, 2007, Mattel submitted a reply brief.  The matter was heard via telephonic conference on April 19, 2007.  Having considered the motion papers and comments of counsel at the hearing, Mattel's motion for a protective order is granted in part and denied in part.[1]

## II. BACKGROUND

This consolidated action includes MGA's claims for unfair competition against Mattel.  Among other things, MGA alleges that Mattel has engaged in "serial copycatting" of MGA products, packaging and advertising, including Bratz dolls and other Bratz products, Bratz packaging and Bratz television commercials.

On March 7, 2007 and March 12, 2007, MGA and Bryant issued subpoenas to three of Mattel's advertising agencies:  Young & Rubicam Brands, Peterson Milla Hooks, Inc., and Ogilvy & Mather Worldwide.  The subpoenas seek, among other things, documents relating to Mattel's products, including the Polly Pocket line of products.  See Request Nos. 3, 4, 7, 12, 13, and 14. The subpoenas define Polly Pocket as "each image, character, logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MATTEL, or others under license by MATTEL, as part of a line of goods or merchandise commonly known as, or sold and marketed under the POLLY POCKET trademark or trade dress." The requests at issue are set forth below:

> Request No. 3:  All DOCUMENTS REFERRING OR RELATING TO any focus group for "MY SCENE," "POLLY POCKET," or "ACCELERACERS" products and which also REFER OR RELATE TO "BRATZ," "ALIEN RACERS," or MGA.

> Request No. 4:  All DOCUMENTS REFERRING OR RELATING TO any participant comments from any focus group for "MY SCENE," "POLLY

---

[1] Pursuant to the Order for Appointment Of A Discovery Master, dated December 6, 2006, the undersigned is authorized to resolve disputes regarding third party subpoenas. See Order at 3-4, 6.

1  POCKET," or "ACCELERACERS" products and which also REFER OR

2  RELATE TO "BRATZ," "ALIEN RACERS," or MGA.

3  <u>Request No. 7</u>:  All DOCUMENTS REFERRING OR RELATING TO any

4  MARKET RESEARCH REFERRING OR RELATING TO "MY SCENE,"

5  "POLLY POCKET," or "ACCELERACERS" or MATTEL, and which also

6  REFER OR RELATE TO "BRATZ," "ALIEN RACERS," or MGA.

7  <u>Request No. 12</u>:  All DOCUMENTS REFERRING OR RELATING TO proposed

8  or actual advertisements for "MY SCENE," "POLLY POCKET," OR

9  "ACCELERACERS" products and which also REFER OR RELATE TO

   "BRATZ," "ALIEN RACERS," or MGA.

10 <u>Request No. 13</u>:  All DOCUMENTS REFERRING OR RELATING TO

11 directives, suggestions, or instructions from MATTEL to create advertisements

12 for "MY SCENE," "POLLY POCKET," OR "ACCELERACERS" products using

13 elements that are similar to or the same as elements used in advertisements for

14 "BRATZ," "ALIEN RACERS," or MGA products.

15 <u>Request No. 14</u>:  Copies of all advertisements for "BRATZ," "ALIEN RACERS,"

16 or MGA products that YOU consulted or reviewed to create advertisements for

17 "MY SCENE," "POLLY POCKET," or "ACCELERACERS" products.

18 (collectively referred to hereinafter as the "Polly Pocket Requests").  <u>See</u> Decl. of B. Dylan

19 Proctor in Support of Mattel's Motion for Protective Order, Exs. 1-3.

20       Mattel served objections to the subpoenas and requested a meet and confer with MGA and

21 Bryant regarding the scope of the Polly Pocket Requests.  The parties met and conferred on

22 March 27, 2007.  MGA asserted that the Polly Pocket Requests sought information relevant to

23 MGA's claims that Mattel has serially copied and imitated MGA's commercials.  MGA pointed

24 out that it is currently aware of at least one Polly Pocket commercial that copied elements from a

25 MGA Bratz commercial.  More specifically, in response to a contention interrogatory, MGA

26 identified twenty-two separate instances of alleged serial copycatting and imitating, one of which

27 was that "Mattel filmed a 'Polly Pocket' commercial in the same mall and featuring the same

28

1  escalator as appeared in a previous 'Bratz' commercial." See MGA's Second Supplemental

2  Responses to Mattel's First Set of Interrogatories re Claims of Unfair Competition, Response to

3  Interrogatory No. 6.   MGA asserted that it was entitled to discovery to determine whether

4  Mattel's advertising agencies have documents evidencing plans, strategies or intentions to

5  copycat or imitate MGA commercials for this or any other Polly Pocket commercials in the past

6  or future.  Further, MGA asserted that the Polly Pocket Requests sought only those documents

7  that specifically related to MGA and its products.  In contrast, Mattel asserted that the Polly

8  Pocket Requests were overbroad, seeking information far beyond the Polly Pocket commercial

9  identified in MGA's interrogatory response.  The parties later exchanged meet and confer letters,

   but were unable to resolve their dispute.

10       In this motion, Mattel contends that it is entitled to a protective order because the Polly

11  Pocket Requests are overbroad, seeking documents that have no connection or relevance to the

12  claims or defenses in the case, other than the single television commercial identified in MGA's

13  interrogatory response.  Mattel also contends that MGA and Bryant should not be permitted to

14  engage in a fishing expedition for potential claims involving Polly Pocket products.  Furthermore,

15  Mattel contends that its Polly Pocket line of dolls is in direct competition with MGA's doll

16  products, and that MGA and Bryant are not entitled to issue sweeping subpoenas for the improper

17  purpose of discovering Mattel's confidential focus group and market research documents relating

18  to competing products and other matters that are not even alleged to be at issue.  Accordingly,

19  Mattel seeks an order limiting the scope of the Polly Pocket Requests to only those Polly Pocket

20  documents that relate to the television commercial MGA claims that Mattel copied.

21       MGA and Bryant contend that Mattel has not demonstrated the requisite "good cause" for

22  a protective order.  They contend that there has been no showing that a protective order is

23  necessary to avoid annoyance, embarrassment, oppression or undue burden or expense.  Further,

24  they contend that the Stipulated Protective Order is sufficient to address Mattel's confidentiality

25  concerns.  MGA and Bryant also contend that the Polly Pocket Requests are narrowly tailored to

26  seek documents relevant to the claims that Mattel has serially imitated and copycatted MGA's

27  advertising for Bratz and other products.  Further, they contend that the Polly Pocket Requests

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)                                                                    4


EXHIBIT 25 PAGE 408

target documents that specifically relate to MGA or its products.  Lastly, MGA and Bryant object to limiting discovery to the one Polly Pocket commercial referenced in MGA's interrogatory response.  They contend that such a limitation would prevent them from obtaining documents "that reveal Mattel's plans to copy or imitate MGA commercials for other 'Polly Pocket' commercials and related efforts by Mattel's ad agencies to effectuate or evaluate these plans, simply because the plans are non-public and about which MGA and Bryant could not possibly have any actual knowledge."  Opposition at p.7.

### III. DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."  Fed.R.Civ.P. 26(b)(1).  Fishing expeditions to discover new claims, however, are not permitted.  See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000) (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for the phrase "subject matter involved in the pending action," were intended to target discovery that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to develop new claims or defenses.).  Furthermore, Rule 26(c), Fed.R.Civ.P., provides, in pertinent part, that upon motion and for good cause shown, "the court in which the action is pending may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including that certain matters not be inquired into, that the scope of the disclosure or discovery be limited to certain matters, or that a trade secret or other confidential research, development or commercial information not be revealed or be revealed only in a designated way." Fed.R.Civ.P. 26(c).

Polly Pocket is not mentioned in either MGA's or Bryant's complaint or any of the other pleadings filed in this consolidated action.  Rather, MGA's complaint alleges that Mattel's

1   advertising and marketing schemes for two of its products – "My Scene" and "AcceleRacers" –

2   have "serially imitated" MGA's advertising.  MGA's complaint does not even reference the Polly

3   Pocket line of dolls or other Polly Pocket products.

4         The only proffered justification for the Polly Pocket Requests is an interrogatory response

5   in which MGA claims that one of Mattel's Polly Pocket commercials was allegedly filmed in the

6   same mall using the same escalator as an MGA Bratz commercial. [2]  The bulk of the Polly Pocket

7   Requests (Nos. 3, 4, 7, 12, 14), however, are far broader than the commercial identified by MGA.

8   The definition for Polly Pocket includes not just commercials, but  "each image, character, logo,

9   doll, toy, accessory, product, and packaging that is or has ever been manufactured, marketed or

10  sold by Mattel as part of a line of goods or merchandise known as, or sold and marketed under the

11  Polly Pocket trademark or trade dress.  Furthermore, MGA and Bryant seek all Polly Pocket focus

12  group documents, including participant comments which relate to Bratz, MGA or Alien Racers.

13  They seek all "market research" referring or relating to Polly Pocket and which also relate to

14  Bratz, MGA, or Alien Racers, where "market research" is defined as "any type of research, study,

15  survey or analysis of consumers or potential consumers of a product or potential product

16  including, without limitation, focus groups, consumer surveys, market analyses, behavioral

17  analyses and consumer research."  They also seek all documents relating to proposed or actual

18  advertisements for Polly Pocket dolls which also relate to Bratz, MGA or Alien Racers.  MGA

19  and Bryant also seek copies of all advertisements for Bratz, Alien Racers, or MGA products that

20  were consulted or reviewed to create any and all advertisements for Polly Pocket products.  These

21  requests are clearly overbroad, extending far beyond the single Polly Pocket commercial that

22  MGA has contended is actionable.  The Federal Rules of Civil Procedure do not permit MGA and

23

24  _____

25  [2]  Like MGA's complaint, MGA's response to Mattel's contention interrogatory regarding the alleged serial imitating and copycatting focus primarily on Mattel's "My Scene" and "Acceleracers" products.

26  <u>See</u> MGA's Second Supplemental Responses to Mattel's First Set of Interrogatories re Claims of Unfair Competition

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

 EXHIBIT 25 PAGE 410

6

1 | Bryant to use broad discovery requests, untethered to a claim or defense, to fish for new claims.

2 | Rivera v. NIBCO, Inc., supra. Because Request Nos. 3, 4, 7, 12, and 14 extend far beyond the

3 | permissible scope of discovery under Rule 26, Fed.R.Civ.P., there is good cause to issue the

4 | requested protective order limiting their scope to the Polly Pocket commercial identified in

5 | MGA's interrogatory response.

