1            UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                  EASTERN DIVISION

4                      - - -

5       HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                      - - -

7    CARTER BRYANT, INDIV,              )
                                        )
8                      PLAINTIFF,       )
                                        )
9            VS.                        )   NO. ED CV 04-09049
                                        )   (LEAD LOW NUMBER)
10   MATTEL, INC.,                      )
                                        )
11                     DEFENDANTS.      )
     _____)
12   AND RELATED ACTIONS,              )
     _____)
13

14

15            REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                 RIVERSIDE, CALIFORNIA

17               MONDAY, JANUARY 8, 2007

18                    10:26 A.M.

19

20

21

22

23            THERESA A. LANZA, RPR, CSR
            FEDERAL OFFICIAL COURT REPORTER
24            3470 12TH STREET, RM. 134
            RIVERSIDE, CALIFORNIA  92501
25                 (951) 274-0844
              CSR11457@SBCGLOBAL.NET

```
 1   APPEARANCES:

 2

 3   ON BEHALF OF PLAINTIFF/COUNTER DEFENDANT MATTEL, INC.:

 4
                          QUINN EMANUEL
 5                        BY:  JOHN B. QUINN
                          BY:  MICHAEL T. ZELLER
 6                        865 S. FIGUEROA STREET,
                          10TH FLOOR
 7                        LOS ANGELES, CALIFORNIA  90017
                          (213) 624-7707
 8

 9
     ON BEHALF OF PLAINTIFF/COUNTER COMPLAINANT/DEFENDANT,
10   CARTER BRYANT:

11                        LITTLER MENDELSON
                          BY:  KEITH A. JACOBY
12                        2049 CENTURY PARK EAST,
                          FIFTH FLOOR
13                        LOS ANGELES, CALIFORNIA  90067
                          (310) 553-0308
14

15
     ON BEHALF OF MGA ENTERTAINMENT:
16
                          O'MELVENY & MYERS LLP
17                        BY:  DALE CENDALI
                          BY:  DIANA M. TORRES
18                        400 SOUTH HOPE STREET
                          LOS ANGELES, CALIFORNIA  90071-2899
19                        (213) 430-6000

20

21

22

23

24

25
```

1        RIVERSIDE, CALIFORNIA; MONDAY, JANUARY 8, 2007; 10:26 A.M.

2                              -OOO-

3              THE CLERK:  CALLING CALENDAR ITEM NUMBER 6, IN THE

4    MATTER OF PLAINTIFF CARTER BRYANT VERSUS DEFENDANT MATTEL,

5    INC., CASE NUMBER 04-9049.                                    10:25

6              MAY WE HAVE COUNSEL PLEASE STATE YOUR APPEARANCES.

7              MR. QUINN:  GOOD MORNING, YOUR HONOR.

8              JOHN QUINN AND MIKE ZELLER APPEARING FOR PLAINTIFF

9    MATTEL.

10             THE COURT:  MR. QUINN, GOOD MORNING.              10:26

11             MS. CENDALI:  GOOD MORNING, YOUR HONOR.

12             DALE CENDALI FROM O'MELVENY & MYERS REPRESENTING MGA

13   AND ISAAC LARIAN.  WITH ME IS MY COLLEAGUE DIANA TORRES.

14             THE COURT:  GOOD MORNING.

15             MR. JACOBY:  GOOD MORNING, YOUR HONOR.            10:26

16             KEITH JACOBY REPRESENTING CARTER BRYANT.

17             THE COURT:  GOOD MORNING.

18             WE'RE ON CALENDAR FOR MATTEL'S MOTION FOR LEAVE TO

19   AMEND THE COMPLAINT IN THE -9059 MATTER, WHICH WAS THE FIRST OF

20   THE TWO MATTERS FILED HERE.                                 10:26

21             THE COURT HAS REVIEWED ALL OF THE PAPERS AND

22   SUBMISSIONS.

23             MR. QUINN, I GUESS THE PRIMARY ISSUE I'D LIKE TO

24   ADDRESS IS THE ISSUE THAT YOU RAISE ABOUT THE FACT THAT WE

25   DON'T HAVE A SCHEDULING ORDER IN THIS CASE.  AND THAT NEEDS TO  10:26

```
1    BE RECTIFIED.  AND I'VE BEEN TRYING TO THINK CONCEPTUALLY OF
2    WHAT'S THE BEST WAY TO STRUCTURE THESE TWO CASES.
3              TO MY WAY OF THINKING, THE FIRST ISSUE THAT WOULD BE
4    MOST HELPFUL TO RESOLVE, I THINK, WOULD BE THE OWNERSHIP OF
5    BRATZ; WHO OWNS BRATZ; WHETHER IT IS MATTEL OR WHETHER IT IS      10:27
6    MGA AND BRYANT; WHO OWNS BRATZ?
7              THAT SEEMS TO BE THE GRAVAMEN OF THE -9059 CASE.
8              NOW, THE -2727 CASE, YOU HAVE ALL OF THE VARIOUS
9    COMMERCIAL DISPUTES WHICH STEM FROM THAT, BUT IN LARGE MEASURE,
10   ONCE WE ESTABLISH THE OWNERSHIP OF BRATZ, IT WOULD SEEM THAT      10:27
11   MANY OF THOSE ISSUES MIGHT FALL INTO LINE.
12             WHAT YOU'RE PROPOSING TO AMEND THE -9059 CASE WITH,
13   AS YOU BASICALLY CONCEDE IN YOUR PAPERS, IS ALSO A DEFENSE TO
14   THE -2727 CASE.  AND I GUESS TO MY WAY OF THINKING, WHY ISN'T
15   THIS BETTER BROUGHT OR MORE CLEANLY BROUGHT AS AN AMENDED         10:27
16   ANSWER AND COUNTERCLAIM ON THE -2727 CASE, INSTEAD OF
17   COMPLICATING WHAT OTHERWISE WOULD BE A FAIRLY STRAIGHTFORWARD
18   -9059 CASE ADDRESSING THE OWNERSHIP ISSUES?
19             SO THAT'S KIND OF WHERE I'M GOING AT THIS POINT,
20   BECAUSE A LOT OF THE ISSUES AND TERMS -- AND I'LL ADDRESS         10:28
21   THESE, CERTAINLY, WITH THE DEFENSE AND GIVE THEM AN
22   OPPORTUNITY -- THE PREJUDICE ON THE DELAY, THE VARIOUS OTHER
23   FACTORS, I THINK, RULE PROBABLY IN FAVOR OF ALLOWING THE
24   AMENDMENT.  BUT THE FACTOR THAT'S REALLY STOPPING ME OR HOLDING
25   ME UP FROM DOING THAT WOULD BE THE WAY THIS KIND OF COMPLICATES   10:28
```

