1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Mattel, Inc.

9                UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11                      EASTERN DIVISION

12 | CARTER BRYANT, an individual,     | CASE NO. CV 04-9049 SGL (RNBx)
   |                                    | Consolidated with
13 |           Plaintiff,               | Case No. CV 04-09059
   |                                    | Case No. CV 05-02727
14 |     vs.                            |
   |                                    | **DISCOVERY MATTER**
15 | MATTEL, INC., a Delaware           |
   | corporation,                       | [To Be Heard by Hon. Edward Infante
16 |                                    | (Ret.)
   |           Defendant.               | Pursuant to Order of December 6, 2006]
17 |                                    |
   |                                    | [PUBLIC REDACTED]
18 | AND CONSOLIDATED                   | DECLARATION OF MELISSA GRANT
   | ACTIONS                            | IN SUPPORT OF MATTEL, INC.'S
19 |                                    | MOTION TO COMPEL PRODUCTION
   |                                    | OF DOCUMENTS BY MGA IN
20 |                                    | RESPONSE TO MATTEL'S FIFTH SET
   |                                    | OF REQUESTS PRODUCTION OF
21 |                                    | DOCUMENTS AND THINGS

22                                       Hearing Date:  April 11, 2008
                                         Time:          9:00 a.m.
23                                       Place:         Telephonic

24                                       **Phase 1:**
                                         Discovery Cut-off:     January 28, 2008
25                                       Pre-trial Conference:  May 5, 2008
                                         Trial Date:            May 27, 2008
26

27

28

I, Melissa Grant, declare as follows:

1. I am a member of the bar of the State of California and an associate at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel"). Except as set forth herein, I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2. MGA and Isaac Larian have repeatedly represented to the Discovery Master that they have already produced "ample" and "sufficient" financial information, which they claim falls into broad categories, such as "audited and unaudited quarterly and annual statements," "annual reports," "general ledgers," and "various other MGA financial reports." They also claim Larian recently produced documents purportedly "showing [his] net worth, gross income and its sources, and pertinent banking information." Opp. at 13. As shown herein, MGA's claim that the financial information it has produced renders Mattel's Fifth Set of Requests for Production of Documents and Things ("Document Requests") (of which a true and correct copy is attached as Exhibit 1) duplicative, cumulative, unduly burdensome, and overbroad, is wrong. Opp. at 10-13. The financial and corporate information that MGA and Larian have produced to date—along with the deposition testimony of Larian and MGA's Vice President of Taxation and Rule 30(b)(6) designee, Lisa Tonnu—demonstrate that the financial and corporate information responsive to Mattel's Document Requests is directly relevant to Mattel's Phase 1 claims. Mattel's review of MGA's and Larian's document productions revealed that the information Mattel seeks has either not been produced at all or is grossly insufficient. MGA's repeated representations to the Discovery Master to the contrary are unfounded.

**Summary of Mattel's Review and Findings**

3. To date, MGA has produced 4,060,962 pages of documents—nearly 3 million of which were produced since October 2007 and 490,000 of which

of which were produced in 2008 alone. When MGA produced documents, it did not identify which documents related to MGA and which related to Isaac Larian. Nor did it indicate which productions contained financial information. I, and others working with me, have spent the last few months reviewing MGA's and Larian's productions to determine what financial information they actually produced. We continue to go through those documents.

    4.    With respect to Larian's net worth, his counsel represented that documents bate-stamped MGA 3787275 – MGA 3787284 contained documents and unidentified "banking" records that purportedly are sufficient to show Larian's net worth. Attached collectively as Exhibit 2 are true and correct copies of the Declaration of Amy Park in Support of MGA Defendants' Reply in Support of their Motion to Quash Mattel, Inc.'s Subpoena to Bank of America, dated February 15, 2008 and the documents to which she referred (MGA 3787275 – MGA 3787283). Those documents consist of two typed lists of assets and liabilities of Isaac and Angela Larian for 2006 and 2007, respectively, and a list of the name of banks without accounts or addresses and a list of Bear Stearns and Merrill Lynch accounts, organized by year. The preparer or source of those lists is not identified as the pages on which they appear is without letterhead. No source data is cited or provided.

