**EXHIBIT 16**



CALENDARED



ENTERED
CLERK, U.S. DISTRICT COURT

JAN 12 2006

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION          BY DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(D).

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT,

        Plaintiff,

v.

MATTEL, INC.,

        Defendant.

and related actions.

CASE NO. CV-04-9049-SGL

(Consolidated with cases CV-04-9059 and CV-05-2727)

ORDER REGARDING MATTEL'S MOTION FOR LEAVE TO AMEND

    This case has, increasingly, become one of the proverbial tail wagging the proverbial dog.

    Back in April, 2004, Mattel, Inc., ("Mattel") filed a complaint in Los Angeles County Superior Court against its former employee and the reputed creator of the BRATZ dolls, Carter Bryant. The complaint pressed five separate state-law theories relating to certain agreements Bryant signed while an employee with Mattel, namely, an Employee Confidential Information and Inventions Agreement ("Inventions Agreement") and a Conflict of Interest Questionnaire ("COI Questionnaire"). Although couched in state law terms and ostensibly pled as a simple employment action, lurking beneath the allegations in the complaint was whether Bryant had either misappropriated Mattel's intellectual property or

EXHIBIT 16
PAGE 528

1-12

1    resources in creating and/or developing the BRATZ dolls or whether he continued
2    to develop his BRATZ design while still working in Mattel's employ. In either event,
3    the rights to the BRATZ dolls could become the property of Mattel, either through
4    infringement or through operation of the agreements noted above. The case was
5    later removed to this Court and was assigned the case number CV-04-9059. MGA
6    Entertainment, Inc. ("MGA"), the maker of the BRATZ doll line, then intervened "to
7    protect its rights to Bratz dolls" that were at stake in the action. Mattel, Inc. v.
8    Bryant, 446 F.3d 1011, 1012 (9th Cir. 2006); see also id. at 1013 ("Mattel argues, 'a
9    significant risk of prejudice' to MGA [exists] if the ownership of rights to intellectual
10   property, i.e., the Bratz creations, were decided in the absence of MGA").

11           In the interim, Bryant filed a declaratory judgment action in this Court,
12   seeking for the Court to declare that his BRATZ doll creations did not infringe
13   Mattel's copyright in its Toon Teens products. See Court's July 18, 2006, Order at
14   3 (noting that, although "Bryant's complaint . . . makes reference to 'other Mattel
15   products,' . . . the substance of his allegations all address the product 'Toon
16   Teens'"). The declaratory judgment action was assigned the case number CV-04-
17   9049.

18           MGA then filed an action against Mattel in this Court broadening the scope
19   of the controversy beyond that concerned with the ownership rights to the BRATZ
20   doll line. MGA's complaint asserted various Lanham Act claims and their California
21   state law equivalent arising out of Mattel's alleged "habitual and unfair tactics of
22   competition-by-intimidation and serial copycatting of MGA's products." (Compl.
23   ¶ 7). In essence, although the prior actions were concerned with ownership in the
24   rights to the BRATZ doll line, the allegations in 05-2727 concerned whether there
25   had been unlawful efforts to block the marketing of those rights in the BRATZ dolls.
26   MGA's complaint did make mention of other products that were affected by Mattel's
27   alleged predatory business practices, but by far the largest portion of its complaint
28   concerned Mattel's conduct in undermining (or seeking to undermine) MGA's rival

2

EXHIBIT 16
PAGE 529

line of BRATZ dolls.[1]

By Order dated June 19, 2006, the Court consolidated all three cases "for all purposes" as they "involve[d] a number of common issues of law and fact." As the Court later noted in its August 10, 2006, Order: "At its heart, this case asks the question: Who owns the rights to the Bratz dolls?" Resolution of this question lies at the heart of or, at the very least, affects many of the other claims set forth in each of the three respective cases. For instance, even though the allegations in 05-2727 concern Mattel's alleged efforts at defeating the marketing of the BRATZ dolls, resolution of who owned the rights to the BRATZ dolls could serve to moot many of those allegations. It is hard to imagine how it is unlawful for a company to thwart or otherwise undermine the marketing of a product it owns. Thus, if Mattel owned the rights to the BRATZ dolls, many of the allegations in the 05-2727 complaint would become moot. That said, such consolidation did not do away with the distinctions that do exist between the three cases. As the Court highlighted in its consolidation order, when either party files a pleading in the case, "the first paragraph of [that] document . . . shall inform the Court to which case(s) the document relates."

On July 18, 2006, the Court dismissed Bryant's declaratory judgment action, 04-9049, finding there existed no reasonable apprehension of an imminent copyright infringement claim being filed against him by Mattel based on Mattel's Toon Teen intellectual property. See Court's July 18, 2006, Order at 4. The Court's Order was predicated entirely upon counsel for Mattel's representation during oral argument that it "will not maintain that Bratz infringes the copyright in Toon Teens." Owing to this representation, the Court, in dismissing the declaratory judgment action, made clear that any future "claim by Mattel of copyright

---

[1] That the marketing of the BRATZ dolls lies at the heart of the issues between the rival doll makers in the 05-2727 case is best illustrated by the Court's discussion of those allegations in its August 26, 2005, Order, Granting in Part and Denying Part Mattel's Motion to Strike portions of MGA's complaint.

1   infringement based on the Toon Teens product is barred by counsel's
2   representation." July 18, 2006, Order at 4.

3      Presently before the Court is Mattel's request for leave to file an amended
4   complaint in the 04-9059 action. The complaint broadens considerably the nature
5   of the action from its genesis in state court. Whereas before the complaint simply
6   sought to litigate alleged contractual and fiduciary breaches by Bryant while in the
7   employ of Mattel (no doubt geared toward procuring a legal basis for Mattel to lay
8   claim to the BRATZ doll line), the amended complaint adds five more defendants
9   and nine new legal claims, alleging a wide range of commercial disputes between
10  the rival doll makers that spans three countries. For instance, the amended
11  complaint now contains RICO claims, a misappropriation of trade secrets claim,
12  and various aiding and abetting claims all stemming from allegations that MGA
13  cherry-picked certain high-ranking Mattel executives in foreign markets (many also
14  named as defendants in the amended complaint) or designers (namely, Bryant),
15  and then enticed or encouraged those same individuals to steal various trade and
16  proprietary secrets (be it sales plans, sales projections, customer profiles, or
17  intellectual property) from Mattel and hand them over to MGA before going to work
18  at MGA.

19      Moreover, the amended complaint expands upon the existing breaches of
20  contract and fiduciary duty claims in the original complaint by expanding the
21  universe of former employees (namely, the cherry-picked executives) to whom
22  those claims now apply.

23      Finally, Mattel now makes plain what was always lurking in its original
24  complaint — a copyright claim, but one directed not only to Bryant but also to MGA,
25  MGA's Hong Kong subsidiary, and MGA's President and CEO Isaac Larian.
26  Moreover, Mattel characterizes its copyright claim somewhat differently from that at
27  issue in Bryant's declaratory relief action: "The Amended Complaint does not
28  include a claim for infringement of copyrights in Toon Teens, but rather

4

EXHIBIT ..

PAGE

EXHIBIT 16
PAGE 531

1  infringement of copyrights in Bratz." (Reply to MGA Opp. at 11). Toward that end,

2  Mattel has recently filed copyright registrations with the U.S. Copyright Office

3  claiming ownership in various BRATZ doll design drawings penned by Bryant.

4  A.    ANALYSIS

5  Federal Rule of Civil Procedure 15(a) provides that, once a responsive

6  pleading has been served, "a party may amend the party's pleading only by leave of

7  court or by written consent of the adverse party; and leave shall be freely given

8  when justice so requires." With no consent to Mattel's proposed filing proffered by

9  MGA and Bryant, determining whether to grant Mattel leave to file an amended

10  complaint is gauged by looking to the familiar formulation of factors set forth by the

11  Supreme Court in Forman v. Davis:

12

13  > In the absence of any apparent or declared
> reason—such as undue delay, bad faith or dilatory

14  > motive on the part of the movant, repeated failure to
> cure deficiencies by amendments previously allowed,
> undue prejudice to the opposing party by virtue of

15  > allowance of the amendment, futility of amendment,
> etc.—the leave sought should, as the rules require, be

16  > 'freely given.' Of course, the grant or denial of an
> opportunity to amend is within the discretion of the

17  > District Court, but outright refusal to grant the leave
> without any justifying reason appearing for the denial is

18  > not an exercise of discretion; it is merely abuse of that
> discretion and inconsistent with the spirit of the Federal

19  > Rules.

20  371 U.S. 178, 182 (1962).

21  MGA and Bryant offer the following reasons for denying Mattel leave to

22  amend: (1) Mattel has long known of the factual predicates underlying its copyright

23  and intentional interference claims but delayed in asserting them; (2) the proposed

24  amendment to add the copyright claim and the intentional interference claims

25  (against the new defendants) are futile because they are barred by the applicable

26  statute of limitations; (3) the copyright claim had been brought in bad faith by Mattel

27  because of its prior public disavowal of an intent to assert such a claim; and (4)

28  MGA and Bryant would incur undue prejudice were the copyright claim added to the

5

EXHIBIT 16
PAGE 532

EXHIBIT

PAGE

1  suit because of alleged spoilation of evidence issues involving Mattel's ZEUS
2  computer system used by doll designers at Mattel and its e-mail system. None of
3  these arguments are persuasive.

4      1.    Awareness of Factual Predicate for Copyright and Intentional
5           Interference Claims

6  MGA argues that Mattel has long known about the factual predicate for its
7  recently added copyright claim, observing that, "[o]ver four years ago, in August
8  2002, Mattel CEO Bob Eckert received an anonymous letter stating that Bryant
9  created the project that became the 'Bratz' dolls — and worked with MGA to 'steal'
10  that project — while still employed at Mattel." (MGA Opp. at 9). Similarly, MGA
11  argues that Mattel has long known of the factual predicate for its intentional
12  interference claim with respect to Bryant's contract given that, "[b]y Mattel's own
13  admission, it learned in November 2003 — more than three years ago — that
14  Bryant had signed a contract with MGA 'dated as of a month prior to his final day at
15  Mattel." (MGA Opp. at 11-12).

16  At the outset it must be observed that "[m]ere delay in proffering an
17  amendment does not justify denying leave to amend." Sierra Club v. Union Oil Co.
18  of California, 813 F.2d 1480, 1493 (9th Cir. 1987), vacated on other grounds by,
19  485 U.S. 931 (1988), and reinstated by, 853 F.2d 667 (9th Cir. 1988). Seizing upon
20  this point of law, Mattel argues that "only in . . . cases" when "granting leave would
21  require discovery to be reopened after summary judgment motions have been filed"
22  has the Ninth Circuit found the denial of leave "justified" based on the passage of
23  time alone. (Reply to MGA Opp. at 3). That is incorrect. There is a line of cases
24  from the Ninth Circuit finding that, if a "party seeking amendment knows or should
25  know of the facts underlying the amendment when the original complaint is filed,
26  the motion to amend may be denied." Sierra Club, 813 F.2d at 1493 (citing Jordan
27  v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982)). And, recently, the
28  Ninth Circuit upheld the denial of leave to amend based on the passage of time

6

EXHIBIT 16
PAGE 533

1  even though the requested leave to amend was tendered <u>before</u> the time, as set

2  forth in a Rule 16(b) pre-trial scheduling order, for amending pleadings had expired.

3  See <u>AmerisourceBergen Corp. v. Dialysist West, Inc.</u>, 465 F.3d 946 (9th Cir. 2006).

4  The Ninth Circuit observed that, even when a request for leave to amend is timely

5  under a Rule 16(b) schedule for pretrial motions, the district court may nonetheless

6  still deny the request based on any of the <u>Forman</u> factors. <u>Id.</u> at 951-52. The Ninth

7  Circuit then noted that the issue of untimeliness (regardless of whether the

8  amendment is tendered "within the period of time allotted by the district court in a

9  Rule 16 scheduling order") in seeking to amend can constitute a justification for

10  denying leave to amend if "the moving party knew or should have known the facts

11  and theories raised by the amendment in the original pleading." <u>Id.</u> at 953.

12  Toward that end, the Ninth Circuit observed that "an eight month delay between the

13  time of obtaining a relevant fact and seeking a leave to amend is unreasonable."

14  <u>Id.</u> In this regard, the Ninth Circuit in <u>Dialysist</u> was unpersuaded by the fact that,

15  even though the moving party had known of the facts prompting the amendment for

16  a long period of time, there still remained eight more months of discovery for the

17  parties to marshal facts against the allegations raised by the amended pleading:

18  "Even though eight months of discovery remained, requiring the parties to scramble

19  and attempt to ascertain whether the Procrit purchased by AmerisourceBergen was

20  tainted, would have unfairly imposed potentially high, additional litigation costs on

21  Dialysist West that could have easily been avoided had AmerisourceBergen

22  pursued its 'tainted product' theory in its original complaint or reply." <u>Id.</u> Thus,

23  absent "a satisfactory explanation" for the delay in amending the complaint, the

24  Court is well within its rights to deny leave to amend. <u>Id.</u>

25       Mattel proffers the following reasons for taking the time that it did before

26  presenting its amended complaint: (1) Acting out of an abundance of caution to its

27  obligations under Rule 11 to present "factual contentions [that] have evidentiary

28  support," Mattel waited until its claims were better supported by evidence

7

EXHIBIT 16
PAGE 534

1  uncovered in discovery; and (2) the delay in the proceedings caused by "the year-
2  long stay and the parties' prior jurisdictional disputes" have left the case still in its
3  "nascent stage." (Reply to MGA Opp. at 2, 4).

4        The first reason is not well-founded. Rule 11 specifically allows parties to
5  aver factual allegations that "are likely to have evidentiary support after a
6  reasonable opportunity for further investigation or discovery" so long as the party
7  makes clear in its pleading that its factual contentions on those points are with the
8  caveat that they are based on a good faith belief that further discovery would
9  unearth evidence to support them. See FED. R. CIV. P. 11(b)(3). Simply put, Rule
10  11 did not stand in the way of Mattel averring the factual contentions it now claims it
11  "merely suspected" as being the case based on the limited information before it.
12  Mattel could have gone ahead and made such suspected factual allegations so
13  long as it caveated those claims with the declaration that it reasonably believed that
14  those allegations would be borne out by further discovery. Perhaps the time by
15  which Mattel could have reasonably believed such allegations would be borne out
16  by further discovery occurred after the dates noted by MGA, but it is hard to fathom
17  that such materialization took three or four years to occur.

18        The second reason would have some merit to it but for the fact that the
19  information that alerted (or should have alerted) Mattel to the existence of its now
20  asserted copyright and intentional interference claims was brought to Mattel's
21  attention well before the case was stayed on May 20, 2005. The stay, therefore,
22  did not operate as an obstacle to Mattel asserting its claims; nor even if it did, the
23  stay does not explain why Mattel waited nearly six months after the stay was lifted
24  on May 16, 2006, to present those claims now.

25        All of that being said, the one thing that gives the Court pause in denying
26  leave based on the tardiness in Mattel's presentation is the lack of any evidence
27  that MGA or Bryant have been prejudiced by the delay. Delay unconnected to
28  some showing of prejudice, be it prejudice to the parties or disruption in judicial

8

EXHIBIT 16
PAGE 535

management of the case, does not suffice to deny granting leave to amend. The Ninth Circuit has noted that, "where a defendant is on notice of the facts contained in an amendment to a complaint, there is no serious prejudice to defendant in allowing the amendment" even if it is made tardily. Sierra Club, 813 F.2d at 1493. Indeed, the denial of leave was proper in the Dialysist case not simply because of the length of the delay, but because the delay itself was "detrimental" in that it would entail the opposing party to have "unfairly" incurred "potentially high, additional litigation costs" that could have been avoided if the moving party had made clear its intentions earlier. 465 F.3d at 953.

Here, as well demonstrated in Mattel's papers, it is readily apparent from the pleadings filed by MGA and Bryant in this case that both have been aware for some time of the factual predicates now underlying Mattel's copyright claim and intentional interference claim. (See MGA Opp. at 5 ("As Bryant and MGA suspected at the time of filing — and Mattel now concedes by conduct — those deceptively-pled state-law claims [in 04-9059] were copyright infringement claims all along")(emphasis added)). The parties have engaged in meaningful discovery regarding many of the facts touched upon by these new claims, be it tracking down experts in various forensic fields or taking depositions of various of the key players to those claims. In point of fact, in their papers filed with this Court before this present motion, both Bryant and MGA have made it abundantly clear that they have long suspected that a copyright infringement claim was in the offing as evidenced by Bryant's filing of the declaratory judgment action and MGA's intervention in the 05-9059 matter to protect its rights to the BRATZ dolls. Similarly, MGA and Bryant have been on notice to the facts comprising the interference claim concerning Bryant's contract as evidenced by the identity of the individuals who have been deposed by Mattel, as well as the nature of the questions posed and the testimony proffered at those depositions. MGA's argument that, with the amendments, it faces the prospect of defending "against stale claims" owing to faded memories and

9

EXHIBIT 16
PAGE 536

1   loss of documents caused by the great passage of time, (see MGA Opp. at 3, 13),
2   is diminished by the fact that (no doubt owing to the sophistication of all counsel
3   involved) discovery on these very issues have been proceeding apace by both
4   sides long before Mattel filed its proposed amendments.  This is simply not a case
5   where "additional litigation costs" will be "unfairly" visited upon Bryant and MGA by
6   allowing the proposed amendments; much of those costs have already been borne
7   by the parties for some time.

8        2.   Spoilation of Evidence

9        MGA next argues that Mattel's delay in bringing the amended complaint has
10  caused it prejudice as, in the interim, critical pieces of evidence have been or are
11  suspected of having become lost.  For instance, MGA asserts that Mattel's Rule
12  30(b)(6) witness concerning its Zeus computer system, Julia Marine, testified that,
13  "although Mattel identified and segregated its most relevant backup tapes available
14  for Zeus, Mattel allowed its tape backup system to expire the database for those
15  backup tapes, thereby eliminating all information about what was actually stored on
16  those backup tapes." (MGA Opp. at 9-10).  Information on the Zeus computer
17  system is critical because of Mattel's assertion that part of its copyright claim rests
18  on Bryant's exposure to Mattel development programs.  (First Am. Compl. ¶ 26(a)).
19  As explained by MGA: "[C]oncept data and drawings created by [Mattel] design
20  center personnel are stored on Zeus.  Thus, the electronic documents stored on
21  Zeus – which should include the metadata showing who created, edited and
22  accessed Mattel's concept drawings and designs – during the time Bryant worked
23  in the design center at Mattel is vitally important to defending against Mattel's
24  claims." (MGA Opp. at 14).  MGA's argument is neither an accurate
25  characterization of Ms. Marine's testimony nor of the nature of Mattel's exposure
26  claim.

27       Ms. Marine did not testify that the information on the backup tapes (some
28  fifty in total) was lost, but rather that Mattel no longer carried the type of hardware

10

EXHIBIT 16
PAGE 537

1   that could restore the information still found on those tapes:

2        Q.   So if you wanted to restore that 2002 backup
             tape[s] then, how would you go about doing that?

3
                  . . . .

4        A.   You need the hardware so if we don't have the
5             hardware — if [the technology used by the tape
             is] DLT we don't have the hardware and you've
6             got to buy it and — well, first you have to find a
             place to put it with adequate power which we
7             don't have in the design center.  You need to
             have a tape library.  You need to have the tape
8             drives that carried those tapes.  You need a
             server that has the capability to — that's big
9             enough to handle all of the hardware.  You need
             the software – the license for the backup
10            software[, Net Backup].  You need the disk space
             to restore it to and then you have to start reading
11            in all those tapes.

12       Q.   You said that you don't have that in the design
             center.  Do you have that hardware anywhere
13            else in the company?

14       A.   DLT? No, no.

15       Q.   At what point did you get rid of the hardware?

16       A.   Once the last backups — DLT backups expired
             so it would have been a couple years ago
17            probably.

18   (Decl. Diana Torres, Ex. K at 118-119).

19       The above testimony clearly denotes the difficulty in restoring what was on

20   Mattel's Zeus computer system during the relevant time frame, but it certainly does

21   not demonstrate that the information on those backup tapes has been "eliminated"

22   or forever lost.  Undoubtedly it will be a costly endeavor to recover that information

23   (not to mention to later search and sort through it); but to argue, as MGA does, that

24   the information is "unavailable" or "lost", (MGA Opp. at 9, 14), exaggerates its

25   plight.  Indeed, Ms. Marine's testimony indicates that the difficulty in retrieving the

26   information on the Zeus backup tapes has been present for some time (maybe

27   since 2004 or perhaps even earlier).  This is important because it undermines

28   MGA's claim that Mattel's undue delay in bringing its amended complaint will cause

11

EXHIBIT 16
PAGE 538

●                                        ●

1   it to suffer prejudice it otherwise would not have faced if the amendments were
2   brought sooner. Such prejudice has been present for years, and Mattel's failure to
3   bring its amended complaint sooner would not have changed this situation.

4          Similarly, MGA's point that access to what was on the Zeus computer
5   system is vital in demonstrating that Bryant was not exposed to or otherwise did not
6   hack the system to steal other designers work is diminshed to some extent by the
7   fact that Bryant himself testified that he did not use the Zeus computer system and
8   was "pretty much computer illiterate" while employed at Mattel. Admittedly, the
9   ability to point to information on the Zeus system backup tapes to prove that Bryant
10  did not access other designers drawings or to prove the date those drawings were
11  created by those other designers would be useful evidence to negate Mattel's
12  factual claims. Nonetheless, such evidence still would not discount other avenues
13  outside of the Zeus computer system by which Mattel could seek to prove that
14  Bryant was exposed to its copyrighted works, e.g., witness testimony that Bryant
15  saw drawings of the same posted on other designers' cubicles.

16         MGA next surmises that Mattel's e-mail records have disappeared, not
17  because it has any proof on that point, but simply because Mattel has postponed
18  the deposition of the individual most knowledgeable of Mattel's e-mail records until
19  after the hearing on Mattel's motion for leave to amend. (MGA Opp. at 10).
20  Speculation of spoilation does not suffice. That MGA's argumentation on this point
21  is nothing more than speculation is best exhibited by the evidence it has proffered
22  in support of its argument: "[I]f the sole retained backup for Zeus is no longer
23  available, it is not hard to imagine that Mattel's electronic mail archives are similarly
24  out of reach." (MGA Opp. at 15 (emphasis added)). MGA then makes much of a
25  deposition from a Mattel executive, Alan Kaye, who testified that e-mails in his
26  inbox would be automatically deleted if they had remained there for more than a
27  certain time period. (Decl. Diana Torres, Ex. H at 292-93). MGA takes from this
28  acknowledgment that Mattel has an "automatic email deletion system" that has

                                    12                    诚出牌

EXHIBIT 16
PAGE 539

1   compromised Mattel's "duty to preserve documents." (MGA's Opp. at 14).
2   Noticeably absent from MGA's argument is any evidence that the e-mails so
3   deleted from a Mattel employee's inbox are forever lost or, as is far more likely,
4   whether such information remains or is otherwise archived on some backup file on
5   Mattel's computer system. Absent concrete proof that spoilation has occurred,
6   nothing in MGA's argument forms a basis for denying Mattel its requested leave to
7   amend.

