1  Mattel," Mattel's head of security, Richard De Anda, wrote that he had been
2  "aware of this situation and ... working on it for several months" but it was in the
3  hands of Mattel's attorneys. Testimony from former Mattel employee Elise
4  Cloonan confirms that by at least late 2001, Mattel's lawyers were conducting an
5  investigation involving Bryant's work on Bratz in the design department.

6       On March 15, 2002, Mattel opened an investigative file on MGA and Isaac
7  Larian after receiving information from Evelyn Viohl and Ivy Ross that MGA had
8  recently hired a number of former Mattel employees and was reportedly
9  manufacturing products that appeared to be Mattel designs.

10       Mattel has also forfeited any right it may have had to enforce Paragraph 3-a
11  of the "Inventions Agreement" against Carter Bryant as a result of laches, estoppel,
12  consent, and waiver. It was common knowledge at Mattel that many Mattel
13  employees employed in the Mattel design center worked on a freelance basis for
14  third parties, including Mattel competitors, and/or on their own projects with the
15  anticipation that such projects eventually would be offered for sale to third parties,
16  including Mattel competitors. Indeed, Ms. Cloonan testified that the practice was
17  so widespread that there was even a name for it at Mattel: a "G-Job". Mattel
18  employees performed non-Mattel work while employed by Mattel and Mattel
19  consented to this moonlighting. For example, Margaret Leahy testified that her
20  Mattel supervisor, Michael Hebden, suggested to her that she seek out
21  moonlighting work. Robert Best developed a fashion line while employed at
22  Mattel. Best disclosed this to Mattel and was not terminated. Joni Pratt created
23  volleyball and basketball books for her daughter's high school outside of work,
24  along with invitation and wrapping paper. Pratt testified that she showed these
25  works to her supervisor at Mattel so there could be no misunderstanding that it was
26  not related to her work at Mattel. Pratt has not disclosed everything she has drawn
27  outside of work and testified that she does not feel she has an obligation to show
28  her supervisors everything she has drawn outside of work. Lori Sipos, a designer

47

408830.01

EXHIBIT 26
PAGE 919

1  at Mattel, created puppets as a hobby while she worked at Mattel. Sipos told Jill
2  Nordquist about her hobby when showing her one of her puppets, but she was not
3  telling Nordquist about the puppets in an effort to "report" her work. Nordquist
4  testified that she was informed about the designs other people created outside of
5  work in the course of sharing hobbies and not as part of an effort to report their
6  works. Veronica Marlow helped Dianne Gavin develop a line of handbags while
7  both were employed at Mattel. At her deposition, Veronica Marlow testified that
8  Isabel Cabrera, Beatrice Morales, and Maria Elena Salazar worked with her on
9  fashions for Bratz while they were employed by Mattel. Some of Mattel's sample
10  makers made wedding gowns and did nails on the weekends and evenings and
11  some of Mattel's hair rooters worked in hair salons on weekends. Indeed, Richard
12  De Anda, Mattel's head of security, testified at his deposition that he also
13  moonlighted as an expert witness and consultant while working for Mattel. De
14  Anda further testified that he does not believe that Mattel owns or has a claim on
15  the work he does for himself. Despite knowledge of this activity, Mattel rarely, if
16  ever, enforced any rights it may have had to prohibit such moonlighting.

17      Issues concerning this Defense are currently the subject of outstanding
18  discovery requests. In particular, Mattel has staunchly refused to provide
19  discovery that would address when, in fact, Mattel first had reason to suspect
20  Bryant's involvement in Bratz, his alleged breach of contract, his work for MGA,
21  and Mattel's alleged "true owner[ship] of Bratz," in spite of numerous interrogatory
22  requests, document requests, requests for admission, and deposition notices.
23  Defendants' concerns regarding Mattel's discovery abuses have recently been
24  addressed in multiple motions to compel both before Judge Infante and Judge
25  Larson. Indeed, on January 3, 2008, Judge Infante overruled all of Mattel's
26  objections and compelled discovery relevant to Defendants' statute of limitations
27  and laches defenses. However, Mattel has yet to provide the ordered discovery.
28  Factual investigation and discovery is ongoing and Bryant reserves the right to

EXHIBIT 26
PAGE 920

1  supplement this response and, consistent with his obligations under <u>Federal Rule of</u>

2  <u>Civil Procedure</u> 26(e), Bryant will supplement this response if he receives

3  additional responsive information.

4       The following persons have knowledge of facts and circumstances

5  regarding the foregoing: Carter Bryant; Richard De Anda; Robert Eckert; Alan

6  Kaye; Michele McShane; Robert Normile; Margaret Leahy; Elise Cloonan;

7  Veronica Marlow; Ilana Raynes; Michael Hebden; Frederick Jackson; Ray Moore;

8  Joe Benet; Carolyn Oros; Hung Lee; Diana Troup; Cynthia Young; Margo

9  Michelle; Kitty Black-Perkins; Janet Unalp; Debbie Meyer; Carol Spencer;

10  Jennifer Kiernan; Bill Kelly; Steve McAdam; Howie Jesser, Ken Smith; Bob

11  Tomamora; Tom Hodges; Julie Ashe Nobles; Morris Batay; Bruce Ryniker; Larry

12  Wood; Eric Ostendorf; Steve Ryniker; Melody Hansen; Carter Bryant; Anna Rhee;

13  Joe Feldman; Janet Blaser; Bill Greening; Roxanna Powell; Ken O'Leary; Lily

14  Martinez; Cassidy Park; Ivy Ross; Joe Franke; Ann Driskill; Robert Best; Anne

15  Olson; Dennis Soai; Kislap Ongchango; Nick Patean; Jerry Richardson; Spencer

16  Davis; Bill Martinez; Barbara Meyer; Larry Clayton; Elon Dancer; Maury Kessel;

17  Chris McAdam; Michael Norgren; Chris Sesto; Paul Sesto; Michael Hastey;

18  Sullivan Hastey; Mark Rigger; Jeff Fuller; Tim Lewis; Tim Correa; Doe O'Connor;

19  Myziue Hamilton; Joan Gaynor; Patty Gaynor; Mina Mirkazemi; Mercedeh Ward;

20  Tony Yao; Aldo Fazilli; Isabel Cabrera; Beatrice Morales; Pedro Salazar; Maria

21  Elena Salazar; Roger Simoneau, Jill Nordquist, Joni Pratt, Tina Tomiyama, and

22  Evelyn Viohl.

23       The following documents may be relevant to the foregoing: Transcript from

24  the Deposition of Carter Bryant; Transcript from the Deposition of Margaret

25  Leahy, Transcript from the Deposition of Elise Cloonan, Transcript from the

26  Deposition of Alan Kaye, Transcript from the Deposition of Richard De Anda,

27  Transcript from the Deposition of Ann Driskill, Transcript from the Deposition of

28  Jill Nordquist, Transcript from the Deposition of Veronica Marlow, Transcript

49

408830.01

**EXHIBIT 26**
**PAGE 921**

1  from the Deposition of Joni Pratt, Mattel's Responses and Supplemental Responses
2  to Defendants' Interrogatories, Mattel's Internal Investigative Files regarding its
3  investigations into Carter Bryant, MGA, or Isaac Larian, including, but not limited
4  to, M 0074307-0074430, all Mattel worldwide consumer research reports produced
5  by Mattel, internal marketing documents analyzing the performance of Bratz in the
6  marketplace, documents relating to Carter Bryant's involvement in the litigation
7  known as *Gunther-Wahl Productions v. Mattel, Inc.*, Case No. BC195819 filed on
8  or about August 12, 1998 in the Superior Court of the State of California, County
9  of Los Angeles, and subsequent appeals, M0001654-55, M0074397-74402,
10  M0074307-0074396, and M 0013842.

11  **E.  Fifth Affirmative Defense (Consent)**

12  Mattel's counterclaims, and each claim for relief, are barred by the equitable
13  doctrine of consent. In particular, Mattel believed from the time that Bryant left
14  Mattel's employ that he was going to perform work for a Mattel competitor, and
15  Mattel shortly thereafter began investigating what it suspected to be wrongdoing in
16  connection with the Bratz dolls.  Mattel thus was apprised of the relevant facts.
17  Yet, Mattel waited and said nothing while the dolls were successfully (and at great
18  cost) developed, manufactured and sold, and only filed suit years later. Mattel has
19  also tolerated conduct by other employees similar to the alleged conduct by Bryant
20  on which Mattel now bases its contract and related claims.

21  Mattel's counterclaims, and each claim for relief, are barred by the equitable
22  doctrine of waiver. In particular, Mattel believed from the time that Bryant left
23  Mattel's employ that he was going to perform work for a Mattel competitor, and
24  Mattel shortly thereafter began investigating what it suspected to be wrongdoing in
25  connection with the Bratz dolls. Yet, Mattel waited and said nothing while the
26  dolls were successfully (and at great cost) developed, manufactured and sold, and
27  only filed suit years later. Mattel was aware of the relevant facts regarding Mr.
28  Bryant's work for MGA, but intentionally waived and chose to forgo asserting any

**EXHIBIT 26**
**PAGE 922**

1   rights over the Bratz dolls until years later. Mattel has also tolerated conduct by

2   other employees similar to the alleged conduct by Bryant on which Mattel now

3   bases its contract and related claims.

4       Mattel's counterclaims are barred because, among other things, Mattel

5   intentionally delayed taking legal action against MGA or Carter Bryant for several

6   years after the launch of Bratz in the belief that Mattel would be able to drive Bratz

7   (and as a result, drive MGA) out of the market for fashion dolls and/or the belief

8   that Mattel did not have any rights under the "Inventions Agreement" as against

9   Bryant, based on its own interpretations of the "Inventions Agreement," and on the

10   advice that Mattel received from in-house and outside counsel. Mattel also waited

11   to file suit until after it had secured Bryant's assistance in an unrelated legal action

12   against another Mattel competitor, namely the litigation known as *Gunther-Wahl*

13   *Productions v. Mattel, Inc.*, Case No. BC195819 filed on or about August 12, 1998

14   in the Superior Court of the State of California, County of Los Angeles, and

15   subsequent appeals. Mattel only took legal action after it no longer needed

16   Bryant's assistance, and well after MGA and Bryant had invested substantial

17   amounts of capital and creative and innovative human effort in the Bratz line of

18   dolls and had experienced enormous success in the market place.

19       A report from Bryant's exit interview at Mattel shows that Bryant told

20   Mattel's human resources representative he was leaving because an "[o]pportunity

21   arose; had to take it." Mattel has acknowledged that employees leaving under

22   similar circumstances to work for an unnamed competitor have "caused Mattel to

23   begin investigating their activities."

24       Furthermore, numerous Mattel employees knew and/or believed in the fall

25   of 2001 that Carter Bryant was involved in the development and introduction of the

26   Bratz line. This knowledge and/or these beliefs by Mattel employees went well

27   beyond mere "rumor and innuendo," as has been suggested by Mattel. In its

28   interrogatory responses, Mattel also asserts that Bryant used several "other Mattel

51

EXHIBIT 26
PAGE 923

1  employees" to work on the Bratz dolls so that they "had been designed and were
2  far along in development during the time that Bryant was employed by Mattel."

3  Shortly after Bratz dolls were in retail stores in or about September 2001,
4  Mattel knew or was on notice that Carter Bryant was involved in the development
5  of that line.  Mattel now asserts in this lawsuit that the idea for Bratz was a
6  violation of rights that Mattel had in a proposed flanker brand called "Toon
7  Teens," which Mattel was developing in the summer of 1999, but never introduced
8  to market.  In this connection, during 2001, Toon Teens samples were taken out of
9  storage by Mattel employees and delivered to Mattel's legal department for
10  analysis of possible copyright infringement and other claims against Bryant and
11  MGA.

12  Mattel knew Bryant's role in Bratz and was investigating possible claims *at*
13  *least as early as summer 2001*, when Bratz came out.  Margaret Leahy, the third-
14  party sculptor of Bratz, testified that in the summer of 2001 a friend from Mattel
15  was "grilling" her, "like somebody put her up to it," about whether "Carter [was]
16  the designer on the doll or what was [MGA employee and former Mattel
17  employee] Paula [Garcia's] involvement" in Bratz.  Leahy testified that she told the
18  Mattel employee that "Carter initially came up with a design and Paula carried it
19  out."

20  Mattel actively investigated Bryant's role in creating Bratz in 2001 and
21  2002.  Mattel's internal investigative files confirm that Mattel commenced an
22  official investigation into whether Bryant stole the Bratz idea in March 2002.
23  Mattel admitted that in 2002 it investigated "rumor and innuendo that Bryant may
24  be working with MGA on Bratz," including whether "Bryant ... plagiarized
25  [Mattel product] 'Toon Teens' and created Bratz dolls for MGA" and whether
26  Bryant helped MGA create Bratz "[w]hile he was working with Mattel."  Mattel's
27  CEO Robert Eckert received an "anonymous letter" on or about August 5, 2002
28  that alleged that Bryant helped MGA create Bratz while working for Mattel.  As

408916.01

EXHIBIT 26
PAGE 924

1  part of an official investigation requested by Mattel CEO Robert Eckert in August
2  2002 as to whether Bryant helped MGA create Bratz "[w]hile he was working with
3  Mattel," Mattel's head of security, Richard De Anda, wrote that he had been
4  "aware of this situation and ... working on it for several months" but it was in the
5  hands of Mattel's attorneys. Testimony from former Mattel employee Elise
6  Cloonan confirms that by at least late 2001, Mattel's lawyers were conducting an
7  investigation involving Bryant's work on Bratz in the design department.

8      On March 15, 2002, Mattel opened an investigative file on MGA and Isaac
9  Larian after receiving information from Evelyn Viohl and Ivy Ross that MGA had
10  recently hired a number of former Mattel employees and was reportedly
11  manufacturing products that appeared to be Mattel designs.

12      Mattel has also forfeited any right it may have had to enforce Paragraph 3-a
13  of the "Inventions Agreement" against Carter Bryant as a result of laches, estoppel,
14  consent, and waiver. It was common knowledge at Mattel that many Mattel
15  employees employed in the Mattel design center worked on a freelance basis for
16  third parties, including Mattel competitors, and/or on their own projects with the
17  anticipation that such projects eventually would be offered for sale to third parties,
18  including Mattel competitors. Indeed, Ms. Cloonan testified that the practice was
19  so widespread that there was even a name for it at Mattel: a "G-Job". Mattel
20  employees performed non-Mattel work while employed by Mattel and Mattel
21  consented to this moonlighting. For example, Margaret Leahy testified that her
22  Mattel supervisor, Michael Hebden, suggested to her that she seek out
23  moonlighting work. Robert Best developed a fashion line while employed at
24  Mattel. Best disclosed this to Mattel and was not terminated. Joni Pratt created
25  volleyball and basketball books for her daughter's high school outside of work,
26  along with invitation and wrapping paper. Pratt testified that she showed these
27  works to her supervisor at Mattel so there could be no misunderstanding that it was
28  not related to her work at Mattel. Pratt has not disclosed everything she has drawn

408916.01

EXHIBIT 26
PAGE 925

1   outside of work and testified that she does not feel she has an obligation to show
2   her supervisors everything she has drawn outside of work.  Lori Sipos, a designer
3   at Mattel, created puppets as a hobby while she worked at Mattel.  Sipos told Jill
4   Nordquist about her hobby when showing her one of her puppets, but she was not
5   telling Nordquist about the puppets in an effort to "report" her work.  Nordquist
6   testified that she was informed about the designs other people created outside of
7   work in the course of sharing hobbies and not as part of an effort to report their
8   works.  Veronica Marlow helped Dianne Gavin develop a line of handbags while
9   both were employed at Mattel.  At her deposition, Veronica Marlow testified that
10  Isabel Cabrera, Beatrice Morales, and Maria Elena Salazar worked with her on
11  fashions for Bratz while they were employed by Mattel.  Some of Mattel's sample
12  makers made wedding gowns and did nails on the weekends and evenings and
13  some of Mattel's hair rooters worked in hair salons on weekends.  Indeed, Richard
14  De Anda, Mattel's head of security, testified at his deposition that he also
15  moonlighted as an expert witness and consultant while working for Mattel.  De
16  Anda further testified that he does not believe that Mattel owns or has a claim on
17  the work he does for himself.  Despite knowledge of this activity, Mattel rarely, if
18  ever, enforced any rights it may have had to prohibit such moonlighting.

19      Issues concerning this Defense are currently the subject of outstanding
20  discovery requests.  In particular, Mattel has staunchly refused to provide
21  discovery that would address when, in fact, Mattel first had reason to suspect
22  Bryant's involvement in Bratz, his alleged breach of contract, his work for MGA,
23  and Mattel's alleged "true owner[ship] of Bratz," in spite of numerous interrogatory
24  requests, document requests, requests for admission, and deposition notices.
25  Defendants' concerns regarding Mattel's discovery abuses have recently been
26  addressed in multiple motions to compel both before Judge Infante and Judge
27  Larson.  Indeed, on January 3, 2008, Judge Infante overruled all of Mattel's
28  objections and compelled discovery relevant to Defendants' statute of limitations

54

EXHIBIT 26
PAGE 926

1   and laches defenses.   However, Mattel has yet to provide the ordered discovery.

2   Factual investigation and discovery is ongoing and Bryant reserves the right to

3   supplement this response and, consistent with his obligations under Federal Rule of

4   Civil Procedure 26(e), Bryant will supplement this response if he receives

5   additional responsive information.

6        The following persons have knowledge of facts and circumstances

7   regarding the foregoing:  Carter Bryant; Richard De Anda; Robert Eckert; Alan

8   Kaye; Michele McShane; Robert Normile; Margaret Leahy; Elise Cloonan;

9   Veronica Marlow; Ilana Raynes; Michael Hebden; Frederick Jackson; Ray Moore;

10  Joe Benet; Carolyn Oros; Hung Lee; Diana Troup; Cynthia Young; Margo

11  Michelle; Kitty Black-Perkins; Janet Unalp; Debbie Meyer; Carol Spencer;

12  Jennifer Kiernan; Bill Kelly; Steve McAdam; Howie Jesser, Ken Smith; Bob

13  Tomamora; Tom Hodges; Julie Ashe Nobles; Morris Batay; Bruce Ryniker; Larry

14  Wood; Eric Ostendorf; Steve Ryniker; Melody Hansen; Carter Bryant; Anna Rhee;

15  Joe Feldman; Janet Blaser; Bill Greening; Roxanna Powell; Ken O'Leary; Lily

16  Martinez; Cassidy Park; Ivy Ross; Joe Franke; Ann Driskill; Robert Best; Anne

17  Olson; Dennis Soai; Kislap Ongchango; Nick Patean; Jerry Richardson; Spencer

18  Davis; Bill Martinez; Barbara Meyer; Larry Clayton; Elon Dancer; Maury Kessel;

19  Chris McAdam; Michael Norgren; Chris Sesto; Paul Sesto; Michael Hastey;

20  Sullivan Hastey; Mark Rigger; Jeff Fuller; Tim Lewis; Tim Correa; Doc O'Connor;

21  Myziue Hamilton; Joan Gaynor; Patty Gaynor; Mina Mirkazemi; Mercedeh Ward;

22  Tony Yao; Aldo Fazilli; Isabel Cabrera; Beatrice Morales; Pedro Salazar; Maria

23  Elena Salazar; Roger Simoneau, Jill Nordquist, Joni Pratt, Tina Tomiyama, and

24  Evelyn Viohl.

25       The following documents may be relevant to the foregoing: Transcript from

26  the Deposition of Carter Bryant; Transcript from the Deposition of Margaret

27  Leahy, Transcript from the Deposition of Elise Cloonan, Transcript from the

28  Deposition of Alan Kaye, Transcript from the Deposition of Richard De Anda,

408916.01

CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S AMENDED SUPPLEMENTAL INTERROGATORY
CASE NO. CV 04-09049 SGL (RNBx)

**EXHIBIT 26**
**PAGE 927**

1  Transcript from the Deposition of Ann Driskill, Transcript from the Deposition of
2  Jill Nordquist, Transcript from the Deposition of Veronica Marlow, Transcript
3  from the Deposition of Joni Pratt, Mattel's Responses and Supplemental Responses
4  to Defendants' Interrogatories, Mattel's Internal Investigative Files regarding its
5  investigations into Carter Bryant, MGA, or Isaac Larian, including, but not limited
6  to, M 0074307-0074430, all Mattel worldwide consumer research reports produced
7  by Mattel, internal marketing documents analyzing the performance of Bratz in the
8  marketplace, documents relating to Carter Bryant's involvement in the litigation
9  known as *Gunther-Wahl Productions v. Mattel, Inc.*, Case No. BC195819 filed on
10 or about August 12, 1998 in the Superior Court of the State of California, County
11 of Los Angeles, and subsequent appeals, M0001654-55, M0074397-74402,
12 M0074307-0074396, and M 0013842.

13 **F.    Sixth Affirmative Defense (Statute of Limitations)**

14       Mattel's counterclaims, and each claim for relief, are barred by the
15 applicable statutes of limitations, including but not limited to Code of Civil
16 Procedure §§ 337, 339, 343, and 338(c), 17 U.S.C. § 507(b), and 18 U.S.C. § 1961
17 *et seq.*

18       Mattel's counterclaims are barred because, among other things, Mattel
19 intentionally delayed taking legal action against MGA or Carter Bryant for several
20 years after the launch of Bratz in the belief that Mattel would be able to drive Bratz
21 (and as a result, drive MGA) out of the market for fashion dolls and/or the belief
22 that Mattel did not have any rights under the "Inventions Agreement" as against
23 Bryant, based on its own interpretations of the "Inventions Agreement," and on the
24 advice that Mattel received from in-house and outside counsel. Mattel also waited
25 to file suit until after it had secured Bryant's assistance in an unrelated legal action
26 against another Mattel competitor, namely the litigation known as *Gunther-Wahl*
27 *Productions v. Mattel, Inc.*, Case No. BC195819 filed on or about August 12, 1998
28 in the Superior Court of the State of California, County of Los Angeles, and

408916.01

EXHIBIT 26
PAGE 928

1  subsequent appeals. Mattel only took legal action after it no longer needed

2  Bryant's assistance, and well after MGA and Bryant had invested substantial

3  amounts of capital and creative and innovative human effort in the Bratz line of

4  dolls and had experienced enormous success in the market place.

