**REQUEST FOR ADMISSION NO. 125:**

Admit that the drawing produced by BRYANT bearing Bates serial number Bryant 00202 is not intellectual property for whose conversion YOU seek damages.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 125:**

In addition to the foregoing general objections, which are incorporated herein by reference, Mattel objects to this Request on the grounds that it is vague and ambiguous. Mattel further objects to this Request on the grounds that Mattel does not have sufficient information about the drawing produced by Bryant bearing Bates number Bryant 00202 in order to frame a complete response. Mattel further objects to this Request as unreasonably burdensome and premature in that the facts necessary to determine the full nature and extent of Mattel's relief and damages from defendants' acts or omissions are known by defendants and third parties associated with defendants, but are not fully known by Mattel at this juncture because of defendants' refusals to produce discovery.

**EXHIBIT 53**
**PAGE 1692**

Subject to and without waiving the foregoing general and specific objections, Mattel admits that it seeks damages for defendants' theft and conversion of, among other things, the Bratz brand, including without limitation all inventions, concepts, ideas, drawings and works, which were created, made, improved, conceived, reduced to practice or worked on by Bryant, in whole or in part, while employed by Mattel, from which defendants have profited and/or obtained ill-gotten gains. Mattel further admits that the evidence shows that Bryant worked on Bratz, including on the document produced by Bryant bearing Bates serial number Bryant 00202, while he was a Mattel employee and as a result of that work and Bryant's unlawful conduct, Mattel was damaged. However, the full extent of defendants' profits and ill-gotten gains from Bratz as well as other facts relating to this request for admission are unknown to Mattel at this time and is known only to defendants,

1  because defendants have not provided necessary discovery and have concealed

2  facts, in violation of Court Orders. Moreover, the subject of this request for

3  admission and the damages suffered by Mattel may be the subject of expert opinion

4  or testimony. Mattel therefore reserves the right to supplement or amend this

5  response at the time and in the manner required by the Rules and Court Orders.

6

7  **REQUEST FOR ADMISSION NO. 126:**

8       Admit that the drawing produced by BRYANT bearing Bates serial

9  number Bryant 00203 is not intellectual property for whose conversion YOU seek

10  damages.

**EXHIBIT 53**
**PAGE 1693**

11

12  **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 126:**

13       In addition to the foregoing general objections, which are incorporated

14  herein by reference, Mattel objects to this Request on the grounds that it is vague

15  and ambiguous. Mattel further objects to this Request on the grounds that Mattel

16  does not have sufficient information about the drawing produced by Bryant bearing

17  Bates number Bryant 00203 in order to frame a complete response. Mattel further

18  objects to this Request as unreasonably burdensome and premature in that the facts

19  necessary to determine the full nature and extent of Mattel's relief and damages from

20  defendants' acts or omissions are known by defendants and third parties associated

21  with defendants, but are not fully known by Mattel at this juncture because of

22  defendants' refusals to produce discovery.

23       Subject to and without waiving the foregoing general and specific

24  objections, Mattel admits that it seeks damages for defendants' theft and conversion

25  of, among other things, the Bratz brand, including without limitation all inventions,

26  concepts, ideas, drawings and works, which were created, made, improved,

27  conceived, reduced to practice or worked on by Bryant, in whole or in part, while

28  employed by Mattel, from which defendants have profited and/or obtained ill-gotten

1 gains. Mattel further admits that the evidence shows that Bryant worked on Bratz,
2 including on the document produced by Bryant bearing Bates serial number Bryant
3 00203, while he was a Mattel employee and as a result of that work and Bryant's
4 unlawful conduct, Mattel was damaged. However, the full extent of defendants'
5 profits and ill-gotten gains from Bratz as well as other facts relating to this request
6 for admission are unknown to Mattel at this time and is known only to defendants,
7 because defendants have not provided necessary discovery and have concealed
8 facts, in violation of Court Orders. Moreover, the subject of this request for
9 admission and the damages suffered by Mattel may be the subject of expert opinion
10 or testimony. Mattel therefore reserves the right to supplement or amend this
11 response at the time and in the manner required by the Rules and Court Orders.
12

13 **REQUEST FOR ADMISSION NO. 127:**

14    Admit that the drawing produced by BRYANT bearing Bates serial
15 number Bryant 00204 is not intellectual property for whose conversion YOU seek
16 damages.

17

18 **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 127:**

19    In addition to the foregoing general objections, which are incorporated
20 herein by reference, Mattel objects to this Request on the grounds that it is vague
21 and ambiguous. Mattel further objects to this Request on the grounds that Mattel
22 does not have sufficient information about the drawing produced by Bryant bearing
23 Bates number Bryant 00204 in order to frame a complete response. Mattel further
24 objects to this Request as unreasonably burdensome and premature in that the facts
25 necessary to determine the full nature and extent of Mattel's relief and damages from
26 defendants' acts or omissions are known by defendants and third parties associated
27 with defendants, but are not fully known by Mattel at this juncture because of
28 defendants' refusals to produce discovery.

**EXHIBIT 53**
**PAGE 1694**

-119-

1          Subject to and without waiving the foregoing general and specific

2  objections, Mattel admits that it seeks damages for defendants' theft and conversion

3  of, among other things, the Bratz brand, including without limitation all inventions,

4  concepts, ideas, drawings and works, which were created, made, improved,

5  conceived, reduced to practice or worked on by Bryant, in whole or in part, while

6  employed by Mattel, from which defendants have profited and/or obtained ill-gotten

7  gains. Mattel further admits that the evidence shows that Bryant worked on Bratz,

8  including on the document produced by Bryant bearing Bates serial number Bryant

9  00204, while he was a Mattel employee and as a result of that work and Bryant's

10  unlawful conduct, Mattel was damaged. However, the full extent of defendants'

11  profits and ill-gotten gains from Bratz as well as other facts relating to this request

12  for admission are unknown to Mattel at this time and is known only to defendants,

13  because defendants have not provided necessary discovery and have concealed

14  facts, in violation of Court Orders. Moreover, the subject of this request for

15  admission and the damages suffered by Mattel may be the subject of expert opinion

16  or testimony. Mattel therefore reserves the right to supplement or amend this

17  response at the time and in the manner required by the Rules and Court Orders.

18

19  **REQUEST FOR ADMISSION NO. 128:**

20          Admit that the drawing produced by BRYANT bearing Bates serial

21  number Bryant 00205 is not intellectual property for whose conversion YOU seek

22  damages.

**EXHIBIT 53**
**PAGE 1695**

23

24  **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 128:**

25          In addition to the foregoing general objections, which are incorporated

26  herein by reference, Mattel objects to this Request on the grounds that it is vague

27  and ambiguous. Mattel further objects to this Request on the grounds that Mattel

28  does not have sufficient information about the drawing produced by Bryant bearing

1  Bates number Bryant 00205 in order to frame a complete response.  Mattel further

2  objects to this Request as unreasonably burdensome and premature in that the facts

3  necessary to determine the full nature and extent of Mattel's relief and damages from

4  defendants' acts or omissions are known by defendants and third parties associated

5  with defendants, but are not fully known by Mattel at this juncture because of

6  defendants' refusals to produce discovery.

7          Subject to and without waiving the foregoing general and specific

8  objections, Mattel admits that it seeks damages for defendants' theft and conversion

9  of, among other things, the Bratz brand, including without limitation all inventions,

10  concepts, ideas, drawings and works, which were created, made, improved,

11  conceived, reduced to practice or worked on by Bryant, in whole or in part, while

12  employed by Mattel, from which defendants have profited and/or obtained ill-gotten

13  gains.  Mattel further admits that the evidence shows that Bryant worked on Bratz,

14  including on the document produced by Bryant bearing Bates serial number Bryant

15  00205, while he was a Mattel employee and as a result of that work and Bryant's

16  unlawful conduct, Mattel was damaged.  However, the full extent of defendants'

17  profits and ill-gotten gains from Bratz as well as other facts relating to this request

18  for admission are unknown to Mattel at this time and is known only to defendants,

19  because defendants have not provided necessary discovery and have concealed

20  facts, in violation of Court Orders.  Moreover, the subject of this request for

21  admission and the damages suffered by Mattel may be the subject of expert opinion

22  or testimony.  Mattel therefore reserves the right to supplement or amend this

23  response at the time and in the manner required by the Rules and Court Orders.

24

25  **REQUEST FOR ADMISSION NO. 129:**

26          Admit that the drawing produced by BRYANT bearing Bates serial

27  number Bryant 00206 is not intellectual property for whose conversion YOU seek

28  damages.

**EXHIBIT 53**
**PAGE 1696**

EXHIBIT 53
PAGE 1697

1 ## SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 129:

2         In addition to the foregoing general objections, which are incorporated
3 herein by reference, Mattel objects to this Request on the grounds that it is vague
4 and ambiguous. Mattel further objects to this Request on the grounds that Mattel
5 does not have sufficient information about the drawing produced by Bryant bearing
6 Bates number Bryant 00206 in order to frame a complete response. Mattel further
7 objects to this Request as unreasonably burdensome and premature in that the facts
8 necessary to determine the full nature and extent of Mattel's relief and damages from
9 defendants' acts or omissions are known by defendants and third parties associated
10 with defendants, but are not fully known by Mattel at this juncture because of
11 defendants' refusals to produce discovery.

12         Subject to and without waiving the foregoing general and specific
13 objections, Mattel admits that it seeks damages for defendants' theft and conversion
14 of, among other things, the Bratz brand, including without limitation all inventions,
15 concepts, ideas, drawings and works, which were created, made, improved,
16 conceived, reduced to practice or worked on by Bryant, in whole or in part, while
17 employed by Mattel, from which defendants have profited and/or obtained ill-gotten
18 gains. Mattel further admits that the evidence shows that Bryant worked on Bratz,
19 including on the document produced by Bryant bearing Bates serial number Bryant
20 00206, while he was a Mattel employee and as a result of that work and Bryant's
21 unlawful conduct, Mattel was damaged. However, the full extent of defendants'
22 profits and ill-gotten gains from Bratz as well as other facts relating to this request
23 for admission are unknown to Mattel at this time and is known only to defendants,
24 because defendants have not provided necessary discovery and have concealed
25 facts, in violation of Court Orders. Moreover, the subject of this request for
26 admission and the damages suffered by Mattel may be the subject of expert opinion
27 or testimony. Mattel therefore reserves the right to supplement or amend this
28 response at the time and in the manner required by the Rules and Court Orders.

1  **REQUEST FOR ADMISSION NO. 130:**

2        Admit that the drawing produced by BRYANT bearing Bates serial

3  number Bryant 00207 is not intellectual property for whose conversion YOU seek

4  damages.

                                              **EXHIBIT 53**

5                                              **PAGE 1698**

6  **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 130:**

7        In addition to the foregoing general objections, which are incorporated

8  herein by reference, Mattel objects to this Request on the grounds that it is vague

9  and ambiguous.  Mattel further objects to this Request on the grounds that Mattel

10  does not have sufficient information about the drawing produced by Bryant bearing

11  Bates number Bryant 00207 in order to frame a complete response.  Mattel further

12  objects to this Request as unreasonably burdensome and premature in that the facts

13  necessary to determine the full nature and extent of Mattel's relief and damages from

14  defendants' acts or omissions are known by defendants and third parties associated

15  with defendants, but are not fully known by Mattel at this juncture because of

16  defendants' refusals to produce discovery.

17        Subject to and without waiving the foregoing general and specific

18  objections, Mattel admits that it seeks damages for defendants' theft and conversion

19  of, among other things, the Bratz brand, including without limitation all inventions,

20  concepts, ideas, drawings and works, which were created, made, improved,

21  conceived, reduced to practice or worked on by Bryant, in whole or in part, while

22  employed by Mattel, from which defendants have profited and/or obtained ill-gotten

23  gains. Mattel further admits that the evidence shows that Bryant worked on Bratz,

24  including on the document produced by Bryant bearing Bates serial number Bryant

25  00207, while he was a Mattel employee and as a result of that work and Bryant's

26  unlawful conduct, Mattel was damaged.  However, the full extent of defendants'

27  profits and ill-gotten gains from Bratz as well as other facts relating to this request

28  for admission are unknown to Mattel at this time and is known only to defendants,

1  because defendants have not provided necessary discovery and have concealed

2  facts, in violation of Court Orders. Moreover, the subject of this request for

3  admission and the damages suffered by Mattel may be the subject of expert opinion

4  or testimony. Mattel therefore reserves the right to supplement or amend this

5  response at the time and in the manner required by the Rules and Court Orders.

6

7  **REQUEST FOR ADMISSION NO. 131:**

8  Admit that the drawing produced by BRYANT bearing Bates serial

9  number Bryant 00208 is not intellectual property for whose conversion YOU seek

10  damages.

**EXHIBIT 53**
**PAGE 1699**

11

12  **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 131:**

13  In addition to the foregoing general objections, which are incorporated

14  herein by reference, Mattel objects to this Request on the grounds that it is vague

15  and ambiguous. Mattel further objects to this Request on the grounds that Mattel

16  does not have sufficient information about the drawing produced by Bryant bearing

17  Bates number Bryant 00208 in order to frame a complete response. Mattel further

18  objects to this Request as unreasonably burdensome and premature in that the facts

19  necessary to determine the full nature and extent of Mattel's relief and damages from

20  defendants' acts or omissions are known by defendants and third parties associated

21  with defendants, but are not fully known by Mattel at this juncture because of

22  defendants' refusals to produce discovery.

23  Subject to and without waiving the foregoing general and specific

24  objections, Mattel admits that it seeks damages for defendants' theft and conversion

25  of, among other things, the Bratz brand, including without limitation all inventions,

26  concepts, ideas, drawings and works, which were created, made, improved,

27  conceived, reduced to practice or worked on by Bryant, in whole or in part, while

28  employed by Mattel, from which defendants have profited and/or obtained ill-gotten

1 gains. Mattel further admits that the evidence shows that Bryant worked on Bratz,

2 including on the document produced by Bryant bearing Bates serial number Bryant

3 00208, while he was a Mattel employee and as a result of that work and Bryant's

4 unlawful conduct, Mattel was damaged. However, the full extent of defendants'

5 profits and ill-gotten gains from Bratz as well as other facts relating to this request

6 for admission are unknown to Mattel at this time and is known only to defendants,

7 because defendants have not provided necessary discovery and have concealed

8 facts, in violation of Court Orders. Moreover, the subject of this request for

9 admission and the damages suffered by Mattel may be the subject of expert opinion

10 or testimony. Mattel therefore reserves the right to supplement or amend this

11 response at the time and in the manner required by the Rules and Court Orders.

12

13 **REQUEST FOR ADMISSION NO. 132:**

14       Admit that the drawing produced by BRYANT bearing Bates serial

15 number Bryant 00209 is not intellectual property for whose conversion YOU seek

16 damages.

17

18 **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 132:**

19       In addition to the foregoing general objections, which are incorporated

20 herein by reference, Mattel objects to this Request on the grounds that it is vague

21 and ambiguous. Mattel further objects to this Request on the grounds that Mattel

22 does not have sufficient information about the drawing produced by Bryant bearing

23 Bates number Bryant 00209 in order to frame a complete response. Mattel further

24 objects to this Request as unreasonably burdensome and premature in that the facts

25 necessary to determine the full nature and extent of Mattel's relief and damages from

26 defendants' acts or omissions are known by defendants and third parties associated

27 with defendants, but are not fully known by Mattel at this juncture because of

28 defendants' refusals to produce discovery.

**EXHIBIT 53**
**PAGE 1700**

MATTEL'S AMENDED RESPONSES TO MGA'S SECOND SET OF REQUESTS FOR ADMISSIONS

1    Subject to and without waiving the foregoing general and specific
2  objections, Mattel admits that it seeks damages for defendants' theft and conversion
3  of, among other things, the Bratz brand, including without limitation all inventions,
4  concepts, ideas, drawings and works, which were created, made, improved,
5  conceived, reduced to practice or worked on by Bryant, in whole or in part, while
6  employed by Mattel, from which defendants have profited and/or obtained ill-gotten
7  gains. Mattel further admits that the evidence shows that Bryant worked on Bratz,
8  including on the document produced by Bryant bearing Bates serial number Bryant
9  00209, while he was a Mattel employee and as a result of that work and Bryant's
10  unlawful conduct, Mattel was damaged. However, the full extent of defendants'
11  profits and ill-gotten gains from Bratz as well as other facts relating to this request
12  for admission are unknown to Mattel at this time and is known only to defendants,
13  because defendants have not provided necessary discovery and have concealed
14  facts, in violation of Court Orders. Moreover, the subject of this request for
15  admission and the damages suffered by Mattel may be the subject of expert opinion
16  or testimony. Mattel therefore reserves the right to supplement or amend this
17  response at the time and in the manner required by the Rules and Court Orders.
18
19  **REQUEST FOR ADMISSION NO. 133:**
20    Admit that the drawing produced by BRYANT bearing Bates serial
21  number Bryant 00210 is not intellectual property for whose conversion YOU seek
22  damages.

**EXHIBIT 53**
**PAGE 1701**

23
24  **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 133:**
25    In addition to the foregoing general objections, which are incorporated
26  herein by reference, Mattel objects to this Request on the grounds that it is vague
27  and ambiguous. Mattel further objects to this Request on the grounds that Mattel
28  does not have sufficient information about the drawing produced by Bryant bearing

1    Bates number Bryant 00210 in order to frame a complete response.  Mattel further
2    objects to this Request as unreasonably burdensome and premature in that the facts
3    necessary to determine the full nature and extent of Mattel's relief and damages from
4    defendants' acts or omissions are known by defendants and third parties associated
5    with defendants, but are not fully known by Mattel at this juncture because of
6    defendants' refusals to produce discovery.

