# EXHIBIT B

THOMAS J. NOLAN (Bar No. 066992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
E-mail: tnolan@skadden.com

RAOUL D. KENNEDY (Bar No. 40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, 38th Floor
San Francisco, CA 94111-5974
Telephone: (415) 984-6400
Facsimile: (415) 984-2698
Email: rkennedy@skadden.com

Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE De Mexico, S.R.L. DE C.V., and Isaac Larian

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation<br><br>Defendant.<br><br>Consolidated with MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>**DISCOVERY MATTER**<br><br>[To be heard by Discovery Master Hon. Edward A. Infante (Ret.)]<br><br>**MGA'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF DRAFT PATENT ILLUSTRATIONS**<br><br>[Declarations of Samir Khare and Amy S. Park Filed Under Separate Cover]<br><br>Hearing Date: January 3, 2008<br>Time: 1:30 p.m.<br>Place: JAMS<br><br>**CONFIDENTIAL ATTORNEYS EYES ONLY – FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER** |

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| I. INTRODUCTION | 1 |
| II. FACTUAL BACKGROUND | 1 |
|    A. MGA Inadvertently Produces Privileged Draft Illustrations And Demands Their Return Under The Protective Order. | 1 |
|    B. Following An Unsuccessful Meet-and-Confer, Mattel Files Its Motion to Compel. | 3 |
| III. ARGUMENT | 3 |
|    A. The Draft Illustrations Are Protected By The Attorney-Client Privilege. | 3 |
|    B. The Draft Illustrations Are Protected By The Work Product Doctrine. | 7 |
| IV. CONCLUSION | 8 |

## TABLE OF AUTHORITIES

Page
**CASES**

Advanced Cardiovascular Sys., Inc. v. C.R. Bard, Inc.,
 144 F.R.D. 372 (N.D. Cal. 1992) .................................................................. 5, 8

Amsted Indust., Inc. v. Nat'l Castings, Inc.,
 No. 88 C 0924,
 1990 WL 103286 (N.D. Ill. July 13, 1990) ........................................................ 6

Conner Peripherals, Inc. v. W. Digital Corp.,
 No. C 93-20117 RMW/EAI,
 1993 U.S. Dist. LEXIS 20149 (N.D. Cal. June 8, 1993) ........................... 4, 5, 6, 7

In Hyuk Suh v. Choon Sik Yang,
 Case No. C 96-20891 EAI,
 1997 U.S. Dist. LEXIS 20077 (N.D. Cal. Nov. 18, 1997) .................................. 7

In re Spalding Sports Worldwide, Inc.,
 203 F.3d 800 (Fed. Cir. 2000) ....................................................................... 4, 7

Jack Winter, Inc. v. Koratron Co.,
 54 F.R.D. 44 (N.D. Cal. 1971) ............................................................................ 4

Knogo Corp. v. United States,
 No. 194-79,
 1980 U.S. Ct. Cl. LEXIS 1262 (Cl. Ct. Feb. 16, 1980) ............................... 4, 5, 6

McCook Metals L.L.C. v. Alcoa Inc.,
 192 F.R.D. 242 (N.D. Ill. 2000) .......................................................................... 6

Row Int'l Corp. v. Ecast, Inc.,
 241 F.R.D. 296 (N.D. Ill. 2007) .......................................................................... 7

Samuels v. Mitchell,
 155 F.R.D. 195 (N.D. Cal. 1994) ........................................................................ 4

Teknowledge Corp. v. Akamai Techs., Inc.,
 No. C 02-5741 SI,
 2004 U.S. Dist. LEXIS 19109 (N.D. Cal. Aug. 10, 2004) ................................... 5

# I. INTRODUCTION

The Discovery Master should deny Mattel Inc.'s ("Mattel") motion to compel production of draft illustrations (the "Illustrations") sent from MGA's patent illustrator to MGA's former outside patent counsel because, under controlling case law decided by the Discovery Master himself, those drafts are protected from disclosure under the attorney-client privilege and work product doctrine.

