1  For example, Mattel's definition of "BRATZ INVENTION" contains ten separate

2  component parts ("representation, idea, concept, work, process, procedure, plan,

3  improvement, DESIGN or other development").  The incorporation of the defined

4  term "DESIGN" adds at least another 21 elements ("all works, designs, artwork,

5  sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

6  diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

7  practice, developments, inventions and/or improvements").  The inclusion of these

8  disparate concepts in the term "invention" improperly conflates distinct issues of

9  patent law, copyright protection, trade secret law and the common law protecting

10  original ideas, many of which have no place in the ordinary usage of the term

11  "invention."  In its previous supplemental responses, MGA (HK) used the word

12  "invention" in its ordinary usage, and does so again in these second supplemental

13  responses.  During the meet and confer process regarding MGA (HK)'s supplemental

14  responses, Mattel's counsel objected to MGA (HK)'s responses, and argued that

15  MGA (HK) must either use Mattel's distorted definitions or respond to each of the

16  many component parts of Mattel's defined terms.  As was made clear during the meet

17  and confer process and as more fully set forth in MGA's Opposition to Mattel, Inc.'s

18  Motion To Compel Responses To Interrogatories (Nos. 27, 28, 29, 30, 31, 32, 33, 34,

19  35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 46, 47, 48, 49 and 50) By The MGA Parties,

20  MGA (HK) objects to this interrogatory as compound and a violation of the 50-

21  interrogatory limit to the extent that Mattel continues to assert that MGA (HK) is

22  required to respond to each component part of Mattel's defined terms.

23         Subject to and without waiving the foregoing objections, MGA (HK)

24  provides its Second Supplemental Response as follows:

25         MGA (HK) contends that, applying the generally-accepted definitions of

26  the words "based on" and "design", neither the first generation of Bratz dolls nor any

27  subsequent Bratz products were based on any Carter Bryant designs created on or

28  before October 19, 2000.  MGA (HK) further contends that even if MGA (HK)

EXHIBIT ___36___

PAGE ___475___

1  applies Mattel's misleading definitions of "BASED ON" and "DESIGN," neither the

2  first generation of Bratz dolls nor any of subsequent Bratz products were "BASED

3  ON" any Carter Bryant "DESIGNS" created on or before October 19, 2000. MGA

4  (HK) further contends that the first generation of Bratz dolls (and subsequent Bratz

5  products) were "conceived of" and "reduced to practice" for purposes of design

6  patent law, and first expressed in a tangible medium for purposes of copyright law,

7  after October 20, 2000, as a result of original, creative efforts of artists employed by,

8  or working on behalf of, MGA. All first-generation Bratz dolls and subsequent Bratz

9  products are not substantially similar to, are not a copy of, and are not derivative of,

10  any Carter Bryant designs completed on or before October 19, 2000.

11       To the extent that Mattel argues that the shapes of characters in Carter

12  Bryant's drawings that he called "Bratz" (including, but not limited to, those

13  drawings identified by Carter Bryant in Exhibit 5 of his deposition as being sketched

14  in August 1998) represented a conception of what could have later become a three-

15  dimensional object that could have been the subject of a design patent, MGA (HK)

16  contends as follows:

17       Carter Bryant was not a sculptor, and any effort to translate his pre-1999

18  two-dimensional flat art into a three-dimensional form for use as a fashion doll sculpt

19  would have produced shapes that were different from the actual shape of the final

20  three-dimensional Bratz sculpt used in manufacturing the first generation of Bratz

21  dolls released on the market by MGA in or about June 2001. Also, different sculpt

22  artists would have created different sculpts -- Bryant's two-dimensional drawings did

23  not dictate a specific three-dimensional object. The shapes of the characters in

24  Bryant's drawings bear little resemblance to the final shape of the actual Bratz dolls.

25  Differences between the drawings and the final shape of the actual Bratz dolls

26  include, but are not limited to, the following: posture; hip-to-waist ratio; feet size

27  (dolls' feet are not as exaggerated as characters' feet in the drawings); head size

28  (dolls' heads are proportionally smaller than characters' heads in the drawings); eyes

EXHIBIT ___26___

PAGE ___476___

1  (dolls' eyes are more open than characters' eyes in the drawings); other facial features

2  including lips, cheek bones, chin and forehead.

3  Moreover, the final physical shape of the first generation of Bratz dolls,

4  released on the market by MGA in or about June 2001, was conceived of by

5  Margaret Leahy, working on behalf of MGA, along with other MGA agents and

6  employees such as employees in Hong Kong and Mercedeh Ward. The conception

7  of this physical shape was completed on or after October 20, 2000, and reduced to

8  practice no earlier than December 19, 2000.

9  Copyright infringement analysis under Ninth Circuit law requires that

10  "objective" or "extrinsic" elements that are "scènes-à-faire" in the public domain, or

11  public domain materials that Bryant was aware of and that directly or indirectly

12  influenced him in developing his concept for a new line of fashion dolls, be filtered

13  out of the subject works, and, thereafter, that the remaining "subjective" or

14  "intrinsic" elements be evaluated for substantial similarity. Carter Bryant's 1998

15  drawings contain many elements that must be filtered out, including but not limited

16  to the oversized head, eyes, lips, and feet of the figures in Bryant's drawings and the

17  stock model and/or doll poses. A non-exhaustive list of examples of prior existing

18  works that incorporate such elements includes the following: sources of inspiration

19  specifically identified by Carter Bryant, including Steve Madden advertisements and

20  Paris Blues advertisements, which were highly visible in 1998 (various Steve

21  Madden advertisements also served as a key inspiration for Mattel's own "Toon

22  Teens" dolls); Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and Barbie

23  dolls; Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little Miss No

24  Name; Hello Kitty; Coca-Cola advertisements; anime, including, e.g., Sailor Moon;

25  and manga.

26  Once all of the materials that directly or indirectly influenced Bryant

27  and all "scène-à-faire" features are eliminated from the analysis, the first generation

28  Bratz dolls (and all subsequent Bratz products) are readily seen as not substantially

MGA HK'S 3RD SUPP'L RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT  310

PAGE  477

1  similar to Carter Bryant's 1998 drawings.  The differences between the drawings and
2  the first generation Bratz dolls include, but are not limited to, the following:

3  - Posture
4  - Hip-to-waist ratio
5  - Feet size (dolls' feet are not as exaggerated as characters' feet in
6    the drawings)
7  - Head size (dolls' heads are proportionally smaller than characters'
8    heads in the drawings)
9  - Eyes (dolls' eyes are more open than characters' eyes in the
10   drawings)
11 - Eye to lips ratio (lips of characters in drawings are proportionally
12   larger relative to eyes than are lips of dolls)
13 - Hair (characters in drawings have much edgier hairstyles than the
14   dolls do)
15 - Shapes of eyes and eye design
16 - Shapes of lips
17 - Overall look and feel (dolls are overall softer, less extreme than
18   drawings)

19       That the dolls and the drawings are not substantially similar also is
20 consistent with the fact that Carter Bryant was not a sculptor, and, as discussed
21 above, any effort to translate his pre-1999 two-dimensional flat art into a three-
22 dimensional form for use as a fashion doll sculpt would have produced shapes that
23 were different from the actual shape of the final three-dimensional Bratz sculpt used
24 in manufacturing the first generation of Bratz dolls released on the market by MGA
25 in or about June 2001.  Indeed, a team of highly-skilled artists (including several that
26 had been used by Mattel) spent months developing the Bratz first-generation dolls—
27 valuable time and original creative effort that would not have been necessary if said
28 first-generation Bratz dolls were simply a copy of Bryant's designs.

EXHIBIT ___3 6___

PAGE ___478___

1    The absence of substantial similarity is further shown in the close

2  correlation between Bryant's drawings and the inspiration he points to, including but

3  not limited to the Steve Madden and Paris Blues advertisements in the August 1998

4  issue of *Seventeen Magazine*, as well as other advertisements in that issue, such as

5  the Coca Cola advertisement.

6    Mattel's own My Scene Barbie line of dolls provides further proof that

7  the first generation of Bratz dolls was not substantially similar to the Bryant

8  drawings, in that (i) Mattel asserts that the My Scene Barbie dolls are independent

9  works of art, not copied from Bratz, yet (ii) said dolls are far closer in appearance to

10  Bratz dolls than are Bryant's two-dimensional drawings.

11    Additional details regarding such differences will be the subject of

12  expert disclosures and will be provided in accordance with the Court's schedule for

13  expert discovery.

14    With respect to any Carter Bryant contribution to the first generation

15  Bratz product after October 4, 2000 and before October 21, 2000, i.e., during a

16  period that he was performing such services for MGA pursuant to a freelance

17  contract while completing a two-week end-of-employment notice period at Mattel,

18  MGA (HK) notes that any such contribution was far outweighed by the original

19  and/or creative input of other artists working for or on behalf of MGA on the Bratz

20  concept, which was owned by MGA as a consequence of the October 4, 2000

21  transfer of rights from Bryant to MGA.

22    With respect to Bratz two-dimensional character art utilized on, for

23  example, Bratz product packaging and licensed products, while the initial Bratz

24  character art was derivative of Bryant's initial sketches from 1998, by no later than

25  August, 2003, the Bratz character art had changed sufficiently such that it was no

26  longer derivative of Bryant's sketches.

27    The following persons have knowledge of facts and circumstances

28  surrounding the foregoing: Isaac Larian; Carter Bryant; Margaret Leahy; Veronica

19

1  Marlow; Mercedeh Ward; Sarah Halpern; Paula Garcia; Steve Tarmichael; Rebecca

2  Harris; Tina Tomiyama; Cecilia Kwok; David Dees; Jesse Ramirez; Samuel Wong;

3  Lily Martinez; Ei Akiko Fong; John Steven Baulch; Aileen Storer; Debora

4  Middleton; Ronan Spelman; Charlotte Broussard.

5           The following documents may be relevant to the foregoing:  all

6  DOCUMENTS that refer to or evidence the work performed by MGA employees

7  and freelancers toward the reduction to practice of the first generation of Bratz dolls

8  during the period after October 20, 2000 through June 1, 2001, including but not

9  limited to:  Carter Bryant's drawings; documents and tangible things produced by

10 Margaret Leahy; tangible things produced by Veronica Marlow; invoices submitted

11 by employees and/or freelance artists working for MGA for work performed on the

12 Bratz project; all DOCUMENTS that constitute samples of the following items in the

13 public domain in 1998: Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and

14 Barbie dolls; Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little

15 Miss No Name; Hello Kitty; anime, including, e.g., Sailor Moon; manga; Coca-Cola

16 advertisements; Steve Madden advertisements; and Paris Blues advertisements;

17 Bratz prototypes, samples, sculpts, and rotocasts found in Hong Kong and produced

18 to Mattel.  The documents evidencing this work are too numerous to identify

19 individually.

20 **THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 42:**

21          MGA (HK) incorporates by reference its General Response and General

22 Objections above, as though fully set forth herein and specifically incorporates

23 General Objection No. 7 (regarding Definitions), including without limitation MGA

24 (HK)'s objection to the definition of the terms BASED ON, BRATZ DOLLS,

25 BRATZ, DESIGN, IDENTIFY and REFER OR RELATE TO, and further objects to

26 this interrogatory on the ground that it is overbroad, unduly burdensome, vague and

27 ambiguous.

28          MGA (HK) also objects to this interrogatory to the extent it seeks

MGA HK'S 3RD SUPP'L RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT __36__

__480__

PAGE ____

1  information that is not subject to disclosure under any applicable privilege, doctrine
2  or immunity, including without limitation the attorney-client privilege, the work
3  product doctrine, the right of privacy, and all other privileges recognized under the
4  constitutional, statutory or decisional law of the United States of America, the State
5  of California or any other applicable jurisdiction. MGA (HK) objects to this
6  interrogatory to the extent it calls for a legal conclusion.

7      MGA (HK) further objects to this interrogatory on the ground that it is
8  premature because the invention, creation, conception, or reduction to practice of
9  Bratz (and other legal concepts that may be relevant) will be the subject of expert
10  testimony at trial. MGA (HK) objects to this interrogatory to the extent it seeks to
11  limit the expert testimony that MGA (HK) may seek to introduce at trial. MGA (HK)
12  will identify its experts and make related disclosures in accordance with the Court's
13  orders and applicable rules.

14      MGA (HK) further objects to this interrogatory on the grounds that it
15  seeks information that is not relevant to the claims or defenses of any party to the
16  action and is not reasonably calculated to lead to the discovery of admissible
17  evidence because the INVENTIONS AGREEMENT executed by Carter Bryant in or
18  around January 1999, purports to state that any inventions conceived or reduced to
19  practice by him during his employment with Mattel would be owned by Mattel. The
20  references to the conception and reduction to practice of an invention are terms of art
21  in patent law. Accordingly, copyright law principles of substantial similarity,
22  copying, and derivative works are not relevant to the INVENTIONS AGREEMENT
23  which, by its terms, involves only principles of patent law.

24      MGA (HK) further objects on the ground that this interrogatory is an
25  overbroad and unduly burdensome contention interrogatory to the extent it asks for
26  "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*
27  *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (CD. Cal. 1998) (rejecting discovery
28  requests seeking "all facts, documents, and witnesses that support the denial of a



EXHIBIT 36
PAGE 481

1  statement or allegation of fact" because the "universe of potentially responsive

2  information is almost endless").

3          MGA (HK) further objects to the extent that this interrogatory seeks

4  information that is outside MGA (HK)'s knowledge and is not in MGA (HK)'s

5  possession, custody, or control. In particular, MGA (HK) objects to this interrogatory

6  to the extent that it requests that MGA (HK) "state *all* facts ... and IDENTIFY *all*

7  PERSONS ... and *all* DOCUMENTS" (emphasis added).

8          MGA (HK) objects to the interrogatory on the ground that it is

9  compound and therefore Mattel has propounded more than 50 interrogatories,

10  including discrete subparts, in violation of Judge Larson's order of February 22,

11  2007, that "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

12  04049-SGL and CV 05-02727]." In its supplemental response to this interrogatory,

13  MGA (HK) did not refuse to answer the interrogatory based on the 50-interrogatory

14  limit, but rather refused to use the compound and misleading defined terms that

15  permeate Mattel's interrogatories.  The interrogatories attempt to use misleading and

16  unfair definitions to create jury confusion or to circumvent the 50-interrogatory limit.

17  For example, Mattel's definition of "BRATZ INVENTION" contains ten separate

18  component parts ("representation, idea, concept, work, process, procedure, plan,

19  improvement, DESIGN or other development").  The incorporation of the defined

20  term "DESIGN" adds at least another 21 elements ("all works, designs, artwork,

21  sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

22  diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

23  practice, developments, inventions and/or improvements").  The inclusion of these

24  disparate concepts in the term "invention" improperly conflates distinct issues of

25  patent law, copyright protection, trade secret law and the common law protecting

26  original ideas, many of which have no place in the ordinary usage of the term

27  "invention."  In its previous supplemental responses, MGA (HK) used the word

28  "invention" in its ordinary usage, and does so again in these third supplemental

22

MGA HK'S 3RD SUPP'L RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT _36_

PAGE _482_

1  responses. During the meet and confer process regarding MGA (HK)'s supplemental

2  responses, Mattel's counsel objected to MGA (HK)'s responses, and argued that

3  MGA (HK) must either use Mattel's distorted definitions or respond to each of the

4  many component parts of Mattel's defined terms. As was made clear during the meet

5  and confer process and as more fully set forth in MGA's Opposition to Mattel, Inc.'s

6  Motion To Compel Responses To Interrogatories (Nos. 27, 28, 29, 30, 31, 32, 33, 34,

7  35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 46, 47, 48, 49 and 50) By The MGA Parties,

8  MGA (HK) objects to this interrogatory as compound and a violation of the 50-

9  interrogatory limit to the extent that Mattel continues to assert that MGA (HK) is

10  required to respond to each component part of Mattel's defined terms.

11        Subject to and without waiving the foregoing objections, MGA (HK)

12  provides its Third Supplemental Response as follows:

13        MGA (HK) contends that, applying the generally-accepted definitions of

14  the words "based on" and "design", neither the first generation of Bratz dolls nor any

15  subsequent Bratz products were based on any Carter Bryant designs created on or

16  before October 19, 2000. MGA (HK) further contends that even if MGA (HK)

17  applies Mattel's misleading definitions of "BASED ON" and "DESIGN," neither the

18  first generation of Bratz dolls nor any of the subsequent Bratz products were

19  "BASED ON" any Carter Bryant "DESIGNS" created on or before October 19,

20  2000. MGA (HK) further contends that the first generation of Bratz dolls (and

21  subsequent Bratz products) were "conceived of" and "reduced to practice" for

22  purposes of design patent law, and first expressed in a tangible medium for purposes

23  of copyright law, after October 20, 2000, as a result of original, creative efforts of

24  artists employed by, or working on behalf of, MGA. All first-generation Bratz dolls

25  and subsequent Bratz products are not substantially similar to, are not a copy of, and

26  are not derivative of, any Carter Bryant designs completed on or before October 19,

27  2000.

28        To the extent that Mattel argues that the shapes of characters in Carter

23

EXHIBIT 36

PAGE 483

1  Bryant's drawings that he called "Bratz" (including, but not limited to, those
2  drawings identified by Carter Bryant in Exhibit 5 of his deposition as being sketched
3  in August 1998) represented a conception of what could have later become a three-
4  dimensional object that could have been the subject of a design patent, MGA (HK)
5  contends as follows:

6        Carter Bryant was not a sculptor, and any effort to translate his pre-1999
7  two-dimensional flat art into a three-dimensional form for use as a fashion doll sculpt
8  would have produced shapes that were different from the actual shape of the final
9  three-dimensional Bratz sculpt used in manufacturing the first generation of Bratz
10  dolls released on the market by MGA in or about June 2001.  Also, different sculpt
11  artists would have created different sculpts – Bryant's two-dimensional drawings did
12  not dictate a specific three-dimensional object.  The shapes of the characters in
13  Bryant's drawings bear little resemblance to the final shape of the actual Bratz dolls.
14  Differences between the drawings and the final shape of the actual Bratz dolls
15  include, but are not limited to, the following:  posture; hip-to-waist ratio; feet size
16  (dolls' feet are not as exaggerated as characters' feet in the drawings); head size
17  (dolls' heads are proportionally smaller than characters' heads in the drawings);
18  removable hair (a feature present only in the drawings); eyes (dolls' eyes are more
19  open than characters' eyes in the drawings); other facial features including lips, cheek
20  bones, chin and forehead.

21        Moreover, the final physical shape of the first generation of Bratz dolls,
22  released on the market by MGA in or about June 2001, was conceived of by
23  Margaret Leahy, working on behalf of MGA, along with other MGA agents and
24  employees such as employees in Hong Kong and Mercedeh Ward.  The conception
25  of this physical shape was completed on or after October 20, 2000, and reduced to
26  practice no earlier than December 19, 2000.

27        Copyright infringement analysis under Ninth Circuit law requires that
28  "objective" or "extrinsic" elements that are "scènes-à-faire" in the public domain, or

1  public domain materials that Bryant was aware of and that directly or indirectly

2  influenced him in developing his concept for a new line of fashion dolls, be filtered

3  out of the subject works, and, thereafter, that the remaining "subjective" or

4  "intrinsic" elements be evaluated for substantial similarity.  Carter Bryant's 1998

5  drawings contain many elements that must be filtered out, including but not limited

6  to the oversized head, eyes, lips, and feet of the figures in Bryant's drawings and the

7  stock model and/or doll poses.  A non-exhaustive list of examples of prior existing

8  works that incorporate such elements includes the following:  sources of inspiration

9  specifically identified by Carter Bryant, including Steve Madden advertisements and

10  Paris Blues advertisements, which were highly visible in 1998 (various Steve

11  Madden advertisements also served as a key inspiration for Mattel's own "Toon

12  Teens" dolls); Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and Barbie

13  dolls; Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little Miss No

14  Name; Hello Kitty; Coca-Cola advertisements; anime, including, e.g., Sailor Moon;

15  and manga.

16      Once all of the materials that directly or indirectly influenced Bryant

17  and all "scène-à-faire" features are eliminated from the analysis, the first generation

18  Bratz dolls (and all subsequent Bratz products) are readily seen as not substantially

19  similar to Carter Bryant's 1998 drawings.  The differences between the drawings and

20  the first generation Bratz dolls include, but are not limited to, the following:

21      • Posture

22      • Hip-to-waist ratio

23      • Feet size (dolls' feet are not as exaggerated as characters' feet in

24        the drawings)

25      • Head size (dolls' heads are proportionally smaller than characters'

26        heads in the drawings)

27      • Eyes (dolls' eyes are more open than characters' eyes in the

28        drawings)

25

EXHIBIT _____30_____

PAGE _____405_____

- Eye to lips ratio (lips of characters in drawings are proportionally larger relative to eyes than are lips of dolls)
- Hair (characters in drawings have much edgier hairstyles than the dolls do; unlike the drawings, the dolls' hair is not removable)
- Shapes of eyes and eye design
- Shapes of lips
- Overall look and feel (dolls are overall softer, less extreme than drawings)

That the dolls and the drawings are not substantially similar also is consistent with the fact that Carter Bryant was not a sculptor, and, as discussed above, any effort to translate his pre-1999 two-dimensional flat art into a three-dimensional form for use as a fashion doll sculpt would have produced shapes that were different from the actual shape of the final three-dimensional Bratz sculpt used in manufacturing the first generation of Bratz dolls released on the market by MGA in or about June 2001. Indeed, a team of highly-skilled artists (including several that had been used by Mattel and other toy companies in the past) spent months developing the Bratz first-generation dolls—valuable time and original creative effort that would not have been necessary if said first-generation Bratz dolls were simply a copy of Bryant's designs.

The absence of substantial similarity is further shown in the close correlation between Bryant's drawings and the inspiration he points to, including but not limited to the Steve Madden and Paris Blues advertisements in the August 1998 issue of *Seventeen Magazine*, as well as other advertisements in that issue, such as the Coca Cola advertisement.

