**EXHIBIT 56**

Message    Page 1 of 3

---

**From:** Wickham, Douglas A. [DWickham@littler.com]
**Sent:** Tuesday, February 27, 2007 6:23 PM
**To:** Michael T Zeller
**Cc:** Cendall, Dale; Torres, Diana; Jacoby, Keith A.; Jon Corey; Timothy Alger
**Subject:** RE: Bryant v. Mattel

**<u>Confidential: Attorneys' Eyes Only</u>**
**<u>Subject to Protective Order</u>**

Thanks for the message, Michael. This is AEO because this is a highly private, personal matter. Are you around to discuss?

-----Original Message-----
**From:** Michael T Zeller [mailto:michaelzeller@quinnemanuel.com]
**Sent:** Tuesday, February 27, 2007 6:20 PM
**To:** Wickham, Douglas A.
**Cc:** Cendall, Dale; Torres, Diana; Jacoby, Keith A.; Jon Corey; Timothy Alger
**Subject:** RE: Bryant v. Mattel

Doug, we can discuss, but why is this designated as AEO?

Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3180
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: michaelzeller@quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Wickham, Douglas A. [mailto:DWickham@littler.com]
**Sent:** Tuesday, February 27, 2007 6:16 PM
**To:** John Quinn; Michael T Zeller
**Cc:** 'Cendall, Dale'; Torres, Diana; Jacoby, Keith A.
**Subject:** Bryant v. Mattel

**<u>Confidential: Attorneys' Eyes Only</u>**
**<u>Subject to Protective Order</u>**

Dear John and Michael:

There is some highly private material on Bryant's computer hard drive that has absolutely

4/3/2007

EXHIBIT _____56_____

PAGE _____592_____

Message   Page 2 of 3

nothing to do with the issues in this case. This is not Mattel's computer; rather, this is Bryant's personal computer that he used at home.

Because this material is highly private and completely irrelevant to the issues in this case, I would like to determine if we can reach some sort of global agreement regarding the non-production of such material by Bryant, Mattel, MGA and/or Third Parties.

Please let me know whether you are willing to enter into some sort of agreement in this regard at your earliest convenience. Thanks.

Douglas A. Wickham
Littler Mendelson
A Professional Corporation
2049 Century Park East, 5th Floor
Los Angeles, California 90067
310.712.7314 (direct)
310.553.5583 (facsimile)
dwickham@littler.com

----

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this document (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

To reply to our email administrator directly, send an email to postmaster@littler.com

Littler Mendelson, P.C.
http://www.littler.com

----

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this document (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

To reply to our email administrator directly, send an email to postmaster@littler.com

4/3/2007

EXHIBIT _____ 56 _____

PAGE _____ 593 _____



Littler Mendelson, P.C.
http://www.littler.com

4/3/2007

EXHIBIT ___56___

PAGE ___594___

**EXHIBIT 57**

## LITTLER MENDELSON ®
A PROFESSIONAL CORPORATION

March 2, 2007

Douglas A. Wickham
Direct: 310.712.7314
Direct Fax: 310.553.5583
dwickham@littler.com

### HAND DELIVERY

Michael T. Zeller, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017

**Re:    Bryant v. Mattel**

Dear Mr. Zeller:

Pursuant to Discovery Master Infante's January 25, 2007 Order (as modified concerning the due dates for supplemental document productions), I have enclosed with this letter Carter Bryant's first supplemental document production.    This supplemental production is comprised of documents that are all marked "*CONFIDENTIAL - - ATTORNEY'S EYES ONLY*" and are Bates numbered BRYANT 01589 through 05099.

In addition, as we agreed this week (and with you reserving all of your client's rights in this regard including its right to insist on conducting an inspection of the actual hard drive(s) or to have a third party do so), Carter Bryant's computer hard drive(s) need not be produced at this time.  However, we have enclosed in the supplement production those documents that we could open on the hard drive(s), which contain material that may be responsive to Discovery Master Infante's order.  In this regard, we erred on the side of over-inclusiveness rather than under-inclusiveness.

Moreover, for those documents/images on the drive(s) that contain highly private material, we will obtain and send to you information regarding the file types and the "last modified" or "saved" dates for such files, if such information is accessible from the drive(s).  We truly appreciate your courtesy in this regard.

After you have received and reviewed this letter and the enclosed supplemental production, please call me if you wish to discuss this matter further.

Sincerely,

Douglas A. Wickham

DAW:cdm
Enclosures

ARIZONA
CALIFORNIA
COLORADO
DISTRICT OF COLUMBIA
FLORIDA
GEORGIA
ILLINOIS
MASSACHUSETTS
MINNESOTA
NEVADA
NEW JERSEY
NEW YORK
NORTH CAROLINA
OHIO
PENNSYLVANIA
TEXAS
WASHINGTON

EXHIBIT
PAGE

**EXHIBIT 58**



**LITTLER MENDELSON ®**
A PROFESSIONAL CORPORATION

Douglas A. Wickham
Direct: 310.712.7314
Direct Fax: 310.553.5583
dwickham@littler.com

March 16, 2007

**VIA HAND DELIVERY**

Michael T. Zeller, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:   **Bryant v. Mattel**

Dear Mr. Zeller:

Pursuant to Discovery Master Infante's January 25, 2007 Order (as modified concerning the due dates for supplemental document productions), I have enclosed with this letter Carter Bryant's second supplemental document production. This supplemental production is comprised of documents that are all marked "*CONFIDENTIAL - - ATTORNEY'S EYES ONLY*" and are Bates numbered BRYANT 05100 through 17618. We also have enclosed a privilege log and Mr. Bryant's Verification regarding prior redactions to his telephone records.

In addition, as we agreed (and with you reserving all of your client's rights in this regard including its right to insist on conducting an inspection of the actual hard drive(s) or to have a third party do so), Carter Bryant's computer hard drive(s) need not be produced at this time. However, we have enclosed in the supplement production those documents that we could open on the hard drive(s), which contain material that may be responsive to Discovery Master Infante's order. In this regard, we erred on the side of over-inclusiveness rather than under-inclusiveness.

Moreover, for those documents/images on the drive(s) that contain highly private material, we will obtain and send to you information regarding the file types and the "last modified" or "saved" dates for such files, if such information is accessible from the drive(s). We truly appreciate your courtesy in this regard.

ARIZONA

CALIFORNIA

COLORADO

DISTRICT OF COLUMBIA

FLORIDA

GEORGIA

ILLINOIS

MASSACHUSETTS

MINNESOTA

NEVADA

NEW JERSEY

NEW YORK

NORTH CAROLINA

OHIO

PENNSYLVANIA

TEXAS

WASHINGTON

EXHIBIT 58
PAGE 596

Michael T. Zeller, Esq.
March 16, 2007
Page 2

After you have received and reviewed this letter and the enclosed supplemental production, please call me if you wish to discuss this matter further.

Sincerely,

Douglas A. Wickham

DAW:cdm
Enclosures

Firmwide:82192031.1 028307.1010

EXHIBIT _____58_____

PAGE _____597_____

**EXHIBIT 59**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-624-7707 FAX 213-624-0643

March 26, 2007

<u>VIA FACSIMILE AND U.S. MAIL</u>

Douglas A. Wickham, Esq.
Littler Mendelson
2049 Century Park East, 5th Floor
Los Angeles, California  90067

Re:     <u>Mattel, Inc. v. Bryant</u>

Dear Mr. Wickham:

I am writing pursuant to the Discovery Master Stipulation to request a meet and confer in advance of Mattel's contemplated motion to compel and for sanctions as a result of Bryant's failure to produce his hard drive as ordered by Judge Infante's Order compelling its production.

Although Mattel had agreed to a brief extension of a few days for Bryant to produce the hard drive, that time has now expired and, indeed, you have failed to comply with even the requests that I had made, and that you had agreed to, in exchange for that extension.  The hard drive's production is thus now overdue.  As I have also informed you, we regret that, in light of Bryant's flat refusals to extend similar courtesies of extensions of time to Mattel, we are unable to accept any further delays in Bryant's production of the hard drive.

Please let me know when you are available to meet and confer within the time required. Alternatively, Bryant can promptly comply with his obligations under the Order and produce the hard drive so that Mattel can proceed with its forensic examination.

Best regards,

Michael T. Zeller

EXHIBIT _____54_____

PAGE _____598_____

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-622-1800 FAX 650-622-1850
PALM SPRINGS | 45025 Manitou Drive, Suite 8, Indian Wells, California 92210 | TEL 760-345-2755 FAX 760-345-2761
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-4200 FAX 858-812-4296

07209/2086528.1

cc:  Keith Jacoby, Esq.
     Diana Torres, Esq.
     Jim Jenal, Esq.

EXHIBIT _____ 59 _____

PAGE _____ 599 _____

2

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SAN DIEGO**
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
# FACSIMILE TRANSMISSION

**DATE:** March 26, 2007

**NUMBER OF PAGES, INCLUDING COVER:** __

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Douglas A. Wickham, Esq.<br>Keith A. Jacoby, Esq.<br>***Littler Mendelson*** | (310) 553-0308 | (310) 553-5583 |
| Diana Torres, Esq.<br>Jim Jenal, Esq.<br>***O'Melveney & Meyers*** | (213) 430-6000 | (213) 430-6407 |

**FROM:** Michael T. Zeller

**RE:** Mattel, Inc. v. Bryant

**MESSAGE:**

07209/1915016.1

| CLIENT # | 07209 | ROUTE/<br>RETURN TO: | Mia Albert - 3 | ☒ CONFIRM FAX<br>☒ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | CONFIRMED? | ☐ No ☐ Yes: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

EXHIBIT 54

PAGE 600

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

03/26/2007 16:52 FAX  21362406        QEUOH-LAO-2                          ☒ 001

```
        ***********************
        ***   TX REPORT   ***
        ***********************

    TRANSMISSION OK

    TX/RX NO                  2132
    RECIPIENT ADDRESS         9414#07209#13105535583  ✓
    DESTINATION ID
    ST. TIME                  03/26 16:51
    TIME USE                  01'07
    PAGES SENT                3
    RESULT                    OK
```

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SAN DIEGO**
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
# FACSIMILE TRANSMISSION

**DATE:**   March 26, 2007

**NUMBER OF PAGES, INCLUDING COVER:** __

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Douglas A. Wickham, Esq.<br>Keith A. Jacoby, Esq.<br>*Littler Mendelson* | (310) 553-0308 | (310) 553-5583 ✓ |
| Diana Torres, Esq.<br>Jim Jenal, Esq.<br>*O'Melveney & Meyers* | (213) 430-6000 | (213) 430-6407 |

**FROM:**   Michael T. Zeller

**RE:**   Mattel, Inc. v. Bryant

EXHIBIT ___59___

PAGE ___601___

## Group Send Report

```
Page        : 001
Date & Time: 03-26-2007   04:44pm
Line 1      : 2136240643
Line 2      :
Machine ID  : QUINN EMANUEL
```

Job number          :   404

Date                :   03-26  04:41pm

Number of pages     :   003

Start time          :   03-26  04:41pm

End time            :   03-26  04:44pm

Successful nbrs.

    Fax numbers

         ☎9414#007209#12134306407#

Unsuccessful nbrs.

    Fax numbers

         ☎*9414#07209#13105535583

Pages sent

000

EXHIBIT ___59___

PAGE ___602___

EXHIBIT 60



RECEIVED 

MAR **2 9** 2007

ARIZONA

CALIFORNIA

COLORADO

DISTRICT OF COLUMBIA

FLORIDA

GEORGIA

ILLINOIS

MASSACHUSETTS

MINNESOTA

NEVADA

NEW JERSEY

NEW YORK

NORTH CAROLINA

OHIO

PENNSYLVANIA

TEXAS

WASHINGTON

March 27, 2007

Douglas A. Wickham
Direct: 310.712.7314
Direct Fax: 310.553.5583
dwickham@littler.com

### VIA U.S. MAIL AND FACSIMILE (213.443.3100)

Michael Zeller, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:    **Mattel, Inc. v. Carter Bryant**

Dear Mr. Zeller:

I received your recent letter seeking to meet and confer with me regarding Mattel's motion pertaining to Mr. Bryant's hard drives.

I am in mediation all day on Wednesday, March 28, 2007, and I am tied up with hearings and other matters on Thursday, March 29, 2007. I may be available to meet and confer with you on Friday, March 30, 2007 (only in the morning) or on Monday, April 2, 2007. However, there is a possibility that I will be in court Friday morning and then I will be out of town on Friday afternoon. I will monitor my schedule and send you another letter or an email message once my calendar has firmed up.

In the meantime, we clearly disagree with your revisionist history of the parties' agreement concerning Mr. Bryant's hard drive(s). That said, we are exploring whether we can make a copy of the hard drive(s) and produce it to you after removing highly private, non-responsive documents.

Moreover, Mr. Bryant's hard drive(s) that were recently copied in Missouri contain material which the Discovery Master has ruled need not be produced until the end of June 2007. The parties already commenced discussions concerning the modification of the protective order in this case to address issues pertaining to as of yet unreleased products. After further examination, it appears that these drives also contain highly private, non-responsive documents. Accordingly, since the parties need to continue the meet and confer sessions regarding modification of the protective order, we can take up these related issues when we next confer.

In the meantime, you should be informed that Bryant already has produced hard copies of all documents responsive to Discovery Master Infante's January 25, 2007 order that could be located/accessed on Bryant's hard drives except for documents/images that Discovery Master

EXHIBIT _60_

PAGE _1003_

Michael Zeller, Esq.
March 27, 2007
Page 2

Infante recently determined need not be produced until the end of June 2007 (and which will be the subject of the further protective order in this case).

Sincerely,

Douglas A. Wickham

DAW:cdm

cc:     Diana Torres, Esq.
        Diba Rastegar, Esq.

Firmwide:82251531.1 028307.1010

EXHIBIT _____ 60 _____

PAGE _____ 604 _____

**EXHIBIT 61**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-624-7707 FAX 213-624-0643

April 6, 2007

<u>VIA FACSIMILE AND U.S. MAIL</u>

Douglas A. Wickham, Esq.
Littler Mendelson
2049 Century Park East, 5th Floor
Los Angeles, California 90067

Re:   <u>Mattel, Inc. v. Bryant</u>

Dear Doug:

I am following up on our meet and confers earlier this week regarding Bryant's failure to produce his hard drives that Judge Infante's Order had compelled him to produce.

During our conversations, you have informed me of the following. Bryant's counsel has five images of hard drives that Bryant has used. Two of the images were created in July 2004 and have data from the 2002 and 2003 time period. One of these two images is of a 20 GB Travelstar drive from a Compaq Presario laptop, and the other is of a 20 GB Quantum Fireball LCT 15 drive. Bryant's counsel has EnCase images of the Travelstar and Quantum drives, but the physical drive from the Compaq Presario laptop only. You are going to provide me with the details of the drives from which the other three images were made. You have informed me thus far that these three images, which also are in EnCase and which have data of more recent vintage than the images of the Travelstar and Quantum drives, were made in March 2007.

This has raised the issue, among others, of the status of Bryant's "Desktop" drive that was the specific subject of Mattel's motion to compel Bryant's production of documents which Judge Infante granted. As Bryant's counsel is aware, Bryant purchased the "Desktop" in October 2000. He testified at deposition that, prior to November 2004, he had given that computer to his niece. In correspondence and in Court papers, Bryant previously had represented that this hard drive

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94104 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-670-4500 FAX 650-620-4555
PALM SPRINGS | 45-025 Manitou Drive, Suite 8, Indian Wells, California 92210 | TEL 760-345-4757 FAX 760-345-2414
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-4136

EXHIBIT ___61___
PAGE ___605___

had been retrieved from Bryant's niece, that it has been in Bryant's counsel's possession since at least as early as November 2004, that it had been thoroughly reviewed and that no responsive information was contained on it.

During our recent discussions, however, because your statements that the images of the Travelstar and Quantum drives had information from the 2002 and 2003 time period suggested that these images did not include the Desktop drive (which would have 2000 and 2001 information on it), I specifically raised the whereabouts and status of the Desktop drive with you. In the first instance, after you had checked with your partner Keith Jacoby, you informed me during our call on April 4, 2007 that Bryant's prior representations about the Desktop drive were "wrong" and that the drive, in fact, had neither been obtained from Bryant's niece nor reviewed. You also said in this regard yesterday that you are not entirely sure about the accuracy of the foregoing and would have Keith call me directly to discuss this.

For the reasons explained in my letter to you of March 29, 2007, we consider the apparent absence of the Desktop drive to be a troubling development. Your statements to me this week during our meet and confers have increased, rather than diminished, the number of questions surrounding this evidence which Bryant represented that he had in hand and has been compelled by Court Order to produce. I therefore would appreciate it if Keith would follow up with me promptly, either today or by the end of Monday, particularly given that we have been seeking to resolve for some time now the matter of Bryant's failure to produce (among others) the Desktop drive. If the parties are not able to resolve this issue, we will have no alternative but to seek relief from Judge Infante. One type of relief that we are contemplating potentially seeking would include, without limitation, an order to show cause requiring Bryant to fully explain the facts and circumstances surrounding the non-production of the Desktop drive and make available the salient witnesses to testify on the subject.

Accordingly, I reiterate my prior requests that Bryant be prepared to discuss the specifics surrounding his failure to produce the Desktop hard drive. I also would expect, as part of those discussions, to be informed of the particulars of the persons with knowledge of facts pertaining to the hard drive, such as the name and contact information of the niece.

Finally, this will confirm that, as we discussed yesterday, you will be circulating for Mattel's consideration a draft document which outlines a protocol for the handling of the images and drives that Bryant's counsel does have in their possession.

I look forward to hearing from you and Keith on these subjects.

Very truly yours,

Michael T. Zeller

cc:   Keith Jacoby, Esq.
      Diana Torres, Esq.

2

EXHIBIT ___61___

PAGE ___6066___

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SAN DIEGO**
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**FAXED**
APR 6 6 2007

**DATE:**   April 6, 2007

**NUMBER OF PAGES, INCLUDING COVER:**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| **Douglas Wickham, Esq.** **Keith Jacoby, Esq.** Littler Mendelson | (310) 553-0308 | (310) 553-5583 |
| **Diana M. Torres, Esq.** O'Melveny & Myers LLP | (213) 430-6584 | (213) 430-6407 |

**FROM:**   Michael T. Zeller

**RE:**   *Mattel, Inc. v. Carter Bryant*

**MESSAGE:**

07209/2047927.1

| CLIENT # | 7209 | ROUTE/ RETURN TO: | Mia Albert./3th Floor | ☐ CONFIRM FAX ☐ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | CONFIRMED?   ☐ NO  ☐ YES: | | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**

EXHIBIT 161

PAGE 007

# Confirmation Report — Memory Send

Page        : 001
Date & Time: 04-06-2007    02:28pm
Line 1      : 2134433100
Line 2      :
Machine ID  : QUINN EMANUEL

| | | |
|---|---|---|
| Job number | : | 673 |
| Date | : | 04-06  02:26pm |
| To | : | ☎9643▓7209▓4306407 |
| Number of pages | : | 003 |
| Start time | : | 04-06  02:26pm |
| End time | : | 04-06  02:28pm |
| Pages sent | : | 003 |
| Status | : | OK |

Job number    : 673          *** SEND SUCCESSFUL ***

## QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SAN DIEGO**
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

### LOS ANGELES OFFICE
### FACSIMILE TRANSMISSION

**DATE:**    April 6, 2007

**NUMBER OF PAGES, INCLUDING COVER:**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| *Douglas Wickham, Esq.*<br>*Keith Jacoby, Esq.*<br>**Littler Mendelson** | (310) 553-0308 | (310) 553-5583 |
| *Diana M. Torres, Esq.*<br>**O'Melveny & Myers LLP** | (213) 430-6584 | (213) 430-6407 |

**FROM:**    Michael T. Zeller

**RE:**    *Mattel, Inc. v. Carter Bryant*

**MESSAGE:**

| | | | |
|---|---|---|---|
| 07206/2047927.1 | | | |
| **CLIENT #**    7209 | **ROUTE/**<br>**RETURN TO:**    Mia Albert./5th Floor | ☐ CONFIRM FAX<br>☐ INCLUDE CONF. REPORT | |
| **OPERATOR:** | **CONFIRMED?**    ☐ No    ☐ YES: | | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT ___61___

PAGE ___608___

**Group Send Report**

```
Page      : 001
Date & Time: 04-06-2007   02:14pm
Line 1    : 2134433100
Line 2    :
Machine ID : QUINN EMANUEL
```

Job number          :   672

Date                :   04-06  02:11pm

Number of pages     :   003

Start time          :   04-06  02:11pm

End time            :   04-06  02:14pm

Successful nbrs.

   Fax numbers

     ☎1*13105535583


Unsuccessful nbrs.                                                      Pages sent

   Fax numbers

     ☎12134306407#                                              000

EXHIBIT ____61____

PAGE ____609____

**EXHIBIT 62**

FILED

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
   (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
   (michaelzeller@quinnemanuel.com)
   Susan Wines (Bar No. 168643)
   (susanwines@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

2007 APR 11  PM 12: 58

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY _____

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> MATTEL, INC., a Delaware corporation, <br><br> Defendant. <br><br> AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx) <br><br> Consolidated with <br> Case No. CV 04-09059 <br> Case No. CV 05-02727 <br><br> **DISCOVERY MATTER** <br><br> **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order Of December 6, 2006]** <br><br> NOTICE OF MOTION AND MOTION OF MATTEL, INC. FOR AN ORDER TO ENFORCE COURT'S JANUARY 25, 2007 ORDER COMPELLING BRYANT TO PRODUCE DESKTOP COMPUTER HARD DRIVE <br><br> [Declaration of Michael T. Zeller filed concurrently herewith] <br><br> Hearing Date: TBA <br> Time: TBA <br> Place: TBA <br><br> Discovery Cut-off: October 22, 2007 <br> Pre-trial Conference: January 14, 2008 <br> Trial Date: February 12, 2008 |

EXHIBIT _____ 62

PAGE _____ 610

4-11

MATTEL'S MOTION RE: BRYANT'S FAILURE TO PRODUCE DESKTOP COMPUTER HARD DRIVE

r7209/2097326.1

1 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that at a telephonic conference before
3 Discovery Master Hon. Edward Infante (Ret.), that will occur at a time to be
4 determined by Judge Infante, plaintiff and cross-defendant Mattel, Inc. ("Mattel") will,
5 and hereby does, move the Court:

6      (1)    for an Order compelling Carter Bryant ("Bryant") to produce for
7 inspection and forensic imaging within five calendar days the hard drive(s) from his
8 Desktop computer that Bryant purchased in October 2000, that Bryant and his counsel
9 had represented that they had in their possession and had reviewed for responsive
10 documents and that Bryant was compelled to produce by Judge Infante's Order dated
11 January 25, 2007 (the "Discovery Order");

12      (2)    for an Order compelling Bryant, in the event of his continued non-
13 production of the Desktop hard drive(s), to provide sworn declarations from each
14 person with knowledge fully detailing the facts and circumstances surrounding the
15 search for and the non-production of the Desktop hard drive(s);

16      (3)    in the alternative, for an Order to Show Cause why Bryant should
17 not be compelled to provide the foregoing; and

18      (4)    for an award of sanctions against Bryant and his counsel in the
19 amount of $2,106.00, which represents a portion of the fees and costs incurred by
20 Mattel in bringing this Motion.

21      This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u> 34 and
22 37 on the grounds that Carter Bryant has failed to comply with the Discovery Order
23 requiring him to produce his Desktop computer hard drive(s) and has made inconsistent
24 statements about his search for, his inspection of, and the whereabouts of such
25 computer hard drive(s) that he was compelled to produce.

26      This Motion is based on this Notice of Motion and Motion, the
27 accompanying Memorandum of Points and Authorities, the Declaration of Michael T.

28 EXHIBIT _____ _____

PAGE _____ _____                    2

MATTEL'S MOTION RE: BRYANT'S FAILURE TO PRODUCE DESKTOP COMPUTER HARD DRIVE

1 | Zeller filed concurrently herewith, the records and files of this Court, and all other

2 | matters of which the Court may take judicial notice.

3

4 | **Statement of Rule 37-1 Compliance**

5

6 | The parties met and conferred regarding this motion on April 2, 2007 and

7 | April 3, 2007, as well as on other occasions.

8

9

10 | DATED:  April 10, 2007            QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

11

12 | By_____

13 | Michael T. Zeller
Attorneys for Mattel, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27 | EXHIBIT ____ 62

28 | PAGE ____ 612

/7209/2097326.1

3

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

As the Discovery Master will recall, Carter Bryant testified at deposition that he purchased a desktop computer in October 2000 (the "Desktop"). This was the same month Bryant left Mattel's employment. According to Bryant, he used that computer until at least 2002 or 2003, when he gave it to his niece. Given the time period of its use by Bryant, and Bryant's testimony that he had used the computer in connection with his work on Bratz and with MGA, the Desktop's hard drive is crucial evidence.[1] Beginning in 2004, Mattel sought its production, and Bryant refused on the grounds (among others) that it contained no responsive information.

Mattel moved to compel Bryant to produce his hard drives, including the Desktop hard drive specifically, so that they could be forensically examined. During motion practice, Bryant repeatedly represented that he had retrieved the Desktop from his niece and had thoroughly inspected it for relevant information but found none. Thus, in pleadings filed with the Court, declarations signed under penalty of perjury, and letters to Mattel's counsel, Bryant and his counsel stated in connection with the Desktop:

- "[Bryant] later purchased a computer, which he used for a time, and then gave away to his niece. That computer has been retrieved and searched for responsive documents, and none have been located."

- "Bryant made the hard drive of the computer he used from 2000 to 2002 available to his counsel, and counsel spent scores of attorney hours searching for documents at Bryant's home and in his studio, and produced responsive documents. Counsel has not

---

[1] As a result of Bryant's now conflicting statements as described below, Mattel does not know with any certainty whether the Desktop has one hard drive or more than one hard drive or utilized additional forms of storage. Mattel therefore refers in this motion to the Desktop's hard drive in the singular form for convenience and simplicity, although the usage here should be understood to encompass any and all drives and storage devices associated with the Desktop.

07209/2095442.1

1  found any responsive documents or relevant information on his computer hard drives, however."

2  •  "Bryant's counsel has examined his hard drive extensively for any responsive documents, and it has not found any."

