## EXPERT TESTIMONY—DEPOSITION (**If <u>Protective Order</u> in place)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 139. | <u>Lussier Subaru, et al v. Subaru of New England, Inc., et al</u>  Case No. C-99-109-B (2000) ** | U.S. District Court, District of New Hampshire | Class Action | Wiggin & Nourie Kronick, Moskovitz, Tiedemann & Girard | Damages Analysis |
| 138. | <u>Optical Solutions, Inc.</u> v. Michael S. Hawes and Associates  Case No. 99AS05264 (2000) | Sacramento Superior Court, California | Professional Malpractice | Law Offices of Richard H. Hart | Damages Analysis |
| 137. | <u>St Luke's Hospital</u> v. California Pacific Medical Center No. 300518 (2000)** | San Francisco Superior Court, California | Unfair Competition Antitrust | Townsend and Townsend and Crew | Damages Analysis |
| 136. | <u>Pactiv Corporation</u> v. S.C. Johnson, Inc. Case No. 98C-2679 (2000)** | U.S. District Court, Northern District of Illinois | Patent Infringement | Jenner & Block | Damages Analysis |
| 135. | Lowe's Home Centers, Inc. v. <u>General Electric Company</u> Case No. 4:98-CV 0028 (2000) & (2001) ** | U.S. District Court, Northern District of Georgia Rome Division | Environmental Contamination | Williams &Connolly | Damages Analysis |
| 134. | MicroGuild, Inc. v. <u>Netscape Communications Corporation</u> No. CV774054 (2000) ** | Santa Clara Superior Court, California | Fraud | Pillsbury, Madison & Sutro | Damages Analysis |
| 133. | Rush Hour Music, L.L.C. v. <u>Magix Entertainment Corp.</u> Case No. 2:99cv1003 (2000) ** | U.S. District Court, Eastern District of Virginia Norfolk Division | Patent Infringement | Fellers, Snider, Blankenship, Bailey & Tippens | Damages Analysis |
| 132. | Engineered Products Co. v. <u>Donaldson Company, Inc.</u> Civ. No. 98-2106 MJM (2000) ** | U.S. District Court, Northern District of Iowa | Patent Infringement | Robins, Kaplan, Miller & Ciresi | Damages Analysis |
| 131. | Guzik Technical Enterprises v. <u>KMY Instruments, Inc.</u> Case No. CV762875 (2000) ** | Santa Clara Superior Court, California | Theft of Trade Secret | Gray, Cary, Ware & Friedenrich | Damages Analysis |
| 130. | <u>Merchandise Mart Owners, LLC</u> v. Metropolitan Life Insurance, Co. Case No. 98 CH 3566 (2000) ** | Circuit Court of Cook County, Illinois | Breach of Contract | Jenner & Block | Damages Analysis |
| 129. | Winkler Forming, Inc. v. <u>PMC, Inc.</u> v. <u>Lewis Anten</u> Case No. BC 194 364 (2000) | Los Angeles Superior Court, California | Patent Legal Malpractice | Lewis, D'Amato, Brisbois & Bisgaard | Damages Analysis |
| 128. | Ardent Software, Inc. v. <u>Pacific Unidata, Inc.</u> (2000) | CPR Arbitration | Breach of Contract | Christensen, O'Connor, Johnson & Kindness | Damages Analysis |

MICHAEL J. WAGNER
Page 30

## EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 127. | Topanga and Victory Partners, L.P., et al. v. Jones, et al. Case No. LC 038853 (2000) | Los Angeles Superior Court, California | Breach of Contract | Hamburg, Hanover, Edward & Martin | Alter Ego Analysis |
| 126. | MET-Rx Foundation for Health Enhancement, et al. v. MET-RX USA, INC., et al. Case No. 771551 (2000) | Orange County Superior Court, California | Breach of Contract | Feldhake, August & Roquemore | Damages Analysis |
| 125. | Telecontrol Systems, Inc. v. Westec Security, Inc. Case No. BC 188264 (2000) | Los Angeles Superior Court, California | Theft of Trade Secret | Howarth & Smith | Damages Analysis |
| 124. | Hameetman v. Schumann, et al., Case No. SC 049754 (2000) | Los Angeles Superior Court, California | Breach of Contract | Hennigan, Bennett & Dorman | Damages Analysis |
| 123. | Placerita Oil Company, Inc. v. Berry Oil Trading & Transportation Co., et al. Case No. PC 017079 Z (1999) ** | Los Angeles Superior Court, California | Breach of Contract | Norman, Comany, Hair & Compton | Damages Analysis |
| 122. | GATX/Air log Company, and GATX Capital v. Evergreen, Ellsinore, et al. Civil Action No. C 96-2494 WHO (1999) (2000) ** | U.S. District Court, Northern District of California | Breach of Contract | Murphy, Sheehan, Julian & Rogers | Alter Ego Analysis |
| 121. | Advanced Cardiovascular Systems, Inc. v. Medtronic, Inc. Case Nos. 95-03577 DLJ & 96-00942(DLJ) (1999) | U.S. District Court Northern District of California, Oakland Division | Patent Infringement | Robins, Kaplan, Miller & Ciresi | Damages Analysis |
| 120. | Trovan, Ltd. et al. v. Pfizer, Inc., Case No. 98-0094 (1999) | U.S. District Court, Central District of California | Lanham Act | Levin & Hawes | Damages Analysis |
| 119. | Norfolk Southern Railroad v. Flexivan & Dole Case No. 99 Civ. 055 WHP HBP (1999) | U.S. District Court, Southern District of New York | Breach of Contract | O'Melveny & Myers | Damages Analysis |
| 118. | Bitner, et al. v. Bayshore, et al. Case No. 771246 (1999) | Orange County Superior Court, California | Fraud, Breach of Fiduciary Duty | Law Offices of Jay Seltzer | Damages Analysis |
| 117. | Precor Incorporated v. Life Fitness Civil No. C94-1586C (1999) | U.S. District Court Western District of Washington | Patent Infringement, Unfair Competition | Christensen, O'Connor, Johnson, Kindness | Damages Analysis |
| 116. | Salant v. Spensley, Horn, Jubas & Lubitz Case No. SC033055 (1999) | Los Angeles Superior Court, California | Patent Legal Malpractice | Lewis, D'Amato, Brisbois & Bisgaard | Damages Analysis |

EXHIBIT _____ 75
PAGE _____ 79

MICHAEL J. WAGNER
Page 31

## EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 115. | Susman v. GTE Information Services, Inc. Case No. 97-06677 (1999) ** | 44th Judicial District, Dallas County, Texas | Breach of Contract | Baker & Botts | Business Valuation |
| 114. | Surgin Surgical Instrumentation, Inc. v. Truck Insurance Exchange Case No. 66 2216 (1999) | Orange County Superior Court, California | Breach of Contract | Stradling Yocca Carlson & Rauth | Damages Analysis |
| 113. | Chesterfield Investments, et al. v. Stone Container Corporation Case No. BC 188858 (1999) | Los Angeles Superior Court, California | Breach of Contract | Orrick, Herrington & Sutcliffe | Damages Analysis |
| 112. | Imatec, Ltd. et al. v. Apple Computer, Inc. Civil Action No. 98 CV 1058(JGK) (1999) ** | U.S. District Court, Northern District of California | Patent Infringement | Fenwick & West | Damages Analysis |
| 111. | Saremi, et al. v. Atara, et al. Case No. 387467 (1999) | San Mateo Superior Court, California | Breach of Contract | Nelson, Greenberg & Cohen | Damages Analysis |
| 110. | ProCom Marketing v. Prestolite Wire Corp. Case No. C-96-20978 JF PVT (1998) *** | U.S District Court, Northern District of California | Theft of Trade Secret | Morrison & Forester | Damages Analysis |
| 109. | Irvine Ranch Water District v. Merrill Lynch & Co. Case No. 96-8932 (1998) | U.S. District Court, Central District of California | Intentional Misrepresentation | Irell & Manella | Damages Analysis |
| 108. | Zemco Manufacturing, Inc. v. Navistar Int'l Transportation Corp. Case No. 1.97CV0260 (1998) | U.S. District Court, Northern District of Indiana | Breach of Contract | Leeuw, Popper, Bee man & Doyle; Swift & Finlay son | Damages Analysis |
| 107. | Orlaford Limited, et al. v. BBC International, et al Civil Action No. 97-C-0540-S (1998) | U.S. District Court Western District of Wisconsin | Patent Infringement | Foley & Lardner | Damages Analysis |
| 106. | Evarite Fiber Corp. v. Lauschaer Glaswerk GmbH, et al. Civil No. 2: 96-3525-18 (1998) | U.S. District Court, District of South Carolina, Charleston Division | Theft of Trade Secret | Farleigh, Wada & Witt | Damages Analysis |
| 105. | Livadas v. Graham & James Case No. BC 145386 (1998) | Los Angeles Superior Court, California | Legal Malpractice | Howard, Rice, Nemerovski, Canady, Robertson & Folk | Damages Analysis |
| 104. | Summa Four, Inc. v. Claircom Communications Group, Inc. d.b.a. AT&T Wireless Services Case No. 95-E-293 and 95-C-973 (1998) ** | Superior Court Northern District of Hillsborough County, New Hampshire | Breach of Contract | Hale & Dorr | Damages Analysis |

EXHIBIT 75

PAGE 720

## EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 103. | Ayre, et al. v. Attwood Corp., et al. Case No. 96-5087-NP (1998) | Circuit Court, County of Kent, Michigan | Wrongful Death | Kell & Lynch; Chaklos, Jungerheld, Hahn & Washburn | Damages Analysis |
| 102. | AQC Holdings, L.P. v. Dynamic Circuits, Inc. CV760815 (1998) ** | Santa Clara Superior Court, California | Breach of Contract | Freeborn & Peters | Damages Analysis |
| 101. | AMETRON v. Entin, et al. Case No. BC160521 (1998) | Los Angeles Superior Court, California | Usurpation of Corporate Opportunity | Mahoney, Coppenrath, Jaffe & Pearson | Damages Analysis |
| 100. | Mastercard Int'l, et al. v. Meridian Enterprises Corp. Case No. CA-94-4105 (DRD) 1997 ** | U.S. District Court, District of New Jersey | Patent Infringement | Woodard, Emhardt, Moriarty & McNett | Damages Analysis |
| 99. | Pitney Bowes, Inc. v. Hewlett Packard Company Case No. 395CV01764 (1997) ** | U.S. District Court, District of Connecticut | Patent Infringement | Pennie & Edmonds | Damages Analysis |
| 98. | McCaw v. McCaw Case No. 95-3-07235-0 SEA (1997) ** | King County Superior Court, Washington | Marital Dissolution | Perkins, Coie; Danielson, Harrigan & Tollefson; Kinzel, Allan, Skone & Searing; Law Offices of Gordon Wilcox | Investigatory Accounting |
| 97. | Foodmaker, Inc. v. The Vons Companies, Inc. Case No. BC085705 (1997) ** | Los Angeles Superior Court, California | Defamation | Thorsnes, Bartolotta, McGuire & Padilla | Damages Analysis |
| 96. | JRS Products v. Network Office Systems Case No. 95 AS 04411 (1997) | Sacramento County Superior Court, California | Libel | Law Offices of Richard Hart | Damages Analysis |
| 95. | Galaxy Networks, Inc. v. Kenan Systems Corp. Civil Action No. CV-95-5568 DDP (1997) | U.S. District Court, Central District of California | Unjust Enrichment, Quantum Meruit | Irell & Manella | Damages Analysis |
| 94. | Rubin v. Southwest Leasing Corp. Case No. SC0322254 (1997) | Los Angeles Superior Court, California | Breach of Fiduciary Duty | Browne & Woods; Baker, Silberberg & Keenen | Damages Analysis |
| 93. | Tung Yuan Construction Co. v. Chao Case No. GC 012436 (1996) | Los Angeles Superior Court (Baseball Arbitration) | Breach of Contract | Bird, Marella, Boxer, Wolpert & Matz | Investigatory Accounting |
| 92. | Potlatch Corporation v. Beloit Corporation Case No. CV 95-01992 (1997) | 2nd Judicial District State of Idaho | Breach of Contract | Sacks Montgomery | Damages Analysis |

EXHIBIT ___75___

PAGE ___721___

MICHAEL J. WAGNER
Page 33

## EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit | Type | Court | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 91. | The Samuel Goldwyn Co. v. MCEG Virgin Vision, Ltd. Case No. BC 016305 (1997) | Breach of Contract | Los Angeles Superior Court, California | Irell & Manella | Damages Analysis |
| 90. | Ostex International, Inc. v. Boehringer Mannheim No. 79T184 00192 95 (1996) | Breach of Contract | American Arbitration Association | Mundt, MacGregor, Happel, Falconer, Zulauf & Hall | Damages Analysis |
| 89. | Cook Inc. v. Palmaz Case No. IP 94-1459C (TIG) (1996) | Breach of Contract | U.S. District Court, District of Indiana | Akin, Gump, Strauss, Hauer & Feld | Damages Analysis |
| 88. | Cinnamon, et al. v. Reaz Shera, et al. No. 96AS01471 (1996) | Breach of Contract | Sacramento County Superior Court, California | Law Offices of Richard Hart | Damages Analysis |
| 87. | United Rock Products Corp. v. City of Irwindale (1996) | Inverse Condemnation | Arbitration before the Honorable Robert Wenke | Jeffer, Mangels, Butler & Marmaro | Damages Analysis |
| 86. | Ferreira v. Virco Manufacturing Corp. No. L003894 (1996) | Product Defect | Solano County Superior Court, California | Howarth & Smith | Damages Analysis |
| 85. | In re: America Honda Motor Co., Dealerships Relations Litigation MDL Case No. 1069 (1996) ** | RICO | U.S. District Court, District of Maryland | Kronick, Moskovitz, Tiedemann & Gerard | Fairness of Settlement |
| 84. | Brooktree Corporation v. S3 Incorporated Civil Action No. 95-2388R (ATB) (1996) ** | Patent Infringement | U.S. District Court, Southern District of California | Howrey & Simon; Pillsbury, Madison & Sutro | Damages Analysis |
| 83. | Redacted v. Redacted (1996) | Breach of Contract | American Arbitration Association | Kirkland & Ellis | Damages Analysis |
| 82. | In re: Radica Games Limited CV-S-94-00653-DAE (LRL) (1996) | Class Action Securities Case | U.S. District Court, District of Nevada | Sullivan & Cromwell | Damages Analysis |
| 81. | Martin v. Sprint Case No. (IV-S-93-1731) (1996) | Breach of Contract | U.S. District Court, Eastern District of California | Law Offices of Lisa Wright | Damages Analysis |
| 80. | Thermodyne v. McDonald's Corp. Case No. 1:95 CV 0232 (1996) | Theft of Trade Secret | U.S. District Court, Northern District of Illinois | Swift & Finlayson; Leeuw & Doyle | Damages Analysis |
| 79. | Competitive Technology, Inc. v. AST Research, Inc. Case No. 74 82 37 (1996) | Tortious Interference with Contract | Orange County Superior Court, California | Stradling, Yocca, Carlson & Rauth | Damages Analysis |

EXHIBIT ___75___

PAGE ___722___

MICHAEL J. WAGNER
Page 34

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|-----|---------|-------|------|--------------------|----------------|
| 78. | Ah Young Industrial Co. v. Brunswick Corp. Case No. 2340 CA (1996) | U.S. District Court, Northern District of California | Breach of Contract | Thelen, Marrin, Johnson & Bridges | Damages Analysis |
| 77. | Medical Billing, Inc. v. Medical Management Services No. 1:94-CV-1567 (1996) | U.S. District Court Northern District of Ohio, Eastern Division | Breach of Contract | Donovan, Leisure, Newton & Irvine | Damages Analysis |
| 76. | TRW, Inc. v. Talley Industries, Inc. Case No. 89-1920 (1996) | U.S. District Court, District of Arizona | Breach of Contract | Donovan, Leisure, Newton & Irvine, Cohen & Cotton | Damages Analysis |
| 75. | Wadsworth Golf Construction Co. v. Castle Oak Investment Corp. Case No. 18250 (1996) | Amador County Superior Court, California | Breach of Contract | Mark Wieklinski, Ann Rankin | Alter Ego Analysis |
| 74. | Conte v. Kelly Case No. LC 018879 (1996) | Los Angeles Superior Court, California | Legal Malpractice | Lewis, D'Amato, Brisbois & Bisgaard | Damages Analysis |
| 73. | Forti v. General Dynamics No. KC 015871/017393 (1996) | Los Angeles Superior Court, California | Breach of Contract | Howarth & Smith | Business Valuation |
| 72. | TLB, Inc. v. Platinum Software Civil No. 95WY621 (1996) | U.S. District Court of Colorado | Tortious Interference with Contract | Stradling, Yocca, Carlson & Rauth | Damages Analysis |
| 71. | Strand Home Video v. Affiliated Regional Communications SC028 190 (1995) | Los Angeles Superior Court, California | Breach of Contract | Browne & Woods | Damages Analysis |
| 70. | Schlessinger v. Safeco Insurance Co. of America Case No. SC027965 (1995) | Los Angeles Superior Court, California | Bad Faith | Schlessinger & Wheeler | Damages Analysis |
| 69. | J.H. Design v. The Walt Disney Company No. BC090 485 (1995) ** | Los Angeles Superior Court, California | Breach of Contract | Bird, Marella, Boxer, Wolpert & Matz | Damages Analysis |
| 68. | Hewlett-Packard Company v. GenRad, Inc. No. 94-10675 RCL (1995) ** | U.S. District Court, District of Massachusetts | Patent Infringement | Pennie & Edmonds | Damages Analysis |
| 67. | Licensing Funding Partners v. Biblioteca Apostolica Vaticana, et al. BC 059176 (1995) | Los Angeles Superior Court, California | Breach of Contract | Howarth & Smith, Blecher & Collins | Damages Analysis |
| 66. | In re: AST Research Securities Litigation CV-94-1370 SVW (1995) | U.S. District Court, Central District of California | Class Action Securities Case | Prongay & Mikolajcyk; Greenfield & Rifkin | Damages Analysis |

EXHIBIT ___75___

PAGE ___123___

MICHAEL J. WAGNER
Page 35

# EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|-----|---------|-------|------|-------------------|----------------|
| 65. | AJIR, et al. v. Exxon Corp. No. C-93 20830 RMW PVT (1995) | U.S. District Court Northern District of California | PMPA | McClintock, Weston, Benshoof, Rochefort, Rubalcava & Mac-Cuish | Damages Analysis |
| 64. | TRW, Inc. v. Talley Industries CIV 94-0350-PHX-PGR (1995) | U.S. District Court, District of Arizona | Breach of Contract | Donovan, Leisure, Newton & Irvin; Cohen & Cotton | Damages Analysis |
| 63. | Fordiani v. Sino, et al. No. C93-05885 (1995) | Contra Costa Superior Court, California | Misrepresentation | King, Shapiro, Mittelman & Buchman | Damages Analysis |
| 62. | Gonsalves v. Kaiser Sand & Gravel and SVAR Industries No. C92-3561 MHP (1995) | U.S. District Court Northern District of California | Antitrust | Thelen, Marrin, Johnson & Bridges | Damages Analysis |
| 61. | Supra Corporation v. D.L. Horton Enterprises, Inc. BC 093085 (1995) | Los Angeles Superior Court, California | Breach of Fiduciary Duty | Stradling, Yocca, Carlson & Rauth | Damages Analysis |
| 60. | Adams v. Calif. State Automobile Assoc. No. 916163 (1994) | San Francisco Superior Court, California | Various Business Torts | Thelen, Marrin, Johnson & Bridges | Cost Allocation and Reasonableness of Commissions |
| 59. | Mahne v. Crown Roll Leaf No. BC069435 (1994)**58 | Los Angeles Superior Court, California | Breach of Contract | Quinn, Emanuel, Urquhart & Oliver | Damages Analysis |
| 58. | Virgin Vision Ltd. v. The Samuel Goldwyn Co. No. BC-013701 (1994) | Los Angeles Superior Court, California | Intellectual Property | Law Offices of James P. Tierney | Damages Analysis |
| 57. | Ethicon Endo-Surgery v. Richard-Allen Medical Industries No. C2940501 (1994)** | U.S. District Court Southern District of Ohio | Patent Infringement | Sullivan & Cromwell | Damages Analysis |
| 56. | Knickerbocker v. Scudder Reality Advisors Inc. Case No. 200169 (1994) | Riverside Superior Court, California | Breach of Contract | Giles & Burkhalter | Damages Analysis |
| 55. | Chaintool Company v. Workman, Nydegger & Jensen Civil No. 900903226CV (1994) | Third Judicial Court, Salt Lake City, Utah | Patent Attorney Malpractice | Wilkins, Oritt & Headman | Damages Analysis |

EXHIBIT ____15____

PAGE ____124____

## EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 54. | Southland Sod Farms v. Stover Seed Company, et al. Civil No. 92-4894-JMI (1994) ** | U.S. District Court, Central District of California | Lanham Act | Nordman, Cormany, Hair & Compton | Damages Analysis |
| 53. | In re: Information Resources, Inc. Civil No. 89C 3712 (1994) | U.S. District Court, Northern District of Illinois | Class Action Securities Case | Freeborn & Peters; Katten, Muchin & Zavis | Budgeting |
| 52. | Guy v. United Healthcare Corp. Case No. C2-92-397 (1993) | U.S. District Court, Southern District of Ohio | Breach of Contract | Robert J. Feldhake | Damages Analysis |
| 51. | The Boulders on the River v. First Interstate Bank of California Civil No. 90-19MA (1993) | U.S. District Court, Oregon | Breach of Contract | Lane Powell Spears Lubersky | Damages Analysis |
| 50. | American Savings Bank v. MGM-Pathe Communications Corp. (1993) | Los Angeles Superior Court, California | Breach of Guarantee | Pircher, Nichols & Meeks | Alter Ego Analysis |
| 49. | Liebert Corp. v. North American Phillips Corp. (1993) | Orange County Superior Court, California | Breach of Warranty | Banchero & Lasater | Damages Analysis |
| 48. | Precor v. Weider Civil No. C91-1743Z (1993) | U.S. District Court, Western District of Washington | Patent Infringement | Christensen, O'Connor, Johnson & Kindness | Damages Analysis |
| 47. | Astec v. North American Phillips Corp. (1993) | Los Angeles Superior Court, California | Breach of Warranty | Banchero & Lasater | Damages Analysis |
| 46. | Gill v. American Savings Bank (1992) | U.S. Bankruptcy Court, Central District of California | Bankruptcy | Milbank, Tweed, Hadley & McCloy | Bankruptcy Analysis |
| 45. | Haro v. The Hahn Company (1992) | Los Angeles Superior Court, California | Breach of Fiduciary Duty | Howarth & Smith | Punitive Damages |
| 44. | Tube Forgings of America v. Weldbend (1992) | U.S. District Court, Oregon | Lanham Act | Mayer, Brown & Platt | Damages Analysis |
| 43. | State of California v. Bio-Rad (1992) | Alameda Superior Court, California | Eminent Domain | James Whittaker | Damages Analysis |
| 42. | E.J. Bartells Co. v. A.P. Green Industries (1992) | King County Superior Court, Washington | Securities Laws Violations | Thompson & Mitchell | Damages Analysis |

