**EXHIBIT 143**

# [ayzenberg]

**MGA Entertainment
Style Squad Pitch
Novemeber 13, 2000**



EXHIBIT _143_

PAGE _1846_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA 3779227

**[MGA Entertainment]**

**[overview]**

MGA Entertainment is entering into the small doll marketplace that has recently begun to take on a new spin, one that diverts from the traditional Barbie concept. The product lines that are currently in this marketplace reflect the ages and personalities of the girls who are actually playing with them. Betty Spaghetty by Ohio Art and the Diva Starz by Mattel are strong examples of where this market is headed. Even Barbie has become a player in this new market with their Generation Girl. Compared to the classic Barbie, these dolls are younger, more fun, and edgier. They reflect the lifestyles and the environment that young girls are actually experiencing. Instead of hopping into a sports car with Ken, these dolls are decorating their lockers in school, shopping at the mall, and talking on the phone with their friends about boys.

Although there are already a few players in this space providing hip dolls, they have left the door wide open for MGA to launch a product line that will dominate the marketplace and take this trend to a whole new level. Providing not just another doll, but one that truly taps into imagination-play by combining hip personalities with today's fashion trends. Fashion doll stereotypes will be abandoned and replaced with funky new haircuts, updated styles and a fresh new image.

**[objectives]**

There are two primary initiatives for this product launch. The first initiative is the *Sell-In*, which focuses on hitting trade publications with a powerful marketing message and brand image to generate interest and "buy-in" from retailers before the consumer push. The second initiative is the *Sell-Through*, which has a consumer focus to build excitement around the coming product, to generate awareness of the product line, and most important -- to instill a sense of "have-to-have" among the target audience.

1

**[ayzenberg]**

EXHIBIT _143_

CONFIDENTIAL – ATTORNEYS' EYES ONLY

PAGE _1847_     MGA 3779228

4502-2

# [MGA Entertainment]

## [branding]

The Ayzenberg Group will provide MGA with two primary branding initiatives: universal branding and individual product branding. A modern, fresh look with feminine characteristics will drive both of these branding initiatives. The universal branding and individual product branding will work together to convey both the individuality of the girls while maintaining a consistent line look.

### universal branding

The universal branding will serve as the umbrella brand for the entire line. Ayzenberg will create a comprehensive integrated marketing strategy that will establish a brand identity that is unique in the market place, complemented with targeted campaigns designed to generate awareness during both the sell-in and sell-through phases, and a compelling web destination to stimulate interest and demand for the products. The goal is to create a brand in the marketplace that has a powerful shelf presence with respects to packaging, design, line look and logo. The brand will set itself apart in the over-saturated doll market. This branding will be used for all products at the time of launch as well as all products to follow. The branding for this initiative will be focused on the consumer audience, with a primary focus on ages 6 to 12, while still appealing to the more mature female demographic, ages 13-35.

### individual product branding

The product branding for the girls will extend out of the universal branding components, but will also include more specific elements that represent each of the girls individual look and style. This will be reflected in the title treatment of each of the girl's names as well as the corresponding descriptors and copy. Ayzenberg will focus on capturing each character's unique attitude and fashion style and translate this into a packaging design that "pops" off the shelf. Once this distinctive branding has been established, all of the existing and future products for this doll's line will be consistent with the established branding.

2

## [ayzenberg]

EXHIBIT ___143___

CONFIDENTIAL - ATTORNEYS' EYES ONLY

PAGE ___1848___          MGA 3779229

4502-3

**[MGA Entertainment]**

**[messaging]**

Messaging will follow the branding strategy and will take on two primary initiatives, one for the *Sell-In* and one for the *Sell-Through*.

**sell-in messaging**
Messaging for the retail audience will have one focus – to let the retailers know that this is a doll line that is going to make consumers flock to their shelves.

**sell-through messaging**
The consumer audience initiative will be strong and will focus on communicating one message -- these dolls are the "coolest thing" to have.

3

**[ayzenberg]**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT _____143_____

PAGE _____1849_____

MGA 3779230

4502-4

**[MGA Entertainment]**

[getting to the goal]

marketing plan development
Ayzenberg's account team will be staffed with creative directors, illustrators, designers and account planners to develop the *Style Squad* initiative for MGA. This document is designed to serve as a six-month plan of action.

recommended tactics
The following pages outline a marketing strategy that is broken down by launch initiative. Recommended strategic tactics will help to define brand identity for the product suite and establish messaging and marketing consistency, create market awareness, and drive consumer sales.

While the prices are listed by task, MGA should keep in mind that some initiatives are interrelated in nature. Assigning the work as separate tasks rather than a unified whole, could affect the projected cost and could impact scheduling, coordination, and integration. With respect to print media creation, these estimates do not include printing costs, which will vary with quantity produced. Regarding interactive media creation, the estimates which follow do not include costs of the required hardware, software, and other licensing requirements in this fixed price proposal. Ayzenberg will provide written estimates for any such costs, if requested.

4
**[ayzenberg]**

CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT _143_

PAGE _1850_

MGA 3779231

4602-5

**[MGA Entertainment]**

[universal branding]

**Packaging** $70,000
- o Objectives:
  - To establish consistent brand identity for all products for the *Style Squad* line
  - Each Style Squad package will reflect the style and personality of the individual girl
  - Packaging will reflect the edgy, fresh style
  - Packaging will be designed to draw attention on the shelf and drive consumers to purchase
  - To design and develop a hip, edgy, recognizable brand logo
  - To develop a strong complimentary tagline for the logo
- o Components:
  - One package for the individual four girls. This includes The doll as well as packaging of each of the girls second fashion
- o Pricing Includes:
  - Design and development through mechanical
  - Pricing for first doll: $25,000
  - Pricing for each additional doll: $15,000
  - Design and development of logo
  - Two to three logo concepts
  - Two tagline recommendations
  - Two client comps
    - Pricing does not include production

**Media plan** $5,000
- o Objectives:
  - To develop a comprehensive and integrated on and off-line media plan developed according to media budget for the year
- o Components:
  - To be used by agency and client as an executable plan
- o Deliverable:
  - Hard copy of media plan
- o Pricing:
  - Includes on-line, off-line media research and plan development. Also includes one client revision of plan
- o Additional costs:
  - Pricing does not include a 15% placement and tracking fee

5

**[ayzenberg]**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT _____ 143

PAGE _____ 1851

MGA 3779232

4507-6

**[MGA Entertainment]**

**[sell-in]**

The *sell-in* initiative will be based on a "teaser" campaign that will generate momentum for the line by creating a sense of mystery and allure that whets the appetites of the buyers and makes them hungry for more information. This will be accomplished by keeping the look of the girls secret until MGA is ready for the grand unveiling and introduce them to the world.

Retailer Flash Demo            $20,000

- o   Targets:
  - ▪ Retailers
- o   Objectives:
  - ▪ A fun modern, flashy teaser promo to generate excitement about the new product line
  - ▪ To instill a sense of mystery about who these dolls are and what they are all about
  - ▪ To encourage retailers to visit the tradeshow or submit an e-mail address to be notified of the "unveiling"
- o   Components:
  - ▪ Includes 10-13 dynamic self-running screens, includes a dynamic intro animation; navigational icons for ease of navigation; [skip | pause | reply | always skip]
  - ▪ The following is a breakdown of the workflow:
    - • Introduction Animation
      - o Girl one teaser
      - o Girl two teaser
      - o Girl three teaser
      - o Girl four teaser
    - • Message
    - • Call to action
    - • Contact / exit page
- o   Deliverable:
  - ▪ The final Flash promo will be under 1 MGB and delivered to the client electronically as well link to a URL where it can be accessed
- o   Pricing Includes:
  - ▪ Includes design, development, copywriting and two comps
  - ▪ Pricing includes two client copy revisions
- o   Additional costs:
  - ▪ Key art, photography and illustration approximately ($3,500-$7,000) included in estimate above, averaged to the dollar amount of $5,250

6

**[ayzenberg]**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT _____ 143

PAGE _____ 1858

MGA 3779233

4872-7

# [MGA Entertainment]

[sell-in]

- **Teaser Print Ad** $8,650
  - o Targets:
    - ▪ Retailers
  - o Objectives:
    - ▪ A catchy, spirited print ad to generate excitement about the new product line
    - ▪ To instill a sense of mystery about who these dolls are and what they are all about
    - ▪ To encourage retailers to visit the tradeshow or submit an e-mail address to be notified of the "unveiling"
    - ▪ Compliments the Flash promo
  - o Call to action:
    - ▪ View the Flash promo
  - o Components:
    - ▪ 1 page, 4-color graphics and copy (photography included)
  - o Pricing:
    - ▪ Includes two client copy revisions, two comps
    - ▪ Pricing does not include placement or promotional give-away
  - o Additional costs:
    - ▪ Key art, photography and illustration approximately ($3,500-$7,000) included in estimate above, averaged to the dollar amount of $5,250

- **Direct Mail** $3,500
  - o Targets:
    - ▪ Retailers
  - o Objectives:
    - ▪ To invite retailers to attend tradeshow
    - ▪ To generate excitement about the new product launch
    - ▪ To encourage retailers to visit the booth for the product unveiling
  - o Components:
    - ▪ Will utilize illustration assets used for the print ad and Flash promo
  - o Call to action:
    - ▪ Register for the tradeshow now
    - ▪ View our Flash promo
  - o Deliverable:
    - ▪ Includes the design, copywriting and development of a direct mail piece. possible specs; 2-sided, 4"x6", 4-color
  - o Pricing:
    - ▪ Includes two client copy revisions, 1 comp
    - ▪ Pricing does not include printing
    - ▪ Pricing does not include distribution
    - ▪ Pricing does not include incentive

7

# [ayzenberg]

CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT _____ 143 _____

PAGE _____ 1853 _____

MGA 3779234

4502-8

# [MGA Entertainment]

[sell-in]

- Posters                                                                 $5,250
    - o  Targets:
        - ▪  Retailers
    - o  Objectives:
        - ▪  Tradeshow promotional piece
        - ▪  One poster for each doll
        - ▪  Possibly a collectible poster with only one distribution of these posters for the retailers only
    - o  Deliverable:
        - ▪  One 4-color poster
    - o  Pricing Includes:
        - ▪  Includes two client copy revisions, 1 comp
        - ▪  Pricing does not include printing
        - ▪  Pricing does not include distribution
        - ▪  Pricing does not include incentive

- Tradeshow e-card                                                        $12,500
    - o  Targets:
        - ▪  Retailers
    - o  Objectives:
        - ▪  Flash announcement of product to be distributed to subscribers of trade show publications, as well as participants of trade shows
        - ▪  To generate excitement and enthusiasm for the product; establish a "push" for the product
        - ▪  Provide a link to a page within the MGA corporate site to provide further product line information

    - o  Deliverable:
        - ▪  One promotional e-card that will run a 15-20 second "short" of the Style Squad girls

    - o  Pricing Includes:
        - ▪  Includes two client copy revisions, 1 comp
        - ▪  Pricing does not include distribution

8

# [ayzenberg]

CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT _143_

PAGE _1854_          MGA 3779235

-4872-9

# [MGA Entertainment]

**[sell-through]**

Web Site Design / Development                                                 $75,000
- o  Targets:
  - ▪ Consumers: girls ages 9+
- o  Objectives:
  - ▪ To design and develop an interactive web site that promotes the Style Squad line
  - ▪ To create an environment that engages the girls in the Style Squad community
  - ▪ To build a site that drives consumers to the site to learn of new products
  - ▪ To make site navigation quick and simple
  - ▪ To allow for site expansion with new products and initiatives
- o  Components:
  - ▪ Web site design and development of approximately 50 pages. The following is a speculated breakdown:
    - • Homepage
    - • Individual product page and secondary pages to build each product's "environment" for example:
      - o Pictures of the Style Squad
      - o Style Squad by day
      - o Style Squad by night
      - o Style Squad shopping
      - o Style Squad at school
    - • 4 interactive games: one for each girl
    - • Retailer Locater – find a retailer near you
    - • Chat rooms
    - • Links – to the MGA Web site for additional products
    - • Retailer page for retailers only
- o  Pricing Includes:
  - ▪ Includes site map / architectural design
  - ▪ Includes graphic design, development, production, copywriting, editing
  - ▪ Includes two client comps and two client copy revisions
  - ▪ Cost does not include site maintenance
- o  Additional costs:
  - ▪ Key art, photography and illustration approximately ($3,500-$7,000) included in estimate above, averaged to the dollar amount of $5,250

9

# [ayzenberg]

CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT _____ 143 _____
PAGE _____ 1855 _____

MGA 3779236

6577 -10

**[MGA Entertainment]**

[sell-through]

- Interactive viral e-card           $15,000
  - o Targets:
    - Consumers
  - o Objectives:
    - A fresh, catchy promo to generate excitement about the new product line
    - Customize e card that allows consumers to dress the Style Squad and then be sent to friends
    - Turns product features of dressing the girls and customizing their hair into a viral marketing tool
    - Provide consumers a link to the Style Squad Web site
    - To drive consumers to purchase
  - o Components:
    - Includes 10-13 dynamic self-running screens, includes a dynamic intro animation; navigational icons for ease of navigation; [skip | pause | reply ] always skip]
    - The following is a breakdown of the workflow:
      - Introduction Animation
        - o Girl one e card
        - o Girl two e card
        - o Girl three e card
        - o Girl four e card
      - Message
      - Call to action
      - Contact / exit page
  - o Deliverable:
    - The final Flash promo will be under 1 MGB and delivered to the client electronically as well link to a URL where it can be accessed
  - o Pricing Includes:
    - Pricing based on building from retailer e card and utilizing components already developed for that piece
    - Includes design, development, copywriting and two comps
    - Pricing includes two client copy revisions
  - o Additional costs:
    - Key art, photography and illustration approximately ($3,500-$7,000) included in estimate above, averaged to the dollar amount of $5,250

10

**[ayzenberg]**

CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT _____ *143*

PAGE _____ *1856*

MGA 3779237

## [MGA Entertainment]

[sell-through]

- **Teaser Print Ad**                                                      $8,625
  - o Targets:
    - ▪ Consumers in target demographic: Females ages 5-12
  - o Objectives:
    - ▪ A print ad to generate excitement about the new product line
    - ▪ Engage the audience with stories of each girl; possibly giving a one line on each girl that provides insight into who she is and what she is all about
    - ▪ To drive the consumer audience to purchase a doll
  - o Messaging: "have-to-have" one
  - o Call to action:
    - ▪ Visit our Web site
  - o Components:
    - ▪ 1 page, 4-color, graphics and copy (photography included)
  - o Pricing:
    - ▪ Includes two client copy revisions, two comps
    - ▪ Pricing does not include placement or promotional give-away
  - o Additional costs:
    - ▪ Key art, photography and illustration approximately ($3,500-$7,000) included in estimate above, averaged to the dollar amount of $5,250

- **TV Spot Ad**                                                          $75,000-95,000
  - o Targets:
    - ▪ Consumers within the target market: Females ages 5-12
  - o Objectives:
    - ▪ To generate hype about the new product line
    - ▪ To drive consumers to purchase product
    - ▪ To drive consumers to the Web site
    - ▪ To compliment the print campaign
  - o Call to action:
    - ▪ Link to Web site
  - o Deliverable:
    - ▪ One 30-second spot ad
  - o Pricing:
    - ▪ Includes pre-production concept development, script writing, production coordination, scheduling, location, logistics, engineering preparation and support.
    - ▪ Includes production illustration, equipment, voice-over
    - ▪ Includes post-production editing
    - ▪ Pricing does not include placement or travel
    - ▪ Pricing may vary depending upon final concept

11

## [ayzenberg]

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT _____ 143

PAGE _____ 1857

MGA 3779238

4502-12

**[MGA Entertainment]**

[sell-through]

- Banner ads                                                                 $3,000
    o Targets:
        ▪ Consumers
    o Objectives:
        ▪ To drive consumers to the Web site
        ▪ To compliment the print campaign and generate awareness and excitement of the product launch
    o Call to action:
        ▪ Link to Web site
        ▪ Enter to win
    o Deliverable:
        ▪ 4 dynamic banner ads; up to six rotating screens; each with 3 pixel size variables
    o Pricing:
        ▪ Includes one client copy revision, one comp
        ▪ Pricing does not include placement
        ▪ Pricing does not include incentive

- Sweepstakes                                                                 TBD
    o Targets:
        ▪ Consumers in target demographic: Females ages 5-12
    o Objectives:
        ▪ A sweepstakes campaign to generate hype and excitement.
        ▪ To push the "have to have" initiative
        ▪ To drive on-line registrants
        ▪ To accelerate brand awareness
    o Messaging: "have-to-have" one
    o Call to action:
        ▪ Click to register to win
    o Components:
        ▪ 1 splash page with sweepstakes information and registration form
        ▪ 100 winners, each winner will receive one doll of the winners choice (25 winners of each doll)
    o Pricing:
        ▪ Includes page design, two client copy revisions, two comps, and development
        ▪ Pricing does not include promotional give-away

12

**[ayzenberg]**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT _143_        MGA 3779239

PAGE _1858_        ⌐⌐____-⌐

r

**[MGA Entertainment]**

[estimate]

- Universal branding
  - o Packaging & Logo/Tagline — $70,000
  - o Media plan — $5,000
- sell-in
  - o Retailer Flash demo — $20,000
  - o Teaser ad — $8,650
  - o Direct mail — $3,500
  - o Posters — $5,250
  - o Tradeshow e-card — $12,500
- sell-through
  - o Web site design/development — $75,000
  - o Consumer Interactive e card — $15,000
  - o Teaser ad — $8,625
  - o Spot ad — $95,000
  - o Banner ads — $3,000
  - o Sweepstakes — $TBD
- total — $296,525

13

**[ayzenberg]**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT _____143_____

PAGE _____1859_____

MGA 3779240

4577-14

### [MGA Entertainment]

[your team]

**eric ayzenberg, chief strategist & creative director**
Eric brings a dynamic energy level to Ayzenberg Group. Having an extensive record of achievement in implementing creative ideas that succeed for clients, Eric generates the imaginative strategies needed to make each campaign unique and powerful. Recent success stories include AOL, MSN, Microsoft, Sony, Cendant Software, Sierra Studios, and WON.net.

In 1986, Eric founded the innovative Paragon Ad &Design Agency, where he successfully applied his talents to advertising and corporate design identities for MCA/Universal, L.A.Gear, PacTel, Teletrac, MacPlay, and Interplay. Prior to Paragon, Eric designed advertising and corporate identities for National Car Rental and Ryder Truck at Chiat/Day Advertising. Before arriving in Los Angeles in 1984, Eric was an Art Director in New York with ABC, NBC, and R/Greenburg. While at NBC, he handled on-air and news promotions, as well as designing new television show previews. With ABC, Eric developed heavy-hitting promotions for ABC Sports. At R/Greenburg, he developed commercials for Bell Atlantic. Eric graduated from Pratt Institute in New York and the Art Center School of Design in Pasadena, California.

**todd elhart, associate creative director**
Todd has managed Ayzenberg projects with Microsoft, MSN, Sony, America Online, Interplay, Activision, Virgin Interactive, Novalogic, GTE Entertainment, Philips Media, NEC, Trimark Interactive, Knowledge Adventure, Xatrix Entertainment and Virtual World Entertainment. He provides the organizational backbone on many of these jobs in addition to lending a hand with his knowledge of writing, editing, and proofreading.

Before coming to Ayzenberg, Todd initially began pursuing a career in music as an audio engineer. In that role he worked with such entities as Boyz to Men, Air Supply, Brian McKnight, Stan Ridgeway, Adina Howard, the Braxtons, and Disney Music – just to name a few. Todd graduated magna cum laude from Claremont McKenna College with honors and awards in both literature and philosophy.

**jen palmieri, account services director**
Jen began her career in advertising working with the account and creative team at Rubin Postaer Interactive, helping to launch Honda's first website with a comprehensive online and offline tactical campaign.

She spent significant time with Foot Cone Belding and Lena Chow Advertising, building strategic marketing campaigns for leading HealthCare accounts, including Roche Diagnostics, Toshiba Medical, NeoPath, Genetic MicroSystems, ViroLogic, Advanced Sterilization Systems, Healtheon/WebMD, Ligand Pharmaceuticals, DAKO, Genentech, and others. Among the solutions Jen helped deliver were websites, e-mercials, product videos, online focus groups, banner ads, direct mail, print ads, collateral materials, and marketing plans for re-branding, product launch and sustaining campaigns.

Jen also started her own company, JP Ventures, specializing in interactive development and online marketing campaigns for clients like The Platinum Guild International, The

14

### [ayzenberg]

CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT ___143___

PAGE ___1860___

MGA 3779241

4502-15

**[MGA Entertainment]**

Santa Barbara Botanic Garden, and Sports Health Counseling. A graduate of UC Santa Barbara, Jen majored in Political Science.

**stuart pope, associate creative director/senior copywriter**
Stu has a wealth of experience in print, outdoor, radio, TV, point-of-purchase, direct, and Internet advertising, as well as brand identity, promotions and product packaging. A former denizen of ad agencies Grey and Lois/USA, Stu has covered the spectrum from image to retail for clients like Nissan, Microsoft, Disney, DirecTV, Lucky Food Stores, Frame-n-Lens, Merv Griffin Hotels, Auto Club of Southern California, The Rio Hotel & Casino, and California Lottery.

He has helped launch several new products and services, including the Internet Yellow Pages for US West, Edison International Field (home of Anaheim Angels baseball), Caesars' *Glory of Rome* -- the world's largest riverboat casino, and the websites for MValue.com, SweepSurf.com and Unipass Technologies. Stu received a BS in Psychology from the US Air Force Academy and an MBA from Cal State, Dominguez Hills.

