QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **[PUBLIC REDACTED]** MATTEL, INC.'S OPPOSITION TO MGA PARTIES' MOTION *IN LIMINE* NO. 2 TO EXCLUDE EVIDENCE RELATING TO THE WEALTH AND ASSETS OF ISAAC LARIAN |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | Date:   May 21, 2008<br>Time:   1:00 p.m.<br>Place:  Courtroom 1<br><br>**Phase 1**<br>Pre-Trial Conference: May 19, 2008<br>Trial Date:              May 27, 2008 |

07209/2485425.5

MATTEL'S MOTION TO COMPEL CARTER BRYANT TO ANSWER REQUESTS FOR ADMISSION

## Preliminary Statement

Larian ignores the law in arguing that his own financial gains from Bratz are irrelevant and should be excluded. Larian's financial gains and self-interested profits are relevant to Mattel's aiding and abetting claims in Phase 1a and vicarious infringement claim in Phase 1b, and are relevant to Larian's credibility in both phases. Such evidence is also essential to Mattel's claim for disgorgement and to Mattel's pursuit of punitive damages from Larian. For any or all of these reasons, Larian's motion *in limine* No. 2 should be denied.

## Relevant Background Facts

Larian, a named defendant in this case, is MGA's founder, President, and CEO.[1] Since December 2000, he has been MGA's majority shareholder; he owns          f MGA's stock.[2] According to MGA's March 2001 Business Plan, "Larian oversees all divisions of the company."[3] According to Larian, "whatever [I say] at MGA goes."[4]

Since Bratz was launched in June 2001, Larian has personally received in excess                        income and distributions from MGA, approximately

---

[1] Transcript of Excerpted Portion of Trial, Art Attacks Ink, LLC v. MGA Entertainment, Inc., dated May 1, 2007 ("Art Attacks Tr.") at 7:21-24, Declaration of Stephen Hauss ("Hauss Dec."), Exh. 30.

[2] Id. at 8:7-9, 24:17-23; see also Isaac and Angela Larian, Lists of Assets, 2006 and 2007 ("2006 and 2007 Net Assets") (MGA 3787276- MGA 3787277; MGA 3787279), Declaration of Tamar Buchakjian ("Buchakjian Dec."), Exhs. 73, 135; Deposition of Lisa Tonnu ("Tonnu Depo"), Vol. IV, 814:25-815:8, January 17, 2008, Hauss Dec., Exh. 36.

[3] ABC International Traders, Inc., March 2001 Business Plan ("2001 Business Plan") at 10 (MGA 0050638 - MGA 0050660), Buchakjian Dec., Exh. 82.

[4] Art Attacks Tr. at 8:14-17, Hauss Dec., Exh. 30.

**REDACTED**

7209/2485425.4

MATTEL'S OPPOSITION TO MGA'S MIL NO. 2 RE LARIAN'S WEALTH AND ASSETS

1    of which is directly attributable to Bratz.[5]  Larian's share of MGA was

2    valued at            in 2007.[6]

### Argument

3

4    I.    **LARIAN'S ASSETS AND MGA-RELATED PROFITS ARE**

5          **RELEVANT TO THE ISSUES IN PHASE 1**

6          Larian does not dispute that he personally has reaped extraordinary

7    profits and financial gains from the success of Bratz.  This evidence is relevant to

8    both the merits of Mattel's claims against Larian and the damages Mattel seeks.

9          A.    **Evidence of Larian's Financial Gain and Self-Interested Profit Is**

10               **Relevant to Mattel's Aiding and Abetting Claim**

11         Mattel's claims against Larian include a claim for aiding and abetting

12   Bryant's breaches of duty.  A defendant aids and abets the commission of an

13   intentional tort if he (1) knows the other's conduct constitutes a breach of duty, and

14   (2) gives substantial assistance or encouragement to the other so to act.  See, e.g.,

15   Neilson v. Union Bank of Calif., 290 F. Supp. 2d 1101, 1119 (C.D. Cal. 2003);

16   Casey v. U.S. Bank Nat'l Assoc., 127 Cal. App. 4th 1138, 1144 (2005).

17         MGA claims in its motion that because the district court in Nielson

18   concluded that the "California Supreme Court would not hold that personal financial

19   gain is an element of an aiding and abetting claim for breach of fiduciary duty,"

20   Nielson, 290 F. Supp. 2d at 1129, such evidence is irrelevant and should be

21   excluded.  In fact, Nielson held the opposite:  Financial gain from another's tortious

22   conduct is unquestionably relevant, because it can be used to corroborate "evidence

23   of knowledge, substantial assistance, or both."  Id. at 1128 (citing, inter alia, Alan R.

