6.4.26



*hair design*

EXHIBIT _____ 41

PAGE _____ 764

Confidential - Attorney's Eyes Only

MGA 0885358



8/1998

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date 9/5/00

EXHIBIT _____ 41

PAGE _____ 765

Confidential - Attorney's Eyes Only

MGA 0885359

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date 9/15/00

EXHIBIT ___41___

PAGE ___766___

Confidential - Attorney's Eyes Only

MGA 0885360



© 8/1998

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date 9/18/00

EXHIBIT ___ 41

PAGE ___ 767

Confidential - Attorney's Eyes Only

MGA 0885361

© /1998

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date 9/18/00

EXHIBIT _____ 41

PAGE _____ 768

Confidential - Attorney's Eyes Only

MGA 0885362

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date : 9/18/00

**EXHIBIT** 41

**PAGE** 769

Confidential - Attorney's Eyes Only

MGA 0885363

©
8/1998

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

EXHIBIT _____ 41
_____ 770

Confidential - Attorney's Eyes Only

MGA 0885364



8/1998

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date   9/18/00

EXHIBIT _____ 41

PAGE _____ 72

Confidential - Attorney's Eyes Only

MGA 0885365



8/1998

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date 9/18/00

EXHIBIT _____ 41

PAGE _____ 772

Confidential - Attorney's Eyes Only

MGA 0885366

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

EXHIBIT _____ 41

PAGE _____ 223

Confidential - Attorney's Eyes Only

MGA 0885367



All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date: 9/18/00

EXHIBIT _____ 41

PAGE _____ 724

Confidential - Attorney's Eyes Only

MGA 0885368



All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date  9/13/00

EXHIBIT _____ 41

PAGE _____ 775

Confidential - Attorney's Eyes Only

MGA 0885369

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date. 9/18/00

EXHIBIT _____ 41

PAGE _____ 776

Confidential - Attorney's Eyes Only

MGA 0885370



All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

EXHIBIT _____ 41

PAGE _____ 777

Confidential - Attorney's Eyes Only

MGA 0885371

# SCHEDULE 2

1111/M17447.49/LT:289394.1/lads

EXHIBIT _____ 41 _____

PAGE _____ 778 _____

Confidential - Attorney's Eyes Only

MGA 0885372



EXHIBIT 41

PAGE 779

Confidential - Attorney's Eyes Only

MGA 0885373



EXHIBIT ___4/___

PAGE ___780___

Confidential - Attorney's Eyes Only

MGA 0885374

ROCKERHEADZ BOBBLE PENS



EXHIBIT ___41___

PAGE ___781___

Confidential - Attorney's Eyes Only

MGA 0885375

EXHIBIT ____41____

PAGE ____782____

Confidential - Attorney's Eyes Only

MGA 0885376

IN THE HIGH COURT OF JUSTICE

CHANCERY DIVISION

Claim form issued 21 May 2003

B E T W E E N :

MGA ENTERTAINMENT, INC.

Claimant

- and -

JAMES THOMAS CONNOLLY

Defendant

PARTICULARS OF CLAIM

A    Background to the Claimant

1    The Claimant, formerly known as ABC International Traders, Inc., is a United States corporation, organised and existing under the laws of California.

2    Since 1987 the Claimant has built up a substantial reputation throughout the world (including the UK) in the toy business and has held certain rights to well known and successful products such as the NINTENDO GAMEBOY and POWER RANGERS products.

3    The Claimant now has 8 product categories; smart toys, interactive dolls, handheld games, fashion dolls, youth electronics, music, license products and small dolls.

B    BRATZ range of dolls

4    Since 2001, the Claimant has marketed a doll under the trade mark, "BRATZ". There are five female dolls in the BRATZ range: Chloe, Sacha, Yasmin, Dana and Jade.

5    The Claimant has sold over 45 million units of BRATZ dolls worldwide and the BRATZ range of dolls has won numerous awards in the US including the Familiy Fun Toy of the Year for 2001 and 2002 and the Toy Industry Association's People's Choice Toy of the Year for 2001 and 2002.

EXHIBIT _____ 41 _____

PAGE _____ 783 _____

Confidential - Attorney's Eyes Only

MGA 0885377

6   The "BRATZ dolls" and various accessories are marketed and sold in the European Union, the Americas, Australia, New Zealand, Philippines, Indonesia, Israel, Japan and Switzerland. Details of these dolls are found on the website www.bratzpack.com.

C   Copyright

7   The designs of the BRATZ dolls were originally created by Mr Carter Bryant in 1999 and subsequently amended.   Copies of the drawings of the designs are at Schedule 1 ("Drawings").

8   Copyright subsists in the Drawings and the Claimant owns such copyright.

## PARTICULARS

8.1   The Drawings are original artistic works within the meaning of section 1 of the Copyright Designs and Patents Act 1988 ("the Act").

8.2   Mr Byrant is and has been at all relevant times a qualifying person within the meaning of sections 154 and 155 of the Act. Mr Bryant is a citizen of the United States of America, and the dolls were first published in the United States on or about November 2001.   Mr Bryant is still alive and when he prepared the Drawings he was a resident of and domiciled in the United States, which is a signatory to the Berne Convention.

8.3   Mr Bryant is the author and first owner of the Drawings by virtue of sections 9(1) and 11(1) of the Act.

8.4   On 18 September 2000, the Claimant entered into an agreement with Mr Bryant in relation to the design and development of the BRATZ dolls ("the Design Agreement").   A copy of the Design Agreement is produced at Schedule 2. Clause 3 (a) of the Design Agreement provides that the Claimant will be the worldwide owner of the copyright in any works produced pursuant to the Design Agreement. Clause 3 (b) provides that Mr Bryant assigns to the Claimant the worldwide copyright in any works prepared relating to the "BRATZ dolls" prior to the commencement of the Design Agreement.

8.5   Pursuant to Sections 12(2), 12(6), 15A and 52 of the Act, copyright in the Drawings still subsists.

D   Registered Designs

EXHIBIT ___41___

PAGE ___784___

-2-

Confidential - Attorney's Eyes Only

MGA 0885378

The Claimant is also the registered proprietor of the following registered design rights
(hereinafter "Registered Designs");

8.1    UK registered design number 2103577;

8.2    UK registered design number 2103578;

8.3    UK registered design number 2103579;

8.4    UK registered design number 2103580;

Each of these Registered Designs is and at all material times, have been valid and
subsisting.

E    **Defendant's Activities**

10    The Defendant is a distributor and seller of toys and other goods in the UK.  The
Defendant sources his goods from the Far East.  Until 31 January 2003, the Defendant
was a director of Toy Depot Limited in the UK. Until a time unknown to the Claimant, the
Defendant was a partner in Toy Depot (Far East) Company based in Hong Kong. As from
1 April 2002, the Defendant has been and as far as the Claimant is aware remains a
partner of Toy Depot (Far East) Company, a partnership registered in Hong Kong.

(i)    **MINI TRENDY TEENZ and TRENDY TEENZ Dolls**

11    The Claimant learnt that Toy Depot Limited had been trading in a doll called the MINI
TRENDY TEENZ (a photograph is at Schedule 3) and the Claimant's solicitors, SJ Berwin
sent a cease and desist letter to Toy Depot Limited on 7 March 2003.

12    Mr Alan Brown, an officer of Toy Depot Limited, disclosed to SJ Berwin that Toy Depot
Limited had imported and sold 4,800 sets of MINI TRENDY TEENZ dolls and 5,484
TRENDY TEENZ dolls, a larger version of the MINI TRENDY TEENZ doll (a photograph
is at Schedule 4) (together "the Dolls").

13    Mr Brown also disclosed that the Defendant had arranged and organised the purchase of
the Dolls from Trade Express (H.K) Export Company and Double Grand Corporation Ltd
("Double Grand").  Mr Brown supported this by disclosing the following information:

EXHIBIT _____41_____

PAGE _____785_____

Confidential - Attorney's Eyes Only

MGA 0885379

13.1   an email that the Defendant sent to Trade Express (HK) Export Company on 1 July 2002, on page three is a section relating to the MINI TRENDY TEENZ dolls. In this section the Defendant confirms that the "artwork is fine" but the price needs to be improved.

13.2   a fax from the Defendant to Mr Brown of Toy Depot Limited dated 18 February 2002, where the Defendant provided the contact details of Trade Express to Mr Brown.

14   SJ Berwin sent a cease and desist letter to the Defendant on 2 April 2003.

15   On 14 April 2003, the Defendant indicated that he was willing to enter into a letter of undertakings. Between 14 April – 21 May 2003, SJ Berwin and the Defendant had numerous conversations relating to settlement and the Defendant disclosed various documents relating to the sale of the Dolls. On 29 April 2003, the Defendant attended a meeting at SJ Berwin's premises with Mr Ray Black, where he agreed to provide a statutory declaration relating to his dealings in the Dolls. During this meeting, the Defendant admitted to the following:

## PARTICULARS

15.1   that he asked Double Grand to make a doll about five/six inches in size, dressed in fashionable clothing. Double Grand provided a design of the doll to the Defendant. This doll was later named the MINI TRENDY TEENZ.

15.2   that he drafted all the Purchase Orders sent to Trade Express including the Order particularised in paragraph 12 above and paragraph 15.3 below.

15.3   that Toy Depot (Far East) Company was used to fulfil an order set up by Toy Depot Limited, whereby Trade Express sold 43,056 MINI TRENDY TEENZ to United Overseas in or around 3 October 2002.   The Defendant drafted the Purchase Order and sent it to Mr Brown for signing.

15.4   that the MINI TRENDY TEENZ doll was very similar in overall design to the Claimant's baby BRATZ range of dolls.

