THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
LAUREN AGUIAR (Admitted Pro Hac Vice)
(laguiar@skadden.com)
CARL ALAN ROTH (Bar No. 151517)
(croth@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA  90071
Tel.: (213) 687-5000/Fax: (213) 687-5600

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO.  CV  04-9049  SGL (RNBx) |
| Plaintiff, | |
| v. | Consolidated  with  Case  No.  04-9059 and Case No. 05-2727 |
| MATTEL,  INC.,  a  Delaware corporation, | Honorable Stephen G. Larson |
| Defendant. | MGA PARTIES' REVISED DISPUTED [PROPOSED] PHASE 1A JURY INSTRUCTIONS |
| AND CONSOLIDATED ACTIONS. | |

## PRELIMINARY INSTRUCTIONS

| No. | Description | Page |
|---|---|---|
| 9th Cir. 1.2 | CLAIMS AND DEFENSES – PHASE 1A | 1 |
| CACI 107 | DISCREPANCIES IN TESTIMONY | 2 |
| FJPI 104.53 | EXTRAJUDICIAL ADMISSIONS-CAUTIONARY INSTRUCTIONS | 3 |

## PHASE 1A CLAIMS INSTRUCTIONS

| No. | Description | Page |
|---|---|---|
| Special Inst. __ | THE PARTIES' CLAIMS | 4 |
| CACI 303 (1) | BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS | 6 |
| CACI 303 (2) | CONTRACT CLAIM – SECTION 2(A) OF INVENTIONS AGREEMENT | 7 |
| Special Inst. __ | COPYRIGHT ACT § 204(A) , CALIFORNIA CIVIL CODE § 988 | 9 |
| CACI 2201 (1) | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—ELEMENT | 11 |
| CACI 2201 (2) | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—INTENT | 13 |
| Special Inst. __ | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—INDUCEMENT | 14 |
| Special Inst. __ | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—HIRING OF AT WILL EMPLOYEES OF COMPETITORS | 15 |
| Special Inst. __ | "BUT FOR" CAUSATION | 17 |
| Special Inst. __ | AIDING AND ABETTING BREACH OF FIDUCIARY DUTY | 18 |
| CACI 4100 | FIDUCIARY DUTY—DEFINED | 21 |
| Special Inst. __ | FIDUCIARY DUTY—BURDEN OF PROVING BREACH | 22 |
| CACI 4102 (1) | HARM CAUSED BY BREACH OF FIDUCIARY DUTY | 23 |
| Special Inst. __ | AIDING AND ABETTING BREACH OF DUTY OF LOYALTY | 24 |
| Special Inst. __ | DUTY OF LOYALTY DEFINED | 27 |
| Special Inst. __ | BREACH OF THE DUTY OF LOYALTY | 28 |
| CACI 4102 (3) | CONSENT TO EMPLOYEE'S ACTIONS | 31 |
| CACI 4102 (4) | HARM CAUSED BY BREACH OF THE DUTY OF LOYALTY | 32 |
| CACI 2100 | CONVERSION—ELEMENTS | 33 |

i

# PRELIMINARY INSTRUCTIONS

## CLAIMS AND DEFENSES – PHASE 1A

**AGREED TO WITHDRAW AT MEET & CONFIDER ON JULY 3, 2008**

1

1

## DISCREPANCIES IN TESTIMONY

2

3   Sometimes a witness may say something that is not consistent with something else he or

4   she said.   Sometimes different witnesses will give different versions of what happened.

5   People often forget things or make mistakes in what they remember.   Also, two people

6   may see the same event but remember it differently.   You may consider these differences,

7   but do not decide that testimony is untrue just because it differs from other testimony.

8   You should consider whether a discrepancy pertains to an important matter or only to

9   something trivial.

10

11   **Authority:**  CACI No. 107 (2008) (as modified).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# EXTRAJUDICIAL ADMISSIONS-CAUTIONARY INSTRUCTIONS

A statement made by a party before trial that has a tendency to prove or disprove any material fact in this action and which is against that party's interest is an admission. Evidence of an oral admission not made under oath should be viewed with caution.

**Authority:**   <u>See</u> Fed. R. Evid. 801(d)(2); 3 Kevin F. O'Malley, Jay E. Grenig, & Hon. William C. Lee, <u>Fed. Jury Prac. & Instr.</u> § 104.53 (5th ed.); BAJI § 2.25 (2008).

# PHASE 1A CLAIMS INSTRUCTIONS

## THE PARTIES' CLAIMS

The parties dispute their rights and obligations with respect to certain BRATZ sketches prepared by Carter Bryant.  Mattel contends that MGA, Larian and MGA (HK) have no valid ownership rights in the BRATZ sketches, that Mattel is the true owner of the BRATZ sketches, and any agreements between Bryant and MGA assigning the rights to the BRATZ sketches is void.  Isaac Larian, MGA and MGA (HK) dispute Mattel's claims.

