EXHIBIT 4



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 90378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]**<br><br>DECLARATION OF DIANE C. HUTNYAN IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL BRYANT TO MAKE ORIGINAL DOCUMENTS AVAILABLE FOR EXPERT EXAMINATION AND TESTING AND FOR SANCTIONS<br><br>Hearing Date: TBA<br>Time: TBA<br>Place: TBA<br><br>Discovery Cut-off: October 22, 2007<br>Pre-trial Conference: January 14, 2008<br>Trial Date: February 12, 2008 |

**CONFIDENTIAL**

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

-1-

HUTNYAN DECLARATION

Exhibit 4 ,
P. 99

## DECLARATION OF DIANE C. HUTNYAN

I, Diane C. Hutnyan, declare as follows:

I am a member of the bar of the State of California, am admitted to practice before this court and am a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for plaintiff and cross-defendant Mattel, Inc. ("Mattel"). I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

1.    Attached as Exhibit 1 hereto is a true and correct copy of Mattel, Inc.'s Notice of Motion and Motion To Enforce Stipulation And Compel Bryant To Make Original Documents Available and For Sanctions, dated January 22, 2007.

2.    Attached as Exhibit 2 hereto is a true and correct copy of the Order Granting Mattel's Motion to Enforce Stipulation to Make Original Documents Available, dated February 14, 2007.

3.    In March and April, 2007, Bryant produced approximately 16,800 more documents, in addition to the 1,588 he had previously produced.  Attached as Exhibit 3 hereto is a true and correct copy of a letter from Shane McKenzie to Keith A. Jacoby, formerly counsel for Bryant, dated May 7, 2006 [sic].  The letter was actually sent on May 7, 2007.

4.    Attached as Exhibit 4 hereto is a true and correct copy of a letter from Shane McKenzie to Keith A. Jacoby, dated May 15, 2006 [sic].  The letter was actually sent on May 15, 2007.

5.    Attached as Exhibit 5 hereto is a true and correct copy of a letter from Shane McKenzie to Keith A. Jacoby, dated May 18, 2006 [sic].  The letter was actually sent on May 18, 2007.

6.    Attached as Exhibit 6 hereto is a true and correct copy of a letter from Michael H. Page, counsel for Bryant, to Shane McKenzie, dated May 21, 2007.

07209/2160974.1

HUTNYAN DECLARATION

Exhibit  4 ,
P. 100

1     7.     Attached as Exhibit 7 hereto is a true and correct copy of a letter
2  from me to Michael H. Page, dated May 22, 2007.

3     8.     Attached as Exhibit 8 hereto is a true and correct copy of an email
4  from John Trinidad, counsel for Bryant, to me, dated May 22, 2007.

5     9.     Attached as Exhibit 9 hereto is a true and correct copy of an email
6  from John Trinidad, counsel for Bryant, to me, dated May 28, 2007.

7     10.    Attached as Exhibit 10 hereto is a true and correct copy of a letter
8  from me to Michael H. Page, dated June 6, 2007.

9     11.    Attached as Exhibit 11 hereto is a true and correct copy of a letter
10  from me to Michael H. Page, dated June 7, 2007.

11     12.    Attached as Exhibit 12 hereto is a true and correct copy of a letter
12  from Michael H. Page to me, dated June 7, 2007.

13     13.    Attached as Exhibit 13 hereto is a true and correct copy of a letter
14  from me to Michael H. Page, dated June 26, 2007. I sent this letter to confirm the
15  meet-and-confer discussion that Michael Page, John Trinidad and I had over the
16  telephone on the afternoon of June 22, 2007 in which we discussed Mattel's proposed
17  protocol.

18     14.    Attached as Exhibit 14 hereto is a true and correct copy of a letter
19  from Michael H. Page to me, dated June 27, 2007.

20     15.    Attached as Exhibit 15 hereto is a true and correct copy of a letter
21  from me to Michael H. Page, dated June 30, 2007.

22     16.    Attached as Exhibit 16 hereto is a true and correct copy of a letter
23  from Michael H. Page to me, dated July 5, 2007.

24     17.    Attached as Exhibit 17 hereto is a true and correct copy of

25     18.    Attached as Exhibit 18 hereto is a true and correct copy of

26     19.    Attached as Exhibit 19 hereto is a true and correct copy of MGA
27  and Bryant's Joint Opposition to Mattel's Motion For Appointment of Expert
28  Witnesses, dated June 26, 2006.

-3-

HUTNYAN DECLARATION

Exhibit _4_ ,
P. _101_

1      20.    Attached as Exhibit 20 hereto is a true and correct copy of MGA

2 Entertainment, Inc.'s Opposition to Mattel, Inc.'s Motion To Compel MGA To Produce

3 Witnesses For Deposition Pursuant to Rule 30(b)(6) and For Sanctions, dated April 26,

4 2007.

5      21.    Attached as Exhibit 21 hereto is a true and correct copy of MGA

6 Entertainment, Inc.'s Opposition to Mattel, Inc.'s Motion To Compel Production of

7 Documents And Interrogatory Answers, dated February 20, 2007.

8      22.    Mattel has incurred attorneys' fees and costs in excess of $2,500 in

9 bringing this motion. I spent more than four hours of time preparing the motion and

10 my declaration, for a total of more than $ 2,500.00 at my billing rate of $625.00 per

11 hour.

12      I declare under penalty of perjury under the laws of the State of California

13 and the United States of America that the foregoing is true and correct.

14      Executed this 6th day of July, 2007, at Los Angeles, California.

15

16          Diane C. Hutnyan

17

18

19

20

21

22

23

24

25

26

27

28

07209/2160974.1

-4-

HUTNYAN DECLARATION

Exhibit _4_ ,
P. _102_

EXHIBIT 1

Exhibit 4 ,
P. 103



1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2 |   John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
3 |   Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
4 |   Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
5 | 865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
6 | Telephone: (213) 443-3000
Facsimile: (213) 443-3100
7 | Attorneys for Plaintiff Mattel, Inc.

