EXHIBIT  6

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
     Telephone: (213) 443-3000
7  Facsimile:   (213) 443-3100

8  Attorneys for Mattel, Inc.

9                    UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                        EASTERN DIVISION

12  | CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) |

13 |  | |
   |  Plaintiff, | Consolidated with |
14 |  | Case No. CV 04-09059 |
   |  vs. | Case No. CV 05-02727 |
15 |  | |
   | MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
16 |  | |
   |  Defendant. | Hon. Edward A. Infante (Ret.) |
17 |  | Discovery Master |
18 | ——————————————— | ~~[PROPOSED]~~ ORDER GRANTING |
   | AND CONSOLIDATED CASES | MATTEL, INC.'S MOTION TO |
19 |  | COMPEL BRYANT TO MAKE |
   |  | ORIGINAL DOCUMENTS |
20 |  | AVAILABLE FOR EXPERT |
   |  | EXAMINATION AND TESTING |
21 |  | |
   |  | Date: August 23, 2007 |
22 |  | Time: 9:00 a.m. |
   |  | Place: Telephonic |
23 |  | |
   |  | Discovery Cut-Off: October 22, 2007 |
24 |  | Pre-Trial Conference: January 14, 2008 |
   |  | Trial Date: February 12, 2008 |
25

26

27

28

07209/2201994.1

[PROPOSED] ORDER

Exhibit  6 ,
P. 158

1        Having considered Mattel, Inc.'s Motion To Compel Bryant To Make

2  Original Documents Available For Expert Examination and Testing (the "Motion"),

3  and all other papers and argument submitted in support of or opposition to the

4  Motion, and finding good cause therefore,

5        IT IS HEREBY ORDERED that:

6        1.    Mattel's Motion is GRANTED IN PART, as follows:

7        2.    The following materials were provided to the Discovery Master, at

8  his request, for *in camera* review:  the C.V. of the four experts who will be

9  conducting examination, inspection and testing of the documents; and statements

10  from each of them as to the location and nature of their laboratory facilities, as to

11  their individual practices with regard to the preservation of evidence, and as to their

12  understanding that they are fully accountable for Bryant's original documents while

13  those documents are in their custody.  The Discovery Master has found Mattel's

14  showing with respect to the experts satisfactory.

15        3.    Accordingly, Bryant shall produce to Mattel, within ten (10) Court

16  days of entry of this Order, on the day that Mattel specifies, the original documents

17  listed below for Mattel's experts' examination, testing and/or analysis:

18     • the originals of boxes 1 through 8 inclusive;

19
20     • from box 9:  folders "Sugar Planet Spring 2003 Tropical" and "Sugar Planet General 2001-2002?";

21
22     • from box 10:  folders "Baby Bratz," "F 04 Retro Funk General," "Sugar Planet Butterfly Purse & Character S 04," "Lipstixx 2003," Sugar Planet
23        Candyland Purse:  Character S 04" and "Sugar Planet Tropical 2001"

24     • from box 11:  folders entitled "Bratz Dollpack Fall 2003," "S04 Girls
25        Night Out," "Bratz New Accessories Etc. 2002," "Bratz Petz S04,"
         "Winter Wonderland F03 Dolls," "Bratz Spring 2002 7.99 molded
26        pieces," "S04 Sweetheart," "Jade Dollpack Spring 2003," "Jade Fall
27        2002," "Sasha Fall 2002," "Yasmin Fall 2002," "Cloe Fall 2002," "New

28

-1-

PROPOSED ORDER

Exhibit 6,
P. 159

Girl 2002 Fall," "Bratz $7.99 2002 Spring Break," and "Bratz Spring 2002 14.99 segment."

~~If Mattel's experts determine that their analysis would potentially benefit from access to other original documents not listed above, Bryant will make those originals available to Mattel's counsel or Mattel's expert(s) at Mattel's counsel's direction upon five (5) Court days' notice.~~

4.     On the day specified, Mattel will pick up the documents listed above from Keker & Van Nest's San Francisco office during normal business hours. The next day after the documents are removed from Keker & Van Nest shall be the first of 35 days that Mattel will have for the expert examination and testing of the materials requested for preparation of its initial expert reports, which time period may be extended upon a showing by Mattel of good cause by further Order of the Discovery Master.  The documents shall be returned to Keker & Van Nest's San Francisco office on the 35th day during normal business hours.

5.     The experts' examination, testing and analysis may take place at the experts' laboratories.  Any shipping of the originals will be done by overnight mail, for earliest delivery possible to the destination area, using Federal Express or UPS or a similar service that Bryant selects.

6.     If any of Mattel's experts recommends that a form of destructive testing (that is, any testing that would alter the documents' inherent physical status) be conducted, the following procedure shall be used.  First, Mattel will send a request in writing to Bryant and MGA explaining what would be tested and what test or tests would be conducted.  Then Bryant and MGA will have five (5) Court days to object, in which case the parties must meet and confer and, within three (3) more Court days, file a joint statement with Judge Infante to seek resolution of the dispute.  Bryant and MGA may also elect to have their own experts attend for any destructive testing being done, so long as they make this election in writing to Mattel within the five-Court-day objection period, and so long as the testing can take place within ten (10)

07209/2201994.1

-2-

Exhibit _6_ ,
P. _160_

1  Court days of the original request.  If Bryant's or MGA's expert, while he or she is
2  observing the examination or destructive testing, raises any issues about sampling or
3  testing being done or any other aspects of the expert's or experts' process, the parties
4  will seek immediate resolution from this Court so that the sampling, testing or other
5  activity will not be delayed.  If Bryant's counsel or MGA's counsel does not object or
6  seek attendance by its expert within five days of the request, the proposed destructive
7  testing shall be deemed as unobjectionable and may be carried out without further
8  delay.

9          7.      With the exception of alterations resulting from any destructive
10  testing, which would be conducted in accordance with the protocol above, all the
11  Bryant documents that are provided for inspection, examination and testing shall be
12  returned in the same condition, sequence and order in which they were received.

13          **IT IS SO ORDERED.**

14

15  DATED: _Aug 30_, 2007

16

17

18          Hon. Edward Infante (Ret.)
            Discovery Master

19

20

21

22

23

24

25

26

27

28

07209/2201994.1

-3-

PROPOSED ORDER

Exhibit _6_,
P. _161_



1

2   Prepared and respectfully submitted by:
    QUINN EMANUEL URQUHART
3   OLIVER & HEDGES, LLP

4

5   Dawe C. Hulngan /SBK
    Diane C. Hutnyan
6   Attorneys for Mattel, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2201994.1

-4-

PROPOSED ORDER

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on August 30, 2007, I served the attached ORDER GRANTING MATTEL, INC'S MOTION TO COMPEL BRYANT TO MAKE ORIGINAL DOCUMENTS AVAILABLE FOR EXPERT EXAMINATION AND TESTING in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on August 30, 2007, at San Francisco, California.

Sandra Chan

Exhibit 6 ,
P. 163

EXHIBIT  7



## FEDERAL FORENSIC ASSOCIATES, INC.

Post Office Box 31567 • Raleigh, North Carolina 27612
(919) 848-3696 • FAX (919) 848-9849

March 17, 2008

Matthew E. Sloan
Ryan Weinstein
Skadden, Arps, Slate, Meagher & Flom, LLP
300 South Grand Avenue
Los Angeles, CA 90071

**RE:    Carter Bryant v. Mattel, Inc.**
**Report Prepared Pursuant to Fed. R. Civ. P. 26(a)(2)(B)**
**Our File No.: 1204-1818**

"This report is designated as CONFIDENTIAL-ATTORNEY'S EYES ONLY" pursuant
to the protective order in this case"

PURPOSE AND SCOPE OF REPORT

I have been asked to review the Rule 26(a) Reports prepared for Mattel, Inc., by Lloyd
W.Cunningham, William J. Flynn, and Walter J. Rantanen, to determine whether the
opinions set forth in those reports are consistent with my observations of the Carter
Bryant drawings and to set forth my own independent analysis of the Carter Bryant
documents sent for my examination.

DOCUMENTS RECEIVED FOR EXAMINATION

On March 7, 2008, I received 7 boxes of various sizes, containing numerous individual
documents, some of which are discussed below and identified by their corresponding
bates numbers.  The document include:

Original sheets of tracing paper containing pencil and ink drawings and corresponding to
bates numbered documents Bryant 00193-00209, 00212 and 00213.

Various individual documents containing pencil and ink drawings and corresponding to
bates numbered documents – Bryant 00139, 00140, 00176, 00177, 00179-00184, 00232,
00235 and 00237.

The pages of an original Pen-Tab Perforated Notebook that correspond to bates numbered
documents Bryant 01589 – 01624.

Exhibit __7__,
P. _164_

CONFIDENTIAL -
ATTORNEY'S EYES ONLY

The pages of an original Pen-Tab Spiral Ring Notebook that correspond to bates numbered documents Bryant 01625 – 01665.

