THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
(laguiar@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Tel.: (213) 687-5000
Fax: (213) 687-5600

Attorneys for The MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>　　　　　　Defendant.<br><br>AND CONSOLIDATED ACTIONS. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>Honorable Stephen G. Larson<br><br>MGA PARTIES' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S MOTION FOR JUDGMENT AS A MATTER OF LAW<br><br>Hearing Date:　July 7, 2008<br>Time:　　　　3:00 pm |

## PRELIMINARY STATEMENT

Mattel seeks judgment as a matter of law ("JMOL") on the issue of whether it owns twenty-seven drawings by Carter Bryant. Because Mattel's motion is unsupported in fact or law, it should be denied.

<u>First</u>, Mattel's motion is based on an incorrect interpretation of Bryant's Mattel Inventions Agreement, and a misapplication of the pertinent trial testimony. The Court held in its April 25, 2008 Order (the "April 25 Order") that Bryant's Inventions Agreement covers "any Bratz-related 'inventions' (including any designs, improvements, ideas, concepts and copyrightable subject matter) that [Bryant] is found to have created during the period of his employment with Mattel." (April 25 Order at 5.) Contrary to Mattel's over-simplistic JMOL argument, however, Bryant's drawings do not become "inventions" owned by Mattel simply because Mattel claims that Bryant "put pen to paper" or "created" certain drawings during his Mattel employment. Under the Copyright Act, a "work" is "created" when it is "fixed in a copy" for the **first** time.

The drawings that are the subject of Mattel's motion were prepared by Bryant using a common light-box technique, in which Bryant traced his 1998 master drawings (the "inventions") onto new pieces of paper. As Bryant explained, this process allowed him to "make a hundred different drawings from the same pose" (Tr. 2856), and it enabled him to interchange heads with bodies as he saw fit. (Tr. 2874-75.) In reproducing his 1998 drawings, Bryant simply re-traced the poses and figures (Tr. 2858-59), and did not change the attitude or concept that was conceived in 1998. (Tr. 2860 & 2981.) Mattel's corporate representative, Lily Martinez, testified that she uses a similar tracing process. (Tr. 440:4-9) As Bryant testified: "Once I'm satisfied with my master drawing, I try and trace it as exactly as possible. As exact as possible." (Tr. 2860-61.) Bryant explained that this was a "mechanical process" that was "very, very boring" and required no "creative juices." (<u>Id.</u>)

If the jury finds that the Bratz idea and master drawings were first "created" in 1998, then the fact that Bryant may have traced from those 1998 drawings in 1999 vests Mattel

with no rights under the Inventions Agreement, as copies of an invention conceived and reduced to practice prior to Bryant's Mattel employment (where the copies contain no original "invention" in their own right) are not subject to the Agreement. (Section I, <u>infra</u>.)

<u>Second</u>, as to the "dummy doll," it is undisputed that (i) MGA never possessed or used this "dummy doll" (which was made from trash and bears absolutely no relation to the Bratz dolls) and (ii) the "dummy doll" no longer exists. Mattel does not explain how it can own a "tangible" item that does not actually exist, and Mattel has not and could not mount a copyright claim against the Bratz dolls based on this "dummy doll." (<u>See</u> Section II, <u>infra</u>.)

<u>Third</u>, Mattel is not entitled to a judgment as a matter of law on its conversion claim. Ownership of the property at issue is only one element of a conversion claim. Mattel has simply ignored the second element – actual conversion of the property. Mattel identifies <u>no</u> evidence to establish that the MGA Parties possessed or controlled the items at issue, much less the incontrovertible evidence required for a JMOL. (<u>See</u> Section III, <u>infra</u>.)

**ARGUMENT**

**I. MATTEL DOES NOT OWN TRACINGS MADE BY BRYANT DURING HIS EMPLOYMENT OF INVENTIONS HE CONCEIVED/ REDUCED TO PRACTICE IN 1998**

Mattel seeks JMOL because Bryant testified that he "put pen to paper" to physically trace a number of drawings while he was employed by Mattel. Mattel's overly-simplistic motion misses the crucial point entirely. The trial testimony establishes that the "inventions" (the master drawings) were conceived/reduced to practice in 1998, and the drawings that are the subject of Mattel's JMOL motion consist almost entirely of reproductions of those 1998 master drawings. For example, with respect to Exhibit 1, the testimony quoted by Mattel strategically omits the lead-in to Mr. Price's question, which clarifies that Bryant made these drawings using this "light box" tracing process. (Q: So what you're saying is that you – again, the process of using a light box and you put that on a blank poster board, and then you took pen, pencil, whatever, and drew these drawings in Exhibit 1 in 1999, correct?) (Tr. 2734:9-12.) Bryant used this same process of tracing from

2

his 1998 drawings to make almost all the other drawings that Mattel claims to own.  (See 7/7/08 Declaration of Thomas J. Nolan ("Nolan Decl."), submitted herewith, ¶¶ 3-6.)

If the jury finds in favor of MGA, it will be established that the "inventions" (master drawings) were conceived or reduced to practice in 1998 and owned by Bryant – and by assignment, MGA.[1]  Mattel would not obtain ownership of these "inventions" merely because Bryant traced over them during his Mattel employment.  As the Court has ruled, Bryant's Inventions Agreement only covers "inventions" conceived or reduced to practice during his employment; it does not extend to "inventions" that fall outside of his Mattel employment.

