1  THOMAS J. NOLAN (Bar No. 66992)
   (tnolan@skadden.com)
2  JASON D. RUSSELL (Bar No. 169219)
   (jrussell@skadden.com)
3  LAUREN E. AGUIAR (Admitted Pro Hac Vice)
   (laguiar@skadden.com)
4  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue, Suite 3400
5  Los Angeles, CA 90071-3144
   Tel.: (213) 687-5000
6  Fax: (213) 687-5600

7  Attorneys for The MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| CARTER BRYANT, an individual, | ) CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|
| Plaintiff, | ) Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| v. | ) |
| MATTEL, INC., a Delaware corporation, | ) DECLARATION OF THOMAS J. NOLAN IN SUPPORT OF MGA PARTIES' OPPOSITION TO MATTEL'S MOTION FOR JUDGMENT AS A MATTER OF LAW |
| Defendant. | ) |
| AND CONSOLIDATED ACTIONS. | ) Date: July 7, 2008<br>) Time: 3:00 PM |

Declaration of Thomas J. Nolan In Support Of MGA Parties' Opposition To Mattel's
Motion For Judgment As A Matter Of Law, Case No. CV 04-9049 SGL (RNBx)

I, Thomas J. Nolan, declare:

1. I am an attorney duly licensed to practice law in the State of California and am a partner with the law firm of Skadden, Arps, Slate, Meagher & Flom LLP, counsel of record for the MGA Parties. This declaration is submitted in opposition to Mattel's motion for a judgment as a matter of law ("JMOL"). Except where otherwise noted, I have personal knowledge of the facts set forth below and could competently testify thereto.

2. The trial testimony establishes that Carter Brant's Bratz "inventions" (the master drawings) were all conceived and reduced to practice in 1998. The evidence also shows that the drawings that are the subject of Mattel's JMOL motion are almost entirely reproductions of those 1998 master drawings.

3. The drawings that are the subject of Mattel's motion were prepared by Bryant using a common light-box technique, in which Bryant traced his 1998 master drawings onto new pieces of paper. As Bryant explained, this process allowed him to "make a hundred different drawings from the same pose" (Tr. 2856), and it enabled him to interchange heads with bodies as he saw fit. (Tr. 2874-75.) In reproducing his 1998 drawings, Bryant simply re-traced the poses and figures (Tr. 2858-59), and he did not change the attitude or concept that was conceived in 1998. (Tr. 2860 & 2981.) Mattel's corporate representative, Lily Martinez, testified that she uses a similar tracing process. (Tr. 440:4-9) As Bryant testified: "Once I'm satisfied with my master drawing, I try and trace it as exactly as possible. As exact as possible." (Tr. 2860-61.) Bryant explained that this was a "mechanical process" that was "very, very boring" and required no "creative juices." (Tr. 2861).

4. For example, with respect to Trial Exhibit 1, the testimony quoted by Mattel in connection with its JMOL motion misleadingly omits the lead-in to Mattel's counsel's question, which clearly states that Bryant made these drawings based on the master drawings he created in 1998 using this "light box" tracing process.

Q:  All I mean by 'these were created when you worked for Mattel,' I mean that originally they were blank pages and while you were at Mattel to create these, you first put pen or pencil or a magic marker or a pastel marker, whatever, to paper.

A:  **Yes. Using The Drawings From 1998.**

Q:  So What You're Saying Is That You -- Again, **The Process Of Using A Light Box** And You Put That On A Blank Poster Board, And Then You Took Pen, Pencil, Whatever, And Drew These Drawings In Exhibit 1 In 1999; Correct?

A:  Yes.  (TR 2734:4-13) (emphasis added).

5.   Mr. Bryant described the process of using a light box to "transfer" images from the master drawings to an illustration board as a purely "mechanical" process.  (TR 2861:11-13)(Q: "That is the tracing using the light box over the master is a mechanical process; correct?  A:  Yes. It's very, very boring.").  In a portion of the transcript which Mattel chose not to cite, Mr. Bryant described the process of creating the pitch book -- TX 302, which is identical to TX 1, as follows:

Q:  BY MR. PRICE: Well, remember we talked about this process where you used a light box and you'd project it and colorize it?

