THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
(laguiar@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Tel.: (213) 687-5000
Fax: (213) 687-5600

Attorneys for the MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. CV 04-09039 and Case No. CV 05-02727<br><br>NOTICE OF MOTION AND MOTION FOR LEAVE TO SUBMIT PAUL K. MEYER'S SUPPLEMENTAL EXPERT REPORT CONCERNING DISCOVERY RECENTLY PRODUCED BY MATTEL; AND<br><br>MEMORANDUM OF POINTS AND AUTHORITIES<br><br>**FILED UNDER SEPARATE COVER:**<br><br>DECLARATION OF RYAN H. WEINSTEIN IN SUPPORT THEREOF; DECLARATION OF LANCE A. ETCHEVERRY IN SUPPORT THEREOF; PROPOSED ORDER and PROOF OF SERVICE<br><br>Date: July 14, 2008<br>Time: 10:00 a.m.<br>Judge: Honorable Stephen G. Larson<br>Place: Courtroom 1 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 14, 2008, at 10 a.m. or as soon thereafter as this matter may be heard, in the Courtroom of the Honorable Stephen G. Larson. Located at Courtroom 1 of the above-entitled Court, 3470 Twelfth Street, Riverside, CA 92501, MGA Entertainment, Inc., MGA HK and Isaac Larian (the "MGA Parties"), will and hereby do, move the Court for relief from the Scheduling Order effective in this action and Federal Rule of Civil Procedure 26(a)(2)(C), to grant MGA Parties leave to file the Supplement Expert Report of Paul K. Meyer concerning documents recently produced by Mattel.

This Motion is made pursuant to the Court's decision to grant the MGA Parties leave to file this motion, Federal Rules of Civil Procedure 16 and 26, Local Rule 16-14, the Court's Order dated May 12, 2008, and on the ground that there is good cause to modify the Scheduling Order to grant the MGA Parties leave to serve Mr. Meyer's Supplemental Report. The MGA Parties were not provided with the data that forms the basis of Mr. Meyer's Supplemental Report until June 6, 2008, eleven days after the commencement of this trial.

The Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Ryan H. Weinstein and Lance A. Etcheverry filed under separate cover, the records and files of this Court, and any other matter of which the Court may take judicial notice.

DATED: July 7, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: /s/ Thomas J. Nolan
Thomas J. Nolan
Attorneys for the MGA Parties

## PRELIMINARY STATEMENT

Through its damages expert, Michael Wagner, Mattel seeks up to 83% of all profits from the Bratz franchise. But Mr. Wagner's analysis rests on a number of faulty assumptions – among them, a false comparison between Bratz profit margins and the earnings of large, diversified companies, many of which do not sell fashion dolls.

For nearly a year, MGA sought to discover evidence of profit margins earned on comparable dolls, *viz*, Mattel's own fashion doll line. Then, just last month, Mattel produced documents setting forth Mattel's profit margins from Barbie, My Scene, and related products. Based on this new data, MGA's designated damages expert, Paul Meyer, prepared a supplemental report that draws the apples-to-apples comparison that Mr. Wagner's report inexplicably omitted. The report shows that once Bratz profits are compared to those of Mattel's fashion dolls, Mr. Wagner's apportionment percentage shrinks from 83% to just 5%. MGA now respectfully requests leave to serve Mr. Meyer's report.

Just last month, the Court advised the parties on this very subject, observing that "[t]here's not much point, obviously, in ordering discovery produced if the discovery cannot be used."[1] The discovery at issue here has been ordered twice. Yet, absent the leave of Court sought here, Mattel will have succeeded in concealing its significance from the jury. MGA submits that the Court's guidance applies with equal force here.

### I. MATTEL'S EXPERT OPINIONS AND NEWLY DISCLOSED MARGIN DATA

On March 17, 2008, Mattel served the expert rebuttal report of its damages expert, Michael J. Wagner. Among other things, the report disclosed Mr. Wagner's opinions on the apportionment of MGA's profits. Mr. Wagner opined that MGA

---

[1] 6/6/2008 Hr'g Tr. 1761:18-19.

