QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  (John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017–2543
Telephone:  (213) 443–3000
Facsimile:   (213) 443–3100

Attorneys for Mattel, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| CARTER BRYANT, an individual, | CASE NO. CV 04–9049 SGL (RNBx) |
|---|---|
| Plaintiff, | Consolidated with Case No. CV 04–09059 Case No. CV 05–02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **MATTEL, INC.'S OPPOSITION TO MOTION FOR LEAVE TO SUBMIT PAUL K. MEYER'S SUPPLEMENTAL EXPERT REPORT CONCERNING DISCOVERY RECENTLY PRODUCED BY MATTEL** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | [Declaration of Juan Pablo Albán filed concurrently] |

Hearing Date:   July 14, 2008
Time:              10:00 a.m.
Place:             Courtroom 1

**Phase 1:**
Pretrial Conference      May 19, 2008
Trial Date:                May 27, 2008

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

MGA asks the Court for leave to serve a sur-rebuttal report by its damages expert. MGA claims it is a "supplemental" report on apportionment of damages. It is not. The new report has nothing do with MGA's initial damages report. MGA's expert initially offered seven theories of apportionment, each independent of Mattel's or any other toy company's profits. In rebuttal, Mattel's expert advanced an apportionment theory based on the profits of MGA and other toy companies. MGA now seeks to rebut that rebuttal. Neither the Federal Rules nor the Court's Scheduling Order allow sur-rebuttals to rebuttal reports. For good reason. Otherwise, there would be an endless series of rebuttals to rebuttals.

MGA claims that it is prejudiced because Mattel failed to produce profit information. Besides such information being irrelevant to MGA's expert's initial apportionment analysis, MGA fails to mention that it *never moved to compel* production of profit documents. Indeed, until now, MGA never suggested a need for profit information to prepare expert reports. Nor is MGA unable to use the Mattel profit information now. It is free to use it to cross-examine Mattel's damages expert. That is the proper way to address rebuttal reports.

### Argument

## I.   PROFIT INFORMATION DOES NOT "SUPPLEMENT" OR MODIFY MGA'S EXPERT OPINION

### A.   Mattel's Profits Had Nothing To Do With Any Of The Seven Methodologies MGA's Expert Used To Apportion Profit

It is undisputed that MGA bears the burden of apportioning profits attributable to the infringement of Mattel's copyrighted works.[1]   When MGA's

---

[1]   17 U.S.C. § 504(b) ("the infringer is required to prove ... the elements of profit attributable to factors other than the copyrighted work.").

1  damages expert, Paul Meyer, submitted his initial expert report, he offered seven
2  different approaches for apportioning Bratz profits: (1) Mattel's studies of Key
3  Fashion Doll Attributes; (2) royalties paid by MGA to Mr. Bryant; (3) work tasks to
4  develop the original Bratz doll; (4) MGA's Bratz product development
5  contributions; (5) MGA's "licensing in" and "licensing out" royalty rates; (6) MGA's
6  investments in the Bratz product line; (7) sales variation among Bratz products.[2]
7  Not one of Mr. Meyer's theories has anything to do with the profits of Mattel or any
8  other toy company.[3]  Mattel's damages expert, Michael Wagner, submitted a rebuttal
9  report critiquing Mr. Meyer's apportionment approaches and, as the Rules permit,
10 offered a different apportionment approach.  Mr. Wagner opined that the proper
11 apportionment of MGA's profits to the infringing products was to provide MGA
12 with an industry-standard or MGA non-Bratz historical return.  Mr. Wagner based
13 his approach on publicly available financial information regarding a number of toy
14 companies, including Mattel, and on MGA financial information.[4]

15        MGA's so-called "supplemental" report is a rebuttal to Mr. Wagner's
16 rebuttal report.  MGA wants to challenge Mr. Wagner's alternative apportionment
17 approach by challenging the rates of return that Mr. Wagner used.  That some of the
18 rates that MGA wishes to use came from a deposition of a Mattel witness does not
19 justify deviating from the Court's Scheduling Order.

