```
 1  THOMAS J. NOLAN (Bar No. 66992)
    (tnolan@skadden.com)
 2  LAUREN E. AGUIAR (Admitted Pro Hac Vice)
    (laguiar@skadden.com)
 3  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    300 South Grand Avenue, Suite 3400
 4  Los Angeles, CA 90071
    Tel.: (213) 687-5000
 5  Fax: (213) 687-5600

 6  Attorneys for the MGA Parties

 7

 8              UNITED STATES DISTRICT COURT

 9              CENTRAL DISTRICT OF CALIFORNIA

10  CARTER BRYANT, an         )  CASE NO. CV 04-9049 SGL (RNBx)
    individual,                )
11                             )  Consolidated with Case No. CV 04-09039 and
                               )  Case No. CV 05-02727
12       Plaintiff,            )
                               )
13       v.                    )  REPLY IN SUPPORT OF MGA PARTIES'
                               )  MOTION FOR LEAVE TO SUBMIT PAUL K.
14  MATTEL, INC., a Delaware   )  MEYER'S SUPPLEMENTAL EXPERT
    corporation,               )  REPORT CONCERNING DISCOVERY
15                             )  RECENTLY PRODUCED BY MATTEL
                               )
16       Defendant.            )
                               )
17                             )
    AND    CONSOLIDATED        )
18  ACTIONS.                   )
                               )
19                             )
20                             )
21                             )
22                             )

23                                Date: July 21, 2008
                                  Time: 10:00 a.m.
24                                Judge: Honorable Stephen G. Larson
                                  Place: Courtroom 1
25

26

27

28
```

REPLY IN SUPPORT OF MOTION FOR LEAVE TO SUBMIT MEYER'S SUPPLEMENTAL EXPERT REPORT
CASE NO: CV 04-9049 SGL (RNBx)

## PRELIMINARY STATEMENT

Mattel's Opposition confirms that MGA should be permitted to serve Paul K. Meyer's Supplemental Expert Report because, in this Court's words, that is the only way that Mattel's late-produced discovery can be used.

### I. MATTEL CONCEDES THE FUNDAMENTAL FACTS JUSTIFYING LEAVE TO SERVE MR. MEYER'S SUPPLEMENTAL REPORT

Mattel concedes that it refused to produce its profit-margin data for seven months, resulting in a production after the start of trial.[1] It further concedes, as it must, that profit-margin data is relevant to apportionment in this case.[2] And Mattel does not dispute that MGA's damages expert, Paul Meyer, based his supplemental report on the newly produced information. Thus, there is *no dispute* as to the fundamental facts justifying leave to serve Mr. Meyer's supplemental report. On this basis alone, leave should be granted.

Mattel instead argues that Mr. Meyer's report is not a supplemental report, but rather a "sur-rebuttal." In so doing, Mattel strains to distinguish its own request for leave to serve the expert report of 42 LLC – a request this Court granted.[3] But there is no distinction. In that instance, as in this one, a party (Mattel) wanted to use new discovery produced after the deadline for filing expert reports.[4] There, as here, the new discovery was previously unavailable because the parties (Elise Cloonan and Isaac Larian) had purportedly resisted its production.[5] And there, as here, the party (Mattel) needed an expert to analyze the discovery in order to make use of it at trial.[6]

---

[1] Opp'n at 2-3, n. 3.
[2] Opp'n at 3. Indeed, Mattel even suggests use of the data in cross examining its own experts on apportionment.
[3] Opp'n at 5.
[4] Docket No. 3945 (Mot. for Leave to Submit Expert Reports of 42 LLC, dated June 9, 2008) at 1. ("By the time Mattel got access to the drives, the time to exchange expert reports had passed.")
[5] *Id.* at 2.
[6] *Id.* at 4.

