THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Tel.: (213) 687-5000/Fax: (213) 687-5600

RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, Suite 3800
San Francisco, CA 94111-5974
Tel.: (415) 984-2698 / Fax: (415) 984-2626

Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
MGAE de Mexico, S.R.L. DE C.V., and Isaac Larian

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>       Plaintiff,<br><br>      v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>       Defendant.<br><br>AND CONSOLIDATED ACTIONS. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>Honorable Stephen G. Larson<br>[PUBLIC REDACTED]<br><br>(1) DEFENDANTS' NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 7 TO EXCLUDE ALL REFERENCES TO AND USE OF CERTAIN "EXPERT" TESTIMONY PROFFERED BY MATTEL WITNESS MICHAEL J. WAGNER;<br><br>(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;<br><br>**FILED UNDER SEPARATE COVER:**<br><br>(3) DECLARATION OF JASON D. RUSSELL IN SUPPORT THEREOF;<br>(4) PROPOSED ORDER; and<br>(5) PROOF OF SERVICE.<br><br>Hearing Date: May 21, 2008, 1:00 p.m. |

1 | **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2 |     **PLEASE TAKE NOTICE** that on May 21, 2008 at 1:00 pm, or as soon

3 | thereafter as may be heard, by the Honorable Stephen G. Larson in the above-referenced

4 | court located at 3470 Twelfth St., Riverside, California 92501, Defendants MGA

5 | Entertainment, Inc., Isaac Larian, and MGA Entertainment (HK) Limited (collectively,

6 | the "MGA Parties") and Carter Bryant will, and hereby do, move this Court *in limine*

7 | for an order to exclude from trial all references to and use of the "expert" testimony

8 | from Mattel's witness Michael Wagner regarding the "benefits" that he opines that Isaac

9 | Larian received from MGA's alleged infringement of Carter Bryant's BRATZ drawings.

10 |     This Motion is made pursuant to Federal Rules of Evidence 401, 402, 403 and

11 | 702 on the ground that: The "expert" testimony from Mattel's witness Michael Wagner

12 | regarding the "benefits" that he opines that Isaac Larian received from MGA's alleged

13 | infringement of Carter Bryant's BRATZ drawings should be excluded. In addition, Mr.

14 | Wagner's analysis concerning Bryant should be precluded on the grounds that: 1) that

15 | Wagner makes no effort to the tie Mr. Bryant's royalties to any specific acts of alleged

16 | infringement by Bryant; and 2) Wagner's simplistic approach is misleading because

17 | Bryant's compensation from MGA reflects is ongoing work for MGA, not just the initial

18 | transfer of the BRATZ concept.

19 |     This Motion *in limine* is based upon this Notice of Motion and accompanying

20 | Memorandum of Points and Authorities, the Declaration of Jason D. Russell filed

21 | concurrently under separate cover, the records and files of this court, and any other

22 | matter of which the court may take judicial notice. This Motion is made following the

23 | conference of counsel pursuant to Local Rule 7-3, which took place on April 4, 2008.

24 | DATED: April 14, 2008      SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

25 |

26 |     By: _____

27 |                Jason D. Russell
           Attorneys for the MGA Parties

28 |

Defendants' Motion *in limine* No. 7 to Exclude Reference to and Use of Portions Of Expert Testimony of Michael J. Wagner – Case No. CV 04-9049 SGL (RNBx)

- i –

# TABLE OF CONTENTS

**Page:**

PRELIMINARY STATEMENT ............................................................................. 1

FACTUAL BACKGROUND.................................................................................. 2

ARGUMENT........................................................................................................... 6

    A.    Mr. Wagner's "Opinions" Are Irrelevant Because All Claims Against Mr. Larian Are Time-Barred by the Applicable Statute of Limitations ........................................................................................ 6

    B.    Even if Not Rendered Irrelevant by The Applicable Statute of Limitations, Mr. Wagner's Proffered "Opinions" Regarding Benefits to Mr. Larian Constitute Improper Expert Testimony And Should Be Excluded ............................................................................................ 7

        1.    The Court Has Broad Discretion To Exclude Irrelevant Or Speculative Expert Testimony That Is Unhelpful to the Trier of Fact.................................................................................... 7

        2.    Mr. Wagner's "Opinions" Regarding "Benefits" to Mr. Larian Are Irrelevant, Speculative and Likely to Confuse the Jury ...... 8

    C.    Mr. Wagner's Proffered "Opinions" Regarding Indirect Profits, Which Depend Wholesale on Carol Scott's Flawed Analysis, Should Also Be Excluded ....................................................................... 15

    D.    The Court Also Should Bar Any Testimony From or Evidence Created by Michael Wagner Reflecting Royalty Payments Made to Carter Bryant........................................................................................ 17

        1.    Wagner's Opinion Is Unhelpful And Misleading To The Jury Because Wagner Makes No Effort To Tie The Royalties To Any Specific Acts Of Alleged Infringement By Bryant. ......... 17

        2.    Wagner's Improperly Simplistic Approach Is Especially Misleading And Prejudicial Here, Because Bryant's Compensation From MGA Depends On His Ongoing Work, Not The Initial Transfer Of His Bratz Idea. ............................. 19

CONCLUSION ....................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Bourjaily v. United States,
  483 U.S. 171 (1987).................................................................................. 7

Breffort v. I Had a Ball Co.,
  271 F. Supp. 623 (S.D.N.Y. 1967) ......................................................... 18

Burns v. Imagine Films Entertainment, Inc.,
  92-CV-2435, 2001 WL 34059379 (W.D.N.Y. Aug. 23, 2001)................... 12

Business Trends Analysts, Inc. v. Freedonia Group, Inc.,
  887 F.2d 399 (2d Cir. 1989).................................................................. 8, 9

Daubert v. Merrell Dow Pharmaceuticals., Inc.,
  509 U.S. 579 (1993)............................................................................ 7, 8

Daubert v. Merrell Dow Pharmaceuticals., Inc.,
  43 F. 3d 1311 (9th Cir. 1995) ................................................................ 16

Domingo ex rel. Domingo v. T.K.,
  289 F.3d 600 (9th Cir. 2002) ................................................................. 11

Dorn v. Burlington Northern Santa Fe Railroad Co.,
  397 F.3d 1183 (9th Cir. 2005) ............................................................... 10

