# EXHIBIT A

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

**CONFIDENTIAL -- FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

**DISCOVERY MATTER**

**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order Of December 6, 2006]**

**MATTEL, INC.'S OPPOSITION TO MGA DEFENDANT'S MOTION TO QUASH LARRY MCFARLAND'S DEPOSITION SUBPOENA**

[Declaration of Jon D. Corey and Evidentiary Objection to the Declaration of Larry McFarland filed concurrently]

Hearing Date: TBA
Time: TBA
Place: Telephonic

**Phase 1**
Discovery Cut-off: January 28, 2008
Pre-trial Conference: April 21, 2008
Trial Date: May 27, 2008

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........ 1

FACTUAL BACKGROUND ........ 2

ARGUMENT ........ 5

I. MGA LACKS STANDING TO MOVE TO QUASH MATTEL'S SUBPOENA OF LARRY MCFARLAND ........ 5

II. *SHELTON* DOES NOT PREVENT MATTEL FROM TAKING MR. MCFARLAND'S DEPOSITION ........ 6

A. The Ninth Circuit Has Not Adopted Shelton ........ 7

B. Shelton Is Inapplicable Because Mattel Seeks the Deposition of a Percipient Witness ........ 10

C. Mr. McFarland Possesses Unique, Crucial Knowledge Essential to This Case ........ 13

D. The Information is Unavailable From Another Source ........ 15

E. Mattel's Questioning Regarding the Substance of Public Copyright Applications and Registrations Does Not Invade Privileged Information ........ 20

CONCLUSION ........ 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

ALN Associates, Inc., 132 F.R.D. 492 (N.D. Ill. 1990) .......... 8

Calvin Klein Trademark Trust v. Wachner, 124 F. Supp. 2d 207 (S.D.N.Y. 2000) .......... 10

Carey v. Textron, Inc. (E-Z-Go Textron), 224 F.R.D. 530 (D. Mass. 2004) .......... 10

Cook, Inc. v. C. R. Bard, Inc., 2003 WL 23009047 (S.D. Ind. 2003) .......... 9

Kaiser v. Mutual Life Ins. Co. of New York, 161 F.R.D. 378 (S.D. Ind. 1994) .......... 11

Lloyd Lifestyle Ltd. v. Soaring Helmet Corp., 2006 WL 753243 (Mar. 23, 2006 W.D. Wash.) .......... 7, 11, 20

Mass. Mut. Life Ins. Co. v. Cerf, 177 F.R.D. 472 (N.D. Cal. 1998) .......... 11, 12

Nakash v. U.S. Dept. of Justice, 128 F.R.D. 32 (S.D.N.Y. 1989) .......... 10, 11

Nova Products, Inc. v. Kisma Video, Inc., 220 F.R.D. 238 (S.D.N.Y. 2004) .......... 5

Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726 (8th Cir. 2002) .......... 10

qad, inc. v. ALN Associates, Inc., 132 F.R.D. 492, 495 (N.D. Ill. 1990) .......... 8, 9

Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986) .......... *passim*

In re Subpoena Issued to Dennis Friedman, 350 F.3d 65 (2d Cir.2003) .......... 7, 8

Younger Mfg. Co. v. Kaenon, Inc., 247 F.R.D. 586 (C.D. Cal. 2007) .......... 7

## Statutes

Federal Rules of Civil Procedure

Rule 26 .................... 8

Rule 26(b)(2)(C)(i)-(iii) .................... 6

Rule 26(c) .................... 7

Rule 30 .................... 1

Rule 30(a) .................... 5

Rule 30(b)(6) .................... 2, 14, 16, 18

## Other Authorities

Schwarzer, Tashima & Wagstaffe, Fed. Prac. Guide: Civ. Proc. Before Trial, § 11:1142, § 11:1144 (The Rutter Group 2007) .................... 9, 11

**Preliminary Statement**

One of the central issues in this case is the date of creation of Bratz. In 2003, Larry McFarland, as an attorney for MGA, filled out and signed various copyright registrations which included dates for the creation and first publication of Bratz material. MGA, after the inception of this litigation, asserted these dates were wrong and changed them. Mr. McFarland's knowledge of the basis for the creation and publication dates represented to the Copyright Office on behalf of MGA, which MGA later asserted to be wrong, goes to the heart of this case. Furthermore, acting on MGA's behalf, Mr. McFarland has submitted pleadings in other copyright litigation that alleged precisely the opposite of what MGA now claims in this suit. For example, in this action, MGA claims (including in expert reports) that the Bratz dolls are not based on or substantially similar to Carter Bryant's drawings. Pleadings submitted by MGA through Mr. McFarland in other lawsuits, however, made statements about the enforceability and scope of copyrights and what products are "substantially similar" to the Carter Bryant's Bratz drawings that are inconsistent with MGA's positions in this case.

Mr. McFarland is thus a percipient witness and, indeed, his name appears on hundreds of pages of documents that MGA relies on in this case. Under Federal Rule of Civil Procedure 30, Mattel may take his deposition, as Judge Larson previously recognized. MGA's sole authority for moving to quash, Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986), is unavailing. It is not the law of this Circuit and, in any event, does not apply to Mr. McFarland. He is not trial counsel, so the limitations of do not apply.

MGA and Mr. McFarland have stonewalled endlessly in attempting to prevent his deposition, including by deliberately evading service of Mattel's deposition subpoena and now by trying to run the clock out on Mattel to prevent it from obtaining critical information before trial. MGA's motion, which it lacks standing to bring, is simply the latest maneuver to avoid a deposition concerning

potentially harmful facts for MGA and one that Judge Larson granted Mattel leave to take. Mattel respectfully requests that MGA's motion to quash Mr. McFarland's deposition subpoena and for a protective order be denied, and that Mr. McFarland be ordered to sit for his deposition immediately.

**Factual Background**

McFarland Filed Early Bratz Copyright Applications With a Date of Publication that MGA Later Disavows. McFarland may be the only available, percipient witness on certain issues. As an attorney acting for MGA to obtain copyrights, he signed early copyright registrations related to Bratz. In the registrations, he claimed that the "First Publication" of Bratz was February 12, 2001.[1] Lucy Arant, another MGA copyright and trademark attorney, signed early Bratz copyright registrations, stating that the first Bratz dolls were created in 2000 and that the "First Publication" of Bratz was February 12, 2001 as well.[2]

In 2005, after this lawsuit began -- and after the timing of the development of Bratz became the "heart" of the case[3] -- the MGA defendants claimed for the first time that their representations to the U.S. Copyright Office were mistaken.[4] The MGA defendants now claim that Bratz was created in 2001, rather

---

1 Exh. 8 [MGA Copyright Registrations, dated December 2003], to the Declaration of Jon D. Corey in Support of Mattel's Opposition to the MGA Defendants' Motion to Quash Larry McFarland's Deposition Subpoena, dated March 27, 2008 (the "Corey Dec.").

