# EXHIBIT D

1   THOMAS J. NOLAN (Bar No. 66992)
    (tnolan@skadden.com)
2   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    300 South Grand Avenue, Suite 3400
3   Los Angeles, CA  90071-3144
    Tel.: (213) 687-5000/Fax: (213) 687-5600

4   RAOUL D. KENNEDY (Bar No. 40892)
    (rkennedy@skadden.com)
5   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    4 Embarcadero Center, 38th Floor
6   San Francisco, CA  94111-5974
    Tel.: (415) 984-6400 / Fax: (415) 984-2698
7

8   Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
    MGAE de Mexico, S.R.L. DE C.V., and Isaac Larian

9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12  CARTER BRYANT, an individual,    )  CASE NO. CV 04-9049 SGL (RNBx)
                                     )
13                     Plaintiff,    )  Consolidated with Case No. 04-9059 and
                                     )  Case No. 05-2727
14          v.                       )
                                     )  **DISCOVERY MATTER**
15  MATTEL, INC., a Delaware         )  **[To be heard by Discovery Master**
    corporation,                     )  **Hon. Edward A. Infante (Ret.)]**
16                                   )
                       Defendant.    )  DECLARATION OF ROBERT
17  ─────────────────────────        )  HERRINGTON IN SUPPORT OF MGA
                                     )  ENTERTAINMENT INC.'S MOTION TO
18  AND CONSOLIDATED ACTIONS         )  QUASH LARRY MCFARLAND'S
                                     )  DEPOSITION SUBPOENA
19  **CONFIDENTIAL –**               )
    **ATTORNEY'S EYES ONLY –**       )  Date:  TBD
20  **UNDER SEAL PURSUANT TO**       )  Time: TBD
    **PROTECTIVE ORDER**             )  Place: JAMS
21                                   )
                                     )  **Phase 1**
22                                   )  Discovery Cut-off: January 28, 2008
                                     )  Pre-Trial Conference:  May 5, 2008
23                                   )  Trial Date:  May 27, 2008

24

25

26

27

28

I, Robert J. Herrington, declare and state as follows:

I am an attorney with Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), counsel of record for MGA Entertainment, Inc. ("MGA"), and Isaac Larian.

1.     On or about November 19, 2007, Mattel Inc.'s ("Mattel") filed its Motion For Leave To Take Additional Discovery And Objections To Discovery Master Order of September 28, 2007.  A true and correct copy of the Motion is attached hereto as **Exhibit 1**.

2.     Attached as **Exhibit 2** is a true and correct copy of the Minute Order issued by Judge Larson on February 4, 2008.

3.     On or about February 11, 2008, Larry McFarland, MGA's outside legal counsel, filed the Response To Order To Show Cause of Larry McFarland, Lucy Arant, Sarah Halpern, And Peter Marlow.  A true and correct copy of the response is attached hereto as **Exhibit 3**.

4.     Attached hereto as **Exhibit 4** is a true and correct copy of excerpts from the February 25, 2008 hearing before Judge Larson.

5.     Attached as **Exhibit 5** is a true and correct copy of the Minute Order issued by Judge Larson on February 25, 2008.

6.     On March 5, 2008, I sent a letter to Jon Corey and Dylan Proctor of Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP.  A true and correct copy of the letter is attached hereto as **Exhibit 6**.

7.     On March 11, 2008, Jon Corey sent me a letter.  A true and correct copy of the letter is attached hereto as **Exhibit 7**.

8.     Samir K. Khare was deposed in this case on September 20, 2007.  A true and correct copy of excerpts from the certified reporter's transcript of that proceeding is attached hereto as **Exhibit 8**.

9.      Nana Ashong was deposed in this case on January 28, 2008.  A true and correct copy of excerpts from the certified reporter's transcript of that proceeding is attached hereto as **Exhibit 9**.

10.     Bryan Armstrong was deposed in this case on July 18, 2007.  A true and correct copy of excerpts from the certified reporter's transcript of that proceeding is attached hereto as **Exhibit 10**.

11.     Mitchell Kamarck was deposed in this case on January 28, 2008.  A true and correct copy of excerpts from the certified reporter's transcript of that proceeding is attached hereto as **Exhibit 11**.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on March 17, 2008, at Los Angeles, California.

By: _____
Robert Herrington

Exhibit 1

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5      (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
7   Facsimile:  (213) 443-3100

8   Attorneys for Mattel, Inc.

9                   UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11                        EASTERN DIVISION

12  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

13              Plaintiff,               Consolidated with
                                         Case No. CV 04-09059
14        vs.                            Case No. CV 05-02727

15  MATTEL, INC., a Delaware             Hon. Stephen G. Larson
    corporation,
16                                       AMENDED NOTICE OF MOTION
                Defendant.               AND MOTION OF MATTEL, INC.
17                                       FOR LEAVE TO TAKE
                                         ADDITIONAL DISCOVERY AND
18  AND CONSOLIDATED ACTIONS             OBJECTIONS TO DISCOVERY
                                         MASTER ORDER OF SEPTEMBER
19                                       28, 2007; AND

20                                       MEMORANDUM OF POINTS AND
                                         AUTHORITIES
21
                                         [Declaration of B. Dylan Proctor filed
22                                       previously]

23                                       Hearing Date:  January 7, 2008
                                         Time:          10:00 a.m.
24                                       Courtroom:     1

25                                       **Phase 1:**
                                         Discovery Cut-off:      January 28, 2008
26                                       Pre-trial Conference:   May 5, 2008
                                         Trial Date:             May 27, 2008
27

28

07209/2300969.1072092/2
00969.107209/2300302.1                          -i-
─────────────────────────────────────────────────────
        MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

Exhibit 1,
P. 4
Exhibit D, Page 42

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that on January 7, 2008, at 10:00 a.m., or as soon

3   thereafter as the matter may be heard, in the courtroom of Honorable Stephen G.

4   Larson, located at 3470 Twelfth Street, Riverside, California, 92501, Mattel, Inc. will,

5   and hereby does, move the Court, pursuant to <u>Federal Rule of Civil Procedure</u> 26(b)

6   and the Court's February 12, 2007 Scheduling Order, for an order granting Mattel leave

7   to take additional depositions, including <u>Rule</u> 30(b)(6) depositions of defendants MGA

8   Entertainment, Inc., and MGAE de Mexico S.R.L. de C.V., beyond the current limit set

9   by the Court and to serve additional interrogatories on defendants. Pursuant to 28

10   U.S.C. § 636(b)(1), Mattel also seeks an additional 12 hours to depose Carter Bryant, in

11   addition to the seven hours already permitted by Discovery Master Infante.

12      Mattel makes this Motion on the grounds that the breadth and complexity of this

13   case warrant more than the 24 depositions and 50 interrogatories permitted by the

14   Court's Scheduling Order. Mattel further makes this Motion on the grounds that, given

15   Bryant's central role in the hundreds of products that MGA has sued upon in this case,

16   and because both the parties and third-parties have produced many millions of pages of

17   documents since Mr. Bryant's deposition in 2005, seven hours is not enough time to

18   fully depose Mr. Bryant.

19      This Motion is based on this Amended Notice of Motion and Motion, the

20   accompanying Memorandum of Points and Authorities, the Declaration of B. Dylan

21   Proctor and all other papers filed on November 19, 2007, the records and files of this

22   Court, and all other matters of which the Court may take judicial notice.

23

24

25

26

27

28

-ii-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

Exhibit 1,
P. 5

<u>**Statement of Local Rule 7-3 Compliance**</u>

1

2      The parties met and conferred pursuant to <u>Local Rule</u> 7-3 on October 3, 2007,

3   and times thereafter, but were not able to resolve this motion.

4

5   DATED: November 20, 2007          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

6

7                                      By Jon Corey /s/

8                                        Jon Corey
                                         Attorneys for Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2300969.1072097
00969.107209/2300302.

-iii-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

Exhibit 1,
P. 6

Exhibit D, Page 44

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| PRELIMINARY STATEMENT | | 1 |
| STATEMENT OF FACTS | | 3 |
| ARGUMENT | | 6 |
| I. | THE RULES CONTEMPLATE ADDITIONAL DISCOVERY | 6 |
| | A. Each Category of Claims Warrants More Depositions | 8 |
| | 1. The Bratz Claims Require Additional Depositions | 8 |
| | 2. Mattel's Trade Secret and RICO Claims and MGA's Unfair Competition Claims Require Additional Depositions | 12 |
| | B. Mattel Needs Additional Depositions Because the Integrity of MGA's and Bryant's Preservation of Documents Is At Issue | 14 |
| | C. Mattel Seeks Leave to Take 30(b)(6) Depositions On Non-Duplicative Topics | 15 |
| | D. Mattel Meets The Requirements for Additional Discovery | 15 |
| II. | THE COURT SHOULD GRANT LEAVE WITH RESPECT TO MATTEL'S INTERROGATORIES | 16 |
| III. | THE COURT SHOULD ALLOW ADDITIONAL TIME FOR THE BRYANT DEPOSITION | 20 |
| CONCLUSION | | 25 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

07209/2300969.107209/2?
00969.107209/2300302.

-i-

Exhibit 1,
P. 7

1

## TABLE OF AUTHORITIES

2                                                                          **Page**

3

### Cases

4

5  Andamiro v. Konami Amusement of Am.,
       2001 WL 535667 (C.D. Cal. April 26, 2001) .......................................... 8

6  Bahn v. NME Hosps., Inc.,
       929 F.2d 1404 (9th Cir. 1991) ............................................................... 22

7

8  Bromgard v. Montana,
       2007 WL 1101179 (D. Mont. April 11, 2007) ................................... 11, 18

9  Collaboration Prop. v. Polycom, Inc.,
       224 F.R.D. 473 (N.D. Cal. 2004) ........................................................... 8

10

11  Fresenius Med. Care Hldgs. Inc. v. Roxane Labs., Inc.,
       2007 WL 764302  Proctor Dec., Ex. 43 ............................................... 23

12  Rx USA Wholesale, Inc. v. McKesson Corp.,
       2007 WL 1827335 (E.D.N.Y. June 25, 2007) ............................ 7, 11, 19

13

14  Whittingham  v. Amherst Coll.,
       163 F.R.D. 170 (D. Mass. 1995) ............................................................ 7

15

### Statutes

16

      Cal. Civ. Code § 3426.1 .......................................................................... 20

17  Fed. R. Civ. P. 26(b) ........................................................................... 8, 20

18  Fed. R. Civ. P. 30(a)(2)(A) ................................................................... 7, 20

19  Fed. R. Civ. P. 33 ............................................................................ 7, 8, 20

20  Local Rule 7-3 .......................................................................................... 3

21  Fed. R. Civ. P. 30(b)(6) ........................................................ 9, 14, 16, 17

22  Fed. R. Civ. P. 53(e) ............................................................................. 21

23

24

25

26

27

28

07209/2300969.107209/2
00969.107209/2300302.1

Exhibit 1 ,
P. 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

1      In its Scheduling Order, the Court limited each side to 50 interrogatories and 24

2  fact depositions.  The Court recognized, however, that the case's complexity could

3  require additional depositions or interrogatories and invited motions for additional

4  discovery, if necessary: "I don't want to say they are soft limits [on the number of

5  depositions], but they are limits which the Court would certainly understand or would

6  invite counsel to submit a motion to expand if there's reason to.  But I just want to have

7  some parameters placed on this at the outset."   Likewise, with respect to the

8  interrogatory limit, the Court stated:  "[L]et's try and work within the confines of the

9  50 interrogatories, and if you need more, again, the Court is going to be forthcoming, if

10 there's a need for it."[1]  Mattel respectfully submits that time has come.

11      Under the Federal Rules, leave to take additional discovery "shall be granted" to

12 the extent consistent with the principles set forth in Rule 26(b)(2).  Fed. R. Civ. P.

13 30(a)(2)(A) & 33(a).  The additional discovery Mattel seeks is appropriate under that

14 framework.  It is not duplicative of prior discovery, Mattel has not had an adequate

15 opportunity to take discovery on these matters, and the substantial benefits of discovery

16 on these central issues outweigh any burden.  MGA has identified many dozens of

17 witnesses with knowledge of the parties' claims or defenses.  Mattel has sued MGA for

18 inducing several Mattel employees to misappropriate many thousands of pages of

19 documents containing Mattel trade secrets over an extended period of time.  For its

20 part, MGA has accused over 400 Mattel products of infringing the trade dress of more

21 than 200 MGA products.  As MGA has proclaimed, it will be seeking "billions" of

22 dollars from Mattel on its claims alone.  Additional depositions are warranted given the

23 breadth and complexity of the claims and defenses in this case and the stakes involved.

---

[1]  February 12, 2007 Scheduling Conference Tr. at 22:12-15 and 24:5-7, Exhibit 7 to
the Declaration of B. Dylan Proctor, dated November 19, 2007 ("Proctor Dec.").

07209/2300969.1

**Exhibit 1,
P. 9**

Exhibit D, Page 47

1    To date, Mattel has taken 18 depositions, which leaves Mattel with six
2  remaining.  Mattel has been able to take only one deposition on its counterclaims or
3  defenses to MGA's unfair competition claims, and as of yet, Mattel has been unable to
4  depose any of the individuals actively involved in the theft of Mattel's trade secrets.
5  The specific individuals who Mattel seeks to depose are identified below, along with
6  the justification for each.  In addition, Mattel cannot obtain without the Court's leave
7  the corporate testimony of MGA or MGAE de Mexico on the facts related to either
8  MGA's unfair competition claims or Mattel's counterclaims.  Mattel seeks leave to
9  serve the First Notice of Deposition of MGAE de Mexico, attached as Exhibit A, and
10  an additional Notice of Deposition of MGA, attached as Exhibit B, on those subjects.

