THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
(laguiar@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Tel.: (213) 687-5000
Fax: (213) 687-5600

Attorneys for The MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>　　　　　Defendant.<br><br>AND CONSOLIDATED ACTIONS. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>Honorable Stephen G. Larson<br><br>MGA PARTIES' BENCH MEMORANDUM SUBMITTED IN CONNECTION WITH MATTEL'S INTENT TO OFFER INTO EVIDENCE HONG KONG PLEADINGS DURING THE PHASE 1-B TRIAL |

## PRELIMINARY STATEMENT

As discussed during the telephonic hearing on July 21, 2008, MGA submits this memorandum in connection with Mattel's intent to offer into evidence pleadings from cases filed by MGA in Hong Kong under thew laws of Hong Kong.

None of MGA's prior legal proceedings address the issue of whether the Bratz dolls are "substantially similar" to Bryant's drawings. Mattel has never disputed this fundamental fact. Rather, as discussed below, Mattel argues that pleadings in the Hong Kong suits are relevant and admissible because (i) the infringing dolls in certain of the cases were supposedly "less similar" to the Bratz dolls than the Bratz dolls are to the Bryant drawings, or (ii) the Bratz dolls "more closely resemble" Bryant's drawings than the infringing dolls in certain other cases.

Even if Mattel's characterization is accurate, admission of these pleadings from a prior foreign proceeding would only confuse the jury and prejudice MGA and would involve complex "trials within a trial" on issues that are irrelevant to this case. Also, the Hong Kong litigation materials Mattel seeks to admit were undeniably made in a vastly different legal context and involve issues of Hong Kong copyright law, which has significantly different legal standards than the Ninth Circuit standards that will be applied by the Court in this case. The statements are thus legally irrelevant to issues in this case and inadmissible. Moreover, if the Court allows Mattel to introduce these Hong Kong litigation materials, MGA will have no choice but to waste some of the few hours left for Phase 1-B to offer specialized testimony regarding the differences between Ninth Circuit and Hong Kong copyright law. Finally, contrary to Mattel's counsel's argument during the July 21 hearing (Rough Tr. at 25), the statements are not "prior inconsistent statements" or "admissions" as to any issue in this case.

Mattel has listed nearly 100 Hong Kong pleadings on its most recent exhibit list and its arguments concerning the admissibility of each of the documents have not yet been articulated. MGA has therefore been forced at this point to make its best guess concerning Mattel's arguments and reserves its rights to make additional challenges based on Mattel's

1

MGA Parties' Bench Mem. Submitted Re: Mattel's Intent To Offer Into Evidence Hong Kong Pleadings During The Phase 1-B Trial– Case No. CV 04-9049 SGL (RNBx)

specific arguments for admissibility of particular documents.

## ARGUMENT

### I. THE COURT SHOULD NOT ALLOW MATTEL TO INTRODUCE STATEMENTS MADE IN THE HONG KONG PLEADINGS THAT ARE BASED ON HONG KONG LAW

#### A. The Ninth Circuit Test For Copyright Infringement Is Significantly Different Than The Test Applied Under Hong Kong Law

During the July 21 hearing, the Court correctly noted that Ninth Circuit precedent requires the use of a two-part "extrinsic/intrinsic" copyright infringement test. The "extrinsic" test involves "analytically dissecting" the copyrighted work and filtering out elements that are not protected by copyright. [See Tr. 4-5]. See also Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994) ("Using analytic dissection, and, if necessary, expert testimony, the court must determine whether any of the allegedly similar features are protected by copyright."). The Court held that this "filtering" analysis must be applied to Bryant's drawings, and it must be done "before any conclusion regarding substantial similarity is reached." [Id. at 5]. The Court found that the "intrinsic" test involves an examination of the "overall similarity of expression" between the copyrighted and accused works, viewed "from the perspective of the ordinary observer." [Id.].

