QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
  Jon D. Corey (Bar No. 185066)
  joncorey@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Plaintiff,<br><br>          vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                    Defendant.<br><br>AND CONSOLIDATED ACTIONS<br>[ | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. CV 04-09059 and Case No. CV 05-02727<br><br>**MATTEL, INC.'S OPPOSITION TO MGA AND LARIAN'S MOTION TO QUASH TRIAL SUBPOENA ISSUED TO LARRY MCFARLAND**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Declaration of Lesley E. Williams filed concurrently herewith]<br><br>Date:        July 23, 2008<br>Time:        8:00 am.<br><br>**Phase 1**<br>Pre-Trial Conference:  May 19, 2008<br>1a Trial Date:              May 27, 2008<br>1b Trial Date:              July 23, 2008 |

## MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction

Mattel should be permitted to call attorney Larry McFarland as a fact witness in this case.  Mr. McFarland filed an infringement action on behalf of MGA in which he made various factual averments on MGA's behalf which are relevant to phase 1(b).

For example, Mr. McFarland's pleadings allege that the accused merchandise sold by the defendants in those actions infringed MGA's rights in the Bratz drawings which the jury has now determined were created during Bryant's employment at Mattel.  These allegations are relevant to rebut MGA's present contention that the drawings are irrelevant because these are very different from the Bratz dolls.

Mr. McFarland also alleges that the defendants' accused merchandise infringed MGA's rights in the Bratz dolls and drawings, even though the accused merchandise in those cases is far more different from the Bratz dolls and drawings than the Bratz drawings are different from the Bratz dolls.  This rebuts MGA's present contention that the Bratz dolls cannot infringe the Bratz drawings because they are entirely dissimilar.  Mr. McFarland also has copies of the accused merchandise in his possession that Mattel wishes to offer in evidence.

In his pleadings, Mr. McFarland also alleges that the Bratz dolls are three dimensional depictions of the original Bratz drawings, which the jury has determined were created by Bryant during his employment.  This is also relevant to rebut MGA's present contention that the Bratz dolls are utterly dissimilar to the original Bratz drawings.

Mr. McFarland's pleadings also allege that the popularity of the Bratz characters drives the sales of other Bratz-related products, including licensed product.  These admissions are relevant to prove Mattel's entitlement to damages for

1  indirect Bratz sales.  Other examples of MGA admissions in Mr. McFarland's

2  pleadings could be cited.

3          The Shelton rule regarding testimony by trial counsel has never been

4  adopted in the Ninth Circuit.  In any event, Mr. McFarland has never been trial

5  counsel to a party in this action.

6          Finally, Judge Infante's Order denying a deposition of Mr. McFarland

7  is not relevant to the trial subpoena.  Mattel has specific factual evidence which it

8  must get in through Mr. McFarland.

9

10                    **Procedural History**

11

12          Mattel attempted to obtain Mr. McFarland's deposition during January

13  2008.[1]  Mr. McFarland evaded service of a deposition subpoena on his behalf (as

14  well as for that of several of his clients) for over a month.[2]  This Court directed him

15  to accept service of the subpoenas.[3]  Mr. McFarland did so, but MGA and Larian

16  moved to quash his deposition subpoena.  Judge Infante granted MGA's and Larian's

17  motion and Mattel was unable to depose Mr. McFarland.[4]

18          On July 15, 2008, Mattel served a trial subpoena on Mr. McFarland

19  requiring his personal appearance in Mattel's case in chief at the trial of phase 1(b)

20  of the action on July 23, 2008.  The subpoena also included several requests for

21  documents all of which were returnable on the first day of trial:

22          (1)     ALL original photographs of the dolls "Musical Trendy

23                  Teenies", "Angel Doll", and "Fashion Doll".

24  _____

25  [1]  See Mattel Inc.'s Opposition to MGA Defendant's (sic) Motion to Quash Larry

26  McFarland's Deposition Subpoena dated March 27, 2008 (hereinafter "Mattel Opposition"), at 3.

27  [2]  Mattel Opposition, at 4.
    [3]  Mattel Opposition, at 5.

28  [4]  See Infante Order, at 6.

(2)     ALL of the actual doll products known as "Musical Trendy Teenies", "Angel Doll", and "Fashion Doll".

