QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **MATTEL, INC.'S OPPOSITION TO MGA PARTIES' BENCH MEMORANDUM REGARDING HONG KONG PLEADINGS** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | **[Declaration of B. Dylan Proctor filed concurrently]** |
| | **Phase 1:**<br>Phase 1B Trial Date:      July 23, 2008 |

## **Preliminary Statement**

MGA is on the horns of a dilemma.  On the one hand, it wants to argue to the jury that, even though it fought to retain ownership of Bryant's drawings for years, the drawings do not matter anyway because the Bratz dolls are dissimilar to them. On the other, the argument it wishes to make is flatly contradicted by its own repeated prior admissions that competitors' products -- products that look far less like Bryant's drawings than the actual Bratz dolls do -- infringed Bryant's drawings. So MGA now urges the Court to preclude Mattel from showing the jury its prior admissions.  There is no basis for that request.

MGA also ignores the import of many of its admissions.  Its admissions in Hong Kong are not limited to allegations of copying by less similar products.  They also extend to direct admissions that the Bratz dolls are based on Bryant's drawings (which would be relevant and admissible under any legal standard) and admissions that sales of Bratz products other than dolls are driven by sales of the dolls (which shows Mattel's entitlement to indirect profits).  MGA's attempt to exclude some of its most potent admission from trial merely because they were made in Hong Kong should be rejected.

MGA suggests the jury will be "confused" because it will not understand the differences between U.S. and Hong Kong copyright law.  However, MGA does not identify any such differences itself -- instead, it says it is "not certain" what the relevant standard is under Hong Kong law.  How MGA concludes that the jury will be confused is thus unclear.  Hong Kong copyright law largely mirrors that of the United States, and to the extent there are any differences they can be explained to the jury to put MGA's prior statements in context.  But unidentified alleged variations in law cannot justify excluding damning, clearly admissible evidence.

## Argument

### I.    MGA'S BRIEF IS AN IMPROPER MOTION FOR RECONSIDERATION

MGA's arguments may appear familiar to the Court -- that is because they were raised and rejected before, in MGA's unsuccessful motion *in limine* No. 3. MGA's "bench memorandum" does not meet the standards for reconsideration and is therefore improper.

Central District <u>Local Rule</u> 7-18 "limits the grounds upon which a party may seek reconsideration of the court's decision on a given motion." <u>David Sams Industries Inc. v. Verisign, Inc</u>., 2006 WL 5105218 at *1 (C.D. Cal. 2006).  Under this rule, a motion for reconsideration is proper only where the moving party demonstrates "(1) there is a material difference in fact or law from that previously presented to the Court that in the exercise of reasonable diligence could not have been known to the party at the time of such decision; (2) the emergence of new material facts or a change in law occurring after the Court has rendered its decision; or (3) a manifest showing of a failure to consider material facts presented to the Court." <u>Id.</u>  In addition, "[n]o motion for reconsideration shall ***in any manner repeat*** any oral or written argument made in support or in opposition to the original motion." <u>Id.</u> (emphasis added).

MGA's brief directly violates <u>Rule</u> 7-18's prohibition against repeating of arguments as it merely rehashes arguments from MGA's MIL -- including its arguments that the foreign pleadings are irrelevant and that their admission would cause undue confusion and prejudice.  In fact, MGA repeatedly quotes from Mattel's opposition to that MIL.  (<u>See, e.g.,</u> MGA Brief at 5).  MGA offers no new facts or law which were unavailable at the time of its earlier motion *in limine*, nor does it show that the Court did not previously consider these arguments.  The Court should reject MGA's motion on this ground alone.  <u>See</u> <u>Yang Ming Marine Transport Corp. v. Oceanbridge Shipping Intern.</u>, 48 F. Supp. 2d 1049, 1057 (C.D. Cal. 1999).

