QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
  Jon D. Corey (Bar No. 185066)
  joncorey@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> MATTEL, INC., a Delaware corporation, <br><br> Defendant. <br><br> AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx) <br><br> Consolidated with Case No. CV 04-09059 and Case No. CV 05-02727 <br><br> **NOTICE OF ERRATA REGARDING MATTEL, INC.'S OPPOSITION TO MGA AND LARIAN'S MOTION TO QUASH TRIAL SUBPOENA ISSUED TO LARRY MCFARLAND** <br><br> [MATTEL, INC.'S CORRECTED OPPOSITION TO MGA AND LARIAN'S MOTION TO QUASH TRIAL SUBPOENA ISSUED TO LARRY MCFARLAND FILED HEREWITH] <br><br> Date: [TBA] <br> Time: [TBA] <br><br> **Phase 1** <br> Pre-Trial Conference: May 19, 2008 <br> 1a Trial Date: May 27, 2008 <br> 1b Trial Date: July 23, 2008 |

PLEASE TAKE NOTICE THAT Mattel, Inc. inadvertently served and filed the wrong version of its Opposition to MGA and Larian's Motion to Quash Trial Subpoena Issued to Larry McFarland's Subpoena earlier today. The Correct version of Mattel's Opposition is being filed concurrently herewith and is attached to this notice.

DATED: July 22, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ James J. Webster
James Webster
Attorneys for Mattel, Inc.

EXHIBIT 1

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
  Jon D. Corey (Bar No. 185066)
  joncorey@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. CV 04-09059 and Case No. CV 05-02727<br><br>**MATTEL, INC.'S CORRECTED OPPOSITION TO MGA AND LARIAN'S MOTION TO QUASH TRIAL SUBPOENA ISSUED TO LARRY MCFARLAND**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Declaration of Lesley E. Williams filed concurrently herewith]<br><br>Date: July 23, 2008<br>Time: 8:00 am.<br><br>**Phase 1**<br>Pre-Trial Conference: May 19, 2008<br>1a Trial Date: May 27, 2008<br>1b Trial Date: July 23, 2008 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## Introduction

Mattel should be permitted to call attorney Larry McFarland as a fact witness in this case. Mr. McFarland filed infringement actions on behalf of MGA in which he made various factual averments on MGA's behalf which are relevant to phase 1(b). For example, MGA pleadings filed by Mr. McFarland allege that the accused merchandise sold by the defendants in those actions infringed MGA's rights in Bratz drawings -- the very Bratz drawings which the jury has now determined were created during Bryant's employment at Mattel. These allegations are relevant to rebut MGA's present contention that the drawings are irrelevant because these are very different from the Bratz dolls.

Mr. McFarland also alleges in pleadings filed for MGA that the defendants' accused merchandise infringed MGA's rights in the Bratz dolls and drawings, even though the accused merchandise in those cases is far more different from the Bratz dolls and drawings than the Bratz drawings are different from the Bratz dolls. This rebuts MGA's present contention that the Bratz dolls cannot infringe the Bratz drawings because they are entirely dissimilar. Mr. McFarland also has copies of the accused merchandise in his possession that Mattel wishes to offer in evidence.

In these MGA pleadings, Mr. McFarland also alleges that the Bratz dolls are three dimensional depictions of the original Bratz drawings, which the jury has determined were created by Bryant during his employment. This is also relevant to rebut MGA's present contention that the Bratz dolls are utterly dissimilar to the original Bratz drawings.

Pleadings filed by Mr. McFarland for MGA also allege that the popularity of the Bratz characters drives the sales of other Bratz-related products, including licensed product. These admissions are relevant to prove Mattel's

1 entitlement to damages for indirect Bratz sales. Other examples of MGA
2 admissions in Mr. McFarland's pleadings could be cited.
3        The <u>Shelton</u> rule regarding testimony by trial counsel has never been
4 adopted in the Ninth Circuit. In any event, Mr. McFarland has never been trial
5 counsel to a party in this action.
6        Finally, Judge Infante's Order denying a deposition of Mr. McFarland
7 is not relevant to the trial subpoena. Mattel has specific factual evidence which it
8 must get in through Mr. McFarland.

