QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with |
| vs. | Case No. CV 04-09059 |
| | Case No. CV 05-02727 |
| MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| Defendant. | **MATTEL, INC.'S OBJECTIONS TO DEFENDANTS' REVISED DISPUTED [PROPOSED] PHASE 1-B JURY INSTRUCTIONS** |
| AND CONSOLIDATED ACTIONS | |
| | **Phase 1B:** |
| | Trial Date:            July 23, 2008 |

1    Plaintiff Mattel, Inc. ("Mattel") hereby objects to MGA Entertainment, Inc.'s,

2   MGA Entertainment (HK) Limited's and Isaac Larian's (collectively, "defendants")

3   revised disputed proposed jury instructions for Phase 1B of the trial in this matter.

4   Mattel requests and reserves the right to further amend, modify, withdraw and/or

5   supplement the following objections during the trial of this matter.  Mattel reserves

6   the right to submit further objections to defendants' proposed jury instructions

7   depending upon and based upon subsequent rulings and the evidence and theories

8   proffered by the parties during the course of the trial.

9

10   DATED:  July 28, 2008            QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
11

12                                    By /s/ Jon D. Corey
                                         Jon D. Corey
13                                       Attorneys for Mattel, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **GENERAL OBJECTIONS**

Each of the following General Objections is hereby incorporated in full into the objections to specific jury instructions set forth below:

1.     Mattel objects generally to defendants' proposed instructions to the extent they represent defense-slanted instructions that materially deviate, with no good cause, from the model instructions governing the claims and defenses at issue. Defendants will be afforded an opportunity at the close of the evidence to present argument as to any issues properly presented to the jury.  There is no reason for defendants to attempt to re-argue the issues by slanting their proposed instructions in a way that consistently benefits defendants.

2.     Mattel objects to defendants' proposed jury instructions to the extent they instruct the jury as to issues that the jury already determined in Phase 1A and/or that the Court has already adjudicated in connection with the parties' cross-motions for partial summary judgment and are contrary to the Court's findings.

3.     Mattel further objects to defendants' proposed jury instructions on the ground that they incorporate erroneous statements of law, and are inconsistent with applicable legal standards, as set forth in the briefing on Mattel's motion for partial summary judgment, Mattel's motions *in limine* and Mattel's proposed jury instructions, which are all hereby incorporated herein by reference.  Wherever Mattel has submitted proposed jury instructions in any way overlapping with defendants' proposed jury instructions, Mattel requests that the Court adopt Mattel's proposed jury instructions.

4.     Mattel further objects to the organization of defendants' proposed instructions, and in particular, objects to starting the jury instructions with defendants' affirmative defenses, which is a defense-biased structure.

5.     Mattel further objects to defendants' proposed jury instructions on the ground that they are excessively fact-specific and argumentative, which makes them

confusing and prejudicial.  Many of the "facts" assumed by defendants in their proposed instructions are argumentative, biased and inaccurate.

6.    Mattel further objects to defendants' proposed jury instructions on the ground that they are materially biased toward defendants.

7.    Mattel further objects to defendants' proposed jury instructions to the extent that they use the pejorative term "sketches" when referring to Carter Bryant's drawings and designs.

8.    Mattel reserves the right to assert additional General and Specific Objections to defendants' proposed jury instructions.

## Objections to Defendants' Proposed Jury Instructions

### PHASE 1-B – Affirmative Defenses

### AFFIRMATIVE DEFENSES — CONSENT

Mattel objects to defendants' proposed instruction regarding Consent on the following grounds:

1.      Mattel objects to the defendants' proposed instruction on the ground that it relates to an affirmative defense that was arguably relevant only to claims against Carter Bryant.  Carter Bryant is no longer a defendant in this case, and defendants have not shown that they are entitled to assert this purported affirmative defense as to the claims against them.  Consenting to "moonlighting" or "developing artistic work" on the side could only be an <u>employee's</u> defense, not a competitor's defense.

2.      Defendants' proposed instruction is erroneous as a matter of law because it informs the jury that it must find in favor of defendants if "Mattel consented to its employees moonlighting and developing their own artistic work." The Ninth Circuit has stated that a litigant need not choose between pursuing all offenders or none at all.  *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1225 (9th Cir. 2007).  While this holding arose in the waiver of copyright context, it applies with equal force to consent, particularly since defendants' consent theory is predicated on similar facts as its waiver argument. Moreover, defendants ignore the requirement embodied in California law that "the consent given must have been to the *very act or circumstance* that caused the harm giving rise to the action."  2 SCHWING, CALIFORNIA AFFIRMATIVE DEFENSES § 32:3 at 197 (2007) (citation omitted) (emphasis added).  The conduct of other Mattel employees has no bearing on the "very act or circumstance" of

-4-

Bryant's alleged breach of his legal obligations.  *A fortiori*, it has no bearing on defendants' aiding and abetting and intentional interference.

3.      This proposed instruction is also erroneous and prejudicial to the extent it informs the jury that it must find for defendants if Mattel consented to its employees "moonlighting" or "developing their own artistic work."  Defendants fail to proffer any support for the notion that these two separate issues are intertwined.

4.      The proposed instruction is erroneous because it does not adequately inform the jury which claims the issue of consent could even conceivably relate to. The instruction should make clear that this affirmative defense is not applicable to Mattel's copyright infringement claim, as that is not a claim "arising out of Bryant's alleged violations of the Inventions Agreement."  Defendants are not even consistent in their proposed jury instructions and verdict form as to whether they believe consent should apply to Mattel's copyright claims.  This proposed instruction limits the defense to claims arising out of breach of contract, but their proposed verdict form only list consent as a defense to copyright claim.

5.      The proposed instruction is erroneous and unintelligible to the extent it purports to inform the jury that "actual consent need not be communicated to the person taking the alleged wrongful act."  Neither of the authorities cited by defendants supports this erroneous statement of the law.

6.      This proposed instruction is misleading and prejudicial to Mattel because defendants purport to inform the jury that "silence or inaction" may be sufficient to establish consent but fail to explain that is not the case when the "apparent consent" was "obtained through . . . fraud [or] mistake."  *Greenawalt v. Rogers*, 151 Cal. 630, 635 (1907).  Mere silence or inaction due to a defendant's fraudulent omissions or through mistake of fact does not support a consent defense, and it is misleading for defendants to suggest to the jury otherwise.

7.      The model instruction cited by defendants is inapplicable because it relates to the element of a claim for battery that requires a plaintiff to prove a lack of

consent.  *See* CACI No. 1302.  And the "Maxims of Jurisprudence" cited by defendants (*Cal. Civ. Code* § 3515) does not provide any specific support to give the jury a consent instruction under the facts of this case.

8.    Mattel objects to this instruction because it does not specify that <u>each</u> defendant must prove that Mattel consented to its or his wrongful conduct.

9.    *Counter-Instruction*:  If any instruction regarding consent is to be given, Mattel requests that the Court give its proposed instruction, which is clearer and conforms to the law:

> The defendants claim that Mattel consented to the wrongful conduct underlying Mattel's claims against the defendants in this case. To prevail on this affirmative defense, the defendants must prove that Mattel knew of the defendants' wrongful conduct and consented to such conduct, and that such consent was obtained without any fraud or mistake.

> **Authority:**  2 Schwing, *California Affirmative Defenses*, § 32:3, at 197 (2007)  ("To be a defense, the consent given must have been to the very act or circumstances that caused the harm giving rise to the action.") (citation omitted); *Greenawalt v. Rogers*, 151 Cal. 630, 635 (1907) ("An apparent consent is not real or free when obtained through . . . fraud [or] mistake.").

# AFFIRMATIVE DEFENSES — ABANDONMENT

Mattel objects to defendants' proposed instruction regarding Abandonment on the following grounds:

1.      Defendants' proposed instruction deviates from the Ninth Circuit Model Instruction and is erroneous as a matter of law.  Defendants misleadingly state that they need only prove conduct by Mattel that was "consistent with an intent to abandon" or "implies an abandonment."  The model instruction makes it clear that defendants must prove "an **act** by the plaintiff evidencing that intent."  *See* 9th Cir. Civ. Jury Instr. 17.19 (2007).

2.      The prefatory statement in defendants' proposed instruction is erroneous and prejudicial to Mattel to the extent it purports to inform the jury that Mattel conducted an internal investigation pursuant to which it "conclude[ed] that BRATZ did not infringe on its intellectual property."  The Court already rejected defendants' argument that this internal investigation is relevant to the issue of when Mattel's claims in this case accrued.  As recognized by the Court, that internal investigation did not relate to the wrongdoing at issue in this case, and the inclusion of this statement would be misleading and unfair.  *See* May 27, 2008 Order re Statute of Limitations Defense, at 7 (concluding that the claims "asserted here[] involve a different element of 'wrongdoing' than do the unasserted claims based on Toon Teens and/or Diva Starz.").  Indeed, this shows why no abandonment instruction should be given at all.

3.      The proposed instruction is confusing because the relevant issue is whether Mattel abandoned its copyrights, not "claims."  Moreover, it would be confusing and prejudicial to instruct the jury on a copyright affirmative defense before instructing the jury on copyright infringement generally as defendants request.

4.     While Defendants emphasize the portion of the model instruction regarding "inaction" as one factor that may be considered in determining whether Mattel has abandoned its claims, they ignore the Comments to the Model Instruction, which make clear that "[a]bandonment of a right must be manifested by an overt act."  *See* 9th Cir. Civ. Jur. Instr. 17.19, cmt. (citing *Micro Star v. Formgen, Inc.*, 154 F.3d 1107, 1114 (9th Cir. 1998)).  This qualification should be included in the instruction so as to avoid confusion as to the proper standard.

5.     Defendants' proposed instruction omits the final paragraph of the Model Instruction, which clarifies for the jury when it should find for Mattel or the defendants on this affirmative defense.

6.     *Counter-Instruction*:  If any instruction regarding abandonment is to be given, Mattel requests that the Court give its proposed instruction, which conforms to the Ninth Circuit Model Instruction:

Defendants contend that Mattel does not own the copyrights at issue in this case because Mattel abandoned the copyrights.  Mattel cannot claim ownership of the copyrights if they were abandoned.  In order to show abandonment, the defendants have the burden of proving each of the following by a preponderance of the evidence:

1.     Mattel intended to surrender rights in the works; and

2.     An act by Mattel evidencing that intent.

Mere inaction does not constitute abandonment of the copyright; however, this may be a factor for you to consider in determining whether Mattel has abandoned the copyright.

If you find that Mattel has proved its claims for copyright infringement against the defendants, your verdict should be for Mattel, unless you find that the defendants have proved each of

1   the elements of this affirmative defense, in which case your

2   verdict should be for the defendants.

3

4            **Authority:**  9th Cir. Civ. Jury Instr. 17.19 (2007).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## AFFIRMATIVE DEFENSES — SECTION 205(d) (BONA FIDE PURCHASER FOR VALUE)

Mattel objects to defendants' proposed instruction as follows:

1.      Defendants have no basis to claim that they are bona fide purchasers for value pursuant to 17 U.S.C. § 205(d).  That provision provides that when there are competing transfers of copyright, a prior transferee (in this case, Mattel, by virtue of the Inventions Agreement), prevails unless the later purported transferee (here, MGA) took in good faith, without notice of the earlier transfer, and **recorded the transfer document first**.  *See* 17. U.S.C. § 205(d) ("[T]he later transfer prevails if recorded first … and if taken in good faith … and without notice of the earlier transfer.").  Here, it is undisputed that MGA did not record the MGA/Carter Bryant assignment agreement.  The defense fails for that reason alone, and thus it is not appropriate to give any instruction regarding good faith transfer to the jury.

