QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | |
| | Hon. Stephen G. Larson |
| MATTEL, INC., a Delaware corporation, | |
| Defendant. | **MATTEL, INC.'S THIRD AMENDED PROPOSED JURY INSTRUCTIONS FOR PHASE 1B—DISPUTED SET;** |
| | **DEFENDANTS' OBJECTIONS TO SAME;** |
| AND CONSOLIDATED ACTIONS | **MATTEL, INC.'S STATEMENTS IN SUPPORT OF SAME** |
| | **Phase 1B:** |
| | Trial Date:            July 23, 2008 |

1    Mattel, Inc. ("Mattel") hereby submits the following third amended disputed

2    jury instructions for Phase 1B of the trial in this matter.  Mattel requests and

3    reserves the right to amend, modify, withdraw and/or supplement the following

4    instructions during the trial in this matter.  Mattel may submit further proposed jury

5    instructions depending upon and based upon the evidence and theories proffered by

6    the parties during the course of the trial.  *See Fed. R. Civ. P.* 51A.

7

8    DATED:  July 29, 2008               QUINN EMANUEL URQUHART OLIVER &
                                         HEDGES, LLP
9

10

11                                       By  /s/ Jon D. Corey
                                             Jon D. Corey
12                                           Attorneys for Mattel, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-1-                          Case No. CV 04-9049 SGL (RNBx)

MATTEL'S THIRD AMENDED PROPOSED JURY INSTRUCTIONS FOR PHASE 1B—DISPUTED SET

**Mattel's Introductory Statement Regarding Fraudulent Concealment**

Pursuant to the Court's July 24, 2008 Order re Fraudulent Concealment Jury Issue, Mattel submits this introductory statement regarding the issue of fraudulent concealment:

There is no need for the jury to make any findings in Phase 1B regarding the duration of the period of tolling due to fraudulent concealment, and the proposed jury instructions and verdict form need not include reference to the dates of April 27, 2002 or April 27, 2001 with respect to Mattel's claims for intentional interference with contractual relations or conversion.  The inclusion of those dates could lead to juror confusion.

The Court has already found that July 18, 2003 is the earliest date on which Mattel had knowledge of the wrongdoing at issue in this lawsuit. *See* May 27, 2008 Order re Statute of Limitations Defense, at 8 (finding that the July 18, 2003 *Wall Street Journal* article wherein Larian indicated that he chose Bryant's idea for Bratz in late 1999 is the earliest date on which Mattel's claims could have accrued).  The Court also expressly found, based on undisputed evidence, that "there is no evidence that Mattel had any knowledge of any of the three generic elements of its claims, and thus no claim accrued, prior to the earliest date identified by the Court, which is July 18, 2003." June 2, 2008 Order at 2 (referring to generic elements of wrongdoing, causation and harm).  That finding is itself dispositive because it shows that, if there was concealment, the period of tolling caused thereby could not have expired prior to July 18, 2003.  The law is clear that tolling resulting from fraudulent concealment does not end until a plaintiff has, at a bare minimum, "knowledge" of the generic elements of *both* harm and causation. *Hynix Semiconductor*, 2007 WL 3284060, *3 (N.D. Cal. 2003) (tolling based on fraudulent concealment ends when the plaintiff has "a suspicion of wrongdoing, *coupled with a knowledge* of the harm

1  and its cause") (emphasis added).  Indeed, Mattel contends that something more --

2  "near-actual" notice of the specific harm -- is required to end a period of tolling due

3  to concealment.  *See, e.g.*, *Garamendi v. SDI Vendome SA*, 276 F. Supp. 2d 1030,

4  1042-3 (C.D. Cal 2003).

5          Accordingly, because (1) the Court has found as a matter of law that Mattel

6  did not have knowledge of *either* the harm or its cause prior to July 18, 2003, and

7  (2) knowledge of *both* the harm and its cause is required to end a period of tolling

8  where there is concealment, the only issue for the jury is whether there was

9  concealment.  If there was tolling, such tolling could not have ended before July 18,

10  2003 -- the first date on which Mattel could possibly have learned of the specific

11  harm at issue and its cause under the Court's prior findings.  Because the earliest

12  possible end-of-tolling date (July 18, 2003) is long after the April 27, 2001 and

13  April 27, 2002 dates that would render Mattel's claims for conversion and

14  intentional interference with contractual relations timely, there is no need for the

15  jury to make a finding as to the duration of the tolling.  If the jury finds

16  concealment, Mattel's claims are timely.

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S THIRD AMENDED PROPOSED JURY INSTRUCTIONS FOR PHASE 1B—DISPUTED SET

**Defendants' Response to Mattel's Statement Regarding Fraudulent**
**Concealment**

In its argument above, Mattel seeks a summary judgment ruling on an issue this Court held it could not resolve on summary judgment. The MGA Parties respectfully submit that Mattel should not be permitted to take an issue away from the jury when this Court found it could not resolve that issue on the undisputed facts.

As this Court indicated in its July 24, 2008 Order, the Court's analysis in its rulings on May 27 and June 2 rulings summary judgment 1) addressed the accrual of claims <u>other than</u> intentional interference with contractual relations and conversion, and 2) applied the specific test relating to the "discovery rule" under California law. (July 24, 2008 Order at 8.) For these reasons, as the Court indicated in its July 24 Order, there is no prior ruling from this Court that dictates the duration of any period of fraudulent concealment in this case for either intentional interference or conversion. (<u>Id.</u> at 8-9; <u>see also</u> June 2, 2008 Order at 3 ("the conclusions drawn by the Court regarding the possible accrual dates for the remaining state-law claims do not apply to Mattel's claims for intentional interference with contractual relations and conversion").) Thus, these issues have been left for the jury.

Under California law, the "discovery rule" postpones accrual of a claim until "the plaintiff discovers, or has reason to discover, <u>the cause of action</u>." <u>Norgart v. Upjohn Co.</u>, 21 Cal.4th 383, 397 (1999) (emphasis added). "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her <u>injury</u> was caused by <u>wrongdoing</u>, that someone has done something wrong to her." <u>Jolly v. Eli Lilly & Co.</u>, 44 Cal.3d 1103, 1110 (1988) (emphasis added). As this Court's rulings on summary judgment have shown, both the "wrongdoing" and the "injury" vary among Mattel's claims. This is particularly true for Mattel's conversion claim, which is limited to seeking redress for the taking of tangible items. (<u>See</u> April 25, 2008 Order at 3.) Having found the discovery rule inapplicable to Mattel's claims

1  for intentional interference and conversion, this Court has simply never had cause to
2  consider when Mattel became aware of the "wrongdoing" or "injury" asserted in these
3  claims against each of the defendants.  Thus, even if the discovery rule applied to these
4  claims, there would be <u>no finding</u> on which Mattel could rely to take these questions
5  away from the jury.

6       Moreover, even if there were such a finding, it would be inapposite.  Under
7  California law, the standards for applying fraudulent concealment and the discovery
8  rule are not identical.  As the Ninth Circuit recently observed, "California applies a
9  special standard in cases of fraudulent concealment" under which a plaintiff must show
10 <i>inter alia</i> "that the plaintiff was not at fault for failing to discover [its cause of action]
11 or had no actual or presumptive knowledge of facts sufficient to put him on inquiry."
12 <u>Clemens v. DaimlerChrysler Corp.</u>, -- F.3d --, 2008 WL 2840662, at *4 (9th Cir. July
13 24, 2008); <u>see also</u> <u>Snapp & Assoc. Ins. Servs., Inc. v. Malcolm Bruce Burlingame</u>
14 <u>Robertson</u>, 96 Cal. App. 4th 884, 890-891 (2002) ("The fraudulent concealment
15 doctrine 'does not come into play, whatever the lengths to which a defendant has gone
16 to conceal the wrongs, if a plaintiff is on notice of a potential claim.'").  This Court has
17 already held that it could not resolve whether this standard was met on summary
18 judgment.  (<u>See</u> June 2, 2008 Order at 3 ("Whether a period of fraudulent concealment
19 exists, as well as the duration of any such period, cannot be determined on the
20 undisputed record").)  As such, the entire inquiry should be presented to and decided by
21 the jury.

22
23
24
25
26
27
28

MATTEL'S THIRD AMENDED PROPOSED JURY INSTRUCTIONS FOR PHASE 1B—DISPUTED SET

1

2

### Mattel's Response Regarding Fraudulent Concealment

3      Mattel's proposed instruction is consistent with the Court's summary

4   judgment order.  Mattel does not contend that it does not need to prove fraudulent

5   concealment.  It does.  But if Mattel proves concealment, then the Court's order is

6   clear that the concealment could not have ended prior to July 13, 2003.  The only

7   issue for the jury is whether there was fraudulent concealment, not its duration.

8      Defendants contend that the standard for inquiry notice and notice in the

9   context of fraudulent concealment is different.  In fact, the standards mirror one

10   another -- the only difference is that *more* information is needed to end tolling based

11   on concealment than for inquiry notice. *Compare Fox v. Ethicon Endo-Surgery,*

12   *Inc.,* 35 Cal. 4th 797, 807 (2005) ("a claim accrues where a plaintiff has ***knowledge***

13   ***of at least one*** of the three generic elements of wrongdoing, causation, and harm")

14   *with Hynix Semiconductor v. Rambus, Inc.*, 2007 WL 3284060, at *3 (N.D. Cal.

15   Nov. 2, 2007) (tolling based on fraudulent concealment ends when the plaintiff has

16   "a suspicion of wrongdoing, coupled with a ***knowledge*** of the harm ***and*** its cause")

17   (cited by defendants).  Here, there is no evidence that Mattel had a reason to believe,

18   let alone actually believed, that it had a claim against defendants based on purported

19   rights to Bratz prior to July 13, 2003.  The Court has so held as a matter of law.

20   Hence, *a fortiori*, if there was a period of tolling, it continued through at least July

21   2003.  Defendants' attempted distinction between inquiry notice under the discovery

22   rule and in the fraudulent concealment context is misguided.

23      Defendants argue that Mattel's claims may have accrued at different times,

24   but that is inconsistent with undisputed facts in this case.  The intentional

25   interference and conversion claims, like the timely aiding and abetting claims,

26   all stem from MGA's involvement in Bryant's unlawful work on Bratz and for MGA

27   while employed by Mattel.  The evidentiary basis for the claims is overlapping.

28

1    Because the Court has held that Mattel indisputably could not have had the requisite

2    knowledge of Bryant's unlawful work on Bratz and for MGA while employed by

3    Mattel prior to July 13, 2003, a finding of fraudulent concealment by the jury would

4    mean, necessarily, that the interference and conversion claims were concealed until

5    at least July 2003, and were timely filed.  There is no need for jury findings on the

6    duration of the concealment.  Findings on the fact of concealment will answer the

7    only open issue.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-7-                    Case No. CV 04-9049 SGL (RNBx)

MATTEL'S THIRD AMENDED PROPOSED JURY INSTRUCTIONS FOR PHASE 1B—DISPUTED SET

# **TABLE OF CONTENTS**

| Number | Title | Source | Page |
|---|---|---|---|
| 17.1 | COPYRIGHT—DEFINED (17 U.S.C. § 106) | 9th Cir. Civ. Jury Instr. 17.1 (2007) | 6 |
| 17.4 | COPYRIGHT INFRINGEMENT—OWNERSHIP AND COPYING (17 U.S.C. § 501A–(b)) | 9th Cir. Civ. Jury Instr. 17.4 (2007) | 13 |
| 17.10 | COPYRIGHT INTERESTS—ASSIGNEE (17 U.S.C. § 201(d)(1)) | 9th Cir. Civ. Jury Instr. 17.10 (2007) | 18 |
| 17.13 | COPYRIGHT INTERESTS—DERIVATIVE WORKS (17 U.S.C. §§ 101, 106(2)) | 9th Cir. Civ. Jury Instr. 17.13 (2007) | 22 |
| 17.15 | COPYING—ACCESS AND SUBSTANTIAL SIMILARITY | 9th Cir. Civ. Jury Instr. 17.15 (2007) | 27 |
| MSJI No. — | COPYRIGHT INFRINGEMENT—SUBSTANTIAL SIMILARITY | *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.,* 109 F.3d 1394, 1398 (9th Cir. 1997); *Shaw v. Lindheim,* 919 F.2d 1353, 1356 57 (9th Cir. 1990); *Jada Toys, Inc. v. Mattel, Inc.,* 1008 WL 450891, *6 (9th Cir. Feb. 21, 2008); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1164, 1166 (9th Cir. 1977); *Newton v. Diamond,* 204 F. Supp. 1244, 1253 (C.D. Cal. 2002); *Stillman v. Leo Burnett Co., Inc.,* 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989); *Coston v. Product Movers,* 1990 | 32 |

| Number | Title | Source | Page |
|--------|-------|--------|------|
| | | WL 56516 at *3 (E.D. Pa., 1990); *Webloyalty.com, Inc. v. Consumer Innovations, LLC,* 2005 WL 468496 at *2 (D. Del. 2005); *Pivot Point Int'l, Inc. v. Charlene Prods., Inc.,* 932 F. Supp. 220, 225 (N.D. Ill 1996); *ADA v. Delta Dental Plans Ass'n,* 1996 U.S. Dist. LEXIS 5809 at *19 n. 15 (N.D. Ill. 1996) | |
| MSJI No. __ | COPYRIGHT INFRINGEMENT— ORIGINALITY | 9th Cir. Civ. Jury Instr. 17.12 (2007); *CDN, Inc. v. Kapes,* 197 F.3d 1256, 1259 60 (9th Cir. 1999); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1163 n.5 (9th Cir. 1977) | 43 |
| MSJI No. __ | ORIGINALITY— COMBINATION OF UNPROTECTABLE ELEMENTS | *Mattel, Inc. v. Goldberger Doll Mfg. Co.,* 365 F.3d 133, 135 (2d Cir. 2004); *Dollcraft Indus., Ltd. v. Well-Made Toy Mfg. Co.,* 479 F. Supp. 1105, 1114 15 (E.D.N.Y. 1978); *Fisher-Price Toys v. My-Toy Co.,* 385 F. Supp. 218, 219 20 (S.D.N.Y. 1974); *cf. Swirsky v. Carey,* 376 F.3d 841, 848 (9th Cir. 2004) | 48 |
| MSJI No. __ | PRESUMPTION OF ORIGINALITY | 17 U.S.C. § 410(c); *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1019 (9th Cir. 1985); *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.,* 886 F.2d 1173, 1175 (9th Cir. 1989) | 54 |
| MSJI No. __ | SUBSTANTIAL SIMILARITY—THE "INVERSE RATIO RULE" | *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 485 (9th Cir. 2000); *Shaw v. Lindheim,* 919 F.2d 1353, 1361 62 (9th Cir. 1990); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1172 (9th Cir. 1977); *Smith v. Jackson,* 84 F.3d 1213, 1220-21 (9th Cir. 1996) | 57 |

| Number | Title | Source | Page |
|---|---|---|---|
| MSJI No. __ | COPYRIGHTABILITY OF CHARACTERS | *Olson v. National Broadcasting Co., Inc.*, 855 F.2d 1446, 1452 (9th Cir. 1988); *Warner Bros. Inc. v. American Broadcasting Companies, Inc.*, 720 F.2d 231, 235 (2d Cir. 1983); *Walt Disney Productions v. Air Pirate*s, 581 F.2d 751, 755 (9th Cir. 1978), cert. denied, 439 U.S. 1132 (1979); *Anderson v. Stallone*, 1989 Copr. L. Dec. P 26427, 1989 WL 206431 (C.D. Cal. 1989); *Toho Co., Ltd. v. William Morrow and Co., Inc.*, 33 F. Supp. 2d 1206, 1215 (C.D. Cal. 1998); *Metro-Goldwyn-Mayer, Inc. v. American Honda Motor Co., Inc.*, 900 F. Supp. 1287, 1296 (C.D. Cal. 1995) | 64 |
| MSJI No. __ | COPYRIGHT INFRINGEMENT— EVIDENCE OF COPYING OF NAMES OR TITLES | *Shaw v. Lindheim*, 919 F.2d 1353, 1362 (9th Cir. 1994); *Wihtol v. Wells*, 231 F.2d 550, 553 (7th Cir. 1956) | 76 |
| MSJI No. __ | COPYRIGHT INFRINGEMENT— THREE-DIMENSIONAL WORKS CAN INFRINGE TWO-DIMENSIONAL WORKS | *King Features Syndicate v. Fleischer,* 299 F. 533, 534, 538 (2d Cir. 1924); *Fleischer Studios v. Ralph A. Freundlich, Inc.,* 73 F.2d 276, 278 (2d Cir. 1934); *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1222-23 (9th Cir. 1997) | 80 |
| MSJI No. __ | COPYRIGHT INFRINGEMENT— INTERMEDIATE WORKS | *Sega Enters. Ltd. v. Accolade, Inc.,* 977 F.2d 1510, 1518 19 (9th Cir. 1993); *Walker v. Univ. Books, Inc.,* 602 F.2d 859, 864 (9th Cir. 1979); *Walt Disney Prods. v. Filmation Assocs.,* 628 F. Supp. 871, 875 76 (C.D. Cal. 1986) | 85 |
| MSJI No.__ | COPYRIGHT INFRINGEMENT— INTENT TO INFRINGE | *Pye v. Mitchell,* 574 F.2d 476, 481 (9th Cir. 1978); *L.A. News Serv. v. Conus Communications Co.,* 969 F. | 89 |

| Number | Title | Source | Page |
|---|---|---|---|
|  | NOT NECESSARY FOR LIABILITY | Supp. 579, 584 (C.D. Cal. 1997) |  |
| 17.20 | DERIVATIVE LIABILITY—VICARIOUS INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF | 9th Cir. Civ. Jury Instr. 17.20 (2007) (modified) | 92 |
| 17.21 | DERIVATIVE LIABILITY—CONTRIBUTORY INFRINGEMENT | 9th Cir. Civ. Jury Instr. 17.21 (2007) | 95 |
| 17.19 | COPYRIGHT—AFFIRMATIVE DEFENSE—ABANDONMENT | 9th Cir. Civ. Jury Instr. 17.19 (2007) | 98 |
| MSJI No. __ | COPYRIGHT—AFFIRMATIVE DEFENSE—GOOD FAITH TRANSFER | 17 U.S.C. § 205(d); *Peer Int'l Corp. v. Latin Amer. Music Corp.*, 161 F. Supp. 2d 38, 47-48 (D.P.R. 2001); Compendium II, *Copyright Office Practices*, Chapters 1602.2, 1604.02 | 101 |
| MSJI No. __ | STATUTE OF LIMITATIONS—FRAUDULENT CONCEALMENT | *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1042-3 (C.D. Cal. 2003); *Hynix Semiconductor v. Rambus, Inc.*, 2007 WL 3284060, at *3 (N.D. Cal. Nov. 2, 2007); *Grisham v. Philip Morris U.S.A., Inc.*, Cal.4th, 54 Cal. Rptr. 3d 735, 744 (2007); *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994); *April Enterprises, Inc. v. KTTV*, 147 Cal. App.3d 805, 831-32 (1983). | 106 |
| MSJI No. __ | AFFIRMATIVE DEFENSE—CONSENT | 2 Schwing, *California Affirmative Defenses*, § 32:3, at 197 (2007); *Greenawalt v. Rogers*, 151 Cal. 630 (1907) | 111 |
| CACI 3901 | INTRODUCTION TO TORT DAMAGES—LIABILITY | CACI No. 3901; *GHK Assocs., v. Mayer Group*, 224 Cal. App. 3d 856, 874-76 (1990); *Ramona Manor* | 114 |

-iv-

MATTEL'S THIRD AMENDED PROPOSED JURY INSTRUCTIONS FOR PHASE 1B—DISPUTED SET

| Number | Title | Source | Page |
|---|---|---|---|
| | ESTABLISHED FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS | *Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120, 1140 (1986) | |
| CACI 3901 | INTRODUCTION TO TORT DAMAGES— LIABILITY ESTABLISHED FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND BREACH OF THE DUTY OF LOYALTY | CACI No. 3901 | 120 |
| MSJI No. __ | DISGORGEMENT OF PROFITS | Restatement of Restitution, § 201 (2008); *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 543 (2007); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1127 (C.D. Cal. 2003) (citing *Heckmann v. Ahmanson*, 168 Cal. App. 3d 119 (1985)); *Xum Speegle, Inc. v. Fields*, 216 Cal. App. 2d 546 (1963); *Adams v. Herman*, 106 Cal. App. 2d 92, 99 (1951); *Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1086 (9th Cir. 2003); Restatement (2d) of Agency, § 403 | 129 |
| CACI 2102 | PRESUMED MEASURE OF DAMAGES FOR CONVERSION | CACI No. 2102 (modified); *Betzer v. Olney,* 14 Cal. App. 2d 53 (1937) | 142 |
| 17.22 | COPYRIGHT— DAMAGES (17 U.S.C. § 504) | 9th Cir. Civ. Jury Instr. 17.22 (2007) | 148 |
| 17.24 | COPYRIGHT— DAMAGES— DEFENDANTS' | 9th Cir. Civ. Jury Instr. 17.24 (2007) (modified) | 151 |

-v-

Case No. CV 04-9049 SGL (RNBx)

MATTEL'S THIRD AMENDED PROPOSED JURY INSTRUCTIONS FOR PHASE 1B—DISPUTED SET

| Number | Title | Source | Page |
|--------|-------|--------|------|
| | PROFITS (17 U.S.C. § 504(b)) | | |
| MSJI No. — | COPYRIGHT—DAMAGES—APPORTIONMENT OF PROFITS | 9th Cir. Civ. Jury Instr. 17.24, comments (2007); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,* 886 F.2d 1545, 1549 (9th Cir. 1989) | 154 |
| MSJI No. — | COPYRIGHT—DAMAGES—INDIRECT PROFITS | 9th Cir. Civ. Jury Instr. 17.24 (2007); *Polar Bear Prods., Inc. v. Timex Corp.,* 384 F.3d 700 (9th Cir. 2004) | 158 |
| MSJI No. — | COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT | 9th Cir. Civ. Jury Instr. 17.27 (2007); *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 487 (9th Cir. 2000); *Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.,* 752 F.2d 1326, 1331-32 (9th Cir. 1982); *Sheldon v. Metro-Goldwyn Pictures Corp.,* 106 F.2d 45, 53 (2d Cir. 1939); *Saxon v. Blann,* 968 F.2d 676, 681 (8th Cir. 1992); *Jarvis v. A & M Records,* 827 F. Supp. 282, 294 (1993); *Liu v. Price Waterhouse LLP,* 2000 WL 1644585, *6  (N.D. Ill. 2000) | 161 |
| MSJI No. — | AFFIRMATIVE DEFENSE—FAILURE TO MITIGATE | CACI No. 358; *Valle de Oro Bank v. Gamboa,* 26 Cal. App. 4th 1686 (1994) | 166 |
| CACI 3947 | PUNITIVE DAMAGES—INDIVIDUAL AND ENTITY DEFENDANTS | CACI No. 3947 | 171 |

# DEFENDANTS' GENERAL OBJECTIONS TO MATTEL'S PROPOSED JURY INSTRUCTIONS

The MGA Parties respectfully submit their objections to Mattel's Proposed Jury Instructions as set forth below. The MGA Parties also object to Mattel's Proposed Jury Instructions in general for omitting any of the jury instructions proposed by the MGA Parties.  In addition, the MGA Parties object to any of the instructions below that fail to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant.  The MGA Parties also object to the instructions below to the extent that they fail to include language necessary to assist the jury's understanding of this case and submit that their Proposed Instructions on the matters covered below are the appropriate instructions to provide the jury.

The MGA Parties generally objects to Mattel's proposed copyright instructions on the grounds that Mattel has deleted portions of the Ninth Circuit Model Jury Instructions, omitted entirely certain other, basic model instructions (e.g., Ninth Circuit Model Jury Instructions 17.2 ("Copyright – Subject Matter – Generally"); 17.3 ("Copyright – Subject Matter – Idea And Expression"), 17.6 ("Copyright Interests – Authorship"), 17.7 ("Copyright Interests – Joint Authors"), and added certain improper "Special" instructions.  Mattel's deletions, omissions, and "special instructions" are improper because, among other things, they are intended to mislead and confuse the jury in connection with its determination of the protectability of the various elements in the 16 Bryant drawings registered by Mattel at issue in this phase of the trial.  Mattel's deletions, omissions and "special instructions" are also directed to an apparent attempt by Mattel to confuse and mislead the jury into believing that Mattel's burden of proof in connection with its copyright infringement claims is less than it actually is.

-1-

1    The MGA Parties also generally object to Mattel's proposed copyright instructions on

2    the grounds that Mattel's instructions do not limit the basis of Mattel's copyright claims

3    to the 16 Carter Bryant drawings that Mattel has registered and that are listed in the

4    Final Pretrial Conference Order issued by this Court.  The Court has previously rejected

5    Mattel's attempt to base its claims on drawings that were not included in the Final

6    Pretrial Conference Order.  See May 29, 2008 Order, ¶ 9.

7

8    The MGA Parties further generally object that Mattel's proposed copyright instructions

9    do not properly instruct the jury of the effect of the Phase 1-A verdict and the prior

10   orders of the Court.  To that end, MGA's proposed instructions include a preliminary

11   instruction that instructs the jury concerning the effect of their Phase 1-A verdict and

12   focuses the issues the jury is required to determine in connection with the Phase 1-B

13   trial.  Given the number of drawings at issue in the Phase 1-A trial, as reflected in the

14   Phase 1-A verdict form, MGA's proposed preliminary instruction is necessary and

15   appropriate so that the jury understands that Mattel's copyright infringement claims are

16   limited to the 16 registered Bryant drawings specified in the Final Pretrial Conference

17   Order.

18

19   The MGA Parties specific objections are set forth below.

20

21

22

23

24

25

26

27

28

MATTEL'S THIRD AMENDED PROPOSED JURY INSTRUCTIONS FOR PHASE 1B—DISPUTED SET

## MATTEL'S GENERAL STATEMENT IN SUPPORT OF ITS PROPOSED JURY INSTRUCTIONS

The MGA Parties and Bryant have raised a variety of objections to Mattel's Amended Disputed Proposed Jury Instructions.  They generally are not well taken.  The thrust of defendants' objections is that the Court is somehow required to provide the jury with a large number of defense-slanted instructions such as those defendants have proposed – but this is obviously not required or appropriate.

Instead, for the reasons stated in Mattel's objections to defendants' proposed jury instructions, the Court should provide Mattel's proposed jury instructions to the jury.  Mattel's proposed instructions accurately set forth the applicable law, whereas defendants do not.  Mattel's proposed instructions are fair to all parties; defendants' instructions are slanted toward the defense.  Mattel's instructions are clear, easily understood and an appropriate length; defendants' proposed instructions are convoluted.

Defendants' objection that Mattel has omitted "basic model instructions" should be overruled because the omitted instructions identified by defendants are either unnecessary or inapplicable.  For example, defendants' new contention that MGA is somehow a joint author of the Bratz-related works at issue in this case -- the works the jury found that Bryant created by himself at Mattel and that Mattel owns -- strains credibility.  The doctrine of joint authorship does not fit the facts of this case, and would only confuse the jury.  And in any event, defendants did not seek to include the affirmative defense of joint authorship in the pre-trial conference order entered by the Court and thus waived any such defense.  *See Do It Best Corp. v. Passport Software, Inc.*, 2005 WL 743083, at *7 (N.D. Ill. March 31, 2005) (noting that joint authorship is an affirmative defense); *SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp. 2d 301, 314 (S.D.N.Y. 2000) (same); *C.D. Cal. Local Rule* 16.7.

-3-

Case No. CV 04-9049 SGL (RNBx)

1    Nor is Mattel attempting to "mislead" the jury regarding its burden of proof in
2    connection with the copyright infringement claim.  Indeed, Mattel has proposed the
3    Model Instructions that set forth that burden of proof.  *See, e.g.*, Mattel's Proposed
4    Jury Instructions 17.4 re Copyright Infringement—Ownership and Copying and
5    17.15 Copying—Access and Substantial Similarity.  Defendants' proposed
6    instructions, on the other hand, attempt to heighten that burden and make it seem
7    almost impossible to satisfy with respect to artistic works such as Bryant's drawings.
8    Defendants are simply trying to overcomplicate the issues before the jury by
9    suggesting that Bryant's designs -- artistic works that have the broadest protections
10   under copyright law -- somehow should be viewed through a sieve, where virtually
11   nothing remains once filtered.

12   Finally, defendants' objections based on its contention that Mattel's copyright
13   claim is limited to "the 16 Bryant drawings that Mattel has registered with the
14   Copyright office" should also be overruled.  Mattel's claim encompasses all of the
15   Bratz-related works the jury found that Mattel owns in Phase 1A, whether or not
16   those works were previously registered.  *See Perfect 10, Inc. v. Amazon.com Inc.*,
17   487 F.3d 701, 710 n.1 (9th Cir. 2007) (noting, in a case where some works were
18   registered and some were not, that Section 411 of the Copyright Act does not limit
19   the remedies a court can grant for copyright infringement even of unregistered
20   works); 28 U.S.C. § 1367(a) ("The district courts shall have supplemental
21   jurisdiction over all other claims that are so related to claims in the action within
22   such original jurisdiction that they form part of the same case or controversy under
23   Article III of the United States Constitution.").  Moreover, Mattel is in the process of
24   registering its copyrights in additional Bratz-related works the jury found Mattel
25   owns, which renders defendant's limitation moot.  Notably, defendants' contention
26   that the Final Pre-Trial Conference Order lists 16 copyrighted works, and limits
27   Mattel's claim to those works only, is erroneous; nowhere does the Final Pre-Trial

28

1   Conference Order specify or limit the works at issue.  *See* June 7, 2008 Final Pre-
2   Trial Conference Order for Phase 1 Trial.

