THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
(laguiar@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA  90071
Tel.: (213) 687-5000/Fax: (213) 687-5600

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | |
| v. | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| MATTEL, INC., a Delaware corporation, | Honorable Stephen G. Larson |
| Defendant. | MGA PARTIES' REVISED DISPUTED [PROPOSED] PHASE 1-B JURY INSTRUCTIONS |
| AND CONSOLIDATED ACTIONS. | |

### AFFIRMATIVE DEFENSES

| No. | Description | Authority | Page |
|---|---|---|---|
| Special Inst. __ | Affirmative Defenses — General | | 1 |
| CACI 1302 | Affirmative Defenses — Consent | Cal. Civ. Code § 3515; CACI No. 1302 (2008) (as modified). | 2 |
| 9th Cir. 17.19 | Affirmative Defenses — Abandonment | Ninth Circuit Manual of Model Jury Instructions 17.19 (2007); Lopez v. Elec. Rebuilders, Inc., 416 F. Supp. 1133, 1135 (C.D. Cal. 1976); Read v. Turner, 239 Cal. App. 2d 504 (1966). | 3 |
| Special Inst. __ | Affirmative Defenses — 205(d) (Bona Fide Purchaser for Value) | 17 U.S.C. § 205(d); 2 Nimmer on Copyright § 7.16 (2007). | 4 |
| Special Inst. __ | Affirmative Defenses — Good Faith | People v. Webb, 74 Cal. App. 4th 688, 694 (1999); 5 B.E. Witkin, Cal. Proc.: Pleadings § 1008 (4th ed. 1997). | 6 |
| Special Inst. __ | Affirmative Defenses — De Minimis Use | Newton v. Diamond, 388 F.3d 1189, 1192-93 (9th Cir. 2004); Apple Computer v. Microsoft Corp., 35 F.3d 1435, 1439 (9th Cir. 1994). | 7 |
| Special Inst. __ | Statute of Limitations (Fraudulent Concealment) | Final Pre-Trial Conference Order at 6;.Cal. Civ. Proc. Code §§ 338(c) & 339(1); Forcier v. Microsoft Corp., 123 F. Supp. 2d 520, 530 (N.D. Cal. 2000); Charles Lowe Co. v. Xomox Corp., No. C95-0498 SI, 1999 WL 1293362, at *9 (N.D. Cal. Dec. 27, 1999); Menefee v. Ostawari, 228 Cal. App. 3d 239, 245 (1991); 3 B.E. Witkin, Cal. Procedure: Actions, § 575, at 728 (4th ed. 1996); AmerUS Life Ins. Co. v. Bank of Am., N.A., 143 Cal. App. 4th 631, 639 (2006); Strasberg v. Odyssey Group, Inc., 51 Cal. App. 4th 906, 916 (1996); Garamendi v. SDI Venodome SA, 276 F. Supp. 2d 1030, 1041-42 (C.D. Cal 2003); Snapp & Assoc. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson, 96 Cal. App. 4th 884, 890- | 8 |

| No. | Description | Authority | Page |
|---|---|---|---|
| | | 891 (2002). | |

## DAMAGES

| No. | Description | Authority | Page |
|---|---|---|---|
| 9th Cir. 5.1 | Damages—Introduction | Ninth Circuit Manual of Model Jury Instructions, Civil, 5.1 (2007) (as modified). | 10 |
| CACI 3925 | Arguments Of Counsel Not Evidence Of Damages | CACI No. 3925 (2008). | 11 |
| CACI 3901 | Introduction To Tort Damages – Liability Established For Intentional Interference With Contractual Relations | CACI No. 3901 (2008) (as modified). | 12 |
| CACI 430 | Causation:  Substantial Factor | CACI No. 430 (2008) (modified); Wellman v. Dickinson, 682 F.2d 355, 368 (2d Cir. N.Y. 1982) (quoting Marbury Management, Inc. v. Kohn, 629 F.2d 705, 719 (2d Cir. 1980); SEC v. First City Financial Corp., 890 F.2d 1215, 1231 (D.C. Cir. 1989). | 13 |
| Special Inst. __ | Limitations On Damages For Intentional Interference With Contractual Relations | April 25, 2008 Order at 2. | 14 |
| CACI 3901 | Introduction To Tort Damages – Liability Established For Aiding And Abetting Breach Of Fiduciary Duty | CACI No. 3901 (2008) (as modified). | 15 |
| Special Inst. __ | Limitation On Damages For Aiding And Abetting Breach Of Fiduciary Duty | Del Madera Props. v. Rhodes & Gardner, Inc., 820 F.2d 973, 977 (9th Cir. 1987), overruled on other grounds, Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994). | 16 |
| Special Inst. __ | Further Limitation On Damages For Aiding And Abetting Breach Of Fiduciary Duty | People v. Bestline Products, Inc., 61 Cal. App. 3d 879, 919 (1976); Rosenthal v. Gould, 273 Cal.App.2d 239, 243 (1969); Anderson v. Thacher, | 17 |

| | | | |
|---|---|---|---|
| | | 76 Cal. App. 2d 50, 72 (1946); <u>Reid v. Robinson</u>, 64 Cal. App. 46, 58 (1923); <u>GAB Business Services, Inc. v. Lindsey & Newsom Claim Servs., Inc.</u>, 83 Cal. App. 4th 409, 426 (2000), <u>overruled on other grounds by</u>, <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140 (2004); <u>Lindy Pen Co. v. Bic Pen Corp.</u>, 982 F.2d 1400, 1407-1408 (9th Cir. 1993).. | |
| CACI 3901 | Introduction To Tort Damages – Liability Established For Aiding And Abetting Breach Of Duty Of Loyalty | CACI No. 3901 (2008) (as modified). | 19 |
| Special Inst. __ | Limitation On Damages For Aiding And Abetting Breach Of Duty Of Loyalty | <u>Del Madera Props. v. Rhodes & Gardner, Inc.</u>, 820 F.2d 973, 977 (9th Cir. 1987), <u>overruled on other grounds</u>, <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517 (1994). | 20 |
| Special Inst. __ | Further Limitation On Damages For Aiding And Abetting Breach Of Duty Of Loyalty | <u>Rosenthal v. Gould</u>, 273 Cal.App.2d 239, 243 (1969); <u>Bancroft-Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 356-57 (1966); <u>Charles T. Powner, Inc. v. Smith</u>, 91 Cal. App. 101 (1928); <u>Sumner v. Nevin</u>, 4 Cal. App. 347, 350 (1906); <u>Design Strategies v. Davis</u>, 384 F. Supp. 649 (S.D.N.Y. 2005); <u>Frye-Tech, Inc. v. Harris</u>, 46 F. Supp. 2d 1144 (D. Kan. 1999). | 21 |
| CACI 2021 | Presumed Measure Of Damages For Conversion (Civ. Code § 3336) | CACI No. 2021 (2008) (modified); Cal. Civ. Code §3336; <u>Melchior v. New Line Productions, Inc.</u>, 106 Cal. App. 4th 779 (2003); April 25, 20008 Order, at 3. | 22 |
| 9th Cir. 17.24 | Copyright—Damages—Defendants' Profits (17 U.S.C. § 504(B)) | 9th Cir. Model Civ. Jury Instr. 17.24 (2007); <u>Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.</u>, 772 F.2d 505, 518 (9th Cir. 1985). | 24 |
| Special Inst. __ | Copyright—Damages—Indirect Profits | <u>Polar Bear Productions, Inc. v. Timex Corp.</u>, 384 F.3d 700, 711, 714 n.10 (9th Cir. 2004). | 26 |

| Special Inst. __ | Choice Of Alternative Methods Of Determining Plaintiff's Damages | A. A. Baxter Corp. v. Colt Indus., Inc., 10 Cal. App. 3d 144, 160 (1970). | 27 |
|---|---|---|---|
| 9th Cir. 5.3 | Damages—Duty To Mitigate | Ninth Circuit Manual of Model Jury Instructions, Civil, 5.3 (2007); see also CACI No. 3931 (2008). | 28 |
| Special Inst. __ | Duplicative Damages | Pattern Civ. Jury Instr. 5th Cir. 15.14 (2006) (modified); ; CACI No. 361 (2008); Softel v. Dragon Med. & Scientific Communications, 118 F.3d 955, 969 (2d Cir. 1997); Computer Assocs. Int'l v. Altai, Inc., 982 F.2d 693, 720 (2d Cir. 1992); Stein v. United Artists Corp., 691 F.2d 885, 897 (9th Cir. 1982); Sparaco v. Lawler, Matusky, Skelly Engineers, LLP, 313 F. Supp. 2d 247, 250 (S.D.N.Y. 2004); 4 Nimmer on Copyright § 14.01[C]; Kissell Co. v. Gressley, 591 F.2d 47, 51 (9th Cir. Ariz. 1979); Gidatex, S.r.L. v. Campaniello Imports, Ltd., 82 F. Supp.2d 136, 146 (S.D.N.Y. 2000); Compaq Computer Corp. v. Ergonaq Inc., 2001 U.S. Dist. LEXIS 23485 (S.D. Tex. 2001). | 29 |
| 9th Cir. 5.6 | Nominal Damages | Ninth Circuit Manual of Model Civ. Jury Instr. 5.6 (2007) | 31 |

