1 | THOMAS J. NOLAN (Bar No. 66992)
2 | (tnolan@skadden.com)
  | JASON D. RUSSELL (Bar No. 169219)
3 | (jrussell@skadden.com)
  | LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
4 | (laguiar@skadden.com)
  | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
5 | 300 South Grand Avenue, Suite 3400
  | Los Angeles, CA  90071
6 | Tel.: (213) 687-5000/Fax: (213) 687-5600
7 |
8 | Attorneys for MGA Parties

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO.  CV  04-9049  SGL (RNBx) |
| Plaintiff, | |
| v. | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| MATTEL, INC., a Delaware corporation, | Honorable Stephen G. Larson |
| Defendant. | MGA PARTIES' RESPONSES TO MATTEL'S OBJECTIONS TO THE MGA PARTIES' REVISED DISPUTED [PROPOSED] PHASE 1-B JURY INSTRUCTIONS |
| AND CONSOLIDATED ACTIONS. | |

**AFFIRMATIVE DEFENSES**

| No. | Description | Page |
|---|---|---|
| Special Inst. __ | Affirmative Defenses — General | 5 |
| CACI 1302 | Affirmative Defenses — Consent | 5 |
| 9th Cir. 17.19 | Affirmative Defenses — Abandonment | 12 |
| Special Inst. __ | Affirmative Defenses — 205(d) (Bona Fide Purchaser for Value) | 17 |
| Special Inst. __ | Affirmative Defenses — Good Faith | 21 |
| Special Inst. __ | Affirmative Defenses — De Minimis Use | 24 |
| Special Inst. __ | Statute of Limitations (Fraudulent Concealment) | 29 |

**DAMAGES**

| No. | Description | Page |
|---|---|---|
| 9th Cir. 5.1 | Damages—Introduction | 37 |
| CACI 3925 | Arguments Of Counsel Not Evidence Of Damages | 40 |
| CACI 3901 | Introduction To Tort Damages – Liability Established For Intentional Interference With Contractual Relations | 43 |
| CACI 430 | Causation:  Substantial Factor | 47 |
| Special Inst. __ | Limitations On Damages For Intentional Interference With Contractual Relations | 50 |
| CACI 3901 | Introduction To Tort Damages – Liability Established For Aiding And Abetting Breach Of Fiduciary Duty | 54 |
| Special Inst. __ | Limitation On Damages For Aiding And Abetting Breach Of Fiduciary Duty | 58 |
| Special Inst. __ | Further Limitation On Damages For Aiding And Abetting Breach Of Fiduciary Duty | 66 |
| CACI 3901 | Introduction To Tort Damages – Liability Established For Aiding And Abetting Breach Of Duty Of Loyalty | 71 |
| Special Inst. __ | Limitation On Damages For Aiding And Abetting Breach Of Duty Of Loyalty | 75 |
| Special Inst. __ | Further Limitation On Damages For Aiding And Abetting Breach Of Duty Of Loyalty | 81 |
| CACI 2021 | Presumed Measure Of Damages For Conversion (Civ. Code § 3336) | 85 |
| 9th Cir. 17.24 | Copyright—Damages—Defendants' Profits (17 U.S.C. § 504(B)) | 90 |
| Special Inst. __ | Copyright—Damages—Indirect Profits | 98 |
| Special Inst. __ | Choice Of Alternative Methods Of Determining Plaintiff's Damages | 101 |

| 9th Cir. 5.3 | Damages—Duty To Mitigate | 104 |
|---|---|---|
| Special Inst. __ | Duplicative Damages | 108 |
| 9th Cir. 5.6 | Nominal Damages | 113 |

## COPYRIGHT

| **No.** | **Description** | **Page** |
|---|---|---|
| Special Inst. __ | Copyright – Preliminary Instruction | 116 |
| 9th Cir. 17.1 | Copyright – Defined | 120 |
| 9th Cir. 17.2 | Copyright – Subject Matter – Generally | 124 |
| 9th Cir. 17.3 | Copyright – Subject Matter – Idea And Expression | 127 |
| 9th Cir. 17.4 | Copyright Infringement – Elements – Ownership And Copying | 133 |
| 9th Cir. 17.6 | Copyright Interests – Authorship | 136 |
| 9th Cir. 17.7 | Copyright Interests—Joint Authors (17 U.S.C. §§ 101, 201(A)) | 139 |
| 9th Cir. 17.12 | Copyright Interests – Originality | 143 |
| 9th Cir. 17.14 | Compilation (17 U.S.C. § 101) | 146 |
| 9th Cir. 17.15 | Copying – Access And Substantial Similarity | 148 |
| Special Inst. __ | Copyright Infringement – Independent Creation | 151 |
| 9th Cir. 17.17 | Copyright Infringement – Extrinsic Test; Intrinsic Test | 158 |
| Special Inst. __ | Copyright Infringement – Comparing A Two-Dimensional Work With A Three-Dimensional Work | 182 |
| Special Inst. __ | Copyright Infringement – Multiple Copyright Registrations | 187 |
| 9th Cir. 17.20 | Derivative Liability:  Vicarious Infringement | 191 |
| 9th Cir. 17.21 | Derivative Liability: Contributory Infringement | 199 |

**Mattel's General Objections**

Each of the following General Objections is hereby incorporated in full into the objections to specific jury instructions set forth below:

1.      Mattel objects generally to defendants' proposed instructions to the extent they represent defense-slanted instructions that materially deviate, with no good cause, from the model instructions governing the claims and defenses at issue.  Defendants will be afforded an opportunity at the close of the evidence to present argument as to any issues properly presented to the jury.  There is no reason for defendants to attempt to re-argue the issues by slanting their proposed instructions in a way that consistently benefits defendants.

2.      Mattel objects to defendants' proposed jury instructions to the extent they instruct the jury as to issues that the jury already determined in Phase 1A and/or that the Court has already adjudicated in connection with the parties' cross-motions for partial summary judgment and are contrary to the Court's findings.

3.      Mattel further objects to defendants' proposed jury instructions on the ground that they incorporate erroneous statements of law, and are inconsistent with applicable legal standards, as set forth in the briefing on Mattel's motion for partial summary judgment, Mattel's motions *in limine* and Mattel's proposed jury instructions, which are all hereby incorporated herein by reference.  Wherever Mattel has submitted proposed jury instructions in any way overlapping with defendants' proposed jury instructions, Mattel requests that the Court adopt Mattel's proposed jury instructions.

4.      Mattel further objects to the organization of defendants' proposed instructions, and in particular, objects to starting the jury instructions with defendants' affirmative defenses, which is a defense-biased structure.

5.      Mattel further objects to defendants' proposed jury instructions on the ground that they are excessively fact-specific and argumentative, which makes them confusing and prejudicial.  Many of the "facts" assumed by defendants in their proposed instructions are argumentative, biased and inaccurate.

1

1    6.    Mattel further objects to defendants' proposed jury instructions on the ground
2    that they are materially biased toward defendants.

3    7.    Mattel further objects to defendants' proposed jury instructions to the extent
4    that they use the pejorative term "sketches" when referring to Carter Bryant's drawings and
5    designs.

6    8.    Mattel reserves the right to assert additional General and Specific Objections
7    to defendants' proposed jury instructions.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MGA Parties' Responses**

1.     Mattel's complaint that the MGA Parties have modified certain form instructions and given them a "defense-slant[]" is baseless.  The proposed instructions that follow do in some instances deviate from the models on which they are based, but those modifications do not "slant" the instructions in the MGA Parties' favor.  The MGA Parties have altered the models in order 1) to make them more comprehensible in the context of this particular trial, 2) to focus the jury on the specific claims and defenses offered by both sides, and 3) to make them more accurate in light of the case law.  Each of these reasons is a permissible ground to modify the instructions.

Model instructions are not sacrosanct.  They are intended to be modified in order to meet the needs of a particular case.  See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) ("The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges.  Jury instructions do not come down from any mountain or rise up from any sea.  Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority.  This description does not denigrate their value, it simply places them in the niche where they belong.").  Indeed, modification is sometimes necessary to make an instruction accurate and complete.  See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent").

2.     Despite is boilerplate objection, Mattel does not identify any issues decided in Phase 1-A or in the Court's rulings on partial summary judgment in this General Objection.  The MGA Parties have responded to the specific objections below.

3.     Other than a boilerplate objection, Mattel does not identify any erroneous statements of law in this General Objection.  The MGA Parties have responded to the specific objections below.

1      4.     The order of the jury instructions presented here is not necessarily the order in

2  which the instructions need to be given.  However, the MGA Parties respectfully suggest

3  that instructions on affirmative defenses should precede instructions on damages, as they

4  are logically a part of the jury's liability determination, not its damages determination.  It

5  may, however, make sense to present the copyright liability instructions prior to the

6  instructions on affirmative defenses.

7      5.     Contrary to Mattel's boilerplate and conclusory assertion, the MGA Parties'

8  instructions are not "excessively" fact-specific.  The instructions include sufficient facts to

9  provide the jury with context in understanding the instructions.  Given the excessive

10 number of claims that Mattel has brought against the defendants, Mattel cannot now

11 complain that the jury will need some guidance in wading through those claims.  The

12 MGA Parties have responded to the specific objections below.

13     6.     Mattel does not identify any specific instances of material bias in this General

14 Objection.  The MGA Parties have responded to the specific objections below.

15     7.     The term "sketch" is not pejorative or derogatory and Mattel has not cited

16 anything to support its contention that the term is "pejorative."  Mattel's own expert used

17 the term repeatedly in reference to Bryant's works at issue here.  (See, e.g., Loetz Report,

18 at 2 ("When a designer has an idea, he sketches it out."); id. at 4 ("In Carter Bryant's

19 sketches, the Bratz figures are posed …."); id. at 6 ("The Bratz sketches were drawn ….");

20 id. at 9 ("It is the industry standard when creating a new toy … to have the original artist

21 draw sketches"); Loetz Depo. at 83:6-13 ("Q. Does the term 'sketch' versus 'drawing'

22 have any distinct meaning to you?  A.  Not really …. I don't think there's any real

23 distinction and I think they're used interchangeably.").)

24     8.     The MGA Parties reserve the right to augment their responses to Mattel's

25 objections.  To the extent any counter-instruction proposed by Mattel is also represented in

26 Mattel's Disputed Proposed Jury Instructions, the MGA Parties incorporate their

27 Objections to that instruction by reference.

28

**PHASE 1-B – Affirmative Defenses**

**INSTRUCTION NO.** ____

**AFFIRMATIVE DEFENSES — GENERAL**

I will now instruct you on the affirmative defenses raised by MGA Entertainment, Inc. ("MGA"), Isaac Larian ("Larian"), and MGA Entertainment (HK), Ltd. ("MGA (HK)").

**INSTRUCTION NO. 1302**

**AFFIRMATIVE DEFENSES — CONSENT**

MGA, Isaac Larian, and MGA (HK) have raised the affirmative defense of consent.

If you find that Mattel consented to its employees moonlighting and developing their own artistic work, you must find for Isaac Larian, MGA, and MGA (HK) with respect to claims arising out of Bryant's alleged violations of the Inventions Agreement.

Consent is the actual or apparent willingness for conduct of another to occur.

Actual consent may be expressed in words or acts, silence or inaction, when the circumstances or other evidence establish that the silence or inaction is intended to give consent; actual consent need not be communicated to the person taking the alleged wrongful act.

Apparent consent exists when a person's acts or words, silence or inaction, would be understood by a reasonable person as intended to indicate consent, and in fact so understood by the person doing the alleged wrongful act.

**Authority:** Cal. Civ. Code § 3515; CACI No. 1302 (2008) (as modified).

5

**MATTEL'S OBJECTION**

Mattel objects to defendants' proposed instruction regarding Consent on the following grounds:

1.     Mattel objects to the defendants' proposed instruction on the ground that it relates to an affirmative defense that was arguably relevant only to claims against Carter Bryant.  Carter Bryant is no longer a defendant in this case, and defendants have not shown that they are entitled to assert this purported affirmative defense as to the claims against them.  Consenting to "moonlighting" or "developing artistic work" on the side could only be an <u>employee's</u> defense, not a competitor's defense.

2.     Defendants' proposed instruction is erroneous as a matter of law because it informs the jury that it must find in favor of defendants if "Mattel consented to its employees moonlighting and developing their own artistic work."  The Ninth Circuit has stated that a litigant need not choose between pursuing all offenders or none at all.  *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1225 (9th Cir. 2007).  While this holding arose in the waiver of copyright context, it applies with equal force to consent, particularly since defendants' consent theory is predicated on similar facts as its waiver argument.  Moreover, defendants ignore the requirement embodied in California law that "the consent given must have been to the *very act or circumstance* that caused the harm giving rise to the action."  2 SCHWING, CALIFORNIA AFFIRMATIVE DEFENSES § 32:3 at 197 (2007) (citation omitted) (emphasis added).  The conduct of other Mattel employees has no bearing on the "very act or circumstance" of Bryant's alleged breach of his legal obligations.  *A fortiori*, it has no bearing on defendants' aiding and abetting and intentional interference.

3.     This proposed instruction is also erroneous and prejudicial to the extent it informs the jury that it must find for defendants if Mattel consented to its employees "moonlighting" or "developing their own artistic work."  Defendants fail to proffer any support for the notion that these two separate issues are intertwined.

1    4.    The proposed instruction is erroneous because it does not adequately inform
2    the jury which claims the issue of consent could even conceivably relate to.  The
3    instruction should make clear that this affirmative defense is not applicable to Mattel's
4    copyright infringement claim, as that is not a claim "arising out of Bryant's alleged
5    violations of the Inventions Agreement."  Defendants are not even consistent in their
6    proposed jury instructions and verdict form as to whether they believe consent should
7    apply to Mattel's copyright claims.  This proposed instruction limits the defense to claims
8    arising out of breach of contract, but their proposed verdict form only list consent as a
9    defense to copyright claim.

10    5.    The proposed instruction is erroneous and unintelligible to the extent it
11    purports to inform the jury that "actual consent need not be communicated to the person
12    taking the alleged wrongful act."  Neither of the authorities cited by defendants supports
13    this erroneous statement of the law.

14    6.    This proposed instruction is misleading and prejudicial to Mattel because
15    defendants purport to inform the jury that "silence or inaction" may be sufficient to
16    establish consent but fail to explain that is not the case when the "apparent consent" was
17    "obtained through . . . fraud [or] mistake."  *Greenawalt v. Rogers*, 151 Cal. 630, 635
18    (1907).  Mere silence or inaction due to a defendant's fraudulent omissions or through
19    mistake of fact does not support a consent defense, and it is misleading for defendants to
20    suggest to the jury otherwise.

21    7.    The model instruction cited by defendants is inapplicable because it relates to
22    the element of a claim for battery that requires a plaintiff to prove a lack of consent.  *See*
23    CACI No. 1302.  And the "Maxims of Jurisprudence" cited by defendants (*Cal. Civ. Code*
24    § 3515) does not provide any specific support to give the jury a consent instruction under
25    the facts of this case.

26    8.    Mattel objects to this instruction because it does not specify that each
27    defendant must prove that Mattel consented to its or his wrongful conduct.

28

9. *Counter-Instruction*: If any instruction regarding consent is to be given, Mattel requests that the Court give its proposed instruction, which is clearer and conforms to the law:

The defendants claim that Mattel consented to the wrongful conduct underlying Mattel's claims against the defendants in this case. To prevail on this affirmative defense, the defendants must prove that Mattel knew of the defendants' wrongful conduct and consented to such conduct, and that such consent was obtained without any fraud or mistake.

**Authority:** 2 Schwing, *California Affirmative Defenses*, § 32:3, at 197 (2007) ("To be a defense, the consent given must have been to the very act or circumstances that caused the harm giving rise to the action.") (citation omitted); *Greenawalt v. Rogers*, 151 Cal. 630, 635 (1907) ("An apparent consent is not real or free when obtained through . . . fraud [or] mistake.").

**MGA PARTIES' RESPONSE**

Mattel's objection that the defense of consent applied only to Bryant's claims and should thus be eliminated is meritless.  While Bryant is no longer a party to this lawsuit, the effect of the contracts between Bryant and Mattel is central to this lawsuit.  Thus, if Mattel's actions somehow undermined its contractual relationship with Bryant, its claims based on that contractual relationship must also fail.  Moreover, the existence of affirmative defenses that negate or limit the contractual relationship may in turn undermine Mattel's claims that the MGA Parties intended to cause harm to that relationship.  For these reasons, this instruction continues to be appropriate.

As to the impact of a finding that Mattel permitted "moonlighting," Mattel's reliance on Metro-Goldwyn-Mayer Studios v. Grokster, Ltd., 518 F. Supp. 2d 1197 (C.D. Cal. 2007), is unavailing.  To begin with, the decision is not a Ninth Circuit opinion as Mattel represents; rather, it is an opinion originating from this District.  Moreover, the court in Grokster rejected the notion that to seek an injunction, MGM had to first show that it pursued every copyright infringer on the internet.  Here, by contrast, Mattel failed to raise any objections to virtually any of the many employees who were moonlighting despite its knowledge of this activity, and did not conduct a single investigation into this conduct.  Mattel easily could have controlled its employees.  This is not a matter of a company failing to pursue every possible claim again an almost infinite number of violations on the internet.  Mattel was not selectively enforcing its employment contracts – it was not enforcing the contracts at all.  By affirmatively declining to enforce its employment contracts, Mattel has taken action inconsistent with the intent to enforce its rights.

In addition, there is no evidence that Mattel's apparent consent was procured by any fraud or mistake and indeed Mattel has not stated that it has a basis to argue such to the jury.  Thus, there is no reason to instruct the jury on this caveat.  As Mattel's denial that consent could be based on silence or inaction is merely based on its assertion that such a consent would be invalid if procured by fraud or mistake, it is entirely appropriate to

9

1  instruct the jury that consent could be based on silence or inaction. Cf. Restatement
2  (Second) of Torts § 892(2) (1979) ("If words or conduct are reasonably understood by
3  another to be intended as consent, they constitute apparent consent and are as effective as
4  consent in fact.").

5      Moreover, Mattel's failure to take action against other moonlighting employees is
6  unquestionably relevant to whether Bryant was reasonable in believing that Mattel
7  consented to his conduct, which was the exact same conduct as the other moonlighting
8  employees' in question.  This explains why Mattel's assertion that consent must have been
9  given to "the very act or circumstance that caused the harm giving rise to the action" has
10 no relevance here, as there is no evidence that Bryant should have expected "special
11 treatment" and therefore somehow suspect that his conduct would be treated any
12 differently than the same conduct undertaken by similarly situated employees.

13     Indeed, there is no legal support for Mattel's position that the only relevant conduct
14 is Mattel's conduct towards Bryant.  The relevant question here is whether the Mattel's
15 conduct was such that Bryant was reasonable in believing that Mattel consented to
16 independently creating artistic works and/or moonlighting.  The fact that Mattel allowed
17 its employees, who signed the same agreement as Bryant, to independently create artistic
18 works and moonlight without ever taking any action is clearly relevant to whether it was
19 reasonable for Bryant to conclude that Mattel consented to him engaging in the same
20 conduct.

21     Mattel's objection to the model instruction used is likewise unavailing.  While the
22 CACI No. 1302 is found in the context of assault and battery, the sources and authority
23 include more widely applicable tort defenses, such as California Civil Code section 3515,
24 which provides: "He who consents to an act is not wronged by it."  The sources also
25 include the Restatement (Second) of Torts, Section 892 – found in Division 12 "Defenses
26 Applicable To All Tort Claims."  This section provides, inter alia, that "(1) Consent is
27 willingness in fact for conduct to occur. It may be manifested by action or inaction and
28 need not be communicated to the actor."  Rest. 2d Torts § 892 (1979) (emphasis added).

10

1    Mattel's counter-instruction is wholly insufficient as it does not provide any
2  explanation of what consent is or how it may be manifested.  In particular, it does not
3  convey to the jury that consent need not be express, does not explain apparent consent, and
4  does not explain that the consent need not be communicated to the actor.

5    As for Mattel's objection that it is unclear which claims are subject to a defense of
6  consent, this issue has already been raised and dealt with before the Court.  As was
7  explained by counsel for MGA at the pre-trial conference on July 18, 2008, and as was not
8  disputed by counsel for Mattel, the defense of consent is a legal defense relevant to
9  Mattel's claims of copyright infringement.  <u>See</u> 7/18/08 Hearing Tr. 93:3-94:6 ("THE
10  COURT:  Well, let me summarize, then.  As far as the ones characterized as legal defenses,
11  the bona fide purchaser for value, the abandonment, good faith and consent, to the extent
12  that those will go to the jury in the form of the instructions given on copyright
13  infringement.")

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# INSTRUCTION NO. 17.19

## AFFIRMATIVE DEFENSES — ABANDONMENT

MGA, Isaac Larian, and MGA (HK) have raised the affirmative defense of abandonment.

Larian, MGA, and MGA (HK) contend that a Mattel cannot bring an action for copyright infringement because Mattel abandoned it claims by conducting an internal investigation and concluding that BRATZ did not infringe on its intellectual property.  Mattel cannot claim ownership of a copyright if it was abandoned.

In order to show abandonment, Isaac Larian, MGA and/or MGA (HK) have the burden of proving each of the following by a preponderance of the evidence:

      1.    Mattel intended to surrender ownership rights in the work; and

      2.    Conduct by Mattel which was "consistent with an intent to abandon" or which "implies an abandonment."

Mere inaction does not constitute abandonment of the copyright; however, it may be a factor for you to consider in determining whether Mattel has abandoned its claims.

**Authority:**  Ninth Circuit Manual of Model Jury Instructions 17.19 (2007); Lopez v. Elec. Rebuilders, Inc., 416 F. Supp. 1133, 1135 (C.D. Cal. 1976); Read v. Turner, 239 Cal. App. 2d 504 (1966).

**MATTEL'S OBJECTION**

Mattel objects to defendants' proposed instruction regarding Abandonment on the following grounds:

1.     Defendants' proposed instruction deviates from the Ninth Circuit Model Instruction and is erroneous as a matter of law.  Defendants misleadingly state that they need only prove conduct by Mattel that was "consistent with an intent to abandon" or "implies an abandonment."  The model instruction makes it clear that defendants must prove "an **act** by the plaintiff evidencing that intent."  *See* 9th Cir. Civ. Jury Instr. 17.19 (2007).

2.     The prefatory statement in defendants' proposed instruction is erroneous and prejudicial to Mattel to the extent it purports to inform the jury that Mattel conducted an internal investigation pursuant to which it "conclude[ed] that BRATZ did not infringe on its intellectual property."  The Court already rejected defendants' argument that this internal investigation is relevant to the issue of when Mattel's claims in this case accrued. As recognized by the Court, that internal investigation did not relate to the wrongdoing at issue in this case, and the inclusion of this statement would be misleading and unfair.  *See* May 27, 2008 Order re Statute of Limitations Defense, at 7 (concluding that the claims "asserted here[] involve a different element of 'wrongdoing' than do the unasserted claims based on Toon Teens and/or Diva Starz.").  Indeed, this shows why no abandonment instruction should be given at all.

3.     The proposed instruction is confusing because the relevant issue is whether Mattel abandoned its copyrights, not "claims."  Moreover, it would be confusing and prejudicial to instruct the jury on a copyright affirmative defense before instructing the jury on copyright infringement generally as defendants request.

4.     While Defendants emphasize the portion of the model instruction regarding "inaction" as one factor that may be considered in determining whether Mattel has abandoned its claims, they ignore the Comments to the Model Instruction, which make clear that "[a]bandonment of a right must be manifested by an overt act."  *See* 9th Cir. Civ.

13

1  Jur. Instr. 17.19, cmt. (citing *Micro Star v. Formgen, Inc.*, 154 F.3d 1107, 1114 (9th Cir.
2  1998)).  This qualification should be included in the instruction so as to avoid confusion as
3  to the proper standard.

4       5.     Defendants' proposed instruction omits the final paragraph of the Model
5  Instruction, which clarifies for the jury when it should find for Mattel or the defendants on
6  this affirmative defense.

7       6.     *Counter-Instruction*:  If any instruction regarding abandonment is to be given,
8  Mattel requests that the Court give its proposed instruction, which conforms to the Ninth
9  Circuit Model Instruction:

10       Defendants contend that Mattel does not own the copyrights at
11  issue in this case because Mattel abandoned the copyrights.  Mattel
12  cannot claim ownership of the copyrights if they were abandoned.  In
13  order to show abandonment, the defendants have the burden of
14  proving each of the following by a preponderance of the evidence:

15       1.     Mattel intended to surrender rights in the works; and
16       2.     An act by Mattel evidencing that intent.

17       Mere inaction does not constitute abandonment of the
18  copyright; however, this may be a factor for you to consider in
19  determining whether Mattel has abandoned the copyright.

20       If you find that Mattel has proved its claims for copyright
21  infringement against the defendants, your verdict should be for
22  Mattel, unless you find that the defendants have proved each of the
23  elements of this affirmative defense, in which case your verdict
24  should be for the defendants.

25

26       **Authority:**  9th Cir. Civ. Jury Instr. 17.19 (2007).

27

28

**MGA PARTIES' RESPONSE**

Mattel's complaint that this instruction deviates from the model is no basis for rejecting it. In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case. See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997). Indeed, modification is sometimes necessary to make an instruction accurate and complete. See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent"). That was the case here, and that is why Mattel's unmodified counter-instruction is inappropriate.

Here, it was appropriate to substitute the element in the Ninth Circuit Model Jury Instructions, Civil, 17.19 (2007) requiring "an act by the plaintiff evidencing [the] intent" to abandon with the element requiring "[c]onduct by Mattel which was 'consistent with an intent to abandon' or which 'implies an abandonment.'" Lopez v. Elec. Rebuilders, Inc., 416 F. Supp. 1133, 1136 (C.D. Cal. 1976). This phrasing of the element more closely resembles the allegations that need to be proven by the defendants; moreover, it is entirely consistent with caselaw. See Read v. Turner, 239 Cal. App. 2d 504, 511 (1966).

That said, Mattel's complaints that the model instruction is itself "biased" in its emphasis on inaction are not well-taken. It is the Model Instruction itself that directs the Court to advise the jury that inaction may be considered as a factor in the abandonment defense, and it is also the instruction that omits the explanation concerning the overt act requirement – and for a good reason, as it would be merely duplication of the Model Instruction's acknowledgment that mere inaction is insufficient to establish abandonment.

Mattel's assertion that it does not agree that the internal investigation it conducted "conclude[ed] that BRATZ did not infringe on its intellectual property" should not be given any credit, as Mattel actually precluded the defendants from testing the veracity of

1   that statement by refusing to disclose most of the evidence concerning the investigation on
2   the grounds of privilege. Moreover, the little evidence that it did disclose warrants the very
3   conclusion Mattel now complains about – indeed, if Mattel concluded that its property had
4   been in fact infringed, it is hard to believe that Mattel would have set on its rights for as
5   long as it did, especially given Mattel's aggressive track record of defending its intellectual
6   property. (See Declaration of Jason D. Russell In Support of MGA Parties' Motion for
7   Partial Summary Judgment dated March 7, 2008, Ex. 70.)

8       As to Mattel's assertion that the instruction should reference its abandonment of its
9   copyrights, not its abandonment of its claims, Mattel fails to indicate that there is any
10  material difference between the two – if Mattel has abandoned its copyrights, its claims for
11  copyright infringement have been abandoned as well.

12      The MGA Parties omit the final paragraph of the model instruction because the
13  language in that paragraph is applicable to all affirmative defenses but does not appear in
14  all of instructions.  Singling out this one instruction for a statement that is generally true
15  may confuse the jury.

16      For the reasons set forth above, Mattel's proposed alternative instruction does not
17  adequately instruct the jury on this defense.

18      Should the evidence as it is finally laid out before the jury not include evidence of
19  Mattel's investigation, this instruction may be omitted.

20      As noted in response to Mattel's general instructions, the order in which the
21  proposed instructions are presented here is not necessarily the order in which they should
22  be presented to the jury.  Indeed, it may make more sense to provide the copyright liability
23  instructions first.

24
25
26
27
28

**INSTRUCTION NO.** _____

**AFFIRMATIVE DEFENSES —**

**SECTION 205(D) (BONA FIDE PURCHASER FOR VALUE)**

MGA, Isaac Larian, and MGA (HK) have raised the affirmative defense under Section 205(d) of the Copyright Act.  They contend that the MGA agreement with Carter Bryant dated October 4, 2000 has priority over Mattel's agreement with Carter Bryant dated January 4, 1999.

You may find that the MGA agreement with Bryant has priority over the Mattel agreement with Bryant if you find that the MGA agreement with Bryant was:

     1.    Recorded with the Copyright Office first in such a manner as to give Mattel constructive notice of the transfer; and

     2.    Executed in good faith; and

     3.    For valuable consideration; and

     4.    Without notice of an earlier transfer.

For purposes of this instruction, recordation with the Copyright Office means either (1) the filing of the transfer agreement itself, or (2) registration with the Copyright Office listing ownership by assignment.

**Authority:** 17 U.S.C. § 205(d); 2 Nimmer on Copyright § 7.16 (2007) ("[A]lthough an instrument of transfer to a first purchaser [Mattel] may be recorded prior to the time that the copyright owner purports to sell the same copyright interest to a bona fide subsequent purchaser [MGA], the latter does not have constructive notice of the first purchase if the work has not been registered at the time the subsequent purchaser acquired his interest.").

17

**MATTEL'S OBJECTION**

Mattel objects to defendants' proposed instruction as follows:

1.      Defendants have no basis to claim that they are bona fide purchasers for value pursuant to 17 U.S.C. § 205(d).  That provision provides that when there are competing transfers of copyright, a prior transferee (in this case, Mattel, by virtue of the Inventions Agreement), prevails unless the later purported transferee (here, MGA) took in good faith, without notice of the earlier transfer, and **recorded the transfer document first**.  *See* 17. U.S.C. § 205(d) ("[T]he later transfer prevails if recorded first … and if taken in good faith … and without notice of the earlier transfer.").  Here, it is undisputed that MGA did not record the MGA/Carter Bryant assignment agreement.  The defense fails for that reason alone, and thus it is not appropriate to give any instruction regarding good faith transfer to the jury.

2.      Defendants' proposed instruction is also erroneous as a matter of law because it claims that "recordation" of the transfer can be accomplished by "registration [of a copyright] with the Copyright Office listing ownership by assignment."  The statute itself and Copyright Office materials make clear that defendants are incorrect.  The transfer agreement itself (i.e., the October 2000 assignment agreement between Carter Bryant and MGA) must be recorded. *See* 17 U.S.C. § 205(d) ("later transfer prevails if recorded in such manner" (i.e., "in the manner required to give constructive notice under subsection (c)") (emphasis added); Compendium II, *Copyright Office Practices*, Chapters 1602.2 (a transfer of copyright may be recorded "if the document . . . bears the actual signature of the person who executed it," which would include Carter Bryant); *see also Peer Int'l Corp. v. Latin Am. Music Corp.*, 161 F. Supp. 2d 38, 48 (D.P.R. 2001)).  A copyright registration that simply identifies the work as an assigned work does not satisfy the requirements for recordation of the transfer agreement.

3.      *Counter-instruction*: If any instruction regarding bona fide purchaser is to be given, Mattel respectfully requests that the Court adopt Mattel's proposed instruction,

18

which adheres to the statute and properly sets forth the legal requirements for a later transferee to prevail:

The defendants claim that their rights in the Bratz works created by Carter Bryant should prevail over Mattel's rights in those works because Mr. Bryant transferred the rights to MGA after he transferred them to Mattel and MGA obtained the rights in good faith.  In order to establish that MGA's later-acquired rights in the Bratz works should prevail, the defendants have the burden of proving by a preponderance of the evidence that MGA:

1.      Received the transfer of rights in Bratz works in good faith and without notice of Mr. Bryant's earlier transfer to Mattel, that is, without notice that Mattel had rights to the works;

2.      Paid valuable consideration;

3.      Registered each of the copyrights in Bratz works with the Copyright Office; and

4.       Duly recorded the transfer of the rights to MGA, i.e., the MGA/Bryant assignment agreement, before Mattel recorded its transfer, i.e., the Inventions Agreement.

To duly record the transfer, as required for the fourth element, MGA must have submitted to the Copyright Office the MGA/Bryant assignment agreement such that the recorded document, or material attached to it, specifically identifies the copyrighted works to which the assignment pertains.  A registration of a copyright is not a substitute for recordation.

It is undisputed in this case that the MGA/Bryant assignment agreement has not been recorded.

**Authority:**  17 U.S.C. § 205(d); *Peer Int'l Corp. v. Latin Amer. Music Corp.*, 161 F. Supp. 2d 38, 47-48 (D.P.R. 2001); Compendium II, *Copyright Office Practices*, Chapters 1602.2, 1604.02.