6 |      In contrast, however, Request No. 13 is reasonably tailored to documents relevant to

7 | MGA's unfair competition claim. Evidence of directives, suggestions, or instructions from Mattel

8 | to its advertising agencies to create advertisements for Polly Pocket using elements that are

9 | similar to or the same as elements used in advertisements for "BRATZ," "ALIEN RACERS," or

10 | MGA products could establish that Mattel intentionally used the same mall and escalator to

11 | produce the Polly Pocket commercial identified in MGA's interrogatory response. Therefore,

12 | Mattel's motion is denied with respect to Request No. 13.

13 | <div align="center">IV. CONCLUSION</div>

14 |      For the reasons set forth above, Mattel's motion for a protective order is granted in part

15 | and denied in part. Request Numbers 3, 4, 7, 12, and 14 of MGA's and Bryant's subpoenas to

16 | Young & Rubicam Brands, Peterson Milla Hooks, Inc., and Ogilvy & Mather Worldwide relating

17 | to Polly Pocket are hereby limited in scope to Polly Pocket documents relating to the single Polly

18 | Pocket television commercial identified in MGA's interrogatory response. Mattel's motion is

19 | denied as to Request No. 13.

20 |      Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

21 | Master, Mattel shall file this Order with the Clerk of Court forthwith.

22 | Dated: April 19, 2007

HON. EDWARD A. INFANTE (Ret.)

Discovery Master

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on April 19, 2007,

I served the attached ORDER GRANTING IN PART AND DENYING IN PART

MATTEL'S MOTION FOR PROTECTIVE ORDER REGARDING "POLLY POCKET"

DOCUMENTS" in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrismill.com |

I declare under penalty of perjury under the laws of the Untied States of America that
the above is true and correct.

Executed on April 19, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT 25 PAGE 412

**EXHIBIT 26**

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., A DELAWARE )
CORPORATION, )
 )
PLAINTIFF, )
 )
V. )        NO. CV 04-9059 DDP (AJWX)
 )
CARTER BRYANT, AN )
INDIVIDUAL, AND DOES 1 )
THROUGH 10, INCLUSIVE, )
 )
DEFENDANTS. )

# C O N F I D E N T I A L

## ATTORNEYS' EYES ONLY

### (PAGES 84 - 124, 160 - 165, 169 - 172, 181 – 202, 217 - 252)

# DEPOSITION OF VICTORIA O'CONNOR

# DECEMBER 6, 2004



COURT REPORTERS
700 S. Flower Street
Suite 1100
Los Angeles, California 90017
Office: (213) 955-0070
Fax: (213) 955-0077

REPORTED BY:
PAULA A. PYBURN
CSR. NO. 7304
JOB NO. 04AE373-PP

EXHIBIT 26 PAGE 413

1          UNITED STATES DISTRICT COURT
2          CENTRAL DISTRICT OF CALIFORNIA
3

4

MATTEL, INC., A DELAWARE      )
5   CORPORATION,               )
                               )
6          PLAINTIFF,          )
                               )
7      VS.                     )   NO. CV 04-9059 DDP
                               )        (AJWX)
8   CARTER BRYANT, AN          )
    INDIVIDUAL, AND DOES 1     )
9   THROUGH 10, INCLUSIVE,     )
                               )
10         DEFENDANTS.         )
    _____)
11                             )
    AND RELATED                )
12  CROSS-ACTION.              )
    _____)

13

14          C O N F I D E N T I A L
15      (PURSUANT TO STIPULATED PROTECTIVE ORDER,
    THIS TRANSCRIPT HAS BEEN DESIGNATED CONFIDENTIAL)

16

17   (PAGES 1-83, PAGES 125-159, PAGES 166-168, PAGES
              173-180 AND PAGES 203-216)

18

19  DEPOSITION OF VICTORIA O'CONNOR, TAKEN ON BEHALF OF
20  THE PLAINTIFF AND CROSS-DEFENDANT AT 865 SOUTH
21  FIGUEROA STREET, 10TH FLOOR, LOS ANGELES,
22  CALIFORNIA, COMMENCING AT 9:46 A.M., MONDAY,
23  DECEMBER 6, 2004, BEFORE PAULA A. PYBURN, CSR 7304,
24  RPR.
25

```
 1    APPEARANCES OF COUNSEL:
 2
 3    FOR THE PLAINTIFF AND CROSS-DEFENDANT:
 4         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
           BY:   JOHN B. QUINN, ESQ.
 5                         AND
               MICHAEL T. ZELLER, ESQ.
 6                         AND
               TANIA KREBS, ESQ.
 7         865 SOUTH FIGUEROA STREET, 10TH FLOOR
           LOS ANGELES, CALIFORNIA 90017-2543
 8         (213) 443-3000
 9
10    FOR THE DEFENDANTS AND CROSS-COMPLAINANT:
11         LITTLER MENDELSON
           BY:   KEITH A. JACOBY, ESQ.
12         2049 CENTURY PARK EAST, 5TH FLOOR
           LOS ANGELES, CALIFORNIA 90067-3107
13         (310) 553-0308
14
15    FOR DEFENDANT IN INTERVENTION, MGA ENTERTAINMENT:
16         O'MELVENY & MEYERS LLP
           BY:   DIANA M. TORRES, ESQ.
17         400 SOUTH HOPE STREET
           LOS ANGELES, CALIFORNIA 90071-2899
18         (213) 430-6000
19
20    ALSO PRESENT:
21         RICHARD DANIELS, MGA SENIOR COUNSEL
           MICHAEL MOORE, MATTEL SENIOR COUNSEL
22         SHERRI MULFORD, VIDEOGRAPHER
           JILL E. THOMAS, MATTEL ASSISTANT GENERAL COUNSEL
23
24
25              EXHIBIT 26 PAGE 415
```

3

```
 1                         I N D E X
 2    DEPONENT:              EXAMINED BY:               PAGE:
 3    VICTORIA O'CONNOR      MR. QUINN                    7
 4                          MR. JACOBY                   203
 5
 6
 7
      EXHIBITS FOR IDENTIFICATION:
 8
                              (NONE)
 9
10
11
      QUESTIONS UNANSWERED BY DEPONENT:
12
                              (NONE)
13
14
15
16
17
18
19
20
21
22
23
24
25              EXHIBIT 26 PAGE 416
```

4

```
 1       LOS ANGELES, CALIFORNIA; MONDAY, DECEMBER 6, 2004

 2                        9:46 A.M.

 3

 4            THE VIDEO TECHNICIAN:  GOOD MORNING.  WE

 5       ARE ON THE RECORD AT 9:46 A.M., TODAY'S DATE IS          09:46AM

 6       MONDAY, DECEMBER 6TH, 2004, MY NAME IS SHERRI

 7       MULFORD, I'M A VIDEO TECHNICIAN EMPLOYED BY JTV

 8       LITIGATION SERVICES, LOCATED IN LOS ANGELES,

 9       CALIFORNIA.  WE ARE TAPING THESE PROCEEDINGS AT 865

10       SOUTH FIGUEROA STREET, 10TH FLOOR, LOS ANGELES,         09:47AM

11       CALIFORNIA.  THIS IS TAPE 1 FOR THE VIDEOTAPED

12       DEPOSITION OF VICTORIA O'CONNOR IN THE ACTION

13       ENTITLED "CARTER BRYANT VS. MATTEL, INC." ON BEHALF

14       OF THE DEFENDANT.  THE CASE NUMBER IS CV 04-9049 NM

15       (RNBX).                                                 09:47AM

16            MAY I PLEASE HAVE INTRODUCTIONS FOR THE

17       RECORD.

18            MR. QUINN:  MY NAME IS JOHN QUINN AND I

19       REPRESENT THE PLAINTIFF IN THIS CASE, MATTEL.  WITH

20       ME IS MY PARTNER, MIKE ZELLER, AND COLLEAGUE, TANIA    09:47AM

21       KREBS.

22            MR. JACOBY:  KEITH JACOBY FOR CARTER

23       BRYANT.

24            MS. TORRES:  DIANA TORRES FOR DEFENDANT

25       IN -- IN INTERVENTION MGA ENTERTAINMENT, INC., AND     09:47AM
```

5

EXHIBIT 26 PAGE 417

1   NAME OF CARTER BRYANT?

2       A.   YES.

3       Q.   AND DID YOU HAVE ANY DEALINGS WITH A

4   PRODUCT KNOWN AS BRATZ?

5       A.   YES.                                        09:59AM

6       Q.   WERE YOU EVER ASKED TO DO ANYTHING RELATING

7   TO CARTER BRYANT OR HIS RELATIONSHIP WITH MGA THAT

8   MADE YOU KIND OF UNCOMFORTABLE?

9           MR. JACOBY:   OBJECTION.   VAGUE.

10          MS. TORRES:   OBJECTION.   VAGUE, AND I'M      09:59AM

11  GOING TO DESIGNATE FROM HERE ON IN AS SUBJECT TO THE

12  CONFIDENTIALITY AND PROTECTIVE ORDER.

13          MR. QUINN:   THAT'S FINE, THAT'S THE PRO- --

14  PROTECTIVE ORDER I WAS TELLING YOU ABOUT.

15          THE WITNESS:   OKAY.                          09:59AM

16  BY MR. QUINN:

17      Q.   SO THIS CAN'T BE SHARED EXCEPT WITH A

18  CERTAIN LIMITED CLASS OF PEOPLE INVOLVED IN THIS

19  CASE, AND IF IT GETS FILED WITH THE COURT -- I THINK

20  IT HAS TO BE FILED UNDER SEAL; IS THAT RIGHT?         09:59AM

21          MR. ZELLER:   THAT'S CORRECT.

22  BY MR. QUINN:

23      Q.   SO IT'S BASICALLY FOR -- WHAT YOU'RE GOING

24  TO SAY NOW IS JUST --

25      A.   BUT IT STILL CAN BE ANSWERED?               09:59AM

17

EXHIBIT 26 PAGE 418

```
 1      Q.    YES.  YOU STILL --

 2      A.    OKAY.

 3      Q.    -- HAVE TO ANSWER THE QUESTION.

 4      A.    CAN YOU BE MORE SPECIFIC?

 5      Q.    NO, NOT REALLY.  WAS THERE EVER ANYTHING       09:59AM

 6  THAT YOU WERE ASKED TO DO THAT YOU -- MADE YOU FEEL

 7  KIND OF UNCOMFORTABLE?

 8      A.    YES.

 9            MS. TORRES:  OBJECTION.  VAGUE.

10            MR. JACOBY:  SAME OBJECTION.                   09:59AM

11  BY MR. QUINN:

12      Q.    AND WHAT WAS THAT?

13      A.    WHEN THE ORIGINAL CONTRACT WAS EXECUTED BY

14  CARTER BRYANT, IT WAS SENT TO ME VIA FAX, AND ON THE

15  TOP OF THE FAX LISTED THE PHONE NUMBER FROM WHERE IT     10:00AM

16  WAS FAXED, WHICH SAID "BARBIE COLLECTIBLES," AND AT

17  ONE POINT MY BOSS, ISAAC LARIAN, ASKED ME TO WHITE

18  THAT OUT AND SEND IT TO A LAWYER, PATTY GLASER.

19            MS. TORRES:  NOW I'M GOING TO INSTRUCT THE

20  WITNESS NOT TO ANSWER WITH RESPECT TO ANY               10:00AM

21  COMMUNICATIONS SHE MAY HAVE HAD WITH COUNSEL FOR

22  MGA.

23            MR. QUINN:  WELL, WE'LL GET TO THAT AS TO

24  WHETHER YOU CAN ACTUALLY MAKE THAT INSTRUCTION, BUT,

25  I MEAN, AT THIS POINT --                                 10:00AM
```