1    HOW I SEE THE STRUCTURE OF THIS CASE GOING FORWARD.

2         IF YOU WOULD ADDRESS THAT PRIMARY ISSUE, I'D

3    APPRECIATE IT, AND THEN I'LL CERTAINLY HEAR FROM THE DEFENSE AS

4    WELL.

5         MR. QUINN:  YES, YOUR HONOR.                          10:28

6         THE COURT:  DID MY QUESTION MAKE SENSE?

7         MR. QUINN:  YES, THE QUESTION DID MAKE SENSE, YOUR

8    HONOR.

9         I THINK IT IS TRUE THAT THERE ARE ELEMENTS OF THE

10   PROPOSED AMENDED COMPLAINT WHICH WOULD BE IN THE DEFENSE, WOULD  10:28

11   BE IN THESE CONSOLIDATED PROCEEDINGS IN ANY EVENT, WITH RESPECT

12   TO THE COMPLAINTS THAT MGA FILED.  BUT THAT'S NOT TRUE OF ALL

13   OF THE CLAIMS.

14        IT'S PARTICULARLY TRUE WITH RESPECT TO THE TRADE

15   SECRETS CLAIM, WHICH REALLY WOULD COME UP BY WAY OF DEFENSE TO  10:29

16   MANY OF THE THINGS THAT MGA ALLEGES.

17        BUT I THINK AT THE CORE, I WOULD SAY THERE'S TWO

18   BASIC PROBLEMS WITH TRYING TO SIMPLY BIFURCATE THE CASE, AND I

19   DON'T MEAN THAT IN A TECHNICAL SENSE.

20        THE COURT:  I UNDERSTAND.                             10:29

21        MR. QUINN:  THERE'S TWO ISSUES; FIRST, THE BASIC

22   ISSUE OF COPYRIGHT INFRINGEMENT, WHICH IS THE CORE ISSUE

23   RELATING, OBVIOUSLY, TO BRATZ.  AND BOTH CARTER BRYANT AND MGA,

24   IF THE AMENDMENT WERE ALLOWED, WOULD BE DEFENDANTS TO THAT

25   COPYRIGHT INFRINGEMENT CASE; SO THAT'S GOING TO -- T'S         10:29

1   IMPOSSIBLE JUST TO BIFURCATE THE CASE AND FOCUS SIMPLY ON

2   OWNERSHIP.  WE HAVE TO INCLUDE COPYRIGHT INFRINGEMENT.

3            MAYBE THAT IS PART OF WHAT THE COURT HAD IN MIND IN

4   TERMS OF OWNERSHIP.

5            THE COURT:  LET ME ASK YOU ABOUT YOUR COPYRIGHT          10:30

6   INFRINGEMENT CLAIM.

7            WHAT IS YOUR PRIMARY ARGUMENT?  IS IT THAT

8   CARTER BRYANT WAS EXPOSED AT MATTEL TO INFORMATION THAT HE THEN

9   TOOK AND COPIED AT MGA?  OR WHAT MATERIAL IS IT THAT HE WAS

10  EXPOSED TO?  IS IT THE TEEN TOONS?                              10:30

11           MR. QUINN:  YOUR HONOR, THE FOCUS OF THE COPYRIGHT

12  INFRINGEMENT CLAIM IS REALLY ON THE BRATZ -- CERTAIN DRAWINGS

13  THAT MR. BRYANT HIMSELF CREATED FOR THE DOLL WHILE HE WAS

14  WORKING FOR MATTEL AND WHILE HE WAS A PARTY TO A CONTRACT WITH

15  MATTEL WHERE HE AGREED THAT ANYTHING OF THAT NATURE WHICH HE    10:30

16  CREATED WHILE HE WORKED FOR MATTEL WOULD BE OWNED BY MATTEL.

17  SO WHOLLY APART FROM -- AND I'M -- PUTTING COMPLETELY ASIDE THE

18  ISSUE OF WHETHER HE MAY HAVE BEEN EXPOSED TO OTHER THINGS THAT

19  INSPIRED HIM.  THAT MAY WELL TURN OUT TO BE THE CASE.  BUT WHAT

20  WE ARE ALLEGING AT CORE, YOUR HONOR --                         10:31

21           THE COURT:  YOU TOLD ME THE LAST TIME, HOWEVER, THAT

22  THE TOONS TEEN --

23           MR. QUINN:  WE'RE NOT SUING FOR COPYRIGHT

24  INFRINGEMENT WITH RESPECT TO TOONS TEEN, THAT'S CORRECT.  THE

25  COURT'S MEMORY IS EXCELLENT ON THAT.  WE'RE STILL NOT ASSERTING 10:31

```
 1    THAT.

 2            BUT HE CREATED THESE DRAWINGS.  HE HAD A CONTRACT

 3    THAT SAID THAT ANY SUCH DESIGNS YOU CREATE, WE OWN.  YOUR

 4    HONOR, OUR POSITION IS THAT THE BRATZ DRAWINGS, THE

 5    THREE-DIMENSIONAL BRATZ PRODUCT, IS A WORK THAT IS DERIVATIVE       10:31

 6    OF THOSE DRAWINGS WHICH WE OWN.

 7            THE COURT:  SO IT'S ALSO INTERTWINED WITH THIS ISSUE

 8    OF THE OWNERSHIP OF BRATZ?

 9            MR. QUINN:  IT'S PART OF THE OWNERSHIP OF BRATZ, TO

10    BE SURE.                                                           10:31

11            BUT ALSO WHAT WE FOUND -- AND A LOT OF THIS RELATES

12    TO EVENTS --

13            THE COURT:  AND WOULDN'T, THEN, IF THE FIRST PHASE,

14    AS I DESCRIBE IT, AS A BIFURCATED TRIAL, ESTABLISHED OWNERSHIP

15    OF BRATZ IN MGA, WOULDN'T THAT UNDERMINE OR RESOLVE THE            10:31

16    COPYRIGHT ISSUES AS WELL?

17            MR. QUINN:  IF THE COURT FOUND THAT THEY WERE -- IF

18    IT WERE DETERMINED THAT HE DID NOT CREATE THESE DRAWINGS WHILE

19    HE WORKED AT MATTEL, THAT MATTEL HAD NO CLAIM TO OWNERSHIP OF

20    THE DRAWINGS, THEN IT WOULD BE HARD FOR ME TO SEE HOW A            10:32

21    COPYRIGHT CLAIM COULD BE PURSUED.

22            THE COURT:  AND CONVERSELY, IF THE COURT WERE TO

23    FIND -- IF WE ULTIMATELY FOUND THAT THEY WERE MATTEL'S, THAT

24    WOULD -- IF NOT RESOLVE, IT WOULD GO A LONG WAY IN RESOLVING

25    THE COPYRIGHT CLAIM AS WELL.                                       10:32
```