    5.    Most significantly, when Larian was asked in deposition about those documents and whether he could verify the accuracy of the financial information in them, he testified that he could not. He had not seen them before and did not know if they were accurate. Attached as Exhibit 3 is a true and correct copy of an excerpt of Isaac Larian's deposition testimony ("Larian Depo"), dated March 26, 2008, Vol. 2, 498:11-509:10. In previous deposition testimony, Ms. Tonnu testified that she did not handle Mr. Larian's personal finances and taxes, that she assembles documents for and sends them to Larian's personal accountants, Moss Adams. Attached as Exhibit 4 is a true and correct copy of an excerpt of Lisa Tonnu's deposition testimony ("Tonnu Depo") Vol. 4, 808:4-20.

6. Because the summary of Mr. Larian's net worth, prepared by persons unknown, is wrong, Mattel is entitled to the detailed information about transactions between Larian and MGA, as requested in Document Request Nos.: 12-14, 27-29, 31-32, 34-36, 40, and 42-47.

7. MGA's audited and unaudited consolidated financial statements and the "various other financial reports" and information that MGA or Larian has produced raise serious questions concerning the financial interplay between Larian and MGA. See, e.g., G/L Detail (MGA 3865982 - MGA 3866029), Transaction Journal (Tonnu Depo. Exh. 1354 (MGA 3787372 – MGA 3787397)), Concentration Account Ledger (Tonnu Depo Exh. 1355 (MGA 3787427 – MGA 3787446)), e-mail chain between Fred Larian and Isaac Larian, from Jan. 5, 2000 to Apr. 6, 2000 (MGA 37868903 – MGA 3768904); Cal. Sec'y of State LP Certificate for "Schoenborn Properties, LP" (Farhad Larian) and LLC Certificate for "16300 Roscoe Blvd., LLC" (Isaac Larian), true and correct copies of which are collectively attached as Exhibit 5; see also Tonnu Depo., Vol. IV, 802:10-807:11; 814:20-815:23; 816:8-24; 825:9-25; 828:18-828:24; 829:24-830:21; 831:1-841:24; 852:15-856:25; 858:10-858:20; 861:11-24, a true and copy of which is attached as Exhibit 6. Those documents and related deposition testimony show, among other things, adoption by MGA of an accounting "methodology" called the "Hallmark Treatment" of inventory for Larian's and wife's benefit. See E-mail message from J. Hall/I. Larian, dated Sept. 9, 2003 (MGA 1506093), a true and correct of which is attached as Exhibit 7. They also show annual, exponential increases in lease and rent payments by MGA to Larian partnerships, as well as the inexplicable salary increases discussed in Mattel's moving papers (Mot. at 5-6). See MGA's Consolidated Financial Statements for the Years Ending December 31, 1999-2001 (MGA 7341- MGA 7351); 2001-2002 (MGA 7352- MGA 7362); 2003 (MGA 1728906 - MGA 1728919); 2003-2004 (MGA 0863888- MGA 0863910); 2004-2005 (MGA 0868693 – MGA 0868706); and 2005-2006 (MGA 0868706- MGA

1 | 0868722), true and correct copies of which are attached as Exhibits 8-13,
2 | respectively. MGA should be compelled to produce documents sufficient to show
3 | any and all payments, gifts, loans, benefits given, compensation paid, dividends
4 | issued, cash advanced to, or any other transfer of anything of value to Larian, or any
5 | business affiliated with Larian, or any family member of Larian in response to
6 | Document Requests Nos. 12-14, 27-29, 31-32, 34-36, 40, and 42-47.