8         3.     Statute of Limitations

9         MGA next argues that Mattel's copyright and intentional interference claims
10  are futile as both are barred by the applicable statute of limitations. This argument
11  was pressed emphatically at oral argument. With respect to the copyright claim,
12  MGA argues that the applicable statute of limitations is three years, with the
13  limitations period accruing from when a party has knowledge of a violation or when
14  a reasonably diligent person would have been put on inquiry of the infringement.
15  (MGA Opp. at 16 (citing Roley v. New World Pictures, 19 F.3d 479, 481 (9th Cir.
16  1994)). MGA argues that Mattel was put on notice about its copyright claim in
17  August, 2002, upon the receipt of the anonymous letter to Mattel's CEO that Bryant
18  had stolen the idea for BRATZ while working at Mattel. Thus, according to MGA,
19  the limitations period on Mattel's claim expired in August, 2005, rendering Mattel's
20  current copyright claim stale.

21        The problem with MGA's analysis is it fails to take into account the relations-
22  back principles found in Rule 15(c), which provides that "[a]n amendment of a
23  pleading relates back to the date of the original pleading when "the claim . . . in the
24  amended pleading arose out of the conduct, transaction, or occurrence set forth . . .
25  in the original pleading," or if such relation back is otherwise permissible by the
26  state "law that provides the statute of limitations applicable to the action." By
27  MGA's own admission Mattel's copyright claim arises out of the same conduct or
28  transaction contained in the original complaint filed in April, 2004, well within the

13

EXHIBIT

PAGE

EXHIBIT 16
PAGE 540

1  applicable limitations period.[2]  (MGA Opp. at 12 ("These very same allegations

2  [contained in the original complaint] underlie the copyright infringement and

3  intentional interference contract claims Mattel now seeks to allege against MGA,

4  Mr. Larian and Bryant")).

5       MGA's statute of limitations argument with respect to the intentional

6  interference claims fares no better.  According to MGA, the applicable statute of

7  limitations is two years for an intentional interference with contract claim and Mattel

8  was aware of the facts alerting it to this claim (insofar as Bryant's contract is

9  concerned) on November 24, 2003, when it learned "that Bryant worked with MGA

10  to develop the 'Bratz' dolls prior to his last day of employment by Mattel and, hence,

11  prior to the expiration of his contractual relationship with Mattel."[3]  (MGA Opp. at 18

12  (citing Knoell v. Petrovich, 76 Cal. App.4th 164, 168 (1999)) .  Such a time line

13  would, according to MGA, mean that the applicable limitations period expired on

14  Mattel's interference with Bryant's contract claim on November 24, 2005, well

15  before Mattel sought leave to file its amended complaint.  (Id).  The problem again

16  with MGA's argument is that it ignores that through Rule 15(c) Mattel's intentional

17  interference claim would relate back to when it filed its original complaint in April,

---

[2]  The same would appear to be true — that the amendments would be timely — if the amendments related back to Mattel's answer (filed on May 13, 2005) to MGA's complaint in the 05-2727 case.

[3]  With respect to Mattel's interference with contract claim as to one of its former executives, Ron Brawer, MGA claims Mattel was put on notice of that claim on September 17, 2004, when Brawer informed Mattel that he leaving to go to work for MGA.  (MGA Opp. at 19-20).  The problem with this argument is that nothing from that simple event — Brawer's declaration of his intent to leave — in any way would apprise Mattel that MGA had encouraged Brawer to engage in nefarious conduct (the stealing of proprietary information) causing Brawer to breach his contract with Mattel that he would not do anything to help a competitor while working for them.  MGA's contention that Mattel must have known of those misdeeds in mid-September is nothing more than speculation.  Futility cannot be founded on what might or might not be the case; either a claim is futile to bring or it is not.

14

EXHIBIT 16
PAGE 541

1  2004, well before the limitations period expired.[4]

2       Accordingly, MGA's futility argument is not well-founded.

3  4.    Prior Disavowals of Asserting a Copyright Claim

4       Finally, MGA takes umbrage with the cageyness to which Mattel has taken in

5  this case as to whether or not it is asserting a copyright infringement claim against

6  it. To MGA, such ducking and weaving on Mattel's part renders its effort to now

7  bring such a copyright claim as one done in bad faith. No doubt the Court itself has

8  been subjected to Mattel's overly vague statements on this point, but in the end

9  nothing in those statements has ever foreclosed the possibility that such a claim

10 may be in the offing. Indeed, during the oral argument on Mattel's motion to

11 dismiss Bryant's declaratory judgment action, the Court pressed Mattel's counsel as

12 to whether it would assert such a copyright claim against Bryant as it is currently

13 seeking to do. The most that Mattel's counsel would proffer was that Mattel would

14 not assert a copyright claim against Bryant based on Mattel's copyright rights in

15 TOON TEENS. At that point, the Court directed the parties to engage in a meet

16 and confer based on counsel for Mattel's representation and to provide a report to

17 the Court based on those discussions. The report submitted to the Court made

18 clear that, although Mattel was willing to accede that it would not bring a copyright

19 claim based on TOON TEENS, it refused to accede to Bryant's broader request

20 that "Bryant 'never copied anything' and that no Mattel product has any 'relevance'

21 to any claim that Mattel has or ever will assert against Bryant." This by itself should

22 have dispelled any illusion either Bryant or MGA was operating under that Mattel's

23 prior statements had foreclosed any potential copyright claim against them.[5]

24

25       [4] Again the relations-back principle would also seem to render its claim timely
         if it were filed as an amended answer (the original having been filed in May, 2005) in
26       the 05-2727 case.

27       [5] MGA also argues that Mattel's effort to substitute MGA and its CEO, Isaac
28       Larian, for the "Doe" defendants listed in its original complaint is improper because
         Mattel knew of their identity when it filed the original complaint. The argument is

                                      15

EXHIBIT 16
PAGE 542

●                              ●

1      That said, Mattel's allegation in the amended complaint as to how it is
2  seeking to lay claim to the copyright in BRATZ is disconcerting. Paragraph 26,
3  subsection a, in the amended complaint alleges that Bryant "misappropriated and
4  misused Mattel property" by "using his exposure to Mattel development programs to
5  create the concept, design and name of Bratz." (First Am. Compl. ¶ 26(a)). Such
6  "exposure" could include Bryant misappropriating the Mattel design concept in
7  TOON TEENS in drawing his inspiration for the BRATZ doll. Were Mattel's
8  copyright claim so predicated it would be barred by this Court's July, 2006, Order,
9  dismissing Bryant's declaratory judgment action. Mattel was pressed on this point
10 during oral argument and conceded that such "exposure" to Mattel "development
11 programs" did not include TOON TEENS. With this representation, nothing in
12 Mattel's proposed copyright claim is barred under the rubric of bad faith.

13      5.      Judicial Economy Considerations

14     In his opposition, Bryant adds an additional reason for denying leave beyond
15 those contained in MGA's papers — the amendment would muddy the waters in the
16 04-9059 by adding "tangential" issues that would only serve to delay resolution of
17 the key issue lying at the heart of the complaint: Who owns the rights to the
18 BRATZ line of dolls. (Bryant Opp. at 2 ). Bryant notes that the case has proceeded
19 apace in moving toward resolving that issue, and the amendment would "transform

20

21 misplaced. As made clear by Mattel, California law allows a plaintiff to substitute in a
22 defendant for a "Doe" if the plaintiff was ignorant of that defendant's identity or
   ignorant of the basis for liability at the time the complaint was filed. See Miller v.
23 Thomas, 121 Cal.App.3d 440 (1981). MGA does not dispute this legal contention
   but at oral argument disputed that Mattel did not know the basis for liability against
24 itself or Mr. Larian due to the "uncanny" similarity between the allegations averred in
25 the original complaint and those now proffered against the two in the amended
   complaint. Specifically, MGA notes that the original complaint spoke of Bryant
26 working for one of Mattel's competitiors and of that employee's theft of Mattel's
   intellectual property before leaving to work for that competitior. At most, all this
27 shows is that Mattel knew that Bryant went to work for MGA, not that MGA or Mr.
28 Larian encouraged Bryant's alleged unlawful behavior recited in the original
   complaint.

16        EXHIBIT
                                                            **EXHIBIT 16**
                                                            **PAGE 543**
                 PAGE

1  what Mattel has always claimed was a straightforward employment action against
2  an individual defendant into a global commercial dispute against Mattel's primary
3  competitor, MGA," that "will last years" thereby "delay[ing]" resolution of who owns
4  BRATZ.[6] (Bryant Opp. at 2). Mattel argues that "the law does not deny leave to
5  amend because claims are 'tangential'" and then reiterates its point that some
6  showing of prejudice, namely, seeking leave after expiration of discovery, is
7  necessary. (Reply to Bryant Opp. at 3). That is not entirely correct.

8         As noted previously, the Ninth Circuit recently upheld a denial for leave to
9  amend because the amendment would have "drastically changed" the litigation,
10  even though the leave request was tendered before the time, as set forth in a Rule
11  16(b) pre-trial scheduling order, for filing a motion to amend had expired and well
12  before the discovery cut-off. See AmerisourceBergen Corp. v. Dialysist West, Inc.,
13  465 F.3d 946, 953 (9th Cir. 2006). In justifying its reasoning the Ninth Circuit cited
14  approvingly to the following statement from a well-respected treatise: "If an
15  amendment substantially changes the theory on which the case has been
16  proceeding and is proposed late enough so that the opponent would be required to
17  engage in significant new preparation, the court may deem it prejudical." Id. at 953
18  n.2 (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE,
19  FEDERAL PRACTICE AND PROCEDURE § 1487 (2nd ed. 1990)). Thus, Dialysist
20  recognized that the introduction of "different legal theories" and/or proof of
21  materially different facts well into the litigation can itself be a basis for finding
22  prejudice regardless of whether the period for discovery has expired (or is even
23  close to expiring) or the parties have already filed summary judgment motions. Id.
24  at 953-54.

25         Although the parties can safely be said to be at this point well into the

26

27         [6] Bryant also brings intricate legal arguments about the sufficiency of the
28  allegations Mattel has averred in building its RICO claims against him. Such
    considerations are best left to be resolved on a properly filed motion to dismiss.

17

EXHIBIT 16
PAGE 544

1 litigation in this consolidated action (as evidenced by the protracted discovery
2 disputes contained in the docket sheet that the parties have had before the
3 magistrate judge and now the special master, and the litigation of motions to
4 dismiss in both the 04-9049 and 04-9059 cases), the fact remains that, as Mattel
5 has made painfully clear in its papers, no scheduling order has been entered in this
6 case.[7] This takes away somewhat from the prejudice Dialysist found to exist when
7 a "drastic change [in a party's] litigation theory" takes place mid-stream in the
8 litigation process. Id. at 953. Simply put, without a schedule for the filing of pre-trial
9 motions and other matters (e.g., discovery cutoff), the parties have been given free
10 reign in how to conduct the litigation in this case.

11       That the delay in bringing the proposed amendments and the relative length
12 of time into the litigation when those amendments were brought may not neatly fold
13 into Dialysist's reasoning does not mean that leave must nonetheless be granted.
14 The 04-9059 action, as it is presently constituted, is not a complex one. It asks a
15 rather narrow and straightforward question — Did anything from Bryant's
16 employment at Mattel during the 1999-2000 period give Mattel ownership rights to
17 the BRATZ doll line? The proposed amendments would radically alter the litigation
18 in that case to include far ranging disputes involving multiple parties and concerning
19 events not connected with the BRATZ ownership issue. That the original action
20 was a relatively simple and straight-forward matter raises another point beyond the
21 change in the action's litigation posture — whether entangling the rival doll makers'
22 other commercial disputes into this particular case would serve to muddy the waters
23 and make the matter that much more difficult to manage from the Court's
24 perspective.

25
26     [7] Mattel's repeated refrain that the matter is in its nascent stage as evidenced by the fact that the parties only just recently exchanged in initial disclosures is misleading. The exchange of initial disclosures referred to by Mattel is in the 05-2727 case. With respect to the 04-9059 case it appears that such initial disclosures were completed long ago as evidenced by the fact that discovery disputes appeared in that case as far back as January, 2005.
27
28

18

EXHIBIT

PAGE

**EXHIBIT 16**
**PAGE 545**

As has long been recognized, equally important in determining whether to grant such leave is what impact such amendments would have on the court's ability to manage the case. See 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 15.15[1] at 15-42.1 to 15-43 (3rd ed. 2006)("A court should also consider judicial economy and its ability to manage the case. . . . The court should also temper the policy favoring freely granting leave to amend with consideration of the ability of the district court to manage the case adequately if amendment is allowed"). As Judge Clark for the Fifth Circuit once observed: "In keeping with the purposes of the rule, the court should consider judicial economy and whether the amendments would lead to expeditious disposition of the merits of the litigation. Finally, the court should consider whether the amendment adds substance to the original allegations, and whether it is germane to the original case of action." Chitimacha Tribe of Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982); see also Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1493 (9th Cir. 1987)("General considerations of judicial economy also justify allowing the amendments. The violations included in the proposed amendment relate to the same subject matter as the original complaint. Allowing the amendment will further the federal policy of 'wrapping in one bundle all matters concerning the same subject matter.'").

Mattel's amendments do not add substance to the claims contained in its original complaint. Rather, they would expand the universe of claims and defendants stretching well-beyond the questions raised in the original complaint over whether Bryant's conduct while in the employ of Mattel subjected his later attributed creation of the BRATZ dolls to the provisions in Mattel's Inventions Agreement or otherwise rendered his creation subject to an infringement action. Nowhere does Mattel seek to reconcile the breadth of its present amendments with the narrowness of the allegations contained in its original complaint. In fact, the precise opposite is true. Mattel acknowledges that its proposed amendments bear

19

EXHIBIT 16
PAGE 546

1   more congruity to the allegations leveled against it in MGA's Lanham Act case than

2   to those in the action to which it seeks to add them:

3           [M]any of the matters raised by Mattel's proposed
4           Amended Complaint are and will remain at issue
            because of MGA's Complaint, whether or not leave to
5           amend is granted.  MGA's claims allege that a broad
            array of purported Mattel conduct across the globe,
6           starting at least as early as 1999, has violated the
            Lanham Act and unfair competition law.  This includes
7           Mattel's alleged infringement of Bratz and other MGA
            products.  As a result, issues in the proposed Amended
8           Complaint are already part and parcel of Mattel's
            defenses to MGA's unfair competition claims, including
9           because they show that MGA and Bryant, and not
            Mattel, are ones who stole the products and other
10          properties involved.

11  (Reply to Bryant Opp. at 7 (emphasis added)).  Mattel apparently finds this

12  discongruity unimportant because "all of these matters have been consolidated with

13  the Bryant case." (Id. at 7).  As noted earlier, the fact that the cases have been

14  consolidated does not mean that the parties can ignore the distinctions that still

15  exist between them.  If, as Mattel acknowledges, the present amendments are

16  nothing more than re-formulated defenses and counterclaims it presently has to

17  MGA's complaint against it in the 05-2727 case, then such amendments should be

18  brought in the form of an amended answer and counterclaim in that case.

19          Consideration of the distinctions between the two cases is wise as it serves

20  as a useful tool in providing the Court a better means to manage the cases now

21  that they have been consolidated.  The proverbial dog (ownership in BRATZ)

22  should be wagging the proverbial tail (the remaining commercial disputes), not the

23  other way around.  Admittedly, the dog's tail has grown in size both by MGA's filing

24  of its complaint in the 05-2727 action and Mattel's response thereto through its

25  proposed amendments.  Nonetheless, it is readily apparent to the Court that the

26  crown jewel in this action still remains the ownership rights to the BRATZ dolls.  The

27  parties have engaged in extensive and undoubtedly expensive discovery on this

28  very issue (from hiring world-renowned experts to test the age of Bryant's design

                                            20

1   drawings to technically complex discovery of what is on each other's computers).

2       Indeed the separateness of the two matters is reflected in how the cases are

3   currently structured, namely, the narrowness of the issue involved in 04-9059 and

4   the expansiveness of the facts at issue in 05-2727. In light of this fact, the Court

5   believes a two-track scheduling order wherein the 04-9059 matter's discovery cut

6   off and trial date are set well-ahead of those in 05-2727 makes the most sense. As

7   noted earlier, many of the legal claims being pressed in 05-2727 will be affected by

8   the result of the litigation in 04-9059. If, for instance, Mattel does own the rights to

9   the BRATZ dolls (either owing to Bryant's stealing his idea from one of Mattel's

10  "development programs" or by way of the Inventions Agreement because he

11  continued to work on his designs while at Mattel), then large portions of MGA's

12  Lanham Act infringement claims may become moot. By the same token, if Mattel

13  does not own rights to BRATZ, then some of the defenses and counterclaims set

14  forth as independent claims in the present amended complaint may become moot,

15  including Mattel's copyright infringement claim as well as portions of its remaining

16  RICO, misappropriation, and aiding and abetting claims. If, however, the Court

17  were to allow the amended complaint to be filed in the 04-9059 action, such case

18  management would be difficult, if not impossible as many of the issues being

19  litigated in the 05-2727 case would have been poured into the 04-9059 case by the

20  amendment. Due to this substantial overlap in claims and facts, a two-track

21  scheduling order utilizing the case number distinctions would be impossible to craft.

22  When pressed by the Court at oral argument as to which of its proposed claims it

23  believed would not undermine the BRATZ ownership posture of the 04-9059 case,

24  Mattel cited to its copyright and RICO claims. However, upon further questioning

25  by the Court, counsel for Mattel acknowledged that much of those claims were, like

26  the claims at issue in 05-2727, dependent upon resolution of the ownership issue.

27      In light of the burden allowing Mattel's amendment to proceed would have on

28  this Court's ability to efficiently manage these consolidated matters denial of

21

EXHIBIT

PAGE

**EXHIBIT 16**
**PAGE 548**

1   Mattel's request to amend its complaint in the 04-9059 matter is justified. See

2   Perrian v. O'Grady, 958 F.2d 192, 195 (7th Cir. 1992)("The burden to the judicial

3   system can justify a denial of a motion to amend 'even if the amendment would

4   cause no hardship at all to the opposing party'"). Buttressing the Court's decision is

5   the fact that, even with such a denial, Mattel may file (and the Court provides leave

6   to Mattel to so file) an amended answer and counterclaim in the 05-2727 case

7   raising all the new claims and defendants presently sought to be achieved through

8   amendment of its complaint in the 04-9059 action. None of the substantive

9   concerns raised by MGA and Bryant to the present amended complaint, e.g.,

10   statutes of limitations, would appear to be affected if the new claims and

11   defendants were brought as defenses and counterclaims in the 05-2727 case as

12   opposed to the 04-9059 one.

13         Accordingly, the Court GRANTS Mattel's motion for leave to file its proposed

14   amendments, but only insofar as they are pled in the form of an amended answer

15   and counterclaim in the 05-2727 case.

16         Finally, the lack of a scheduling order in this case is problematic; one should

17   have been entered long ago. See Fed. R. Civ. P. 16(b)(noting that a scheduling

18   "order shall issue as soon as practicable but in any event within 90 days after the

19   appearance of a defendant and within 120 days after the complaint has been

20   served on a defendant"). In light of the fact that entry of a scheduling order is

21   woefully overdue in this case, the Court hereby ORDERS that a Rule 16(b)

22   scheduling conference be held in this consolidated matter on February 12, 2007, at

23   1:30 p.m. in Courtroom One. The parties are directed to file a Joint Rule 26(f)

24   report with the Court by February 5, 2007.

25         IT IS SO ORDERED.

26   DATE: _/- //- o⁷_

27

28                        STEPHEN G. LARSON
                             UNITED STATES DISTRICT JUDGE

22     EXHIBIT

EXHIBIT 16
PAGE 549

PAGE

**EXHIBIT 17**

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA - Eastern Division
CIVIL MINUTES - GENERAL

Case No.   CV 04-09059 SGL(RNBx)                     Date:  February 12, 2007
Title:     MATTEL, INC. -v- CARTER BRYANT, DOES 1-10, INCLUSIVE
           **Consolidated Action**
           CV 05-02727 SGL(RNBx)   MGA ENTERTAINMENT v. MATTEL, INC.,
============================================================================
PRESIDING: HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                          Theresa Lanza
Courtroom Deputy Clerk              Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

John B. Quinn and Michael Zeller for     Diana M. Torres for MGA
Mattel                                   Keith A. Jacoby for Carter Bryant

PROCEEDINGS:   SCHEDULING CONFERENCE PURSUANT TO FRCP 16(b)

     The Court convened a scheduling conference pursuant to FRCP 16(b).  Court and counsel
discussed case management and thereafter the court set the following schedule:  See attachment
"Schedule of Trial and Pretrial Dates."

     Counsel stipulated pursuant to Local Rule 16-14, to settlement procedure #3, to a retired judicial
officer or other private or non-profit dispute resolution body for mediation type settlement proceedings.
The Court approves the request and refers this case to an outside Mediator to act as the Settlement
Officer.  Counsel are directed to contact such outside Mediator to schedule a settlement conference as
soon as the parties believe such a conference would be fruitful. The cut-off to complete the mandatory
settlement procedures under Local Rule 16-14, is December 3, 2007, in Case No. CV 04-09059-SGL
(RNBx) Mattel, Inc. v. Carter Bryant, and the cut-off to complete the mandatory settlement procedures
under Local rule 16-14, is April 21, 2008, in Case No. CV 05-02727 SGL (RNBx) MGA Entertainment v.
Mattel, Inc.

     The Court further ordered that in both Case No. CV 04-09049-SGL (RNBx), Mattel, Inc. v. Carter
Bryant, and Case No. CV 05-02727 SGL (RNBx), MGA Entertainment v. Mattel, Inc.:

     1.   Non-Expert Depositions are limited to a total of 24 for each side for both cases.
     2.   Expert Depositions are limited to a total of 20 for each side for both cases.
     3.   Interrogatories are limited to 50 for each side for both cases.

     IT IS SO ORDERED.

MINUTES FORM 90                    FEB 2 2 07            Initials of Deputy Clerk: jh
CIVIL -- GEN                   Page 1                    00/30

     2-12-07

EXHIBIT 17
PAGE 550

## SCHEDULE OF TRIAL AND PRETRIAL DATES

CASE NAME:       CARTER BRYANT -v- MATTEL, INC., CASE NO: CV 04-09059-SGL(RNBx)

(Consolidated Case No: CV 05-2727-SGL(RNBx), MGA Entertainment, Inc. v. Mattel, Inc., et al.)

| Matter | Time | Court Order |
|---|---|---|
| Jury Trial Date | 9:30 am | 02/12/08 |
| Estimated Length of Trial | | |
| [Hearing on Motions in Limine; Hearing on Disputed Jury Instructions | 10:00 am | 02/04/08 |
| Final Pretrial Conference, LR 16-7 Motions in Limine to be filed | 11:00 am | 01/14/08 |
| Lodge Pretrial Conference Order, LR 16-6 to 16-6.2; File Contentions of Fact and Law, LR16-2.8; Exhibit & Witness Lists, LR 16-4 to 16-5; File Status Report regarding Settlement; File Rule 26(e)(1) Supplementation File Agreed Upon Set of Jury Instructions and Verdict Forms LR 49-1 to 49-2, 51-1 to 51-5.1; File Joint Statement regarding Disputed Instructions, Verdicts, etc. | | 12/31/07 |
| Last date to conduct Settlement Conference | | 12/03/07 |
| Last date for hearing motions, LR 7.2, et seq. | 10:00 am | 11/19/07 |
| Discovery cut-off | | 10/22/07 |
| Last date to Amend Pleadings or Add Parties | | Closed |

### ADDITIONAL MATTERS TO BE DETERMINED AT SCHEDULING CONFERENCE

LR 16-14.4 Settlement Selection:
to be discussed

[ ] 1. CT/USMJ                    [√] 3. Outside ADR

[ ] 2. Attorney Settlement Panel  [ ]

DOE Dismissal:          Complaint Filed: 04/13/05      SET DATE
                        Dismissal Date:                to be discussed

S:\SGL\CIVIL ORDERS\Mattel 04-09059 MO 2-12-07 wpd

EXHIBIT 17
PAGE 551

CALENDARED

RECEIVED

FEB 2 3 2007

SEND

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| MATTEL, INC., | Case No. CV 04-09059 SGL(RNBx) |
|---|---|
| Plaintiff, | SCHEDULING ORDER [FRCP 16(b)] |
| v. | 1. Establishing a Discovery Cut-off Date of October 22, 2007 |
| CARTER BRYANT, DOES 1-10, INCLUSIVE, | 2. Non-Discovery Motion Hearing Cutoff date of November 19, 2007, at 10:00 a.m. |
| Defendants. | 3. Setting Final Pretrial Conference for January 14, 2008, at 11:00 a.m. |
| | 4. Setting Jury Trial Date of February 12, 2008, at 9:30 a.m. |

**READ THIS ORDER CAREFULLY.  IT CONTROLS THE CASE**

**AND DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES.**

The above matter is set for trial before the Honorable Stephen G. Larson, United States District Judge, Courtroom 1, United States District Court, Eastern Division, 2nd Floor, Riverside, California.