5       A report from Bryant's exit interview at Mattel shows that Bryant told

6  Mattel's human resources representative he was leaving because an "[o]pportunity

7  arose; had to take it." Mattel has acknowledged that employees leaving under

8  similar circumstances to work for an unnamed competitor have "caused Mattel to

9  begin investigating their activities."

10       Furthermore, numerous Mattel employees knew and/or believed in the fall

11  of 2001 that Carter Bryant was involved in the development and introduction of the

12  Bratz line. This knowledge and/or these beliefs by Mattel employees went well

13  beyond mere "rumor and innuendo," as has been suggested by Mattel. In its

14  interrogatory responses, Mattel also asserts that Bryant used several "other Mattel

15  employees" to work on the Bratz dolls so that they "had been designed and were

16  far along in development during the time that Bryant was employed by Mattel."

17       Shortly after Bratz dolls were in retail stores in or about September 2001,

18  Mattel knew or was on notice that Carter Bryant was involved in the development

19  of that line. Mattel now asserts in this lawsuit that the idea for Bratz was a

20  violation of rights that Mattel had in a proposed flanker brand called "Toon

21  Teens," which Mattel was developing in the summer of 1999, but never introduced

22  to market. In this connection, during 2001, Toon Teens samples were taken out of

23  storage by Mattel employees and delivered to Mattel's legal department for

24  analysis of possible copyright infringement and other claims against Bryant and

25  MGA.

26       Mattel knew Bryant's role in Bratz and was investigating possible claims *at

27  least as early as summer 2001*, when Bratz came out. Margaret Leahy, the third-

28  party sculptor of Bratz, testified that in the summer of 2001 a friend from Mattel

408916.01

CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S AMENDED SUPPLEMENTAL INTERROGATORY
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT

EXHIBIT 26
PAGE 929

1  was "grilling" her, "like somebody put her up to it," about whether "Carter [was]
2  the designer on the doll or what was [MGA employee and former Mattel
3  employee] Paula [Garcia's] involvement" in Bratz. Leahy testified that she told the
4  Mattel employee that "Carter initially came up with a design and Paula carried it
5  out."

6      Mattel actively investigated Bryant's role in creating Bratz in 2001 and
7  2002. Mattel's internal investigative files confirm that Mattel commenced an
8  official investigation into whether Bryant stole the Bratz idea in March 2002.
9  Mattel admitted that in 2002 it investigated "rumor and innuendo that Bryant may
10 be working with MGA on Bratz," including whether "Bryant ... plagiarized
11 [Mattel product] 'Toon Teens' and created Bratz dolls for MGA" and whether
12 Bryant helped MGA create Bratz "[w]hile he was working with Mattel." Mattel's
13 CEO Robert Eckert received an "anonymous letter" on or about August 5, 2002
14 that alleged that Bryant helped MGA create Bratz while working for Mattel. As
15 part of an official investigation requested by Mattel CEO Robert Eckert in August
16 2002 as to whether Bryant helped MGA create Bratz "[w]hile he was working with
17 Mattel," Mattel's head of security, Richard De Anda, wrote that he had been
18 "aware of this situation and ... working on it for several months" but it was in the
19 hands of Mattel's attorneys. Testimony from former Mattel employee Elise
20 Cloonan confirms that by at least late 2001, Mattel's lawyers were conducting an
21 investigation involving Bryant's work on Bratz in the design department.

22     On March 15, 2002, Mattel opened an investigative file on MGA and Isaac
23 Larian after receiving information from Evelyn Viohl and Ivy Ross that MGA had
24 recently hired a number of former Mattel employees and was reportedly
25 manufacturing products that appeared to be Mattel designs.

26     Mattel has also forfeited any right it may have had to enforce Paragraph 3-a
27 of the "Inventions Agreement" against Carter Bryant as a result of laches, estoppel,
28 consent, and waiver. It was common knowledge at Mattel that many Mattel

408916.01

**EXHIBIT 26**
**PAGE 930**

1  employees employed in the Mattel design center worked on a freelance basis for
2  third parties, including Mattel competitors, and/or on their own projects with the
3  anticipation that such projects eventually would be offered for sale to third parties,
4  including Mattel competitors. Indeed, Ms. Cloonan testified that the practice was
5  so widespread that there was even a name for it at Mattel: a "G-Job". Mattel
6  employees performed non-Mattel work while employed by Mattel and Mattel
7  consented to this moonlighting. For example, Margaret Leahy testified that her
8  Mattel supervisor, Michael Hebden, suggested to her that she seek out
9  moonlighting work. Robert Best developed a fashion line while employed at
10  Mattel. Best disclosed this to Mattel and was not terminated. Joni Pratt created
11  volleyball and basketball books for her daughter's high school outside of work,
12  along with invitation and wrapping paper. Pratt testified that she showed these
13  works to her supervisor at Mattel so there could be no misunderstanding that it was
14  not related to her work at Mattel. Pratt has not disclosed everything she has drawn
15  outside of work and testified that she does not feel she has an obligation to show
16  her supervisors everything she has drawn outside of work. Lori Sipos, a designer
17  at Mattel, created puppets as a hobby while she worked at Mattel. Sipos told Jill
18  Nordquist about her hobby when showing her one of her puppets, but she was not
19  telling Nordquist about the puppets in an effort to "report" her work. Nordquist
20  testified that she was informed about the designs other people created outside of
21  work in the course of sharing hobbies and not as part of an effort to report their
22  works. Veronica Marlow helped Dianne Gavin develop a line of handbags while
23  both were employed at Mattel. At her deposition, Veronica Marlow testified that
24  Isabel Cabrera, Beatrice Morales, and Maria Elena Salazar worked with her on
25  fashions for Bratz while they were employed by Mattel. Some of Mattel's sample
26  makers made wedding gowns and did nails on the weekends and evenings and
27  some of Mattel's hair rooters worked in hair salons on weekends. Indeed, Richard
28  De Anda, Mattel's head of security, testified at his deposition that he also

EXHIBIT 26
PAGE 931

1  moonlighted as an expert witness and consultant while working for Mattel. De

2  Anda further testified that he does not believe that Mattel owns or has a claim on

3  the work he does for himself. Despite knowledge of this activity, Mattel rarely, if

4  ever, enforced any rights it may have had to prohibit such moonlighting.

5  Issues concerning this Defense are currently the subject of outstanding

6  discovery requests. In particular, Mattel has staunchly refused to provide

7  discovery that would address when, in fact, Mattel first had reason to suspect

8  Bryant's involvement in Bratz, his alleged breach of contract, his work for MGA,

9  and Mattel's alleged "true owner[ship] of Bratz," in spite of numerous interrogatory

10  requests, document requests, requests for admission, and deposition notices.

11  Defendants' concerns regarding Mattel's discovery abuses have recently been

12  addressed in multiple motions to compel both before Judge Infante and Judge

13  Larson. Indeed, on January 3, 2008, Judge Infante overruled all of Mattel's

14  objections and compelled discovery relevant to Defendants' statute of limitations

15  and laches defenses. However, Mattel has yet to provide the ordered discovery.

16  Factual investigation and discovery is ongoing and Bryant reserves the right to

17  supplement this response and, consistent with his obligations under Federal Rule of

18  Civil Procedure 26(e), Bryant will supplement this response if he receives

19  additional responsive information.

20  The following persons have knowledge of facts and circumstances

21  regarding the foregoing: Carter Bryant; Richard De Anda; Robert Eckert; Alan

22  Kaye; Michele McShane; Robert Normile; Margaret Leahy; Elise Cloonan;

23  Veronica Marlow; Ilana Raynes; Michael Hebden; Frederick Jackson; Ray Moore;

24  Joe Benet; Carolyn Oros; Hung Lee; Diana Troup; Cynthia Young; Margo

25  Michelle; Kitty Black-Perkins; Janet Unalp; Debbie Meyer; Carol Spencer;

26  Jennifer Kiernan; Bill Kelly; Steve McAdam; Howie Jesser, Ken Smith; Bob

27  Tomamora; Tom Hodges; Julie Ashe Nobles; Morris Batay; Bruce Ryniker; Larry

28  Wood; Eric Ostendorf; Steve Ryniker; Melody Hansen; Carter Bryant; Anna Rhee;

60

EXHIBIT 26
PAGE 932

1   Joe Feldman; Janet Blaser; Bill Greening; Roxanna Powell; Ken O'Leary; Lily

2   Martinez; Cassidy Park; Ivy Ross; Joe Franke; Ann Driskill; Robert Best; Anne

3   Olson; Dennis Soai; Kislap Ongchango; Nick Patean; Jerry Richardson; Spencer

4   Davis; Bill Martinez; Barbara Meyer; Larry Clayton; Elon Dancer; Maury Kessel;

5   Chris McAdam; Michael Norgren; Chris Sesto; Paul Sesto; Michael Hastey;

6   Sullivan Hastey; Mark Rigger; Jeff Fuller; Tim Lewis; Tim Correa; Doc O'Connor;

7   Myziue Hamilton; Joan Gaynor; Patty Gaynor; Mina Mirkazemi; Mercedeh Ward;

8   Tony Yao; Aldo Fazilli; Isabel Cabrera; Beatrice Morales; Pedro Salazar; Maria

9   Elena Salazar; Roger Simoneau, Jill Nordquist, Joni Pratt, Tina Tomiyama, and

10  Evelyn Viohl.

11       The following documents may be relevant to the foregoing: Transcript from

12  the Deposition of Margaret Leahy, Transcript from the Deposition of Elise

13  Cloonan, Transcript from the Deposition of Alan Kaye, Transcript from the

14  Deposition of Richard De Anda, Transcript from the Deposition of Ann Driskill,

15  Transcript from the Deposition of Jill Nordquist, Transcript from the Deposition of

16  Veronica Marlow, Transcript from the Deposition of Joni Pratt, Mattel's Responses

17  and Supplemental Responses to Defendants' Interrogatories, Mattel's Internal

18  Investigative Files regarding its investigations into Carter Bryant, MGA, or Isaac

19  Larian, including, but not limited to, M 0074307-0074430, all Mattel worldwide

20  consumer research reports produced by Mattel, internal marketing documents

21  analyzing the performance of Bratz in the marketplace, M0001654-55, M0074397-

22  74402, M0074307-0074396, and M 0013842.

23  G.   **Seventh Affirmative Defense (Failure to Mitigate Damages)**

24       With respect to any alleged damages (the existence of which Bryant denies),

25  Mattel failed to mitigate its damages. For example, Mattel believed from the time

26  that Bryant left Mattel's employ that he was going to perform work for a Mattel

27  competitor. However, Mattel failed to take action to minimize any alleged

28  damages that arose from Bryant's work for said competitor.

**EXHIBIT 26
PAGE 933**

1      Mattel's counterclaims are barred because, among other things, Mattel

2  intentionally delayed taking legal action against MGA or Carter Bryant for several

3  years after the launch of Bratz in the belief that Mattel would be able to drive Bratz

4  (and as a result, drive MGA) out of the market for fashion dolls and/or the belief

5  that Mattel did not have any rights under the "Inventions Agreement" as against

6  Bryant, based on its own interpretations of the "Inventions Agreement," and on the

7  advice that Mattel received from in-house and outside counsel.  Mattel also waited

8  to file suit until after it had secured Bryant's assistance in an unrelated legal action

9  against another Mattel competitor, namely the litigation known as *Gunther-Wahl*

10 *Productions v. Mattel, Inc.*, Case No. BC195819 filed on or about August 12, 1998

11 in the Superior Court of the State of California, County of Los Angeles, and

12 subsequent appeals.  Mattel only took legal action after it no longer needed

13 Bryant's assistance, and well after MGA and Bryant had invested substantial

14 amounts of capital and creative and innovative human effort in the Bratz line of

15 dolls and had experienced enormous success in the market place.

16     A report from Bryant's exit interview at Mattel shows that Bryant told

17 Mattel's human resources representative he was leaving because an "[o]pportunity

18 arose; had to take it."  Mattel has acknowledged that employees leaving under

19 similar circumstances to work for an unnamed competitor have "caused Mattel to

20 begin investigating their activities."

21     Furthermore, numerous Mattel employees knew and/or believed in the fall

22 of 2001 that Carter Bryant was involved in the development and introduction of the

23 Bratz line.  This knowledge and/or these beliefs by Mattel employees went well

24 beyond mere "rumor and innuendo," as has been suggested by Mattel.  In its

25 interrogatory responses, Mattel also asserts that Bryant used several "other Mattel

26 employees" to work on the Bratz dolls so that they "had been designed and were

27 far along in development during the time that Bryant was employed by Mattel."

28

EXHIBIT

**EXHIBIT 26**
**PAGE 934**

CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S AMENDED SUPPLEMENTAL INTERROGATORY
CASE NO. CV 04-09049 SGL (RNBx)

1    Shortly after Bratz dolls were in retail stores in or about September 2001,
2    Mattel knew or was on notice that Carter Bryant was involved in the development
3    of that line.  Mattel now asserts in this lawsuit that the idea for Bratz was a
4    violation of rights that Mattel had in a proposed flanker brand called "Toon
5    Teens," which Mattel was developing in the summer of 1999, but never introduced
6    to market.  In this connection, during 2001, Toon Teens samples were taken out of
7    storage by Mattel employees and delivered to Mattel's legal department for
8    analysis of possible copyright infringement and other claims against Bryant and
9    MGA.

10    Mattel knew Bryant's role in Bratz and was investigating possible claims *at*
11    *least as early as summer 2001*, when Bratz came out.  Margaret Leahy, the third-
12    party sculptor of Bratz, testified that in the summer of 2001 a friend from Mattel
13    was "grilling" her, "like somebody put her up to it," about whether "Carter [was]
14    the designer on the doll or what was [MGA employee and former Mattel
15    employee] Paula [Garcia's] involvement" in Bratz.  Leahy testified that she told the
16    Mattel employee that "Carter initially came up with a design and Paula carried it
17    out."

18    Mattel actively investigated Bryant's role in creating Bratz in 2001 and
19    2002.  Mattel's internal investigative files confirm that Mattel commenced an
20    official investigation into whether Bryant stole the Bratz idea in March 2002.
21    Mattel admitted that in 2002 it investigated "rumor and innuendo that Bryant may
22    be working with MGA on Bratz," including whether "Bryant ... plagiarized
23    [Mattel product] 'Toon Teens' and created Bratz dolls for MGA" and whether
24    Bryant helped MGA create Bratz "[w]hile he was working with Mattel."  Mattel's
25    CEO Robert Eckert received an "anonymous letter" on or about August 5, 2002
26    that alleged that Bryant helped MGA create Bratz while working for Mattel.  As
27    part of an official investigation requested by Mattel CEO Robert Eckert in August
28    2002 as to whether Bryant helped MGA create Bratz "[w]hile he was working with

63

408916.01

**EXHIBIT 26**
**PAGE 935**

1  Mattel," Mattel's head of security, Richard De Anda, wrote that he had been

2  "aware of this situation and ... working on it for several months" but it was in the

3  hands of Mattel's attorneys. Testimony from former Mattel employee Elise

4  Cloonan confirms that by at least late 2001, Mattel's lawyers were conducting an

5  investigation involving Bryant's work on Bratz in the design department.

6       On March 15, 2002, Mattel opened an investigative file on MGA and Isaac

7  Larian after receiving information from Evelyn Viohl and Ivy Ross that MGA had

8  recently hired a number of former Mattel employees and was reportedly

9  manufacturing products that appeared to be Mattel designs.

10       Mattel has also forfeited any right it may have had to enforce Paragraph 3-a

11  of the "Inventions Agreement" against Carter Bryant as a result of laches, estoppel,

12  consent, and waiver. It was common knowledge at Mattel that many Mattel

13  employees employed in the Mattel design center worked on a freelance basis for

14  third parties, including Mattel competitors, and/or on their own projects with the

15  anticipation that such projects eventually would be offered for sale to third parties,

16  including Mattel competitors. Indeed, Ms. Cloonan testified that the practice was

17  so widespread that there was even a name for it at Mattel: a "G-Job". Mattel

18  employees performed non-Mattel work while employed by Mattel and Mattel

19  consented to this moonlighting. For example, Margaret Leahy testified that her

20  Mattel supervisor, Michael Hebden, suggested to her that she seek out

21  moonlighting work. Robert Best developed a fashion line while employed at

22  Mattel. Best disclosed this to Mattel and was not terminated. Joni Pratt created

23  volleyball and basketball books for her daughter's high school outside of work,

24  along with invitation and wrapping paper. Pratt testified that she showed these

25  works to her supervisor at Mattel so there could be no misunderstanding that it was

26  not related to her work at Mattel. Pratt has not disclosed everything she has drawn

27  outside of work and testified that she does not feel she has an obligation to show

28  her supervisors everything she has drawn outside of work. Lori Sipos, a designer

EXHIBIT 26
PAGE 936

1   at Mattel, created puppets as a hobby while she worked at Mattel.  Sipos told Jill

2   Nordquist about her hobby when showing her one of her puppets, but she was not

3   telling Nordquist about the puppets in an effort to "report" her work.  Nordquist

4   testified that she was informed about the designs other people created outside of

5   work in the course of sharing hobbies and not as part of an effort to report their

6   works.  Veronica Marlow helped Dianne Gavin develop a line of handbags while

7   both were employed at Mattel.  At her deposition, Veronica Marlow testified that

8   Isabel Cabrera, Beatrice Morales, and Maria Elena Salazar worked with her on

9   fashions for Bratz while they were employed by Mattel.  Some of Mattel's sample

10  makers made wedding gowns and did nails on the weekends and evenings and

11  some of Mattel's hair rooters worked in hair salons on weekends.  Indeed, Richard

12  De Anda, Mattel's head of security, testified at his deposition that he also

13  moonlighted as an expert witness and consultant while working for Mattel.  De

14  Anda further testified that he does not believe that Mattel owns or has a claim on

15  the work he does for himself.  Despite knowledge of this activity, Mattel rarely, if

16  ever, enforced any rights it may have had to prohibit such moonlighting.

17      Bryant also incorporates here by reference his complete response below

18  regarding his lack of causation defense, as though fully set forth here.

19      Issues concerning this Defense are currently the subject of outstanding

20  discovery requests.  In particular, Mattel has staunchly refused to provide

21  discovery that would address when, in fact, Mattel first had reason to suspect

22  Bryant's involvement in Bratz, his alleged breach of contract, his work for MGA,

23  and Mattel's alleged "true owner[ship] of Bratz," in spite of numerous interrogatory

24  requests, document requests, requests for admission, and deposition notices.

25  Defendants' concerns regarding Mattel's discovery abuses have recently been

26  addressed in multiple motions to compel both before Judge Infante and Judge

27  Larson.  Indeed, on January 3, 2008, Judge Infante overruled all of Mattel's

28  objections and compelled discovery relevant to Defendants' statute of limitations

65

CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S AMENDED SUPPLEMENTAL INTERROGATORY
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 26
PAGE 937

1  and laches defenses.   However, Mattel has yet to provide the ordered discovery.

2  Factual investigation and discovery is ongoing and Bryant reserves the right to

3  supplement this response and, consistent with his obligations under Federal Rule of

4  Civil Procedure 26(e), Bryant will supplement this response if he receives

5  additional responsive information.

6       The following persons have knowledge of facts and circumstances

7  regarding the foregoing:  Carter Bryant; Richard De Anda; Robert Eckert; Alan

8  Kaye; Michele McShane; Robert Normile; Margaret Leahy; Elise Cloonan;

9  Veronica Marlow; Ilana Raynes; Michael Hebden; Frederick Jackson; Ray Moore;

10  Joe Benet; Carolyn Oros; Hung Lee; Diana Troup; Cynthia Young; Margo

11  Michelle; Kitty Black-Perkins; Janet Unalp; Debbie Meyer; Carol Spencer;

12  Jennifer Kiernan; Bill Kelly; Steve McAdam; Howie Jesser, Ken Smith; Bob

13  Tomamora; Tom Hodges; Julie Ashe Nobles; Morris Batay; Bruce Ryniker; Larry

14  Wood; Eric Ostendorf; Steve Ryniker; Melody Hansen; Carter Bryant; Anna Rhee;

15  Joe Feldman; Janet Blaser; Bill Greening; Roxanna Powell; Ken O'Leary; Lily

16  Martinez; Cassidy Park; Ivy Ross; Joe Franke; Ann Driskill; Robert Best; Anne

17  Olson; Dennis Soai; Kislap Ongchango; Nick Patean; Jerry Richardson; Spencer

18  Davis; Bill Martinez; Barbara Meyer; Larry Clayton; Elon Dancer; Maury Kessel;

19  Chris McAdam; Michael Norgren; Chris Sesto; Paul Sesto; Michael Hastey;

20  Sullivan Hastey; Mark Rigger; Jeff Fuller; Tim Lewis; Tim Correa; Doc O'Connor;

21  Myziue Hamilton; Joan Gaynor; Patty Gaynor; Mina Mirkazemi; Mercedeh Ward;

22  Tony Yao; Aldo Fazilli; Isabel Cabrera; Beatrice Morales; Pedro Salazar; Maria

23  Elena Salazar; Roger Simoneau, Jill Nordquist, Joni Pratt, Tina Tomiyama, and

24  Evelyn Viohl.

25       The following documents may be relevant to the foregoing: Transcript from

26  the Deposition of Margaret Leahy, Transcript from the Deposition of Elise

27  Cloonan, Transcript from the Deposition of Alan Kaye, Transcript from the

28  Deposition of Richard De Anda, Transcript from the Deposition of Ann Driskill,

1   Transcript from the Deposition of Jill Nordquist, Transcript from the Deposition of

2   Veronica Marlow, Transcript from the Deposition of Joni Pratt, Mattel's Responses

3   and Supplemental Responses to Defendants' Interrogatories, Mattel's Internal

4   Investigative Files regarding its investigations into Carter Bryant, MGA, or Isaac

5   Larian, including, but not limited to, M 0074307-0074430, all Mattel worldwide

6   consumer research reports produced by Mattel, internal marketing documents

7   analyzing the performance of Bratz in the marketplace, documents relating to

8   Carter Bryant's involvement in the litigation known as *Gunther-Wahl Productions*

9   *v. Mattel, Inc.*, Case No. BC195819 filed on or about August 12, 1998 in the

10   Superior Court of the State of California, County of Los Angeles, and subsequent

11   appeals, M0001654-55, M0074397-74402, M0074307-0074396, and M 0013842.