7           Subject to and without waiving the foregoing general and specific
8    objections, Mattel admits that it seeks damages for defendants' theft and conversion
9    of, among other things, the Bratz brand, including without limitation all inventions,
10   concepts, ideas, drawings and works, which were created, made, improved,
11   conceived, reduced to practice or worked on by Bryant, in whole or in part, while
12   employed by Mattel, from which defendants have profited and/or obtained ill-gotten
13   gains.  Mattel further admits that the evidence shows that Bryant worked on Bratz,
14   including on the document produced by Bryant bearing Bates serial number Bryant
15   00210, while he was a Mattel employee and as a result of that work and Bryant's
16   unlawful conduct, Mattel was damaged.  However, the full extent of defendants'
17   profits and ill-gotten gains from Bratz as well as other facts relating to this request
18   for admission are unknown to Mattel at this time and is known only to defendants,
19   because defendants have not provided necessary discovery and have concealed
20   facts, in violation of Court Orders.  Moreover, the subject of this request for
21   admission and the damages suffered by Mattel may be the subject of expert opinion
22   or testimony.  Mattel therefore reserves the right to supplement or amend this
23   response at the time and in the manner required by the Rules and Court Orders.
24

25   **REQUEST FOR ADMISSION NO. 134:**

26          Admit that the drawing produced by BRYANT bearing Bates serial
27   number Bryant 00211 is not intellectual property for whose conversion YOU seek
28   damages.

**EXHIBIT 53**
**PAGE 1702**

EXHIBIT 53
PAGE 1703

1   **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 134:**

2           In addition to the foregoing general objections, which are incorporated

3   herein by reference, Mattel objects to this Request on the grounds that it is vague

4   and ambiguous. Mattel further objects to this Request on the grounds that Mattel

5   does not have sufficient information about the drawing produced by Bryant bearing

6   Bates number Bryant 00211 in order to frame a complete response. Mattel further

7   objects to this Request as unreasonably burdensome and premature in that the facts

8   necessary to determine the full nature and extent of Mattel's relief and damages from

9   defendants' acts or omissions are known by defendants and third parties associated

10  with defendants, but are not fully known by Mattel at this juncture because of

11  defendants' refusals to produce discovery.

12          Subject to and without waiving the foregoing general and specific

13  objections, Mattel admits that it seeks damages for defendants' theft and conversion

14  of, among other things, the Bratz brand, including without limitation all inventions,

15  concepts, ideas, drawings and works, which were created, made, improved,

16  conceived, reduced to practice or worked on by Bryant, in whole or in part, while

17  employed by Mattel, from which defendants have profited and/or obtained ill-gotten

18  gains. Mattel further admits that the evidence shows that Bryant worked on Bratz,

19  including on the document produced by Bryant bearing Bates serial number Bryant

20  00211, while he was a Mattel employee and as a result of that work and Bryant's

21  unlawful conduct, Mattel was damaged. However, the full extent of defendants'

22  profits and ill-gotten gains from Bratz as well as other facts relating to this request

23  for admission are unknown to Mattel at this time and is known only to defendants,

24  because defendants have not provided necessary discovery and have concealed

25  facts, in violation of Court Orders. Moreover, the subject of this request for

26  admission and the damages suffered by Mattel may be the subject of expert opinion

27  or testimony. Mattel therefore reserves the right to supplement or amend this

28  response at the time and in the manner required by the <u>Rules</u> and Court Orders.

1 | **REQUEST FOR ADMISSION NO. 135:**

2 |       Admit that the drawing produced by BRYANT bearing Bates serial

3 | number Bryant 00212 is not intellectual property for whose conversion YOU seek

4 | damages.

**EXHIBIT 53**
**PAGE 1704**

5

6 | **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 135:**

7 |       In addition to the foregoing general objections, which are incorporated

8 | herein by reference, Mattel objects to this Request on the grounds that it is vague

9 | and ambiguous. Mattel further objects to this Request on the grounds that Mattel

10 | does not have sufficient information about the drawing produced by Bryant bearing

11 | Bates number Bryant 00212 in order to frame a complete response. Mattel further

12 | objects to this Request as unreasonably burdensome and premature in that the facts

13 | necessary to determine the full nature and extent of Mattel's relief and damages from

14 | defendants' acts or omissions are known by defendants and third parties associated

15 | with defendants, but are not fully known by Mattel at this juncture because of

16 | defendants' refusals to produce discovery.

17 |       Subject to and without waiving the foregoing general and specific

18 | objections, Mattel admits that it seeks damages for defendants' theft and conversion

19 | of, among other things, the Bratz brand, including without limitation all inventions,

20 | concepts, ideas, drawings and works, which were created, made, improved,

21 | conceived, reduced to practice or worked on by Bryant, in whole or in part, while

22 | employed by Mattel, from which defendants have profited and/or obtained ill-gotten

23 | gains. Mattel further admits that the evidence shows that Bryant worked on Bratz,

24 | including on the document produced by Bryant bearing Bates serial number Bryant

25 | 00212, while he was a Mattel employee and as a result of that work and Bryant's

26 | unlawful conduct, Mattel was damaged. However, the full extent of defendants'

27 | profits and ill-gotten gains from Bratz as well as other facts relating to this request

28 | for admission are unknown to Mattel at this time and is known only to defendants,

1   because defendants have not provided necessary discovery and have concealed

2   facts, in violation of Court Orders.  Moreover, the subject of this request for

3   admission and the damages suffered by Mattel may be the subject of expert opinion

4   or testimony.  Mattel therefore reserves the right to supplement or amend this

5   response at the time and in the manner required by the <u>Rules</u> and Court Orders.

6

7   **REQUEST FOR ADMISSION NO. 136:**

8          Admit that the drawing produced by BRYANT bearing Bates serial

9   number Bryant 00213 is not intellectual property for whose conversion YOU seek

10  damages.

11

12  **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 136:**

13         In addition to the foregoing general objections, which are incorporated

14  herein by reference, Mattel objects to this Request on the grounds that it is vague

15  and ambiguous.  Mattel further objects to this Request on the grounds that Mattel

16  does not have sufficient information about the drawing produced by Bryant bearing

17  Bates number Bryant 00213 in order to frame a complete response.  Mattel further

18  objects to this Request as unreasonably burdensome and premature in that the facts

19  necessary to determine the full nature and extent of Mattel's relief and damages from

20  defendants' acts or omissions are known by defendants and third parties associated

21  with defendants, but are not fully known by Mattel at this juncture because of

22  defendants' refusals to produce discovery.

**EXHIBIT 53**
**PAGE 1705**

23         Subject to and without waiving the foregoing general and specific

24  objections, Mattel admits that it seeks damages for defendants' theft and conversion

25  of, among other things, the Bratz brand, including without limitation all inventions,

26  concepts, ideas, drawings and works, which were created, made, improved,

27  conceived, reduced to practice or worked on by Bryant, in whole or in part, while

28  employed by Mattel, from which defendants have profited and/or obtained ill-gotten

1  gains. Mattel further admits that the evidence shows that Bryant worked on Bratz,
2  including on the document produced by Bryant bearing Bates serial number Bryant
3  00213, while he was a Mattel employee and as a result of that work and Bryant's
4  unlawful conduct, Mattel was damaged. However, the full extent of defendants'
5  profits and ill-gotten gains from Bratz as well as other facts relating to this request
6  for admission are unknown to Mattel at this time and is known only to defendants,
7  because defendants have not provided necessary discovery and have concealed
8  facts, in violation of Court Orders. Moreover, the subject of this request for
9  admission and the damages suffered by Mattel may be the subject of expert opinion
10 or testimony. Mattel therefore reserves the right to supplement or amend this
11 response at the time and in the manner required by the Rules and Court Orders.
12
13 **REQUEST FOR ADMISSION NO. 137:**
14         Admit that the drawing produced by BRYANT bearing Bates serial
15 number Bryant 00214 is not intellectual property for whose conversion YOU seek
16 damages.
17
18 **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 137:**
19         In addition to the foregoing general objections, which are incorporated
20 herein by reference, Mattel objects to this Request on the grounds that it is vague
21 and ambiguous. Mattel further objects to this Request on the grounds that Mattel
22 does not have sufficient information about the drawing produced by Bryant bearing
23 Bates number Bryant 00214 in order to frame a complete response. Mattel further
24 objects to this Request as unreasonably burdensome and premature in that the facts
25 necessary to determine the full nature and extent of Mattel's relief and damages from
26 defendants' acts or omissions are known by defendants and third parties associated
27 with defendants, but are not fully known by Mattel at this juncture because of
28 defendants' refusals to produce discovery.                    **EXHIBIT 53**
                                                                 **PAGE 1706**

1    Subject to and without waiving the foregoing general and specific

2 objections, Mattel admits that it seeks damages for defendants' theft and conversion

3 of, among other things, the Bratz brand, including without limitation all inventions,

4 concepts, ideas, drawings and works, which were created, made, improved,

5 conceived, reduced to practice or worked on by Bryant, in whole or in part, while

6 employed by Mattel, from which defendants have profited and/or obtained ill-gotten

7 gains. Mattel further admits that the evidence shows that Bryant worked on Bratz,

8 including on the document produced by Bryant bearing Bates serial number Bryant

9 00214, while he was a Mattel employee and as a result of that work and Bryant's

10 unlawful conduct, Mattel was damaged. However, the full extent of defendants'

11 profits and ill-gotten gains from Bratz as well as other facts relating to this request

12 for admission are unknown to Mattel at this time and is known only to defendants,

13 because defendants have not provided necessary discovery and have concealed

14 facts, in violation of Court Orders. Moreover, the subject of this request for

15 admission and the damages suffered by Mattel may be the subject of expert opinion

16 or testimony. Mattel therefore reserves the right to supplement or amend this

17 response at the time and in the manner required by the Rules and Court Orders.

18

19 **REQUEST FOR ADMISSION NO. 138:**

20    Admit that the drawing produced by BRYANT bearing Bates serial

21 number Bryant 00215 is not intellectual property for whose conversion YOU seek

22 damages.

**EXHIBIT 53
PAGE 1707**

23

24 **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 138:**

25    In addition to the foregoing general objections, which are incorporated

26 herein by reference, Mattel objects to this Request on the grounds that it is vague

27 and ambiguous. Mattel further objects to this Request on the grounds that Mattel

28 does not have sufficient information about the drawing produced by Bryant bearing

209/2238755.6

MATTEL'S AMENDED RESPONSES TO MGA'S SECOND SET OF REQUESTS FOR ADMISSIONS

1   Bates number Bryant 00215 in order to frame a complete response.  Mattel further
2   objects to this Request as unreasonably burdensome and premature in that the facts
3   necessary to determine the full nature and extent of Mattel's relief and damages from
4   defendants' acts or omissions are known by defendants and third parties associated
5   with defendants, but are not fully known by Mattel at this juncture because of
6   defendants' refusals to produce discovery.

7           Subject to and without waiving the foregoing general and specific
8   objections, Mattel admits that it seeks damages for defendants' theft and conversion
9   of, among other things, the Bratz brand, including without limitation all inventions,
10  concepts, ideas, drawings and works, which were created, made, improved,
11  conceived, reduced to practice or worked on by Bryant, in whole or in part, while
12  employed by Mattel, from which defendants have profited and/or obtained ill-gotten
13  gains.  Mattel further admits that the evidence shows that Bryant worked on Bratz,
14  including on the document produced by Bryant bearing Bates serial number Bryant
15  00215, while he was a Mattel employee and as a result of that work and Bryant's
16  unlawful conduct, Mattel was damaged.  However, the full extent of defendants'
17  profits and ill-gotten gains from Bratz as well as other facts relating to this request
18  for admission are unknown to Mattel at this time and is known only to defendants,
19  because defendants have not provided necessary discovery and have concealed
20  facts, in violation of Court Orders.  Moreover, the subject of this request for
21  admission and the damages suffered by Mattel may be the subject of expert opinion
22  or testimony.  Mattel therefore reserves the right to supplement or amend this
23  response at the time and in the manner required by the Rules and Court Orders.
24

25  **REQUEST FOR ADMISSION NO. 139:**

26          Admit that the drawing produced by BRYANT bearing Bates serial
27  number Bryant 00216 is not intellectual property for whose conversion YOU seek
28  damages.

**EXHIBIT 53**
**PAGE 1708**

-133-

EXHIBIT 53
PAGE 1709

1 **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 139:**

2       In addition to the foregoing general objections, which are incorporated

3 herein by reference, Mattel objects to this Request on the grounds that it is vague

4 and ambiguous. Mattel further objects to this Request on the grounds that Mattel

5 does not have sufficient information about the drawing produced by Bryant bearing

6 Bates number Bryant 00216 in order to frame a complete response. Mattel further

7 objects to this Request as unreasonably burdensome and premature in that the facts

8 necessary to determine the full nature and extent of Mattel's relief and damages from

9 defendants' acts or omissions are known by defendants and third parties associated

10 with defendants, but are not fully known by Mattel at this juncture because of

11 defendants' refusals to produce discovery.

12       Subject to and without waiving the foregoing general and specific

13 objections, Mattel admits that it seeks damages for defendants' theft and conversion

14 of, among other things, the Bratz brand, including without limitation all inventions,

15 concepts, ideas, drawings and works, which were created, made, improved,

16 conceived, reduced to practice or worked on by Bryant, in whole or in part, while

17 employed by Mattel, from which defendants have profited and/or obtained ill-gotten

18 gains. Mattel further admits that the evidence shows that Bryant worked on Bratz,

19 including on the document produced by Bryant bearing Bates serial number Bryant

20 00216, while he was a Mattel employee and as a result of that work and Bryant's

21 unlawful conduct, Mattel was damaged. However, the full extent of defendants'

22 profits and ill-gotten gains from Bratz as well as other facts relating to this request

23 for admission are unknown to Mattel at this time and is known only to defendants,

24 because defendants have not provided necessary discovery and have concealed

25 facts, in violation of Court Orders. Moreover, the subject of this request for

26 admission and the damages suffered by Mattel may be the subject of expert opinion

27 or testimony. Mattel therefore reserves the right to supplement or amend this

28 response at the time and in the manner required by the Rules and Court Orders.

1  **REQUEST FOR ADMISSION NO. 140:**

2          Admit that the drawing produced by BRYANT bearing Bates serial

3  number Bryant 00218 is not intellectual property for whose conversion YOU seek

4  damages.                                            **EXHIBIT 53**
                                                       **PAGE 1710**
5

6  **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 140:**

7          In addition to the foregoing general objections, which are incorporated

8  herein by reference, Mattel objects to this Request on the grounds that it is vague

9  and ambiguous. Mattel further objects to this Request on the grounds that Mattel

10 does not have sufficient information about the drawing produced by Bryant bearing

11 Bates number Bryant 00218 in order to frame a complete response. Mattel further

12 objects to this Request as unreasonably burdensome and premature in that the facts

13 necessary to determine the full nature and extent of Mattel's relief and damages from

14 defendants' acts or omissions are known by defendants and third parties associated

15 with defendants, but are not fully known by Mattel at this juncture because of

16 defendants' refusals to produce discovery.

17          Subject to and without waiving the foregoing general and specific

18 objections, Mattel admits that it seeks damages for defendants' theft and conversion

19 of, among other things, the Bratz brand, including without limitation all inventions,

20 concepts, ideas, drawings and works, which were created, made, improved,

21 conceived, reduced to practice or worked on by Bryant, in whole or in part, while

22 employed by Mattel, from which defendants have profited and/or obtained ill-gotten

23 gains. Mattel further admits that the evidence shows that Bryant worked on Bratz,

24 including on the document produced by Bryant bearing Bates serial number Bryant

25 00218, while he was a Mattel employee and as a result of that work and Bryant's

26 unlawful conduct, Mattel was damaged. However, the full extent of defendants'

27 profits and ill-gotten gains from Bratz as well as other facts relating to this request

28 for admission are unknown to Mattel at this time and is known only to defendants,

1  because defendants have not provided necessary discovery and have concealed

2  facts, in violation of Court Orders. Moreover, the subject of this request for

3  admission and the damages suffered by Mattel may be the subject of expert opinion

4  or testimony. Mattel therefore reserves the right to supplement or amend this

5  response at the time and in the manner required by the Rules and Court Orders.

6

7  **REQUEST FOR ADMISSION NO. 141:**

8      Admit that the drawing produced by BRYANT bearing Bates serial

9  number Bryant 00341 is not intellectual property for whose conversion YOU seek

10  damages.

**EXHIBIT 53**
**PAGE 1711**

11

12  **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 141:**

13      In addition to the foregoing general objections, which are incorporated

14  herein by reference, Mattel objects to this Request on the grounds that it is vague

15  and ambiguous. Mattel further objects to this Request on the grounds that Mattel

16  does not have sufficient information about the drawing produced by Bryant bearing

17  Bates number Bryant 00341 in order to frame a complete response. Mattel further

18  objects to this Request as unreasonably burdensome and premature in that the facts

19  necessary to determine the full nature and extent of Mattel's relief and damages from

20  defendants' acts or omissions are known by defendants and third parties associated

21  with defendants, but are not fully known by Mattel at this juncture because of

22  defendants' refusals to produce discovery.

23      Subject to and without waiving the foregoing general and specific

24  objections, Mattel admits that it seeks damages for defendants' theft and conversion

25  of, among other things, the Bratz brand, including without limitation all inventions,

26  concepts, ideas, drawings and works, which were created, made, improved,

27  conceived, reduced to practice or worked on by Bryant, in whole or in part, while

28  employed by Mattel, from which defendants have profited and/or obtained ill-gotten

1  gains. Mattel further admits that the evidence shows that Bryant worked on Bratz,
2  including on the document produced by Bryant bearing Bates serial number Bryant
3  00341, while he was a Mattel employee and as a result of that work and Bryant's
4  unlawful conduct, Mattel was damaged. However, the full extent of defendants'
5  profits and ill-gotten gains from Bratz as well as other facts relating to this request
6  for admission are unknown to Mattel at this time and is known only to defendants,
7  because defendants have not provided necessary discovery and have concealed
8  facts, in violation of Court Orders. Moreover, the subject of this request for
9  admission and the damages suffered by Mattel may be the subject of expert opinion
10  or testimony. Mattel therefore reserves the right to supplement or amend this
11  response at the time and in the manner required by the <u>Rules</u> and Court Orders.