In 2003, MGA's patent illustrator prepared the Illustrations for MGA's counsel in connection with MGA's effort to patent a Doll With Aesthetic Changeable Footgear. The sole issue before the Discovery Master is whether the Illustrations are privileged. Despite that fact, Mattel spends most of its brief arguing that the Illustrations are relevant to the credibility of MGA and Carter Bryant because the illustrations purportedly demonstrate that MGA and Bryant unsuccessfully sought to mislead the United States Patent and Trademark Office (the "PTO") in connection with the patent application. By focusing on relevance, Mattel attempts to divert attention from the weakness of its legal arguments – arguments that the Discovery Master has rejected.

MGA denies Mattel's accusations. Further, regardless of whether the Illustrations may be relevant, they are protected from disclosure under the attorney-client privilege and the work product doctrine and thus should not be produced.

# II. FACTUAL BACKGROUND

### A. MGA Inadvertently Produces Privileged Draft Illustrations And Demands Their Return Under The Protective Order.

On August 1, 2007, during the deposition of Bryan Armstrong, Mattel attempted to question Mr. Armstrong about a fax cover sheet and two pages of attached draft Illustrations sent from Bobby Newquist, a patent illustrator, to Alan Rose, Esq., MGA's former outside patent counsel. (Zeller Decl. Ex. 1 at 317:9-16.)[1]

---

[1] Mr. Armstrong was MGA's Rule 30(b)(6) witness on the topic of certain aspects of MGA's copyright and trademark applications and registrations, in particular
*(cont'd)*

1  The draft illustrations, depicting five different figures, were prepared by Mr.
2  Newquist as part of the patent application process in which MGA, through its
3  counsel, sought to patent a Doll With Aesthetic Changeable Footgear. (Declaration
4  of Samir K. Khare ("Khare Decl.") ¶ 2.) MGA advised Mattel that the documents
5  are protected from disclosure under the attorney-client privilege and work product
6  doctrine, and had been inadvertently produced. (Zeller Decl. Ex. 1 at 317:20-25,
7  318:8-21.) MGA demanded that Mattel return the documents under the protective
8  order entered in this case. (Id. Ex. 1 at 319:16-19.) The parties agreed at the time
9  that if there were any issues regarding the claw back of the documents, they would
10 address them at the upcoming deposition of Sam Khare. (Id.)

11      On August 17, MGA wrote to Mattel, again asserting that the documents are
12 privileged and demanding their immediate return and the destruction of all copies as
13 required under the protective order.[2] (Zeller Decl. Ex. 2.) On August 20, Mattel
14 deposed Sam Khare, MGA's Rule 30(b)(6) witness on the topic of the content of
15 MGA's patent applications. (Park Decl. Ex. 2 (Khare Depo. Tr.) at 57:8-12, 164:5-
16 10.) Notwithstanding the parties' agreement to raise any issues concerning the claw
17 back of the documents at that deposition, Mattel did not raise any such issues.
18 (Khare Decl. ¶ 8.) More than two months later, Mattel asserted for the first time that
19 MGA's claim of privilege was improper and demanded that MGA re-produce the
20 documents. (Zeller Decl. Ex. 8 at 92.)

---

*(cont'd from previous page)*
"on what documents were filed . . . but not [] the substance of the documents . . . ." (Declaration of Amy S. Park ("Park Decl.") Ex. 1 (Armstrong Depo. Tr.) at 329:22-330:12.)

[2] Although Mattel contends that, on August 22 or 23, it sent MGA a letter certifying that Mattel had destroyed all copies of the documents, the correspondence Mattel submitted in support of its motion does not support its assertion. Indeed, the letter Mattel submitted with its motion has nothing to do with the subject documents. (See Zeller Decl. Ex. 3.) We have conducted a diligent search of our databases and have failed to locate any correspondence from Mattel – dated in August 2007 or otherwise – in which Mattel certified that it destroyed all copies of the relevant documents. (Park Decl. ¶ 1.)

2
MGA'S OPPOSITION TO MATTEL'S MOTION TO COMPEL PRODUCTION
OF PRIVILEGED DRAFT PATENT ILLUSTRATIONS

B. **Following An Unsuccessful Meet-and-Confer, Mattel Files Its Motion to Compel.**

On December 4 and 5, the parties met and conferred regarding Mattel's demand. (Id. Exs. 9 & 10.) After considering Mattel's authorities, MGA agreed to produce the fax cover sheet only, but declined to re-produce the Illustrations because they are protected from disclosure under the attorney-client privilege and work product doctrine. (Id. Ex. 10.) Accordingly, Mattel filed its motion to compel.