Mattel's own My Scene Barbie line of dolls provides further proof that the first generation of Bratz dolls was not substantially similar to the Bryant drawings, in that (i) Mattel asserts that the My Scene Barbie dolls are independent works of art, not copied from Bratz, yet (ii) said dolls are far closer in appearance to

26

EXHIBIT  _36_

PAGE  _486_

1 Bratz dolls than are Bryant's two-dimensional drawings.

2        Additional details regarding such differences will be the subject of
3 expert disclosures and will be provided in accordance with the Court's schedule for
4 expert discovery.

5        With respect to any Carter Bryant contribution to the first generation
6 Bratz product after October 4, 2000 and before October 21, 2000, i.e., during a
7 period that he was performing such services for MGA pursuant to a freelance
8 contract while completing a two-week end-of-employment notice period at Mattel,
9 MGA (HK) notes that any such contribution was far outweighed by the original
10 and/or creative input of other artists working for or on behalf of MGA on the Bratz
11 concept, which was owned by MGA as a consequence of the October 4, 2000
12 transfer of rights from Bryant to MGA.

13        With respect to Bratz two-dimensional character art utilized on, for
14 example, Bratz product packaging and licensed products, while the initial Bratz
15 character art was derivative of Bryant's initial sketches from 1998, by no later than
16 August 2003, the Bratz character art had changed sufficiently such that it was no
17 longer derivative of Bryant's sketches.

18        The following persons have knowledge of facts and circumstances
19 surrounding the foregoing: Isaac Larian; Carter Bryant; Margaret Leahy; Veronica
20 Marlow; Mercedeh Ward; Sarah Halpern; Paula Garcia; Steve Tarmichael; Rebecca
21 Harris; Tina Tomiyama; Cecilia Kwok; David Dees; Jesse Ramirez; Samuel Wong;
22 Lily Martinez; Ei Akiko Fong; John Steven Baulch; Aileen Storer; Debora
23 Middleton; Ronan Spelman; Charlotte Broussard; Cassidy Park; Katherine Dumas;
24 Michelle McShane; Ivy Ross.

25        The following documents may be relevant to the foregoing: all
26 DOCUMENTS that refer to or evidence the work performed by MGA employees
27 and freelancers toward the reduction to practice of the first generation of Bratz dolls
28 during the period after October 20, 2000 through June 1, 2001, including but not

EXHIBIT 26

PAGE 487

1  limited to: Carter Bryant's drawings; documents and tangible things produced by
2  Margaret Leahy; tangible things produced by Veronica Marlow; invoices submitted
3  by employees and/or freelance artists working for MGA for work performed on the
4  Bratz project; all DOCUMENTS that constitute samples of the following items in the
5  public domain in 1998: Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and
6  Barbie dolls; Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little
7  Miss No Name; Hello Kitty; anime, including, e.g., Sailor Moon; manga; Coca-Cola
8  advertisements; Steve Madden advertisements; and Paris Blues advertisements;
9  Bratz prototypes, samples, sculpts, and rotocasts found in Hong Kong and produced
10 to Mattel. The documents evidencing this work are too numerous to identify
11 individually.

12

13 **INTERROGATORY NO. 43:**

14          For each concept, design, product, product packaging or other matter
15 that YOU contend MATTEL copied or infringed, including but not limited to those
16 identified in MGA's Responses To Mattel, Inc.'s First Set Of Interrogatories Re
17 Claims Of Unfair Competition, Response To Interrogatory No. 2 (and any
18 Supplemental Responses to such Interrogatory), state the date that each such concept,
19 design, product, product packaging or other matter was conceived, and IDENTIFY
20 all PERSONS with knowledge of, and all DOCUMENTS that REFER OR RELATE
21 TO, the foregoing.

22 **RESPONSE TO INTERROGATORY NO. 43:**

23          MGA (HK) incorporates by reference its General Response and General
24 Objections above, as though fully set forth herein and specifically incorporates
25 General Objection No. 7 (regarding Definitions), including without limitation its
26 objections to the terms IDENTIFY and REFER OR RELATE.

27          MGA (HK) also objects to this interrogatory to the extent it seeks
28 information that is not subject to disclosure under any applicable privilege, doctrine

EXHIBIT 36

PAGE 488

1 or immunity, including without limitation the attorney-client privilege, the work

2 product doctrine, the right of privacy, and all other privileges recognized under the

3 constitutional, statutory or decisional law of the United States of America, the State

4 of California or any other applicable jurisdiction. MGA (HK) further objects to the

5 interrogatory to the extent it calls for a legal conclusion.

6       MGA (HK) also objects to this interrogatory on the ground that it is

7 premature because the invention, creation, conception, or reduction to practice of

8 Bratz (and related issues) will be the subject of expert testimony at trial. MGA (HK)

9 objects to this interrogatory to the extent it seeks to limit the expert testimony that

10 MGA (HK) may seek to introduce at trial. MGA (HK) will identify its experts and

11 make related disclosures in accordance with the Court's orders and applicable rules.

12       MGA (HK) further objects to this interrogatory to the extent that it

13 seeks information that is not relevant to the claims or defenses of any party to this

14 action and is not reasonably calculated to lead to the discovery of admissible

15 evidence; the term "conceived" is not a legal term of art that is relevant to MGA

16 (HK)'s affirmative claims for false designation of origin, affiliation, association or

17 sponsorship, unfair competition, dilution, and unjust enrichment.

18       MGA (HK) further objects to the extent that this interrogatory seeks

19 information that is outside MGA (HK)'s knowledge and is not in MGA (HK)'s

20 possession, custody, or control. In particular, MGA (HK) objects to this interrogatory

21 to the extent that it requests that MGA (HK) "IDENTIFY *all* PERSONS... and *all*

22 DOCUMENTS" (emphasis added).

23       MGA (HK) further objects to this interrogatory because Mattel has

24 propounded more than 50 interrogatories. Under Judge Larson's order of February

25 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

26 04049-SGL and CV 05-02727]."

27       Subject to and without waiving the foregoing objections, MGA (HK)

28 responds as follows: MGA (HK) is willing to meet and confer with Mattel regarding

29

MGA HK'S 3RD SUPP'L RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT 36

PAGE 489

1  this interrogatory and the obligation of Mattel to supplement its responses to MGA's

2  First Set of Interrogatories.

3  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 43:**

4           MGA (HK) incorporates by reference its General Response and General

5  Objections above, as though fully set forth herein and specifically incorporates

6  General Objection No. 7 (regarding Definitions), including without limitation its

7  objections to the terms IDENTIFY and REFER OR RELATE.

8           MGA (HK) also objects to this interrogatory to the extent it seeks

9  information that is not subject to disclosure under any applicable privilege, doctrine

10  or immunity, including without limitation the attorney-client privilege, the work

11  product doctrine, the right of privacy, and all other privileges recognized under the

12  constitutional, statutory or decisional law of the United States of America, the State

13  of California or any other applicable jurisdiction. MGA (HK) further objects to the

14  interrogatory to the extent it calls for a legal conclusion.

15           MGA (HK) also objects to this interrogatory on the ground that it is

16  premature because the invention, creation, conception, or reduction to practice of

17  Bratz (and related issues) will be the subject of expert testimony at trial. MGA (HK)

18  objects to this interrogatory to the extent it seeks to limit the expert testimony that

19  MGA (HK) may seek to introduce at trial. MGA (HK) will identify its experts and

20  make related disclosures in accordance with the Court's orders and applicable rules.

21           MGA (HK) further objects to this interrogatory to the extent that it

22  seeks information that is not relevant to the claims or defenses of any party to this

23  action and is not reasonably calculated to lead to the discovery of admissible

24  evidence; the term "conceived" is not a legal term of art that is relevant to MGA

25  (HK)'s affirmative claims for false designation of origin, affiliation, association or

26  sponsorship, unfair competition, dilution, and unjust enrichment.

27           MGA (HK) further objects to the extent that this interrogatory seeks

28  information that is outside MGA (HK)'s knowledge and is not in MGA (HK)'s

EXHIBIT 3⑥

PAGE 490

1   possession, custody, or control. In particular, MGA (HK) objects to this interrogatory

2   to the extent that it requests that MGA (HK) "IDENTIFY *all* PERSONS...and *all*

3   DOCUMENTS" (emphasis added).

4         Subject to and without waiving the foregoing objections, MGA (HK)

5   responds as follows:

6         The interrogatory appears to be directed to other parties. MGA (HK)

7   does not assert claims of copying or infringement against Mattel. MGA will respond

8   to this interrogatory.

9

10  **INTERROGATORY NO. 44:**

11         For each concept, design, product, product packaging or other matter

12   that YOU contend MATTEL copied or infringed, including but not limited to those

13   identified in MGA's Responses To Mattel, Inc.'s First Set Of Interrogatories Re

14   Claims Of Unfair Competition, Response To Interrogatory No. 2 (and any

15   Supplemental Responses to such Interrogatory), state the date that each such concept,

16   design, product, product packaging or other matter was first fixed in any tangible

17   medium of expression (if ever), and IDENTIFY all PERSONS with knowledge of,

18   and all DOCUMENTS that REFER OR RELATE TO, the foregoing.

19  **RESPONSE TO INTERROGATORY NO. 44:**

20         MGA (HK) incorporates by reference its General Response and General

21   Objections above, as though fully set forth herein and specifically incorporates

22   General Objection No. 7 (regarding Definitions), including without limitation its

23   objections to the terms IDENTIFY and REFER OR RELATE. MGA (HK) also

24   objects to this interrogatory to the extent it seeks information that is not subject to

25   disclosure under any applicable privilege, doctrine or immunity, including without

26   limitation the attorney-client privilege, the work product doctrine, the right of

27   privacy, and all other privileges recognized under the constitutional, statutory or

28   decisional law of the United States of America, the State of California or any other

EXHIBIT 320
PAGE 491

1   applicable jurisdiction.  MGA (HK) also objects to this interrogatory to the extent

2   that it calls for a legal conclusion.

3        MGA (HK) also objects to this interrogatory on the ground that it is

4   premature because the invention, creation, conception, or reduction to practice of

5   Bratz (and related issues) will be the subject of expert testimony at trial.  MGA (HK)

6   objects to this interrogatory to the extent it seeks to limit the expert testimony that

7   MGA (HK) may seek to introduce at trial.  MGA (HK) will identify its experts and

8   make related disclosures in accordance with the Court's orders and applicable rules.

9        MGA (HK) further objects to this interrogatory to the extent that it

10  seeks information that is not relevant to the claims or defenses of any party to this

11  action and not reasonably calculated to lead to the discovery of admissible evidence

12  because the phrase "fixed in a tangible medium of expression" is a legal term of art

13  that does not have relevance to MGA (HK)'s affirmative claims, which are for false

14  designation of origin, affiliation, association or sponsorship, unfair competition,

15  dilution, and unjust enrichment.

16       MGA (HK) further objects to the extent that this interrogatory seeks

17  information that is outside MGA (HK)'s knowledge and is not in MGA (HK)'s

18  possession, custody, or control.  In particular, MGA (HK) objects to this

19  interrogatory to the extent that it requests that MGA (HK) "IDENTIFY *all*

20  PERSONS...and *all* DOCUMENTS" (emphasis added).

21       MGA (HK) further objects to this interrogatory because Mattel has

22  propounded more than 50 interrogatories.  Under Judge Larson's order of February

23  22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

24  04049-SGL and CV 05-02727]."

25       Subject to and without waiving the foregoing objections, MGA (HK)

26  responds as follows:  MGA (HK) is willing to meet and confer with Mattel regarding

27  this interrogatory and the obligation of Mattel to supplement its responses to MGA

28  (HK)'s First Set of Interrogatories.

MGA HK'S 3RD SUPP'L RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT  36

PAGE  492

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 44:

MGA (HK) incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including without limitation its objections to the terms IDENTIFY and REFER OR RELATE. MGA (HK) also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction. MGA (HK) also objects to this interrogatory to the extent that it calls for a legal conclusion.

MGA (HK) also objects to this interrogatory on the ground that it is premature because the invention, creation, conception, or reduction to practice of Bratz (and related issues) will be the subject of expert testimony at trial. MGA (HK) objects to this interrogatory to the extent it seeks to limit the expert testimony that MGA (HK) may seek to introduce at trial. MGA (HK) will identify its experts and make related disclosures in accordance with the Court's orders and applicable rules.

MGA (HK) further objects to this interrogatory to the extent that it seeks information that is not relevant to the claims or defenses of any party to this action and not reasonably calculated to lead to the discovery of admissible evidence because the phrase "fixed in a tangible medium of expression" is a legal term of art that does not have relevance to MGA (HK)'s affirmative claims, which are for false designation of origin, affiliation, association or sponsorship, unfair competition, dilution, and unjust enrichment.

MGA (HK) further objects to the extent that this interrogatory seeks information that is outside MGA (HK)'s knowledge and is not in MGA (HK)'s possession, custody, or control. In particular, MGA (HK) objects to this

EXHIBIT _____ 86

PAGE _____ 493

1  interrogatory to the extent that it requests that MGA (HK) "IDENTIFY *all*

2  PERSONS...and *all* DOCUMENTS" (emphasis added).

3          Subject to and without waiving the foregoing objections, MGA (HK)

4  responds as follows:

5          The interrogatory appears to be directed to other parties. MGA (HK)

6  does not assert claims of copying or infringement against Mattel. MGA will respond

7  to this interrogatory.

8

9  DATED:  January 28, 2008

10

11                              SKADDEN, ARPS, SLATE, MEAGHER &
                                FLOM LLP

12

13                              By: _____
                                       Timothy A. Miller

14                              Attorneys for Counter-Defendants, MGA
                                ENTERTAINMENT, INC., ISAAC LARIAN,

15                              MGA ENTERTAINMENT (HK) LTD., and
                                MGAE de MEXICO S.R.L.de C.V.

16

17

18

19

20

21

22

23

24

25

26

27

28

                                         34
        MGA HK'S 3RD SUPP'L RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

                    EXHIBIT _3̲0̲_

                    PAGE _494̲_

## VERIFICATION

I, Edmond Lee, declare:

I am an officer of MGA ENTERTAINMENT (HK) LTD., a corporation organized and existing under the laws of the Hong Kong Special Administrative Region, which is a defendant-in-intervention in the above-entitled action, and I have been authorized to make this verification on its behalf.

I have read MGA ENTERTAINMENT (HK) LTD'S THIRD SUPPLEMENTAL RESPONSES TO MATTEL INC.'S AMENDED FOURTH SET OF INTERROGATORIES (including the supplemental, second supplemental and third supplemental responses) and know the contents thereof. MGA Hong Kong was not involved in Bryant's transfer of rights in Bratz to MGA and, therefore, has no direct corporate knowledge of any matters related to the transfer stated in the foregoing responses. With respect to matters set forth in the foregoing responses that relate to Bryant's transfer of rights in Bratz to MGA, MGA Hong Kong adopts in its responses the contentions and responses made by MGA Entertainment, Inc. based on information provided by MGA Entertainment, Inc., which I have no reason to doubt. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed in Hong Kong on this 28 day of January, 2008.

Edmond Lee

1

EXHIBIT 36

PAGE 495

**EXHIBIT 37**



Confidential – Attorney's Eyes Only

**United States District Court**

**Central District of California**

**Case No. CV 04-9049 SGL (RNBx) Consolidated with Case No. 04-9059
and Case No. 05-2727**

**CARTER BRYANT, an Individual, Plaintiff,**

v.

**MATTEL, INC., a Delaware corporation, Defendant**

---

**Expert Rebuttal Report of**

**Michael J. Wagner**

**March 17, 2008**

1

EXHIBIT ___37___

PAGE ___496___

Confidential -- Attorney's Eyes Only

than any other fashion doll on the market as discussed in section II.B.2.a)(1) above. Therefore, this would support a minimal apportionment of profits attributable to elements other than the infringement of the copyrighted works.

### (7) Factor 6: Packaging In Which The Dolls Are Sold

Mr. Meyer states that packaging is one of the contributing factors to the success of Bratz. The strength of the Bratz product -- absent the packaging -- was confirmed by e-mails written by employees of MGA during early 2001; prior to the introduction of the Bratz product packaging. The e-mails indicate that Bratz was being very well received by the industry and that there was already a significant demand by the resellers for the product,[43] at a time when the packaging was not yet available.[44]

Additionally, the MGA market research using the simulated store method does not contain any reference to the packaging when discussing why people choose to purchase the doll. I have been provided with three different market research reports that were done for MGA using the simulated store method. In reporting on what girls liked about the Bratz product line, among the more than 22 attributes that are ranked regarding why the girls liked the doll, packaging is not listed. The results of these studies suggest that the dolls would have sold well irrespective of their packaging.[45] In fact, Mr. Meyer does not include packaging in 4 of his 7 apportionment approaches. Finally, Mr. Meyer also does not account for the effect of including allegedly infringing images on packaging used to sell the Bratz products.

### (8) Factor 7: MGA's Branding, Marketing and Advertising Efforts

I have read Dr. Eric Joachimsthaler's Expert Report, MGA's marketing expert, in which he concludes that MGA did not do anything unique to brand its product. In his report, Dr. Joachimsthaler concludes, "MGA Entertainment engaged in the classic brand-building activities that I would expect from an entrepreneurial-minded company."[46] Dr. Carol Scott's report is to the same effect. Moreover, in my review of MGA's Bratz sales and marketing expenses as a percentage of Bratz sales in comparison to their competitors, I noted that after the initial launch

---

[43] [Tab E37.MGA4000827-28, MGA4001061, MGA 4001180-81].
[44] MGA's final schedule indicates the photo model of packaging would not be available until March 13, 2001 [Tab E38.MGA000359].
[45] 2002 Bratz Commercial Test & Product Appeals Study [Tab E1.MGA40149334]; Bratz Spring '05 Line Summary of Findings [Tab E49.MGA0296612-15]; Bratz Fall '05 Girls Line Central Location Test [Tab E12.MGA0280745-769, p.23].
[46] Expert Report of Dr. Erich Joachimsthaler, page 47, paragraph 87 [Tab E15].

15

EXHIBIT ___37___

PAGE ___497___

Confidential – Attorney's Eyes Only

in 2001, MGA spent a smaller percentage of sales for sales and marketing than its competitors.[47]

In evaluating the impact of MGA's marketing and branding, I note that Bratz experienced significant success and positive feedback before the Bratz dolls were even sold to the general public. There are many e-mails from both MGA employees as well as third parties and other MGA produced documents that express how well Bratz is being received by distributors.[48] Additionally, per review of e-mail sent to/from MGA prior to television advertising beginning October 1, 2001, MGA is very pleased with the immediate success of Bratz despite the fact that there has been no TV advertising yet.[49] This illustrates the strength of the Bratz product without the help of television advertising.

Additionally, I noted that Bratz earned a very large gross margin from the beginning of its sales, before the Bratz brand could have been affected by the branding efforts identified by Dr. Eric Joachimsthaler.[50] The early premiums earned by MGA in 2001 when the Bratz product was launched could not have been attributable to the strength of the Bratz Brand as opposed to the strength of the product.

Dr. Eric Joachimsthaler states that as a brand grows and strengthens, a company ought to be able to obtain larger margins on their products. Perhaps, but gross margins for Bratz products decreased over time.[51] Neither Mr. Meyer nor Dr. Joachimsthaler explained this apparent contradiction.

Finally, Mr. Meyer does not attempt to value in his apportionment analysis the effect of including allegedly infringing images in advertising and media used to sell the Bratz products.

      b)   Criticisms of Mr. Meyer's Apportionment Approaches

---

[47] Tab B2, Schedule 1.0

[48] [Tab E42.MGA4001704-5, MGA4001720-21, MGA4000081-82, MGA4000085, MGA4000100, MGA4000101, MGA4000131, MGA4000139, MGA4000152, MGA4000205-208, MGA4000228-231, MGA4000451, MGA4000458-59, MGA4000462, MGA4000877, MGA4000816, MGA4000622-24, MGA4000611]

[49] [Tab E9. MGA4001765, MGA4001673-74, MGA4001559, MGA4001851, MGA4000138, MGA4000232.]

[50] February 11, 2008 Report of Michael J. Wagner, Tab B1, Schedule 1.1.

[51] IBID.

16

EXHIBIT ___37___

PAGE ___498___

Confidential – Attorney's Eyes Only

## III.   Documents, Data and Other Information Considered

In addition to the documents listed in Tab C of my initial report dated February 11, 2008, Volume 1, Tab C of this report contains a list of additional documents I considered in forming my opinions.

## IV.   Potential Additional Analyses to Perform

My opinions are based on the information received as of the date of my report. However, on March 11, 2008, I received a CD with Mr. Meyer's underlying analyses.[78] I am in the process of reviewing these 4,619 pages and may have additional comments upon completion of my review.

I plan on updating my criticisms of Mr. Meyer's opinions and methodologies, if necessary, after I have received his rebuttal and/or supplemental report and his deposition. I will consider any criticisms of my opinions or bases for my opinions brought to my attention at my deposition or offered by experts retained by MGA. Any of this additional information or work may cause me to change my opinions.

## V.   Qualifications

Volume 1, Tab D contains my curriculum vitae which details my qualifications, including a listing of all my publications and testimony.

## VI.   Compensation

My current billing rate is $695 per hour.

*Michael J Wagner*

Michael J. Wagner

_____

[78] Documents with Bates numbers PKM 00308 through PKM 04926.

25

EXHIBIT ____37____

PAGE ____499____

**EXHIBIT 38**

| From: | Isaac Larian (President / CEO) |
|---|---|
| To: | Carter Bryant; Paula Garcia |
| CC: | |
| BCC: | |
| Sent Date: | 2004-12-15 01:34:56:343 |
| Received Date: | 2004-12-15 01:34:56:343 |
| Subject: | Fw: FW: western |
| Attachments: | |

I agree with her.

Please see competition and fix it.