3

4  •  ". . . Bryant has tirelessly searched for and inspected his computer hard drives for relevant information . . . ."

5  Indeed, although Bryant had testified at deposition about the existence of two other

6  computers he had bought and used in connection with Bratz prior to his deposition in

7  November 2004, Bryant claimed that the *only* hard drive of these three computers he

8  was able to locate was from the Desktop.

9      By Order dated January 25, 2007, the Discovery Master granted Mattel's

10  motion to compel and specifically required Bryant to produce his computer hard drives.

11  Although the time for Bryant's compliance with the Order has come and gone, Bryant

12  still has not produced the Desktop hard drive.  Mattel gave Bryant extensions of time

13  for compliance, based on Bryant's counsel's initial representations that Bryant was

14  traveling and more time was needed.  As those extended deadlines were expiring,

15  however, Bryant's counsel claimed for the first time that they would not be producing

16  the hard drive because it had some unspecified "highly private" materials on it.

17  Subsequently, Bryant's counsel disclosed that they in fact had five forensic images of

18  Bryant hard drives and asserted that, as a further reason for their non-production, some

19  or all of these hard drives also contained trade secret information concerning unreleased

20  Bratz products that were scheduled for release later in 2007 or 2008.[2]

21      During the meet and confer process, Mattel pointed out that these evolving

22  claims did not make sense with respect to the Desktop hard drive.  Given that Bryant's

23  counsel had represented to the Court that they had "extensively" inspected and

24

25  [2]  In this motion, Mattel is not seeking relief as to any of Bryant's hard drives

26  other than the hard drive for the Desktop.  Mattel is still attempting to resolve issues pertaining to Bryant's recent claims about his other hard drives, and Mattel will

27  (footnote continued)

28

EXHIBIT ___
PAGE ___
(illegible)

MATTEL'S MOTION RE: BRYANT'S FAILURE TO PRODUCE DESKTOP COMPUTER HARD DRIVE

07209/2095442.1

1  reviewed the Desktop, there was no valid reason why these allegedly "highly private"

2  materials had not been mentioned on Mattel's motion to compel. Also, given Bryant's

3  representations that his counsel had been in possession of the Desktop since at least as

4  early as November 2004, it did not seem plausible that the Desktop drive had

5  information for 2007 and 2008 products on it.

6          In response, Bryant and this counsel then began claiming that they do not

7  have the Desktop hard drive and that their earlier representations to the Court and

8  Mattel about having retrieved it from the niece and inspected it were apparently

9  "wrong." And, while the Desktop from the critical 2000 time period has seemingly

10  gone missing (and in any event has not been produced), Bryant's counsel now say that

11  they have forensic images of *two* hard drives from the 2002 and 2003 time period --

12  which is inconsistent with their earlier representations that the *only* Bryant hard drive

13  they had found from that time period was the hard drive for the Desktop. Mattel

14  repeatedly sought to get further information and clarification about the status of the

15  Desktop hard drive and the circumstances surrounding its non-production, but to no

16  avail.

17          Accordingly, Mattel needs the Discovery Master's assistance to get to the

18  bottom of Bryant's failure to produce the Desktop hard drive as ordered. Bryant should

19  be ordered to immediately produce the Desktop hard drive. If that hard drive is now

20  alleged to be unavailable, Mattel respectfully requests that the Discovery Master order

21  Bryant to provide a full account under oath detailing all facts and circumstances

22  concerning the non-production of this drive, including an explanation as to how Bryant

23  and his counsel could have "tirelessly" and "extensively" inspected something they now

24  have claimed not to possess. Bryant's sworn statements also should detail precisely

25  what hard drives he has, what was done to search for relevant computers (and when),

26  _____

27  bring a separate motion on them in the event that the parties cannot reach an

28  agreement.

MATTEL'S MOTION RE: BRYANT'S FAILURE TO PRODUCE DESKTOP COMPUTER HARD DRIVE

07209/2095442.1

1  how and when such computers were inspected, and all persons who have knowledge of
2  those facts. The extent of Bryant's non-compliance with the Discovery Order cannot be
3  determined without such basic information, and Mattel has been unable to obtain it
4  from Bryant voluntarily.

5  <u>**Background**</u>

6  <u>**At Deposition, Bryant Identifies Three Relevant Computers.**</u>  Bryant
7  testified that he had used three different computers prior to his deposition in November
8  2004. First and foremost was the Desktop computer that Bryant purchased from Circuit
9  City on October 21, 2000--just one day after he resigned from Mattel.[3]  Bryant says he
10 used this computer from 2000 until approximately November 2003 (only five months
11 before this lawsuit was filed), when he gave it to his niece.[4]  The second was a laptop
12 computer that Bryant purchased in November 2001.[5]  The third computer Bryant
13 identified was his parents' computer that Bryant used for a time, including during the
14 time that he purportedly created Bratz.[6]

15 <u>**Bryant and His Counsel Represent That The Desktop Was Retrieved**</u>
16 <u>**From The Niece And Examined But No Responsive Information Is Contained On**</u>
17 <u>**It.**</u>  Bryant and his counsel have repeatedly represented that not only had they located
18 the Desktop, but that they had searched it for responsive documents and came up
19 empty-handed. For example, on November 1, 2004, Bryant's counsel sent a letter to
20 Mattel's counsel claiming that the computer Bryant had given away to his niece "has

21  ────────────
22  [3]   Circuit City receipt dated October 21, 2000, attached to the Declaration of
    Michael T. Zeller, dated April 10, 2007 filed concurrently herewith ("Zeller Dec."),
23  Exh. 2; Bryant Deposition at 246:3-5, Zeller Dec., Exh. 3.
    [4]   Bryant Deposition at 245:8-17; 246:3-5; 248:5-9, Zeller Dec., Exh. 3.
24  Bryant's counsel elsewhere stated that Bryant had used the Desktop "from 2000 to
    2002" and thus confirmed as well that it pertained to a highly pertinent time period.
25  Joint Stipulation Re: Mattel's Motion to Compel Production of Documents, filed on
    January 6, 2005 (excerpts) ("Joint Stipulation") at 62:8-10, Zeller Dec., Exh. 5.
26  [5]   Bryant Deposition at 247:25-248:2, Zeller Dec., Exh. 3.
27
28

PAGE ___   EXHIBIT ___

1  been retrieved and searched for responsive documents, and none have been located."[7]

2  Mattel specifically asked Bryant's counsel to preserve the Desktop hard drive.[8]

3        In refusing to produce the Desktop hard drive, Bryant thus asserted not

4  that it was unavailable, but instead that it contained nothing relevant. In January 2005,

5  Mattel filed a motion to compel against Bryant that sought the production of his hard

6  drives, including the hard drive for the Desktop specifically.[9]  At that time, in Court

7  pleadings filed in opposition to Mattel's motion, Bryant's counsel represented that

8  Bryant had "tirelessly searched for and inspected his computer hard drives for relevant

9  information" and had made an "extensive and diligent search" for responsive

10  information on them.[10]  Bryant's opposition made clear that the hard drive he had

11  purportedly searched was the Desktop hard drive.[11]  Bryant's counsel also represented

12  in declarations that they too had examined the Desktop -- indeed, "extensively" so --

13

14

---

15     [6]  Bryant Deposition at 245:25-246:2, Zeller Dec., Exh. 3.

16     [7]  Letter dated November 1, 2004 from Keith Jacoby, counsel for Bryant, to John

17  Quinn and Michael Zeller, counsel for Mattel, at p. 2, Zeller Dec., Exh. 4 ("Regarding [Mattel's] requests to inspect Mr. Bryant's home computer, I have made

18  further inquir[i]es on that subject to Mr. Bryant and my colleagues.  Mr. Bryant did not own a home computer during his time at Mattel.  He later purchased a computer,

19  which he used for a time, and then gave away to his niece.  That computer has been

20  retrieved and searched for responsive documents, and none have been located.  Mr. Bryant declines to produce his hard drive for inspection for the reasons articulated in

21  his response to Mattel's document request.").

22     [8]  Letter dated November 17, 2004 from Kirk Garey, counsel for Mattel, to Mr.

23  Jacoby, Zeller Dec., Exh. 23.
   [9]  Joint Stipulation at 3-4, 58-61, Zeller Dec., Exh. 5.

24     [10]  Joint Stipulation at 62:1-13, Zeller Dec., Exh. 5; [Redacted] Declaration of Keith A. Jacoby in Support of Defendant and Cross-Claimant Carter Bryant's

25  Portion of Joint Stipulation (excerpted and without exhibits) ("2005 Jacoby Dec.") at

26  ¶¶ 22, 23, attached as Exh. 6 to the Zeller Dec.
   [11]  2005 Jacoby Dec. ¶ 23 (referencing the "hard drive from Bryant's home

27  computer, which he gave to his niece in 2002"), Zeller Dec., Exh. 6.

28

MATTEL'S MOTION RE: BRYANT'S FAILURE TO PRODUCE DESKTOP COMPUTER HARD DRIVE

EXHIBIT ___ PAGE ___

07209/2095442.1

1  and that they spent "scores of attorney hours" searching for responsive documents, but

2  found nothing responsive.[12]

3      Mattel's original motion to compel was not ruled upon because of the

4  discovery stay.  After the stay was lifted and the Discovery Master was appointed,

5  Mattel renewed its motion to compel Bryant's computer hard drives in early January

6  2007 and again specifically sought production of the Desktop hard drive.[13]  Bryant

7  again represented that he had conducted a "diligent" search for Bryant's hard drives and

8  stated that the *only* computer he was able to find was the Desktop.[14]  Bryant's counsel

9  likewise again stated they had searched the Desktop hard drive, but did not find "any

10  responsive documents or relevant information" on it.[15]

11      The Discovery Master granted Mattel's motion to compel.  Among other

12  things, the Discovery Master ordered that "[p]ursuant to Rule 34, Fed.R.Civ.P., Bryant

13  shall produce the hard drives of his computers for forensic imaging" by no later than

14  February 23, 2007 (the "Discovery Order").[16]

15      **Bryant's Counsel Stalls In Producing Any Drives.**  Shortly before the

16  February 23, 2007 deadline, Bryant's counsel asked Mattel for an extension of time for

17

18  [12]  Joint Stipulation at 62:2-13, 18-20, Zeller Dec., Exh. 5; 2005 Jacoby Dec. at

19  ¶¶ 23, 24, Zeller Dec., Exh. 6.

[13]  Zeller Dec. ¶ 9; see also Separate Statement of Mattel, Inc. in Support of

20  Motion to Compel Production of Documents by Carter Bryant, filed on January 4,

21  2007 (excerpts) at 57-61, Zeller Dec., Exh. 7; Declaration of Michael T. Zeller in Support of Mattel, Inc.'s Motion to Compel Production of Documents by Carter

22  Bryant (without exhibits) filed January 4, 2007 at ¶ 27, Zeller Dec., Exh. 8.

23  [14]  Separate Statement of Defendant Carter Bryant in Opposition to Mattel's Motion to Compel, filed on January 11, 2007 ("Bryant's 2007 Separate Statement")

24  at 39, Zeller Dec., Exh. 9; Declaration of Keith A. Jacoby in Support of Carter

25  Bryant's Opposition to Mattel, Inc.'s Motion to Compel Production of Documents (excerpted and without exhibits) ("2007 Jacoby Dec.") at ¶ 31, Zeller Dec., Exh. 10.

26  [15]  2007 Jacoby Dec., ¶ 31, Zeller Dec., Exh. 10.

27  [16]  Order of the Discovery Master Hon. Edward Infante (Ret.) dated January 25, 2007 at 17, Zeller Dec., Exh. 11.

28

MATTEL'S MOTION RE: BRYANT'S FAILURE TO PRODUCE DESKTOP COMPUTER HARD DRIVE

07209/2095442.1

EXHIBIT ___

PAGE ___

1 compliance with the Discovery Order, claiming that additional time was required
2 because the quantity of responsive documents "may be significant" and because Bryant
3 would be traveling out of state until March 2 or 3, 2007.[17]   Based on those
4 representations, the parties submitted, and the Discovery Master approved, a Stipulation
5 extending Bryant's time to produce his computer hard drives.[18]

6          Two business days after Mattel's counsel agreed to the extension, Bryant's
7 counsel then began asserting a new reason for not producing his hard drives.   On
8 February 27, 2007, Bryant's counsel sent an email claiming that the hard drive
9 contained some unspecified "highly private material" and seeking "some sort of
10 agreement" on that issue.[19]   Mattel's counsel agreed to extend the deadline for
11 production of the hard drive for a few days so the parties could further discuss this so-
12 called "highly private" material, but only so long as Bryant's counsel provided a
13 detailed log by no later than the end of the following week (i.e., by March 23, 2007)
14 regarding the files at issue.[20]  This log was supposed to include, for example, the file
15 format, file size, creation date and any modification date(s), so that Mattel could
16 intelligently discuss Bryant's counsel's claims about the files and consider what options
17 were available to potentially address them.[21]  Bryant's counsel agreed to provide such a
18 log and, in a subsequent letter, acknowledged that Mattel's counsel had "reserv[ed] all
19 of [Mattel's] rights in this regard including its right to insist on conducting an inspection
20 of the actual hard drive(s) or to have a third party do so."[22]  Although Bryant's counsel
21

22 ---

[17]   Stipulation and Order re: Request to Extend Deadline Within Which Carter
23 Bryant Must Comply with the Discovery master's January 25, 2007 Order Granting
Mattel's Motion to Compel Production of Documents dated February 23, 2007,
24 Zeller Dec., Exh. 12.
25 [18]   Id.
[19]   Zeller Dec., Exh. 13.
26 [20]   Zeller Dec., Exhs. 14, 15, 18.
[21]   Zeller Dec., Exhs. 14, 15, 18.
27 [22]   Zeller Dec., Exhs. 14, 15, 18.
28

MATTEL'S MOTION RE: BRYANT'S FAILURE TO PRODUCE DESKTOP COMPUTER HARD DRIVE

J7209/2095442.1

EXHIBIT ___ PAGE ___

1  had stated that this log of the files containing the "highly private" material was "on its

2  way," they still had not produced it by March 26, 2007.[23]

3       **The Desktop Appears To Go Missing**.  Not having received any hard

4  drives or the promised log of files that Bryant's counsel was ostensibly concerned

5  about, Mattel's counsel requested a meet and confer in advance of a motion to enforce

6  the Court's Discovery Order requiring Bryant to produce his hard drives.[24]  During the

7  meet and confer process, Bryant's counsel made two startling new claims that appeared

8  fundamentally inconsistent with the earlier representations by Bryant and his counsel.

9  First, because as noted Bryant had previously asserted that the *only* hard drive Bryant

10  had from any earlier time period was the Desktop, Mattel reasonably assumed at that

11  point that the "highly private" information referenced by Bryant's counsel's email was

12  contained on the Desktop hard drive.[25]  In further discussions, however, Bryant's

13  counsel stated that they had made forensic images of *two* Bryant hard drives in *July*

14  *2004* -- a time well before their representations that *only* the Desktop had been

15  located.[26]  According to Bryant's counsel during the recent meet and confers, one of

16  these forensic images made in July 2004 was from a Compaq Presario laptop computer

17  with a 20 GB Travelstar hard drive, and the other was from a Quantum Fireball LCT 15

18  drive.[27]  Bryant's counsel also stated in discussions that the data on these two forensic

19

20  _____

21  [23]  Zeller Dec., Exh. 16.
    [24]  Zeller Dec., Exh. 16.

22  [25]  Bryant's 2007 Separate Statement at 39, Zeller Dec., Exh. 9; 2007 Jacoby
    Dec. at ¶ 31, Zeller Dec., Exh. 10; Zeller Dec., Exhs. 17, 19.

23  [26]  Zeller Dec., Exh. 21.

24  [27]  Zeller Dec., Exh. 21.  More specifically, Bryant identified the two images that

25  were made in July 2004 as being of (1) a 20 GB Travelstar hard drive from a
    Compaq Presario laptop, and (2) a 20 GB Quantum Fireball LCT 15 hard drive.  Id.,

26  p. 1.  Also during the meet and confer process, Bryant's counsel represented that
    Bryant was still in possession of the physical hard drive from the laptop but no

27  longer had the Quantum hard drive.  Id., p. 1.

28

MATTEL'S MOTION RE: BRYANT'S FAILURE TO PRODUCE DESKTOP COMPUTER HARD DRIVE

Y7209/2095442.1

EXHIBIT ___ PAGE ___

1   images were from the 2002 and 2003 time period.[28]  This was the first time Bryant's

2   counsel disclosed that any hard drives apart from the Desktop had been located, let

3   alone that they had been withheld from Mattel since 2004.[29]

4          This led to Bryant's second, and even more troubling, revelation.  Bryant's

5   counsel also start asserting as another basis for his refusals to produce any of the hard

6   drives that they contained unidentified information about unreleased Bratz products

7   scheduled for release in 2007 and 2008.[30]  Bryant's prior representations about the

8   Desktop, however, including that his counsel had retrieved it from the niece at least as

9   early as November 2004, appeared inconsistent with the claim that it contained data for

10  2007 and 2008 doll releases.  Moreover, Bryant's statement that the two older hard

11  drive images that were made in July 2004 contained data from 2002 and 2003 appeared

12  to exclude the prospect that one of these images was from the Desktop.  Since Bryant

13  had purchased the Desktop in October 2000 and had used it until at least 2002 and

14  2003, it undoubtedly would have data from 2000 and 2001.

15         In light of these incongruities, Mattel pressed for an explanation about the

16  status of the Desktop hard drive specifically.  On April 4, 2007, Bryant's counsel

17  suggested for the first time that they in fact did not know the whereabouts of the

18  Desktop.[31]  They stated that either the representations Bryant and his counsel had

19  earlier made to the Court and Mattel were "wrong" (and that the drive had never been

20  retrieved from Bryant's niece or reviewed), or that they simply are "not sure" about

21

22    [28]  Zeller Dec., Exh. 21.
23    [29]  Zeller Dec., Exh. 19.  Bryant's counsel further disclosed that there were
      additional "hard drive(s)" that had been "recently copied in Missouri," and that
24    "[a]fter further examination, it appears that these drives also contain highly private,
      non-responsive documents."  Id.  As noted above, in subsequent conversations,
25    Bryant's counsel stated that there were three images of these additional drives, for a
26    total of at least five hard drive images.  Zeller Dec., Exh. 21.
27    [30]  Zeller Dec., Exh. 19.
      [31]  Zeller Dec., Exh. 21.
28

07209/2095442.1

1  their accuracy.[32]  Both orally and in letters, Mattel's counsel asked for clarification

2  about the status of the Desktop hard drive and requested that Bryant provide the factual

3  particulars regarding its non-production, without success.[33]

4

5  **Argument**

6  **I.**  **BRYANT HAS FAILED TO PRODUCE THE DESKTOP HARD**

7  **DRIVE AS ORDERED, AND THE DISCOVERY MASTER SHOULD**

8  **COMPEL BRYANT TO PRODUCE IT OR EXPLAIN ITS NON-**

9  **PRODUCTION UNDER OATH.**

10  Bryant has been resisting the production of the Desktop hard drive since

11  Mattel first began asking for it over two years ago.  Mattel was forced to file two

12  motions to compel, and at no time in opposing those motions did Bryant ever say that

13  he did not possess it.  To the contrary, for over two years, Bryant and his attorneys have

14  maintained not only that they had the Desktop hard drive in hand, but that they had

15  extensively reviewed the drive and it purportedly contained no responsive information.

16  Then, after the Discovery Master ordered Bryant to produce it, Bryant's counsel

17  initially claimed they needed more time, then that they did not want to produce it

18  because it contained "highly private" material, and finally, that they do not have it.

19  Whatever the truth is or the reason behind it, Bryant has not complied with

20  the Order requiring the production of the Desktop hard drive, which is crucial

21  evidence.[34]  Accordingly, Bryant should be ordered to produce that hard drive within

22

23  [32]  Zeller Dec., Exh. 21.
    [33]  Zeller Dec. ¶ 26.

24  [34]  To the extent Bryant suddenly relocates the Desktop, but argues that he need

25  not comply with the Court's Order compelling its production because it contains
    some unspecified "highly private" information, that argument has been waived.

26  Although he and his counsel claimed to have thoroughly reviewed its contents,

27  Bryant did not oppose Mattel's motion to compel the Desktop by arguing that it
    contained "highly private" information.  Thus, Bryant waived his right to oppose

28  (footnote continued)

PAGE    EXHIBIT _____    ____

1   five calendar days and, if he fails to do so, be ordered to disclose under oath all the facts

2   and circumstances surrounding that failure.  Despite Mattel's efforts during the meet

3   and confer, Bryant has not provided any cogent explanation that would account for the

4   hard drive's non-production.  To the contrary, Bryant and his counsel have now given

5   facially conflicting accounts, including about what computer hard drives they had

6   retrieved and secured, what they had purportedly reviewed and even the number of

7   computer hard drives they possess.  Under circumstances even less suspicious than

8   these, courts have required the compelled party to provide sworn declarations detailing

9   the nature of their search for documents, all facts and circumstances surrounding the

10  production, and, if such documents are unavailable, to specify when they were

11  destroyed and the reason(s) for their destruction.  See, e.g., A. Farber and Partners, inc.

12  v. Garber, 234 F.R.D. 186, 190 (C.D. Cal. 2006) ("Further, to assure that defendant

13  Garber actually makes a 'reasonable inquiry,' the court will order him to provide

14  plaintiff with declarations or affidavits detailing the nature of his 'reasonable inquiry' to

15  locate responsive documents, and such declarations must address the inquiry he made

16  on a request-by-request basis."); see also General Cigar Co., Inc. v. Cohiba Caribbean's

17  Finest, Inc., 2007 WL 983855 at *7-8 (D. Nev. 2007) (ordering defendants to provide a

18  sworn declaration detailing the nature of their "reasonable inquiry" to locate responsive

19  documents in accordance with Farber); Satchell v. FedEx Express, 2006 WL 2884318

20  at *6 (N.D. Cal. 2006) (ordering defendant either produce documents or provide a

21  sworn statement regarding the reasons such documents are unavailable and if such

22  documents are claimed to no longer exist, defendant's declaration "must state when it

23

24  _____

25  production on this basis.  See, e.g., Richmark Corp. v. Timber Falling Consultants,
    959 F.2d 1468, 1473 (9th Cir. 1992) (finding defendant waived objections to

26  discovery orders and a contempt adjudication based on the People's Republic of
    China's secrecy laws where it failed to raise argument in response to motion to

27  compel).

28

MATTEL'S MOTION RE: BRYANT'S FAILURE TO PRODUCE DESKTOP COMPUTER HARD DRIVE

07209/2095442.1

EXHIBIT ___

PAGE ___

1  destroyed or ceased to retain these documents, and the policies or reasons for their
2  destruction.").[35]

3         Thus, in the event that Bryant persists in his failure to produce the hard
4  drive for the Desktop as the Discovery Order has compelled him to do, Bryant should
5  be ordered to detail all facts and circumstances surrounding its non-production through
6  sworn declarations from each witnesses with personal knowledge of the facts.   In
7  particular, Bryant should be ordered to disclose:

8      •   a detailed identification of all of the hard drives Bryant has used
9         in connection with any Bratz work or work with MGA and the
       efforts made to locate each such hard drive;

10     •   the specifics regarding each computer hard drive that has been
11        located, including its identity, its dates of use, the date on which
       the computer was located, and the circumstances under which
       each computer has been kept;

12
13     •   all information known or accessible to Bryant or his counsel
       about each computer hard drive that Bryant failed to locate or
14        claims they do not have in their possession, custody and control,
       including the identification of all persons who have been in
15        possession of it, the date(s) of their possession, its last known
       location and the circumstances surrounding its disposition and/or
16        destruction;

17     •   a detailed description of when and how any drives that were
       located were imaged, inspected and searched, including by
18        identifying who was involved and what specific efforts they
       made;

19     •   a complete explanation of Bryant and his counsel's prior
       representations to the Court and Mattel, including with respect to
20        their representation that they had found no hard drive other than
       the one for the Desktop, despite apparently having created
21        forensic images of two drives in July 2004, and their
       representation that they had retrieved from Bryant's niece and
22        had reviewed and inspected the Desktop hard drive, despite
       apparently never having done any of this; and
23

24     •   the identification of all persons (including their name and contact
       information) with knowledge of the facts and a detailed

25 ─────────────────
   [35]  Requiring such a declaration also would be well within the Discovery Master's
26 authority under the Discovery Master Order to "take evidence in connection with
27 discovery disputes." Stipulation and Order for Appointment of a Discovery Master
entered December 6, 2006 at 4, Zeller Dec., Exh. 1.
28

MATTEL'S MOTION RE: BRYANT'S FAILURE TO PRODUCE DESKTOP COMPUTER HARD DRIVE

EXHIBIT ___
PAGE ___ 024

1          description of each such person's knowledge about who was in
           possession of the relevant computers and when and what they did
2          with each hard drive.

3   Without this type of detail, provided in binding, sworn statements, the Court and Mattel

4   will not be able to determine with any confidence the extent of Bryant's non-

5   compliance with the Order and the reasons for his failure to produce a highly critical

6   piece of evidence that Bryant claimed to previously have and has been compelled to

7   turn over but still has not produced.

8

9   **II.    BRYANT SHOULD BE SANCTIONED**

10          Bryant has failed to obey, and continues in his failure to obey, the

11  Discovery Order.  Federal Rule of Civil Procedure 37(b)(2) specifically allows an

12  award of Mattel's expenses and attorney's fees incurred in seeking to enforce the

13  January 27, 2007 Discovery Order.  Fed. R. Civ. P. 37(b)(2) ("In lieu of any of the

14  foregoing orders or in addition thereto, the court shall require the party failing to obey

15  the order or the attorney advising that party or both to pay the reasonable expenses,

16  including attorney's fees, caused by the failure unless the court finds that the failure

17  was substantially justified or that other circumstances make an award of expenses

18  unjust.").  The burden of establishing substantial justification is on the party being

19  sanctioned.  Hyde & Drath v. Baker, 24 F.3d 1162, 1171 (9th Cir. 1994).