EXHIBIT _____ 75

PAGE _____ 725

EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 41. | Stafford v. Miller, Wagner & Co. (1991) | State Court, Phoenix, Arizona | Accounting Malpractice | Greengard & Finley | Professional Standards |
| 40. | Firnschild v. Wyandotte Hospital (1991) | State Court, Detroit, Michigan | Breach of Contract | Kitch, Saurbier, Drutchas, Wagner & Kenney | Damages Analysis |
| 39. | Bacchi v. Fireman's Fund Insurance Co. (1991) | JAMS, Los Angeles, California | Breach of Contract | Kayajanian, Furay, Baker & Hill | Damages Analysis |
| 38. | Ixsys v. Stratagene (1991) | San Diego Superior Court, California | Intellectual Property | Pillsbury, Madison & Sutro | Damages Analysis |
| 37. | Falcon Cable Media v. Booth American Co. (1990) | U.S. District Court, Central District of California | Tortious Interference with Contract | Thelen, Marrin, Johnson & Bridges | Damages Analysis |
| 36. | Ingram v. Owens Illinois (1990) | U.S. District Court, Oregon | Asbestos | Morgenstein & Jubelirer | Punitive Damages |
| 35. | Sucperity Corp. of California v. Shih (1990) | U.S. District Court, Central District of California | Breach of Contract | Fred & Lewin | Investigatory Accounting |
| 34. | Moreland v. Planet Insurance Company (1990) | Santa Barbara Superior Court, California | Breach of Contract | Rosenfeld, Meyer & Susman | Business Valuation |
| 33. | First Interstate Bank of Washington v. AFC (1990) | King County Superior Court, Washington | Lender Liability | Davis, Wright & Tremaine | Damages Analysis |
| 32. | El Torito v. La Mirada Redevelopment Agency (1990) | Orange County Superior Court, California | Condemnation | Bidna & Keys | Business Valuation |
| 31. | Moss v. Shepp (1990) | Los Angeles Superior Court, California | Legal Malpractice | Musick, Peeler & Garrett | Damages Analysis |
| 30. | Woodbridge Plaza v. Bank of Irvine (FDIC) (1990) | Orange County Superior Court, California | Breach of Contract | Bidna & Keys | Real Estate Valuation |
| 29. | Lines v. Bank of America (1990) | U.S. District Court, Northern District of California | Antitrust | Thelen, Marrin, Johnson & Bridges | Damages Analysis |
| 28. | Major Projects, Inc. v. Hismeh (1990) | Riverside Superior Court, California | Breach of Contract | Bidna & Keys | Damages Analysis |
| 27. | Hammersmith v. Taco Bell Corp. (1990) | U.S. District Court, Oregon | Fraud | Skadden, Arps, Slate, Meagher & Flom | Damages Analysis |

EXHIBIT ___75___

PAGE ___726___

MICHAEL J. WAGNER
Page 38

## EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 26. | Pioneer Hi-Bred v. Holden Foundation Seeds (1989) | U.S. District Court, Iowa | Theft of Trade Secret | Grefe & Sidney | Damages Analysis |
| 25. | Hideaway Productions v. Ampex Corp. (1989) | Los Angeles Superior Court, California | Breach of Implied Warranties, Fraud | Rosenfeld, Meyer & Susman | Damages Analysis |
| 24. | Lim v. Lehman (1989) | Sacramento Superior Court, California | Breach of Contract | Wolf & Leo | Damages Analysis |
| 23. | Bernstein v. Delta Airlines (1989) | U.S. District Court, Southern District of Florida | Wrongful Death | Steven Walker, Jenner & Block | Damages Analysis |
| 22. | Lippman v. Levy (1989) | Los Angeles Superior Court, California | Breach of Contract, Fraud | Browne & Woods | Business Valuation |
| 21. | In re: Technical Equities Federal Securities Litigation (1989) | U.S. District Court, Northern District of California | Class Action Securities Case | Buchalter, Nemer, Fields & Younger | Damages Analysis |
| 20. | Kay Co. v. HCC Industries (1989) | U.S. District Court, Southern District of Texas | Product Liability | Mayer, Day & Caldwell | Alter Ego Analysis |
| 19. | Pacific Dataware Inc. v. Novell (1989) | U.S. District Court, Utah | Antitrust | Kirton, McConkie & Poleman | Damages Analysis |
| 18. | Cole v. Benvenuti (1989) | Sacramento Superior Court, California | Breach of Contract | Lovitt & Hannan | Damages Analysis |
| 17. | Redacted v. Redacted (1988) | Los Angeles Superior Court | Professional Negligence | Riordan & Mckenzie | Professional Negligence & Damages Analysis |
| 16. | Sunwest Bank v. Alec Sharp (1988) | U.S. District Court, Central District of California | Breach of Contract | Lewis, D'Amato, Brisbois & Bisgaard | Damages Analysis |
| 15. | Standard Wire & Cable v. Ameritrust (1988) | U.S. District Court, Central District of California | Lender Liability | Milbank, Tweed, Hadley & McCloy | Damages Analysis |
| 14. | Small v. Rogers (1988) | Los Angeles Superior Court, California | Breach of Contract and Fiduciary Duty | Loeb & Loeb | Business Valuation |
| 13. | Cleanmaster v. Fireman's Fund Insurance (1988) | Los Angeles Superior Court, California | Business Interruption | Crouch & Fern | Damages Analysis |

EXHIBIT _____ 75

PAGE _____ 727

## EXPERT TESTIMONY—DEPOSITION (**If Protective Order in place)

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|-----|---------|-------|------|--------------------|----------------|
| 12. | Benvenuti v. Evans (1988) | Sacramento Superior Court, California | Fraud, Breach of Contract | Kronick, Moskovitz, Tiedemann & Girard | Real Estate Valuation |
| 11. | In re: Technical Equities (1988) | Santa Clara Superior Court, California | Class Action Securities Case | Buchalter, Nemer, Fields & Younger | Damages Analysis |
| 10. | Avila v. Goeden (1988) | U.S. District Court, Central District of California | Fraud, Breach of Contract | Rogers & Wells | Damages Analysis |
| 9. | Skeen v. Wynn's International (1987) | Los Angeles Superior Court, California | Fraud, Breach of Contract | Gibson, Dunn & Crutcher | Business Valuation |
| 8. | Dumke v. Buffalo Chips, Inc. (1987) | San Francisco Superior Court, California | Breach of Contract | Kronick, Moskovitz, Tiedemann & Girard | Damages Analysis |
| 7. | General Dynamics v. AT&T (1986) | U.S. District Court, Northern District of Illinois | Antitrust | Jenner & Block | Damages Analysis |
| 6. | Zelmans v. Tarzana Medical Partners (1985) | Los Angeles Superior Court, California | Breach of Contract | Fischer, Krane, & Jacobson | Damages Analysis |
| 5. | Ambassador Foods, Inc. v. State of California (1985) | Los Angeles Superior Court, California | Breach of Contract | Legal Staff of California Dept. of Transportation | Damages Analysis |
| 4. | Grizzard v. Western Kraft (1985) | Los Angeles Superior Court, California | Breach of Implied Warranties | Stern & Miller | Damages Analysis |
| 3. | Decorative Carpets v. Barkhordarian (1983 and 1988) | San Francisco Superior Court, California | Constructive Eviction | Pillsbury, Madison & Sutro | Damages Analysis |
| 2. | Morse Products v. AT&T (1983) | U.S. District Court, Central District of California | Antitrust | Blecher, Collins & Weinstein | Damages Analysis |
| 1. | Atherton Industries v. Sweda International (1982) | San Francisco Superior Court, California | Breach of Implied Warranties of Fitness and Merchantability | Cutler & Cutler | Damages Analysis |

EXHIBIT __75__

PAGE __728__

# EXPERT TESTIMONY—ALTERNATIVE DISPUTE RESOLUTION FORUMS

(*Indicates Number in Deposition Section if deposition testimony is given

| No. | Lawsuit | Type | Court | Law Firm/Attorneys | Work Performed |
|-----|---------|------|-------|--------------------|----------------|
| 29. | Redacted v. Redacted Case No. 74 180 Y 00729 06 DEAR (2007)** | Breach of Contract | American Arbitration Association | Howard Rice Nemerovski, Canady, Falk & Rabkin | Fairness of Partner Compensation |
| 28. | SilentAir Corporation v. Maytag Corporation, et al. Case No. 77/133 002220SNADE (2006) | Breach of Contract | American Arbitration Association | Holland & Knight LLP | Damages Analysis |
| 27. | George Yardley Company Inc. v. Johnson Controls, Inc. Case No. 72 11001086 02 (2005) | Antitrust | American Arbitration Association | Stradling, Yocca, Carlson & Rauth | Damages Analysis |
| 26. | Anthony M. Trolio v. RemedyTemp, Inc. Case No. 72-114-305-02 MACR (2004) | Breach of Contract | American Arbitration Association | Lewis, Brisbois, Bisgaard & Smith | Damages Analysis |
| 25. | 911Notify.com v. Verizon Delaware, Inc. Case No: 71Y18100072202 (2003) | Breach of Contract | American Arbitration Association | Munger, Tolles & Olson | Damages Analysis |
| 24. | SPX Corporation v. Franklin Electric Corporation Case No. 51 Y 198 00469 01 (2002) | Breach of Contract | American Arbitration Association | Jenner & Block | Business Valuation |
| 23. | 2learn2.com v. San Diego State University, College of Extended Studies, et. Al., Case No. 80 Y 181 00138 01 VMD (2002)* 165 | Breach of Contract | American Arbitration Association | Stradling, Yocca, Carlson & Rauth | Damages Analysis |
| 22. | PowerAgent, Inc. v. Electronic Data Systems Corporation No. 71 Y 117 00262 00 (2002)*160 | Breach of Fiduciary Duty | American Arbitration Association | Baker & Botts Townsend and Townsend and Crew | Damages Analysis Due Diligence |
| 21. | Potlatch Corporation v. Beloit Corporation Case No. 99-2177 (PJW) (2002) | Breach of Contract | JAMS, San Francisco, California | Sacks Montgomery | Damages Analysis |
| 20. | Clayton Industries v. SPX Corporation Case No. 72-18166200-SMY (2001) *150 | Breach of Contract | American Arbitration Association | Jenner & Block | Damages Analysis |
| 19. | Fourthchannel, inc. v. Pivotal Corporation No. 50 T 133 00200 (2001) | Breach of Contract | American arbitration Association | Dorsey & Whitney LLP Bordon Ladner Gervais | Damages Analysis |
| 18. | Glass & Associates v. Factory Mutual Insurance Company Civil No. 99-6105-HO (2000) | Breach of Contract | U.S. District Court, District of Oregon | Ball Janik | Damages Analysis |
| 17. | Ardent Software, Inc. v. Pacific Unidata, Inc. (2000)*127 | Breach of Contract | CPR Arbitration | Christensen, O'Connor, Johnson & Kindness | Damages Analysis |

EXHIBIT ___75___

PAGE ___729___

# EXPERT TESTIMONY—ALTERNATIVE DISPUTE RESOLUTION FORUMS
(*Indicates Number in Deposition Section if deposition testimony is given

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|-----|---------|-------|------|--------------------|-----------------|
| 16. | RAM Consulting, Inc. v. Adams Golf No. 74-Y181-0602-98 (1999) | American Arbitration Association | Breach of Contract | Howard, Rice, Nemerovski, Canady, Falk & Rabkin | Damages Analysis |
| 15. | Synnex Information Technologies v. Tandy Corp., et al. C97-3757 WHO (1999) | U.S. District Court, Northern District of California, Referral | Breach of Contract | Nelson, Greenberg & Cohen | Damages Analysis |
| 14. | The Ischemia Research & Educational Foundation v. UCB, S.A. No. 74 T181 0440 97 (1998) | American Arbitration Association | Breach of Contract | Howard, Rice, Nemerovski, Canady, Falk & Rabkin | Damages Analysis |
| 13. | Green Hills Software, Inc. v. Integrated Systems, Inc. No. 72 117 01213 97 (1998) | American Arbitration Association | Breach of Contract | Munger, Tolles & Olson | Damages Analysis |
| 12. | Prestige Card, Inc. v. Bank One, et al (1998) | American Arbitration Association | Breach of Contract | Lane Powell Spears Lubersky | Damages Analysis |
| 11. | Tung Yuan Construction Co. v. Chao Case No. GC 012436 (1996) *93 | Los Angeles Superior Court (Baseball Arbitration) | Breach of Contract | Bird, Marella, Boxer, Wolpert & Matz | Investigatory Accounting |
| 10. | Polo Ralph Lauren L.P. v. The Magnin Company Inc. (1997) | American Arbitration Association | Breach of Contract | Browne & Woods | Damages Analysis |
| 9. | Redacted v. Redacted (1996) | American Arbitration Association | Breach of Contract | Kirkland & Ellis | Damages Analysis |
| 8. | Ostex International Inc. v. Boehringer Mannheim No. 79T184 00192 95 (1996) *88 | American Arbitration Association | Breach of Contract | Mundt, MacGregor, Happel, Falconer, Zulauf & Hall | Damages Analysis |
| 7. | Kenady v. Cooper, White & Cooper No. 940973151 (1995) | JAMS, San Francisco, California | Breach of Contract | Quinn, Kully and Morrow | Damages Analysis |
| 6. | Dahle v. Integrated Resource Equity Corp. (1991) | NASD Arbitration, Portland, Oregon | Securities Violations | Garvey, Schubert & Barer | Damages Analysis |
| 5. | Bacchi v. Fireman's Fund Insurance Co. (1991) *39 | JAMS, Los Angeles, California | Breach of Contract | Kayajanian, Furay, Baker & Hill | Damages Analysis |
| 4. | Kernohan v. Prudential Bache (1989) | American Arbitration Association | Breach of Fiduciary duty | Orrick, Herrington & Sutcliffe | Damages Analysis |

EXHIBIT _____ 75

PAGE _____ 130

# EXPERT TESTIMONY—ALTERNATIVE DISPUTE RESOLUTION FORUMS
(*Indicates Number in Deposition Section if deposition testimony is given

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|-----|---------|-------|------|--------------------|----------------|
| 3. | Schenck v. Taft Entertainment Co. (1989) | American Arbitration Association | Breach of Contract | Rosenfeld, Meyer & Susman | Damages Analysis |
| 2. | Nuvision Eyecare v. Southern California Glazers (1987) | American Arbitration Association | Breach of Contract | Gibson, Dunn & Crutcher | Damages Analysis |
| 1. | Pittsburgh/Des Moines Corp. v. Garden Grove Community Church (1984) | American Arbitration Association | Breach of Construction Contract | Irell & Manella | Damages Analysis |

EXHIBIT _____ 75
PAGE _____ 731

MICHAEL J. WAGNER
Page 43

## EXPERT TESTIMONY—WRITTEN TESTIMONY ONLY

| No. | Lawsuit | Court | Type | Law Firm/Attorneys | Work Performed |
|---|---|---|---|---|---|
| 8. | In re Textile Rental Services Litigation Case No CV-05-19 (2006) | Circuit Court of Barbour County (Clayton Division), Alabama | Class Action Fraud and Breach of Contract | 14 different law firms | Fairness of Settlement |
| 7. | Castle & Cooke California, Inc. v. Waste Management of California, Inc. No. CV760322 (1997) | JAMS/ENDISPUTE | Breach of Contract | Crosby, Heafey, Roach & May | Business Valuation |
| 6. | IMACC Corporation v. Dorothy Myers Warburton, et al. Case No. C 93 114 CW (1996) | U.S. District Court Northern District of California | Environmental Cleanup | Morrison & Foerster Lane Powell Spears Lubersky Larson & Burnham | Alter Ego Analysis |
| 5. | Williams v. Kaiser Sand & Gravel & SYAR Case No. C92-3561 (1995) | U.S. District Court Northern District of California | Antitrust | Thelen, Marrin, Johnson & Bridges | Damages Analysis |
| 4. | State Farm, et al. v. Garmendi Case No. 918689 (1995) | Los Angeles Superior Court, California | Declaratory Relief | Heller, Ehrman, White & McAuliffe | Reasonableness of Fees |
| 3. | In re: Phar-Mor Inc. Securities Litigation Case No. 93-631 (1995) | U.S. District Court, Western District of Pennsylvania | Securities Litigation | Zelle & Larson | Damages Analysis |
| 2. | Reggie White, et al. v. N.F.L. Civil No. 4-92-906 (1993) | U.S. District Court, District of Minnesota, 4th Division | Antitrust | Howarth & Smith | Damages Analysis |
| 1. | McCarthy v. Pollet (1983) | State Court, Hawaii | Fraud | Goodsill, Anderson, Quinn & Stifell | Investigatory Accounting |

**EXHIBIT 76**



1   THOMAS J. NOLAN (Bar No. 066992)
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2   300 South Grand Avenue
    Los Angeles, CA 90071-3144
3   Telephone: (213) 687-5000
    Facsimile: (213) 687-5600
4   E-mail:     tnolan@skadden.com

5   RAOUL D. KENNEDY (Bar No. 40892)
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6   Four Embarcadero Center, Suite 3800
    San Francisco, CA 94111
7   Telephone: (415) 984-6400
    Facsimile: (415) 984-2698
8   E-mail:     rkennedy@skadden.com

9   Attorneys for Counter-Defendants,
    MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
10  (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13                    EASTERN DIVISION

13  CARTER BRYANT, an individual        )   CASE NO. CV 04-9049 SGL (RNBx)
14                                      )
               Plaintiff,               )   Consolidated with Case No. 04-9059
15                                      )   and Case No. 05-2727
        v.                              )
16                                      )   MGA ENTERTAINMENT,
    MATTEL, INC., a Delaware            )   INC.'S SUPPLEMENTAL
17  corporation                         )   RESPONSES TO MATTEL,
                                        )   INC.'S REVISED THIRD SET
18             Defendant.               )   OF INTERROGATORIES
                                        )
19                                      )   Honorable Stephen G. Larson
                                        )   Courtroom 1
20                                      )
                                        )
21  Consolidated with MATTEL, INC. v.   )   Discovery Cut-Off: March 3, 2008
    BRYANT and MGA                      )
22  ENTERTAINMENT, INC. v.              )
    MATTEL, INC.                        )
23                                      )

24  PROPOUNDING PARTY:      MATTEL, INC. ("MATTEL")

25  RESPONDING PARTY:       MGA ENTERTAINMENT, INC. ("MGA")

26  SET NUMBER:             REVISED THIRD

27

28
                              11·30
    MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES   NO. CV 04-9049 SGL (RNBx)

EXHIBIT 16
PAGE 133

# PRELIMINARY STATEMENT

MGA hereby serves its objections to Mattel's Revised Third Set of Interrogatories. MGA is not yet in a position to serve its substantive responses to Mattel's Revised Third Set of Interrogatories, in part due to Mattel's failure to provide meaningful document, deposition and other discovery and also the transition of MGA's representation from prior counsel of record to Skadden, Arps. MGA intends to supplement its objections with substantive responses to the unobjectionable portions of the interrogatories contained in Mattel's Revised Third Set of Interrogatories as soon as it is in a position to do so and after it has concluded meet and confer sessions with Mattel, including with respect to Mattel's outstanding discovery obligations.

The General Response set forth herein applies to all responses that MGA is providing in response to these interrogatories (the "Interrogatories") or may in the future provide in response to any discovery request in this action. The Response is made without waiving, or intending to waive but, on the contrary, expressly reserving: (a) the right to object, on the grounds of competency, privilege, relevancy or materiality, or any other proper grounds, to the use of the Response, for any purpose in whole or in part, in any subsequent step or proceeding in this action or any other action; (b) the right to object on any and all grounds, at any time, to other interrogatories or other discovery procedures; and (c) the right at any time to revise, correct, add to, or clarify any of the responses propounded herein.

The Response reflects only the present state of MGA's discovery regarding the information that Mattel seeks. Discovery and other investigation or research concerning this litigation are continuing. Mattel has produced almost no documents to date and has produced no documents from its Zeus computer system, and has not provided other discovery responses, including without limitation supplemental responses to its March 7, 2005, responses to MGA's First Set of Interrogatories (which responses were comprised almost entirely of objections). It is

EXHIBIT 70
PAGE 734

1

1 | anticipated that further discovery, independent investigation, and legal research and
2 | analysis will supply additional facts and meaning to the known facts, as well as
3 | establish entirely new factual conclusions, all of which may lead MGA to discover
4 | other information responsive to these Interrogatories.  MGA therefore reserves the
5 | right to amend or supplement this Response at any time in light of future
6 | investigation, research or analysis, and also expressly reserves the right to rely on, at
7 | any time, including trial, subsequently discovered information omitted from this
8 | Response as a result of mistake, error, oversight or inadvertence.  MGA does not
9 | hereby admit, adopt or acquiesce in any factual or legal contention, assertion or
10 | characterization contained in the Interrogatories or any particular request therein,
11 | even where MGA has not otherwise objected to a particular interrogatory, or has
12 | agreed to provide information responsive to a particular interrogatory.

13 | No incidental or implied admissions are intended by this Response.
14 | These responses should not be taken as an admission that MGA accepts or admits the
15 | existence of any facts set forth or assumed by any instruction, definition or
16 | interrogatory.

17 | **GENERAL OBJECTIONS**

18 | MGA responds to these Interrogatories subject to the following general
19 | objections and limitations, each of which is incorporated into each and every
20 | response as though fully set forth therein:

21 | 1.      MGA objects to these Interrogatories to the extent they seek
22 | information that is not subject to disclosure under any applicable privilege, doctrine
23 | or immunity, including without limitation the attorney-client privilege, the work
24 | product doctrine, the right of privacy, and all other privileges recognized under the
25 | constitutional, statutory or decisional law of the United States of America, the State
26 | of California or any other applicable jurisdiction.

27 | 2.      MGA objects to these Interrogatories to the extent they seek
28 | information not relevant to the claims or defenses of any party to this action and not

EXHIBIT 16

PAGE 135

2

1  reasonably calculated to lead to the discovery of admissible evidence.

2        3.      MGA objects to these Interrogatories to the extent they seek

3  information which by reason of public filing or otherwise is already in Mattel's

4  possession or is readily accessible to Mattel.

5        4.      MGA objects to these Interrogatories to the extent they seek the

6  disclosure of information (1) not currently within its possession, custody or control;

7  (2) that MGA cannot locate after a reasonably diligent search; or (3) that refer to

8  persons, entities, or events not known to MGA.

9        5.      MGA objects to these Interrogatories to the extent they are

10  overbroad and unduly burdensome.

11        6.      MGA objects to the definitions and instructions to the extent

12  such definitions and instructions purport to enlarge, expand, or alter in any way the

13  plain meaning and scope of any specific term or specific interrogatories on the

14  ground that such enlargement, expansion, or alteration renders such a term or request

15  vague, ambiguous, unintelligible, overly broad, unduly burdensome or uncertain.

16        7.      MGA objects to the following definitions in these

17  Interrogatories:

18              (a)     MGA objects to the definition of the term "BRATZ"

19  (Definitions ¶ 9) as vague, ambiguous, overly broad and unduly burdensome, and

20  designed to mislead and confuse the trier of fact.  The definition includes "any

21  project, product, doll or DESIGN ever known by [the Bratz] name (whether in whole

22  or in part and regardless of what such project, product or doll is or has been also,

23  previously or subsequently called) and any product, doll or DESIGN or any portion

24  thereof that is now or has ever been known as, or sold or marketed under, the name

25  or term 'Bratz' (whether in whole or in part and regardless of what such product, doll

26  or DESIGN or portion thereof is or has been also, previously or subsequently called)

27  or that is now or has ever been marketed as part of the 'Bratz' line, and each version

28  or iteration of such product, doll or DESIGN or any portion thereof," and it goes on.

EXHIBIT 76

PAGE 736

3

1    By incorporating the definition of DESIGN, the overly broad definition of BRATZ

2    includes two-dimensional and three-dimensional representations, including "works,

3    designs, artwork, sketches, drawings, illustrations, representations, depictions,

4    blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples,

5    rotocasts, reductions to practice, developments, inventions and/or improvements . . .

6    ." (Definitions, ¶ 8.)  These convoluted and multi-part definitions combine to render

7    the interrogatories vague, ambiguous and overly broad, and to include within the

8    term BRATZ things that do not fairly represent the Bratz line of dolls, accessories

9    and related products that are the subject of this case.  In responding to these

10   interrogatories, MGA will interpret the term BRATZ to mean the line of dolls

11   introduced by MGA to the market for sale in May or June of 2001 and subsequent

12   dolls, accessories and other products known as Bratz or associated by MGA with the

13   Bratz line of dolls;

14                    (b)       MGA objects to the definition of the term "BRATZ

15   DOLL" (Definitions ¶ 12) as vague, ambiguous, overly broad and unduly

16   burdensome, and designed to mislead and confuse the trier of fact.  The definition

17   includes any doll that "REFERS OR RELATES TO BRATZ."  Mattel's definition of

18   the terms "BRATZ" and "REFERS OR RELATES" renders the definition of

19   "BRATZ DOLL" unintelligible because MGA cannot know, by way of example,

20   what dolls may "deal with, comment on, respond to, . . . or in any way pertain"

21   (Definition ¶ 20) to "BRATZ."  In responding to these interrogatories, MGA will

22   interpret the term "BRATZ DOLL" to mean the line of dolls introduced by MGA to

23   the market for sale in May or June of 2001 and subsequent dolls known as Bratz;

24                    (c)       MGA objects to the definition of the term "CREATED"

25   (Definitions ¶ 21) as vague, ambiguous, overly broad and unduly burdensome, and

26   designed to mislead and confuse the trier of fact.  The definition strays far from the

27   English meaning of the term "created" by including concepts such as "improved,"

28   "altered," "conceived of" and "reduced to practice."  Thus, by way of example, under

4

PAGE ___ 737

EXHIBIT 16

1  Mattel's definition of "CREATED," the jury could be misled into believing that a
2  person "CREATED" a particular thing when that person did not, but only slightly
3  altered or improved the thing.  In responding to these interrogatories, MGA will not
4  interpret the term "CREATED," but rather will respond using words contained
5  within the Mattel definition in their normal, accepted meaning;

6          (d)    MGA objects to the definition of the term "INVENTIONS
7  AGREEMENT" (Definitions ¶ 23) as vague, ambiguous, overly broad and unduly
8  burdensome, and designed to mislead and confuse the trier of fact.  The definition
9  includes "any other version of such January 4, 1999 agreement."  In responding to
10  these interrogatories, MGA will interpret the term "INVENTIONS AGREEMENT"
11  to refer to the document Bates numbered M0001596;

12          (e)    MGA objects to the definition of the term "BRATZ
13  INVENTION" (Definitions ¶ 10) as vague, ambiguous, overly broad and unduly
14  burdensome, and designed to mislead and confuse the trier of fact.  The definition
15  strays far from the English meaning of the term "invention" by including concepts
16  such as representation, idea, concept, work, process, procedure, plan, improvement,
17  design and development, none of which necessarily equate to an invention.  In
18  responding to these interrogatories, MGA will not interpret the term "BRATZ
19  INVENTION," but rather will respond using words contained within the Mattel
20  definition in their normal, accepted meaning.