**leslie goodbar, copywriter**
The opportunity to create impacting language for new technology is a challenge that Leslie undertakes with joie de vivre. While at Ayzenberg Group, Leslie has immersed herself in projects for Microsoft, Kensington, Perfect.com, GoShip.com, WON.net, and Midway Home Entertainment. In addition to her advertising and packaging work, Leslie has been integral to developing client websites, rich media e-mails, online promotions, and banners, as well as interactive Flash tours for trade shows. When Leslie is not writing, she can be found cutting the rug to '40s Big Band music.

**gary goodman, sr vp  creative services**
Gary is responsible for all creative aspects of Tykesville's content development and production. From interactive, animated stories to exciting 3D gaming environments, Gary knows how to transform a website into a compelling and robust experience that builds customer loyalty and reinforces brand identity.  He brings his nine years of Hollywood story-telling experience to the table along with an extensive knowledge of gaming technologies and online marketing.

At DreamWorks SKG, he was instrumental in the development and production of the family film PAULIE, as well as Steven Spielberg's AMISTAD and this spring's GLADIATOR.  He most recently served as the VP of Production for Wendy Finerman Productions (FORREST GUMP) at Twentieth Century Fox and as a Production Executive at Interscope Communications (JUMANJI) where he oversaw such projects as TAXI DOG with Robin Williams and SUSPICION with Drew Barrymore.  Gary began his career working in production on such projects as THE FLINTSTONES, THE LITTLE RASCALS, SPEED, THE LITTLE GIANTS and APOLLO 13. Gary holds a BBA in Marketing from the University of Texas at Austin.

CONFIDENTIAL - ATTORNEYS' EYES ONLY       EXHIBIT ___*143*___       MGA 3779242

PAGE ___*1861*___       4502-16

**[MGA Entertainment]**

[your team]

Jessica McConnell, Junior Account Executive
Jessica comes to Ayzenberg from Syracuse University, were she graduated with a degree in Business Administration/ Marketing. In a relatively short period, Jessica has become an indispensable member of our account services team responsible for high-profile projects for Microsoft. She helped launch Microsoft's Holiday 2000 POP campaign, which encompassed 28 different retailers, and over 40 different Microsoft products. She also was instrumental in developing Microsoft's Online Retailer Buying Guide, providing editing assistance and coordinating front-end and back-end aspects from start to finish. After a long hard day's work, Jessica unwinds with boxing, yoga, and dancing.

pia abbott, interface designer
Pia brings a keen creative eye to both corporate and high-tech advertising at Ayzenberg Group. She has spearheaded the visual development of many websites in the dot-com arena. Pia has supervised the visual branding for a variety of established companies and for new vertical portals including GoShip.com, Perfect.com, Admusement.com, and Kinderstart.com. She also conceived promotional and interface campaigns for MSN, Sony, Sierra, WON.net, Microsoft Sidewinder, and a wide variety of leading game companies. Prior to coming to Ayzenberg, Pia's client experience included The Johnson Cancer Center Foundation, The American Heart Association, UCLA, Ribot, Wae Publications, Sanwa Bank, LA County Arts, Martin Baxtra, Progress Lighting, and film director Tony Kaye.

Pia's computer literacy includes Adobe After Effects, Adobe Illustrator, Adobe Pagemill, Adobe Photoshop, Aldus Freehand, Macromedia Director, Macromedia Fontographer, QuarkXpress, and WordPerfect. She is a 1996 Honors graduate of the Art Center College of Design in Pasadena and has received numerous design awards.

paul finochio, designer
Since joining the Ayzenberg creative team, Paul has completed projects for Sony, MSN, Microsoft, Nexell Therapeutics, Cedant Software, WON.net and GT Interactive. Before Ayzenberg, Paul worked at US Sales Corporation for 3 years as Senior Package Designer for such accounts as Zenith, Capitol Records and Sony. When Paul is not rooting for the (one time) World-Champion Denver Broncos, he enjoys spending time with his wife Susan and their new baby. Paul is a graduate of Colorado State University with a Bachelor's Degree in Fine Arts, Graphic Design. He resides in Pasadena.

16
**[ayzenberg]**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT _143_

PAGE _1862_

MGA 3779243

4502-17

**[MGA Entertainment]**

[your team]

tad sanden, interface designer

Tad has brought reality and vision to a wide range of dot-com projects, including startanything.com and tykesville.com. A veteran of Flash and HTML, Tad is active in the interactive development channel and is highly proficient in Motion Graphics (from video to Internet projects), Flash animation, Adobe Illustrator, and Photoshop. Flash/Dreamweaver is his primary canvas. In addition to site design, Tad has been a key player in creating visual presentations aimed at the venture capital channel to raise funds for emerging dot-coms.

Tad attended the Art Center College of Design in Pasadena, where he was awarded top honors, and has been invited to the UCLA Extension Program to teach. His credits include work for Shockwave.com, Midway, Microsoft, Warner Bros., WON.net, Shutters on the Beach, and Casa del Mar.

**[ayzenberg]**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT _143_

PAGE _1863_        MGA 3779244

4502-18

**[MGA Entertainment]**

[key contacts]

eric ayzenberg
Chief Strategist, Creative Director
eric@ayzenberg.com
(626) 584-4070 Extension 11

jessica mcconnell
Jr. Account Executive
jessica@ayzenberg.com
(626) 584-4070 Extension 49

jen palmieri
Account Services Director
jen@ayzenberg.com
(626) 584-4070 Extension 32

gary goodman
Sr. VP Creative Affairs
gary@ayzenberg.com
(626) 584-4070 Extension 45

18

**[ayzenberg]**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT _____ 143

PAGE _____ 1864

MGA 3779245

4757-19

**[MGA Entertainment]**

[Name Exploration]

Style Squad
Freshmen 4

Others...
Buzz Girlz
Glam Girlz
Hip Chicks
Misfits
Gossip Gals
Pop Chicks
Funky Femmes
Glam Chicks
Fashion Foxes
Funky Bunch
Fashion Angels
Sprixies
Hip Chix
Sweet Thirteen
Candy Bratz
Hipsters
Mall Brats

[ayzenberg]

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT _____ 143
PAGE _____ 1865

MGA 3779246

4502-20

[MGA Entertainment]

[Tag Line Exploration]

A Passion for Fashion.

Urban fashion legends.

The thrill of frill.

Gang of glam.
(or)
The glam gang.

Uptown chic with downtown cool.

Urban glamour girls.

Get the look.

Gutsy glamour. Pure cool.

Cool for school.

Style to the max.

More...

Fashion friends forever.

The sassy posse.

Life of the party.

Time to shine.

The look you love.

Fab Fashion All-stars.

Looks that get looks.

Accessorize to the max.

[ayzenberg]

CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT _____ *143*

PAGE _____ *1866* *4502-21*

MGA 3779247



CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT ____143____   MGA 3779248

PAGE ____1867____   4502-22



CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT _143_   MGA 3779249

PAGE _1868_   4502-23



CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT   143   MGA 3779250

PAGE   1869   4517-24

**EXHIBIT 144**

HCMP No.4159 /2003

IN THE HIGH COURT OF THE

HONG KONG SPECIAL ADMINISTRATIVE REGION

COURT OF FIRST INSTANCE

MISCELLANEOUS PROCEEDINGS NO. 4159 OF 2003

---

IN THE MATTER of Registered Design Registration Numbers 0310011.8 and 0310747.9 in respect of a doll's head and a doll in the name of Hunglam Toys Co. Ltd.

and

IN THE MATTER of an application by MGA Entertainment Inc. to revoke Registered Design Registration Numbers 0310011.8 and 0310747.9 under Section 45 of the Registered Designs Ordinance and/or rectify the Register by deleting Registered Design Registration Numbers 0310011.8 and 0310747.9 under Section 66 of the Registered Designs Ordinance

*******************************************

This is the marked exhibit referred to in the 2nd Affirmation of Lee Shiu Cheung dated 12th November 2003.

| Exhibit Ref | Date | Description | Page No. |
|---|---|---|---|
| LSC-10 | 23.09.2003 | Copy of the written decision given by Hon. Madam Justice Chu in respect of the interlocutory injunction in HCA2687/2003 | 4 |

Before me,

Chan Wai Man
Solicitor, Hong Kong SAR,  Solicitor, Hong Kong SAR
C.L. Chow & Macksion Chan, Solicitors

EXHIBIT _____ 144

PAGE _____ 1870

Confidential - Attorney's Eyes Only

MGA 0885809

HCA 2687/2003

IN THE HIGH COURT OF THE
HONG KONG SPECIAL ADMINISTRATIVE REGION
COURT OF FIRST INSTANCE
ACTION NO. 2687 OF 2003

--------------------

BETWEEN

MGA ENTERTAINMENT INC.                    Plaintiff

and

HUNGLAM TOYS COMPANY LIMITED              Defendant

--------------------

Coram:  Hon. Madam Justice Chu, in Chambers
Date of hearing:  23 September 2003 at 10.18 am
Present:  Mr Colin Andrew Shipp, instructed by
          William W L Fan & Co., for the Plaintiff
          Miss Annie Lai, instructed by Jal N Karbhari & Co.,
          for the Defendant

--------------------

O R D E R

--------------------

COURT:  I shall give briefly the reasons for the decision this
morning.  This is an interlocutory injunction application by
the plaintiff against the defendant in respect of a claim of
infringement of copyright.  The subject matter involved is a
set of dolls marketed by the plaintiff, called the "Bratz"
dolls, and the subject matter of complaint is the dolls
marketed by the defendant under the name of "Scampz".

From the evidence filed on behalf of the plaintiff which in
fact is not challenged, the question of infringement -- or
the acts complained of are not really in issue.  What is
perhaps in issue is the question of the subsistence of
copyright.

The defendant raised a number of challenges to that.  First
of all, it is said that there is a lack of originality
because dolls bearing the features described by the
plaintiff are commonplace and can be seen or found in other
types or brands of dolls.  Secondly, the defendant also
referred to the fact that their kind of dolls are
manufactured and come about as a result of independent work.
For that purpose, the defendant's affirmation had exhibited
some drawings.  Some descriptions as to the process whereby

CRT25/23.9.2003/HMcG                1

Confidential - Attorney's Eyes Only

EXHIBIT  144  HCA2687/2003/Order

PAGE_____ 1871            MGA 0885810

the ultimate product is derived at have also been given in the affirmation.

For my part, I bear in mind that this is an interlocutory application, therefore the test is one of good arguable case.  It is no function of this court to adjudicate on the ultimate merits of the claim, likewise of the defence, but I would only make a few observations as to the evidence put forward by the defendant.  And it is this:  as I have pointed out in the course of Miss Lai's submissions, the drawings which are said to be the drawings of the eyes of the "Scampz" dolls - that is Exhibit MC11 - do not bear out the features of the eyes of what had been handed up by Mr Shipp to be the "Scampz" dolls, which the plaintiff says bears close resemblance and similarity to the set of four dolls marketed by the plaintiff.

Miss Lai, of course, has put in some explanations in the course of submissions, including the fact that the defendant has a number of designs for eyes and that "Scampz" dolls were only making use of some of these.  That may well be the case but, as I have pointed out, these are not really made out or borne out on the evidence of Miss Kwok.  It may well me that when the matter comes to trial or when the matter is developed further, further explanations are given.  But at the present, on the basis of the evidence, this is a feature that I must point out.

The other unique feature in terms of the defendant's evidence must be the conspicuous absence as to when the defendant first marketed its sets of dolls.  The significance of that had been highlighted by Mr Shipp and I do not wish to labour the point.

It's sufficient for me to say that on the evidence and on the test of good arguable case, there can be no doubt that the plaintiff has made out a case of ownership and subsistence of copyright.

Miss Lai referred to the case of Merchandising Corporation of America v Harbond as saying that makeup does not attract protection under copyright law.  In my view, that case is plainly distinguishable from the present case in so far as that case held that makeup or markings on the face are not painting and therefore do not qualify as artistic work. That is a factual matter that differs from our case.  In the present case, the makeup decorations of the dolls are clearly painting on the surface of the dolls' face and it must be a painting for that purpose and therefore comes within the category of artistic work.

In any event, that case is a decision under the old copyright law and surely the present Ordinance has moved on

CRT25/23.9.2003/MMcG                    2                    HCA2687/2003/Order

Confidential - Attorney's Eyes Only

EXHIBIT ___144___

PAGE ___1872___                    MGA 0885811

from that and is wide enough in its definition to cover a case of the present type.

It has also been submitted that features and styles do not attract copyright so that even if there is imitation, there can be no infringement. Again, I don't think the question of style arises in our present case and therefore any observations, whether academic writings or in decided cases, do not assist in this regard.

As to the submission that sketches are not designs and are not protected, again, for the reasons that Mr Shipp has outlined in his reply submission, in terms of application that is not part of our Ordinance and surely the case does not apply in the local context.

So all in all, I accept that there is a good arguable case made out on the plaintiff's claim so I move on to the question of balance of convenience. A number of points have been urged by the plaintiff as showing that the balance of convenience lies in its favour. In particular, it was pointed out that the marketing of the defendant's product has an effect on the licence fees because the exclusivity of those dolls is now being called into question. And because of that, there would also be a dilution in terms of the licence fees and it is difficult to quantify and measure it at the end of the day.

In Miss Lai's written submissions, it's been pointed out that there is no concrete evidence to substantiate the loss. But, having looked at the letters – at least from two of the customers of the plaintiff – there is, in my view, some evidence to suggest and demonstrate the kind of loss that may accrue in this regard. Although the exact extent is not there but the point is it is difficult to give an exact figure or quantification and this is where the problem lies.

Similarly, it is also difficult to ascertain what would have been the effect or loss to the plaintiff's sales because of a competing product which bears such close similarity in terms of its features and the others. In particular, in our present case, the product of the plaintiff is one which has only been marketed in the recent two years or so. That being the case, it is all the more difficult to ascertain what would have been the diminution in the plaintiff's sales.

Other matters that the plaintiff relied upon include product safety, the fact that the defendant has a small paid-up capital which therefore calls into question its ability to meet damages. Those are relevant considerations when one considers the aspect of balance of convenience.

Confidential - Attorney's Eyes Only

EXHIBIT _____ 144
PAGE _____ 1873

MGA 0885812

One other matter that the plaintiff refers to is the fact that the defendant's product is only in its early stage and therefore any loss to the defendant can either be easily quantified or is not as substantial as one may like to say.

In this regard, Miss Lai referred to the fact that the defendant had said that the "Scampz" doll accounted for 60 percent of its sale and therefore the effect of an injunction would be disastrous in that it might result in the closure of the business. That, of course, is a relevant consideration but unfortunately on the evidence filed before the court, one does not have a view as to the real extent of the impact or whether, as is suggested by counsel, because we don't see the account documents, nor do we see the sales documents of the defendant. And on this point, it is difficult for this court to speculate that it would indeed have the result submitted by counsel.

Of course, I note the point made by Mr Shipp in submission that the current attack is only on one aspect of the "Scampz" doll and so some other alterations could have been carried out and therefore wouldn't result in an entire inability to market this type of doll.

So in short, on the balance of convenience, I accept that the plaintiff has made good its case and that the convenience lies in favour of granting the conjunction. The hardship that has been put forward on behalf of the defendant is not one as would have tipped the scale in favour of the plaintiff, certainly not in terms of the quality of evidence.

For those reasons, I would grant the application of the plaintiff and there would be an order in terms of the summons with the amendments to paragraph 1A as put forward in the reply submission on behalf of the plaintiff. That would of course cover a costs order for the plaintiff's costs in the cause, subject to what submissions Miss Lai may wish to put forward.

Is there any submissions in...

MISS LAI:   I have no submissions.

COURT:   If that is the case, as I have confirmed, there would be an order in terms of the summons, with amendments to paragraph 1A.

CRT25/23.9.2003/HMcG                    4                  HCA2687/2003/Order

Confidential - Attorney's Eyes Only

EXHIBIT ____144____

PAGE ____1874____                    MGA 0885813

**EXHIBIT 145**



Circuit City Stores, Inc.
Store  44E
TORRANCE, CA
(310) 325-7211

FOR JOSN ONLY
CIRCUIT CITY STORES, INC.
BANK OF AMERICA
ACCT.#1257001036

**#446**

14:39:20  10/22/00

Sold to:
CARTER H. BRYANT

CUSTOMER COPY

Ticket
044601619136

Orig Date 10/21/00

Salesperson
H. HASSANPOUR

Trans#
044601619591

Register
03

Cashier
080067

| Item | Qty | Model | Description | Tax | Amount |
|------|-----|-------|-------------|-----|--------|
| 1 SL | 1 | MXX COMPUTER | DESKTOP COMPUTER | N | .00 |
| 2 SL | 1 | CSP Service | Extended Service | N | 289.99 |
| 3 SL | 1 | HP 6745C | DESKTOP COMPUTER | Y | 799.99 |
| 4 SL | 1 | NT FE700 | COMPUTER MONITOR | Y | 279.99 |
| 5 SL | 1 | HP PSC500 | COMPUTER PRINTER | Y | 209.99 |
| 6 SL | 1 | PAN KXFPG0 | FACSIMILES | Y | 69.99 |
| 7 SL | 1 | BLK F2A04606C | CABLES/UPS/POWER | Y | 24.99 |
| 8 RT+ | 1-BLK | F2A04606C | CABLES/UPS/POWER | Y | 24.99- |
| 9 SL | 1 | APX AD500A | DIGITAL VIDEO | Y | 119.99 |
| 10 SL | 1 | SON CFM10 | PORTABLE RADIO | Y | 29.99 |

| | |
|---|---|
| Non-Taxable | $ 289.99 |
| Total Taxable | $ 1,929.94 |
| Sales Tax | $ 134.47 |
| TOTAL PURCHASE | $ 2,034.40 |
| VSA | $ 27.05- |
| BALANCE | $ 0.00 |

**Item**

3 For Questions and Problems operating your HP 6745C
  during manufacturer warranty call 1-208-323-4663
  for assistance.
5 For Questions and Problems operating your HP PSC500
  during manufacturer warranty call 1-208-323-2551
  for assistance.
1 Computer Support Plus for the MXX COMPUTER, HP 6745C,
  NT FE700 and HP PSC500 starts  10/21/01 and expires
  10/21/04.  For repairs, call 1-800-555-4815. See Terms
  and Conditions for details.

**Return Policy**
Most merchandise may be exchanged or refunded within 30
days of purchase. Computers and related merchandise may
be exchanged or refunded within 14 days of purchase.
Computers and related merchandise that are returned opened
or in a non-factory sealed box are subject to a 15% open
box fee unless exchanged for the exact same item.
Merchandise purchased as Open Box is not subject to the 15%
open box fee.
See store for additional details.

Shop with us online at CircuitCity.com.

**This sales receipt and the accompanying terms and
  conditions constitute your SERVICE CONTRACT.

CM SERVICE 1800-888-0384   DELIVERY 1800457-0314

For repair service call: (714) 963-6267

EXHIBIT ___145___

PAGE ___1875___

ATTORNEY'S EYES
ONLY

BRYANT 00787

EXHIBIT  6  PAGE  83

**EXHIBIT 146**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12  CARTER BRYANT, an individual,         CASE NO. CV 04-9049 SGL (RNBx)

            Plaintiff,
13
                                          SECOND NOTICE OF DEPOSITION
14      vs.                               OF MGA ENTERTAINMENT, INC.
                                          PURSUANT TO FEDERAL RULE OF
15  MATTEL, INC., a Delaware              CIVIL PROCEDURE 30(B)(6)
    corporation,
16
            Defendant.                    Discovery Cut-off:  None Set
17                                        Pre-trial Conference:  None Set
                                          Trial Date:  None Set
18

19  AND CONSOLIDATED ACTIONS

20

21

22

23

24

25

26
                                      EXHIBIT ___146___
27
                                      PAGE ___1876___
28
                                           2-1

07209/2048031.1
─────────────────────────────────────────────────
        NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that on February 15, 2007 beginning on 9:30

3   a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant

4   MGA Entertainment, Inc. at the offices of Quinn Emanuel Urquhart Oliver & Hedges

5   LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017. Pursuant to Fed. R.

6   Civ. P. 30(b)(6), MGA Entertainment, Inc. shall designate one or more officers,

7   directors, managing agents or other persons who consent to testify on its behalf

8   concerning each of the topics set forth in Exhibit A hereto.

9       PLEASE TAKE FURTHER NOTICE that the deposition will take place

10  before a duly authorized notary public or other officer authorized to administer oaths at

11  depositions, and will continue from day to day, Sundays, Saturdays and legal holidays

12  excepted, until completed.

13      PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ.

14  P. 30(b)(2), the deposition will be videotaped.

15  DATED: February 1, 2007          QUINN EMANUEL URQUHART OLIVER &
16                                    HEDGES, LLP

17

18                                    By _____
19                                        Michael T. Zeller
                                          Attorneys for Mattel, Inc.
20

21

22

23

24

25

26                                    EXHIBIT _____ 146

27                                    PAGE _____ 1877

28

07209/2048031

-1-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT ____ _146_

PAGE ____ _1878_

**Exhibit A**

**EXHIBIT A**

1.      "YOU," "YOUR" or "MGA" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.      "BRYANT" means Carter Bryant, any of his current or former agents, representatives, attorneys, employees, partners, joint venturers, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.      "BRATZ" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also, previously or subsequently called) and any product or doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product or doll or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each EMBODIMENT of such doll or any portion thereof. As used herein, "product or doll or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.