24

---

25        [5]  Expert Report of Michael J. Wagner (without exhibits), dated February 11,

26   2008 ("Wagner Expert Report"), Declaration of B. Dylan Proctor, Exh. 56; Tab B2,

27   Schedule 6.0 to Wagner Expert Report, Buchakjian Dec., Exh. 72.

        [6]  2007 Net Assets, Buchakjian Dec., Exh. 73.

28

209/2485425.4

**REDACTED**

1  Bromberg & Lewis D. Lowenfels, <u>Aiding and Abetting Securities Fraud: A Critical</u>

2  <u>Examination</u>, 52 Alb. L. Rev. 637, 739-48 (1988) (financial gain has significance in

3  aiding and abetting cases in determining whether knowledge or the substantial

4  assistance requirements, or both, are satisfied).  Simply put, because Larian was "an

5  active participant in the breach of duty and <u>reaped the benefit</u>, [he] cannot disclaim

6  the burden" of liability for that breach.  <u>Nielson</u>, 290 F. Supp. 2d at 1127 (emphasis

7  added) (citing <u>Heckmann v. Ahmanson,</u> 168 Cal. App. 3d 119, 127 (1985);

8  <u>Bancroft-Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 353 (1966).

9          The fact that the benefit Larian reaped made him extraordinarily

10  wealthy does not make the evidence of his gains irrelevant or unfairly prejudicial.

11  To the contrary, Larian's financial gains and self-interested profit from Bratz are

12  highly probative of Larian's aiding and abetting liability.  This evidence

13  corroborates Mattel's other evidence that Larian knowingly provided substantial

14  assistance or encouragement to Bryant to breach his duties to Mattel.

15          Other than <u>Nielson</u>, not one of Larian's cases even addresses the

16  relevance and probative value of financial gain and self-interested profit of a

17  defendant who is subject to an aiding and abetting claim or a copyright infringement

18  claim.  Indeed, in none of those cases is the evidence of profits the quantum of

19  damages from an infringing product and other misconduct.  Rather, most are

20  criminal cases in which evidence of a defendants' financial state is separately

21  considered.  Were this a criminal case, then Mr. Larian may have an argument.  It is

22  not. In <u>United States v. Mitchell,</u> 172 F.3d 1104, 1110 (9th Cir. 1999), the district

23  court allowed the prosecution to introduce evidence of the defendant's poverty to

24  show the defendant's motive for committing a bank robbery.  The Ninth Circuit

25  reversed, holding the probative value of evidence of poverty was substantially

26  outweighed by the risk of unfair prejudice.  In <u>United States v. Walker</u>, 479 F. 2d

27  407, 408-09 (9th Cir. 1973), the defendant was charged with tax evasion.  His

28  defense was that he did not know his income exceeded the statutory minimum

1  requiring the filing of a tax return.  Because the jury already had evidence that
2  defendant's income exceeded the statutory minimum, the court held admission of
3  evidence that his gross income was $            was more prejudicial than probative.
4         The civil cases that Larian cites are no more helpful.  In TM2 Software,
5  Inc.  v. Madacy Entm't, 2003 WL 25667610 at *2 (C.D. Cal. Jan. 23, 2003), was a
6  trademark infringement case in which the issue was whether the damages award
7  could based on a reasonable royalty theory.  The court held that evidence of the
8  amounts defendants expended to produce, market and promote the infringing
9  products was relevant to the extent to which plaintiff's mark was harmed, but
10  evidence of defendant' "net worth, profits, stock prices, remuneration of their
11  officers and the like" was irrelevant and inadmissible unless the jury returned a
12  verdict with findings warranting an award of punitive damages, like the jury here
13  will consider in Phase 2.  In Pennington v. Clayton Indus., 2002 WL 343574828, at
14  *2 (C.D. Cal. April 18, 2002), an employment discrimination-wrongful termination
15  case, the court held the probative value of evidence of the compensation defendant
16  paid its non-defendant upper-level executives was outweighed by the risk of
17  prejudice.  In Candle Corp. v. Boole & Baggage, 1985 WL 1087794, at *7-*8 (C.D.
18  Cal. Aug. 2, 10985), the court held evidence of the defendant's CEO's position and
19  interest in the financial well-being of the defendant was irrelevant and unfairly
20  prejudicial to issues of patent invalidity, but his compensation was relevant to his
21  interest in the litigation and to the issue of his credibility.  Van Bumble v. Wal-Mart
22  Stores, Inc., 4097 F. 3d 823 (7th Cir. 2006) and Papadopoulos v. Fred Meyer Stores,
23  Inc., 2006 WL 3249195 (W.D. Wash. Nov. 8, 2006) are wholly inapposite personal
24  injury cases.
25         For this reason alone, Larian's motion should be denied.
26
27                                                        REDACTED
28