16   The Claimant therefore claims that: (a) the Defendant procured and enticed the manufacture, importation, purchase and sale of the Dolls in the UK; and (b) (i) was directly involved in the purchase of the Dolls in the UK through Toy Depot Limited and Toy Depot (Far East) Company; and/or (ii) directed or arranged the purchase and sale of the Dolls.



EXHIBIT _____ 41

PAGE _____ 786     MGA 0885380

Confidential - Attorney's Eyes Only

(ii)   The ROCKERHEADZ BOBBLE PENS and ROCKERHEADZ BOBBLEHEAD Fashion Dolls ("Products")

17   The Defendant informed Mr Cox in an e-mail dated 6 May 2003 that he intended to market a ROCKERHEADZ BOBBLE Pen ("Pen") (a photograph is at Schedule 5) in the UK and requested him to seek the Claimant's consent to him marketing the Pen in the UK.

18   The Claimant also learnt from an independent source that Double Grand were marketing a product called ROCKERHEADZ BOBBLEHEAD Fashion Dolls, a photograph of which is at Schedule 6.

19   On 8 May 2003, the Claimant requested a further letter of undertaking from the Defendant which covered the Products. The Defendant did not provide the letter of undertaking.

**Copyright Infringement**

20   The Dolls and the Products copy a substantial part of the Drawings.

21   The Defendant acted beyond his duties as a director of Toy Depot Limited, as he enticed and procured Toy Depot Limited to carry out the infringing acts and was directly involved in purchasing the Dolls through Toy Depot Limited.  Therefore, the Defendant is a joint tortfeasor with Toy Depot Limited in respect to the Dolls.

22   From a date presently unknown to the Claimant, but prior to the issue of the Claim Form, the Defendant has infringed the copyright in the Drawings by issuing copies and threatening to issue copies of the Dolls and Products to the public.

23   From a date presently unknown to the Claimant, but prior to the issue of the Claim Form, the Defendant has infringed the Copyright in the Drawings by importing, distributing, selling, offering to sell or possessing in the course of business in the UK the Dolls and Products which copy a substantial part of the Drawings and where the Defendant knows or has reason to believe that they are infringing copies of the Drawings.

**PARTICULARS OF KNOWLEDGE AND/OR REASON FOR BELIEF**

Pending information and/or disclosure from the Defendant, the Claimant relies on the following:

23.1   The common knowledge in the Toy industry that the BRATZ dolls are protected by copyright or a right in the nature of copyright, and that such copyright is infringed by copying a substantial part of the design of the BRATZ dolls.

EXHIBIT _____ 41
-5-

Confidential - Attorney's Eyes Only

23.2    The letter dated 2 April 2003 from SJ Berwin to the Defendant by which the Defendant was expressly notified of the Claimant's claim to copyright.

**Registered Design Right Infringement**

24    From a date presently unknown to the Claimant, but prior to the issue of the Claim Form, the Defendant has infringed the Registered Design rights by offering, putting on the market, using, importing and stocking the Dolls and Products which have the same overall impression on the informed user as the Registered Designs.

**G    General**

25    By reason of the sale and distribution of the Dolls and Products in the UK by the Defendant, the Claimant has suffered loss and damage.

26    Unless restrained by this honourable Court, the Defendant threatens and intends to continue selling, dealing in, and distributing these products in the United Kingdom whereby the Claimant will suffer further loss and damage.

27    The Claimant is entitled to and claims interest on all sums which may be found to be due to it on enquiry or account claimed below, such interest being pursuant to Section 35(a) of the Supreme Act 1981 or under the equitable jurisdiction of the Court.

**AND THE CLAIMANT CLAIMS:**

1    An injunction to restrain the Defendant whether acting by himself, his servants or agents or any of them or otherwise howsoever from doing the following acts or any of them that is to say:

1.1.    infringing registered design nos. 2103577, 2103578, 2103579 and 2103580; and

1.2.    infringing copyright in the Drawings annexed at Schedule 1.

2    An injunction to restrain the Defendant whether acting by himself, his servants, or agents or any of them or otherwise howsoever from manufacturing, selling, offering for sale, importing, exporting, distributing, ordering, purchasing, advertising, supplying, disposing of or otherwise howsoever dealing in or with the MINI TRENDY TEENZ and TRENDY TEENZ dolls, ROCKERHEADZ BOBBLE PENS and ROCKERHEADZ BOBBLEHEAD FASHION DOLLS representations of which are annexed at Schedule 3, 4, 5 and 6 respectively.

3    An Order for delivery up to the Claimant or the Claimant's legal representative, SJ Berwin, or alternatively, destruction upon oath, of all infringing goods, articles and materials in the

EXHIBIT ___ 41
PAGE ___ 788

Confidential - Attorney's Eyes Only

MGA 0885382

power, possession, custody or control of the Defendant together with confirmation on Affidavit sworn by the Defendant that such delivery up (or destruction) has been completed.

4    An Order that the Defendant serve, within 7 (seven) days of the date of this Order, a statutory declaration upon SJ Berwin setting out in full:

    4.1    the names and addresses of all persons from whom the Defendant has obtained supplies of MINI TRENDY TEENZ and TRENDY TEENZ dolls, ROCKERHEADZ BOBBLE Pen's and ROCKERHEADZ BOBBLEHEAD FASHION dolls (or any of them) ("the Infringing Articles");

    4.2    the names and addresses of all persons from whom the Defendant has received orders or to whom the Defendant has supplied and/or distributed the Infringing Articles (or any of them); and

    4.3    the particulars of quantities of the Infringing Articles (or any of them) which the Defendant has manufactured, purchased, sold, supplied and/or distributed together with copies of purchase orders, sales orders, invoices and other documents evidencing such transactions.

5    An inquiry as to damages for copyright and registered design infringement or, at the option of the Claimant, an account of profits.

6    An Order for payment of all sums found to be due to the Claimant on the taking of the inquiry or account, such sums to be paid together with interest pursuant to section 35A of the Supreme Court Act 1981 or under the equitable jurisdiction of the Court.

EXHIBIT _____ 41

PAGE _____ 789

-7-

Confidential - Attorney's Eyes Only

MGA 0885383

Further or other relief.

8        Costs.


The Claimant believes that the facts stated in this Particulars of Claim are true. I am duly authorised by the Claimant to sign this statement.

Signed ..................................                    Dated 3 June 2003


Full name:        Raymond David Black
Solicitor at SJ Berwin, 222 Grays Inn Road, London, WC1X 8XF


Served this 3 June 2003 by SJ Berwin, 222 Grays Inn Road, London, WC1X 8XF   Ref: RDB/M17447.49  Solicitors for the Claimant.


EXHIBIT _____41_____

PAGE _____790_____

Confidential - Attorney's Eyes Only                    MGA 0885384

IN THE HIGH COURT OF JUSTICE

CHANCERY DIVISION

Claim form issued

B E T W E E N:

MGA ENTERTAINMENT INC.

Claimant

- and -

JAMES THOMAS CONNOLLY

Defendants

_____

PARTICULARS OF CLAIM

_____

SJ Berwin
222 Gray's Inn Road
London   WC1X 8XF

Tel:  020 7533 2222

Ref:  245/M17447.49/LT:289550.1/sacs

EXHIBIT _____ 41

PAGE _____ 791

Confidential - Attorney's Eyes Only

MGA 0885385

# SCHEDULE 1

1111/M17447.49/LT:289394.1/lads

EXHIBIT ____41____

PAGE ____292____

Confidential - Attorney's Eyes Only

MGA 0885386

6.4.23



face design, Fall 2001

EXHIBIT ___41___

PAGE ___793___

Confidential - Attorney's Eyes Only

MGA 0885387

Yasmin
original face design;
Fall 2001

EXHIBIT _____ 41
PAGE _____ 794

Confidential - Attorney's Eyes Only

MGA 0885388

6.4.25



*Cloe original*
*face design*
*Fall 2001*

EXHIBIT _____ 41

PAGE _____ 795

Confidential - Attorney's Eyes Only

MGA 0885389

6.4.26



face design

EXHIBIT _____ 41

PAGE _____ 796

Confidential - Attorney's Eyes Only

MGA 0885390



8/1998

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date 9/5/00

EXHIBIT _____ 41

PAGE _____ 797

Confidential - Attorney's Eyes Only

MGA 0885391

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date: 9/18/00

EXHIBIT _____ 41

PAGE _____ 798

Confidential - Attorney's Eyes Only

MGA 0885392



8/1998

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date. 9/13/00

EXHIBIT ___41___

PAGE ___799___

Confidential - Attorney's Eyes Only

MGA 0885393



© 1998

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date: 9/18/00

EXHIBIT _____ 41

PAGE _____ 800

Confidential - Attorney's Eyes Only

MGA 0885394



All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date : 9/18/00

EXHIBIT _____ 41

PAGE _____ 801

Confidential - Attorney's Eyes Only

MGA 0885395



© 8/1998

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

EXHIBIT _____ 41

PAGE _____ 802

Confidential - Attorney's Eyes Only

MGA 0885396



8/1998

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date   9/18/00

EXHIBIT _____ 41

PAGE _____ 803

Confidential - Attorney's Eyes Only

MGA 0885397



8/1998

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date 9/18/00

EXHIBIT _____ 41

PAGE _____ 804

Confidential - Attorney's Eyes Only

MGA 0885398

c
All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

EXHIBIT ____ 41
PAGE ____ 805

Confidential - Attorney's Eyes Only

MGA 0885399



All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date: 9/18/00

EXHIBIT _____ 41

PAGE _____ 806

Confidential - Attorney's Eyes Only

MGA 0885400

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date  9/18/00

EXHIBIT _____ 41

PAGE _____ 807

Confidential - Attorney's Eyes Only

MGA 0885401



All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

**EXHIBIT** ___41___   Contract date. 9/18/00

**PAGE** ___808___

Confidential - Attorney's Eyes Only

MGA 0885402

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

JUNE 2000

EXHIBIT _____ 41

PAGE _____ 809

MGA 0885403

# SCHEDULE 2

1111/M17447.49/LT:289394.1/ladB

EXHIBIT _____ 41

PAGE _____ 810

Confidential - Attorney's Eyes Only

MGA 0885404

ENTERTAINMENT
16730 Schoenborn Street
North Hills, California 91343

Dated as of September 18, 2000

Mr. Carter Bryant
1319 West 160th Street
Gardena, California 90247

Dear Mr. Bryant:

Set forth below are the terms and conditions upon which we (hereinafter "MGA") are retaining you ("Bryant") to consult and advise MGA in the design and development of certain products which MGA wishes to manufacture and distribute (hereinafter our agreement is sometimes referred to as the "MGA Consulting Agreement"). The parties' agreement is as follows:

1.    Retention as Consultant/Services: MGA retains Bryant to provide his services to consult with MGA and advise MGA on the design and development by MGA of a line of dolls presently known as "Bratz" (the "MGA Products"). Bryant will render his services at such locations and times as may be reasonably be designated by MGA. It is understood and agreed that Bryant shall provide his services on a "top priority" basis as his services pertain to other clients of Bryant. In addition, Bryant and all other Bryant staff will take direction from and be under the supervision of such person(s) as may be reasonably designated by MGA from time to time upon notice to Bryant. It is understood and agreed that, subject to MGA's prior written consent, Bryant may retain third party contractors ("Contractors") to assist at his direction in the services to be rendered hereunder. Such third parties shall be compensated in a manner ("Contractor Fees") to be determined between Bryant and such third parties and shall be subject to the terms of this Agreement, including without limitation, paragraphs 3, 4, and 7, below. Bryant shall enter into agreements with all Contractors on a form approved by MGA as conforming to the terms of this Agreement and confirming MGA's ownership of all results and proceeds of the services provided by any such Contractors; such form is attached a Exhibit "A" to this Agreement, and is incorporated herein by reference.

2.    Term/Exclusivity: The Term shall commence on the date of this Agreement. MGA shall have the right to terminate this Agreement on not less than forty-five (45) days prior written notice to Bryant. During the Term of this Agreement, Bryant will not provide consulting services to any person, firm or corporation engaged in the design, development and manufacture and sale of dolls or similar products.

3.    Ownership:

(a)    All results and proceeds of the services provided by Bryant hereunder and any Contractor, including without limitation, any inventions, and any documentation related thereto, and any other material, whether written or oral (collectively, the "Bryant Work Product") shall be considered "work made for hire" and shall be owned exclusively, throughout the world, and in perpetuity by MGA (including all copyrights and patents therein and thereto, and all renewals and extensions thereof). MGA shall have the sole and exclusive right to use the Bryant Work Product, in whole or in part, in whatever manner MGA may desire, including without limitation, the right to cut, edit, revise, alter and/or otherwise modify the Bryant Work Product and the results of Bryant's services hereunder and the Contractors' services, and to freely use, perform, distribute, exhibit and exploit such materials and license others to do so in any and all media now known or hereafter devised. MGA shall have the sole and exclusive right to copyright or patent the Bryant Work Product in MGA's name, as the owner and author thereof, and to secure any and all registrations, renewals and extensions of such copyrights and

{00006662.DOC/2 / 10/04/2000  03:05 PM}

1

EXHIBIT ____4/____

PAGE ____8/1____

Confidential - Attorney's Eyes Only

MGA 0885405

patents in MGA's name or B_____'s name or the Contractors' names, as per_____a pursuant to applicable statute. Bryant expressly waives, and shall cause all Contractors____waive, any "moral rights" (as such term is commonly understood around the world) in and to the Bryant Work Product prepared by Bryant and/or the Contractors pursuant to the Agreement. Bryant shall, upon request, execute, acknowledge and deliver, and shall cause each Contractor to execute, acknowledge and deliver, to MGA such additional documents as MGA may deem necessary to evidence and effectuate MGA's rights hereunder, and Bryant hereby grants to MGA the right as Bryant's attorney-in-fact to execute, acknowledge, deliver and record in the U.S. Copyright Office, the U.S. Patent Office or elsewhere any and all such documents. If, whether by statutory amendment to the U.S. Copyright and/or Patent Laws, or a decision by a court of competent jurisdiction interpreting such laws, MGA shall not be deemed to be the author or owner of the Bryant Work Product, this Agreement and each agreement with a Contractor shall, nevertheless, constitute an irrevocable assignment by Bryant and each Contractor, as applicable, to MGA of any and all of Bryant's and each Contractors' right, title and interest, including copyright and patent (and all renewals and extensions thereof), in and to the Bryant Work Product. Bryant acknowledges and agrees, and shall cause each Contractor to acknowledge and agree, that he and they have no interest in and shall not, by virtue of this Agreement or any services rendered by Bryant and/or each Contractor to MGA acquire any interest in the MGA Products and that MGA may exploit the MGA Products and any derivative works thereto, without obligation to Bryant and/or the Contractors, except as provided in Paragraph 4, below.

(b)     Without limiting the generality of the provisions of Paragraph 3(a), above, with respect only to any inventions, and any documentation related thereto, and any other material, whether written or oral, created by or for Bryant relating to the MGA Products prior to the commencement of the term of this Agreement, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Bryant, Bryant hereby irrevocably grants, conveys, transfers, sets over and assigns to MGA in perpetuity all of Bryant's right, title and interest, in an to the such material, including, without limiting the generality of the foregoing, all rights under copyright and patent (and all renewals and extensions thereof) including the right to produce and authorize the production of any and all derivative works, and all proprietary rights of any kind therein, now known or hereafter created throughout the world. MGA shall have the sole and exclusive right to use such material, in whole or in part, in whatever manner MGA may desire, including without limitation, the right to cut, edit, revise, alter and/or otherwise modify such materials and to freely use, perform, distribute, exhibit and exploit such materials and license others to do so in any and all media now known or hereafter devised or refrain from doing so as MGA may determine. Bryant expressly waives any "moral rights" (as such term is commonly understood around the world) in and to such materials.

4.     Compensation/Costs:

(a)     For the first six (6) months of the Term of this Agreement, MGA shall pay Bryant for his services at the rate of five thousand five hundred dollars ($5,500.00) per month; for the next three (3) months of the Term, MGA shall pay Bryant for his services at the rate of five thousand dollars ($5,000.00) per month. All sums paid to Bryant as monthly fees shall be deemed to be non-refundable, fully-recoupable advances against any royalties that may be payable to Bryant pursuant to paragraph 4(b), below.

(b)     MGA shall pay to Bryant a royalty of three percent (3%) of the Net Sales Receipts from the sales by MGA of any of the MGA Products developed by MGA on which Bryant provided his consulting services. As used herein, the term "Net Sales Receipts" means all monies actually received by MGA from its customers on sales of MGA Products less (i) any and all excise, sales, value added or comparable or similar taxes; (ii) freight and similar third party handling charges paid or payable by MGA; and (iii) returns, discounts, allowances or credits (inclusive of co-op and trade discounts and allowances). MGA shall account to Bryant on a calendar quarterly basis within thirty (30) days after the end of each quarter. All statements of royalties rendered by MGA hereunder shall be conclusive, final,

{00006662.DOC/2 / 10/04/2000  03:05 PM}

2

EXHIBIT ___41____

PAGE ___812___

Confidential - Attorney's Eyes Only                                    MGA 0885406

and binding on Bryant, shall constitute an account stated, and shall not be subject to any question for any reason whatsoever unless specific written objection, stating the basis thereof, is given by Bryant to MGA within two (2) years after the date rendered. No action, suit, or proceeding of any nature in respect of any royalty statement or other accounting rendered by MGA hereunder may be maintained against MGA unless such action, suit, or proceeding is commenced against MGA in a court of competent jurisdiction within one (1) year after the date of MGA's notice rejecting such objection. Bryant or his representatives shall have the right, not more than once per year and not more than once per statement of royalties, to examine MGA's books and records relating to the sales of such MGA Products, such examination to be conducted during MGA's normal business hours and upon reasonable prior written notice.

(c)     All costs and expenses incurred by Bryant in connection with the performance of his obligations hereunder shall be borne solely by Bryant, except as otherwise agreed and incurred with MGA's prior written consent. In the event MGA requests Bryant to travel to the Orient on MGA's behalf in connection with his services hereunder, MGA will reimburse Bryant for all travel expenses incurred in connection therewith, such as parking, airfare (economy class), auto rental, meals and hotel accommodations. Reimbursement shall be at the actual cost of such item without any mark-up.

(d)     Bryant shall submit invoices to MGA for his monthly fees (and reimbursable expenses, if and as agreed) on a monthly basis. Each invoice shall provide sufficient detail to support the monthly fee charges and hours rendered (and shall include satisfactory copies of bills and/or payments for reimbursable expenses, as applicable). MGA shall pay each such invoice within fifteen (15) days after receipt of such invoice, provided, however, MGA reserves the right to request further explanation or documentation before paying any invoice submitted by Bryant.