Mattel's claim is based on an agreement between Carter Bryant and Mattel called the "Employee Confidential Information and Inventions Agreement" or simply the "Inventions Agreement."  In a few moments, I will explain this agreement and Mattel's claims regarding this agreement in more detail.  In order to decide Mattel's declaratory relief claim, you will first have to decide whether Carter Bryant breached certain sections of the Inventions Agreement.

1.    If you find that Carter Bryant did not breach Section 2(a) of the Inventions Agreement, you must also find that Mattel has not met its burden in proving its declaratory relief claim.

2.    If you find that Carter Bryant did breach Section 2(a) of the Inventions Agreement, and you do not find that MGA purchased its rights in good faith, then you must determine whether, under section 204(a) of the Copyright Act and Section 988 of the California Civil Code, the Inventions Agreement transferred any copyright ownership in the BRATZ sketches to Mattel.  If you find that the Inventions Agreement does not satisfy these sections, you must find for MGA, MGA (HK), and Isaac Larian on this claim.

4

Finally, if you find for Mattel on this claim, you must identify which BRATZ sketches MGA, Larian and MGA (HK) do not have a valid ownership interest in.

5

## BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS

To show that Carter Bryant has breached a contract, Mattel must prove that Carter Bryant did something that the contract prohibited him from doing or failed to do something he was obligated to do.

**Authority:** CACI No. 303 (2008) (as modified).

## CONTRACT CLAIM – SECTION 2(A) OF INVENTIONS AGREEMENT

Mattel claims that Carter Bryant breached Sections 2(a) of his Inventions Agreement.

Section 2(a) provides:  "I agree to communicate to the Company as promptly and fully as practicable all inventions [as defined below] conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company.  I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon.  I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents, and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings."

The Inventions Agreement defines the term "inventions" as follows:  "the term 'inventions' includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable."

Mattel's claim relates to the BRATZ sketches prepared by Carter Bryant, which have been admitted into evidence as Exhibits _____.  Mattel claims that the term "inventions" in the Inventions Agreement includes all creative works and applies to the BRATZ sketches. Mattel also contends that Carter Bryant "conceived or reduced to practice" the BRATZ sketches during his employment at Mattel.  Mattel claims that Carter Bryant breached Section 2(a) of the Inventions Agreement by failing to communicate those "inventions" to Mattel.

MGA contends that Bryant neither conceived of the BRATZ sketches nor reduced them to practice during his employment at Mattel.

In order to prevail on its claim, Mattel bears the burden of proving by a preponderance of the evidence that Carter Bryant drew the initial master drawings while at Mattel.

**Authority:**  CACI No. 303 (2008) (as modified); <u>Hitzeman v. Rutter</u>, 243 F.3d 1345, 1356 (Fed Cir. 2001) (quoting <u>Burroughs Wellcome Co. v. Barr Labs., Inc.</u>, 40 F.3d 1223, 1228 (1994)).

**COPYRIGHT ACT § 204(A) , CALIFORNIA CIVIL CODE § 988**

As I also explained before, if you find that Carter Bryant breached Section 2(a) of the Inventions Agreement, and you do not find that MGA purchased its rights in good faith, then you must determine whether, under section 204(a) of the Copyright Act and Section 988 of the California Civil Code, the Inventions Agreement transferred any copyright ownership in the BRATZ sketches to Mattel.  If you find that the Inventions Agreement does not satisfy these sections, you must find for MGA, and Isaac Larian on Mattel's declaratory relief claim.

If you find that the BRATZ sketches were an invention conceived or reduced to practice by Mr. Bryant during his employment with Mattel, you must also determine whether the Inventions Agreement satisfies the requirements of Section 204(a) of the Copyright Act and California Civil Code § 988.  If you find that the BRATZ sketches were not an invention conceived or reduced to practice by Mr. Bryant during his employment with Mattel, then you need not consider this instruction.

I will now explain Copyright Act § 204(a) and California Civil Code §988.  Under Section 204(a) of the Copyright Act, any transfer of copyright ownership must be clear and in writing to be valid. Specifically, the written transfer instrument must (1) reasonably identify the subject matter of the agreement; (2) be sufficient to indicate that the parties have come to an agreement; and (3) state with reasonable certainty the essential terms of the contract. Similarly, under California Civil Code Section 988, in a written agreement transferring any of a copyright owner's rights, any ambiguity about the nature or scope of the rights conveyed must be resolved to preserve the rights of the original owner.

These requirements prevent the inadvertent transfer of ownership rights by forcing a party who wants to use the copyrighted work to negotiate with the creator to determine precisely

1  what rights are being transferred and at what price. Any ambiguity in a purported transfer
2  should be resolved in favor of the original copyright holder or creator keeping the rights to
3  the copyrighted work.