8

### UNITED STATES DISTRICT COURT

9

### CENTRAL DISTRICT OF CALIFORNIA

10

### EASTERN DIVISION

11

| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|
| Plaintiff, | Consolidated with Case No. CV 04-09059 and Case No. CV 05-02727 |
| vs. | **DISCOVERY MATTER** |
| | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order Of December 6, 2006]** |
| MATTEL, INC., a Delaware corporation, | |
| Defendant. | MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO ENFORCE STIPULATION AND COMPEL BRYANT TO MAKE ORIGINAL DOCUMENTS AVAILABLE AND FOR SANCTIONS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT |
| AND CONSOLIDATED ACTIONS | [Declarations of Michael T. Zeller, B. Dylan Proctor and Shane McKenzie filed concurrently herewith] |
| | Hearing Date: TBA
Time: TBA
Place: TBA |
| | Discovery Cut-off: None Set
Pre-trial Conference: None Set
Trial Date: None Set |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

07209/2039383.1

EXHIBIT ____1____ PAGE ____5____

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................................ 2

BACKGROUND ................................................................................................................ 4

ARGUMENT ..................................................................................................................... 10

I.    BRYANT SHOULD BE ORDERED TO MAKE HIS ORIGINAL
      DRAWINGS, DOCUMENTS AND TANGIBLE THINGS
      AVAILABLEFOR INSPECTION. ................................................................ 10

      A.    Bryant Stipulated On The Record That He Would Produce, And
            Otherwise Had Agreed On Numerous Occasions To Produce,
            These Very Documents, But Still Refuses To Do So. ........................... 10

      B.    Mattel Is Entitled to Inspect the Original Documents Under The
            Federal Rules ..................................................................................... 11

      C.    Bryant Has No Legitimate Justification For His Refusals To Make
            His Originals Available ........................................................................ 15

II.   THE DISCOVERY MASTER SHOULD SANCTION BRYANT ................. 18

EXHIBIT ___1___ PAGE ___6___

07209/2039583.1

i

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

Braley v. Campbell,
  832 F.2d 1504 (10th Cir. 1987).................................................................. 17

Equal Employment Opportunity Commission v. Ethan Allen, Inc.,
  259 F. Supp. 2d 625 (N.D. Ohio 2003).................................................. 13

Gielow v. Warner Bros. Pictures,
  26 F. Supp. 425 (S.D.N.Y. 1938)............................................................ 11

Gonnuscio v. Seabrand Shipping Ltd.,
  1997 WL 118436 (D. Or. 1997)................................................................ 15

Hyde & Drath v. Baker,
  24 F.3d 1162 (9th Cir. 1994)...................................................................... 17

In re Kolinsky,
  140 B.R. 79 (S.D.N.Y. 1992) ..................................................................... 11

National Hockey League, Inc. v. Metropolitan Hockey Club, Inc.,
  427 U.S. 639 (1976) ........................................................................................ 18

RTC v. Dabney,
  73 F.3d 262 (10th Cir. 1995)...................................................................... 17

United States v. Yamin,
  868 F.2d 130 (5th Cir. 1989)...................................................................... 12

### **Statutes**

28 U.S.C. § 1927.................................................................................................. 17

Fed. R. Civ. P. 26(b) ........................................................................................ 11

Fed. R. Civ. P. 34........................................................................................... 3, 15

Fed. R. Civ. P. 34(a) ........................................................................................ 11

Fed. R. Civ. P. 37-1 .......................................................................................... 7

Fed. R. Civ. P. 37(a)(4) ................................................................................... 17

Federal Rule of Evidence 1002 ............................................................... 3, 12

Local Rule 7-3 .................................................................................................... 1

EXHIBIT _____1_____ PAGE _____7_____

ii

MATTEL'S MOTION TO COMPEL ORIGINALS

Exhibit _4_,
P. _106_

1    **Miscellaneous**

2    4 Moore's Federal Practice, § 26-184 (2d ed. 1991) ................................................... 11

3    McCormick, Evidence §§ 231, 232, 236 (4th ed. 1992) ............................................ 12

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2039383.1

iii

EXHIBIT ___1___ PAGE ___8___

Exhibit _4_ ,
P. _107_

1 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that at a telephonic conference before Discovery

3 Master Hon. Edward Infante (Ret.), that will occur on a date and at a time to be

4 determined by Judge Infante, plaintiff Mattel, Inc. ("Mattel") will, and hereby does,

5 move the Court: (1) to compel Defendant Carter Bryant to make the originals of his

6 documents available for inspection and photographing by Mattel; and (2) for an award of

7 sanctions against Bryant in the amount of $2,200.00, which represents a portion of the

8 fees incurred by Mattel in bringing this Motion.

9      This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u> 34 and 37

10 on the grounds that, in resolving a prior Mattel motion to compel Bryant to produce his

11 originals for inspection and photographing, Bryant had promised and agreed numerous

12 times to produce his originals for inspection and photographing, including through an on-

13 the-record stipulation before Magistrate Judge Block on June 20, 2006 that he would

14 make all of the originals requested by Mattel available on 15 days' notice. Despite

15 Mattel's repeated requests since that time Bryant has failed and refused to do so.

16      The parties have met and conferred on the subject of Bryant's originals

17 numerous times pursuant to <u>Local Rule</u> 7-3, including without limitation in Magistrate

18 Judge Block's courtroom on June 20, 2006 and subsequently on December 28, 2006.

19      This Motion is based on this Notice of Motion and Motion, the

20 accompanying Memorandum of Points and Authorities, Separate Statement filed

21 concurrently herewith, the Declarations of Michael T. Zeller and Shane McKenzie filed

22 concurrently herewith, the records and files of this Court, and all other matters of which

23 the Court may take judicial notice.

24 DATED: January 19, 2007     QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

25

26         By _____

27           Michael T. Zeller

28           Attorneys for Plaintiff and Cross-Defendant Mattel, Inc.

EXHIBIT ____ PAGE ____

-1-

MATTEL'S MOTION TO COMPEL ORIGINALS



Exhibit 4 ,
P. 108

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

The bulk of defendant Carter Bryant's document production consists of undated (and unorganized) design drawings pertaining to his work on MGA-related projects.[1]  Mattel has long been seeking to inspect and photograph the originals of drawings and other key materials produced by Bryant.  In fact, after Bryant had reneged on his repeated promises to make all of his originals available for inspection,[2] Mattel filed in February 2005 a motion to compel Bryant to produce the originals of his documents, including most importantly his Bratz drawings, for Mattel's inspection and photographing.[3]  The case was then stayed for a year, but after discovery resumed, Magistrate Judge Block ordered the parties to further meet and confer in his courtroom on June 20, 2006 on then-pending discovery motions that included Mattel's motion to compel Bryant's originals.  At the conclusion of the June 20, 2006 meet and confer under Judge Block's auspices, Mattel's motion was resolved by an on-the-record stipulation by the parties that Bryant (as well as the other parties) would make the originals of documents requested by another party available on 15 days' notice.[4]

Despite that on-the-record stipulation (which was also repeatedly documented in correspondence), and despite Mattel's numerous requests since then that Bryant make available his remaining originals,[5] Bryant has failed and refused to do so.  Thus, to date, Bryant has refused to make several originals—including Bratz design drawings as well as a signature page from an agreement with MGA—available for

---

[1]   Declaration of Michael T. Zeller, dated January 19, 2007 and filed concurrently herewith ("Zeller Dec."), ¶ 6 Exh. 5.
[2]   Id., ¶¶ 11, 14, 16 and Exh. 11.
[3]   Id., Exh. 15.
[4]   Id., ¶ 17.
[5]   Declaration of Shane McKenzie, dated January 19, 2007 and filed concurrently herewith ("McKenzie Dec."), Exhs. 1-4.  The originals that Bryant continues to withhold are listed in Exh. 3 to the McKenzie Declaration.