Original multi-colored drawings on poster board corresponding to bates numbered documents Bryant 00220, 00221, 00222, 00224, 00225, 00226, 00227, 00228, 00231, 00233 and 00234

Color photocopies of drawings, which are bates numbered Bryant 310-319, and what appears to be a black and white photocopy of a drawing, which is bates numbered Bryant 214.

In addition, on March 7, 2008, I received Jacqueline Prince's notary log book from Ms. Prince's attorney, Daniel Warren, by Federal Express.

DOCUMENTS AND REPORTS CONSIDERED IN PREPARATION OF MY REPORT

In addition to the questioned documents referenced above, I have also considered the following documents in connection with my report: Carter Bryant's deposition testimony, Volumes I, II and III, taken on November 4, 5, and 8, 2004, respectively; Jacqueline Ramona Prince's deposition testimony, taken on December 21, 2004; the Report of Lloyd Cunningham addressed to Diane Hutnyan, dated February 11, 2008; the Report of William J. Flynn, addressed to Diane Hutnyan, dated February 11, 2008; and the Report of Walter J. Rantanen, dated February 11, 2008.

METHODS USED IN LABORATORY EXAMINATION

I performed a physical examination on many of the listed documents using various methods, including visual examination with the unaided eye,  and enhanced examinations using various levels of magnification via hand held magnifiers and a stereo microscope, transmitted light, infrared reflectance via a Video Spectral Comparator and electrostatic imaging.

SUMMARY OF CONCLUSIONS RE CUNNINGHAM, FLOYD AND RANTANEN REPORTS

The conclusions reached by Mr. Cunningham in the referenced report relate to physical examinations performed on the above referenced documents.  Mr. Cunningham records the appearance and condition of the various documents and his observations.  Regarding the tracing paper drawings and the multi-colored drawings, Mr. Cunningham suggests a degree of superimposition and the correlative use of a common model in their construction, but does not suggest a sequence of preparation.  Even though the presence of pencil lines was noted on the multi-colored drawings, he failed to determine the source of those lines in relation to the other drawings.  Based on my observations,  the correlation between the pencil lines present on the multi-colored drawings and the ink

Exhibit 7 ,
P. 165

CONFIDENTIAL -
ATTORNEY'S EYES ONLY

lines present on the tracing paper drawings is sufficiently strong to conclude that the tracing paper drawings were, at least in part, the source of the multi-colored drawings. This was most likely accomplished by tracing the image from the tracing paper drawings onto the medium of the multi-colored drawings through the aid of transmitted light. This is consistent with Carter Bryant's testimony that he would generally draw the tracing paper sketches or "master drawings" first. He would then transfer the image on to thicker "illustration board" by first putting the tracing paper on a light box, then laying the illustration paper on top of it, and finally tracing the image from the tracing paper on to the illustration board. He would then add color to the illustration paper drawings.

Mr. Cunningham also performed an Electrostatic Imaging analysis of several documents and observed the presence of various indented impressions that could be related to other documents. One such association related to the indented impressions developed on Bryant 01647 and 01648 of the images appearing on Bryant 182 and 179, respectively. In my analysis of these documents, I found minimal impressions from the image of Bryant 182 impressed onto 01647, but an image of what appears to be Bryant 5025 was much more intense and consistent with being in closer proximity to Bryant 01647 than was 182. Mr. Cunningham also reports that the pattern of marks on Bryant 01647 and 01648, which are the result of ink bleed through, can be associated with the ink lines on Bryant 182 and 179, respectively. I disagree. My analysis shows instances of disagreement in position between the random marks present on Bryant 01647 and 01648 and the ink lines present on Bryant 182 and 179.

Mr. Cunningham also comments upon the similarity of paper types between the various documents. These comments are designed to suggest that one document, for instance a sheet of notebook paper, was actually present in one specific notebook.. Although this is possible, the process by which paper products are constructed would also allow for the presence of similar sheets of notebook paper in hundreds or thousands of similar notebooks.

Finally, Mr. Cunningham comments upon the nature of the entry dated 8/26/99 in the Notary book of Jacqueline Ramona Prince. He suggests that the five line entry was prepared in a suspicious manner due to the unusual spacing of the last line. Although this entry appears different than other entries in the Notary book, it is also much longer in relation to the content. Mr. Cunningham does not express an opinion regarding the timeliness of preparation of this fifth line and I would concur with him that there is insufficient evidence to arrive at such a conclusion.

The conclusions reached by Mr. Flynn relate to physical examinations performed in relation to the documents examined. Mr. Flynn records the appearance and condition of the various documents and his observations or examination results. Regarding the tracing paper drawings and the multi-colored drawings, Mr. Flynn concludes that the tracing paper drawings were prepared by tracing the multi-colored drawings. I disagree for the reasons set forth above and below. Mr. Flynn concludes that based on the slowness of preparation of the tracing paper drawings and the presence of coloring material on the reverse of Bryant 199, all of the tracing paper drawings were derived from the multi-

Exhibit 7 ,
P. 166

CONFIDENTIAL -
ATTORNEY'S EYES ONLY

colored drawings. Mr. Flynn makes no mention of the presence of pencil markings, as did Mr. Cunningham, nor does he explain what evidence of "slowness" was observed or expected when one deals with drawings as opposed to handwritten materials. Additionally, my microscopic examination of the reverse of Bryant 00199 yielded no evidence of either pencil or coloring in the area of the drawing's inked lines, which is where one would expect transfer during the process of tracing.

Mr. Flynn also records a scenario for the construction of Bryant 00194, 00197 and 00222. This convoluted scenario is complex and there is no evidence to support his conclusions. My examination revealed characteristics in the form of covered or obscured pencil lines within Bryant 00222, which were visible under either infrared absorbance or magnification, and correspond directly with the inked lines present on Bryant 00194 and 00197. Additionally, where the ink and pencil lines diverge on Bryant 00194 and 00197, the drawings on Bryant 00222 follow the ink lines of Bryant 00194 and 00197, not the pencil lines. This is strong evidence of the progression on Bryant 00194 and 00197 from pencil to ink and then to the construction of Bryant 00222.

Mr. Rantanen performed an array of physical and chemical testing upon the various paper types within the examined documents. He concluded that the various documents could be categorized according to their characteristics into groups where the test results were similar among the members of a group. Although I found that the test results appear to be consistent, Mr. Rantanen does not conclude that any specific document actually came from one of the notebooks or pads. As was referenced in our review of Mr. Cunningham's report, due to the manufacturing process involved in the making of paper and paper products, a large volume of paper products can exhibit similar composition and physical characteristics. Therefore, one can not through this examination determine that a single sheet of paper came from a specific notebook.

OPINIONS RE SPECIFIC DOCUMENTS

My conclusions about the drawings, and in particular my conclusion that many of the multi-colored drawings were traced, at least in part, from the drawings on tracing paper and not vice-versa, is based on my examination of the individual drawings and other documents, including the following:

1. The original corresponding to Bryant 00199 is an ink and pencil drawing that is similar to the original corresponding to Bryant 00220, a multi-colored drawing. Superimposition of various portions of the drawings are consistent with a common source for the items. Evidence in the form of pencil markings were found on Bryant 00220 that coincided with the ink drawn lines of Bryant 00199 indicating that Bryant 00199 was used as a model for drawing Bryant 00220. Contrary to Flynn's report, I found no evidence of pencil or coloring on the reverse of Bryant 00199, especially within the ink lines, to suggest that Bryant 00220 was used as a model for Bryant 00199.

4

Exhibit 7 ,
P. 167

CONFIDENTIAL -
ATTORNEY'S EYES ONLY

2.  The originals corresponding to Bryant 00197 and 00194 are ink and pencil drawings that are in combination similar to the original corresponding to Bryant 00222, a multi-colored drawing. Superimposition of various portions of the drawings are consistent with a common source for the items. I found faint pencil lines on Bryant 00222, which correspond to the ink lines drawn on Bryant 197 and Bryant 194, which indicates to me that Bryant 222 was likely traced from Bryant 00197 and Bryant 194. As referenced in my comments regarding Mr. Flynn's report, I found no evidence that would suggest that Bryant 00222 was used as a model for the tracing of Bryant 00194 and 00197. On the contrary, the above mentioned evidence is indicative of the reverse sequence of preparation. It should be mentioned that the sequence of preparation of the various characters within Bryant 00222 can not be determined. It is conceivable that the characters were constructed starting from either the left or the right.