Mattel incorrectly argues that the timing of Bryant's 1998 inventions is only pertinent to "the scope of Mattel's *intangible* copyrights" in the relevant drawings and does not impact Mattel's ownership in the *"tangible aspect[s]"* of the drawings, *i.e.*, the pieces of paper themselves.  (See Mattel Mem. at 4 (Mattel's emphasis).)  This argument misses the point.  Although ownership of the "tangible" and "intangible" rights in the drawings may indeed differ, to own **any** rights in the drawings, Mattel must first prove that the drawings are covered by the Inventions Agreement.  Based on the evidence presented at trial, the drawings are not "inventions" that Bryant conceived/reduced to practice while employed by Mattel; therefore they are not covered by the Inventions Agreement at all.

Although Mattel asks the Court to ignore the "*intangible* copyright" aspects of the drawings, it is important to note that the Copyright Act supports the conclusion that Bryant maintained ownership of the 1998 "inventions" (the master drawings of Bratz). The Copyright Act expressly provides that a "work is 'created' when it is fixed in a copy ... **for the first time**[.]"  17 U.S.C. § 101 (emphasis added).  As a matter of law, Bryant's ownership of his 1998 master drawings provided him with, among other things, the

---

[1]  In connection with the four "evening wear" drawings that are the subject of Mattel's JMOL motion, the Court recognized in its May 21, 2008 Order denying Mattel's summary judgment motion on the contract claim that "the scope of the rights that may be assigned to Mattel under the Inventions Agreement" can be impacted by the "larger factual issues regarding the remaining Bratz drawings." (May 21, 2008 Order at 8.)

exclusive right to reproduce those "inventions." 17 U.S.C. § 106(1). Mattel has not argued, and could not argue, that the Inventions Agreement transferred to Mattel any rights to Bryant's pre-Mattel "inventions," and the language of the Inventions Agreement is facially insufficient to effect such a transfer. 17 U.S.C. § 204. Bryant's exercising his right to make copies of his 1998 works does not transfer any interests in the copyrights to Mattel. Bryant also owned the exclusive right to "compile" the individual 1998 "inventions" in later drawings without effecting in any way his ownership rights in the preexisting "inventions." Id. § 103(b).

Mattel's JMOL does not meet its burden to show that the relevant drawings are new "inventions" that were first created by Bryant during his employment at Mattel.[2] Mattel's failure to identify any such "inventions" requires that Mattel's JMOL motion be denied.

## II.     MATTEL DOES NOT OWN THE NON-EXISTENT "PROTOTYPE" DOLL

Mattel admits that the "dummy doll" is "not in evidence" (Mattel Mem. at 4), but fails to mention why the "doll" is not in evidence: it does not currently exist. Mr. Bryant testified that after the September 1, 2000 pitch meeting "I think I just threw it out." (Tr. 3023:8-10.) It also is undisputed that MGA never possessed or used this "doll" (Tr. 2134:14-19), and Mattel never explains how it can own a tangible item that does not exist. Finally, Mattel has not and could not mount a copyright claim against the Bratz dolls based on this nonexistent "doll" that has not been registered as a copyrighted work.

## III.    MATTEL HAS NOT ATTEMPTED TO ESTABLISH ALL OF THE ELEMENTS OF ITS CONVERSION CLAIM

Assuming Mattel could establish "ownership" over any particular drawing, and it cannot, Mattel did not establish material elements of its conversion claim. Pursuant to this Court's April 25, 2008 Order, Mattel's conversion claim is limited to its claim for "the

---

[2] Mattel has never asserted that the color or evening wear fashions that were added to the 1998 drawings during his employment at Mattel constitute separate "inventions" owned by Mattel under the Inventions Agreement. See, e.g., TX 3-4, 3-11, 5-82, 5-84. The same is true for TX 5-26 and 5-27, the rough sketches of the evening wear.

return of tangible things." To succeed on its claim, Mattel must show 1) its "ownership or right to possession of the property at the time of the conversion;" 2) the MGA Parties' "<u>conversion by a wrongful act or disposition of property rights;</u>" and 3) damages. <u>Farmers Ins. Exch. v. Zerin</u>, 53 Cal. App. 4th 445, 451-52 (1997) (emphasis added). Thus, for <u>each</u> item of property at issue, "it is … necessary to show an assumption of control or ownership over <u>the property</u>, or that the alleged converter has applied <u>the property</u> to his own use." <u>Id.</u> at 452 (emphasis added). Particularly in a case where copyright claims are also involved, "to bring an action for conversion, there must be a wrongful possession of the work." <u>Worth v. Universal Pictures, Inc.</u>, 5 F. Supp. 2d 816, 822 (C.D. Cal. 1997).

To merit a judgment as a matter of law, the party bearing the burden of proof must demonstrate that its evidence is not merely sufficient but rather "overwhelming" and supports only one conclusion. <u>United Cal. Bank v. THC Fin. Corp.</u>, 557 F.2d 1351, 1356 (9th Cir. 1977). Mattel simply ignored the two elements of conversion beyond its alleged ownership of the items at issue. In its motion, Mattel claims that it elicited evidence that it owns the drawings, nothing more. (<u>See</u> Mattel Inc.'s Motion at 4 ("[N]o reasonable jury could find that these items were not created during Bryant's Mattel employment" and thus "Mattel owns these tangible items"). Mattel has identified <u>no</u> law or facts compelling the conclusion that the MGA Parties ever possessed or assumed control over <u>these tangible items</u> or that Mattel suffered damages as a result.[3] Indeed, Mattel's motion does not even mention these elements of its claim. As such, Mattel has plainly failed to meet the requirements for a judgment as a matter of law on conversion.

## CONCLUSION

For the foregoing reasons, Mattel is not entitled to a judgment as a matter of law.

DATED: July 7, 2008         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                            By:    /s/ Thomas J. Nolan
                                      Thomas J. Nolan
                                Attorneys for the MGA Parties

---

[3] For many of the drawings identified in Mattel's motion, there is no testimony whatsoever about the ultimate disposition of the items themselves.