A:  Yes.

Q:  And you did a number of drawings at Mattel where you did that?

MR. NOLAN:  I'm going to object as to the term number of drawings. Ambiguous.

THE COURT: Let's rephrase.

Q:  BY MR. PRICE: You did drawings where you used that process while you were at Mattel, Bratz drawings?

A:  What I did was I took the master drawings that I had done before and transferred the drawing onto a piece of illustration board.

Q:  When you say transferred, I'm talking about the process we were talking about earlier where you would trace it and then colorize it; correct?

2

A: Well, not even colorize it so much. Transferring the drawing is, I guess, sort of an artistic term where you do just what you said, where you take the paper and you put it on the light box, and then you just trace exactly what's there onto your piece of illustration board.

Q: And in addition, while you were at Mattel, you would do that process, would you sometimes color the drawings?

A: Yes.

Q: And one of the reasons you did that was so that you could come up with a pitch book to go to a company and try to sell the idea of a Bratz doll.

A: I mean, I don't -- I don't know that that's exactly what I had in my mind, but, you know, I did want to add color to them. (Tr. 2479:12-2480:17)

6. The evidence shows that Bryant used this same process of tracing from his 1998 drawings to make others of the drawings that Mattel claims to own:

(a) TX 2. These drawings are the same as those in TX 1 (Tr. 2734:18-25), and they were created by Bryant using the same mechanical tracing process and the 1998 master drawings. (Tr. 3238-40.)

(b) TX 3. These drawings also include the same drawings as those in Exhibits 1 and 2, plus four "evening wear" drawings. Bryant testified that the drawings in this exhibit were prepared using his tracing process. ("Q: And also with respect to these colorized poster boards that are part of Exhibit 3, those were created the same way that we've discussed where you started with a blank poster board and projected something on and traced a drawing, and then colored it in? A: Right.") (Tr. 2487:22-2488:2). See also Tr. 2481:18-24 ("Q: So you started with a blank poster board, and then you created, through the process we talked about, what we have as the first page of Exhibit 3; correct? ……….. THE WITNESS: Yeah, again, I took my drawing that I had done previously, transferred it, and added color, yes."); Tr. 2482:22-25 ("Q: And it's true that you don't recall for what purpose you added this 8/98; correct? A: Well, no, I think I have a little bit of a recollection. I think at

1  some point I was asked to turn over the original drawings to MGA. And I think what
2  *I was just trying to signify was that, you know, the concept, you know, the master*
3  *drawings were done in 1998.*")(emphasis added); Tr. 3241:4-7 (TX 779/TX3-
4  001)( BY MR PRICE: This drawing, Exhibit 779, did not exist until after 1999? A:
5  Well, again, *I said the master drawing existed, but the color -- we didn't put the color*
6  *on there until 1999.*"); TX 794 (alternative hairstyle) (TX 3-1); Tr. 2487-88 (TX 3-2);
7  Tr. 2741:4-6 (TX 3-4); Tr. 3241:21-3242:1 (TX 3-5)(TX 791.001)("Q: And if we
8  look at Exhibit 791, also 3-5. 791, please. You see this drawing with a handbag and
9  in this form, this did not exist until after 1999; is that correct? A: The master
10 drawing did. Color was added in '99. Q: The master drawing including the
11 handbag? A: Yes. Well, I believe so."); Tr. 2508:19-2509:15 (TX 3-7).

   See also Tr. 3242:5-12 (TX 3-10)("Q: And if you'd look at Exhibit 735, this
13 drawing did not exist in any form until after 1999; correct? A: Well, I believe the
14 master drawing existed, yes. Q: With the face in this fashion? A: I believe so, yes.
15 Q: This particular drawing, which is Exhibit 735, did not exist until after 1999;
16 correct? A: Color was added in '99, yes").Tr. 3242:16-20 & Tr. 3255:5-3256:4 (TX
17 3-12) ("Q: And how would you transfer the backpack master drawing to another
18 drawing?  A: With the same method. I would just choose the backpack that I
19 wanted to use, put it on the light box, put down my illustration paper, and then just
20 trace the backpack that I wanted to use. MR. NOLAN: Could we have up, Aaron, in
21 evidence, 0003.012. Okay. Q: Now, do you recall that Mr. Price showed you a
22 colored version of Trial Exhibit No. 3.012? A: Yes. Q: And can you identify for us
23 the origins of the backpack that appeared on this particular Bratz character drawing?
24 A: It's the backpack in the drawing on the left, lower left corner. Q: And you are
25 referring to the lower left-hand corner of Exhibit 18281? A: Yes. Q: And again,
26 this will be the last time I'll ask you to do this. Can you just explain to us what the
27 process was in transferring over. A: I would just take that drawing, and since I had
28