1  should not retain so-called "excess" profits above the average profit margins earned
2  by large, diversified toy companies. Mr. Wagner then quantified those "excess"
3  profits under four different methodologies. In calculating the "excess" profits, Mr.
4  Wagner did not compare Bratz profit margins to other companies' fashion-doll
5  profits; rather, Mr. Wagner benchmarked Bratz profits against corporate earnings
6  reported by Hasbro, Marvel, Mattel, and others – companies that, by Mr. Wagner's
7  own admission, were not "directly comparable" to Bratz.[2] Two weeks later, Mr.
8  Wagner admitted that he had measured Bratz profits against (1) companies not in the
9  fashion doll business,[3] and (2) companies earning the majority of their profits from
10 unrelated products, like board games, comic books, and stationery.[4] Based on his
11 analysis, Mr. Wagner opined that MGA should surrender between 57% and 83% of
12 its Bratz profits.[5] But, in deeming Bratz profits "excessive," Mr. Wagner failed to
13 compare Bratz profits with those of Bratz' chief competitors: Mattel fashion dolls.
14     On June 6, 2008, at the 30(b)(6) deposition of Douglas Kerner, Mattel for the
15 first time produced documents setting forth profit margins that Mattel earned on its
16 Barbie and My Scene lines.[6] Significantly, these newly disclosed profit margins far
17 exceeded Mr. Wagner's calculated benchmark.[7]
18     Based on the new data, MGA's designated damages expert, Paul Meyer,
19 prepared a 14-page supplemental report. The report explains that if Mr. Wagner had
20 compared Bratz profits to profits earned on competing fashions doll lines, his results

---

[2] Deposition of Michael J. Wagner, dated March 21, 2008 ("Wagner Dep."), at 207:9-12 ("I don't think they are directly comparable, no."), attached as Ex. A to Declaration of Ryan H. Weinstein, dated July 7, 2008 ("Weinstein Decl.").
[3] Weinstein Decl. Id. (Wagner Dep.) at 177:5-17; 181:3-17.
[4] Weinstein Decl. Id.(Wagner Dep.) at 182:15-183:18.
[5] Weinstein Decl. Ex B, (Expert Rebuttal Report of Michael J. Wagner ("Wagner Rebuttal Report"), at 2-5.).
[6] Weinstein Decl. Exs. C, D, E, (Exhibits 6005, 6006, and 6007, respectively, from the Deposition of Douglas Kerner, dated June 6, 2008 ("Kerner Dep.")).
[7] Additionally, the documents explicated—for the first time—how Mattel allocates overhead costs to its product lines to determine product-level profitability. Mattel through its expert challenges MGA's allocation of the same expenses.

would have been dramatically different. Indeed, Mr. Wagner's apportionment range shrinks from 57-83% to 5-12%[8] of Bratz profits. MGA sent Mr. Meyer's preliminary supplemental report to Mattel's counsel on July 1, 2008, along with a draft stipulation seeking leave to serve it.[9] Two days later, Mattel's counsel stated that it would not stipulate to the report.[10]

## II. EFFORTS TO OBTAIN PRODUCT-LEVEL PROFIT MARGIN DATA FROM MATTEL.

MGA has sought Mattel's product-level profit data since last year. For example, on September 5, 2007, MGA noticed a Rule 30(b)(6) deposition, which sought the testimony of Mattel's corporate designee on, *inter alia,* Topic No. 28: "[t]he identify of, and the sales, revenues and profits of, any Mattel product(s) MATTEL contends have been impacted by BRATZ, including, but not limited to, BARBIE, DIVA STARZ, FLAVAS and MY SCENE …[.]"[11,12] But all MGA discovery requests were met with delay and objection.[13] Despite protracted meet-and-confer efforts, Mattel refused to produce a 30(b)(6) witness.[14] On April 11, 2008, the Discovery Master ordered Mattel to produce a corporate designee on Topic No.

---

[8] Weinstein Decl. Ex. F (Supplemental Expert Report of Paul K. Meyer, dated July 1, 2008) at 3.
[9] Weinstein Decl. Ex. G (E-mail from R. Weinstein to J. Corey, dated July 1, 2008).
[10] Weinstein Decl. Ex. H (E-mail from J. Corey to C. Roth, et al. dated July 3, 2008).
[11] Weinstein Decl. Ex. I (MGA Entertainment, Inc.'s Notice of Deposition of Mattel, Inc., Pursuant to Fed. R. Civ. P. 30(b)(6), dated September 5, 2007) at A-18 (topic 28).
[12] A month later, MGA also propounded two documents requests relevant to this motion. Request No. 563 of of MGA's Sixth Set sought "[d]ocuments sufficient to show all records of sales figures, revenues and profits pertaining to Barbie from January 1, 1990 to the present" and Request No. 564 sought similar data related to My Scene dolls. *See* Weinstein Decl. Ex. J (MGA's Sixth Set of Requests for the Production of Documents and Things) at 10.
[13] Mattel "responded" to Request No. 563 with a litany of objections. Weinstein Decl. Ex. K (Mattel's Responses to Sixth Set of Requests for Production of Documents and Things, dated December 17, 2008) at 27-28. Mattel likewise never produced profit margin data in response to Request No. 564.
[14] Weinstein Decl. Ex. L (Letter from Jon D. Corey, Esq., to Paul Eckles, Esq., dated December 20, 2007) at 2.