20        MGA asks the Court for leave to deviate from the Scheduling Order
21 because it did not have Mattel profit documents until after Mr. Meyer submitted his
22 report.    The fatal flaw in MGA's argument is that Mattel' profits do not
23 "supplement" Mr. Meyers's initial apportionment opinions.  At no point in MGA's

24

25  [2]  Exh. 1 to Declaration of Juan Pablo Albán filed concurrently ("Albán Dec.")
    (Expert Report of Paul K. Meyer dated Feb. 11, 2008) at 44-57.
26     [3]  Albán Dec., Exh. 1 (Meyer Feb. Rep.) at 44-57.
27  [4]  Weinstein Dec., Exh. B (Expert Rebuttal Report of Michael J. Wagner dated
    March 17, 2008) at 13-16.
28

1  motion does it suggest that, if Mr. Meyer had Mattel profit information, he would
2  have offered a different approach based on Mattel's (or industry) profits.[5]

3        Furthermore, contrary to MGA's central claim of prejudice in its
4  motion, MGA *can* use these documents.  If the Court finds them relevant (which
5  Mattel disputes), MGA can cross examine Mr. Wagner and point out any alleged
6  discrepancies between the figures he used and Mattel's profits.  MGA should not be
7  permitted to circumvent the <u>Federal Rules</u> and this Court's Scheduling Order by
8  submitting a rebuttal to a rebuttal report under the guise of a "supplemental" report.

9       **B.**   <u>**MGA Never Sought Profit Information For Its Expert Report**</u>

10        MGA's failure to pursue production of Mattel profit documents belies
11  the sole basis for MGA's motion, namely that Mattel's delay in producing such
12  documents prejudiced MGA.  MGA points to two document requests that called for
13  Mattel profit documents.  MGA notes that Mattel objected to them.[6]  But MGA
14  never moved to compel production of the documents.  In fact, at no time did MGA
15  ever represent to this Court or to the Discovery Master that it needed Mattel profit
16  information to prepare any expert report.[7]  The Court has ruled that "[c]ounsel have

17

18      [5]   Mr. Meyer also did not mention in his initial report that he was missing
19  Mattel profit information, or that, if he had the information, it could alter his
    apportionment analysis.  Tellingly, Mr. Meyer expressly mentioned that ***different***
20  information not produced (Mattel licensing royalty rates) could alter his analysis.
    Albán Dec., Exh. 1 (Meyer Feb. Rep) at 45, n. 194.  Mr. Meyer knew how to caveat
21  his analysis for missing information.
22      [6]  Mot. at 12, n. 12, 13.
        [7]  Mattel produced the profit documents to streamline deposition testimony on a
23  <u>Rule</u> 30(b)(6) deposition topic regarding products Mattel contends were "impacted"
24  by Bratz.  Even in connection with that deposition topic, MGA never argued that it
    needed the information to apportion Bratz profits or to prepare any expert report.
25  Albán Dec., Exhs. 2 (MGA's Mot. to Compel Mattel to Produce <u>Rule</u> 30(b)(6)
26  Witnesses dated Dec. 21, 2007), 3 (MGA's Reply Re Mot. to Compel Mattel to
    Produce Rule 30(b)(6) Witnesses dated Jan. 17, 2008).  Nor are MGA's accusations
27  of Mattel's delay in producing a <u>Rule</u> 30(b)(6) witnesses well founded.  MGA
28      (footnote continued)

-3-

1 | waived any prejudice from commencing trial without completing discovery."[8] The
2 | rules do not allow sur-REBUTTAL expert reports

3 | The <u>Rules</u> require an expert to submit a report on the subject matters
4 | on which he or she expects to testify and allow a counter–party to submit a rebuttal
5 | report. <u>Fed. R. Civ. P.</u> 26(a)(2)(B), (C). That's it. Consistent with the <u>Rules</u>, the
6 | Court's Scheduling Order allowed initial expert reports and rebuttal expert reports.[9]
7 | This limitation makes sense. Otherwise, parties would no doubt submit endless
8 | rounds of rebuttals to rebuttals, each raising new opinions.