In that context, the Court advised the parties: "There's not much point, obviously, in ordering discovery produced if the discovery cannot be used."[7] Mattel agreed.[8] Consistent with the Court's guidance, MGA did not seek to prohibit Mattel from using the information; rather, MGA arranged to address it substantively.

## II. MR. MEYER'S SUPPLEMENTAL REPORT DIRECTLY SUPPORTS HIS INITIAL OPINIONS RELATING TO DEDUCTIBLE COSTS AND APPORTIONMENT

Mattel contends that Mr. Meyer's supplemental report has "nothing to do with" his initial report because the former lacked an apportionment methodology rooted in Mattel's profit margin data. Thus, Mattel argues, Mr. Meyer's supplemental report is not "supplemental" but "sur-rebuttal."[9] But Mr. Meyer *could not have* designed an apportionment approach based on Mattel's fashion-doll profits because Mattel itself deprived MGA of the very information needed to conduct the analysis. Mattel here faults Mr. Meyer for failing to perform the impossible. Had Mattel not delayed its production of the financial data, Mr. Meyer could have fashioned the data into an independent apportionment analysis, if he had deemed such an analysis appropriate. Given the lateness of Mattel's production, however,

---

[7] 6/6/2008 Hr'g Tr. 1761:18-19.

[8] Even before Mattel sought leave to submit the 42 LLC Report, the Court foresaw the need for supplemental reports from experts. Recognizing that the Discovery Master may compel discovery after the expert report deadline, the Court advised, on February 4, 2008: "I will *certainly* give any party leave to come back to court after a ruling by Judge Infante that apparently has an effect or is making the scheduling order unmanageable or needs relief to file a supplement expert report, or whatever it may be." 2/4/2008 Hr'g Tr. 80:22-81:1 (emphasis added). That is precisely the case here. The Discovery Master ordered Mattel to produce a corporate designee on the subject of Mattel's product margins on April 11, 2008. Mattel appealed that ruling before this Court; and the Court denied Mattel's appeal on May 12, 2008. Now, finally in possession of the profit-margin data, MGA seeks permission for Mr. Meyer to opine based upon it.

[8] 6/6/2008 Hr'g Tr. 1761:20-22.

[9] Opp'n at 2.

Mr. Meyer could only perform an abbreviated analysis based on Mr. Wagner's apportionment framework.

In any event, Mr. Meyer's supplemental report directly supports his initial opinions, and does so in at least two ways. <u>First</u>, the supplemental report buttresses Mr. Meyer's initial allocation of deductible costs. As part of his initial report, Mr. Meyer identified expenses that contribute to Bratz sales and then allocated those expenses to various Bratz products. Mr. Meyer found support for both the identification and allocation of expenses in Mattel's newly produced financial documents. As Mr. Meyer explains, he "studied information provided by Mr. Kerner regarding Barbie costs" and determined that Mattel allocates costs in a manner consistent with his initial approach.[10] <u>Second</u>, the supplemental report validates Mr. Meyer's initial calculation of apportionment percentages. To test his initial results, Mr. Meyer applied the new financial data to Mr. Wagner's "normal industry profits" apportionment framework. Mr. Meyer found that Mr. Wagner's framework (once correctly applied to Mattel's fashion-doll profit margins) supports an apportionment range consistent with Mr. Meyer's initial findings. Thus, Mr. Meyer concluded that "the information produced at Mr. Kerner's deposition supports my opinions regarding deductible costs and apportionment."[11]

Mattel next contends that MGA never conveyed its intention to provide profit-margin data to its damages experts.[12] On that basis, Mattel argues that even if it had produced the profit-margin data in a timely fashion, Mr. Meyer would not have used the data.[13] Mattel even goes so far as to suggest its discovery delays were excusable because MGA purportedly did not "represent" that it "needed profit information to

---

[10] Weinstein Decl. Ex. F (Meyer Supplemental Report) at ¶¶ 12-14.
[11] *Id.* ¶ 7.
[12] Opp'n at 3 & n.7.
[13] Opp'n at 3, n.5.

prepare any expert report."[14] This argument is absurd. MGA need not apprise its adversary of the intended uses of discovery. And, in any event, the discovery requests themselves refute Mattel's claim. For example, MGA's 30(b)(6) notice makes clear that MGA sought discovery on *damages issues*.[15] Moreover, Mr. Meyer's reports placed Mattel on notice of his intent to supplement his conclusions based on new discovery.[16] Thus, not only was Mr. Meyer's use of the late-produced discovery justified, it should have been anticipated by Mattel.