Emtec, Inc. v. Condor Technology Solutions, Inc.,
  No. Civ. A 97-6652, 1999 WL 286474 (E.D. Pa. May 5, 1999)........... 10, 14

Fonovisa, Inc. v. Cherry Auction, Inc.,
  76 F.3d 259 (9th Cir. 1996) ................................................................... 18

Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,
  886 F.2d 1545 (9th Cir. 1989) .............................................................. 9, 14

General Electric Co. v. Joiner,
  522 U.S. 136 (1987)............................................................................ 7, 11

Heller v. Shaw Industries, Inc.,
  167 F.3d 146 (3d Cir. 1999).................................................................. 15

Kumho Tire Co. v. Carmichael,
  526 U.S. 137 (1999).............................................................................. 7

Lanphere Enterprises, Inc. v. Jiffy Lube International, Inc.,
  138 Fed. Appx. 20 (9th Cir. 2005)......................................................... 11

Maryland Casualty Co. v. Therm-O-Disc, Inc.,
  137 F.3d 780 (4th Cir. 1998) ............................................................. 7

McGraw-Hill Inc. v. Worth Publishers, Inc.,
  335 F. Supp. 415 (S.D.N.Y. 1971) ..................................................... 18

Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,
  545 U.S. 913 (2005)........................................................................... 18

Roy Expert Co. Establishment v. Columbia Broadcasting System, Inc.,
  503 F. Supp. 1137 (S.D.N.Y 1980), aff'd, 672 F. 2d 1095 (1982)............ 8, 9

United States v. Espinosa,
  827 F. 2d 604 (9th Cir. 1987) ............................................................ 7

United States v. Hankey,
  203 F.3d 1160 (9th Cir. 2000) ........................................................... 7

United States v. Soto,
  1 F.3d 920 (9th Cir. 1993) ................................................................. 6

United States v. Verduzco,
  373 F.3d 1022 (9th Cir. 2004) ........................................................... 8

**Statutes**

17 U.S.C.§ 106 ...................................................................................... 18

17 U.S.C. § 501 ..................................................................................... 18

17 U.S.C. § 504(b)........................................................................ 2, 8, 12, 14

**Other Authorities**

29 Wright & Gold, Federal Practice & Procedure § 6264 (2008) .............. 11

4 Weinstein's Federal Evidence § 702.05[2][a] ...................................... 15

Nimmer on Copyright § 12.04[A][1]] ..................................................... 18

**Rules**

Fed. R. Evid. 401 ............................................................................... 6, 7

Fed. R. Evid. 402 ........................................................................... 6, 7, 17

Fed. R. Evid. 403 .......................................................................... 7, 14, 18

Fed. R. Evid. 702 ............................................................................. passim

## PRELIMINARY STATEMENT

The MGA Parties bring this Motion *in limine* pursuant to Federal Rules of Evidence 401, 402, 403 and 702 to exclude from trial all references to and use of the "expert" testimony from Mattel's witness Michael Wagner regarding the "benefits" that he opines that Isaac Larian received from MGA's alleged infringement of Carter Bryant's BRATZ drawings.

At its core, this is a copyright case. Should MGA be found liable, it must pay the profits from the sale of BRATZ dolls attributable to its infringement of Carter Bryant's drawings.[1] That is, the trier of fact should first determine the profits earned by MGA from the sale of BRATZ dolls, and then apportion those profits attributable to MGA's infringement. Doing so could result in a damage figure potentially in the tens of millions of dollars – quite a "profit" from a satchel of drawings that, it is beyond dispute, were not prepared for Mattel's use.

True to form, Mattel's damages theories reflect a massive overreach. Tens of millions in MGA profits apparently is not enough; Mattel, through Mr. Wagner, seeks hundreds of millions more in distributions of these same profits from MGA to Isaac Larian, one of MGA's owners. Mattel does not stop there. It also seeks nearly $1 billion in future damages by quantifying the future value of the BRATZ product line to Mr. Larian based on the line's assumed future profitability. But Mattel and its expert fail to take into account the fact that a liability finding, a necessary predicate to proceeding with this damage theory, will undermine if not completely destroy any opportunity for Mr. Larian to earn those profits. Moreover, Mattel's demand that Mr. Larian disgorge now the present value of his future ownership of the BRATZ product

---

[1]     As the Court is no doubt aware, the MGA Parties and Mr. Bryant deny: (1) that Mattel has any ownership right in Mr. Bryant's drawings, which Mr. Bryant conveyed to MGA pursuant to a September 18, 2000 contract; or (2) that the BRATZ fashion dolls infringe on Mr. Bryant's drawings.

Defendants' Motion *in limine* No. 7 to Exclude Reference to and Use of Portions Of Expert Testimony of Michael J. Wagner – Case No. CV 04-9049 SGL (RNBx)

- 1 –

1  line is duplicative of its request for injunctive relief and/or a reasonable royalty going

2  forward.

3      In short, Mr. Wagner's theory cannot be supported by logic, much less any

4  viable damages theory. Accordingly, it must not be admitted by this Court.

5      Finally, Carter Bryant also moves to preclude Mr. Wagner's testimony relating

6  to the alleged damages attributable to Bryant. As shown below, Mr. Wagner's analsyis,

7  to the extent there is any, focuses exclusively on the royalties paid by MGA to Mr.

8  Bryant. That analysis should be precluded on the grounds that: 1) Wagner makes no

9  effort to the tie Mr. Bryant's royalties to any specific acts of alleged infringement by

10  Bryant; and 2) Wagner's simplistic approach is misleading because Bryant's

11  compensation from MGA reflects ongoing work for MGA, not just the initial transfer

12  of the BRATZ concept.

13

## FACTUAL BACKGROUND

14      Mattel has proffered the expert opinion of Michael Wagner[2] to support its

15  demand for four types of overlapping and duplicative damages.[3] The Copyright Act

16  provides for an award of actual "profits" that are "attributable to the infringement." 17

17  U.S.C. § 504(b). Hence, first, Mattel seeks approximately $234 million in profits

18  generated by the sale of the BRATZ core fashion dolls – dolls that Mattel claims

19  infringe on Carter Bryant's drawings. (See Ex. 42 (Expert Report of Michael J.

20  Wagner, dated February 11, 2008 ("Wagner Rpt.") at Tab B1, Schedules 1.1a – 1.1g.)

21      Not content to stop with the BRATZ core fashion dolls, Mattel – second – seeks

22  approximately $366 million (id.) in damages reflecting the profits generated by the sale

23

24  [2]    Mr. Wagner is a certified public accountant and a licensed attorney in the State of California. He serves as senior consultant to CRA International, a litigation consulting firm.