2 Corey Dec., Exh. 9 [MGA Copyright Registrations, dated July 2001].

3 As the Court has recognized, the key to this case is the timing of the development of Brat ("At its heart, this case asks the question: Who owns the rights to the Bratz dolls?"). Corey Dec., Exh. 10, at 11:1-2 [Court's August 9, 2006 Order Denying Appointment of Expert Witnesses].

4 Corey Dec., Exh. 11 [Supplemental Copyright Registrations]; Corey Dec., Exh. 5, at 251:8-256:24; 260:14-262:4; 268:19-272:13; 276:10-278:14; 281:16-282:4; 283:6-25; 284:23-285:21; 298:24-299:14; 328:18-331:21; 346:25-349:7; 349:25-357:18; 365:20-368:10; 370:18-371:16; 372:15-373:9; 673:19-678:6; 684:8-689:21; 694:17-695:10 [Deposition Transcripts of Samir Khare ("Khare Tr.")].

than in 2000, when Carter Bryant was still a Mattel employee.[5] Rather than being first published in February 12, 2001 the MGA defendants now claim that Bratz was published later, by "May 21, 2001."[6]

When MGA's Rule 30(b)(6) designee concerning the Bratz copyright registrations was questioned concerning the belated change of the Bratz creation and first publication dates, he testified that he did not know what information the dates in the registration applications were based on because they were prepared by "outside counsel," including McFarland.[7] During his second deposition MGA's designee again claimed that MGA did not know why outside counsel represented to the Copyright Office that Bratz was created in 2000 and first published in February 12, 2001.

Mattel is Granted Leave to Serve a Subpoena on McFarland; McFarland Evades Service. On November 20, 2007, Mattel filed its Motion for Leave to Take Additional Discovery and Objections to Discovery Master Order of September 28, 2007.[8] Mattel, by this Motion, sought leave to take the deposition of Larry McFarland, among other things.[9] On January 7, 2008, Judge Larson granted

---

[5] Id., at 251:8-256:24; 260:14-262:4; 268:19-272:13; 276:10-278:14; 281:16-282:4; 283:6-25; 284:23-285:21; 298:24-299:14; Exh. 11 [MGA Supplemental Copyright Registrations].

[6] Id., at 328:18-331:21; 346:25-357:18; 365:20-368:10; 370:18-371:16; 372:15-373:9; 375:17-380:8 [Khare Tr.]; Exh. 11 [MGA Supplemental Copyright Registrations].

[7] Id., at 253:16-23; 254:9-256:24; 271:2-272:13; 276:10-278:14; 281:16-282:4; 283:6-25; 328:18-330:7; 331:18-21; 365:20-368:10; 370:18-371:16; 372:15-373:9; 673:19-674:25; 684:8-686:10; 694:17-695:10 [Khare Tr.].

[8] Declaration of Robert Herrington in Support of MGA Entertainment, Inc.'s Motion to Quash Larry McFarland's Deposition Subpoena, dated March 17, 2008 ("Herrington Dec."), Exh. 1.

[9] Herrington Dec., Exh. 1, page 18. MGA asserts that "[r]elying on false statements regarding Mr. McFarland, the Court granted the Motion For Leave and allowed Mattel to seek to depose Mr. McFarland." Motion, 2:16-18. As discussed

(footnote continued)

Mattel leave to take the depositions of Larry McFarland and Lucy Arant, in addition to other witnesses.[10] The Court ruled:

> Considering [the standard set forth in Rule 26(b)(2)(C)(i)-(iii)] the Court concludes that Mattel has shown good cause to grant additional discovery given the complexity of this case, the number of parties, recent developments related to the substitution of counsel, the concerns regarding retention and spoliation of evidence, and the delay in receiving paper discovery caused by numerous discovery disputes and a Court-imposed stay requested by MGA upon substitution of counsel. Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11) . . .[11]

Judge Larson Issues an Order to Show Cause Why McFarland and His Clients Should Not Be Ordered to Appear for a Deposition; McFarland Finally Accepts Service of the Subpoena at Judge Larson's Direction. After Judge Larson granted Mattel's motion for leave, and despite Mattel's repeated efforts to serve Mr. McFarland, he evaded service for over a month. Consequently, the Court issued an Order to Show Cause to Mr. McFarland to show "why he and his clients should not

---

herein, Mattel's assertions concerning Mr. McFarland's unique knowledge are well-founded and correct. MGA initially implicitly conceded the same -- in its Opposition to Mattel's "Motion For Leave," MGA did not object to Mattel's statements concerning Mr. McFarland's unique knowledge, and, importantly, did not deny that he had such knowledge. See MGA Defendants' (1) Opposition to Mattel, Inc.'s Motion for Leave to Take Additional Discovery and Objections to Discovery Master Order of September 28, 2007, and (2) Joinder in Carter Bryant's Opposition to Mattel's Motion, dated December 24, 2007, attached to the Corey Dec., Exh. 4. Nor did Mr. McFarland. See e.g. 1/7/2008 Hearing Transcript, attached to the Corey Dec., Exh. 3.

[10] Civil Minutes, January 7, 2008, at pg. 3, attached to the Corey Dec., Exh. 1.

[11] Minute Order, January 7, 2008, pp. 2-3, attached to the Corey Dec., Exh. 1.

be ordered to appear for deposition."[12] At the hearing on the Order to Show Cause, Judge Larson stated: "There's no need to order. I'm simply going to direct that you will receive service on your own behalf and your three clients. And then you are ordered leave to bring whatever motions you believe are appropriate to quash those subpoenas. But they are going to be deemed served as of today."[13] To date, Mr. McFarland has not objected to his deposition subpoena.