11    Mattel also seeks leave to serve defendants with additional interrogatories.
12  Mattel has served interrogatories seeking MGA's contentions with respect to the
13  creation of Bratz and MGA's unfair competition claims.   Mattel's proposed
14  interrogatories, which are attached as Exhibit C, seek information related to Mattel's
15  counterclaims and to MGA's claims against Mattel for alleged unfair competition, as
16  well as certain of defendants' defenses.[2]

17    Finally, Mattel seeks additional time to depose Mr. Bryant.  Although Bryant was
18  deposed in 2004, since that time MGA and Bryant have produced millions of pages of
19  documents that they had long withheld until compelled by the Court, and the scope of
20  the claims in these consolidated cases has increased dramatically.  Only after Bryant's
21  deposition occurred, MGA asserted its broad unfair competition claims against Mattel.
22  Only after Bryant's deposition occurred, Mattel asserted its counterclaims, including its
23  copyright infringement and RICO counterclaims, against Bryant and other defendants.
24  And, despite the fact that Mattel sought documents relating to the origins of Bratz

25
26    [2]  Because defendants refuse to answer Mattel's previously served interrogatories based
on spurious claims that they exceed the 50 limit, Mattel seeks leave as to them to avoid
27  defendants' further quarreling over the counting of interrogatories and thereby obtain
obvious information about defendants' own contentions and other critical subjects.
28

Exhibit __1__,
P. __10__

1  before Bryant's initial deposition, both MGA and Bryant were, unbeknownst to Mattel,

2  withholding such documents at the time of the deposition – this was discovered only

3  after multiple motions to compel brought by Mattel were granted.   Judge Infante

4  recognized that Bryant is the "most knowledge witness with respect to virtually all of

5  the factual issues" and claims in these matters.[3]  Judge Infante nevertheless gave Mattel

6  only seven additional hours for Bryant's deposition (on top of two hours previously

7  granted due to Bryant's and his counsel's improper conduct during the prior deposition).

8  That simply is not enough to depose Bryant on MGA's claims, Mattel's counterclaims

9  and all the newly produced evidence that post-dates the 2004 deposition.   Mattel

10 therefore requests that this Court grant additional time of another 12 hours for a total of

11 21 additional hours to question Bryant.

12                    **Statement of Facts**

13        **Mattel's Original Complaint**.  Mattel filed its initial Complaint on April 27, 2004,

14 alleging that Carter Bryant breached his duties to Mattel by working with and assisting

15 a Mattel competitor, MGA, while he was employed by Mattel.[4]  While at Mattel,

16 Bryant worked on the "Bratz" project.[5]  On December 7, 2004, MGA filed an answer in

17 intervention claiming that the action put at issue MGA's rights to Bratz.[6]

18        **MGA's Complaint**.  MGA filed a complaint against Mattel on April 13, 2005

19 alleging that Mattel engaged in "serial copycatting" of the Bratz dolls.[7]  Mattel's action

20 and MGA's action were later consolidated along with a declaratory relief action filed by

21 Bryant, which was later dismissed.[8]

22        **Mattel's Counterclaims**.  On November 19, 2006, Mattel moved for leave to

23 amend its complaint.  The Court granted Mattel's motion, allowing Mattel's new claims

24    [3]  9/27/07 Hearing Tr. at 24:24-25:2, Proctor Dec., Ex 85.
25    [4]  Proctor Dec., Ex. 1.
      [5]  Id. ¶¶ 12-13.
26    [6]  Proctor Dec., Ex. 2.
      [7]  Proctor Dec., Ex. 3.
27    [8]  Minute Order Re Consolidation (June 19, 2006), Proctor Dec., Ex. 4.

28

Exhibit 1 ,
P. 11

1   to be alleged as counterclaims to MGA's complaint.[9]  Mattel filed its Second Amended

2   Answer and Counterclaims on July 12, 2007.  Mattel's counterclaims against MGA

3   Entertainment, Inc., MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L.

4   de C.V. include claims for copyright infringement, violation of RICO, conspiracy to

5   violate RICO, misappropriation of trade secrets, intentional interference with contract,

6   aiding and abetting breach of fiduciary duty, aiding and abetting breach of duty of

7   loyalty, conversion and unfair competition.[10]  MGA's current amended answer to

8   Mattel's counterclaims asserts twenty-two affirmative defenses.[11]

9        Scheduling Conference.  At the February 12, 2007, and as reflected in a Minute

10  Order, the Court limited depositions to 24 per side and interrogatories to 50 per side.[12]

11  The Court recognized that the parties might need more depositions or interrogatories:

> 12   I don't want to say they are soft limits [on the number of depositions], but they are limits which the Court would
> 13   certainly understand or would invite counsel to submit a motion to expand if there's reason to.  But I just want to have
> 14   some parameters placed on this at the outset.
> 15   . . .
> 16   [L]et's try and work within the confines of the 50 interrogatories, and if you need more, again, the Court is
> 17   going to be forthcoming, if there's a need for it.[13]

18

19       Mattel's Interrogatories.  To date, Mattel has propounded 50 interrogatories.[14]  In

20  June 2007, Mattel propounded 19 interrogatories on MGA, MGA Hong Kong, Larian

21

22     [9]  1/11/07 Order Re Mattel's Motion for Leave to Amend, Proctor Dec., Ex. 5.

    [10]  See Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims,
23  dated July 12, 2007 ("Mattel's Counterclaims"), Proctor Dec., Ex. 16.

    [11]  See MGA's Amended Answer and Affirmative Defenses ("MGA's Amended
24  Answer"), Proctor Dec., Ex. 46.  MGA had filed its original answer on August 13, 2007,

25  Proctor Dec., Ex. 17.  After meeting and conferring, MGA acknowledged deficiencies in
    its defenses and served its amended answer on September 19, 2007.

26     [12]  2/12/07 Scheduling Order, at 1, Proctor Dec., Ex. 6.

    [13]  2/12/07 Scheduling Conference Tr., at 22:12-15 and 24:5-7, Proctor Dec., Ex. 7.
27

    [14]  See Proctor Dec., Exs. 8-12, 15, 64-68.
28

-4-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

Exhibit 1,
P. 12

1  and Bryant, seeking information about Bratz development, their affirmative defenses to

2  Mattel's claims, defendants' contentions regarding unfair competition claims and

3  MGA's benefit from Bratz.[15] Defendants claimed they exceeded the interrogatory limit,

4  and on September 5, 2007, Judge Infante ruled that identical interrogatories served on

5  multiple parties, as well as interrogatories asking defendants to "state all facts"

6  supporting a particular contention, "identify all persons with knowledge of such facts,"

7  and "identify all documents" relevant to such facts, would each count as only one

8  interrogatory.[16] However, an interrogatory asking a party to state facts supporting

9  different affirmative defenses would count as a different interrogatory per defense.[17] In

10  accordance with that ruling, on September 21, 2007, Mattel served revised sets of

11  fifteen interrogatories.[18] Defendants nevertheless still refuse to substantively answer

12  these interrogatories, including because they allegedly exceed the number permitted.[19]

13       Mattel Depositions.  To date, Mattel has taken 18 depositions.  Mattel has had

14  good cause for each of those depositions.  They include:

15  • Carter Bryant – defendant

16  • Victoria O'Connor -- former MGA executive with knowledge of MGA's and Larian's spoliation of evidence

17  • Jaqueline Prince -- witness allegedly supporting Bryant's Bratz creation
18    story

19  • Isaac Larian – defendant

20  • Steve Linker -- third party with knowledge of work on Bratz before Bryant left Mattel

21  • Paula Garcia – Bratz project manager from the start who worked on
22    Bratz with Bryant before he left Mattel

23  • Brooke Gilbert -- Bryant's niece with knowledge of Bryant's computer on which Bryant installed and used "Evidence Eliminator"

24

25  [15] Proctor Dec., Ex. 13.

26  [16] 9/5/07 Order Re Mattel's Interrogatories, at 5-6, Proctor Dec., Ex. 14.
    [17] See id. at 7.

27  [18] Proctor Dec., Ex. 45.
    [19] See Proctor Dec., Exs. 73-74.

28

07209/2300969.1

-5-

Exhibit 1 ,
P. 13

1

- Kerri Brode – MGA employee with knowledge of Bryant's work on Bratz while at Mattel

2

- Dave Malacrida – MGA public relations employee with knowledge regarding early Bratz design and marketing

3

4

- Janet Bryant – Bryant's mother and relied upon by Bryant to establish alleged date of Bratz creation

5

- Thomas Bryant – Bryant's father and relied upon by Bryant to establish alleged date of Bratz creation

6

7

- Sarah Chui – worked on Bratz in 2000 for MGA Hong Kong

8

- Richard Irmen – Bryant's partner and relied upon by Bryant to establish alleged date of Bratz creation

9

10

- Maureen Tkacik – *Wall Street Journal* reporter to whom Larian stated, in an interview, that he chose Mr. Bryant's idea for the Bratz over several others after holding "a sort of fashion-doll design contest in late 1999" -- a time during which Bryant was employed by Mattel and months before MGA and Bryant now say they first were introduced

11

12

13

- MGA Entertainment, Inc. – defendant

14

- MGA Entertainment (HK) Limited – defendant

15

- Schyler Bacon – MGA employee who recruited Mattel employees who stole trade secrets

16

- Denise O'Neal – *Chicago Sun Times* reporter to whom Larian made prior inconsistent statements, including that MGA's creative team decided to use the "Brats" name but to change the "s" to a "z"

17

18

## Argument

19

### I.   THE RULES CONTEMPLATE ADDITIONAL DISCOVERY

20

The Federal Rules require that a party obtain leave before serving interrogatories

21

or taking depositions beyond the limits established by the Court. See Fed. R. Civ. P.

22

33(a) (interrogatories); id. 30(a)(2)(A) (depositions). The purpose of these limits is to

23

allow the Court to "maintain a 'tighter rein' on the extent of discovery and to minimize

24

the potential cost of [w]ide ranging discovery". Rx USA Wholesale, Inc. v. McKesson

25

Corp., 2007 WL 1827335, at *2-3 (E.D.N.Y. June 25, 2007) (quoting Whittingham v.

26

Amherst Coll., 163 F.R.D. 170, 171-72 (D. Mass. 1995)). The limits, however, are not

27

intended to "prevent needed discovery," and courts have "broad[] discretion" to allow

28

-6-

Exhibit 1,
P. 14

1   additional discovery "based on the complexity" of the case at hand.  Notes of the

2   Advisory Committee (1993) to Fed. R. Civ. P. 26(b) & 33.  Leave to take additional

3   discovery "shall be granted" to the extent consistent with the principles set forth in Rule

4   26(b)(2). Fed. R. Civ. P. 30(a)(2)(A), & 33(a).  Courts permit additional interrogatories

5   or depositions after considering whether:

6         (1) the discovery sought is unreasonably cumulative or duplicative, or is
         obtainable from some other source that is more convenient, less
7         burdensome, or less expensive; (2) the party seeking discovery has [had]
         ample opportunity obtain the information sought; or (3) the burden or
8         expense of the proposed discovery outweighs its likely benefit, taking into
         account the needs of the case, the amount in controversy, the party's
9         resources, and the importance of the proposed discovery in resolving the
         issues.
10
11
12   Andamiro v. Konami Amusement of Am., 2001 WL 535667, at *2 (C.D. Cal. April

13   26, 2001) (depositions); see also Collaboration Prop. v. Polycom, Inc., 224 F.R.D.

14   473, 475 (N.D. Cal. 2004) (interrogatories).

15   **II.    MATTEL SHOULD BE GRANTED ADDITIONAL DEPOSITIONS**

16         Mattel should be permitted to take more than 24 depositions in these

17   consolidated cases.  This action contains three broad categories of significant claims,

18   each of which necessitates additional depositions:  Mattel's Bratz-related claims,

19   MGA's unfair competition claims, and Mattel's trade secret theft and RICO claims.

20   MGA's supplemental initial disclosures identified 86 witnesses with knowledge of

21   MGA's claims and defenses, 62 of whom are not Mattel employees.[20]  Mattel's

22   supplemental disclosures contain nearly double the number of witnesses with

23   knowledge, only 43 of whom are Mattel employees.[21] Based on the million-and-a-half

24   pages that MGA has recently produced, Mattel is preparing third supplemental

25   ───────────────
     [20]  See MGA Entertainment, Inc.'s Supplemental Disclosures and MGA Entertainment
26   (HK) Limited, MGAE de Mexico S.R.L. de C.V. and Larian's Initial Disclosures Under
     Rule 26(a)(1), dated September 21, 2007, at 1-16, Proctor Dec., Ex. 18.
27   [21]  See Proctor Dec., Ex. 19, at 3-19.

28

Exhibit 1,
P. 15

1   disclosures which will name additional witnesses. Mattel can rely on <u>Rule</u> 30(b)(6) to

2   obtain some information, but Mattel cannot effectively prosecute or defend these cases

3   with only 24 depositions.

   **A.   <u>Each Category of Claims Warrants More Depositions</u>**

   1.   <u>The Bratz Claims Require Additional Depositions</u>

6       The number of witnesses involved with the creation of Bratz or with knowledge

7   of Bryant's purported story about when he created – and the inconsistent stories that

8   MGA spun in the media – justify additional depositions. For example, Bryant claims

9   that he created Bratz when he was not a Mattel employee.[22] He initially identified three

10  people who he claimed could corroborate this story:  Tom and Janet Bryant (his

11  parents) and Richard Irmen (his partner). Bryant's mother for the first time in this case

12  recently identified a fourth: her friend, Jeanne Galvano. Bryant will introduce their

13  testimony to vouch for his story, so Mattel obviously needs and is entitled to depose

14  them. Similarly, Isaac Larian has repeatedly made conflicting, inconsistent statements

15  about Bratz's creation to the press, among others.[23] Mattel thus far has deposed two of

16  the journalists who wrote those stories – depositions where Mattel's questioning lasted

17  far less than an hour. Bryant's "alibi" witnesses and the reporters alone use up one-third

18  of Mattel's originally allotted 24 depositions.

19      In addition, at the time of the Scheduling Order, Bryant and MGA had said only

20  a handful of people worked directly on Bratz prior to 2002:  Bryant, Anna Rhee,

21  Mercedeh Ward, Margaret Leahy, Paula Garcia and unidentified people in Hong

22  Kong.[24] In a recent supplemental interrogatory response, MGA identified 11 more

23  people who worked on the first Bratz dolls, including Sarah Halpern, Veronica Marlow,

24

25  [22]   Bryant Dep. Tr. at 140:9-141:8, Proctor Dec., Ex. 20.

26  [23]   Proctor Dec., Ex. 21.

   [24]   <u>See</u> Bryant's Objections and Responses to Second Set of Interrogatories
27  Propounded by Mattel, Inc., at 4, Proctor Dec., Ex. 22; MGA's Response to Mattel's
   Second Set of Interrogatories, at 4:17-20, Proctor Dec., Ex. 23.