The Hong Kong pleadings that Mattel seeks to introduce involve claims of copyright infringement by MGA under Hong Kong law against third-party manufacturers of allegedly infringing dolls. Mattel has never suggested that the test for determining copyright infringement under Hong Kong law is the same as the Ninth Circuit's "extrinsic/intrinsic" test; in fact, the Hong Kong copyright law is quite different.

An expert on Hong Kong law would be needed to specifically address the many ways in which Hong Kong law differs from U.S. copyright law in general and the Ninth Circuit in particular. As a general matter, copyright infringement in Hong Kong is governed by the Hong Kong "Copyright Ordinance," which provides that copyright is a "property right" that "subsists" in various 'works,' including "artistic works." See Hong Kong Copyright

2

1  Ordinance § 2(1)(a). Under Hong Kong law, copyright infringement requires "copying of a
2  "work," which is defined as "reproducing the work in any material form." Id. § 23(1) &
3  23(2).
4     Because this is not an issue in this case, MGA is not certain what "reproducing the
5  work in any material form" means under Hong Kong law. What is clear, however, is that the
6  "reproducing the work in any material form" standard of copyright infringement applied
7  under Hong Kong copyright law is not the same as the "substantial similarity" standard
8  applicable under U.S. copyright law and, as the Court held, specifically to this case.
9  Moreover, the copyright infringement analysis under Hong Kong law for "artistic works" like
10 the Bryant drawings does not appear to involve the "analytical dissection" and "filtering"
11 analysis the Court held was required in this case.

   **B.  The Statements From The Hong Kong Pleadings Mattel Intends To Offer
        Are Legally Irrelevant And Their Admission Would Be Improper And
        Unduly Prejudicial**

15    As an initial matter, the Court should recall Mattel's motion *in limine* directed to
16 MGA's expert Professor Menell. See Mattel Motion *In Limine* No. 12. There Mattel argued
17 that Professor Menell's opinions could not be "reliably applied to the facts of this case" since
18 Professor Menell supposedly based "his copyright analysis on the Second Circuit's
19 abstraction, filtration, and comparison ('AFC') test" rather than "Ninth Circuit law, which
20 applies a substantially different test for copyright infringement." Id. at 16-17. On that basis,
21 Mattel argued that the Court should preclude Prof. Menell from testifying because he made
22 reference to Second Circuit law, presumably because Mattel thought it was irrelevant and
23 would confuse the jury. That problem will present itself *in spades* if the Hong Kong
24 litigation material is admitted in this case.
25    Tyco Indus., Inc. v. Lego Systems, Inc., Civ. No. 84-3201 (GEB), 1987 U.S. Dist.
26 LEXIS 13193 (D.N.J. Aug. 26, 1987), aff'd 853 F.2d 921 (3d Cir. 1988), is directly on point.
27 In that case, Tyco objected to Lego's attempt to introduce into evidence "testimony or

3

exhibits which were part of [a prior] Hong Kong trial" between the parties. Id. at *58 n.10. The district court refused to admit statements from an expert report and certain testimony "because the statements, although factual, were made in a very different legal context." Id. The court held that the statements Lego sought to admit were "clearly geared toward issues in [the Hong Kong] case, not to the one at hand, and incorporate words which appear to have specific meaning under British law." Id. Other testimony Lego sought to admit from the prior Hong Kong case was excluded because "the subject and meaning of the excerpted testimony [was] being taken out of the legal context in which it was offered." Id.

Astra Aktiebolag v. Andrx Pharms., 222 F. Supp. 2d 423 (S.D.N.Y. 2002), is also instructive on the limited relevance of positions taken made in foreign jurisdictions based on inapposite legal standards. There, the defendant in a patent litigation sought to prove that the plaintiff made certain "adoptive admissions" regarding prior art (which would invalidate the patent) based on silence and certain statements in European patent proceedings. Id. at 578. One "admission" to which the defendant pointed was a comment by a British court that the plaintiff did not contest publication of the alleged "prior art." Id. at 578 n.97. The district court, however, determined that any such "admission" would be irrelevant in the U.S. proceeding, because:

> [D]ifferences in the realities of patent litigation in the United Kingdom or different legal standards for publication could well be the cause of [plaintiff's] position. Without supporting evidence about the relevant patent law, evidentiary standards and burdens of proof ... the court finds that the statement has no value for this court in deciding ... prior art under United States law.