(3)     ALL DOCUMENTS referring or relating to the lawsuit filed by MGA against Multitoy in 2004, styled MGA ENTERTAINMENT, INC., Plaintiff v. MULTITOY, INC., YUAN-LAN LIU, an individual, JEFF WU, an individual, and dba IMG TOYS, ALL TOY IMPORTS, INC., SUSAN LIU, an individual, TOYSDIVISION, INC., TOM LIU, an individual, and DOES I-10, Defendants.

(4)     ALL ORIGINALS of any drawings, sculpts, molds, and other tangible items relating to the dolls known as "Musical Trendy Teenies", "Angel Doll", and "Fashion Doll".

On July 21, 2008, MGA moved to quash the subpoena and refused to produce any of the requested documents.

## **Argument**

**I     MR. MCFARLAND FILED AN INFRINGEMENT ACTION ON BEHALF OF MGA IN WHICH HE MADE VARIOUS FACTUAL AVERMENTS RELEVANT TO PHASE 1(B) .**

Mattel seeks to call Mr. McFarland to testify in Phase 1(b) simply to establish that he made certain factual averments in pleadings he filed with court. Those factual averments are relevant in several key respects.

First, Mr. McFarland's pleadings allege that the accused merchandise sold by the defendants in those actions infringed MGA's rights in the Bratz drawings which the jury has now determined were created during Bryant's employment at Mattel.  Thus, for example, in the Mutlitoy complaint, Mr. McFarland averred that:

1    "Defendant Multitoy is selling and offering for sale infringing dolls

2    which bear infringements of trademarks and copyrights owned by

3    Plaintiff, and that infringe upon Plaintiff's trade dress rights."[5]

4  These allegations are relevant to rebut MGA's present contention that the drawings

5  are irrelevant because these are very different from the Bratz dolls.

6        Second,  Mr. McFarland has averred that the defendants' accused

7  merchandise infringed MGA's rights in the Bratz dolls and drawings, even though

8  the accused merchandise in those cases is far more different from the Bratz dolls and

9  drawings than the Bratz drawings are different from the Bratz dolls.  This rebuts

10  MGA's present contention that the Bratz dolls cannot infringe the Bratz drawings

11  because they are entirely dissimilar.  Mr. McFarland also has copies of the accused

12  merchandise in his possession that Mattel wishes to offer in evidence.

13        Third, Mr. McFarland has averred in pleadings that the Bratz dolls are

14  three dimensional depictions of the original Bratz drawings, which the jury has

15  determined were created by Bryant during his employment.  For example,

16    "Plaintiff is the exclusive owner of all rights in and to the

17    internationally famous BRATZ characters, which include, but are not

18    limited to, "Cloe," "Jade," "Sasha," "Yasmin, "Meygan, . . . These

19    characters are hereinafter referred to as the 'BRATZ Characters.'  **True**

20    **and correct copies of exemplars of depictions of the BRATZ**

21    **Characters, in the form of selected pages from Plaintiff's**

22    **copyrighted BRATZ Purse Style Guide, are attached hereto as**

23    **Exhibit 1**."[6]

24    "In 2001, Plaintiff introduced a new line of fashion dolls known as the

25    "BRATZ" or, alternatively, the "BRATZPACK" **which are three-**

26

27    [5]   Complaint in MGA v. Multi Toy, dated April 9, 2004 (hereinafter, "Multitoy Complaint"), Paragraph 20.

28    [6]   Multitoy Complaint, Paragraph 3.

dimensional depictions of the **BRATZ Characters** (hereinafter the "BRATZ Dolls").[7]

This is also relevant to rebut MGA's present contention that the Bratz dolls are utterly dissimilar to the original Bratz drawings.

Fourth, Mr. McFarland has also averred that the popularity of the Bratz characters drives the sales of other Bratz-related products, including licensed product.

> "In keeping with the importance of the BRATZ Property, Plaintiff and/or its licensees have expended tens of millions of dollars in advertising the BRATZ Products and promoting the use of the BRATZ Characters on original licensed products, which include apparel and other items. **Items bearing the BRATZ Characters and/or the BRATZ name and mark have proven to be in great demand.**"[8]

> "The BRATZ Characters are extremely valuable and successful. The licensing of rights to the BRATZ Characters and sale of BRATZ Products has generated tens of millions of dollars in revenue. In 2003, such sales and licenses generated in excess of $500 million in revenue."[9]

These admissions are relevant to prove Mattel's entitlement to damages for indirect Bratz sales.[10]