## II.   THE HONG KONG PLEADINGS THAT MATTEL INTENDS TO INTRODUCE AT TRIAL ARE HIGHLY RELEVANT

The Court has previously indicated that it is inclined to admit evidence regarding "fundamental positions taken" by MGA in other legal proceedings.[1]  This is exactly the type of evidence Mattel seeks to introduce through MGA's pleadings in Hong Kong.  MGA attempts to confuse the issue by asserting that Mattel merely "intends to have the jury determine whether the Bratz dolls more closely resemble Bryant's drawings than the competitive dolls MGA claimed infringed the drawings." (Mtn. at 5).  Not so.  Mattel intends to introduce the Hong Kong pleadings to show that the Bratz dolls are derivative of Bryant's Bratz drawings, that three-dimensional dolls can infringe two-dimensional drawings, that Bratz dolls drive the sales of other Bratz-related products -- and, equally important, that MGA knows all this.

### A.   The Hong Kong Pleadings Show That the Bratz Dolls Are Copies or Derivatives of Bryant's Bratz Drawings

MGA has taken the position that Bryant's drawings were merely "the initial inspiration for the Bratz dolls" and that the Bratz dolls are not derivative of Bryant's drawings.  (MGA Brief at 7).  MGA's pleadings in the Hong Kong proceedings show otherwise.  There, MGA repeatedly averred that the Bratz dolls were "based on" Bryant's drawings, and thus are derivative works of those drawings.  See 9th Cir. Civ. Jury Instr. 17.13 (2007) ("The term derivative work refers to a work *based on* one or more pre-existing works").

For example, in the MGA v. Double Grand litigation, MGA HK's Managing Director, Lee Shiu Cheung, swore on behalf of MGA and MGA HK that the original face painter for the Bratz dolls based her decorations on Bryant's drawings:

> *Based on and originated from the initial concept drawings of Mr. Bryant,* Anna Rhee drew some decoration directions for the facial

---

[1]   May 21, 2008 A.M. Tr. at 59:4-9, Proctor Dec., Exh. 1 ("And the type of statement that the Court would be inclined to allow in or the type of testimony the Court would be inclined to allow in, would be testimony about fundamental positions taken: Do we own this?  Is this ours?  Did we create this?  Or whatever it might be; if it's the Bratz doll or whatever it is.").

decorations for different series of dolls.  She then created the original deco masters which are hand-painted facial decorations on a rubber head sculpt of a doll.  With the input of Mr. Bryant, Ms. Rhee revised the deco masters a number of times until they are perfected being the final version that were used to serve as the benchmark and template from which the original four different Bratz dolls', individual facial decorations are mass produced by spray masking.[2]

Indeed, in the <u>MGA v. Uni-Fortune</u> case, MGA stated that the Bratz dolls were derived from Bryant's two-dimensional drawings, <u>and no other works</u>:

As far as the Plaintiff is aware, there was no antecedent designs, products, drawings or articles from which the artistic works referred to in sub-paragraphs (a), (b) (c), (d), (e) and (f) of the Particulars of the Original Artistic were derived.  ***The author of the artistic works pleaded in sub-paragraphs (b), (d), (e) and (f) of the Particulars of Original Works referred to the drawings in sub-paragraph (a) of the Particulars of Original Works*** [i.e., Mr. Bryant's drawings from Mattel].  The silicon rubber moulds in sub-paragraph (c) were developed from the wax models in sub-paragraph (b) of the Particulars of Original Works.  The polyurethane samples in sub-paragraph (c) were developed from the rubber moulds. . . .[3]

**B.    <u>The Hong Kong Pleadings Show That MGA Knows Three-Dimensional Dolls Can Infringe Two-Dimensional Bratz Drawings</u>**

MGA is going to argue to the jury that the Bratz dolls are not substantially similar to Bryant's drawings because they involve engineering work that is not included in the regular realm of drawings.[4]  Yet, in the Hong Kong proceedings,

---

[2]   Affirmation of Lee Shiu Cheung in <u>MGA v. Double Grand</u>, dated June 18, 2003, ¶16 at TX 13691-0007, Proctor Dec., Exh. 2 (emphasis added); <u>see also</u> Affirmation of Lee Shiu Cheung in <u>MGA v. Wai Man</u>, dated January 13, 2004, ¶15 at TX 13743-0007, Proctor Dec., Exh. 3.  Bryant's initial concept drawings are attached as Exhibit LSC-3 to Lee's Affidavit in <u>MGA v. Double Grand</u> and are drawings the jury has found were created at Mattel.  <u>See</u> LSC-3 at TX 13691-0028, Proctor Dec., Exh. 2.