## Procedural History

12        Mattel attempted to obtain Mr. McFarland's deposition during January
13 2008.[1] As the Court is aware, Mr. McFarland evaded service of a deposition
14 subpoena on his behalf (as well as for that of several of his clients) for over a
15 month.[2] This Court directed him to accept service of the subpoenas.[3] Mr.
16 McFarland eventually did so, but MGA and Larian later moved to quash his
17 deposition subpoena. Judge Infante granted MGA's and Larian's motion and Mattel
18 was unable to depose Mr. McFarland.[4]
19        On July 15, 2008, Mattel served a trial subpoena on Mr. McFarland
20 requiring his personal appearance in Mattel's case in chief at the trial of phase 1(b)
21 of the action on July 23, 2008. The subpoena also included several requests for
22 documents all of which were returnable on the first day of trial:

---

[1] See Mattel Inc.'s Opposition to MGA Defendant's (sic) Motion to Quash Larry McFarland's Deposition Subpoena dated March 27, 2008 (hereinafter "Mattel Opposition"), at 3.
[2] Mattel Opposition, at 4.
[3] Mattel Opposition, at 5.
[4] See Infante Order, at 6.

1  (1)  ALL original photographs of the dolls "Musical Trendy Teenies", "Angel Doll", and "Fashion Doll".

(2)  ALL of the actual doll products known as "Musical Trendy Teenies", "Angel Doll", and "Fashion Doll".

(3)  ALL DOCUMENTS referring or relating to the lawsuit filed by MGA against Multitoy in 2004, styled MGA ENTERTAINMENT, INC., Plaintiff v. MULTITOY, INC., YUAN-LAN LIU, an individual, JEFF WU, an individual, and dba IMG TOYS, ALL TOY IMPORTS, INC., SUSAN LIU, an individual, TOYSDIVISION, INC., TOM LIU, an individual, and DOES I-10, Defendants.

(4)  ALL ORIGINALS of any drawings, sculpts, molds, and other tangible items relating to the dolls known as "Musical Trendy Teenies", "Angel Doll", and "Fashion Doll".

On July 21, 2008, MGA moved to quash the subpoena and refused to produce any of the requested documents or to make Mr. McFarland available for trial testimony.

## Argument

### I  MR. MCFARLAND FILED INFRINGEMENT ACTIONS ON BEHALF OF MGA IN WHICH HE MADE VARIOUS FACTUAL AVERMENTS RELEVANT TO PHASE 1(B).

Mattel seeks to call Mr. McFarland to testify in Phase 1(b) to establish that he made certain factual averments in pleadings he filed with various courts on MGA's behalf. Those factual averments are relevant in several key respects.

First, these pleadings allege that the accused merchandise sold by the defendants in those actions infringed MGA's rights in the Bratz drawings which the jury has now determined were created during Bryant's employment at Mattel. Thus, for example, in the Mutlitoy complaint, Mr. McFarland averred on MGA's behalf

that: "Defendant Multitoy is selling and offering for sale infringing dolls which bear infringements of trademarks and copyrights owned by Plaintiff, and that infringe upon Plaintiff's trade dress rights."[5] These allegations are relevant to rebut MGA's present contention that the drawings are irrelevant because these are very different from the Bratz dolls.

Second, Mr. McFarland has averred that the defendants' accused merchandise infringed MGA's rights in the Bratz dolls and drawings, even though the accused merchandise in those cases is far more different from the Bratz dolls and drawings than the Bratz drawings are different from the Bratz dolls. This rebuts MGA's contention in this case that the Bratz dolls cannot infringe the Bratz drawings because they are entirely dissimilar. Mr. McFarland also has copies of the accused merchandise in his possession that Mattel wishes to offer in evidence.

Third, Mr. McFarland has averred in pleadings for MGA that the Bratz dolls are three-dimensional depictions of the original Bratz drawings -- drawings that the jury has determined were created by Bryant during his employment. For example,

> "Plaintiff is the exclusive owner of all rights in and to the internationally famous BRATZ characters, which include, but are not limited to, "Cloe," "Jade," "Sasha," "Yasmin, "Meygan, . . . These characters are hereinafter referred to as the 'BRATZ Characters.' **True and correct copies of exemplars of depictions of the BRATZ Characters, in the form of selected pages from Plaintiff's copyrighted BRATZ Purse Style Guide, are attached hereto as Exhibit 1."**[6]

---

[5] Complaint in MGA v. Multi Toy, dated April 9, 2004 (hereinafter, "Multitoy Complaint"), Paragraph 20.
[6] Multitoy Complaint, Paragraph 3.