2.      Defendants' proposed instruction is also erroneous as a matter of law because it claims that "recordation" of the transfer can be accomplished by "registration [of a copyright] with the Copyright Office listing ownership by assignment."  The statute itself and Copyright Office materials make clear that defendants are incorrect.  The transfer agreement itself (i.e., the October 2000 assignment agreement between Carter Bryant and MGA) must be recorded. *See* 17 U.S.C. § 205(d) ("later transfer prevails if recorded in such manner" (i.e., "in the manner required to give constructive notice under subsection (c)") (emphasis added); Compendium II, *Copyright Office Practices*, Chapters 1602.2 (a transfer of copyright may be recorded "if the document . . . bears the actual signature of the person who executed it," which would include Carter Bryant); *see also Peer Int'l Corp. v. Latin Am. Music Corp.*, 161 F. Supp. 2d 38, 48 (D.P.R. 2001)).  A copyright registration that simply identifies the work as an assigned work does not satisfy the requirements for recordation of the transfer agreement.

3.      *Counter-instruction*:  If any instruction regarding bona fide purchaser is to be given, Mattel respectfully requests that the Court adopt Mattel's proposed instruction, which adheres to the statute and properly sets forth the legal requirements for a later transferee to prevail:

> The defendants claim that their rights in the Bratz works created by Carter Bryant should prevail over Mattel's rights in those works because Mr. Bryant transferred the rights to MGA after he transferred them to Mattel and MGA obtained the rights in good faith.  In order to establish that MGA's later-acquired rights in the Bratz works should prevail, the defendants have the burden of proving by a preponderance of the evidence that MGA:
>
> 1.      Received the transfer of rights in Bratz works in good faith and without notice of Mr. Bryant's earlier transfer to Mattel, that is, without notice that Mattel had rights to the works;
>
> 2.      Paid valuable consideration;
>
> 3.      Registered each of the copyrights in Bratz works with the Copyright Office; and
>
> 4.       Duly recorded the transfer of the rights to MGA, i.e., the MGA/Bryant assignment agreement, before Mattel recorded its transfer, i.e., the Inventions Agreement.
>
> To duly record the transfer, as required for the fourth element, MGA must have submitted to the Copyright Office the MGA/Bryant assignment agreement such that the recorded document, or material attached to it, specifically identifies the copyrighted works to which the assignment pertains.  A registration of a copyright is not a substitute for recordation.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

It is undisputed in this case that the MGA/Bryant assignment agreement has not been recorded.

**Authority:**  17 U.S.C. § 205(d); *Peer Int'l Corp. v. Latin Amer. Music Corp.*, 161 F. Supp. 2d 38, 47-48 (D.P.R. 2001); Compendium II, *Copyright Office Practices*, Chapters 1602.2, 1604.02.

# **GOOD FAITH**

Mattel objects to defendants' proposed instruction on the following grounds:

1.      This proposed instruction is wholly unnecessary.  The jury already determined in Phase 1A that defendants are liable for intentional interference with contract, aiding and abetting breach of fiduciary duty and the duty of loyalty and conversion.  There is no basis to give defendants an instruction regarding the "good faith" of defendants at this point.  Moreover, defendants have repeatedly acknowledged that "good faith" is not even an affirmative defense, but rather would negate an element of Mattel's claims.  Accordingly, instructions on the elements of Mattel's claims encompassed notions of good faith/bad faith, and no additional instruction is necessary or appropriate.

2.      This proposed instruction is misleading and argumentative because it is worded so as to presume good faith: "The good faith of Larian, MGA and MGA (HK) is a factor that should be considered…."  This will be confusing and potentially cause the jury to presume that defendants acted in good faith.  The instruction should state clearly that "*whether*" defendants acted in good faith is a factor to be considered.

3.      The proposed instruction is confusing and prejudicial because it does not specify which claims a defense of "good faith" could even conceivably be relevant to and does not inform the jury that "good faith" is inapplicable to most of Mattel's claims.  For example, there is no "good faith" defense to a copyright infringement claim, *see Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978) ("[E]ven when the defendant believes in good faith that he is not infringing a copyright, he may be found liable.").  Given that is the only claim for which liability has not already been adjudicated, this instruction should not be given.

## AFFIRMATIVE DEFENSES — *DE MINIMIS* USE

Mattel objects to defendants' proposed instruction for the following reasons:

1.      The instruction emphasizes that "[s]ome copying is permitted," without making clear that "a taking is considered *de minimis* only if it is so meager and fragmentary that the average audience would not recognize the appropriation." *Fisher v. Dees*, 794 F.2d 432, 434 (9th Cir. 1986).  The phrase "some copying is permitted" is also confusing and misleading, especially in light of the Court's recent Order regarding substantial similarity.

2.      This proposed instruction is contrary to the Court's July 24, 2008 Order on motion for partial summary judgment to the extent it purports to inform the jury that "the appropriate standard for illicit copying is virtual identity."  The Court expressly found that it "cannot go so far as to find that Mattel's drawings are "subject to only the 'thin' protection -- the protection against copying . . . The relevant test to be employed on this issue in this case -- and upon which the jury will ultimately be instructed -- is the test regarding the extrinsic and intrinsic analyses . . .."  July 24, 2008 Post-Phase 1A Order re Motion for Partial Summary Judgment on the Issue of Substantial Similarity ("July 24, 2008 Order"), at 5.  It is also unclear what defendants are even attempting to convey to the jury with statements regarding virtual identity (or how they could conceivably be relevant) in the context of a proposed instruction relating to a defense of *de minimis* use.

3.      The proposed instruction is also erroneous in that it invites the jury to segregate "public domain" and "unprotectible elements," when the Court has already found that the range of ways to express the human form renders Bryant's designs subject to full protection, as his expression is original.

4.      Defendants' proposed instruction does not make sufficiently clear that the *de minimis* use defense requires a determination of "whether there is a high enough degree of similarity between the works to establish copying, and whether

1  that copying is substantial enough to constitute infringement." *Newton v. Diamond*,
2  388 F.3d 1189, 1194-1195 (9th Cir. 2004).

3       5.     To avoid jury confusion, the instruction should make clear that
4  "[s]ubstantiality is measured by considering the qualitative and quantitative
5  significance of the copied portion in relation to" Bryant's drawings as a whole.  *Id.* at
6  1195  (citing *Worth v. Selchow & Righter Co.*, 827 F.2d 569, 570 n.1 (9th Cir. 1987)
7  ("[T]he relevant inquiry is whether a substantial portion of the protectable material
8  in the *plaintiff*'s work was appropriated – not whether a substantial portion of
9  *defendant*'s work was derived from plaintiff's work.") (emphasis supplied).
10  Applying this standard to the facts of this case, the jury should be instructed that
11  "substantiality is measured by considering the qualitative and quantitative
12  significance of Bryant's original drawings in relation to the Bratz dolls as a whole."
13  Defendants' selectively quote from *Newton* in ways that will lead to jury confusion.

14       6.     Mattel objects to including an instruction regarding a copyright
15  affirmative defense before the instructions regarding copyright infringement are
16  given.

17       7.     *Counter-Instruction*:  If the Court decides to give an instruction
18  regarding *de minimis* use, it should be as follows:

19            Defendants claim that even if Mattel can establish that it
20            has a copyright interest in Carter Bryant's drawings, it cannot
21            recover damages because any similarities between the drawings
22            and the Bratz dolls are *de minimis*.  The *de minimis* use defense
23            may only be found if the copying between Bryant's drawings
24            and the Bratz dolls is so meager and fragmentary that the
25            average person would not recognize the appropriation.  On the
26            other hand, if you find that there is a high enough degree of
27            similarity between the works as to establish copying, and that
28            copying is substantial enough to constitute an infringement of

1   Mattel's copyright, then no *de minimis* use defense may be

2   found.  Substantiality is measured by considering the qualitative

3   and quantitative significance of Bryant's original drawings in

4   relation to the Bratz dolls as a whole.

## STATUTE OF LIMITATIONS - FRAUDULENT CONCEALMENT

Mattel objects to defendants' proposed instruction regarding fraudulent concealment on the following grounds:

1.     This proposed instruction is argumentative and biased toward defendants.  Defendants inform the jury that Mattel's intentional interference and conversion claims were not filed within the time set by law.  There is no reason to further inform the jury that defendants "have proven" that Mattel did not file these claims within that time.  Defendants are over-emphasizing their contentions in this case.  Indeed, the entire second paragraph of this proposed instruction is surplus and should not be given.

2.     Defendants' proposed instruction is also biased and erroneous because it states that "it does not matter to whatever length a defendant may have gone to conceal his wrong," if Mattel "was aware or could have been aware that wrongdoing had taken place."  As the Court knows, to be on notice of its claim, Mattel had to have been aware of **the specific wrongdoing** alleged in this action.  A claim does not accrue – and the tolling based upon fraudulent concealment does not terminate – if the wrongdoing suspected was qualitatively different from the wrongdoing at issue in the action.  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 813 (2005).  The generic references to "wrongdoing" in the two elements of defendants' purported test are improper for the same reason.

3.     The proposed instruction should make clear that, as a matter of law, if there was any tolling due to fraudulent concealment, such tolling did not end before July 18, 2003, because the Court has ruled that July 18, 2003 is the earliest Mattel's claims could have accrued.  *See* May 27, 2008 Order re Statute of Limitations Defense, at 8.  The Court has already found that July 18, 2003 is the earliest date on which Mattel had knowledge of the wrongdoing at issue in this lawsuit.  *See* May 27, 2008 Order re Statute of Limitations Defense, at 8 (finding that the July 18, 2003

*Wall Street Journal* article wherein Larian indicated that he chose Bryant's idea for Bratz in late 1999 is the earliest date on which Mattel's claims could have accrued). The Court also expressly found, based on undisputed evidence, that that "there is no evidence that Mattel had any **<u>knowledge</u>** of any of the three generic elements of its claims, and thus no claim accrued, prior to the earliest date identified by the Court, which is July 18, 2003."  June 2, 2008 Order at 2 (referring to generic elements of wrongdoing, causation and harm).  That finding is itself dispositive because it shows that, if there was concealment, the period of tolling caused thereby could not have expired prior to July 18, 2003.  The law is clear that tolling result from fraudulent concealment does not end until a plaintiff has, at a bare minimum, "knowledge" of the generic elements of *both* harm and causation.  *Hynix Semiconductor*, 2007 WL 3284060, *3 (N.D. Cal. 2003) (tolling based on fraudulent concealment ends when the plaintiff has "a suspicion of wrongdoing, *coupled with a knowledge* of the harm *and* its cause") (emphasis added).  Indeed, Mattel contends that something more -- "near-actual" notice of the specific harm -- is required to end a period of tolling due to concealment.  *See, e.g., Garamendi v. SDI Vendome SA*, 276 F. Supp. 2d 1030, 1042-3 (C.D. Cal 2003).

Accordingly, because (1) the Court has found as a matter of law that Mattel did not have knowledge of *either* the harm or its cause prior to July 18, 2003, and (2) knowledge of both the harm and its cause is required to end a period of tolling where there is concealment, the only issue for the jury is whether there was concealment.  If there was tolling, such tolling could not have ended before July 18, 2003 -- the first date on which Mattel could possibly have learned of the specific harm at issue and its cause under the Court's prior findings.  Because the earliest possible end-of-tolling date (July 18, 2003) is long after the April 27, 2001 and April 27, 2002 dates that would render Mattel's claims for conversion and intentional interference with contractual relations timely, there is no need for the

1  jury to make a finding as to the duration of the tolling.  If the jury finds

2  concealment, Mattel's claims are timely.

3      4.     Defendants' contention that constructive notice is sufficient to end the

4  tolling due to defendants' fraudulent concealment is contrary to law.  "[N]ear-actual"

5  notice, rather than "inquiry notice," is the governing standard.  *Garamendi v. SDI*

6  *Vendome SA*, 276 F. Supp. 2d 1030, 1042-3 (C.D. Cal 2003).