3        Not considering defendants' infringement of these additional works would be
4   nonsensical, and would require the filing of a separate lawsuit, after this one, to
5   address Mattel's claims that defendants have infringed Bratz works Mattel now
6   owns, which were not previously registered.  The works will all be registered within
7   a matter of days, now that Mattel has been found to own them.  Mattel's
8   infringement claim should be considered in its entirety, as to all of the Bratz works
9   Mattel owns, which are all part of this same controversy between the parties.

10       Mattel respectfully requests that its proposed instructions should be given to
11  the jury.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>17.1</u>**

**<u>COPYRIGHT—DEFINED</u>**

**<u>(17 U.S.C. § 106)</u>**

Mattel claims that the defendants, MGA Entertainment, Inc. ("MGA"), Isaac Larian and MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), engaged in copyright infringement.  The defendants deny that claim.

Copyright is the exclusive right to copy. This right to copy includes the exclusive rights to:

(1)    Authorize, or make additional copies, or otherwise reproduce the copyrighted work;

(2)    Prepare derivative works based upon the copyrighted work;

(3)    Distribute copies of the copyrighted work to the public by sale or other transfer of ownership; and

(4)    Display publicly a copyrighted work.

It is the owner of a copyright who may exercise these exclusive rights to copy.  The term "owner" includes an assignee.  In general, copyright law protects against production, adaptation and distribution of substantially similar copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in an action for copyright infringement.

**Authority:**  9th Cir. Civ. Jury Instr. 17.1 (2007) (modified).

1

## DEFENDANTS' OBJECTIONS TO 17.1 COPYRIGHT—DEFINED

2

3   The MGA Parties object to this instruction on the grounds that the introductory

4   paragraph Mattel added to the model instruction should be included in a preliminary

5   instruction that informs the jury of the effect of their Phase 1-A verdict and the issues

6   they need to determine in connection with the Phase 1-B trial.  Mattel's instruction also

7   improperly fails to inform the jury that its copyright infringement determination is

8   limited to the 16 Bryant drawings that Mattel registered with the Copyright Office and

9   are part of the Final Pretrial Conference Order in this case.

10

11  The MGA Parties also object to Mattel's deletion of "[r]ecast, transform, adapt the

12  work" from the definition in Ninth Circuit's model instruction for "derivative works" in

13  item number (2) above.  The deleted language is part of the Copyright Act's definition

14  of "derivative works."  See 17 U.S.C. § 101; see also Siegel v. Time Warner Inc., 496

15  F. Supp. 2d 1111 (C.D. Cal. 2007).  This deletion by Mattel is consist with Mattel's

16  efforts throughout its proposed instructions to confuse and mislead the jury into

17  believing that Mattel's burden of proving infringement is less than it actually is.

18

19  The MGA Parties also object to this instruction on the grounds that the sentence

20  concerning ownership by assignment is not necessary and will only serve to confuse the

21  jury, particularly when combined with later instructions by Mattel addressed to this

22  non-issue.  The better course is simply to instruct the jury that Mattel owns the

23  copyrights in the Bryant drawings via assignment as set forth in the MGA Parties'

24  proposed preliminary copyright instruction.  The MGA Parties also object to this

25  instruction on the grounds that it does not inform the jury that mere possession of a

26  copyrighted work does not constitute infringement.  See Lapham v. Porach, 2007 U.S.

27  Dist. LEXIS 30751, at *15 (S.D.N.Y. Apr. 25, 2007).   Such an instruction is

28

1  particularly appropriate in this case.  The MGA Parties also object to this instruction

2  because it does not specify that a defendant's contribution of non-infringing materials to

3  a Bratz doll does not constitute copyright infringement even if the Bratz doll itself

4  infringes Mattel's copyright.  The MGA Parties further object on the ground that the

5  instruction improperly fails to explain that the jury must consider each defendant's acts

6  separately to determine whether that defendant has engaged in an act that is an

7  infringement of Mattel's copyrights.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

As required by the Court, the proposed instruction conforms to the Ninth Circuit Model Instruction.  Defendants do not present any reason for the Court to deviate from its standing order requiring the use of Model Instructions whenever possible, nor do they contend that the Model Instruction is incorrect.

Accordingly, defendants' objection that the Model Instruction does not "specify that a defendants' contribution of non-infringing materials to a Bratz doll does not constitute copyright infringement even if the Bratz doll itself infringes Mattel's copyright" is not well taken.  Defendants' proposed addition is incomprehensible, confusing and, in any event, inappropriate for an introductory instruction regarding the definition of copyright.  Defendants' own proposed introductory instruction does not include anything to that effect.  *See* Defendants' Proposed Jury Instruction re Copyright – Defined.

Defendants' objection to this instruction based on its contention that Mattel's copyright claim is limited to "the 16 Bryant drawings that Mattel has registered with the Copyright office" should also be overruled.  Mattel's claim encompasses all of the Bratz-related works the jury found that Mattel owns in Phase 1A, whether or not those works were previously registered.  *See Perfect 10, Inc. v. Amazon.com Inc.*, 487 F.3d 701, 710 n.1 (9th Cir. 2007) (noting, in a case where some works were registered and some were not, that Section 411 of the Copyright Act does not limit the remedies a court can grant for copyright infringement even of unregistered works); 28 U.S.C. § 1367(a) ("The district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").  Moreover, Mattel is in the process of registering its copyrights in additional Bratz-related works the jury found Mattel

1   owns, which renders defendant's limitation moot.  Notably, defendants' contention

2   that the Final Pre-Trial Conference Order lists 16 copyrighted works, and limits

3   Mattel's claim to those works only, is erroneous; nowhere does the Final Pre-Trial

4   Conference Order specify or limit the works at issue.  *See* June 7, 2008 Final Pre-

5   Trial Conference Order for Phase 1 Trial.

6       Not considering defendants' infringement of these additional works would be

7   nonsensical, and would require the filing of a separate lawsuit, after this one, to

8   address Mattel's claims that defendants have infringed Bratz works Mattel now

9   owns, which were not previously registered.  The works will all be registered within

10  a matter of days, now that Mattel has been found to own them.  Mattel's

11  infringement claim should be considered in its entirety, as to all of the Bratz works

12  Mattel owns, which are all part of this same controversy between the parties.

13      Defendants' contention that the proposed instruction, which conforms to the

14  Model Instruction, should inform the jury that the mere possession of copyrighted

15  work is not infringement is baseless.  Mattel does not contend that defendants' mere

16  possession of Bryant's drawings constitutes copyright infringement.  Therefore, it

17  would be confusing and misleading to alter the Model Instruction to reflect

18  defendants' irrelevant comment.  Nor do defendants explain why such an instruction

19  would allegedly be "particularly appropriate" in this case.  It would not.

20      The proposed instruction also does not improperly fail to differentiate among

21  defendants.  Rather, the proposed instruction merely explains the legal principles

22  underlying a claim of copyright infringement.  Subsequent instructions that pertain

23  directly to factors that the jury must determine to hold defendants liable for

24  copyright infringement make clear that each defendant's liability must be

25  determined separately.

26      Defendants object that Mattel did not include the additional bracketed

27  language -- "recast, transform, adapt the work" -- regarding "derivative works" set

28

forth in the Model Instruction.  Mattel agrees that such language should be included, and proposes an amended proposed instruction below which incorporates the additional language.

Defendants have no basis to object to Mattel's inclusion of a statement indicating that the "owner" of a copyright includes an assignee, such as Mattel, which is the law.  However, Mattel also agrees that instructing the jury that Mattel owns the Bratz designs the jury found were created while Bryant worked at Mattel is appropriate.

Accordingly, Mattel hereby modifies its proposed instruction, as follows:

Mattel claims that the defendants, MGA Entertainment, Inc. ("MGA"), Isaac Larian and MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), engaged in copyright infringement.  The defendants deny that claim.

Copyright is the exclusive right to copy. This right to copy includes the exclusive rights to:

(1)     Authorize, or make additional copies, or otherwise reproduce the copyrighted work;

(2)     Recast, transform, adapt the work, that is prepare derivative works based upon the copyrighted work;

(3)     Distribute copies of the copyrighted work to the public by sale or other transfer of ownership; and

(4)     Display publicly a copyrighted work.

It is the owner of a copyright who may exercise these exclusive rights to copy.  As a matter of law, Mattel is the owner, by assignment, of the Bratz works you found were created by Carter Bryant, alone or jointly with others, while employed by Mattel.  In

1    general, copyright law protects against production, adaptation and

2    distribution of substantially similar copies of the owner's copyrighted

3    work without the owner's permission.  Mattel may enforce these rights

4    to exclude others in an action for copyright infringement.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**17.4**

**COPYRIGHT INFRINGEMENT—OWNERSHIP AND COPYING**

**(17 U.S.C. § 501A–(b))**

Anyone who copies original elements of a copyrighted work without the owner's permission infringes the copyright.

Mattel claims that the defendants have infringed copyrights for Bratz works. On Mattel's copyright infringement claim, Mattel has the burden of proving both of the following by a preponderance of the evidence:

1.      Mattel is the owner of a valid copyright; and

2.      The defendants copied original elements from the copyrighted work.

If you find that Mattel has proved both of these elements, your verdict should be for Mattel.

If, on the other hand, Mattel has failed to prove either of these elements, your verdict should be for the defendants.

**Authority:**  9th Cir. Civ. Jury Instr. 17.4 (2007).

# DEFENDANTS' OBJECTIONS TO 17.4 COPYRIGHT INFRINGEMENT— OWNERSHIP AND COPYING

The MGA Parties object to this instruction on the grounds that it does not properly account for the Phase 1-A verdict.  For example, the issues of ownership was determined in Phase 1-A, validity is not disputed.  Also, Mattel's proposed instruction's use of the term "copyrights for Bratz works" is vague and ambiguous and improperly suggests that the jury could find MGA liable based on Bryant drawings or other items at issue in the Phase 1-A trial other than the 16 Bryant drawings registered by Mattel that are listed in the Final Pretrial Conference Order in this case.  The MGA Parties also object to this instruction because it fails to ensure that the jury will distinguish among the defendants and make appropriate findings with respect to each defendant. The MGA Parties further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

## MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

Defendants' objection to this instruction based on its contention that Mattel's copyright claim is limited to "the 16 Bryant drawings that Mattel has registered with the Copyright office" should be overruled.  Mattel's claim encompasses all of the Bratz-related works the jury found that Mattel owns in Phase 1A, whether or not those works were previously registered, as discussed above.  *See* Mattel's Statement re 17.1 Copyright—Defined, *supra*, at 9-10.  Use of the term "Bratz works" for the works the jury found Mattel owns in Phase 1A is appropriate.

The proposed instruction does not improperly fail to differentiate among defendants.  Rather, the proposed instruction merely explains the legal principles underlying a claim of copyright infringement.  Subsequent instructions that pertain directly to factors that the jury must determine to hold defendants liable for copyright infringement make clear that each defendant's liability must be determined separately.

Moreover, defendants' objection that the jury must consider each "infringing act" and "product" separately misstates the law.  Essentially, defendants contend that a Bratz doll would not infringe if defendants copied the head from one of Bryant's drawings and the doll's body from another drawing.  That is not the law.  This case is comparable to *Castle Rock Entm't v. Carol Publishing Group, Inc.*, 150 F.3d 132 (2d Cir. 1998), where the Second Circuit held that a book entitled "Seinfeld Aptitude Test" infringed the plaintiff's copyrights in numerous episodes of "Seinfeld," even though the amount of expression copied from each episode was relatively small.  *See id.* at 138 ("it would elevate form over substance to conclude that *The SAT* 's copying of 643 fragments from 84 individually copyrighted *Seinfeld* episodes is indistinguishable from a case in which a 634-question trivia quiz book poses a few questions from each of 84 unrelated television programs, books,

movies, or any combination of creative works that do not constitute a discrete series of works."); *see also Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1372-73 (2d Cir. 1993) (finding substantial similarity between infringing book and eight episodes of Twin Peaks weekly television series viewed as a whole).

Here, as in *Castle Rock*, most of Bryant's drawings are a single series of depictions of the same four characters (i.e., the original Bratz characters), developed for a specific purpose (creating, pitching and developing Bratz dolls). Accordingly, it would be prejudicial and wholly artificial for the Court to instruct the jury to consider each of the series of Bratz drawings separately. Indeed, defendants do not cite any authority to support their objection. In any case, the proposed damages instructions, which are also based upon the Ninth Circuit Model Instructions, make clear the proper standards for damages determination.

To address defendants' objection that the proposed instruction should inform the jury that satisfaction of the first element of Mattel's claim for copyright infringement is undisputed, with which Mattel agrees, Mattel proposes the following amended proposed instruction:

> Anyone who copies original elements of a copyrighted work without the owner's permission infringes the copyright.
>
> Mattel claims that the defendants have infringed copyrights for Bratz works. On Mattel's copyright infringement claim, Mattel has the burden of proving both of the following by a preponderance of the evidence:
>
> 1.    Mattel is the owner of a valid copyright; and
>
> 2.    The defendants copied original elements from the copyrighted work.

1        If you find that Mattel has proved both of these elements, your

2   verdict should be for Mattel.  If, on the other hand, Mattel has failed

3   to prove either of these elements, your verdict should be for the

4   defendants.

5        As a matter of law, the first element is satisfied because Mattel

6   is the owner of each of the Bratz works you found were created by

7   Carter Bryant, alone or jointly with others, while employed by Mattel.

8   Whether or not the second element is satisfied is for you to decide.

1
2
3
4

<u>**17.10**</u>

<u>**COPYRIGHT INTERESTS—ASSIGNEE**</u>

<u>**(17 U.S.C. § 201(d)(1))**</u>

5   In this case, the plaintiff, Mattel, does not claim to be the creator of the
6   copyright at issue. Instead, Mattel claims it received the copyright by virtue of
7   assignment from the work's creator, Carter Bryant, in the Inventions Agreement, so
8   that Mattel is now the owner of the copyright.  You should assume that Mattel owns
9   all the works you found were created by Carter Bryant, alone or jointly with others,
10  while he was employed by Mattel, and that Mattel may sue for infringement of those
11  works.

12

13  **Authority:**  9th Cir. Civ. Jury Instr. 17.10 (2007) (modified).

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MATTEL'S THIRD AMENDED PROPOSED JURY INSTRUCTIONS FOR PHASE 1B—DISPUTED SET

# DEFENDANTS' OBJECTIONS TO 17.10 COPYRIGHT INTERESTS— ASSIGNEE

The MGA Parties object to this instruction on the grounds that it is unnecessary since Mattel's ownership via assignment of the Bryant drawings is not disputed, and, as discussed previously, this issue is better and less confusingly handled by means of the preliminary copyright instruction proposed by MGA.  This instruction is also improper to the extent that it instructs the jury to "assume that Mattel owns all the works you found were created by Carter Bryant, alone or jointly with others, while he was employed by Mattel, and that Mattel may sue for infringement of those works."  As discussed previously, the Court has already determined that Mattel's copyright infringement claims in this case are limited to the 16 drawings registered by Mattel that are listed in the Final Pretrial Order.  It also misstates the law since Mattel does not have standing to bring suit on drawings that are not registered with the Copyright Office.  It also misstates the law to the extent it states that Mattel owns and can sue on "joint works," particularly as relates to "joint works" owned jointly with MGA.

1  **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3      Defendants' objection is baseless and should be overruled.  Mattel is entitled

4  to an instruction explaining to the jury that its copyright rights are based upon a

5  valid transfer of ownership from Carter Bryant, especially because Ninth Circuit

6  Model Instruction 17.4 does not explain this concept.

7      Defendants' objection to this instruction based on its contention that Mattel's

8  copyright claim is limited to "the 16 Bryant drawings that Mattel has registered with

9  the Copyright office" should be overruled.  Mattel's claim encompasses all of the

10  Bratz-related works the jury found that Mattel owns in Phase 1A, whether or not

11  those works were previously registered, as discussed above.  *See* Mattel's Statement

12  re 17.1 Copyright—Defined, *supra*, at 9-10.

13      Defendants' objection that this instruction "misstates the law" with respect to

14  "joint works" owned jointly with MGA is incomprehensible and confusing.

15  Defendants do not identify a single work that would be "jointly" owned between

16  Mattel and MGA.  Indeed, the jury found in Phase 1A that Mattel is the rightful

17  owner of the works at issue.  Defendants' apparent contention that they are joint

18  authors of works that the jury found Bryant created at Mattel strains credibility.

19      The doctrine of joint authorship applies only if "a work [was] prepared by two

20  or more authors with the intention that their contributions be merged into

21  inseparable or interdependent parts of a unitary whole."  17 U.S.C. § 101.  Even if

22  this narrow doctrine applies to creative collaborations of Rogers and Hart or the

23  Coen Brothers, it does not apply to Bryant's independent creations of Bratz works

24  that he sold to MGA.

25      To the extent that defendants claim that the Bratz dolls are joint works, the

26  argument misses the point. Mattel does not claim that it created the Bratz dolls.

27  Rather, Mattel claims -- and the jury found -- that it owns the underlying Bratz

28

1  designs.  Therefore, the Bratz dolls are infringing derivative works, regardless of the

2  extent of MGA's contribution in their creation.  Accordingly, defendants' reliance

3  upon the doctrine of joint authorship does not fit the facts of this case, and would

4  only confuse the jury.

5       In any event, defendants did not seek to include the affirmative defense of

6  joint authorship in the pre-trial conference order entered by the Court.  *See Do It*

7  *Best Corp. v. Passport Software, Inc.*, 2005 WL 743083, at *7 (N.D. Ill. March 31,

8  2005) (noting that joint authorship is an affirmative defense); *SHL Imaging, Inc. v.*

9  *Artisan House, Inc.*, 117 F. Supp. 2d 301, 314 (S.D.N.Y. 2000)

10  (same). Accordingly, defendants waived the ability to raise any such defense.  *See*

11  *C.D. Cal. Local Rule* 16.7.

12      However, Mattel does agree that this instruction could be more clear.

13  Accordingly, in light of defendants' objections, Mattel hereby proposes the

14  following amended proposed instruction:

15

16          In this case, the plaintiff, Mattel, does not claim to be the

17       creator of the copyrights at issue. Instead, Mattel claims it received

18       the copyrights by virtue of assignment from the work's creator, Carter

19       Bryant, in the Inventions Agreement, so that Mattel is now the owner

20       of the copyrights.  As a matter of law, Mattel owns all the works you

21       found were created by Carter Bryant, alone or jointly with others,

22       while he was employed by Mattel, and Mattel may sue for

23       infringement of those works.

24

25

26

27

28

**17.13**

**COPYRIGHT INTERESTS—DERIVATIVE WORKS**

**(17 U.S.C. §§ 101, 106(2))**

A copyright owner is entitled to exclude others from creating derivative works based upon the owner's copyrighted work.  The term derivative work refers to a work based on one or more pre-existing works, such as drawings or dolls. Accordingly, Mattel is entitled to exclude others from recasting, transforming or adapting, without Mattel's permission, the copyrighted works you found were created by Carter Bryant, alone or jointly with others, while he was employed by Mattel.

**Authority:**  9th Cir. Civ. Jury Instr. 17.13 (2007) (modified).

# DEFENDANTS' OBJECTIONS TO 17.13 COPYRIGHT INTERESTS— DERIVATIVE WORKS

The MGA Parties object to this instruction on the grounds that Mattel's inclusion of the word "dolls" in the second sentence is improper and directed at confusing and misleading the jury concerning the basis and scope of Mattel's infringement claims. Mattel's claims are directed to the alleged infringement of the 16 registered Bryant drawings by the Bratz dolls. Mattel does not own any "dolls," as so-called "derivative works" or otherwise, that are allegedly infringed by the Bratz dolls. This instruction is also misleading and confusing to the extent that Mattel has again omitted the language from the Ninth Circuit's model instruction, "other form in which the pre-existing work is recast, transformed, or adapted," which provides the proper definition of an alleged "derivative work.."

The MGA Parties also object to this instruction on the grounds that it is improperly intended to confuse the jury concerning the correct test to be applied in determining whether any of the Bratz dolls infringe copyrights in any of the 16 Bryant sketches that Mattel has registered Copyright Office. Mattel's instruction not only fails to limit the "copyrighted works" to the 16 registered drawings that are listed in the Final Pretrial Conference Order, it also seeks to make an end-run around the strictures of the standards for copyright infringement in the Ninth Circuit. Mattel's instruction misleadingly suggests that there is a lower standard for determining infringement of "derivative works," which is clearly wrong. See, e.g., Litchfield v. Spielberg, 736 F.2d 1352, 1357 (9th Cir. 1984) ("a work will be considered a derivative work **only if it would be considered an infringing work if** the material which it has derived from a prior work had been taken without the consent of a copyright proprietor of such prior work. To prove infringement, one must show substantial similarity.") (emphasis in

1   original) (citations omitted); <u>Allen v. Academic Games League of Am.</u>, 89 F.3d 614

2   (9th Cir. 1996) ("Allen asserts that to constitute a derivative work, the infringing work

3   need only incorporate in some form a portion of the copyrighted material. This court,

4   however, has consistently held that to prove infringement, one must demonstrate

5   substantial similarity between the works.") (citing <u>Litchfield</u>).  <u>See</u> <u>generally</u> 4-19D

6   <u>Nimmer on Copyright</u> § 19D.08 ("a new work constitutes a derivative work based on

7   an underlying work only if the new work is 'substantially similar' to the underlying

8   work").

9

10  The MGA Parties also object on the grounds that Mattel's description of a "derivative

11  work" runs counter to the very purpose of copyright laws as stated by the United States

12  Supreme Court: "The primary objective of copyright is not to reward the labor of

13  authors, but 'to promote the Progress of Science and useful Arts.'  To this end,

14  copyright assures authors the right to their original expression, but encourages others to

15  build freely upon the ideas and information conveyed by a work." <u>Feist Publications,</u>

16  <u>Inc. v. Rural Telephone Co.</u>, 499 U.S. 340, 349-50 (1991) (quoting U.S. Constitution

17  and citing <u>Twentieth Century Music Corp. v. Aiken</u>, 422 U.S. 151, 156 (1975); <u>Harper</u>

18  <u>& Row, Publishers, Inc. v. Nation Enters.</u>, 471 U.S. 539, 556-57 (1985).  <u>See also</u>

19  <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517, 527 (1994) ("copyright law ultimately serves

20  the purpose of enriching the general public through access to creative works" and "it is

21  peculiarly important that the boundaries of copyright law be demarcated as clearly as

22  possible"); <u>Love v. The Mail On Sunday</u>, 2007 U.S. Dist. LEXIS 97061, at *17 (Sept.

23  7, 2007).  Mattel's suggestion to the jury that it is <u>per se</u> improper to "base" one work

24  on another is wrong and unduly prejudicial, particularly in this case, where MGA

25  admits that the Bryant drawings served as an inspiration for its Bratz dolls.

26

27

28

-24-

MATTEL'S THIRD AMENDED PROPOSED JURY INSTRUCTIONS FOR PHASE 1B—DISPUTED SET

1   **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3       As required by the Court, the proposed instruction mirrors the language of the

4   Model Instruction.  Defendants do not present any cogent reason for the Court to

5   deviate from its standing order requiring the use of Model Instructions whenever

6   possible, nor do they contend that the Model Instruction is incorrect.

7       Defendants contention that "Mattel's instruction misleadingly suggests that

8   there is a lower standard for determining infringement of derivative works" is

9   puzzling.  The proposed instruction is based upon the Model Instruction.

10  Defendants' demand that the model instruction be modified to address the standard

11  for finding infringement is without merit.  This standard is addressed by several

12  other instructions, and need not be repeated here.  A derivative works instruction is

13  needed because many Bratz dolls are classic derivatives; this instruction accurately

14  sets forth the law in this regard.

15      Defendants' constitutional argument is without merit.  It is obvious from other

16  instructions -- including introductory instructions defining the scope of copyright

17  protection -- that ideas may be copied, as long as the defendant does not copy any

18  protected expression.  By definition, and as set forth in Defendants' own authority, a

19  derivative work copies protected elements of the original -- otherwise, it would not

20  be a derivative work.  4-19D Nimmer on Copyright § 19D.08 ("a new work

21  constitutes a derivative work based on an underlying work only if the new work is

22  'substantially similar' to the underlying work").  If it is defendants' contention that

23  they copied only unprotected ideas, then they will be able to present this argument

24  to the jury.  Defendants' argument, however, should not prevent the Court from

25  instructing the jury regarding the concept of derivative works.

26

27

28

1    To address defendants' objection regarding the omission of certain bracketed
2    language in the Model Instruction, Mattel proposes the following amended
3    instruction:

4

5        A copyright owner is entitled to exclude others from creating
6        derivative works based upon the owner's copyrighted work.  The term
7        derivative work refers to a work based on one or more pre-existing
8        works, such as drawings or dolls, or any other form in which the pre-
9        existing work is recast, transformed or adapted.  Accordingly, Mattel
10       is entitled to exclude others from recasting, transforming or adapting,
11       without Mattel's permission, the copyrighted works you found were
12       created by Carter Bryant, alone or jointly with others, while he was
13       employed by Mattel.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**17.15**

**COPYING—ACCESS AND SUBSTANTIAL SIMILARITY**

I just instructed you that Mattel has the burden of proving that the defendants copied original elements from Mattel's copyrighted work.  Mattel may show the defendants copied from the work by showing by a preponderance of the evidence that the defendants had access to Mattel's copyrighted works and that there are substantial similarities between the defendants' works and original elements of Mattel's works.

**Authority:**  9th Cir. Civ. Jury Instr. 17.15 (2007).

-27-

# DEFENDANTS' OBJECTIONS TO 17.15 COPYING—ACCESS AND SUBSTANTIAL SIMILARITY

The MGA Parties object to this instruction on the grounds that it instructs the jury that it can find the MGA Parties liable for infringement based on any of Bryant's drawings and not just the 16 registered drawings listed in the Final Pretrial Conference Order. This instruction is also improper to the extent that it does not require the jury to distinguish among the defendants and make appropriate findings with respect to each defendant.  The MGA Parties further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

To the extent that Mattel also includes an instruction concerning the "inverse ratio rule," see Mattel's "Special Instructions," this instruction is improper since it does not distinguish between "factual copying" and "legal copying," and it does not explain that the analysis presented by this instruction is only relevant to Mattel's burden of proving "factual" copying.  Moreover, to the extent any "inverse ratio rule" instruction is given to the jury, the jury must also be instructed that proof of "access" plus "substantial similarity" merely creates a presumption of "factual" copying that MGA is entitled to rebut.  See MGA's Proposed Instruction: Copyright Infringement – Independent Creation.

-28-

## MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

As required by the Court, the proposed instruction mirrors the language of the Ninth Circuit Model Instruction.  Defendants do not offer any reason for the Court to deviate from its standing order requiring the use of Model Instructions whenever possible.

The proposed instruction does not improperly combine defendants for the purposes of liability.  The only other alternative would be to give a separate identical instruction for each defendant, which would be impractical and confusing.

The proposed instruction will not mislead the jury, as defendants suggest, with respect to damages awardable based upon the scope of infringement.  The instruction appropriately explains the concepts of access and substantial similarity in simple, clear terms, consistent with the Model Instruction.

Moreover, defendants' objection that the jury must consider each "infringing act" and "product" separately misstates the law.  Essentially, defendants contend that a Bratz doll would not infringe if defendants copied the head from one of Bryant's drawings and the doll's body from another drawing.  That is not the law.  This case is comparable to *Castle Rock Entm't v. Carol Publishing Group, Inc*., 150 F.3d 132 (2d Cir. 1998), where the Second Circuit held that a book entitled "Seinfeld Aptitude Test" infringed the plaintiff's copyrights in numerous episodes of "Seinfeld," even though the amount of expression copied from each episode was relatively small.  *See id.* at 138 ("it would elevate form over substance to conclude that *The SAT* 's copying of 643 fragments from 84 individually copyrighted *Seinfeld* episodes is indistinguishable from a case in which a 634-question trivia quiz book poses a few questions from each of 84 unrelated television programs, books, movies, or any combination of creative works that do not constitute a discrete series of works."); *see also Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366,

1372-73 (2d Cir. 1993) (finding substantial similarity between infringing book and eight episodes of Twin Peaks weekly television series viewed as a whole).

Here, as in *Castle Rock*, most of Bryant's drawings are a single series of depictions of the same four characters (i.e., the original Bratz characters), developed for a specific purpose (creating, pitching and developing Bratz dolls). Accordingly, it would be prejudicial and wholly artificial for the Court to instruct the jury to consider each Bratz drawing separately. Indeed, defendants do not cite any authority to support their objection. In any case, the proposed damages instructions, which are also based upon the Ninth Circuit Model Instructions, make clear the proper standards for damages determination.

Defendants' objection concerning the inverse ratio rule is baseless. As an initial matter, the Court already held that the inverse ratio rule applies. July 24, 2008 Order, at 2-3 ("In applying both the extrinsic and intrinsic tests, the Court must be mindful of the so-called 'inverse ratio rule' which states that where, as here, a high degree of access to the original works is shown, the burden to show substantial similarity is reduced."). The objection also fails because the inverse ratio rule applies to the extrinsic test for infringement, (*Smith v. Jackson*, 84 F.3d 1213, 1220 (9th Cir. 1996)), and thus by definition pertains to "legal" copying (i.e., infringement of protectable material). Further, the purported distinction between "legal" and "factual" copying is unnecessary and confusing. Factual copying encompasses reproduction of both protected and unprotected elements, while "legal" copying is copyright infringement (i.e., unauthorized copying of protected expression). Mattel will establish that defendants infringed its copyrights in Bryant's designs by demonstrating substantial similarity of expression. The substantial similarity standard embodies the notion of "legal" copying. Other instructions explain to the jury that defendants are only liable for infringement of protected expression. Therefore, the jury is effectively going to be instructed to

1  consider only "legal" (and not "factual" copying).  That is precisely the approach

2  endorsed by defendants' authorities.  There is no basis to instruct the jury on the

3  issue of "factual" copying.