## COPYRIGHT

| No. | Description | Authority | Page |
|---|---|---|---|
| Special Inst. __ | Copyright – Preliminary Instruction | | 32 |
| 9th Cir. 17.1 | Copyright – Defined | Ninth Circuit Manual of Model Jury Instructions 17.1 (2007); 17 U.S.C. § 106; 2-8 Nimmer on Copyright §§ 8.01–8.20; 3 Patry on Copyright §§ 8:1, 9:2; 12-76 Nimmer on Copyright § 12.04[A][1]. | 33 |
| 9th Cir. 17.2 | Copyright – Subject Matter – Generally | Ninth Circuit Manual of Model Jury Instructions 17.2 (2007). | 35 |

| No. | Description | Authority | Page |
|-----|-------------|-----------|------|
| 9th Cir. 17.3 | Copyright – Subject Matter – Idea And Expression | Ninth Circuit Manual of Model Jury Instructions 17.3 (2007); U.S. Constitution, Art. I, § 8, cl. 8; Feist Publications, Inc. v. Rural Telephone Co., 499 U.S. 340, 349-50 (1991); Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156 (1975); Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 556-57 (1985). | 36 |
| 9th Cir. 17.4 | Copyright Infringement – Elements – Ownership And Copying | Ninth Circuit Manual Model Jury Instructions 17.4 (2007) (modified to account for Phase 1-A verdict). | 37 |
| 9th Cir. 17.6 | Copyright Interests – Authorship | Ninth Circuit Manual of Model Jury Instructions 17.6 (2007). | 38 |
| 9th Cir. 17.7 | Copyright Interests—Joint Authors (17 U.S.C. §§ 101, 201(A)) | Ninth Circuit Manual of Model Jury Instructions 17.7 (2007). | 39 |
| 9th Cir. 17.12 | Copyright Interests – Originality | Ninth Circuit Manual of Model Jury Instructions 17.12 (2007).  Feist Publications, Inc. v. Rural Telephone Services, Inc., 499 U.S. 340, 346 (1991) (originality standard is low; "a modicum of creativity"); see also Expert Report of Ralph Oman, dated Feb. 25, 2005, in Team Play, Inc. v. Boyer, 03 C 7240 (N.D. Ill. 2005) (Document M-RO-00174); (2007); 17 U.S.C. § 410(c); 37 C.F.R. § 202.20(b)(2)(i) & (ii). | 41 |
| 9th Cir. 17.14 | Compilation (17 U.S.C. § 101) | Ninth Circuit Manual of Model Jury Instructions 17.14 (2007). | 42 |
| 9th Cir. 17.15 | Copying – Access And Substantial Similarity | Ninth Circuit Manual of Model Jury Instructions 17.15 (2007) (modified). See also 4-13 Nimmer on Copyright § 13.03. | 43 |
| Special Inst. ___ | Copyright Infringement – Independent Creation | Three Boys Music Corp. v. Bolton, 212 F.3d 477, 486 (9th Cir. 2000) (citing Granite Music Corp. v. United Artists Corp., 532 F.2d 718, 721 (9th Cir. | 44 |

| No. | Description | Authority | Page |
|-----|-------------|-----------|------|
| | | 1976)); see also Moore v. Kulicke & Soffa Industries, Inc., 318 F.3d 561 (3d Cir. 2003); Keeler v. Brass Co. v. Continental Brass Co., 862 F.2d 1063 (4th Cir. 1988); Don Post Studios, inc. v. Cinema Secrets, Inc., 124 F. Supp. 2d 311 (E.D. Pa. 2000). | |
| 9th Cir. 17.17 | Copyright Infringement – Extrinsic Test; Intrinsic Test | Ninth Circuit Manual of Model Jury Instructions 17.17 (2007); Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1990); Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir. 2004); Mattel v. Goldberger Doll Mfg. Co., 365 F.3d 133, 136 (2d Cir. 2004); Apple Computer, Inc. v. Microsoft Corporation, 35 F.3d 1435, 1447 (9th Cir. 1994); Data East USA, Inc. v. Epyx, Inc., 862 F.2d 204 (9th Cir. 1988); Fryberger v. Int'l Bus. Machines Corp., 812 F.2d 525, 530 (9th Cir. 1987); Thomas v. The Walt Disney Co., 2008 U.S. Dist. LEXIS 14643 (N.D. Cal. Feb. 14, 2008); Bensbargains.Net v. XPBargains.Com, 2007 U.S. Dist. LEXIS 60544 at 8–10 (S.D. Cal. Aug. 16, 2007); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176 (C.D. Cal. 2001). Nimmer on Copyright § 13.03[B]. | 45 |
| Special Inst. __ | Copyright Infringement – Comparing A Two-Dimensional Work With A Three-Dimensional Work | 1-2 Nimmer on Copyright § 2.08(C)(2). | 52 |
| Special Inst. __ | Copyright Infringement – Multiple Copyright Registrations | Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1144 n.31 (C.D. Cal. 2001); Green v. Schwarzenegger, 1995 U.S. Dist. LEXIS 14031 at ** 61-62 (C.D. Cal. July 17, 1995); 9 Patry on Copyright § 9:66 (2008). | 53 |

| No. | Description | Authority | Page |
|---|---|---|---|
| 9th Cir. 17.20 | Derivative Liability: Vicarious Infringement | Authority: Ninth Circuit Manual of Model Jury Instructions 17.20 (2007). | 54 |
| 9th Cir. 17.21 | Derivative Liability: Contributory Infringement | Ninth Circuit Manual of Model Jury Instructions 17.21 (2007). | 55 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PHASE 1-B – Affirmative Defenses**

<u>**INSTRUCTION NO.**</u>

<u>**AFFIRMATIVE DEFENSES — GENERAL**</u>

I will now instruct you on the affirmative defenses raised by MGA Entertainment, Inc. ("MGA"), Isaac Larian ("Larian"), and MGA Entertainment (HK), Ltd. ("MGA (HK)").

1

## INSTRUCTION NO. 1302

## AFFIRMATIVE DEFENSES — CONSENT

MGA, Isaac Larian, and MGA (HK) have raised the affirmative defense of consent.

If you find that Mattel consented to its employees moonlighting and developing their own artistic work, you must find for Isaac Larian, MGA, and MGA (HK) with respect to claims arising out of Bryant's alleged violations of the Inventions Agreement.

Consent is the actual or apparent willingness for conduct of another to occur.

Actual consent may be expressed in words or acts, silence or inaction, when the circumstances or other evidence establish that the silence or inaction is intended to give consent; actual consent need not be communicated to the person taking the alleged wrongful act.

Apparent consent exists when a person's acts or words, silence or inaction, would be understood by a reasonable person as intended to indicate consent, and in fact so understood by the person doing the alleged wrongful act.

**Authority:** Cal. Civ. Code § 3515; CACI No. 1302 (2008) (as modified).

## INSTRUCTION NO. 17.19

## AFFIRMATIVE DEFENSES — ABANDONMENT

MGA, Isaac Larian, and MGA (HK) have raised the affirmative defense of adandonment.

Larian, MGA, and MGA (HK) contend that a Mattel cannot bring an action for copyright infringement because Mattel abandoned it claims by conducting an internal investigation and concluding that BRATZ did not infringe on its intellectual property.  Mattel cannot claim ownership of a copyright if it was abandoned.

In order to show abandonment, Isaac Larian, MGA and/or MGA (HK) have the burden of proving each of the following by a preponderance of the evidence:

      1.      Mattel intended to surrender ownership rights in the work; and

      2.      Conduct by Mattel which was "consistent with an intent to abandon" or which "implies an abandonment."

Mere inaction does not constitute abandonment of the copyright; however, it may be a factor for you to consider in determining whether Mattel has abandoned its claims.