19

**MGA PARTIES' RESPONSE**

Although Mattel asserts that it is undisputed that Bryant's assignment to MGA of BRATZ works has not been recorded, Mattel's objection ignores that MGA's registrations each specifically note that MGA's ownership in the work at issue is by "assignment" of Carter Bryant, which is all that is required by 17 U.S.C. § 205(d). Mattel's objection also fails to note that there is no dispute that MGA's registrations of the works at issue were recorded with the Copyright Office long before Mattel's purported registrations. In addition, as the MGA Parties argued in opposing Mattel's motion for partial summary judgment, where, as here, a plaintiff has actual knowledge of the assignment, the recordation element should not be strictly construed and the jury should be permitted to consider whether plaintiff's actual knowledge suffices to establish the recordation element of the section 205(d) defense. (See MGA MSJ Opp'n at 30-31, citing 2 Nimmer on Copyright § 7.16 (2007).)

As for Mattel's proposed instruction on this issue, it should not be adopted for the reasons identified above and in the MGA Parties' Objections, for an additional reason that it utilizes an improper term "Bratz works."

Responses to Objections to MGA Parties' Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

1

**INSTRUCTION NO.** _____

2

**GOOD FAITH**

3

4   The good faith of Larian, MGA, and MGA (HK) is a factor that should be considered

5   when assessing any claim by Mattel that Larian, MGA, and/or MGA (HK) acted in bad

6   faith or with bad intent.  To the extent Mattel's claims implicate defendants' intent or

7   mental state, good faith is a relevant inquiry for which Mattel bears the burden of proof.

8

9   **Authority:**  <u>People v. Webb</u>, 74 Cal. App. 4th 688, 694 (1999); 5 B.E. Witkin, <u>Cal. Proc.:</u>

10  <u>Pleadings</u> § 1008 (4th ed. 1997) (distinguishing new matters from facts constituting a

11  denial of an element and identifying good faith as the latter and, thus, not an affirmative

12  defense).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Responses to Objections to MGA Parties' Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**MATTEL'S OBJECTION**

Mattel objects to defendants' proposed instruction on the following grounds:

1.     This proposed instruction is wholly unnecessary.  The jury already determined in Phase 1A that defendants are liable for intentional interference with contract, aiding and abetting breach of fiduciary duty and the duty of loyalty and conversion.  There is no basis to give defendants an instruction regarding the "good faith" of defendants at this point.  Moreover, defendants have repeatedly acknowledged that "good faith" is not even an affirmative defense, but rather would negate an element of Mattel's claims.  Accordingly, instructions on the elements of Mattel's claims encompassed notions of good faith/bad faith, and no additional instruction is necessary or appropriate.

2.     This proposed instruction is misleading and argumentative because it is worded so as to presume good faith: "The good faith of Larian, MGA and MGA (HK) is a factor that should be considered…."  This will be confusing and potentially cause the jury to presume that defendants acted in good faith.  The instruction should state clearly that "*whether*" defendants acted in good faith is a factor to be considered.

3.     The proposed instruction is confusing and prejudicial because it does not specify which claims a defense of "good faith" could even conceivably be relevant to and does not inform the jury that "good faith" is inapplicable to most of Mattel's claims.  For example, there is no "good faith" defense to a copyright infringement claim, *see Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978) ("[E]ven when the defendant believes in good faith that he is not infringing a copyright, he may be found liable.").  Given that is the only claim for which liability has not already been adjudicated, this instruction should not be given.

**MGA PARTIES' RESPONSE**

Mattel's objection that good faith is not relevant ignores that any claim that is pled as including an element of scienter will require the jury to determine whether the MGA Parties acted with good faith.  Good faith is relevant to any claim where intent is required or pled as an element.  See, e.g., State Farm Mut. Auto. Ins. Co. v. Superior Court, 228 Cal. App. 3d 721, 727 (1991) (holding that, where purported affirmative defense was relevant to negate alleged intent, it was not properly considered an affirmative defense but rather a denial of plaintiff's allegations, which could be proven as such at trial).  Moreover, Mattel has proposed an instruction on willful infringement, which is entirely improper for the reasons stated in the MGA Parties' Objection thereto, but which nonetheless implicates good faith.  (See Mattel's Disputed Proposed Jury Instruction: Copyright-Damages-Willful Infringement.)  Finally, good faith is quite plainly an element of the MGA Parties' various affirmative defenses, as demonstrated by the preceding instructions.

1

2

3

# INSTRUCTION NO. ____

## AFFIRMATIVE DEFENSES — *DE MINIMIS* USE

4   MGA, Isaac Larian, and MGA (HK) have raised the affirmative defense of <u>de minimis</u> use.

5

6   Larian, MGA, and MGA (HK) contend that even if Mattel can establish that it has a

7   copyright interest in Carter Bryant's drawings, it cannot recover damages in its claim for

8   copyright infringement because any similarities between the protectable elements of the

9   drawings and the protectable elements of the BRATZ dolls are *de minimis*.

10

11   Even where there has been some copying, that fact alone is not conclusive of infringement.

12   Some copying is permitted.  In addition to copying, it must be shown that this has been

13   done to an unfair extent.  This principle reflects the legal maxim *de minimis non curat lex*

14   (the law does not concern itself with trifles).  *De minimis* copying is not actionable.

15

16   If the similarities between the copyrighted work and the copied work consist only of

17   unprotectable elements and elements in the public domain, then the copying is *de minimis*

18   and no recovery is available.

19

20   When the range of protectable and unauthorized expression is narrow, the appropriate

21   standard for illicit copying is virtual identity.

22

23   **Authority:**   <u>Newton v. Diamond</u>, 388 F.3d 1189, 1192-93 (9th Cir. 2004); <u>Apple</u>

24   <u>Computer v. Microsoft Corp.</u>, 35 F.3d 1435, 1439 (9th Cir. 1994).

25

26

27

28

## MATTEL'S OBJECTION

Mattel objects to defendants' proposed instruction for the following reasons:

1.     The instruction emphasizes that "[s]ome copying is permitted," without making clear that "a taking is considered *de minimis* only if it is so meager and fragmentary that the average audience would not recognize the appropriation."   *Fisher v. Dees*, 794 F.2d 432, 434 (9th Cir. 1986).  The phrase "some copying is permitted" is also confusing and misleading, especially in light of the Court's recent Order regarding substantial similarity.

2.     This proposed instruction is contrary to the Court's July 24, 2008 Order on motion for partial summary judgment to the extent it purports to inform the jury that "the appropriate standard for illicit copying is virtual identity."  The Court expressly found that it "cannot go so far as to find that Mattel's drawings are "subject to only the 'thin' protection -- the protection against copying . . . The relevant test to be employed on this issue in this case -- and upon which the jury will ultimately be instructed -- is the test regarding the extrinsic and intrinsic analyses . . .."  July 24, 2008 Post-Phase 1A Order re Motion for Partial Summary Judgment on the Issue of Substantial Similarity ("July 24, 2008 Order"), at 5.  It is also unclear what defendants are even attempting to convey to the jury with statements regarding virtual identity (or how they could conceivably be relevant) in the context of a proposed instruction relating to a defense of *de minimis* use.

3.     The proposed instruction is also erroneous in that it invites the jury to segregate "public domain" and "unprotectible elements," when the Court has already found that the range of ways to express the human form renders Bryant's designs subject to full protection, as his expression is original.

4.     Defendants' proposed instruction does not make sufficiently clear that the *de minimis* use defense requires a determination of "whether there is a high enough degree of similarity between the works to establish copying, and whether that copying is substantial enough to constitute infringement." *Newton v. Diamond*, 388 F.3d 1189, 1194-1195 (9th Cir. 2004).

5.      To avoid jury confusion, the instruction should make clear that "[s]ubstantiality is measured by considering the qualitative and quantitative significance of the copied portion in relation to" Bryant's drawings as a whole.  *Id.* at 1195  (citing *Worth v. Selchow & Righter Co.*, 827 F.2d 569, 570 n.1 (9th Cir. 1987) ("[T]he relevant inquiry is whether a substantial portion of the protectable material in the *plaintiff*'s work was appropriated – not whether a substantial portion of *defendant*'s work was derived from plaintiff's work.") (emphasis supplied).  Applying this standard to the facts of this case, the jury should be instructed that "substantiality is measured by considering the qualitative and quantitative significance of Bryant's original drawings in relation to the Bratz dolls as a whole."   Defendants' selectively quote from *Newton* in ways that will lead to jury confusion.

6.      Mattel objects to including an instruction regarding a copyright affirmative defense before the instructions regarding copyright infringement are given.

7.      *Counter-Instruction*:  If the Court decides to give an instruction regarding *de minimis* use, it should be as follows:

> Defendants claim that even if Mattel can establish that it has a copyright interest in Carter Bryant's drawings, it cannot recover damages because any similarities between the drawings and the Bratz dolls are *de minimis*.  The *de minimis* use defense may only be found if the copying between Bryant's drawings and the Bratz dolls is so meager and fragmentary that the average person would not recognize the appropriation.  On the other hand, if you find that there is a high enough degree of similarity between the works as to establish copying, and that copying is substantial enough to constitute an infringement of Mattel's copyright, then no *de minimis* use defense may be found.  Substantiality is measured by considering the qualitative and quantitative significance of Bryant's original drawings in relation to the Bratz dolls as a whole.

26

**MGA PARTIES' RESPONSE**

The MGA Parties' proposed instruction echoes clear and concise language of the case law on point:  "For an unauthorized use of a copyrighted work to be actionable, the use must be significant enough to constitute infringement.  This means that even where the fact of copying is conceded, no legal consequences will follow from that fact unless the copying is substantial.  The principle that trivial copying does not constitute actionable infringement has long been a part of copyright law. Indeed, as Judge Learned Hand observed over 80 years ago: 'Even where there is some copying, that fact is not conclusive of infringement. Some copying is permitted. In addition to copying, it must be shown that this has been done to an unfair extent.'  This principle reflects the legal maxim, de minimis non curatlex (often rendered as, 'the law does not concern itself with trifles')."  Newton v. Diamond, 388 F.3d 1189, 1192-93 (9th Cir. 2004) (internal citations omitted).

As the Supreme Court held in Feist Publ'ns, Inc. v. Rural Telegraph Serv. Co., 499 U.S. 340, 349-50 (1991), "The primary objective of copyright is not to reward the labor of authors, but 'to promote the Progress of Science and useful Arts.'" Art. I, § 8, cl. 8. Accord Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156 (1975).  To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work.   Harper & Row Publishers v. Nation Enters., 431 U.S. 531, 556-557 (1985).  This principle, known as the idea/expression or fact/expression dichotomy, applies to all works of authorship."

Furthermore, Mattel's proposed counter-instruction ignores the distinction between protectable and unprotectable material, and would have the jury include in its consideration copying of unprotectable material.  The Supreme Court held in Feist Publ'ns, Inc. that "[t]he mere fact that a work is copyrighted does not mean that every element of the work may be protected.  Originality remains the sine qua non of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author." Id. at 348 (emphasis added).   In other words, it is only copying of copyrightable elements of a work that is answerable under the federal Copyright Act.

1  Consistent with Feist, applicable Ninth Circuit precedent holds that, because only those
2  elements of a work that are protectible can be compared when it comes to the question of
3  copyright infringement, the unprotectible elements of the work need to be filtered out and
4  disregarded.  As summarized in Cavalier v. Random House, Inc., 297 F.3d 815 (9th Cir.
5  2002):

6      A court "must take care to inquire only whether 'the protectible elements,
7      standing alone, are substantially similar.'" Williams v. Crichton, 84 F.3d 581,
8      588 (2d Cir. 1996) (emphasis in original) (citation omitted); accord Apple
9      Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442-43 (9th Cir. 1994).
10     Therefore, when applying the extrinsic test, a court must filter out and
11     disregard the non-protectible elements in making its substantial similarity
12     determination.  See Shaw [v. Lindheim], 919 F.2d [1353, 1361 (9th Cir.
13     1990)] (applying the extrinsic test to determine "whether there is substantial
14     similarity between the protected expression of ideas in two literary works")
15     (emphasis added); Berkic v. Crichton, 761 F.2d 1289, 1293-94 (9th Cir. 1985)
16     (rejecting consideration of general ideas as well as scenes-a-faire in
17     determining substantial similarity under the extrinsic test).

18  297 F.3d at 822-23.  See also Apple Computer Inc., 35 F.3d at 1439 ("When the range of
19  protectable and unauthorized expression is narrow, the appropriate standard for illicit
20  copying is virtual identity.").  The MGA Parties' proposed instruction properly focuses the
21  jury on the protectable elements of Mattel's work, rather than every element.

22     Moreover, Mattel's counter-instruction ignores its own discussion of the Newton
23  that "[s]ubstantiality is measured by considering the qualitative and quantitative
24  significance of the copied portion in relation to" Bryant's drawings as a whole" (emphasis
25  added), and inaccurately argues that "the jury should be instructed that 'substantiality is
26  measured by considering the qualitative and quantitative significance of Bryant's original
27  drawings in relation to the Bratz dolls as a whole,'" which is a clear misstatement of the
28  applicable legal principles.

28

**INSTRUCTION NO. _____**

**STATUTE OF LIMITATIONS - FRAUDULENT CONCEALMENT**

Mattel's intentional interference with contract claim and conversion claims were <u>not</u> filed within the time set by law.  However, Mattel contends that the doctrine of "fraudulent concealment" saves its claims.

Isaac Larian and MGA have proven that Mattel did not file its intentional interference claims against them within two years of the occurrence of the acts that Mattel contends were wrongful, in this case, the breach of Carter Bryant's contracts with Mattel.  Larian, MGA, and MGA (HK) have proven that Mattel did not file its conversion claims within three years of the act of wrongfully taking the property that Mattel contends was converted.  Thus, Mattel's claim is barred unless Mattel can prove that Larian or MGA fraudulently concealed the facts on which it based its claims.

In order to prove fraudulent concealment, Mattel must show:

  1. Larian, MGA, or MGA(HK) took affirmative steps to conceal the information Mattel would have needed to suspect that wrongdoing had taken place; <u>and</u>

  2. Mattel was not aware, and could not have been aware, that wrongdoing had taken place.  If Mattel was aware or could have been aware that wrongdoing had taken place, it does not matter what lengths any defendant may have gone to try to conceal the wrong.

**Authority:**  Final Pre-Trial Conference Order at 6; Cal. Civ. Proc. Code §§ 338(c) & 339(1); <u>Forcier v. Microsoft Corp.</u>, 123 F. Supp. 2d 520, 530 (N.D. Cal. 2000); <u>Charles Lowe Co. v. Xomox Corp.</u>, No. C95-0498 SI, 1999 WL 1293362, at *9 (N.D. Cal. Dec. 27, 1999); <u>Menefee v. Ostawari</u>, 228 Cal. App. 3d 239, 245 (1991); 3 B.E. Witkin, <u>Cal. Procedure: Actions</u>, § 575, at 728 (4th ed. 1996); <u>AmerUS Life Ins. Co. v. Bank of Am.</u>,

1  N.A., 143 Cal. App. 4th 631, 639 (2006); <u>Strasberg v. Odyssey Group, Inc.</u>, 51 Cal. App.

2  4th 906, 916 (1996); <u>Garamendi v. SDI Venodome SA</u>, 276 F. Supp. 2d 1030, 1041-42

3  (C.D. Cal 2003) ("Although a culpable defendant cannot be permitted to benefit from

4  intentional concealment, any period of equitable tolling will come to an end once the

5  plaintiff has, or should have, notice of his claim."); <u>Snapp & Assoc. Ins. Servs., Inc. v.</u>

6  <u>Malcolm Bruce Burlingame Robertson</u>, 96 Cal. App. 4th 884, 890-891 (2002) ("The

7  fraudulent concealment doctrine 'does not come into play, whatever the lengths to which a

8  defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim.'").

**MATTEL'S OBJECTION**

Mattel objects to defendants' proposed instruction regarding fraudulent concealment on the following grounds:

1.      This proposed instruction is argumentative and biased toward defendants. Defendants inform the jury that Mattel's intentional interference and conversion claims were not filed within the time set by law.  There is no reason to further inform the jury that defendants "have proven" that Mattel did not file these claims within that time. Defendants are over-emphasizing their contentions in this case.  Indeed, the entire second paragraph of this proposed instruction is surplus and should not be given.

2.      Defendants' proposed instruction is also biased and erroneous because it states that "it does not matter to whatever length a defendant may have gone to conceal his wrong," if Mattel "was aware or could have been aware that wrongdoing had taken place." As the Court knows, to be on notice of its claim, Mattel had to have been aware of **the specific wrongdoing** alleged in this action.  A claim does not accrue – and the tolling based upon fraudulent concealment does not terminate – if the wrongdoing suspected was qualitatively different from the wrongdoing at issue in the action.  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 813 (2005).  The generic references to "wrongdoing" in the two elements of defendants' purported test are improper for the same reason.

3.      The proposed instruction should make clear that, as a matter of law, if there was any tolling due to fraudulent concealment, such tolling did not end before July 18, 2003, because the Court has ruled that July 18, 2003 is the earliest Mattel's claims could have accrued.  *See* May 27, 2008 Order re Statute of Limitations Defense, at 8.  The Court has already found that July 18, 2003 is the underlined earliest date on which Mattel had knowledge of the wrongdoing at issue in this lawsuit.  *See* May 27, 2008 Order re Statute of Limitations Defense, at 8 (finding that the July 18, 2003 *Wall Street Journal* article wherein Larian indicated that he chose Bryant's idea for Bratz in late 1999 is the earliest date on which Mattel's claims could have accrued).  The Court also expressly found, based on undisputed evidence, that that "there is no evidence that Mattel had any **knowledge** of any of the three

31

1  generic elements of its claims, and thus no claim accrued, prior to the earliest date
2  identified by the Court, which is July 18, 2003." June 2, 2008 Order at 2 (referring to
3  generic elements of wrongdoing, causation and harm).  That finding is itself dispositive
4  because it shows that, if there was concealment, the period of tolling caused thereby could
5  not have expired prior to July 18, 2003.  The law is clear that tolling result from fraudulent
6  concealment does not end until a plaintiff has, at a bare minimum, "knowledge" of the
7  generic elements of *both* harm and causation.  *Hynix Semiconductor*, 2007 WL 3284060,
8  *3 (N.D. Cal. 2003) (tolling based on fraudulent concealment ends when the plaintiff has
9  "a suspicion of wrongdoing, *coupled with a knowledge* of the harm *and* its cause")
10  (emphasis added).  Indeed, Mattel contends that something more -- "near-actual" notice of
11  the specific harm -- is required to end a period of tolling due to concealment.  *See, e.g.*,
12  *Garamendi v. SDI Vendome SA*, 276 F. Supp. 2d 1030, 1042-3 (C.D. Cal 2003).

13         Accordingly, because (1) the Court has found as a matter of law that Mattel did not
14  have knowledge of *either* the harm or its cause prior to July 18, 2003, and (2) knowledge
15  of both the harm and its cause is required to end a period of tolling where there is
16  concealment, the only issue for the jury is whether there was concealment.  If there was
17  tolling, such tolling could not have ended before July 18, 2003 -- the first date on which
18  Mattel could possibly have learned of the specific harm at issue and its cause under the
19  Court's prior findings.  Because the earliest possible end-of-tolling date (July 18, 2003) is
20  long after the April 27, 2001 and April 27, 2002 dates that would render Mattel's claims
21  for conversion and intentional interference with contractual relations timely, there is no
22  need for the jury to make a finding as to the duration of the tolling.  If the jury finds
23  concealment, Mattel's claims are timely.

24         4.      Defendants' contention that constructive notice is sufficient to end the tolling
25  due to defendants' fraudulent concealment is contrary to law.  "[N]ear-actual" notice,
26  rather than "inquiry notice," is the governing standard.  *Garamendi v. SDI Vendome SA*,
27  276 F. Supp. 2d 1030, 1042-3 (C.D. Cal 2003).

28

1    5.    *Counter-instruction*:  Mattel requests that the Court give its proposed

2  instruction regarding fraudulent concealment, which is easier to understand and conforms

3  to the law:

4

5    Mattel claims that defendants fraudulently concealed the facts underlying

6  Mattel's claims of intentional interference with contract and conversion.

7  Defendants deny these allegations.

8    To prove fraudulent concealment, Mattel must show that the defendants

9  intentionally concealed the facts that could have led Mattel to discover that Carter

10  Bryant created Bratz works while employed by Mattel or that Mr. Bryant entered

11  into a contract with and worked with MGA while he was still employed by Mattel.

12    If you find that defendants intentionally concealed the facts that could have

13  led Mattel to discover that Carter Bryant created Bratz works while employed by

14  Mattel or that Mr. Bryant entered into a contract with and worked with MGA while

15  he was still employed by Mattel, you should find for Mattel on its allegations of

16  fraudulent concealment.

17

18  **Authority:**  *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1042-3 (C.D.

19  Cal. 2003); *Hynix Semiconductor v. Rambus, Inc.*, 2007 WL 3284060, at *3 (N.D.

20  Cal. Nov. 2, 2007) (tolling based on fraudulent concealment ends when the

21  plaintiff has "a suspicion of wrongdoing, coupled with a knowledge of the harm

22  and its cause"); *Grisham v. Philip Morris U.S.A., Inc.*, _ Cal.4th _, 54 Cal. Rptr. 3d

23  735, 744 (2007) ("[a] defendant's fraud in concealing a cause of action against him

24  will toll the statute of limitations."); *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th

25  926, 931 (1994) (reversing summary judgment on statute of limitations grounds

26  where "defendant's fraud in concealing a cause of action against him tolls the

27  applicable statute of limitations"); *April Enterprises, Inc. v. KTTV*, 147 Cal.

28  App.3d 805, 831-32 (1983).

33

**MGA PARTIES' RESPONSE**

To begin with, the proposed instruction is not biased or repetitive in informing the jury that two claims were not filed within the time required by law and then detailing the specific finding that has been made as to each claim. This simply provides clarity to assist the jury in making the factual determinations they need to make.

The statement that "it does not matter what lengths a defendant has gone to conceal his wrong" is supported by caselaw. See Snapp & Assoc. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson, 96 Cal. App. 4th 884, 890-891 (2002) ("The fraudulent concealment doctrine 'does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim.'").

The statement that constructive notice is sufficient is also supported by caselaw. See Garamendi v. SDI Venodome SA, 276 F. Supp. 2d 1030, 1041-42 (C.D. Cal 2003) ("Although a culpable defendant cannot be permitted to benefit from intentional concealment, any period of equitable tolling will come to an end once the plaintiff has, or should have, notice of his claim." (emphasis added)); see also Clemens v. DaimlerChrysler Corp., -- F.3d --, 2008 WL 2840662, at *4 (9th Cir. July 24, 2008) (the doctrine of fraudulent concealment requires "that the plaintiff was not at fault for failing to discover [its cause of action] or had no actual or presumptive knowledge of facts sufficient to put him on inquiry" (emphasis added).)

However, Mattel is correct that a plaintiff must be aware of the specific wrongdoing at issue in order to be on notice of his or her claims – this is precisely the fatal flaw in Mattel's assertion that the issue of notice as to intentional interference and conversion has already been decided. As this Court indicated in its July 24, 2008 Order, the Court's analysis in its rulings on May 27 and June 2 rulings summary judgment 1) addressed the accrual of claims other than intentional interference with contractual relations and conversion, and 2) applied the specific test relating to the "discovery rule" under California law. July 24, 2008 Order at 8. For these reasons, as the Court indicated in its July 24 Order, there is no prior ruling from this Court that dictates the duration of any

34

1   period of fraudulent concealment in this case for either intentional interference or

2   conversion.  Id. at 8-9; see also June 2, 2008 Order at 3 ("the conclusions drawn by the

3   Court regarding the possible accrual dates for the remaining state-law claims do not apply

4   to Mattel's claims for intentional interference with contractual relations and conversion").

5   Thus, these issues have been left for the jury.

6        Under California law, the "discovery rule" postpones accrual of a claim until "the

7   plaintiff discovers, or has reason to discover, the cause of action."  Norgart v. Upjohn Co.,

8   21 Cal.4th 383, 397 (1999) (emphasis added).  "Under the discovery rule, the statute of

9   limitations begins to run when the plaintiff suspects or should suspect that her injury was

10  caused by wrongdoing, that someone has done something wrong to her."  Jolly v. Eli Lilly

11  & Co., 44 Cal.3d 1103, 1110 (1988) (emphasis added).  As this Court's rulings on

12  summary judgment have shown, both the "wrongdoing" and the "injury" vary among

13  Mattel's claims.  This is particularly true for Mattel's conversion claim, which is limited to

14  seeking redress for the taking of tangible items.  See April 25, 2008 Order at 3.  Having

15  found the discovery rule inapplicable to Mattel's claims for intentional interference and

16  conversion, this Court has simply never had cause to consider when Mattel became aware

17  of the "wrongdoing" or "injury" asserted in these claims against each of the defendants.

18  Thus, even if the discovery rule applied to these claims, there would be no finding on

19  which Mattel could rely to take these questions away from the jury.

20       Moreover, even if there were such a finding, it would be inapposite.  Under

21  California law, the standards for applying fraudulent concealment and the discovery rule

22  are not identical.  As the Ninth Circuit recently observed, "California applies a special

23  standard in cases of fraudulent concealment" under which a plaintiff must show inter alia

24  "that the plaintiff was not at fault for failing to discover [its cause of action] or had no

25  actual or presumptive knowledge of facts sufficient to put him on inquiry."  Clemens v.

26  DaimlerChrysler Corp., -- F.3d --, 2008 WL 2840662, at *4 (9th Cir. July 24, 2008); see

27  also Snapp & Assoc. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson, 96 Cal.

28  App. 4th 884, 890-891 (2002) ("The fraudulent concealment doctrine 'does not come into

35

1  play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a
2  plaintiff is on notice of a potential claim.'").  This Court has already held that it could not
3  resolve whether this standard was met on summary judgment.  See June 2, 2008 Order at 3
4  ("Whether a period of fraudulent concealment exists, as well as the duration of any such
5  period, cannot be determined on the undisputed record").  As such, the entire inquiry
6  should be presented to and decided by the jury.

7       For these reasons, and the reasons stated in the MGA Parties' Objections thereto,
8  Mattel's proposed instruction on fraudulent concealment is inadequate.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PHASE 1-B – Damages**

**INSTRUCTION NO. 5.1**

**DAMAGES — INTRODUCTION**

In Phase 1A, you found in favor of Mattel as to the following claims: intentional interference with contractual relations, aiding and abetting breach of fiduciary duty, aiding and abetting breach of the duty of loyalty, and conversion.  You must now determine Mattel's damages.  Mattel has the burden of proving damages by a preponderance of the evidence.  Damages means the amount of money that will reasonably and fairly compensate Mattel for any injury you find was caused by the defendants.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

**Authority:**   Ninth Circuit Manual of Model Jury Instructions, Civil, 5.1 (2007) (as modified).

**MATTEL'S OBJECTION**

Mattel objects to defendants' proposed instruction regarding Damages—Introduction on the following grounds:

1.      This proposed instruction is duplicative and unnecessary given that the CACI Model Instructions regarding damages to be awarded on Mattel's state law claims against defendants include general introductory information regarding the purpose of damages and the like.  *E.g.*, CACI No. 3901.

1   **MGA PARTIES' RESPONSE**

2

3   The MGA Parties propose this instruction, which is more inclusive and more general than

4   the CACI instructions cited by Mattel, to give the jury a general introduction to the

5   concept of damages before delving into the various means of calculating damages for

6   different claims.   While the instructions relating to each means of calculating damages

7   may also have introductory language, the MGA Parties suggest that a separate, general

8   introduction will ensure that the jury understands that these principles apply universally.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INSTRUCTION NO. 3925

## ARGUMENTS OF COUNSEL NOT EVIDENCE OF DAMAGES

The arguments of the attorneys are not evidence of damages.  The amount of damages that Mattel has claimed in its written pleadings is not evidence of Mattel's damages.   Your award must be based on your reasoned judgment applied to the testimony of the witnesses and the other evidence that has been admitted during trial.

**Authority:**  CACI No. 3925 (2008)

40

1  **MATTEL'S OBJECTION**

2       Mattel objects to defendants' proposed instruction regarding Damages—Introduction

3  on the following grounds:

4       1.     This proposed instruction is argumentative and unnecessary given that

5  preliminary instructions given to the jury made clear that the arguments of counsel are not

6  evidence.  There is no need to restate that principle to the jury in the context of the

7  damages determination.  It is also not appropriate to inform the jury regarding what

8  "Mattel has claimed in its written pleadings."  Defendants are free to seek limiting

9  instructions, if appropriate at all, as pleadings are admitted at trial.  Defendants are simply

10  over-emphasizing their contentions in this case.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | **MGA PARTIES' RESPONSE**

2      Mattel objects to the proposed instruction as "argumentative," but the language of

3 the instruction tracks verbatim CACI No. 3925, "Arguments of Counsel Not Evidence of

4 Damages."   MGA proposes the instruction to inform the jury that the arguments of the

5 attorneys are not evidence of damages.  No other proposed instruction addresses the issue.

6      Mattel also contends that it is "inappropriate" to instruct the jury that Mattel's

7 written pleadings are not evidence of damages.  The Judicial Council disagrees.  <u>See</u> CACI

8 No. 2925  ("If a pleading is admitted into evidence, the following may be added: 'The

9 amount of damages that [name of plaintiff] has claimed in [his/her] written pleadings is not

10 evidence of [name of plaintiff]'s damages.'")  MGA's proposed instruction adopts this

11 language of CACI No. 3925 without substantive modification.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 3901**

**INTRODUCTION TO TORT DAMAGES –**

**LIABILITY ESTABLISHED FOR**

**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

If you decide that Mattel was harmed by MGA's and/or Mr. Larian's interference with Mattel's contract with Carter Bryant, you must first decide whether that interference was a substantial factor in causing the harm to Mattel.

If the interference was a substantial factor, you must then decide how much money will reasonably compensate Mattel for the harm resulting from MGA's and/or Mr. Larian's interference. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by the intentional interference, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

[Lost Profits]

[Loss or Destruction of Personal Property]

**Authority**:  CACI No. 3901 (2008) (as modified)

**MATTEL'S OBJECTION**

Mattel objects to defendants' proposed instruction on the following grounds:

1.      This proposed instruction is prejudicial and misleading to the extent it purports to inform the jury that it must decide whether "Mattel was harmed by MGA's and/or Mr. Larian's interference with Mattel's contract with Carter Bryant" and whether that interference "was a substantial factor in causing the harm to Mattel." The jury has already decided those issues -- which are elements of a cause of action for intentional interference and on which the jury was instructed in Phase 1A -- in Mattel's favor. *See* Jury Instruction No. 22 (informing the jury that the fifth and sixth elements of a cause of action for intentional interference are: "That Mattel was harmed in some way" and "That the conduct of MGA and/or Mr. Larian was a substantial factor in causing Mattel's harm."); Jury Instruction No. 3 (informing the jury that "[a] 'substantial factor' is something which is more than a slight, trivial, negligible, or theoretical factor in producing a particular result."). Accordingly, it is prejudicial and misleading for defendants to tell the jury it must make those same findings again before awarding damages to Mattel.

2.      The proposed instruction misstates the damages being claimed by Mattel, which includes compensatory and general damages, including disgorgement of profits earned by MGA and Mr. Larian as a result of their wrongful conduct, prejudgment interest and punitive damages.

**MGA PARTIES' RESPONSE**

Mattel complains that MGA's instruction, which closely tracks the language of CACI No. 3031, is "prejudicial and misleading." But the Judicial Council recommends use of CACI No. 3091 in situations like this one, where liability has been conceded or established. See CACI No. 3091 (entitled "Introduction to Tort Damages—*Liability Established*") (emphasis added) Accordingly, the proposed instruction is appropriate here.

Mattel objects to instructing jurors that the defendants' conduct must be a substantial factor in causing the damages Mattel seeks. But it does not (and cannot) dispute that any damages must be causally connected to defendants' acts. Di Loreto v. Shumake, 38 Cal. App. 4th 35, 39 (1995) (stating that damages for tortious interference are the "'economic harm to the plaintiff proximately caused by the acts of the defendant.'") It is therefore appropriate to instruct the jury that the defendants' acts must be a "substantial factor" in causing any purported damages. This is precisely what the Judicial Council advises. CACI No. 3091 ("If you decide that [name of plaintiff] was harmed and that [name of defendant]'s [insert description of cause of action, e.g., "negligence"] was a substantial factor in causing the harm, you also must decide how much money will reasonably compensate [name of plaintiff] for the harm. This compensation is called "damages.")