18

EXHIBIT _26_ PAGE _419_

1    Q.   DID YOU DO WHAT HE ASKED, DID YOU -- DID

2   YOU WHITE OUT THE LINE THAT SAID "BARBIE

3   COLLECTIBLES"?

4    A.   YES.

5    Q.   DID YOU HAVE ANY DISCUSSION WITH MR. LARIAN        10:01AM

6   AS TO WHY HE WANTED YOU TO WHITE THAT LINE OUT?

7    A.   I DON'T RECALL.

8    Q.   ARE YOU SAYING THAT YOU DON'T RECALL THE

9   SUBSTANCE OF THE DISCUSSION, OR THAT YOU DON'T

10   RECALL WHETHER YOU DISCUSSED THAT SUBJECT AT ALL?       10:01AM

11    A.   I -- I DON'T RECALL THE SUBSTANCE.

12    Q.   SO YOU DO KNOW YOU DISCUSSED THAT

13   INSTRUCTION WITH MR. LARIAN; YOU JUST DON'T RECALL

14   THE SUBSTANCE; IS THAT TRUE?

15    A.   YES.                                              10:01AM

16    Q.   DID YOU DISCUSS THAT WITH MR. LARIAN ONCE

17   OR MORE THAN ONCE, THAT INSTRUCTION TO WHITE OUT THE

18   "BARBIE COLLECTIBLES" HEADING ON THE DOCUMENT?

19    A.   I DON'T RECALL.

20    Q.   DID YOU EVER DISCUSS THAT SUBJECT WITH          10:01AM

21   ANYBODY ELSE AT MGA?

22         MS. TORRES:   I'M GOING TO INSTRUCT THE

23   WITNESS NOT TO ANSWER TO THE EXTENT IT INVOLVES

24   CONVERSATIONS WITH COUNSEL.

25         THE WITNESS:   I DON'T RECALL.                   10:01AM

19

EXHIBIT 26 PAGE 420

```
1  STATE OF CALIFORNIA      )
                            )   SS.
2  COUNTY OF LOS ANGELES    )

3       I, PAULA A. PYBURN, CERTIFIED SHORTHAND

4  REPORTER, CERTIFICATE NUMBER 7304, RPR, FOR THE

5  STATE OF CALIFORNIA, HEREBY CERTIFY:

6            THE FOREGOING PROCEEDINGS WERE TAKEN BEFORE

7  ME AT THE TIME AND PLACE THEREIN SET FORTH, AT WHICH

8  TIME THE DEPONENT WAS PLACED UNDER OATH BY ME;

9            THE TESTIMONY OF THE DEPONENT AND ALL

10 OBJECTIONS MADE AT THE TIME OF THE EXAMINATION WERE

11 RECORDED STENOGRAPHICALLY BY ME AND WERE THEREAFTER

12 TRANSCRIBED;

13           THE FOREGOING TRANSCRIPT IS A TRUE AND

14 CORRECT TRANSCRIPT OF MY SHORTHAND NOTES SO TAKEN;

15           I FURTHER CERTIFY THAT I AM NEITHER COUNSEL

16 FOR NOR RELATED TO ANY PARTY TO SAID ACTION NOR IN

17 ANY WAY INTERESTED IN THE OUTCOME THEREOF.

18           IN WITNESS WHEREOF, I HAVE HEREUNTO

19 SUBSCRIBED MY NAME THIS ____ DAY OF_____,

20 2006.

21

22

23

24

25
```

EXHIBIT 26 PAGE 421

## DEPOSITION CORRECTION SHEET

CASE NAME: _MATTEL_ v. _CARTER BRYANT_

DEPOSITION OF: _VICTORIA O'CONNOR_

DEPOSITION DATE: _12/6/04_

I declare under **penalty of perjury** that I have read the foregoing _143_ pages of my deposition testimony, taken on _12/6/04_ at _865 S. FIGUEROA ST. 10th FL., LOS ANGELES_, California, and that the same is a **true record and testimony** given by me at the time and place hereinabove set forth, with the following exceptions:

**PAGE #** : **LINE #**   **CORRECTION/CHANGES TO BE MADE**

_73_ : _5_   FROM _YOU_

_175_   TO _I_

: _11_   FROM _CAMI_

TO _KAMI_

: FROM

TO

: FROM

TO

: FROM

TO

: FROM

TO

: FROM

TO

: FROM

TO

_Victoria O'Connor_
**SIGNATURE OF DEPONENT**

_1/7/05_
**DATE**

EXHIBIT _26_ PAGE _422_

# DEPOSITION CORRECTION SHEET

CASE NAME: _MATTEL_ v. _CARTER BRYANT_

DEPOSITION OF: _VICTORIA O'CONNOR_

DEPOSITION DATE: _12/6/04_

I declare under **penalty of perjury** that I have read the foregoing _109_ pages of my deposition testimony, taken on _12/6/04_ at _865 S. FIGUEROA ST. 10th FL. LOS ANGELES_, California, and that the same is a **true record and testimony** given by me at the time and place hereinabove set forth, with the following exceptions:

**PAGE # : LINE #    CORRECTION/CHANGES TO BE MADE**

162 : 4    FROM _FRANKIE_
          TO _FRANKi_

172 : 13   FROM _CAMi_
          TO _KAMi_

173 : 13   FROM _CAMi_
          TO _KAMi_

193 : 14   FROM _CAMi_
          TO _KAMi_

220 : 25   FROM _IR_
          TO _____

243 : 17   FROM _GEM_
     21    TO _JEM_

    :    FROM _____
         TO _____

    :    FROM _____
         TO _____

_Victoria O'Connor_                _1/7/05_
**SIGNATURE OF DEPONENT**           **DATE**

EXHIBIT 26 PAGE 483

**EXHIBIT 27**

Case 2:04-cv-09049-SGL-RNB    Document 1104    Filed 10/31/2007    Page 1 of 4

# PRIORITY SEND

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
### CIVIL MINUTES -- GENERAL

| | |
|---|---|
| Case No.   CV 04-09049 SGL(RNBx) | Date: October 31, 2007 |
| Title:    CARTER BRYANT -v- MATTEL, INC. | |
| AND CONSOLIDATED ACTIONS | |

==================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

| Jim Holmes | Theresa Lanza |
|---|---|
| Courtroom Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR CARTER
BRYANT:

ATTORNEYS PRESENT FOR MATTEL:

Christa Martine Anderson
Matthew M. Werdegar

John Quinn
Jon D. Corey
Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:

ATTORNEY PRESENT FOR CARLOS
GUSTAVO MACHADO GOMEZ:

Thomas J. Nolan
Carl A. Roth

Alexander H. Cote

PROCEEDINGS:    **ORDER REGARDING STATUS CONFERENCE**

The Court held a status conference to consider the current schedule set for Phase 1 of the consolidated cases as well as the issue of the selection of a settlement officer for both Phase 1 and Phase 2 of the consolidated cases.

For reasons discussed on the record, the Court enters a two-week STAY in these actions, beginning November 1, 2007, and continuing through November 14, 2007. During that time, the parties shall serve no discovery requests (including subpoenas) on parties or third parties. The obligation to respond to any outstanding discovery requests is likewise suspended for that time frame. No depositions shall be conducted during this time. The matters to be heard before Judge Infante, the discovery master herein, are to be rescheduled to a date determined by Judge Infante,

MINUTES FORM 90
CIVIL -- GEN

1

Initials of Deputy Clerk __jh_____
Time: 00/20

EXHIBIT 27 PAGE 424

provided, however, that such date is no earlier than November 26, 2007, and that no opposition or reply papers may be required to be filed during the pendency of the stay.

The Court CONTINUES the November 19, 2007, hearing on the Motion For Leave to Serve A Supplemental Interrogatory to December 3, 2007, at 10:00 a.m.

The current schedule regarding Phase 1 of the trial in these consolidated actions is modified as follows:

| | |
|---|---|
| Fact discovery cutoff: | 01/28/08 |
| Initial Expert Reports: | 02/11/08 |
| Rebuttal Expert Reports: | 03/17/08 |
| Last date for settlement conference: | VACATED (see below for Court's directive regarding mandatory settlement procedures) |
| Expert discovery cutoff: | 03/31/08 |
| Dispositive Motions hearing cutoff: | 03/31/08 @ 10:00 a.m. |
| Pretrial conference order and associated trial documents including proposed jury instructions: | 04/21/08 |
| Filing of Motions in Limine: | 05/05/08 |
| Pretrial conference: | 05/05/08 @ 11:00 a.m. |
| Hearing on Motions in Limine and Jury Instructions: | 05/19/08 @ 11:00 a.m. |
| Trial: | 05/27/08 @ 9:00 a.m. |

The schedule for Phase 2, previously set by the Court by Order filed February 22, 2007, in the case captioned MGA Entertainment, Inc. v. Mattel, Inc., et al., CV 05-02727, is VACATED. The Court will consider the scheduling of Phase 2 at a later date. However, the Court DENIES MGA's request to delay or otherwise bifurcate discovery regarding Phase 2 issues.