1          MR. QUINN:  I THINK IT WOULD.  THAT WOULD OBVIOUSLY

2   BE A KEY ELEMENT OF THE COPYRIGHT CLAIM.

3          THE COURT:  AGAIN, DOESN'T THIS SUGGEST HOLDING OFF

4   ON THE COPYRIGHT AND PUTTING THAT IN THAT -2727 CASE?

5          MR. QUINN:  I THINK THAT WOULD BE VERY DIFFICULT TO          10:32

6   DO, YOUR HONOR.

7          THE COURT:  WHY IS THAT?

8          MR. QUINN:  BECAUSE IT RELATES TO ISSUES THAT ARE

9   ISSUES IN THE CASE -- I MEAN, THE OWNERSHIP OF BRATZ HAS GOT TO

10  BE DETERMINED; WHEN HE CREATED THAT; WHETHER IT'S A DERIVATIVE          10:32

11  WORK.  THOSE ARE COPYRIGHTS.  THOSE WILL BE GOVERNED BY ISSUES

12  OF COPYRIGHT LAW.  AND IN THE ABSTRACT, DECIDING WHO OWNS

13  BRATZ, FIRST YOU HAVE TO DECIDE, WELL, WHAT'S BRATZ?  ARE WE

14  TALKING ABOUT THESE DRAWINGS, OR ARE WE TALKING ABOUT THE LATER

15  THREE-DIMENSIONAL EMBODIMENT WHICH IS ULTIMATELY SOLD TO THE          10:33

16  PUBLIC AS THE DOLL?

17          I DON'T SEE HOW THAT ISSUE CAN BE BIFURCATED.

18          BUT I GUESS ANOTHER ISSUE, AND PERHAPS A MORE

19  IMPORTANT ISSUE, YOUR HONOR, IS THAT SINCE THE ORIGINAL

20  COMPLAINT WAS FILED, WE HAVE FOUND -- AND THERE HAVE BEEN A          10:33

21  SERIES OF EVENTS THAT ARE SET FORTH IN THE COMPLAINT -- THAT

22  THE WHOLE EPISODE WITH RESPECT TO MR. BRYANT AND THE ORIGINAL

23  CREATION OF BRATZ WAS JUST ONE OF A SERIES OF EVENTS WHICH HAVE

24  HAPPENED.  THE ALLEGATIONS RELATING TO THE EVENTS IN MEXICO,

25  WHERE THERE WAS A WHOLESALE THEFT OF VIRTUALLY ALL OF MATTEL'S          10:34

1  INTELLECTUAL PROPERTY THAT WAS THERE, AND THE INFORMATION COMES

2  BACK TO THE UNITED STATES; THE SITUATION IN CANADA, WHERE AN

3  EMPLOYEE LEFT AND TOOK A THUMB DRIVE AND HAD ALL OF THAT

4  INFORMATION WITH HER; THE SITUATION OF MR. BRAUR, WHO TOOK WITH

5  HIM ALL OF -- VARIOUS TRADE SECRET INFORMATION, CERTAIN CONTACT    10:34

6  -- SENSITIVE CONTACT INFORMATION RELATING TO CUSTOMERS.  ALL OF

7  THAT, YOUR HONOR, IS A PATTERN OF RACKETEERING ACTIVITY.  IT'S

8  A RICO CLAIM.  AND THAT HAS TO BE ADDRESSED IN ONE PROCEEDING.

9          THERE'S A SUGGESTION IN THE OPPOSITION TO THE MOTION

10  BY MR. BRYANT THAT REALLY THIS IS UNFAIR TO HIM, FOR HIS CASE    10:34

11  TO BE PRESENTED AS PART OF THIS LARGER PATTERN OF EVENTS.

12          I THINK THE ANSWER TO THAT IS, IF THERE IS A RICO

13  CLAIM, IF THERE IS A PATTERN OF RACKETEERING ACTIVITY, IT'S NOT

14  AN ANSWER FOR ANY ONE PARTICIPANT IN THE ENTERPRISE TO SAY, I'M

15  PREJUDICED FOR THIS CASE AND MY CASE TO BE PRESENTED AS PART OF    10:35

16  THIS LARGER ENTERPRISE.  THAT'S SORT OF IN THE NATURE OF A RICO

17  CLAIM.  YOU CAN'T BIFURCATE IT.

18          THE COURT:  I UNDERSTAND.  AND I UNDERSTAND THAT

19  THESE ISSUES NEED TO BE PRESENTED AND LITIGATED.  I GUESS I'M

20  TRYING TO -- WHAT I WANT TO SEGUE INTO ULTIMATELY IS A SENSIBLE    10:35

21  SCHEDULING OF THESE MATTERS.  I DON'T WANT THESE CASES --

22  THEY'VE GONE ON FOR QUITE SOME TIME NOW, AND I KNOW THE COURT

23  HAS APPROVED A SPECIAL MASTER FOR DISCOVERY.  I HAVE A REAL

24  FEAR THAT THIS CASE IS GOING TO DRAG ON LONGER THAN IT SHOULD,

25  AND I'M TRYING TO PUT A CAP ON IT WHILE, AT THE SAME TIME,    10:35

1  CERTAINLY GIVE YOU AN OPPORTUNITY TO LITIGATE ANY ISSUES THAT

2  YOU NEED TO LITIGATE.

3          SO YOU SUGGEST THAT WE BRING THE COPYRIGHT CLAIM IN

4  THE FIRST?

5          MR. QUINN:  IT'S VERY HARD FOR ME TO SEE HOW THAT          10:35

6  GETS BIFURCATED OUT.

7          THE COURT:  HOW DO YOU PROPOSE, THEN -- EXPLAIN TO ME

8  YOUR THEORY OF HOW THESE TWO CASES SHOULD BE LITIGATED.

9          MR. QUINN:  LITIGATED OR TRIED?

10         THE COURT:  TRIED.                                          10:36

11         MR. QUINN:  BECAUSE WE DISCUSSED THIS ISSUE A LITTLE

12  BIT EARLIER --

13         THE COURT:  RIGHT.

14         MR. QUINN:  -- AND THE COURT SUGGESTED WE CAN DEFER

15  THAT TO ANOTHER DAY.                                              10:36

16         THE COURT:  AND MAYBE THAT DAY HAS ARRIVED.

17         MR. QUINN:  YOUR HONOR, ONE THING I'LL SAY IN

18  RESPONSE IS, THE COURT KNOWS THIS CASE WAS STAYED FOR A LITTLE

19  OVER A YEAR WHILE IT WAS UP IN THE NINTH CIRCUIT, AND IT'S BEEN

20  BACK AND DISCOVERY HAS BEEN PROCEEDING, IN SOMEWHAT FITS AND     10:36

21  STARTS.  THERE HAVE BEEN SOME PROBLEMS.

22         JUST, FOR EXAMPLE, THIS LAST WEEKEND, WE GOT INITIAL

23  DISCLOSURES, RULE 26 INITIAL DISCLOSURES, FROM MGA, AND WE

24  EXCHANGED THOSE DISCLOSURES.  SO IN SOME WAYS, IT'S AT AN EARLY

25  STAGE.                                                           10:36

1          IN TERMS OF WHAT THE TRIAL LOOKS LIKE, I THINK, GIVEN

2   HOW EARLY IT IS IN DISCOVERY AND WHAT NEEDS TO BE DONE, I THINK

3   IT'S MAYBE TOO EARLY FOR US TO TRY TO SHAPE OUT THE CONTOURS OF

4   THE TRIAL IN TERMS OF WHO GOES FIRST, WHETHER ONE JURY HEARS

5   ALL CLAIMS, WHETHER WE TRY TO BIFURCATE THE CLAIMS AND HAVE                10:37

6   DIFFERENT JURIES HEAR DIFFERENT CLAIMS.  I WOULD SUBMIT THAT

7   WHOLE SUBJECT IS BETTER APPROACHED FURTHER ALONG THE LINE WHEN

8   THERE'S ACTUALLY BEEN SOME FACTUAL DEVELOPMENT AND RECORD IN

9   THE MATTER.

10         I THINK IT PROBABLY WILL SHAKE OUT THAT THERE ARE                    10:37

11  SOME ISSUES THAT ARE MAYBE UNRELATED TO OTHER ISSUES AND MAYBE