7 |        8.      Document Request No. 6 seeks production of MGA's general
8 | ledgers. Despite its repeated claims to the contrary, MGA has not produced detailed
9 | "general ledgers" for the crucial years of 1999 and 2000. Nor has it produced any of
10 | the underlying documentation used to create its general ledgers (such as invoices,
11 | purchasing orders, work orders, payment receipts, bank statements, cancelled
12 | checks, wire transfer receipts). That information is essential to Mattel's Phase 1
13 | claims, particularly development costs incurred and when they incurred for the
14 | development of first generation Bratz.

15 |        9.      Based on its production, MGA apparently refers to its general
16 | ledger as the "Historical Detailed Trial Balance for Year XXXX." MGA produced
17 | Historical Detailed Trial Balances for the years 2001 through 2004. See, e.g.,
18 | Historical Detailed Trial Balances for 2001 (MGA 0060868 – MGA 006093), a true
19 | and correct copy of which is attached as Exhibit 14; and Detail Trial Balance for
20 | 6/30/02 (MGA 3780454), a true and correct copy of which is attached as Exhibit 15.
21 | But the only "trial balances" produced by MGA pertaining to the years 1999 and
22 | 2000, are "Historical Trial Balance Summaries." Those summaries, as the name
23 | suggests do **not** itemize or provide any detail for each expenditure incurred in the
24 | respective year. In fact, the accuracy of the Trial Balance Summary for 2000 is
25 | suspect, as a number of the entries listed do not balance—particularly the entries
26 | listed for MGA's general account at Union Bank. Attached collectively as
27 | Exhibit 16 are true and correct copies of Historical Trial Balance Summaries for
28 | 1999 and 2000 (MGA 3765665 - MGA 3765682).

10. In addition, the ledgers that MGA produced are insufficient in that they contain **no** Bratz-specific information and **no** specific information regarding individual vendor cost incurred and product development. Without this information, Mattel's ability to present its Phase 1 claims will be prejudiced. For example, according to the financial records and table included in the appraisal of MGA performed by Ernest Dutcher, MGA incurred costs for doll molds in 1999 and 2000, but not in any prior year. Attached as Exhibit 17 is a true and correct copy of the Declaration of Ernest Dutcher, dated January 9, 2005 (MGA 3809919-380951); (see "Five Year Comparative Income Statement" "Expenses: "Molds" and "Fixed Asset Appraisal – Owned – Molds & Tooling" (MGA 3808887; MGA 3808895). MGA's Historical Detailed Trial Balances for 1999 and 2000 should contain the detailed information as to precisely what molds were made in those years, who made them, and whether they were for Bratz dolls. Those molds may relate to the development of Bratz. But MGA has not produced the Historical Detailed Trial Balances for 1999 and 2000, nor any of the underlying documentation. MGA should be compelled to produce those general ledgers and the underlying documentation.

11. The "bank information" produced by Larian and MGA, either by agreement or pursuant to Orders compelling production of records reflecting transactions between and among MGA and Larian or any of his affiliated businesses, family members, and/or officers, directors, or shareholders in MGA (See supra, Exh. 4) is insufficient. The information produced does not include specific bank information—including a statements of accounts, cancelled checks, wire transfers, expense reports, receipts, dividend distribution records, payment vouchers, documentation of salary; shareholder records, or any other the documentation responsive to Document Request Nos. 8, 14, 29-30, 40-41, and 45-47.

12. MGA produced dozens of copies of various named and unnamed spreadsheets and "check" rosters, covering miscellaneous months—not an entire