DOCKETED ON CM

FEB 2 2 2007

1.    **Discovery Cut-Off:** This is the last date to complete discovery, including expert discovery, and the resolution of any discovery motions before this court.  If



EXHIBIT 17
PAGE 552

1  expert witnesses are to be called at trial, the parties shall designate experts to be called
2  at trial and provide reports required by Fed. R. Civ. P. 26(a)(B), not later than eight
3  weeks prior to the discovery cutoff date.  Rebuttal expert witnesses shall be designated
4  and reports provided as required by Fed.R.Civ.P. 26(a)(2)(B), not later than five weeks
5  prior to the discovery cutoff date.  Failure to timely comply with this deadline may result
6  in the expert being excluded at trial as a witness.  The Court requires compliance with
7  Local Rule 37-1 and 37-2 in the preparation and filing of discovery motions.  Discovery
8  motions may not be heard on an ex parte basis.

9      2.      **Joinder of Parties and Amendment of Pleadings:**  This deadline does
10  not apply if the deadline for joining parties or amending pleadings has already been
11  calendared or occurred by virtue of an order issued by another Judge.

12      In addition to the requirements of Local Rule 15-1, all motions to amend the
13  pleadings shall (a) state the effect of the amendment; (b) be serially numbered to
14  differentiate the amendment from previous amendments and (c) state the page, line
15  number(s), and wording of any proposed change or addition of material.

16      3.      **Motion Filing Cut-Off:**  The Court hears motions on Mondays at 10:00
17  a.m.  The motion filing cut-off date is the last day motions may be heard (not filed).  The
18  Court will not decide late motions.  Issues left undetermined by the passage of the
19  motion cut-off date should be listed as issues for trial in the Final Pretrial Conference
20  Order.  As an exception to the above, motions in limine dealing with evidentiary matters
21  may be heard at or before trial; however, summary judgment motions disguised as
22  motions in limine will not be heard.  Parties need not wait until the discovery cut-off to
23  bring motions for summary judgment or partial summary judgment.  However, in the
24  usual case, the court expects that more than the minimum notice will be provided to
25  counsel opposing motions for summary judgment.  In the usual case, the parties should
26  confer and agree on the date for setting such motions.

27
28

2

**EXHIBIT 17**
**PAGE 553**

1    Ex parte applications are entertained solely for extraordinary relief. See Mission
2    Power Eng. Co. v. Continental Casualty Co., 883 F.Supp. 488 (C.D. Cal. 1995). Strict
3    adherence to proper ex parte procedures is required for any ex parte application filed
4    with the Court.

5        4.   **Stipulations to Extend Time:**  Stipulations to extend the time to file any
6    required document or to continue any pretrial or trial date must set forth (a) the existing
7    due date or hearing date; (b) the current pretrial conference date and trial date; (c) the
8    specific reasons supporting good cause for granting the extension or continuance; and
9    (d) whether there have been any prior requests for extensions or continuances, and
10   whether these were granted or denied by the Court.

11       5.   **Summary Judgment Motions:**  The Separate Statement of Undisputed Facts
12   is to be prepared in a two-column format.  The left-hand column should set forth the
13   allegedly undisputed fact.  The right-hand column should set forth the evidence that
14   supports the factual statement. The fact statements should be set forth in sequentially
15   numbered paragraphs.  Each paragraph should contain a narrowly focused statement
16   of fact.  Each numbered paragraph should address a single subject in as concise a
17   manner as possible.

18       The opposing party's statement of genuine issues must be in two columns and
19   track the movant's separate statement exactly as prepared.  The document must be in
20   two columns; the left-hand column must restate the allegedly undisputed fact, and the
21   right-hand column must indicate either undisputed, or disputed.  The opposing party
22   may dispute all or only a portion of the statement, but if disputing only a portion, must
23   clearly indicate what part is being disputed.  Where the opposing party is disputing the
24   fact in whole or part, the opposing party must, in the right-hand column, label and
25   restate the moving party's evidence in support of the fact, followed by the opposing
26   party's evidence controverting the fact.  Where the opposing party is disputing the fact
27   on the basis of an evidentiary objection, the party must cite to the evidence alleged to
28

3

EXHIBIT 17
PAGE 554

1  be objectionable and state the ground of the objection and nothing more. **No**

2  **argument should be set forth in this document.**

3      The opposing party may submit additional material facts that bear on or relate to

4  the issues raised by the movant, which shall follow the format described above for the

5  moving party's separate statement. These additional facts shall follow the movant's

6  facts, shall continue in sequentially numbered paragraphs (i.e., if movant's last

7  statement of fact was set forth in paragraph 30, then the first new fact will be set forth in

8  paragraph 31), and shall set forth in the right hand column the evidence that supports

9  that statement.

10      The moving party, in its reply, shall respond to the additional facts in the same

11  manner and format that the opposition party is required to adhere to in responding to

12  the

13  statement of undisputed facts, as described above.

14      **(a) Supporting Evidence:** No party should submit any evidence other than

15  the specific items of evidence or testimony necessary to support or controvert a

16  proposed statement of undisputed fact. Thus, for example, the entire transcript of a

17  deposition, entire sets of interrogatory responses, and documents that do not

18  specifically support or controvert material in the separate statements, should not be

19  submitted in support or opposition to a motion for summary judgment. Any such

20  material will not be considered.

21      Evidence submitted in support of or in opposition to a motion should be

22  submitted either by way of stipulation or as exhibits to declarations sufficient to

23  authenticate the proffered evidence, and should not be attached to the Memorandum of

24  Points and Authorities. The Court will accept counsel's authentication of deposition

25  transcript, of written discovery responses, and of the receipt of documents in discovery

26  if the fact that the document was in the opponent's possession is of independent

27  significance. Documentary evidence as to which there is no stipulation regarding

28

4

EXHIBIT 17
PAGE 555

1   foundation must be accompanied by the testimony, either by declaration or properly
2   authenticated deposition transcript, of a witness who can establish its authenticity.

3      If evidence in support of or in opposition to a motion exceeds twenty pages, the
4   evidence must be in a separate bound volume and include a Table of Contents.

5      **(b) Objections to Evidence:** If a party disputes a fact based in whole or in
6   part on an evidentiary objection, the ground of the objection, as indicated above,
7   should be stated in the separate statement but not argued in that document.
8   Evidentiary objections are to be addressed in a separate memorandum to be filed with
9   the opposition or reply brief of the party. This memorandum should be organized **to**
10  **track the paragraph numbers of the separate statement in sequence.** It should
11  identify the specific item of evidence to which objection is made, the ground of the
12  objection, and a very brief argument with citation to authority as to why the objection is
13  well taken. The following is an example of the format contemplated by the Court:

14      Separate Statement Paragraph 1: Objection to the supporting deposition
15      transcript of Jane Smith at 60:1-10 on the grounds that the statement
16      constitutes inadmissible hearsay and no exception is applicable. To the
17      extent it is offered to prove her state of mind, it is irrelevant since her state of
18      mind is not in issue.

19      Fed. R. Evid. 801, 802.

20      Do not submit blanket or boilerplate objections to the opponent's statements of
21   undisputed fact: these will be disregarded and overruled.

22      **(c) The Memorandum of Points and Authorities:** The movant's
23   memorandum of points and authorities should be in the usual form required under
24   Local Rule 7-5 and should contain a narrative statement of facts as to those aspects of
25   the case that are before the Court. All facts should be supported with citations to the
26   paragraph number in the Separate Statement that supports the factual assertion and
27   not to the underlying evidence.

28

5

EXHIBIT 17
PAGE 556

1    Unless the case involves some unusual twist on Rule 56, the motion need
2  only
3  contain a brief statement of the Rule 56 standard;  the Court is familiar with the Rule
4  and
5  with its interpretation under <u>Celotex</u> and its progeny.  If at all possible, the argument
6  should be organized to focus on the pertinent elements of the cause(s) of action or
7  defense(s) in issue, with the purpose of showing the existence or non-existence of a
8  genuine issue of material fact for trial on that element of the claim or defense.
9    Likewise, the opposition memorandum of points and authorities should be in
10 the
11 usual form required by Local Rule 7-5, and where the opposition memorandum sets
12 forth facts, the memorandum should cite to paragraphs in the separate statement if
13 they are not in dispute, to the evidence that contravenes the fact where the fact is in
14 dispute or, if the fact is contravened by an additional fact in the statement of genuine
15 issues, the citation should be to such fact by paragraph number.
16    **(d) Timing:** In virtually every case, the Court expects that the moving party
17 will provide more than the minimum twenty-one (21) day notice for such motions.  The
18 moving party should deliver to chambers a copy of a diskette, in WordPerfect format
19 (11.0 or earlier versions), containing the Statement of Uncontroverted Facts and
20 Conclusions of Law.
21    6.   **Motions in Limine:**  The parties must file motions in limine addressing the
22 admissibility of evidence in accordance with Local Rule 7-3.  The parties shall file their
23 opposing and reply papers in accordance with Local Rules 7-9 and 7-10 respectively.
24    7.   **Pretrial Conference and Trial Setting:**  Compliance with the requirements of
25 Local Rule 16 is mandatory.  Counsel shall submit carefully prepared Memoranda of
26 Contentions of Fact and Law (which may also serve as the trial briefs) and Proposed
27 Pre-Trial Conference Order ("PTCO") in accordance with the provisions of Local Rules
28 16-2.8 through 16-6. The Proposed Pre-Trial Conference Order shall conform to the

6

**EXHIBIT 17**
**PAGE 557**

1  example set forth in Appendix A to the Local Rules, modified as necessary to comply
2  with this order.                The Memoranda of Contentions of Fact and Law, Exhibit
3  Lists, and Witness Lists shall be served and filed no later than fourteen (14) calendar
4  days before the Pre-Trial Conference. The Proposed Pre-Trial Conference Order shall
5  be lodged fourteen (14) calendar days before the Pre-Trial Conference.

6         The Proposed Pre-Trial Conference Order must contain a Table of Contents.
7  Place in all capital letters and in bold the separately numbered headings for each
8  category in the PTCO. Under paragraph 1, list each claim, counterclaim, or defense
9  that has been dismissed or abandoned. In multiple-party cases where not all claims or
10  counterclaims will be prosecuted against all remaining parties on the other side, please
11  specify to which party each claim or counterclaim is directed. The factual issues in
12  dispute should track the elements of a claim or defense upon which the jury would be
13  required to make findings. Counsel should state issues in ultimate fact form, not as
14  evidentiary fact issues (i.e., "was the defendant negligent," "was defendant's negligence
15  the proximate cause of plaintiff's injury;" not "was the plaintiff standing on the corner of
16  12th Street and Lemon Avenue at 10:00 a.m. on March 1"). Issues of law should state
17  legal issues upon which the Court will be required to rule after the Pre-Trial Conference,
18  including during the trial, and should not list ultimate fact issues to be submitted to the
19  trier of fact.

20         In drafting the PTCO, the court expects that counsel will attempt to agree on
21  and set forth as many non-contested facts as possible. The court will normally read the
22  uncontested facts to the jury at the start of the trial. Carefully drafted and
23  comprehensively stated stipulation of facts will reduce the length of trial and increase
24  jury understanding of the case.

25         If expert witnesses are to be called at trial, each party must list and identify its
26  respective expert witnesses, both retained and non-retained. Failure of a party to list
27  and identify an expert witness in the Proposed Pre-Trial Conference Order shall
28  preclude a party from calling that expert witness at trial.

7

EXHIBIT 17
PAGE 558

1          This case has been placed on calendar for a Final Pretrial Conference ("PTC")
2   pursuant to Fed. R. Civ. P. 16 and Local Rule 16-1, unless the PTC was expressly
3   waived at the Scheduling Conference by the court. Unless excused for good cause,
4   each party appearing in this action shall be represented at the PTC and all pretrial
5   meetings of counsel, by lead trial counsel. The failure to attend the PTC or to submit
6   the required pretrial documents may result in the dismissal of the action, striking the
7   answer and entering a default, and/or the imposition of sanctions.

8          A continuance of the Final Pretrial Conference at counsel's request or
9   stipulation will only be approved upon a showing of good cause. Counsel should plan
10  to do the necessary pretrial work on a schedule which will insure its completion with
11  time to spare before the Final Pretrial Conference. Specifically, failure to complete
12  discovery work, including expert discovery, is not a ground for a continuance.

13         Compliance with the requirements of Local Rules 16-1 to 16-13 is required by
14  the court. Carefully prepared Memoranda of Contentions of Fact (which may also serve
15  as the trial brief) and a proposed Final Pretrial Conference Order shall be submitted in
16  accordance with the provisions of Local Rule 16-6 and the form of the proposed Final
17  Pretrial Conference Order shall be in conformity with the format set forth in Appendix A
18  to the Local Rules.

19         At the PTC, counsel should be prepared to discuss means of streamlining the
20  trial, including, but not limited to: bifurcation, presentation of non-critical testimony by
21  deposition excerpts, stipulations as to the content of testimony, presentation of
22  testimony on direct examination by declaration subject to cross-examination, and
23  qualification of experts by admitted resumes. In certain cases where the PTC is waived
24  by the court, counsel must follow Local Rule 16-10.

25     **8.   Witness List and Times Estimates:** Counsel shall prepare a list of their
26  witnesses, an estimate of the length of time needed for direct examination for each
27  witness, and whether the witness will testify by deposition or in person. Counsel shall

28

8

EXHIBIT 17
PAGE 559

1  exchange these lists with opposing counsel.[1] **Counsel shall jointly file a single**
2  **witness list, including estimates for direct examination of their own witnesses**
3  **and estimates for cross-examination of opposing witnesses.** This list shall be filed
4  at the time counsel lodge the Proposed Pre-Trial Conference Order, i.e., fourteen (14)
5  days before the Pre-Trial Conference.

6      **9.**   **Jury Instructions and Verdict Forms:** Fourteen (14) calendar days prior to
7  counsel's Rule 16 pre-trial meeting, counsel shall exchange proposed jury instructions
8  (general and special) and special verdict forms (if applicable). Seven (7) calendar days
9  prior to the Rule 16-2 meeting, counsel shall exchange any objections to the
10  instructions and special verdict forms. Prior to, or at the time of the Rule 16 meeting,
11  counsel shall meet and confer with the goal of reaching agreement on one set of joint
12  jury instructions and one special verdict form.

13      The parties should make every attempt to agree upon the jury instructions
14  before submitting them to the Court. The Court expects counsel to agree on the
15  substantial majority of jury instructions, particularly when pattern instructions provide a
16  statement of applicable law. When the Manual of Model Civil Jury Instructions for the
17  Ninth Circuit provides a version of an applicable requested instruction, the parties
18  should submit the most recent version of the Model instruction. Where language
19  appears in brackets in the model instruction, counsel shall select the appropriate text
20  and eliminate the inapplicable bracketed text. Where California law applies, counsel
21  should use California Jury Instructions – Civil (8th ed.) ("BAJI"). If neither of the above
22  sources is applicable, counsel are directed to use the instructions from O'Malley, Grenig
23  & Lee (formerly Devitt, et al.), Federal Jury Practice and Instructions (latest edition).
24  Each requested jury instruction shall cover only one subject or principle of law and shall
25  be numbered and set forth in full on a separate page, citing the authority or source of
26  the requested instruction (except for the "clean" jury copy discussed below).

27

28     [1] See "Joint Trial Witness Estimate Form" appended to this order.

9

**EXHIBIT 17**
**PAGE 560**

1       When the parties disagree on an instruction, the party opposing the instruction
2   must attach a short statement (one to two paragraphs) supporting the objection, and
3   the party submitting the instruction must attach a short statement supporting the
4   instruction. Each statement should be on a separate page and should follow directly
5   after the disputed instruction.

6       The parties ultimately must submit one document or, if the parties disagree
7   over any proposed jury instructions, two documents. If the parties submit two
8   documents, those documents shall consist of: (a) a set of Joint Proposed Jury
9   Instructions and (b) a set of Disputed Jury Instructions, along with reasons supporting
10  and opposing each disputed instruction in the format set forth in the previous
11  paragraph.

12      The parties must file proposed jury instructions fourteen (14) calendar days
13  before the Pre-Trial Conference. If the court is closed that day, counsel shall file the
14  proposed instructions the preceding Friday. No later than 4:00 p.m. on the date such
15  instructions are due, the parties must submit conformed courtesy copies to the Court's
16  courtesy box located outside the entrance to Courtroom 1, United States District Court,
17  3470 Twelfth Street, 2nd Floor, Riverside, California. Counsel shall also provide the
18  Court with a 3½ inch diskette compatible with WordPerfect version 11.0 or lower
19  containing the proposed jury instructions, in accordance with this paragraph and the
20  previous paragraph.

21      The Court will send a copy of the instructions into the jury room for the jury's
22  use during deliberations. Accordingly, in addition to the file copies described above, the
23  diskette submitted with the jury instructions shall contain a "clean set" of Joint Proposed
24  and/or Disputed Jury Instructions, containing only the text of each instruction set forth in
25  full on each page, with the caption "Court's Instruction No. __" (eliminating titles,
26  supporting authority, indication of party proposing, etc.).

27      An index page shall accompany all jury instructions submitted to the Court.
28  The index page shall indicate the following:

10

EXHIBIT 17
PAGE 561

1     (a) The number of the instruction;

2     (b) A brief title of the instruction;

3     (c) The source of the instruction and any relevant case citations; and

4     (d) The page number of the instruction.

5     EXAMPLE:

| Number | Title | Source | Page |
|--------|-------|--------|------|
| 1 | Trademark-Defined (15 U.S.C. § 1127) | 9th Cir. 15.3.2 | 7 |

Along with the jury instructions, counsel shall submit any necessary special verdict form fourteen (14) calendar days before the Pre-Trial Conference.

**10. Voir Dire Questions:** Counsel may, but need not, submit brief proposed voir dire questions for the jury at the Pre-Trial Conference. The Court will conduct its own voir dire after consulting any proposed voir dire submitted by counsel. After the Court conducts its own voir dire, counsel will be provided an opportunity to ask supplemental questions subject to Court approval.

**11. Joint Statement of the Case:** Counsel shall submit a joint statement of the case at the Pretrial Conference. The joint statement of the case will be read to the prospective panel of jurors prior to the commencement of voir dire. The statement should not exceed one page. The statement shall be filed with the Court no later than 4:00 p.m., on the Wednesday prior to the Pre-Trial Conference.

**12. Exhibits:** The parties shall file their witness lists and exhibits lists in accordance with Local Rule 16. Counsel are to assemble their exhibits by placing them in three-ring binders labeled on the spine portion of the binder showing both the volume number and the exhibit numbers. Each exhibit shall be separated by a tabbed divider on the right side. Counsel shall provide original exhibits for the courtroom deputy clerk and a duplicate set for the judge. The original exhibits shall be tagged with the appropriate exhibit tags in the upper or lower right corner of the first page of each exhibit and include the case number, case name, and exhibit number. Each binder

11

EXHIBIT 17
PAGE 562

1  shall contain a Table of Contents. Counsel must comply with Local Rule 26-4 when
2  numbering the exhibits. The Clerk's Office, located at the United States District Court,
3  3470 Twelfth Street, Riverside, California can supply counsel with appropriate exhibit
4  tags.

5       The Court requires the following to be submitted to the courtroom deputy clerk
6  on the first day of trial: (a) The original exhibits with the Court's exhibit tags; (b) one
7  bench book with a copy of each exhibit for the Court's use, tabbed as described above;
8  (c) three (3) copies of exhibit lists and a floppy disk containing the exhibit list; (d) three
9  (3) copies of witness lists in the order in which the witnesses will be called to testify; and
10 (e) file a Notice of Lodging of Deposition Transcripts (original and 2 copies) and Lodge
11 all anticipated trial deposition transcripts directly with the deputy clerk in the courtroom.

12       All counsel are to meet no later than ten (10) calendar days before trial to
13 discuss and agree to the extent possible on issues including foundation and
14 admissibility.

15       **13. Pre-Trial Exhibit Stipulation:** The parties shall prepare a Pre-Trial Exhibit
16 Stipulation which shall contain each party's numbered list of trial exhibits, with
17 objections, if any, to each exhibit including the basis of the objection and the offering
18 party's response. All exhibits to which there is no objection shall be deemed admitted.
19 All parties shall stipulate to the authenticity of exhibits whenever possible, and the Pre-
20 Trial Exhibit Stipulation shall identify any exhibits whose authenticity has not been
21 stipulated to and the specific reasons for the party's failure to stipulate.

22       The Stipulation shall be substantially in the following form:

23                        Pre-Trial Exhibit Stipulation

24 Plaintiff's Exhibits

25 Number    Description        Objection        Response to Question

26

27 Defendant's Exhibits

28 Number    Description        Objection        Response to Question

                              12

EXHIBIT 17
PAGE 563

1

2     The Pre-Trial Exhibit Stipulation shall be filed at the same time as counsel lodges

3 the Proposed Pre-Trial Conference Order. Failure to comply with this paragraph may

4 constitute a waiver of all objections.

5     **14. Findings of Fact and Conclusions of Law:** For a non-jury trial, counsel for

6 each party shall lodge proposed findings of fact and conclusions of law fourteen (14)

7 days before trial. The parties should deliver to chambers a copy of these findings and

8 conclusions of law on disk in WordPerfect format.

9         (a)   Underline in red the portions which it disputes;

10       (b)   Underline in blue the portions which it admits; and

11       (c)   Underline in black the portions which it deems not disputed, but

12           deems irrelevant.

13     Counsel may agree with a part of a finding or conclusion, disagree with a part

14 of it and/or consider a part of irrelevant.

15     Two marked copies of opposing counsel's proposed findings of fact and

16 conclusions of law shall be lodged with the court seven (7) days before trial and one

17 marked copy shall be served on opposing counsel. Courtesy copies of the marked

18 copies shall be deposited in the drop box located outside the entrance of Courtroom 1

19 of the above-entitled court on the date due.

20     **15. Settlement:** Local Rule 16-14.2 provides that the Settlement Conference

21 shall be conducted not later than 45 days before the Pretrial Conference. The Court

22 believes that in most cases completion of all discovery and dispositive motions will help

23 the parties assess their positions before they embark on the costly pre-trial process.

24 However, in many cases, the parties find it more difficult to settle after they have

25 incurred the cost of all discovery and motion practice. Accordingly, the Court strongly

26 encourages counsel and the parties to pursue settlement earlier.