12   **H.**   **Eighth Affirmative Defense (Lack of Causation)**

13       Any losses or harms allegedly sustained by Mattel resulted from causes

14   other than any act or omission of Bryant, including but not limited to Mattel's own

15   acts or omissions. For example, Mattel believed from the time that Bryant left

16   Mattel's employ that he was going to perform work for a Mattel competitor.

17   However, Mattel failed to take action to minimize any alleged damages that arose

18   from Bryant's work for said competitor.

19       Bryant came up with the idea for a line of dolls that he named Bratz in or

20   about August 1998, when he was not an employee of Mattel. At the same time,

21   Bryant sketched a series of drawings to illustrate his idea. There was neither a

22   conception nor a reduction to practice of Bryant's idea for Bratz, as those terms are

23   used in patent law and/or in the Employee Confidential Information and Inventions

24   Agreement produced in this action by Mattel as M0001596 ("Employee

25   Agreement"), during the period of Bryant's employment Mattel. Any work that

26   Bryant performed relating to his Bratz ideas during the time period that he was still

27   employed by Mattel constituted lawful steps by Bryant to prepare to embark upon

28   a new career. Consequently, the Employee Agreement, which by its express terms

CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S AMENDED SUPPLEMENTAL INTERROGATORY
CASE NO. CV 04-09049 SGL (RNBx)

**EXHIBIT 26**
**PAGE 939**

1    is limited to inventions conceived or reduced to practice during Bryant's term of

2    employment with Mattel, does not apply to Bryant's Bratz idea, and Bryant was

3    the rightful and sole owner of his Bratz idea and the concepts reflected in his

4    illustrative drawings of his idea at the time he transferred rights to Bratz to MGA.

5        Bryant did not conceal from Mattel that he was leaving Mattel to develop his

6    own doll line, as a freelancer.  Bryant has not knowingly spoliated, altered or

7    destroyed any evidence, or created any misleading evidence. Bryant has never

8    knowingly made false or conflicting claims about the origins and creation of Bratz.

9    Bryant did not misappropriate any Mattel trade secrets or confidential information.

10   Any information Bryant used in his work with MGA to develop Bratz, in addition

11   to his own creative work, was publicly available or generally known to those in the

12   industry, and was not confidential Mattel property.

13       Bryant was examined extensively during his November 2004 deposition

14   regarding his knowledge of the development of Bratz.  Therefore, by way of

15   further response, Bryant also incorporates by reference his deposition testimony in

16   this case and the facts stated therein, including but not limited to the testimony

17   appearing at the following page and line numbers:  15:10-16:13, 25:1-33:14,

18   43:24-49:19, 53:5-57:23, 68:22-82:2, 86:8-90:15, 91:8-94:7, 103:10-104:17,

19   111:21-122:21, 132:19-137:19, 139:21-143:4, 146:14-151:11, 151:12-156:22,

20   162:24-170:15, 183:20-186:15, 199:16-211:22, 214:23-223:20, 231:24-237:12,

21   241:13-245:7, 252:11-253:25, 255:1-259:23, 273:5-22, 278:16-287:25, 297:17-

22   303:2, 317:24-321:6, 323:16-326:25, 351:15-353:13, 465:9-20, 624:23-631:1, and

23   712:1-713:22.

24       Additionally, it was common knowledge at Mattel that many Mattel

25   employees employed in the Mattel Design Center worked on a freelance basis for

26   third parties, including Mattel competitors.  Both Margaret Hatch Leahy and Elise

27   Cloonan have so testified.  Indeed, Ms. Cloonan testified that the practice was so

28   widespread that there was even a name for it at Mattel: a "G-Job".  Despite

408916.01

EXHIBIT 26
PAGE 940

1  knowledge of this activity, Mattel rarely, if ever, enforced any rights it may have
2  had to prohibit such freelancing and did not claim or treat such conduct by Mattel
3  employees as a breach of their alleged duty of loyalty.

4  　　　Moreover, the original concepts contributed by Bryant to the creation of the
5  Bratz dolls represent only one of the many factors that combined to make Bratz
6  one of the most successful fashion dolls on the market. Mattel played no role in
7  MGA's improvements, enhancements and changes to the Bratz dolls and/or the
8  Bratz concept. Mattel played no role in the creation and/or selection of the Bratz
9  slogan, "The Girls with a Passion for Fashion!" or the brand name "Bratz". Mattel
10  played no role in the development of the Bratz line of dolls' innovative and trend-
11  setting packaging, the importance of which is demonstrated in part by Mattel's
12  having copied such packaging. Mattel played no role in MGA's development of
13  and selection of the fashions for the Bratz dolls. Mattel played no role in the
14  development of other MGA Bratz spinoff, sub-brands, and other successful
15  additions to the Bratz doll family, including, but not limited to, Bratz Boyz, Bratz
16  Kidz, Bratz Big Kidz, Bratz Babyz, Bratz Babyz Boyz, Bratz Babyz Ponyz, Lil'
17  Bratz, Lil' Bratz Boyz, Bratz Petz, Bratz Lil' Angelz, Itsy Bitsy Bratz, Itsy Bitsy
18  Bratz Petz, Micro Bratz, Be-Bratz, and Funky Fashion Makeover Heads. Mattel
19  played no role in the development of the myriad of accessories for the Bratz dolls.
20  Mattel played no role in MGA's and/or Klasky Csupo, Inc.'s creation and/or
21  development of two-dimensional Bratz character art utilized on, for example,
22  product packaging and licensed products. Mattel played no role in the
23  development of the successful themes that have enhanced the popularity of the
24  Bratz dolls. Mattel played no role in the development of the Bratz animated TV
25  series, Bratz TV commercials, or Bratz the movie. Mattel played no role in the
26  development of the myriad of Bratz licensed products. Mattel played no role in the
27  development of the Bratz brand. Mattel played no role in the development of the
28  storylines and personas associated with each of the Bratz dolls.

EXHIBIT 26
PAGE 941

1   To the extent that Mattel argues that the shapes of characters in Carter
2   Bryant's "Bratz" drawings (including, but not limited to, those drawings identified
3   by Carter Bryant in Exhibit 5 of his deposition as being sketched in August 1998)
4   represented a conception of what could have later become a three-dimensional
5   object that could have been the subject of a design patent, MGA contends as
6   follows:

7   Carter Bryant was not a sculptor, and any translation of his pre-1999 two-
8   dimensional flat art into a three-dimensional form would have produced a very
9   different shape from the actual shape of the final three-dimensional Bratz sculpt
10  used in manufacturing the first generation of Bratz dolls released on the market by
11  MGA in or about June 2001. The shapes of the characters in Bryant's drawings
12  bear little resemblance to the final shape of the actual Bratz dolls. Differences
13  between the drawings and the final shape of the actual Bratz dolls include, but are
14  not limited to, the following:  posture; hip-to-waist ratio; feet size (dolls' feet are
15  not as exaggerated as characters' feet in the drawings); head size (dolls' heads are
16  proportionally smaller than characters' heads in the drawings).

17  Moreover, the final physical shape of the first generation of Bratz dolls,
18  released on the market by MGA in or about June 2001, was conceived of by
19  Margaret Leahy on behalf of MGA. The conception of this physical shape was
20  completed on or after October 21, 2000, and reduced to practice no earlier than
21  December 19, 2000. Leahy testified that she had to come up with this physical
22  shape on her own, because Carter's initial drawings were not "working drawings"
23  enabling her to create the physical shape.

24  Copyright infringement analysis under Ninth Circuit law requires that
25  "objective" or "extrinsic" elements that are in the public domain be filtered out of
26  the subject works, and, thereafter, that the remaining "subjective" or "intrinsic"
27  elements be evaluated for substantial similarity. Carter Bryant's 1998 drawings
28  contain many elements that were already in the public domain, and that must be

70

CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S AMENDED SUPPLEMENTAL INTERROGATORY
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 26
PAGE 942

1   filtered out, including but not limited to the oversized head, eyes, lips, and feet of

2   the figures in Bryant's drawings. A non-exhaustive list of examples of prior

3   existing works that incorporate such elements includes the following: Blythe dolls;

4   Lisa Frank designs; Takara's Jenny, Licca, and Barbie dolls; Mattel's Liddle

5   Kiddles; Margaret Keane artwork; Little Miss No Name; Hello Kitty; Coca-Cola

6   advertisements; anime, including, e.g., Sailor Moon; and manga; in addition to

7   sources of inspiration specifically identified by Carter Bryant, including Steve

8   Madden advertisements and Paris Blues advertisements. The aforementioned

9   elements are apparent in the Steve Madden ads which were highly visible in

10   1998—and indeed served as a key inspiration for Mattel's own "Toon Teens"

11   dolls.

12       Once all of the elements in the public domain are filtered out, and "scène-à-

13   faire" features are similarly eliminated from the analysis, the first generation Bratz

14   dolls (and all subsequent Bratz products) are readily seen as not substantially

15   similar to Carter Bryant's 1998 drawings. The differences between the drawings

16   and the dolls include, but are not limited to, the following:

17      •   Posture

18      •   Hip-to-waist ratio

19      •   Feet size (dolls' feet are not as exaggerated as characters' feet in the

20           drawings)

21      •   Head size (dolls' heads are proportionally smaller than characters'

22           heads in the drawings)

23      •   Eyes (dolls' eyes are more open than characters' eyes in the drawings)

24      •   Eye to lips ratio (lips of characters in drawings are proportionally

25           larger relative to eyes than are lips of dolls)

26      •   Hair (characters in drawings have much edgier hairstyles than the

27           dolls do)

28      •   Shapes of eyes and eye design

**EXHIBIT 26**
**PAGE 943**

71

1  • Shapes of lips
2  • Overall look and feel (dolls are overall softer, less extreme than
3     drawings)

4     That the dolls and the drawings are not substantially similar also is
5  consistent with the fact that Carter Bryant was not a sculptor, and any effort to
6  make a direct translation of his pre-1999 two-dimensional flat art into a three-
7  dimensional form would have produced a very different shape from the actual
8  shape of the final three-dimensional Bratz sculpt used in manufacturing the first
9  generation of Bratz dolls. Indeed, a team of highly-skilled artists (including
10 several that had been used by Mattel) spent months developing the Bratz first-
11 generation dolls—valuable time and original creative effort that would not have
12 been necessary if said first-generation Bratz dolls were simply a copy of Bryant's
13 designs.

14     The absence of substantial similarity is further shown in the close
15 correlation between Bryant's drawings and the inspiration he points to, including
16 but not limited to the Steve Madden advertisement in the August 1998 issue of
17 Seventeen Magazine, as well as other advertisements in that issue, such as the
18 Coca Cola advertisement.

19     Mattel's own My Scene Barbie line of dolls provides further proof that the
20 first generation of Bratz dolls was not substantially similar to the Bryant drawings,
21 in that (i) Mattel asserts that the My Scene Barbie dolls are independent works of
22 art, yet (ii) said dolls are far closer in appearance to Bratz dolls than are Bryant's
23 drawings.

24     Additional details regarding such differences will be the subject of expert
25 disclosures and will be provided in accordance with the Court's schedule for expert
26 discovery.

27     In addition, even if Bryant had presented his Bratz idea to Mattel (which he
28 was not obligated to do), Mattel would not have pursued it or achieved success in

72

EXHIBIT 26
PAGE 944

1  the market.  Mattel avoids producing products that would potentially "cannibalize"
2  its Barbie sales, and carefully restricts its so-called "flanker" brands to avoid such
3  cannibalization.  Mattel also resists "edgy" product ideas like Bryant's Bratz idea,
4  and has "watered down" such ideas in the past.  For example, in part for these
5  reasons, Mattel has not achieved commercial success at all comparable to that of
6  Bratz with either its My Scene or Flavas products.  Mattel also decided not to
7  proceed to market with the Toon Teens project, in part due to Mattel's market
8  research and focus groups indicating that some of the very features Mattel claims
9  Bratz shares with Toon Teens meant that  the dolls would not appeal to girls.

10       The following persons have knowledge of facts and circumstances
11  surrounding the foregoing:  Carter Bryant; Bryant's mother, Janet Bryant; Bryant's
12  father, Thomas Bryant; Jeanne Galvano; Richard Irmen; Elise Cloonan; Ramona
13  Price; Margaret Leahy; Veronica Marlow; Anna Rhee; Mercedeh Ward; Sarah
14  Halpern; Paula Treantafelles (Garcia); Steve Tarmichael; Rebecca Harris, Cecilia
15  Kwok; David Dees; Jesse Ramirez; Samuel Wong; Edmond Lee; Steven Lee;
16  Aileen Storer; Eric Yip; Leon Djiguerian; Rachel Harris; Maggie Siu; Ben Ton;
17  Sam Wong; Ray Wong; Sandy Yonemoto; Isaac Larian; Tina Tomiyama; Lily
18  Martinez; Ei Akiko Fong; John Steven Baulch; Lilly Martinez, Elise Cloonan,
19  Kislap Onchangco, and Cassidy Park; other current and former Mattel employees,
20  freelancers, or contractors involved in fashion doll development and marketing,
21  including but not limited to Toon Teens, My Scene, and Flavas; current or former
22  employees and contractors of Mattel's outside marketing and advertising agencies,
23  including Young & Rubicam Brands, including but not limited to Kumi Croom,
24  Peterson Milla Hooks, Brian Hooks, and Ogilvy & Mather Worldwide.

25       The following documents may be relevant to the foregoing: the sketches
26  drawn, in whole or in part, by Bryant in or about August 1998, including those
27  bearing the bates numbers BRYANT 175, 176, 177, 178, 179, 180, 181, 182, 183,
28  186, 189, 190, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204,

73

EXHIBIT 26
PAGE 945

1  205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220,
2  277, 300, 301, 302, 303, 1003, 1243, 1977, 1993 and Exhibits 1, 2, and 3 to his
3  deposition; publicly available materials that Bryant identified in his deposition
4  testimony as inspiring his conception of a line of dolls in or about August 1998,
5  including but not limited to the August 1998 issue of Seventeen Magazine; other
6  documents shown to Bryant at his November 2004 deposition and marked as
7  exhibits thereto relating to the development of his idea for Bratz; Bryant's
8  Employee Agreement with Mattel; Bryant's agreement with MGA; documents that
9  refer to or evidence the work performed by MGA employees and freelancers
10  toward the reduction to practice of the Bratz line of dolls, which documents
11  number in the tens of thousands and thus are too numerous to identify individually;
12  Mattel's Brand Directional Outlines; analyses and assessments of Mattel's
13  marketing strategies prepared and/or produced by Young and Rubicam Brands and
14  Peterson Milla Hooks; Mattel's Marketing Department assessments of Mattel's
15  advertising and branding strategies; Mattel's Creative Briefs; documents generated
16  by Mattel Worldwide Consumer Research relating to any aspect of the market for
17  fashion dolls, including without limitation Bratz, My Scene, and Barbie (including
18  M0066042-44, M0079871-74, and M0045646-88); all Mattel documents related to
19  development and marketing of flanker products; documents related to Mattel's
20  decision not to market Toon Teens; documents produced by Mattel's outside
21  marketing and advertising agencies, including Young & Rubicam Brands,
22  including but not limited to Kumi Croom, Peterson Milla Hooks, Brian Hooks, and
23  Ogilvy & Mather Worldwide; M12536-39, M14279-82, M14264-72, PMH002340-
24  48; Deposition Transcripts of Kumi Croom, Lilly Martinez, Elise Cloonan, Kislap
25  Onchangco, and Cassidy Park; and publicly available Documents evidencing
26  MGA's trademarks, patents, and copyrights, all DOCUMENTS that refer to or
27  evidence the work performed by MGA employees and freelancers toward the
28  reduction to practice of the first generation of Bratz dolls during the period after

74
408916.01       CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S AMENDED SUPPLEMENTAL INTERROGATORY
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 26
PAGE 946

EXHIBIT 26
PAGE 946

1    October 20, 2000 through June 1, 2001, including but not limited to:  Carter
2    Bryant's drawings; Documents and tangible things produced by Margaret Leahy;
3    tangible things produced by Veronica Marlow; invoices submitted by employees
4    and/or freelance artists working for MGA for work performed on the Bratz project;
5    all DOCUMENTS that constitute samples of the following items in the public
6    domain in 1998: Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and
7    Barbie dolls; Mattel's Liddle Kiddles; Margaret Keane artwork; Little Miss No
8    Name; Hello Kitty; anime, including, e.g., Sailor Moon; manga; Coca-Cola
9    advertisements; Steve Madden advertisements; and Paris Blues advertisements.
10   The Documents evidencing this work are too numerous to identify individually.

11   **I.      Ninth Affirmative Defense (Lack of Standing)**

12           Mattel's counterclaims are barred in whole or in part by its lack of standing,
13   in that Mattel does not own any valid copyright interests in the copyrights that it
14   seeks to assert against Bryant.  In particular, Mattel does not own any valid
15   copyright interest in the following copyrights it seeks to assert against Bryant:  VA
16   1-378-648, VA 1-378-649, VA 1-378-650, VA 1-378-651, VA 1-378-652, VA 1-
17   378-653, VA 1-378-654, VA 1-378-655, VA 1-378-656, VA 1-378-657, VA 1-
18   378-658, VA 1-378-659, VA 1-378-660, VAu 715-270, VAu 715-271, and VAu
19   715-273.

20           Bryant came up with the idea for a line of dolls that he named Bratz in or
21   about August 1998, when he was not an employee of Mattel.  At the same time,
22   Bryant sketched a series of drawings to illustrate his idea.  There was neither a
23   conception nor a reduction to practice of Bryant's idea for Bratz, as those terms are
24   used in patent law and/or in the Employee Confidential Information and Inventions
25   Agreement produced in this action by Mattel as M0001596 ("Employee
26   Agreement"), during the period of Bryant's employment Mattel.  Any work that
27   Bryant performed relating to his Bratz ideas during the time period that he was still
28   employed by Mattel constituted lawful steps by Bryant to prepare to embark upon

408916.01

EXHIBIT 26
PAGE 947

1    a new career.  Consequently, the Employee Agreement, which by its express terms
2    is limited to inventions conceived or reduced to practice during Bryant's term of
3    employment with Mattel, does not apply to Bryant's Bratz idea, and Bryant was
4    the rightful and sole owner of his Bratz idea and the concepts reflected in his
5    illustrative drawings of his idea at the time he transferred rights to Bratz to MGA.

6        Bryant did not conceal from Mattel that he was leaving Mattel to develop his
7    own doll line, as a freelancer.  Bryant has not knowingly spoliated, altered or
8    destroyed any evidence, or created any misleading evidence. Bryant has never
9    knowingly made false or conflicting claims about the origins and creation of Bratz.
10   Bryant did not misappropriate any Mattel trade secrets or confidential information.
11   Any information Bryant used in his work with MGA to develop Bratz, in addition
12   to his own creative work, was publicly available or generally known to those in the
13   industry, and was not confidential Mattel property.

14       Bryant was examined extensively during his November 2004 deposition
15   regarding his knowledge of the development of Bratz.  Therefore, by way of
16   further response, Bryant also incorporates by reference his deposition testimony in
17   this case and the facts stated therein, including but not limited to the testimony
18   appearing at the following page and line numbers:  15:10-16:13, 25:1-33:14,
19   43:24-49:19, 53:5-57:23, 68:22-82:2, 86:8-90:15, 91:8-94:7, 103:10-104:17,
20   111:21-122:21, 132:19-137:19, 139:21-143:4, 146:14-151:11, 151:12-156:22,
21   162:24-170:15, 183:20-186:15, 199:16-211:22, 214:23-223:20, 231:24-237:12,
22   241:13-245:7, 252:11-253:25, 255:1-259:23, 273:5-22, 278:16-287:25, 297:17-
23   303:2, 317:24-321:6, 323:16-326:25, 351:15-353:13, 465:9-20, 624:23-631:1, and
24   712:1-713:22.

25       Additionally, it was common knowledge at Mattel that many Mattel
26   employees employed in the Mattel Design Center worked on a freelance basis for
27   third parties, including Mattel competitors.  Both Margaret Hatch Leahy and Elise
28   Cloonan have so testified.  Indeed, Ms. Cloonan testified that the practice was so

76

CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S AMENDED SUPPLEMENTAL INTERROGATORY
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 26
PAGE 948

1   widespread that there was even a name for it at Mattel: a "G-Job". Despite

2   knowledge of this activity, Mattel rarely, if ever, enforced any rights it may have

3   had to prohibit such freelancing and did not claim or treat such conduct by Mattel

4   employees as a breach of their alleged duty of loyalty.

5       Moreover, the original concepts contributed by Bryant to the creation of the

6   Bratz dolls represent only one of the many factors that combined to make Bratz

7   one of the most successful fashion dolls on the market. Mattel played no role in

8   MGA's improvements, enhancements and changes to the Bratz dolls and/or the

9   Bratz concept. Mattel played no role in the creation and/or selection of the Bratz

10  slogan, "The Girls with a Passion for Fashion!" or the brand name "Bratz". Mattel

11  played no role in the development of the Bratz line of dolls' innovative and trend-

12  setting packaging, the importance of which is demonstrated in part by Mattel's

13  having copied such packaging. Mattel played no role in MGA's development of

14  and selection of the fashions for the Bratz dolls. Mattel played no role in the

15  development of other MGA Bratz spinoff, sub-brands, and other successful

16  additions to the Bratz doll family, including, but not limited to, Bratz Boyz, Bratz

17  Kidz, Bratz Big Kidz, Bratz Babyz, Bratz Babyz Boyz, Bratz Babyz Ponyz, Lil'

18  Bratz, Lil' Bratz Boyz, Bratz Petz, Bratz Lil' Angelz, Itsy Bitsy Bratz, Itsy Bitsy

19  Bratz Petz, Micro Bratz, Be-Bratz, and Funky Fashion Makeover Heads. Mattel

20  played no role in the development of the myriad of accessories for the Bratz dolls.