12

13  **REQUEST FOR ADMISSION NO. 142:**

14  Admit that the drawing produced by BRYANT bearing Bates serial
15  number Bryant 00972 is not intellectual property for whose conversion YOU seek
16  damages.

17

18  **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 142:**

19  In addition to the foregoing general objections, which are incorporated
20  herein by reference, Mattel objects to this Request on the grounds that it is vague
21  and ambiguous. Mattel further objects to this Request on the grounds that Mattel
22  does not have sufficient information about the drawing produced by Bryant bearing
23  Bates number Bryant 00972 in order to frame a complete response. Mattel further
24  objects to this Request as unreasonably burdensome and premature in that the facts
25  necessary to determine the full nature and extent of Mattel's relief and damages from
26  defendants' acts or omissions are known by defendants and third parties associated
27  with defendants, but are not fully known by Mattel at this juncture because of
28  defendants' refusals to produce discovery.

**EXHIBIT 53
PAGE 1712**

1    Subject to and without waiving the foregoing general and specific

2 objections, Mattel admits that it seeks damages for defendants' theft and conversion

3 of, among other things, the Bratz brand, including without limitation all inventions,

4 concepts, ideas, drawings and works, which were created, made, improved,

5 conceived, reduced to practice or worked on by Bryant, in whole or in part, while

6 employed by Mattel, from which defendants have profited and/or obtained ill-gotten

7 gains. Mattel further admits that the evidence shows that Bryant worked on Bratz,

8 including on the document produced by Bryant bearing Bates serial number Bryant

9 00972, while he was a Mattel employee and as a result of that work and Bryant's

10 unlawful conduct, Mattel was damaged. However, the full extent of defendants'

11 profits and ill-gotten gains from Bratz as well as other facts relating to this request

12 for admission are unknown to Mattel at this time and is known only to defendants,

13 because defendants have not provided necessary discovery and have concealed

14 facts, in violation of Court Orders. Moreover, the subject of this request for

15 admission and the damages suffered by Mattel may be the subject of expert opinion

16 or testimony. Mattel therefore reserves the right to supplement or amend this

17 response at the time and in the manner required by the Rules and Court Orders.

18

19 **REQUEST FOR ADMISSION NO. 143:**

20    Admit that the drawing produced by BRYANT bearing Bates serial

21 number Bryant 01014 is not intellectual property for whose conversion YOU seek

22 damages.

**EXHIBIT 53**
**PAGE 1713**

23

24 **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 143:**

25    In addition to the foregoing general objections, which are incorporated

26 herein by reference, Mattel objects to this Request on the grounds that it is vague

27 and ambiguous. Mattel further objects to this Request on the grounds that Mattel

28 does not have sufficient information about the drawing produced by Bryant bearing

1  Bates number Bryant 01014 in order to frame a complete response.  Mattel further
2  objects to this Request as unreasonably burdensome and premature in that the facts
3  necessary to determine the full nature and extent of Mattel's relief and damages from
4  defendants' acts or omissions are known by defendants and third parties associated
5  with defendants, but are not fully known by Mattel at this juncture because of
6  defendants' refusals to produce discovery.

7  Subject to and without waiving the foregoing general and specific
8  objections, Mattel admits that it seeks damages for defendants' theft and conversion
9  of, among other things, the Bratz brand, including without limitation all inventions,
10  concepts, ideas, drawings and works, which were created, made, improved,
11  conceived, reduced to practice or worked on by Bryant, in whole or in part, while
12  employed by Mattel, from which defendants have profited and/or obtained ill-gotten
13  gains.  Mattel further admits that the evidence shows that Bryant worked on Bratz,
14  including on the document produced by Bryant bearing Bates serial number Bryant
15  01014, while he was a Mattel employee and as a result of that work and Bryant's
16  unlawful conduct, Mattel was damaged.  However, the full extent of defendants'
17  profits and ill-gotten gains from Bratz as well as other facts relating to this request
18  for admission are unknown to Mattel at this time and is known only to defendants,
19  because defendants have not provided necessary discovery and have concealed
20  facts, in violation of Court Orders.  Moreover, the subject of this request for
21  admission and the damages suffered by Mattel may be the subject of expert opinion
22  or testimony.  Mattel therefore reserves the right to supplement or amend this
23  response at the time and in the manner required by the Rules and Court Orders.

24

25  **REQUEST FOR ADMISSION NO. 144:**

26  Admit that the drawing produced by BRYANT bearing Bates serial
27  number Bryant 01116 is not intellectual property for whose conversion YOU seek
28  damages.

**EXHIBIT 53**
**PAGE 1714**

-139-
MATTEL'S AMENDED RESPONSES TO MGA'S SECOND SET OF REQUESTS FOR ADMISSIONS

EXHIBIT 53
PAGE 1715

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 144:**

In addition to the foregoing general objections, which are incorporated herein by reference, Mattel objects to this Request on the grounds that it is vague and ambiguous. Mattel further objects to this Request on the grounds that Mattel does not have sufficient information about the drawing produced by Bryant bearing Bates number Bryant 01116 in order to frame a complete response. Mattel further objects to this Request as unreasonably burdensome and premature in that the facts necessary to determine the full nature and extent of Mattel's relief and damages from defendants' acts or omissions are known by defendants and third parties associated with defendants, but are not fully known by Mattel at this juncture because of defendants' refusals to produce discovery.

Subject to and without waiving the foregoing general and specific objections, Mattel admits that it seeks damages for defendants' theft and conversion of, among other things, the Bratz brand, including without limitation all inventions, concepts, ideas, drawings and works, which were created, made, improved, conceived, reduced to practice or worked on by Bryant, in whole or in part, while employed by Mattel, from which defendants have profited and/or obtained ill-gotten gains. Mattel further admits that the evidence shows that Bryant worked on Bratz, including on the document produced by Bryant bearing Bates serial number Bryant 01116, while he was a Mattel employee and as a result of that work and Bryant's unlawful conduct, Mattel was damaged. However, the full extent of defendants' profits and ill-gotten gains from Bratz as well as other facts relating to this request for admission are unknown to Mattel at this time and is known only to defendants, because defendants have not provided necessary discovery and have concealed facts, in violation of Court Orders. Moreover, the subject of this request for admission and the damages suffered by Mattel may be the subject of expert opinion or testimony. Mattel therefore reserves the right to supplement or amend this response at the time and in the manner required by the Rules and Court Orders.

**REQUEST FOR ADMISSION NO. 145:**

Admit that the drawing produced by BRYANT bearing Bates serial number Bryant 01117 is not intellectual property for whose conversion YOU seek damages.

**EXHIBIT 53**
**PAGE 1716**

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 145:**

In addition to the foregoing general objections, which are incorporated herein by reference, Mattel objects to this Request on the grounds that it is vague and ambiguous. Mattel further objects to this Request on the grounds that Mattel does not have sufficient information about the drawing produced by Bryant bearing Bates number Bryant 01117 in order to frame a complete response. Mattel further objects to this Request as unreasonably burdensome and premature in that the facts necessary to determine the full nature and extent of Mattel's relief and damages from defendants' acts or omissions are known by defendants and third parties associated with defendants, but are not fully known by Mattel at this juncture because of defendants' refusals to produce discovery.

Subject to and without waiving the foregoing general and specific objections, Mattel admits that it seeks damages for defendants' theft and conversion of, among other things, the Bratz brand, including without limitation all inventions, concepts, ideas, drawings and works, which were created, made, improved, conceived, reduced to practice or worked on by Bryant, in whole or in part, while employed by Mattel, from which defendants have profited and/or obtained ill-gotten gains. Mattel further admits that the evidence shows that Bryant worked on Bratz, including on the document produced by Bryant bearing Bates serial number Bryant 01117, while he was a Mattel employee and as a result of that work and Bryant's unlawful conduct, Mattel was damaged. However, the full extent of defendants' profits and ill-gotten gains from Bratz as well as other facts relating to this request for admission are unknown to Mattel at this time and is known only to defendants,

1  because defendants have not provided necessary discovery and have concealed

2  facts, in violation of Court Orders. Moreover, the subject of this request for

3  admission and the damages suffered by Mattel may be the subject of expert opinion

4  or testimony. Mattel therefore reserves the right to supplement or amend this

5  response at the time and in the manner required by the Rules and Court Orders.

6

7  **REQUEST FOR ADMISSION NO. 146:**

8        Admit that the drawing produced by BRYANT bearing Bates serial

9  number Bryant 01118 is not intellectual property for whose conversion YOU seek

10  damages.

**EXHIBIT 53**
**PAGE 1717**

11

12  **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 146:**

13        In addition to the foregoing general objections, which are incorporated

14  herein by reference, Mattel objects to this Request on the grounds that it is vague

15  and ambiguous. Mattel further objects to this Request on the grounds that Mattel

16  does not have sufficient information about the drawing produced by Bryant bearing

17  Bates number Bryant 01118 in order to frame a complete response. Mattel further

18  objects to this Request as unreasonably burdensome and premature in that the facts

19  necessary to determine the full nature and extent of Mattel's relief and damages from

20  defendants' acts or omissions are known by defendants and third parties associated

21  with defendants, but are not fully known by Mattel at this juncture because of

22  defendants' refusals to produce discovery.

23        Subject to and without waiving the foregoing general and specific

24  objections, Mattel admits that it seeks damages for defendants' theft and conversion

25  of, among other things, the Bratz brand, including without limitation all inventions,

26  concepts, ideas, drawings and works, which were created, made, improved,

27  conceived, reduced to practice or worked on by Bryant, in whole or in part, while

28  employed by Mattel, from which defendants have profited and/or obtained ill-gotten

-142-

1 gains. Mattel further admits that the evidence shows that Bryant worked on Bratz,
2 including on the document produced by Bryant bearing Bates serial number Bryant
3 01118, while he was a Mattel employee and as a result of that work and Bryant's
4 unlawful conduct, Mattel was damaged. However, the full extent of defendants'
5 profits and ill-gotten gains from Bratz as well as other facts relating to this request
6 for admission are unknown to Mattel at this time and is known only to defendants,
7 because defendants have not provided necessary discovery and have concealed
8 facts, in violation of Court Orders. Moreover, the subject of this request for
9 admission and the damages suffered by Mattel may be the subject of expert opinion
10 or testimony. Mattel therefore reserves the right to supplement or amend this
11 response at the time and in the manner required by the <u>Rules</u> and Court Orders.

12

13 **REQUEST FOR ADMISSION NO. 183:**

14             Admit that MATTEL introduced "My Scene" to compete with BRATZ.

15

16 **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 183:**

17             In addition to the foregoing general objections, which are incorporated
18 herein by reference, Mattel objects to this Request on the grounds that it calls for the
19 disclosure of information subject to the attorney-client privilege, the attorney work-
20 product doctrine, or any other applicable privileges. Mattel further objects to this
21 Request as compound. Mattel further objects to this Request on the grounds that it
22 is undefined, oppressive, overbroad and unduly burdensome in that it seeks an
23 admission for each "image, character, logo, doll, toy, accessory, product, packaging,
24 or other thing or matter that is or has ever been manufactured, marketed or sold by
25 MGA, or others under license, as part of a line of goods or merchandise commonly
26 known as, or sold and marketed under the 'Bratz' trademark or trade dress," and in
27 that "My Scene" potentially includes drawings, prototypes, photographs, ideas,

28

209/2238755.6

**EXHIBIT 53**
**PAGE 1718**

MATTEL'S AMENDED RESPONSES TO MGA'S SECOND SET OF REQUESTS FOR ADMISSIONS

1   dolls, concepts, packaging and other matters within the broad spectrum of the MY
2   SCENE line of products, and the intended aspects of the line is unspecified.

3          Subject to and without waiving the foregoing general and specific
4   objections, Mattel denies that it introduced "My Scene" solely to compete with
5   Bratz.  Mattel admits that one of the reasons that it introduced "My Scene" was to
6   compete with Bratz and other fashion doll products in the marketplace.

7

8   **REQUEST FOR ADMISSION NO. 184:**

9          Admit that MATTEL's decision to introduce "My Scene" was made
10  after July, 2001.

11

12  **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 184:**

13         In addition to the foregoing general objections, which are incorporated
14  herein by reference, Mattel objects to this Request on the grounds that it calls for the
15  disclosure of information subject to the attorney-client privilege, the attorney work-
16  product doctrine, or any other applicable privileges.  Mattel further objects to this
17  Request as compound.  Mattel further objects to this Request on the grounds that it
18  is undefined, oppressive, overbroad and unduly burdensome in that it seeks an
19  admission for each "image, character, logo, doll, toy, accessory, product, packaging,
20  or other thing or matter that is or has ever been manufactured, marketed or sold by
21  MGA, or others under license, as part of a line of goods or merchandise commonly
22  known as, or sold and marketed under the 'Bratz' trademark or trade dress," and in
23  that "My Scene" potentially includes drawings, prototypes, photographs, ideas,
24  dolls, concepts, packaging and other matters within the broad spectrum of the MY
25  SCENE line of products, and the intended aspects of the line is unspecified.

26         Subject to and without waiving the foregoing general and specific
27  objections, Mattel denies that its decision to introduce "My Scene" was only made

28

**EXHIBIT 53**
**PAGE 1719**

MATTEL'S AMENDED RESPONSES TO MGA'S SECOND SET OF REQUESTS FOR ADMISSIONS

1  after July, 2001.  To the contrary, Mattel had sought to introduce dolls in the older

2  girls' segment years before MGA was involved with fashion dolls.

3

4  **REQUEST FOR ADMISSION NO. 185:**

5        Admit that "My Scene" is a line of fashion dolls.

6

7  **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 185:**

8        In addition to the foregoing general objections, which are incorporated

9  herein by reference, Mattel objects to this Request as compound.  Mattel further

10  objects to this Request on the grounds that it is undefined, oppressive, overbroad

11  and unduly burdensome in that "My Scene" potentially includes drawings,

12  prototypes, photographs, ideas, dolls, concepts, packaging and other matters within

13  the broad spectrum of the MY SCENE line of products, and the intended aspects of

14  the line is unspecified.

15        Subject to and without waiving the foregoing general and specific

16  objections, Mattel admits that the "My Scene" line includes fashion dolls.

17

18  **REQUEST FOR ADMISSION NO. 186:**            **EXHIBIT 53**
                                                   **PAGE 1720**

19        Admit that "My Scene" is a derivation of "Toon Teens."

20

21  **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 186:**

22        In addition to the foregoing general objections, Mattel objects to this

23  Request on the grounds that it calls for information that is not relevant to the subject

24  matter of the pending action, nor reasonably calculated to lead to the discovery of

25  admissible evidence.  Mattel further objects to this Request on the grounds that the

26  Request is overbroad, unduly burdensome, and harassing.  Mattel further objects to

27  this Request as compound.  Mattel further objects to this Request on the grounds

28  that it is undefined, oppressive, overbroad and unduly burdensome in that "My

1  Scene" potentially includes drawings, prototypes, photographs, ideas, dolls,
2  concepts, packaging and other matters within the broad spectrum of the MY SCENE
3  line of products, and the intended aspects of the line is unspecified, as is the
4  intended aspects of TOON TEENS.

5  Subject to and without waiving the foregoing general and specific
6  objections, Mattel admits that the artist who created "Toon Teens" also created the
7  original designs and drawings for the MY SCENE dolls, among other aspects of the
8  MY SCENE line. Mattel otherwise denies this request.

9

10  **REQUEST FOR ADMISSION NO. 187:**

11  Admit that "My Scene" is not a derivation of "Toon Teens."

12

13  **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 187:**

14  In addition to the foregoing general objections, Mattel objects to this
15  Request on the grounds that it calls for information that is not relevant to the subject
16  matter of the pending action, nor reasonably calculated to lead to the discovery of
17  admissible evidence. Mattel further objects to this Request on the grounds that the
18  Request is overbroad, unduly burdensome, and harassing. Mattel further objects to
19  this Request as compound. Mattel further objects to this Request on the grounds
20  that it is undefined, oppressive, overbroad and unduly burdensome in that "My
21  Scene" potentially includes drawings, prototypes, photographs, ideas, dolls,
22  concepts, packaging and other matters within the broad spectrum of the MY SCENE
23  line of products, and the intended aspects of the line is unspecified, as is the
24  intended aspects of TOON TEENS.

25  Subject to and without waiving the foregoing general and specific
26  objections, Mattel admits that the artist who created "Toon Teens" also created the
27  original designs and drawings for the MY SCENE dolls, among other aspects of the
28  MY SCENE line and otherwise denies this request.

**EXHIBIT 53**
**PAGE 1721**

MATTEL'S AMENDED RESPONSES TO MGA'S SECOND SET OF REQUESTS FOR ADMISSIONS

EXHIBIT 53
PAGE 1722

1 **REQUEST FOR ADMISSION NO. 194:**

2       Admit that YOU will seek to prove in this case that some element of

3 "My Scene" is substantially similar to the BRATZ INTELLECTUAL PROPERTY.

4

5 **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 194:**

6       In addition to the foregoing general objections, which are incorporated

7 herein by reference, Mattel objects to this Request on the grounds that it seeks

8 information that is not relevant to the claims or defenses in this action, and is not

9 reasonably calculated to lead to the discovery of admissible evidence. Mattel

10 further objects to this Request on the grounds that the Request is overbroad, unduly

11 burdensome, and harassing. Mattel further objects to this Request on the grounds

12 that it is vague and ambiguous, including, without limitation, the term "Bratz

13 Intellectual Property." Mattel further objects to the Request as vague and

14 ambiguous in its use of "substantially similar" in this context, including in particular

15 because defendant fails to specify whether it is a reference to a copyright

16 infringement term of art or whether it is being given some other meaning, and its use

17 of "some element" in this context, including in particular because it is unclear

18 whether the Request intends to include matters that may be used as evidence. The

19 Request is further vague and ambiguous, overbroad and unduly burdensome in its

20 use of "My Scene," including in particular whether it is referring to drawings,

21 prototypes, photographs, ideas, concepts or any other specified matter in connection

22 with the broad spectrum of MY SCENE line of products. Mattel further objects to

23 this Request as compound. Mattel further objects to this Request on the grounds

24 that it is undefined, oppressive, overbroad and unduly burdensome.