III. **ARGUMENT**

Mattel devotes much of its brief to asserting – through speculation and selectively misleading citations to the record – that MGA and Bryant attempted, but failed, to mislead the PTO while seeking to patent the Doll With Aesthetic Changeable Footgear.[3] Mattel therefore asserts that the Illustrations are relevant to the credibility of MGA and Bryant. Mattel misses – or deliberately evades – the point. While MGA rejects Mattel's assertions and speculation, regardless of whether the Illustrations may be relevant, they are protected from disclosure under the attorney-client privilege and the work product doctrine and thus should not be produced.

A. **The Draft Illustrations Are Protected By The Attorney-Client Privilege.**

A document or communication is protected under the attorney-client privilege if:

---

[3] For example, Mattel asserts that after looking at a Bratz doll from 2001, Armstrong acknowledged that Bryant made a false statement to the PTO when he stated that the release of the dolls with changeable footgear did not occur until 2002, and that the changeable footgear in the patent application has been in use since 2001. But Mattel selectively omits that Armstrong's statements were qualified by the fact that the doll he was shown was still in the packaging and thus Armstrong could not see how the foot attached. (Park Decl. Ex. 1 (Armstrong Depo. Tr.) at 248:1-2.) Mattel also fails to disclose that Sam Khare – MGA's Rule 30(b)(6) witness on the content of patent applications – testified that Mr. Bryant's statements to the PTO were accurate and that there are noticeable differences between the dolls released in 2001 and the configurations in the patent application. (Park Decl. Ex. 3 (Khare Depo. Tr.) at 155:20-158:3.)

> (1) the asserted holder of the privilege is . . . a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding . . . .

Conner Peripherals, Inc. v. W. Digital Corp., No. C 93-20117 RMW/EAI, 1993 U.S. Dist. LEXIS 20149, *5 (N.D. Cal. June 8, 1993) (Infante, J.) (citation omitted). The fact that a document was prepared by or sent from a third party does not *a fortiori* preclude application of the privilege. Indeed, courts have repeatedly recognized that the concept of communication between and attorney and client "logically encompasses reports prepared by third parties at the request of the attorney or client where the purpose of the reports was to put in usable form information obtained from the client." Samuels v. Mitchell, 155 F.R.D. 195, 198 (N.D. Cal. 1994); Knogo Corp. v. United States, No. 194-79, 1980 U.S. Ct. Cl. LEXIS 1262, *6 (Cl. Ct. Feb. 16, 1980) ("A communication . . . by any form of agency employed or set in motion by the client is within the privilege.") (citation omitted). Additionally, there need not be an express request for legal advice for the privilege to apply; an implied request for legal advice is sufficient to satisfy the requirement. See, e.g., In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 806 (Fed. Cir. 2000) ("[I]t is not necessary to expressly request confidential legal assistance when that request is implied.").

Further, contrary to Mattel's assertion, the fact that documents are technical and were conveyed to a patent attorney does not preclude a finding of privilege. Indeed, Mattel's "patent attorney as conduit" theory has been expressly and repeatedly rejected by the Discovery Master and numerous other courts.[4] As the Discovery Master has previously held, "communications from inventor to patent

---

[4] See, e.g., Conner Peripherals, 1993 U.S. Dist. LEXIS 20149, at **8-9 (adopting the Advanced Cardiovascular and Knogo line of cases, which disavow Jack Winter, Inc. v. Koratron Co., 54 F.R.D. 44 (N.D. Cal. 1971), and its progeny).