Thanks
Isaac Larian
CEO
MGA Entertainment Inc.
A Consumer Entertainment Product Company
16380 Roscoe Blvd
Van Nuys, Ca. 91406
Tel : 818-894-3150
Fax : 818-894-1267

—---Original Message—---
From: Jasmin Larian <nimsaj11@yahoo.com>
To: Isaac Larian (President / CEO) <Larianl1@mgae.com>
Sent: Wed Dec 15 00:54:32 2004
Subject: Re: FW: western

Hi dad,
Im surprised Carter designed these. .I like the western idea/theme, but I really  think that you could do a way
better job on this. The styles are passe. With such a good theme, the clothing should match that level.

Love ya,
Jas

"Isaac Larian (President / CEO)" <Larianl1@mgae.com> wrote:

JAZ??

Isaac Larian
CEO
MGA Entertainment, Inc.
16380 Roscoe Blvd. Suite 200
Van Nuys, California 91406
Tel: 818-894-3150
email: lariani1@mgae.com
fax: 818-894-1267

EXHIBIT _____ 38

PAGE _____ 500

-onfidential - For Attorney's Eyes Only

www.mgae.com
www.bratzpack.com
www.alienracers.com


-----Original Message-----
From: Paula Garcia
Sent: Monday, December 13, 2004 1:36 PM
To: Isaac Larian (President / CEO); Diana Lin; Carter Bryant
Subject: FW: western

check these hot.

hot!!

Carter construction on the zebra pant construction seems a bit thick. Can
veronica revisit something more tight and sexy fitting ?

-----Original Message-----
From: Leon Djiguerian
Sent: Monday, December 13, 2004 10:57 AM
To: Paula Garcia; Dennis Soai
Subject: western

<> <>


> ATTACHMENT part 2 image/jpeg x-mac-type=4A504547; x-mac-creator=3842494D; name=western2.jpg


> ATTACHMENT part 3 image/jpeg x-mac-type=4A504547; x-mac-creator=3842494D; name=western.jpg


───────

Do you Yahoo!?
Jazz up your holiday email with celebrity designs. Learn more.


EXHIBIT ____ 3B _____

PAGE ____ 501 _____

Confidential - For Attorney's Eyes Only                                                      MGA 1502113

**EXHIBIT 39**

| | |
|---|---|
| **From:** | Paula Garcia |
| **To:** | Dennis Soai; Elaine Yip (HK-PD) |
| **CC:** | |
| **BCC:** | |
| **Sent Date:** | 2007-01-31 11:58:29:263 |
| **Received Date:** | 2007-01-31 11:58:29:388 |
| **Subject:** | Fashion pcks |
| **Attachments:** | |

Make sure u include 2 sets of shoes for both Kidz and Bratz (the competition does it)

EXHIBIT _____ 39 _____

PAGE _____ 502 _____

Confidential - Attorney's Eyes Only

MGA 0085750

EXHIBIT 40

| From: | Paula Garcia |
|---|---|
| To: | Kobe Wong (HK-PD) |
| CC: | Dennis Soai; Gaby Luk (HK-PD); Elaine Yip (HK-PD) |
| BCC: | |
| Sent Date: | 2006-09-22 00:33:43:437 |
| Received Date: | 2006-09-22 00:33:43:437 |
| Subject: | RE: Birthday accessories |
| Attachments: | |

Noted there will be cost impact and running change.

**From:** Kobe Wong (HK-PD)
**Sent:** Wednesday, September 20, 2006 7:24 PM
**To:** Paula Garcia
**Cc:** Dennis Soai; Gaby Luk (HK-PD); Elaine Yip (HK-PD)
**Subject:** Birthday accessories
**Importance:** High

*Ref. no.:KW09212006-10*

*Dear Paula,*

*Kindly confirm if*                 *...s? If so, it will have cost impact and we can*
*only do the running change.*

*Regards,*

*Kobe*

Kobe Wong
E-mail: kowong@mgae.com
Direct line: 852 2732 9451
Fax: 852 2732 9242

**From:** Elaine Yip (HK-PD)
**Sent:** Tuesday, September 19, 2006 6:58 PM
**To:** Paula Garcia
**Cc:** Dennis Soai; Kobe Wong (HK-PD); Gaby Luk (HK-PD)
**Subject:** RE: S2007 meeting with Isaac

Paula,

It takes around 4 weeks for production if sleeve arts release from LAO by this week.

Best regards,
Elaine

**From:** Paula Garcia
**Sent:** Tuesday, September 19, 2006 12:49 AM

EXHIBIT _____40_____

PAGE _____503_____

Confidential - For Attorney's Eyes Only

MGA 0074136

REDACTED

**To:** Elaine Yip (HK-PD)
**Cc:** Dennis Soai
**Subject:** RE: S2007 meeting with Isaac

Elaine
What would be the implication that we shipped all dolls with
Im worried
The                                sets looks so empty

**From:** Elaine Yip (HK-PD)
**Sent:** Thursday, September 14, 2006 8:29 PM
**To:** Paula Garcia
**Cc:** Dennis Soai
**Subject:** FW: S2007 meeting with Isaac

FYi

Best regards,
Elaine

**From:** Kobe Wong (HK-PD)
**Sent:** Friday, September 15, 2006 11:28 AM
**To:** Elaine Yip (HK-PD)
**Cc:** Gaby Luk (HK-PD)
**Subject:** RE: S2007 meeting with Isaac

*Dear Elaine,*

*Please find attached the Birthday revised packout that all the dolls are placed at the center position for your reference.*

*Thanks,*

*Kobe*

Kobe Wong
**E-mail:** kowong@mgae.com
**Direct line:** 852 2732 9451
**Fax:** 852 2732 9242

**From:** Elaine Yip (HK-PD)
**Sent:** Tuesday, September 12, 2006 11:24 AM
**To:** Paula Garcia; Aileen Storer; Dennis Soai; Mia Garcia; Desiree Ronquillo; Ana Parkinson; Ione Jefferies; Jessica Wei; Kathleen Suh; Jier Su; Ninette Pembleton
**Cc:** Gaby Luk (HK-PD); Bailey Kwan (HK-PD); Chris Kock (HK-PD); Davis Ng (HK-PD); Chloe Chen (HK-PD); Jenny Tam (HK-PD); Kobe Wong (HK-PD)
**Subject:** RE: S2007 meeting with Isaac

Pls see below

Best regards,
Elaine

**From:** Paula Garcia

EXHIBIT ___4D___

PAGE ___504___

Confidential - For Attorney's Eyes Only

MGA 0074137

REDACTED

**Sent:** Tuesday, September 12, 2006 8:57 AM
**To:** Elaine Yip (HK-PD); Aileen Storer; Dennis Soai; Mia Garcia; Desiree Ronquillo; Ana Parkinson; Ione Jefferies; Jessica Wei; Kathleen Suh; Jier Su; Ninette Pembleton
**Subject:** S2007 meeting with Isaac

Guys
We met with Isaac on Friday night

Here are a few things that came out of the meeting:

*[Elaine Yip]* checking the cost impact with vendors. Will advise by tomorrow

Before I drop this set, I would like please to ask that the team mock up a

Also I noticed that

Please send

The entire doll should be rooted with

EXHIBIT _____ 40

Confidential - For Attorney's Eyes Only

PAGE _____ 505

MGA 0074138

REDACTED

EXHIBIT ___ 40
PAGE ___ 306

Confidential - For Attorney's Eyes Only

MGA 0074139

REDACTED

**EXHIBIT 41**

| From: | Isaac Larian (President / CEO) |
| To: | Summer Wells |
| CC: | |
| BCC: | |
| Sent Date: | 2003-08-04 07:41:54:734 |
| Received Date: | 2003-08-04 07:41:54:734 |
| Subject: | FW: Weekly Status Report 8/1/03 |
| Attachments: | 8-1-03.doc |

Please see my comments in red.

Isaac Larian
CEO
Please note my new e mail address below
MGA ENTERTAINMENT
A Consumer Entertainment Product Company
16730 Schoenborn Street
North Hills, California, 91343-6122
Tel: 818-894-3150
Fax:818-894-1267
LarianI1@MGAE.COM
www.MGAE.COM
Meet the girls with Passion for Fashion
www.Bratzpack.com

-----Original Message-----
From: Summer Wells
Sent: Sunday, August 03, 2003 8:47 PM
To: Isaac Larian (President / CEO)
Subject: Weekly Status Report 8/1/03

Isaac,
Question on Ride-ons After Service:
I have talked to a few people (Gary T. included) who have
been in this category before and asked how the after service
was handled. They both explained that the after service is
quite intensive. I will communicate with Bill Howard and see
how he can find an after service center for us.

Also, Gary noted that most stores will ask for a free display sample per store. So, just wanted
to make you aware that this request MIGHT be
coming.

Attached is my weekly recap.

Sorry I missed you at the picnic, you were just driving in as we
were leaving. I had to head out to another family party.

EXHIBIT ____41____

PAGE ____507____

Confidential - For Attorney's Eyes Only

MGA 0183503

-Summer

EXHIBIT ____41____

PAGE ____508____

Confidential - For Attorney's Eyes Only

MGA 0183504

Summer Wells
Week ending 8/1/03

Weekly Status Summary

Following is your KRA for 2003:

1) Bounce Back Cards - Together with Bill, and other directors ( Paula, Shawn, Dee Dee, Summer, Yuval, Ninette )  and Shirin Salemnia study the consumer warranty returns , on a WEEKLY bases and based on that advise new products for your category we should develop for fall 2004 and Spring 2005.

We are starting to get in the bounce back cards for the Sporting Goods.  So far, only comment is that they want the stickers that come with the helmet to adhere better. We will make this change.

ARE THEY ASKING FOR NEW PRODUCTS IN SPORTING? DOD THEY LIKE WHAT THEY BOUGHT? I LIKE TO SEE A SAMPLE OF THYESE CARDS PLEASE. ISAAC

Since the girls are asking for "Petz", and we have already started the Lil Bratz Petz line. I think that we should brand the feature plush that we do under Lil Bratz, similar to what we see is done for Barbie.  It's all about branding.  But, we should only Brand feature plush product that is geared towards a "Passion for Fashion", ie Poodle Parlor. We will still keep our MGA branded feature plush line.

Puppy in the Purse is a great fashion statement ( Purse, Puppy dressed up) and should be done. How are you progressing? Isaac

**3) Research and develop at least two new feature plush for 2004 to extend the come to me Daisy and enter MGA in a new area , for fall 2004, by July 15,2003.**
Idea #1 – Walk To Me Toby (boy version of Walk To Me Daisy) We are working on a sample with Hong Kong.  Will add more animated features after reviewing GoGo.  I would like to go back to my original idea and see about making a R/C dog that can actually fetch a bone.  We will determine more features after Christropher H. dissects GoGo.

Idea #2 – Dragon Plush (moves and sound) – HK working on a sample. We are trying to make this as realistic as possible.  We really want to get full range of movement here. Developing the mechanism correctly can also lead us to use it for another feature plush product. We could use it in a feature plush horse.

Idea #3 – Poodle Parlor – We are working on a sample.  We want to add more "wash me, and pamper me" features here.  Really want to make the girl feel like she owns this dog and it is her best friend.  Reviewing 2 products that Mattel just came out with which compete against our Poodle Parlor.

EXHIBIT ___4)___ 1

Confidential - For Attorney's Eyes Only

PAGE ___501___

MGA 0183505

Idea #6 Monkey See Monkey Do – Putting on the back burner.

Why? Isaac

2) Create a new line of **Sporting goods** (Bratz and others) for fall 2004 by July 15,
2003.
Bratz – Spring 04
We are getting good feedback on our Spring launch.   A lot of requests for POG
samples, so this is a good start.

Bratz - Fall 04
You approved of the Bratz Fall 04 line plan.  New sketches came in this week. Will
review with you.  Received sourcing books from HK on 7/30 for more sporting goods
vendors.

Boyz Fall 04 – You approved of the line plan.  Marcy has the same vision as I do, to
keep the line focused on ICONS.  I reviewed concepts that Marcy had done with an
outside freelancer to start a line look.  I am now in contact with him, and will work on
designing the product for Fall 04.  Cycle Source is quoting on the 20" Boyz Dirt Bike for
me.
Working with an outside freelancer to generate artwork.

Lil- Bratz Fall 04 – You agreed on the line plan.

Sporting Goods Packaging – A freelancer will be handling our packaging under Aileen's
group.

Ride-ons – Added the Lil Bratz Motor Cruiser to the PL.  Sell sheet will be sent out Friday
am.

5)    Hire 2 new experienced product managers  ( use Paula's model of hiring
product managers who have experienced in development and design of the
products as well) by May 15,2003.
Lisa Speights started 5/12/03
Lisa Meli      will start on 8/4  -- HR told me that they have no place to put Lisa,
and that she cannot start until after the move.  I WILL find a place for her, even
if I have to share my office.

6)    Consumer Electronics  - Fall 04 line list was approved by you.  We have made
the additions for Spring 04.   Fall PDFs have already been sent. Victor has
also sent some product like the projection light, etc. that we were needed
more info. In order to determine the design and affordable features.

Puppy in my purse – Will stay focused on fashion with the purses, and cute/sweet
miniatures of dogs.  We will add a brush, or fashion scarf for added play value.  The
dogs will have all bobble heads.  Will also try this in the Bratz Petz.

2

EXHIBIT _____ 41 _____

Confidential - For Attorney's Eyes Only

PAGE _____ 510 _____

MGA 0183506

Lil Bratz Petz – We are in the second counter sample stage with HK.  Fall Petz are being sampled.

What is the cost? Isaac

Lil Bratz Easter Promotion – Bailey and Elaine are doing a good job executing this very quickly.  Sell sheet should be completed by the design group by end of day Monday.

3

EXHIBIT _____ 41 _____

Confidential - For Attorney's Eyes Only

PAGE _____ 51 _____

MGA 0183507

**EXHIBIT 42**

**From:** Carter Bryant
**Sent:** Wednesday, June 28, 2006 1:28 PM
**To:** Leon Djiguerian
**Subject:** Re: hair extension colors for P4F FFM

Hi Leon

yeah I will.
sorry I missed yout this AM I was not feeling too good, so I'm just now getting into my studio.

will have this info for you shortly.
thanks.
Carter

*Leon Djiguerian <LDjiguerian@mgae.com> wrote:*

> Hi Carter,
> Would you be able to get me the info today?
>
> **Leon Djiguerian**
> **Bratz Doll Design Manager**
> *MGA* **Entertainment, Inc.**
> 818-894-2525 ext. 6171
> www.mgae.com
> www.bratz.com
>
> **************************************************************************
> IMPORTANT NOTICE: This e-mail message (including any attachments) constitutes non-public information intended to be conveyed only to specific recipients. It may contain information which is confidential, legally privileged and/or exempt from disclosure under applicable law. If you are not the intended recipient (or a party responsible for delivering this message to the intended recipient), you are hereby notified that you are NOT authorized to review, use, disclose, distribute or copy this communication in any way. If you have received this message in error, please permanently delete this e-mail and any copies from your computer system without delay. Please also notify the sender (or administrator@mgae.com) by return e-mail, and thereafter delete your reply. Thank you.
> **************************************************************************

3/16/2007

CONFIDENTIAL - Attorney's Eyes Only

EXHIBIT ____42____

PAGE ____512____

BRYANT17413

| | |
|---|---|
| **From:** | Carter Bryant |
| **Sent:** | Wednesday, June 28, 2006 1:34 PM |
| **To:** | Paula Garcia |
| **Cc:** | LDjiguerian@mgae.com |
| **Subject:** | RE: TRU Best Sellers |

Hi Paula

yes, I will get these sketched.
when do you need by?

*Paula Garcia <PGarcia@mgae.com>* wrote:

Andrea
please go and purchase today at TRU the following Barbie's for Carter's review
1.   Collector:  I Dream of Summer Barbie (available only online)
2.   Happy Birthday Barbie w/Rainbow Pastel Dress
3.   Beautiful Bride Barbie
4.   Barbie Fashion Fever: Fashion Week Giftset
5.   Forever Barbie:  Baby Doctor Barbie
6.   Barbie Diaries Barbie Doll
7.   Forever Barbie:  I'm a Rock Star!
8.   Forever Barbie:  I'm a Ballet Star!
9.   Forever Barbie:  I'm a Pet Doctor
10.   Barbie – Star Team Stacie Doll:  I'm a Tap Dancing Star!


Carter
please, like nurse, can i ask you to  sketch further so of the more traditional aspirational careers like:

- doctor
- vet
- fashion designer
- make up or hair stylist

anything else you can think of?

**From:** Isaac Larian (President / CEO)
**Sent:** Tue 6/27/2006 6:41 AM
**To:** Paula Garcia; Leon Djiguerian
**Cc:** Carter Bryant
**Subject:** Re: TRU Best Sellers

Let's test
Best Regards
Isaac Larian
CEO
MGA Entertainment
A Consumer Entertainment Product Company
16380 Roscoe Blvd

3/16/2007

CONFIDENTIAL - Attorney's Eyes Only

EXHIBIT ___42___

PAGE ___513___

BRYANT17414

**EXHIBIT 43**

| | |
|---|---|
| **From:** | Isaac Larian |
| **To:** | Eve Johnson |
| **CC:** | |
| **BCC:** | |
| **Sent Date:** | 2002-01-30 04:03:09:421 |
| **Received Date:** | 2002-01-30 04:03:09:421 |
| **Subject:** | FW: |
| **Attachments:** | |

Please call Mattel and find these and lets hire them fast. May be the tell no is on the roster I gave you.

-----Original Message-----
**From:** Paula Treantafelles
**Sent:** Tuesday, January 29, 2002 3:46 PM
**To:** Eve Johnson; Isaac Larian
**Subject:**

These are some names for doll/BRATZ development person. Please seak them out at Mattel. They are the best

Ann Olson

Bill Martinez

Amy Johnson

Elizabeth Limbretti

...I have more coming.

EXHIBIT 43

PAGE 514

Confidential - For Attorney's Eyes Only

MGA 4006200

**EXHIBIT 44**

| From: | Isaac Larian |
|---|---|
| To: | Victoria O'Connor; Michele Thompson |
| CC: | |
| BCC: | |
| Sent Date: | 2000-10-04 00:45:36:800 |
| Received Date: | 2000-10-04 00:45:36:830 |
| Subject: | RE: Job offer |
| Attachments: | |

fyi

----Original Message----
From: Wpimerc@aol.com [mailto:Wpimerc@aol.com]
Sent: Tuesday, October 03, 2000 5:23 PM
To: ilarian@mgae.com
Subject: Re: Job offer

I don't think at Mattel I would have the opportunities that you are offering
me. I don't want to sound stingy but I have accumulated a lot of debt in
this past year I was only making the 60% of my salary. I need them to lay me
off as I told you.

Your company sound like it has endless possibilities and I know that I can
help you bring new brands to your line of product. The past couple of days I
have not slept because I am thinking of all these products that we could do.

I am sorry I was a little long winded but please give me until Friday and I
should have an answer from Mattel. If not I guess I just start for you on
Tuesday.

Thank you;
Mercedeh

Confidential - For Attorney's Eyes Only

EXHIBIT 44
PAGE 515

EXHIBIT C    PAGE 118

MGA 0064572

**EXHIBIT 45**

**From:**　　　　　　　　　Isaac Larian (President / CEO)
**To:**　　　　　　　　　'Gerevas, Ronald E'
**CC:**
**BCC:**
**Sent Date:**　　　　　　　2003-07-30 00:22:24:296
**Received Date:**　　　　　2003-07-30 00:22:24:296
**Subject:**　　　　　　　RE: Ron ( Mattel ) for COO position
**Attachments:**

I am going to meet him Friday. You meet him afterwards.

Isaac Larian
CEO
Please note my new e mail address below
MGA ENTERTAINMENT
A Consumer Entertainment Product Company
16730 Schoenborn Street
North Hills, California, 91343-6122
Tel: 818-894-3150
Fax:818-894-1267
Larianl1@MGAE.COM
www.MGAE.COM
Meet the girls with Passion for Fashion
www.Bratzpack.com

-----Original Message-----
From: Gerevas, Ronald E [mailto:RGerevas@heidrick.com]
Sent: Tuesday, July 29, 2003 10:57 AM
To: 'Isaac Larian (President / CEO)'
Subject: RE: Ron ( Mattel ) for COO position

Isaac,

If you agree, what is the purpose of your meeting with Ron Brawer for
breakfast this friday morning? Leon called me to
meet with Ron. Ron returned my call today. He can't meet with me tomorrow
and I can't meet with him on Thursday. I can
meet with him anytime next week but he is travelling. I suggest that I wait
and meet him when I am meeting some of our
other candidates so that we can compare backgrounds and qualifications. If
you agree, keep him warm and tell him that I will be in touch with him when
he returns from his trip. You might see if he would have any interest in
starting in the
marketing position with a chance to move into general management after
demonstrating his capabilities.

Let me know what you want me to do.

Ron

EXHIBIT ___45___

PAGE ___516___

Confidential - For Attorney's Eyes Only　　　　　　　　　　　　　　　　MGA 1165376

-----Original Message-----
From: Isaac Larian (President / CEO) [mailto:Larianl1@mgae.com]
Sent: Saturday, July 26, 2003 10:18 AM
To: Gerevas, Ronald E
Subject: Re: Ron ( Mattel) for COO position

Thanks Ron

I agree
Isaac Larian
CEO
MGA Entertainment Inc.
A Consumer Entertainment Product Company
16730 Schoenborn St
North Hills, Ca. 91343-6122
Tel : 818-894-3150
Fax : 818-894-1267

-----Original Message-----
From: Gerevas, Ronald E <RGerevas@heidrick.com>
To: 'Isaac Larian (President / CEO)' <Larianl1@mgae.com>
Sent: Sat Jul 26 03:12:18 2003
Subject: RE: Ron ( Mattel) for COO position

Absolutely. You should settle for nothing less and you should push on me
until I deliver exactly what you need, not what looks sexy. You can't make
a mistake at
this stage of your growth - which means we shouldn't settle for a hot shot
marketing person who wants a chance to prove that he can be a COO. You not
only need
someone who has done it - you need someone who has done it extremely well.
We need someone who has successfully designed, implemented and operated a
global infrastructure with the required systems to effectively support your
growth expectations. You don't have that experience and skill set moving
forward in the
company and until you do, it won't get done. You are too big and growing too
fast to bring someone in in a "learning" mode. Ideally, we want someone who
grew
significantly beyond where we are presently so that they can anticipate what
we will need to do and help us avoid some of the inevitable growing pains.
Many founders
make the mistake, in my opinion, of not hiring strong enough leaders for
their organization, especially strategic hires.