20          Here, Bryant has no substantial justification for his failure to obey the

21  Discovery Order.  In fact, his justification--that he apparently does not have what has

22  been ordered to be produced--can only be true if he and his counsel had earlier

23  misrepresented the results or diligence of their search for Bryant's computer hard

24  drives, including most importantly the hard drive for the Desktop.  Sanctions are

25  particularly appropriate here given Bryant's failure to reasonably and timely cooperate

26  with Mattel's efforts to resolve his failure to comply with the Discovery Order

27  compelling production of the Desktop hard drive and his now two-year-long history of

28  obstructing discovery on this issue, among others.  It is only fair that Bryant be required

EXHIBIT ___
PAGE ___ 475

1  to reimburse Mattel for being forced to return to the Discovery Master simply to obtain

2  compliance with an existing discovery Order and to otherwise get to the bottom of his

3  failure to produce crucial pieces of evidence Bryant and his counsel previously

4  represented to the Court and Mattel that they had in hand.

5

6  ### Conclusion

7  For the foregoing reasons, Mattel respectfully requests that the Discovery

8  Master order Bryant to: (1) produce within five calendar days his Desktop computer

9  hard drive for forensic examination in compliance with the January 25, 2007 Discovery

10  Order; (2) or, in the event that the Desktop hard drive is not produced, provide within

11  five calendar days a full and complete accounting under oath.  Mattel also respectfully

12  requests that the Discovery Master award sanctions in the amount of $2,015, which

13  represents a portion of the fees and costs incurred by Mattel in bringing this Motion.

14

15  DATED: April 10, 2007          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

16

17                                 By _Mima T. Z___

18                                    Michael T. Zeller
                                      Attorneys for Mattel, Inc.

19

20

21

22

23

24

25

26

27

28

EXHIBIT ___ 46 ___

PAGE ___ 626 ___

07209/2095442.1

-14-

MATTEL'S MOTION RE: BRYANT'S FAILURE TO PRODUCE DESKTOP COMPUTER HARD DRIVE

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is NOW Messenger Service, 1301 West Second Street, Suite 206, Los Angeles, California 90026.

On April 10, 2007, I served true copies of the following document(s) described as:

**NOTICE OF MOTION AND MOTION OF MATTEL, INC. FOR AN ORDER TO ENFORCE COURT'S JANUARY 25, 2007 ORDER COMPELLING BRYANT TO PRODUCE DESKTOP COMPUTER HARD DRIVE**

on the parties in this action as follows:

| | |
|---|---|
| Keith A. Jacoby, Esq.<br>Littler Mendelson<br>2049 Century Park East, 5th Floor<br>Los Angeles, CA  90067-3107<br>Telephone: (310) 553-0308<br>Facsimile: (310) 553-5583 | |

[√ ]   [PERSONAL] by personally delivering the document listed above to the person(s) at the address(es) set forth above.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made

Executed on April 10, 2007, at Los Angeles, California.

_David Quintana_
David Quintana

-1-

Case No. SACV 05-00953 JVS (ANx)
PROOF OF SERVICE

1

## PROOF OF SERVICE

2        I am employed in the County of Los Angeles, State of California.  I am over the age of
eighteen years and not a party to the within action; my business address is 865 South Figueroa

3    Street, 10th Floor, Los Angeles, California 90017-2543.

4        On April 10, 2007, I served true copies of the following document(s) described as
**NOTICE OF MOTION AND MOTION OF MATTEL, INC. FOR AN ORDER TO**

5    **ENFORCE COURT'S JANUARY 25, 2007 ORDER COMPELLING BRYANT TO
PRODUCE DESKTOP COMPUTER HARD DRIVE** on the parties in this action as follows:

6
         Diana M. Torres, Esq.

7        **O'MELVENY & MYERS, LLP**
         400 S. Hope Street

8        Los Angeles, CA 90071

9    **BY MAIL:**  I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I
deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with

10   postage thereon fully prepaid.

11       I declare that I am employed in the office of a member of the bar of this Court at whose
direction the service was made.

12
         Executed on April 10, 2007, at Los Angeles, California.

13

14

15       _Yalonda J. Dekle_____
         Yalonda J. Dekle

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2081332.1

**EXHIBIT 63**



April 23, 2007

Keith A. Jacoby
Direct: 310.772.7284
Direct Fax: 310.553.5583
kjacoby@littler.com

**VIA HAND DELIVERY**

Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543

Re:   **Bryant v. Mattel**

Dear Mr. Zeller:

As you know, we recently confirmed that the July 2004 "mirror image" of the 20 GB Quantum Fireball LCT 15 hard drive ("July 2004 Mirror Image") retained by this office is indeed the copy of the hard drive from the desktop computer purchased by Carter Bryant in or about October 2000.  Enclosed with this letter is a copy of the July 2004 Mirror Image.

As recounted in his deposition, Mr. Bryant gave the October 2000 computer to his niece, Brooke Lind Gilbert.  We obtained this computer from Ms. Gilbert on April 19, 2007. In accordance with Discovery Master Infante's ruling, we hereby make this computer and its hard drive immediately available to Mattel's expert for forensic examination in our offices. Please contact and apprise me of the identity of your expert so we can make the appropriate arrangements.

In light of the foregoing, Mattel's motion to compel the production of said hard drive is moot.  We expect that you will immediately contact Discovery Master Infante and withdraw the motion.

All of Mr. Bryant's rights and remedies are hereby reserved, including the right to seek further relief concerning the appropriate manner of inspection and disposition of the Compaq Presario laptop computer hard drive, and all other hard drives in Mr. Bryant's possession, custody or control.

EXHIBIT ___62___

PAGE ___629___

Michael T. Zeller
April 23, 2007
Page 2


If you have any questions concerning the foregoing, please do not hesitate to contact me.

Sincerely,

Keith A. Jacoby

encl.

KAJ:rpe

Firmwide:82358948.1 028307.1010


EXHIBIT _____ 62
PAGE _____ 630

**EXHIBIT 64**

CONFORMED

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2    John B. Quinn (Bar No. 090378)
     (johnquinn@quinnemanuel.com)
3    Michael T. Zeller (Bar No. 196417)
     (michaelzeller@quinnemanuel.com)
4    Susan Wines (Bar No. 168643)
     (susanwines@quinnemanuel.com)
5    865 South Figueroa Street, 10th Floor
     Los Angeles, California 90017-2543
6    Telephone: (213) 443-3000
     Facsimile: (213) 443-3100
7
   Attorneys for Mattel, Inc.
8

FILED
2007 MAY -2  AM 3:08
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE
BY

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

| | |
|---|---|
| 11 CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12              Plaintiff, | Consolidated with |
| 13     vs. | Case No. CV 04-09059 |
| 14 | Case No. CV 05-02727 |
| MATTEL, INC., a Delaware | **DISCOVERY MATTER** |
| 15 corporation, | |
| 16              Defendant. | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order Of December 6, 2006]** |
| 17 | |
| 18 AND CONSOLIDATED ACTIONS | MATTEL, INC.'S NOTICE OF WITHDRAWAL WITHOUT PREJUDICE OF MOTION FOR AN ORDER TO ENFORCE COURT'S JANUARY 25, 2007 ORDER COMPELLING BRYANT TO PRODUCE DESKTOP COMPUTER HARD DRIVE |
| 19 | |
| 20 | |
| 21 | |
| 22 | [Declaration of Michael T. Zeller filed concurrently herewith] |
| 23 | |
| 24 | Hearing Date: TBA |
| 25 | Time: TBA |
| | Place: TBA |
| 26 | Discovery Cut-off: October 22, 2007 |
| 27 | Pre-trial Conference: January 14, 2008 |
| | Trial Date: February 12, 2008 |
| 28 | |

EXHIBIT ___
PAGE ___

07209/2111893.1

MATTEL'S NOTICE RE: BRYANT'S FAILURE TO PRODUCE DESKTOP COMPUTER HARD DRIVE

1    Rejecting Bryant's many months of refusals and failures to produce key
2    discovery in this case -- including documents relating to the origins of Bratz -- the
3    Discovery Master granted Mattel's motion to compel by Order dated January 25, 2007.
4    The Order required Carter Bryant to produce, among other highly pertinent
5    information, his computer hard drives no later than February 23, 2007. One such hard
6    drive was the desktop computer that Bryant had purchased in October 2000 (the
7    "Desktop") -- the same month Bryant left Mattel's employment.  As he testified at
8    deposition, Bryant used this computer for business purposes, including to communicate
9    with and perform work with MGA on Bratz.

10    Bryant requested, and Mattel agreed, to extend the date for Bryant's
11    compliance with the Discovery Master's January 25 Order up to and including March
12    16, 2007. Within two days of Mattel's professional accommodation, however, Bryant
13    began giving a series of conflicting accounts about the Desktop hard drive, including
14    assertions that were at odds with the sworn declarations Bryant had submitted to Judge
15    Block and then the Discovery Master about the Desktop and Bryant's alleged
16    preservation and review of it.[1]  Most troubling, on April 4, 2007, Bryant's counsel
17    suggested for the first time that they in fact did not know the whereabouts of the
18    compelled Desktop hard drive after all.  They stated that either the representations
19    Bryant and his counsel had earlier made to the Court and Mattel were "wrong" -- and
20    that the drive had never been retrieved or reviewed as Bryant had earlier claimed -- or
21    that they simply are "not sure" about their accuracy.[2]

22    ————————————————
23    [1]    Bryant and his counsel repeatedly represented not only that they had the
      Desktop in hand, but that they had searched the drive for responsive documents but
24    found none.  Typical of Bryant's claims on this score was his November 1, 2004
      letter claiming that the Desktop "has been retrieved and searched for responsive
25    documents, and none have been located."
26    [2]    After the January 25 Order, Bryant also admitted that he had been
27    withholding, since almost the beginning of this suit, a hard drive from a laptop he
      used.  This was the first time Bryant's counsel disclosed that Bryant had this hard
28    (footnote continued)

EXHIBIT ___ PAGE ___

1    Over the course of more than two weeks, both orally and in letters,
2  Mattel's counsel repeatedly asked for clarification about the status of the Desktop hard
3  drive and requested that Bryant either produce the drive or explain the factual
4  particulars regarding its non-production.   Having received neither the Desktop hard
5  drive nor a substantive response from Bryant to these requests for further information,
6  Mattel then filed its present motion to enforce the January 25 Order and for other relief
7  on April 11, 2007.

8    All of the foregoing facts were evidenced in detail on Mattel's motion, and
9  Bryant's response here tellingly denies none of them. After Mattel had filed its motion
10  to enforce, another two weeks passed with nothing further from Bryant in connection
11  with the Desktop hard drive. On the day before Bryant's response was due, Bryant's
12  counsel sent a letter belatedly offering for the first time to make the Desktop hard drive
13  available to Mattel.[3] Mattel arranged for and imaged a hard drive that Bryant's counsel
14  provided on Friday afternoon, April 27, 2007.[4]

15    Bryant allowed Mattel to image a single drive only this past Friday
16  afternoon -- some five weeks after the Order's deadline for Bryant to do so and some

17

18  drive in his possession, let alone that he had been withholding it from Mattel since
19  2004.  Indeed, this revelation was contrary to his prior representations to the Court
   and the Discovery Master that he had located *only* the Desktop.  Despite being
20  required to do so by the January 25 Order, Bryant still has not produced this laptop
21  hard drive to date.
     [3]  Although it was Bryant who flouted the January 25, 2007 Order for some six
22  weeks and who fails to provide any explanation for his conduct in his opposition,
   Bryant's opposition spuriously accuses Mattel of "gamesmanship" and "bad faith"
23  for not responding within a day to his unilateral demand that this motion be
24  withdrawn even before Bryant had complied with the Order by actually providing
   the drive to Mattel.  Bryant's rhetoric is all the more groundless given that, as he
25  knew, Mattel's counsel was in a deposition on that day and thus could not respond as
26  quickly as Bryant demanded.  See Declaration of Michael T. Zeller, dated May 1,
   2007 and filed concurrently herewith, Exh. 1.
27   [4]  Id., ¶ 2 & Exh. 1.
28

PAGE ___ EXHIBIT ___ 633

1   three months after the Discovery Master's January 25, 2007 Order. Mattel has not yet

2   been able to confirm that the drive Bryant's counsel provided on Friday was in fact

3   from the Desktop. Based on the fact that Bryant has finally provided for imaging a

4   hard drive that Bryant's counsel represents is the compelled Desktop hard drive,

5   however, Mattel hereby withdraws its current motion to enforce without prejudice. It is

6   regrettable, to say the least, that it took two motions to compel, an Order by the

7   Discovery Master, yet more lengthy meet and confers after Bryant failed to comply

8   with the Order and then a motion to enforce for Bryant to decide that he would produce

9   plainly relevant discovery such as the Desktop hard drive. Obviously, serious issues

10  also remain open with respect to the integrity of the Desktop drive that Bryant belatedly

11  produced, particularly given Bryant and his counsel's conflicting representations about

12  its custody, preservation and handling. Among other things, Bryant now admits in his

13  opposition here that he did not even obtain it until April 19, 2007 -- a revelation that at

14  a minimum calls into question the veracity of Bryant's earlier representations to the

15  Court and the Discovery Master that he had secured the drive and "extensively"

16  reviewed it for responsive materials in 2004 and raises issues about what has been done

17  to the hard drive in the interim. Mattel reserves the right to bring a separate motion to

18  address such matters as appropriate.

19

20

21  DATED: May 1, 2007                QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
22

23

24                                    By  _Mine T. 3~_____
                                          Michael T. Zeller
25                                        Attorneys for Mattel, Inc.

26

27

28

EXHIBIT ___

PAGE ___ 634

**EXHIBIT 65**

DOUGLAS A. WICKHAM (S.B.   27268)
KEITH A. JACOBY (S.B. #150233)
LITTLER MENDELSON
A Professional Corporation
2049 Century Park East, 5th Floor
Los Angeles, CA 90067
Tel: (310)553-0308/Fax: (310)553-5583

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MATTEL, INC., a Delaware corporation | Plaintiff(s) | **CASE NUMBER**<br>CV 04-9049 SGL (RNBx)<br>consolidated with CV 04-9059 & 05-2727 |
| v. | | |
| CARTER BRYANT, an individual | Defendant(s) | **REQUEST FOR APPROVAL OF**<br>**SUBSTITUTION OF ATTORNEY** |

Carter Bryant

*Name of Party*

☐ Plaintiff ☒ Defendant ☐ Other  Counter-defendant

hereby request the Court approve the substitution of John W. Keker, Keker & Van Nest, LLP

*New Attorney*

as attorney of record in place and stead of Littler Mendelson, P.C.

*Present Attorney*

Dated   5/14/07

*Signature of Party/Authorized Representative of Party*

I have given proper notice pursuant to Local Rule 83-2.9 and further consent to the above substitution.

Dated   5/17/07

*Signature of Present Attorney*

I am duly admitted to practice in this District pursuant to Local Rule 83-2.

Dated   5/16/07

*Signature of New Attorney*   MICHAEL PAGE KEKER & VAN N

154913

*State Bar Number*

If party requesting to appear Pro Se:

Dated _____

*Signature of Requesting Party*

**NOTE:** COUNSEL AND PARTIES ARE REMINDED TO SUBMIT A COMPLETED *ORDER ON REQUEST FOR APPROVAL OF SUBSTITUTION OF ATTORNEY* (G-01 ORDER) ALONG WITH THIS REQUEST.

G-01 (03/06)     REQUEST FOR APPROVAL OF SUBSTITUTION OF ATTORNEY     American LegalNet, Inc.
www.USCourtForms.com
05|18|c7

EXHIBIT ___US___

PAGE ___635___

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 2049 Century Park East, 5th Floor, Los Angeles, California 90067.3107. On May 17, 2007, I served the within document(s):

## REQUEST FOR APPROVAL OF SUBSTITUTION OF ATTORNEY

[X]     by placing a true copy of the document(s) listed above for collection and mailing following the firm's ordinary business practice in a sealed envelope with postage thereon fully prepaid for deposit in the United States mail at Los Angeles, California addressed as set forth below.

John Quinn, Esq.
Michael Zeller
Quinn Emanuel Urquhart
 Oliver & Hedges, LLP
865 South Figueroa Street,
10th Floor
 Los Angeles, CA 90017-2543

John W. Keker, Esq.
Keker & Van Nest, LLP.
710 Sansome Street
San Francisco, CA 94111

Diana M. Torres, Esq.
James Jenal, Esq.
O'Melveny & Myers LLP
400 S. Hope Street
Los Angeles, CA 90071

Patricia Glaser, Esq.
Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067

I am readily familiar with the firm's practice of collection and processing correspondence for mailing and for shipping via overnight delivery service. Under that practice it would be deposited with the U.S. Postal Service or if an overnight delivery service shipment, deposited in an overnight delivery service pick-up box or office on the same day with postage or fees thereon fully prepaid in the ordinary course of business.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on May 17, 2007, at Los Angeles, California.

Julie Contreras

Firmwide:82485216.1 028307.1010

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

PROOF OF SERVICE

EXHIBIT ___65___

PAGE ___636___

**EXHIBIT 66**

RightFAX                    8/  /2006 3:02   PAGE 002/019   Fax Server

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED - EASTERN DIVISION
CLERK, U.S. DISTRICT COURT

AUG 1 0 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT,

                    Plaintiff,

v.

MATTEL, INC.,

                    Defendant,

and related actions.

CASE NO.  CV 04-9049 SGL (RNBx)

(Consolidated with cases CV-04-9059 and CV-05-2727)

ORDER DENYING MOTION FOR APPOINTMENT OF EXPERT WITNESSES

Presently before the Court is Mattel, Inc.'s ("Mattel") motion for the appointment of expert witnesses pursuant to Federal Rule of Evidence 706, Carter Bryant and MGA Entertainment, Inc.'s ("MGA") opposition and response thereto, and Mattel's reply.  For the reasons set forth below, the Court **DENIES** the motion for the appointment of expert witnesses.

Federal Rule of Evidence 706(a) provides

> The court may . . . on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations.  The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witness of its own selection.  An expert witness shall not be appointed by the court unless the witness consents to act.

DOCKETED ON CM

AUG 1 1 2006

BY                          044

EXHIBIT ___64___

PAGE ___637___

A witness so appointed shall be informed of the witness'
duties by the court in writing, a copy of which shall be filed
with the clerk, or at a conference in which the parties shall
have opportunity to participate.

The appointment of an expert by a federal court is a rare occurrence. Much of
this stems from a concept "[d]eeply ingrained" in the common law "that it is the
responsibility of the parties to produce the evidence while the court looks on to assure
that the rules are followed." 4 JOSEPH M. MCLAUGHLIN, WEINSTEIN'S FEDERAL EVIDENCE
§ 706.02[1], at 706-6 (2nd ed. 2006). The reluctance of courts to intrude into the
evidence-gathering function normally assigned to counsel is borne out of "the fear of
ex parte communications between the court and its expert," as well as the
unseemliness of "[c]ollecting a share of the expense [for the work performed by the
court appointed expert] from a party who has been damaged by the expert's report."
Id. at 706-6, 706-7. As a result of these institutional concerns, "experts are usually
appointed only in exceptional cases that present unwieldy, complex, or technical
issues" or where "there is a need for an impartial, independent assessment of a
disputed issue." Id. § 706.02[3], at 706-8 706-9.

Here, Mattel seeks for the court to appoint experts in the fields of questioned
document examination, ink chemistry analysis, and paper chemistry analysis in order
to "analyze and date (1) the originals of 'BRATZ' design drawings, (2) the faxed-
version of the BRATZ-related contract between . . . Carter Bryant and MGA
Entertainment, Inc., (3) MGA's internal documents relating to work performed by Anna
Rhee on Bryant-related projects in the year 2000, and (4) a facsimile of BRATZ
drawings bearing a fax header date of April 10, 2000," as well as "(5) any other
documents that cannot be sampled or tested without destroying the sample tested or
analyzed." (Mattel's Mot. Appt. Expert, Preface at 2). The reason proffered for such
an appointment is two-fold: First, a generalized concern that, because the documents
sought to be examined are "highly relevant" to the litigation, having a neutral expert
perform the testing on the same may obviate a battle of the experts that would make

EXHIBIT ___ 66

PAGE ___ 638

1    the jury's function of sorting out the truth much more arduous; and second, concerns,

2    deduced during discovery, about the possible spoliation of key documents in the case

3    by MGA/Bryant and their counsel.

4    A.    **AVERTING A BATTLE OF THE EXPERTS**

5          Mattel's argument that the Court should appoint an expert because otherwise

6    each side will perform "separate, partisan destructive analyses of separate samples of

7    the documents" with "wide divergence" of opinion "virtually assured" is not well-

8    founded. (Mattel's Mot. Appt. Expert at 18, 20). Explicit in Mattel's argument is that

9    this feared divergence in each side's retained expert's opinions has yet to materialize.

10   This is not surprising as it appears that discovery in this case is in its nascent stage,

11   owed largely to the fact that the Court had earlier stayed the case while Mattel

12   appealed the denial of its motion to remand the case to state court.  Mattel's argument

13   instead is that the Court should appoint an expert now to avoid the possibility that

14   there may be such wide divergence in each side's privately retained expert in the

15   future.  Needless to say from the jabs each party took at the credibility and even

16   trustworthiness of the other side's retained expert during the oral argument on this

17   motion (one going so far as to label the competing ink chemistry experts as being the

18   modern day equivalent of one's Hatfield to the other's McCoy), such a possibility may

19   be more easier to imagine occurring here than in ordinary cases.  Nevertheless, such

20   divergence, even if likely, is still that – a possibility, not an inevitability.

21         In those cases where an expert has been appointed by a court on account of

22   the excessive partisanship in the expert opinions retained by counsel, the rationale for

23   the appointment was based on the fact that the feared wide divergence in opinion had

24   already materialized.  See Students of California Sch. for the Blind v. Honig, 736 F.2d

25   538, 548 (9th Cir. 1984)("the judge could not decide the merits of the students' seismic

26   safety claims on the basis of evidence presented at trial, so he reopened the case and

27   appointed a neutral expert to evaluate the adequacy of seismic testing at the Fremont

28   site"), vacated on other grounds, 471 U.S. 148 (1985); Eastern Air Lines, Inc. v.

3

EXHIBIT ___64___

PAGE ___639___

1   <u>McDonnell Douglas Corp.</u>, 532 F.2d 957 (5th Cir. 1976); 4 WEINSTEIN § 706App.100 at

2   706App.-5 (noting that legal commentators' "imprecations against the parties' 'battle of

3   experts'", not the potential for such a battle, "led to the drafting of the Uniform Expert

4   Testimony Act in 1937," the precursor to Federal Rule of Evidence 706).

5         In no instance uncovered by the Court's research (or by Mattel's citation to

6   authority) has a court appointed an expert because of a fear, even one that is well-

7   founded, that such wide divergence in privately-retained expert testimony <u>may</u>

8   materialize in the future.  Were the Court to adopt Mattel's analysis, appointment of

9   experts by courts would expand exponentially, limited only by a court's assessment of

10  how partisan the experts in a given case may become in the future.  Such a

11  proliferation has not occurred precisely because courts generally require that the

12  divergent "horse" be placed before the expert witness "cart."  <u>See</u> FED. R. EVID. 706

13  advisory committee's note ("actual appointment is a relatively infrequent occurrence").

14  Unless and until this feared divergence in opinion becomes reality, the Court finds that

15  the potential (which itself cannot be quantified at this point) for its occurrence does not

16  warrant the Court's intrusion into the adversarial process through the appointment of

17  an expert at this stage.

18  B.    <u>SPOILATION OF EVIDENCE</u>

19        The question is much closer with respect to Mattel's other reason for the Court

20  to appoint an expert in this case:  Concern that opposing counsel or their clients may

21  have destroyed or altered key documents in the case.  Mattel's basis for such concern

22  is predicated on three facts uncovered during discovery.

23        1.    <u>Evidence of spoilation</u>

24        Before being deposed Bryant was asked to bring all his original BRATZ design

25  drawings.  When he arrived at his deposition, however, Bryant only had in his

26  possession a few of the originals. (Decl. Michael T. Zeller ¶ 13).  Among these some

27  "contained holes where plugs apparently had already been removed.  Bryant

28  acknowledged . . . that his drawings had no holes in them when he gave them to his

EXHIBIT ___UU___                    4

PAGE ___640___

1    lawyers." (Mattel's Mot. Appt. Expert at 2; see also Decl. Michael T. Zeller ¶ 14).

2    Specifically, at Bryant's deposition the following exchange took place between Bryant

3    and counsel for Mattel:

4              Q.    (By Mr. Quinn) I wanted to ask you about one of
                     these original drawings that were produced today.
5
                                   . . . .
                     – what we're talking about here. This is – the Post-it
6                    says that's Bryant – that's the original of Bryant
                     192, Bates number 192, which has the heads on it,
7                    and this is one of the originals that your counsel was
                     kind enough to have shipped here today for us to
8                    look at.

9              A.    Yes

10             Q.    And we were just looking at these this afternoon and
                     we notice[d] that there's a bunch of holes on the
11                   page, including in the signature, as if somebody
                     were taking ink samples.
12
               A.    Uh-huh.
13
               Q.    Do you see that?
14
               A.    Yes.
15
               Q.    Do you know anything about why those holes were
16                   made or how or when?

17             A.    I have no idea what those are.

18             Q.    I mean, when you had – when you had possession
                     of this document did it have those holes in it?
19
               A.    Not that I remember.
20
               Q.    You certainly never had anything to do with that?
21
               A.    No. I don't know anything about those holes.
22
               Q.    And, similarly, if you wouldn't mind holding this up to
23                   the camera, this is the original of Bryant 210 and it's
                     also – if you take a look at it, I think you'll see it has
24                   some of those holes in it, although not as many as
                     the last one we looked at. Again, you don't know
25                   anything about how or why those holes got put on
                     there?
26
               A.    I don't.
27

28   (Decl. Michael T. Zeller, Ex. 7 at 161-163).