21          (f)    MGA objects to the terms "IDENTIFY" or "IDENTITY"
22  (Definitions ¶ 28) as overbroad, unduly burdensome, vague, ambiguous, and
23  oppressive.  Mattel's definition of these terms inherently call for answers to multiple
24  discrete questions or subparts to questions.  For example, when those terms are used
25  to reference any BRATZ INVENTION, the use of those terms requests at least 10
26  different and distinct facts: (a) the Bates number of any document that "REFERS OR
27  RELATES TO THE BRATZ INVENTION"; (b) the IDENTITY of the individual
28  author or creator of the BRATZ INVENTIONS; (c) the IDENTITY of each other

EXHIBIT 16
PAGE 138

5

1  individual who contributed in any manner to the BRATZ INVENTION; (d) the form,

2  material and medium of the BRATZ INVENTION; (e) the title or name of the

3  BRATZ INVENTION; (f) the version, modification, revision or iteration number of

4  the BRATZ INVENTION; (g) the current location of the original of the BRATZ

5  INVENTION; (h) the first day on which the BRATZ INVENTION was created; (i)

6  the last day on which the BRATZ INVENTION was CREATED; (j) whether the

7  entire invention was CREATED during the period of time listed in the Interrogatory

8  (and if not, which portions were created during, earlier, or later than the period of

9  time listed in the Interrogatory.)  Therefore, any interrogatory that includes or

10  incorporates the terms "IDENTIFY" or "IDENTITY" are necessarily compound and

11  should be posed as separate interrogatories.

12       (g)    MGA objects to the terms "any" and "REFER OR

13  RELATE TO" on the grounds and to the extent that they are overbroad, unduly

14  burdensome or are vague and ambiguous in the context of the interrogatories as

15  written and as those interrogatories would be plainly understood absent Mattel's

16  definitions.

17       8.    MGA objects to these interrogatories to the extent that they may

18  unfairly seek to restrict the facts on which MGA may rely at trial.  Discovery has not

19  been completed and MGA is not yet necessarily in possession of all the facts and

20  documents upon which MGA intends to rely.  All of the responses submitted

21  herewith are tendered to Mattel with the reservation that the responses are submitted

22  without limiting the evidence on which MGA may rely to support the contentions

23  and defenses that MGA may assert at the trial of this action and to rebut or impeach

24  the contentions, assertions and evidence that Mattel may present.  MGA reserves the

25  right to supplement or amend these responses at a future date.

26       9.    MGA objects to each interrogatory to the extent that it seeks

27  information that will be the subject of expert witness testimony and that is therefore

28  premature.

PAGE 759

EXHIBIT 16

6

10.     MGA objects to each interrogatory to the extent that it seeks the disclosure of confidential, proprietary, or trade-secret information.

11.     MGA objects to each interrogatory to the extent that it calls for a legal conclusion.

12.     MGA reserves the right to object on any ground at any time to such other and supplemental discovery requests as Mattel may propound involving or relating to the same subject matter of these interrogatories.

13.     The responses below shall not be construed as an admission as to the relevance or admissibility of any statement or characterization contained in any interrogatory. MGA reserves all objections, including without limitation objections as to competency, relevance, materiality, privilege, authenticity, or admissibility.

14.     Consistent with Rule 33(d) of the Federal Rules of Civil Procedure, MGA objects to providing responses to interrogatories that can be derived from documents that have or will be produced (when requested in compliance with Rule 26) and where the burden to derive such information is substantially the same for Mattel as it is for MGA.

15.     In responding to these Interrogatories, MGA has not and will not comply with any instructions or definitions that seek to impose requirements in addition to those imposed by the Federal Rules of Civil Procedure and any applicable local rule.

16.     To the extent MGA responds to an interrogatory, it does so without waiving or intending to waive but rather, on the contrary, preserving and intending to preserve, its contention that anything Mr. Bryant did on weekends, evenings, vacation and any other time outside ordinary business hours was not done while he was working for Mattel. MGA's response may not be taken as an admission that the information it provides in its response in any way reflects or evidences work performed by Mr. Bryant while he was working for Mattel or that MGA adopts or agrees with any fact or legal conclusion assumed, presumed or contained in Mattel's

EXHIBIT 76

PAGE 740

7

1 | interrogatory.

2 |      17.   MGA objects to each of Mattel's interrogatories because Mattel

3 | has propounded more than 50 interrogatories, including discrete subparts. Under

4 | Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each

5 | side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

6 | **SPECIFIC OBJECTIONS AND RESPONSES**

7 |      Without waiving or departing from its General Response and General

8 | Objections, and specifically incorporating them in its response to each Interrogatory

9 | below, MGA makes the following additional objections and responses to specific

10 | Interrogatories:

11 | **INTERROGATORY NO. 27:**

12 |      IDENTIFY each and every BRATZ INVENTION YOU contend was

13 | CREATED, in whole or in part, prior to January 4, 1999, and for each BRATZ

14 | INVENTION so identified state all facts that support YOUR contention that such

15 | BRATZ INVENTION (or aspects or portions thereof) was CREATED prior to

16 | January 4, 1999, and IDENTIFY all PERSONS with knowledge of such facts and all

17 | DOCUMENTS which REFER OR RELATE TO such facts.

18 | **RESPONSE TO INTERROGATORY NO. 27:**

19 |      MGA incorporates by reference its General Response and General

20 | Objections above, as though fully set forth herein and specifically incorporates

21 | General Objection No. 7 (regarding the Definitions), including but not limited to its

22 | objections to the definitions of the terms BRATZ INVENTION, CREATED,

23 | IDENTIFY and REFER OR RELATES TO. MGA further objects to this

24 | interrogatory as compound because it contains discrete subparts that require separate,

25 | distinct and multiple responses. Specifically, MGA objects to the term IDENTIFY

26 | as overbroad and unduly burdensome, as Mattel's definition of this term calls for

27 | responses to multiple discrete subparts. For example, Mattel's definition of the term

28 | IDENTIFY in the context of this interrogatory would require MGA to provide a

PAGE _____ EXHIBIT _____ 74 / 76

8

1  multitude of discrete responses for each BRATZ INVENTION, including:

2         (a)   the Bates number of any document that "REFERS OR RELATES

3  TO the BRATZ INVENTION;"

4         (b)   the IDENTITY of the individual author or creator of the BRATZ

5  INVENTION;

6         (c)   the IDENTITY of each other individual who contributed in any

7  manner to the BRATZ INVENTION;

8         (d)   the form, material and medium of the BRATZ INVENTION;

9         (e)   the title or name of the BRATZ INVENTION;

10         (f)   the version, modification, revision or iteration number of the

11  BRATZ INVENTION;

12         (g)   the current location of the original of the BRATZ INVENTION;

13         (h)   the first day on which the BRATZ INVENTION was CREATED;

14         (i)   the last day on which the BRATZ INVENTION was CREATED;

15         (j)   whether the entire invention was CREATED during the period of

16  time listed in the Interrogatory (and if not, which portions were created during,

17  earlier, or later than the period of time listed in the Interrogatory).

18        This interrogatory is further compounded by Mattel's definition of

19  IDENTITY, which purports to require MGA to provide the following information

20  for each of the individuals Mattel is requesting that MGA identify with respect to

21  each BRATZ INVENTION:  (a) the individual's name; (b) any known business title;

22  (c) the current or last known business affiliation; (d) current or last known residential

23  address; (e) current or last known business address; (f) current or last known

24  relationship to MGA; and (g) current or last known telephone number.

25        MGA further objects to this interrogatory on the grounds that it is

26  overbroad, unduly burdensome, vague and ambiguous both generally and

27  specifically with respect to the terms BRATZ INVENTION, BRATZ, CREATED,

28  DESIGN and REFER OR RELATES TO.  In particular, the term BRATZ

PAGE ___

EXHIBIT ___

742

9

1 | INVENTION, which incorporates the terms BRATZ, DESIGN and REFER OR
2 | RELATES TO, is so broad and over-inclusive that it could be read to include each
3 | and every thought, idea and conversation that anyone may have had about BRATZ
4 | during the time period at issue.

5 | MGA further objects to the extent that this interrogatory seeks
6 | information that is outside of MGA's knowledge and is not in MGA's possession,
7 | custody or control. In particular, MGA objects to this interrogatory to the extent that
8 | it requests that MGA "state *all* facts . . . and IDENTIFY *all* PERSONS ... and *all*
9 | DOCUMENTS" (emphasis added).

10 | MGA also objects to this interrogatory to the extent it seeks information
11 | that is not subject to disclosure under any applicable privilege, doctrine or immunity,
12 | including without limitation the attorney-client privilege, the work product doctrine,
13 | the right of privacy, and all other privileges recognized under the constitutional,
14 | statutory or decisional law of the United States of America, the State of California or
15 | any other applicable jurisdiction. MGA further objects to the interrogatory on the
16 | ground that it is premature because the invention, creation, conception, or reduction
17 | to practice of Bratz (and related issues) will be the subject of expert testimony at
18 | trial. MGA objects to this interrogatory to the extent it seeks to limit the expert
19 | testimony that MGA may seek to introduce at trial. MGA will identify its experts
20 | and make related disclosures in accordance with the Court's orders and applicable
21 | rules.

22 | MGA further objects to this interrogatory because Mattel has
23 | propounded more than 50 interrogatories. Under Judge Larson's order of February
24 | 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-
25 | 04049-SGL and CV 05-02727]."

26 | Subject to and without waiving the foregoing objections, MGA
27 | responds as follows: MGA is willing to meet and confer with Mattel regarding this
28 | interrogatory and the obligation of Mattel to supplement its responses to MGA's First

EXHIBIT IV
PAGE 743

10

1 | Set of Interrogatories.

2 | **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 27:**

3 | MGA incorporates by reference its General Response and General

4 | Objections above, as though fully set forth herein and specifically incorporates

5 | General Objection No. 7 (regarding the Definitions), including but not limited to its

6 | objections to the definitions of the terms BRATZ INVENTION, CREATED,

7 | IDENTIFY and REFER OR RELATES TO. MGA further objects to this

8 | interrogatory as compound because it contains discrete subparts that require separate,

9 | distinct and multiple responses. Specifically, MGA objects to the term IDENTIFY

10 | as overbroad and unduly burdensome, as Mattel's definition of this term calls for

11 | responses to multiple discrete subparts. For example, Mattel's definition of the term

12 | IDENTIFY in the context of this interrogatory would require MGA to provide a

13 | multitude of discrete responses for each BRATZ INVENTION, including:

14 | (a) the Bates number of any document that "REFERS OR RELATES

15 | TO the BRATZ INVENTION;"

16 | (b) the IDENTITY of the individual author or creator of the BRATZ

17 | INVENTION;

18 | (c) the IDENTITY of each other individual who contributed in any

19 | manner to the BRATZ INVENTION;

20 | (d) the form, material and medium of the BRATZ INVENTION;

21 | (e) the title or name of the BRATZ INVENTION;

22 | (f) the version, modification, revision or iteration number of the

23 | BRATZ INVENTION;

24 | (g) the current location of the original of the BRATZ INVENTION;

25 | (h) the first day on which the BRATZ INVENTION was CREATED;

26 | (i) the last day on which the BRATZ INVENTION was CREATED;

27 | (j) whether the entire invention was CREATED during the period of

28 | time listed in the Interrogatory (and if not, which portions were created during,

PAGE ____  EXHIBIT ____ 16

11

1   earlier, or later than the period of time listed in the Interrogatory).

2        This interrogatory is further compounded by Mattel's definition of

3   IDENTITY, which purports to require MGA to provide the following information

4   for each of the individuals Mattel is requesting that MGA identify with respect to

5   each BRATZ INVENTION: (a) the individual's name; (b) any known business title;

6   (c) the current or last known business affiliation; (d) current or last known residential

7   address; (e) current or last known business address; (f) current or last known

8   relationship to MGA; and (g) current or last known telephone number.

9        MGA further objects to this interrogatory on the grounds that it is

10  overbroad, unduly burdensome, vague and ambiguous both generally and

11  specifically with respect to the terms BRATZ INVENTION, BRATZ, CREATED,

12  DESIGN and REFER OR RELATES TO. In particular, the term BRATZ

13  INVENTION, which incorporates the terms BRATZ, DESIGN and REFER OR

14  RELATES TO, is so broad and over-inclusive that it could be read to include each

15  and every thought, idea and conversation that anyone may have had about BRATZ

16  during the time period at issue.

17       MGA further objects to the extent that this interrogatory seeks

18  information that is outside of MGA's knowledge and is not in MGA's possession,

19  custody or control. In particular, MGA objects to this interrogatory to the extent that

20  it requests that MGA "state *all* facts . . . and IDENTIFY *all* PERSONS ... and *all*

21  DOCUMENTS" (emphasis added).

22       MGA also objects to this interrogatory to the extent it seeks information

23  that is not subject to disclosure under any applicable privilege, doctrine or immunity,

24  including without limitation the attorney-client privilege, the work product doctrine,

25  the right of privacy, and all other privileges recognized under the constitutional,

26  statutory or decisional law of the United States of America, the State of California or

27  any other applicable jurisdiction. MGA further objects to the interrogatory on the

28  ground that it is premature because the invention, creation, conception, or reduction

EXHIBIT 16

PAGE 745

12

1  to practice of Bratz (and related issues) will be the subject of expert testimony at
2  trial.  MGA objects to this interrogatory to the extent it seeks to limit the expert
3  testimony that MGA may seek to introduce at trial.  MGA will identify its experts
4  and make related disclosures in accordance with the Court's orders and applicable
5  rules.
6       Subject to and without waiving the foregoing objections, MGA
7  responds as follows:
8       With respect to "inventions" as that term is used in utility patent law,
9  MGA does not make any affirmative contentions as to whether there were any such
10  inventions, except that MGA contends that the conception and/or reduction to
11  practice of any such invention occurred before January 1999 and/or after October 20,
12  2000.  With respect to design patents, in August or September of 1998, Carter
13  Bryant, inspired by images he was exposed to, including in the August 1998 issue of
14  *Seventeen Magazine*, the appearance of teenagers, as well as other images in the
15  public domain, conceived of an idea for a line of dolls he named Bratz.  At the same
16  time, Bryant sketched a series of drawings to illustrate his idea.  To the extent said
17  idea contained elements covered by design patent law, no such invention was
18  "reduced to practice" until after October 20, 2000.  Nor did it fall within the scope of
19  the term "inventions" as used in the "INVENTIONS AGREEMENT."
20       The following persons have knowledge of the facts and circumstances
21  surrounding Bryant's conception and his illustrative drawings that he named Bratz:
22  Carter Bryant; Bryant's mother, Janet Bryant; Bryant's father, Thomas Bryant;
23  Jeanne Galvano; Richard Irmen; Elise Cloonan; Ramona Prince.
24       The following documents may be relevant to these facts:  the sketches
25  drawn by Bryant in August or September of 1998; publicly available materials that
26  Bryant identified in his deposition testimony as inspiring his conception of a line of
27  dolls in August or September of 1998, including but not limited to the August 1998
28  issue of *Seventeen Magazine*; and other documents shown to Bryant at his November

EXHIBIT 16
PAGE 746

13

1    2004 deposition.

2    **INTERROGATORY NO. 28:**

3    IDENTIFY each and every BRATZ INVENTION YOU contend was

4    CREATED, in whole or in part, after October 19, 2000 and before June 1, 2001, and

5    for each BRATZ INVENTION so identified state all FACTS that support YOUR

6    contention that such BRATZ INVENTION (or aspects or portions thereof) was

7    CREATED after October 19, 2000 and before June 1, 2001, and IDENTIFY all

8    PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR

9    RELATE TO such facts.

10    **RESPONSE TO INTERROGATORY NO. 28:**

11    MGA incorporates by reference its General Response and General

12    Objections above, as though fully set forth herein and specifically incorporates

13    General Objection No. 7 (regarding the Definitions), including but not limited to its

14    objections to the definitions of the terms BRATZ INVENTION, CREATED,

15    IDENTIFY, and REFER OR RELATED TO. MGA further objects to this

16    interrogatory on the grounds that it is overbroad, unduly burdensome, vague and

17    ambiguous both generally and specifically with respect to the term BRATZ

18    INVENTION, which incorporates the terms BRATZ, DESIGN and REFER OR

19    RELATES TO, is so broad and over-inclusive that it could be read to include each

20    and every thought, idea and conversation that anyone may have had about BRATZ

21    during the time period at issue.

22    MGA further objects to this interrogatory as compound because it

23    contains discrete subparts that require separate, distinct and multiple responses.

24    Specifically, MGA objects to the term IDENTIFY as overbroad and unduly

25    burdensome, as Mattel's definition of this term calls for responses to multiple

26    discrete subparts. For example, Mattel's definition of the term IDENTIFY in the

27    context of this interrogatory would require MGA to provide a multitude of discrete

28    responses for each BRATZ INVENTION, including:

PAGE ___ EXHIBIT 16 747

14

1   (a) the Bates number of any document that "REFERS OR RELATES

2 TO the BRATZ INVENTION;"

3   (b) the IDENTITY of the individual author or creator of the BRATZ

4 INVENTION;

5   (c) the IDENTITY of each other individual who contributed in any

6 manner to the BRATZ INVENTION;

7   (d) the form, material and medium of the BRATZ INVENTION;

8   (e) the title or name of the BRATZ INVENTION;

9   (f) the version, modification, revision or iteration number of the

10 BRATZ INVENTION;

11   (g) the current location of the original of the BRATZ INVENTION;

12   (h) the first day on which the BRATZ INVENTION was CREATED;

13   (i) the last day on which the BRATZ INVENTION was CREATED;

14   (j) whether the entire invention was CREATED during the period of

15 time listed in the Interrogatory (and if not, which portions were created during,

16 earlier, or later than the period of time listed in the Interrogatory).

17  This interrogatory is further compounded by Mattel's definition of

18 IDENTITY, which purports to require MGA to provide the following information

19 for each of the individuals Mattel is requesting that MGA identify with respect to

20 each BRATZ INVENTION:  (a) the individual's name (b) any known business title;

21 (c) the current or last known business affiliation; (d) current or last known residential

22 address; (e) current or last known business address; (f) current or last known

23 relationship to MGA; and (g) current or last known telephone number.

24  MGA further objects to the extent that this interrogatory seeks

25 information that is outside of MGA's knowledge and is not in MGA's possession,

26 custody or control.  In particular, MGA objects to this interrogatory to the extent that

27 it requests that MGA "state *all* facts . . . and IDENTIFY *all* PERSONS ... and *all*

28 DOCUMENTS" (emphasis added).

PAGE 74B

EXHIBIT 16

1    MGA also objects to this interrogatory to the extent it seeks information

2    that is not subject to disclosure under any applicable privilege, doctrine or immunity,

3    including without limitation the attorney-client privilege, the work product doctrine,

4    the right of privacy, and all other privileges recognized under the constitutional,

5    statutory or decisional law of the United States of America, the State of California or

6    any other applicable jurisdiction.

7        MGA further objects to the interrogatory on the ground that it is

8    premature because the invention, creation, conception, or reduction to practice of

9    Bratz (and related issues) will be the subject of expert testimony at trial. MGA

10   objects to this interrogatory to the extent it seeks to limit the expert testimony that

11   MGA may seek to introduce at trial. MGA will identify its experts and make related

12   disclosures in accordance with the Court's orders and applicable rules. MGA further

13   objects to the interrogatory as unduly burdensome, on the grounds that it would

14   require MGA to identify numerous documents that have already been produced and

15   are readily available to Mattel.

16       MGA further objects to this interrogatory because Mattel has

17   propounded more than 50 interrogatories. Under Judge Larson's order of February

18   22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

19   04049-SGL and CV 05-02727]."

20       Subject to and without waiving the foregoing objections, MGA

21   responds as follows: MGA is willing to meet and confer with Mattel regarding this

22   interrogatory and the obligation of Mattel to supplement its responses to MGA's First

23   Set of Interrogatories.

24   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 28:**

25       MGA incorporates by reference its General Response and General

26   Objections above, as though fully set forth herein and specifically incorporates

27   General Objection No. 7 (regarding the Definitions), including but not limited to its

28   objections to the definitions of the terms BRATZ INVENTION, CREATED,

16

EXHIBIT 16

PAGE 149

1  IDENTIFY, and REFER OR RELATED TO.  MGA further objects to this

2  interrogatory on the grounds that it is overbroad, unduly burdensome, vague and

3  ambiguous both generally and specifically with respect to the term BRATZ

4  INVENTION, which incorporates the terms BRATZ, DESIGN and REFER OR

5  RELATES TO, is so broad and over-inclusive that it could be read to include each

6  and every thought, idea and conversation that anyone may have had about BRATZ

7  during the time period at issue.

8          MGA further objects to this interrogatory as compound because it

9  contains discrete subparts that require separate, distinct and multiple responses.

10  Specifically, MGA objects to the term IDENTIFY as overbroad and unduly

11  burdensome, as Mattel's definition of this term calls for responses to multiple

12  discrete subparts.  For example, Mattel's definition of the term IDENTIFY in the

13  context of this interrogatory would require MGA to provide a multitude of discrete

14  responses for each BRATZ INVENTION, including:

15          (a)     the Bates number of any document that "REFERS OR RELATES

16  TO the BRATZ INVENTION;"

17          (b)     the IDENTITY of the individual author or creator of the BRATZ

18  INVENTION;

19          (c)     the IDENTITY of each other individual who contributed in any

20  manner to the BRATZ INVENTION;

21          (d)     the form, material and medium of the BRATZ INVENTION;

22          (e)     the title or name of the BRATZ INVENTION;

23          (f)     the version, modification, revision or iteration number of the

24  BRATZ INVENTION;

25          (g)     the current location of the original of the BRATZ INVENTION;

26          (h)     the first day on which the BRATZ INVENTION was CREATED;

27          (i)     the last day on which the BRATZ INVENTION was CREATED;

28          (j)     whether the entire invention was CREATED during the period of

17

EXHIBIT 170

PAGE

1  time listed in the Interrogatory (and if not, which portions were created during,

2  earlier, or later than the period of time listed in the Interrogatory).

3       This interrogatory is further compounded by Mattel's definition of

4  IDENTITY, which purports to require MGA to provide the following information

5  for each of the individuals Mattel is requesting that MGA identify with respect to

6  each BRATZ INVENTION: (a) the individual's name (b) any known business title;

7  (c) the current or last known business affiliation; (d) current or last known residential

8  address; (e) current or last known business address; (f) current or last known

9  relationship to MGA; and (g) current or last known telephone number.

10       MGA further objects to the extent that this interrogatory seeks

11  information that is outside of MGA's knowledge and is not in MGA's possession,

12  custody or control. In particular, MGA objects to this interrogatory to the extent that

13  it requests that MGA "state *all* facts . . . and IDENTIFY *all* PERSONS ... and *all*

14  DOCUMENTS" (emphasis added).

15       MGA also objects to this interrogatory to the extent it seeks information

16  that is not subject to disclosure under any applicable privilege, doctrine or immunity,

17  including without limitation the attorney-client privilege, the work product doctrine,

18  the right of privacy, and all other privileges recognized under the constitutional,

19  statutory or decisional law of the United States of America, the State of California or

20  any other applicable jurisdiction.