4.      "DESIGN" or "DESIGNS" means any and all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, descriptions, sculptures, prototypes, models, samples, reductions to practice, developments, know-how, ideas, concepts, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the

EXHIBIT ____ 146

PAGE ____ 1879

07209/2048031.

-2-

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

5.      "EMBODIMENT" means any representation, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, reductions to practice, developments, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

6.      The DRAWINGS means those documents produced as Bates Nos. MGA000053-57,    MGA000392-395,    MGA000435-439,    MGA000455-481 MGA004606,   MGA004608,   MGA004640,   MGA005065,   MGA006423-6426, MGA006432-6436, MGA006438-06440, MGA006442-6467, and SL00016-45.

7.      "BASED ON" means copied or reproduced from, substantially similar to, based on or derived from in any manner, whether in whole or in part.

8.      "CREATED" means produced, prepared, created, authored, conceived of or reduced to practice, whether in whole or in part and whether alone or jointly with others.

9.      "IDENTIFY" or "IDENTITY" means the following:

(a)     With reference to an individual, means such individual's name, current or last known business title, current or last known business affiliation, current or last known relationship to YOU, current or last known residential and business address, and current or last known telephone number.

(b)     With reference to an entity or governmental organization, means such entity's or organization's name, present or last-known address, and present

EXHIBIT _____ 146

PAGE _____ 1880

-3-

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

07209/2048031.

or last-known telephone number and the IDENTITY of each individual who has served or participated as a contact for or on behalf of such entity or organization.

(c)     With reference to an EMBODIMENT, means the IDENTITY of the individual author(s) or creator(s) of the EMBODIMENT as well as of each other individual who contributed in any manner to the EMBODIMENT; the form, material and medium of the EMBODIMENT (*e.g.*, preliminary three-dimensional resin sculpture, final three-dimensional wax sculpture, digitized file of final three-dimensional wax sculpture, two-dimensional design drawing on paper); each title or name of the EMBODIMENT; the start and end date(s) of the EMBODIMENT's creation or preparation; and the current location of the EMBODIMENT.

10.     "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

11.     "ACTION" shall mean this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel v. Bryant, Inc.*, first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entertainment, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

12.     "DIGITAL INFORMATION" shall mean any information created or stored digitally, including but not limited to electronically, magnetically or optically.

13.     "SYSTEM" or "SYSTEMS" shall mean any computer or network of computers or other network devices that allow a two or more computers to share information and equipment, including but not limited to local area networks, wide area networks, storage area networks, client-server networks or peer-to-peer networks. The

EXHIBIT ___146___

PAGE ___1881___

-4-

07209/2048031.

use of the term "SYSTEM" or "SYSTEMS" shall also include the brand, model number, technical specifications, and capacities of the computers who are part of each such SYSTEM.

14. "REFER OR RELATE TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner.

15. "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved. Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or other versions of the DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

16. "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and

EXHIBIT ___ 146

PAGE ___ 1882

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

07209/2048031.

directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

17.    The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and *vice versa*, whenever such construction results in a broader disclosure of documents or information.

### Topics of Examination

1.    The origin, conception, creation, design, sculpting, development, engineering, rotocasting, modeling and prototyping of BRATZ and BRATZ DESIGNS CREATED prior to June 30, 2001 (regardless of when or whether such was released in any form to the public), including without limitation the timing thereof, the IDENTITY of each PERSON with knowledge thereof, the IDENTITY of each PERSON involved therein, and the nature, extent and time period(s) of each such PERSON's involvement.

2.    The circumstances under which BRATZ or any BRATZ DESIGN first came to YOUR attention, including without limitation the timing, method and manner thereof and the IDENTITY of each PERSON with knowledge thereof.

3.    The identity of each doll, product, work or item produced, developed, manufactured, licensed, sold or offered for sale by or for YOU or on YOUR behalf that was BASED ON any BRATZ DESIGN which BRYANT CREATED.

4.    To the extent not covered by Topic 3, each EMBODIMENT of any doll, doll accessory or toy that BRYANT CREATED prior to June 30, 2001.

5.    The work, activities and/or services that BRYANT performed for or with YOU or on YOUR behalf prior to June 30, 2001.

EXHIBIT _____ 140

-6-    PAGE _____ 1883

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

07209/2048031.

6.    The origin, conception and creation of DESIGNS that BRYANT CREATED prior to June 30, 2001 and in which YOU claim to have, or have ever claimed to have, any right, title or interest (whether in whole or in part).

7.    The identity of, and the design, development, sculpting, development, engineering, rotocasting, modeling, prototyping and first sale of, any doll, product, work or item that has been produced, developed, manufactured, licensed, sold or offered for sale by, for or on behalf of YOU and that was BASED ON any DESIGN referenced in Topic 6.

8.    Each EMBODIMENT of BRATZ that was CREATED prior to June 30, 2001 or that was at any time BASED ON any BRATZ DESIGN which was CREATED prior to June 30, 2001.

9.    The DRAWINGS, including without limitation the authorship, creation, dissemination and use thereof and the source, meaning, authenticity and timing of any dates thereon.

10.    The IDENTITY of each vendor or third party who performed or contributed, or who was considered, solicited, requested, proposed or contemplated by YOU or BRYANT to perform or contribute, any activities, work or services in connection with BRATZ or BRATZ DESIGNS prior to June 30, 2001, YOUR COMMUNICATIONS therewith, and the nature, extent and timing of such activities, work or services.

11.    The exhibition, or proposed, offered, contemplated or requested exhibition, of BRATZ or any BRATZ DESIGN to any third party prior to June 30, 2001, including without limitation each instance in which BRATZ or any BRATZ DESIGN was marketed, offered for sale, pitched, shown or disclosed to, or otherwise discussed with or communicated to, any retailer, wholesaler or distributor and the DOCUMENTS that REFER OR RELATE thereto.

12.    The actual, proposed, requested or contemplated manufacture, fabrication or tooling (including the production of molds) of BRATZ, including without

1 | limitation the timing thereof and the IDENTITY of each manufacturer and potential

2 | manufacturer used, proposed or considered.

3 |      13.   COMMUNICATIONS prior to June 30, 2001 between YOU and

4 | any manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or

5 | potential manufacturer, distributor, wholesaler or retailer, that REFER OR RELATE

6 | TO BRATZ or any BRATZ DESIGN.

7 |      14.   When and where BRATZ was first manufactured, shipped,

8 | distributed and sold, and the IDENTITIES and roles of PERSONS involved therein.

9 |      15.   The licensing, including without limitation the proposed or

10 | requested licensing, of BRATZ or any BRATZ DESIGN prior to December 31, 2001,

11 | including without limitation the timing thereof, the IDENTITY of each such licensee or

12 | proposed or requested licensee and the product(s) or proposed product(s) involved.

13 |      16.   COMMUNICATIONS between YOU and BRYANT prior to

14 | January 1, 2001, including without limitation the content, means and timing of such

15 | COMMUNICATIONS, the IDENTITY of the PERSONS who were parties thereto and

16 | the DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

17 |      17.   COMMUNICATIONS that BRYANT made for YOU or on YOUR

18 | behalf with any PERSON other than YOU that REFER OR RELATE TO BRATZ prior

19 | to June 30, 2001.

20 |      18.   YOUR agreements and contracts with BRYANT, including without

21 | limitation the timing thereof, the negotiations, drafts and COMMUNICATIONS that

22 | REFER OR RELATE thereto, and any actual or proposed amendments thereto.

23 |      19.   Each agreement or contract between YOU and any PERSON other

24 | than BRYANT that REFERS OR RELATES TO BRATZ or BRATZ DESIGNS that

25 | REFERS OR RELATES to the time period prior to December 31, 2001 (regardless of

26 | when such agreement or contract was negotiated or executed), including without

27 | limitation the timing thereof, the negotiations, drafts and COMMUNICATIONS that

28 | REFER OR RELATE thereto, and any actual or proposed amendments thereto.

-8-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT _146_

PAGE _1885_

1           20.    YOUR knowledge, prior to April 29, 2004, of BRYANT's contracts

2    and agreements with, and his obligations to, MATTEL.

3           21.    YOUR knowledge of, and access to, non-public MATTEL DIVA

4    STARZ project information and DESIGNS prior to June 30, 2001.

5           22.    The payment of money or anything of value by or for YOU or on

6    YOUR behalf that has been made to, for or on behalf of BRYANT (a) for work,

7    services or activities performed by BRYANT prior to January 1, 2001 (regardless of

8    when such payment was actually made), (b) for DESIGNS CREATED by BRYANT

9    prior to January 1, 2001 (regardless of when such payment was actually made) or (c) in

10   connection with BRATZ or any BRATZ DESIGN at any time, including without

11   limitation the timing, manner and amount(s) thereof and the reasons therefor.

12          23.    The payment of royalties to, for or on behalf of BRYANT made by

13   or for YOU or on YOUR behalf, including the timing, manner and amounts of such

14   payments and the reasons therefor.

15          24.    Any indemnification and fee arrangement that YOU and/or

16   BRYANT has sought, proposed, requested or obtained in connection with this

17   ACTION.

18          25.    YOUR revenues and profits from BRATZ, including without

19   limitation YOUR gross and net profits, and YOUR costs associated therewith.

20          26.    YOUR net worth.

21          27.    The payment of money or anything of value that YOU have made or

22   offered to make to, for or on behalf of Elise Cloonan, or that has been requested, sought

23   or received by, for or on behalf of Elise Cloonan, and the timing, manner, amount(s)

24   and reasons therefor.

25          28.    COMMUNICATIONS between YOU and Elise Cloonan that

26   REFER OR RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including

27   the DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

28

1        29.    COMMUNICATIONS made by, for or on behalf of YOU, whether

2    directly or indirectly, with Anna Rhee, including without limitation since February

3    2005 (but not including any such COMMUNICATIONS with her legal counsel).

4        30.    COMMUNICATIONS between YOU and Veronica Marlow,

5    Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), Sarah

6    Halpern, Steve Linker, Liz Hogan and/or Jesse Ramirez that REFER OR RELATE TO

7    BRYANT, MATTEL, BRATZ and/or Anna Rhee, including without limitation all

8    DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

9        31.    The IDENTITY of each PERSON who, at any time since January 1,

10   1998, has performed any work or services for, by or on behalf of YOU while such

11   PERSON was employed by MATTEL, the nature and timing of each such PERSON's

12   work or services and the amount(s) paid by YOU to each such PERSON.

13       32.    COMMUNICATIONS between YOU and BRYANT that REFER

14   OR RELATE TO MATTEL or REFER OR RELATE TO any DOCUMENT that was

15   prepared, authored or created by MATTEL that BRYANT has ever provided to, shown,

16   described to, communicated to or disclosed in any manner to YOU.

17       33.    The applications for registration and the registrations for copyright,

18   patent, trademark or any other right that REFER OR RELATE TO BRATZ or BRATZ

19   DESIGNS sought, made or obtained by, for or on behalf of YOU or BRYANT,

20   including without limitation COMMUNICATIONS pertaining thereto.

21       34.    Other than those previously filed and served in this ACTION or in

22   which Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony,

23   transcripts, declarations, affidavits and other sworn written statements of any other type

24   by or from YOU or made on YOUR behalf that REFER OR RELATE TO BRATZ

25   THAT REFER OR RELATE TO the time period prior to June 30, 2001 (regardless of

26   when such testimony or sworn statement was taken, given, signed, made or filed).

27       35.    COMMUNICATIONS between YOU and Universal Commerce

28   Corp., Ltd. prior to June 30, 2001.

EXHIBIT _____ 146
_____ 1887

07209/2048031.

-10-

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

36.   The source, meaning and authenticity of SL00013-14, including without limitation the timing of its creation and the handwriting thereon.

37.   YOUR corporate structure since January 1, 1999, including without limitation the relationship between MGA Entertainment, Inc. and any of its predecessors, affiliates and subsidiaries.

38.   The retention or destruction policies, procedures and practices for YOUR DOCUMENTS and DIGITAL INFORMATION that REFER OR RELATE TO BRATZ since January 1, 1999, including without limitation the retention or destruction of DOCUMENTS and DIGITAL INFORMATION when (a) hardware is replaced, modified or upgraded and (b) when PERSONS leave YOUR employ.

39.   The preservation, collection, destruction, removal, transfer, loss or impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection with the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

40.   The preservation, collection, destruction, removal, transfer, loss or impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1, 1999 that REFER OR RELATE TO MATTEL (including without limitation to any MATTEL product, plan or information) that YOU received in any manner from any PERSON who was at the time an employee of MATTEL or who had previously been an employee of MATTEL.

41.   The testing of or sampling from DOCUMENTS that REFER OR RELATE TO BRATZ or BRYANT, including without limitation such testing or sampling in connection with any ink, paper or chemical analysis performed or attempted to be performed to date, any DOCUMENTS that REFER OR RELATE thereto and all results and reports relating thereto.

42.   YOUR DIGITAL INFORMATION data backup policies, practices and procedures from January 1, 1999 to the present, including without limitation the location and specifications of any media used to preserve YOUR DIGITAL

EXHIBIT _____ 146

-11-   PAGE _____ 1888

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

07209/2048031.

1 INFORMATION and the software, if any, used to preserve YOUR DIGITAL
2 INFORMATION.

3      43.    The DIGITAL INFORMATION SYSTEMS and the application
4 software that YOU have used since January 1, 1999 that REFER OR RELATE TO
5 design, development, planning, inventory, manufacturing, sales, shipping and
6 accounting, including without limitation the common or shared storage for such
7 DIGITAL INFORMATION SYSTEMS, remote access of such DIGITAL
8 INFORMATION SYSTEMS, and any changes, modifications or upgrades to such
9 DIGITAL INFORMATION SYSTEMS or application software.

10      44.    The IDENTITY of PERSONS, including without limitation
11 vendors, who since January 1, 1999 have been responsible for or supported YOUR
12 DIGITAL INFORMATION SYSTEMS, including without limitation the IDENTITY of
13 such PERSON who serviced or provided hardware for YOUR DIGITAL
14 INFORMATION SYSTEMS, hosted, stored, archived or maintained YOUR DIGITAL
15 INFORMATION, including but not limited to internet service providers, and provided
16 analytical, training or implementation services with respect to YOUR DIGITAL
17 INFORMATION SYSTEMS.

18      45.    The electronic messaging SYSTEMS used by YOUR employees
19 within the scope of their employment between January 1, 1999 and the present,
20 including but not limited to electronic mail, instant messenger, telephone or voice-mail,
21 and the routing of such electronic messages to, from or within MGA.

22      46.    YOUR policies, practices and procedures regarding the use of
23 transportable media that contain or are capable of containing DIGITAL
24 INFORMATION, including but not limited to floppy discs, compact discs, DVDs, USB
25 drives, portable hard drives, digital cameras and personal digital assistants.

26

27                       EXHIBIT ____ *146*

28                                     *1889*

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On February 1, 2007, I served true copies of the following document(s) described as **SECOND NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)** on the parties in this action as follows:

**BY MAIL TO:**

Keith A. Jacoby, Esq.
Littler Mendelson
2049 Century Park East, 5th Floor
Los Angeles, CA 90067-3107
Telephone: (310) 553-0308
Facsimile: (310) 553-5583

I enclosed the foregoing as well as a **COURTESY COPY** into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. (Courtesy copy

**BY PERSONAL SERVICE ON:**

Diana M. Torres, Esq.
O'Melveney & Meyers
400 So. Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
**Facsimile: (213) 430-6407**

I delivered such envelope(s) **(COURTESY COPY INCLUDED)** by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 1, 2007, at Los Angeles, California.

_Mia Albert_
Mia Albert

_Dave Quintana_
Dave Quintana

EXHIBIT _146_

PAGE _1890_

07209/2049386.1

**EXHIBIT 147**

RECEIVED

APR 3 0 2007

1   DALE M. CENDALI (admitted *pro hac vice*)
    DIANA M. TORRES (S.B. #162284)
2   JAMES P. JENAL (S.B. # 180190)
    O'MELVENY & MYERS LLP
3   400 South Hope Street
    Los Angeles, CA 90071-2899
4   Telephone: (213) 430-6000
    Facsimile: (213) 430-6407
5   Email: jjenal@omm.com

6
    PATRICIA GLASER (S.B. #55668)
7   CHRISTENSEN, GLASER, FINK, JACOBS,
    WEIL & SHAPIRO, LLP
8   10250 Constellation Boulevard, 19th Floor
    Los Angeles, CA 90067
9   Telephone: (310) 553-3000
    Facsimile: (310) 557-9815
10
    Attorneys for MGA Entertainment, Inc.
11

12

13

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

                     EASTERN DIVISION
16

17   CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)
                                          (consolidated with CV 04-9059 & 05-2727)
18              Plaintiff,
                                          **DISCOVERY MATTER**
19        v.
                                          **MGA ENTERTAINMENT INC.'S**
20   MATTEL, INC., a Delaware             **OPPOSITION TO MATTEL, INC.'S**
     Corporation,                         **MOTION TO COMPEL MGA TO**
                                          **PRODUCE WITNESSES FOR**
21              Defendant.                **DEPOSITION PURSUANT TO RULE**
                                          **30(B)(6) AND FOR SANCTIONS**
22
                                          [To be heard by Discovery Master Hon.
23                                        Edward Infante (Ret.) Pursuant to the
                                          Court's Order of December 6, 2006]
24
25   CONSOLIDATED WITH                    Hearing Date:   T.B.D.
     MATTEL, INC. v. BRYANT and           Time:          T.B.D.
26   MGA ENTERTAINMENT, INC. v.           Location:      T.B.D.
     MATTEL, INC.
27

28

    !A2:829382.1

EXHIBIT _____147_____

PAGE _____1891_____

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................1

II.  FACTUAL BACKGROUND................................................................1

III.  ARGUMENT.......................................................................................3

    A.   Mattel's Motion To Compel Should Be Denied As Moot Because MGA Has Already Designated Or Offered To Designate Witnesses For 46 of Mattel's 54 Topics Of Deposition Testimony ................................................................4

    B.   Mattel's Motion To Compel For The Few Remaining Topics Should Also Be Denied .........................................................5

        1.   Mattel's Motion to Compel on Topic 24, Regarding Any Fee Agreements Between MGA And Bryant, Seeks Information That is Privileged And Should Be Denied..............5

        2.   Mattel's Motion to Compel on Topic 25, Related to MGA's Revenue And Profit Information, Should Also Be Denied .........................................................................6

        3.   Mattel's Motion to Compel Testimony on MGA's Net Worth and Expert Analysis (Topics 26 and 41) Should Be Denied As Premature Because It Seeks Testimony That is Properly The Subject of Expert Discovery ...............................7

        4.   Mattel's Motion to Compel on Topics 31 and 33, Related to Prior Work By Unidentified Individuals and Patents, Should Be Denied Because Such Information is Not Relevant To This Action ...........................................10

        5.   Mattel's Motion to Compel Testimony on Topic 34, Which Relates to Prior Testimony of Unidentified Individuals, Should Also Be Denied........................................11

    C.   Mattel's Arguments Regarding Application of Section 2019.210 Are Improper As This Issue Is Currently Pending Before Judge Larson ..........................................................................12

    D.   Mattel's Requests For Sanctions Should Be Denied..........................14

IV.  CONCLUSION...................................................................................14

EXHIBIT _____ 147

PAGE _____ 1892

# TABLE OF AUTHORITIES

**Page**

## CASES

*Advanced Modular Sputtering, Inc. v. Superior Court,*
132 Cal. App. 4th 826 (2d Dist. 2005)................................................. 13

*Cobb v. Superior Court,*
99 Cal. App. 3d 543 (1980) ............................................................8

*Computer Economics Inc. v. Gartner Group Inc.,*
50 F. Supp. 2d 980 (S.D. Cal. 1999)........................................... 13, 14

*Covington v. Semones,*
2007 WL 1052460 (W.D. Va. 2007) ............................................... 12

*Diodes, Inc. v. Franzen et al.,*
260 Cal. App. 2d 244 (2d Dist. 1968)............................................. 13

*Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc,*
2007 WL 273949 (E.D. Cal. 2007).................................................. 13

*KL Group v. Case, Kay & Lynch*
829 F.2d 909 (9th Cir. 1987)...........................................................6

*Rupe v. Fourman,*
532 F. Supp. 344 (S.D. Ohio 1981) ...................................................8

*Star Editorial, Inc. v. U.S. Dist. Ct. for the Central Dist. of California,*
7 F. 3d 856 (9th Cir. 1993)...............................................................6

*Vermont Microsystems, Inc. v. Autodesk, Inc.,*
88 F.3d 142 (2d Cir. 1996)............................................................. 13

## STATUTES

Federal Rule of Civil Procedure 26(a)(2)(C) ..........................................9

Cal. Bus. & Prof. Code § 6149 ..........................................................6

Cal. Civ. Code § 3295(c)..................................................................8

Cal. Code Civ. Proc. § 2019.210...................................................... 13

## RULES

Federal Rule of Civil Procedure 26(a)(2)(C) ....................................... 10

Federal Rule of Evidence 501 ............................................................7

EXHIBIT ___147___

PAGE ___1893___

## INTRODUCTION

Mattel, Inc.'s ("Mattel") 80-page motion and approximately 575 pages of accompanying declarations and exhibits, is an attempt to give the misleading impression to the Court, through volume, rather than substance, that MGA Entertainment, Inc. ("MGA") is refusing to offer witnesses in response to Mattel's overreaching 30(b)(6) notices. Contrary to Mattel's insinuation, however, MGA has designated and provided deposition dates for all but a few objectionable topics on which the parties disagree, or where Mattel had agreed to provide additional information so that MGA could designate an appropriate witness. When MGA pointed this out to Mattel and asked Mattel to withdraw its motion as to everything but the few topics on which the parties genuinely disagree, so as to avoid burdening the Court with these issues, however, Mattel refused.