209/2485425.4

**B.    Evidence of Larian's Financial Gain and Self-Interested Profit Is
Relevant to Mattel's Claim for Vicarious Copyright Infringement**

Larian's financial gain and self-interest profit are also relevant to his
liability for vicarious copyright infringement.  A defendant is liable for vicarious
copyright infringement if he has the right and ability to control the infringing
activity and fails to do so, and "has a direct financial interest in such activity."
Fonvisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 262 (9th Cir. 1996); see also 3
Nimmer on Copyright § 12.04 at 1270-72 (1995).

Larian's argument that Mattel need only introduce evidence that MGA
profited from Bratz and that Larian owns stock in MGA to satisfy these elements is
without merit.  First, Larian is charged with vicarious copyright infringement not as
MGA's majority shareholder, but as an individual defendant.  Second, on its
vicarious infringement claim, Mattel is entitled to recover "any profits of the
infringer [Larian] that are attributable to the infringement."  17 U.S.C. § 504(b).
"The purpose of allowing the recovery of profits "is to make the infringement
*worthless* to the infringer."  Bucklew v. Hawkins, Ash, Baptie & Co., 329 F.3d 923,
933 (7th Cir. 2003) (original italics).  Profits are awarded to prevent infringers from
receiving "'any benefit derived from their infringement.'"  Kleier Advertising Co.,
Inc. v. James Miller Chevrolet, Inc., 722 F. Supp. 1544, 1545 (N.D. Ill. 1989)
(quoting H.R. Rep. No. 1476, 94th Cong., 2d Sess. 161) (emphasis added);[7] see also
U.S. Payphone, Inc. v. Executives Unlimited of Durham, Inc., 781 F. Supp. 412, 413
(M.D.N.C. 1991) (recovery of profits "designed to ensure that infringers are not able
to retain some benefit").  Mattel cannot prove the quantum of Larian's "profit"
without establishing the amount of income that he derived from Bratz.

---

[7] Notes of Committee on the Judiciary, House Report No. 94-1476 (1976 Act)
("profits are awarded to prevent the infringer from unfairly benefiting from a
wrongful act").

7209/2485425.4

1   Finally, Mattel's relief includes that Larian "disgorge all payments,
2   revenues, profits, monies and royalties and any other benefits derived or obtained as
3   a result of the conduct alleged, including without limitation of all revenues and
4   profits attributable to infringement of Mattel's copyrights under 17 U.S.C. § 504."[8]
5   Larian's financial gains and profits attributable to Bratz are obviously relevant to
6   prove the amount to be disgorged.

7   **C.   Evidence of Larian's Financial Gain and Self-Interested Profit is**
8   **Relevant to His Credibility**

9   Larian's compensation and financial gain from Bratz is also relevant to
10   his credibility as a witness. Candle Corp. v. Boole & Babbage, Inc., 1985 WL
11   1087794 at *7 (C.D. Cal. 1985) (evidence of position and compensation of chief
12   executive and sole shareholder of party corporation is relevant to credibility). In
13   short, the incredible amount of money Larian has made on Bratz -- and stands to
14   lose -- provides a strong bias and incentive to lie. That bias cannot be shielded from
15   the jury.

16   This is particularly true in that Larian has repeatedly lied under oath
17   about the salary and financial benefits he has received as a result of Bratz. In this
18   case and in a previous case, Larian has maintained that because MGA is a privately
19   held company he has no real income -- that he has "invest[ed] all the money [MGA]
20   make[s] in the company, back into the company."[9] This is totally false. Larian has
21   literally removed hundreds of millions of dollars from MGA.[10]

22

23   _____
    [8]   Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims,
24   dated July 12, 2007, Prayer for Relief ¶ 7, Proctor Dec., Exh. 12.
25   [9]   Art Attacks Tr. at 23:8-9; Hauss Dec.; Exh. 30.
    [10]   Compare e-mail message from Isaac Larian to Saban-Heim Saban, dated
26   January 30, 2003 (MGA 1008775-MGA 1008778) (Larian states: "safety net: I have
27   everything in the company except my house (a           )"), Buchakjian
    Dec., Exh. 137, with e-mail exchange between Isaac Larian and Mei Woods, dated
28   (footnote continued)

REDACTED

1    In addition, Larian has lied under oath about the salary and other

13    Larian's financial gains and self-interested profit from Bratz are
14    relevant both to his credibility generally, and to his particular lies about these
15    subjects under oath.