(e)     MGA shall use its reasonable business efforts, consistent with its business judgment, to market, promote, distribute, sell and/or exploit the MGA Products and to collect on all monies due from sales. MGA has not made and does not hereby make any representation or warranty with respect to the quantity of sales (if any) of MGA Products embodying the Property which MGA may sell. Bryant recognizes and acknowledges that the sale of MGA Products is speculative and agrees that MGA's judgment and the judgment of its subsidiaries and affiliated companies with regard to the sales of any of its MGA Products and with regard to the marketing, promotion, advertising and exploitation of the MGA Products shall be binding and conclusive upon Bryant. Bryant warrants and agrees that Bryant will not make any claim, nor shall any liability be imposed upon MGA based upon any claim, that more sales could have been made or that better business could have been done than what was actually made or done by MGA or any of MGA's subsidiaries or its affiliated companies, or that better prices or terms could have been obtained.

5.     <u>Warranties and Indemnity</u>:  Bryant represents, warrants and agrees that:

(a)     he has the right and is free to execute this Agreement, to grant the rights granted by him to MGA hereunder, and to perform each and every term and provision hereof;

(b)     neither the execution and delivery of this Agreement nor the performance by Bryant of any of his obligations hereunder will constitute a violation, breach or default under any agreement, arrangement or understanding, or any other restriction of any kind, to which Bryant is a party or by which Bryant is bound;

(c)     the Bryant Work Product shall be free of all liens and encumbrances and there will be no claims, demands or actions pending or threatened with respect thereto; and that the Bryant Work Product is original and no part thereof infringes or shall infringe upon any common law or statutory rights or intellectual property rights of any third party including, without limitation, contractual rights,

{C0006662.DOC/2 / 10/04/2000  03:05 PM}

3

EXHIBIT ___4___

PAGE ___8/3___

Confidential - Attorney's Eyes Only

MGA 0885407

...tents, copyrights, mask-work [ ], trade secrets, rights of privacy and other [ ] [ ] property rights;

(d)   he shall comply with all applicable laws and regulations in force during the Term of this Agreement with respect to the services to be rendered hereunder; and

(e)   he shall indemnify and hold MGA harmless from and against any and all claims, losses, costs, judgments, settlements, damages and expenses (including reasonable counsel fees) arising from any breach by him of any of the warranties, representations and agreements made by him hereunder.

6.   Default/Termination:

(a)   In the event either Party fails to perform any of its material obligations hereunder, or breaches any representation, warranty or agreement contained herein, the other Party may terminate this Agreement on thirty (30) days prior written notice, provided the breaching Party shall not have remedied such failure within such thirty (30) day period.

(b)   Upon the termination of this Agreement Bryant shall turn over to MGA all materials relating to the MGA Products furnished by MGA to Bryant or shall give MGA satisfactory evidence of their destruction.

7.   Confidentiality:

(a)   Bryant shall keep in confidence and not disclose to any third party, without the written permission of MGA, the Confidential Information made known to him under this Agreement. As used herein, the term "Confidential Information" means information relating to MGA's products (whether current or projected), product titles, customers, employees, tools and techniques, designs, drawings, schematics and other documentation relating thereto and other confidential and proprietary business information of MGA and which is expressly labeled or identified to Bryant in writing as "confidential" or which, under the circumstances of such disclosure, Bryant knows, or reasonably should know, are treated by MGA as confidential. This requirement of confidentiality shall not apply to any information that is (I) in the public domain through no wrongful act of Bryant; (ii) rightfully received by the Bryant from a third party who is not bound by a restriction of nondisclosure; (iii) already in the Bryant's possession without restriction as to disclosure; or (iv) required to be disclosed by operation of law or by order of a court or administrative body of competent jurisdiction, (provided that prior to such disclosure, MGA shall first receive notice thereof from Bryant and have the opportunity to contest such order or requirement of disclosure or seek appropriate protective order).

(b)   Bryant agrees and acknowledges that all Confidential Information disclosed to him shall be and remain the sole property of MGA. Nothing contained in this Agreement shall be construed as granting to Bryant any right, title or interest of any kind, by license or otherwise, to the Confidential Information disclosed by MGA, the intellectual property therein or any part or copy thereof. Bryant further acknowledges and agrees that nothing contained herein shall be construed as granting Bryant any right to develop, manufacture, produce and/or distribute any product(s) derived from or which otherwise uses any of the Confidential Information disclosed by MGA, or authorize or in any way assist others to do so. Bryant may not make, sell, license or distribute copies of the Confidential Information disclosed by MGA and may not sublicense, transfer or assign in any manner whatsoever this Agreement or any of Bryant's rights or obligations under this Agreement.

(c)   Bryant acknowledges that his failure to perform any of the terms or conditions of this Agreement shall result in immediate and irreparable damage to MGA. Bryant also acknowledges that there may be no adequate remedy at law for such failures and that in the event thereof MGA shall be

{00006662.DOC/2 / 10/04/2000  03:05 PM}

4

Confidential - Attorney's Eyes Only

EXHIBIT _____41_____

PAGE _____8/4_____

MGA 0885408

entitled to equitable relief in the nature of injunction and to all other available relief, at law and/or in equity.

8.    **Notices:** All notices, statements and/or payments to be given to the parties hereunder shall be addressed to the parties at the addresses set forth on the first page hereof or at such other address as the parties shall designate in writing from time to time. All notices shall be in writing and shall either be served by personal delivery, mail, or facsimile (if confirmed by mail or personal delivery of the hard copy), all charges prepaid. Except as otherwise provided herein, such notices shall be deemed given when personally delivered, all charges prepaid, or on the date five (5) days following the date of mailing, except that notices of change of address shall be effective only after the actual receipt thereof. Copies of all notices to MGA shall be sent to Fischbach, Perlstein & Lieberman LLP, 1875 Century Park East, Suite 850, Los Angeles, California 90067, Attention: David S. Rosenbaum, Esq. Copies of all notices to Bryant shall be sent to Carter Bryant 1319 West 160th Street, Gardena, California 90247.

9.    **Independent Contractor/No Partnership/Third Party Beneficiary:** Bryant's relationship with MGA is that of an independent contractor. Bryant does not have, and will not represent that he has, any power, right or authority to bind MGA, or to assume or create any obligation or responsibility, express or implied, on behalf of MGA in MGA's name. Nothing stated in the Agreement shall be construed as constituting a partnership or as creating the relationships of employer/employee or principal/agent between the parties. In all matters relating to the Agreement, Bryant shall not act as MGA's employee within the meaning or application of any federal or state unemployment insurance laws, or any other laws or regulations which may impute any obligations or liabilities to MGA by reason of an employment relationship. Bryant will be solely responsible for all taxes, including without limitation, employee and employer, and that he carries all of his own insurance. Neither of the parties hereto shall hold itself out contrary to the terms of this provision by advertising or otherwise. This Agreement shall not be construed to be for the benefit of any third party.

10.    **Services Rendered Deemed Special, etc.:** Bryant acknowledges that the services to be rendered by him hereunder are of a special, unique, extraordinary and intellectual character which gives them peculiar value, the loss of which cannot be adequately compensated for in an action at law and that a breach of any term, condition or covenant hereof will cause irreparable harm and injury to MGA and in addition to any other available relief MGA will be entitled to seek injunctive relief.

11.    **General Provisions:**

   (a)    This Agreement may not be assigned by either Party hereto either voluntarily or by operation of law. Any such assignment shall not relieve such Party of its obligations hereunder.

   (b)    The titles of the paragraphs of this Agreement are for convenience only and shall not in any way affect the interpretation of any paragraph of this Agreement or the Agreement itself.

   (c)    A waiver by either Party of the terms or conditions of this Agreement in any instance shall not be deemed or construed to be a waiver of such terms or conditions for the future or of any subsequent breach thereof. All remedies, rights, undertakings, obligations and agreements contained herein shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either Party.

   (d)    Neither Party hereto shall be liable to the other for any incidental, consequential, special or punitive damages of any nature or kind, arising out of in connection with a breach by such Party of this Agreement, whether such liability is asserted on the basis of contract, tort (including negligence or strict liability), or otherwise, even if such Party has been warned of the possibility of any such loss or damage.

{00006662.DOC/2 / 10/04/2000  03:05 PM}

5

EXHIBIT _____ 41

PAGE _____ 8/5

Confidential - Attorney's Eyes Only

MGA 0885409

State of California, applicat⬭⬭agreements made and to be performed en⬭⬭therein, and the parties hereto submit and co⬭⬭ent to the jurisdiction of the courts of the Stat⬭ of California, including Federal Courts located therein, should Federal jurisdiction requirements exist, in any action brought to enforce (or otherwise relating to) this contract.

     (f)    This Agreement constitutes the entire Agreement between the parties hereto and supersedes all prior agreements, whether written or oral, with respect to the subject matter herein contained. No provision of this Agreement shall be deemed waived, amended or modified by either Party unless such waiver, amendment or modification shall be in writing and signed by a duly authorized officer of the Party against whom the waiver, amendment or modification is to be enforced.

     (g)    Nothing contained in this Agreement shall be construed so as to require the commission of any act contrary to law, and wherever there is any conflict between any provision of this Agreement and any material statute, law, ordinance, order or regulation contrary to which the parties hereto have no legal right to contract, the latter shall prevail, but in such event any provision of this Agreement so affected shall be curtailed and limited only to the extent necessary to bring it within the legal requirements.

     Kindly indicate your agreement with the foregoing by signing in the space provided below.