4

5  If you find that the Inventions Agreement does not satisfy the above requirements of §
6  204(a) of the Copyright Act or California Civil Code Section 988, then you must find for
7  defendants on Mattel's declaratory relief claim.

8

9  **Authority:** 17 U.S.C. § 204(a); <u>Konigsberg, Int'l, Inc. v. Rice</u>, 16 F.3d 355, 357 (9th Cir.
10  1994) (requiring written transfer instrument to "be a product of the parties' negotiations");
11  <u>Effects Assocs., Inc. v. Cohen</u>, 908 F.2d 555, 557 (9th Cir. 1990); <u>Foraste v. Brown Univ.</u>,
12  290 F. Supp. 2d 234, 240-41 (D.R.I. 2003) (collecting cases holding that 204(a) requires
13  the drafter of a transfer document to be "explicit," "precis[e]," "clear," and
14  "unequivocal"); <u>Bieg v. Hovnonian Enters., Inc.</u>, 157 F. Supp. 2d 475, 480 (E.D. Pa.
15  2001); <u>Pamfiloff v. Giant Records, Inc.</u>, 794 F. Supp. 933, 936 (N.D. Cal. 1992); Cal. Civ.
16  Code § 988(c); 13 B.E. Witkin, <u>Summary of California Law: Personal Property</u> § 47 (10th
17  ed. 2005); <u>Chamberlain v. Cocola Assocs.</u>, 958 F.2d 282, 283-84 (9th Cir. 1992)

18
19
20
21
22
23
24
25
26
27
28

## INTENTIONAL INTERFERENCE WITH CONTRACT CLAIM

Mattel has asserted a claim for intentional interference with contract against MGA and Isaac Larian.

I will now instruct you regarding the law as to this claim.

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS — ELEMENTS

Mattel claims that defendants Isaac Larian and MGA Entertainment Inc. intentionally interfered with a contract between Mattel and Carter Bryant.

Mattel's claim is only based on the agreement between Carter Bryant and Mattel in which Mattel entrusted Bryant with confidential information and Bryant agreed to keep that information confidential.  You should assume that there was an agreement between Mattel and Bryant but it is up to you do decide what that agreement means.

Mattel's claim is <u>not</u> based on, and you should <u>not</u> consider, whether Mattel has a right to or owns BRATZ.

To establish this claim, Mattel must prove all of the following:

1.  That there was a valid and enforceable contract between Mattel and Carter Bryant in which Mattel entrusted Bryant with confidential information and Bryant agreed to keep it confidential (For purposes of this trial, you are to assume that there was a valid and enforceable contract);

2.  That Larian and MGA actually knew of the contract and its terms;

1

2      3.  That Larian and MGA intended to disrupt the performance of Bryant's contract with

3          Mattel;

4

5      4.  That Larian and MGA engaged in wrongful conduct independent of "interfering"

6          with Bryant's contract with Mattel through aiding and abetting Bryant in a breach of

7          the duties he owed Mattel;

8

9      5.  That Larian and MGA's conduct prevented performance of Bryant's contract;

10

11     6.  That Mattel was harmed; and

12

13     7.  That Larian and MGA's conduct was a substantial factor in causing Mattel's harm.

14

15  **Authority:**  CACI Nos. 2201, 2202 & 2203 (2008) (as modified).

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS— INTENT

To prove that MGA and Larian intended to interfere with Bryant's contract with Mattel, Mattel must show that MGA and Larian actually knew that a breach of Bryant's contract was certain or substantially certain to occur as a result of their actions. There is no intent to interfere where the defendant knows or believes its agreement with a third party will not infringe the rights of the plaintiff.

**Authority:** CACI Nos. 2201, 2202 & 2203 (2008); Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist., 106 Cal. App. 4th 1219, 1239 (2003) (intent); 1-800 Contacts, Inc. v. Steinberg, 107 Cal. App. 4th 568 (2003) (intent).

# INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS — INDUCEMENT

A defendant is not liable for intentional interference with contract where the breaching party is the one who initiates contact with the defendant, even if the defendant knows the breaching party has a contract with someone else and even if the defendant suspects that entering a contract with the breaching party may cause the breaching party to breach his or her obligation to another.  Here's an example. Bill is under contract to sell certain goods to Chad.  Bill offers to sell the same goods to Adam, who knows Bill has a contract with Chad.  Even if Adam accepts Bill's offer and buys the goods, Adam has not induced Bill's breach and is not liable for intentional interference with the contract between Bill and Chad.

**Authority:** Restatement (Second) of Torts § 766, cmt. n (2007) (inducement); DeVoto v. Pac. Fid. Life Ins.Co., 618 F.2d 1340, 1348 (9th Cir. 1980) (inducement); Bauer v. Interpublic Group of Cos., 255 F. Supp. 2d 1086, 1093, 1095 (N.D. Cal. 2003) (inducement); Dryden v. Tri-Valley Growers, 65 Cal. App. 3d 990, 996 (1977) (inducement).