EXHIBIT __1__   PAGE __10__

Exhibit _4_,
P. _109_

1   inspection and photographing.[6] Not only were these documents the subject of the parties'
2   on-the-record June 20, 2006 stipulation, but Mattel is obviously entitled to inspect and
3   photograph the originals. Key issues in this case is when Bryant created Bratz drawings
4   and when he was working with MGA on Bratz.  Mattel needs, and has the right, to
5   inspect and photograph the original documents to determine what other information is
6   available on them which is not disclosed by photocopies (such as impressions,
7   watermarks or alterations) and to determine what expert analysis of them might be
8   appropriate for such purposes as ascertaining their true dates of creation. Indeed, even
9   apart from Bryant's stipulation and promises to produce, the express terms of Federal
10  Rule of Civil Procedure 34 and the policies underlying Federal Rule of Evidence 1002
11  give Mattel the right to inspect and photograph Bryant's originals.

12          Nevertheless, even after the June 20, 2006 stipulation, Bryant largely
13  ignored Mattel's requests for originals and, as even to the ones he did eventually provide,
14  strung out Mattel for weeks.[7] He also still refuses, to this day, to provide a number of his
15  originals. As one excuse for his refusals, Bryant claimed at one point that Mattel was not
16  entitled to see all the pages of a spiral notebook containing Bratz drawings.[8] As Mattel
17  explained, that position was baseless, including because the other pages in the notebook
18  are likely to contain relevant information, such as impressions and even dates that would
19  bear on the creation dates of the Bratz drawings in that same notebook.[9]

20          Although Bryant then conceded that Mattel could inspect the entirety of the
21  spiral notebook, he still refused to produce the originals unless the June 20 stipulation
22  was re-negotiated and a new condition was imposed on Mattel: namely, Bryant insisted
23  that he would provide Mattel his originals only if Mattel's counsel agreed to give him

24

25

26   [6]  McKenzie Dec., ¶¶ 3 & 4 and Exh. 1; Zeller Dec., ¶ 19.
27   [7]  McKenzie Dec., ¶ 8.
     [8]  Zeller Dec., ¶ 18 and Exhs. 16 & 17.
28   [9]  Id.

EXHIBIT ___1___ PAGE ___11___

-3-

MATTEL'S MOTION TO COMPEL ORIGINALS

Exhibit  4  ,
P.  110

1  their work product photographs.[10] Bryant had no right to condition his compliance with
2  the binding, on-the-record stipulation by unilaterally imposing new terms, but Mattel
3  nevertheless tried to accommodate Bryant's evolving demands in the hopes of avoiding
4  motion practice.  Mattel therefore stated it would be amendable to a reciprocal agreement
5  whereby all the parties would share their photographs, subject to an agreement that it
6  would not be deemed a waiver of work product protections and that a party could
7  withhold particular photographs if they revealed a party's litigation strategy, such as
8  photographs that focus in on particular portions of documents or tangible items.[11] Bryant
9  then insisted in response that Mattel provide him with authority for the proposition that
10  photographs taken by counsel are work product.[12] After Mattel provided that authority,
11  and although Mattel made yet another follow-up request, Bryant simply decided to
12  ignore Mattel, including a Mattel letter specifically warning that Mattel would have no
13  choice but to proceed with this motion unless it hear from him.[13]

14         Bryant's delays and his defiance of a binding stipulation need to brought to
15  an end.  The parties' on-the-record stipulation should be enforced by its terms, and
16  Bryant should be ordered—without new conditions, caveats or cut-outs—to produce all
17  of his remaining originals requested by Mattel for inspection and photographing.  He
18  also should be sanctioned for forcing Mattel to bring this motion to obtain what Bryant
19  acknowledged to Judge Block Mattel was entitled to and for his long, unjustified refusals
20  to produce this required discovery to Mattel.

21                         **Background**

22         ***Carter Bryant's Work On Bratz.***  Defendant Carter Bryant is a former
23  Mattel employee.  He worked as a Mattel product designer from September 1995 to

24

---

25  [10] Declaration of B. Dylan Proctor, dated January 19, 2007 and filed concurrently
26  herewith ("Proctor Dec."), ¶ 2.
27  [11] Id., ¶ 3 and Exh. 1.
     [12] Id., ¶ 4 and Exh. 2.
28  [13] Id., ¶ 5 and Exh. 3.

EXHIBIT __1__ PAGE __12__

MATTEL'S MOTION TO COMPEL ORIGINALS

Exhibit __4__,
P. __111__

1    April 1998, and then again from January 1999 to October 2000.[14]   Upon starting his
2    second term of employment with Mattel, Bryant executed an Employee Confidential
3    Information and Inventions Agreement.[15]   There, he agreed that during his Mattel
4    employment he would not, without Mattel's express written consent, "engage in any
5    employment or business other than for [Mattel], or invest in or assist (in any manner) any
6    business competitive with the business or future business plans of [Mattel]." Bryant also
7    assigned to Mattel, to the fullest extent of the law, all rights in "inventions," including
8    "designs," that he created during his Mattel employment.  In his agreement, Bryant
9    further promised not to disclose or misuse Mattel's proprietary or confidential
10   information, which is an obligation that continues to this day.

11         In November 2003, Mattel obtained a copy of a contract between Bryant
12   and MGA, a Mattel competitor.[16]  That contract—which was entered into while Bryant
13   was employed by Mattel—required Bryant to provide design services to MGA on a "top
14   priority" basis, in conflict with his then-existing duties to Mattel.  It also purported to
15   grant MGA ownership of works made by Bryant, both before and after the agreement's
16   effective date, in further contravention of his obligations to Mattel.