3.  The original corresponding to Bryant 00208 is an ink and pencil drawing that is similar to the original corresponding to Bryant 00233, a multi-colored drawing. Superimposition of various portions of the drawings are consistent with a common source for the items. Additionally, there are several instances where the pencil lines diverge from the ink lines in the drawing of Bryant 00208. In these instances, the lines of Bryant 00233 follow the ink lines and not the pencil lines of Bryant 208. This is an indication that Bryant 00233 was traced from Bryant 00208. It was noted that many instances of speed, tapered ending strokes and continuous drawing of complex shapes (shoe sole), were present in Bryant 208. This is contrary to Mr. Flynn's comments regarding slowness of preparation.

4.  The original corresponding to Bryant 00212 is an ink and pencil drawing that is similar to the original corresponding to Bryant 00234, a multi-colored drawing. Superimposition of various portions of the drawings are consistent with a common source for these drawings. I found faint pencil lines on Bryant 00234, which correspond to the main lines drawn on Bryant 212, which indicates to me that Bryant 234 was likely traced from Bryant 212. For example, note the pencil line on the right side of the hair line of Bryant 00234. This coincides with the ink line of the same location on Bryant 212.

5.  The original corresponding to Bryant 00213 is an ink and pencil drawing that is similar to the original corresponding to Bryant 00227, a multi-colored drawing. Superimposition of various portions of the drawings are consistent with a common source for the items. I found pencil lines on Bryant 00227 on both hips that correspond to ink lines within the same location on Bryant 00213.

6.  The original corresponding to Bryant 00206 is an ink and pencil drawings that is similar to the original corresponding to Bryant 00224, a multi-colored drawing. Superimposition of various portions of the drawings are consistent with a common source for the items. Evidence in the form of faint or obscured pencil lines were found on Bryant 00224 and corresponded to ink lines from the drawing of Bryant 00206. This indicates that Bryant 00206 was used as a model for the

Exhibit 7 ,
P. 168

CONFIDENTIAL - ATTORNEY'S EYES ONLY

partial construction of Bryant 00224 through the act of tracing Bryant 00206 to construct Bryant 00224.

7. The original corresponding to Bryant 00204 is an ink and pencil drawings that is similar to the original corresponding to Bryant 00226, a multi-colored drawing. Superimposition of various portions of the drawings are consistent with a common source for the items. I found faint pencil marks on Byrant 226, including on the heel of the character and the triangular shaped object on the right side bottom of the vest of Bryant 226, which superimpose exactly with the ink lines on Bryant 204. These pencil marks on Bryant 226 were later colored over so that they are obscured by the colored drawing; these results indicate that Bryant 226 appears to be traced from Bryant 204. Evidence was found on Bryant 00226 to indicate that Bryant 00204 was used as a model for the partial construction of Bryant 00226.

8. The original corresponding to Bryant 00201 is an ink and pencil drawing that is similar to the original corresponding to Bryant 00231, a multi-colored drawing , as well as Bryant 00230, another multi-colored drawing. Superimposition of various portions of the drawings are consistent with a common source for the items. I found faint pencil marks on Bryant 231 and Bryant 230, which superimpose exactly with the ink lines on Bryant 201, which indicates that Bryant 231 and 230 were traced from Bryant 201.

9. The original corresponding to Bryant 00235 is an ink and/or pencil drawing that is similar to the original corresponding to Bryant 00221, a multi-colored drawing. Superimposition of various portions of the drawings are consistent with a common source for the items.

10. The original corresponding to Bryant 00232 is a pencil drawing that is similar to the original corresponding to Bryant 00225, a multi-colored drawing. Superimposition of various portions of the drawings are consistent with a common source for the items. Additionally, Bryant 232 appears to contain some brown colored material on the reverse side in the area that corresponds to the lines appearing on Bryant 225. This is an indication that Bryant 225 was used as the model for Bryant 232.

11. The original corresponding to Bryant 00237 is an ink and/or pencil drawing that is similar to the original corresponding to Bryant 00228, a multi-colored drawing. Superimposition of various portions of the drawings are consistent with a common source for the items. I found faint pencil marks on Byrant 228, which are partially obscured by the color portions of the drawing, that superimpose exactly with the pencils lines on Bryant 237. This finding is an indication that Byrant 228 was traced, at least partially, from Bryant 237.

12. Evaluation of the electrostatic images of Bryant 00140 and 00139 indicates that Bryant 00343, a page within the Pen-Tab perforated notebook, was in contact

6

Exhibit 7 ,
P. 1169

CONFIDENTIAL -
ATTORNEY'S EYES ONLY

with the sheets now labeled Bryant 00140 and 00139 at the time of preparation of Bryant 00343. It is not possible to determine the sequence of the preparation of these exhibits.

13. Bryant 00179 and 00182 are ink drawings that contain both ball pen and non-ball pen ink writings. The nature of the non-ball pen ink is very fluid with low viscosity and there is evidence that portions of the non-ball pen ink image have penetrated the pages. Bryant 01647 and 01648 are pages contained within the Pen-Tab spiral notebook and contain various random marks that appear to be from a non-ball pen ink. No evidence exists to allow for the determination that the markings present on Bryant 01647 and 01648 were the result of the preparation of Bryant 00179 and 00182. This is in contrast to the report of Mr. Cunningham as previously described. Evaluation of the electrostatic images of Bryant 01647 and 01648 indicated that an image of a child in rain gear fishing was prepared while in contact with Bryant 01647. This image is consistent with and partially superimposes with the image of Bryant 5025. Portions of the hair (ball pen ink writings) of the image of Bryant 00182 were also found as impressions on Bryant 1647 and would be consistent with preparation of Bryant 00182 while in contact with Bryant 01647. It should be noted that the impressions of Bryant 00182 are very faint, much lesser intense than the impressions from Bryant 5025. This is an indication that Bryant 5025 was closer in proximity to Bryant 01647 than was Bryant 00182. Faint partial impressions were observed on Bryant 01648 that are consistent with and partially superimpose with Bryant 02692.

14. Bryant 0179 and 0182 do not appear to have been used as a model for any of the other examined drawings. Comparison of these drawings with the other mentioned drawings, both ink and paper, and multi-colored, do not result in any sufficient superimposition to suggest common source.

15. Evaluation of the electrostatic images of Bryant 00180 – 00182 indicates that Bryant 00180 was prepared while in contact with Bryant 00181, Bryant 00181 was partially prepared (without text) while in contact with Bryant 00180, and Bryant 00181 was prepared while in contact with Bryant 00182.

16. Evaluation of the electrostatic image of Bryant 00176 indicates that portions of Bryant 00177 were prepared while in contact with Bryant 00176.

17. Evaluation of the electrostatic image of Bryant 00196 indicated that portions of Bryant 00233 were prepared while in contact with Bryant 00196.

18. My evaluation of the electrostatic images of Bryant exhibits 00199, 00197, 00194, 00208, 00212, 00213, 00206, 00204, 00201, 00235, 00232 and 00237 yielded what appeared to be impressions, but I could not determine whether those impressions were caused by the original pencil drawing on these exhibits or by the impression left by the act of drawing a document on top of them. Due to the fact that original pencil writings on a document will result in a duplicate image of

7

Exhibit __7__,
P. __170__

CONFIDENTIAL -
ATTORNEY'S EYES ONLY

these pencil writings when processed for electrostatic imaging, it is difficult to distinguish between these impressions and the impression that would be created by tracing over that pencil line to make a new drawing on a second piece of paper placed on top of the sketch paper. The evidence of duplicate images of those appearing on the exhibit may be the product of either of these circumstances. To further explain this phenomenon, when a document that contains original ink writing is processed for electrostatic imaging, the resultant EDD print includes a white image of the original writing. This is contrasted to the impressions that are found on the examined document, which are black in color. When the original writing on a document is in pencil it often occurs that the processing of this document for impressions will result in a black image that corresponds with the original pencil writing that appears on the processed document.

19. Evaluation of the electrostatic images of Bryant 00178 and 00186 indicates that various portions of Bryant 00194 were prepared while in contact with Bryant 00178 and Bryant 00186

20. Evaluation of the electrostatic image of Bryant 00192 indicates that various portions of Bryant 00208 and Bryant 00212 were prepared while in contact with Bryant 00192.

21. Evaluation of the electrostatic image of Bryant 00211 indicates that various portions of Bryant 00193 were prepared while in contact with Bryant 00211.

22. By combining the examination results from both the visual and microscopic analysis, and the electrostatic imaging analysis, I was able to determine that in several instances a progression from one drawing to another to the multi-colored drawings was likely. This occurred in several instances as follows. Bryant 178 was used in the preparation of Bryant 194, which was used in the preparation of Bryant 222. Bryant 186 was used in the preparation of Bryant 194, which was used in the preparation of Bryant 222. Lastly, Bryant 198 was used in the preparation of Bryant 204, which was used in the preparation of Bryant 226.