Case 2:04-cv-09049-DOC-RNB   Document 4091-2   Filed 07/07/08   Page 6 of 7   Page ID #:102422

1  chosen that backpack for that character, I'd put the master drawing onto the light box,
2  put the illustration paper on top of that, and trace the drawing".))
3       (c)   TX 5-80, 5-81 & 5-86. Drawn using the 1998 master drawings. (See Tr.
4  2740:16-19 (TX 5-80 (used "'98 head"); see also TR 2507:22-2508:3: ("Q: and
5  before you actually had your meeting with Mr. Larian, actually created from scratch,
6  that is, not just, you know, projecting, for new poster boards. For new drawings. A:
7  Well, not from scratch. I used the old head drawings, and I used one of the old poses,
8  and then the other pose I used was just kind of a standard fashion pose".)
9       (d)   TX 5-82 & 5-84. TX 5-84 drawn using 1998 master head (see TX 62-
10 15; see also Tr. 2741:4-6)("Q: 5-84, Bryant 00273, Done while you were employed
11 at Mattel. A: Yes. Again, using one of the old heads from '98, Yes."), and TX 5-82
12 & 84 drawn using portions of master torso (see, e.g., TX 35-3 & TX 1748-1).
13      (e)   TX 5-85. Drawn using the 1998 master drawings. (See Tr. 2508:19-
14 2509:2 (drawn by "using, you know, an older face and an old pose"; fashions never
15 used) (see also Tr. 3006:14-3007:11).
16      (f)   TX 5-83, 5-87 & 5-108. Drawn using the 1998 master drawings. (See
17 Tr. 2741:23-2742:7 (testimony concerns TX 5-87 & 5-108; TX 5-83 uses the same
18 body) ("Q: All we have are photocopies of five. They appear to be the same
19 drawings, but in different scales and sizes. A: Yes. Q: 5-87, Which is Bryant 276,
20 done while you were employed at Mattel. A: Yes. Again, this one was using an old
21 '98 pose and head. Q: Again, it was a blank piece of paper, which you then
22 changed to this 5-87 while you were at Mattel; correct? A: Yes. Q: Look at 5-108,
23 which is Bryant 00297, done while you were employed at Mattel. A: This just
24 looked like another copy of this same one we just looked at, 87.")
25      (g)   TX 10-2. Drawn using the 1998 master drawings. (See Tr. 2742:12-16;
26 see also Tr. 2508:19-2509:15 (TX 719)("I'd like you to look at page 2, 10-2, which is
27 – this time it's Bates M-0001489. Do you recognize this as a drawing you did while
28 at Mattel? A: Again, these are using the old 1998 drawings, but, yes")).

Declaration of Thomas J. Nolan In Support Of MGA Parties' Opposition To Mattel's
Motion For Judgment As A Matter Of Law, Case No. CV 04-9049 SGL (RNBx)

7. Attached as Exhibit 1 are true and correct copies of the drawings/Trial Exhibits referenced in Mattel's JMOL: Trial Exhibits 1; 2; 3; 5-80; 5-81; 5-82; 5-83; 5-84; 5-85; 5-86; 5-87; 5-108; and 10-2.

8. Attached as Exhibit 2 are true and correct copies of the drawings/Trial Exhibits referenced in the MGA Parties' opposition to Mattel's JMOL: Trial Exhibits 35-3; 62-15; 302; 739; 779; 794; and 1748-1.

9. Attached as Exhibit 3 is a true and correct copy of the relevant excepts from the trial transcript referenced in the MGA Parties' memorandum of points and authorities and herein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 7th day of July, 2008, in Riverside, California.

_____
Thomas J. Nolan