28.[15,16] Mattel appealed the Order to this Court[17], and the Court denied the appeal on May 12, 2008.[18]

Following the Court's ruling, MGA moved quickly to schedule the deposition of Mattel's corporate designee before trial.[19] But Mattel's counsel refused to produce a designee until June 2, 2008, later pushing it back to June 6, 2008.[20]

### III. MATTEL'S SUPPLEMENTAL REPORT AND THE COURT'S GUIDANCE

The Court addressed a similar issue last month. After trial commenced, Mattel sought leave to serve a supplemental expert report, purportedly based on newly disclosed evidence.[21] On June 6, 2008, the same day Mattel produced the documents at issue here, the Court provided the following guidance: "There's not much point, obviously, in ordering discovery produced if the discovery cannot be used."[22] To which Mattel's counsel replied: "That would be our viewpoint, your Honor …[.]"[23] The Court then advised the parties to reach an agreement consistent with the Court's guidance.[24]

### IV. GOOD CAUSE EXISTS TO GRANT MGA'S LEAVE TO SERVE MR. MEYER'S SUPPLEMENT REPORT BASED ON NEWLY DISCLOSED EVIDENCE

The Court's guidance applies here.[25] In this instance, the discovery at issue was ordered twice: first by the Discovery Master, and again by this Court in denying Mattel's appeal. To make use of the new discovery, MGA's damages expert, Mr.

---

[15] MGA had moved to compel the 30(b)(6) deposition on December 21, 2008.
[16] Judge Infante ordered Mattel to produce a corporate designee by May 5, 2008. Weinstein Decl. Ex M (April 11, 2008 Order Granting In Part and Denying In Part MGA's Motion to Compel).
[17] Docket No. 3334 (Motion Objecting to Portions of the Discovery Master's April 11, 2008 Order).
[18] Docket No. 3669 (Order Ruling on Discovery Motions) at 2.
[19] Declaration of Lance A. Etcheverry, dated July 7, 2008 ("Etcheverry Decl."), ¶ 3.
[20] Etcheverry Decl. ¶ 4.
[21] Docket No. 3945 (Motion for Relief From Scheduling Order, dated June 9, 2008.).
[22] 6/6/2008 Hr'g Tr. 1761:18-19.
[23] 6/6/2008 Hr'g Tr. 1761:20-22.
[24] 6/6/2008 Hr'g Tr. 1762:4-6,12-13 ("Well, now you and Mr. Nolan have the benefit of the Court's comments.").
[25] 6/6/2008 Hr'g Tr. 1761:18-19.

Meyer, must be permitted to testify to its significance. And its significance is profound: the data serves to slash Mr. Wagner's proffered apportionment percentage from 83% to 5%. The jury is entitled to hear Mr. Meyer's testimony on this point, and good cause exists to permit it.

To hold otherwise would be to reward Mattel for nearly seven months of delay and intransigence. MGA first propounded discovery requests seeking Mattel's product-level margin data in September 2007. After months of meet-and-confers and needless motion practice, Mattel finally produced a witness to furnish the requested discovery. That MGA must now serve a supplemental report is a problem of Mattel's own making. And Mattel should not benefit from its tardy production through the exclusion of critical evidence and testimony.

## V.   MATTEL WOULD NOT BE UNFAIRLY PREJUDICED BY MR. MEYER'S PROFFERED TESTIMONY

Nor can Mattel claim prejudice. Mr. Meyer's supplemental report discloses no new methodologies. And it applies data well-known to Mattel – Mattel's own internal financials. Indeed, given Mr. Wagner's presumed access to Mattel's financial data, it is surprising that Mr. Wagner neglected to perform the obvious and direct comparison – that is, fashion doll line to fashion doll line. Mr. Meyer now has.

Last week, MGA furnished Mattel with a copy of Mr. Meyer's report, and MGA has already agreed to produce Mr. Meyer for an additional deposition. In sum, MGA has moved expeditiously to disclose Mr. Meyer's proffered testimony; Mattel has only its own discovery tactics to blame for any perceived delay in disclosure.

DATED: July 7, 2008

                            SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                            By:  /s/ Thomas J. Nolan
                                Thomas J. Nolan
                                Attorneys for the MGA Parties