9 | MGA cites no authority for the proposition that it deserves special
10 | treatment. While some courts have allowed untimely or additional reports under
11 | exceptional circumstances (<u>see</u>, <u>e.g.</u>, <u>Internet Specialties West, Inc. v. ISPWest</u>,
12 | 2006 WL 4568796, *4 (C.D. Cal. 2006) (no opportunity to address a particular
13 | subject matter)), that is not the case here. Consistent with MGA's burden of proof ,
14 | Mr. Meyer submitted an initial apportionment analysis, and Mr. Wagner rebutted it.
15 | Mr. Wagner introduced no new subject matter.

16 | Under these circumstances, courts do not allow additional reports. <u>See</u>,
17 | <u>e.g.</u>, <u>Lindner v. Meadow Gold Dairies, Inc.</u>, 2008 WL 763236, *14 (D. Hawai'i)
18 | (<u>Rule</u> 26(e) "does not give the producing party a license to disregard discovery
19 | deadlines and to offer new opinions under the guise of the 'supplement' label."
20 |

21 | sought a deposition on this issue on September 5, 2007, but did not move to compel
 | the testimony until December 21, 2007. Mot. at 3–4, n. 15. Under the terms of the
22 | Discovery Master Stipulation, MGA could have requested a conference of counsel
 | the day Mattel objected and moved to compel within five business days. MGA
23 | instead waited more than three months. After Judge Infante ruled on MGA's motion
24 | and Mattel appealed, the parties stipulated to a stay of the <u>Rule</u> 30(b)(6) testimony
25 | pending the appeal. Albán Dec., Exh. 4 (Stip. Re Briefing Sched., ¶ 5).
 | [8] Docket No. 3950 (Court's Final Pre-Trial Conference Order For Phase 1 Trial
26 | dated June 7, 2008) at 12. Nor did MGA raise the issue in its proposals the FPTCO.
27 | <u>Id</u>; <u>see also</u> Docket No. 3694 (Not. of Lodging of FPTCO dated May 16, 2008).
 | [9] Docket No. 1104 (Oct. 31, 2007 Order Re Status Conference) at 2.
28 |

1  (quoting <u>Allgood v. Gen. Motors Corp.</u>, 2007 WL 647496, at *3 (S.D. Ind. Feb. 2,
2  2007)).  Such is the case here.  Until now, neither MGA nor Mr. Meyer ever
3  mentioned a need for Mattel profit information to undertake an apportionment
4  analysis.  MGA waited more than three months and until trial had commenced to
5  raise the issue.  MGA already waived any prejudice from not having Mattel profit
6  information to apportion damages.[10]

7  **II.   MGA CAN USE THE INFORMATION IN CROSS–EXAMINATION**

8  MGA argues that it should be permitted to submit a rebuttal expert
9  report because Mattel was allowed to submit an *initial* expert report after the Court
10  ordered the inspection of certain computer hard drives.  However, Mattel could have
11  done nothing with the hard drives without a report from a forensic expert.  Here,
12  MGA is free to use the Mattel profit information to cross examine Mattel's' damages
13  expert on his apportionment opinions.

14  **III.  MGA'S SUR-REBUTTAL REPORT WILL PREJUDICE MATTEL**

15  If MGA is permitted to submit its sur-rebuttal report, Mattel will be
16  prejudiced.  MGA will be permitted to submit a new, alternative apportionment
17  theory on an issue for which it bears the burden of proof.  Mattel will have no
18  opportunity to respond.  At a minimum, if Mr. Meyer is permitted to submit a sur–
19  rebuttal, the Court should allow Mr. Wagner to respond.

20  DATED: July 14, 2008        QUINN EMANUEL URQUHART OLIVER &
                                HEDGES, LLP

23  By /s/ _____
    Jon D. Corey
    Attorneys for Mattel, Inc.

---

27  [10]  Docket No. 3950 at 12.