### III. MGA CANNOT MEANINGFULLY "USE" THE LATE DISCOVERY ABSENT EXPERT ANALYSIS AND TESTIMONY

Finally, Mattel argues that its late production of the profit-margin data has not prejudiced MGA because MGA is purportedly "free to use it" in cross-examining Mr. Wagner.[17] But only expert analysis can elucidate the import of the data. Mr. Wagner obviously cannot enlighten the jury on the data's significance because he has never seen it. And, as a practical matter, Mr. Wagner cannot be asked on the witness stand to conduct the analysis necessary to render the data meaningful to the jury. Of course, MGA can cross-examine Mr. Wagner on his failure to compare Bratz margins to Mattel's own fashion-doll margins. But such an examination does not convey the importance of the data or the significance of Mr. Wagner's omission. Nor does it require use of Mattel's profit-margin data at all. The only way to communicate the data's meaning is to elicit the expert testimony disclosed in Mr.

---

[14] Opp'n at 3.
[15] *See, e.g.,* Weinstein Decl. Ex. I (MGA's Rule 30(b)(6) Notice of Deposition of Mattel) at A18 (Topic No. 28) (calling for "[t]he identity of, and the sales, revenues, and profits of, any MATTEL product(s) MATTEL contends have been impacted by BRATZ …")
[16] *See, e.g.,* Alban Decl. Ex. 1 (Meyer Feb. 11, 2008 Report) at ¶ 8 ("I understand that a substantial amount of fact discovery has not been completed. Given the outstanding discovery, my opinions and conclusions may be supplemented, amended or revised.")
[17] MGA's supposed "freedom" to cross-examine Mr. Wagner based on the profit-margin data is dubious. Among other reasons, Mattel admits that it plans to raise relevance objections to the evidence. Opp'n at 3.

Meyer's supplemental report. Absent that testimony, the data are simply cryptic numbers spread across a variety of documents.

When it served its purposes, Mattel advanced a similar argument in seeking leave to file its 42 LLC report.[18] Just as Mattel required expert testimony from 42 LLC to "explain" certain electronic media, so too does MGA require expert testimony to use Mattel's data in any meaningful way. To hold otherwise would be to reward Mattel for its deliberate foot-dragging in discovery. And, more importantly, it would serve to shield critical evidence from the finders of fact.

## IV. **MATTEL WOULD NOT BE PREJUDICED**

MGA provided Mattel with Mr. Meyer's supplemental report on July 1.[19] Mattel has therefore had the report for more than two weeks. In that time, the parties could have agreed on a protocol whereby Mattel could address Mr. Meyer's supplemental opinions. Instead, Mattel elected to rebuff MGA's efforts to reach a stipulation,[20] forcing MGA to seek the Court's intervention. Any prejudice Mattel suffers, therefore, is suffered as a consequence of its own actions.

DATED: July 17, 2008

        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

        By: /s/ Thomas J. Nolan
            Thomas J. Nolan
            Attorneys for the MGA Parties

---

[18] Docket No. 3945 at 4. ("There would be no point in allowing Mattel to inspect the drives ... without allowing Mattel leave to file the Reports explaining those inspections.")
[19] Weinstein Decl. Ex. G (E-mail from Weinstein to Corey, dated July 1, 2008).
[20] Weinstein Decl. Ex. H (E-mail from Corey to Roth, et al., dated July 3, 2008).