25  (See Ex. 42 Curriculum Vitae of Michael J. Wagner, attached as Tab C to Mr. Wagner's initial expert report ("Wagner CV").) All "Ex.   " references herein are to documents

26  submitted with Declaration of Jason D. Russell dated April 14, 2008 unless otherwise noted.

[3]    Mr. Wagner disclaims expertise in the toy industry. (See Ex. 44 (Deposition of

27  Michael J. Wagner, dated March 21, 2008 ("Wagner") at 147:1-18.) Ms. Scott has offered two expert opinions in toy cases, but none in the fashion doll market.

28

1   of other BRATZ-branded merchandise; i.e., products that do not infringe on Mr.

2   Bryant's drawings, including everything from key chains, tattoos, and toothpaste to

3   BRATZ pets, pillows, lamps, alarm clocks and bicycles. The MGA Parties have

4   shown, in their Motion in limine No. 10 and below, that neither Mr. Wagner nor Ms.

5   Scott demonstrate that MGA's alleged infringement of Mr. Bryant's drawings resulted

6   in the generation of the profits that Mattel seeks. Accordingly, both Mr. Wagner and

7   Ms. Scott opinions regarding any such damages should not be admitted into evidence.

8        Third, Mattel seeks approximately $250 million in "damages" reflecting the

9   distribution of a portion of MGA's profits to Mr. Larian. (Ex. 42 (Wagner Rpt.) at

10   21.)[4] Such distributions are framed by Mattel as "benefits" received by Mr. Larian as a

11   result of MGA's supposed infringement (see Ex. 42 (Wagner Rpt.) at 11-21) in excess

12   of Mr. Larian's MGA-related tax obligations. (See Ex. 42 (Wagner Rpt.) at 20-21.)

13   Mattel and Mr. Wagner openly concede that these "distributions" are the same profits

14   generated by the sale of BRATZ dolls and all other BRATZ-branded merchandise.

15   (Ex. 44 (Wagner) at 132:13-133:3.) Mattel is double counting.

16        Actually, Mattel is triple counting. The fourth category of "damages" that

17   Mattel seeks is approximately $773 million in additional "benefits" that Mr. Larian has

18   received in the form of the supposed value of Mr. Larian's ownership interest in a

19   hypothetical asset, best characterized as the BRATZ product line.[5] To support his

20   guess, Mr. Wagner took a look at the profits generated by the BRATZ product line

21   over time, projected those profits into the future and then came up with a present value

22

23

---

24   [4]    MGA is a sub-chapter S corporation, which is owned by (1) trusts controlled by Isaac

25   Larian and his wife; and (2) trusts controlled by the Makabi family. (See Ex. 45 (Tonnu) at 816:8-24.)

26   [5]    More specifically, Mr. Wagner first values the BRATZ product line's portion of MGA's revenues and profits and then discounts that to account for Mr. Larian's percentage

27   interest in the company. (See Ex. 42 (Wagner Rpt.) at 12, Figure 5.) For ease of reference, this will be referred to as Mr. Larian's share of the BRATZ product line.

28

1  estimation of the value of that line.[6]  Mr. Wagner then goosed up that valuation by

2  about $190 million by:  (1) comparing the BRATZ product line to a variety of fully

3  diversified, publicly traded toy companies[7] and (2) transactions involving fully

4  diversified companies (some of which sold toys).[8]  It should go without saying that Mr.

5  Larian's share of the BRATZ product line is not a separately identified asset, has never

6  been separately valued, and could not be separately sold.

7      Plainly, the value of this hypothetical asset, to the extent it can be measured at

8  all, is premised on its previous profitability, which is then projected into the future.[9]

9  Thus, past profits are in essence being counted a third time.[10]  As an inchoate,

10  expectation of future value, any damages theory premised on the future profitability of

11  Mr. Larian's interest in the BRATZ product line must take into account the affect of a

12  liability finding in this case.  Mr. Larian has not realized any of this abstract

13

14

---

[6]     See Ex. 42 (Wagner Rpt.) at 13-17. Each of Mr. Wagner's methods is based (either explicitly or implicitly) on a projection of the "present value" of future cash flows resulting from sales of BRATZ dolls and BRATZ-branded merchandise.  As such, each estimate assumes certain facts regarding the state of the BRATZ franchise well into the future. In the first method, which Mr. Wagner terms the "Income Approach," Mr. Wagner explicitly forecasts BRATZ and BRATZ-related income into 2010, and then adopts assumptions about the growth of those profits into perpetuity. In applying his second method, Mr. Wagner relies on implicit market forecasts of future cash flows associated with large, public companies, including Mattel, and applies those forecasts to BRATZ-related profits. (See Ex. 42 (Wagner Rpt.) at 18-19 and Tab B2, Schedule 4.0.)

[7]     These companies include Mattel, Hasbro, Marvel Entertainment, and JAAKS Pacific. (See Ex. 42 (Wagner Rpt.) at Tab B2, Schedule 4.1.)  Mr. Wagner's so-called "comparable company analysis" looks to the market's expectations for future profits of these other companies, expressed as a "multiple" to the companies' reported 2006 earnings. Mr. Wagner then applies the calculated company multiples to MGA to generate an "implied" value for the BRATZ product line.

[8]     Mr. Wagner calculates a median value for 25 transactions. (See Ex. 42 (Wagner Rpt.) at Tab B2, Schedule 5.0.)  These transactions include JAAKS Pacific's acquisition of Playalong and Toymax, and Mattel's acquisition of Radica Games.

[9]     Ex. 44 (Wagner at 134:1-19; Ex. 42 (Wagner Rpt.) at Schedule 10 (projected future profits from historical profits).)

[10]     Mr. Wagner did not calculate secondary benefits that Mr. Larian may have a received as a result of his ownership interest in the BRATZ product line, such as the ability to receive favorable financing terms, loans on assets, and so forth.  (See generally Ex. 42 (Wagner Rpt.).)