The Parties' Meet and Confer Efforts. On March 11, 2008, MGA and Mattel met and conferred concerning MGA's objections to the deposition subpoenas of Lucy Arant and Mr. McFarland. Concerning Mr. McFarland, MGA stated that the rule set forth in Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986), provided the sole authority for quashing Mattel's deposition subpoena. Mattel asked whether MGA had authority for the proposition that Shelton applied to witnesses to third parties and invited MGA to provide Mattel with the same.[14] MGA failed to do so.[15]

## Argument

### I. MGA LACKS STANDING TO MOVE TO QUASH MATTEL'S SUBPOENA OF LARRY MCFARLAND

The Discovery Master should deny the Motion because MGA lacks standing to bring it. MGA, not Mr. McFarland, seeks to prevent Mr. McFarland's deposition. Mr. McFarland is not a party to this matter. "[A] party ordinarily lacks

---

[12] Civil Minutes, February 4, 2008, Herrington Dec., Exh. 2, p. 36.

[13] Harrington Dec., Exh. 4, p.58.

[14] See Herrington Dec., Exh. 7.

[15] The parties also agreed to a particular briefing schedule for MGA's motions, with MGA's moving papers due on March 17, 2008, Mattel's Oppositions thereto due on March 25, 2008, and MGA's replies due March 31, 2008, for the hearing set for April 4, 2008 in front of Judge Infante. See e-mail message from Robert Herrington to Jon Corey, dated March 12, 2008, attached to the Corey Dec., Exh. 2. The parties subsequently agreed to an extension of time, with Mattel's Opposition brief due on March 27th. Id.

standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right." Nova Products, Inc. v. Kisma Video, Inc., 220 F.R.D. 238, 241 (S.D.N.Y. 2004).

MGA has not specifically articulated why it believes it has standing to move to quash Mr. McFarland's deposition subpoena. Presumably it does so to protect purported "improper instructions on the attorney-client privilege"[16] in its public copyright registrations and other public statements. As discussed below in Part II, Mattel seeks information that is not privileged. Indeed, as the Discovery Master ruled, MGA has no legitimate expectation that information conveyed by someone to Mr. McFarland to be disclosed in a public document, such as dates of copyright creation and publication, would be maintained as confidential.[17] Thus, this information cannot be privileged and MGA therefore has no privilege to "protect" through its Motion to Quash. Accordingly, MGA has no standing to challenge a subpoena to Mr. McFarland, a non-party.

## II. ***SHELTON* DOES NOT PREVENT MATTEL FROM TAKING MR. MCFARLAND'S DEPOSITION**

MGA's sole basis for moving to quash Mattel's deposition subpoena of Mr. McFarland is the Eighth Circuit's decision in Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986). Shelton is not the law in this Circuit. Nor does it apply here. Mr. McFarland is not a party to this case, but is an attorney who represents several third party witnesses in this matter.[18] In the past he claims to

---

[16] Motion, at 1:22-23.

[17] Order Granting Mattel, Inc.'s Motion to Compel MGA to Produce Documents Bearing Bates Nos. MGA 0800973-0800974 and MGA 0829296 - 0829305, dated December 17, 2007, Corey Dec., Exh. 13.

[18] Motion, at 1:4-6.

have worked as counsel for MGA, but he is not MGA's trial counsel in this matter.[19] Furthermore, even under Shelton, the deposition should proceed because Mattel seeks to take the deposition of counsel for third party witnesses who is a percipient witness to facts crucial to this litigation. Even if Shelton applied, and it does not, Mattel meets its criteria for deposing Mr. McFarland.

**A. The Ninth Circuit Has Not Adopted Shelton**

Neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence prohibit taking the deposition of an opposing party's attorney. Shelton, 805 F.2d at 1327. Rule 30(a) of the Federal Rules of Civil Procedure permits a party to take the testimony of "any person" by deposition. Here, Mattel sought, and the Court specifically granted, leave to take Mr. McFarland's deposition.

MGA asserts that "the Ninth Circuit district courts have 'uniformly followed' Shelton," relying on Lloyd Lifestyle Ltd. v. Soaring Helmet Corp., No C06-0349C, 2006 WL 753243, *2 (W.D. Wash. Mar. 23, 2006).[20] The Ninth Circuit itself has never adopted Shelton, and the Ninth Circuit district courts do not "uniformly follow" Shelton. In Younger Mfg. Co. v. Kaenon, Inc., 247 F.R.D. 586, 588 (C.D. Cal. 2007), the United States District Court, Central District of California rejected Shelton:

> There is no Ninth Circuit precedent addressing the proper standards for the Court to consider in this situation[21]. The

---

19 See Civil Docket for Case #: 2:04-cv-09049-SGL-RNB, attached to the Corey Dec., Exh. 12.

20 Motion, at 4:6-8.

21 Younger denied an ex parte application for a protective order seeking to depose the corporate defendant's general counsel. The Younger court held that the defendants failed to show good cause to issue a protective order on the alleged grounds that the deposition was for the sole purpose of harassment and that the information sought was protected by attorney-client privilege or work product doctrine. Younger 247 F.R.D. at 588. The court held that the counsel was a fact (footnote continued)

Ninth Circuit Court of Appeals has not adopted the Eighth Circuit's reasoning in Shelton v. American Motors Corp., 805 F.2d 1323, 1327-28 (8th Cir.1986), or the Second Circuit's reasoning in In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 71-72 (2d Cir.2003), and this Court finds the Second Circuit's reasoning to be the more persuasive. As the Second Circuit has held, whether the deposition of a lawyer should take place requires the Court to take into consideration various factors, including:

The need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted.... Under this approach, the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices, but it is a circumstance to be

---

witness about statements and declarations he made about lenses at issue in the litigation and communications arising from his job functions in addition to his role as general counsel, and therefore his deposition was "like the deposition of any other percipient or fact witness and should not be prohibited under Rule 26(c)." Id. 588-89 (citations omitted). To the extent defendant believed that questions during deposition impinge upon the attorney-client privilege or the work product doctrine, defendant could make a proper objection. Id. at 589. Here, although Mr. McFarland is not general counsel to MGA, he is a percipient witness about changes made to MGA's copyright applications and registrations. Accordingly, his deposition is proper. As discussed herein, any objections to questions that might arise at his deposition can be objected to at the time.

considered. In re Subpoena Issued to Dennis Friedman, 350 F.3d at 72.[22]

Other courts have also found Shelton to be inappropriately inflexible, particularly when a party seeks the deposition of an attorney who is not trial counsel or a witness to relevant facts. See, e.g., In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 72 (2d Cir. 2003) (rejecting Shelton rule and stating, "the standards set forth in Rule 26 require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship")[23]; qad, inc. v. ALN Associates, Inc., 132

---

[22] Under either standard, the Motion should be denied. In In re Subpoena Issued to Dennis Friedman, 350 F.3d 65 (2d Cir. 2003), the "flexible approach" adopted by the Second Circuit requires the court to consider "all relevant facts and circumstances" which may include "the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted" to determine whether "the proposed deposition would entail an inappropriate burden or hardship." Id. at 71-72. As discussed herein, Mr. McFarland is a percipient witness to non-privileged facts crucial to this case, facts which Mattel has been unable to learn from other MGA sources. Accordingly, under Friedman, his deposition is permissible.