28

-8-

Exhibit 1,
P. 16

1   Cecilia Kwok, David Dees, Stephen Tarmichael, Edmond Lee, Franki Tsang, Samuel
2   Wong, Stephen Lee, William Ragsdale and Wendy Ragsdale (and Mattel now knows
3   that even this list is incomplete).[25]  This list does not include anyone involved in early
4   sales, marketing, product testing or advertising of Bratz.

5       When a deponent possesses unique information, courts generally grant leave for
6   additional depositions because they do not undermine the key purpose of the limits –
7   preventing duplicative discovery. See, e.g., Bromgard v. Montana, 2007 WL 1101179,
8   at *2 (D. Mont. April 11, 2007).  Courts deny additional depositions when deponents
9   are likely to have common, interchangeable information. And, even in such instances,
10  courts may allow a limited number or sequential depositions to proceed. See, e.g., Rx
11  USA, 2007 WL 1827335, at *3 (allowing additional deposition testimony on one but
12  not both individuals with generalized information).

13      Here, Mattel seeks depositions of witnesses who each have specific, unique
14  personal knowledge of the Bratz claims as well as about other claims in the case. All of
15  them are third parties:

16  • Sarah Halpern – worked on the patterns for the first Bratz dolls

17  • Margaret Leahy – sculpted the first Bratz dolls and 4-Ever Best Friends

18  • Veronica Marlow – worked on the first Bratz doll fashions as well on
    products at issue in MGA's claims

19
20  • Elise Cloonan – worked with Bryant on his Bratz pitch to MGA while both
    were employed by Mattel

21  • Jesse Ramirez – worked on molds for Bratz

22  • Jeanne Galvano – alleged witness Bryant's mother recently claimed can
    verify facts relating to Bratz's creation

23  • Stephen Lee – Managing Director of MGA Hong Kong during development
24    of Bratz and other products at issue

25  ―――――――――――――――――
    [25] MGA's Third Supplemental Responses to Mattel's Second Set of Interrogatories, at
26  4:1-6:3, Proctor Dec., Ex. 24; see Linker Dep. Tr. at 59:22-64:9, Proctor Dec., Ex. 25
27  (testifying that Paula (Treantafelles) Garcia and Bryant approached him and his partner,
    Liz Hogan, before Bryant left Mattel to work on Bratz).
28

Exhibit 1 ,
P. 17

Exhibit D, Page 55

1
- Cecilia Kwok – MGA Hong Kong employee principally involved with first Bratz dolls

2
- Farhad Larian – brother of Isaac Larian, who sued Isaac Larian and alleged, inter alia, that MGA was working on Bratz by early 2000 (months before MGA and Bryant claim to have met) when he was a part owner of MGA[26]

3

4
- Certain as yet unidentified attorneys who represented parties to disputes between Isaac Larian and Farhad Larian in which the creation of and value of Bratz was at issue

5

6
- Sandra Bilotto – sculptor who worked on Prayer Angel dolls at issue[27]

7
- Anne Wang – represented Bryant in negotiations with MGA while he was a Mattel employee that led to the agreement dated "as of September 18, 2000"[28]

8

9
- David Rosenbaum – represented MGA in negotiations with Bryant's first agreement with MGA[29]

10
- Christensen Glaser LLP – firm to which Victoria O'Connor faxed the MGA/Bryant agreement that Isaac Larian had ordered her to alter[30]

11

12
- Lucy Arant – lawyer with knowledge of MGA's first use of Bratz

13
- Mitchell Kamarck – former MGA counsel who responsible for patent applications, including those in which Isaac Larian had claimed to be the inventor of Bratz features that Bryant has since testified he created[31]

14

15
- Carol Witschell – lawyer who worked on MGA trademark applications and other trademark matters at issue

16
- Nana Ashong – former MGA employee who stated Bratz was created during Bryant's employment by Mattel[32]

17

18
- Larry McFarland – wrote MGA copyright registrations that stated the Bratz dolls were created during 2000 and that, after this suit was filed, MGA claimed were incorrect

19

20
- Eric Yip – MGA Hong Kong Sales Administrator in 2000 and 2001, when Bratz were created and first shipped to Bandai in Spain[33]

21

22

23

24

25

26

27

28

---

[26]  See Larian Dep. Tr. at 159:17-160:14, Proctor Dec. Ex. 54.
[27]  Brode Dep. Tr. at 303:9-316:16, Proctor Dec. Ex. 55; Dep. Exhs. 607, 608, 609, Proctor Dec., Ex. 56.
[28]  See Bryant Tr. at 39:6-42:18, Proctor Dec. Ex. 60.
[29]  See O'Connor Dep. Tr. at 94:1-95:21, Proctor Dec., Ex. 61.
[30]  See O'Connor Tr. 17:3-19:19, Proctor Dec., Ex 75.
[31]  See Armstrong Dep. Tr. at 10:7-12, 26:16-23, 244:18-21, Proctor Dec. Ex. 62.
[32]  See Brode Tr. at 87:13-88:11, Proctor Dec., Ex. 55.
[33]  See Harris Dep. Tr. at 121:16-122:17, Proctor Dec. Ex. 63.

-10-

Exhibit 1,
P. 18

- Gentle Giant Studios – created relevant moldings and casts while Bryant was still employed at Mattel[34]

- Christopher Palmeri – *Business Week* reporter who wrote that Larian purportedly "got the idea for Bratz after seeing his own kids run around in navel-bearing tops and hip-huggers"[35]

- Jeff Weiss – *San Fernando Valley Business Journal* reporter who quoted another inconsistent Larian statement concerning the origin of Bratz[36]

- Kickapoo High School – where Bryant allegedly found inspiration for Bratz and author of documents refuting that claim

- LA Focus – conducted Bratz focus groups, including focus groups that MGA denies occured

- Joyce Ng – independent contractor who moderated Bratz focus groups

- Rachel Harris – former MGA employee who worked on initial Bratz packaging as well as on other packaging which MGA's claims rest on

- Peter Marlow – spouse of Veronica Marlow who negotiated millions of dollars in payments for Bratz from Bryant on her behalf

- Andreas Koch – former MGA manager who has knowledge of Bryant's initial contacts with MGA

- Kami Gillmour – former Mattel and MGA employee who has knowledge regarding Paula Garcia's employment with MGA, confidential information taken from Mattel and MGA's projects at issue

- Mercedeh Ward – engineer on initial Bratz dolls and author of emails reflecting the use of Mattel property in its creation

- Moss Adams – accounting firm with knowledge of MGA's profits and distributions thereof to Larian (who owns 90% of MGA's shares)

- Wachovia Bank – bank identified as being involved in early Bratz financing and knowledgeable about MGA's net worth or value

- Amy Myers – formerly with MGA and has knowledge of Prayer Angels project that MGA has raised as a defense

- Two or three parties MGA sued for infringement of Bratz and whose identities are not yet known to Mattel – they will have knowledge of the dolls and other properties MGA has sued on in the past, which is relevant to refuting MGA's current claims that earlier iterations of Bratz products look nothing like subsequent iteration of Bratz products

---

[34] See Proctor Dec., Ex 72.
[35] Proctor Dec. Ex. 52.
[36] Proctor Dec. Ex. 53.

-11-

07209/2300969.1

Exhibit 1,
P. 19

Exhibit D, Page 57

1       Further, many of these same witnesses are also knowledgeable as to MGA's

2   claims of unfair competition and Mattel's trade secret and RICO claims, as they

3   continued to work with MGA in later years. For example, MGA has already identified

4   Halpern, Kwok, Leahy, Marlow, Lee, Ward and Yip as individuals involved with the

5   products at issue.[37] Likewise, Ramirez continued working on molds for subsequent

6   Bratz dolls through at least 2005,[38] while   Kamarck,[39] Witschell,[40] Arant, and

7   McFarland[41] were involved in subsequent Bratz-related intellectual property matters.

8   As such, testimony from these witnesses is essential for both phases of trial.

9       **2.**    **Mattel's Trade Secret and RICO Claims and MGA's Unfair**

10             **Competition Claims Require Additional Depositions**

11       Mattel has sued MGA for misappropriating Mattel trade secrets and RICO

12   violations by, among other things, stealing thousands of pages of Mattel confidential

13   information in the United States, Canada and Mexico.[42] Mattel identified Ron Brawer,

14   Janine Brisbois, Gustavo Machado, Mariana Trueba Almada and Pablo Vargas as

15   individuals who misappropriated Mattel trade secrets. The only person Mattel has been

16   able to depose on its counterclaims is Ms. Bacon, who coordinated MGA's recruiting of

17

18

19

20

21

22

23

24

25

26

27

28

---

[37]   See MGA's Fourth Supp. Response to Interrogatory No. 1 of Mattel's First Set of
Interrogatories Re Claims of Unfair Competition, at 10-12, 18, 19, Proctor Dec., Ex. 27.
[38]   See, e.g., Proctor Dec., Ex. 69 (showing various Bratz-related work in 2005).
[39]   See, e.g., Armstrong Tr. 26:5-23, Proctor Dec., Ex. 62 (discussing involvement in
Bratz-related patent applications through 2004).
[40]   See, e.g., Proctor Dec., Ex. 70 (discussing involvement with Bratz registrations).
[41]   See, e.g., Proctor Dec., Ex. 71 (discussing involvement with Bratz licensing).
[42]   Mattel's Counterclaims ¶¶ 37-54, 70-76, Proctor Dec., Ex 16.

-12-

Exhibit 1 ,
P. 20

1  Mattel employees.[43]  Accordingly, Mattel seeks leave to take the depositions of the
2  following witnesses on such claims:[44]

3  - Ron Brawer – has knowledge of stolen Mattel trade secrets in the U.S.
4  - Janine Brisbois – former Mattel employee who stole Mattel trade secrets
5  - Gustavo Machado – former Mattel employee who stole Mattel trade secrets
6  - Mariana Trueba – former Mattel employee who stole Mattel trade secrets
7  - Pablo Vargas – former Mattel employee who stole Mattel trade secrets
8  - Ricardo Abundis – has knowledge of stolen Mattel trade secrets in Mexico
9  - Jorge Castilla – believed to have stolen Mattel trade secrets in the U.S.
10  - Nic Contreras – believed to have knowledge of stolen Mattel trade secrets
11  - Dan Cooney – believed to have knowledge of stolen Mattel trade secrets
12  - Susan Kuemmerle – believed to have knowledge regarding stolen Mattel
13    trade secrets in Mexico
14  - Shirin Salemnia – believed to have knowledge of stolen Mattel trade secrets
15  - MGAE de Mexico – defendant to trade secret theft and RICO claims
16  - MGA Entertainment, Inc. – defendant

17       Further, MGA has accused Mattel of trade dress infringement and dilution and
18  unfair competition in connection with more than 440 products.[45]  MGA has identified

19
20  [43]  Bacon Dep. Tr. at 12:12-13, 51:22-52:17, 86:8-12, and 114:19-116:9, Proctor Dec.,
21  Ex. 28.  And even with respect to Ms. Bacon's deposition, MGA attempted to prevent her
    from testifying on the grounds that Mattel had not noticed her deposition individually, but
22  only as a Rule 30(b)(6) designee.  See Proctor Dec., Ex. 29.
    [44]  These are those who Mattel has identified to date.  Mattel anticipates that there may
23  be more who will need to be deposed in connection with MGA's unfair competition claims
    and Mattel's counterclaims because (a) it continues to review the over one-and-a-half
24  million pages of documents that MGA produced in the past month and (b) MGA, to date,
    has failed to identify how it anticipates defending Mattel's counterclaims or which
25  documents or witnesses it will rely upon to do so, including by its ongoing failures to
    answer Mattel contention interrogatories related to its defenses to Mattel's counterclaims.
26  [45]  MGA's Supp. Response to Interrogatory No. 2 Of Mattel, Inc.'s First Set of
27  Interrogatories Re Claims of Unfair Competition, at 5-19, Proctor Dec., Ex. 26.
28

07209/2300969.1

-13-
MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

Exhibit  1  ,
P.  21

1   117 witnesses with knowledge of the creation or promotion of those products,[46]

2   including many of the persons listed above.  Mattel has taken the depositions of only

3   six of those 117 named individuals, and has not yet been able to depose two of them,

4   Bryant or Larian, regarding the unfair competition allegations.

5    **B.**    **Mattel Needs Additional Depositions Because the Integrity of MGA's**

6              **and Bryant's Preservation of Documents Is At Issue**

7        Mattel also is entitled to inquire about MGA's and Bryant's preservation and

8   production of evidence.  For example, as MGA's designee on document preservation

9   testified, MGA had only obtained off-site documents as of the summer of 2007 and had

10   searched none of these documents for responsive documents, even though the Court

11   had ordered MGA to produce them and MGA had previously represented that its

12   production was complete.[47]  Further, MGA's designee on MGA's electronic document

13   preservation and collection testified that MGA's only search of such information was a

14   single search of Isaac Larian's e-mails in 2005, nothing more.[48]  MGA's designee

15   repeatedly testified that Joe Tiongco, who Mattel seeks to depose, has more

16   knowledge.[49]  In the same vein, Mattel seeks to depose Daphne Gronich, who provided

17   the preservation declaration on MGA's behalf.[50]  In addition, there are serious issues

18   about Bryant's hard drives, including because of Bryant's prior counsel's conflicting

19   representations about their collection and preservation – and indeed even their

20   existence.  Mattel therefore seeks testimony on these subjects.[51]  Bryant's belated

21   revelation that he installed and used the "Evidence Eliminator" program on these drives

---

22   [46]   MGA's Fourth Supp. Resp. Unfair Comp. No. 1, at 5-16, Proctor Dec., Ex. 27.

23   [47]   9/24/07 Stip. and Order, Proctor Dec., Ex. 30; Tonnu Dep. Tr. at 612:13-612:15,
620:14-621:21, Proctor Dec., Ex. 31; 8/13/07 Order, at 14:18-22, Proctor Dec., Ex. 32.

24   [48]   See Lockhart Deposition Tr. at 265:1-11, Proctor Dec., Ex. 33.

25   [49]   Id. at 116:2-14, 150:25-151:5, 158:10-15. 258:17-259:9, 265:1-11, 266:12-267:5.

26   [50]   See Dec. of Daphne Gronich in Response to Court's Request for Information
Regarding Document Preservation, dated September 10, 2007, Proctor Dec., Ex. 34.