Id. See Pfizer Inc. v. Ranbaxy Labs., 457 F.3d 1284, 1290 (Fed. Cir. 2006) ("[T]he statements made during prosecution of foreign counterparts to the '893 patent are irrelevant to claim construction because they were made in response to the patentability requirements unique to Danish and European law ....").

4

MGA Parties' Bench Mem. Submitted Re: Mattel's Intent To Offer Into Evidence Hong Kong Pleadings During The Phase 1-B Trial– Case No. CV 04-9049 SGL (RNBx)

Indeed, federal courts are often hesitant to inject complex issues of foreign law into jury trials. See, e.g., Deviner v. Electrolux Motor, AB, 844 F.2d 769, 773 (11th Cir. 1988) (affirming district court's exclusion of evidence relating to a change in Swedish law so as "to avoid confusing the jury with Swedish law."); Sherry v. Massey-Ferguson, Inc., 1997 U.S. Dist. LEXIS 10752, *3 (W.D. Mich. 1997) (excluding any "evidence of European legal standards and requirements…[which] will unnecessarily confuse the jury.").

As in Tyco, the statements in the Hong Kong pleadings that Mattel seeks to introduce during the Phase 1-B trial, even if factual, "were made in a very different legal context." And they were "clearly geared toward issues" in the Hong Kong cases, not to this case, and incorporate words with "specific meaning" under Hong Kong copyright law.

For example, Mattel wants to introduce an affidavit Isaac Larian submitted in the Toys & Trends case in which he "stated" that "'the complaint made by MGA is that the 3 dimensional Funky Tweenz dolls have infringed the 2 dimensional drawings which are artistic works in which copyright subsists.'" See Mattel Opp. to MGA Motion In Limine No. 3 at 3. In a similar vein, Mattel argues that the pleadings in the Double Grand, Hunglam and Bandai cases "will also show that MGA has on multiple occasions contended that other dolls were substantially similar to Bryant's drawings when in fact they were much more different from them than are the Bratz dolls." Id. at 14. Based on this argument and the exhibits identified by Mattel, it appears that Mattel intends to have the jury determine whether the Bratz dolls "more closely resemble Bryant's drawings than the competitive dolls MGA claimed infringed the drawings." Id.

General statements of "infringement" under Hong Kong law are irrelevant to whether the Bratz dolls infringe the Bryant drawings under applicable Ninth Circuit legal principles, and Mattel's attempt to circumvent the required Ninth Circuit copyright infringement analysis is improper. MGA's supposed statements regarding "infringement" under Hong Kong law involve a completely different inquiry – for example, whether the Funky Tweenz dolls and the dolls at issue in the Double Grand, Hunglam and other cases "reproduced" the

5

Bryant sketches "in any material form" under Hong Kong law. The relevant inquiry in this case is whether the Bratz dolls are "substantially similar" to the Bryant drawings under the applicable Ninth Circuit infringement test. These supposed statements, even if made (which they were not, since the "substantial similarity" standard is not part of Hong Kong law), are thus legally irrelevant to this case.

Moreover, even assuming that the significant differences between the Ninth Circuit and Hong Kong copyright infringement tests could simply be ignored (which would be error), it would be irrelevant, improper, a waste of time, and highly prejudicial to MGA to conduct a "trial within a trial," in which the jury would have to (i) compare the various third-party dolls at issue in the Hong Kong suits with the Bryant drawings, (ii) do the same for each of the scores of allegedly infringing Bratz dolls in this case, and then (iii) decide whether the third-party dolls in the Hong Kong suits or the Bratz dolls look more like Bryant's drawings. It also would confuse the jury and distract from the real issues in this case. See Fed. R. Evid. 401 & 403. Most of the Bratz dolls that Mattel accuses of infringement in this case were not even at issue in the Hong Kong cases. Also, the comparison Mattel seeks is not relevant to the "analytic dissection and filtering" required in connection with the "extrinsic" part of the Ninth Circuit's infringement test, or in the "intrinsic" test's assessment of the "overall similarity of expression" between the Braynt drawings and the allegedly infringing Bratz dolls.