_____

[7] Multitoy Complaint, Paragraph 5.
[8] Multitoy Complaint, Paragraph 13.
[9] Multitoy Complaint, Paragraph 14.
[10] In the motion, MGA argues that Judge Infante previously quashed a deposition subpoena served on Mr. McFarland.[10] This Court is not bound by the Discovery Master's Order regarding the permissibility of a deposition in determining who may testify at trial. Cf In re Aircrash in Bali, Indonesia v. Zinke, 871 F.2d 812, 816 (9th Cir. 1989) ("A trial court has broad discretion to admit or exclude evidence."); Rodella v. U. S., 286 F.2d 306, 309 (9th Cir. 1960) ("[T]he trial court has a very large discretion as to how it will permit the introduction of evidence.") This is especially true given that the Court already has had the benefit of having presided over weeks of testimony and a jury verdict in favor of Mattel in phase 1(a).
(footnote continued)

1    In sum, the information Mattel seeks is non-privileged, uniquely in

2  McFarland's possession and it is crucial to Mattel's case.

3    .

4  **II      SHELTON DOES NOT BAR MCFARLAND FROM TESTIFYING AT**

5  **TRIAL**

6    The Motion relies on the Eighth Circuit's decision in Shelton v.

7  American Motors Corp., 805 F.2d 1323 (8th Cir. 1986).  But Shelton is not the law

8  in this Circuit,[11] nor does it apply to the appearance of a witness at trial.  Mr.

9  McFarland is an attorney who represents several third party witnesses in this matter

10  (and he has represented certain of those third party witnesses at trial).  In the past

11  Mr. McFarland has acted as counsel for MGA, but he has never acted as trial

12  counsel for a party in this matter.  Furthermore, even under Shelton, McFarland

13  should testify because Mattel seeks to obtain the testimony of counsel for third party

14  witnesses who is a percipient witness to facts crucial to this litigation.  Even were

15  Shelton applied, Mattel meets the criteria for seeking to question Mr. McFarland at

16  trial.

17    **A.      The Ninth Circuit Has Not Adopted Shelton**

18    In the Motion, MGA asserts that "the Ninth Circuit district courts have

19  'uniformly followed' Shelton," relying on Lloyd Lifestyle Ltd. v. Soaring Helmet

20  Corp., No C06-0349C, 2006 WL 753243, *2 (W.D. Wash. Mar. 23, 2006).[12]  The

21  Ninth Circuit itself has never adopted Shelton, and the Ninth Circuit district courts

22  do not "uniformly follow" Shelton.  In Younger Mfg. Co. v. Kaenon, Inc., 247

23  F.R.D. 586, 588 (C.D. Cal. 2007).

─────────────────────

25  The jury has found that Mattel is the rightful owner of Carter Bryant's Bratz
   drawings and that Bryant created Bratz while a Mattel employee.  Mr. McFarland's
26  testimony is now directly relevant to the dates of first creation and use of the
   copyrights based on those drawings, and to the contradictory positions MGA has
27  elsewhere taken regarding its copyrights.
      [11]  Infante Order at 4.
28      [12]  Motion to Quash, at 5-6.

Other courts have also found <u>Shelton</u> to be inappropriately inflexible, particularly when a party seeks the deposition of an attorney who is not trial counsel for an opposing party or a witness to relevant facts.  <u>See, e.g.</u>, <u>In re Subpoena Issued to Dennis Friedman</u>, 350 F.3d 65, 72 (2d Cir. 2003) (rejecting <u>Shelton</u> rule and stating, "the standards set forth in <u>Rule 26</u> require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship"); <u>QAD, Inc. v. ALN Associates, Inc.</u>, 132 F.R.D. 492, 495 (N.D. Ill. 1990) ("[T]his Court subscribes wholeheartedly to a procedure that rejects any prior restraint in favor of permitting the deposition to go forward, with any individualized objections to be dealt with during its regular course."); <u>Cook, Inc. v. C. R. Bard, Inc.</u>, 2003 WL 23009047, *1 (S.D. Ind. 2003) ("[T]he Court finds that it was not error for the Magistrate Judge to decline to follow <u>Shelton</u> and permit the deposition of Mr. Godlewski to proceed.").

Similarly, the Ninth Circuit has not applied the <u>Shelton</u> test to the appearance of witnesses at trial.  Though defendants now claim that the <u>Shelton</u> test applies with equal force where a party seeks to quash a subpoena for testimony at trial,[13] In support, MGA and Larian cite only a Tenth circuit case and a lone district court in the Western District of Washington.[14]

Neither the <u>Federal Rules of Civil Procedure</u> nor the <u>Federal Rules of Evidence</u> prohibit seeking testimony at trial from an opposing party's attorney.