[3]   Answer to Requests for Further and Better Particulars of the Statement of Claim in <u>MGA v. Uni-Fortune</u>, dated December 12, 2003, at TX 13572-0002, Proctor Dec., Exh. 4 (emphasis added).  In <u>Uni-Fortune</u>, MGA defined "Artistic Works" as: "(a) 18 design drawings of various Bratz fashion dolls made between the years 1998 and 2000; (b) Wax models of the head, body and shoes of the Bratz fashion dolls made between the year 2000 and 2001; (c) Silicon rubber moulds and polyurethane samples made therefrom of the Bratz fashion dolls made between the years 2000 and 2001; (d) 4 drawings of the facial decoration of the Bratz fashion dolls made between the years 2000 and 2001; (e) 8 drawings 4 of which are pantone colour guides of the facial decorations of the Bratz fashion dolls made between the years 2000 and 2001; (f) 4 hand painted deco-masters on 4 rubber head sculpts made between the years 2000 and 2001."  <u>Id.</u>

[4]   <u>See, e.g.</u>, Expert Rebuttal Report of Glenn Vilppu, dated March 14, 2008, at ¶ 25, Proctor Dec., Exh. 5.

MGA repeatedly claimed that competitors' three-dimensional dolls infringed Bryant's drawings created at Mattel -- notwithstanding the fact that the dolls at issue in the Hong Kong actions were far <u>less</u> similar to Bryant's drawings than the Bratz dolls, and obviously also involved their own engineering work and the like.

In <u>MGA v. CityWorld</u>, for example, MGA claimed that the "Funky Tweenz" doll infringed the Bratz "Artistic Works," which were defined as "17 design drawings of various fashion dolls made between the years 1998 and 2000" -- Bryant's drawings.[5]  This claim was made by Isaac Larian expressly:

> The complaint made by MGA is that the 3 dimensional Funky Tweenz dolls have infringed the 2 dimensional drawings which are artistic works in which copyright subsists.[6]

Similarly, in a cease and desist letter MGA sent to Double Grand Corporation Limited, MGA claimed that Double Grand's products were "substantially similar" to the Bratz dolls, and thus infringed MGA's copyrights in the Bratz drawings:

> It has come to our clients' attention that you have been manufacturing, offering for sale, selling, advertising and/or otherwise dealing with series of dolls called "Trendy Teenz Dolls," "Mini Trendy Teenz Dolls," "Rocker Headz Fashion Doll Bobble Pen," and "Rocker Headz Bobblehead Fashion Dolls", . . . ***the design of which are substantially similar to MGA's Bratz Dolls and infringing MGA's copyright in the designs and drawings of the Bratz Dolls***.

MGA then brought an infringement suit against Double Grand.  The Affidavit of Raymond David Black that MGA filed in that action reveals MGA's view that features of a three-dimensional doll -- and a largely dissimilar one at that -- can be substantially similar to drawings:

---

[5]   Statement of Claim in <u>MGA v. CityWorld</u>, dated July 3, 2002, ¶4 at TX 13705-0002-3, Proctor Dec., Exh. 6 ("Defendants have infringed the said Artistic Works by authorising the reproduction of or reproducing, importing into and exporting from Hong Kong in its course of business . . . fashion dolls known as ***Funky Tweenz which are reproductions of or a reproduction of a substantial part of the said Artistic Works***.").

[6]   Affidavit of Isaac Larian in <u>MGA v. CityWorld</u>, dated July 2, 2002, ¶12 at TX 12, Proctor Dec., Exh. 7.

[7]   Affirmation of Lee Shiu Cheung in <u>MGA v. Double Grand</u>, dated June 18, 2003, LSC-20 at TX 13691-0115-0127, Proctor Dec., Exh. 2 (emphasis added).