> "In 2001, Plaintiff introduced a new line of fashion dolls known as the "BRATZ" or, alternatively, the "BRATZPACK" **which are three-dimensional depictions of the BRATZ Characters** (hereinafter the "BRATZ Dolls").[7]

This is also relevant to rebut MGA's present contention that the Bratz dolls which Mattel accuses of copyright infringement in this case are utterly dissimilar to the original Bratz drawings.

Fourth, Mr. McFarland has also averred that the popularity of the Bratz characters drives the sales of other Bratz-related products, including licensed product.

> "In keeping with the importance of the BRATZ Property, Plaintiff and/or its licensees have expended tens of millions of dollars in advertising the BRATZ Products and promoting the use of the BRATZ Characters on original licensed products, which include apparel and other items. **Items bearing the BRATZ Characters and/or the BRATZ name and mark have proven to be in great demand.**"[8]

> "The BRATZ Characters are extremely valuable and successful. The licensing of rights to the BRATZ Characters and sale of BRATZ Products has generated tens of millions of dollars in revenue. In 2003, such sales and licenses generated in excess of $500 million in revenue."[9]

These admissions are relevant to prove Mattel's entitlement to damages for indirect Bratz sales.[10]

---

[7] Multitoy Complaint, Paragraph 5.
[8] Multitoy Complaint, Paragraph 13.
[9] Multitoy Complaint, Paragraph 14.
[10] In the motion, MGA argues that Judge Infante previously quashed a deposition subpoena served on Mr. McFarland.[10] This Court is not bound by the Discovery Master's Order regarding the permissibility of a deposition in determining (footnote continued)

1    In sum, the information Mattel seeks is non-privileged, uniquely in
2 McFarland's possession and it is crucial to Mattel's case.

## II    *SHELTON* DOES NOT BAR MCFARLAND FROM TESTIFYING AT TRIAL

The Motion relies on the Eighth Circuit's decision in Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986). But Shelton is not the law in this Circuit,[11] nor does it apply to the appearance of a witness at trial. Mr. McFarland is an attorney who represents certain third party witnesses in this matter (and he has represented certain of those third party witnesses at trial). In the past Mr. McFarland has acted as counsel for MGA, but he has never acted as trial counsel for MGA or any other party in this matter. Furthermore, even under Shelton, McFarland should testify because Mattel seeks to obtain the testimony of counsel for third party witnesses who is a percipient witness to facts crucial to this litigation. Even were Shelton applied, Mattel meets the criteria for seeking to question Mr. McFarland at trial.

### A.   The Ninth Circuit Has Not Adopted Shelton

In the Motion, MGA asserts that "the Ninth Circuit district courts have 'uniformly followed' Shelton," relying on Lloyd Lifestyle Ltd. v. Soaring Helmet

---

who may testify at trial. Cf In re Aircrash in Bali, Indonesia v. Zinke, 871 F.2d 812, 816 (9th Cir. 1989) ("A trial court has broad discretion to admit or exclude evidence."); Rodella v. U. S., 286 F.2d 306, 309 (9th Cir. 1960) ("[T]he trial court has a very large discretion as to how it will permit the introduction of evidence.") This is especially true given that the Court already has had the benefit of having presided over weeks of testimony and a jury verdict in favor of Mattel in phase 1(a). The jury has found that Mattel is the rightful owner of Carter Bryant's Bratz drawings and that Bryant created Bratz while a Mattel employee. Mr. McFarland's testimony is now directly relevant to the dates of first creation and use of the copyrights based on those drawings, and to the contradictory positions MGA has elsewhere taken regarding its copyrights.
Infante Order at 4.

Corp., No C06-0349C, 2006 WL 753243, *2 (W.D. Wash. Mar. 23, 2006).[12] The Ninth Circuit itself has never adopted Shelton, and the Ninth Circuit district courts do not "uniformly follow" Shelton. In Younger Mfg. Co. v. Kaenon, Inc., 247 F.R.D. 586, 588 (C.D. Cal. 2007).

Other courts have also found Shelton to be inappropriately inflexible, particularly when a party seeks the deposition of an attorney who is not trial counsel for an opposing party or a witness to relevant facts. See, e.g., In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 72 (2d Cir. 2003) (rejecting Shelton rule and stating, "the standards set forth in Rule 26 require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship"); QAD, Inc. v. ALN Associates, Inc., 132 F.R.D. 492, 495 (N.D. Ill. 1990) ("[T]his Court subscribes wholeheartedly to a procedure that rejects any prior restraint in favor of permitting the deposition to go forward, with any individualized objections to be dealt with during its regular course."); Cook, Inc. v. C. R. Bard, Inc., 2003 WL 23009047, *1 (S.D. Ind. 2003) ("[T]he Court finds that it was not error for the Magistrate Judge to decline to follow Shelton and permit the deposition of Mr. Godlewski to proceed.").