7      5.     *Counter-instruction*:  Mattel requests that the Court give its proposed

8  instruction regarding fraudulent concealment, which is easier to understand and

9  conforms to the law:

10

11          Mattel claims that defendants fraudulently concealed the facts

12          underlying Mattel's claims of intentional interference with contract

13          and conversion.  Defendants deny these allegations.

14              To prove fraudulent concealment, Mattel must show that the

15          defendants intentionally concealed the facts that could have led Mattel

16          to discover that Carter Bryant created Bratz works while employed by

17          Mattel or that Mr. Bryant entered into a contract with and worked

18          with MGA while he was still employed by Mattel.

19              If you find that defendants intentionally concealed the facts that

20          could have led Mattel to discover that Carter Bryant created Bratz

21          works while employed by Mattel or that Mr. Bryant entered into a

22          contract with and worked with MGA while he was still employed by

23          Mattel, you should find for Mattel on its allegations of fraudulent

24          concealment.

25

26          **Authority:**  *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d

27          1030, 1042-3 (C.D. Cal. 2003); *Hynix Semiconductor v. Rambus, Inc.*,

28          2007 WL 3284060, at *3 (N.D. Cal. Nov. 2, 2007) (tolling based on

fraudulent concealment ends when the plaintiff has "a suspicion of wrongdoing, coupled with a knowledge of the harm and its cause"); *Grisham v. Philip Morris U.S.A., Inc.*, _ Cal.4th _, 54 Cal. Rptr. 3d 735, 744 (2007) ("[a] defendant's fraud in concealing a cause of action against him will toll the statute of limitations."); *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994) (reversing summary judgment on statute of limitations grounds where "defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations"); *April Enterprises, Inc. v. KTTV*, 147 Cal. App.3d 805, 831-32 (1983).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **PHASE 1-B – Damages**

## **DAMAGES — INTRODUCTION**

Mattel objects to defendants' proposed instruction regarding Damages—Introduction on the following grounds:

1.    This proposed instruction is duplicative and unnecessary given that the CACI Model Instructions regarding damages to be awarded on Mattel's state law claims against defendants include general introductory information regarding the purpose of damages and the like.  *E.g.*, CACI No. 3901.

## ARGUMENTS OF COUNSEL NOT EVIDENCE OF DAMAGES

Mattel objects to defendants' proposed instruction regarding Damages—Introduction on the following grounds:

1.      This proposed instruction is argumentative and unnecessary given that preliminary instructions given to the jury made clear that the arguments of counsel are not evidence.  There is no need to restate that principle to the jury in the context of the damages determination.  It is also not appropriate to inform the jury regarding what "Mattel has claimed in its written pleadings."  Defendants are free to seek limiting instructions, if appropriate at all, as pleadings are admitted at trial. Defendants are simply over-emphasizing their contentions in this case.

# INTRODUCTION TO TORT DAMAGES – LIABILITY ESTABLISHED FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

Mattel objects to defendants' proposed instruction on the following grounds:

1.      This proposed instruction is prejudicial and misleading to the extent it purports to inform the jury that it must decide whether "Mattel was harmed by MGA's and/or Mr. Larian's interference with Mattel's contract with Carter Bryant" and whether that interference "was a substantial factor in causing the harm to Mattel."  The jury has already decided those issues -- which are elements of a cause of action for intentional interference and on which the jury was instructed in Phase 1A -- in Mattel's favor.  *See* Jury Instruction No. 22 (informing the jury that the fifth and sixth elements of a cause of action for intentional interference are: "That Mattel was harmed in some way" and "That the conduct of MGA and/or Mr. Larian was a substantial factor in causing Mattel's harm."); Jury Instruction No. 3 (informing the jury that "[a] 'substantial factor' is something which is more than a slight, trivial, negligible, or theoretical factor in producing a particular result.").  Accordingly, it is prejudicial and misleading for defendants to tell the jury it must make those same findings again before awarding damages to Mattel.

2.      The proposed instruction misstates the damages being claimed by Mattel, which includes compensatory and general damages, including disgorgement of profits earned by MGA and Mr. Larian as a result of their wrongful conduct, prejudgment interest and punitive damages.

# CAUSATION:  SUBSTANTIAL FACTOR

Mattel objects to defendants' proposed instruction regarding Causation: Substantial Factor on the following grounds:

1.     This proposed instruction is duplicative and unnecessary.  The Court already informed the jury of the legal meaning of "substantial factor" in Phase 1A. *See* Jury Instruction No. 3 (informing the jury that "[a] 'substantial factor' is something which is more than a slight, trivial, negligible, or theoretical factor in producing a particular result.").  Moreover, defendants' reference to "disgorgement" in this proposed instruction is confusing and erroneous.  A separate instruction on disgorgement -- as in Mattel's proposed jury instructions -- would perhaps lessen the likelihood of confusion.  In addition, defendants' statement that disgorged profits should not be "attributable to some supervening cause or causes" is confusing and not helpful to the jury.

2.     With respect to defendants' purported limitation on disgorgement, defendants fail to cite a single authority regarding California law.  Moreover, this instruction adds nothing to the proposed damages instructions specific to the claims at issue, which make clear that damages awarded must have a causal relationship with the wrongdoing at issue.

## LIMITATIONS ON DAMAGES FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

Mattel objects to defendants' proposed instruction regarding Limitations on Damages for Intentional Interference with Contractual Relations on the following grounds:

1.      This proposed instruction is erroneous and misleading because it purports to inform the jury that it may not consider defendants' interference with "Mattel's rights to Bratz" or "any of the revenues, profits, or other benefits realized by MGA or Mr. Larian from Bratz dolls or related products."  The Court expressly found that Mattel's intentional interference claim is not preempted "to the extent that the claim is based on MGA's acts that may be found to have aided and abetted the breach or induced the breach of Bryant's fiduciary duty."  April 25, 2008 Order, at 2. The jury determined in Phase 1A that Bryant breached his fiduciary duty to maintain the confidentiality of Mattel's confidential information, which includes the Bratz-related works Mattel owns pursuant to the Inventions Agreement, and that defendants aided and abetted that breach.  Accordingly, the jury can certainly consider defendants' improper use and disclosure of confidential Bratz-related information in awarding damages to Mattel for this claim.  The issue is not Mattel's actual copyrights in Bratz works; rather, the issue is defendants' interference with Bryant's contractual obligation to communicate the works to Mattel and not disclose this confidential Mattel information to defendants.

2.      MGA's attempt to convert Mattel's intentional interference claim into a copyright claim based on the relief sought fails because, in evaluating preemption, courts look at the allegations supporting liability, not the desired remedies.  *See, e.g.*, *Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1151 (N.D. Cal. 2007) ("The remedy ... does not inform the court's decision, only whether the state law right includes an extra element.").

1       3.     Moreover, there is no basis for defendants to inform the jury that it may

2  not consider any of the profits that defendants realized from Bratz.  Mattel is entitled

3  to recover all benefits that defendants obtained as a result of their wrongful conduct,

4  including Bratz-related profits.  Mattel specifically seeks disgorgement of such

5  profits.  *See* Mattel's Proposed Jury Instructions re Introduction to Tort Damages—

6  Liability Established for Intentional Interference with Contractual Relations.

## INTRODUCTION TO TORT DAMAGES – LIABILITY ESTABLISHED FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

Mattel objects to defendants' proposed instruction on the following grounds:

1.       This proposed instruction is prejudicial and misleading to the extent it purports to inform the jury that it must decide whether "Mattel was harmed by MGA's aiding and abetting of Carter Bryant's breach of his fiduciary duty to Mattel" and whether that misconduct "was a substantial factor in causing the harm to Mattel."  The jury has already decided those issues when it found that Mattel was harmed by Bryant's breach of fiduciary duty, that Bryant's breach of duty was a substantial cause of Mattel's harm and that defendants substantially assisted Bryant's breach of duty.  *See* Jury Instruction Nos. 25 and 26.  Indeed, the Court already informed the jury of the legal meaning of "substantial factor" in Phase 1A.  *See* Jury Instruction No. 3 (informing the jury that "[a] 'substantial factor' is something which is more than a slight, trivial, negligible, or theoretical factor in producing a particular result.").  Accordingly, it is prejudicial and misleading for defendants to tell the jury it must make those same findings again before awarding damages to Mattel.

2.       This proposed instruction erroneously omits reference to Isaac Larian in the first paragraph.  The jury found that Mr. Larian is liable to Mattel for aiding and abetting breach of fiduciary duty.

3.       The proposed instruction misstates the damages being claimed by Mattel, which includes compensatory and general damages, including disgorgement of profits earned by MGA and Mr. Larian as a result of their wrongful conduct, prejudgment interest and punitive damages.

## LIMITATION ON DAMAGES FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY (PREEMPTION)

Mattel objects to defendants' proposed instruction regarding Limitation on Damages for Aiding and Abetting Breach of Fiduciary Duty on the following grounds:

1.      This proposed instruction is erroneous and prejudicial to Mattel. Defendants are simply trying to resurrect an argument previously rejected by the Court.  Mattel's claims for aiding and abetting breach of duty are not preempted by the Copyright Act.  Accordingly, there is no conceivable basis for this proposed instruction.

2.      Mattel is entitled to recover all profits and other benefits that MGA and Isaac Larian obtained by engaging in the wrongful act of aiding and abetting breach of fiduciary duty, including "revenues, profits or other financial benefits that MGA realized from the use of Mr. Bryant's sketches."  *See* Restatement of Restitution, § 201 (2008) ("Where a fiduciary in violation of his duty to the beneficiary communicates confidential information to a third person, the third person, if he had notice of the violation of duty, holds upon a constructive trust for the beneficiary any profit which he makes through the use of such information."); *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 543 (2007) ("Disgorgement of profits is particularly applicable in cases dealing with breach of a fiduciary duty"; "Active participants in the breach of fiduciary duty by another are accountable for all advantages they gained thereby and are liable to the beneficiary of the duty").

3.      The jury determined in Phase 1A that Bryant breached his fiduciary duty to maintain the confidentiality of Mattel's confidential information, which would certainly include the Bratz-related works Mattel owns pursuant to the Inventions Agreement.  Mattel specifically seeks disgorgement of profits earned by

defendants as a result of their wrongful conduct.  *See* Mattel's Proposed Jury Instruction re Introduction to Tort Damages—Liability Established for Aiding and Abetting Breach of Fiduciary Duty.

4.      The only authority cited by defendants, *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973 (9th Cir. 1987), is distinguishable both because it involved a different legal claim (unfair competition) and because that claim was indistinguishable from copyright infringement (alleging the defendant had misappropriated the plaintiff's "time and effort" in creating maps and documents). Id. at 977. Mattel's aiding/abetting claims do not focus on the "time and effort" involved in creating Bratz.  Rather, they are predicated on Bryant's breaches of his statutory duty of loyalty and his fiduciary obligations created by the Inventions Agreement, including his misuse and disclosure of Mattel's confidential information and work for a competitor.  Such claims are not preempted.  *See, e.g.*, *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005) (rejecting contention similar to MGA's here that claims are preempted merely because they involve ownership of expression protected by copyright; claims based on "use" of information protected by copyright in violation of contractual obligations are *not* preempted); *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. 2004) (distinguishing *Del Madera*; holding that even implied contractual obligations avoid preemption); *Balboa Ins. Co. v. Trans Global Equities*, 218 Cal. App. 3d 1327, 1352 (1990) (*Del Madera* does not apply where there are "broader allegations of breach" beyond creation of a copyright).