4       Defendants' objection to this instruction based on its contention that Mattel's

5  copyright claim is limited to "the 16 Bryant drawings that Mattel has registered with

6  the Copyright office" should be overruled.  Mattel's claim encompasses all of the

7  Bratz-related works the jury found that Mattel owns in Phase 1A, whether or not

8  those works were previously registered, as discussed above.  *See* Mattel's Statement

9  re 17.1 Copyright—Defined, *supra*, at 9-10.

10       Last, based on defendants' own instructions, it is clear that the issue of access

11  is undisputed.  Accordingly, Mattel hereby submits the following proposed amended

12  instruction:

13       I just instructed you that Mattel has the burden of proving that

14       the defendants copied original elements from Mattel's copyrighted

15       work.  Mattel may show the defendants copied from the work by

16       showing by a preponderance of the evidence that the defendants had

17       access to Mattel's copyrighted works and that there are substantial

18       similarities between the defendants' works and original elements of

19       Mattel's works.

20       It is undisputed in this case that the defendants had access to

21       Mattel's copyrighted works.  Whether there are substantial similarities

22       between the defendants' works and the original elements of Mattel's

23       works is for you to decide.

24

25

26

27

28

1   **MATTEL'S SPECIAL JURY INSTRUCTION NO.   **

2   **COPYRIGHT INFRINGEMENT—SUBSTANTIAL SIMILARITY**

3

4   You are to make a determination regarding substantial similarity according to

5   a two-step process, which includes application of the "extrinsic test" and the

6   "intrinsic test." To prevail on its claims for copyright infringement, Mattel must

7   satisfy both of these tests.

8   Under the extrinsic test, Mattel must establish that specific ideas and

9   expressive elements of the Bratz products that Mattel claims are infringing and the

10  works Mattel owns are substantially similar. I have already found as a matter of law

11  that each of the elements in Carter Bryant's Bratz drawings, and the combination of

12  those elements, are original and protectable. Accordingly, you should take all of the

13  elements of the drawings into account in analyzing whether they are substantially

14  similar to the defendants' works.

15  The intrinsic test looks at the overall similarity of ideas and expression in the

16  works from the perspective of an ordinary observer. You should ask yourself

17  whether the ordinary, reasonable audience, in this case girls between the ages of 6

18  and 12, would recognize the defendants' products as a "picturization" of the Bratz

19  works that Mattel owns.

20

21  **Authority:** *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d

22  1394, 1398 (9th Cir. 1997); *Shaw v. Lindheim*, 919 F.2d 1353, 1356-57 (9th Cir.

23  1990); *Jada Toys, Inc. v. Mattel, Inc.*, 1008 WL 450891, *6 (9th Cir. Feb. 21, 2008);

24  *see also Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*,

25  562 F.2d 1157, 1164, 1166 (9th Cir. 1977); *See, e.g., Newton v. Diamond*, 204 F.

26  Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of elements in a copyrighted

27  work is a question of law."); *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353,

28

-32-

1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve findings of fact, but the issue of protectibility/nonprotectibility is an issue of law. Thus, before a court may send a copyright case to the jury, it must satisfy itself that, even assuming copying of an idea and its expression, at least some of what the defendant copied falls into the area of protectible expression."); *Coston v. Product Movers*, 1990 WL 56516 at *3 (E.D. Pa., 1990) ("The question of which aspects of plaintiffs' work are protectible expression as opposed to unprotectible idea is an issue of law."); *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 2005 WL 468496 at *2 (D. Del. 2005) (holding that while a finding of copyright infringement may involve questions of fact, the protectability of copyrighted material is a question of law); *Pivot Point Int'l, Inc. v. Charlene Prods.*, Inc., 932 F. Supp. 220, 225 (N.D. Ill 1996) (the issue of whether a work is "copyrightable is a question of law," and the "jury has nothing to do with this subject.");*ADA v. Delta Dental Plans Ass'n*, 1996 U.S. Dist. LEXIS 5809 at *19 n. 15 (N.D. Ill. 1996) (although copyrightability analysis necessarily requires a court to consider some facts surrounding the works at issue, the inquiry "is far more heavily loaded with policy implications than most other standards," making it appropriate for determination by a court instead of a jury).

# DEFENDANTS' OBJECTIONS TO COPYRIGHT INFRINGEMENT— SUBSTANTIAL SIMILARITY

As an initial matter, the MGA Parties object to this instruction on the grounds that it is not limited to the 16 registered drawings that the Court has determined to be a proper basis for Mattel's copyright infringement claims in this case. The MGA Parties also object to this instruction on the grounds that it represents Mattel's continuing attempt to avoid acknowledging the filtration analysis required under Ninth Circuit copyright principles. Instead of identifying the elements in the Bryant drawings that it claims are protectable – which is unquestionable Mattel's burden – Mattel disingenuously asserts that all of the elements in the sketches, including a combination thereof, are "original and protectable," and that the Court has so found as a matter of law. This is wrong. The Court actually held, consistent with Ninth Circuit precedent, that this case requires "analytically dissecting works into their components in order to determine whether some – or all – similarities are attributable to unprotectable elements, which must be filtered out of the analysis before a conclusion regarding substantial similarity is reached." July 24, 2008 Order at 2. Mattel must identify for the jury which elements in the 16 registered Bryant drawings (the only works on which an infringement finding ccan be based) it believes are protectable by copyright, and which are not. See, e.g., 17 U.S.C. §102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work"). Numerous aspects of the Bryant drawings are not entitled to protection and the Court has not held otherwise.

The MGA Parties further object to this instruction on the grounds that, unlike MGA's proposed instruction on the "extrinsic/intrinsic" test, Mattel's proposed instruction does

MATTEL'S THIRD AMENDED PROPOSED JURY INSTRUCTIONS FOR PHASE 1B—DISPUTED SET

1   not explain the analytical steps the jury must take in applying the legal test to determine

2   infringement and it does not provide any guidance as to how the jury is to determine

3   what should and should not be filtered from the Bryant drawings.  For example,

4   Mattel's proposed instruction does not explain that the "extrinsic" test requires that the

5   jury remove from infringement analysis those elements of the copyrighted work that are

6   not entitled to copyright protection, or that the party claiming infringement (Mattel)

7   cannot rely on any similarity in expression resulting from unprotectible elements for

8   copyright infringement.  Mattel's proposed instruction does not explain "analytic

9   dissection" (wherein the jury must isolate the elements of the copyrighted work and

10  analyze each one separately, excluding the other elements present in the work and the

11  combination of elements) or "filtering" (wherein the jury must filter out all of the

12  unprotected elements) aspects of the "extrinsic" test.  Mattel's proposed instruction also

13  does not provide the jury with any guidance as to when the jury can consider and rely

14  on expert testimony in connection with the "extrinsic" test and the "intrinsic" test.

15  Thus, Mattel's proposed instruction does not explain that the jury must determine what,

16  if any, protectable expression is present in each of the Bryant sketches, the legal

17  structure used to make this determination, the fact that the jury must limit its

18  comparison to the protected expression in a particular drawing to a particular Bratz doll

19  and, unless a sufficient amount of protected expression from a sketch was copied in the

20  Bratz dolls, Mattel's claim of copyright infringement must fail.  Compare Mattel's

21  proposed instruction with MGA Parties' Proposed Jury Instruction – Substantial

22  Similarity.

23

24  Mattel's assertion that Mattel must "establish that specific ideas and expressive

25  elements of the Bratz products that Mattel claims are infringing" is misleading.  As

26  stated above, ideas cannot infringe a copyright, because ideas are not protectible under

27  United States copyright law.  See, e.g., Satava v. Lowry, 323 F.3d 805, 812 (9th Cir.

28

1    2003) ("Only by vigorously policing the line between idea and expression can we

2    ensure both that artists receive due reward for their original creations and that proper

3    latitude is granted other artists to make use of ideas that properly belong to us all.")

4

5    The MGA Parties also object to this instruction on the grounds that it improperly uses

6    the concept of "picturization." The MGA Parties object to any reference to the term or

7    concept "picturization" as referring to an outdated concept used almost exclusively

8    historically to refer to the process of comparing an alleged infringing audio visual work

9    such as a film with a literary work.  See, e.g., Berkic v. Crichton, 761 F.2d 1289, 1292

10   (9th Cir. 1985); Cain v. Universal Pictures Co., 47 F. Supp. 1013, 1016 (C.D. Cal.

11   1942); see also Anderson v. Stallone, 1989 U.S. Dist. LEXIS 11109, at *35, 11

12   U.S.P.Q. 2d 1161 (C.D. Cal. Apr. 26, 1989).  Accord 4-13 Nimmer on Copyright §

13   13.03[E][2] (2008) (questioning the validity of the related "audience" test.).  Any

14   references to "picturization" are inappropriate, vague and ambiguous, and will only

15   confuse the jury with respect to the "total concept and feel" standard actually applied

16   under the intrinsic test.  See Lanard Toys, Ltd. v. Novelty, Inc., 511 F. Supp. 2d 1020,

17   1037–38 (C.D. Cal. 2007) (citing Litchfield v. Spielberg, 736 F.2d 1352, 1357 (9th Cir.

18   1984)).

19

20   Mattel's proposed instruction also does not instruct the jury that it should not consider

21   the unprotectible elements filtered out as part of the extrinsic test analysis in connection

22   with its determination under the "intrinsic" test, and it improperly describes the

23   "ordinary, reasonable audience" as girls between the ages of 6 and 12, when the target

24   audience for Bratz dolls is girls between the ages of 8 and 12.

25

26   The MGA Parties object to this instruction (and Mattel's other copyright

27   instructions) because it does not properly explain that the jury must consider

28

MATTEL'S THIRD AMENDED PROPOSED JURY INSTRUCTIONS FOR PHASE 1B—DISPUTED SET

1  separately each alleged infringing act and/or product.  Thus, the instruction would

2  mislead the jury by improperly suggesting that if any infringement at all is found, of

3  any of the copyrights at issue, Mattel should prevail as to the full scope of all

4  alleged infringements.

5

6  Finally, although MGA acknowledges (although it disagrees) that the Court held

7  that the Bryant drawings are entitled to "broad" protection under which

8  infringement should be determined based on the "substantially similar" test, the

9  MGA Parties also respectfully submit that the Court's ruling that "broad" protection

10  is proper for the Bryant drawings cannot be made without the benefit of the full

11  filtering analysis.   In addition, the Court's order does not clarify whether this

12  standard also applies to Mattel's "compilation" claims.  Settled case law establishes

13  that infringement of "compilations" should be determined based on the narrower

14  "virtual identity" standard.  See, e.g. Satava v. Lowry, 323 F.3d 805, 812 (9th Cir.

15  2003); Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1446-47 (9th Cir.

16  1994); Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 205 (9th Cir.

17  1989); Cosmos Jewelry Ltd. v. Po Sun Hon Co., 470 F. Supp. 2d 1072, 1082-84

18  (C.D. Cal. 2006); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1178 (C.D.

19  Cal. 2001).

20

21

22

23

24

25

26

27

28

-37-                        Case No. CV 04-9049 SGL (RNBx)
MATTEL'S THIRD AMENDED PROPOSED JURY INSTRUCTIONS FOR PHASE 1B—DISPUTED SET

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Defendants seek to relitigate through their objections issues they already litigated and on which they lost.  Their objections should be overruled.

First, defendants' contention that the jury should be instructed on the process of analytical dissection or filtration is incorrect.  That process is complex and confusing.  Here, there is no reason to confuse the jury with such instructions.  The Court has rejected defendants' repeated assertions that Bryant's designs are subject to only "thin" protection, and instead held, as defendants acknowledge, that they are subject to "broad" protection.  Hence, there is nothing to "filter out" when performing a substantial similarity analysis under the extrinsic test.  And there is no reason to instruct the jury on filtration.

Defendants fault Mattel for failing to identify for the jury the elements that it claims are protectable.  However, Mattel has always contended that Bryant's designs are <u>fully</u> protectable in all their elements.  It is defendants who have never identified any elements that actually are not protected.  Indeed, each claim defendants have made that an element is unprotected -- face, clothes, etc. -- has been rejected by the Court.

Indeed, that defendants' objections simply seek to relitigate the Court's finding that Bryant's drawings are original works subject to broad protection is clear.  Defendants' continue to seek a "virtual identity" instruction based on the alleged limited protectability of the works, which has been rejected.  The Court specifically found that Bryant's drawings are not like the works in *Satava* that were deemed subject to "thin" protection against virtual copying only.  *See* July 24, 2008 Order, at 4-5.  Rather, as defendants acknowledge, the Court found that they are subject to "broad" protection.  Moreover, defendants are estopped from asserting that the drawings are subject only to thin copyright protection because defendants

successfully contended just the opposite in suing for infringement of the drawings in the courts of Hong Kong and in the United States.  *See* Mattel Reply Mem. ISO Summary Judgment at 11.  Mattel is aware of at least two instances in which MGA has done this.  In *MGA Entm't., Inc. v. Multitoy, Inc. et al.,* Case No. CV04-2524 CBM (CWx), MGA Entertainment, Inc. ("MGA") brought claims of copyright and trademark infringement, among other claims, against defendants for producing and selling dolls that infringed of the copyrights in Carter Bryant's two dimensional BRATZ drawings.  *See e.g.*, Complaint ¶ 7 and M0078574-90.  *See generally* ¶¶ 2-20, 31-37.  MGA made similar claims in the *Cityworld* matter that MGA filed in Hong Kong, wherein Isaac Larian signed a sworn affidavit that MGA claimed that defendants' dolls infringed the copyrights in Bryant's Bratz drawings.

As Mattel has shown, and defendants have never disputed, the determination of elements of a work which are protectable is a question of law for the Court, not for the jury.  *See*, *e.g.*, *Newton v. Diamond*, 204 F. Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of elements in a copyrighted work is a question of law."); *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve findings of fact, but the issue of protectibility/nonprotectibility is an issue of law.); *Coston v. Product Movers*, 1990 WL 56516 at *3 (E.D. Pa., 1990) ("The question of which aspects of plaintiffs' work are protectible expression as opposed to unprotectible idea is an issue of law."); *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 2005 WL 468496 at *2 (D. Del. 2005) (holding that while a finding of copyright infringement may involve questions of fact, the protectability of copyrighted material is a question of law); *Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*, 932 F. Supp. 220, 225 (N.D. Ill 1996) (the issue of whether a work is "copyrightable is a question of law," and the "jury has nothing to do with this subject."); *ADA v. Delta Dental Plans Ass'n*, 1996 U.S. Dist. LEXIS 5809 at *19 n. 15 (N.D. Ill. 1996) (although copyrightability analysis

1  necessarily requires a court to consider some facts surrounding the works at issue,

2  the inquiry "is far more heavily loaded with policy implications than most other

3  standards," making it appropriate for determination by a court instead of a jury).

4  The Court has, as required, determined that Bryant's designs are wholly original and

5  subject to broad protection.  Defendants have never identified an element of the

6  works (face, clothing, design, etc.) that is not protectable.  To instruct the jury on

7  filtration and dissection in the face of this would simply confuse it.

8       With respect to the "compilation" language in the objection, defendants again

9  have not presented any evidence that any element of Bryant's drawings is not

10 original and/or creative.  Moreover, despite defendants' assertion to the contrary, the

11 Court already rejected defendants' argument that Bryant's drawings are entitled to

12 less-than-full protection that protects only against "virtual" copying.  *See* July 24,

13 2008 Order, at 4-5 (rejecting defendants' argument that Bryant's drawings are like

14 the jellyfish sculptures found to be compilations in *Satava*).  Accordingly, there is

15 no basis for defendants to continue to assert that the Bryant drawings are subject

16 only to protection against virtual copying.  And in any event, if defendants are

17 permitted to introduce evidence on this issue at trial, Mattel is entitled to an

18 instruction explaining that an original combination of pre-existing elements is

19 protectable under the Copyright Act.  Defendants do not dispute that this is a correct

20 statement of law.

21      Defendants' other objections also lack merit.  Mattel's proposed instruction

22 will not mislead the jury, as defendants suggest, with respect to damages awardable

23 based upon the scope of infringement.  The instruction appropriately explains the

24 concept of substantial similarity in simple, clear terms.  Moreover, defendants'

25 objection that the jury must consider each "infringing act" and "product" separately

26 misstates the law.  *See* Mattel's Statement re 17.4 Copyright Infringement—

27 Ownership and Copying, *supra*, at 15-16 (discussing *Castle Rock*).

28

MATTEL'S THIRD AMENDED PROPOSED JURY INSTRUCTIONS FOR PHASE 1B—DISPUTED SET

1    Defendants' objection to the term "picturization" is baseless.  Even though

2   defendants claim that the term is "outdated," they do not cite any case overruling the

3   authorities that use the term.  Indeed, the term is consistent with the "total concept

4   and feel" test for infringement.  *Lanard Toys, Ltd. v. Novelty, Inc.*, 511 F. Supp. 2d

5   1020, 1037–38 (C.D. Cal. 2007).  Nor do defendants cite any authority for the

6   proposition that the use of the term is improper in the context of visual art, as

7   opposed to literary or audiovisual works.

8    Defendants' objection to this instruction based on its contention that Mattel's

9   copyright claim is limited to the 16 Bryant drawings that Mattel has registered with

10   the Copyright office should be overruled.  Mattel's claim encompasses all of the

11   Bratz-related works the jury found that Mattel owns in Phase 1A, whether or not

12   those works were previously registered, as discussed above.  *See* Mattel's Statement

13   re 17.1 Copyright—Defined, *supra*, at 9-10.

14    Last, it would be erroneous as a matter of law and unnecessary to modify

15   Mattel's proposed instruction as suggested by defendants to state that the extrinsic

16   test requires filtering out of unprotectable ideas.  The proposed instruction states that

17   the extrinsic test is limited to "specific expressive elements."  Other proposed

18   instructions state that the Copyright Act does not protect ideas.  And, in any case,

19   similarities in specific ideas must be considered under the extrinsic test.  *See, e.g.*,

20   *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) (holding that, as part of the

21   extrinsic test, one must "consider[] whether two works share a similarity of *ideas*

22   and expression") (emphasis added); *Kouf v. Walt Disney Pictures & Television*, 16

23   F.3d 1042, 1045 (9th Cir. 1994) (same). Defendants' contention that alleged

24   unprotected elements should be filtered out as part of the intrinsic test is also

25   contrary to settled law.  The Ninth Circuit has consistently held that "[a]nalytic

26   dissection ... is not appropriate under [the intrinsic] test because it distracts a

27   reasonable observer from a comparison of the total concept and feel of the works."

28

1  *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 208 (9th Cir. 1988).  *See also*

2  *Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1449 (9th Cir. 1988) ("Although analytic

3  dissection and expert testimony are appropriate under the extrinsic test, they are not

4  appropriate under the intrinsic test.").

# MATTEL'S SPECIAL JURY INSTRUCTION NO. ___

## COPYRIGHT INFRINGEMENT—ORIGINALITY[1]

Your first task in assessing substantial similarity is to decide which parts of Carter Bryant's works are original.  An original work may include or incorporate elements inspired by prior works.  The original parts of the work so inspired are the parts created:

    1.    Independently by the work's creator; and

    2.    By use of at least some minimal creativity.

In copyright law, the "original element" of a work need not be new or novel.  Originality means "little more than a prohibition of actual copying."  The required level of originality is "minimal."

**Authority:**  9th Cir. Civ. Jury Instr. 17.12 (2007); *CDN, Inc. v. Kapes*, 197 F.3d 1256, 1259-60 (9th Cir. 1999); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1163 n.5 (9th Cir. 1977).

---

[1]   Mattel submits that it is for the Court to determine what elements of Carter Bryant's Bratz works, or combinations thereof, are original.  *See, e.g.*, *Newton v. Diamond*, 204 F. Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of elements in a copyrighted work is a question of law.");  *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve findings of fact, but the issue of protectibility/nonprotectibility is an issue of law.); *Coston v. Product Movers*, 1990 WL 56516 at *3 (E.D. Pa. 1990) ("The question of which aspects of plaintiffs' work are protectible expression as opposed to unprotectible idea is an issue of law."); *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 2005 WL 468496 at *2 (D. Del. 2005) (holding that while a finding of copyright infringement may involve questions of fact, the protectability of copyrighted material is a question of law).  If, however, an instruction on originality is to be given to the jury, Mattel respectfully requests that this proposed instruction be given.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEFENDANT'S OBJECTIONS TO COPYRIGHT INFRINGEMENT— ORIGINALITY

The MGA Parties object to this instruction on the grounds that it is an incomplete and inaccurate statement of 9th Circuit Civil Model Jury Instruction 17.12, it is put out of order to confuse the jury concerning Mattel's burden of proving infringement, and it includes additional inaccurate statements that are not part of the model instruction. Moreover, this instruction is simply another attempt by Mattel to obscure the "extrinsic" and "intrinsic" tests and to confuse the jury as to the proper meaning and application of these tests.  In advising the jurors that their "first task" related to substantial similarity is "to decide which parts of Carter Bryant's works are original," there is no explanation of analytic dissection and filtering, and this will mislead and confuse the jury.  This instruction is also unnecessary and will only serve to confuse the jury since the MGA Parties do not dispute that Bryant's sketches satisfy the low "originality" threshold necessary to copyrightability. In addition to being unnecessary, the MGA Parties further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

The MGA Parties further note that the footnote in Mattel's proposed copyright instruction is moot in light of the Court's July 24, 2008 Order, which determined that "[t]he relevant test to be employed on this issue in this case – and upon which the jury will be instructed – is the test regarding the extrinsic and intrinsic analyses set forth above." Based on the Court's Order, the jury will determine what elements are filtered from the 16 registered Bryant drawings via analytic dissection and filtering. Based on

1  its analytic dissection and filtering, the jury will also determine whether the Bryant

2  drawings are only entitled to protection as a "compilation."

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

This proposed instruction should not be necessary.  The question of protectability is a question for the Court and has been decided.  Defendants' contention that the jury should be instructed on the process of analytical dissection or filtration is incorrect because, in this case, there is nothing to filter.  Indeed, defendants' contention that the jury could find that the designs are subject only to "thin" protection as compilations or otherwise shows that their filtering and dissection assertions are nothing more than an attempted end-run around the Court's rulings.

However, if the Court instructs the jury on filtration/dissection, Mattel is entitled to a jury instruction on originality because defendants have raised the issue by contending that Bryant based his Bratz drawings on prior art.  As required by the Court, Mattel's proposed instruction mirrors the language of the Ninth Circuit Model Instruction.  Defendants do not present any legitimate reason for the Court to deviate from the Model Instruction.

Defendants complain that this proposed instruction is "unnecessary" because they do not challenge the "originality" of Bryant's drawings, but the instruction provides far more.  It also makes clear that any *parts* of the drawings not *copied* from a prior work are original and protectable.  This correct and on-point statement of law must be given.

The proposed instruction will not mislead the jury, as defendants suggest, with respect to damages awardable based upon the scope of infringement.  Defendants' objection that the jury must consider each "infringing act" and "product" separately misstates the law.  Essentially, defendants contend that a Bratz doll would not infringe if defendants copied the head from one of Bryant's drawings and the doll's body from another drawing.  That is not the law.  *See* Mattel's

1   Statement re 17.4 Copyright Infringement—Ownership and Copying, *supra*, at 15-

2   16 (discussing *Castle Rock*).

3          Defendants' objection to this instruction is erroneous to the extent it indicates

4   that Mattel's copyright claim is limited to "the 16 Bryant drawings that Mattel has

5   registered with the Copyright office" should be overruled.  Mattel's claim

6   encompasses all of the Bratz-related works the jury found that Mattel owns in Phase

7   1A, whether or not those works were previously registered, as discussed above.  *See*

8   Mattel's Statement re 17.1 Copyright—Defined, *supra*, at 9-10.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MATTEL'S SPECIAL JURY INSTRUCTION NO.**

**ORIGINALITY—COMBINATION OF UNPROTECTABLE ELEMENTS[2]**

     If you find that any elements of Mr. Bryant's drawings are not original, you must decide whether the combination of such elements is original.  A combination of individual elements not eligible for copyright protection is eligible for copyright protection if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.

     The fact that the Bratz dolls may have features similar to other dolls or other preexisting works does not mean that they do not infringe on the works in which Mattel claims ownership.  If you find that the combination of features in the drawings in which Mattel claims ownership amounts to original expression, you may find the dolls to be infringing if their combination of features is substantially similar to the drawings.

---

[2]   Mattel submits that it is for the Court to determine what elements of Carter Bryant's Bratz works, or combinations thereof, are original.  *See, e.g.*, *Newton v. Diamond*, 204 F. Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of elements in a copyrighted work is a question of law.");  *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve findings of fact, but the issue of protectibility/nonprotectibility is an issue of law.); *Coston v. Product Movers*, 1990 WL 56516 at *3 (E.D. Pa. 1990) ("The question of which aspects of plaintiffs' work are protectible expression as opposed to unprotectible idea is an issue of law."); *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 2005 WL 468496 at *2 (D. Del. 2005) (holding that while a finding of copyright infringement may involve questions of fact, the protectability of copyrighted material is a question of law).  If, however, an instruction on originality is to be given to the jury, Mattel respectfully requests that this proposed instruction be given.

**Authority:**  *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 135 (2d Cir. 2004) ("Even if the record had shown that many dolls possess upturned noses, bow lips, and wide-spread eyes, it would not follow that each such doll – assuming it was independently created and not copied from others – would not enjoy protection from copying."); *Dollcraft Indus., Ltd. v. Well-Made Toy Mfg. Co.*, 479 F. Supp. 1105, 1114-15 (E.D.N.Y. 1978) ("[T]hat plaintiff's toys contained features separately found on other dolls does not render their copyrights invalid. Rather, the original combination of these features into new dolls makes the dolls copyrightable."); *Fisher-Price Toys v. My-Toy Co.*, 385 F. Supp. 218, 219-20 (S.D.N.Y. 1974) (same); *cf. Swirsky v. Carey*, 376 F.3d 841, 848 (9th Cir. 2004).

# DEFENDANTS' OBJECTIONS TO ORIGINALITY—COMBINATION OF UNPROTECTABLE ELEMENTS

The MGA Parties object to this proposed instruction on the grounds that, in order to invoke this doctrine, Mattel must identify the specific unprotectible elements on which it bases this assertion.  See Todd v. Montana Silversmiths, Inc., 379 F. Supp. 2d 1110, 1112-13 (D. Col. 2005); see also George S. Chen Corp. v. Cadona Int'l, Inc., 2008 WL 152651, at *1 (9th Cir. Jan. 17, 2008) (unpubl. op.) (plaintiff points to "no elements that, considered together, have a sufficient quantum of originality for copyright protection").  See also Ninth Circuit Manual Of Model Jury Instructions 17.14 (2007). Discovery is closed.  Mattel did not identify in response to MGA's contention interrogatories, or otherwise, any combination of individual elements not eligible for copyright protection that it contends warrant copyright protection as a compilation or combinations, and it would be improper and prejudicial to allow Mattel to proceed under this theory of copyright infringement.  Mattel's failure to identify unprotectible elements it contends warrant compilation protection is not inadvertent; rather, it was an intentional strategy designed to avoid the need for Mattel to concede that many of the elements in the Bryant drawings are unprotectible and must be disregarded under the proper analytic dissection and filtering test. This instruction also improperly suggests that the jury could find infringement by combining different elements of different works.

Mattel's first sentence in this instruction is misleading and not supported by any case law.  It is not the responsibility of the jury to decide that the combination doctrine is applicable.  Rather, it is Mattel's responsibility to raise the issue and identify what it claims is the protectible selection and arrangement that warrants copyright protection.

1   The MGA Parties also object to this instruction on the grounds that it fails to instruct

2   the jury that a claim of copyright infringement based on a combination of unprotectible

3   elements must meet a very high standard to be protectible.  See, e.g. Satava v. Lowry,

4   323 F.3d 805, 811 (9th Cir. 2003) ("we hold today that a combination of unprotectable

5   elements is eligible for copyright protection only if those elements are numerous

6   enough and their selection and arrangement original enough that their combination

7   constitutes an original work of authorship").  This proposed instruction is also defective

8   since it fails to instruct the jury that protection for a combination of unprotectible

9   elements is only entitled to the narrower "virtual identity" standard, an issue not

10  specifically addressed in the Court's orders.  See, e.g., Mattel v. Goldberger, 365 F.3d

11  133, 135-6 (2d Cir. 2004); Satava v. Lowry, 323 F.3d 805, 812 (9th Cir. 2003); Apple

12  Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1446-47 (9th Cir. 1994); Harper

13  House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 205 (9th Cir. 1989); Cosmos

14  Jewelry Ltd. v. Po Sun Hon Co., 470 F. Supp. 2d 1072, 1082-84 (C.D. Cal. 2006);

15  Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1178 (C.D. Cal. 2001).

16

17  The MGA Parties further object to this instruction (and Mattel's other copyright

18  instructions) because it does not properly explain that the jury must consider separately

19  each alleged infringing act and/or product.  Thus, the instruction would mislead the jury

20  by suggesting that if any infringement at all is found, of any of the copyrights at issue,

21  Mattel should prevail as to the full scope of all alleged infringement.

22

23

24

25

26

27

28

MATTEL'S THIRD AMENDED PROPOSED JURY INSTRUCTIONS FOR PHASE 1B—DISPUTED SET

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

As with this prior instruction regarding Originality, this instruction should not be necessary.  The Court has already found that Bryant's designs are far more than a combination of unprotected elements.  They are broadly-protected, original expressions of the human form.  However, should the Court instruct the jury on filtration/dissection, which it should not because defendants have not identified a single unprotected element of the works, this instruction is necessary.