**Authority:**  Ninth Circuit Manual of Model Jury Instructions 17.19 (2007); Lopez v. Elec. Rebuilders, Inc., 416 F. Supp. 1133, 1135 (C.D. Cal. 1976); Read v. Turner, 239 Cal. App. 2d 504 (1966).

**INSTRUCTION NO. ____**

**AFFIRMATIVE DEFENSES —**

**SECTION 205(D) (BONA FIDE PURCHASER FOR VALUE)**

MGA, Isaac Larian, and MGA (HK) have raised the affirmative defense under Section 205(d) of the Copyright Act.  They contend that the MGA agreement with Carter Bryant dated October 4, 2000 has priority over Mattel's agreement with Carter Bryant dated January 4, 1999.

You may find that the MGA agreement with Bryant has priority over the Mattel agreement with Bryant if you find that the MGA agreement with Bryant was:

    1.    Recorded with the Copyright Office first in such a manner as to give Mattel constructive notice of the transfer; and

    2.    Executed in good faith; and

    3.    For valuable consideration; and

    4.    Without notice of an earlier transfer.

For purposes of this instruction, recordation with the Copyright Office means either (1) the filing of the transfer agreement itself, or (2) registration with the Copyright Office listing ownership by assignment.

**Authority:** 17 U.S.C. § 205(d); 2 Nimmer on Copyright § 7.16 (2007) ("[A]lthough an instrument of transfer to a first purchaser [Mattel] may be recorded prior to the time that the copyright owner purports to sell the same copyright interest to a bona fide subsequent

1  purchaser [MGA], the latter does not have constructive notice of the first purchase if the
2  work has not been registered at the time the subsequent purchaser acquired his interest.").

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

# INSTRUCTION NO. _____

# GOOD FAITH

The good faith of Larian, MGA, and MGA (HK) is a factor that should be considered when assessing any claim by Mattel that Larian, MGA, and/or MGA (HK) acted in bad faith or with bad intent.  To the extent Mattel's claims implicate defendants' intent or mental state, good faith is a relevant inquiry for which Mattel bears the burden of proof.

**Authority:**  People v. Webb, 74 Cal. App. 4th 688, 694 (1999); 5 B.E. Witkin, Cal. Proc.: Pleadings § 1008 (4th ed. 1997) (distinguishing new matters from facts constituting a denial of an element and identifying good faith as the latter and, thus, not an affirmative defense).

**INSTRUCTION NO. \_\_\_\_**

**AFFIRMATIVE DEFENSES — *DE MINIMIS* USE**

MGA, Isaac Larian, and MGA (HK) have raised the affirmative defense of <u>de minimis</u> use.

Larian, MGA, and MGA (HK) contend that even if Mattel can establish that it has a copyright interest in Carter Bryant's drawings, it cannot recover damages in its claim for copyright infringement because any similarities between the protectable elements of the drawings and the protectable elements of the BRATZ dolls are *de minimis*.

Even where there has been some copying, that fact alone is not conclusive of infringement. Some copying is permitted.  In addition to copying, it must be shown that this has been done to an unfair extent.  This principle reflects the legal maxim *de minimis non curat lex* (the law does not concern itself with trifles).  *De minimis* copying is not actionable.

If the similarities between the copyrighted work and the copied work consist only of unprotectable elements and elements in the public domain, then the copying is *de minimis* and no recovery is available.

When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity.

**Authority:**   <u>Newton v. Diamond</u>, 388 F.3d 1189, 1192-93 (9th Cir. 2004); <u>Apple Computer v. Microsoft Corp.</u>, 35 F.3d 1435, 1439 (9th Cir. 1994).

7

1
2
3

**INSTRUCTION NO. \_\_\_\_**

**STATUTE OF LIMITATIONS - FRAUDULENT CONCEALMENT**

4   Mattel's intentional interference with contract claim and conversion claims were <u>not</u> filed
5   within the time set by law.  However, Mattel contends that the doctrine of "fraudulent
6   concealment" saves its claims.

7

8   Isaac Larian and MGA have proven that Mattel did not file its intentional interference
9   claims against them within two years of the occurrence of the acts that Mattel contends
10  were wrongful, in this case, the breach of Carter Bryant's contracts with Mattel.  Larian,
11  MGA, and MGA (HK) have proven that Mattel did not file its conversion claims within
12  three years of the act of wrongfully taking the property that Mattel contends was converted.
13  Thus, Mattel's claim is barred unless Mattel can prove that Larian or MGA fraudulently
14  concealed the facts on which it based its claims.

15

16  In order to prove fraudulent concealment, Mattel must show:

17       1.    Larian, MGA, or MGA(HK) took affirmative steps to conceal the information
18             Mattel would have needed to suspect that wrongdoing had taken place; <u>and</u>
19       2.    Mattel was not aware, and could not have been aware, that wrongdoing had
20             taken place.  If Mattel was aware or could have been aware that wrongdoing
21             had taken place, it does not matter what lengths any defendant may have gone
22             to try to conceal the wrong.

23

24  **Authority:**   Final Pre-Trial Conference Order at 6; Cal. Civ. Proc. Code §§ 338(c) &
25  339(1); <u>Forcier v. Microsoft Corp.</u>, 123 F. Supp. 2d 520, 530 (N.D. Cal. 2000); <u>Charles
26  Lowe Co. v. Xomox Corp.</u>, No. C95-0498 SI, 1999 WL 1293362, at *9 (N.D. Cal. Dec. 27,
27  1999); <u>Menefee v. Ostawari</u>, 228 Cal. App. 3d 239, 245 (1991); 3 B.E. Witkin, <u>Cal.
28  Procedure: Actions</u>, § 575, at 728 (4th ed. 1996); <u>AmerUS Life Ins. Co. v. Bank of Am.</u>,

8

**1**  N.A., 143 Cal. App. 4th 631, 639 (2006); Strasberg v. Odyssey Group, Inc., 51 Cal. App.

**2**  4th 906, 916 (1996); Garamendi v. SDI Venodome SA, 276 F. Supp. 2d 1030, 1041-42

**3**  (C.D. Cal 2003) ("Although a culpable defendant cannot be permitted to benefit from

**4**  intentional concealment, any period of equitable tolling will come to an end once the

**5**  plaintiff has, or should have, notice of his claim."); Snapp & Assoc. Ins. Servs., Inc. v.

**6**  Malcolm Bruce Burlingame Robertson, 96 Cal. App. 4th 884, 890-891 (2002) ("The

**7**  fraudulent concealment doctrine 'does not come into play, whatever the lengths to which a

**8**  defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim.'").

**9**

**10**

**11**

**12**

**13**

**14**

**15**

**16**

**17**

**18**

**19**

**20**

**21**

**22**

**23**

**24**

**25**

**26**

**27**

**28**

**PHASE 1-B – Damages**

**INSTRUCTION NO. 5.1**

**DAMAGES — INTRODUCTION**

In Phase 1A, you found in favor of Mattel as to the following claims: intentional interference with contractual relations, aiding and abetting breach of fiduciary duty, aiding and abetting breach of the duty of loyalty, and conversion.   You must now determine Mattel's damages.  Mattel has the burden of proving damages by a preponderance of the evidence.    Damages means the amount of money that will reasonably and fairly compensate Mattel for any injury you find was caused by the defendants.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

**Authority:**   Ninth Circuit Manual of Model Jury Instructions, Civil, 5.1 (2007) (as modified).

MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

## INSTRUCTION NO. 3925

## ARGUMENTS OF COUNSEL NOT EVIDENCE OF DAMAGES

The arguments of the attorneys are not evidence of damages.  The amount of damages that Mattel has claimed in its written pleadings is not evidence of Mattel's damages.  Your award must be based on your reasoned judgment applied to the testimony of the witnesses and the other evidence that has been admitted during trial.

**Authority:**  CACI No. 3925 (2008)

## INSTRUCTION NO. 3901

## INTRODUCTION TO TORT DAMAGES –

## LIABILITY ESTABLISHED FOR

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

If you decide that Mattel was harmed by MGA's and/or Mr. Larian's interference with Mattel's contract with Carter Bryant, you must first decide whether that interference was a substantial factor in causing the harm to Mattel.

If the interference was a substantial factor, you must then decide how much money will reasonably compensate Mattel for the harm resulting from MGA's and/or Mr. Larian's interference. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by the intentional interference, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

[Lost Profits]

[Loss or Destruction of Personal Property]

**Authority**:  CACI No. 3901 (2008) (as modified)

12

**INSTRUCTION NO. 430**

**CAUSATION:  SUBSTANTIAL FACTOR**

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.  Similarly, when a plaintiff seeks disgorgement of a defendant's profits, the plaintiff must establish that the amount to be disgorged must proceed directly and proximately from the wrongdoing and not be attributable to some supervening cause or causes.