Mattel's claim for disgorgement of "profits earned by MGA and Mr. Larian" is properly omitted from this instruction. The Court has already ruled that Mattel's damages cannot be based on MGA Parties' purported interference with Mattel's rights to Bratz. See 4/25/2008 Order Granting in Part, Denying in Part, and Deferring in Part the Parties' Motions for Partial Summary Judgment, at 2. ("[T]he tortuous interference with contract claim is preempted to the extent that it is based on Mattel's rights to Bratz.") To the extent Mattel claims that the MGA Parties' profits derived from the unauthorized use of Mattel's copyrighted drawings, those profits are preempted by federal copyright law..

The proposed instruction as currently phrased regarding prejudgment interest is confusing and misleading. As previously shown, the jury may only award prejudgment

1   interest on compensatory damages; it may not award prejudgment interest on Mattel's

2   disgorgement or punitive damages claims.   <u>See</u> MGA Parties' Objections to Mattel's

3   Proposed Jury Instruction, "Introduction To Tort Damages—Liability Established For

4   Intentional Interference With  Contractual Relations."

5       As for Mattel's complaint that the instruction does not contain Mattel's claim for

6   punitive damages, Mattel lacks any evidentiary basis to seek punitive damages, so such an

7   instruction is unnecessary. <u>See</u> <u>Barry v. Raskov</u>, 232 Cal. App. 3d 447, 457 (1991) (trial

8   court properly refused to instruct jury on punitive damages, as there was not clear and

9   convincing evidence of fraud); <u>see</u> <u>also</u> <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir.

10   2002) ("[a] party is entitled to an instruction about his or her theory of the case if it is

11   supported by law and has foundation in the evidence").

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# INSTRUCTION NO. 430

# CAUSATION:  SUBSTANTIAL FACTOR

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.  Similarly, when a plaintiff seeks disgorgement of a defendant's profits, the plaintiff must establish that the amount to be disgorged must proceed directly and proximately from the wrongdoing and not be attributable to some supervening cause or causes.

**Authority**:  CACI No. 430 (2008) (modified); <u>Wellman v. Dickinson</u>, 682 F.2d 355, 368 (2d Cir. N.Y. 1982) (quoting <u>Marbury Management, Inc. v. Kohn</u>, 629 F.2d 705, 719 (2d Cir. 1980) (finding that the amount to be disgorged "must proceed directly and proximately from the violation claimed and not be attributable to some supervening cause" in denying claim for disgorgement); <u>SEC v. First City Financial Corp.</u>, 890 F.2d 1215, 1231 (D.C. Cir. 1989) ("the court may exercise its equitable power only over property causally related to the wrongdoing").

1  **MATTEL'S OBJECTION**

2      Mattel objects to defendants' proposed instruction regarding Causation:  Substantial

3  Factor on the following grounds:

4      1.      This proposed instruction is duplicative and unnecessary.  The Court already

5  informed the jury of the legal meaning of "substantial factor" in Phase 1A.  *See* Jury

6  Instruction No. 3 (informing the jury that "[a] 'substantial factor' is something which is

7  more than a slight, trivial, negligible, or theoretical factor in producing a particular

8  result.").  Moreover, defendants' reference to "disgorgement" in this proposed instruction is

9  confusing and erroneous.  A separate instruction on disgorgement -- as in Mattel's

10 proposed jury instructions -- would perhaps lessen the likelihood of confusion.  In

11 addition, defendants' statement that disgorged profits should not be "attributable to some

12 supervening cause or causes" is confusing and not helpful to the jury.

13     2.      With respect to defendants' purported limitation on disgorgement, defendants

14 fail to cite a single authority regarding California law.  Moreover, this instruction adds

15 nothing to the proposed damages instructions specific to the claims at issue, which make

16 clear that damages awarded must have a causal relationship with the wrongdoing at issue.

17

18

19

20

21

22

23

24

25

26

27

28

48

**MGA PARTIES' RESPONSE**

Mattel here claims that CACI No. 430 is "unnecessary," but CACI No. 3901, which precedes this instruction, explicitly directs that No. 430 be read "as the definition for 'substantial factor'" See CACI No. 3901 (Directions for Use).    No other Phase 1(b) instruction addresses the definition of "substantial factor."  Accordingly, CACI No. 430 is appropriate here.

In light of Mattel's disgorgement claim, MGA has proposed a modification that informs the jury about the requisite causal connection between the defendant's acts and any disgorged profits.  Mattel does not dispute that the instruction as proposed correctly states the law, or that any "damages awarded must have a causal relationship with the wrongdoing at issue."  Given the amount of damages Mattel seeks via disgorgement – an amount that dwarfs damages sought under all other theories – the MGA Parties' submit that a specific instruction on disgorgement is not only permissible but necessary.

1

**INSTRUCTION NO. ____**

2

**LIMITATIONS ON DAMAGES FOR INTENTIONAL INTERFERENCE WITH**

3

**CONTRACTUAL RELATIONS**

4

5   In measuring damages under Mattel's claim of intentional interference, you are to consider

6   only those monetary losses (if any) that Mattel suffered as a result of MGA and Mr.

7   Larian's interference with Mattel's contract with Carter Bryant.  You may not consider the

8   MGA Parties' interference (if any) with Mattel's rights to Bratz or any of the revenues,

9   profits, or other benefits realized by MGA or Mr. Larian from Bratz dolls or related

10  products

11

12  **Authority**: April 25, 2008 Order Granting in Part, Denying in Part, and Deferring in Part

13  the Parties' Motions for Partial Summary Judgment, at 2 ("[T]he tortuous interference with

14  contract claim is preempted to the extent that it is based on Mattel's rights to Bratz.").

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Responses to Objections to MGA Parties' Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**MATTEL'S OBJECTION**

Mattel objects to defendants' proposed instruction regarding Limitations on Damages for Intentional Interference with Contractual Relations on the following grounds:

1.      This proposed instruction is erroneous and misleading because it purports to inform the jury that it may not consider defendants' interference with "Mattel's rights to Bratz" or "any of the revenues, profits, or other benefits realized by MGA or Mr. Larian from Bratz dolls or related products."  The Court expressly found that Mattel's intentional interference claim is not preempted "to the extent that the claim is based on MGA's acts that may be found to have aided and abetted the breach or induced the breach of Bryant's fiduciary duty."  April 25, 2008 Order, at 2.  The jury determined in Phase 1A that Bryant breached his fiduciary duty to maintain the confidentiality of Mattel's confidential information, which includes the Bratz-related works Mattel owns pursuant to the Inventions Agreement, and that defendants aided and abetted that breach.  Accordingly, the jury can certainly consider defendants' improper use and disclosure of confidential Bratz-related information in awarding damages to Mattel for this claim.  The issue is not Mattel's actual copyrights in Bratz works; rather, the issue is defendants' interference with Bryant's contractual obligation to communicate the works to Mattel and not disclose this confidential Mattel information to defendants.

2.      MGA's attempt to convert Mattel's intentional interference claim into a copyright claim based on the relief sought fails because, in evaluating preemption, courts look at the allegations supporting liability, not the desired remedies.  *See, e.g.*, *Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1151 (N.D. Cal. 2007) ("The remedy ... does not inform the court's decision, only whether the state law right includes an extra element.").

3.      Moreover, there is no basis for defendants to inform the jury that it may not consider any of the profits that defendants realized from Bratz.  Mattel is entitled to recover all benefits that defendants obtained as a result of their wrongful conduct, including Bratz-related profits.  Mattel specifically seeks disgorgement of such profits.

51

*See* Mattel's Proposed Jury Instructions re Introduction to Tort Damages—Liability Established for Intentional Interference with Contractual Relations.

1   **MGA PARTIES' RESPONSE**

2          Mattel here quotes selectively from the Court's Order in opposing the instruction.

3   In its order regarding the parties' motions for partial summary judgment, the Court has

4   held that the preemption determination turns on "whether the substance of the tort claim

5   differs qualitatively from the copyright claim at issue."   (4/25/2008 Order at 2, citing

6   Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1089 (9th Cir. 2005); Laws v. Sony

7   Music Entertainment, Inc., 448 F.3d 1134, 1144 (9th  Cir. 2006).)   Thus, as the Court

8   explained: "Here, to the extent that the tortuous interference is premised upon MGA's

9   alleged interference with any copyrights that Mattel may have under the Inventions

10  Agreement, it is preempted.   Such a claim is not qualitatively different from Mattel's

11  copyright claim.  (4/25/2008 Order at 2.)"   Accordingly, it is appropriate to instruct the

12  jury that, in weighing damages, it should not consider the MGA Parties' purported

13  interference with the rights to Bratz.  Such damages tread ineluctably on federal copyright

14  grounds.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 3901**

**INTRODUCTION TO TORT DAMAGES –**

**LIABILITY ESTABLISHED FOR**

**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

If you decide that Mattel was harmed by MGA's aiding and abetting of Carter Bryant's breach of his fiduciary duty to Mattel, you must decide whether one or more specific acts of misconduct was a substantial factor in causing the harm to Mattel.

If you decide that one or more specific acts of misconduct were substantial factors, you must then decide how much money will reasonably compensate Mattel for the harm caused by the specific conduct. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by MGA and Mr. Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

    [Lost Profits]

    [Loss or Destruction of Personal Property]

**Authority**:  CACI No. 3901 (2008) (as modified).

1  **MATTEL'S OBJECTION**

2        Mattel objects to defendants' proposed instruction on the following grounds:

3        1.    This proposed instruction is prejudicial and misleading to the extent it

4  purports to inform the jury that it must decide whether "Mattel was harmed by MGA's

5  aiding and abetting of Carter Bryant's breach of his fiduciary duty to Mattel" and whether

6  that misconduct "was a substantial factor in causing the harm to Mattel."  The jury has

7  already decided those issues when it found that Mattel was harmed by Bryant's breach of

8  fiduciary duty, that Bryant's breach of duty was a substantial cause of Mattel's harm and

9  that defendants substantially assisted Bryant's breach of duty.  *See* Jury Instruction Nos. 25

10  and 26.  Indeed, the Court already informed the jury of the legal meaning of "substantial

11  factor" in Phase 1A.  *See* Jury Instruction No. 3 (informing the jury that "[a] 'substantial

12  factor' is something which is more than a slight, trivial, negligible, or theoretical factor in

13  producing a particular result.").  Accordingly, it is prejudicial and misleading for

14  defendants to tell the jury it must make those same findings again before awarding

15  damages to Mattel.

16        2.    This proposed instruction erroneously omits reference to Isaac Larian in the

17  first paragraph.  The jury found that Mr. Larian is liable to Mattel for aiding and abetting

18  breach of fiduciary duty.

19        3.    The proposed instruction misstates the damages being claimed by Mattel,

20  which includes compensatory and general damages, including disgorgement of profits

21  earned by MGA and Mr. Larian as a result of their wrongful conduct, prejudgment interest

22  and punitive damages.

23

24

25

26

27

28

**MGA PARTIES' RESPONSE**

Mattel complains that MGA's instruction, which closely tracks the language of CACI No. 3031, is "prejudicial and misleading." But the Judicial Council recommends use of CACI No. 3091 in situations like this one, where liability has been conceded or established. <u>See</u> CACI No. 3091 (entitled "Introduction to Tort Damages—*Liability Established*") (emphasis added) Accordingly, the proposed instruction is appropriate here.

Mattel takes issue with the requirement that the defendants' conduct be a substantial factor in causing the damages it seeks. But any damages awarded by the jury must be causally connected to defendants' acts. <u>Di Loreto v. Shumake</u>, 38 Cal. App. 4th 35, 39 (1995) (stating that damages for tortious interference are the "'economic harm to the plaintiff proximately caused by the acts of the defendant.'") It is therefore appropriate to instruct the jury that the defendants' acts must be a "substantial factor" in causing any purported damages. This is precisely what the Judicial Council advises. CACI No. 3091 ("If you decide that [name of plaintiff] was harmed and that [name of defendant]'s [insert description of cause of action, e.g., "negligence"] was a substantial factor in causing the harm, you also must decide how much money will reasonably compensate [name of plaintiff] for the harm. This compensation is called "damages.")

The omission of Mr. Larian from MGA's proposed instruction was inadvertent. Mr. Larian's name should be inserted into the instruction.

On the other hand, as discussed below, Mattel's claim for disgorgement of "profits earned by MGA and Mr. Larian" is properly omitted from this instruction, for at least three reasons. First, any disgorgement of profits under this claim is limited to the profits realized by the fiduciary (Carter Bryant) as a result of his breach. Second, the findings of the Court and the jury with respect to Mr. Bryant's breaches of fiduciary duty do not implicate profits generated by the sale of Bratz and related products. Rather, Mattel's damages are limited to those caused by (1) Mr. Bryant's disclosure of "Proprietary Information," as distinct from Mr. Bryant's "Inventions," both of which were defined under the Inventions Agreement, and (2) Mr. Bryant's consummation of an agreement

1   with MGA while employed by Mattel.  Finally, Mattel's claims for profits generated by
2   the MGA Parties' use of Carter Bryant's sketches purportedly subject to Mattel's
3   copyrights is preempted by federal copyright law. <u>Del Madera Props. v. Rhodes & Gardner,</u>
4   <u>Inc.</u>, 820 F.2d 973, 977 (9th Cir. 1987), *overruled on other grounds*, <u>Fogerty v. Fantasy,</u>
5   <u>Inc.</u>, 510 U.S. 517 (1994)).

6       The proposed instruction as currently phrased regarding prejudgment interest is
7   misleading.  As previously shown, the jury may only award prejudgment interest on
8   compensatory damages; it may not award prejudgment interest on Mattel's disgorgement
9   or punitive damages claims.  <u>See</u> MGA Parties' Objections to Mattel's Proposed Jury
10  Instruction, "Introduction To Tort Damages—Liability Established For Intentional
11  Interference With  Contractual Relations."  Mattel's proposed instruction suggests
12  otherwise.

13      As for Mattel's complaint that the instruction does not contain Mattel's claim for
14  punitive damages, Mattel lacks any evidentiary basis to seek punitive damages, so such an
15  instruction is unnecessary. <u>See</u> <u>Barry v. Raskov</u>, 232 Cal. App. 3d 447, 457 (1991) (trial
16  court properly refused to instruct jury on punitive damages, as there was not clear and
17  convincing evidence of fraud); <u>see</u> <u>also</u> <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir.
18  2002) ("[a] party is entitled to an instruction about his or her theory of the case if it is
19  supported by law and has foundation in the evidence").

20
21
22
23
24
25
26
27
28

57

1

**INSTRUCTION NO. \_\_\_\_**

2

**LIMITATION ON DAMAGES FOR AIDING AND ABETTING BREACH OF**

3

**FIDUCIARY DUTY  (PREEMPTION)**

4

5   In determining the amount of damages to award in connection with Mattel's claim that

6   MGA and Isaac Larian aided and abetted Carter Bryant's breach of his fiduciary duty to

7   Mattel,  you <u>may not </u>consider any revenues, profits or other financial benefits that MGA

8   realized from the use of Mr. Bryant's sketches.

9

10   **Authority**:   <u>Del Madera Props. v. Rhodes & Gardner, Inc.</u>, 820 F.2d 973, 977 (9th Cir.

11   1987), <u>overruled on other grounds</u>, <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517 (1994).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MATTEL'S OBJECTION**

Mattel objects to defendants' proposed instruction regarding Limitation on Damages for Aiding and Abetting Breach of Fiduciary Duty on the following grounds:

1.     This proposed instruction is erroneous and prejudicial to Mattel. Defendants are simply trying to resurrect an argument previously rejected by the Court. Mattel's claims for aiding and abetting breach of duty are not preempted by the Copyright Act.  Accordingly, there is no conceivable basis for this proposed instruction.

2.     Mattel is entitled to recover all profits and other benefits that MGA and Isaac Larian obtained by engaging in the wrongful act of aiding and abetting breach of fiduciary duty, including "revenues, profits or other financial benefits that MGA realized from the use of Mr. Bryant's sketches."  *See* Restatement of Restitution, § 201 (2008) ("Where a fiduciary in violation of his duty to the beneficiary communicates confidential information to a third person, the third person, if he had notice of the violation of duty, holds upon a constructive trust for the beneficiary any profit which he makes through the use of such information."); *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 543 (2007) ("Disgorgement of profits is particularly applicable in cases dealing with breach of a fiduciary duty"; "Active participants in the breach of fiduciary duty by another are accountable for all advantages they gained thereby and are liable to the beneficiary of the duty").

3.     The jury determined in Phase 1A that Bryant breached his fiduciary duty to maintain the confidentiality of Mattel's confidential information, which would certainly include the Bratz-related works Mattel owns pursuant to the Inventions Agreement.  Mattel specifically seeks disgorgement of profits earned by defendants as a result of their wrongful conduct.  *See* Mattel's Proposed Jury Instruction re Introduction to Tort Damages—Liability Established for Aiding and Abetting Breach of Fiduciary Duty.

4.     The only authority cited by defendants, *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973 (9th Cir. 1987), is distinguishable both because it involved a different legal claim (unfair competition) and because that claim was indistinguishable

59

1  from copyright infringement (alleging the defendant had misappropriated the plaintiff's

2  "time and effort" in creating maps and documents).  Id. at 977. Mattel's aiding/abetting

3  claims do not focus on the "time and effort" involved in creating Bratz.  Rather, they are

4  predicated on Bryant's breaches of his statutory duty of loyalty and his fiduciary

5  obligations created by the Inventions Agreement, including his misuse and disclosure of

6  Mattel's confidential information and work for a competitor.  Such claims are not

7  preempted.  See, e.g., Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1089 (9th Cir.

8  2005) (rejecting contention similar to MGA's here that claims are preempted merely

9  because they involve ownership of expression protected by copyright; claims based on

10 "use" of information protected by copyright in violation of contractual obligations are *not*

11 preempted); Grosso v. Miramax Film Corp., 383 F.3d 965, 968 (9th Cir. 2004)

12 (distinguishing Del Madera; holding that even implied contractual obligations avoid

13 preemption); Balboa Ins. Co. v. Trans Global Equities, 218 Cal. App. 3d 1327, 1352

14 (1990) (Del Madera does not apply where there are "broader allegations of breach" beyond

15 creation of a copyright).

16          Ample case law, including from the Ninth Circuit, confirms that Mattel's

17 aiding/abetting claims contain an element that Mattel's copyright claims do not, and are not

18 preempted.  In Oddo v. Ries, 743 F.2d 630, 635 (9th Cir. 1984), for example, the Circuit

19 held that an allegation that a partner breached his fiduciary duty "is quite different from the

20 interests preempted by copyright," and thus was not preempted.[1]  Indeed, Congress

21

22

_____

23      [1]   *See also, e.g., Briarpatch v. Phoenix Pictures*, 373 F.3d 296, 307 (2d Cir. 2004)
   (aiding/abetting breach of fiduciary duty claim not preempted because "the underlying
24 right they seek to vindicate is the right to redress violations of the duty owed to a
   partnership by those who control it"); *Daboub v. Gibbons*, 42 F.3d 285, 289-90 (5th Cir.
25 1995) (claims preempted only because failed to allege "any element, such as … breach of
   fiduciary duty, which render [claims] different in kind from copyright infringement");
26 *Groubert v. Spyglass Entm't*, 2002 WL 2031271 at *5 (C.D. Cal. 2002) ("Plaintiff's breach
   of confidence claim ... contains an extra element, namely, the confidential relationship.");
27 *Metrano v. Fox Broadcasting Co.*, 2000 WL 979664 at *7 (C.D. Cal. 2000) ("This
   agreement of confidentiality constitutes an extra element that brings plaintiff's breach of
28 confidentiality claim outside the realm of copyright protection.").

1  expressly carved out such claims from the Copyright Act's preemption provision.  *See*
2  William F. Patry, *Patry on Copyright*, § 18:22 (2007).

3          5.      MGA's attempt to convert Mattel's aiding and abetting claims into
4  copyright claims based on the relief sought fails because, in evaluating preemption, courts
5  look at the allegations supporting liability, not the desired remedies.  *See, e.g.*, *Goldberg v.*
6  *Cameron*, 482 F. Supp. 2d 1136, 1151 (N.D. Cal. 2007) ("The remedy ... does not inform
7  the court's decision, only whether the state law right includes an extra element.")

8          6.      Mattel objects to the use of the pejorative term "sketches" when
9  referring to Mr. Bryant's drawings.

1  **MGA PARTIES' RESPONSE**

2       Mattel's claim for profits realized by MGA and Mr. Larian through sales of Bratz

3  and related products is preempted by federal copyright law.  In connection with its ruling

4  on the parties' motions for partial summary judgment, the Court held that preemption turns

5  on "whether the substance of the tort claim differs qualitatively from the copyright claim at

6  issue."  (4/25/2008 Order at 2, citing Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079,

7  1089 (9th Cir. 2005); Laws v. Sony Music Entertainment, Inc., 448 F.3d 1134, 1144 (9th

8  Cir. 2006).)  The Court further held that to the extent Mattel's tortious interference claim

9  was premised upon MGA's alleged interference with any copyrights that Mattel may have

10  under the Inventions Agreement, it is preempted.  Thus, "the tortious interference with

11  contractual relations is preempted to the extent it is based on Mattel's rights to Bratz." Id.

12       The same should hold true as respects Mattel's claims that the MGA Parties aided

13  and abetted Carter Bryant's fiduciary duty and duty of loyalty.  To the extent those claims

14  are premised upon MGA's alleged contractual right to the Bratz copyrights that Mattel may

15  have under the Inventions Agreement, they should be preempted.  Thus, to the extent that

16  Mattel seeks disgorgement of profits from the MGA Parties' allegedly infringing sale of

17  Bratz fashion dolls and Bratz related products, -- i.e., "based on Mattel's rights to Bratz" --

18  those claims are not qualitatively different than Mattel's copyright claim and are preempted.

19       Additionally, as MGA has already shown, the findings of the Court and the jury

20  with respect to Mr. Bryant's breaches of fiduciary duty do not implicate profits generated

21  by the sale of Bratz and related products.  Rather, Mattel's damages are limited to those

22  caused by (1) Mr. Bryant's disclosure of "Proprietary Information," as distinct from Mr.

23  Bryant's "Inventions," both of which were defined under the Inventions Agreement, and (2)

24  Mr. Bryant's consummation of an agreement with MGA while employed by Mattel. The

25  jury found that the breach of fiduciary duty underlying Mattel's aiding and abetting claims

26  are limited to Carter Bryant's disclosure of "Proprietary information," which the Inventions

27  Agreement defines as information "deriv[ing] independent economic value, actual or

28  potential, from not being generally known to the public." See TX 00025, at 2.  As

1  examples, the Inventions Agreement lists Mattel's relationship with third parties, including
2  customers and suppliers.

3      As respects Carter Bryant's duty of loyalty, the jury has merely found that Mr.
4  Bryant's consummation of an agreement with MGA while employed by Mattel constituted
5  a breach of that duty. See Final Jury Instructions as Given, Jury Instructions No. 28. The
6  Court's instruction made no reference to MGA's sale of allegedly infringing Bratz fashion
7  dolls or Bratz related products --- all of which occurred after Mr. Bryant left Mattel.

8      By contrast, the Court ruled that Carter Bryant's drawings are "Inventions" as
9  defined in Paragraph 2 of the Inventions Agreement. The Court's instructions to the jury
10  on Mattel's breach of fiduciary duty claims made no mention of Mr. Bryant's
11  "Inventions." See Final Jury Instructions As Given, Jury Instruction No. 28. Moreover,
12  unlike the "Proprietary Information" defined in the Inventions Agreement, Mr. Bryant's
13  drawings do not "derive independent economic value, actual or potential, from not being
14  generally known to the public." See TX 00025, at 2. To the extent they have value, that
15  value derives from Mattel's copyright in the drawings, which right flows from the
16  Copyright Act and permits Mattel, among other things, to pursue infringement actions
17  against allegedly infringing works.

18      Second, as shown previously, Mattel's aiding and abetting claims limit
19  disgorgement to Carter Bryant's profits realized as a result of his breach.. Mattel once
20  again cites Restatement of Restitution §201 and County of San Bernardino v. Walsh, 158
21  Cal. App. 4th 533, 537 (Cal. App. 2d Dist. 2007), to support the argument to the contrary.
22  But as MGA has also shown, the Restatement is inapplicable here. Indeed, the few cases
23  that actually have applied §201 have not involved the disgorgement of a non-fiduciary's
24  profits.[2]

25
26      [2]    Invest Almaz v. Temple-Inland Forest Prods. Corp., 243 F.3d 57 (1st Cir. N.H. 2001) (no

27      disgorgement of profits where court dismissed plaintiff's unjust enrichment, fraud, and aiding-and-abetting claims); Invest Almaz v. Temple-Inland Forest Prods.
28  Corp., 2000 DNH 37 (D.N.H. 2000) (no disgorgement where court denied unjust

*(cont'd)*

Walsh is also inapposite.  In Walsh, plaintiffs sued two defendants, Mays and Walsh, for their role in bribing the County's Chief Administrative Officer.  Id.  The damages consisted of the county official's salary, the bribes paid to him, and most of Mays' consulting fees received in connection with the contract secured via bribe.  Id.  The court explained that both the county official and Mays, a former county official, were fiduciaries owing duties to the county.  Id.  The specific quotation that Mattel relies upon relates to Mays.  Id.  Yet as respects Mays, the court specifically held that "Mays was not a government official during the execution of the bribery scheme but remained a fiduciary under County rules."  Id. at 543.  The court then found that liability extended to Walsh as an "active participant[ ] in a breach of such duty."  Id.  Nevertheless, the court's award consisted of "most of Mays's consulting fees from NorCal" but was silent with respect to any benefit obtained by Walsh, the non-fiduciary.  Id. at 540.  Instead, Walsh, the non-

_____
*(cont'd from previous page)*

enrichment claim because defendant gave value for money obtained from breaching fiduciary); Terrydale Liquidating Trust v. Barness, 611 F. Supp. 1006 (S.D.N.Y. 1984) (no disgorgement of profits where plaintiffs sought restitution of real property purportedly wrongly acquired by defendants); Higgins v. Shenango Pottery Co., 279 F.2d 46 (3d Cir. Pa. 1960) (disgorgement of profits earned by partnership where certain partners breached fiduciary duties owed to other principals because partnership law imputes liability to *entire* partnership); Higgins v. Shenango Pottery Co., 256 F.2d 504, 509 (3d Cir. Pa. 1958) (same); B. J. McAdams, Inc. v. Boggs, 439 F. Supp. 738 (E.D. Pa. 1977) (no disgorgement of profits where plaintiff sought a constructive trust over stock certificates); Lawyers Title Ins. Corp. v. United American Bank, 21 F. Supp. 2d 785, 801 (W.D. Tenn. 1998) (no disgorgement of profits where plaintiff sought constructive trust over *specific* funds held by defendant); Brown v. New York Life Ins. Co., 58 F. Supp. 252, 259 (D. Or. 1944) (no disgorgement of profits but granting constructive trust over life insurance payout); United States v. Bennett, 57 F. Supp. 670, 680 (D. Wash. 1944) (no disgorgement of profits but granting a constructive trust over real property); Midstate Amusement Corp. v. Rivers, 54 F. Supp. 738, 739 (D. Wash. 1944) (no disgorgement of profits where plaintiff sought constructive trust over real property); Ohio Oil Co. v. Sharp, 135 F.2d 303 (10th Cir. Okla. 1943) (no disgorgement of profits where plaintiff sought constructive trust over gas leases); King v. King, 22 Cal. App. 3d 319 (Cal. App. 4th Dist. 1971) (no disgorgement of profits where court granted constructive trust against a partnership where traceable to proceeds from sale of misappropriated assets); Vredenburgh v. Jones, 349 A.2d 22, 39 (Del. Ch. 1975) (no disgorgement of profits where court granted constructive trust over 300 of company's shares); Fenton v. King Hill Irrigation Dist., 67 Idaho 456, 461 (Idaho 1947) (no disgorgement of profits where court granted constructive trust over wrongly acquired securities).

fiduciary, shared liability for the benefit conferred upon Mays, a fiduciary, as well as the losses incurred by the County.  <u>Id.</u>

# INSTRUCTION NO. ____

## FURTHER LIMITATION ON DAMAGES FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

In connection with Mattel's claim that MGA and Isaac Larian aided and abetted Mr. Bryant's breach of his fiduciary duty, Mattel's recovery is limited to pecuniary losses caused by Mr. Bryant's breach, and any profits or other gains realized by Mr. Bryant as a result of his breach.

You may not, however, award profits or other benefits that MGA and/or Mr. Larian realized from Bratz in connection with this claim.

**Authority:** People v. Bestline Products, Inc., 61 Cal. App. 3d 879, 919 (1976) ("One who knowingly aids and abets a fiduciary to make secret profits may be held liable jointly with the fiduciary for such secret profits."); Rosenthal v. Gould, 273 Cal.App.2d 239, 243 (1969) ("it is equally clear that their liability is co-extensive with Gould's if, as determined by the trier of the fact, they conspired with Gould and aided and abetted him in the breach of his fiduciary obligations."); Anderson v. Thacher, 76 Cal.App.2d 50, 72 (1946) ("And where, after the violation of a fiduciary obligation, an amount is found to be due from the agent, judgment for the same amount may also be rendered against those proven to have fraudulently aided in the attempt of the fiduciary to obtain secret profits, although they themselves are not fiduciaries, and even though they receive no share of the profits."); Reid v. Robinson, 64 Cal. App. 46, 58 (1923) ("the law of torts is to the effect that every person concerned in a wrong to another which results in damage is liable therefor, irrespective of the degree in which he therein participates and entirely without reference to the benefits which he may receive on account thereof."); GAB Business Services, Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000), overruled on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004) (damages for breach of

1    fiduciary duty were expenses incurred to recruit new employees); <u>Lindy Pen Co. v. Bic</u>
2    <u>Pen Corp.</u>, 982 F.2d 1400, 1407-1408 (9th Cir. 1993) (affirming lower court's rejection of
3    damage theory because it did not provide a reasonable basis for computation).

1  **MATTEL'S OBJECTION**

2      Mattel objects to defendants' proposed instruction regarding Further Limitation on

3  Damages for Aiding and Abetting Breach of Fiduciary Duty on the following grounds:

4

5      1.    This proposed instruction is erroneous as a matter of law.  Mattel is not

6  limited to "profits or other gains realized by Mr. Bryant as a result of his breach."  Indeed,

7  the law makes clear that Mattel is entitled to recover all profits and other benefits that

8  MGA and Isaac Larian themselves obtained by engaging in the wrongful act of aiding and

9  abetting breach of fiduciary duty.  *See* Restatement of Restitution, § 201 (2008) ("Where a

10  fiduciary in violation of his duty to the beneficiary communicates confidential information

11  to a third person, the third person, if he had notice of the violation of duty, holds upon a

12  constructive trust for the beneficiary any profit which he makes through the use of such

13  information."); *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 543 (2007)

14  ("Disgorgement of profits is particularly applicable in cases dealing with breach of a

15  fiduciary duty"; "Active participants in the breach of fiduciary duty by another are

16  accountable for all advantages they gained thereby and are liable to the beneficiary of the

17  duty").  None of the authorities cited by defendants supports their erroneous limitation to

18  Bryant's profits only.  The fact that MGA and Larian are jointly and severally liable to

19  Mattel for Bryant's profits as well does not impact the fact that they are themselves liable

20  to Mattel for the profits and benefits they obtained as a result of their wrongful conduct.

21      2.    This proposed instruction is also erroneous and misleading because it purports

22  to inform the jury that it may not award profits that defendants realized from Bratz.  As set

23  forth above, Mattel is entitled to recover all benefits that defendants obtained as a result of

24  their wrongful conduct, including Bratz-related profits.

25      3.    The title of this proposed instruction is argumentative and biased towards

26  defendants.

27

28

**MGA PARTIES' RESPONSE**

The jury may not award profits or other benefits that MGA and/or Mr. Larian realized from Bratz in connection with Mattel's breach of fiduciary duty claim. As shown above, Mattel may not seek disgorgement of the profits that MGA generated pursuant to the sale of allegedly infringing Bratz fashion dolls and related products. Profits for the breach of fiduciary duty are limited to those profits earned by the agent while the agent owed a fiduciary duty. Moreover, the findings of the Court and the jury with respect to Mr. Bryant's breaches of fiduciary duty do not implicate profits generated by the sale of Bratz and related products. Rather, Mattel's damages are limited to those caused by (1) Mr. Bryant's disclosure of "Proprietary Information," as distinct from Mr. Bryant's "Inventions," both of which were defined under the Inventions Agreement, and (2) Mr. Bryant's consummation of an agreement with MGA while employed by Mattel.