At the status conference, the parties acknowledged on the record their mutual agreement to the selection of Ambassador Pierre-Richard Prosper as the settlement officer for these

EXHIBIT _27_ PAGE _425_

consolidated cases, and the Court hereby APPOINTS him in that capacity.  Counsel are directed to contact Ambassador Prosper to schedule a settlement conference on or before December 1, 2007. The settlement conference is to be directed towards resolution of both phases of this litigation. Counsel are ORDERED to carefully and diligently follow Ambassador Prosper's directions concerning preparation for and conduct at any settlement conferences.  The parties will be jointly responsible for paying the Ambassador's reasonable and customary rate for services rendered.  A failure to comply with this order, or a failure to provide reasonable compensation to the Settlement Officer upon completion of the mediation, may result in the imposition of appropriate sanctions. Ambassador Prosper is directed to provide a status report to the Court following the conclusion of the settlement efforts.

      IT IS SO ORDERED.

c:    Judge Infante
      Ambassador Prosper

EXHIBIT 27 PAGE 426

**EXHIBIT 28**

ORIGINAL

LODGED

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemnauel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8  [Additional counsel listed on following page]

9

*Send*

FILED

2006 DEC -6  PM 4: 39

10             UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12  CARTER BRYANT, an individual,        )  Case No. CV 04-09049 SGL (RNBx)
                                          )
13                   Plaintiff,           )  Consolidated with
                                          )  Case No. CV 04-09059
14         v.                             )  Case No. CV 05-02727
                                          )
15  MATTEL, INC., a Delaware             )  STIPULATION FOR APPOINTMENT
    corporation,                          )  OF A DISCOVERY MASTER; AND
16                                        )
                     Defendant.           )  [PROPOSED] ORDER
17                                        )
                                          )  Discovery Cutoff Date:  Not Set
18                                        )  Trial Date:  Not Set

19

20

21

22

23

24

25

26

27

28

EXHIBIT 28 PAGE 427

1 | LITTLER MENDELSON
  Robert F. Millman (Bar No. 062152)
2 |   Douglas A. Wickham (Bar No. 127268)
  Keith A. Jacoby (Bar No. 150233)
3 | 2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107
4 | Telephone: (310) 553-0308
Facsimile: (310) 553-5583
5 |
6 | Attorneys for Carter Bryant

7 | O'MELVENY & MYERS LLP
  Diana M. Torres (Bar No. 162284)
8 | 400 S. Hope Street
Los Angeles, California 90017
9 | Telephone: (213) 430-6000
Facsimile: (213) 430-6407

10 | O'MELVENY & MYERS LLP
  Dale Cendali
11 | Times Square Tower
7 Times Square
12 | New York, NY 10036

13 | CHRISTENSEN, GLASER, FINK, JACOBS WEIL & SHAPIRO, LLP
  Patricia Glaser (Bar No. 55668)
14 | 10250 Constellation Boulevard - 19th Floor
Los Angeles, CA 90067
15 | Telephone: (310) 553-3000
Facsimile: (310) 556-2920
16 |
17 | Attorneys for MGA Entertainment, Inc.

18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

EXHIBIT 28 PAGE 428

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

1    WHEREAS, the parties are in agreement that a discovery master should be
2    appointed in this matter to resolve any discovery disputes and to minimize the
3    burden on the Court; and
4    WHEREAS, the parties have agreed upon a nominee, Hon. Edward A. Infante
5    (Ret.), and he has agreed to serve as a discovery master in this matter;
6    NOW, THEREFORE, to facilitate the fair and efficient completion of pre-
7    trial discovery, the parties Mattel, Inc. and Carter Bryant and MGA Entertainment,
8    Inc., by and through their respective counsel of record, hereby stipulate and agree as
9    follows:
10       1.    The Discovery Master shall be appointed to assure and provide cost-
11   effective discovery and to minimize the burden of discovery disputes upon the
12   Court.  Any and all discovery motions and other discovery disputes in the above
13   captioned action shall be decided by a master ("Discovery Master") pursuant to
14   Federal Rule of Civil Procedure 53.  Any motions currently pending before
15   Magistrate Judge Block shall be transferred to the Discovery Master.  The moving
16   party shall provide to the Discovery Master all papers associated with each pending
17   motion.
18       2.    The Discovery Master shall be Hon. Edward A. Infante (Ret.).  His
19   business address is: Two Embarcadero Center, Suite 1500, San Francisco, CA
20   94111.
21       3.    Judge Infante shall serve as the Discovery Master until all issues herein
22   have been finally disposed of or determined, or until he shall withdraw in
23   accordance with applicable law.  If at any time he becomes unable to serve as the
24   Discovery Master, the parties shall confer to present an alternative agreed-upon
25   designee to the Court.  In the event that the parties cannot agree to an alternate
26   designee, then the Court shall appoint a Discovery Master.
27       4.    The Discovery Master shall have the authority to set the date, time, and
28   place for all hearings determined by the Discovery Master to be necessary; to

EXHIBIT 28  PAGE 420
-3-

1  preside over hearings (whether telephonic or in-person); to take evidence in
2  connection with discovery disputes; to issue orders resolving discovery motions
3  submitted to the Discovery Master; to conduct telephonic conferences to resolve
4  discovery disputes arising during depositions; to issue orders awarding non-
5  contempt sanctions, including, without limitation, the award of attorney's fees, as
6  provided by Rules 37 and 45; and to prepare, file and serve other orders, reports and
7  recommendations, as appropriate.

8      5.      All discovery disputes shall be resolved by motion (except those arising
9  during a deposition which the Discovery Master determines can be resolved by
10 telephonic conference during the deposition).  The moving party shall first identify
11 each dispute, state the relief sought, and identify the authority supporting the
12 requested relief in a meet and confer letter that shall be served on all parties by
13 facsimile or electronic mail.  The parties shall have five court days from the date of
14 service of that letter to conduct an in-person conference to attempt to resolve the
15 dispute.  If the dispute has not been resolved within five court days after such
16 service, the moving party may seek relief from the Discovery Master by formal
17 motion or letter brief, at the moving party's option.  The opposing party shall have
18 five court days from the date of service of the motion or letter brief to submit a
19 formal opposition or response.  Any reply brief or letter brief shall be served within
20 three court days from the date of service of a formal opposition or response.  The
21 hearing on the motion shall take place within five court days of the service of any
22 reply brief or letter unless (a) the parties agree to another hearing date or agree that
23 no hearing is necessary; (b) the Discovery Master determines that no hearing is
24 necessary; or (c) the Discovery Master is not available, in which case the hearing
25 shall take place on the Discovery Master's first available date.  The foregoing shall
26 not prohibit (i) the parties from agreeing to alternate procedures, or (ii) a party from
27 seeking the Discovery Master's immediate resolution of a dispute or resolution of a
28 dispute upon shortened time upon a showing of good cause why a party would be

EXHIBIT 28 PAGE 430

- 4 -

1  prejudiced absent prompt resolution. Service of any document by fax or electronic
2  mail prior to 6:00 p.m. shall constitute service on that day.

3       6.       The Discovery Master's orders resolving discovery disputes, reports, or
4  recommendations pursuant to Rule 53(e) or (f) shall be treated as rulings made by a
5  Magistrate Judge of the United States District Court. The Discovery Master shall
6  file each order, report, or recommendation pursuant to Rule 53(e) or (f) and serve
7  the parties within five court days of his/her decision on a matter.

8       7.       A court reporter shall transcribe any hearing or other proceeding before
9  the Discovery Master.

10      8.       The cost of any proceeding before the Discovery Master, including the
11  fees of the Discovery Master, the fees of court reporters who transcribe hearings or
12  other proceedings before the Discovery Master, and the fees of any other person
13  necessary to the efficient administration of the proceeding before the Discovery
14  Master, shall be paid one-half by Mattel, Inc., and one-half by MGA Entertainment,
15  Inc. and Carter Bryant unless, consistent with the Federal Rules of Civil Procedure,
16  the Discovery Master Orders otherwise. By agreeing to share costs among the
17  parties, no party waives its right to seek recovery or reimbursement for such costs
18  from any other party.

19      9.       The Discovery Master shall be compensated according to his regular
20  hourly rate of $750.

21      10.      Pursuant to Federal Rule of Civil Procedure 53(b)(2), the Discovery
22  Master shall proceed with all reasonable diligence.

23      11.      Based on an affidavit filed by Hon. Edward A. Infante pursuant to
24  28 U.S.C. § 455 and Federal Rule of Civil Procedure 53(b)(3), the parties are not
25  aware that he has a relationship to the parties, to counsel, to the action, or to the
26  Court that would require disqualification of a judge under 28 U.S.C. § 455, and
27  based thereon the parties expressly waive any ground for disqualification disclosed
28  therein of Hon. Edward A. Infante to serve as master in these proceedings.

EXHIBIT 28 PAGE 431
-5-

12.     The Discovery Master shall not have ex parte communications with ~~the~~ ~~Court,~~ a party or counsel.

13.     The Discovery Master shall preserve and maintain all documents and materials submitted by the parties as well as all orders, reports, and recommendations issued by the Discovery Master. These documents, materials, orders, reports and recommendations shall be the record of the Discovery Master's activities, and shall be maintained in chronological order until the Discovery Master is informed by the parties that all issues herein have been finally disposed of and determined.

14.     The Discovery Master is hereby authorized to receive and consider information and documents designated "CONFIDENTIAL" and "CONFIDENTIAL-ATTORNEYS EYES ONLY" pursuant to the January 4, 2005 Stipulated Protective Order. The Discovery Master agrees to be bound by the January 4, 2005 Order.

15.     All third parties subject to discovery requests or deposition in this litigation shall be bound by the terms of this Stipulation and Order.

Dated: November 21, 2006                    O'MELVENY & MYERS LLP

                                            By: _____
                                                Diana Torres
                                                Attorneys for MGA Entertainment, Inc.


Dated: November 29, 2006                    LITTLER MENDELSON

                                            By: _____
                                                Douglas A. Wickham
                                                Attorneys for Carter Bryant

STIPULATION FOR APPOINTMENT OF A DISCOVERY MASTER AND [PROPOSED] ORDER

EXHIBIT 28  PAGE 432

1 | Dated: ~~November~~ December 4, 2006

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP

By: _Jon D. Corey_
    Jon D. Corey
    Attorneys for Mattel, Inc.