12  AMENABLE TO SOME SEPARATE TYPE OF PROCEEDING, BUT AT BOTTOM,

13  ALL OF THE CLAIMS IN ONE WAY OR -- WELL, NOT ALL OF THE

14  CLAIMS -- ALMOST ALL OF THE CLAIMS IN THIS CASE IN ONE WAY OR

15  ANOTHER RELATE TO BRATZ.                                                    10:37

16         THE COURT:  I THINK THAT'S WHAT I STARTED THIS

17  CONVERSATION WITH.

18         LET ME HEAR FROM THE DEFENSE FOR A FEW MOMENTS.

19         MS. CENDALI:  THANK YOU, YOUR HONOR.

20         MR. QUINN'S ARGUMENT IS NOTABLE FOR TWO THINGS.  ONE,               10:37

21  HE ADMITS THAT THEIR COPYRIGHT CLAIM IS COMPLETELY DEPENDENT ON

22  OWNERSHIP.  AS YOU'VE HEARD, THEY'RE NOT CLAIMING THAT TOONS

23  TEEN WERE COPYRIGHTED.  THEY ALSO ARE NOT PUTTING IN -- OFTEN

24  IN A COPYRIGHT CASE, SOMEONE PUTS IN, HEY, I OWN A COPYRIGHT TO

25  SOME MATTEL WORK.  AND ALTHOUGH MATTEL HAS PRODUCED A LOT OF               10:38

1   BARBIE DOLLS OVER THE YEARS AND HAS MANY COPYRIGHT

2   REGISTRATIONS FOR THOSE, NOTABLY MATTEL CAN'T POINT TO A SINGLE

3   THING THAT MATTEL HAS CREATED THAT IT CLAIMS THAT CARTER BRYANT

4   AND MGA STOLE.  ITS ONLY CLAIM, THE ONLY COPYRIGHT REGISTRATION

5   IT'S SUING ON, ARE THE DRAWINGS OF BRATZ THAT MR. BRYANT          10:38

6   ALLEGEDLY MADE, SO IT'S A TOTALLY DEPENDENT COPYRIGHT CLAIM,

7   WHICH GOES TO YOUR REASON THAT THE OWNERSHIP ISSUES ARE WHAT

8   THEY ARE.

9        SECOND, THE OTHER THING THAT'S NOTABLE IS THAT

10  MR. QUINN CONTINUES TO DANCE AROUND THE ISSUE OF WHAT THEY'RE    10:38

11  CLAIMING.  JUDGE MANELLA BECAME FRUSTRATED BY THIS TACTIC, AS

12  YOU MIGHT BE ABLE TO SEE IN HER ULTIMATE DENIAL OF THE REMAND

13  ORDER THE SECOND TIME AROUND, IN THE SENSE THAT THEY STILL HAD

14  NOT ANSWERED YOUR QUESTION:  WHAT ARE YOU CLAIMING?  ARE YOU

15  CLAIMING THAT MR. BRYANT JUST DID THIS ON HIS OWN IN THE         10:39

16  EVENING AND THAT SOMEHOW THAT GIVES THEM THE RIGHT TO IT,

17  REGARDLESS, UNDER THEIR CONTRACT?  OR ARE YOU GOING TO TRY TO

18  BACK-DOOR A COPYRIGHT-LIKE CLAIM IN SAYING THAT HE WAS INSPIRED

19  BY TOONS TEEN?  AND NOW IT SOUNDS LIKE THEIR LATEST THEORY IS

20  DIVA STARS.                                                      10:39

21       THE COURT:  HE'S UNEQUIVOCALLY SAID THAT IT'S NOT

22  BECAUSE HE WAS INSPIRED BY TOONS TEEN.  THAT'S OFF THE TABLE.

23       MS. CENDALI:  WELL, I'M GLAD TO HEAR THAT, BUT WHAT

24  WE HAVEN'T HEARD IS WHETHER HE'S ARGUING IT WAS INSPIRED BY

25  DIVA STARS.  AND IN THE SUMMER OF 2004, 30(B)(6) REQUESTS WERE   10:39

1  SERVED ASKING THEM TO PRODUCE A WITNESS TO SPEAK ON PERSONS

2  MOST KNOWLEDGEABLE ABOUT WHETHER MR. BRYANT WAS INSPIRED BY

3  THIS SIMILARITY OR THAT SIMILARITY, OR ARE YOU CLAIMING HE

4  COPIED THIS, ARE YOU CLAIMING HE COPIED THAT.

5       THE COURT:  WHAT I THINK I JUST HEARD FROM MR. QUINN    10:40

6  WAS THAT THE COPYRIGHT CLAIM IS PRIMARILY BASED ON DRAWINGS

7  THAT MR. BRYANT DID WHEN HE WAS AT MATTEL AND THEN TOOK

8  THOSE -- THAT PURSUANT TO THE CONTRACT BETWEEN BRYANT AND

9  MATTEL, THAT WHEN HE WENT AND REPRODUCED THOSE AS BRATZ DOLLS,

10  THAT THAT ALL OF A SUDDEN BECAME A COPYRIGHT VIOLATION.      10:40

11       MS. CENDALI:  THAT MUCH IS CLEAR.  BUT WHAT ISN'T

12  CLEAR IS WHETHER THEY INTEND TO ARGUE THAT MR. BRYANT WAS

13  INSPIRED BY SOMETHING HE SAW AT MATTEL THAT WE HAVEN'T GOTTEN A

14  CHANCE TO --

15       THE COURT:  HE LEFT SOME WIGGLE ROOM OPEN ON THAT      10:40

16  ONE.

17       MS. CENDALI:  THAT'S RIGHT.  AND THAT'S BEEN THE

18  NATURE OF DISCOVERING THEIR POSITIONS TODAY, IS THEY HAVE

19  CONTINUED TO, THROUGHOUT THIS CASE, INITIALLY SAY, WELL, WE

20  DON'T KNOW IF IT'S WORTH 75,000, WE DON'T KNOW IF BRATZ ARE AT   10:40

21  STAKE, WE'RE NOT ASSERTING COPYRIGHT.  THE EXHIBITS TO THE

22  TORRES DECLARATION THAT -- NO MORE THAN 25 TIMES DID THEY SAY,

23  OH, WE'RE CERTAINLY NOT ASSERTING COPYRIGHT INFRINGEMENT IN

24  THIS CASE.  AND NOW HERE'S WHERE THEY ARE.

25       THE COURT:  LET ME SHIFT THE TRACK ON YOU FOR A       10:41

SECOND, COUNSEL, AND GET TO THE MOTION THAT'S BEFORE THE COURT
RIGHT NOW.

THERE HAS BEEN DELAY IN BRINGING THIS, BUT
ULTIMATELY, I HAVE TROUBLE SEEING THE PREJUDICE.  THE
SPOLIATION OF EVIDENCE STRIKES THE COURT, AFTER LOOKING AT ALL
OF THE EVIDENCE THAT YOU HAVE SUBMITTED IN SUPPORT OF YOUR
ARGUMENT THERE, AS SOMEWHAT CONJECTURAL.  AT THE END OF THE
DAY, I'M NOT CONVINCED THAT I SHOULD NOT GRANT LEAVE TO ALLOW
THIS IN SOMEWHERE.  I'M NOT SURE NECESSARILY THAT IT SHOULD BE
AN AMENDED COMPLAINT.  PERHAPS, IT SHOULD BE AN AMENDED ANSWER.

I'D LIKE TO GIVE YOU AN OPPORTUNITY TO ADDRESS THE
SUBSTANCE OF THIS MOTION FIRST, AND THEN IF YOU WOULD, ADDRESS
THE COURT'S QUESTION ABOUT HOW THIS CASE, FROM YOUR
PERSPECTIVE, SHOULD BE TRIED.  IS WHAT THE COURT IS SUGGESTING
ABOUT TRYING THE ISSUE OF OWNERSHIP OF BRATZ FIRST -- DOES THAT
MAKE SENSE TO YOU OR NOT?  I'D LIKE TO HEAR ON THAT.

MS. CENDALI:  SO YOU'D LIKE ME TO ADDRESS THE MERITS
OF THEIR MOTION FIRST?

THE COURT:  THEIR MOTION.  AND THEN SEGUE INTO THE
LARGER ISSUE OF HOW WE SHOULD TRY THIS CASE.

MS. CENDALI:  OKAY.

GOING TO THE ISSUE OF THE MERITS, AS THE COURT IS
AWARE IN SOLOMON, THEY DON'T HAVE A MANDATORY RIGHT TO BE ABLE
TO AMEND.  IT'S IN THE COURT'S DISCRETION.  AND THE FOUR
FACTORS ARE UNDUE DELAY, PREJUDICE, FUTILITY, AND BAD FAITH.