year. Those documents appear to have been created by MGA, but they do not appear on pages with letterhead or otherwise indicate who created them or whether they were created in the normal course of business. The words "autodated, autotimed, and autofiled" appears on most of those documents—so that it is impossible to confirm the date the documents were created or where in MGA's systems the file is stored—and were produced in disjointed segments that Mattel has been forced to assemble. See, e.g., Miscellaneous Check Ledgers (MGA 4045405-MGA 4045414; MGA 4045069 – MGA 4045178; MGA 0069277- MGA 0069279; MGA 4045278- MGA 4045301), true and correct copies of which are collectively attached as Exhibit 18. The documents also do not identify or attach any source data or underlying documentation for each entry, and fail, in all but two cases, to identify the bank account and account number to which each entry corresponds. See, e.g., Miscellaneous Cash Flow Ledgers for State Street Bank Acct. (MGA 3850732 – MGA 3850743) and for two Bank of America Accts. (MGA 3850744 – MGA 3850753; MGA 1639506 – MGA 1639585), true and correct copies of which are attached as Exhibits 19 and 20, respectively. Document Request Nos. 13-39, and 42-47 seek bank statements and documents sufficient to show MGA's capitalization since 1999, as well as any and all payments, gifts, loans, dividends, distributions, or transfers of value of any kind to Larian or any of his business, his family members, and the officers, directors, and shareholders in MGA and its subsidiaries. MGA should be compelled to produce those documents.

13.     The only actual MGA "bank records" that were produced were produced by Union Bank (not MGA) pursuant to subpoena. And, as the attached summary prepared by Mattel of that production reveals, beginning in September 2000, MGA received $3 million more in wire transfers than it had previously received in a given month, and wire transferred that same amount out. A Attached as Exhibit 21 is a true and correct copy of that summary. In October 2000, MGA received $8 million more in wire transfers and again transferred that amount

out. This progression of wire transfers in and out of MGA's Union Bank account continued for the next few months. But because MGA has not produced its Historical Detailed Trial Balance for 2000 or any of the underlying documentation, let alone wire transfer receipts, the source of these funds and their use cannot be determined. MGA signed its agreement with Bryant in September 2000 and was in the midst of developing Bratz. MGA should be compelled to produce those documents in response to Document Requests Nos. 8, 14, 45-47.

14. Mattel has also been able to learn from random information contained in various documents produced to date that MGA banks with at least a dozen financial institutions and appears to conduct Bratz business with them. Attached as Exhibit 22 is a true and correct copy of an index prepared by Mattel of MGA banks and whatever related account information Mattel was able to glean from the documents identified on the index. See, e.g., Cash Balance Report as of 3/21/05 (the only such report produced) (MGA 1513313 - MGA 1513314, a true and correct copy of which is attached as Exhibit 23. Of particular note is the fact that MGA Mauritius banks both at Wells Fargo and at "Mauritian Offshore Banks," that MGA Hong Kong banks at various banks in Hong Kong, and that MGA has had loans through the Beal Bank and Congress Financial. Attached collectively as Exhibit 24 are true and correct copies of miscellaneous documents and deposition testimony evidencing MGA's use of such banks (MGA 3473739 – MGA 3473745; Larian Art Attacks Depo., dated 12/15/2005, 184:19-185:14 (MGA 37008653 – MGA 37008654); Notation re Beal Bank and Aghdas Larian Loans (MGA 1506083); e-mail exchange between S. Lee and F. Larian, dated from Jan. 31, 2001 to Feb. 6, 2001) (MGA 3850336 – MGA 3850338). In addition, MGA apparently has a payroll, tax, sweep, and deposit accounts at Union Bank. MGA also engaged US Bancorp as an investment advisor in 2002 and asked them to determine the value of MGA and Bratz at the time—information that is clearly relevant and discoverable. Attached collectively as Exhibit 25 are true and correct copies of e-

mail exchanges between Larian and US Bancorp (MGA 1002883 – MGA 1002884; MGA 1513312 – MGA 1513314; MGA 1002868; MGA 0142904). Nevertheless, MGA has produced none of the bank records pertaining to any of the banks listed on the index. Nor has it produced records reflecting US Bancorp's valuation of MGA or the documentation that MGA submitted to US Bancorp for its use in arriving at its evaluation.

15. Thus, MGA should be compelled to produce the actual bank records for the banks identified in Exhibit 22, as well as verifiable financial information and the valuation information or presentations that MGA provided such financial institutions as US Bancorp in response to Document Request Nos. 8, 14, 29-30, 40-41, and 45-47 in response to Document Requests 8, 14, 45-47.