27     The Court has a keen interest in helping the parties achieve settlement. If the

28 parties believe that it would be more likely that a settlement would be reached if they

13

**EXHIBIT 17**
**PAGE 564**

1  conduct settlement conference at an earlier time than that specified by the Court, they

2  should conduct it at that time.  In any event, the parties must file a Status Report re

3  Settlement at the time they lodge the Proposed Pretrial Order.

4      The Court will not conduct settlement conferences in non-jury cases which the

5  Court will try.  In jury cases, the Court will conduct a settlement conference at the

6  parties' request if three conditions exist: (a) The parties are satisfied that the fact issues

7  in the case will be tried to a jury; (b) all significant pre-trial rulings which Court must

8  make have been made; and (c) the parties desire the Court to conduct the conference,

9  understanding that if settlement fails, the Court will preside over the trial of the case.

10     **If a settlement is reached, it shall be reported immediately to this Court as**

11  **required by Local Rule 16-14.7.**

12     16.  The failure to attend the pretrial conference or to submit timely in conformity

13  with the format set forth in this order, the jury instructions, pre-trial exhibit stipulation,

14  joint statement of the case, voir dire questions, summary of witness testimony and

15  times estimates, proposed Pretrial Conference Order or the memorandum of

16  contentions of fact and law may result in the dismissal of the action, striking the answer

17  and entering default and/or the imposition of sanctions.

18     **17.  Telephonic Status Conference:**

19     Telephonic status conferences are sometimes set by the court to discuss

20  settlement status and other pending issues.  If a telephonic status conference has been

21  set, all counsel are ordered to discuss the matter with their clients and opposing

22  counsel before the telephonic status conference.  Plaintiff's counsel must make the

23  arrangements and place the conference call.  Plaintiff's counsel shall include all counsel

24  of record and the Court on the date and time scheduled.  The conference operator is to

25  place the final call to the Court at (951) 328-4410.  To assist the Court and staff,

26  participants shall identify themselves each time they speak.  No cellular telephones or

27  speaker telephones will be allowed.

28

14

**EXHIBIT 17
PAGE 565**

1    **Internet Site**

2    Counsel are encouraged to review the Central District's website for additional

3    information. The address is "http: //www.cacd.uscourts.gov"

4

5    The courtroom deputy clerk is ordered to serve a copy of this Order by mail,

6    facsimile or e-mail on counsel for all parties to this action.

7

8    IT IS SO ORDERED.

9    Dated: ___FEB 2 1 2008___

10

11

12

13   STEPHEN G. LARSON
     UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15

EXHIBIT 17
PAGE 566

Joint Trial Witness Estimate Form

Case: _____

Trial Date: _____

| | WITNESS NAME | PARTY CALLING WITNESS AND ESTIMATE | X-EXAMINER'S ESTIMATE | DESCRIPTION OF TESTIMONY | COMMENTS |
|---|---|---|---|---|---|
| 1. | | | | | |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |
| 11. | | | | | |
| 12. | | | | | |
| Total Estimates This Page: | | | | | |

-16-

**Instructions:**
(1) List witnesses (last name first); (2) For description, be extremely brief, e.g. "eyewitness to accident." Or "expert on standard of care"(3) Use estimates within fractions of an hour, rounded off to the closest quarter of an hour. e.g. if you estimate 20 minutes, make it .25. An estimate of one and one-half hours would be 1.5. An estimate of three-quarters of an hour would be .75. (4) Note special factors in "Comments" column. e.g., "Needs interpreter." (5) Entries may be in handwriting if very neat and legible.

EXHIBIT 17
PAGE 567

**EXHIBIT 18**

Received:   2/22/07   3:32PM;                    RightFAX -> JetFax M920;   Page 2
RightFAX                   2/22/2007  3:16      PAGE 002/003      Fax Server

  

**SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  - Eastern Division
CIVIL MINUTES - GENERAL

Case No.     CV 04-09059 SGL(RNBx)                              Date:  February 12, 2007
Title:       MATTEL, INC. -v- CARTER BRYANT, DOES 1-10, INCLUSIVE
             **Consolidated Action**
             CV 05-02727 SGL(RNBx)     MGA ENTERTAINMENT v. MATTEL, INC.,
============================================================================

PRESIDING:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                                 Theresa Lanza
Courtroom Deputy Clerk                     Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:          ATTORNEYS PRESENT FOR DEFENDANTS:

John B. Quinn and Michael Zeller for       Diana M. Torres for MGA
Mattel                                     Keith A. Jacoby for Carter Bryant

PROCEEDINGS:     SCHEDULING CONFERENCE PURSUANT TO FRCP 16(b)

        The Court convened a scheduling conference pursuant to FRCP 16(b).   Court and counsel
discussed case management and thereafter the court set the following schedule:  See attachment
"Schedule of Trial and Pretrial Dates."

        Counsel stipulated pursuant to Local Rule 16-14, to settlement procedure #3, to a retired judicial
officer or other private or non-profit dispute resolution body for mediation type settlement proceedings.
The Court approves the request and refers this case to an outside Mediator to act as the Settlement
Officer.  Counsel are directed to contact such outside Mediator to schedule a settlement conference as
soon as the parties believe such a conference would be fruitful. The cut-off to complete the mandatory
settlement procedures under Local Rule 16-14, is December 3, 2007, in Case No. CV 04-09059-SGL
(RNBx) Mattel, Inc. v. Carter Bryant, and the cut-off to complete the mandatory settlement procedures
under Local rule 16-14, is April 21, 2008, in Case No. CV 05-02727 SGL (RNBx) MGA Entertainment v.
Mattel, Inc.

        The Court further ordered that in both Case No. CV 04-09049-SGL (RNBx), Mattel, Inc. v. Carter
Bryant, and Case No. CV 05-02727 SGL (RNBx), MGA Entertainment v. Mattel, Inc.:

        1.      Non-Expert Depositions are limited to a total of 24 for each side for both cases.
        2.      Expert Depositions are limited to a total of 20 for each side for both cases.
        3.      Interrogatories are limited to 50 for each side for both cases.

        IT IS SO ORDERED.

MINUTES FORM 90                    Page 1        FEB 2 2 2007        Initials of Deputy Clerk: jh
CIVIL — GEN                                                          00/30

                                                                    EXHIBIT

                                                   PAGE          **EXHIBIT 18**
                                                                 **PAGE 568**

Received:  2/22/07  3:32PM;                RightFAX -> JetFax M920;  Page 3
RightFAX                2/2/2007 3:16   PAGE 003/003   Fax Server

  

## SCHEDULE OF TRIAL AND PRETRIAL DATES

CASE NAME:     MGA ENTERTAINMENT, INC. V. MATTEL, INC., et al.,

CASE NO:       CV 05-2727-SGL (RNBx)

| Matter | Time | Court Order |
|---|---|---|
| Jury Trial Date | 9:30 am | 07/01/08 |
| Estimated Length of Trial | | |
| [Hearing on Motions in Limine; Hearing on Disputed Jury Instructions | 10:00 am | 06/23/08 |
| Final Pretrial Conference, LR 16-7 Motions in Limine to be filed | 11:00 am | 06/02/08 |
| Lodge Pretrial Conference Order, LR 16-6 to 16-6.2; File Contentions of Fact and Law, LR16-2.8; Exhibit & Witness Lists, LR 16-4 to 16-5; File Status Report regarding Settlement; File Rule 26(e)(1) Supplementation File Agreed Upon Set of Jury Instructions and Verdict Forms LR 49-1 to 49-2, 51-1 to 51-5.1; File Joint Statement regarding Disputed Instructions, Verdicts, etc. | | 05/19/08 |
| Last date to conduct Settlement Conference | | 04/21/08 |
| Last date for hearing motions, LR 7.2, et seq. | 10:00 am | 04/07/08 |
| Discovery cut-off | | 03/03/08 |
| Last date to Amend Pleadings or Add Parties | | Closed |

## ADDITIONAL MATTERS TO BE DETERMINED AT SCHEDULING CONFERENCE

LR 16-14.4 Settlement Selection:     [ ]  1. CT/USMJ          [✓]  3. Outside ADR
to be discussed
                                     [ ]  2. Attorney Settlement Panel   [ ]

DOE Dismissal:          Complaint Filed: 04/13/05        SET DATE
                        Dismissal Date:                  to be discussed

S:\SGL\CIVIL ORDERS\MGA 05-2727 MO 2-12-07.wpd

EXHIBIT_

PAGE___

**EXHIBIT 18**
**PAGE 569**

**From:**   Name:        United States District Court
                         312 North Spring Street
                         Los Angeles, CA  90012
            Voice Phone: (213) 894-5474


**To:**     Name:        Michael Zeller
            Company:
                         865 S Figueroa St, 10th Floor,
            City/State:  Los Angeles, CA 90017-2543
            Fax Number:  213-443-3100



### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### Automated Document Delivery Service
*Notice pursuant to Rule 77(d) FRCiv.P*
*The attached copy is hereby served upon you pursuant to Federal Rule of Civil Procedure 77(d).*

**Fax Notes:**

Case 2:05-CV-02727 : MGA ENTERTAINMENT INC V. MATTEL INC ET AL

*Pursuant to General Order 06-07, Section F, the following documents shall be submitted in the traditional manner: Pen Registers, Search Warrants, Seizure Warrants, Wire Taps, Bond Related Documents, Under Seal and In-Camera Documents, and All Charging Documents (Complaints, Informations, Indictments, and Superseding Charging Documents). All other documents filed in cases unassigned to a judge shall be filed electronically with a copy e-mailed to the criminal intake mailbox for the appropriate division. The proper e-mail address for each division is as follows:*

Western Division:  CrimIntakeCourtDocs-LA@cacd.uscourts.gov
Southern Division: CrimIntakeCourtDocs-SA@cacd.uscourts.gov
Eastern Division:  CrimIntakeCourtDocs-RS@cacd.uscourts.gov

*For additional information and assistance, please refer to the CM/ECF page on the Court website at www.cacd.uscourts.gov.*

**Switch to e-mail delivery and get these documents sooner!**
**To switch, complete and submit**
**Optical Scanning Enrollment / Update form G-76.**
**Call 213-894-5474 for help and free technical support.**

*If you received this document in error because the attorney with whom this document is directed is no longer the attorney on the case, a Notice of Change of Attorney Information, form G-6, must be filed. If there are other cases which you've received documents for which you are no longer the attorney, separate notices must be filed for each case. Failure to do so will result in the continued sending of documents to you. Form G-6 is available on the court's website at www.cacd.uscourts.gov or at the Clerk's Office.*

Date and time of transmission:        Thursday, February 22, 2007 3:14:36 PM
Number of pages including this cover sheet:  03

EXHIBIT _____

PAGE ____

**EXHIBIT 18**
**PAGE 570**

1
2
3
4
5
6
7

**SEND**

8                    UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION
10
11   MGA ENTERTAINMENT, INC.,            )   Case No. CV 05-02727 SGL(RNBx)
12                   Plaintiff,          )   SCHEDULING ORDER [FRCP 16(b)]
                                         )
13          v.                           )   1.   Establishing a Discovery Cut-off Date of
14   MATTEL, INC.,                       )        March 3, 2008
                                         )   2.   Non-Discovery Motion Hearing Cutoff
15                   Defendants.         )        date of April 7, 2008, at 10:00 a.m.
16   _____    )   3.   Setting Final Pretrial Conference for
                                         )        June 2, 2008, at 11:00 a.m.
17
                                             4.   Setting Jury Trial Date of July 1, 2008, at
18                                                9:30 a.m.
19
20
21       **READ THIS ORDER CAREFULLY. IT CONTROLS THE CASE**          FEB 22 2007
22       **AND DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES.**
23
         The above matter is set for trial before the Honorable Stephen G. Larson, United
24
     States District Judge, Courtroom 1, United States District Court, Eastern Division, 2nd
25
     Floor, Riverside, California.
26
27       1.      **Discovery Cut-Off:** This is the last date to complete discovery, including
28                                                                            FEB 22 2007

2 - 21

1 │ expert discovery, and the resolution of any discovery motions before this court. If expert

2 │ witnesses are to be called at trial, the parties shall designate experts to be called at trial and

3 │ provide reports required by Fed. R. Civ. P. 26(a)(B), not later than eight weeks prior to the

4 │ discovery cutoff date. Rebuttal expert witnesses shall be designated and reports provided as

5 │ required by Fed.R.Civ.P. 26(a)(2)(B), not later than five weeks prior to the discovery cutoff

6 │ date. Failure to timely comply with this deadline may result in the expert being excluded at

7 │ trial as a witness. The Court requires compliance with Local Rule 37-1 and 37-2 in the

8 │ preparation and filing of discovery motions. Discovery motions may not be heard on an ex

9 │ parte basis.

10 │   2.     **Joinder of Parties and Amendment of Pleadings:** Any motions to join other

11 │ parties or for leave to amend the pleadings shall be filed within sixty (60) days of the date of

12 │ this Order so that they can be heard and decided prior to the deadline. This deadline does

13 │ not apply if the deadline for joining parties or amending pleadings has already been

14 │ calendared or occurred by virtue of an order issued by another Judge.

15 │   In addition to the requirements of Local Rules 15-1, 15-2, and 15-3, all motions to

16 │ amend the pleadings shall (a) state the effect of the amendment; (b) be serially numbered to

17 │ differentiate the amendment from previous amendments and (c) state the page, line

18 │ number(s), and wording of any proposed change or addition of material.

19 │   3.     **Motion Filing Cut-Off:** The Court hears motions on Mondays at 10:00 a.m.

20 │ The motion filing cut-off date is the last day motions may be heard (not filed). The Court will

21 │ not decide late motions. Issues left undetermined by the passage of the motion cut-off date

22 │ should be listed as issues for trial in the Final Pretrial Conference Order. As an exception to

23 │ the above, motions in limine dealing with evidentiary matters may be heard at or before trial;

24 │ however, summary judgment motions disguised as motions in limine will not be heard.

25 │ Parties need not wait until the discovery cut-off to bring motions for summary judgment or

26 │ partial summary judgment. However, in the usual case, the court expects that more than the

27 │ minimum notice will be provided to counsel opposing motions for summary judgment. In the

28 │

2

1  usual case, the parties should confer and agree on the date for setting such motions.

2      Ex parte applications are entertained solely for extraordinary relief. See Mission Power

3  Eng. Co. v. Continental Casualty Co., 883 F.Supp. 488 (C.D. Cal. 1995). Strict adherence to

4  proper ex parte procedures is required for any ex parte application filed with the Court.

5      4.   **Stipulations to Extend Time:** Stipulations to extend the time to file any required

6  document or to continue any pretrial or trial date must set forth (a) the existing due date or

7  hearing date; (b) the current pretrial conference date and trial date; (c) the specific reasons

8  supporting good cause for granting the extension or continuance; and (d) whether there have

9  been any prior requests for extensions or continuances, and whether these were granted or

10 denied by the Court.

11     5.   **Summary Judgment Motions:** The Separate Statement of Undisputed Facts is to

12 be prepared in a two-column format.  The left-hand column should set forth the allegedly

13 undisputed fact.  The right-hand column should set forth the evidence that supports the

14 factual statement. The fact statements should be set forth in sequentially numbered

15 paragraphs. Each paragraph should contain a narrowly focused statement of fact.  Each

16 numbered paragraph should address a single subject in as concise a manner as possible.

17     The opposing party's statement of genuine issues must be in two columns and

18 track the movant's separate statement exactly as prepared.  The document must be in two

19 columns; the left-hand column must restate the allegedly undisputed fact, and the right-hand

20 column must indicate either undisputed, or disputed.  The opposing party may dispute all or

21 only a portion of the statement, but if disputing only a portion, must clearly indicate what part

22 is being disputed.  Where the opposing party is disputing the fact in whole or part, the

23 opposing party must, in the right-hand column, label and restate the moving party's evidence

24 in support of the fact, followed by the opposing party's evidence controverting the fact.

25 Where the opposing party is disputing the fact on the basis of an evidentiary objection, the

26 party must cite to the evidence alleged to be objectionable and state the ground of the

27

28

3

1  objection and nothing more.  **No argument should be set forth in this document.**

2      The opposing party may submit additional material facts that bear on or relate to the

3  issues raised by the movant, which shall follow the format described above for the moving

4  party's separate statement.  These additional facts shall follow the movant's facts, shall

5  continue in sequentially numbered paragraphs (i.e., if movant's last statement of fact was set

6  forth in paragraph 30, then the first new fact will be set forth in paragraph 31), and shall set

7  forth in the right hand column the evidence that supports that statement.

8      The moving party, in its reply, shall respond to the additional facts in the same

9  manner and format that the opposition party is required to adhere to in responding to the

10  statement of undisputed facts, as described above.

11      (a)  **Supporting Evidence:** No party should submit any evidence other than the

12  specific items of evidence or testimony necessary to support or controvert a proposed

13  statement of undisputed fact.  Thus, for example, the entire transcript of a deposition, entire

14  sets of interrogatory responses, and documents that do not specifically support or controvert

15  material in the separate statements, should not be submitted in support or opposition to a

16  motion for summary judgment.  Any such material will not be considered.

17      Evidence submitted in support of or in opposition to a motion should be submitted

18  either by way of stipulation or as exhibits to declarations sufficient to authenticate the

19  proffered evidence, and should not be attached to the Memorandum of Points and

20  Authorities.  The Court will accept counsel's authentication of deposition transcript, of written

21  discovery responses, and of the receipt of documents in discovery if the fact that the

22  document was in the opponent's possession is of independent significance.  Documentary

23  evidence as to which there is no stipulation regarding foundation must be accompanied by

24  the testimony, either by declaration or properly authenticated deposition transcript, of a

25  witness who can establish its authenticity.

26      If evidence in support of or in opposition to a motion exceeds twenty pages, the

27

28

4

EXHIBIT ___

PAGE _____

**EXHIBIT 18
PAGE 574**

1   evidence must be in a separate bound volume and include a Table of Contents.

2        (b) Objections to Evidence: If a party disputes a fact based in whole or in part

3   on an evidentiary objection, the ground of the objection, as indicated above, should be

4   stated in the separate statement but not argued in that document. Evidentiary objections

5   are to be addressed in a separate memorandum to be filed with the opposition or reply brief

6   of the party. This memorandum should be organized to track the paragraph numbers of

7   the separate statement in sequence. It should identify the specific item of evidence to

8   which objection is made, the ground of the objection, and a very brief argument with citation

9   to authority as to why the objection is well taken. The following is an example of the format

10  contemplated by the Court:

11        Separate Statement Paragraph 1: Objection to the supporting deposition transcript

12        of Jane Smith at 60:1-10 on the grounds that the statement constitutes inadmissible

13        hearsay and no exception is applicable. To the extent it is offered to prove her

14        state of mind, it is irrelevant since her state of mind is not in issue.

15        Fed. R. Evid. 801, 802.

16     Do not submit blanket or boilerplate objections to the opponent's statements of

17  undisputed fact: these will be disregarded and overruled.

18        (c) The Memorandum of Points and Authorities: The movant's memorandum of

19  points and authorities should be in the usual form required under Local Rule 7-5 and should

20  contain a narrative statement of facts as to those aspects of the case that are before the

21  Court. All facts should be supported with citations to the paragraph number in the Separate

22  Statement that supports the factual assertion and not to the underlying evidence.

23        Unless the case involves some unusual twist on Rule 56, the motion need only

24  contain a brief statement of the Rule 56 standard; the Court is familiar with the Rule and

25  with its interpretation under Celotex and its progeny. If at all possible, the argument should

26  be organized to focus on the pertinent elements of the cause(s) of action or defense(s) in

27

28

5

EXHIBIT

PAGE

EXHIBIT 18
PAGE 575

1  issue, with the purpose of showing the existence or non-existence of a genuine issue of

2  material fact for trial on that element of the claim or defense.

3       Likewise, the opposition memorandum of points and authorities should be in the

4  usual form required by Local Rule 7-5, and where the opposition memorandum sets forth

5  facts, the memorandum should cite to paragraphs in the separate statement if they are not in

6  dispute, to the evidence that contravenes the fact where the fact is in dispute or, if the fact is

7  contravened by an additional fact in the statement of genuine issues, the citation should be

8  to such fact by paragraph number.

9       (d) **Timing:**  In virtually every case, the Court expects that the moving party will

10  provide more than the minimum twenty-one (21) day notice for such motions.  The moving

11  party should deliver to chambers a copy of a diskette, in WordPerfect format (11.0 or earlier

12  versions), containing the Statement of Uncontroverted Facts and Conclusions of Law.

13       6.   **Motions in Limine:**  The parties must file motions in limine addressing the

14  admissibility of evidence in accordance with Local Rule 7-3.  The parties shall file their

15  opposing and reply papers in accordance with Local Rules 7-9 and 7-10 respectively.

16       7.   **Pretrial Conference and Trial Setting:**  Compliance with the requirements of

17  Local Rule 16 is mandatory.  Counsel shall submit carefully prepared Memoranda of

18  Contentions of Fact and Law (which may also serve as the trial briefs) and Proposed Pre-

19  Trial Conference Order ("PTCO") in accordance with the provisions of Local Rules 16-1

20  through 16-7. The Proposed Pre-Trial Conference Order shall conform to the example set

21  forth in Appendix A to the Local Rules, modified as necessary to comply with this order.

22       The Memoranda of Contentions of Fact and Law, Exhibit Lists, and Witness Lists

23  shall be served and filed no later than fourteen (14) calendar days before the Pre-Trial

24  Conference.  The Proposed Pre-Trial Conference Order shall be lodged fourteen (14)

25  calendar days before the Pre-Trial Conference.

26       The Proposed Pre-Trial Conference Order must contain a Table of Contents.  Place

27

28

6

EXHIBIT __

PAGE ____

**EXHIBIT 18
PAGE 576**

1  in all capital letters and in bold the separately numbered headings for each category in the
2  PTCO. Under paragraph 1, list each claim, counterclaim, or defense that has been
3  dismissed or abandoned. In multiple-party cases where not all claims or counterclaims will
4  be prosecuted against all remaining parties on the other side, please specify to which party
5  each claim or counterclaim is directed. The factual issues in dispute should track the
6  elements of a claim or defense upon which the jury would be required to make findings.
7  Counsel should state issues in ultimate fact form, not as evidentiary fact issues (i.e., "was the
8  defendant negligent," "was defendant's negligence the proximate cause of plaintiff's injury;"
9  not "was the plaintiff standing on the corner of 12th Street and Lemon Avenue at 10:00 a.m.
10  on March 1"). Issues of law should state legal issues upon which the Court will be required
11  to rule after the Pre-Trial Conference, including during the trial, and should not list ultimate
12  fact issues to be submitted to the trier of fact.
13          In drafting the PTCO, the court expects that counsel will attempt to agree on and
14  set forth as many non-contested facts as possible. The court will normally read the
15  uncontested facts to the jury at the start of the trial. Carefully drafted and comprehensively
16  stated stipulation of facts will reduce the length of trial and increase jury understanding of the
17  case.
18          If expert witnesses are to be called at trial, each party must list and identify its
19  respective expert witnesses, both retained and non-retained. <u>Failure of a party to list and</u>
20  <u>identify an expert witness in the Proposed Pre-Trial Conference Order shall preclude a party</u>
21  <u>from calling that expert witness at trial.</u>
22          This case has been placed on calendar for a Final Pretrial Conference ("PTC")
23  pursuant to Fed. R. Civ. P. 16 and Local Rule 16-1, et seq., unless the PTC was expressly
24  waived at the Scheduling Conference by the court. Unless excused for good cause, each
25  party appearing in this action shall be represented at the PTC and all pretrial meetings of
26  counsel, by lead trial counsel. The failure to attend the PTC or to submit the required pretrial
27
28

7

1  documents may result in the dismissal of the action, striking the answer and entering a
2  default, and/or the imposition of sanctions.