21  Mattel played no role in MGA's and/or Klasky Csupo, Inc.'s creation and/or

22  development of two-dimensional Bratz character art utilized on, for example,

23  product packaging and licensed products. Mattel played no role in the

24  development of the successful themes that have enhanced the popularity of the

25  Bratz dolls. Mattel played no role in the development of the Bratz animated TV

26  series, Bratz TV commercials, or Bratz the movie. Mattel played no role in the

27  development of the myriad of Bratz licensed products. Mattel played no role in the

28  development of the Bratz brand. Mattel played no role in the development of the

77

408916.01

**EXHIBIT 26**
**PAGE 949**

1    storylines and personas associated with each of the Bratz dolls.

2        To the extent that Mattel argues that the shapes of characters in Carter

3    Bryant's "Bratz" drawings (including, but not limited to, those drawings identified

4    by Carter Bryant in Exhibit 5 of his deposition as being sketched in August 1998)

5    represented a conception of what could have later become a three-dimensional

6    object that could have been the subject of a design patent, MGA contends as

7    follows:

8        Carter Bryant was not a sculptor, and any translation of his pre-1999 two-

9    dimensional flat art into a three-dimensional form would have produced a very

10   different shape from the actual shape of the final three-dimensional Bratz sculpt

11   used in manufacturing the first generation of Bratz dolls released on the market by

12   MGA in or about June 2001. The shapes of the characters in Bryant's drawings

13   bear little resemblance to the final shape of the actual Bratz dolls. Differences

14   between the drawings and the final shape of the actual Bratz dolls include, but are

15   not limited to, the following: posture; hip-to-waist ratio; feet size (dolls' feet are

16   not as exaggerated as characters' feet in the drawings); head size (dolls' heads are

17   proportionally smaller than characters' heads in the drawings).

18       Moreover, the final physical shape of the first generation of Bratz dolls,

19   released on the market by MGA in or about June 2001, was conceived of by

20   Margaret Leahy on behalf of MGA. The conception of this physical shape was

21   completed on or after October 21, 2000, and reduced to practice no earlier than

22   December 19, 2000. Leahy testified that she had to come up with this physical

23   shape on her own, because Carter's initial drawings were not "working drawings"

24   enabling her to create the physical shape.

25       Copyright infringement analysis under Ninth Circuit law requires that

26   "objective" or "extrinsic" elements that are in the public domain be filtered out of

27   the subject works, and, thereafter, that the remaining "subjective" or "intrinsic"

28   elements be evaluated for substantial similarity. Carter Bryant's 1998 drawings

EXHIBIT 26
PAGE 950

1   contain many elements that were already in the public domain, and that must be
2   filtered out, including but not limited to the oversized head, eyes, lips, and feet of
3   the figures in Bryant's drawings. A non-exhaustive list of examples of prior
4   existing works that incorporate such elements includes the following: Blythe dolls;
5   Lisa Frank designs; Takara's Jenny, Licca, and Barbie dolls; Mattel's Liddle
6   Kiddles; Margaret Keane artwork; Little Miss No Name; Hello Kitty; Coca-Cola
7   advertisements; anime, including, e.g., Sailor Moon; and manga; in addition to
8   sources of inspiration specifically identified by Carter Bryant, including Steve
9   Madden advertisements and Paris Blues advertisements. The aforementioned
10  elements are apparent in the Steve Madden ads which were highly visible in
11  1998—and indeed served as a key inspiration for Mattel's own "Toon Teens"
12  dolls.

13      Once all of the elements in the public domain are filtered out, and "scène-à-
14  faire" features are similarly eliminated from the analysis, the first generation Bratz
15  dolls (and all subsequent Bratz products) are readily seen as not substantially
16  similar to Carter Bryant's 1998 drawings. The differences between the drawings
17  and the dolls include, but are not limited to, the following:

18      • Posture

19      • Hip-to-waist ratio

20      • Feet size (dolls' feet are not as exaggerated as characters' feet in the
21        drawings)

22      • Head size (dolls' heads are proportionally smaller than characters'
23        heads in the drawings)

24      • Eyes (dolls' eyes are more open than characters' eyes in the drawings)

25      • Eye to lips ratio (lips of characters in drawings are proportionally
26        larger relative to eyes than are lips of dolls)

27      • Hair (characters in drawings have much edgier hairstyles than the
28        dolls do)

79

EXHIBIT 26
PAGE 951

1      • Shapes of eyes and eye design

2      • Shapes of lips

3      • Overall look and feel (dolls are overall softer, less extreme than

4        drawings)

5    That the dolls and the drawings are not substantially similar also is

6  consistent with the fact that Carter Bryant was not a sculptor, and any effort to

7  make a direct translation of his pre-1999 two-dimensional flat art into a three-

8  dimensional form would have produced a very different shape from the actual

9  shape of the final three-dimensional Bratz sculpt used in manufacturing the first

10  generation of Bratz dolls. Indeed, a team of highly-skilled artists (including

11  several that had been used by Mattel) spent months developing the Bratz first-

12  generation dolls—valuable time and original creative effort that would not have

13  been necessary if said first-generation Bratz dolls were simply a copy of Bryant's

14  designs.

15    The absence of substantial similarity is further shown in the close

16  correlation between Bryant's drawings and the inspiration he points to, including

17  but not limited to the Steve Madden advertisement in the August 1998 issue of

18  Seventeen Magazine, as well as other advertisements in that issue, such as the

19  Coca Cola advertisement.

20    Mattel's own My Scene Barbie line of dolls provides further proof that the

21  first generation of Bratz dolls was not substantially similar to the Bryant drawings,

22  in that (i) Mattel asserts that the My Scene Barbie dolls are independent works of

23  art, yet (ii) said dolls are far closer in appearance to Bratz dolls than are Bryant's

24  drawings.

25    Additional details regarding such differences will be the subject of expert

26  disclosures and will be provided in accordance with the Court's schedule for expert

27  discovery.

28    The following persons have knowledge of facts and circumstances

80

CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S AMENDED SUPPLEMENTAL INTERROGATORY
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 26
PAGE 952

1   surrounding the foregoing:  Carter Bryant; Bryant's mother, Janet Bryant; Bryant's
2   father, Thomas Bryant; Jeanne Galvano; Richard Irmen; Elise Cloonan; Ramona
3   Price; Margaret Leahy; Veronica Marlow; Anna Rhee; Mercedeh Ward; Sarah
4   Halpern; Paula Treantafelles (Garcia); Steve Tarmichael; Rebecca Harris, Cecilia
5   Kwok; David Dees; Jesse Ramirez; Samuel Wong; Edmond Lee; Steven Lee;
6   Aileen Storer; Eric Yip; Leon Djiguerian; Rachel Harris; Maggie Siu; Ben Ton;
7   Sam Wong; Ray Wong; Sandy Yonemoto; Isaac Larian; Tina Tomiyama; Lily
8   Martinez; Ei Akiko Fong; John Steven Baulch.

9       The following documents may be relevant to the foregoing: the sketches
10  drawn, in whole or in part, by Bryant in or about August 1998, including those
11  bearing the bates numbers BRYANT 175, 176, 177, 178, 179, 180, 181, 182, 183,
12  186, 189, 190, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204,
13  205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220,
14  277, 300, 301, 302, 303, 1003, 1243, 1977, 1993 and Exhibits 1, 2, and 3 to his
15  deposition; publicly available materials that Bryant identified in his deposition
16  testimony as inspiring his conception of a line of dolls in or about August 1998,
17  including but not limited to the August 1998 issue of Seventeen Magazine; other
18  documents shown to Bryant at his November 2004 deposition and marked as
19  exhibits thereto relating to the development of his idea for Bratz; Bryant's
20  Employee Agreement with Mattel; Bryant's agreement with MGA; documents that
21  refer to or evidence the work performed by MGA employees and freelancers
22  toward the reduction to practice of the Bratz line of dolls, which documents
23  number in the tens of thousands and thus are too numerous to identify individually;
24  Mattel's Brand Directional Outlines; analyses and assessments of Mattel's
25  marketing strategies prepared and/or produced by Young and Rubicam Brands and
26  Peterson Milla Hooks; Mattel's Marketing Department assessments of Mattel's
27  advertising and branding strategies; Mattel's Creative Briefs; documents generated
28  by Mattel Worldwide Consumer Research relating to any aspect of the market for

408916.01

EXHIBIT 26
PAGE 953

1   fashion dolls, including without limitation Bratz, My Scene, and Barbie (including
2   M0066042-44, M0079871-74, and M0045646-88); and publicly available
3   Documents evidencing MGA's trademarks, patents, and copyrights, all
4   DOCUMENTS that refer to or evidence the work performed by MGA employees
5   and freelancers toward the reduction to practice of the first generation of Bratz
6   dolls during the period after October 20, 2000 through June 1, 2001, including but
7   not limited to:  Carter Bryant's drawings; Documents and tangible things produced
8   by Margaret Leahy; tangible things produced by Veronica Marlow; invoices
9   submitted by employees and/or freelance artists working for MGA for work
10   performed on the Bratz project; all DOCUMENTS that constitute samples of the
11   following items in the public domain in 1998: Blythe dolls; Lisa Frank designs;
12   Takara's Jenny, Licca, and Barbie dolls; Mattel's Liddle Kiddles; Margaret Keane
13   artwork; Little Miss No Name; Hello Kitty; anime, including, e.g., Sailor Moon;
14   manga; Coca-Cola advertisements; Steve Madden advertisements; and Paris Blues
15   advertisements.  The Documents evidencing this work are too numerous to identify
16   individually.

17   **J.      Tenth Affirmative Defense (Information Readily Ascertainable)**

18        Bryant cannot be liable, either on his own account or by association with
19   MGA or other defendants, for alleged misappropriation of information that was
20   readily ascertainable by proper means at the time of the alleged acquisition or use.
21   Such information includes, but is not limited to, the identity of suppliers,
22   manufacturers, distributors or retailers.  In particular, the identity of suppliers of
23   doll hair is not trade secret or otherwise legally protected information.  To date,
24   Mattel has never provided a complete account of what trade secret or confidential
25   information it alleges Bryant misused or misappropriated

26        Discovery is ongoing and Bryant reserves the right to supplement this
27   response and, consistent with his obligations under Federal Rule of Civil Procedure
28   26(e), Bryant will supplement this response if he receives additional responsive

408916.01

EXHIBIT 26
PAGE 954

1 information, including but not limited to information regarding the bases for

2 Mattel's misappropriation, conversion, and any similar contentions.

3 **K.     Eleventh Affirmative Defense (Lack of Ownership)**

4     Mattel is neither the legal nor beneficial owner in the copyrights purportedly

5 at issue, including the following copyrights which Mattel purports to own: VA 1-

6 378-648, VA 1-378-649, VA 1-378-650, VA 1-378-651, VA 1-378-652, VA 1-

7 378-653, VA 1-378-654, VA 1-378-655, VA 1-378-656, VA 1-378-657, VA 1-

8 378-658, VA 1-378-659, VA 1-378-660, VAu 715-270, VAu 715-271, and VAu

9 715-273.

10     Mattel's counterclaims are barred in whole or in part because Mattel does

11 not own any valid copyright interests in the copyrights that it seeks to assert

12 against Bryant. In particular, Mattel does not own any valid copyright interest in

13 the following copyrights it seeks to assert against Bryant: VA 1-378-648, VA 1-

14 378-649, VA 1-378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653, VA 1-

15 378-654, VA 1-378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-

16 378-659, VA 1-378-660, VAu 715-270, VAu 715-271, and VAu 715-273.

17     Bryant came up with the idea for a line of dolls that he named Bratz in or

18 about August 1998, when he was not an employee of Mattel. At the same time,

19 Bryant sketched a series of drawings to illustrate his idea. There was neither a

20 conception nor a reduction to practice of Bryant's idea for Bratz, as those terms are

21 used in patent law and/or in the Employee Confidential Information and Inventions

22 Agreement produced in this action by Mattel as M0001596 ("Employee

23 Agreement"), during the period of Bryant's employment Mattel. Any work that

24 Bryant performed relating to his Bratz ideas during the time period that he was still

25 employed by Mattel constituted lawful steps by Bryant to prepare to embark upon

26 a new career. Consequently, the Employee Agreement, which by its express terms

27 is limited to inventions conceived or reduced to practice during Bryant's term of

28 employment with Mattel, does not apply to Bryant's Bratz idea, and Bryant was

CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S AMENDED SUPPLEMENTAL INTERROGATORY
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 26
PAGE 955

the rightful and sole owner of his Bratz idea and the concepts reflected in his illustrative drawings of his idea at the time he transferred rights to Bratz to MGA.

Bryant did not conceal from Mattel that he was leaving Mattel to develop his own doll line, as a freelancer. Bryant has not knowingly spoliated, altered or destroyed any evidence, or created any misleading evidence. Bryant has never knowingly made false or conflicting claims about the origins and creation of Bratz. Bryant did not misappropriate any Mattel trade secrets or confidential information. Any information Bryant used in his work with MGA to develop Bratz, in addition to his own creative work, was publicly available or generally known to those in the industry, and was not confidential Mattel property.

Bryant was examined extensively during his November 2004 deposition regarding his knowledge of the development of Bratz. Therefore, by way of further response, Bryant also incorporates by reference his deposition testimony in this case and the facts stated therein, including but not limited to the testimony appearing at the following page and line numbers: 15:10-16:13, 25:1-33:14, 43:24-49:19, 53:5-57:23, 68:22-82:2, 86:8-90:15, 91:8-94:7, 103:10-104:17, 111:21-122:21, 132:19-137:19, 139:21-143:4, 146:14-151:11, 151:12-156:22, 162:24-170:15, 183:20-186:15, 199:16-211:22, 214:23-223:20, 231:24-237:12, 241:13-245:7, 252:11-253:25, 255:1-259:23, 273:5-22, 278:16-287:25, 297:17-303:2, 317:24-321:6, 323:16-326:25, 351:15-353:13, 465:9-20, 624:23-631:1, and 712:1-713:22.

Additionally, it was common knowledge at Mattel that many Mattel employees employed in the Mattel Design Center worked on a freelance basis for third parties, including Mattel competitors. Both Margaret Hatch Leahy and Elise Cloonan have so testified. Indeed, Ms. Cloonan testified that the practice was so widespread that there was even a name for it at Mattel: a "G-Job". Despite knowledge of this activity, Mattel rarely, if ever, enforced any rights it may have had to prohibit such freelancing and did not claim or treat such conduct by Mattel

84

CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S AMENDED SUPPLEMENTAL INTERROGATORY
CASE NO. CV 04-09049 SGL (RNBx)

**EXHIBIT 26**
**PAGE 956**

1   employees as a breach of their alleged duty of loyalty.

2

3      Moreover, the original concepts contributed by Bryant to the creation of the

4   Bratz dolls represent only one of the many factors that combined to make Bratz

5   one of the most successful fashion dolls on the market. Mattel played no role in

6   MGA's improvements, enhancements and changes to the Bratz dolls and/or the

7   Bratz concept. Mattel played no role in the creation and/or selection of the Bratz

8   slogan, "The Girls with a Passion for Fashion!" or the brand name "Bratz". Mattel

9   played no role in the development of the Bratz line of dolls' innovative and trend-

10   setting packaging, the importance of which is demonstrated in part by Mattel's

11   having copied such packaging. Mattel played no role in MGA's development of

12   and selection of the fashions for the Bratz dolls. Mattel played no role in the

13   development of other MGA Bratz spinoff, sub-brands, and other successful

14   additions to the Bratz doll family, including, but not limited to, Bratz Boyz, Bratz

15   Kidz, Bratz Big Kidz, Bratz Babyz, Bratz Babyz Boyz, Bratz Babyz Ponyz, Lil'

16   Bratz, Lil' Bratz Boyz, Bratz Petz, Bratz Lil' Angelz, Itsy Bitsy Bratz, Itsy Bitsy

17   Bratz Petz, Micro Bratz, Be-Bratz, and Funky Fashion Makeover Heads. Mattel

18   played no role in the development of the myriad of accessories for the Bratz dolls.

19   Mattel played no role in MGA's and/or Klasky Csupo, Inc.'s creation and/or

20   development of two-dimensional Bratz character art utilized on, for example,

21   product packaging and licensed products. Mattel played no role in the

22   development of the successful themes that have enhanced the popularity of the

23   Bratz dolls. Mattel played no role in the development of the Bratz animated TV

24   series, Bratz TV commercials, or Bratz the movie. Mattel played no role in the

25   development of the myriad of Bratz licensed products. Mattel played no role in the

26   development of the Bratz brand. Mattel played no role in the development of the

27   storylines and personas associated with each of the Bratz dolls.

28      To the extent that Mattel argues that the shapes of characters in Carter

408916.01

EXHIBIT 26
PAGE 957

1   Bryant's "Bratz" drawings (including, but not limited to, those drawings identified
2   by Carter Bryant in Exhibit 5 of his deposition as being sketched in August 1998)
3   represented a conception of what could have later become a three-dimensional
4   object that could have been the subject of a design patent, MGA contends as
5   follows:

6          Carter Bryant was not a sculptor, and any translation of his pre-1999 two-
7   dimensional flat art into a three-dimensional form would have produced a very
8   different shape from the actual shape of the final three-dimensional Bratz sculpt
9   used in manufacturing the first generation of Bratz dolls released on the market by
10  MGA in or about June 2001.  The shapes of the characters in Bryant's drawings
11  bear little resemblance to the final shape of the actual Bratz dolls.  Differences
12  between the drawings and the final shape of the actual Bratz dolls include, but are
13  not limited to, the following:  posture; hip-to-waist ratio; feet size (dolls' feet are
14  not as exaggerated as characters' feet in the drawings); head size (dolls' heads are
15  proportionally smaller than characters' heads in the drawings).

16         Moreover, the final physical shape of the first generation of Bratz dolls,
17  released on the market by MGA in or about June 2001, was conceived of by
18  Margaret Leahy on behalf of MGA.  The conception of this physical shape was
19  completed on or after October 21, 2000, and reduced to practice no earlier than
20  December 19, 2000.  Leahy testified that she had to come up with this physical
21  shape on her own, because Carter's initial drawings were not "working drawings"
22  enabling her to create the physical shape.

23         Copyright infringement analysis under Ninth Circuit law requires that
24  "objective" or "extrinsic" elements that are in the public domain be filtered out of
25  the subject works, and, thereafter, that the remaining "subjective" or "intrinsic"
26  elements be evaluated for substantial similarity.  Carter Bryant's 1998 drawings
27  contain many elements that were already in the public domain, and that must be
28  filtered out, including but not limited to the oversized head, eyes, lips, and feet of

408916.01

EXHIBIT 26
PAGE 958

1   the figures in Bryant's drawings.  A non-exhaustive list of examples of prior

2   existing works that incorporate such elements includes the following:  Blythe dolls;

3   Lisa Frank designs; Takara's Jenny, Licca, and Barbie dolls; Mattel's Liddle

4   Kiddles; Margaret Keane artwork; Little Miss No Name; Hello Kitty; Coca-Cola

5   advertisements; anime, including, e.g., Sailor Moon; and manga; in addition to

6   sources of inspiration specifically identified by Carter Bryant, including Steve

7   Madden advertisements and Paris Blues advertisements.  The aforementioned

8   elements are apparent in the Steve Madden ads which were highly visible in

9   1998—and indeed served as a key inspiration for Mattel's own "Toon Teens"

10  dolls.

11        Once all of the elements in the public domain are filtered out, and "scène-à-

12  faire" features are similarly eliminated from the analysis, the first generation Bratz

13  dolls (and all subsequent Bratz products) are readily seen as not substantially

14  similar to Carter Bryant's 1998 drawings.  The differences between the drawings

15  and the dolls include, but are not limited to, the following:

16  ● Posture

17  ● Hip-to-waist ratio

18  ● Feet size (dolls' feet are not as exaggerated as characters' feet in the
19    drawings)

20  ● Head size (dolls' heads are proportionally smaller than characters'
21    heads in the drawings)

22  ● Eyes (dolls' eyes are more open than characters' eyes in the drawings)

23  ● Eye to lips ratio (lips of characters in drawings are proportionally
24    larger relative to eyes than are lips of dolls)

25  ● Hair (characters in drawings have much edgier hairstyles than the
26    dolls do)

27  ● Shapes of eyes and eye design

28  ● Shapes of lips

EXHIBIT 26
PAGE 959

EXHIBIT

87

CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S AMENDED SUPPLEMENTAL INTERROGATORY
CASE NO. CV 04-09049 SGL (RNBx)

1       •   Overall look and feel (dolls are overall softer, less extreme than
2           drawings)

3     That the dolls and the drawings are not substantially similar also is
4 consistent with the fact that Carter Bryant was not a sculptor, and any effort to
5 make a direct translation of his pre-1999 two-dimensional flat art into a three-
6 dimensional form would have produced a very different shape from the actual
7 shape of the final three-dimensional Bratz sculpt used in manufacturing the first
8 generation of Bratz dolls. Indeed, a team of highly-skilled artists (including
9 several that had been used by Mattel) spent months developing the Bratz first-
10 generation dolls—valuable time and original creative effort that would not have
11 been necessary if said first-generation Bratz dolls were simply a copy of Bryant's
12 designs.

13     The absence of substantial similarity is further shown in the close
14 correlation between Bryant's drawings and the inspiration he points to, including
15 but not limited to the Steve Madden advertisement in the August 1998 issue of
16 Seventeen Magazine, as well as other advertisements in that issue, such as the
17 Coca Cola advertisement.

18     Mattel's own My Scene Barbie line of dolls provides further proof that the
19 first generation of Bratz dolls was not substantially similar to the Bryant drawings,
20 in that (i) Mattel asserts that the My Scene Barbie dolls are independent works of
21 art, yet (ii) said dolls are far closer in appearance to Bratz dolls than are Bryant's
22 drawings.