25       Subject to and without waiving the foregoing objections, Mattel denies

26 that it will seek to prove that "My Scene" is substantially similar to the original or

27 first generation Bratz dolls. However, Mattel admits that it may seek to prove that

28 some elements of "My Scene" are similar to other aspects of the Bratz line as a

1  result of defendants' misconduct which gives rise to Mattel's claims and
2  counterclaims, including but not limited to, misappropriation of Mattel's trade
3  secrets.

4

5  **REQUEST FOR ADMISSION NO. 195:**

6          Admit that YOU will not seek to prove in this case that some element
7  of "My Scene" is substantially similar to the BRATZ INTELLECTUAL
8  PROPERTY.

9

10 **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 195:**

11         In addition to the foregoing general objections, which are incorporated
12 herein by reference, Mattel objects to this Request on the grounds that it seeks
13 information that is not relevant to the claims or defenses in this action, and is not
14 reasonably calculated to lead to the discovery of admissible evidence.  Mattel
15 further objects to this Request on the grounds that the Request is overbroad, unduly
16 burdensome, and harassing.  Mattel further objects to this Request on the grounds
17 that it is vague and ambiguous, including, without limitation, the term "Bratz
18 Intellectual Property."  Mattel further objects to the Request as vague and
19 ambiguous in its use of "substantially similar" in this context, including in particular
20 because defendant fails to specify whether it is a reference to a copyright
21 infringement term of art or whether it is being given some other meaning, and its use
22 of "some element" in this context, including in particular because it is unclear
23 whether the Request intends to include matters that may be used as evidence.  The
24 Request is further vague and ambiguous, overbroad and unduly burdensome in its
25 use of "My Scene," including in particular whether it is referring to drawings,
26 prototypes, photographs, ideas, concepts or any other specified matter in connection
27 with the broad spectrum of MY SCENE line of products.  Mattel further objects to

28

EXHIBIT 53
PAGE 1723
-148-

209/2238755.6

MATTEL'S AMENDED RESPONSES TO MGA'S SECOND SET OF REQUESTS FOR ADMISSIONS

1 | this Request as compound. Mattel further objects to this Request on the grounds
2 | that it is undefined, oppressive, overbroad and unduly burdensome.

3 |        Subject to and without waiving the foregoing objections, Mattel admits
4 | that it will not seek to prove that "My Scene" is substantially similar to the original
5 | or first generation Bratz dolls. However, Mattel further admits that it may seek to
6 | prove that some elements of "My Scene" are similar to other aspects of the Bratz
7 | line as a result of defendants' misconduct which gives rise to Mattel's claims and
8 | counterclaims, including but not limited to, misappropriation of Mattel's trade
9 | secrets.

10

11 | **REQUEST FOR ADMISSION NO. 200:**

12 |        Admit that elements of "roller-blading Barbie" is intellectual property
13 | whose conversion is one basis of YOUR damage requests.

**EXHIBIT 53**
**PAGE 1724**

14

15 | **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 200:**

16 |        In addition to the foregoing general objections, which are incorporated
17 | herein by reference, Mattel objects to this Request on the grounds that it is
18 | compound, and vague and ambiguous. Among other things, the Request is vague
19 | and ambiguous in its use of "conversion" in this context, including in particular
20 | because defendant fails to specify whether it is a reference to Mattel's conversion
21 | claim in the Complaint or whether it is being given some other meaning, and its use
22 | of "basis of YOUR damages requests" in this context, including in particular
23 | because it is unclear whether the Request intends to include matters that may be
24 | used as evidence relevant to damages. The Request is further vague and ambiguous,
25 | overbroad and unduly burdensome in its use of "roller-blading Barbie" and
26 | "elements," including in particular whether it is referring to drawings, prototypes,
27 | photographs, ideas, concepts or any other specified matter in connection with this
28 | undefined matter. Mattel further objects to this Request as unreasonably

1  burdensome and premature in that the facts necessary to determine the full nature
2  and extent of Mattel's relief and damages from defendants' acts or omissions are
3  known by defendants and third parties associated with defendants, but are not
4  known by Mattel at this juncture because of defendants' refusals to produce
5  discovery. In particular, defendants continue to conceal the full nature, timing and
6  extent of Bryant's work on and the origins of the Bratz project and other MGA-
7  related projects relevant to this action.

8          Subject to and without waiving the foregoing objections, Mattel admits
9  that "roller-blading Barbie" is a precursor to "Toon Teens" designs and art work,
10  which Mattel understands this request to relate to. As explained more fully in
11  Mattel's Response to Interrogatory No. 5, Mattel denies it is asserting claims for
12  infringement or conversion of Toon Teens copyrights in this action, but admits that
13  Bryant's and other individuals' exposure to Toon Teens designs (and the resulting
14  similarity of those Bryant's works to Toon Teens, as well as elements in Mattel's
15  DIVA STARZ project) while they were Mattel employees tends to establish that
16  Bryant created Bratz works while he was a Mattel employee, and improperly
17  converted those Bratz works.

18

19  **REQUEST FOR ADMISSION NO. 201:**

EXHIBIT 53
PAGE 1725

20          Admit that elements of "roller-blading Barbie" is not intellectual
21  property whose conversion is one basis of YOUR damage requests.

22

23  **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 201:**

24          In addition to the foregoing general objections, which are incorporated
25  herein by reference, Mattel objects to this Request on the grounds that it seeks
26  information that is not relevant to the claims or defenses in this action, and is not
27  reasonably calculated to lead to the discovery of admissible evidence. Mattel
28  further objects to this Request on the grounds that it is compound, and vague and

209/2238755.6

-150-

1  ambiguous.  Among other things, the Request is vague and ambiguous in its use of
2  "conversion" in this context, including in particular because defendant fails to
3  specify whether it is a reference to Mattel's conversion claim in the Complaint or
4  whether it is being given some other meaning, and its use of "basis of YOUR
5  damages requests" in this context, including in particular because it is unclear
6  whether the Request intends to include matters that may be used as evidence
7  relevant to damages.  The Request is further vague and ambiguous, overbroad and
8  unduly burdensome in its use of "roller-blading Barbie" and "elements," including
9  in particular whether it is referring to drawings, prototypes, photographs, ideas,
10  concepts or any other specified matter in connection with this undefined matter.
11  Mattel further objects to this Request as unreasonably burdensome and premature in
12  that the facts necessary to determine the full nature and extent of Mattel's relief and
13  damages from defendants' acts or omissions are known by defendants and third
14  parties associated with defendants, but are not known by Mattel at this juncture
15  because of defendants' refusals to produce discovery.  In particular, defendants
16  continue to conceal the full nature, timing and extent of Bryant's work on and the
17  origins of the Bratz project and other MGA-related projects relevant to this action.

18        Subject to and without waiving the foregoing objections, Mattel admits
19  that "roller-blading Barbie" is a precursor to "Toon Teens" designs and art work,
20  which Mattel understands this request to relate to.  As explained more fully in
21  Mattel's Responses to Interrogatory No. 5, Mattel states that it is not asserting claims
22  for infringement or conversion of Toon Teens copyrights in this action, but admits
23  that Bryant's and other individuals' exposure to Toon Teens designs (and the
24  resulting similarity of those Bryant's works to Toon Teens as well as elements in
25  Mattel's DIVA STARZ project) while they were Mattel employees tends to establish
26  that Bryant created Bratz works while he was a Mattel employee, and converted
27  those Bratz works.

28

**EXHIBIT 53**
**PAGE 1726**

MATTEL'S AMENDED RESPONSES TO MGA'S SECOND SET OF REQUESTS FOR ADMISSIONS

1  **REQUEST FOR ADMISSION NO. 202:**

2      Admit that "Diva Starz" is intellectual property whose conversion is

3  one basis of YOUR damage requests.

4

5  **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 202:**

6      In addition to the foregoing general objections, which are incorporated

7  herein by reference, Mattel objects to this Request on the grounds that it seeks

8  information that is not relevant to the claims or defenses in this action, and is not

9  reasonably calculated to lead to the discovery of admissible evidence.  Mattel

10 further objects to this Request on the grounds that it is compound, and vague and

11 ambiguous.  Among other things, the Request is vague and ambiguous in its use of

12 "conversion" in this context, including in particular because defendant fails to

13 specify whether it is a reference to Mattel's conversion claim in the Complaint or

14 whether it is being given some other meaning, and its use of "basis of YOUR

15 damages requests" in this context, including in particular because it is unclear

16 whether the Request intends to include matters that may be used as evidence

17 relevant to damages.  The Request is further vague and ambiguous, overbroad and

18 unduly burdensome in its use of "Diva Starz" and "intellectual property," including

19 in particular whether it is referring to drawings, prototypes, photographs, ideas,

20 concepts or any other specified matter in connection with this undefined matter.

21 Mattel further objects to this Request as unreasonably burdensome and premature in

22 that the facts necessary to determine the full nature and extent of Mattel's relief and

23 damages from defendants' acts or omissions are known by defendants and third

24 parties associated with defendants, but are not known by Mattel at this juncture

25 because of defendants' refusals to produce discovery.  In particular, defendants

26 continue to conceal the full nature, timing and extent of Bryant's work on and the

27 origins of the Bratz project and other MGA-related projects relevant to this action.

28

**EXHIBIT 53**
**PAGE 1727**

209/2238755.6

-152-

MATTEL'S AMENDED RESPONSES TO MGA'S SECOND SET OF REQUESTS FOR ADMISSIONS

1           Subject to and without waiving the foregoing objections, and as
2  explained more fully in Mattel's Response to Interrogatory No. 5, Mattel denies it is
3  asserting claims for infringement or conversion of DIVA STARZ copyrights in this
4  action, but admits that Paula Garcia's, Bryant's and other individuals' exposure to
5  aspects of DIVA STARZ, including drawings, works, designs and names, while
6  they were Mattel employees tends to establish that Bryant created Bratz works
7  (including without limitation the name "Bratz") while he was a Mattel employee and
8  not in 1998 as he testified.

9

10  **REQUEST FOR ADMISSION NO. 203:**

11          Admit that "Diva Starz" is not intellectual property for whose
12  conversion YOU seek damages.

**EXHIBIT 53**
**PAGE 1728**

13

14  **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 203:**

15          In addition to the foregoing general objections, which are incorporated
16  herein by reference, Mattel objects to this Request on the grounds that it seeks
17  information that is not relevant to the claims or defenses in this action, and is not
18  reasonably calculated to lead to the discovery of admissible evidence. Mattel
19  further objects to this Request on the grounds that it is compound, and vague and
20  ambiguous. Among other things, the Request is vague and ambiguous in its use of
21  "conversion" in this context, including in particular because defendant fails to
22  specify whether it is a reference to Mattel's conversion claim in the Complaint or
23  whether it is being given some other meaning. The Request is further vague and
24  ambiguous, overbroad and unduly burdensome in its use of "Diva Starz" and
25  "intellectual property," including in particular whether it is referring to drawings,
26  prototypes, photographs, ideas, concepts or any other specified matter in connection
27  with this undefined matter. Mattel further objects to this Request as unreasonably
28  burdensome and premature in that the facts necessary to determine the full nature

209/2238755.6

1  and extent of Mattel's relief and damages from defendants' acts or omissions are

2  known by defendants and third parties associated with defendants, but are not

3  known by Mattel at this juncture because of defendants' refusals to produce

4  discovery.  In particular, defendants continue to conceal the full nature, timing and

5  extent of Bryant's work on and the origins of the Bratz project and other MGA-

6  related projects relevant to this action.

7        Subject to and without waiving the foregoing objections, and as

8  explained more fully in Mattel's Response to Interrogatory No. 5, Mattel denies it is

9  asserting claims for infringement or conversion of DIVA STARZ copyrights in this

10  action, but admits that Paula Garcia's, Bryant's and other individuals' exposure to

11  aspects of DIVA STARZ, including drawings, works, designs and names, while

12  they were Mattel employees tends to establish that Bryant created Bratz works

13  (including without limitation the name "Bratz") while he was a Mattel employee and

14  not in 1998 as he testified.

15

16  **REQUEST FOR ADMISSION NO. 204:**

17        Admit that YOU will seek to prove in this case that some element of

18  "Diva Starz" is substantially similar to BRATZ.

**EXHIBIT 53**
**PAGE 1729**

19

20  **SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 204:**

21        In addition to the foregoing general objections, which are incorporated

22  herein by reference, Mattel objects to this Request on the grounds that it seeks

23  information that is not relevant to the claims or defenses in this action, and is not

24  reasonably calculated to lead to the discovery of admissible evidence.  Mattel

25  further objects to this Request on the grounds that it is vague and ambiguous.

26  Mattel further objects to the Request as vague and ambiguous in its use of

27  "substantially similar" in this context, including in particular because defendant fails

28  to specify whether it is a reference to a copyright infringement term of art or

1  whether it is being given some other meaning, and its use of "some element" in this
2  context, including in particular because it is unclear whether the Request intends to
3  include matters that may be used as evidence.  The Request is further vague and
4  ambiguous, overbroad and unduly burdensome in its use of "Bratz" and "Diva
5  Starz," including in particular whether it is referring to drawings, prototypes,
6  photographs, ideas, concepts or any other specified matter in connection with the
7  broad spectrum of products.  Mattel further objects to this Request as compound.
8  Mattel further objects to this Request on the grounds that it is undefined, oppressive,
9  overbroad and unduly burdensome in that it seeks an admission for each "image,
10  character, logo, doll, toy, accessory, product, packaging, or other thing or matter that
11  is or has ever been manufactured, marketed or sold by MGA, or others under
12  license, as part of a line of goods or merchandise commonly known as, or sold and
13  marketed under the 'Bratz' trademark or trade dress," with very few exceptions.

14           Subject to and without waiving the foregoing objections, and as
15  explained more fully in Mattel's Response to Interrogatory No. 5, Mattel denies it is
16  asserting claims for infringement or conversion of DIVA STARZ copyrights in this
17  action, but admits that Bryant's, Paula Garcia's and other individuals' exposure to
18  aspects of DIVA STARZ, including drawings, works, designs and names, while
19  they were Mattel employees tends to establish that Bryant created Bratz works
20  (including without limitation the name "Bratz") while he was a Mattel employee and
21  not in 1998 as he testified.

22

23  **REQUEST FOR ADMISSION NO. 205:**

24           Admit that YOU will not seek to prove in this case that some element
25  of "Diva Starz" is substantially similar to BRATZ.

26

27

28

EXHIBIT 53
PAGE 1730

209/2238755.6

-155-

EXHIBIT 53
PAGE 1731

**SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION NO. 205:**

1

2          In addition to the foregoing general objections, which are incorporated

3   herein by reference, Mattel objects to this Request on the grounds that it seeks

4   information that is not relevant to the claims or defenses in this action, and is not

5   reasonably calculated to lead to the discovery of admissible evidence.  Mattel

6   further objects to this Request on the grounds that it is vague and ambiguous.

7   Mattel further objects to the Request as vague and ambiguous in its use of

8   "substantially similar" in this context, including in particular because defendant fails

9   to specify whether it is a reference to a copyright infringement term of art or

10  whether it is being given some other meaning, and its use of "some element" in this

11  context, including in particular because it is unclear whether the Request intends to

12  include matters that may be used as evidence.  The Request is further vague and

13  ambiguous, overbroad and unduly burdensome in its use of "Bratz" and "Diva

14  Starz," including in particular whether it is referring to drawings, prototypes,

15  photographs, ideas, concepts or any other specified matter in connection with the

16  broad spectrum of products.  Mattel further objects to this Request as compound.

17  Mattel further objects to this Request on the grounds that it is undefined, oppressive,

18  overbroad and unduly burdensome in that it seeks an admission for each "image,

19  character, logo, doll, toy, accessory, product, packaging, or other thing or matter that

20  is or has ever been manufactured, marketed or sold by MGA, or others under

21  license, as part of a line of goods or merchandise commonly known as, or sold and

22  marketed under the 'Bratz' trademark or trade dress," with very few exceptions.

23          Subject to and without waiving the foregoing objections, and as

24  explained more fully in Mattel's Response to Interrogatory No. 5, Mattel denies it is

25  asserting claims for infringement or conversion of DIVA STARZ copyrights in this

26  action, but admits that Paula Garcia's, Bryant's and other individuals' exposure to

27  aspects of DIVA STARZ, including drawings, works, designs and names, while

28  they were Mattel employees tends to establish that Bryant created Bratz works

209/2238755.6

-156-

1  (including without limitation the name "Bratz") while he was a Mattel employee and

2  not in 1998 as he testified.

3

4  DATED:  December 3, 2007        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

5

6                                  By _B. Dylan Proctor_

7                                  B. Dylan Proctor
                                   Attorneys for Mattel, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 53**
**PAGE 1732**

209/2238755.6

MATTEL'S AMENDED RESPONSES TO MGA'S SECOND SET OF REQUESTS FOR ADMISSIONS

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

On December 4, 2007, I served true copies of the following document(s) described as **MATTEL, INC.'S AMENDED AND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S SECOND SET OF REQUESTS FOR ADMISSION** on the parties in this action as follows:

Thomas J. Nolan, Esq.
**Skadden, Arps, Slate, Meagher &**
 **Flom LLP**
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

Mark E. Overland, Esq.
David C. Scheper, Esq.
Alexander H. Cote, Esq.
**Overland Borenstein Scheper &**
**Kim, LLP**
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071

John W. Keker, Esq.
Michael H. Page, Esq.
Christina M. Anderson, Esq.
**Keker & Van Nest, LLP**
710 Sansome Street
San Francisco, CA 94111

[√]    **BY MAIL:** I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

Executed on December 4, 2007, at Los Angeles, California.