4
MGA'S OPPOSITION TO MATTEL'S MOTION TO COMPEL PRODUCTION
OF PRIVILEGED DRAFT PATENT ILLUSTRATIONS

lawyer, even those that are entirely technical, remain *presumptively* protected by the attorney-client privilege." Conner Peripherals, 1993 U.S. Dist. LEXIS 20149, at **7-8 (citation omitted); Teknowledge Corp. v. Akamai Techs., Inc., No. C 02-5741 SI (Related Case No. C 03-3321 SI), 2004 U.S. Dist. LEXIS 19109, at *6 (N.D. Cal. Aug. 10, 2004) ("[T]echnical information communicated to a patent attorney does not warrant different treatment than any other information communicated to an attorney in the process of obtaining legal services.") (citation omitted); Advanced Cardiovascular Sys., Inc. v. C.R. Bard, Inc., 144 F.R.D. 372, 378 (N.D. Cal. 1992) ("[W]e do not believe that patent counsel usually serve primarily as conduits, even of technical information. . . . [P]atent lawyers often engage in quite substantial private dialogue as part of the process of shaping and focusing a patent application, and . . . it is reasonable for them to expect that dialogue to remain confidential."); Knogo, 1980 U.S. Ct. Cl. LEXIS 1262, at *12 ("The signed, sworn, and filed application might be considered a communication for relay and not for the attorney's ears alone, but the same cannot be said about the technical communications which preceded the signed, sworn, and filed patent application.").

Documents reflecting the communications between an inventor and his patent counsel are presumptively entitled to protection because they evince a

> dialectical process in which some information is selected for inclusion in the application and some is rejected . . . [and] an inventor is likely to expect to engage in much more communication with counsel *than would ever be exposed to the PTO in the application process.* In this respect, the inventors [sic] expectations would seem to parallel the expectations of a prospective litigant.

Advanced Cardiovascular, 144 F.R.D. at 377 (emphasis added). To overcome the presumption of privilege, the party requesting the documents must make a "very compelling showing" that it was intended that the documents would "be disclosed, without editing, to the PTO." Id. at 378.

Here, the Illustrations are presumptively privileged because they reflect and are the product of a series of confidential communications between MGA, its counsel,

5

and its patent illustrator, as part of the dialectical process by which MGA drafted and shaped its patent for Doll With Changeable Footgear – with advice of counsel – in an effort to submit a successful patent application and ensure MGA maximum legal protection for that patent. (Khare Decl. ¶ 5.) Indeed, like the draft patent applications in Conner Peripherals, Mr. Newquist's Illustrations "reflect the complex discourse between an inventor and his patent attorney and their efforts to obtain the strongest permissible patent protection for the invention." Conner Peripherals, 1993 U.S. Dist. LEXIS 20149, at *14. As a result, the Illustrations are presumptively protected from disclosure.[5]

Mattel has not made and cannot make the "very compelling" showing required to overcome that presumption. There are substantive differences between all five of the figures in the illustrations at issue here (which are early drafts of the drawings that were used to illustrate the claims in MGA's Doll With Changeable Footgear patent application) and the five figures in the illustrations included in the final

---

[5] Mattel's reliance on McCook Metals L.L.C. v. Alcoa Inc., 192 F.R.D. 242 (N.D. Ill. 2000), and Amsted Indust., Inc. v. Nat'l Castings, Inc., No. 88 C 0924, 1990 WL 103286 (N.D. Ill. July 13, 1990), for the proposition that technical drawings cannot be privileged is misplaced. Neither of those cases holds that technical drawings are *per se* non-privileged. Rather, those courts limited their holdings to the drawings at issue in those cases. See McCook, 192 F.R.D. at 255; Amsted, 1990 WL 103286, at *4. Further, in Amsted, the court found that a drawing was not privileged because, unlike the Illustrations at issue here, there was "[n]o request for legal advice implicit." Amsted, 1990 WL 103286, at *4.

Likewise, Mattel's assertion that the Illustrations are not privileged because they contain information that was later publicly disclosed also fails. The mere fact that a confidential communication between a client and his attorney contains facts that later become public does not preclude application of the attorney-client privilege. See, e.g., Knogo, 1980 U.S. Ct. Cl. LEXIS 1262, at *14 (holding that the situation where an inventor conveys factual information to his attorney is like "a client giv[ing] general information to his lawyer so that the lawyer may prepare a complaint in any ordinary civil action. *The fact that some of the information is thus publicly disclosed does not waive the privilege*") (emphasis added). The drafting of the Illustrations is analogous to a plaintiff telling his attorney facts that will form the basis of and be alleged in a complaint. The patent attorney, like the plaintiff's attorney, takes the facts his client gives him and constructs a legally cognizable document that he will then make public. That is what MGA's counsel did with the draft Illustrations, and MGA's expectations should be treated no differently from those of a plaintiff retaining an attorney to draft a complaint.