If for whatever reason we find out that we can't attract this kind of person
- which I don't believe - then, and only then, should we compromise and be
more flexible
regarding our ideal candidate. But even then, prior COO or EVP/GM
experience of a sizable organization, is a must.

Ron

-----Original Message-----

EXHIBIT ___ 45 ___

PAGE ___ 517 ___

Confidential - For Attorney's Eyes Only

MGA 1165377

From: Isaac Larian (President / CEO) [mailto:Larianl1@mgae.com]
Sent: Friday, July 25, 2003 5:01 PM
To: Gerevas, Ronald E
Subject: RE: Ron ( Mattel) for COO position

I think we need someone who has done it. Do you agree? How do you know Ron?

Isaac Larian
CEO
Please note my new e mail address below
MGA ENTERTAINMENT
A Consumer Entertainment Product Company
16730 Schoenborn Street
North Hills, California, 91343-6122
Tel: 818-894-3150
Fax:818-894-1267
Larianl1@MGAE.COM
www.MGAE.COM
Meet the girls with Passion for Fashion
www.Bratzpack.com

-----Original Message-----
From: Gerevas, Ronald E [mailto:RGerevas@heidrick.com]
Sent: Wednesday, July 23, 2003 6:02 PM
To: 'Isaac Larian (President / CEO)'
Subject: RE: Ron ( Mattel) for COO position

I assumed as much. He has for some time been looking for a President or GM
role. The question for you is - Are you willing to go with an outstanding
marketing guy who

was on a marketing/sales team who was a part of "doing it", or do you
believe you now need a Mel Woods type individual who has "done it"? Ron
may well be ready to

take on these new responsibilities to find out if he has the skill set to
pull it off and he may well deserve a shot at becoming a President. So,
it's back to your original

conversation with me where you insisted that the person must have 'done it".
Ron hasn't done what you want done. That said, it doesn't mean that he
might not be able to do it. It does mean to me that you are more flexible
regarding the ideal profile of what we are looking for. Is that true?

I have never met Mel or Ron, but I'll bet they are very different guys. You
should be impressed with Ron .... he's a marketing/sales guy. You are
probably impressed with

Mel for different reasons. A lot depends on what you are going to do moving
forward. From my converstion with you, it would appear that you intend to
continue to play

a major role in the marketing/sales/advertising areas. That's Ron's world,

EXHIBIT ___45___

PAGE ___518___

Confidential - For Attorney's Eyes Only

MGA 1165378

or has been up until now. Will he be happy doing what Mel does every day and not be in charge

of what reports into you? In any case, an interview will tell us some of this. I'll wait to hear from Leon.

I said more than I intended to here, but the issue of "having done it" is important for me to know.

Ron

——Original Message——
From: Isaac Larian (President / CEO) [mailto:Larianl1@mgae.com]
Sent: Wednesday, July 23, 2003 3:26 PM
To: Gerevas, Ronald E
Subject: RE: Ron ( Mattel) for COO position

He wants to be president!

Isaac Larian
CEO
Please note my new e mail address below
MGA ENTERTAINMENT
A Consumer Entertainment Product Company
16730 Schoenborn Street
North Hills, California, 91343-6122
Tel: 818-894-3150
Fax:818-894-1267
Larianl1@MGAE.COM
www.MGAE.COM
Meet the girls with Passion for Fashion
www.Bratzpack.com

——Original Message——
From: Gerevas, Ronald E [mailto:RGerevas@heidrick.com]
Sent: Wednesday, July 23, 2003 12:50 PM
To: 'Isaac Larian (President / CEO)'
Subject: RE: Ron ( Mattel) for COO position

Isaac,

Ron Brawer is a good guy, especially for the Marketing role. His 7 years at Mattel have all been Marketing roles for Matchbox and Boys Toys. He did, however,

have a 5 year run as President and founder of a juvenile products company - I don't know how well that went or how big it got. He's about 41 and has 2 children.

His compensation last year was $240,000 base and a 65% bonus.

I'll wait to hear from Leon.

EXHIBIT ___45___

Confidential - For Attorney's Eyes Only

PAGE ___519___

MGA 1165379

No I don't have anyone yet – I'm one week into the search.

Hope all is going well in HK.

Ron

——Original Message——
From: Isaac Larian (President / CEO) [mailto:Larianl1@mgae.com]
Sent: Wednesday, July 23, 2003 12:56 AM
To: Gerevas, Ronald E
Cc: Leon Farahnik
Subject: FW: Ron ( Mattel) for COO position

Ron,

I am still in HK.

This is the guy I told you from Mattel.

Leon is meeting him.

He does not want the name out there.

Let Leon talk to him first and ask him and then you meet him.

Have you found anyone?

Isaac Larian

CEO

Please note my new e mail address below

MGA ENTERTAINMENT

A Consumer Entertainment Product Company

16730 Schoenborn Street

North Hills, California, 91343-6122

Tel: 818-894-3150

Fax:818-894-1267

Larianl1@MGAE.COM

www.MGAE.COM

Meet the girls with Passion for Fashion

www.Bratzpack.com

EXHIBIT ___45___

PAGE ___520___

Confidential - For Attorney's Eyes Only

MGA 1165380

——Original Message——
From: Joanne Lee
Sent: Monday, July 21, 2003 9:54 AM
To: Isaac Larian (President / CEO)
Cc: Leon Farahnik
Subject: RE: Ron ( Mattel) for COO position

Ron Brawer's contact numbers are:

Cell: 310-489-6748

Home: 310-546-5744

Email: ronsha@adelphia.net

Leon: if you have a fax number, I can fax you his resume. Please advise, thank you.

Joanne Lee

Corporate Recruiter

MGA Entertainment

16730 Schoenborn Street

North Hills, CA 91343

ph. 818-894-2525 ext. 184

fax. 818-892-9031

jlee@mgae.com

www.mgae.com

——Original Message——

From: Isaac Larian (President / CEO)

Sent: Sunday, July 20, 2003 1:47 AM

To: Joanne Lee

Cc: Leon Farahnik

Subject: Ron ( Mattel) for COO position

I talked to him. He is interesting.

Please give the information to Leon my friend to call him and talk to him ( Ron Knows).

EXHIBIT ___45___

PAGE ___521___

Confidential - For Attorney's Eyes Only

Isaac Larian

CEO

Please note my new e mail address below

MGA ENTERTAINMENT

A Consumer Entertainment Product Company

16730 Schoenborn Street

North Hills, California, 91343-6122

Tel: 818-894-3150

Fax:818-894-1267

Larianl1@MGAE.COM

www.MGAE.COM

Meet the girls with Passion for Fashion

www.Bratzpack.com

EXHIBIT _____ 45 _____

PAGE _____ 522 _____

Confidential - For Attorney's Eyes Only

MGA 1165382

**BLUEBIRD** OFFICE SUPPLIES
(888) 477-0700
www.bluebirdonline.com

**EXHIBIT 46**

| From: | Isaac Larian |
|---|---|
| To: | Eve Johnson |
| CC: | |
| BCC: | |
| Sent Date: | 2002-03-14 10:43:42:125 |
| Received Date: | 2002-03-14 10:43:42:125 |
| Subject: | RE: Recruitment Lead Follow up |
| Attachments: | |

Try again! Things might have changed.

——Original Message——
From: Eve Johnson
Sent: Monday, February 18, 2002 4:18 PM
To: Isaac Larian
Subject: Recruitment Lead Follow up

Bill Martinez at ext: 4145 - he has no interest in changing positions, very happy at Mattel, job is secure. He does have friends that have been laid off. He was no help with referrals.

Erica Kane at ext: 3415 - I left her a message, I'll call back tomorrow.

*Sharon Zuckerman at ext: 3428 - she is a designer, she was interested and will send her resume to me in a couple of days.

Bill Greening at ext: 5205 - he has no interest in changing, his job is pretty secure because he works on main line Barbie and really loves it.

Abbe Litteton: cannot find a # for.

Roxanna: cannot find a # for.

Eve Johnson-Ford
Human Resource Manager
MGA Entertainment
(818) 894- 2525 ext. 130
(818) 894- 1815 fax

——Original Message——
From: Isaac Larian
Sent: Friday, February 15, 2002 11:47 AM
To: 'Carter Bryant'
Cc: Paula Treantafelles; Eve Johnson
Subject: RE: temporary email

Carter, thanks.

EXHIBIT 44
PAGE 523

Confidential - For Attorney's Eyes Only

Exhibit 36
P. 503

MGA 0089260

Eve, here is the hit list. Lets get these people here next week. I am sure they would love to work for a company with the Toy of The Year award! Please keep me posted.

Otis is a great idea.

-----Original Message-----
From: Carter Bryant [mailto:bryant598@yahoo.com]
Sent: Friday, February 15, 2002 11:33 AM
To: Isaac Larian
Cc: PTreantafelles@mgae.com
Subject: RE: temporary email

HI Isaac,

here are a few names; check with Paula too because I think one of her friends was looking into some prospects as well.

I agree that we need some more people; these names are of people who do prelim design much like what I do and I think could be really good for Bratz.

Bill Martinez: works for Mattel, created Generation Girl line.

Erica Kane: works for Mattel, does much of the Mary Kate and Ashley product.

Sharon Zuckerman: works for Mattel Barbie collector, very talented.

Abbe Littleton: formerly at Mattel collector.

Roxanna (I don't remember her last name, but Paula knows her). Works for Mattel

Paula, you had also told me about someone named Denise who you had received a resume from. Maybe we should check it out; she is very talented and can do a lot.

Bill Greening (?) not sure this is the correct last name, but he is good and works for Mattel.

We might also try recruiting at Otis Fashion dept. Many of Mattel's new hires come from there; that's where I went to school. Contact Rose Brantley, chair of Fashion Design Dept.

--- Isaac Larian <ilarian@mgae.com> wrote:
> Hi Carter,

Confidential - For Attorney's Eyes Only

Exhibit 36
P. 504

EXHIBIT 44

PAGE 524

MGA 0069281

>
> Hope all is well.
>
> We MUST hire one or two fashion designers now to
> help out with Bratz.
>
> I am concerned. I heard Mattel is rushing out a
> competing line.
>
> I don't think Veronica wants or can work full time.
>
> We need to move fast and keep the momentum going.
>
> Please give me some names of very good people
> URGENTLY.
>
>
>
> ——Original Message——
> From: Carter Bryant [mailto:bryant598@yahoo.com]
> Sent: Thursday, February 14, 2002 4:58 PM
> To: ilarian@mgae.com
> Subject: temporary email
>
>
> Hi all,
>
> I have been having some problems with my email, so
> for
> the time being, please send or re-send any email
> sent
> in the last 3 days to my temporary email address. It
> is:
>
> bryant598@yahoo.com
>
> thanks.
>
> Carter
>
> _____
> Do You Yahoo!?
> Send FREE Valentine eCards with Yahoo! Greetings!
> http://greetings.yahoo.com

_____
Do You Yahoo!?
Got something to say? Say it better with Yahoo! Video Mail
http://mail.yahoo.com

EXHIBIT _____ 4 V

PAGE _____ 525

Exhibit 36
P. 505

Confidential - For Attorney's Eyes Only

MGA 0069282

**EXHIBIT 47**

| | |
|---|---|
| **From:** | 'Carter Bryant' <cbe1068@sbcglobal.net> |
| **To:** | Isaac Larian (President / CEO) <LarianI1@mgae.com> |
| **CC:** | LDjiguerian@mgae.com <LDjiguerian@mgae.com> |
| **Sent:** | 6/5/2006 9:38:52 AM |
| **Subject:** | RE: eBay |

OK will review when the ebay item comes in.
thanks!

Carter

*"Isaac Larian (President / CEO)" <LarianI1@mgae.com>* wrote:

# Thanks.

# Guys, lets do this in BRATZ look ASAP. It will be HOT!!

**Isaac Larian**
**CEO**
**MG   Entertainment, Inc**
**A Consumer Entertainment Product Co.**
**" A man's every act begins with a dream and ends with one"-Herzl**

16380 Roscoe Blvd. Suite 200
Van Nuys, California 91406
Tel: 818-894-3150
email: lariani1@mgae.com
fax: 818-894-126?
www.mgae.com
www.bratz.com

---

**From:** Ninette Pembleton
**Sent:** Monday, June 05, 2006 9:01 AM
**To:** Isaac Larian (President / CEO)
**Cc:** Carter Bryant; Leon Djiguerian; Ray Martin
**Subject:** RE: eBay

Purchased one today and it should arrive by end of week.

Still bidding on a 2nd one.

See attached.

EXHIBIT ___47___

PAGE ___526___

**From:** Isaac Larian (President / CEO)
**Sent:** Saturday, June 03, 2006 5:58 PM
**To:** Ninette Pembleton
**Cc:** Carter Bryant; Leon Djiguerian; Ray Martin
**Subject:** eBay

## Remember the talking parrot: Pete the Repeat?

## Can you please get 2-3 samples on eBay.

## I want to make a Bratz KIDZ version!

**Isaac Larian**
**CEO**
**MG   Entertainment, Inc**
**A Consumer Entertainment Product Co.**
**" Each day we need good thoughts to live by. And remember...you get**
**what you order in life." - Alfred Montapert**
16380 Roscoe Blvd. Suite 200
Van Nuys, California 91406
Tel: 818-894-3150
email: lariani1@mgae.com
fax: 818-894-1267
www.mgae.com
www.bratz.com

*********************************************************************
IMPORTANT NOTICE: This e-mail message (including any attachments) constitutes non-public information intended
to be conveyed only to specific recipients. It may contain information which is confidential, legally privileged and/or
exempt from disclosure under applicable law. If you are not the intended recipient (or a party responsible for delivering
this message to the intended recipient), you are hereby notified that you are NOT authorized to review, use, disclose,
distribute or copy this communication in any way. If you have received this message in error, please permanently delete
this e-mail and any copies from your computer system without delay. Please also notify the sender (or
administrator@mgae.com) by return e-mail, and thereafter delete your reply. Thank you.
*********************************************************************

EXHIBIT _____ 47
PAGE _____ 527

**EXHIBIT 48**

## CONFIDENTIALITY AND INVENTIONS ASSIGNMENT AGREEMENT

This Confidentiality and Inventions Agreement is executed by and between ABC Int'l Traders, Inc. ("Company") and_____("Employee").

During the course of his/her employment at the Company, Employee will have access to, will acquire, and will become acquainted with trade secrets, confidential information and property related to the Company and its customers' and vendors' businesses. The Company's trade secrets include, but are not limited to, such information as customer names, addresses, phone numbers, names, specific characteristics of suppliers and customers and their respective employees with whom the Company has dealings (whether or not such information is contained on a Rolodex, computer printout, customer list, or is orally communicated to any Company employee in the course of their duties) and the history of purchases, along with terms and conditions of credit offered to each customer; names, addresses, telephone numbers and specific characteristics of prospective customers and contacts; information regarding particular customer product peculiarities, manners of doing business, needs and requirements; product specifications and performance needs for each customer; and the prices charged to each customer; customer information reports, pricing information (such as price lists, quotation guides, previous or outstanding quotations, equipment prices or billing information), mailing labels, mailing plans and programs, sales report forms, pending projects or proposals, techniques used in approaches or results of any market research, advertising sources, employee salaries, contracts and wage information, names and addresses of the vendors, manufacturers, and other suppliers of Company products, the products they supply, the applicable prices and discounts, and the applicable product specifications; new products or inventions developed or under development by the Company; formulas, patterns, compilations, programs, devises, methods, techniques, processes, pictures, contracts, files, methods or production (including quality control and packaging), proposals, business plans and projections, budgets, financial information, software, hardware, any patent application or the contents thereof; and all other material relating in any manner whatsoever to the customers products, vendors, and suppliers of Company, including matters which should reasonably be considered trade secrets even if not expressly described herein.

All information obtained in the course of Employee's employment is to be used only for the purpose of conducting the Company's business. Employee agrees to never discuss or disclose such trade secrets, confidential information or property, either directly or indirectly, with or in the presence of persons outside the Company, either during employment, or at any time thereafter, except as required by Employee's supervisor. Employee further agrees that information in any form, including but not limited to documents, tapes, lists, computer printouts, studies, reports, drafts, pictures, charts, maps, drawings, programs, equipment, scrap, blueprints, vendor lists, customer lists, client billing information, all financial reports, payroll information, records, files and other materials pertaining to the Company, its customers and vendors, may not be removed from the facilities without the advance written permission of Employee's supervisor.

Employee acknowledges that all such trade secrets or confidential information, or any copies of summaries thereof, whether prepared by Employee, by the Company, or provided to Employee by the Company, is the exclusive property of the Company. On demand or termination of employment for any reason, Employee agrees to return to the Company all papers, records, electronic copies, and documents in Employee's possession or obtained during the course of Employee's employment with the Company and Employee further agrees that he/she will not retain any copies, nor permit anyone to retain any copies thereof, except that those who have successfully completed their 90 day introductory

1

CONFIDENTIAL
ATTORNEY'S EYES ONLY

EXHIBIT ___48___

PAGE ___528___

MGA001470

period may keep their Franklin Planner.

Employee acknowledges and agrees that the trade secrets described herein have independent economic value in that they are not generally known within the trade they represent many years of research and development and give the Company substantial competitive advantages.

As a condition of employment, Employee agrees that he/she (1) will regard and preserve the confidential information as highly confidential and as the trade secrets of the Company; (2) will not, at any time during or within twelve months after the termination of his/her employment with the Company, reveal, disclose, permit to be disclosed, or make known to any person, firm or corporation, any confidential information which was disclosed to Employee or of which he/she became aware during his/her employment, regardless of whether developed, prepared or created in whole or in part by Employee's efforts, except to the extent that such disclosure is necessary and is authorized in writing by the Company to carry out Employee's duties of employment; (3) will retain all confidential information in trust for the sole benefit of the Company and will not disclose to or use any confidential information in an independent business related to the scope of the Company's business (designer, manufacturer and distributor of toy); (4) will not photocopy or duplicate, and will not permit any person to photocopy or duplicate, any of the confidential information without the Company's written consent and approval; (5) will not make any use of confidential information for his/her own benefit or the benefit of any person or entity other than the Company; (6) will return all confidential information (including but not limited to customer lists, books maintained by Employee, and source lists) to the Company immediately upon request for same. Employee agrees that if he/she has any questions about whether a matter is a trade secret, to seek a determination by the Company before he/she uses any such information.

Employee agrees to maintain the same level of confidentiality regarding co workers, employee relation matters, and Company operations. Employee agrees, by accepting employment or continued employment with the Company, to comply with these rules and to maintain confidentiality of the Company's trade secrets.

Employee understands and acknowledges that the trade secrets and confidential information of the Company are not known to the general public and are the subject of reasonable efforts to maintain its secrecy. They are of a special, unique and extraordinary character, which gives them a particular value, the loss of which cannot be reasonably compensated in damages in an action at law. Employee further understands and agrees that in addition to any other rights or remedies which the Company may have, the Company shall be entitled to immediate injunctive and other equitable relief to prevent a breach of this Confidentiality and Inventions Agreement. If any legal proceeding arises under this Confidentiality and Inventions Agreement, the prevailing party shall be entitled to recover all costs and expenses, including reasonable attorney's fees and costs. California law shall apply to this agreement as to contracts wholly performed within the state.

Employee and the Company agree that this Confidentiality and Inventions Agreement shall not apply to information that Employee was aware of prior to his/her employment with the Company, or that is otherwise publicly known.

Employee further agrees that during his/her employment and for a period of twelve months after termination, Employee will not solicit the purchase of any products or services from any supplier or vendor who supplies products or services to the Company.

CONFIDENTIAL
ATTORNEY'S EYES ONLY

2

MGA001471

EXHIBIT _____ 48

PAGE _____ 529

INVENTIONS ASSIGNMENT:

1. ASSIGNMENT OF INTEREST: Employee agrees to assign, and does hereby assign, to Company all interest which employee may have in all patentable and/or not-patentable ideas and/or inventions made or conceived by Employee solely or jointly with others during Employee's employment with Company. This assignment shall not apply to any idea or invention developed by Employee entirely on Employee's own time without equipment, supplies, facilities, or trade secret information of Company, unless such invention or idea: (1) relates to the business of company or to Company's actual or anticipated research or development, or (2) results from any work performed by Employee for Company. THIS AGREEMENT DOES NOT APPLY TO ANY INVENTION WHICH QUALIFIES FULLY UNDER THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 2870.

2. DISCLOSURE OF IDEAS OR INVENTIONS: Employee agrees to promptly disclose in writing to Fred Larian all inventions developed solely or jointly with others during Employee's employment with Employer, whether such inventions are patentable, not-patentable or assignable under this Agreement. Employer agrees to maintain such disclosure in confidence.

3. WRITTEN DISCLOSURE OF PRIOR INVENTIONS: Employee agrees to provide a complete list of all patented or not-patented ideas and inventions conceived by Employee or anyone else jointly with Employee, prior to the date Employee has signed this Agreement. The failure of Employee to provide Company with a written disclosure of ideas or inventions shall be deemed to constitute an affirmative acknowledgment by Employee that no such ideas or inventions exist..