                                        5

EXHIBIT ___64___

PAGE ___641___

1       Mattel has submitted the declaration of a questioned document analysis expert,

2   Lloyd Cunningham, who has opined that the holes described in the document

3   mentioned above are consistent with those that would be generated by taking

4   microplug samples to perform analysis of the ink found on a document. (Decl. Lloyd

5   Cunningham ¶ 5). Bryant and MGA eventually conceded (although at first refusing to

6   do so under the veil of work-product privilege) that they tested some of the original

7   BRATZ drawings by an expert they retained in the field of forensic chemistry, Erich J.

8   Speckin. (Response to Order to Show Cause ("Response") at 1-2).

9       Mr. Speckin states that in June, 2004, he performed a series of tests "on

10  various 'Bratz' documents" at the request of MGA's counsel.[1] (Decl. Erich J. Speckin

11  ¶ 8). Those tests included examining the documents in question under an infrared

12  light as well as performing sidelight testing, which involves "visually inspecting a

13  document by holding a side light up to the document at an oblique angel . . . to

14  determine preliminarily whether the document contains impressions, or markings

15  impressed upon the document by drawing and writing done on a sheet of paper laid

16  on top of the document being tested." (Decl. Erich J. Speckin ¶¶ 9, 10). Mr. Speckin

17  also performed an electrostatic detection apparatus to see if there was indented

18  impressions on the documents. (Decl. Erich J. Speckin ¶ 11). Finally, Mr. Speckin

19  "performed ink identifications tests" on the documents. (Decl. Erich Speckin ¶¶ 12-

20  13). Such testing involved Mr. Speckin removing "very small microplug samples from

21  the document at issue and testing the microplug." (Decl. Erich Speckin ¶13).

22  Nowhere is it averred by MGA, Bryant, or Mr. Speckin which or how many of the

23  original BRATZ drawings were subjected to this microplug sampling procedure, nor is

24  it averred from what parts of the documents that were tested was the microplug taken.

25  Instead, Mr. Speckin simply notes that in taking the microplugs he "le[ft] more than

26

27      [1] At the time the testing was done by Mr. Speckin, Bryant had already been

28  sued by Mattel for violating the terms of the invention agreement he signed when he
    worked for them from 1999 to 2000. (Response at 1).

6

EXHIBIT   64

PAGE   042

1   sufficient material for another expert to test the exact same <u>documents</u>," but admits

2   that "another expert cannot test the very same microplug that I tested . . . ." (Decl.

3   Erich J. Speckin ¶14).

4        Another episode brought to light during discovery causing Mattel concern

5   relates to MGA's handling of the original Bryant/MGA contract before the inception of

6   the instant litigation. At the deposition of a former MGA executive, Victoria O'Connor,

7   testimony was elicited that O'Connor, "on explicit instructions of MGA's [CEO] Isaac

8   Lariam, . . . [made] redact[ions from] the fax header . . . on the BRATZ contract

9   between Bryant and MGA for the year 2000 to conceal the fact that Bryant sent the

10   contract from Mattel's Design Center while he was still employed at Mattel." (Mattel's

11   Mot. Appt. Expert at 3). O'Connor's deposition appears to indicate that such alteration

12   occurred before the present litigation began (indeed, perhaps even before MGA

13   marketed the BRATZ doll).

14       Q.   . . . Was there ever anything that you were asked to
               do that you -- made you feel kind of uncomfortable?

15

16       A.   Yes.

                        . . . .

17       Q.   And what was that?

18       A.   When the original contract was executed by Carter
               Bryant, it was sent to me <u>via</u> fax, and on the top of

19            the fax listed the phone number from where it was
               faxed, which said "Barbie Collectibles," and at one

20            point my boss, Isaac Larian, asked me to white that
               out and send it to a lawyer, Patty Glaser.

21

22   (Decl. Michael T. Zeller, Ex. 19 at 306). Upon further examination, however,

23   O'Connor stated that she did not participate in or have knowledge of any other

24   instances in which any other agreement between Bryant and MGA was directed to be

25   altered:

26       Q.   Were you ever asked to change the date on any
               agreements between Mr. Bryant and MGA?

27

28       A.   No.

EXHIBIT   46

PAGE   443

1    Q.    Are you aware of anybody being asked to change
           the date on any of those agreements?

2    A.    No.

3    Q.    I mean, do you have any reason to believe that any
           agreement that was entered into between Mr. Bryant
4          and MGA had a date altered or changed?

5    A.    No.

6    Q.    You never heard that from – from any source?

7    A.    No.

8

9    (Decl. Paula E. Ambrosini, Ex. 3).

10        Finally, Mattel speculates that a drawing of some BRATZ doll accessories

11   faxed on April 10, 2000, had the fax header altered, much in the same manner

12   described in O'Connor's testimony vis-à-vis the MGA/Bryant faxed contract, as the

13   fields on the fax header for the sender's name and the sender's telephone number are

14   missing.  (Decl. Michael T. Zeller ¶ 23 & Ex. 24).[2]  As explained by Mattel, "Because

15   _____

16        [2] Mattel speculates that the time sheets produced by MGA for one of its
     employees, Anna Rhee (who did doll face painting work for the BRATZ mock-up), from
17   "mid-to-late 2000" were altered or recently created by MGA to show that Rhee worked
     on projects called "Angel" or "Prayer Angel," when in fact she was working at the time
18   painting faces for BRATZ dolls at the direction of Bryant.  (Mattel's Mot. Appt. Expert at
     3).  The basis for this speculation is based on the fact that the initial disclosure by MGA
19   of Rhee's time sheets comprised only 8 pages.  (Decl. Michael T. Zeller ¶ 20).  Then,
     on January 7, 2005, Rhee produced 20 separate invoices of her work at MGA during
20   mid-to-late 2000, indicating that Rhee performed work for MGA prior to Bryant's
     departure from Mattel, most notably on June 12, 2000.  (Decl. Michael T. Zeller ¶ 21).
21   Within a couple of weeks after Rhee's production of invoices to Mattel, MGA
     supplemented its earlier production of Rhee's time sheets showing that during the mid-
22   to-late 2000 period Rhee was working on a MGA project known as "Angel" or "Prayer
     Angels" and was not involved in any BRATZ-related work until after Bryant's departure
23   from Mattel.  (Decl. Michael T. Zeller ¶ 22).  Mattel's surmise that the supplemental time
     sheets were altered is allegedly bolstered by the fact that Rhee testified during her
24   deposition that the only work she performed in mid-to-late 2000 was on BRATZ and
     that the supplemental time sheets reference to the "Angel" and "Prayer Angel" was
25   nothing but a cover or code word for BRATZ-related work.  This argument is hard to
     accept.  First, even the invoices Rhee turned over to Mattel contain the phrase "Angel"
26   for the mid-2000 project she worked on.  (Decl. Michael T. Zeller, Ex. 22 at 356-60,
     362).  It is not until December, 2000, that any of the invoices submitted by Rhee show
27

28

8

1    facsimile machines normally insert senders' names and numbers as a matter of

2    course, and indeed is required by law [to do so], it appears likely that the document

3    was altered to conceal the sender's information.  See 47 U.S.C. § 227(d)(1)(B)."

4    (Mattel's Mot. Appt. Expert at 10).  The premise underlying Mattel's concern on this

5    topic is not unreasonable.  The law requires such information to be found on any

6    document, like the one in question, that has been faxed.  Additionally, the testimony

7    elicited from Ms. O'Connor that MGA altered the fax header for other documents

8    related to BRATZ from the same time period leads to an obvious inference that other

9    documents where spaces on other fax headers are absent suffered a similar fate.

10        2.    Analysis

11            a.    Microplug Ink Testing

12        Bryant and MGA begin by downplaying the significance of the spoliation issue

13    in this case.  With respect to the holes on some of the original BRATZ design

14    drawings produced at Bryant's deposition, they note that, even with these holes,

15    nothing prevents Mattel from performing its own testing on the remaining portions of

16    the drawings on the document.  "Indeed, the very fact that Mattel is asking for court-

17    appointed experts to perform ink and paper testing only underscores the fact that

18    nothing has been 'destroyed.'" (Joint Opp. at 2).  Mr. Speckin makes similar assertions

19    in his declaration, stating that the fact that the same microplug cannot be tested "is

20    entirely irrelevant because there is more than enough ink on each of the documents I

21    tested to allow numerous microplug samples to be extracted and tested by different

22    experts."  (Decl. Erich J. Speckin ¶ 14 (emphasis added); see also Response at 5-6

23    ("While another expert cannot test the very same microplug that Mr. Speckin tested,

24

25   ─────────────────

     her doing work on the BRATZ doll, well after Bryant had left Mattel.  (Decl. Michael T.
26   Zeller, Ex. 21 at 367, 370, 373).  To accept Mattel's argument, not only would MGA
     have had to alter the invoices it produced in the supplemental production, but the
27   documents produced by Rhee would also have to be similarly altered.  An alternative
     and just as plausible explanation is that Rhee is simply mistaken as to when she began
28   performing work on the BRATZ project.

                                          9

EXHIBIT _____ 64

PAGE _____ 645

1   that fact is entirely irrelevant because, unlike in a situation where the entire object is

2   destroyed during the testing, there is more than enough ink on each of the documents

3   Mr. Speckin tested to allow numerous microplug samples to be extracted and tested"

4   (emphasis added))).  This argument is not persuasive.  This is not a case where

5   everyone concedes that the documents in question were created at one point in time,

6   but dispute what that date may have been.  In such a circumstance all the ink

7   markings on the documents are comparable to one another as it is conceded that all

8   the marks came from one point in time.

9       Here, however, it is Mattel's theory that Bryant made drawings in 1998 and then

10   periodically touched up or made refinements/additions to those drawings, adding more

11   marks in 1999 and 2000 during the time he was employed by Mattel.   An ink mark

12   from one part of the document is not necessarily comparable to another set of ink

13   markings found elsewhere on the document.  One ink mark on a drawing could have

14   been made in 1998, for example, while another ink mark found on the same drawing

15   could have been put there sometime later.  In taking microplug samples from one of

16   these ink markings without the ability of the other side to test the same mark would

17   forever foreclose a potential avenue of crucial evidence in this case.  It is on that point

18   that taking microplug samples of the marks on these drawings is akin to the spoilation.

19   Therefore the fact that another expert could test other parts of the document does not

20   mean that key relevant evidence found on that document has not been destroyed.  As

21   MGA and Bryant make clear spoilation of evidence occurs through the "destruction or

22   significant alteration of evidence, or the failure to preserve property for another's use

23   as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire &

24   Rubber Co., 167 F.3d 776, 779 (2nd Cir. 1999).[3]

25       At this point, it should not be lost that the documents in question are not

26   _____

27   [3] The Court does not mean to suggest that Mattel's theory is correct.  Instead,
    the Court simply notes this theory as refuting MGA and Bryant's argument that only the
28   complete destruction of a document would amount to spoilation under the particular
    circumstances in this case.

10

EXHIBIT ___ 64

PAGE ___ 647

1   peripheral to the case.  At its heart, this case asks the question:  Who owns the rights

2   to the Bratz dolls?  Bryant asserts that he came up with the idea for the Bratz dolls

3   while on a break from his employment at Mattel in 1998, and that he sold his idea to

4   MGA when he went to work for them in October, 2000.  Mattel claims, among other

5   things, that Bryant "developed" or "continued to develop" his idea for Bratz dolls while

6   he was working for them from January, 1999, to October, 2000, and that pursuant to

7   an inventions agreement he signed with the Mattel when he went to work for them,

8   that idea now belongs to Mattel.  As this clash of factual contentions makes clear, the

9   dating of the original BRATZ drawings and the markings contained thereon is a

10  fundamental, perhaps despositive, issue to this case.  That there are serious

11  questions concerning the handling of these critical documents certainly causes the

12  Court much concern about whether the truth seeking functions of the adversarial

13  system have been fundamentally compromised in this case.  As Mattel rightly notes,

14  "The adversarial process is not an end in itself; its value is in its ability to promote a

15  search for truth."  (Mattel's Reply at 9).

16          Bryant and MGA concede that the sections that were holed out contained

17  markings, be they handwritten dates or other words or letters, that may be crucial to

18  the case.  Indeed, one of the drawings – Bryant 192 – had a portion of the signature

19  line sampled.  What is left unclear is whether, for those portions of the document

20  where ink or signatures were sampled, enough of the same part of the document in

21  question (meaning the same mark) remains to be sampled by Mattel.  For instance, is

22  there enough of the signature line from Bryant 192 left to sample, or has too much of it

23  already been sampled?  In that sense, MGA's and Bryant's argument that nothing has

24  been destroyed by the microplug testing procedure because other parts of the

25  document still exist is misplaced.  Indeed, MGA and Bryant later admit that the

26  circumstances allowing for "multiple experts [to] remove multiple microplugs and test

27  the exact same paper and ink" is dependent upon there being the same exact paper

28  and ink there to test.  (Joint Opp. at 15 ("[a]s long as there is paper and ink to test")).

11

EXHIBIT ___ UY

PAGE ___ 648

1   The continued existence of the "exact same pen stroke" is the very issue that is now

2   left open because of the holes in some of Bryant's original BRATZ design drawings.

3   Is there anything left of that exact same pen stroke that was sampled by Mr. Speckin

4   remaining on the original drawing for Mattel to test?  None of these questions have

5   been addressed by MGA, Bryant, or Mr. Speckin in their papers.  Instead, they simply

6   make the observation that there remain other ink markings on the same drawings for

7   Mattel to test, a reason which, as explained above, is wholly insufficient to assure the

8   Court that Mattel has not been prejudiced by MGA's actions.

9        Given the absence of any representation by them on this point, the Court

10  pressed MGA's counsel about the same at oral argument:

11        THE COURT:  And part of your argument is that
     while a small portion of the small portion of the page may
12   be gone, as you in your most recent papers concede is
     gone, there are other portions of the page that can be
13   tested.  The concern I have, I guess – and maybe you can
     clear this up for me – I've seen some of the drawings and I
14   have a pretty good mental image of what the drawings look
     like.  But there is also writing on these drawings,
15   signatures, copyright registration indications; some are
     large, some are small.  As I gather from the plaintiff, from
16   Mattel, the concern is that these different drawings or
     writings were done at different times.  And I guess I can
17   understand why when those drawings or writings were
     done could be significant from an evidentiary standpoint.
18   So the concern is not so much there's another part of the
     paper that can be tested; it's whether or not the particular
19   marking in question has been so damages as to not permit
     a full further testing on that particular marking.  Does my
20   question make sense?

21        MS. CENDALI:  Yes, it does, your Honor.  And I
     anticipated that.  Significant, we thought, in their papers
22   was that . . . they cited to the fact that Mr. Bryant admitted
     in his deposition that there were holes in some of the
23   documents that he didn't know how they got there
     originally.  As an example, if you look at part of Zeller,
24   Exhibit 17, Bates number Bryant 201, that's an example of
     one of the documents that's been tested.
25
         THE COURT:  One second so I have that in front of
26   me.  Okay.

27        MS. CENDALI:  There are many many others that were
     submitted that were also submitted to this type of ink
28   testing, but this is just an example of one of them.  And if

EXHIBIT ___44___                12

PAGE ___649___

RightFAX                 8/ /2006 3:02    PAGE 014/019   Fax Server

1    you look at the document, you would never know --
     granted, this is smaller, so the actual drawing is even larger
2    than this, so there's even more ink on the larger drawing
     than there would be available on this reproduction size.
3
         But if you look at it -- and I'll represent to you that we
4    didn't test the face; the face is absent before and after the
     testing -- but if you look at it, you couldn't even see that
5    there were any pin pricks to it. If you look very, very
     carefully at the signature at the bottom, you can maybe see
6    where it says "Ramona Prints, 8-26-99"; that maybe there
     was like a little tiny hole in one of the little slash marks; that
7    was a teeny little pin prick hole that showed the testing .
     There's ample amount of ink to do the testing on all of
8    these documents. This is the normal course of procedure
     that was done.
9
10       When asked by the Court whether it accepted MGA's representation that there

11   was "ample amount of ink" left on the same marks that the microplugs were taken

12   from for further microplug testing, Mattel, in seeming contradiction to its position in its

13   papers, said it did: "I agree with Ms. Cendali. We do not maintain any portion of the

14   ink on a signature or an image has been so obliterated that you couldn't take a plug

15   now on any of it; that's not our point." (Emphasis added).

16       In light of this concession by Mattel, the Court finds that no colorable claim of

17   spoliation has been established at this time vis-à-vis Mr. Speckin's testing of the

18   documents to warrant the appointment of an expert by the Court to investigate the

19   same. See Sedrati v. Allstate Life Ins. Co., 185 F.R.D. 388, 393 (M.D. Ga.

20   1998)(sanction warranted where because "defendant's expert has conducted

21   destructive tests on the original documents," plaintiff's expert "cannot duplicate the

22   conditions of the original documents"). If there was any evidence indicating that MGA,

23   Bryant, or their counsel had engaged in acts that could compromise Mattel's ability to

24   discover crucial information in this case, the Court would be sympathetic to the

25   appointment of an expert to investigate the same. Here, no such evidence exists.

26   The tests done by Mr. Speckin have not left the marks that were micro-sampled or the

27   documents that were handled so compromised that Mattel cannot perform the exact

28   same tests on those exact same marks as performed by Mr. Speckin.

                                    13

EXHIBIT __66__

PAGE __650__

1   Indeed, the only basis for spoliation that Mattel has left to argue – that the

2 passage of time has left the ability to perform any meaningful ink testing at this time

3 problematic – is an argument that has nothing to do with MGA's conduct, but much

4 more with Mattel's own dereliction.  As the Court understands it, the process of dating

5 when ink was placed on a document has only a limited window of time in which it can

6 be accomplished because, eventually, the ink dries (be it in 2 years or 3 to 4 years),

7 leaving nothing capable of being sampled after that point to test (save to acknowledge

8 that the ink in question was put on the paper some time more than 3 to 4 years ago).

9 Mattel essentially argues that the impossibility of testing ink after a certain period

10 mandates that, if the other side is going to test ink while "fresh" ink remains on the

11 document, that party has an obligation to inform the other side so that they can do the

12 same before the ink "dries out"; failure to do so renders the test performed something

13 that cannot be replicated.[4]  By Mattel's own admission, they knew there had been

14 testing done on the BRATZ original drawings as far back as November, 2004, during

15 Bryant's deposition testimony when they saw some of the original BRATZ drawings

16 (drawings that had been tested by Mr. Speckin five months earlier).  Rather than

17 immediately seeking the production of those documents and having its own expert

18 perform similar tests on them, Mattel sat idly by, waiting until June of this year to do

19 anything, either by way of court-pleadings or formal requests made to MGA and

20 Braynt, related to having ink tests performed on the documents.  Nowhere has Mattel

21

22   [4] The basic factual assumption in Mattel's argument may indeed be faulty – that
when MGA tested the ink there was enough "fresh" ink to test.  Mr. Speckin states that
23 "[i]nk takes approximately 3 to 4 years to dry on paper.  Thus, by testing the ink to
24 determine if it is dry, it can be determined whether the document was created within the
last [3 to] 4 years, or whether the ink, and thus the drawing, is more than [3 to] 4 years
25 old." (Decl. Erich J. Speckin ¶ 13).  Given that Mr. Speckin performed his ink dating
test in June, 2004, at best he could determine whether the ink had been put on the
26 paper on or after June, 2000.  Beyond that time frame his test could not tell when the
27 now-dried ink was marked on the document.  Given that the relevant period in question
in this case is from August, 1998, to October, 2000, Mr. Speckin's test results would
28 appear to be only marginally relevant in adducing proof as to when the BRATZ
drawings were made.

14

EXHIBIT _____ *UUP*

PAGE _____ *l0l*

1   explained how MGA or Bryant had anything to do with it not having the ability to

2   perform such testing until now.  Mattel's allusion to the fact that a stay on discovery

3   was put in place by this Court in 2005 is misguided.  If Mattel thought that it was losing

4   valuable time on account of the stay, it could have at any time filed with this Court an

5   emergency request for relief from the stay to have such tests performed.  All it needed

6   to do was inform the Court that it had only a short period of time to perform the test on

7   account of the fact that ink dries; something which it never did in this case.

8        Mattel's citation to the case Edwardes v. Southampton Hospital Associates,

9   278 N.Y.S.2d 283 (1967) is equally unhelpful to their argument.  In that case, the court

10  was presented with an application to prevent the testing of a intramedullary pin for

11  discovery and testing.  Id. at 284.  The court held that, "[s]ince the pin is crucial to the

12  action it is not too difficult to appreciate that any change, however slight, assumes an

13  importance magnified proportionately. And undoubtedly tests which would destroy or

14  alter most or all of a particular article ought not be permitted in the first instance

15  without providing adequate safeguards to protect all concerned."  Id. at 286.  Here,

16  such an argument cannot be made because, for the reasons cited above, Mattel has

17  conceded that even in performing the tests of the original BRATZ drawings Mr.

18  Speckin left enough ink of the same pen stroke for its own experts to test.  In short,

19  there has been no alteration, however slight, made to the documents insofar as

20  Mattel's ability to replicate the exact same test is concerned.  The only change that

21  has occurred is in Mattel's ability to retrieve any relevant information from such a test

22  on account of the passage of time that has elapsed.  The test Mr. Speckin performed

23  is not responsible for this negative occurrence.  MGA is similarly not responsible for

24  the passage of time or Mattel's inability to retrieve useful information from the testing

25  process.  On that point, Mattel should look itself in the mirror for any finding of fault or

26  blame.

27        Moreover, aside from the potential for "destroying" key portions of the original

28  documents, it is alleged that MGA and Bryant's actions carry other means of

EXHIBIT _____ (a φ

                            15

PAGE _____ 652

1   prejudicing Mattel's ability to pursue lines of potential evidence in this case.  The

2   expert declaration submitted by Mattel notes another possible spoliation of the original

3   drawings even if there remained enough of the pertinent portion of the document in

4   question to sample: The sampling process itself may have contaminated the

5   document in question by obliterating potential crucial clues that were on the document

6   or otherwise the sampling process led to the introduction of foreign materials onto the

7   documents themselves which may complicate any future analysis.  As explained by

8   Mattel's expert:

9            [P]erforming many such types of testing, even if described
             as "non-destructive," on a particular original document
10           carries the risk that potential evidence on it, including
             indentations in the paper fiber, might be contaminated or
11           destroyed in the process.  Furthermore, the order of the
             types of testing to be performed on a given document
12           might have an impact on developing potential evidence
             during subsequent examinations. . . .
13
                  . . . . [With respect to the original BRATZ drawings
14           containing holes in them,] it is possible that the destructive
             testing performed on the document may have caused
15           some form of contamination and/or alteration, which carries
             the further prospect that subsequent examinations by
16           experts may not enable them to develop potential evidence
             or the same evidence that the other [earlier] expert
17           developed.

18   (Decl. Lloyd Cunningham ¶¶ 4-5).

19        MGA has rebutted this risk of contamination argument by proffering Mr.

20   Speckin's declaration, the expert who actually performed the tests in question.  Mr.

21   Speckin states that he "exercised the utmost care in handling the documents [he]

22   tested," that a number of the tests he performed on the documents "has absolutely no

23   effect on the tested document whatsoever," and that with respect to those tests that

24   could effect the document he followed established procedures in carrying out the test

25   in question.  (Decl. Erich J. Speckin ¶¶ 8, 9, 10, 11, 12, 13).  Nowhere has Mattel

26   proffered any evidence rebutting or calling into question Mr. Speckin's

27   representations.  The Court therefore finds that, based on the evidence that is

28   currently before it, Mattel has not established a colorable claim of spoliation by way of

EXHIBIT _____ (ococ_____

PAGE _____ 053

16

1    contamination in the tests MGA performed on the documents in question.

2              b.    Alteration of Fax Headers

3         Insofar as O'Connor's deposition testimony relating to the white out of the fax

4    header on the October, 2000, contract between Bryant and MGA, this too is

5    downplayed by MGA and Bryant as being irrelevant because "there is no dispute that

6    Mr. Bryant faxed his signed contract from a fax machine at Mattel and, indeed, Mr.

7    Bryant readily admitted that fact at his deposition, which took place before Ms.

8    O'Connor's deposition." (Joint Opp. at 8 (emphasis in original)).  This argument seeks

9    to compare apples to oranges.  While it may be true that now there is no dispute by

10   MGA and Bryant that he faxed his portion of the contract to MGA from his office at

11   Mattel, at the time O'Connor did the white out of the fax header such a lack of dispute

12   was not apparent.  It is from that perspective in time – the prologue to the litigation —

13   that O'Connor's deposition testimony is to be judged.  And from that perspective her

14   testimony calls into question MGA's handling of relevant documents in its possession.

15        When the contract was first executed there is no indication that MGA and/or

16   Bryant would admit to the fact that Bryant negotiated his contract with MGA while he

17   was still working at Mattel; rather, at that point, that issue appeared to be an open one.

18   Indeed, the fact that MGA's CEO would direct O'Connor to tamper with the contract's

19   fax header clearly indicates that they would not admit to the fact.  If MGA mistreated

20   this document where an open issue existed, it is not unreasonable to infer that it may

21   have been just as cavalier with its obligations to maintain the other documents in their

22   possession – say, for instance, the original BRATZ drawings – where similar open

23   issues remained.  This concern with MGA's handling of documents in its possession at

24   the prologue to this litigation is reinforced by MGA and Bryant's blasé mention in a

25   footnote to their opposition that the original to this contract, the one which they

26   describe as being irrelevant, "has not been found." (Joint Opp. at 15 n.6).  Indeed, it

27   has been suggested that MGA and Bryant or their counsel have made representations

28   that they are not sure of the exact whereabouts of a number of the original BRATZ

                                        17

EXHIBIT _____
PAGE _____

1   drawings. (Decl. Shane McKenzie ¶ 3 ("Mr. Bryant's counsel[, at the December 22 to
2   23, 2004, inspection of the originals by counsel for Mattel,] claimed not to have the
3   majority of the originals of BRATZ drawings and sketches, and further claimed not to
4   know where those originals were located")).

5          All that being said, the Court does not find that the alteration of the fax header
6   on the original Bryant/MGA contract warrants the appointment of an expert at this
7   time. Ms. O'Connor testified that, other than this one instance, she is aware of no
8   other documents that were purposefully altered by MGA. While the evidence related
9   to the missing fax header on the April, 2000, BRATZ accessories fax may indicate that
10  more than one document had been tampered with by MGA personnel, the Court has
11  nothing at this time to basis that conclusion on other than speculation and conjecture.
12  Without any tangible, concrete proof that MGA's mishandling of documents was more
13  widespread, the Court is left with what appears simply as an isolated instance of
14  tampering.