21       MGA further objects to the interrogatory on the ground that it is

22  premature because the invention, creation, conception, or reduction to practice of

23  Bratz (and related issues) will be the subject of expert testimony at trial. MGA

24  objects to this interrogatory to the extent it seeks to limit the expert testimony that

25  MGA may seek to introduce at trial. MGA will identify its experts and make related

26  disclosures in accordance with the Court's orders and applicable rules. MGA further

27  objects to the interrogatory as unduly burdensome, on the grounds that it would

28  require MGA to identify numerous documents that have already been produced and

18

1 are readily available to Mattel.

2      Subject to and without waiving the foregoing objections, MGA

3 responds as follows:

4      With respect to Bratz dolls and accessories, as concerns the term

5 "inventions" as that is used in utility patent law, and/or in the "INVENTIONS

6 AGREEMENT," MGA does not make any affirmative contentions as to whether

7 there were any such inventions, except that MGA contends the conception and/or

8 reduction to practice of any such invention occurred before January 1999 and/or after

9 October 20, 2000. With respect to package design for Bratz products, MGA

10 contends that certain aspects of said designs qualified as design patents. With

11 respect to design patents, to the extent that the Bratz line of dolls, first marketed by

12 MGA in 2001, contained features covered by design patent law, said inventions were

13 "reduced to practice" by MGA after October 20, 2000 and before June 1, 2001.

14      The following persons have knowledge of the facts and circumstances

15 regarding the foregoing:  Isaac Larian; Carter Bryant; Margaret Leahy; Veronica

16 Marlow; Anna Rhee; Mercedeh Ward; Sarah Halpern; Paula Treantafelles (Garcia);

17 Steve Tarmichael; Rebecca Harris; Cecilia Kwok; David Dees; Jesse Ramirez; Sam

18 Wong; Edmond Lee; Steven Lee; Aileen Storer; Eric Yip; Leon Djiguerian; Rachel

19 Harris; Maggie Siu; Ben Ton; Samuel Wong; Ray Wong; Steffan Smith; and Samir

20 Khare.

21      The following documents may be relevant to these facts:  all

22 "DOCUMENTS" that refer to or evidence the work performed by MGA employees

23 and freelancers toward the reduction to practice of the first generation of Bratz dolls

24 during the period after October 19, 2000 through June 1, 2001, including but not

25 limited to:  (i) documents showing the development of the first generation of Bratz

26 dolls; (ii) documents showing exchanges with the Hong Kong factory regarding the

27 development of the first generation of Bratz dolls; (iii) documents showing the

28 timing of the development of packaging, fashion, and accessories for the first

PAGE ___ EXHIBIT ___ 152 16

1  generation of Bratz dolls; (iv) documents related to the January 2001 Hong Kong toy

2  fair; (v) documents related to the February 2001 New York toy fair; (vi)

3  polyurethane samples of prototypes; (vii)  rotocasts and sculpts in Hong Kong; and

4  (viii) invoices submitted from Carter Bryant, Veronica Marlow, Anna Rhee, Victoria

5  O'Connor, and other invoices submitted by freelancers for work performed on the

6  Bratz project.  The documents evidencing this work are too numerous to identify

7  individually.

8  **INTERROGATORY NO. 29:**

9          IDENTIFY each and every BRATZ INVENTION that was CREATED,

10  in whole or in part, after January 3, 1999 and before October 21, 2000, and for each

11  BRATZ INVENTION so identified state all FACTS that REFER OR RELATE TO

12  the timing of the creation of such BRATZ INVENTION and IDENTIFY all

13  PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR

14  RELATE TO such facts.

15  **RESPONSE TO INTERROGATORY NO. 29:**

16          MGA incorporates by reference its General Response and General

17  Objections above, as though fully set forth herein and specifically incorporates

18  General Objection No. 7 (regarding Definitions), including but not limited to its

19  objections to the definitions of the terms BRATZ INVENTION, CREATED, REFER

20  OR RELATE TO, and IDENTIFY.  MGA further objects to this interrogatory as

21  compound because it contains discrete subparts that require separate, distinct and

22  multiple responses.  Specifically, MGA objects to the term IDENTIFY as overbroad

23  and unduly burdensome, as Mattel's definition of this term calls for responses to

24  multiple discrete subparts.  For example, Mattel's definition of the term IDENTIFY

25  in the context of this interrogatory would require MGA to provide a multitude of

26  discrete responses for each BRATZ INVENTION, including:

27          (a)     the Bates number of any document that "REFERS OR RELATES

28  TO the BRATZ INVENTION;"

20

EXHIBIT
PAGE
152
16

1       (b)    the IDENTITY of the individual author or creator of the BRATZ

2 INVENTION;

3       (c)    the IDENTITY of each other individual who contributed in any

4 manner to the BRATZ INVENTION;

5       (d)    the form, material and medium of the BRATZ INVENTION;

6       (e)    the title or name of the BRATZ INVENTION;

7       (f)    the version, modification, revision or iteration number of the

8 BRATZ INVENTION;

9       (g)    the current location of the original of the BRATZ INVENTION;

10       (h)    the first day on which the BRATZ INVENTION was CREATED;

11       (i)    the last day on which the BRATZ INVENTION was CREATED;

12       (j)    whether the entire invention was CREATED during the period of

13 time listed in the Interrogatory (and if not, which portions were created during,

14 earlier, or later than the period of time listed in the Interrogatory).

15      This interrogatory is further compounded by Mattel's definition of

16 IDENTITY, which purports to require MGA to provide the following information

17 for each of the individuals Mattel is requesting that MGA identify with respect to

18 each BRATZ INVENTION:  (a) the individual's name (b) any known business title;

19 (c) the current or last known business affiliation; (d) current or last known residential

20 address; (e) current or last known business address; (f) current or last known

21 relationship to MGA; and (g) current or last known telephone number.

22      MGA further objects to this interrogatory on the grounds that it is

23 overbroad, unduly burdensome, vague and ambiguous both generally and

24 specifically with respect to the terms BRATZ INVENTION, BRATZ, CREATED,

25 DESIGN and REFER OR RELATES TO.  In particular, the term BRATZ

26 INVENTION, which incorporates the terms BRATZ, DESIGN and REFER OR

27 RELATES TO, is so broad and over-inclusive that it could be read to include each

28 and every thought, idea and conversation that anyone may have had about BRATZ

EXHIBIT ___

PAGE ___

21

1 | during the time period at issue.

2 | MGA further objects to the extent that this interrogatory seeks
3 | information that is outside of MGA's knowledge and is not in MGA's possession,
4 | custody or control. In particular, MGA objects to this interrogatory to the extent that
5 | it requests that MGA "state *all* facts . . . and IDENTIFY *all* PERSONS ... and *all*
6 | DOCUMENTS" (emphasis added).

7 | MGA also objects to this interrogatory to the extent it seeks information
8 | that is not subject to disclosure under any applicable privilege, doctrine or immunity,
9 | including without limitation the attorney-client privilege, the work product doctrine,
10 | the right of privacy, and all other privileges recognized under the constitutional,
11 | statutory or decisional law of the United States of America, the State of California or
12 | any other applicable jurisdiction.

13 | MGA further objects to the interrogatory on the ground that it is
14 | premature because the invention, creation, conception, or reduction to practice of
15 | Bratz (and related issues) will be the subject of expert testimony at trial. MGA
16 | objects to this interrogatory to the extent it seeks to limit the expert testimony that
17 | MGA may seek to introduce at trial. MGA will identify its experts and make related
18 | disclosures in accordance with the Court's orders and applicable rules. MGA further
19 | objects to the interrogatory as unduly burdensome, on the grounds that it would
20 | require MGA to identify numerous documents that have already been produced and
21 | are readily available to Mattel.

22 | MGA further objects to this interrogatory because Mattel has
23 | propounded more than 50 interrogatories. Under Judge Larson's order of February
24 | 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-
25 | 04049-SGL and CV 05-02727]."

26 | Subject to and without waiving the foregoing objections, MGA
27 | responds as follows: MGA is willing to meet and confer with Mattel regarding this
28 | interrogatory and the obligation of Mattel to supplement its responses to MGA's First

PAGE _____ EXHIBIT _____ 155 _____

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

1 | Set of Interrogatories.

2 | **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 29:**

3 |       MGA incorporates by reference its General Response and General

4 | Objections above, as though fully set forth herein and specifically incorporates

5 | General Objection No. 7 (regarding Definitions), including but not limited to its

6 | objections to the definitions of the terms BRATZ INVENTION, CREATED, REFER

7 | OR RELATE TO, and IDENTIFY. MGA further objects to this interrogatory as

8 | compound because it contains discrete subparts that require separate, distinct and

9 | multiple responses. Specifically, MGA objects to the term IDENTIFY as overbroad

10 | and unduly burdensome, as Mattel's definition of this term calls for responses to

11 | multiple discrete subparts. For example, Mattel's definition of the term IDENTIFY

12 | in the context of this interrogatory would require MGA to provide a multitude of

13 | discrete responses for each BRATZ INVENTION, including:

14 |       (a)    the Bates number of any document that "REFERS OR RELATES

15 | TO the BRATZ INVENTION;"

16 |       (b)    the IDENTITY of the individual author or creator of the BRATZ

17 | INVENTION;

18 |       (c)    the IDENTITY of each other individual who contributed in any

19 | manner to the BRATZ INVENTION;

20 |       (d)    the form, material and medium of the BRATZ INVENTION;

21 |       (e)    the title or name of the BRATZ INVENTION;

22 |       (f)    the version, modification, revision or iteration number of the

23 | BRATZ INVENTION;

24 |       (g)    the current location of the original of the BRATZ INVENTION;

25 |       (h)    the first day on which the BRATZ INVENTION was CREATED;

26 |       (i)    the last day on which the BRATZ INVENTION was CREATED;

27 |       (j)    whether the entire invention was CREATED during the period of

28 | time listed in the Interrogatory (and if not, which portions were created during,

EXHIBIT 16

PAGE 156

23

1  earlier, or later than the period of time listed in the Interrogatory).

2         This interrogatory is further compounded by Mattel's definition of

3  IDENTITY, which purports to require MGA to provide the following information

4  for each of the individuals Mattel is requesting that MGA identify with respect to

5  each BRATZ INVENTION:  (a) the individual's name (b) any known business title;

6  (c) the current or last known business affiliation; (d) current or last known residential

7  address; (e) current or last known business address; (f) current or last known

8  relationship to MGA; and (g) current or last known telephone number.

9         MGA further objects to this interrogatory on the grounds that it is

10  overbroad, unduly burdensome, vague and ambiguous both generally and

11  specifically with respect to the terms BRATZ INVENTION, BRATZ, CREATED,

12  DESIGN and REFER OR RELATES TO.  In particular, the term BRATZ

13  INVENTION, which incorporates the terms BRATZ, DESIGN and REFER OR

14  RELATES TO, is so broad and over-inclusive that it could be read to include each

15  and every thought, idea and conversation that anyone may have had about BRATZ

16  during the time period at issue.

17         MGA further objects to the extent that this interrogatory seeks

18  information that is outside of MGA's knowledge and is not in MGA's possession,

19  custody or control.  In particular, MGA objects to this interrogatory to the extent that

20  it requests that MGA "state *all* facts . . . and IDENTIFY *all* PERSONS ... and *all*

21  DOCUMENTS" (emphasis added).

22         MGA also objects to this interrogatory to the extent it seeks information

23  that is not subject to disclosure under any applicable privilege, doctrine or immunity,

24  including without limitation the attorney-client privilege, the work product doctrine,

25  the right of privacy, and all other privileges recognized under the constitutional,

26  statutory or decisional law of the United States of America, the State of California or

27  any other applicable jurisdiction.

28         MGA further objects to the interrogatory on the ground that it is

PAGE ___

EXHIBIT ___ 16

24

1 | premature because the invention, creation, conception, or reduction to practice of
2 | Bratz (and related issues) will be the subject of expert testimony at trial.  MGA
3 | objects to this interrogatory to the extent it seeks to limit the expert testimony that
4 | MGA may seek to introduce at trial.  MGA will identify its experts and make related
5 | disclosures in accordance with the Court's orders and applicable rules.  MGA further
6 | objects to the interrogatory as unduly burdensome, on the grounds that it would
7 | require MGA to identify numerous documents that have already been produced and
8 | are readily available to Mattel.

9 |       Subject to and without waiving the foregoing objections, MGA
10 | responds as follows:

11 |       There were no inventions related to Bratz after January 3, 1999 and
12 | before October 21, 2000.

13 | **INTERROGATORY NO. 30:**

14 |       State all facts that support YOUR contention, if YOU so contend, that,
15 | assuming BRYANT assigned rights in any BRATZ INVENTION to MATTEL
16 | pursuant to the INVENTIONS AGREEMENT, MGA is entitled to priority over
17 | and/or has superior rights to MATTEL as to such BRATZ INVENTION, and
18 | IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that
19 | REFER OR RELATE TO such facts.

20 | **RESPONSE TO INTERROGATORY NO. 30:**

21 |       MGA incorporates by reference its General Response and General
22 | Objections above, as though fully set forth herein and specifically incorporates
23 | General Objection No. 7 (regarding Definitions), including but not limited to its
24 | objections to the definitions of the terms BRATZ INVENTION, INVENTIONS
25 | AGREEMENT, IDENTIFY and REFER OR RELATE TO.  MGA also objects to
26 | this interrogatory to the extent it seeks information that is not subject to disclosure
27 | under any applicable privilege, doctrine or immunity, including without limitation
28 | the attorney-client privilege, the work product doctrine, the right of privacy, and all

EXHIBIT
PAGE ___
158

25

1  other privileges recognized under the constitutional, statutory or decisional law of
2  the United States of America, the State of California or any other applicable
3  jurisdiction. MGA further objects to this interrogatory to the extent it calls for a
4  legal conclusion. MGA further objects to the extent that this interrogatory seeks
5  information that is outside MGA's knowledge and is not in MGA's possession,
6  custody, or control. In particular, MGA objects to this interrogatory to the extent
7  that it requests MGA to "state *all facts . . . and* IDENTIFY all PERSONS . . . and *all*
8  DOCUMENTS" (emphasis added).
9       MGA further objects to the interrogatory on the grounds that it is vague,
10 ambiguous and threatens to mislead the trier of fact in that it is stated in the
11 hypothetical and therefore proceeds from the false premise that Bryant assigned
12 rights in the Bratz line of dolls to Mattel and that all terms of the INVENTIONS
13 AGREEMENT are binding and enforceable. *See e.g., Kendrick v. Sullivan*, 125
14 F.R.D. 1, 3 (D. D.C. 1989) (holding that Rule 33 does not permit contention
15 interrogatories directed at hypothetical scenarios). Any response to this interrogatory
16 depends on, among other factual and legal factors, specifically which BRATZ
17 INVENTION it is hypothetically assumed that Bryant assigned rights in to MGA and
18 which rights he assigned, which information is not provided in the incomplete
19 hypothetical scenario posited in this interrogatory.
20      MGA further objects to the interrogatory on the ground that it is
21 premature because the invention, creation, conception, or reduction to practice of
22 Bratz (and related issues) will be the subject of expert testimony at trial. MGA
23 objects to this interrogatory to the extent it seeks to limit the expert testimony that
24 MGA may seek to introduce at trial. MGA further objects on the grounds that the
25 interrogatory seeks information not relevant to any claim or defense in the action and
26 is not reasonably calculated to the discovery of admissible evidence because MGA
27 denies that Bryant assigned any such rights to Mattel.
28      MGA objects to this interrogatory because Mattel has propounded more

PAGE
EXHIBIT 16
759

26

1 | than 50 interrogatories.  Under Judge Larson's order of February 22, 2007,
2 | "Interrogatories are to be limited to 50 for each side for both [Case Nos. CV 04-
3 | 04049-SGL and CV 05-02727]."

4 | **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 30:**

5 | MGA incorporates by reference its General Response and General
6 | Objections above, as though fully set forth herein and specifically incorporates
7 | General Objection No. 7 (regarding Definitions), including but not limited to its
8 | objections to the definitions of the terms BRATZ INVENTION, INVENTIONS
9 | AGREEMENT, IDENTIFY and REFER OR RELATE TO.  MGA also objects to
10 | this interrogatory to the extent it seeks information that is not subject to disclosure
11 | under any applicable privilege, doctrine or immunity, including without limitation
12 | the attorney-client privilege, the work product doctrine, the right of privacy, and all
13 | other privileges recognized under the constitutional, statutory or decisional law of
14 | the United States of America, the State of California or any other applicable
15 | jurisdiction.  MGA further objects to this interrogatory to the extent it calls for a
16 | legal conclusion.  MGA further objects to the extent that this interrogatory seeks
17 | information that is outside MGA's knowledge and is not in MGA's possession,
18 | custody, or control.  In particular, MGA objects to this interrogatory to the extent
19 | that it requests MGA to "state *all facts . . . and* IDENTIFY all PERSONS . . . and *all*
20 | DOCUMENTS" (emphasis added).

21 | MGA further objects to the interrogatory on the grounds that it is vague,
22 | ambiguous and threatens to mislead the trier of fact in that it is stated in the
23 | hypothetical and therefore proceeds from the false premise that Bryant assigned
24 | rights in the Bratz line of dolls to Mattel and that all terms of the INVENTIONS
25 | AGREEMENT are binding and enforceable.  *See e.g., Kendrick v. Sullivan*, 125
26 | F.R.D. 1, 3 (D. D.C. 1989) (holding that Rule 33 does not permit contention
27 | interrogatories directed at hypothetical scenarios).  Any response to this interrogatory
28 | depends on, among other factual and legal factors, specifically which BRATZ

PAGE ____ EXHIBIT ____

27

1  INVENTION it is hypothetically assumed that Bryant assigned rights in to MGA and

2  which rights he assigned, which information is not provided in the incomplete

3  hypothetical scenario posited in this interrogatory.

4          MGA further objects to the interrogatory on the ground that it is

5  premature because the invention, creation, conception, or reduction to practice of

6  Bratz (and related issues) will be the subject of expert testimony at trial. MGA

7  objects to this interrogatory to the extent it seeks to limit the expert testimony that

8  MGA may seek to introduce at trial. MGA further objects on the grounds that the

9  interrogatory seeks information not relevant to any claim or defense in the action and

10  is not reasonably calculated to the discovery of admissible evidence because MGA

11  denies that Bryant assigned any such rights to Mattel.

12          Subject to and without waiving the foregoing objections, MGA

13  responds as follows:

14          MGA incorporates by reference its supplemental responses to

15  Interrogatory Nos. 27, 28, 29 and 31 as though fully set forth herein, and responds

16  further that, assuming Bryant assigned rights to inventions related to Bratz pursuant

17  to the "INVENTIONS AGREEMENT," (i.e. under the terms of said Agreement and

18  for inventions conceived of and/or reduced to practice during the period of Bryant's

19  employment with Mattel to which said Agreement relates), MGA would have

20  superior rights in the Bratz dolls because: (i) there were no "inventions" related to

21  Bratz covered by the "INVENTIONS AGREEMENT;" (ii) the Bratz dolls were

22  neither substantially similar to, nor a copy of, nor derivative of, Mattel's hypothetical

23  rights; and (iii) Mattel waived any rights it may have had due to laches and the

24  statute of limitations.

25  **INTERROGATORY NO. 31:**

26          State all facts that support YOUR contention, if YOU so contend, that

27  the INVENTIONS AGREEMENT is not valid and enforceable, and IDENTIFY all

28  PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR

28

PAGE  EXHIBIT

761    16

1  RELATE TO such facts.

2  **RESPONSE TO INTERROGATORY NO. 31:**

3       MGA incorporates by reference its General Response and General

4  Objections above, as though fully set forth herein and specifically incorporates

5  General Objection No. 7 (regarding Definitions), including but not limited to its

6  objections to the definitions of the terms INVENTIONS AGREEMENT, IDENTIFY

7  and REFER OR RELATE TO.  MGA also objects to this interrogatory to the extent

8  it seeks information that is not subject to disclosure under any applicable privilege,

9  doctrine or immunity, including without limitation the attorney-client privilege, the

10  work product doctrine, the right of privacy, and all other privileges recognized under

11  the constitutional, statutory or decisional law of the United States of America, the

12  State of California or any other applicable jurisdiction.  MGA also objects to this

13  interrogatory to the extent that it calls for a legal conclusion.

14       MGA objects that this interrogatory is an overbroad and unduly

15  burdensome contention interrogatory to the extent it asks for "all facts" which

16  supports the denial of a statement or allegation.  *See e.g., Safeco of Am. v. Rawstron,*

17  181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery requests seeking "all

18  facts, documents, and witnesses that support the denial of a statement or allegation of

19  fact" because the "universe of potentially responsive information is almost endless").

20  MGA further objects to the extent that this interrogatory seeks information outside of

21  MGA's personal knowledge and is not in MGA's possession, custody or control.  In

22  particular, MGA objects to this interrogatory to the extent that it requests that MGA

23  "state *all* facts . . . and IDENTIFY *all* PERSONS . . . and *all* DOCUMENTS"

24  (emphasis added).

25       MGA objects to this interrogatory because Mattel has propounded more

26  than 50 interrogatories.  Under Judge Larson's order of February 22, 2007,

27  "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-

28  SGL and CV 05-02727]."

29

PAGE  EXHIBIT  702  76

1        Subject to and without waiving the foregoing objections, MGA

2  responds as follows:  MGA is willing to meet and confer with Mattel regarding this

3  interrogatory and the obligation of Mattel to supplement its responses to MGA's First

4  Set of Interrogatories.

5  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 31:**

6        MGA incorporates by reference its General Response and General

7  Objections above, as though fully set forth herein and specifically incorporates

8  General Objection No. 7 (regarding Definitions), including but not limited to its

9  objections to the definitions of the terms INVENTIONS AGREEMENT, IDENTIFY

10  and REFER OR RELATE TO.  MGA also objects to this interrogatory to the extent

11  it seeks information that is not subject to disclosure under any applicable privilege,

12  doctrine or immunity, including without limitation the attorney-client privilege, the

13  work product doctrine, the right of privacy, and all other privileges recognized under

14  the constitutional, statutory or decisional law of the United States of America, the

15  State of California or any other applicable jurisdiction.  MGA also objects to this

16  interrogatory to the extent that it calls for a legal conclusion.

17        MGA objects that this interrogatory is an overbroad and unduly

18  burdensome contention interrogatory to the extent it asks for "all facts" which

19  supports the denial of a statement or allegation.  *See e.g., Safeco of Am. v. Rawstron,*

20  181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery requests seeking "all

21  facts, documents, and witnesses that support the denial of a statement or allegation of

22  fact" because the "universe of potentially responsive information is almost endless").

23  MGA further objects to the extent that this interrogatory seeks information outside of

24  MGA's personal knowledge and is not in MGA's possession, custody or control.  In

25  particular, MGA objects to this interrogatory to the extent that it requests that MGA

26  "state *all* facts . . . and IDENTIFY *all* PERSONS . . . and *all* DOCUMENTS"

27  (emphasis added).

28        Subject to and without waiving the foregoing objections, MGA

EXHIBIT ___
PAGE ___ 763

30

1 | responds as follows:

2 |      MGA contends that Paragraph 3-a of the "INVENTIONS

3 | AGREEMENT" is unenforceable based on the equitable doctrine of laches, and the

4 | statute of limitations, in that Mattel intentionally delayed in taking legal action

5 | against MGA or Carter Bryant for several years in the belief that Mattel would be

6 | able to drive Bratz out of the marketplace through the introduction of a copycat line

7 | of My Scene Barbie dolls. Mattel only took legal action well after MGA had

8 | invested substantial amounts of capital and creative and innovative human effort in

9 | the Bratz line of dolls and had experienced enormous success in the market place,

10 | changing the fashion doll business forever. In addition, many Mattel employees

11 | knew following the introduction of the first generation of Bratz dolls to the market

12 | that Carter Bryant was the originator of the idea that led to the first generation of

13 | Bratz dolls.

14 |      The "INVENTIONS AGREEMENT" is also invalid and unenforceable

15 | insofar as it purports to prohibit Bryant from engaging in good faith and reasonable

16 | efforts to seek professional opportunities with Mattel competitors while still

17 | employed by Mattel.