For the reasons discussed herein, Mattel's motion to compel and for sanctions should be denied.

## FACTUAL BACKGROUND

On March 15 and 16, 2007, counsel for MGA met and conferred with Mattel regarding Mattel's First Rule 30(b)(6) Notice ("First Notice") and Second Rule 30(b)(6) Notices ("Second Notice") of Deposition. During the conference of counsel MGA attempted to reach agreement with regard to the topics the parties disagreed on, as well as to seek clarification on issues related to various other topics. (*See* Declaration of Yvonne L. Garcia ("Garcia Decl.") filed concurrently, ¶ 2.) MGA repeatedly requested that Mattel consider the concerns raised by MGA, but Mattel, even with respect to the issues that it had explicitly agreed to contemplate further, never responded. (*Id.* ¶ 6.)

Thereafter, on March 21, 2007, the parties discussed the upcoming deposition of Paula Garcia. In particular, MGA informed Mattel that very few documents had been produced by Mattel related to work Mattel claims Ms. Garcia

LA2:829382.1

- 1 -

EXHIBIT ___147___

PAGE ___1894___

1    did while at Mattel in connection with "Diva Starz," and that MGA has not seen

2    any such documents other than a few produced in unrelated litigation.  (*See*

3    Declaration of Diana M. Torres ("Torres Decl.") filed concurrently, ¶ 2.)  MGA

4    also stated that although the Protective Order in this case allows the parties to show

5    a witness any document that she would have seen in the ordinary course of

6    business, many of the "Diva Starz" documents produced by Mattel were drawings

7    marked "Attorney's Eyes Only" and did not indicate to whom they were circulated.

8    Thus, MGA could not properly prepare Ms. Garcia for her deposition with regard to

9    this topic.  (*Id.*)  Mattel, thus volunteered to produce any "Diva Starz" documents

10   reflecting work by Ms. Garcia and to identify the documents that Mattel contends

11   Ms. Garcia saw or otherwise had access to so that MGA could prepare her for

12   deposition.  (*Id.*)

13         Thereafter, on April 5, 2007, MGA sent a letter to Mattel in follow up to the

14   conversation between the parties on March 21.  MGA again inquired as to Mattel's

15   agreement to identify documents it contends Ms. Garcia saw or to which she had

16   access at Mattel related to "Diva Starz," as Mattel had not yet produced or

17   identified such additional documents.  (*Id.* ¶ 3 & Ex. 1.)  MGA also requested that

18   the parties move Ms. Garcia's deposition to some time during the week of May 9 -

19   May 17, 2007, because her current deposition date posed a conflict for Bryant's

20   counsel.  (*Id.*)  MGA also noted that this would allow Mattel further time to provide

21   the documents or Bates numbers for documents related to "Diva Starz" as it had

22   previously agreed.  (*Id.*)  Mattel thereafter disputed that it had agreed to identify the

23   documents it contends Ms. Garcia saw or had access to at Mattel related to "Diva

24   Starz," but on April 12, 2007, the date on which Ms. Garcia's deposition was

25   previously scheduled, Mattel agreed to allow MGA to show Ms. Garcia any of the

26   documents produced by Mattel related to "Diva Starz" in preparing her for

27   deposition.  (*Id.* ¶¶ 4-5 & Exs. 2 & 3.)

28         During the meeting on April 12, MGA and Mattel also conferred regarding

LA2:829382.1                         - 2 -

EXHIBIT _____ *147*

PAGE _____ *1895*

1   MGA's designation of witnesses in response to Mattel's First and Second Notices.

2   In particular, MGA's counsel informed Mattel that a letter had already been drafted

3   providing witness designations with respect to the majority of categories in Mattel's

4   Notices. (*Id.* ¶ 6.) MGA thus asked Mattel to notify MGA if the letter sent to

5   Mattel the following morning designating its witnesses was inadequate and Mattel

6   needed a further response before filing a motion. (*Id.*) The following morning,

7   April 13, 2007, MGA provided Mattel with designees on the majority of topics

8   Mattel had noticed for deposition and indicated that it would be designating prior

9   deposition testimony for a few other categories, as the parties agreed. (*Id.* ¶ 7 &

10   Ex. 4.) (Pursuant to the Discovery Master's order, the date for designating prior

11   testimony is not until May 15, 2007). In addition, MGA indicated that it would

12   notify Mattel the following business day of the identities of any remaining

13   designees. (*Id.*) In response, Mattel filed the instant motion, as if none of the meet

14   and confer process had ever occurred.

15       Thereafter, on Monday, April 16, 2007, MGA sent another letter to Mattel,

16   with a small number of additional designations for the topics in Mattel's Second

17   Notice on which the parties agreed, and provided deposition dates for the witnesses

18   for which no dates had previously been offered. (*Id.* ¶ 8 & Ex. 5.) MGA also

19   offered to designate Ms. Garcia as to the remaining topics in Mattel's First Notice

20   and to produce Ms. Garcia for two days of deposition, if Mattel agreed to allow

21   MGA to depose one of its similarly situated 30(b)(6) designees. (*Id.* ¶ 8, Ex. 5.)

22   Believing the matter to now be moot, MGA asked Mattel to withdraw its motion as

23   to the topics for which it had designated a witness, so as to avoid burdening the

24   Court. Mattel refused. (*Id.* ¶ 8 & Ex. 6.)

25   **ARGUMENT**

26       Contrary to Mattel's motion, MGA has already designated witnesses for all

27   but a few topics on which the parties disagree, or on which MGA has been awaiting

28   clarification from Mattel to enable MGA to designate an appropriate witness. For

LA2:829382.1                         - 3 -

EXHIBIT _____ 147

PAGE _____ 1896

the reasons set forth below, Mattel's motion to compel should be denied.

**A.    Mattel's Motion To Compel Should Be Denied As Moot Because MGA Has Already Designated Or Offered To Designate Witnesses For 46 Of Mattel's 54 Topics Of Deposition Testimony**

As Mattel is well aware, MGA designated or offered to designate witnesses and provide deposition dates for all eight topics noticed in Mattel's First Notice and all but a few of the 46 topics in Mattel's Second Notice on which the parties disagree or where MGA was waiting for Mattel to provide clarification.

On the Morning of Friday, April 13, 2007, prior to Mattel filing its 80-page motion, MGA provided Mattel with designees on the majority of topics Mattel had noticed for deposition. In particular, MGA designated witnesses on topic numbers: 1-8, 10, 12-15, 22-23, 29-30, 36, 38-40 and 42-46. MGA also stated that it would designate prior testimony as to a variety of topics, including: 9, 11, 16-18, 20 and 35. In addition, MGA stated that it would notify Mattel by Monday, April 16, 2007, who, if anyone, MGA would be designating for the remaining topics, as well as whether Ms. Garcia would be designated on the remaining topics set forth in Mattel's First Notice. (*See* Torres Decl. ¶ 7 & Ex. 4.)

The following Monday, as promised, MGA designated witnesses and provided deposition dates for all of the remaining topics on which the parties agreed. In particular, MGA offered to designate Ms. Garcia on the remaining topics in Mattel's First Notice, subject to an agreement with respect to the amount of time for the deposition, and designated several witnesses on the remaining topics in Mattel's Second Notice, including topics: 19, 21, 25,[1] 27-28, 33,[2] and 37. MGA

---

[1] MGA designated Eric Villete as MGA's 30(b)(6) witness for topic number 25 for revenues and costs from "Bratz" prior to December 31, 2001. With regard to MGA's profits from "Bratz," MGA stated that such information has not yet been calculated and is a subject of expert testimony, not percipient witness testimony. Additionally, with regard to MGA's revenues or costs for "Bratz" after December 31, 2001, MGA stated that this topic is premature and requested to meet and confer to negotiate the timing of questioning as to this subject, which Mattel itself agreed was appropriate during the meet and confer. (*See* Torres Decl., ¶ 8 & Ex. 5).

[2] MGA designated Bryan Armstrong as its 30(b)(6) witness for topic 33 as to trademarks

LA2:829382.1                                    - 4 -

EXHIBIT ___ 147

PAGE ___ 1897

1   further stated that it would be designating prior testimony for topic 32. (*Id.*)

2   Finally, MGA provided deposition dates for the witnesses it had designated for

3   Mattel's First and Second Notices, to the extent they had not been provided

4   previously. (*Id.*) The only topics on which MGA declined to designate a witness

5   were Topics 24, 26, 31, 34 and 41.

6       Although MGA had already designated witnesses as to the vast majority of

7   Mattel's topics, and had stated that it would provide additional designees the

8   following business day, Mattel nonetheless filed the instant motion, claiming that

9   MGA had refused wholesale to provide witnesses for deposition. Moreover, even

10  though MGA provided additional designations and dates the following business

11  day, Mattel refused to withdraw any portion of its motion.

12      In sum, of the 54 topics noticed by Mattel, the only topics as to which no

13  witness has been designated and no dates have been offered are topics 24, 26, 31,

14  34 and 41. Accordingly, with respect to the topics for which MGA has designated

15  a witness and provided dates for deposition, Mattel's motion to compel is improper

16  and should be denied as moot.

17  **B.**    **Mattel's Motion To Compel For The Few Remaining Topics**

18          **Should Also Be Denied**

19      The remaining topics for which MGA has not agreed to provide witnesses

20  seek testimony that is privileged, not relevant to the present litigation, or is properly

21  the subject of expert testimony and is thus premature. Accordingly, Mattel's

22  motion to compel should be denied.

23          **1.**    **Mattel's Motion to Compel on Topic 24, Regarding Any Fee**

24               **Agreements Between MGA And Bryant, Seeks Information**

             **That is Privileged And Should Be Denied**

25      Mattel's Topic 24 seeks testimony related to any indemnification or fee

26  arrangements between MGA and Bryant. In support of its request, Mattel argues

27

28  and copyrights only. (*Id.*)

LA2:829382.1

-5-

EXHIBIT ___147___

PAGE ___1898___

1  that such information is relevant to show bias, and that the Discovery Master

2  already determined such information was relevant. As this Court is well aware,

3  Bryant was ordered to produce all *non-privileged* documents related to its fee

4  arrangements.[3] As MGA has repeatedly informed Mattel, the only non-privileged

5  agreement responsive to Topic 24 is the original contract between Bryant and

6  MGA, signed on October 4, 2000, and dated "as of" September 18, 2000. Notably,

7  MGA has already stated that it intends to designate prior deposition testimony for

8  Topic 18, which relates to Bryant's agreements and contracts with MGA. Bryant's

9  fee agreements, however, are privileged under California law, which is applicable

10  to this diversity action.[4] Moreover, such information is not relevant to any claim or

11  defense in this litigation and has no bearing on any potential "bias" because there is

12  no dispute that Bryant's interests in this case are aligned with those of MGA, and

13  that Bryant is "biased" in that sense. In fact, as MGA previously informed the

14  Discovery Master, MGA and Bryant previously offered to stipulate to that "bias."[5]

15  Accordingly, Mattel's motion to compel as to Topic 24 should be denied.

16      **2.      Mattel's Motion to Compel on Topic 25, Related to MGA's**

17             **Revenue And Profit Information, Should Also Be Denied**

18      Mattel's motion to compel designation of a witness for Topic 25 concerning

19  MGA's revenues and profits is surprising given that Mattel and MGA already

20  agreed to postpone designation for that topic until a later date. Mattel's instant

21  motion is an attempt to go back on that agreement. During the conference of

22

23  [3] *See* Order Granting Mattel's Motion to Compel Production of Documents, dated January 25, 2007, at 12.

24  [4] *See* Cal. Bus. & Prof. Code § 6149; *Star Editorial, Inc. v. U.S. Dist. Ct. for the Central*

25  *Dist. of California*, 7 F. 3d 856, 859 (9th Cir. 1993) (citing Federal Rule of Evidence 501 for the proposition that state law on privilege applied where a state law action was removed to federal court based on diversity of citizenship); *KL Group v. Case, Kay &*

26  *Lynch*, 829 F.2d 909, 918 (9th Cir. 1987) ("The availability of the attorney-client privilege in a diversity case is governed by state law.")

27  [5] *See* Declaration of Diana M. Torres filed in Support of MGA's Opposition to Mattel's Motion to Compel Production of Documents and Interrogatory Answers, dated February

28  20, 2007, ¶ 14.

EXHIBIT _____ 147

PAGE _____ 1899

1     counsel on March 15 and 16, 2007, MGA explained that it has compiled revenue

2     and profit information regarding first-generation "Bratz," but that it has yet to

3     compile such information regarding the other products at issue in the litigation

4     because MGA does not keep such information in the normal course of business.

5     (*See* Garcia Decl. ¶ 3.) MGA assured Mattel, however, that it is currently in the

6     process of compiling the remaining revenue and profit information. (*Id.*) MGA

7     offered to designate a witness to testify regarding the revenue and profit

8     information for first-generation "Bratz," and then designate a witness to testify

9     regarding the revenue and profit information for subsequent products once that

10     information became available. (*Id.*) Mattel declined MGA's proposal, but agreed

11     instead to allow MGA to designate a witness for Topic 25 at a later date. (*Id.*)

12        Now, after MGA has already relied upon Mattel's representations during the

13     meet and confer, Mattel asks the Discovery Master to compel MGA to designate a

14     witness for Topic 25, while failing to mention the agreement previously reached.

15     Mattel's decision to move on this topic, if granted, would render moot the entire

16     meet and confer process. Mattel should not be rewarded for this tactic and its

17     motion as to Topic 25 should be denied.

18        **3.**     **Mattel's Motion to Compel Testimony on MGA's Net Worth**

19            **and Expert Analysis (Topics 26 and 41) Should Be Denied**

               **As Premature Because It Seeks Testimony That is Properly**

20            **The Subject of Expert Discovery**

21        Mattel argues that MGA should be compelled to produce witnesses to testify

22     as to topics that are properly the subject of expert discovery, and on which Mattel

23     has itself refused to provide discovery on the grounds that such discovery is

24     premature. Mattel should not be allowed to have it both ways.

25        Mattel first argues that MGA should be compelled to designate a witness for

26     Topic 26, which seeks testimony as to MGA's net worth. In support of its

27     argument, Mattel claims that information related to MGA's net worth is relevant to

28

EXHIBIT _____ 147

PAGE _____ 1900

1  its claim for punitive damages. Mattel's request is clearly premature. As this Court

2  is no doubt aware, the ownership phase of this case is set to go to trial in February

3  2008, the outcome of which the District Court has already indicated will likely

4  affect the contours of this case.[6] Notably, Mattel has not asserted a claim for

5  punitive damages against MGA for its claims based on Bryant's alleged breach of

6  contract, breach of fiduciary duty and breach of the duty of loyalty. Rather,

7  Mattel's claim for punitive damages is only relevant to the second phase of the

8  litigation between the parties, which is scheduled for trial in July 2008. Similar to

9  cases where a court orders bifurcation, requiring MGA to designate a witness

10  regarding its net worth at this stage of the litigation is premature.[7] There will be

11  ample time after the determination as to ownership of "Bratz" in the first trial for

12  Mattel to take discovery on MGA's net worth.

13      Moreover, MGA is a private company and has no reporting requirements

14  which would require it to gather and disclose information on its net worth, and does

15  not compile such information in the ordinary course of business. Because MGA

16  does not calculate its net worth in the ordinary course of business, it does not know

17  its net worth and thus has no percipient witness who can testify on this topic. *If*

18  MGA decides to calculate its net worth, it will do so *only* in connection with expert

19  discovery, for which the time has not yet arrived. Accordingly, Mattel's motion to

20  compel MGA to produce a witness to testify as to its net worth is premature and

21

22  [6] Torres Decl., ¶ 9, Ex. 7 (Order Regarding Mattel's Motion For Leave to Amend, dated January 12, 2007, at 3).

23  [7] *See Rupe v. Fourman*, 532 F. Supp. 344, 350-51 (S.D. Ohio 1981) (holding that discovery on punitive damages was premature and unnecessary until liability was

24  established); *see also Cobb v. Superior Court*, 99 Cal. App. 3d 543, 548-50 (1980) (explaining that "[i]t would seldom seem necessary to the integrity of discovery

25  proceedings that extensive discovery be permitted over objection into financial affairs of a defendant ahead of discovery on the merits of the underlying cause of action" and that in

26  such cases, the court should "consider the advisability of requiring a prima facie showing into the right to punitive damages."); Cal. Civ. Code § 3295(c) (precluding pretrial

27  discovery on a defendant's financial condition unless so ordered by the court after a finding that the plaintiff has established a substantial probability that punitive damages

28  will be awarded).

LA2:829382.1                                    - 8 -

EXHIBIT ___ 147
PAGE ___ 1901

1   should be denied.

2       Mattel's motion to compel MGA to produce a witness to testify for Topic 41,

3   regarding testing performed by MGA's expert, is similarly premature. The time for

4   designating experts has not yet arrived, thus MGA cannot be required to disclose at

5   this time whom it will be designating as its testifying experts in this litigation.

6   Under Federal Rule of Civil Procedure 26(a)(2)(C), the deadline for the disclosure

7   of expert testimony is 90 days before the trial date. This case is set for trial on

8   February 12, 2008. Requiring MGA to designate an expert witness at this early

9   stage of the proceedings is premature and inappropriate.

10      In June 2006, Mattel made the belated request that the District Court appoint

11   one document expert to test all documents in this case, to be used jointly by the

12   parties. In support of that argument, Mattel implied in its motion papers that MGA

13   and/or Bryant had destroyed evidence by making holes in certain "Bratz"

14   drawings.[8] Mattel's insinuation in its papers was so strong that Judge Larson issued

15   an order to show cause as to why the Court should not appoint an expert. At

16   argument, however, Mattel's counsel was forced to concede that *no evidence had*

17   *been* comprised.[9] In fact, as Judge Larson later found, MGA and Bryant did the

18   appropriate thing -- very shortly after Mattel filed its complaint, MGA and Bryant

19   date-tested certain original "Bratz" drawings while Mattel waited until the

20   documents were too old to be dated and therefore too old to confirm the merits of

21   MGA and Bryant's defenses.[10] To convince Judge Larson of the complete

22   inaccuracy of Mattel's accusations, however, MGA and Bryant were forced to

23   explain in general terms the testing procedures they had used.[11] They did not, at

24

25   [8] *See* Torres Decl., ¶ 10, Ex. 8 (Order Denying Motion For Appointment of Expert Witnesses, dated August 10, 2006).

26   [9] *Id.* (Order Denying Motion For Appointment of Expert Witnesses, at 13).
   [10] *Id.* (Order Denying Motion For Appointment of Expert Witnesses, at 14).

27   [11] *See* Declaration of B. Jennifer Glad filed concurrently, ¶ 2, Ex. 1 (Response of Bryant

28   and MGA to the Order to Show Cause Regarding the Appointment of Expert Witness(es), dated July 21, 2006, at 5).

EXHIBIT _____ 147

PAGE _____ 1902

1    that time or at any time since, designate a testifying expert in this area to disclose

2    the results of the expert's work.  Mattel should not be allowed to benefit from its

3    false and unsubstantiated accusations that required MGA and Bryant even to

4    acknowledge the fact that they had performed expert analysis on a consulting basis.

5            Contrary to Mattel's suggestion, the issue is not whether the consulting

6    expert's analysis is "reasonably available," as that would be true as to any

7    consulting expert.  But rather, unless and until MGA designates a testifying expert,

8    these analyses are protected as MGA's work product and privileged from

9    disclosure.  MGA will be prepared to identify its experts, and produce expert

10   reports, as required by the Federal Rules of Civil Procedure, at the appropriate time.

11   In addition, Mattel has itself refused to produce discovery related to its document

12   experts on the grounds that such information is protected from disclosure by the

13   attorney-client privilege, the attorney work product doctrine, and the non-

14   designated expert consultant privilege.[12]  Mattel's motion on this topic should be

15   denied.

16          **4.      Mattel's Motion to Compel on Topics 31 and 33, Related to**
                      **Prior Work By Unidentified Individuals and Patents, Should**
17                    **Be Denied Because Such Information is Not Relevant To**
                      **This Action**
18

19          Mattel's motion to compel on Topics 31 and 33 should be denied because

20   they seek information not relevant to this litigation.  First, Topic 31 seeks testimony

21   related to the identities of persons, to the extent any exist, that have performed work

22   for MGA while the person was employed by Mattel.  Because Mattel has asserted

23   no claim of this nature with respect to anyone other than Bryant, such information

24   is not relevant to this litigation, and, as this Court recently noted, discovery is not a

25   fishing expedition for new claims.[13]  Indeed, it is impossible to prepare a witness on

26   ───────────────

27   [12] *See* Torres Decl., ¶ 11, Ex. 9 (Objections of Mattel and Timothy James Lider to MGA's
     Subpoena for Production of Documents, Response to Request No. 6).

28   [13] *See* Order Granting in Part and Denying in Part Mattel's Motion For Protective Order
     Regarding "Polly Pocket" Documents, at 5.

LA2:829382.1                          - 10 -

EXHIBIT  147

PAGE  1903

1   this topic without knowing all of Mattel's past and present employees and their

2   dates of employment.  In an attempt to compromise, however, MGA stated that it

3   would be willing to consider designating a 30(b)(6) witness to testify on this topic if

4   Mattel was willing to narrow it.  (*See* Garcia Decl. ¶ 4.)  Mattel, however, refused.

5   (*Id.*)  Mattel should not now be heard to complain that MGA has failed to meet its

6   discovery obligations by not designating a witness as to this topic.