16    **D.    Evidence of Larian's Assets and Bratz-Related Profits Are**
17         **Essential to Mattel's Claim for Punitive Damages**
18         Larian does not even argue that evidence of his financial condition is
19    not relevant to Mattel's punitive damages claim.  Nor could he.  Evidence of a
20    defendant's financial condition is a prerequisite under California law to an award of

22    June 26, 2003 (MGA 3772461-MGA 3772474) (Woods to Larian: "While these
23    numbers are approximate, over the next six months, you and your sister will use
      about              invest in the new building. In addition, you will receive cash
24    distributions, completely net of taxes, tota              on for the rest of the year."
25    Larian to Woods:  "Please make sure this happens."), Buchakjian Dec., Exh. 155.
         [11]   Art Attacks Tr. at Id. at 25:19-27:7; Hauss Dec.; Exh.30.
26       [12]   Isaac Larian: Total Income Per Tax Returns (MGA 3787273), Buchakjian
      Dec., Exh. 155.
27       [13]   Id.
28
                                                          REDACTED

1  punitive damages.  See Adams v. Murakami, 54 Cal. 3d 105, 115-16 (1991); Lara v.
2  Cadag, 13 Cal. App. 4th 1061, 1064 (1993).  Such evidence includes evidence of
3  Larian's assets and liabilities, and earnings and profits, not just evidence of "net
4  worth" that is "subject to easy manipulation."  Id. at 1065 n.3.

5          Under California law a wide range of indicators of a defendant's wealth
6  are to be considered in assessing punitive damages.  See, e.g., Cummings Medical
7  Corp. v. Occupational Medical Corp., 10 Cal. App. 4th 1291 (1992) (evidence of
8  the profitability of the defendant's fraudulent conduct); Zaxis Wireless
9  Communications, Inc., 89 Cal. App. 4th at 583 (net worth, revenues, net profit);
10  Pistorius v. Prudential Insurance Co., 123 Cal. App. 3d 541, 554-55 (1981) (net
11  income after taxes, gross assets, net worth).  There can be no dispute that Larian's
12  assets and financial gain from Bratz are relevant to Mattel's claim for punitive
13  damages.

14                          **Conclusion**

15          For the foregoing reasons, Mattel respectfully requests that MGA's
16  motion in limine No. 2 be denied.

17

18  DATED:  April 28, 2008             QUINN EMANUEL URQUHART OLIVER &
19                                      HEDGES, LLP

20                                      By _____
21                                         John Quinn
22                                         Attorneys for Mattel, Inc.

23

24

25

26

27

28

7209/2485425.4

-9-

MATTEL'S OPPOSITION TO MGA'S MIL NO. 2 RE LARIAN'S WEALTH AND ASSETS

quinn emanuel

1

**PROOF OF SERVICE**

2     I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service,

3  1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

4  On April 28, 2008, I served true copies of the following document(s) described as **MATTEL, INC.'S OPPOSITION TO MGA PARTIES' MOTION** *IN LIMINE* **NO. 2 TO EXCLUDE**

5  **EVIDENCE RELATING TO THE WEALTH AND ASSETS OF ISAAC LARIAN** on the parties in this action as follows:

6      Thomas J. Nolan             Mark E. Overland

       **Skadden, Arps, Slate, Meageher & Flom**   David C. Scheper

7      **LLP**                    Alexander H. Cote

       300 South Grand Ave., Ste. 3400   **Overland Borenstein Scheper & Kim**

8      Los Angeles, CA 90071        **LLP**

                            601 West Fifth Street, 12th Floor

9                             Los Angeles, CA 90017

10

11      John W. Keker, Esq.

       Michael H. Page, Esq.

12      Christina M. Anderson, Esq.

       **Keker & Van Nest, LLP**

13      710 Sansome Street

       San Francisco, CA 94111

14  **BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the office of the person(s) being served.

15

16     I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

17     Executed on April 28, 2008, at Los Angeles, California.

18

19                            *Dave Quintana*

20                    NOW LEGAL -- Dave Quintana

21

22

23

24

25

26

27

28

07209/2485999.1