Very truly yours,

MGA ENTERTAINMENT

By: _____

Its: _____

AGREED TO AND ACCEPTED:

_____
CARTER BRYANT

_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_
Social Security Number

{00006862.DOC/2 / 10/04/2000  03:05 PM}

6

EXHIBIT _____41_____

PAGE _____816_____

Confidential - Attorney's Eyes Only

MGA 0885410

# SCHEDULE 3

1111/M17447.49/LT:289394.1/lads

EXHIBIT ____41____

PAGE ____8/7____

Confidential - Attorney's Eyes Only

MGA 0885411



EXHIBIT _____ 41

PAGE _____ 8/8

MGA 0885412

# SCHEDULE 4

1111/M17447.49/LT:289394.1/lads

EXHIBIT _____ 41

PAGE _____ 8/9

Confidential - Attorney's Eyes Only

MGA 0885413



EXHIBIT _____ 41

PAGE _____ 820

Confidential - Attorney's Eyes Only

MGA 0885414

# SCHEDULE 5

1111/M17447.49/LT:289384.1/lads

EXHIBIT _____ 41 _____

PAGE _____ 821

Confidential - Attorney's Eyes Only

MGA 0885415



ROCKERHEADZ BOBBLE PENS

EXHIBIT _____ 41 _____

PAGE _____ 822

Confidential - Attorney's Eyes Only

MGA 0885416

# SCHEDULE 6

1111/M17447.49/LT:289394.1/lads

EXHIBIT _____ 41_____

PAGE _____ 823 _____

Confidential - Attorney's Eyes Only

MGA 0885417



EXHIBIT _____ 41 _____

PAGE _____ 824 _____

Confidential - Attorney's Eyes Only

MGA 0885418

**Exhibit 42**

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT,  AN INDIVIDUAL,  )
                              )
              PLAINTIFF,      )
                              )
      V.                      )        NO.  CV 04-9040 SGL (RNBX)
                              )
MATTEL, INC., A DELAWARE      )
CORPORATION,                  )
                              )
          DEFENDANTS.         )
_____)
                              )
AND CONSOLIDATED ACTION (S).  )
                              )

# C O N F I D E N T I A L

### (ATTORNEYS' EYES ONLY)

## DEPOSITION OF PAULA GARCIA

## VOLUME IV

## OCTOBER 10, 2007



REPORTED BY:
J'ANA SIEGERS
CSR NO.  10845
JOB NO. 07AE634-JS

COURT REPORTERS
515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT _____42_____

PAGE _____825_____

1          UNITED STATES DISTRICT COURT

2         CENTRAL DISTRICT OF  TO: ¿GRUNDY **RECEIVED**

3            EASTERN DIVIS:     OCT 2 4 2007

4

5    CARTER BRYANT, AN INDIVIDUAL,)   **CALENDARED**

6               PLAINTIFF,   )  ( CV 04-9049 SGL (RNBX)

7      VS.                   )

8    MATTEL, INC., A DELAWARE      )
     CORPORATION,             )

9                        )

               DEFENDANT.     )

10                        )

11    ———————————————————————)

     AND CONSOLIDATED ACTIONS.    )

12    ———————————————————————)

13

14

15

16        CONFIDENTIAL - ATTORNEYS' EYES ONLY

17

18                VOLUME IV

19

20     VIDEOTAPED DEPOSITION OF **PAULA GARCIA**,

21     TAKEN ON BEHALF OF THE DEFENDANT, AT

22     865 SOUTH FIGUEROA STREET, TENTH FLOOR,

23     LOS ANGELES, CALIFORNIA, COMMENCING AT

24     10:22 A.M., WEDNESDAY, OCTOBER 10, 2007,

25     BEFORE J'ANA SIEGERS, CSR NUMBER 10845.

                                           963

```
 1   APPEARANCES OF COUNSEL:

 2


 3   FOR PLAINTIFF CARTER BRYANT:

 4        KEKER & VAN NEST, LLP
          BY:  MICHAEL H. PAGE, ESQ.
 5        710 SANSOME STREET
          SAN FRANCISCO, CALIFORNIA 94111
 6        (415) 391-5400
          MPAGE@KVN.COM
 7

 8
     FOR DEFENDANT MATTEL, INC.:
 9
          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
10        BY:  MICHAEL T. ZELLER, ESQ.
               BRIDGET HAULER, ESQ.
11        865 SOUTH FIGUEROA STREET
          TENTH FLOOR
12        LOS ANGELES, CALIFORNIA 90017-2543
          (213) 443-3000
13        MICHAELZELLER@QUINNEMANUEL.COM
          BRIDGETHAULER@QUINNEMANUEL.COM
14

15
     FOR MGA ENTERTAINMENT, INC.:
16
          O'MELVENY & MYERS, LLP
17        BY:  DIANA M. TORRES, ESQ.
          400 SOUTH HOPE STREET
18        LOS ANGELES, CALIFORNIA 90071-2899
          (213) 430-6000
19        DTORRES@OMM.COM

20

21

22   ALSO PRESENT:

23        PETER ACHESON, JTV LITIGATION SERVICES, INC.

24        MICHAEL MOORE, MATTEL, INC.

25        RICH DANIELS, MGA ENTERTAINMENT, INC.
```

964

EXHIBIT _____ 42

PAGE _____ 827

| | | |
|---|---|---|
| 12:49:47 | 1 | CONCEPTION OF THE BRATZ PRODUCT LINE, |
| 12:49:49 | 2 | INCLUDING THE DESIGN FEATURES OF THE |
| 12:49:52 | 3 | BRATZ DOLLS AND OTHER BRATZ PRODUCTS, |
| 12:49:54 | 4 | THE BRATZ PACKAGING, THE BRATZ MARK, |
| 12:49:57 | 5 | AND OTHER MARKS, NAMES AND LOGOS USED |
| 12:49:59 | 6 | IN CONNECTION WITH THE BRATZ LINE OF |
| 12:50:01 | 7 | PRODUCTS.  EACH OF THESE IS ORIGINAL |
| 12:50:03 | 8 | AND WAS INDEPENDENTLY CONCEIVED"? |
| 12:50:07 | 9 |         DO YOU SEE THAT? |
| 12:50:07 | 10 |     A.    YES. |
| 12:50:07 | 11 |     Q.    AND YOU REVIEWED THIS DECLARATION PRIOR TO |
| 12:50:09 | 12 | THE TIME THAT YOU SIGNED IT, RIGHT? |
| 12:50:11 | 13 |     A.    YES. |
| 12:50:12 | 14 |     Q.    IS THERE ANYTHING ABOUT PARAGRAPH 2 THAT I |
| 12:50:14 | 15 | JUST READ THAT YOU BELIEVE, SITTING HERE NOW, IS NOT |
| 12:50:18 | 16 | ENTIRELY ACCURATE? |
| 12:50:19 | 17 |     A.    NO. |
| 12:50:20 | 18 |         MS. TORRES:  OBJECTION.  ASKED AND |
| 12:50:20 | 19 | ANSWERED. |
| 12:50:22 | 20 | BY MR. ZELLER: |
| 12:50:22 | 21 |     Q.    FOCUSING ON THE PORTION OF PARAGRAPH 2 |
| 12:50:26 | 22 | WHERE IT SAYS: |
| 12:50:28 | 23 |         "KNOWLEDGE OF THE CIRCUMSTANCES |
| 12:50:29 | 24 |     SURROUNDING THE CONCEPTION OF THE |
| 12:50:31 | 25 |     BRATZ PRODUCT LINE, INCLUDING." |

1072

| | | |
|---|---|---|
| 12:50:34 | 1 | AND THEN IT GOES ON TO INCLUDE THE BRATZ |
| 12:50:36 | 2 | MARK, DO YOU SEE THAT? |
| 12:50:40 | 3 | A.   YES. |
| 12:50:41 | 4 | Q.   WHAT WAS YOUR PERSONAL INVOLVEMENT IN THE |
| 12:50:43 | 5 | CONCEPTION OF THE BRATZ MARK? |
| 12:50:47 | 6 | MS. TORRES:   OBJECTION.   VAGUE AND TAKEN |
| 12:50:48 | 7 | OUT OF CONTEXT. |
| 12:50:56 | 8 | THE DEPONENT:   WHAT WAS MY PERSONAL |
| 12:50:56 | 9 | INVOLVEMENT? |
| 12:50:57 | 10 | BY MR. ZELLER: |
| 12:50:58 | 11 | Q.   YES. |
| 12:51:01 | 12 | A.   I WAS INVOLVED IN THE AGREEMENT TO PROCEED |
| 12:51:06 | 13 | WITH THE BRATZ NAME AS REPRESENTATION FOR OUR BRAND. |
| 12:51:12 | 14 | Q.   ANYTHING ELSE? |
| 12:51:15 | 15 | MS. TORRES:   OBJECTION.   VAGUE. |
| 12:51:20 | 16 | THE DEPONENT:   NO, I DON'T BELIEVE SO. |
| 12:51:20 | 17 | BY MR. ZELLER: |
| 12:51:23 | 18 | Q.   FOCUSING YOUR ATTENTION ON THIS PORTION OF |
| 12:51:26 | 19 | PARAGRAPH 2 WHERE IT SAYS "THE CIRCUMSTANCES |
| 12:51:28 | 20 | SURROUNDING THE CONCEPTION," WHAT DO YOU MEAN BY |
| 12:51:37 | 21 | "CONCEPTION" HERE? |
| 12:51:37 | 22 | A.   "CONCEPTION," IN MY MIND, AS NOTED HERE, |
| 12:51:42 | 23 | IS THE CREATION OF THE CONCEPT ITSELF, OF THE FINAL |
| 12:51:49 | 24 | PRODUCED BRATZ PRODUCTION LINE. |
| 12:51:57 | 25 | Q.   ANYTHING ELSE? |