## __INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS — HIRING OF AT WILL EMPLOYEES OF COMPETITORS__

Bryant worked **"at will"** for Mattel, meaning that he could leave Mattel at any time, and he could be let go by Mattel for any reason or no reason.  Thus, Bryant was entitled to look for another job while still employed at Mattel, and to leave his employment with Mattel to work with a competitor or to compete himself against Mattel.

It is not wrongful for a company to solicit or hire the at-will employee of its competitor, because California law protects employees and their pursuit of any employment or enterprise of their choice as more important than the competitive business interests of the employers.  Likewise, competitor employers have the right to offer more pay or better terms to another's employee, so long as the employee is free to leave.

**Authority:**  See also Reeves v. Hanlon, 33 Cal. 4th 1140, 1151 (2004) (California "public policy generally supports a competitor's right to offer more pay or better terms to another's employee, so long as the employee is free to leave. … [I]f the law were to the contrary, the result 'would be intolerable, both to such employers as could use the employe[e] more effectively and to such employe[e]s as might receive added pay. It would put an end to any kind of competition.'") (citation omitted); Metro Traffic Control, Inc. v. Shadow Traffic Network, 22 Cal. App. 4th 853, 859 (1994) ("California courts have consistently declared … an expression of public policy to ensure that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice"); Diodes, Inc. v. Franzen, 260 Cal. App. 2d 244, 255 (1968) (California public policy recognizes "[t]he interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers"); see also Hollingsworth Solderless Terminal Co. v. Turley,  622 F.2d 1324, 1337 (9th Cir. 1980) ("[m]ere solicitation of an employee, under no contract of employment, to leave and associate with a competing firm

15

is not illegal"); <u>Interloc Solutions, Inc. v. Tech. Assoc. Int'l. Corp.</u>, No. CV071534 LEWGGHX, 2007 WL 2429715, at *2 (E.D. Cal. Aug. 24, 2007) (citing <u>Reeves</u> for the proposition that "employees are not precluded from seeking new employment on their own initiative"); <u>Posdata Co. Ltd. v. Kim</u>, No. C-07-02054 RMW, 2007 WL 1848661, *7 (N.D. Cal. June 27, 2007); <u>Continental Car-Na-Var Corp. v. Moseley</u>, 24 Cal. 2d 104, 110 (1944) ("[a] former employee has the right to engage in a competitive business for himself and to enter into competition with his former employer, even for the business of ... his former employer, provided such competition is fairly and legally conducted."); <u>VL Sys., Inc. v. Unisen, Inc.</u>, 152 Cal. App. 4th 708, 713, 715 (2007) (quoting <u>Diodes</u> and finding no unlawful solicitation of employee where the employee initiated the new agreement with the defendant and "chose to seek the job with" the defendant).

**"BUT FOR" CAUSATION**

If the alleged loss or harm that Mattel suffered would have occurred even in the absence of the alleged wrongdoing by the defendants, then the defendants' conduct cannot be considered a substantial factor in bringing about Mattel's alleged loss or harm and you must find for the defendants.

**Authority:**  Matthew Bender, <u>Cal. Forms Jury Inst.</u>, Ch. 1-3E § 300E.04 (as modified).

17

# AIDING AND ABETTING BREACH OF FIDUCIARY DUTY CLAIM

Mattel has asserted a claim for aiding and abetting breach of fiduciary duty against MGA and Isaac Larian.

I will now instruct you regarding the law as to this claim.

# AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

To recover on its claim for aiding and abetting, Mattel must first show that there has been a breach of fiduciary duty.  In order to show that there has been a breach upon which Mattel can base a claim, Mattel has the burden of proving by a preponderance of the evidence all the facts necessary to establish:

      1.     Bryant owed a fiduciary duty to Mattel;

      2.     Bryant breached a fiduciary duty he owed to Mattel;

      3.     Mattel was harmed; and

      4.     Bryant's conduct was a substantial factor in causing Mattel's harm;

You should assume that Bryant owed a fiduciary duty to Mattel.  This duty is based on the agreement between Bryant and Mattel in which Mattel entrusted Bryant with confidential information need to perform his job and Bryant agreed to keep the information Mattel entrusted to him confidential.  Mattel contends that Bryant's fiduciary duty included additional duties but you should not assume that to be true.  Instead, Mattel bore the burden to prove through the evidence that Bryant knowingly and voluntarily agreed to take

on duties beyond maintaining in confidence information that Mattel entrusted to him. It is up to you to decide the scope of Bryant's fiduciary duty to Mattel, whether he breached his fiduciary duty, whether Mattel was harmed by that breach, and whether Bryant's conduct was a substantial factor in that harm. In a few moments I will instruct you on what it means to have a fiduciary duty and what is required to show a breach of a fiduciary duty.