17         Discovery has shown so far that Bryant worked on at least two projects with
18   MGA while he was employed by Mattel. One was the "Bratz" project.[17] The other was
19   an ostensibly separate project known as "Angel."[18]  In this case, the timing of Bryant's
20   actions are important to many of Mattel's claims.  Among other things,  Bryant's
21   drawings and other works that were created during his Mattel employment are owned by
22   Mattel and thus their dates of creation are highly relevant.  Indeed, Bryant and MGA
23   have put timing at issue by claiming that Bryant created most or all of his drawings, and

24

25   ────────────────
     [14]  See Zeller Dec., Exh. 1 at ¶ 9, Exh. 2 at 29:16-18 & Exh. 3 at ¶ 7.
26   [15]  Id., ¶ 2 and Exh. 1.
     [16]  Id., ¶ 3 and Exh. 3.
27   [17]  Id., Exh. 4 at 178:3-22.
     [18]  Id., Exh. 4 at 178:3-18, 195:21-196:20.
28

07209/2039383.5

EXHIBIT ___1___ PAGE ___13___

-5-

Exhibit __4__ ,
P. __112__

1    performed other relevant work, either during the few months in 1998 when he was not
2    working for Mattel, or else after the time he had left Mattel.[19]

3              ***Bryant Agrees, But Then Refuses, To Make Originals Available.*** Much of
4    the documentary evidence produced by Bryant consists of undated design drawings,
5    which Bryant produced to Mattel as black and white photocopies.[20]   Moreover,
6    information that one would naturally expect—such as complete fax headers, date and
7    time stamps and fax cover pages—are missing from his production.[21]

8              Mattel began asking Bryant to make his originals available for inspection
9    and photographing at least as early as October 25, 2004.[22] Bryant responded that Mattel
10   could make the inspection on November 1, 2004.[23] Mattel asked Bryant to confirm that
11   the inspection would include: "1) all of the non-privileged responsive documents in
12   Bryant's possession or control; 2) the additional documents you agreed to allow us to
13   inspect at the meeting of counsel; and 3) all of the tangible items that Mattel
14   requested."[24]   Before the inspection, Bryant's counsel unilaterally limited Mattel's
15   inspection to only the tangible things that Bryant had produced up to that point.[25]   Then,
16   at the inspection on November 1, 2004, Bryant's counsel provided only a few tangible
17   items for Mattel's inspection and none of the originals of the drawings or other
18   documents that Bryant had produced.[26]

19             Mattel again asked that all of the originals be made available for inspection,
20   this time requesting that the originals be made available for inspection during Bryant's
21   deposition—which took place only after two Court Orders compelling his attendance and
22   only after Bryant's counsel had broken their "word as attorneys" that he would earlier

23   _____

24   [19] E.g., id., ¶ 4 and Exhs. 3 at ¶ 24 and Exh. 4 at 45:7-14, 139:23-141:8.
     [20] Id., ¶ 6 and Exh. 5.
25   [21] Id., ¶ 7 and Exh. 7.
     [22] Zeller Dec., Exh. 9.
26   [23] Id., Exh. 10.
     [24] Id., Exh. 11.
27   [25] Id., ¶ 11.
     [26] Id.
28

07209/2039383.1

EXHIBIT ___1___ PAGE ___14___

-6-

Exhibit _4_,
P. _113_

1 appear.[27]  Bryant's counsel stated that "we will have these originals sent to Missouri,"
2 where the deposition was taking place.[28]  Despite this, and despite Mattel's further
3 requests at that time for the originals, Bryant made only a few original drawings
4 available at the deposition.[29]  As shown by the deposition transcript, in response to
5 Mattel's additional inquiries, Bryant's counsel specifically represented that, as to Bryant's
6 original documents and drawings, "we certainly will make them available for inspection
7 at a reasonable time upon reasonable notice."[30]

8           *Mattel's Motion To Compel And The Parties' Resulting On-The-Record*
9 *June 20, 2006 Stipulation.*  After the deposition, Mattel made additional requests to see
10 the originals of the documents produced by Mr. Bryant.  Bryant's counsel then agreed,
11 again, to make all original documents available for inspection and photographing, and
12 the inspection was scheduled to begin on December 22, 2004.[31]  Mattel's counsel, with a
13 videographer and photographer, inspected some originals on December 22 and on
14 December 23, 2004.[32]  Yet, at the inspection, Bryant's counsel did not turn over a single
15 original Bratz drawing or sketch[33] and, indeed, did not turn over the majority of the
16 originals of documents that he has produced.[34]  Equally troubling, Bryant's counsel
17 claimed not to be able to turn over or even locate many of the originals.[35]  During that
18 inspection, Bryant's counsel made repeated promises that all original documents would
19 be made available for inspection "when found."[36]

20

21

22   27 Zeller Dec., Exh. 12.
      28 Id., Exh. 13.
23    29 Id., ¶ 14.
      30 Id., ¶ 14 and Exh. 4 at 616:17-18.
24    31 Zeller Dec., ¶ 17.
      32 McKenzie Dec., ¶ 2.
25    33 McKenzie Dec., ¶¶ 2-4 & Exh. 1.
      34 Id.  A complete listing of the original Bratz drawings, sketches and other
26 documents that Bryant's counsel could not account for in any way, even as to their
   whereabouts, are detailed in Exhibit 1 to the McKenzie Dec.
27    35 McKenzie Dec., ¶¶ 3-4 & Exh. 1.
      36 McKenzie Dec., ¶ 3.
28

EXHIBIT ___ PAGE __15__

MATTEL'S MOTION TO COMPEL ORIGINALS

07209/2039383.1

Exhibit __4__,
P. __114__

1       Over the course of yet another month following the incomplete inspection
2   of documents that Bryant allowed, Mattel made further requests to inspect the remaining
3   original documents, including on January 24, 2005,[37] but to no avail.  Thus, despite
4   Bryant's earlier promises, and more than three months after Mattel began asking for the
5   inspection, Bryant still had failed to turn over for inspection and photographing the
6   majority of the originals in his production.[38]  He also had failed to allow the inspection
7   and photographing of any of the originals of Bratz drawings in his production.[39]  Indeed,
8   the only "originals" of Bratz drawings that Mattel had been allowed to inspect and
9   photograph were, in fact, photocopies.[40]

10       On February 18, 2005, Mattel therefore filed a motion to compel Bryant to
11  produce his originals for inspection and photographing.[41]  Before the motion was heard,
12  however, the case was stayed for approximately a year while the Ninth Circuit
13  considered an interlocutory jurisdictional appeal.  After the jurisdictional appeal was
14  resolved and the parties' various cases were consolidated, Judge Block ordered the
15  parties to appear in his courtroom on June 20, 2006 to further meet and confer on then-
16  pending discovery motions, including Mattel's motion to compel Bryant to produce his
17  originals.[42]  After further discussing Mattel's motion to compel the originals, the parties
18  stated on the record before Judge Block on June 20, 2006 their agreement that the
19  parties, including Bryant, would produce for inspection and photographing originals
20  requested by another party on 15 days' notice.[43]

21      *Mattel Again Seeks, And Bryant Refuses, Production Of Originals*
22  *Pursuant To The June 20, 2005 On-The-Record Stipulation*.  Pursuant to the June 20,
23  2006 stipulation, Mattel requested in writing on June 21, 2006 that certain originals be

24  ────────────────
        [37] Zeller Dec., Exh. 14.
25      [38] Id., ¶ 19.
        [39] McKenzie Dec., ¶ 3 & Exh. 1.
26      [40] Id.
        [41] Zeller Dec., Exh. 15.
27      [42] Zeller Dec. ¶ 17.