23. An examination of the documents labeled as Bryant 214 and 310-319 was conducted utilizing the aforementioned techniques and instrumentation. All of these documents were determined to be toner based documents i.e. they were produced with the xerographic process. All of the documents were also determined to have the presence of multi-colored toner, which is indicative of color copiers or laser printers. A comparison of the above referenced color copies with the original multi-colored drawings yielded similarities between pairs of documents – one color copy and one multi-colored drawing. An example of this would be Bryant 310, which is a color copy, with Bryant 222, which is a multi-colored drawing. These pairs are similar in most respects and suggest a common source, but there are distinct differences. First, most of the multi-colored drawings contain a date that is written in original ball pen ink, which does not appear on the toner based "xeroxed" documents. Second, most of the toner based

Exhibit __7__ ,
P. _171_

CONFIDENTIAL -
ATTORNEY'S EYES ONLY

"xeroxed" documents contain descriptions of the drawings that are also produced in toner, but do not appear on the original multi-colored drawings. An example of this would be the multi-colored drawing Bryant 222, which contains the date "8/1998" and Bryant 310, a color copy, which contains the description "The Bratz", also toner based. The presence of the toner based descriptions on Bryant 214 and 310-319 is an indication that these exhibits were not produced directly from the multi-colored drawings, but an intermediate step was involved. This intermediate step could be either the color copying of the multi-colored drawing so that the date would not be reproduced and then the subsequent copying of this item after the original ink or pencil description was added, or the original multi-colored drawing was copied prior to the addition of the date and subsequently this color copy was copied again after the description was added to the original color copy. Another possibility is that the color copies were duplicated from original drawings which were similar to the original multi-colored drawings provided to me. I did not find any such documents within the examined documents provided to me, however.

BASIS AND REASONS FOR OPINIONS

A visual, microscopic and infrared examination of the multi-colored drawings labeled Bryant 00220, 00222, 00234, 00224, 00226, 00231 and 00228 yielded the presence of several faint areas of original pencil markings that coincided with distinct lines in the corresponding ink and pencil drawings (Bryant 00199, 00197, 00212, 00206, 00204, 00201 and 00237). These faint pencil markings were either partially erased or covered over in the multi-colored drawings. These faint pencil markings were evidence of the use of the original ink and pencil drawings on the tracing paper (e.g., Bryant 00199, 00197, 00212, 00206, 00204, 00201 and 00237) as models to transfer the image to the blank paper that now contains the multi-colored drawings. These pencil model lines were then abandoned and either partially erased or colored over when the final drawing was completed on the multi-colored drawings. These pencil markings were visible either with the aid of magnification or through the use of various wavelengths of light in the ultraviolet and infrared regions via the Video Spectral Comparator.

The reverse of Bryant 00199 was examined millimeter by millimeter under magnification of 28X and the entirety of the image was observed. It was evident that the ink line present on the front side of the exhibit had penetrated within the paper fibers of the exhibit, but did not completely penetrate the exhibit. There was evidence of completely transparent paper fibers within the written line along the entire length of the drawing. There were no instances of any color transfer along the length of the drawing that would be indicative of placing of the exhibit on top of another exhibit and tracing the outline. There were also no instances of color transfer upon the reverse of Bryant 00199 which would be indicative of incidental contact of the exhibit with another exhibit.

Bryant 00208 was examined with magnification and the variation of line width was assessed. There is a premise within questioned document examination that presumes

Exhibit 7 ,
P. 172

CONFIDENTIAL -
ATTORNEY'S EYES ONLY

that slower writing will be greater in width due to the fluid movement within the paper fibers as a function of the amount of time the pen is on the paper. This same premise also presumes that slower written lines will exhibit more change of direction or shakiness. Both of these premises are used to assess handwriting to gage naturalness, and absence of speed in writing is often an indication of tracing. In the present circumstances, the examined materials are not handwriting, but drawings. The literature often describes tracings or simulations as having been "drawn". It would be inappropriate to apply standards that are used in the assessment of handwriting to drawings that would clearly have a component of tracing, i.e. ink lines over pencil drawings, without significant standard comparison samples. This examination of Bryant 00208 yielded instances of tapered ending strokes, changes in movement with out evidence of hesitation or pen lifts, and long continuous strokes, all evidence of naturalness.

The ability to superimpose various portions of the exhibits with each other is an indication of common source. This conclusion is based upon the degree of likelihood that two identical images could be produced absent knowledge of the other. In the field of handwriting examination, this premise is understood to have a very small likelihood and has been investigated to some extent in the pertinent literature. The application of this premise to drawings is somewhat less well investigated and may have a higher likelihood among trained artists. For these reasons it is appropriate to judge various exhibits as having a common source, but a more definitive description of what the source may be would require additional evidence. The most common method of detection of superimposition is by overlaying the exhibits with the aid of transmitted light. A finding of superimposition is based upon the degree to which the images are the "same", based upon comparison of form, height ratios and alignment.

Electrostatic imaging is a well respected and universally employed methodology for the detection of indented impressions or fiber disturbances in paper. The presence of these impressions is the result of the act of preparing writing or drawing on a sheet of paper while the two papers are in intimate contact. This transfer of images – original writing or drawing on one page to pages underneath -- is detected by an Electrostatic Detection Device (EDD) and the EDD produces a positive print of the impressions or fiber disturbances. We employed an ESDA (Electrostatic Detection Apparatus) in the performance of this examination. The transfer of impressions or fiber disturbances can occur among many sheets of paper and is commonly found as many as 3 to 4 sheets removed from the sheet containing the original writing or drawing. Electrostatic imaging is appropriate for determining the sequence of pages by detection of impressions, but the date or timing of these impressions can not be determined with any degree of certainty.

Bryant 00179, 00182, 01647 and 01648 were examined with magnification and with the aid of transmitted and incident light. Superimposition of the exhibits yielded instances where the random marks, purportedly from ink bleeding through, present on Bryant 01647 and 01648 were inconsistent with any drawn lines present on Bryant 00179 or Bryant 00182. This observation contradicts the opinion of Mr. Cunningham regarding the superimposition of these marks with the drawn images.

Exhibit 7 ,
P. 173

CONFIDENTIAL - ATTORNEY'S EYES ONLY

## EXHIBITS AND CHARTS FOR TESTIMONY AT TRIAL

If called to testify as an expert witness in this matter, I may use enlargements of ESDA films, VSC films, or other photographs or charts to assist me in demonstrating my opinions.

## STATEMENT OF QUALIFICATIONS

Attached as Exhibit A is a copy of my current Curriculum Vitae.

Contained within Exhibit A is a listing of the publications to which I have contributed or been an author.  Additionally,  I have presented numerous presentations to scientific organizations including the American Academy of Forensic Sciences, American Society of Questioned Document Examiners and the Southwest Association of Forensic Document Examiners.

Attached as Exhibit B is a listing of my deposition and trial appearances over the last 4 years.

I am compensated for my time spent in consultation, examination, travel or testimony at the hourly rate of $350.00.

Albert H. Lyter, III, Ph.D.

Exhibit  7 ,
P. 174

CONFIDENTIAL -
ATTORNEY'S EYES ONLY

EXHIBIT  8

# EXPERT REPORT
## March 17, 2007
### Report No. 20040202

## ROBERT D. KULLMAN
**Forensic Document Analyst**
**Speckin Forensic Laboratories**
**Okemos, Michigan**

## MATTEL, INC.
### vs
## CARTER BRYANT
### and
## DOES 1 THROUGH 10

**United States District Court
for the Central District of California
Case: CV 04-9059 DDP (AJWx)**

Exhibit __6__ ,
P. __175__

CONFIDENTIAL -
ATTORNEYS' EYES ONLY

*Speckin Forensic Laboratories*

2105 UNIVERSITY PARK DRIVE, SUITE A
OKEMOS, MICHIGAN 48864
517-349-3528 • FAX 517-349-5538

20040202

LEONARD A. SPECKIN
RETIRED DOCUMENT ANALYST

MICHAEL J. SINKE
LATENT PRINT SPECIALIST
CRIME SCENE RECONSTRUCTION
FORENSIC DOCUMENT ANALYST

ROBERT D. KULLMAN
FORENSIC DOCUMENT ANALYST

LARRY A. DALMAN
COMPUTER RECOVERY SPECIALIST

KARL V. EBNER Ph.D.
FORENSIC TOXICOLOGIST

ERICH J. SPECKIN
FORENSIC DOCUMENT ANALYST
INK DATING SPECIALIST

ROGER J. BOLHOUSE MBA
LABORATORY DIRECTOR
CRIME SCENE RECONSTRUCTION
FORENSIC ANALYST & CONSULTANT

MARCO A. SCARPETTA Ph.D.
DNA ANALYST & CONSULTANT

DAVID G. TOWNSHEND M.S.
FORENSIC FIREARMS EXAMINER

March 17, 2008

RICHARD L. BRUNELLE
RETIRED INK DATING CONSULTANT

ANN E. CHAMBERLAIN M.S.
SEROLOGIST
DNA ANALYST & CONSULTANT
CRIME SCENE RECONSTRUCTION
BLOODSTAIN PATTERN ANALYST

LAURENCE R. SIMSON M.D.
FORENSIC PATHOLOGIST

JAY A. SIEGEL Ph.D.
ANALYTICAL CHEMIST

JASON S. HARNER B.S.
FORENSIC CHEMIST

Mr. Matthew E. Sloan
Mr. Ryan Weinstein
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