---

1   appreciation[11] and his ability to capitalize on that opportunity would be severely

2   damaged, if not destroyed, by a liability finding in this case.  Such a finding is, of

3   course, a predicate to any Mattel damages theory.  Mr. Wagner has made no effort to

4   measure the affect of a finding that BRATZ dolls infringe on Mattel-owned intellectual

5   property would have on the value of Mr. Larian's ownership interest in the BRATZ

6   product line.[12]

7        For the same reasons, Mattel's demand that Mr. Larian disgorge now the present

8   value of his future ownership of the BRATZ product line is duplicative of its request

9   for injunctive relief and/or a reasonable royalty going forward.  In its counterclaims

10  against MGA, Mattel apparently intends to enjoin MGA should it prevail on its

11  copyright infringement claim.  (See SAA ¶ 87.)  Additionally, Mattel suggests it may

12  seek a 'reasonable royalty' as an alternative to an injunction.  (See Ex. 46 (Mattel's

13  Supplemental Responses and Objections to MGA's First Set of Interrogatories) at 99.)

14  The present value of Mr. Larian's interest in the BRATZ product line is far from an

15  accurate measurement of any such reasonable royalty.  There is no effort, for instance,

16  to look at comparable monthly rates.  Nor has Mr. Wagner made an attempt to measure

17  the value of Mr. Bryant's drawings to MGA.

18       In any event, Mattel cannot seek to disgorge the supposed value of Mr. Larian's

19  ownership of the BRATZ product line based on that line's future profitability while, at

20  the same time, seeking to either:  (1) stop MGA from generating any profits by

21  enjoining the sale of BRATZ products; or (2) reducing or eliminating the profits from

22  those sales by claiming some form of royalty on any such sales.

---

11      If Mr. Larian had, in fact, conveyed some or all of his interests in the BRATZ product line, the value he received in exchange would, of course, be the precise measure of Mr. Wagner's valuation of that interest.  But, instead of offering such a precise formulation, because there has been no such transaction, Mr. Wagner attempts to define the present value of Mr. Larian's share of the BRATZ product line.

12      Mr. Wagner claims that he has not presented a future damages theory.  But his BRATZ product line valuation is nothing more than a present value of future profitability checked against allegedly comparable companies and transactions.

1    Lastly, in addition to calculating purported "benefit" to Mr. Larian, Mr. Wagner

2  also estimates profits earned on sales on a wide range BRATZ dolls and BRATZ-

3  branded merchandise.  In undertaking this analysis, Mr. Wagner included all BRATZ-

4  related stock-keeping units ("SKUs") without regard to whether the particular units are

5  alleged to have infringed on Mattel's intellectual property.  (Ex. 44 (Wagner) at 27:22-

6  28:3.)   Here again, Mr. Wagner offers no opinion on whether MGA's alleged

7  infringement of Mr. Bryant's drawings resulted in the sale and profitability of any

8  BRATZ product, whether it be a fashion doll or BRATZ-branded merchandise.  He has

9  left that issue entirely to Ms. Scott.

10                                **ARGUMENT**

11   A.    **Mr. Wagner's "Opinions" Are Irrelevant Because All Claims**
          **Against Mr. Larian Are Time-Barred by the Applicable Statute of**
12        **Limitations**

13     As an initial matter, Mr. Wagner's opinions relating to Mr. Larian's purported

14  "benefits" are irrelevant because there can be no finding of liability as against Mr.

15  Larian:   all claims against Mr. Larian are time-barred by the applicable statute of

16  limitations.  (See MGA MSJ at 15-34.)  As demonstrated in MGA's Motion for Partial

17  Summary Judgment, the claims against Mr. Larian are stale because they do not (and

18  cannot) relate back to Mattel's filing of its initial complaint in 2004.[13] Thus, Mr.

19  Wagner's opinions are not "of consequence to the determination of the action" and are

20  therefore inadmissible.  See Fed. R. Evid. 401; Fed. R. Evid. 402; United States v. Soto,

21  1 F. 3d 920, 923 (9th Cir. 1993); see also Fed. R. Evid 702 (requiring that expert

22  testimony "assist the trier of fact to understand the evidence or to determine a fact in

23  issue.").

24

25

26

27  [13]   There are a variety of additional infirmities in Mattel's claims against Mr. Larian
        spelled out in MGA's summary judgment papers.

28

**B.** **Even if Not Rendered Irrelevant by The Applicable Statute of Limitations, Mr. Wagner's Proffered "Opinions" Regarding Benefits to Mr. Larian Constitute Improper Expert Testimony And Should Be Excluded**

    **1.** **The Court Has Broad Discretion To Exclude Irrelevant Or Speculative Expert Testimony That Is Unhelpful to the Trier of Fact**

Mattel bears the burden of proving by a preponderance of the evidence that the proffered expert testimony meets the standards of admissibility for expert testimony, including relevance, reliability and helpfulness to the trier of fact. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); Bourjaily v. United States, 483 U.S. 171, 171-172 (1987); Maryland Cas. Co. v. Therm-O-Disc, Inc., 137 F.3d 780, 783 (4th Cir. 1998). The Court has broad discretion in deciding whether to exclude or admit expert testimony where that burden is not met. Gen. Elec. Co. v. Joiner, 522 U.S. 136, 142 (1987); United States v. Espinosa, 827 F. 2d 604, 611 (9th Cir. 1987) ("The decision to admit expert testimony is committed to the discretion of the district court and will not be disturbed unless manifestly erroneous.").

The Court's discretion is guided by the Supreme Court's ruling in Daubert, which requires the trial court to serve as a "gatekeeper" to exclude the admission of unreliable expert testimony. 509 U.S. at 597; see also Fed. R. Evid. 702, Committee Notes on 2000 Amendment. The Court's "gatekeeper" function extends to admission of all expert testimony; it is not limited to "scientific" opinions. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-150 (1999) (holding that Daubert gate-keeping function extends to all proffered expert testimony); accord United States v. Hankey, 203 F. 3d 1160, 1168-70 (9th Cir. 2000).

To be admissible, expert testimony must be relevant under Rules 401 and 402. See, e.g., Daubert, 509 U.S. at 587-89 (holding that trial judge must assure that proffered testimony is relevant under Fed. R. Evid. 401 and Fed. R. Evid. 402). Additionally, expert testimony, like all other evidence, may be excluded under Rule 403 if it would confuse or mislead the trier of fact or if its probative value is

1  substantially outweighed by the danger of unfair prejudice.  See Fed. R. Evid 403;

2  United States v. Verduzco, 373 F.3d 1022, 1033-1034 (9th Cir. 2004) (upholding trial

3  court's ruling to exclude prejudicial expert testimony under Rule 403).[14]

4      The Court may also exclude irrelevant expert testimony under Rule 702, which

5  requires that expert opinion offer "assistance to the trier of fact."  Fed. R. Evid. 702.