[23] In Friedman, the Second Circuit reversed the district court's granting of defendant's motion to quash the deposition of defendant's former attorney who provided advice during merger negotiations in a separate matter and who subsequently moved to the law firm acting as trial counsel in the present matter. Id. at 66-67. It did so on the grounds that "[t] he district court ruled, relying on the rule set forth in Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986), that plaintiff-appellant must exhaust all practical alternative means of obtaining the information sought from Friedman before it would consider allowing the proposed deposition and ordered plaintiff-appellant to proceed first by written interrogatories. We conclude that the deposition-discovery regime of the Federal Rules of Civil Procedure requires a more flexible approach to attorney depositions than the rigid Shelton rule." Id. (holding that they need not rule definitively on the matter because the attorney consented to his deposition, mooting the appeal.)

F.R.D. 492, 495 (N.D. Ill. 1990) ("[T]his Court subscribes wholeheartedly to a procedure that rejects any prior restraint in favor of permitting the deposition to go forward, with any individualized objections to be dealt with during its regular course."); Cook, Inc. v. C. R. Bard, Inc., 2003 WL 23009047, *1 (S.D. Ind. 2003) ("[T]he Court finds that it was not error for the Magistrate Judge to decline to follow Shelton and permit the deposition of Mr. Godlewski to proceed.").

**B. Shelton Is Inapplicable Because Mattel Seeks the Deposition of a Percipient Witness**

Furthermore, because Mr. McFarland is not trial counsel, Shelton does not apply. Shelton acknowledged a policy against deposing "trial counsel" to protect from interference with trial preparation work. Id. at 1327-28. See also Schwarzer, Tashima & Wagstaffe, Fed. Prac. Guide: Civ. Proc. Before Trial, § 11:1142 (The Rutter Group 2007) ("The three Shelton criteria apply only when trial and/or litigation counsel (rather than in-house counsel) are being deposed and the questioning would expose litigation strategy (rather than disputed facts) in the pending case.").

The core purpose of the Shelton test is to protect a party from a trial-counsel deposition that might disclose strategies and otherwise harass and disrupt trial-counsel. As the Eighth Circuit has stated, "the Shelton test was intended to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy." Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 730, 731 (8th Cir. 2002). ("The concerns raised in Shelton regarding abuse of the discovery process and adding time and expense to litigation are not implicated in this case where [defendant] seeks relevant information uniquely known by [plaintiff's] attorneys about prior terminated litigation, the substance of which is central to the pending case."). Thus, "Shelton was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a

pending case where the information known only by the attorneys regarding the prior concluded case was crucial. In such circumstances, the protection Shelton provides to opposing counsel only applies because opposing counsel is counsel in the instant case and not because opposing counsel had represented the client in the concluded case." Id. at 730.

Although Mr. McFarland has in the past represented MGA in connection with Bratz copyright representations, he is not trial counsel for MGA in this case. It follows that concerns about questioning on litigation strategy for MGA in this matter do not apply. See, e.g., Carey v. Textron, Inc. (E-Z-Go Textron), 224 F.R.D. 530, 532 (D. Mass. 2004) ("Moreover, the fact that Attorney Gelineau no longer represents Carey in this matter reduces the degree [of] interference that any deposition of him would introduce. He, presumably, does not possess information concerning Plaintiff's current litigation strategy.").[24] Moreover, Mr. McFarland is not preparing MGA's case for trial. Accordingly, the concern that counsel will be distracted or unable to "devote his or her time and efforts to preparing the client's case" if faced with a deposition simply does not apply. Shelton, 805 F.2d at 1327. Nor could this have a chilling effect on future communications with McFarland, id., or lead to the disqualification of counsel who may be called as witnesses. See Kaiser v. Mutual Life Ins. Co. of New York, 161 F.R.D. 378, 382 (S.D. Ind. 1994).

Prior representation or representation of third-party witnesses does not transform Mr. McFarland into trial counsel. Were it otherwise, then all a litigant would have to do to shield key factual knowledge held by its past counsel from

---

[24] Calvin Klein Trademark Trust v. Wachner, 124 F. Supp. 2d 207, 211 (S.D.N.Y. 2000) (noting that counsel's role in litigation was "peripheral" and refusing to apply Shelton on that basis); Nakash v. U.S. Dept. of Justice, 128 F.R.D. 32, 34 (S.D.N.Y. 1989) ("[T]he major rationales in these cases—discouraging the depositions of opposing attorneys in a particular lawsuit to avoid unnecessary expense and interference with the attorney-client relationship—are not applicable here.").

deposition would be to retain them to represent third parties in a legal action. And Mr. McFarland does possess relevant information. As discussed below, not only was Mr. McFarland involved in representing dates of creation and publication for Bratz works that are of questionable accuracy, the parties have produced in this case over 1,000 documents containing Mr. McFarland's name. Further, Mr. McFarland has represented MGA in other copyright infringement cases in which he, on behalf of MGA, has taken positions about the enforceability and scope of copyrights and what products are "substantially similar" to the Carter Bryant's Bratz drawings that are inconsistent with MGA's positions in this case.

MGA relies on several cases to support its position that, under Shelton, Mr. McFarland may not be deposed. These cases, however, do not prohibit the deposition of an attorney for third-party witnesses, who is also a percipient witness. See e.g. Lloyd Lifestyle Ltd. v. Soaring Helmet Corp., 2006 WL 753243, *1 (W.D. Wash. Mar. 23, 2006) (granting defendant's motion to quash plaintiff's deposition subpoena to defendant's "lead counsel" before the United States Patent and Trademark Office's Trademark Trial and Appeal Board); Mass. Mut. Life Ins. Co. v. Cerf, 177 F.R.D. 472, 480, 481-482 (N.D. Cal. 1998) (denying defendant's motion for a protective order and permitting plaintiff to take deposition of defendant's counsel in a separate proceeding because she was a percipient witness to facts in the present litigation, and granting defendant's motion for a protective order precluding the deposition of its former counsel for the present litigation because privileged information was sought, the information sought was not crucial and the counsel had no firsthand knowledge thereof).