27   [51]   Notice of Deposition of Littler Mendelson Pursuant to Federal Rule of Procedure
30(b)(6), dated September 6, 2007, Proctor Dec., Ex. 35.

28

-14-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

Exhibit  1  ,
P. 22

1  underscores all the more the legitimacy of full and fair discovery into the integrity of

2  his drives.

**C.    Mattel Seeks Leave to Take 30(b)(6) Depositions On Non-Duplicative Topics**

5    MGA objected, and the Discovery Master has ruled, that a corporate party who

6  has been deposed pursuant to a Rule 30(b)(6) notice cannot be deposed pursuant to a

7  subsequent notice absent Court leave.[52]  Mattel has not propounded a Rule 30(b)(6)

8  Notice of Deposition on MGA or MGAE de Mexico related to either MGA's unfair

9  competition claims or Mattel's counterclaims.   Mattel's Notices of Deposition—

10 attached as Exhibits A and B—contain topics of testimony which relate to those

11 claims.[53]  Mattel has not previously served any Rule 30(b)(6) Notice on MGAE de

12 Mexico at all, and the topics in the additional Notice to MGA are not duplicative of

13 those in Mattel's prior Notices to MGA.[54]  Mattel respectfully submits that it should be

14 granted leave to proceed with those depositions.

**D.    Mattel Meets The Requirements for Additional Discovery**

16    When a deponent possess unique information, courts will generally allow leave

17 for additional depositions because they do not undermine the key purpose of the

---

[52]  9/25/07 Order Re Mattel's Motion to Compel MGA to Produce Witnesses Pursuant to Third Notice of Deposition Under 30(b)(6), Proctor Dec., Ex. 36.

[53]  See Exhibits A & B.  Mattel's Fourth Notice of Deposition is far less than burdensome compared to MGA's recently served Notice of Deposition, which contains more than 80 topics, each of which has many sub-parts.  See MGA Entertainment, Inc.'s Notice of Deposition of Mattel, dated September 5, 2007, Proctor Dec., Ex. 40.

[54]  Mattel's First Notice of Deposition was narrowly tailored to obtain information related to MGA's contentions that Bryant and Anna Rhee had worked on Prayer Angels, not Bratz, while Bryant employed by Mattel.  Proctor Dec., Ex. 37.  Mattel's Second Notice sought information related to Bratz, including Bratz revenues, costs and profits, and evidence preservation and collection.  Proctor Dec., Ex. 38.  Mattel's Third Notice sought follow-up information on matters that had arisen in discovery, including with respect to specific electronic evidence, specific individuals who worked on the first Bratz dolls, payments made to witnesses or parties, and statements to reporters related to Bratz's creation and inspiration.  Proctor Dec., Ex. 39.

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

07209/2300969.1

Exhibit  1 ,
P. 23

1   limits—preventing duplicative discovery. See, e.g., Bromgard, 2007 WL 1101179, at

2   *2 (D. Mont. April 11, 2007).  As explained above, Mattel seeks depositions of

3   individuals who each have specific, unique knowledge of the underlying events.

4       Without additional depositions, Mattel cannot discover the full extent of MGA's

5   wrongdoing or adequately prepare to defend against MGA's claims.  Mattel seeks a

6   declaration of ownership of Bratz works that Bryant created during his Mattel

7   employment and their derivatives – property that MGA and Bryant have claimed are

8   worth hundreds of millions of dollars and perhaps more.  Mattel has accused MGA of

9   stealing thousands of pages of Mattel's most valuable trade secrets, including product

10  lines, and strategic plans.  MGA has accused Mattel of infringing hundreds of MGA

11  products, alleging "billions" of dollars in damages.  In light of the magnitude of this

12  case, the burden or additional expense of these depositions pales in comparison to

13  Mattel's need to fully prepare to try this case.  As set forth above, the depositions that

14  Mattel seeks by this motion are not collateral, but go to the heart of its claims and

15  defenses.  See, e.g., Rx USA, 2007 WL 1827335, at *2-3 (additional depositions

16  warranted in a dispute between large corporations, given the complexity of the issues

17  and the parties' resources).

18  **III.**   **THE  COURT  SHOULD  GRANT  LEAVE  WITH  RESPECT  TO**

19        **MATTEL'S INTERROGATORIES**

20      Two categories of interrogatories are involved here:  first, Mattel's proposed

21  additional interrogatories that it seeks leave to serve; and, second, interrogatories which

22  Mattel has already served on defendants.

23      **A.**   **Mattel Should Be Allowed To Propound Additional Interrogatories**

24      Mattel seeks leave to propound additional interrogatories related to MGA's unfair

25  competition claims and Mattel's counterclaims, and MGA's evidence collection and

26  preservation.  To properly prepare for trial, Mattel seeks leave to serve interrogatories

27  requiring defendants to identify the facts, documents and witnesses it will use to prove

28  its claims, defenses and damages.  Mattel's proposed interrogatories thus seek to

Exhibit  1  ,
P. 24

Exhibit D, Page 62

1  identify which specific Mattel designs or products defendants allege infringe on

2  defendants' designs[55] and trade dress[56] and the facts supporting those legal claims.[57]

3  Additionally, Mattel seeks to determine defendants' position regarding their

4  misappropriation of Mattel documents, including whether defendants contend that no

5  such documents were obtained improperly,[58] that the information contained therein has

6  no value as a trade secret,[59] that the information had been publicly disclosed,[60] that

7  defendants did not use or disclose such information,[61] that any such disclosure neither

8  benefited defendants nor harmed Mattel,[62] and that defendants have a right to possess,

9  use or disclose any such documents in their possession.[63] These are essential elements

10  of the trade secret theft claim.  See Cal. Civ. Code § 3426.1.  Finally, Mattel seeks

11  information related to MGA's efforts to collect and preserve evidence relevant or

12  potentially relevant to this action.[64]

13       The proposed interrogatories are consistent with the factors set out in Rule 26(b)

14  and should be permitted.  They seek disclosure of specific relevant facts regarding

15  topics which have not been the subject of prior interrogatories.  The majority of Mattel's

16  prior interrogatories focused on issues related to creation and ownership of Bratz.[65]

17  Only Mattel's set of interrogatories relating to MGA's unfair competition claims could

18

19

20     [55]  See Mattel's Proposed Interrogatory No. 51.
       [56]  See Mattel's Proposed Interrogatory No. 52.
21     [57]  See Mattel's Proposed Interrogatories Nos. 53, 54, 55.
       [58]  See Mattel's Proposed Interrogatory No. 56.
22     [59]  See Mattel's Proposed Interrogatory No. 57.
       [60]  See Mattel's Proposed Interrogatory No. 58.
23     [61]  See Mattel's Proposed Interrogatory No. 59.
       [62]  See Mattel's Proposed Interrogatory No. 60.
24     [63]  See Mattel's Proposed Interrogatory No. 61.
25     [64]  See Mattel's Proposed Interrogatories Nos. 63-64.
       [65]  See First Set to Bryant, Proctor Dec., Ex 8; First Set to MGA, Proctor Dec., Ex. 9;
26  Second Set to Bryant, Proctor Dec., Ex. 11; Second Set to MGA, Proctor Dec., Ex. 10;
27  Third Set Revised, Proctor Dec., Ex. 45.

28

Exhibit 1,
P. 25

1  conceivably overlap with the proposed interrogatories.[66] However, the interrogatories

2  already propounded focused on issues distinct from the proposed interrogatories—

3  specifically, facts relating to MGA employees involved with certain MGA products,[67]

4  MGA's alleged injuries,[68] MGA's allegations regarding Mattel's conduct with certain

5  third-parties in the industry[69] and MGA's allegations of product confusion.[70] These are

6  not duplicated in the interrogatories which Mattel is proposing.

7       Finally, the benefits of the proposed interrogatories outweigh any added burden,

8  as these type of facts are properly revealed through interrogatories, and the information

9  sought by the interrogatories will advance this litigation and avoid surprise at trial.

10  **B.   The Court Should Grant Leave With Respect To Mattel's**

11       **Outstanding Interrogatories That Defendants Will Not Answer**

12       To date, Mattel has served 50 interrogatories on the defendants. Yet, by

13  objecting to some of those previously served interrogatories served as being compound,

14  defendants refuse to answer on the purported ground that they exceed the Court's

15  limit.[71] Although defendants are wrong, the Court should eliminate further delay and

16  quarreling by defendants by simply granting Mattel leave to serve them regardless of

17  how they are counted.

18       Mattel has been seeking answers to these basic interrogatories for over five

19  months now. To justify their wholesale refusal to answer them, defendants claimed

20  they exceeded the Court's limit on the number of interrogatories. Mattel moved to

21  compel, defendants moved for a protective order, and in a September 5, 2007 Order

22  Judge Infante provided guidance on the counting of the interrogatories. Mattel then

23

---

24  [66] See First Set Re Unfair Comp., Proctor Dec., Ex. 12.
   [67] See id. No. 1.

25  [68] See id. No. 4.
   [69] See id. Nos. 5, 8, 9, and 10.

26  [70] See id. No. 7.
   [71] See Bryant's Objections to Revised Third Set, Proctor Dec., Ex. 73; Bryant's

27  Objections to Amended Fourth Set, Proctor Dec., Ex. 74.

28

Exhibit 1,
P. 26
Exhibit D, Page 64

1  propounded revised interrogatories that were consistent with the Discovery Master's

2  Order.

3         Defendants nevertheless claim, once again, that Mattel exceeds its 50 allotted

4  interrogatories. Not only is this without merit,[72] but it is clear that defendants rehash

5  this objection for no other reason than to obstruct. Bryant refuses to answer any

6  interrogatory past No. 27 because "Mattel has propounded more than 50

7  interrogatories."[73] And, even the minimal answers he gave to others amply confirms

8  that he continues to stonewall on even basic discovery in this case. MGA makes

9  essentially the same objection.[74] Accordingly, through nothing more than creatively

10      [72] The essence of the defendants' objection is that Mattel's revised interrogatories are

11  compound interrogatories because they improperly require them to respond to individual

12  interrogatories with "different and distinct facts." See Bryant's Objections to Revised Third Set, at 18; Bryant's Objections to Amended Fourth Set, at 4. For example,

13  defendants frivolously object to having to identify both the name of a product and its corresponding product number. But Judge Infante ruled on this matter, explaining that

14  interrogatories "'containing subparts directed at eliciting details concerning [a] common theme should be considered a single question,'" while interrogatories on "discrete issues"

15  should be treated as multiple interrogatories. Order re Mattel's Interrogs., at 5 (quoting 8A Wright & Miller, Federal Practice & Procedure § 2168.1 (2d ed. 1994)); see also id. at 7.

16  The scope of Mattel's revised interrogatories is no different than those which Judge Infante

17  ruled were permissible, as in both instances the "subparts are related and directed to the

18  underlying details of a specifically identified" subject. See id. Judge Infante specifically observed that under the Advisory Committee notes, interrogatories which required distinct

19  factual answers relating to the same subject—e.g., the time, place, persons present, and

20  contents of a particular communication—should be treated as a single interrogatory. See id. Mattel's revised interrogatories are not compound, and defendants' arguments to the

21  contrary are groundless: the fact that an interrogatory answer requires *different facts* does not convert it into a compound interrogatory on *different issues*.

22      [73] Bryant's Objections to Revised Third Set, at 7. Bryant then makes the same

23  objection to the remaining 23 interrogatories.

    [74] See MGA's Objections to Revised Third Set, at 8, Proctor Dec., Ex. 76; MGA (HK)

24  Ltd.'s Objections to Revised Third Set, at 17, Proctor Dec., Ex. 77; MGAE de Mexico's

25  Objections to Revised Third Set, at 8, Proctor Dec., Ex. 78; Larian's Objections to Revised Third, at 8, Proctor Dec., Ex. 79; MGA's Objections Amended Fourth Set, at 7, Proctor

26  Dec., Ex. 80; MGA (HK) Ltd.'S Objections to Amended Fourth Set, at 7-8, Proctor Dec.,

27  Ex. 81; MGAE de Mexico's Objections to Amended Fourth Set, at 8, Proctor Dec., Ex. 82; Larian's Objections to Amended Fourth Set, at 7, Proctor Dec., Ex. 83.

28

07209/2300969.1

Exhibit 1,
P. 27

Exhibit D, Page 65

1   counting a few interrogatories as a multitude, defendants manufacture grounds to delay

2   yet more and refuse obviously appropriate discovery.  To the extent that defendants

3   have substantive objections to specific interrogatories, these issues may be properly

4   heard before the Discovery Master.  But defendants should not be permitted to serially

5   raise the same objection to a few specific interrogatories in order to delay for yet more

6   months in responding to the bulk of Mattel's interrogatories.  Mattel requests that this

7   Court cut through this issue by granting Mattel leave, to the extent needed, to serve

8   each of the interrogatories that have been served to date regardless of how they are

9   counted.

10  **IV.     THE COURT SHOULD ALLOW ADDITIONAL TIME FOR THE**

11  **BRYANT DEPOSITION**

12          On September 28, 2007, the Discovery Master issued an Order Granting in Part

13  Mattel's Motion for Additional Time to Depose Carter Bryant for All Purposes,

14  granting Mattel seven additional hours to depose Bryant (in addition to 2 hours

15  previously granted based on counsel's dozens of improper instructions not to answer at

16  the Bryant deposition), but denying Mattel the 21 hours that it sought.[75]  Mattel

17  respectfully submits that the facts, as determined by the Discovery Master, justify far

18  more than seven additional hours, and the Court should grant additional time.