In a twist on the foregoing, Mattel argues that MGA's claims in certain of the Hong Kong pleadings that the infringing third-party dolls "were substantially similar" to the Bratz dolls is admissible because the infringing third party dolls in those foreign cases are supposedly "less similar to Bratz than Bryant's drawings are." Mattel MIL No. 3 Resp. at 5. As with the prior Mattel argument, these statements are also legally irrelevant since they are based on Hong Kong law, which is significantly different than the Ninth Circuit law applicable to this case. Moreover, under this "trial within a trial" scenario, again assuming (improperly) that the significant differences between Ninth Circuit and Hong Kong law could

6

MGA Parties' Bench Mem. Submitted Re: Mattel's Intent To Offer Into Evidence Hong Kong Pleadings
During The Phase 1-B Trial– Case No. CV 04-9049 SGL (RNBx)

be ignored, Mattel is apparently suggesting that the jury should (i) compare each of the many allegedly infringing Bratz dolls with third-party dolls at issue in each of the Hong Kong cases, and then (ii) make a determination whether which of the dolls is "less similar" to the Bryant drawings.

Mattel also argues that certain of the Hong Kong pleadings will show that MGA "admitted that the Bryant drawings are the definitive basis for the Bratz doll designs," and that "MGA is judicially estopped from arguing that Bryant's dolls were not derived from Bryant's drawings." Mattel Resp. To MGA MIL No. 3 at 15; see also id. at 2 (""the Bratz dolls were derived from Brant's two-dimensional drawings – and no other works"). An example of the type of statements Mattel suggests give rise to these allegedly case-determinative admissions, Mattel points to an affidavit submitted by MGA employee Lee Shiu Cheng in the Double Grand case that "[t]he designs of the BRATZ dolls are all original drawings created by Mr. Bryant using his own independent labour, skill and judgment." Id. at 13. As an initial matter, MGA does not dispute that Bryant's drawings were the initial inspiration for the Bratz dolls. Mattel, however, appears to be arguing that MGA's statements in the Hong Kong cases amount to admissions that the Bratz dolls are "derivative works" of the Bryant drawings under U.S. law. This of course would be tantamount to MGA admitting that the dolls infringe the drawings, which MGA has not done. See, e.g., Litchfield v. Spielberg, 736 F.2d 1352, 1355 (9th Cir. 1984) ("'[a] work will be considered a derivative work only if it would be considered an infringing work if the material which it has derived from a prior work had been taken without the consent of a copyright proprietor of such prior work.'") (quoting United States v. Taxe, 540 F.2d 961, 965 n. 2 (9th Cir. 1976) (emphasis added)).

The statements that Mattel seeks to introduce from the Hong Kong litigations are more ambiguous, and they do not even "contradict" other statements by MGA that the creation and design of the final Bratz dolls was largely attributable to "designers besides Bryant, including a sculptor and a hair designer." Id. at 14. In fact, in Double Grand and other Hong Kong

7

1 cases, MGA specifically pointed out that Bryant's drawings were merely the starting point
2 and that the other MGA employees, including Margaret Leahy, the Bratz sculptor, used their
3 own "independent skill, labour and judgement" to created the Bratz doll.  See Affidavit of
4 Daphne Gronich (submitted in Double Grand ¶6, 8-10, 11).

7 DATED: July 22, 2008            SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                                 By: _____/s/ Thomas J. Nolan_____
                                         Thomas J. Nolan
                                     Attorneys for the MGA Parties