---

[13]  Motion to Quash at 6, fn 10.
[14]  Motion to Quash at 6, fn 10.

B.    **Shelton Does Not Apply Because McFarland is a Percipient Witness and Has Never Been Trial Counsel in This Case**

The core purpose of the Shelton test is to protect a party from a trial-counsel deposition that might disclose strategies and otherwise harass and disrupt trial-counsel.  As the Eighth Circuit stated, "the Shelton test was intended to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy."  Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 730, 731 (8th Cir. 2002).  ("The concerns raised in Shelton regarding abuse of the discovery process and adding time and expense to litigation are not implicated in this case where [defendant] seeks relevant information uniquely known by [plaintiff's] attorneys about prior terminated litigation, the substance of which is central to the pending case.").  Thus, "Shelton was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial.  In such circumstances, the protection Shelton provides to opposing counsel only applies because opposing counsel is counsel in the instant case and not because opposing counsel had represented the client in the concluded case."  Id. at 730.

Although Mr. McFarland has in the past represented MGA in connection with Bratz copyright registrations, he is not trial counsel for MGA in this case.  It follows that concerns about questioning on litigation strategy for MGA in this matter do not apply.  See, e.g., Carey v. Textron, Inc. (E-Z-Go Textron), 224 F.R.D. 530, 532 (D. Mass. 2004) ("Moreover, the fact that Attorney Gelineau no longer represents Carey in this matter reduces the degree [of] interference that any deposition of him would introduce. He, presumably, does not possess information

1   concerning Plaintiff's current litigation strategy.").[15]  Were the law otherwise, then

2   all a litigant would have to do to shield key factual knowledge held by its past

3   counsel from deposition would be to retain them to represent third parties in a legal

4   action.  And Mr. McFarland does possess relevant information.

5          In sum, Mr. McFarland has represented MGA in other copyright

6   infringement cases in which he, on behalf of MGA, has taken positions about the

7   enforceability and scope of copyrights and what products are "substantially similar"

8   to the Carter Bryant's Bratz drawings that are inconsistent with MGA's positions

9   now.

10   **C.     The Testimony Sought from McFarland is Unique, Crucial and**

11   **         Essential to Mattel's Case**

12

13          As set forth in Section I. supra, Mr. McFarland possesses unique

14   knowledge concerning various infringement actions in which he represented MGA.

15   MGA's representations in those cases, made by Mr. McFarland on MGA's behalf,

16   are relevant to issues that MGA itself has interjected into this case.  MGA contends

17   the Bratz dolls at issue in this lawsuit are *not* based on or substantially similar to

18   Bryant's Bratz drawings.  The apparent reason for MGA's arguments on this score is

19   to assert at trial that, even if Mattel owns the Bratz doll design drawings Bryant

20   created, the dolls do not infringe upon those drawings.

21          The fact of those filings is relevant because MGA has repeatedly

22   accused the products of other defendants of infringing the copyrights in Bryant's

23

24   _____

25   [15]   Calvin Klein Trademark Trust v. Wachner, 124 F. Supp. 2d 207, 211
     (S.D.N.Y. 2000) (noting that counsel's role in litigation was "peripheral" and
26   refusing to apply Shelton on that basis); Nakash v. U.S. Dept. of Justice, 128 F.R.D.
     32, 34 (S.D.N.Y. 1989) ("[T]he major rationales in these cases—discouraging the
27   depositions of opposing attorneys in a particular lawsuit to avoid unnecessary
     expense and interference with the attorney-client relationship—are not applicable
28   here.").

1   drawings specifically.[16]  The jury should be able to compare other dolls that MGA

2   has previously claimed are substantially similar to Bryant's Bratz drawings at issue

3   in this case, and thus decide whether those Bratz drawings are substantially similar

4   to the Bratz dolls.

5       **D.      Mattel Has No Other Means to Obtain The Documents and**

6                **Testimony Sought from McFarland**

7            MGA asserts that "Mattel has numerous other sources from which to

8   obtain relevant, non-privileged information regarding MGA's copyright

9   applications."[17]  But, MGA says nothing about where Mattel could obtain the

10  testimony sought from McFarland regarding the infringement action he filed on

11  MGA's behalf.  McFarland was the person who drafted and signed the pleadings at

12  issue.  He was the percipient witness as to their creation and the fact of their filing.

13  Indeed, Mattel has no other means to obtain the documents, things and testimony

14  sought from him.