We consider that the MINI TRENDY TEENZ dolls infringe such rights, due to their overwhelming similarity to the Designs . . . In particular, we draw your attention to the following, which are identical or extremely similar in both the Registered Designs and Mini TRENDY TEENZ dolls:

(a) The shape of each doll's head; (b) The size of each doll's head in comparison with the remainder of the doll; (c) The shape and size of the nose; (d) the shape of the eyes; (e) the shape of the lips; (f) the unusual size of each doll's feet in comparison with the remainder of the doll.

We also consider that the MINI TRENDY TEENZ dolls infringe our client's copyright in the surface decoration of the BRATZ dolls. *We enclose coloured copies of the original drawings* and would draw your attention in particular to: (a) the eyelashes of both BRATZ and MINI TRENDY TEENZ dolls, in particular the three distinct lashes above the eye; (b) the two-tone eye shadow used on both BRATZ and MINI TRENDY TEENZ dolls, both in style, shape and colour; (c) the shape of the eyes after being "made up" with mascara and eye shadow, of BRATZ and MINI TRENDY TEENZ dolls; and (d) the shape of the lips when painted with "lipstick" of BRATZ and MINI TRENDY TEENZ dolls, and the use of a lipliner (slightly darker in colour than the colour used on the lips) on both dolls.[8]

MGA's argument that none of these prior legal proceedings addresses the issue of whether the Bratz dolls are "substantially similar" to Bratz drawings misses the point.  Mattel does not contend that infringement of Bryant's drawings by the Bratz dolls was previously litigated between MGA and other parties.  But, the issue that was litigated is MGA's repeated claims that competitive dolls infringed the Bratz drawings precisely because the Bratz dolls are the drawings.

### C.   The Hong Kong Pleadings Show That the Bratz Dolls Drive the Sales of Other Bratz-Related Products

MGA's Hong Kong pleadings are also relevant to indirect profits issues, as they include MGA admissions that the Bratz dolls drive the sales of other Bratz-related products.

In MGA v. Double Grand, for example, MGA indicated that the Bratz dolls led to a "steady stream of revenue" from the sales of Bratz accessories:

Now produced and shown to me marked LSC-4 is a copy of a sheet of paper setting out the initial concept and idea of the BRATZ dolls by

---

[8]   Affidavit of Raymond David Black in MGA v. Double Grand, dated June 13, 2003, at TX 13561-0021-81, Proctor Dec., Exh. 8 (emphasis added).

Mr. Bryant.  The girls represent best friends in high school who love to trade clothes, shoes and hairdos.  Since these accessories are interchangeable, the dolls can look different every day.  ***The success of the BRATZ dolls ensured a lucrative business of supplying accessories to the owners of the BRATZ dolls creating a steady stream of revenue***.[9]

Moreover, MGA has admitted under oath that the Bratz dolls are what generated MGA's substantial Bratz licensing income.  For example, in the <u>Double Grand</u> case, MGA stated:

Another major source of revenue ***generated by the BRATZ dolls*** is income derived from merchandising rights by granting non-exclusive licenses to other companies worldwide.  So far, 120 merchandise license agreements have been granted in respect of a wide range of products including paper napkins, girls clothing, jewelry, bedding, home furnishing, stationery, toiletries, video games, footwear and electrical appliances etc.[10]

## III.   <u>UNSPECIFIED DIFFERENCES BETWEEN U.S. AND HONG KONG LAW DO NOT WARRANT EXCLUSION</u>

In the face of the obvious relevance of these admissions, MGA contends they should be excluded because of purported differences between U.S. and Hong Kong copyright law.  MGA's argument fails for several reasons.

### A.   <u>MGA Fails to Identify Any Differences Between U.S. and Hong Kong Law</u>

In a section titled "The Ninth Circuit Test for Copyright Infringement Is Significantly Different Than The Test Applied Under Hong Kong Law," MGA makes the bald assertion that Hong Kong copyright law is "quite different" from Ninth Circuit standards.  (<u>See</u> MGA Brief at 2)  However, MGA does not articulate

---

[9]   Affirmation of Lee Shiu Cheung in <u>MGA v. Double Grand</u>, dated June 18, 2003, ¶9 at TX 13691-004, Proctor Dec., Exh. 2 (emphasis added).  MGA made the same very same averment in the <u>MGA v. Union Top</u> action.  Affirmation of Lee Shiu Cheung in <u>MGA v. Union Top</u>, dated August 2003, ¶9 at TX 13725-004-5, Proctor Dec., Exh. 9.