Similarly, the Ninth Circuit has not applied the Shelton test to the appearance of witnesses at trial. Though defendants now claim that the Shelton test applies with equal force where a party seeks to quash a subpoena for testimony at trial,[13] in support, MGA and Larian cite only a Tenth Circuit case and a lone District Court.[14]

---

[12] Motion to Quash, at 5-6.
[13] Motion to Quash at 6, fn 10.
[14] Motion to Quash at 6, fn 10.

1    Neither the Federal Rules of Civil Procedure nor the Federal Rules of
2    Evidence prohibit seeking testimony at trial from an opposing party's attorney.

3    **B.   *Shelton* Does Not Apply Because McFarland is a Percipient**
4    **Witness and Has Never Been Trial Counsel in This Case**

5    The core purpose of the Shelton test is to protect a party from a trial-
6    counsel deposition that might disclose strategies and otherwise harass and disrupt
7    trial-counsel. As the Eighth Circuit stated, "the Shelton test was intended to protect
8    against the ills of deposing opposing counsel in a pending case which could
9    potentially lead to the disclosure of the attorney's litigation strategy." Pamida, Inc.
10   v. E.S. Originals, Inc., 281 F.3d 726, 730, 731 (8th Cir. 2002). ("The concerns
11   raised in Shelton regarding abuse of the discovery process and adding time and
12   expense to litigation are not implicated in this case where [defendant] seeks relevant
13   information uniquely known by [plaintiff's] attorneys about prior terminated
14   litigation, the substance of which is central to the pending case."). Thus, "Shelton
15   was not intended to provide heightened protection to attorneys who represented a
16   client in a completed case and then also happened to represent that same client in a
17   pending case where the information known only by the attorneys regarding the prior
18   concluded case was crucial. In such circumstances, the protection Shelton provides
19   to opposing counsel only applies because opposing counsel is counsel in the instant
20   case and not because opposing counsel had represented the client in the concluded
21   case." Id. at 730.

22   At the outset, Mattel has no intention of asking Mr. McFarland about
23   trial strategy. It intends only to ask him questions for the purpose of introducing
24   into evidence MGA's prior admissions made in publicly available pleadings.
25   Furthermore, although Mr. McFarland has in the past represented MGA in
26   connection with Bratz copyright registrations, he is not trial counsel for MGA in this
27   case. It follows that concerns about questioning on litigation strategy for MGA in
28   this matter do not apply. See, e.g., Carey v. Textron, Inc. (E-Z-Go Textron), 224

F.R.D. 530, 532 (D. Mass. 2004) ("Moreover, the fact that Attorney Gelineau no longer represents Carey in this matter reduces the degree [of] interference that any deposition of him would introduce. He, presumably, does not possess information concerning Plaintiff's current litigation strategy.").[15] Were the law otherwise, then all a litigant would have to do to shield key factual knowledge held by its past counsel from deposition would be to retain them to represent third parties in a legal action. And Mr. McFarland does possess relevant information.

In sum, Mr. McFarland has represented MGA in other copyright infringement cases in which he, on behalf of MGA, has taken positions about products that are "substantially similar" to the Carter Bryant's Bratz drawings that are inconsistent with MGA's positions now.

### C. The Testimony Sought from McFarland is Unique, Crucial and Essential to Mattel's Case

As set forth in Section I. supra, Mr. McFarland possesses unique knowledge concerning various infringement actions in which he represented MGA. MGA's representations in those cases, made by Mr. McFarland on MGA's behalf, are relevant to issues that MGA itself has interjected into this case. MGA contends the Bratz dolls at issue in this lawsuit are *not* based on or substantially similar to Bryant's Bratz drawings. The apparent reason for MGA's arguments on this score is to assert at trial that, even if Mattel owns the Bratz doll design drawings Bryant created, the dolls do not infringe upon those drawings.

---

[15] Calvin Klein Trademark Trust v. Wachner, 124 F. Supp. 2d 207, 211 (S.D.N.Y. 2000) (noting that counsel's role in litigation was "peripheral" and refusing to apply Shelton on that basis); Nakash v. U.S. Dept. of Justice, 128 F.R.D. 32, 34 (S.D.N.Y. 1989) ("[T]he major rationales in these cases—discouraging the depositions of opposing attorneys in a particular lawsuit to avoid unnecessary expense and interference with the attorney-client relationship—are not applicable here.").