Ample case law, including from the Ninth Circuit, confirms that Mattel's aiding/abetting claims contain an element that Mattel's copyright claims do not, and are not preempted.  In *Oddo v. Ries*, 743 F.2d 630, 635 (9th Cir. 1984), for example, the Circuit held that an allegation that a partner breached his fiduciary duty

"is quite different from the interests preempted by copyright," and thus was not preempted.[1]  Indeed, Congress expressly carved out such claims from the Copyright Act's preemption provision.  *See* William F. Patry, *Patry on Copyright*, § 18:22 (2007).

5.       MGA's attempt to convert Mattel's aiding and abetting claims into copyright claims based on the relief sought fails because, in evaluating preemption, courts look at the allegations supporting liability, not the desired remedies.  *See, e.g.*, *Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1151 (N.D. Cal. 2007) ("The remedy ... does not inform the court's decision, only whether the state law right includes an extra element.")

6.       Mattel objects to the use of the pejorative term "sketches" when referring to Mr. Bryant's drawings.

---

[1]   *See also, e.g.*, *Briarpatch v. Phoenix Pictures*, 373 F.3d 296, 307 (2d Cir. 2004) (aiding/abetting breach of fiduciary duty claim not preempted because "the underlying right they seek to vindicate is the right to redress violations of the duty owed to a partnership by those who control it"); *Daboub v. Gibbons*, 42 F.3d 285, 289-90 (5th Cir. 1995) (claims preempted only because failed to allege "any element, such as … breach of fiduciary duty, which render [claims] different in kind from copyright infringement"); *Groubert v. Spyglass Entm't*, 2002 WL 2031271 at *5 (C.D. Cal. 2002) ("Plaintiff's breach of confidence claim ... contains an extra element, namely, the confidential relationship."); *Metrano v. Fox Broadcasting Co.*, 2000 WL 979664 at *7 (C.D. Cal. 2000) ("This agreement of confidentiality constitutes an extra element that brings plaintiff's breach of confidentiality claim outside the realm of copyright protection.").

## FURTHER LIMITATION ON DAMAGES FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

Mattel objects to defendants' proposed instruction regarding Further Limitation on Damages for Aiding and Abetting Breach of Fiduciary Duty on the following grounds:

1.      This proposed instruction is erroneous as a matter of law.  Mattel is not limited to "profits or other gains realized by Mr. Bryant as a result of his breach." Indeed, the law makes clear that Mattel is entitled to recover all profits and other benefits that MGA and Isaac Larian themselves obtained by engaging in the wrongful act of aiding and abetting breach of fiduciary duty.  *See* Restatement of Restitution, § 201 (2008) ("Where a fiduciary in violation of his duty to the beneficiary communicates confidential information to a third person, the third person, if he had notice of the violation of duty, holds upon a constructive trust for the beneficiary any profit which he makes through the use of such information."); *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 543 (2007) ("Disgorgement of profits is particularly applicable in cases dealing with breach of a fiduciary duty"; "Active participants in the breach of fiduciary duty by another are accountable for all advantages they gained thereby and are liable to the beneficiary of the duty").  None of the authorities cited by defendants supports their erroneous limitation to Bryant's profits only.  The fact that MGA and Larian are jointly and severally liable to Mattel for Bryant's profits as well does not impact the fact that they are themselves liable to Mattel for the profits and benefits they obtained as a result of their wrongful conduct.

2.      This proposed instruction is also erroneous and misleading because it purports to inform the jury that it may not award profits that defendants realized from Bratz.  As set forth above, Mattel is entitled to recover all benefits that

1   defendants obtained as a result of their wrongful conduct, including Bratz-related

2   profits.

3       3.    The title of this proposed instruction is argumentative and biased

4   towards defendants.

## INTRODUCTION TO TORT DAMAGES – LIABILITY ESTABLISHED FOR AIDING AND ABETTING BREACH OF DUTY OF LOYALTY

Mattel objects to defendants' proposed instruction on the following grounds:

1.      This proposed instruction is prejudicial and misleading to the extent it purports to inform the jury that it must decide whether "Mattel was harmed by MGA's and/or Isaac Larian's aiding and abetting of Carter Bryant's breach of his duty of loyalty to Mattel" and whether that misconduct "was a substantial factor in causing the harm to Mattel."  The jury has already decided those issues when it found that Mattel was harmed by Bryant's breach of the duty of loyalty, that Bryant's breach of duty was a substantial cause of Mattel's harm and that defendants substantially assisted Bryant's breach of duty.  *See* Jury Instruction Nos. 25 and 27. Indeed, the Court already informed the jury of the legal meaning of "substantial factor" in Phase 1A.  *See* Jury Instruction No. 3 (informing the jury that "[a] 'substantial factor' is something which is more than a slight, trivial, negligible, or theoretical factor in producing a particular result.").  Accordingly, it is prejudicial and misleading for defendants to tell the jury it must make those same findings again before awarding damages to Mattel.

2.      The proposed instruction misstates the damages being claimed by Mattel, which includes compensatory and general damages, including disgorgement of profits earned by MGA and Mr. Larian as a result of their wrongful conduct, prejudgment interest and punitive damages.

# LIMITATION ON DAMAGES FOR AIDING AND ABETTING BREACH OF DUTY OF LOYALTY (PREEMPTION)

Mattel objects to defendants' proposed instruction regarding Limitation on Damages for Aiding and Abetting Breach of Duty of Loyalty on the following grounds:

1.      This proposed instruction is erroneous and prejudicial to Mattel. Defendants are simply trying to resurrect an argument previously rejected by the Court.  Mattel's claims for aiding and abetting breach of duty are not preempted by the Copyright Act.  Accordingly, there is no conceivable basis for this proposed instruction.

2.      Mattel is entitled to recover all profits and other benefits that MGA and Isaac Larian obtained by engaging in the wrongful act of aiding and abetting breach of the duty of loyalty, including "revenues, profits or other financial benefits that MGA realized from the use of Mr. Bryant's sketches."  *See* Restatement of Restitution, § 201 (2008) ("Where a fiduciary in violation of his duty to the beneficiary communicates confidential information to a third person, the third person, if he had notice of the violation of duty, holds upon a constructive trust for the beneficiary any profit which he makes through the use of such information."); *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 543 (2007) ("Disgorgement of profits is particularly applicable in cases dealing with breach of a fiduciary duty"; "Active participants in the breach of fiduciary duty by another are accountable for all advantages they gained thereby and are liable to the beneficiary of the duty").

3.      The Court found as a matter of law that Mr. Bryant breached his duty of loyalty to Mattel when he secretly entered into a contract with MGA, Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products, and the jury

-34-

1   determined in Phase 1A that defendants aided and abetted that breach of duty.

2   Mattel specifically seeks disgorgement of profits earned by defendants as a result of

3   their wrongful conduct.  *See* Mattel's Proposed Jury Instruction re Introduction to

4   Tort Damages—Liability Established for Aiding and Abetting Breach of Fiduciary

5   Duty.

6         4.      The only authority cited by defendants, *Del Madera Props. v. Rhodes*

7   *& Gardner, Inc.*, 820 F.2d 973 (9th Cir. 1987), is distinguishable both because it

8   involved a different legal claim (unfair competition) and because that claim was

9   indistinguishable from copyright infringement (alleging the defendant had

10   misappropriated the plaintiff's "time and effort" in creating maps and documents).

11   Id. at 977. Mattel's aiding/abetting claims do not focus on the "time and effort"

12   involved in creating Bratz.  Rather, they are predicated on Bryant's breaches of his

13   statutory duty of loyalty and his fiduciary obligations created by the Inventions

14   Agreement, including his misuse and disclosure of Mattel's confidential information

15   and work for a competitor.  Such claims are not preempted.  *See, e.g.*, *Altera*

16   *Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005) (rejecting contention

17   similar to MGA's here that claims are preempted merely because they involve

18   ownership of expression protected by copyright; claims based on "use" of

19   information protected by copyright in violation of contractual obligations are *not*

20   preempted); *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. 2004)

21   (distinguishing *Del Madera*; holding that even implied contractual obligations avoid

22   preemption); *Balboa Ins. Co. v. Trans Global Equities*, 218 Cal. App. 3d 1327, 1352

23   (1990) (*Del Madera* does not apply where there are "broader allegations of breach"

24   beyond creation of a copyright).

25         Ample case law, including from the Ninth Circuit, confirms that

26   Mattel's aiding/abetting claims contain an element that Mattel's copyright claims do

27   not, and are not preempted.  In *Oddo v. Ries*, 743 F.2d 630, 635 (9th Cir. 1984), for

28   example, the Circuit held that an allegation that a partner breached his fiduciary duty

"is quite different from the interests preempted by copyright," and thus was not preempted.[2]  Indeed, Congress expressly carved out such claims from the Copyright Act's preemption provision.  *See* William F. Patry, *Patry on Copyright*, § 18:22 (2007).

       5.    MGA's attempt to convert Mattel's aiding and abetting claims into copyright claims based on the relief sought fails because, in evaluating preemption, courts look at the allegations supporting liability, not the desired remedies.  *See, e.g.*, *Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1151 (N.D. Cal. 2007) ("The remedy ... does not inform the court's decision, only whether the state law right includes an extra element.")

       6.    Mattel objects to the use of the pejorative term "sketches" when referring to Mr. Bryant's drawings.

---

    [2]  *See also, e.g.*, *Briarpatch v. Phoenix Pictures*, 373 F.3d 296, 307 (2d Cir. 2004) (aiding/abetting breach of fiduciary duty claim not preempted because "the underlying right they seek to vindicate is the right to redress violations of the duty owed to a partnership by those who control it"); *Daboub v. Gibbons*, 42 F.3d 285, 289-90 (5th Cir. 1995) (claims preempted only because failed to allege "any element, such as … breach of fiduciary duty, which render [claims] different in kind from copyright infringement"); *Groubert v. Spyglass Entm't*, 2002 WL 2031271 at *5 (C.D. Cal. 2002) ("Plaintiff's breach of confidence claim ... contains an extra element, namely, the confidential relationship."); *Metrano v. Fox Broadcasting Co.*, 2000 WL 979664 at *7 (C.D. Cal. 2000) ("This agreement of confidentiality constitutes an extra element that brings plaintiff's breach of confidentiality claim outside the realm of copyright protection.").

# FURTHER LIMITATION ON DAMAGES FOR AIDING AND ABETTING BREACH OF DUTY OF LOYALTY

Mattel objects to defendants' proposed instruction regarding Further Limitation on Damages for Aiding and Abetting Breach of Duty of Loyalty on the following grounds:

1.      This proposed instruction is erroneous as a matter of law.  Mattel is not limited to "profits or other gains realized by Mr. Bryant as a result of his breach." Indeed, the law makes clear that Mattel is entitled to recover all profits and other benefits that MGA and Isaac Larian themselves obtained by engaging in the wrongful act of aiding and abetting breach of the duty of loyalty.  *See* Restatement of Restitution, § 201 (2008) ("Where a fiduciary in violation of his duty to the beneficiary communicates confidential information to a third person, the third person, if he had notice of the violation of duty, holds upon a constructive trust for the beneficiary any profit which he makes through the use of such information."); *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 543 (2007) ("Disgorgement of profits is particularly applicable in cases dealing with breach of a fiduciary duty"; "Active participants in the breach of fiduciary duty by another are accountable for all advantages they gained thereby and are liable to the beneficiary of the duty").  None of the authorities cited by defendants support their erroneous limitation to Bryant's profits only.  The fact that MGA and Larian are jointly and severally liable to Mattel for Bryant's profits as well does not impact the fact that they are themselves liable to Mattel for the profits and benefits they obtained as a result of their wrongful conduct.

2.      This proposed instruction is also erroneous and misleading because it purports to inform the jury that it may not award profits that defendants realized from Bratz.  As set forth above, Mattel is entitled to recover all benefits that

1  defendants obtained as a result of their wrongful conduct, including Bratz-related

2  profits.