Defendants fault Mattel for not identifying unprotected elements.  Mattel's position, however, has been consistent: every element of the Bratz drawings is original, expressive and protectable, but even if they were not, their combination is.  Defendants offer no evidence to support their unfounded assertion that Mattel has sandbagged them in any way.

Moreover, defendants ignore that creative expression is original even if "inspired by" other works, and that elements are protectable so long as they are not slavishly copied.  *See, e.g.*, *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 136 (2d Cir. 2004)  ("One artist's version of a doll face with upturned nose, bow lips, and widely spaced eyes will be irresistible to an eight-year old collector. … We can surmise that in the highly competitive, billion-dollar doll industry, getting the doll's face and expression exactly right is crucial to success.").

Defendants also ignore that creative *compilations* of non-original components are subject to <u>full</u> protection under copyright law.  *See Dollcraft Indus., Ltd. v. Well-Made Toy Mfg. Co.*, 479 F. Supp. 1105, 1114-15 (E.D.N.Y. 1978).  Defendants' argument that such compilations are entitled to "thin" copyright protection is without merit because their authorities address not creative works, such as dolls or drawings, but rather utilitarian objects such as jewelry or computer interfaces where the range of expression is limited.  The millenia-long history of visual art shows that

the range of creative expression in visual works is not limited, as it may be in the case of computer software or factual works.  Defendants' reliance on *Mattel v. Goldberger Doll Mfg. Co*. is puzzling as that case does not discuss protectability of original compilations of uncopyrightable elements.  Moreover, the Court has already rejected defendants' argument that Bryant's drawings are subject to only "thin" copyright protection against virtual copying.  *See* July 24, 2008 Order, at 4-5.

Defendants' assertion that the standard for a compilation is "very high" is also erroneous.  As defendants' own quote shows, a work need only constitute an "original work of authorship" to be protected, including as a compilation.  Here, defendants have admitted, in responses to requests for admission, that many of Bryant's drawings are original works of authorship.  *See* MGA Entertainment, Inc.'s Third Supplemental Responses to Mattel, Inc.'s Fifth Set of Requests for Admission, dated November 30, 2007, at 10-12 (responding to Request for Admission Nos. 9 and 10).

Defendants' objection that the jury must consider each "infringing act" and "product" separately misstates the law.  Essentially, defendants contend that a Bratz doll would not infringe if defendants copied the head from one of Bryant's drawings and the doll's body from another drawing.  That is not the law.  *See* Mattel's Statement re 17.4 Copyright Infringement—Ownership and Copying, *supra*, at 15-16 (discussing *Castle Rock*).

## MATTEL'S SPECIAL JURY INSTRUCTION NO.  
## PRESUMPTION OF ORIGINALITY

A copyright registration obtained within five years of the work's publication creates a presumption of the validity of the copyright and originality of the work. This presumption shifts the burden of proof to the defendants to demonstrate why the works at issue are not copyrightable.  In this case, it is undisputed that both Mattel and MGA have obtained copyright registrations of certain of Carter Bryant's Bratz drawings.

**Authority:**  17 U.S.C. § 410(c); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1019 (9th Cir. 1985) ("[R]egistration by the Copyright Office is prima facie evidence of copyrightability.  This presumption shifts the burden of proof to the challenging party to demonstrate why the item in question is not copyrightable.") (citations omitted); *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989) ("The district court was entitled to rely on the copyright registration as prima facie evidence of originality.").

## DEFENDANTS' OBJECTIONS TO PRESUMPTION OF ORIGINALITY

The MGA Parties object to this instruction on the grounds that there is no dispute that the Bryant drawings contain sufficient originality to meet the low threshold of copyrightability. This instruction is therefore unnecessary and can only confuse the jury.  The MGA Parties also object to this instruction to the extent that it is placed out of order to confuse the jury and improperly and inaccurately deviates from 9th Circuit Civil Model Jury Instruction 17.12.

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3         Mattel is entitled to a jury instruction on originality because defendants have

4    raised the issue by contending that Bryant based his Bratz drawings on prior art.  In

5    any event, this brief instruction merely sets out the law on the presumption of

6    copyrightability and originality, which cannot possibly confuse the jury.  Notably,

7    defendants do not dispute this law.  To the extent the Court permits the jury to

8    consider questions of originality and protectability, this instruction should be given.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___

## SUBSTANTIAL SIMILARITY—THE "INVERSE RATIO RULE"

If Mattel shows that the defendants had a high degree of access to the Bratz drawings that Mattel owns, you should view Mattel's burden of proving substantial similarity under the extrinsic test as lowered.

**Authority:** *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) ("Under our case law, substantial similarity is inextricably linked to the issue of access. In what is known as the 'inverse ratio rule,' we 'require a lower standard of proof of substantial similarity when a high degree of access is shown.'"); *Shaw v. Lindheim*, 919 F.2d 1353, 1361-62 (9th Cir. 1990); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977) (high "degree of access justifies a lower standard of proof to show substantial similarity"); *Smith v. Jackson*, 84 F.3d 1213, 1220-21 (9th Cir. 1996).

-57-

# DEFENDANTS' OBJECTIONS TO SUBSTANTIAL SIMILARITY—THE "INVERSE RATIO RULE"

The MGA Parties object to this instruction on the grounds that it incorrectly states that the "inverse ratio" rule lowers Mattel's burden in connection with jury's determination of "legal" copying.  The "inverse ratio" rule, as correctly applied, only relates to the "factual" copying issue.  See, e.g., BensBargains.Net v. XPBargains.Com, 2007 U.S. Dist. LEXIS 60544, at **8–10 (S.D. Cal. Aug. 16, 2007) ("Plaintiff confuses the issues of copying as a factual matter and actionable copying. The inverse ratio rule applies to the issue of copying as a factual matter only"; "Thus, Plaintiff must prove the existence of a triable issue of material fact with respect to substantial similarity, regardless of how strong its evidence is that Defendants in fact copied from Chui's compilations."); Zella v. E.W. Scripps Co., 529 F. Supp. 2d 1124 (C.D. Cal. 2007) ("Even if a defendant concedes use of a plaintiff's work, the copyright claim still fails absent substantial similarity."); Identity Arts v. Best Buy Enter. Serv. Inc., No. C 05-4656 PJH, No. C 06-1631 PJH, 2007 U.S. Dist. LEXIS 32060 (N.D. Cal. April 18, 2007) ("no amount of proof of access will suffice to show copying if there are no similarities") (citing Funky Films, Inc. v. Time Warner Entm't., Co., L.P., 462 F.3d 1072, 1081 (9th Cir. 2006)). As explained by Professor Nimmer:

> The flawed proposition that powerful proof of access can substitute for demonstration of the requisite degree of substantial similarity is sometimes labeled the "'Inverse Ratio Rule." . . .

> One must hasten to add that there is nothing wrong in having access to one's competitor's products.  Neither may a showing of substantial similarity ever be avoided. . . .

> Proof of access can logically aid in showing copying as a factual matter--added to the probative similarity that exists between two works, it can

bolster the proof that one was in fact derived from the other.  But access logically exerts no impact on copying as a legal matter; no matter how steeped in plaintiff's work defendant may have been, if the resulting product is non-actionable as a matter of law, then the absence of substantial similarity that must underlie every successful claim still dooms the infringement suit.

4-13 <u>Nimmer on Copyright</u> §§ 13.03 [D] (2008).  <u>See also id</u>. 13-9, 13-10 & 13-13 ("'Not all copying, however is copyright infringement'. . . . As Feist illustrates, copying as a factual matter is insufficient, if improper appropriation is lacking." "Copying as a legal proposition must still be established; hence, substantial similarity remains an indispensable element of plaintiff's proof, even in cases (such as <u>Feist</u>) in which defendant does not contest factual copying.").  As similarly stated by Professor Patry:

The inverse ratio theory confuses fundamental principles of infringement analysis: access is relevant only in establishing the act of copying, not in establishing the degree thereof.  Once copying is established, access is irrelevant and the inquiry shifts to the final stage of the infringement analysis, material appropriation.  At that stage, substantial similarity is the sole issue. Substantial similarity is an objective determination, made by comparing the two works from the perspective of the ordinary observer. This comparison is completely unaffected by the defendant's degree of access.

<u>Patry on Copyright</u> §9:91.  <u>See also</u> <u>Feist</u>, 499 U.S. at 361 ("Not all copying . . . is copyright infringement.").

Proper application of the "inverse ratio rule" is particularly important here, where MGA believed it owned the Bryant drawings at the time the Bratz dolls were made and access is conceded.  To the extent that the jury should be instructed at all concerning the

MATTEL'S THIRD AMENDED PROPOSED JURY INSTRUCTIONS FOR PHASE 1B—DISPUTED SET

1   "inverse ratio rule," it is imperative that the instruction be made in connection with

2   "factual" copying only and that the jury be clearly instructed that the rule does not

3   lessen in any way Mattel's burden of providing substantial similarity in connection with

4   the legal copying aspect of the jury's infringement assessment.[3]

5   Mattel's suggestion that the "inverse ratio rule" applies to anything other than the

6   "factual copying" prong of determining copyright infringement is undermined by the

7   purpose of United States copyright law.   By purporting to lower the burden of

8   "substantial similarity" and/or limiting the analytic dissection required under the

9   extrinsic test of copyright infringement, the "rule"" would over-extend an individual

10  artist's monopoly at the expense of the copyright law's constitutional goals.  As recently

11  stated in <u>Love v. The Mail On Sunday</u>, 2007 U.S. Dist. LEXIS 97061 (C.D. Cal. Sept.

12  7, 2007):

13          'The primary objective of copyright is not to reward the labor of authors,

14          but '[t]o promote the Progress of Science and useful Arts.'  To this end,

15          copyright assures authors the right to their original expression, but

16          encourages others to build freely upon the ideas and information

17          conveyed by a work.'  (citations omitted).   Because copyright law

18          ultimately serves the purpose of enriching the general public through

19          access to creative works, it is peculiarly important that the boundaries of

20          copyright law be demarcated as clearly as possible.

21

22  _____

23          [3]      The inconsistent and flawed application of the "ratio" is revealed by the

24  fact that no Ninth Circuit court has ever purported to apply the logical counterpart to
    the standard "rule" as stated – that the lower the degree of access, the higher degree

25  of substantial similarity that is required in order to find infringement.  <u>Three Boys</u>

26  <u>Music Corp. v. Bolton</u>, 212 F.3d 477, 485 (9th Cir. 2000) ("We have never held,
    however, that the inverse ratio rule says a weak showing of access requires a

27  stronger showing of substantial similarity.").

28

1   Id. at *17 (citing Fogerty v. Fantasy, Inc., 510 U.S. 517, 527 (1994)).  See also Feist,

2   499 U.S. at 349-50.   Artists are thus encouraged to build on prior works and reducing

3   the standard for infringement based merely on access would clearly undermine this

4   paramount purpose of the Copyright Act.

5

6   The MGA Parties also object to this instruction because it fails to ensure that the jury

7   distinguishes among the defendants and makes appropriate findings with respect to

8   each defendant.  The MGA Parties further object to this instruction (and Mattel's other

9   copyright instructions) because it does not properly explain that the jury must consider

10  separately each alleged infringing act and/or product.   Thus, the instruction would

11  mislead the jury by suggesting that if any infringement at all is found, of any of the

12  copyrights at issue, Mattel should prevail as to the full scope of all alleged

13  infringement.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Defendants misstate settled law when they oppose this instruction.  Though defendants may not like it, the inverse ratio rule is controlling law in the Ninth Circuit and that the jury should be instructed on this rule.  *See, e.g.*, *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) ("Under our case law, substantial similarity is inextricably linked to the issue of access.  In what is known as the 'inverse ratio rule,' we require a lower standard of proof of substantial similarity when a high degree of access is shown.") (quotation marks and citation omitted).  In fact, the Court already held that the inverse ratio rule applies.  *See* July 24, 2008 Order, at 2-3 ("In applying both the extrinsic and intrinsic tests, the Court must be mindful of the so-called 'inverse ratio rule' which states that where, as here, a high degree of access to the original works is shown, the burden to show substantial similarity is reduced.").

Defendants contend that the inverse ratio rule only goes to "factual" copying and not "legal" copying.  However, the inverse ratio rule applies to the test for infringement, *Smith v. Jackson*, 84 F.3d 1213, 1220 (9th Cir. 1996), and thus by definition pertains to "legal" copying (i.e., infringement of protectable material).  Further, the purported distinction between "legal" and "factual" copying is unnecessary and confusing.  Factual copying encompasses reproduction of both protected and unprotected elements, while "legal" copying is copyright infringement (i.e., unauthorized copying of protected expression).  Mattel will establish that defendants infringed its copyrights in Bryant's designs by demonstrating substantial similarity of expression.  The substantial similarity standard embodies the notion of "legal" copying.  The inverse ratio rule applies to access and substantial similarity -- the test for legal copying.  This entire "factual" versus "legal" copying issue is a red herring.  There is no basis to instruct the jury on the issue of "factual" copying.  The

1    inverse ratio rule applies to legal copying in the Ninth Circuit, and the jury should

2    be instructed on it.  *BensBargains* merely holds that admitted access does not excuse

3    plaintiff from having to establish copying of protected expression, as opposed to

4    unprotectable ideas.  That is immaterial.

5         The proposed instruction will not mislead the jury, as defendants suggest,

6    with respect to damages awardable based upon the scope of infringement.  The

7    instruction appropriately explains the concepts of access and substantial similarity in

8    simple, clear terms, consistent with the Model Instruction.  Moreover, defendants'

9    objection that the jury must consider each "infringing act" and "product" separately

10   misstates the law.  Essentially, defendants contend that a Bratz doll would not

11   infringe if defendants copied the head from one of Bryant's drawings and the doll's

12   body from another drawing.  That is not the law.  *See* Mattel's Statement re 17.4

13   Copyright Infringement—Ownership and Copying, *supra*, at 15-16 (discussing

14   *Castle Rock*).

15        Defendants' objection to this instruction based on its contention that Mattel's

16   copyright claim is limited to "the 16 Bryant drawings that Mattel has registered with

17   the Copyright office" should be overruled.  Mattel's claim encompasses all of the

18   Bratz-related works the jury found that Mattel owns in Phase 1A, whether or not

19   those works were previously registered, as discussed above.  *See* Mattel's Statement

20   re 17.1 Copyright—Defined, *supra*, at 9-10.

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MATTEL'S SPECIAL JURY INSTRUCTION NO.＿

## COPYRIGHTABILITY OF CHARACTERS

Copyright law protects distinctive characters.  Defendants' works infringe Mattel's copyrights if they copy recognizable and distinctive elements of the personalities of the characters portrayed in Carter Bryant's drawings.

**Authority:** *Olson v. National Broadcasting Co., Inc.*, 855 F.2d 1446, 1452 (9th Cir. 1988) (distinctive characters can be protected by copyright); *Warner Bros. Inc. v. American Broadcasting Companies, Inc.*, 720 F.2d 231, 235 (2d Cir. 1983) ("Plaintiffs own the copyright in various works embodying the character of Superman and have thereby acquired copyright protection for the character itself."); *Walt Disney Productions v. Air Pirate*s, 581 F.2d 751, 755 (9th Cir. 1978), cert. denied, 439 U.S. 1132 (1979) (distinctive characters, especially if they are expressed in visual form, are protectable by copyright); *Anderson v. Stallone*, 1989 Copr. L. Dec. P 26427, 1989 WL 206431 (C.D. Cal. 1989) (copyright protection extended to the Rocky character); *Toho Co., Ltd. v. William Morrow and Co., Inc.*, 33 F. Supp. 2d 1206, 1215 (C.D. Cal. 1998) (Godzilla); *Metro-Goldwyn-Mayer, Inc. v. American Honda Motor Co., Inc.*, 900 F. Supp. 1287, 1296 (C.D. Cal. 1995) (James Bond).

# DEFENDANTS' OBJECTIONS TO COPYRIGHTABILITY OF CHARACTERS

Mattel's "copyrightability of characters" jury instruction must be rejected for at least two reasons. First, Mattel's attempt to inject this new legal theory is untimely. When the instruction was first proposed, it was already far too late in these proceedings, on the eve of trial and well after (i) the close of discovery, (ii) the submission of expert reports, and (iii) the due dates for all motion for summary judgment and motion in limine briefs, for Mattel to try to interject a new legal theory upon which to base its copyright infringement claims. Second, Mattel's new legal theory is in any event legally insufficient here and its proposed instruction misstates the law.

## UNTIMELY ASSERTION OF NEW LEGAL THEORY

Mattel's "character" jury instruction was only filed as a supplemental jury instruction on May 13, 2008, and it states that MGA's "works infringe Mattel's copyrights if they copy recognizable and distinctive elements of the <u>personalities of the characters</u> portrayed in Carter Bryant's drawings." (Emphasis added.)

On March 5, 2008, Mattel submitted a supplemental response to MGA's Interrogatory No. 31, which required that Mattel: "STATE THE COMPLETE FACTUAL BASIS FOR [MATTEL'S] CONTENTION that any BRATZ doll is substantially similar to, a copy or a derivative of BRATZ DESIGNS created by Carter Bryant on or before October 19, 2000." Relying heavily on the graphic analysis done by its expert Lee Loetz, Mattel responded that there is a "**visual consistency** from Bryant's sketches, to the first wave of dolls, up through the later waves of Bratz dolls." Mattel's Supplemental Objections and Responses to MGA's 2nd Set of Interrogatories (dated March 5, 2008) at 27 (emphasis added). Mattel then <u>inter alia</u> pointed out comparisons

1   between the sketches and the dolls with regards to body proportions, posture, facial

2   features, the eyes, eye makeup, lips, hair styling, clothing, accessories, and footwear.

3   Id. at 28-30.  Like its prior response to this interrogatory, Mattel did not even suggest

4   that its copyright infringement claims were based on any "personality" or "character"

5   comparisons.

6

7   Mattel also did not raise the "personalities" or "character" of the figures in the Bryant

8   sketches or the Bratz dolls in its expert reports or in its summary judgment motion

9   papers.  Rather, Mattel's experts and its summary judgment motion relied **solely** on the

10  supposed "substantial similarity" between the visual aspects of the Bryant sketches and

11  the Bratz dolls.  See, e.g., Expert Report of Lee Loetz; Rebuttal Expert Report of Lee

12  Loetz; Mattel's Motion for Partial Summary Judgment (dated March 7, 2008) at 15-22;

13  Mattel's Reply In Further Support Of Its Motion for Partial Summary Judgment (dated

14  April 1, 2008) at 10 ("Mattel set forth … a comprehensive, **graphic** analysis of the

15  dolls and the drawings and explained why common sense and applicable precedent

16  compels a conclusion of substantial similarity here") (emphasis added).  Mattel's

17  failure to timely raise its new "personalities/character" theory precluded MGA from

18  filing for summary judgment on this legally deficient theory.  See, e.g., Rice v. Fox

19  Broadcasting Co., 330 F.3d 1170, 1175 (9th Cir. 2003) (affirming district court's grant

20  of summary judgment because the alleged "character" at issue was not "sufficiently

21  delineated to warrant copyright protection").

22

23  ## **LEGALLY INSUFFICIENT LEGAL THEORY**

24  Even if Mattel had not waived this new theory of liability, the figures illustrated in

25  Carter Bryant's sketches fall far short of the standard for copyrightability as

26  "characters."   As the Ninth Circuit has explained, "characters are ordinarily not

27  afforded copyright protection" apart from the copyrighted work, unless they are

28

"especially distinctive" or comprise "the story being told." Rice v. Fox Broadcasting Co., 330 F.3d 1170, 1175 (9th Cir. 2003). Thus, "[c]haracters that have received copyright protection have displayed consistent, widely identifiable traits." Id. (emphasis added). That test cannot be satisfied here, given that Bryant's sketches were just that, sketches of figures that, as of September – October, 2000, had not been transformed into marketable items, much less actually distributed publicly. Thus, the Bryant sketch figures could not possibly have displayed "consistent, widely identifiable traits."[4]

The holding in Olson v. National Broadcasting Co., Inc., 855 F.2d 1446 (9th Cir. 1988), the first decision cited by Mattel, is particularly instructive. In Olson, the court rejected plaintiff's copyright claim based on "lightly sketched characters" which were "depicted only by three-or four-line summaries" in the treatment and screenplay, "plus whatever insight into their characters may be derived from their dialogue and action." Id. at 1452-53. Olson applies a fortiori here. To the extent that the figures depicted in Bryant's sketches could even be described as "characters," they were delineated by only a few brief lines of text in Mr. Bryant's "pitch book," which described the figures in the most generic and abstract terms. See Trial Exhibit 1. In addition, unlike Olson, there was no "screen play" accompanying the Bryant drawings. Thus, there was certainly not enough detail and repetition to discern any "traits," let alone the kind of "well-defined," "widely-identifiable" physical and personality mannerisms that have been uniformly required for "character" copyright protection in the Ninth Circuit.

---

[4]     Although not controlling, it is noteworthy that the Copyright Office's own Compendium states that "The copyright law does not provide for the copyright registration of characters as such. However, original works of authorship describing, depicting, or embodying a character are registrable if otherwise in order." Compendium at §202.02(1)

1   Mattel, moreover, only refers to the Bryant "drawings," not the brief text accompanying
2   them.[5]

3

4   The characters at issue in the other cases cited by Mattel well illustrate the Ninth
5   Circuit's strict and narrow requirements for "character" protection.  In <u>Anderson v.</u>
6   <u>Stallone</u>, 1989 Copr. L. Dec. P 26427, 1989 WL 206431 (C.D. Cal. 1989), the Central
7   District of California held that the "Rocky" characters were entitled to copyright
8   protection because they "are one of the most highly delineated group of characters in
9   modern American cinema.  The physical and emotional characteristics of Rocky Balboa
10  and the other characters were set forth in tremendous detail in three Rocky movies . . .
11  Rocky Balboa is such a highly delineated character that . . . his character has become
12  identified with specific character traits ranging from his speaking mannerisms to his
13  physical characteristics."  <u>See</u> 1989 WL 206431 at *7.  Similarly, in <u>Toho Co., Ltd. v.</u>
14  <u>William Morrow & Co., Inc.</u>, 33 F. Supp. 2d 1206, 1216 (C.D. Cal. 1998), the court
15  found that "Godzilla" qualified for copyright protection because it is "always a pre-
16  historic, fire-breathing, gigantic dinosaur alive and well in the modern world," and thus
17  is a "well-defined character with highly delineated consistent traits."  <u>See also</u> <u>Warner</u>
18  <u>Bros. Inc. v. American Broadcasting Companies, Inc.</u>, 720 F.2d 231, 241-42 (2d Cir.

19  ─────────────────────────
20       [5]      The "brief text" mentioned herein are highly abstract descriptions of
    the four initial Bratz girls, which do not extend beyond general fashion preferences.
21  For example, Lupe is described as "the princess of pretty in her casual wear of tank
    top and wide leg khakis," while Jade "loves far-out fashion! Mary Janes and a baby
22  doll are just perfect for study hall!"  These are hardly the sorts of distinctive
    character traits that would permit copyrightability of the characters themselves.
23  Indeed, even the descriptions of the "characters" on MGA's packaging for Bratz
    dolls does not get into any level of detail about who each girl is in any distinctive
24  way.  For example, on the first generation Jade doll packaging, it only says the
    following: "Hey! My name is Jade! My fashion passion is clothes that are xtreme
25  and far out! My friends call me 'Kool Kat' because I love cats! And because I'm
26  cool!!!"
27

28

1983) (referring to the rendering of the well-established "Superman" character as
including elements such as "[w]hat the character thinks, feels, says and does" in
addition to the "visual perception of the character"; "Superman looks and acts like a
brave, proud hero, who has dedicated his life to combating the forces of evil. . . .
Superman performs his superhuman feats with skill, verve, and dash, clearly the master
of his own destiny."); Walt Disney Prods. v. Air Pirates, 581 F.2d 751, 755-56 (9th Cir.
1978) (extending protection over Mickey Mouse and other Disney characters with
distinctively delineated visual and conceptual characteristics); Metro-Goldwyn-Mayer,
Inc. v. American Honda Motor Co., Inc., 900 F. Supp. 1287, 1296 (C.D. Cal. 1995)
(finding that "James Bond has certain character traits that have been developed over
time through the sixteen films in which he appears" and that "[a] James Bond film
without James Bond is not a James Bond film.").

Other more recent cases have stuck to the same principle, namely that characters
receive copyright protection only where "the character really constitutes the story being
told, but if the character is only the chessman in the game of telling the story he is not
within the area of the protection afforded by the copyright." Warner Bros. v. Columbia
Broadcasting System, Inc., 216 F.2d 945, 950 (9th Cir. 1954).  See, e.g., Walker v.
Viacom, 2008 U.S. Dist. LEXIS 38882 at *14 (N.D. Cal. 2008) (noting that a character
in a comic strip would only be entitled to character protection "as a stand-alone
character because he is an extremely consistent, distinct and identifiable character who
'dominates' the comic strip"); CBS Operations v. Reel Funds Int'l, 2007 U.S. Dist.
LEXIS 58939 at *20 (N.D. Tex. 2007) (parties concede copyrightability of characters
in the 'Andy Griffith Show' because each of seventy-nine separate episodes "contains
the same opening sequence, contains and features the same primary characters of Andy
Taylor, Barney Fife, Aunt Bee and Opie, and concerns the same relationships between
the characters and the same recurrent themes in the same fictional town of Mayberry");

1   <u>Mallery v. NBC</u>, 2007 U.S. Dist. LEXIS 88960 at *18 (S.D.N.Y. 2007) (noting that "a

2   'minority artist' who has the ability to paint the future is an 'idea' that is not protected

3   under the copyright laws").

4

5   This Court has also addressed this issue.  In <u>Siegel v. Time Warner, Inc.</u>, this Court

6   recognized that, with regard to "Superboy," "[i]t is thus the character's traits and

7   attributes, as well as the character's interaction with other characters (notably

8   compatriots and villains), that help define the boundaries of the copyright to a

9   character."  496 F. Supp. 2d 1111, 1154 (C.D. Cal. 2007).

10

11   Simply put, there are neither distinctive characteristics to be found in Bryant's

12   drawings, nor are there any "interactions" with any other characters that would provide

13   any additional distinctiveness required for the copyrightability of these "characters."

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

## Mattel Is Not Asserting a New Legal Theory

The distinctive personalities of the Bratz characters are part and parcel of their representation in two or three-dimensional form.  Contrary to defendants' contentions, Mattel has never limited its copyright claim to isolated visual features of Bryant's drawings -- in fact, defendants consistently complain about Mattel's failure to do just that as part of their erroneous "filtration" arguments.

Defendants rely primarily on Mattel's response to Interrogatory No. 31, but that interrogatory only seeks *factual* support, not legal theories.  Defendants cite no law for the misguided proposition that "legal theories" must be disclosed in response to an interrogatory seeking facts. Mattel has never disclaimed its intention to pursue a copyright claim based on the distinctiveness of the Bratz characters created by Bryant.

Further, Mattel's response to Interrogatory No. 19 explains that Mattel's infringement contentions encompass the distinct personalities of the Bratz characters.  Specifically, Mattel states "Mattel contends that each and every Bratz work created by Bryant while employed by Mattel . . . is fully protectable as an original work of authorship under the Copyright Act.  Mattel further contends that each and every element of these works is an original, protectable element, whether viewed individually or in combination with other elements." (Emphasis added).  The combination of the tangible elements of the Bratz drawings create intangible but distinctive (and thus copyrightable) Bratz characters.  Nothing in the expert reports or pleadings cited by defendants suggests, let alone states, that Mattel has abandoned its contention that the Bratz characters are copyrightable, and have been infringed by defendants.  Defendants have not met their burden in seeking a preclusion sanction.

1

### The Bratz' Characters Are Protectable Under Copyright Law

2      On the merits, Mattel is clearly entitled to this instruction.  Distinctive

3  characters are protected, and Bryant's characters are just that -- distinctive.  Indeed,

4  when asked, <u>92%</u> of young girls surveyed immediately recognized Bryant's designs

5  as "Bratz dolls."  <u>See</u> Hollander Expert Report.  They are indisputably distinctive

6  characters.

7      Defendants' reliance on *Olson v. National Broadcasting Co., Inc.*, 855 F.2d

8  1446 (9th Cir. 1988) is misplaced.  *Olson* involved "lightly sketched" characters in a

9  screenplay.  Words on a page are not nearly as evocative of character and

10  personality as Bryant's drawings at issue here.  A drawing can emphasize particular

11  character traits more immediately and viscerally than pages of dialogue and

12  character description in a screenplay.  For instance, a drawing of Yosemite Sam

13  immediately communicates his grumpy belligerent and outsize personality.  Here,

14  not only do Bryant's drawings project instantly recognizable personalities – the

15  average 8-12 year old child instantly identifies them with their characters, as

16  Mattel's expert, Mr. Hollander, found – but they are accompanied by written

17  character descriptions.  For instance Zoe (i.e., Chloe) is described as "the queen of

18  cool at school with her short dark brown hair and funky stompin' sneaks.  Hiphugger

19  jeans, short tee shirt and glittery vinyl backpack complete her daytime look"

20  (MGA006455).  This is a far cry from the "lightly sketched" characters in *Olson*.

21  However, as *Olson* made clear, characters are indeed protectable.

22      Defendants mis-cite a number of other recent cases recently added to their

23  objection.  For example, in  *Walker v. Viacom*, 2008 U.S. Dist. LEXIS 38882 (N.D.