**Authority**:  CACI No. 430 (2008) (modified); Wellman v. Dickinson, 682 F.2d 355, 368 (2d Cir. N.Y. 1982) (quoting Marbury Management, Inc. v. Kohn, 629 F.2d 705, 719 (2d Cir. 1980) (finding that the amount to be disgorged "must proceed directly and proximately from the violation claimed and not be attributable to some supervening cause" in denying claim for disgorgement); SEC v. First City Financial Corp., 890 F.2d 1215, 1231 (D.C. Cir. 1989) ("the court may exercise its equitable power only over property causally related to the wrongdoing").

**INSTRUCTION NO. \_\_\_**

**LIMITATIONS ON DAMAGES FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

In measuring damages under Mattel's claim of intentional interference, you are to consider only those monetary losses (if any) that Mattel suffered as a result of MGA and Mr. Larian's interference with Mattel's contract with Carter Bryant.  You may not consider the MGA Parties' interference (if any) with Mattel's rights to Bratz or any of the revenues, profits, or other benefits realized by MGA or Mr. Larian from Bratz dolls or related products

**Authority**: April 25, 2008 Order Granting in Part, Denying in Part, and Deferring in Part the Parties' Motions for Partial Summary Judgment, at 2 ("[T]he tortuous interference with contract claim is preempted to the extent that it is based on Mattel's rights to Bratz.").

**INSTRUCTION NO. 3901**

**INTRODUCTION TO TORT DAMAGES –**

**LIABILITY ESTABLISHED FOR**

**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

If you decide that Mattel was harmed by MGA's aiding and abetting of Carter Bryant's breach of his fiduciary duty to Mattel, you must decide whether one or more specific acts of misconduct was a substantial factor in causing the harm to Mattel.

If you decide that one or more specific acts of misconduct were substantial factors, you must then decide how much money will reasonably compensate Mattel for the harm caused by the specific conduct. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by MGA and Mr. Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

    [Lost Profits]

    [Loss or Destruction of Personal Property]

**Authority**:  CACI No. 3901 (2008) (as modified).

1

## INSTRUCTION NO. _____

2
## LIMITATION ON DAMAGES FOR AIDING AND ABETTING BREACH OF
3
## FIDUCIARY DUTY  (PREEMPTION)
4

5 In determining the amount of damages to award in connection with Mattel's claim that
6 MGA and Isaac Larian aided and abetted Carter Bryant's breach of his fiduciary duty to
7 Mattel,  you <u>may not </u>consider any revenues, profits or other financial benefits that MGA
8 realized from the use of Mr. Bryant's sketches.

9

10 **Authority**:  <u>Del Madera Props. v. Rhodes & Gardner, Inc.</u>, 820 F.2d 973, 977 (9th Cir.
11 1987), <u>overruled on other grounds</u>, <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517 (1994).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**INSTRUCTION NO. ___**

**FURTHER LIMITATION ON DAMAGES FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

In connection with Mattel's claim thaT MGA and Isaac Larian aided and abetted Mr. Bryant's breach of his fiduciary duty, Mattel's recovery is limited to pecuniary losses caused by Mr. Bryant's breach, and any profits or other gains realized by Mr. Bryant as a result of his breach.

You may not, however, award profits or other benefits that MGA and/or Mr. Larian realized from Bratz in connection with this claim.

**Authority:** <u>People v. Bestline Products, Inc.</u>, 61 Cal. App. 3d 879, 919 (1976) ("One who knowingly aids and abets a fiduciary to make secret profits may be held liable jointly with the fiduciary for such secret profits."); <u>Rosenthal v. Gould</u>, 273 Cal.App.2d 239, 243 (1969) ("it is equally clear that their liability is co-extensive with Gould's if, as determined by the trier of the fact, they conspired with Gould and aided and abetted him in the breach of his fiduciary obligations."); <u>Anderson v. Thacher</u>, 76 Cal.App.2d 50, 72 (1946) ("And where, after the violation of a fiduciary obligation, an amount is found to be due from the agent, judgment for the same amount may also be rendered against those proven to have fraudulently aided in the attempt of the fiduciary to obtain secret profits, although they themselves are not fiduciaries, and even though they receive no share of the profits."); <u>Reid v. Robinson</u>, 64 Cal. App. 46, 58 (1923) ("the law of torts is to the effect that every person concerned in a wrong to another which results in damage is liable therefor, irrespective of the degree in which he therein participates and entirely without reference to the benefits which he may receive on account thereof."); <u>GAB Business Services, Inc. v. Lindsey & Newsom Claim Servs., Inc.</u>, 83 Cal. App. 4th 409, 426 (2000), overruled on other grounds by, <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140 (2004) (damages for breach of

17

fiduciary duty were expenses incurred to recruit new employees); <u>Lindy Pen Co. v. Bic Pen Corp.</u>, 982 F.2d 1400, 1407-1408 (9th Cir. 1993) (affirming lower court's rejection of damage theory because it did not provide a reasonable basis for computation).

**INSTRUCTION NO. 3901**

**INTRODUCTION TO TORT DAMAGES –**

**LIABILITY ESTABLISHED FOR**

**AIDING AND ABETTING BREACH OF DUTY OF LOYALTY**

If you decide that Mattel was harmed by MGA's and/or Isaac Larian's aiding and abetting of Carter Bryant's breach of his duty of loyalty to Mattel, you must decide whether that specific conduct was a substantial factor in causing the harm to Mattel.

If you decide that MGA and/or Mr. Larian's specific conduct was a substantial factor, you must then decide how much money will reasonably compensate Mattel for the harm. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by MGA and Mr. Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

    [Lost Profits]

    [Loss or Destruction of Personal Property]

**Authority**:  CACI No. 3901 (2008).

19

**INSTRUCTION NO. \_\_\_\_**

**LIMITATION ON DAMAGES FOR AIDING AND ABETTING BREACH OF DUTY OF LOYALTY (PREEMPTION)**

In determining the amount of damages to award Mattel in connection with its claim that MGA and Isaac Larian aided and abetted Carter Bryant's breach of his duty of loyalty, you *may not* consider any revenues, profits or other financial benefits that MGA realized from the use of Carter Bryant's sketches.

**Authority**:   Del Madera Props. v. Rhodes & Gardner, Inc., 820 F.2d 973, 977 (9th Cir. 1987), overruled on other grounds, Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994).

**INSTRUCTION NO. \_\_\_\_**

**FURTHER LIMITATION ON DAMAGES FOR AIDING AND ABETTING BREACH OF DUTY OF LOYALTY**

In connection with Mattel's claim than MGA and Isaac Larian aided and abetted Mr. Bryant's breach of his fiduciary duty of loyalty, Mattel's recovery is limited to pecuniary losses caused by Mr. Bryant's breach, and any profits or other gains realized by Mr. Bryant as a result of his breach.

You may not, however, award profits or other benefits that MGA and/or Mr. Larian realized from Bratz in connection with this claim beyond those realized by Mr. Bryant as a result of his breach.

**Authority:** Rosenthal v. Gould, 273 Cal.App.2d 239, 243 (1969) ("it is equally clear that their liability is co-extensive with Gould's if, as determined by the trier of the fact, they conspired with Gould and aided and abetted him in the breach of his fiduciary obligations."); Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966) (remanding to assess damage to plaintiff book publisher for the costs incurred to replace personnel recruited by president and competitor using confidential information in breach of president's fiduciary duty); Charles T. Powner, Inc. v. Smith, 91 Cal. App. 101 (1928) (damages were profits on directly competitive sales resulting from use of employer's time and facilities); Sumner v. Nevin, 4 Cal. App. 347, 350 (1906) (damages were commissions received by disloyal employee while still employed); Design Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005) (damages were amount of salary earned during time employee was disloyal, and not the profits from a contract that evidence showed employer would not have been awarded); Frye-Tech, Inc. v. Harris, 46 F. Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of resources including employee time used to develop competing products).

**INSTRUCTION NO. 2021**

**PRESUMED MEASURE OF DAMAGES FOR CONVERSION (CIV. CODE § 3336)**

In Phase 1(a) of this trial, you found that MGA, Isaac Larian and MGA Hong Kong converted Mattel's property.  You must now decide how much money will reasonably compensate Mattel for the harm. This compensation is called "damages."