As shown above, Mattel's citations to the Restatement of Restitution and County of San Bernardino are unavailing. The few cases actually applying the section of the Restatement that Mattel cites do not involve disgorgement of the non-fiduciary's profits.[3]

---

[3] Invest Almaz v. Temple-Inland Forest Prods. Corp., 243 F.3d 57 (1st Cir. N.H. 2001) (no

disgorgement of profits where court dismissed plaintiff's unjust enrichment, fraud, and aiding-and-abetting claims); Invest Almaz v. Temple-Inland Forest Prods. Corp., 2000 DNH 37 (D.N.H. 2000) (no disgorgement where court denied unjust enrichment claim because defendant gave value for money obtained from breaching fiduciary); Terrydale Liquidating Trust v. Barness, 611 F. Supp. 1006 (S.D.N.Y. 1984) (no disgorgement of profits where plaintiffs sought restitution of real property purportedly wrongly acquired by defendants); Higgins v. Shenango Pottery Co., 279 F.2d 46 (3d Cir. Pa. 1960) (disgorgement of profits earned by partnership where certain partners breached fiduciary duties owed to other principals because partnership law imputes liability to *entire* partnership); Higgins v. Shenango Pottery Co., 256 F.2d 504, 509 (3d Cir. Pa. 1958) (same); B. J. McAdams, Inc. v. Boggs, 439 F. Supp. 738 (E.D. Pa. 1977) (no disgorgement of profits where plaintiff sought a constructive trust over stock certificates); Lawyers Title Ins. Corp. v. United American Bank, 21 F. Supp. 2d 785, 801 (W.D. Tenn. 1998) (no disgorgement of profits where plaintiff sought constructive trust over *specific* funds held by defendant); Brown v. New York Life Ins. Co., 58 F. Supp. 252, 259 (D. Or. 1944) (no disgorgement of profits but granting constructive trust over life insurance payout); United States v. Bennett, 57 F. Supp. 670, 680 (D. Wash. 1944) (no disgorgement of profits but granting a constructive trust over real property); Midstate Amusement Corp. v. Rivers, 54 F. Supp. 738, 739 (D. Wash. 1944) (no disgorgement of profits where plaintiff sought constructive trust over real property);

*(cont'd)*

1  Likewise, <u>Walsh</u> involved disgorgement of a fiduciary's profits, not the independent
2  profits of an alleged aider and abettor.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
_____
*(cont'd from previous page)*

<u>Ohio Oil Co. v. Sharp</u>, 135 F.2d 303 (10th Cir. Okla. 1943) (no disgorgement of
profits where plaintiff sought constructive trust over gas leases);  <u>King v. King</u>, 22
Cal. App. 3d 319 (Cal. App. 4th Dist. 1971) (no disgorgement of profits where court
granted constructive trust against a partnership where traceable to proceeds from
sale of misappropriated assets);  <u>Vredenburgh v. Jones</u>, 349 A.2d 22, 39 (Del. Ch.
1975) (no disgorgement of profits where court granted constructive trust over 300 of
company's shares);  <u>Fenton v. King Hill Irrigation Dist.</u>, 67 Idaho 456, 461 (Idaho
1947) (no disgorgement of profits where court granted constructive trust over
wrongly acquired securities).

25

26

27

28

# INSTRUCTION NO. 3901

## INTRODUCTION TO TORT DAMAGES –

## LIABILITY ESTABLISHED FOR

## AIDING AND ABETTING BREACH OF DUTY OF LOYALTY

If you decide that Mattel was harmed by MGA's and/or Isaac Larian's aiding and abetting of Carter Bryant's breach of his duty of loyalty to Mattel, you must decide whether that specific conduct was a substantial factor in causing the harm to Mattel.

If you decide that MGA and/or Mr. Larian's specific conduct was a substantial factor, you must then decide how much money will reasonably compensate Mattel for the harm. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by MGA and Mr. Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

    [Lost Profits]

    [Loss or Destruction of Personal Property]

**Authority**:  CACI No. 3901 (2008).

71

## MATTEL'S OBJECTION

Mattel objects to defendants' proposed instruction on the following grounds:

1. This proposed instruction is prejudicial and misleading to the extent it purports to inform the jury that it must decide whether "Mattel was harmed by MGA's and/or Isaac Larian's aiding and abetting of Carter Bryant's breach of his duty of loyalty to Mattel" and whether that misconduct "was a substantial factor in causing the harm to Mattel." The jury has already decided those issues when it found that Mattel was harmed by Bryant's breach of the duty of loyalty, that Bryant's breach of duty was a substantial cause of Mattel's harm and that defendants substantially assisted Bryant's breach of duty. *See* Jury Instruction Nos. 25 and 27. Indeed, the Court already informed the jury of the legal meaning of "substantial factor" in Phase 1A. *See* Jury Instruction No. 3 (informing the jury that "[a] 'substantial factor' is something which is more than a slight, trivial, negligible, or theoretical factor in producing a particular result."). Accordingly, it is prejudicial and misleading for defendants to tell the jury it must make those same findings again before awarding damages to Mattel.

2. The proposed instruction misstates the damages being claimed by Mattel, which includes compensatory and general damages, including disgorgement of profits earned by MGA and Mr. Larian as a result of their wrongful conduct, prejudgment interest and punitive damages.

**MGA PARTIES' RESPONSE**

Mattel complains that MGA's instruction, which closely tracks the language of CACI No. 3031, is "prejudicial and misleading." But the Judicial Council recommends use of CACI No. 3091 in situations like this one, where liability has been conceded or established. <u>See</u> CACI No. 3091 (entitled "Introduction to Tort Damages—*Liability Established*") (emphasis added) Accordingly, the proposed instruction is appropriate here.

Mattel takes issue with the requirement that the defendants' conduct be a substantial factor in causing the damages it seeks. But any damages awarded by the jury must be causally connected to defendants' acts. <u>Di Loreto v. Shumake</u>, 38 Cal. App. 4th 35, 39 (1995) (stating that damages for tortious interference are the "'economic harm to the plaintiff proximately caused by the acts of the defendant.'") It is therefore appropriate to instruct the jury that the defendants' acts must be a "substantial factor" in causing any purported damages. This is precisely what the Judicial Council advises. CACI No. 3091 ("If you decide that [name of plaintiff] was harmed and that [name of defendant]'s [insert description of cause of action, e.g., "negligence"] was a substantial factor in causing the harm, you also must decide how much money will reasonably compensate [name of plaintiff] for the harm. This compensation is called "damages.")

As shown above, Mattel's claim for disgorgement of "profits earned by MGA and Mr. Larian" is properly omitted from this instruction, for at least three reasons. First, any disgorgement of profits under this claim is limited to the profits realized by the fiduciary (Carter Bryant) as a result of his breach. Second, the findings of the Court and the jury with respect to Mr. Bryant's breaches of fiduciary duty do not implicate profits generated by the sale of Bratz and related products. Rather, Mattel's damages are limited to those caused by (1) Mr. Bryant's disclosure of "Proprietary Information," as distinct from Mr. Bryant's "Inventions," both of which were defined under the Inventions Agreement, and (2) Mr. Bryant's consummation of an agreement with MGA while employed by Mattel. Finally, the Mattel's claims for profits generated by the MGA Parties' use of Carter Bryant's sketches purportedly subject to Mattel's copyrights is preempted by federal

73

1  copyright law. <u>Del Madera Props. v. Rhodes & Gardner, Inc.</u>, 820 F.2d 973, 977 (9th Cir.
2  1987), *overruled on other grounds*, <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517 (1994)).

3      The proposed instruction as currently phrased regarding prejudgment interest is
4  misleading.   As previously shown, the jury may only award prejudgment interest on
5  compensatory damages; it may not award prejudgment interest on Mattel's disgorgement
6  or punitive damages claims.  <u>See</u> MGA Parties' Objections to Mattel's Proposed Jury
7  Instruction, "Introduction To Tort Damages—Liability Established For Intentional
8  Interference With   Contractual Relations."   Mattel's proposed instruction suggests
9  otherwise.

10     As for Mattel's complaint that the instruction does not contain Mattel's claim for
11 punitive damages, Mattel lacks any evidentiary basis to seek punitive damages, so such an
12 instruction is unnecessary. <u>See</u> <u>Barry v. Raskov</u>, 232 Cal. App. 3d 447, 457 (1991) (trial
13 court properly refused to instruct jury on punitive damages, as there was not clear and
14 convincing evidence of fraud); <u>see</u> <u>also</u> <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir.
15 2002) ("[a] party is entitled to an instruction about his or her theory of the case if it is
16 supported by law and has foundation in the evidence")

17                                              .

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. \_\_\_\_**

**LIMITATION ON DAMAGES FOR AIDING AND ABETTING BREACH OF DUTY OF LOYALTY (PREEMPTION)**

In determining the amount of damages to award Mattel in connection with its claim that MGA and Isaac Larian aided and abetted Carter Bryant's breach of his duty of loyalty, you *may not* consider any revenues, profits or other financial benefits that MGA realized from the use of Carter Bryant's sketches.

**Authority**:   Del Madera Props. v. Rhodes & Gardner, Inc., 820 F.2d 973, 977 (9th Cir. 1987), overruled on other grounds, Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994).

1 **MATTEL'S OBJECTION**

2      Mattel objects to defendants' proposed instruction regarding Limitation on Damages

3 for Aiding and Abetting Breach of Duty of Loyalty on the following grounds:

4      1.      This proposed instruction is erroneous and prejudicial to Mattel.

5 Defendants are simply trying to resurrect an argument previously rejected by the Court.

6 Mattel's claims for aiding and abetting breach of duty are not preempted by the Copyright

7 Act.  Accordingly, there is no conceivable basis for this proposed instruction.

8      2.      Mattel is entitled to recover all profits and other benefits that MGA and

9 Isaac Larian obtained by engaging in the wrongful act of aiding and abetting breach of the

10 duty of loyalty, including "revenues, profits or other financial benefits that MGA realized

11 from the use of Mr. Bryant's sketches."  *See* Restatement of Restitution, § 201 (2008)

12 ("Where a fiduciary in violation of his duty to the beneficiary communicates confidential

13 information to a third person, the third person, if he had notice of the violation of duty,

14 holds upon a constructive trust for the beneficiary any profit which he makes through the

15 use of such information."); *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533,

16 543 (2007) ("Disgorgement of profits is particularly applicable in cases dealing with

17 breach of a fiduciary duty"; "Active participants in the breach of fiduciary duty by another

18 are accountable for all advantages they gained thereby and are liable to the beneficiary of

19 the duty").

20      3.      The Court found as a matter of law that Mr. Bryant breached his duty

21 of loyalty to Mattel when he secretly entered into a contract with MGA, Mattel's

22 competitor, while still employed by Mattel, to produce a line of fashion dolls to be

23 marketed in direct competition with Mattel's products, and the jury determined in Phase

24 1A that defendants aided and abetted that breach of duty.  Mattel specifically seeks

25 disgorgement of profits earned by defendants as a result of their wrongful conduct.  *See*

26 Mattel's Proposed Jury Instruction re Introduction to Tort Damages—Liability Established

27 for Aiding and Abetting Breach of Fiduciary Duty.

28

76

4.     The only authority cited by defendants, *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973 (9th Cir. 1987), is distinguishable both because it involved a different legal claim (unfair competition) and because that claim was indistinguishable from copyright infringement (alleging the defendant had misappropriated the plaintiff's "time and effort" in creating maps and documents). Id. at 977. Mattel's aiding/abetting claims do not focus on the "time and effort" involved in creating Bratz. Rather, they are predicated on Bryant's breaches of his statutory duty of loyalty and his fiduciary obligations created by the Inventions Agreement, including his misuse and disclosure of Mattel's confidential information and work for a competitor.  Such claims are not preempted.  *See, e.g.*, *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005) (rejecting contention similar to MGA's here that claims are preempted merely because they involve ownership of expression protected by copyright; claims based on "use" of information protected by copyright in violation of contractual obligations are *not* preempted); *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. 2004) (distinguishing *Del Madera*; holding that even implied contractual obligations avoid preemption); *Balboa Ins. Co. v. Trans Global Equities*, 218 Cal. App. 3d 1327, 1352 (1990) (*Del Madera* does not apply where there are "broader allegations of breach" beyond creation of a copyright).

Ample case law, including from the Ninth Circuit, confirms that Mattel's aiding/abetting claims contain an element that Mattel's copyright claims do not, and are not preempted.  In *Oddo v. Ries*, 743 F.2d 630, 635 (9th Cir. 1984), for example, the Circuit held that an allegation that a partner breached his fiduciary duty "is quite different from the interests preempted by copyright," and thus was not preempted.[4]  Indeed, Congress

---

[4]     *See also, e.g.*, *Briarpatch v. Phoenix Pictures*, 373 F.3d 296, 307 (2d Cir. 2004) (aiding/abetting breach of fiduciary duty claim not preempted because "the underlying right they seek to vindicate is the right to redress violations of the duty owed to a partnership by those who control it"); *Daboub v. Gibbons*, 42 F.3d 285, 289-90 (5th Cir. 1995) (claims preempted only because failed to allege "any element, such as … breach of fiduciary duty, which render [claims] different in kind from copyright infringement"); *Groubert v. Spyglass Entm't*, 2002 WL 2031271 at *5 (C.D. Cal. 2002) ("Plaintiff's breach of confidence claim ... contains an extra element, namely, the confidential relationship.");

*(cont'd)*

1  expressly carved out such claims from the Copyright Act's preemption provision.  *See*

2  William F. Patry, *Patry on Copyright*, § 18:22 (2007).

3          5.      MGA's attempt to convert Mattel's aiding and abetting claims into

4  copyright claims based on the relief sought fails because, in evaluating preemption, courts

5  look at the allegations supporting liability, not the desired remedies.  *See, e.g.*, *Goldberg v.*

6  *Cameron*, 482 F. Supp. 2d 1136, 1151 (N.D. Cal. 2007) ("The remedy ... does not inform

7  the court's decision, only whether the state law right includes an extra element.")

8          6.      Mattel objects to the use of the pejorative term "sketches" when

9  referring to Mr. Bryant's drawings.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
_____
*(cont'd from previous page)*

27  *Metrano v. Fox Broadcasting Co.*, 2000 WL 979664 at *7 (C.D. Cal. 2000) ("This agreement of confidentiality constitutes an extra element that brings plaintiff's breach of

28  confidentiality claim outside the realm of copyright protection.").

**MGA PARTIES' RESPONSE**

Mattel's claim for profits realized by MGA and Mr. Larian through sales of Bratz and related products is preempted by federal copyright law.  In connection with its ruling on the parties' motions for partial summary judgment, the Court held that preemption turns on "whether the substance of the tort claim differs qualitatively from the copyright claim at issue."  (4/25/2008 Order at 2, citing Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1089 (9th Cir. 2005); Laws v. Sony Music Entertainment, Inc., 448 F.3d 1134, 1144 (9th Cir. 2006).)  The Court further held that to the extent Mattel's tortious interference claim was premised upon MGA's alleged interference with any copyrights that Mattel may have under the Inventions Agreement, it is preempted.  Thus, "the tortious interference with contractual relations is preempted to the extent it is based on Mattel's rights to Bratz." Id.

The same should hold true as respects Mattel's claims that the MGA Parties aided and abetted Carter Bryant's fiduciary duty and duty of loyalty.  To the extent those claims are premised upon MGA's alleged contractual right to the Bratz copyrights that Mattel may have under the Inventions Agreement, they should be preempted.  Thus, to the extent that Mattel seeks disgorgement of profits from the MGA Parties' allegedly infringing sale of Bratz fashion dolls and Bratz related products, -- i.e., "based on Mattel's rights to Bratz" -- those claims are not qualitatively different than Mattel's copyright claim and are preempted.

As shown above, Mattel may not seek disgorgement of the profits that MGA generated pursuant to the sale of allegedly infringing Bratz fashion dolls and related products.  Profits for the breach of fiduciary duty of loyalty are limited to those profits earned by the agent while the agent owed a fiduciary duty.  Moreover, the findings of the Court and the jury with respect to Mr. Bryant's breaches of fiduciary duty do not implicate profits generated by the sale of Bratz and related products.  Rather, Mattel's damages are limited to those caused by (1) Mr. Bryant's disclosure of "Proprietary Information," as distinct from Mr. Bryant's "Inventions," both of which were defined under the Inventions Agreement, and (2)   Mr. Bryant's consummation of an agreement with MGA while employed by Mattel.

As shown above, Mattel's citations to the Restatement of Restitution and <u>County of San Bernardino</u> are unavailing. The few cases actually applying the section of the Restatement Mattel cites do not involve disgorgement of the non-fiduciary's profits.[5] Likewise, <u>Walsh</u> involved disgorgement of a fiduciary's profits, not the independent profits of an alleged aider and abettor.

---

[5]     <u>Invest Almaz v. Temple-Inland Forest Prods. Corp.</u>, 243 F.3d 57 (1st Cir. N.H. 2001) (no

disgorgement of profits where court dismissed plaintiff's unjust enrichment, fraud, and aiding-and-abetting claims); <u>Invest Almaz v. Temple-Inland Forest Prods. Corp.</u>, 2000 DNH 37 (D.N.H. 2000) (no disgorgement of profits where court denied unjust enrichment claim because defendant gave value for money obtained from breaching fiduciary); <u>Terrydale Liquidating Trust v. Barness</u>, 611 F. Supp. 1006 (S.D.N.Y. 1984) (no disgorgement of profits where plaintiffs sought restitution of real property purportedly wrongly acquired by defendants); <u>Higgins v. Shenango Pottery Co.</u>, 279 F.2d 46 (3d Cir. Pa. 1960) (disgorgement of profits earned by partnership where certain partners breached fiduciary duties owed to other principals because partnership law imputes liability to <i>entire</i> partnership); <u>Higgins v. Shenango Pottery Co.</u>, 256 F.2d 504, 509 (3d Cir. Pa. 1958) (same); <u>B. J. McAdams, Inc. v. Boggs</u>, 439 F. Supp. 738 (E.D. Pa. 1977) (no disgorgement of profits where plaintiff sought a constructive trust over stock certificates); <u>Lawyers Title Ins. Corp. v. United American Bank</u>, 21 F. Supp. 2d 785, 801 (W.D. Tenn. 1998) (no disgorgement of profits where plaintiff sought constructive trust over <i>specific</i> funds held by defendant); <u>Brown v. New York Life Ins. Co.</u>, 58 F. Supp. 252, 259 (D. Or. 1944) (no disgorgement of profits but granting constructive trust over life insurance payout); <u>United States v. Bennett</u>, 57 F. Supp. 670, 680 (D. Wash. 1944) (no disgorgement of profits but granting a constructive trust over real property); <u>Midstate Amusement Corp. v. Rivers</u>, 54 F. Supp. 738, 739 (D. Wash. 1944) (no disgorgement of profits where plaintiff sought constructive trust over real property); <u>Ohio Oil Co. v. Sharp</u>, 135 F.2d 303 (10th Cir. Okla. 1943) (no disgorgement of profits where plaintiff sought constructive trust over gas leases); <u>King v. King</u>, 22 Cal. App. 3d 319 (Cal. App. 4th Dist. 1971) (no disgorgement of profits where court granted constructive trust against a partnership where traceable to proceeds from sale of misappropriated assets); <u>Vredenburgh v. Jones</u>, 349 A.2d 22, 39 (Del. Ch. 1975) (no disgorgement of profits where court granted constructive trust over 300 of company's shares); <u>Fenton v. King Hill Irrigation Dist.</u>, 67 Idaho 456, 461 (Idaho 1947) (no disgorgement of profits where court granted constructive trust over wrongly acquired securities).

**INSTRUCTION NO. \_\_\_\_**

**FURTHER LIMITATION ON DAMAGES FOR AIDING AND ABETTING BREACH OF DUTY OF LOYALTY**

In connection with Mattel's claim than MGA and Isaac Larian aided and abetted Mr. Bryant's breach of his fiduciary duty of loyalty, Mattel's recovery is limited to pecuniary losses caused by Mr. Bryant's breach, and any profits or other gains realized by Mr. Bryant as a result of his breach.

You may not, however, award profits or other benefits that MGA and/or Mr. Larian realized from Bratz in connection with this claim beyond those realized by Mr. Bryant as a result of his breach.

**Authority:** Rosenthal v. Gould, 273 Cal.App.2d 239, 243 (1969) ("it is equally clear that their liability is co-extensive with Gould's if, as determined by the trier of the fact, they conspired with Gould and aided and abetted him in the breach of his fiduciary obligations."); Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966) (remanding to assess damage to plaintiff book publisher for the costs incurred to replace personnel recruited by president and competitor using confidential information in breach of president's fiduciary duty); Charles T. Powner, Inc. v. Smith, 91 Cal. App. 101 (1928) (damages were profits on directly competitive sales resulting from use of employer's time and facilities); Sumner v. Nevin, 4 Cal. App. 347, 350 (1906) (damages were commissions received by disloyal employee while still employed); Design Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005) (damages were amount of salary earned during time employee was disloyal, and not the profits from a contract that evidence showed employer would not have been awarded); Frye-Tech, Inc. v. Harris, 46 F. Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of resources including employee time used to develop competing products).

**MATTEL'S OBJECTION**

Mattel objects to defendants' proposed instruction regarding Further Limitation on Damages for Aiding and Abetting Breach of Duty of Loyalty on the following grounds:

1.      This proposed instruction is erroneous as a matter of law.  Mattel is not limited to "profits or other gains realized by Mr. Bryant as a result of his breach."  Indeed, the law makes clear that Mattel is entitled to recover all profits and other benefits that MGA and Isaac Larian themselves obtained by engaging in the wrongful act of aiding and abetting breach of the duty of loyalty.  *See* Restatement of Restitution, § 201 (2008) ("Where a fiduciary in violation of his duty to the beneficiary communicates confidential information to a third person, the third person, if he had notice of the violation of duty, holds upon a constructive trust for the beneficiary any profit which he makes through the use of such information."); *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 543 (2007) ("Disgorgement of profits is particularly applicable in cases dealing with breach of a fiduciary duty"; "Active participants in the breach of fiduciary duty by another are accountable for all advantages they gained thereby and are liable to the beneficiary of the duty").  None of the authorities cited by defendants support their erroneous limitation to Bryant's profits only.  The fact that MGA and Larian are jointly and severally liable to Mattel for Bryant's profits as well does not impact the fact that they are themselves liable to Mattel the profits and benefits they obtained as a result of their wrongful conduct.

2.      This proposed instruction is also erroneous and misleading because it purports to inform the jury that it may not award profits that defendants realized from Bratz.  As set forth above, Mattel is entitled to recover all benefits that defendants obtained as a result of their wrongful conduct, including Bratz-related profits.

3.      The title of this proposed instruction is argumentative and biased towards defendants.

**MGA PARTIES' RESPONSE**

The jury may not award profits or other benefits that MGA and/or Mr. Larian realized from Bratz in connection with Mattel's breach of duty of loyalty claim.  As shown, profits for the breach of fiduciary duty, including the duty of loyalty, are limited to those profits earned by the agent while the agent owed a fiduciary duty.  Moreover, the findings of the Court and the jury with respect to Mr. Bryant's breaches of fiduciary duty do not implicate profits generated by the sale of Bratz and related products.  Rather, Mattel's damages are limited to those caused by (1) Mr. Bryant's disclosure of "Proprietary Information," as distinct from Mr. Bryant's "Inventions," both of which were defined under the Inventions Agreement, and (2)  Mr. Bryant's consummation of an agreement with MGA while employed by Mattel.

As shown above, Mattel's citations to the Restatement of Restitution and County of San Bernardino are unavailing.  The few cases actually applying the section of the Restatement that Mattel cites do not involve disgorgement of the non-fiduciary's profits.[6]

---

[6]    Invest Almaz v. Temple-Inland Forest Prods. Corp., 243 F.3d 57 (1st Cir. N.H. 2001) (no disgorgement of profits where court dismissed plaintiff's unjust enrichment, fraud, and aiding-and-abetting claims);  Invest Almaz v. Temple-Inland Forest Prods. Corp., 2000 DNH 37 (D.N.H. 2000) (no disgorgement where court denied unjust enrichment claim because defendant gave value for money obtained from breaching fiduciary);  Terrydale Liquidating Trust v. Barness, 611 F. Supp. 1006 (S.D.N.Y. 1984) (no disgorgement of profits where plaintiffs sought restitution of real property purportedly wrongly acquired by defendants);  Higgins v. Shenango Pottery Co., 279 F.2d 46 (3d Cir. Pa. 1960) (disgorgement of profits earned by partnership where certain partners breached fiduciary duties owed to other principals because partnership law imputes liability to entire partnership);  Higgins v. Shenango Pottery Co., 256 F.2d 504, 509 (3d Cir. Pa. 1958) (same);  B. J. McAdams, Inc. v. Boggs, 439 F. Supp. 738 (E.D. Pa. 1977) (no disgorgement of profits where plaintiff sought a constructive trust over stock certificates);  Lawyers Title Ins. Corp. v. United American Bank, 21 F. Supp. 2d 785, 801 (W.D. Tenn. 1998) (no disgorgement of profits where plaintiff sought constructive trust over specific funds held by defendant);  Brown v. New York Life Ins. Co., 58 F. Supp. 252, 259 (D. Or. 1944) (no disgorgement of profits but granting constructive trust over life insurance payout);  United States v. Bennett, 57 F. Supp. 670, 680 (D. Wash. 1944) (no disgorgement of profits but granting a constructive trust over real property);  Midstate Amusement Corp. v. Rivers, 54 F. Supp. 738, 739 (D. Wash. 1944) (no disgorgement of profits where plaintiff sought constructive trust over real property);  Ohio Oil Co. v. Sharp, 135 F.2d 303 (10th Cir. Okla. 1943) (no disgorgement of profits where plaintiff sought constructive trust over gas leases);  King v. King, 22

*(cont'd)*

1  Likewise, <u>Walsh</u> involved disgorgement of a fiduciary's profits, not the independent

2  profits of an alleged aider and abettor.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

_____

*(cont'd from previous page)*

25  Cal. App. 3d 319 (Cal. App. 4th Dist. 1971) (no disgorgement of profits where court granted constructive trust against a partnership where traceable to proceeds from

26  sale of misappropriated assets); <u>Vredenburgh v. Jones</u>, 349 A.2d 22, 39 (Del. Ch. 1975) (no disgorgement of profits where court granted constructive trust over 300 of

27  company's shares); <u>Fenton v. King Hill Irrigation Dist.</u>, 67 Idaho 456, 461 (Idaho 1947) (no disgorgement of profits where court granted constructive trust over

28  wrongly acquired securities).

**INSTRUCTION NO. 2021**

**PRESUMED MEASURE OF DAMAGES FOR CONVERSION (CIV. CODE § 3336)**

In Phase 1(a) of this trial, you found that MGA, Isaac Larian and MGA Hong Kong converted Mattel's property.  You must now decide how much money will reasonably compensate Mattel for the harm. This compensation is called "damages."

Mattel must prove the amount of its damages. However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

1  The fair market value of the sketches and other tangible items that Mr. Bryant created at Mattel and provided to MGA, Mr. Larian, and MGA Hong Kong; and

2  Reasonable compensation for the time and money spent by Mattel in attempting to recover the tangible items.

"Fair market value" is measured as of the time the item was converted.

"Fair market value" is the highest price that a willing buyer would have paid to a willing seller, assuming: 1) that there is no pressure on either one to buy or sell; and 2) that the buyer and seller know all the uses and purposes for which the sketches and tangible items are reasonably capable of being used.

Conversion does not apply to ideas.  Therefore, in determining the fair market value of Mr. Bryant's sketches and other tangible items converted, you are not to consider the value of

1   Mr. Bryant's ideas.

2

3   **Authorities**:  CACI No. 2021 (2008) (modified); Cal. Civ. Code §3336; <u>Melchior v. New</u>

4   <u>Line Productions, Inc.</u>, 106 Cal. App. 4th 779 (2003); April 25, 20008 Order, at 3.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Responses to Objections to MGA Parties' Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

1  **MATTEL'S OBJECTION**

2       Mattel objects to defendants' proposed instruction regarding Presumed Measure of

3  Damages for Conversion on the following grounds:

4       1.     This proposed instruction fails to inform the jury that Mattel is seeking

5  punitive damages against defendants in connection with its conversion claims.

6       2.     This proposed instruction also fails to recognize that Mattel may be entitled to

7  seek damages based on the fair market value of the property at the time the conversion was

8  discovered, rather than at the time the property was converted, when an award based on the

9  value at the time of the conversion would be manifestly unjust. *See Betzer v. Olney*, 14

10  Cal. App. 2d 53, 61 (1937).

11       3.     Defendants' reference to "ideas" in this proposed instruction is confusing and

12  misleading.  The instructions in Phase 1A and proposed instructions regarding damages

13  make clear that Mattel's claim is limited to the conversion of tangible items.  Accordingly,

14  there is no need to potentially confuse the jury and tell them they "are not to consider the

15  value of Mr. Bryant's ideas."  The last paragraph of this proposed instruction should not be

16  included.

17

18

19

20

21

22

23

24

25

26

27

28

**MGA PARTIES' RESPONSE**

Mattel's assertion that the instruction should advise the jury that Mattel may be entitled to seek damages based on the fair market value of the property at the time the conversion was discovered, rather than at the time the property was converted, has no evidentiary basis because Mattel failed to demonstrate that an award based on the value at the time of the conversion would be manifestly unjust here. See In re Guillory, 285 B.R. 307, 315 (Bankr. C.D. Cal. 2002) ("The measure of damages for conversion is the fair market value of the property at the time of the conversion, plus interest from that date."), citing Cal. Civ. C. § 3336 (West 2000); cf. Betzer v. Olney, 14 Cal. App. 2d 53, 61 (1936) (cited by Mattel) (requiring "special circumstances" for a different measure of damages to apply). This is particularly true given that the Court has confirmed that Mattel's conversion claim cannot be based on any claim to the Bratz copyrights or other intangible property, but only to the tangible property itself.

As for Mattel's complaint that the instruction does not contain Mattel's claim for punitive damages, Mattel lacks any evidentiary basis to seek punitive damages, so such an instruction is unnecessary. See Barry v. Raskov, 232 Cal. App. 3d 447, 457 (1991) (trial court properly refused to instruct jury on punitive damages, as there was not clear and convincing evidence of fraud); see also Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence").

Finally, Mattel's takes issue with the portion of the instruction excluding the "value of Mr. Bryant's ideas" from the scope of the jury's consideration. But as the Court correctly held, "[t]he tort of conversion does not apply to ideas." 4/25/2008 Order at 3(quoting Melchior v. New Line Productions, Inc., 106 Cal.App.4th 779 (2003). Indeed, the need for this clarifying instruction is particularly acute given Mattel's repeated arguments to the jury that MGA was "stealing ideas." See, e.g., 7/10/2008 (Mattel Closing Argument) Tr. 4976:12-15 ("You've got to judge whether or not in the summer of 2000,

1  what was happening was competition, legitimate competition, or was it something else.

2  Was it the stealing of ideas?")

**INSTRUCTION NO. 17.24**

**COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS (17 U.S.C. § 504(b))**

If you find that MGA infringed Mattel's copyrights, Mattel is entitled to MGA's profits that are attributable to the infringement.

You may make an award of MGA's profits only if you find that Mattel has showed a causal relationship between the infringement and the defendant's gross revenue.

MGA's profit is determined by subtracting all expenses from the defendant's gross revenue.

MGA's gross revenue is all of the MGA's receipts from the sale of a product containing or using the copyrighted work. Mattel has the burden of proving MGA's gross revenue by a preponderance of the evidence.

Expenses are all operating costs and production costs incurred in producing the defendant's gross revenue. The defendant has the burden of proving the defendant's expenses by a preponderance of the evidence.

If you find that MGA's profits were derived from both infringing and non-infringing activities, not all of MGA's profits can be attributed to the infringement. MGA has the burden of proving the percentage of the profit, if any, attributable to factors other than infringing the copyrighted work.

MGA is not required to prove with precision the percentage of its profits attributable to factors other than the infringement, so long as the apportionment is reasonable and just.

1   **Authorities**:  9th Cir. Model Civ. Jury Instr. 17.24 (2007*)*; Frank Music Corp. v. Metro-

2 Goldwyn-Mayer, Inc., 772 F.2d 505, 518 (9th Cir. 1985).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MATTEL'S OBJECTION

Mattel objects to defendants' proposed instruction regarding Copyright—Damages—Defendants' Profits (17 U.S.C. § 504(b)) on the following grounds:

1.      Defendants' proposed instruction deviates from the Ninth Circuit Model Instruction.  Defendants have added superfluous and argumentative phrases.