## ORDER

The foregoing Stipulation for Appointment of a Discovery Master is SO ORDERED *as modified.*

Dated: _12-6-06._

_S G Larsen_
Hon. Stephen G. Larson
United States District Court Judge

## CONSENT OF DISCOVERY MASTER

If appointed by the Court, I, the undersigned, consent to serve as Discovery Master in the above referenced proceeding consistent with this Order.

Dated: _12-5-06_

_Edward A. Infante_
Hon. Edward A. Infante (Ret.)

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

EXHIBIT 28 PAGE 433

## PROOF OF SERVICE

1013A(3) CCP Revised 5/1/88

STATE OF CALIFORNIA )
COUNTY OF LOS ANGELES )

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

On December 5, 2006, I served the foregoing document described as **STIPULATION FOR APPOINTMENT OF A DISCOVERY MASTER; AND [PROPOSED ORDER** on all interested parties in this action.

**Keith A. Jacoby, Esq.**
**Douglas Wickham, Esq.**
**Littler Mendelson**
**A Professional Corporation**
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107
Phone: 310-553-0308
**Fax: 310-553-5583**

**Diana M. Torres, Esq.**
**O'Melveney & Meyers**
400 S. Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
**Fax: 213-430-6407**

[ ]   By placing [ ] the original [X ] true copies thereof enclosed in sealed envelopes addressed as follows:

[X]   **BY MAIL**

[ ]   I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

[ ]   As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

[ ]   **BY PERSONAL SERVICE** I delivered such envelope by hand to the addressee.

Executed on December 5, 2006, at Los Angeles, California.

[ ]   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Cheri Hatch
Print Name

Signature

EXHIBIT 28 PAGE 434

**EXHIBIT 29**



# PRIORITY SEND

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                         Date: October 15, 2007
Title:     CARTER BRYANT -v- MATTEL, INC.
           AND CONSOLIDATED ACTIONS

============================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

          Jim Holmes                           Theresa Lanza
          Courtroom Deputy Clerk               Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

Matthew M. Werdegar                   Jon D. Corey
                                      B. Dylan Proctor
                                      Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:

Scott H. Dunham
Marc Feinstein
Aman Khan
Thomas J. Nolan
Carl A. Roth

PROCEEDINGS:   **ORDER REGARDING STATUS CONFERENCE**

       The Court held a status conference. The Court informed counsel that it had reviewed
MGA's transition plan and had approved the proposed substitution of counsel.

       As discussed, the Court enters what the parties have termed a "soft stay" until October 31,
2007. Specifically, all proceedings and discovery are STAYED during that time, including the
October 23, 2007, discovery matter before Judge Infante; however, the parties shall continue to
produce paper discovery and they may continue to serve discovery requests.

       Pursuant to this stay, the Court continues the Motion to Strike Carlos Gustavo Machado

MINUTES FORM 90                    DOCKETED ON CM        Initials of Deputy Clerk __jh__
CIVIL -- GEN                                             DO /30
                                   OCT. J.6 2007

10-15                              BY                    EXHIBIT 29   PAGE 1089



Gomez's Affirmative Defenses, set on this Court's calendar for October 22, 2007, to November 5, 2007, at 10:00 a.m. in Courtroom #1 of the above-referenced Court.

The Court sets a further status conference, on October 31, 2007, at 1:00 p.m., in Courtroom #1 of the above-referenced Court. Lead trial counsel and/or attorneys of record who can make commitments on behalf of lead trial counsel shall be present. The parties shall be prepared to address any issues related to the transition plan, whether the stay imposed by the Court should remain in place (and if so, for how long), and the selection of a settlement officer.

The parties are encouraged to assess whether the services of Ambassador Pierre-Richard Prosper as a settlement officer would be helpful to a resolution of the consolidated actions as discussed on the record. The Court will inquire as to whether any parties have any objection to Ambassador Prosper serving as the settlement officer herein, and will thereafter set a time frame for conducting settlement proceedings. For the parties' convenience, the resume of Ambassador Prosper is attached.

IT IS SO ORDERED.

c:    Judge Infante

Initials of Deputy Clerk __jh_____

EXHIBIT 29 PAGE 436

**EXHIBIT 30**

**PRIORITY SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                    Date: October 31, 2007
Title:     CARTER BRYANT -v- MATTEL, INC.
           AND CONSOLIDATED ACTIONS
=====================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

           Jim Holmes                          Theresa Lanza
           Courtroom Deputy Clerk              Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

Christa Martine Anderson              John Quinn
Matthew M. Werdegar                   Jon D. Corey
                                      Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:            ATTORNEY PRESENT FOR CARLOS
                                      GUSTAVO MACHADO GOMEZ:

Thomas J. Nolan                       Alexander H. Cote
Carl A. Roth

PROCEEDINGS:    **ORDER REGARDING STATUS CONFERENCE**

        The Court held a status conference to consider the current schedule set for Phase 1 of the
consolidated cases as well as the issue of the selection of a settlement officer for both Phase 1
and Phase 2 of the consolidated cases.

        For reasons discussed on the record, the Court enters a two-week STAY in these actions,
beginning November 1, 2007, and continuing through November 14, 2007. During that time, the
parties shall serve no discovery requests (including subpoenas) on parties or third parties. The
obligation to respond to any outstanding discovery requests is likewise suspended for that time
frame. No depositions shall be conducted during this time. The matters to be heard before Judge
Infante, the discovery master herein, are to be rescheduled to a date determined by Judge Infante,

MINUTES FORM 90                                  Initials of Deputy Clerk __jh_____
CIVIL -- GEN                          1          Time: 00/20

EXHIBIT 30 PAGE 437

provided, however, that such date is no earlier than November 26, 2007, and that no opposition or reply papers may be required to be filed during the pendency of the stay.

The Court CONTINUES the November 19, 2007, hearing on the Motion For Leave to Serve A Supplemental Interrogatory to December 3, 2007, at 10:00 a.m.

The current schedule regarding Phase 1 of the trial in these consolidated actions is modified as follows:

| | |
|---|---|
| Fact discovery cutoff: | 01/28/08 |
| Initial Expert Reports: | 02/11/08 |
| Rebuttal Expert Reports: | 03/17/08 |
| Last date for settlement conference: | VACATED (see below for Court's directive regarding mandatory settlement procedures) |
| Expert discovery cutoff: | 03/31/08 |
| Dispositive Motions hearing cutoff: | 03/31/08 @ 10:00 a.m. |
| Pretrial conference order and associated trial documents including proposed jury instructions: | 04/21/08 |
| Filing of Motions in Limine: | 05/05/08 |
| Pretrial conference: | 05/05/08 @ 11:00 a.m. |
| Hearing on Motions in Limine and Jury Instructions: | 05/19/08 @ 11:00 a.m. |
| Trial: | 05/27/08 @ 9:00 a.m. |

The schedule for Phase 2, previously set by the Court by Order filed February 22, 2007, in the case captioned MGA Entertainment, Inc. v. Mattel, Inc., et al., CV 05-02727, is VACATED. The Court will consider the scheduling of Phase 2 at a later date. However, the Court DENIES MGA's request to delay or otherwise bifurcate discovery regarding Phase 2 issues.

At the status conference, the parties acknowledged on the record their mutual agreement to the selection of Ambassador Pierre-Richard Prosper as the settlement officer for these

MINUTES FORM 90
CIVIL -- GEN

2

Initials of Deputy Clerk __jh_____
Time: 00/20

EXHIBIT 30 PAGE 438

consolidated cases, and the Court hereby APPOINTS him in that capacity. Counsel are directed to contact Ambassador Prosper to schedule a settlement conference on or before December 1, 2007. The settlement conference is to be directed towards resolution of both phases of this litigation. Counsel are ORDERED to carefully and diligently follow Ambassador Prosper's directions concerning preparation for and conduct at any settlement conferences. The parties will be jointly responsible for paying the Ambassador's reasonable and customary rate for services rendered. A failure to comply with this order, or a failure to provide reasonable compensation to the Settlement Officer upon completion of the mediation, may result in the imposition of appropriate sanctions. Ambassador Prosper is directed to provide a status report to the Court following the conclusion of the settlement efforts.

IT IS SO ORDERED.

c:   Judge Infante
     Ambassador Prosper

MINUTES FORM 90
CIVIL -- GEN

3

Initials of Deputy Clerk __jh_____
Time: 00/20

EXHIBIT 30 PAGE 434

## NOTICE PARTY SERVICE LIST

**Case No.** CV 04-09049 SGL(RNBx)    **Case Title** Carter Bryant v. Mattel, Inc.

**Title of Document** Minute Order Issued October 31, 2007

| | |
|---|---|
| | Atty Stlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service -  Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✓ | **ADD NEW NOTICE PARTY** (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Ambassador Pierre-Richard Prosper

Firm:

Address (include suite or floor): P.O. Box 581103

Salt Lake City, UT  84158

*E-mail: prposper@gmail.com

*Fax No.:

\* For CIVIL cases only

| *JUDGE / MAGISTRATE JUDGE (list below):* |
|---|
| |
| |
| |

**Initials of Deputy Clerk** jh

NOTICE PARTY SERVICE LIST

EXHIBIT 30 PAGE 440

**EXHIBIT 31**

DALE M. CENDALI (admitted *pro hac vice*)
DIANA M. TORRES (S.B. #162284)
JAMES P. JENAL (S.B. # 180190)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: jjenal@omm.com

PATRICIA GLASER (S.B. #55668)
CHRISTENSEN, GLASER, FINK,
JACOBS, WEIL & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067
Telephone: (310) 553-3000
Facsimile: (310) 557-9815

Attorneys for MGA Entertainment, Inc.