1  AND THEY ARE IN THE 'OR.'  THEY'RE NOT ALL OF THEM; ANY ONE OF

2  THEM COULD SURVIVE.

3          IN THIS SITUATION, EVERY SINGLE FACTOR IS IN PLACE

4  WITH REGARD TO THEIR COPYRIGHT INFRINGEMENT AND THEIR TORTIOUS

5  INTERFERENCE CLAIMS, AT LEAST WITH REGARD TO MGA AND LARIAN.      10:42

6          LET'S TALK ABOUT UNDUE DELAY, BECAUSE AS JACKSON SAID

7  IN THE NINTH CIRCUIT, IN DETERMINING WHETHER THERE'S DELAY,

8  COURTS LOOK TO WHETHER THE MOVING PARTY KNEW OR SHOULD HAVE

9  KNOWN THE FACTS AND THEORIES RAISED BY THE AMENDMENT IN THE

10  ORIGINAL PLEADING.                                                10:43

11          SO YOU'VE GOT TO LOOK BACK AT THE ORIGINAL PLEADING.

12          AND THE AMENDMENT IS NOT VIEWED FAVORABLY WHEN THE

13  PLAINTIFF KNEW THE FACTS AND THEORIES SINCE THE INCEPTION.  AND

14  THE NINTH CIRCUIT, EVEN IN THE ACURA CASE, WENT ON TO

15  SPECIFICALLY SAY, IF SOMEBODY IS PLAYING A TACTICAL GAME IN       10:43

16  CHOOSING NOT TO DO SOMETHING, THAT'S REALLY NOT GOING TO BE

17  FAVORED.

18          NOW, LET'S LOOK AT TORRES EXHIBIT G.

19          TORRES EXHIBIT G IS THE ANONYMOUS LETTER THAT WAS

20  SENT IN AUGUST OF 2002 TO MATTEL'S CEO, BOB ECKERT.  AND THINK    10:43

21  HOW MUCH IT EXACTLY TRACKS BOTH THEIR ORIGINAL COMPLAINT AND

22  THE AMENDED COMPLAINT.

23          "I HAVE INFORMATION MATTEL SHOULD INVESTIGATE.  IN

24  2000, A MATTEL EMPLOYEE BY THE NAME OF CARTER BRYANT WAS

25  WORKING WITH MATTEL TO DESIGN DOLLS.  ONE OF THE DOLLS HE WAS     10:44

1   WORKING ON CREATING WAS THE BRATZ DOLLS."  IT GOES ON TO SAY,

2   "WHILE HE WAS WORKING WITH MATTEL AND WORKING TO CREATE THESE

3   DOLLS, HE WORKED OUT A DEAL WITH MGA THAT LET HIM COLLECT MONEY

4   IN EXCHANGE FOR THESE DOLLS BEING HIS."

5           MGA KNEW THAT CARTER WAS AN EMPLOYEE WITH MATTEL AND                    10:44

6   THAT IT WAS WRONG TO PAY HIM TO STEAL THIS PRODUCT FROM MATTEL.

7           THE COURT:  COUNSEL, I WOULD HATE TO HAVE SOMEONE

8   BRING A COMPLAINT BASED ON AN ANONYMOUS LETTER.  I MEAN, THE

9   LANGUAGE IN THE LETTER ITSELF STATES THAT THIS IS SOMETHING

10  MATTEL SHOULD INVESTIGATE.  MR. QUINN'S POSITION IS TO SATISFY                  10:44

11  THE RULE 11 REQUIREMENT.  THAT'S EXACTLY WHAT THEY DID, AND

12  THAT'S WHAT THEY HAVE BEEN DOING, AND NOW THEY'RE SATISFIED,

13  FROM THEIR PERSPECTIVE, THAT THE INFORMATION IS TRUE.

14          MS. CENDALI:  WELL, FIRST OFF, YOUR HONOR, THIS

15  LETTER IS NOT TRUE.  BUT TO BE CLEAR -- JUST TO BE CLEAR THAT                   10:44

16  MR. ECKERT DIDN'T JUST PUT IT IN A BOX, HE ASKED HIS HEAD OF HR

17  TO HAVE HIS HEAD OF SECURITY INVESTIGATE IT.  WHAT THEY DID

18  BEYOND THAT WE DON'T KNOW BECAUSE THEY REFUSE TO ANSWER

19  QUESTIONS AND TO PRODUCE A PRIVILEGE LOG ABOUT IT.

20          BUT WHAT WE DO KNOW IS, ON APRIL 27, 2004, THEY WERE                    10:45

21  ABLE TO FILE THE ORIGINAL COMPLAINT IN THIS ACTION AGAINST

22  MR. BRYANT; SO CLEARLY, THEY HAD SATISFIED THEIR DUE DILIGENCE

23  OBLIGATIONS --

24          THE COURT:  WITH RESPECT TO THAT ASPECT, RIGHT.  BUT

25  I CERTAINLY KNOW THAT O'MELVENY & MYERS WOULD NOT FILE A                        10:45

1   COMPLAINT BASED ON AN ANONYMOUS LETTER FROM SOMEBODY SUGGESTING

2   THAT THERE IS A COPYRIGHT INFRINGEMENT.

3            MS. CENDALI:  WELL, IF THEY INVESTIGATE IT AS THEY

4   SHOULD, BECAUSE THERE IS A DUTY OF INQUIRY WITH REGARD TO

5   ALLEGATIONS.  THEY WERE ON INQUIRY NOTICE AT THIS TIME.  AND          10:45

6   THEN LET'S TAKE A LOOK AT WHAT THEIR ACTUAL COMPLAINT ENDED UP

7   SAYING THAT THEY FILED AGAINST --

8            THE COURT:  COUNSEL, I UNDERSTAND.  IT SAID THE

9   SAME -- I UNDERSTAND YOUR ARGUMENT.  THERE'S NOTHING WHICH

10  REFUTES THE POSITION OF MR. QUINN THAT IT TOOK HIM THAT LONG,          10:46

11  THIS MUCH TIME, TO REASONABLY AND DILIGENTLY INVESTIGATE THIS.

12           MS. CENDALI:  BUT THIS IS THE POINT I WANT TO MAKE,

13  YOUR HONOR, AND IT'S IN PARAGRAPHS 12, 19, 23, 30, 36, AND 41

14  OF THE ORIGINAL COMPLAINT.  WHAT I'M TRYING TO SAY IS THAT THE

15  ORIGINAL COMPLAINT ALLEGED AT ITS TIME -- THOUGH IT DIDN'T NAME        10:46

16  MGA AND LARIAN BY NAME, THEY ADMITTED THAT THEY HAD A COPY OF

17  HIS CONTRACT WITH MGA.  IT SAID MGA ON IT.  IT WAS SIGNED BY

18  MR. LARIAN.  AND WHAT DID THEY SAY?

19           THEY DIDN'T JUST SAY THINGS ABOUT BRYANT.  THEY SAID

20  THAT, IN PARAGRAPH 12, "MATTEL LEARNED THAT BRYANT HAD SECRETLY       10:46

21  AIDED, ASSISTED AND WORKED FOR A MATTEL COMPETITOR, INCLUDING

22  WITH THAT LIMITATION BY ENTERING INTO AN AGREEMENT.  IN

23  ADDITION, WHILE BRYANT WAS EMPLOYED, BRYANT AND THE OTHER

24  DEFENDANTS CONVERTED MISAPPROPRIATE AND MISUSED MATTEL

25  PROPERTY."  IT GOES ON TO SAY THAT IT --                              10:47

```
 1              THE COURT:  COUNSEL, YOU DO SET THESE FORTH IN YOUR

 2    PAPERS, AND I HAVE READ THEM.

 3              MS. CENDALI:  LET ME MOVE ON.

 4              THE COURT:  PLEASE.

 5              MS. CENDALI:  I'M GOING TO TRY TO MAKE THE POINT, IS     10:47

 6    THAT WHEN YOU LOOK TO, AS THE NINTH CIRCUIT SUGGESTS, WHAT WAS

 7    SAID IN THE ORIGINAL COMPLAINT, CLEARLY IN THE ORIGINAL

 8    COMPLAINT, THEY'RE EXPRESSING THE SAME THEORIES IN THE

 9    ANONYMOUS LETTER AND THE SAME THEORY THAT THEY'RE NOW TRYING TO

10    BRING IN UNDER A DIFFERENT NAME.                                 10:47

11              AND IN TERMS OF PREJUDICE, YOUR HONOR'S QUESTION,

12    WELL, FIRST OFF, THERE'S THE UNDENIABLE PREJUDICE THAT IF THEY

13    HAD SIMPLY SAID FROM THE BEGINNING WHAT THEY WERE DOING WAS

14    THAT THEY WERE PLANNING TO GO AFTER THE RIGHTS TO BRATZ, THAT

15    THEY WERE TRYING TO CLAIM COPYRIGHT TO BRATZ, WHICH IS IN THE    10:47

16    BODY OF THE ORIGINAL COMPLAINT -- AND THEN THEY'RE SAYING THAT,

17    OH, WE DIDN'T LEARN DISCOVERY ADDITIONAL FACTS.

18              BUT, YOUR HONOR, I THINK WHEN YOU READ THIS FAIRLY,

19    YOU'LL SEE THAT THE ADDITIONAL THINGS THAT THEY LEARNED IN

20    DISCOVERY ARE JUST DETAILS, THE THEORY, THAT BRYANT WAS WORKING  10:47

21    WITH MGA WHILE HE WAS STILL AT MATTEL AND CONVERTING INTANGIBLE

22    PROPERTY.  ALL OF THAT WAS EXPRESSED HERE.  THEY'RE JUST TRYING

23    TO POINT TO DISCOVERY TO EXCUSE THE FACT THEY DIDN'T SUE MGA

24    AND LARIAN ORIGINALLY.

25              AND WHY DIDN'T THEY?                                   10:48
```