16. MGA has produced audited consolidated financial statements, unaudited statements of operations and miscellaneous unaudited profit and loss statements. But it has not produced comprehensive and verifiable unaudited "profit & loss" statements for the crucial years of 1999 through 2001 and has only produced summaries for 2002-2004. Attached collectively as Exhibit 26 are true and correct copies of the P&L Summaries (MGA 0148754 - MGA 0148809; MGA 1693235 – MGA 1693280; MGA 1628423 – MGA 1628449). In addition, documents prepared in February 2004 by Deloitte & Touche (D&T), MGA's auditors, regarding the years of 1999 to 2002, raise serious questions concerning the sufficiency, accuracy, and/or reliability of MGA Entertainment, Inc.'s internal financial and accounting records—particularly during the years when Bryant created Bratz and MGA developed and launched Bratz. Attached collectively as Exhibit 27 are true and correct copies of those documents (MGA 1728901 – MGA 1728905; MGA 1728920 – MGA 1728942). And the "vast amounts of historical financial information" on which MGA also relies consists in large part of duplicates or grossly insufficient documents. Again, most appear on paper without letterhead and contain a note in the footer that reads "autodated" "autotimed" and "autofiled,"

1  rendering it impossible to determine who created the document, when it was created,
2  whether it was created in the regular course of business or for purposes of this
3  litigation, and where the document exists in MGA's files. Most of the financial
4  information is contained in spreadsheets produced in disjointed segments that Mattel
5  has been forced to assemble. Accordingly, MGA should be compelled to produce
6  its financial spreadsheets in their native format and the underlying source data and
7  reports, particularly detailed general ledgers for the years 1999 and 2000.

8    17. Our review of the documents and financial information produced
9  to date also revealed that MGA Mauritius and other foreign subsidiaries and
10 affiliates of MGA Entertainment have, at various times since 2002, owned the
11 licensing rights to first generation Bratz dolls and products as well as Bratz-
12 derivative products. In addition, at varying times, they controlled and/or financed
13 the development, production, and sale of Bratz (in whole or in part), and that they
14 maintained separate books and accounts. See Tonnu Depo. Vol. 1, 47:14-112:24
15 and Depo. Exh. 515 (handwritten diagram of MGA corporate structure), a true and
16 correct copy of which is attached as Exhibit 28; see also miscellaneous documents
17 regarding MGA Mauritius and MGA corporate structure (MGA 3848822 – MGA
18 3848827; MGA 3848828 – MGA 3848833; MGA 1480182 – MGA 1480185; MGA
19 2089384 – MGA 2089388; MGA 4374522 – MGA 4374527; MGA 3396397 –
20 MGA 3396405).

21   18. MGA has not produced any of the information sought on
22 corporate formation, governance, shareholder interests and distributions, or the
23 rights and interests that its subsidiaries have in Bratz, including the wholly separate
24 financial records and accounts that other documents and deposition testimony show
25 they maintain. Nor has it produced documents sufficient to determine MGA's
26 subsidiaries' rights and ownership interests in Bratz and their Bratz development,
27 licensing, and sales activities—which other documents and deposition testimony
28

1 | deposition show exist. Such information was specifically sought by Document
2 | Request Nos. 1-3, 6, 8-11, 19-27, and 29-47 and should be compelled.
3 |       19.   Without the documents sought by the Document Request at
4 | issue, Mattel's ability to prosecute its Phase 1 claims will be severely prejudiced.
5 |
6 |       I declare under penalty of perjury under the laws of the United States
7 | that the foregoing is true and correct.
8 |       Executed this 10th day of April, 2008, at Los Angeles, California.

Melissa Grant

07209/2467513.1

-11-
GRANT DECLARATION ISO MOTION TO COMPEL RE FIFTH SET OF REQUESTS FOR PRODUCTION