3       A continuance of the Final Pretrial Conference at counsel's request or stipulation
4  will only be approved upon a showing of good cause. Counsel should plan to do the
5  necessary pretrial work on a schedule which will insure its completion with time to spare
6  before the Final Pretrial Conference. Specifically, failure to complete discovery work,
7  including expert discovery, is not a ground for a continuance.

8       Compliance with the requirements of Local Rules 16-1 to 16-13 is required by the
9  court. Carefully prepared Memoranda of Contentions of Fact (which may also serve as the
10  trial brief) and a proposed Final Pretrial Conference Order shall be submitted in accordance
11  with the provisions of Local Rule 16-7 and the form of the proposed Final Pretrial Conference
12  Order shall be in conformity with the format set forth in Appendix A to the Local Rules.

13       At the PTC, counsel should be prepared to discuss means of streamlining the trial,
14  including, but not limited to: bifurcation, presentation of non-critical testimony by deposition
15  excerpts, stipulations as to the content of testimony, presentation of testimony on direct
16  examination by declaration subject to cross-examination, and qualification of experts by
17  admitted resumes. In certain cases where the PTC is waived by the court, counsel must
18  follow Local Rule 16-11.

19       8.   **Witness List and Times Estimates:** *Counsel shall prepare a list of their witnesses,*
20  *an estimate of the length of time needed for direct examination for each witness, and whether*
21  *the witness will testify by deposition or in person. Counsel shall exchange these lists with*
22  *opposing counsel.[1]* **Counsel shall jointly file a single witness list, including estimates for**
23  **direct examination of their own witnesses and estimates for cross-examination of**
24  **opposing witnesses.** *This list shall be filed at the time counsel lodge the Proposed Pre-Trial*
25
26  _____
27       [1] See "Joint Trial Witness Estimate Form" appended to this order.
28

8

EXHIBIT

PAGE ___

**EXHIBIT 18
PAGE 578**

1 | Conference Order, i.e., fourteen (14) days before the Pre-Trial Conference.

2 |      **9.**  **Jury Instructions and Verdict Forms:**  Fourteen (14) calendar days prior to

3 | counsel's Rule 16 pre-trial meeting, counsel shall exchange proposed jury instructions

4 | (general and special) and special verdict forms (if applicable).  Seven (7) calendar days prior

5 | to the Rule 16-2 meeting, counsel shall exchange any objections to the instructions and

6 | special verdict forms.  Prior to, or at the time of the Rule 16 meeting, counsel shall meet and

7 | confer with the goal of reaching agreement on one set of joint jury instructions and one special

8 | verdict form.

9 |      The parties should make every attempt to agree upon the jury instructions before

10 | submitting them to the Court.  The Court expects counsel to agree on the substantial majority

11 | of jury instructions, particularly when pattern instructions provide a statement of applicable law.

12 | When the Manual of Model Civil Jury Instructions for the Ninth Circuit provides a version of an

13 | applicable requested instruction, the parties should submit the most recent version of the

14 | Model instruction.  Where language appears in brackets in the model instruction, counsel shall

15 | select the appropriate text and eliminate the inapplicable bracketed text.  Where California law

16 | applies, counsel should use Judicial Council of California Civil Jury Instructions (June 2006)

17 | ("CACI").  If neither of the above sources is applicable, counsel are directed to use the

18 | instructions from O'Malley, Grenig & Lee (formerly Devitt, et al.), Federal Jury Practice and

19 | Instructions (latest edition).  Each requested jury instruction shall cover only one subject or

20 | principle of law and shall be numbered and set forth in full on a separate page, citing the

21 | authority or source of the requested instruction (except for the "clean" jury copy discussed

22 | below).

23 |      When the parties disagree on an instruction, the party opposing the instruction must

24 | attach a short statement (one to two paragraphs) supporting the objection, and the party

25 | submitting the instruction must attach a short statement supporting the instruction.  Each

26 | statement should be on a separate page and should follow directly after the disputed

27 |

28 |

9

1  Instruction.

2        The parties ultimately must submit one document or, if the parties disagree over any

3  proposed jury instructions, two documents. If the parties submit two documents, those

4  documents shall consist of: (a) a set of Joint Proposed Jury Instructions and (b) a set of

5  Disputed Jury Instructions, along with reasons supporting and opposing each disputed

6  instruction in the format set forth in the previous paragraph.

7        The parties must file proposed jury instructions fourteen (14) calendar days before

8  the Pre-Trial Conference. If the court is closed that day, counsel shall file the proposed

9  instructions the preceding Friday. No later than 4:00 p.m. on the date such instructions are

10  due, the parties must submit conformed courtesy copies to the Court's courtesy box located

11  outside the entrance to Courtroom 1, United States District Court, 3470 Twelfth Street, 2nd

12  Floor, Riverside, California. Counsel shall also provide the Court with a 3½ inch diskette

13  compatible with WordPerfect version 11.0 or lower containing the proposed jury instructions, in

14  accordance with this paragraph and the previous paragraph.

15        The Court will send a copy of the instructions into the jury room for the jury's use

16  during deliberations. Accordingly, in addition to the file copies described above, the diskette

17  submitted with the jury instructions shall contain a "clean set" of Joint Proposed and/or

18  Disputed Jury Instructions, containing only the text of each instruction set forth in full on each

19  page, with the caption "Court's Instruction No. ___" (eliminating titles, supporting authority,

20  indication of party proposing, etc.).

21        An index page shall accompany all jury instructions submitted to the Court. The

22  index page shall indicate the following:

23        (a) The number of the instruction;

24        (b) A brief title of the instruction;

25        (c) The source of the instruction and any relevant case citations; and

26        (d) The page number of the instruction.

27

28

10

EXHIBIT ___

PAGE _____

**EXHIBIT 18
PAGE 580**

1

2     EXAMPLE:

| Number | Title | Source | Page |
|--------|-------|--------|------|
| 1 | Trademark-Defined (15 U.S.C. § 1127) | 9th Cir. 15.3.2 | 7 |

Along with the jury instructions, counsel shall submit any necessary special verdict form fourteen (14) calendar days before the Pre-Trial Conference.

10. **Voir Dire Questions:** Counsel may, but need not, submit brief proposed voir dire questions for the jury at the Pre-Trial Conference. The Court will conduct its own voir dire after consulting any proposed voir dire submitted by counsel. After the Court conducts its own voir dire, counsel will be provided an opportunity to ask supplemental questions subject to Court approval.

11. **Joint Statement of the Case:** Counsel shall submit a joint statement of the case at the Pretrial Conference. The joint statement of the case will be read to the prospective panel of jurors prior to the commencement of voir dire. The statement should not exceed one page. The statement shall be filed with the Court no later than 4:00 p.m., on the Wednesday prior to the Pre-Trial Conference.

12. **Exhibits:** The parties shall file their witness lists and exhibits lists in accordance with Local Rule 16. Counsel are to assemble their exhibits by placing them in three-ring binders labeled on the spine portion of the binder showing both the volume number and the exhibit numbers. Each exhibit shall be separated by a tabbed divider on the right side. Counsel shall provide original exhibits for the courtroom deputy clerk and a duplicate set for the judge. The original exhibits shall be tagged with the appropriate exhibit tags in the upper or lower right corner of the first page of each exhibit and include the case number, case name, and exhibit number. Each binder shall contain a Table of Contents. Counsel must comply with Local Rule 26-3 when numbering the exhibits. The Clerk's Office, located at the United States District Court, 3470 Twelfth Street, Riverside, California can supply counsel with appropriate exhibit tags.

11

EXHIBIT _

PAGE ____

**EXHIBIT 18
PAGE 581**

1       The Court requires the following to be submitted to the courtroom deputy clerk on the
2   first day of trial: (a) The original exhibits with the Court's exhibit tags; (b) one bench book with
3   a copy of each exhibit for the Court's use, tabbed as described above; (c) three (3) copies of
4   exhibit lists and a floppy disk containing the exhibit list; (d) three (3) copies of witness lists in
5   the order in which the witnesses will be called to testify; and (e) file a Notice of Lodging of
6   Deposition Transcripts  (original and 2 copies) and Lodge all anticipated trial deposition
7   transcripts directly with the deputy clerk in the courtroom.
8       All counsel are to meet no later than ten (10) calendar days before trial to discuss
9   and agree to the extent possible on issues including foundation and admissibility.
10       **13. Pre-Trial Exhibit Stipulation:** The parties shall prepare a Pre-Trial Exhibit
11   Stipulation which shall contain each party's numbered list of trial exhibits, with objections, if
12   any, to each exhibit including the basis of the objection and the offering party's response.  All
13   exhibits to which there is no objection shall be deemed admitted.  All parties shall stipulate to
14   the authenticity of exhibits whenever possible, and the Pre-Trial Exhibit Stipulation shall
15   identify any exhibits whose authenticity has not been stipulated to and the specific reasons for
16   the party's failure to stipulate.
17       The Stipulation shall be substantially in the following form:
18   <div align="center">Pre-Trial Exhibit Stipulation</div>
19   Plaintiff's Exhibits
20   
| Number | Description | Objection | Response to Question |
|--------|-------------|-----------|----------------------|

21   
22   Defendant's Exhibits
23   
| Number | Description | Objection | Response to Question |
|--------|-------------|-----------|----------------------|

24   
25       The Pre-Trial Exhibit Stipulation shall be filed at the same time as counsel lodges the
26   Proposed Pre-Trial Conference Order.  Failure to comply with this paragraph may constitute a
27   
28   

<div align="center">12</div>

EXHIBIT ___

PAGE ___

**EXHIBIT 18**
**PAGE 582**

1   waiver of all objections.

2       **14. Findings of Fact and Conclusions of Law:** For a non-jury trial, counsel for each

3   party shall lodge proposed findings of fact and conclusions of law fourteen (14) days before

4   trial. The parties should deliver to chambers a copy of these findings and conclusions of law

5   on disk in WordPerfect format.

6         (a)    Underline in red the portions which it disputes;

7         (b)    Underline in blue the portions which it admits; and

8         (c)    Underline in black the portions which it deems not disputed, but deems

9             irrelevant.

10      Counsel may agree with a part of a finding or conclusion, disagree with a part of it

11   and/or consider a part of irrelevant.

12      Two marked copies of opposing counsel's proposed findings of fact and conclusions of

13   law shall be lodged with the court seven (7) days before trial and one marked copy shall be

14   served on opposing counsel. Courtesy copies of the marked copies shall be deposited in the

15   drop box located outside the entrance of Courtroom 1 of the above-entitled court on the date

16   due.

17      **15. Settlement:** Local Rule 16-15.2 provides that the Settlement Conference shall be

18   conducted not later than 45 days before the Pretrial Conference. The Court believes that in

19   most cases completion of all discovery and dispositive motions will help the parties assess

20   their positions before they embark on the costly pre-trial process. However, in many cases,

21   the parties find it more difficult to settle after they have incurred the cost of all discovery and

22   motion practice. Accordingly, the Court strongly encourages counsel and the parties to pursue

23   settlement earlier.

24      The Court has a keen interest in helping the parties achieve settlement. If the parties

25   believe that it would be more likely that a settlement would be reached if they conduct

26   settlement conference at an earlier time than that specified by the Court, they should conduct

27

28

<center>13</center>

EXHIBIT _____

PAGE __     **EXHIBIT 18**
               **PAGE 583**

1   it at that time.  In any event, the parties must file a Status Report re Settlement at the time

2   they lodge the Proposed Pretrial Order.

3        The Court will not conduct settlement conferences in non-jury cases which the Court will

4   try.  In jury cases, the Court will conduct a settlement conference at the parties' request if

5   three conditions exist: (a) The parties are satisfied that the fact issues in the case will be tried

6   to a jury; (b) all significant pre-trial rulings which Court must make have been made; and (c)

7   the parties desire the Court to conduct the conference, understanding that if settlement fails,

8   the Court will preside over the trial of the case.

9        **If a settlement is reached, it shall be reported immediately to this Court as**

10  **required by Local Rule 16-15.7.**

11       16.  The failure to attend the pretrial conference or to submit timely in conformity

12  with the format set forth in this order, the jury instructions, pre-trial exhibit stipulation, joint

13  statement of the case, voir dire questions, summary of witness testimony and times estimates,

14  proposed Pretrial Conference Order or the memorandum of contentions of fact and law may

15  result in the dismissal of the action, striking the answer and entering default and/or the

16  imposition of sanctions.

17       17.  **Telephonic Status Conference:**

18       Telephonic status conferences are sometimes set by the court to discuss settlement

19  status and other pending issues.  If a telephonic status conference has been set, all counsel

20  are ordered to discuss the matter with their clients and opposing counsel before the telephonic

21  status conference.  Plaintiff's counsel must make the arrangements and place the conference

22  call.  Plaintiff's counsel shall include all counsel of record and the Court on the date and time

23  scheduled.  The conference operator is to place the final call to the Court at (951) 328-4410.

24  To assist the Court and staff, participants shall identify themselves each time they speak.  No

25  cellular telephones or speaker telephones will be allowed.

26                              **Internet Site**

27

28

                                    14

EXHIBIT _____

PAGE ____          **EXHIBIT 18
                   PAGE 584**

1    Counsel are encouraged to review the Central District's website for additional information.

2    The address is "http: //www.cacd.uscourts.gov".

3

4    The courtroom deputy clerk is ordered to serve a copy of this Order by mail, facsimile or

5    e-mail on counsel for all parties to this action.

6

7         IT IS SO ORDERED.
             FEB 2 1 2007
8    Dated: _____

9

10

11

12    STEPHEN G. LARSON
      UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              15

Joint Trial Witness Estimate Form

Case: _____                                                        Trial Date: _____

| | WITNESS NAME | PARTY CALLING WITNESS AND ESTIMATE | X-EXAMINER'S ESTIMATE | DESCRIPTION OF TESTIMONY | COMMENTS |
|---|---|---|---|---|---|
| 1. | | | | | |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |
| 11. | | | | | |
| 12. | | | | | |
| Total Estimates This Page: | | | | | |

Instructions:
(1) List witnesses (last name first); (2) For description, be extremely brief, e.g. "eyewitness to accident." Or "expert on standard of care"(3) Use estimates within fractions of an hour, rounded off to the closest quarter of an hour, e.g. if you estimate 20 minutes, make it .25. An estimate of one and one-half hours would be 1.5. An estimate of three-quarters of an hour would be .75; (4) Note special factors in "Comments" column. e.g. "Needs interpreter." (5) Entries may be in handwriting if very neat and legible.

-16-

EXHIBIT _____
PAGE ____

**EXHIBIT 18**
**PAGE 586**

Confirmation Report — Memory Send

```
Page       : 001
Date & Time: 02-22-2007   03:24pm
Line 1     : 2136240643
Line 2     :
Machine ID : QUINN EMANUEL
```

| | | |
|---|---|---|
| Job number | : | 447 |
| Date | : | 02-22  03:19pm |
| To | : | ☎7603947943#13102755697 |
| Number of pages | : | 003 |
| Start time | : | 02-22  03:22pm |
| End time | : | 02-22  03:24pm |
| Pages sent | : | 003 |
| Status | : | OK |

Job number    : 447            *** SEND SUCCESSFUL ***

## QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

### LOS ANGELES OFFICE
### FACSIMILE TRANSMISSION

DATE:   February 22, 2007                    NUMBER OF PAGES, INCLUDING COVER:

NAME/COMPANY                                 PHONE NO.        FAX NO.
Wayne S. Ball                                310.274.7100     310.275.5697
Browne Woods & George LLP

FROM:   Iris K. Woon

RE:     Sargon v. USC

MESSAGE:

| CLIENT # | 7943 | ROUTE/RETURN TO: | Iris Felix – 4th Floor | CONFIRM FAX / INCLUDE CONF. REPORT |
| OPERATOR: | | | CONFIRMED? ☐ No ☐ Yes: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product...

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT
PAGE

**EXHIBIT 18
PAGE 587**

Confirmation Report — Memory Send

Page     : 001
Date & Time: 02-22-2007   03:22pm
Line 1 : 2136240643
Line 2 :
Machine ID : QUINN EMANUEL

| | | |
|---|---|---|
| Job number | : | 446 |
| Date | : | 02-22  03:18pm |
| To | : | ☎76030#20257#13104771699 |
| Number of pages | : | 016 |
| Start time | : | 02-22  03:18pm |
| End time | : | 02-22  03:22pm |
| Pages sent | : | 016 |
| Status | : | OK |

Job number    : 446            *** SEND SUCCESSFUL ***

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

LOS ANGELES OFFICE
FACSIMILE TRANSMISSION

DATE:   February 22, 2007                    NUMBER OF PAGES, INCLUDING COVER:  16

NAME/COMPANY                     PHONE NO.        FAX NO.
Rahul Ravipudi, Esq.             (310) 477-1700   (310) 477-1699

FROM:   Allison Burkholder, Esq.

RE:     Gulati v. IBM

MESSAGE:   PLEASE SEE ATTACHED

| CLIENT # | 20257 | ROUTE/RETURN TO: | Maria Aguirrez | ☐ CONFIRM FAX ☐ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | Rafael | | CONFIRMED? ☐ NO ☐ YES: | |

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT 18
PAGE 588

RightFAX                    2/22/2007 3:18    PAGE 001/017    Fax Server

From:       Name:        United States District Court
                         312 North Spring Street
                         Los Angeles, CA 90012
            Voice Phone: (213) 894-5474

To:         Name:        Michael Zeller
            Company:

                         865 S Figueroa St, 10th Floor,
            City/State:  Los Angeles, CA 90017-2543
            Fax Number:  213-443-3100

                    **UNITED STATES DISTRICT COURT**
                    **CENTRAL DISTRICT OF CALIFORNIA**          

                ## Automated Document Delivery Service
                *Notice pursuant to Rule 77(d) FRCiv.P*
        *The attached copy is hereby served upon you pursuant to Federal Rule of Civil Procedure 77(d).*

Fax Notes:

Case 2:05-CV-02727 : MGA ENTERTAINMENT INC V. MATTEL INC ET AL

Pursuant to General Order 06-07, Section F, the following documents shall be submitted in the traditional manner: Pen Registers, Search Warrants, Seizure Warrants, Wire Taps, Bond Related Documents, Under Seal and In-Camera Documents, and All Charging Documents (Complaints, Informations, Indictments, and Superseding Charging Documents). All other documents filed in cases unassigned to a judge shall be filed electronically with a copy e-mailed to the criminal intake mailbox for the appropriate division. The proper e-mail address for each division is as follows:

            Western Division:  CrimIntakeCourtDocs-LA@cacd.uscourts.gov
            Southern Division: CrimIntakeCourtDocs-SA@cacd.uscourts.gov
            Eastern Division:  CrimIntakeCourtDocs-RS@cacd.uscourts.gov

For additional information and assistance, please refer to the CM/ECF page on the Court website at www.cacd.uscourts.gov.

                Switch to e-mail delivery and get these documents sooner!
                        To switch, complete and submit
                Optical Scanning Enrollment / Update form G-76.
                Call 213-894-5474 for help and free technical support.

If you received this document in error because the attorney with whom this document is directed is no longer the attorney on the case, a Notice of Change of Attorney Information, form G-6, must be filed. If there are other cases which you've received documents for which you are no longer the attorney, separate notices must be filed for each case. Failure to do so will result in the continued sending of documents to you. Form G-6 is available on the court's website at www.cacd.uscourts.gov or at the Clerk's Office.

Date and time of transmission:      Thursday, February 22, 2007 3:14:36 PM
Number of pages including this cover sheet:  17

EXHIBIT __

PAGE ____

**EXHIBIT 18**
**PAGE 589**

**EXHIBIT 19**

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(D).

**PRIORITY SEND**
& ENTERED

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                          Date: July 2, 2007

Title:   CARTER BRYANT -v- MATTEL, INC.
         AND CONSOLIDATED ACTIONS

========================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes                          Theresa Lanza
          Courtroom Deputy Clerk              Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker                         John B. Quinn
                                      Brett Dylan Proctor
                                      Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:

Dale M. Cendali
Patricia Glaser



ENTERED
CLERK, U.S. DISTRICT COURT

JUL - 5 2007

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION      BY DEPUTY

DOCKETED ON CM

JUL - 5 2007

BY _____ 164

PROCEEDINGS:   MINUTE ORDER

      As set forth more fully herein, the Court hereby makes the following ruling regarding matters
heard on July 2, 2007:

(1)   The Court **GRANTS** Mattel's Motion re Trial Structure (docket #462);

(2)   The Court **GRANTS IN PART AND DENIES IN PART** MGA's Motion re Discovery Master's
      May 15, 2007, Order (docket #505);

(3)   The Court **GRANTS IN PART AND DENIES IN PART** MGA's Ex Parte Application

MINUTES FORM 90
CIVIL -- GEN **EXHIBIT** _____ 1

          PAGE __    **EXHIBIT 19**
                     **PAGE 590**

Initials of Deputy Clerk _jh_
Time: 01/15

$608$

7|2|7

regarding date of production of documents (docket #545); and

(4)     The Court **DENIES** MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508).

(5)     The Court **DENIES** the parties' oral request for modification of pretrial and trial dates.


(1)     Motion re Trial Structure (docket #462)

Previous orders of the Court specified that the claims and counterclaims brought in this action will be tried in two phases. The parties have agreed, in large part, to a refinement of the Court's mandate that all issues regarding the ownership of Bratz shall be tried in Phase 1. Where the parties differ is upon a proposal by Mattel that the Phase 1 be bifurcated into two sub-phases, with Mattel's copyright infringement claim (its first counterclaim in the 05-02727 case) and all Phase 1 damages being tried after all the other issues. Phase 1(a) would be limited to issues surrounding Carter Bryant's employment with Mattel, and how those issues impact the ownership of certain original Bratz drawings, while Phase 1(b) would address approximately two-hundred Bratz products that are potentially derivative of the original drawings. This approach has the appeal of limiting Phase 1(a) to discrete issue of the ownership of the original Bratz drawings. A finding that Bryant owns these original drawings in Phase 1(a) has the potential to eliminate the need for Phase 1(b).

Accordingly, **THE COURT ADOPTS MATTEL'S MODIFICATION OF DEFENDANTS' PROPOSAL,** as set forth at 8-9 of its Memorandum Regarding Trial Structure, filed June 20, 2007. Phase 1(a) and Phase 1(b) (if necessary) will be tried to the same jury.

(2)     MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505), and
(3)     MGA's Ex Parte Application regarding date of production of documents (docket #545).

The Discovery Master's May 15, 2007, Order compels production of documents regarding ink, paper, and chemical analysis and documents relating to unreleased MGA products. The order required that documents be produced no later than the end of May.

The Court reviews the Discovery Master's orders under the "clearly erroneous" or "contrary to law" standard set forth in Fed. R. Civ. P. 72(a).

The Discovery Master's order compels the production of only non-privileged documents. Therefore, MGA's arguments that the Discovery Master's order requires production of documents in violation of the attorney-client privilege are misplaced. If the only responsive documents are privileged, then MGA need not produce them, but must produce a privilege log.