23     Additional details regarding such differences will be the subject of expert
24 disclosures and will be provided in accordance with the Court's schedule for expert
25 discovery.

26     The following persons have knowledge of facts and circumstances
27 surrounding the foregoing:  Carter Bryant; Bryant's mother, Janet Bryant; Bryant's
28 father, Thomas Bryant; Jeanne Galvano; Richard Irmen; Elise Cloonan; Ramona

EXHIBIT 26
PAGE 960

1  Price; Margaret Leahy; Veronica Marlow; Anna Rhee; Mercedeh Ward; Sarah
2  Halpern; Paula Treantafelles (Garcia); Steve Tarmichael; Rebecca Harris, Cecilia
3  Kwok; David Dees; Jesse Ramirez; Samuel Wong; Edmond Lee; Steven Lee;
4  Aileen Storer; Eric Yip; Leon Djiguerian; Rachel Harris; Maggie Siu; Ben Ton;
5  Sam Wong; Ray Wong; Sandy Yonemoto; Isaac Larian; Tina Tomiyama; Lily
6  Martinez; Ei Akiko Fong; John Steven Baulch.

7       The following documents may be relevant to the foregoing: the sketches
8  drawn, in whole or in part, by Bryant in or about August 1998, including those
9  bearing the bates numbers BRYANT 175, 176, 177, 178, 179, 180, 181, 182, 183,
10  186, 189, 190, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204,
11  205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220,
12  277, 300, 301, 302, 303, 1003, 1243, 1977, 1993 and Exhibits 1, 2, and 3 to his
13  deposition; publicly available materials that Bryant identified in his deposition
14  testimony as inspiring his conception of a line of dolls in or about August 1998,
15  including but not limited to the August 1998 issue of Seventeen Magazine; other
16  documents shown to Bryant at his November 2004 deposition and marked as
17  exhibits thereto relating to the development of his idea for Bratz; Bryant's
18  Employee Agreement with Mattel; Bryant's agreement with MGA; documents that
19  refer to or evidence the work performed by MGA employees and freelancers
20  toward the reduction to practice of the Bratz line of dolls, which documents
21  number in the tens of thousands and thus are too numerous to identify individually;
22  Mattel's Brand Directional Outlines; analyses and assessments of Mattel's
23  marketing strategies prepared and/or produced by Young and Rubicam Brands and
24  Peterson Milla Hooks; Mattel's Marketing Department assessments of Mattel's
25  advertising and branding strategies; Mattel's Creative Briefs; documents generated
26  by Mattel Worldwide Consumer Research relating to any aspect of the market for
27  fashion dolls, including without limitation Bratz, My Scene, and Barbie (including
28  M0066042-44, M0079871-74, and M0045646-88); and publicly available

EXHIBIT 26
PAGE 961

1  Documents evidencing MGA's trademarks, patents, and copyrights, all

2  DOCUMENTS that refer to or evidence the work performed by MGA employees

3  and freelancers toward the reduction to practice of the first generation of Bratz

4  dolls during the period after October 20, 2000 through June 1, 2001, including but

5  not limited to:  Carter Bryant's drawings; Documents and tangible things produced

6  by Margaret Leahy; tangible things produced by Veronica Marlow; invoices

7  submitted by employees and/or freelance artists working for MGA for work

8  performed on the Bratz project; all DOCUMENTS that constitute samples of the

9  following items in the public domain in 1998: Blythe dolls; Lisa Frank designs;

10  Takara's Jenny, Licca, and Barbie dolls; Mattel's Liddle Kiddles; Margaret Keane

11  artwork; Little Miss No Name; Hello Kitty; anime, including, e.g., Sailor Moon;

12  manga; Coca-Cola advertisements; Steve Madden advertisements; and Paris Blues

13  advertisements.  The Documents evidencing this work are too numerous to identify

14  individually.

15  **L.    Twelfth Affirmative Defense (Copyright Invalidity)**

16        Mattel's purported copyrights, including VA 1-378-648, VA 1-378-649, VA

17  1-378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653, VA 1-378-654, VA 1-

18  378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-378-659, VA 1-

19  378-660, VAu 715-270, VAu 715-271, and VAu 715-273, are invalid.

20        Mattel's counterclaims are barred in whole or in part because Mattel does

21  not own any valid copyright interests in the copyrights that it seeks to assert

22  against Bryant.  In particular, Mattel does not own any valid copyright interest in

23  the following copyrights it seeks to assert against Bryant: VA 1-378-648, VA 1-

24  378-649, VA 1-378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653, VA 1-

25  378-654, VA 1-378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-

26  378-659, VA 1-378-660, VAu 715-270, VAu 715-271, and VAu 715-273.

27        Bryant came up with the idea for a line of dolls that he named Bratz in or

28  about August 1998, when he was not an employee of Mattel.  At the same time,

EXHIBIT 26
PAGE 962

1  Bryant sketched a series of drawings to illustrate his idea.  There was neither a
2  conception nor a reduction to practice of Bryant's idea for Bratz, as those terms are
3  used in patent law and/or in the Employee Confidential Information and Inventions
4  Agreement produced in this action by Mattel as M0001596 ("Employee
5  Agreement"), during the period of Bryant's employment Mattel.  Any work that
6  Bryant performed relating to his Bratz ideas during the time period that he was still
7  employed by Mattel constituted lawful steps by Bryant to prepare to embark upon
8  a new career.  Consequently, the Employee Agreement, which by its express terms
9  is limited to inventions conceived or reduced to practice during Bryant's term of
10  employment with Mattel, does not apply to Bryant's Bratz idea, and Bryant was
11  the rightful and sole owner of his Bratz idea and the concepts reflected in his
12  illustrative drawings of his idea at the time he transferred rights to Bratz to MGA.

13        Bryant did not conceal from Mattel that he was leaving Mattel to develop his
14  own doll line, as a freelancer.  Bryant has not knowingly spoliated, altered or
15  destroyed any evidence, or created any misleading evidence. Bryant has never
16  knowingly made false or conflicting claims about the origins and creation of Bratz.
17  Bryant did not misappropriate any Mattel trade secrets or confidential information.
18  Any information Bryant used in his work with MGA to develop Bratz, in addition
19  to his own creative work, was publicly available or generally known to those in the
20  industry, and was not confidential Mattel property.

21        Bryant was examined extensively during his November 2004 deposition
22  regarding his knowledge of the development of Bratz.  Therefore, by way of
23  further response, Bryant also incorporates by reference his deposition testimony in
24  this case and the facts stated therein, including but not limited to the testimony
25  appearing at the following page and line numbers:  15:10-16:13, 25:1-33:14,
26  43:24-49:19, 53:5-57:23, 68:22-82:2, 86:8-90:15, 91:8-94:7, 103:10-104:17,
27  111:21-122:21, 132:19-137:19, 139:21-143:4, 146:14-151:11, 151:12-156:22,
28  162:24-170:15, 183:20-186:15, 199:16-211:22, 214:23-223:20, 231:24-237:12,

408916.01

CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S AMENDED SUPPLEMENTAL INTERROGATORY
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 26
PAGE 963

1  241:13-245:7, 252:11-253:25, 255:1-259:23, 273:5-22, 278:16-287:25, 297:17-

2  303:2, 317:24-321:6, 323:16-326:25, 351:15-353:13, 465:9-20, 624:23-631:1, and

3  712:1-713:22.

4       Additionally, it was common knowledge at Mattel that many Mattel

5  employees employed in the Mattel Design Center worked on a freelance basis for

6  third parties, including Mattel competitors. Both Margaret Hatch Leahy and Elise

7  Cloonan have so testified. Indeed, Ms. Cloonan testified that the practice was so

8  widespread that there was even a name for it at Mattel: a "G-Job". Despite

9  knowledge of this activity, Mattel rarely, if ever, enforced any rights it may have

10  had to prohibit such freelancing and did not claim or treat such conduct by Mattel

11  employees as a breach of their alleged duty of loyalty.

12       Moreover, the original concepts contributed by Bryant to the creation of the

13  Bratz dolls represent only one of the many factors that combined to make Bratz

14  one of the most successful fashion dolls on the market. Mattel played no role in

15  MGA's improvements, enhancements and changes to the Bratz dolls and/or the

16  Bratz concept. Mattel played no role in the creation and/or selection of the Bratz

17  slogan, "The Girls with a Passion for Fashion!" or the brand name "Bratz". Mattel

18  played no role in the development of the Bratz line of dolls' innovative and trend-

19  setting packaging, the importance of which is demonstrated in part by Mattel's

20  having copied such packaging. Mattel played no role in MGA's development of

21  and selection of the fashions for the Bratz dolls. Mattel played no role in the

22  development of other MGA Bratz spinoff, sub-brands, and other successful

23  additions to the Bratz doll family, including, but not limited to, Bratz Boyz, Bratz

24  Kidz, Bratz Big Kidz, Bratz Babyz, Bratz Babyz Boyz, Bratz Babyz Ponyz, Lil'

25  Bratz, Lil' Bratz Boyz, Bratz Petz, Bratz Lil' Angelz, Itsy Bitsy Bratz, Itsy Bitsy

26  Bratz Petz, Micro Bratz, Be-Bratz, and Funky Fashion Makeover Heads. Mattel

27  played no role in the development of the myriad of accessories for the Bratz dolls.

28  Mattel played no role in MGA's and/or Klasky Csupo, Inc.'s creation and/or

EXHIBIT 26
PAGE 964

1    development of two-dimensional Bratz character art utilized on, for example,

2    product packaging and licensed products. Mattel played no role in the

3    development of the successful themes that have enhanced the popularity of the

4    Bratz dolls. Mattel played no role in the development of the Bratz animated TV

5    series, Bratz TV commercials, or Bratz the movie. Mattel played no role in the

6    development of the myriad of Bratz licensed products. Mattel played no role in the

7    development of the Bratz brand. Mattel played no role in the development of the

8    storylines and personas associated with each of the Bratz dolls.

9          To the extent that Mattel argues that the shapes of characters in Carter

10   Bryant's "Bratz" drawings (including, but not limited to, those drawings identified

11   by Carter Bryant in Exhibit 5 of his deposition as being sketched in August 1998)

12   represented a conception of what could have later become a three-dimensional

13   object that could have been the subject of a design patent, MGA contends as

14   follows:

15         Carter Bryant was not a sculptor, and any translation of his pre-1999 two-

16   dimensional flat art into a three-dimensional form would have produced a very

17   different shape from the actual shape of the final three-dimensional Bratz sculpt

18   used in manufacturing the first generation of Bratz dolls released on the market by

19   MGA in or about June 2001. The shapes of the characters in Bryant's drawings

20   bear little resemblance to the final shape of the actual Bratz dolls. Differences

21   between the drawings and the final shape of the actual Bratz dolls include, but are

22   not limited to, the following: posture; hip-to-waist ratio; feet size (dolls' feet are

23   not as exaggerated as characters' feet in the drawings); head size (dolls' heads are

24   proportionally smaller than characters' heads in the drawings).

25         Moreover, the final physical shape of the first generation of Bratz dolls,

26   released on the market by MGA in or about June 2001, was conceived of by

27   Margaret Leahy on behalf of MGA. The conception of this physical shape was

28   completed on or after October 21, 2000, and reduced to practice no earlier than

93

408916.01

EXHIBIT 26
PAGE 965

1  December 19, 2000. Leahy testified that she had to come up with this physical
2  shape on her own, because Carter's initial drawings were not "working drawings"
3  enabling her to create the physical shape.

4      Copyright infringement analysis under Ninth Circuit law requires that
5  "objective" or "extrinsic" elements that are in the public domain be filtered out of
6  the subject works, and, thereafter, that the remaining "subjective" or "intrinsic"
7  elements be evaluated for substantial similarity. Carter Bryant's 1998 drawings
8  contain many elements that were already in the public domain, and that must be
9  filtered out, including but not limited to the oversized head, eyes, lips, and feet of
10 the figures in Bryant's drawings. A non-exhaustive list of examples of prior
11 existing works that incorporate such elements includes the following: Blythe dolls;
12 Lisa Frank designs; Takara's Jenny, Licca, and Barbie dolls; Mattel's Liddle
13 Kiddles; Margaret Keane artwork; Little Miss No Name; Hello Kitty; Coca-Cola
14 advertisements; anime, including, e.g., Sailor Moon; and manga; in addition to
15 sources of inspiration specifically identified by Carter Bryant, including Steve
16 Madden advertisements and Paris Blues advertisements. The aforementioned
17 elements are apparent in the Steve Madden ads which were highly visible in
18 1998—and indeed served as a key inspiration for Mattel's own "Toon Teens"
19 dolls.

20     Once all of the elements in the public domain are filtered out, and "scène-à-
21 faire" features are similarly eliminated from the analysis, the first generation Bratz
22 dolls (and all subsequent Bratz products) are readily seen as not substantially
23 similar to Carter Bryant's 1998 drawings. The differences between the drawings
24 and the dolls include, but are not limited to, the following:

25     •   Posture
26     •   Hip-to-waist ratio
27     •   Feet size (dolls' feet are not as exaggerated as characters' feet in the
28        drawings)

94

EXHIBIT 26
PAGE 966

1  •  Head size (dolls' heads are proportionally smaller than characters'
2     heads in the drawings)
3  •  Eyes (dolls' eyes are more open than characters' eyes in the drawings)
4  •  Eye to lips ratio (lips of characters in drawings are proportionally
5     larger relative to eyes than are lips of dolls)
6  •  Hair (characters in drawings have much edgier hairstyles than the
7     dolls do)
8  •  Shapes of eyes and eye design
9  •  Shapes of lips
10 •  Overall look and feel (dolls are overall softer, less extreme than
11    drawings)

12    That the dolls and the drawings are not substantially similar also is

13 consistent with the fact that Carter Bryant was not a sculptor, and any effort to

14 make a direct translation of his pre-1999 two-dimensional flat art into a three-

15 dimensional form would have produced a very different shape from the actual

16 shape of the final three-dimensional Bratz sculpt used in manufacturing the first

17 generation of Bratz dolls.  Indeed, a team of highly-skilled artists (including

18 several that had been used by Mattel) spent months developing the Bratz first-

19 generation dolls—valuable time and original creative effort that would not have

20 been necessary if said first-generation Bratz dolls were simply a copy of Bryant's

21 designs.

22    The absence of substantial similarity is further shown in the close

23 correlation between Bryant's drawings and the inspiration he points to, including

24 but not limited to the Steve Madden advertisement in the August 1998 issue of

25 Seventeen Magazine, as well as other advertisements in that issue, such as the

26 Coca Cola advertisement.

27    Mattel's own My Scene Barbie line of dolls provides further proof that the

28 first generation of Bratz dolls was not substantially similar to the Bryant drawings,

95

EXHIBIT 26
PAGE 967

1  in that (i) Mattel asserts that the My Scene Barbie dolls are independent works of

2  art, yet (ii) said dolls are far closer in appearance to Bratz dolls than are Bryant's

3  drawings.

4      Additional details regarding such differences will be the subject of expert

5  disclosures and will be provided in accordance with the Court's schedule for expert

6  discovery.

7      The following persons have knowledge of facts and circumstances

8  surrounding the foregoing: Carter Bryant; Bryant's mother, Janet Bryant; Bryant's

9  father, Thomas Bryant; Jeanne Galvano; Richard Irmen; Elise Cloonan; Ramona

10  Price; Margaret Leahy; Veronica Marlow; Anna Rhee; Mercedeh Ward; Sarah

11  Halpern; Paula Treantafelles (Garcia); Steve Tarmichael; Rebecca Harris, Cecilia

12  Kwok; David Dees; Jesse Ramirez; Samuel Wong; Edmond Lee; Steven Lee;

13  Aileen Storer; Eric Yip; Leon Djiguerian; Rachel Harris; Maggie Siu; Ben Ton;

14  Sam Wong; Ray Wong; Sandy Yonemoto; Isaac Larian; Tina Tomiyama; Lily

15  Martinez; Ei Akiko Fong; John Steven Baulch.

16      The following documents may be relevant to the foregoing: the sketches

17  drawn, in whole or in part, by Bryant in or about August 1998, including those

18  bearing the bates numbers BRYANT 175, 176, 177, 178, 179, 180, 181, 182, 183,

19  186, 189, 190, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204,

20  205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220,

21  277, 300, 301, 302, 303, 1003, 1243, 1977, 1993 and Exhibits 1, 2, and 3 to his

22  deposition; publicly available materials that Bryant identified in his deposition

23  testimony as inspiring his conception of a line of dolls in or about August 1998,

24  including but not limited to the August 1998 issue of Seventeen Magazine; other

25  documents shown to Bryant at his November 2004 deposition and marked as

26  exhibits thereto relating to the development of his idea for Bratz; Bryant's

27  Employee Agreement with Mattel; Bryant's agreement with MGA; documents that

28  refer to or evidence the work performed by MGA employees and freelancers

EXHIBIT 26
PAGE 968

1  toward the reduction to practice of the Bratz line of dolls, which documents

2  number in the tens of thousands and thus are too numerous to identify individually;

3  Mattel's Brand Directional Outlines; analyses and assessments of Mattel's

4  marketing strategies prepared and/or produced by Young and Rubicam Brands and

5  Peterson Milla Hooks; Mattel's Marketing Department assessments of Mattel's

6  advertising and branding strategies; Mattel's Creative Briefs; documents generated

7  by Mattel Worldwide Consumer Research relating to any aspect of the market for

8  fashion dolls, including without limitation Bratz, My Scene, and Barbie (including

9  M0066042-44, M0079871-74, and M0045646-88); and publicly available

10  Documents evidencing MGA's trademarks, patents, and copyrights, all

11  DOCUMENTS that refer to or evidence the work performed by MGA employees

12  and freelancers toward the reduction to practice of the first generation of Bratz

13  dolls during the period after October 20, 2000 through June 1, 2001, including but

14  not limited to:  Carter Bryant's drawings; Documents and tangible things produced

15  by Margaret Leahy; tangible things produced by Veronica Marlow; invoices

16  submitted by employees and/or freelance artists working for MGA for work

17  performed on the Bratz project; all DOCUMENTS that constitute samples of the

18  following items in the public domain in 1998: Blythe dolls; Lisa Frank designs;

19  Takara's Jenny, Licca, and Barbie dolls; Mattel's Liddle Kiddles; Margaret Keane

20  artwork; Little Miss No Name; Hello Kitty; anime, including, e.g., Sailor Moon;

21  manga; Coca-Cola advertisements; Steve Madden advertisements; and Paris Blues

22  advertisements.  The Documents evidencing this work are too numerous to identify

23  individually.

24  **M.    Thirteenth Affirmative Defense (No Statutory Damages or Attorney's Fees)**

25

26       Mattel is barred from recovering statutory damages and/or attorneys' fees

27  because it failed to register the copyrights that are purportedly at issue within the

28  time required by 17 U.S.C. § 412.

**EXHIBIT 26**
**PAGE 969**

1    The following persons have knowledge of facts and circumstances
2  surrounding the foregoing: current and former employees, contractors, or agents
3  and affiliates of Mattel involved in the copyright registrations at issue.

4    The following documents may be related to this defense: Mattel's copyright
5  registrations at issue in this case, including but not limited to Mattel's registrations
6  for Toon Teens (M12564-M12565), My Scene (M62033-62116), and Bratz
7  (M59698-M59761; M59579-M59609).

8  **N.    Fourteenth Affirmative Defense (Joinder in Defenses of Co-Defendants)**

9    Bryant adopts and incorporates by this reference any and all other
10  affirmative defenses that have been or will be asserted by any other defendant
11  (including MGA) in this litigation to the extent that defendants may share in such
12  affirmative defenses. Bryant incorporates by reference, as though fully set forth
13  herein, all other defendants' responses to any defenses so shared.

14

15  Dated: January 7, 2007          KEKER & VAN NEST, LLP

16

17

18                By: _____
19                     Michael Page
                     Attorneys for Plaintiff
                     CARTER BRYANT

20

21

22

23

24

25

26

27                            EXHIBIT

28                            **EXHIBIT 26**
                            **PAGE 970**

408916.01   CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S AMENDED SUPPLEMENTAL INTERROGATORY
                        CASE NO. CV 04-09049 SGL (RNBx)

## PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On January 7, 2008, I served the following document(s):

**CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S AMENDED SUPPLEMENTAL INTERROGATORY REGARDING DEFENDANTS' AFFIRMATIVE DEFENSES**

by **FEDERAL EXPRESS**, by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for correspondence for delivery by FedEx Corporation. According to that practice, items are retrieved daily by a FedEx Corporation employee for overnight delivery.

by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

| | |
|---|---|
| John B. Quinn | Thomas J. Nolan |
| Michael T. Zeller | Skadden Arps Slate Meagher & Flom |
| Quinn Emanuel Urquhart Oliver & | 300 South Grand Avenue, Suite 3400 |
| Hedges, LLP | Los Angeles, CA 90071-3144 |
| 865 South Figueroa Street, 10th Floor | Tel: 213/687-5000 |
| Los Angeles, CA 90017-2543 | Fax: 213/687-5600 |
| Tel: 213/443-3000 | Email: tnolan@skadden.com |
| Fax: 213/443-3100 | |
| Email: johnquinn@quinnemanuel.com | |
| Email: michaelzeller@quinnemanuel.com | |

Alexander H. Cote
Overland Borenstein Scheper & Kim LLP
300 S. Grand Avenue, Suite 2750
Los Angeles, California 90071
Tel: 213/613-4660
Fax: 213/613-4656
Email: acote@obsklaw.com

**EXHIBIT 26**
**PAGE 971**

1    Executed on January 7, 2008, at San Francisco, California.

2        I declare under penalty of perjury under the laws of the State of California

3    that the above is true and correct.