Tamar Buchakjian

**EXHIBIT 53**
**PAGE 1733**

07209/2312830.1

**EXHIBIT 54**

CALENDARED

MAR 1 0 2008

RECEIVED

1  THOMAS J. NOLAN (Bar No. 66992)
   (tnolan@skadden.com)
2  JASON D. RUSSELL (Bar No. 169219)
   (jrussell@skadden.com)
3  MARINA V. BOGORAD (Bar No. 217524)
   (mbogorad@skadden.com)
4  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue
5  Los Angeles, CA  90071-3144
   Tel.: (213) 687-5000 / Fax: (213) 687-5600
6
   KENNETH PLEVAN (admitted *pro hac vice*)
7  (kplevan@skadden.com)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
8  Four Times Square, New York, NY 10046
   Tel.: (212) 735-3000 / Fax: (212) 735-2000
9
   Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
10 MGAE de Mexico, S.R.L. de C.V., and Isaac Larian

11              UNITED STATED DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13                   EASTERN DIVISION

14 CARTER BRYANT, an individual,      ) CASE NO. CV 04-9049 SGL (RNBx)
                                      ) Consolidated with Case No. 04-9059
15              Plaintiff,            ) and Case No. 05-2727
                                      )
16      v.                            ) Honorable Stephen G. Larson
                                      )
17 MATTEL,    INC.,   a   Delaware    ) MGA PARTIES' CORRECTED
   corporation,                       ) NOTICE OF MOTION FOR PARTIAL
18                                    ) SUMMARY JUDGMENT, MOTION
                Defendant.            ) AND MEMORANDUM OF POINTS
19                                    ) AND AUTHORITIES IN SUPPORT
                                      ) THEREOF;
20 AND CONSOLIDATED ACTIONS          )
                                      ) PREVIOUSLY SUBMITTED UNDER
21                                    ) SEPARATE COVER:
                                        1. [PROPOSED] STATEMENT OF
22                                         UNCONTROVERTED FACTS
                                           AND CONCLUSIONS OF LAW;
23 **FILED  UNDER  SEAL  PURSUANT**      2. REQUEST FOR JUDICIAL
   **TO PROTECTIVE ORDER**                 NOTICE;
24                                      3. DECLARATION OF JASON D.
                                           RUSSELL;
25                                      4. DECLARATION OF ISAAC
                                           LARIAN;
26                                      5. [PROPOSED] ORDER; and
                                        6. PROOF OF SERVICE.
27
28                                    Hearing Date: April 23, 2008      **EXHIBIT 54**
                                      Time: 10:00 a.m.                  **PAGE 1734**

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2

3      PLEASE TAKE NOTICE that on April 23, 2008 at 10 a.m., or as soon thereafter as

4  the matter may be heard by the Honorable Stephen G. Larson in the above-referenced court

5  located at 3470 Twelfth St., Riverside, California 92501, Defendants MGA Entertainment,

6  Inc., MGA Entertainment (HK) Limited, MGAE de Mexico, S.R.L. de C.V. (collectively,

7  "MGA"), and Isaac Larian (together with MGA, the "MGA Parties"), will and hereby do

8  move pursuant to Federal Rule of Civil Procedure 56 for partial summary judgment of

9  plaintiff Mattel's First, Sixth, Eighth, Tenth, Eleventh, Twelfth, and Thirteenth

10 counterclaims in its Second Amended Answer and Counterclaims dated July 12, 2007 on

11 the following grounds:

12      First, all Mattel's counterclaims are time-barred because Mattel brought them more

13 than five and a half years after it was placed on notice of its potential claims;

14      Second, Mattel's interference with contract, conversion and unfair competition claims

15 (its Sixth, Eleventh, and Twelfth counterclaims, respectively) are preempted by the

16 Copyright Act, as a matter of law;

17      Third, Mattel's statutory and common law unfair competition claims (the Twelfth

18 counterclaim) fail as a matter of law because Mattel cannot establish that MGA's or

19 Larian's conduct was unfair, fraudulent, or unlawful;

20      Fourth, Mattel's claim for intentional interference with contract (its Sixth

21 Counterclaim) fails because there is no evidence of breach, intent, or inducement;

22      Fifth, Mattel's claim for aiding and abetting a breach of fiduciary duty allegedly

23 owed by defendant Carter Bryant to Mattel (its Eighth Counterclaim) fails because Bryant,

24 as a matter of law, did not owe such a duty to Mattel.

25      This Motion is made on the ground that "the pleadings, depositions, answers to

26 interrogatories, and admissions on file, together with the affidavits . . . show that there is no

27 genuine issue as to any material fact and that [the MGA Parties are] entitled to a judgment

28 as a matter of law." Fed. R. Civ. P. 56(c).

**EXHIBIT 54**
**PAGE 1735**

1   'no.'"  (UF ¶ 14.)  As Larian explained, "I wanted to make sure when we w[ere] there that
2   this idea that he was showing us was nothing that was at Mattel or Mattel had done." (Id.)
3   For his part, Bryant was aware he had signed a confidentiality agreement when he returned
4   to Mattel in January of 1999, but considered the BRATZ to be "a project that I had created
5   while I was not employed with Mattel, so I didn't think there would be a problem." (UF ¶
6   15.)   Larian was impressed and wanted to acquire the rights to BRATZ, which Bryant
7   insisted on licensing to MGA. (Ex. 1 (Bryant) at 184:22-24.)

8   Negotiations ensued between the parties.   MGA requested copies of Bryant's
9   employment contract with Mattel because MGA "wanted to have MGA's attorneys take a
10   look at it to see if there would be any potential problems[.]"   (UF ¶ 16.)   Specifically,
11   MGA's attorney David Rosenbaum wanted to see the document because he wanted to
12   insure "that the material that MGA was acquiring fell outside the scope of any ownership or
13   other obligation to Mattel." (UF ¶¶ 17-18.) But Bryant was unable to provide a copy of the
14   document in response to that request because he did not have a copy in his possession. (UF
15   ¶ 19.)

16   Unable to review a copy of Bryant's Inventions Agreement, Rosenbaum sought
17   assurances from Bryant's attorney, Anne Wang, that Bryant's development of the BRATZ
18   concept fell outside the scope of Bryant's employment with Mattel. (UF ¶ 20.) In response,
19   Bryant and Wang, an experienced patent attorney, assured MGA that Bryant "had created
20   the doll at a time period separate from his employment and that it was his own separate
21   creation."  (UF ¶¶ 15, 20-22.)[6]  In the contract between MGA and Bryant, Bryant warranted

---

22   [6]   See Ex. 7 (Wang) at 47:23-48:18 (Wang told Rosenbaum "that Carter was the creator and
23   the owner" and "that he had created the doll at a time period separate from his employment and
     that it was his own separate creation"), 53:21-54:9 (agreeing "that no specific dates of creation
24   were discussed but that it was all discussed in terms of relative to [Bryant's] employment at Mattel
     in a sense that [Wang] represent[ed] that [Wang] w[as] satisfied that it had been created before that
25   employment"); Ex. 1 (Bryant) at 22:2-3 ("I told MGA ... that BRATZ were my creation"), 24:9-12
     ("I owned the rights to the BRATZ and felt perfectly comfortable assigning them to MGA"),
26   267:11-268:10; Ex. 5 (Larian) at 82:24-83:5 (Bryant "told us -- and we verified this later on – that
     he had done this in Missouri in 1998, when he was not working for anybody"), 87:13-14, 91:19-21.
27   See also Ex. 6 (Rosenbaum) at 80:3-12 (Wang "advised me that the work that Bryant had done in
     developing . . . 'the concept' was done outside the scope of his employment with Mattel and had
28   been done prior to his employment with Mattel"), 82:15-18 (Wang told Rosenbaum "that she had
     reviewed the chronology of his development of the work product and was satisfied that it fell

EXHIBIT 54
PAGE 1736

1  that his contracting with MGA did not violate or breach any existing contract with a third

2  party, that the concept and drawings were "original," did not infringe on any third party's

3  contractual or intellectual property rights, were the exclusive property of MGA, and

4  indemnified MGA should a third party claim ownership of the BRATZ concept or drawings.

5  (UF ¶¶ 14, 23.) Bryant signed the MGA contract on October 4, 2000. (UF ¶ 23.)

6  MGA and Larian expected that on signing a contract with MGA, Bryant would

7  immediately resign from Mattel and begin working "full time" on BRATZ. (UF ¶¶ 24-26.)

8  Indeed, Larian instructed Bryant to quit his job at Mattel immediately because Bryant

9  needed to work "16 hours a day on this STARTING NOW and NOTHING ELSE." (UF ¶¶

10  24- 25.)

11  **2.  Mattel Becomes Aware of MGA's Ownership of BRATZ in February
    2001 and Suspects Bryant's Involvement In BRATZ Design**

12  **(a)  February 2001 – Mattel sees the BRATZ at the Toy Fair**

13  When he left Mattel in October 2000, Bryant told Mattel, and Mattel understood, that

14  he was leaving to work on a line of dolls. (UF ¶¶ 27-28.) His supervisors suspected he was

15  going to work for a competitor (UF ¶ 29), and the rumor within Mattel was that the

16  competitor was MGA. (UF ¶ 30.) Soon thereafter, beginning in early 2001, MGA unveiled

17  BRATZ prototypes at a series of toy fairs, first in Hong Kong in January 2001 and then in

18  New York in February 2001.  (UF ¶¶ 31-32.)  Immediately following these initial

19  exhibitions, MGA and the BRATZ received considerable publicity, appearing on a

20  nationally syndicated clip of Toy Fair highlights hosted by "Toy Guy" Chris Byrne (Ex. 67),

21  and in several public media sources (UF ¶ 35). Larian began speaking publicly on behalf of

22  MGA and BRATZ as early as February 2001. (UF ¶ 36.)

23  Mattel attended the New York Toy Fair. (UF ¶ 34.)  While there, MGA offered

24  Mattel the opportunity to license and distribute the BRATZ. (UF ¶ 37.)  Although Mattel

25  apparently initially jumped at the chance to sell BRATZ, in March of 2001 Mattel wrote to

26

27  outside the scope of any employment obligations to Mattel"), 84:25-85:2, 114:22-24 (Wang "gave
    me no reason to suspect that there was anything inside that fell within the scope of his employment

28  at Mattel").

1  MGA and stated that it would not license and distribute BRATZ because "some products
2  are very similar to our own concepts and this is a very sensitive issue with the brand groups
3  (Bratz and Samantha)."   (Id.)   Despite declining to distribute the BRATZ, Mattel
4  nonetheless (unbeknownst to MGA) placed the BRATZ line into the Mattel product system,
5  which came to light in April 2001, when MGA "received an e-mail today from a friend at
6  Mattel who was surprised to find our Bratz and Scooter Samantha products loaded in the
7  Mattel system after information had been received by Mattel Latin America." (UF ¶ 38.)

8                    **(b)   June 2001 – BRATZ release in Spain piques Mattel's interest**
9          MGA spent the spring of 2001 finalizing the BRATZ, and released the first dolls to
10  the consumers in Spain in June 2001. (UF ¶ 39.) This initial release caught the eye of a key
11  Mattel employee, Adrienne Fontanella, who was the head of Mattel's Girls' Division. (UF
12  ¶ 40.)  By July 2001, although BRATZ had not yet been launched in the United States,
13  Mattel's Marketing Division was well aware of its existence, and had begun monitoring
14  BRATZ as a competitor of Barbie. (UF ¶ 41.)  Fontanella's deposition testimony confirms
15  Mattel's very early interest in BRATZ.[7] While the precise substance of Mattel's internal
16  meetings regarding MGA and BRATZ in the summer of 2001 is unknown because Mattel
17  did not produce its files, Mattel was closely watching MGA and BRATZ.  Indeed, even
18  Mattel's Chairman and CEO, Robert Eckert, knew about BRATZ "sometime in 2001" (UF
19  ¶ 42) and even knew that BRATZ had gained market share on Barbie "in 2001." (UF ¶ 44.)
20                    **(c)   BRATZ are introduced to the American market**
21         In the fall of 2001, BRATZ were released in the United States to widespread acclaim,
22  with toy analysts predicting that the dolls would be a top-seller during the 2001 holiday
23  season.  Indeed, upon MGA's initial release of BRATZ in the U.S., the American media
24

---

25  [7]   Id. (Q. And did there come a time that you saw a BRATZ? A. Yes. Q. And where was that?
A. I don't recall exactly but it was sometime probably in July. Q. July of 2001? A. Yes. Q. At that
point was this one that was being marketed in the United States? A.  No. Q. How did you get this
26  first BRATZ? A. I had worldwide obviously responsibility and we had a – regular meetings where
we met with our international marketing counterparts and they brought the doll to the attention and
27  then I think they sent it to the Marketing group because we were always looking at anything
competitive on the marketplace even if it was regional. Q.  And so when you got to see BRATZ for
28  the first time others in the Marketing group saw it as well?  A. Yes.).

EXHIBIT 54
PAGE 1738

1  placed the dolls on the short list of hit toys for 2001. (UF ¶ 45.)   Moreover, MGA's

2  BRATZ dolls were named as one of the "Hot 1's To Watch" by an American news source

3  in October 2001. (Id.)  BRATZ rounded out 2001 with strong holiday sales and earned a

4  coveted Toy of the Year nomination from the Toy Industry Association.  (UF ¶ 45

5  ("'There's no rest in this business,' says MGA Head Elf, er, President Isaac Larian. 'We've

6  had a fantastic year (in 2001), and we expect to double our business next year.'").)  The

7  "rumblings" at Mattel about BRATZ were widespread by this time. (Ex. 18 (Simpson-

8  Taylor) at 102:12-23, 103:3-19.)

### (d)  Mattel immediately concludes that BRATZ was copied from Mattel dolls

Mattel's immediate reaction upon seeing the first BRATZ dolls in 2001 was that they

had been copied from Mattel's line of "Diva Starz" or "Toon Teens" dolls. (UF      ¶47.)

Ivy Ross, a former VP of Product and Visual Design at Mattel, believed it had been copied

by BRATZ (UF ¶ 48), as did Lilly Martinez, Mattel's Design Manager and creator of

Mattel's "Toon Teens." (UF ¶ 49.) On August 14, 2001, Debbie Hastie, a senior manager

of the Mattel Product Design in the Design Center, wrote to Elise Cloonan, a Mattel

designer that she believed BRATZ resembled Lilly Martinez's Toon Teens dolls. (UF ¶

50.)[8] Even a reporter noted, "[w]hen I first saw BRATZ dolls at the Toy Fair this year, they

reminded me of Mattel, Inc.'s electronic talking Diva Starz dolls." (UF ¶ 51.)

### (e)  It was "common knowledge" within Mattel in 2001 that Bryant created BRATZ

Shortly after Mattel's marketing department became aware of the BRATZ, word

spread throughout Mattel that Carter Bryant was the creator of the BRATZ:

•     Elise Cloonan testified that in 2001 it was "common knowledge" at the

Mattel Design Center that Bryant was behind BRATZ, and that "everybody was

abuzz" about BRATZ as a result. (UF ¶ 53.) The "rumor mill," as Cloonan put it, did

---

[8]    See Ex. 28 (e-mail dated August 14, 2001 from Debbie Hastie to Elise Cloonan) ("[D]id you see the dolls by MGA called 'Brats'?  They look really close to Lillypad's Toon Teens.  I mean really close.  The face paint, eyes especially look like Lilly painted them herself.  They even have the same big feet that somehow bothered Mattel execs.  And they don't even have a feature. Something that Mattel execs also were on our backs about.").

**EXHIBIT 54**
**PAGE 1739**

1 not consist of simply "one or two people," but 10 to 20 within Mattel's Design Center
2 and "[w]hen you hear [it] from 10 and 20 people, you figure it's probably true." (UF ¶
3 53.)

4      •    It was widely rumored within Mattel between Bryant's departure in
5 October 2000 and the release of BRATZ in 2001 that Bryant was involved with MGA
6 on the BRATZ, because when Mattel employees "heard that Carter Bryant was at
7 MGA and… that there was now a fashion doll product from MGA, [they thought] that
8 he may have been involved in that fashion doll." (UF ¶ 54.)

9      •    Ann Driskill, Mattel's Senior Director in Collectibles Division, testified
10 that "after the [BRATZ] dolls came out" someone at Mattel told her Bryant had
11 created them. (UF ¶ 52.)

12      •    Margaret Leahy, a former Mattel designer, testified that in the summer of
13 2001, after she had gone to MGA, a friend from Mattel, Roxanna Powell, was
14 "grilling" her "like somebody put her up to it," about whether "Carter [was] the
15 designer on the doll or what was [MGA employee and former Mattel employee] Paula
16 [Garcia's] involvement" in BRATZ. (UF ¶ 55.) Leahy testified that she confirmed to
17 Powell that Bryant had indeed created the BRATZ dolls "as we know them now." (Id.)

18      •    Mattel was abuzz[9] about MGA's success with the BRATZ line and the
19 competitive implications of that success, but once numerous Mattel employees
20 confirmed that Bryant was indeed the creator of BRATZ, Mattel's interest in MGA
21 and the genesis of BRATZ grew from a rumble to a full blown investigation.

22      **3.**    **In March 2002, Mattel Launches An Internal Campaign To Investigate Its Alleged Rights In the BRATZ, Bryant's Creation Of The BRATZ ConceptAnd MGA's Role In Its Development**

23

24      Toward the end of 2001 and continuing into early 2002, Mattel's Legal and
25 Investigations Departments became involved in Mattel's ongoing inquiry into MGA's

26  [9]    UF ¶ 53 (citing Ex. 11 (Cloonan) at 315:10-316:18 ("A. I mean, I remember having
27 conversations about it with Roxanna Powell, Bill Greening, and Janet Blaser, because I remember them constantly going 'Come on, come on, you know, you knew him, you had to have known
28 something.'"), 316:10-316:18 (naming ten individuals who approached her about Bryant's involvement).)