application, which are the product of the complex discourse between MGA, its counsel and its patent illustrator.[6] (Khare Decl. ¶ 6.) Thus, Mattel simply cannot show that MGA intended that the Illustrations would be disclosed without editing to the PTO.[7]

### B. The Draft Illustrations Are Protected By The Work Product Doctrine.

The Illustrations also are protected from disclosure under the work product doctrine because they are draft documents that were prepared as part of the patent application process. See In Hyuk Suh v. Choon Sik Yang, Case No. C 96-20891 EAI, 1997 U.S. Dist. LEXIS 20077, at *16 (N.D. Cal. Nov. 18, 1997) ("[W]ork product immunity from disclosure 'has been held applicable [to] preliminary drafts of legal documents,' which would include draft trademark applications.") (citing Conner Peripherals, 1993 U.S. Dist. LEXIS 20149, at *13). Courts have recognized that there is an adversarial dimension to the patent application process, whereby an application is subject to a potentially multi-staged process of submissions, rejections

---

[6] MGA is prepared, at the Discovery Master's request, to submit the illustrations for an *in camera* review.

[7] Nowhere does Mattel contend that the Illustrations are producible under the crime-fraud exception to the attorney-client privilege. However, even if Mattel had made such an assertion, it would fail as a matter of law because Mattel has not made and cannot make the multi-pronged *prima facie* showing necessary to invoke that exception. See Spalding, 203 F.3d at 807 (showing of fraud requires the following "indispensable" elements: "(1) a representation of a material fact, (2) the falsity of that representation, (3) the intent to deceive or, at least, a state of mind so reckless as to the consequences that it is held to be the equivalent of intent (scienter), (4) a justifiable reliance upon the misrepresentation by the party deceived which induces him to act thereon, and (5) injury to the party deceived as a result of his reliance on the misrepresentation."). Among other "indispensable" elements, Mattel cannot show that the PTO relied to its detriment on any alleged fraudulent statement. Id. (holding that a party seeking to establish fraud in the patent application context must make a "clear showing of reliance" by the PTO, and rejecting argument that crime-fraud exception applied); Row Int'l Corp. v. Ecast, Inc., 241 F.R.D. 296, 302 (N.D. Ill. 2007) (rejecting assertion that crime-fraud exception applied because party failed to make a *prima facie* showing of fraud). Indeed, as Mattel concedes, the PTO rejected the patent application (Zeller Decl. Exs. 5 & 6), and, thus, it necessarily did not detrimentally rely on any purported misstatement in connection with the application.

1  with commentary and re-submissions, until an application succeeds. See <u>Advanced</u>
2  <u>Cardiovascular</u>, 144 F.R.D. at 376. In <u>Advanced Cardiovascular</u>, the court explained
3  that although the patent application process is, at some stages, *ex parte*:

> we also understand that the PTO requires applications to satisfy demanding standards before issuing patents and often rejects applications as initially presented, thus initiating . . . what can become a multi-staged process of submissions, rejections with commentary, re-submissions, etc. Experienced patent lawyers anticipate this process. They understand that their role is to *persuade* the PTO to issue the patent, and that the process of persuasion may well take the form of an elaborate debate, waged through a series of exchanges of dense writings. Thus it seems naive to suggest that there is no adversarial dimension to this process – or that the dialogue between counsel and inventor is unaffected by that dimension.

10 <u>Id</u>.

11  This multi-staged process often results in – and did result in here – the creation
12  of protected work product. As a result, the Illustrations are protected from disclosure
13  on this basis as well.

14 **IV.  CONCLUSION**

15  For the foregoing reasons, the Discovery Master should: (i) deny Mattel's
16  motion to compel production of the draft Illustrations and a Rule 30(b)(6) witness to
17  testify about those documents, and (ii) order Mattel to certify that it has destroyed
18  any and all paper and electronic copies of those documents as required under the
19  protective order.

20 DATED:    December 18, 2007

22  SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

25  _____
   Thomas J. Nolan
   Attorneys for Counter-Defendants, MGA
   ENTERTAINMENT, INC., ISAAC LARIAN,
   MGA ENTERTAINMENT (HK) LIMITED,
   AND MGAE de MEXICO S.R.L. de C.V.

---

8

MGA'S OPPOSITION TO MATTEL'S MOTION TO COMPEL PRODUCTION
OF PRIVILEGED DRAFT PATENT ILLUSTRATIONS