   If any provision of this Confidentiality and Inventions Agreement is held to be invalid or unenforceable, in whole or in part, the remaining portions of this Agreement shall continue to be valid and will be performed, construed and enforced to the fullest extent permitted by law. The invalid or unenforceable provision shall be deemed amended and limited in accordance with the intent of the parties, as determined from the face of this Agreement, to the extent necessary to permit the maximum enforceability or validation of the provision.

| | | |
|---|---|---|
| 10-18-0 | _Meredith Ward_ | Mercedeh Ward |
| Date | Employee Signature | Employee Name (Printed) |

| | |
|---|---|
| Date | Isaac Larian, President and CEO |

CONFIDENTIAL
ATTORNEY'S EYES ONLY

3

MGA001472

EXHIBIT ___48___

PAGE ___530___

BLUEBIRD OFFICE SUPPLIES (888) 477-0700 www.bluebirdoffice.com

**EXHIBIT 49**

RECEIVED
NOV 0 2 2004



**LITTLER MENDELSON**®
A PROFESSIONAL CORPORATION

ARIZONA

CALIFORNIA

COLORADO

Keith A. Jacoby
Direct: 310.772.7284
Direct Fax: 310.553.5583
kjacoby@littler.com

DISTRICT OF
COLUMBIA

November 1, 2004

FLORIDA

**VIA MAIL AND FACSIMILE 213.624.0643**

John B. Quinn, Esq.
Kirkland Garey, Esq.
John Corey, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

GEORGIA

**Re:   Mattel, Inc. v. Carter Bryant and Related Cross-Claim**, Los Angeles Superior
Court Case No. BC 314398

ILLINOIS

Dear Messrs. Quinn and Garey:

MINNESOTA

This letter is in response to Mr. Garey's letter of October 28, 2004. That letter contained
several misrepresentations and misstatements of the positions I previously articulated on
behalf of Mr. Bryant to Mr. Garey and Mr. Corey, and I will rearticulate those positions here.

NEVADA

Preliminarily, my client and I take exception to your baseless accusation that the Bryant
production has been "sanitized." Nothing of the sort has occurred. I explained to you that
Mr. Bryant is an individual who moved several times between 1998 and 2004. He is not
required to maintain documents in the manner that a corporation such as Mattel is required to
do, and he has not done so. Of course, it is possible that documents were misplaced over the
years, or simply discarded, well before this lawsuit was filed. To be sure, Mr. Bryant never
expected to be sued by Mattel three and one-half years after his employment ended. That
being said, we are all fortunate that Mr. Bryant did maintain quite a number of documents
from the late 1990's and 2000, and all legitimately sought responsive documents in his
possession, custody and control have been produced, or are being produced today. This
production is the product of extensive searches at Mr. Bryant's places of work and home.
That said, I will look into the purported gaps in the production Mr. Garey's letter outlines,
and if further responsive documents are located, they will be produced. As indicated during
my call with Mr. Garey, Mr. Bryant will make a supplemental document production to
Mattel today, and allow Ms. Tania Krebs to view certain three dimensional items responsive
to Mattel's document requests at my office, at 3:00 p.m.

NEW JERSEY

NEW YORK

OHIO

PENNSYLVANIA

Regarding requests to inspect Mr. Bryant's home computer, I have made further inquires on
that subject to Mr. Bryant and my colleagues. Mr. Bryant did not own a home computer

TEXAS

WASHINGTON

PAGE ____ EXHIBIT ____ 49 551

THE NATIONAL EMPLOYMENT & LABOR LAW FIRM℠

2049 Century Park East, 5th Floor, Los Angeles, California 90067.3107 Tel: 310.553.0308 Fax: 310.553.5583 www.littler.com

John B. Quinn, Esq.
Kirkland Garey, Esq.
Jon Corey, Esq.
November 1, 2004
Page 2

during his time at Mattel. He later purchased a computer, which he used for a time, and then gave away to his niece. That computer has been retrieved and searched for responsive documents, and none have been located. Mr. Bryant declines to produce his hard drive for inspection for the reasons articulated in his response to Mattel's document request.

Regarding the draft of the Bryant/MGA agreement prepared by Mr. Bryant's counsel, you have misstated my position. That document is not germane to this case in any respect. The proposed edits by Ms. Wang were almost entirely rejected by MGA and never had any legal effect. They have no bearing no Mattel's claims. During our call, I contrasted this position with Mattel's position on Mr. Bryant's requests relating to the Mattel Inventions and Assignments Agreement and Conflict of Interest Questionnaire. Originally, Mr. Bryant sought all drafts of these documents. That request was objected to as overbroad, and despite numerous meet and confers, counsel has not abandoned that position. I agreed to limit his requests to seek only forms of the agreements that were _actually used_ by Mattel, from 1995 to the present. This would be highly relevant if, for example, Mattel has modified the agreement in response to a ruling or legal opinion that any part of the agreement was unenforceable. Mattel still refuses to produce these documents. I do not see how Mattel can on one hand refuse to produce documents actually used in the course of its business, and on the other hand insist that draft documents in Bryant's possession which were never used and never had any legal effect must be produced. This is typical of Mattel's strategy of seeking to obtain from Mr. Bryant the widest possible range of discovery, while for its own part agreeing to allow virtually no discovery to go forward.

Regarding the production of "First Generation Bratz" documents, that limitation was expressly agreed upon by Mr. Zeller, with respect to documents produced by both MGA and Mr. Bryant. We agreed that the limitation was without prejudice to seeking further documents at a later time. Mr. Zeller has never revisited this limitation with me, though Mattel appears to be revoking it now. A wholesale production of all post-June 2001 Bratz related documents would be a massive undertaking that is totally unjustified by the claims stated by Mattel to date. We see no basis to produce these documents at this time, and you have articulated none.

With respect to categories of documents Mr. Bryant has simply objected to, I represent that I am unaware of any documents in Mr. Bryant's possession, custody or control relating to Mattel document request no. 21 (other than Bryant himself). All other requests that were simply objected to were either unintelligible as written, or were both wildly overbroad and otherwise objectionable for the reasons stated in the objections. I would note, however, that

EXHIBIT ___

PAGE ___

952

John B. Quinn, Esq.
Kirkland Garey, Esq.
Jon Corey, Esq.
November 1, 2004
Page 3

responsive documents produced in response to other valid requests would, in some cases, be responsive to those objectionable categories as well.

Sincerely,

Keith A. Jacoby

Los_Angeles:381579.3 028307.1010

**EXHIBIT** ___49___

**PAGE** ___533___

**EXHIBIT 50**



CONFORMED COPY

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2     John B. Quinn (Bar No. 090378)
      Michael T. Zeller (Bar No. 196417)
3     Jon D. Corey (Bar No. 185066)
      Tania M. Krebs (Bar No. 227281)
4  865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017-2543
5  (213) 443-3000 (telephone)
   (213) 443-3100 (facsimile)
6
   Attorneys for Plaintiff and Counter-Defendant
7  Mattel, Inc.

8  LITTLER MENDELSON
      Robert F. Millman (Bar No. 062152)
9     Douglas A. Wickham (Bar No. 127268)
      Keith A. Jacoby (Bar No. 150233)
10 2049 Century Park East, 5th Floor
   Los Angeles, California 90067-3107
11 (310) 553-0308 (telephone)
   (310) 553-5583 (facsimile)

12 Attorneys for Defendant and Counter-Claimant
   Carter Bryant
13
                UNITED STATES DISTRICT COURT
14
                CENTRAL DISTRICT OF CALIFORNIA
15
16 MATTEL, INC., a Delaware corporation,  )  CASE NO. CV 04 9059 NM (RNBx)
                                          )
17             Plaintiff,                 )  **DISCOVERY MATTER**
                                          )
18        v.                              )  JOINT STIPULATION RE:
                                          )  MATTEL'S MOTION TO COMPEL
19 CARTER BRYANT, an individual, and      )  PRODUCTION OF DOCUMENTS
   DOES 1 through 10, inclusive,          )
20                                        )  Hearing Date:    January 25, 2005
               Defendants.                )  Time:            9:30 a.m.
21                                        )  Courtroom:       540
   ───────────────────────────────────   )
22 CARTER BRYANT, on behalf of himself,   )
   all present and former employees of    )  Hon. Robert N. Block
23 Mattel, Inc., and the general public,  )
                                          )  Discovery Cut-off: Not Set
24             Counter-Claimant,          )  Pretrial Conference: Not Set
                                          )  Trial: Not Set
25        v.                              )
                                          )
26 MATTEL, INC., a Delaware corporation,  )
                                          )
27             Counter-Defendant.         )
                                          )
28

7209/625168.1
1/4/05  15:53

**EXHIBIT** ___50___

**PAGE** ___534___

                                          JOINT STIPULATION

1   Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37,
2   Plaintiff and Counter-Defendant Mattel, Inc. ("Mattel") and Defendant and Counter-
3   Claimant Carter Bryant ("Bryant") respectfully submit this Joint Stipulation on
4   Mattel's Motion to Compel Production of Documents.

### Mattel's Introductory Statement

6   Defendant and Counter-Claimant Carter Bryant is withholding relevant
7   documents and has refused to produce a complete privilege log.  Mattel therefore
8   respectfully seeks the Court's assistance to obtain the information it is entitled to.

9   **Mattel's Claims And Bryant's Counterclaims.**  Bryant is a former
10  Mattel employee. He worked as a Mattel product designer from September 1995 to
11  April 1998, and then again from January 1999 to October 2000.[1]  Upon starting his
12  second term of employment with Mattel, Bryant executed an Employee Confidential
13  Information and Inventions Agreement.[2]  There, he agreed that during his Mattel
14  employment he would not, without Mattel's express written consent, "engage in any
15  employment or business other than for [Mattel], or invest in or assist (in any manner)
16  any business competitive with the business or future business plans of [Mattel]."
17  Bryant also assigned to Mattel, to the fullest extent of the law, all rights in
18  "inventions," including "designs," that he created during his Mattel employment.  In
19  his agreement, Bryant further promised not to disclose or misuse Mattel's proprietary
20  or confidential information, which is an obligation that continues to this day.

21  In November 2003, Mattel obtained a copy of a contract between Bryant
22  and a Mattel competitor, MGA Entertainment ("MGA").[3]  That contract--which
23  Bryant and MGA entered into while Bryant was employed by Mattel--required Bryant
24  to provide design services to MGA on a "top priority" basis, in conflict with his then-

25  
26  [1]  See Decl. of Michael T. Zeller, dated January 4, 2005 and filed concurrently herewith ("Zeller Dec."), Exh. 1 (Complaint at ¶ 9) & Exh. 6 (Cross-Complaint at ¶ 7).
27  [2]  Exhibit A to the Complaint (Zeller Dec., Exh. 1).
28  [3]  Zeller Dec., Exh. 15.

1   existing obligations to Mattel. It also purported to grant MGA ownership of works

2   produced by Bryant, both before and after the agreement's effective date, in further

3   contravention of his obligations to Mattel.[4]

4          Mattel filed this suit for breach of contract, breach of fiduciary duty,

5   breach of the duty of loyalty, unjust enrichment and conversion.[5] Bryant has brought

6   counterclaims, seeking to invalidate Mattel's agreements with all of its past, present

7   and future employees, along with sweeping requests for damages and other relief

8          **Bryant's Refusal to Provide Full Discovery**. As shown in detail below,

9   discovery thus far has confirmed that Bryant did work for and aided MGA during his

10  Mattel employment. This included work on a doll line now known as "Bratz" and an

11  ostensibly separate doll called "Angel." There is also evidence that he used internal

12  Mattel information and resources to benefit himself and MGA, to Mattel's detriment.

13  While still employed by Mattel, he enlisted other Mattel employees to build a

14  "prototype" Bratz doll for his sales pitch to MGA–a pitch that he made while

15  employed by Mattel. Weeks before he left Mattel, and using Mattel resources Bryant

16  targeted Mattel vendors and engaged them to start their work on Bratz. According

17  to Bryant, he has earned "millions of dollars" from his relationship with MGA.[6]

18         At every possible step, Bryant has stonewalled Mattel's efforts to obtain

19  discovery into the full scope of his wrongdoing. Among many other things, he

20  evaded deposition for over four months. At one point, to avoid a motion to compel,

21  Bryant's counsel even gave their "word as attorneys" that he would sit for deposition

22

23         [4] Id., Exh. 15 at ¶¶ 3(a)-(b).

24         [5] Mattel originally filed this suit in Los Angeles County Superior Court, and Bryant
    removed to this Court for the first time on May 14, 2004. By Order dated August 20, 2004,

25  Judge Manella granted Mattel's motion for remand and sent the case back to state court.

26  Zeller Dec., Exh. 3. Bryant nevertheless turned around and removed for a second time on
    November 2, 2004. Mattel has a pending motion for remand on Bryant's second removal

27  that is currently set to be heard by Judge Manella on January 31, 2005.

28         [6] Zeller Dec., Exh. 4.

EXHIBIT 50
036

1   on a date certain in August, only to unilaterally renege at the last minute.  Even after

2   that, it took two Court Orders compelling Bryant's deposition before he appeared.

3             Bryant persists in similar tactics with respect to his document

4   production, despite Mattel's repeated efforts to resolve the matter without judicial

5   intervention. He either has failed or refused to produce key categories of information,

6   including documents directly relating to his breaches of his duties to Mattel.  For

7   example, Bryant refuses to produce *any* responsive documents that were created after

8   this suit was filed in April 2004, even though there is no basis in law or logic for such

9   a limitation, especially in this case where his breached obligations to Mattel include

10  obligations that are still in force.  He additionally has imposed a multitude of other

11  restrictions on his production by refusing to disclose documents "created" after

12  certain dates, even as to plainly relevant categories of information and even though

13  such information is relevant regardless of when it was "created."

14            Moreover, what Bryant has produced is woefully incomplete. He has not

15  produced all of his contracts with MGA and refuses to produce non-privileged

16  communications relating to those contracts.  He is withholding entire categories of

17  financial information relating to his work for MGA, and the financial documents he

18  did produce are so heavily redacted that they are useless.  Bryant has turned over

19  faxed documents that are missing fax header information and/or that lack fax cover

20  sheets. This is particularly troubling because timing and the chronology of events are

21  important to the merits of central issues in the case.  His production also includes a

22  variety of documents that refer to other documents, including attachments, that have

23  not been produced. Although Bryant agreed weeks ago to inquire into these and other

24  deficiencies, he has not responded to Mattel's follow-up efforts on the matter.

25            Bryant also has failed to produce, even in hard copy form, emails and

26  other electronic documents that are known to exist relating to his work on the "Bratz"

27  project and for MGA. He nevertheless has rebuffed Mattel's requests to inspect the

28  hard drives of his computers, even though he himself has made no attempt to

7209/625168.1
1/4/05 17:20

3

EXHIBIT _____ 50

PAGE _____ 587

1  determine whether deleted files on the drives contain responsive information and

2  even though the law is clear that Mattel is entitled to such information.

3  Mattel respectfully requests that its motion to compel be granted.

4

5  **Bryant's Introductory Statement**

6  To understand and appreciate the issues raised in Plaintiff and

7  Counter-defendant Mattel Inc.'s ("Mattel") discovery motion, it is critical for the

8  Court to consider the procedural posture within which the motion arises. This case

9  has been twice removed to Federal Court by Defendant and Counter-claimant Carter

10  Bryant ("Bryant") on the grounds that diversity jurisdiction and federal question

11  jurisdiction exist. Mattel has steadfastly insisted that no federal questions have been

12  raised by its Complaint, and that diversity jurisdiction does not exist *because Bryant*

13  *cannot prove that more than $75,000 is in controversy*. On one hand, Mattel has

14  postured to Judge Manella that this case is a small employment lawsuit regarding

15  Bryant's alleged performance of services for a competitor, in the weeks before he

16  terminated his employment at Mattel. On the other hand, Mattel urges this Court to

17  compel responses to *wide ranging* discovery requests, covering documents created

18  by Bryant and others over the course of his entire life, on subject matters that could

19  only be germane to this lawsuit if Mattel were seeking to recover all of the money

20  Bryant has earned since leaving Mattel, *i.e.* royalties earned over the course of the

21  past four years as a result of the sale of products sold under the trade name "Bratz."

22  Mattel's inconsistent positions taken before Judge Manella and before this Court

23  cannot be reconciled with each other.

24  Mattel should not be permitted to gain any advantage from its

25  duplicitous assertions about the scope of this lawsuit. Mattel alleges Bryant violated

26  his contractual duties and duty of loyalty to Mattel in the weeks leading up to his

27  resignation. Bryant's compensation during his last weeks of employment at Mattel

28  totaled less than **REDACTED**. Since then, he has earned **REDACTED** from

7209/625168.1
1/4/05  17:20

4

EXHIBIT _____ 50

PAGE _____ 538

1                   **ISSUE NO. 5**

2 **Should Bryant Be Compelled To Produce His Communications With MGA**

3 **Or Relating To Bratz, Including By Producing His Computer Hard Drives For**

4     **Inspection And Unredacted Versions Of His Telephone Records?**

5

6           Set forth below are: (A) Mattel's Requests that are relevant to Issue

7 No. 5 and Bryant's Responses to Mattel's Requests; (B) Mattel's position; and (C)

8 Bryant's position.

9

10     **A.**    **Mattel's Requests And Bryant's Responses**

11

12 REQUEST FOR PRODUCTION NO. 23:

13           All COMMUNICATIONS between YOU and MGA that REFER OR

14 RELATE TO any work or services that YOU performed for or on behalf of Mattel,

15 Inc. or YOUR employment by Mattel, Inc.

16

17 RESPONSE TO REQUEST FOR PRODUCTION NO. 23:

18           Defendant incorporates by reference each and every objection set forth

19 above in the General Objections. Defendant objects to this request on the grounds the

20 terms "work" and "services" are vague, ambiguous and fail to identify with sufficient

21 particularity the documents to be produced. Defendant further objects to this request

22 on the grounds that it is overbroad, unduly burdensome and unintelligible to the

23 extent it fails to identify a specific time period or proper subject matter, and on that

24 basis seeks documents not relevant to this action and not reasonably calculated to lead

25 to the discovery of admissible evidence.  Defendant also objects to this request

26 insofar as it invades the privacy and/or confidentiality of other individuals who are

27 not parties to this action. Finally, Defendant objects to this request to the extent it

28 seeks documents prepared in anticipation of litigation or that are protected by the

EXHIBIT _____ 5D

PAGE _____ 539

employment by Mattel or work that he performed for Mattel, those documents are plainly relevant. They are pertinent to his knowledge of his obligations to Mattel (which Bryant has put at issue in an effort to avoid his Mattel agreements) and to the willfulness of his tortious conduct (which is relevant to punitive damages). They also, in themselves, may establish Bryant's liability, such as by proving additional instances in which he used or conveyed to MGA internal Mattel proprietary information in breach of his duties to Mattel.

Nor is there any legitimate justification for his unilateral limitation on relevant communications unless they happened to be "created prior to October 21, 2000." For the reasons already shown, Bryant's artificial date restrictions improperly deprive Mattel of discoverable information relating to Bryant's accused conduct and are unsupported by law or common sense. Indeed, that is particularly evident here. He is refusing to turn over communications with MGA "created" after October 20, 2000 relating to his Mattel work. If Bryant's restriction were adopted, he would be free to conceal documents showing that, a week or a month or a year after he left Mattel's employment, he further breached his on-going duties to Mattel by using or disclosing yet more confidential Mattel information. Bryant's limitation cannot be sustained.

**Bryant Also Should Be Ordered To Turn Over His Hard Drives.** A request for "documents" under Rule 34 operates as a request for documents stored in electronic form. See Playboy Enterprises, Inc. v. Welles, 60 F. Supp. 2d 1050, 1053 (S.D. Cal. 1999); Fed. R. Civ. P. 34, advisory committee's note.[66] Yet, among the documents and things that Bryant has refused to produce are the hard drives from his computers. Bryant used these computers to communicate with and perform work for

---

[66] Mattel's requests also explicitly defined "documents" to include electronic data and documents. Zeller Dec., ¶ 10 and Exh. 12.

EXHIBIT _____ 50

PAGE _____ 540

1 MGA, but he refuses to allow Mattel to inspect any of their hard drives.[67]  Bryant

2 used three different computers that Mattel is aware of that are relevant here.  First,

3 Bryant purchased a desktop computer in October 2000 (the "Desktop").[68]   Bryant

4 admitted at deposition that he used this computer for a period of time and then gave

5 it to his niece.[69]  Second, Bryant purchased a laptop computer in November 2001.[70]

6 Third, Bryant testified that he used his parent's computer for a time, including during

7 the time that he purportedly created "Bratz."[71]

8          There is more than ample basis to believe that the hard drives of these

9 computers contain responsive documents and relevant information.   Bryant's

10 production includes a smattering of documents that were computer-generated or

11 printed from a computer, although he has not produced all such documents known to

12 exist as explained further below.  For example, Bryant has produced hard copies of

13 a few electronic-mail messages.[72]  He has also produced documents that were created

14 by computer, including correspondence.[73]

15          During a telephone conversation with Bryant's counsel, Mattel first

16 learned of the existence of the Desktop and that Bryant had purportedly given it away

17 to his niece.[74]  In later correspondence, Bryant's counsel indicated that he had looked

18 at the hard drive of the Desktop, but located no responsive documents.[75]  He refused

19

20

---

21      [67]  Zeller Dec., Exh. 49.

22      [68]  Zeller Dec., ¶ 30 and Exh. 72 (at 246:3-5).

23      [69]  Zeller Dec., Exh. 72 (at 246:2-246:17).

24      [70]  Zeller Dec., Exh. 72 (at 245:7-248:11).

25      [71]  Zeller Dec., Exh. 72 (at 245:25-246:1).

26      [72]  Zeller Dec., ¶ 30 and Exh. 26.

        [73]  Zeller Dec., ¶ 31

27      [74]  Zeller Dec., ¶ 36 and Exh. 46.

28      [75]  Zeller Dec., ¶ 37 and Exh. 49.