15         Accordingly, the motion for appointment of expert witnesses is **DENIED**.

16         IT IS SO ORDERED.

17

18  DATE:  8-9-06 .

19

20

21  STEPHEN G. LARSON
    UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28

EXHIBIT  _____

PAGE  _____                    18

**EXHIBIT 67**

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**SAN DIEGO**
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

**PALM SPRINGS**
45-025 Manitou Drive, Suite 8
Indian Wells, CA 92210
(760) 345-4757
Facsimile: (760) 345-2414

**LOS ANGELES**
865 So. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**NEW YORK**
335 Madison Avenue, 17th Floor
New York, NY 10017-4611
(212) 702-8100
Facsimile: (212) 702-8200

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

**DATE:**   November 2, 2004

**NUMBER OF PAGES, INCLUDING COVER: 2**

**TO/COMPANY:**

| NAME | PHONE NO. | FAX NO. |
|------|-----------|---------|
| Keith Jacoby<br>Littler Mendelson, P.C. | 310-553-0308 | 310-553-5583 |

**FROM:**   Jon D. Corey

**RE:**   Mattel v. Bryant

**MESSAGE:**

Please see attached correspondence.



| CLIENT #:  7209 | ROUTE/<br>RETURN TO:  **Ivana Maiorano** | ☐ CONFIRM FAX<br>☐ INCLUDE CONF. REPORT |
|---|---|---|
| OPERATOR: | CONFIRMED? ☐ No ☐ Yes: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3178 AS SOON AS POSSIBLE.**

EXHIBIT 07

PAGE 6560

**Send Confirmation Report**

Line 1: QUINN EMANUEL         ID: 213 6240643                2 Nov'04  7:13PM  Page  1
Line 2: JetFax M920             ID: 1

| Job | Start time | Usage | Phone Number or ID | Type | Pages | Mode | Status |
|-----|-----------|-------|---------------------|------|-------|------|--------|
| 415 | 11/ 2  7:09PM | 0'00" | 9644#7209#13105535583# | Send............ | 0 | ........ | No dial tone, Line 2......... 97 |
| 415 | 11/ 2  7:12PM | 0'34" | 9644#7209#13105535583# | Send............ | 2/ 2 | EC144 | Completed......................... |

Total:  0'34"    Pages sent: 2    Pages printed: 0

### QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP




**LOS ANGELES OFFICE**

**FACSIMILE TRANSMISSION**

DATE:  November 2, 2004

NUMBER OF PAGES, INCLUDING COVER: 3

TO/COMPANY:

| NAME | PHONE NO. | FAX NO. |
|------|-----------|---------|
| Keith Jacoby<br>Littler Mendelson, P.C. | 310-553-0308 | 310-553-5583 |

FROM:  Jon D. Corey

RE:  Mattel v. Bryant

MESSAGE:

Please see attached correspondence.

| CLIENT #: 7209 | ROUTE/<br>RETURN TO:  Ivana Maisonne | ☐ CONFIRM FAX |
| OPERATOR: | | ☐ INCLUDE CONF. REPORT |
| | CONFIRMED?  ☐ No  ☐ Yes | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you received this facsimile in error, please notify us by telephone, and return the original message to us at the address above on the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3170 AS SOON AS POSSIBLE.

EXHIBIT  67

PAGE  657

**quinn emanuel** trial lawyers | los angeles

 South Figueroa Street,  Floor, Los Angeles, California ························· ··············

November 1, 2004

**VIA FACSIMILE**
**AND U.S. MAIL**

Keith Jacoby, Esq.
Littler Mendelson, P.C.
2049 Century Park East, 5th Floor
Los Angeles, California  90067-3107

<u>Mattel, Inc. v. Bryant</u>

Dear Mr. Jacoby:

Given the importance of having available at Carter Bryant's deposition all potentially useful material about which we may wish to examine Mr. Bryant, Mattel requests that Bryant ensure that all originals of Mr. Bryant's document production, as well as the original physical items inspected by Tania Krebs yesterday afternoon, are available at Mr. Bryant's deposition in Missouri.  Please confirm with our office that you will have these items shipped to Missouri in time for the deposition on Thursday morning.  If you have any questions regarding the foregoing, please do not hesitate to call.

Best regards,

Jon D. Corey

07209/0616773.01

**quinn emanuel urquhart oliver & hedges, llp**

 NEW YORK | 555 Madison Avenue,  Floor, New York, New York ····· ···························
 SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California ·············· ·············
 SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California ········ ·············
 LOS ANGELES | 15 025 Manning Drive, Suite ··· Indian Wells, California 9221 ···· ·············
 SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 ····· ·············

**EXHIBIT 68**

**From:**     "Jacoby, Keith" <KJacoby@littler.com>
**To:**       "'Jon Corey'" <joncorey@quinnemanuel.com>, "'John Quinn'"
<johnquinn@quinnemanuel.com>
**Date:**     11/3/04 4:51PM
**Subject:**  Mattel v. Bryant

I received your request this morning for Mr. Bryant to make available the
originals of the Bratz drawings produced in this case for use in his
deposition. It would have been easier if this request were made earlier,
before my partner Douglas Wickham went to Missouri. Nevertheless, we will
have these originals sent to Missouri. We have to retrieve them from the
bank safety deposit box they are maintained in, so they will likely be
available in Missouri on Friday.

Keith A. Jacoby, Esq.
Littler Mendelson, P.C.
2049 Century Park East
Fifth Floor
Los Angeles, California 90067
ph. (310) 553-0308
direct (310) 772-7284
fax (310) 553-5583
kjacoby@littler.com


----
This email may contain confidential and privileged material for the sole use of the intended recipient(s).
Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended
recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all
copies of this message.

To reply to our email administrator directly, send an email to
postmaster@littler.com

Littler Mendelson, P.C.
http://www.littler.com

EXHIBIT ___68___

PAGE ___659___

**EXHIBIT 69**

COPY

ROBERT F. MILLMAN, Bar No. CA 062152
DOUGLAS A. WICKHAM, Bar No. CA 127268
KEITH A. JACOBY, Bar No. 150233
LITTLER MENDELSON
A Professional Corporation
2049 Century Park East, 5th Floor
Los Angeles, CA 90067.3107
Telephone:    310.553.0308
Facsimile:    310.553.5583

Attorneys for Defendant and Counter-Claimant
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> CARTER BRYANT, an individual; and DOES 1 through 10, inclusive, <br><br> Defendant. | Case No. CV 04-9059 NM (RNBx) <br><br> **DECLARATION OF KEITH A. JACOBY IN SUPPORT OF BRYANT'S PORTION OF JOINT STIPULATION RE MATTEL'S INSPECTION OF BRYANT'S ORIGINAL DOCUMENTS** |
| CARTER BRYANT, on behalf of himself, all present and former employees of Mattel, Inc., and the general public, <br><br> Counter-Claimant, <br><br> v. <br><br> MATTEL, INC., a Delaware Corporation, <br><br> Cross-Defendant. | Magistrate Judge: Hon. Robert N. Block <br><br> Judge:              Hon. Nora M. Manella <br><br> Hearing Date:    March 15, 2005 <br> Time:              9:30 a.m. <br> Place:             Room 450 <br><br> Discovery Cut-Off:          TBD <br> Pre-Trial Conference:       TBD <br> Trial Date:                 TBD |

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553.0308

EXHIBIT  49

PAGE  660

2-18

## DECLARATION OF KEITH A. JACOBY

I, KEITH A. JACOBY, declare as follows:

1.       I am an attorney admitted to practice before all courts in the State of California, including this Court.  I am a shareholder of the law firm of Littler Mendelson, a Professional Corporation, counsel of record for Defendant and Counter-Claimant Carter Bryant ("Bryant") in this matter.  I have personal knowledge of the matters set forth herein and, if called as a witness, I could and would testify competently thereto.

2.       Bryant has never refused to produce the documents and things requested for inspection by Mattel.  Rather, Bryant has been more than accommodating of Mattel's requests in all respects.

3.       Bryant made all three-dimensional tangible things he produced in this litigation available for inspection shortly after Mattel's request.  On November 1, 2004, Mattel carried out this inspection.  There are no tangible things remaining which Mattel has not inspected.

4.       Bryant also made the majority of originals of the documents he has produced available for inspection over the course of two full days, on December 22 and 23, 2004.  Mattel conducted inspections of those documents on those days.

5.       Bryant has gone to extreme measures to accommodate Mattel's inspection requests.  On November 3, 2004, after counsel defending Bryant's deposition, my partner Douglas Wickham, had already left Los Angeles for Missouri, Mattel made an eleventh-hour request, for the first time, that original documents be produced there.  Bryant was forced to incur the significant expense of hand-delivering the irreplaceable documents to Missouri, on literally a few hours notice, and simply at Mattel's whim.  Remarkably, although the parties had engaged in several months of negotiation and motion practice before the deposition took place – notably because of Mattel's own failure to produce documents – Mattel had never requested that original documents be available until the day of the start of the deposition.  Original

1.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

EXHIBIT ___ 69

PAGE ___ 661

1   documents be available until the day before of the start of the deposition.  Original

2   documents were made available for inspection at Bryant's deposition over the course

3   of two full days, and were used during the deposition.

4   6.        Much of Bryant's 1588-page document production consisted of royalty

5   statements and telephone records, which comprised about one-fifth of his total

6   production.  A large number of those records are redacted to protect confidential,

7   and/or proprietary information.  Permitting Mattel to inspect the originals of

8   documents that were produced in redacted form would obviously render futile

9   Bryant's right to safeguard this protected information.  Such an inspection would

10  compromise Bryant's rights to safeguard his own confidential information, as well as

11  his obligation to safeguard the confidential information of others, found within those

12  documents.

13  7.        In the spirit of cooperation, Bryant invited Mattel to meet and confer to

14  determine a way for such an inspection to be conducted without impinging on

15  Bryant's rights and those of third parties, but Mattel failed to respond.

16  8.        Mattel has misused its right to inspect documents to gain an improper

17  advantage in the litigation, by forcing Bryant to expend undue time and expense in

18  accommodating unnecessarily lengthy document inspections.  On the three days

19  during which its attorneys inspected original documents at the offices of Bryant's

20  counsel, Mattel "inspected" an average of just over one hundred pages per day, for a

21  total of about three hundred and fifty (350) pages.  Each of the inspections was

22  concluded by Mattel's counsel at or near the close of business, and not due to a lack of

23  documents to inspect.  This delay was due to the fact that Mattel brought at least one

24  attorney, a videographer and a still photographer to each inspection.

25  9.        Mattel's approach to carrying out its inspections is a deliberate part of its

26  broader scorched-earth strategy to outspend Bryant, and to bury him under so much

27  paper that he can no longer effectively defend himself against Mattel's allegations.

28  10.       To date, Bryant has spent in excess of 50 hours in paralegal and attorney

2.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles  CA  90067 3107
310 553 6360

EXHIBIT    99

PAGE    1602

1 | hours attempting to accommodate Mattel's request for inspections of originals.

2 | 11.      There is no evidence that Bryant has conducted or intends to conduct any

3 | destructive testing of the original documents at issue, because no such testing has

4 | occurred or will take place.   Bryant has every interest in preserving all the

5 | documentary evidence in his possession, given that it refutes Mattel's claims *and*

6 | supports his counter-claims.

7 | 12.      Bryant has also requested that Mattel produce its original documents for

8 | his inspection, but predictably, Mattel has completely stonewalled in response to

9 | Bryant's request.   Bryant sought such inspection by written correspondence on

10 | January 13, 2005.  Attached hereto as Exhibit "A" is a true and correct copy of an

11 | email from me to Jon Corey, dated January 13, 2005 requesting an inspection of

12 | Mattel's documents.   The parties then met and conferred regarding this issue on

13 | January 14, 2005, at which point Mr. Corey stated he was "unable to commit with

14 | respect to the inspection on behalf of Mattel."   A true and correct copy of the

15 | transcript of that meet and confer is attached hereto as Exhibit "B."

16 | 13.      Despite Bryant's requests, Mattel has not yet agreed, even in principle,

17 | to permit him to inspect a single original document Mattel has produced.

18 |      I declare under penalty of perjury under the laws of the United States of

19 | America and the State of California that the foregoing is true and correct.

20 |      Executed this 18h day of February 2005, at Los Angeles, California.

21

22

23 | Los_Angeles:393602.2 028307.1010                KEITH A. JACOBY

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

3.

EXHIBIT ___ 69

PAGE _____ 663

**EXHIBIT 70**

1   DIANA M. TORRES (S.B. #162284)
    PAULA E. AMBROSINI (S.B. #193126)
2   O'MELVENY & MYERS LLP
    400 South Hope Street
3   Los Angeles, CA 90071-2899
    Telephone:   (213) 430-6000
4   Facsimile:   (213) 430-6407
    Email:       dtorres@omm.com
5
    Attorneys for
6   MGA Entertainment, Inc.

7
    DOUGLAS A. WICKHAM (S.B. #127268)
8   KEITH A. JACOBY (S.B. #150233)
    LITTLER MENDELSON
9   A Professional Corporation
    2049 Century Park East, 5th Floor
10  Los Angeles, CA 90067.3107
    Telephone:   310-553-0308
11  Facsimile:   310-553-5583

12  Attorneys for Carter Bryant

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15  CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)

16              Plaintiff,               (consolidated with CV 04-0959 and 05-
                                         02727)
17       v.
                                         DECLARATION OF ERICH J.
18  MATTEL, INC., a Delaware             SPECKIN
    Corporation,
19
20              Defendant.

21  _____
22  CONSOLIDATED WITH                    Judge: Hon. Stephen G. Larson

23  MATTEL, INC. v. BRYANT and           Discovery Cut-Off:        TBD
                                         Pretrial Conference:      TBD
24  MGA ENTERTAINMENT, INC. v.           Trial:                    TBD
    MATTEL, INC.
25
26
27       SUBJECT TO PROTECTIVE ORDER – FILED UNDER SEAL

28

                                         SPECKIN DECLARATION
                                         CV 04-09049 SGL (RNBX)

EXHIBIT ___70___

PAGE ___664___

1    This Declaration is filed in connection with MGA's and Bryant's response to

2    the Court's Order To Show Cause as to why it should not appoint expert

3    witness(es) and specifically relates to the. *Mattel v. Bryant* matter, Case No. CV 04-

4    9059 SGL (RNBx).

5        I, Erich J. Speckin, declare and state:

6        1.      I have been retained by the law firm of O'Melveny & Myers LLP on

7    behalf of MGA Entertainment, Inc. ("MGA") as an expert in the field of forensic

8.   chemistry, in particular ink and document testing. I have personal knowledge of the

9    following and, if called upon to do so, could competently testify thereto under oath.

10       2.      I am an expert in forensic chemistry at Speckin Forensic Laboratories

11   in Okemos, Michigan. I specialize in the dating of documents through ink and

12   paper. I have a degree in Chemistry from Michigan State University, and studied

13   engineering and biology at Purdue University and Albion College respectively.

14       3.      My forensic training includes a two year residency with Leonard A.

15   Speckin in the examination of questioned documents and a one year residency with

16   Brunelle Forensic Laboratories in the identification and dating of inks. I have

17   published extensively on the topics of ink and document testing methodologies,

18   including articles on the accelerated aging of writing inks and a chapter in the

19   Encyclopedia of Crime & Punishment.

20       4.      I have been appointed by judges, government representatives and

21   private parties in high profile and high stakes cases throughout the world to test

22   both documents and ink. In Florida, for example, I was recently appointed by a

23   judge in *United States v. Padilla,* a case involving the alleged "dirty bomber." In

24   that case, I flew to the laboratories of the United States Secret Service and was

25   given access to documents which allegedly link the defendant in that case to the

26   crimes alleged. I performed testing in that case in a similar order and fashion as in

27   the immediate case. The evidence was also preserved and documented in the same

28   manner as in the immediate case. In that case, I performed all of my testing,

1

SPECKIN DECLARATION
CV 04-09049 SGL (RNBX)

EXHIBIT ....... 70

PAGE ....... 6665

1  including taking ink samples, before the Secret Service performed any tests,

2  including any ESDA impression tests, or took any ink samples. The Secret Service

3  -- which has in-house ink and document expertise -- was well aware of what I

4  planned to do and had no objection to it. I have also been retained in *Nikken Abe v.*

5  *Soka Gakkai* (involving the alteration of the diary of the high priest of the Buddhist

6  religion). I have also been retained by the Embassy of Uruguay and the Florida

7  Department of Law Enforcement to provide training to their document examiners

8  regarding ink dating procedures, including sampling, limits of detection, and

9  current dating procedures.

10       5.       I have also been hired several times by the law firm of Quinn,

11  Emanuel, Urquhart, Oliver & Hedges, the law firm representing Mattel in this case,

12  including in *Fox v. Miller* and *Applied Data Systems v. Litton*. In *Fox v. Miller*, I

13  performed essentially the same tests and sampling as in the immediate case. The

14  other side's expert then performed the same tests.

15       6.       On or about July 6, 2006, I received a call from a lawyer named Tania

16  at Quinn Emanuel seeking to retain me for this case.

17       7.       I have read Mattel's Reply Brief In Support Of Mattel's Motion For

18  The Appointment Of Expert Witnesses. I also have read the declaration of Lloyd

19  Cunningham, whom I know professionally and to some degree personally. To my

20  knowledge, Mr. Cunningham has experience in questioned documents; he does not

21  have expertise in ink analysis nor does he purport to have such expertise in his

22  declaration. Nonetheless, Mattel in its brief and Mr. Cunningham in his declaration

23  take the position that certain types of ink testing can be "destructive" or, at the very

24  least, may contaminate the evidence contained on a document.[1]

---

25  [1] In the industry, certain types of testing are called "destructive." "Destructive" testing,

26  however, does not actually destroy the document or any evidence and does not preclude other experts from performing the same tests on the same document. When I use the term

27  "destructive testing" and as I understand its use in the industry, it refers to the fact that the microplugs are taken from the document and those microplugs can be tested only once. I

28  note that Mr. Cunningham does not actually state in his declaration that any of the tests described destroy the documents or prevent him from performing any tests.

2

SPECKIN DECLARATION
CV 04-09049 SGL (RNBX)

EXHIBIT ___70___

PAGE ___666___

8.    In June 2004, I flew to Los Angeles to perform ink and document testing on various "Bratz" documents.  Nothing I did destroyed any documents, harmed their evidentiary value, or hindered Mattel's ability in any way to perform the very same tests on the very same documents and ink that I tested.  At all times, I exercised the utmost care in handling the documents I tested and there is absolutely no reason that another qualified expert could not duplicate the tests I performed.

9.    I first examined the various documents visually using "sidelight" testing, which involves a close and careful scrutiny of the surfaces of the documents.  Sidelight testing is a common method of visually inspecting a document by holding a side light up to the document at an oblique angle, and visually examining the document to determine preliminarily whether the document contains impressions, or markings impressed upon the document by drawing and writing done on a sheet of paper laid on top of the document being tested.  This testing has absolutely no effect on the tested document whatsoever.

10.    I also examined a few documents visually using infrared light.  This testing has absolutely no effect on the document whatsoever.

11.    I next examined the various documents and drawings using Electrostatic Detection Apparatus ("ESDA") testing for visualization of indented impressions.  ESDA testing is another commonly used technique that can help determine in what order various documents or drawings were created by rendering indented writing visible and producing a record of the impressed writing.  I followed the ASTM standard E2291-03 in performing this procedure.  According to that standard, "[t]hese procedures are essentially nondestructive."  According to that ASTM standard, "[a] complete examination involves the use of both the optical and EDD [ESDA] portions of the procedure."  In other words, to fully examine a document, one should perform both tests.

12.    I also performed ink identification tests on various documents by comparing samples of ink from the documents to samples of ink in the extensive

3

SPECKIN DECLARATION
CV 04-09049 SGL (RNBX)

EXHIBIT ___70___

PAGE ___667___

1   library maintained by Speckin Forensic Laboratories to identify the ink that was

2   used on each drawing by type and manufacturer so that we can determine the year

3   in which the ink was first commercially available. In performing the ink

4   identification tests, I carefully removed very small microplug samples from the

5   documents and analyzed them. This information was then compared to the

6   information on known samples of ink in our in-house library. After the type of ink

7   used in the drawings was verified, I was able to determine whether that particular

8   type of ink was commercially available on a given date. I followed the ASTM

9   standard E1789-04 in performing this procedure.

10      13.   Finally, I performed ink dating chemical analysis on the documents to

11  determine whether the documents were created recently. Ink takes approximately 3

12  to 4 years to dry on paper. Thus, by testing the ink to determine if it is dry, it can

13  be determined whether the document was created within the last 4 years, or whether

14  the ink, and thus the drawing, is more than 4 years old. This test was also

15  performed by carefully extracting very small microplug samples from the document

16  at issue and testing the microplugs. The sample taking procedures followed

17  generally accepted scientific procedures and are commonly used in the analysis of

18  documents.

19      14.   In performing the sidelight, ESDA and ink testing on the various

20  documents, I was very careful to preserve the integrity of the documents, and to

21  leave more than sufficient material for another expert to test the exact same

22  documents to determine the age of those documents. Additionally, sidelight, ESDA

23  and ink testing do not destroy the particular document, nor do the testing methods

24  preclude another party from testing and examining the exact same documents using

25  the same or different tests. Indeed, different experts routinely perform these same

26  tests in the same case. While another expert cannot test the very same microplug

27  that I tested, that fact is entirely irrelevant because there is more than enough ink on

28  each of the documents I tested to allow numerous microplug samples to be

4

SPECKIN DECLARATION
CV 04-09049 SGL (RNBX)

EXHIBIT ___ 70

PAGE ___ 668

1    extracted and tested by different experts.

2          15.    All of the testing that I performed on the various documents are

3    common, scientifically accepted forensic methods used by experts to determine the

4    date or age of a given ink or document specimen.  The order in which I performed

5    the tests is also the generally accepted order of testing and in agreement with

6    ASTM standards.

7          16.    Many of the "Bratz" drawings were drawn in pencil or marker.  Marker

8    is rarely dateable because it does not undergo the same drying process as ball point

9    ink and is pigment-based.  I was also unable to test or date the pencil markings on

10   the drawings as pencil lead is not susceptible to the same type of testing or dating.

11         17.    *It is widely understood that it is better — and likely to yield more*

12   *conclusive results — to perform tests earlier rather than later, particularly as here*

13   *where the passage of time is more than two years.  Therefore, it was better to*

14   *preserve the evidentiary value of the documents two years ago than wait until now.*

15

16   I declare, under penalty of perjury under the laws of the United States that the

17   foregoing is true and correct.  Executed this 21 day of July, 2006 at *Tucson, Arizona*

18

19

20                         Erich J. Speckin

21

22

23

24

25

26

27

28

                              5                        SPECKIN DECLARATION
                                                       CV 04-09049 SGL (RNBx)

EXHIBIT ___70___

PAGE ___669___

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 2049 Century Park East, 5th Floor, Los Angeles, California 90067.3107. On July 21, 2006, I served the within document(s):

## DECLARATION OF ERICH J. SPECKIN

☒   This document was transmitted by using a facsimile machine that complies with California Rules of Court Rule 2003(3), telephone number 310.553.5583. The transmission was reported as complete and without error. The names and facsimile numbers of the person(s) served are as set forth below.

☒   by placing a true copy of the document(s) listed above for collection and mailing following the firm's ordinary business practice in a sealed envelope with postage thereon fully prepaid for deposit in the United States mail at Los Angeles, California addressed as set forth below.

Michael T. Zeller, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Fax: (213) 443-3100

Diana M. Torres, Esq.
Paula Ambrosini, Esq.
O'Melveny & Myers LLP
400 S. Hope Street
Los Angeles, CA 90071
Fax: (213) 430-6407

Patricia L. Glaser
Christensen, Glaser, Fink, Jacobs,
Weil & Shapiro
10250 Constellation Blvd.,
19th Floor
Los Angeles, CA 90067
Fax: (310) 556-2920

I am readily familiar with the firm's practice of collection and processing correspondence for mailing and for shipping via overnight delivery service. Under

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

PROOF OF SERVICE

EXHIBIT 70

PAGE 670

1    that practice it would be deposited with the U.S. Postal Service or if an overnight

2    delivery service shipment, deposited in an overnight delivery service pick-up box or

3    office on the same day with postage or fees thereon fully prepaid in the ordinary

4    course of business.