18 |      These contentions are based on the following facts and circumstances:

19 | MGA is informed and believes that it was common knowledge at Mattel that many

20 | Mattel employees employed in the Mattel design center worked on a freelance basis

21 | for third parties, including Mattel competitors. Despite knowledge of this activity,

22 | Mattel rarely, if ever, enforced any rights it may have had to prohibit such

23 | freelancing. Mattel has therefore waived any right it may have had to enforce

24 | Paragraph 3-a of the "INVENTIONS AGREEMENT" against Carter Bryant by

25 | virtue of course-of-conduct contract law principles.

26 |      The following persons have knowledge of the facts and circumstances

27 | supporting this contention: current and former members of Mattel management,

28 | current and former members of Mattel's legal department, current and former

EXHIBIT ___

PAGE ___

1   employees in Mattel's Design Center, including, Robert Eckert, Alan Kaye, Matt

2   Bousquette, Adrienne Fontanella, Richard De Anda, Ivy Ross and Margaret Leahy.

3          The following documents may be relevant to these facts:  the

4   "INVENTIONS AGREEMENT;" Mattel documents referring or relating to Mattel's

5   enforcement, or lack thereof, of the provisions of similar agreements between Mattel

6   and its employees; Mattel documents referring or relating to Mattel's knowledge or

7   investigation of suspected violations of similar agreements between Mattel and its

8   employees; Mattel's internal emails that have not been produced; documents from

9   Mattel's Zeus computer systems; documents referring or relating to Mattel's market

10  research; documents referring or relating to Mattel's public relations efforts;

11  documents  referring or relating to Mattel's advertising and advertising strategies.

12  Mattel has produced very few documents in this action in response to MGA's

13  outstanding requests.  MGA recently served additional requests for production of

14  documents.  MGA reserves the right to supplement this response and all of its other

15  responses after Mattel has completed its production.

16         This response is without prejudice to MGA's position that the

17  "INVENTIONS AGREEMENT" as a whole is invalid and unenforceable as a

18  violation of public policy.

19  **INTERROGATORY NO. 32:**

20         State all facts that support YOUR contention, if YOU so contend, that

21  MATTEL is not or would not be entitled to injunctive relief as requested in its

22  COMPLAINT and/or COUNTERCLAIMS if it is ultimately determined that

23  MATTEL owns one or more BRATZ INVENTIONS, and IDENTIFY all PERSONS

24  with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO

25  such facts.

26  **RESPONSE TO INTERROGATORY NO. 32:**

27         MGA incorporates by reference its General Response and General

28  Objections above, as though fully set forth herein and specifically incorporates

EXHIBIT
PAGE

32

1  General Objection No. 7 (regarding Definitions), including but not limited to its

2  objections to the definitions of the terms BRATZ INVENTIONS, IDENTIFY and

3  REFER OR RELATE TO, and further objects on the ground that the interrogatory is

4  overbroad, unduly burdensome, vague and ambiguous both generally and

5  specifically with respect to the terms YOUR, YOU, MATTEL.  MGA also objects to

6  this interrogatory to the extent it seeks information that is not subject to disclosure

7  under any applicable privilege, doctrine or immunity, including without limitation

8  the attorney-client privilege, the work product doctrine, the right of privacy, and all

9  other privileges recognized under the constitutional, statutory or decisional law of

10  the United States of America, the State of California or any other applicable

11  jurisdiction.  MGA further objects to the interrogatory on the ground that it is

12  premature because matters affecting Mattel's ability to obtain injunctive relief may

13  be the subject of expert testimony at trial.  MGA objects to this interrogatory to the

14  extent it seeks to limit the expert testimony that MGA may seek to introduce at trial.

15  MGA will identify its experts and make related disclosures in accordance with the

16  Court's orders and applicable rules.

17  MGA notes that the issue of injunctive relief will be decided by the

18  Court after the conclusion of all jury deliberation relevant to the issue.  MGA

19  believes accordingly that the Court's review of injunctive relief issue will not occur

20  until the conclusion of Phase 2.

21  MGA further objects on the ground that this interrogatory is an

22  overbroad and unduly burdensome contention interrogatory to the extent it asks for

23  "all facts" which supports the denial of a statement or allegation.  *See e.g., Safeco of*

24  *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

25  requests seeking "all facts, documents, and witnesses that support the denial of a

26  statement or allegation of fact" because the "universe of potentially responsive

27  information is almost endless").

28  MGA further objects to the extent that this interrogatory seeks

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES   NO. CV 04-9049 SGL (RNBx)

PAGE

EXHIBIT

166

1 | information that is outside MGA's knowledge and is not in MGA's possession,
2 | custody, or control.  In particular, MGA objects to this interrogatory to the extent
3 | that it requests that MGA "state *all* facts … and IDENTIFY *all* PERSONS…and *all*
4 | DOCUMENTS" (emphasis added).

5 | MGA further objects to this interrogatory as it asks MGA to assume
6 | facts contrary to evidence, and further asks it to base any response on an incomplete
7 | and incomprehensible hypothetical scenario.  *See, e.g., Kendrick v. Sullivan*, 125
8 | F.R.D. 1, 3 (D. D.C. 1989) (holding that Rule 33 does not permit contention
9 | interrogatories directed at hypothetical scenarios).  Whether or not Mattel is or would
10 | or would not be "entitled to injunctive relief" depends on, among other factual and
11 | legal factors, which specific "BRATZ INVENTION" Mattel is hypothetically found
12 | to own, and whether and/or to what extent it is determined that any Bratz products
13 | that have been produced and sold are derivative works of any such BRATZ
14 | INVENTIONS, which information is not provided in the incomplete hypothetical
15 | scenario posited in this interrogatory.  MGA also objects to this interrogatory on the
16 | grounds that Mattel – not MGA – bears the burden of proof to show that it is entitled
17 | to injunctive relief, it if is ultimately determined that Mattel owns one or more
18 | BRATZ INVENTIONS.

19 | MGA further objects to this interrogatory because Mattel has
20 | propounded more than 50 interrogatories.  Under Judge Larson's order of February
21 | 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-
22 | 04049-SGL and CV 05-02727]."

23 | **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 32:**

24 | MGA incorporates by reference its General Response and General
25 | Objections above, as though fully set forth herein and specifically incorporates
26 | General Objection No. 7 (regarding Definitions), including but not limited to its
27 | objections to the definitions of the terms BRATZ INVENTIONS, IDENTIFY and
28 | REFER OR RELATE TO, and further objects on the ground that the interrogatory is

PAGE  EXHIBIT ___ 1017  16

34

1 | overbroad, unduly burdensome, vague and ambiguous both generally and
2 | specifically with respect to the terms YOUR, YOU, MATTEL. MGA also objects to
3 | this interrogatory to the extent it seeks information that is not subject to disclosure
4 | under any applicable privilege, doctrine or immunity, including without limitation
5 | the attorney-client privilege, the work product doctrine, the right of privacy, and all
6 | other privileges recognized under the constitutional, statutory or decisional law of
7 | the United States of America, the State of California or any other applicable
8 | jurisdiction. MGA further objects to the interrogatory on the ground that it is
9 | premature because matters affecting Mattel's ability to obtain injunctive relief may
10 | be the subject of expert testimony at trial. MGA objects to this interrogatory to the
11 | extent it seeks to limit the expert testimony that MGA may seek to introduce at trial.
12 | MGA will identify its experts and make related disclosures in accordance with the
13 | Court's orders and applicable rules.

14 |      MGA notes that the issue of injunctive relief will be decided by the
15 | Court after the conclusion of all jury deliberation relevant to the issue. MGA
16 | believes accordingly that the Court's review of injunctive relief issue will not occur
17 | until the conclusion of Phase 2.

18 |      MGA further objects on the ground that this interrogatory is an
19 | overbroad and unduly burdensome contention interrogatory to the extent it asks for
20 | "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*
21 | *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery
22 | requests seeking "all facts, documents, and witnesses that support the denial of a
23 | statement or allegation of fact" because the "universe of potentially responsive
24 | information is almost endless").

25 |      MGA further objects to the extent that this interrogatory seeks
26 | information that is outside MGA's knowledge and is not in MGA's possession,
27 | custody, or control. In particular, MGA objects to this interrogatory to the extent
28 | that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all*

EXHIBIT \_\_\_\_

PAGE \_\_\_\_ 708

1  DOCUMENTS" (emphasis added).

2       MGA further objects to this interrogatory as it asks MGA to assume

3  facts contrary to evidence, and further asks it to base any response on an incomplete

4  and incomprehensible hypothetical scenario. *See, e.g., Kendrick v. Sullivan*, 125

5  F.R.D. 1, 3 (D. D.C. 1989) (holding that Rule 33 does not permit contention

6  interrogatories directed at hypothetical scenarios).  Whether or not Mattel is or would

7  or would not be "entitled to injunctive relief" depends on, among other factual and

8  legal factors, which specific "BRATZ INVENTION" Mattel is hypothetically found

9  to own, and whether and/or to what extent it is determined that any Bratz products

10  that have been produced and sold are derivative works of any such BRATZ

11  INVENTIONS, which information is not provided in the incomplete hypothetical

12  scenario posited in this interrogatory.  MGA also objects to this interrogatory on the

13  grounds that Mattel – not MGA – bears the burden of proof to show that it is entitled

14  to injunctive relief, it if is ultimately determined that Mattel owns one or more

15  BRATZ INVENTIONS.

16       Subject to and without waiving the foregoing objections, MGA

17  responds as follows:

18       Mattel is not entitled to injunctive relief for the following reasons:

19       (a)   Mattel is not entitled to injunctive relief in accordance with the

20  principles established by the United States Supreme Court in eBay v. MercExchange,

21  126 S. Ct. 1837 (2006).

22       (b)   The original concepts contributed by Bryant to the creation of the

23  Bratz dolls represent only one of the many factors that combined to make Bratz one

24  of the most successful fashion dolls on the market.  The contributions made by MGA

25  to the Bratz dolls far outweigh any contributions made by Bryant prior to October

26  21, 2000 in terms of the overall factors that contributed to the commercial success of

27  Bratz.

28       (c)   Mattel played no role in the creation and/or selection of the Bratz

36

PAGE _____

EXHIBIT ____

1  slogan, "The Girls with a Passion for Fashion!" or the brand name "Bratz."

2      (d)  Mattel played no role in the development of the Bratz line of
3  dolls' innovative and trend-setting packaging.

4      (e)  Mattel played no role in MGA's improvements, enhancements
5  and changes to the Bratz dolls in the months and years on and/or after October 21,
6  2000.

7      (f)  Mattel played no role in MGA's development of the fashions for
8  the Bratz dolls.

9      (g)  Mattel played no role in the development of Bratz Kidz, Bratz
10  Petz, Bratz Babyz and other successful additions to the Bratz doll family.

11      (h)  Mattel played no role in the development of the myriad of
12  accessories for the Bratz dolls.

13      (i)  Mattel played no role in the development of the successful
14  themes that have enhanced the popularity of the Bratz dolls.

15      (j)  Mattel played no role in the development of the Bratz animated
16  TV series, Bratz TV commercials, or Bratz the movie.

17      (k)  Mattel played no role in the development of the Bratz brand.

18      (l)  If in 2000 Mattel had been presented with the opportunity to
19  develop Bryant's idea for a line of fashion dolls, Mattel would not have pursued said
20  opportunity because of a perceived threat to Mattel's Barbie franchise.

21      (m)  Mattel's inequitable conduct through years of efforts to eliminate
22  competition to its lines of fashion dolls.

23      (n)  Mattel's inequitable conduct through specific acts of unfair
24  competition, as previously set forth in MGA's Responses and Supplemental
25  Responses to Mattel's First Set of Interrogatories Re: Claims of Unfair Competition
26  Nos. 5, 6, 8, 9 and 10.

27      (o)  The equitable doctrine of laches, in that Mattel intentionally
28  delayed in taking legal action against MGA or Carter Bryant for several years in the

PAGE ___ EXHIBIT ___ 11D

1 | belief that Mattel would be able to drive Bratz out of the marketplace through the

2 | introduction of a copycat line of My Scene Barbie dolls.  Mattel only took legal

3 | action well after MGA had invested substantial amounts of capital and creative and

4 | innovative human effort in the Bratz line of dolls and had experienced enormous

5 | success in the marketplace, changing the fashion doll business forever.

6 |         (p)    The statute of limitations.

7 |         The persons who have knowledge of the facts and circumstances

8 | supporting these contentions of inequitable conduct by Mattel have already been

9 | provided in MGA's supplemental responses to Interrogatory Nos. 27, 28, and 31.

10 |         To the extent that Mattel's interrogatory could be interpreted to require

11 | MGA to identify all documents that "REFER OR RELATE TO" substantially all

12 | facets of MGA's business, these documents are too numerous to identify individually

13 | without undue burden to MGA.  The following categories of documents may be

14 | relevant to these facts: Mattel's Brand Directional Outlines; analyses and assessments

15 | of Mattel's marketing strategies prepared and/or produced by Young and Rubicam

16 | Brands; Mattel's Marketing Department assessments of Mattel's advertising and

17 | branding strategies; Mattel's Creative Briefs; and publicly available documents

18 | evidencing MGA's trademarks, patents, and copyrights.

19 | **INTERROGATORY NO. 33:**

20 |         State all facts that support YOUR contention, if YOU so contend, that

21 | MATTEL is not entitled to an award of punitive or exemplary damages against

22 | YOU, and IDENTIFY all PERSONS with knowledge of such facts and all

23 | DOCUMENTS that REFER OR RELATE TO such facts.

24 | **RESPONSE TO INTERROGATORY NO. 33:**

25 |         MGA incorporates by reference its General Response and General

26 | Objections above, as though fully set forth herein and specifically incorporates

27 | General Objection No. 7 (regarding Definitions), including but not limited to its

28 | objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO,

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

EXHIBIT __
PAGE __ 771

1  and further objects on the ground that the interrogatory is overbroad, unduly

2  burdensome, vague and ambiguous both generally and specifically with respect to

3  the terms YOUR, YOU, and MATTEL.  In particular, by way of example, the term

4  YOU as defined by Mattel could be read to require MGA to state all facts supporting

5  why Mattel is not entitled to an award of punitive damages against each of the

6  responding parties in this litigation, thereby rendering the interrogatory

7  impermissibly compound.  MGA also objects to this interrogatory to the extent it

8  seeks information that is not subject to disclosure under any applicable privilege,

9  doctrine or immunity, including without limitation the attorney-client privilege, the

10  work product doctrine, the right of privacy, and all other privileges recognized under

11  the constitutional, statutory or decisional law of the United States of America, the

12  State of California or any other applicable jurisdiction.  MGA further objects to the

13  interrogatory to the extent it calls for a legal conclusion.

14          MGA further objects on the ground that this interrogatory is an

15  overbroad and unduly burdensome contention interrogatory to the extent it asks for

16  "all facts" which supports the denial of a statement or allegation.  *See e.g., Safeco of*

17  *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

18  requests seeking "all facts, documents, and witnesses that support the denial of a

19  statement or allegation of fact" because the "universe of potentially responsive

20  information is almost endless").

21          MGA further objects to the extent that this interrogatory seeks

22  information that is outside MGA's knowledge and is not in MGA's possession,

23  custody, or control.  In particular, MGA objects to this interrogatory to the extent

24  that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all*

25  DOCUMENTS" (emphasis added).

26          MGA also objects to this interrogatory on the grounds that Mattel -- not

27  MGA -- bears the burden of proof to show that it is entitled to an award of punitive or

28  exemplary damages.

PAGE ___   EXHIBIT 16   772

39

1    MGA further objects to this interrogatory because Mattel has
2 propounded more than 50 interrogatories.  Under Judge Larson's order of February
3 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-
4 04049-SGL and CV 05-02727]."

5    Subject to and without waiving the foregoing objections, MGA
6 responds as follows:  MGA is willing to meet and confer with Mattel regarding this
7 interrogatory and the obligation of Mattel to supplement its responses to MGA's First
8 Set of Interrogatories.

9 **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 33:**

10    MGA incorporates by reference its General Response and General
11 Objections above, as though fully set forth herein and specifically incorporates
12 General Objection No. 7 (regarding Definitions), including but not limited to its
13 objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO,
14 and further objects on the ground that the interrogatory is overbroad, unduly
15 burdensome, vague and ambiguous both generally and specifically with respect to
16 the terms YOUR, YOU, and MATTEL.  In particular, by way of example, the term
17 YOU as defined by Mattel could be read to require MGA to state all facts supporting
18 why Mattel is not entitled to an award of punitive damages against each of the
19 responding parties in this litigation, thereby rendering the interrogatory
20 impermissibly compound.  MGA also objects to this interrogatory to the extent it
21 seeks information that is not subject to disclosure under any applicable privilege,
22 doctrine or immunity, including without limitation the attorney-client privilege, the
23 work product doctrine, the right of privacy, and all other privileges recognized under
24 the constitutional, statutory or decisional law of the United States of America, the
25 State of California or any other applicable jurisdiction.  MGA further objects to the
26 interrogatory to the extent it calls for a legal conclusion.

27    MGA further objects on the ground that this interrogatory is an
28 overbroad and unduly burdensome contention interrogatory to the extent it asks for

EXHIBIT 76
PAGE 173

1   "all facts" which supports the denial of a statement or allegation.  *See e.g., Safeco of*

2   *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

3   requests seeking "all facts, documents, and witnesses that support the denial of a

4   statement or allegation of fact" because the "universe of potentially responsive

5   information is almost endless").

6          MGA further objects to the extent that this interrogatory seeks

7   information that is outside MGA's knowledge and is not in MGA's possession,

8   custody, or control.  In particular, MGA objects to this interrogatory to the extent

9   that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all*

10  DOCUMENTS" (emphasis added).

11         MGA also objects to this interrogatory on the grounds that Mattel – not

12  MGA – bears the burden of proof to show that it is entitled to an award of punitive or

13  exemplary damages.

14         Subject to and without waiving the foregoing objections, MGA

15  responds as follows:

16         Mattel is not entitled to an award of punitive or exemplary damages

17  against MGA because:  (i) Mattel does not own any rights in the Bratz dolls; (ii)

18  MGA has not violated or infringed any rights of Mattel with respect to the Bratz

19  dolls; (iii) Mattel has not shown that MGA acted in bad faith; and (iv) Mattel has not

20  presented any evidence to support the requirements for such an award against MGA.

21  **INTERROGATORY NO. 34:**

22         State all facts that support YOUR contention, if YOU so contend, that

23  YOU did not intentionally interfere with the INVENTIONS AGREEMENT when

24  BRYANT purported to TRANSFER and MGA purported to ACQUIRE rights to

25  BRATZ, and IDENTIFY all PERSONS with knowledge of such facts and all

26  DOCUMENTS that REFER OR RELATE TO such facts.

27  **RESPONSE TO INTERROGATORY NO. 34:**

28         MGA incorporates by reference its General Response and General

EXHIBIT

PAGE 174

1 │ Objections above, as though fully set forth herein and specifically incorporates
2 │ General Objection No. 7 (regarding Definitions), including but not limited to its
3 │ objections to the definitions of the terms INVENTIONS AGREEMENT, IDENTIFY
4 │ and REFER OR RELATE TO, and further objects on the ground that the
5 │ interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally
6 │ and specifically with respect to the terms YOUR, YOU, BRYANT, MGA,
7 │ TRANSFER and ACQUIRE.  In particular, by way of example, the term YOU as
8 │ defined by Mattel could be read to require MGA to state all facts supporting why
9 │ each of the responding parties did not "intentionally interfere with the
10 │ INVENTIONS AGREEMENT," thereby rendering the interrogatory impermissibly
11 │ compound.  MGA also objects to this interrogatory to the extent it seeks information
12 │ that is not subject to disclosure under any applicable privilege, doctrine or immunity,
13 │ including without limitation the attorney-client privilege, the work product doctrine,
14 │ the right of privacy, and all other privileges recognized under the constitutional,
15 │ statutory or decisional law of the United States of America, the State of California or
16 │ any other applicable jurisdiction.  MGA further objects to the interrogatory to the
17 │ extent it calls for a legal conclusion.

18 │     MGA further objects on the ground that this interrogatory is an
19 │ overbroad and unduly burdensome contention interrogatory to the extent it asks for
20 │ "all facts" which supports the denial of a statement or allegation.  *See e.g., Safeco of*
21 │ *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery
22 │ requests seeking "all facts, documents, and witnesses that support the denial of a
23 │ statement or allegation of fact" because the "universe of potentially responsive
24 │ information is almost endless").

25 │     MGA further objects to the extent that this interrogatory seeks
26 │ information that is outside MGA's knowledge and is not in MGA's possession,
27 │ custody, or control.  In particular, MGA objects to this interrogatory to the extent
28 │ that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all*

PAGE ____   EXHIBIT ____ 16

42

1  DOCUMENTS" (emphasis added).

2      MGA further objects to this interrogatory because Mattel has

3  propounded more than 50 interrogatories.  Under Judge Larson's order of February

4  22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

5  04049-SGL and CV 05-02727]."

6  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 34:**

7      MGA incorporates by reference its General Response and General

8  Objections above, as though fully set forth herein and specifically incorporates

9  General Objection No. 7 (regarding Definitions), including but not limited to its

10  objections to the definitions of the terms INVENTIONS AGREEMENT, IDENTIFY

11  and REFER OR RELATE TO, and further objects on the ground that the

12  interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally

13  and specifically with respect to the terms YOUR, YOU, BRYANT, MGA,

14  TRANSFER and ACQUIRE.  In particular, by way of example, the term YOU as

15  defined by Mattel could be read to require MGA to state all facts supporting why

16  each of the responding parties did not "intentionally interfere with the

17  INVENTIONS AGREEMENT," thereby rendering the interrogatory impermissibly

18  compound.  MGA also objects to this interrogatory to the extent it seeks information

19  that is not subject to disclosure under any applicable privilege, doctrine or immunity,

20  including without limitation the attorney-client privilege, the work product doctrine,

21  the right of privacy, and all other privileges recognized under the constitutional,

22  statutory or decisional law of the United States of America, the State of California or

23  any other applicable jurisdiction.  MGA further objects to the interrogatory to the

24  extent it calls for a legal conclusion.

25      MGA further objects on the ground that this interrogatory is an

26  overbroad and unduly burdensome contention interrogatory to the extent it asks for

27  "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*

28  *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

43

EXHIBIT ___

PAGE ___ 116

1 requests seeking "all facts, documents, and witnesses that support the denial of a

2 statement or allegation of fact" because the "universe of potentially responsive

3 information is almost endless").

4         MGA further objects to the extent that this interrogatory seeks

5 information that is outside MGA's knowledge and is not in MGA's possession,

6 custody, or control.  In particular, MGA objects to this interrogatory to the extent

7 that it requests that MGA "state *all* facts … and IDENTIFY *all* PERSONS…and *all*

8 DOCUMENTS" (emphasis added).

9         Subject to and without waiving the foregoing objections, MGA

10 responds as follows:

11         MGA incorporates by reference its supplemental responses to

12 Interrogatory No. 33 as though fully set forth herein, and further responds that MGA

13 did not know, despite fair inquiry, that Carter Bryant had entered into the

14 "INVENTIONS AGREEMENT."  MGA responds further that MGA did not

15 intentionally induce Bryant to breach any agreement (known or unknown) with

16 Mattel, but instead it was Bryant who, through an intermediary, approached MGA,

17 and pitched the Bratz concept to MGA.  In addition, MGA does not believe that

18 Bryant has breached the "INVENTIONS AGREEMENT" or any other agreement

19 with Mattel, or breached any duties or obligations to Mattel.

20         The persons who have knowledge of the facts and circumstances

21 supporting this contention that MGA did not intentionally interfere with the

22 INVENTIONS AGREEMENT when Bryant transferred his rights in Bratz to MGA

23 have already been identified in the supplemental responses to Interrogatory Nos. 27,

24 28, and 31.

25         Documents responsive to this interrogatory are protected by the

26 attorney-client privileged or work product doctrine.  MGA previously offered to

27 stipulate to a limited waiver of these privileges and protections to permit inspection

28 of such documents, but Mattel refused.  Subject to these objections, MGA responds

EXHIBIT 16 PAGE 777

44

1  that the following documents may be relevant to these facts: all documents showing

2  Bryant's work on his "pitch" materials; documents evidencing Bryant's desire to be a

3  freelance artist; documents evidencing Bryant's interactions with MGA prior to the

4  execution of the October 4, 2000 agreement between Bryant and MGA; and the

5  October 4, 2000 agreement between Bryant and MGA.

6  **INTERROGATORY NO. 35:**

7     State all facts that support YOUR contention, if YOU so contend, that

8  YOU did not aid or abet any breach of fiduciary duty or duty of loyalty owed by

9  BRYANT to MATTEL when BRYANT performed work or services with or for

10  MGA while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS

11  with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO

12  such facts.