7       Mattel's motion with regard to Topic 33, which seeks information related to

8   any trademarks, copyrights and patents, similarly seeks irrelevant information.  As

9   discussed herein, MGA designated a witness for Topic 33 with regard to trademarks

10  and copyrights only.  MGA should not be required to provide a witness to testify as

11  to MGA's patents and patent applications, to the extent any exist, as Mattel has

12  asserted no patent claims in this litigation and provided no rationale as to how any

13  MGA patent or patent application is conceivably relevant to the claims or defenses

14  in this litigation.  Accordingly, Mattel's motion to compel should be denied.

15          **5.    Mattel's Motion to Compel Testimony on Topic 34, Which**
16                 **Relates to Prior Testimony of Unidentified Individuals,**
17                 **Should Also Be Denied**

18      Mattel's motion to compel testimony from MGA on Topic 34 seeks to have

19  the Discovery Master require MGA to prepare and produce a corporate witness to

20  testify about prior declarations and deposition testimony of various individuals, all

21  but two of whom are unidentified.[14]  In essence, Mattel seeks to have MGA prepare

22  a witness to testify about statements by other witnesses, rather than simply depose

23  those witnesses from whom it wants testimony.  Mattel has cited no authority for

24  such an inappropriate topic of corporate testimony, and MGA has found none.

25      Such testimony is not only inappropriate for a corporate designee, but it is

26  _____
    [14] During the meet and confer, MGA requested that Mattel more adequately define Topic
27  34, which relates to testimony and sworn statements prior to June 30, 2001.  (*See* Garcia
    Decl., ¶ 5.)  With this request still pending, Mattel filed the instant motion, in which it
28  identifies for the first time two of the declarations which it apparently had in mind all
    along, but had previously refused to identify for MGA.

LA2:829382.1                          - 11 -        EXHIBIT _____ 147

                                                    PAGE _____ 1904

1   impracticable to require MGA to prepare a witness to testify as to the prior

2   testimony of individuals, including individuals who are not employed by MGA.  In

3   *Covington v. Semones,* plaintiffs served a Rule 30(b)(6) notice on one entity, a

4   town, in order to obtain information about another entity, the county attorney's

5   office.  The court held that the town had no duty to inquire into or provide

6   information about the knowledge of the county attorney's office, stating that such a

7   practice would be "neither practicable nor efficient."  2007 WL 1052460, *2 (W.D.

8   Va. 2007) ("[t]here is no duty imposed to inquire into the knowledge of another

9   entity").  It is just as impracticable and inefficient to require MGA to designate a

10   corporate witness to testify about the knowledge of any individuals, let alone

11   witnesses not employed by MGA, especially where Mattel has refused to identify

12   the declarants or deponents and can easily depose individuals it believes to have

13   relevant information.  Moreover, Mattel has cited no authority, and MGA is aware

14   of none, that would permit Mattel to question MGA's 30(b)(6) witness about the

15   prior testimony of other individuals.  Accordingly, Mattel's motion to compel

16   MGA to produce a 30(b)(6) witness to testify as to prior sworn testimony and

17   statements should be denied.

18   **C.**    **Mattel's Arguments Regarding Application of Section 2019.210**
19        **Are Improper As This Issue Is Currently Pending Before Judge**
20        **Larson**

21       Mattel's argument regarding MGA's objections based on Mattel's failure to

22   identify its alleged trade secrets is an attempt to do an end run around MGA's

23   motion to dismiss.  As Mattel is well aware, MGA argued in its motion to dismiss

24   that Mattel should not be allowed to proceed with its claims based on the alleged

25   misappropriation of trade secrets because Mattel has failed to identify its allegedly

26   misappropriated trade secrets with the required specificity.[15]  MGA's motion to

27

---

28   [15] *See* Torres Decl., ¶ 12, Ex. 10 (MGA and Isaac Larian's Joint Motion to Dismiss
Mattel's Amended Answer and Counterclaims, at 15-19).

EXHIBIT     147

PAGE     1905

1   dismiss is currently pending before Judge Larson, and is scheduled for oral

2   argument on May 21, 2007. Mattel's efforts to have the Discovery Master resolve

3   this issue in an attempt to undermine MGA's motion before the District Court is

4   improper and should not be condoned.

5       As discussed in MGA's motion to dismiss, all of Mattel's claims against

6   MGA proceed from the foundational allegation that MGA misappropriated Mattel's

7   purported trade secrets. Under California law, when a claim is premised on trade

8   secret misappropriation, a plaintiff must disclose the trade secret with "reasonable

9   particularity" before proceeding with discovery on any of those claims.[16] This rule

10  is not merely procedural, as Mattel suggests, but substantive in that it protects a

11  defendant from spending time, money and effort defending against baseless

12  claims.[17] Thus, contrary to Mattel's assertion, section 2019.210 applies in federal

13  proceedings.[18]

14      Moreover, Mattel's reliance on the unpublished opinion in *Funcat Leisure

15  Craft*[19] is particularly unpersuasive, as it dismisses the substantive nature of

16  California's statutory protection from baseless trade secret claims without even

17  considering the origin and purpose of the law. *Computer Economics*, cited by

18  MGA in its motion to dismiss, is the more closely reasoned case, and addresses the

19  purpose of section 2019.210, namely to: promote well-investigated claims, dissuade

20  the filing of meritless trade secret complaints, and protect against expending money

21

22  [16] See *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826 (2d Dist. 2005); Cal. Code Civ. Proc. § 2019.210.

23  [17] See *Computer Economics Inc. v. Gartner Group Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999); *see also Diodes, Inc. v. Franzen et al.*, 260 Cal. App. 2d 244, 252 (2d Dist.

24  1968) (purpose of rule is to substantively protect against having to answer to and defend against baseless claims).

25  [18] See *Computer Economics*, 50 F. Supp. 2d at 985 (establishing the applicability of California's statutory provision to federal cases, including cases where pendant

26  jurisdiction applies to state law claims, under the *Erie* doctrine); *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 88 F.3d 142 (2d Cir. 1996) (applying California trade secret law and

27  specifically this provision without dispute or need for discussion).
    [19] *Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, 2007 WL 273949 (E.D. Cal.

28  2007).

LA2:829382.1                              - 13 -

EXHIBIT _____ 14Ɍ

PAGE _____ 1906

1   and time on false claims - not just to control the timing of discovery.[20]

2       In any event, until such time as the District Court rules on this issue as part of

3   MGA's motion to dismiss, Mattel should be precluded from pursuing further

4   discovery on this issue.

5       **D.      Mattel's Requests For Sanctions Should Be Denied**

6       Finally, Mattel argues that it is entitled to sanctions. As set forth at length

7   above, and contrary to Mattel's assertions, MGA has designated witnesses for all

8   but the few topics on which the parties disagree, or as to which Mattel agreed to

9   provide further clarification so that MGA could designate the appropriate witness.

10  Moreover, MGA's refusal to provide witnesses as to the remaining topics was in

11  good faith given that the topics sought testimony that was privileged, not relevant to

12  the claims in the litigation, or else was properly the subject of expert testimony and

13  was, thus, premature. Accordingly, Mattel's motion for sanctions should be denied.

14  **CONCLUSION**

15      For the reasons set forth above, the Court should deny Mattel's Motion to

16  Compel and for Sanctions in its entirety.

17

18      Dated: April 26, 2007              O'MELVENY & MYERS LLP

19

20                                         By: James P. Jenal
21                                         Attorneys for MGA Entertainment, Inc.

22

23

24

25

26

27  [20] *See Computer Economics*, 50 F. Supp. 2d at 985-88; Torres Decl., ¶ 12, Ex. 10 (MGA
    and Isaac Larian's Joint Motion to Dismiss Mattel's Amended Answer and
28  Counterclaims, at 15-19).

LA2:829382.1                          - 14 -                    EXHIBIT      147

                                                               PAGE        1907

**EXHIBIT 148**

**CONFORMED COPY**

FILED

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2     John B. Quinn (Bar No. 090378)
    johnquinn@quinnemanuel.com
3     Michael T. Zeller (Bar No. 196417)
    (michaelzeller@quinnemanuel.com)
4     Jon D. Corey (Bar No. 185066)
    (joncorey@quinnemanuel.com)
5     Timothy L. Alger (Bar No. 160303)
    (timalger@quinnemanuel.com)
6   865 South Figueroa Street, 10th Floor
  Los Angeles, California 90017-2543
7   Telephone: (213) 443-3000
  Facsimile: (213) 443-3100

2007 MAY 18  PM 3: 45

BY

CALENDARED

8   Attorneys for Mattel, Inc.

9

10           UNITED STATES DISTRICT COURT

11         CENTRAL DISTRICT OF CALIFORNIA

12             EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) |
| Plaintiff, | Consolidated with |
| vs. | Case No. CV 04-09059 |
| | Case No. CV 05-02727 |
| MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| Defendant. | Hon. Edward A. Infante (Ret.) |
| | Discovery Master |
| AND CONSOLIDATED CASES | [PROPOSED] ORDER GRANTING MATTEL INC.'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES FOR DEPOSITION PURSUANT TO RULE 30(B)(6) |
| | Date: May 15, 2007 |
| | Time: 8:15 a.m. |
| | Place: Telephonic |
| | Discovery Cut-Off: October 22, 2007 |
| | Pre-Trial Conference: January 14, 2008 |
| | Trial Date: February 12, 2008 |

EXHIBIT ____148____

PAGE ____1908____

ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

CS\18\57

_Ed_

## ~~[PROPOSED]~~ ORDER

Having considered Mattel, Inc.'s Motion To Compel MGA To Produce Witnesses For Deposition Pursuant To Rule 30(b)(6) (the "Motion"), and all other papers and argument submitted in support of or opposition to the Motion, and finding good cause therefor, Mattel's Motion is GRANTED.

IT IS HEREBY ORDERED that:

1.     MGA shall make Paula Garcia available for deposition on or before June 15, 2007 as a designee on Topics 1-3 and 6-8 of Mattel's Notice of Deposition of MGA Pursuant to Rule 30(b)(6) dated February 16, 2005 and in her individual capacity.

2.     MGA shall confirm its designees and the dates of the designees' availability for deposition for all Topics except Topic Nos. 25 and 26 in Mattel's Notice of Deposition of MGA Pursuant to Rule 30(b)(6) dated February 1, 2007 (the "Second Notice") on or before May 22, 2007.

3.     MGA shall make its designees for all Topics in the Second Notice, except Topic Nos. 25 and 26, available for deposition on or before June 30, 2007.

4.     The parties shall meet and confer regarding the timing of the depositions on Topic Nos. 25 and 26 of the Second Notice.  Such depositions may take place after June 30, 2007.

5.     All of MGA's objections and/or limitations regarding the Topics in Mattel's Rule 30(b)(6) deposition notices are overruled.

//
//
//
//
//
//
//

EXHIBIT _____148_____

PAGE _____1909_____

07209/2121176.1

ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

6.     Mattel's request for sanctions is denied.

**IT IS SO ORDERED.**

DATED: May 16, , 2007


_____
Hon. Edward A. Infante (Ret.)
Discovery Master

EXHIBIT _____ 148

PAGE _____ 1910

-2-
ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 17, 2007, I served the attached ORDER GRANTING MATTEL INC.'S MOTION TO COMPEL MGA TO PRODUCE WITNESSES FOR DEPOSITION PURSUANT TO RULE 30(B)(6) in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 17, 2007, at San Francisco, California

Anthony R. Sales

EXHIBIT _____ 148

PAGE _____ 1911

**EXHIBIT 149**

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(D).

**PRIORITY SEND**
& ENTERED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.     CV 04-09049 SGL(RNBx)                 Date: July 2, 2007

Title:     CARTER BRYANT -v- MATTEL, INC.
           AND CONSOLIDATED ACTIONS

===============================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes                             Theresa Lanza
          Courtroom Deputy Clerk                 Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker                         John B. Quinn
                                      Brett Dylan Proctor
                                      Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:

Dale M. Cendali
Patricia Glaser

PROCEEDINGS:     MINUTE ORDER

ENTERED
CLERK, U.S. DISTRICT COURT
JUL - 5 2007
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION     BY DEPUTY


DOCKETED ON CM
JUL - 5 2007
BY _____ 164

As set forth more fully herein, the Court hereby makes the following ruling regarding matters heard on July 2, 2007:

(1)   The Court **GRANTS** Mattel's Motion re Trial Structure (docket #462);

(2)   The Court **GRANTS IN PART AND DENIES IN PART** MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505);

(3)   The Court **GRANTS IN PART AND DENIES IN PART** MGA's Ex Parte Application

MINUTES FORM 90                                  Initials of Deputy Clerk __jh__
CIVIL -- GEN                        1             Time: 01/15

EXHIBIT ___149___
PAGE ___1912___  67|c2|7

regarding date of production of documents (docket #545); and

(4)     The Court **DENIES** MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508).

(5)     The Court **DENIES** the parties' oral request for modification of pretrial and trial dates.

(1)     Motion re Trial Structure (docket #462)

        Previous orders of the Court specified that the claims and counterclaims brought in this action will be tried in two phases. The parties have agreed, in large part, to a refinement of the Court's mandate that all issues regarding the ownership of Bratz shall be tried in Phase 1. Where the parties differ is upon a proposal by Mattel that the Phase 1 be bifurcated into two sub-phases, with Mattel's copyright infringement claim (its first counterclaim in the 05-02727 case) and all Phase 1 damages being tried after all the other issues. Phase 1(a) would be limited to issues surrounding Carter Bryant's employment with Mattel, and how those issues impact the ownership of certain original Bratz drawings, while Phase 1(b) would address approximately two-hundred Bratz products that are potentially derivative of the original drawings. This approach has the appeal of limiting Phase 1(a) to discrete issue of the ownership of the original Bratz drawings. A finding that Bryant owns these original drawings in Phase 1(a) has the potential to eliminate the need for Phase 1(b).

        Accordingly, **THE COURT ADOPTS MATTEL'S MODIFICATION OF DEFENDANTS' PROPOSAL**, as set forth at 8-9 of its Memorandum Regarding Trial Structure, filed June 20, 2007. Phase 1(a) and Phase 1(b) (if necessary) will be tried to the same jury.

(2)     MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505), and
(3)     MGA's Ex Parte Application regarding date of production of documents (docket #545).

        The Discovery Master's May 15, 2007, Order compels production of documents regarding ink, paper, and chemical analysis and documents relating to unreleased MGA products. The order required that documents be produced no later than the end of May.

        The Court reviews the Discovery Master's orders under the "clearly erroneous" or "contrary to law" standard set forth in Fed. R. Civ. P. 72(a).

        The Discovery Master's order compels the production of only non-privileged documents. Therefore, MGA's arguments that the Discovery Master's order requires production of documents in violation of the attorney-client privilege are misplaced. If the only responsive documents are privileged, then MGA need not produce them, but must produce a privilege log.

        MGA acknowledges that it has raised an argument before the Court that was not raised

MINUTES FORM 90
CIVIL – GEN

2

Initials of Deputy Clerk __jh____
Time: 01/15

EXHIBIT _____ _149_

PAGE _____ _1913_

before the Discovery Master, namely, that Mattel has failed to establish that there are "exceptional circumstances" that allow Mattel to "discover facts known or opinions held by an expert . . . who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(B). MGA contends that the Discovery Master's order is contrary to law based on this standard, and that it was incumbent upon Mattel to raise it below. The Court disagrees. Mattel would be required to establish that exceptional circumstances existed if MGA objected to production on that grounds. A party seeking production cannot be expected to rebut all arguments that could possibly be raised by a party resisting production. MGA has not convinced the Court that the Discovery Master's failure to require Mattel to rebut an argument that was not raised by MGA is contrary to law.

MGA contends that the Discovery Master's order compelling production of documents regarding unreleased products is contrary to law. Relevant to that determination is a balancing test required to be applied by the Ninth Circuit when trade secrets are requested by a competitor in discovery. See Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992) ("Specifically, in this case we must balance the risk to [defendant] of inadvertent disclosure of trade secrets to competitors against the risk to [plaintiff] that protection of [defendant's] trade secrets [will] impair[] prosecution of [plaintiff's] claims.").

Here, the documents sought are of a particularly sensitive nature. They represent some of the most secretive documents maintained by MGA, and they are being ordered to be produced to MGA's fierce competitor. The Discovery Master recognized the sensitive nature of the documents and entered a strict protective order that severely limits access to those documents and that goes well beyond the normal "attorney eyes only" designation.

MGA argues that unreleased products are irrelevant to the issue of who owns the original Bratz drawings. That is clear. However, MGA's argument attempts to limit the discovery to issues involved in Phase 1 of the trial. There has been no bifurcation of discovery.

Mattel correctly points out that these documents are relevant to a number of its other claims. Specifically, if they show unreleased products that are similar to Mattel's unreleased products, the documents would be highly probative of Mattel's misappropriation of trade secrets claim. Moreover, these documents could be relevant to Mattel's RICO claims based on alleged acts of criminal copyright infringement.

Balancing tests are inherently subjective and particularly susceptible to varying interpretation by individual judicial officers. This Court, upon considering this issue from the outset, may very well have weighed the evidence differently and reached a contrary result. However, this Court is bound by the standard of review, and MGA's motion falls far short of convincing the Court that the Discovery Master's order is contrary to law.

The parties have a long history regarding the production of documents ordered in the May 15, 2007, Order, which is set forth in their papers and which need not be repeated here. Counsel for MGA represented that the remaining documents could be produced no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which could be produced no

3

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT __149__

PAGE ____1914____

later than two weeks after that date. Accordingly, the Court **ORDERS** that MGA complete the document production set forth in the Discovery Master's May 15, 2007, order no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which shall be produced no later than August 14, 2007.

Accordingly, the Court **GRANTS** in part MGA's motion re the Discovery Master's May 15, 2007, Order, extending the document production date as set forth above. The Motion is **DENIED** in all other respects.

Likewise, the Court **GRANTS** in part MGA's ex parte application re date of production of documents, extending the document production date as set forth above. The application is **DENIED** in all other respects.

(4)   MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508)

The Discovery Master's May 16, 2007, Order compelled the Rule 30(b)(6) depositions of witnesses on the topics of MGA's net worth, prior sworn statements, and ink, paper, and chemical analysis performed by MGA.

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. . . . The persons so designated shall testify as to matters *known* *or reasonably available* to the organization.

Fed. R. Civ. P. 30(b)(6) (emphasis added). "The purpose behind Rule 30(b)(6) is to create testimony that will bind the corporation." Sanders v. Circle K Corp., 137 F.R.D. 292, 294 (D. Ariz. 1991) (internal citation omitted). Another purpose of Rule 30(b)(6) is aptly described by the District Court for the District of Columbia:

> [The purpose of Rule 30(b)(6) is to] prevent[] serial depositions of various witnesses without knowledge within an organization and eliminating 'bandying', which is the name given to the practice in which people are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to the organization itself.

Alexander v. F.B.I., 186 F.R.D. 148, 152 (D.D.C. 1999) (citing the 1970 Advisory Committee Notes to Rule 30(b)(6)).

The Discovery Master's order compelling Rule 30(b)(6) depositions in the specified

MINUTES FORM 90
CIVIL -- GEN

4

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT _____ 149
PAGE _____ 1915

categories serve both these purposes and is not contrary to law.

Although MGA's net worth may not be known to it, MGA does not contend that the information is not readily available. That net worth is generally the subject of expert testimony at trial -- a proposition disputed by neither Mattel nor the Court -- does not render it an improper subject for a Rule 30(b)(6). Therefore, the Discovery Master's ruling on this issue is not contrary to law.

MGA likewise does not contend that information regarding prior sworn statements are not readily available to it. Although contending that this is not an appropriate subject for a Rule 30(b)(6) deposition, MGA fails to cite authority in support of that contention. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

The ink, paper, and chemical analysis topic is likewise a proper subject of a Rule 30(b)(6) deposition. To the extent that such a deposition has the potential to encroach upon information protected by the work-product privilege, then that objection must be made on a question-by-question basis. MGA may not make a blanket objection and justify its refusal to produce a Rule 30(b)(6) designee on this topic based on that blanket objection. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

Accordingly, the Court **DENIES** MGA's motion re the Discovery Master's May 16, 2007, Order.

(5)    Oral Request for Modification of pretrial and trial dates.

Although no motion or ex parte application on the subject was pending before the Court, the parties made an oral request at the hearing to continue certain pretrial and trial dates. A discussion ensued and it became apparent that no final agreement was reached by the parties regarding extending these dates. Accordingly, the Court **DENIES** the parties' oral request for modification of pretrial and trial dates. The Court will consider counsels' stipulation regarding extensions of those dates only where all counsel unqualifiedly stipulate to those dates. Until the scheduling order is modified by the Court, the dates previously set by the Court remain in effect. In addition, the Court is unlikely to entertain a continuance of the Phase 1 trial past April, 2008.

IT IS SO ORDERED.