1073

EXHIBIT _____ 42

PAGE _____ 829

| | | |
|---|---|---|
| 12:51:58 | 1 | A.    NO. |
| 12:52:04 | 2 | Q.    WHEN YOU SAY "EACH OF THESE IS ORIGINAL |
| 12:52:07 | 3 | AND WAS INDEPENDENTLY CONCEIVED," YOU WERE REFERRING |
| 12:52:10 | 4 | TO THE BRATZ MARK AS WELL? |
| 12:52:14 | 5 | MS. TORRES:  OBJECTION.  VAGUE.  COMPOUND. |
| 12:52:24 | 6 | THE DEPONENT:  YES, I BELIEVE SO. |
| 12:52:25 | 7 | BY MR. ZELLER: |
| 12:52:27 | 8 | Q.    AND YOU SAY HERE THAT "EACH OF THESE WAS |
| 12:52:31 | 9 | ORIGINAL AND INDEPENDENTLY CONCEIVED."  WHAT'S |
| 12:52:33 | 10 | "CONCEIVED" MEAN HERE? |
| 12:52:37 | 11 | MS. TORRES:  OBJECTION.  CALLS FOR A LEGAL |
| 12:52:37 | 12 | CONCLUSION. |
| 12:52:42 | 13 | THE DEPONENT:  AGAIN, CREATED, ARRIVED AT. |
| 12:52:47 | 14 | BY MR. ZELLER: |
| 12:52:50 | 15 | Q.    SO WHAT KNOWLEDGE OR INFORMATION DO YOU |
| 12:52:52 | 16 | HAVE ABOUT THE CREATION OF "BRATZ" AS A NAME? |
| 12:52:58 | 17 | MS. TORRES:  OBJECTION.  MISCHARACTERIZES |
| 12:53:01 | 18 | THE DOCUMENT AND VAGUE. |
| 12:53:19 | 19 | THE DEPONENT:  COULD YOU PLEASE REPEAT THE |
| 12:53:20 | 20 | QUESTION? |
| | 21 | (THE DEPOSITION OFFICER READ THE |
| | 22 | RECORD AS FOLLOWS: |
| | 23 | "QUESTION:  SO WHAT KNOWLEDGE OR |
| | 24 | INFORMATION DO YOU HAVE ABOUT THE |
| | 25 | CREATION OF 'BRATZ' AS A NAME?") |

1074

EXHIBIT _____ 42

PAGE _____ 830

12:53:31  1        MS. TORRES:  CAN YOU -- IS THERE A PART OF

12:53:32  2   THIS THAT YOU'RE REFERRING TO SPECIFICALLY?

12:53:36  3        MR. ZELLER:  YEAH.  IT WAS IN MY PRIOR

12:53:39  4   QUESTION.

12:53:39  5        MS. TORRES:  THE ONE YOU JUST READ BACK OR

12:53:39  6   THE ONE BEFORE THAT?

12:53:39  7        MR. ZELLER:  THE ONE BEFORE THAT.

12:53:39  8        MS. TORRES:  CAN YOU READ BACK THE PRIOR

12:53:39  9   QUESTION?

         10             (THE DEPOSITION OFFICER READ THE

         11        RECORD AS FOLLOWS:

         12        "QUESTION:  AND YOU SAY HERE THAT

         13        'EACH OF THESE WAS ORIGINAL AND

         14        INDEPENDENTLY CONCEIVED.'  WHAT'S

         15        'CONCEIVED' MEAN HERE?")

12:54:00 16        MS. TORRES:  I DON'T THINK IT WAS IN THAT

12:54:03 17   QUESTION.

12:54:03 18        MR. ZELLER:  SHE ANSWERED THE QUESTION.  I

12:54:04 19   ASKED HER A QUESTION ABOUT HER ANSWER.  IF SHE CAN

12:54:07 20   PLEASE ANSWER IT.

         21             (THE DEPOSITION OFFICER READ THE

         22        RECORD AS FOLLOWS:

         23        "QUESTION:  AND YOU SAY HERE THAT

         24        'EACH OF THESE WAS ORIGINAL AND

         25        INDEPENDENTLY CONCEIVED.'  WHAT'S

                                                        1075

EXHIBIT _____ 42

PAGE _____ 831

1    'CONCEIVED' MEAN HERE?

2        "MS. TORRES: OBJECTION. CALLS

3    FOR A LEGAL CONCLUSION.

4        "ANSWER: AGAIN, CREATED, ARRIVED

5    AT.

6        "QUESTION: SO WHAT KNOWLEDGE OR

7    INFORMATION DO YOU HAVE ABOUT THE

8    CREATION OF 'BRATZ' AS A NAME?")

12:54:34   9    MS. TORRES: OBJECTION. MISCHARACTERIZES

12:54:35   10   THE DOCUMENT TO THE EXTENT IT'S ATTEMPTING TO

12:54:39   11   CHARACTERIZE THE DOCUMENT, AND INCOMPREHENSIBLE

12:54:42   12   OTHERWISE.

12:54:48   13       THE DEPONENT: I DO NOT HAVE SPECIFIC

12:54:52   14   INFORMATION ON THE -- ON -- MGA HAS A DEFINITION AND

12:55:18   15   CREATION OF THE WORD AND NAME "BRATZ."

12:55:26   16   BY MR. ZELLER:

12:55:27   17       Q.   DID MGA CONCEIVE OF THE BRATZ NAME?

12:55:30   18       MS. TORRES: OBJECTION. VAGUE, CALLS FOR

12:55:31   19   A LEGAL CONCLUSION, AND INCOMPREHENSIBLE.

12:55:38   20       THE DEPONENT: NO.

12:55:39   21   BY MR. ZELLER:

12:55:41   22       Q.   DIRECTING YOUR ATTENTION TO PARAGRAPH 3,

12:55:45   23   DO YOU SEE THE SENTENCE WHERE IT SAYS:

12:55:47   24       "NEITHER I, NOR ANYONE ELSE OF

12:55:49   25   WHOM I AM AWARE WHO WAS INVOLVED IN

1076

| 12:55:52 | 1 | THE CONCEPTION OF THE BRATZ NAME OR |
| 12:55:55 | 2 | ANY BRATZ PRODUCT OR DESIGN, HAD ANY |
| 12:55:58 | 3 | PRIOR KNOWLEDGE OR AWARENESS OF |
| 12:55:59 | 4 | ART ATTACKS INK, ITS PRODUCTS, ITS |
| 12:56:02 | 5 | ALLEGED USE OF THE WORDS BRAT, BRATS, |
| 12:56:06 | 6 | OR BRAT PACK, OR HAD EVER SEEN ANY OF |
| 12:56:09 | 7 | ART ATTACKS INK'S PRODUCTS BEFORE THIS |
| 12:56:11 | 8 | LAWSUIT"? |
| 12:56:12 | 9 | DO YOU SEE THAT? |
| 12:56:13 | 10 | A.   YES. |
| 12:56:13 | 11 | Q.   AND THESE ARE -- THESE ARE WORDS THAT YOU |
| 12:56:15 | 12 | REVIEWED PRIOR TO SIGNING THIS DECLARATION UNDER |
| 12:56:18 | 13 | OATH, CORRECT? |
| 12:56:19 | 14 | A.   YES. |
| 12:56:21 | 15 | Q.   AND YOU UNDERSTOOD THAT WHEN YOU SAID, |
| 12:56:26 | 16 | "NEITHER I NOR ANYONE ELSE OF WHOM I WAS AWARE WAS |
| 12:56:30 | 17 | INVOLVED IN THE CONCEPTION OF THE BRATZ NAME," THAT |
| 12:56:35 | 18 | YOU WERE CONVEYING TO PEOPLE, READERS, THAT YOU WERE |
| 12:56:38 | 19 | INVOLVED IN THE CONCEPTION OF THE BRATZ NAME? |
| 12:56:41 | 20 | MS. TORRES:  OBJECTION.  MISCHARACTERIZES |
| 12:56:43 | 21 | THE DOCUMENT. |
| 12:56:51 | 22 | THE DEPONENT:  I DON'T BELIEVE THAT'S WHAT |
| 12:56:52 | 23 | THIS SENTENCE IDENTIFIES. |
| 12:56:54 | 24 | BY MR. ZELLER: |
| 12:56:55 | 25 | Q.   WELL, WHAT DID YOU UNDERSTAND THE WORDS TO |

1077

| | | |
|---|---|---|
| 12:56:59 | 1 | MEAN WHEN YOU'RE -- WELL, LET ME TRY IT THIS WAY: |
| 12:57:02 | 2 | YOU'LL AGREE WITH ME THAT THIS LANGUAGE |
| 12:57:06 | 3 | MEANS, AND YOU UNDERSTOOD IT TO MEAN WHEN YOU SIGNED |
| 12:57:08 | 4 | THIS DECLARATION, THAT YOU WERE, QUOTE, "INVOLVED IN |
| 12:57:11 | 5 | THE CONCEPTION OF THE BRATZ NAME," END QUOTE, RIGHT? |
| 12:57:18 | 6 | MS. TORRES:  OBJECTION.  MISCHARACTERIZES |
| 12:57:19 | 7 | THE DOCUMENT AND THE WITNESS'S PRIOR TESTIMONY. |
| 12:57:27 | 8 | THE DEPONENT:  I DON'T READ THAT SENTENCE |
| 12:57:28 | 9 | TO SUGGEST WHAT YOU JUST SPOKE OF. |
| 12:57:32 | 10 | BY MR. ZELLER: |
| 12:57:33 | 11 | Q.   WHAT'S THAT PORTION OF THE SENTENCE MEAN? |
| 12:57:34 | 12 | A.   I THINK IT -- IN THE WAY THAT I READ IT, |
| 12:57:38 | 13 | IT'S ME OR ANYBODY I'M AWARE OF WHO WAS INVOLVED IN |
| 12:57:43 | 14 | THE CONCEPTION OF THE BRATZ NAME.  TWO SEPARATE |
| 12:57:47 | 15 | BUCKETS. |
| 12:57:47 | 16 | Q.   WHAT DO THE WORDS "ANYONE ELSE" SUGGEST TO |
| 12:57:50 | 17 | YOU IN THE CONTEXT OF THIS SENTENCE? |
| 12:58:00 | 18 | A.   I DON'T -- ANYBODY SEPARATE FROM ME WHO |
| 12:58:06 | 19 | MAY HAVE BEEN INVOLVED IN THE CONCEPTION OF BRATZ. |
| 12:58:10 | 20 | Q.   IS IT YOUR TESTIMONY THAT YOU DIDN'T |
| 12:58:13 | 21 | UNDERSTAND THIS SENTENCE TO BE SUGGESTING IN ANY |
| 12:58:16 | 22 | FORM THAT YOU WERE, YOURSELF, INVOLVED IN THE |
| 12:58:22 | 23 | CONCEPTION OF THE BRATZ NAME? |
| 12:58:25 | 24 | A.   CORRECT. |
| 12:58:35 | 25 | Q.   PARAGRAPH 2 REFERS TO NOT ONLY THAT YOU |