If Mattel establishes a breach upon which it may base its claim, then Mattel has the burden of proving by a preponderance of the evidence all the facts necessary to establish:

1. MGA and Larian substantially assisted or encouraged Bryant in accomplishing the breach; and

2. MGA and Larian had actual knowledge of the specific wrong they substantially assisted.

To prove actual knowledge of the underlying breach of duty, Mattel must show that MGA and Larian not only knew of Bryant's breach but also that MGA and Larian made a conscious decision to participate in wrongful activity designed to assist Bryant in his breaches.

Mattel also has to show a substantial causal connection between MGA and Larian's conduct and the harm to Mattel. The "substantial assistance" requirement is inversely related to the knowledge factor, which means that if Mattel has only offered a small amount of evidence of MGA and Larian's "knowledge" of Bryant's alleged breach, Mattel has to show that MGA and Larian rendered a high degree of substantial assistance in Bryant's breach in order to show that MGA and Larian are liable for aiding and abetting Bryant's breach.

**Authority:** <u>MJT Sec., LLC v. Toronto-Dominion Bank</u>, No. C03-3815 CW, 2007 WL 1725421, at **7-8  (N.D.Cal. June 14, 2007) (elements); <u>Neilson v. Union Bank, N.A.</u>, 290 F. Supp. 2d 1101, 1119-20 (C.D. Cal. 2003) (intent); <u>Resolution Trust Corp. v. Rowe</u>, No. C90-20114 BAC, 1993 WL 183512, at *6 (N.D. Cal. Feb. 8, 1993) (inverse relationship between demonstration of knowledge and substantial assistance); <u>Mendelsohn v. Capital Underwriters, Inc.</u>,  490 F. Supp. 1069, 1084 (N.D. Cal. 1979) (causation); <u>Sarkes Tarzian, Inc. v. Audio Devices, Inc.</u>, 166 F. Supp. 250 (S.D. Cal. 1958) (competitor employer did not conspire to breach duty to former employer where competitor paid at-will employee an advance and employee did not disclose intention to work for competitor), <u>aff'd</u>, 283 F.2d 695 (9th Cir. 1960); <u>Gerard v. Ross</u>, 204 Cal. App. 3d 968, 983 (1988) (intent); <u>see also</u> <u>Richard B. LeVine, Inc. v. Higashi</u>, 131 Cal. App. 4th 566, 574 (2005); <u>Casey v. U.S. Bank Nat'l Ass'n</u>, 127 Cal. App. 4th 1138, 1144 (2005); <u>Fiol v. Doellstedt</u>, 50 Cal. App. 4th 1318, 1325-26 (1996); <u>Saunders v. Superior Court</u> 27 Cal. App. 4th 832, 846 (1994); Restatement (Second) of Torts § 876; CACI Nos. 4101, 4102 (2008) (as modified); <u>Bancroft-Whitney Co. v. Glen</u>, 64 Cal. 2d 327 (1966); <u>GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.</u>, 83 Cal. App. 4th 409 (2000), <u>overruled on other grounds by</u>, <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140 (2004); <u>City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 68 Cal. App. 4th 445, 483 (1998); <u>Pierce v. Lyman</u>, 1 Cal. App. 4th 1093, 1101-02 (1991) (superseded by statute on other grounds).

1  **FIDUCIARY DUTY — DEFINED**

2

3  Once a party assumes a fiduciary duty to another, that party is obligated to act on behalf of

4  the other party, to hold the interests of the other paramount over his own interests, and to

5  take no action that would further his interests over the other person's interest.

6

7  **Authority:** CACI Nos. 4100, 4102 (2008) (as modified); <u>GAB Bus. Servs., Inc. v. Lindsey

8  & Newsom Claim Servs., Inc</u>., 83 Cal. App. 4th 409, 417-18 (2000), <u>overruled on other

9  grounds by</u> <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140 (2004); <u>City of Atascadero v. Merrill

10  Lynch, Pierce, Fenner & Smith, Inc</u>., 68 Cal. App. 4th 445, 483-84 (1998).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 **FIDUCIARY DUTY — BURDEN OF PROVING BREACH**

2

3 If Carter Bryant expressly and voluntarily agreed to act as a fiduciary on behalf of Mattel,

4 you must determine the scope of that agreement and whether Mattel has met its burden of

5 proving by a preponderance of evidence that Bryant breached his fiduciary duties to Mattel.

6

7 **Authority:**   Restatement (Third) of Agency § 8.04; Bancroft-Whitney Co. v. Glen, 64 Cal.

8 2d 327 (1966); Gonsalves v. Hodgson, 38 Cal. 2d 91, 99 (1951); LeMat Corp. v. Am.