28
                                    EXHIBIT __1__ PAGE __16__

Exhibit __4__,
P. __115__

1   made available by Bryant.[44] Nevertheless, in response to Mattel's June 21, 2006 request,

2   Bryant's counsel only made some, but not all, of the originals available. Accordingly, on

3   August 8, 2006, Mattel sent Bryant an additional letter detailing the previously requested

4   original documents that had still not been provided for Mattel's inspection and

5   photographing.[45] When it received no response to that letter, Mattel sent *yet another*

6   written request to inspect the missing original documents on August 21, 2006.[46] Bryant

7   ignored that request as well.[47]

8           Eventually, after Mattel made clear it was filing another motion to obtain

9   the originals, Bryant claimed that Mattel was not entitled to see all the original pages of a

10  spiral notebook containing Bratz drawings.[48] Not only did that argument fail to explain

11  his long-standing failure to produce other originals, but as Mattel explained, his position

12  was baseless since the information on the other pages would contain relevant

13  information, such as impressions and even dates that would bear on the creation dates of

14  the Bratz drawings in that same notebook.[49]

15          Bryant then conceded that Mattel could inspect the entirety of the spiral

16  notebook, but he still refused to produce the originals unless Mattel agreed to modify the

17  June 20 stipulation with new terms: namely, Bryant insisted that he would provide

18  Mattel his originals only if Mattel's counsel gave him their work product photographs.[50]

19  Although Bryant had no right to condition his compliance with the binding, on-the-

20  record stipulation by unilaterally imposing new terms, Mattel nonetheless tried to

21  accommodate Bryant's newest demands in an effort to avoid further motion practice.

22  Mattel therefore stated it would be amendable to a reciprocal agreement whereby the

23

24      [43]  Id.; see also McKenzie Dec., ¶ 3.
        [44]  McKenzie Dec., Exh. 2.
25      [45]  Id., Exh. 3.
        [46]  Id., Exh. 4.
26      [47]  Zeller Dec. ¶ 19.
        [48]  Zeller Dec., ¶ 18 and Exhs. 16 & 17.
27      [49]  Id.
        [50]  Proctor Dec., ¶ 2.
28

EXHIBIT ___1___ PAGE ___17___

Exhibit ___4___ ,
P. ___116___

07209/2039383.1

1  parties would share their photographs, subject to an agreement that it would not be
2  deemed a waiver of work product protections and that a party could withhold particular
3  photographs if they revealed a party's litigation strategy, such as photographs that focus
4  in on particular portions of documents or tangible items.[51]  In response, Bryant insisted
5  that Mattel provide him with authority for the proposition that photographs taken by
6  counsel are work product.[52]  Mattel provided that authority and made yet another follow-
7  up request to Bryant, including through a January 12, 2007 Mattel letter stating that
8  Mattel would proceed with this motion if Mattel did not hear from Bryant by January 16,
9  2007.[53]  Bryant, however, simply chose to ignore Mattel.[54]

**Argument**

I.  **BRYANT SHOULD BE ORDERED TO MAKE HIS ORIGINAL**
    **DRAWINGS, DOCUMENTS AND TANGIBLE THINGS**
    **AVAILABLEFOR INSPECTION.**

14  Bryant should be ordered to make his originals and tangible items available
15  for Mattel's inspection and photographing.  Not only did Bryant stipulate to make them
16  available on 15 days' notice on the record before Judge Block, but Mattel is clearly
17  entitled to inspection under the Federal Rules.

A.  **Bryant Stipulated On The Record That He Would Produce, And**
    **Otherwise Had Agreed On Numerous Occasions To Produce, These**
    **Very Documents, But Still Refuses To Do So.**

21  At the conclusion of the meet and confer on June 20, 2006 to resolve
22  Mattel's prior motion to compel Bryant to make his originals available for inspection and
23  photographing, the parties stipulated on the record before Judge Block that they—
24  including Bryant—would provide originals for inspection and photographing within 15

---

[51]  Id., Exh. 1.
[52]  Id., Exh. 2.
[53]  Id., Exhs. 3 & 4.
[54]  Id., ¶ 5 & Exh. 4.

EXHIBIT __1__ PAGE __18__

77209/2059383.1

-10-

Exhibit 4 ,
P. 117

1  days of a request by another party.  As noted, despite Mattel's repeated requests for
2  months now, Bryant failed to comply and then chose to simply ignore Mattel's requests
3  entirely.

4          Moreover, on multiple occasions as shown above, including on the record at
5  the Bryant deposition, Bryant stated to Mattel that he will provide his originals.  Despite
6  the fact that Mattel has now spent considerable time and money in reliance on these
7  promises—showing up with attorneys, videographers and photographers on three
8  occasions to inspect documents and other tangible things—Bryant and his counsel have
9  not lived up to their promises and still refuse to provide his requested originals.
10  Therefore, Bryant should be compelled to do so.

11      **B.**   **Mattel Is Entitled to Inspect the Original Documents Under The**
12         **Federal Rules.**

13          Even apart from Bryant's binding, on-the-record stipulation and his
14  numerous, broken promises, Mattel is entitled to the originals under the law.  The plain
15  language of Rule 34 allows Mattel to inspect Bryant's  originals since it specifically
16  permits a party requesting documents "*to inspect* and copy, any designated
17  documents"—including "writings" and "*drawings*" —"or *to inspect* and copy, test, or
18  sample any tangible things which constitute or contain matters within the scope of Rule
19  26(b) and which are in the possession, custody or control of the party upon whom the
20  request is served." Fed. R. Civ. P. 34(a) (emphasis added). This language means what it
21  says.  As one court has stated, Rule 34 confers "a right to inspect the originals.
22  Possession of copies of documents does not prevent discovery of actual documents so as
23  to avoid possible challenges to the genuineness of copies at the trial." In re Kolinsky,
24  140 B.R. 79, 87 (S.D.N.Y. 1992) (citing 4 Moore's Federal Practice, § 26-184 (2d ed.
25  1991)); see also Gielow v. Warner Bros. Pictures, 26 F. Supp. 425 (S.D.N.Y. 1938)
26  (holding originals were "evidence material to any matter involved" within Rule 34
27  providing for discovery and granting motion to compel).