Re: Carter Bryant v. Mattel
Rule 26 Rebuttal Expert Report

Dear Mr.'s Sloan and Weinstein:

I received and considered the following evidence for examination in my office in connection with this case:

Seven boxes of original Carter Bryant Production documents, including;
- Original sheets of tracing paper containing pencil and ink drawings and corresponding to bates numbered documents – BRYANT 00193 - 00209, BRYANT 00212 and 00213
- Various individual documents containing pencil and ink drawings and corresponding to bates numbered documents –BRYANT 00192, 00140, 00176, 00177, 00179 – 00184, 00232, 00235 and 00237.
- The pages of an original Pen-Tab Perforated Notebook that correspond to bates numbered documents BRYANT 01589 – 01624.
- The pages of an original Pen-Tab Spiral Ring Notebook that correspond to bates numbered documents BRYANT 01625 – 01665.
- Original multi-colored drawings on poster board corresponding to bates numbered documents BRYANT 00220, 00221, 00222, 00224, 00225, 00226, 00227, 00228, 00231, 00233 and 00234.

Machine copies of bates numbered documents BRYANT 00001 – BRYANT 01721, BRYANT 2692 and BRYANT 5025.

Rule 26 expert reports and exhibits of William Flynn, Lloyd Cunningham, Valery Aginsky, and Walter Rantanen and "corrected" pages 5 and 6 of William Flynn's expert report.

Carter Bryant's deposition testimony, Volumes I, II and III.

EXAMINATION TASK:

My examination task was to determine if the conclusions drawn by Mr. Flynn, Mr. Cunningham and Mr. Rantanen in their expert reports are consistent with the observable forensic evidence.

I have not evaluated the ink tests performed by Valery Aginsky on Ramona Prince's notary book as part of my examinations, nor have I performed chemical ink testing or sampling of any kind.

**Exhibit  8 ,**
**P. 176**

CONFIDENTIAL -
ATTORNEYS' EYES ONLY

Report 20040202
March 17, 2007
Page 2

PROCEDURES, OBSERVATIONS, AND RESULTS:

I assessed the documents submitted using my education, training, and experience in forensic document analysis. At all times during the examinations that I conducted, I adhered to techniques and procedures that are generally (if not universally) accepted in the relevant scientific community.

Initial Examination

The documents submitted were written on several different types of paper and my initial examinations revealed that many of the documents contained visible but not necessarily discernable impressions.

ESDA Examinations

I processed the mixed media drawings (Bryant 00220-00234), most of the drawings on transparent tracing paper (scattered numbers, but largely between Bryant 00192-00216), the pages from the notebooks (Bryant 01589-01624 and Bryant 01625-01665), and several other pages on the ESDA instrument. This instrument is used to detect the presence of impressed writing on a document. The ESDA is a non-destructive examination tool that uses the reaction between humidity and electricity to develop the impressions in paper with toner-coated beads in order to create a film that can be read. The examiner can use this instrument to determine what was written on top of the page being processed. This instrument is a generally (if not universally) accepted tool used in forensic science. I adhered to the procedures set forth by the manufacturer of the instrument and the training I received in the use of the instrument. The procedures I employed are generally accepted as appropriate in the field of forensic document examination.

Many of the documents processed had no detectable impressions or had impressions that could not be linked to a specific source. The chart below summarizes some of the documents that yielded impressions and the likely sources of those impressions.

| BRYANT # Processed | Source of Impressions by BRYANT # |
| --- | --- |
| 00178 | 00194 |
| 00186 | 00194 |
| 00190 | 00177 |
| 00192 | 00208 and 00212 |
| 00194 | 00222 |
| 00196 | 00233 |
| 00198 | 00204 (top half) |
| 00203 | 00200, 00240, and 00359 |
| 00211 | 00193 |
| 00218 | 00193 |
| 00235 | 00236 |
| 00237 | 00228 |
| 00970 | 00962 (left figure) |
| 01016 | 00243 and 01100 |
| 01118 | 01015 |
| 01246 | 01100 |
| 01247 | 01098 |
| 01647 | 05025 (in reverse) |
| 01648 and 00179 | 02692 |

The ESDA tests indicate that Bryant 05025, Bryant 02692 and Bryant 00179 – 00182 were created within close proximity of one another and within the same Pen-Tab notebook.

Exhibit __8__,
P. _177_



CONFIDENTIAL -
ATTORNEYS' EYES ONLY

Report 20040202
March 17, 2007
Page 3

<u>Microscopic Examinations</u>

First, my microscopic examinations confirmed that many of the documents were created from one another or from the same model. Below is a partial list of the documents included in this category:

- Bryant 00194 and 00222; Bryant 00198 and 00204; Bryant 00199 and 00220; Bryant 00201 and 00231; Bryant 00204 and 00226; Bryant 00206 and 00224; along with Bryant 00213 and 00227.

I conducted a microscopic examination on the mixed media drawings (Bryant 00220-00234) and the tracing paper documents to determine if a sequence for the drawings could be established. If the tracing paper had been laid over a finished drawing and a tracing made of the finished drawing, as Mr. Flynn concludes, I would expect to find color from the finished drawing offset onto the back of the tracing paper. I only found evidence of color offset on the back of the tracing paper on one document. This document is Bryant 00232 and likely came as offset from Bryant 00225. The evidence of the offset color on the back of Bryant 00232 is consistent with Carter Bryant's testimony. The evidence is clear on this document of the offset, specifically on the reverse side of the lines where the pressure was the greatest while tracing. The documents that were similar to the mixed media drawings were all examined visually and microscopically on the reverse for offset by tracing. No other tracing paper documents showed any evidence of this type of offset from tracing.

The second examination I conducted was to determine if any faint or erased lines were present in either the tracing paper or the mixed media drawings. I used two methods to conduct these examinations. First, along with visual and microscopic examinations, I used the capture/mix image capabilities of the Video Spectral Comparator 2000 (VSC2000). The VSC2000, among other things, uses ultraviolet light and infrared analysis techniques to evaluate and compare inks and/or latent chemicals on documents along with capabilities to store and mix documents to determine if they superimpose. The second method involved computer scanning and mixing of images. Using the VSC2000, first the image of the mixed media was captured, a digital negative was made from that image (black turned to white and white turned to black) and the image from the tracing paper in black was superimposed (mixed) with the negative at various alignments (including overlapping) to show the similarities and proximity of faint lines to existing lines in the tracing paper. In the attachments, areas of interest are highlighted with green for the areas from the tracing paper and in yellow for the areas of interest in the mixed media drawings. While the computer scanning method is similar to the VSC2000 method, instead of using a negative to superimpose the two images of interest, the images are shown in a series. Each set of documents being compared is shown through a series of images that get closer and closer to overlapping to show the areas of interest and their relative positions to one another.

The majority of the mixed media drawings contained faint lines obscured by erasures, coloring over, or similar method. In every case, the faint lines in the mixed media drawings matched with the lines from the tracing paper sketches/drawings. I further observed that the faint lines appearing in the mixed-media drawings were not visible to the naked eye through tracing paper. It therefore follows that a person overlaying tracing paper on top of the mixed media drawings could not have traced these faint lines. Instead, a person would have traced the far darker, more visible lines. This also makes logical sense; a person tracing a sketch would not trace lines that he had erased or colored over. The forensic evidence therefore indicates that the mixed-media drawings were traced from the tracing paper sketches/drawings, rather than vice versa, which is consistent with Mr. Bryant's testimony.

Below is a brief description of the documents that show this evidence:

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Exhibit 6,
P. 178

Report 20040202
March 17, 2007
Page 4

| Tracing paper (Bryant #) | Mixed-media (Bryant #) | Areas of Evidential Value |
|---|---|---|
| 00194 | 00222 | Line between hems at bottom of skirt of third doll<br>Missing upper crease in skirt of third doll<br>Corner of pant cuff on upper left leg of second doll<br>Crease in cuff left side of left leg of second doll |
| 00199 | 00220 | Left side of doll's left leg<br>Left side of doll's right leg |
| 00201 | 00231 | Two lines between sock and buckle on doll's left leg<br>Two lines between sock and buckle on doll's right leg<br>Vertical line on shoe near buckle |
| 00201 | 00230 | Left and right vertical lines of skirt |
| 00204 | 00226 | Triangle shaped object on right side bottom of vest |
| 00206 | 00224 | Area at bottom of pant leg on left leg<br>Straight lines in area of crease in lower left leg |
| 00213 | 00227 | Lines of offset in hem at bottom of shirt on left and right<br>Vertical line between two lines of hem on left of skirt |

At the time of trial, I anticipate using a series of each type of demonstrative mentioned above to show the evidence observed.