6  As the Supreme Court noted, Rule 702's assistance standard "goes primarily to

7  relevance." Daubert, 509 U.S. at 591.  But Rule 702's assistance standard goes beyond

8  mere relevance; it further requires that the proffered testimony have a valid connection

9  to the "pertinent inquiry."   See id., at 591-92 ("Rule 702's 'helpfulness' standard

10  requires a valid scientific connection to the pertinent inquiry as a precondition to

11  admissibility.")  This requirement is "aptly described ... as one of 'fit'." Id. at 591

      2.    **Mr. Wagner's "Opinions" Regarding "Benefits" to Mr. Larian Are Irrelevant, Speculative and Likely to Confuse the Jury**

         (a)    **Mr. Wagner's "Opinions" Are Irrelevant Because Potential "Benefit" to A Co-Defendant Is Not A Cognizable Measure of Damages Under the Copyright Act.**

16      The  Copyright  Act  provides  for  an  award  of  actual  "profits"  that  are

17  "attributable to the infringement." 17 U.S.C. § 504(b) .  It does not contemplate the

18  award of intangible, hypothetical "benefits" – particularly those never realized, or even

19  realizable by the defendant. Id.  For this reason, courts most often reject claims for

20  intangible or unrealized "benefits" as "too remote" or "too speculative." See, e.g.,

21  Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 886 F.2d 1545, 1554 (9th Cir.

22  1989) (denying recovery based on increase in stock price of infringer); Roy Expert Co.

23  Establishment v. Columbia Broad. Sys., Inc., 503 F. Supp. 1137, 1156-57 (S.D.N.Y

---

[14]  In fact, district courts enjoy greater discretion to exclude key expert testimony under Rule 403 than to exclude other forms of evidence.  Daubert, 509 U.S. at 595 ("'Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.'" (citation omitted).

1  1980) (rejecting claim for infringer's benefits of increased goodwill, stature and
2  prestige); see also Business Trends Analysts, Inc. v. Freedonia Group, Inc., 887 F.2d
3  399, 406-7 (2d Cir. 1989) (rejecting claim for infringer's benefits of "enhanced good
4  will or market recognition").

5      For example, in Columbia Broadcasting Systems, the plaintiffs, owners of
6  copyrights in certain Charlie Chaplin films, sued the CBS network, which had
7  broadcast a compilation of 11 scenes from the films following Chaplin's death. 503 F.
8  Supp. at 1141-43.  After a jury found CBS liable for copyright infringement, the
9  plaintiffs, as here, sought additional damages based on intangible "benefits" to the
10 defendant.  In that case, the intangible benefits claimed by the plaintiffs included
11 "increased audience," "goodwill with [CBS'] affiliates" and "increased stature and
12 prestige vis a vis [CBS'] competitors." Id. at 1156-57. The Court rejected plaintiffs'
13 claim for additional damages based on these benefits because any "profits" attributable
14 to the intangible benefits "cannot be 'actually ascertained'." Id. at 1156 (emphasis
15 added).

16     Likewise, in Frank Music, the plaintiffs sought copyright damages from MGM,
17 a parent company whose hotel subsidiary staged an infringing musical revue. 886 F.2d
18 at 1547-48. In that case, like the present one, the copyright owner sought an additional
19 award on top of the infringer's direct profits.  Nonetheless, though the court
20 acknowledged that while MGM may have reaped some benefit from the infringement,
21 including "a rise in stock value," it found any such benefit "too speculative" to justify
22 an additional damages award. Id. at 1553-54.

23     Similarly, in Business Trends Analysts, the Second Circuit considered and then
24 rejected a copyright damages claim based on an intangible benefit – namely, the
25 "enhanced good will or market recognition" enjoyed by the infringing publisher. 887
26 F.2d at 406-7. Here again, the court rejected the damages claim because the plaintiffs
27 adduced insufficient evidence "allowing for an assessment of the value" that the
28

1 | defendant <u>actually received</u> from the infringement.  <u>Id.</u> at 407.  In so ruling, the court
2 | noted that the language of the Copyright Act "clearly indicates that Congress means
3 | 'profits' in the lay sense of gross revenue less out-of-pocket costs," as opposed to
4 | hypothetical measures of value.  <u>Id.</u> at 406-407.

5 |      Nevertheless, through Mr. Wagner, Mattel proffers "evidence" of hypothetical,
6 | intangible benefits that purportedly accrued to Mr. Larian.  (Ex. 42 (Wagner Rpt.) at
7 | 11-20.)   According to Mr. Wagner, these intangible benefits take the form of
8 | unrealized gains in the estimated value of Mr. Larian's holdings (<u>see id.</u>), which (as
9 | explained below) Mr. Wagner calculates based on a flawed estimate of projected future
10 | income streams from BRATZ dolls and other merchandise.

11 |

                     **REDACTED**         (See

12 | Ex. 42 (Wagner Rpt.) at 12 (                                    ly

13 |

14 |                                         (See Ex. 42 (Wagner Rpt.) at
15 | 11, Figure 4).)

16 |      This novel theory of damages is outside the scope of permissible damages under
17 | the Copyright Act.  As such, it represents inadmissible expert opinion.  <u>See</u> <u>Dorn v.</u>
18 | <u>Burlington N. Santa Fe R.R. Co.</u>, 397 F.3d 1183, 1194 (9th Cir. 2005) (holding that the
19 | admissibility of expert testimony relating to damages depends upon the permissibility
20 | of those damages under the law); <u>accord</u> <u>Emtec, Inc. v. Condor Technology Solutions,</u>
21 | <u>Inc.</u>, No. Civ. A 97-6652, 1999 WL 286474, at 4 (E.D. Pa. May 5, 1999) (where an
22 | expert's testimony concerns the calculation of a particular remedy, the "critical issue"
23 | is whether the underlying substantive law permits that remedy for the particular cause
24 | of action).  Indeed, despite testifying 109 times (Ex. 42 (Wagner Rpt.) at Tab C), and
25 | sitting for 240 depositions (Ex. 44 (Wagner) at 6:6-7), Mr. Wagner does not recall ever
26 | analyzing the "benefit" received by a shareholder in a copyright infringement case.  (<u>Id.</u>
27 | at 123:4-8.)