### C. Mr. McFarland Possesses Unique, Crucial Knowledge Essential to This Case

Even if Shelton applies, Mattel meets its criteria to depose Mr. McFarland. MGA asserts that Mattel "cannot show that Mr. McFarland has any non-privileged information that is 'crucial' to this case."[25] Mattel seeks information related to the factual basis for MGA's copyright applications and registrations for Bratz -- including the dates of creation and publication -- that Mr. McFarland submitted to the Copyright Office and that were changed after the inception of this litigation. That information could not be more "crucial." It goes to the issue at the heart of this case -- when Bryant created Bratz.

Mr. McFarland possesses unique knowledge concerning changes in MGA's copyright registrations for Bratz dolls. As an agent for MGA, he signed early copyright registrations related to Bratz. In the registrations, he claimed that the "First Publication" of Bratz was February 12, 2001. Lucy Arant, another MGA attorney, signed copyright registrations related to Bratz, stating that the first Bratz dolls were created in 2000 and that the "First Publication of Bratz was February 12, 2001. After this lawsuit began -- and after the timing of the development of Bratz became the "heart" of the case -- the MGA defendants claimed for the first time that their representations to the U.S. Copyright Office were mistaken. Rather than being created in 2000 -- while Bratz's inventor, Carter Bryant, was still a Mattel employee -- the MGA defendants now claim that Bratz was created in 2001. And rather than being first published in February 12, 2001 the MGA defendants now claim that Bratz was published by "May 21, 2001."

MGA attempts to minimize Mr. McFarland's knowledge because "[t]he copyright applications Mr. McFarland signed state that Carter Bryant's Bratz drawings were created in 1998, which is consistent with what Mr. Bryant and

---

[25] Motion, at 6:3-4.

numerous other witnesses have testified to in this case."[26] MGA misses the point. Mattel does not simply want to know what the applications say at one point in time. Creation and publication dates for Bratz and related materials is crucial to this case because it goes to the central issue of ownership of Bratz. If Bryant created Bratz while a Mattel employee, Mattel owns rights in Bratz. MGA has not fully explained the basis for its dates or their changes in those dates for Bratz materials from 2000 to 2001--from a time when Bryant was a Mattel employee to when he was not. Mattel is entitled to the facts behind what actually happened--facts Mr. McFarland possesses. The information Mattel seeks is "crucial" to this case. Importantly, MGA fails to discuss this information in its motion or explain why it is not "crucial," nor can it.

This is not the only issue as to which Mr. McFarland possesses percipient knowledge. The parties in this case have produced over 1000 documents that Mr. McFarland authored, executed or received, or that reference him. They are unquestionably relevant and range from trademark applications to lengthy detailed complaints for copyright, trademark and trade dress infringement of Bratz intellectual property. Indeed, Mr. McFarland has represented MGA in a variety of such cases. MGA's representations in those cases, made by Mr. McFarland on MGA's behalf, are relevant to issues that MGA itself has interjected into this case. MGA has contended that (1) Bryant's Bratz drawings are not original and otherwise unprotectible by copyright; and (2) the Bratz dolls at issue in this lawsuit are *not* based on or substantially similar to Bryant's Bratz drawings. In fact, these assertions have been made repeatedly in MGA's recent expert reports.[27] The apparent reason

---

[26] Motion, at 6:3-10.

[27] See, e.g., Expert Report of Peter S. Menell, dated February 11, 2008 ("Menell Report") (Exhibit 4 to the February 15, 2008 Declaration of Jon D. Corey ("Corey Dec.")); Expert Report of Mary Bergstein, dated February 11, 2008 (Corey Dec. Ex. 5); Expert Report of Debora Middleton, dated February 11, 2008 (Corey Dec. Ex. (footnote continued)

for MGA's arguments on this score is to assert at trial that even if Mattel owns the Bratz doll design drawings Bryant created, the dolls do not infringe upon those drawings.

Based even on what Mattel has obtained so far from other Bratz lawsuits to date, MGA has a track record of saying the opposite. For example, in other suits acting for MGA, Mr. McFarland has repeatedly accused the products of defendants in other cases of infringing the copyrights in Carter Bryant's drawings specifically.[28] This is in direct contravention of MGA's recent positions in this case, and the Court and the jury are entitled to compare other dolls that MGA has previously claimed are substantially similar to Bryant's Bratz drawings at issue in this case in deciding whether those Bratz drawings are substantially similar to the Bratz dolls. Mattel is plainly entitled to testimony on other instances MGA has made such inconsistent statements and representations to Courts.

**D. The Information is Unavailable From Another Source**

MGA asserts that "Mattel has numerous other sources from which to obtain relevant, non-privileged information regarding MGA's copyright applications."[29] MGA points to the deposition testimony of Samir Khare, Bryan Armstrong, Nana Ashong and Mitchell Kamarck as support for its assertion. Nowhere does MGA show where these witnesses answered Mattel's questions about Mr. McFarland applications. It cannot. Mr. Khare, as MGA's 30(b)(6) witness, indicates that Mr. McFarland is MGA's sole source of knowledge.[30] MGA, by

---

6); Expert Report of Paul K. Meyer, dated February 11, 2008 (Corey Dec. Ex. 7), at 16.

[28] E.g., Complaint in Case No. CV 04-2524 CBM (CWx) (C.D. Cal. 2004), Exh. 15 to the Corey Dec.

[29] Motion, at 5:4-5.

[30] Khare Tr., 281:7-294:9, attached to the Corey Dec., Exh. 5.

asserting these depositions prove Mr. McFarland is not the sole source for the information Mattel seeks, shows its argument lacks merit.