19          Mattel does not contest the Discovery Master's factual findings in any way.  To

20  the contrary, the underlying factual findings were plainly correct.  As Judge Infante

21  noted, Mattel's deposition of Bryant in 2004 took place before MGA even brought its

22  unfair competition claims and before Mattel filed its counterclaims, and Mattel had no

23  opportunity to depose Bryant on either.[76]  Thus, as Judge Infante justifiably found:

24          •   The new claims and defenses that were added to the case after Bryant's
               deposition justify additional deposition time. . . . Without question,

25  ───────────────
    [75]  Order Granting in Part Mattel's Motion for Additional Time to Depose Carter
26  Bryant for All Purposes (Sept. 28, 2007) ("Order re Additional Time"), at 8:7-13, Proctor
27  Dec., Ex. 43.
       [76]  Id. at 5:2-10.
28

Exhibit 1 ,
P. 28

Bryant is a critical witness regarding MGA's unfair competition claims and Mattel has not had an opportunity to depose him on such claims.[77]

- In addition, Mattel filed a counterclaim against Bryant, MGA, and other defendants in 2007, asserting thirteen different claims . . . . Bryant filed an answer asserting over twenty affirmative defenses. Mattel has not had an opportunity to depose Bryant on any of these claims or defenses.[78]

- Bryant is the central figure in this litigation and arguably the most important witness *for virtually every claim in the case.* No other witness in the case has his depth and breadth of relevant information.[79]

Bryant and MGA cannot dispute any of this. In interrogatory responses, MGA lists Bryant as a person directly involved with and knowledgeable about the allegedly infringed MGA products that MGA has put at issue.[80] MGA's responses to Mattel's interrogatories also state that the entire Bratz line is the subject of MGA's claims, and an MGA witness has declared that there are more than 200 Bratz products.[81] Moreover, Paula Garcia, MGA's Vice President of Product Design and Development, has declared that she and Bryant are "the *only* people who know what the concept is and who see the early product drawings" with respect to many Bratz products.[82] That is particularly important because many of both Mattel's *and* MGA's claims will turn on the source and timing of these products at issue. As the Court knows, Mattel's defenses to MGA's infringement claims rest, in part, on the fact that it was MGA which stole and copied Mattel products through its trade secret thefts. Testimony on the origins of those MGA products and when they were created is indispensable.

---

[77]  Id. at 5:4-5.
[78]  Id. at 5:6-10.
[79]  Id. at 5:15-17 (emphasis added).
[80]  MGA's Responses to Mattel's First Set of Interrogatories Re Claims of Unfair Competition, dated January 19, 2007, Response No. 1, at 6:9, Proctor Dec., Ex. 57.
[81]  See Declaration of Patricia Perrier in Support of MGA's Opposition to Mattel's Motion to Try All Claims Related to Bratz Ownership in Phase One, dated May 25, 2007, at ¶ 2, Proctor Dec., Ex. 58; MGA Sup. Resp. Unfair Comp. No. 2, Proctor Dec., Ex. 26.
[82]  Declaration of Paula Garcia in Support of MGA's Opposition to Mattel's Motion to Compel, dated February 9, 2007, ¶ 6 (emphasis in original), Proctor Dec., Ex. 59.

Exhibit 1,
P. 29

1    Bryant is also obviously a crucial witness on Mattel's copyright infringement,

2  RICO and other counterclaims, which raise a host of new issues Bryant has not been

3  deposed on. According to MGA, Mattel's copyright infringement claim against Bryant

4  alone relates to "*hundreds* of products."[83]  Bryant was also personally involved, either

5  as sender or recipient, in approximately 100 of the predicate acts of mail and wire fraud

6  alleged by Mattel. [84]  Mattel is entitled to question Bryant about these and all the other

7  issues presented for the first time by Mattel's counterclaims and Bryant's answer.

8    Moreover, as Judge Infante found, "new evidence justifies additional time to

9  depose Bryant."[85]  Judge Infante noted that Bryant's deposition took place before "98

10  percent of Bryant's and MGA's collective document production took place"[86] – and that

11  did not even reflect the more than a million-and-a-half pages, that MGA has produced

12  in recent weeks.[87]  In truth, *99.9% of defendants' production in this case has occurred

13  only after Bryant's 2004 deposition.*  Thus, Mattel has had no opportunity to examine

14  Bryant on the vast bulk of the evidence, whether relevant to new claims or the original

15  ones.  This includes, for example:

16    • Bryant's fee agreements with MGA, which reflect that MGA is paying
     Bryant's legal fees at its discretion, and which were withheld by Bryant

17      even in the face of prior court orders;

18    • Bratz design drawings produced by Bryant for the first time this year,
     only after being ordered, which bear handwritten dates of September

19      19, 1999, at time when Bryant was employed by Mattel;

20    • Bryant's desktop hard drive, which reveals his use of "Evidence
     Eliminator" software, which was not produced until compelled this

21      year.

22  ───────────────────
    [83]  See MGA's Opposition to Mattel's Motion to Try All Claims Related to Bratz

23  Ownership in Phase One at 3:12-19.
       [84]  See Mattel's Second Amended Answer & Counterclaims, Exhibit C.

24     [85]  Order re Additional Time at 5:20 (font altered), Proctor Dec., Ex. 43.
       [86]  Id. at 5:24-27, Proctor Dec., Ex. 43.  Notably, Judge Infante calculated the 98

25  percent number based on MGA's production of 157,000 pages of documents as of the close

26  of briefing in late August.  Since that time MGA has produced over a million-and-a-half
    pages of documents.  See Proctor Dec. ¶ 45.

27     [87]  See Proctor Dec. ¶ 45.

28

07209/2300969.1

Exhibit 1 ,
P. 30

- Original Bratz drawings, which Bryant did not make available for inspection until this summer, after being ordered to do so, notwithstanding his promise that he would produce such documents at the 2004 deposition.

- A fax from Bryant to David Rosenbaum, outside counsel for MGA, dated September 14, 2000, wherein Bryant stated that he could not ask Mattel's Human Resources any more questions about his contract with Mattel "without risking suspicion."

- October 10, 2000 e-mails between Isaac Larian, Victoria O'Connor and Paula Garcia (formerly Treantafelles), reflecting that Bryant worked on Bratz with MGA "on average about 4 hours a day," starting at least six weeks before he left Mattel.

- Invoices showing that Veronica Marlow, a key third party, billed MGA for 169 hours of development services on Bratz that were performed before Bryant left Mattel.

The list of new evidence that was requested by Mattel before Bryant's deposition but first produced by defendants only later literally goes on and on. As Judge Infante ruled, "a witness may be re-deposed with respect to . . . new developments" in a case, including new documents such as these, as well as new claims.[88]

Despite his factual findings, Judge Infante ruled that Mattel is only entitled to an additional seven hours of deposition. Previously Judge Infante had gave Mattel two additional hours as a result of the improper instructions and objections by counsel at Bryant's deposition.[89] So, under Judge Infante's ruling, Mattel has been limited to only seven hours to depose Bryant – the "most important witness for virtually every claim in the case"[90] – on MGA's claims, Mattel's counterclaims, the hundreds of MGA and Mattel products now at issue about which Bryant has unique knowledge, and the vast amounts of recently produced new evidence. This is unfair. The ruling that Mattel be

---

[88]   Order re Additional Time at 4:20-24 (quoting Fresenius Med. Care Hldgs, Inc. v. Roxane Labs., Inc., 2007 WL 764302 (S.D. Ohio 2007)), Proctor Dec., Ex. 43.

[89]   Order re Additional Time at 7:24-25, Proctor Dec., Ex. 43; see Order Granting In Part And Denying In Part Mattel's Motion To Overrule Instructions Not To Answer During The Deposition Of Carter Bryant (March 7, 2007), Proctor Dec., Ex. 44.

[90]   Id. at 5:15-17.

-23-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

Exhibit 1,
P. 31

1   granted only seven additional hours is clearly erroneous given Bryant's singular

2   importance, the magnitude of this case and the tectonic shift of claims.

3       Also, based on Rule 30's "presumptive one day, seven-hour limitation on

4   depositions," Judge Infante awarded Mattel a total of 7 hours to depose Bryant on all of

5   MGA's claims and all of Mattel's counterclaims.[91]  It is simply impossible to conduct a

6   deposition on those claims – which had not even been filed when Bryant was first

7   deposed – in that amount of time.  Judge Infante apparently awarded Mattel no

8   additional time based on new evidence, even though 99.9% of defendants' production

9   has taken place since the 2004 deposition.  That effectively punishes Mattel for

10  defendants' discovery misconduct.  Mattel requested defendants' documents before the

11  deposition took place; defendants withheld them at their own peril, not at Mattel's.[92]

12  Mattel is entitled to a fair amount of time to depose the key witness in the case on the

13  new claims and evidence he has not been deposed on.  The Court should afford that,

14  and grant Mattel a total of 21 hours for the deposition.[93]

15

16

---

17   [91]  Id. at 8:10-13.

18   [92]  See, e.g., Fresenius Medical Care Holdings, Inc. v. Roxane Laboratories, Inc., 2007
WL 764302, at *2 (S.D. Ohio 2007) (originally cited by Bryant to Judge Infante) (allowing

19   second deposition because defendant failed to produce requested documents prior to first
deposition); Robins v. Scholastic Book Fairs, 928 F. Supp. 1027, 1036 (D. Or. 1996) ("the

20   second set of depositions of these individuals was necessary because they had to be
questioned about additional documents that Defendant produced after the first set of

21   depositions"); Ritchie v. U.S., 2004 WL 1161171, at *3 (N.D. Cal. 2004) ("when further
evidence linking [witness to the project in dispute] subsequently came to light this court

22   permitted plaintiff to depose [the witness] a second time").

23   [93]  In the alternative, the Court should excercise its discretion to enlarge Mattel's time
to depose Bryant.  The Court previously extended MGA's deadlines to produce documents

24   that it was compelled to produce even though Judge Infante had specifically rejected
MGA's request for additional time to comply and despite MGA's failure to show there was

25   any error in that ruling.  Here, there can be no dispute that the Court has the right to ensure

26   that the parties receive fair discovery, proportionate to the magnitude and complexity of
the case, and that trial in this matter is conducted without undue surprises which will cause

27   prejudice and waste the time of the Court and the jury.

28

Exhibit I
P. 32

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court grant Mattel's motion for leave.

DATED:  November 19, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By Jon Corey /s/
   Jon Corey
   Attorneys for Mattel, Inc.

07209/2300969.1

-25-

Exhibit I ,
P. 33

Exhibit D, Page 71

Exhibit 6

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144
——
TEL: (213) 687-5000

FAX: (213) 687-5600

www.skadden.com

DIRECT DIAL
(213) 687-5368
DIRECT FAX
(213) 621-5368
EMAIL ADDRESS
RHERRING@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
NEWARK
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

March 5, 2008

**VIA FACSIMILE & U.S. MAIL**

Mr. Jon D. Corey
Mr. B. Dylan Proctor
Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP
865 South Figueroa St., 10th Floor
Los Angeles, CA 90017

        RE:   *Mattel v. Bryant*

Gentlemen:

We are writing to request a meet and confer under the Discovery Master Stipulation regarding the proposed depositions of Larry McFarland and Lucy Arant.

Consistent with the principles articulated by the court in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), and its progeny, Mattel's efforts to depose Mr. McFarland and Ms. Arant are inappropriate. Indeed, courts have long condemned the practice of deposing counsel for an opposing party, as it is generally deemed to be an abuse of the discovery process. This instance is no exception, as Mattel is well aware that Mr. McFarland serves as counsel for MGA and so too did Ms. Arant. Although Mattel has not satisfied, and does not appear able to satisfy, the requirements for deposing counsel for an opposing party, we are willing to meet and confer and discuss this issue further.

We also note receipt of deposition notices for Mr. McFarland's clients, Peter Marlow and Sarah Halpern. We were not consulted on the scheduling of these depositions, so we trust that these notices were sent merely as placeholders and that the depositions will proceed on a date convenient for the witnesses and all counsel involved in the depositions. We ask that you please coordinate with our office and Mr. McFarland to arrange mutually agreeable dates and times for these depositions. I look forward to hearing from you.

Exhibit _6_,
P. _62_

Quinn, Emanuel, etc.
March 5, 2008
Page 2

Sincerely,

Robert J. Herrington

Exhibit _6_ ,
P. _63_

# Confirmation Report — Memory Send

Time      : 03-05-2008   12:23pm
Tel line  :
Name      :

| | | |
|---|---|---|
| Job number | : | 361 |
| Date | : | 03-05  12:22pm |
| To | : | 94433100 |
| Document pages | : | 003 |
| Start time | : | 03-05  12:22pm |
| End time | : | 03-05  12:22pm |
| Pages sent | : | 003 |
| Status | : | OK |

Job number    : 361          *** SEND SUCCESSFUL ***

---

### SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3144
TELEPHONE No.: (213) 687-5000
FACSIMILE No.: (213) 687-5600
EMAIL: rherring @skadden.com

### FACSIMILE TRANSMITTAL SHEET

FROM: Robert J. Herrington                    DATE: March 5, 2008
DIRECT DIAL: (213) 687-5368                   FLOOR/OFFICE No.: 36
DIRECT FACSIMILE: (213) 621-5368

THIS FACSIMILE IS INTENDED ONLY FOR USE OF THE ADDRESSEE(S) NAMED HEREIN AND MAY CONTAIN LEGALLY PRIVILEGED AND/OR CONFIDENTIAL INFORMATION. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS FACSIMILE, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS FACSIMILE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL FACSIMILE TO US AT THE ADDRESS ABOVE VIA THE LOCAL POSTAL SERVICE. WE WILL REIMBURSE ANY COSTS YOU INCUR IN NOTIFYING US AND RETURNING THE FACSIMILE TO US.

IF THIS TRANSMISSION IS UNCLEAR OR INCOMPLETE, PLEASE CONTACT THE FACSIMILE DEPARTMENT AT (213) 687-5443.
WHEN TRANSMITTING TO OUR MACHINES, PLEASE INCLUDE YOUR COVER SHEET AND NUMBER ALL PAGES CONSECUTIVELY.

TOTAL NUMBER OF PAGES INCLUDING COVER(S):    3

PLEASE DELIVER THE FOLLOWING PAGE(S) TO:

1.  NAME: Mr. Jon D. Corey          FIRM: Quinn Emanuel Urquhart, etc.
    CITY: Los Angeles               TELEPHONE No.: (213) 443-3000
    FACSIMILE No.: (213) 443-3100

2.  NAME: Mr. B. Dylan Proctor      FIRM: Quinn Emanuel Urquhart, etc.
    CITY: Los Angeles               TELEPHONE No.: (213) 443-3000
    FACSIMILE No.: (213) 443-3100

MESSAGE: Please see attached.

Exhibit 6,
P. 64

Exhibit 7

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

March 11, 2008

**VIA FACSIMILE [(213) 687-5600] AND U.S. MAIL**

Robert J. Herrington, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue
Suite 3400
Los Angeles, California 90071

Re:     Carter Bryant v. Mattel, Inc., et al.