15

16      **E.      The Documents and Testimony Mattel Seeks Do Not Invade**

17               **Privileged Information**

18           MGA asserts that Mattel "cannot show that Mr. McFarland has any

19  non-privileged information that is 'crucial' to this case."[18]  As discussed herein, the

20  information Mattel seeks is particularly crucial.  MGA is also incorrect that Mattel

21  cannot point to any non-privileged information.  Mattel seeks testimony from

22  McFarland about what is in publicly available documents.  There is nothing

23  privileged about the basis for publicly disclosed dates contained in MGA's copyright

24  applications and trademark applications, MGA's associated communications with

25  the Copyright Office and Trademark Office and MGA's representations to Courts in

26  _____

27  [16]  Mattel Opposition, at ___.
    [17]  Motion,  at 5:4-5.
28  [18]  Motion to Quash at 9.

1   other infringement cases.  Mr. McFarland is a percipient witness to these facts.

2   Further, to the extent MGA has a legitimate basis to assert privilege or work product

3   to questions while at trial, that is no reason to preclude <u>all</u> questioning.  Instead,

4   such issues can and should be considered on a question-by-question basis, with

5   MGA asserting instructions during the course of the testimony according to the

6   usual rule.

7   **II     THE COURT SHOULD ORDER MCFARLAND TO PRODUCE THE**

8   **DOCUMENTS AND ITEMS REQUESTED IN THE TRIAL SUBPOENA**

9           The Motion argues that (i) the documents at issue have already been

10  produced by MGA and (ii) that, to the extent they have not, McFarland cannot be

11  compelled to produce them now.  First, the documents have not all been produced

12  because they include requests for originals and original photos of the dolls that have

13  never been received by Mattel.  Second, the requests at issue are contained in a trial

14  subpoena.  They are accompanied by a request for McFarland to appear at trial.

15  They do not constitute impermissible pre-trial discovery.  <u>See Puritan Inv. Corp. v.</u>

16  <u>ASLL Corp.</u>, 1997 WL 793569, 1 (E.D.Pa.1997).

17          A trial subpoena pursuant to Rule 45 may include a request for

18  documents.  <u>See</u> Federal Rule of Civil Procedure 45(a)(1)(C); <u>Atkins v. County of</u>

19  <u>Riverside</u>, 2007 WL 4696859 at *7 (C.D.Cal. 2007); <u>Mortgage Information</u>

20  <u>Services, Inc. v. Kitchens</u>, 210 F.R.D. 562, 567-68 (W.D.N.C. 2002); <u>Puritan Inv.</u>

21  <u>Corp. v. ASLL Corp.</u>, 1997 WL 793569 at *2 (E.D. Pa. 1997).  Courts permit

22  requests for documents and tangible things to be included with trial subpoenas for

23  purposes of obtaining originals of documents produced in the litigation, for trial

24  preparation and for memory refreshment.  <u>See Puritan,</u> 1997 WL 793569, 1 (trial

25  subpoenas may be used to secure documents at trial for the purpose of memory

26  refreshment or trial preparation); <u>see also Rice v. U.S.</u>, 164 F.R.D. 556, 558 n. 1

27  (N.D.Okla.1995) (trial subpoenas may be used to ensure availability at trial of

28  original documents previously disclosed by discovery).

1         Here, the original items sought are original tangibles and original

2   photos relating to actual doll products known as "Musical Trendy Teenies," "Angel

3   Doll" and "Fashion Doll."  Documents regarding the allegations in Multitoy are

4   relevant because they demonstrate MGA's contradictory positions regarding the

5   relationship between Bryant's drawings and the Bratz dolls.  The requested

6   documents and items are also necessary for Mattel's preparation for trial.  As set

7   forth above, Mattel needs the documents and items to properly address evidence of

8   damages and of MGA's liability for copyright infringement.  Finally, the documents

9   sought will be used for memory refreshment, and will assist McFarland and other

10   witnesses in recalling key facts regarding damages and the extent of copyright

11   infringement.

12

13                           **<u>Conclusion</u>**

14         For the foregoing reasons, Mattel respectfully requests that the Court

15   enter an Order denying MGA and Larian's Motion to Quash McFarland's trial

16   subpoena and compelling McFarland to testify at trial and produce the documents

17   requested in Attachment A to the trial subpoena when he appears to testify at trial.

18   DATED:  July 22, 2008          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

19

20                        By  /s/ James J. Webster

21                          James Webster
                       Attorneys for Mattel, Inc.

22

23

24

25

26

27

28