[10]   Affirmation of Lee Shiu Cheung in <u>MGA v. Double Grand</u>, dated June 18, 2003, ¶25 at TX 13691-010, Proctor Dec., Exh. 2 (emphasis added).  MGA made similar statements in <u>MGA v. Hunglam</u> and <u>MGA v. Union Top</u>.  <u>See</u> Affirmation of Lee Shiu Cheung in <u>MGA v. Hunglam</u>, dated August 12, 2003, ¶¶24, 50 at TX 13718-0010, 19, Proctor Dec., Exh. 10; Affirmation of Lee Shiu Cheung in <u>MGA v. Union Top</u>, dated August 2003, ¶25 at TX 13725-011, Proctor Dec., Exh. 9.

1  any specific differences between the two bodies of law.  Indeed, MGA admits that it

2  does not even know the relevant Hong Kong standard:

> Because this is not an issue in this case, MGA is not certain what "reproducing the work in any material form" means under Hong Kong law.[11]

5  MGA's unsupported speculation that there *may* be differences between U.S. and

6  Hong Kong law is not a valid ground for excluding indisputably relevant evidence.

7  Moreover, regardless of any <u>actual</u> differences in legal standards, the fact that

8  <u>MGA does not know</u> of any material differences is further evidence that MGA's

9  prior admissions are probative -- MGA alleged infringement by dolls in Hong Kong,

10  without even knowing how Hong Kong standards differ from U.S. law, if at all.

11  Even if some difference in law could theoretically be material, the fact that MGA

12  cannot articulate any differences undermines its claim that its damning admissions

13  are anything other than just that -- damning admissions.

### B.   MGA's Claim That Hong Kong Courts Do Not Apply the "Substantial Similarity" Standard is Erroneous

15  MGA does suggest (although it backtracks elsewhere, as discussed above)

16  that "the 'substantial similarity' standard is not part of the Hong Kong law."  That is

17  not correct.

18  Contrary to MGA's assertion -- for which it cites no legal authority -- Hong

19  Kong courts, like their U.S. counterparts, *do* apply the "substantial similarity test."

20  <u>See, e.g.,</u> <u>Fossil Inc. v. Trimset Ltd. & Another</u>, 2003 WL 17991 (CFI), [2003] 3

21  HKLRD 11 ("The case will therefore normally start with establishing substantial

22  similarity combined with the possibility of access.  Where there is substantial

23  similarity, this is prima facie evidence of copying and also of access."); <u>B.G.</u>

24  <u>Lighting Co. Ltd. V. Metro Luminaires Ltd.</u>, 1995 WL 17017525 (SC), [1995]

25  HKEC 23 (finding infringement of drawings "[t]here is a very substantial degree of

26  objective similarity between them, and it is apparent that the essential features and

27

---

[11]   MGA's Brief at 3.

28

1  substance of the Plaintiff's design have been adopted.  That objective similarity,

2  coupled with the fact that the Defendant had the opportunity to copy them . . .

3  Raises a prima facie case of copying, and therefore a prima facie case of copyright

4  infringement.").

5          Indeed, MGA has itself obtained a judgment of copyright infringement based

6  on the "substantial similarity" standard.  In <u>MGA v. Double Grand</u>, the Hong Kong

7  court cited the relevant standard as follows:

8          The case will therefore normally start with establishing substantial
        similarity combined with the possibility of access.  Where there is
9          substantial similarity this is prima facie evidence of copying and also of
        access.  Once a prima facie case is established in this way, a shift in the
10        evidential burden takes place which the party charged may refute by
        evidence of independent creation or by giving some alternative
11        explanation for the similarities.  The task of the judge is then to decide,
        on the evidence as a whole, whether or not there has been copying.
12        This can be summarised by saying that proof of sufficient similarity,
        coupled with proof of the possibility of access, raises a prima facie case
13        or inference of copying for the defendant to answer.[12]