The fact of those filings is relevant because MGA has repeatedly accused the products of other defendants of infringing the copyrights in Bryant's drawings specifically.[16] The jury should be able to compare other dolls that MGA has previously claimed are substantially similar to Bryant's Bratz drawings at issue in this case, and thus decide whether those Bratz drawings are substantially similar to the Bratz dolls.

### D. Mattel Has No Other Means to Obtain The Documents and Testimony Sought from McFarland

MGA asserts that "Mattel has numerous other sources from which to obtain relevant, non-privileged information regarding MGA's copyright applications."[17] MGA points to the deposition testimony of Samir Khare, Bryan Armstrong, Nana Ashong and Mitchell Kamarck as support for its assertion. Nowhere does MGA show where these witnesses answered Mattel's questions about Mr. McFarland allegations in the pleadings at issue.

### E. The Documents and Testimony Mattel Seeks Do Not Invade Privileged Information

MGA asserts that Mattel "cannot show that Mr. McFarland has any non-privileged information that is 'crucial' to this case."[18] As discussed herein, the information Mattel seeks is particularly crucial. MGA is also incorrect that Mattel cannot point to any non-privileged information. Mattel seeks testimony from McFarland about what is in publicly available documents. There is nothing privileged about the basis for publicly disclosed dates contained in MGA's admissions in other infringement cases. Further, to the extent MGA has a legitimate basis to assert privilege or work product to questions while at trial, that is no reason to preclude <u>all</u> questioning. Instead, such issues can and should be considered on a

---

[16] Mattel Opposition, at ___.
[17] Motion, at 5:4-5.
[18] Motion to Quash at 9.

1  question-by-question basis, with MGA asserting instructions during the course of
2  the testimony according to the usual rule.

3  **II    THE COURT SHOULD ORDER MCFARLAND TO PRODUCE THE**
4  **DOCUMENTS AND ITEMS REQUESTED IN THE TRIAL SUBPOENA**

5  The Motion argues that (i) the documents at issue have already been
6  produced by MGA and (ii) that, to the extent they have not, McFarland cannot be
7  compelled to produce them now. First, the documents have not all been produced
8  because they include requests for originals and original photos of the dolls that have
9  never been received by Mattel. Second, the requests at issue are contained in a trial
10 subpoena. They are accompanied by a request for McFarland to appear at trial.
11 They do not constitute impermissible pre-trial discovery. See Puritan Inv. Corp. v.
12 ASLL Corp., 1997 WL 793569, 1 (E.D. Pa. 1997).

13 A trial subpoena pursuant to Rule 45 may include a request for
14 documents. See Federal Rule of Civil Procedure 45(a)(1)(C); Atkins v. County of
15 Riverside, 2007 WL 4696859 at *7 (C.D. Cal. 2007); Mortgage Information
16 Services, Inc. v. Kitchens, 210 F.R.D. 562, 567-68 (W.D.N.C. 2002); Puritan Inv.
17 Corp. v. ASLL Corp., 1997 WL 793569 at *2 (E.D. Pa. 1997). Courts permit
18 requests for documents and tangible things to be included with trial subpoenas for
19 purposes of obtaining originals of documents produced in the litigation, for trial
20 preparation and for memory refreshment. See Puritan, 1997 WL 793569, 1 (trial
21 subpoenas may be used to secure documents at trial for the purpose of memory
22 refreshment or trial preparation); see also Rice v. U.S., 164 F.R.D. 556, 558 n. 1
23 (N.D. Okla. 1995) (trial subpoenas may be used to ensure availability at trial of
24 original documents previously disclosed by discovery).

25 Here, the original items sought are original tangibles and original
26 photos relating to actual doll products known as "Musical Trendy Teenies," "Angel
27 Doll" and "Fashion Doll." Documents regarding the allegations in Multitoy are
28 relevant because they demonstrate MGA's contradictory positions regarding the

relationship between Bryant's drawings and the Bratz dolls. The requested documents and items are also necessary for Mattel's preparation for trial. As set forth above, Mattel needs the documents and items to properly address evidence of damages and of MGA's liability for copyright infringement.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court enter an Order denying MGA and Larian's Motion to Quash McFarland's trial subpoena and compelling McFarland to testify at trail and produce the documents requested in Attachment A to the trial subpoena when he appears to testify at trial.

DATED: July 22, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By /s/ James J. Webster
James Webster
Attorneys for Mattel, Inc.