3        3.     The title of this proposed instruction is argumentative and biased

4  towards defendants.

## PRESUMED MEASURE OF DAMAGES FOR CONVERSION

Mattel objects to defendants' proposed instruction regarding Presumed Measure of Damages for Conversion on the following grounds:

1.     This proposed instruction fails to inform the jury that Mattel is seeking punitive damages against defendants in connection with its conversion claims.

2.     This proposed instruction also fails to recognize that Mattel may be entitled to seek damages based on the fair market value of the property at the time the conversion was discovered, rather than at the time the property was converted, when an award based on the value at the time of the conversion would be manifestly unjust. *See Betzer v. Olney*, 14 Cal. App. 2d 53, 61 (1937).

3.     Defendants' reference to "ideas" in this proposed instruction is confusing and misleading.  The instructions in Phase 1A and proposed instructions regarding damages make clear that Mattel's claim is limited to the conversion of tangible items.  Accordingly, there is no need to potentially confuse the jury and tell them they "are not to consider the value of Mr. Bryant's ideas."  The last paragraph of this proposed instruction should not be included.

## COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS (17 U.S.C. § 504(b))

Mattel objects to defendants' proposed instruction regarding Copyright—Damages—Defendants' Profits (17 U.S.C. § 504(b)) on the following grounds:

1.       Defendants' proposed instruction deviates from the Ninth Circuit Model Instruction.  Defendants have added superfluous and argumentative phrases.

2.       For example, defendants have changed "Unless you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement," to "If you find that MGA's profits were derived from both infringing and non-infringing activities, not all of MGA's profits can be attributed to the infringement."  Defendants are simply rewriting the Model Instruction to be biased toward the defendants, when the law makes clear that all of defendants' profits are to be attributed to the infringement <u>unless</u> defendants prove otherwise.

3.       Moreover, this instruction misleadingly suggests that apportionment of defendants' profits is always required, when that is not the case.  Indeed, there is to be no apportionment unless the jury finds that defendants prove that a portion of their profits were attributable to factors other than the copyrighted work.  *See* 9th Cir. Civ. Jury Instr. 17.24 (2007).  Even if defendants offer some proof of profit from other elements (such as packaging), apportionment may not be appropriate. *See, e.g.*, *Neal v. Thomas Organ Co.,* 241 F.Supp. 1020, 1022 (C D.Cal. 1965) (declining to apportion profits based on finding that the portion of the product that did not infringe on the copyright could not be sold on its own and, thus, the value of the product as a whole was entirely attributable to the copyrighted material; "While it is true that the copyright protection does not extend to the phonograph records, which comprise a part of the course, this court found in Finding of Fact XVIII that the records had no purpose when separated from the instruction manual and that

only the course as a whole had any substantial value....Defendant's profit must be attributed to the sale of the course as a whole and the profit can not be apportioned since none were, and could not have been, derived from the sale of the records alone."); *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1010 (2d Cir. 1995) (finding apportionment unwarranted, and awarding plaintiff all of defendant's profits from sales of entire sweater sets (including skirts and pants), where infringing sweater gave sets their value).  An instruction that tells the jury it must apportion profits, such as the proposed one, is erroneous.

4.     Defendants have also added the phrase "MGA is not required to prove with precision the percentage of its profits attributable to factors other than infringement, so long as the apportionment is reasonable and just."  This additional language is prejudicial and biased without also informing the jury that, "[i]n performing the apportionment [of profits], the benefit of the doubt must always be given to the plaintiff, not the defendant."  *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1549 (9th Cir. 1989).

5.     This proposed instruction is erroneous and misleading because it refers only to "MGA's profits," when Mattel is entitled to seek profits of all defendants found to be liable for copyright infringement, including Isaac Larian and MGA Hong Kong.

6.     Defendants' proposed instruction incorporates the narrowest terms offered in the model instruction when the broader terms are more applicable to the facts of this case.  Mattel's copyright infringement claims incorporate more than mere copying of Mattel's works and sale of products – they cover all of defendants' infringement of Mattel's works, including their use of those works in derivative works.

7.     This proposed instruction is potentially misleading absent an instruction informing the jury that certain expenses may not be deductible where defendants' infringement is willful.  *See* 9th Cir. Civ. Jury Instr. 17.27 (2007); *Three*

1   *Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000) (noting that willful

2   infringers are not permitted to deduct income taxes); *Kamar Int'l, Inc. v. Russ Berrie*

3   *and Co., Inc.*, 752 F.2d 1326, 1331-32 (9th Cir. 1982) ("[a] portion of an infringer's

4   overhead properly may be deducted from gross revenues to arrive at profits, at least

5   where the infringement was not willful, conscious, or deliberate.") (emphasis

6   added); *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 53 (2d Cir. 1939)

7   (a willful infringer may not deduct its income taxes); *Saxon v. Blann*, 968 F.2d 676,

8   681 (8th Cir. 1992) (a willful infringer may not deduct overhead expenses); *Jarvis v.*

9   *A & M Records*, 827 F. Supp. 282, 294 (1993) ("[I]f defendant's conduct is willful,

10  overhead may not be deducted"); *Liu v. Price Waterhouse LLP*, 2000 WL 1644585,

11  *6  (N.D. Ill. 2000) (approving jury instruction barring deduction of overhead if the

12  jury were to find willful infringement); 5 Melville B. Nimmer & David Nimmer,

13  *Nimmer on Copyright*, § 14.03[C][2] (2006) (it is "settled law" that infringers are

14  not entitled to income tax deductions).

15      8.    Mattel requests that the Court give its proposed instruction regarding

16  Damages—Defendants' Profits, which conforms to the Ninth Circuit Model

17  Instruction.

18

19

20

21

22

23

24

25

26

27

28

# COPYRIGHT—DAMAGES—INDIRECT PROFITS

Mattel objects to defendants' proposed instruction regarding Copyright—Damages—Indirect Profits on the following grounds:

1.      Defendants' inclusion of the term "non-speculative" is unnecessary and biased because the jury will have already been instructed that damages cannot be speculative.

# CHOICE OF ALTERNATIVE METHODS OF DETERMINING PLAINTIFF'S DAMAGES

Mattel objects to defendants' proposed instruction regarding Choice of Alternative Methods of Determining Plaintiff's Damages on the following grounds:

1.     This proposed instruction is biased, misleading and confusing. The instruction tells the jury to select the most "accurate" method of calculating Mattel's damages, but that if either of two methods is accurate, the jury should use the method producing the lowest amount of damages. There is no legal basis to give the jury such an instruction. The only source cited by defendants is an inapposite case dealing with damages caused by delay in the performance of a construction contract wherein the Court was articulating alternative measures of damages for the trial court to consider on remand. *See A.A. Baxter Corp. v. Colt Indus., Inc.*, 10 Cal. App. 3d 144 (1970). That case does not support defendants' requested jury instruction. Notably, there is no comparable jury instruction found in CACI, or in the Ninth Circuit Model Instructions. Nor do defendants even identify the "alternatives" the jury is supposed to choose from.

2.     Defendants' proposed instruction is unintelligible and confusing given that there is no explanation as to what "method of damages for determining the amount of damages" this proposed instruction refers, or to what claims, if any, such an instruction would apply. Mattel seeks disgorgement in this case. This unnecessary instruction could confuse the jury into believe that Mattel is not entitled to such relief, which it is.

## DAMAGES—DUTY TO MITIGATE

Mattel objects to defendants' proposed instruction regarding Damages—Duty to Mitigate on the following grounds:

1.     It would be unnecessary and potentially misleading to inform the jury as to a defense of failure to mitigate because Mattel seeks damages in the form of disgorgement of defendants' profits.  Accordingly, there is no basis for defendants to argue that Mattel had a duty to "avoid or reduce" such damages and this proposed instruction is prejudicial.

2.     In any event, mitigation is an affirmative defense and should be presented as such to the jury – if presented to the jury at all – so that it is clear that defendants are raising this as a potential defense regarding the amount of damages and that they bear the burden of proof on this issue.

3.     Defendants cite the Ninth Circuit Model Instruction regarding Damages—Mitigation, and the proposed instruction tracks the language of Model Instruction 5.3 verbatim.  However, with respect to all of Mattel's state law claims against defendants, issues relating to the mitigation of damages are issues of California law.  CACI is the official source of instructions regarding California law.  *See* Court's Standing Scheduling Order, at 9; *Cal. Rule of Court* 2.1050.  Although defendants now cite CACI No. 3931, this proposed instruction bears no resemblance to CACI No. 3931.

4.     *Counter-Instruction*:  If the Court decides, in spite of Mattel's objections, that an instruction on mitigation should be given to the jury, it should be as follows:

> The defendants claim that Mattel failed to mitigate damages
> allegedly caused by the defendants' wrongful conduct.  The doctrine
> of mitigation of damages holds that a plaintiff who suffers damages as
> a result of a breach of contract or a tort has a duty to take reasonable

1   steps to mitigate those damages and may not recover for damages
2   avoidable through ordinary care and reasonable exertion.  The duty to
3   mitigate damages does not require an injured party to do what is
4   unreasonable or impracticable.
5        The burden of proving that losses could have been avoided by
6   plaintiff by reasonable effort and expense, and the amount of such
7   avoidable losses, is always on the party who harmed the plaintiff.
8
9        **Authority:**  CACI No. 358, comments; *Valle de Oro Bank v.*
10  *Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994).
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# DUPLICATIVE DAMAGES

Mattel objects to defendants' proposed instruction regarding Plaintiffs May Not Recover Duplicate Damages on the following grounds:

1.      This proposed instruction is improper because it will confuse the jury. The jury is entitled to -- indeed, must -- award Mattel the <u>full</u> amount of damages for <u>each</u> violation it found.  Of course, Mattel may not obtain, and does not seek, a double recovery, but that issue can be addressed post-verdict.  This proposed instruction could induce the jury to award no damages to Mattel even where it believes damages should be awarded, simply because it has already awarded damages in a prior claim.  For example, if the jury makes a full award of damages for intentional interference, it could award zero damages for the other tort claims pursued by Mattel and the copyright claim based on this instruction even though it believes Mattel is entitled to the same award, or a similar award, for such violations. That would be improper and could create problems to the extent liability or damages findings are ultimately appealed or addressed in post-trial motions as to particular claims.  Mattel is entitled to an appropriate award of damages on <u>each</u> of the claims to be considered by the jury.

2.      The authority cited by defendants does not provide a basis for defendants to give this jury instruction.  The CACI Model Instruction cited by defendants is inapplicable on its face; CACI No. 361 deals with a situation where plaintiff seeks to recover same damages in tort and contract, which is not the situation here.  *See* CACI No. 361.  The only other authorities defendants offer are a Fifth Circuit model instruction and several non-California authorities.  Many of these authorities merely support the non-controversial proposition that a plaintiff cannot actually obtain a double recovery, which Mattel does not seek here.  For example, in *Softel v. Dragon Med. & Scientific Communications*, 118 F.3d 955, 969 (2d Cir. 1997), the district court actually calculated plaintiffs' damages under both

1   copyright infringement and trade secret before concluding that plaintiff could not

2   actually "take" those damages because they were "coextensive" with the copyright

3   infringement damages the court had already awarded.  None requires the Court to

4   give this erroneous proposed instruction to the jury -- only that the Court ultimately

5   ensure that Mattel is not permitted to actually obtain double recovery.

6        3.     Defendants' proposed instruction is also erroneous to the extent it

7   informs the jury that it may not award the same profits from different defendants

8   because liability for several of Mattel's claims is joint and several.  Accordingly,

9   Mattel is entitled to recover the full value of its damages from any one of the liable

10   defendants.