24  Cal. 2008), the Court did not note that a character in a comic strip would only be

25  entitled to character protection "as a stand-alone character because he is an

26  extremely consistent, distinct and identifiable character who 'dominates' the comic

27  strip," as defendants claim.  The plaintiff in *Walker* actually argued that the

28

character he was seeking copyright protection for should be granted protection because he met the criteria stated above. *Id.* at *14.  The Court, however, gave the rule for protectability of characters as follows, "A character... is protectable if it is 'especially distinctive' such that it has widely 'identifiable traits.'" *Id.*  Furthermore, the Court did not grant protection to the character at issue in that case, in part, because it was only seen in one small, four panel, black and white comic that conveyed "little to no information about [the character's] personality or character traits." *Walker* at *14-15.   By contrast, the Bratz characters at issue in this case have been featured in every imaginable medium, from drawings to dolls to feature films to endless accessories.  Further, there is substantial evidence that the Bratz characters are "especially distinctive."  In any event, the issue of distinctiveness is for the jury, and an instruction regarding the protectability of characters is appropriate.

Defendants' reliance on *CBS Operations v. Reel Funds Int'l*, 2007 U.S. Dist. LEXIS 58939, at *15 (N.D. Tex. 2007), is also unavailing.  The defendant in that case "stipulated that the characters, such as Andy Taylor and Barney Fife, are sufficiently distinctive and delineated to be independently copyrightable." *Id.* However, it was not "because each of seventy-nine separate episodes 'contains the same opening sequence, contains and features the same primary characters of Andy Taylor, Barney Fife, Aunt Bee and Opie, and concerns the same relationships between the characters and the same recurrent themes in the same fictional town of Mayberry,'" as defendants assert in their objections.  The language cited by MGA was used by the Court when explaining why the sixteen Middle Episodes are derivative works of the first seventy-nine copyrighted episodes of the show, not to explain why the characters are copyrightable. *CBS v. Reel Funds*, at *20.  The defendant in *CBS* stipulated that plaintiff's characters there were copyrightable

1  because they are sufficiently distinctive and delineated, just like the Bratz characters

2  created by Bryant.

3       Indeed, in *Mallery v. NBC*, 2007 U.S. Dist. LEXIS 88960, at *19 (S.D.N.Y.

4  2007), the Court fond that "it must be recognized that '[a] character is an aggregation

5  of the particular talents and traits his creator selected for him.  That each one may be

6  an idea does not diminish the expressive aspect of the combination." *Citing Warner*

7  *Bros. v. Am. Broadcasting Cos., 720 F.2d at 243.*  The Court  did not find

8  substantial similarity between the characters in *Mallery* because the "total

9  perception" of the characters was fundamentally different, not because characters

10  are only made up of ideas that are not protectable.  There is substantial evidence that

11  the "perception" of the Bratz characters created by Bryant is overwhelmingly similar

12  to the Bratz dolls created by defendants.

13       MGA's claims that the Bratz characters are not distinct are also contrary to the

14  character descriptions on its own website.  The official Bratz website,

15  www.bratz.com, features a "bout [sic] Bratz" section under the "Style" menu.  This

16  section describes each Bratz' character's personality in great detail.  For instance,

17  MGA states that "Sometimes Yasmin can be a little quiet, but even without opening

18  her mouth you can sense she's special.  There's just something about her that seems

19  almost regal.  But Yasmin's not pretentious!  She's really open-minded[;] she's

20  always up on the alternative trends in fashion, fitness and beauty."  MGA goes on to

21  describe Yasmin's "fave color," "fave movies," "fave books," "fave smoothie," "fave

22  music," "fave class," "fashion passion," and "shoppin' style."  MGA's website

23  features comparable descriptions of other Bratz' characters' personality traits.

24  Indeed, the Bratz dolls' personalities are so distinct that the Bratz website features a

25  15 question multiple choice quiz "What Bratz Are You Most Like?"  Defendants'

26  made-for-litigation contention that Bratz characters are not sufficiently distinctive is

27  disingenuous.

28

Finally, defendants' argument that Mattel's proposed instruction "only refers to the Bryant 'drawings,' not the brief text accompanying them" is misleading.  The complete second sentence of the instruction is "Defendants' works infringe Mattel's copyrights if they copy recognizable and distinctive elements of the personalities of the characters portrayed in Carter Bryant's drawings."  Several of Bryant's drawings, of course, feature <u>both</u> text and illustration.

Defendants' contention that the text accompanying the Bratz drawings is too simple to establish copyrightable characters does not justify failing to instruct the jury on the concept of copyrightability of characters.  Defendants are, of course, free to argue to the jury that Bratz characters are not sufficiently distinctive.  Yet, it must be up to the jury to determine whether the Bratz dolls infringe the characters described and depicted in Bryant's drawings.

Defendants' reliance on the Compendium is also misplaced.  The quoted portion of the Compendium is consistent with Mattel's argument.  Mattel does not claim that it owns a copyright on the Bratz characters that is wholly distinct from the physical copyrightable Bratz works.  Rather, the Bratz characters are embodied in physical copyrightable works and, because they are sufficiently distinctive, are also entitled to protection as copyrightable characters.

## MATTEL'S SPECIAL JURY INSTRUCTION NO.      
## COPYRIGHT INFRINGEMENT—EVIDENCE OF COPYING OF
## NAMES OR TITLES

Although names or titles are not copyrightable by themselves, in considering whether defendants copied protected expression from the works that Mattel owns, you may consider whether defendants copied the title or name of those works.

**Authority:**  *Shaw v. Lindheim*, 919 F.2d 1353, 1362 (9th Cir. 1994); *Wihtol v. Wells*, 231 F.2d 550, 553 (7th Cir. 1956).

1

2

3

## DEFENDANTS' OBJECTIONS TO COPYRIGHT INFRINGEMENT— EVIDENCE OF COPYING OF NAMES OR TITLES

4

5

6

7

8

9

10

The MGA Parties object to the instruction as untimely.  Mattel first submitted this instruction on July 25, 2008, more than two months after the initial jury instructions were due to be submitted.  It is far too late in these proceedings, two months into this trial, and well after (i) the close of discovery, (ii) the submission of expert reports, and (iii) the due dates for all motion for summary judgment and motion in limine briefs, for Mattel to try to interject a new legal theory upon which to bolster its copyright infringement claims.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The MGA Parties further object to this instruction on the grounds that it is legally unsupported and unsupportable, vague and ambiguous, and likely to confuse the jury. This is yet another example of Mattel's attempt to conflate "actual copying" and "substantial similarity," in the hopes that the jury will disregard their obligation to undertake the rigorous requirements of the extrinsic and intrinsic tests of copyright infringement.  Access is undisputed in this case.  MGA has acknowledged that it believed that it owned the Bryant drawings, and that it used such drawings as inspiration for the first generation of Bratz dolls.  Whether or not certain "titles" or "names" were carried over from Bryant's drawings is irrelevant to substantial similarity, because, as Mattel freely admits, "names or titles are not copyrightable by themselves." Thus, names and titles are filtered out of any comparisons made between the drawings and dolls under the extrinsic test of copyright infringement.  The issue in this phase of the case is whether the dolls infringe protectable elements in Bryant's 16 drawings registered by Mattel.  MGA's use of "titles" or "names," which both sides agree are not protectable, has not bearing on this issue and is injected by Mattel only to confuse and

27

28

MATTEL'S THIRD AMENDED PROPOSED JURY INSTRUCTIONS FOR PHASE 1B—DISPUTED SET

1   mislead the jury.  Mattel is free to argue its version of the facts supporting "factual

2   copying," but there is no need for a separate instruction of this sort.

3

4   Finally, to the extent the Court believes an instruction of this sort is appropriate, MGA

5   requests that it also include a listing of the factors present in this case that militate

6   against a finding of "factual" copying. 6

-78-

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Defendants do not -- and cannot -- dispute that it is well settled in the Ninth Circuit that similarity of titles between the original and allegedly infringing work is evidence of copying.  *Shaw v. Lindheim*, 919 F.2d 1353, 1362 (9th Cir. 1994).  This alone justifies the giving of the instruction.  Defendants' contention that "names and titles" are to be "filtered out" by the jury is contrary to controlling Ninth Circuit authority, and should be rejected.  Indeed, if such filtering of names were proper, the holding of *Shaw* would be meaningless.

Defendants once again raise the spectre of jury confusion concerning the difference between actual copying and substantial similarity.  As Mattel explains elsewhere, the jury will be fully aware of its obligation to apply the substantial similarity standard in determining infringement.  Indeed, the proposed instructions refer to this standard repeatedly.  But in assessing infringement, the jury must consider the copying of names under *Shaw*.

Defendants' contention that Mattel improperly failed to apprise them of its intent to rely upon similarity of the works' names/titles is also without merit.  Defendants offer no evidence of any interrogatory that sought this information.  Nor does Mattel have any obligation to disclose the law to defendants -- they are presumed to know it.  Of course, the fact that names are copied has always been at issue, as both sides knew.  In any event, assuming *arguendo* that this evidence is "new," defendants fail to identify *any* prejudice from the introduction at trial of the simple fact that the original and allegedly infringing works have the same name.

1
2
3
4

**MATTEL'S SPECIAL JURY INSTRUCTION NO. ___**

**COPYRIGHT INFRINGEMENT—THREE-DIMENSIONAL WORKS CAN INFRINGE TWO-DIMENSIONAL WORKS**

5   A two-dimensional work, such as a drawing, can be infringed by a three-
6   dimensional work, such as a doll.  A doll, which consists of different materials or
7   includes aspects that are not visible in a copyrighted drawing, nevertheless will
8   infringe the drawing when the works are substantially similar in their appearance.  A
9   three-dimensional work is not an independent creation, or non-infringing, merely
10  because it includes or is a result of artistic or non-artistic work not included in the
11  copyrighted work. Rather, the question is whether, under the standards I have
12  explained, the three-dimensional work is substantially similar to the two-
13  dimensional work as a whole.

14

15  **Authority:**  *King Features Syndicate v. Fleischer*, 299 F. 533, 534, 538 (2d
16  Cir. 1924) (copyright of a comic book infringed by three-dimensional dolls of a
17  character); *Fleischer Studios v. Ralph A. Freundlich, Inc.*, 73 F.2d 276, 278 (2d Cir.
18  1934) (drawing of Betty Boop character infringed by substantially similar doll:  "a
19  three-dimensional form of doll, is an infringement of the two-dimensional picture or
20  drawing"); *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d
21  1211, 1222-23 (9th Cir. 1997) ("making decisions that enable one to reproduce or
22  transform an already existing work into another medium or dimension - though
23  perhaps quite difficult and intricate decisions - is not enough to constitute the
24  contribution of something 'recognizably his own,'" even where those decisions are
25  "artistic").

26
27
28

## DEFENDANTS' OBJECTIONS TO COPYRIGHT INFRINGEMENT— THREE-DIMENSIONAL WORKS CAN INFRINGE TWO-DIMENSIONAL WORKS

The MGA Parties object to Mattel's proposed instruction since, among other things, it does not advise the jurors that in comparing an allegedly infringing 3-dimensional work with a registered 2-dimensional work the "extrinsic/intrinsic" tests still apply.  (See MGA Parties' Proposed Jury Instruction: Copyright Infringement – Comparing A Two-Dimensional Work With A Three-Dimensional Work.)  The MGA Parties also object because Mattel's proposed instruction does not add the cautionary instruction (necessary under the facts of this case) that the copyright in a two-dimensional work only covers what is shown on the face of the work (i.e., does not include anything that could arguably be implied by the 2-dimensional work).  (See id.)  The MGA Parties further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

The MGA Parties further object to Mattel's recent additions to this proposed jury instruction, as the self-serving statements propounded therein only exacerbate the faults in the instruction.  First, the instruction continues to doggedly avoid the filtering analysis required by the extrinsic test of copyright infringement.  The proposition that a doll "nevertheless will" infringe a drawing irrespective of the lack of visibility of various aspects in the drawing is fundamentally flawed.  An element which does not exist can not be infringed.  Mattel's statement is entirely founded on the assumption that

1  visual works are not subject to analytic dissection, a position which the Court has

2  expressly rejected in its July 24, 2008 Order.

3

4  The MGA Parties submit that its instruction on this issue more fairly and accurately

5  instructs the jury on the applicable issues.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

The proposed instruction does not suggest that the extrinsic/intrinsic test does not apply to three-dimensional works that infringe two-dimensional works.  Indeed, Mattel has proposed an instruction that describes the extrinsic/intrinsic test.  It would be improperly duplicative, misleading and unnecessary to add yet another reference to this proposed instruction.

The proposed instruction will not mislead the jury, as defendants suggest, with respect to damages awardable based upon the scope of infringement. Defendants' objection that the jury must consider each "infringing act" and "product" separate misstates the law.  Defendants' objection that the jury must consider each "infringing act" and "product" separately misstates the law. Essentially, defendants contend that a Bratz doll would not infringe if defendants copied the head from one of Bryant's drawings and the doll's body from another drawing.  That is not the law.  *See* Mattel's Statement re 17.4 Copyright Infringement—Ownership and Copying, *supra*, at 15-16 (discussing *Castle Rock*).

Further, contrary to defendants' objection, it would be erroneous and misleading to inform the jury that a copyright in a two-dimensional work only covers what is shown on the face of the work.  Rather, if a defendant's work is a "picturization" of the copyrighted work, or if the defendant's work consists of characters depicted in a copyrighted work, there is infringement even if the medium changes, and even if the copyrighted work is two-dimensional.  *See, e.g.*, *King Features Syndicate v. Fleischer*, 299 F. 533, 534, 538 (2d Cir. 1924) (copyright of a comic book infringed by three-dimensional dolls of a character); *Fleischer Studios v. Ralph A. Freundlich, Inc.*, 73 F.2d 276, 278 (2d Cir. 1934) (drawing of Betty Boop character infringed by substantially similar doll:  "a three-dimensional form of doll, is an infringement of the two-dimensional picture or drawing"); *Entm't*

MATTEL'S THIRD AMENDED PROPOSED JURY INSTRUCTIONS FOR PHASE 1B—DISPUTED SET

1  *Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1222-23 (9th

2  Cir. 1997) ("making decisions that enable one to reproduce or transform an already

3  existing work into another medium or dimension - though perhaps quite difficult and

4  intricate decisions - is not enough to constitute the contribution of something

5  'recognizably his own,'" even where those decisions are "artistic").

6      The only authority cited by defendants in support of their own erroneous

7  proposed instruction -- *Nimmer on Copyright* -- does not support their assertion that

8  the copyright of a two-dimensional work only covers what is shown on the face of

9  the work.  Indeed, *Nimmer* makes clear that in many cases the mere conversion of a

10 work from two-dimensions to three-dimensions may not even be original, let alone

11 non-infringing.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **MATTEL'S SPECIAL JURY INSTRUCTION NO.**

2    **COPYRIGHT INFRINGEMENT—INTERMEDIATE WORKS**

3

4         A copyright can be infringed by intermediate or preparatory works, including

5    works prepared in the product development or marketing stage, that are substantially

6    similar to a copyrighted work, regardless of whether the end product of the copying

7    also infringes the copyright.

8

9         **Authority:**  *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1518-19 (9th

10   Cir. 1993); *Walker v. Univ. Books, Inc.*, 602 F.2d 859, 864 (9th Cir. 1979); *Walt*

11   *Disney Prods. v. Filmation Assocs.*, 628 F. Supp. 871, 875-76 (C.D. Cal. 1986).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEFENDANTS' OBJECTIONS TO COPYRIGHT INFRINGEMENT— INTERMEDIATE WORKS

The MGA Parties object to the inclusion of any instruction relating to alleged "intermediate works."  First, Mattel did not assert this theory in response to MGA's discovery requests directed to Mattel's theories of copyright liability and it would be unduly prejudicial to allow Mattel to raise this theory now after (i) discovery is closed, and (ii) the trial has been in session for two months.  Mattel is attempting to make an end-run around the standing issues that it has encountered during this trial by attempting to assert copyright infringement based on drawings that Mattel has never registered with the Copyright Office.  Further, Mattel has already represented on the record, after the Phase 1-A verdict was announced, that it only intended to bring a copyright infringement claim based on its registered drawings.   The following exchange occurred at the hearing of July 18, 2008:

> THE COURT:  What particular works is the jury going to be making the comparison to?  All the drawings for which they have found ownership?  Or are you going to be identifying specific drawings that you believe are at the heart of what is protected?
>
> MR. QUINN:  The specific drawings as to which we have filed copyright registrations.

(Tr. 45:19-25).

In addition, the "intermediate works" doctrine is inapplicable to this case since it is a doctrine directed to the context of "reverse engineering" in the context of computers and computer software.  See, e.g., Sega Enters. Ltd. v. Accolade, Inc., 977 F.2d 1510 (9th Cir. 1992); see also Sony Computer Entm't v. Connectix Corp., 203 F.3d 596 (9th Cir. 2000); Adobe Sys. Inc. v. Southern Software Inc., 1998 U.S. Dist. LEXIS 1941

(N.D. Cal. Feb. 2, 1998); <u>Atari Games Corp. v. Nintendo, Inc.</u>, 1993 U.S. Dist. LEXIS 6786 (N.D. Cal. May 18, 1993).  The MGA Parties further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Defendants' contention that the intermediate works doctrine is limited to cases of reverse engineering of software is without merit.  Indeed, two of the cases cited in support of the proposed instruction concern not software, but copyrightable artistic works.  *Walker v. Univ. Books, Inc.*, 602 F.2d 859, 864 (9th Cir. 1979) (set of I-Ching cards); *Walt Disney Prods. v. Filmation Assocs.*, 628 F. Supp. 871, 875-76 (C.D. Cal. 1986) (animated film).

Defendants' argument that they are surprised that Mattel contends that the Bratz intermediate works infringe is disingenuous.  The process by which the Bratz dolls were created has been a subject of extensive discovery, including expert discovery.  Accordingly, defendants cannot articulate any prejudice from the presentation of this instruction to the jury.  Nor do defendants show that this "theory" was somehow un-disclosed, and the facts clearly were disclosed.

The proposed instruction will not mislead the jury, as defendants suggest, with respect to damages awardable based upon the scope of infringement. Defendants' objection that the jury must consider each "infringing act" and "product" separate misstates the law.  Defendants' objection that the jury must consider each "infringing act" and "product" separately misstates the law. Essentially, defendants contend that a Bratz doll would not infringe if defendants copied the head from one of Bryant's drawings and the doll's body from another drawing.  That is not the law.  *See* Mattel's Statement re 17.4 Copyright Infringement—Ownership and Copying, *supra*, at 15-16 (discussing *Castle Rock*).

With respect to the alleged "standing" issue, this is a non-sequitur.  The issues is infringement <u>by</u> intermediate works, not infringement <u>of</u> intermediate works.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___

## COPYRIGHT INFRINGEMENT—INTENT TO INFRINGE NOT

## NECESSARY FOR LIABILITY

Direct copyright infringement does not require intent or any particular state of mind.  A defendant may be held liable for copyright infringement even if he believes in good faith that he is not infringing a copyright.

**Authority:**  *Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978) ("[E]ven when the defendant believes in good faith that he is not infringing a copyright, he may be found liable."); *L.A. News Serv. v. Conus Communications Co.*, 969 F. Supp. 579, 584 (C.D. Cal. 1997) ("Direct infringement does not require intent or any particular state of mind.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEFENDANTS' OBJECTIONS TO COPYRIGHT INFRINGEMENT— INTENT TO INFRINGE NOT NECESSARY FOR LIABILITY**

The MGA Parties object to this instruction on the grounds that it is unnecessary and unduly prejudicial. The Ninth Circuit model instruction on infringement, No. 17.4, sets forth the elements Mattel is required to prove and does not include an "intent" element. It is inappropriate and unduly prejudicial to include a separate instruction on this issue as Mattel suggests. The MGA Parties also object to this instruction on the grounds that it fails to advise the jury that the lack of an "intent" requirement does not in any way undercut the defendants' position that the Bratz dolls were a product of independent creation or the Constitutional underpinnings of copyright law, which encourage third parties to build upon the works of others. (See MGA Parties' Proposed Jury Instruction: Copyright Infringement – Independent Creation.)

# MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

This proposed instruction is an instruction regarding intent for purposes of copyright infringement.  It has nothing to do with "independent creation" or the "Constitutional underpinnings of copyright law."  Accordingly, defendants' objection is wholly misplaced.

Defendants' objection that this objective instruction informing the jury that copyright infringement does not require intent is "inappropriate and unduly prejudicial" is baseless.  Defendants do not dispute that this is the law governing Mattel's copyright infringement claim, nor could they.  This proposed instruction is especially appropriate in light of defendants' repeated assertions that their "good faith" should be considered.  In fact, defendants actually seek an instruction on "good faith."  Mattel's proposed instruction is correct and necessary to avoid confusing the jury about which claims require proof of intent, and which do not.

**17.20**

**DERIVATIVE LIABILITY—VICARIOUS INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF**

If you find that MGA infringed Mattel's copyright in the Bratz works, you may consider Mattel's claim that MGA's CEO Isaac Larian vicariously infringed that copyright.  Mattel has the burden of proving each of the following by a preponderance of the evidence:

1.      Mr. Larian profited directly from the infringing activity of MGA;

2.      Mr. Larian had the right and ability to supervise/control the infringing activity of MGA; and

3.      Mr. Larian failed to exercise that right and ability.

If you find that Mattel proved each of these elements, your verdict should be for Mattel if you also find that MGA infringed Mattel's copyright.  If, on the other hand, Mattel has failed to prove any of these elements, your verdict should be for Mr. Larian on Mattel's claim for copyright infringement, unless you find that Mr. Larian is liable for contributory infringement under the instruction that follows.

**Authority:**  9th Cir. Civ. Jury Instr. 17.20 (2007) (modified).

## DEFENDANTS' OBJECTIONS TO DERIVATIVE LIABILITY— VICARIOUS INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF

The MGA Parties object to this instruction on the grounds that it deviates from the Ninth Circuit model instruction, which accurately sets forth the applicable law. Specifically, the MGA Parties object to Mattel's inclusion of the word "control" in phrase 2. above and to its decision to not include clarifying language indicated by the Ninth Circuit's model rule.  The MGA Parties also object to this instruction on the grounds that it is not limited to the 16 Bryant drawings registered by Mattel that are the basis of Mattel's infringement claims in this phase of the trial.  MGA's propose instruction No. 17.20 more accurately instructs the jury on this issue, consistent with the Ninth Circuit's model instructions.

The MGA Parties object to Mattel's characterization of Isaac Larian as MGA's CEO. The jury is aware of the relationship between the parties and Mattel's frequent reminders of that relationship is argument, not instruction.

1  **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3          Mattel's proposed instruction conforms to the Ninth Circuit Model

4  Instruction, as required by the Court.  *See* Court's Standing Scheduling Order, at 9.

5  Accordingly, defendants' objections to the form of the proposed instruction should

6  be overruled.  There is no basis for defendants to object to Mattel's inclusion of the

7  term "control" because that term comes directly from the Model Instruction.  *See* 9th

8  Cir. Civ. Jury Instr. 17.20 (2007).  There is also no reason to include any further

9  instruction regarding the meaning of "control"; Isaac Larian is the CEO of MGA

10  Entertainment.  His "control" cannot credibly be disputed.  There is also no

11  legitimate basis for defendants to object to the description of Larian as "MGA's

12  CEO."

13          Defendants' objection to this instruction based on its contention that Mattel's

14  copyright claim is limited to "the 16 Bryant drawings that Mattel has registered with

15  the Copyright office" should be overruled.  Mattel's claim encompasses all of the

16  Bratz-related works the jury found that Mattel owns in Phase 1A, whether or not

17  those works were previously registered, as discussed above.  *See* Mattel's Statement

18  re 17.1 Copyright—Defined, *supra*, at 9-10.

19

20

21

22

23

24

25

26

27

28

**17.21**

**DERIVATIVE LIABILITY—CONTRIBUTORY INFRINGEMENT**

A defendant may be liable for copyright infringement engaged in by another if he/it knew or had reason to know of the infringing activity and intentionally materially contributes to that infringing activity.

If you find that MGA infringed Mattel's copyright in Bratz works, but that MGA Hong Kong and/or MGA's CEO Isaac Larian did not directly or vicariously engage in acts of infringement, you should proceed to consider Mattel's claim that MGA Hong Kong and Mr. Larian contributorily infringed that copyright.  To prove contributory copyright infringement, Mattel must prove both of the following elements by a preponderance of the evidence:

1.      Mr. Larian and/or MGA Hong Kong knew or had reason to know of the infringing activity of MGA; and

2.      Mr. Larian and/or MGA Hong Kong intentionally materially contributed to MGA's infringing activity.

If you find that MGA infringed Mattel's copyright and you also find that Mattel has proved both of these elements, your verdict should be for Mattel.  If, on the other hand, Mattel has failed to prove either or both of these elements as against MGA Hong Kong and/or Mr. Larian, and also failed to prove direct or vicarious infringement by MGA Hong Kong and/or Mr. Larian, your verdict should be for those defendants.

**Authority:**  9th Cir. Civ. Jury Instr. 17.21 (2007).

# DEFENDANTS' OBJECTIONS TO DERIVATIVE LIABILITY— CONTRIBUTORY INFRINGEMENT

The MGA Parties object to this instruction on the grounds that it is not limited to the 16 Bryant drawings registered by Mattel that are the sole grounds for Mattel's infringement claims.  Mattel's proposed instruction is also improper to the extent that it misstates the applicable legal standard and does not instruct the jury that mere awareness of another parties' infringement is insufficient.  The MGA Parties also object on the grounds that this instruction (1) fails to clarify for the jury the requirements of showing intentional inducement (see Errata to Jury Instructions submitted by Bryant on April 15, 2008); and (2) improperly clusters all defendants together in such a way that it suggests to the jury that a finding of contributory liability against one defendant would be sufficient to enter a finding against all defendants.  The MGA Parties further object to this instruction (and Mattel's other copyright damages instructions) because it does not properly explain that the jury must base any damages award on its specific findings of infringement, by considering separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should recover damages based on all of the alleged infringement.

The MGA Parties generally object to Mattel's characterization of Isaac Larian as MGA's CEO.  The jury is aware of the relationship between the parties and Mattel's frequent reminders of that relationship is argument, not instruction.

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Defendants' objection to this instruction based on its contention that Mattel's copyright claim is limited to "the 16 Bryant drawings that Mattel has registered with the Copyright office" should be overruled.  Mattel's claim encompasses all of the Bratz-related works the jury found that Mattel owns in Phase 1A, whether or not those works were previously registered, as discussed above.  *See* Mattel's Statement re 17.1 Copyright—Defined, *supra*, at 9-10.

Moreover, contrary to defendants' assertions, the law does not require "intentional inducement."  As reflected in the Model Instruction, Ninth Circuit law is clear that "materially contributing to" the infringement is sufficient for purposes of contributory liability.  9th Cir. Civ. Jury Instr. 17.21 (2007); *Fonovisa Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (noting that "[t]he classic statement of the [contributory infringement] doctrine is in *Gershwin,* 443 F.2d 1159, 1162 [(2d Cir. 1971)]: '[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer'"; citing *Universal City Studios v. Sony Corp. of America,* 659 F.2d 963, 975 (9th Cir.1981), as "adopting *Gershwin* in the Ninth Circuit).

The proposed instruction does not "improperly cluster" all defendants together such as would confuse the jury.  The proposed instruction indicates that either Larian or MGA Hong Kong may be found to have contributorily infringed Mattel's copyrights.

There is also no legitimate basis for defendants to object to the description of Larian as "MGA's CEO."

**Affirmative Defenses**

**17.19**

**COPYRIGHT—AFFIRMATIVE DEFENSE—ABANDONMENT**

Defendants contend that Mattel does not own the copyrights at issue in this case because Mattel abandoned the copyrights.  Mattel cannot claim ownership of the copyrights if they were abandoned.  In order to show abandonment, the defendants have the burden of proving each of the following by a preponderance of the evidence:

1.      Mattel intended to surrender rights in the works; and

2.      An act by Mattel evidencing that intent.

Mere inaction does not constitute abandonment of the copyright; however, this may be a factor for you to consider in determining whether Mattel has abandoned the copyright.

If you find that Mattel has proved its claims for copyright infringement against the defendants, your verdict should be for Mattel, unless you find that the defendants have proved each of the elements of this affirmative defense, in which case your verdict should be for the defendants.

**Authority:**  9th Cir. Civ. Jury Instr. 17.19 (2007).

# DEFENDANTS' OBJECTIONS TO COPYRIGHT—AFFIRMATIVE DEFENSE—ABANDONMENT

The MGA Parties object to this instruction and respectfully submit that their proposed instruction be used instead.  The MGA Parties submit that the last paragraph of this instruction – which instructs the jury on the essential function of an affirmative defense – is unnecessary and potentially confusing in the context of this instruction, as this language is not found in any other instruction on an affirmative defense despite being universally true.  The MGA Parties further object that an explanation regarding the nature of the conduct that would "evidenc[e]" intent to abandon is appropriate, such as the language in the MGA Parties' proposed instruction (which directs jurors to consider "[c]onduct by Mattel which was 'consistent with an intent to abandon' or which 'implies abandonment'").

1

## MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

2

3      Defendants' objections to this proposed instruction -- which exactly mirrors

4  the Ninth Circuit Model Instruction on point -- should be overruled.  Defendants'

5  proposed modifications to the Model Instruction are erroneous as a matter of law

6  and misleading.  Defendants are incorrect that they can prevail on an abandonment

7  defense based on conduct merely "consistent with an intent to abandon" or which

8  "implies abandonment."  As the Model Instruction makes clear, the defendants must

9  prove "an **act** by the plaintiff evidencing that intent." *See* 9th Cir. Civ. Jury Instr.