Mattel must prove the amount of its damages. However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

1   The fair market value of the sketches and other tangible items that Mr. Bryant created at Mattel and provided to MGA, Mr. Larian, and MGA Hong Kong; and

2   Reasonable compensation for the time and money spent by Mattel in attempting to recover the tangible items.

"Fair market value" is measured as of the time the item was converted.

"Fair market value" is the highest price that a willing buyer would have paid to a willing seller, assuming: 1) that there is no pressure on either one to buy or sell; and 2) that the buyer and seller know all the uses and purposes for which the sketches and tangible items are reasonably capable of being used.

Conversion does not apply to ideas.  Therefore, in determining the fair market value of Mr. Bryant's sketches and other tangible items converted, you are not to consider the value of

22

1   Mr. Bryant's ideas.

2

3   **Authorities**:  CACI No. 2021 (2008) (modified); Cal. Civ. Code §3336; <u>Melchior v. New

4   Line Productions, Inc.</u>, 106 Cal. App. 4th 779 (2003); April 25, 20008 Order, at 3.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INSTRUCTION NO. 17.24

## COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS (17 U.S.C. § 504(b))

If you find that MGA infringed Mattel's copyrights, Mattel is entitled to MGA's profits that are attributable to the infringement.

You may make an award of MGA's profits only if you find that Mattel has showed a causal relationship between the infringement and the defendant's gross revenue.

MGA's profit is determined by subtracting all expenses from the defendant's gross revenue.

MGA's gross revenue is all of the MGA's receipts from the sale of a product containing or using the copyrighted work. Mattel has the burden of proving MGA's gross revenue by a preponderance of the evidence.

Expenses are all operating costs and production costs incurred in producing the defendant's gross revenue. The defendant has the burden of proving the defendant's expenses by a preponderance of the evidence.

If you find that MGA's profits were derived from both infringing and non-infringing activities, not all of MGA's profits can be attributed to the infringement. MGA has the burden of proving the percentage of the profit, if any, attributable to factors other than infringing the copyrighted work.

MGA is not required to prove with precision the percentage of its profits attributable to factors other than the infringement, so long as the apportionment is reasonable and just.

1  **Authorities**:  9th Cir. Model Civ. Jury Instr. 17.24 (2007*)*; <u>Frank Music Corp. v. Metro-</u>

2  <u>Goldwyn-Mayer, Inc.</u>, 772 F.2d 505, 518 (9th Cir. 1985).

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

## INSTRUCTION NO. ___

## COPYRIGHT—DAMAGES—INDIRECT PROFITS

Mattel seeks indirect profits in this case.  Indirect profits have a less direct connection or link to the infringement. To recover indirect profits, Mattel must establish a non-speculative, causal relationship between the infringement and the profits generated indirectly from such infringement.

**Authorities**:  <u>Polar Bear Productions, Inc. v. Timex Corp.</u>, 384 F.3d 700, 711, 714 n.10 (9th Cir. 2004).

MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

## INSTRUCTION NO. \_\_\_

## CHOICE OF ALTERNATIVE METHODS OF DETERMINING PLAINTIFF'S

## DAMAGES

If you determine that an award of damages is warranted by the facts and these instructions, you must select a method of damages for determining the amount of damages. Select the method that you find produces the most accurate and certain result. However, if you find that find that either of two methods produces a result that is certain and accurate and will fully compensate plaintiff, you should use the method that produces the lowest amount of damages.

**Authority:** <u>A. A. Baxter Corp. v. Colt Indus., Inc.</u>, 10 Cal. App. 3d 144, 160 (1970).

## INSTRUCTION NO. 5.3

## DAMAGES—DUTY TO MITIGATE

The plaintiff has a duty to use reasonable efforts to mitigate damages.  To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

    1.    that the plaintiff failed to use reasonable efforts to mitigate damages; and

    2.    the amount by which damages would have been mitigated.

**Authority:**   Ninth Circuit Manual of Model Jury Instructions, Civil, 5.3 (2007); see also CACI No. 3931 (2008).

## <u>INSTRUCTION NO.</u>

## <u>DUPLICATIVE DAMAGES</u>

You may find that Mattel is entitled to damages awards under multiple claims.  However, you may not award compensatory damages more than once for the same injury or harm.  Mattel is only entitled to be made whole once, and may not recover more than what was lost.  Of course, if you find that different injuries are attributed to the separate claims, then you must compensate Mattel fully for all injuries.

You may also find that Mattel is entitled to damage awards from multiple defendants.  However, you may not award damages more than once for the same injury or harm.  Also, you may not award the same profits from two separate defendants.  Mattel is only entitled to be made whole once, and may not recover more than what was lost.

**Authority**:  Pattern Civ. Jury Instr. 5th Cir. 15.14 (2006) (modified); ; CACI No. 361 (2008); <u>Softel v. Dragon Med. & Scientific Communications</u>, 118 F.3d 955, 969 (2d Cir. 1997) (upholding district court's refusal to award damages on trade secret claim because such damages would have been "coextensive with the damages it had already awarded for copyright infringement"); <u>Computer Assocs. Int'l v. Altai, Inc.</u>, 982 F.2d 693, 720 (2d Cir. 1992) (finding that a plaintiff "may not obtain a double recovery where the damages for copyright infringement and trade secret misappropriation are coextensive."); <u>Stein v. United Artists Corp.</u>, 691 F.2d 885, 897 (9th Cir. 1982) (dismissing claim where "danger of double recovery [was] manifest"); <u>Sparaco v. Lawler, Matusky, Skelly Engineers</u>, LLP, 313 F. Supp. 2d 247, 250 (S.D.N.Y. 2004) ("the plaintiff could not receive 'double recovery where the damages for the copyright infringement and trade secret misappropriation are coextensive."); 4 Nimmer on Copyright § 14.01[C] ("When violation of two distinct rights results from the same conduct, multiple recoveries are permissible - but only to the extent that two different types of harm have been suffered."); <u>Kissell Co. v.</u>

29

Gressley, 591 F.2d 47, 51 (9th Cir. Ariz. 1979) (remanding to "the trial court to reduce [plaintiff's] judgment" because of duplicative recovery); Gidatex, S.r.L. v. Campaniello Imports, Ltd., 82 F. Supp.2d 136, 146 (S.D.N.Y. 2000) ("In determining whether the two damages awards are coextensive, the key inquiry is whether the awards address the same injury"); Compaq Computer Corp. v. Ergonome Inc., 2001 U.S. Dist. LEXIS 23485 (S.D. Tex. 2001) ("The fraud damages are merely coextensive with the infringement damages.").

# INSTRUCTION NO. 5.6

# NOMINAL DAMAGES

The law which applies to this case authorizes an award of nominal damages. If you find for the plaintiff but you find that the plaintiff has failed to prove damages as defined in these instructions, you must award nominal damages. Nominal damages may not exceed one dollar.

**Authority:**  Ninth Circuit Manual of Model Civ. Jury Instr. 5.6 (2007).

**PHASE 1-B – Copyright**

**INSTRUCTION NO.** ___

**PRELIMINARY INSTRUCTION**

Based on your findings in Phase 1-A of this trial regarding when certain drawings were "created" by Carter Bryant, the Court has determined as a matter of law that Mattel owns the copyrights to Mr. Bryant's drawings.  Mattel alleges that MGA's Bratz-related products have infringed their copyrights in Mr. Bryant's drawings.  The Court has also determined that Mattel's copyright claims are limited to the 16 Bryant drawings that Mattel has registered with the Copyright Office.  Those drawings are as follows: TX [302] [VA 1-378-648, VA 1-378-649, VA 1-378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653, VA 1-378-654, VA 1-378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-378-659, VA 1-378-660, VAu 715-270, VAu 715-271 and VAu 715-273.]

MGA denies that any of its Bratz products infringe Mattel's copyrights.

**Authority:**  Given the number of drawings at issue in the Phase 1-A trial, it is important that the jury understand that Mattel's infringement claims are limited to the 16 registered drawings listed in the Final Pretrial Conference Order.

## INSTRUCTION NO. 17.1

## COPYRIGHT – DEFINED

Copyright is the exclusive right to copy.  This right to copy includes the exclusive right to:

1.      Authorize or make additional copies, or otherwise reproduce the copyrighted work;

2.      Recast, transform, adapt the work, that is prepare derivative works based upon the copyrighted work;

3.      Distribute copies of the copyrighted work to the public by sale or other transfer of ownership;

4.      Display publicly a copyrighted pictorial work or graphic work.

It is the owner of a copyright who may exercise these exclusive rights.  In general, copyright law protects against reproduction, adaptation, distribution and display of substantially similar copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in a lawsuit for copyright infringement.  As I mentioned, the Court has determined that your determination of whether Mattel's copyrights have been infringed should be limited to the 16 Bryant drawings that Mattel has registered with the Copyright Office.