2.      For example, defendants have changed "Unless you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement," to "If you find that MGA's profits were derived from both infringing and non-infringing activities, not all of MGA's profits can be attributed to the infringement." Defendants are simply rewriting the Model Instruction to be biased toward the defendants, when the law makes clear that all of defendants' profits are to be attributed to the infringement <u>unless</u> defendants prove otherwise.

3.      Moreover, this instruction misleadingly suggests that apportionment of defendants' profits is always required, when that is not the case.  Indeed, there is to be no apportionment <u>unless</u> the jury finds that defendants prove that a portion of their profits were attributable to factors other than the copyrighted work.  *See* 9th Cir. Civ. Jury Instr. 17.24 (2007).  Even if defendants offer some proof of profit from other elements (such as packaging), apportionment may not be appropriate.  *See, e.g.*, *Neal v. Thomas Organ Co.*, 241 F.Supp. 1020, 1022 (C D.Cal. 1965) (declining to apportion profits based on finding that the portion of the product that did not infringe on the copyright could not be sold on its own and, thus, the value of the product as a whole was entirely attributable to the copyrighted material; "While it is true that the copyright protection does not extend to the phonograph records, which comprise a part of the course, this court found in Finding of Fact XVIII that the records had no purpose when separated from the instruction manual and that only the course as a whole had any substantial value....Defendant's profit must be attributed to the sale of the course as a whole and the profit can not be apportioned since none were, and could not have been, derived from the sale of the records alone.");

1   *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1010 (2d Cir. 1995) (finding apportionment

2   unwarranted, and awarding plaintiff all of defendant's profits from sales of entire sweater

3   sets (including skirts and pants), where infringing sweater gave sets their value).  An

4   instruction that tells the jury it must apportion profits, such as the proposed one, is

5   erroneous.

6          4.     Defendants have also added the phrase "MGA is not required to prove with

7   precision the percentage of its profits attributable to factors other than infringement, so

8   long as the apportionment is reasonable and just."  This additional language is prejudicial

9   and biased without also informing the jury that, "[i]n performing the apportionment [of

10   profits], the benefit of the doubt must always be given to the plaintiff, not the defendant."

11   *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1549 (9th Cir. 1989).

12          5.     This proposed instruction is erroneous and misleading because it refers only

13   to "MGA's profits," when Mattel is entitled to seek profits of all defendants found to be

14   liable for copyright infringement, including Isaac Larian and MGA Hong Kong.

15          6.     Defendants' proposed instruction incorporates the narrowest terms offered in

16   the model instruction when the broader terms are more applicable to the facts of this case.

17   Mattel's copyright infringement claims incorporate more than mere copying of Mattel's

18   works and sale of products – they cover all of defendants' infringement of Mattel's works,

19   including their use of those works in derivative works.

20          7.     This proposed instruction is potentially misleading absent an instruction

21   informing the jury that certain expenses may not be deductible where defendants'

22   infringement is willful.  *See* 9th Cir. Civ. Jury Instr. 17.27 (2007); *Three Boys Music*

23   *Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000) (noting that willful infringers are not

24   permitted to deduct income taxes); *Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.*, 752 F.2d

25   1326, 1331-32 (9th Cir. 1982) ("[a] portion of an infringer's overhead properly may be

26   deducted from gross revenues to arrive at profits, at least where the infringement was not

27   willful, conscious, or deliberate.") (emphasis added); *Sheldon v. Metro-Goldwyn Pictures*

28   *Corp.*, 106 F.2d 45, 53 (2d Cir. 1939) (a willful infringer may not deduct its income taxes;

1   *Saxon v. Blann*, 968 F.2d 676, 681 (8th Cir. 1992) (a willful infringer may not deduct

2   overhead expenses); *Jarvis v. A & M Records*, 827 F. Supp. 282, 294 (1993) ("[I]f

3   defendant's conduct is willful, overhead may not be deducted"); *Liu v. Price Waterhouse

4   LLP*, 2000 WL 1644585, *6  (N.D. Ill. 2000) (approving jury instruction barring deduction

5   of overhead if the jury were to find willful infringement); 5 Melville B. Nimmer & David

6   Nimmer, *Nimmer on Copyright*, § 14.03[C][2] (2006) (it is "settled law" that infringers are

7   not entitled to income tax deductions).

8        8.    Mattel requests that the Court give its proposed instruction regarding

9   Damages—Defendants' Profits, which conforms to the Ninth Circuit Model Instruction.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MGA PARTIES' RESPONSE**

Mattel's complaint that this instruction deviates from the model is no basis for rejecting it.   In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case.   See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges.   Jury instructions do not come down from any mountain or rise up from any sea.   Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority.   This description does not denigrate their value, it simply places them in the niche where they belong.").   Indeed, modification is sometimes necessary to make an instruction accurate and complete.   See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

MGA proposed instruction eliminates a redundancy in the model instruction.   The sentence "Unless you find a portion of the profit from the sale of a product containing or usig the copyright work, all the profit is attributed to the infringement" merely repeats defendants' burden of proof on apportionment, which the following sentence already makes clear:   "MGA has the burden of proving the percentage of the profit, if any, attributable to factors other than infringing the copyrighted work."   The Court's repetition of the defendants' burden may cause jurors to attach undue weight to this element of the instruction.   The MGA Parties' proposed instruction eliminates the redundancy and replaces it with a sentence from the comments to the model instruction:   "Where the defendant's profits are derived from both infringing and non-infringing activities, not all of the defendant's profits can be attributed to the infringement."   See Ninth Cir. Model Jury Instr. 17.24 (comments) (citing Cream Records, Inc. v. Joseph Schlitz Brewing Co., 754

1  F.2d 826, 828–29 (9th Cir.1985).  Mattel does not dispute that the modification represents

2  an accurate statement of the law.

3       Contrary to Mattel's contention, the proposed instruction does not "suggest" that

4  apportionment is always required.  Rather, the instruction makes clear that apportionment

5  is only appropriate "[if] you find that MGA's profits were derived from both infringing

6  and non-infringing activities."  Additionally, the proposed instruction allows for a jury's

7  finding that no profits derived from non-infringing factors:  "MGA has the burden of

8  proving the percentage of the profit, *if any*, attributable to factors other than infringing the

9  copyrighted work." (emphasis added).

10      Mattel next objects to the phrase "MGA is not required to prove with precision the

11  percentage of its profits attributable to factors other than the infringement, so long as the

12  apportionment is reasonable and just," though this precise language is found in the

13  comments to the Model Jury Instructions.  See Ninth Cir. Model Jury Instr. 17.24

14  (comments) ("Precision is not required, as long as a reasonable and just apportionment of

15  profits is reached.") (citing Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d

16  505, 518 (9th Cir.1985).  Mattel does not (and cannot) dispute that the sentence is an

17  accurate statement of the law.  Indeed, this language is necessary given the misleading

18  arguments of Mattel's counsel that apportionment is inappropriate unless products are sold

19  in neatly divisible bundles.  7/23/2008 (Mattel Opening Statement) Tr. 5645:8-14:  ("Bratz

20  isn't being sold along with Prayer Angels.  It's not like it's a gift pack; you get a Bratz, you

21  get a Prayer Angel, and you get a Talking Tabatha.  We're talking and Bratz being sold as

22  Bratz and being leveraged with Bratz Accessories.  So the testimony you're going to hear

23  from our Expert is that that would mean you wouldn't get any Apportionment given that

24  sort of analysis")  That is not the law.

25      Mattel's contention that the proposed instruction is improperly limited to "copying"

26  Mattel's works is nonsensical.  The instruction nowhere refers to "copying."  Rather, it

27  defines the relevant revenues as "all of the MGA's receipts from the sale of a product

28  *containing or using the copyrighted work*."

96

1    Finally, the instruction does not mislead the jury simply because it does not address
2    the law on willful infringement.  That instruction is properly addressed elsewhere, as the
3    Court's Standing Schedule Order requires  <u>See</u> Standing Scheduling Order, at 9 ("Each
4    requested jury instruction shall cover only one subject or principle of law …[.]").

97

**INSTRUCTION NO.** 

**COPYRIGHT—DAMAGES—INDIRECT PROFITS**

Mattel seeks indirect profits in this case.  Indirect profits have a less direct connection or link to the infringement.  To recover indirect profits, Mattel must establish a non-speculative, causal relationship between the infringement and the profits generated indirectly from such infringement.

**Authorities**:  <u>Polar Bear Productions, Inc. v. Timex Corp.</u>, 384 F.3d 700, 711, 714 n.10 (9th Cir. 2004).

98

1   **MATTEL'S OBJECTION**

2       Mattel objects to defendants' proposed instruction regarding Copyright—

3   Damages—Indirect Profits on the following grounds:

4       1.      Defendants' inclusion of the term "non-speculative" is unnecessary and biased

5   because the jury will have already been instructed that damages cannot be speculative.

## MGA PARTIES' RESPONSE

Mattel does not dispute that the causal relationship between the infringement and so-called "indirect profits" must be non-speculative.  Indeed, the Ninth Circuit has articulated the plaintiff's burden on indirect profits using exactly this language.  <u>Mackie v. Rieser</u>, 296 F.3d 909, 915-16 (9th Cir. 2002). ("[A] copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement."); <u>see</u> <u>also</u> 9th Cir. Model Jury Instr. 17.24, comments (citing <u>Mackie</u>).

# INSTRUCTION NO. ___

## CHOICE OF ALTERNATIVE METHODS OF DETERMINING PLAINTIFF'S DAMAGES

If you determine that an award of damages is warranted by the facts and these instructions, you must select a method of damages for determining the amount of damages.  Select the method that you find produces the most accurate and certain result.  However, if you find that find that either of two methods produces a result that is certain and accurate and will fully compensate plaintiff, you should use the method that produces the lowest amount of damages.

**Authority:**  A. A. Baxter Corp. v. Colt Indus., Inc., 10 Cal. App. 3d 144, 160 (1970).

# MATTEL'S OBJECTION

Mattel objects to defendants' proposed instruction regarding Choice of Alternative Methods of Determining Plaintiff's Damages on the following grounds:

1.      This proposed instruction is biased, misleading and confusing.  The instruction tells the jury to select the most "accurate" method of calculating Mattel's damages, but that if either of two methods is accurate, the jury should use the method producing the lowest amount of damages.  There is no legal basis to give the jury such an instruction.  The only source cited by defendants is an inapposite case dealing with damages caused by delay in the performance of a construction contract wherein the Court was articulating alternative measures of damages for the trial court to consider on remand. *See A.A. Baxter Corp. v. Colt Indus., Inc.*, 10 Cal. App. 3d 144 (1970).  That case does not support defendants' requested jury instruction.  Notably, there is no comparable jury instruction found in CACI, or in the Ninth Circuit Model Instructions.  Nor do defendants even identify the "alternatives" the jury is supposed to choose from.

2.      Defendants' proposed instruction is unintelligible and confusing given that there is no explanation as to what "method of damages for determining the amount of damages" this proposed instruction refers, or to what claims, if any, such an instruction would apply.  Mattel seeks disgorgement in this case.  This unnecessary instruction could confuse the jury into believe that Mattel is not entitled to such relief, which it is.

1 | **MGA PARTIES' RESPONSE**

2      In proposing jury instructions, the parties are not limited to the subject matter

3 covered by the Ninth Circuit Model Instructions or any other set of models.  See, e.g.,

4 Jones v. Hollenback, 2007 WL 3335012, at *11 (E.D. Cal. Nov. 9, 2007) ("The fact that

5 Jury Instruction No. 7 is not a Ninth Circuit Model Jury Instruction, but rather California

6 pattern instruction, BAJI 2.22, is irrelevant.  The instruction correctly and clearly states the

7 law.  There is nothing confusing about the purpose and intent of this instruction.").

8 Mattel's objection is not appropriate as it suggests that the jury simply should not be

9 instructed as to how it should handle the differences among the various methods of

10 calculating damages.

11      Moreover, the proposed instruction is an entirely accurate statement of the law:

12 Where there is more than one method of ascertaining damages, that method

13 which is most definite and certain should be adopted. No one method is

14 exclusive, where several exist, but that one should be chosen which best

15 achieves the fundamental purpose of compensation to the injured person for

16 his loss; and if the facts show that either of two measures of damages will

17 fully compensate plaintiff for his loss, that measure must be adopted which is

18 less expensive to defendant.

19 A. A. Baxter Corp. v. Colt Indus., Inc., 10 Cal. App. 3d 144, 160 (1970) (emphasis added).

20 How Mattel can argue this language is "inapposite" is hard to understand.  As Mattel notes,

21 the court in A.A. Baxter was providing guidance to the lower court in calculating damages

22 appropriately on remand.  Id.  The court addressed the problem encountered when there

23 are multiple possible means to calculate damages – an issue that may arise here as well.  In

24 addition, Mattel's claim for disgorgement is problematic for all the reasons explained in

25 the MGA Parties' Objection to Mattel's Proposed Jury Instruction: Disgorgement of

26 Profits.  Thus, the instruction is appropriate.

27

28

**INSTRUCTION NO. 5.3**

**DAMAGES—DUTY TO MITIGATE**

The plaintiff has a duty to use reasonable efforts to mitigate damages.  To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

      1.    that the plaintiff failed to use reasonable efforts to mitigate damages; and

      2.    the amount by which damages would have been mitigated.

**Authority:**   Ninth Circuit Manual of Model Jury Instructions, Civil, 5.3 (2007); see also CACI No. 3931 (2008).

**MATTEL'S OBJECTION**

Mattel objects to defendants' proposed instruction regarding Damages—Duty to Mitigate on the following grounds:

1.     It would be unnecessary and potentially misleading to inform the jury as to a defense of failure to mitigate because Mattel seeks damages in the form of disgorgement of defendants' profits.  Accordingly, there is no basis for defendants to argue that Mattel had a duty to "avoid or reduce" such damages and this proposed instruction is prejudicial.

2.     In any event, mitigation is an affirmative defense and should be presented as such to the jury – if presented to the jury at all – so that it is clear that defendants are raising this as a potential defense regarding the amount of damages and that they bear the burden of proof on this issue.

3.     Defendants cite the Ninth Circuit Model Instruction regarding Damages—Mitigation, and the proposed instruction tracks the language of Model Instruction 5.3 verbatim.  However, with respect to all of Mattel's state law claims against defendants, issues relating to the mitigation of damages are issues of California law.  CACI is the official source of instructions regarding California law.  *See* Court's Standing Scheduling Order, at 9; *Cal. Rule of Court* 2.1050.  Although defendants now cite CACI No. 3931, this proposed instruction bears no resemblance to CACI No. 3931.

4.     *Counter-Instruction*:  If the Court decides, in spite of Mattel's objections, that an instruction on mitigation should be given to the jury, it should be as follows:

> The defendants claim that Mattel failed to mitigate damages allegedly caused by the defendants' wrongful conduct.  The doctrine of mitigation of damages holds that a plaintiff who suffers damages as a result of a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and may not recover for damages avoidable through ordinary care and reasonable exertion.  The duty to mitigate damages does not require an injured party to do what is unreasonable or impracticable.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

   The burden of proving that losses could have been avoided by plaintiff by reasonable effort and expense, and the amount of such avoidable losses, is always on the party who harmed the plaintiff.

   **Authority:**  CACI No. 358, comments; *Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994).

**MGA PARTIES' RESPONSE**

The Court has indicated that mitigation should be presented to the jury in connection with damages.  See 7/18/08 Tr. 90:21-91:2 ("THE COURT:  That's what I'm wanting to figure out right now, how this is going to play out.  So Mitigation.  MR. RUSSELL: Mitigation is a legal defense.  THE COURT:  That's part of damages.  There would be an instruction on mitigation.  MR. RUSSELL:  Yes.")  Indeed, failure to mitigate is not strictly viewed as an affirmative defense.  As noted in the comments to CACI No. 3931:

> The frequent statement of the principle in the terms of a 'duty' imposed on
> the injured party has been criticized on the theory that a breach of the 'duty'
> does not give rise to a correlative right of action.  It is perhaps more accurate
> to say that the wrongdoer is not required to compensate the injured party for
> damages which are avoidable by reasonable effort on the latter's part.

Green v. Smith, 261 Cal. App. 2d 392, 396 (1968) (internal citations omitted).  Thus, the trier of fact considering the amount of damages must also consider whether the defendant has failed to mitigate.  Mattel's assertion that it only seeks disgorgement of profits is problematic for all the reasons stated in the MGA Parties' Objection to Mattel's Instruction on Disgorgement of Profits.

The proposed instruction does follow the Ninth Circuit model rather than the CACI.  CACI No. 3931 is rather long and verbose as compared to the Ninth Circuit instruction, although it relays the same ideas.  See CACI No. 3931 ("If you decide [name of defendant] is responsible for the original harm, [name of plaintiff] is not entitled to recover damages for harm to [his/her] property that [name of defendant] proves [name of plaintiff] could have avoided with reasonable efforts or expenditures.  You should consider the reasonableness of [name of plaintiff]'s efforts in light of the circumstances facing [him/her] at the time, including [his/her] ability to make the efforts or expenditures without undue risk or hardship.  If [name of plaintiff] made reasonable efforts to avoid harm, then your award should include reasonable amounts that [he/she] spent for this purpose.")  Notably, Mattel has also chosen not to adopt the CACI instruction.

# INSTRUCTION NO. ___

# DUPLICATIVE DAMAGES

You may find that Mattel is entitled to damages awards under multiple claims.  However, you may not award compensatory damages more than once for the same injury or harm.  Mattel is only entitled to be made whole once, and may not recover more than what was lost.  Of course, if you find that different injuries are attributed to the separate claims, then you must compensate Mattel fully for all injuries.

You may also find that Mattel is entitled to damage awards from multiple defendants.  However, you may not award damages more than once for the same injury or harm.  Also, you may not award the same profits from two separate defendants.  Mattel is only entitled to be made whole once, and may not recover more than what was lost.

**Authority**:  Pattern Civ. Jury Instr. 5th Cir. 15.14 (2006) (modified); ; CACI No. 361 (2008); Softel v. Dragon Med. & Scientific Communications, 118 F.3d 955, 969 (2d Cir. 1997) (upholding district court's refusal to award damages on trade secret claim because such damages would have been "coextensive with the damages it had already awarded for copyright infringement"); Computer Assocs. Int'l v. Altai, Inc., 982 F.2d 693, 720 (2d Cir. 1992) (finding that a plaintiff "may not obtain a double recovery where the damages for copyright infringement and trade secret misappropriation are coextensive."); Stein v. United Artists Corp., 691 F.2d 885, 897 (9th Cir. 1982) (dismissing claim where "danger of double recovery [was] manifest"); Sparaco v. Lawler, Matusky, Skelly Engineers, LLP, 313 F. Supp. 2d 247, 250 (S.D.N.Y. 2004) ("the plaintiff could not receive 'double recovery where the damages for the copyright infringement and trade secret misappropriation are coextensive."); 4 Nimmer on Copyright § 14.01[C] ("When violation of two distinct rights results from the same conduct, multiple recoveries are permissible - but only to the extent that two different types of harm have been suffered."); Kissell Co. v.

1  Gressley, 591 F.2d 47, 51 (9th Cir. Ariz. 1979) (remanding to "the trial court to reduce
2  [plaintiff's] judgment" because of duplicative recovery); Gidatex, S.r.L. v. Campaniello
3  Imports, Ltd., 82 F. Supp.2d 136, 146 (S.D.N.Y. 2000) ("In determining whether the two
4  damages awards are coextensive, the key inquiry is whether the awards address the same
5  injury"); Compaq Computer Corp. v. Ergonome Inc., 2001 U.S. Dist. LEXIS 23485 (S.D.
6  Tex. 2001) ("The fraud damages are merely coextensive with the infringement damages.").

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MATTEL'S OBJECTION**

Mattel objects to defendants' proposed instruction regarding Plaintiffs May Not Recover Duplicate Damages on the following grounds:

1.      This proposed instruction is improper because it will confuse the jury.  The jury is entitled to -- indeed, must -- award Mattel the <u>full</u> amount of damages for <u>each</u> violation it found.  Of course, Mattel may not obtain, and does not seek, a double recovery, but that issue can be addressed post-verdict.  This proposed instruction could induce the jury to award no damages to Mattel even where it believes damages should be awarded, simply because it has already awarded damages in a prior claim.  For example, if the jury makes a full award of damages for intentional interference, it could award zero damages for the other tort claims pursued by Mattel and the copyright claim based on this instruction even though it believes Mattel is entitled to the same award, or a similar award, for such violations.  That would be improper and could create problems to the extent liability or damages findings are ultimately appealed or addressed in post-trial motions as to particular claims.  Mattel is entitled to an appropriate award of damages on <u>each</u> of the claims to be considered by the jury.

2.      The authority cited by defendants does not provide a basis for defendants to give this jury instruction.  The CACI Model Instruction cited by defendants is inapplicable on its face; CACI No. 361 deals with a situation where plaintiff seeks to recover same damages in tort and contract, which is not the situation here.  *See* CACI No. 361.  The only other authorities defendants offer are a Fifth Circuit model instruction and several non-California authorities.  Many of these authorities merely support the non-controversial proposition that a plaintiff cannot actually obtain a double recovery, which Mattel does not seek here.  For example, in *Softel v. Dragon Med. & Scientific Communications*, 118 F.3d 955, 969 (2d Cir. 1997), the district court actually calculated plaintiffs' damages under both copyright infringement and trade secret before concluding that plaintiff could not actually "take" those damages because they were "coextensive" with the copyright infringement damages the court had already awarded.  None requires the Court to give this

1   erroneous proposed instruction to the jury -- only that the Court ultimately ensure that
2   Mattel is not permitted to actually obtain double recovery.
3         3.      Defendants' proposed instruction is also erroneous to the extent it informs the
4   jury that it may not award the same profits from different defendants because liability for
5   several of Mattel's claims is joint and several.  Accordingly, Mattel is entitled to recover
6   the full value of its damages from any one of the liable defendants.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MGA PARTIES' RESPONSE**

In proposing jury instructions, the parties are not limited to the subject matter covered by the Ninth Circuit Model Instructions or any other set of models.  See, e.g., Jones v. Hollenback, 2007 WL 3335012, at *11 (E.D. Cal. Nov. 9, 2007) ("The fact that Jury Instruction No. 7 is not a Ninth Circuit Model Jury Instruction, but rather California pattern instruction, BAJI 2.22, is irrelevant.  The instruction correctly and clearly states the law.  There is nothing confusing about the purpose and intent of this instruction.")

Mattel concedes that it is not entitled to a "double recovery" and further does not dispute that the damages it seeks may be overlapping and duplicative.  Accordingly, the proposed jury instruction is appropriate.

# INSTRUCTION NO. 5.6

# NOMINAL DAMAGES

The law which applies to this case authorizes an award of nominal damages. If you find for the plaintiff but you find that the plaintiff has failed to prove damages as defined in these instructions, you must award nominal damages. Nominal damages may not exceed one dollar.

**Authority:**  Ninth Circuit Manual of Model Civ. Jury Instr. 5.6 (2007).

**MATTEL'S OBJECTION**

Mattel objects to defendants' proposed instruction regarding Nominal Damages on the following grounds:

1.      This proposed instruction is unintelligible, confusing and misleading.  The instruction states:  "The law which applies to this case authorizes an award of nominal damages."  But defendants provide the jury with no explanation as to which of Mattel's claims, if any, authorizes an award of nominal damages.  The comments to Ninth Circuit Model Instruction 5.6 recognize that "[n]ominal damages are not available in every case." *See* 9th Cir. Civ. Jury Instr.  5.6 cmt. (2007).  Defendants cite no authority that would support giving an instruction to the jury regarding nominal damages.

**MGA PARTIES' RESPONSE**

The MGA Parties contend that nominal damages apply to every claim in this case. See, e.g., Midland Pacific Building Corp. v. King, 157 Cal. App. 4th 264, 275 (2007) (nominal damages are available in actions upon a contract).  Mattel has cited no authority indicating that nominal damages are unavailable for any of its claims.

1  **PHASE 1-B – Copyright**

2  <u>INSTRUCTION NO.    </u>

3  <u>PRELIMINARY INSTRUCTION</u>

4

5      Based on your findings in Phase 1-A of this trial regarding when certain drawings

6  were "created" by Carter Bryant, the Court has determined as a matter of law that Mattel

7  owns the copyrights to Mr. Bryant's drawings.  Mattel alleges that MGA's Bratz-related

8  products have infringed their copyrights in Mr. Bryant's drawings.  The Court has also

9  determined that Mattel's copyright claims are limited to the 16 Bryant drawings that

10  Mattel has registered with the Copyright Office.  Those drawings are as follows: TX [302]

11  [VA 1-378-648, VA 1-378-649, VA 1-378-650, VA 1-378-651, VA 1-378-652, VA 1-378-

12  653, VA 1-378-654, VA 1-378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-

13  378-659, VA 1-378-660, VAu 715-270, VAu 715-271 and VAu 715-273.]

14

15      MGA denies that any of its Bratz products infringe Mattel's copyrights.

16

17  **Authority:**  Given the number of drawings at issue in the Phase 1-A trial, it is important

18  that the jury understand that Mattel's infringement claims are limited to the 16 registered

19  drawings listed in the Final Pretrial Conference Order.

20

21

22

23

24

25

26

27

28

**MATTEL'S OBJECTION**

Mattel objects to defendants' proposed Preliminary Instruction on the following grounds:

1.      This proposed instruction improperly limits Mattel's copyright claim to "the 16 Bryant drawings that Mattel has registered with the Copyright office."  Mattel's claim encompasses all of the Bratz-related works the jury found that Mattel owns in Phase 1A, whether or not those works were previously registered.  *See Perfect 10, Inc. v. Amazon.com Inc.*, 487 F.3d 701, 710 n.1 (9th Cir. 2007) (noting, in a case where some works were registered and some were not, that Section 411 of the Copyright Act does not limit the remedies a court can grant for copyright infringement even of unregistered works); 28 U.S.C. § 1367(a) ("The district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").  Moreover, Mattel is in the process of registering its copyrights in additional Bratz-related works the jury found Mattel owns, which renders defendant's limitation moot.

Not considering defendants' infringement of these additional works would be nonsensical, and would require the filing of a separate lawsuit, after this one, to address Mattel claims that defendants have infringed Bratz works Mattel now owns, which were not previously registered.  The works will all be registered within a matter of days, now that Mattel has been found to own them.  Mattel's infringement claim should be considered in its entirety, as to all of the Bratz works Mattel owns.

**MGA PARTIES' RESPONSE**

1.      The Court has previously rejected Mattel's attempt to amended the Final Pretrial Conference Order to allow Mattel to base its infringement claims on a Bryant drawing that Mattel belatedly registered with the Copyright Office.   Consistent with MGA's motion in limine No. 12, the Court ruled by Order dated May 28, 2008, that Mattel was precluded from basing its copyright claims on the "control" drawing that Mattel did not register until May 15, 2008.   See May 28, 2008 Order Regarding Various Discovey Motions, Applications And Other Matters Upon Which The Court Ruled On May 27, 2008, ¶ 9 ("The MGA Parties' Motion to Strike Portions of the Pretrial Conference Order is GRANTED IN PART and DENIED IN PART. . . .   The Court grants the motion as to the registration of the control drawing.").   The prejudice to MGA were the Court to change course and allow Mattel to base it infringement allegations on dozens of Bryant drawings that Mattel has not brought claims under, are not part of the Final Pretrial Conference Order, and Mattel concedes are not yet even registered would be extraordinary and incalculable.   See also Mem. in Further Supp. of MGA Parties' Motion to Strike Portions of Pre-Trial Conf. Order (filed May 27, 2008).

Moreover, registration of a work is a prerequisite to a suit for of copyright infringement.   See 17 U.S.C. § 411(a); Leicester v. Warner Bros., 232 F.3d 1212, 1235 (9th Cir. 2000) ("[t]he Copyright Act requires registration of all 'United States work[s]' as a prerequisite for a copyright infringement action"); Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1211 (9th Cir. 1998) (copyright registration "is a prerequisite to a suit based on a copyright"); Zito v. Steeplechase Films, Inc., 267 F. Supp. 2d 1022, 1025 (N.D. Cal. 2003) ("Registration of a copyrighted work with the Copyright Office is a prerequisite to filing suit under copyright law.   Registration is a jurisdictional requirement.") (citations omitted).   Mattel's citation to a footnote in Perfect10, Inc. v. Amazon, Inc., 487 F.3d 701 (9th Cir. 2007), is misplaced.   There, the Court cited § 411 and acknowledged that "[r]egistration is generally a jurisdictional prerequisite to a suit for copyright infringement." Id. at 710 n.1.   Relying on the Eighth Circuit's decision in Olan Mills, Inc.

1  v. Linn Photo Co., 23 F.3d 1345, 1349 (8th Cir. 1994), and the Eleventh Circuit's decision
2  in Pacific & Southern Co., Inc. v. Duncan, 744 F.2d 1490, 1499 n.17 (11th Cir. 1984), the
3  court recognized the following limited exception to the general rule requiring registration:
4  "Once a court has jurisdiction over an action for copyright infringement under section 411,
5  the court may grant injunctive relief to restrain infringement of any copyright, whether
6  registered or unregistered."   Id.   As explained more recently by the Second Circuit in
7  declining to broadly extend this limited rule beyond the injunction context, "the existence
8  of a claim based on a registered copyright does not bring within a district court's
9  jurisdiction all related claims stemming from unregistered copyrights. . . .   [E]ven if
10 injunctive relief against infringement of an unregistered copyright is available, that relief is
11 properly limited to situations, as were found to exist in Olan Mills and Pacific & Southern
12 Co., where a defendant has engaged in a pattern of infringement of a plaintiff's registered
13 copyrights and can be expected to continue to infringe new copyrighted material
14 emanating in the future from the plaintiff." In re: Literary Works In Electronic Databases
15 Copyright Litigation, 509 F.3d 116, 122 (2d Cir. 2007).  See also Well-Made Toy Mfg.
16 Corp. v. Goffa Int'l Corp., 354 F.3d 112 (2d Cir. 2003) (affirming district court decision
17 deciding claim of infringement involving first, registered 20-inch doll on the merits and
18 dismissing claim involving second, unregistered derivative 48-inch doll for lack of
19 jurisdiction).

20     As with Mattel's previous attempt to amend the Pretrial Conference Order to
21 included the "sculpt" drawing, the Court should deny this further "back door" attempt by
22 Mattel to amend the Final Pretrial Conference Order to include dozens of additional
23 drawings that are not yet even registered and were not the subject of Mattel's pretrial
24 infringement claims.

25
26
27
28

# INSTRUCTION NO. 17.1

## COPYRIGHT – DEFINED

Copyright is the exclusive right to copy.  This right to copy includes the exclusive right to:

1.  Authorize or make additional copies, or otherwise reproduce the copyrighted work;

2.  Recast, transform, adapt the work, that is prepare derivative works based upon the copyrighted work;

3.  Distribute copies of the copyrighted work to the public by sale or other transfer of ownership;

4.  Display publicly a copyrighted pictorial work or graphic work.

It is the owner of a copyright who may exercise these exclusive rights.  In general, copyright law protects against reproduction, adaptation, distribution and display of substantially similar copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in a lawsuit for copyright infringement.  As I mentioned, the Court has determined that your determination of whether Mattel's copyrights have been infringed should be limited to the 16 Bryant drawings that Mattel has registered with the Copyright Office.

Mere possession of a work protected by copyright does not constitute infringement.  That Carter Bryant and MGA had possession of Mr. Bryant's drawings, and made reference to them, is not copyright infringement, just like a person who owns and reads a book has not infringed the copyright of the book's publisher or author.  [Lapham v. Porach, 2007 U.S. Dist. LEXIS 30751, at *15 (S.D.N.Y. Apr. 25, 2007).]

1    You must consider each defendant's acts separately to determine whether that defendant
2    has engaged in an act that is an infringement of Mattel's copyrights.
3
4    **Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.1 (2007); 17 U.S.C. § 106;
5    2-8 Nimmer on Copyright §§ 8.01–8.20; 3 Patry on Copyright §§ 8:1, 9:2; 12-76 Nimmer
6    on Copyright § 12.04[A][1].
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  **MATTEL'S OBJECTION**

2      Mattel objects to defendants' proposed jury instruction regarding Copyright –

3  Defined on the following grounds:

4      1.      This proposed instruction deviates from the Ninth Circuit Model Instruction.

5  The last two paragraphs are not found in the model instruction and constitute inappropriate

6  argument in what is supposed to be an introductory instruction to the jury regarding the

7  definition of a copyright.  Defendants' arguments about what does or does not constitute

8  infringement is not appropriately included in this definition instruction.