**RECEIVED**

FEB 2 1 2007

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation,<br><br>Defendant.<br><br>CONSOLIDATED WITH MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727)<br><br>**DISCOVERY MATTER**<br><br>**MGA ENTERTAINMENT, INC.'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY ANSWERS**<br><br>Hearing date:     March 5, 2007<br>Hearing time:     8:00 a.m. |

EXHIBIT 31 PAGE 441

1

# TABLE OF CONTENTS

2

Page

3    I.     INTRODUCTION ...........................................................................2

4    II.    FACTS AND PROCEDURAL BACKGROUND ...........................................3

     III.   ARGUMENT................................................................................ 10

5           A.   Mattel's Motion Is Unnecessary And Should Be Denied With
6                Respect To The Majority Of Documents Specifically Identified
                 Therein ................................................................................ 10

7           B.   Mattel's Motion With Respect To The Remaining Requests
                 Should Be Denied Because They Seek Documents Not Relevant
8                To This Litigation, Documents Covered By A Protective Order,
                 Or Documents Of The Type Mattel Itself Has Refused To
9                Produce .............................................................................. 16

10          C.   Mattel Is Not Entitled To Information Concerning Bryant's
                 Attorneys' Fees.................................................................... 24

11          D.   Mattel Is Not Entitled To Irrelevant, One-Sided Discovery .............. 24

            E.   Mattel Is Not Entitled To Expert Discovery At This Time................ 27

12          F.   Mattel's Assertions That MGA Has Withheld Documents Until
13               Mattel Receives Them From Other Sources And/Or Because Of
                 "Evidence" Concerning The Timing Of The Creation And
14               Development of "Bratz" Are Without Merit...................................... 28

15          G.   Mattel's Motion To Compel Further Interrogatory Responses
                 Should Be Denied As Moot..................................................... 31

16          H.   If Sanctions Are Warranted, They Are Warranted Against
                 Mattel................................................................................. 32

17   IV.    CONCLUSION............................................................................. 32

18

19

20

21

22

23

24

25

26

27

EXHIBIT _31_ PAGE _442_

28

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

# TABLE OF AUTHORITIES

**Page**

## CASES

Advanced Modular Sputtering, Inc. v. Superior Court, 132 Cal. App. 4th 826 (2d Dist. 2005).................................................. 20

Am. Heavy Moving & Rigging Co. v. Robb Techs., L.L.C., No. 2:04-CV-00933-JCM (GWF), 2006 U.S. Dist. LEXIS 51276, (D. Nev. July 24, 2006)................................................................... 22

Brown Bag Software v. Symantec Corp., 960 F.2d 1465 (9th Cir.) ..................................................................... 22

Computer Economics, Inc. v. Gartner Group Inc., 50 F. Supp. 2d 980 (S.D. Cal. 1999) ....................................................................... 19

Intersong-USA, Inc. v. CBS, Inc., 1 Fed. R. Serv. 3d 609 (S.D.N.Y. 1985) ........................................................................................... 20

Vermont Microsystems, Inc. v. Autodesk, Inc., 88 F.3d 142 (2d Cir. 1996) ......................................................................................... 19

## STATUTES

Cal. Civ. Code, § 3426.1(d) ................................................................ 22

Fed. R. Civ. Proc. 26 ............................................................... 21, 22

Fed. R. Civ. Proc. 33(b) ................................................................. 31

Fed. R. Civ. Proc. 6(a).................................................................... 31

EXHIBIT 31 PAGE 443

- ii -

1    This memorandum of points and authorities is filed in support of MGA

2    Entertainment, Inc.'s ("MGA") Opposition to Mattel, Inc.'s ("Mattel") motion to

3    compel production of documents and interrogatory answers in the case originally

4    captioned *Mattel, Inc. v. Bryant,* Case No. CV 04-9059 SGL (RNBx).

5    **I.    INTRODUCTION**

6        Mattel's motion to compel is a disingenuous attempt to convince this Court

7    that MGA is withholding relevant documents and refusing to produce documents

8    until Mattel discovers the existence of such documents from other sources.  In

9    actuality, and contrary to Mattel's assertion, MGA long ago produced volumes of

10   documents responsive to Mattel's requests and, indeed, produced far more

11   documents of substance than has Mattel.[1]  In response to a letter from Mattel on

12   January 7, 2007, in which Mattel complained about documents produced in August

13   2004, May 2005, and September 2006, MGA agreed to address the vast majority of

14   the issues Mattel raises in this motion.  Before the date for MGA's response,

15   however, Mattel filed the instant motion to compel.  MGA continued its production

16   regardless and, as of the date of this opposition, will have produced virtually all, if

17   not all, of the documents at issue.

18       The real issues raised by Mattel's motion, however, are those about which

19   Mattel makes only passing reference: (1) whether Mattel is entitled to unfettered

20   access to all of MGA's financial records, regardless of whether they pertain to any

21

22   [1] Although Mattel claims to have produced some 60,000 pages of documents, it neglects
to mention that 32,000 pages of those documents were produced on January 5, 2007, and

23   further neglects to mention that almost all of those documents are copies of Mattel product
catalogues, incomprehensible and, by Mattel's own admission, incomplete phone records,

24   and single page photographs of apparently every Barbie doll Mattel has ever produced,
including "Shrek Barbie," "Queen of England Barbie," "Classical Goddess Barbie," and

25   catalogs of Barbie's from the 1960's.  Additionally, a large number of the documents in
Mattel's January 2007 production are duplicative of documents within the very same

26   production, and several images from the "My Scene," "DIVA STARZ," and "Little
Mommy" lines are recurrent with unsubstantial alteration.  (*See* Declaration of Antonio

27   De Anda ¶ 2).  Mattel has produced virtually no electronic mail or documents concerning
the origin and development of "My Scene," "DIVA STARZ," or "Flavas," the product

28   lines at issue in MGA's claims.  (*Id.* ¶ 3.)

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT 31  PAGE 444

1   product at issue in this lawsuit; (2) whether Mattel is entitled to unfettered access to

2   MGA's design plans for yet-unreleased "Bratz" products; and (3) whether Mattel is

3   entitled to compel the types of documents from MGA that Mattel itself has refused

4   to produce, such as witness statements made in other legal proceedings and

5   documents in the possession of indirect subsidiaries.  MGA respectfully submits

6   that the answer to each of those questions is no.

7   ## II.   **FACTS AND PROCEDURAL BACKGROUND**

8       Over the past six weeks, Mattel has papered this Court with thousands of

9   pages of one-sided, incomplete and inaccurate stories about the conduct of MGA

10  and Carter Bryant, whether germane to the issue at hand or not.  MGA and Bryant

11  have tried not to burden the Special Master with the parties' differences on the

12  merits or their differences on discovery disputes prior to the Special Master's

13  appointment.  Indeed, MGA recognizes that the case has changed substantially over

14  the past few months.  But, to convey fully the baselessness of Mattel's latest motion

15  *and Mattel's true objective*, MGA must recount Mattel's prior conduct and the

16  agreements that the parties reached before this calendar year, all of which Mattel

17  now neglects to mention.  As set forth more fully below, Mattel's motion is far

18  more about obtaining access to MGA's financial information unrelated to the

19  products at issue, plans for future product development, and other one-sided

20  discovery, than it is about obtaining better copies of supposedly "illegible"

21  documents and the laundry list of other issues Mattel raises in its motion.

22      In April 2004, three and a half years after Bryant left Mattel's employ, Mattel

23  filed a vaguely worded, five count complaint against him, and him alone.  Two

24  months later, even though the name "MGA" appeared nowhere in its complaint,

25  Mattel served MGA, its most threatening competitor, with an eight page subpoena

26  for 21 categories of documents to be produced, ostensibly, in ten days, without even

27

28

- 3 -

EXHIBIT 31 PAGE 445

1   discussing a protective order.[2]  Notably, at that time, Mattel was finally waking up

2   to the fact that "Barbie," the doll that had acted as Mattel's tentpole for decades,

3   was no longer relevant to little girls[3] -- a fact that MGA had realized years before.

4        In response to Mattel's subpoena, MGA filed a motion to quash, which was

5   subsequently granted.  Magistrate Block found that Mattel's subpoena failed to

6   provide sufficient time for compliance and ordered Mattel to meet and confer with

7   MGA.[4]  The parties later met and conferred on the scope of production and agreed

8   that documents relating only to the original, or "first generation" "Bratz" dolls need

9   be produced.[5]  The parties then engaged in a mutual exchange of documents on

10  August 12, 2004.[6]  In the meantime, Bryant, a Missouri resident, removed the case

11  to federal court and Mattel (who routinely had five intellectual property lawyers

12  attend discovery hearings in state court) moved to remand, claiming that the case

13  was a simple employment case, not a copyright case, and that the federal court's

14  $75,000 jurisdictional minimum had not been met.[7]  Mattel's tactic succeeded, and

15  the case was remanded to state court on August 20, 2004.

16       Mattel's August 12, 2004, production was substantially lacking, however.

17  Although Bryant had asked for documents concerning his employment at Mattel,

18  including Mattel's records of his attendance, his email, his telephone calls, etc.,

19  Mattel refused to produce them.[8]  Bryant was subsequently forced to obtain a

20  protective order prohibiting Mattel from deposing him until after it had produced

21  the requested documents.[9]

22       That protective order, issued by the Hon. Gregory Alarcon in Los Angeles

---

[2] *See* Declaration of Diana M. Torres ("Torres Decl.") filed concurrently, ¶ 2 & Exh. A.

[3] *See* Declaration of Keith A. Jacoby ("Jacoby Decl.") in support of Bryant's Opposition to Mattel's Motion for Remand, dated December 22, 2004, ¶ 17 & Exh. 12.

[4] Torres Decl., ¶ 2 & Exh. B (Magistrate Block's Order, dated June 28, 2004).

[5] Jacoby Decl. ¶ 12.

[6] Torres Decl. ¶ 3.

[7] Torres Decl. ¶ 4.

[8] *Id.*

[9] *Id.*

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT 31 PAGE 446

1  Superior Court, precipitated a watershed moment in Bryant's discovery from

2  Mattel. In October 2004, Mattel produced over 400 previously undisclosed

3  documents. First, on October 8, Mattel produced the "Toon Teens" drawings[10] and

4  photographs previously produced in August. Three days later, Mattel produced an

5  exchange of correspondence and a cooperation agreement between Mattel and

6  Cityworld, the defendants in a lawsuit in Hong Kong filed by MGA, with whom

7  Mattel entered into an information sharing agreement and to whom Mattel provided

8  "Toon Teens" documents so that Cityworld could claim to the Hong Kong court

9  that "Bratz" originated with Mattel, not Bryant, and that therefore MGA does not

10  own and cannot enforce the rights to "Bratz."[11] Two more days later, Mattel

11

[10] An article published July 16, 2003, in *The Wall Street Journal* ("WSJ") quoted an unnamed source inside Mattel for the assertion that Bryant copied "Bratz" from a project done by Mattel employee Lily Martinez:

> Inside Mattel, some are convinced the "Bratz" borrow liberally from a Mattel project that was scrapped at the testing stage in 1998.