1        EVEN THE NINTH CIRCUIT ASKED THIS AT ONE POINT:

2   "WELL, WE WOULDN'T EVEN HAVE THIS COMPLICATED ARGUMENT ABOUT

3   DIVERSITY IF YOU WOULD HAVE JUST SUED MGA."  BUT FOR WHATEVER

4   REASON, THEY DIDN'T DO IT.

5        AND THE REASON THAT WE HAVE SAID, THAT THEY NEVER          10:48

6   REALLY DENIED -- THE REASON IS THAT THEY WANTED TO PURSUE STATE

7   COURT DISCOVERY, WHERE YOU DON'T HAVE TEN DEPOSITION LIMITS;

8   YOU DON'T HAVE THE SEVEN-HOUR RULE.  THEY COULD FERRET OUT A

9   CLAIM WITH REGARD TO MR. BRYANT.  WELL, AT THE SAME TIME, WHEN

10  WE TRIED TO ANTICIPATE AND ASK THEM QUESTIONS ABOUT THE          10:48

11  COPYRIGHT STUFF, THEY WOULD BE ABLE TO SAY, WE'RE NOT GOING TO

12  RESPOND TO THAT, BECAUSE WE'RE NOT TALKING ABOUT COPYRIGHT;

13  WE'RE TALKING ABOUT STATE LAW CLAIMS.  THAT RESULT HAS BEEN

14  THAT MEMORIES HAVE FADED.  THE SUPREME COURT IN CUBRIC

15  RECOGNIZES THAT, THAT THERE HAS BEEN SPOLIATION.  IT SHOULD BE   10:49

16  NOTED, LEAVING ASIDE YOUR HONOR'S COMMENTS ON THE ZOOL SYSTEM,

17  THEY HAVE DELAYED -- AS EXHIBIT K TO THE TORRES DECLARATION

18  INDICATES, THEY HAVE DELAYED THE E-MAIL DEPOSITION UNTIL

19  JANUARY 17TH.  THE DEPOSITION WAS SUPPOSED TO BE SCHEDULED LONG

20  IN ADVANCE OF THIS ARGUMENT.  AND THEY'VE PURPOSELY DELAYED     10:49

21  THAT.  SO I SUSPECT YOU'RE GOING TO BE HEARING A LOT MORE ABOUT

22  SPOLIATION.  SO WE BELIEVE THAT THERE HAS, IN FACT, CLEARLY

23  BEEN PREJUDICE.

24        BUT EVEN GOING BEYOND THAT, BEYOND THE PREJUDICE

25  POINT, THERE'S ALSO THE FUTILITY POINT.  AND THE FUTILITY        10:49

```
 1   POINT --

 2          THE COURT:  THAT'S YOUR STATUTE OF LIMITATIONS

 3   ARGUMENT.

 4          MS. CENDALI:  -- IS THE STATUTE OF LIMITATIONS.

 5          AND THERE'S TWO SEPARATE STATUTE OF LIMITATIONS       10:50

 6   POINTS.

 7          THE COURT:  I UNDERSTAND YOUR ARGUMENT ON THE STATUTE

 8   OF LIMITATIONS, COUNSEL.

 9          IS THERE ANYTHING IN ADDITION TO WHAT YOU PUT IN YOUR

10   PAPERS ON THAT?                                             10:50

11          MS. CENDALI:  WELL, THE MAIN THING IS THAT ONE OF THE

12   PURPOSES OF THE STATUTE OF LIMITATIONS IS TO PUT SOME SORT OF

13   TIME LIMIT ON THE INVESTIGATION.  WE'RE NOW IN 2007, TRYING TO

14   DEAL WITH EVENTS OF A CREATION OF A WORK IN 1998 TO 2000.

15          I GUESS ONE OF THE THINGS THAT I WANTED TO EMPHASIZE   10:50

16   WITH REGARD TO THE STATUTE OF LIMITATIONS POINT THAT ISN'T IN

17   THE PAPERS IS, ONE, THEY'VE MADE SOME ARGUMENT, 'WELL, THERE'S

18   A CONTINUING -- BECAUSE OF COPYRIGHT LAWS, YOU CAN HAVE A

19   CONTINUING INFRINGEMENT'; THAT THAT SOMEHOW MAKES THEIR ACTIONS

20   TIMELY.  BUT THE LAW, YOUR HONOR -- AND THEY PUT THIS IN THEIR   10:50

21   REPLY PAPERS -- THE LAW, YOUR HONOR, IS TO THE CONTRARY.

22          IF YOU'RE CLAIMING OWNERSHIP, OWNERSHIP IS SOMETHING

23   THAT IS TIME-BARRED.  IF YOU'RE SUING ON -- IF THEY WERE SUING

24   US FOR COPYING A BARBIE DOLL, THEN THERE MIGHT BE THE ARGUMENT,

25   WELL, WE DIDN'T SUE YOU UNTIL FIVE YEARS, SO WE CAN REACH      10:51
```