MGA acknowledges that it has raised an argument before the Court that was not raised

| MINUTES FORM 90 | | | Initials of Deputy Clerk __jh_____ |
| CIVIL -- GEN | **EXHIBIT** | 2 | Time: 01/15 |
| | **PAGE**____ | **EXHIBIT 19** **PAGE 591** | |

before the Discovery Master, namely, that Mattel has failed to establish that there are "exceptional circumstances" that allow Mattel to "discover facts known or opinions held by an expert . . . who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(B). MGA contends that the Discovery Master's order is contrary to law based on this standard, and that it was incumbent upon Mattel to raise it below. The Court disagrees. Mattel would be required to establish that exceptional circumstances existed if MGA objected to production on that grounds. A party seeking production cannot be expected to rebut all arguments that could possibly be raised by a party resisting production. MGA has not convinced the Court that the Discovery Master's failure to require Mattel to rebut an argument that was not raised by MGA is contrary to law.

MGA contends that the Discovery Master's order compelling production of documents regarding unreleased products is contrary to law. Relevant to that determination is a balancing test required to be applied by the Ninth Circuit when trade secrets are requested by a competitor in discovery. See Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992) ("Specifically, in this case we must balance the risk to [defendant] of inadvertent disclosure of trade secrets to competitors against the risk to [plaintiff] that protection of [defendant's] trade secrets [will] impair[] prosecution of [plaintiff's] claims.").

Here, the documents sought are of a particularly sensitive nature. They represent some of the most secretive documents maintained by MGA, and they are being ordered to be produced to MGA's fierce competitor. The Discovery Master recognized the sensitive nature of the documents and entered a strict protective order that severely limits access to those documents and that goes well beyond the normal "attorney eyes only" designation.

MGA argues that unreleased products are irrelevant to the issue of who owns the original Bratz drawings. That is clear. However, MGA's argument attempts to limit the discovery to issues involved in Phase 1 of the trial. There has been no bifurcation of discovery.

Mattel correctly points out that these documents are relevant to a number of its other claims. Specifically, if they show unreleased products that are similar to Mattel's unreleased products, the documents would be highly probative of Mattel's misappropriation of trade secrets claim. Moreover, these documents could be relevant to Mattel's RICO claims based on alleged acts of criminal copyright infringement.

Balancing tests are inherently subjective and particularly susceptible to varying interpretation by individual judicial officers. This Court, upon considering this issue from the outset, may very well have weighed the evidence differently and reached a contrary result. However, this Court is bound by the standard of review, and MGA's motion falls far short of convincing the Court that the Discovery Master's order is contrary to law.

The parties have a long history regarding the production of documents ordered in the May 15, 2007, Order, which is set forth in their papers and which need not be repeated here. Counsel for MGA represented that the remaining documents could be produced no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which could be produced no

MINUTES FORM 90
CIVIL -- GEN   EXHIBIT _____   3

Initials of Deputy Clerk __jh_____
Time: 01/15

PAGE _____

EXHIBIT 19
PAGE 592

later than two weeks after that date. Accordingly, the Court **ORDERS** that MGA complete the document production set forth in the Discovery Master's May 15, 2007, order no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which shall be produced no later than August 14, 2007.

Accordingly, the Court **GRANTS** in part MGA's motion re the Discovery Master's May 15, 2007, Order, extending the document production date as set forth above. The Motion is **DENIED** in all other respects.

Likewise, the Court **GRANTS** in part MGA's ex parte application re date of production of documents, extending the document production date as set forth above. The application is **DENIED** in all other respects.

(4)     MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508)

The Discovery Master's May 16, 2007, Order compelled the Rule 30(b)(6) depositions of witnesses on the topics of MGA's net worth, prior sworn statements, and ink, paper, and chemical analysis performed by MGA.

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. . . . The persons so designated shall testify as to matters *known or reasonably available* to the organization.

Fed. R. Civ. P. 30(b)(6) (emphasis added). "The purpose behind Rule 30(b)(6) is to create testimony that will bind the corporation." Sanders v. Circle K Corp., 137 F.R.D. 292, 294 (D. Ariz. 1991) (internal citation omitted). Another purpose of Rule 30(b)(6) is aptly described by the District Court for the District of Columbia:

> [The purpose of Rule 30(b)(6) is to] prevent[] serial depositions of various witnesses without knowledge within an organization and eliminating 'bandying', which is the name given to the practice in which people are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to the organization itself.

Alexander v. F.B.I., 186 F.R.D. 148, 152 (D.D.C. 1999) (citing the 1970 Advisory Committee Notes to Rule 30(b)(6)).

The Discovery Master's order compelling Rule 30(b)(6) depositions in the specified

MINUTES FORM 90
CIVIL -- GEN          EXHIBIT _____        4

PAGE _____

**EXHIBIT 19
PAGE 593**

Initials of Deputy Clerk __jh_____
Time: 01/15

categories serve both these purposes and is not contrary to law.

Although MGA's net worth may not be known to it, MGA does not contend that the information is not readily available. That net worth is generally the subject of expert testimony at trial -- a proposition disputed by neither Mattel nor the Court -- does not render it an improper subject for a Rule 30(b)(6). Therefore, the Discovery Master's ruling on this issue is not contrary to law.

MGA likewise does not contend that information regarding prior sworn statements are not readily available to it. Although contending that this is not an appropriate subject for a Rule 30(b)(6) deposition, MGA fails to cite authority in support of that contention. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

The ink, paper, and chemical analysis topic is likewise a proper subject of a Rule 30(b)(6) deposition. To the extent that such a deposition has the potential to encroach upon information protected by the work-product privilege, then that objection must be made on a question-by-question basis. MGA may not make a blanket objection and justify its refusal to produce a Rule 30(b)(6) designee on this topic based on that blanket objection. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

Accordingly, the Court **DENIES** MGA's motion re the Discovery Master's May 16, 2007, Order.

(5)   Oral Request for Modification of pretrial and trial dates.

Although no motion or ex parte application on the subject was pending before the Court, the parties made an oral request at the hearing to continue certain pretrial and trial dates. A discussion ensued and it became apparent that no final agreement was reached by the parties regarding extending these dates. Accordingly, the Court **DENIES** the parties' oral request for modification of pretrial and trial dates. The Court will consider counsels' stipulation regarding extensions of those dates only where all counsel unqualifiedly stipulate to those dates. Until the scheduling order is modified by the Court, the dates previously set by the Court remain in effect. In addition, the Court is unlikely to entertain a continuance of the Phase 1 trial past April, 2008.

IT IS SO ORDERED.

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT 19
PAGE 594

**EXHIBIT 20**

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
Timothy L. Alger (Bar No. 160303)
(timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff
Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Honorable Stephen G. Larson<br><br>MATTEL'S MEMORANDUM REGARDING TRIAL STRUCTURE<br><br>Date: TBA<br>Time: TBA<br>Place: TBA<br><br>**Phase 1**<br>Discovery Cut-Off: October 22, 2007<br>Pre-Trial Conference: January 14, 2008<br>Trial Date: February 12, 2008<br><br>**Phase 2**<br>Discovery Cut-Off: March 3, 2008<br>Pre-Trial Conference: June 2, 2008<br>Trial Date: July 1, 2008 |

CONFORMED COPY

EXHIBIT ____

PAGE ____

**EXHIBIT 20**
**PAGE 595**

C6|20|07

MATTEL'S MEMORANDUM RE: TRIAL STRUCTURE

07209/2147647.5

1    At the June 11, 2007, hearing, the Court was clear that it was not

2  inclined to change its existing order regarding the phasing of the trial. This would

3  leave the original <u>Mattel v. Carter Bryant</u> complaint as Phase One and MGA's unfair

4  competition claims, along with Mattel's amended claims, in Phase Two. Mattel has

5  previously apprised the Court of the reasons it believes this structure is not optimal,

6  including the following:

7

8    •    The Court has stated its intention to resolve "Bratz ownership" issues in

9         Phase One; however, Bratz ownership was not as squarely addressed in

10        the original complaint as it is in the claims now structured as

11        counterclaims (which were drafted with the benefit of discovery).

12        Indeed, while encompassed by the original complaint's allegations,

13        "Bratz" is nowhere explicitly named in the original complaint.

14   •    The present structure would have almost entirely overlapping claims

15        arising out of Bryant's conduct while employed by Mattel in both

16        phases of the trial: a claim for breach for fiduciary duty against Bryant

17        in both phases, a claim for breach of contract against Bryant in both

18        phases, etc. In addition, all the associated aiding and abetting claims

19        (e.g., aiding and abetting breach of fiduciary duty, etc.) would be in

20        Phase Two. This will require adducing the same evidence and

21        producing the same witnesses twice. Defendants agree with Mattel that

22        this would be inefficient.

23   •    MGA intervened in the action on the original complaint and

24        accordingly presumably expects to be permitted to fully participate in

25        opening statements, examination of witnesses and closing arguments in

26        Phase One, even though none of the claims against it will be explicitly

27        tried in Phase One. In other words, Mattel will be required to contend

28        with MGA in Phase One, but will not be able to assert <u>pending</u> claims

EXHIBIT

EXHIBIT 20
PAGE 596

-1-

MATTEL'S MEMORANDUM RE: TRIAL STRUCTURE

1    it has against MGA arising from the very same Bryant/MGA conduct

2    that is the subject of Phase One.

3    If the Court is inclined to reconsider, Mattel respectfully submits that

4 the most satisfactory way to divide the claims is between (1) claims arising out of

5 Bryant's activities while employed by Mattel (in Phase One) and (2) all other claims

6 (in Phase Two). This is what Mattel had proposed in its motion, heard June 11,

7 2007, ruling on which was deferred because of the proposal that MGA and Bryant

8 put forward at the hearing.

9    If the Court is not disposed to the proposal set forth in Mattel's motion,

10 Mattel offers the following two alternatives. One is a modification of defendants'

11 proposal submitted to the Court on June 11. The other -- Mattel respectfully

12 submits -- is the minimum modification necessary to the existing order to

13 accomplish the Court's stated objective of resolving "Bratz ownership" issues in

14 Phase One.

15

16 Modification of Defendants' Proposal

17    Defendants' proposal is the same as what Mattel had proposed in its

18 motion, with two differences. Defendants' proposal, like Mattel's, recognizes that

19 Mattel's amended claims arising out of Bryant's activities while employed by Mattel

20 overlap substantially with--or indeed are merely restatements of--Mattel's claims in

21 the original complaint. Like Mattel, defendants propose that all these claims be

22 tried together in Phase One.[1]

23    The two differences between Mattel's proposal and defendants' is that

24 defendants propose to try the copyright infringement claims and damages issues in

25 Phase One. This represents a reversal in position on defendants' part. Defendants

26 had previously argued that it was not practical to try all copyright infringement

27  [1] Defendants' proposal is set forth in the Powerpoint slide they presented at the

28 June 11 hearing.

EXHIBIT ____

-2-  PAGE

MATTEL'S MEMORANDUM RE: TRIAL STRUCTURE

EXHIBIT 20
PAGE 597

1 claims in Phase One because doing so would require individually assessing

2 infringement issues with respect to over 200 products. As MGA stated in its last

3 brief on the subject:

> 4 Mattel's Phase Two copyright infringement claims against
>
> 5 MGA, MGA Hong Kong, Isaac Larian and Bryant
>
> 6 (Counterclaim 1) relate to *hundreds* of products that MGA
>
> 7 created and released between 2001 and 2007, long *after*
>
> 8 Bryant left Mattel. Trial of those claims will require a jury
>
> 9 to analyze each product to determine whether it is even a
>
> 10 derivative work of Bryant's original drawings. Those
>
> 11 issues are entirely separate and distinct from the narrow
>
> 12 issue of whether Bryant or Mattel own [sic] Bryant's
>
> 13 original drawings.[2]

14 Mattel agrees that deferring resolution of copyright issues may avoid this

15 burdensome assessment of 200 products. If the issue of ownership of Bratz works

16 created by Bryant while he was employed at Mattel is resolved against Mattel, then

17 it will likely never be necessary to get into the copyright infringement issues.

18 Defendants had likewise previously urged that damages issues should

19 not be tried in Phase One. This is because, as MGA argued, "[t]here are countless

20 'Bratz' products, as well as dozens of different themes used to market the 'Bratz'

21 dolls, each of which would need to be individually analyzed in order to calculate the

22 profits attributable to each and to apportion damages appropriately."[3] Mattel

23 submits that defendants' stated concern is legitimate, and applies both to Mattel's

24 copyright infringement claim and the state law claims that are already in Phase One.

25 That is because Mattel's claim for breach of fiduciary duty, for example, permits

26

27 [2] See MGA's Opposition to Mattel's Motion to Try All Claims Related to Bratz Ownership in Phase One at 3:12-19 (italics in original). **EXHIBIT** ___

28 [3] Id. at 8:8-11 (addressing copyright claim).

**EXHIBIT 20**
**PAGE 598**

PAGE ___

07209/2147647.5

-3-

MATTEL'S MEMORANDUM RE: TRIAL STRUCTURE

1    disgorgement of profits as a remedy.  See, e.g., Harris Trust and Sav. Bank v.

2    Salomon Smith Barney, Inc., 530 U.S. 238, 250-251 (2000) (when legal title to

3    property passes to another through breach of fiduciary duty, the victim may seek a

4    disgorgement of any profits derived therefrom); Parke v. First Reliance Standard

5    Life Ins. Co., 368 F.3d 999, 1008 (8th Cir. 2004) ("a defendant who owes a

6    fiduciary duty to a plaintiff may be forced to disgorge any profits made by breaching

7    that duty").  A state law disgorgement of profits analysis may substantially overlap

8    in proof with copyright infringement damages.  For both, proof of damages will

9    likely involve individual assessment of numerous derivative works.  Ownership can

10   be addressed and resolved without wading into this minutia.

11          Accordingly, Mattel proposes that defendants' current proposal be

12   adopted by the Court with the modification that copyright infringement and

13   damages issues be bifurcated within Phase One, consistent with defendants' original

14   position.  In other words, Phase One would address all claims arising out of Bryant's

15   conduct while he was employed by Mattel, but copyright infringement and damages

16   issues would be bifurcated and reached only if there were findings against

17   defendants in the first part of the Phase One trial.  Phase Two would address claims

18   arising from the acts of unfair competition asserted by MGA against Mattel and

19   trade secret theft asserted by Mattel against MGA, occurring after, and unrelated to,

20   Bryant's employment with Mattel.

21

22   Minimum Modification

23          In the alternative, Mattel respectfully submits that to resolve "Bratz

24   ownership" issues in Phase One the Court should, at a minimum, make two

25   modifications.  First, it should import into Phase One Mattel's declaratory relief

26   claim relating to Bratz ownership.  In the original complaint, there is no explicit

27   reference to Bratz and ownership of Bratz.  Although the facts alleged in the original

28   complaint encompass those relating to Bratz ownership, that issue is specifically

EXHIBIT _____                                    -4-
                                            MATTEL'S MEMORANDUM RE: TRIAL STRUCTURE
         EXHIBIT 20
PAGE ____   PAGE 599

1  addressed only in the amended claims. Mattel has a declaratory relief claim
2  squarely addressing ownership of Bratz. That claim presently appears as a
3  counterclaim in Phase Two. It belongs in Phase One, insofar as it relates to
4  ownership of the Bratz works created by Bryant while employed by Mattel.

5          Second, damages should be moved to Phase Two. If Mattel introduces
6  evidence in Phase One of defendants' profits and obtains a damage award on its state
7  law claims against Bryant, defendants may argue that the first jury's award of
8  disgorgement precludes Mattel from seeking any separate award for copyright
9  infringement damages in Phase Two under some claim splitting theory because both
10 sets of claims permit awards of defendants' ill-gotten profits and gains. The parties
11 agree that state law and copyright damages issues substantially overlap. All
12 damages issues should be dealt with in one proceeding. If any of these damages
13 issues are to be tried in Phase Two, all should be tried in Phase Two.

14         At the June 11, 2007 hearing, Bryant argued that his right to trial by
15 jury precludes the Court from trying liability and damages to separate juries. That is
16 simply incorrect. See Arthur Young & Co. v. U. S. Dist. Court, 549 F.2d 686, 692-
17 693 (9th Cir. 1977) (holding that liability and damages may be tried to separate
18 juries); Yamaha Hatsudoki Kabushiki Kaisha v. Bombardier Inc., 2001 WL 501354,
19 at *3 (C.D. Cal. 2001) (holding that the plaintiff "is not entitled to a unitary jury,"
20 and that "even if a second jury were to be empaneled, [plaintiffs] Seventh
21 Amendment rights would not be implicated"); Butler v. Home Depot, Inc., 1996 WL
22 421436, at *6 (N.D. Cal. 1996) (rejecting defendant's argument "that bifurcation of
23 liability and damages would violate its Seventh Amendment right to a fair trial,
24 because different juries would be deciding essentially the same issues," and holding
25 that "[a]s evidenced by the numerous cases across the country that have addressed
26 this issue, the Seventh Amendment does not mandate that all phases of the litigation
27 be heard by the same jury"); see also 9 Fed. Practice & Procedure § 2391 ("Is there a

28

EXHIBIT 20
PAGE 600

-5-

PAGE _____

MATTEL'S MEMORANDUM RE: TRIAL STRUCTURE

EXHIBIT

1 | violation of the constitutional provision if issues are submitted independently to

2 | separate juries?  The answer rather clearly must be in the negative.").

3 |       The Seventh Amendment does not preclude the Court from trying

4 | liability and damages issues to separate juries.[4]

5 |

6 | DATED: June 20, 2007         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

7 |

8 |                         By John Quinn  O.S.

9 |                           John B. Quinn
                          Attorneys for Plaintiff

10 |                           Mattel, Inc.

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |                     EXHIBIT __

25 |                                 **EXHIBIT 20**

26 |                     PAGE __        **PAGE 601**

27 | [4]   Charts of Mattel's proposals, listing the claims that would be tried in each

28 | Phase, are included in the Appendix that follows.

-6-

MATTEL'S MEMORANDUM RE: TRIAL STRUCTURE

**Appendix**

**CURRENT STRUCTURE**

| Phase 1 Trial | Phase 2 Trial |
|---|---|
| • Breach of Contract against Bryant (MC 1)[5] | • Copyright Infringement (AC 1) |
| | • RICO (AC 2) |
| • Breach of Fiduciary Duty against Bryant (MC 2) | • Conspiracy to Violate RICO (AC 3) |
| • Breach of Duty of Loyalty against Bryant (MC 3) | • Misappropriation of Trade Secrets (AC 4) |
| • Unjust Enrichment against Bryant (MC 4) | • Breach of Contract (AC 5) |
| • Conversion against Bryant (MC 5) | • Intentional Interference with Contract (AC 6) |
| | • Breach of Fiduciary Duty (AC 7) |
| | • Aiding and Abetting Breach of Fiduciary Duty (AC 8) |
| | • Breach of Duty of Loyalty (AC 9) |
| | • Aiding and Abetting Breach of Duty of Loyalty (AC 10) |
| | • Conversion (AC 11) |
| | • Unfair Competition (AC 12) |
| | • Declaratory Relief (AC 13) |
| | • False Designation of Origin (UC 1) |
| | • Unfair Competition (UC 2) |
| | • Dilution (UC 3) |
| | • Unjust Enrichment (UC 4) |

[5] MC = Mattel's Claims in *Mattel v. Bryant*
AC = Mattel's Counterclaims in *MGA v. Mattel*
UC = MGA's Claims in *MGA v. Mattel*

EXHIBIT _____

PAGE _____

EXHIBIT 20
PAGE 602

-7-

MATTEL'S MEMORANDUM RE: TRIAL STRUCTURE

07209/2147647.5

## MATTEL'S MODIFICATION OF DEFENDANTS' PROPOSAL

| Phase 1(a) Trial | Phase 1(b) Trial | Phase 2 Trial |
|---|---|---|
| • Breach of Contract against Bryant (MC 1, AC 5) (liability only) | • Copyright Infringement (AC 1) | • False Designation of Origin (UC 1) |
| • Breach of Fiduciary Duty against Bryant (MC 2, AC 7) (liability only) | • Damages (re: all Phase 1 claims) | • Unfair Competition (UC 2) |
| • Breach of Duty of Loyalty against Bryant (MC 3, AC 9) (liability only) | | • Dilution (UC 3) |
| • Unjust Enrichment against Bryant (MC 4) (liability only) | | • Unjust Enrichment (UC 4) |
| • Conversion against Bryant (MC 5, 11) (liability only) | | • RICO (AC 2) |
| • Conversion against MGA and Larian (re: Bratz; AC 11) (liability only) | | • Conspiracy to Violate Rico (AC 3) |
| • Intentional Interference with Contract (re: Bryant; AC 6) (liability only) | | • Misappropriation of Trade Secrets (AC 4) |
| • Aiding and Abetting Breach of Fiduciary Duty (re: Bryant; AC 8) (liability only) | | • Intentional Interference with Contract (re: Brawer, Machado, Trueba, Vargas, Brisbois, and other former Mattel employees; AC 6) |
| • Aiding and Abetting Breach of Duty of Loyalty (re: Bryant; AC 10) (liability only) | | • Breach of Fiduciary Duty (re: Machado; AC 7) |
| | | • Aiding and Abetting Breach of Fiduciary Duty (re: Brawer, Machado, Trueba, Vargas, Brisbois, and other former Mattel employees; AC 8) |
| | | • Breach of Duty of Loyalty (re: Machado; AC 9) |
| | | • Aiding and Abetting Breach of |

EXHIBIT —

PAGE ____

**EXHIBIT 20
PAGE 603**

-8-

MATTEL'S MEMORANDUM RE: TRIAL STRUCTURE

07209/2147647.5

| Phase 1(a) Trial | Phase 1(b) Trial | Phase 2 Trial |
|---|---|---|
| • Unfair Competition (re: bribery of Bryant; AC 12) (liability only)) <br><br> • Declaratory Relief (re: ownership of original Bratz works allegedly created by Bryant while employed by Mattel; AC 13) | | Duty of Loyalty (re: Brawer, Machado, Trueba, Vargas, Brisbois, and other former Mattel employees; AC 10) <br><br> • Conversion (non-Bratz; AC 11) <br><br> • Unfair Competition (except bribery of Bryant) (AC 12) <br><br> • Damages (re: all Phase Two claims) |

EXHIBIT _____

PAGE _____

**EXHIBIT 20
PAGE 604**

## MATTEL'S SUGGESTED MINIMUM MODIFICATION

| Phase 1 Trial | Phase 2 Trial |
|---|---|
| • Breach of Contract against Bryant (MC 1) (liability only) | • Copyright Infringement (AC 1) |
| • Breach of Fiduciary Duty against Bryant (MC 2) (liability only) | • RICO (AC 2) |
| | • Conspiracy to Violate RICO (AC 3) |
| • Breach of Duty of Loyalty against Bryant (MC 3) (liability only) | • Misappropriation of Trade Secrets (AC 4) |
| | • Breach of Contract (AC 5) |
| • Unjust Enrichment against Bryant (MC 4) (liability only) | • Intentional Interference with Contract (AC 6) |
| • Conversion against Bryant (MC 5) (liability only) | • Breach of Fiduciary Duty (AC 7) |
| • Declaratory Relief (re: ownership of original Bratz works allegedly created by Bryant while employed by Mattel; AC 13) | • Aiding and Abetting Breach of Fiduciary Duty (AC 8) |
| | • Breach of Duty of Loyalty (AC 9) |
| | • Aiding and Abetting Breach of Duty of Loyalty (AC 10) |
| | • Conversion (AC 11) |
| | • Unfair Competition (AC 12) |
| | • Declaratory Relief (except ownership of original Bratz works allegedly created by Bryant while employed by Mattel; AC 13) |
| | • False Designation of Origin (UC 1) |
| | • Unfair Competition (UC 2) |
| | • Dilution (UC 3) |
| | • Unjust Enrichment (UC 4) |
| | • Damages (re: Phase One and Phase Two claims) |

EXHIBIT _____

PAGE _____    **EXHIBIT 20 PAGE 605**

-10-

MATTEL'S MEMORANDUM RE: TRIAL STRUCTURE

07209/2147647.5

1      **PROOF OF SERVICE**

2          I am employed in the County of Los Angeles, State of California.  I am over the age of
   eighteen years and not a party to the within action; my business address is 865 South Figueroa
3   Street, 10th Floor, Los Angeles, California 90017-2543.