4                                            MAUREEN STONE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                                **EXHIBIT 26**
                                                                **PAGE 972**

396359.01                              PROOF OF SERVICE
                                CASE NO. CV 04-09049 SGL (RNBx)

**EXHIBIT 27**

**RECEIVED**

NOV 1 3 2007

1  THOMAS J. NOLAN (Bar No. 066992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, California 90071-3144
3  Telephone:  (213) 687-5000
   Facsimile:   (213) 687-5600
4  E-mail:     tnolan@skadden.com

5  KENNETH A. PLEVAN
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  4 Times Square
   New York, NY 10036
7  Telephone:  (212) 735-3000
   Facsimile:   (212) 735-2000
8  E-mail:     kplevan@skadden.com
   (application for admission *pro hac vice* pending)

9
   Attorneys for Counter-Defendants,
10 MGA ENTERTAINMENT, INC.,
   ISAAC LARIAN, MGA ENTERTAINMENT (HK)
11 LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

12

13                 UNITED STATES DISTRICT COURT

14                CENTRAL DISTRICT OF CALIFORNIA

15 CARTER BRYANT, an individual    )  CASE NO. CV 04-9049 SGL (RNBx)
                                    )
16              Plaintiff,          )  Consolidated with Case No. 04-9059
                                    )  and Case No. 05-2727
17        v.                        )
                                    )  **ISAAC LARIAN'S AMENDED**
18 MATTEL, INC., a Delaware         )  **ANSWER AND AFFIRMATIVE**
   corporation                      )  **DEFENSES TO MATTEL, INC.'S**
19                                  )  **SECOND AMENDED ANSWER**
                Defendant.          )  **AND COUNTERCLAIMS**
20                                  )
                                    )  Honorable Stephen G. Larson
21                                  )  Courtroom 1
                                    )
22 Consolidated with MATTEL, INC. v. )
   BRYANT and MGA                   )
23 ENTERTAINMENT, INC. v.           )
   MATTEL, INC.                     )
24                                  )

25

26

27                                               **EXHIBIT 27**
                                                 **PAGE 973**
28                        *11-8*
   ─────────────────────────────────────────────────────────
   ISAAC LARIAN'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S SECOND AMENDED
                      ANSWER AND COUNTERCLAIMS

1    Counter-defendant Isaac Larian hereby answers, for himself alone, the Second

2 Amended Counterclaim of Counter-claimant Mattel Inc., as follows:

3    As a preliminary matter, Mattel's use of headings throughout its counterclaims

4 is improper, and therefore no response to Mattel's headings is required. If any

5 response is required, Larian denies all allegations contained in Mattel's headings.

6                              **RESPONSES**

7         1.    Larian denies the allegations set forth in paragraph 1.

8         2.    Larian denies the allegations set forth in paragraph 2.

9         3.    Larian admits that MGA decided to expand into Mexico in or

10 about 2004, and denies the remaining allegations set forth in paragraph 3.

11        4.    Larian denies the allegations set forth in paragraph 4.

12        5.    Larian denies the allegations set forth in paragraph 5.

13        6.    Larian admits that the Court has federal question jurisdiction over

14 this action pursuant to 28 U.S.C. § 1331, denies that 17 U.S.C. §§ 101 and 18 U.S.C.

15 § 1964(c) apply to the extraterritorial conduct alleged in the Counterclaims, and

16 denies that Mattel is entitled to any relief on its Counterclaims.

17        7.    Larian admits that venue is proper in this District for Mattel's

18 claims based on conduct alleged to have occurred within this District and denies that

19 venue is proper in this District for acts alleged to have occurred in Mexico, Canada,

20 Hong Kong, or other places outside of this District.

21        8.    Larian admits the allegations set forth in paragraph 8.

22        9.    Larian admits the allegations set forth in the first and second

23 sentences of paragraph 9, and denies the remaining allegations set forth in paragraph

24 9.

25        10.   Larian admits the allegations set forth in paragraph 10.

26        11.   Larian admits the allegations set forth in the first sentence of

27 paragraph 11, and denies the remaining allegations set forth in paragraph 11.

28
                                    1

1      12.    Larian admits the allegations set forth in paragraph 12.

2      13.    Larian admits the allegations set forth in the first sentence of

3  paragraph 13. Larian denies the remaining allegations set forth in paragraph 13.

4      14.    Larian admits the allegations set forth in paragraph 14.

5      15.    Paragraph 15 is a statement of Mattel's legal position, to which

6  no response is necessary. To the extent a response is required, Larian denies the

7  allegations set forth in paragraph 15.

8      16.    Larian admits the allegations set forth in the first sentence of

9  paragraph 16. Larian is without sufficient knowledge to admit or deny the remaining

10  allegations set forth in paragraph 16, and on that basis, denies the remaining

11  allegations set forth in paragraph 16.

12      17.    Larian is without sufficient knowledge to admit or deny the

13  allegations set forth in paragraph 17, and on that basis, denies the allegations set

14  forth in paragraph 17.

15      18.    Larian is without sufficient knowledge to admit or deny the

16  allegations set forth in paragraph 18, and on that basis, denies the allegations set

17  forth in paragraph 18.

18      19.    Larian admits that MGA is a toy manufacturer, that MGA began

19  as a consumer electronics business and expanded into the toy business with licenses

20  to sell handheld electronic games, and later expanded its business by launching the

21  Bratz fashion doll line, and denies the remaining allegations set forth in paragraph

22  19.

23      20.    Larian denies the allegations set forth in paragraph 20.

24      21.    Larian admits that Carter Bryant is a former employee of Mattel,

25  and states he is without sufficient knowledge to admit or deny the remaining

26  allegations set forth in paragraph 21, and on that basis, denies the remaining

27  allegations set forth in paragraph 21.

28

EXHIBIT 27
PAGE 975

2

22. Larian is without sufficient knowledge to admit or deny the allegations set forth in paragraph 22, and on that basis, denies the allegations set forth in paragraph 22.

23. Larian is without sufficient knowledge to admit or deny the allegations set forth in paragraph 23, and on that basis, denies the allegations set forth in paragraph 23.

24. Larian is without sufficient knowledge to admit or deny the allegations set forth in paragraph 24, and on that basis, denies the allegations set forth in paragraph 24.

25. Larian is without sufficient knowledge to admit or deny the allegations set forth in paragraph 25, and on that basis, denies the allegations set forth in paragraph 25.

26. Larian denies the allegations set forth in paragraph 26.

27. Larian denies the allegations set forth in paragraph 27.

28. Larian denies the allegations set forth in paragraph 28.

29. Larian denies the allegations set forth in paragraph 29.

30. Larian admits that after MGA made the decision to proceed with the manufacture of the Bratz dolls, MGA employees communicated with employees of MGA Entertainment (HK) Limited on subjects including the manufacturing of Bratz, and denies the remaining allegations set forth in the first sentence of paragraph 30. Larian admits the second sentence of paragraph 30.

31. Larian admits that samples of the four original Bratz dolls were shown at the Hong Kong Toy Fair in January 2001, and denies the remaining allegations set forth in paragraph 31.

32. Larian admits that MGA and its subsidiaries have distributed and sold Bratz and Bratz-related products in many countries throughout the world, that MGA and its subsidiaries have licensed Bratz to third parties, that MGA has derived

**EXHIBIT 27**
**PAGE 976**

1 annual revenues from its sales and licenses of Bratz in excess of $500 million, that

2 MGA and its subsidiaries continue to market, sell and license Bratz and intend to

3 continue to do so, and denies the remaining allegations set forth in paragraph 32.

4            33.    Larian denies the allegations set forth in paragraph 33.

5            34.    Larian denies the allegations set forth in paragraph 34.

6            35.    Larian denies the allegations set forth in paragraph 35.

7            36.    Larian admits that Bryant had an agreement with MGA, states

8 that the terms of the agreement speak for themselves, and denies the remaining

9 allegations set forth in paragraph 36.

10            37.    Larian admits that in or about late 2003 or early 2004, MGA

11 decided to form a new corporation, MGAE de Mexico, S.R.L. de C.V., to conduct

12 business in Mexico, admits that MGAE de Mexico hired three employees of Mattel's

13 Mexican subsidiary, and denies the remaining allegations set forth in paragraph 37.

14            38.    Larian admits that Carlos Gustavo Machado Gomez was a

15 Marketing Manager, Boys Division, for Mattel Mexico, admits that Machado was

16 employed at Mattel Mexico from April 1997 until April 19, 2004, admits that

17 Machado had access to some nonpublic business information of Mattel Mexico, and

18 states that he is without sufficient knowledge to admit or deny the remaining

19 allegations set forth in paragraph 38, and on that basis, denies the remaining

20 allegations set forth in paragraph 38.

21            39.    Larian admits that Mariana Trueba Almada was a Marketing

22 Manager, Girls Division, for Mattel Mexico, admits that Trueba had access to some

23 nonpublic business information of Mattel Mexico, and states that he is without

24 sufficient knowledge to admit or deny the remaining allegations set forth in

25 paragraph 39, and on that basis, denies the remaining allegations set forth in

26 paragraph 39.

27

28

EXHIBIT

EXHIBIT 27
PAGE 977

PAGE

4

ISAAC LARIAN'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S SECOND AMENDED ANSWER AND COUNTERCLAIMS

1    40.    Larian admits that Pablo Vargas San Jose was a Trade Marketing
2  Manager for Mattel Mexico, admits that Vargas was employed at Mattel Mexico
3  from March 2001 until April 19, 2004, admits that Vargas had access to some
4  nonpublic business information of Mattel Mexico, and states that he is without
5  sufficient knowledge to admit or deny the remaining allegations set forth in
6  paragraph 40, and on that basis, denies the remaining allegations set forth in
7  paragraph 40.

8    41.    Larian admits that in or about early 2004, Machado, Trueba and
9  Vargas discussed leaving Mattel Mexico, admits that Machado, Trueba and Vargas
10 resigned from Mattel Mexico on April 19, 2004, admits that they did not identify
11 their new employer to Mattel Mexico, admits that Machado, Trueba and Vargas were
12 offered and accepted employment with MGAE de Mexico, and denies the remaining
13 allegations set forth in paragraph 41.

14    42.    Larian admits that MGA personnel communicated by telephone
15 with Machado and Vargas prior to their Mattel resignations, admits that MGA
16 personnel, including Larian, communicated by e-mail with Machado and Vargas
17 concerning terms of employment through an America Online e-mail account with the
18 address <plot04@aol.com>, and denies the remaining allegations set forth in
19 paragraph 42.

20    43.    Larian admits that in or about March 2004, Machado, Trueba, and
21 Vargas made plans to travel from Mexico to Los Angeles in April 2004, admits that
22 in or about March 2004, Machado, Trueba and Vargas discussed with MGA
23 personnel, including Larian, employment at MGAE de Mexico, states that the quoted
24 <plot04@aol.com> e-mails speak for themselves, and denies the remaining
25 allegations set forth in paragraph 43.

26

27

**EXHIBIT 27**
**PAGE 978**

28

5

1    44.   Larian is without sufficient knowledge to admit or deny the
2 allegations set forth in paragraph 44, and on that basis, denies the allegations set
3 forth in paragraph 44.

4    45.   Larian is without sufficient knowledge to admit or deny the
5 allegations set forth in paragraph 45, and on that basis, denies the allegations set
6 forth in paragraph 45.

7    46.   Larian is without sufficient knowledge to admit or deny the
8 allegations set forth in paragraph 46, and on that basis, denies the allegations set
9 forth in paragraph 46.

10    47.   Larian is without sufficient knowledge to admit or deny the
11 allegation set forth in the third sentence of paragraph 47, and on that basis, denies
12 these allegations, and denies the remaining allegations set forth in paragraph 47.

13    48.   Larian denies the allegations set forth in paragraph 48.

14    49.   Larian denies the allegations set forth in paragraph 49.

15    50.   Larian is without sufficient knowledge to admit or deny the
16 allegation that MGA publicized a claim that, in 2005, it had increased its Mexican
17 market share by 90% over the prior year, and on that basis, denies this allegation,
18 and denies the remaining allegations set forth in paragraph 50.

19    51.   Larian denies the allegations set forth in paragraph 51.

20    52.   Larian denies the allegations set forth in paragraph 52.

21    53.   Larian admits that on October 27, 2005, Mexican authorities
22 searched MGAE de Mexico and seized certain documents, and states that he is
23 without sufficient knowledge to admit or deny the remaining allegations set forth in
24 paragraph 53, and on that basis, denies the remaining allegations set forth in
25 paragraph 53.

26    54.   Larian admits that Machado was transferred from MGAE de
27 Mexico to MGA's office in Van Nuys, California, admits that Machado resides in

28

6

EXHIBIT 27
PAGE 979

1  the County of Los Angeles, and denies the remaining allegations set forth in
2  paragraph 54.

3          55.    Larian admits the allegations set forth in the first sentence of
4  paragraph 55. Larian admits that Tyco Toys hired Brawer on April 22, 1996, and
5  states that he is without sufficient knowledge to admit or deny the remaining
6  allegations set forth in the second sentence of paragraph 55, and on that basis, denies
7  the remaining allegations set forth in the second sentence of paragraph 55. Larian
8  admits the allegations set forth in third sentence of paragraph 55. Larian admits that
9  on April 9, 1997, Brawer became a Marketing Director for Mattel in Mount Laurel,
10 New Jersey, and states that the remaining allegations in the fourth sentence of
11 paragraph 55 are a statement of Mattel's legal position, to which no response is
12 necessary. To the extent a response is required, Larian denies the remaining
13 allegations set forth in paragraph 55.

14         56.    Larian is without sufficient knowledge to admit or deny the
15 allegations set forth in paragraph 56, and on that basis, denies the allegations set
16 forth in paragraph 56. The last sentence of paragraph 56 is a statement of Mattel's
17 legal position, to which no response is necessary. To the extent a response is
18 required, Larian denies the remaining allegations set forth in paragraph 56.

19         57.    Larian admits that by 2003, Brawer had advanced within Mattel
20 to a Senior Vice President position over customer marketing, and states that the
21 remaining allegations in the first sentence of paragraph 57 are a statement of Mattel's
22 legal position, to which no response is necessary. To the extent a response is
23 required, Larian denies the remaining allegations set forth in the first sentence of
24 paragraph 57. Larian admits that in his executive position, Brawer was provided
25 access to certain nonpublic Mattel information.

26         58.    Larian admits the allegations set forth in the first sentence of
27 paragraph 58. Larian denies the allegations set forth in the second sentence of
28

**EXHIBIT 27**
**PAGE 980**

ISAAC LARIAN'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S SECOND AMENDED
ANSWER AND COUNTERCLAIMS

1 | paragraph 58. Larian is without sufficient knowledge to admit or deny the remaining
2 | allegations set forth in paragraph 58, and on that basis, denies the remaining
3 | allegations set forth in paragraph 58.

4 |       59.   Larian is without sufficient knowledge to admit or deny the
5 | allegations set forth in paragraph 59, and on that basis, denies the allegations set
6 | forth in paragraph 59.

7 |       60.   Larian admits that in April 2004, Mattel made Brawer a Senior
8 | Vice President/General Manager, and states that he is without sufficient knowledge
9 | to admit or deny the remaining allegations set forth in paragraph 60, and on that
10 | basis, denies the remaining allegations set forth in paragraph 60.

11 |       61.   Larian admits that in May 2004, Brawer began performing
12 | General Manager duties, working with one of Mattel's major retail customer
13 | accounts, and states that he is without sufficient knowledge to admit or deny the
14 | remaining allegations set forth in paragraph 61, and on that basis, denies the
15 | remaining allegations set forth in paragraph 61.

16 |       62.   Larian admits the allegations set forth in the first sentence of
17 | paragraph 62. Larian admits that as Brawer left, he carried a large cardboard box,
18 | and denies the remaining allegations set forth in the second sentence of paragraph
19 | 62. Larian states that he is without sufficient knowledge to admit or deny the
20 | remaining allegations set forth in paragraph 62, and on that basis, denies the
21 | remaining allegations set forth in paragraph 62.

22 |       63.   Larian admits the allegations set forth in paragraph 63.

23 |       64.   Larian admits that on September 20, 2004, Mattel hand-delivered
24 | a letter to Brawer, states that the contents of the letter speak for themselves, and
25 | denies the remaining allegations set forth in paragraph 64.

26 |       65.   Larian admits that at his exit interview on September 29, 2004,
27 | Brawer was given a copy of an agreement with Tyco that he had signed on April 22,

28 |

8

EXHIBIT 27
PAGE 981

1 | 1996, and a copy of Mattel's Code of Conduct, admits that Brawer stated that he had

2 | not signed the Code of Conduct, and denies the remaining allegations set forth in

3 | paragraph 65.

4 |      66.    Larian admits that on October 1, 2004, Brawer's last day of

5 | employment with Mattel, Mattel delivered a letter to Brawer, states that the contents

6 | of the letter speak for themselves, and denies the remaining allegations set forth in

7 | paragraph 66.

8 |      67.    Larian admits that Brawer became its Executive Vice President of

9 | Sales and Marketing, admits that Brawer was responsible for sales worldwide,

10 | admits that Brawer had and continues to have responsibility for MGA's accounts

11 | with some of the same retailers that Brawer worked with while at Mattel, and denies

12 | the remaining allegations set forth in paragraph 67.

13 |      68.    Larian admits that Brawer stated during his exit interview that he

14 | had returned all confidential proprietary information to Mattel, states that he did not

15 | provide copies of information from his personal contacts file, and denies the

16 | remaining allegations set forth in paragraph 68.

17 |      69.    Larian admits that since leaving Mattel, Brawer has had contacts

18 | with certain Mattel employees, both by telephone and electronic mail, and denies the

19 | remaining allegations set forth in paragraph 69.

20 |      70.    Larian denies the allegations set forth in paragraph 70.

21 |      71.    Larian is without sufficient knowledge to admit or deny the

22 | allegations set forth in paragraph 71, and on that basis, denies the allegations set

23 | forth in paragraph 71.

24 |      72.    Larian is without sufficient knowledge to admit or deny the

25 | allegations set forth in paragraph 72, and on that basis, denies the allegations set

26 | forth in paragraph 72.

27

28

**EXHIBIT 27**
**PAGE 982**

9

73.     Larian admits that on September 26, 2005, Brisbois resigned from Mattel Canada, states that she took a position as Vice President of National Accounts at MGAE Canada, and denies the remaining allegations set forth in the first sentence of paragraph 73. Larian is without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 73, and on that basis, denies the remaining allegations set forth in paragraph 73.

74.     Larian admits that Brisbois spoke with him by telephone on or about the evening of September 22, 2005, denies that Brisbois copied approximately 45 Mattel documents onto a USB or thumb drive on that same date, denies that Brisbois concealed the thumb drive the last time she left Mattel Canada's office, and states that he is without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 74, and on that basis, denies the remaining allegations set forth in paragraph 74.

75.     Larian is without sufficient knowledge to admit or deny the allegations set forth in paragraph 75, and on that basis, denies the allegations set forth in paragraph 75.

76.     Larian admits that Brisbois traveled several times to MGA's offices in Van Nuys, California and met with Larian and Brawer, that MGA issued a press release, states that the press release speaks for itself, and states that they are without sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 76 and, on that basis, deny the remaining allegations set forth in paragraph 76.

77.     Larian admits that MGA has hired at least 25 employees directly from Mattel's United States operations in the past few years, and denies the remaining allegations set forth in paragraph 77.

EXHIBIT 27
PAGE 983

78.     Larian denies the allegations set forth in the first sentence of paragraph 78. Larian admits that he has sent email messages to a "Bratz News"

10

1  distribution list, admits that the recipients of e-mail messages sent to the "Bratz
2  News" distribution list includes members of the media as well as representatives of
3  customers of both MGA and Mattel, and denies the remaining allegations set forth in
4  paragraph 78.

5      79.    Larian admits that on May 12, 2006, he sent an email message to
6  the "Bratz News" distribution list that included a reference to the new My Scene
7  product with real gems, and states that he is without sufficient knowledge to admit or
8  deny the remaining allegations set forth in paragraph 79, and on that basis, denies the
9  remaining allegations set forth in paragraph 79.

10     80.    Larian admits that Larian told one retailer that such retailer was
11 the only retailer with plans to purchase MY SCENE BLING BLING with real gems,
12 at a time when Larian had a good faith belief that such retailer was the only retailer
13 with plans to purchase MY SCENE BLING BLING with real gems, and denies the
14 remaining allegations set forth in paragraph 80.

15     81.    Larian denies the allegation set forth in paragraph 81.

16     82.    Larian repeats his responses contained in paragraphs 1 through 81
17 of this Answer and incorporates them by reference as though fully and completely
18 set forth herein.

19     83.    Larian denies the allegations set forth in paragraph 83.

20     84.    Larian denies the allegations set forth in paragraph 84.

21     85.    Larian denies the allegations set forth in paragraph 85.

22     86.    Larian denies the allegations set forth in paragraph 86.

23     87.    Larian denies the allegations set forth in paragraph 87.

24     88.    Larian repeats his responses contained in paragraphs 1 through 87
25 of this Answer and incorporates them by reference as though fully and completely
26 set forth herein.

27     89.    Larian denies the allegations set forth in paragraph 89.

28

EXHIBIT 27
PAGE 984

11

90.  Larian denies the allegations set forth in paragraph 90.

91.  Larian denies the allegations set forth in paragraph 91.

92.  Larian denies the allegations set forth in paragraph 92.

93.  Larian denies the allegations set forth in paragraph 93.

94.  Larian denies the allegations set forth in paragraph 94.

95.  Larian denies the allegations set forth in paragraph 95.

96.  Larian denies the allegations set forth in paragraph 96.

97.  Larian denies the allegations set forth in paragraph 97.

98.  Larian repeats his responses contained in paragraphs 1 through 97 of this Answer and incorporates them by reference as though fully and completely set forth herein.

99.  Larian denies the allegations set forth in paragraph 99.

100.  Larian denies the allegations set forth in paragraph 100.

101.  Larian denies the allegations set forth in paragraph 101.

102.  Larian denies the allegations set forth in paragraph 102.

103.  Larian denies the allegations set forth in paragraph 103.

104.  Larian denies the allegations set forth in paragraph 104.

105.  Larian denies the allegations set forth in paragraph 105.

106.  Larian repeats his responses contained in paragraphs 1 through 105 of this Answer and incorporates them by reference as though fully and completely set forth herein.