1   and financed Bryant to develop BRATZ," knowing Bryant was employed by Mattel and

2   that Mattel is the "true owner of BRATZ designs and works." (SAA ¶¶ 33, 34; see also id.

3   ¶¶ 26-27, 136-37, 139-41.) Bryant's concurrently filed summary judgment motion, in which

4   MGA and Larian join, demonstrates that, as a matter of law, Bryant did not owe a fiduciary

5   duty. (Bryant Br. at III.A.) Absent such a duty, a claim for aiding and abetting necessarily

6   fails. See Richard B. LeVine, Inc. v. Higashi, 131 Cal. App. 4th 566, 574 (2005) (granting

7   summary judgment on aiding and abetting breach of fiduciary duty where plaintiff failed to

8   establish breach); see also MJT Securities v. Toronto Dominion Bank, 2007 WL 1725421,

9   at **7-8 (N.D. Cal. June 14, 2007). As Bryant owed no fiduciary duty to Mattel, Mattel's

10   claim against MGA and Larian likewise fails as a matter of law.

11                                   **CONCLUSION**

12       For the foregoing reasons, MGA and Isaac Larian respectfully request an order

13   granting partial summary judgment and dismissing Mattel's Phase I claims against them.

14   DATED: March 7, 2008

                              SKADDEN, ARPS, SLATE, MEAGHER &
15                            FLOM, LLP

16                            By: _____
                                         Thomas L. Nolan
17                            Attorneys for MGA Entertainment, Inc., MGA
                              Entertainment (HK) Limited, MGAE de Mexico,
18                            S.R.L. de C.V., and Isaac Larian

19

20

21

22

23

24

25

26

27                                                          **EXHIBIT 54**
                                                            **PAGE 1741**
28

RECEIVED

MAR 1 0 2008

1 | THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
2 | JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
3 | MARINA V. BOGORAD (Bar No. 217524)
(mbogorad@skadden.com)
4 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
5 | Los Angeles, CA  90071-3144
Telephone:   (213) 687-5000
6 | Facsimile:   (213) 687-5600

7 | KENNETH PLEVAN (admitted *pro hac vice*)
(kplevan@skadden.com)
8 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
9 | New York, NY 10046
Tel.: (212) 735-3000 / Fax: (212) 735-2000
10
Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
11 | MGAE de Mexico, S.R.L. DE C.V., and Isaac Larian

12 | **UNITED STATES DISTRICT COURT**

13 | **CENTRAL DISTRICT OF CALIFORNIA**

14 | **EASTERN DIVISION**

15

16 | CARTER BRYANT, an individual

17 | Plaintiff,

18 | v.

19 | MATTEL, INC., a Delaware corporation

20 | Defendant.

21 | 

22 | AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with Case No. 04-9059 and Case No. 05-2727

Honorable Stephen G. Larson

**PROOF OF SERVICE**

**EXHIBIT 54**
**PAGE 1742**

PROOF OF SERVICE
NO. CV 04-9049 SGL (RNBx)

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

4

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 300 South Grand Avenue, 34ᵗʰ Floor, Los Angeles, CA 90071.

5

On **March 10, 2008**, I served the foregoing documents described as:

6

7

**SEE ATTACHED DOCUMENT LIST**

8

on the interested parties in this action addressed as follows:

9

10

**SEE ATTACHED SERVICE LIST**

(x)     (BY PERSONAL SERVICE)     ( )     By personally delivering copies to the person served. (FEDERAL)

11

12

(x)     I caused such document to be hand delivered to the above addressees. (FEDERAL)

13

14

15

(X)     (BY FEDERAL EXPRESS)

16

17

()     (BY ELECTRONIC MAIL)

18

19

I declare under penalty of perjury under the laws of the State of

20

California and the United States of America that the above is true and correct.

21

Executed on **March 10, 2008**, in Los Angeles, California.

22

23

Matthew T. Bowman
PRINT NAME

SIGNATURE

24

25

26

27

28

2
PROOF OF SERVICE
NO. CV 04-9049 SGL (RNBx)

**EXHIBIT 54**
**PAGE 1743**

1    DOCUMENT LIST

2    MGA PARTIES' CORRECTED NOTICE OF MOTION FOR PARTIAL
3    SUMMARY JUDGMENT, MOTION AND MEMORANDUM OF POINTS AND
     AUTHORITIES IN SUPPORT THEREOF;
4

5    PROOF OF SERVICE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 54
PAGE 1744

1 | SERVICE LIST

2

VIA PERSONAL SERVICE                    VIA FEDERAL EXPRESS

3

John B. Quinn, Esq.                     John W. Keker, Esq.
4 | Michael T. Zeller, Esq.              Michael H. Page, Esq.
Jon D. Corey, Esq.                      Keker & Van Nest, LLP
5 | Quinn Emanuel Urquhart Oliver &      710 Sansome Street
Hedges, LLP                             San Francisco, CA  94111
6 | 865 South Figueroa Street, 10th Floor  (415)  391-5400
Los Angeles, CA  90017-2543             (415)  397-7188 (Fax)
7 | (213)  443-3000
(213)  443-3100 (Fax)                   Attorneys for Carter Bryant

8

Attorneys for Mattel, Inc.

9

10

VIA FEDERAL EXPRESS

11

Mark E. Overland, Esq.
12 | Alexander H. Cote, Esq.
David S. Scheper, Esq.
13 | Overland Borenstein Scheper & Kim
300 South Grand Avenue, Suite 2750
14 | Los Angeles, CA 90071
Telephone:  (213) 613-4655
15 | Facsimile:  9213) 613-4656

16 | Attorneys for Carlos Gustavo Machado
Gomez

17

18

19

20

21

22

23

24

25

26

27

28

4

EXHIBIT 54
PAGE 1745

**EXHIBIT 55**

MGA Entertainment, Inc. v. Mattel, Inc., et al.

Case No. CV 05-02727

Expert Report of Mary Bergstein

February 11, 2008

CONFIDENTIAL – ATTORNEYS EYES ONLY

**EXHIBIT 55**
**PAGE 1746**

2

I currently head the department of History of Art and
Visual Culture at the Rhode Island School of Design in
Providence, where I have been a faculty member from fall
1990 to present, now at the rank of Full Professor. My
students at RISD are BFA (Bachelor of Fine Arts) or MFA
(Master of Fine Arts) candidates, along with some who are
studying for B.Arch (Bachelor of Architecture) or M.Arch
(Master of Architecture) degrees.  Students belong to one
of 21 different studio majors including some that are
pertinent to this case, namely: Industrial Design, Apparel
Design, Illustration, and Graphic Design. In addition to
traditional classroom teaching, my courses also directly
involve the collections (especially drawings, prints, and
sculpture) of the RISD Museum of Art, where I have also
collaborated on exhibitions. Previous to my position at
RISD I taught at the rank of Lecturer at Princeton
University, Department of Art History and Archaeology, from
1986 to 1990, and as a Preceptor at Columbia University
1985-6.

I have not given prior testimony in this case; nor have I
given testimony as an expert witness in any other cases.
(In this report I am referring to a number of MGA Bratz
dolls that I have seen in stores, on-line, in images
provided by Skadden Arps, and in advertisements.  And I am

**EXHIBIT 55**
**PAGE 1748**

**CONFIDENTIAL – ATTORNEYS EYES ONLY**   MSV

3

writing with Bratz <u>Girlfriendz</u> "Nite Out" Cloe and Sasha before me.)

<u>My understanding of the lawsuit</u>:

My understanding of this lawsuit is that Mattel claims ownership of a set of sketches made by Carter Bryant, a former employee, which he testified to have made in August 1998, during an interval in which he was not under contract to Mattel.

Because Mattel claims ownership of these sketches, the original "brainstorm" for the Bratz fashion dolls, Mattel claims to have an ownership interest in Bratz dolls, which were and are produced by MGA.

**EXHIBIT 55**
**PAGE 1749**

**CONFIDENTIAL –
ATTORNEYS EYES ONLY**

4

Carter Bryant's First Idea for Bratz:

Based on my review of the visual material, there is
supportive evidence that Bryant's sketches were made in
August 1998, inspired, as he said, by some advertising art
in the August 1998 issue of Seventeen magazine, as well as
direct observation of young girls on their own local "turf"
(fig.2).

In the practice of art history and museum connoisseurship,
drawings are classified under the following categories:
sketches, studies, drawings, and models. Sketches are
"notes" on paper; studies imply deeper and more detailed
observation and investigation prior to a fully developed
drawing, drawings are fully executed works on paper to any
end (either for their own sake or preparatory to a final
product), and two-dimensional models are fully executed and
finished preparations for a work of painting, sculpture, or
architecture. In the case of a public or private
commission, a model is typically presented to the patron
for approval before the final work is executed.  For
several years I have taught a seminar entitled "Leonardo's
Drawings" (Leonardo da Vinci 1452-1519) in which
undergraduate students learn to work with this
nomenclature. Contemporary fine artists on commission
typically follow the same procedure, working from sketch to

CONFIDENTIAL –
ATTORNEYS EYES ONLY

Q:\Documents and Settings\jfeirman\Local Settings\Temporary Internet Files\OLK3\SKADDEN REPORT (3).doc                    MSV

EXHIBIT 55
PAGE 1750

5

study, to drawing, to a final model presented to the client.

The Bryant images under discussion here are sketches. These sketches represent a kind of "thinking on paper," and Bryant later firmed up the drawing, reinforcing contour-lines, adding some color, and clarifying some of the details, so that the sketches could be "read" more easily. Still, these images were never fully executed to the state of finished drawings or models; the changes made post facto neither added to nor detracted from Bryant's sketches.

As the name implies, these very first "Bratz" of Carter Bryant's sketches rejected the feminine ideal of, say, Mattel's "Barbie," and traditional femininity gave way to a more defiant, or "spunky" or "funky" kind of attitude in the teen-aged female characters. These girls have attitude --- an attitude of rebellion and adolescent indifference, especially if contrasted against the more demure, if sexier, "Barbie" ideal (fig.3).

There are obvious ways in which "Bratz" were meant to function in pre-teen society as a kind of "anti-Barbie." Mattel's "Barbie," for instance, can be characterized as a kind of hand-held fertility fetish, who, like the famous

CONFIDENTIAL –
ATTORNEYS EYES ONLY

MS9

EXHIBIT 55
PAGE 1751

6

"Venus" of Willendorf (ca. 28,000 BC), is unable to stand on her own tiny feet (**Fig.4**). Bratz, instead, have proportionately large feet that allow the figure to stand on her own.

Bryant's "Bratz" had large, blocky feet with huge, "Doc Martens" type shoes and stood in a defiant stance: a swiveling shot-hip kind of pose --- a pigeon-toed, knees-together, sway-backed posture. Such postures are to some extent based on the stock exaggerated slouch of certain runway poses; they also belong to the tradition of fashion illustration, where human proportions are almost always exaggerated in one way or another, most commonly with long, attenuated legs (**fig.5**).

In Carter Bryant's configuration the area of the neck and tiny chest are exaggeratedly small, almost non-existent. The waist opens out into immensely long legs composed, not of flesh and bone, but of enormous flamboyant trousers and shoes. This posture mimics the assertive stance of the model in a Steve Madden ad in <u>Seventeen</u> (fig.6) and several other graphic images in that August 1998 issue. These include the ad for "Gadzooks" jeans, "Just Nikki" fashions, the Sanrio "Hello Kitty" advertisement, the photographic view of a model in an ad for leg-depilation (Warner-Lambert

CONFIDENTIAL –
ATTORNEYS EYES ONLY

EXHIBIT 55
PAGE 1752

7

Co.) and for "Paris Blues" jeans, among several others (fig.7).

Bryant's original 'Bratz' postures transgress the traditionally demure, respectable, "Miss America" sort of feminine ideal, and are activated into a kind of dance of defiance (fig.8). The faces, too, are animated, and one figure even seems to be shouting. These (fig.9) are girl "rascals" ready to run, jump, and shout. Bryant's idea of "Chicks with Attitude" was inspired by a photographic ad in Seventeen for the Dixie Chicks' "Wide Open Spaces." Here the concept of "attitude" amounts to a kind of "bubble-gum feminism" as exemplified by the "Spice Girls" song "Wannabe" of 1996:

"If you wanna be my lover, you gotta get with my friends, Make it last forever, friendship never ends."

In fact, Noelle Howey coined the term "bubble-gum feminism" with regard to the "Spice Girls" mentality; this too appeared in the August 1998 issue of Seventeen (p. 132).

There is no doubt that the concept of "girls with attitude" was very much in the fashion-magazine culture around the turn of the twenty-first century, especially as seen in the August 1998 magazine that Bryant cites as his inspiration.

CONFIDENTIAL –
ATTORNEYS EYES ONLY

MS'9

EXHIBIT 55
PAGE 1753

8

The implied narrative of Bryant's "Bratz" is that these are four teen-aged girlfriends who hang together in their rebellious stance, experimenting with make-up, clothes, hairstyles, cute childish accessories and back-packs **(fig.10)**, in the "Hello Kitty" vein, and other slightly off-beat fashion ideas. Hairstyles range from sleek short cuts, to long, fine quasi-dreadlocks, to a puffy short bouffant: Carter Bryant intended these varied hairstyles to be popped on and off like wigs as part of the dolls' costume. Jade, Lupé, Hallidae, and Zöe were vaguely characterized as Asian, Latina, African-American, and Anglo, respectively **(fig.11)**. They were meant to have more or less the same sculptured head but different face-paint, although in Bryant's sketch **(fig.12)** the eyes and eyelids of the characters have four different shapes, suggesting different sculpture as well as different paint, presumably related to their specific ethnicities.

MGA's Bratz

The creative development of the concept of Bratz dolls began to move in a new direction, in my view, the day Carter Bryant walked into Isaac Larian's office at MGA to meet with Larian and Paula Garcia to pitch his idea (September 1, 2000). During that interview, the Bratz

CONFIDENTIAL —
ATTORNEYS EYES ONLY

MSV

EXHIBIT 55
PAGE 1754

9

product as eventually designed and produced by MGA (fig.13) began to take shape.

Spurred by the presence of Larian's twelve-year-old daughter, Jasmin, who responded positively to the Bratz idea, MGA began to design a product that was quite different in its expression from Bryant's original sketches. Bratz became fashion-dolls that were unique in the toy market --- a set of dolls for the twenty-first century --- trendy, cool, inter-ethnic, inter-racial friends, gamine girls who were born fully formed in response to the tired "Miss-America" look of Mattel's "Barbie."

You see, whereas Mattel's "Barbie" started out singular and white, the Bratz dolls were conceived from their launch as a quartet of inter-ethnic, inter-racial types (fig.14). It is precisely this significant departure from the "Barbie" ethos that seems to have driven the Bratz dolls' success in the toy market.

These differences cut deeply through American culture. Indeed, Barbie's whiteness has been the subject of serious cultural commentary (fig.15).

CONFIDENTIAL –
ATTORNEYS EYES ONLY

10

The contemporary photographer David Levinthal, well known for his mysterious and slightly weird looking set-up photographs of dolls and figurines, for example, made some photo-series works about Barbie and her cultural persona. He is the author of <u>Barbie Millicent Roberts</u> (New York: Pantheon, 1998). Levinthal began posing the dolls Barbie and "G.I. Joe" as lovers while in an MFA program at Yale University (1972), where he wanted to critique the idea of race in America. His photographs at this time began to critique "the idea of Barbie as the Aryan virgin." (Lord, 271-72).

At this point it is pertinent to quote verbatim from the sociologist Mary F. Rogers, "White-skin Barbie," in her book <u>Barbie Culture</u> in the "Core Cultural Icons" series (Sage Publications: London, Thousand Oaks CA, New Delhi, 1999), pp. 47-57.

> p. 47: "Although Barbie has had friends of
> color since the 1960's and has herself been
> marketed in African-American, Asian, and
> Hispanic versions over the past fifteen
> years, Barbie is stubbornly white. [ … ]
> Barbie is also fundamentally blond. [ … ]
> No matter what racial or ethnic identity she

CONFIDENTIAL –
ATTORNEYS EYES ONLY

MSV

EXHIBIT 55
PAGE 1756

11

> adopts, Barbie strikes me as white-
> identified, as a beneficiary of white-skin
> privilege, as cultural evidence of white
> domination."

Rogers goes on to develop her analysis of Barbie as fundamentally and persistently white in the chapter entitled "White-skin Barbie." She establishes without a doubt that even beyond the aesthetic characteristics of the dolls as objects, the whole phenomenon of "Barbie Culture" foregrounds white privilege and a white aesthetic (Rogers, pp. 47-57). Bratz, instead, departed once and for all from the enduring whiteness of Barbie culture in doll design. Clearly Bratz and their related accessories have evolved from their first release to present under the care of MGA's many designers and employees. If the MGA Bratz are slightly more sexualized than Carter Bryant's early sketches, they are also more feminine and demure in their total attitude (fig.16). They can be characterized as dream girls rather than defiant punks wearing homemade outré fashion. Pretty dream girls were apparently more appealing than eccentric gamines to the pre-pubescent girls who acquire them.  They no longer resemble the middle-school or high-school art students that Bryant reports to have observed while hanging around his parents' town.

CONFIDENTIAL –
ATTORNEYS EYES ONLY

12

Jasmin set the trend in more ways than one. Whereas the name "Lupé" (Lupe) can only be construed as Latina, Yasmin, as well as being the name of the CEO's young daughter was a deliciously multi-cultural name, which signaled what I will call the "inter-ethnic" nature of the Bratz as they were developed (fig.17). Yasmin is derived from the word for jasmine in Persian and Arabic. It was a popular name among various populations around 2000: Muslim girls from South Asia or the Middle East, African-American, Jewish, Latina, and Anglo girls were given this name, and it remained popular as Jasmine, Yasmin or even Jazzmine. A good example of this is the film Yasmin (released in the UK in 2004 and the US in 2005) starring the beautiful Archie Panjabi as Yasmin, a Pakistani girl who lives between two cultures in the wake of 9/11.