EXHIBIT _____ 50

PAGE _____ 841

1   to allow Mattel to inspect the hard drive,[76] even though there is no evidence that

2   Bryant made any effort to conduct a forensic analysis of that hard drive or to

3   determine whether any deleted documents could be retrieved and produced.[77] Indeed,

4   because as far as Mattel could tell Bryant did not create any forensic copy of that (or

5   any other) hard drive, Mattel requested that Bryant's counsel take possession of the

6   hard drives to ensure that any evidence that they may contain is not destroyed.[78]

7   Counsel for Bryant never responded.[79]

8          Compelling the production of the hard drives to Mattel is appropriate for

9   two principal reasons. First, it is appropriate to ensure that evidence is not lost and

10  to permit Mattel to ascertain whether any files of relevant materials have been

11  deleted. Because Bryant's counsel will not make these hard drives available for

12  inspection (and indeed has not undertaken to secure the computers to ensure that no

13  electronic evidence is destroyed), Mattel should be permitted to make mirror-images

14  of the hard drives of each computer. Creating a mirror-image not only is forensically

15  sound, but it takes very little time and causes no disruption to the computer's

16  functionality. Even if the evidence on Bryant's computers has been or is deleted or

17  otherwise tampered with, the hard drives must be produced. Deleted computer

18  records are discoverable. See Simon Property Group L.P. v. mySimon, Inc., 194

19  F.R.D. 639, 640 (S.D. Ind. 2000) ("[C]omputer records, including records that have

20  been 'deleted,' are documents discoverable under Fed. R. Civ. P. 34.").

21         Second, Mattel is entitled to discovery to determine whether the

22  computers contain additional responsive documents. The evidence suggests that they

23  do. Bryant's counsel has represented that he looked at one hard drive for responsive

24  documents, but apparently has made no effort to look for or recover deleted data from

25

26  _____

    [76] Id.

    [77] Zeller Dec., ¶ 37.

27  [78] Zeller Dec., ¶ 38.

28  [79] Zeller Dec., ¶ 38.

7209/625168.1
1/4/05  17:20                                    62
                                                                    JOINT STIPULATION

EXHIBIT _____ 50

PAGE _____ 542

1 | that hard drive and made no effort to examine the other computers at all.[80]

2 | Deficiencies in Bryant's production confirms that the hard drives likely contain

3 | relevant materials.   Bryant used email in his exchanges with MGA and others

4 | pertaining to Bratz.[81]  He also recorded various e-mail addresses that he used and

5 | produced a document containing some of them to Mattel.[82]  Elsewhere, in a letter,

6 | Bryant specifically invited the recipient to contact him by e-mail: "Please do not

7 | hesitate to email me if you have further questions."[83]   Yet, there is irrefutable

8 | evidence that Bryant has not turned over even hard copies of all his responsive emails

9 | or their attachments.  MGA, for example, produced e-mail messages that Bryant

10 | exchanged with Isaac Larian and Paula Treantafelles of MGA in 2000.[84]  Yet, Bryant

11 | has not produced these emails in any form, and, given the dates on the emails, it is

12 | highly likely that files containing these and other emails are on the hard drive of his

13 | Desktop.   Indeed, despite the existence of such known, additional electronic

14 | documents, Bryant's entire production (approaching 1600 pages) contains only a few

15 | pages of computer-generated documents: a few e-mail messages, four letters, and a

16 | résumé.  Mattel is entitled to inspect the hard drives of Bryant's computers to

17 | determine whether they contain responsive documents.

18 |          Bryant may argue that his "personal" computers should somehow be

19 | immune from discovery.  That argument would be wrong.  Courts permit inspection

20 | of home computers. See, e.g., Superior Consultant Co. v. Bailey, No. 00-CV-73439,

21 | 2000 WL 1279161, at *13 (E.D. Mich. Aug. 22, 2000) (ordering defendants to "create

22 | and produce to defense counsel a backup file of defendant Bailey's laptop computer,

23 | and a backup file of any personal computer hard-drive to which defendant Bailey has

24 |

25 | _____

   [80] Zeller Dec., ¶ 37.

26 | [81] Zeller Dec., Exhs. 24-26.

27 | [82] Zeller Dec., Exhs. 40 & 73 (at 400:11-21).

   [83] Zeller Dec., Exh. 21.

28 | [84] Zeller Dec., Exhs. 24 & 25.

EXHIBIT _____ 50

PAGE _____ 543

1  had access at any time"). Such an inspection is particularly appropriate where, as
2  here, the responding party used the computer for business purposes.

3          For these reasons, Bryant should be ordered to make all computer hard
4  drives within his possession, custody or control available for Mattel's inspection and
5  forensic imaging.

6          **Bryant Should Be Compelled To Produce His Telephone Records**
7  **Without Redactions.** Bryant's telephone records are responsive to these requests.
8  Bryant has produced some telephone records.[85] He saw fit, however, to redact the
9  vast majority of the call information on these documents. He went so far as to redact
10  *all* of the call information on his Pacific Bell telephone bills.[86] Bryant has also
11  produced no telephone bills for a carrier known as "tti National, Inc." for any date
12  prior to October 23, 2000 for one phone number or any date prior to October 26, 2000
13  for another phone number.[87] While Bryant may assert, yet again, that rights of
14  confidentiality or privacy justify his stonewalling, the Protective Order more than
15  adequately protects any such rights. He should be ordered to produce the telephone
16  records in his possession without redaction.

17          Bryant's objections should be overruled in their entirety, and he should
18  be ordered to produce all responsive documents.

19

20  **C.    Bryant's Position**

21          There is perhaps nothing more far-fetched in this motion than Mattel's
22  contention that "Bryant has completely refused to produce communications between
23  himself and MGA." Bryant has not "refused" to produce communications between
24  himself and MGA. To the contrary, he has produced his agreement, his royalty
25  statements, all manner of artwork that was done for MGA or that was assigned to

26  ─────────────────────
   [85] See Zeller Dec., ¶ 28 and Exh. 34.
27  [86] See Exhibit 34 to Zeller Dec.
28  [87] Zeller Dec., Exh 34.

7209/625168.1
1/4/05 17:20

64

JOINT STIPULATION

EXHIBIT ____50____

PAGE ____544____

1   MGA. Moreover, and contrary to Mattel's contentions, Bryant has made an extensive
2   and diligent search for responsive and relevant information. As Bryant's counsel has
3   expressly told Mattel, Bryant made the hard drive of the computer he used from 2000
4   to 2002 available to his counsel, and counsel spent scores of attorney hours searching
5   for documents at Bryant's home and in his studio, and produced responsive
6   documents. Counsel has not found any responsive documents or relevant information
7   on his computer hard drives, however. (Jacoby Decl. ¶ 22). Mattel's unsubstantiated
8   comment that Bryant's counsel "apparently has made no effort to look for or recover
9   deleted data from that hard drive and made no effort to examine the other computers
10  at all" is a complete falsehood, and contradicts express representations made to
11  Mattel's counsel in the meet and confer that Bryant's counsel had expended
12  significant time examining the computer. While Bryant has tirelessly searched for
13  and inspected his computer hard drives for relevant information, there is irrefutable
14  evidence that Mattel has not turned over all of its electronic data related to Bryant,
15  such as responsive emails or their attachments, and Mattel has refused to make its
16  technical person knowledgeable available for deposition. (Jacoby Decl. ¶ 23).

17          Mattel complains that Bryant has not simply turned over the hard drive
18  from Bryant's home computer, which he gave to his niece in 2002. That hard drive,
19  however, contains personal information and data that is unquestionably protected by
20  his constitutional right of privacy, and that of his niece. See Cal. Const. art. I, § I.;
21  also see TBG Insurance Serv's Corp. v. Superior Court, 96 Cal. App. 4th 443 (2002)
22  (reasonable expectation of privacy exists in the use of a personal home computer that
23  is owned by a party). Federal law similarly supports Bryant's right to privacy.
24  Pursuant to the Erie doctrine, federal courts sitting in diversity should apply state
25  substantive law and federal procedural law. Other circuits have also held that a
26  reasonable expectation of privacy exists in home computers. U.S. v. Lifshitz,
27  369 F.3d 173 (2nd Cir. 2004); Trulock v. Freeh, 275 F.3d 391, 403 (4th Cir. 2001);
28  Guest v. Leis, 255 F.3d 325, 333 (6th Cir. 2001).

EXHIBIT _____ 50

PAGE _____ 545

1    Mattel cites to <u>Superior Consultant Co. v. Bailey</u>, No. 00-CV-73439,

2  2000 WL 1279161, at *13 (E.D. Mich. Aug. 22, 2000) to support its contention that

3  Bryant has no privacy rights to his "personal" home computers. The facts in <u>Bailey</u>

4  are distinguishable from the case here, as in <u>Bailey</u>, the Plaintiff used his personal

5  computer to access his ex-employer's database of confidential, proprietary and trade

6  secret information. Here, Bryant has not done so.

7    Mattel also seeks unredacted versions of both Bryant's telephone records

8  and the telephone records of his parents and friends. Bryant already produced pages

9  of telephone records reflecting all phone calls between MGA and himself, redacted

10  to exclude his own personal (non-MGA related) phone calls and the phone calls of

11  his family and roommates (Richard Irman and Elise Cloonan). He also produced

12  redacted phone records from Veronica Marlow, the individual who introduced Bryant

13  to MGA. He produced those records in good faith, even though they are not his own,

14  because they were turned over by Marlow to his attorneys during this litigation

15  (Jacoby Decl. ¶ 25)

16    Mattel is not entitled to unredacted versions of Bryant's telephone

17  records. Those records contain calls to and from family and friends, and calls by his

18  roommates to others, which are obviously unrelated to this action. Under California

19  law, "A subscriber has a reasonably expectation that records of his calls will be

20  utilized only for the accounting functions of the telephone company in determining

21  his bills. He has no reason to expect that his personal life, as disclosed by the calls

22  he makes and receives, and the day and time of those calls, will be disclosed to

23  outsiders." <u>People v. McKunes</u>, 51 Cal. App. 3d 487 (1975). Bryant is entitled to a

24  reasonable expectation of privacy in the personal calls he received or made from his

25  home by any of his family members regarding issues unrelated to this case. Similarly,

26  Bryant's parents and friends are entitled to a reasonable expectation of privacy in the

27  personal calls they received or made from their home regarding issues unrelated to

28  this case. Therefore, there is nothing to compel here.

7209/625168.1
1/4/05  17:20

JOINT STIPULATION

EXHIBIT _____50_____

PAGE _____546_____

1    The Requests seeking communications with MGA or referring to "Bratz"
2  are also overbroad and burdensome, as stated, in that most of them contain no
3  limitation as to the type of communications or records sought.  For example, Request
4  No. 27 asks for "ALL DOCUMENTS that REFER OR RELATE TO
5  COMMUNICATIONS between YOU and MGA after October 20, 2000."  As framed,
6  Bryant would have to produce every piece of communication since October 20, 2000
7  until today between MGA and himself.  As noted above, however, Bryant has already
8  produced the records of his communications with MGA that pertain to his initial
9  contract with MGA and his work on the First Generation "Bratz."

10
11                          <u>ISSUE NO. 6</u>
12  **Should Bryant Be Compelled To Produce Mattel-Related Documents?**
13
14      Set forth below are: (A) Mattel's Requests that are relevant to Issue
15  No. 6 and Bryant's Responses to Mattel's Requests; (B) Mattel's position; and (C)
16  Bryant's position.

17
18  A.    <u>Mattel's Requests And Bryant's Responses</u>
19
20  <u>REQUEST FOR PRODUCTION NO. 51:</u>
21      All DOCUMENTS that REFER OR RELATE TO Mattel, Inc., or that
22  were prepared, authored or created by Mattel, Inc. or any officer, director, employee
23  or representative of Mattel, Inc., that YOU have ever provided to, shown, described
24  to, communicated to or disclosed in any manner to MGA.
25
26
27
28

EXHIBIT _____ 50

PAGE _____ 547

1  answering discovery, however, only the most limited information must be disclosed.

2  Letter after letter from Mattel's counsel cannot mask its duplicity.

3        Mattel is suing a Missouri individual, and litigating with the case with

4  the vigor of a massive antitrust suit, or, more appropriately in this case, "bet the

5  company" type of litigation. At each previous court hearing, Mattel has sent no less

6  than *five attorneys - two partners and three associates -* to make and view the

7  appearance. (Jacoby Decl. ¶ 45). There have also been four depositions. To attend

8  Bryant's deposition, Mattel sent *four* attorneys - two partners, one associate and one

9  in-house counsel - to Springfield, Missouri. For a third party witness, Mattel had two

10  five attorneys - two partners (Mr. Quinn and Mr. Zeller), two in-house lawyers, and

11  one associate. And, to **defend** the deposition of one Mattel witness, Mattel sent two

12  Quinn Emanuel lawyers (one partner and one associate) **and** one in-house counsel.

13        Mattel's tactics of intimidation should not be rewarded. Its motion

14  should be denied and, to the extent sanctions are awarded, they should be awarded

15  against Mattel. Bryant's counsel has incurred in excess of $4500 in fees in opposing

16  this motion (Jacoby Decl. ¶ 47), and pursuant to FRCP 37 (a)(4)(B), Bryant should

17  be awarded that amount in partial compensation for the cost of opposing this motion.

18

19  DATED: January 25, 2005        QUINN EMANUEL URQUHART
                                   OLIVER & HEDGES, LLP

20                                By _Michael T. Zeller/___

21                                Michael T. Zeller

22                                Attorneys for Plaintiff
                              Mattel, Inc.

23

24  DATED: January 25, 2005        LITTLER MENDELSON, P.C.

25                                By _____

26                                Keith A. Jacoby
                              Attorneys for Defendant
                              Carter Bryant

27

28

EXHIBIT ___80___

PAGE ___548___

## PROOF OF SERVICE

1013A(3) CCP Revised 5/1/88

**STATE OF CALIFORNIA )**
**COUNTY OF LOS ANGELES )**

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

On **January 4, 2005**, I served the foregoing document described as **JOINT STIPULATION RE: MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** on all interested parties in this action.

### SEE ATTACHED SERVICE LIST

[ ]   By placing [ ] the original [X ] true copies thereof enclosed in sealed envelopes addressed as follows:

[ ]   **BY MAIL**

[ ]   I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

[ ]   As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]   **BY OVERNIGHT COURIER** I caused each envelope with postage prepaid to be sent by Federal Express.

[ X ]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

[ X ]   **BY PERSONAL SERVICE** I delivered such envelope by hand to the addressee.

Executed on **January 4, 2005**, at Los Angeles, California.

[ ]   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Maria A. Albert
Print Name

Signature

EXHIBIT ___50___

PAGE ___549___

**EXHIBIT 51**

1   ROBERT F. MILLMAN, Bar No. CA 062152
    DOUGLAS A. WICKHAM, Bar No. CA 127268
2   KEITH A. JACOBY, Bar No. 150233
    LITTLER MENDELSON
3   A Professional Corporation
    2049 Century Park East, 5th Floor
4   Los Angeles, CA 90067.3107
    Telephone:    310.553.0308
5   Facsimile:    310.553.5583

6   Attorneys for Defendant and Cross-Claimant
    CARTER BRYANT

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  MATTEL, INC., a Delaware            Case No. CV 04-9059 NM (RNBx)
    Corporation,
12                                      HON. NORA M. MANELLA
                   Plaintiff,
13                                      **DISCOVERY MATTER**
           v.
14                                      **[REDACTED] DECLARATION OF
    CARTER BRYANT, an individual;       KEITH A. JACOBY IN SUPPORT
15  and DOES 1 through 10, inclusive,   OF DEFENDANT AND CROSS-
                                        CLAIMANT CARTER BRYANT'S
16                 Defendant.           PORTION OF JOINT
                                        STIPULATION**
17
                                        [Local Rule 37-3]
18
                                        Hearing Date:      January 25, 2005
19
    CARTER BRYANT, on behalf of
20  himself, all present and former
    employees of Mattel, Inc., and the
21  general public,

22                 Cross-Claimant,

23         v.

24  MATTEL, INC., a Delaware
    Corporation,
25                 Cross-Defendant.

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

1-4

EXHIBIT     51

PAGE        550

# DECLARATION OF KEITH A. JACOBY

I, KEITH A. JACOBY, declare as follows:

1.     I am a shareholder of the law firm of Littler Mendelson, a Professional Corporation, counsel of record for Defendant Carter Bryant ("Bryant") in this matter. I have personal knowledge of the matters set forth herein and, if called as a witness, I could and would testify competently thereto.

2.     Mattel is an international toy manufacturer based in El Segundo, California that markets numerous lines of toys, including its most well-known product, the "Barbie" doll line. See Mattel's Complaint at ¶ 7.

3.     Defendant Carter Bryant was deposed in this matter on November 4, 5 and 8, 2004. True and correct copies of excerpts of his depositions transcript are attached as Exhibit "1" hereto.[1]  At his deposition, Bryant testified to the following:

(a)     Bryant was formerly employed by Mattel as a designer of Barbie fashions. He worked from September 1995 to April 1998 in the "mainline Barbie" fashions department, and from January 4, 1999 to October 20, 2000 in the Barbie "Collectibles" unit.  Deposition of Carter Bryant ("Bryant Depo."), Vol. 1, page 36, lines 10-11 and 14-16 (hereafter, 36:10-11 and 14-16); 37:3-5; Vol 2, 274:13.

(b)     During his 1998 hiatus from Mattel, Bryant moved to his family's home in Missouri, worked part time at Old Navy, and created artwork.  One of his creations was drawings of hip teenage girls in funky modern clothes.  He called the girls in these totally original drawings "Bratz," but he made no efforts to commercialize them at the time.  Bryant Depo. Vol. 1, 9:5-12, 142:10-15, 144:19-20.

(c)     Needing money, and wanting to live on his own again, Bryant moved back to California and returned to work at Mattel in January 1999.  Bryant Depo. Vol. 1, 44:15, 48:9-11.

---

[1]  These deposition excerpts will be filed upon the Court's entry of a protective order in this case.

1.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

EXHIBIT ____51____

PAGE ____551____

ever existed.   Attached hereto as Exhibit "2" is a true and correct copy of email correspondence from Mr. Zeller to me, dated October 25, 2004.

16.   Mattel has utterly failed to show why a further production is required.  Bryant has produced over one hundred of drawings related to the First Generation designs. Given Mattel's position on the scope of this lawsuit, the First Generation "Bratz" designs are the only designs relevant to the issues raised in this lawsuit.  Mattel's theory is that Mr. Bryant breached his employee agreements with Mattel by working for Mattel and MGA at the same time for approximately one month.  Thus, only the work performed prior to joining Mattel or prepared in connection with his interviews with MGA (all of which has been produced to the extent they remain in Bryant's possession, custody and control), and thereafter, to the extent it relates to the First Generation "Bratz" dolls, has any bearing on this lawsuit. MGA, for its part, has produced hundreds of documents relating to the creation of the First Generation "Bratz" prototypes for the 2001 Hong Kong and New York toy fairs.  Despite the narrow frame of relevance, Mattel's improper and overbroad requests seek virtually every Bryant document regarding Bratz, with no attendant time or scope limitations. The requests, taken together, seek all "Bratz" related documents, from the beginning of time through today.

17.   Mattel has sought Bryant's royalty statements from both Bryant and MGA.  The royalty statements contain trade secret information of the most sensitive nature, and much of that information is unrelated to this suit in the first instance.

18.   The unredacted Bryant royalty statements show SKU numbers for "Bratz" and "Bratz" related products, the revenue generated from those products, and Bryant's royalty.   In other words, they show how much revenue MGA earned on various "Bratz" products.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

EXHIBIT _____ 51

PAGE _____ 552

19.     Contrary to Mattel's representations, Bryant does not object to producing "responsive, non-privileged documents generated after the suit was filed." Rather, Bryant asserted an objection – identical to one Mattel asserted – that was designed to reserve Bryant's right not to place on a privilege log the innumerable privileged documents and documents containing attorney work product that have been created since this lawsuit was filed. Bryant is unaware of any unprivileged document which does not contain attorney work product that is responsive to the requests and that was created since the lawsuit was filed. The only document that conceivably falls into these categories of documents that Mattel has conducted discovery on to date is Bryant's retainer letter with Littler Mendelson. At deposition, Mattel's counsel quizzed Bryant about his retainer and whether MGA agreed to pay his legal fees in this matter. Bryant asserted the attorney client privilege and did not respond.

20.     Mattel has not produced its retainer letter in discovery, nor has it logged it on any privilege log.

21.     Bryant has not "refused" to produce communications between himself and MGA. To the contrary, he has produced his agreement, his royalty statements, all manner of artwork that was done for MGA or assigned to MGA.

22.     Moreover, and contrary to Mattel's contentions, Bryant has conducted an extensive and diligent search for responsive and relevant information. Bryant made the hard drive of the computer he used from 2000 to 2002 available to his counsel, and counsel have not found any responsive documents or relevant information in his computer hard drives, or documents related to his communications with MGA.

23.     Mattel's speculation that Bryant's counsel "apparently has made no effort to look for or recover deleted data from that hard drive and made no effort to examine the other computers at all" is a complete falsehood, and contradicts express representations made to Mattel's counsel in the meet and confer that such a search was

6.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

EXHIBIT _____51_____

PAGE _____553_____

undertaken and did not reveal any responsive documents. It ignores the fact that that Bryant's counsel has examined his hard drive extensively for any responsive documents, and it has not found any. It also ignores the fact that scores of attorney hours have been spent searching for documents at Bryant's home and in his studio. While Bryant has tirelessly searched for and inspected his computer hard drives for relevant information, there is irrefutable evidence that Mattel has not turned over all of Bryant's electronic data, such as responsive emails or their attachments.

24.    Further, the hard drive from Bryant's home computer, which he gave to his niece in 2002, contains personal information and data that is unquestionably protected by his constitutional right of privacy as well as that of his niece.

25.    Bryant has been even more accomodating in his furnishing of personal telephone records, but to no avail. He has produced pages of telephone records reflecting phone calls between MGA and himself. He also produced redacted phone records from Veronica Marlow, the individual that introduced Bryant to MGA. He produced those records in good faith, even though they are not his own, because they were turned over by Marlow to his attorneys during this litigation.