5        I declare under penalty of perjury under the laws of the State of

6    California that the above is true and correct. Executed on July 21, 2006, at Los

7    Angeles, California.

8

9

10    Firmwide:81263189.1 028307.1010                           Julie Contreras

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

                                              PROOF OF SERVICE

EXHIBIT    70

PAGE    671

**EXHIBIT 71**

MGA PRIVILEGE LOG (Revised)
January 23, 2008

Mattel's First Set of Document Requests to Isaac Larian
Case No. CV-04-09049 and consolidated cases

| | From | From | To | Date | Document Type | Privilege Claimed | Description (Revised/Revised) |
|---|---|---|---|---|---|---|---|
| 372 | Kerri Legg;Paula Treantafelles | Isaac Larian | Colleen O'Higgins | 1-Nov-00 | EMAIL | Attorney/Client | Email message reflecting legal advice regarding trademark registration. |
| 373 | Franki Tsang | Isaac Larian | Stephen Lee | 14-Mar-01 | EMAIL | Attorney/Client | Email message reflecting legal advice regarding trademark registration. |
| 374 | Christensen White;Patty Glaser, Esq. | Isaac Larian | | 29-Jun-01 | EMAIL | Attorney/Client | Email message requesting legal advice regarding Mattel litigation. |
| 375 | Christensen White;Patty Glaser, Esq. | | David Rosenbaum, Esq. | 2-Jul-01 | EMAIL | Attorney/Client; Work Product | Email message requesting legal advice regarding Mattel litigation. |
| 376 | Isaac Larian | Eva Chuck | Nana Ashong;Stephen Lee | 11-Jul-01 | EMAIL | Attorney/Client | Email chain requesting and providing legal advice regarding trademark registration. |
| 377 | Julie Mote, Esq.;William W. L, Fan & Co. | | Chan Rejina, Esq.;Isaac Larian;Lois Ungar | 18-Sep-02 | EMAIL | Attorney/Client; Work Product | Email chain requesting and rendering legal advice regarding potential litigation. |
| 378 | Mitchell Kamarck, Esq. | Isaac Larian | Beth Cahill | 30-Sep-02 | EMAIL | Attorney/Client; Work Product | Email chain requesting and rendering legal advice regarding potential litigation. |
| 379 | Mitchell Kamarck, Esq.;William Fan, Esq. | | Chan Rejina, Esq.; Eva Chuck; Stephen Lee | 1-Oct-02 | EMAIL | Attorney/Client; Work Product | Email chain requesting and rendering legal advice regarding contract dispute and litigation. |
| 380 | Mitchell Kamarck, Esq. | Isaac Larian | | 2-Oct-02 | EMAIL | Attorney/Client; Work Product | Email chain requesting and rendering legal advice regarding potential litigation. |

-42-

CONFIDENTIAL

EXHIBIT        71

PAGE        672

MGA PRIVILEGE LOG (Revised)
January 23, 2008

Mattel's First Set of Document Requests to Isaac Larian
Case No. CV-04-09049 and consolidated cases

| No. | From | To | BCC | Date | Document Type | Privilege | Privilege Description |
|---|---|---|---|---|---|---|---|
| 543 | Dale Cendali, Esq.;Daphne Gronich, Esq. | Isaac Larian | | 29-May-04 | EMAIL | Attorney/Client | Email message requesting legal advice regarding Mattel litigation. |
| 544 | Isaac Larian;Paula Treantafelles | Kerri Legg | | 2-Oct-00 | EMAIL | Attorney/Client; Work Product | Email chain reflecting legal advice regarding trademark registration |
| 545 | Kerri Legg;Paula Treantafelles | Isaac Larian | | 4-Oct-00 | EMAIL | Attorney/Client; Work Product | Email chain requesting and reflecting legal advice regarding trademark registration |
| 546 | Kerri Legg;Paula Treantafelles | Isaac Larian | | 1-Nov-00 | EMAIL | Attorney/Client; Work Product | Email chain requesting and reflecting legal advice regarding trademark registration. |
| 547 | Frank Tsang | Isaac Larian | Stephen Lee | 14-Mar-01 | EMAIL | Attorney/Client | Email message reflecting legal advice regarding trademark registration. |
| 548 | Donald Kaul;Sherry Forteiny | Isaac Larian | | 1-Aug-01 | EMAIL | Attorney/Client | Email message requesting email advice regarding trademark and copyright infringement. |
| 549 | Christensen White;Patty Glaser, Esq. | Isaac Larian | | 29-Jun-01 | EMAIL | Attorney/Client | Email message requesting legal advice regarding Mattel litigation. |
| 550 | Christensen White;Patty Glaser, Esq. | Isaac Larian | | 2-Jul-01 | EMAIL | Attorney/Client; Work Product | Email message requesting legal advice regarding Mattel litigation. |
| 551 | Isaac Larian | Eva Chuck | Nana Ashong;Stephen Lee | 11-Jul-01 | EMAIL | Attorney/Client | Email message reflecting legal advice regarding trademark registration. |

-61-

CONFIDENTIAL

EXHIBIT ___71___

PAGE ___673___

**EXHIBIT 72**

Confidential - Attorneys' Eyes Only

**Mattel v. MGA**
**MGA Valuation**
**Distributions to Shareholders**

Tab B2, Schedule 6.0

| | Source | 2001 | 2002 | 2003 | 2004 | 2005 | 2005 | 2007 |
|---|---|---|---|---|---|---|---|---|
| Distributions to Shareholders | Tab B2, Schedule 2.4 | | | | | | | |
| (c) Distributions to Shareholders for Taxes | Tab B2, Schedule 6.1 | | | | | | | |
| Distributions to Shareholders in Excess of Taxes | | $0 | | | | | | |
| | | | | | | | | |
| Isaac Larian Share of Stock | (e) | | | | | | | |
| Isaac Larian Share of Distribution in Excess of Taxes | calculated | | | | | | | |
| | | | | | | | | |
| Net Income from Bratz | Tab B1, Schedule 1.1 | | | | | | | |
| MGA Net Income | Tab B1, Schedule 4.3 | | | | | | | |
| % of Net Income From Bratz | calculated | | | | | | | |
| % of Excess Distribution for Bratz | Based on Above | | | | | | | |
| Excess Distribution Attributed to Bratz | Calculated | | | | | | | |
| | | | | | | | | |
| Total Excess Distribution Attributed to Bratz 2002 - 2006 | | | | | | | | |

**Analysis of Tax Rates**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Net Income | Tab B1, Schedule 4.3 | | | | | | | |
| Distributions to Shareholders for Taxes by Tax Year | Tab B2, Schedule 6.2 | | | | | | | |
| (e) Tax Distribution as a % of Net Income | calculated | | | | | | | |

| | 2002 | 2003 | 2004 | Total |
|---|---|---|---|---|
| Net Income | | | | |
| Distributions to Shareholders for Taxes | | | | |
| Calculated Tax Rate | | | | |

(a)  Per review of Deposition of Isaac Larian for Art Attacks Litigation, Isaac Larian's Percentage ownership of MGA has remained constant between 81 and 51% since 2002. (Tab E33-MGA3726576-590, pages 108-111)

(b)  Per Lisa Tonnu, Isaac Larian owns 81.51% of MGA Entertainment, Inc. stock (Lisa Tonnu 1/17/08 deposition, page 74) (Tab E16).

(c)  I have not been provided with Distribution Data for 2007.

(d)  Information regarding distribution for tax purposes not provided for 2006 and 2007. Per Lisa Tonnu, this information is to be provided by MGA (Tonnu deposition, 1/17/08, Tab E16, page 86). Therefore, use calculation in footnote (e).

(e)  Per review of the tax books/notes from the 2006 and 2006 MGA audited financial statements, "The Company has elected to be taxed as an S Corporation for United States federal income tax and California franchise tax purposes.
      As an S Corporation, United States taxable income is allocated to stockholders based on their respective ownership.  Additionally, S Corporations are subject to a California franchise tax of 1.5% of taxable income."
      (see Audited Financial Statements at Tab E24,MGA0646718-7)

(f)  Calculate Shareholder Tax rate – imputed tax rate varies from 2002 through 2004. This could be due to timing of payments and overlapper payments. Therefore, to calculate an average tax rate, I accumulate the three years below.

CRA International, Inc.

21

EXHIBIT 73

**ISAAC AND ANGELA LARIAN**
**List of Assets**
**2007**

**ASSETS**
Cash

|  |  |  |  |  |
|---|---|---|---|---|
| | Checking | | $ | |
| **Marketable Securities** | | | | |
| | Larian Living Trust | | | |
| | | Bear Stearns | $ | Sep-07 |
| | | UBS | $ | Oct-07 |
| | | Bernstein | $ | Sep-07 |
| | Qualified Annuity Trusts | | | |
| | | Bear Stearns | $ | Sep-07 |
| | | JP Morgan | $ | Oct-07 |
| | | UBS | $ | Oct-07 |
| | | Bernstein | $ | Sep-07 |
| Retirement Accounts - 401K | | | $ | |
| Notes Receivable | | | $ | Oct-07 |
| Residences | | | $ | Oct-07 |
| Toybox LLC | | | $ | Pro rata share of investment |
| MGA North LLC | | | $ | Pro rata share of investment |
| 16300 Roscoe Boulevard LLC | | | $ | Pro rata share of investment |
| MGA Entertainment, Inc. | | | $ | Pro rata share of investment |
| Zapf Creation Gmbh | | | $ | Sep-07 |

**TOTAL ASSETS**      $

**LIABILITY**
Income tax liability      $
Bank Loans      $
Mortgage      $

**TOTAL LIABILITY**      $

**NET ASSETS**      $

*Ownership in MGA Entertainment, Inc.*
*Ownership in MGA North LLC*
*Ownership in Toybox LLC*
*Ownership in 16300 Roscoe Boulevard LLC*
*Ownership in Zapf*

EXHIBIT ___73___

E ___675___

OCTOBER 25, 2007

CONFIDENTIAL - ATTORNEYS' EYES ONLY

**EXHIBIT 74**

# THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

EXHIBIT 75



INTERNATIONAL

## MICHAEL J. WAGNER
Senior Consultant

J.D., Loyola University School
of Law at Los Angeles

M.B.A., University of California
at Los Angeles

B.S. Engineering,
University of Santa Clara

Michael Wagner, Senior Consultant with CRA International, has testified 105 times at trial. He has testified in federal courts in 17 different states and in state court in 10 different states. The most frequent subject matters of his expert testimony are the calculation of commercial damages or business value. He has also testified a number of times on the subject of alter ego. In addition, Mr. Wagner has testified 29 times in alternative dispute resolution forums.

### EXPERIENCE

| | |
|---|---|
| 2007–Present | *Senior Consultant*, CRA International (successor to InteCap, Inc.) |
| | *Senior Advisor*, CRA International (successor to InteCap, Inc.), 2004-2007 |
| 1999–2004 | *Managing Director*, InteCap, Inc. |
| 1999 | *Senior Vice President*, PHB Hagler Bailly, Inc. (successor to Putnam, Hayes & Bartlett, Inc.) |
| 1993–1999 | *Managing Director*, Putnam, Hayes & Bartlett, Inc. (successor to Dickenson, O'Brien & Associates) |
| 1985–1992 | *Partner*, Price Waterhouse |
| | *Senior Manager*, 1983–1985 |
| | *Manager*, 1979–1980 |
| | *Consultant*, 1976–1979 |
| 1981–1983 | *Principal*, Dickenson, O'Brien & Associates |
| | *Associate*, 1980–1981 |
| 1975–1976 | *Associate Cost Engineer*, Fluor Engineers & Constructors, Inc. |

EXHIBIT ___75___

PAGE ___690___

## PROFESSIONAL AFFILIATIONS (CURRENT)

Member, American Institute of Certified Public Accountants

>AICPA Litigation Services Committee (1993–1995)

>AICPA Business Valuation Standards Task Force (1994–1995)

>AICPA and IBA combined Conference Steering Committee (1995)

>AICPA MAS Practice Standards and Administration Subcommittee (1988–1990)

>AICPA Auditing Standards Board Litigation Services Task Force (1989)

>AICPA 1990 through 1995 Litigation Services Conference Steering Committees

>Co-Editor, *CPA Expert* (1994–1996)

Certified Public Accountant, State of California

Member, California Society of Certified Public Accountants

>Litigation Services Committee (1985–1990), Chairman (1987–1989)

>Government Relations Committee (1989–1990)

>Contingent Fee Task Force (1988–1990)

Member, State Bar of California

## PROFESSIONAL AFFILIATIONS (PAST)

Member, American Bar Association

Member, State Bar of California (inactive status 1991–1995)

Member, Oregon Society of Certified Public Accountants

>Litigation Services Committee (1990–1994)

Certified Public Accountant, States of Hawaii (1980–1983), Washington (1990–1994), Oregon (1990–1994)

Member, Los Angeles County Bar Association

>Dispute Resolution Services, Sub-chair of Administration Committee (1987–1989)

NASD Board of Arbitrators

Hastings College of Advocacy, Faculty Expert

NITA, Faculty Member

Certified Management Consultant

American Arbitration Association's Panel of Arbitrators

Arbitration Services of Portland, Inc.

Academy of Experts

EXHIBIT 75

PAGE 091

## PUBLICATIONS

"Response to One Man's Opinion, comments on 'A New Look at Expected Cash Flows and Present Value Discounts'," *CPA Expert*, spring 2004 (co-authored with Michael Crain and Bonnie Goldsmith)

"Differences between Economic Damages Analysis and Business Valuation," Chapter 13 in the *Handbook of Business Valuation and Intellectual Property Analysis*, McGraw-Hill, 2004 (co-authored with Michael Dunbar)

*Litigation Services Handbook* (4th Edition – 2007, 3rd Edition – 2001, 2nd Edition – 1995, 1st Edition – 1990), John Wiley & Sons, (co-edited with Peter B. Frank and Roman L. Weil).

### Chapters Co-Authored

4th Edition:

      Chapter 1 "The Role of the Financial Expert in Litigation Services"

      Chapter 8 "Ex Ante versus Ex Post Damages Calculations"

      Chapter 22 "Patent Infringement Damages"

      Chapter 29 "Alter Ego"

3rd Edition:

      Chapter 1 "The Role of the Financial Expert in Litigation Services"

      Chapter 5A "Ex Ante versus Ex Post Damages Calculations" (2003 Supplement)

      Chapter 24 "Patent Infringement Damages"

      Chapter 38 "Alter Ego"

2nd Edition:

      Chapter 1 "The Role of the CPA in Litigation Services"

      Chapter10 "Alter Ego"

      Chapter 34 "Patent Infringement Damages"

1st Edition:

      Chapter 1 "The Role of the CPA in Litigation Services"

      Chapter 17 "Patent Infringement Damages"

      Chapter 31 "Securities Act Violations: Computation of Damages"

"Economic Damages: Use and Abuse of Business Valuation Concepts," Chapter 14 in *The Handbook of Advanced Business Valuation*, McGraw-Hill, 1999 (co-authored with John Phillips).

EXHIBIT ___75___

PAGE ___1092___

MICHAEL J. WAGNER
Page 4

"Tax Effects of Discount Rates in Taxable Damage Awards," *CPA Expert*, winter 1999 (co-authored with Greg Hallman).

"Experience Enhances Objectivity of Damage Estimates," *CPA Expert,* winter 1997.

"Communicating in Litigation Services: Reports, A Nonauthoritative Guide," *AICPA Consulting Services Practice Aid No. 96-3*, 1996 (co-authored with Everett P. Harry III). Partially reprinted in *Recovery of Damages for Lost Profits*, Volume 2, (5th Edition) by Robert L. Dunn.

"Court Expands Lost Profits Damages From Patent Infringement," *CPA Expert*, summer 1996 (co-authored with Bruce L. McFarlane).

"The Implications of Changes in the Federal Rules of Civil Procedure for CPA-Expert Witnesses," *The CPA Management Consultant Newsletter* of the AICPA Management Consultant Division, spring 1994 (co-authored with Bruce L. McFarlane).

"The Revised Federal Rules of Civil Procedures That Apply to Expert Witnesses," *CPA Litigation Services Counselor*, Volume 1994, Issues 2 & 3. Harcourt Brace (February and March 1994).

"What Juries Look for in CPAs," *Journal of Accountancy* (November 1993).

"Litigation Services," *AICPA MAS Technical Consulting Practice Aid*, No. 7 1986 reprinted and updated as "Providing Litigation Services" *AICPA Consulting Services Practice AID 93-4* (co-authored with Peter B. Frank) (1993).

"Valuation of Intangible Assets," *Financial Valuation: Businesses and Business Interests*, Warren Gorham Lamont, 1993 Supplement (co-authored with Lee B. Shepard).

"Opportunities in Litigation Services," *Journal of Accountancy*, (June 1992) (co-authored with Bruce L. McFarlane).

"Economic Damages in Patent Infringement Cases," *Patent Litigation 1991*, Vol. II, Practicing Law Institute, Course Handbook Series No. 321 (co-authored with Peter B. Frank and Jeffrey H. Kinrich).

"Using CPAs In Your Law Practice," *Seattle-King County Bar Bulletin*, February 1991 (co-authored with Bruce L. McFarlane). Reprinted in *The Oregon Certified Public Accountant*, September 1991, as "The Role of the CPA in Commercial Litigation."

"The Accountant's Role in the Process of Damage Measurement," *The Practical Accountant* (July 1990).

"How do you Measure Damages? Lost Income or Lost Cash Flow?" *Journal of Accountancy* (February 1990).

"Expert Problems," *ABA Litigation Journal*, Volume 15, No. 2 (Winter 1989).

EXHIBIT ___75___

PAGE ___\\093___

"How to Control Your Expert," *Association of Business Trial Lawyers Report*, Volume X, No. 2 (February 1988).

"Computing Lost Profits and Reasonable Royalties," *American Intellectual Property Law Association Quarterly Journal*, Volume 15, No. 4 1987 (co-authored with Peter B. Frank).

"Breach of Duty by Directors, Officers and Principal Shareholders: Shareholder Derivative Actions," Chapter 63, *Commercial Damages*, Matthew Bender (1986).

"Computers Revolutionize Damage Claim Analysis," *The Recorder* (June 7, 1984).

"Analyzing Damage Claims—Discounted Cash Flow Method," *The National Law Journal* (August 29, 1983).

"The Litigator's Ultimate Weapon," *Los Angeles Lawyer* (May/June 1983) (co-authored with Peter B. Frank and Jeffrey H. Kinrich).

## Committee Publications

"Communicating Understandings in Litigation Services: Engagement Letters," AICPA Consulting Services Practice Aid 95-2 (1995).

Statement on Standards for Consulting Services No. 1, AICPA (October 1991).

## Selected Speeches

"Effective Presentations of Financial Information at Trial", 2007 Advanced Litigation Conference, California Society of CPAs, May 3, 2007, Las Vegas, Nevada

"Discounting Damages to Present Value: Today's Hottest Issues," panelist, Business Valuation Resources, July 20, 2005, Telephonic Conference

"Assessing and Proving Damages from Infringement," panelist, USC Law School 2004 Intellectual Property Institute, May 25, 2004, Beverly Hills, California

"Economic Damages," AICPA National Business Valuation Conference, November 17, 2003, Phoenix, Arizona

"Discovery of Expert Drafts and Notes, Panel Discussion," Advanced Workshop on Calculating & Proving Patent Damages, Law Seminars International, November 12, 2003, Seattle, Washington

"Calculating and Presenting Lost Profits: The Bread and Butter of Litigation Services" and "Mock Arbitration for Lost Profits", panelist on both presentations, AICPA National Conference on Advanced Litigation Services, October 1, 2003, Miami, Florida

EXHIBIT ___15___

PAGE ___694___

"Discount Rates and Taxation Issues in Damages," 2003 Advanced Business Litigation Institute,
California Society of CPAs, May 9, 2003, La Quinta, California

"Current Issues in Patent Damages," The Sedona Conference, November 10, 2000, Sedona,
Arizona

"Tax Issues in Lost Profits Damage Calculations" and panelist for "Expert Shootout, or Shoot the
Expert," 2000 AICPA National Advanced Litigation Services Conference, October 17, 2000, Beverly
Hills, California.

"IP Valuation: A Critical Component in Transactional and Litigation Strategy," Silicon Valley
Intellectual Property Law Association, September 20, 2000, Palo Alto, California

"Damages, Damages, Damages: Business Damages In Commercial Litigation," 1999 AICPA
National Advanced Litigation Services Conference, October 18, 1999, Atlanta, Georgia.

"Commercial Damages: A Case Study on Lost Profits," 1998 AICPA National Advanced Litigation
Services Conference, October 14, 1998, Tempe, Arizona.

"Damages—What You Need to Know as Taught by the Experts," 1998 ABA Section of Litigation
Annual Meeting, April 24, 1998, New York, New York.

"Expert Witnessing in a Fraud Case," 1997 AICPA National Conference on Fraud, December 8,
1997, San Antonio, Texas.

"Advanced Issues in Determining Discount and Growth Rates," 1997 AICPA National Advanced
Litigation Services Conference, October 16, 1997, Las Vegas, Nevada (with Greg Hallman).

"Alter Ego" and "More Effective Testimony," EPA Third Annual Financial Analyst Workshop, May 7–
8, 1997, Denver, Colorado.

"More Effective Testimony," 1996 AICPA National Advanced Litigation Services Conference,
October 1, 1996, New Orleans, Louisiana.

"Expert Witness," The 1996 AICPA Practitioners' Symposium, June 10, 1996, Las Vegas, Nevada.

"Calculating Damages," 1996 Institute of Business Appraisers Conference on Appraising Closely
Held Businesses, January 26, 1996, Orlando, Florida.

"Calculating Damages," 1995 Institute of Business Appraisers Conference on Appraising Closely
Held Businesses, January 26, 1995, Las Vegas, Nevada.

"The Revised Federal Rules of Civil Procedure That Apply to Expert Witnesses," 1994 AICPA
National Advanced Litigation Services. Conference, October 20, 1994, Phoenix, Arizona.

"Damages In Employment Litigation," Employment And Labor Law In Oregon, Lorman Education
Services, April 29, 1994, Portland, Oregon.

EXHIBIT ___75___

PAGE ___695___

"Damages, Time Value of Money" and panel participant on "Practical Problems of Federal Rule of Civil Procedure No. 26," 1994 Litigation Advanced Forum, California Society of CPAs, April 25, 1994, Monterey, California.

"Patent Infringement/Intellectual Property," 1993 Litigation Services Conference, California Society of CPA's, December 1, 1993, Los Angeles; December 2, 1993, San Francisco, California.

"Expert Witness Depositions," 1993 Oregon Society of CPA's Litigation Support Services Miniseries, November 17, 1993, Portland, Oregon.

"Panel: The Many Roads to Alternative Dispute Resolution" and "Basic Concepts in Litigation Services," Fifth Annual AICPA Conference on "The CPA's Role in Litigation Services," July 22–23, 1993, La Jolla, California.

"Professional Standards" and "Litigation Process/Role of Expert Witness" 1993 Litigation Services Conference, Washington Society of Certified Public Accountants, May 20, 1993, Bellevue, Washington.

"The Deposition of the Expert Witness," Fourth Annual AICPA Conference on "The CPA's Role in Litigation Services," July 17, 1992 Washington, DC; October 23, 1992, Las Vegas, Nevada.

"Litigation Services Standards," 1992 Litigation Services Conference, Washington Society of Certified Public Accountants, May 9, 1992, Silverdale, Washington.

"The Litigation Process Through Discovery," 1991 Litigation Services Conference, California Society of Certified Public Accountants, November 20, 1991, San Francisco; November 21, 1991, Los Angeles, California.

"Professional Standards and Work Papers," Oregon Society of CPAs, Litigation Support Services Conference, September 27, 1991, Portland, Oregon.

"Economic Analysis of Damages: Computing Lost Profits and Reasonable Royalties," IRR's Conference on Securing and Enforcing Intellectual Property Rights for Competitive Advantage, September 26, 1991, San Francisco, California.

"How to be a Better Testifying Expert," the Third Annual AICPA Conference on "The CPA's Role in Litigation Services," July 11, 1991, Denver, Colorado; October 10, 1991, Atlanta, Georgia.

"Accounting Standards in Litigation Support—Current and Future," Colorado Society of CPAs 1990 Litigation Support Conference, December 3,1990, Denver, Colorado.

"Mini Trials—New Work for Experts" and "Issues in Forensic Accounting," National Forensic Center's 7th National Conference, December 8, 1990, Palm Springs, California.

"Deposition of the Expert," California Society of CPAs 1990 Litigation Services Conference, November 19, 1990—San Francisco; November 20, 1990, Los Angeles, California.

EXHIBIT _15_

PAGE _696_

"Examining Damage Experts," PLI's Accountant's Liability: Trial Strategies Conference, August 10, 1990, San Francisco, California.

"Developing Damages: Mock Trial Demonstration, "AICPA's Conference on the CPA's Role in Litigation Services, July 13, 1990, Dallas, Texas; September 7, 1990, Washington, DC.

"Lost Profits, Business Interruptions" and "The Discovery Process," 1990 Litigation Consulting Conference, California Society of Certified Public Accountants, April 26, 1990, Los Angeles, California.

"Standards in Litigation Services Engagements" and "Expert Witness Strategy Tactics," Arizona Society of CPAs' Conference on the CPA as an Expert, September 25, 1989, Phoenix, Arizona.

"Damage Management," AICPA's Conference on the CPA's Role in Litigation Support Services, May 12, 1989, San Francisco; July 11, 1989, Boston; October 27, 1989, Chicago; December 8, 1989, Palm Beach, Florida.

"Litigation Services—Damage Studies," AICPA's 101st Annual Meeting, October 4, 1988, Los Angeles, California.

"Litigation Update," 1988 Marital Dissolution Conference, California Society of Certified Public Accountants, September 26, 1988, San Francisco; September 27, 1988, Los Angeles, California.

"The Mini-Trial Approach to Dispute Resolution," Los Angeles County Bar Association and the American Arbitration Association Conference on New Techniques in Dispute Resolution, February 4, 1988, Los Angeles, California.

"Damages Issues During Trial," Association of Business Trial Lawyers 14th Annual Seminar, October 17, 1987, Rancho Mirage, California.

"Litigation Services Committee Update," 1987 Marital Dissolution Conference, California Society of Certified Public Accountants, September 22, 1987, Los Angeles, California.

"Using a CPA in Litigation," 1987 Annual Meeting of the Florida Bar, June 11, 1987, Orlando, Florida.

"Litigation Services," 12th Annual AICPA Small Business Management Advisory Services Conference, September 9–10, 1986, Dallas, Texas.