13  **RESPONSE TO INTERROGATORY NO. 35:**

14     MGA incorporates by reference its General Response and General

15  Objections above, as though fully set forth herein and specifically incorporates

16  General Objection No. 7 (regarding Definitions), including but not limited to its

17  objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO,

18  and further objects on the ground that the interrogatory is overbroad, unduly

19  burdensome, vague and ambiguous both generally and specifically with respect to

20  the terms YOU, BRYANT, MGA and MATTEL.  In particular, by way of example,

21  the term YOU as defined by Mattel could be read to require MGA to state all facts

22  supporting why each of the responding parties "did not aid or abet any breach of

23  fiduciary duty or duty of loyalty owed by BRYANT to MATTEL," thereby

24  rendering the interrogatory impermissibly compound.  MGA also objects to this

25  interrogatory to the extent it seeks information that is not subject to disclosure under

26  any applicable privilege, doctrine or immunity, including without limitation the

27  attorney-client privilege, the work product doctrine, the right of privacy, and all other

28  privileges recognized under the constitutional, statutory or decisional law of the

45

EXHIBIT 16
PAGE 718

1 | United States of America, the State of California or any other applicable jurisdiction.
2 | MGA further objects to the interrogatory to the extent it calls for a legal conclusion.
3 |        MGA further objects on the ground that this interrogatory is an
4 | overbroad and unduly burdensome contention interrogatory to the extent it asks for
5 | "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*
6 | *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery
7 | requests seeking "all facts, documents, and witnesses that support the denial of a
8 | statement or allegation of fact" because the "universe of potentially responsive
9 | information is almost endless").
10 |        MGA further objects to the extent that this interrogatory seeks
11 | information that is outside MGA's knowledge and is not in MGA's possession,
12 | custody, or control.  In particular, MGA objects to this interrogatory to the extent
13 | that it requests that MGA "state *all* facts … and IDENTIFY *all* PERSONS…and *all*
14 | DOCUMENTS" (emphasis added).
15 |        MGA further objects to this interrogatory because Mattel has
16 | propounded more than 50 interrogatories.  Under Judge Larson's order of February
17 | 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-
18 | 04049-SGL and CV 05-02727]."
19 | **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 35:**
20 |        MGA incorporates by reference its General Response and General
21 | Objections above, as though fully set forth herein and specifically incorporates
22 | General Objection No. 7 (regarding Definitions), including but not limited to its
23 | objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO,
24 | and further objects on the ground that the interrogatory is overbroad, unduly
25 | burdensome, vague and ambiguous both generally and specifically with respect to
26 | the terms YOU, BRYANT, MGA and MATTEL.  In particular, by way of example,
27 | the term YOU as defined by Mattel could be read to require MGA to state all facts
28 | supporting why each of the responding parties "did not aid or abet any breach of

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

PAGE _____ 177

1  fiduciary duty or duty of loyalty owed by BRYANT to MATTEL," thereby

2  rendering the interrogatory impermissibly compound.  MGA also objects to this

3  interrogatory to the extent it seeks information that is not subject to disclosure under

4  any applicable privilege, doctrine or immunity, including without limitation the

5  attorney-client privilege, the work product doctrine, the right of privacy, and all other

6  privileges recognized under the constitutional, statutory or decisional law of the

7  United States of America, the State of California or any other applicable jurisdiction.

8  MGA further objects to the interrogatory to the extent it calls for a legal conclusion.

9         MGA further objects on the ground that this interrogatory is an

10  overbroad and unduly burdensome contention interrogatory to the extent it asks for

11  "all facts" which supports the denial of a statement or allegation.  *See e.g., Safeco of*

12  *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

13  requests seeking "all facts, documents, and witnesses that support the denial of a

14  statement or allegation of fact" because the "universe of potentially responsive

15  information is almost endless").

16         MGA further objects to the extent that this interrogatory seeks

17  information that is outside MGA's knowledge and is not in MGA's possession,

18  custody, or control.  In particular, MGA objects to this interrogatory to the extent

19  that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all*

20  DOCUMENTS" (emphasis added).

21         Subject to and without waiving the foregoing objections, MGA

22  responds as follows:

23         MGA incorporates by reference its supplemental responses to

24  Interrogatory Nos. 34 and 38 as though fully set forth herein.  In addition, MGA

25  denies that Bryant was a fiduciary with respect to his efforts to become a freelance

26  artist.

27  **INTERROGATORY NO. 36:**

28         State all facts that support YOUR contention, if YOU so contend, that

EXHIBIT 7⁄6

PAGE 780

47

1  YOU acted with an innocent state of mind or reasonably believed that MATTEL did

2  not own any rights in any BRATZ INVENTION when BRYANT purported to

3  TRANSFER and MGA purported to ACQUIRE rights to BRATZ, and IDENTIFY

4  all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR

5  RELATE TO such facts.

6  **RESPONSE TO INTERROGATORY NO. 36:**

7          MGA incorporates by reference its General Response and General

8  Objections above, as though fully set forth herein and specifically incorporates

9  General Objection No. 7 (regarding Definitions), including but not limited to its

10  objections to the definitions of BRATZ INVENTION, IDENTIFY and REFER OR

11  RELATE TO, and further objects on the grounds that the interrogatory is overbroad,

12  unduly burdensome, vague and ambiguous both generally and specifically with

13  respect to the terms YOU, BRYANT, MGA, TRANSFER, MATTEL and

14  ACQUIRE.  In particular, by way of example, the term YOU as defined by Mattel

15  could be read to require MGA to state all facts supporting why each of the

16  responding parties "acted with an innocent state of mind," thereby rendering the

17  interrogatory impermissibly compound.  MGA also objects to this interrogatory to

18  the extent it seeks information that is not subject to disclosure under any applicable

19  privilege, doctrine or immunity, including without limitation the attorney-client

20  privilege, the work product doctrine, the right of privacy, and all other privileges

21  recognized under the constitutional, statutory or decisional law of the United States

22  of America, the State of California or any other applicable jurisdiction.

23          Subject to and without waiving the foregoing objections, MGA

24  responds as follows:  MGA is willing to meet and confer with Mattel regarding this

25  interrogatory and the obligation of Mattel to supplement its responses to MGA's First

26  Set of Interrogatories.

27  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 36:**

28          MGA incorporates by reference its General Response and General

48

EXHIBIT  16

PAGE  181

1 | Objections above, as though fully set forth herein and specifically incorporates
2 | General Objection No. 7 (regarding Definitions), including but not limited to its
3 | objections to the definitions of BRATZ INVENTION, IDENTIFY and REFER OR
4 | RELATE TO, and further objects on the grounds that the interrogatory is overbroad,
5 | unduly burdensome, vague and ambiguous both generally and specifically with
6 | respect to the terms YOU, BRYANT, MGA, TRANSFER, MATTEL and
7 | ACQUIRE. In particular, by way of example, the term YOU as defined by Mattel
8 | could be read to require MGA to state all facts supporting why each of the
9 | responding parties "acted with an innocent state of mind," thereby rendering the
10 | interrogatory impermissibly compound. MGA also objects to this interrogatory to
11 | the extent it seeks information that is not subject to disclosure under any applicable
12 | privilege, doctrine or immunity, including without limitation the attorney-client
13 | privilege, the work product doctrine, the right of privacy, and all other privileges
14 | recognized under the constitutional, statutory or decisional law of the United States
15 | of America, the State of California or any other applicable jurisdiction.

16 |        Subject to and without waiving the foregoing objections, MGA
17 | responds as follows:

18 |        Mattel cannot show that MGA acted in bad faith when Bryant
19 | transferred and MGA acquired all rights to the Bratz concept on October 4, 2000,
20 | because of the following facts of which MGA was aware in the September to
21 | October 2000 time period: (i) Bryant had an idea in August or September of 1998,
22 | when he was not employed by Mattel, for a series of characters that he named Bratz
23 | that could be used to create, among other things, a line of fashion dolls; (ii) at the
24 | same time, Bryant sketched a series of drawings to illustrate his conception; (iii)
25 | Bryant was the rightful owner of the concepts reflected in his drawings and other
26 | representations of his ideas and of his drawings; (iv) Bryant and his counsel
27 | represented and warranted to MGA that he was the exclusive originator and owner of
28 | his Bratz ideas and drawing and that no third party had any interest or rights in the

PAGE _____ EXHIBIT _____ 762

1 drawings or the ideas reflected in the drawings; (v) Bryant came recommended by
2 Veronica Marlow, a trusted freelancer who had worked for MGA in the past; (vi)
3 immediately upon entering into a written freelance agreement with Bryant, Isaac
4 Larian, the CEO of MGA, instructed Bryant to immediately resign from Mattel; (vii)
5 MGA employees and freelance artists had made substantial original and creative
6 contributions to the creation of what ultimately was marketed as Bratz dolls; and
7 (viii) assuming some part of the Bratz concept was a feature that could have been
8 protected by a design patent, any such invention was not "reduced to practice" prior
9 to October 20, 2000.

10      The following persons have knowledge of these facts:  Carter Bryant;
11 Bryant's mother, Janet Bryant; Bryant's father, Thomas Bryant; Jeanne Galvano;
12 Richard Irmen; Elise Cloonan; Ramona Prince; Margaret Leahy; Veronica Marlow;
13 Anna Rhee; Mercedeh Ward; Sarah Halpern; Paula Treantafelles (Garcia); Steve
14 Tarmichael; Rebecca Harris; Cecilia Kwok; David Dees; Jesse Ramirez; Samuel
15 Wong; Edmond Lee; Steven Lee; Aileen Storer; Eric Yip; Leon Djiguerian; Rachel
16 Harris; Maggie Siu; Ben Ton; Sam Wong; Ray Wong.

17      The following documents may be relevant to these facts:  MGA's
18 agreement with Carter Bryant; and documents that refer to or evidence the work
19 performed by MGA employees and freelancers toward the reduction to practice of
20 the Bratz line of dolls.  Documents responsive to this interrogatory are protected by
21 the attorney-client privilege and work product doctrine.  MGA previously offered to
22 stipulate to a limited waiver of these privileges and protections to permit inspection
23 of such documents, but Mattel refused.

24 **INTERROGATORY NO. 37:**

25      State all facts that support YOUR contention, if YOU so contend, that
26 BRYANT did not breach the INVENTIONS AGREEMENT when BRYANT
27 purported to TRANSFER rights to BRATZ to MGA, and IDENTIFY all PERSONS
28 with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO

EXHIBIT ___
PAGE ___ 783

50

1 | such facts.

2 | **RESPONSE TO INTERROGATORY NO. 37:**

3 | MGA incorporates by reference its General Response and General

4 | Objections above, as though fully set forth herein and specifically incorporates

5 | General Objection No. 7 (regarding Definitions), including but not limited to its

6 | objections to the definitions of the terms INVENTIONS AGREEMENT, BRATZ

7 | and REFER OR RELATE TO, and further objects on the ground that the

8 | interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally

9 | and specifically with respect to the terms YOUR, YOU, BRYANT, MGA and

10 | TRANSFER. MGA also objects to this interrogatory to the extent it seeks

11 | information that is not subject to disclosure under any applicable privilege, doctrine

12 | or immunity, including without limitation the attorney-client privilege, the work

13 | product doctrine, the right of privacy, and all other privileges recognized under the

14 | constitutional, statutory or decisional law of the United States of America, the State

15 | of California or any other applicable jurisdiction. MGA further objects to the

16 | interrogatory to the extent it calls for a legal conclusion. MGA further objects to the

17 | interrogatory on the ground that Mattel – not MGA – bears the burden of proof to

18 | show that Bryant breached the INVENTIONS AGREEMENT.

19 | MGA further objects on the ground that this interrogatory is an

20 | overbroad and unduly burdensome contention interrogatory to the extent it asks for

21 | "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*

22 | *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

23 | requests seeking "all facts, documents, and witnesses that support the denial of a

24 | statement or allegation of fact" because the "universe of potentially responsive

25 | information is almost endless"). MGA further objects on the ground that it is an

26 | abuse of the discovery process to effectively ask a Party to prove his, her or its entire

27 | case in response to a single interrogatory. *See, e.g., Lawrence v. First Kansas Bank*

28 | *& Trust, Co.*, 169 F.R.D. 657, 663-64 (D. Kan. 1996); *Grynberg v. Total S.A.*, No.

EXHIBIT 16

PAGE 184

1   03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) (ruling

2   that interrogatory that asks defendant to "plead and prove its entire case, and to

3   marshal all evidence, in response to one interrogatory" is overbroad and "constitutes

4   an abuse of the discovery process").

5          MGA further objects to the extent that this interrogatory seeks

6   information that is outside MGA's knowledge and is not in MGA's possession,

7   custody, or control.  In particular, MGA objects to this interrogatory to the extent

8   that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all*

9   DOCUMENTS" (emphasis added).  In responding to this interrogatory, MGA

10  undertakes only to make a good faith, reasonable effort to summarize facts currently

11  known to it, and reserves the right to supplement its response.

12         MGA further objects to this interrogatory because Mattel has

13  propounded more than 50 interrogatories.  Under Judge Larson's order of February

14  22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

15  04049-SGL and CV 05-02727]."

16         Subject to and without waiving the foregoing objections, MGA

17  responds as follows:  MGA is willing to meet and confer with Mattel regarding this

18  interrogatory and the obligation of Mattel to supplement its responses to MGA's First

19  Set of Interrogatories.

20  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 37:**

21         MGA incorporates by reference its General Response and General

22  Objections above, as though fully set forth herein and specifically incorporates

23  General Objection No. 7 (regarding Definitions), including but not limited to its

24  objections to the definitions of the terms INVENTIONS AGREEMENT, BRATZ

25  and REFER OR RELATE TO, and further objects on the ground that the

26  interrogatory is overbroad, unduly burdensome, vague and ambiguous both generally

27  and specifically with respect to the terms YOUR, YOU, BRYANT, MGA and

28  TRANSFER.  MGA also objects to this interrogatory to the extent it seeks

PAGE

EXHIBIT ____

785

52

1  information that is not subject to disclosure under any applicable privilege, doctrine
2  or immunity, including without limitation the attorney-client privilege, the work
3  product doctrine, the right of privacy, and all other privileges recognized under the
4  constitutional, statutory or decisional law of the United States of America, the State
5  of California or any other applicable jurisdiction.  MGA further objects to the
6  interrogatory to the extent it calls for a legal conclusion.  MGA further objects to the
7  interrogatory on the ground that Mattel – not MGA – bears the burden of proof to
8  show that Bryant breached the INVENTIONS AGREEMENT.

9        MGA further objects on the ground that this interrogatory is an
10  overbroad and unduly burdensome contention interrogatory to the extent it asks for
11  "all facts" which supports the denial of a statement or allegation.  *See e.g., Safeco of*
12  *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery
13  requests seeking "all facts, documents, and witnesses that support the denial of a
14  statement or allegation of fact" because the "universe of potentially responsive
15  information is almost endless").  MGA further objects on the ground that it is an
16  abuse of the discovery process to effectively ask a Party to prove his, her or its entire
17  case in response to a single interrogatory.  *See, e.g., Lawrence v. First Kansas Bank*
18  *& Trust, Co.*, 169 F.R.D. 657, 663-64 (D. Kan. 1996); *Grynberg v. Total S.A.*, No.
19  03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) (ruling
20  that interrogatory that asks defendant to "plead and prove its entire case, and to
21  marshal all evidence, in response to one interrogatory" is overbroad and "constitutes
22  an abuse of the discovery process").

23        MGA further objects to the extent that this interrogatory seeks
24  information that is outside MGA's knowledge and is not in MGA's possession,
25  custody, or control.  In particular, MGA objects to this interrogatory to the extent
26  that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all*
27  DOCUMENTS" (emphasis added).  In responding to this interrogatory, MGA
28

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

EXHIBIT __ /(o
PAGE __ 186

1  undertakes only to make a good faith, reasonable effort to summarize facts currently
2  known to it, and reserves the right to supplement its response.

3        Subject to and without waiving the foregoing objections, MGA
4  responds as follows:

5        In August or September of 1998, Carter Bryant, inspired by images he
6  was exposed to, including in the August 1998 issue of *Seventeen Magazine*, the
7  appearance of teenagers as well as other images in the public domain, had an idea for
8  a line of fashion dolls that he named Bratz.  At the same time, Bryant sketched a
9  series of drawings to illustrate his conception.  To the extent that some aspect of
10  Bryant's idea would have been protectible under patent law, there was neither a
11  conception nor reduction to practice during the period of Bryant's unemployment
12  with Mattel.  In addition, Bryant's idea for a unique approach to fashion dolls was
13  not covered by the "INVENTIONS AGREEMENT."

14  **INTERROGATORY NO. 38:**

15        State all facts that support YOUR contention, if YOU so contend, that
16  BRYANT did not breach BRYANT's duty of loyalty or fiduciary duties to MATTEL
17  when BRYANT performed work or services with or for MGA while BRYANT was
18  employed by MATTEL, and IDENTIFY all PERSONS with knowledge of such facts
19  and all DOCUMENTS that REFER OR RELATE TO such facts.

20  **RESPONSE TO INTERROGATORY NO. 38:**

21        MGA incorporates by reference its General Response and General
22  Objections above, as though fully set forth herein and specifically incorporates
23  General Objection No. 7 (regarding Definitions), including but not limited to its
24  objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO,
25  and further objects on the ground that the interrogatory is overbroad, unduly
26  burdensome, vague and ambiguous both generally and specifically with respect to
27  the terms YOUR, YOU, BRYANT, MATTEL, MGA and BRATZ.  MGA also
28  objects to this interrogatory to the extent it seeks information that is not subject to

EXHIBIT 76

PAGE 787

54

1  disclosure under any applicable privilege, doctrine or immunity, including without

2  limitation the attorney-client privilege, the work product doctrine, the right of

3  privacy, and all other privileges recognized under the constitutional, statutory or

4  decisional law of the United States of America, the State of California or any other

5  applicable jurisdiction.  MGA further objects to the interrogatory to the extent it calls

6  for a legal conclusion.  MGA further objects to the interrogatory on the ground that

7  Mattel – not MGA – bears the burden of proof to show that Bryant breached any

8  duties, fiduciary or otherwise, to Mattel.

9          MGA further objects on the ground that this interrogatory is an

10 overbroad and unduly burdensome contention interrogatory to the extent it asks for

11 "all facts" which supports the denial of a statement or allegation.  *See e.g., Safeco of*

12 *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

13 requests seeking "all facts, documents, and witnesses that support the denial of a

14 statement or allegation of fact" because the "universe of potentially responsive

15 information is almost endless").  MGA further objects on the ground that it is an

16 abuse of the discovery process to effectively ask a Party to prove his, her or its entire

17 case in response to a single interrogatory.  *See, e.g., Lawrence v. First Kansas Bank*

18 *& Trust, Co.*, 169 F.R.D. 657, 663-64 (D. Kan. 1996); *Grynberg v. Total S.A.*, No.

19 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) (ruling

20 that interrogatory that asks defendant to "plead and prove its entire case, and to

21 marshal all evidence, in response to one interrogatory" is overbroad and "constitutes

22 an abuse of the discovery process").

23          MGA further objects to the extent that this interrogatory seeks

24 information that is outside MGA's knowledge and is not in MGA's possession,

25 custody, or control.  In particular, MGA objects to this interrogatory to the extent

26 that it requests that MGA "state all facts … and IDENTIFY all PERSONS…and all

27 DOCUMENTS" (emphasis added).  In responding to this interrogatory, MGA

28 undertakes only to make a good faith, reasonable effort to summarize facts currently

55

PAGE _____  EXHIBIT _____  __

1 known to it, and reserves the right to supplement its response.

2        MGA further objects to this interrogatory because Mattel has

3 propounded more than 50 interrogatories.  Under Judge Larson's order of February

4 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

5 04049-SGL and CV 05-02727]."

6        Subject to and without waiving the foregoing objections, MGA

7 responds as follows:  MGA is willing to meet and confer with Mattel regarding this

8 interrogatory and the obligation of Mattel to supplement its responses to MGA's First

9 Set of Interrogatories.

10 **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 38:**

11        MGA incorporates by reference its General Response and General

12 Objections above, as though fully set forth herein and specifically incorporates

13 General Objection No. 7 (regarding Definitions), including but not limited to its

14 objections to the definitions of the terms IDENTIFY and REFER OR RELATE TO,

15 and further objects on the ground that the interrogatory is overbroad, unduly

16 burdensome, vague and ambiguous both generally and specifically with respect to

17 the terms YOUR, YOU, BRYANT, MATTEL, MGA and BRATZ.  MGA also

18 objects to this interrogatory to the extent it seeks information that is not subject to

19 disclosure under any applicable privilege, doctrine or immunity, including without

20 limitation the attorney-client privilege, the work product doctrine, the right of

21 privacy, and all other privileges recognized under the constitutional, statutory or

22 decisional law of the United States of America, the State of California or any other

23 applicable jurisdiction.  MGA further objects to the interrogatory to the extent it calls

24 for a legal conclusion.  MGA further objects to the interrogatory on the ground that

25 Mattel – not MGA – bears the burden of proof to show that Bryant breached any

26 duties, fiduciary or otherwise, to Mattel.

27        MGA further objects on the ground that this interrogatory is an

28 overbroad and unduly burdensome contention interrogatory to the extent it asks for

PAGE ___ EXHIBIT ___
188 76

1   "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*
2   *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery
3   requests seeking "all facts, documents, and witnesses that support the denial of a
4   statement or allegation of fact" because the "universe of potentially responsive
5   information is almost endless").  MGA further objects on the ground that it is an
6   abuse of the discovery process to effectively ask a Party to prove his, her or its entire
7   case in response to a single interrogatory. *See, e.g., Lawrence v. First Kansas Bank*
8   *& Trust, Co.*, 169 F.R.D. 657, 663-64 (D. Kan. 1996); *Grynberg v. Total S.A.*, No.
9   03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) (ruling
10  that interrogatory that asks defendant to "plead and prove its entire case, and to
11  marshal all evidence, in response to one interrogatory" is overbroad and "constitutes
12  an abuse of the discovery process").

13       MGA further objects to the extent that this interrogatory seeks
14  information that is outside MGA's knowledge and is not in MGA's possession,
15  custody, or control.  In particular, MGA objects to this interrogatory to the extent
16  that it requests that MGA "state all facts ... and IDENTIFY all PERSONS...and all
17  DOCUMENTS" (emphasis added).  In responding to this interrogatory, MGA
18  undertakes only to make a good faith, reasonable effort to summarize facts currently
19  known to it, and reserves the right to supplement its response.

20       Subject to and without waiving the foregoing objections, MGA
21  responds as follows:

22       Bryant was not a fiduciary of Mattel.  Bryant was not an officer or
23  director of Mattel.  Mattel has not proven any facts that would support its claim that
24  Bryant was a fiduciary of Mattel.  MGA responds further that Bryant did not perform
25  any services for MGA prior to signing his agreement with MGA on October 4, 2000.
26  Bryant's activities with respect to the Bratz concept prior to October 4, 2000, were
27  directed to securing a commercially beneficial relationship with MGA, i.e., Bryant
28  "pitched" the concept of Bratz to MGA.  In addition, Bryant's employment with

57

EXHIBIT 16
189

1  Mattel was at will, and Bryant had the right to leave Mattel to join a competitor, or to

2  work for a competitor, at any time.  Any work that Bryant performed relating to his

3  Bratz ideas during the time period that he was still employed by Mattel constituted

4  lawful steps by Bryant to prepare to embark upon a new career.  Isaac Larian

5  instructed Bryant to leave Mattel immediately upon executing his contract with

6  MGA.  During the period from October 4, 2000, through October 20, 2000, Bryant

7  contributed very little to the development of what later became the first generation of

8  Bratz dolls.

9          The following persons have knowledge of the facts and circumstances

10  supporting this contention:  Isaac Larian, Carter Bryant, Victoria O'Connor, Margaret

11  Leahy, Aileen Storer, Veronica Marlow, Paula Garcia, and Anne Wang.

12  **INTERROGATORY NO. 39:**

13          IDENTIFY each and every bank or financial institution account that

14  REFERS OR RELATES TO YOU, including accounts in YOUR name or for YOUR

15  benefit, since January 1, 1999.