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT ____149____

PAGE ____1916____

**EXHIBIT 150**

1    Hon. Edward A. Infante (Ret.)
     JAMS
2    Two Embarcadero Center
     Suite 1500
3    San Francisco, California 94111
     Telephone:   (415) 774-2611
4    Facsimile:    (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12                                          CASE NO. CV 04-09049 SGL (RNBx)
                                            JAMS Reference No. 1100049530
13   CARTER BRYANT, an individual,

14            Plaintiff,

15        v.                                Consolidated with
                                            Case No. CV 04-09059
     MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727
16
              Defendant.                    **ORDER GRANTING IN PART AND**
17                                          **DENYING IN PART MATTEL'S**
                                            **MOTION TO ENFORCE COURT'S**
18                                          **DISCOVERY ORDERS AND TO**
                                            **COMPEL; TO OVERRULE**
19                                          **PURPORTEDLY IMPROPER**
                                            **INSTRUCTIONS; AND FOR**
20                                          **SANCTIONS**

21   CONSOLIDATED WITH
     MATTEL, INC. v. BRYANT and
22   MGA ENTERTAINMENT, INC. v. MATTEL,
     INC.
23

24

25

26

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

1-9

EXHIBIT ___150___

PAGE ___1917___

## I. INTRODUCTION

On December 5, Mattel, Inc. ("Mattel") submitted a "Motion to (1) Enforce Court's Discovery Orders and to Compel; (2) to Overrule Improper Instructions; and (3) for Sanctions." Mattel's motion challenges the sufficiency of the testimony provided by four of MGA Entertainment Inc.'s Rule 30(b)(6) witnesses, Lisa Tonnu, Kenneth Lockhart, Rebecca Harris, and Spencer Woodman, on sixteen separate topics identified in Mattel's Second Notice of Deposition of MGA. MGA submitted an opposition on December 18, 2007. Mattel submitted a reply on December 26, 2007. The matter was heard on January 3, 2008. Having considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in part and denied in part, and the request for sanctions is granted in part.

## II. BACKGROUND

On May 16, 2007, MGA was ordered to produce Rule 30(b)(6) designees for all topics identified in Mattel's Second Notice of Deposition of MGA, except Topic Nos. 25 and 26, on or before June 30, 2007. Mattel's Second Notice of Deposition includes many topics relevant to the case, including, *inter alia*, the development of Bratz before it was made available for purchase; when and whom MGA first offered Bratz for sale; who first manufactured, shipped and distributed Bratz; Bratz revenues and profits; MGA's access to Mattel's earlier DIVA STARZ project that allegedly had elements which subsequently appeared in Bratz; the identity of persons who worked on Bratz and payments made to them; fee and indemnification agreements; MGA's testing and handling of original Bratz drawings; MGA's sworn statements pertaining to Bratz's creation and development; and MGA's evidence preservation and collection. On July 2, 2007, the district court rejected MGA's objections to the May 16, 2007 Order.

MGA designated four different witnesses to testify on the topics identified in Mattel's Second Notice of Deposition of MGA. First, MGA designated Kenneth Lockhart to testify on Topic Nos. 38, 39 and 42. He testified on June 14-15, 2007.

Second, MGA designated Lisa Tonnu to testify on Topic Nos. 24-25, 31, 37, 39 (in part), 40 and 41. She testified on July 19, 2007. In the meantime, Mattel moved for an order compelling MGA to produce witnesses for deposition and sanctions because MGA did not

EXHIBIT _____ 150

PAGE _____ 1918

2

1    produce witnesses on certain topics as required by the May 16, 2007 Order.  On August 14, 2007,

2    Mattel's motion was granted in part and denied in part and MGA was ordered, once again, to

3    produce witnesses to testify on several topics.  On September 24-25, 2007, Mattel deposed Ms.

4    Tonnu further on Topic Nos. 21, 24-26, 31, 39, 40 and 41.

5         Third, MGA designated Rebecca Harris to testify on Topic Nos. 11, 13, 14, 19, 22-23 and

6    27-28.  Ms. Harris' deposition was scheduled, but unilaterally cancelled by MGA, on two

7    different occasions.  MGA ultimately produced Ms. Harris on July 20, 2007.

8         Fourth, MGA designated Spencer Woodman to testify on Topic No. 34.  He testified on

9    October 9, 2007.

10        In September of 2007, the parties exchanged several meet and confer letters regarding

11   purported deficiencies in the witnesses' depositions.  In mid October, MGA notified Mattel that it

12   had retained new counsel who would be responding to Mattel's letters.  After a month-long stay

13   that MGA obtained as a result of its substitution of counsel, the parties met and conferred on

14   November 16, 2007 and again on November 21, 2007.  MGA offered to produce Ms. Tonnu

15   again, but only on some of the topics for which she had been designated previously, and only

16   during the second week of January 2008.  The parties continued to exchange letters; however,

17   they were apparently unable to resolve any issues before Mattel filed the instant motion on

18   December 5, 2007.

19        Mattel essentially contends that MGA's witnesses were not sufficiently knowledgeable to

20   provide complete testimony on the 30(b)(6) topics at issue, and furthermore, that MGA's counsel

21   obstructed the depositions by making improper objections and instructing witnesses not to

22   answer.  Accordingly, Mattel seeks the following eight categories of relief:  (1) an order enforcing

23   the May 16, 2007 and August 14, 2007 Orders and compelling MGA to comply therewith by

24   designating and producing fully prepared witnesses to testify on Topic Nos. 11, 13, 14, 19, 21-25,

25   27, 28, 31, 34 and 39-41 in Mattel's Second Notice of Deposition of MGA on dates of Mattel's

26   selection; (2) an order overruling each of the purportedly improper instructions not to answer

27   questions interposed at the deposition of MGA designees Spencer Woodman and compelling

28   Woodman or other such person selected by MGA as its designee to provide complete testimony

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT __150__

PAGE __1919__

1   on Topic No. 34; (3) an order compelling MGA to produce documents that MGA designee

2   Kenneth Lockhart identified during his June 14, 2007 deposition as documents which he reviewed

3   and relied upon to refresh his recollection in preparation for his deposition; (4) an order

4   overruling each of the purportedly improper instructions not to answer questions interposed at the

5   deposition of MGA designee Lisa Tonnu; (5) an order reopening the deposition of MGA designee

6   Lisa Tonnu based on a purported "complete reversal of testimony" made through written

7   "changes" to her deposition transcript; (6) an order compelling Rebecca Harris to sit for the

8   completion of her deposition and/or compelling such person selected by MGA as its designee to

9   complete the testimony on topics for which Harris was previously designated; (7) an order

10  imposing monetary sanctions ($10,000) for MGA's alleged willful violations of the May 16, 2007

11  and August 14, 2007 Orders, for MGA's allegedly improper instructions not to answer deposition

12  questions and for MGA's alleged improper coaching, harassing and obstructionist conduct at the

13  September 24-25, 2007 deposition of Lisa Tonnu and at the October 9, 2007 deposition of

14  Spencer Woodman; and (8) a report and recommendation to Judge Stephen G. Larson that

15  recommends the imposition of preclusion sanctions, that certain facts related to the topics

16  compelled be deemed admitted, and/or that MGA be found in contempt for MGA's allegedly

17  willful and repeated violations of the Orders.

18        MGA opposes the motion, contending that it substantially complied with its obligation to

19  produce witnesses knowledgeable on each of the topics at issue and that Mattel has had a full and

20  fair opportunity to conduct its examinations. According to MGA's calculations, the four

21  witnesses testified intelligently for nearly 36 hours over five deposition days. MGA also explains

22  that its counsel instructed witnesses not to answer two types of questions, namely questions that

23  invaded MGA's work product protection or attorney-client privilege, and questions that exceeded

24  the scope of Topic No. 34. MGA also contends that Mattel is not entitled to additional time to

25  depose Ms. Harris in particular because Mattel's counsel wasted time and badgered the witness.

26  MGA acknowledges, however, that Ms. Tonnu did change her testimony and that there are some

27  deficiencies in its witnesses' testimony that justify additional deposition time. Indeed, MGA

28  points out that prior to the filing of the instant motion, MGA agreed to produce witnesses to

4

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___150___

PAGE ___1920___

1   provide additional testimony on Topic Nos. 21, 24, 25, 31, 34 and 40.  Further, after the filing of

2   the motion, MGA agreed to produce witnesses to provide additional testimony on Topic No. 39.

3   MGA contends that Mattel's motion to compel additional testimony with respect to topics on

4   which MGA has already agreed to provide additional testimony is premature and should be

5   denied.

III. STANDARDS

6

7       Depositions of a corporation are governed by Rule 30(b)(6) of the Federal Rules of Civil

8   Procedure, which provides in pertinent part that:

9           In its notice or subpoena, a party may name as the deponent a public or
            private corporation, a partnership, an association, a governmental agency, or other
            entity and must describe with reasonable particularity the matters for examination.
10          The named organization must then designate one or more officers, directors, or
            managing agents, or designate other persons who consent to testify on its behalf;
11          and it may set out the matters on which each person designated will testify. . . .
            The persons designated must testify about information known or reasonably
12          available to the organization.

13

14  Fed.R.Civ.P. 30(b)(6) (effective Dec. 1, 2007).  Rule 30 also provides that the examination and

15  cross-examination of a deponent proceed as they would at trial under the Federal Rules of

16  Evidence. Fed.R.Civ.P. 30(c)(1).  Further, "[a]n objection at the time of the examination--

17  whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking

18  the deposition, or to any other aspect of the deposition--must be noted on the record, but the

19  examination still proceeds; the testimony is taken subject to any objection." Fed.R.Civ.P.

20  30(c)(2). "An objection must be stated concisely in a nonargumentative and nonsuggestive

21  manner. A person may instruct a deponent not to answer only when necessary to preserve a

22  privilege, to enforce a limitation ordered by the court, or to present a motion under Rule

23  30(d)(3)." Id.

24      Rule 30(d)(1), Fed.R.Civ.P., provides that a deposition is limited to one day of seven

25  hours, unless otherwise stipulated or ordered by the court. "The court must allow additional time

26  consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT  150

PAGE  1921

1   person, or any other circumstance impedes or delays the examination."[1]  Fed.R.Civ.P. 30(d)(1).

2   Furthermore, sanctions may be imposed --including the reasonable expenses and attorney's fees

3   incurred by any party--on a person who impedes, delays, or frustrates the fair examination of the

4   deponent.  Fed.R.Civ.P. 30(d)(2).

## IV. DISCUSSION

6   A. Mattel's Request for Relief No. 1:  Mattel seeks an order enforcing the May 16, 2007 and
    August 14, 2007 Orders and compelling MGA to comply therewith by designating and producing
7   fully prepared witnesses to testify on Topic Nos. 11, 13, 14, 19, 21-25, 27, 28, 31, 34 and 39-41 in
    Mattel's Second Notice of Deposition of MGA on dates of Mattel's selection.

9       Mattel contends that MGA's witnesses were inadequately prepared and failed to provide

10  sufficient testimony on sixteen of the topics identified in the Second Notice of Deposition of

11  MGA.  Each of the sixteen 30(b)(6) topics at issue is addressed separately below.

12      **Topic No. 11**:  The exhibition, or proposed, offered, contemplated or requested exhibition,
    of BRATZ or any BRATZ DESIGN to any third party prior to June 30, 2001, including
13  without limitation each instance in which BRATZ or any BRATZ DESIGN was marketed,
    offered for sale, pitched, shown or disclosed to, or otherwise discussed with or
14  communicated to, any retailer, wholesaler or distributor and the DOCUMENTS that
    REFER OR RELATE thereto.

15      Mattel contends that Ms. Harris lacked sufficient knowledge on this topic.  In particular,

16  Mattel contends that Ms. Harris could not confirm what form of Bratz or Bratz design ("sculpts")

17  was first exhibited to third parties prior to June 30, 2001.

18      MGA contends that Ms. Harris substantially discharged MGA's obligation to testify on

19  this topic.  More specifically, MGA contends that Ms. Harris testified about the first exhibition,

20  sale and distribution of Bratz, including presentations to Target stores, and the first sale,

21  distribution and shipment of Bratz under an agreement with Bandai in Spain.  MGA contends that

22  it is not reasonable to expect MGA to have investigated specifically what type of Bratz "sculpts"

23  were shown at particular exhibitions.

---

24      [1] Rule 26(b)(2), Fed.R.Civ.P., provides that the court shall limit the frequency or extent of use of the
    discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or
25  is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party
    seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the
26  burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case,
    the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the
27  importance of the proposed discovery in resolving the issues."  Fed.R.Civ.P. 26(b)(2).

28

1    Furthermore, MGA points out that Mattel has taken the deposition of MGA HK on the

2    subject of the initial manufacture of Bratz. More specifically, MGA contends that Mattel took the

3    deposition of the head of MGA's Hong Kong operations, Edmond Lee, for two full days, and

4    questioned him about the first manufacture of Bratz by Early Light. Therefore, MGA contends

5    that Mattel has had a full and fair opportunity to examine MGA regarding the first manufacture of

6    Bratz.

7        A review of the transcript confirms that Ms. Harris was not reasonably prepared for her

8    deposition, especially in light of the importance of the timing of the creation of Bratz. For

9    example, she could not specify what was shown to retailers during the year 2000. She testified

10   that MGA used "boards" (i.e. sketched drawings) to show retailers Bratz during the year 2000

11   based upon a telephone conversation she had with Paula Garcia during a break. Mattel is entitled

12   to delve into more detail about these "boards," and such information should be reasonably

13   available to MGA. Ms. Harris testified that Julie Chemo likely attended presentations during the

14   year 2000. Therefore, Mattel is entitled to an order compelling MGA to produce a witness to

15   provide complete testimony on Topic No. 11.

16       **Topic No. 13**: COMMUNICATIONS prior to June 30, 2001 between YOU and any
     manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or potential
17   manufacturer, distributor, wholesaler or retailer, that REFER OR RELATE TO BRATZ or
     any BRATZ DESIGN.

18       Mattel contends that Ms. Harris' testimony was wholly inadequate. In particular, Mattel

19   contends that Ms. Harris had no knowledge concerning early MGA communications with Bandai,

20   which distributed Bratz in the first market in which it was allegedly sold. Ms. Harris did not have

21   any knowledge or information as to when MGA and Bandai first had any type of contact or

22   communication regarding Bratz. Similarly, Ms. Harris did not have any knowledge or

23   information as to when MGA first had contact with a company called J.H.N. regarding the sale of

24   Bratz in Australia.

25       MGA contends that Ms. Harris substantially discharged MGA's obligation to testify on

26   Topic No. 13, as described above in connection with Topic No. 11. Accordingly, MGA objects to

27   any further examination on Topic No. 13.

28       A review of the deposition transcript confirms that Ms. Harris provided significant

EXHIBIT _____ 150

PAGE _____ 1923

1   testimony on Topic No. 13.  However, as Mattel points out, her testimony lacked many details

2   relevant to when Bratz was developed.  For example, Ms. Harris was unable to testify as to any

3   communications or negotiations between MGA and Bandai leading up to the execution of written

4   agreements.  Indeed, Ms. Harris did not know when MGA and Bandia first had any contact

5   regarding Bratz.  Furthermore, MGA did not conduct a reasonable investigation to prepare Ms.

6   Harris for Topic No. 13.  Among other things, MGA made no effort to determine whether the

7   former MGA HK employee known to have been directly involved in the first discussions with

8   Bandai (Martin Hitch) had retained any documents responsive to this topic.  Nor did Ms. Harris

9   speak to Isaac Larian and Jim Olmstead, both of whom authored emails referencing existing

10  distributorship deals in Europe and Australia.  Therefore, Ms. Harris did not fulfill MGA's duty to

11  produce a witness to testify on information known or reasonably available to MGA.  Mattel is

12  entitled to an order compelling MGA to produce a witness to provide complete testimony on

    Topic No. 13.

13       **Topic No. 14:**  When and where BRATZ was first manufactured, shipped, distributed and

14       sold, and the IDENTITIES and roles of PERSONS involved therein.

15       Mattel contends that Ms. Harris did not have any knowledge regarding the identity or role

16  of any person who was involved in the first manufacture of Bratz dolls by Early Light.  Mattel

17  also contends that Ms. Harris had no knowledge as to the date when manufacturing began for the

18  first Bratz dolls.  Furthermore, Mattel contends that MGA should not be permitted to rely on the

19  testimony given by MGA HK's corporate designee to evade providing testimony on this topic

20  because that designee's testimony was deficient.

21       MGA contends that Ms. Harris substantially discharged MGA's obligation to testify on

22  Topic No. 14, as described above in connection with Topic No. 11.  Accordingly, MGA objects to

23  any further examination on Topic No. 14.

24       A review of the deposition transcript confirms that Ms. Harris did not have any knowledge

25  regarding the identity or role of any person at MGA who first had contact with Early Light, the

26  first manufacturer of Bratz dolls.  Nor did she know the identity of any person at MGA or at Early

27  Light who was involved in the first manufacture of Bratz dolls.  Furthermore, Ms. Harris stated

28  that she did not undertake any investigation to uncover these facts.  Ms. Harris also had no

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                                                                          8

EXHIBIT ___150___

PAGE ___1924___

1  information or knowledge regarding the date when manufacturing began for the first Bratz dolls.

2  Ms. Harris testified that personnel in MGA's Hong Kong affiliate coordinated with Early Light.

3  Thus, the information sought by Mattel is reasonably available to MGA.  That Mattel also seeks

4  testimony from MGA's Hong Kong affiliate does not excuse MGA from producing a witness

5  sufficiently knowledgeable on Topic No. 14.  Therefore, Mattel is entitled to an order compelling

6  MGA to produce a witness to provide complete testimony on Topic No. 14.

7      **Topic No. 21:**  YOUR knowledge of, and access to, non-public MATTEL DIVA STARZ
       project information and DESIGNS prior to June 30, 2001.

8      Mattel contends that Ms. Tonnu was not sufficiently prepared to provide testimony, as

9  evidenced by the fact that two other MGA employees, Paula Garcia and Margaret Leahy, testified

10  that they had "access" to non-public DIVA STARZ information.

11      MGA contends that Ms. Tonnu prepared for her deposition by speaking with five MGA

12  employees, including Paula Garcia.  Based upon that investigation, Ms. Harris testified that the

13  five employees did not work on DIVA STARZ.  MGA explains that Ms. Garcia merely testified

14  that when she was at Mattel she often spoke to co-workers at Mattel who happened to work on the

15  DIVA STARZ, that those co-workers may have mentioned the existence of the project and that

16  they told Ms. Garcia it was confidential.  MGA contends that Ms. Garcia's testimony does not

17  establish "access to" DIVA STARZ information, but the opposite -- that the employees did not

18  share details with Ms. Garcia and told her the project was confidential.  MGA acknowledges,

19  however, that Ms. Garcia testified that on one occasion she saw a sketch of a DIVA STARZ

20  character.

21      Nevertheless, MGA represents that during the meet and confer process MGA designated

22  Ms. Tonnu to provide further testimony on Topic No. 21, and that she will be deposed on January

23  9, 2008.  MGA represents that Ms. Tonnu will be prepared to testify whether each former Mattel

24  employee now employed by MGA had "access to" DIVA STARZ information while employed by

   Mattel.

25      A review of the deposition transcript confirms that Ms. Tonnu was not sufficiently

26  prepared to testify on Topic No. 21.  Ms. Tonnu did not know what DIVA STARZ was.

27  Furthermore, she was not sufficiently informed of the identities of the MGA employees and

28

9

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___  150

PAGE ___  1925

1  contractors who had access to or worked on DIVA STARZ. For example, Ms. Tonnu was

2  uninformed of Ms. Garcia's and Ms. Leahy's knowledge and access to DIVA STARZ

3  information while employed by Mattel. Such information was known or reasonably available to

4  MGA. Therefore, Mattel is entitled to an order compelling MGA to produce a knowledgeable

5  witness to provide complete testimony on Topic No. 21.

6       **Topic No. 24**: Any indemnification and fee arrangement that YOU and/or BRYANT has

7  sought proposed, requested or obtained in connection with this ACTION.

8       Mattel contends that MGA's designee, Lisa Tonnu, was not sufficiently prepared to

9  testify, despite having been produced twice to testify on this topic. For example, Mattel points

10  out that Ms. Tonnu did not know why MGA agreed to pay Carter Bryant's attorneys' fees or how

11  much MGA had paid or whether Littler Mendelson's fees had been paid in full. Mattel's Motion

12  at pp. 14-15. Furthermore, Mattel points out that Ms. Tonnu did not make any effort to find out

13  the answers to these questions.

14       MGA contends that Ms. Tonnu substantially discharged MGA's obligation to provide

15  testimony in response to this topic. MGA contends that Ms. Tonnu reviewed responsive

16  documents and was able to identify the agreements in her deposition. Further, MGA contends

17  that Ms. Tonnu spoke to MGA's in-house counsel about the agreements and was able to identify

18  the individuals involved in the negotiations of those agreements.

19       MGA acknowledges, however, that Ms. Tonnu was not able to testify regarding the

20  specifics of those negotiations or the terms of those agreements. MGA represents that prior to the

21  filing of this motion, it designated in-house counsel Sam Khare to provide additional testimony on

22  this topic and that Mattel will depose him on January 8, 2008.

23       A review of the deposition transcript confirms that Ms. Tonnu was not prepared to testify

24  as to information known or reasonably available to MGA. For example, Ms. Tonnu did not know

25  why MGA agreed to pay Bryant's fees, did not know how much MGA had paid in fees, and did

26  not know whether MGA had paid Littler Mendelson's fees in full. Accordingly, Mattel is entitled

27  to an order compelling MGA to produce a knowledgeable witness to provide complete testimony

28  on Topic No. 24.

EXHIBIT _____ 150_

PAGE _____ 1926

1    **Topic No. 25:** YOUR revenues and profits from BRATZ, including without limitation,
2    YOUR gross and net profits, and YOUR costs associated therewith.

3    Mattel contends that Ms. Tonnu lacked the most basic information called for by this topic.

4    For example, Mattel contends that Ms. Tonnu testified that: she did not recall nor could she

5    provide an estimate of how much distribution revenue MGA derived from the Bratz brand

6    between 2001 and the end of 2006; she did not know and could not provide a best estimate for the

7    episodic costs or production costs associated with the distribution revenue; she did not know who

8    in the company could provide this information; she did not know and could not provide a range

9    for how much licensing revenue MGA had received for licensing anything associated with the

10   Bratz brand between 2001 and the end of 2006; she did not know and could not estimate how

11   much revenue the Bratz movie generated; she did not know how much revenue MGA had earned

12   from the Bratz brand; and she did not know how much profit MGA had generated from the Bratz

     brand.