1078

EXHIBIT ___42___

PAGE ___834___

1          DEPOSITION OFFICER'S CERTIFICATE

2

3    STATE OF CALIFORNIA        )
                                )    SS.
4    COUNTY OF ORANGE           )

5

6        I, J'ANA SIEGERS, HEREBY CERTIFY:

7        I AM A DULY QUALIFIED CERTIFIED SHORTHAND

8    REPORTER IN THE STATE OF CALIFORNIA, HOLDER OF

9    CERTIFICATE NUMBER CSR 10845 ISSUED BY THE COURT

10   REPORTERS BOARD OF CALIFORNIA AND WHICH IS IN FULL

11   FORCE AND EFFECT. [FED. R. DIV. P. 28(A)].

12       I AM AUTHORIZED TO ADMINISTER OATHS OR

13   AFFIRMATIONS PURSUANT TO CALIFORNIA CODE OF CIVIL

14   PROCEDURE, SECTION 2093(B) AND PRIOR TO BEING

15   EXAMINED, THE DEPONENT WAS FIRST DULY SWORN BY ME.

16   [FED. R. CIV. P. 28(A), 30(F)(1)].

17       I AM NOT A RELATIVE OR EMPLOYEE OR ATTORNEY OR

18   COUNSEL OF ANY OF THE PARTIES, NOR AM I A RELATIVE

19   OR EMPLOYEE OF SUCH ATTORNEY OR COUNSEL, NOR AM I

20   FINANCIALLY INTERESTED IN THIS ACTION.

21   [FED. R. CIV. P. 28].

22       I AM THE DEPOSITION OFFICER THAT

23   STENOGRAPHICALLY RECORDED THE TESTIMONY IN THE

24   FOREGOING DEPOSITION AND THE FOREGOING TRANSCRIPT IS

25   A TRUE RECORD OF THE TESTIMONY GIVEN BY THE

                                                    1328

EXHIBIT _____ 42

PAGE _____ 835

1  DEPONENT.   [FED. R. CIV. P. 30(F)(1)].

2       BEFORE COMPLETION OF THE DEPOSITION, REVIEW OF

3  THE TRANSCRIPT [X] WAS [ ] WAS NOT REQUESTED.   IF

4  REQUESTED, ANY CHANGES MADE BY THE DEPONENT (AND

5  PROVIDED TO THE REPORTER) DURING THE PERIOD ALLOWED

6  ARE APPENDED HERETO.   [FED. R. CIV. P. 30(E)].

7

8

9  DATED:   OCTOBER 23, 2007.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1329

EXHIBIT _____ 42

PAGE _____ 836

**Exhibit 43**

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| BRYANT, | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | NO.  CV 04-9040 SGL |
| | ) | (RNBX) |
| MATTEL, INC., | ) | |
| DEFENDANTS. | ) | |
| | ) | |

## ATTORNEYS' EYES ONLY
### (THIS TRANSCRIPT HAS BEEN DESIGNATED ATTORNEYS' EYES ONLY.)

# DEPOSITION OF ISAAC LARIAN

## JULY 18, 2006



REPORTED BY:
APRIL PRAXMARER
CSR NO. 12437
JOB NO. 06AE315-AP

COURT REPORTERS
700 S. Flower Street
Suite 1100
Los Angeles, California 90017
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT _____ 43

PAGE _____ 837

1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3                         EASTERN DIVISION

4

5        BRYANT,                        )

                                        )

6           PLAINTIFF,                  )

                                        )

7        VS.                            ) CASE NO. CV 04-9040 SGL

                                        )           (RNBX)

8        MATTEL, INC.,                  )

                                        )

9           DEFENDANTS.                 )

                                        )

10

11

12                    ATTORNEYS' EYES ONLY

13          (THIS TRANSCRIPT HAS BEEN DESIGNATED

14                  ATTORNEYS' EYES ONLY.)

15

16

17          DEPOSITION OF ISAAC LARIAN, TAKEN ON BEHALF OF THE

18    PLAINTIFF, AT 1999 AVENUE OF THE STARS, SUITE 700, LOS

19    ANGELES, CALIFORNIA, COMMENCING AT 9:26 A.M., TUESDAY,

20    JULY 18, 2006, BEFORE APRIL PRAXMARER, CERTIFIED

21    SHORTHAND REPORTER NO. 12437.

22

23

24

25

                                                              2

EXHIBIT _____ 43

PAGE _____ 838

```
 1          APPEARANCES OF COUNSEL:

 2

 3          FOR THE PLAINTIFF:

 4              QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
                BY:  JOHN B. QUINN, ESQ.
 5              BY:  MICHAEL T. ZELLER, ESQ.
                865 SOUTH FIGUEROA STREET
 6              TENTH FLOOR
                LOS ANGELES, CALIFORNIA 90017-2543
 7              (213) 443-3000

 8

 9          FOR THE DEFENDANT, MGA & THE WITNESS:

10              O'MELVENY & MYERS LLP
                BY:  DALE M. CENDALI, ESQ.
11              7 TIMES SQUARE
                TIMES SQUARE TOWER
12              NEW YORK, NEW YORK, 10036
                (212) 326-2000

13

                O'MELVENY & MYERS LLP
14              BY:  JENNIFER GLAD, ESQ.
                400 SOUTH HOPE STREET
15              LOS ANGELES, CALIFORNIA 90071-2899
                (213) 430-7633
16

17          FOR THE DEFENDANT, CARTER BRYANT:

18              LITTLER MENDELSON
                BY:  DOUGLAS A. WICKHAM, ESQ.
19              2049 CENTURY PARK EAST
                5TH FLOOR
20              LOS ANGELES, CALIFORNIA 90067
                (310) 712-7314

21

22          ALSO PRESENT:

23              DAPHNE GRONICH, SENIOR COUNSEL FOR MATTEL
                MICHAEL MOORE, ASSISTANT GENERAL COUNSEL FOR MATTEL
24

25
```

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

EXHIBIT _____ 43

PAGE _____ 839

| 1 | 01:30:07 | Q    BUT YOU DON'T KNOW THE NAMES OF ANY OF THE |
| 2 | 01:30:08 | PEOPLE WHO MADE THOSE? |
| 3 | 01:30:09 | A    THE INDIVIDUAL PEOPLE?  NO, THAT I CANNOT -- |
| 4 | 01:30:11 | IT WAS A GROUP OF PEOPLE. |
| 5 | 01:30:12 | Q    ALL RIGHT.  BUT DO YOU KNOW THE NAME OF THE |
| 6 | 01:30:14 | COMPANY THAT THOSE PEOPLE WORK FOR THAT MADE THEM? |
| 7 | 01:30:16 | A    SOME OF THEM WORKED FOR MGA, BUT I DON'T KNOW |
| 8 | 01:30:19 | THE OTHER COMPANIES. |
| 9 | 01:30:20 | Q    ALL RIGHT.  AND THEN WHO -- THE FIRST -- WHEN |
| 10 | 01:30:26 | THE BRATZ DOLLS FIRST WENT INTO MASS PRODUCTION -- |
| 11 | 01:30:30 | A    YES. |
| 12 | 01:30:30 | Q    -- YOU ACTUALLY MADE THEM TO SELL TO THE |
| 13 | 01:30:34 | PUBLIC, WHO MADE THEM?  DO YOU KNOW WHO THE |
| 14 | 01:30:35 | MANUFACTURER WAS? |
| 15 | 01:30:36 | A    YES. |
| 16 | 01:30:36 | Q    WHO WAS THAT? |
| 17 | 01:30:39 | A    EARLY LIGHT. |
| 18 | 01:30:40 | Q    EARLY LIGHT? |
| 19 | 01:30:41 | A    RIGHT. |
| 20 | 01:30:41 | Q    WERE THERE OTHER MANUFACTURERS THAT WERE |
| 21 | 01:30:45 | CONSIDERED? |
| 22 | 01:30:45 | A    I BELIEVE THERE WAS. |
| 23 | 01:30:47 | Q    AND WHO WERE THE OTHER MANUFACTURERS THAT |
| 24 | 01:30:52 | WERE CONSIDERED? |
| 25 | 01:30:53 | A    COMPANY CALLED WASH, INC.  THAT'S -- THOSE |