9 Basketball Ass'n, 51 Cal. App. 3d 267, 275 (1975); see also Gateway Techs, Inc. v. MCI

10 Telecomm. Corp., 64 F.3d 993, 1000-01 (5th Cir. 1995).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## HARM CAUSED BY BREACH OF FIDUCIARY DUTY

Mattel must also prove by a preponderance of the evidence all facts necessary to show that Mr. Bryant's breach of fiduciary duty was a substantial factor in causing Mattel harm during the term of Mr. Bryant's employment.  It is not sufficient to show that Mattel was harmed by Mr. Bryant's competition with Mattel after Mr. Bryant no longer was employed at Mattel; rather, Mattel must show that it was harmed by conduct that Mr. Bryant engaged in while he was still an employee at Mattel.

**Authority:** CACI No. 4102 (2008) (as modified); <u>Bancroft Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 356-57 (1966); <u>Charles T. Powner Co. v. Smith</u>, 91 Cal. App. 101 (1928); <u>Sumner v. Nevin</u>, 4 Cal. App. 347, 350-51 (1906); <u>see also</u> <u>Sequoia Vacuum Sys., v. Stransky</u>, 229 Cal. App. 2d 281, 286 (1964) (citing <u>Daniel Orifice Fitting Co. v. Whalen</u>, 198 Cal. App. 2d 791, 800 (1962)).

## AIDING AND ABETTING BREACH OF DUTY OF LOYALTY CLAIM

Mattel has asserted a claim for aiding and abetting breach of the duty of loyalty against MGA and Isaac Larian.

I will now instruct you regarding the law as to this claim.

## AIDING AND ABETTING BREACH OF DUTY OF LOYALTY

To recover on its claim for aiding and abetting, Mattel must first show that there has been a breach of the duty of loyalty.  In order to show that there has been a breach upon which Mattel can base a claim, Mattel has the burden of proving by a preponderance of the evidence all the facts necessary to establish:

1.    That Bryant was Mattel's employee and thus owed Mattel a duty of loyalty;

2.    That Bryant breached his duty of loyalty by directly competing with Mattel during the term of his employment with Mattel in connection with his development of the BRATZ sketches;

3.    That Mattel did not give informed consent to Bryant's conduct or otherwise ratify Bryant's conduct;

4.    That Mattel was harmed during the term of Bryant's employment; and

5.    That Bryant's conduct was a substantial factor in causing Mattel's harm.

1   You should assume that an employee owes his or her employer a duty of loyalty.  You
2   should also assume that Bryant breached that duty by entering into a contract with MGA
3   while still employed by Mattel.  However, it is up to you to decide if Mattel consented to
4   that breach, if Mattel was harmed by the breach, and if Bryant's conduct was a substantial
5   factor in causing that harm.  In a few moments I will instruct you on what it means to have
6   a duty of loyalty and what is required to show a breach of a duty of loyalty upon which
7   Mattel may base its claim.

8

9   If Mattel establishes a breach upon which it may base its claim, then Mattel has the burden
10  of proving by a preponderance of the evidence all the facts necessary to establish:

11

12      1.   MGA and Larian substantially assisted or encouraged Bryant in
13           accomplishing the breach; <u>and</u>

14

15      2.   MGA and Larian had actual knowledge of the specific wrong they
16           substantially assisted.

17

18  To prove actual knowledge of the underlying breach of duty, Mattel must show that MGA
19  and Larian not only knew of Bryant's breach but also that MGA and Larian made a
20  conscious decision to participate in wrongful activity designed to assist Bryant in his
21  breaches.

22

23  Mattel also has to show a substantial causal connection between MGA and Larian's
24  conduct and the harm to Mattel.  The "substantial assistance" requirement is inversely
25  related to the knowledge factor, which means that if Mattel has only offered a small
26  amount of evidence of MGA and Larian's "knowledge" of Bryant's alleged breach of duty,
27  Mattel has to show that MGA and Larian rendered a high degree of substantial assistance

28

25

1  in Bryant's breach in order to show that MGA and Larian are liable for aiding and abetting
2  Bryant's breach of duty.