28

07209/2039383.1

EXHIBIT ___1___ PAGE __19__

-11-

Exhibit __4__ ,
P. __118__

1    The reasons for this are apparent:  Originals often reveal significant
2 information not obtainable from copies. As McCormick has stated, "[i]t has long been
3 observed that the opportunity to inspect original writings may be of substantial
4 importance in the detection of fraud," and "[m]any indicia of putative fraud such as
5 watermarks, types of paper and inks, etc., will not be discernable on the copy."
6 McCormick, Evidence §§ 231, 236 (4th ed. 1992).  Indeed, the policies seeking to
7 prevent inaccuracy and fraud with respect to documents are what animate Federal Rule
8 of Evidence 1002, which independently requires Bryant to produce his originals here.
9 "[W]ritings exhibit a fineness of detail . . . which will often be of critical importance.
10 Prevention of loss of this fine detail through mistransmission is a basic objective of the
11 rule requiring production of documentary originals." McCormick, supra, § 232; see also
12 United States v. Yamin, 868 F.2d 130, 134 (5th Cir. 1989) (explaining purpose of rule
13 requiring production of originals is "to prevent inaccuracy and fraud when attempting to
14 prove the contents of a writing.").

15    Allowing Mattel equal access to the information shown by the originals—to
16 which defendants obviously have access but refuse to share—is particularly important in
17 this case.  This case involves numerous drawings, and the ones that Mattel has seen so
18 far were created using different kinds and colors of pencils, inks and markers.[55]  They
19 also have what appears to be different handwriting from different sources made at
20 different times on them.[56]  Two different third-party witnesses, Ramona Prince and Steve
21 Linker, also have testified that certain, highly material dates and annotations on the
22 copies of Bryant drawings as produced to Mattel by defendants here did **not** in fact
23 appear on the original drawings that defendants had previously shown them.[57]  The
24 timing of the creation of these documents and of the various additional matter on them

---

[55]  E.g., Zeller Dec., ¶ 6.
[56]  Id.
[57]  Zeller Dec., Exhs. 20 (at 171:25, 172-175:1-23) & 21 (at 131:22-24, 132-138:1-12).

EXHIBIT ___1___ PAGE ___20___

-12-

MATTEL'S MOTION TO COMPEL ORIGINALS

Exhibit 4 ,
P. 119

1  can be critical in this case, as noted above.  Mattel is entitled to know which originals
2  Bryant has and is entitled to know the information that is evident only from originals,
3  such as the existence of watermarks or impressions and the use of different inks on
4  particular documents.  Without inspecting and photographing the originals of these
5  drawings, it will be effectively impossible for Mattel to fully understand the evidence
6  and to test any claims that the drawings and their claimed dates of creation are authentic.

7         Independently, Mattel is entitled to inspect and photograph to determine
8  which originals have been altered and how.  As noted, witnesses have testified that key
9  aspects of drawings, such as dates, that Bryant purports to rely on were added only later.
10  And, as the testimony of a former MGA executive revealed, there has been an alteration
11  of originals by defendants in this case.  Victoria O'Connor was an MGA executive who
12  worked for MGA when Bryant and MGA signed what they claim is their first Bratz-
13  related agreement (the "Bryant/MGA Contract").[58]  According to Ms. O'Connor, Bryant
14  faxed a signed copy of the Bryant/MGA Contract to MGA from Mattel.[59]  Upon receipt,
15  each page of the contract included a fax header that read "Barbie Collectibles" (which is
16  the Mattel design group that Bryant worked in) and bore the number of the Mattel fax
17  machine that it came from, revealing that it came from Mattel's Design Center where
18  Bryant worked.[60]  When Ms. O'Connor brought this to the attention of her boss--Isaac
19  Larian, the CEO and founder of MGA--Mr. Larian instructed her to "white-out" the fax
20  header information on all pages of the contract and send the contract, as altered, to an
21  outside MGA attorney.[61]  At Mr. Larian's direction, Ms. O'Connor proceeded to alter
22  each page of the contract in order to conceal, as Ms. O'Connor testified, that Bryant
23  "was still employed at Mattel at the time the contract [between MGA and Bryant] was
24  executed."[62]

25  ─────────────────
26  [58]  Zeller Dec. Exh. 8 (at 13:2-9).
      [59]  Zeller Dec. Exh. 8 (at 18:13-14).
      [60]  Zeller Dec. Exh. 8 (at 18:13-16).
27  [61]  Zeller Dec. Exh. 8 (at 18:13-18).
      [62]  Zeller Dec. Exh. 8 (at 19:1-4, 20:8-21:18).
28

EXHIBIT __1__  PAGE __21__

J7209/2039383.1

-13-

MATTEL'S MOTION TO COMPEL ORIGINALS

Exhibit __4__ ,
P. __120__

1    Bryant likewise has produced documents in this case that bear indicia of

2  having been altered from their original state. For example, Bryant had produced a fax of

3  Bratz drawings that has a fax header date of April 10, 2000[63]--a time during which

4  Bryant was working for Mattel and during which Bryant claims he was not working on

5  Bratz. Although the fax header information on the page produced by Bryant states that it

6  was the third page of a fax transmission, neither the preceding nor subsequent pages, nor

7  any cover sheet, has been produced.[64]  Further, even though the fax header on the

8  produced page has fields for both the sender's name and the sender's telephone number,

9  neither the name of the sender nor the sender's telephone number appears in the fax

10  header.[65]  That information is simply missing. Because facsimile machines normally

11  insert senders' names and numbers as a matter of course, and indeed is required by law,[66]

12  there is reason to believe that the document was altered to conceal the sender's

13  information. As Judge Larson has put, "the testimony elicited from Ms. O'Connor that

14  MGA altered the fax header from other documents related to Bratz from the same time

15  period leads to an obvious inference that other documents where spaces on other fax

16  headers are absent suffered a similar fate."[67]

17    Furthermore, without an inspection, Mattel has no way of knowing what

18  drawings and other documents defendants even have originals of and cannot ascertain

19  whether expert analysis can potentially be performed.  The chemical composition of

20  certain types of inks and papers, and details such as watermarks and other impressions

21  found only on the originals of the documents, may bear on when a document was created

22  _____

23  [63]  Zeller Dec., Exh. 7.
    [64]  Zeller Dec., Exh. 6.
    [65]  Zeller Dec. ¶ 7 and Exhs. 6 & 7.