In a few instances (including one where the sequence could not be established using the methods above), the tracing paper contains both ink (darker in document) and pencil (lighter in document). These examples include: Bryant 00201 / 00231; Bryant 00204 / 00226; and Bryant 00208 / 00233 (sequence could not be established by other means). In these examples, where there is a divergence in the forms in the tracing paper, the mixed media drawing lines follow the lines of the ink in the tracing paper and not the pencil. This is a further indication of the tracing paper drawings being done before the mixed media drawings. On the tracing paper, it is more logical that the pencil was on the paper first and the ink was added and used to create the desired appearance of the finished product. The opposite scenario (if the ink were there and bold, to outline the areas in pencil that is faint) does not logically fit. Therefore, since the mixed media and the ink portions of the tracing paper line up, and two of the above examples (Bryant 00201-00231 and Bryant 00204-00226) were already established, it is more likely that Bryant 00233 (mixed-media) was created from the pen outline in Bryant 00208 (tracing paper). This is the same manner that shows the other drawings (Bryant 00201-00231 and Bryant 00204-00226) were created as well.

When the results of the above examinations and methods are combined and put in series, a distinct pattern can be seen as to the manner that the drawings progressed from one to the next by using one as a model for the next. The first distinct stage seen is the basic form of a doll (Bryant 00186 for example); from that form a more detailed version typically including clothing was created also on tracing paper (Bryant 00194 for example); culminating in several instances with the mixed media type drawings (Bryant 00222 for example). Below is a chart of the flow of the documents that can be established to show the progression of the concept:

CONFIDENTIAL -
ATTORNEYS' EYES ONLY

Report 20040202
March 17, 2007
Page 5

| Form | Tracing paper with clothes | Significant detail typically mixed media |
|------|---------------------------|----------------------------------------|
| (Bryant #) | (Bryant #) | (Bryant #) |
| 00186 | 00194 | 00222 |
| 00178 | 00194 | 00222 |
| 00196 (in reverse) | ---- | 00233 |
| 00198 | 00204 | 00226 |
| 00203 | ---- | 00240 |
| 00211 | 00193 | ---- |
| 00218 (hair) | 00193 (hair) | ---- |
| ---- | 00237 | 00228 |
| 00970 | 00962 | ---- |
| 01016 | 00243 | ---- |
| 01118 | 01015 | ---- |
| 01246 | 01100 | ---- |
| 01247 | 01098 | ---- |

## EXAMINATIONS OF PAGES REMOVED FROM NOTEBOOKS (BRYANT 00179-00182):

Impressions were found of two sketches (Bryant 00179 and Bryant 00182) into pages still in the notebook (Bryant 01648 and Bryant 01647). The removed pages also showed evidence of being written on top of each other, probably while still in the notebook.

No evidence exists that Bryant 00179-00182 were used as a model to trace or create any of the submitted drawings or sketches and they were not traced or created from any of the submitted documents.

## COMMENTS ON THE REPORT OF WILLIAM FLYNN:

Mr. Flynn states that the reverse side of Bryant 00199 contains remnants of offset from Bryant 00220 that was transferred while tracing Bryant 00199 from Bryant 00220. I performed a complete examination of the reverse side of Bryant 00199 including a visual examination, microscopic examination, and an infrared examination to look for luminescent traces of offset. None of these three examinations showed any evidence of offset or embedded color. This is especially significant considering the offset that was seen on the reverse side of Bryant 00232, which was a document known to have been created by tracing from a mixed-media drawing. I also note in the report of Lloyd Cunningham that he performed his examination before William Flynn and Mr. Cunningham's examination procedure was to place the tracing paper over the mixed-media drawing and move it to confirm if sufficient portions were in agreement to conclude that one drawing was created from the other. It is possible through this process that a small offset was created that was transient, in other words the offset was present for Mr. Flynn and disappeared by the time my laboratory received the document for examination. However, if this were the case, the color that was seen by Mr. Flynn could not have been offset onto Bryant 00199 by tracing from Bryant 00220. Once a known offset such as present on the reverse of Bryant 00232 is seen, it could not be mistaken for a transfer by casual contact or a minor "fleck" of color. I would therefore conclude that Bryant 00199 was not created by tracing from Bryant 00220 as claimed in Mr. Flynn's report.

## COMMENTS ON THE REPORT OF LLOYD CUNNINGHAM:

1.  In the area of Mr. Cunningham's report regarding the examination of Bryant 01647 and Bryant 01648, he notes and relies on several pieces of evidence. The first is that Bryant 01647 and 01648 appear to (but not conclusively) contain impressions from Bryant 00182 and 00179 respectively. Second, Mr. Cunningham concludes that the non-ballpoint portion of Bryant 00179 and 00182 have bled through the paper and that this bleed-through for Bryant 00179 matches up with the spots on Bryant 01648 and the bleed through for Bryant 00182 matches up with the spots on

Exhibit _8_,
P. _180_

CONFIDENTIAL -
ATTORNEYS' EYES ONLY

Report 20040202
March 17, 2007
Page 6

Bryant 01647.  However, when I use the capture/mix imaging capabilities of the VSC2000 to superimpose the spots with the non-ballpoint ink on each drawing, with the edges and pre-printed lines of each page aligned with the other page, I do not find sufficient evidence that the bleed through can be associated with either sketch.

2.  Both Mr. Flynn and Mr. Cunningham indicate in their examination of the notary journal that the entry "from 1998 Missouri" appears cramped or squeezed in and may have been added.  Based on my review of color photocopies of Ms. Prince's log book, I agree that this is the appearance of the entry; however, like Mr. Flynn and Mr. Cunningham, I draw no definitive conclusion that the entry was added at a later time.  There is insufficient evidence to support a conclusion of that nature, especially considering that the size of the box for the entry in the notary book was pre-printed.  In simple terms, if someone wanted to enter that much information into a box that small, it is not surprising that some of the writing would cramped in to conform to the size.

I am being compensated at my standard rate of $250.00 per hour for my time spent on this case.  In conducting my examinations, I have been assisted by other examiners at Speckin Forensic Laboratory who have also been compensated at their customary rates.  Neither my compensation nor the compensation of my colleagues is tied in any way to the outcome of this litigation.

I have attached my Curriculum Vitae, which lists my testimony over the last four years and my publications over the last ten years.

Very Truly Yours,

Robert D. Kullman
Forensic Document Analyst

Current CV with last 4 years testimony and publications attached

Exhibit 8 ,
P. 181

CONFIDENTIAL -
ATTORNEYS' EYES ONLY



2105 University Park Drive, Suite A
Okemos, Michigan 48864
(517) 349-3528 (Voice)
(517) 349-5538 (FAX)
www.4N6.com

**Leonard A. Speckin**
Forensic Document Analyst
Crime Scene Specialist

**Paul B. Albee Ph.D**
**Donald A. Smith**
Computer Recovery Specialists

**Robert D. Kullman**
Forensic Document Analyst

**Jay Siegel Ph.D.**
Analytical Chemist

**Michael J. Sinke**
Latent Print Specialist
Forensic Document Analyst

**David G. Townshend MS**
Forensic Firearms Analyst

**Roger J. Bolhouse MBA**
Forensic Analyst & Consultant
Laboratory Director

**Erich J. Speckin**
Forensic Document Analyst
Ink Dating Specialist

**Thomas K. Huard Ph.D.**
**Marco Scarpetta Ph.D.**
DNA Analysts

**Richard L. Brunelle**
Retired Ink Dating Consult

**John Funkhouser Ph.D.**
Analytical Chemist

## ROBERT D. KULLMAN
### Forensic Document Analyst
### March 17, 2008
### Attachment to Report 20040202

## EXPERIENCE

- **Employed with Speckin Forensic Laboratories 1996-Present**
    Forensic Document Analyst: Duties include examination of handwriting, typewriting, printing, ink, paper, photocopy machines and alterations of documents.
- **Private Consultant 1989-1996**

- **Michigan State Police Crime Lab 1972 – 1988**

- **Michigan State Police  (1966-1991)**

## PROFESSIONAL AFFILIATIONS

- **American Academy of Forensic Sciences, Questioned Documents Section**

## EDUCATION

- **Bachelor of Science degree from Grand Valley State College on December 12, 1973**

## TECHNICAL
## EDUCATION

- **Three year training in Questioned Documents, Michigan State Police 1972-75**

- **Additional study at U.S. Secret Service Laboratory and the Federal Bureau of Investigation Training Academy**

## COURT QUALIFIED

- **Handwriting, Document analysis**
- **Expert testimony in excess of 270 times**

## Publications:

Impression by Traced Forgery, Journal of the American Society of Questioned Document Examiners, Volume 5 Number 1, June 2002, pages 28 – 38.  Co-authored in the Journal of the American Society of Questioned Document Examiners.