28 |

**REDACTED**

1

        (b)     **Mr. Wagner's Opinions Regarding the "Present
Value" of Future Profits Accruing to Mr. Larian's
Holdings Are Inherently Speculative and Likely to
Confuse the Trier of Fact**

2

3       As noted, Mattel seeks additional, unrealized "benefits" that purportedly have

4 accrued to Mr. Larian's ownership interests in MGA.  In support of this claim, Mattel

5 proffers Mr. Wagner's highly speculative projection of the present value of BRATZ-

6 related <u>future</u> cash flows.[15]  Mr. Wagner's valuation damages theory is nothing more

7 than a highly speculative and otherwise deeply-flawed future profits theory that relies

8 on baseless assumptions about the post-verdict world that are likely to confuse the

9 finder of fact.

10      Opinions based on speculation, such as those proffered by Mr. Wagner here, are

11 inadmissible under Fed. R. Evid. 702. <u>See</u> 29 <u>Wright & Gold, Federal Practice &</u>

12 <u>Procedure</u> § 6264, at 243 (2008) ("[E]xpert testimony as to value is frequently rejected

13 as speculative where there is no rational basis for the opinions offered."); <u>see also</u> <u>Gen.</u>

14 <u>Elec. Co.</u>, 522 U.S. at 146 ("[N]othing in either <u>Daubert</u> or the Federal Rules of

15 Evidence requires a district court to admit opinion evidence that is connected to

16 existing data only by the *ipse dixit* of the expert."); <u>Lanphere Enterprises, Inc. v. Jiffy</u>

17 <u>Lube Int'l, Inc.</u>, 138 Fed. Appx. 20, 22 (9th Cir. June 1, 2005), citing <u>Gen. Elec.</u>,

18 522 U.S. at 146 ( "The court need not admit an expert opinion that is connected to the

19 underlying data 'only by the *ipse dixit* of the expert.'" ); <u>Domingo ex rel. Domingo v.</u>

20 <u>T.K.</u>, 289 F.3d 600, 607 (9th Cir. 2002) ("A trial court may exclude evidence when it

21 finds that 'there is simply too great an analytical gap between the data and the opinion

22 proffered.").

23      Mr. Wagner's opinions regarding the "present value" of future profits accruing

24 to Mr. Larian's holdings are inherently speculative.  <u>First</u>, Mr. Wagner assumes,

25 ─────────────────────

[15]    <u>See</u> Ex. 44 (Wagner) at 133:4:13.  Mr. Wagner uses two other, equally flawed methods

26 to deduce the future value of the BRATZ franchise, which he terms the "comparable trading
company analysis" and "comparable transactions analysis."  All approaches seek to estimate

27 the present value of future cash flows resulting from sales of BRATZ and BRATZ-branded

28 merchandise.

1  without rational basis, that MGA will continue to sell and earn profits on BRATZ dolls
2  and BRATZ-branded merchandise "into perpetuity" despite a jury's finding that MGA
3  has infringed Mattel's intellectual property.[16] In effect, Mr. Wagner assumes that,
4  notwithstanding a jury's finding of infringement, MGA (a) will not be enjoined from
5  selling BRATZ dolls and related products, and (b) will not be forced to pay all future
6  BRATZ profits to Mattel in the form of a royalty. Of course, under either scenario, the
7  value of Mr. Larian's interest in BRATZ future cash flows falls dramatically, perhaps
8  to zero. This is because either (a) MGA will no longer be permitted to sell BRATZ
9  dolls and related merchandise, or (b) MGA will be forced to disgorge some or all of
10 these profits as a "reasonable royalty" paid to Mattel. Mr. Wagner's calculations
11 represent nothing more than speculative (and irrational) "guess work" about the post-
12 verdict world.

13     Not only does Mr. Wagner's assumption lack rational basis, it is contradicted by
14 Mattel's verified statements. In its counterclaims against MGA, Mattel avers that it
15 intends to enjoin MGA should it prevail on its copyright infringement claim. (See
16 SAA ¶ 87.) Additionally, in its responses to MGA's interrogatories, Mattel suggests it
17 may seek a "reasonable royalty" as an alternative to an injunction. (See Ex. 46
18 (Mattel's Supplemental Responses and Objections to MGA's First Set of
19 Interrogatories) at 99.)

20     Not surprisingly, courts have already rejected Mr. Wagner's premise — that
21 infringing profits will continue *ad infinitum* despite a finding of infringement — as
22 highly "speculative." See, e.g., Burns v. Imagine Films Entm't, Inc., 92-CV-2435,
23 2001 WL 34059379, at *15 (W.D.N.Y. Aug. 23, 2001) ("Defendants are correct in
24 asserting that calculation of future profits under 17. U.S.C. 504(b) must be deemed
25 speculative since it is premised on the assumption that Defendants will opt to distribute
26

27 [16]   See Ex. 44 (Wagner) at 134:16-135:20 (Mr. Wagner assumed cash flows would grow by two percent into perpetuity).

28

1 | a version of *Backdraft* that includes segments that a jury has found to infringe
2 | Plaintiffs' copyright.").

3 | Even if Mr. Wagner's analysis had a rational basis (which it does not), Mr.
4 | Wagner's failure to adjust his valuation for a finding of infringement will doubtlessly
5 | confuse jurors. Specifically, the jury is likely to consider Mr. Wagner's "pre-liability"
6 | valuation of Mr. Larian's ownership interests as a <u>realized</u>, <u>tangible</u> benefit that Mr.
7 | Larian can disgorge. In reality, at the moment the jury finds infringement, Mr.
8 | Wagner's valuation not only remains unrealized, it becomes <u>unrealizable</u>. Because it
9 | is premised on future profitability, the value of Mr. Larian's interests becomes either
10 | nil or severely diminished as a result of a liability finding. The only value remaining
11 | would be money in Mr. Larian's pocket, <u>i.e.</u>, *past profits* that Mattel already seeks to
12 | claim twice – from MGA and again from Mr. Larian.