Samir Khare is MGA's in-house legal counsel and testified as MGA's Rule 30(b)(6) witness concerning the copyright registrations at issue.[31] Mr. Khare lacked knowledge of changes to the registrations, and MGA omits the portion of Mr. Khare's testimony where he points to Mr. McFarland as the source of information for the basis of certain information was submitted.[32] Mr. Khare testified, in part, that he did not speak with Mr. McFarland concerning the substance of the registrations:

> Q. Did you discuss with Mr. McFarland the substance of any of the copyright applications or issued copyright registrations?
>
> A. No. I just wanted to make sure that I had complete records to review.[33]

Further, Mr. Khare testified that although he recognized MGA submitted copyright applications which it later changed, he had no idea why:

---

[31] Motion, at 5:8-9. Mr. Khare was designated to testify, in part, on Topic 33 of Mattel's Second Notice of Deposition to MGA Entertainment, Inc., Pursuant to Federal Rule of Civil Procedure 30(b)(6), which sought the following information: "The applications for registration and the registrations for copyright, patent, trademark or any other right that REFER OR RELATE TO BRATZ or BRATZ DESIGNS sought, made or obtained by, for or on behalf of YOU or BRYANT, including without limitation COMMUNICATIONS pertaining thereto." Corey Dec., Exh. 7. See also Khare Tr. 57:5-17, attached to the Corey Dec., Exh. 5 ("Q. So, then, let me ask it this way: directing your attention to topic 33 -- A. Yes. Q. -- is it your understanding you're here to testify as to the substance of the applications for registration and the registrations that are -- that are the subject of Topic 33? A. Yes."). Interestingly, MGA does not explain why it permits its in-house counsel, Mr. Khare, as well as its former in-house counsel Mr. Kamarck, to testify about the substance of MGA's copyright registrations, yet objects to the deposition of Mr. McFarland -- its former counsel who was actually responsible for the information.

[32] See Motion, at 11-14, n. 13.

[33] Khare Tr., 83:24-84:3, attached to the Corey Dec., Exh. 5.

Q. Is this [Exhibit 508] a correction form that MGA submitted to the Copyright Office on or about March 28, 2005 as it pertained to the registration we've marked as Exhibit 507?

A. Yes. Outside counsel prepared and submitted this document.

Q. Directing your attention to the first page of Exhibit 508, Do you see in Field B where it says that the incorrect information, The "Date Of Publication Of February 12, 2001" and then corrects it to say, quote: "At least as early as May 21, 2001," End quote? Do you see that?

A. I do.

Q. What was the basis for the correction here as reflected in Exhibit 508 that the date of publication for this drawing, Which is the last page of Exhibit 507, Was published at least as early as May 21, 2001?

A. The basis for that correction is found on Exhibit 616, The first page of that. That is the shipment invoice date.

Q. Anything else?

A. No.

Q. Do you have any knowledge or information as to how it came to MGA's attention that the date of publication as originally listed was -- was incorrect?

Ms. Torres: I'm going to object and instruct the witness to answer in his capacity as a 30(B)(6), not to disclose information he learned in any other capacity.

The deponent: No.[34]

. . .

Q. I'm going to show you what was previously marked as exhibit 510, which is a form CA for a "Cloe" drawing.

(Witness examined a document.)

By Mr. Zeller:

A. Do you recognize exhibit 510 as a form CA that MGA submitted to the Copyright Office on or about March 28, 2005?

---

[34] Khare Tr., 260:14-262:4, attached to the Corey Dec., Exh. 5.

A. Yes.

Q. You'll see in section b the "date of publication" is changed from "February 12, 2001" to, "at least as early as May 21, 2001"?

A. I see that.

Q. Was that change based upon the May 21, 2001 invoice that's the first page of exhibit 616?

A. Correct.

Q. Is it based on anything else?

A. No.

Q. And if I were to ask you the questions about the reasons for the change that I had asked you in connection with the prior form CA's, you'd give me the same answers?

A. Correct.

Q. I'll show you what was previously marked as exhibit 511. This is a registration for a "Yasmin" drawing. Do you recognize exhibit 511 as a Certificate of Registration for a "Yasmin" drawing?

A. I do.

Q. The "Yasmin" drawing that is the subject of this registration is the drawing on the last page?

A. Yes.

Q. Directing your attention to the second page of exhibit 511, you'll see that the author is listed as "Carter Bryant."

A. I see that.

Q. Is that information accurate?

A. It is.

Q. In section 3 you see that the "year in which creation of this work was completed" is "1998"?

A. I see that.

Q. Is that information correct?

A. Yes.

Q. What's that based upon?

A. Mr. Bryant's representations to MGA.

Q. Anything else?

A. No.

Q. In 3-b you'll see it lists the "date of First publication" as being "February 12, 2001"?

A. I see that.

Q. That information is not correct; is that true?

A. That is true.

Q. Do you have any knowledge or information as to why it was that February 12, 2001 was -- was listed originally on this registration?

Ms. Torres: Objection; as phrased, your question calls for privileged information. You can answer to the extent you can without revealing privileged communications.

The Deponent: I have no information.

By Mr. Zeller:

Q. Let me rephrase it, just to make sure the record is clear, then. Do you know of any facts on which the February 12, 2001 publication date was based?

A. No.[35]

The testimony from the other depositions were equally unhelpful. No one possessed knowledge of the facts on which the changes in the copyright applications were based.[36] By asserting that "Mattel has numerous other sources from which to obtain relevant, non-privileged information regarding MGA's

---

[35] Khare Tr., 281:7-294:9 (emphasis added), attached to the Corey Dec., Exh. 5.

[36] See 8/1/2007 Deposition Transcript of Bryan Armstrong, 329:19-331:22, 361:22-373:2, Exh. 6 (Counsel for MGA and Armstrong testifying that as MGA's Rule 30(b)(6) designee, in part for Topic 33, as discussed above, he had no knowledge of the substance of the copyright registrations and had no personal knowledge of such documents); see also Herrington Dec., Exh. 11 [Kamarck Tr.]; Exh. 9 [Ashong Tr.]; Ex. 10 [Armstrong Tr.].

copyright applications,"[37] MGA implicitly concedes that is acceptable for Mattel to question MGA's attorneys and employees concerning the changes in MGA's copyright registrations, and that MGA's attorneys can provide non-privileged helpful information. MGA, however, does not reconcile why it finds it acceptable for its counsel -- other than Mr. McFarland -- and employees to testify unhelpfully concerning the information Mattel seeks, yet Mr. McFarland's testimony is somehow off-limits. Importantly, neither MGA nor Mr. McFarland disavow that Mr. McFarland has this information.

This is unsurprising. Given the types of questions Mattel seeks to ask, no other witness could have the same information. Mattel has exhausted, to no avail, other means of obtaining the evidence, including deposing MGA. As its 30(b)(6) designee, Mr. Khare, pointed out, Ms. Arant and Mr. McFarland were the people involved in inputting information in MGA's copyright registrations for Bratz. Only they can explain the factual bases for the changes made to these documents. In addition, MGA points to no one who can substitute for Mr. McFarland in testifying about MGA's representations to other Courts that now conflict with its positions in this case.