Dear Mr. Herrington:

I write to confirm the outcome of our meet and confer session this afternoon concerning Mattel's deposition subpoenas for Lucy Arant and Larry McFarland. First, you stated that MGA will likely move to quash Mattel's deposition subpoena for Ms. Arant. MGA will do so on the grounds that it believes Ms. Arant's deposition would be cumulative and duplicative of previously taken depositions and seeks privileged information. Mattel disagreed and stated that it will oppose such a motion.

Second, you stated that MGA will likely move to quash Mattel's deposition subpoena for Mr. McFarland. MGA will do so relying on the rule set forth in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). In response to my question whether MGA had authority for the proposition that *Shelton* applied to witnesses to third parties, you stated that you believed it did and I invited you to provide it. Additionally, I stated that Mattel disagreed with MGA's position and will oppose MGA's motion.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

Exhibit  7
P.  65
Exhibit D, Page 77

If you have any questions regarding the foregoing, please do not hesitate to call.

Best regards,

Jon D. Corey

2

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**    March 11, 2008

**NUMBER OF PAGES, INCLUDING COVER: 3**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Robert J. Herrington, Esq.<br>Skadden, Arps, Slate, Meagher & Flom LLP | (213) 687-5000 | (213) 687-5600 |

**FROM:**    Jon D. Corey

**RE:**    Carter Bryant v. Mattel, Inc., et al.

**MESSAGE:**

See Attached.

COPY CENTER 34TH FLOOR

08 MAR 11 PM 5: 26

SASH&F L.A.

| CLIENT # | 07209 | ROUTE/<br>RETURN TO: | Suzanne Johnson -10 | ☒ CONFIRM FAX<br>☒ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | Priscilla | CONFIRMED? | ☐ NO ☐ YES | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**

Exhibit __7__,
P. __67__

# EXHIBIT E

THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, CA 90071-3144
Tel.: (213) 687-5000/Fax: (213) 687-5600

RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, 38th Floor
San Francisco, CA 94111-5974
Tel.: (415) 984-6400 / Fax: (415) 984-2698

Attorneys for Counter-Defendants
MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT (HK) LIMITED,
MGAE DE MEXICO, S.R.L. DE C.V., AND ISAAC LARIAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>**DISCOVERY MATTER**<br><br>**[To be heard by Discovery Master Hon. Edward A. Infante (Ret.)]**<br><br>**MGA DEFENDANTS' NOTICE OF MOTION AND MOTION TO QUASH LARRY MCFARLAND'S DEPOSITION SUBPOENA**<br><br>Date:   TBD<br>Time:   TBD<br>Place:  JAMS<br><br>**Phase 1**<br>Discovery Cut-off:  January 28, 2008<br>Pre-Trial Conference:  May 5, 2008<br>Trial Date:  May 27, 2008 |

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that at a date and time to be determined, before the

3   Honorable Edward Infante (Ret.), Discovery Master, located at Two Embarcadero

4   Center, Suite 1500, San Francisco, CA 94111, counter-defendants MGA

5   Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de

6   Mexico S.R.L. de C.V. (collectively, the "MGA Defendants" or "MGA") will and

7   hereby do move, pursuant to Federal Rules of Civil Procedure 26, 30, and 45, for an

8   order quashing the deposition subpoena issued by Mattel, Inc. ("Mattel") to non-

9   party Larry McFarland, or, in the alternative, a protective order preventing Mattel

10  from seeking Mr. McFarland's testimony.  This Motion is made on the grounds, inter

11  alia, that the notice of deposition listed above is improper pursuant to the test

12  established by *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986),

13  which limits the depositions of opposing counsel.

14       The parties met and conferred regarding the subjects of this Motion but were

15  unable to reach a resolution.

16       This Motion is based on this notice of motion, the accompanying

17  memorandum of points and authorities in support thereof, the supporting

18  Declarations of Larry W. McFarland ("McFarland Decl.") and Robert J. Herrington

19  ("Herrington Decl.") filed concurrently herewith, the pleadings and records on file in

20  this action, and any further evidence and argument as may be presented to the

21  Discovery Master on this motion or for which judicial notice may be taken.

22

23

24

25

26

27

28

1    Discovery Master Hon. Edward Infante (Ret.) will preside over the hearing on

2  this Motion, which will occur at a date, time, and in a manner to be determined.

3

4  DATED:      March 17, 2008

5                                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

6

7                            By:  _Raoul D. Kennedy by BH_____

8                                    Raoul D. Kennedy
                                     Attorneys for Counter-Defendants,
9                                    MGA ENTERTAINMENT, INC.,
                                     MGA ENTERTAINMENT (HK)
10                                   LIMITED, MGAE de MEXICO S.R.L.
                                     de C.V., and ISAAC LARIAN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 1

I.   PRELIMINARY STATEMENT ........................................................ 1

II.  PROCEDURAL BACKGROUND ....................................................... 2

III. ARGUMENT .......................................................................... 3

    A.   Mattel Must Prove That Mr. McFarland Has Unique Information Critical To Mattel's Case That Is Available From No Other Source. ..................................... 3

    B.   Mattel Should Not Be Permitted To Take Mr. McFarland's Deposition. ........................................................ 5

IV.  CONCLUSION ......................................................................... 7

1

# **TABLE OF AUTHORITIES**

2

**Page**

3    **Cases**

4    *Dibel v. Jenny Craig, Inc.,*
        No. 06 cv 2533 BEN (AJB), 2007 WL 2220987
5        (S.D. Cal. Aug. 1, 2007)....................................................................... 4

6    *FMC Technologies, Inc. v. Edwards,*
        No. C05-946C, 2007 WL 836709 (W.D. Wash. Mar. 15, 2007)....................... 4, 6
7

    *Lloyd Lifestyle Ltd. v. Soaring Helmet Corp.,*
8        No. C06-0349C, 2006 WL 753243 (W.D. Wash. Mar. 23, 2006)..................... 4

9    *Massachusetts Mutual Life Insurance Co. v. Cerf,*
        177 F.R.D. 472 (N.D. Cal. 1998)............................................................... 4
10

    *Nocal, Inc. v. Sabercat Ventures, Inc.,*
11       No. C 04-0240 PJH(JL), 2004 WL 3174427 (N.D. Cal. Nov. 15, 2004)............... 4

12   *Shelton v. American Motors Corp.,*
        805 F.2d 1323 (8th Cir. 1986)............................................................... 3, 4
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

Larry McFarland is counsel for MGA and has been involved in this case since the time that it was filed.  Currently, Mr. McFarland represents several third party witnesses in this case and has worked extensively with those third parties to produce documents and prepare for their depositions.  Mattel now wants to take Mr. McFarland's deposition.  That request should be denied, and a protective order issued to prevent Mattel from engaging in the abusive litigation tactic of deposing opposing counsel.

Courts have condemned the abusive litigation tactic of seeking to depose opposing counsel.  Opposing counsel may be deposed *only* when:  (1) there are no other means to obtain the information; (2) the information is relevant and non-privileged; *and* (3) the information is crucial to the case's preparation.  Mattel cannot satisfy these elements.

Mattel's excuse for seeking to take Mr. McFarland's deposition is that they supposedly need to talk to him about six copyright applications he filed on behalf of MGA.  Mattel, however, already has taken several depositions of MGA witnesses regarding the company's Bratz copyright applications, including a Rule 30(b)(6) deposition on the development of the Bratz dolls and the copyright applications filed with respect to Bratz.  Thus, Mattel has other means to obtain the information it seeks, and, indeed, Mattel already has pursued those means.  Taking Mr. McFarland's deposition would risk further abuse by Mattel and improper intrusions on the attorney-client privilege – intrusions that are wholly unwarranted given the volume of discovery Mattel already has taken on these issues.  The Court should quash Mattel's subpoena and grant a protective order prohibiting the deposition of Mr. McFarland.

## II.   <u>PROCEDURAL BACKGROUND</u>

Larry McFarland is an attorney who has represented MGA for years in various matters, including this matter.[1]  Mr. McFarland also currently represents several third party witnesses, including Margaret Leahy, Veronica Marlow, Peter Marlow, Sarah Halpern, Elise Cloonan, and Lucy Arant.[2]

On November 19, 2007, Mattel filed a Motion For Leave To Take Additional Discovery And Objections To Discovery Master Order Of September 28, 2007 in which they named Mr. Larry McFarland as a third party witness.[3]  Mattel represented to the Court that Mr. McFarland "wrote copyright registrations that stated the Bratz dolls were created during 2000 and that, after this was filed, MGA claimed were incorrect."[4]  Mattel's statement to the Court was false.  The only Bratz-related copyright applications Mr. McFarland signed are attached to his declaration as *Exhibit 1*.  The applications for the Sasha Drawing, Jade Drawing, Yasmin Drawing, Cloe Drawing and the Bratz Group Drawing all state, consistent with Carter Bryant's testimony in this case, that the Bratz drawings were created in 1998.[5]

Relying on Mattel's false statements regarding Mr. McFarland, the Court granted the Motion For Leave and allowed Mattel to seek to depose Mr. McFarland.  Mattel, however, failed to serve Mr. McFarland with a subpoena before the January 28, 2008 discovery cut-off date.  After Mattel again made false statements to the Court regarding Mr. McFarland supposedly evading service, the Court issued an order requesting that Mr. McFarland show cause why he should not be ordered to

---

[1]   McFarland Decl. ¶ 1.
[2]   *Id.* ¶ 2.
[3]   Herrington Decl., Ex. 1: Motion of Mattel Inc. For Leave To Take Additional Discovery And Objections To Discovery Master Order Of September 28, 2007 at p. 10.
[4]   *Id.*
[5]   McFarland Decl. ¶ 3, Ex. 1.

1  appear for deposition.[6]  Mr. McFarland filed a response to the Order To Show Cause

2  on February 11, 2008, explaining that he had not been evading service and

3  establishing that Mattel's statements to the contrary were false.[7]

4         On February 25, 2008, the Court held a hearing on the Order To Show Cause,

5  and, at the hearing, Mr. McFarland agreed to accept service of Mattel's deposition

6  subpoena, notwithstanding Mattel's failure to serve him before the January 28, 2008

7  discovery cutoff.[8]  The Court then expressly ordered that all appropriate objections to

8  Mr. McFarland's deposition could and should be brought to the attention of the

9  Discovery Master.[9]

10        On March 5, 2008, MGA sent a letter to Mattel's counsel requesting a meet

11  and confer regarding Mattel's proposed deposition of Larry McFarland.[10]  MGA

12  explained that it was inappropriate to take Mr. McFarland's deposition because he

13  was MGA's counsel, as well as counsel for several third party witnesses.[11]  The

14  parties met and conferred on March 11, 2008, but Mattel refused to withdraw its

15  demand to depose Mr. McFarland.[12]

16  **III.   <u>ARGUMENT</u>**

17     **A.   Mattel Must Prove That Mr. McFarland Has Unique Information
            Critical To Mattel's Case That Is Available From No Other Source.**

18     Mattel's attempt to depose Mr. McFarland is improper under the prevailing

19  rule limiting depositions of opposing litigation counsel, set forth in *Shelton v.*

---

[6]    Herrington Decl., Ex. 2: February 4, 2008 Minute Order at p. 3.
[7]    Herrington Decl., Ex. 3: Response To Order To Show Cause Of Larry
McFarland, Lucy Arant, Sarah Halpern, and Peter Marlow (filed February 11, 2008).
[8]    Herrington Decl., Ex. 4: February 25, 2008 Tr. Hr. 24:15-19.
[9]    Herrington Decl., Ex. 5: February 25, 2008 Minute Order at p. 2.
[10]   Herrington Decl., Ex. 6: Letter from Robert Herrington to Jon Corey and
Dylan Proctor, dated March 5, 2008.
[11]   *Id.*
[12]   Herrington Decl., Ex. 7: Letter from Jon Corey to Robert Herrington, dated
March 11, 2008.

1   *American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986).  The *Shelton* court explained,

2   "[t]he harassing practice of deposing opposing counsel (unless that counsel's

3   testimony is crucial and unique) appears to be an adversary trial tactic that does

4   nothing for the administration of justice but rather prolongs and increases the costs of

5   litigation, demeans the profession, and constitutes an abuse of the discovery

6   process." *Id.* at 1330.  The Ninth Circuit district courts have "uniformly followed"

7   *Shelton.  See Lloyd Lifestyle Ltd. v. Soaring Helmet Corp.*, No. C06-0349C, 2006

8   WL 753243, at * 2 (W.D. Wash. Mar. 23, 2006).

9       Under *Shelton*, deposing an opponent's current or former counsel is proper

10   only in extremely limited circumstances. *See Mass. Mut. Life Ins. Co. v. Cerf*, 177

11   F.R.D. 472, 481-82 (N.D. Cal. 1998) (Infante, J.) (granting protective order

12   preventing deposition of Cerf's former counsel in the litigation at issue, applying

13   *Shelton*); *FMC Techs., Inc. v. Edwards*, No. C05-946C, 2007 WL 836709, at **2-5

14   (W.D. Wash. Mar. 15, 2007) (granting motion to quash deposition subpoena to

15   opponent's former counsel in a related case).  Mattel must prove the following:

16   (1) that no other means exist to obtain the information, (2) the information sought is

17   relevant and non-privileged, and (3) the information is crucial to the preparation of

18   its case. *Shelton*, 805 F.2d at 1327.

19       If the party seeking to depose counsel cannot prove all three elements, courts

20   will quash the subpoena or enter a protective order prohibiting the deposition. *See,*

21   *e.g., Dibel v. Jenny Craig, Inc.*, No. 06cv2533 BEN (AJB), 2007 WL 2220987, at *2

22   (S.D. Cal. Aug. 1, 2007) (quashing subpoena seeking deposition of defendant's

23   attorney); *Lloyd Lifestyle Ltd.*, 2006 WL 753243, at *3 (same); *Nocal, Inc. v.*

24   *Sabercat Ventures, Inc.*, No. C 04-0240 PJH(JL), 2004 WL 3174427, at **2-4 (N.D.