14  Applying this standard, the Hong Kong court concluded that "Trendy Teenz" dolls

15  were "substantially similar" to and therefore infringed the Bratz drawings.[13]  As

16  Mattel has argued, this gives rise to a judicial estoppel against MGA.

17      **C.  <u>The Hong Kong Pleadings Are Admissible Regardless of What
        Hong Kong Copyright Standards Are</u>**

18          As discussed above, the Hong Kong pleadings include key factual admissions

19  by MGA, such as statements that the Bratz dolls are based on Bryant's drawings and

20  that Bratz dolls drive the sales of other Bratz-related products.  These statements are

21  admissible regardless of what Hong Kong's standards for copyright infringement

22  may be.  To the extent Hong Kong's standards for copyright infringement differ

23  from U.S. standards at all, MGA's statements regarding substantial similarity in the

24  Hong Kong proceedings are still admissible because, as the Court has previously

25  indicated, MGA's counsel has the opportunity to "cross-examine and make sure

26  _____

27  [12]   Judgment in <u>MGA v. Double Grand</u>, dated February 24, 2006, at ¶¶ 10-12, Proctor
      Dec., Exh. 11.

28  [13]   <u>Id.</u>

1   those statements are being placed in a correct context and that the jury understands

2   that this is a foreign proceeding under different law."[14]  Finally, as the Court also

3   noted at yesterday's telephonic hearing, MGA will have the opportunity to propose

4   a jury instruction explaining any differences.[15]  Differences in law, if any (and MGA

5   has not identified any), go to weight not admissibility.[16]

6

7

8   DATED:  July 22, 2008                    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

9

10                                           By /s/ John B. Quinn

11                                              John B. Quinn
                                               Attorneys for Mattel, Inc.

12

13

14   [14]   May 21, 2008 A.M. Tr. at 62:25-63:6, Proctor Dec., Exh 1.
     [15]   July 21, 2008 Tr. at 5245:22-5246:3, Proctor Dec., Exh. 12.
15   [16]   MGA relies heavily on an inapt, unpublished New Jersey case, Tyco Indus. v. Lego
     Sys., Inc., 1987 U.S. Dist. LEXIS 13193, at *58 (D.N.J. Aug. 24, 1987).  The Tyco Court's
16   conclusion, in a footnote, that the Hong Kong evidence at issue there was "made in a very
     different legal context" made sense in light of the fact that the Hong Kong trial apparently
17   involved different legal claims.  Tyco involved claims of trademark infringement and
     unfair competition, whereas the Hong Kong trial involved the British Design Registration
18   Act of 1949 and allegations of infringement of unregistered engineering drawings.  Id.
     Here, this case and the Hong Kong cases at issue all involve claims of copyright
19   infringement.  Moreover, the Tyco court found that the issue in the Hong Kong trial --
     whether lego blocks possessed "'eye-appeal' within the meaning of the British Design
20   Registration Act of 1949" -- was irrelevant to the claims at issue in Tyco.  That is not the
     case here.
21       The other cases MGA relies on are likewise inapposite.  None considers differences
22   between U.S. and Hong Kong copyright law, or even addresses the admissibility of a
     party's prior admissions in a foreign proceeding.  See Astra Aktiebolag v. Andrx Pharms.,
23   222 F. Supp. 2d 423, 578 n.97 (S.D.N.Y. 2002) ("comment made by the British Court"
     would be of no value to the U.S. court's analysis); Pfizer Inc. v. Ranbaxy Labs., 457 F.3d
24   1284, 1290 (Fed. Cir. 2006) (statements made in prosecution of patent's foreign
     counterpart irrelevant to claim construction -- no discussion of admissibility of prior
25   admissions); Deviner v. Electrolux Motor, AB, 844 F.2d 769, 773 (11th Cir. 1988)
     (affirming exclusion of "Swedish law and statistics" -- not party's admissions); Sherry v.
26   Massey-Ferguson, Inc., 1997 U.S. Dist. LEXIS 10752, *3 (W.D. Mich. 1997) (stating, in
     dicta, that evidence of foreign standards and requirements -- not of party's statements --
27   could confuse jury).

28