MATTEL'S OBJECTIONS TO DEFENDANTS' REVISED PROPOSED PHASE 1-B JURY INSTRUCTIONS

# **NOMINAL DAMAGES**

Mattel objects to defendants' proposed instruction regarding Nominal Damages on the following grounds:

1.     This proposed instruction is unintelligible, confusing and misleading. The instruction states:  "The law which applies to this case authorizes an award of nominal damages."  But defendants provide the jury with no explanation as to which of Mattel's claims, if any, authorizes an award of nominal damages.  The comments to Ninth Circuit Model Instruction 5.6 recognize that "[n]ominal damages are not available in every case."  *See* 9th Cir. Civ. Jury Instr.  5.6 cmt. (2007).  Defendants cite no authority that would support giving an instruction to the jury regarding nominal damages.

# **PHASE 1-B – COPYRIGHT**

# **PRELIMINARY INSTRUCTION**

Mattel objects to defendants' proposed Preliminary Instruction on the following grounds:

1. This proposed instruction improperly limits Mattel's copyright claim to "the 16 Bryant drawings that Mattel has registered with the Copyright office." Mattel's claim encompasses all of the Bratz-related works the jury found that Mattel owns in Phase 1A, whether or not those works were previously registered. *See Perfect 10, Inc. v. Amazon.com Inc.*, 487 F.3d 701, 710 n.1 (9th Cir. 2007) (noting, in a case where some works were registered and some were not, that Section 411 of the Copyright Act does not limit the remedies a court can grant for copyright infringement even of unregistered works); 28 U.S.C. § 1367(a) ("The district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").  Moreover, Mattel is in the process of registering its copyrights in additional Bratz-related works the jury found Mattel owns, which renders defendant's limitation moot.

Not considering defendants' infringement of these additional works would be nonsensical, and would require the filing of a separate lawsuit, after this one, to address Mattel claims that defendants have infringed Bratz works Mattel now owns, which were not previously registered.  The works will all be registered within a matter of days, now that Mattel has been found to own them.  Mattel's infringement claim should be considered in its entirety, as to all of the Bratz works Mattel owns.

# 17.1 COPYRIGHT – DEFINED

Mattel objects to defendants' proposed jury instruction regarding Copyright – Defined on the following grounds:

1.      This proposed instruction deviates from the Ninth Circuit Model Instruction.  The last two paragraphs are not found in the model instruction and constitute inappropriate argument in what is supposed to be an introductory instruction to the jury regarding the definition of a copyright.  Defendants' arguments about what does or does not constitute infringement is not appropriately included in this definition instruction.

2.      Moreover, the example given by defendants in the proposed instruction is erroneous as a matter of law and prejudicial to Mattel.  The person in their example of non-infringement obviously purchased those books from someone authorized to sell them.  That is not what occurred here.

3.      The proposed instruction does not properly inform the jury that defendants may be liable for vicarious or contributory copyright infringement even if they did not engage in direct copyright infringement.

4.      The proposed instruction should explain to the jury (as in the Model Instruction) that the term "owner" encompasses an assignee such as Mattel.

5.      This proposed instruction improperly limits Mattel's copyright claims to "the 16 Bryant drawings that Mattel has registered with the Copyright office." However, Mattel's claim encompasses all of the Bratz-related works the jury found that Mattel owns in Phase 1A, whether or not those works were previously registered, as discussed above.

6.      Mattel requests that the Court adopt Mattel's proposed instruction, which conforms to the Ninth Circuit Model Instruction and provides the jury with an objective statement of the law.  *See* Mattel's Proposed Jury Instruction re Copyright—Defined.

## 17.2 COPYRIGHT – SUBJECT MATTER – GENERALLY

Mattel objects to defendants' proposed jury instruction on the following grounds:

1.     This proposed instruction is not necessary in light of the numerous other proposed instructions that inform the jury as to the scope of copyright protection.

2.     This instruction improperly suggests that Mattel's copyright claim is limited to "the 16 Bryant drawings that Mattel has registered with the Copyright office."  However, Mattel's claim encompasses all of the Bratz-related works the jury found that Mattel owns in Phase 1A, whether or not those works were previously registered, as discussed above.

3.     This proposed instruction is also misleading and erroneous to the extent it informs the jury that "[o]nly that part of the drawings comprised of original works of authorship . . . is protected by the Copyright Act."  The Court has held already that Bryant's drawings are fully protectable given the infinite variations in possible expression of the human form, and Bryant's original expression of the characters he conceived.  The language used by defendants is incomprehensible.

# **17.3 COPYRIGHT – SUBJECT MATTER – IDEA AND EXPRESSION**

Mattel objects to defendants' proposed instruction regarding Subject Matter – Idea and Expression on the following grounds:

1.      This proposed instruction deviates from the Ninth Circuit Model Instruction and is erroneous and prejudicial.  For example, defendants have added the term "original expression" when the Model Instruction simply says expression. Moreover, they have added the phrase "underlying facts, ideas or concepts" when the Model Instruction just uses the term "ideas."  Defendants are simply trying to overcomplicate the issues before the jury.

2.      There is also no reason for defendants to add the last paragraph regarding the purported "fact/expression dichotomy," which is not part of the Model Instruction.

3.      This proposed instruction is also potentially confusing because, in the Ninth Circuit, it is proper to consider ideas as part of the extrinsic test.  *See, e.g., Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) (holding that, as part of the extrinsic test, one must "consider[] whether two works share a similarity of *ideas* and expression") (emphasis added); *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) (same).

4.      Defendants' instruction is incomplete in that it does not recognize that creative compilations of non-protectable elements are entitled to copyright protection.  *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003) ("A combination of unprotectable elements is eligible for copyright protection . . .  if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work or authorship."); *Swirsky v. Carey,* 376 F.3d 841, 848 (9th Cir. 2004) ("substantial similarity can be found in a combination of elements, even if those elements are individually unprotected").

5.      This proposed instruction is misleading in that it only uses the word "copy," to the apparent exclusion of other acts of infringement, including adapting a work or basing a derivative on a copyrighted work.

6.      To the extent any instruction regarding the subject matter of copyright is given, Mattel requests that the Court adopt the Ninth Circuit Model Instruction as written.  *See* 9th Cir. Civ. Jury Instr. 17.3 (2007).

## 17.4 COPYRIGHT INFRINGEMENT – ELEMENTS – OWNERSHIP AND COPYING

Mattel objects to defendants' proposed instruction regarding Ownership and Copying on the following grounds:

1.     This proposed instruction improperly limits Mattel's copyright claim to "the 16 Bryant drawings that Mattel has registered with the Copyright office." However, Mattel's claim encompasses all of the Bratz-related works the jury found that Mattel owns in Phase 1A, whether or not those works were previously registered, as discussed above.

2.     This proposed instruction is misleading and erroneous to the extent it suggests that Mattel must prove its copyright infringement claim against all of the defendants before it can recover on this claim.  (E.g., "Mattel has the burden of proving . . . that each defendant copied original elements . . ..")  Mattel can recover on this claim if it proves copyright infringement as to any of the defendants.

# 17.6 COPYRIGHT INTERESTS – AUTHORSHIP

Mattel objects to defendants' proposed jury instruction regarding Authorship on the following grounds:

1.     This proposed instruction is unnecessary and potentially confusing because there is no issue as to authorship in this case.  It is undisputed that Carter Bryant is the author of the copyrighted works at issue and that Mattel owns those works by virtue of the Inventions Agreement.  Accordingly, there is no need for this instruction.

2.     There also is no reason to inform the jury that merely giving an idea to another does not make the giver an author of a work.  Mattel does not claim it or Bryant is the "author" of the Bratz <u>dolls</u>; rather, Mattel claims that the dolls infringe worked authored by Bryant and owned by Bratz.  This instruction hence appears to be directed at a non-issue.  It is confusing and unnecessary.

## **17.7 COPYRIGHT INTERESTS – JOINT AUTHORS (17 U.S.C. §§101, 201(a))**

Mattel objects to defendants' proposed instruction regarding Joint Authors on the following grounds:

1.      This proposed instruction is unnecessary and potentially confusing because there is no issue as to joint authorship in this case.  Moreover, even if it were an issue, the Model Instruction on this point makes clear that Mattel is entitled to exclude others, including defendants, from copying a joint work, as the instruction itself makes clear.  Accordingly, this is a non-issue.  MGA does not explain who it claims is a joint author of what.  The instruction should not be given.

# **17.12 COPYRIGHT INTERESTS – ORIGINALITY**

Mattel objects to defendants' proposed instruction regarding Originality on the following grounds:

1.      This proposed instruction deviates from the Model Instruction and is prejudicial to Mattel.

2.      This instruction improperly limits Mattel's copyright claim to "the 16 Bryant drawings that Mattel has registered with the Copyright office."  Mattel's claim encompasses all of the Bratz-related works the jury found that Mattel owns in Phase 1A, whether or not those works were previously registered, as discussed above.

3.      This proposed instruction is also misleading and erroneous as a matter of law to the extent it informs the jury that there is a dispute as to "whether the individual elements in these drawings are in and of themselves 'original.'"  The Court has already determined that Bryant's drawings are original given the wide variation in possible ways to express the human form.  *See* July 24, 2008 Order, at 4.

4.      This instruction is also erroneous because it ignores that original compilations of pre-existing elements are also original and protectable.

1

## <u>17.14 COMPILATION (17 U.S.C. § 101)</u>

2

3       No objection.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>17.15 COPYING – ACCESS AND SUBSTANTIAL SIMILARITY</u>

Mattel objects to defendants' proposed jury instruction regarding Access and Substantial Similarity on the following grounds:

1.      This instruction improperly limits Mattel's copyright claim to "the 16 Bryant drawings that Mattel has registered with the Copyright office."  Mattel's claim encompasses all of the Bratz-related works the jury found that Mattel owns in Phase 1A, whether or not those works were previously registered, as discussed above.

## COPYRIGHT INFRINGEMENT – INDEPENDENT CREATION

Mattel objects to defendants' proposed jury instruction regarding Independent Creation on the following grounds:

1.     This proposed instruction is improper since defendants did not assert the affirmative defense of independent creation in their answers and have therefore waived such defense.  *See, e.g.*, *Bethea v. Burnett*, 2005 WL 1720631(C.D.Cal. 2005) (noting that independent creation is an affirmative defense); *Harbeson v. Parke Davis, Inc.*, 746 F.2d 517, 520 (9th Cir. 1984) (unasserted affirmative defenses are waived).

2.     Defendants contend improperly that "[i]f MGA presents evidence of independent creation then you should weigh all of the evidence bearing in mind that Mattel bears the burden of proving that MGA copied the 16 Bryant sketches." Independent creation is an affirmative defense that, if pleaded, could only be addressed once Mattel establishes copyright infringement.  *Eden Toys v. Marshall Field & Co.*, 675 F.2d 498, 501 (2d Cir. 1982) ("Evidence of independent creation may be introduced by a defendant to rebut a plaintiff's prima facie case of infringement.").  However, since defendants did not plead this defense, it cannot be considered at all.  Moreover, the "bearing in mind" language repeatedly used by defendants is inappropriate and biased.

3.     Defendants' reliance on the independent creation defense is misplaced. The independent creation defense applies where the accused infringer shows that he created the work prior to or wholly independently of the infringed work (i.e., where two different people happen to create similar works).  For instance, an author accused of copying another writer's novel can establish independent creation by showing drafts of his work that pre-date his access to the allegedly infringed novel. *See, e.g.*, *Dimmie v. Carey*, 88 F. Supp. 2d 142 (S.D.N.Y 2000) (finding for the defendant singer and composer where the singer produced extensive notes and demo

recordings demonstrating independent development of the allegedly infringing hit song).  This, however, is a case where the author of the infringed work (Bryant) also worked and continues to work on a series of infringing works.  In this context, any reference to "independent creation" is not only meritless as a matter of law and unsupported by the evidence, but would also confuse the jury.