10  17.19 (2007).  The law is clear that "[a]bandonment of a right must be manifested

11  by an overt act." *See* 9th Cir. Civ. Jur. Instr. 17.19, comments to same; *Micro Star v.*

12  *Formgen, Inc*., 154 F.3d 1107, 1114 (9th Cir. 1998) ("abandonment of a right must

13  be manifested by some overt act indicating an intention to abandon that right.");

14  *Hampton v. Paramount Pictures Corp.,* 279 F.2d 100, 104 (9th Cir.1960) (finding

15  no abandonment where "overt act is here totally lacking" and "[t]here was at most

16  lack of action").

17      Defendants also suggest without any justification that the final paragraph of

18  the Model Instruction be omitted.  The Model Instruction, which simply clarifies for

19  the jury when it should find for plaintiff or defendants on this affirmative defense,

20  will not be "potentially confusing" to the jury, and should be given to the jury as

21  written.

22

23

24

25

26

27

28

-100-      Case No. CV 04-9049 SGL (RNBx)

1
2

**MATTEL'S SPECIAL JURY INSTRUCTION NO. __**

**COPYRIGHT—AFFIRMATIVE DEFENSE—GOOD FAITH TRANSFER**

3

4    The defendants claim that their rights in the Bratz works created by Carter

5    Bryant should prevail over Mattel's rights in those works because Mr. Bryant

6    transferred the rights to MGA after he transferred them to Mattel and MGA obtained

7    the rights in good faith.  In order to establish that MGA's later-acquired rights in the

8    Bratz works should prevail, the defendants have the burden of proving by a

9    preponderance of the evidence that MGA:

10    1.    Received the transfer of rights in Bratz works in good faith and without

11   notice of Mr. Bryant's earlier transfer to Mattel, that is, without notice that Mattel

12   had rights to the works;

13    2.    Paid valuable consideration;

14    3.    Registered each of the copyrights in Bratz works with the Copyright

15   Office; and

16    4.     Duly recorded the transfer of the rights to MGA, i.e., the MGA/Bryant

17   assignment agreement, before Mattel recorded its transfer, i.e., the Inventions

18   Agreement.

19    To duly record the transfer, as required for the fourth element, MGA must

20   have submitted to the Copyright Office the MGA/Bryant assignment agreement

21   such that the recorded document, or material attached to it, specifically identifies the

22   copyrighted works to which the assignment pertains.  A registration of a copyright is

23   not a substitute for recordation.

24    It is undisputed in this case that the MGA/Bryant assignment agreement has

25   not been recorded.

26
27
28

1    **Authority:** 17 U.S.C. § 205(d); *Peer Int'l Corp. v. Latin Amer. Music Corp.*,

2    161 F. Supp. 2d 38, 47-48 (D.P.R. 2001); Compendium II, *Copyright Office*

3    *Practices*, Chapters 1602.2, 1604.02.

-102-

**DEFENDANTS' OBJECTIONS TO COPYRIGHT—AFFIRMATIVE DEFENSE—GOOD FAITH TRANSFER**

The MGA Parties object to the following sentence:  "It is undisputed in this case that the MGA/Bryant assignment agreement has not been recorded."  Among other things, MGA's registrations each specifically note that MGA's ownership in the work at issue is by "assignment," which is all that is required by 17 U.S.C. § 205(d).  If the instruction is to provide facts regarding the recordation, it should also note that there is no dispute that MGA's registrations of the works at issue were recorded with the Copyright Office long before Mattel's purported registrations.  In addition, as the MGA Parties argued in opposing Mattel's motion for partial summary judgment, where, as here, a plaintiff has *actual* knowledge of the assignment, the recordation element should not be strictly construed and the jury should be permitted to consider whether plaintiff's actual knowledge suffices to establish the recordation element of the section 205(d) defense.  (See MGA MSJ Opp'n at 30-31, citing 2 Nimmer on Copyright § 7.16 (2007).)  The MGA Parties also object to this proposed instruction to the extent that the term "Bratz works" is improper.

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

This proposed instruction conforms to the requirements of the statute. Defendants' objection to the language that "[i]t is undisputed in this case that the MGA/Bryant assignment agreement has not been recorded" is without merit because defendants admitted that they never recorded the assignment document itself. *See* MGA's Responses to Mattel's Third Set of Requests for Admission Nos. 241-44, 249-52.

Defendants' objection that MGA's registrations noted that MGA's ownership in the work at issue is by "assignment" is of no moment because the statute requires recordation. Section 205(d) by its own terms pertains to transfers, not registrations. *See* 17 U.S.C. § 205(d). Under the statute, the transferee who first registers *and records* prevails over any later recording transferee. *See id.* ("later transfer prevails if recorded in such manner" (i.e., the manner required to give constructive notice under subsection (c)); *see also id.* § 205(c) (for recordation to give constructive notice, it must be "(1) [a] document … [that] specifically identifies the [transferred] work …; and (2) registration must be made for the work"). *See also Peer Int'l Corp. v. Latin American Music Corp.*, 161 F. Supp. 2d 38, 48 (D.P.R. 2001) ("The subsequent transferee must clear several hurdles to prevail: the subsequent transferee (1) must be without notice; (2) must have paid valuable consideration; and (3) must have ***duly recorded his or her transfer*** before recordation of the prior transfer.) (emphasis added).

Finally, because Section 205(d) expressly requires recordation of the transfer document itself, defendants' contention that the instruction should inform the jury that defendants registered *copyrights* in Bryant's drawings is erroneous, and would be confusing to the jury. Defendants are wrong in suggesting that recordation is optional, or that the jury should not "strictly construe" the recordation requirement if

Mattel had actual knowledge of the assignment.  Defendants cite no case law to support this erroneous assertion, and the language of the statute and information from the Copyright Office is unambiguous.  Recordation of the transfer instrument itself is required.  *See* 17 U.S.C. § 205(d); *Peer Int'l Corp. v. Latin Amer. Music Corp.*, 161 F. Supp. 2d 38, 47-48 (D.P.R. 2001); Compendium II, *Copyright Office Practices*, Chapters 1602.2, 1604.02.  Indeed, the section in *Nimmer on Copyright* cited by defendants confirms that "there is constructive notice only after registration of the work (***as well as recordation of the [transfer] document***) has occurred."  *See Nimmer on Copyright*, § 7.16[E] (2007) (emphasis added).

Finally, although defendants object to the term Mattel "Bratz works," they fail to offer any alternative term that would encompass the materials in dispute.  Accordingly, their objection to that term should be overruled.  In the context of these instructions, the term plainly refers to the Bryant works that the jury found Mattel owns.

**MATTEL'S SPECIAL JURY INSTRUCTION NO. ___**

**STATUTE OF LIMITATIONS—FRAUDULENT CONCEALMENT**

Mattel claims that defendants fraudulently concealed the facts underlying Mattel's claims of intentional interference with contract and conversion.  Defendants deny these allegations.

To prove fraudulent concealment, Mattel must show that the defendants intentionally concealed the facts that could have led Mattel to discover that Carter Bryant created Bratz works while employed by Mattel or that Mr. Bryant entered into a contract with and worked with MGA while he was still employed by Mattel.

If you find that defendants intentionally concealed the facts that could have led Mattel to discover that Carter Bryant created Bratz works while employed by Mattel or that Mr. Bryant entered into a contract with and worked with MGA while he was still employed by Mattel, you should find for Mattel on its allegations of fraudulent concealment.

1    **Authority:**  *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1042-3

2  (C.D. Cal. 2003); *Hynix Semiconductor v. Rambus, Inc.*, 2007 WL 3284060, at *3

3  (N.D. Cal. Nov. 2, 2007) (tolling based on fraudulent concealment ends when the

4  plaintiff has "a suspicion of wrongdoing, coupled with a knowledge of the harm and

5  its cause"); *Grisham v. Philip Morris U.S.A., Inc.*, _ Cal.4th _, 54 Cal. Rptr. 3d 735,

6  744 (2007) ("[a] defendant's fraud in concealing a cause of action against him will

7  toll the statute of limitations."); *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926,

8  931 (1994) (reversing summary judgment on statute of limitations grounds where

9  "defendant's fraud in concealing a cause of action against him tolls the applicable

10  statute of limitations"); *April Enterprises, Inc. v. KTTV*, 147 Cal. App.3d 805, 831-

11  32 (1983).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

# DEFENDANTS' OBJECTIONS TO STATUTE OF LIMITATIONS— FRAUDULENT CONCEALMENT

3

4   The preceding instruction is objectionable in that it asserts that tolling based on

5   fraudulent concealment ends only once Mattel obtained knowledge of specific

6   "concealed information."  Under California law, "a suspicion of wrongdoing,

7   coupled with a knowledge of the harm and its cause" is sufficient to end tolling

8   based on fraudulent concealment.  Snapp & Assocs. Ins. Servs., Inc. v. Malcolm

9   Bruce Burlingame Robertson, 96 Cal. App. 4th 884, 890-91 (2002); see also

10   Soliman v. Philip Morris Inc., 311 F.3d 966, 971-72 (9th Cir. 2002) (plaintiff "need

11   not be aware of the specific 'facts' necessary to establish the claim" in order for a

12   cause of action to accrue. Nor need he be aware of the particular legal theory that

13   will support it. His claim accrues "when, simply put, he at least 'suspects ... that

14   someone has done something wrong' to him."), citing Norgart v. Upjohn Co., 21

15   Cal. 4th 383, 397 (1999), and Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1110-11

16   (1988); id. at 1110 n.7 (the "wrong" that plaintiff is to be aware of for purposes of

17   the statute of limitations need not be in any technical sense, but rather in accordance

18   with its "lay understanding"); Butler v. San Diego Dist. Attorneys Office, 2007 WL

19   935711, at *3 (S.D. Cal. Feb. 27, 2007) (in California, "the statute of limitations

20   begins to run when the plaintiff suspects or should suspect that someone has done

21   something wrong to him").  The instruction is also objectionable to the extent it

22   suggests that fraudulent concealment by one defendant would necessarily toll the

23   statute as to another defendant not found culpable in the alleged concealment.  See

24   Sanchez v. South Hoover Hospital, 18 Cal. 3d 93, 100 (1976) ("The rationale for the

25   foregoing rule [of fraudulent concealment] is that the culpable defendant should be

26   estopped from profiting by his own wrong [t]o the extent that it hindered an

27   'otherwise diligent' plaintiff in discovering his cause of action.") (emphasis added).

28

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3        Mattel's proposed instruction conforms to the Court's prior rulings regarding

4    statute of limitations issues.  There is no need for the jury to make any findings in

5    Phase 1B regarding the duration of the period of tolling due to fraudulent

6    concealment, and the proposed jury instructions and verdict form need not include

7    reference to the dates of April 27, 2002 or April 27, 2001 with respect to Mattel's

8    claims for intentional interference with contractual relations or conversion.  The

9    inclusion of those dates could lead to juror confusion.

10       The Court has already found that July 18, 2003 is the earliest date on which

11   Mattel had knowledge of the wrongdoing at issue in this lawsuit.  *See* May 27, 2008

12   Order re Statute of Limitations Defense, at 8 (finding that the July 18, 2003 *Wall*

13   *Street Journal* article wherein Larian indicated that he chose Bryant's idea for Bratz

14   in late 1999 is the earliest date on which Mattel's claims could have accrued).  The

15   Court also expressly found, based on undisputed evidence, that "there is no evidence

16   that Mattel had any knowledge of any of the three generic elements of its claims,

17   and thus no claim accrued, prior to the earliest date identified by the Court, which is

18   July 18, 2003."  June 2, 2008 Order at 2 (referring to generic elements of

19   wrongdoing, causation and harm).  That finding is itself dispositive because it shows

20   that, if there was concealment, the period of tolling caused thereby could not have

21   expired prior to July 18, 2003.  The law is clear that tolling resulting from fraudulent

22   concealment does not end until a plaintiff has, at a bare minimum, "knowledge" of

23   the generic elements of *both* harm and causation.  *Hynix Semiconductor*, 2007 WL

24   3284060, *3 (N.D. Cal. 2003) (tolling based on fraudulent concealment ends when

25   the plaintiff has "a suspicion of wrongdoing, *coupled with a knowledge* of the harm

26   and its cause") (emphasis added).  The *Snapp & Assocs.* case cited by defendants

27   supports that minimum standard. (requiring "knowledge of the harm and its cause")

28

1   Indeed, Mattel contends that something more -- "near-actual" notice of the specific

2   harm -- is required to end a period of tolling due to concealment. *See, e.g.*,

3   *Garamendi v. SDI Vendome SA*, 276 F. Supp. 2d 1030, 1042-3 (C.D. Cal 2003).

4       Accordingly, because (1) the Court has found as a matter of law that Mattel

5   did not have knowledge of *either* the harm or its cause prior to July 18, 2003, and

6   (2) knowledge of both the harm and its cause is required to end a period of tolling

7   where there is concealment, the only issue for the jury is whether there was

8   concealment.  If there was tolling, such tolling could not have ended before July 18,

9   2003 -- the first date on which Mattel could possibly have learned of the specific

10  harm at issue and its cause under the Court's prior findings.  Because the earliest

11  possible end-of-tolling date (July 18, 2003) is long after the April 27, 2001 and

12  April 27, 2002 dates that would render Mattel's claims for conversion and

13  intentional interference with contractual relations timely, there is no need for the

14  jury to make a finding as to the duration of the tolling.  If the jury finds

15  concealment, Mattel's claims are timely.

16       Defendants' objection that the proposed instruction is objectionable because it

17  suggests that concealment by one defendant would toll as to all is also not well

18  taken.  Mattel's proposed verdict form includes separate findings regarding

19  fraudulent concealment as to each defendant, rendering the concern raised by

20  defendants moot.

21

22

23

24

25

26

27

28

**MATTEL'S SPECIAL JURY INSTRUCTION NO. ____**

**AFFIRMATIVE DEFENSE—CONSENT**

The defendants claim that Mattel consented to the wrongful conduct underlying Mattel's claims against the defendants in this case.  To prevail on this affirmative defense, the defendants must prove that Mattel knew of the defendants' wrongful conduct and consented to such conduct, and that such consent was obtained without any fraud or mistake.

**Authority:**  2 Schwing, *California Affirmative Defenses*, § 32:3, at 197 (2007)  ("To be a defense, the consent given must have been to the very act or circumstances that caused the harm giving rise to the action.") (citation omitted); *Greenawalt v. Rogers*, 151 Cal. 630, 635 (1907) ("An apparent consent is not real or free when obtained through . . . fraud [or] mistake.").

**DEFENDANTS' OBJECTIONS TO AFFIRMATIVE DEFENSE—CONSENT**

The MGA Parties object to this instruction on the grounds that it omits any explanation or definition of the term "consent" – specifically, the MGA Parties object that the proposed instruction does not explain that consent may be actual or apparent.  See CACI No. 1302 (citing Rest. 2d Torts § 892).  The MGA Parties respectfully submit that the instruction on consent should include the following:

Consent is the actual or apparent willingness for conduct of another to occur.

Actual consent may be expressed in words or acts, silence or inaction, when the circumstances or other evidence establish that the silence or inaction is intended to give consent; actual consent need not be communicated to the person taking the alleged wrongful act.

Apparent consent exists when a person's acts or words, silence or inaction, would be understood by a reasonable person as intended to indicate consent, and in fact so understood by the person doing the alleged wrongful act.

See MGA Parties Proposed Jury Instruction "Affirmative Defense – Consent."

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

The proposed addition to Mattel's instruction is erroneous and unintelligible to the extent it purports to inform the jury that "actual consent need not be communicated to the person taking the alleged wrongful act." The authorities cited by defendants in their proposed instruction do not support this erroneous statement of the law.

Defendants' proposed addition to Mattel's instruction is misleading and prejudicial to Mattel because defendants purport to inform the jury that "silence or inaction" may be sufficient to establish consent but fail to explain that is not the case when the "apparent consent" was "obtained through . . . fraud [or] mistake." *Greenawalt v. Rogers*, 151 Cal. 630, 635 (1907). Mere silence or inaction due to a defendant's fraudulent omissions or through mistake of fact does not support a consent defense, and it is misleading for defendants to suggest to the jury otherwise.

Finally, the model instruction cited by defendants is inapplicable because it relates to the element of a claim for battery that requires a plaintiff to prove a lack of consent. *See* CACI No. 1302.

**Damages**


**CACI 3901**

**INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED**

**FOR INTENTIONAL INTERFERENCE WITH**

**CONTRACTUAL RELATIONS**


In Phase 1A, you determined that Mattel had proved its claim for intentional interference with contractual relations against the defendants MGA and Isaac Larian.  You must now decide how much money will reasonably compensate Mattel for this harm.  This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by MGA's and Mr. Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm.  However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)     Compensatory and general damages, including disgorgement of profits earned by MGA and Mr. Larian as a result of their wrongful conduct;

(2)     Prejudgment interest at the maximum rate, which is 7%, calculated from the date Mattel's claim arose;

(3)     Punitive damages.


**Authority:**  CACI No. 3901; *GHK Assocs. v. Mayer Group*, 224 Cal. App. 3d 856, 874-76 (1990); *Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120, 1140 (1986).

1
2
3
4

## DEFENDANTS' OBJECTIONS TO INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

5   The MGA Parties object to this instruction because it does not explain that Mattel's

6   damages cannot be based on the MGA Parties' purported interference with Mattel's

7   rights to Bratz, or the MGA Parties' profits derived therefrom. .  See 4/25/2008 Order

8   Granting in Part, Denying in Part, and Deferring in Part the Parties' Motions for Partial

9   Summary Judgment, at 2. ("[T]he tortuous interference with contract claim is

10  preempted to the extent that it is based on Mattel's rights to Bratz.").  The preceding

11  instruction is further objectionable to the extent that it does not require Mattel to prove

12  that it suffered any financial loss resulting from the loss of the benefits of the

13  contractual relationship in question and consequential losses, if any, caused by the

14  alleged interference.  See BAJI § 7.89 The proceeding instruction is further

15  objectionable because, in altering the model instruction, Mattel has eliminated the legal

16  requirement that the jury find a causal connection between specific acts of wrongdoing

17  and the purported harms to Mattel.  See CACI No. 3901 (2008) The instruction is also

18  objectionable because Mattel lacks any evidentiary basis to seek punitive damages. See

19  Barry v. Raskov, 232 Cal. App. 3d 447, 457 (1991) (trial court properly refused to

20  instruct jury on punitive damages, as there was not clear and convincing evidence of

21  fraud); see also Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("[a] party is

22  entitled to an instruction about his or her theory of the case if it is supported by law and

23  has foundation in the evidence").

24

25  The MGA Parties further object to the portion of the instruction related to

26  prejudgment interest as misleading.  Prejudgment interest is only appropriate where

27  the plaintiff is seeking compensation for loss of use of money or property. See Cal.

28

Civ. Code § 3288; <u>Greater Westchester Homeowners Ass'n v. City of Los Angeles</u>, 26 Cal. 3d 86, 102–103 (1979) ("[S]uch interest represents the accretion of wealth which money or particular property could have produced during a period of loss."). To the extent Mattel seeks "disgorgement of profits earned by MGA and Mr. Larian," Mattel does not seek "compensation" of any kind, including for the "loss of use" of any funds to which it was entitled at the time its claim arose.  Prejudgment interest is therefore unavailable on Mattel's disgorgement claims.  Likewise, the instruction is misleading because it does not explain that prejudgment interest cannot be calculated on a judgment for punitive damages.  <u>Lakin v. Watkin Associated Industries</u>, 6 Cal. 4th 644, 664 (1993) ("We therefore conclude that section 3291 does not authorize the award of prejudgment interest on punitive damages.").

# MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

Mattel's proposed instruction conforms to the model instruction found in CACI, as required by the Court. *See* Court's Standing Scheduling Order, at 9. Accordingly, defendants' objection to the form of the proposed instruction should be overruled.

Defendants' objection that the proposed instruction is objectionable because "it does not explain that Mattel's damages cannot be based on the MGA Parties' purported interference with Mattel's rights to Bratz, or the MGA Parties' profits derived therefrom" is misguided. This instruction simply informs the jury of the appropriate measure of damages for the tort of intentional interference with contractual relations, including compensatory and general damages, interest and punitive damages. Moreover, defendants appear to misconstrue the Court's prior ruling. The Court's ruling expressly recognized that this claim may be based on "MGA's acts that may be found to have aided and abetted the breach or induced the breach of Bryant's fiduciary duty." April 25, 2008 Order, at 2. The jury determined in Phase 1A that Bryant breached his fiduciary duty to maintain the confidentiality of Mattel's confidential information, which includes the Bratz-related works Mattel owns pursuant to the Inventions Agreement, and that defendants aided and abetted that breach. Accordingly, the jury can certainly consider defendants' improper use and disclosure of confidential Bratz-related information in awarding damages to Mattel for this claim. The issue is not Mattel's actual copyrights in Bratz works; rather, the issue is defendants' interference with Bryant's contractual obligation to communicate the works to Mattel and not disclose this confidential Mattel information to defendants. As the Court has stated, such issues are "qualitatively different from Mattel's copyright claim," which will be adjudicated in Phase 1B. *Id.*

1    Moreover, contrary to defendants' assertion, there is no basis to inform the

2    jury that it may not consider any of the profits that defendants realized from Bratz.

3    Mattel is entitled to recover all benefits that defendants obtained as a result of their

4    wrongful conduct, including Bratz-related profits.

5    Defendants' objections that the instruction should inform the jury that Mattel

6    must prove (1) financial loss, and (2) a causal connection between defendants'

7    wrongdoing and the harm to Mattel likewise have no merit.  The jury has already

8    decided those issues -- which are elements of a cause of action for intentional

9    interference and on which the jury was instructed in Phase 1A -- in Mattel's favor.

10   *See* Jury Instruction No. 22 (informing the jury that the fifth and sixth elements of a

11   cause of action for intentional interference are: "That Mattel was harmed in some

12   way" and "That the conduct of MGA and/or Mr. Larian was a substantial factor in

13   causing Mattel's harm."); Jury Instruction No. 3 (informing the jury that "[a]

14   'substantial factor' is something which is more than a slight, trivial, negligible, or

15   theoretical factor in producing a particular result.").  Liability having been

16   established, it would be legally incorrect and prejudicial to Mattel to inform the jury

17   that Mattel must once again prove that it was harmed as a result of the wrongful

18   conduct.

19   Defendants' objection to the portion of the instruction related to prejudgment

20   interest is also without merit.  Defendants cite no authority for their contention that

21   prejudgment interest is not available on Mattel's disgorgement claims.  Prejudgment

22   interest may be awarded in the discretion of the jury.  *See* Cal. Civ. Code § 3288.

23   One of the purposes of a prejudgment interest award is to deny defendants the

24   benefit of their ill-gotten gains.  *See Kraus v. Trinity Management Services, Inc.*, 67

25   Cal. Rptr. 2d 210, 224-25 (1997), *rev'd on other grounds*, ("Prejudgment interest is

26   designed both to return a plaintiff to the position he was in before defendant's wrong

27   *as well as to prevent a defendant from benefiting in any way from the wrongful*

28

1   *withholding of a plaintiff's money*.") (emphasis added); *Cf. S.E.C. v. Lipkin*, 2006

2   WL 435035, at *3 (E.D.N.Y. 2006) (stating, in the context of an S.E.C. enforcement

3   action, that the purpose of a prejudgment interest award "is to strip the wrongdoer of

4   all benefits of his wrongdoing.").  Here, a prejudgment interest award would further

5   this policy by depriving MGA and Mr. Larian the benefits of their wrongful conduct

6   -- which include not only their profits, but also the interest they earned on those

7   profits.

8        Defendants have no basis to object to the reference to punitive damages.

9   Mattel is pursuing punitive damages against defendants based on its allegation in

10  this case that they aided and abetted Bryant's breaches of his fiduciary duty and duty

11  of loyalty "with malice, fraud and oppression" and "in conscious disregard of

12  Mattel's rights."  *See* Mattel's Counterclaims, at ¶¶ 141, 154.  Defendants have not

13  moved for summary adjudication or judgment as a matter of law as to Mattel's

14  claims for punitive damages, and the Court has recognized that Mattel is pursuing

15  punitive damages against the defendants in this phase.  It is well settled that

16  "[w]hether or not punitive damages should be awarded and the amount to be

17  awarded are within the discretion of the jury . . . ."  *Hannon Eng'g, Inc. v. Reim*, 126

18  Cal. App. 3d 415, 431 (1981).  Mattel's proposed instructions appropriately inform

19  the jury as to the elements of a claim for punitive damages, and that it must be

20  proved by clear and convincing evidence.  *See* Mattel's Proposed Jury Instruction re:

21  Punitive Damages—Individual and Entity Defendants.

22       Mattel does not agree that the proposed instruction states that prejudgment

23  interest may be awarded on an amount of punitive damages awarded.  The two

24  forms of relief are listed separately; the reference to Mattel's claim for prejudgment

25  interest expressly relates to the claim (i.e., intentional interference) and comes

26  before the punitive damages reference; and the punitive damages instruction does

27  not include any request for prejudgment interest.

28

**CACI 3901**

**INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND BREACH OF THE DUTY OF LOYALTY**

In Phase 1A, you determined that Mattel had proved its claims against the defendants MGA and Isaac Larian for aiding and abetting Carter Bryant's breach of fiduciary duty and breach of the duty of loyalty.  You must now decide how much money will reasonably compensate Mattel for this harm.  This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by MGA's and Mr. Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm.  However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)     Compensatory and general damages, including disgorgement of profits earned by MGA and Mr. Larian as a result of their wrongful conduct;

(2)     Prejudgment interest at the maximum rate, which is 7%, calculated from the date Mattel's claim arose;

(3)     Punitive damages.


**Authority:**  CACI No. 3901.

# DEFENDANTS' OBJECTIONS TO INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND BREACH OF THE DUTY OF LOYALTY

The preceding instruction is objectionable to the extent it seeks disgorgement of profits earned by MGA and Mr. Larian, for the reasons set forth in the MGA Parties' objection to Mattel's Special Jury Instruction, "Disgorgement of Profits." First, as shown, , profits for the breach of fiduciary duty of loyalty are limited to those profits earned by the agent while the agent owed a fiduciary duty. Second, the findings of the Court and the jury with respect to Mr. Bryant's breaches of fiduciary duty do not implicate profits generated by the sale of Bratz and related products. Rather, Mattel's damages are limited to those caused by (1) Mr. Bryant's disclosure of "Proprietary Information," as distinct from Mr. Bryant's "Inventions," both of which were defined under the Inventions Agreement, and (2) Mr. Bryant's consummation of an agreement with MGA while employed by Mattel. Additionally, the preceding instruction is objectionable to the extent it seeks MGA's profits from the commercial use of Carter Bryant's sketches because such damages claims are preempted by federal copyright law. Del Madera Props. v. Rhodes & Gardner, Inc., 820 F.2d 973, 977 (9th Cir. 1987), overruled on other grounds, Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994)).

The proceeding instruction is further objectionable because, in altering the model instruction, Mattel has eliminated the legal requirement that the jury find a causal connection between specific acts of wrongdoing and purported harm to Mattel. See CACI No. 3901 (2008) The instruction is also objectionable to the extent that it does not require Mattel to prove that it suffered any financial loss resulting from the conduct found to be aiding and abetting a breach of duty. It also fails to caution the jury that it

1   should award damages only for the conduct found to constitute aiding and abetting the

2   breaches at issue.  Thus, if the jury finds that MGA and Larian aided and abetted

3   Bryant's use of Mattel resources in breach of his duties, the jury should be told that it

4   must award damages for the harm caused by the loss of those resources, that is the

5   value of those lost resources at the time they were used.  Similarly, if the jury found

6   that MGA and Larian aided and abetted Bryant's breach of his duties by accepting

7   additional work from MGA, the jury should be told that it must award damages to

8   compensate Mattel in an amount equal to the harm caused by Bryant accepting such

9   additional work from MGA.

10

11   The MGA Parties further object to the portion of the instruction related to prejudgment

12   interest as misleading.  Prejudgment interest is only appropriate where the plaintiff is

13   seeking compensation for loss of use of money or property. See Cal. Civ. Code § 3288;

14   Greater Westchester Homeowners Ass'n v. City of Los Angeles, 26 Cal. 3d 86, 102–

15   103 (1979) ("[S]uch interest represents the accretion of wealth which money or

16   particular property could have produced during a period of loss.").  To the extent Mattel

17   seeks "disgorgement of profits earned by MGA and Mr. Larian," Mattel does not seek

18   "compensation" of any kind, including for the "loss of use" of any funds to which it

19   was entitled at the time its claim arose.  Prejudgment interest is therefore unavailable on

20   Mattel's disgorgement claims.  Likewise, the instruction is misleading because it does

21   not explain that prejudgment interest cannot be calculated on a judgment for punitive

22   damages.  Lakin v. Watkin Associated Industries, 6 Cal. 4th 644, 664 (1993) ("We

23   therefore conclude that section 3291 does not authorize the award of prejudgment

24   interest on punitive damages.").