Mere possession of a work protected by copyright does not constitute infringement.  That Carter Bryant and MGA had possession of Mr. Bryant's drawings, and made reference to them, is not copyright infringement, just like a person who owns and reads a book has not

33

infringed the copyright of the book's publisher or author.  [<u>Lapham v. Porach</u>, 2007 U.S. Dist. LEXIS 30751, at *15 (S.D.N.Y. Apr. 25, 2007).]

You must consider each defendant's acts separately to determine whether that defendant has engaged in an act that is an infringement of Mattel's copyrights.

**Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.1 (2007); 17 U.S.C. § 106; 2-8 <u>Nimmer on Copyright</u> §§ 8.01–8.20; 3 <u>Patry on Copyright</u> §§ 8:1, 9:2; 12-76 Nimmer on Copyright § 12.04[A][1].

## INSTRUCTION NO. 17.2

## COPYRIGHT – SUBJECT MATTER – GENERALLY

The 16 Bryant drawing that Mattel has registered with the Copyright Office are known as pictorial works, which includes such things as works of fine art, graphic and applied art, photographs, prints and art reproductions.

It is agreed by the parties that the 16 registered drawings are copyrighted original works of authorship. Only that part of the drawings comprised of original works of authorship fixed in any tangible medium of expression from which is can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device is protected by the Copyright Act.

Copyright protection for an original work of authorship does not extend to any facts, ideas or concepts, regardless of the form in which it is described, explained, illustrated, or embodied.

**Authority:**  Ninth Circuit Manual of Model Jury Instructions 17.2 (2007).

# INSTRUCTION NO. 17.3

## COPYRIGHT – SUBJECT MATTER – IDEA AND EXPRESSION

Copyright law allows the owner of an original work to prevent others from copying the way or form the author used to express the ideas in the author's work.  Only the particular original expression of an idea can be copyrighted.  Copyright law does not give the author the right to prevent others from copying or using the underlying facts, ideas or concepts contained in the work.

The right to exclude others from copying extends only to how the author expressed the facts, ideas or concepts in the copyrighted work.  The copyright is not violated when someone uses a fact, idea or concept from a copyrighted work, as long as the particular way of expressing that fact, idea or concept in the work is not copied.

Copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work.  This principle, known as the idea/expression or fact/expression dichotomy, applies to all works of authorship.

**Authority**: Ninth Circuit Manual of Model Jury Instructions 17.3 (2007); U.S. Constitution, Art. I, § 8, cl. 8; Feist Publications, Inc. v. Rural Telephone Co., 499 U.S. 340, 349-50 (1991); Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156 (1975); Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 556-57 (1985).

## INSTRUCTION NO. 17.4

## COPYRIGHT INFRINGEMENT – ELEMENTS – OWNERSHIP AND COPYING

Anyone who copies original elements of a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

On Mattel's copyright infringement claim, Mattel has the burden of proving by a preponderance of the evidence that each defendant copied original elements from the 16 Bryant drawings registered with the Copyright Office.

If you find that Mattel has proved this for each defendant, your verdict should be for Mattel.  If, on the other hand, Mattel has failed to prove this for any defendant, your verdict should be for that defendant.

**Authority**:   Ninth Circuit Manual Model Jury Instructions 17.4 (2007) (modified to account for Phase 1-A verdict).

## INSTRUCTION NO. 17.6

## COPYRIGHT INTERESTS – AUTHORSHIP

The creator of an original work is called the author of that work.  An author originates or "masterminds" the original work, controlling the whole work's creation and causing it to come into being.

Others may help or may make valuable or creative contributions to a work.  However, such a contributor cannot be the author of the work unless that contributor caused the work to come into being.  One must translate an idea into a fixed, tangible expression in order to be the author of the work.  Merely giving an idea to another does not make the giver an author of a work embodying that idea.

**Authority:**  Ninth Circuit Manual of Model Jury Instructions 17.6 (2007).

## INSTRUCTION NO. 17.7

## COPYRIGHT INTERESTS – JOINT AUTHORS (17 U.S.C. §§ 101, 201(a))

A copyright owner is entitled to exclude others from copying a joint work.  A joint work is a work prepared by two or more authors.  At the time of the joint work's creation, a joint work must have two or more authors, and

1.     each author must have made a substantial and valuable contribution to the work;

2.     each author must have intended that their contributions be merged into inseparable or interdependent parts of a unitary whole; and

3.     each author must have contributed material to the joint work which could have been independently copyrighted.

Each author of a joint work shares an undivided interest in the entire joint work.  A copyright owner in a joint work may enforce the right to exclude others in an action for copyright infringement.

In deciding whether parties intended their contributions to be merged in element 2, above, you may consider whether they signed a written agreement stating that the copyright in the work is to be jointly owned.  If there is no such agreement, you may consider whether:

a.     both parties exercised control over the work.  This is the most important factor;

39

b.      both parties' actions showed they shared the intent to be co-authors when they were creating the work, for instance by publicly stating that the work was their shared project; and

c.      the audience-appeal of the work depends on the contribution of each party so that the share of each party's contribution in the work's success cannot be appraised.

In making a substantial and valuable contribution to a work, each author's contribution to the joint work need not be equal.

In contributing material to the joint work that could have been independently copyrighted, each author's contribution should be entitled to copyright protection without the contributions by the other author(s).

**Authority:**  Ninth Circuit Manual of Model Jury Instructions 17.7 (2007).

# INSTRUCTION NO. 17.12

# COPYRIGHT INTERESTS – ORIGINALITY

An original work like Bryant's drawings may include or incorporate elements taken from prior works or works from the public domain.  The original parts of Bryant's drawings are the parts created:

    1.     independently by Bryant, that is, that Bryant did not copy it from another work; and

    2.     by use of at least some minimal creativity.

In copyright law, the "original element" of a work need not be new or novel.

It is not disputed that the 16 registered Bryant drawings are, as a whole, sufficiently original to satisfy the "minimal creativity" portion of this test.  It is disputed, however, whether the individual elements in these drawings are in and of themselves "original." That the Bryant drawings were accepted by the Copyright Office for registration does not determine the degree, scope, or amount of original, protected expression in the drawings.

**Authority**: Ninth Circuit Manual of Model Jury Instructions 17.12 (2007).  <u>Feist Publications, Inc. v. Rural Telephone Services, Inc.</u>, 499 U.S. 340, 346 (1991) (originality standard is low; "a modicum of creativity"); <u>see also</u> Expert Report of Ralph Oman, dated Feb. 25, 2005, in <u>Team Play, Inc. v. Boyer</u>, 03 C 7240 (N.D. Ill. 2005) (Document M-RO-00174); (2007); 17 U.S.C. § 410(c); 37 C.F.R. § 202.20(b)(2)(i) & (ii).

# INSTRUCTION NO. 17.14

# COMPILATION (17 U.S.C. § 101)

An owner is entitled to copyright protection of a compilation. A compilation is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.

The owner of a compilation may enforce the right to exclude others in an action for copyright infringement.

**Authority**: Ninth Circuit Manual of Model Jury Instructions 17.14 (2007).

## <u>INSTRUCTION NO. 17.15</u>

## <u>COPYING – ACCESS AND SUBSTANTIAL SIMILARITY</u>

Instruction 17.4 states that Mattel has the burden of proving that the defendants copied original elements from the 16 registered Bryant drawings.   Mattel may show the defendants copied from the work by showing by a preponderance of the evidence that the defendants had access to the 16 registered Bryant drawings and that there are substantial similarities between the defendant's work and original elements of the 16 registered Bryant drawings.   MGA's access to the Bryant drawings is not disputed.

**Authority:**   Ninth Circuit Manual of Model Jury Instructions 17.15 (2007) (modified). <u>See</u> <u>also</u> 4-13 Nimmer on Copyright § 13.03 ("even where the fact of copying is conceded, no legal consequences will follow from that fact unless the copying is substantial").

**INSTRUCTION NO. _____**

**COPYRIGHT INFRINGEMENT – INDEPENDENT CREATION**

Even if Mattel proves that MGA had access to the 16 Bryant sketches and that particular Bratz dolls are substantially similar to certain of these sketches, this only creates a presumption of illegal copying.  MGA may rebut that presumption with evidence that the Bratz dolls are the product of independent creation, and were not copied from the 16 Bryant sketches.  If MGA presents evidence of independent creation, then you should weigh all of the evidence bearing in mind that Mattel bears the burden of proving that MGA copied the 16 Bryant sketches.