9      2.      Moreover, the example given by defendants in the proposed instruction is

10  erroneous as a matter of law and prejudicial to Mattel.  The person in their example of

11  non-infringement obviously purchased those books from someone authorized to sell them.

12  That is not what occurred here.

13      3.      The proposed instruction does not properly inform the jury that defendants

14  may be liable for vicarious or contributory copyright infringement even if they did not

15  engage in direct copyright infringement.

16      4.      The proposed instruction should explain to the jury (as in the Model

17  Instruction) that the term "owner" encompasses an assignee such as Mattel.

18      5.      This proposed instruction improperly limits Mattel's copyright claims to "the

19  16 Bryant drawings that Mattel has registered with the Copyright office."  However,

20  Mattel's claim encompasses all of the Bratz-related works the jury found that Mattel owns

21  in Phase 1A, whether or not those works were previously registered, as discussed above.

22      6.      Mattel requests that the Court adopt Mattel's proposed instruction, which

23  conforms to the Ninth Circuit Model Instruction and provides the jury with an objective

24  statement of the law.  *See* Mattel's Proposed Jury Instruction re Copyright—Defined.

25

26

27

28

## MGA PARTIES' RESPONSE

1.-3.  MGA's proposed instruction for the most part tracks the Ninth Circuit model instruction.  The last two paragraphs objected to by Mattel are correct statements of the law and Mattel cites no contrary authority.  There is no need in this instruction to include instructions on vicarious or contributory infringement as Mattel argues, since MGA's proposed instructions 17.20 and 17.21 properly and fully instruct the jury on those issues.

4.     Mattel's objection that this instruction should explain that the term "owner" includes an "assignee such as Mattel" is misplaced since MGA's proposed Preliminary Instruction provides that "the Court has determined as a matter of law that Mattel owns the copyrights to Mr. Bryant's drawings."  Inclusion of "assignee" language is unnecessary and would likely only serve to confuse the jury.

5.     Concerning Mattel's argument that its copyright infringement claims are not limited to the 16 Carter Bryant drawing registered by Mattel and included in the Final Pretrial Conference Order, see MGA Parties' Response to Mattel's Objections to MGA's proposed Preliminary Instruction.

6.     The MGA Parties' proposed instruction is proper and should be adopted by the Court.

**INSTRUCTION NO. 17.2**

**COPYRIGHT – SUBJECT MATTER – GENERALLY**

The 16 Bryant drawing that Mattel has registered with the Copyright Office are known as pictorial works, which includes such things as works of fine art, graphic and applied art, photographs, prints and art reproductions.

It is agreed by the parties that the 16 registered drawings are copyrighted original works of authorship. Only that part of the drawings comprised of original works of authorship fixed in any tangible medium of expression from which is can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device is protected by the Copyright Act.

Copyright protection for an original work of authorship does not extend to any facts, ideas or concepts, regardless of the form in which it is described, explained, illustrated, or embodied.

**Authority:** Ninth Circuit Manual of Model Jury Instructions 17.2 (2007).

124

**MATTEL'S OBJECTION**

Mattel objects to defendants' proposed jury instruction on the following grounds:

1.      This proposed instruction is not necessary in light of the numerous other proposed instructions that inform the jury as to the scope of copyright protection.

2.      This instruction improperly suggests that Mattel's copyright claim is limited to "the 16 Bryant drawings that Mattel has registered with the Copyright office." However, Mattel's claim encompasses all of the Bratz-related works the jury found that Mattel owns in Phase 1A, whether or not those works were previously registered, as discussed above.

3.      This proposed instruction is also misleading and erroneous to the extent it informs the jury that "[o]nly that part of the drawings comprised of original works of authorship . . . is protected by the Copyright Act."  The Court has held already that Bryant's drawings are fully protectable given the infinite variations in possible expression of the human form, and Bryant's original expression of the characters he conceived.  The language used by defendants is incomprehensible.

**MGA PARTIES' RESPONSE**

1.       This proposed instruction is a standard instruction that directly tracks the Ninth Circuit model instruction.  It is necessary to properly instruct the jury concerning the subject matter covered by copyright and will assist the jury in determining the scope of protection to be afforded the Bryant drawings consistent with this Court's July 24, 2008 Order.

2.       Concerning Mattel's argument that its copyright infringement claims are not limited to the 16 Carter Bryant drawing registered by Mattel and included in the Final Pretrial Conference Order, see MGA Parties' Response to Mattel's Objections to MGA's proposed Preliminary Instruction.

3.       Mattel's argument that the "Court has held already that Bryant's drawings are fully protectable" is wrong.  The Court's July 24, 2008 Order requires the jury to "analytically dissect" Bryant's drawings and "filter" any unprotectable elements in determining infringement.  Although objected to by Mattel as "incomprehensible," the portion of MGA's proposed instruction stating that "[o]nly that part of the drawings comprised of original works of authorship" – i.e., protectable by copyright – is part of the Ninth Circuit's model instruction and it is fully consistent with the Court's order and other precedent.  Mattel's attempt to remove this standard guidance from the jury is improper.

4.       The MGA Parties' proposed instruction is proper and should be adopted by the Court.

# INSTRUCTION NO. 17.3

## COPYRIGHT – SUBJECT MATTER – IDEA AND EXPRESSION

Copyright law allows the owner of an original work to prevent others from copying the way or form the author used to express the ideas in the author's work.  Only the particular original expression of an idea can be copyrighted.  Copyright law does not give the author the right to prevent others from copying or using the underlying facts, ideas or concepts contained in the work.

The right to exclude others from copying extends only to how the author expressed the facts, ideas or concepts in the copyrighted work.  The copyright is not violated when someone uses a fact, idea or concept from a copyrighted work, as long as the particular way of expressing that fact, idea or concept in the work is not copied.

Copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work.  This principle, known as the idea/expression or fact/expression dichotomy, applies to all works of authorship.

**Authority**: Ninth Circuit Manual of Model Jury Instructions 17.3 (2007); U.S. Constitution, Art. I, § 8, cl. 8; Feist Publications, Inc. v. Rural Telephone Co., 499 U.S. 340, 349-50 (1991); Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156 (1975); Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 556-57 (1985).

**MATTEL'S OBJECTION**

Mattel objects to defendants' proposed instruction regarding Subject Matter – Idea and Expression on the following grounds:

1.      This proposed instruction deviates from the Ninth Circuit Model Instruction and is erroneous and prejudicial.  For example, defendants have added the term "original expression" when the Model Instruction simply says expression.  Moreover, they have added the phrase "underlying facts, ideas or concepts" when the Model Instruction just uses the term "ideas."  Defendants are simply trying to overcomplicate the issues before the jury.

2.      There is also no reason for defendants to add the last paragraph regarding the purported "fact/expression dichotomy," which is not part of the Model Instruction.

3.      This proposed instruction is also potentially confusing because, in the Ninth Circuit, it is proper to consider ideas as part of the extrinsic test.  *See, e.g., Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) (holding that, as part of the extrinsic test, one must "consider[] whether two works share a similarity of *ideas* and expression") (emphasis added); *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) (same).

4.      Defendants' instruction is incomplete in that it does not recognize that creative compilations of non-protectable elements are entitled to copyright protection.  *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003) ("A combination of unprotectable elements is eligible for copyright protection . . .  if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work or authorship."); *Swirsky v. Carey,* 376 F.3d 841, 848 (9th Cir. 2004) ("substantial similarity can be found in a combination of elements, even if those elements are individually unprotected").

5.      This proposed instruction is misleading in that it only uses the word "copy," to the apparent exclusion of other acts of infringement, including adapting a work or basing a derivative on a copyrighted work.

1    6.    To the extent any instruction regarding the subject matter of copyright is

2    given, Mattel requests that the Court adopt the Ninth Circuit Model Instruction as written.

3    *See* 9th Cir. Civ. Jury Instr. 17.3 (2007).

**MGA PARTIES' RESPONSE**

1.    MGA's proposed instruction closely tracks the Ninth Circuit model instruction, which was omitted entirely from Mattel's proposed instructions. Although Mattel objects to the use of the term "original expression," there is no question that this is precisely what copyright law protects. As the Supreme Court stated in Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994): "The primary objective of copyright is not to reward the labor of authors, but 'to promote the Progress of Science and useful Arts.' To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." Id. at 527 (emphasis added) (quoting Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340, 349-350 (1991) (citations omitted)). See also Satava v. Lowry, 323 F.3d 805, 807 (9th Cir. 2003) ("In the Copyright Act, Congress sought to benefit the public by encouraging artists' creative expression. Congress carefully drew the contours of copyright protection to achieve this goal. It granted artists the exclusive right to the original expression in their works, thereby giving them a financial incentive to create works to enrich our culture. But it denied artists the exclusive right to ideas and standard elements in their works, thereby preventing them from monopolizing what rightfully belongs to the public.").

Mattel's objection to MGA's use of the phrase "underlying facts, ideas or concepts" to explain to the jury what an author of a work is <u>not</u> entitled to protect via copyright is also wrong. Contrary to Mattel's argument, both "ideas" and "concepts" are included in the Ninth Circuit model instruction. "Facts" are also not protectable by copyright and the omission of this word from the model instruction is simply an error, as evidenced by Model Instruction 17.0. <u>See also</u> <u>Harper & Row, Publrs. v. Nation Enters.</u>, 471 U.S. 539, 582 (1985) ("The 'promotion of science and the useful arts' requires this limit on the scope of an author's control. <u>Were an author able to prevent subsequent authors from using</u> **<u>concepts, ideas, or facts</u>** <u>contained in his or her work, the creative process would wither and scholars would be forced into unproductive replication of the research of their predecessors.</u>") (citing cases; emphasis added); <u>Sega Enters. v. Accolade, Inc.</u>, 977 F.2d

130

1  1510, 1524 (9th Cir. 1992) ("To the extent that a work is functional or factual, it may be

2  copied . . ., as may those expressive elements of the work that 'must necessarily be used as

3  incident to' expression of the underlying ideas, functional concepts, or facts") (citation

4  omitted).

5        2.    The language objected to by Mattel comes from the Supreme Court's decision

6  in Feist, which states in its entirety that:  "The primary objective of copyright is not to

7  reward the labor of authors, but 'to promote the Progress of Science and useful Arts.'  Art.

8  I, § 8, cl. 8.  Accord, Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156  (1975).

9  To this end, copyright assures authors the right to their original expression, but encourages

10 others to build freely upon the ideas and information conveyed by a work.  Harper & Row,

11 supra, at 556-557.   This principle, known as the idea/expression or fact/expression

12 dichotomy, applies to all works of authorship." 499 U.S. 340, 349-350.  The addition of

13 the objected-to language is therefore completely consistent with precedent and particularly

14 appropriate in this case.

15       3.    Consideration of ideas as part of the Ninth Circuit's "extrinsic" test does not

16 mean that such ideas are protected by copyright.   Although Mattel is interested in

17 obscuring this fundamental tenet and confusing the jury, the use of this model instruction

18 is expressly sanctioned by the Ninth Circuit.

19       4.    MGA has included the Ninth Circuit's model instruction concerning

20 "compilation" protection and there is no need to duplicate that instruction in this

21 instruction, which, as noted, tracks closely the Ninth Circuit model instruction.  Moreover,

22 although Mattel has claimed "compilation" protection for the Bryant drawings, it has

23 intentionally refused to detail the basis of its "compilation" claim, contrary to binding

24 precedent.   See MGA Objection To Mattel Proposed "Combination" Instruction.

25 Moreover, it is well-settled that "compilations" of "non-protectable elements" are only

26 entitled to "thin" protection against "virtually identical" copying.  See, e.g., See, e.g.

27 Satava v. Lowry, 323 F.3d 805, 812 (9th Cir. 2003); Apple Computer, Inc. v. Microsoft

28 Corp., 35 F.3d 1435, 1446-47 (9th Cir. 1994); Harper House, Inc. v. Thomas Nelson, Inc.,

131

1   889 F.2d 197, 205 (9th Cir. 1989); <u>Cosmos Jewelry Ltd. v. Po Sun Hon Co</u>., 470 F. Supp.

2   2d 1072, 1082-84 (C.D. Cal. 2006); <u>Idema v. Dreamworks, Inc.</u>, 162 F. Supp. 2d 1129,

3   1178 (C.D. Cal. 2001).

4          5.     Mattel's objection to the use of the term "copying" is misplaced.   MGA's

5   proposed instruction tracks the Ninth Circuit's model instruction in this regard and the

6   details of proving copyright infringement are addressed, appropriately, in other

7   instructions specifically directed to that issue.

8          6.     The MGA Parties' proposed instruction is proper and should be adopted by

9   the Court.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 17.4**

**COPYRIGHT INFRINGEMENT – ELEMENTS – OWNERSHIP AND COPYING**

Anyone who copies original elements of a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

On Mattel's copyright infringement claim, Mattel has the burden of proving by a preponderance of the evidence that each defendant copied original elements from the 16 Bryant drawings registered with the Copyright Office.

If you find that Mattel has proved this for each defendant, your verdict should be for Mattel.  If, on the other hand, Mattel has failed to prove this for any defendant, your verdict should be for that defendant.

**Authority**:   Ninth Circuit Manual Model Jury Instructions 17.4 (2007) (modified to account for Phase 1-A verdict).

1 | **MATTEL'S OBJECTION**

2 | Mattel objects to defendants' proposed instruction regarding Ownership and

3 | Copying on the following grounds:

4 | 1.    This proposed instruction improperly limits Mattel's copyright claim to "the

5 | 16 Bryant drawings that Mattel has registered with the Copyright office."  However,

6 | Mattel's claim encompasses all of the Bratz-related works the jury found that Mattel owns

7 | in Phase 1A, whether or not those works were previously registered, as discussed above.

8 | 2.    This proposed instruction is misleading and erroneous to the extent it suggests

9 | that Mattel must prove its copyright infringement claim against all of the defendants

10 | before it can recover on this claim.  (E.g., "Mattel has the burden of proving . . . that each

11 | defendant copied original elements . . ..")  Mattel can recover on this claim if it proves

12 | copyright infringement as to any of the defendants.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MGA PARTIES' RESPONSE**

1.    Concerning Mattel's argument that its copyright infringement claims are not limited to the 16 Carter Bryant drawing registered by Mattel and included in the Final Pretrial Conference Order, <u>see</u> MGA Parties' Response to Mattel's Objections to MGA's proposed Preliminary Instruction.

2.    In response to this objection, MGA agrees that the first sentence of this paragraph should be changed to read as follows:  "If you find that Mattel has proved this for any defendant, your verdict should be for Mattel as to such defendant."

**INSTRUCTION NO. 17.6**

**COPYRIGHT INTERESTS – AUTHORSHIP**

The creator of an original work is called the author of that work.  An author originates or "masterminds" the original work, controlling the whole work's creation and causing it to come into being.

Others may help or may make valuable or creative contributions to a work.  However, such a contributor cannot be the author of the work unless that contributor caused the work to come into being.  One must translate an idea into a fixed, tangible expression in order to be the author of the work.  Merely giving an idea to another does not make the giver an author of a work embodying that idea.

**Authority:**  Ninth Circuit Manual of Model Jury Instructions 17.6 (2007).

1  **MATTEL'S OBJECTION**

2      Mattel objects to defendants' proposed jury instruction regarding Authorship on the

3  following grounds:

4      1.      This proposed instruction is unnecessary and potentially confusing because

5  there is no issue as to authorship in this case.  It is undisputed that Carter Bryant is the

6  author of the copyrighted works at issue and that Mattel owns those works by virtue of the

7  Inventions Agreement.  Accordingly, there is no need for this instruction.

8      2.      There also is no reason to inform the jury that merely giving an idea to

9  another does not make the giver an author of a work.  Mattel does not claim it or Bryant is

10  the "author" of the Bratz <u>dolls</u>; rather, Mattel claims that the dolls infringe worked

11  authored by Bryant and owned by Bratz.  This instruction hence appears to be directed at a

12  non-issue.  It is confusing and unnecessary.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MGA PARTIES' RESPONSE**

1.     Mattel's objection that this instruction is "unnecessary and potentially confusing" is misplaced.  The jury's determination as to the protectability of the elements in the Bryant drawings depends on whether those elements were original as to the author of the drawings.  It is therefore important that jury understand what an "author" is under copyright law.  Moreover, certain of the works Mattel obtained ownership of as a result of the Phase 1-A trial involved potential "co-authors" and it is important that this instruction be provided so that the jury can determine, if needed, whether others who contributed to the creation of these works are also "authors" as defined by U.S. copyright law.

2.     The language objected to by Mattel is part of the Ninth Circuit model instruction and is important in this case to distinguish authorship of various works that may be used by Mattel in connection with the Phase 1-B trial.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>**INSTRUCTION NO. 17.7**</u>

<u>**COPYRIGHT INTERESTS – JOINT AUTHORS (17 U.S.C. §§ 101, 201(a))**</u>

A copyright owner is entitled to exclude others from copying a joint work. A joint work is a work prepared by two or more authors. At the time of the joint work's creation, a joint work must have two or more authors, and

    1.      each author must have made a substantial and valuable contribution to the work;

    2.      each author must have intended that their contributions be merged into inseparable or interdependent parts of a unitary whole; and

    3.      each author must have contributed material to the joint work which could have been independently copyrighted.

Each author of a joint work shares an undivided interest in the entire joint work. A copyright owner in a joint work may enforce the right to exclude others in an action for copyright infringement.

In deciding whether parties intended their contributions to be merged in element 2, above, you may consider whether they signed a written agreement stating that the copyright in the work is to be jointly owned. If there is no such agreement, you may consider whether:

    a.      both parties exercised control over the work. This is the most important factor;

b.    both parties' actions showed they shared the intent to be co-authors when they were creating the work, for instance by publicly stating that the work was their shared project; and

c.    the audience-appeal of the work depends on the contribution of each party so that the share of each party's contribution in the work's success cannot be appraised.

In making a substantial and valuable contribution to a work, each author's contribution to the joint work need not be equal.

In contributing material to the joint work that could have been independently copyrighted, each author's contribution should be entitled to copyright protection without the contributions by the other author(s).

**Authority:**  Ninth Circuit Manual of Model Jury Instructions 17.7 (2007).

1  **MATTEL'S OBJECTION**

2

3          Mattel objects to defendants' proposed instruction regarding Joint Authors on the

4  following grounds:

5          1.      This proposed instruction is unnecessary and potentially confusing because

6  there is no issue as to joint authorship in this case.  Moreover, even if it were an issue, the

7  Model Instruction on this point makes clear that Mattel is entitled to exclude others,

8  including defendants, from copying a joint work, as the instruction itself makes clear.

9  Accordingly, this is a non-issue.  MGA does not explain who it claims is a joint author of

10  what.  The instruction should not be given.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MGA PARTIES' RESPONSE**

1.     The jury determined in Phase 1-A that certain works were created by Bryant "alone or jointly with others."  By all accounts, Mattel intends to use certain works that MGA believes were "joint" works against MGA as part of the Phase 1-B trial such as the "sculpt" drawing (MGA actually believes that Bryant's contribution to these works was insufficient to make him a "joint author") and MGA's joint ownership rights in these works is therefore pertinent to MGA's defense.  Mattel does not have a right to exclude MGA from exploiting the copyrights in works that MGA jointly owns.

# INSTRUCTION NO. 17.12

# COPYRIGHT INTERESTS – ORIGINALITY

An original work like Bryant's drawings may include or incorporate elements taken from prior works or works from the public domain.  The original parts of Bryant's drawings are the parts created:

      1.     independently by Bryant, that is, that Bryant did not copy it from another work; and

      2.     by use of at least some minimal creativity.

In copyright law, the "original element" of a work need not be new or novel.

It is not disputed that the 16 registered Bryant drawings are, as a whole, sufficiently original to satisfy the "minimal creativity" portion of this test.  It is disputed, however, whether the individual elements in these drawings are in and of themselves "original." That the Bryant drawings were accepted by the Copyright Office for registration does not determine the degree, scope, or amount of original, protected expression in the drawings.

**Authority**: Ninth Circuit Manual of Model Jury Instructions 17.12 (2007).  Feist Publications, Inc. v. Rural Telephone Services, Inc., 499 U.S. 340, 346 (1991) (originality standard is low; "a modicum of creativity"); see also Expert Report of Ralph Oman, dated Feb. 25, 2005, in Team Play, Inc. v. Boyer, 03 C 7240 (N.D. Ill. 2005) (Document M-RO-00174); (2007); 17 U.S.C. § 410(c); 37 C.F.R. § 202.20(b)(2)(i) & (ii).

**MATTEL'S OBJECTION**

Mattel objects to defendants' proposed instruction regarding Originality on the following grounds:

1.      This proposed instruction deviates from the Model Instruction and is prejudicial to Mattel.

2.      This instruction improperly limits Mattel's copyright claim to "the 16 Bryant drawings that Mattel has registered with the Copyright office."  Mattel's claim encompasses all of the Bratz-related works the jury found that Mattel owns in Phase 1A, whether or not those works were previously registered, as discussed above.

3.      This proposed instruction is also misleading and erroneous as a matter of law to the extent it informs the jury that there is a dispute as to "whether the individual elements in these drawings are in and of themselves 'original.'"  The Court has already determined that Bryant's drawings are original given the wide variation in possible ways to express the human form.  *See* July 24, 2008 Order, at 4.

4.      This instruction is also erroneous because it ignores that original compilations of pre-existing elements are also original and protectable.

**MGA PARTIES' RESPONSE**

1.    MGA's proposed instruction closely tracks the Ninth Circuit model instruction and only deviates to account for the specific facts of this case.  Mattel does not specify any way in which MGA's instruction is "prejudicial to Mattel."

2.    Concerning Mattel's argument that its copyright infringement claims are not limited to the 16 Carter Bryant drawing registered by Mattel and included in the Final Pretrial Conference Order, see MGA Parties' Response to Mattel's Objections to MGA's proposed Preliminary Instruction.

3.-4.  Contrary to Mattel's objection, MGA's proposed instruction accurately informs the jury that there is a dispute as to whether elements in Bryant's drawings are "original" to Bryant.  There was already a significant amount of evidence bearing in this issue introduced during the Phase 1-A trial and the Court has not "already determined" that all elements of Bryant's drawings are "original" as Mattel argues.   Mattel's own alternative "compilation" of "non-protectable" elements theory belies such an argument. MGA's proposed instructions include the Ninth Circuit's "compilation" model instruction, No. 17.14, which is the next instruction in MGA's proposed order and the only proposed instruction that Mattel does not object to.  There is no reason to repeat that instruction in this one.

# INSTRUCTION NO. 17.14

# COMPILATION (17 U.S.C. § 101)

An owner is entitled to copyright protection of a compilation.  A compilation is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.

The owner of a compilation may enforce the right to exclude others in an action for copyright infringement.

**Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.14 (2007).

1 | **MATTEL'S OBJECTION**

3 |     No objection.

**INSTRUCTION NO. 17.15**

**COPYING – ACCESS AND SUBSTANTIAL SIMILARITY**

Instruction 17.4 states that Mattel has the burden of proving that the defendants copied original elements from the 16 registered Bryant drawings.   Mattel may show the defendants copied from the work by showing by a preponderance of the evidence that the defendants had access to the 16 registered Bryant drawings and that there are substantial similarities between the defendant's work and original elements of the 16 registered Bryant drawings.   MGA's access to the Bryant drawings is not disputed.

**Authority:**   Ninth Circuit Manual of Model Jury Instructions 17.15 (2007) (modified). See also 4-13 Nimmer on Copyright § 13.03 ("even where the fact of copying is conceded, no legal consequences will follow from that fact unless the copying is substantial").

**MATTEL'S OBJECTION**

Mattel objects to defendants' proposed jury instruction regarding Access and Substantial Similarity on the following grounds:

1.      This instruction improperly limits Mattel's copyright claim to "the 16 Bryant drawings that Mattel has registered with the Copyright office."  Mattel's claim encompasses all of the Bratz-related works the jury found that Mattel owns in Phase 1A, whether or not those works were previously registered, as discussed above.

**MGA PARTIES' RESPONSE**

1.      Concerning Mattel's argument that its copyright infringement claims are not limited to the 16 Carter Bryant drawing registered by Mattel and included in the Final Pretrial Conference Order, see MGA Parties' Response to Mattel's Objections to MGA's proposed Preliminary Instruction.

**INSTRUCTION NO. _____**

**COPYRIGHT INFRINGEMENT – INDEPENDENT CREATION**

Even if Mattel proves that MGA had access to the 16 Bryant sketches and that particular Bratz dolls are substantially similar to certain of these sketches, this only creates a presumption of illegal copying.  MGA may rebut that presumption with evidence that the Bratz dolls are the product of independent creation, and were not copied from the 16 Bryant sketches.  If MGA presents evidence of independent creation, then you should weigh all of the evidence bearing in mind that Mattel bears the burden of proving that MGA copied the 16 Bryant sketches.

**Authority**:  <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 486 (9th Cir. 2000) ("By establishing reasonable access and substantial similarity, a copyright plaintiff creates a presumption of copying. The burden shifts to the defendant to rebut that presumption through proof of independent creation.") (citing <u>Granite Music Corp. v. United Artists Corp.</u>, 532 F.2d 718, 721 (9th Cir. 1976)); <u>see</u> <u>also</u> <u>Moore v. Kulicke & Soffa Industries, Inc.</u>, 318 F.3d 561 (3d Cir. 2003); <u>Keeler v. Brass Co. v. Continental Brass Co.</u>, 862 F.2d 1063 (4th Cir. 1988); <u>Don Post Studios, inc. v. Cinema Secrets, Inc.</u>, 124 F. Supp. 2d 311 (E.D. Pa. 2000).

# MATTEL'S OBJECTION

Mattel objects to defendants' proposed jury instruction regarding Independent Creation on the following grounds:

1.      This proposed instruction is improper since defendants did not assert the affirmative defense of independent creation in their answers and have therefore waived such defense.  *See, e.g.*, *Bethea v. Burnett*, 2005 WL 1720631(C.D.Cal. 2005) (noting that independent creation is an affirmative defense); *Harbeson v. Parke Davis, Inc.*, 746 F.2d 517, 520 (9th Cir. 1984) (unasserted affirmative defenses are waived).

2.      Defendants contend improperly that "[i]f MGA presents evidence of independent creation then you should weigh all of the evidence bearing in mind that Mattel bears the burden of proving that MGA copied the 16 Bryant sketches."  Independent creation is an affirmative defense that, if pleaded, could only be addressed once Mattel establishes copyright infringement.  *Eden Toys v. Marshall Field & Co.*, 675 F.2d 498, 501 (2d Cir. 1982) ("Evidence of independent creation may be introduced by a defendant to rebut a plaintiff's prima facie case of infringement.").  However, since defendants did not plead this defense, it cannot be considered at all.  Moreover, the "bearing in mind" language repeatedly used by defendants is inappropriate and biased.

3.      Defendants' reliance on the independent creation defense is misplaced.  The independent creation defense applies where the accused infringer shows that he created the work prior to or wholly independently of the infringed work (i.e., where two different people happen to create similar works).  For instance, an author accused of copying another writer's novel can establish independent creation by showing drafts of his work that pre-date his access to the allegedly infringed novel.  *See, e.g.*, *Dimmie v. Carey*, 88 F. Supp. 2d 142 (S.D.N.Y 2000) (finding for the defendant singer and composer where the singer produced extensive notes and demo recordings demonstrating independent development of the allegedly infringing hit song).  This, however, is a case where the author of the infringed work (Bryant) also worked and continues to work on a series of

1  infringing works.  In this context, any reference to "independent creation" is not only
2  meritless as a matter of law and unsupported by the evidence, but would also confuse the
3  jury.

4      4.      Moreover, the law is clear that a three-dimensional work is not an
5  independent creation where it is recognizable as an embodiment of a two-dimensional
6  work.  *See, e.g.*, *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d
7  1211, 1223 (9th Cir. 1997) (finding that 3-D works were copies, not derivatives: "because
8  [a party's] costumes are 'instantly identifiable as embodiments' of the underlying
9  copyrighted characters in 'yet another form,' no reasonably juror could conclude that there
10 are any 'non-trivial' artistic differences between the underlying cartoon characters and the
11 immediately recognizable costumes").

12     5.      Defendants' proposed instruction is biased and self-serving particularly as to
13 the "bearing in mind" clause and because it discusses only copying and not preparation of
14 derivative works.

15     6.      *Counter-Instruction*:  To the extent the Court decides, over Mattel's objections,
16 to give any instruction on this defense, Mattel requests that the Court adopt the following
17 instruction:

18

19         If you find access and substantial similarity, you must find that
20     defendants infringed Mattel's copyrights.  Defendants contend that the Bratz
21     dolls were created independently, i.e., that defendants did not actually copy
22     or prepare derivative works from Bryant's drawings when they created the
23     Bratz dolls notwithstanding their admitted access to these drawings. The
24     independent creation defense applies where the defendant can prove that he
25     created the allegedly infringed work without copying or adapting or
26     preparing derivative works from the original to which he had access.   For
27     instance, an author accused of copying another writer's novel can establish
28     independent creation by showing drafts of his work that pre-date his access

to the allegedly infringed novel.   Defendants bear the burden of proof on this defense.  If you find that Mattel has shown the elements of infringement and defendants have not established this defense by a preponderance of the evidence, then you must find for Mattel on its claim of copyright infringement.

**MGA PARTIES' RESPONSE**

1.-2.   Mattel's assertion in paragraphs 1-2 that MGA has "waived" the "defense" of independent creation is wrong.  Evidence of independent creation is not a defense that is "waived" if not asserted in the pleadings, but rather, as Mattel's own cited authority recognizes, it is evidence that can be used to <u>rebut</u> a prima facie case of infringement—i.e. an inference of copying—established by evidence of access and substantial similarity.  <u>See Eden Toys Inc. v. Marshall Field & Co.</u>, 675 F.2d 498, 501 (2d Cir. 1982) ("Evidence of independent creation may be introduced by a defendant to rebut a plaintiff's prima facie case of infringement."); <u>see also</u> <u>Granite Music Corp. v. United Artists Corp.</u>, 532 F.2d 718, 721 (9th Cir. 1976); <u>Calhoun v. Lillenas Publ'g</u>, 298 F.3d 1228, 1230 (11th Cir. 2002) (under copyright law, "independent creation is not an affirmative defense.   Rather, independent creation attempts to prove the opposite of the [plaintiff's] primary claim, i.e., copying") (citation omitted); <u>Sobhani v. @radical.media, Inc.</u>, 257 F. Supp. 2d 1234, 1237 (C.D. Cal. 2003); <u>Cosmos Jewelry, Ltd v. Po Sun Ho Co.</u>, 2006 US Dist LEXIS 97115 at *3 (C.D. Cal. 2006) ("evidence relating to 'independent creation' does not constitute evidence relating to any previously-waived affirmative defense"); <u>accord</u>  <u>Keeler Brass Co. v. Continental Brass Co.</u>, 862 F.2d 1063, 1066 (4th Cir. 1988) ("'[I]ndependent creation' is not an affirmative defense.   The defendants, therefore, do not have the burden of persuasion for independent creation.   Keeler's prima facie case advanced the proposition that the defendants copied the design.   Evidence of independent creation simply tends to prove the reverse of that proposition, i.e., that the design was not copied."); <u>see generally</u> Charles A. Wright and Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1270 (3d ed. 2004) ("Federal Rule 8(c) … deals with affirmative defenses … distinguished from … Rule 8(b), which deals with denials or negative defenses that directly contradict elements of the plaintiff's claim for relief.").

1    Mattel cites only one case, <u>Bethea v. Burnett</u>, 2005 WL 1720631 (C.D. Cal. June 28,
2    2005), for its affirmative defense argument.  (<u>Harbeson v. Parke Davis, Inc.</u>, 746 F.2d 517,
3    520 (9th Cir. 1984), offers merely a general statement of the law of pleading affirmative
4    defenses and does not even relate to copyright law.)  Although the court in <u>Bethea</u> did use
5    the phrase "affirmative defense" in a lengthy analysis of substantial similarity, it is
6    apparent that the court was not using it in a technical sense, because in the same paragraph
7    the court explains that it is only once a copyright plaintiff establishes reasonable access
8    and substantial similarity that the burden shifts to the defendant to rebut that presumption.
9    <u>Id.</u> at * 15 (citing <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 486 (9th Cir. 2000)).

10    Evidence of independent creation is to be considered along with the plaintiff's
11    evidence in evaluating whether infringement has occurred.  <u>See</u> 3 <u>Nimmer, on Copyright</u> §
12    12.11[D] ("[T]he trier [of fact] may entirely believe both that the defendant had access to
13    the plaintiff's work and that the two works are substantially similar, but nevertheless,
14    reasonably conclude that the defendant independently created, rather than copied.  <u>Jury</u>
15    <u>instructions should so reflect.</u>") (emphasis added); <u>id.</u> at § 12.10[B][2][b] ("[T]he law has
16    devised proof of access plus probative similarity as surrogates to prove copying as a
17    factual matter. To the extent that defendant denies that copying and maintains independent
18    creation, a factual issue arises … for trial to resolve.").