Mattel had previously produced the drawings to Bryant's counsel in response to a specific verbal request for drawings and photographs of the project referenced in the WSJ article, but stated that the drawings and the project generally were *not* responsive to Bryant's document requests and, in fact, were unrelated to the case. (Jacoby Decl. ¶¶ 4-5 & Exh. 2.) When forced to produce documents requested by Bryant pursuant to Judge Alarcon's order, however, Mattel produced the "Toon Teens" documents *without* the disingenuous assertion that the photographs and documents were not responsive to Bryant's requests and unrelated to the case. (Jacoby Decl. ¶¶ 7-8.) Mattel's counsel then questioned Bryant extensively at deposition about "Toon Teens" and their supposed "substantial similarity" to "Bratz." (Jacoby Decl. ¶ 3, & Exh. 1.) On October 26, 2004, during a Local Rule 37-2 conference arising from the fact that Mattel refused to produce a witness in response to Bryant's deposition notice, Bryant offered to withdraw its request for a witness on "Toon Teens"-related subjects if Mattel would stipulate that it was not contending that Bryant copied "Bratz" from "Toon Teens" and did not claim that the revenue stream from the sale of other Mattel doll products were wrongfully encroached upon by "Bratz," because "Bratz" was allegedly derivative of "Toon Teens." *Mattel refused.* (Jacoby Decl. ¶ 11.) In recent months, however, Mattel agreed not to pursue any claim that "Bratz" is similar to "Toon Teens," no doubt realizing that the child-like caricatures of "Toon Teens" bear so little resemblance to "Bratz" that it is inconceivable that its claim would prevail; and, of course, Mattel needed to take that position to defeat Bryant's declaratory relief claim of ownership and non-infringement. (Torres Decl. ¶ 10 & Exh. G (Order Granting Motions to Dismiss, dated July 18, 2006).)
[11] Pursuant to the cooperation agreement, which Mattel drafted, Mattel agreed to "provide to Cityworld copies of (i) Mattel's design drawings known as "Toon Teens" and (ii) photographs of "Toon Teens" prototypes. In return, Cityworld agreed to provide Mattel with documents, including "copies of all "Bratz" design drawings," "the contracts relating to 'Bratz,'" and the affirmation to which such documents were attached. (Jacoby Decl. ¶

MGA'S OPPOSITION TO MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1   produced the letter dated August 2002 addressed to Mattel CEO Robert Eckert, in

2   which the anonymous author alleges that Bryant stole the "Bratz" idea from Mattel.

3   Handwritten notes on that letter indicate (and subsequent deposition testimony

4   confirmed) that, at Mr. Eckert's suggestion, Mattel's Vice President of World Wide

5   Security investigated the allegations.[12]  (MGA and Bryant recently had to compel

6   Mattel to produce documents related to that investigation, which they have not yet

7   received.)

8        Until the case was remanded to state court in late August 2004 by the

9   Honorable Nora M. Manella, Mattel agreed to limit its discovery requests to only

10  "first generation" "Bratz" dolls in order to maintain the fiction that there was

11  perhaps less than $75,000 in controversy, and that it was not claiming copyright

12  infringement.[13]  On October 28 and 30, 2004, however, believing that the case was

13  safely ensconced in state court, Mattel informed Bryant it would no longer honor

14  that limitation but, instead, was proceeding with discovery concerning *all* "Bratz"

15  products, including those being developed today.[14]  Mattel's purported rationale --

16  "damages."[15]  Mattel's overt efforts to seek far more than $75,000 from Bryant

17  landed it back in federal court, and this time Judge Manella denied remand.[16]

18       Mattel nonetheless continued to make every effort to avoid facing the

19  standards applicable under federal copyright law and, after failing to obtain remand

20  from Judge Manella, appealed her decision.[17]  Mattel also moved to dismiss

21  Bryant's complaint for declaratory judgment, which sought a ruling that he owned

22  9 & Exh. 7.)
23  [12] Jacoby Decl. ¶ 10 & Exh. 8.
    [13] Jacoby Decl. ¶ 12.
24  [14] Jacoby Decl. ¶ 13 & Exh. 9.
25  [15] Torres Decl. ¶ 5 & Exh. C (Bryant Dep. taken on November 8, 2004, at 702:15-703:9).
    [16] Torres Decl. ¶ 6, Exh. D (Order Denying Plaintiff Mattel, Inc.'s Motion to Remand and
26  Certifying Question for Interlocutory Review, dated March 4, 2005).
    [17] At this point, Mattel finally conceded that $75,000 was in controversy but argued that
27  MGA's intervention defeated diversity jurisdiction. (Torres Decl. ¶ 7, Exh. E (Mattel's
    Opening Brief at 8)). That argument failed. (Torres Decl. ¶ 6, Exh. F (Order Affirming
28  District Court's denial of motion to remand)).

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT 31 PAGE 448

1   the rights to "Bratz" at the time he conveyed them to MGA and that nothing he did

2   infringed any copyright owned by Mattel.

3       In the meantime, in 2005, after lengthy conferences of counsel, the parties

4   stipulated to supplementing their document productions on May 16, 2005. Faced

5   with the fact that Bryant's work for MGA long after his departure from Mattel bore

6   no relevance to the "state law" claims it had asserted in April 2004, Mattel retreated

7   from its October 2004 position that all things "Bratz" were relevant to its claims,

8   and, at least with respect to MGA, agreed to continue limiting its discovery requests

9   to "first generation" "Bratz." Mattel's lead counsel confirmed that agreement even

10  after remand but, to resolve any issue as to what constituted "first generation"

11  "Bratz," the parties agreed to a date cut-off of June 2001, the month when MGA's

12  first "Bratz" dolls were made available for sale.[18]

13      In September 2006, following the parties' lengthy conferences of counsel in

14  July and August 2006, MGA made a supplemental production of documents.

15  Mattel, after subpoenaing long-time Mattel vendor Steve Linker who worked on

16  Mattel's 2000 "DIVA STARZ" line, produced for the first time boxes of old DIVA

17  STARZ drawings, signaling its apparent intention to convert its former "Toon

18  Teens" theory into one involving "DIVA STARZ."[19]

19      On November 20, 2006, Mattel filed a motion for leave to amend its

20  complaint to allege the long-denied copyright ownership and infringement claim,

21  along with vague claims for civil RICO violations and trade secret

22  misappropriation. On January 12, 2007, the Honorable Stephen G. Larson allowed

23  Mattel to assert its claims in these consolidated actions, not as additional claims in

24  its original complaint but as counterclaims to MGA's Lanham Act and unfair

25  competition claims filed in April 2005. MGA and Bryant filed motions to dismiss

26  Mattel's RICO and trade secrets claims on several grounds, including that Mattel

27  ---

28  [18] Torres Decl. ¶ 12.
    [19] Torres Decl. ¶ 20.

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT 3/ PAGE 449

1    failed to identify their alleged predicate acts or Mattel's alleged trade secrets.[20]

2         Mattel now moves to compel MGA to produce all manner of documents,

3    claiming that:

4         1.  MGA's prior productions are deficient because they contain redactions

5    and cut-off text, and because Mattel has obtained documents from third parties that

6    MGA has not produced;

7         2.  MGA is somehow at fault because Union Bank did not produce sufficient

8    documents in response to Mattel's subpoena;

9         3.  MGA's document production is deficient because it has not produced all

10   documents from MGA HK Ltd, Inc., an indirect foreign subsidiary;

11        4.  MGA's document production is deficient because it has not produced

12   statements concerning "Bratz" made by witnesses in the course of other

13   proceedings covered by protective orders in those proceedings;

14        5.  MGA's document production is deficient because MGA supposedly has

15   not produced all documents concerning contracts with Bryant; and

16        6.  MGA's document production is deficient because MGA has not produced

17   documents concerning subsequent generations of "Bratz."

18        In its motion, Mattel makes no mention of the facts that:

19        1.  The redactions at issue, on documents produced months or years ago,

20   concern MGA products -- such as "Hoppity Bouncy Baby," "Insectobots," "Scooter

21   Samantha," and others -- that have no bearing whatsoever on Mattel's claims, or

22   that MGA agreed to produce, and has produced, documents without redactions save

23   for pricing and financial information concerning unrelated products;

24        2.  The cut-off text about which Mattel complains, again on documents

25   produced to Mattel months or years ago is, with perhaps a handful of exceptions,

26   _____

27   [20] Torres Decl. ¶ 24, Exhs. M & N (Memorandum of Points and Authorities in Support of MGA and Isaac Larian's Joint Motion to Dismiss Mattel's Amended Answer and Counterclaims; Memorandum of Points and Authorities In Support of Carter Bryant's

28   Motion to Dismiss Counterclaims II, III, V, VII, IX, and XI).

1  completely inconsequential, or that MGA agreed to produce, and has produced,

2  new copies of those documents;

3      3. Mattel has never sought to compel further production from Union Bank;

4      4. None of Mattel's document requests contain a request for documents from

5  MGA HK Ltd., and Mattel never even mentioned its interest in those documents

6  until August 2006, but declined to agree that Mattel would produce documents

7  from its own subsidiaries, on the sole basis that Mattel has more subsidiaries than

8  does MGA;

9      5. Statements concerning "Bratz" made by witnesses in the course of other

10  proceedings are covered by protective orders in those proceedings, and Mattel has

11  refused to agree to produce statements in its own possession, custody or control

12  concerning the origin of the Mattel products at issue, including both "My Scene"

13  and "DIVA STARZ;"[21]

14      6. MGA has already produced all non-privileged contracts entered or

15  contemplated with Bryant prior to his last day at Mattel or that concern "Bratz,"

16  including non-privileged documents concerning any supposed "fee agreement" in

17  this litigation. Mattel appears to be seeking privileged documents and drafts,

18  however, and/or alleged contracts between MGA and Bryant entered into long after

19  he left Mattel that have nothing to do with "Bratz;" and

20      7. MGA has already agreed to produce documents concerning subsequent

21  generations of "Bratz," which were not at issue until January 12, 2007, but has

22  taken the position that the documents Mattel really wants -- unreleased product

23  design drawings -- have no bearing on this case or, at the very least, should not be

24  produced until *after* the release of those products.