1    BACK TO --

2            THE COURT:  I UNDERSTAND YOUR ARGUMENT.

3            MS. CENDALI:  ZOOL AND FORT NOXEN CASES DEAL WITH

4    THAT.

5            BUT THE OTHER ARGUMENT THAT RELATES TO THIS, IN          10:51

6    ADDITION, ON THE STATUTE OF LIMITATIONS FRONT IS THE FACT

7    THAT -- IT ALSO RELATES TO THEIR BAD FAITH -- IS THAT THEY'RE

8    NOT JUST TRYING TO BRING WHAT WE BELIEVE ARE TIME-BARRED

9    CLAIMS, BUT THEY'RE TRYING TO DO IT UNDER THE GUISE OF

10   SUBSTITUTING THE DOE DEFENDANTS.                                10:51

11           IN OTHER WORDS, THEY KNOW THEY HAVE A STATUTE OF

12   LIMITATIONS PROBLEM, SO THEY THINK, WELL, THE WAY OF GETTING

13   AROUND THAT IS, WE PLED SOME DOES IN STATE COURT, SO WE'RE JUST

14   GOING TO NOW SUBSTITUTE MGA AND MR. LARIAN FOR THE UNNAMED

15   COMPETITORS.                                                    10:51

16           THE COURT:  AND THAT WOULD SUCCESSFULLY DEFEAT THE

17   STATUTE OF LIMITATIONS PROBLEM, IF IT WAS ALLOWED.

18           MS. CENDALI:  IT'S POSSIBLE THAT IT MIGHT.  I'D HAVE

19   TO COMPLETELY THINK THROUGH IT.  BUT THAT'S CLEARLY THEIR

20   ARGUMENT.                                                       10:52

21           BUT THE PROBLEM IS, THAT'S A COMPLETELY IMPROPER USE

22   OF DOE UNDER BOTH THE FEDERAL AND STATE RULES.  UNDER THE

23   FEDERAL LAW, RULE 15 (C) PERMITS THE RELATION BACK ONLY IN

24   CASES IN WHICH THERE HAS BEEN A MISTAKE AS TO THE PARTY WHO

25   OUGHT TO HAVE BEEN SERVED.  THAT'S CLEARLY NOT THE CASE.  THERE  10:52

1   WAS NO DOUBT AS TO WHETHER BRATZ WAS MADE BY HASBRO.  EVERYONE

2   KNEW THAT WAS THE COMPETITOR.

3       MOREOVER, THE FEDERAL RULES OF CIVIL PROCEDURE

4   REQUIRES THAT THE SUMMONS BE SERVED IN 120 DAYS.  AND YOUR

5   HONOR'S OWN STANDING ORDER SAYS WHEN CASES ARE REMOVED FROM          10:52

6   STATE COURT, THEY HAVE 120 DAYS TO SERVE THE SUMMONS OF A DOE

7   DEFENDANT.  THEY HAVEN'T DONE THAT.

8       THE COURT:  THAT'S MY ORDER.  NOT JUDGE MANELLA'S.

9       MS. CENDALI:  EXCUSE ME, YOUR HONOR.  YOUR OWN

10  STANDING ORDER, WHICH IS OPERABLE HERE.                             10:52

11      MOREOVER, AS THE RENDAL-SPORANZA (SP) CASE, 107 F.3RD

12  913, 917 INDICATES; THAT WHEN THERE'S A MISTAKE AS TO THE

13  PARTY'S LIABILITY, THAT DOES NOT RELATE BACK.  SO WHAT WE'RE

14  TALKING ABOUT HERE IS THEM ATTEMPTING TO FIND SOME ABILITY TO

15  USE THE FACT THAT THEY IMPROPERLY USED THE DOES TO BEGIN WITH       10:53

16  TO PROVIDE A CRUTCH TO THEM ON STATUTE OF LIMITATIONS.

17      BUT EVEN UNDER STATE LAW, I WANT TO POINT OUT, THE

18  STATE LAW STATUTE SECTION CALIFORNIA CODE OF CIVIL PROCEDURE

19  474, WHEN THEY DID THE DOES ORIGINALLY, THAT WAS IMPROPER,

20  BECAUSE THE STATUTE BY ITS FACE SAYS YOU HAVE TO BE IGNORANT OF     10:53

21  THE NAME OF THE DEFENDANT AT THE TIME YOU FILED IT.  HERE, THE

22  WHOLE GRAVAMEN OF THEIR CASE WAS THE CONTRACT BETWEEN

23  CARTER BRYANT AND MGA, WHICH THEY HAD, WHICH WAS SIGNED BY

24  MR. LARIAN.  THEY WEREN'T IGNORANT OF EVERYTHING.  THEY

25  TACTICALLY CHOSE TO ENGAGE IN THE CONDUCT THAT THEY DID FOR         10:54

1    THEIR OWN BENEFIT.  THEY HAD BEEN SANCTIONED IN 2003 IN THE

2    (UNINTELLIGIBLE) MATTEL HAD IN THE ROCKY MOUNTAIN CASE FOR

3    ALMOST $2 MILLION.  THEY PROBABLY DID NOT WANT TO DEAL WITH

4    FEDERAL COURT DISCOVERY, AND THEY SAW THE STATE COURT AS A WAY

5    OUT FOR THEM.                                                          10:54

6            I JUST THINK THAT THIS COURT SHOULD NOT REWARD THAT

7    KIND OF GAMESMANSHIP.  AND THE LATEST GAMESMANSHIP IS WHAT WE

8    SEE BEFORE YOU TODAY.  BECAUSE NOT ONLY DO THEY WANT TO

9    BELATEDLY AMEND THE COMPLAINT TO ASSERT THESE CAUSES OF

10   ACTION -- AND I POINT OUT -- WELL, I DIDN'T ADDRESS IT BECAUSE         10:54

11   YOUR HONOR SEEMED TO BE FAMILIAR WITH THE BRIEF -- BUT THERE'S

12   COMPLETELY NO JUSTIFICATION WITH THE TORTIOUS INTERFERENCE

13   CLAIMS AGAINST MR. RON BRAUR, WHICH WERE FILED IN -- THEY KNEW

14   HE WAS LEAVING ON SEPTEMBER 17TH OF 2004.  IT'S A TWO-YEAR

15   STATUTE FOR TORTIOUS INTERFERENCE.                                     10:55

16           BUT LEAVING THAT ASIDE IS THAT INSTEAD OF DOING THE

17   LOGICAL THING, WHICH IS, 'YOU KNOW WHAT, WE HAVE THESE CLAIMS,

18   WE WANT TO TRY TO ASSERT THEM, WE'LL BRING SOME OF THEM IN THE

19   BRYANT CASE, AND WE'LL BRING THE RICO AND THE TRADE SECRETS AND

20   THE WORLDWIDE CONSPIRACY CLAIMS IN THE AFFIRMATIVE PLACE THAT          10:55

21   MGA HAS SERVED AGAINST MATTEL.'

22           THAT WOULD HAVE BEEN THE LOGICAL THING TO DO, BECAUSE

23   THEIR CLAIMS ABOUT TRADE SECRETS MISAPPROPRIATION, WHICH I

24   CAN'T EMPHASIZE TO YOU ENOUGH, YOUR HONOR, ARE FALSE, AND --

25           THE COURT:  I SEE YOUR POSITION ON THAT.                       10:55

```
1              MS. CENDALI:  OKAY.

2              THE COURT:  WHERE DO WE GO FROM HERE, COUNSEL?  WHERE

3    DO YOU SUGGEST WE LITIGATE OR TRY THE CASE?

4              MS. CENDALI:  OBVIOUSLY, WE WOULD PREFER THAT YOUR

5    HONOR NOT GRANT THE AMENDMENT.  IF YOUR HONOR, HOWEVER, CHOOSES    10:55

6    TO GRANT THE AMENDMENT, WE THINK TWO THINGS SHOULD HAPPEN:  ONE

7    IS THAT THE AMENDMENTS THAT THEY'RE SEEKING, THE PROPOSED

8    COMPLAINT, TO THE EXTENT THAT IT PLEADS THESE TRADE SECRETS AND

9    RICO AND CURRENT COPYRIGHT INFRINGEMENT-TYPE CLAIMS, THAT ALL

10   OF THAT SHOULD BE PUT AS COUNTERCLAIMS; THEY ARE PERMITTED TO     10:56

11   AMEND THEIR COUNTERCLAIMS IN THE MGA VERSUS MATTEL CASE.

12   BECAUSE THEN, EFFECTIVELY, YOU'LL HAVE THE OWNERSHIP ISSUES

13   ABOUT WHAT HAPPENED IN 1998 TO 2000.

14             THE COURT:  SO YOU AGREE WITH THE COURT THAT THE

15   OWNERSHIP ISSUE SHOULD BE ADDRESSED FIRST?                        10:56

16             MS. CENDALI:  I DON'T KNOW IF IT SHOULD BE ADDRESSED

17   FIRST IN THE SENSE OF -- I THINK THAT YOUR HONOR WAS RIGHT IN

18   CONSOLIDATING EVERYTHING RIGHT NOW AND THESE ISSUES OF, AS WE

19   TALKED ABOUT, FADING MEMORIES AND THE LIKE.  I THINK THAT ONCE

20   SUMMARY JUDGMENT MOTIONS, WHICH I SUSPECT WILL INEVITABLY BE      10:56

21   FILED, ARE FILED AND YOUR HONOR HAS A BETTER SENSE OF THE

22   FRAMING OF THINGS -- BUT WHAT I DON'T WANT TO DO IS -- IF YOU

23   WERE TO PERMIT THEM TO AMEND THESE RECENT EVENTS OF MEXICO AND

24   CANADA AND ALL OF THE REST OF IT INTO THE BRYANT CASE, THEY

25   WOULD USE THAT, I THINK, AS A LEG UP ON BEING ABLE TO ARGUE, AS   10:57
```

```
 1   YOU HEARD MR. QUINN SAY, 'OH, IT'S ALL PART OF A PATTERN; WE
 2   WANT TO DIRTY THE WATERS; WE WANT TO MUDDY THE WATERS --'
 3           THE COURT:  WHY NOT TRY THE OWNERSHIP ISSUE FIRST?
 4           MS. CENDALI:  IT MAY MAKE SENSE TO DO THAT, YOUR
 5   HONOR.  I'D HAVE TO SPEAK, FRANKLY, TO MY CLIENT TO RECONSIDER      10:57
 6   IT.  BUT I THINK THAT WE CERTAINLY NEED TO DO DISCOVERY ON
 7   EVERYTHING.  ALL I'M SAYING IS THAT WHEN WE GET TO SUMMARY
 8   JUDGMENT, IT MAY BE CLEARER WHAT YOU WANT TO DO.
 9           I JUST DON'T THINK IT'S RIGHT FOR THEM TO BE ABLE TO
10   DO TWO THINGS; A, AMEND IT ALL, BUT, B, IF YOU'RE GOING TO         10:57
11   AMEND, IT SHOULD NOT BE PERMITTING THEM TO SUBSTITUTE THESE AS
12   THE DOE DEFENDANTS.  WE HAVE A RIGHT TO OUR STATUTE OF
13   LIMITATIONS DEFENSES.  AND, TWO, SOME OF THIS BELONGS IN THE
14   OTHER CASE.
15           THE COURT:  THE MGA CASE.                                  10:58
16           MR. JACOBY, DO YOU WISH TO ADD ANYTHING FROM
17   MR. BRYANT'S PERSPECTIVE?
18           MR. JACOBY:  VERY BRIEFLY.
19           WELL, MR. BRYANT NEVER WORKED IN CANADA, AND HE NEVER
20   WORKED IN MEXICO, AND NONE OF THE RICO PREDICATE ACTS ARE          10:58
21   ALLEGED AGAINST HIM.  SO WE AGREE WITH THE COURT THAT THESE
22   SHOULD BE PLED AS PART OF THE COUNTERCLAIM TO THE MGA
23   AFFIRMATIVE CASE AND NOT PART OF THE BRYANT CASE.  AND IT WOULD
24   CAUSE GREAT PREJUDICE, WHICH IS ONE OF THE FOUR FACTORS UNDER
25   RULE 15, IF MR. BRYANT'S CASE WAS MUDDIED BY ALL OF THESE AFTER    10:58
```

```
 1   EFFECTS.  SO WE AGREE WITH THAT COMPLETELY.

 2             THE COURT:  HOW DO YOU RESPOND TO MR. QUINN'S POINT,

 3   THOUGH, THAT -- ASSUMING THE TRUTH OF THE ALLEGATIONS, WHICH

 4   I'M ONLY DOING FOR THE PURPOSES OF THIS ARGUMENT -- THAT THAT

 5   REALLY ISN'T A DEFENSE IN THE RICO MATTER?                      10:58

 6             I MEAN, IF YOU WERE CAUGHT UP IN A RICO CONSPIRACY OF

 7   SOME SORT, THE FACT THAT YOUR CO-CONSPIRATORS ARE DOING ALL OF

 8   THESE OTHER THINGS AND THAT MAKES YOU LOOK BAD, THAT'S PART OF

 9   THE PRICE ONE PAYS.

10             MR. JACOBY:  WELL, THE PROOF IS IN THE PUDDING ON THE  10:59

11   EXHIBITS WHERE THEY ATTACH ALL OF THE E-MAILS THAT ARE PART OF

12   THE WIRE -- THE PREDICATE ACTS.  NONE OF THEM ARE TO OR FROM

13   CARTER BRYANT.  HE'S THERE IN NAME, BUT HE'S NOT THERE IN

14   REALITY.  HE'S NOT EVEN AN EMPLOYEE OF MGA.  THERE'S NO

15   QUESTION WHERE CARTER BRYANT'S ROLE IS IN THIS.  AND THE COURT   10:59

16   IS SPOT ON THAT THE JACKPOT ISSUE IS THE ISSUE OF OWNERSHIP.

17             AND WITH RESPECT, I JUST WANT TO TOUCH VERY, VERY

18   BRIEFLY ON TWO OTHER ISSUES.  WITH RESPECT TO THE BRAUR ISSUE,

19   MY LAW FIRM REPRESENTED MR. BRAUR IN THE LAWSUIT BROUGHT BY

20   MATTEL.  THAT LAWSUIT WAS BROUGHT IN STATE COURT.  IF THE COURT  10:59

21   LOOKED AT THE COMPLAINT IN THE BRAUR LAWSUIT, THE ALLEGATIONS

22   ARE ALMOST IDENTICAL TO THE ALLEGATIONS THAT ARE IN THIS

23   AMENDED COMPLAINT, AND MATTEL IS JUST REPACKAGING THEM HERE IN

24   THIS LAWSUIT, AGAIN TO TRY TO MUDDY THE WATERS AGAINST

25   CARTER BRYANT.  THEY WOULDN'T HAVE THE TEMERITY TO NAME          10:59
```