4          On June 20, 2007, I served true copies of the following document(s) described as
   **MATTEL'S MEMORANDUM REGARDING TRIAL STRUCTURE** on the parties in this
5   action as follows:

6          Diana M. Torres                              Patricia Glaser, Esq.
           O'Melveny & Myers, LLP           Christensen, Glaser, Fink, Jacobs, Weil &
7          400 S Hope Street                            Shapiro, LLP
           Los Angeles, CA 90071              10250 Constellation Blvd., 19th Floor
8          Personal Service                         Los Angeles, CA  90067
                                                         Personal Service
9
           John W. Keker, Esq.
10         Michael H. Page, Esq.
           Christa M. Anderson, Esq.
11         KEKER & VAN  NEST, LLP
           710 Sansome Street
12         San Francisco, CA 94111
           FedEx

13
   **BY FEDEX:**  I deposited such document(s) in a box or other facility regularly maintained by
14  FedEx, or delivered such document(s) to a courier or driver authorized by FedEx to receive
   documents, in sealed envelope(s) or package(s) designated by FedEx with delivery fees paid or
15  provided for, addressed to the person(s) being served.

16  **BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the office of the person(s)
   being served.
17
          I declare that I am employed in the office of a member of the bar of this Court at whose
18  direction the service was made.

19        Executed on June 20, 2007, at Los Angeles, California.

20

21  _____

22  Wanda Taylor

23

24  Dave Quintana, Now Messenger

25

26

27

28  EXHIBIT _____

   PAGE _____                        **EXHIBIT 20**
                                        **PAGE 606**

**EXHIBIT 21**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                    Date: February 4, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.
            AND CONSOLIDATED ACTIONS
=======================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes                           Theresa Lanza
          Courtroom Deputy Clerk               Court Reporter

ATTORNEYS PRESENT FOR CARTER           ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

Michael Page                           John Quinn
                                       Jon D. Corey

                                       ATTORNEY PRESENT FOR CARLOS
ATTORNEYS PRESENT FOR MGA:             GUSTAVO MACHADO GOMEZ:

Thomas J. Nolan
Carl A. Roth
Robert J. Harrington

ATTORNEYS PRESENT FOR THIRD-
PARTY WITNESSES

Larry W. McFarland
Scott Gizer
Ramit Mizrahi
Henry H. Gonzalez
Neal A. Potischman
John Patrick Petrullo

Alexander H. Cote

MINUTES FORM 90                        Initials of Deputy Clerk __jh_
CIVIL -- GEN                           Time: 1/45

                         1

EXHIBIT _____

PAGE _____        EXHIBIT 21
                   PAGE 607

PROCEEDINGS:

HEARING ON EX PARTE APPLICATIONS:

**1722 EX PARTE APPLICATION to Compel Deposition of Ana Cabrera, Beatriz Morales, and Maria Salazar and Mel Woods**

**1724 EX PARTE APPLICATION to Compel Depositions of Daphne Gronich, Joe Tiongco, Mariana Trueba, Pablo Vargas, MGA Entertainment, Inc.**

**1538 EX PARTE APPLICATION for Relief from 01-07-2008 Order re Motion Hearing**

**1583 EX PARTE APPLICATION to Compel Production of Electronic Media from Third Parties Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow**

**1624 EX PARTE APPLICATION to Enforce Court's Orders Compelling Production of Tangible Items**

**1628 EX PARTE APPLICATION to Stay pending Review of Discovery Master's January 11, 2008 Order Granting MGA's and Bryant's Motion to Compel**

**ORDER TO SHOW CAUSE DIRECTED TO COUNSEL LARRY McFARLAND**

Having considered the documents submitted in support of and opposition to the applications set forth above, and having heard oral argument, the Court issues its rulings on these matters as stated on the record and as follows:

**EX PARTE APPLICATIONS REGARDING DEPOSITIONS
(DOCKET #1722 AND #1724) AND ORDER TO SHOW CAUSE**

These applications are DENIED IN PART, subject to the following rulings:

(1)     The Court's January 7, 2008, Order was intended to grant certain specified relief from the numerical limitations on discovery requests; it was not meant to make definitive rulings on burdensomeness, relevance, privilege, or service of discovery requests.

(2)     The Phase 1 discovery deadline has expired. Any Phase 1 discovery not properly served on or before this deadline may not now be pursued. Based on the representation of counsel that process for the letters rogatory on the Hong Kong witnesses has not been initiated, these witnesses may not be deposed on Phase 1 issues. Notwithstanding this ruling, however, the Court is concerned with the allegations by Mattel in its ex parte application regarding certain actions of Larry

MINUTES FORM 90
CIVIL – GEN                                          2

Initials of Deputy Clerk __jh_____
Time: 1/45

EXHIBIT _____

PAGE ____         EXHIBIT 21
                  PAGE 608

McFarland, who represents certain third-party witnesses. Mattel submits that Mr. McFarland has been deliberately evading service of a notice of deposition on him and his clients -- serious allegations when made by an officer of the Court against another officer of the Court. Accordingly, Mr. McFarland is **ORDERED TO SHOW CAUSE** why he and his clients should not be ordered to appear for deposition. A written response to this OSC must be filed no later than February 11, 2008. Other parties may file written replies no later than February 19, 2008. The Court will hear the matter at 10:00 a.m., February 25, 2008, in Courtroom One of the above-referenced Court.

(3)     Phase 1 depositions that have been scheduled past the discovery deadline for the convenience of the witnesses or pursuant to the stipulation of the parties and/or witnesses may proceed as scheduled.

(4)     All discovery related to Phase 2, other than certain individual depositions that may be related to both Phase 1 and Phase 2, is STAYED until further order of the Court.

(5)     As previously ordered and reaffirmed by this Court, all discovery matters shall be presented in the first instance to the Discovery Master. The fact that the Discovery Master's ruling might impact upon the Court's scheduling order does not relieve the parties of following this procedure. For instance, motions to compel, motions to quash, or motions challenging service as to existing discovery requests shall be brought before the Discovery Master. So, too, must objections based on burdensomeness, relevancy, or privilege. In general, and on the matters touched upon herein, the Court expresses no opinion as to these issues, and instead leaves those issues to the Discovery Master to decide in the first instance.

(6)     To the extent that certain challenged depositions are within the scope of the Court's January 7, 2008, Order, and are related to Phase 1 (or to the extent that a given deposition (other than a Rule 30(b)(6) deposition) is related to both Phase 1 and Phase 2), said deposition may proceed subject to the challenges set forth in the previous paragraph. To the extent that the depositions are related to Phase 2, they are STAYED, as set forth above, notwithstanding the January 7, 2008, Order.

(7)     The parties' arguments require the Court to resolve an internal inconsistency in the Court's January 7, 2008, Order. The Court's Order was meant to grant all parts of Mattel's Motion for Leave to Take Additional Discovery (docket #1134) except the relief sought as to the deposition of Carter Bryant. The Court amends its 01.07.08 Order as follows:

> Delete: <Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11) and relating to the trade secret and RICO

MINUTES FORM 90
CIVIL -- GEN

3

Initials of Deputy Clerk __jh_____
Time: 1/45

EXHIBIT _____

PAGE _____     **EXHIBIT 21**
                 **PAGE 609**

claims (set forth in the moving papers at 13).>

Replace with: <Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11), relating to the trade secret and RICO claims (set forth in the moving papers at 13), and relating to document preservation (set forth in the moving papers at 14 (Joe Tiongco and Daphne Gronich)).>

(8)   The Court's January 7, 2008, Order granted leave to take additional discovery over and above the previously allocated 24 depositions per side.  Nevertheless, as to all other depositions, how to "count" the previously allocated depositions is left to the discretion of the Discovery Master.

(9)   At the hearing, counsel for Christensen, Glaser requested that the Court clarify that its January 7, 2008, ruling granted leave to depose it on only one issue.  That is not the case, and the request is DENIED.  Mattel has been granted relief from the numerical limitations that previously restricted its ability to depose those individuals and entities addressed by the Court's January 7, 2008, Order, including its ability to depose Christensen, Glaser.  Unless otherwise restricted by the Discovery Master upon proper presentation of the issue to him, Mattel may depose Christensen, Glaser on any relevant, non-privileged matter.

### MACHADO GOMEZ'S EX PARTE APPLICATION RE JANUARY 7, 2008, ORDER (DOCKET # 1504)

This application is GRANTED.  As noted above, Phase 2 discovery is STAYED until further order of the Court.  The Court will address Phase 2 discovery, motions, pretrial, and trial dates after the conclusion of Phase 1 of the trial.

### MATTEL'S EX PARTE APPLICATION RE MOTION TO COMPEL PRODUCTION OF ELECTRONIC MEDIA FROM THIRD PARTIES (DOCKET #1538)

This application is DENIED.  This matter must be addressed in the first instance by the Discovery Master.

### MATTEL'S EX PARTE APPLICATION TO ENFORCE COURT'S ORDERS COMPELLING PRODUCTION OF TANGIBLE ITEMS (#1624)

This application is GRANTED IN PART.  Counsel for MGA shall employ its best efforts to arrange for shipment of those tangible things located in the Peoples' Republic of China ("PRC") to Hong Kong Special Administrative Region ("Hong Kong") for examination in conjunction with those tangible things already located in Hong Kong.  Otherwise, counsel for MGA shall cooperate in the

EXHIBIT _____

PAGE _____

EXHIBIT 21
PAGE 610

arrangements for inspection in both Hong Kong and the PRC. Mattel's request for costs is denied without prejudice.

Counsel are encouraged to meet and confer with the intent of reaching a stipulation regarding the supplementation of expert reports. Absent such stipulation, at the appropriate time, the Court will entertain an ex parte application from any party regarding this issue.

### MATTEL'S EX PARTE APPLICATION TO STAY PENDING REVIEW OF DISCOVERY MASTER'S JANUARY 11, 2008 ORDER (DOCKET # 1628)

This application is GRANTED IN PART. The Court sets the motion for hearing on February 11, 2008. Opposition shall be filed no later than February 6, 2008; any reply shall be filed no later than February 8, 2008. The Discovery Master's January 11, 2008, Order is stayed until the issuance of the Court's minute order regarding the February 11, 2008, hearing.

**IT IS SO ORDERED.**

Initials of Deputy Clerk __jh_____
Time: 1/45

EXHIBIT _____

PAGE _____        **EXHIBIT 21
PAGE 611**

Case 2:04-cv-09049-SGL-RNB    Document 1931    Filed 02/04/2008    Page 6 of 7

## NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)    **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**  Minute Order of February 4, 2008

| | | | |
|---|---|---|---|
| | Atty Sttlmnt Officer Panel Coordinator | | US Attorneys Office - Civil Division -L.A. |
| | BAP (Bankruptcy Appellate Panel) | | US Attorneys Office - Civil Division - S.A. |
| | Beck, Michael J (Clerk, MDL Panel) | | US Attorneys Office - Criminal Division -L.A. |
| | BOP (Bureau of Prisons) | | US Attorneys Office - Criminal Division -S.A. |
| | CA St Pub Defender (Calif. State PD) | | US Bankruptcy Court |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) | | US Marshal Service - Los Angeles (USMLA) |
| | Case Asgmt Admin (Case Assignment Administrator) | | US Marshal Service - Riverside (USMED) |
| | Catterson, Cathy (9th Circuit Court of Appeal) | | US Marshal Service -Santa Ana (USMSA) |
| | Chief Deputy Admin | | US Probation Office (USPO) |
| | Chief Deputy Ops | | US Trustee's Office |
| | Clerk of Court | | Warden, San Quentin State Prison, CA |
| | Death Penalty H/C (Law Clerks) | | |
| | Dep In Chg E Div | | |
| | Dep In Chg So Div | | |
| | Federal Public Defender | | |
| | Fiscal Section | | |
| | Intake Section, Criminal LA | | |
| | Intake Section, Criminal SA | | |
| | Intake Supervisor, Civil | | |
| | PIA Clerk - Los Angeles (PIALA) | | |
| | PIA Clerk - Riverside (PIAED) | | |
| | PIA Clerk - Santa Ana (PIASA) | | |
| | PSA - Los Angeles (PSALA) | | |
| | PSA - Riverside (PSAED) | | |
| | PSA - Santa Ana (PSASA) | | |
| | Schnack, Randall (CJA Supervising Attorney) | | |
| | Statistics Clerk | | |

| ✓ | **ADD NEW NOTICE PARTY** (if sending by fax, mailing address must also be provided) |
|---|---|
| | Name: Ambassador Pierre-Richard Prosper |
| | Firm: |
| | Address *(include suite or floor)*:  P.O. Box 581103 |
| | Salt Lake City, UT  84158 |
| | *E-mail: Prosper.Pierre@Arentfox.com |
| | *Fax No.: |

\* For CIVIL cases only

| *JUDGE / MAGISTRATE JUDGE (list below):* |
|---|
| |
| |
| |
| |

Initials of Deputy Clerk  jh

G-75  (03/07)          NOTICE PARTY SERVICE LIST

EXHIBIT _____

PAGE _____

**EXHIBIT 21**
**PAGE 612**

Case 2:04-cv-09049-SGL-RNB    Document 1931    Filed 02/04/2008    Page 7 of 7

## NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)    **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**  Minute Order of February 4, 2008

| |
|---|
| Atty Sttlmnt Officer Panel Coordinator |
| BAP (Bankruptcy Appellate Panel) |
| Beck, Michael J (Clerk, MDL Panel) |
| BOP (Bureau of Prisons) |
| CA St Pub Defender (Calif. State PD) |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| Case Asgmt Admin (Case Assignment Administrator) |
| Catterson, Cathy (9th Circuit Court of Appeal) |
| Chief Deputy Admin |
| Chief Deputy Ops |
| Clerk of Court |
| Death Penalty H/C (Law Clerks) |
| Dep In Chg E Div |
| Dep In Chg So Div |
| Federal Public Defender |
| Fiscal Section |
| Intake Section, Criminal LA |
| Intake Section, Criminal SA |
| Intake Supervisor, Civil |
| PIA Clerk - Los Angeles (PIALA) |
| PIA Clerk - Riverside (PIAED) |
| PIA Clerk - Santa Ana (PIASA) |
| PSA - Los Angeles (PSALA) |
| PSA - Riverside (PSAED) |
| PSA - Santa Ana (PSASA) |
| Schnack, Randall (CJA Supervising Attorney) |
| Statistics Clerk |

| |
|---|
| US Attorneys Office - Civil Division -L.A. |
| US Attorneys Office - Civil Division - S.A. |
| US Attorneys Office - Criminal Division -L.A. |
| US Attorneys Office - Criminal Division -S.A. |
| US Bankruptcy Court |
| US Marshal Service - Los Angeles (USMLA) |
| US Marshal Service - Riverside (USMED) |
| US Marshal Service -Santa Ana (USMSA) |
| US Probation Office (USPO) |
| US Trustee's Office |
| Warden, San Quentin State Prison, CA |

✓ **ADD NEW NOTICE PARTY** (If sending by fax, mailing address must also be provided)

Name: Hon. Edward A. Infante (Ret.)

Firm:

Address (include suite or floor): Two Embarcadero Center, Suite 1500, San Francisco, CA 94111

*E-mail:

*Fax No.:

* For CIVIL cases only

**JUDGE / MAGISTRATE JUDGE (list below):**

**Initials of Deputy Clerk** jh

EXHIBIT

PAGE

**EXHIBIT 21**
**PAGE 613**

## Laura Kinsey

| | |
|---|---|
| **From:** | Dylan Proctor |
| **Sent:** | Tuesday, February 05, 2008 10:20 AM |
| **To:** | Laura Kinsey |
| **Subject:** | Fw: Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc Motion Hearing |

Pmt

Dylan Proctor
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 3rd Floor
Los Angeles, CA  90017

Direct:  (213) 443-3112
Main Phone:  (213) 443-3000
Main Fax:  (213) 443-3100

E-mail:  dylanproctor@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

----- Original Message -----
From: Dylan Proctor
To: MGA / Bryant Team
Sent: Tue Feb 05 09:50:32 2008
Subject: Fw: Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc Motion Hearing

Dylan Proctor
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 3rd Floor
Los Angeles, CA  90017

Direct:  (213) 443-3112
Main Phone:  (213) 443-3000
Main Fax:  (213) 443-3100

E-mail:  dylanproctor@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible

1

EXHIBIT _____

PAGE _____

**EXHIBIT 21**
**PAGE 614**

for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.


----- Original Message -----
From: cacd_ecfmail@cacd.uscourts.gov <cacd_ecfmail@cacd.uscourts.gov>
To: ecfnef@cacd.uscourts.gov <ecfnef@cacd.uscourts.gov>
Sent: Tue Feb 05 09:34:11 2008
Subject: Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc Motion Hearing

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended. Direct all inquiries to ecf-helpdesk@cacd.uscourts.gov.
***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA


Notice of Electronic Filing


The following transaction was entered on 2/5/2008 at 9:25 AM PST and filed on 2/4/2008


Case Name:    Carter Bryant v. Mattel Inc
Case Number: 2:04-cv-9049 <https://ecf.cacd.uscourts.gov/cgi-bin/DktRpt.pl?167222>
Filer:
Document Number:    1931 <https://ecf.cacd.uscourts.gov/cgi-bin/show_case_doc?
1931,167222,,85692124,,5610>


Docket Text:
MINUTES OF Motion Hearing held before Judge Stephen G. Larson: HEARING ON EX PARTE APPLICATIONS: 1722 EX PARTE APPLICATION to Compel Deposition of Ana Cabrera, Beatriz Morales, and Maria Salazar and Mel Woods; 1724 EX PARTE APPLICATION to Compel Depositions of Daphne Gronich, Joe Tiongco, Mariana Trueba, Pablo Vargas, MGA Entertainment, Inc.; 1538 EX PARTE APPLICATION for Relief from 01-07-2008 Order re Motion Hearing; 1583 EX PARTE APPLICATION to Compel Production of Electronic Media from Third Parties Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow; 1624 EX PARTE APPLICATION to Enforce Court's Orders Compelling Production of Tangible Items; 1628 EX PARTE APPLICATION to Stay pending Review of Discovery Master's January 11, 2008 Order Granting MGA's and Bryant's Motion to Compel; ORDER TO SHOW CAUSE DIRECTED TO COUNSEL LARRY McFARLAND. See Minute Order for complete text. MATTELS EX PARTE APPLICATION TO STAY PENDING REVIEW OF DISCOVERY MASTER'S JANUARY 11, 2008 ORDER (DOCKET # 1628). This application is GRANTED IN PART. The Court sets the motion for hearing on February 11, 2008. Opposition shall be filed no later than February 6, 2008; any reply shall be filed no later than February 8, 2008. The Discovery Masters January 11, 2008, Order is stayed until the issuance of the Courts minute order regarding the February 11, 2008, hearing. IT IS SO ORDERED. [RE: Declaration (Motion related), Declaration (Motion related)[1850], Reply (Motion related), Reply (Motion related), Reply (Motion related)[1887], Reply (Motion related), Reply (Motion related)[1721], Declaration (Motion related)[1691], Response in Opposition to Motion, [1560], Reply (Motion related), Reply (Motion related)[1853], Amendment (Motion related), Amendment (Motion related)[1792], Declaration (Motion related)[1817], Response in Opposition to Motion, [1554], Declaration (Motion related), Declaration (Motion related), Declaration (Motion related)[1655], Response in Opposition to Motion,, [1652], Set/Reset Deadlines/Hearings: Motion set for hearing on 2/11/2008 at 10:00 AM before Judge Stephen G. Larson] Court Reporter: Theresa Lanza. (jh)

2

EXHIBIT _____

PAGE ____        **EXHIBIT 21**
                 **PAGE 615**

2:04-cv-9049 Notice has been electronically mailed to:

Alan Neil Goldberg      agoldberg@sgattys.com

John B Quinn      johnquinn@quinnemanuel.com

David C Scheper      dscheper@obsklaw.com,feseroma@obsklaw.com

Alisa Morgenthaler Lever      amorgenthaler@chrisglase.com

Larry W McFarland      lmcfarland@kmwlaw.com

Raoul D Kennedy      rkennedy@skadden.com

Mark E Overland      moverland@obsklaw.com

Thomas J Nolan      tnolan@skadden.com,carl.roth@skadden.com,marcus.mumford@skadden.com

Emil W Herich      eherich@kmwlaw.com

Timothy L Alger      timalger@quinnemanuel.com

John W Keker      jkeker@kvn.com,droberts@kvn.com,efiling@kvn.com

Jon D Corey      joncorey@quinnemanuel.com

Michael H Page      mhp@kvn.com

Christa M Anderson      canderson@kvn.com

Kien C Tiet      ktiet@sgattys.com

Michael T Zeller      michaelzeller@quinnemanuel.com

Kenneth A Plevan      kenneth.plevan@skadden.com,drogosa@skadden.com,sumclaug@skadden.com

Melissa Grant      melissagrant@quinnemanuel.com

Alexander H Cote      acote@obsklaw.com

Brett Dylan Proctor      dylanproctor@quinnemanuel.com

Oleg Stolyar      alexstolyar@quinnemanuel.com

Cyrus S Naim      cyrusnaim@quinnemanuel.com

Nathan Meyer      nmeyer@kayescholer.com,dclow@kayescholer.com

Matthew M Werdegar      mmw@kvn.com

Juan Pablo Alban      juanpabloalban@quinnemanuel.com

Leah Chava Gershon      leah@spertuslaw.com

3

EXHIBIT _____

PAGE _____      **EXHIBIT 21**
**PAGE 616**

John Elliot Trinidad     jtrinidad@kvn.com,yjayasuriya@kvn.com,efiling@kvn.com

Audrey Walton-Hadlock     awaltonhadlock@kvn.com

Michelle M Campana     michelle.campana@skadden.com

2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :

4

EXHIBIT _____

PAGE _____          **EXHIBIT 21
PAGE 617**

**EXHIBIT 22**

# Expert Report of
# Dr. Erich Joachimsthaler

In the matter of

Carter Bryant v. Mattel and consolidated cases

February 11, 2008

CONFIDENTIAL – ATTORNEY'S EYES ONLY

EXHIBIT 22
PAGE 618

## Credentials

I, Erich Joachimsthaler, make the following expert report:

1.  I am the founder and Chief Executive Officer of Vivaldi Partners, a strategic consulting firm with a focus on strategy, marketing and innovation with headquarters in New York and offices in Los Angeles, Munich, Hamburg, Dusseldorf, Zurich, London and Buenos Aires.   I am also a Visiting Professor of Business Administration at IESB Business School, one of the leading European MBA and Executive Programs. I have been a professional in the brand and marketing field for more than 20 years and have provided expert brand and marketing advice to a diverse set of clients in industries such as consumer products, apparel, technology, financial services, entertainment and energy among others. I am over the age of twenty-one and am competent to make this declaration.