107.  Larian denies the allegations set forth in paragraph 107.

108.  Larian denies the allegations set forth in paragraph 108.

109.  Larian denies the allegations set forth in paragraph 109.

110.  Larian denies the allegations set forth in paragraph 110.

111.  Larian denies the allegations set forth in paragraph 111.

112.  Larian denies the allegations set forth in paragraph 112.

113. Larian denies the allegations set forth in paragraph 113.

114. Larian denies the allegations set forth in paragraph 114.

115. Larian denies the allegations set forth in paragraph 115.

116. Larian repeats his responses contained in paragraphs 1 through 115 of this Answer and incorporates them by reference as though fully and completely set forth herein.

117. Larian denies the remaining allegations set forth in paragraph 117.

118. Larian denies the allegations set forth in paragraph 118.

119. Larian denies the allegations set forth in paragraph 119.

120. Larian denies the allegations set forth in paragraph 120.

121. Larian denies the allegations set forth in paragraph 121.

122. Larian repeats his responses contained in paragraphs 1 through 121 of this Answer and incorporates them by reference as though fully and completely set forth herein.

123. Larian denies the allegations set forth in paragraph 123.

124. Larian denies the allegations set forth in paragraph 124.

125. Larian denies the allegations set forth in paragraph 125.

126. Larian denies the allegations set forth in paragraph 126.

127. Larian denies the allegations set forth in paragraph 127.

128. Larian denies the allegations set forth in paragraph 128.

129. Larian repeats his responses contained in paragraphs 1 through 128 of this Answer and incorporates them by reference as though fully and completely set forth herein.

130. The first and fifth sentences of paragraph 130 are statements of Mattel's legal position, to which no response is necessary. To the extent a response is required, Larian denies the allegations set forth in the first and fifth sentences of

13

1  paragraph 130.  Larian is without sufficient knowledge to admit or deny the
2  remaining allegations set forth in paragraph 130, and on that basis, denies the
3  remaining allegations set forth in  paragraph 130.

4       131.  Larian denies the allegations set forth in paragraph 131.
5       132.  Larian denies the allegations set forth in paragraph 132.
6       133.  Larian denies the allegations set forth in paragraph 133.
7       134.  Larian denies the allegations set forth in paragraph 134.
8       135.  Larian denies the allegations set forth in paragraph 135.
9       136.  Larian repeats his responses contained in paragraphs 1 through
10  135 of this Answer and incorporates them by reference as though fully and
11  completely set forth herein.
12       137.  Larian denies the allegations set forth in paragraph 137.
13       138.  Larian denies the allegations set forth in paragraph 138.
14       139.  Larian denies the allegations set forth in paragraph 139.
15       140.  Larian denies the allegations set forth in paragraph 140.
16       141.  Larian denies the allegations set forth in paragraph 141.
17       142.  Larian repeats his responses contained in paragraphs 1 through
18  141 of this Answer and incorporates them by reference as though fully and
19  completely set forth herein.
20       143.  Paragraph 143 is a statement of Mattel's legal position, to which
21  no response is necessary.  To the extent a response is required, Larian denies the
22  allegations set forth in the paragraph 143.
23       144.  Larian denies the allegations set forth in paragraph 144.
24       145.  Larian denies the allegations set forth in paragraph 145.
25       146.  Larian denies the allegations set forth in paragraph 146.
26       147.  Larian denies the allegations set forth in paragraph 147.
27       148.  Larian denies the allegations set forth in paragraph 148.
28

ISAAC LARIAN'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S SECOND AMENDED ANSWER AND COUNTERCLAIMS

**EXHIBIT 27**
**PAGE 987**

149. Larian repeats his responses contained in paragraphs 1 through 148 of this Answer and incorporates them by reference as though fully and completely set forth herein.

150. Larian denies the allegations set forth in paragraph 150.

151. Larian denies the allegations set forth in paragraph 151.

152. Larian denies the allegations set forth in paragraph 152.

153. Larian denies the allegations set forth in paragraph 153.

154. Larian denies the allegations set forth in paragraph 154.

155. Larian repeats his responses contained in paragraphs 1 through 154 of this Answer and incorporates them by reference as though fully and completely set forth herein.

156. Larian denies the allegations set forth in paragraph 156.

157. Larian denies the allegations set forth in paragraph 157.

158. Larian denies the allegations set forth in paragraph 158.

159. Larian denies the allegations set forth in paragraph 159.

160. Larian denies the allegations set forth in paragraph 160.

161. Larian denies the allegations set forth in paragraph 161.

162. Larian denies the allegations set forth in paragraph 162.

163. Larian repeats his responses contained in paragraphs 1 through 162 of this Answer and incorporates them by reference as though fully and completely set forth herein.

164. Larian denies the allegations set forth in paragraph 164.

165. Larian denies the allegations set forth in paragraph 165.

166. Larian denies the allegations set forth in paragraph 166.

167. Larian repeats his responses contained in paragraphs 1 through 166 f this Answer and incorporates them by reference as though fully and completely set forth herein.

**EXHIBIT 27**
**PAGE 988**

15

ISAAC LARIAN'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S SECOND AMENDED ANSWER AND COUNTERCLAIMS

1    168.   Larian denies the allegations set forth in paragraph 168.

2    169.   Paragraph 169 is a statement of Mattel's legal position, to which

3   no response is necessary.  To the extent a response is required, Larian denies the

4   allegations set forth in the paragraph 169.

5    170.   Paragraph 170 is a statement of Mattel's legal position, to which

6   no response is necessary.  To the extent a response is required, Larian denies the

7   allegations set forth in the paragraph 170.

8                          **AFFIRMATIVE DEFENSES**

9        Without admitting any wrongful conduct on the part of Larian or any Counter-

10  Defendant, and without admitting that Mattel suffered any loss, damage, or injury,

11  Larian alleges the following affirmative defenses to the Counterclaims.  By

12  designating the following as affirmative defenses, Larian does not in any way waive

13  or limit any defenses which are or may be raised by his denials, allegations, and

14  averments set forth herein.  Larian also does not, by alleging any affirmative defense,

15  admit that Mattel does not have the burden of proof for any or all facts underlying

16  any of those defenses.  These defenses are pled in the alternative, and are raised to

17  preserve the rights of Larian to assert such defenses, and are without prejudice to his

18  ability to raise other and further defenses.

19                       **FIRST AFFIRMATIVE DEFENSE**

20                          (Failure to State a Claim)

21       Mattel's counterclaims fail to state a claim against Larian upon which relief

22  can be granted.

23                      **SECOND AFFIRMATIVE DEFENSE**

24                       (Unclean Hands/*in Pari Delicto*)

**EXHIBIT 27
PAGE 989**

25       Mattel's counterclaims are barred in whole or in part by Mattel's unclean

26  hands and wrongful acts.  This affirmative defense is based, in part, on Mattel's

27  efforts to undermine MGA's business and to "kill" Bratz at any cost which include,

28

16

1  but are not limited to, Mattel's efforts to infringe and dilute MGA's trade dress, copy

2  MGA's products, packaging, themes, and advertising (including for Mattel products

3  My Scene, Diva Starz, Wee 3 Friends, Acceleracers, Polly Pocket, and Little

4  Mommy products, to name a few), and engage in other acts of unfair competition

5  against MGA as alleged in MGA's complaint against Mattel; Mattel's efforts to

6  create negative publicity or press about MGA, MGA products, Bryant, Larian, or

7  MGA employees; Mattel's efforts to fund or commission market research or studies

8  that portray Bratz or MGA products negatively; Mattel's efforts to interfere with

9  MGA's acquisition of or investment in Zapf Creation AG; Mattel's efforts to include

10  negative references to MGA or Bratz on Mattel's "We Believe in Girls" website;

11  Mattel's efforts or intent to interfere with business dealings or contractual relations

12  between MGA and Smoby Group; Mattel's influencing Nickelodeon to reject MGA

13  advertisements or to limit time slots for advertisements; assisting parties in lawsuits

14  against MGA; Mattel's monitoring, "spying on" or gaining knowledge of MGA's

15  trade secrets, non-public information, non-public activities, unreleased products, and

16  product development; gaining access, or attempts to gain access, to MGA

17  showrooms, Plan-o-Grams, merchandising displays, Toy Fair displays on false

18  pretenses; Mattel's wrongfully obtaining MGA's costs and sales information through

19  Mattel-employed category managers at retailers; Mattel's inducing non-party

20  customers to breach confidentiality agreements with MGA and divulge non-public

21  information about MGA's unreleased products; Mattel's covertly investigating MGA,

22  its officers and employees, and their family members; Mattel's contacting persons

23  under false pretense in order to interrogate them about Bratz and this litigation;

24  Mattel's coercing its employees to accept restrictive covenants (right before a

25  massive layoff) and non-compete clauses and other efforts to prevent prospective

26  MGA employees from accepting offers of employment; Mattel's delay in suing

27  Carter Bryant because, *inter alia*, Mattel wanted Bryant to testify in an unrelated

28

**EXHIBIT 27**
**PAGE 990**

17

1 | Mattel case; Mattel's falsely inflating its Barbie sales figures in an effort to mislead
2 | the public and retailers; and Mattel's taking all measures to conceal its bad acts,
3 | including the willful non-retention and destruction of documents.  Additionally,
4 | Mattel believed from the time that Carter Bryant left Mattel's employ that he was
5 | going to perform work for a Mattel competitor.  Mattel began investigating Bryant
6 | and MGA, including Bryant's role in the creation and development of Bratz, at least
7 | as early as March 2002.  Nonetheless, Mattel waited years to bring suit, all the while
8 | allowing MGA to spend years developing its business and invest tens of millions of
9 | dollars developing the Bratz products and building the Bratz brand.  These averments
10 | are made on information and belief except where Larian has knowledge thereof.

### THIRD AFFIRMATIVE DEFENSE

#### (Laches)

13 |     Mattel's counterclaims are barred by the equitable doctrine of laches because,
14 | among other things, Mattel believed from the time that Carter Bryant left Mattel's
15 | employ that he was going to perform work for a Mattel competitor.  Mattel began
16 | investigating Bryant and MGA, including Bryant's role in the creation and
17 | development of Bratz, at least as early as March 2002 and thereafter continued its
18 | investigation into Bryant's role in the creation and development of Bratz, as well as
19 | his work with MGA, in August 2002 after Mattel's CEO, Robert Eckert, received an
20 | "anonymous letter" that claimed that Bryant stole the idea for Bratz from Mattel and
21 | sold it to MGA.  Nonetheless, Mattel waited years to bring suit, all the while
22 | allowing MGA to spend years developing its business and invest tens of millions of
23 | dollars developing the Bratz products and building the Bratz brand.

**EXHIBIT 27**
**PAGE 991**

18

ISAAC LARIAN'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S SECOND AMENDED
ANSWER AND COUNTERCLAIMS

## FOURTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

Mattel's counterclaims are barred by the applicable statutes of limitations, including but not limited to, 18 U.S.C. § 1961 *et seq.*, 17 U.S.C. § 507(b), and Code of Civil Procedure §§ 337, 339, 343 and 338(c).

## FIFTH AFFIRMATIVE DEFENSE

### (*Bona Fide* Purchaser for Value)

Mattel cannot maintain its counterclaims against Larian because MGA paid valuable consideration for Bryant's assignment of his rights in the original Bratz drawings to MGA, and Larian acted with a good faith belief that Bryant owned the rights to his original Bratz drawings and that his assignment of such rights to MGA was valid and permissible.

## SIXTH AFFIRMATIVE DEFENSE

### (17 U.S.C. § 205(d))

Mattel cannot maintain its counterclaims against Larian because, among other things, Larian acted with a good faith belief that Bryant owned the rights to his original Bratz drawings and that his assignment of such rights to MGA was valid and permissible.

## SEVENTH AFFIRMATIVE DEFENSE

### (Information Readily Ascertainable)

Larian cannot be liable, either on his own account or by association with other defendants, for misappropriation of information that was readily ascertainable by proper means at the time of the alleged acquisition or use.  Such information includes, but is not limited to, the identity of suppliers, manufacturers, distributors and retailers; contact information for the same; and sales, marketing and media data.

EXHIBIT

PAGE

**EXHIBIT 27**
**PAGE 992**

19

ISAAC LARIAN'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S SECOND AMENDED ANSWER AND COUNTERCLAIMS

## EIGHTH AFFIRMATIVE DEFENSE

### (Acts or Omissions of Others)

Mattel's damages, if any, were not caused by Larian and are not attributable to any acts or omissions of Larian.

## NINTH AFFIRMATIVE DEFENSE

### (Estoppel)

Mattel's counterclaims are barred in whole or in part by the equitable doctrine of estoppel because, among other things, Mattel believed from the time that Carter Bryant left Mattel's employ that he was going to perform work for a Mattel competitor. Mattel began investigating Bryant and MGA, including Bryant's role in the creation and development of Bratz, at least as early as March 2002. Nonetheless, Mattel waited years to bring suit, all the while allowing MGA to spend years developing its business and invest tens of millions of dollars developing the Bratz products and building the Bratz brand.

## TENTH AFFIRMATIVE DEFENSE

### (Acquiescence)

Mattel's counterclaims are barred in whole or in part by acquiescence because, among other things, Mattel believed from the time that Carter Bryant left Mattel's employ that he was going to perform work for a Mattel competitor. Mattel began investigating Bryant and MGA, including Bryant's role in the creation and development of Bratz, at least as early as March 2002. Nonetheless, Mattel waited years to bring suit, all the while allowing MGA to spend years developing its business and invest tens of millions of dollars developing the Bratz products and building the Bratz brand. Additionally, Mattel tolerated and condoned conduct by other employees similar to the alleged conduct by Bryant and others on which Mattel bases its claims.

EXHIBIT 27
PAGE 993

20

## ELEVENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

Larian denies that Mattel suffered any damages, but even if it did, Mattel failed to take reasonable steps to mitigate those purported damages.

## TWELFTH AFFIRMATIVE DEFENSE

### (No Statutory Damages or Attorneys' Fees)

Mattel is barred from recovering statutory damages and/or attorneys' fees because it failed to register the copyrights that are purportedly at issue within the time required by 17 U.S.C. § 412.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Waiver)

Mattel's counterclaims are barred in whole or in part by waiver because, among other things, Mattel believed from the time that Carter Bryant left Mattel's employ that he was going to perform work for a Mattel competitor. Mattel began investigating Bryant and MGA, including Bryant's role in the creation and development of Bratz, at least as early as March 2002. Nonetheless, Mattel waited years to bring suit, all the while allowing MGA to spend years developing its business and invest tens of millions of dollars developing the Bratz products and building the Bratz brand.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Abandonment)

Mattel has abandoned any interest it may have had in the alleged copyrighted works.

**EXHIBIT 27**
**PAGE 994**

21

## FIFTEENTH AFFIRMATIVE DEFENSE

### (*De Minimus* Use)

Larian denies that Mattel owns any copyright interest in the alleged works, but even if Mattel could craft a claim that the Bratz dolls incorporate an aspect of a Mattel copyrighted work, such use would be *de minimus* and non-infringing.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Joint Authorship)

Larian denies that Mattel owns any copyright interest in the alleged works, but even if it did, any liability would be eliminated or greatly diminished by the doctrine of joint authorship.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Competition Privilege/Justification)

Mattel's counterclaims are barred in whole or in part on the grounds that the acts of the Larian were lawful competition or justified.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Good Faith)

Mattel's counterclaims are barred in whole or in part because Larian acted in good faith.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Lack of Authority)

Mattel's counterclaims are barred in whole or in part on the grounds that to the extent any person committed an unlawful or tortious act, the person lacked authority to commit such act on behalf of the Larian.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Lack of Standing)

Mattel's counterclaims are barred in whole or in part by its lack of standing.

**EXHIBIT 27**
**PAGE 995**

22

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

(Joinder in Defenses of Co-Defendants)

Larian hereby adopts and incorporates by reference any and all other affirmative defenses that have been or will be asserted by any other defendant (including Bryant) in this litigation to the extent that defendants may share in such affirmative defenses.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

(Undiscovered Defenses)

Larian has insufficient knowledge or information upon which to form a belief as to whether additional defenses are available. Larian reserves the right to assert any further or additional defenses upon receiving more complete information regarding the matters alleged in the Counterclaims, through discovery or otherwise.

WHEREFORE, Larian prays for relief as follows:

a.   that the Counterclaims be dismissed with prejudice;

b.   that judgment be entered in favor of Larian and against counterclaimant;

c.   that Larian recover his costs and attorneys' fees; and

d.   that the Court award such other and further relief as is just and proper.

DATED: November 8, 2007

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: _____
Thomas J. Nolan
Attorneys for Counter-Defendants, MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

**EXHIBIT 27**
**PAGE 996**

23

ISAAC LARIAN'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S SECOND AMENDED ANSWER AND COUNTERCLAIMS

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 300 South Grand Avenue, 34th Floor, Los Angeles, CA 90071.

On **November 8, 2007,** I served the foregoing documents described as:

**ISAAC LARIAN'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO MATTEL, INC.'S SECOND AMENDED ANSWER AND COUNTERCLAIMS**

on the interested parties in this action addressed as follows:

### SEE ATTACHED SERVICE LIST

☒ **(BY MAIL)** I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service and the fact that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at Los Angeles, California and placed for collection and mailing following ordinary business practices.

☒ **(VIA FACSIMILE)** By transmitting the document listed above to the fax numbers on the attached service list.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Executed on November 8, 2007 at Los Angeles, California.

Nandi Berglund
PRINT NAME

SIGNATURE

EXHIBIT 27
PAGE 997

1

John B. Quinn, Esq.
Michael T. Zeller, Esq.
Jon D. Corey, Esq.
Timothy L. Alger, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000
(213) 443-3100 (Fax)

*Attorneys for Mattel, Inc.*

OVERLAND BORENSTEIN
SCHEPER & KIM
MARK E. OVERLAND
ALEXANDER H. COTE
DAVID C. SCHEPER
300 South Grand Avenue, Suite 2750
Los Angeles, CA  90071
(213) 613-4655
(213) 613-4656 (Fax)
*Attorneys for Carlos Gustavo Machado
Gomez*

John W. Keker, Esq.
Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
(415)391-5400
(415) 397-7188 (Fax)

*Attorneys for Carter Bryant*

2

**EXHIBIT 27**
**PAGE 998**

**EXHIBIT 28**

CALENDARED

RECEIVED

OCT 1 7 2007

1 | KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
2 | jkeker@kvn.com
MICHAEL H. PAGE - #154913
3 | mpage@kvn.com
CHRISTA M. ANDERSON - #184325
4 | canderson@kvn.com
710 Sansome Street
5 | San Francisco, CA 94111-1704
Telephone: (415) 391-5400
6 | Facsimile: (415) 397-7188

7 | Attorneys for Plaintiff
CARTER BRYANT

8

9

10 UNITED STATES DISTRICT COURT

11 CENTRAL DISTRICT OF CALIFORNIA

12 EASTERN DIVISION

13

| | |
|---|---|
| 14 CARTER BRYANT, an individual,<br><br>15             Plaintiff,<br><br>16    v.<br><br>17 MATTEL, INC. a Delaware<br>Corporation,<br><br>18            Defendant.<br><br>19<br>CONSOLIDATED WITH MATTEL,<br>20 INC. v. BRYANT and MGA<br>ENTERTAINMENT, INC. v.<br>21 MATTEL, INC.<br>22<br>23 | Case No. CV 04-09049 SGL (RNBx)<br>(consolidated with CV 04-9059 & 05-2727<br><br>**CARTER BRYANT'S SECOND<br>AMENDED REPLY TO MATTEL'S<br>COUNTERCLAIMS**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Dept:    Courtroom 1<br>Judge:  Hon. Stephen G. Larson<br><br>Discovery Cut-Off: Jan. 14, 2008<br>Pre-Trial Conference: April 7, 2008<br>Trial Date: April 29, 2008 |

24      Counter-defendant Carter Bryant ("Bryant") replies to Mattel's counter-

25 claims, set forth in Mattel's Second Amended Answer and Counterclaims, as

26 follows:

**EXHIBIT 28**
**PAGE 999**

27      As a preliminary matter, Bryant notes that many of Mattel's allegations

28 implicitly include false premises or assumptions. Bryant's denial of any allegation

10-16

1

404479.01

EXHIBIT

1 | should be construed as a denial of both the allegation itself, and any of the

2 | allegation's underlying, unsupported assumptions.

3 |     Mattel's counterclaims also contain just the sort of argumentative rhetoric in

4 | place of factual allegations that Mattel claimed to protest in responding to MGA's

5 | claims against it.  Bryant denies all allegations not specifically admitted, including

6 | Mattel's argument and innuendo.  Where Bryant admits any portion of an

7 | allegation, Bryant admits only the specific facts admitted, and denies all of

8 | Mattel's accompanying characterizations, conclusions, and speculation contained

9 | in that allegation or in Mattel's counterclaims as a whole.

10 |     Bryant also submits that Mattel's use of headings throughout its

11 | counterclaims is improper, and that therefore no response to Mattel's headings is

12 | required.  If any response is required, Bryant denies all allegations contained in

13 | Mattel's headings.

14 |     Finally, Bryant notes that many of the allegations in Mattel's counterclaims

15 | allege nothing relating Bryant.  Although Bryant recognizes that he is nonetheless

16 | required to answer them, Bryant lacks any knowledge or information concerning

17 | these allegations.  In denying these allegations based on his lack of knowledge and

18 | information regarding alleged events not involving him, as with all his other

19 | denials, Bryant also denies Mattel's negative characterizations and innuendo about

20 | all of the alleged events, including any events or facts that may in fact have

21 | occurred (such as, for example, MGA's hiring of certain individuals previously

22 | employed by Mattel).

23 | **Responses**

24 | 1.    Bryant denies the allegations of this paragraph.

25 | 2.    Bryant admits that he conceived, created and developed Bratz designs,

26 | that he entered into an agreement with MGA regarding Bratz, and that Mattel has

27 | improperly sought to register copyrights for certain Bratz designs.  Bryant denies

28 | all remaining allegations of this paragraph.