With Jasmin Larian and her namesake doll, the idea of race and ethnicity became very flexible in the implied Bratz narrative. With the addition of Yasmin the four Bratz friends (now called Cloe, Sasha, Yasmin, and Jade) became, with the launch of the line in 2001, inter-ethnic and inter-racial in a way that reflected and actually embodied the reality of American urban girls (fig.18). These new dolls also had the advantage of advancing a global appeal.

CONFIDENTIAL –
ATTORNEYS EYES ONLY

MSV

EXHIBIT 55
PAGE 1758

13

Given their new names, they could be imagined as Mediterranean, Middle-Eastern, African, Chinese, Eastern European, or Latin American. Multiculturalism became the rule rather than the exception in the world of Bratz.

In a New York Times article of 2003, New York City parents praised the inter-ethnic look of Bratz. One mother, Miriam Arond, who was also editor in chief of Child magazine, stated that: "Multiculturalism is one of these dolls' very positive aspects, a very nice way of helping children all over the country realize that people look many different ways." Another mother, Anna Scolara said, "They represent so many different cultures that co-exist in the city." She praised the realistic resemblance of Bratz to real "New York girls." (fig.19)

Dolls that really look like "New York girls"! This is a far cry from Mattel's (1979) "fiesta-style" Hispanic Barbie --- a stereotyped Latina wearing a lace mantilla and a rose, among other accoutrements. M. G. Lord described Hispanic Barbie as "a refugee from an amateur production of Carmen" (Lord, 108). No wonder she did not appeal to real American girls, Hispanic or other.

CONFIDENTIAL –
ATTORNEYS EYES ONLY

14

I should add that my personal experience comes to bear on this aspect of the Bratz story. When I look at my classes of talented first-year students at the Rhode Island School of Design in 2008, the young women simply cannot be individuated according to race or ethnicity. The South Asian and Middle Eastern influx into the U.S. population is only a part of what contributes to this "blended" look, where the "Barbie-like" white/Anglo model no longer dominates the aesthetic.

Inter-ethnicity seems to be a great part of the Bratz appeal, as it mirrors the urban populations of the USA. Skin tones for each Bratz character vary. For example, Jade can be purchased with pale, light, or tan skin, and the newer dolls can have prominent facial beauty-marks with any shade of skin.

Their outfits are decidedly urban and trendy, but with more of a "Sex-and-the-City" (another narrative of four friends!) flavor than had interested Bryant in his sketches. "Sex and the City," which ran from 1998-2004 on cable TV dealt with four women in their mid-thirties, and to be sure, Bratz present a more juvenile, less polished, iteration of "sex-and-the-city" fashion. The large, interchangeable feet of Bratz dolls are now wearing

CONFIDENTIAL –
ATTORNEYS EYES ONLY

15

strapped, glittery, high-heals. But this does not mean that post-Bryant Bratz swung back to the "Barbie" or "Miss Revlon" ideal by any means.

Bratz products were first designed and produced by MGA in 2000-2001. Since 2000, when Carter Bryant brought the idea of Bratz to MGA, numerous highly skilled MGA employees have worked on the dolls. The MGA Bratz product differs substantially, therefore, in form, content, and narrative fantasy, from the working sketches made by Bryant.

Let me describe some of the most salient ways in which MGA Bratz differ in expression from the thoughts Bryant first put on paper. The inter-ethnic aesthetic of Bratz was created by the sculpture and painting of the dolls produced by MGA. This was not apparent in Bryant's sketches, where the characters nod to multi-ethnicity rather than inter-ethnicity.  Each doll has the exact same sculptured physiognomy on a head that is proportionately larger than the body.

Eyes: The eyes are a good place to begin (fig.20). Bratz dolls have large, made-up, eyes with huge irises. The eyes flair up and away from the nose like elongated "butterfly wings," almost wrapping around the top of the face.  Unlike

CONFIDENTIAL –
ATTORNEYS EYES ONLY

16

the rounded heavy-lidded eyes sketched by Bryant in 1998, Bratz eyes are like long, almond-shaped "wings" with attenuated, delicately colored eyelids and with irises of various subtle colors. These eyes are slightly other-worldly, i.e. not quite naturalistic enough to be the eyes associated with Asian, Anglo, African, or Latin identity, but at the same time suitable to all those ethnicities and more.  (Before moving on to the next comparison, I should state that Carter Bryant's sketches don't convey a coherent idea of what the individual dolls would look like. This is because of their status as sketches that were made when Mr. Bryant was first playing with his ideas on paper.)

Mouth: The genius of Bratz resides most distinctively in the design of the mouth (fig.21), which, unlike the actively expressive (even shouting) mouths of Bryant's 1998 drawings, hovers in suppression of emotion between a semi-smile and a semi-pout. Only the position (moveable) of the doll's head can make the Bratz doll look "happier" or "sadder." These serene bee-stung lips (the mouth is almost as tall as it is wide) communicate a calm, demure femininity, a femininity greatly modified from Bryant's sketches of kids with attitude.

CONFIDENTIAL –
ATTORNEYS EYES ONLY

MSV

EXHIBIT 55
PAGE 1762

17

It is no coincidence that the Bratz mouth is suitable to girls (dolls) of any ethnicity or mixture: African, East Asian, Latina, Mediterranean, South Asian, Middle Eastern, or Anglo. Lipstick colors are harmonized with skin and eye colors to stimulate the children's imagination to create various individualized "characters".

Little girls for whom racism does not exist can identify with any or all of the Bratz, enhancing their possibilities for imaginative play, creating individual Bratz "characters" within the fun-and-fashion narrative. Surely this easy inter-ethnicity accounts in great part for the Bratz success as a cultural phenomenon in twenty-first century America.

Hair: Another important feature of MGA's Bratz is that the dolls' hair is a centerpiece of the toy (fig.22). Whereas Bryant's original sketches featured, for instance, short sleek dark hair with little pigtails and spiked bangs, the Bratz all have "big," "Hollywood" type hair coiffed in a traditionally feminine style --- a style more suitable to Angelina Jolie than to a rebellious middle-school art student. The hair is abundant, somewhat curly, full, and below-waist length. In Bratz Girlfriendz, for example Cloe has streaked blonde and platinum hair parted on the right

CONFIDENTIAL –
ATTORNEYS EYES ONLY

EXHIBIT 55
PAGE 1763

18

side and Sasha has rich brown hair with auburn streaks, parted in the center. The hair is the most "touchable" part of the toy --- a pleasure for children to comb and style.  Both Cloe and Sasha come equipped with proportionately huge hairbrushes, clearly one of the main attractions of the doll for child consumers (fig.23).

Bratz and the Public Domain

Much as Bratz were originally inspired by Mr. Bryant's sketches and developed by the creative design staff of MGA, certain of the Bratz general traits were in the public domain prior to Carter Bryant's ideas. Bryant's sketches belong to a larger tradition that has been "in the culture" of media and toy representations for several decades and continues to find expression in the present.

The large, sparkling eyes of Bryant's Bratz belong to an idea that dates back at least to 1930 (fig.24), when Max Fleischer invented the "Betty Boop" character --- supposedly a sixteen-year-old girl --- for screen animation. (As some of us can remember, the big-eyes scheme was continued by Disney in the "Bambi" character of 1942 and other animated cartoons.) The most significant American fashion-doll before Barbie was "Miss Revlon" (fig.25) produced by Ideal Toy and Novelty Corporation from 1956-59.

CONFIDENTIAL – ATTORNEYS EYES ONLY

MSV

EXHIBIT 55
PAGE 1764

19

Revlon dolls wore cocktail dresses, had distinct breasts, red polish on their fingernails and toes, and (pre-Barbie) feet shaped to wear high-heels. The name "Revlon" is, because of the cosmetics company of the same name, charged with associations to glamour and make-up. Miss Revlon also had big round sparkling glass eyes, which opened and closed, like those of a traditional baby-doll.

In the 1960s, paintings by Margaret Keane (fig.26), today considered pure kitsch, featured poor waif-like children with huge eyes and pathetic expressions. Japanese animé (animated film) developed figures with large eyes --- eyes that were not perceived as particularly "Western" by their Japanese audiences, but just sparkly and cute, for both human and non-human characters. "Hello Kitty," for example, a model for Carter Bryant's cute back-packs in the early drawings, was (in Japan since 1977 and in the USA since 1991) a children's animé series. The Japanese animé "Sailor Moon" (fig.27) of the 1990s featured perky, naïve-looking girls with big eyes. It centered upon a leading magic girl, Sailor Moon, whose adventurous fairy tales took place in the inter-galactic realm of fantasy and science fiction.

CONFIDENTIAL –
ATTORNEYS EYES ONLY

20

Other such images also thrived in the media culture before 1998. Lisa Frank designed fantasy images for very young girls, beginning in 1979, to be applied to stickers, toys, clothing, and notebooks. Her work included the idea of three best girlfriends (Lisa, Carrie, and Mara) far in advance of Carter Bryant's four best girlfriends. Lisa Frank's girls have huge eyes, rainbow-colored wings, halos, and slim bodies. Predominant colors are pink and lavender. Lisa Frank's cuddly characters are based on children's fantasies. They exist in a world of pastel-colored flying unicorns, rabbit-ballerinas, and tip-toed dolphins. Her graphic designs for girls are sugary sweet, and there is virtually no sexualization of any of the characters. Nevertheless Wikipedia (cit. Lisa Frank) states that:

> "Lisa Frank's influence on pop culture has been considerable, with her highly recognized style spawning many imitators. The popular Bratz line of toys are stylistically imitative of Lisa Frank's work."

The "Blythe" character, a doll created by Kenner in 1972, and revived in photography by Gina Garan in 1997, is also a fashion-doll gamine with huge eyes (fig.28). Indeed, the

CONFIDENTIAL –
ATTORNEYS EYES ONLY

21

eyes apparently proved to be somewhat spooky to children and the doll never caught on. Garan's revival of Blythe appealed to adults, who purchased them in limited editions as by Hasbro as "Neo-Blythe." Garan's work with Blythe brings to mind the "lowbrow art" phenomenon of Pop Surrealism as it flourished in the 1990s. Photo essays like This is Blythe (New York: Chronicle Books, 2000) play with the dark side of cute femininity, posing Blythe as a character in situations of an implied narrative of loneliness or even danger. Here is postmodernism in one of its most lurid, kitschy guises.

We recognize this postmodern feature of "implied narrativity" rather than straight-out narrative in serious, "high" art (especially contemporary painting and photography) as well as in "Pop Surrealism." This is Blythe (2000) is an example of implied narrativity derives from the contemporary mania for "set-up" photography, like that of the post-modern photographers Cindy Sherman and David Levinthal.

To further understand the Zeitgeist of the turn of the century in the continuum of gamine, wide-eyed, trendy female characters, we may turn to the television (FOX) comedy-drama (running from 1997-2002) called Ally McBeal

CONFIDENTIAL –
ATTORNEYS EYES ONLY

22

(fig.29). In my personal experience, young teenage girls in the 1990s adored this series, which starred Calista Flockhart as a young, fashionable, slender --- fetchingly anorectic --- lawyer. The multi-ethnic cast included (Asian American) Lucy Liu as "Ling" and (African American) Lisa Nicole Carson as "Renee." Despite the fact that Ally McBeal (the Calista Flockhart character) is an attorney, the characters behaved like flighty teenagers. The Flockhart and Liu characters looked so much like high-school or college-girls hovering on the edge of bulimia and anorexia nervosa that the actresses had to defend themselves to the press as non-anorectic. They were fashion dolls come-to-life in a dramatic, comedic, terribly unrealistic, setting.

All of the phenomena described above, from Betty Boop to Blythe to Ally McBeal, are quite individual from one another in terms of their ultimate meaning. They supply different fantasies to their consumers and viewers, from the cuddly magic of Lisa Frank to the depressing profanity of Pop Surrealism. Nevertheless, they were all in the culture when Mr. Bryant made his original Bratz sketches (fig.30).

Conclusion:

CONFIDENTIAL – ATTORNEYS EYES ONLY

EXHIBIT 55
PAGE 1768

23

To sum up my observations (**fig.31**), I would posit that Carter Bryant's sketches, as original as they were in some ways in the ideas they communicated, drew from material already in the culture, particularly as represented in the August 1998 issue of <u>Seventeen</u>, as is consistent with his previous testimony. But nothing is conceived in a void, and I have pointed to Betty Boop, Bambi, Revlon dolls, Blythe, Sailor Moon, Lisa Frank's illustrations, Margaret Keane's paintings, "Sex and the City," and "Ally McBeal" as historical precedents for the Bratz idea.

Bratz were developed by MGA by with Bryant's drawings as an initial inspiration. From their launch, Bratz were defined in contrast to the "Barbie" stereotype (**fig.32**). But they also departed from Carter Bryant's sketches in significant ways including in their physical manifestationn their physical manifestation and in the "cultural aesthetic" they spawned. Bratz created a new fashion-doll type and fashion-doll narrative that was immensely successful with American girls in the twenty-first century.

---

Mary Bergstein --- 11 February 2008

CONFIDENTIAL – ATTORNEYS EYES ONLY

Q:\Documents and Settings\jfeirman\Local Settings\Temporary Internet Files\OLK3\SKADDEN REPORT (3).doc

MSV

EXHIBIT 55
PAGE 1769

paintings, "Sex and the City," and "Ally McBeal" as historical precedents for the Bratz idea.

Bratz were developed by MGA by with Bryant's drawings as an initial inspiration. From their launch, Bratz were defined in contrast to the "Barbie" stereotype (fig.32). But they also departed from Carter Bryant's sketches in significant ways including in their physical manifestation their physical manifestation and in the "cultural aesthetic" they spawned. Bratz created a new fashion-doll type and fashion-doll narrative that was immensely successful with American girls in the twenty-first century.

*M. Bergstein*        *11. 2. 2008*

Mary Bergstein --- 11 February 2008

CONFIDENTIAL –
ATTORNEYS EYES ONLY

C:\Documents and Settings\frjimant\Local Settings\Temporary Internet Files\OLK\RISK ANDRN REPORT (3).doc

MGA

EXHIBIT 55
PAGE 1770

Material Consulted

EXHIBIT 55
PAGE 1771

1

Mary Bergstein: Material Consulted

Books and Articles

Frank, Lisa. Lisa Frank Coloring Collection. (Franklin, TN:
Dalmatian Press, 2005).

Garan, Gina. This is Blythe. (San Francisco: Chronicle
Books, 2000).

La Ferla, Ruth. "Underdressed and Hot: Dolls Moms Don't
Love," New York Times, October 26, 2003.

Lord, M.G. Forever Barbie: The Unauthorized Biography of a
Real Doll. (New York: Walker & Company, ed. 2004).

Pop Surrealism Exh. Cat. The Aldrich Museum of Contemporary
Art, Ridgefield, CT, June 7 - August 30, 1998 (1998).

Rogers, Mary F. Barbie Culture. (London, Thousand Oaks, New
Delhi: Sage Publications, 1999).

Schlenker, Jennifer A., et al. "A Feminist Analysis of
Seventeen Magazine," Sex Roles: A Journal of Research 38
(January 1998).

Seventeen magazine (August, 1998).

Weissman, Kristin Noelle. Barbie: The Icon, the Image, the
Ideal. (An Analytical Interpretation of the Barbie Doll in
Popular Culture). (Universal Publishers: 1999).


Wikipedia entries:
Bratz, Blythe, Lisa Frank, Margaret Keane, Anime, Sex and
the City, Sailor Moon, Revlon, etc.

Websites: Bratz, Blythe, Barbie, Lisa Frank, Sex and the
City, etc.

e-bay browsed for images of various dolls.

Visual Materials:
* Sixteen color photocopies from the August 1998 issue of
Seventeen magazine (provided by Skadden Arps.
* Ten color photocopies from Carter Bryant's sketches
(provided by Skadden Arps).

**EXHIBIT 55**
**PAGE 1772**

CONFIDENTIAL –
ATTORNEYS EYES ONLY

2

* Bratz dolls: <u>Bratz Girlfriendz Nite Out</u>, "Cloe". And <u>Bratz Girlfriendz Nite Out</u>, "Sasha". Provided by Skadden Arps from Toys-R-Us.

* "Barbie" doll, undated, private collection.


<u>Legal Documents</u> provided by Skadden Arps:

* Skadden Banner Sheet, Job: 46075   (binder)

* MGA Entertainment /Carter Bryant 10306-00058, Copyright Registration Notebook. (binder)

* Skadden Banner Sheet, Job: 46077 (binder)

* <u>Excerpts from Interrogatory Responses in which a Party has Provided a Statement on Its Position</u>

  Chart Prepared by Tina Tomiyama

**EXHIBIT 55**
**PAGE 1773**

CONFIDENTIAL –
ATTORNEYS EYES ONLY

A3

**EXHIBIT 55**
**PAGE 1774**

1

Mary Bergstein
Curriculum vitae

164 Butler Ave. C
Providence, RI 02906
(401) 273-9246 home
(401) 454-6271 RISD
(401) 454-6586 FAX
mbergste@risd.edu

Education
Ph.D. with distinction, 1987, Art History, Columbia
     University
M.A. 1981, Art History, Hunter College
     William Graff Award for outstanding thesis in the
     humanities
B.F.A. 1973, Studio Art, NYS College of Ceramics at Alfred
     University

Teaching Appointments
Rhode Island School of Design, Professor, History of Art and
     Visual Culture (1990-present)
     Chair of Department, 1997-2000, 2006 – present.
Akademie der Bildenden Künste, Vienna, Visiting Professor,
     Department of Photography, 2005.
Princeton University, Lecturer in Art History, 1987-90.
Columbia University, Preceptor in Art History, 1986-87.