26.    Those records contain calls to and from family and friends, and calls by his roommates to others, which are obviously unrelated to this action.

27.    In its Motion, Mattel also seeks an order compelling Bryant to produce all "Mattel-related" documents. Bryant worked for Mattel for approximately five years, and in that time, received innumerable documents from Mattel. A vast majority of the Mattel documents responsive to these requests have no bearing on any issue in this case. Documents that Bryant would have received from Mattel during his five years of employment there would likely include insurance, benefits, employee handbooks, administrative memoranda, reports, paychecks, etc.

EXHIBIT ____51____

PAGE ____554____

28.   Mattel has imposed precisely the same type of limitation on its production, not even turning over portions of its employee handbook that it unilaterally deemed irrelevant to the case.  Additionally, Mattel has admitted that most of the hundreds of Mattel documents Bryant has already produced in response to these requests are of little value.

29.   In addition, Mattel's counsel Michael Zeller and Tania Krebs have admitted in various meet and confers that there could be many documents responsive to its request that Mattel does *not* want.  For example, Bryant offered to return to Mattel all original drawings belonging to Mattel in his possession, custody or control.  Mattel's counsel refused this offer.  Moreover, Mattel has again and again declined to narrow its requests in any way.  As they are currently written, Mattel's requests are virtually unintelligible.

30.   Mattel cannot justify its position that it is entitled to production of a full array of Bryant's copyright, patent and other registrations, even those that pre-date his first term of employment with Mattel.  It is questionable at best whether any patent or copyright applications filed on Bryant's behalf would even shed light on whether Bryant was represented by counsel at the time. As Mattel is undoubtedly aware, such applications would likely have been filed by his employer at the time or by MGA, and would not necessarily indicate that he was represented by counsel.  Further, even assuming he retained counsel for the purpose of filing such applications on his behalf, that would have no tendency to disprove the fact that Bryant was not given the opportunity to consult counsel when required to execute Mattel's Employee Confidential Information and Inventions Agreement ("Agreement").

31.   Finally, at deposition, Mattel has already inquired of Bryant whether he was represented by counsel at the time it required him to execute the Agreement.  Bryant responded in the negative.

8.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107
310 553 0308

EXHIBIT _____ 51

PAGE _____ 555

45.   Mattel is suing a Missouri individual, and litigating the case with the vigor of a massive antitrust suit. At each previous court hearing, Mattel has sent no less than *five attorneys – two partners and three associates –* to make and view the appearance.

46.   There have also been four depositions. To attend Bryant's deposition, Mattel sent *four* attorneys – two partners, one associate and one in-house counsel – to Springfield, Missouri. For a third party witness, Mattel had five attorneys – two partners (Mr. Quinn and Mr. Zeller), two in-house lawyers, and one associate.[2] And, to *defend* the deposition of one Mattel witness, Mattel sent *two* Quinn Emanuel lawyers (one partner and one associate) and one in-house counsel.

47.   As Bryant's counsel, I have spent in excess of fifteen hours preparing Bryant's portion of this joint stipulation. My hourly rate is $425 per hour. Pursuant to FRCP 37 (a)(4)(B), Bryant should be awarded that amount in partial compensation for the cost of opposing this motion.

I declare under penalty of perjury under the laws of State of California and the United States of America that the foregoing is true and correct.

Executed this 4th day of January, 2005, at Los Angeles, California.

KEIRH A. JACOBY

Los_Angeles:389367.3 028307.1010

---

[2] The associate attended only part of that deposition.

12.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067-3107
310 553 0308

EXHIBIT ___51___

PAGE ___596___

**EXHIBIT 52**

1  DOUGLAS A. WICKHAM (S.B. #127268)
   dwickham@littler.com
2  KEITH A. JACOBY (S.B. #150233)
   kjacoby@littler.com
3  LITTLER MENDELSON
   A Professional Corporation
4  2049 Century Park East, 5th Floor
   Los Angeles, CA 90067.3107
5  Telephone: (310) 553-0308
   Facsimile: (310) 553-5583
6
   Attorneys for Carter Bryant
7

8              UNITED STATES DISTRICT COURT
               CENTRAL DISTRICT OF CALIFORNIA
9                     EASTERN DIVISION

10
   CARTER BRYANT, an individual,      Case No. CV 04-09049 SGL (RNBx)
11                                     (consolidated with CV 04-9059 & 05-2727)
                   Plaintiff,
12                                     **DISCOVERY MATTER**
           v.
13                                     **[To Be Heard By Discovery Master Hon.
   MATTEL, INC., a Delaware            Edward Infante (Ret.) Pursuant To The
14 Corporation,                        Court's Order Of December 6, 2006]**

15                 Defendant.          SEPARATE STATEMENT OF
                                       DEFENDANT CARTER BRYANT IN
16                                     OPPOSITION TO MATTEL'S MOTION
                                       TO COMPEL
17
                                       Hearing Date: January 23, 2007
18                                     Time: 8:15 a.m.
                                       Place: Telephonic
19
                                       Discovery Cut-off: None set
20                                     Pre-trial Conference: None Set
                                       Trial Date: None Set
21
22 CONSOLIDATED WITH
   MATTEL, INC. v. BRYANT and
23 MGA ENTERTAINMENT, INC. v.
   MATTEL, INC.
24
25
26
27                                                          122A
28
                                       BRYANT'S SEPARATE STATEMENT IN
   EXHIBIT ___52___                    OPPOSITION TO MATTEL'S MOTION TO
                                       COMPEL
   PAGE ___557___

**Bryant's Argument**

Bryant agreed in the Stipulation to conduct a "reasonably diligent search for and produce any patent, copyright and trademark applications, registrations or other non-privileged documents in his possession, custody or control that constitute or relate to such applications and registrations obtained or applied in connection with" (1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation "Bratz" dolls that took place on or about June 2001; and (3) work related to any work Bryant performed with, for or on behalf of MGA during the term of Bryant's employment with Mattel.  Accordingly, Mattel's motion to compel Bryant to produce documents relating to registration and applications for registration is moot.

## VII.   BRYANT'S PRIOR PRODUCTION WAS PROPER.

Mattel incorrectly claims that Bryant asserted a "blanket objection to producing any document created after this lawsuit was filed in April 2004." Mattel completely misrepresents the issue and Bryant's position.  Bryant did not and does not object to producing "responsive, non-privileged documents generated after the suit was filed." Bryant only objects to having to log as privileged any post litigation communications with counsel. Mattel has misconstrued this caveat as a wider refusal to produce documents created after the lawsuit was filed. No such position has been taken.

### A.    None Of The Information Redacted From The Produced Phone Records Relate To MGA.

Bryant agreed in the Stipulation that he will provide a signed verification attesting that none of the information redacted from phone records that were produced to Mattel relate or refer in any way to MGA, "Bratz" or any other project that Bryant worked on with, for or on behalf of MGA prior to June 1, 2001.

### B.    Bryant Should Not Have To Identify On A Privilege Log Every

EXHIBIT ___57___

PAGE ___558___

38.    BRYANT'S SEPARATE STATEMENT IN OPPOSITION TO MATTEL'S MOTION TO COMPEL

**Communication He Has Had With His Counsel.**

Mattel mischaracterizes Bryant's good-faith assertion of privilege by professing that Bryant has listed only 4 documents on his privilege log "likely because most documents he has withheld on privilege grounds are not actually privileged–and because the dates of these documents alone may refute Bryant's claims about the timing and scope of his communications with MGA." Mattel's contention holds no water. Since Mattel filed this action in April 2004, Bryant has had numerous communications with his counsel regarding issues arising out of this lawsuit. Bryant objected in order to reserve his right not to place on a privilege log the innumerable privileged documents and documents containing attorney work product that have been created since the inception of this lawsuit. Bryant respectfully requests this Court not to order Bryant to serve a privilege log concerning his confidential communications with his counsel which are undeniably protected by the attorney-client privilege.

C.    **Bryant's Hard Drive**

Bryant confirmed in the Stipulation that he made a diligent and reasonable effort to locate all three computers referenced at his deposition, and that after that search, he is only able to locate one of the old computers that he used and/or owned. Bryant has also expressly agreed to conduct a reasonable and diligent search for responsive documents, including a forensic search for data fragments, deleted documents and data not readily viewable absent forensic analysis, and will produce responsive documents in accordance with the stipulation. Accordingly, Mattel's motion to compel Bryant's hard drive is no longer an issue.

**VIII. MATTEL SHOULD BE SANCTIONED**

The only party that should be sanctioned is Mattel. For the past two and half years, Mattel has taken contradictory positions regarding the amount of money in controversy in order to manipulate the forum and the scope of discovery, and has now unilaterally reneged on an exhaustively negotiated stipulation because it does not want

1   to formally modify a single request. Mattel's counsel likely knew its requests were

2   facially improper when they engaged in a six month long negotiation to substantially

3   limit the requests, only to unceremoniously renege on the stipulation at the last second

4   and move on every request. Bryant has incurred more than $20,000 in fees

5   negotiating the stipulation that represented a considerable compromise on his part of

6   the issues raised in these requests.

7          Mattel's sweepingly overbroad and duplicative requests cannot stand on

8   their own and its tactics of intimidation should not be awarded. Its motion should be

9   denied and, to the extent sanctions are awarded, they should be awarded against

10  Mattel. Bryant's counsel has incurred in excess of $8,700 in fees in opposing this

11  motion, and pursuant to FRCP 37(a)(4)(B), Bryant should be awarded that amount in

12  partial compensation for the cost of opposing this motion. The stipulation of the

13  parties should be enforced as the recommendation of the Discovery Master, and as

14  such should end any further law and motion on the document requests moved upon in

15  the January 2005 and the current motion.

16

17  January 11, 2007

                        DOUGLAS A. WICKHAM
18                      KEITH A. JACOBY
                        LITTLER MENDELSON
19                      A Professional Corporation

20

21                      Keith A. Jacoby
                        Attorneys for Defendant
22                      CARTER BRYANT

23

24

25

26  Firmwide:81898672.3 028307.1010

27

28

EXHIBIT ___52___

PAGE ___560___

                                        40.

**EXHIBIT 53**

1   DOUGLAS A. WICKHAM (S.B. #127268)
    dwickham@littler.com
2   KEITH A. JACOBY (S.B. #150233)
    kjacoby@littler.com
3   LITTLER MENDELSON
    A Professional Corporation
4   2049 Century Park East, 5th Floor
    Los Angeles, CA 90067.3107
5   Telephone:  (310) 553-0308
    Facsimile:   (310) 553-5583
6
    Attorneys for Carter Bryant
7

8                      UNITED STATES DISTRICT COURT
                       CENTRAL DISTRICT OF CALIFORNIA
9                            EASTERN DIVISION

10  CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)
                                         (consolidated with CV 04-9059 & 05-2727)
11
                 Plaintiff,              **DISCOVERY MATTER**
12
         v.                              **[To Be Heard By Discovery Master**
13                                       **Hon. Edward Infante (Ret.) Pursuant to**
    MATTEL, INC., a Delaware             **The Court's Order of December 6, 2006**
14  Corporation,
                                         **DECLARATION OF KEITH A.**
15               Defendant.              **JACOBY IN SUPPORT OF CARTER**
                                         **BRYANT'S OPPOSITION TO**
16                                       **MATTEL INC.'S MOTION TO**
                                         **COMPEL THE PRODUCTION OF**
17                                       **DOCUMENTS**

18                                       Date:  January 23, 2007
19                                       Time:  8:15 a.m.
                                         Place:  Telephonic
20
                                         Discovery Cut-off:  None set
21                                       Pre-trial Conference:  None Set
                                         Trial Date:  None Set
22
23  CONSOLIDATED WITH                    Judge:  Hon. Stephen G. Larson
    MATTEL, INC. v. BRYANT and
24  MGA ENTERTAINMENT, INC. v.           Discovery Cut-Off:  T.B.D.
    MATTEL, INC.
25

26

27

28
                                            DECLARATION OF KEITH JACOBY

                                            722C

    EXHIBIT _____53_____

    PAGE _____501_____

I, Keith A. Jacoby, declare as follows:

1.     I am a shareholder of the law firm of Littler Mendelson, a Professional Corporation, counsel of record and co-lead counsel for Defendant Carter Bryant ("Mr. Bryant") in this matter. I have personal knowledge of the matters set forth herein and, if called as a witness, I could and would testify competently thereto.

2.     Mattel is an international toy manufacturer based in El Segundo, California that markets numerous lines of toys, including its most well-known product, the "Barbie" doll line. See Mattel's Complaint at ¶ 7.

3.     Mr. Bryant was deposed in this matter on November 4, 5 and 8, 2004. True and correct copies of excerpts of his depositions transcript are attached as Exhibit "A" hereto. At his deposition, Bryant testified to the following:

(a)     Bryant was formerly employed by Mattel as a designer of Barbie fashions. He worked from September 1995 to April 1998 in the "mainline Barbie" fashions department, and from January 4, 1999 to October 20, 2000 in the Barbie "Collectibles" unit. Deposition of Carter Bryant ("Bryant Depo."), Vol. 1, page 36, lines 10-11 and 14-16 (hereafter, 36:10-11 and 14-16); 37:3-5; Vol 2, 274:13.

(b)     During his 1998 hiatus from Mattel, Bryant moved to his family's home in Missouri, worked part time at Old Navy, and created artwork. One of his creations was drawings of hip teenage girls in funky modern clothes. He called the girls in these totally original drawings "Bratz," but he made no effort to commercialize them at the time. Bryant Depo. Vol. 1, 9:5-12, 142:10-15, 144:19-20.

(c)     Needing money, and wanting to live on his own, Bryant moved back to California and returned to work at Mattel in January 1999. Bryant Depo. Vol. 1, 44:15, 48:9-11.

(d)     Bryant left his employment at Mattel for a second time on October 20, 2000 in order to pursue more financially and creatively lucrative

EXHIBIT ___53___

PAGE ___562___

1.          **DECLARATION OF KEITH A. JACOBY**

1    discovery, nor has it logged it on any privilege log.

2        30.    Bryant has not "refused" to produce communications between himself

3    and MGA. To the contrary, he has produced his agreement, his royalty statements,

4    all manner of artwork that was done for MGA or assigned to MGA.

5        31.    Moreover, and contrary to Mattel's contentions, Bryant has conducted

6    an extensive and diligent search for responsive and relevant information. Bryant

7    made the computer hard drive of the computer he used from 2000 to 2002 available

8    to his counsel, and counsel have not found any responsive documents or relevant

9    information in his computer hard drives, or documents related to his

10    communications with MGA.

11        32.    Mattel's speculation that Bryant's counsel "apparently has made no

12    effort to look for or recover deleted data from that hard drive and made no effort to

13    examine the other computers at all" is a complete falsehood, and contradicts

14    express representations made to Mattel's counsel in the meet and confer that such a

15    search was undertaken and did not reveal any responsive documents. This is set out

16    in the Stipulation. Mattel's baseless representations ignore the fact that Bryant's

17    counsel has examined his hard drive extensively for any responsive documents, and

18    it has not found any. It also ignores the fact that scores of attorney hours have been

19    spent searching for documents at Bryant's home and in his studio. While Bryant has

20    tirelessly searched for and inspected his computer hard drives for relevant

21    information, there is irrefutable evidence that Mattel has not turned over all of

22    Bryant's electronic data, such as responsive emails or their attachments.

23        33.    Bryant has been even more accommodating in his furnishing of

24    personal telephone records, but to no avail. He has produced pages of telephone

25    records reflecting phone calls between MGA and himself. He also produced

26    redacted phone records from Veronica Marlow, the individual that introduced

27    Bryant to MGA. He produced those records in good faith, even though they are not

28    his own, because they were turned over by Marlow to his attorneys during this

EXHIBIT 53

PAGE 563

10.

DECLARATION OF KEITH A. JACOBY

1    During that time, Mr. Bryant was questioned on thirty-four (34) separate exhibits,

2    collectively containing over 100 documents.

3            I declare under penalty of perjury under the laws of the United States

4    of America that the foregoing is true and correct. Executed this 11th day of January

5    2007.

6

7

8                                          Keith A. Jacoby

9    Firmwide:81881546.1 028307.1010

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT ____53____

PAGE ____564____

12.                          DECLARATION OF KEITH A. JACOBY

**EXHIBIT 54**

CONFORMED COPY

FILED

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA  94111
415-774-2611
415-982-5287 (fax)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>              Plaintiff,<br><br>         v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>              Defendant. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S<br>MOTION TO COMPEL PRODUCTION<br>OF DOCUMENTS** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL,<br>INC. | |

## I. INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of Documents to the undersigned Discovery Master for disposition.[1]  On January 11, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a reply brief.  The matter was heard via telephonic conference call on January 24, 2007.  Having

---

[1] Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in accordance with Rule 53 of the Federal Rules of Civil Procedure.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

1-26

EXHIBIT _____54_____

PAGE _____565_____

CONFIDENTIAL

EXHIBIT ____54____

PAGE ____566____

considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel

Production of Documents is GRANTED.

## II. BACKGROUND

At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls. This highly

lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made

commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of

Bratz dolls now rival Mattel's Barbie doll.

A. Mattel's Original Complaint

On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed

suit against its former employee Bryant in state court asserting claims for breach of contract,

breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel

employed Bryant as a product designer from September 1995 through April 1998, and from

January 1999 through October 2000. Upon starting his second term, Bryant signed an Employee

Confidential Information and Inventions Agreement which required him not to engage in any

employment or business other than for Mattel, or invest or assist in any manner any business

competitive with the business or future business plans of Mattel. Bryant also assigned to Mattel

all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his

employment.

In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that

he had not worked for any of Mattel's competitors in the prior twelve months and had not

engaged in any business dealings creating a conflict of interest. Bryant agreed to notify Mattel of

any future events raising a conflict of interest.

Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for

a Mattel competitor (later identified as MGA). Bryant entered into an agreement with MGA to

EXHIBIT _____ 54

PAGE _____ 567

provide product design services on a "top priority" basis.[2] The agreement further provided that Bryant would receive royalties and other consideration for sales of products on which he provided aid or assistance; that all work and services furnished by Bryant to MGA under the agreement would be considered "works for hire"; and that all intellectual property rights to preexisting work by Bryant purportedly would be assigned to MGA. Mattel further alleges that Bryant converted, misappropriated and misused Mattel property and resources while he was employed at Mattel. In the complaint, Mattel claims ownership of all inventions and works created by Bryant during his Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of duties.

In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1332 (diversity jurisdiction). Mattel filed a motion to remand and submitted a copy of Bryant's agreement with Mattel's competitor, namely MGA. The agreement was dated September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to provide MGA with design services for the Bratz dolls. In return, MGA agreed to compensate Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz dolls. In August of 2004, the district court remanded the action.

B. Bryant's Cross-complaint

In September of 2004, after the case was returned to state court, Bryant filed a cross-complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information and Inventions Agreement. Bryant's cross-complaint included claims for unfair competition, rescission, declaratory relief, and fraud.

//

---

[2] Bryant has already produced his agreement with MGA. Therefore, the existence of the agreement does not appear to be in dispute.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                                    3

EXHIBIT ___54___

PAGE ___568___

C. Bryant's Second Notice of Removal (CV 04-9059)

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction. Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act. Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake. After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

D. Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

E. MGA's Complaint Against Mattel (CV 05-2727)

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims. MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

F. Mattel's Second Motion to Remand its Complaint against Bryant

Mattel filed another motion to remand its suit against Bryant. In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review. Mattel filed an appeal, and the district court stayed discovery in May of 2005. Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling. After the stay was lifted the district court consolidated all three actions for all purposes. There is no scheduling order currently in place.

EXHIBIT ___54___

PAGE ___569___

G. Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted. The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

H. Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes. For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA. Mattel also sought leave to add a copyright infringement claim. Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727. The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

I. Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14, 2004. Bryant served objections and responses on July 16, 2004. The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005. That motion, however,

EXHIBIT _____ 54

PAGE _____ 570

1   was not heard before the district court stayed all discovery pending resolution of Mattel's appeal

2   to the Ninth Circuit on subject matter jurisdiction issues.

3        After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at

4   the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to

5
    compel. The parties informed the court that they would submit a stipulation and order. See
6
7   Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel

8   Production of Documents, counsel will be submitting a stipulation and order which will be

9   dispositive of all the issues in dispute.").

10
         Over the next several months, the parties exchanged draft stipulations and orders to
11
12  memorialize the parties' meet and confer session, but were unable to reach final agreement

13  because Bryant insisted upon including the following sentence in the stipulation: "The stipulation

14  resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's
15
    Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and
16
17  motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23.

18  From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel

19  waive its right to all further discovery in connection with its requests. Mattel proposed the

20
    following provision as an alternative:
21
22         Except as, and only as set forth in the terms of Paragraph One above, nothing in
           this Stipulation shall preclude or limit Mattel from seeking further discovery on
23         any matter, including as to matter on which the parties could not reach complete
           agreement, or preclude or limit any right of Bryant to object or resist to such
24         discovery.

25  Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was
26
    unacceptable to Bryant. At the direction of the Discovery Master, the parties met and
27
28  conferred again in late December 2006, but to no avail.

29        Despite the parties' inability to reach final agreement, Bryant produced approximately

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT ___54___

PAGE ___571___

1,600 pages of documents to date.  Mattel contends, however, that the production is inadequate and consistent with a pattern of stonewalling.[3]  Accordingly, Mattel filed the instant motion to compel responsive documents, which includes a request for sanctions in the amount of $7,805.

J.   Mattel's Motion to Compel Production of Documents

Mattel's motion has three parts.  First, Mattel seeks an order compelling Bryant to produce the following categories of requested documents:  (a) documents relating to Bratz designs created by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was exposed to while working at Mattel.  Mattel's Motion at 6.  Mattel asserts that these categories of documents are relevant to establish Bryant's liability and would reveal works rightfully owned by Mattel.