EXHIBIT _____ 15

PAGE _____ 691

MICHAEL J. WAGNER
Page 9

EXPERT TESTIMONY—COURT (*Indicates number in deposition section if deposition testimony was given)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 105. | Global Sign, LLC, et al. v. Robert Merlo, et al. Civil Action No. 05 CC 04088 (2008) | Orange County Superior Court, California | Unfair Competition | Bidna & Keys | Damages Analysis |
| 104. | Computer Acceleration Corporation v. Microsoft Corporation Case No. 9:06CV-140 (2007)*235 | U.S. District Court Eastern District of Texas Lufkin Division | Patent Infringement | McKool Smith | Damages Analysis |
| 103. | Cybergym Research LLC v. ICON Health & Fitness, Inc., Sears Roebuck & Co., Costco Wholesale Corp., The Sports Authority, Inc., & Dick's Sporting Goods, Inc. Case No. 2:05-cv-527-DF (2007)*230 | U.S. District Court Eastern District of Texas Marshall Division | Patent Infringement | Russo & Hale | Damages Analysis |
| 102. | Electromotive, Inc. v. Mercury Marine Case No. 1:06CV1139 (GBL/TRJ) (2007) | U.S. District Court, Eastern District of Virginia | Patent Infringement | Kaufman & Canoles | Damages Analysis |
| 101. | Broadcom Corporation v. Qualcomm Incorporated Case No. SACV05-467 JVS (RNBx (2007)*224 | U.S. District Court Central District of California, Southern Division | Patent Infringement | Wilmer Cutler Pickering Hale & Dorr | Damages Analysis & Irreparable Harm |
| 100. | In re 3dfx Interactive, Inc. and William A. Brandt, Jr., Trustee v. nVidia Corporation and nVidia Investment Company Case No. 02-55795 RLE (2207)*213 | U.S. Bankruptcy Court Northern District of California San Jose Division | Fraudulent Transfer | Buchalter Nemer | Business Valuation |
| 99. | MAN Aktiengesellschaft, et al., v. Daimler-Chrysler AG, Freightliner LLC, et al. No. 0412-13050 (2006) | Multnomah Circuit Court, Oregon | Fraud | Ball Janik Alston & Bird | Solvency analysis, Ordinary Course of Business, Reasonably Equivalent Value |
| 98. | In the Matter of the George L. Brichetto and Elizabeth M. Brichetto Living Trust Dated October 1, 1987, as Amended. Case No. 328789 (2006) | Stanislaus Superior Court, California | Breach of Fiduciary Duty | Damrell Nelson Schrimp Pallios Pacher & Silva | Trust Accounting and Damages Analysis |
| 97. | Christopher R. Harris v. San Jose Mercury News, Inc. Case No. C-04-05262 (CRB) (2006) *217 | U.S. District Court Northern District of California | Copyright Infringement | DLA Piper Rudnick Gray Cary; Sheppard Mullin | Damages Analysis |

EXHIBIT 75
PAGE 698

EXPERT TESTIMONY—COURT (*Indicates number in deposition section if deposition testimony was given)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 96. | L.G. Philips LCD Co. Ltd. V. Tatung Company, Tatung Company of America, Inc., Chunghwa Picture Tubes Ltd., and ViewSonic Corporation, Civil Action No. 05-292 (JJF) (2006) *218 | U.S. District Court District of Delaware | Patent Infringement | Howrey LLP | Damages Analysis |
| 95. | PostX Corporation v. Secure Data In Motion, Inc., d/b/a Sigaba Case Nos. C02-04483 SI and C03-0521 SI (2006) *210 | U.S. District Court Northern District of California, San Francisco Division | Unfair Competition | Pillsbury Winthrop Shaw Pittman | Damages Analysis |
| 94. | Stephen M. Waltrip, et al. v. Kevin B. Kimberlin, et al. Case No. 01AS04979 (2005) *211 | Sacramento Superior Court, California | Fraud and Breach of Fiduciary Relationship | Sedgewick Detert Moran & Arnold | Damages Analysis Alter Ego Analysis |
| 93. | Coleman (Parent) Holding v. Morgan Stanley Co., Inc. Case No. 2003 CA 005045 A1 (2005) *206 | Circuit Court of the Fifteenth Judical Circuit Palm Beach County, Florida | Breach of Fiduciary Duty | Jenner & Block | Punitive Damages |
| 92. | Tarik Oman, et al. v. Kindred Healthcare Operating, Inc. et al. Case No. BC280010 (2005) | Los Angeles Superior Court, California | Fraud | Law Offices of Victor L. George | Punitive Damages |
| 91. | Coelho, et al. v. Coelho, et al. Case Nos. 591120-1, 595828-5, 588695-7, and 0537454-1 (2003) (2005) (2006) *176 | Fresno Superior Court, California | Breach of Fiduciary Duties | Darnell Nelson Schrimp Pallios Pacher & Silva Lange Richert & Patch Parish & Nelson | Damages Analysis |
| 90. | Billy Blanks, et al. v. Seyfarth Shaw LLP Case No. BC 308355 (2005) *205 | Los Angeles Superior Court, California | Legal Malpractice | Law Offices of James Rosen | Damages Analysis & Punitive Damages |
| 89. | Kalitta Air, LLC, as assignee of American International Airlines, Inc. v. Central Texas Airborne Systems, Inc. Case No. 96-2494CW & 97-0378CW (2005) *191 | U.S. District Court Northern District of California | Breach of Contract | Sedgewick, Detert, Moran & Arnold | Damages Analysis |
| 88. | The Coleman Company, Inc. v. Fleetwood Enterprises, Inc. & Fleetwood Folding Trailers, Inc. Civil Action No. 03 CV 2029 (2004) *203 | Eighteenth Judicial Court, Sedgewick County, Kansas | Trademark Infringement & Interference with Contract | Foulston Siefkin LLP | Damages Analysis |

EXHIBIT 75

PAGE 699

EXPERT TESTIMONY—COURT (*Indicates number in deposition section if deposition testimony was given)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 87. | St. Clair Intellectual Property Licensing, Inc. v. Fuji Photo Film Co. Ltd, Fuji Photo File USA, Inc., and Fujifilm America, Inc. Case No. 03-241-JJF (2004) *199 | U.S. District Court, District of Delaware | Patent Infringement | Robins Kaplan Miller & Ciresi | Damages Analysis |
| 86. | St. Clair Intellectual Property Licensing, Inc. v. Canon Inc. and Canon USA, Inc. Case No. 03-241-JJF (2004) *198 | U.S. District Court, District of Delaware | Patent Infringement | Robins Kaplan Miller & Ciresi | Damages Analysis |
| 85. | Immersion Corporation v. Sony Computer Entertainment America, Inc. Sony Computer Entertainment, Inc. and Microsoft Corporation No. C 02-0710 CW (WDB) (2004) *189 | U.S. District Court Northern District of California Oakland Division | Patent Infringement | Irell & Manella | Damages Analysis |
| 84. | Patrick Martin, Inc. and Patrick Walsh v. Ralph Clumeck & Associates, et al. Case No. 03CC06858 (2004) *196 | Orange County Superior Court, California | Breach of Fiduciary Duty | Nordman Cormany Hair & Compton | Damages Analysis |
| 83. | Protocol Services, Inc. v. Evolve Tele-Services, et al. Case No. 5:03 CV 0174 (2004) | U.S. District Court Western District of Michigan Southern Division | Theft of Trade Secret | Jenner & Block | Damages Analysis |
| 82. | Jerome Dahan and Michael Glasser v. L'Koral and Peter Koral Case No. BC 286577 (2004) *193 | Los Angeles County Superior Court, California | Fraud and Breach of Fiduciary Duty | Browne & Woods Law Offices of Gary Freedman | Business Valuation |
| 81. | Engineered Products Co. v. Donaldson Company, Inc. Civ. No. 98-2106 MJM (2004) *132 | U.S. District Court, Northern District of Iowa | Patent Infringement | Robins, Kaplan, Miller & Ciresi | Damages Analysis |
| 80. | Mallinckrodt, Inc., et al. v. Masimo Corporation Case No. CV 00-6506 MRP (2004) | U.S. District Court Central District of California | Patent Infringement | Knobbe Martens Olson & Bear | Damages Analysis |
| 79. | Meridian Enterprises Corporation v. Carlson Marketing Group, Inc. Case No. 4:01CV1955CDP (2004) *185 | U.S. District Court Eastern District of Missouri, Eastern Division | Patent Infringement | Woodard, Emhardt, Moriarty & McNett | Damages Analysis |
| 78. | Glaxo Group Ltd. and Glaxo Wellcome, Inc. V. Ranbaxy Pharmaceuticals Inc. Civil Action No. 00-5172 MLC (2003) *179 | U.S. District Court District of New Jersey | Patent Infringement | Knobbe Martens Olson & Bear | Damages Analysis |

EXHIBIT ___ 15

PAGE ___ 100

EXPERT TESTIMONY—COURT (*Indicates number in deposition section if deposition testimony was given)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 77. | Lyrick Studios, Inc. v. Big Idea Productions, Inc. Civil Action 3-02 CV-0034 M (2003) *173 | U.S. District Court Northern District of Texas, Dallas Division | Breach of Contract | Baker Botts L.L.P. O'Melveny & Myers | Damages Analysis |
| 76. | LASVN#2, et al. v. Van Ness and Sperry, et al., Case No. BC 206251 (2003) *163 | Los Angeles Superior Court, California | Breach of Fiduciary Duty | Krane & Smith | Damages Analysis & Punitive Damages |
| 75. | Carver et al. v. Audio Products International Corp. Case No. CV00-1477L (2003) *164 | U.S. District Court Western District of Washington | Patent Infringement | Christenson, O'Connor, Johnson & Kindness | Damages Analysis |
| 74. | Lowe's Home Centers, Inc. v. General Electric Company Case No. 4:98-CV 0028 (2002) *135 | U.S. District Court, Northern District of Georgia Rome Division | Environmental Contamination | Williams & Connolly | Damages Analysis |
| 73. | City of Hope National Medical Center v. Genentech, Inc. Case No. BC 215152 (2001 & (2002) *154 | Los Angeles Superior Court, California | Breach of Contract | Irell & Manella | Damages Analysis & Punitive Damages |
| 72. | Perry v. Mellon Financial Corporation Case No. 997170 (2001) *157 | San Francisco Superior Court | Breach of Contract | Howard, Rice, Nemerovski, Canady, Robertson & Folk | Damages Analysis |
| 71. | True North Composites LLC v. Trinity Industries Case No. 99-783 (2001) | U.S. District Court District of Delaware | Breach of Contract | Baker Botts L.L.P. | Damages Analysis |
| 70. | MET-Rx Foundation for Health Enhancement, et al. v. MET-RX USA, INC., et al. Case No. 771551 (2000) *126 | Orange County Superior Court, California | Breach of Contract | Feldhake, August & Roquemore | Damages Analysis |
| 69. | Telecontrol Systems, Inc. v. Westec Security, Inc. Case No. BC 188264 (2000) *125 | Los Angeles Superior Court, California | Theft of Trade Secret | Howarth & Smith | Damages Analysis |
| 68. | Hameetman v. Schumann, et al., Case No. SC 049754 (2000) *124 | Los Angeles Superior Court, California | Breach of Contract | Hennigan, Bennett & Dorman | Damages Analysis |
| 67. | Advanced Cardiovascular Systems, Inc. v. Medtronic, Inc. Case Nos. 95-03577 DLJ & 96-00942(DLJ) (1999) *121 | U.S. District Court Northern District of California, Oakland Division | Patent Infringement | Robins, Kaplan, Miller & Ciresi | Damages Analysis |
| 66. | Trovan, Ltd., et al. v. Pfizer, Inc. Case No. 98-0094 (1999) *120 | U.S. District Court, Central District of California | Lanham Act | Levin & Hawes | Damages Analysis |

EXHIBIT ____ 75

PAGE ____ 701

EXPERT TESTIMONY—COURT (*Indicates number in deposition section if deposition testimony was given)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|-----|---------|-------|------|-------------------|----------------|
| 65. | Precor Incorporated v. Life Fitness Civil No. C94-1556C (1999) *117 | U.S. District Court Western District of Washington | Patent Infringement, Unfair Competition | Christensen, O'Connor, Johnson & Kindness | Damages Analysis |
| 64. | Surgin Surgical Instrumentation, Inc. v. Truck Insurance Exchange Case No. 66 2216 (1999) *114 | Orange County Superior Court, California | Breach of Contract | Stradling Yocca Carlson & Rauth | Damages Analysis |
| 63. | Airgas, Inc. v. Praxair, Inc. Case No. 115 (1999) | Common Pleas, First Judicial District of Pennsylvania | Breach of Contract | Cozen & O'Connor | Damages Analysis |
| 62. | Chesterfield Investments, et al. v. Stone Container Corporation Case No. BC 188858 (1999) *113 | Los Angeles Superior Court, California | Breach of Contract | Orrick, Herrington & Sutcliffe | Damages Analysis |
| 61. | Lexecon, Inc. v. Milberg, Weiss, et al. No. 92C7768 (1999) | U.S. District Court, Northern District of Illinois | Abuse of Process | Jenner & Block | Damages Analysis |
| 60. | Saremi, et al. v. Atara, et al. Case No. 387467 (1999) *111 | San Mateo Superior Court, California | Breach of Contract | Nelson, Greenberg & Cohen | Damages Analysis |
| 59. | 9850 Meadowglen Properties v. A.G. Spanos Enterprises, Inc. Case No. BC 084216 (1998) and (1997) | Los Angeles Superior Court, California | Breach of Contract | Freeman & Brown | Damages analysis |
| 58. | Evanite Fiber Corp. v. Lauschaer Glaswerk GmbH, et al. Civil No. 2: 96-3525-18 (1998) *106 | U.S. District Court, District of South Carolina, Charleston Division | Theft of Trade Secret | Farleigh, Wada & Witt | Damages Analysis |
| 57. | Ayre, et al. V. Attwood Corp., et al. Case No. 96-5087-NP (1998) *103 | Circuit Court, County of Kent, Michigan | Wrongful Death | Kell & Lynch; Chaklos, Jungerheld, Hahn & Washburn | Damages Analysis |
| 56. | AMETRON v. Entin, et al. Case No. BC160521 (1998) *101 | Los Angeles Superior Court, California | Usurpation of Corporate Opportunity | Mahoney, Coppenrath, Jaffe & Pearson | Damages Analysis |
| 55. | Koutney v. Exxon Corporation Case No. CV 748293 (1997) | Santa Clara Superior Court, California | Unfair Competition | McClintock, Weston, Benshoof, Rochefort, Rubalvaca & MacCuish | Damages Analysis |
| 54. | Galaxy Networks, Inc. v. Kenan Systems Corp. Civil Action No. CV-95-5568 DDP (1997) *95 | U.S. District Court, Central District of California | Unjust Enrichment, Quantum Meruit | Irell & Manella | Damages Analysis |

EXHIBIT _____ 75

PAGE _____ 702

EXPERT TESTIMONY—COURT (*Indicates number in deposition section if deposition testimony was given)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 53. | Potlatch Corporation v. Beloit Corporation Case No. CV 95-01992 (1997) *92 | 2nd Judicial District State of Idaho | Breach of Contract | Sacks Montgomery | Damages Analysis |
| 52. | The Samuel Goldwyn Co. v. MCEG Virgin Vision, Ltd. Case No. BC 016305 (1997) *91 | Los Angeles Superior Court, California | Breach of Contract | Irell & Manella | Damages Analysis |
| 51. | Competitive Technology, Inc. v. AST Research, Inc. Case No. 74 82 37 (1996) *79 | Orange County Superior Court, California | Tortious Interference with Contract | Stradling, Yocca, Carlson & Rauth | Damages Analysis |
| 50. | Medical Billing, Inc. v. Medical Management Services No. 1:94-CV-1567 (1996) *77 | U.S. District Court Northern District of Ohio, Eastern Division | Breach of Contract | Donovan, Leisure, Newton & Irvine | Damages Analysis |
| 49. | Cook v. Carousel Mall Case No. SCV 07595 (1996) | San Bernardino Superior Court, California | Breach of Fiduciary Duty | Howarth & Smith | Damages Analysis |
| 48. | Forti v. General Dynamics No. KC 016871/017393 (1996) *73 | Los Angeles Superior Court, California | Breach of Contract | Howarth & Smith | Business Valuation |
| 47. | Wilcox & Devine v. Wilkes-Barre General Hospital Case No. 5418-C-1990 (1996) | Court of Common Pleas, Luceme County, Pennsylvania | Breach of Contract | Nash & Company | Damages Analysis |
| 46. | TLB, Inc. v. Platinum Software Civil No. 95WY621 (1996) *72 | U.S. District Court of Colorado | Tortious Interference with Contract | Stradling, Yocca, Carlson & Rauth | Damages Analysis |
| 45. | In re: AST Research Securities Litigation CV-94-1370 SVW (1995) *66 | U.S. District Court, Central District of California | Class Action Securities Case | Prongay & Mikolajcyk; Greenfield & Rifkin | Damages Analysis |
| 44. | TRW, Inc. v. Talley Industries CIV 94-0350-PHX-PGR (1995) *64 | U.S. District Court, District of Arizona | Breach of Contract | Donovan, Leisure, Newton & Irvin; Cohen & Cotton | Damages Analysis |
| 43. | Supra Corporation v. D.L. Horton Enterprises, Inc. BC 093085 (1995) *61 | Los Angeles Superior Court, California | Breach of Fiduciary Duty | Stradling, Yocca, Carlson & Rauth | Damages Analysis |
| 42. | Portland 76 v. UNOCAL, et al. Case No. 92-1635 (1995) | U.S. District Court District of Oregon | Breach of Contract | Ball, Janik & Novack | Damages Analysis |

EXHIBIT _____ 75
PAGE _____ 703

MICHAEL J. WAGNER
Page 15

## EXPERT TESTIMONY—COURT (*Indicates number in deposition section if deposition testimony was given)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|-----|---------|-------|------|--------------------|----------------|
| 41. | Mortoff v. Scotti Bros. Entertainment No. BC 022503 (1995) | Los Angeles Superior Court, California | Breach of Contract | Law Offices of James P. Tierney | Damages Analysis |
| 40. | Mahne v. Crown Roll Leaf No. BC069435 (1994) *59 | Los Angeles Superior Court, California | Breach of Contract | Quinn, Emanuel, Urquhart & Oliver | Damages Analysis |
| 39. | Castro v. Paine Webber, Inc. No. 1.94CV65 and No. 1.94CV256 (1994) | U.S. District Court, Eastern Division of Texas | Class Action Securities Case | Provost & Umphrey | Fairness of Settlement |
| 38. | Virgin Vision Ltd. v. The Samuel Goldwyn Co. No. BC-013701 (1994) *58 | Los Angeles Superior Court, California | Intellectual Property | Law Offices of James P. Tierney | Damages Analysis |
| 37. | Chaintool Company v. Workman, Nydegger & Jensen Civil No. 900903226CV (1994) *55 | Third Judicial Court, Salt Lake City, Utah | Patent Attorney Malpractice | Wilkins, Oritt & Headman | Damages Analysis |
| 36. | In re: Information Resources, Inc. Civil No. 89C 3712 (1994) *53 | U.S. District Court, Northern District of Illinois | Class Action Securities Case | Freeborn & Peters; Katten, Muchin & Zavis | Budgeting |
| 35. | Lawrence v. Equipment Denis (1993) | Circuit Court, Multnomah County, Oregon | Products Liability | Farleigh, Wada & Witt | Damages Analysis |
| 34. | Georgia Pacific v. Corrugated Partitions, Inc. (1993) | Orange County Superior Court, California | Breach of Contract | Howarth & Smith | Alter Ego Analysis |
| 33. | Grice Industries v. Ingman (1993) | Circuit Court, Lane County, Oregon | Patent Attorney Malpractice | Williams & Troutwine | Damages Analysis |
| 32. | Boly v. Boly (1992) | Circuit Court, Multnomah County, Oregon | Marital Dissolution | Gevurtz, Menashe, Hergert, Larson & Kurshner | Business Valuation |
| 31. | Rekdahl v. Owens Illinois (1992) | Los Angeles Superior Court, California | Products Liability | Howarth & Smith | Punitive Damages |
| 30. | E.J. Bartells Co. v. A.P. Green Industries (1992) *42 | King County Superior Court, Washington | Securities Laws Violations | Thompson & Mitchell | Damages Analysis |
| 29. | Glock v. Owens Illinois (1991) | Philadelphia County Court, Pennsylvania | Products Liability | Howarth & Smith | Punitive Damages |
| 28. | Ixsys v. Stratagene (1991) *38 | San Diego Superior Court, California | Intellectual Property | Pillsbury, Madison & Sutro | Damages Analysis |

EXHIBIT _____ 75

PAGE _____ 704

MICHAEL J. WAGNER
Page 16

EXPERT TESTIMONY—COURT (*Indicates number in deposition section if deposition testimony was given)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|-----|---------|-------|------|--------------------|----------------|
| 27. | WSI v. Port of Portland (1991) | Circuit Court, Multnomah County, Oregon | Breach of Contract | Bogle & Gates | Damages Analysis |
| 26. | Torppe v. Saint Joseph Medical Center (1991) | Los Angeles, Superior Court, California | Medical Malpractice | Gibson, Dunn & Crutcher | Damages Analysis |
| 25. | Keike v. Owens Illinois (1991) | Circuit Court, Hawaii | Asbestos | Greeley, Walker & Kowen | Punitive Damages |
| 24. | Gresham v. Warren Tool (1991) | Circuit Court, Multnomah County, Oregon | Product Liability | Farleigh, Wada & Witt | Damages Analysis |
| 23. | Ingram v. Owens Illinois (1990) *36 | U.S. District Court, Oregon | Asbestos | Morgenstein & Jubelirer | Punitive Damages |
| 22. | First Interstate Bank of Washington v. AFC (1990) *33 | King County Superior Court, Washington | Lender Liability | Davis, Wright & Tremaine | Damages Analysis |
| 21. | Woodbridge Plaza v. Bank of Irvine (FDIC) (1990) *30 | Orange County Superior Court, California | Breach of Contract | Bidna & Keys | Real Estate Valuation |
| 20. | Hammersmith v. Taco Bell Corp. (1990) *27 | U.S. District Court, Oregon | Fraud | Skadden, Arps, Slate, Meagher & Flom | Damages Analysis |
| 19. | Pioneer Hi-Bred v. Holden Foundation Seeds (1989) *26 | U.S. District Court, Iowa | Theft of Trade Secret | Grefe & Sidney | Damages Analysis |
| 18. | In re: Desert High Foods, Inc. (1989) | U.S. Bankruptcy Court, Eastern District of California | Bankruptcy | Gendel, Raskoff, Shapiro & Quittner | Business Valuation |
| 17. | ASD, Ltd. v. Carolina Lanes, Inc. (1989) | Los Angeles Superior Court, California | Unlawful Detainer | Law Offices of Frank Whitehead | Revenue Analysis |
| 16. | Hideaway Productions v. Ampex Corp. (1989) *25 | Los Angeles Superior Court, California | Breach of Implied Warranties, Fraud | Rosenfeld, Meyer & Sus-man | Damages Analysis |
| 15. | Bernstein v. Delta Airlines (1989) *23 | U.S. District Court, Southern District of Florida | Wrongful Death | Steven Walker; Jenner & Block | Damages Analysis |
| 14. | Lippman v. Levy (1989) *22 | Los Angeles Superior Court, California | Breach of Contract, Fraud | Browne & Woods | Business Valuation |

EXHIBIT 75
PAGE 705

MICHAEL J. WAGNER
Page 17

EXPERT TESTIMONY—COURT (*Indicates number in deposition section if deposition testimony was given)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 13. | Kay Co. v. HCC Industries (1989) *20 | U.S. District Court, Southern District of Texas | Product Liability | Mayer, Day & Caldwell | Alter Ego Analysis |
| 12. | Challenge/Cook Brothers v. LCB Holdings (1989) | Federal District Court, Central District of California | Breach of Contract | Loeb & Loeb | Business Valuation |
| 11. | Gursey v. Landon (1988) | Los Angeles Superior Court, California | Accounting Malpractice | Haight, Brown & Bonesteel | Professional Standards |
| 10. | Redacted v. Redacted (1988) *17 | Los Angeles Superior Court | Professional Negligence | Riordan & Mckenzie | Professional Negligence & Damages Analysis |
| 9. | George W. Gaulding, Jr. v. River Downs Investments Co. (1988) | U.S. Bankruptcy Court, Central District of California | Bankruptcy, Breach of Fiduciary Duty | Lobel, Winthrop & Broker | Investigatory Accounting |
| 8. | Egilsson v. Polarknit (1987) | Federal District Court, Central District of California | Antitrust | Shea & Gould | Damages Analysis |
| 7. | Newman v. Stutman, Treister & Glatt (1986) | Los Angeles Superior Court, California | Legal Malpractice | Irell & Manella | Damages Analysis |
| 6. | Stewart v. Stewart (1986) | Orange County Superior Court, California | Fraud to Set Aside Marital Dissolution Property Settlement | Hunt, Colaw & Roe, Inc. | Business Valuation |
| 5. | Prowizor v. City of Los Angeles (1986) | Los Angeles City Administrative Hearing, California | Wrongful Termination | Lowe & Marr | Damages Analysis |
| 4. | Asphalt Specialties, Inc. v. State of California (1986) | Riverside Superior Court, California | Breach of Contract | Legal Staff of California Department of Transportation | Damages Analysis |
| 3. | Cadillac Fairview/California, Inc. v. Atlantic Mutual Insurance Co. (1985) | Federal District Court, Northern District of California | Breach of Insurance Contract | Irell & Manella | Analysis of Reasonableness of Attorney Fees |
| 2. | Decorative Carpets v. Barkhordarian (1983 and 1988) *3 | San Francisco Superior Court, California | Constructive Eviction | Pillsbury, Madison & Sutro | Damages Analysis |
| 1. | Bernstein v. L.A. New Hospital (1983) | Los Angeles Superior Court, California | Breach of Contract | Gold, Herscher, Marks & Pepper | Damages Analysis |

EXHIBIT _____ 75

PAGE _____ 700

**MICHAEL J. WAGNER**
Page 18

EXPERT TESTIMONY—COURT (*Indicates number in deposition section if deposition testimony was given)

EXHIBIT _____ 75 _____

PAGE _____ 707 _____

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|-----|---------|-------|------|--------------------|----------------|
| 238. | North American Title Company v. Liberty Title Company Case No. C 06-00187 (2008)** | Contra Costa County Court, California | Theft of Trade Secret | Weintraub Genshla Chediak Jackson Lewis Seyfarth Shaw | Damages Analysis |
| 237. | Eastman Kodak Company v. St. Clair Intellectual Property Licensing, Inc., et al. Case No. 1-05-CV-039164 (2008)** | Santa Clara County Court, California | Slander of Title | Robins Kaplan Miller & Ciresi | Damages Analysis |
| 236. | Diana Gabriel, et al. v. Verizon Communications Inc., et al. Case No. 04 CC 00591 (2007) | Orange County Superior Court, California | Breach of Contract | Paul Hastings Janofsky & Walker | Damages Analysis |
| 235. | Computer Acceleration Corporation v. Microsoft Corporation Case No. 9:06CV-140 (2007)** | U.S. District Court Eastern District of Texas Lufkin Division | Patent Infringement | McKool Smith | Damages Analysis |
| 234. | Hewlett-Packard Company v. Factory Mutual Insurance Company Case No. 04-CV-02791 (2007) | U.S. District Court Southern District of New York | Business Interruption | Robins Kaplan Miller & Ciresi | Damages Analysis |
| 233. | Veritas Operating Corporation v. Microsoft Corporation Case No. 2:06-cv-00703-JCC (2007)** | U.S. District Court Western District of Washington at Seattle | Patent Infringement | Latham & Watkins | Damages Analysis |
| 232. | Polycom, Inc. and Polycom Israel, Ltd. V. Codian Ltd. And Codian, Inc. Case No. 2-05CV-520 DF (2007)** | U.S. District Court Eastern District of Texas Marshall Division | Patent Infringement | Irell & Manella | Damages Analysis |
| 231. | ISP.NET LLC d/b/a iQuest Internet v. Qwest Communications International, Inc. Case No. IP01-0480 C B/S (2007)** | U.S. District Court Southern District of Indiana Indianapolis Division | Trademark Infringement | Reed Smith Sachnoff & Weaver | Damages Analysis |
| 230. | Cybergym Research LLC v. ICON Health & Fitness, Inc., Sears Roebuck & Co., Costco Wholesale Corp., The Sports Authority, Inc., & Dick's Sporting Goods, Inc. Case No. 2:05-cv-527-DF (2007)** | U.S. District Court Eastern District of Texas Marshall Division | Patent Infringement | Russo & Hale | Damages Analysis |