16  **RESPONSE TO INTERROGATORY NO. 39:**

17          MGA incorporates by reference its General Response and General

18  Objections above, as though fully set forth herein and specifically incorporates

19  General Objection No. 7 (regarding Definitions), including but not limited to its

20  objections to the definitions of the terms IDENTIFY and REFERS OR RELATES

21  TO, and further objects on the ground that the interrogatory is overbroad, unduly

22  burdensome, vague and ambiguous both generally and specifically with respect to

23  the terms YOU and YOUR.  MGA also objects to this interrogatory to the extent it

24  seeks information that is not subject to disclosure under any applicable privilege,

25  doctrine or immunity, including without limitation the attorney-client privilege, the

26  work product doctrine, the right of privacy, and all other privileges recognized under

27  the constitutional, statutory or decisional law of the United States of America, the

28  State of California or any other applicable jurisdiction.  MGA further objects to this

58

1  interrogatory as premature asset discovery under Federal Rule of Civil Procedure
2  69(a), as there is presently no judgment for the payment of money pending against
3  MGA.  MGA further objects on the grounds that it is overbroad, not relevant to the
4  claims or defenses of any party to the action and not reasonably calculated to lead to
5  the discovery of admissible evidence.

6  **INTERROGATORY NO. 40:**

7         IDENTIFY each and every STORAGE DEVICE that YOU have used
8  for any purpose which contains or contained DIGITAL INFORMATION that
9  REFERS OR RELATES TO BRATZ prior to January 1, 2002.

10  **RESPONSE TO INTERROGATORY NO. 40:**

11        MGA incorporates by reference its General Response and General
12  Objections above, as though fully set forth herein and specifically incorporates
13  General Objection No. 7 (regarding Definitions), including but not limited to its
14  objections to the definitions of the terms IDENTIFY, REFERS OR RELATES TO
15  and BRATZ, and further objects to this interrogatory on the grounds that it is
16  overbroad, unduly burdensome, vague and ambiguous both generally and
17  specifically with respect to the terms YOU, STORAGE DEVICE and DIGITAL
18  INFORMATION.  MGA further objects to this interrogatory as compound because
19  it contains discrete subparts that require separate, distinct and multiple responses.
20  Specifically, MGA objects to the terms IDENTIFY and STORAGE DEVICE as
21  overbroad and unduly burdensome, as Mattel's definition of this term calls for
22  responses to multiple discrete subparts.  For example, Mattel's definition of the term
23  IDENTIFY in the context of this interrogatory would require MGA to provide
24  numerous discrete facts for each STORAGE DEVICE, including:

25         (a)    the individual(s) that use or have used the STORAGE DEVICE;

26         (b)    the current location of the STORAGE DEVICE;

27         (c)    the IDENTITY of the PERSON who possesses the STORAGE

28  DEVICE or if it no longer exists, the date on which it was destroyed or disposed of;

1        (d)    the type of STORAGE DEVICE;

2        (e)    whether the STORAGE DEVICE has ever been copied or imaged

3    (and if so, the current location of each copy or image and the IDENTITY of the

4    PERSONS who possess such copies or image);

5        (f)    the date(s) on which such copies or images were made;

6        (g)    the manufacturer name, brand, model name, model number, and

7    serial number of the STORAGE DEVICE;

8        (h)    the technical specifications and capacities of such STORAGE

9    DEVICE.

10       In addition, Mattel's definition of YOU could be read to require MGA to

11   provide the foregoing information about STORAGE DEVICES belonging to each of

12   the responding parties.

13       MGA also objects to this interrogatory to the extent it seeks information

14   that is not subject to disclosure under any applicable privilege, doctrine or immunity,

15   including without limitation the attorney-client privilege, the work product doctrine,

16   the right of privacy, and all other privileges recognized under the constitutional,

17   statutory or decisional law of the United States of America, the State of California or

18   any other applicable jurisdiction.  MGA further objects to the interrogatory on the

19   ground that it is premature because the invention, creation, conception, or reduction

20   to practice of Bratz (and related issues) will be the subject of expert testimony at

21   trial.  MGA objects to this interrogatory to the extent it seeks to limit the expert

22   testimony that MGA may seek to introduce at trial.  MGA will identify its experts

23   and make related disclosures in accordance with the Court's orders and applicable

24   rules.  MGA further objects to the extent that this interrogatory seeks information

25   that is outside of MGA's knowledge and is not in MGA's possession, custody or

26   control.

27       MGA further objects to this interrogatory because Mattel has

28   propounded more than 50 interrogatories.  Under Judge Larson's order of February

EXHIBIT ___

PAGE ___

1   22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

2   04049-SGL and CV 05-02727]."

3         Subject to and without waiving the foregoing objections, MGA

4   responds as follows:  MGA is willing to meet and confer with Mattel regarding this

5   interrogatory and the obligation of Mattel to supplement its responses to MGA's First

6   Set of Interrogatories.

7   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 40:**

8         MGA incorporates by reference its General Response and General

9   Objections above, as though fully set forth herein and specifically incorporates

10  General Objection No. 7 (regarding Definitions), including but not limited to its

11  objections to the definitions of the terms IDENTIFY, REFERS OR RELATES TO

12  and BRATZ, and further objects to this interrogatory on the grounds that it is

13  overbroad, unduly burdensome, vague and ambiguous both generally and

14  specifically with respect to the terms YOU, STORAGE DEVICE and DIGITAL

15  INFORMATION.  MGA further objects to this interrogatory as compound because

16  it contains discrete subparts that require separate, distinct and multiple responses.

17  Specifically, MGA objects to the terms IDENTIFY and STORAGE DEVICE as

18  overbroad and unduly burdensome, as Mattel's definition of this term calls for

19  responses to multiple discrete subparts.  For example, Mattel's definition of the term

20  IDENTIFY in the context of this interrogatory would require MGA to provide

21  numerous discrete facts for each STORAGE DEVICE, including:

22         (a)    the individual(s) that use or have used the STORAGE DEVICE;

23         (b)    the current location of the STORAGE DEVICE;

24         (c)    the IDENTITY of the PERSON who possesses the STORAGE

25  DEVICE or if it no longer exists, the date on which it was destroyed or disposed of;

26         (d)    the type of STORAGE DEVICE;

27         (e)    whether the STORAGE DEVICE has ever been copied or imaged

28  (and if so, the current location of each copy or image and the IDENTITY of the

EXHIBIT ___ PAGE ___ 793

61

1 PERSONS who possess such copies or image);

2          (f)    the date(s) on which such copies or images were made;

3          (g)    the manufacturer name, brand, model name, model number, and

4 serial number of the STORAGE DEVICE;

5          (h)    the technical specifications and capacities of such STORAGE

6 DEVICE.

7         In addition, Mattel's definition of YOU could be read to require MGA to

8 provide the foregoing information about STORAGE DEVICES belonging to each of

9 the responding parties.

10         MGA also objects to this interrogatory to the extent it seeks information

11 that is not subject to disclosure under any applicable privilege, doctrine or immunity,

12 including without limitation the attorney-client privilege, the work product doctrine,

13 the right of privacy, and all other privileges recognized under the constitutional,

14 statutory or decisional law of the United States of America, the State of California or

15 any other applicable jurisdiction. MGA further objects to the interrogatory on the

16 ground that it is premature because the invention, creation, conception, or reduction

17 to practice of Bratz (and related issues) will be the subject of expert testimony at

18 trial. MGA objects to this interrogatory to the extent it seeks to limit the expert

19 testimony that MGA may seek to introduce at trial. MGA will identify its experts

20 and make related disclosures in accordance with the Court's orders and applicable

21 rules. MGA further objects to the extent that this interrogatory seeks information

22 that is outside of MGA's knowledge and is not in MGA's possession, custody or

23 control.

24         Subject to and without waiving the foregoing objections, MGA

25 responds as follows:

26         With respect to North America prior to January 1, 2002, MGA

27 maintained several Snap servers in Los Angeles containing mostly graphic art files.

28 The servers are no longer in service but are currently archived at MGA's Southern

1  California facility.  MGA Art Department personnel also used Macintosh desktops
2  and laptops that linked to the snap servers which may have contained files referring
3  to Bratz.  Files created with accounting and other back office software applications
4  were saved on sequel servers located in Los Angeles via an application called "Great
5  Plains."  MGA personnel's emails were located on an exchange server, also housed
6  in Los Angeles.  MGA employees save all company related work files on a file
7  server called the "U Drive," which is also used by MGA Entertainment (HK) Ltd.
8  ("MGA Hong Kong") employees.  This Drive is still in production and has been
9  upgraded to a Netapp Storage System.

10          With respect to MGA's offices in Hong Kong prior to January 1, 2002,
11  MGA Hong Kong Art Department personnel utilized Macintosh desktops that linked
12  to a few file servers housed in Hong Kong to store graphic files.  MGA Hong Kong
13  personnel connected to the "Great Plains" sequel server located in Southern
14  California.  MGA Hong Kong maintained its own exchange server in Hong Kong for
15  emails to and from MGA Hong Kong employees.

16  **INTERROGATORY NO. 41:**

17          IDENTIFY all PERSONS who at any time have been employed by or
18  under contract with MATTEL who are now or have been employed by or under
19  contract with YOU since January 1, 1999, and, for each such PERSON, state his or
20  her name, date of hire or effective date of contract, the date on which YOU first had
21  contact with such PERSON regarding potential employment or contracting, the
22  date(s) on which such PERSON was interviewed for possible employment or
23  contracting, each title (if any) such PERSON has held while employed by or under
24  contract with YOU, and the date of termination (if applicable).

25  **RESPONSE TO INTERROGATORY NO. 41:**

26          MGA incorporates by reference its General Response and General
27  Objections above, as though fully set forth herein and specifically incorporates
28  General Objection No. 7 (regarding Definitions), including but not limited to its

1  objections to the definitions of the term IDENTIFY and further objects to this
2  interrogatory on the grounds that it is overbroad, unduly burdensome, vague and
3  ambiguous both generally and specifically with respect to the terms YOU. MGA
4  also objects to this interrogatory to the extent it seeks information that is not subject
5  to disclosure under any applicable privilege, doctrine or immunity, including without
6  limitation the attorney-client privilege, the work product doctrine, the right of
7  privacy, and all other privileges recognized under the constitutional, statutory or
8  decisional law of the United States of America, the State of California or any other
9  applicable jurisdiction.

10  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 41:**

11  MGA incorporates by reference its General Response and General
12  Objections above, as though fully set forth herein and specifically incorporates
13  General Objection No. 7 (regarding Definitions), including but not limited to its
14  objections to the definitions of the term IDENTIFY and further objects to this
15  interrogatory on the grounds that it is overbroad, unduly burdensome, vague and
16  ambiguous both generally and specifically with respect to the terms YOU. MGA
17  also objects to this interrogatory to the extent it seeks information that is not subject
18  to disclosure under any applicable privilege, doctrine or immunity, including without
19  limitation the attorney-client privilege, the work product doctrine, the right of
20  privacy, and all other privileges recognized under the constitutional, statutory or
21  decisional law of the United States of America, the State of California or any other
22  applicable jurisdiction.

23  Subject to and without waiving the foregoing objections, MGA
24  responds as follows: the following is a list of all former Mattel employees who have
25  been employed by MGA, MGA Hong Kong or MGAE de MEXICO S.R.L. de C.V.
26  since January 1, 1999:

27

28

| ACTIVE EMPLOYEES | MGA POSITION | DATES |
|---|---|---|
| Abundis, Ricardo | Dir. of Inventory/Customer Finance | 12/01/04- Present |
| Bate, Ian | Quality Assurance Mgr. | 7/31/06- Present |
| Black, Nanette | SVP, HR | 2/12/07 - Present |
| Bloodworth III, John E. | Prod. Mgr., Games | 08/21/06- Present |
| Bloomfield, Kevin | Sr. Designer | 11/25/02- Present |
| Brawer, Ron | President, Sales, Marketing & Strategic Planning | 10/05/04- Present |
| Brisbois, Janine (CANADA) | VP Nat'l Accts. | 10/04/05- Present |
| Castilla, Jorge | Mgr. Sales Planning | 04/03/06- Present |
| Chang, Suzy | Sr. Development Designer | 08/28/06- Present |
| Cheng, Steve | Sr. Designer | 04/08/02- Present |
| Cody Jr, Gerry | Sr. Designer - Boys Toys | 11/20/06- Present |
| Contreras, Nick | VP Customer Marketing | 11/29/04- Present |
| Cooney Jr., Daniel | VP National Account Mgr. | 05/15/06- Present |
| De La Cruz, Maria | Fashion Design Mgr., Style Guides | 2/12/07 - Present |
| Dixon, Karen | Sr. Producer | 2/19/07 - Present |
| Domingo, Luisito H | Sr. Prelim Dolls Designer | 07/07/03- Present |
| Dominguez, Greg Paul | Prod. Designer | 04/01/02- Present |
| Feldman, Joe | Design Engineer | 12/08/04- Present |
| Forrest, Craig | Prod. Mgr., Games | 5/15/06- Present |
| Garcia, Mia | Dev. Designer | 2/23/05- Present |
| Garcia, Paula | VP Girls Toy Prod. Dev. | 04/17/00- Present |

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

EXHIBIT 76

PAGE 787

| ACTIVE EMPLOYEES | MGA POSITION | DATES |
|---|---|---|
| Gonzalez, Eduardo | Sr. Dir. of Quality Assurance;<br><br>Quality Assurance Mgr. | 10/16/06–Present;<br><br>1/3/05–8/18/05 |
| Hall, Tracy | Sr. Dir. of Prod. Dev., CE/YE | 08/07/06 – Present |
| Hansen, Melody | Face Painter | 03/13/06–Present |
| Hansen, Todd | Packaging Engineer | 5/2/05–Present |
| Hatch, Jill | Sr. Dir., National Sales | 09/18/06 - Present |
| Hinh, Michael | Mgr. Category Adv. | 6/28/05–Present |
| Hsu, Janet | SVP Non Toys Prod. Dev. & Licensing | 3/9/05–Present |
| Kao, Alice | Cust. Marketing Mgr. - Hong Kong Office | 2/21/05–Present |
| Kaufman, Ken | Advertising Exec. | 01/03/05–Present |
| Keller, Pamela E | VP Supply Chain & Operations | 09/25/06 - Present |
| Keossian, Alejandro Gabriel | Gr. Designer | 08/11/03–Present |
| Kim (Lee), Joyce | Sr. Playset Designer | 2/23/05–Present |
| Kim, Young Ran | Sample Maker Specialist | 01/15/04–Present |
| Kirst, Kristen | Hair Designer | 03/31/03–Present |
| Komatsu, Ellen | Sr. Prelim Dolls Designer | 08/25/03–Present |
| Larson, Jill | Sales Associate | 12/20/06–Present |
| Law, Adrian (Chi Shing) | Dev. Design Mgr. | 05/01/06–Present |
| Lumabao, Bo | Prod. Mgr. | 2/14/05–Present |
| Marks, Dorothy | Sample Maker Specialist | 07/26/05–Present |
| Martin, Raymond John | Prod. Mgr. of Consumer Electronics | 02/23/04–Present |
| Min, Aye Aye | Hair Designer | 04/17/06–Present |

66

EXHIBIT ____

PAGE ____

| ACTIVE EMPLOYEES | MGA POSITION | DATES |
|---|---|---|
| Nakamura, Yumi | Mgr. of Style Guides | 1/22/07-Present |
| Natareno, Marvin | Jr. Project Analyst | 01/03/07-Present |
| Nigoghossian, Christine | Sr. Doll Designer | 04/25/05-Present |
| Ochoa, Laura | Trade Marketing Mgr. | 09/01/04-Present |
| Palijo, Amelia Ivy Arafiles | Sr. Sculptress | 02/23/04-Present |
| Pestonji, Danny | Dir. Prod. Dev. Preschool | 06/01/04-Present |
| Phelan, Denise | Sample Maker Specialist | 01/18/05-Present |
| Phoosopha, Poottipong | Face Painter | 12/08/03-Present |
| Pickard, Michael | Sr. Project Packaging Engineer | 03/22/04-Present |
| Rae, Ronald | SVP, National Account Sales | 03/12/07-Present |
| Ratleff, Leland | Sr. HR Dir. | 12/04/06-Present |
| Ronquillo, Desiree Elisabeth | Sr. Dev. Designer | 05/03/04-Present |
| Ruiz, Micaela | Sample Maker Specialist | 2/13/06-Present |
| Sasic-Koetsier, Natasha | Illustrator | 06/01/04-Present |
| Salazar, Maria Elena | Sample Maker Supervisor | 03/31/03-Present |
| Salemnia, Shirin | Research Mgr. | 02/17/03-Present |
| Scott, Harvey | Sample Maker Specialist | 08/01/05-Present |
| Smith, Steffen J. | Dir. of Package Dev. | 10/13/03-Present |
| Su, Jier | Dir. of Prod. Planning | 8/16/05-Present |
| Soai, Dennis | Dolls Dev. Design Mgr. | 03/04/02-Present |
| Thompson, Marla | Sample Sourcing & Procurement Mgr. | 04/04/05-Present |
| Tran, Chau Ngoc | Sample Maker Specialist | 05/10/04-Present |
| Trueba, Mariana | Marketing Mgr. | 04/26/04-Present |

67

EXHIBIT 10

PAGE 799

| ACTIVE EMPLOYEES | MGA POSITION | DATES |
|---|---|---|
| Umana, Esteban | Quality Engineer | 03/19/07-Present |
| Upshaw, Gail | Sample Maker Specialist | 5/23/05-Present |
| Vargas, Pablo | Dir. Sales | 04/26/04-Present |
| Wang, Chang-Chin | Assoc. Face Designer | 05/03/04-Present |
| Ward, Lance | Structural Engineer | 08/02/04-Present |
| Whittaker, Dawn | Sr. Prod. Designer | 12/06/04-Present |
| Wong, Jenny | Sr. Gr. Designer | 09/09/02-Present |

| CURRENT MGA INDEPENDENT CONTRACTORS/FREELANCERS/TEMPS | MGA POSITION | DATES |
|---|---|---|
| Augborne, Troy | Structural Engineer (Temp) | 2/26/07 – 3/2/07, 4/16/07 – Present |
| Bryant, Carter | Prod. Designer/Independent Contractor | |
| Zetino, Reyna | Samplemaker, Temp Assignment | 04/13/07 – Present |

| FORMER EMPLOYEES/FREELANCERS | MGA POSITION | DATES |
|---|---|---|
| Aryapour, Daryoush | Creative Ser. Dir. | 10/25/99-04/14/00 |
| Aguilar, Lourdes | Brand Mgr. | 9/01/04-6/11/06 |
| Blaser, Janet | Dev. Designer | 06/14/04-09/10/04 |
| Bower Violette, Mari Joanne | Prod. Mgr. | 10/13/03-03/10/06 |
| Brown, Lilia | Gr. Designer | 03/31/03-05/05/05 |
| Burlando, Gabriella | Prod. Mgr. | 03/5/02-06/27/06 |
| Chonavel, Fabienne | Marketing Mgr. | 04/10/02-08/23/02 |
| Dailey, Christine | VP Prod. Dev. | 05/07/01-11/22/02 |
| Feicht, Steve | Artist/Jr. Designer Freelancer | 07/18/02-Unknown |

68

EXHIBIT 76
PAGE 808

| FORMER EMPLOYEES/FREELANCERS | MGA POSITION | DATES |
|---|---|---|
| Gillmour, Kami | VP Marketing | 05/24/99-07/14/00 |
| Hardouin, Christopher | Project Mgr. | 06/04/01-07/23/04 |
| Hitch, Martin | VP Int'l Sales | 01/04/01-06/04/02 |
| Ho, Jeff | Sr. Prod. Artist Freelancer | Unknown-10/04 |
| Huntley, James | Independent Contractor – Miuchiz;<br><br>VP Marketing | 08/17/06 – Unknown;<br><br>5/23/05-08/16/06 |
| Kagan, Randi | Marketing Dir. | 09/23/02-07/22/03 |
| Koch, Andreas | Prod. Mgr. | 10/18/99-01/11/01 |
| Leahy, Margaret | Sr. Sculptor | Temp To Perm. Eff. 4/4/05 - 03/06/07 |
| Mayer, Lyn Carol | Fabric Artist | 07/21/03-05/05/05 |
| McBride, Susan | Prod. Dir., Games | 06/03/02-01/25/07 |
| Mils, Frank | Mgr. of Quality Assurance | 03/20/06-07/07/06 |
| Nguyen, Xuanlan T | Pattern Maker | 05/19/03-01/03/05 |
| O'Brien, Gary Thomas | Field Sales Dir. | 05/10/04-07/22/04 |
| Otero, Jose | Web Designer | 08/11/03-2/1/06 |
| Owen, Dan | Sr. Playset Mgr. | 08/23/04-12/13/05 |
| Parasole, Nicolletta | Gr. Designer | 01/05/04-6/27/05 |
| Parkinson, Ana Mancia | Dev. Designer | 05/10/04-01/03/07 |
| Rambeau, Roger | VP Operations | 05/13/96-04/03/98 |
| Ramirez, Andrea | Key Account Mgr. | 04/05/05-12/12/06 |
| Reed, Wendy | Soft Goods Spec. | 11/06/00-01/12/01 |

MGA'S SUPPL. RESPONSES TO MATTEL'S REVISED THIRD SET OF INTERROGATORIES  NO. CV 04-9049 SGL (RNBx)

EXHIBIT 76

PAGE 801

| FORMER EMPLOYEES/FREELANCERS | MGA POSITION | DATES |
|---|---|---|
| Reyes, Scot Anthony | Sm. Doll Designer | 05/23/04-3/11/05 |
| Rhee, Anna | Doll Face Design Freelancer | 1/4/07 - 2/13/07 |
| Ross, Lon | Marketing Dir. | 11/13/00-08/03/01 |
| Schwartz, Dena | Sr. Prod. Mgr. | 05/21/01-04/08/02 |
| Shaver, Brandi | Gr. Designer | 05/03/04-06/30/06 |
| Stinnett, Holly | Sr. Brand Mgr. | 07/21/03-1/12/05 |
| Tawil, Lisa | Licensing Coord. | 04/08/02-07/18/03 |
| Terry, Gord | Dir. of Sales | 10/01/01-06/06/02 |
| Ward, Mercedeh | Sr. Prod. Designer | 10/00-1/01; 3/7/05-8/5/05 |
| Whitaker, Joseph | Consultant | 11/05/96-03/97 |
| Williams, Patrick | SVP Sales | 01/07/01-05/29/01 |
| Wong, Tong | Dev. Designer | 03/10/03-05/16/03 |
| Wright, Cherrise | Soft Goods Mgr. | 05/03/04-8/24/05 |
| Zbojniewicz, Dave | Dir. Bus. Planning/Independent Contractor | 04/04-09/04 |

DATED:  November 30, 2007

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: _____
       Thomas J. Nolan
Attorneys for Counter-Defendants, MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

EXHIBIT 16
PAGE 802

70

**EXHIBIT 77**



CONFORMED COPY

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

LODGED
CLERK, U.S. DISTRICT COURT

MAR 2 4 2008

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION    BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

                    Plaintiff,

        vs.