13   MGA contends that it substantially discharged its obligation to provide testimony on this

14   topic. More specifically, MGA contends that Ms. Tonnu testified with the aid of Exhibit 660, a

15   143-page report summarizing the units sold from 2001 to 2006 organized by "stock-keeping-unit"

16   or "SKU." MGA contends that Ms. Tonnu prepared for her deposition by speaking with MGA's

17   Director of Finance, Anisse Evans, regarding Exhibit 660.

18   In the meet and confer process, MGA's counsel offered to provide Mattel with source

19   information from which the profitability of Bratz products at the SKU level could be derived and

20   to produce Ms. Tonnu for follow-up testimony regarding that source financial information so that

21   Mattel's experts would be in a position to draw their own conclusions and opinions as to MGA's

22   profits from Bratz. MGA represents that Mattel has agreed to depose Tonnu on this topic on

23   January 9, 2008. MGA also represents that it has produced more than 27,700 pages of source

24   financial information that will be the "starting point" from which MGA's and Mattel's experts

25   will analyze the profitability of Bratz products. MGA represents that Ms. Tonnu will be prepared

26   to discuss the source financial information produced to Mattel at her continued deposition.

27   A review of the deposition transcript confirms that Ms. Tonnu was not sufficiently

28   prepared to provide testimony on Topic No. 25. Ms. Tonnu could not identify, generally or by

1  product, Bratz revenues, costs, or gross or net profits.  Furthermore, MGA has failed to provide

2  any explanation for why Ms. Tonnu was not educated on the source financial information before

3  her deposition.  Accordingly, Mattel is entitled to an order compelling MGA to produce a

4  knowledgeable witness to provide complete testimony on Topic No. 25.

5  **Topic No. 27:**  The payment of money or anything of value that YOU have made or
offered to make to, for or on behalf of Elise Cloonan, or that has been requested, sought or

6  received by, for or on behalf of Elise Cloonan, and the timing, manner, amount(s) and
reasons therefore.

7

8  Ms. Cloonan was Carter Bryant's roommate at some point.  Bryant testified that he

9  showed her early drawings prior to showing them to MGA.  She is not and never has been an

10  employee of MGA.

11  Mattel contends that Ms. Harris' testimony was incomplete because she only searched for

12  evidence of payment by reviewing vendor files and MGA's electronic purchase order files, and

13  did not review the individual documents within each account payable vendor file.  Mattel also

14  contends that Ms. Harris was not sufficiently prepared because she had no knowledge or

15  information as to who was paying her legal fees in this case.

16  MGA contends that it discharged its obligation to testify on Topic No. 27, emphasizing

17  that Ms. Harris unequivocally represented on behalf of MGA that MGA made no payments to,

18  had no agreements with and had no communications with Elise Cloonan.  Furthermore, MGA

19  points out that Mattel took the deposition of Elise Cloonan on December 14, 2007, and she

20  confirmed that she had received no payments from and had no communications with MGA.

21  A review of the transcript confirms that Ms. Harris' preparation for and testimony

22  regarding Topic No. 27 was adequate.  Furthermore, the burden and expense of conducting a

23  deposition on this topic substantially outweigh the potential relevance of the testimony sought.

24  Mattel's motion is denied with respect to Topic No. 27.

25  **Topic No. 28:**  COMMUNICATIONS between YOU and Elise Cloonan that REFER OR
RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including

26  DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

27  Mattel contends that Ms. Harris's testimony was insufficient because she admitted she did

28  not have any knowledge or information as to what systems or hard drives in MGA were searched

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT ___ /50

PAGE ___ 1928

1   for e-mails referencing Elise Cloonan.

2       MGA contends that Mattel is not entitled to further examination on Topic No. 28 because

3   Ms. Harris substantially discharged MGA's obligation to testify on the topic, as described above

4   in reference to Topic No. 27 above.

5       A review of the transcript confirms that Ms. Harris' preparation for and testimony

6   regarding Topic No. 28 was adequate. Furthermore, the burden and expense of conducting a

7   deposition on this topic substantially outweigh the potential relevance of the testimony sought.

8   Mattel's motion is denied with respect to Topic No. 28.

9       **Topic No. 31:** The IDENTITY of each PERSON who, at any time since January 1, 1998, has performed any work or services for, by or on behalf of YOU while such PERSON was employed by MATTEL, the nature and timing of each such PERSON's work or services and the amount(s) paid by YOU to each such PERSON.

11      Mattel contends that the first time MGA produced Ms. Tonnu to testify, she lacked any

12  personal knowledge regarding this topic and that MGA failed to educate her properly on the topic.

13  Ms. Tonnu testified that she spoke to an accounts payable clerk, Ms. Brooks, who had "a list of

14  vendors and the dates in which they were either employed or freelancing with Mattel, and she

15  cross-referenced that in her research." Tonnu Tr. at 147:5-148:20. Mattel points out, however,

16  that Ms. Tonnu testified that she did not know who prepared the list; did not see the criteria used

17  to prepare the list; did not know who the vendors or freelance people were on the list; and did not

18  know whether the list included all former Mattel employees who were working at MGA. MGA

19  produced Ms. Tonnu for a second time regarding Topic No. 31, however, Mattel contends that she

20  was still unprepared.

21      MGA contends that it has substantially discharged its obligation to provide testimony on

22  this topic. MGA explains that Ms. Tonnu testified on this topic based on a review of MGA

23  business records. MGA explains that to prepare for the deposition, it prepared a list of MGA

24  employees who were former Mattel employees, including the dates each person was employed by

25  Mattel. Next, Ms. Brooks searched MGA's accounting records reflecting payments to outside

26  vendors for any evidence of a payment to a former Mattel employee on the list during the period

27  of that person's Mattel employment, or with respect to work or services performed during that

28  period. MGA contends that Ms. Tonnu testified about this search and the results of the search

1  leading to the identification of three instances of payments to former Mattel employees while the

2  employee was still at Mattel.

3  Nevertheless, MGA represents that prior to the filing of this motion, it designated Ms.

4  Tonnu to provide additional testimony on this topic. Specifically, MGA is prepared to produce

5  Ms. Tonnu to testify regarding whether former Mattel employees may have performed work or

6  services for MGA during their employment with Mattel without being paid for those services.

7  Ms. Tonnu's deposition is scheduled for January 9, 2008.

8  A review of the deposition transcript confirms that Ms. Tonnu was not sufficiently

9  prepared to testify on Topic No. 31. Notably, Ms. Tonnu admitted that she did not know whether

10  any person has at any time since 1998 performed work or services for MGA while that person

11  was a Mattel employee. Further, she testified that she did not speak with or ask any of the former

12  Mattel employees who were working at MGA whether they had provided work or services for

13  MGA while they were Mattel employees. Instead, Ms. Tonnu only knew whether or not

14  payments were made to the former Mattel employees while they were still employees of Mattel.

15  Furthermore, the list of former Mattel employees provided by Ms. Brooks was incomplete

16  because it did not include twelve former Mattel employees. Accordingly, Mattel is entitled to an

17  order compelling MGA to produce a witness to provide complete testimony on Topic No. 31.

18  **Topic No. 34:** Other than those previously filed and served in this ACTION or in which Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony, transcripts, declarations, affidavits and other sworn written statements of any other type by or from YOU or made on YOUR behalf that REFER OR RELATE TO BRATZ THAT REFER OR RELATE TO the time period prior to June 30, 2001 (regardless of when such testimony or sworn statement was taken, given, signed, made or filed).

19  Mattel contends that Mr. Woodman had not been adequately prepared for his deposition

20  and lacked the most basic knowledge on the topic. Mattel points out that Mr. Woodman had been

21  employed with MGA for less than one year and that his responsibilities had been limited to the

22  administration of licensing contracts and royalties. Further, Mattel contends that in preparation

23  for his deposition, Mr. Woodman "did no more than review a selection of sworn statements

24  previously made by others, review transcripts of Carter Bryant's deposition testimony, and speak

25  'for a few minutes' with one other person besides counsel." Mattel's Consolidated Separate

26  Statement, p.130.

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT _____ 150

PAGE _____ 1930

1    Mattel also contends that Mr. Woodman was not sufficiently prepared to testify regarding

2    "sworn statements in MGA's many submissions to the Copyright Office or Patent and Trademark

3    Office," and sworn testimony from the "Art Attacks" trial. Id. Further, Mattel contends that

4    MGA's counsel improperly instructed Mr. Woodman not to answer certain questions on the basis

5    that Topic No. 34 did not include sworn statements made in connection with the "Art Attacks"

6    matter or statements made in various submissions to the Copyright Office or Patent and

7    Trademark Office. Counsel also instructed Mr. Woodman not to answer certain questions about

8    sworn statements that related to Topic No. 33 and statements that MGA believed did not

9    sufficiently relate to conduct prior to June 30, 2001. Topic No. 33 seeks testimony on

10   applications for registration and the registrations for copyright, patent, trademark or any other

11   right that refer or relate to Bratz or Bratz designs, sought, made or obtained by, for or on behalf of

12   MGA or Bryant, including communications pertaining thereto.

13       MGA contends that Mattel is not entitled to any further testimony on this topic. MGA

14   explains that Mr. Woodman reviewed 30-50 sworn statements, read the transcript of the

15   depositions of Carter Bryant and Victoria O'Connor, MGA's former Vice President of Licensing,

16   and interviewed Leon Djiguerian in MGA's Product Development. MGA further asserts that Mr.

17   Woodman answered questions as to the completeness or incorrectness of many factual statements

18   contained in the sworn statements placed in front of him by Mattel's counsel. Thus, MGA

19   contends that Mattel obtained exactly the testimony it sought. In MGA's view, Mr. Woodman's

20   testimony regarding the correctness or incorrectness of factual statements identified from the

21   sworn statements is binding on MGA. MGA also contends that Mr. Woodman was not required

22   to investigate the preparation, review and approval of MGA's various sworn statements because

23   such information would be protected from disclosure by the attorney-client privilege and work

24   product doctrine.

25       MGA next contends that most of the documents shown to Mr. Woodman were not "sworn

26   statements," but rather (i) copyright registrations and certificates that include a statement that the

27   application is "correct to the best of my knowledge," (ii) certificates of registration issued by the

28   USPTO, and (iii) an office action summary by the USPTO. Nevertheless, MGA implicitly

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

15

EXHIBIT ___150___

PAGE ___1931___

1    acknowledges that Mr. Woodman did not provide sufficient testimony as to certain applications

2    for registrations containing declarations by Isaac Larian documents (Exhibits 580-584, 590), a

3    declaration by Bryant (Exhibit 502), and an application and amendment referred to in the Bryant

4    declaration (Exhibits 500, 548), and one additional declaration by Isaac Larian, by agreeing to

5    produce Sam Khare to testify regarding these documents.  Mattel is scheduled to depose Mr.

6    Khare on January 8, 2008.

7          MGA contends that prior counsel properly objected to certain questions as outside the

8    scope of Topic No. 34.  In particular, MGA contends that questions directed at statements that did

9    not refer or relate to the time period prior to June 30, 2001 are outside the scope of Topic No. 34.

10   Further, MGA contends that where a sworn statement relates in part to the time period before

11   June 30, 2001, and in part to other time periods, the scope of Topic No. 34 is limited by its own

12   terms to that portion of the statement that relates to the specified time period.  MGA also contends

13   that sworn testimony taken at the Art Attacks trial is outside the scope of Topic No. 34 because

14   Mattel's counsel was present at that trial.

15         MGA represents that its present counsel does not condone the instructions not to answer

16   made by prior counsel, and will not attempt to justify those instructions.  Nevertheless, MGA

17   contends that Mattel was not deprived of any discoverable testimony by those instructions

18   because the disputed questions sought information outside the scope of Topic No. 34.  More

19   specifically, MGA represents that each exhibit that was excluded from Mr. Woodman's testimony

20   on the grounds that it was not a "sworn statement" was the subject of examination of MGA's

21   designees on Topic No. 33, Bryan Armstrong and Sam Khare.  MGA also contends that

22   resumption of a deposition on Topic No. 34 beyond what MGA has agreed to provide is

23   unwarranted because Mattel obtained two full days of 30(b)(6) testimony on Topic No. 33.

24         A review of the deposition transcript confirms that Mr. Woodman was not sufficiently

25   prepared to provide testimony on Topic No. 34.  Mr. Woodman did no more than review the

26   sworn statements made by others and the transcripts of Carter Bryant's deposition.  For the sworn

27   statements he did review, Mr. Woodman offered little information beyond what was apparent on

28   the face of the documents.  For example, Mr. Woodman did not know who authorized submitting

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

1   the sworn statement.  Ultimately, Mr. Woodman only testified as to whether or not a particular

2   sworn statement was consistent with deposition testimony of Carter Bryant.  Furthermore, Mr.

3   Woodman admitted that the testimony he gave had nothing to do with MGA's current beliefs, was

4   not based on any investigation, and had nothing to do with the actual correctness or incorrectness

5   of any of the sworn statements.  Mr. Woodman admitted that no matter what inconsistencies

6   existed between Carter Bryant's testimony and MGA's sworn statements, Mr. Woodman always

7   presented Carter Bryant's testimony as to the facts as "true."  Thus, Mr. Woodman failed to

8   testify as to information known or reasonably available to MGA.  Mr. Woodman's lack of

9   preparedness alone justifies re-opening Topic No. 34.  Furthermore, MGA cannot rely on blanket

10   claims of privilege to preclude testimony on Topic No. 34.

11          A further deposition on Topic No. 34 is also justified in light of the admittedly improper

12   instructions not to answer, and MGA's acknowledgement that Mr. Woodman did not provide

13   testimony as to Exhibits 500, 502, 548, 580-584, 590.  MGA shall abide by its agreement to

     produce a witness to testify on these exhibits.

14          MGA's interpretation of Topic No. 34 as excluding statements not made under oath or

15   penalty of perjury, and as excluding any portion of a statement under oath that does not refer or

16   relate to the time period prior to June 30, 2001, is overly technical.  There is, however, a clear

17   overlap between Topic No. 34 and Topic No. 33, which is not at issue in this motion.  When the

18   deposition on Topic No. 34 is resumed, MGA's corporate designee is not required to provide

19   further testimony on statements that were the subject of examination of MGA's designees on

20   Topic No. 33.

21          MGA's interpretation of Topic No. 34 as excluding testimony from the Art Attacks trial is

22   appropriate.  Mattel does not contest that its counsel attended the Art Attacks trial.  Topic No. 34

23   clearly excludes any proceeding attended by Mattel's counsel.  When the deposition on Topic No.

24   34 is resumed, MGA's corporate designee is not required to provide further testimony with

25   respect to the Art Attacks trial.

26          **Topic No. 39:** The preservation, collection, destruction, removal, transfer, loss or
     impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection with
27   the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

28                                                                                              17

EXHIBIT  _150_

PAGE  _1933_

1   MGA designated two individuals to testify on this topic:  Kenneth Lockhart to testify on

2   electronic evidence; and Lisa Tonnu, to testify on documentary evidence.  Mattel contends that

3   both designees were unable to provide substantive testimony.

4   Mattel points out that Mr. Lockhart did not know whether the MGA's "PST files" had

5   been searched; whether e-mails had been deleted from the exchange mailbox between late 2004

6   and the present; whether MGA's "snap servers" had been searched; whether keywords were used

7   to search "PST" files; and what user files were searched.  Further, Mattel contends that Mr.

8   Lockhart was not aware of the location of any hard drive or any image of any hard drive that had

9   been preserved for litigation purposes.

10  MGA contends that Mr. Lockhart substantially discharged MGA's obligation on Topic 39

11  with respect to electronic documents.  MGA represents that Mr. Lockhart prepared extensively for

12  his testimony by speaking with various individuals and that he testified at length about the

13  configuration of MGA's computer systems and MGA's policies, practices and procedures for the

14  retention and preservation of electronic documents.

15  Nevertheless, MGA is willing to produce a witness to testify on its behalf regarding the

16  collection of electronic documents in connection with this action in order to shore up the one area

17  of Mr. Lockhart's testimony that MGA agrees was lacking.

18  As for Ms. Tonnu, Mattel contends that MGA made no discernible effort to educate her

19  concerning the topic.  Ms. Tonnu testified that she did not know whether MGA has a document

20  retention policy.  Mattel also contends that MGA's counsel instructed Ms. Tonnu not to answer

21  any questions about MGA's preservation and collection of documents based upon unfounded

22  claims of attorney-client privilege.[2]

23  MGA produced Ms. Tonnu a second time to testify on Topic No. 39, however Mattel

24  contends that her testimony remained deficient.  For example, Ms. Tonnu testified that she

25  prepared for the deposition by speaking with Rich Daniels, MGA's counsel, and by reviewing a

26  //

27  _____

28  [2] The instructions not to answer are discussed in a separate section of this Order.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

18

EXHIBIT ___150___

PAGE ___1934___

1   declaration prepared by Daphne Gronich, MGA's General Counsel on the subject of document

2   preservation. Mattel points out, however, that Ms. Tonnu never spoke with Ms. Gronich, and

3   therefore was unable to provide any information beyond what was stated in the four corners of the

4   declaration. In particular, Mattel contends that Ms. Tonnu did not know whether any documents

5   at the MGA campus had been searched for responsive documents. Nor did Ms. Tonnu know what

6   documents were stored at MGA's three off-site facilities and could not confirm whether they had

7   been searched for documents responsive to Mattel's requests.

8       MGA contends that Ms. Tonnu testified fully and completely regarding MGA's

9   preservation of documents in connection with this action. Indeed, MGA contends that the

10   Gronich declaration, which had already been provided to Mattel, contains detailed information

11   regarding MGA's document preservation efforts. MGA also points out that Tonnu testified,

12   based on her investigation and MGA's general policy (that documents generated by employees in

13   the ordinary course of business should not be destroyed and the wide distribution of document

14   preservation notices to MGA employees), that MGA did not knowingly destroy any documents

    potentially relevant to this action.

15      MGA acknowledges, however, that Ms. Tonnu was not able to testify regarding the actual

16   collection of documents for production in this action. MGA represents that it is willing to

17   produce an additional witness to discuss the collection of hard copy and electronic documents in

18   connection with this action.

19      A review of the deposition transcripts confirms that MGA's witnesses provided a

20   significant amount of testimony on this topic, and in particular regarding document preservation.

21   The one area where they were glaringly deficient was regarding document "collection."

22   Accordingly, MGA is ordered to abide by its agreement to produce a witness to testify further

23   with respect to the "collection" of hard copy and electronic documents. In all other respects,

24   MGA is in substantial compliance with Topic No. 39, and the burden and expense of re-opening a

25   deposition on the entirety of Topic No. 39 outweighs the likely benefit of the testimony Mattel

26   seeks.

27      **Topic No. 40:** The preservation, collection, destruction, removal, transfer, loss or

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19

EXHIBIT ____ 150

PAGE ____ 1935

1 | impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1, 1999 that
2 | REFER OR RELATE TO MATTEL (including without limitation to any MATTEL product, plan
3 | or information) that YOU received in any manner from any PERSON who was at the time an
4 | employee of MATTEL or who had previously been an employee of MATTEL.

5 |      This topic appears to be based, at least in part, upon Mattel's allegations that former
6 | Mattel employee Ron Brawer, former Mattel employees in Mattel's offices in Mexico; and a
7 | former Mattel employee located in Canada improperly provided MGA with documents containing
8 | Mattel trade secrets.

9 |      Mattel contends that MGA made no discernible effort to educate Ms. Tonnu on Topic No.
10 | 40, and therefore she was unable to answer whether MGA has or has had in its possession any (1)
11 | Mattel strategic plans, (2) any sales or profit information of Mattel, (3) any documents related to
12 | Mattel's advertising strategy, (4) any documents relating to the results of Mattel's advertising, (5)
13 | documents related to Mattel's pre-release line lists, and (6) documents related to Mattel's strategy
14 | with respect to specific customers. MGA produced Ms. Tonnu a second time, however, Mattel
15 | contends that her testimony remained deficient. In particular, Mattel complains that MGA spoke
16 | with only two former employees about the documents described above, when there are many
17 | more former Mattel employees working at MGA.

18 |      MGA contends that Ms. Tonnu spoke with the three individuals at MGA who would be
19 | most knowledgeable about the allegations against MGA and testified as to any documents they
20 | brought with them from Mattel: Ron Brawer, Susana Kuemmerle and Janine Brisbois. MGA
  | contends that Ms. Tonnu's preparation to testify on Topic 40 was reasonable.

21 |      Nevertheless, MGA represents that it has agreed to provide additional testimony through
22 | Ms. Tonnu to address Mattel's concerns, and that her deposition will take place on January 9,
23 | 2008.

24 |      A review of the deposition transcript indicates that Ms. Tonnu did not prepare sufficiently
25 | for her testimony. Ms. Tonnu spoke to only three individuals. Clearly, there are far more sources
26 | of information reasonably available to MGA, namely the many more former Mattel employees
27 | now employed at MGA. MGA made no effort to determine what Mattel documents, if any, these

28 |

EXHIBIT _____ 150

PAGE _____ 1936

1   individuals possess.  Therefore, Mattel is entitled to an order compelling MGA to produce a

2   witness to provide complete testimony on Topic No. 40.

3           **Topic No. 41:** The testing or sampling from DOCUMENTS that REFER OR RELATE
          TO BRATZ or BRYANT, including without limitation such testing or sampling in

4           connection with any ink, paper or chemical analysis performed or attempted to be
          performed to date, any DOCUMENTS that REFER OR RELATE thereto and all results

5           and reports relating thereto.