179

EXHIBIT ____ 43

PAGE ____ 840

| | | |
|---|---|---|
| 1 | 01:30:57 | ARE THE TWO I REMEMBER. |
| 2 | 01:30:58 | Q    ALL RIGHT.  DO YOU KNOW APPROXIMATELY WHEN |
| 3 | 01:31:02 | EARLY LIGHT WAS SELECTED FOR THAT JOB? |
| 4 | 01:31:03 | A    I THINK JANUARY 2001. |
| 5 | 01:31:05 | Q    DURING THE FALL OF 2000, WERE ANY |
| 6 | 01:31:21 | PRESENTATIONS MADE TO RETAILERS ABOUT BRATZ? |
| 7 | 01:31:24 | A    I THINK WE HAD SOME PRELIMINARY PRESENTATION |
| 8 | 01:31:29 | WITH BOARDS. |
| 9 | 01:31:29 | Q    I'M SORRY.  WITH BOARDS? |
| 10 | 01:31:31 | A    USUALLY THAT'S WHAT YOU DO PRE-TOY FOR -- AT |
| 11 | 01:31:35 | THAT TIME, ANYWAYS.  USUALLY WE SHOW SOME BOARDS OR |
| 12 | 01:31:37 | SOME DRAWINGS OF PRODUCTS. |
| 13 | 01:31:40 | Q    ALL RIGHT.  DO YOU RECALL ANY OF THE |
| 14 | 01:31:41 | RETAILERS WHO THOSE PRESENTATIONS WERE MADE TO IN THAT |
| 15 | 01:31:44 | TIME FRAME? |
| 16 | 01:31:44 | A    PROBABLY KMART AND TOYS "R" US, MAYBE.  I |
| 17 | 01:31:49 | DON'T KNOW. |
| 18 | 01:31:50 | Q    BUT IT WOULD BE YOUR TESTIMONY THAT ALL THEY |
| 19 | 01:31:54 | WOULD BE SHOWN IS BOARDS, NOT THREE-DIMENSIONAL |
| 20 | 01:31:58 | SAMPLES? |
| 21 | 01:31:58 | A    YES. |
| 22 | 01:31:59 | Q    ANOTHER SUBJECT WE DEFERRED THIS MORNING WAS |
| 23 | 01:32:13 | THE BRATZ NAME AND HOW THAT CAME TO BE SELECTED.  AND |
| 24 | 01:32:16 | ACTUALLY I THINK WE MAY HAVE GOTTEN TO THE BOTTOM OF |
| 25 | 01:32:19 | THIS, BUT TELL ME IF I'M WRONG. |

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

EXHIBIT _____ 43

PAGE _____ 84

| | | |
|---|---|---|
| 1 | 01:32:21 | MY UNDERSTANDING IS THAT CARTER BRYANT, AT |
| 2 | 01:32:23 | THIS MEETING, HAD THE NAME BRATZ; IS THAT TRUE? |
| 3 | 01:32:25 | A    IT WAS THE FIRST MEETING OR LATER ON, BUT I |
| 4 | 01:32:29 | THINK THE NAME ULTIMATELY CAME FROM HIM. |
| 5 | 01:32:31 | Q    ALL RIGHT.  AND AFTER -- YOU CONSIDERED OTHER |
| 6 | 01:32:33 | NAMES, BUT YOU ULTIMATELY DECIDED ON BRATZ; IS THAT |
| 7 | 01:32:36 | TRUE? |
| 8 | 01:32:36 | A    YES. |
| 9 | 01:32:37 | Q    DO YOU KNOW WHETHER ANY TYPE OF TRADEMARK |
| 10 | 01:32:40 | SEARCH WAS DONE FOR BRATZ TO SEE WHETHER IT COULD BE |
| 11 | 01:32:45 | TRADEMARKED OR WHETHER SOMEBODY ELSE HAD THAT NAME |
| 12 | 01:32:48 | TRADEMARKED? |
| 13 | 01:32:48 | A    I BELIEVE WE DID. |
| 14 | 01:32:49 | Q    AND DID YOU HAVE TO PAY SOMEBODY OR -- TO |
| 15 | 01:32:52 | ACQUIRE RIGHTS FROM SOMEBODY WHO WAS CLAIMING SOME |
| 16 | 01:32:54 | INTEREST IN SUCH A TRADEMARK? |
| 17 | 01:32:57 | A    I'VE YET TO FIND AN ATTORNEY WHO WORKS FOR |
| 18 | 01:33:00 | FREE. |
| 19 | 01:33:00 | Q    DID YOU HAVE TO CLAIM SOME OTHER PARTY WHO |
| 20 | 01:33:03 | CLAIMED RIGHTS -- DID YOU HAVE TO PAY SOME OTHER PARTY |
| 21 | 01:33:04 | WHO CLAIMED SOME RIGHTS TO BRATZ? |
| 22 | 01:33:07 | A    WHEN? |
| 23 | 01:33:07 | Q    AT ANY TIME. |
| 24 | 01:33:08 | A    YES. |
| 25 | 01:33:09 | Q    WHEN WAS THAT? |

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

EXHIBIT _____ 43 _____

PAGE _____ 842 _____

| | | |
|---|---|---|
| 1 | 01:33:11 | A    I DON'T REMEMBER THE EXACT DATE. |
| 2 | 01:33:12 | Q    CAN YOU RECALL THE CIRCUMSTANCES OR ROUGH |
| 3 | 01:33:15 | TIME FRAME?  YEAR? |
| 4 | 01:33:17 | A    AFTER 2001. |
| 5 | 01:33:18 | Q    AFTER 2001.  AND WAS THAT FOR -- WHAT WAS IT |
| 6 | 01:33:23 | THAT YOU HAD TO PAY FOR? |
| 7 | 01:33:24 | A    I THINK THEY WERE CLAIMING THAT THEY OWNED |
| 8 | 01:33:29 | THE NAME BRATZ FOR APPAREL. |
| 9 | 01:33:31 | Q    I SEE. |
| 10 | 01:33:32 | A    AND WE MADE AN AGREEMENT TO BUY WHATEVER THEY |
| 11 | 01:33:36 | HAD. |
| 12 | 01:33:36 | Q    WHATEVER THEY HAD? |
| 13 | 01:33:37 | A    RIGHT. |
| 14 | 01:33:37 | Q    BUT THAT WAS THE FIRST TIME THAT YOU HAD TO |
| 15 | 01:33:39 | DO SOMETHING LIKE THAT WITH RESPECT TO THE RIGHTS TO |
| 16 | 01:33:42 | THE BRATZ NAME? |
| 17 | 01:33:42 | MS. CENDALI:  OBJECTION TO FORM AND VAGUE AND |
| 18 | 01:33:45 | CONFUSING. |
| 19 | 01:33:46 | BY MR. QUINN: |
| 20 | 01:33:46 | Q    I'M SORRY? |
| 21 | 01:33:47 | A    TO THE BEST OF MY RECOLLECTION, THAT'S THE |
| 22 | 01:33:51 | ONLY ONE I REMEMBER. |
| 23 | 01:33:52 | Q    OKAY.  IS THERE ANYBODY WHO WAS A |
| 24 | 01:34:08 | FULL-TIME -- AT ANY TIME, WAS A FULL-TIME DOLL DESIGNER |
| 25 | 01:34:11 | AT MGA WHO HAS LEFT MGA'S EMPLOYMENT? |

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

EXHIBIT _____ 23

PAGE _____ 843

```
 1              DEPOSITION OFFICER'S CERTIFICATE

 2

    STATE OF CALIFORNIA   )
 3                        )   SS.
    COUNTY OF LOS ANGELES )

 4

 5          I, APRIL PRAXMARER, HEREBY CERTIFY:

 6      I AM A DULY QUALIFIED CERTIFIED SHORTHAND REPORTER IN

 7   THE STATE OF CALIFORNIA, HOLDER OF CERTIFICATE NUMBER

 8   CSR 12437 ISSUED BY THE COURT REPORTERS BOARD OF

 9   CALIFORNIA AND WHICH IS IN FULL FORCE AND EFFECT.   [FED.

10   R. DIV. P. 28(A)].

11          I AM AUTHORIZED TO ADMINISTER OATHS OR

12   AFFIRMATIONS PURSUANT TO CALIFORNIA CODE OF CIVIL

13   PROCEDURE, SECTION 2093(B) AND PRIOR TO BEING

14   EXAMINED, THE DEPONENT WAS FIRST DULY SWORN BY ME.

15   [FED. R. CIV. P. 28(A), 30(F)(1)].

16          I AM NOT A RELATIVE OR EMPLOYEE OR ATTORNEY

17   OR COUNSEL OF ANY OF THE PARTIES, NOR AM I A RELATIVE

18   OR EMPLOYEE OF SUCH ATTORNEY OR COUNSEL, NOR AM I

19   FINANCIALLY INTERESTED IN THIS ACTION.   [FED. R CIV. P.

20   28].

21          I AM THE DEPOSITION OFFICER THAT

22   STENOGRAPHICALLY RECORDED THE TESTIMONY IN THE

23   FOREGOING DEPOSITION AND THE FOREGOING TRANSCRIPT IS A

24   TRUE RECORD OF THE TESTIMONY GIVEN BY THE DEPONENT.

25   [FED. R. CIV. P. 30(F)(1)].
```

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

EXHIBIT _____ 53

PAGE _____ 844

1    BEFORE COMPLETION OF THE DEPOSITION, REVIEW

2    OF THE TRANSCRIPT [X] WAS [ ] WAS NOT REQUESTED.   IF

3    REQUESTED, ANY CHANGES MADE BY THE DEPONENT (AND

4    PROVIDED TO THE REPORTER) DURING THE PERIOD ALLOWED ARE

5    APPENDED HERETO.   [FED. R. CIV. P. 30(E)].

6         DATED AUGUST 9            , 2006

7

8

9         APRIL PRAXMARER, CSR 12437

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                    258

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

EXHIBIT _____ 43

PAGE _____ 845