3

4  **Authority:** CACI No. 4102 (2008) (as modified); <u>Bancroft Whitney Co. v. Glen</u>, 64 Cal.
5  2d 327, 345-346 & n.10 (1966); <u>accord</u> <u>Eckard Brandes, Inc. v. Riley</u>, 338 F. 3d 1082,
6  1086 (9th Cir. 2002); <u>Western Med. Consultants, Inc. v. Johnson</u>, 80 F.3d 1331, 1336-38
7  (9th Cir. 1996); <u>Franklin Music Co. v. Am. Broad. Cos.</u>, 616 F. 2d 528, 532-33, 537 (3d
8  Cir. 1979); <u>Merger Mgmt. Consulting, Inc. v. Wilde</u>, 920 F. Supp. 219 (D. D.C. 1996);
9  <u>Abraham Zion Corp. v. Lebow</u>, 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984), <u>aff'd</u>, 761 F.
10 2d 93 (2d Cir. 1985); <u>Seward v. Union Pump Co.</u>, 428 F. Supp. 161 (S.D. Texas 1977);
11 <u>GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.</u>, 83 Cal. App. 4th 409,
12 424-25 (2000), <u>overruled on other grounds by</u>, <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140 (2004);
13 <u>Computer Sciences Corp. v. Ferguson</u>, 74 Cal. Rptr. 86, 92-93 (1968); Restatement (Third)
14 of Agency Sect. 8.04 cmt. c; <u>MJT Securities, LLC v. Toronto-Dominion Bank</u>, 2007 WL
15 1725421, at **7-8   (N.D. Cal. June 14, 2007) (elements); <u>Neilson v. Union Bank of</u>
16 <u>California, N.A.</u>, 290 F. Supp. 2d 1101, 1119-20 (C.D. Cal. 2003) (intent); <u>Resolution</u>
17 <u>Trust Corp. v. Rowe</u>,   1993 WL 183512, at *6 (N.D. Cal. Feb. 8, 1993) (inverse
18 relationship between demonstration of knowledge and substantial assistance); <u>Mendelsohn</u>
19 <u>v. Capital Underwriters, Inc.</u>,   490 F. Supp. 1069, 1084 (N.D. Cal. 1979) (causation);
20 <u>Sarkes Tarzian, Inc. v. Audio Devices, Inc.</u>, 166 F. Supp. 250 (S.D. Cal. 1958) (competitor
21 employer did not conspire to breach duty to former employer where competitor paid at-
22 will employee an advance and employee did not disclose intention to work for competitor),
23 <u>aff'd</u>, 283 F.2d 695 (9th Cir. 1960); <u>Gerard v. Ross</u>, 204 Cal. App. 3d 968, 983 (1988)
24 (intent); <u>see also</u> <u>Richard B. LeVine, Inc. v. Higashi</u>, 131 Cal. App. 4th 566, 574 (2005);
25 <u>Casey v. U.S. Bank Nt'l Ass'n</u>, 127 Cal. App. 4th 1138, 1144 (2005); <u>Fiol v. Doellstedt</u>,
26 50 Cal. App. 4th 1318, 1325-26 (1996); <u>Saunders v. Superior Court</u> 27 Cal. App. 4th 832,
27 846 (1994); Restatement (Second) of Torts § 876.

28

# DUTY OF LOYALTY DEFINED

An employee owes his or her employer a duty of loyalty.  The scope of the employee's duty varies with the nature of the employee's relationship with his or her employer.  Thus, an employee who occupies a position with a high level of trust and confidence owes a higher duty of loyalty to his or her employer than an employee who occupies a low-level position.  Mattel has the burden of proving by a preponderance of the evidence all facts necessary to show the scope of Bryant's duty of loyalty to Mattel.

**Authority:**  19 Williston on Contracts § 54:26 (4th ed.); Huong Que, Inc. v. Luu, 150 Cal. App. 4th 400, 411 (2007); Stokes v. Dole Nut Co., 41 Cal App. 4th 285 (1995).

**1**  **BREACH OF THE DUTY OF LOYALTY**

**2**

**3**  Mattel must also prove by a preponderance of the evidence all facts necessary to show that
**4**  Carter Bryant breached his duty of loyalty to Mattel.  To do so, Mattel must show that
**5**  Bryant undertook actions prior to leaving his employment with Mattel that were in direct
**6**  competition with Mattel and not merely preparations to compete with Mattel after his
**7**  employment ended.  As previously instructed, you are to assume that Bryant's execution
**8**  of a contract with MGA while he was still an employee of Mattel was a breach of the duty
**9**  of loyalty.  However, Mattel contends that other actions of Bryant while still an employee
**10**  constituted additional breaches of the duty of loyalty and the defendants dispute that.  It is
**11**  up to you to decide whether there were any additional breaches of the duty of loyalty by
**12**  Bryant while he was an employee of Mattel.

**13**

**14**  Acts of direct competition include, for example, (1) the formation of a competing company
**15**  that competes against the employer while the employee is still employed by that employer,
**16**  (2) the selling of competing products while still employed, (3) the diversion of sales away
**17**  from an employer while still an employee; (4) the use of confidential information (such as
**18**  employee salaries) to recruit employees to a competitor; (5) the misappropriation of trade
**19**  secrets, (6) the solicitation of an employer's customers before terminating employment,
**20**  and (7) the conspiracy to cause 'mass resignation' of key employees.

**21**

**22**  Permissible preparations to compete include, for example, (1) undertaking efforts to
**23**  establish a competing business and to immediately compete after termination of
**24**  employment; (2) use of small amounts of an employer's resources, such as phones, faxes,
**25**  computers, and employee time; (3) discussion of a competing venture with other
**26**  employees; (4) asking customers whether work might be available for a possible
**27**  competing venture; (5) use of some time during work hours to prepare to compete,
**28**  provided the employee continues to perform his or her job responsibilities; and (6) use of

marketing plans, customer lists or other information learned during his or her employment provided the information is not a trade secret or confidential information. You should assume that Bryant's execution of a contract with MGA while still an employee of Mattel was not a permissible preparation to compete. However, to the extent that Mattel contends that other actions of Bryant beyond merely entering into a contract with Mattel were breaches of the duty of loyalty, then you must decide whether such actions were permissible preparations to compete.