24  [66]  See 47 U.S.C. § 227(d)(1)(B) ("It shall be unlawful for any person within the

25  United States . . . to use a computer or other electronic device to send any message via a
    telephone facsimile machine unless such person clearly marks, in a margin at the top or

26  bottom of each transmitted page of the message or on the first page of the transmission,
    the date and time it is sent and an identification of the business, other entity, or

27  individual sending the message and the telephone number of the sending machine or of
    such business, other entity, or individual.").

28

EXHIBIT ___1___ PAGE __22__

-14-

Exhibit __4__,
P. __124__

1   and on when the various writings on them were made.[68]  Mattel contemplates having

2   experts examine the documents to determine what the originals might reveal the true date

3   of their creation.  Such information is relevant in this case because it may either confirm

4   or contradict Bryant's testimony about when he was doing the work on Bratz and/or

5   Angel that he says he did.  But Mattel needs detailed information about the originals

6   before it can ascertain what, if any, type of expert analysis would be appropriate and

7   furthermore to determine which of the originals are potentially appropriate candidates for

8   expert analysis.  Mattel cannot even begin this process, however, without being able to

9   inspect and photograph the rest of Bryant's originals, including most critically the

10  originals of Bryant's Bratz drawings that he refuses to allow Mattel to inspect and

11  photograph.

12      **C.    Bryant Has No Legitimate Justification For His Refusals To Make**

13             **His Originals Available.**

14             The foregoing discussion also makes evident that Bryant's most recent set of

15  evolving excuses for violating his obligations are without merit.  Bryant at one point

16  tried to make, but then abandoned, an argument that Mattel was not entitled to see the

17  complete spiral notebook containing several of the as-yet-uninspected original Bratz

18  drawings and claimed that Mattel could only look at a narrowly defined set of pages of

19  Bryant's unilateral choosing.  Of course, this in no way explained Bryant's failure to

20  produce the other originals he has continued to withhold.  Nor was there any basis for

21  Bryant's insistence that he could withhold pages from the notebook.  Not only do any

22  number of the pages in the spiral notebook have Bratz-related material on them, but the

23  other pages will reveal information that bears on the dating of those drawings in the

24  ─────────────────────

[67]   Zeller Dec., Exh. 19 at 9:6-9.

25  [68]   See, e.g., Equal Employment Opportunity Commission v. Ethan Allen, Inc., 259

26  F. Supp. 2d 625, 626 n.1 (N.D. Ohio 2003) ("Sometimes, the determination of the type of
    ink used can, by itself, prove conclusively that the claimed date of writing is false.  For

27  example, a given ink may:  (1) have been manufactured only during certain years;
    (footnote continued)

28

                                                    EXHIBIT ___|___ PAGE __23__

07209/2039383.1

                                    -15-

                              Exhibit 4 ,

                              P. 122

1  notebook in numerous ways.  Notebook writings make impressions and markings on
2  other pages that can reveal the order in which, or the date on which, they were made.
3  Many or all of these pages thus may be candidates for expert analysis, including expert
4  impression analysis, to determine the order in which the writings in the notebook—and
5  thus the Bratz drawings—were actually created.  Such analysis further may reveal
6  whether the notebook has been altered from its original state or whether pages have been
7  removed and, if so, what information was on those pages because of the impressions on
8  the remaining pages.  The other pages also may bear ink or other chemical components
9  that can be tested to ascertain when those markings were made and thus when adjacent
10  Bratz drawings were made as well.  Indeed, the other pages may themselves have
11  notations or impression that, on their face, reflect the time period in which Bratz sketches
12  and other relevant drawings were created.  Even something as seemingly innocuous as a
13  phone number or similar information may tend to show when drawings were made.  For
14  example, if it is known that Bryant did not first have contact with a particular person, yet
15  information about that person is reflected on a certain notebook page, it may serve as
16  evidence of a drawing's date.  The significant likelihood of discovering relevant
17  contextual date information—and the potential dispositive nature of such information—
18  entitles Mattel inspect the notebook as a whole, not just isolated pages cherry-picked by
19  Bryant.

20        Bryant's more recent arguments in refusing to honor his on-the-record June
21  20, 2006 stipulation unless Mattel agreed to additional terms that were not part of the
22  stipulation fare no better.  The parties' stipulation did not provide for the caveat that
23  Bryant need make his originals available for inspection 15 days' notice only if Mattel
24  gave him photographs.  No such cut-out or condition was part of the stipulation.  Not
25  only is Bryant's refusal to comply with the stipulation unless Mattel agreed to such terms
26

27  and/or (2) contain 'tags,' which are chemical components added to the ink for the precise
28  purpose of providing a date of manufacture.").

07209/2039383.1

EXHIBIT ___1___ PAGE __24__

-16-

MATTEL'S MOTION TO COMPEL ORIGINALS

Exhibit 4 ,
P. 123

1   improper for that reason alone, but he had no legal basis to insist Mattel give him its

2   photographs.[69] Although Mattel was willing to discuss with Bryant during the meet and

3   confer process a sensible agreement that would be reciprocal among all the parties, and

4   so long as it would not prejudice Mattel's rights, in an effort to obtain Bryant's originals

5   without resort to motion practice, Bryant's refusals to even respond to Mattel meant no

6   such agreement was reached.  As such, far from justifying Bryant's refusals to comply

7   with the on-the-record stipulation and with his legal obligations to produce the originals,

8   his improper demands turned out to be only another, equally improper delaying

9           Finally, Bryant cannot legitimately complain that an order compelling him

10  to make the originals available would be burdensome.  He stipulated on the record to

11  provide them on 15 days' notice.  Moreover, Bryant's entire production is only some