Exhibit 6 ,
P. 182

CONFIDENTIAL -
ATTORNEYS' EYES ONLY

**ROBERT D. KULLMAN, Expert Testimony of the last 4 years**

32-07
RE:  Linda & Jerry Lewis vs Southeast Michigan Surgical Hospital & Gary Kaplan, D.P.M.
Jurisdiction: Macomb County, Michigan Circuit Court, Case # 06-0804-NH
Jury Trial (Civil):  Judge Matthew S. Switalski
February 29, 2008, testified to examination of Medical Records (Microscope, ESDA, VSC2000)

257-07
RE:  People of the State of Michigan vs David McLean
Jurisdiction:  St. Clair County, Michigan Circuit Court, Case #07-001691-FH
Jury Trial (Criminal): Judge Peter Deegan
February 14, 2008, testified to handwriting

237-07
RE: Estate of Clayton C. W. Hartman
Jurisdiction:  St. Joseph County, Michigan Probate Court, Case # 07-58 DA
Evidentiary Hearing (Civil): Judge Thomas E. Shumaker
February 8, 2008, testified to ESDA impressions

112-07
RE:  The Stanley Bednarz Trust
Jurisdiction: Macomb County, Michigan Probate Court, Case # 06-189,318-TV
Bench Trial (Civil):  Judge Pamela Gilbert O'Sullivan
January 18, 2008, testified to handwriting

325-2005
RE: Jevone Jones, et al vs Parviz Djariri, M.D., et al
Jurisdiction:  Wayne County, Michigan Circuit Court, Case # 05-524749-NH
Deposition:  Video Deposition
January 14, 2008, testified to examination of Medical Records, ESDA & VSC2000 examines.

417-1998
RE: Grossman vs Liss & Associates
Jurisdiction: Oakland County, Michigan Circuit Court, Case # 99-016226-NI
Jury Trial (Civil):  Judge Charles W. Simon, Jr.
December 17, 2007, testified to handwriting

21-2006
RE:  New Century Leasing vs Jungle Gym's Inc., et al
Jurisdiction:  Kent County, Michigan Circuit Court, Case #05-10235-CZ
Daubert Hearing & Bench Trial (Civil):  Judge Donald A. Johnston
December 6&7, 2007, "Daubert Hearing" followed by handwriting and ESDA examinations and opinic

251-2006
RE:  Constantine P. Stevenson vs Michigan Department of Treasury
Jurisdiction:  Michigan Tax Tribunal, Docket # 0330369
Deposition:  Discovery Deposition
November 27, 2007, testified to handwriting

237-2007
RE: Estate of Clayton C. W. Hartman
Jurisdiction:  St. Joseph County, Michigan Probate Court, Case # 07-58 DA
Evidentiary Hearing (Civil):  Judge Thomas E. Shumaker
November 14, 2007, testified to handwriting

186-2006
RE: Martin Frais Tinoco, Removal Hearing
Jurisdiction:  United States Department of Justice, Immigration Court, File: A-75416314
Bench Trial (Immigration Matter):  Judge Robert Newberry
November 1, 2007, testified to handwriting

36-2007
RE:  Peyton & Jesteen Gutierrez vs Bryan Medical Inc., et al
Jurisdiction:  Williams County, Ohio Court of Common Pleas, Case #06C1000183
Deposition:  Discovery Deposition
September 26, 2007, testified to VSC2000, ESDA, Microscopic exams & findings of Medical Records.

Exhibit 6 ,
P. 153

CONFIDENTIAL -
ATTORNEYS' EYES ONLY

263-2006   RE: Haithan Masri vs Michigan Department of Treasury
           Jurisdiction: Michigan Tax Tribunal, Docket # 324343
           Bench Hearing (Civil): Judge Rachel Asbury
           September 24, 2007, testified to handwriting

32-2007    RE: Linda Lewis vs Southeast Michigan Surgical Hospital, et al
           Jurisdiction: Macomb County, Michigan Circuit Court, Case No: 06-0804-NH
           Deposition: Discovery Deposition
           September 17, 2007, testified to VSC2000, ESDA, Microscopic examination of Medical Records

255-2003   RE: DAG Enterprises vs Exxon Mobil Corp
           Jurisdiction: U. S. District Court for District of Columbia, Case: 1:CV00812 (RBW)
           Deposition: Discovery Deposition
           September 12, 2007, testified to VSC2000, ESDA, handwriting & recognized methodology

112-2007   RE: Stanley Bednarz Trust
           Jurisdiction: Macomb County, Michigan Probate Court File No: 06-189,318 TV
           Deposition: Discovery Deposition
           August 14, 2007, testified to handwriting

230-2006   RE: Joseph Mullivs vs Allstate Insurance Co
           Jurisdiction: U. S. District Court, Michigan Southern Division, Case No: 4:05CV40118
           Evidentiary Hearing (Civil): Judge Paul V. Gadola
           July 11, 2007, testified to handwriting, VSC2000 and cut-n-paste signatures

34-2007    RE: Carter Lumber vs Dennis Moosbrugger
           Jurisdiction: Ionia County, Michigan District Court Case No: 06-1912-GC
           Bench Trial (Civil): Judge Raymond P. Voet
           June 18, 2007, testified to handwriting

298-2006   RE: Estate of Edward Farley vs William Beaumont Hospital, et al
           Jurisdiction: Oakland County, Michigan Circuit Court Case No: 2006-072280-NH
           Deposition: Discovery Deposition
           May 30, 2007, testified to examination of medical records with Microscope, VSC2000 & ESDA

105-2007   RE: Skylur Graveratte, eta al v Saginaw-Chippewa Indian Tribe of Michigan
           Jurisdiction: Sag-Chippewa Indian Tribe of MI, Office of Administrative Hearings Case:C0064BG
           Bench Hearing (Civil): Hearing Office Gibson
           May 22, 2007, testified to handwriting

220-2006   David & Deanna Wilson vs Kenneth & Dawn Minard
           Jurisdiction: Crawford County, Michigan Circuit Court File # 06-6912-CH
           Deposition: Duces Tecum (for use at trial)
           March 16, 2007, testified that entire document was printed at one time; no additions/deletions

139-2006   Estate of Robert W. Kirby vs Christopher Berchalmann, M.C.
           Jurisdiction: Hillsborough County, Florida Circuit Court File # 01-10588-Div F
           Deposition: Discovery Deposition
           January 30, 2007, testified to VSC2000, ESDA & ESDA/written ink intersection

3-2007     Chandler Corp (Ernest III & Kelly Chandler) vs Ernest Jr. & Carol Chandler.
           Jurisdiction: Livingston County, Michigan Circuit Court File # 2006-22560-CZ
           Bench Hearing (Civil): Judge David J. Reader
           January 10, 2007, testified to handwriting and intersection of writing with computer print.



Exhibit _6_ ,
P. _184_



CONFIDENTIAL -
ATTORNEYS' EYES ONLY

173-2006    Patricia Nash (Mykeyta Washington) vs Sinai Grace Hospital, et al
Jurisdiction:  Wayne County, Michigan Circuit Court File # 05-50376NM
Deposition:  Discovery Deposition
November 17, 2006, testified to Microscopic, VSC2000 & ESDA exams of Medical Records

216-2006    Guardian Alarm Co. of Michigan and Guardian Medical Monitoring vs Marguerite Linteau
Jurisdiction:  Washtenaw County, Michigan Circuit Court File # 06-944-CK
Discovery:  Discovery Deposition
October 17, 2006, testified to handwriting

345-2005    Griesbach vs Frank L. Fenton, D.O., et al
Jurisdiction:  Oakland County, Michigan Circuit Court File # 04-062028-NH
Jury Trial (Civil):  Judge Denise Langford Morris
October 10, 2006, testified to VSC2000, ESDA, Microscopic exams of Medical Records

112-2006    L. C. (Elsie) Jonas vs Donald Kuhlman, et al
Jurisdiction:  Oakland County, Michigan Circuit Court File # 05-071147-CH
Deposition:  Discovery Deposition at our laboratory via telephone
July 24, 2006, testified to handwriting

10-2006    People vs Kent Fedor
Jurisdiction:  Wexford County, Michigan Circuit Court File # 05-7813-FH
Jury Trial (Criminal):  Judge Charles D. Corwin
June 29, 2006, testified to handwriting and formatting on check

21-2006    New Equipment Leasing vs Jungle Gym's, et al
Jurisdiction:  Kent County, Michigan Circuit Court File # 05-10235-CZ
Deposition:  Discovery Deposition at our laboratory
June 7, 2006, testified to handwriting and ESDA