13 | Second, even setting aside Mr. Wagner's failure to account for a liability finding,
14 | Mr. Wagner's assumption that BRATZ dolls and BRATZ-branded merchandise will
15 | continue to grow profitably forever is nothing more than rank speculation. Perpetual
16 | and profitable growth of a single doll line is virtually unprecedented in the fashion doll
17 | industry, and Mr. Wagner offers no basis for this assumption. Indeed, even Mattel's
18 | public filings, which warn investors about the fickleness of toy consumers, serve to
19 | undermine it. (<u>See</u> Ex. 47 (Mattel, Inc., Form 10-K filed Feb. 27, 2006) at 13
20 | ("Consumer preferences, particularly among end users of Mattel's products – children
21 | – are <u>continuously changing</u>. The toy industry experiences <u>significant</u>, <u>sudden shifts</u> in
22 | demand caused by "hit" toys and trends, which are often <u>unpredictable</u>.") (emphasis
23 | added).)

24 | In fact, as Mr. Wagner's own analysis shows, BRATZ product line sales for the
25 | first 10 months of 2007 declined 10% from sales in the first ten months of 2006 (<u>see</u>
26 | Ex. 42 (Wagner Rpt.) at Tab B1, Schedules 1.1a – 1.1g), and industry experts expect a
27 | 3% annual decline in the toy industry over the next five years. (Ex. 48 (IBISWorld

28 |

1  Industry Report, "Doll, Toy, and Game Manufacturing in the U.S.," February 18, 2008)
2  at 43.)  Mr. Wagner nonetheless projects BRATZ as a doll line impervious to trends
3  and sudden shifts in consumer demand. This assumption simply lacks any logical basis
4  whatsoever, and, as such, should be excluded under Federal Rules of Evidence, 702.
5  See Fed. R. Evid. 702 (Committee Notes on Rules – 2000 Amendments) ("The trial
6  judge in all cases of proffered expert testimony must find that it is properly grounded,
7  well-reasoned, and not speculative before it can be admitted.").

8         (c)   **Mr. Wagner's "Opinions" Regarding Profit**
9             **Distributions to Mr. Larian Are Irrelevant Because,**
              **As Mr. Wagner Concedes, They Double-Count**
10            **Profits Sought From MGA**

11     The admissibility of expert testimony related to damages depends, in part, upon
12 the permissibility of the proffered damages under law.  See Burlington N. Santa Fe
13 R.R. Co., 397 F.3d at 1194.  In this case, the Copyright Act specifically prohibits
14 duplicative damages awards.  17 U.S.C. § 504(b) (providing for an award of the
15 infringer's profits to the extent not already taken into account); see also Frank Music,
16 772 F.2d 505 (holding that direct profits already recovered by plaintiff must be
17 subtracted from award of indirect profits). Additionally, Fed. R. Evid. 403 permit
18 courts to exclude "cumulative" evidence. Fed R. Evid. 403

19     Nonetheless, Mr. Wagner admits that his calculation of "benefits" to Mr. Larian,
20 as measured by dividend distributions paid to Mr. Larian by MGA, simply double-
21 counts the profits that Mr. Wagner calculates as part of MGA profits earned from
22 BRATZ:

23         Q.  Is there a certain duplication to the profits generated by
24         the sale of Bratz, on the one hand, and the distributions to Mr.
25         Larian, on the other hand, from the sale of Bratz?
26         A.  Yes.
27         Q.  Okay.  Yes?
28

A. Yes.

Q. Could you elaborate on that?

A. They're really the same dollars or profits that are earned from the activity of selling Bratz products and they shouldn't be awarded twice. If MGA pays Mattel from MGA for those profits, I don't think it can also collect them from Mr. Larian. And vice versa. If they can't get them from MGA, they can get it them from Mr. Larian, but they can't get it both times.[17]

Mr. Wagner's calculations of dividend distributions to Mr. Larian should therefore be excluded as "cumulative" and outside the bounds of remedies permitted by the Copyright Act.

C. **Mr. Wagner's Proffered "Opinions" Regarding Indirect Profits, Which Depend Wholesale on Carol Scott's Flawed Analysis, Should Also Be Excluded**

As part of its "gatekeeper" role, the trial court must assess each step in the analysis underlying the expert witness's proposed testimony for reliability and helpfulness. See Fed. R. Evid. 702 Committee Note (2000) (citing Heller v. Shaw Indus., Inc., 167 F.3d 146, 155 (3d Cir. 1999)) (holding that reliability and helpfulness analysis applies to all aspects of expert's proposed opinion)); 4 Weinstein's Federal Evidence § 702.05[2][a], at 76 (2008 elec. ed.).

In additional to calculating purported "benefits" to Mr. Larian, Mr. Wagner also estimates profits earned on sales of a wide range of BRATZ-branded merchandise, including skateboards, bicycles, tattoos, helmets, stationery, pillows, and lamps. However, rather than draw any independent conclusions about whether profits on these items are causally connected to the alleged infringement, Mr. Wagner intends to rely on Ms. Scott's flawed "analysis":

---

[17]    Ex. 44 (Wagner) at 132:13-133:3.

A. My role here is actually fairly limited. I have been asked to make certain calculations, which I have done. But I'm not here to draw any causal linkage between the causes of action and any actual computation of damages or demonstrating, you know, what is the causal link between the sale of a doll or sale of other accessories that go along with the doll.

Q. You understand someone else is carrying that burden of proof?

A. Yes.

Q. Who?

A. Well, my understanding is there will be probably someone from Mattel that will do that at trial and, also, I think Carol Scott, as an expert, will be doing that.[18]

As shown in MGA's Motion *in limine* No. 10 to Exclude All References To And Use Of Certain "Expert" Testimony Proffered By Mattel Witness Carol A. Scott, Ms. Scott's testimony is inadmissible for two reasons. First, she expressly disclaims any effort to address the causation standard for indirect profits. See Daubert v. Merrell Dow Pharms., 43 F.3d 1311, 1320-22 (9th Cir. 1995) (upholding trial court's decision to exclude testimony of plaintiff's expert because proffered expert opinions, even if true, would be insufficient to sustain the plaintiff's burden of proof on causation). Second, she failed to undertake any investigation or analysis to ascertain whether such a causal connection exists. See Fed. R. Evid. 702 (Adv. Comm. Notes – 2000 Amendments) ("The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted."). Because Mr. Wagner relies blindly on Ms. Scott's opinion, these flaws

---

[18]    Ex. 44 (Wagner) at 21:13-22:3.

1  also infect Mr. Wagner's analysis.  As such, Mr. Wagner's opinions relating to MGA's

2  purported "indirect profits" should be deemed inadmissible.