**E. Mattel's Questioning Regarding the Substance of Public Copyright Applications and Registrations Does Not Invade Privileged Information**

MGA asserts that Mattel "cannot show that Mr. McFarland has any non-privileged information that is 'crucial' to this case."[38] As discussed herein, the information Mattel seeks is "crucial." MGA is also incorrect that Mattel cannot point to any non-privileged information. Further, MGA fails to explain how the information Mattel seeks is privileged. Nor can it. Mattel seeks information

---

37 Motion, at 5:4-5.

38 Motion, at 6:3-4.

concerning the factual bases for certain dates in MGA's copyright applications and trademark applications, MGA's associated communications with the Copyright Office and Trademark Office and MGA's representations to Courts in other infringement cases. All of this is public information. Mr. McFarland is a percipient witness to these facts. As the Discovery Master has held, there can be no good faith expectation that information provided for public disclosure or that was publicly disclosed would be maintained confidential.[39] The attorney-client privilege does not apply.

Further, to the extent MGA has legitimate basis to assert privilege or work product to questions while at the deposition, that is no reason to preclude all questioning. Instead, such issues can and should be considered on a question-by-question basis, with MGA asserting instructions during the course of the deposition according to the usual rule. The Discovery Master and the District Court previously rejected MGA's arguments that it was entitled to block deposition testimony based on blanket assertions of privilege.[40] Those arguments fare no better this time around and provide no legitimate basis for a protective order here. Indeed, as MGA's case law acknowledges, "protective orders that completely bar a deposition are not favored." Lloyd, 2006 WL 7533243 at *1.

**Conclusion**

MGA's motion to quash and for a protective order should be denied.

DATED: March 27, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Jon D. Corey
Jon D. Corey
Attorneys for Mattel, Inc.

---

[39] Corey Dec., Exh. 13.

[40] Corey Dec., Exhs. 13, 14.

# EXHIBIT B

AO88 (Rev. 12/07) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT, an individual

V.

MATTEL, INC., a Delaware corporation

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] CV 04-9049 SGL (RNBx)
Consolidated with cases
CV 04-9059 and CV 05-2727

TO: Larry McFarland, Keats, McFarland & Wilson
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212

[X] YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| US District Court - Central District of California<br>Eastern Division - Riverside Courthouse<br>3470 Twelfth Street<br>Riverside, CA 92501 | Hon. Stephen Larson<br>Court Room 1<br>DATE AND TIME<br>July 22, 2008<br>9:00 a.m. |

[ ] YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

[X] YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHMENT "A"

| PLACE | DATE AND TIME |
|---|---|
| | |

[ ] YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Mattel, Inc. | July 15, 2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
James Webster, Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017 (213) 443-3000

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

ATTACHMENT A (LARRY McFARLAND)

Documents To Be Produced

(1) ALL original photographs of the dolls "Musical Trendy Teenies", "Angel Doll", and "Fashion Doll".

(2) ALL of the actual doll products known as "Musical Trendy Teenies", "Angel Doll", and "Fashion Doll".

(3) ALL DOCUMENTS referring or relating to the lawsuit filed by MGA against Multitoy in 2004, styled MGA ENTERTAINMENT, INC., Plaintiff v. MULTITOY, INC., YUAN-LAN LIU, an individual, JEFF WU, an individual, and dba IMG TOYS, ALL TOY IMPORTS, INC., SUSAN LIU, an individual, TOYSDIVISION, INC., TOM LIU, an individual, and DOES 1-10, Defendants.

(4) ALL ORIGINALS of any drawings, sculpts, molds, and other tangible items relating to the dolls known as "Musical Trendy Teenies", "Angel Doll", and "Fashion Doll".

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

SERVED ON (PRINT NAME) MANNER OF SERVICE

SERVED BY (PRINT NAME) TITLE

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ____________________
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

**(c) Protecting a Person Subject to a Subpoena.**

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.**

The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# EXHIBIT C

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California 94111
Telephone: (415) 774-2611
Facsimile: (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br>Plaintiff,<br>v.<br>MATTEL, INC., a Delaware corporation,<br>Defendant. | CASE NO. CV 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MGA'S MOTION TO QUASH LARRY MCFARLAND'S DEPOSITION SUBPOENA OR FOR PROTECTIVE ORDER** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

## I. INTRODUCTION

On March 17, 2008, MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively "MGA") submitted a Motion to Quash Larry McFarland's Deposition Subpoena or for Protective Order. On March 27, 2008, Mattel, Inc. ("Mattel") submitted an opposition, and on April 7, 2008, MGA submitted a reply.

Mr. McFarland ("McFarland") has not submitted any briefing. Pursuant to Paragraph 5 of the Stipulation and Order for Appointment of a Discovery Master, the Discovery Master finds it appropriate to decide the motion without oral argument.

## II. BACKGROUND

McFarland is counsel for MGA. He signed early copyright registrations related to Bratz. In those registrations, he stated that the "first publication" of Bratz was February 12, 2001. In 2005, after this lawsuit began, MGA submitted Supplemental Copyright Registrations stating that the "first publication" was "as least as early as May 21, 2001."

McFarland has also been involved in this case since the time it was filed. MGA's Motion at p.1; McFarland Decl., ¶1. He has "participated in legal defense discussions" with MGA's prior trial counsel and now with MGA's current trial counsel. Supp. McFarland Decl., ¶1. Currently, McFarland represents several third party witnesses, including Margaret Leahy, Veronica Marlow, Sarah Halpern, Elise Cloonan and Lucy Arant. McFarland Decl., ¶2.

In January of 2008, the district court granted Mattel leave to take McFarland's deposition, along with approximately forty-five other individuals and entities. Mattel made numerous attempts to serve McFarland, and eventually the district court issued an Order to Show Cause why McFarland should not be ordered to appear for deposition. On February 25, 2008, the district court discharged the Order to Show Cause. The court precluded McFarland from objecting to Mattel's subpoena on the basis of notice, service or timeliness, but made clear that all other objections to Mattel's subpoena were preserved and to be adjudicated by the Discovery Master.

MGA moves to quash McFarland's subpoena, or in the alternative, for a protective order on the grounds that, *inter alia*, the subpoena is improper pursuant to the test established by Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986), which limits the depositions of opposing counsel. Mattel opposes the motion, contending that McFarland may be the only available percipient witness on certain key issues in the case, and that in particular, he possesses unique non-privileged information regarding the dates of "first publication" stated in several early

copyright registrations he submitted on MGA's behalf to the Copyright Office. Further, Mattel contends that Shelton is not the law of this Circuit, and that in any event, Shelton does not apply to McFarland because he is not trial counsel.