25   Cal. Nov. 15, 2004) (quashing subpoena and granting protective order); *Mass. Mut.*

26   *Life Ins. Co.*, 177 F.R.D. at 481-82 (granting protective order).  Here, the Discovery

27   Master should quash the subpoena to Mr. McFarland.

28

**B.     Mattel Should Not Be Permitted To Take Mr. McFarland's Deposition.**

Mattel cannot make the showing required to take Mr. McFarland's deposition. Mattel has numerous other sources from which to obtain relevant, non-privileged information regarding MGA's copyright applications.  For example, with respect to the six copyright applications that Mr. McFarland signed, Mattel has served numerous Rule 30(b)(6) deposition topics addressing MGA's copyright applications. Samir Khare, MGA's in-house legal counsel and a 30(b)(6) witness, testified extensively with respect to Topic 33 of Mattel's Second Notice of Deposition of MGA, which dealt solely with the applications for copyright and trademark registrations as to Bratz.  Mr. Khare gave extensive testimony as to the copyright and trademark applications for each Bratz doll, which consisted of explaining to Mattel's counsel the source of the date for each application, as well as who drafted the applications.[13]  Mr. Khare reviewed copyright registrations and applications with Mattel's counsel, and provided details as to the information contained in the applications and registrations.[14]

In addition to Mr. Khare's Rule 30(b)(6) testimony, Mattel deposed MGA witness Nana Ashong regarding the research done in connection with copyright and trademark applications for Bratz and the sources of information that was used in preparing the applications.[15]  Mattel deposed MGA witness Bryan Armstrong regarding MGA's copyright applications for Bratz.[16]  Mattel even deposed MGA's former in-house counsel, Mitchell Kamarck, who had responsibility for supervising

---

[13]     Herrington Decl., Ex. 8: Samir Khare Deposition Transcript (Vol. I) at 43:22-50:5 8, 210:8-223:4, 286:5-287:5.

[14]     *Id.*

[15]     Herrington Decl., Ex. 9: Nana Ashong Deposition Transcript at 14:10-17:17, 21:13-25:1.

[16]     Herrington Decl., Ex. 10: Bryan Armstrong Deposition Transcript at 43:2-55:23.

1  outside counsel with respect to the preparation of copyright applications, including

2  the applications signed by Mr. McFarland.[17]

3      Mattel also cannot show that Mr. McFarland has any non-privileged

4  information that is "crucial" to its case.  Again, Mattel's purported basis for seeking

5  to depose Mr. McFarland was his supposed involvement in submitting copyright

6  applications stating that Bratz was created in 2000.  But as shown, Mattel's

7  statements in this regard were false.  The copyright applications Mr. McFarland

8  signed state that Carter Bryant's Bratz drawings were created in 1998, which is

9  consistent with what Mr. Bryant and numerous other witnesses have testified to in

10  this case.[18]  Mattel cannot show that it is "crucial" to depose Mr. McFarland

11  regarding copyright applications that are consistent with the basic positions MGA

12  and Mr. Bryant have taken – positions that already have been the subject of

13  testimony by countless witnesses.  *See FMC Techs.*, 2007 WL 836709, at *4

14  (quashing subpoena where other witnesses were available to testify about letters

15  written by counsel).

26  [17]    Herrington Decl., Ex. 11: Mitchell Kamarck Deposition Transcript at 26:3-7,

27  90:15-95:13.

28  [18]    McFarland Decl. ¶ 3, Ex. 1.

1   **IV.    CONCLUSION**

2          For the foregoing reasons, MGA requests that the Discovery Master quash

3   Mattel's deposition subpoena to Mr. McFarland and/or grant a protective order

4   prohibiting Mattel from taking this deposition.

5

6   DATED:  March 17, 2008

7

8                                            Respectfully submitted,

9                                            SKADDEN, ARPS, SLATE, MEAGHER &
10                                           FLOM, LLP

11                                           By:  _Raoul D. Kennedy by ESH_
12                                                Raoul D. Kennedy
                                                  Attorneys for Counter-Defendants,
13                                                MGA ENTERTAINMENT, INC., MGA
                                                  ENTERTAINMENT (HK) LIMITED,
14                                                MGAE de MEXICO S.R.L. de C.V., and
                                                  ISAAC LARIAN
15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT F

THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA  90071
Tel.: (213) 687-5000/Fax: (213) 687-5600

RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY  10036
Tel.: (212) 735-3000 / Fax: (212) 735-2000

Attorneys for Counter-Defendants
MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT (HK) LIMITED,
MGAE DE MEXICO, S.R.L. DE C.V., AND ISAAC LARIAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual, <br><br> Plaintiff, <br><br> v. <br><br> MATTEL, INC., a Delaware corporation, <br><br> Defendant. <br><br>————————————————— <br><br> AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx) <br><br> Consolidated with Case No. 04-9059 and Case No. 05-2727 <br><br> **DISCOVERY MATTER** <br><br> **[To be heard by Discovery Master Hon. Edward Infante (Ret.)]** <br><br> **REPLY IN SUPPORT OF MGA'S MOTION TO QUASH LARRY MCFARLAND'S DEPOSITION SUBPOENA OR FOR PROTECTIVE ORDER** <br><br> Date:  TBD <br> Time:  TBD <br> Place:  JAMS <br><br> **Phase 1** <br> Discovery Cut-Off:   January 28, 2008 <br> Pre-Trial Conference: May 5, 2008 <br> Trial Date:         May 27, 2008 |

# **TABLE OF CONTENTS**

**Page**

I.   PRELIMINARY STATEMENT ........................................................ 1

II.  ARGUMENT.................................................................................. 2

    A.   *Shelton* Applies Because Mr. McFarland Has Served As MGA's  Counsel In This And Other Cases................................ 2

    B.   Mattel Fails To Satisfy The *Shelton* Test.................................. 4

        1.   Other Means Exist For Mattel To Obtain The Information. ............................................................. 4

        2.   Mr. McFarland Does Not Possess Any Non-Privileged Information That Is Essential To Mattel's Preparation Of This Case.................................................... 5

    C.   MGA Has Standing To Bring This Motion. ......................... 8

III. CONCLUSION ............................................................................ 9

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3    **Cases**

4
5    *Advanced Cardiovascular Sys., Inc. v. C.R. Bard, Inc.*,
       144 F.R.D. 372 (N.D. Cal. 1992) ................................................................. 7

6    *In re Ashworth, Inc. Secs. Litig.*,
7       No. 99-CV-121, 2002 WL 33009225 (S.D. Cal. May 11, 2002)........................ 9

8    *Boughton v. Cotter Corporation*,
       65 F.3d 823 (10th Cir. 1995)................................................................... 3, 6

9    *Bybee Farms LLC v. Snake River Sugar Company*,
       No. CV-06-5007-FVS, 2008 WL 820186 (E.D. Wash. Mar. 26, 2008)................. 2
10
11   *Caterpillar Inc. v. Friedemann*,
       164 F.R.D. 76 (D. Or. 1991) ................................................................... 3

12   *Desert Orchid Partners, L.L.C. v. Transaction Sys. Architects, Inc.*,
       237 F.R.D. 215 (D. Neb. 2006)................................................................. 4
13
14   *Diamond State Ins. Co. v. Rebel Oil Co., Inc.*,
       157 F.R.D. 691 (D. Nev. 1994).................................................................. 9

15   *Epling v. UCB Films, Inc.*,
       204 F.R.D. 691 (D. Kan. 2001) ................................................................. 4
16
17   *Estate of Yaron Ungar v. Palestinian Auth.*,
       No. 400 F. Supp. 2d 541 (S.D.N.Y. Nov. 7, 2005) ...................................... 10

18   *FMC Techs., Inc. v. Edwards*,
       No.C05-946C, 2007 WL 836709  (W.D. Wash. Mar. 15, 2007)........................ 8
19
20   *Gardias v. San Jose State University*,
       Nos. C04-04086 HRL, C04-04768 HRL, C05-01242 HRL, C05-1833 HRL,
21      C06-04695 HRL, 2007 WL 2428031, (N.D. Cal. Aug. 22, 2007) ..................... 9

22   *In re Grand Jury Proceedings (FMC Corp.)*,
       604 F.2d 798 (3d Cir. 1979)..................................................................... 10

23   *Industrial Maritime Carriers v. Barwil Agencies*
       *A.S.*, No. Civ.A. 03-1668, Civ.A. 03-1908,
24      2005 WL 2060925 (E.D. La. Aug. 23, 2005) ............................................. 4

25   *Klayman v. Freedom's  Watch, Inc.*,
       No. 07-22433-CIV, 2007 WL 4414803 (S.D. Fla Dec. 14, 2007)...................... 5
26
27   *Massachusetts Mututal Life Insurance Company v. Cerf*,
       177 F.R.D. 472 (N.D. Cal. 1998) ............................................................. 3

28

---

*Nova Products, Inc v. Kisma Video, Inc.,*
  220 F.R.D. 238 (S.D.N.Y. 2004)..................................................................... 8

*In re Sause Bros. Ocean Towing,*
  144 F.R.D. 111 (D. Or. 1991) ........................................................................ 3

*Shelton v. American Motors Corporation,*
  805 F. 2d 1323 (8th Cir. 1986).......................................................... 1, 2, 4, 5

*Theissen v. General Electric Capital Corporation,*
  267 F.3d 1095 (10th Cir. 2001)...................................................................... 3

*Unigene Labs., Inc. v. Apotex, Inc.,*
  No. C 07-80218 SI, 2007 WL 2972931 (N.D. Cal. Oct. 10, 2007) ........................ 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MGA'S' REPLY IN SUPPORT OF MOTION TO QUASH LARRY MCFARLAND'S DEPOSITION SUBPOENA

Case No. CV 04-9049 SGL (RNBx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# REPLY MEMORANDUM

## I.   PRELIMINARY STATEMENT

Mattel's deposition subpoena to Mr. Larry McFarland should be quashed by this Court pursuant to the test established in *Shelton v. American Motors Corporation*, 805 F. 2d 1323 (8th Cir. 1986), which limits the deposing of a party's counsel.  Under *Shelton*, a party seeking to depose opposing counsel must prove that: (1) there are no other means to obtain the information; (2) the information is relevant and non-privileged; *and* (3) the information is crucial to the case's preparation. Mattel has not satisfied these elements.

Here, Mattel has sought to depose Mr. McFarland based on his filing of six copyright applications on behalf of MGA.  But Mr. McFarland is not the only source with regards to this information.  Mattel has already deposed several witnesses such as in-house counsel, Samir Khare, former counsel Mitchell Kamarck, and other witnesses such as Nana Ashong and Bryan Armstrong on the development of the Bratz dolls and the Bratz copyright applications/registrations.  Secondly, Mr. McFarland does not have any non-privileged information that is crucial to Mattel's preparation of its case.  The six copyright applications Mr. McFarland signed state that Carter Bryant's Bratz drawings were created in 1998, which is consistent with what Mr. Bryant and numerous other witnesses have testified to in this case.

Mattel's opposition demonstrates once more that its efforts to depose Mr. McFarland are nothing more than a ploy to harass MGA and its attorneys and disrupt this case as it nears trial in May 2008.  Any knowledge Mr. McFarland possesses as to the creation date of Bratz is privileged information he obtained in his capacity as MGA's counsel.  The mere fact that Mr. McFarland signed copyright applications does not entitle Mattel to depose him.  Mattel already deposed several witnesses regarding MGA's Bratz copyright applications and has copies of the documents relating to those applications.  Mattel has had the opportunity to obtain the

---

MGA'S' REPLY IN SUPPORT OF MOTION TO QUASH LARRY MCFARLAND'S DEPOSITION SUBPOENA

1 information it seeks from other sources, and there is no basis for deposing Mr.

2 McFarland.

3      Mattel tries to manipulate the fact that Mr. McFarland represents several third

4 party witnesses in this case to argue that *Shelton* does not apply – all while ignoring

5 one vital piece of information:  <u>Mr. McFarland is also counsel for MGA</u>.  As

6 explained below, *Shelton's* test is not limited to depositions of trial counsel; it

7 applies to outside counsel like Mr. McFarland as well.

8      Lastly, Mattel asserts that MGA has no standing to bring this motion.  But that

9 is not true.  By bringing this motion, MGA seeks to protect privileged information

10 and prevent Mattel's harassment of MGA and its counsel.  A deposition of Mr.

11 McFarland creates a substantial risk that Mattel will seek to intrude on the attorney

12 client privilege and attorney work product doctrine, and Mattel has failed to provide

13 any justification for such intrusions, which would almost certainly lead to further

14 discovery disputes during a time when the parties should be preparing for trial.

15 Under these circumstances, MGA has standing to seek a protective order.

16      MGA respectfully requests that the Discovery Master grant this Motion and

17 issue a protective order precluding the deposition of Mr. McFarland.

18 **II.**    **<u>ARGUMENT</u>**

19     **A.**    ***Shelton* Applies Because Mr. McFarland Has Served As MGA's**
20             **Counsel In This And Other Cases.**

21      Mattel's interpretation of *Shelton v. American Motors Corporation*, 805 F.2d

22 1323 (8th Cir. 1986), is erroneous.  Although the Ninth Circuit has not expressly

23 adopted the test set forth in *Shelton*, it has been accepted by the district courts within

24 this Circuit as the proper standard for determining whether an attorney should be

25 deposed.  *See Bybee Farms LLC v. Snake River Sugar Co.*, No. CV-06-5007-FVS,

26 2008 WL 820186, at *2 (E.D. Wash. Mar. 26, 2008) (finding that the *Shelton* test is

27 useful in any analysis of a proposed deposition of counsel, be it a trial or in-house

28 counsel); *see also Mass. Mut. Life Ins. Co. v. Cerf*, 177 F.R.D. 472, 481-82 (N.D. Cal.

1 | 1998) (Infante, J.) (granting protective order preventing deposition of Cerf's former

2 | counsel in the litigation at issue, applying *Shelton*); *Caterpillar Inc. v. Friedemann*,

3 | 164 F.R.D. 76, 77 (D. Or. 1991) (granting motion to quash subpoena because

4 | defendant failed to meet the *Shelton* test); *In re Sause Bros. Ocean Towing*, 144

5 | F.R.D. 111, 116-17 (D. Or. 1991) (granting motion for protective order because

6 | defendant failed to meet the elements of the *Shelton* test).

7 |       Contrary to Mattel's narrow reading of *Shelton*, courts have held that *Shelton*

8 | not only applies to proposed depositions of "trial counsel," but applies with equal

9 | force to proposed depositions of in-house, foreign, and outside litigation counsel,

10 | declining to restrict *Shelton* to the narrow parameters proposed by Mattel.  *See*

11 | *Theissen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1112 (10th Cir. 2001)

12 | (upholding trial court's decision to refuse to allow deposition of defendant's

13 | corporate counsel on grounds that *Shelton* test was not met); *Boughton v. Cotter*

14 | *Corp.*, 65 F.3d 823, 830-31 (10th Cir. 1995) (upholding district court's grant of

15 | protective order precluding deposition of outside counsel under *Shelton*); *Desert*

16 | *Orchid Partners, L.L.C. v. Transaction Sys. Architects, Inc.*, 237 F.R.D. 215 (D. Neb.