4.     Moreover, the law is clear that a three-dimensional work is not an independent creation where it is recognizable as an embodiment of a two-dimensional work.  *See, e.g.*, *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1223 (9th Cir. 1997) (finding that 3-D works were copies, not derivatives: "because [a party's] costumes are 'instantly identifiable as embodiments' of the underlying copyrighted characters in 'yet another form,' no reasonably juror could conclude that there are any 'non-trivial' artistic differences between the underlying cartoon characters and the immediately recognizable costumes").

5.     Defendants' proposed instruction is biased and self-serving particularly as to the "bearing in mind" clause and because it discusses only copying and not preparation of derivative works.

6.     *Counter-Instruction*:  To the extent the Court decides, over Mattel's objections, to give any instruction on this defense, Mattel requests that the Court adopt the following instruction:

> If you find access and substantial similarity, you must find that defendants infringed Mattel's copyrights.  Defendants contend that the Bratz dolls were created independently, i.e., that defendants did not actually copy or prepare derivative works from Bryant's drawings when they created the Bratz dolls notwithstanding their admitted access to these drawings. The independent creation defense applies where the defendant can prove that he created the allegedly infringed

work without copying or adapting or preparing derivative works from the original to which he had access.   For instance, an author accused of copying another writer's novel can establish independent creation by showing drafts of his work that pre-date his access to the allegedly infringed novel.   Defendants bear the burden of proof on this defense. If you find that Mattel has shown the elements of infringement and defendants have not established this defense by a preponderance of the evidence, then you must find for Mattel on its claim of copyright infringement.

## **COPYRIGHT INFRINGEMENT – EXTRINSIC TEST; INTRINSIC TEST**

Mattel objects to defendants' proposed jury instruction on the following grounds:

1.      Defendants' proposed instruction, which is seven pages in length, is far too long to be useful to the jury.  Instead, it is designed to be highly prejudicial argument.  This instruction should be rejected in its entirety.

2.      As an initial matter, this instruction improperly limits Mattel's copyright claim to "the 16 Bryant drawings that Mattel has registered with the Copyright office."  Mattel's claim encompasses all of the Bratz-related works the jury found that Mattel owns in Phase 1A, whether or not those works were previously registered, as discussed above.

3.      This proposed instruction is biased and objectionable to the extent defendants use the term "a discerning 8-12 year old girl."  The intended audience at issue is "tween" girls, not "discerning" "tween" girls.  Defendants do not cite any authority for the proposition that substantial similarity cannot or should not be determined from the perspective of an average member of the intended audience, as opposed to a "discerning" member, which implies a higher standard.

4.      Defendants' do not -- and cannot -- cite any authority for the contention that the jury is required to filter out "pre-existing expression that influenced the author consciously or even subconsciously."  Any artist builds on his influences, but his or her artistic work still satisfies the originality requirement for copyright protection, as long as he did not slavishly copy a pre-existing work.  See *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345 (1990).  As proposed, Defendants' instruction would deprive the vast majority of copyrightable works of meaningful copyright protection.

5.      Defendants' proposed filtration instructions should be rejected.  The Court has already found that Bryant's designs are original in light of the vast range

1    of possible ways of expressing the human form.  Bryant's expression of the

2    characters he conceived is original, as the Court concluded in rejected defendants'

3    "thin" protection arguments.  The protectability of Carter Bryant's works is a

4    question of law for the Court, not the jury.  *See*, *e.g.*, *Newton v. Diamond*, 204 F.

5    Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of elements in a copyrighted

6    work is a question of law.");  *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353,

7    1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve findings of

8    fact, but the issue of protectibility/nonprotectibility is an issue of law. Thus, before a

9    court may send a copyright case to the jury, it must satisfy itself that, even assuming

10   copying of an idea and its expression, at least some of what the defendant copied

11   falls into the area of protectible expression."); *Coston v. Product Movers*, 1990 WL

12   56516 at *3 (E.D. Pa., 1990) ("The question of which aspects of plaintiffs' work are

13   protectible expression as opposed to unprotectible idea is an issue of law.");

14   *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 2005 WL 468496 at *2 (D.

15   Del. 2005) (holding that while a finding of copyright infringement may involve

16   questions of fact, the protectability of copyrighted material is a question of law);

17   *Pivot Point Int'l, Inc. v. Charlene Prods.*, Inc., 932 F. Supp. 220, 225 (N.D. Ill 1996)

18   (the issue of whether a work is "copyrightable is a question of law," and the "jury

19   has nothing to do with this subject."); *ADA v. Delta Dental Plans Ass'n*, 1996 U.S.

20   Dist. LEXIS 5809 at *19 n. 15 (N.D. Ill. 1996) (although copyrightability analysis

21   necessarily requires a court to consider some facts surrounding the works at issue,

22   the inquiry "is far more heavily loaded with policy implications than most other

23   standards," making it appropriate for determination by a court instead of a jury);

24   *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The

25   extrinsic and intrinsic tests both involve findings of fact, but the issue of

26   protectibility/nonprotectibility is an issue of law. Thus, before a court may send a

27   copyright case to the jury, it must satisfy itself that, even assuming copying of an

28   idea and its expression, at least some of what the defendant copied falls into the area

1  of protectible expression.").  There is no reason to instruct the jury in the confusing

2  way proposed by defendants, in light of the fact that this is a question of law -- and a

3  question the Court has already decided -- other than to confuse the jury.

4        6.    Defendants' instruction that "common physical features of a teenage

5  girl are not protectible" is misleading and confusing, as the Court already found that

6  "we regularly take notice of a vast number of particularized differences in facial

7  features, ethnicity, size, shape, proportions, hair color, and hair texture and, of

8  course, various particularized combinations and permutations thereof."  Order of

9  July 24, 2008 at 4.

10        7.    Defendants' instruction on filtering is confusing because it does not

11  specify that creative expression of anatomical features (such as eyes or hands) is

12  protectable.  Similarly, it is improper for the jury to filter out allegedly pre-existing

13  elements -- such as oversized feet or eyes --- because the Bratz drawings and dolls

14  do not copy such elements, but rather constitute protectable creative expression of

15  them.  Even if the jury undertakes filtering -- which it should not -- it should be

16  instructed that it cannot filter out such creative expression.

17        8.    Defendants erroneously rely on cases such as *Idema v. Dreamworks,*

18  *Inc.*, 162 F. Supp. 2d 1129 (C.D. Cal. 2001), which involve factual—not creative—

19  works.  *See id.* at 1144, n.31 ("[s]even of the eight works upon which Plaintiffs base

20  their claims are primarily or purportedly factual in nature").  As the Ninth Circuit

21  has emphasized, "works that are not factual receive much broader protection under

22  the copyright laws because of the endless variations of expression available to the

23  artist."  *McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 321 (9th Cir. 1987),

24  *disapproved on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1993).  The

25  *Apple Computer* case on which defendants rely also clarifies that the standards

26  applicable to artistic works are not those it applied.

27        9.    Defendants' instruction suggests that a reasonable jury could find that

28  drawing is "a medium in which the effective range of creative expression is

1   limited."  The millenia-long history of visual art shows that the range of creative

2   expression in visual works is not limited, as it may be in the case of computer

3   software or factual works. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002)

4   ("[a] party is entitled to an instruction about his or her theory of the case if it is

5   supported by law and has foundation in the evidence").  Defendants add insult to

6   injury by proposing that Mattel bears the burden of proving that Bryant's drawings

7   are entitled to broad protection, but do not state that they would bear the burden of

8   proving the contrary (assuming that the instruction is even appropriate, which it is

9   not).  The Court has ruled the designs are not "thinly" protected, which this

10  instruction overlooks.

11          10.     Defendants' contention that a style or a look of a fashion doll is not

12  copyrightable is contrary to law.  For instance, in *Pivot Point Int'l, Inc. v. Charlene*

13  *Prods., Inc.*, 372 F.3d 913 (7th Cir. 2004), a creator of *haute couture* mannequin

14  heads sought protection for his expression of the "hungry look" of runway models.

15  The Seventh Circuit held "one is not only able to conceive of a different face than

16  that portrayed on the Mara mannequin, but one easily can conceive of another

17  visage that portrays the "hungry look" on a high-fashion runway model. . .

18  .[Accordingly, the plaintiff] is entitled to have his expression of the 'hungry look'

19  protected from copying."  *Id.* at 931.  So here.  Because the expression of a "funky"

20  attitude in Bryant's drawings is copyrightable, copying of that expression by the

21  Bratz dolls is actionable infringement.

22          11.     It is well settled that visual works of art that creatively compile stock

23  features and/or are inspired by prior works -- even were that the case as to Bryant's

24  designs -- are subject to full copyright protection.  *See id.*

25          12.     The proposed instruction misstates the law with respect to the intrinsic

26  test.  Ideas are not "filtered out" as part of the intrinsic test.  *See, e.g.*, *Data East*

27  *USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 208 (9th Cir.1988) ("[a]nalytic dissection ... is

28  not appropriate under [the intrinsic] test because it distracts a reasonable observer

from a comparison of the total concept and feel of the works").  Instead, the works must be viewed as a whole.

13.   Defendants' proposed instruction misstates the law in suggesting that Mattel must "show the similarity of each element in the sketches you determine to be protectible."  Mattel need only show substantial similarity, not similarity in each element or "virtual copying."  The instruction also misstates the law regarding the extrinsic test in other respects.  For example, under the extrinsic test, specific ideas are not filtered out and must be considered.  *See, e.g.*, *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) (holding that "the extrinsic test considers whether two works share a similarity of ideas and expression"); *Jada Toys, Inc. v. Mattel, Inc.*, 2008 WL 450891, at *6 (9th Cir. 2008) (reversing district court's granting of summary judgment because it did not compare the ideas in plaintiff's and defendant's works).

14.   Defendants' contention that expert evidence is not admissible with respect to the intrinsic test is contrary to law.  It is well-settled that an expert can testify with respect to the intrinsic test if the infringing work is directed at a specialized audience, here, "tween" girls.  *See, e.g.*, *Kohus v. Mariol*, 328 F.3d 848 (6th Cir. 2003) ("in cases where the audience for the work possesses specialized expertise that is relevant to the purchasing decision and lacking in the lay observer, the trier of fact should make the substantial similarity determination from the perspective of the intended audience. Expert testimony will usually be necessary to educate the trier of fact in those elements for which the specialist will look"); *Dawson v. Hinshaw Music,* Inc. 905 F.2d 731, 736 (4th Cir. 1990) (same); *cf. Lyons P'ship v. Morris Costumes, Inc.*, 243 F.3d 789, 803 (4th Cir. 2001) ("by considering the perspectives of young children in the substantial-similarity analysis, the potential liability for infringement might tend to broaden, given the reduced ability of young children to distinguish between objectively different items and concepts."); *Aliotti v. R. Dakin & Co.*, 831 F.2d  898, 902 (9th Cir.1987) ("[because] children are the

1   intended market for the dolls, we must filter the intrinsic inquiry through the

2   perception of children.").  To state the obvious, no member of the jury will be a

3   "tween" girl.  Accordingly, Mattel may – and intends to – introduce expert evidence

4   concerning "tween" girls' perception of the overall similarity of the works at issue."

5        15.   Defendants' proposed instruction, in purporting to describe the *scenes a*

6   *faire* doctrine, ignores that creative compilations of stock features in a visual work

7   are subject to full copyright protection.  *See, e.g.*, *Mattel, Inc. v. Goldberger Doll*

8   *Mfg. Co.*, 365 F.3d 133, 136 (2d Cir. 2004).  The examples given by defendants are

9   all based on literary devices, which are fundamentally distinguishable from visual

10  art.  *See, e.g.*, *Cavalier v. Random House, Inc.*, 297 F.3d 815, 826 (9th Cir. 2002)

11  ("The precise factors evaluated for literary works do not readily apply to art works.