25

26   In the same vein, if the jury finds that Bryant breached his duties by directly competing

27   with Mattel while still employed at Mattel, it must award damages to compensate

28

Mattel for the harm caused by that competition during the term of his employment.  In addition, if the jury finds Bryant breached his duties by presenting the BRATZ sketches owned by Mattel to MGA, it must compensate Mattel for the harm caused by that breach, that is the value of the sketches at the time of the breach.  See Restatement (Second) of Torts § 876 (1979); BAJI § 12.57 (2008) (as modified); Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966) (remanding to assess damage to plaintiff book publisher for the costs incurred to replace personnel recruited by president and competitor using confidential information in breach of president's fiduciary duty); GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000) (damages for breach of fiduciary duty were expenses incurred to recruit new employees); Charles T. Powner, Co. v. Smith, 91 Cal. App. 101 (1928) (damages were profits on directly competitive sales resulting from use of employer's time and facilities); Sumner v. Nevin, 4 Cal. App. 347, 350 (1906) (damages were commissions received while still employed); see also Design Strategies Inc. v. Davis, 384 F. Supp. 2d 649 (S.D.N.Y. 2005) (damages were amount of salary earned during time employee was disloyal, and not the profits from a contract that evidence showed employer would not have been awarded); Frye-Tech, Inc. v. Harris, 46 F. Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of resources including employee time used to develop competing products).

Finally, the instruction is objectionable because Mattel lacks any evidentiary basis to seek punitive damages. See Barry v. Raskov, 232 Cal. App. 3d 447, 457 (1991) (trial court properly refused to instruct jury on punitive damages, as there was not clear and convincing evidence of fraud); see also Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence").

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Mattel's proposed instruction conforms to the model instruction found in CACI, as required by the Court. *See* Court's Standing Scheduling Order, at 9. Accordingly, defendants' objection to the form of the proposed instruction should be overruled.

Defendants' objections are without merit, for the reasons set forth in Mattel's Statement in Support of Proposed Instruction -- Disgorgement of Profits. Defendants recognize that Mattel is entitled to seek disgorgement of profits obtained by defendants as a result of their wrongful conduct, but claim that Mattel is limited to only "profits earned by the agent while agent owed a fiduciary duty." That is erroneous as a matter of law. Mattel is entitled to recover all profits obtained by defendants as a result of their wrongful conduct in aiding and abetting Bryant's breaches of duty. Mattel's proposed instruction informs the jury that Mattel seeks only those profits "earned by MGA and Mr. Larian as a result of their wrongful conduct." Defendants' proposed limitation is contrary to law and prejudicial to Mattel. Pursuant to CACI No. 3901 (which embodies *Cal. Civ. Code* § 3333), Mattel is entitled to recover damages for all harm "caused by MGA's and Mr. Larian's wrongful conduct, even if the particular harm could not have been anticipated." *See Cal. Civ. Code* § 3333 ("For the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate *for all the detriment proximately caused thereby, whether it could have been anticipated or not*."). This includes disgorgement of all benefits, at any time. *See County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 543 (2007) ("Disgorgement of profits is particularly applicable in cases dealing with breach of a fiduciary duty"; "Active participants in the breach of fiduciary duty by another are accountable for all advantages they gained thereby and are liable to the beneficiary

of the duty"); Restatement of Restitution, § 201 (2008) ("Where a fiduciary in violation of his duty to the beneficiary communicates confidential information to a third person, the third person, if he had notice of the violation of duty, holds upon a constructive trust for the beneficiary any profit which he makes through the use of such information."); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1127 (C.D. Cal. 2003) (a party who aids and abets a breach of fiduciary duty will be jointly liable) (citing *Heckmann v. Ahmanson*, 168 Cal. App. 3d 119 (1985)). Moreover, Bryant remained Mattel's fiduciary even after he left Mattel with respect to Mattel's confidential information, so Defendant's purported distinction between pre- and post-October 19, 2000 losses is misguided and irrelevant.

Defendants' contention that the instruction is objectionable to the extent it seeks MGA's profits from the commercial use of Carter Bryant's sketches, on the grounds that such damages claims are preempted by the copyright act, is also erroneous. First, defendants are simply trying to resurrect an argument previously rejected by the Court. Mattel's claims for aiding and abetting breach of duty are not preempted by the Copyright Act. The only authority cited by defendants, *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973 (9th Cir. 1987), is distinguishable both because it involved a different legal claim (unfair competition) and because that claim was indistinguishable from copyright infringement (alleging the defendant had misappropriated the plaintiff's "time and effort" in creating maps and documents). Id. at 977. Mattel's aiding/abetting claims do not focus on the "time and effort" involved in creating Bratz. Rather, they are predicated on Bryant's breaches of his statutory duty of loyalty and his fiduciary obligations created by the Inventions Agreement, including his misuse and disclosure of Mattel's confidential information and work for a competitor. Such claims are not preempted. See, e.g., *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005) (rejecting contention similar to MGA's here that claims are preempted merely because they

involve ownership of expression protected by copyright; claims based on "use" of information protected by copyright in violation of contractual obligations are not preempted); *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. 2004) (distinguishing *Del Madera*; holding that even implied contractual obligations avoid preemption); *Balboa Ins. Co. v. Trans Global Equities*, 218 Cal. App. 3d 1327, 1352 (1990) (*Del Madera* does not apply where there are "broader allegations of breach" beyond creation of a copyright).

Ample case law, including from the Ninth Circuit, confirms that Mattel's aiding/abetting claims contain an element that Mattel's copyright claims do not, and are not preempted. In *Oddo v. Ries*, 743 F.2d 630, 635 (9th Cir. 1984), for example, the Circuit held that an allegation that a partner breached his fiduciary duty "is quite different from the interests preempted by copyright," and thus was not preempted. Indeed, Congress expressly carved out such claims from the Copyright Act's preemption provision. See William F. Patry, *Patry on Copyright*, § 18:22 (2007).

Moreover, MGA's attempt to convert Mattel's aiding and abetting claims into copyright claims based on the relief sought fails because, in evaluating preemption, courts look at the allegations supporting liability, not the desired remedies. See, e.g., *Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1151 (N.D. Cal. 2007) ("The remedy ... does not inform the court's decision, only whether the state law right includes an extra element.")

Defendants' objections that the instruction should inform the jury that Mattel must prove (1) financial loss, and (2) a causal connection between defendants' wrongdoing and the harm to Mattel likewise have no merit. The jury has already decided those issues when it found that Mattel was harmed by Bryant's breach of fiduciary duty, that Bryant's breach of duty was a substantial cause of Mattel's harm and that defendants substantially assisted Bryant's breach of duty. *See* Jury Instruction Nos. 25 and 26. Indeed, the Court already informed the jury of the legal

1   meaning of "substantial factor" in Phase 1A.  *See* Jury Instruction No. 3 (informing

2   the jury that "[a] 'substantial factor' is something which is more than a slight, trivial,

3   negligible, or theoretical factor in producing a particular result.").  Accordingly, it is

4   prejudicial and misleading for defendants to tell the jury it must make those same

5   findings again before awarding damages to Mattel.

6       Defendants' objection to the portion of the instruction related to prejudgment

7   interest as misleading is without merit.  Defendants cite no authority for their

8   contention that prejudgment interest is not available on Mattel's disgorgement

9   claims.  Prejudgment interest may be awarded in the discretion of the jury.  *See* Cal.

10  Civ. Code § 3288.  One of the purposes of a prejudgment interest award is to deny

11  defendants the benefit of their ill-gotten gains.  *See Kraus v. Trinity Management*

12  *Services, Inc.*, 67 Cal. Rptr. 2d 210, 224-25 (1997), *rev'd on other grounds*,

13  ("Prejudgment interest is designed both to return a plaintiff to the position he was in

14  before defendant's wrong *as well as to prevent a defendant from benefiting in any*

15  *way from the wrongful withholding of a plaintiff's money.*") (emphasis added); *Cf.*

16  *S.E.C. v. Lipkin*, 2006 WL 435035, at *3 (E.D.N.Y. 2006) (stating, in the context of

17  an S.E.C. enforcement action, that the purpose of a prejudgment interest award "is to

18  strip the wrongdoer of all benefits of his wrongdoing.").  Here, a prejudgment

19  interest award would further this policy by depriving MGA and Mr. Larian the

20  benefits of their wrongful conduct.

21      Defendants have no basis to object to the reference to punitive damages.

22  Mattel is pursuing punitive damages against defendants based on its allegation in

23  this case that they aided and abetted Bryant's breaches of his fiduciary duty and duty

24  of loyalty "with malice, fraud and oppression" and "in conscious disregard of

25  Mattel's rights."  *See* Mattel's Counterclaims, at ¶¶ 141, 154.  Defendants have not

26  moved for summary adjudication or judgment as a matter of law as to Mattel's

27  claims for punitive damages, and the Court has recognized that Mattel is pursuing

28

punitive damages against the defendants in this phase.  It is well settled that "[w]hether or not punitive damages should be awarded and the amount to be awarded are within the discretion of the jury . . . ."  *Hannon Eng'g, Inc. v. Reim*, 126 Cal. App. 3d 415, 431 (1981).  Mattel's proposed instructions appropriately inform the jury as to the elements of a claim for punitive damages, and that it must be proved by clear and convincing evidence.  *See* Mattel's Proposed Jury Instruction re: Punitive Damages—Individual and Entity Defendants.

Mattel does not agree that the proposed instruction states that prejudgment interest may be awarded on an amount of punitive damages awarded.  The two forms of relief are listed separately; the reference to Mattel's claim for prejudgment interest expressly relates to the claim (i.e., aiding and abetting) and comes before the punitive damages reference; and the punitive damages instruction does not include any request for prejudgment interest.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S SPECIAL JURY INSTRUCTION NO. ____
# DISGORGEMENT OF PROFITS

Mattel is entitled to obtain disgorgement of profits as an element of its damages.  Under the law, MGA and Isaac Larian are not permitted to retain profits or advantages they obtained by engaging in the wrongful acts of aiding and abetting breach of fiduciary duty and duty of loyalty that you have found.  Accordingly, if you find that MGA and/or Mr. Larian obtained profits or advantages because of these wrongful acts, those profits and advantages should be awarded to Mattel.

**Authority:**  Restatement of Restitution, § 201 (2008) ("Where a fiduciary in violation of his duty to the beneficiary communicates confidential information to a third person, the third person, if he had notice of the violation of duty, holds upon a constructive trust for the beneficiary any profit which he makes through the use of such information."); *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 543 (2007) ("Disgorgement of profits is particularly applicable in cases dealing with breach of a fiduciary duty"; "Active participants in the breach of fiduciary duty by another are accountable for all advantages they gained thereby and are liable to the beneficiary of the duty"); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1127 (C.D. Cal. 2003) (a party who aids and abets a breach of fiduciary duty will be jointly liable) (citing *Heckmann v. Ahmanson*, 168 Cal. App. 3d 119 (1985)); *Xum Speegle, Inc. v. Fields*, 216 Cal. App. 2d 546 (1963) (upholding accounting of all insurance commissions wrongfully diverted to defendant in action for breach of fiduciary duty); *Adams v. Herman*, 106 Cal. App. 2d 92, 99 (1951) ("It is an integral part of that rule that, if the agent makes a secret profit from the agency, the principal may recover such profit."); *Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1086 (9th Cir. 2003) ("Although there are few reported cases addressing the appropriate

1  remedy, those we have found have also required employees to turn over profits

2  received as a result of breaching their duty of loyalty."); Restatement (2d) of

3  Agency, § 403 ("If an agent receives anything as a result of his violation of a duty of

4  loyalty to the principal, he is subject to a liability to deliver it, its value, or its

5  proceeds, to the principal.").

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' OBJECTIONS TO DISGORGEMENT OF PROFITS**

This instruction is misleading to the extent it seeks disgorgement of MGA's profits pursuant to Mattel's claim for aiding and abetting Carter Bryant's breaches of his fiduciary duty and duty of loyalty.  As a threshold matter, Mattel's aiding and abetting claims, predicated on Carter Bryant's breach of his fiduciary duty and duty of loyalty, do not implicate profits generated by the sale of Bratz fashion dolls and Bratz-related products.  Conversely, Mattel's disgorgement theory is limited to a demand for profits from the allegedly infringing sale of Bratz fashion dolls and related products.  Accordingly, disgorgement is not available as a damages theory for Mattel's aiding and abetting duty of loyalty and fiduciary duty claims.

The jury has found that the breach of fiduciary duty that underlies Mattel's aiding and abetting claim is limited to Carter Bryant's disclosure of "Propriety information." Propriety information is defined under the Inventions Agreement as information that "derives independent economic value, actual or potential, from not being generally known to the public."  Examples given include Mattel's relationship with third parties, including customers and suppliers.

The Court has ruled that Carter Bryant's drawings are "Inventions" as defined by Paragraph 2 of the Inventions Agreement.  That paragraph was not included in the Court's Final Jury Instructions As Given defining Mr. Bryant's fiduciary duty and duty of loyalty to Mattel.  (See Final Jury Instructions As Given, Jury Instruction No. 28.) Moreover, Mr. Bryant's drawings do not derive "independent economic value, actual or potential, from not being generally known to the public."  To the extent they have value, that value derives from Mattel's copyright in the drawings, which right flows

MATTEL'S THIRD AMENDED PROPOSED JURY INSTRUCTIONS FOR PHASE 1B—DISPUTED SET

1  from the Copyright Act and permits Mattel, among other things, to pursue infringement

2  actions against allegedly infringing works.

3

4  As respects Carter Bryant's duty of loyalty, the jury has merely found that Mr. Bryant's

5  consummation of an agreement with MGA while employed by Mattel constituted a

6  breach of that duty.  (See Final Jury Instructions As Given, Jury Instruction No. 28.)

7  The Court's instruction made no reference to MGA's sale of allegedly infringing Bratz

8  fashion dolls or Bratz related products – all of which occurred after Mr. Bryant left

9  Mattel.

10

11  Moreover, Mattel's instruction fails to make clear that its potential damage award is

12  limited to the disgorgement of Carter Bryant's profits.  As an initial matter, the

13  aiding/abetting party does not stand on equal footing with the fiduciary vis-a-vis her

14  principal.  As an arm's length tortfeasor, the aider/abettor's liability is different from

15  that saddled on the fiduciary.  While the law permits the disgorgement of the

16  fiduciary's profits in order to preserve the sanctity of this relationship, no case

17  authorizes the disgorgement of the aiding/abetting party's separate and distinct profits.

18  One commentator differentiated the two forms of liability:

19      Two important conditions of third-party liability distinguish it from the

20      fiduciary's own liability to the beneficiary.  First, a fiduciary is responsible

21      for all breaches of duty, whether knowing or negligent, intentional or

22      unintentional. In contrast, a third party's liability arises only when she

23      knowingly participates in the breach: she must know that the

24      contemplated act is a breach and know that her actions will assist the

25      fiduciary in the breach. Second, the beneficiary's remedy against a third-

26      party participant is more constrained. Although a fiduciary may have to

27      disgorge profits earned through the breach, and the beneficiary need not

28

MATTEL'S THIRD AMENDED PROPOSED JURY INSTRUCTIONS FOR PHASE 1B—DISPUTED SET

1    prove actual harm before recovering from the fiduciary, a third-party

2    participant is liable only for actual harm caused to the beneficiary.

3    Robert W. Tuttle, "THE FIDUCIARY'S FIDUCIARY: LEGAL ETHICS IN

4    FIDUCIARY REPRESENTATION", 1994 U. Ill. L. Rev. 889, 901-902 (1994) (citing

5    Patricia L. Loughlan, "Liability for Assistance in a Breach of Fiduciary Duty", 9

6    Oxford J. Legal Stud. 260, 2664-65 (1989)).

7

8    In some cases, where the fiduciary is ultimately deemed liable for her profits, the court

9    will in turn hold the aider/abettor jointly liable with the fiduciary for the latter's profits.

10   People v. Bestline Products, Inc., 61 Cal. App. 3d 879, 919 (Cal. App. 2d Dist. 1976)

11   ("One who knowingly aids and abets a fiduciary to make secret profits may be held

12   liable jointly with the fiduciary for such secret profits").  California law is consistent in

13   holding that the aiding/abetting party's liability is concurrent with that of the fiduciary.

14   That is, the aider/abettor's liability at a maximum is joint with the fiduciary for the

15   principal's losses and the fiduciary's profits.  Rosenthal v. Gould, 273 Cal. App. 2d

16   239, 243 (1969) ("it is equally clear that their liability is co-extensive with Gould's if,

17   as determined by the trier of the fact, they conspired with Gould and aided and abetted

18   him in the breach of his fiduciary obligations"); Anderson v. Thacher, 76 Cal. App. 2d

19   50, 72 (1946) ("And where, after the violation of a fiduciary obligation, an amount is

20   found to be due from the agent, judgment for the same amount may also be rendered

21   against those proven to have fraudulently aided in the attempt of the fiduciary to obtain

22   secret profits, although they themselves are not fiduciaries, and even though they

23   receive no share of the profits"); Hickson v. Gray, 91 Cal. App. 2d 684, 686-87 (1949)

24   ("If through fraud and conspiracy another person assists a real estate broker in violating

25   his fiduciary obligation to his principal by making a secret profit and retaining the

26   proceeds, he, as well as the fiduciary, is equally liable for all consequences of the fraud

27   and conspiracy regardless of the extent or his participation or the share of the profit he

28

1  has obtained"); Reid v. Robinson, 64 Cal. App. 46, 58 (1923) ("the law of torts is to the

2  effect that every person concerned in a wrong to another which results in damage is

3  liable therefor, irrespective of the degree in which he therein participates and entirely

4  without reference to the benefits which he may receive on account thereof").

5

6  While an aider/abettor's liability for disgorgement of the fiduciary's profits is supported

7  in case law, disgorgement of the aider/abettor's profits is not.  Indeed, Mattel is yet to

8  point to a single case authorizing disgorgement of the aider/abettor's profits connected

9  to a fiduciary's breach of duty.  Mattel cites a section of the Restatement of Restitution

10 that has only been applied in the real property contest.  For example, in Midstate

11 Amusement Corp. v. Rivers, 54 F. Supp. 738, 739 (D. Wash. 1944), defendant

12 conspired with co-defendants to buy real property based on information he obtained

13 through his role as a fiduciary.  Plaintiff sought transfer of the real property.  The case

14 provides no authority for the disgorgement of profits – from the fiduciary or from a

15 third party.

16

17 Similarly, in Ohio Oil Co. v. Sharp, 135 F.2d 303 (10th Cir. Okla. 1943), plaintiffs

18 hired a third party to conduct geophysical surveys in order to identify land aptly suited

19 for oil-drilling.  Id.  After the third party conducted these surveys, an employee shared

20 the results, in breach of his obligation, to defendant.  Relying on this information,

21 defendant obtained leases over the land in question authorizing him to engage in

22 drilling.  Once again, Plaintiffs sought a constructive trust over real property: the gas

23 leases in question.

24

25 The cases cited to support Mattel's instruction are equally inapposite.  In County of San

26 Bernardino v. Walsh, 158 Cal. App. 4th 533, 537 (Cal. App. 2d Dist. 2007), plaintiff

27 sued Walsh and Mays for their role in bribing Hlawek, the County's Chief

28

Administrative Officer.  The damages consisted of Hlawek's salary, the direct bribes made to Hlawek, and most of Mays' consulting fees received from NorCal.  Id.  The court explained that Mays and Hlawek were both fiduciaries owing duties to the County.  Id.  The court then found that liability extended to Walsh as an "active participant[ ] in a breach of such duty."  Id.  The court's award consisted of "most of Mays's consulting fees from NorCal" but is silent with respect to any benefit obtained by Walsh, the non-fiduciary.  Id. at 540.  Instead, Walsh, the non-fiduciary, shares liability for the benefit conferred upon Mays, a fiduciary, as well as the losses incurred by the County.

In Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101 (C.D. Cal. 2003), plaintiffs sought $200 million in damages from defendant banking institutions in connection with their alleged aiding and abetting of a fiduciary's ponzi scheme which resulted in more than $250 million that was not returned to plaintiffs.  Id. at 1109.  The decision makes no reference to any profits by defendants.  In fact, defendants moved to dismiss because plaintiffs failed to plead that any personal financial gain inhered to defendants.  Id. at 1127-29.  The court denied defendants' motion to dismiss explaining that personal financial gain was not a prerequisite to liability.  Id.  Neilson, therefore, provides no support for the proposition that an aider/abettor's profits may be disgorged.

In Heckmann v. Ahmanson, 168 Cal. App. 3d 119 (1985), plaintiff Disney stockholders sued the Steinberg Group, who greenmailed Disney, and Disney's directors who paid the greenmail.  Id. at 123.  The plaintiffs sought a constructive trust over the Steinberg Group's profits.  Id.  The court did not predicate this remedy on an aiding/abetting theory.  Instead, the court explained that, "if plaintiffs prove the Steinberg Group breached a fiduciary duty to the corporation and its shareholders in the sale of stock to

1  the corporation the plaintiffs would be entitled to a constructive trust upon the profits of

2  that sale." Id.

3

4  In Xum Speegle, Inc. v. Fields, 216 Cal. App. 2d 546 (1963), the defendant, a director

5  and an officer of plaintiff, started a corporation that directly competed with plaintiff,

6  using confidential customer information. Id. at 551. The court found that plaintiff was

7  entitled to an accounting over all insurance commissions diverted to defendant

8  company. Id. at 552. The court granted "a trust imposed for a period of five years

9  upon 43 specified accounts of clients diverted from plaintiff to defendant Growers." Id.

10 Given the defendant's direct fiduciary duty to the plaintiff, it is not surprising that the

11 court never characterizes defendant company as an "aiding/abetting" party.

12

13 In Adams v. Herman, 106 Cal. App. 2d 92 (1951), plaintiffs owned a parcel of land that

14 they wanted to sell using defendant as their real estate agent for $10,5000. Id.

15 Defendant sold the property on plaintiffs' behalf for $10,500 to his wife who in turn

16 sold it for $11,500. Id. at 95. Plaintiffs later learned about the resale and demanded the

17 $1,000 in profit. Id. The court explained that, by virtue of his status as plaintiffs'

18 agent, defendant real estate agent owed plaintiffs a fiduciary duty. Id. at 99. As such,

19 the court found that secret profits earned by defendant could be recovered by plaintiffs.

20 Id. The court further explained that "a sale by an agent of his principal's property to

21 his, the agent's wife, is the same as a sale to himself, and the same rules are applicable

22 as if the agent sold to himself." Id. at 102. Once again, the case does not address

23 aiding/abetting liability.

24

25 In Eckard Brandes, Inc. v. Riley, 338 F.3d 1082, 1085 (9th Cir. 2003), employee

26 defendants violated their duties of loyalty by establishing a competing business. Id. at

27 1085. The court affirmed the district court's award of the disgorgement of the

28

1   employee's profits earned "as a result of breaching their duty of loyalty." <u>Id.</u> at 1086.

2   Again, the case does not involve third party liability.   Indeed, the profits that the

3   employees were disgorged of were those that they earned during the period of

4   disloyalty.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3       Defendants' objections to this proposed instruction should be overruled.

4  According to defendants, they should be permitted to gain -- to the tune of hundreds

5  of millions of dollars -- directly from their intentional torts with impunity, merely

6  because they only cut Bryant in for a portion of their gains.  That is not the law.

7       As a matter of law, Mattel's potential recovery against MGA and Isaac Larian

8  for their wrongful conduct found by the jury is not limited to the amount of profits

9  Carter Bryant obtained as a result of his own wrongful conduct.  The only authority

10 defendants cite for this purported limitation on the proper measure of damages in

11 this case, a 1994 Illinois law review article, is inapt.  Mattel is entitled to recover all

12 profits MGA and Larian obtained as a result of their wrongful conduct, including

13 aiding and abetting Bryant's breaches of fiduciary duty and the duty of loyalty,

14 which includes the profits and benefits they obtained as a result of this wrongful

15 conduct relating to sales of Bratz dolls and related products.

16      First, contrary to defendants' assertions, Bryant's Bratz works clearly qualify

17 as Proprietary Information that Bryant had a fiduciary duty to keep confidential, as

18 the jury found.  MGA asserts that because the Court found that Bryant owed a

19 fiduciary duty to Mattel arising out of ¶ 1(a) of the Inventions Agreement to

20 maintain the confidentiality of all Mattel "Proprietary Information," and because

21 Bryant's Bratz works qualify as "Inventions" under ¶ 2 of the Inventions Agreement,

22 Bryant's Bratz works cannot also qualify as Proprietary Information.  This is

23 nonsensical.  It does not follow that simply because an invention falls under the

24 scope of ¶ 2(a), it cannot also qualify as Proprietary Information under ¶ 1(b).  In

25 fact, under ¶¶ 1(a) and (b) of the Inventions Agreement, Proprietary Information is

26 defined as including "information that [the employee] may ***develop or discover as a***

27 ***result of [his] employment*** with the Company" and any "information including

28

formula, pattern compilation, device, method, technique, or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use."  This definition encompasses any inventions contemplated in ¶ 2(a) and certainly includes new doll designs that have yet to hit the market, such as Bryant's Bratz works, which have independent economic value from not being generally known to Mattel competitors (regardless of whether or not Mattel has registered copyrights in the particular works).

Second, defendants' contention that the Court made no reference to MGA's sale of Bratz dolls and related products in the Final Jury Instructions is misleading. The Court explained in the Final Jury Instructions that Bryant "breached his duty of loyalty to Mattel when he entered into a contract with MGA, Mattel's competitor, while still employed by Mattel, ***to produce a line of fashion dolls to be marketed in direct competition with Mattel's products***," and the jury determined in Phase 1A that Defendants aided and abetted that breach of duty.  (See Final Jury Instructions As Given, Jury Instruction No. 28.).  MGA's sale of Bratz is the subject of Bryant's and MGA's wrongful agreement and is a direct result of Bryant's breach and MGA's and Larian's aiding and abetting of that breach.

Finally, the law is clear that Mattel is entitled to recover all profits and other benefits that MGA and Larian obtained by engaging in the wrongful act of aiding and abetting breach of fiduciary duty.  *See* Restatement of Restitution, § 201 (2008) ("Where a fiduciary in violation of his duty to the beneficiary communicates confidential information to a third person, the third person, if he had notice of the violation of duty, holds upon a constructive trust for the beneficiary any profit which **he** makes through the use of such information.") (emphasis added); *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 543 (2007) ("Disgorgement of profits is particularly applicable in cases dealing with breach of a fiduciary duty"; "Active

1  participants in the breach of fiduciary duty by another are accountable for all

2  advantages they gained thereby and are liable to the beneficiary of the duty ").

3       Defendants misread the facts in *County of San Bernadino*, which are directly

4  analogous to the case at hand.  Defendants Walsh and Mays were found liable for

5  bribing defendant Hlawek, the County's Chief Administrative Officer, to hire a sub-

6  contractor without competitive bidding because Walsh was receiving kickbacks

7  from the subcontractor.  *Id.* at 539.  As defendants point out, the Court found that

8  Walsh, who was not himself a fiduciary, was liable for his role as an active

9  participant in Hlawek's breach of his fiduciary duty to the County.  The Court

10  upheld the judgment against defendants, which included a disgorgement of the

11  kickbacks that *Walsh* received from the sub-contractor as a result of the illegal

12  scheme even though he was not himself a fiduciary.  *Id.* at 540-543 ("The judgment

13  against Mays/Walsh takes back the money *they* reaped from their personal fraud and

14  dishonesty.  It awarded to the County that which was rightfully the County's").

15       Even the authorities defendants now cite make this clear.  As defendants

16  quote, the court in *Hickson* held that, if one aids another "in violating his fiduciary

17  obligation to his principal by making a secret profits and retaining the proceeds, *he*,

18  as well as the fiduciary, is equally liable for *all* consequences of the fraud and

19  conspiracy regardless of the extent of his participation or the share of the profit he

20  has obtained."  *Hickson v. Gray*, 91 Cal. App. 2d 684, 686-87 (1949) (emphasis

21  added).  Indeed, as this case makes clear, an aider and abettor is liable even for

22  profits he did *not* obtain; he certainly is liable for the profits he did actually obtain.

23  *See Neilson*, 290 F. Supp. 2d at  1127 (aider and abettors may be liable even for

24  profits they did not themselves obtain).

25       None of the authorities cited by defendants supports their erroneous assertion

26  that Mattel's damages are limited to Bryant's profits only.  At best, the cases cited by

27  defendants show that MGA and Larian are jointly and severally liable to Mattel for

28

1  Bryant's profits as well.  But, the fact that MGA and Larian are jointly and severally

2  liable to Mattel for Bryant's profits does not alter the fact that they are themselves

3  liable to Mattel for the profits and benefits they obtained as a result of their

4  wrongful conduct.  As a matter of law, they are.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CACI 2102

## PRESUMED MEASURE OF DAMAGES FOR CONVERSION

In Phase 1A of this trial, you found that Mattel had proved its claims for conversion against MGA, Isaac Larian and MGA Hong Kong.  You must now decide how much money will reasonably compensate Mattel for the harm.  This compensation is called "damages."

Mattel must prove the amount of its damages.  However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm.  You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)     The fair market value of the tangible Bratz works created by Carter Bryant while he was employed by Mattel; and

(2)     Prejudgment interest at the maximum rate, which is 7%, calculated from the date Mattel's property was converted;

(3)     Reasonable compensation for the time and money spent by Mattel in attempting to recover this property;

(4)     Punitive damages.

**Authority:**  CACI No. 2102 (modified); *Betzer v. Olney*, 14 Cal. App. 2d 53, 61 (1937).

# DEFENDANTS' OBJECTIONS TO PRESUMED MEASURE OF DAMAGES FOR CONVERSION

The preceding instruction is objectionable because it does not define the concept of fair market value and does not explain when to measure it, failing to explain that fair market value is the highest price that a willing buyer would have paid to a willing seller, assuming: (1) That there is no pressure on either one to buy or sell; and (2) That the buyer and seller know all the uses and purposes for which the tangible physical property is reasonably capable of being used. See CACI § 2102. Here, the fair value market value should be measured as of the time that the property allegedly was converted, not now. See Cal. Civ. Code, § 3336; Virtanen v. O'Connell, 140 Cal. App. 4th 688, 708 (2006); Spates v. Dameron Hospital Assn., 114 Cal. App. 4th 208, 221(2003); Lueter v. Cal., 94 Cal. App. 4th 1285, 1302 (2002). The instruction is also potentially misleading in that it should explain to the jury that they may not award to Mattel the ancillary value of the works created by Bryant while at Mattel, in other words, that they cannot award any sort of damages that would be analogous to those permissible under the Copyright Act because the Court has held that Mattel's claim may only be based on tangible things, not the ideas represented therein. See April 25, 2008 MSJ Order at 3.