**Authority**:  Three Boys Music Corp. v. Bolton, 212 F.3d 477, 486 (9th Cir. 2000) ("By establishing reasonable access and substantial similarity, a copyright plaintiff creates a presumption of copying. The burden shifts to the defendant to rebut that presumption through proof of independent creation.") (citing Granite Music Corp. v. United Artists Corp., 532 F.2d 718, 721 (9th Cir. 1976)); see also Moore v. Kulicke & Soffa Industries, Inc., 318 F.3d 561 (3d Cir. 2003); Keeler v. Brass Co. v. Continental Brass Co., 862 F.2d 1063 (4th Cir. 1988); Don Post Studios, inc. v. Cinema Secrets, Inc., 124 F. Supp. 2d 311 (E.D. Pa. 2000).

**INSTRUCTION NO. 17.17**

**COPYRIGHT INFRINGEMENT – EXTRINSIC TEST; INTRINSIC TEST**

To determine whether the Bratz dolls infringe Mattel's copyrights in the 16 registered Bryant drawings, you must engage in a two-step analysis.  The first step is called the "extrinsic" test.  If necessary, this is followed by the second step of the analysis, which is called the "intrinsic" test.  [Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1177 (C.D. Cal. 2001).]

Stated generally, the "extrinsic" test considers whether two works share substantial similarity of ideas and expression as measured by external, objective criteria, while the "intrinsic" test considers whether a reasonable person (or in this case, a discerning 8-12 year old girl) would perceive a substantial similarity in the "total concept and feel" of each work, bearing in mind that ideas and concepts and general stylistic features are not protectible under copyright law.  [Lanard Toys, Ltd. v. Novelty, Inc., 511 F. Supp. 2d 1020, 1037–38 (N.D. Cal. 2007) (citing Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442–43 (9th Cir. 1994)).]

You should keep in mind that what is required to find infringement is not simply general "similarity" of the works but "substantial similarity" of protected elements of those works.  [Id.; Berkic v Crichton, 761 F.2d 1289, 1293–94 (9th Cir 1985).]

I will explain each of these tests in turn.

EXTRINSIC TEST

The "extrinsic" test removes from the analysis of infringement those elements of the copyrighted work that are not entitled to copyright protection.   The party claiming

45

1   infringement – here, Mattel – cannot rely on any similarity in expression resulting from

2   unprotectible elements.  [Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176–77 (C.D.

3   Cal. 2001).]

4

5   The following elements of an original copyrighted work are not entitled to protection

6   under copyright law:

7   • Ideas and concepts.

8   • Common features that are standard or common to the expression of a given idea,

9      called "scenes a faire."

10   • Expression that is not original to the author (in this case Mr. Bryant), such as pre-

11      existing expression that influenced the author consciously or even subconsciously.

12   This is a general list of the common unprotected categories.

13

14   The process of applying the extrinsic test involves what is called "analytic dissection,"

15   which requires you to isolate each element of the Bryant drawings – such as the eyes, the

16   lips, the nose and the element in the drawings –and analyze each one separately.  [See, e.g.,

17   Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1398 (9th Cir. 1997);

18   Lanard Toys, 511 F. Supp. 2d at 1037–38.]  The extrinsic test also involves what is called

19   "filtering," which requires you to filter out all of the unprotected elements of the Bryant

20   drawings.  [See, e.g., Zella v. E.W. Scripps Co., 529 F. Supp. 2d 1124, 1133 (C.D. Cal.

21   2007); Brookhaven Typesetting Servs. v. Adobe Sys., 2007 U.S. Dist. LEXIS 62661, at

22   *22 (N.D. Cal. Aug. 24, 2007).]

23

24   You should apply the extrinsic test as follows:

25

26   First, identify those elements in the Bryant sketches that Mattel claims are the expression

27   copied by MGA in the Bratz dolls.  Mattel has the burden of identifying which specific

28   elements of its works have been copied.

46

1

2   *Second*, you should determine which of those elements are entitled to copyright protection

3   and which are not.  In other words, you must filter out from each of the 16 Bryant sketches

4   all ideas, all scenes a faire, and all expression that was not original to Mr. Bryant.  Mattel

5   has the burden of proving which elements in each of the Bryant sketches are entitled to

6   protection.

7

8   I will give you a few examples to illustrate the process of filtering.

9

10  MGA asserts that Carter Bryant's sketches show a group of four contemporary "sassy" or

11  "bratty" teenage friends of diverse ethnic backgrounds and a "funky urban hip" attitude

12  and style as the basis for a line of fashion dolls.  MGA asserts that all of this is a concept

13  or idea, and is thus not protected by copyright.  If you agree with MGA's position, then the

14  idea and concept of such a line of fashion dolls must be filtered out of any subsequent

15  analysis of claimed similarities.

16

17  MGA also asserts that the oversized heads, eyes, feet and lips in the sketches are not forms

18  of expression original to Carter Bryant's sketches, but rather simply reflected common

19  expression that can be found in other dolls, fashion advertisements, and artwork.  If you

20  agree with that contention, then you must "filter out" these elements in connection with

21  your subsequent analysis regarding substantial similarity, because the use of oversized

22  heads, eyes, feet and lips in the sketches was not original to Mr. Bryant.

23

24  Common physical features of a teenage girl are not protectible, as they are the features

25  found in real-life teenage girls and depictions of teenage girls.  These features could be

26  considered an idea, or even a fact, and therefore they must be filtered out.  This would

27  apply to things found in nature such as the presence of heads, 2 ears, lips, hair, 2 arms, legs,

28  standard body proportions, and other anatomical features in the drawings.  While the

1  particular expression and unique arrangement of these features can be protected by

2  copyright, the mere presence of those features as found in nature cannot.

3

4  Also, common or standard treatments of the subject matter, what are referred to "scenes a

5  faire," are also not protected by copyright.  Even though they are forms of expression, they

6  lack sufficient originality to be protected.  Basic ideas or treatments "remain forever the

7  common property of artistic mankind."  [Berkic v. Crichton, 761 F.2d 1289, 1293-94 (9th

8  Cir. 1985).]

9

10  Let me give you an example from the world of T.V. screen-plays.  A television show about

11  a police station in a high crime area will inevitably have standard stock features, such as a

12  precinct house, various levels of police employees from a captain down to the beat officers,

13  criminal suspects who are apprehended, defense lawyers, prosecutors, etc.  Such standard

14  plot lines and features may be thought of as creative expression, but no one can claim

15  ownership or exclusive rights to them, and no one T.V. show can accuse another of

16  violating a copyright by allegedly copying and using such standard features in a second

17  show.  [Walker v. Time Life. Films, Inc., 784 F.2d 44, 50 (2d Cir. 1986).]

18

19  As another example, in the world of theatre, devices that are standard plot lines, and are

20  therefore not protectible, include the controlling mother-in-law, the lipstick stained

21  handkerchief, and the butler bent on murder.  All authors can use these common plot

22  devices.

23

24  The fact that the figures in the drawings display fashions, shoes and accessories, by itself,

25  is not protected because the use of fashions, shoes and accessories are also standard or

26  common features in the genre of fashion dolls.  Also, the "style" or general "look" of

27  fashion dolls are not copyrightable.  Nor are conventional cosmetic techniques and looks.

28

1   Also unprotected is expression in the copyrighted work that reflects expression already in

2   the public domain, and therefore free for all to use.  To give one illustration in the context

3   of a doll, "[a]n upturned nose, bow lips, and wide eyes are the 'idea' of a certain type of

4   doll face," and this idea does not belong to any one company but rather is in the public

5   domain.  [Mattel, Inc. v. Goldberger Doll Manufacturing Co., 365 F.3d 133, 136 (2d Cir.

6   2004).]  For another illustration, a 5 ½ inch Warlord doll does not infringe upon a 5 ½ inch

7   Masters of the Universe doll because, though the dolls look remarkably similar, the

8   similarities are all attributable to the unprotectible idea of a superhuman muscleman

9   crouching in a traditional fighting pose.  [Mattel, Inc. v. Azrak-Hamway Int'l Inc., 724

10  F.2d 357, 360 (2d Cir. 1983).]

11

12  These unprotected elements of a work, ideas and concepts, scenes a faire, and unoriginal

13  material, often overlap and are not always easy to separate into categories.  Nevertheless,

14  they are not protected by copyright.