19    3.    In support of its assertion that an instruction on independent creation is
20    "misplaced," Mattel cites one case—<u>Dimmie v. Carey</u>, 88 F. Supp. 2d 142 (S.D.N.Y.
21    2000)—but offers no authority or explanation to suggest that evidence of independent
22    creation is only admissible in cases with the same fact pattern as <u>Dimmie</u> (and indeed, the
23    various Ninth Circuit cases in which evidence of independent creation is considered
24    refutes such a notion).

25    Because it is not an affirmative defense, MGA was not required to assert
26    "independent creation" in its answer.  MGA <u>has</u> asserted, in the proper context of
27    interrogatory responses, that the first generation and all subsequent BRATZ dolls were
28    independently created by a team of professional artists who were inspired by Carter

1 Bryant's concept drawings, but who developed the finished BRATZ dolls using their own
2 creativity and originality. (See MGA's Second Supplemental Responses to Mattel's
3 Revised Third Set of Interrogatories, dated January 7, 2008, at 18, 29-30, 48.)

4        4.     Mattel's reliance on Entertainment Research Group v. Genesis Creative
5 Group, Inc., 122 F.3d 1211 (9th Cir. 1997), is misplaced.  That case did not involve the
6 issue of "independent creation."

7        5.-6.  As the preceding paragraphs demonstrate, MGA's proposed instruction is
8 neither biased nor self-serving.

9        Mattel's proposed counter-instruction is improper because it incorrectly states the
10 law regarding independent creation.  As explained above, independent creation is not an
11 affirmative defense which MGA must prove by a preponderance of the evidence, but
12 rather is rebuttal evidence to counter a prima facie case of copying established by evidence
13 of access and substantial similarity.  The example offered is also misleading in that it
14 suggests that evidence of independent creation must demonstrate work that pre-dates
15 access to the copyrighted work.  Tellingly, Mattel has not distinguished (and could not
16 distinguish) any of the cases cited by MGA, including the Ninth Circuit's decision in
17 Three Boys Music Corp. v. Bolton, 212 F.3d 477, 486 (9th Cir. 2000) ("By establishing
18 reasonable access and substantial similarity, a copyright plaintiff creates a presumption of
19 copying. The burden shifts to the defendant to rebut that presumption through proof of
20 independent creation.") (citing Granite Music Corp., 532 F.2d at 721).

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 17.17**

**COPYRIGHT INFRINGEMENT – EXTRINSIC TEST; INTRINSIC TEST**

To determine whether the Bratz dolls infringe Mattel's copyrights in the 16 registered Bryant drawings, you must engage in a two-step analysis.  The first step is called the "extrinsic" test.  If necessary, this is followed by the second step of the analysis, which is called the "intrinsic" test.  [Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1177 (C.D. Cal. 2001).]

Stated generally, the "extrinsic" test considers whether two works share substantial similarity of ideas and expression as measured by external, objective criteria, while the "intrinsic" test considers whether a reasonable person (or in this case, a discerning 8-12 year old girl) would perceive a substantial similarity in the "total concept and feel" of each work, bearing in mind that ideas and concepts and general stylistic features are not protectible under copyright law.  [Lanard Toys, Ltd. v. Novelty, Inc., 511 F. Supp. 2d 1020, 1037–38 (N.D. Cal. 2007) (citing Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442–43 (9th Cir. 1994)).]

You should keep in mind that what is required to find infringement is not simply general "similarity" of the works but "substantial similarity" of protected elements of those works.  [Id.; Berkic v Crichton, 761 F.2d 1289, 1293–94 (9th Cir 1985).]

I will explain each of these tests in turn.

EXTRINSIC TEST

The "extrinsic" test removes from the analysis of infringement those elements of the copyrighted work that are not entitled to copyright protection.  The party claiming

158

1   infringement – here, Mattel – cannot rely on any similarity in expression resulting from

2   unprotectible elements.  [Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176–77 (C.D.

3   Cal. 2001).]

4

5   The following elements of an original copyrighted work are not entitled to protection

6   under copyright law:

7   • Ideas and concepts.

8   • Common features that are standard or common to the expression of a given idea,

9     called "scenes a faire."

10  • Expression that is not original to the author (in this case Mr. Bryant), such as pre-

11    existing expression that influenced the author consciously or even subconsciously.

12  This is a general list of the common unprotected categories.

13

14  The process of applying the extrinsic test involves what is called "analytic dissection,"

15  which requires you to isolate each element of the Bryant drawings – such as the eyes, the

16  lips, the nose and the element in the drawings –and analyze each one separately.  [See, e.g.,

17  Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1398 (9th Cir. 1997);

18  Lanard Toys, 511 F. Supp. 2d at 1037–38.]  The extrinsic test also involves what is called

19  "filtering," which requires you to filter out all of the unprotected elements of the Bryant

20  drawings.  [See, e.g., Zella v. E.W. Scripps Co., 529 F. Supp. 2d 1124, 1133 (C.D. Cal.

21  2007); Brookhaven Typesetting Servs. v. Adobe Sys., 2007 U.S. Dist. LEXIS 62661, at

22  *22 (N.D. Cal. Aug. 24, 2007).]

23

24  You should apply the extrinsic test as follows:

25

26  *First*, identify those elements in the Bryant sketches that Mattel claims are the expression

27  copied by MGA in the Bratz dolls.  Mattel has the burden of identifying which specific

28  elements of its works have been copied.

*Second*, you should determine which of those elements are entitled to copyright protection and which are not.  In other words, you must filter out from each of the 16 Bryant sketches all ideas, all scenes a faire, and all expression that was not original to Mr. Bryant.  Mattel has the burden of proving which elements in each of the Bryant sketches are entitled to protection.

I will give you a few examples to illustrate the process of filtering.

MGA asserts that Carter Bryant's sketches show a group of four contemporary "sassy" or "bratty" teenage friends of diverse ethnic backgrounds and a "funky urban hip" attitude and style as the basis for a line of fashion dolls.  MGA asserts that all of this is a concept or idea, and is thus not protected by copyright.  If you agree with MGA's position, then the idea and concept of such a line of fashion dolls must be filtered out of any subsequent analysis of claimed similarities.

MGA also asserts that the oversized heads, eyes, feet and lips in the sketches are not forms of expression original to Carter Bryant's sketches, but rather simply reflected common expression that can be found in other dolls, fashion advertisements, and artwork.  If you agree with that contention, then you must "filter out" these elements in connection with your subsequent analysis regarding substantial similarity, because the use of oversized heads, eyes, feet and lips in the sketches was not original to Mr. Bryant.

Common physical features of a teenage girl are not protectible, as they are the features found in real-life teenage girls and depictions of teenage girls.  These features could be considered an idea, or even a fact, and therefore they must be filtered out.  This would apply to things found in nature such as the presence of heads, 2 ears, lips, hair, 2 arms, legs, standard body proportions, and other anatomical features in the drawings.  While the

1  particular expression and unique arrangement of these features can be protected by

2  copyright, the mere presence of those features as found in nature cannot.

3

4  Also, common or standard treatments of the subject matter, what are referred to "scenes a

5  faire," are also not protected by copyright.  Even though they are forms of expression, they

6  lack sufficient originality to be protected.  Basic ideas or treatments "remain forever the

7  common property of artistic mankind."  [Berkic v. Crichton, 761 F.2d 1289, 1293-94 (9th

8  Cir. 1985).]

9

10  Let me give you an example from the world of T.V. screen-plays.  A television show about

11  a police station in a high crime area will inevitably have standard stock features, such as a

12  precinct house, various levels of police employees from a captain down to the beat officers,

13  criminal suspects who are apprehended, defense lawyers, prosecutors, etc.  Such standard

14  plot lines and features may be thought of as creative expression, but no one can claim

15  ownership or exclusive rights to them, and no one T.V. show can accuse another of

16  violating a copyright by allegedly copying and using such standard features in a second

17  show.  [Walker v. Time Life. Films, Inc., 784 F.2d 44, 50 (2d Cir. 1986).]

18

19  As another example, in the world of theatre, devices that are standard plot lines, and are

20  therefore not protectible, include the controlling mother-in-law, the lipstick stained

21  handkerchief, and the butler bent on murder.  All authors can use these common plot

22  devices.

23

24  The fact that the figures in the drawings display fashions, shoes and accessories, by itself,

25  is not protected because the use of fashions, shoes and accessories are also standard or

26  common features in the genre of fashion dolls.  Also, the "style" or general "look" of

27  fashion dolls are not copyrightable.  Nor are conventional cosmetic techniques and looks.

28

1   Also unprotected is expression in the copyrighted work that reflects expression already in
2   the public domain, and therefore free for all to use.  To give one illustration in the context
3   of a doll, "[a]n upturned nose, bow lips, and wide eyes are the 'idea' of a certain type of
4   doll face," and this idea does not belong to any one company but rather is in the public
5   domain.  [Mattel, Inc. v. Goldberger Doll Manufacturing Co., 365 F.3d 133, 136 (2d Cir.
6   2004).]  For another illustration, a 5 ½ inch Warlord doll does not infringe upon a 5 ½ inch
7   Masters of the Universe doll because, though the dolls look remarkably similar, the
8   similarities are all attributable to the unprotectible idea of a superhuman muscleman
9   crouching in a traditional fighting pose.  [Mattel, Inc. v. Azrak-Hamway Int'l Inc., 724
10  F.2d 357, 360 (2d Cir. 1983).]

11

12  These unprotected elements of a work, ideas and concepts, scenes a faire, and unoriginal
13  material, often overlap and are not always easy to separate into categories.  Nevertheless,
14  they are not protected by copyright.

15

16  The parties and their witnesses and experts have pointed to many such issues, asserting
17  that features or elements should, or should not, be filtered out.  You are to determine
18  which, if any, of these features and elements should properly be filtered out in connection
19  with your subsequent analysis regarding substantial similarity.

20

21  Once you have dissected and filtered the Bryant sketches, you are ready to compare the
22  individual elements remaining in a particular sketch that you determine to be protectible
23  with the corresponding elements in the Bratz dolls.  As the parties disagree with what are,
24  and what are not, the similarities between the two, you must next determine what those
25  similarities are.

26

27

28

1   The burden is on Mattel to show by a preponderance of evidence the similarity of each

2   element in the sketches you determine to be protectible.  In considering the extrinsic test,

3   you may take into account the testimony of experts called by each party.

4

5   Now comparing the items in the Bratz dolls that you find to be similar to the protected

6   elements of expression in a particular Bryant drawing owned by Mattel, you should

7   determine whether Mattel has shown by a preponderance of the evidence that the two

8   works are substantially similar.  If you do not so find, then you must find for MGA on the

9   claim of copyright infringement.

10

11  If you do find substantial similarity under the extrinsic test, then you turn to the next step

12  of the analysis, the "intrinsic" test.

13

14  INTRINSIC TEST

15

16  The second step of the infringement analysis, the "intrinsic" test, involves a subjective

17  comparison of the protectible aspects of the "works as a whole."  [Apple Computer, Inc. v.

18  Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994).]

19

20  In this evaluation, you should not consider the unprotectible elements that you filtered out

21  as part of the extrinsic test analysis.  [Cavalier v. Random House, Inc., 297 F.3d 815, 822

22  (9th Cir. 2002); Robert C. Lind, Copyright Law (3d ed. 2006) at 173.]

23

24  The intrinsic test is determined from the perspective of an ordinary, reasonable observer.

25  [Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996).]  Because girls of the age 8-12 are

26  the core intended market for the Bratz dolls, you should consider such consumers as the

27  ordinary, reasonable observers.  [Aliotti v. R. Dakin & Co., 831 F.2d 898, 902 (9th Cir.

28

163

1  1987).]   In other words, you should perform the intrinsic test through the eyes of a

2  discerning 8-12 year old girl who would be a likely user of Bratz dolls.

3

4  The testimony of experts is not to be considered in your evaluation of the intrinsic test.

5

6  The appropriate standard for the intrinsic test is whether the ordinary, reasonable person

7  (the 8-12 year old girl) would find the "total concept and feel" of the two separate works to

8  be substantially similar, bearing in mind that ideas, concepts, and style are not protectible.

9  [Satava v. Lowry, 323 F.3d 805, 812 (9th Cir. 2003).]

10

11  Applying this test, you will determine if Mattel has met its burden of proving infringement

12  under the "intrinsic" test.  If Mattel has not met its burden under the intrinsic test, then you

13  must find for the defendants on the copyright infringement claims.

14

15  **Authority**:  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1990); Swirsky

16  v. Carey, 376 F.3d 841, 845 (9th Cir. 2004); Mattel v. Goldberger Doll Mfg. Co., 365 F.3d

17  133, 136 (2d Cir. 2004); Apple Computer, Inc. v. Microsoft Corporation, 35 F.3d 1435,

18  1447 (9th Cir. 1994); Data East USA, Inc. v. Epyx, Inc., 862 F.2d 204 (9th Cir. 1988);

19  Fryberger v. Int'l Bus. Machines Corp., 812 F.2d 525, 530 (9th Cir. 1987); Thomas v. The

20  Walt Disney Co., 2008 U.S. Dist. LEXIS 14643 (N.D. Cal. Feb. 14, 2008);

21  Bensbargains.Net v. XPBargains.Com, 2007 U.S. Dist. LEXIS 60544 at 8–10 (S.D. Cal.

22  Aug. 16, 2007); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176 (C.D. Cal. 2001).

23  Nimmer on Copyright § 13.03[B].

24

25

26

27

28

# MATTEL'S OBJECTION

Mattel objects to defendants' proposed jury instruction on the following grounds:

1.	Defendants' proposed instruction, which is seven pages in length, is far too long to be useful to the jury.  Instead, it is designed to be highly prejudicial argument.  This instruction should be rejected in its entirety.

2.	As an initial matter, this instruction improperly limits Mattel's copyright claim to "the 16 Bryant drawings that Mattel has registered with the Copyright office."  Mattel's claim encompasses all of the Bratz-related works the jury found that Mattel owns in Phase 1A, whether or not those works were previously registered, as discussed above.

3.	This proposed instruction is biased and objectionable to the extent defendants use the term "a discerning 8-12 year old girl."  The intended audience at issue is "tween" girls, not "discerning" "tween" girls.  Defendants do not cite any authority for the proposition that substantial similarity cannot or should not be determined from the perspective of an average member of the intended audience, as opposed to a "discerning" member, which implies a higher standard.

4.	Defendants' do not -- and cannot -- cite any authority for the contention that the jury is required to filter out "pre-existing expression that influenced the author consciously or even subconsciously."  Any artist builds on his influences, but his or her artistic work still satisfies the originality requirement for copyright protection, as long as he did not slavishly copy a pre-existing work.  See *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345 (1990).  As proposed, Defendants' instruction would deprive the vast majority of copyrightable works of meaningful copyright protection.

5.	Defendants' proposed filtration instructions should be rejected.  The Court has already found that Bryant's designs are original in light of the vast range of possible ways of expressing the human form.  Bryant's expression of the characters he conceived is original, as the Court concluded in rejected defendants' "thin" protection arguments.  The protectability of Carter Bryant's works is a question of law for the Court, not the jury.  *See, e.g., Newton v. Diamond,* 204 F. Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of

165

1  elements in a copyrighted work is a question of law.");  *Stillman v. Leo Burnett Co., Inc.*,

2  720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve

3  findings of fact, but the issue of protectibility/nonprotectibility is an issue of law. Thus,

4  before a court may send a copyright case to the jury, it must satisfy itself that, even

5  assuming copying of an idea and its expression, at least some of what the defendant copied

6  falls into the area of protectible expression.");  *Coston v. Product Movers*, 1990 WL 56516

7  at *3 (E.D. Pa., 1990) ("The question of which aspects of plaintiffs' work are protectible

8  expression as opposed to unprotectible idea is an issue of law.");  *Webloyalty.com, Inc. v.*

9  *Consumer Innovations, LLC*, 2005 WL 468496 at *2 (D. Del. 2005) (holding that while a

10  finding of copyright infringement may involve questions of fact, the protectability of

11  copyrighted material is a question of law);  *Pivot Point Int'l, Inc. v. Charlene Prods.*, Inc.,

12  932 F. Supp. 220, 225 (N.D. Ill 1996) (the issue of whether a work is "copyrightable is a

13  question of law," and the "jury has nothing to do with this subject.");  *ADA v. Delta Dental*

14  *Plans Ass'n*, 1996 U.S. Dist. LEXIS 5809 at *19 n. 15 (N.D. Ill. 1996) (although

15  copyrightability analysis necessarily requires a court to consider some facts surrounding

16  the works at issue, the inquiry "is far more heavily loaded with policy implications than

17  most other standards," making it appropriate for determination by a court instead of a

18  jury);  *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The

19  extrinsic and intrinsic tests both involve findings of fact, but the issue of

20  protectibility/nonprotectibility is an issue of law. Thus, before a court may send a

21  copyright case to the jury, it must satisfy itself that, even assuming copying of an idea and

22  its expression, at least some of what the defendant copied falls into the area of protectible

23  expression.").  There is no reason to instruct the jury in the confusing way proposed by

24  defendants, in light of the fact that this is a question of law -- and a question the Court has

25  already decided -- other than to confuse the jury.

26      6.      Defendants' instruction that "common physical features of a teenage girl are

27  not protectible" is misleading and confusing, as the Court already found that "we regularly

28  take notice of a vast number of particularized differences in facial features, ethnicity, size,

166

1  shape, proportions, hair color, and hair texture and, of course, various particularized
2  combinations and permutations thereof."  Order of July 24, 2008 at 4.

3        7.      Defendants' instruction on filtering is confusing because it does not specify
4  that creative expression of anatomical features (such as eyes or hands) is protectable.
5  Similarly, it is improper for the jury to filter out allegedly pre-existing elements -- such as
6  oversized feet or eyes --- because the Bratz drawings and dolls do not copy such elements,
7  but rather constitute protectable creative expression of them.  Even if the jury undertakes
8  filtering -- which it should not -- it should be instructed that it cannot filter out such
9  creative expression.

10       8.      Defendants erroneously rely on cases such as *Idema v. Dreamworks, Inc.*, 162
11  F. Supp. 2d 1129 (C.D. Cal. 2001), which involve factual—not creative—works.  *See id.* at
12  1144, n.31 ("[s]even of the eight works upon which Plaintiffs base their claims are
13  primarily or purportedly factual in nature").  As the Ninth Circuit has emphasized, "works
14  that are not factual receive much broader protection under the copyright laws because of
15  the endless variations of expression available to the artist." *McCulloch v. Albert E. Price,*
16  *Inc.*, 823 F.2d 316, 321 (9th Cir. 1987), *disapproved on other grounds*, *Fogerty v. Fantasy,*
17  *Inc.*, 510 U.S. 517 (1993).  The *Apple Computer* case on which defendants rely also
18  clarifies that the standards applicable to artistic works are not those it applied.

19       9.      Defendants' instruction suggests that a reasonable jury could find that drawing
20  is "a medium in which the effective range of creative expression is limited."  The millenia-
21  long history of visual art shows that the range of creative expression in visual works is not
22  limited, as it may be in the case of computer software or factual works. *See Jones v.*
23  *Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about
24  his or her theory of the case if it is supported by law and has foundation in the evidence").
25  Defendants add insult to injury by proposing that Mattel bears the burden of proving that
26  Bryant's drawings are entitled to broad protection, but do not state that they would bear the
27  burden of proving the contrary (assuming that the instruction is even appropriate, which it

28

167

1  is not).  The Court has ruled the designs are not "thinly" protected, which this instruction

2  overlooks.

3      10.   Defendants' contention that a style or a look of a fashion doll is not

4  copyrightable is contrary to law.  For instance, in *Pivot Point Int'l, Inc. v. Charlene Prods.,*

5  *Inc.*, 372 F.3d 913 (7th Cir. 2004), a creator of *haute couture* mannequin heads sought

6  protection for his expression of the "hungry look" of runway models.  The Seventh Circuit

7  held "one is not only able to conceive of a different face than that portrayed on the Mara

8  mannequin, but one easily can conceive of another visage that portrays the "hungry look"

9  on a high-fashion runway model. . . .[Accordingly, the plaintiff] is entitled to have his

10 expression of the 'hungry look' protected from copying."  *Id.* at 931.  So here.  Because the

11 expression of a "funky" attitude in Bryant's drawings is copyrightable, copying of that

12 expression by the Bratz dolls is actionable infringement.

13     11.   It is well settled that visual works of art that creatively compile stock features

14 and/or are inspired by prior works -- even were that the case as to Bryant's designs -- are

15 subject to full copyright protection.  *See id.*

16     12.   The proposed instruction misstates the law with respect to the intrinsic test.

17 Ideas are not "filtered out" as part of the intrinsic test.  *See, e.g.*, *Data East USA, Inc. v.*

18 *Epyx, Inc.*, 862 F.2d 204, 208 (9th Cir.1988) ("[a]nalytic dissection ... is not appropriate

19 under [the intrinsic] test because it distracts a reasonable observer from a comparison of

20 the total concept and feel of the works").  Instead, the works must be viewed as a whole.

21     13.   Defendants' proposed instruction misstates the law in suggesting that Mattel

22 must "show the similarity of each element in the sketches you determine to be protectible."

23 Mattel need only show substantial similarity, not similarity in each element or "virtual

24 copying."  The instruction also misstates the law regarding the extrinsic test in other

25 respects.  For example, under the extrinsic test, specific ideas are <u>not</u> filtered out and must

26 be considered.  *See, e.g.*, *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) (holding

27 that "the extrinsic test considers whether two works share a similarity of ideas and

28 expression"); *Jada Toys, Inc. v. Mattel, Inc.*, 2008 WL 450891, at *6 (9th Cir. 2008)

1  (reversing district court's granting of summary judgment because it did not compare the

2  ideas in plaintiff's and defendant's works).

3        14.     Defendants' contention that expert evidence is not admissible with respect to

4  the intrinsic test is contrary to law.  It is well-settled that an expert can testify with respect

5  to the intrinsic test if the infringing work is directed at a specialized audience, here,

6  "tween" girls.  *See, e.g.*, *Kohus v. Mariol*, 328 F.3d 848 (6th Cir. 2003) ("in cases where

7  the audience for the work possesses specialized expertise that is relevant to the purchasing

8  decision and lacking in the lay observer, the trier of fact should make the substantial

9  similarity determination from the perspective of the intended audience. Expert testimony

10  will usually be necessary to educate the trier of fact in those elements for which the

11  specialist will look"); *Dawson v. Hinshaw Music,* Inc. 905 F.2d 731, 736 (4th Cir. 1990)

12  (same); *cf. Lyons P'ship v. Morris Costumes, Inc.*, 243 F.3d 789, 803 (4th Cir. 2001) ("by

13  considering the perspectives of young children in the substantial-similarity analysis, the

14  potential liability for infringement might tend to broaden, given the reduced ability of

15  young children to distinguish between objectively different items and concepts."); *Aliotti v.*

16  *R. Dakin & Co.*, 831 F.2d  898, 902 (9th Cir.1987) ("[because] children are the intended

17  market for the dolls, we must filter the intrinsic inquiry through the perception of

18  children.").  To state the obvious, no member of the jury will be a "tween"

19  girl.  Accordingly, Mattel may – and intends to – introduce expert evidence concerning

20  "tween" girls' perception of the overall similarity of the works at issue."

21        15.     Defendants' proposed instruction, in purporting to describe the *scenes a faire*

22  doctrine, ignores that creative compilations of stock features in a visual work are subject to

23  full copyright protection.  *See, e.g.*, *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d

24  133, 136 (2d Cir. 2004).  The examples given by defendants are all based on literary

25  devices, which are fundamentally distinguishable from visual art.  *See, e.g.*, *Cavalier v.*

26  *Random House, Inc.*, 297 F.3d 815, 826 (9th Cir. 2002) ("The precise factors evaluated for

27  literary works do not readily apply to art works.  Rather, a court looks to the similarity of

28  the objective details in appearance."); Hon. Jon O. Newman, *New Lyrics for an Old*

1  *Melody:  The Idea/Expression Dichotomy in the Computer Age*, 17 Cardozo Arts & Ent. L.

2  J. 691, 698 (1999) (Filtration analysis should not be applied in cases of visual works

3  because "one cannot divide a visual work into neat layers of abstraction in precisely the

4  same manner one could with a text."); *id.* at 697, nn.36-37 (criticizing *Country Kids 'N

5  City Slicks, Inc. v. Sheen*, 77 F.3d 1280 (10th Cir. 1999), which applied filtration in a doll

6  case).

7        16.    The examples proposed by defendants are misleading and inaccurate.  The

8  "stock features" referred to in defendants' TV show and play examples, neither of which is

9  a visual work of art, bear no resemblance to the *creative variations* on features—such as

10 almond-shaped eyes with three eyelashes and heavy eye makeup—that Bryant's drawings

11 employed.  Moreover, defendants again ignore that creative compilations of stock features

12 are subject to full copyright protection.  Nor is there any reason why "examples" such as

13 those proposed by defendants should be given at all.

14       17.    Relatedly, defendants mischaracterize the *Mattel v. Goldberger Doll* case in

15 quoting only the portion of the opinion that states that "[a]n upturned nose, bow lips, and

16 wide eyes are the 'idea' of a certain type of doll face" and hence are not protectable as an

17 idea.  Defendants fail to report that the *Mattel v. Goldberger Doll* opinion goes on to say

18 that the variations on this doll face are immensely important commercially and fully

19 protectable legally.  *See* 365 F.3d at 136 ("We can surmise that in the highly competitive,

20 billion-dollar doll industry, getting the doll's face and expression exactly right is crucial to

21 success.").

22       18.    Defendants do not cite any authority that in deliberations the jury must start

23 with the extrinsic test and consider the intrinsic test only if it finds that Mattel has met its

24 burden on the extrinsic test.

25       19.    This highly prejudicial instruction should not be given.  As the Court has

26 found, the range of possible expression of human anatomy renders Bryant's original

27 expressions fully protectible.  Moreover, were there any preexisting elements, their

28 creative compilation would also be protectible.  A simple instruction on comparing

170

1 specific elements of expression and ideas in two works under the extrinsic test and the

2 overall look of the two works under the intrinsic test will explain the required task to the

3 jury, and not hopelessly confuse it as this instruction would.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Responses to Objections to MGA Parties' Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**MGA PARTIES' RESPONSE**

1.      Mattel's objection that MGA's proposed instruction on the multiple steps of the copyright infringement analysis is too lengthy is consistent with its general approach to the jury instructions: Mattel would like the jury to learn as little as possible about copyright law, in the hopes that the jury will be unable to understand and properly apply the relevant legal principles.  As the Court recognized in its July 24, 2008 Order, the process for evaluating a claim of copyright infringement under Ninth Circuit law is complex in that it requires multiple stages of analysis, each stage requiring the examination of various elements and factors.  See, e.g., Smith v. Jackson, 84 F.3d 1213, 1221 n.9 (9th Cir. 1996) (describing many copyright infringement cases as "legally and technically complicated … in which the jury may be tempted to seize upon the first opportunity to dispose of a case in order to avoid dealing with a case's other, perhaps more difficult, aspects").  Mattel's objection on the ground that MGA's proposed instruction is unduly long is a transparent attempt to obscure the real issues in the case from the jury.

2.      Concerning Mattel's argument that its copyright infringement claims are not limited to the 16 Carter Bryant drawing registered by Mattel and included in the Final Pretrial Conference Order, see MGA Parties' Response to Mattel's Objections to MGA's proposed Preliminary Instruction.

3. & 14.      There are a number of errors in Mattel's unprecedented position that "an expert can testify with respect to the intrinsic test if the infringing work is directed at a specialized audience."  First, according to Mattel this principle is "well-settled," yet Mattel is unable to provide a single citation to any Ninth Circuit authority for it.  Second, none of the cases Mattel cites are relevant here because the courts in those cases were not bound by the clear Ninth Circuit rule that expert testimony is not permitted with regard to the intrinsic test.  See, e.g., Apple Computer Inc. v. Microsoft Corp., 35 F.3d 1435, 1442 (9th Cir. 1994); Olson v. Nat'l Broad. Co., 855 F.2d 1446, 1449 (9th Cir. 1988).  Third, those cases are also factually distinguishable because the audience for the fashion dolls at issue here (8-12 year old girls) is not an audience of "specialized expertise."  Cf. Kohus v.

1    <u>Mariol</u>, 328 F.3d 848, 858 (6th Cir. 2003) (a "rare" case in which the intended audience
2    was not the lay public); <u>Dawson v. Hinshaw Music, Inc.</u>, 905 F.2d 731, 737 (4th Cir.
3    1990) (refining the ordinary observer test in the context of choral directors who possess
4    specialized expertise relevant to the selection of musical arrangements).    There are
5    numerous reported decisions in copyright infringement cases involving dolls and other
6    toys, many of which have been litigated by Mattel.  Yet Mattel has not cited to a single one
7    in support of its position that expert testimony is permitted to inform the intrinsic analysis.

8         While Mattel's argument regarding the need for expert testimony on the subjective
9    analysis is wrong, there is nothing objectionable about the introduction of expert or lay
10   testimony regarding the perceptions, tastes and preferences of 8-12 year old girls.

11        4.-9.  Mattel's objections to the analytic dissection and filtering analysis proposed
12   by MGA are wrong.  Visual works are subject to the same general standards of analytic
13   dissection and filtering as are other copyrighted works.  The Supreme Court held in <u>Feist</u>
14   <u>Publications, Inc. v. Rural Telegraph Service Co.</u>, 499 U.S. 340 (1991), that "[t]he mere
15   fact that a work is copyrighted does not mean that every element of the work may be
16   protected.  Originality remains the sine qua non of copyright; accordingly, copyright
17   protection may extend only to those components of a work that are original to the author."
18   Id. at 348 (emphasis added).  In other words, it is only copying of copyrightable elements
19   of a work that is answerable under the federal Copyright Act.

20        Consistent with <u>Feist</u>, applicable Ninth Circuit precedent holds that, because only
21   those elements of a work that are protectible can be compared when it comes to the
22   question of copyright infringement, the unprotectible elements of the work need to be
23   filtered out and disregarded.  As summarized in <u>Cavalier v. Random House, Inc.</u>, 297 F.3d
24   815 (9th Cir. 2002):

25        A court "must take care to inquire only whether 'the protectible elements,
26        standing alone, are substantially similar.'"  <u>Williams v. Crichton</u>, 84 F.3d 581,
27        588 (2d Cir. 1996) (emphasis in original) (citation omitted); <u>accord Apple</u>
28        <u>Computer, Inc. v. Microsoft Corp.</u>, 35 F.3d 1435, 1442-43 (9th Cir. 1994).

173

1   Therefore, when applying the extrinsic test, a court must filter out and

2   disregard the non-protectible elements in making its substantial similarity

3   determination.  See Shaw [v. Lindheim], 919 F.2d [1353, 1361 (9th Cir.

4   1990)] (applying the extrinsic test to determine "whether there is substantial

5   similarity between the protected expression of ideas in two literary works")

6   (emphasis added); Berkic v. Crichton, 761 F.2d 1289, 1293-94 (9th Cir. 1985)

7   (rejecting consideration of general ideas as well as scenes-a-faire in

8   determining substantial similarity under the extrinsic test).

9   297 F.3d at 822-23.  See also Apple Computer Inc. v. Microsoft Corp., 35 F.3d 1435, 1439

10  (9th Cir. 1994) ("When the range of protectable and unauthorized expression is narrow,

11  the appropriate standard for illicit copying is virtual identity.").   The MGA Parties'

12  proposed instruction properly focuses the jury on the protectable elements of Mattel's

13  work, rather than every element.

14      In Cavalier, the Ninth Circuit expressly held that "[t]he basic mode of analysis for

15  comparison of the literary elements applies to comparison of the art work.  As with literary

16  works, unprotectible elements should not be considered when applying  the extrinsic test to

17  art work."  297 F.3d at 825-26.

18      Similarly, Apple Computer involved a claim that the "artistic look" of Microsoft's

19  user interface was "substantially similar" to Apple's copyrighted user interface.  The Ninth

20  Circuit affirmed the district court's decision to "analytically dissect" Apple's user interface

21  to "eliminate" unprotectible elements, holding that: "The district court's approach was on

22  target."  35 F.3d at 1439. The court further stated:

23      [T]he extrinsic test now objectively considers whether there are substantial

24      similarities in both ideas and expression, whereas the intrinsic test continues to

25      measure expression subjectively.  Because only those elements of a work that

26      are protectable and used without the author's permission can be compared

27      when it comes to the ultimate question of illicit copying, we use analytic

28

174

1   dissection to determine the scope of copyright protection before works are

2   considered "as a whole."