25

26  [21] Mattel mentions its refusal to agree to produce witness statements concerning "Flavas,"
    but makes no mention of its refusal to agree to produce witness statements concerning
27  "My Scene," the product at the heart of MGA's Lanham Act and unfair competition
    claims, or "DIVA STARZ," a product now directly at issue in Mattel's newly-minted
28  theory of ownership and infringement. (Mot. at 15).

-9-

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT 31  PAGE 451

1    In short, Mattel's omnibus motion to compel is not an attempt to compel the

2    documents specifically identified in the motion but rather an attempt to gloss over

3    the real issues and thereby obtain a broad order that encompasses far-reaching

4    documents and sets precedent on a wide variety of issues without requiring Mattel

5    to address their relevance.

6    **III.   ARGUMENT**

7        **A.   Mattel's Motion Is Unnecessary And Should Be Denied With**
8             **Respect To The Majority Of Documents Specifically Identified**
9             **Therein**

10           **1.   MGA Has Either Already Cured Any Alleged Deficiencies**
                   **In Its Production Or Is In The Process Of Addressing Any**
11                  **Remaining Deficiencies**

12   As a preliminary matter, the majority of Mattel's motion to compel is

13   unnecessary and should be denied on that basis alone.  On January 26, 2007, the

14   parties met and conferred regarding a host of purported deficiencies in MGA's

15   2004, 2005 and 2006 document productions.  During the conference of counsel,

16   MGA agreed to review its production and to reproduce unredacted, or modified

17   redacted copies of documents, where appropriate, and to produce copies of any

18   missing attachments to documents where the attachments were relevant to a claim

19   or defense in the litigation.[22]  In addition, MGA agreed to review the copies of

20   documents in its possession on which Mattel claimed the text had been cut-off or

21   was "illegible," and to reproduce those documents if MGA's copies contained

22   information missing from Mattel's documents.[23]  Finally, MGA agreed to review

23   the Court's Order Granting Mattel's Motion to Compel Production of Documents

24   as to Carter Bryant, to determine what impact the Court's Order had on MGA's

25   document production.[24]  *Before the deadline for MGA's production*, however,

26   _____

27   [22] Torres Decl. ¶ 18.
     [23] *Id.*
28   [24] *Id.*

EXHIBIT 31 PAGE 452

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1   Mattel filed the instant motion to compel seeking, among other things, the very

2   same documents that MGA agreed to produce.

3        MGA has already cured many of the alleged "deficiencies" in its production

4   and will have resolved any remaining alleged "deficiencies" before this matter is

5   heard.  Following the parties' conference of counsel, MGA began the process of

6   reviewing its production and unredacting documents, as agreed.[25] *Notably, many of*

7   *Mattel's complaints have no merit, as their complaints stem from a fundamental*

8   *misunderstanding of the documents produced.*  Thereafter, on February 5, 2007,

9   MGA reproduced unredacted documents, or documents with substantially fewer

10  redactions for its production through May 2005.[26]  MGA also produced missing

11  attachments to documents where the attachment was relevant to the "Bratz" or

12  "Prayer Angel" product lines, the only products at issue during the time frame of

13  the documents in the production.[27]  MGA has continued to review the remainder of

14  its production to date to determine whether additional documents need to be

15  reproduced, and has been producing on a rolling basis any such documents that are

16  identified.[28]  As of the date of this opposition brief, the only documents of this type

17  that MGA has not reproduced are payment-type documents where part of a word or

18  number was cut off by the copier.[29]  As MGA's counsel has explained to Mattel, the

19  copies of those documents in counsel's possession (which were produced last

20  September, but about which Mattel made no complaint until January), are

21

22  [25] Declaration of Stacie McLean ("McLean Decl.") ¶ 2.

23  [26] *Id.* The only redactions to the reproduced documents were either based on privacy
    concerns for third parties, such as social security numbers, or else include information for
24  products that are not relevant to this litigation. *Id.* ¶ 2.
    [27] McLean Decl. ¶ 3.
25  [28] McLean Decl. ¶ 2.

26  [29] Moreover, the majority of the text that was cut-off or "illegible" on the documents
    produced to Mattel was either so minor (such as the top portion of a word or number) that
    it did not affect Mattel's ability to read, understand or use the document, or else was
27  present and fully legible elsewhere on the document (such as an invoice number that
    appeared in two places on the document, one of which was "cut-off" and one of which
28  was not). (McLean Decl., ¶ 4).

- 11 -

EXHIBIT 31 PAGE 453

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1    substantially the same as those that had been produced to Mattel.[30]  Accordingly,

2    MGA requested the original files so that any documents that were "illegible" or had

3    text cut-off could be reproduced, as needed.[31]  Those documents were in an off-site

4    storage facility and were not retrieved until the business day before this opposition

5    was due; as MGA had already agreed, if they contain the allegedly "illegible" or

6    cut-off text, MGA will produce them, and expects to do so in the next two days.[32]

7        Mattel, however, wants more – although it dare not admit this openly, Mattel

8    apparently wants all MGA financial data, regardless of the product.  For example,

9    Mattel attached to its motion to compel a 100-page spreadsheet containing financial

10   data ostensibly to show that MGA has redacted far too much and should be required

11   to produce such documents in unredacted form.[33]  Notably, however, the

12   information redacted from the spreadsheet *relates to products not at issue in this*

13   *litigation*, including Power Rangers, Hello Kitty, Scooter Samantha and Hoppity

14   Bouncy Baby.  It is thus clear that Mattel's goal is to have MGA produce all

15   financial data, regardless of whether the product is at issue in this litigation.  *There*

16   *is absolutely no basis on which Mattel is entitled to such commercially sensitive*

17   *information about its most significant competitor.*[34]

18            **2.    MGA Has Already Produced Documents In Response To**
              **Mattel's Requests Or Is In The Process Of Producing**
19            **Relevant Documents In Its Possession**

20

21            **a.    MGA Has Already Produced Documents In Response**
                     **To Most Of Mattel's Requests**

22

23       Mattel's motion also seeks to have MGA produce documents that were

24   ─────────────────────
     [30] Torres Decl. ¶ 18.
25   [31] McLean Decl. ¶ 4.
     [32] McLean Decl. ¶ 4.
26   [33] Declaration of Michael T. Zeller in support of Mattel's Motion to Compel, ¶ 4, Exh. 2.
     [34] As set forth more fully in section III.B.1.b *infra*, the Protective Order in this case is
27   inadequate to protect MGA from disclosure, as Mattel has frequently paraphrased or
     included summaries of information designated confidential or "attorneys eyes only" in
28   public filings.

                                                          MGA'S OPPOSITION TO
                                                      MATTEL'S MOTION TO COMPEL
                                                          CV 04-09049 SGL (RNBX)

1    produced long ago. Mattel is well aware of this fact and, effectively, seeks

2    documents that either *do not exist* or are simply not in MGA's possession.

3         First, MGA has produced all responsive and relevant documents that it was

4    able to locate after a diligent search in response to Request Nos.: 6, 7, 9,[35] 26, 27,

5    32, 33, 34,[36] 35,[37] 36, 55, 69 and 70.[38] MGA has also previously produced

6    documents in response to many of Mattel's remaining requests. Given MGA's

7    agreement to produce documents related to "Bratz" other than "First Generation"

8    _____

9    [35] Mattel's Second Set of Requests For Production, Request No. 9 seeks "All
     DOCUMENTS that REFER OR RELATE To any work, activities or services, including
     without limitation any freelance work or consulting services, that Veronica Marlow
10   performed for or with YOU or on YOUR behalf prior to January 1, 2001 (regardless of
     when any such document was prepared, created, received or transmitted, whether in whole
11   or in part)." MGA has produced all relevant and responsive documents in response to this
     request that it was able to locate with regard to Ms. Marlow's work on "Bratz" and
12   "Prayer Angels." Ms. Marlow has worked on many projects for MGA other than those at
     issue in this litigation. Thus, documents related to Ms. Marlow's work on projects not at
13   issue in this litigation and which are not relevant to any party's claims or defenses, have
     not been produced.
14   [36] Mattel's Second Set of Requests For Production, Request No. 34 seeks "All
15   DOCUMENTS prepared, written, transmitted or received (whether in whole or in part)
     prior to January 1, 2001 that REFER OR RELATE TO ANGEL." The parties previously
16   agreed that MGA would produce documents responsive to this request that reflect major
     milestones in the development of "Prayer Angels." (Torres Decl. ¶ 13.) Accordingly,
17   MGA has already produced all relevant and responsive documents that it could locate,
     consistent with the parties' agreement.
18   [37] Mattel's Second Set of Requests For Production, Request No. 35 seeks "All
     DOCUMENTS that REFER OR RELATE TO ANGEL that REFER OR RELATE TO
19   any time prior to January 1, 2001 (regardless of when such document was prepared,
     written, transmitted or received, whether in whole or in part." The parties previously
20   agreed that MGA would produce documents responsive to this request that reflect major
     milestones in the development of "Prayer Angels." (Torres Decl. ¶ 13.) Accordingly,
21   MGA has already produced all relevant and responsive documents that it could locate,
     consistent with the parties' agreement.
22   [38] Mattel's Second Set of Requests For Production, Request No. 70 seeks "All
     COMMUNICATIONS between YOU and Elise Cloonan that REFER OR RELATE TO
23   BRYANT, Mattel, Inc., BRATZ and/or Anna Rhee, including without limitation all
     diaries, notes, calendars, logs, phone records and letters, that reflect, record, or
24   memorialize or otherwise REFER OR RELATE TO any such COMMUNICATIONS."
     MGA has produced all relevant and responsive documents that it could locate in response
25   to this request with regard to communications between MGA and Elise Cloonan that refer
     or relate to Bryant, Mattel, or Bratz. MGA has also produced all relevant and responsive
26   documents that it could locate in response to this request that refer or relate to Ms. Rhee
     that relate to the present litigation, or that relate to First Generation Bratz. Other
27   communications relating to Ms. Rhee, who has worked on various other projects for
     MGA, are not relevant to the claims or defenses of the parties in the litigation and should
28   not be required to be produced.

                                                          MGA'S OPPOSITION TO
                                                     MATTEL'S MOTION TO COMPEL
                                                        CV 04-09049 SGL (RNBX)