1   MR. BRAUR BECAUSE THEY DISMISSED THAT LAWSUIT.  THE DEMURE WAS

2   SUSTAINED.  IT WENT UP ON APPEAL.  THEY DIDN'T AMEND.

3         AND WITH RESPECT TO THE COPYRIGHT, ONE OF THE RULE 15

4   FACTORS IS BAD FAITH.  AND I MUST SAY THAT WHEN IT WAS ABOUT

5   50 DEGREES HOTTER OUTSIDE, WE ALL STOOD HERE AND MR. QUINN AND      11:00

6   MR. ZELLER SAID CARTER BRYANT HAS NOTHING TO FEAR; THERE IS NO

7   COPYRIGHT CLAIM THAT HE HAS TO FEAR.  THEY PUT IT IN THEIR

8   PAPERS.  IN THEIR POST-SUPPLEMENTAL BRIEFS, THEY WROTE THAT

9   THERE IS NO ACTUAL CONTROVERSY AND, HENCE, NO CASE OF

10  CONTROVERSY AS TO THE COPYING CLAIM, BECAUSE MATTEL HAS NEVER       11:00

11  EVER THREATENED, LET ALONE TAKEN ANY SUCH COPYRIGHT ACTION.

12  YES, THE FOCUS WAS ON TOONS TEEN, BUT WE TALKED ABOUT OTHER

13  MATTEL WORK.

14        HERE WE ARE SEVEN MONTHS LATER, AND CARTER BRYANT IS

15  BEING SUED FOR COPYRIGHT.  AND THAT'S PREJUDICE.  THAT IS           11:00

16  PREJUDICE.  AND THE STATUTE OF LIMITATIONS ARGUMENT IS WHERE

17  THE PREJUDICE LIES.  AND STATUTE OF LIMITATIONS ARE A TRICKY

18  BUSINESS; THEY'RE CRUEL BUT FAIR.  AND HERE WE ARE IN 2007, SIX

19  AND A HALF YEARS AFTER THIS PRODUCT WAS AT THE MARKET, AND HE'S

20  BEING SUED FOR COPYRIGHT, SOMETHING THEY SWORE UP AND DOWN TO       11:00

21  JUDGE MANELLA, TO JUDGE ALLERCON, TO THE NINTH CIRCUIT, THAT IT

22  WASN'T GOING TO HAPPEN BECAUSE THE CASE DIDN'T EVEN BELONG IN

23  FEDERAL COURT.  AND THAT COUNTS AND THAT SHOULD BE CONSIDERED

24  BY THIS COURT.

25        THE COURT:  THANK YOU, COUNSEL.                               11:01

```
 1          MR. QUINN, I'LL ALLOW YOU TO RESPOND BRIEFLY.

 2          I THINK I UNDERSTAND YOUR ARGUMENTS.

 3          MR. QUINN:  THE RECORD IS THAT WE NEVER REPRESENTED

 4   THAT THERE WOULD NEVER BE A COPYRIGHT INFRINGEMENT CLAIM.  IN

 5   FACT, MR. JACOBY REQUESTED US TO ENTER INTO A STIPULATION THAT      11:01

 6   THERE WOULD BE NO CLAIM OF COPYING OF ANYTHING, AND WE SAID,

 7   'NO, WE CAN ONLY DO IT AS TO COPYRIGHT WITH RESPECT TO TOONS

 8   TEEN.'

 9          MR. JACOBY IS MISTAKEN ABOUT THE PREDICATE ACTS

10   REGARDING MR. BRYANT.  IF THE COURT LOOKS AT EXHIBIT C, THE         11:01

11   PROPOSED AMENDED COMPLAINT, THERE ARE SPECIFIC E-MAILS THAT ARE

12   TO CARTER BRYANT WHICH ARE ALLEGED TO BE USE OF THE WIRES IN

13   CONNECTION WITH MAIL FRAUD.  WE ALSO HAVE E-MAILS THAT WE CAN

14   ADD TO THAT THAT ARE FROM CARTER BRYANT.  WE ALSO PLEAD

15   VIOLATIONS OF THE TRAVEL ACT AND COMMERCIAL BRIBERY BY             11:01

16   CARTER BRYANT.  WE HAVE PLED, WE BELIEVE, A CLAIM OF A RICO

17   VIOLATION TO WHICH MR. BRYANT IS A DEFENDANT, AND HOW THAT GETS

18   BIFURCATED AND HAVE SEPARATE RICO DEFENDANTS SEPARATELY TRIED,

19   I DON'T KNOW.  I DON'T THINK THAT'S THE WAY TO TRY THAT TYPE OF

20   ISSUE.                                                             11:02

21          I THINK BOTH -- FROM WHAT I HEAR FROM MGA, BOTH MGA

22   AND MATTEL ARE IN AGREEMENT THAT IT IS PERHAPS PREMATURE FOR

23   THE COURT TO TRY TO MAKE DECISIONS NOW ABOUT EXACTLY WHAT THE

24   TRIAL WILL LOOK LIKE IN THIS CASE.

25          THE COURT:  WE NEED TO SET SOME KIND OF -- I'M JUST         11:02
```

```
 1   NOT GOING TO ALLOW THIS CASE TO GO ON INDEFINITELY.  THERE'S

 2   GOT TO BE A TIME FRAME, EVEN IF THAT TIME FRAME IS SOMEWHAT

 3   ARTIFICIAL IN THE SENSE THAT WE DON'T KNOW EXACTLY WHAT IT'S

 4   GOING TO LOOK LIKE AT TRIAL.  BUT THERE NEEDS TO BE AN END IN

 5   SIGHT.                                                          11:02

 6           MR. QUINN:  I UNDERSTAND, YOUR HONOR.  AND AS I

 7   INDICATED, WE JUST EXCHANGED INITIAL DISCLOSURES, SOMEWHAT

 8   SURPRISINGLY.  WE JUST -- AND I WON'T GET INTO THE BACKGROUND

 9   ON THAT, BUT WE JUST --

10           THE COURT:  IT'S PROBABLY BEST THAT YOU DON'T.         11:03

11           MR. QUINN:  -- INITIAL DISCLOSURES LAST FRIDAY AND

12   OVER THE WEEKEND.

13           WHAT I WOULD SUGGEST, YOUR HONOR, IS THAT COUNSEL BE

14   ORDERED TO CONFER WITH RESPECT TO A PROPOSED SCHEDULE, WHICH

15   PRESUMABLY WOULD INCLUDE A STATUS CONFERENCE AT SOME POINT DOWN 11:03

16   THE ROAD, AFTER THE PARTIES HAVE COMPLETED RULE 26 REQUIREMENTS

17   AND FILED A REPORT, AND THAT WE THEN COME BACK TO THE COURT AND

18   SEE IF WE CAN REACH AN AGREEMENT ON THE SCHEDULE.

19           THE COURT:  WELL, LET ME RULE ON THIS MOTION HERE,

20   WHICH, I THINK, WILL LARGELY SHAPE WHERE THE CASE GOES FROM     11:03

21   HERE.  AND I AM GOING TO CONSIDER SUGGESTIONS FROM BOTH SIDES

22   ON THIS, AND WE'LL GO FROM THERE.  I'LL TRY TO GIVE YOU AS MUCH

23   GUIDANCE AS I CAN.

24           MR. QUINN:  THANK YOU, YOUR HONOR.

25   / / /
```

1

2

3                              CERTIFICATE

4

5    I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
6    THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
     ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
7    CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

8

9

     _____          _____
10   THERESA A. LANZA, RPR, CSR                         DATE
     OFFICIAL COURT REPORTER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25