2.  Over the past fifteen years, I have been involved in building strong brands for many clients in North America, Europe, and Asia, including those targeting the young population such as Roxy Clothing and Accessories, Levi's Strauss, Adidas, Lucky Brand Jeans, and Frito Lay. I have worked for clients in every area relevant for building strong brands.  I have assessed the value of brands and their potential for development in several hundred situations, and I have led research on brand management.

3.  I have published numerous articles and two books on marketing strategy and building strong brands.  My book, *Brand Leadership: The Next Level of the Brand Revolution*, which I co-authored with David Aaker, was published by The Free Press in January 2000 and has been a top seller among books on brands over the years.  My latest book, *Hidden in Plain Sight: How to Find and Execute Your Next Growth Strategy*, was published by the Harvard

2

CONFIDENTIAL – ATTORNEY'S EYES ONLY

EXHIBIT 22
PAGE 619

Business Press in May 2007. It is being translated into 7 languages. I also have published extensively in academic journals such as the *Harvard Business Review, Journal of Marketing Research, Journal of Marketing, Journal of Consumer Research*, and *Sloan Management Review*.

4. I have held faculty positions at the Darden Graduate School of Business Administration at the University of Virginia, the University of Southern California, the University of Houston, and IESE (Instituto Superiores de la Empresa) in Barcelona, Spain, New York, London and Munich. IESE is one of the leading global business schools offering MBA and executive education programs. It ranks among the Top 5 global business schools by *The Economist* and *The Financial Times*.

5. In 1988, I completed a post-doctoral fellowship at the Harvard Business School. I received my Ph.D. in Business Administration, with emphasis on statistics and marketing, from the University of Kansas in 1985, where I also received my Master's Degree of Science, with emphasis in quantitative methods, in 1981. In 1979, I received my Economics Degree from the Fachhochschule Giessen-Friedberg, Germany.

6. I have served as an expert witness in several cases, including *Coty (Davidoff) v. CVS, Exide v. Enersys, Adidas America, Inc. & Adidas-Salomon AG v. Kmart Corporation, adidas America, Inc. & Adidas AG v. Payless ShoeSource, Inc* and *LSU vs Smack Apparel*. A more detailed summary of my training, past experience, and prior testimony appears as an appendix at the end of this testimony.

7. I am being compensated at my normal and customary hourly rate of $700 per hour. My consulting firm is also being compensated for the time spent by its research staff at their normal and customary hourly rates.

<div style="text-align:center">3</div>

CONFIDENTIAL – ATTORNEY'S EYES ONLY

EXHIBIT 22
PAGE 620

8. My opinion is based on currently available information. I understand that a substantial amount of fact discovery has not been completed and likely will not be completed for another 30-45 days. I anticipate submitting a rebuttal report that takes into account any additional discovery that becomes available after the date of this initial report. I reserve the right to supplement, amend, or revise my opinions and conclusions based on this additional discovery.

## Summary of Issues and Opinions

9. I have been engaged to render my expert and professional opinion on various aspects of branding of Bratz, and the marketing and business strategy of MGA Entertainment. Specifically, I was asked to consider on behalf of MGA Entertainment the strengths of the Bratz brand, MGA Entertainment's brand-building efforts, and the emergence of new market opportunities and segments over the last decade in the toy industry with a particular focus on doll, fashions and accessories space. I also studied the responses of competitors in these new market spaces. My opinion and analysis are written below.

10. My opinions appear in detail in this document. In order to form these opinions, I considered and relied upon:[1]

    a. Documents produced in this litigation, including:

        i. Internal research and strategic planning documents from MGA Entertainment and Mattel, Inc.

        ii. Product overview of doll lines and licensing programs

---

[1] A complete list of the documents and depositions I considered and relied upon can be found in the appendix.

4

CONFIDENTIAL – ATTORNEY'S EYES ONLY

EXHIBIT 22
PAGE 621

    iii.  Marketing, Advertising and Business plans from MGA Entertainment and

        Mattel, Inc.

    iv.  Annual Reports and documents with growth models, growth potential and

        quarterly reports

    v.  Depositions taken in this case

  b.  Materials collected and researched by Vivaldi Partners

    i.  Dolls purchased during store check

    ii.  Toy store visits in New York City

    iii.  Analysis of doll websites such as Be-Bratz.com

    iv.  Secondary academic and industry research

    v.  Mattel, Inc. public filings

  c.  Selected discussions with executives of MGA Entertainment

  d.  My own and my colleagues' extant work on conceptual theories, empirical

    research, and professional work on cognitive psychology, branding and

    marketing. I applied our frameworks and approaches to understand the situation

    and context of doll brands and the impact on Bratz and its trademarks and

    identity.

11. Based on this work, I arrived at several conclusions:

  a.  The Bratz brand creates enormous value to MGA Entertainment and is a

    significant and absolutely business-essential asset to its success in maintaining a

    relationship with consumers and sustaining success in the doll market.

<div align="center">5</div>

CONFIDENTIAL – ATTORNEY'S EYES ONLY

EXHIBIT 22
PAGE 622

b. MGA Entertainment has applied many principles of proactive brand management that provided the organizational setting to create, build and nurture a strong brand identity for Bratz.

c. Bratz has developed into a strong brand through a series of successful innovations and powerful brand-building programs. Since its launch, the major dimensions of brand strength that constitute brand equity have strengthened. This should allow Bratz to realize a significant price premium over an unbranded equivalent.

d. The nature of the consumer decision-making process in toys, and particular dolls is such that the brand has a significant impact on consumer purchase decisions.

e. Based on the strength of the Bratz brand and the role of this brand in consumer decision making for fashion dolls, I conclude that the price premium that Bratz can realize over an unbranded equivalent ranges from about 50% to 70% in the categories of fashion dolls and accessories.

f. Mattel, the incumbent market leader, did not respond to the changing market conditions for many reasons that are internal to Mattel, and Mattel like most mature organizations, would not have been able to seize an "opportunity hidden in plain sight." In contrast, MGA Entertainment was able to capture the market opportunity and grow the overall market for fashion dolls.

12. Bratz and Barbie were brands I was quite familiar with even prior to being retained. I am the father of three children, a boy and two girls. My daughters (ages 13 and 11) have played with Bratz and Barbie dolls for sometime and I have been to stores where Bratz products are sold.

6

CONFIDENTIAL – ATTORNEY'S EYES ONLY

EXHIBIT 22
PAGE 623

13. In addition, I have asked a team of consultants to visit various stores in the New York area and the vicinity. This visit consisted of a systematic retail audit as I do customarily in my work with brands. The team visited ten stores. Three of these stores were large formats that typically sell the most popular doll products, five of these were all-purpose drug stores with toy aisles and two of them were discount stores that typically sell generic brands. We followed this research up with an online audit of key websites. These included branded websites like the Barbie Collector – the official Mattel site for Barbie, Barbie.com, Bratz.com – the Official Bratz site, but also social networking websites such as Be-Bratz.com that gave insight into the interactions of consumers with dolls, fashions and accessories in their daily life. During the retail audit we focused on several key areas concerning the branded environment, including packaging, price, and interactive elements.

**A. The Role of Brands in the Context of the Toy Business as well as the Doll, Fashion and Accessories Categories**

14. The word brand originates from the Old Norse word "brandr," which means to burn. Indeed, branding or burning was (and is) the method by which farmers mark their livestock to identify who owns them.[2] In this sense, a brand is a distinguishing name and/or symbol intended to identify services or goods.[3] This includes thoughts, feelings, emotions and experiences about anything that represents that brand such as the style, the logo, the design, a color, a gesture, or a package.

---

[2] Kevin L. Keller (2008), *Strategic Brand Management: Building, Measuring, and Managing Brand Equity*, 3rd Ed., Englewood Cliffs, NJ: Prentice-Hall, p. 3
[3] David A. Aaker, *Managing Brand Equity*, New York, NY, The Free Press, 1991.

7

CONFIDENTIAL – ATTORNEY'S EYES ONLY

EXHIBIT 22
PAGE 624

15. A brand can be distinguished from the product.[4] A brand includes characteristics such as product scope (e.g., Bratz is a fashion doll), product attributes (e.g., Bratz has big heads), quality/value (e.g., Bratz delivers a quality product), uses (e.g., Bratz is fun to play with), and functional benefits (e.g., Bratz helps the tween to learn about fashions). Characteristics are usually grouped in the following way:

    a.  User imagery (those who play with a particular doll, relatively important here is the age and also the social relationships such as other friends who play)

    b.  Origin and heritage (the imaginary background of the doll, is it American or European? What are the cultural roots of the brand?)

    c.  Organizational associations (generally viewed as the company behind a brand but here the concept applies to the context or the world of the doll, does the doll have friends, it is part of a family, etc. What is the world of Bratz versus what is the world of Barbie?)

    d.  Brand personality (any human-like characteristics that are imbued on the brand)

    e.  Symbols (anything that represents the brand: a tagline (Nike: just do it), a color (Barbie's pink), a logo (Disney's scripted logo), a package (the Coke bottle), a musical note (Intel's commercial), product design (Apple's iPod)).

16. These characteristics or dimensions of a brand translate into benefits for consumers beyond functional benefits. A doll, for example, can make a girl feel ambitious and energetic, like they can be what ever they want.[5] A brand potentially delivers:

---

[4] David A. Aaker and Erich Joachimsthaler, *Brand Leadership: The Next Level of the Brand Revolution*, New York, NY, The Free Press, 2000, p. 51-52.
[5] Adult-Size Barbie, *Christian Science Monitor*, Vol. 89, Issue 19, p 20

8

CONFIDENTIAL – ATTORNEY'S EYES ONLY

EXHIBIT 22
PAGE 625

    a.   Self-expressive benefits (e.g., driving a MINI car makes me be perceived as youthful with energy and vitality, or playing with a Bratz doll makes me be perceived as cool by my friends).

    b.   Emotional benefits (e.g., driving a Volvo makes me feel safe, or playing with Barbie makes me feel good about myself).

17. A brand is created by these characteristics. When these characteristics are brought together in a powerful manner, a brand touches on the buyers' feelings and emotions. In other words, it creates emotional and self-expressive benefits. Therefore, the definition of the brand and how these characteristics are created have important implications for all aspects of the marketing strategy including pricing, segmentation, communication and sales strategies.[6] The definition of the brand has implications for the entire business strategy including a company's policy towards growth (through brand growth strategies such as licensing or innovation through investments into new products).

18. Product attributes alone seldom distinguish a product meaningfully especially in the context of highly competitive markets with few barriers to entry. Competitors catch up or consumer preferences change. This explains the fact that products tend to have a relatively short life and can quickly become obsolete in the toy industry.

19. A brand on the other hand, can last a very long time when managed properly. A brand outgrows the product. The growth of a brand can be illustrated in the figure below. In essence, the relative sizes of the two circles change over time. The outer circle grows bigger and bigger.  Growing this circle is an important objective for all branding efforts because it is the brand that creates meaning for consumers. When provided with the right set of

---

[6] David A. Aaker, *Building Strong Brands*, New York, NY, The Free Press, 1996.

9

CONFIDENTIAL – ATTORNEY'S EYES ONLY

EXHIBIT 22
PAGE 626

characteristics, the brand develops an identity much like a person has an identity. For example, the tagline "Passion for Fashion", the fashions the doll chooses over time, the personalities of the girls, the colors, the packaging and the connotation of the Bratz name create meaning and hence value to consumers and influence on purchase. Over time, physical characteristics like the product design of a doll with a large head merely function as one of many cues to invoke perceptions in consumers' mind.  In the field of marketing, the popular adage is: "a product is developed in the factory, a brand is created in consumers' mind." Or as David Ogilvy, the advertising guru, wrote in his book, *Confessions of an Adman*, a "brand is a consumers' idea of a product."[7]



20. Metaphorically speaking, a brand can be viewed much like a box in someone's head. As people receive information about a brand, positive or negative, they file it away in the box labeled with the name of the brand.[8] After repeated exposure to or experience with a brand,

---

[7] David Ogilvy, *Confessions of an Adman*, Southbank Publishing, London, New Ed Edition, 2004.
[8] David A. Aaker, *Building Strong Brands*, New York, NY, The Free Press, 1996.

CONFIDENTIAL – ATTORNEY'S EYES ONLY

EXHIBIT 22
PAGE 627

the consumer will have a number of things or information or perceptions about the brand stored in this box.

21. Although brands are generally considered intangible, they are often amongst the most valuable assets of a corporation. Strong brands can be worth several billions.[9] In the latest *Interbrand Brand Valuation Study* of 2007, Coca-Cola was the most valuable brand at $65 billion dollars; Microsoft was the second most valuable brand at $57 billion dollars. A number of the world's most valuable brands come from the young consumer industry, including Disney (ranked 9th with an estimated value of $29 billion), Nike (ranked 31st with an estimated value of $11 billion), Nintendo (ranked 44th with an estimated value of $7 billion), and MTV (ranked 52nd with an estimated value of $7 billion). Other studies confirm the enormous financial value of brands targeting young consumers.[10] According to the *2003 Interbrand Brand Valuation Study*, the 97th most valuable brand was Barbie, valued at $1.8 billion, down from 94th place in 2002 and 84th place in 2001. Barbie disappeared from the *Interbrand* best 100 global brands list in 2004.[11]

22. Particularly in the toy industry and the doll category, brands are of extreme value because of the unique relationship between a brand and young children in terms of intensity and meaning. As the author Juliet B. Schor of the book *Born to Buy* on marketing to kids stated: "These days when kids ask, they ask for particular brands". A 2001 Nickelodeon study found that the average ten year old has memorized 300 to 400 brands. Among eight to fourteen year olds, 92 percent of requests are brand specific, and 89 percent of kids agree that

---

[9] Lev, Baruch, *Intangibles.* Washington, DC: Brookings Institution Press, 2001.
[10] Interbrand, *Best Global Brand 2007*, pp. 14 - 15
[11] Interbrand, *Best Global Brand 2003, 2002, and 2001.*

11

CONFIDENTIAL – ATTORNEY'S EYES ONLY

EXHIBIT 22
PAGE 628

"when I find a brand I like, I tend to stick with it."[12]  A 2000 Griffin Bacal study found that nearly two-thirds of mothers thought their children were brand aware by age three, and one-third said it happened at age two. Kids have clear preferences, they know which brands are cool, they covet them, and they pay attention to the ads for them. Today's tweens are the most brand-conscious generation in history."[13]

*Benefits of a brand to manufacturers and consumers*

23. A brand provides a number of benefits to both the manufacturer and brand owner. Strong brands provide a means of differentiating one product from another.  If you look only at the product itself, toys can be very similar and interchangeable.  A toy car or a plastic doll from one manufacturer can be functionally equivalent to comparable products from another manufacturer.  That is, it serves the same function for the consumer in terms of playing, learning, or enjoying. The branded aspects of the products, such as the name, design, packaging, themes, narratives, or unique product and communications elements, are what invoke in consumers' memory the information he or she has stored about a brand. This collection of perceptions, images, associations, attributes, perceptions, past experiences, feelings, emotions and opinions is what consumers rely on to draw comparisons between brands in order to form preferences, and to make purchase decisions.

24. A second benefit to the manufacturer of a strong brand is sustaining relevance with consumers. I define relevance in terms of the extent to which a consumer absorbs and assimilates a brand into their lives.[14]  Especially for toys targeting 7-12 year olds, a strong

---

[12] Juliet B. Schor, *Born to Buy*, Scribner, New York, NY, 2004.
[13] Juliet B. Schor, *Born to Buy*, Scribner, New York, NY, 2004, p. 25
[14] Erich Joachimsthaler, *Hidden in Plain Sight: How to Find and Execute your Company's Next Big Growth Strategy*, Harvard Business School Press, Boston, Mass, 2007.

12

CONFIDENTIAL – ATTORNEY'S EYES ONLY

EXHIBIT 22
PAGE 629

brand can help to sustain relevance amid constantly changing tastes and rapid turnover of core customers. The reality of the tween market is that every 5 years a toy company addresses a completely new group of consumers. Toy companies targeting tweens must therefore carefully manage their brands through constant renewal of their brand positioning and user imagery with new consumers. This requires consistent investment in the brand.

25. A third benefit to the manufacturer is that strong brands provide the basis for brand extensions, co-branding and licensing arrangements. Brand extensions involve using an existing brand name to introduce a new product, bring new customers to the brand franchise and increase market coverage.[15] Brand extensions are commonly used in the toy industry to enable companies to access new market segments or new categories. Examples of brand extensions of the Bratz brand include the Bratz Petz and the Lil Bratz lines. Brand extensions and other brand growth strategies are important because they help to create the brand territory, the world of Barbie or the world of Bratz.

26. Co-branding in particular has strong implications for brands by using more than one brand to enhance the overall value proposition, enriching the experience consumers have with the brand through a multiplicity of consumer touchpoints. As I state in my book with David Aaker, *Brand Leadership*, co-branding creates an advantage because of the positive associations it provides of the different brands. An example in the toy space would be the NBA licensing their name with Barbie to create NBA Barbie.[16] In this case, both the NBA and Barbie draw on strengths from each other's brands to create value for the NBA Barbie, which in turn bolsters each of their own brands.

---

[15] Kevin Lane Keller, *Strategic Brand Management: Building, Measuring, and Managing Brand Equity*, 3rd Ed, Prentice Hall, Upper Saddle River, New Jersey, 2008.
[16] David A. Aaker and Erich Joachimsthaler, *Brand Leadership: The Next Level of the Brand Revolution*, New York: The Free Press, 2000, p. 142.

13

CONFIDENTIAL – ATTORNEY'S EYES ONLY

EXHIBIT 22
PAGE 630

27. Furthermore, licensing arrangements and product tie-ins allow for extra revenue to be earned from the strength of the brand. These arrangements make it possible to assist a product in growing into a meaningful franchise that is able to build onto itself, and hence create longevity for its products.  For example, Mattel built a strong lifestyle franchise around the Barbie doll[17], and thus, in my view, extended the timeframe during which their doll product prospered.

28. These arrangements also make it possible for the brand owner to enter new markets without extending its own capabilities beyond its core competency.  For example, Harley Davidson is a well-known example of successful licensing -- indeed, a big share of their revenue comes from licensing arrangements for T-shirts, hats, jackets, and other accessories.  The same appears to be true of Bratz.  Bratz uses a brand growth strategy of licensing. It has approximately 2,650 North American licenses.[18]  The Bratz licenses include Bratz Hosiery, Au'Some Candies, Bratz Valentines, Dream Apparel, Bratz Bedding and Bratz Beach Towels.  Royalty income from third parties was approximately            from net sales of            in the year 2006.[19] It helps to build the world of Bratz and contributes its success as a company as it exists today.  A license for a Bratz bag, for example, brings in about            a year.[20]

29. A fourth benefit to manufacturers of strong brands is to gain distribution and establish trade relationships. Retail distribution is highly concentrated in America with Wal-Mart, Target, Toys R' Us, Kmart and KB Toys selling most American toys. The first three alone account

---

[17] Eric Clark, *The Real Toy Story: Inside the Ruthless Battle for America's Youngest Consumers*, The Free Press, New York, New York, 2007, pg. 76
[18] MGA Entertainment, Inc Licensing North America, List of Licensees and Contracts MGA 3765287-3765551
[19] MGA Inc. Consolidated Financial Statements, December 31, 2006.  MGA0868707 at MGA0868714.
[20] MGA Entertainment Domestic Licensing Data, *Payment Log*, June 30, 2007. MGA 3743606-3745687

CONFIDENTIAL – ATTORNEY'S EYES ONLY

REDACTED

EXHIBIT 22
PAGE 631

for 60%.[21] This level of high retail concentration compares to grocery retailing where the top five retailers account for only 36% of sales.[22]

30. A fifth benefit to the manufacturer of strong brands is building and sustaining competitive advantage over others in the market. Toy companies with a strong orientation toward building brands achieve competitive advantages in the following dimensions: innovation, merchandise, communication, and customer service. These competitive advantages can translate into greater market share potential, the ability to command price premium, stronger support from the retailers, lower marketing costs, and higher barriers to entry.[23]

31. Strong brands also benefit consumers. The first benefit of strong brands to the consumer is the reduction in the perceived risk inherent in purchase decisions. Many toy products carry significant risk of quality and social risk such as peer-group acceptance. Consumers cope with these social risks by purchasing well-known brands.[24] As Juliet B. Schor wrote in her book, *Born to Buy:* "Contemporary American tweens and teens have emerged as the most brand-oriented, consumer-involved, and materialistic generation in history. And they top the list globally.....More children here than anywhere else believe that their clothes and brands describe who they are and define their social status."[25]

32. Strong brands deliver emotional benefits to the consumer. The perception of the brand, combined with the actual features of the piece of clothing, can make a consumer feel sexy, comfortable, trendy or exclusive. The brand of a doll that a girl plays with can create

---

[21] Eric Clark, *The Real Toy Story: Inside the Ruthless Battle for America's Youngest Consumers*, The Free Press, New York, NY 2007.
[22] *The Power of Private Label 2005, A Review of Growth Trends around the World*, Nielsen Report, 2005.
[23] For example: Kevin Lane Keller, *Strategic Brand Management: Building, Measuring, and Managing Brand Equity*, 3rd Ed, Prentice Hall, Upper Saddle River, New Jersey, 2008, p. 7
[24] Kevin Lane Keller, *Strategic Brand Management: Building, Measuring, and Managing Brand Equity*, 3rd Ed, Prentice Hall, Upper Saddle River, New Jersey, 2008.
[25] Juliet B. Schor, *Born to Buy*, New York: Scribner, New York, NY, 2004, p. 13.

15

CONFIDENTIAL – ATTORNEY'S EYES ONLY

EXHIBIT 22
PAGE 632

emotional feelings for her. For example, survey research shows that consumers perceive Bratz dolls as "the status to own, edgy, trendy, and fashionable."[26] Specifically, MGA Entertainment's own tracking results of 6 to 11 years old girls show that the top perceptions in 2006 and 2007 are: are fashionable (70%), are for girls your age (68%), fun to play with (64%), something your parents are okay with (53%), and are the coolest (56%).[27] These results are also confirmed in early studies commissioned by Mattel. Bratz wins over Barbie on these attributes: most fashionable clothes, most want to be like, more fun to play with, is cooler than other dolls.[28] Thus, companies operating in the doll categories place a lot of emphasis on the emotional benefits of their brands.

33. Strong brands also provide self-expressive benefits for consumers.[29] A self-expressive benefit exists when the brand affects a constituent's self-image portrayed to others. Fashion dolls can evoke a type of statement or personality. A consumer, by shopping at Old Navy, for example, may express to others that they are an "unpretentious" and "frugal" person. Similarly, the purchase of a Lego set from Lego Group for a young child may display the desire to be "creative" and to simply "play well".[30] A girl that plays with a certain brand of dolls may express to others that she is stylish, mature, hip or edgy.[31] As toy items, doll brands offer significant self-expressive benefits to young girls who wish to project a certain image or persona of themselves to others.

---

[26] Brand Comparison Chart, M 0065305
[27] Bratz International A&U Tracking Study, November 2007, Prepared by C&R Research. MGA 3823970-3824055; Bratz International A&U Tracking Study, December 2006, Prepared by C&R Research, MGA 0295483-0295640.
[28] Mattel Worldwide Consumer Research: Girls Monthly Tracking study, 2004. M0082125.
[29] Jennifer Aaker, "The Malleable Self: The Role of Self-Expression in Persuasion," *Journal of Marketing Research*, Winter, 1999.
[30] About Us Corporate Information, Lego Group, http://www.lego.com
[31] Brand Comparison Chart, M 0065305

16

CONFIDENTIAL – ATTORNEY'S EYES ONLY

EXHIBIT 22
PAGE 633