**EXHIBIT 28**
**PAGE 1000**

2

CARTER BRYANT'S SECOND AMENDED REPLY TO MATTEL'S COUNTERCLAIMS
CASE NO. CV 04-09049 SGL (RNBx)

1    3.    Bryant denies that MGA engaged in illegal conduct in entering the

2    agreement with Bryant.  Bryant lacks knowledge or information sufficient to form

3    a belief as to the truth of the remaining allegations of this paragraph, and on that

4    basis denies them.

5    4.    Bryant lacks knowledge or information sufficient to form a belief as

6    to the truth of the allegations of this paragraph, and on that basis denies them.

7    5.    Bryant denies the allegations of this paragraph.

8    6.    Bryant admits that Mattel purports to seek relief under 17 U.S.C. § §

9    101 *et seq.*, and 18 U.S.C. § 1964(c), with supplemental jurisdiction under 28

10   U.S.C. § 1367 for its purported state law claims.  Bryant admits that the Court has

11   jurisdiction to hear claims against Bryant, based on those allegations, but denies

12   that Mattel is entitled to any relief or recovery whatsoever on its alleged claims.

13   Bryant lacks knowledge or information sufficient to form a belief as to the truth of

14   the allegations of this paragraph regarding other defendants, and on that basis

15   denies them.

16   7.    Bryant admits that venue is proper in this District as to claims against

17   Bryant, but denies that Mattel is entitled to any relief or recovery whatsoever on its

18   alleged claims.  Bryant lacks knowledge or information sufficient to form a belief

19   as to the truth of the allegations of this paragraph regarding other defendants, and

20   on that basis denies them.

**EXHIBIT 28**
**PAGE 1001**

21   8.    Bryant admits the allegation of this paragraph.

22   9.    Bryant admits the allegations of the first and second sentences of this

23   paragraph.  Bryant denies the remaining allegations of this paragraph.

24   10.    Bryant admits the allegations of this paragraph.

25   11.    Bryant lacks knowledge or information sufficient to form a belief as

26   to the truth of the allegations of this paragraph, and on that basis denies them.

27   12.    Bryant lacks knowledge or information sufficient to form a belief as

28   to the truth of the allegations of this paragraph, and on that basis denies them.

3

1    13.    Bryant admits that Isaac Larian is the President and CEO of MGA and

2    an individual residing in the County of Los Angeles.  Bryant denies the remaining

3    allegations of this paragraph.

4    14.    Bryant lacks knowledge or information sufficient to form a belief as

5    to the truth of the allegations of this paragraph, and on that basis denies them.

6    15.    Bryant denies the allegations of this paragraph.

7    16.    Bryant admits that Mattel manufactures and markets toys, games,

8    dolls and other consumer products.  Bryant lacks knowledge or information

9    sufficient to form a belief as to the truth of the allegations of the second, third, and

10   fourth sentences of this paragraph, and on that basis denies them.  Bryant admits

11   that Mattel is a well-known company, and denies all remaining allegations of this

12   paragraph.

13   17.    Bryant admits that Mattel maintains a large design center in El

14   Segundo, California at which many designers, sculptors, painters and other artists

15   work to create Mattel products.  Bryant lacks knowledge or information sufficient

16   to form a belief as to the truth of all remaining allegations of this paragraph, and on

17   that basis denies them.

18   18.    Bryant lacks knowledge or information sufficient to form a belief as

19   to the truth of the allegations of this paragraph, and on that basis denies them.

20   19.    Bryant admits that MGA is a toy manufacturer that launched a fashion

21   doll line.  Bryant lacks knowledge or information sufficient to form a belief as to

22   the truth of the allegations of the second sentence of this paragraph, and on that

23   basis denies them.  Bryant denies that MGA stole a fashion doll that was owned by

24   Mattel, and denies all remaining allegations of this paragraph.

**EXHIBIT 28**
**PAGE 1002**

25   20.    Bryant denies all allegations of this paragraph.

26   21.    Bryant admits that he is a former Mattel employee, that he began

27   working for Mattel in September 1995 and worked in Mattel's Design Center as a

28   Barbie product designer, and that he stopped working with Mattel in or about April

1   1998.  Bryant denies that he moved to Missouri to live with his parents in or about

2   April 1998.  Bryant admits that late in 1998, he applied to Mattel to be rehired, and

3   that on or about January 4, 1999, he began working at Mattel in Mattel's Design

4   Center as a product designer.  Bryant denies any remaining allegations of this

5   paragraph.

6       22.     Bryant admits that, upon his return to Mattel in January 1999, he

7   signed the document attached to Mattel's Counterclaims as Exhibit A, which is

8   titled "Employee Confidential Information and Inventions Agreement."  Bryant

9   denies all remaining allegations of this paragraph, explicit or implicit, including

10  Mattel's allegations regarding the legal significance of this document.

11      23.     Bryant denies the allegations of this paragraph.

12      24.     Bryant admits that, upon his return to Mattel in January 1999, he

13  signed the document attached to Mattel's Counterclaims as Exhibit B, which is

14  titled "Conflict of Interest Questionnaire."  Bryant admits that he disclosed on this

15  document freelance work he had performed while in Missouri for Ashton-Drake,

16  which is unrelated to Mattel's allegations here.  Bryant denies all remaining

17  allegations of this paragraph, explicit or implicit, including Mattel's allegations

18  regarding the legal significance of this document.

19      25.     Bryant denies the allegations of this paragraph.

20      26.     Bryant denies the allegations of this paragraph, including all the

21  allegations of each of its sub-paragraphs.

22      27.     Bryant denies the allegations of this paragraph.

23      28.     Bryant denies the allegations of this paragraph.        **EXHIBIT 28**

24      29.     Bryant denies the allegations of this paragraph.        **PAGE 1003**

25      30.     Bryant lacks knowledge or information sufficient to form a belief as

26  to the truth of the allegations of this paragraph, and on that basis denies them.

27      31.     Bryant admits that samples of the four original Bratz dolls were

28  shown at the Hong Kong Toy Fair in January 2001.  Bryant denies the remaining

1 | allegations of this paragraph.

2 |     32.    Bryant admits that MGA distributes and sells Bratz and Bratz-related

3 | products in many countries throughout the world. Bryant lacks knowledge or

4 | information sufficient to form a belief as to the truth of the allegations of the

5 | second sentence of this paragraph, and on that basis denies them. Bryant admits

6 | the allegations of the third sentence of this paragraph. Bryant admits that MGA

7 | claims current ownership of Bratz, including the copyrights and copyright

8 | registrations attendant thereto. Bryant admits the allegations of the fifth sentence

9 | of this paragraph. Bryant denies all remaining allegations of this paragraph

10 |     33.    Bryant denies the allegations of this paragraph.

11 |     34.    Bryant denies the allegations of this paragraph.

12 |     35.    Bryant denies the allegations of this paragraph.

13 |     36.    Bryant admits that he had an agreement with MGA and the terms of

14 | that agreement speak for themselves. Bryant denies all remaining allegations of

15 | this paragraph.

16 |     37.    Bryant lacks knowledge or information sufficient to form a belief as

17 | to the truth of the allegations of this paragraph, and on that basis denies them.

18 |     38.    Bryant lacks knowledge or information sufficient to form a belief as

19 | to the truth of the allegations of this paragraph, and on that basis denies them.

20 |     39.    Bryant lacks knowledge or information sufficient to form a belief as

21 | to the truth of the allegations of this paragraph, and on that basis denies them.

22 |     40.    Bryant lacks knowledge or information sufficient to form a belief as

23 | to the truth of the allegations of this paragraph, and on that basis denies them.

24 |     41.    Bryant lacks knowledge or information sufficient to form a belief as

25 | to the truth of the allegations of this paragraph, and on that basis denies them.

26 |     42.    Bryant lacks knowledge or information sufficient to form a belief as

27 | to the truth of the allegations of this paragraph, and on that basis denies them.

28 |     43.    Bryant lacks knowledge or information sufficient to form a belief as

EXHIBIT 28
PAGE 1004

6

CARTER BRYANT'S SECOND AMENDED REPLY TO MATTEL'S COUNTERCLAIMS
CASE NO. CV 04-09049 SGL (RNBx)

1   to the truth of the allegations of this paragraph, and on that basis denies them.

2       44.    Bryant lacks knowledge or information sufficient to form a belief as

3   to the truth of the allegations of this paragraph, and on that basis denies them.

4       45.    Bryant lacks knowledge or information sufficient to form a belief as

5   to the truth of the allegations of this paragraph, and on that basis denies them.

6       46.    Bryant lacks knowledge or information sufficient to form a belief as

7   to the truth of the allegations of this paragraph, and on that basis denies them.

8       47.    Bryant lacks knowledge or information sufficient to form a belief as

9   to the truth of the allegations of this paragraph, and on that basis denies them.

10       48.    Bryant lacks knowledge or information sufficient to form a belief as

11   to the truth of the allegations of this paragraph, and on that basis denies them.

12       49.    Bryant lacks knowledge or information sufficient to form a belief as

13   to the truth of the allegations of this paragraph, and on that basis denies them.

14       50.    Bryant lacks knowledge or information sufficient to form a belief as

15   to the truth of the allegations of this paragraph, and on that basis denies them.

16       51.    Bryant lacks knowledge or information sufficient to form a belief as

17   to the truth of the allegations of this paragraph, and on that basis denies them.

18       52.    Bryant lacks knowledge or information sufficient to form a belief as

19   to the truth of the allegations of this paragraph, and on that basis denies them.

20       53.    Bryant lacks knowledge or information sufficient to form a belief as

21   to the truth of the allegations of this paragraph, and on that basis denies them.

22       54.    Bryant lacks knowledge or information sufficient to form a belief as

23   to the truth of the allegations of this paragraph, and on that basis denies them.

24       55.    Bryant lacks knowledge or information sufficient to form a belief as

25   to the truth of the allegations of this paragraph, and on that basis denies them.

26       56.    Bryant lacks knowledge or information sufficient to form a belief as

27   to the truth of the allegations of this paragraph, and on that basis denies them.

28       57.    Bryant lacks knowledge or information sufficient to form a belief as

**EXHIBIT 28**
**PAGE 1005**

7

1  to the truth of the allegations of this paragraph, and on that basis denies them.

2      58.   Bryant lacks knowledge or information sufficient to form a belief as

3  to the truth of the allegations of this paragraph, and on that basis denies them.

4      59.   Bryant lacks knowledge or information sufficient to form a belief as

5  to the truth of the allegations of this paragraph, and on that basis denies them.

6      60.   Bryant lacks knowledge or information sufficient to form a belief as

7  to the truth of the allegations of this paragraph, and on that basis denies them.

8      61.   Bryant lacks knowledge or information sufficient to form a belief as

9  to the truth of the allegations of this paragraph, and on that basis denies them.

10     62.   Bryant lacks knowledge or information sufficient to form a belief as

11  to the truth of the allegations of this paragraph, and on that basis denies them.

12     63.   Bryant lacks knowledge or information sufficient to form a belief as

13  to the truth of the allegations of this paragraph, and on that basis denies them.

14     64.   Bryant lacks knowledge or information sufficient to form a belief as

15  to the truth of the allegations of this paragraph, and on that basis denies them.

16     65.   Bryant lacks knowledge or information sufficient to form a belief as

17  to the truth of the allegations of this paragraph, and on that basis denies them.

18     66.   Bryant lacks knowledge or information sufficient to form a belief as

19  to the truth of the allegations of this paragraph, and on that basis denies them.

20     67.   Bryant lacks knowledge or information sufficient to form a belief as

21  to the truth of the allegations of this paragraph, and on that basis denies them.

22     68.   Bryant lacks knowledge or information sufficient to form a belief as

23  to the truth of the allegations of this paragraph, and on that basis denies them.

24     69.   Bryant lacks knowledge or information sufficient to form a belief as

25  to the truth of the allegations of this paragraph, and on that basis denies them.

26     70.   Bryant lacks knowledge or information sufficient to form a belief as

27  to the truth of the allegations of this paragraph, and on that basis denies them.

28     71.   Bryant lacks knowledge or information sufficient to form a belief as

EXHIBIT 28
PAGE 1006

8

404479.01

1 │ to the truth of the allegations of this paragraph, and on that basis denies them.

2 │ 72. Bryant lacks knowledge or information sufficient to form a belief as
3 │ to the truth of the allegations of this paragraph, and on that basis denies them.

4 │ 73. Bryant lacks knowledge or information sufficient to form a belief as
5 │ to the truth of the allegations of this paragraph, and on that basis denies them.

6 │ 74. Bryant lacks knowledge or information sufficient to form a belief as
7 │ to the truth of the allegations of this paragraph, and on that basis denies them.

8 │ 75. Bryant lacks knowledge or information sufficient to form a belief as
9 │ to the truth of the allegations of this paragraph, and on that basis denies them.

10 │ 76. Bryant lacks knowledge or information sufficient to form a belief as
11 │ to the truth of the allegations of this paragraph, and on that basis denies them.

12 │ 77. Bryant lacks knowledge or information sufficient to form a belief as
13 │ to the truth of the allegations of this paragraph, and on that basis denies them.

14 │ 78. Bryant lacks knowledge or information sufficient to form a belief as
15 │ to the truth of the allegations of this paragraph, and on that basis denies them.

16 │ 79. Bryant lacks knowledge or information sufficient to form a belief as
17 │ to the truth of the allegations of this paragraph, and on that basis denies them.

18 │ 80. Bryant lacks knowledge or information sufficient to form a belief as
19 │ to the truth of the allegations of this paragraph, and on that basis denies them.

20 │ 81. Bryant lacks knowledge or information sufficient to form a belief as
21 │ to the truth of the allegations of this paragraph, and on that basis denies them.

22 │ **Mattel's First Counterclaim**

23 │ 82. Bryant repeats and realleges his answers to paragraphs 1 through 81
24 │ above, as though fully set forth here at length. Bryant denies any allegations not
25 │ expressly admitted.

26 │ 83. Bryant denies the allegations of this paragraph.

27 │ 84. Bryant denies the allegations of this paragraph.

28 │ 85. Bryant denies the allegations of this paragraph. **EXHIBIT 28**
**PAGE 1007**

9

CARTER BRYANT'S SECOND AMENDED REPLY TO MATTEL'S COUNTERCLAIMS
CASE NO. CV 04-09049 SGL (RNBx)

1   86.   Bryant denies the allegations of this paragraph.

2   87.   Bryant denies the allegations of this paragraph.

3   ### Mattel's Second Counterclaim

4   88.   Bryant repeats and realleges its answers to paragraphs 1 through 87

5   above, as though fully set forth here at length.  Bryant denies any allegations not

6   expressly admitted.

7   89.   Bryant denies the allegations of this paragraph.

8   90.   Bryant denies the allegations of this paragraph.

9   91.   Bryant denies the allegations of this paragraph.

10   92.   Bryant denies the allegations of this paragraph.

11   93.   Bryant denies the allegations of this paragraph, including the

12   allegations of all of its sub-paragraphs.

13   94.   Bryant denies the allegations of this paragraph.

14   95.   Bryant denies the allegations of this paragraph.

15   96.   Bryant denies the allegations of this paragraph.

16   97.   Bryant denies the allegations of this paragraph.

17   ### Mattel's Third Counterclaim

18   98.   Bryant repeats and realleges its answers to paragraphs 1 through 97

19   above, as though fully set forth here at length.  Bryant denies any allegations not

20   expressly admitted.

21   99.   Bryant denies the allegations of this paragraph.

22   100.   Bryant denies the allegations of this paragraph.

23   101.   Bryant denies the allegations of this paragraph.

24   102.   Bryant denies the allegations of this paragraph.

25   103.   Bryant denies the allegations of this paragraph.

26   104.   Bryant denies the allegations of this paragraph.

27   105.   Bryant denies the allegations of this paragraph.

28

**EXHIBIT 28**
**PAGE 1008**

## Mattel's Fourth Counterclaim

106.   Bryant repeats and realleges its answers to paragraphs 1 through 105 above, as though fully set forth here at length.  Bryant denies any allegations not expressly admitted.

107.   Bryant denies the allegations of this paragraph.

108.   Bryant denies the allegations of this paragraph.

109.   Bryant denies the allegations of this paragraph.

110.   Bryant denies the allegations of this paragraph.

111.   Bryant denies the allegations of this paragraph.

112.   Bryant denies the allegations of this paragraph.

113.   Bryant denies the allegations of this paragraph.

114.   Bryant denies the allegations of this paragraph.

115.   Bryant denies the allegations of this paragraph.

## Mattel's Fifth Counterclaim

116.   Bryant repeats and realleges its answers to paragraphs 1 through 115 above, as though fully set forth here at length.  Bryant denies any allegations not expressly admitted.

117.   Bryant denies the allegations of this paragraph.

118.   Bryant denies the allegations of this paragraph.

119.   Bryant denies the allegations of this paragraph.

120.   Bryant denies the allegations of this paragraph.

121.   Bryant denies the allegations of this paragraph.

## Mattel's Sixth Counterclaim

122.   Bryant repeats and realleges its answers to paragraphs 1 through 122 above, as though fully set forth here at length.  Bryant denies any allegations not expressly admitted.

123.   Bryant denies the allegations of this paragraph.

124.   Bryant denies the allegations of this paragraph.

EXHIBIT 28
PAGE 1009

11

404479.01

1    125.   Bryant denies the allegations of this paragraph.

2    126.   Bryant denies the allegations of this paragraph.

3    127.   Bryant denies the allegations of this paragraph.

4    128.   Bryant denies the allegations of this paragraph.

5                    **Mattel's Seventh Counterclaim**

6    129.   Bryant repeats and realleges its answers to paragraphs 1 through 128

7  above, as though fully set forth here at length.  Bryant denies any allegations not

8  expressly admitted.

9    130.   Bryant denies the allegations of this paragraph.

10    131.   Bryant denies the allegations of this paragraph.

11    132.   Bryant denies the allegations of this paragraph.

12    133.   Bryant denies the allegations of this paragraph.

13    134.   Bryant denies the allegations of this paragraph.

14    135.   Bryant denies the allegations of this paragraph.

15                    **Mattel's Eighth Counterclaim**

16    136.   Bryant repeats and realleges its answers to paragraphs 1 through 135

17  above, as though fully set forth here at length.  Bryant denies any allegations not

18  expressly admitted.

19    137.   Bryant denies the allegations of this paragraph.

20    138.   Bryant denies the allegations of this paragraph.

21    139.   Bryant denies the allegations of this paragraph.

22    140.   Bryant denies the allegations of this paragraph.

23    141.   Bryant denies the allegations of this paragraph.

24                    **Mattel's Ninth Counterclaim**

25    142.   Bryant repeats and realleges its answers to paragraphs 1 through 141

26  above, as though fully set forth here at length.  Bryant denies any allegations not

27  expressly admitted.

28    143.   Bryant denies the allegations of this paragraph.

**EXHIBIT 28**
**PAGE 1010**

12

1     144.  Bryant denies the allegations of this paragraph.

2     145.  Bryant denies the allegations of this paragraph.

3     146.  Bryant denies the allegations of this paragraph.

4     147.  Bryant denies the allegations of this paragraph.

5     148.  Bryant denies the allegations of this paragraph

6                **Mattel's Tenth Counterclaim**

7     149.  Bryant repeats and realleges its answers to paragraphs 1 through 148

8  above, as though fully set forth here at length.  Bryant denies any allegations not

9  expressly admitted.

10    150.  Bryant denies the allegations of this paragraph.

11    151.  Bryant denies the allegations of this paragraph.

12    152.  Bryant denies the allegations of this paragraph.

13    153.  Bryant denies the allegations of this paragraph.

14    154.  Bryant denies the allegations of this paragraph.

15             **Mattel's Eleventh Counterclaim**

16    155.  Bryant repeats and realleges its answers to paragraphs 1 through 154

17  above, as though fully set forth here at length.  Bryant denies any allegations not

18  expressly admitted.

19    156.  Bryant denies the allegations of this paragraph.

20    157.  Bryant denies the allegations of this paragraph.

21    158.  Bryant denies the allegations of this paragraph.

22    159.  Bryant denies the allegations of this paragraph.

23    160.  Bryant denies the allegations of this paragraph.

24    161.  Bryant denies the allegations of this paragraph.

25    162.  Bryant denies the allegations of this paragraph.

**EXHIBIT 28**
**PAGE 1011**

26             **Mattel's Twelfth Counterclaim**

27    163.  Bryant repeats and realleges its answers to paragraphs 1 through 162

28  above, as though fully set forth here at length.  Bryant denies any allegations not

404479.01

1  expressly admitted.

2      164.   Bryant admits the allegation of this paragraph regarding the contents

3  of section 17200 of the California Business and Professions Code, but denies that

4  Mattel is entitled to any relief or recovery whatsoever on its claims.

5      165.   Bryant denies the allegations of this paragraph.

6      166.   Bryant denies the allegations of this paragraph.

7                    **Mattel's Thirteenth Counterclaim**

8      167.   Bryant repeats and realleges its answers to paragraphs 1 through 166

9  above, as though fully set forth here at length.  Bryant denies any allegations not

10 expressly admitted.

11     168.   Bryant admits that an actual controversy exists between the parties,

12 because of Mattel's campaign of harassing litigation, but denies all other

13 allegations of this paragraph, and denies that Mattel is entitled to any relief or

14 recovery whatsoever.

15     169.   Bryant admits that Mattel seeks the relief recited in this paragraph, but

16 denies all remaining allegations of this paragraph, and denies that Mattel is entitled

17 to any relief or recovery whatsoever.

18     170.   Bryant admits that Mattel seeks the relief recited in this paragraph, but

19 denies all remaining allegations of this paragraph, and denies that Mattel is entitled

20 to any relief or recovery whatsoever.

21                         **Prayer for Relief**

22     This section of Mattel's counterclaims contains no factual allegations, and

23 requires no response.  Bryant denies that Mattel is entitled to any relief whatsoever,

24 and respectfully requests judgment dismissing Mattel's counterclaims with

25 prejudice and with costs and attorneys' fees to Bryant, as may be allowed by law,

26 and whatever other relief to Bryant the Court deems appropriate.

27     Except as specifically admitted above, Bryant denies each and every

28 allegation in Mattel's counterclaims.

**EXHIBIT 28**
**PAGE 1012**

14