Postdoctoral Fellowships and Grants
Fulbright/Sigmund Freud Privatstiftung Scholar in
     Psychoanalysis, Sigmund Freud Museum, Vienna 2005.
American Association of University Women, American
     Postdoctoral Research Fellowship 2001-2002.
National Endowment for the Humanities, Grants for Research,
     Exhibition, and Catalogue, "Image and Enterprise," with
     Maureen C. O'Brien, Museum of Art, Rhode Island School
     of Design, February 2000, granted 1997, 1998.
Faculty Development Grants, Rhode Island School of Design,
     1992,1994,1996,1999.
University Faculty Research Grants, Princeton University,
     1989,1990.
William Hallum Tuck Memorial Grant for Faculty Research,
     Princeton University, 1988.

Books Published
The Sculpture of Nanni di Banco (Princeton, 2000).
Image and Enterprise: The Photography of Adolphe Braun co-
     editor with Maureen C. O'Brien (London, 1999).
Visual Documentation in Freud's Vienna (ed) 2007

Books in Progress
Mirrors of Memory: Freud, Photography, and the History of
     Art

**EXHIBIT 55**
**PAGE 1775**

**CONFIDENTIAL –**
**ATTORNEYS EYES ONLY**

2

<u>Exhibitions</u>
Co-curator of "Image and Enterprise: The Photographs of Adolphe Braun," Museum of Art, RISD and The Cleveland Museum of Art, Spring 2000. [reviewed in <u>New York Times</u>, Sunday, March 26, 2000]

<u>Articles in Books and Juried Journals</u>
"The Fat Stonecarver," in <u>Orsanmichele and the History and Preservation of the Civic Monument</u>, National Gallery of Art, <u>Studies in the History of Art</u> (forthcoming 2007).
"Freud's Moses of Michelangelo: Vasari, Photography, and Art Historical Practice," <u>Art Bulletin</u> 88 (Spring 2006): 158-176.
"Gradiva medica: Freud's First Female Analyst as Lizard-Slayer," <u>American Imago</u> 60.2 (Fall 2003): 287-303.
"The Dying Slave at Berggasse 19," <u>American Imago</u> 60.1 (Spring 2003): 9-20.
"Donatello's <u>Gattamelata</u> and its Humanist Audience," <u>Renaissance Quarterly</u>, (Fall 2002): 833-868.
"'Aulente giglio': l'iconografia dell'assunzione a Santa Maria del Fiore," in T. Verdon and A. Innocenti, eds. <u>Atti del VII Centenario del Duomo di Firenze</u> 5 vols. (Florence, 2001) vol. II* <u>La Cattedrale come spazio sacro, saggi sul Duomo di Firenze</u>, 151-167.
"Istoria and Meaning at the Porta della Mandorla," in <u>Santa Maria del Fiore: The Cathedral and its Sculpture</u> ed. M. Haines (Florence: Villa i Tatti 2001), 101-114.
"Art Enlightening the World," in <u>Image and Enterprise: The Photographs of Adolphe Braun</u>, ed. M. O'Brien and M. Bergstein (London, 1999), 121-139.
"The Mystification of Antiquity under Pius IX: Photography in Rome 1846-1878," in <u>Envisioning the Third Dimension: Sculpture and Photography</u>, ed. G. Johnson (Cambridge University Press, N.Y., 1998), 35-50.
"Evidences Again: Aaron Siskind and the Modernist Documentation of Art," <u>Visual Resources</u> IX (1995), 121-34.
"The Artist in His Studio: Photography, Art, and the Masculine Mystique," <u>Oxford Art Journal</u> 18 (1995), 45-58.
"We May Imagine It: Living with Photographic Reproduction at the End of our Century," Introductory Essay in <u>Art History Through the Camera's Lens</u>, ed. H. Roberts (New York, 1995), 3-34.
"Looking at Sculpture: The Photographers' Choices at Rhode Island School of Design," with Maureen C. O'Brien, <u>Visual Resources</u> X (1994), 79-99.
"Lonely Aphrodites: On the Documentary Photography of Sculpture," <u>Art Bulletin</u> LXXIV (1992), 475-98.
"Contrapposto as Form and Meaning in Nanni di Banco's St. Philip," <u>Source</u> XI (1992), 10-16.

**EXHIBIT 55**
**PAGE 1776**

CONFIDENTIAL –
ATTORNEYS EYES ONLY

3

"Marian Politics in Quattrocento Florence: The Renewed
   Dedication of Santa Maria del Fiore," <u>Renaissance
   Quarterly</u> (Winter,1991), 673-719.
"Two Early Renaissance Putti: Niccolò di Pietro Lamberti and
   Nanni di Banco," <u>Zeitschrift für Kunstgeschichte</u> 52
   (1989),82-88.
"The Date of Nanni di Banco's Quattro Coronati," <u>Burlington
   Magazine</u> CXXX (1988), 910-13.
"La vita civica di Nanni di Banco," <u>Rivista d'arte</u> XXXIX
   (1987), 55-82.
"Nanni di Banco, Donatello, and Realism in the Testa
   Virile," <u>Source</u> V (1986), 7-11.
"La Fede: Titian's Votive Painting for Antonio Grimani,"
   <u>Arte Veneta</u> XL (1986), 29-37.


<u>Book Reviews</u>
Review: Christfried Tögel, <u>Sigmund Freud: Unser Herz zeigt
   nach dem Süden, Reisebriefe 1895-1923</u> (Munich 2002),
   <u>American Imago</u> 61 (2004): 101-107.
Review: Lisa Jardine and Jerry Brotton, <u>Global Interests:
   Renaissance Art between East and West</u> (Ithaca, 2000) in
   <u>Renaissance Querterly</u> (Fall 2002).
Review: Ivan Gaskell, <u>Vermeer's Wager: Speculation on Art
   History, Theory, and Art Museums</u> (Reaktion, 2000)
   <u>Visual Resources</u> 18 (March 2002): 83-7.
Review: Gabriele Neher and Rupert Shepherd, eds.  <u>Revaluing
   Renaissance Art</u>, Ashgate, 2000, in <u>Renaissance
   Quarterly</u>, (Winter, 2001).
Review: Richard Brilliant, <u>My Laocoön</u>, Berkeley, 2000, in
   <u>Renaissance Quarterly</u>, (Summer, 2001).
Review: <u>Sculpture and its Reproductions</u> ed. Anthony Hughes
   and Eric Ranfft, London, 1997, in <u>Visual Resources</u> XIV,
   211-14.
Review: <u>Le Grand Tour: nelle fotografie dei viaggiatori del
   XIX secolo</u> ed. Italo Zannier, Venice, 1997, in <u>Visual
   Resources</u> XIV, 119-23.
Review: Francis Haskell, <u>History and its Images: Art and
   Interpretation of the Past</u>, London, 1992, in <u>Visual
   Resources</u> X, 401-6.
Review: Maria Sframeli, <u>Il Centro di Firenze restituito:
   Affreschi e frammenti lapidei nel museo di San Marco</u>,
   Florence, 1989, in <u>The Italian Journal</u> VI (1992), 66.
Review: James Beck, <u>Jacopo della Quercia</u> 2 vols, N.Y.1991,
   in <u>The Italian Journal</u> VI (1992), 65-66.

<u>Encyclopedia Entries</u>
v."Giovanni d'Antonio di Banco," in <u>Dizionario Biografico
   degli Italiani</u> (Enciclopedia Treccani, Rome, 2000).
v."Quattro Santi Coronati" and "Nanni di Banco" in
   <u>International Dictionary of Art and Artists</u> (London and
   Chicago, 1990), 91, 581-3.

<u>Exhibition Reviews</u>

**EXHIBIT 55**
**PAGE 1777**

**CONFIDENTIAL –
ATTORNEYS EYES ONLY**

4

"Arnolfo. Alle Origini del Rinascimento Fiorentino" Exh.
    Florence 2006. Paragone/Arte March 2007.
"The Very Impress of the Object: Photographing Sculpture
    from Fox Talbot to the Present Day," Exh. London, 1995,
    in Visual Resources XI, 73-9.

Selected Recent Lectures
"Freud and Italy," in "Studies in the History of Sexuality,"
    German Studies Association, San Diego October 2007.
"The Sculptural Meditations of a Hellenized Jew: Freud's
    Michelangelo," Freud's Jewish World, Center for Jewish
    History, New York, 4 December 2006.
"The Origins of Freud's Imagination," Roundtable Discussion,
    Philoctetes Center for the History of the Imagination,
    New York, 1 December 2006.
"Roman Fever: Freud Looks at Italy," Freud and the
    Humanities, Cogut Humanities Center, Brown University,
    26 October 2006.
"Freud's Moses of Michelangelo," Institute for the History
    of Psychiatry, New York Hospital, 4 October 2006.
"The Fat Stonecarver: Nanni di Banco at Orsanmichele,"
    National Gallery of Art, Center for Advanced Study in
    the Visual Arts, Symposium: Orsanmichele and the
    History and Preservation of the Civic Monument. 7
    October 2005.
"Freuds 'Moses des Michelangelo': Vasari, Photographie, und
    Kunhistorisches Praxis," Freud Museum Vienna, 4 April
    2005.
"Aaron Siskind and Modernist Painting," Symposium Interior
    Drama: Siskind's Works of the 1940's, Museum of Art
    RISD, 14 November 2003.
"Toward a More Sensate Wisdom: Leon Battista Alberti and
    Sculpture," American Association of Italian Studies
    Washington, DC, March 2003.
"Psychoanalysis and the Historiography of Art," New
    Psychoanalytic Perspectives on Making and Looking at
    Art, The Rhode Island Association for Psychoanalytic
    Psychologies in Association with the Rhode Island
    School of Design, May 2001.
"Donatello at the Parthenon," Renaissance Society of
    America, Florence, March 2000.
"Delusions and Dreams: Freud and the Photography of
    Antiquity," College Art Association, New York, February
    2000.
"Grand-Tour Photography in Florence: Giacomo Brogi and the
    Early Alinari," Providence Athenaeum, May 1999.
"Istoria and Meaning at the Porta della Mandorla," Santa
    Maria del Fiore: The Cathedral and its Sculpture Villa
    I Tatti, The Harvard University Center for Italian
    Renaissance Studies, June 1997.
"L'Assunzione a Santa Maria del Fiore," Il Fiore e la
    Vergine: La figura e il colto di Maria nella tradizione
    fiorentina University of Florence, Department of

**EXHIBIT 55**
**PAGE 1778**

CONFIDENTIAL –
ATTORNEYS EYES ONLY

5

Medieval History and Curia of Santa Maria del Fiore, December 1996.
"The Mystification of Antiquity Under Pope Pius IX: Photography in Rome 1846-1878," <u>Sculpture and Photography</u> University College, London, June 1995.
"The Artist in His Studio," <u>Images de l'artiste</u>, Comité International d'Histoire de l'Art, Lausanne,

<u>Selected Reviews of Mary Bergstein's Work</u>
Margaretha Engelhardt, interview with Mary Bergstein on Austrian National Radio, "Ö-1," "Freud and Michelangelo," 2006.
Melinda Hegarty, review of <u>Santa Maria del Fiore</u> in <u>Renaissance Quarterly</u> LVI (Autumn 2003): 776-7.
Geraldine A. Johnson, review of <u>The Sculpture of Nanni di Banco</u> in <u>The Art Bulletin</u> LXXXIV (September 2002): 526-28.
Shelley E. Zurow, review of <u>The Sculpture of Nanni di Banco</u>, in <u>Renaissance Quarterly</u>, LIV (Summer 2001).
H. McNeal Caplow, review of <u>The Sculpture of Nanni di Banco</u>, in <u>College Art Association Online Reviews</u>, 2001, caareviews.org.
Joanne Lukitsh, review of <u>Image and Enterprise: The Photographs of Adolphe Braun</u>, in <u>Visual Resources</u> XVI 2000: 401-5.
Eric Gibson, review of <u>The Sculpture of Nanni di Banco</u> in <u>The Wall Street Journal</u>, Friday, December 1, 2000.
Brian Tovey, review of <u>The Sculpture of Nanni di Banco</u>, in <u>The Art Newspaper</u> 108, November 2000.
"Art and Industry: the Images of Adolphe Braun," in <u>Chronicle of Higher Education</u> March 10, 2000.
Vicki Goldberg, "With a Worldly Eye for Sales as Well as Beauty," review of "Image and Enterprise," RISD Museum 1999 in <u>New York Times</u> Sunday, March 26, 2000.
Glenn G. Willumson, review of <u>Art History through the Camera's Lens</u>, Introduction by Mary Bergstein 1995, in <u>Victorian Studies</u> 40 (Spring 1997).
James Davis, "Interdisciplinary Courses at R.I.S.D. Designed by Mary Bergstein," in James Davis, <u>Interdisciplinary Courses and Team Teaching: New Arrangements for Learning</u> (Phoenix, Oryx Press, 1995), 205-6.


<u>Professional Memberships</u>: College Art Association; The Fulbright Association; Renaissance Society of America; American Association of University Women; American Association of Italian Studies; Editorial Board: <u>Visual Resources: An International Journal of Documentation.</u>

**EXHIBIT 55**
**PAGE 1779**

**CONFIDENTIAL –
ATTORNEYS EYES ONLY**

**Source List**

EXHIBIT 55
PAGE 1780

## List of Figures

Figure 1 (L):        Barbie Doll
Figure 1 (R):        Replica of Minoan snake-goddess from Crete

Figure 2:            Carter Bryant August 1998 Sketch (Bryant 00262)

Figure 3 (L):        Barbie Doll
Figure 3 (R):        Carter Bryant August 1998 Sketch (Bryant 00262)

Figure 4 (L):        Image of Venus of Willendorf
Figure 4 (R):        Barbie Doll

Figure 5:            Carter Bryant August 1998 Sketch (Bryant 00262)

Figure 6 (L):        Steve·Madden Advertisement from August 1998 Seventeen Magazine
Figure 6(R):         Carter Bryant August 1998 Sketch (Bryant 00262)

Figure 7 (L):        Paris Blues Advertisement from August 1998 Seventeen Magazine
Figure 7 (R):        Carter Bryant August 1998 Sketch (Bryant 00262)

Figure 8:            Close-up of "Jade" from Carter Bryant August 1998 Sketch (Bryant 00262)

Figure 9:            Carter Bryant August 1998 Sketch (Bryant 00262)

Figure 10:           Close-up of "Hallidae Backpack" from Carter Bryant August 1998 Sketch
                     (Bryant 00269)
Figure 11:           Close-up of "Jade" from Carter Bryant August 1998 Sketch (Bryant 00262)

Figure 12:           Carter Bryant 1998 Sketch (M0059760)

Figure 13 (L):       Bratz "Yasmin" Doll with Accessories
Figure 13 (R):       Bratz "Yasmin" Doll

Figure 14 (L):       Barbie Doll
Figure 14 (R):       Bratz "Sasha Girlfriendz Nite Out" Doll

Figure 15:           Kansas State "Cheerleader" Barbie Doll

Figure 16 (L):       Close-up of "Hallidae" from Carter Bryant August 1998 Sketch (Bryant 00262)
Figure 16 (R):       Bratz "Sasha Girlfriendz Nite Out" Doll

Figure 17 (L):       Bratz "Yasmin" Doll
Figure 17 (R):       Bratz "Sasha Girlfriendz Nite Out" doll "

Figure 18 (L):       Bratz "Yasmin" Doll

**EXHIBIT 55**
**PAGE 1781**

**CONFIDENTIAL –**
**ATTORNEYS EYES ONLY**

Figure 18 (R): Bratz "Sasha Girlfriendz Nite Out" Doll

Figure 19: Bratz "Twiins" Dolls

Figure 20 (L): "Hallidae" from Carter Bryant August 1998 Sketch (Bryant 00270)
Figure 20 (R): Bratz "Sasha Girlfriendz Nite Out" Doll

Figure 21 (L- Top): Close-up of "Lupe" from Carter Bryant August 1998 Sketch (Bryant 00262)
Figure 21 (L- Bot): Close-up of "Zoe" from Carter Bryant August 1998 Sketch (Bryant 00262)
Figure 21 (R-Top): Bratz "Yasmin" Doll
Figure 21 (R-Bot): Bratz "Chloe" doll

Figure 22 (L)/(R): Bratz "Sasha Girlfriendz Nite Out" Doll

Figure 23 (L)/(R): Bratz "Sasha Girlfriendz Nite Out" Doll with Accessories

Figure 24 (L)/(R): "Betty Boop" Drawing and Figurine

Figure 25 (L)/(R): Revlon Dolls

Figure 26: Margaret Keane Artwork, from Hemingway, Wayne. Just Above the Mantelpiece. (Booth-Clibborn, 2000)

Figure 27: Sailor Moon Anime Art, from Takeuchi, Naoko. Meet Sailor Moon. (Kodansha America, 1995)

Figure 28 Kenner's Blythe Doll, photographed in Garan, Gina. This is Blythe. (Chronicle Books, 2000)

Figure 29 (L)/(R): "Ally McBeal" Actresses Calista Flockhart and Lucy Liu

Figure 30: Carter Bryant August 1998 Sketch (Bryant 00262)

Figure 31: Bratz "Yasmin" Doll

Figure 32: Bratz "Sasha Girlfriendz Nite Out" Doll

**EXHIBIT 55**
**PAGE 1782**

CONFIDENTIAL –
ATTORNEYS EYES ONLY

Exhibits

EXHIBIT 55
PAGE 1783

1

**EXHIBIT 55**
**PAGE 1784**

CONFIDENTIAL –
ATTORNEYS EYES ONLY

Figure 1



Replica of Minoan Snake-goddess from Crete



Barbie Doll

EXHIBIT 55
PAGE 1785

2

EXHIBIT 55
PAGE 1786

CONFIDENTIAL —
ATTORNEYS EYES ONLY



Carter Bryant August 1998 Sketch (Bryant 00262)

EXHIBIT 55
PAGE 1787

3

EXHIBIT 55
PAGE 1788