Second, as to other categories of documents which Bryant has agreed to produce, Mattel contends that Bryant has imposed unjustified limitations.  According to Mattel, Bryant will not produce any responsive documents that were created after the suit was filed; Bryant will not produce any communications with MGA "created" after the end of his Mattel employment; Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view, "resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known contracts between him and MGA and refuses to produce non-privileged communications relating to those contracts; and Bryant has withheld all but one category of financial documents relating to

---

[3]  According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear.  Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed.  Mattel again obtained a court order compelling the deposition and sanctions.  To date, only Bryant and Larian have been deposed.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                                                    7

his earnings from his work for MGA. Mattel's Motion at 7. Mattel seeks full production of responsive documents without any of the limitations described above.

Third, Mattel contends that the documents Bryant has produced are inadequate for a number of reasons: the financial documents are so heavily redacted they are useless; faxed documents are missing fax header information, including the sending and receiving parties[4]; e-mails and other electronic documents that are known to exist have not been produced; Bryant refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used during the relevant period; and Bryant's privilege log is facially incomplete and lists only four documents.

### K. Bryant's Opposition to Mattel's Motion to Compel

Bryant opposes Mattel's motion to compel. He views the motion as nothing more than Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer process which began back in 2004. Bryant emphasizes that the document requests at issue were first propounded at a time when Mattel was attempting to remand the case, making the claim that it did not know whether $75,000 was in controversy and insisting that it was asserting solely state law claims. Bryant explains that given Mattel's view of the case in 2004, he took the position that discovery should be limited to what occurred in his last days at Mattel and shortly thereafter. See Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later years could have no conceivable relevance to the case because if those activities and earnings were at stake, the case was worth millions, not pennies."). Accordingly, in the summer and fall of 2004, he produced the following categories of documents: documents evidencing the artwork used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

---

[4] There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center. MGA denies the accusation.

EXHIBIT ___54___

PAGE ___673___

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and hundreds of three dimensional doll parts and toy accessories that came into his possession over the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at the courthouse on June 20, 2006 and the parties' exchange of draft stipulations.  According to Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led to agreement on the following points: (a) Bryant would produce all agreements for work he performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client privilege with respect to communications with the attorney who assisted him in negotiating his contract with MGA, so long as that waiver would be limited and in no way waive the privilege with respect to litigation counsel; (c) Bryant would produce any documents relating to any payments he received from MGA while employed at Mattel, irrespective of the date of creation; (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and search them for responsive documents; (e) Bryant agreed to produce all documents and tangible things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to conduct a search and produce any patent, trademark or copyright applications, registrations and other non-privileged documents in his possession in connection with his work with MGA prior to June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed to sign a verification that none of the information redacted from his phone records related to Bratz or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log; and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

EXHIBIT _____ 54

PAGE _____ 574

requests and that the stipulation controlled to the extent they were inconsistent. Bryant's Opposition at 5:22-6:21.

Bryant emphasizes that the parties have engaged in an extensive meet and confer process and asks the Discovery Master to order the disposition of this motion in a manner consistent with the parties' draft stipulation. If the draft stipulation is not adopted, Bryant fears the parties will have no incentive to compromise in the future. Bryant's Opposition at 1:24-2:3. Bryant also asks the Discovery Master to order Mattel not to revisit any of the requests that were the subject of Mattel's original motion to compel or the instant motion to compel. Id. at 2:11-13 and 10:9-10.

Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects. In particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to Mattel employees. Bryant also asserts that Mattel is not entitled to unredacted personal phone records and financial information because these records are protected by privacy rights. Lastly, Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit was filed.

### III. DISCUSSION

#### A. The Parties Did Not Reach a Stipulation to Resolve the Instant Motion

The parties' extensive submissions make it clear that the parties did not resolve the issues raised in the instant motion. The parties met and conferred extensively and in good faith, reaching compromises on virtually all categories of documents in dispute. Despite their efforts, however, the parties were ultimately unable to execute a binding stipulation because they were unable to agree on any provision to govern Mattel's future right to pursue additional discovery from Bryant. It is clear that the parties deemed it necessary to include such a provision in the draft stipulation in order to protect their respective positions. Because the parties did not execute a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

EXHIBIT ____54____

PAGE ____575____

Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

Furthermore, because the parties met and conferred in good faith and because they had a legitimate dispute over language governing Mattel's future right to pursue additional discovery from Bryant, the Discovery Master denies Mattel's request for sanctions.

B. Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

C. Mattel's Requests for Production

Request Nos. 2, 13, 48: Documents Relating to Bryant's Agreements with MGA

Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related agreements. Bryant is withholding responsive documents, including (a) documents relating to his Bratz agreements with MGA other than final signed agreements, including communications exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

EXHIBIT _____ 54

PAGE _____ 570

agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c) documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating to this action.

The Discovery Master finds that the withheld documents are relevant to Mattel's claims. Among other things, the withheld documents could establish the timing, nature and scope of Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages. In addition, the withheld documents could be used for impeachment purposes. Further, documents relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate bias and lack of credibility. Bryant has failed to establish that the requested discovery is barred by Rule 26(b)(2), Fed.R.Civ.P. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 2, 13, and 48.

Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55: Documents Relating to Bratz's Development and Other Projects that Bryant Worked on for MGA

Mattel seeks documents relating to the Bratz project and any other projects Bryant worked on for MGA. Bryant produced documents relating only to the First Generation Bratz dolls. Bryant is prepared to produce additional documents relating to work he performed for MGA prior to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant breached his employee agreement by allegedly performing services for Mattel and MGA at the same time. Bryant objects to the requests to the extent they seek any additional documents on relevancy and overbreadth grounds.

The Discovery Master finds that Mattel's requests seek relevant information and are not overbroad. The lawsuit is much broader than the First Generation Bratz dolls issued in June 30, 2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

EXHIBIT _____ 54

PAGE _____ 577

employment, regardless of whether they resulted in a Bratz doll released in June of 2001. Mattel also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's confidential and proprietary information, not just information relating to the Bratz dolls released in June of 2001. Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz works – works that are allegedly owned by Mattel because they were created while Bryant was employed by Mattel – through his ongoing conduct of reproducing and creating derivative works. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46:  Documents Relating to Bryant's Payments from MGA

Mattel seeks documents relating to Bryant's payments from MGA. Bryant acknowledges that Mattel is entitled to know how much money Bryant has earned from MGA, and represents that he has produced, in redacted form, all royalty statements he has received related to the First Generation Bratz dolls and his 2000 contract with MGA. Bryant asserts that his redactions are justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product, which information Bryant believes constitutes MGA's trade secret information. Bryant also objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the returns. Bryant's Opposition at 29:21-27.

The Discovery Master finds that documents relating to MGA's payments to Bryant, including royalty statements and other payment information, are relevant to several Mattel claims. First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel seeks to recover all benefits Bryant received as a result of his alleged violations of duties to Mattel. Payments to Bryant from MGA and others might be traceable to work Bryant performed while employed by Mattel, regardless of

EXHIBIT _____ 54

PAGE _____ 578

when the payments were actually made.  Such payments might also lead to evidence to support

Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

Second, the payments are relevant to Mattel's recently added claim for copyright

infringement.  Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the

Bratz drawings and works by copying and preparing derivative works from those works.  Under

the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual

damages.  17 U.S.C. §504(b).  The works that potentially infringe Mattel's copyrights, therefore,

include all Bratz doll products that MGA released to the market.  For this reason, and for reasons

already discussed in the previous subsection, Bryant's limited production of documents relating to

only the First Generation of Bratz dolls is inadequate.

Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret

misappropriation.  Payments could show when and what trade secret information Bryant and

other defendants allegedly misappropriated from Mattel.  Any proof of trade secret theft is also

relevant to Mattel's defense against MGA's unfair competition claims.

Lastly, the breakdown of gross royalty payments may be required to prove actual

causation of damages.

The protective order filed on January 4, 2005, is sufficient to address any confidentiality

concerns raised by Bryant.  Among other things, the protective order provides protection for

confidential trade secret information.  It has two tiers of protection, allowing a party to designate

documents as either "Confidential" or "Confidential – Attorney's Eyes Only."  The protective

order also requires the parties to use information produced in discovery only for purposes of this

litigation and not for any other purpose.

Accordingly, Bryant is ordered to produce, without redactions, all non-privileged

documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.  Bryant,

EXHIBIT ___ 54

PAGE ___ 579

however, is not required to produce tax returns, provided that he otherwise fully complies with these requests as ordered.

### Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA

Mattel seeks production of Bratz-related communications and communications with MGA. More specifically, Mattel seeks production of four categories of documents Bryant has refused to produce: (1) communications between Bryant and MGA or third parties that explicitly relate to designs Bryant created while employed by Mattel; (2) communications between Bryant and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating to Bryant's Mattel employment or work Bryant performed for Mattel, except those communications "created" prior to the close of Bryant's Mattel employment; and (4) communications between Bryant and MGA that post-date Bryant's Mattel employment. Bryant contends that the discovery requests for communications between Bryant and MGA are overbroad. Bryant asserts that there are many former Mattel employees and friends of his who have privacy rights that would be impinged upon if he were to disclose his communications. Bryant also asserts that he has his own confidentiality interest regarding any information that he shared with MGA. In particular, he objects to Mattel's discovery requests to the extent they would require him to reveal the identity of current Mattel employees seeking employment with MGA or Bryant.

The Discovery Master finds that Mattel's requests for all communications between Bryant and MGA unquestionably seek information relevant to Mattel's claims: they will reveal what Mattel information Bryant shared with MGA, if any, and when. The protective order is sufficient to address Bryant's confidentiality concerns. It allows parties to designate as "Confidential" private information about current or former employees, contractors or vendors (including employee, contractor and personnel records). Therefore, Bryant is ordered to produce all non-

EXHIBIT ____84____

PAGE ____580____

privileged documents responsive to Request Nos. 20, 23, 27, and 28. However, Bryant may continue to redact his telephone records, and shall provide a signed verification that none of the telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for, or on behalf of MGA. Telephone calls that do not relate or refer in any way to MGA or Bratz are irrelevant.

Request Nos. 49, 51: Mattel-Related Documents

Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them. Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

Request No. 9: Documents re Registrations and Applications for Registrations

Lastly, in Request No. 9 Mattel seeks production of documents registrations and registrations and applications for registration. Bryant deems the motion moot with respect to Request No. 9 because he agrees to produce any patent, copyright and trademark applications, registrations or other non-privileged documents in his possession, custody or control that constitute or relate to such applications and registrations obtained or applied in connection with (1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA during the term of Bryant's employment with Mattel.

As discussed previously, the Discovery Master finds that the First Generation Bratz limitation is improper. Therefore, Bryant is ordered to produce all non-privileged documents responsive to Request No. 9.

IV. CONCLUSION

For the reasons set forth above, the Discovery Master orders as follows:

1. Mattel's motion to compel production of documents responsive to its First Set of Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT ____ 5 4

PAGE ____ 581

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED.  However, Bryant need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.

2. Bryant shall produce all redacted documents in un-redacted form, except for redactions that are justified by the attorney-client privilege or work product doctrine or his telephone records pursuant to the terms of this Order.

3. Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5), Fed.R.Civ.P.

4. Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his computers for forensic imaging.

5. Bryant shall complete his production by producing missing attachments, fax cover pages and all other missing responsive documents.

6. Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

7. Bryant shall comply with this Order no later than February 23, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

IT IS SO ORDERED.

Dated: January 25, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT _____ 54

PAGE _____ 582

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25,

2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL

PRODUCTION OF DOCUMENTS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Restagar Esq. | Littler Mendelson | drestagar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Valerie Nannery Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | valerienannery@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchjakian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchjakjian@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrismill.com |

EXHIBIT ___54___

PAGE ___583___

**EXHIBIT 55**

1    (COUNSEL LISTED ON FOLLOWING PAGE)

2

3

4

5

6

7

8             **UNITED STATES DISTRICT COURT**

            **CENTRAL DISTRICT OF CALIFORNIA**

9                 **EASTERN DIVISION**

10

| | |
|---|---|
| CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727) |
| Plaintiff, | DISCOVERY MATTER |
| v. | Hon. Edward A. Infante (Ret.) |
| MATTEL, INC., a Delaware Corporation, | Discovery Master |
| Defendant. | **STIPULATION AND [PROPOSED] ORDER RE REQUEST TO EXTEND DEADLINE WITHIN WHICH CARTER BRYANT MUST COMPLY WITH THE DISCOVERY MASTER'S JANUARY 25, 2007 ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| CONSOLIDATED WITH MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _____55_____

PAGE _____584_____

2-27

1  DOUGLAS A. WICKHAM (S.B. #127268)
2  dwickham@littler.com
   KEITH A. JACOBY (S.B. #150233)
3  kjacoby@littler.com
   LITTLER MENDELSON
4  A Professional Corporation
   2049 Century Park East, 5th Floor
5  Los Angeles, CA  90067.3107
   Telephone:  (310) 553-0308
6  Facsimile:   (310) 553-5583

7  Attorneys for CARTER BRYANT

8  DIANA M. TORRES (S.B. #162284)
   dtorres@omm.com
9  JAMES P. JENAL (S.B. #180190)
   jjenal@omm.com
10 O'MELVENY & MEYERS LLP
   400 South Hope Street
11 Los Angeles, CA  90071.2899
   Telephone:  (213) 430-6000
12 Facsimile:   (213) 430-6407

13 PATRICIA GLASER (S.B. #55668)
   CHRISTENSEN, GLASER, FINK,
14 JACOBS, WEIL & SHAPIRO, LLP
   10250 Constellation Boulevard, 19th Floor
15 Los Angeles, CA  90067
   Telephone:  (310) 553-3000
16 Facsimile:   (310) 557-9815

17 Attorneys for MGA ENTERTAINMENT, INC.

18 JOHN B. QUINN, Bar No. CA 90378
   MICHAEL T. ZELLER, Bar No. CA 194617
19 QUINN EMANUEL URQUHART OLIVER
   & HEDGES, LLP
20 865 South Figueroa Street, 10th Floor
   Los Angeles, CA  90017.2543
21 Telephone:  213.443.3000
   Facsimile:   213.443.3100
22
23 Attorneys for MATTEL, INC.

24
25
26
27
28

EXHIBIT  55
PAGE  585

1     **WHEREAS**, in January, 2005, pursuant to Local Rule 37, Mattel, Inc.
2   ("Mattel") filed a motion to compel Carter Bryant's ("Bryant") production of
3   documents responsive to Mattel's First Set of Document Requests, served in June
4   2004;

5     **WHEREAS**, before Mattel's motion to compel was heard, the Court stayed
6   discovery;

7     **WHEREAS**, after the discovery stay was lifted, Magistrate Judge Block
8   ordered the parties to further meet and confer on June 20, 2006 in connection with
9   Mattel's motion (among others);

10    **WHEREAS**, after the further meet and confer, the parties sought to reach a
11  written stipulation to resolve the motion, but ultimately were unable to reach
12  agreement;

13    **WHEREAS**, after Mattel stated its intention to re-file its motion, Discovery
14  Master Infante directed the parties to further meet and confer, which occurred on
15  December 28, 2006;

16    **WHEREAS**, on January 3, 2007, Mattel submitted to Discovery Master Infante
17  its Motion to Compel Carter Bryant to Produce Documents ("Motion to Compel");

18    **WHEREAS**, on January 25, 2007, Discovery Master Infante issued an Order
19  granting Mattel's Motion to Compel (the "Order");

20    **WHEREAS**, presently, the deadline by which Bryant is to comply with the
21  Order is February 23, 2007;

22    **WHEREAS**, Bryant represents that he needs additional time to review and
23  search for responsive documents that are covered by the Court's Order and that the
24  quantity of such documents may be significant.  Bryant further represents that the
25  types of documents and materials that potentially are responsive include original
26  artwork that requires special handling to avoid alteration or destruction.  Bryant also
27  represents that he needs an extension time because he has been and will be traveling
28  out of state until March 2 or 3, 2007.  As a result, Bryant represents that he needs

1.

EXHIBIT _____55_____

PAGE _____586_____

1   additional time in order to search for, gather, bate number and produce further

2   documents and materials that are responsive to, and in compliance with, the Order.

3   For documents that are already in Bryant's counsel's office in Los Angeles, Bryant

4   seeks a brief extension of time up to and including March 2, 2007 within which to

5   produce further responsive documents in compliance with the Order. For documents

6   and materials that are currently located in Springfield, Missouri (in Bryant's studio),

7   Bryant seeks an extension of time up to and including March 16, 2007 within which to

8   produce further responsive documents in compliance with the Order. Bryant also

9   requests that the time within which to prepare and produce any privilege logs also be

10  extended up to and including March 16, 2007; and

11       **WHEREAS**, Mattel is amenable to the requested extension as a professional

12  courtesy and to avoid burdening the Discovery Master and/or the Court with

13  additional disputes, but in doing so does not waive, and hereby reserves, its rights and

14  remedies with respect to this or any other deferment of discovery, including without

15  limitation in connection with potential motion(s), if any, seeking to alter any and all

16  deadlines at the appropriate time and/or to recall witnesses of MGA and/or Bryant as

17  may be necessary and appropriate.

18       **THEREFORE**, subject to the approval of the Discovery Master, the parties

19  stipulate and agree that the time within which Bryant shall comply with the Court's

20  Order shall be extended as follows:

21       (1) with respect to those further responsive documents and materials that are

22  currently located in Los Angeles, Bryant will produce such further responsive

23  documents and materials pursuant to the Order on or before March 2, 2007;

24       (2) with regard to such responsive documents and materials that are currently

25  located in Springfield, Missouri, Bryant will produce such further responsive

26  documents and materials pursuant to the Order on or before March 16, 2007; and

27  //

28  //

2.

EXHIBIT _____ 55

PAGE _____ 587

1    (3) Bryant also will serve his privilege log(s) on or before March 16, 2007.

2    **SO STIPULATED.**

3    Dated: February 23 , 2007

4    DOUGLAS A. WICKHAM
5    LITTLER MENDELSON
     A Professional Corporation
     Attorneys for CARTER BRYANT

6    Dated: February 23 , 2007

7    DIANA M. TORRES
8    O'MELVENY & MYERS, LLP
     A Professional Corporation
9    Attorneys MGA ENTERTAINMENT, INC.

10   Dated: February 25 , 2007

11   MICHAEL T. ZELLER
12   QUINN EMANUEL URQUHART
     OVER & HEDGES, LLP
13   Attorneys for MATTEL, INC.

14   **ORDER**

15   Upon Stipulation of the Parties and GOOD CAUSE appearing therefor, it is hereby **SO ORDERED.**

16

17   DATED: Feb 26 , 2007

18   HON. EDWARD A. INFANTE (RET.)
     DISCOVERY MASTER

19

20

21

22

23

24

25

26

27

28

3.

EXHIBIT 55
PAGE 500

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on February 26, 2007, I served the attached STIPULATION AND ORDER RE REQUEST TO EXTEND DEADLINE WITHIN WHICH CARTER BRYANT MUST COMPLY WITH THE DISCOVERY MASTER'S JANUARY 25, 2007 ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrismill.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on February 26, 2007, at San Francisco, California.

_Sandra Chan_

Sandra Chan

EXHIBIT __55__

PAGE __589__

1

## PROOF OF SERVICE

2

3        I am a resident of the State of California, over the age of eighteen years,

4   and not a party to the within action. My business address is 2049 Century Park East,

5   5th Floor, Los Angeles, California  90067.3107.

6

7        On February 27, 2007, I served the within document(s):

8   **STIPULATION AND ORDER RE REQUEST TO EXTEND DEADLINE WITHIN WHICH CARTER BRYANT MUST COMPLY WITH THE DISCOVERY MASTER'S JANUARY 25, 2007 ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

9

10   ☐    This document was transmitted by using a facsimile machine that complies with

11        California Rules of Court Rule 2003(3), telephone number 310.553.5583. The transmission was reported as complete and without error.  The names and facsimile

12        numbers of the person(s) served are as set forth below.

13   ☒    by placing a true copy of the document(s) listed above for collection and mailing

14        following the firm's ordinary business practice in a sealed envelope with postage thereon fully prepaid for deposit in the United States mail at Los Angeles,

15        California addressed as set forth below.

16   ☐    by depositing a true copy of the same enclosed in a sealed envelope, with delivery

17        fees provided for, in an overnight delivery service pick up box or office designated for overnight delivery, and addressed as set forth below.

18   ☒    by personal service I caused such envelope to be delivered to **Allstar Messenger**

19        **Service** for delivery to the address below.

20   **Michael T. Zeller, Esq.**                    **Diana M. Torres, Esq.**

21   **B. Dylan Proctor, Esq.**                     **James Jenal, Esq.**
     **Quinn Emanuel Urquhart Oliver &**            **O'Melveny & Myers LLP**

22   **Hedges LLP**                                 **400 S. Hope Street**

23   **865 S. Figueroa Street, 10th Floor**         **Los Angeles, CA 90071**
     **Los Angeles, CA 90017**                      **Fax: (213) 430-6407**

24   **Fax: (213) 443-3100**

25

26   **(by Personal Service)**                      **(by Mail)**

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

PROOF OF SERVICE

EXHIBIT _____ 55

PAGE _____ 590

1    Patricia Glaser, Esq.
2    Christensen, Glaser, Fink, Jacobs,
     Weil & Shapiro, LLP
3    10250 Constellation Boulevard
4    19th Floor
     Los Angeles, CA 90067
5    Fax : (310) 556-2920

6    (by Mail)

7             I am readily familiar with the firm's practice of collection and processing

8    correspondence for mailing and for shipping via overnight delivery service.  Under

9    that practice it would be deposited with the U.S. Postal Service or if an overnight

10   delivery service shipment, deposited in an overnight delivery service pick-up box or

11   office on the same day with postage or fees thereon fully prepaid in the ordinary

12   course of business.

13            I declare under penalty of perjury under the laws of the United States of

14   America that the above is true and correct.

15            Executed on February 27, 2007, at Los Angeles, California.

16

17

18                                          _____
                                            J. Monique McDonald
19

20

21   Firmwide:81971483.1 028307.1010

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

PROOF OF SERVICE

EXHIBIT _____ 55

PAGE _____ 591