EXHIBIT _____ 75
PAGE _____ 708

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 229. | Timeline, Inc. v. Proclarity Corporation and Microsoft Corporation Case No. CV05-1013JLR (2007)** | U.S. District Court Western District of Washington at Seattle | Patent Infringement | Susman Godfrey L.L.P. | Damages Analysis |
| 228. | David Gill, Post Confirmation Trustee for the Estate of Lyon & Lyon v. Orrick, Herrington & Sutcliffe, LLP, et al. Case No. LA-03-10365-VZ (2007)** | U.S. Bankruptcy Court Central District of California Los Angeles Division | Breach of Fiduciary Duty | Howard Rice Nemerovski, Canady, Falk & Rabkin | Damages Analysis |
| 227. | Cardiac Pacemakers, Inc., Guidant Sales Corporation, Mirowski Family Ventures, LLC, and Anna Mirowski v. St. Jude Medical, Inc. and Pacesetter, Inc. Civil No. 1:96-CV-1718-DFH/TAB (2007)** | U.S. District Court, Southern District of Indiana, Indianapolis Division | Patent Infringement | Finnigan Henderson Farabow Barrett & Dunner LLP | Damages Analysis |
| 226. | Creative Concepts Software, Inc. and ITEK Services, Inc. v. MobileTech Solutions, Inc. Case No. SA CV 05-00670 DOC (MLGx) (2007) | U.S. District Court Central District of California, Southern Division | Breach of contract | The Fledhake Law Firm | Damages Analysis |
| 225. | Semiconductor Energy Laboratory Co., Ltd. v. Chi MEI Optoelectronics Corp., International Display Technology Co., Ltd., International Display Technology USA, Inc., Westinghouse Digital Electronics, LLC and CTX Technology Corp. C04-4675 RS (2007)** | U.S. District Court Northern District of California | Patent Infringement | Jenner & Block | Damages Analysis |
| 224. | Broadcom Corporation v. Qualcomm Incorporated Case No. SACV05-467 JVS (RNBx (2007)** | U.S. District Court Central District of California, Southern Division | Patent Infringement | Wilmer Cutler Pickering Hale & Dorr | Damages Analysis |
| 223. | Semiconductor Energy Laboratory Co., Ltd. v. Toppoly Optoelectronics Corp., Samsung Techwin Co., Ltd., Samsung Optoelectronics America, Inc., Matsunichi Hi-Tech Ltd.; and Matsunichi Hi-Tech (USA), Inc. Case No. CV 04-4783 TJH (2006)** | U.S. District Court Central District of California | Patent Infringement | Jenner & Block | Damages Analysis |

EXHIBIT ___75___

PAGE ___709___

MICHAEL J. WAGNER
Page 21

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 222. | Qualcomm Incorporated v. Broadcom Corporation Case No. 05 CV 1662 B (BLM) (2006)** | U.S. District Court Southern District of California | Patent Infringement | Wilmer Cutler Pickering Hale & Dorr | Damages Analysis |
| 221. | Qualcomm Incorporated v. Broadcom Corporation Case No. 05 CV 1958 (2006)** | U.S. District Court Southern District of California | Patent Infringement | Wilmer Cutler Pickering Hale & Dorr | Damages Analysis |
| 220. | The Nautilus Group, Inc. v. ICON Health & Fitness, Inc., Case No. 02-1420 RSM (2006)** | U.S. District Court of Western District of Washington | Trademark Infringement | Jeffer, Mangels, Butler & Marmaro | Damages Analysis |
| 219. | Moss, et al. v. Veneco et al. Case No. 297083 (2006) | Los Angeles Superior Court, California | Mass Tort | Gallagher & Gallagher; Steptoe & Johnson | Alter Ego |
| 218. | L.G. Philips LCD Co. Ltd. V. Tatung Company, Tatung Company of America, Inc., Chunghwa Picture Tubes Ltd., and ViewSonic Corporation, Civil Action No. 05-292 (JJF) (2006)** | U.S. District Court District of Delaware | Patent Infringement | Howrey LLP | Damages Analysis |
| 217. | Christopher R. Harris v. San Jose Mercury News, Inc. Case No. C-04-05262 (CRB) (2006) | U.S. District Court Northern District of California | Copyright Infringement | DLA Piper Rudnick Gray Cary | Damages Analysis |
| 216. | Dey, L.P. v. IVAX Pharmaceuticals, Inc. and Eon Labs, Inc. Case Nos. SACV 04-00079 CJC (FMOx) and SACV 04-00243 CJC (FMOx) (2006)** | U.S. District Court Central District of California Southern District | Patent Infringement | Hennigan Bennett & Dorman | Commercial Success |
| 215. | McKesson Information Solutions LLC v. The Trizetto Group, Inc. Civil Action No. 04-1258 (2005)** | U.S. District Court Northern District of Delaware | Patent Infringement | Skadden Arps Slate Meagher & Flom | Damages Analysis |
| 214. | Advanced Neuromodulation Systems, Inc. v. Advanced Bionics Corporation Civil Action No. 4:04cv131 (Brown) (2005)** | U.S. District Court Eastern District of Texas Sherman Division | Patent Infringement | Baker Botts L.L.P. | Damages Analysis |
| 213 | Trustee in Bankruptcy for 3dfx v. NVIDIA Corp. Case No. 02-55795 JRG (2005) ** | U.S. Bankruptcy Court Northern District of California San Jose Division | Fraudulent Transfer | Buchalter Nemer Fields & Younger | Business Valuation |

EXHIBIT ___75___
PAGE ___710___

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 212 | John R. Jamison v. Olin Corporation-Winchester Division; U.S. Repeating Arms Co., Inc.; Browning; Browning Arms Co.; and G.I. Joe's Case No. 3-03-01036-KI (2005)** | U.S. District Court District of Oregon | Patent Infringement | Stoll Stoll Berne Lokting & Shlachter | Damages Analysis |
| 211. | Stephen M. Waltrip, et al. v. Kevin B. Kimberlin, et al. Case No. 01AS04979 (2005) | Sacramento Superior Court, California | Fraud and Breach of Fiduciary Relationship | Sedgewick Detert Moran & Arnold | Damages Analysis Alter Ego Analysis |
| 210. | PosiX Corporation v. Secure Data In Motion, Inc., d/b/a Sigaba Case Nos. C02-04483 SI and C03-0521 SI (2005)** | U.S. District Court Northern District of California, San Francisco Division | Unfair Competition | Pillsbury Winthrop Shaw Pittman | Damages Analysis |
| 209. | Network Appliance, Inc. v. BlueArc Corporation Case No. C 03-05665 MHP (2005)** | U.S. District Court Northern District of California, San Francisco Division | Patent Infringement | Howrey Simon Arnold & White | Damages Analysis |
| 208. | Teri J. McDermott, CMI, et al. v. Advanstar Communications, Inc. Case No. 1:98 CV 515 (2005) | U.S. District Court Northern District of Ohio, Eastern Division | Copyright Infringement | Greenberg Traurig | Damages Analysis |
| 207. | Storage Technology Corporation v. Quantum Corporation Civil Action No. 03-M-0672 PAC (2005)** | U.S. District Court District of Colorado | Patent Infringement | Howrey Simon Arnold & White | Damages Analysis |
| 206. | Coleman (Parent) Holding v. Morgan Stanley Co., Inc. Case No. 2003 CA 005045 A1 (2005) | Circuit Court of the Fifteenth Judicial Circuit Palm Beach County, Florida | Breach of Fiduciary Duty | Jenner & Block | Business Valuation |
| 205. | Billy Blanks, et al. v. Seyfarth Shaw LLP Case No. BC 308355 (2005) | Los Angeles Superior Court, California | Legal Malpractice | Law Offices of James Rosen | Damages Analysis |
| 204. | Intergraph Hardware Technologies Company v. Hewlett Packard Civil Action No. 2-02CV-312 TJW (2004)** | U.S. District Court Eastern District of Texas Marshall Division | Patent Infringement | Robins Kaplan Miller & Ciresi | Damages Analysis |
| 203. | The Coleman Company, Inc. v. Fleetwood Enterprises, Inc. & Fleetwood Folding Trailers, Inc. Civil Action No. 03 CV 2029 (2004)** | Eighteenth Judicial Court, Sedgewick County, Kansas | Trademark Infringement & Interference with Contract | Foulston Siefkin LLP | Damages Analysis & Alter Ego Analysis |

EXHIBIT __15__

PAGE __711__

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 202. | LiveWorld Inc. v. SocialNet, Inc., MatchNet PLC, et al. Case No. 1-01-CV799864 (2004)** | Santa Clara County Superior Court, California | Fraudulent Transfer | Bergeson, LLP | Alter Ego Analysis |
| 201. | Comdisco, Inc. v. SocialNet, Inc., Match-Net, Inc., et al. Case No. CV 800 611 (2004)** | Santa Clara County Superior Court, California | Fraudulent Transfer | Winston & Strawn | Alter Ego Analysis |
| 200. | Everything For Love, Inc. v. Tender Loving Things, Inc. D/B/A The Happy Company Case No. CIV-02-2605-P-HX-EHC (2004)** | U.S. District Court District of Arizona | Patent Infringement | Law Offices of A. Peter Rausch | Damages Analysis |
| 199. | St. Clair Intellectual Property Licensing, Inc. v. Fuji Photo Film Co. Ltd, Fuji Photo File USA, Inc., and Fujifilm America, Inc. Case No. 03-241-JJF (2004) ** | U.S. District Court District of Arizona | Patent Infringement | Robins Kaplan Miller & Ciresi | Damages Analysis |
| 198. | St. Clair Intellectual Property Licensing, Inc. v. Canon Inc. and Canon USA, Inc. Case No. 03-241-JJF (2004) ** | U.S. District Court District of Arizona | Patent Infringement | Robins Kaplan Miller & Ciresi | Damages Analysis |
| 197. | Kathy Papale v. Pacific Bell Directory Company, Pacific Telesis, SBC Communications, et al. Case No. 2002055171 (2004) | Alameda County Superior Court, California | Sex and Age Discrimination | Pillsbury Winthrop | Damages Analysis |
| 196. | Patrick Martin, Inc. and Patrick Walsh v. Ralph Clumeck & Associates, et al. Case No. 03CC06858 (2004) | Orange County Superior Court, California | Breach of Fiduciary Duty | Nordman Cormany Hair & Compton | Damages Analysis |
| 195. | Marjorie Bright and Edward Bright v. The Bright Family Foundation, et al. Case No. 274513 (2004)** | Stanislaus County Superior Court, California | Breach of Fiduciary Duty | Damrell Nelson Schrimp Pallios Pacher & Silva | Damages Analysis |
| 194. | Misha Consulting Group, Inc. d/b/a eBusiness Design v. Source Medical Solutions, Inc. Case No. CO2 04908 JW (HRL) (2004) | U.S. District Court Northern District of California San Jose Division | Breach of Contract | Howard, Rice, Nemerovski, Canady, Falk & Rabkin | Damages Analysis |
| 193. | Jerome Dahan and Michael Glasser; v. L'Koral and Peter Koral Case No. BC 286677 (2004) | Los Angeles County Superior Court, California | Fraud and Breach of Fiduciary Duty | Browne & Woods Law Offices of Gary Freedman | Business Valuation |

EXHIBIT 75
PAGE 712

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 192. | Neoris de México, S.A. de C.V. v. Ariba Inc. Case No. C 02 1670 JSW (2004)** | U.S. District Court Northern District of California San Francisco Division | Breach of Contract | Howard, Rice, Nemerovski, Canady, Falk & Rabkin | Damages Analysis |
| 191. | Kalitta Air, LLC, as assignee of American International Airlines, Inc. v. Central Texas Airborne Systems, Inc. Case No. 96-2494CW & 97-0378CW (2004) | U.S. District Court Northern District of California | Breach of Contract | Sedgewick, Detert, Moran & Arnold | Damages Analysis |
| 190. | TV Interactive Corp. v. Microsoft Corp. Case No. 02 C 02385 (SBA) (2004)** | U.S. District Court Northern District of California Oakland Division | Patent Infringement | Robins Kaplan Miller & Ciresi | Damages Analysis |
| 189. | Immersion Corporation v. Sony Computer Entertainment America, Inc., Sony Computer Entertainment, Inc. and Microsoft Corporation No. C 02-0710 CW (WDB) (2004)** | U.S. District Court Northern District of California Oakland Division | Patent Infringement | Irell & Manella | Damages Analysis |
| 188. | Kelly-Moore Paint Company v. Union Carbide Corporation No. 19785-BH02 (2004).** | District Court of Brazoria County Texas 23rd Judicial District | Products Liability | Weil Gotshal & Manges | Business Valuation |
| 187. | Kaiser Aerospace Electronics v. Teledyne Industries, et al. Case No. 95-05288 CA 15 (2003) and (2005)** | 11th Circuit Court Miami-Dade County Florida | Breach of Contract | Weil Gotshal & Manges | Damages Analysis |
| 186. | The Profit Recovery Group Inc. v. Neil Loder & Associates, et al. Case No CV 01-6200 AN (2003)** | U.S. District Court Central District of California, Western Division | Trademark & Theft of Trade Secret | Knobbe Martens Olson & Bear | Damages Analysis |
| 185. | Meridian Enterprises Corporation v. Carlson Marketing Group, Inc. Case No. 4:01CV1955CDP (2003)** | U.S. District Court Eastern District of Missouri, Eastern Division | Patent Infringement | Woodard, Emhardt, Moriarty & McNett | Damages Analysis |
| 184. | Hauselmann v. Hauselmann Case No. 307662 (2003) | Stanislaus County Superior Court, California | Breach of Contract | Damrell Nelson Schrimp Pallios Pacher & Silva | Business Valuation |
| 183. | Bell & Associates, Inc. v. Fidelity National Information Solutions, Inc. & Vista Information Solutions, Inc. Case No. 02CC02336 (2003) | Orange County Superior Court, California | Breach of Contract | Stradling, Yocca, Carlson & Rauth | Damages Analysis |

EXHIBIT 75
PAGE 113

MICHAEL J. WAGNER
Page 25

## EXPERT TESTIMONY—DEPOSITION (**if Protective Order in place)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 182. | Winn Incorporated & Ben Huang v. Eaton Corporation. Case No: CV03-1568-SJO (2003)** | U.S. District Court Central District of California Western Division | Patent Infringement | Knobbe Martens Olson & Bear Ropers Majeski Kohn & Bentley | Damages Analysis |
| 181. | Semiconductor Energy Laboratory Co. Ltd. V. Acer Inc. Acer America Corp. and AU Optronics Corp. Case No. C 02-02800 WHA (2003)** | U.S. District Court Northern District of California San Francisco Division | Patent Infringement | Jenner & Block | Damages Analysis |
| 180. | Cambrian Consultants, Inc. et al. v. Stuart Lubitz & Hogan & Hartson LLP Case No. BC 271707 (2003) | Los Angeles Superior Court, California | Patent Attorney Malpractice | Alschuler Grossman Stein & Kahan Quinn Emanuel Urquhart Oliver & Hedges Gibson Dunn & Crutcher | Damages Analysis |
| 179. | Glaxo Group Ltd. and Glaxo Wellcome, Inc. V. Ranbaxy Pharmaceuticals Inc. Civil Action No. 00-5172 MLC (2003) ** | U.S. District Court District of New Jersey | Patent Infringement | Knobbe Martens Olson & Bear | Damages Analysis |
| 178. | Deltakor Investments, Inc. v. Carl Karcher, et al. Case No. 01-CC13626 (2003) | Orange County Superior Court, California | Breach of Contract | Stradling, Yocca, Carlson & Rauth | Damages Analysis |
| 177. | Fonovisa, Inc. v. MP3.com, Inc. Case No. 02 CV 8614 JSR (2003)**. Fonomusic, Inc. v. MP3.com Inc. Case No. 02 CV 8617 JSR (2003)**. HMS Distributors, Inc. et al. v. MP3.com Inc. Case No. 02 CV 8616 JSR (2003)**. Musical Productions, Inc. et al. v. MP3.com Inc. Case No. 02 CV 8618 JSR (2003)** | U.S. District Court Southern District of New York | Copyright Infringement | Quinn Emanuel Urquhart Oliver & Hedges | Damages Analysis |
| 176. | Coelho, et al. v. Coelho, et al. Case Nos. 591120-1, 595828-5, 588695-7, and 0537454-1 (2003) (2005) | Fresno Superior Court, California | Breach of Fiduciary Duties | Darnell Nelson Schrimp Pallios Pacher & Silva Lange Richert & Patch Parish & Nelson | Damages Analysis |
| 175. | BCE Emergis, Inc. v. Ariba, Inc. Civil Action No. C01-21221 PVT (2003) ** | U.S. District Court Northern District of California, San Jose Division | Breach of Contract | Howard Rice Nemerovski Canady Falk & Rabkin | Damages Analysis |

EXHIBIT ___75___
PAGE ___714___

MICHAEL J. WAGNER
Page 26

## EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 174. | Bob Dylan, Billie Joel, James Taylor, et al. v. MP3.com, Inc. Case No. 02 CV 8006 (JSR) (2003) ** | U.S. District Court Southern District of New York | Copyright Infringement | Quinn Emanuel Urquhart Oliver & Hedges | Damages Analysis |
| 173. | Lyrick Studios, Inc. v. Big Idea Productions, Inc. Civil Action 3-02 CV-0034 M (2002)** | U.S. District Court Northern District of Texas, Dallas Division | Breach of Contract | Baker & Botts O'Melveny & Myers | Damages Analysis |
| 172. | Robert Carver and Diana Carver v. Velodyne Acoustics, Inc. Civil Action No. C00-1194L (2002)** | U.S. District Court Western District of Washington | Patent Infringement | Christenson, O'Connor, Johnson & Kindness | Damages Analysis |
| 171. | Bayshore Ford Truck Sales, Inc. et al. v. Ford Motor Company Civil Action No. 99 CV 741 (JCL) 2002 | U.S. District Court District of New Jersey | Breach of Contract | Kronick, Moskovitz, Tiedemann & Girard | Damages Analysis |
| 170. | Feltheimer v. Sony Corporation of America, et al. Case No. BC-244836 (2002) | Los Angeles Superior Court, California | Breach of Contract | Irell & Manella | Damages Analysis |
| 169. | Booneville Convalescent Center, Inc. v. Cloverleaf Healthcare Services, Inc., et al. Cause No. 32D01-0204-CC-38 (2002) | Superior Court of Hendricks, County, Indiana | Breach of Contract | Leeuw & Doyle | Alter Ego and Damages Analysis |
| 168. | Superior National Insurance Group v. Foundation Health Corporation, et al. Case No. 02 CV 5155 (2002) (2003) | U.S. District Court Central District of California, Western Division | Fraud | Skadden, Arps, Slate Meagher & Flom | Business Valuation and Damages Analysis |
| 167. | United States of America ex rel. William Gilliam v. General Dynamics Corporation Case No. 2:01-3023-18 (2002) | U.S. District Court District of South Carolina, Charleston Division | Qui Tam | Jenner & Block | Damages Analysis |
| 166. | Novartis Consumer Health, Inc. v. Elan Transdermal Technologies, Inc. Case No. 01-1120-CIV-MOORE (2002)** | U.S. District Court Southern District of Florida, Miami Division | Patent Infringement | Irell & Manella | Damages Analysis |
| 165. | 2learn2.com v. San Diego State University, College of Extended Studies, et. Al., Case No. 80 Y 181 00138 01 VMD (2002)** | American Arbitration Association | Breach of Contract | Stradling, Yocca, Carlson & Rauth | Damages Analysis |
| 164. | Carver et al. v. Audio Products International Corp. Case No. CV00-1477L (2002)** | U.S. District Court Western District of Washington | Patent Infringement | Christenson, O'Connor, Johnson & Kindness | Damages Analysis |

EXHIBIT _____75_____

PAGE _____715_____

## EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 163. | LASVN#2, et al. v. Van Ness and Sperry, et al. Case No. BC 206251 (2002 and 2003) | Los Angeles Superior Court, California | Breach of Fiduciary Duty | Krane & Smith | Damages Analysis |
| 162. | Cyberspace Headquarters, LLC v. MacMillan USA, Inc. Case No. 00 CV 9764 CBM (JWJx) (2001)** | U.S. District Court Central District of California | Lanham Act | Mahoney Coppenrath Jaffe & Pearson | Damages Analysis |
| 161. | Tri Valley Growers v. Oracle Corporation (2001) | San Francisco Superior Court | Breach of Contract | Dorsey & Whitney | Damages Analysis |
| 160. | PowerAgent, Inc. v. Electronic Data Systems Corporation No. 71 Y 117 00262 00 (2001)** | American Arbitration Association | Breach of Fiduciary Duty | Baker & Botts Townsend and Townsend and Crew | Damages Analysis Due Diligence |
| 159. | Idea Man v. Silver & Freedman, Case No. BC235669 (2001) | Los Angeles Superior Court, California | Legal Malpractice | Krane & Smith | Damages Analysis |
| 158. | Intergraph Corporation v. Intel Corporation, CIV 97-N-3023-NE (2001)** | U.S. District Court Northern District of Alabama | Patent Infringement | Townsend and Townsend and Crew | Damages Analysis |
| 157. | Perry v. Mellon Financial Corporation Case No. 997170 (2001) | San Francisco Superior Court | Breach of Contract | Howard, Rice, Nemerovski, Canady, Robertson & Folk | Damages Analysis |
| 156. | Berdain America Latina, S.A., et al. v. Baan Company, et al. Case No. 403080 (2001)** | San Mateo Superior Court, California | Intentional Interference with Contract | Townsend and Townsend and Crew | Damages Analysis |
| 155. | Modesto City Schools, Stockton Unified School District, V. Riso Kagaku Corporation CIV S-99-2214 FCD/GGH (2001)** | U.S. District Court Eastern District of California | Antitrust | Kronick, Moskovitz, Tiedemann & Girard | Damages Analysis |
| 154. | City of Hope National Medical Center v. Genentech, Inc. Case No. BC 215152 (2001) (2002)** | Los Angeles Superior Court, California | Breach of Contract | Irell & Manella | Damages Analysis |
| 153. | Zomba v. MP3.com Case Nos. 00 CIV 6831 and 6833 (2001)** | U.S. District Court Southern District of New York | Copyright Infringement | Orrick Herrington & Sutcliffe | Damages Analysis |
| 152. | Marconi Communications, Inc. v. Vidar-SMS Co. Civil No. CV-1293-L (2001)** | U.D. District Court Northern District of Texas | Theft of Trade Secret Breach of Indemnity Agreement | Munger Tolles & Olson | Damages Analysis |

EXHIBIT ___75___

PAGE ___716___

MICHAEL J. WAGNER
Page 28

## EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 151. | In re: BankAmerica Corp. Securities Litigation MDL No. 1264 (2001)** | U.S. District Court Eastern District of Missouri | Class Action Securities Litigation | Green Schaaf & Jacobson | Damages Analysis |
| 150. | Clayton Industries v. SPX Corporation Case No. 72-1816200-SMY (2001) | American Arbitration Association | Breach of Contract | Jenner & Block | Damages Analysis |
| 149. | Electro Scientific Industries, Inc. v. Dynamic Details, Inc. and GSI Lumonics, Inc. Case No. SACV00-272 AH (2001) | U.S. District Court Central District of California Southern Division | Patent Infringement | Knobbe Martens Olson & Bear | Damages Analysis |
| 148. | Farallon Capital Partners, L.P. v. Gleacher & Co. Inc. Case No. BC 215260 (2001) | Los Angeles Superior Court, California | Misrepresentation | Hennigan Bennet & Dorman | Alter Ego Analysis |
| 147. | Flying J Inc. et al. v. Comdata Network, Inc. and Trendar Corporation Civil No. 1:96CV0066K (2001)** | U.S. District Court District of Utah Northern Division | Antitrust | Bendinger Crockett Peterson & Casey Stokes Bartholomew Evans & Petree | Damages Analysis |
| 146. | Process Specialties, Inc. v. Sematech, Inc. Case No.: CIV-S-00-414 (2001 and 2002)** | U.S. District Court Eastern District of California | Antitrust | Herum, Crabtree, Brown, Dwyer, Zolezzi & Terpstra | Damages Analysis |
| 145. | Re/Max of California & Hawaii v. Robert Lesh, et al. No. BC186234 (2001) | Los Angeles Superior Court, California | Breach of Contract | Lewis, D'Amato, Brisbois & Bisgaard Murtaugh Miller Meyer & Nelson | Damages Analysis |
| 144. | True Fitness Technology, Inc. v. Precor Incorporated Case No. 4:99 CV1306-DJS (2001)** | U.S. District Court, Eastern District of Missouri | Patent Infringement | Christenson, O'Connor, Johnson & Kindness | Damages Analysis |
| 143. | TeeVee Toons, Inc. et al v. MP3.com, Inc. Case No. 00 CIV. 3951 (JSR) (2000)** | U.S. District Court, Southern District of New York | Copyright Infringement | Orrick, Herrington & Sutcliffe | Damages Analysis |
| 142. | Marketel v. priceline.com, Inc. Case No. C-99-0161 CAL (2000)** | U.S. District Court, Northern District of California | Theft of Trade Secret | Skadden, Arps, Slate, Meagher & Flom | Damages Analysis |
| 141. | Venture Industries Corporation, et al. v. Masco Tech. et al. No. 99-07219-CK (2000) | Circuit Court For The County of Kent, Michigan | Breach of Contract | Jenner & Block | Damages Analysis |
| 140. | Perry v. Miller Wagner & Co.  Case No. CV 98-11591 (2000) | Superior Court, State of Arizona, County of Maricopa | Professional Malpractice | Mower, Koeller, Nebeker, Carlson & Haluck | Standard of Care and Damages Analysis |

EXHIBIT __75__

PAGE __717__