MATTEL, INC., a Delaware corporation,

                    Defendant.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)
Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

Hon. Stephen G. Larson

MATTEL INC.'S OPPOSITION TO THE MGA PARTIES' AND CARTER BRYANT'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT

Date:  April 22, 2008
Time:  10:00 a.m.
Courtroom: 1

**Phase 1:**
Discovery Cut-Off:    January 28, 2008
Pre-Trial Conference: May 5, 2008
Trial Date:           May 27, 2008

**CONFIDENTIAL -- ATTORNEYS EYES ONLY**

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

EXHIBIT 77
PAGE 803

07209/2443223.8

OPPOSITION

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................. 1

STATEMENT OF FACTS ....................................................................... 2

ARGUMENT ................................................................................... 11

I.   THE INVENTIONS AGREEMENT COVERS THE BRATZ WORKS ....... 11

   A.   The Agreement's Plain Text Precludes Bryant's Interpretation ........... 11

   B.   Rules of Construction For Contracts of Adhesion Do Not Apply ........ 15

   C.   Extrinsic Evidence Refutes Bryant's Interpretation ........................... 16

   D.   Bryant 's Unconscionability Defense Has Been Rejected ................... 18

   E.   The Conflict of Interest Questionnaire Imposes Enforceable Duties ................................................................................... 19

II.  MATTEL'S STATE LAW CLAIMS ARE TIMELY ................................... 20

   A.   Defendants Do Not Prove By Undisputed Facts That Inquiry In 2001 Or 2002 Would Have Revealed Their Wrongdoing ................... 20

   B.   MGA Does Not Present Undisputed Evidence Of The Date Any Claim Accrued ....................................................................... 21

      1.   A Claim Does Not Accrue Until All Elements Are Complete and a Plaintiff Is On Inquiry Notice ....................... 21

      2.   Mattel Did Not Have Inquiry Notice of Bryant's Misconduct Prior to 2003. ................................................. 22

         (a)   Factual Disputes Surround The Purported 2000-2001 Triggering Events. .................................................. 22

            (i)   Bryant's Resignation from Mattel ......................... 22

            (ii)  Knowledge of Bryant's Supervisors/Co-Workers ................................................................ 23

            (iii) Perceptions Among Mattel's Designers/Executives About Bratz ....................... 23

            (iv)  Doll Development Timeline ................................... 23

         (b)   Mattel's March 2002 Investigation Did Not Establish Notice. ....................................................... 24

EXHIBIT 77
PAGE 804

(c)    Mattel Was Not on Inquiry Notice of MGA and Larian's Misconduct Until November 4, 2004. ................ 26

3.    The Statute of Limitations Was Tolled Due to Defendants' Fraudulent Concealment. ........................................ 27

4.    The Stay of Proceedings Tolled the Statute of Limitations. ...... 30

C.    As The Court Correctly Held, Mattel's Phase One Claims Added In 2006 Relate Back To The 2004 Complaint And Are Timely. ......... 31

1.    Mattel's Amended Claims Against Bryant Relate Back to the April 2004 Complaint. ........................................... 34

2.    Mattel's Phase One Claims Against MGA Relate Back to the April 2004 Complaint. ........................................... 35

3.    Mattel's Phase One Claims Against the Other Defendants Also Relate Back to the April 2004 Complaint. .......................... 36

4.    Defendants' Assertion That Mattel's Claims Relate Back to the '05 Action Misstates the Court's Order. ................... 39

D.    Mattel's Claims Are Timely. ................................................ 41

1.    The Intentional Interference Claim Is Timely. ........................... 41

2.    The Aiding and Abetting Claims Are Timely. ........................... 41

3.    The Conversion Claim Is Timely. ............................................. 42

4.    The Unfair Competition Claim Is Timely. ................................. 42

III.    MATTEL'S FEDERAL COPYRIGHT CLAIM IS TIMELY. ........................ 43

A.    Mattel Asserted Its Copyright Claim Within Three Years of Accrual. ............................................................................. 43

1.    The Standard for Accrual of Copyright Infringement Claims. ................................................................................. 43

2.    Mattel's Copyright Claim Could Not Have Accrued Prior to November 24, 2003. .......................................... 44

3.    The Stay In the Action Tolled the Statute of Limitations on the Copyright Claim. .............................................. 45

B.    The Copyright Infringement Claim Against Bryant and MGA Relates Back to the '04 Complaint. ....................................... 46

1.    Mattel's Copyright Infringement Claim Against Bryant and MGA is Timely. ....................................................... 46

2.    The Timing Of Mattel's Registration Of Its Copyrights Does Not Affect the Viability of Its Claims. .................... 46

EXHIBIT 77
PAGE 805

07209/2444438.1

-ii-

1  cannot apply statute of limitations in a way that pressures litigants to file suits based

2  merely on suspicions and fears. ...[S]uspicion and fear are not sufficient predicates

3  for launching a lawsuit, and to file an action with no other basis would offend norms

4  articulated in rules like Federal Rule of Civil Procedure 11.").   Nowhere do

5  defendants explain what inquiry Mattel could have done that would have given it

6  any good faith basis to sue earlier than it did.

7  **B.    MGA Does Not Present Undisputed Evidence Of The Date Any**

8  **Claim Accrued**

9  **1.    A Claim Does Not Accrue Until All Elements Are Complete**

10  **and a Plaintiff Is On Inquiry Notice**

11      Defendants quote a snippet of a case saying that "mere suspicion" suffices to

12  trigger inquiry notice. (MGA Mem. 17 (quoting Fox v. Ethicon Endo-Surgery, Inc,.

13  35 Cal. 4th 797, 806 (2005).  But they ignore limiting language emphasizing that

14  the suspicion cannot be general or abstract.  The "suspicion" must relate specifically

15  to the elements of the specific cause of action sued upon.  Fox, 35 Cal. 4th at 806,

16  808 (quoting Norgart v. Upjohn Co., 21 Cal. 4th 383 (1999)).  Plaintiffs have a duty

17  to investigate only "after becoming aware of an injury, and are charged with

18  knowledge of the information that would have been revealed by such an

19  investigation." Id. at 808.  See also Garamendi v. SDI Vendome S.A., 276 F. Supp.

20  2d 1030, 1043 (C.D. Cal. 2003) (plaintiff is "on notice" only when he has "'an

21  awareness of sufficient facts to identify a particular cause of action.'") (citation

22  omitted).

23      This oversight infects defendants' statute of limitations analysis.   They

24  incorrectly frame the inquiry as "When did Mattel reasonably suspect it had suffered

25  some injury relating to Bratz?", rather than "When did Mattel reasonably suspect

26  that it had a claim to ownership of Bratz based upon work that Bryant did while a

27  Mattel employee?"  The California Supreme Court has recognized that accrual of a

28  cause of action is delayed when a plaintiff has "ignorance of a generic element of

EXHIBIT 17
PAGE 806

-21-

JOINT OPPOSITION

1    the cause of action." Fox, 35 Cal. 4th at 813.  Here, the missing "generic element" of

2    wrongdoing was Bryant's creation and sale of Bratz-related materials, and work for

3    MGA, *while employed by Mattel*.  Mattel was on notice of this missing "element" no

4    earlier than November 24, 2003, when it received a copy of Bryant's employment

5    agreement with MGA.[100]   This agreement, and specifically the dates of the

6    agreement, triggered the investigation that led to Mattel's conclusion that Bryant had

7    violated the Inventions Agreement and Conflict of Interest Questionnaire and the

8    filing of this suit.[101]

9         Defendants argue that Mattel's claims accrued by February 2001 as a result of

10   a number of "triggering events." MGA Mem. 17-18.  But none of those events put

11   Mattel on inquiry notice of the claim on which Mattel ultimately sued.  At most,

12   these so-called "triggering" events show that Mattel knew that Bryant, MGA and

13   Larian were involved with Bratz.  Those facts are not actionable.

14         2.    **Mattel Did Not Have Inquiry Notice of Bryant's Misconduct**

15              **Prior to 2003.**

16              (a)    **Factual Disputes Surround The Purported 2000-2001**

17                    **Triggering Events.**

18        Even accepting defendants' accounts of the triggering events as accurate,

19   contrary evidence creates factual disputes that preclude summary judgment.  In

20   addition, those purported triggers, even when taken together, did not disclose to

21   Mattel any wrongful conduct.

22              (i)    **Bryant's Resignation from Mattel**

23        Defendants argue that Mattel's claims accrued October 2000 because Bryant

24   announced "he was leaving to design dolls."  MGA Mem. at 17.  But Bryant

25   testified at deposition that he had said he would *not* work for a competitor.[102]

26   

27   _____
     [100]  MGA AMF # 127.
     [101]  MGA AMF # 127.
28   [102]  MGA 0305916; CB AMF # 131.

-22-

EXHIBIT 11
PAGE 807

1   Moreover, even if he said he was going to design dolls, that hardly constitutes a

2   reasonable suspicion of unlawful activity.  Nor does it suggest that he had designed

3   dolls during his Mattel employment that he had already sold to a competitor.

4       **(ii)  Knowledge of Bryant's Supervisors/Co-Workers**

5     MGA asserts that Bryant's supervisors believed "he was going to a

6   competitor." Id. at 18.  The evidence contradicts that assertion.  Jill Nordquist,

7   Bryant's co-worker, had speculative suspicions that Bryant was going to a

8   competitor, but he assured her he was not.[103]  Ivy Ross, who ran Mattel's Design

9   Center, said that Bryant told her "he was going to have more time on his hands, be

10  able to sit at home ..., and I asked if he was going to a competitor, and he said no,

11  ... not a competitor . . . ."[104]  In other words, Bryant repeatedly lied to friends and

12  co-workers and now wants to exploit his deception.  He (and the MGA defendants)

13  petition the Court to conclude as a matter of law that if an employee successfully

14  conceals his true activity by falsehood, the employer must still sue him.

15      **(iii)  Perceptions Among Mattel's**

16         **Designers/Executives About Bratz**

17    MGA asserts that Mattel designers and executives believed after the New

18  York and Hong Kong toy fairs that "Bratz was copied from Mattel products." (MGA

19  Mem. 18).  Even assuming arguendo the truth of that assertion (it is not true[105]), it is

20  irrelevant—that is not the claim on which Mattel has sued.

21      **(iv)  Doll Development Timeline**

22    MGA asserts that Mattel's knowledge of how long it takes to develop a doll

23  shows that it must have known that Bryant had created Bratz at Mattel.  But MGA

24  itself has always denied that Bryant created Bratz at Mattel, and does so to this day,

25  so why Mattel "must have" known this is unclear.  Moreover, even according to

26

27   [103] CB AMF # 131; MGA AMF # 92
     [104] CB AMF # 131.

28   [105] MGA AMF # 131, 157.

EXHIBIT 11
PAGE 808

1  MGA's own experts there is no such bright line "doll development timeline."  For

2  example, MGA's expert Robert Tonner opines:

3      I understand that in this case there is some question about MGA being

4      able to develop a new doll in the short amount of time from early

5      October, 2000 and have it ready to show at Hong Kong Toy Fair in

6      January of 2001.  Was it possible?  *The answer is absolutely, yes.*[106]

7  MGA's claim that Mattel should have known Bryant created Bratz at Mattel merely

8  because it was released at Toy Fair in 2001, and that Mattel was therefore on notice,

9  is wrong even according to its own experts.

10      **(b)**   **Mattel's March 2002 Investigation Did Not Establish**

11          **Notice.**

12      MGA argues as a fall-back that Mattel had notice as of March 2002 because it

13  launched an investigation into "MGA and Larian's involvement in Bryant's creation

14  and development of the BRATZ."  (MGA Mem. 19).   First, the argument is

15  factually wrong. Mattel's March 15, 2002 investigation involved only allegations

16  that Bratz may have been "plagiarized" from Mattel designs known as "Toon

17  Teens." The investigation was to determine whether someone at MGA had accessed

18  Mattel's Toon Teens drawings.[107]  Based on the scope of the investigation, Mattel

19  was not looking for and did not discover that Bryant created Bratz while employed

20  by Mattel.[108]  Nor do defendants suggest that the investigation disclosed, or could

21  have disclosed, any evidence that he did so.  Notice of those facts came only when

22  Mattel received a copy of the MGA-Bryant contract in November 2003.[109]  The

23  2002 investigation gave no notice of the elements of the specific causes of action

24  Mattel sued upon. Fox, 35 Cal. 4th at 806, 808.

25

26    [106]  Expert Report of Robert Tonner dated February 11, 2008, at 16.

27    [107]  MGA AMF # 112, 113, 114.
  [108]  MGA AMF # 114.

28    [109]  MGA AMF # 127.

-24-

JOINT OPPOSITION

EXHIBIT 77
PAGE 804

Defendants also claim that an anonymous letter triggered inquiry notice in 2002. Id. at 10-11. It did not. On August 5, 2002, Mattel's CEO Robert Eckert received a letter suggesting that Bryant created Bratz and sold his concept to MGA while a Mattel employee. It was one of many anonymous letters that Mr. Eckert receives as CEO of a public company.[110] The letter was passed along to Mattel's Worldwide Security, Richard De Anda. He looked at it and determined that because the letter was anonymous and had no indicators of identity on which he could follow up to assess reliability. In addition, he understood the letter to refer, albeit inaccurately, to the pending investigation into whether Bratz infringed Mattel's rights in Toon Teens.[111] Mr. De Anda never understood the letter to suggest that Bryant secretly created Bratz while at Mattel.[112]

Anonymous tips are not sufficient to justify a lawsuit. As this Court observed, referring to MGA's prior counsel, "I certainly know that O'Melveny & Myers would not file a complaint based on an anonymous letter from somebody suggesting that there is a copyright infringement."[113] United States v. Tri-State Ins. Co., 946 F.2d 581 (8th Cir. 1991), is on point. There, an anonymous tipster provided a "penciled-over financial statement" suggesting that the insured had misstated to the United States its "net worth, its solvency, and the value of the grain on hand." Id. at 582. The Eighth Circuit held that an anonymous tip "does not put a person on sufficient notice of the facts indicated in the tip to trigger the statute of limitations *until a reasonably prompt investigation either identifies the source as probably reliable or shows the information as probably accurate.*" Id. (emphasis added). The Eighth Circuit, like this Court, went on to acknowledge that filing a suit

---

[110] (Id.).
[111] MGA AMF # 125.
[112] MGA AMF # 113, 114.
[113] January 8, 2007 Hearing Tr. at 16:24-17:2, Zeller Dec. Ex. 7; see Court's Order Regarding Mattel's Motion for Leave to Amend, dated Jan. 11, 2007, Proctor Dec., Exh. 95.

-25-

EXHIBIT 77
PAGE 910

1  based on an unverified source could subject counsel to serious Rule 11 sanctions.

2  Id. at 583.

3  Hindsight has revealed that the letter was accurate (at least on one

4  interpretation of it), but only years later, when Mattel obtained concrete evidence of

5  Bryant's wrongs was this revealed. It does not follow that the anonymous letter—

6  which independently was a dead end—was notice at the time. Tri-State Ins.

7  addressed that exact issue. The anonymous penciled-over financial statement was

8  accurate, but the Eighth Circuit rejected the argument that it provided notice. It

9  found notice only after the plaintiff possessed "sufficient facts to verify the probably

10  accuracy of the information" received anonymously. Id. Here, Mattel did not have

11  that information until it obtained Bryant's contract with MGA in Hong Kong in

12  November 2003.[114]

13          (c)   **Mattel Was Not on Inquiry Notice of MGA and**

14              **Larian's Misconduct Until November 4, 2004.**

15  Mattel had no reason to know that MGA or Larian had engaged in any

16  actionable conduct with Bryant until Bryant's deposition on November 4, 2004.

17  Mattel discovered the crucial facts of "wrongdoing, causation and harm," Fox, 35

18  Cal. 4th at 806 (quoting Norgart, 21 Cal. 4th at 397), when Bryant admitted that

19  MGA and Larian were fully aware of his employment relationship with Mattel when

20  they put him under contract and bought his Bratz-related drawings and designs.[115]

21  Only then did Mattel have reasonable suspicion of actionable wrongdoing. See

22  Hobson v. Wilson, 737 F.2d 1, 36 (D.C.Cir. 1984) ("[S]imply because a person

23  knows he has been injured by one person cannot reasonably mean he should be held

24

---

25  [114]  MGA AMF # 127. For the same reasons, the Wall Street Journal article in July 2003 did not provide notice. That article suggested that Bryant had created Bratz. But other, earlier articles stated that Larian was the doll's creator. CB AMF # 140. Notably,

26  the article did not state that Bryant conceived of Bratz or created Bratz-related materials during his Mattel tenure, and noted that Bryant "didn't work on the line that Mattel

27  scrapped...."

28  [115]  MGA MF # 13.

-26-

EXHIBIT 11
PAGE 811

1   to know of every other participant."); <u>Fitzgerald v. Seamans</u>, 553 F.2d 220, 229

2   (D.C. Cir. 1977) (plaintiff had reason to know of alleged misconduct by Air Force

3   officials within the applicable period but not of involvement of a White House

4   official until significantly later).  After Bryant was deposed, Mattel timely sought

5   leave to amend its Complaint to formally name MGA and Larian as defendants

6   (although, as discussed below, MGA was already a party since it had intervened).

7           **3.    <u>The Statute of Limitations Was Tolled Due to Defendants'</u>**

8                   **<u>Fraudulent Concealment.</u>**

9           Defendants sought actively to conceal Bryant's involvement in Bratz while

10   employed at Mattel, as well as MGA and Larian's culpability, and were successful in

11   doing so.  (<u>See supra</u> at 9-10; Mattel's Motion at 46).  Defendants' pattern of

12   concealment has two effects.  First, it tolls the limitations period on all claims,

13   including those as to which the discovery rule may not apply <u>See</u> Snow v. A.H.

14   <u>Robins Company</u>, 165 Cal.App.3d 120, 133, 211 Cal. Rptr. 271 (Cal. App. 1985)

15   (applying discovery rule to fraudulent concealment and misrepresentation claims

16   because defendant falsely concealed the true pregnancy rates associated with the

17   IUD, and thus "excuse[d] any greater diligence on [plaintiff's] part."); <u>Grisham v.</u>

18   <u>Philip Morris U.S.A., Inc.</u>, 40 Cal.4th 623 (2007) ("[a] defendant's fraud in

19   concealing a cause of action against him will toll the statute of limitations.").

20           In <u>April Enterprises, Inc. v. KTTV</u>, 147 Cal. App. 3d 805 (1983), the court

21   applied the discovery rule to a breach of contract claim where the defendant

22   destroyed tapes of a television show while the tapes were in its custody and control.

23   The court held that "the discovery rule may be applied to breaches which can be,

24   and are, committed in secret, and moreover, where the harm flowing from those

25   breaches will not be reasonably discoverable by plaintiffs until a future time."  <u>Id.</u> at

26   832.  The court noted that "plaintiffs should not suffer where circumstances prevent

27   them from knowing they have been harmed. And often this is accompanied by the

28

PAGE ____ EXHIBIT ____ 812

JOINT OPPOSITION

1  corollary notion that defendants should not be allowed to knowingly profit from

2  their injuree's ignorance." Id. at 831.

3      Second, fraudulent concealment tolls the statute of limitations *even where the*

4  *plaintiff would have inquiry notice*. "[M]ere inquiry notice will not necessarily end

5  a period of equitable tolling arising out of the defendant's fraudulent concealment.

6  When intentional concealment tolls a statute of limitations, something closer to

7  actual notice than mere inquiry notice is required to end the tolling period.  For

8  example, . . . if a plaintiff suspects that she has been wronged but does not know the

9  specific facts that constitute the wrong, the statute may be tolled until she learns of

10  those facts if the defendant takes steps to conceal them.  Again, this is true even if

11  the plaintiff is already on inquiry notice as to her claim."  Garamendi v. SDI

12  Vendome S.A., 276 F. Supp. 2d 1030, 1043 (C.D. Cal. 2003) (citations omitted).

13  The purpose is of this rule is "to disarm a defendant who, by his own deception, has

14  caused a claim to become stale and a plaintiff dilatory."  Regents of University of

15  California v. Superior Court, 20 Cal. 4th 509, 533 (1990).

16      Defendants concealment of their wrong from Mattel is indisputable.  Bryant

17  never revealed Bratz to anyone at Mattel.[116]  He did not even tell his roommate,

18  Elise Cloonan.[117]  Bryant wrote "1998" on some of the Bratz drawings that he

19  admitted to creating in 1999.[118]  A false entry was made in a notary book indicating

20  that certain drawings notarized in August 1999 were "From 1998 Missouri."[119]

21  When Bryant left Mattel, he expressly told Mattel supervisors and co-workers that

22  he was *not* leaving to work for a competitor,[120] and never told anyone at Mattel that

23

24

25  [116]  CB AMF # 72.
26  [117]  CB AMF # 60.
    [118]  CB MF # 90-92, MGA AMF # 86.
27  [119]  CB AMF # 60.
    [120]  CB AMF # 131. .  Had Mattel known he was going to a competitor, it would have
28  followed its established policy of terminating him immediately. CB AMF # 130.

-28-

EXHIBIT 77
PAGE 813

1  he was leaving for MGA or to work on Bratz, or that he had worked on Bratz or for

2  MGA previously.[121]

3      The MGA Defendants concealed Bryant's role on Bratz for years after he left

4  Mattel. Both Isaac Larian and Paula Garcia gave strict instructions that no one at

5  MGA was to discuss Bryant's involvement with Bratz outside of the company.[122]

6  MGA prepared and produced a list of former Mattel employees and vendors

7  working for MGA that shows Bryant's "MGA DATES" are "????-PRESENT" and

8  Bryant's MATTEL DATES" are "*DON'T ASK*."[123]   Larian e-mailed MGA's

9  personnel dictating that "[t]here must be no mention about Mattel or any of their

10  properties, Carter, any MGA Bratz arts, etc."[124]   The MGA employees understood

11  their mandate to "keep Carter under wraps."[125]   Larian himself spread false

12  information about Bratz's creation to conceal Bryant, describing himself or his son

13  as the creator of Bratz.[126]   MGA effectively has admitted this pattern of concealment

14  by conceding that no public statement recognized Bryant as Bratz's creator until a

15  July 18, 2003 Wall Street Journal article.[127]

16      Defendants' fraudulent conduct delayed accrual of all of Mattel's causes of

17  action.   See Bernson v. Browning-Ferris Indus., 7 Cal. 4th 926, 931 (1994)

18  (reversing summary judgment because "defendant's fraud in concealing a cause of

19  action against him tolls the applicable statute of limitations"); see April Enters., 147

20  Cal. App. 3d at 832 (1983) ("discovery rule protects those who are ignorant of their

21  cause of action through no fault of their own").[128]

22

---

[121]  CB AMF # 72.
[122]  CB AMF # 135.
[123]  CB AMF # 134.
[124]  CB AMF 136.
[125]  CB AMF # 138.
[126]  CB AMF #139.
[127]  CB AMF #140.
[128]  Jolly v. Eli Lilly & Co., 44 Cal.3d 1103 (1988), does not disturb these holdings. The plaintiff alleged injury caused by her mother's ingestion of the synthetic drug DES during pregnancy. See id. at 1107.  However, undisputed evidence showed that the plaintiff had admitted over a year before she filed her suit that she believed that someone "had done something wrong to her concerning DES, that it was a defective drug and that (footnote continued)

-29-

EXHIBIT 17
PAGE 814

**4.    The Stay of Proceedings Tolled the Statute of Limitations.**

The Court's year-long stay of proceedings while the Ninth Circuit considered an interlocutory appeal tolled the limitations period for Mattel's counterclaims for the duration of the stay, May 20, 2005 until May 16, 2006.[129]  In *Castle v. Wells Fargo Financial, Inc.*, 2007 WL 1105118 (N.D. Cal. 2007), the plaintiffs' putative class action was stayed on March 2, 2007, pending the California Supreme Court's review of a related case.  When asked to rule on whether the stay affected the limitations period, the district court ruled that the "statute of limitations should be equitably tolled for all putative class members … from March 2, 2007 until the stay is lifted." *Id.* at *1; *see also Selph v. Nelson, Reabe & Synder, Inc.*, 966 F.2d 411, 413 (8th Cir. 1992) ("A stay tolls the statute of limitations…").[130]  Stays have also been held to toll the statute of limitations in cases involving leave to add claims against new defendants.  *Javier H. v. Garcia-Botello*, 239 F.R.D. 342, 347-48 (W.D.N.Y. 2006) (permitting leave to add a RICO claim against new defendants and finding that the claim was timely because the "[t]he statute of limitations was equitably tolled during the stay of discovery").

This stay, which defendants ignore, extends by a year the time that Mattel had to assert amended Phase One claims against Bryant (copyright infringement), MGA, MGA Hong Kong, and Isaac Larian (copyright infringement, intentional interference with contract, aiding/abetting breach of fiduciary duty, statutory unfair competition, and common law unfair competition).  Setting aside whether each claim relates back to Mattel's 2004 complaint (discussed below), the 362-day stay

she should be compensated." *Id.* at 1112. Here, Mattel made no such admissions and had no knowledge of Bryant's or MGA's wrongdoing until 2003 and 2004, respectively.
[129]    Minute Order, dated May 20, 2005, Zeller Dec., Exh. 111; Minute Order, dated May 16, 2006, Zeller Dec., Exh. 112.
[130]    Likewise, in *Ko v. Lin*, 2002 WL 830863 (Cal. Ct. App. 2002), the case was stayed for four months while the defendants sought to disqualify plaintiffs' attorney. *See id.* at *2-3. Defendants cross-complained and plaintiff challenged the timeliness of the cross-claims.  In determining whether the cross-claims were timely, the court tolled the limitations period for the four-month stay.

JOINT OPPOSITION

EXHIBIT 77
PAGE 815