6       Mattel deposed Ms. Tonnu on this topic on two separate occasions.  Mattel contends that

7   in each instance, she was unprepared to given any meaningful testimony regarding any ink, paper

8   or chemistry testing performed on Bratz documents.  In particular, Mattel contends that Ms.

9   Tonnu's preparation for her deposition was inadequate because she did not speak to the MGA

10   litigation consultant who performed the testing, Mr. Speckin, but merely read his declaration.

11       Furthermore, Mattel contends that MGA's counsel improperly instructed Ms. Tonnu not to

12   answer questions based upon unfounded claims of work product protection.  Mattel explains that

13   it is not seeking information concerning Mr. Speckin's opinions or the results of his test on Bratz

14   documents.  Instead, Mattel contends that it is seeking factual information concerning the

15   handling and shipment of original Bratz documents, as well as the specific documents that were

16   tested.  In Mattel's view, the factual circumstances surrounding Mr. Speckin's testing are not

    protected from discovery by the work-product doctrine.

17       Moreover, Mattel contends that MGA provided Mattel's counsel with a list identifying the

18   documents that Mr. Speckin tested and allowed Ms. Tonnu to testify about the identification of

19   documents, thereby waiving any work product protection with respect to the identification of

20   documents.  Mattel also contends that Mr. Speckin's declaration, which was submitted in the

21   case, already discloses the types of tests conducted and therefore any privilege that may have

22   applied has been waived with respect to this subject.

23       MGA contends that it complied with this topic and that Mattel is not entitled to any further

24   examination because further questioning about the testing performed by Mr. Speckin would

25   violate MGA's attorney work product protection.  Mr. Speckin is one of MGA's non-testifying

26   experts.  MGA objects to any further questioning regarding Mr. Speckin's selection of which

27   documents to test, how the documents were handled, which tests were performed on the

28

EXHIBIT _____ 150

PAGE _____ 1937

1  documents, how they were shipped and how they were stored. MGA contends that further

2  questioning on these subjects would necessarily reveal the mental impressions, legal theories, and

3  conclusions of MGA's counsel and its non-testifying experts formed in anticipation of litigation

4  with Mattel. Further, MGA contends that Mattel has not carried its heavy burden to demonstrate

5  the "exceptional circumstances" required to invade MGA's work product.

6      A review of the deposition transcript confirms that Ms. Tonnu was not reasonably

7  prepared to testify on Topic No. 41. Ms. Tonnu did not speak with Mr. Speckin or anyone

8  involved in the testing. She had only read Mr. Speckin's declaration. Therefore, she clearly was

9  not in a position to testify as to information known or reasonably available to MGA. On this basis

10 alone, Mattel is entitled to an order compelling MGA to produce a witness to testify fully on

11 Topic No. 41.

12     As for MGA's claims of work production protection, Judge Larson has already indicated

13 that questions of privilege regarding the testing of the Bratz documents must be handled on a

14 question-by-question basis. The questions at issue are set forth in Mattel's Separate Statement

15 No. 2, and are discussed below in connection with Mattel's Request for Relief No. 4.

16 B. Mattel's Request for Relief No. 2:  Mattel seeks an order overruling each of the purportedly
   improper instructions not to answer questions interposed at the deposition of MGA designees

17 Spencer Woodman (Instruction Nos. 46-57) and compelling Woodman or other such person
   selected by MGA as its designee to provide complete testimony on Topic No. 34.

18     Mattel identifies each instance of allegedly improper instructions in its Separate Statement

19 No. 2. In each instance identified by Mattel, MGA's counsel instructed the witness not to answer

20 questions about matters that counsel believed exceeded the scope of the deposition. The

21 instructions not to answer were not based upon a claim of privilege, and therefore were clearly

22 improper.

23     Furthermore, as stated previously, MGA has acknowledged that some questions fell within

24 the scope of Topic No. 34 and should be answered. To that end, MGA has agreed to produce a

25 corporate designee to provide supplemental testimony as to Exhibits 500, 502, 548, 580-584, 590.

26 MGA shall abide by its agreement to produce a witness to testify on these exhibits.

27     Nevertheless, many of the questions identified in the Separate Statement No. 2 for which

28

22

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1   an improper instruction not to answer was given clearly exceeded the scope of the deposition

2   notice.  MGA is not required to provide further testimony as to those questions.  For example, the

3   question regarding the Art Attacks trial that Mattel's counsel attended (Instruction No. 46) exceed

4   the scope of Topic No. 34, and do not require any further testimony.  MGA is also not required to

5   provide further testimony as to documents that have been the subject of questioning during the

6   30(b)(6) deposition on Topic No. 33.[3]

7   C. Mattel's Request for Relief No. 3: Mattel seeks an order compelling MGA to produce
    documents that MGA designee Kenneth Lockhart identified during his June 14, 2007 deposition
8   as documents which he reviewed and relied upon to refresh his recollection in preparation for his
    deposition.

9        Mattel seeks an order compelling MGA to produce documents that Mr. Lockhart

10   identified during his deposition as documents which he reviewed and relied upon to refresh his

11   recollection in preparation for his deposition.

12        MGA contends that the documents Mattel seeks are privileged e-mail communications

13   from MGA's General Counsel to MGA employees regarding their document preservation

14   obligations in light of the present action.  MGA contends that its privilege log demonstrates that

15   the documents are protected by both the attorney-client privilege and the work product doctrine.

16   Furthermore, MGA contends that Mr. Lockhart was required to review the privileged emails

17   because they related to MGA's preservation of documents in connection with this action and they

18   were reasonably available to MGA.

19        Moreover, MGA contends that waiver of the attorney-client privilege and work product

20   doctrine is not automatic where a witness refreshes his recollection with privileged prior to a

21   deposition.  In re Managed Care Litig., 415 F.Supp.2d 1378 (S.D. Fla. 2006); Medtronic Xomed,
     Inc. v. Gyrus ENT LLC, 2006 WL 786425, at *1, 3, 6-7 (M.D. Fla. March 27, 2006).

22        MGA's bare bones privilege log, unaccompanied by any supporting declarations, is

23   insufficient to establish the attorney-client privilege and the work product doctrine.  Further,

24   although there appears to be a split in authority, the weight of authority supports a finding of

25

26   _____

27   [3] MGA represents that virtually all of the questioning quoted in Mattel's Separate Statement No. 2 at
     Instruction Nos. 47-57 was covered in the deposition on Topic No. 33.  However, MGA's representation cannot be
28   confirmed by the excerpts of the deposition transcript submitted in connection with this motion.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                    23

EXHIBIT _____ 150

PAGE _____ 1939

1    waiver.  See e.g. United States ex rel. Bagley v. TRW Inc., 212 F.R.D. 554, 565-566 (C.D. Cal.

2    2003) (requiring disclosure of documents reviewed by relator in preparing for his deposition

3    based upon waiver of work product protection); U.S. v. 22.80 Acres of Land, 107 F.R.D. 25-26

4    (N.D. Cal. 1985) (work product waived where deponents used documents to refresh recollection);

5    Ehrlich v. Howe, 848 F.Supp. 482, 493 (S.D. N.Y. 1994) ("when [c]onfronted with the conflict

6    between the command of Rule 612 to disclose materials used to refresh recollection and the

7    protection afforded by the attorney-client privilege . . . the weight of the authority holds that the

8    privilege is waived."); Marshall v. United States Postal Service, 88 F.R.D. 348, 350 (D. D.C.

9    1980) ("[I]t is apparent that once a document is used to refresh the recollection of a witness,

10   privileges as to that document have been waived.").

11         Furthermore, the interests of justice compel production of the e-mail documents used by

12   Mr. Lockhart to refresh his recollection.  MGA acknowledges that Mr. Lockhart was required to

13   review the e-mails because they related to MGA's preservation of documents.  Mr. Lockart

14   testified that the e-mails refreshed his recollection as to what MGA employees had been requested

15   to preserve.  Accordingly, MGA is ordered to produce the e-mails reference in Mr. Lockhart's

     deposition.

16   D. Mattel's Request for Relief No. 4.  Mattel seeks an order overruling each of the purportedly
     improper instructions not to answer questions interposed at the deposition of MGA designee Lisa
17   Tonnu.

18         In Mattel's Separate Statement No. 2, Mattel identifies each purported instance of

19   improper objections and/or instructions not to answer for which it seeks a ruling.  Each instance

20   of allegedly improper conduct is discussed below.

21

22                                   Instruction Nos. 1-5

23         Mattel's counsel posed a series of questions regarding Mr. Larian's trusts.  In each

24   instance, MGA's counsel instructed Ms. Tonnu not to answer.  MGA's counsel objected to the

25   question on privilege and privacy grounds, and objected that the question exceeded the scope of

26   deposition.

27         The privilege objections are overruled because MGA has failed to establish the requisite

28
                                                                                      24
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                               EXHIBIT ____150____

                                               PAGE ____1940____

1  | elements of any applicable privilege.  The privacy objections are overruled since there is a

2  | protective order in place to address Mr. Larian's privacy concerns regarding his personal finances.

3  | The remaining objections do not justify an instruction not to answer.  See Fed.R.Civ.P. 30(c)(2)

4  | (an objection must be noted on the record, but the examination still proceeds and the testimony is

5  | taken subject to any objection).  Accordingly, MGA shall produce a knowledgeable 30(b)(6)

6  | designee to provide complete responses to the questions identified in Mattel's Separate Statement

7  | No. 2 as Instruction Nos. 1-5.

### Instruction No. 6

8      In this excerpt, the witness wanted to clarify her testimony regarding voucher payments,

9  | which prompted Mattel's counsel to ask a series of questions about what prompted her make the

10 | clarification, including "that's what counsel told you at the break?"; "[h]ow was your recollection

11 | refreshed"; and "[d]id Mr. Jenal tell you what the dates were?"  MGA's counsel objected on

12 | privilege grounds and instructed the witness not to answer.

13     The objections are overruled.  The attorney-client privilege protects an attorney's

14 | communication of legal advice to his client, as well as the client's communication of information

15 | to the attorney "to enable him to give sound and informed advice."  Upjohn Co. v. United States,

16 | 449 U.S. 383, 390 (1981).  In this instance, the question posed did not require the witness to

17 | disclose the substance of an attorney-client communication.  Instead, the questions posed called

18 | for the disclosure of underlying facts to which Mattel is entitled.  See Upjohn, supra at 395

19 | (finding that the attorney-client privilege does not preclude disclosure of factual information and

20 | that the privilege does not protect facts communicated to an attorney).

21     Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

22 | responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction No. 6.

### Instruction Nos. 7-20 and 23

23     In each of these excerpts, Mattel's counsel posed questions regarding testing performed on

24 | Bratz drawings.  MGA's counsel objected to the questions based upon the work product doctrine

25 | and instructed the witness not to answer.

26     The work product objections are overruled.  The work product doctrine, now codified in

27

28

25

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___150___

PAGE ___1941___

part in Rule 26(b)(3) of the Federal Rules of Civil Procedure, provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial. The party claiming work product immunity has the burden of establishing its elements by competent evidence. In re Kidder Peabody Securities Litigation, 168 F.R.D. 459, 462 (S.D. N.Y. 1996).

In the instant case, all of the questions posed to the witness take one of four forms: "do you know whether" or "do you know who" or "do you know what" or "do you know why." The questions thus call for a simple "yes" or "no" response that did not require divulging any information protected by the work product doctrine.

Even if the questions are construed to require substantive responses beyond "yes" or "no," the information sought is factual (what test was conducted, how documents were stored, whether the documents were handled with cotton or latex gloves, who was with the expert when he performed his tests, what precautions he took). The questions do not require the witness to divulge the mental impressions, the legal theories, or conclusions of Mr. Speckin.

Moreover, Rule 26(b)(4)(B), Fed.R.Civ.P., provides that a party may discover facts known or opinions held by an non-testifying expert upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means. In the instant case, there is no other practicable means for Mattel to obtain information about the handling, shipping and testing of original Bratz documents while in Mr. Speckin's possession. Mr. Speckin is a non-testifying expert. The manner in which Mr. Speckin transported, analyzed, tested or otherwise used the original Bratz drawings is uniquely within his knowledge and plainly relevant. The original Bratz drawings are a key piece of evidence in this case. Mattel needs information concerning what, if any, changes, damage, or other alterations were made to the original Bratz drawings. Mattel is not seeking information regarding Mr. Speckin's opinions or the results of his tests. Rather, Mattel is seeking only information regarding the handling of the original Bratz documents and more precise identification information for the specific documents that were handled by Mr. Speckin.

MGA objects to providing information concerning Mr. Speckin's testing, the testing conditions, the selection of which drawings to test and other logistics. MGA, however, has

1    already disclosed the types of tests performed by Mr. Speckin in a declaration submitted to the

2    court, and has provided Mattel with a list identifying the documents that Mr. Speckin tested,

3    although the list did not identify the documents by Bates numbers.  Therefore, MGA has waived

4    any work product protection to which it may have been entitled with respect to the identification

5    of the original Bratz drawings that were subjected to testing and which tests were performed.

6         Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

7    responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 7-

8    20 and 23.

                            Instruction Nos. 21-22

9         In these excerpts, Mattel's counsel asked Ms. Tonnu whether she could identify or

10   describe any of the documents that were tested by Mr. Speckin.  MGA's counsel objected to the

11   questions based upon the work product doctrine and instructed the witness not to answer

12   The objections are overruled.  As discussed immediately above, the questions call for factual

13   information that is not protected by the work product doctrine.  Even if the work product doctrine

14   applied, the protection has been waived.  Furthermore, this case presents exceptional

15   circumstances under which it is impracticable for Mattel to obtain the information sought by other

16   means.  Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

17   responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 21-

18   22.

                            Instruction Nos. 24-26

19        In these excerpts, Mattel's counsel asked the witness (1) what Ms. Garcia told her about

20   Diva Starz and (2) whether Ms. Garcia told the witness she had access to Diva Starz information

21   while she was at Mattel.  MGA's counsel objected to the questions to the extent the witness'

22   conversations with Ms. Garcia occurred in the presence of counsel and instructed the witness not

23   to answer.

24        The objections are overruled.  The questions do not require the witness to divulge the

25   substance of any privileged communication.  Instead, the questions call for factual information to

26   which Mattel is entitled.

27

28

1      Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

2  responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 24-

3  26.

4                     Instruction No. 27

5      In this excerpt, Mattel's counsel asked the witness twice whether MGA had access to

6  Mattel internal information regarding Diva Starz prior to February 1st, 2000. MGA's counsel

7  made a speaking objection, which clearly violated Rule 30(c)(2), Fed.R.Civ.P. However, the

8  questions do not need to be repeated because the witness provided responses.

9                     Instruction No. 28

10     In this excerpt, Mattel's counsel asked, "MGA is denying that it had access to internal

11  information about Mattel's Diva Starz project prior to September 1st, 2000?" MGA's counsel

12  objected on the grounds that the question calls for a legal conclusion, calls for the disclosure of

13  privileged information, and exceeds the scope of the deposition. Counsel also instructed the

14  witness not to answer.

15      The objections are overruled. The question does not call for a legal conclusion and MGA

16  has failed to establish the elements of the attorney-client privilege.

17      Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

18  responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 28.

19                 Instruction Nos. 29-34

20     In these excerpts, Mattel's counsel asked as series of questions regarding whether MGA

21  knew Mattel was considering using the name "Brats" and "Boyz" in connection with the Diva

22  Starz project and whether MGA knew Mr. Linker worked on the project. MGA's counsel made

23  several objections including the following: assumes facts not in evidence; misstates the witness'

24  prior testimony; compound; outside the scope of the deposition; improper as to form; lacks

25  foundation; vague and ambiguous; calls for speculation; argumentative; and asked and answered.

26  MGA's counsel objected to one question (Instruction No. 30) on the additional ground that it may

27  call for attorney-client communications. MGA's counsel also instructed the witness not to

28  answer.

28

EXHIBIT _150_

PAGE _1944_

The repeated instructions not to answer were clearly improper. Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 29-34.

Instruction No. 35

In this excerpt, the witness indicated that she did not know whether Mr. Linker worked on the Bratz project. Mattel's counsel then asked, "But you don't know one way or the other?" MGA's counsel objected to the question, asserting that it had been asked and answered and was argumentative. MGA's counsel also instructed the witness not to answer.

The instruction not to answer was clearly improper. Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction No. 35.

Instruction No. 36

In this excerpt, Mattel's counsel asked, "Did you have a conversation with Mr. Jenal about the net worth or the valuation of the company?" MGA's counsel objected on privilege grounds and instructed the witness not to answer.

The objection is overruled. The question calls for a "yes" or "no" answer and does not require the witness to divulge the substance of a privileged communication.

Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction No. 36.

Instruction No. 37

In this excerpt, Mattel's counsel asked, "What did Mr. Daniels tell you about the net worth or valuation of the company?" MGA's counsel objected on privilege grounds.

The objection is sustained. As phrased, the question potentially calls for the disclosure of the substance of a privileged communication.

Instruction Nos. 38-40

In these excerpts, MGA's counsel instructed the witness not to answer. The instruction was not based upon a claim of privilege, and therefore was improper. MGA's counsel also made an improper speaking objection. Accordingly, MGA shall produce a knowledgeable 30(b)(6)

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

29

EXHIBIT 150
PAGE 1945

1   designee to provide complete responses to the questions identified in Mattel's Separate Statement

2   No. 2 as Instruction Nos. 38-40.

                              Instruction No. 41

3

4       In this excerpt, Mattel's counsel asked the witness to identify the litigation for which

5   Exhibit 660 was prepared. MGA's counsel objected to the question as calling for work product

6   and instructed the witness not to answer.

7       The work product objection is overruled. The question calls for the disclosure of facts, not

8   work product. Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide

9   complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction

    No. 41.

10

                           Instruction Nos. 42-44

11

12      In these excerpts, Mattel's counsel posed more questions about the litigation for which

13  Exhibit 660 was prepared, including the identity of the parties to the litigation and whether the

    litigation was ongoing. MGA's counsel objected on privilege and work product grounds.

14

15      The objections are overruled. The questions call for the disclosure of facts, not work

16  product. Further, MGA has failed to establish that the questions require the witness to disclose

17  the substance of a privileged communication. Accordingly, MGA shall produce a knowledgeable

18  30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate

    Statement No. 2 as Instruction Nos. 42-44.

19                          Instruction No. 45

20      In this excerpt, Mattel's counsel asked whether an attorney by the name of Mr. Daniels

21  wrote a document. The work product objection by MGA's counsel is overruled. The "yes" or

22  "no" question calls for the disclosure of facts, not work product. Accordingly, MGA shall

23  produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions

24  identified in Mattel's Separate Statement No. 2 as Instruction No. 45.

25  E. Mattel's Request for Relief No. 5: Mattel seeks an order reopening the deposition of MGA
    designee Lisa Tonnu based on a purported "complete reversal of testimony" made through written
26  "changes" to her deposition transcript.

27      Ms. Tonnu made changes to her deposition transcript after her deposition was completed.

28

                                                                                    30
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                        EXHIBIT _____150_____

                                        PAGE _____1946_____

1    Counsel asked Ms. Tonnu whether any documents had been collected from MGA's Filenet

2    storage facility, to which she responded "no"; whether Mr. Daniels told her that he was going to

3    collect documents from Filenet, to which she responded "yes"; and whether the documents at

4    Filenet contained any documents responsive to Mattel's request, to which she responded "no."

5    Later, Ms. Tonnu revised her deposition transcript and reversed each of her answers.

6         Mattel contends that Ms. Tonnu's initial answers in the negative precluded a line of

7    questioning into, for example, who collected documents, which documents were collected and

8    how.

9         MGA contends that the changes Ms. Tonnu made do not justify re-opening a deposition.

10   Nevertheless, MGA has no objection to follow-up questions about Ms. Tonnu's revision when she

11   is deposed again in January.

12         In light of MGA's lack of opposition, MGA shall make Ms. Tonnu available for follow-up

13   questioning regarding the revisions to her deposition testimony.

14   <u>F. Mattel's Request for Relief No. 6:  Mattel seeks an order compelling Rebecca Harris to sit for the completion of her deposition and/or compelling such person selected by MGA as its designee to complete the testimony on topics for which Harris was previously designated.</u>

15         Mattel seeks an additional day to depose Ms. Harris.  Mattel contends that it needs more

16   than the 7-hours it has already deposed Ms. Harris to complete its questioning on all topics for

17   which she was designated.  Mattel emphasizes that Ms. Harris is designated to testify on nine

18   separate topics, each of which pertains to issues at the heart of the litigation, including the origin,

19   creation, design and development of Bratz prior to June 30, 2001; relevant contracts concerning

20   Carter Bryant and Bratz; payments made to Bryant and other financial information relating to

21   Bratz; and third parties who were involved in or otherwise have knowledge about the creation,

22   design and development of Bratz.

23         In addition to the topics already discussed above in Section "A" to this Order, Mattel

24   contends that it did not have sufficient time to depose Ms. Harris on Topic Nos. 19, 22 and 23,

25   which are set forth below:

26         **Topic No. 19:**  Each agreement or contract between YOU and any PERSON other than BRYANT that REFERS OR RELATES TO BRATZ or BRATZ DESIGNS that REFERS

27         OR RELATES to the time period prior to December 31, 2001 (regardless of when such agreement or contract was negotiated or executed), including without limitation the timing

28         thereof, the negotiations, drafts and COMMUNICATIONS that REFER OR RELATE

EXHIBIT _____ 150

PAGE _____ 1947