In addition, Bryant was not required to disclose his preparations to compete with Mattel or his efforts to obtain different employment. An employee is entitled to seek new employment and inform his employer once he or she has made a final decision to leave his or her current job.

You may consider Bryant's intention and the surrounding circumstances in determining whether Bryant was permissibly preparing to compete or whether he breached his duty of loyalty to Mattel.

**Authority:** Bancroft Whitney Co. v. Glen, 64 Cal. 2d 327, 345-346 & n.10 (1966); accord Eckard Brandes, Inc. v. Riley, 338 F. 3d 1082, 1086 (9th Cir. 2002); Western Med. Consultants, Inc. v. Johnson, 80 F.3d 1331, 1336 -38 (9th Cir. 1996); Franklin Music Co. v. Am. Broad. Cos., 616 F.2d 528, 532-33, 537 (3d Cir. 1979); Material Supply Int'l, Inc. v. Sunmatch Indus. Co., 146 F. 3d 983, 993 (D.C. Cir. 1998); Merger Mgmt. Consulting, Inc. v. Wilde, 920 F. Supp. 219 (D. D.C. 1996); T.A. Pelsue Co. v. Grand Enters., Inc., 782 F. Supp. 1476, 1486 (D. Colo. 1991); Abraham Zion Corp. v. Lebow, 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984), aff'd, 761 F. 2d 93 (2d Cir. 1985); Seward v. Union Pump Co., 428 F. Supp. 161 (S.D. Texas 1977); GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409,  424-25 (2000), overruled on other grounds by, Reeves v.

<u>Hanlon</u>, 33 Cal. 4th 1140 (2004); <u>Computer Sciences Corp. v. Ferguson</u>, 74 Cal. Rptr. 86, 92-93 (1968); Restatement (Third) of Agency Sect. 8.04 cmt. c.

## CONSENT TO EMPLOYEE'S ACTIONS

Mattel must also show by a preponderance of the evidence that it did not consent to Bryant's conduct.   Such consent need not be explicit, but can be shown by implied understandings and known customs.

**Authority:** CACI No. 4102 (2008); Restatement (Third) of Agency § 8.04 cmt. b.

## HARM CAUSED BY BREACH OF THE DUTY OF LOYALTY

Mattel must prove by a preponderance of the evidence all facts necessary to show that Bryant's breach of the duty of loyalty was a substantial factor in causing Mattel harm during the term of Bryant's employment.  It is not sufficient to show that Mattel was harmed by Bryant's competition with Mattel after Bryant no longer was employed at Mattel.

**Authority:** CACI No. 4102 (2008); Bancroft Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966); Charles T. Powner v. Smith, 91 Cal. App. 101 (1928); Sumner v. Nevin, 4 Cal. App. 347, 350-51 (1906); see also Sequoia Vacuum Sys., v. Stansky, 229 Cal. App. 2d 281, 286 (1964) (citing Daniel Orifice Fitting Co. v. Whalen, 198 Cal. App. 2d 791, 800 (1962)).

## CONVERSION CLAIM

Mattel has asserted a claim for conversion against Isaac Larian and MGA (HK).

I will now instruct you regarding the law as to this claim.

## CONVERSION — ELEMENTS

Mattel claims that Isaac Larian and MGA (HK) wrongfully exercised control over Bryant's BRATZ sketches, which Mattel claims it owns under Section 2(a) of the Inventions Agreement. To establish this claim, Mattel must prove all of the following:

1. That Mattel owned the BRATZ sketches under Section 2(a) of the Inventions Agreement;

2. That Larian and MGA (HK) intentionally prevented Mattel from having access to the above-mentioned items for a significant period of time, or destroyed Mattel's personal property;

3. That Mattel did not consent;

4. That Mattel was harmed; and

5. That Larian and MGA (HK)'s conduct was a substantial factor in causing Mattel's harm.

A conversion claim must relate to tangible physical property. A conversion claim cannot be based upon property that a party has discarded.

**Authority:** CACI No. 2100 (2008); <u>Ananda Church of Self-Realization v. Mass. Bay Ins. Co.</u>, 95 Cal. App. 4th 1273, 1282 (2002); <u>see also</u> <u>Melchior v. New Line Prods., Inc.</u>, 106 Cal. App. 4th 779, 793 (2003) (conversion does not apply to ideas).

DATED:  July 3, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  _____/s/ Thomas J. Nolan_____

Thomas J. Nolan
Attorneys for the MGA Parties

34