12

13      [69]   The language of <u>Federal Rule of Civil Procedure</u> 26(b)(3) itself makes clear that
14  photographs taken at the direction of counsel during litigation can be protected from
    disclosure by the work product doctrine. Under that <u>Rule</u>, "a party may obtain discovery
15  of documents and tangible things otherwise discoverable . . . and prepared in anticipation
    of litigation or for trial by or for another party or for that other party's representative
16  only upon a showing that the party seeking discovery has substantial need of the
    materials in the preparation of the party's case and that the party is unable without undue
17  hardship to obtain the substantial equivalent of the materials by other means.  In ordering
    discovery of such materials when the required showing has been made, the court shall
18  protect against disclosure of the mental impressions, conclusions, opinions, or legal
    theories of an attorney or other representative of a party concerning the litigation."
19  Photographs, videos and the like prepared at the direction of Mattel's counsel, including
    photographs or images of original documents, fall under this <u>Rule</u>, since they reveal
20  counsel's mental impressions and/or strategies (such as, for example, by focusing on
    particular aspects of particular dolls or drawings), as Bryant's counsel himself
21  acknowledged during a recent meet and confer.  Accordingly, courts have refused to
    compel disclosure of work product photographs taken by or at the direction of counsel.
22  <u>See, e.g.</u>, <u>Gonnuscio v. Seabrand Shipping Ltd.</u>, 1997 WL 118436, at *1 (D. Or. 1997)
23  (denying motion to compel photographs of accident scene taken by attorney because
    "photographs of this nature could easily contain the mental impressions and theories of
24  the case of the attorney who was investigating and taking the photographs").
    Furthermore, Bryant has access to "the substantial equivalent" of such materials because
25  he has his own originals, which defeats any entitlement Bryant could attempt to make to
    the photographs absent Mattel's agreement.  Of course, a party who wishes to use a
26  photograph or other demonstrative at trial typically needs to disclose that demonstrative
    before the Final Pretrial Conference under <u>Local Rules</u> 16-2, 16-3 and 16-6, but that
27  simply underscores that any photographs that counsel ultimately elects to use as
    demonstratives are not subject to discovery at this stage of litigation.
28

EXHIBIT ___1___ PAGE _25_

-17-

MATTEL'S MOTION TO COMPEL ORIGINALS

**Exhibit  4  ,**
**P. _124_**

1  1588 pages.[70]  At the limited inspection in December 2004, Mattel was allowed to
2  inspect 462 pages of the "originals" of Bryant's production.[71]  Another 267 pages were
3  produced on July 12, 2006 for Mattel's inspection.[72]  The additional, remaining pages are
4  not an unreasonable amount for Bryant to collect and make available for inspection,
5  especially in light of the fact that several of the originals he has not produced for
6  inspection are among the most relevant and significant in this case.

7         Mattel therefore respectfully requests that the Discovery Master order
8  Bryant to immediately make available to Mattel the remaining original drawings and
9  documents for inspection and photographing.

10  **II.    THE DISCOVERY MASTER SHOULD SANCTION BRYANT.**

11         Rule 37(a)(4) of the <u>Federal Rules of Civil Procedure</u> provides that a party
12  bringing a motion to compel is entitled to the "reasonable expenses incurred in making
13  the motion, including attorney's fees, unless the court finds that the motion was filed
14  without the movant's first making a good faith effort to obtain the disclosure or discovery
15  without court action, or that the opposing party's nondisclosure, response or objection
16  was substantially justified, or that other circumstances make an award of expenses
17  unjust." <u>Fed. R. Civ. P.</u> 37(a)(4). The burden of establishing substantial justification is
18  on the party being sanctioned. <u>Hyde & Drath v. Baker</u>, 24 F.3d 1162, 1171 (9th Cir.
19  1994).  Independently, sanctions may be imposed under 28 U.S.C. § 1927, which
20  provides that "[a]ny attorney . . . who so multiplies the proceedings in any case
21  unreasonably and vexatiously may be required by the court to satisfy personally the
22  excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."
23  Sanctions under this section are appropriate "for conduct that, viewed objectively,
24  manifests either intentional or reckless disregard of the attorney's duties to the court."

25
26  ───────────────
[70]  <u>E.g.</u>, McKenzie Dec., ¶ 3 & Exh. I.
27  [71]  <u>Id.</u>
[72]  <u>Id.</u> at ¶ 8.
28

EXHIBIT  1  PAGE  26

07209/2039383.1

-18-

Exhibit 4 ,
P. 125

MATTEL'S MOTION TO COMPEL ORIGINALS

1 | RTC v. Dabney, 73 F.3d 262, 265 (10th Cir. 1995) (citing Braley v. Campbell, 832

2 | F.2d 1504, 1512 (10th Cir. 1987)).

3 |       Here, there is no legitimate excuse for Bryant's failures to produce the

4 | remaining originals for inspection and photographing. Mattel has been asking for these

5 | original documents since late 2004. Bryant agreed to produce these original documents

6 | on more than one occasion—including pursuant to an on-the-record stipulation before

7 | Judge Block on June 20, 2006—but then failed to abide by his promises and even a

8 | binding stipulation *yet again*. Nor, in any event, is there any substantial or good faith

9 | basis for Bryant's long-standing failures. It is more than obvious that Mattel is entitled to

10 | inspect and photograph the originals and gave Bryant more than an ample, reasonable

11 | time to collect them and make them available. Indeed, Mattel has given Bryant months

12 | to comply both before and after Bryant had stipulated in open Court on June 20, 2006

13 | that he would provide the documents on 15 days' notice. Instead, Mattel still has gotten

14 | the run-around yet again and thus is now forced to file yet another motion to obtain these

15 | originals as a result of Bryant's lack of cooperation and his defiance of an on-the-record

16 | stipulation.

17 |       National Hockey League, Inc. v. Metropolitan Hockey Club, Inc., 427 U.S.

18 | 639 (1976), is instructive here. There, the Supreme Court held that respondent's actions

19 | in failing to honor their "promises and commitments" in providing discovery, even

20 | despite having been given "numerous extensions," constituted "flagrant bad faith" and a

21 | "callous disregard" of their responsibilities that justified the sanctions imposed by the

22 | district court. Id. at 640. Bryant's failure to comply with an on-the-record stipulation

23 | and other repeated promises to provide the originals that Mattel has long been seeking is

24 | the very definition of "flagrant bad faith" and "callous disregard." Bryant should be

25 | sanctioned for the fees and costs that he has forced Mattel to expend as a result of his

26 | evasion and lack of a good faith justification for withholding the originals. Mattel

27 |

28 |

EXHIBIT ___1___ PAGE ___27___

-19-

MATTEL'S MOTION TO COMPEL ORIGINALS

Exhibit 4 ,
P. 126

1 | therefore requests that Bryant be ordered to pay $2,200 as partial reimbursement for the

2 | fees and costs that Mattel has incurred on this motion.[73]

3 | **Conclusion**

4 | For the foregoing reasons, Mattel respectfully requests that the Discovery

5 | Master grant Mattel's motion in its entirety and order Bryant to produce the remaining

6 | originals immediately and to pay sanctions for his bad-faith delay tactics.

7

8 | DATED:   January 22, 2007          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
9

10 |                                   By _____
11 |                                      Michael T. Zeller
                                          Attorneys for Plaintiff Mattel, Inc.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28 | [73]   Zeller Dec., ¶ 35.

-20-