209-2005    New Century Mortgage vs Maggie & Richard Brown
Jurisdiction:  Wayne County, Michigan Circuit Court File # 05-505156-CH
Bench Trial (Civil):  Judge Wendy M. Baxter
April 28, 2006, testified to handwriting

9-2006    Chinese Marriage License Photograph
Jurisdiction:  U. S. Immigration and Customs Hearing (New York, NY)
Immigration Bench Hearing File A95151342: Judge Noel Brennan
March 17, 2006, testified via telephone about examination of photograph to determine if altered

417-2004    Salvador M. Mendez, Jr. v. David & Sylvia Mendez
Jurisdiction:  Wayne County, Michigan Circuit Court File # 04-402934-CH
Bench Trial (Civil):  Judge William Giovan
January 24, 2005, testified to handwriting

112-2004    The Estate of Max Tigner
Jurisdiction:  Saginaw County, Michigan Probate Court File #04-52984-CK-2
Jury Trial (Civil):  Judge McGraw
September 1, 2005, testified to handwriting

170-2005    People vs Gary Earl Leiterman
Jurisdiction:  Washtenaw County, Michigan Circuit Court File #CRW04-2017-FC
Jury Trial (Criminal):  Judge Donald E. Shelton
July 21, 2005, testified to handwriting





Exhibit _8_,
P. _185_

CONFIDENTIAL -
ATTORNEYS' EYES ONLY

150-2005    Shirley Rollins Revocable Trust vs McDonald Investments, U.S. Bank, et al
Jurisdiction: Oakland County, Michigan Circuit Court File #02-045452 CZ
Deposition: Discovery Deposition in Farmington Hills, Michigan
June 2, 2005, testified to handwriting

334-2004    Horanic vs Covenant Health System, et al
Jurisdiction: Saginaw County, Michigan Circuit Court File # 02-44278-NH-3
Deposition: Discovery Deposition at our laboratory
April 29, 2005, testified to medical records examination with VSC2000 & ESDA

400-2004    The Estate of Shirley Miller
Jurisdiction: Oakland County, Michigan Probate Court, File # 2004-295439-DE
Bench Trial (Civil): Judge Linda S. Hallmark
April 19, 2005, testified to handwriting

417-1998    Susan Grossman vs Liss & Associates, et al
Jurisdiction: Oakland County, Michigan Circuit Court, File #99-016225-NI
Jury Trial (Civil): Visiting Judge Avadenka
March 8, 2005, testified to handwriting

270-2004    United States vs Allan A. Kuehnemund
Jurisdiction: U.S. District Court–Eastern Michigan, Northern District. File 04-CR-20025-BC
Jury Trial (Criminal): Judge David Lawson
March 3, 2005, testified to handwriting

101-2003    Arthur G. Walker vs UMLIC VP, LLC a/k/a United Mortgage
Jurisdiction: Genesee County, Michigan Circuit Court, File #03-76779
Bench Trial (Civil): Judge Richard B. Yuille
March 1, 2005, testified to handwriting

238-2003    Waleed Kulaib vs Shore Financial Services
Jurisdiction: Wayne County, Michigan Circuit Court, File #03-321317-CH
Bench Trial (Civil): Judge Warfield Moore, Jr., Detroit, Michigan
February 9, 2005, testified to duplicate (cut-n-paste) signatures

37-2005    VanDamme vs Blumberg
Jurisdiction: Clark County, Nevada District Court, File #A491461
Bench Trial (Civil): Judge Stewart Bell, Las Vegas, Nevada
February 9, 2005, testified to ESDA, VSC2000 and original vs machine copy writing

115-2004    ComCor Mortgage Corporation/Denise Martinez
Jurisdiction: U.S. Eastern District of Michigan Bankruptcy Court Case#04-4233 & 04-44221
Bench Trial (Civil): Judge Phillip Shefferly, Detroit, Michigan
February 2, 2005, testified to handwriting, ESDA and writing/computer printing sequence

241-2004    Henry & Larasenia Perry vs Robert J. Zendler, DO, et al
Jurisdiction: Genesee County, Michigan Circuit Court, File #02-74682-NH
Deposition: discovery deposition at our Laboratory
January 18, 2005, testified to addition in Medical Record (ESDA-impressions)

172-2004    Estate of Rosemary Cosby vs Robert C. Cosby, et al
Jurisdiction: Salt Lake County, Utah Third District Court #990902004
Jury Trial (Civil): Judge Bruce Lubeck
January 6, 2005, testified to handwriting



Exhibit _8_ ,
P. _186_

CONFIDENTIAL -
ATTORNEYS' EYES ONLY

323-2003    Great Lakes Management vs Nationwide Properties, et al
            Jurisdiction: Monroe County, Michigan Circuit Court #03-16944-CK
            Deposition: discovery deposition at our Laboratory
            December 22, 2004, testified to handwriting and sequence of lines

248-2004    Estate of Clarence A. Taylor
            Jurisdiction: Wayne County, Michigan Probate Court #2003-666207-CA
            Deposition: discovery deposition at Dickinson Wright PLLC office in Detroit
            December 2, 2004, testified to handwriting

397-2004    The Estate of John W. Yurchak
            Jurisdiction: Gogebic County, Michigan Probate Court #04-100104-DE
            Bench Hearing (Civil): Judge Joel L. Massie
            November 30, 2004, testified via video to handwriting and VSC2000 (Inks)

384-2003    Yazmin Vance (Lakia Hurst) vs Henry Ford Medical Center, Dr. Sprock, et al
            Jurisdiction: Wayne County, Michigan Circuit Court #03-305435-NH (Judge I. B. Torres)
            Deposition: discovery deposition at our laboratory.
            November 18, 2004, testified to addition to records (Microscope, VSC2000 & ESDA)

 11-2004    Agatha Morren vs Willis Morren, Jr
            Jurisdiction: Kalamazoo County, Michigan Circuit Court #03-00-0552 CK
            Bench Trial (Civil): Judge Richard R. Lamb
            November 17, 2004: testified to handwriting and duplicate signatures

169-2004    Venice Square, Inc. et al vs Five Star Land Company, et al
            Jurisdiction: Macomb County, Michigan Circuit Court #03-5521-CZ (Judge Deborah A. Servito)
            Deposition: discovery deposition at Beeding Legal Group, Mt. Clemens, MI
            November 8, 2004, testified to handwriting

210-2004    People of United States vs Kyle Dresbach
            Jurisdiction: U. S. District Court for Eastern Michigan District (Detroit)
            Jury Trial (Criminal): Judge Arthur J. Tarnow, Case #03-80504
            August 9, 2004: testified to changed/altered records (Microscope, VSC2000 & ESDA)

422-2003    People of the State of Michigan vs Lush Kolaj
            Jurisdiction: Wayne County, Michigan Circuit Court #03-13067
            Jury Trial (Criminal): Judge David Allen
            August 2, 2004: testified to tape covered "Motor City Casino ticket" (VSC & Microscopic)

369-2003    Miljan vs Albright, et al
            Jurisdiction: Clare County, Michigan Circuit Court #02-900271-CH, Judge Kurt Hansen
            Trial (Civil): Bench Trial
            July 30, 2004: testified to handwriting.

85-2004     RBC Dain Rauscher vs Deborah Nowacki
            Jurisdiction: National Association of Securities Dealers, Inc.
            Arbitration: Three-panel Arbitration Hearing in Bingham Farms, Michigan, case #02-05329
            July 24, 2004, testified to handwriting.

351-2003    Carla Cline vs Michigan Department of Corrections
            Jurisdiction: Michigan Employment Security Commission Hearing #B-20041080, Judge Smith
            Employment Hearing: Appeal hearing
            June 30, 2004, testified via telephone to handwriting.



Exhibit __8__,
P. __187__

CONFIDENTIAL -
ATTORNEYS' EYES ONLY

2-2004    Francesco Galofaro vs Manuel Puig-Llano, M.D.
Jurisdiction: San Diego County, California Superior Court#GIC880876 (Judge V.P. DiFiglia)
Deposition:  discovery deposition at ACRO Legal Services in Jackson, MI
June 24, 2004, testified to VSC, ESDA, Microscopic examinations of Records.

369-2003    Miljan vs. Albright
Jurisdiction:  Clare County, Michigan Circuit Court #02-90027CH
Deposition:  discovery deposition
May 24, 2004, testified to handwriting

48-2004    DeMyers vs. Wilson
Jurisdiction:  Wayne County, Michigan Circuit Court #03-340850-CH
Evidentiary Bench Hearing (Civil), Judge Dalphne Means Curtiss
April 22, 2004, testified to handwriting

Exhibit  8  ,
P. 188

CONFIDENTIAL -
ATTORNEYS' EYES ONLY

# LAST   PAGE

# BLANK

Exhibit 6 ,
P. 189

CONFIDENTIAL -
ATTORNEYS' EYES ONLY