3      **D.**    **The Court Also Should Bar Any Testimony From or Evidence**
        **Created by Michael Wagner Reflecting Royalty Payments Made to**

4      **Carter Bryant.**

5          Wagner's damages opinion relating to payments made to Carter Bryant also

6  must be excluded.  Wagner's opinion provides no analysis whatsoever that could assist

7  the jury in determining the proper amount for a damages award against Bryant, since

8  Wagner has done nothing to tie those payments to specific alleged wrongs by Bryant.

9  Instead, Wagner simply recites the total royalties Bryant received from MGA, knowing

10  full well that the contract pursuant to which Bryant is paid those royalties reflects that

11  the vast bulk of these royalty payments have nothing to do with the transfer of the

12  allegedly infringed copyrighted sketches at issue in this case.  See Ex. 41 at 21 (stating

13  total of royalties based on simple addition of payments Bryant has received).  Because

14  Wagner's proposed testimony is thus irrelevant and unhelpful to the jury, it is improper.

15  Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible."); Fed. R. Evid.

16  702 (permitting qualified expert testimony where it "will assist the trier of fact to

17  understand the evidence or to determine a fact in issue").  Also, permitting Mattel to

18  present such testimony to the jury as "expert" guidance, with that label's implications

19  of scientific authority and reliability, would severely prejudice Bryant.  Because that

20  prejudice would substantially outweigh any minimal probative value (if any) that

21  Wagner's "expert" summary of Bryant's basic financial information could have,

22  Wagner must not be permitted to testify about payments made to Bryant.  Fed. R. Evid.

23  403.

24      **1.**    **Wagner's Opinion Is Unhelpful And Misleading To The Jury**
                **Because Wagner Makes No Effort To Tie The Royalties To Any**

25              **Specific Acts Of Alleged Infringement By Bryant.**

26          Wagner's extraordinarily brief opinion as it relates to Carter Bryant seems to be

27  an attempt to simply total the royalty payments made to Bryant as support for Mattel's

28

copyright infringement claim against Bryant.[19]  Yet, in that opinion, Wagner makes no effort to link particular royalty payments to acts of alleged copyright infringement by Bryant, as any proper evaluation of copyright damages must do.  For his testimony to be even arguably helpful[20] to the jury in considering copyright infringement damages, Wagner would need to separate out Bryant's alleged gains from his alleged acts of copyright infringement and his gains from fashion-design and other undisputedly non-infringing work on Bratz.  Making non-infringing contributions to a project—such as a particular Bratz doll—is not copyright infringement even if the project as a whole is infringing (which, of course, Bryant disputes here).  See 12-76 Nimmer on Copyright § 12.04[A][1]]; McGraw-Hill Inc. v. Worth Publishers, Inc., 335 F. Supp. 415 (S.D.N.Y. 1971); Breffort v. I Had a Ball Co., 271 F. Supp. 623 (S.D.N.Y. 1967). Because Wagner's analysis fails to isolate and consider only the actual scope of alleged infringing acts, it is hopelessly misleading and prejudicial to Bryant.

Also, a person ordinarily is liable only for his own infringing acts. See 17 U.S.C. s 106 (defining owner's exclusive rights); 17 U.S.C. § 501 (defining infringement); Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 931-33 (2005) (discussing conditions required for vicarious or contributory liability); Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 262-263 (9th Cir. 1996) (same).  Thus, to be fair and helpful to the jury (and to avoid severe prejudice to Bryant), any damages analysis must present a number that is directly linked to alleged acts of infringement by Bryant. Presenting Wagner's simplistic damages analysis (if one can dignify his performance of simple addition with that title) to the jury as the work of an "expert" would not serve any legitimate purpose.  Rather, it would only serve to prejudice Bryant at trial by

---

[19]    The report seems to ignore all other claims, as the total bears no relation whatsoever to possible forms of recovery in those claims.

[20]    Bryant does not concede that Mattel would be entitled to recover Bryant's profits, even if infringement were proven and damages properly linked to infringing acts.

improperly suggesting to the jury that it could engage in a damages analysis entirely untethered to any specific wrongful acts by Bryant.

2. **Wagner's Improperly Simplistic Approach Is Especially Misleading And Prejudicial Here, Because Bryant's Compensation From MGA Depends On His Ongoing Work, Not The Initial Transfer Of His Bratz Idea.**

In this case, Mattel has not identified any specific acts of alleged copyright infringement by Bryant himself other than the act of transferring his Bratz drawings to MGA. However, the vast bulk of Bryant's royalties from MGA have resulted not from that initial transfer, but from Bryant's steady consulting work with MGA in the years since he left Mattel on a wide range of new fashions and other concepts. Even a cursory review of Bryant's October 2000 contract with MGA reveals that the vast bulk of Bryant's royalty payments from MGA are based on the sales of specific products for which he has provided ongoing consulting and design services, not on the value of the Bratz idea he transferred to MGA or the early sketches in which Mattel claims copyright. (See Proctor Decl. In Support Of Mattel's Motion for Partial Summary Judgment (Docket No. 2504-6), Ex. 71 ¶ 4 (Bryant-MGA contract).) However, Wagner's analysis entirely disregards the reality of Bryant's contract with MGA, instead implicitly assuming (and seeking to advise the jury) that all of Bryant's payments from MGA over the years reward only his initial act of transferring his Bratz idea and initial sketches to MGA—the act that Mattel has expressly identified as an alleged infringement by Bryant.

To be helpful for the jury and avoid prejudice to Bryant (which, with Wagner testifying under the potent "expert" label, would strongly outweigh any probative value), any expert testimony as to damages would need to identify and link Mattel's alleged damages to specific acts of infringement by Bryant, and separate out Bryant's plainly non-infringing activity. Wagner's failure to do so here is made even more egregious by his utter disregard for the reality of Bryant's MGA contract, which

compensates Bryant only for the ongoing and original creative work that he does, not for any acts of infringement specifically alleged by Mattel against Bryant.

Accordingly, Wagner must not be permitted to testify in support of Mattel's damages claims against Bryant.

## CONCLUSION

The MGA Parties therefore respectfully move this Court in limine for an order excluding from trial all references to and use of the "expert" testimony from Mr. Wagner regarding the "benefits" that he opines that Isaac Larian received from MGA's alleged infringement of Carter Bryant's BRATZ drawings.

DATED: April 14, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: _____
      Jason D. Russell
      Attorneys for MGA Entertainment, Inc.,
      MGA Entertainment (HK) Limited, MGAE
      de Mexico, S.R.L. DE C.V., and Isaac Larian