## III. STANDARDS

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). All discovery, however, is subject to the limitations imposed by Rule 26(b)(2)(C), Fed.R.Civ.P., which provides that the court must limit the frequency or extent of discovery otherwise allowed by the Federal Rules of Civil Procedure or by local rule if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

Fed.R.Civ.P. 30(a) provides that depositions may be taken of "any person." There is no express prohibition against deposing opposing counsel. See Shelton, 805 F.2d at 1327. Courts, however, have cautioned that depositions of opposing counsel should be allowed only in limited circumstances. In Shelton, the Eighth Circuit Court of Appeals explained the judicial attitude toward such depositions as follows:

> We do not hold that opposing trial counsel is absolutely immune from being deposed. We recognize that circumstances may arise in which the court should order the taking of opposing counsel's deposition. But those circumstances should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel, see e.g., Fireman's Fund Ins. Co. v. Superior Court, 72 Cal.App.3d 786, 140 Cal. Rptr. 677 (1977); (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

Shelton, 805 F.2d at 1327.[1]

IV. DISCUSSION

As a preliminary matter, Mattel disputes whether MGA has standing to bring the instant motion.[2] Mattel's position is without merit. By bringing this motion, MGA seeks to protect its confidential attorney-client communications with McFarland, which it unquestionably has standing to do. See e.g. Unigene Labs., Inc. v. Apotex, Inc., No. C07-80218 SI, 2007 WL 2972931, at *4 (N.D. Cal. Oct. 10, 2007) (granting defendant's motion to quash the deposition subpoena of defendant's attorney).

Mattel seeks information from McFarland related to the "factual basis for MGA's copyright applications and registrations for Bratz-- including the dates of creation and publication-- that Mr. McFarland submitted to the Copyright Office and that were changed after the inception of this litigation." Mattel's Opp. at p.13. McFarland, however, is not the only source of information regarding the representations contained in MGA's applications and registrations for Bratz. In fact, Mattel has already received substantial relevant, non-privileged discovery regarding the creation and publication of Bratz directly from Carter Bryant and many others who were personally involved in developing Bratz and bringing it to market. Furthermore, Mattel has already received substantial discovery relating to MGA's trademark and copyright applications. MGA provided Mattel with copies of MGA's copyright applications and registrations and made several individuals for deposition regarding those applications and registrations, including Kerri Brode, Nana Ashong, Bryan Armstrong, Mitchell Kamarck (MGA's former in-house counsel), and Samir Khare (MGA's current in-house counsel). In particular, MGA's 30(b)(6) witness, Mr. Khare, testified extensively regarding MGA's applications for

---

[1] The Ninth Circuit has not adopted Shelton, supra. However, Shelton is generally regarded as the leading case on deposing opposing counsel. In any event, Rule 26(b)(2)(C), Fed.R.Civ.P., ultimately dictates the appropriate limits of discovery.

[2] McFarland apparently did not serve any objections to the subpoena. Nor has McFarland submitted any briefing in connection with the instant motion.

copyright and trademark registrations as to Bratz. Mr. Khare also testified regarding the basis of the correction date of publication for certain copyright registrations.

Mattel next asserts, without explanation, that McFarland has "unique knowledge concerning changes in MGA's copyright registrations for Bratz dolls" (Mattel's Opp. at p.13), and that such information is crucial to its case. Mattel, however, has already questioned Mr. Khare and other witnesses regarding the date changes made to MGA's copyright registrations for Bratz dolls.[3] Mattel has not identified any "unique" knowledge McFarland may possess beyond that which Mr. Khare and others have already provided to Mattel. There is no allegation that McFarland was personally involved in the creation or publication of Bratz. Whatever "unique" knowledge McFarland may possess on these subjects (beyond what has already been provided to Mattel) was received from MGA, and therefore, is very likely to be protected by the attorney-client privilege.

Lastly, Mattel contends that McFarland possesses percipient knowledge regarding statements he has made on behalf of MGA in other lawsuits regarding the similarity between the Bratz dolls and Bryant's drawings that are purportedly inconsistent with MGA's position in this case. Mattel, however, has already deposed MGA's 30(b)(6) designee on Topic No. 34 of Mattel's Second Notice of Deposition of MGA, which essentially called for MGA's designee to testify regarding the testimony, transcripts, declarations, affidavits and other sworn written statements made by or on behalf of MGA that referred or related to Bratz in other lawsuits.

In sum, Mattel has had ample opportunity to obtain the information it seeks. In view of the substantial discovery Mattel has already sought and received regarding MGA's trademark and copyright applications, McFarland's deposition is duplicative and cumulative. McFarland is also not likely to have any relevant non-privileged information beyond that which Mattel has already

---

[3] Mattel contends that MGA's Rule 30(b)(6) witness was not knowledgeable and could not fully explain the basis for the date changes. Mattel's complaints do not justify deposing yet another witness on the same subject. The Federal Rules of Civil Procedure provide for other forms of relief to address a Rule 30(b)(6) witness' lack of preparedness or failure to provide complete responses.

sought and received in this case. Finally, the burden and expense associated with conducting McFarland's deposition at this late stage in the litigation outweigh its likely benefit, taking into consideration all of the factors in Rule 26(b)(2)(C)(iii), Fed.R.Civ.P.

V. CONCLUSION

For the reasons set forth above, MGA's motion to quash McFarland's deposition subpoena, or in the alternative for a protective order, is granted pursuant to Rule 26(b)(2)(C), Fed.R.Civ.P.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, MGA shall file this Order with the Clerk of Court forthwith.

Dated: April 29, 2008

Edward A. Infante

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

**PROOF OF SERVICE BY E-MAIL**

I, Anthony Sales, not a party to the within action, hereby declare that on May 1, 2008, I served the attached: ORDER GRANTING MGA'S MOTION TO QUASH LARRY MCFARLAND'S DEPOSITION SUBPOENA OR FOR PROTECTIVE ORDER in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Diane Hutnyan, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dianehutnyan@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| David C. Scheper, Esq. | Overland, Borenstein, et al. | dscheper@obsklaw.com |
| Larry W. McFarland, Esq. | Keats, McFarland & Wilson | lmcfarland@kmwlaw.com |
| Christian Dowell, Esq. | Keats, McFarland & Wilson | cdowell@kmwlaw.com |
| Robyn Aronson, Esq. | Davis Wright Tremaine | robynaronson@dwt.com |
| Alonzo Wickers, Esq. | Davis Wright Tremaine | alonzowickers@dwt.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 1, 2008, at San Francisco, California.

Anthony Sales