17 | 2006) (applying the *Shelton* test even though the attorney was corporation's former

18 | general counsel and was not current litigation counsel or trial counsel, but had been

19 | involved with the defense strategy and litigation of the case); *Indus. Maritime*

20 | *Carriers v. Barwil Agencies A.S.*, No. Civ.A. 03-1668, Civ.A. 03-1908, 2005 WL

21 | 2060925, at *4 (E.D. La. Aug. 23, 2005) (finding that the noticed deposition of

22 | defendants' foreign counsel sought to depose "opposing counsel" within the meaning

23 | of *Shelton* because they served and continued to serve as advocates); *Epling v. UCB*

24 | *Films, Inc.*, 204 F.R.D. 691, 694 (D. Kan. 2001) (noting that counsel of record is not

25 | determinative and finding that in-house counsel should be treated as "opposing

26 | counsel" for purposes of applying the test).  Courts have noted that attorneys

27 | involved in coordinating the legal defense of the case, that participate in legal

28 |

---

1   defense strategy discussions, and are involved in frequent communications with their

2   clients, are entitled to the protection provided by the *Shelton* test. *See Desert Orchid*

3   *Partners,* 237 F.R.D. at 219-20. Mattel also ignores the very important fact that in

4   *Shelton* the attorney in the case was an in-house counsel, assisting in the underlying

5   matter. *Shelton,* 805 F.2d 1329-30. *Shelton* itself, therefore, did not limit its test

6   solely to protecting the deposition of trial counsel.

7          Here, Mr. McFarland is not only outside counsel for MGA, but has been

8   involved in this case from the very beginning. He has participated in legal defense

9   discussions with MGA's prior trial counsel and now with MGA's current trial

10  counsel.[1] His close involvement in this case as outside counsel renders *Shelton*

11  applicable.

12          **B.    Mattel Fails To Satisfy The *Shelton* Test.**

13          Under *Shelton,* Mattel must show that: (1) no other means exist to obtain the

14  information than to depose Mr. McFarland; (2) the information is relevant and non-

15  privileged ; and (3) the information is crucial to the preparation of the case. *Shelton,*

16  805 F.2d at 1326-27. Mattel has failed to meet this test.

17          **1.    Other Means Exist For Mattel To Obtain The Information.**

18          Mattel already obtained the relevant, non-privileged information regarding the

19  factual basis for MGA's copyright applications and registrations for Bratz. For

20  example, Mr. Samir Khare, MGA's in-house legal counsel and a 30(b)(6) witness,

21  testified as to the basis of the correction date of publication for certain copyright

22  registrations.[2] Therefore, Mattel already received the information it now seeks from

23

24  ─────────────────

25  [1]  Supplemental Declaration of Larry McFarland In Support Of MGA's Motion To
    Quash Larry McFarland's Deposition Subpoena Or For Protective Order ("Supp.

26  McFarland Decl."), ¶ 1.

27  [2]  Mattel, Inc.'s Opposition To MGA Defendants' Motion To Quash Larry
    McFarland's Deposition Subpoena ("Mattel Opp.") at 16-19.

28

1  Mr. McFarland, and the fact that Mattel did not like the answers it received on this

2  particular subject from Mr. Khare is no basis for seeking to depose Mr. McFarland.

3  *See Klayman v. Freedom's Watch, Inc.*, No. 07-22433-CIV, 2007 WL 4414803, at

4  *5 (S.D. Fla Dec. 14, 2007) (plaintiff was not entitled to depose defendants' attorney

5  "simply because he does not like the answers it has received on the subject from the

6  individual Defendants at deposition, and through document discovery").

7       Furthermore, MGA provided Mattel with copies of MGA's copyright

8  applications and registrations, and has provided Mattel with witnesses that Mattel

9  has had the opportunity to question with respect to the copyright applications,

10  including Bryan Armstrong and former in-house counsel Mitchell Kamarck.[3]

11  Mattel's failure to fully explore during depositions as to the facts on which the

12  copyright applications were based does not give Mattel now the opportunity to

13  obtain that information by deposing opposing counsel.  *See Boughton*, 65 F.3d at 831

14  ("The failure of the plaintiffs to make a substantial effort to establish as many

15  elements of the alleged wrongs as was possible through alternative sources before

16  seeking the testimony of defendants' counsel . . . undermines the argument that all

17  the information . . . was . . . within his possession.").  Any information Mr.

18  McFarland could provide would be cumulative and duplicative of the information

19  Mattel already had the chance to obtain from other witnesses.

20       **2.    Mr. McFarland Does Not Possess Any Non-Privileged Information That Is Essential To Mattel's Preparation Of This Case.**

21

22       Mattel is unable to show that Mr. McFarland possesses non-privileged

23  information that is "crucial" to its preparation of this case.  Mattel claims that it

24  "seeks information related to the factual basis for MGA's copyright applications and

25  registrations for Bratz . . . that McFarland submitted to the Copyright Office"[4] and

26  _____

[3]  Herrington Decl., Ex 10: Bryan Armstrong Deposition Transcript at 43:2-55:23;
27  Ex. 11: Mitchell Kamarck Deposition Transcript at 26:2-7, 90:15-95:13.
   [4]  Mattel Opp. at 13.
28

1  were later changed.  Mattel also asserts that Mr. McFarland possesses "unique

2  knowledge" concerning the changes in the Bratz copyright registrations.[5]  Based on

3  these assertions, it can be inferred that the principal purpose of Mattel's deposition

4  subpoena to Mr. McFarland is to ask him to disclose communications he had with

5  MGA during the drafting of the copyright applications/registrations.  Mattel is

6  interested in learning what MGA discussed with Mr. McFarland regarding the

7  creation and production of Bratz.  But the attorney-client privilege presumptively

8  protects from discovery such communications between client and counsel regarding

9  the information that is later included in copyright applications and registrations.  *See*

10  *Advanced Cardiovascular Sys., Inc. v. C.R. Bard, Inc.*, 144 F.R.D. 372, 374 (N.D.

11  Cal. 1992) (holding that "the privilege presumptively protects from discovery . . .

12  specific communications between client and counsel, not the relevant underlying

13  facts, data or information" the inventor had about the invention . . . "blocking access

14  to the private communications between inventor and patent lawyer").  Whatever

15  knowledge Mr. McFarland obtained regarding the creation and publication dates was

16

17

---

18  [5] *Id.*; Mattel's Opposition is another example of Mattel's continuing misrepresentations regarding Mr. McFarland.  In Mattel's Motion For Leave To Take

19  Additional Discovery and Objections To Discovery Master Order of September 28,

20  2007, Mattel alleged that Mr. McFarland had "unique personal knowledge of the Bratz claims" because he wrote MGA copyright registrations that stated Bratz were

21  created <u>during 2000</u>, which MGA later claimed was incorrect.  Supp. McFarland

22  Decl., Ex. 1.  This allegation by Mattel is not true.  Now, Mattel has switched its justification for seeking to depose Mr. McFarland, alleging now that he has "unique

23  personal knowledge" concerning changes in MGA's copyright registration for Bratz

24  dolls because Mr. McFarland claimed that the first publication of Bratz was <u>February 12, 2001</u>.  Mattel Opp. at 13.  Mattel has never identified Mr. McFarland as a witness

25  in its Rule 26 disclosures or interrogatory responses.  Supp. McFarland Decl., Ex. 2.

26  Mattel's misrepresentations as to Mr. McFarland and contradictory justifications for his deposition demonstrate only that Mattel's sole purpose is to harass Mr.

27  McFarland and disrupt the proceedings in this case.

28

1  obtained through his privileged communications with MGA.[6]  Because these

2  communications are protected by the attorney-client privilege, Mr. McFarland cannot

3  be deposed with regards to his knowledge.

4       Mattel also claims that it is "entitled to the facts behind what actually

5  happened – facts Mr. McFarland possesses."[7]  Mattel has provided no evidence to

6  show that Mr. McFarland possesses these facts or that he is the sole person with this

7  information.  The copyright applications Mr. McFarland signed state that Carter

8  Bryant's Bratz drawings were created in 1998, which is consistent with what Mr.

9  Bryant and numerous other witnesses have testified to in this case.[8]  Mattel cannot

10  show that it is "crucial" to depose Mr. McFarland regarding copyright applications

11  that are consistent with the basic positions MGA and Mr. Bryant have taken –

12  positions that already have been the subject of testimony by countless witnesses.  *See*

13  *FMC Techs., Inc. v. Edwards,* No.C05-946C, 2007 WL 836709, at *4 (W.D. Wash.

14  Mar. 15, 2007) (quashing subpoena where other witnesses were available to testify

15  about letters written by counsel).

16       Lastly, Mattel alleges that Mr. McFarland possesses "percipient knowledge"

17  as to MGA's supposed inconsistent statements regarding the similarity between the

18  Bratz dolls and Carter Bryant's drawings made in other Bratz lawsuits, which

19  contradicts MGA's position in this case.[9]  Mattel, however, fails to disclose that Mr.

20  Khare already testified as to sworn statements made in other Bratz lawsuits.  Mr.

21  Khare was MGA's 30(b)(6) deponent on Topic 34 of Mattel's Second Notice of

22  Deposition of MGA Entertainment, Inc., which dealt with statements, affidavits, and

23  declarations made relating to Bratz in other lawsuits.  Mattel has already deposed Mr.

24

25  [6] Supp. McFarland Decl., ¶ 2.

26  [7] Mattel Opp. at 14.

   [8] McFarland Decl., ¶ 3, Ex. 1.

27  [9] Mattel Opp. at 14-15.

28

---

MGA'S' REPLY IN SUPPORT OF MOTION TO QUASH LARRY MCFARLAND'S DEPOSITION SUBPOENA
Case No. CV 04-9049 SGL (RNBx)

1   Khare as to the accuracy of statements made regarding when Bratz dolls were first

2   exhibited and sold that were made in other lawsuits.[10]  Any non-privileged

3   information Mr. McFarland could provide would be duplicative and cumulative.

4   Therefore, deposing Mr. McFarland as to his knowledge of supposed inconsistent

5   statements made in other litigation is unnecessary and just plain harassment.

6         **C.**    **MGA Has Standing To Bring This Motion.**

7         Finally, Mattel argues that the Discovery Master should deny this motion

8   because MGA supposedly lacks standing.  Citing *Nova Products, Inc v. Kisma Video,*

9   *Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004), Mattel asserts that "a party ordinarily

10   lacks standing to quash a subpoena directed at a nonparty unless the party is seeking

11   to protect a personal privilege or right."  But Mattel ignores that a party does have

12   standing to quash a subpoena directed to a non-party "'where its challenge asserts

13   that the information is privileged or protected to itself.'"  *Gardias v. San Jose State*

14   *Univer.*, Nos. C04-04086 HRL, C04-04768 HRL, C05-01242 HRL, C05-1833 HRL,

15   C06-04695 HRL, 2007 WL 2428031, at *1 (N.D. Cal. Aug. 22, 2007) (citing

16   *Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 695 (D. Nev. 1994)).

17   Moreover, courts have held that, where a party has an interest in the information

18   requested, that party has standing to move to quash the third party subpoenas.  *See In*

19   *re Ashworth, Inc. Secs. Litig.*, No. 99-CV-121, 2002 WL 33009225, at *2 (S.D. Cal.

20   May 11, 2002).

21         Mr. McFarland is not a typical non-party, he is the outside counsel for MGA.

22   Courts have recognized that a party has standing to quash a subpoena directed to its

23   attorney, such as the one at issue here.  *See Unigene Labs., Inc. v. Apotex, Inc.*, No. C

24   07-80218 SI, 2007 WL 2972931, at *4 (N.D. Cal. Oct. 10, 2007) (granting

25   defendant's motion to quash the deposition subpoena of defendant's attorney

26    

---

[10]  Supp. Herrington Decl. Ex. 1: Samir Khare Deposition Transcript (Vol. III) at
893:1-898:25.

---

1  because it would require disclosure of information protected by the attorney-client

2  privilege); *see also In re Grand Jury Proceedings (FMC Corp.)*, 604 F.2d 798, 801-

3  02 (3d Cir. 1979) (allowing client to intervene to challenge subpoena issued to

4  attorney); *see also Estate of Yaron Ungar v. Palestinian Auth.*, No. 400 F. Supp. 2d

5  541, 554 (S.D.N.Y. Nov. 7, 2005) (finding that a non-party had standing to move to

6  quash subpoena which had been served on its attorneys and which sought

7  information protected by the attorney-client privilege).

8  **III.    CONCLUSION**

9        For the foregoing reasons, MGA respectfully requests that the Discovery

10  Master quash Mattel's deposition subpoena to Mr. McFarland and/or grant a

11  protective order prohibiting Mattel from taking this deposition.

12

13  DATED:  April 7, 2008

                        SKADDEN, ARPS, SLATE, MEAGHER &
                        FLOM, LLP

16                      By: _Raoul D. Kennedy by RN_____
                        Raoul D. Kennedy
                        Attorneys for Counter-Defendants,
                        MGA ENTERTAINMENT, INC., MGA
                        ENTERTAINMENT (HK) LIMITED,
                        MGAE de MEXICO S.R.L. de C.V., and
                        ISAAC LARIAN

# EXHIBIT G

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

### 300 SOUTH GRAND AVENUE

### LOS ANGELES, CALIFORNIA 90071-3144

TEL: (213) 687-5000
FAX: (213) 687-5600
www.skadden.com

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
—
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

DIRECT DIAL
650-470-4626
EMAIL ADDRESS
ANDREW.TEMKIN@SKADDEN.COM

May 22, 2008

**Via Hand Delivery**

Tim Alger, Esq.
Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017

RE:     Carter Bryant v. Mattel

Dear Tim:

Pursuant to the Judge Larson's May 12, 2008 Order Granting in Part Mattel's Motion to Compel Production of Documents Involved in Third Party Bratz Lawsuits, enclosed is one DVD containing single page TIFFs with Concordance and Opticon load files for documents Bates numbered MGA 3881130 - MGA 3894935. A redaction log is also enclosed.

Very truly yours,

Andrew C. Temkin

Enclosure