12  Rather, a court looks to the similarity of the objective details in appearance."); Hon.

13  Jon O. Newman, *New Lyrics for an Old Melody:  The Idea/Expression Dichotomy in*

14  *the Computer Age*, 17 Cardozo Arts & Ent. L. J. 691, 698 (1999) (Filtration analysis

15  should not be applied in cases of visual works because "one cannot divide a visual

16  work into neat layers of abstraction in precisely the same manner one could with a

17  text."); *id.* at 697, nn.36-37 (criticizing *Country Kids 'N City Slicks, Inc. v. Sheen*, 77

18  F.3d 1280 (10th Cir. 1999), which applied filtration in a doll case).

19       16.   The examples proposed by defendants are misleading and inaccurate.

20  The "stock features" referred to in defendants' TV show and play examples, neither

21  of which is a visual work of art, bear no resemblance to the *creative variations* on

22  features—such as almond-shaped eyes with three eyelashes and heavy eye

23  makeup—that Bryant's drawings employed.  Moreover, defendants again ignore that

24  creative compilations of stock features are subject to full copyright protection.  Nor

25  is there any reason why "examples" such as those proposed by defendants should be

26  given at all.

27       17.   Relatedly, defendants mischaracterize the *Mattel v. Goldberger Doll*

28  case in quoting only the portion of the opinion that states that "[a]n upturned nose,

-69-

bow lips, and wide eyes are the 'idea' of a certain type of doll face" and hence are not protectable as an idea.  Defendants fail to report that the *Mattel v. Goldberger Doll* opinion goes on to say that the variations on this doll face are immensely important commercially and fully protectable legally.  *See* 365 F.3d at 136 ("We can surmise that in the highly competitive, billion-dollar doll industry, getting the doll's face and expression exactly right is crucial to success.").

18.    Defendants do not cite any authority that in deliberations the jury must start with the extrinsic test and consider the intrinsic test only if it finds that Mattel has met its burden on the extrinsic test.

19.    This highly prejudicial instruction should not be given.  As the Court has found, the range of possible expression of human anatomy renders Bryant's original expressions fully protectible.  Moreover, were there any preexisting elements, their creative compilation would also be protectible.  A simple instruction on comparing specific elements of expression and ideas in two works under the extrinsic test and the overall look of the two works under the intrinsic test will explain the required task to the jury, and not hopelessly confuse it as this instruction would.

## COPYRIGHT INFRINGEMENT – COMPARING A TWO-DIMENSIONAL WORK WITH A THREE-DIMENSIONAL WORK

Mattel objects to defendants' proposed jury instruction on the following grounds:

1. This proposed instruction is argumentative and unnecessarily complicated. The statement in this instruction that the 2-D to 3-D issue "may complicate your analysis under the extrinsic and intrinsic tests" is unnecessary and argumentative.

2. This proposed instruction is erroneous as a matter of law to the extent it informs the jury that a drawing is only copyrightable as to what is specifically visible in the drawing. Rather, if a defendants' work is a "picturization" of the copyrighted work, or if the defendants' work consists of characters depicted in a copyrighted work, there is infringement even if the medium changes, and even if the copyrighted work is two-dimensional. *See, e.g.*, *King Features Syndicate v. Fleischer*, 299 F. 533, 534, 538 (2d Cir. 1924) (copyright of a comic book infringed by three-dimensional dolls of a character); *Fleischer Studios v. Ralph A. Freundlich, Inc.*, 73 F.2d 276, 278 (2d Cir. 1934) (drawing of Betty Boop character infringed by substantially similar doll: "a three-dimensional form of doll, is an infringement of the two-dimensional picture or drawing"); *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1222-23 (9th Cir. 1997) ("making decisions that enable one to reproduce or transform an already existing work into another medium or dimension - though perhaps quite difficult and intricate decisions - is not enough to constitute the contribution of something 'recognizably his own,'" even where those decisions are "artistic"). The intrinsic test is a subjective test that focuses on "whether the ordinary, reasonable audience would recognize the defendant's work as a 'dramatization' or 'picturization' of the

1  plaintiff's work." *Berkic v. Crichton,* 761 F.2d 1289, 1292 (9th Cir. 1985)(citing

2  *Litchfield v. Spielberg,* 736 F.2d 1352, 1357 (9th Cir.1984)).

3        3.     The only authority cited by defendants in support of their erroneous

4  proposed instruction -- *Nimmer on Copyright* -- does not support their assertion that

5  the copyright of a two-dimensional work only covers what is shown on the face of

6  the work.  Indeed, *Nimmer* makes clear that in many cases the mere conversion of a

7  work from two-dimensions to three-dimensions may not be original.

8        4.     Mattel objects to defendants' use of the pejorative term "sketches"

9  when referring to Bryant's drawings.

10        5.     Mattel requests that the Court adopt Mattel's proposed instruction,

11  which provides the jury with an accurate statement of the law and is not

12  argumentative.  *See* Mattel's Proposed Jury Instruction re Copyright Infringement—

13  Three-Dimensional Works Can Infringe Two-Dimensional Works.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S OBJECTIONS TO DEFENDANTS' REVISED PROPOSED PHASE 1-B JURY INSTRUCTIONS

# COPYRIGHT INFRINGEMENT – MULTIPLE COPYRIGHT REGISTRATIONS

Mattel objects to defendants' proposed jury instruction on the following grounds:

1.      This proposed instruction is not based on any Ninth Circuit Model Instruction and is unnecessary and argumentative.

2.      This proposed instruction improperly limits Mattel's copyright claims to "the 16 Bryant drawings that Mattel has registered with the Copyright office." Mattel's claim encompasses all of the Bratz-related works the jury found that Mattel owns in Phase 1A, whether or not those works were previously registered, as discussed above.

3.      Defendants take the absurd position that a single work cannot infringe elements of several works.  In other words, defendants contend that a Bratz doll would not infringe if it copies the head from one drawing but copies the doll's body from another drawing.  That is not the law.  This case, therefore, is no different from *Castle Rock Entm't v. Carol Publishing Group, Inc*., 150 F.3d 132 (2d Cir. 1998), where the Second Circuit held that a book entitled "Seinfeld Aptitude Test" infringed the plaintiff's copyrights in numerous episodes of "Seinfeld," because even though the amount of expression copied from each episode was relatively small. *See id*. at 138 ("it would elevate form over substance to conclude that *The SAT* 's copying of 643 fragments from 84 individually copyrighted *Seinfeld* episodes is indistinguishable from a case in which a 634-question trivia quiz book poses a few questions from each of 84 unrelated television programs, books, movies, or any combination of creative works that do not constitute a discrete series of works.") Here, as in *Castle Rock*, Bryant's drawings are a single series of depictions of the same four characters (i.e., Bratz), developed for a specific purpose, (i.e., creating Bratz dolls).  Accordingly, it would be wholly artificial for the jury to be instructed

-73-

to consider each Bratz drawing separately.  Indeed, defendants do not cite any authority to support their instruction.  For instance, in *Idema v. Dreamworks, Inc*., 162 F. Supp.2d 1129, 1144 n. 31 (C.D.Cal. 2001), the plaintiff claimed that the defendant's film infringed elements of eight separate texts, but did not claim a copyright in the combination of the works.  Here, however, Mattel claims that defendants infringed Bryant's drawings both individually and in combination.

4.      *Idema v. Dreamworks*, 162 F. Supp. 2d 1129 (C.D.Cal. 2001) does not support defendants' argument.  As an initial matter, the cited statement in Idema is of dubious authority as it was made in the footnote, and is not supported by any cited authority.  *See* 162 F. Supp. 2d at 1144 n. 31.  Further, in Idema the purportedly copyrightable elements did not appear in more than one work.  Here, certain features of the Bratz drawings and dolls (e.g., shape of the eyes, body proportions, etc.) are similar throughout the separately copyrighted works.  It would be artificial to consider them in isolation.  Finally, *Idema* concerned infringement of a factual work.  As set forth elsewhere, the standards for analyzing infringement of visual works is different.

*Green v. Schwarzenneger,* an unpublished opinion, is also easily distinguishable.  In *Green*, the plaintiff contradicted himself by arguing first that a character in the defendant's film was similar to one character in his screenplay, and then changed his tune to also claim similarity to another character in the screenplay.  Here, Mattel's allegations of infringement are internally consistent.  Defendants' citation to the Patry treatise is similarly misplaced.  Although Patry criticizes "cherry-picking," he does not cite any Ninth Circuit authority barring the practice, and expressly notes that the Second Circuit declined to reject it in *Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc*., 150 F.3d 132 (2d Cir. 1998).

In any case, Mattel is not "cherry picking" at all.  MGA based its line of products on Mattel's copyrighted works.  It would be wholly artificial to say that MGA is entitled to copy different aspects of different copyrighted works owned by

Mattel, to the point that it engaged in wholesale copying, so long as it picks and chooses carefully, taking only small portions from any individual work.  Where, as here, Mattel owns dozens of related copyrighted works, the jury should decide whether the defendants copied or adapted that series of works in creating their own works -- not just individual drawings, viewed in isolation.

## 17.20 DERIVATIVE LIABILITY:  VICARIOUS INFRINGEMENT

Mattel objects to defendants' proposed jury instruction regarding Vicarious Infringement on the following grounds:

1.     This proposed instruction -- although based on the Ninth Circuit Model Instruction -- is confusing absent a paragraph explaining to the jury the relationship between Mattel's claims for vicarious and contributory infringement in this case. *See* Mattel's Proposed Jury Instruction re Vicarious Infringement.

# 17.21 DERIVATIVE LIABILITY:  CONTRIBUTORY INFRINGEMENT

Mattel objects to defendants' proposed jury instruction regarding Contributory Infringement on the following grounds:

1.      This proposed instruction deviates from the Ninth Circuit Model Instruction and should be rejected for that reason.  Defendants have attempted to make the Model Instruction biased toward defendants.

2.      Defendants' proposed instruction states that Mattel must prove that Larian "intentionally induced" MGA's copyright infringement, when the model instruction makes clear that it is sufficient for Mattel to show that Larian "materially contributed" to the infringement.  *See* 9th Cir. Civ. Jury Instr. 17.21 (2007).

3.      The cited authorities do not support defendants' erroneous assertions that defendants are not liable if they "did not act with the desire or purpose of intentionally inducing that infringement" and that "awareness that potential infringing activity might result is not enough."  Indeed, in *Fonovisa, Inc. v. Cherry Auction, Inc.*, the Ninth Circuit confirmed that the relevant inquiry is simply whether defendant "***materially contributed*** to the infringing activity."  *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (emphasis added) (agreeing that "providing the site and facilities for known infringing activity is sufficient to establish contributory liability").  The Supreme Court's statement in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) that "mere knowledge of infringing potential" might not be enough for liability has no application here.  That case announced the circumstances under which a party that merely distributes a device (e.g., a distributor of file-sharing computer networking software) can be liable for the infringing activities of third parties.  None of the defendants can claim to be such a "distributor" here.

4.      Defendants' proposed instruction fails to inform the jury that Mattel also claims that MGA Hong Kong may be liable for contributory infringement.  *See*

1  Mattel's Proposed Jury Instruction re Derivative Liability—Contributory

2  Infringement.

3       5.      Mattel requests that the Court adopt Mattel's proposed instruction,

4  which conforms to the Ninth Circuit Model Instruction and includes reference to

5  both Isaac Larian and MGA Hong Kong.  *See id.*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28