The MGA Parties also object because this instruction fails to distinguish among the defendants and advise the jury that it must make separate findings with respect to each defendant. Finally, the instruction is objectionable because Mattel lacks any evidentiary basis to seek punitive damages. See Barry v. Raskov, 232 Cal. App. 3d 447, 457 (1991) (trial court properly refused to instruct jury on punitive damages, as there was not clear and convincing evidence of fraud); see also Jones v. Williams, 297 F.3d

930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence").

The MGA Parties object to the portion of the instruction related to prejudgment interest as misleading because it does not explain that prejudgment interest cannot be calculated on a judgment for punitive damages.  Lakin v. Watkin Associated Industries, 6 Cal. 4th 644, 664 (1993).

-144-

## **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Mattel's proposed instruction conforms to the model instruction found in CACI, as required by the Court. *See* Court's Standing Scheduling Order, at 9. Accordingly, defendants' objection to the form of the proposed instruction should be overruled.

Defendants' objection that the proposed instruction should explain that the jury cannot award "the ancillary value of the works created by Bryant at Mattel," is unintelligible and confusing. There is no need to instruct the jury as to any of defendants' purported preemption concerns. The instruction makes clear that the conversion claim is based on tangible property, and not ideas.

Defendants also have no basis to object to the reference to punitive damages. Mattel is pursuing punitive damages against defendants based on its allegation in this case that they converted Mattel's property "with malice, fraud and oppression" and "in conscious disregard of Mattel's rights." *See* Mattel's Counterclaims, at ¶ 161. Defendants have not moved for summary adjudication or judgment as a matter of law as to Mattel's claims for punitive damages, and the Court has recognized that Mattel is pursuing punitive damages against the defendants in this phase. It is well settled that "[w]hether or not punitive damages should be awarded and the amount to be awarded are within the discretion of the jury . . . ." *Hannon Eng'g, Inc. v. Reim*, 126 Cal. App. 3d 415, 431 (1981). Mattel's proposed instructions appropriately inform the jury as to the elements of a claim for punitive damages, and that it must be proved by clear and convincing evidence. *See* Mattel's Disputed Jury Instructions, *infra*, at 207 (CACI 3947 re Punitive Damages). Mattel does not agree that the proposed instruction states that prejudgment interest may be awarded on an amount of punitive damages awarded. The two forms of relief are listed separately; the reference to Mattel's claim for prejudgment interest expressly relates to the

1  conversion and comes before the punitive damages reference; and the punitive

2  damages instruction does not include any request for prejudgment interest.

3  　　　Mattel does not object to defendants' additional language regarding "fair

4  market value" from CACI No. 2102.  Accordingly, Mattel proposes the following

5  amended instruction:

6

7  　　　In Phase 1A of this trial, you found that Mattel had proved its

8  　　　claims for conversion against MGA, Isaac Larian and MGA Hong

9  　　　Kong.  You must now decide how much money will reasonably

10  　　　compensate Mattel for the harm.  This compensation is called

11  　　　"damages."

12  　　　Mattel must prove the amount of its damages.  However, Mattel

13  　　　does not have to prove the exact amount of damages that will provide

14  　　　reasonable compensation for the harm.  You must not speculate or

15  　　　guess in awarding damages.

16  　　　The following are the specific items of damages claimed by

17  　　　Mattel:

18  　　　(1)　　The fair market value of the tangible Bratz works created

19  　　　by Carter Bryant while he was employed by Mattel; and

20  　　　(2)　　Prejudgment interest at the maximum rate, which is 7%,

21  　　　calculated from the date Mattel's property was converted;

22  　　　(3)　　Reasonable compensation for the time and money spent

23  　　　by Mattel in attempting to recover this property;

24  　　　(4)　　Punitive damages.

25  　　　"Fair market value" is the highest price that a willing buyer

26  　　　would have paid to a willing seller, assuming: (1) That there is no

27  　　　pressure on either one to buy or sell; and (2) That the buyer and seller

28

1   know all the uses and purposes for which the tangible physical

2   property is reasonably capable of being used.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

**<u>17.22</u>**

**<u>COPYRIGHT—DAMAGES</u>**

**<u>(17 U.S.C. § 504)</u>**

5       If you find for the plaintiff, Mattel, on any of its copyright infringement

6  claims against the defendants, you must determine Mattel's damages.  Mattel is

7  entitled to recover the actual damages suffered as a result of the infringement.  In

8  addition, Mattel is also entitled to recover any profits of the defendants attributable

9  to the infringement.  Mattel must prove damages by a preponderance of the

10  evidence.

11

12       **Authority:**  9th Cir. Civ. Jury Instr. 17.22 (2007).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEFENDANTS' OBJECTIONS TO 17.22 COPYRIGHT—DAMAGES**

The MGA Parties object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant. Further, the MGA Parties object to this instruction (and Mattel's other copyright damages instructions) because it does not properly explain that the jury must base any damages award on its specific findings of infringement, by considering separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should recover damages based on all of the alleged infringement.

## MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

Mattel's proposed instruction conforms to the Ninth Circuit Model Instruction, as required by the Court.  *See* Court's Standing Scheduling Order, at 9. Accordingly, defendants' objections to the form of the proposed instruction should be overruled.  There is no basis for defendants to object that the Model Instruction, which is merely introductory, must address every defense them, as they apparently believe.  To the extent defendants' concerns have any validity, such as the concern that the jury must address damages as to each defendant separately, they are addressed in other instructions.

**17.24**

**COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS**

**(17 U.S.C. § 504(b))**

Mattel is entitled to any profits of the defendants attributable to the infringement.

You may make an award of the defendant's profits only if you find that the plaintiff showed a causal relationship between the infringement and the defendant's gross revenue.

The defendant's profit is determined by deducting expenses from the defendant's gross revenue.

The defendant's gross revenue is all of the defendant's receipts from sale of a product containing or using the copyrighted work or associated with the infringement.  Mattel has the burden of proving the defendants' gross revenue by a preponderance of the evidence.

Expenses are all operating costs and production costs incurred in producing the defendant's gross revenue.  The defendants have the burden of proving the defendants' expenses by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement.  The defendants have the burden of proving the portion of the profit, if any, attributable to factors other than infringing the copyrighted work.

**Authority:**  9th Cir. Civ. Jury Instr. 17.24 (2007) (modified).

**DEFENDANTS' OBJECTIONS TO COPYRIGHT—DAMAGES—**

**DEFENDANTS' PROFITS**

Contrary to Mattel's reference, this instruction is not part of 9th Circuit Civil Model Jury Instruction 17.24 and it does not accurately state the law.  The MGA Parties further object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant. The MGA Parties further object to this instruction (and Mattel's other copyright damages instructions) because it does not properly explain that the jury must base any damages award on its specific findings of infringement, by considering separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should recover damages based on all of the alleged infringement.  Finally, the MGA Parties object to this instruction because it fails to advise the jurors that they may not include in an award of profits any amount that they took into account in determining actual damages.

1

## MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

2

3       Mattel's proposed instruction conforms to the Ninth Circuit Model Instruction,

4 as required by the Court. *See* Court's Standing Scheduling Order, at 9. Mattel is

5 therefore perplexed by defendants' objection that the proposed instruction "is not

6 part of . . . 17.24 and it does not accurately state the law." In any event, because

7 Model Instruction 17.24 reflects the most recent articulation of the law, defendants'

8 objections to the form of the proposed instruction should be overruled. There is no

9 basis for defendants to object that the model instruction does not adequately explain

10 the measure of damages to the jury, nor do they cite any authority in support of their

11 contention that additional specificity is necessary. The instruction makes clear that

12 the jury should only award profits if Mattel "showed a causal relationship between

13 the infringement and the defendant's gross revenue." Defendants' objection that the

14 instruction fails to inform the jury that they should not include in an award of profits

15 "any amount that they took into account in determining actual damages" should be

16 overruled because the proposed instructions and special verdict forms ask the jury to

17 calculate damages as profits only. Accordingly, this statement is confusing and

18 unnecessary.

19

20

21

22

23

24

25

26

27

28

1     **MATTEL'S SPECIAL JURY INSTRUCTION NO.** ___

2     **COPYRIGHT—DAMAGES—APPORTIONMENT OF PROFITS**

3

4     In determining what portion of the defendants' profits are attributable to

5  copyright infringement, the benefit of the doubt should be given to Mattel, and not

6  defendants.

7

8     **Authority:**  9th Cir. Civ. Jury Instr. 17.24, comments (2007); *Frank Music*

9  *Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1549 (9th Cir. 1989) ("In

10  performing the apportionment, the benefit of the doubt must always be given to the

11  plaintiff, not the defendant . . . .").

-154-

MATTEL'S THIRD AMENDED PROPOSED JURY INSTRUCTIONS FOR PHASE 1B—DISPUTED SET

1
2

## DEFENDANTS' OBJECTIONS TO COPYRIGHT—DAMAGES—APPORTIONMENT OF PROFITS

3

4   The MGA Parties object to the instruction insofar as it suggests that MGA must prove
5   the apportionment of its profits with precision.  All that the law requires is a
6   "reasonable and just apportionment." Abend v. MCA, Inc., 863 F.2d 1465, 1480 (9th
7   Cir. 1988) ("[C]ourts cannot be expected to determine with 'mathematical exactness'
8   an apportionment of profits."); see also Sheldon v. Metro-Goldwyn Pictures Corp., 106
9   F.2d 45, 51 (2d Cir. 1939) (explaining that courts will make "the best estimate [they]
10  can, even though it is really no more than a guess."); Caffey v. Cook, 409 F. Supp. 2d
11  484, 506 (S.D.N.Y. 2006) ("Apportionment is 'not an area susceptible to precise
12  measurement' … particularly where the analysis does not rest on quantifiable factors
13  such as minutes, pages or lines incorporating the infringed work,  but rather on the
14  incorporation of the infringed work into a new presentation."); accord Sygma Photo
15  News, Inc. v. High Soc'y Magazine, Inc., 778 F.2d 89, 95 (2d Cir. 1985) (finding that
16  the trial court "correctly held that want of precision is not a ground for denying
17  apportionment altogether."); Multitherm Corp. v. Fuhr, 1991 U.S. Dist. LEXIS 10475,
18  at *47 (D. Pa. July 24, 1991) (recognizing "that this measure of damages is imprecise"
19  but that all that was required was a "reasonable and just apportionment."); cf. Walker v.
20  Forbes, Inc., 28 F.3d 409, 414 (4th Cir. 1994) (upholding trial court's jury instruction
21  stating that "[i]t is not required that [the defendant] prove these elements to a
22  mathematical exactness.   They must only prove them to a reasonable
23  approximation…."). For this reason, the Fourth Circuit in Walker upheld the trial
24  court's rejection of the very instruction Mattel proposes here.  Id. (upholding rejection
25  of plaintiff's proposed instruction that "Any error or doubt in your mind about the
26  apportionment must be resolved in favor of the Plaintiff").

27
28

1   The MGA Parties further object to the proposed jury instruction insofar as it suggests

2   that when infringing and non-infringing elements "cannot readily be separated," all of

3   the infringer's indirect profits should be awarded to the copyright owner.  That is not

4   the law.  See Cream Records, Inc., v. Jos. Schlitz Brewing Co., 754 F.2d 826, 828 (9th

5   Cir. 1985) ("Although the statute imposes upon the infringer the burden of showing

6   "the elements of profit attributable to factors other than the copyrighted work," 17

7   U.S.C. § 504(b), nonetheless where it is clear ... that not all of the profits are

8   attributable to the infringing material, the copyright owner is not entitled to recover all

9   of those profits merely because the infringer fails to establish with certainty the portion

10  attributable to the non-infringing elements.").

11

12  Moreover, the MGA Parties object to this instruction because it fails to ensure that the

13  jury distinguishes among the defendants and makes appropriate findings with respect to

14  each defendant.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3         Defendants' objections to this proposed instruction should be overruled.

4    Nothing in this instruction "suggests" that defendants must prove apportionment

5    with "mathematical exactness" or that all of defendants' profits should be awarded to

6    Mattel if apportionment is difficult.  Mattel's proposed instruction simply informs

7    the jury that, in apportioning profits as between infringing and non-infringing

8    activities, the benefit of the doubt is to be given to Mattel.  This is supported by the

9    law.  *See* 9th Cir. Civ. Jury Instr. 17.24, comments (2007) (nothing that the law in

10   the Ninth Circuit is that "the benefit of the doubt in apportioning profits is given to

11   the plaintiff."); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545,

12   1549 (9th Cir. 1989) ("In performing the apportionment, the benefit of the doubt

13   must always be given to the plaintiff, not the defendant . . . .").

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MATTEL'S SPECIAL JURY INSTRUCTION NO.**

**COPYRIGHT—DAMAGES—INDIRECT PROFITS**

Indirect profits are the defendant's profits with a less direct connection or link to the infringement.  A plaintiff such as Mattel may be entitled to indirect profits in addition to direct profits.  To recover indirect profits, Mattel must establish a causal relationship between the infringement and the profits generated indirectly from such infringement.

In other words, Mattel must offer some evidence that the infringement at least partially caused the profits that the infringer generated as a result of the infringement.

**Authority:**  9th Cir. Civ. Jury Instr. 17.24 (2007); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 710-11, 714 n.10 (9th Cir. 2004).

-158-

## DEFENDANTS' OBJECTIONS TO COPYRIGHT—DAMAGES— INDIRECT PROFITS

Contrary to Mattel's reference, this instruction is not part of 9th Circuit Civil Model Jury Instruction 17.24 and misstates the law.  Specifically, the MGA Parties object insofar as Mattel's proposed jury instruction mischaracterizes Mattel's burden of proof. To recover indirect profits, Mattel "must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement." Mackie v. Rieser, 296 F.3d 909, 915-16 (9th Cir. 2002).  The MGA Parties also object to the proposed instruction insofar as it confuses the defendant's obligation to apportion elements of indirect profit attributable to factors other than the infringement with the plaintiff's initial burden to prove a causal relationship between the infringement and the indirect profits at issue. Mackie, 296 F.3d at 915 ("[T]here must first be a demonstration that the infringing acts had an effect on profits before the parties can wrangle about apportionment.").  Moreover, the MGA Parties object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant.

The MGA Parties also object to this instruction (and Mattel's other copyright damages instructions) because it does not properly explain that the jury must base any damages award on its specific findings of infringement, by considering separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should recover damages based on all of the alleged infringement. Finally, the MGA Parties also object to this instruction because it is unnecessary and improper and can only confuse and mislead the jury.

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Mattel's proposed instruction explains to the jury that Mattel seeks indirect profits as well as direct profits generated as a result of defendants' copyright infringement.  This is supported by the Ninth Circuit Model Instruction.  *See* 9th Cir. Civ. Jury Instr. 17.24 (2007) ("You may make an award of the defendant's profits only if you find that the plaintiff showed a causal relationship between the infringement and the [profits generated indirectly from the infringement] [defendant's gross revenue].").  A brief additional instruction regarding indirect profits is appropriate because Mattel conformed the model instruction to relate to defendants' gross revenue, and separate instructions are less confusing to the jury.

There is no basis for defendants to object that the proposed instruction does not adequately explain the measure of damages to the jury.  The instruction makes clear that Mattel bears the burden of establishing "a causal relationship between the infringement and the profits generated indirectly from such infringement."  Nothing more is necessary.  None of the additional "explanations" requested by defendants are reflected in any of the Ninth Circuit Model Instructions regarding copyright damages.  Defendants are simply trying to overcomplicate the instructions and confuse the jury.

**MATTEL'S SPECIAL JURY INSTRUCTION NO. \_\_\_**

**COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT**

Mattel also claims that defendants engaged in willful infringement of Mattel's copyrights.  An infringement is considered willful when the plaintiff has proved both of the following elements by a preponderance of the evidence:

    1.    The defendant engaged in acts that infringed the copyright; and

    2.    The defendant knew that those acts infringed the copyright.

A defendant cannot deduct overhead expenses, operating expenses or taxes from his/its gross revenue when the copyright infringement is willful.

**Authority:**  9th Cir. Civ. Jury Instr. 17.27 (2007); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000) (noting that willful infringers are not permitted to deduct income taxes); *Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.*, 752 F.2d 1326, 1331-32 (9th Cir. 1982) ("[a] portion of an infringer's overhead properly may be deducted from gross revenues to arrive at profits, at least where the infringement was not willful, conscious, or deliberate.") (emphasis added); *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 53 (2d Cir. 1939) (a willful infringer may not deduct its income taxes); *Saxon v. Blann*, 968 F.2d 676, 681 (8th Cir. 1992) (a willful infringer may not deduct overhead expenses); *Jarvis v. A & M Records*, 827 F. Supp. 282, 294 (1993) ("[I]f defendant's conduct is willful, overhead may not be deducted"); *Liu v. Price Waterhouse LLP*, 2000 WL 1644585, *6  (N.D. Ill. 2000) (approving jury instruction barring deduction of overhead if the jury were to find willful infringement); 5 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 14.03[C][2] (2006) (it is "settled law" that infringers are not entitled to income tax deductions).

# DEFENDANTS' OBJECTIONS TO COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT

The MGA Parties object to this proposed instruction because Mattel previously represented that it is not asserting willful infringement by the MGA Parties.  (Mattel Inc.'s Reply Memorandum Of Points And Authorities In Further Support Of It's Motion For Partial Summary Judgment at 32-33 ("MGA does not refute the cases Mattel cited to show that copyright infringement does not require intent. … Mattel's inclusion in its complaint of words like 'knowingly' and 'deliberately' do not change the legal elements of ordinary copyright infringement.").)  If it were, then Mattel's instruction that good faith is not a relevant inquiry on copyright infringement should be withdrawn. Moreover, the MGA Parties object to this proposed instruction to the extent that it appears to seek "statutory" damages as described in 17 U.S.C. § 504(c), and Mattel is not seeking statutory damages in this case, which is presumably why Mattel has not included in its proposed instructions 9th Circuit Civil Model Jury Instruction 17.25.  As Mattel stated in connection with its summary judgment motion in response to the MGA Parties' "good faith" affirmative defense:

> MGA suggests that Mattel has subjected itself to such a defense by "indicating that Mattel intends to seek enhanced statutory damages under 17 U.S.C. 504(c)," which does impose a scienter requirement. (MGA Opp. 32.) But MGA's prognostication is off-base: Mattel does ***not*** intend to seek enhanced statutory damages.

(Mattel Inc.'s Reply Memorandum Of Points And Authorities In Further Support Of It's Motion For Partial Summary Judgment at 33 (emphasis in original).)

The MGA Parties also object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to

MATTEL'S THIRD AMENDED PROPOSED JURY INSTRUCTIONS FOR PHASE 1B—DISPUTED SET

1  each defendant.  The MGA Parties further object to this instruction (and Mattel's other

2  copyright damages instructions) because it does not properly explain that the jury must

3  base any damages award on its specific findings of infringement, by considering

4  separately each alleged infringing act and/or product.  Thus, the instruction would

5  mislead the jury by suggesting that if any infringement at all is found, of any of the

6  copyrights at issue, Mattel should recover damages based on all of the alleged

7  infringement.

## **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Defendants are correct that 17 U.S.C. § 504(c) relates to statutory damages and that Mattel does not seek statutory damages pursuant to § 504(c)(1) in this case. But willful infringement is also relevant to the determination of Mattel's damages relating to defendants' profits and potentially apportionment.  A defendant cannot deduct certain expenses, such as taxes and overhead costs, from its gross revenue when the copyright infringement is willful.  *See, e.g.*, *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000) (holding that willful infringer not permitted to deduct income taxes); *Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.*, 752 F.2d 1326, 1331-32 (9th Cir. 1982) (noting that "[a] portion of an infringer's overhead properly may be deducted from gross revenues to arrive at profits, *at least where the infringement was not willful, conscious, or deliberate*.") (emphasis added); *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 53 (2d Cir. 1939) (a willful infringer may not deduct its income taxes); *Saxon v. Blann*, 968 F.2d 676, 681 (8th Cir. 1992) (a willful infringer may not deduct overhead expenses); *Jarvis v. A & M Records*, 827 F. Supp. 282, 294 (1993) ("[I]f defendant's conduct is willful, overhead may not be deducted"); *Liu v. Price Waterhouse LLP*, 2000 WL 1644585, *6  (N.D. Ill. 2000) (approving jury instruction barring deduction of overhead if the jury were to find willful infringement); 5 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 14.03[C][2] (2006) (it is "settled law" that infringers are not entitled to income tax deductions).  Willful infringement can also be relevant to apportionment issues.  *See Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1010 (2d Cir. 1995) (recognizing that willfulness may be relevant to apportionment). Accordingly, the proposed instruction is appropriate even though Mattel is not seeking statutory damages.

1    Moreover, Mattel has consistently informed the Court and defendants in its

2   proposed jury instructions and otherwise that it intends to argue that defendants'

3   infringement was willful for purposes of the jury's damages determination.  This

4   does not impact the law that a plaintiff need not prove willful infringement to

5   recover for copyright infringement in the first instance; as is clear from the face of

6   the proposed instruction, it is relevant only to the jury's evaluation of defendants'

7   claimed deductions for purposes of damages.  Defendants conflate these issues.

8   This is precisely why a separate instruction informing the jury that willfulness need

9   not be shown to establish liability for ordinary copyright infringement is required.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MATTEL'S SPECIAL JURY INSTRUCTION NO.** ___

**AFFIRMATIVE DEFENSE—FAILURE TO MITIGATE**[6]

The defendants claim that Mattel failed to mitigate damages allegedly caused by the defendants' wrongful conduct.  The doctrine of mitigation of damages holds that a plaintiff who suffers damages as a result of a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and may not recover for damages avoidable through ordinary care and reasonable exertion.  The duty to mitigate damages does not require an injured party to do what is unreasonable or impracticable.

The burden of proving that losses could have been avoided by plaintiff by reasonable effort and expense is always on the party who harmed the plaintiff.

**Authority:**  CACI No. 358, comments; *Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994).

---

[6]  Mattel does not believe that any instruction on mitigation is appropriate. However, if any instruction is to be given, Mattel proposes this instruction.

# DEFENDANTS' OBJECTIONS TO AFFIRMATIVE DEFENSE—FAILURE TO MITIGATE

To begin with, the MGA Parties object to Mattel's contention that no instruction regarding failure to mitigate should be given. Failure to mitigate is not strictly viewed as an affirmative defense. As noted in the comments to CACI No. 3931 (which Mattel cites):

> The frequent statement of the principle in the terms of a 'duty' imposed on the injured party has been criticized on the theory that a breach of the 'duty' does not give rise to a correlative right of action. It is perhaps more accurate to say that the wrongdoer is not required to compensate the injured party for damages which are avoidable by reasonable effort on the latter's part.

Green v. Smith, 261 Cal. App. 2d 392, 396 (1968) (internal citations omitted). Thus, the trier of fact considering the amount of damages must also consider whether the defendant has failed to mitigate, such that defendants are not required to compensate plaintiff for any such damages. Second, failure to mitigate is a jury question, as the existence of state and federal jury instructions makes clear and Mattel cites no cases suggesting that mitigation is an equitable defense (because it is not). Any objection based on the Court's April 25, 2008 Order is also premature because that Order did not resolve the issues presented here. Even if the Court makes the ultimate decision as to whether this defense will limit Mattel's claims (and it should not), the jury must still make the factual determinations that underlie the Court's decision, as it must do for all affirmative defenses with factual underpinnings that overlap with the claims to be tried to the jury. Because the defense of mitigation of damages involves the same factual questions as Mattel's proof of its damages claim, the Seventh Amendment requires that

those facts be tried to the jury.   Accordingly, the jury should be given a proper framework for making those factual determinations.

The MGA Parties respectfully suggest that the version of the Ninth Circuit Instruction that they propose is simpler and less confusing for the jury that Mattel's special instruction, and thus should be used here.

## MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

Mattel believes it is unnecessary and potentially misleading to inform the jury regarding a defense of failure to mitigate because Mattel seeks damages in this case in the form of disgorgement of defendants' profits.  The concept of mitigation of damages does not fit in a disgorgement context, and such an instruction could erroneously suggest to the jury that Mattel somehow had a duty to "avoid or reduce" defendants' profits.  Accordingly, this instruction would be prejudicial.

In any event, if presented to the jury at all, mitigation is an affirmative defense and should be presented as such to the jury so that it is clear that defendants are raising this as a potential defense regarding the amount of damages and that defendants bear the burden of proof on this issue.

Defendants propose the Ninth Circuit Model Instruction regarding Damages—Mitigation, but Mattel's state law claims involve issues of California law.  Accordingly, the model instruction found in CACI is appropriate.  *See* Court's Standing Scheduling Order, at 9; *Cal. Rule of Court* 2.1050.

Defendants erroneously state that Mattel's proposed instruction cites CACI No. 3931.  Mattel's proposed instruction relies on CACI No. 358, not CACI No. 3931.  CACI No. 3931 addresses mitigation of "property damage."  In any event, defendants' proposed instruction bears no resemblance to CACI No. 3931.

In light of the mitigation instruction proposed by defendants, Mattel proposes the following amended version of its instruction regarding mitigation:

The defendants claim that Mattel failed to mitigate damages allegedly caused by the defendants' wrongful conduct.  The doctrine of mitigation of damages holds that a plaintiff who suffers damages as a result of a breach of contract or a tort has a duty to take reasonable

1   steps to mitigate those damages and may not recover for damages

2   avoidable through ordinary care and reasonable exertion.  The duty to

3   mitigate damages does not require an injured party to do what is

4   unreasonable or impracticable.

5       The burden of proving that losses could have been avoided by

6   plaintiff by reasonable effort and expense, and the amount of such

7   avoidable losses, is always on the party who harmed the plaintiff.

8

9       **Authority:**  CACI No. 358, comments; *Valle de Oro Bank v.*

10  *Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CACI 3947**

**PUNITIVE DAMAGES—INDIVIDUAL AND ENTITY DEFENDANTS**

If you decide that Isaac Larian's, MGA's or MGA Hong Kong's conduct caused Mattel harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against Mr. Larian only if Mattel proves by clear and convincing evidence that Mr. Larian engaged in that conduct with malice, oppression, or fraud.

You may award punitive damages against MGA or MGA Hong Kong only if Mattel proves that MGA or MGA Hong Kong acted with malice, oppression, or fraud. To do this, Mattel must prove by clear and convincing evidence that the malice, oppression, or fraud was conduct of one or more officers, directors, or managing agents of MGA or MGA Hong Kong, who acted on behalf of MGA or MGA Hong Kong.

"Malice" means that a defendant acted with intent to cause injury or that a defendant's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A defendant acts with knowing disregard when the defendant is aware of the problem dangerous consequences of his or its conduct and deliberately fails to avoid those consequences.

"Oppression" means that a defendant's conduct was despicable and subjected Mattel to cruel and unjust hardship in knowing disregard of its rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that a defendant intentionally misrepresented or concealed a material fact and did so intending to harm Mattel.

An employee is a "managing agent" if he or she exercises substantial independent authority and judgment in his or her corporate decision making such that his or her decisions ultimately determine corporate policy.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following separately for each defendant in determining the amount:

(a)     How reprehensible was that defendant's conduct? In deciding how reprehensible a defendant's conduct was, you may consider, among other factors:

(b)     Is there a reasonable relationship between the amount of punitive damages and Mattel's harm?

(c)     In view of that defendant's financial condition, what amount is necessary to punish him or it and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because a defendant has substantial financial resources.

**Authority:** CACI No. 3947.

## DEFENDANTS' OBJECTIONS TO PUNITIVE DAMAGES—INDIVIDUAL AND ENTITY DEFENDANTS

Mattel lacks any evidentiary basis to request an instruction concerning punitive damages. See Barry v. Raskov, 232 Cal. App. 3d 447, 457 (1991) (trial court properly refused to instruct jury on punitive damages, as there was not clear and convincing evidence of fraud); see also Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence"). Moreover, this instruction is improper because it does not distinguish among the defendants and advise the jury that it must make separate findings with respect to each defendant.

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3        Mattel's proposed instruction conforms to the model instruction found in

4    CACI, as required by the Court.  *See* Court's Standing Scheduling Order, at 9.

5    Accordingly, defendants' objection to the form of the proposed instruction should be

6    overruled.  Defendants have no basis to object to an instruction regarding punitive

7    damages.  Mattel seeks punitive damages against the defendants based on its

8    allegations in this case that defendants acted "with malice, fraud and oppression"

9    and "in conscious disregard of Mattel's rights."  *See* Mattel's Counterclaims, at ¶

10   128.  Defendants have not moved for summary adjudication or judgment as a matter

11   of law as to Mattel's claims for punitive damages.  It is well settled that "[w]hether

12   or not punitive damages should be awarded and the amount to be awarded are within

13   the discretion of the jury . . . ."  *Hannon Eng'g, Inc. v. Reim*, 126 Cal. App. 3d 415,

14   431 (1981).  Mattel's proposed instructions appropriately inform the jury as to the

15   elements of a claim for punitive damages, and that it must be proved by clear and

16   convincing evidence.

17

18

19

20

21

22

23

24

25

26

27

28