15

16  The parties and their witnesses and experts have pointed to many such issues, asserting

17  that features or elements should, or should not, be filtered out.  You are to determine

18  which, if any, of these features and elements should properly be filtered out in connection

19  with your subsequent analysis regarding substantial similarity.

20

21  Once you have dissected and filtered the Bryant sketches, you are ready to compare the

22  individual elements remaining in a particular sketch that you determine to be protectible

23  with the corresponding elements in the Bratz dolls.  As the parties disagree with what are,

24  and what are not, the similarities between the two, you must next determine what those

25  similarities are.

26

27

28

1   The burden is on Mattel to show by a preponderance of evidence the similarity of each
2   element in the sketches you determine to be protectible.  In considering the extrinsic test,
3   you may take into account the testimony of experts called by each party.

4

5   Now comparing the items in the Bratz dolls that you find to be similar to the protected
6   elements of expression in a particular Bryant drawing owned by Mattel, you should
7   determine whether Mattel has shown by a preponderance of the evidence that the two
8   works are substantially similar.  If you do not so find, then you must find for MGA on the
9   claim of copyright infringement.

10

11  If you do find substantial similarity under the extrinsic test, then you turn to the next step
12  of the analysis, the "intrinsic" test.

13

14  INTRINSIC TEST

15

16  The second step of the infringement analysis, the "intrinsic" test, involves a subjective
17  comparison of the protectible aspects of the "works as a whole."  [Apple Computer, Inc. v.
18  Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994).]

19

20  In this evaluation, you should not consider the unprotectible elements that you filtered out
21  as part of the extrinsic test analysis.  [Cavalier v. Random House, Inc., 297 F.3d 815, 822
22  (9th Cir. 2002); Robert C. Lind, Copyright Law (3d ed. 2006) at 173.]

23

24  The intrinsic test is determined from the perspective of an ordinary, reasonable observer.
25  [Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996).]  Because girls of the age 8-12 are
26  the core intended market for the Bratz dolls, you should consider such consumers as the
27  ordinary, reasonable observers.  [Aliotti v. R. Dakin & Co., 831 F.2d 898, 902 (9th Cir.

28

50

1987).]   In other words, you should perform the intrinsic test through the eyes of a discerning 8-12 year old girl who would be a likely user of Bratz dolls.

The testimony of experts is not to be considered in your evaluation of the intrinsic test.

The appropriate standard for the intrinsic test is whether the ordinary, reasonable person (the 8-12 year old girl) would find the "total concept and feel" of the two separate works to be substantially similar, bearing in mind that ideas, concepts, and style are not protectible. [Satava v. Lowry, 323 F.3d 805, 812 (9th Cir. 2003).]

Applying this test, you will determine if Mattel has met its burden of proving infringement under the "intrinsic" test.  If Mattel has not met its burden under the intrinsic test, then you must find for the defendants on the copyright infringement claims.

**Authority**:  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1990); Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir. 2004); Mattel v. Goldberger Doll Mfg. Co., 365 F.3d 133, 136 (2d Cir. 2004); Apple Computer, Inc. v. Microsoft Corporation, 35 F.3d 1435, 1447 (9th Cir. 1994); Data East USA, Inc. v. Epyx, Inc., 862 F.2d 204 (9th Cir. 1988); Fryberger v. Int'l Bus. Machines Corp., 812 F.2d 525, 530 (9th Cir. 1987); Thomas v. The Walt Disney Co., 2008 U.S. Dist. LEXIS 14643 (N.D. Cal. Feb. 14, 2008); Bensbargains.Net v. XPBargains.Com, 2007 U.S. Dist. LEXIS 60544 at 8–10 (S.D. Cal. Aug. 16, 2007); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176 (C.D. Cal. 2001). Nimmer on Copyright § 13.03[B].

**INSTRUCTION NO.** ___

**COPYRIGHT INFRINGEMENT –**

**COMPARING A TWO-DIMENSIONAL WORK WITH A THREE-**

**DIMENSIONAL WORK**

The Bryant sketches are 2-dimensional works, while the Bratz dolls are 3-dimensional works. While those facts may complicate your analysis under the extrinsic and intrinsic tests, the copyright in a 2-dimensional work can be infringed by a 3-dimensional work. However, the copyright in a 2-dimensional work only covers what is shown on the face of the work. For example, if a Bryant sketch only shows the front view of a figure, the copyright does not cover the rear or side view of that figure, or anything else that is not specifically visible in that particular sketch. Whether in this case the Bratz dolls (3-dimensional works) infringe the Bryant sketches (2-dimensional works), is for you to decide, using the two-part analyses already described.

**Authority**: 1-2 <u>Nimmer on Copyright</u> § 2.08(C)(2).

**INSTRUCTION NO. ___**

**COPYRIGHT INFRINGEMENT – MULTIPLE COPYRIGHT REGISTRATIONS**

Mattel's copyright claims are based on 16 separate copyright registrations, each one registering a different Carter Bryant drawing. Each of these drawings is only entitled to copyright protection for the original expression contained in the particular drawing. Mattel cannot extend or enhance its rights by treating two or more of the sketches as a compilation or as a unified work. In other words, Mattel cannot pick and choose elements from more than one of these drawings to and combine those elements to based its infringement claim against a particular Bratz doll. Each individual drawing is a copyrighted "work" that must be judged based on its own protectible content in a comparison with a particular one of the allegedly infringing Bratz dolls. This means that, in determining whether Mattel has met its burden of proving infringement, you must separately analyze each of the 16 drawings under both the extrinsic and intrinsic tests.

**Authority**: Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1144 n.31 (C.D. Cal. 2001); see also Green v. Schwarzenegger, 1995 U.S. Dist. LEXIS 14031 at ** 61-62 (C.D. Cal. July 17, 1995) ("Plaintiff cannot pick and choose characteristics from any number of characters in his work to search for alleged similarities with a single character in defendants' work."); 9 Patry on Copyright § 9:66 (2008).

# INSTRUCTION NO. 17.20

## DERIVATIVE LIABILITY: VICARIOUS INFRINGEMENT

If you find that MGA or MGA Hong Kong infringed Mattel's copyrights in the Bryant drawings, you may consider Mattel's claims that Isaac Larian vicariously infringed those copyrights. Mattel has the burden of proving each of the following by a preponderance of the evidence:

    1.    That Mr. Larian profited directly from the infringing activity of MGA or MGA Hong Kong;

    2.    That Mr. Larian had the right and ability to supervise the infringing activities of MGA and MGA Hong Kong; and

    3.    That Mr. Larian failed to exercise that right and ability.

If you find that Mattel proved each of these elements, your verdict should be for Mattel as to Mr. Larian if you also find that MGA or MGA Hong Kong infringed Mattel's copyright. If, on the other hand, Mattel has failed to prove any of these elements with respect to Mr. Larian, your verdict should be for Mr. Larian.

**Authority**: Ninth Circuit Manual of Model Jury Instructions 17.20 (2007).

## INSTRUCTION NO. 17.21

## DERIVATIVE LIABILITY: CONTRIBUTORY INFRINGEMENT

A defendant may be liable for copyright infringement engaged in by another if he knew or had reason to know of the infringing activity and intentionally induces that infringing activity.

If you find that MGA or MGA Hong Kong infringed Mattel's copyrights in the Bryant drawings, you may proceed to consider Mattel's claim that Isaac Larian contributorily infringed those copyrights.  To prove contributory copyright infringement, Mattel must prove both of the following elements by a preponderance of the evidence:

    1.    That Mr. Larian knew or had reason to know of the infringing activity of MGA or MGA Hong Kong; and

    2.    That Mr. Larian intentionally induced MGA or MGA Hong Kong's infringing activity.  In assessing intent, Mr. Larian cannot be liable for another's infringement if he did not act with the desire or purpose of intentionally inducing that infringement.  Mere awareness that potential infringing activity might result is not enough.

If you find that MGA or MGA Hong Kong infringed Mattel's copyright, and you also find that Mattel has proved both of these elements as to Mr. Larian, your verdict should be for the Mattel.  If, on the other hand, Mattel has failed to prove either of these elements, your verdict should be for Mr. Larian.

1 **Authority**:   Ninth Circuit Manual of Model Jury Instructions 17.21 (2007) (modified).

2 Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 931-33 (2005);

3 Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 262-263 (9th Cir. 1996).

4

5

6

7 DATED:  July 29, 2008          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

8

9                              By:  _____/s/ Thomas J. Nolan_____

10                                       Thomas J. Nolan

11                                  Attorneys for the MGA Parties

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

56