3   Id. at 1442-43; see also id. at 1446 ("the party claiming infringement may place 'no

4   reliance upon any similarity in expression resulting from' unprotectable elements.

5   Otherwise, there would be no point to the extrinsic test, or to distinguishing ideas from

6   expression. … [T]he unprotectable elements have to be identified, or filtered, before the

7   works can be considered as a whole.").

8   This framework has been applied in a variety of cases involving graphic or artistic

9   works, like Satava v. Lowry, 323 F.3d 805 (9th Cir. 2003) the "jellyfish in glass" case,

10  which unquestionably filtered out elements of the art at issue.  There, the Ninth Circuit

11  held that "ideas, first expressed by nature, are the common heritage of humankind, and no

12  artist may use copyright law to prevent others from depicting them."  Id. at 812.  The

13  Ninth Circuit's overriding concern in Satava was to prevent copyright protection from

14  "cheat[ing] the public domain" by expanding to the point of providing a monopoly on the

15  "use of ideas that properly belong to us all."  Id.  See also Dyer v. Napier, 2006 U.S. Dist.

16  LEXIS 68990 (D. Ariz. 2006) (filtering when comparing photo of mountain lion with cub

17  to allegedly infringing sculpture); see also Reece v. Island Treasures Art Gallery, Inc., 468

18  F. Supp. 2d 1197 (D. Haw. 2006) (applying filtering in action involving "stained glass

19  artwork").

20  The Apple Computer court set forth the following three part test to be used in

21  connection with copyright infringement cases involving all forms of copyrighted work,

22  including visual works like the Bryant sketches:

23  (1)   The plaintiff must identify the source(s) of the alleged similarity

24  between his work and the defendant's work.

25  (2)   Using analytic dissection, and, if necessary, expert testimony, the court

26  must determine whether any of the allegedly similar features are protected by

27  copyright….   [U]nprotectable ideas must be separated from potentially

28  protectable expression; to that expression, the court must then apply the

175

1   relevant limiting doctrines in the context of the particular medium involved,

2   through the eyes of the ordinary consumer of that product.

3   (3)   Having dissected the alleged similarities and considered the range of

4   possible expression, the court must define the scope of the plaintiff's copyright -

5   that is, decide whether the work is entitled to "broad" or "thin" protection.

6   Depending on the degree of protection, the court must set the appropriate

7   standard for a subjective comparison of the works to determine whether, as a

8   whole, they are sufficiently similar to support a finding of illicit copying.

9   35 F.3d at 1443.  This is precisely the framework used in MGA's proposed instruction.

10   The Ninth Circuit's application of "analytical dissection" and "filtering" to visual

11   works is also confirmed by the law review article referenced by Mattel in connection with

12   its partial summary judgment motion, Michael D. Murray, Copyright, Originality, and the

13   End of the Scenes a Faire and Merger Doctrines for Visual Works, 58 Baylor L. Rev. 779

14   (2006).  (See Mattel MSJ Reply at 13.)  Although the author (like Mattel) clearly disagrees

15   with and is hostile to the Ninth Circuit approach, he confirms that the Ninth Circuit

16   requires that visual works, like other copyrighted works, must be filtered of unprotectible

17   elements:

18   Apple drove a stake through the heart of evaluation of visual works: There

19   would be a two stage test with analytical dissection at each stage and rejection

20   of parts that were supposedly subject to the merger and scenes a faire

21   doctrines.  There would be no subjective evaluation of the total concept and

22   feel of any visual work that allegedly merged with its underlying ideas (there

23   being a drastically limited number of ways of depicting the idea visually) or

24   allegedly embodied stock images that must be copied in order to depict the

25   idea.

26   In Cavalier v. Random House, Inc., Apple's holding was interpreted to mean

27   that in visual art cases, the court is to filter out unprotectable elements in both

28   the extrinsic and intrinsic similarity tests.

176

1  58 Baylor L. Rev. at 810-11.

2      It is also noteworthy that Mattel argued for this very same approach in connection

3  with the district court proceedings in the Goldberger case referenced repeatedly by Mattel

4  in its opposition to MGA's proposed instruction, in its briefs in this case, and by Mattel's

5  copyright law expert, Professor Robert Lind, in his report.  Thus, in connection with the

6  plaintiffs summary judgment motion, Mattel argued:

7          To determine whether Radio City misappropriated protected expression, or

8      illegally copied, the Court should (i) isolate the elements of Mattel's Barbie

9      Copyrights that are protectible from those that are unprotectible, and (ii)

10     determine whether there is a "substantial similarity" between the Radio City

11     Head and the protectible elements of the Barbie Copyrights…. "Where, as

12     here, we compare products that have both protectible and unprotectible

13     elements, we must exclude comparison of the unprotectible elements from our

14     application of the ordinary observer test."

15  (Memorandum of Plaintiff Mattel, Inc. in Opposition to Defendant' Motion For Summary

16  Judgment at 6, in Mattel Inc., v. Radio City Entertainment (S.D.N.Y. No. 00 Civ. 6272

17  (JSR)), filed April 16, 2001)) (citations omitted, emphasis added).)

18      Thus, contrary to Mattel's argument, the "filtering" analysis included in MGA's

19  proposed instruction is not only consistent with Ninth Circuit law, it is required by it.

20      Mattel's argument that MGA's "proposed filtration instructions should be rejected"

21  in light of the Court finding that "Bryant's designs are original" is wrong.  Although

22  continually raised as an issue by Mattel, MGA has never disputed the originality of

23  Bryant's drawings.  This of course does not mean that all elements in the Bryant drawings

24  are entitled to protectable and the Court has held that the jury must apply the Ninth

25  Circuit's "analytic dissection" and "filtering" test to remove unprotected elements from the

26  Bryant drawings.  The Court has declined to perform this analysis as a matter of law.

27  Mattel's alternative "compilation" of "unprotected elements" theory belies Mattel's

28  argument that each of the elements in the Bryant drawings are protectable.  Although

177

1  MGA in fact believes that Bryant's drawings are entitled to only "thin" "virtually
2  identical" protection, particularly as relates to compilation protection, the Court has
3  decided otherwise.

4      10.    With respect to Mattel's paragraph 10, the general style of a fashion doll is not
5  protected by copyright law, because a mere "style" is not in itself particularized
6  expression.  Even the case cited by Mattel illustrates this very point.  The issue in <u>Pivot</u>
7  <u>Point Int'l, Inc. v. Charlene Prods., Inc.</u>, 372 F.3d 913 (7th Cir. 2004), was whether
8  plaintiff's mannequin, designed with a particular facial expression meant to evoke a
9  "hungry look" was copyrightable at all.  In holding that plaintiff's expression of this look
10  was protected from copying, <u>see id</u>. at 931, the court cited <u>Mattel, Inc. v. Goldberger Doll</u>
11  <u>Mfg. Co.</u>, 365 F.3d 133 (2d Cir. 2004), as having "rejected the idea that a particular
12  expression of features on a doll's face was not subject to copyright protection."  372 F.3d
13  at 931.  Thus, it was not that the portrayal of a "hungry look" on a mannequin was
14  copyrightable (Mattel's contention herein), but rather that the specific facial features and
15  expression of this mannequin were protected from copying.  <u>See id</u>. at 931 ("[O]ne easily
16  can conceive of another visage that portrays the 'hungry look' on a high-fashion runway
17  model.").  <u>See also</u> <u>Galiano v. Harrah's Operating Co.</u>, 426 F.3d 411, 422 (5th Cir. 2005)
18  (questioning the significance of Pivot Point, in the context of denying copyrightability in
19  the design of uniforms for casino employees). (<u>Cf.</u> TX 625 (April 8, 2005 Copyright
20  Office Letter) at 2 (noting that "the styling or general 'look' of each doll with its various
21  outfits" are not within copyright subject matter).)

22      11. & 15.    With regard to Mattel's argument that "works of art that creatively
23  compile stock features and/or are inspired by prior works are subject to full copyright
24  protection," <u>see</u> MGA's responses to paragraphs 4.-9. above.  Also, to the extent that
25  Mattel takes the position that doll features are "creative compilations of stock features,"
26  MGA agrees with this position, but notes that Mattel ignores the fact that such
27  "compilations" are only entitled to "limited" or "thin" protection, under which an accused
28  work must be judged using the "virtually identical" standard of infringement.  <u>See</u>, <u>e.g.</u>,

1  Mattel v. Goldberger, 365 F.3d 133, 135-36 (2d Cir. 2004) ("The evidence Mattel
2  submitted is sufficient to justify copyright protection for the central expressive features of
3  Barbie's face. . . .   The protection that flows from such a copyright is, of course, quite
4  limited. The copyright does not protect ideas; it protects only the author's particularized
5  expression of the idea."); Satava v. Lowry, 323 F.3d 805, 812 (9th Cir. 2003) ("thin"
6  protection against "virtually identical" copying); Apple Computer, Inc. v. Microsoft Corp.,
7  35 F.3d 1435, 1446-47 (9th Cir. 1994) (same); Harper House, Inc. v. Thomas Nelson, Inc.,
8  889 F.2d 197, 205 (9th Cir. 1989); Cosmos Jewelry Ltd. v. Po Sun Hon Co., 470 F. Supp.
9  2d 1072, 1082-84 (C.D. Cal. 2006); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129,
10  1178 (C.D. Cal. 2001).   The Court has already properly rejected Mattel's argument that
11  analytic dissection and filtering should not be applied to the Bryant drawings.

12        12.    In Paragraph 12, it appears that Mattel is mischaracterizing MGA's proposed
13  instruction.  Mattel argues that MGA's proposed instruction misstates the law with respect
14  to the intrinsic test because in the Ninth Circuit, ideas are not "filtered out" as part of the
15  intrinsic test.  MGA's proposed instruction does not state that ideas are to be filtered out as
16  part of the intrinsic test; rather, MGA's instruction instructs the jury to conduct analytic
17  dissection and filtering as part of the extrinsic test, which then determines the "appropriate
18  standard for the intrinsic test."   Thereafter, MGA notes that ideas and concepts are not
19  protectible under either test, which is an uncontroversial proposition stated by the clear
20  language of the Copyright Act.  17 U.S.C. §102(b).

21        13.    With respect to Mattel's paragraph 13, once unprotected elements of the work
22  are filtered out, only the protectable elements are analyzed for infringement.  See Idema v.
23  Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176 (C.D. Cal. 2001) ("This part of the
24  [intrinsic] test measures whether there is a sufficient level of 'similarity' between the
25  copyrightable 'elements' of a plaintiff's work, and the equivalent 'elements' in an
26  allegedly infringing work.").   Concerning Mattel's statement that "ideas" can be
27  considered as part of the Ninth Circuit's "extrinsic test," it is undisputed that copyright law
28  does not extend to "ideas" or "concepts" and its own copyright expert, Robert Lind,

1  conceded that it would be reversible error to base a finding of infringement on "ideas" or
2  "concepts" present in a work.  See MGA MIL No. 11.

3        16.    The examples included in MGA's proposed instruction are not misleading or
4  inaccurate and they are necessary to provide the jury with an understanding of the
5  fundamental principles needed to conduct the analytical dissection and filtering analysis.
6  Mattel's argument concerning "creative compilations" is addressed above.

7        17.    MGA has not mischaracterized the Mattel v. Goldberger Doll decision.  In
8  that case, the Second Circuit held that the "Barbie visage" was copyrightable since its
9  "creation involved whatever minimal creativity or originality is need to satisfy the
10 requirement of authorship. The evidence Mattel submitted is sufficient to justify copyright
11 protection for the central expressive features of Barbie's face." 365 F.3d at 135. The Court
12 went on to explain, however, that the protection afforded to Mattel for its copyright was
13 "quite limited" and only extended to Mattel's "particularized expression":

14        The protection that flows from such a copyright is, of course, quite limited.
15        The copyright does not protect ideas; it protects only the author's
16        particularized expression of the idea.  Thus, Mattel's copyright in a doll
17        visage with an upturned nose, bow lips, and widely spaced eyes will not
18        prevent a competitor from making dolls with upturned noses, bow lips, and
19        widely spaced eyes, even if the competitor has taken the idea from Mattel's
20        example, so long as the competitor has not copied Mattel's particularized
21        expression.  An upturned nose, bow lips, and wide eyes are the "idea" of a
22        certain type of doll face.  That idea belongs not to Mattel but to the public
23        domain. But Mattel's copyright will protect its own particularized expression
24        of that idea and bar a competitor from copying Mattel's realization of the
25        Barbie features.

26 Id. at 135-36 (citations omitted).

27        18.    The steps included in MGA's proposed instruction are ordered
28 consistent with Ninth Circuit precedent and this Court's July 24, 2008 Order.

19.   MGA's proposed instruction is necessary to properly instruct the jury on the process it will need to undertake in accurately applying the extrincis/intrinsic test and the analytic dissection and filtering that are part of that test.   MGA understands that Mattel does not want the jury to actually apply the proper test, and a "simple instruction" of the sort that Mattel proposes will provide the jury with absolutely no guidance in properly carrying out its duties in determining infringement.

1
2
3
4
5

**INSTRUCTION NO.      **

**COPYRIGHT INFRINGEMENT –**

**COMPARING A TWO-DIMENSIONAL WORK WITH A THREE-**

**DIMENSIONAL WORK**

6   The Bryant sketches are 2-dimensional works, while the Bratz dolls are 3-dimensional
7   works.  While those facts may complicate your analysis under the extrinsic and intrinsic
8   tests, the copyright in a 2-dimensional work can be infringed by a 3-dimensional work.
9   However, the copyright in a 2-dimensional work only covers what is shown on the face of
10  the work.  For example, if a Bryant sketch only shows the front view of a figure, the
11  copyright does not cover the rear or side view of that figure, or anything else that is not
12  specifically visible in that particular sketch.  Whether in this case the Bratz dolls (3-
13  dimensional works) infringe the Bryant sketches (2-dimensional works), is for you to
14  decide, using the two-part analyses already described.

15
16  **Authority**: 1-2 Nimmer on Copyright § 2.08(C)(2).

17
18
19
20
21
22
23
24
25
26
27
28

# MATTEL'S OBJECTION

Mattel objects to defendants' proposed jury instruction on the following grounds:

1.      This proposed instruction is argumentative and unnecessarily complicated. The statement in this instruction that the 2-D to 3-D issue "may complicate your analysis under the extrinsic and intrinsic tests" is unnecessary and argumentative.

2.      This proposed instruction is erroneous as a matter of law to the extent it informs the jury that a drawing is only copyrightable as to what is specifically visible in the drawing.  Rather, if a defendants' work is a "picturization" of the copyrighted work, or if the defendants' work consists of characters depicted in a copyrighted work, there is infringement even if the medium changes, and even if the copyrighted work is two-dimensional.  *See, e.g.*, *King Features Syndicate v. Fleischer*, 299 F. 533, 534, 538 (2d Cir. 1924) (copyright of a comic book infringed by three-dimensional dolls of a character); *Fleischer Studios v. Ralph A. Freundlich, Inc.*, 73 F.2d 276, 278 (2d Cir. 1934) (drawing of Betty Boop character infringed by substantially similar doll:  "a three-dimensional form of doll, is an infringement of the two-dimensional picture or drawing"); *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1222-23 (9th Cir. 1997) ("making decisions that enable one to reproduce or transform an already existing work into another medium or dimension - though perhaps quite difficult and intricate decisions - is not enough to constitute the contribution of something 'recognizably his own,'" even where those decisions are "artistic").  The intrinsic test is a subjective test that focuses on "whether the ordinary, reasonable audience would recognize the defendant's work as a 'dramatization' or 'picturization' of the plaintiff's work." *Berkic v. Crichton,* 761 F.2d 1289, 1292 (9th Cir. 1985)(citing *Litchfield v. Spielberg,* 736 F.2d 1352, 1357 (9th Cir.1984)).

3.      The only authority cited by defendants in support of their erroneous proposed instruction -- *Nimmer on Copyright* -- does not support their assertion that the copyright of a two-dimensional work only covers what is shown on the face of the work.  Indeed,

1 | *Nimmer* makes clear that in many cases the mere conversion of a work from two-
2 | dimensions to three-dimensions may not be original.

3 |     4.     Mattel objects to defendants' use of the pejorative term "sketches" when
4 | referring to Bryant's drawings.

5 |     5.     Mattel requests that the Court adopt Mattel's proposed instruction, which
6 | provides the jury with an accurate statement of the law and is not argumentative. *See*
7 | Mattel's Proposed Jury Instruction re Copyright Infringement—Three-Dimensional Works
8 | Can Infringe Two-Dimensional Works.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MGA PARTIES' RESPONSE**

1.      Mattel's objection that MGA's proposed instruction is "argumentative and unnecessarily complicated" is, again, consistent with Mattel's preference that the jury be given as little information as possible, likely in the hopes that the jury will have difficulty understanding and engaging in the analysis that is required under copyright law. Comparing works in different media for copyright infringement is complicated both conceptually and in application, a non-controversial proposition which is recognized by the courts.  See Ideal Toy Corp. v. Kenner Prods. Div. of Gen. Mills Fun Group, Inc., 443 F. Supp. 291, 301 (S.D.N.Y. 1977) (noting that the infringement question is "made even more difficult than normal" where the allegedly infringing item is "in a different medium and of a different nature from the copyrighted item, as in this case where the Court is asked to determine whether a three-dimensional toy infringes the copyright in a two-dimensional movie").

2.-3.   Mattel also objects to this instruction to the extent it states (correctly) that the copyright in Bryant's drawings only extend to what is visible in the drawings.  Mattel does not explain how the copyright in a drawing could extend to items not visible in this drawing or how such "invisible" elements could be infringed.   Moreover, Mattel's "picturization" argument is improper and refers to an outdated concept used almost exclusively historically to refer to the process of comparing an alleged infringing audio visual work such as a film with a literary work.  See, e.g., Berkic v. Crichton, 761 F.2d 1289, 1292 (9th Cir. 1985); Cain v. Universal Pictures Co., 47 F. Supp. 1013, 1016 (C.D. Cal. 1942); see also Anderson v. Stallone, 1989 U.S. Dist. LEXIS 11109, at *35 11 U.S.P.Q. 2d 1161 (C.D. Cal. Apr. 26, 1989).   Accord 4-13 David Nimmer, Nimmer, on Copyrights § 13.03[E][2] (2008) (questioning the validity of the related "audience" test.). Any references to "picturization" are inappropriate, vague and ambiguous, and will only confuse the jury with respect to the "total concept and feel" standard actually applied under the intrinsic test.  See Lanard Toys, Ltd. v. Novelty, Inc., 511 F. Supp. 2d 1020,

1    1037–38 (C.D. Cal. 2007) (citing <u>Litchfield v. Spielberg</u>, 736 F.2d 1352, 1357 (9th Cir.

2    1984)).

3         4.    Although the term "sketches" is not "pejorative" – indeed, Mattel's own art

4    expert used that term to describe Bryant's drawings – MGA does not object to using the

5    term "drawing."

6         5.    MGA's proposed instruction is a proper and balanced instruction on this issue

7    and should be used by the Court.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **INSTRUCTION NO.  ___**

2    **COPYRIGHT INFRINGEMENT – MULTIPLE COPYRIGHT REGISTRATIONS**

3

4    Mattel's copyright claims are based on 16 separate copyright registrations, each one

5    registering a different Carter Bryant drawing.   Each of these drawings is only entitled to

6    copyright protection for the original expression contained in the particular drawing.

7    Mattel cannot extend or enhance its rights by treating two or more of the sketches as a

8    compilation or as a unified work.   In other words, Mattel cannot pick and choose elements

9    from more than one of these drawings to and combine those elements to based its

10   infringement claim against a particular Bratz doll.   Each individual drawing is a

11   copyrighted "work" that must be judged based on its own protectible content in a

12   comparison with a particular one of the allegedly infringing Bratz dolls.   This means that,

13   in determining whether Mattel has met its burden of proving infringement, you must

14   separately analyze each of the 16 drawings under both the extrinsic and intrinsic tests.

15

16   **Authority**:  Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1144 n.31 (C.D. Cal. 2001);

17   see also Green v. Schwarzenegger, 1995 U.S. Dist. LEXIS 14031 at ** 61-62 (C.D. Cal.

18   July 17, 1995) ("Plaintiff cannot pick and choose characteristics from any number of

19   characters in his work to search for alleged similarities with a single character in

20   defendants' work."); 9 Patry on Copyright § 9:66 (2008).

21

22

23

24

25

26

27

28

# MATTEL'S OBJECTION

Mattel objects to defendants' proposed jury instruction on the following grounds:

1.     This proposed instruction is not based on any Ninth Circuit Model Instruction and is unnecessary and argumentative.

2.     This proposed instruction improperly limits Mattel's copyright claims to "the 16 Bryant drawings that Mattel has registered with the Copyright office."  Mattel's claim encompasses all of the Bratz-related works the jury found that Mattel owns in Phase 1A, whether or not those works were previously registered, as discussed above.

3.     Defendants take the absurd position that a single work cannot infringe elements of several works.  In other words, defendants contend that a Bratz doll would not infringe if it copies the head from one drawing but copies the doll's body from another drawing.  That is not the law.  This case, therefore, is no different from *Castle Rock Entm't v. Carol Publishing Group, Inc.*, 150 F.3d 132 (2d Cir. 1998), where the Second Circuit held that a book entitled "Seinfeld Aptitude Test" infringed the plaintiff's copyrights in numerous episodes of "Seinfeld," because even though the amount of expression copied from each episode was relatively small. *See id.* at 138 ("it would elevate form over substance to conclude that *The SAT* 's copying of 643 fragments from 84 individually copyrighted *Seinfeld* episodes is indistinguishable from a case in which a 634-question trivia quiz book poses a few questions from each of 84 unrelated television programs, books, movies, or any combination of creative works that do not constitute a discrete series of works.")  Here, as in *Castle Rock*, Bryant's drawings are a single series of depictions of the same four characters (i.e., Bratz), developed for a specific purpose, (i.e., creating Bratz dolls).  Accordingly, it would be wholly artificial for the jury to be instructed to consider each Bratz drawing separately.  Indeed, defendants do not cite any authority to support their instruction.  For instance, in *Idema v. Dreamworks, Inc.*, 162 F. Supp.2d 1129, 1144 n. 31 (C.D.Cal. 2001), the plaintiff claimed that the defendant's film infringed elements of eight separate texts, but did not claim a copyright in the combination of the works.  Here,

1 however, Mattel claims that defendants infringed Bryant's drawings both individually and

2 in combination.

3         4.     *Idema v. Dreamworks*, 162 F. Supp. 2d 1129 (C.D.Cal. 2001) does not

4 support defendants' argument.  As an initial matter, the cited statement in Idema is of

5 dubious authority as it was made in the footnote, and is not supported by any cited

6 authority.  *See* 162 F. Supp. 2d at 1144 n. 31.  Further, in Idema the purportedly

7 copyrightable elements did not appear in more than one work.  Here, certain features of the

8 Bratz drawings and dolls (e.g., shape of the eyes, body proportions, etc.) are similar

9 throughout the separately copyrighted works.  It would be artificial to consider them in

10 isolation.  Finally, *Idema* concerned infringement of a factual work.  As set forth

11 elsewhere, the standards for analyzing infringement of visual works is different.

12        *Green v. Schwarzenneger,* an unpublished opinion, is also easily distinguishable.  In

13 *Green*, the plaintiff contradicted himself by arguing first that a character in the defendant's

14 film was similar to one character in his screenplay, and then changed his tune to also claim

15 similarity to another character in the screenplay.  Here, Mattel's allegations of infringement

16 are internally consistent.  Defendants' citation to the Patry treatise is similarly

17 misplaced.  Although Patry criticizes "cherry-picking," he does not cite any Ninth Circuit

18 authority barring the practice, and expressly notes that the Second Circuit declined to

19 reject it in *Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc*., 150 F.3d 132 (2d

20 Cir. 1998).

21        In any case, Mattel is not "cherry picking" at all.  MGA based its line of products on

22 Mattel's copyrighted works.  It would be wholly artificial to say that MGA is entitled to

23 copy different aspects of different copyrighted works owned by Mattel, to the point that it

24 engaged in wholesale copying, so long as it picks and chooses carefully, taking only small

25 portions from any individual work.  Where, as here, Mattel owns dozens of related

26 copyrighted works, the jury should decide whether the defendants copied or adapted that

27 series of works in creating their own works -- not just individual drawings, viewed in

28 isolation.

**MGA PARTIES' RESPONSE**

1.    Mattel's objection that this instruction is unnecessary and argumentative is yet another example of Mattel's effort to deny the jury any guidance on how to apply complex copyright principles to the factual issues in this case.

2.    Concerning Mattel's argument that its copyright infringement claims are not limited to the 16 Carter Bryant drawing registered by Mattel and included in the Final Pretrial Conference Order, see MGA Parties' Response to Mattel's Objections to MGA's proposed Preliminary Instruction.

3.-4.    Mattel's attempt to distinguish the cases cited by MGA is not persuasive in that Mattel claims that defendants "infringed Bryant's drawings both individually and in combination" but fails to explain what that might mean—or how that is any different from the plaintiff's claim of infringement based on eight works that collectively comprised "Idema's story" in Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1144 (C.D. Cal. 2001).   Contrary to Mattel's assertion, this case is in fact quite different from Castle Rock Entm't v. Carol Publ'g Group, Inc., 150 F.3d 132 (2d Cir. 1998), which involved a television series, over the course of which characters uniformly played by the same actors were developed in a unified sequence.  Here, Carter Bryant's initial concept drawings were exploratory and preliminary in nature, and they are far from uniform in their expression. As MGA's experts have pointed out, for example, there are a number of significant differences among Carter Bryant's drawings, such that they cannot reasonably be considered as a unified work. (See Expert Report of Glenn Vilppu (dated March 14, 2008) at ¶ 15.)  Mattel is apparently trying to avoid having to identify any specific comparisons between the drawings and the dolls for the jury, as a means of enforcing its position on substantial similarity.

5.    MGA's proposed instruction is proper and should be adopted by the Court.

## INSTRUCTION NO. 17.20

## DERIVATIVE LIABILITY: VICARIOUS INFRINGEMENT

If you find that MGA or MGA Hong Kong infringed Mattel's copyrights in the Bryant drawings, you may consider Mattel's claims that Isaac Larian vicariously infringed those copyrights. Mattel has the burden of proving each of the following by a preponderance of the evidence:

    1.    That Mr. Larian profited directly from the infringing activity of MGA or MGA Hong Kong;

    2.    That Mr. Larian had the right and ability to supervise the infringing activities of MGA and MGA Hong Kong; and

    3.    That Mr. Larian failed to exercise that right and ability.

If you find that Mattel proved each of these elements, your verdict should be for Mattel as to Mr. Larian if you also find that MGA or MGA Hong Kong infringed Mattel's copyright. If, on the other hand, Mattel has failed to prove any of these elements with respect to Mr. Larian, your verdict should be for Mr. Larian.

**Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.20 (2007).

1 **MATTEL'S OBJECTION**

2

3      Mattel objects to defendants' proposed jury instruction regarding Vicarious

4 Infringement on the following grounds:

5      1.      This proposed instruction -- although based on the Ninth Circuit Model

6 Instruction -- is confusing absent a paragraph explaining to the jury the relationship

7 between Mattel's claims for vicarious and contributory infringement in this case.  *See*

8 Mattel's Proposed Jury Instruction re Vicarious Infringement.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MGA PARTIES' RESPONSE**

1.      Mattel concedes that MGA's proposed instruction follows the Ninth Circuit's model instruction.   The additional paragraph Mattel proposes to add to the model instruction is inappropriate.   <u>See</u> MGA's Objections to Mattel's Proposed Instruction re Vicarious Liability.

2.      MGA's proposed instruction tracks the Ninth Circuit model instruction and should be used by the Court.

## INSTRUCTION NO. 17.21

## DERIVATIVE LIABILITY: CONTRIBUTORY INFRINGEMENT

A defendant may be liable for copyright infringement engaged in by another if he knew or had reason to know of the infringing activity and intentionally induces that infringing activity.

If you find that MGA or MGA Hong Kong infringed Mattel's copyrights in the Bryant drawings, you may proceed to consider Mattel's claim that Isaac Larian contributorily infringed those copyrights. To prove contributory copyright infringement, Mattel must prove both of the following elements by a preponderance of the evidence:

    1.      That Mr. Larian knew or had reason to know of the infringing activity of MGA or MGA Hong Kong; and

    2.      That Mr. Larian intentionally induced MGA or MGA Hong Kong's infringing activity. In assessing intent, Mr. Larian cannot be liable for another's infringement if he did not act with the desire or purpose of intentionally inducing that infringement. Mere awareness that potential infringing activity might result is not enough.

If you find that MGA or MGA Hong Kong infringed Mattel's copyright, and you also find that Mattel has proved both of these elements as to Mr. Larian, your verdict should be for the Mattel. If, on the other hand, Mattel has failed to prove either of these elements, your verdict should be for Mr. Larian.

1  **Authority**:   Ninth  Circuit  Manual  of  Model  Jury  Instructions  17.21  (2007)  (modified).

2  Metro-Goldwyn-Mayer  Studios  Inc.  v.  Grokster,  Ltd.,  545  U.S.  913,  931-33  (2005);

3  Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 262-263 (9th Cir. 1996).

Responses to Objections to MGA Parties' Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

## MATTEL'S OBJECTION

Mattel objects to defendants' proposed jury instruction regarding Contributory Infringement on the following grounds:

1. This proposed instruction deviates from the Ninth Circuit Model Instruction and should be rejected for that reason. Defendants have attempted to make the Model Instruction biased toward defendants.

2. Defendants' proposed instruction states that Mattel must prove that Larian "intentionally induced" MGA's copyright infringement, when the model instruction makes clear that it is sufficient for Mattel to show that Larian "materially contributed" to the infringement. *See* 9th Cir. Civ. Jury Instr. 17.21 (2007).

3. The cited authorities do not support defendants' erroneous assertions that defendants are not liable if they "did not act with the desire or purpose of intentionally inducing that infringement" and that "awareness that potential infringing activity might result is not enough." Indeed, in *Fonovisa, Inc. v. Cherry Auction, Inc.*, the Ninth Circuit confirmed that the relevant inquiry is simply whether defendant "***materially contributed*** to the infringing activity." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (emphasis added) (agreeing that "providing the site and facilities for known infringing activity is sufficient to establish contributory liability"). The Supreme Court's statement in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) that "mere knowledge of infringing potential" might not be enough for liability has no application here. That case announced the circumstances under which a party that merely distributes a device (e.g., a distributor of file-sharing computer networking software) can be liable for the infringing activities of third parties. None of the defendants can claim to be such a "distributor" here.

4. Defendants' proposed instruction fails to inform the jury that Mattel also claims that MGA Hong Kong may be liable for contributory infringement. *See* Mattel's Proposed Jury Instruction re Derivative Liability—Contributory Infringement.

196

1         5.     Mattel requests that the Court adopt Mattel's proposed instruction, which

2    conforms to the Ninth Circuit Model Instruction and includes reference to both Isaac

3    Larian and MGA Hong Kong.  *See id.*

Responses to Objections to MGA Parties' Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**MGA PARTIES' RESPONSE**

1.     MGA's proposed instruction tracks the Ninth Circuit model and adds a clarification, consistent with precedent, that "mere awareness that potential infringing activity might result" is insufficient to find Mr. Larian cannot be liable for intentional inducement.  Mattel concedes that this clarification is consistent with the Supreme Court's decision in <u>Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.</u>, 545 U.S. 913 (2005), and its attempt to distinguish that case on the facts is unavailing.  <u>See</u> <u>also</u> <u>Perfect 10, Inc. v. Amazon.com, Inc.</u>, 508 F.3d 1146 (9th Cir. 2007) ("under <u>Grokster</u>, an actor may be contributorily liable for intentionally encouraging direct infringement if the actor <u>knowingly takes steps that are substantially certain to result in such direct infringement</u>) (emphasis adde).

2.     This instruction is necessary to clarify the applicable law for the jury, and is proper based on the authorities defendants cited in support of the instruction and cases discussed therein.  The intentional inducement requirement set forth here is also consistent with the Model Instruction on contributory infringement, but provides more explanation to help the jury apply the appropriate law.  Mattel's objections rely on unduly narrow and fact-dependent interpretations of that authority, which in fact support the approach set forth in this instruction.


DATED:  July 29, 2008            SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP


                                 By:  _____/s/ Thomas J. Nolan_____
                                          Thomas J. Nolan
                                      Attorneys for the MGA Parties