THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
LAUREN E. AGUIAR (Admitted Pro Hac Vice)
(laguiar@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA  90071
Tel.: (213) 687-5000/Fax: (213) 687-5600

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| v. | Honorable Stephen G. Larson |
| MATTEL, INC., a Delaware corporation, | MGA PARTIES' OBJECTIONS TO MATTEL'S THIRD AMENDED PROPOSED JURY INSTRUCTIONS FOR PHASE 1-B |
| Defendant. | |
| AND CONSOLIDATED ACTIONS. | |

# TABLE OF CONTENTS

| Number | Title | Page |
|--------|-------|------|
| 17.1 | Copyright—Defined (17 U.S.C. § 106) | 3 |
| 17.4 | Copyright Infringement—Ownership And Copying (17 U.S.C. § 501a(B)) | 6 |
| 17.10 | Copyright Interests—Assignee (17 U.S.C. § 201(D)(1)) | 8 |
| 17.13 | Copyright Interests—Derivative Works (17 U.S.C. §§ 101, 106(2)) | 10 |
| 17.15 | Copying—Access And Substantial Similarity | 13 |
| MSJI No. __ | Copyright Infringement—Substantial Similarity | 15 |
| MSJI No. __ | Copyright Infringement—Originality | 21 |
| MSJI No. __ | Originality—Combination Of Unprotectable Elements | 23 |
| MSJI No. __ | Presumption Of Originality | 27 |
| MSJI No. __ | Substantial Similarity—The "Inverse Ratio Rule" | 29 |
| MSJI No. __ | Copyrightability Of Characters | 33 |
| MSJI No. __ | Copyright Infringement—Evidence Of Copying Of Names Or Titles | 39 |
| MSJI No. __ | Copyright Infringement—Three-Dimensional Works Can Infringe Two-Dimensional Works | 41 |
| MSJI No. __ | Copyright Infringement—Intermediate Works | 43 |
| MSJI No. __ | Copyright Infringement—Intent To Infringe Not Necessary For Liability | 46 |
| 17.20 | Derivative Liability—Vicarious Infringement—Elements And Burden Of Proof | 48 |
| 17.21 | Derivative Liability—Contributory Infringement | 50 |
| 17.19 | Copyright—Affirmative Defense—Abandonment | 52 |
| MSJI No. __ | Copyright—Affirmative Defense—Good Faith Transfer | 54 |
| MSJI No. __ | Statute Of Limitations—Fraudulent Concealment | 60 |
| MSJI No. __ | Affirmative Defense—Consent | 62 |
| CACI 3901 | Introduction To Tort Damages—Liability Established For Intentional Interference With Contractual Relations | 64 |
| CACI 3901 | Introduction To Tort Damages—Liability Established For Aiding And Abetting Breach Of Fiduciary Duty And Breach Of The Duty Of Loyalty | 67 |
| MSJI No. __ | Disgorgement Of Profits | 71 |

| Number | Title | Page |
|---|---|---|
| CACI 2102 | Presumed Measure Of Damages For Conversion | 79 |
| 17.22 | Copyright—Damages (17 U.S.C. § 504) | 82 |
| 17.24 | Copyright—Damages—Defendants' Profits (17 U.S.C. § 504(B)) | 84 |
| MSJI No. __ | Copyright—Damages—Apportionment Of Profits | 86 |
| MSJI No. __ | Copyright—Damages—Indirect Profits | 89 |
| MSJI No. __ | Copyright—Damages—Willful Infringement | 91 |
| MSJI No. __ | Affirmative Defense—Failure To Mitigate | 94 |
| CACI 3947 | Punitive Damages—Individual And Entity Defendants | 96 |

ii

**GENERAL OBJECTION.**   The MGA Parties respectfully submit their objections to Mattel's Proposed Jury Instructions as set forth below. The MGA Parties also object to Mattel's Proposed Jury Instructions in general for omitting any of the jury instructions proposed by the MGA Parties.   In addition, the MGA Parties object to any of the instructions below that fail to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant.   The MGA Parties also object to the instructions below to the extent that they fail to include language necessary to assist the jury's understanding of this case and submit that their Proposed Instructions on the matters covered below are the appropriate instructions to provide the jury.

The MGA Parties generally objects to Mattel's proposed copyright instructions on the grounds that Mattel has deleted portions of the Ninth Circuit Model Jury Instructions, omitted entirely certain other, basic model instructions (e.g., Ninth Circuit Model Jury Instructions 17.2 ("Copyright – Subject Matter – Generally"); 17.3 ("Copyright – Subject Matter – Idea And Expression"), 17.6 ("Copyright Interests – Authorship"), 17.7 ("Copyright Interests – Joint Authors"), and added certain improper "Special" instructions. Mattel's deletions, omissions, and "special instructions" are improper because, among other things, they are intended to mislead and confuse the jury in connection with its determination of the protectability of the various elements in the 16 Bryant drawings registered by Mattel at issue in this phase of the trial.   Mattel's deletions, omissions and "special instructions" are also directed to an apparent attempt by Mattel to confuse and mislead the jury into believing that Mattel's burden of proof in connection with its copyright infringement claims is less than it actually is.

The MGA Parties also generally object to Mattel's proposed copyright instructions on the grounds that Mattel's instructions do not limit the basis of Mattel's copyright claims to the 16 Carter Bryant drawings that Mattel has registered and that are listed in the Final Pretrial Conference Order issued by this Court.   The Court has previously rejected Mattel's attempt

1

1  to base its claims on drawings that were not included in the Final Pretrial Conference Order.

2  See May 29, 2008 Order, ¶ 9.

3

4  The MGA Parties further generally object that Mattel's proposed copyright instructions do

5  not properly instruct the jury of the effect of the Phase 1-A verdict and the prior orders of

6  the Court.  To that end, MGA's proposed instructions include a preliminary instruction that

7  instructs the jury concerning the effect of their Phase 1-A verdict and focuses the issues the

8  jury is required to determine in connection with the Phase 1-B trial.  Given the number of

9  drawings at issue in the Phase 1-A trial, as reflected in the Phase 1-A verdict form, MGA's

10 proposed preliminary instruction is necessary and appropriate so that the jury understands

11 that Mattel's copyright infringement claims are limited to the 16 registered Bryant drawings

12 specified in the Final Pretrial Conference Order.

13

14 The MGA Parties specific objections are set forth below.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 17.1

## COPYRIGHT—DEFINED

## (17 U.S.C. § 106)

Mattel claims that the defendants, MGA Entertainment, Inc. ("MGA"), Isaac Larian and MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), engaged in copyright infringement.  The defendants deny that claim.

Copyright is the exclusive right to copy. This right to copy includes the exclusive rights to:

(1)     Authorize, or make additional copies, or otherwise reproduce the copyrighted work;

(2)     Prepare derivative works based upon the copyrighted work;

(3)     Distribute copies of the copyrighted work to the public by sale or other transfer of ownership; and

(4)     Display publicly a copyrighted work.

It is the owner of a copyright who may exercise these exclusive rights to copy.  The term "owner" includes an assignee.  In general, copyright law protects against production, adaptation and distribution of substantially similar copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in an action for copyright infringement.

**Authority:**  9th Cir. Civ. Jury Inst. 17.1 (2007) (modified).

1  **OBJECTION.**   The MGA Parties object to this instruction on the grounds that the
2  introductory paragraph Mattel added to the model instruction should be included in a
3  preliminary instruction that informs the jury of the effect of their Phase 1-A verdict and the
4  issues they need to determine in connection with the Phase 1-B trial.  Mattel's instruction
5  also improperly fails to inform the jury that its copyright infringement determination is
6  limited to the 16 Bryant drawings that Mattel registered with the Copyright Office and are
7  part of the Final Pretrial Conference Order in this case.

8

9  The MGA Parties also object to Mattel's deletion of "[r]ecast, transform, adapt the work"
10  from the definition in Ninth Circuit's model instruction for "derivative works" in item
11  number (2) above.   The deleted language is part of the Copyright Act's definition of
12  "derivative works."  See 17 U.S.C. § 101; see also Siegel v. Time Warner Inc., 496 F. Supp.
13  2d 1111 (C.D. Cal. 2007).   This deletion by Mattel is consist with Mattel's efforts
14  throughout its proposed instructions to confuse and mislead the jury into believing that
15  Mattel's burden of proving infringement is less than it actually is.

16

17  The MGA Parties also object to this instruction on the grounds that the sentence concerning
18  ownership by assignment is not necessary and will only serve to confuse the jury,
19  particularly when combined with later instructions by Mattel addressed to this non-issue.
20  The better course is simply to instruct the jury that Mattel owns the copyrights in the Bryant
21  drawings via assignment as set forth in the MGA Parties' proposed preliminary copyright
22  instruction.  The MGA Parties also object to this instruction on the grounds that it does not
23  inform the jury that mere possession of a copyrighted work does not constitute infringement.
24  See Lapham v. Porach, 2007 U.S. Dist. LEXIS 30751, at *15 (S.D.N.Y. Apr. 25, 2007).
25  Such an instruction is particularly appropriate in this case.  The MGA Parties also object to
26  this instruction because it does not specify that a defendant's contribution of non-infringing
27  materials to a Bratz doll does not constitute copyright infringement even if the Bratz doll
28  itself infringes Mattel's copyright.  The MGA Parties further object on the ground that the

instruction improperly fails to explain that the jury must consider each defendant's acts separately to determine whether that defendant has engaged in an act that is an infringement of Mattel's copyrights.

## **17.4**

## **COPYRIGHT INFRINGEMENT—OWNERSHIP AND COPYING**

## **(17 U.S.C. § 501A–(b))**

Anyone who copies original elements of a copyrighted work without the owner's permission infringes the copyright.

Mattel claims that the defendants have infringed copyrights for Bratz works.  On Mattel's copyright infringement claim, Mattel has the burden of proving both of the following by a preponderance of the evidence:

1.    Mattel is the owner of a valid copyright; and

2.    The defendants copied original elements from the copyrighted work.

If you find that Mattel has proved both of these elements, your verdict should be for Mattel.

If, on the other hand, Mattel has failed to prove either of these elements, your verdict should be for the defendants.

**Authority:**  9th Cir. Civ. Jury Instr. 17.4 (2007).

**OBJECTION:**  The MGA Parties object to this instruction on the grounds that it does not properly account for the Phase 1-A verdict.  For example, the issues of ownership was determined in Phase 1-A, validity is not disputed.  Also, Mattel's proposed instruction's use of the term "copyrights for Bratz works" is vague and ambiguous and improperly suggests that the jury could find MGA liable based on Bryant drawings or other items at issue in the Phase 1-A trial other than the 16 Bryant drawings registered by Mattel that are listed in the Final Pretrial Conference Order in this case.  The MGA Parties also object to this instruction because it fails to ensure that the jury will distinguish among the defendants and make appropriate findings with respect to each defendant. The MGA Parties further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product. Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

### 17.10

### COPYRIGHT INTERESTS—ASSIGNEE

### (17 U.S.C. § 201(d)(1))

In this case, the plaintiff, Mattel, does not claim to be the creator of the copyright at issue. Instead, Mattel claims it received the copyright by virtue of assignment from the work's creator, Carter Bryant, in the Inventions Agreement, so that Mattel is now the owner of the copyright.  You should assume that Mattel owns all the works you found were created by Carter Bryant, alone or jointly with others, while he was employed by Mattel, and that Mattel may sue for infringement of those works.

**Authority:**  9th Cir. Civ. Jury Instr. 17.10 (2007) (modified).

8

**OBJECTION:**   The MGA Parties object to this instruction on the grounds that it is unnecessary since Mattel's ownership via assignment of the Bryant drawings is not disputed, and, as discussed previously, this issue is better and less confusingly handled by means of the preliminary copyright instruction proposed by MGA.  This instruction is also improper to the extent that it instructs the jury to "assume that Mattel owns all the works you found were created by Carter Bryant, alone or jointly with others, while he was employed by Mattel, and that Mattel may sue for infringement of those works."  As discussed previously, the Court has already determined that Mattel's copyright infringement claims in this case are limited to the 16 drawings registered by Mattel that are listed in the Final Pretrial Order. It also misstates the law since Mattel does not have standing to bring suit on drawings that are not registered with the Copyright Office.  It also misstates the law to the extent it states that Mattel owns and can sue on "joint works," particularly as relates to "joint works" owned jointly with MGA.

### 17.13

### COPYRIGHT INTERESTS—DERIVATIVE WORKS

### (17 U.S.C. §§ 101, 106(2))

A copyright owner is entitled to exclude others from creating derivative works based upon the owner's copyrighted work.  The term derivative work refers to a work based on one or more pre-existing works, such as drawings or dolls.  Accordingly, Mattel is entitled to exclude others from recasting, transforming or adapting, without Mattel's permission, the copyrighted works you found were created by Carter Bryant, alone or jointly with others, while he was employed by Mattel.

**Authority:**  9th Cir. Civ. Jury Instr. 17.13 (2007) (modified).

1   **OBJECTION.** The MGA Parties object to this instruction on the grounds that Mattel's

2   inclusion of the word "dolls" in the second sentence is improper and directed at confusing

3   and misleading the jury concerning the basis and scope of Mattel's infringement claims.

4   Mattel's claims are directed to the alleged infringement of the 16 registered Bryant

5   drawings by the Bratz dolls.  Mattel does not own any "dolls," as so-called "derivative

6   works" or otherwise, that are allegedly infringed by the Bratz dolls.  This instruction is also

7   misleading and confusing to the extent that Mattel has again omitted the language from the

8   Ninth Circuit's model instruction, "other form in which the pre-existing work is recast,

9   transformed, or adapted," which provides the proper definition of an alleged "derivative

10   work.."

11

12   The MGA Parties also object to this instruction on the grounds that it is improperly intended

13   to confuse the jury concerning the correct test to be applied in determining whether any of

14   the Bratz dolls infringe copyrights in any of the 16 Bryant sketches that Mattel has

15   registered Copyright Office.  Mattel's instruction not only fails to limit the "copyrighted

16   works" to the 16 registered drawings that are listed in the Final Pretrial Conference Order, it

17   also seeks to make an end-run around the strictures of the standards for copyright

18   infringement in the Ninth Circuit.  Mattel's instruction misleadingly suggests that there is a

19   lower standard for determining infringement of "derivative works," which is clearly wrong.

20   See, e.g., Litchfield v. Spielberg, 736 F.2d 1352, 1357 (9th Cir. 1984) ("a work will be

21   considered a derivative work **only if it would be considered an infringing work if** the

22   material which it has derived from a prior work had been taken without the consent of a

23   copyright proprietor of such prior work. To prove infringement, one must show substantial

24   similarity.") (emphasis in original) (citations omitted); Allen v. Academic Games League of

25   Am., 89 F.3d 614 (9th Cir. 1996) ("Allen asserts that to constitute a derivative work, the

26   infringing work need only incorporate in some form a portion of the copyrighted material.

27   This court, however, has consistently held that to prove infringement, one must demonstrate

28   substantial similarity between the works.") (citing Litchfield).   See generally 4-19D

1  Nimmer on Copyright § 19D.08 ("a new work constitutes a derivative work based on an
2  underlying work only if the new work is 'substantially similar' to the underlying work").

3

4  The MGA Parties also object on the grounds that Mattel's description of a "derivative work"
5  runs counter to the very purpose of copyright laws as stated by the United States Supreme
6  Court: "The primary objective of copyright is not to reward the labor of authors, but 'to
7  promote the Progress of Science and useful Arts.'  To this end, copyright assures authors the
8  right to their original expression, but encourages others to build freely upon the ideas and
9  information conveyed by a work." Feist Publications, Inc. v. Rural Telephone Co., 499 U.S.
10 340, 349-50 (1991) (quoting U.S. Constitution and citing Twentieth Century Music Corp. v.
11 Aiken, 422 U.S. 151, 156 (1975); Harper & Row, Publishers, Inc. v. Nation Enters., 471
12 U.S. 539, 556-57 (1985).  See also Fogerty v. Fantasy, Inc., 510 U.S. 517, 527 (1994)
13 ("copyright law ultimately serves the purpose of enriching the general public through access
14 to creative works" and "it is peculiarly important that the boundaries of copyright law be
15 demarcated as clearly as possible"); Love v. The Mail On Sunday, 2007 U.S. Dist. LEXIS
16 97061, at *17 (Sept. 7, 2007).  Mattel's suggestion to the jury that it is per se improper to
17 "base" one work on another is wrong and unduly prejudicial, particularly in this case, where
18 MGA admits that the Bryant drawings served as an inspiration for its Bratz dolls.

19

20

21

22

23

24

25

26

27

28

## 17.15

## COPYING—ACCESS AND SUBSTANTIAL SIMILARITY

I just instructed you that Mattel has the burden of proving that the defendants copied original elements from Mattel's copyrighted work.  Mattel may show the defendants copied from the work by showing by a preponderance of the evidence that the defendants had access to Mattel's copyrighted works and that there are substantial similarities between the defendants' works and original elements of Mattel's works.

**Authority:**  9th Cir. Civ. Jury Instr. 17.15 (2007).

1   **OBJECTION.**  The MGA Parties object to this instruction on the grounds that it instructs
2   the jury that it can find the MGA Parties liable for infringement based on any of Bryant's
3   drawings and not just the 16 registered drawings listed in the Final Pretrial Conference
4   Order.  This instruction is also improper to the extent that it does not require the jury to
5   distinguish among the defendants and make appropriate findings with respect to each
6   defendant.  The MGA Parties further object to this instruction (and Mattel's other copyright
7   instructions) because it does not properly explain that the jury must consider separately each
8   alleged infringing act and/or product.  Thus, the instruction would mislead the jury by
9   suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel
10  should prevail as to the full scope of all alleged infringement.

11

12  To the extent that Mattel also includes an instruction concerning the "inverse ratio rule," <u>see</u>
13  Mattel's "Special Instructions," this instruction is improper since it does not distinguish
14  between "factual copying" and "legal copying," and it does not explain that the analysis
15  presented by this instruction is only relevant to Mattel's burden of proving "factual"
16  copying.  Moreover, to the extent any "inverse ratio rule" instruction is given to the jury, the
17  jury must also be instructed that proof of "access" plus "substantial similarity" merely
18  creates a presumption of "factual" copying that MGA is entitled to rebut.  <u>See</u> MGA's
19  Proposed Instruction: Copyright Infringement – Independent Creation.

20
21
22
23
24
25
26
27
28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. __
## COPYRIGHT INFRINGEMENT—SUBSTANTIAL SIMILARITY

You are to make a determination regarding substantial similarity according to a two-step process, which includes application of the "extrinsic test" and the "intrinsic test."  To prevail on its claims for copyright infringement, Mattel must satisfy both of these tests.

Under the extrinsic test, Mattel must establish that specific ideas and expressive elements of the Bratz products that Mattel claims are infringing and the works Mattel owns are substantially similar.  I have already found as a matter of law that each of the elements in Carter Bryant's Bratz drawings, and the combination of those elements, are original and protectable.  Accordingly, you should take all of the elements of the drawings into account in analyzing whether they are substantially similar to the defendants' works.

The intrinsic test looks at the overall similarity of ideas and expression in the works from the perspective of an ordinary observer.  You should ask yourself whether the ordinary, reasonable audience, in this case girls between the ages of 6 and 12, would recognize the defendants' products as a "picturization" of the Bratz works that Mattel owns.

**Authority:**  *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1398 (9th Cir. 1997); *Shaw v. Lindheim*, 919 F.2d 1353, 1356-57 (9th Cir. 1990); *Jada Toys, Inc. v. Mattel, Inc.*, 1008 WL 450891, *6 (9th Cir. Feb. 21, 2008); *see also Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164, 1166 (9th Cir. 1977); *See, e.g., Newton v. Diamond*, 204 F. Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of elements in a copyrighted work is a question of law.");  *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve findings of fact, but the issue of protectibility/nonprotectibility is an issue of law. Thus, before a court may send a copyright case to the jury, it must satisfy itself that, even assuming copying of an idea and its expression, at least some of what the defendant copied falls into the area of protectible expression."); *Coston v. Product Movers*,

1  1990 WL 56516 at *3 (E.D. Pa., 1990) ("The question of which aspects of plaintiffs' work

2  are protectible expression as opposed to unprotectible idea is an issue of law.");

3  *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 2005 WL 468496 at *2 (D. Del. 2005)

4  (holding that while a finding of copyright infringement may involve questions of fact, the

5  protectability of copyrighted material is a question of law); *Pivot Point Int'l, Inc. v.*

6  *Charlene Prods.*, Inc., 932 F. Supp. 220, 225 (N.D. Ill 1996) (the issue of whether a work is

7  "copyrightable is a question of law," and the "jury has nothing to do with this

8  subject.");*ADA v. Delta Dental Plans Ass'n*, 1996 U.S. Dist. LEXIS 5809 at *19 n. 15 (N.D.

9  Ill. 1996) (although copyrightability analysis necessarily requires a court to consider some

10  facts surrounding the works at issue, the inquiry "is far more heavily loaded with policy

11  implications than most other standards," making it appropriate for determination by a court

12  instead of a jury).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OBJECTION.**   As an initial matter, the MGA Parties object to this instruction on the grounds that it is not limited to the 16 registered drawings that the Court has determined to be a proper basis for Mattel's copyright infringement claims in this case.   The MGA Parties also object to this instruction on the grounds that it represents Mattel's continuing attempt to avoid acknowledging the filtration analysis required under Ninth Circuit copyright principles.   Instead of identifying the elements in the Bryant drawings that it claims are protectable – which is unquestionable Mattel's burden – Mattel disingenuously asserts that all of the elements in the sketches, including a combination thereof, are "original and protectable," and that the Court has so found as a matter of law.   This is wrong.   The Court actually held, consistent with Ninth Circuit precedent, that this case requires "analytically dissecting works into their components in order to determine whether some – or all – similarities  are attributable to unprotectable elements, which must be filtered out of the analysis before a conclusion regarding substantial similarity is reached."   July 24, 2008 Order at 2.   Mattel must identify for the jury which elements in the 16 registered Bryant drawings (the only works on which an infringement finding ccan be based) it believes are protectable by copyright, and which are not.   See, e.g., 17 U.S.C. §102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work").   Numerous aspects of the Bryant drawings are not entitled to protection and the Court has not held otherwise.

The MGA Parties further object to this instruction on the grounds that, unlike MGA's proposed instruction on the "extrinsic/intrinsic" test, Mattel's proposed instruction does not explain the analytical steps the jury must take in applying the legal test to determine infringement and it does not provide any guidance as to how the jury is to determine what should and should not be filtered from the Bryant drawings.   For example, Mattel's proposed instruction does not explain that the "extrinsic" test requires that the jury remove

1  from infringement analysis those elements of the copyrighted work that are not entitled to
2  copyright protection, or that the party claiming infringement (Mattel) cannot rely on any
3  similarity in expression resulting from unprotectible elements for copyright infringement.
4  Mattel's proposed instruction does not explain "analytic dissection" (wherein the jury must
5  isolate the elements of the copyrighted work and analyze each one separately, excluding the
6  other elements present in the work and the combination of elements) or "filtering" (wherein
7  the jury must filter out all of the unprotected elements) aspects of the "extrinsic" test.
8  Mattel's proposed instruction also does not provide the jury with any guidance as to when
9  the jury can consider and rely on expert testimony in connection with the "extrinsic" test
10  and the "intrinsic" test.  Thus, Mattel's proposed instruction does not explain that the jury
11  must determine what, if any, protectable expression is present in each of the Bryant sketches,
12  the legal structure used to make this determination, the fact that the jury must limit its
13  comparison to the protected expression in a particular drawing to a particular Bratz doll and,
14  unless a sufficient amount of protected expression from a sketch was copied in the Bratz
15  dolls, Mattel's claim of copyright infringement must fail.  Compare Mattel's proposed
16  instruction with MGA Parties' Proposed Jury Instruction – Substantial Similarity.

17

18  Mattel's assertion that Mattel must "establish that specific ideas and expressive elements of
19  the Bratz products that Mattel claims are infringing" is misleading.  As stated above, ideas
20  cannot infringe a copyright, because ideas are not protectible under United States copyright
21  law.  See, e.g., Satava v. Lowry, 323 F.3d 805, 812 (9th Cir. 2003) ("Only by vigorously
22  policing the line between idea and expression can we ensure both that artists receive due
23  reward for their original creations and that proper latitude is granted other artists to make
24  use of ideas that properly belong to us all.")

25

26  The MGA Parties also object to this instruction on the grounds that it improperly uses the
27  concept of "picturization." The MGA Parties object to any reference to the term or concept
28  "picturization" as referring to an outdated concept used almost exclusively historically to

refer to the process of comparing an alleged infringing audio visual work such as a film with a literary work.  <u>See</u>, <u>e.g.</u>, <u>Berkic v. Crichton</u>, 761 F.2d 1289, 1292 (9th Cir. 1985); <u>Cain v. Universal Pictures Co.</u>, 47 F. Supp. 1013, 1016 (C.D. Cal. 1942); <u>see also</u> <u>Anderson v. Stallone</u>, 1989 U.S. Dist. LEXIS 11109, at *35, 11 U.S.P.Q. 2d 1161 (C.D. Cal. Apr. 26, 1989).  <u>Accord</u> 4-13 <u>Nimmer on Copyright</u> § 13.03[E][2] (2008) (questioning the validity of the related "audience" test.).  Any references to "picturization" are inappropriate, vague and ambiguous, and will only confuse the jury with respect to the "total concept and feel" standard actually applied under the intrinsic test.  <u>See</u> <u>Lanard Toys, Ltd. v. Novelty, Inc.</u>, 511 F. Supp. 2d 1020, 1037–38 (C.D. Cal. 2007) (citing <u>Litchfield v. Spielberg</u>, 736 F.2d 1352, 1357 (9th Cir. 1984)).

Mattel's proposed instruction also does not instruct the jury that it should not consider the unprotectible elements filtered out as part of the extrinsic test analysis in connection with its determination under the "intrinsic" test, and it improperly describes the "ordinary, reasonable audience" as girls between the ages of 6 and 12, when the target audience for Bratz dolls is girls between the ages of 8 and 12.

The MGA Parties object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by improperly suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringements.

Finally, although MGA acknowledges (although it disagrees) that the Court held that the Bryant drawings are entitled to "broad" protection under which infringement should be determined based on the "substantially similar" test, the MGA Parties also respectfully submit that the Court's ruling that "broad" protection is proper for the Bryant drawings cannot be made without the benefit of the full filtering analysis.   In addition, the Court's

order does not clarify whether this standard also applies to Mattel's "compilation" claims. Settled case law establishes that infringement of "compilations" should be determined based on the narrower "virtual identity" standard.  See, e.g. Satava v. Lowry, 323 F.3d 805, 812 (9th Cir. 2003); Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1446-47 (9th Cir. 1994); Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 205 (9th Cir. 1989); Cosmos Jewelry Ltd. v. Po Sun Hon Co., 470 F. Supp. 2d 1072, 1082-84 (C.D. Cal. 2006); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1178 (C.D. Cal. 2001).

**MATTEL'S SPECIAL JURY INSTRUCTION NO. __**

**COPYRIGHT INFRINGEMENT—ORIGINALITY[1]**

Your first task in assessing substantial similarity is to decide which parts of Carter Bryant's works are original.  An original work may include or incorporate elements inspired by prior works.  The original parts of the work so inspired are the parts created:

1.    Independently by the work's creator; and

2.    By use of at least some minimal creativity.

In copyright law, the "original element" of a work need not be new or novel. Originality means "little more than a prohibition of actual copying."  The required level of originality is "minimal."

**Authority:**  9th Cir. Civ. Jury Instr. 17.12 (2007); *CDN, Inc. v. Kapes*, 197 F.3d 1256, 1259-60 (9th Cir. 1999); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1163 n.5 (9th Cir. 1977).

---

[1]   Mattel submits that it is for the Court to determine what elements of Carter Bryant's Bratz works, or combinations thereof, are original.  *See*, *e.g.*, *Newton v. Diamond*, 204 F. Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of elements in a copyrighted work is a question of law.");  *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve findings of fact, but the issue of protectibility/nonprotectibility is an issue of law.); *Coston v. Product Movers*, 1990 WL 56516 at *3 (E.D. Pa. 1990) ("The question of which aspects of plaintiffs' work are protectible expression as opposed to unprotectible idea is an issue of law."); *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 2005 WL 468496 at *2 (D. Del. 2005) (holding that while a finding of copyright infringement may involve questions of fact, the protectability of copyrighted material is a question of law).  If, however, an instruction on originality is to be given to the jury, Mattel respectfully requests that this proposed instruction be given.

1 **OBJECTION.**   The MGA Parties object to this instruction on the grounds that it is an
2 incomplete and inaccurate statement of 9th Circuit Civil Model Jury Instruction 17.12, it is
3 put out of order to confuse the jury concerning Mattel's burden of proving infringement,
4 and it includes additional inaccurate statements that are not part of the model instruction.
5 Moreover, this instruction is simply another attempt by Mattel to obscure the "extrinsic"
6 and "intrinsic" tests and to confuse the jury as to the proper meaning and application of
7 these tests.  In advising the jurors that their "first task" related to substantial similarity is "to
8 decide which parts of Carter Bryant's works are original," there is no explanation of
9 analytic dissection and filtering, and this will mislead and confuse the jury.  This instruction
10 is also unnecessary and will only serve to confuse the jury since the MGA Parties do not
11 dispute that Bryant's sketches satisfy the low "originality" threshold necessary to
12 copyrightability. In addition to being unnecessary, the MGA Parties further object to this
13 instruction (and Mattel's other copyright instructions) because it does not properly explain
14 that the jury must consider separately each alleged infringing act and/or product.  Thus, the
15 instruction would mislead the jury by suggesting that if any infringement at all is found, of
16 any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged
17 infringement.

18

19 The MGA Parties further note that the footnote in Mattel's proposed copyright instruction is
20 moot in light of the Court's July 24, 2008 Order, which determined that "[t]he relevant test
21 to be employed on this issue in this case – and upon which the jury will be instructed – is
22 the test regarding the extrinsic and intrinsic analyses set forth above."  Based on the Court's
23 Order, the jury will determine what elements are filtered from the 16 registered Bryant
24 drawings via analytic dissection and filtering.  Based on its analytic dissection and filtering,
25 the jury will also determine whether the Bryant drawings are only entitled to protection as a
26 "compilation."

27

28

1

2

3

**MATTEL'S SPECIAL JURY INSTRUCTION NO. __**

**ORIGINALITY—COMBINATION OF UNPROTECTABLE ELEMENTS[2]**

4       If you find that any elements of Mr. Bryant's drawings are not original, you must

5   decide whether the combination of such elements is original.  A combination of individual

6   elements not eligible for copyright protection is eligible for copyright protection if those

7   elements are numerous enough and their selection and arrangement original enough that

8   their combination constitutes an original work of authorship.

9       The fact that the Bratz dolls may have features similar to other dolls or other

10   preexisting works does not mean that they do not infringe on the works in which Mattel

11   claims ownership.  If you find that the combination of features in the drawings in which

12   Mattel claims ownership amounts to original expression, you may find the dolls to be

13   infringing if their combination of features is substantially similar to the drawings.

14

15       **Authority:**  *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 135 (2d Cir.

16   2004) ("Even if the record had shown that many dolls possess upturned noses, bow lips, and

17   wide-spread eyes, it would not follow that each such doll – assuming it was independently

18   created and not copied from others – would not enjoy protection from copying."); *Dollcraft*

19   *Indus., Ltd. v. Well-Made Toy Mfg. Co.*, 479 F. Supp. 1105, 1114-15 (E.D.N.Y. 1978)

20   ("[T]hat plaintiff's toys contained features separately found on other dolls does not render

---

21

22

23

24

25

26

27

28

[2]   Mattel submits that it is for the Court to determine what elements of Carter Bryant's Bratz works, or combinations thereof, are original.  *See*, *e.g.*, *Newton v. Diamond*, 204 F. Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of elements in a copyrighted work is a question of law."); *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve findings of fact, but the issue of protectibility/nonprotectibility is an issue of law.); *Coston v. Product Movers*, 1990 WL 56516 at *3 (E.D. Pa. 1990) ("The question of which aspects of plaintiffs' work are protectible expression as opposed to unprotectible idea is an issue of law."); *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 2005 WL 468496 at *2 (D. Del. 2005) (holding that while a finding of copyright infringement may involve questions of fact, the protectability of copyrighted material is a question of law).  If, however, an instruction on originality is to be given to the jury, Mattel respectfully requests that this proposed instruction be given.

their copyrights invalid.  Rather, the original combination of these features into new dolls makes the dolls copyrightable."); *Fisher-Price Toys v. My-Toy Co.*, 385 F. Supp. 218, 219-20 (S.D.N.Y. 1974) (same); *cf. Swirsky v. Carey*, 376 F.3d 841, 848 (9th Cir. 2004).

**OBJECTION.**   The MGA Parties object to this proposed instruction on the grounds that, in order to invoke this doctrine, Mattel must identify the specific unprotectible elements on which it bases this assertion.   <u>See</u> <u>Todd v. Montana Silversmiths, Inc.</u>, 379 F. Supp. 2d 1110, 1112-13 (D. Col. 2005); <u>see also</u> <u>George S. Chen Corp. v. Cadona Int'l, Inc.</u>, 2008 WL 152651, at *1 (9th Cir. Jan. 17, 2008) (unpubl. op.) (plaintiff points to "no elements that, considered together, have a sufficient quantum of originality for copyright protection"). <u>See also</u> Ninth Circuit Manual Of Model Jury Instructions 17.14 (2007).   Discovery is closed.   Mattel did not identify in response to MGA's contention interrogatories, or otherwise, any combination of individual elements not eligible for copyright protection that it contends warrant copyright protection as a compilation or combinations, and it would be improper and prejudicial to allow Mattel to proceed under this theory of copyright infringement.   Mattel's failure to identify unprotectible elements it contends warrant compilation protection is not inadvertent; rather, it was an intentional strategy designed to avoid the need for Mattel to concede that many of the elements in the Bryant drawings are unprotectible and must be disregarded under the proper analytic dissection and filtering test. This instruction also improperly suggests that the jury could find infringement by combining different elements of different works.

Mattel's first sentence in this instruction is misleading and not supported by any case law. It is not the responsibility of the jury to decide that the combination doctrine is applicable. Rather, it is Mattel's responsibility to raise the issue and identify what it claims is the protectible selection and arrangement that warrants copyright protection.

The MGA Parties also object to this instruction on the grounds that it fails to instruct the jury that a claim of copyright infringement based on a combination of unprotectible elements must meet a very high standard to be protectible.   <u>See, e.g.</u> <u>Satava v. Lowry</u>, 323 F.3d 805, 811 (9th Cir. 2003) ("we hold today that a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their

selection and arrangement original enough that their combination constitutes an original work of authorship").  This proposed instruction is also defective since it fails to instruct the jury that protection for a combination of unprotectible elements is only entitled to the narrower "virtual identity" standard, an issue not specifically addressed in the Court's orders.  See, e.g., Mattel v. Goldberger, 365 F.3d 133, 135-6 (2d Cir. 2004); Satava v. Lowry, 323 F.3d 805, 812 (9th Cir. 2003); Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1446-47 (9th Cir. 1994); Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 205 (9th Cir. 1989); Cosmos Jewelry Ltd. v. Po Sun Hon Co., 470 F. Supp. 2d 1072, 1082-84 (C.D. Cal. 2006); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1178 (C.D. Cal. 2001).

The MGA Parties further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

## MATTEL'S SPECIAL JURY INSTRUCTION NO. __
## PRESUMPTION OF ORIGINALITY

A copyright registration obtained within five years of the work's publication creates a presumption of the validity of the copyright and originality of the work.  This presumption shifts the burden of proof to the defendants to demonstrate why the works at issue are not copyrightable.  In this case, it is undisputed that both Mattel and MGA have obtained copyright registrations of certain of Carter Bryant's Bratz drawings.

**Authority:**  17 U.S.C. § 410(c); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1019 (9th Cir. 1985) ("[R]egistration by the Copyright Office is prima facie evidence of copyrightability.  This presumption shifts the burden of proof to the challenging party to demonstrate why the item in question is not copyrightable.") (citations omitted); *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989) ("The district court was entitled to rely on the copyright registration as prima facie evidence of originality.").

1  **OBJECTION.**  The MGA Parties object to this instruction on the grounds that there is no

2  dispute that the Bryant drawings contain sufficient originality to meet the low threshold of

3  copyrightability. This instruction is therefore unnecessary and can only confuse the jury.

4  The MGA Parties also object to this instruction to the extent that it is placed out of order to

5  confuse the jury and improperly and inaccurately deviates from 9th Circuit Civil Model Jury

6  Instruction 17.12.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. __
## SUBSTANTIAL SIMILARITY—THE "INVERSE RATIO RULE"

If Mattel shows that the defendants had a high degree of access to the Bratz drawings that Mattel owns, you should view Mattel's burden of proving substantial similarity under the extrinsic test as lowered.

**Authority:**  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) ("Under our case law, substantial similarity is inextricably linked to the issue of access.  In what is known as the 'inverse ratio rule,' we 'require a lower standard of proof of substantial similarity when a high degree of access is shown.'"); *Shaw v. Lindheim*, 919 F.2d 1353, 1361-62 (9th Cir. 1990); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977) (high "degree of access justifies a lower standard of proof to show substantial similarity"); *Smith v. Jackson*, 84 F.3d 1213, 1220-21 (9th Cir. 1996).

**OBJECTION.**  The MGA Parties object to this instruction on the grounds that it incorrectly states that the "inverse ratio" rule lowers Mattel's burden in connection with jury's determination of "legal" copying.  The "inverse ratio" rule, as correctly applied, only relates to the "factual" copying issue.  See, e.g., BensBargains.Net v. XPBargains.Com, 2007 U.S. Dist. LEXIS 60544, at **8–10 (S.D. Cal. Aug. 16, 2007) ("Plaintiff confuses the issues of copying as a factual matter and actionable copying.  The inverse ratio rule applies to the issue of copying as a factual matter only"; "Thus, Plaintiff must prove the existence of a triable issue of material fact with respect to substantial similarity, regardless of how strong its evidence is that Defendants in fact copied from Chui's compilations."); Zella v. E.W. Scripps Co., 529 F. Supp. 2d 1124 (C.D. Cal. 2007) ("Even if a defendant concedes use of a plaintiff's work, the copyright claim still fails absent substantial similarity."); Identity Arts v. Best Buy Enter. Serv. Inc., No. C 05-4656 PJH, No. C 06-1631 PJH, 2007 U.S. Dist. LEXIS 32060 (N.D. Cal. April 18, 2007) ("no amount of proof of access will suffice to show copying if there are no similarities") (citing Funky Films, Inc. v. Time Warner Entm't., Co., L.P., 462 F.3d 1072, 1081 (9th Cir. 2006)).  As explained by Professor Nimmer:

> The flawed proposition that powerful proof of access can substitute for demonstration of the requisite degree of substantial similarity is sometimes labeled the "'Inverse Ratio Rule." . . .

> One must hasten to add that there is nothing wrong in having access to one's competitor's products.  Neither may a showing of substantial similarity ever be avoided. . . .

> Proof of access can logically aid in showing copying as a factual matter-- added to the probative similarity that exists between two works, it can bolster the proof that one was in fact derived from the other.  But access logically exerts no impact on copying as a legal matter; no matter how steeped in plaintiff's work defendant may have been, if the resulting product is non-actionable as a matter of law, then the absence of substantial similarity that must underlie every successful claim still dooms the infringement suit.

1  4-13 <u>Nimmer on Copyright</u> §§ 13.03 [D] (2008).  <u>See also id</u>. 13-9, 13-10 & 13-13 ("'Not

2  all copying, however is copyright infringement'. . . . As Feist illustrates, copying as a

3  factual matter is insufficient, if improper appropriation is lacking." "Copying as a legal

4  proposition must still be established; hence, substantial similarity remains an indispensable

5  element of plaintiff's proof, even in cases (such as <u>Feist</u>) in which defendant does not

6  contest factual copying.").  As similarly stated by Professor Patry:

7      The inverse ratio theory confuses fundamental principles of infringement

8      analysis: access is relevant only in establishing the act of copying, not in

9      establishing the degree thereof.   Once copying is established, access is

10     irrelevant and the inquiry shifts to the final stage of the infringement analysis,

11     material appropriation.   At that stage, substantial similarity is the sole issue.

12     Substantial similarity is an objective determination, made by comparing the

13     two works from the perspective of the ordinary observer. This comparison is

14     completely unaffected by the defendant's degree of access.

15 <u>Patry on Copyright</u> §9:91.  <u>See also</u> <u>Feist</u>, 499 U.S. at 361 ("Not all copying . . . is copyright

16 infringement.").

17

18 Proper application of the "inverse ratio rule" is particularly important here, where MGA

19 believed it owned the Bryant drawings at the time the Bratz dolls were made and access is

20 conceded.  To the extent that the jury should be instructed at all concerning the "inverse

21 ratio rule," it is imperative that the instruction be made in connection with "factual" copying

22 only and that the jury be clearly instructed that the rule does not lessen in any way Mattel's

23 burden of providing substantial similarity in connection with the legal copying aspect of the

24 jury's infringement assessment.[3]

25 ───────────────────

26 [3]    The inconsistent and flawed application of the "ratio" is revealed by the fact that no
Ninth Circuit court has ever purported to apply the logical counterpart to the standard "rule"

27 as stated – that the lower the degree of access, the higher degree of substantial similarity
that is required in order to find infringement.  <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d

28 477, 485 (9th Cir. 2000) ("We have never held, however, that the inverse ratio rule says a
weak showing of access requires a stronger showing of substantial similarity.").

1   Mattel's suggestion that the "inverse ratio rule" applies to anything other than the "factual

2   copying" prong of determining copyright infringement is undermined by the purpose of

3   United States copyright law.  By purporting to lower the burden of "substantial similarity"

4   and/or limiting the analytic dissection required under the extrinsic test of copyright

5   infringement, the "rule"" would over-extend an individual artist's monopoly at the expense

6   of the copyright law's constitutional goals.  As recently stated in <u>Love v. The Mail On</u>

7   <u>Sunday</u>, 2007 U.S. Dist. LEXIS 97061 (C.D. Cal. Sept. 7, 2007):

8       'The primary objective of copyright is not to reward the labor of authors, but

9       '[t]o promote the Progress of Science and useful Arts.'  To this end, copyright

10      assures authors the right to their original expression, but encourages others to

11      build freely upon the ideas and information conveyed by a work.'  (citations

12      omitted).  Because copyright law ultimately serves the purpose of enriching

13      the general public through access to creative works, it is peculiarly important

14      that the boundaries of copyright law be demarcated as clearly as possible.

15  <u>Id.</u> at *17 (citing <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517, 527 (1994)).  <u>See also</u> <u>Feist</u>, 499

16  U.S. at 349-50.   Artists are thus encouraged to build on prior works and reducing the

17  standard for infringement based merely on access would clearly undermine this paramount

18  purpose of the Copyright Act.

19

20  The MGA Parties also object to this instruction because it fails to ensure that the jury

21  distinguishes among the defendants and makes appropriate findings with respect to each

22  defendant.  The MGA Parties further object to this instruction (and Mattel's other copyright

23  instructions) because it does not properly explain that the jury must consider separately each

24  alleged infringing act and/or product.  Thus, the instruction would mislead the jury by

25  suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel

26  should prevail as to the full scope of all alleged infringement.

27

28

# MATTEL'S SPECIAL JURY INSTRUCTION NO. __
## COPYRIGHTABILITY OF CHARACTERS

Copyright law protects distinctive characters.  Defendants' works infringe Mattel's copyrights if they copy recognizable and distinctive elements of the personalities of the characters portrayed in Carter Bryant's drawings.

**Authority:** *Olson v. National Broadcasting Co., Inc.*, 855 F.2d 1446, 1452 (9th Cir. 1988) (distinctive characters can be protected by copyright); *Warner Bros. Inc. v. American Broadcasting Companies, Inc.*, 720 F.2d 231, 235 (2d Cir. 1983) ("Plaintiffs own the copyright in various works embodying the character of Superman and have thereby acquired copyright protection for the character itself."); *Walt Disney Productions v. Air Pirate*s, 581 F.2d 751, 755 (9th Cir. 1978), cert. denied, 439 U.S. 1132 (1979) (distinctive characters, especially if they are expressed in visual form, are protectable by copyright); *Anderson v. Stallone*, 1989 Copr. L. Dec. P 26427, 1989 WL 206431 (C.D. Cal. 1989) (copyright protection extended to the Rocky character); *Toho Co., Ltd. v. William Morrow and Co., Inc.*, 33 F. Supp. 2d 1206, 1215 (C.D. Cal. 1998) (Godzilla); *Metro-Goldwyn-Mayer, Inc. v. American Honda Motor Co., Inc.*, 900 F. Supp. 1287, 1296 (C.D. Cal. 1995) (James Bond).

**OBJECTION.**   Mattel's "copyrightability of characters" jury instruction must be rejected for at least two reasons.  First, Mattel's attempt to inject this new legal theory is untimely. When the instruction was first proposed, it was already far too late in these proceedings, on the eve of trial and well after (i) the close of discovery, (ii) the submission of expert reports, and (iii) the due dates for all motion for summary judgment and motion in limine briefs, for Mattel to try to interject a new legal theory upon which to base its copyright infringement claims.  Second, Mattel's new legal theory is in any event legally insufficient here and its proposed instruction misstates the law.

## UNTIMELY ASSERTION OF NEW LEGAL THEORY

Mattel's "character" jury instruction was only filed as a supplemental jury instruction on May 13, 2008, and it states that MGA's "works infringe Mattel's copyrights if they copy recognizable and distinctive elements of the <u>personalities of the characters</u> portrayed in Carter Bryant's drawings."  (Emphasis added.)

On March 5, 2008, Mattel submitted a supplemental response to MGA's Interrogatory No. 31, which required that Mattel: "STATE THE COMPLETE FACTUAL BASIS FOR [MATTEL'S] CONTENTION that any BRATZ doll is substantially similar to, a copy or a derivative of BRATZ DESIGNS created by Carter Bryant on or before October 19, 2000." Relying heavily on the graphic analysis done by its expert Lee Loetz, Mattel responded that there is a "**visual consistency** from Bryant's sketches, to the first wave of dolls, up through the later waves of Bratz dolls."  Mattel's Supplemental Objections and Responses to MGA's 2nd Set of Interrogatories (dated March 5, 2008) at 27 (emphasis added).  Mattel then <u>inter alia</u> pointed out comparisons between the sketches and the dolls with regards to body proportions, posture, facial features, the eyes, eye makeup, lips, hair styling, clothing, accessories, and footwear.  <u>Id.</u> at 28-30.  Like its prior response to this interrogatory, Mattel did not even suggest that its copyright infringement claims were based on any "personality" or "character" comparisons.

Mattel also did not raise the "personalities" or "character" of the figures in the Bryant sketches or the Bratz dolls in its expert reports or in its summary judgment motion papers. Rather, Mattel's experts and its summary judgment motion relied **solely** on the supposed "substantial similarity" between the visual aspects of the Bryant sketches and the Bratz dolls. See, e.g., Expert Report of Lee Loetz; Rebuttal Expert Report of Lee Loetz; Mattel's Motion for Partial Summary Judgment (dated March 7, 2008) at 15-22; Mattel's Reply In Further Support Of Its Motion for Partial Summary Judgment (dated April 1, 2008) at 10 ("Mattel set forth … a comprehensive, **graphic** analysis of the dolls and the drawings and explained why common sense and applicable precedent compels a conclusion of substantial similarity here") (emphasis added).   Mattel's failure to timely raise its new "personalities/character" theory precluded MGA from filing for summary judgment on this legally deficient theory. See, e.g., Rice v. Fox Broadcasting Co., 330 F.3d 1170, 1175 (9th Cir. 2003) (affirming district court's grant of summary judgment because the alleged "character" at issue was not "sufficiently delineated to warrant copyright protection").

## LEGALLY INSUFFICIENT LEGAL THEORY

Even if Mattel had not waived this new theory of liability, the figures illustrated in Carter Bryant's sketches fall far short of the standard for copyrightability as "characters."  As the Ninth Circuit has explained, "characters are ordinarily not afforded copyright protection" apart from the copyrighted work, unless they are "especially distinctive" or comprise "the story being told."  Rice v. Fox Broadcasting Co., 330 F.3d 1170, 1175 (9th Cir. 2003). Thus, "[c]haracters that have received copyright protection have displayed consistent, widely identifiable traits." Id. (emphasis added).  That test cannot be satisfied here, given that Bryant's sketches were just that, sketches of figures that, as of September – October, 2000, had not been transformed into marketable items, much less actually distributed

1    publicly.  Thus, the Bryant sketch figures could not possibly have displayed "consistent,

2    widely identifiable traits."[4]

3

4    The holding in <u>Olson v. National Broadcasting Co., Inc.</u>, 855 F.2d 1446 (9th Cir. 1988), the

5    first decision cited by Mattel, is particularly instructive.  In <u>Olson</u>, the court rejected

6    plaintiff's copyright claim based on "lightly sketched characters" which were "depicted

7    only by three-or four-line summaries" in the treatment and screenplay, "plus whatever

8    insight into their characters may be derived from their dialogue and action." <u>Id.</u> at 1452-53.

9    <u>Olson</u> applies a <u>fortiori</u> here.  To the extent that the figures depicted in  Bryant's sketches

10   could even be described as "characters," they were delineated by only a few brief lines of

11   text in Mr. Bryant's "pitch book," which described the figures in the most generic and

12   abstract terms.  <u>See</u> Trial Exhibit 1.  In addition, unlike <u>Olson</u>, there was no "screen play"

13   accompanying the Bryant drawings.   Thus, there was certainly not enough detail and

14   repetition to discern any "traits," let alone the kind of "well-defined," "widely-identifiable"

15   physical and personality mannerisms that have been uniformly required for "character"

16   copyright protection in the Ninth Circuit.  Mattel, moreover, only refers to the Bryant

17   "drawings," not the brief text accompanying them.[5]

18

19

───────────────────

20   [4]    Although not  controlling, it is noteworthy  that  the  Copyright Office's  own

21   Compendium states that "The copyright law does not provide for the copyright registration

     of characters as such.  However, original works of authorship describing, depicting, or

22   embodying a character are registrable if otherwise in order."  Compendium at §202.02(1)

23   [5]    The "brief text" mentioned herein are highly abstract descriptions of the four initial

     Bratz girls, which do not extend beyond general fashion preferences.  For example, Lupe is

24   described as "the princess of pretty in her casual wear of tank top and wide leg khakis,"

     while Jade "loves far-out fashion! Mary Janes and a baby doll are just perfect for study

25   hall!"   These are hardly the sorts of distinctive character traits that would permit

     copyrightability of the characters themselves.   Indeed, even the descriptions of the

26   "characters" on MGA's packaging for Bratz dolls does not get into any level of detail about

     who each girl is in any distinctive way.  For example, on the first generation Jade doll

27   packaging, it only says the following: "Hey! My name is Jade! My fashion passion is

     clothes that are xtreme and far out! My friends call me 'Kool Kat' because I love cats! And

28   because I'm cool!!!"

1   The characters at issue in the other cases cited by Mattel well illustrate the Ninth Circuit's

2   strict and narrow requirements for "character" protection.  In Anderson v. Stallone, 1989

3   Copr. L. Dec. P 26427, 1989 WL 206431 (C.D. Cal. 1989), the Central District of

4   California held that the "Rocky" characters were entitled to copyright protection because

5   they "are one of the most highly delineated group of characters in modern American cinema.

6   The physical and emotional characteristics of Rocky Balboa and the other characters were

7   set forth in tremendous detail in three Rocky movies . . . Rocky Balboa is such a highly

8   delineated character that . . . his character has become identified with specific character

9   traits ranging from his speaking mannerisms to his physical characteristics."  See 1989 WL

10  206431 at *7.  Similarly, in Toho Co., Ltd. v. William Morrow & Co., Inc., 33 F. Supp. 2d

11  1206, 1216 (C.D. Cal. 1998), the court found that "Godzilla" qualified for copyright

12  protection because it is "always a pre-historic, fire-breathing, gigantic dinosaur alive and

13  well in the modern world," and thus is a "well-defined character with highly delineated

14  consistent traits."  See also Warner Bros. Inc. v. American Broadcasting Companies, Inc.,

15  720 F.2d 231, 241-42 (2d Cir. 1983) (referring to the rendering of the well-established

16  "Superman" character as including elements such as "[w]hat the character thinks, feels, says

17  and does" in addition to the "visual perception of the character"; "Superman looks and acts

18  like a brave, proud hero, who has dedicated his life to combating the forces of evil. . . .

19  Superman performs his superhuman feats with skill, verve, and dash, clearly the master of

20  his own destiny.");  Walt Disney Prods. v. Air Pirates, 581 F.2d 751, 755-56 (9th Cir. 1978)

21  (extending protection over Mickey Mouse and other Disney characters with distinctively

22  delineated visual and conceptual characteristics); Metro-Goldwyn-Mayer, Inc. v. American

23  Honda Motor Co., Inc., 900 F. Supp. 1287, 1296 (C.D. Cal. 1995) (finding that "James

24  Bond has certain character traits that have been developed over time through the sixteen

25  films in which he appears" and that "[a] James Bond film without James Bond is not a

26  James Bond film.").

27

28

Other more recent cases have stuck to the same principle, namely that characters receive copyright protection only where "the character really constitutes the story being told, but if the character is only the chessman in the game of telling the story he is not within the area of the protection afforded by the copyright."   Warner Bros. v. Columbia Broadcasting System, Inc., 216 F.2d 945, 950 (9th Cir. 1954).   See, e.g., Walker v. Viacom, 2008 U.S. Dist. LEXIS 38882 at *14 (N.D. Cal. 2008) (noting that a character in a comic strip would only be entitled to character protection "as a stand-alone character because he is an extremely consistent, distinct and identifiable character who 'dominates' the comic strip"); CBS Operations v. Reel Funds Int'l, 2007 U.S. Dist. LEXIS 58939 at *20 (N.D. Tex. 2007) (parties concede copyrightability of characters in the 'Andy Griffith Show' because each of seventy-nine separate episodes "contains the same opening sequence, contains and features the same primary characters of Andy Taylor, Barney Fife, Aunt Bee and Opie, and concerns the same relationships between the characters and the same recurrent themes in the same fictional town of Mayberry"); Mallery v. NBC, 2007 U.S. Dist. LEXIS 88960 at *18 (S.D.N.Y. 2007) (noting that "a 'minority artist' who has the ability to paint the future is an 'idea' that is not protected under the copyright laws").

This Court has also addressed this issue.   In Siegel v. Time Warner, Inc., this Court recognized that, with regard to "Superboy," "[i]t is thus the character's traits and attributes, as well as the character's interaction with other characters (notably compatriots and villains), that help define the boundaries of the copyright to a character."  496 F. Supp. 2d 1111, 1154 (C.D. Cal. 2007).

Simply put, there are neither distinctive characteristics to be found in Bryant's drawings, nor are there any "interactions" with any other characters that would provide any additional distinctiveness required for the copyrightability of these "characters."

## MATTEL'S SPECIAL JURY INSTRUCTION NO. __

## COPYRIGHT INFRINGEMENT—EVIDENCE OF COPYING OF

## NAMES OR TITLES

Although names or titles are not copyrightable by themselves, in considering whether defendants copied protected expression from the works that Mattel owns, you may consider whether defendants copied the title or name of those works.

**Authority:** *Shaw v. Lindheim*, 919 F.2d 1353, 1362 (9th Cir. 1994); *Wihtol v. Wells*, 231 F.2d 550, 553 (7th Cir. 1956).

**OBJECTION.**  The MGA Parties object to the instruction as untimely.  Mattel first submitted this instruction on July 25, 2008, more than two months after the initial jury instructions were due to be submitted.  It is far too late in these proceedings, two months into this trial, and well after (i) the close of discovery, (ii) the submission of expert reports, and (iii) the due dates for all motion for summary judgment and motion in limine briefs, for Mattel to try to interject a new legal theory upon which to bolster its copyright infringement claims.

The MGA Parties further object to this instruction on the grounds that it is legally unsupported and unsupportable, vague and ambiguous, and likely to confuse the jury.  This is yet another example of Mattel's attempt to conflate "actual copying" and "substantial similarity," in the hopes that the jury will disregard their obligation to undertake the rigorous requirements of the extrinsic and intrinsic tests of copyright infringement.  Access is undisputed in this case.  MGA has acknowledged that it believed that it owned the Bryant drawings, and that it used such drawings as inspiration for the first generation of Bratz dolls.  Whether or not certain "titles" or "names" were carried over from Bryant's drawings is irrelevant to substantial similarity, because, as Mattel freely admits, "names or titles are not copyrightable by themselves."  Thus, names and titles are filtered out of any comparisons made between the drawings and dolls under the extrinsic test of copyright infringement.  The issue in this phase of the case is whether the dolls infringe protectable elements in Bryant's 16 drawings registered by Mattel.  MGA's use of "titles" or "names," which both sides agree are not protectable, has not bearing on this issue and is injected by Mattel only to confuse and mislead the jury.  Mattel is free to argue its version of the facts supporting "factual copying," but there is no need for a separate instruction of this sort.

Finally, to the extent the Court believes an instruction of this sort is appropriate, MGA requests that it also include a listing of the factors present in this case that militate against a finding of "factual" copying. 6

## MATTEL'S SPECIAL JURY INSTRUCTION NO. __
## COPYRIGHT INFRINGEMENT—THREE-DIMENSIONAL WORKS CAN INFRINGE TWO-DIMENSIONAL WORKS

A two-dimensional work, such as a drawing, can be infringed by a three-dimensional work, such as a doll.  A doll, which consists of different materials or includes aspects that are not visible in a copyrighted drawing, nevertheless will infringe the drawing when the works are substantially similar in their appearance.  A three-dimensional work is not an independent creation, or non-infringing, merely because it includes or is a result of artistic or non-artistic work not included in the copyrighted work. Rather, the question is whether, under the standards I have explained, the three-dimensional work is substantially similar to the two-dimensional work as a whole.

**Authority:**  *King Features Syndicate v. Fleischer*, 299 F. 533, 534, 538 (2d Cir. 1924) (copyright of a comic book infringed by three-dimensional dolls of a character); *Fleischer Studios v. Ralph A. Freundlich, Inc.*, 73 F.2d 276, 278 (2d Cir. 1934) (drawing of Betty Boop character infringed by substantially similar doll:  "a three-dimensional form of doll, is an infringement of the two-dimensional picture or drawing"); *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1222-23 (9th Cir. 1997) ("making decisions that enable one to reproduce or transform an already existing work into another medium or dimension - though perhaps quite difficult and intricate decisions - is not enough to constitute the contribution of something 'recognizably his own,'" even where those decisions are "artistic").

**OBJECTION.**   The MGA Parties object to Mattel's proposed instruction since, among other things, it does not advise the jurors that in comparing an allegedly infringing 3-dimensional work with a registered 2-dimensional work the "extrinsic/intrinsic" tests still apply.  (See MGA Parties' Proposed Jury Instruction: Copyright Infringement – Comparing A Two-Dimensional Work With A Three-Dimensional Work.)   The MGA Parties also object because Mattel's proposed instruction does not add the cautionary instruction (necessary under the facts of this case) that the copyright in a two-dimensional work only covers what is shown on the face of the work (i.e., does not include anything that could arguably be implied by the 2-dimensional work).  (See id.)  The MGA Parties further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product. Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

The MGA Parties further object to Mattel's recent additions to this proposed jury instruction, as the self-serving statements propounded therein only exacerbate the faults in the instruction.  First, the instruction continues to doggedly avoid the filtering analysis required by the extrinsic test of copyright infringement.  The proposition that a doll "nevertheless will" infringe a drawing irrespective of the lack of visibility of various aspects in the drawing is fundamentally flawed.  An element which does not exist can not be infringed. Mattel's statement is entirely founded on the assumption that visual works are not subject to analytic dissection, a position which the Court has expressly rejected in its July 24, 2008 Order.

The MGA Parties submit that its instruction on this issue more fairly and accurately instructs the jury on the applicable issues.

## MATTEL'S SPECIAL JURY INSTRUCTION NO. __
## COPYRIGHT INFRINGEMENT—INTERMEDIATE WORKS

A copyright can be infringed by intermediate or preparatory works, including works prepared in the product development or marketing stage, that are substantially similar to a copyrighted work, regardless of whether the end product of the copying also infringes the copyright.

**Authority:** *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1518-19 (9th Cir. 1993); *Walker v. Univ. Books, Inc.*, 602 F.2d 859, 864 (9th Cir. 1979); *Walt Disney Prods. v. Filmation Assocs.*, 628 F. Supp. 871, 875-76 (C.D. Cal. 1986).

1 **OBJECTION.**  The MGA Parties object to the inclusion of any instruction relating to
2 alleged "intermediate works."  First, Mattel did not assert this theory in response to MGA's
3 discovery requests directed to Mattel's theories of copyright liability and it would be unduly
4 prejudicial to allow Mattel to raise this theory now after (i) discovery is closed, and (ii) the
5 trial has been in session for two months.  Mattel is attempting to make an end-run around
6 the standing issues that it has encountered during this trial by attempting to assert copyright
7 infringement based on drawings that Mattel has never registered with the Copyright Office.
8 Further, Mattel has already represented on the record, after the Phase 1-A verdict was
9 announced, that it only intended to bring a copyright infringement claim based on its
10 registered drawings.  The following exchange occurred at the hearing of July 18, 2008:

11      THE COURT:  What particular works is the jury going to be making the
12      comparison to?  All the drawings for which they have found ownership?  Or
13      are you going to be identifying specific drawings that you believe are at the
14      heart of what is protected?

15      MR. QUINN:  The specific drawings as to which we have filed copyright
16      registrations.

17 (Tr. 45:19-25).

18

19 In addition, the "intermediate works" doctrine is inapplicable to this case since it is a
20 doctrine directed to the context of "reverse engineering" in the context of computers and
21 computer software.  See, e.g., Sega Enters. Ltd. v. Accolade, Inc., 977 F.2d 1510 (9th Cir.
22 1992); see also Sony Computer Entm't v. Connectix Corp., 203 F.3d 596 (9th Cir. 2000);
23 Adobe Sys. Inc. v. Southern Software Inc., 1998 U.S. Dist. LEXIS 1941 (N.D. Cal. Feb. 2,
24 1998); Atari Games Corp. v. Nintendo, Inc., 1993 U.S. Dist. LEXIS 6786 (N.D. Cal. May
25 18, 1993).  The MGA Parties further object to this instruction (and Mattel's other copyright
26 instructions) because it does not properly explain that the jury must consider separately each
27 alleged infringing act and/or product.  Thus, the instruction would mislead the jury by

28

suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

# MATTEL'S SPECIAL JURY INSTRUCTION NO. __

# COPYRIGHT INFRINGEMENT—INTENT TO INFRINGE NOT NECESSARY FOR LIABILITY

Direct copyright infringement does not require intent or any particular state of mind. A defendant may be held liable for copyright infringement even if he believes in good faith that he is not infringing a copyright.

**Authority:** *Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978) ("[E]ven when the defendant believes in good faith that he is not infringing a copyright, he may be found liable."); *L.A. News Serv. v. Conus Communications Co.*, 969 F. Supp. 579, 584 (C.D. Cal. 1997) ("Direct infringement does not require intent or any particular state of mind.").

1  **OBJECTION.**   The MGA Parties object to this instruction on the grounds that it is
2  unnecessary and unduly prejudicial.  The Ninth Circuit model instruction on infringement,
3  No. 17.4, sets forth the elements Mattel is required to prove and does not include an "intent"
4  element.  It is inappropriate and unduly prejudicial to include a separate instruction on this
5  issue as Mattel suggests.  The MGA Parties also object to this instruction on the grounds
6  that it fails to advise the jury that the lack of an "intent" requirement does not in any way
7  undercut the defendants' position that the Bratz dolls were a product of independent
8  creation or the Constitutional underpinnings of copyright law, which encourage third parties
9  to build upon the works of others.  (See MGA Parties' Proposed Jury Instruction: Copyright
10  Infringement – Independent Creation.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 17.20

## DERIVATIVE LIABILITY—VICARIOUS INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF

If you find that MGA infringed Mattel's copyright in the Bratz works, you may consider Mattel's claim that MGA's CEO Isaac Larian vicariously infringed that copyright. Mattel has the burden of proving each of the following by a preponderance of the evidence:

1.     Mr. Larian profited directly from the infringing activity of MGA;

2.     Mr. Larian had the right and ability to supervise/control the infringing activity of MGA; and

3.     Mr. Larian failed to exercise that right and ability.

If you find that Mattel proved each of these elements, your verdict should be for Mattel if you also find that MGA infringed Mattel's copyright.  If, on the other hand, Mattel has failed to prove any of these elements, your verdict should be for Mr. Larian on Mattel's claim for copyright infringement, unless you find that Mr. Larian is liable for contributory infringement under the instruction that follows.

**Authority:**  9th Cir. Civ. Jury Instr. 17.20 (2007) (modified).

**OBJECTION.**  The MGA Parties object to this instruction on the grounds that it deviates from the Ninth Circuit model instruction, which accurately sets forth the applicable law. Specifically, the MGA Parties object to Mattel's inclusion of the word "control" in phrase 2. above and to its decision to not include clarifying language indicated by the Ninth Circuit's model rule.  The MGA Parties also object to this instruction on the grounds that it is not limited to the 16 Bryant drawings registered by Mattel that are the basis of Mattel's infringement claims in this phase of the trial.  MGA's propose instruction No. 17.20 more accurately instructs the jury on this issue, consistent with the Ninth Circuit's model instructions.

The MGA Parties object to Mattel's characterization of Isaac Larian as MGA's CEO.  The jury is aware of the relationship between the parties and Mattel's frequent reminders of that relationship is argument, not instruction.

## 17.21

## DERIVATIVE LIABILITY—CONTRIBUTORY INFRINGEMENT

A defendant may be liable for copyright infringement engaged in by another if he/it knew or had reason to know of the infringing activity and intentionally materially contributes to that infringing activity.

If you find that MGA infringed Mattel's copyright in Bratz works, but that MGA Hong Kong and/or MGA's CEO Isaac Larian did not directly or vicariously engage in acts of infringement, you should proceed to consider Mattel's claim that MGA Hong Kong and Mr. Larian contributorily infringed that copyright.  To prove contributory copyright infringement, Mattel must prove both of the following elements by a preponderance of the evidence:

1.     Mr. Larian and/or MGA Hong Kong knew or had reason to know of the infringing activity of MGA; and

2.     Mr. Larian and/or MGA Hong Kong intentionally materially contributed to MGA's infringing activity.

If you find that MGA infringed Mattel's copyright and you also find that Mattel has proved both of these elements, your verdict should be for Mattel.  If, on the other hand, Mattel has failed to prove either or both of these elements as against MGA Hong Kong and/or Mr. Larian, and also failed to prove direct or vicarious infringement by MGA Hong Kong and/or Mr. Larian, your verdict should be for those defendants.

**Authority:**  9th Cir. Civ. Jury Instr. 17.21 (2007).

**OBJECTION.**  The MGA Parties object to this instruction on the grounds that it is not limited to the 16 Bryant drawings registered by Mattel that are the sole grounds for Mattel's infringement claims.  Mattel's proposed instruction is also improper to the extent that it misstates the applicable legal standard and does not instruct the jury that mere awareness of another parties' infringement is insufficient.  The MGA Parties also object on the grounds that this instruction (1) fails to clarify for the jury the requirements of showing intentional inducement (<u>see</u> Errata to Jury Instructions submitted by Bryant on April 15, 2008); and (2) improperly clusters all defendants together in such a way that it suggests to the jury that a finding of contributory liability against one defendant would be sufficient to enter a finding against all defendants.  The MGA Parties further object to this instruction (and Mattel's other copyright damages instructions) because it does not properly explain that the jury must base any damages award on its specific findings of infringement, by considering separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should recover damages based on all of the alleged infringement.

The MGA Parties generally object to Mattel's characterization of Isaac Larian as MGA's CEO.  The jury is aware of the relationship between the parties and Mattel's frequent reminders of that relationship is argument, not instruction.

**Affirmative Defenses**

### 17.19

### COPYRIGHT—AFFIRMATIVE DEFENSE—ABANDONMENT

Defendants contend that Mattel does not own the copyrights at issue in this case because Mattel abandoned the copyrights.  Mattel cannot claim ownership of the copyrights if they were abandoned.  In order to show abandonment, the defendants have the burden of proving each of the following by a preponderance of the evidence:

1.    Mattel intended to surrender rights in the works; and

2.    An act by Mattel evidencing that intent.

Mere inaction does not constitute abandonment of the copyright; however, this may be a factor for you to consider in determining whether Mattel has abandoned the copyright.

If you find that Mattel has proved its claims for copyright infringement against the defendants, your verdict should be for Mattel, unless you find that the defendants have proved each of the elements of this affirmative defense, in which case your verdict should be for the defendants.

**Authority:**  9th Cir. Civ. Jury Instr. 17.19 (2007).

**OBJECTION**.  The MGA Parties object to this instruction and respectfully submit that their proposed instruction be used instead.  The MGA Parties submit that the last paragraph of this instruction – which instructs the jury on the essential function of an affirmative defense – is unnecessary and potentially confusing in the context of this instruction, as this language is not found in any other instruction on an affirmative defense despite being universally true.  The MGA Parties further object that an explanation regarding the nature of the conduct that would "evidenc[e]" intent to abandon is appropriate, such as the language in the MGA Parties' proposed instruction (which directs jurors to consider "[c]onduct by Mattel which was 'consistent with an intent to abandon' or which 'implies abandonment'").

## MATTEL'S SPECIAL JURY INSTRUCTION NO. __

## COPYRIGHT—AFFIRMATIVE DEFENSE—GOOD FAITH TRANSFER

The defendants claim that their rights in the Bratz works created by Carter Bryant should prevail over Mattel's rights in those works because Mr. Bryant transferred the rights to MGA after he transferred them to Mattel and MGA obtained the rights in good faith. In order to establish that MGA's later-acquired rights in the Bratz works should prevail, the defendants have the burden of proving by a preponderance of the evidence that MGA:

1.      Received the transfer of rights in Bratz works in good faith and without notice of Mr. Bryant's earlier transfer to Mattel, that is, without notice that Mattel had rights to the works;

2.      Paid valuable consideration;

3.      Registered each of the copyrights in Bratz works with the Copyright Office; and

4.       Duly recorded the transfer of the rights to MGA, i.e., the MGA/Bryant assignment agreement, before Mattel recorded its transfer, i.e., the Inventions Agreement.

To duly record the transfer, as required for the fourth element, MGA must have submitted to the Copyright Office the MGA/Bryant assignment agreement such that the recorded document, or material attached to it, specifically identifies the copyrighted works to which the assignment pertains. A registration of a copyright is not a substitute for recordation.

It is undisputed in this case that the MGA/Bryant assignment agreement has not been recorded.

**Authority:** 17 U.S.C. § 205(d); *Peer Int'l Corp. v. Latin Amer. Music Corp.*, 161 F. Supp. 2d 38, 47-48 (D.P.R. 2001); Compendium II, *Copyright Office Practices*, Chapters 1602.2, 1604.02.

1  **OBJECTION**.  The MGA Parties object to the following sentence:  "It is undisputed in this

2  case that the MGA/Bryant assignment agreement has not been recorded."   Among other

3  things, MGA's registrations each specifically note that MGA's ownership in the work at

4  issue is by "assignment," which is all that is required by 17 U.S.C. § 205(d).   If the

5  instruction is to provide facts regarding the recordation, it should also note that there is no

6  dispute that MGA's registrations of the works at issue were recorded with the Copyright

7  Office long before Mattel's purported registrations.   In addition, as the MGA Parties argued

8  in opposing Mattel's motion for partial summary judgment, where, as here, a plaintiff has

9  *actual* knowledge of the assignment, the recordation element should not be strictly

10  construed and the jury should be permitted to consider whether plaintiff's actual knowledge

11  suffices to establish the recordation element of the section 205(d) defense.  (See MGA MSJ

12  Opp'n at 30-31, citing 2 Nimmer on Copyright § 7.16 (2007).)   The MGA Parties also

13  object to this proposed instruction to the extent that the term "Bratz works" is improper.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA Parties' Objections to Mattel's Proposed Jury Instructions – Case No. CV 04-9049 SGL (RNBx)

**1**

**2**

<u>Mattel's Statement Regarding Fraudulent Concealment</u>

**3**   There is no need for the jury to make any findings in Phase 1B regarding the duration
**4** of the period of tolling due to fraudulent concealment, and the proposed jury instructions
**5** and verdict form need not include reference to the dates of April 27, 2002 or April 27, 2001
**6** with respect to Mattel's claims for intentional interference with contractual relations or
**7** conversion.  The inclusion of those dates could lead to juror confusion.

**8**   The Court has already found that July 18, 2003 is the <u>earliest</u> date on which Mattel
**9** had knowledge of the wrongdoing at issue in this lawsuit.  *See* May 27, 2008 Order re
**10** Statute of Limitations Defense, at 8 (finding that the July 18, 2003 *Wall Street Journal*
**11** article wherein Larian indicated that he chose Bryant's idea for Bratz in late 1999 is the
**12** earliest date on which Mattel's claims could have accrued).  The Court also expressly found,
**13** based on undisputed evidence, that that "there is no evidence that Mattel had any
**14** **knowledge** of any of the three generic elements of its claims, and thus no claim accrued,
**15** prior to the earliest date identified by the Court, which is July 18, 2003."  June 2, 2008
**16** Order at 2 (referring to generic elements of wrongdoing, causation and harm).  That finding
**17** is itself dispositive because it shows that, if there was concealment, the period of tolling
**18** caused thereby could not have expired prior to July 18, 2003.  The law is clear that tolling
**19** result from fraudulent concealment does not end until a plaintiff has, at a bare minimum,
**20** "knowledge" of the generic elements of *both* harm and causation.  *Hynix Semiconductor*,
**21** 2007 WL 3284060, *3 (N.D. Cal. 2003) (tolling based on fraudulent concealment ends
**22** when the plaintiff has "a suspicion of wrongdoing, *coupled with a knowledge* of the harm
**23** *and* its cause") (emphasis added).  Indeed, Mattel contends that something more -- "near-
**24** actual" notice of the specific harm -- is required to end a period of tolling due to
**25** concealment.  *See, e.g.*, *Garamendi v. SDI Vendome SA*, 276 F. Supp. 2d 1030, 1042-3 (C.D.
**26** Cal 2003).

**27**   Accordingly, because (1) the Court has found as a matter of law that Mattel did not
**28** have knowledge of *either* the harm or its cause prior to July 18, 2003, and (2) knowledge of

both the harm and its cause is required to end a period of tolling where there is concealment, the only issue for the jury is whether there was concealment.  If there was tolling, such tolling could not have ended before July 18, 2003 -- the first date on which Mattel could possibly have learned of the specific harm at issue and its cause under the Court's prior findings.  Because the earliest possible end-of-tolling date (July 18, 2003) is long after the April 27, 2001 and April 27, 2002 dates that would render Mattel's claims for conversion and intentional interference with contractual relations timely, there is no need for the jury to make a finding as to the duration of the tolling.  If the jury finds concealment, Mattel's claims are timely.

**MGA Parties' Response To Mattel's Statement Regarding Fraudulent Concealment**

In its argument above, Mattel seeks a summary judgment ruling on an issue this Court held it could not resolve on summary judgment. The MGA Parties respectfully submit that Mattel should not be permitted to take an issue away from the jury when this Court found it could not resolve that issue on the undisputed facts.

As this Court indicated in its July 24, 2008 Order, the Court's analysis in its rulings on May 27 and June 2 rulings summary judgment 1) addressed the accrual of claims <u>other than</u> intentional interference with contractual relations and conversion, and 2) applied the specific test relating to the "discovery rule" under California law. (July 24, 2008 Order at 8.) For these reasons, as the Court indicated in its July 24 Order, there is no prior ruling from this Court that dictates the duration of any period of fraudulent concealment in this case for either intentional interference or conversion. (<u>Id.</u> at 8-9; <u>see also</u> June 2, 2008 Order at 3 ("the conclusions drawn by the Court regarding the possible accrual dates for the remaining state-law claims do not apply to Mattel's claims for intentional interference with contractual relations and conversion").) Thus, these issues have been left for the jury.

Under California law, the "discovery rule" postpones accrual of a claim until "the plaintiff discovers, or has reason to discover, <u>the cause of action</u>." <u>Norgart v. Upjohn Co.</u>, 21 Cal.4th 383, 397 (1999) (emphasis added). "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her <u>injury</u> was caused by <u>wrongdoing</u>, that someone has done something wrong to her." <u>Jolly v. Eli Lilly & Co.</u>, 44 Cal.3d 1103, 1110 (1988) (emphasis added). As this Court's rulings on summary judgment have shown, both the "wrongdoing" and the "injury" vary among Mattel's claims. This is particularly true for Mattel's conversion claim, which is limited to seeking redress for the taking of tangible items. (<u>See</u> April 25, 2008 Order at 3.) Having found the discovery rule inapplicable to Mattel's claims for intentional interference and conversion, this Court has simply never had cause to consider when Mattel became aware of the "wrongdoing" or "injury" asserted in these claims against each of the defendants. Thus, even if the discovery rule applied to these claims, there would be <u>no finding</u> on which

1  Mattel could rely to take these questions away from the jury.

2      Moreover, even if there were such a finding, it would be inapposite.   Under

3  California law, the standards for applying fraudulent concealment and the discovery rule are

4  not identical.  As the Ninth Circuit recently observed, "California applies a special standard

5  in cases of fraudulent concealment" under which a plaintiff must show *inter alia* "that the

6  plaintiff was not at fault for failing to discover [its cause of action] or had no actual or

7  presumptive  knowledge  of  facts  sufficient  to  put  him  on  inquiry."    Clemens v.

8  DaimlerChrysler Corp., -- F.3d --, 2008 WL 2840662, at *4 (9th Cir. July 24, 2008); see

9  also Snapp & Assoc. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson, 96 Cal. App.

10  4th 884, 890-891 (2002) ("The fraudulent concealment doctrine 'does not come into play,

11  whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is

12  on notice of a potential claim.'").   This Court has already held that it could not resolve

13  whether this standard was met on summary judgment.   (See June 2, 2008 Order at 3

14  ("Whether a period of fraudulent concealment exists, as well as the duration of any such

15  period, cannot be determined on the undisputed record").)   As such, the entire inquiry

16  should be presented to and decided by the jury.

17

18

19

20

21

22

23

24

25

26

27

28

1

## MATTEL'S SPECIAL JURY INSTRUCTION NO. __

2

## STATUTE OF LIMITATIONS – FRAUDULENT CONCEALMENT

3        Mattel claims that defendants fraudulently concealed the facts underlying Mattel's

4   claims of intentional interference with contract and conversion.  Defendants deny these

5   allegations.

6        To prove fraudulent concealment, Mattel must show that the defendants intentionally

7   concealed the facts that could have led Mattel to discover that Carter Bryant created Bratz

8   works while employed by Mattel or that Mr. Bryant entered into a contract with and worked

9   with MGA while he was still employed by Mattel.

10        If you find that defendants intentionally concealed the facts that could have led

11   Mattel to discover that Carter Bryant created Bratz works while employed by Mattel or that

12   Mr. Bryant entered into a contract with and worked with MGA while he was still employed

13   by Mattel, you should find for Mattel on its allegations of fraudulent concealment.

14

15        **Authority:**  *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1042-3 (C.D.

16   Cal. 2003); *Hynix Semiconductor v. Rambus, Inc.*, 2007 WL 3284060, at *3 (N.D. Cal. Nov.

17   2, 2007) (tolling based on fraudulent concealment ends when the plaintiff has "a suspicion

18   of wrongdoing, coupled with a knowledge of the harm and its cause"); *Grisham v. Philip*

19   *Morris U.S.A., Inc.*, _ Cal.4th _, 54 Cal. Rptr. 3d 735, 744 (2007) ("[a] defendant's fraud in

20   concealing a cause of action against him will toll the statute of limitations."); *Bernson v.*

21   *Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994) (reversing summary judgment on statute

22   of limitations grounds where "defendant's fraud in concealing a cause of action against him

23   tolls the applicable statute of limitations"); *April Enterprises, Inc. v. KTTV*, 147 Cal. App.3d

24   805, 831-32 (1983).

25

26

27

28

1   **OBJECTION**.   The preceding instruction is objectionable in that it asserts that tolling

2   based on fraudulent concealment ends only once Mattel obtained knowledge of specific

3   "concealed information."   Under California law, "a suspicion of wrongdoing, coupled with

4   a knowledge of the harm and its cause" is sufficient to end tolling based on fraudulent

5   concealment.  Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson,

6   96 Cal. App. 4th 884, 890-91 (2002); see also Soliman v. Philip Morris Inc., 311 F.3d 966,

7   971-72 (9th Cir. 2002) (plaintiff "need not be aware of the specific 'facts' necessary to

8   establish the claim" in order for a cause of action to accrue. Nor need he be aware of the

9   particular legal theory that will support it. His claim accrues "when, simply put, he at least

10  'suspects ... that someone has done something wrong' to him."), citing Norgart v. Upjohn

11  Co., 21 Cal. 4th 383, 397 (1999), and Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1110-11

12  (1988); id. at 1110 n.7 (the "wrong" that plaintiff is to be aware of for purposes of the

13  statute of limitations need not be in any technical sense, but rather in accordance with its

14  "lay understanding"); Butler v. San Diego Dist. Attorneys Office, 2007 WL 935711, at *3

15  (S.D. Cal. Feb. 27, 2007) (in California, "the statute of limitations begins to run when the

16  plaintiff suspects or should suspect that someone has done something wrong to him").  The

17  instruction is also objectionable to the extent it suggests that fraudulent concealment by one

18  defendant would necessarily toll the statute as to another defendant not found culpable in

19  the alleged concealment.  See Sanchez v. South Hoover Hospital, 18 Cal. 3d 93, 100 (1976)

20  ("The rationale for the foregoing rule [of fraudulent concealment] is that the culpable

21  defendant should be estopped from profiting by his own wrong [t]o the extent that it

22  hindered an 'otherwise diligent' plaintiff in discovering his cause of action.") (emphasis

23  added).

24

25

26

27

28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. __
## AFFIRMATIVE DEFENSE—CONSENT

The defendants claim that Mattel consented to the wrongful conduct underlying Mattel's claims against the defendants in this case.  To prevail on this affirmative defense, the defendants must prove that Mattel knew of the defendants' wrongful conduct and consented to such conduct, and that such consent was obtained without any fraud or mistake.

**Authority:**  2 Schwing, *California Affirmative Defenses*, § 32:3, at 197 (2007)  ("To be a defense, the consent given must have been to the very act or circumstances that caused the harm giving rise to the action.") (citation omitted); *Greenawalt v. Rogers*, 151 Cal. 630, 635 (1907) ("An apparent consent is not real or free when obtained through . . . fraud [or] mistake.").

**OBJECTION.**   The MGA Parties object to this instruction on the grounds that it omits any explanation or definition of the term "consent" – specifically, the MGA Parties object that the proposed instruction does not explain that consent may be actual or apparent.   <u>See</u> CACI No. 1302 (citing Rest. 2d Torts § 892).   The MGA Parties respectfully submit that the instruction on consent should include the following:

> Consent is the actual or apparent willingness for conduct of another to occur.

> Actual consent may be expressed in words or acts, silence or inaction, when the circumstances or other evidence establish that the silence or inaction is intended to give consent; actual consent need not be communicated to the person taking the alleged wrongful act.

> Apparent consent exists when a person's acts or words, silence or inaction, would be understood by a reasonable person as intended to indicate consent, and in fact so understood by the person doing the alleged wrongful act.

<u>See</u> MGA Parties Proposed Jury Instruction "Affirmative Defense – Consent."

**Damages**


**CACI 3901**

**INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED FOR**

**INTENTIONAL INTERFERENCE WITH**

**CONTRACTUAL RELATIONS**


In Phase 1A, you determined that Mattel had proved its claim for intentional interference with contractual relations against the defendants MGA and Isaac Larian.  You must now decide how much money will reasonably compensate Mattel for this harm.  This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by MGA's and Mr. Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm.  However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)     Compensatory and general damages, including disgorgement of profits earned by MGA and Mr. Larian as a result of their wrongful conduct;

(2)     Prejudgment interest at the maximum rate, which is 7%, calculated from the date Mattel's claim arose;

(3)     Punitive damages.


**Authority:**  CACI No. 3901; *GHK Assocs. v. Mayer Group*, 224 Cal. App. 3d 856, 874-76 (1990); *Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120, 1140 (1986).

**OBJECTION**. The MGA Parties object to this instruction because it does not explain that Mattel's damages cannot be based on the MGA Parties' purported interference with Mattel's rights to Bratz, or the MGA Parties' profits derived therefrom. .  See 4/25/2008 Order Granting in Part, Denying in Part, and Deferring in Part the Parties' Motions for Partial Summary Judgment, at 2. ("[T]he tortuous interference with contract claim is preempted to the extent that it is based on Mattel's rights to Bratz.").   The preceding instruction is further objectionable to the extent that it does not require Mattel to prove that it suffered any financial loss resulting from the loss of the benefits of the contractual relationship in question and consequential losses, if any, caused by the alleged interference. See BAJI § 7.89 The proceeding instruction is further objectionable because, in altering the model instruction, Mattel has eliminated the legal requirement that the jury find a causal connection between specific acts of wrongdoing and the purported harms to Mattel.  See CACI No. 3901 (2008) The instruction is also objectionable because Mattel lacks any evidentiary basis to seek punitive damages. See Barry v. Raskov, 232 Cal. App. 3d 447, 457 (1991) (trial court properly refused to instruct jury on punitive damages, as there was not clear and convincing evidence of fraud); see also Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence").

The MGA Parties further object to the portion of the instruction related to prejudgment interest as misleading.   Prejudgment interest is only appropriate where the plaintiff is seeking compensation for loss of use of money or property. See Cal. Civ. Code § 3288; Greater Westchester Homeowners Ass'n v. City of Los Angeles, 26 Cal. 3d 86, 102–103 (1979) ("[S]uch interest represents the accretion of wealth which money or particular property could have produced during a period of loss.").   To the extent Mattel seeks "disgorgement of profits earned by MGA and Mr. Larian," Mattel does not seek "compensation" of any kind, including for the "loss of use" of any funds to which it was entitled at the time its claim arose.  Prejudgment interest is therefore unavailable on Mattel's

disgorgement claims.  Likewise, the instruction is misleading because it does not explain that prejudgment interest cannot be calculated on a judgment for punitive damages.  <u>Lakin v. Watkin Associated Industries</u>, 6 Cal. 4th 644, 664 (1993) ("We therefore conclude that section 3291 does not authorize the award of prejudgment interest on punitive damages.").

# CACI 3901

## INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND BREACH OF THE DUTY OF LOYALTY

In Phase 1A, you determined that Mattel had proved its claims against the defendants MGA and Isaac Larian for aiding and abetting Carter Bryant's breach of fiduciary duty and breach of the duty of loyalty. You must now decide how much money will reasonably compensate Mattel for this harm. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by MGA's and Mr. Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)  Compensatory and general damages, including disgorgement of profits earned by MGA and Mr. Larian as a result of their wrongful conduct;

(2)  Prejudgment interest at the maximum rate, which is 7%, calculated from the date Mattel's claim arose;

(3)  Punitive damages.

**Authority:** CACI No. 3901.

**OBJECTION**.  The  preceding  instruction  is  objectionable  to  the  extent  it  seeks disgorgement of profits earned by MGA and Mr. Larian, for the reasons set forth in the MGA Parties' objection to Mattel's Special Jury Instruction, "Disgorgement of Profits." First, as shown, , profits for the breach of fiduciary duty of loyalty are limited to those profits earned by the agent while the agent owed a fiduciary duty.  Second, the findings of the Court and the jury with respect to Mr. Bryant's breaches of fiduciary duty do not implicate profits generated by the sale of Bratz and related products.  Rather, Mattel's damages are limited to those caused by (1) Mr. Bryant's disclosure of "Proprietary Information," as distinct from Mr. Bryant's "Inventions," both of which were defined under the Inventions Agreement, and (2)  Mr. Bryant's consummation of an agreement with MGA while employed by Mattel.  Additionally, the preceding instruction is objectionable to the extent it seeks MGA's profits from the commercial use of Carter Bryant's sketches because such damages claims are preempted by federal copyright law. Del Madera Props. v. Rhodes & Gardner, Inc., 820 F.2d 973, 977 (9th Cir. 1987), overruled on other grounds, Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994)).

The proceeding instruction is further objectionable because, in altering the model instruction, Mattel has eliminated the legal requirement that the jury find a causal connection between specific acts of wrongdoing and purported harm to Mattel.  See CACI No. 3901 (2008) The instruction is also objectionable to the extent that it does not require Mattel to prove that it suffered any financial loss resulting from the conduct found to be aiding and abetting a breach of duty. It also fails to caution the jury that it should award damages only for the conduct found to constitute aiding and abetting the breaches at issue. Thus, if the jury finds that MGA and Larian aided and abetted Bryant's use of Mattel resources in breach of his duties, the jury should be told that it must award damages for the harm caused by the loss of those resources, that is the value of those lost resources at the time they were used.  Similarly, if the jury found that MGA and Larian aided and abetted Bryant's breach of his duties by accepting additional work from MGA, the jury should be

1   told that it must award damages to compensate Mattel in an amount equal to the harm

2   caused by Bryant accepting such additional work from MGA.

3

4   The MGA Parties further object to the portion of the instruction related to prejudgment

5   interest as misleading.   Prejudgment interest is only appropriate where the plaintiff is

6   seeking compensation for loss of use of money or property. See Cal. Civ. Code § 3288;

7   Greater Westchester Homeowners Ass'n v. City of Los Angeles, 26 Cal. 3d 86, 102–103

8   (1979) ("[S]uch interest represents the accretion of wealth which money or particular

9   property could have produced during a period of loss.").   To the extent Mattel seeks

10  "disgorgement of profits earned by MGA and Mr. Larian," Mattel does not seek

11  "compensation" of any kind, including for the "loss of use" of any funds to which it was

12  entitled at the time its claim arose.  Prejudgment interest is therefore unavailable on Mattel's

13  disgorgement claims.   Likewise, the instruction is misleading because it does not explain

14  that prejudgment interest cannot be calculated on a judgment for punitive damages.  Lakin v.

15  Watkin Associated Industries, 6 Cal. 4th 644, 664 (1993) ("We therefore conclude that

16  section 3291 does not authorize the award of prejudgment interest on punitive damages.").

17

18  In the same vein, if the jury finds that Bryant breached his duties by directly competing with

19  Mattel while still employed at Mattel, it must award damages to compensate Mattel for the

20  harm caused by that competition during the term of his employment.  In addition, if the jury

21  finds Bryant breached his duties by presenting the BRATZ sketches owned by Mattel to

22  MGA, it must compensate Mattel for the harm caused by that breach, that is the value of the

23  sketches at the time of the breach.  See Restatement (Second) of Torts § 876 (1979); BAJI §

24  12.57 (2008) (as modified); Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966)

25  (remanding to assess damage to plaintiff book publisher for the costs incurred to replace

26  personnel recruited by president and competitor using confidential information in breach of

27  president's fiduciary duty); GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs.,

28

1  Inc., 83 Cal. App. 4th 409, 426 (2000) (damages for breach of fiduciary duty were expenses

2  incurred to recruit new employees); Charles T. Powner, Co. v. Smith, 91 Cal. App. 101

3  (1928) (damages were profits on directly competitive sales resulting from use of employer's

4  time and facilities); Sumner v. Nevin, 4 Cal. App. 347, 350 (1906) (damages were

5  commissions received while still employed); see also Design Strategies Inc. v. Davis, 384 F.

6  Supp. 2d 649 (S.D.N.Y. 2005) (damages were amount of salary earned during time

7  employee was disloyal, and not the profits from a contract that evidence showed employer

8  would not have been awarded); Frye-Tech, Inc. v. Harris, 46 F. Supp. 2d 1144 (D. Kan.

9  1999) (awarding damages for value of resources including employee time used to develop

10  competing products).

11

12  Finally, the instruction is objectionable because Mattel lacks any evidentiary basis to seek

13  punitive damages. See Barry v. Raskov, 232 Cal. App. 3d 447, 457 (1991) (trial court

14  properly refused to instruct jury on punitive damages, as there was not clear and convincing

15  evidence of fraud); see also Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("[a] party

16  is entitled to an instruction about his or her theory of the case if it is supported by law and

17  has foundation in the evidence").

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S SPECIAL JURY INSTRUCTION NO. __
## DISGORGEMENT OF PROFITS

Mattel is entitled to obtain disgorgement of profits as an element of its damages. Under the law, MGA and Isaac Larian are not permitted to retain profits or advantages they obtained by engaging in the wrongful acts of aiding and abetting breach of fiduciary duty and duty of loyalty that you have found.  Accordingly, if you find that MGA and/or Mr. Larian obtained profits or advantages because of these wrongful acts, those profits and advantages should be awarded to Mattel.

**Authority:**  Restatement of Restitution, § 201 (2008) ("Where a fiduciary in violation of his duty to the beneficiary communicates confidential information to a third person, the third person, if he had notice of the violation of duty, holds upon a constructive trust for the beneficiary any profit which he makes through the use of such information."); *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 543 (2007) ("Disgorgement of profits is particularly applicable in cases dealing with breach of a fiduciary duty"; "Active participants in the breach of fiduciary duty by another are accountable for all advantages they gained thereby and are liable to the beneficiary of the duty"); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1127 (C.D. Cal. 2003) (a party who aids and abets a breach of fiduciary duty will be jointly liable) (citing *Heckmann v. Ahmanson*, 168 Cal. App. 3d 119 (1985)); *Xum Speegle, Inc. v. Fields*, 216 Cal. App. 2d 546 (1963) (upholding accounting of all insurance commissions wrongfully diverted to defendant in action for breach of fiduciary duty); *Adams v. Herman*, 106 Cal. App. 2d 92, 99 (1951) ("It is an integral part of that rule that, if the agent makes a secret profit from the agency, the principal may recover such profit."); *Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1086 (9th Cir. 2003) ("Although there are few reported cases addressing the appropriate remedy, those we have found have also required employees to turn over profits received as a result of breaching their duty of loyalty."); Restatement (2d) of Agency, § 403 ("If an agent

1  receives anything as a result of his violation of a duty of loyalty to the principal, he is

2  subject to a liability to deliver it, its value, or its proceeds, to the principal.").

**OBJECTION.**  This instruction is misleading to the extent it seeks disgorgement of MGA's profits pursuant to Mattel's claim for aiding and abetting Carter Bryant's breaches of his fiduciary duty and duty of loyalty.  As a threshold matter, Mattel's aiding and abetting claims, predicated on Carter Bryant's breach of his fiduciary duty and duty of loyalty, do not implicate profits generated by the sale of Bratz fashion dolls and Bratz-related products. Conversely, Mattel's disgorgement theory is limited to a demand for profits from the allegedly infringing sale of Bratz fashion dolls and related products.   Accordingly, disgorgement is not available as a damages theory for Mattel's aiding and abetting duty of loyalty and fiduciary duty claims.

The jury has found that the breach of fiduciary duty that underlies Mattel's aiding and abetting claim is limited to Carter Bryant's disclosure of "Propriety information."  Propriety information is defined under the Inventions Agreement as information that "derives independent economic value, actual or potential, from not being generally known to the public."   Examples given include Mattel's relationship with third parties, including customers and suppliers.

The Court has ruled that Carter Bryant's drawings are "Inventions" as defined by Paragraph 2 of the Inventions Agreement.  That paragraph was not included in the Court's Final Jury Instructions As Given defining Mr. Bryant's fiduciary duty and duty of loyalty to Mattel. (See Final Jury Instructions As Given, Jury Instruction No. 28.)  Moreover, Mr. Bryant's drawings do not derive "independent economic value, actual or potential, from not being generally known to the public."  To the extent they have value, that value derives from Mattel's copyright in the drawings, which right flows from the Copyright Act and permits Mattel, among other things, to pursue infringement actions against allegedly infringing works.

As respects Carter Bryant's duty of loyalty, the jury has merely found that Mr. Bryant's consummation of an agreement with MGA while employed by Mattel constituted a breach of that duty.  (See Final Jury Instructions As Given, Jury Instruction No. 28.)  The Court's instruction made no reference to MGA's sale of allegedly infringing Bratz fashion dolls or Bratz related products – all of which occurred after Mr. Bryant left Mattel.

Moreover, Mattel's instruction fails to make clear that its potential damage award is limited to the disgorgement of Carter Bryant's profits.  As an initial matter, the aiding/abetting party does not stand on equal footing with the fiduciary vis-a-vis her principal.  As an arm's length tortfeasor, the aider/abettor's liability is different from that saddled on the fiduciary. While the law permits the disgorgement of the fiduciary's profits in order to preserve the sanctity of this relationship, no case authorizes the disgorgement of the aiding/abetting party's separate and distinct profits.  One commentator differentiated the two forms of liability:

> Two important conditions of third-party liability distinguish it from the fiduciary's own liability to the beneficiary.  First, a fiduciary is responsible for all breaches of duty, whether knowing or negligent, intentional or unintentional. In contrast, a third party's liability arises only when she knowingly participates in the breach: she must know that the contemplated act is a breach and know that her actions will assist the fiduciary in the breach. Second, the beneficiary's remedy against a third-party participant is more constrained.  Although a fiduciary may have to disgorge profits earned through the breach, and the beneficiary need not prove actual harm before recovering from the fiduciary, a third-party participant is liable only for actual harm caused to the beneficiary.

Robert W. Tuttle, "THE FIDUCIARY'S FIDUCIARY: LEGAL ETHICS IN FIDUCIARY REPRESENTATION", 1994 U. Ill. L. Rev. 889, 901-902 (1994) (citing Patricia L. Loughlan, "Liability for Assistance in a Breach of Fiduciary Duty", 9 Oxford J. Legal Stud. 260, 2664-65 (1989)).

In some cases, where the fiduciary is ultimately deemed liable for her profits, the court will in turn hold the aider/abettor jointly liable with the fiduciary for the latter's profits.  People v. Bestline Products, Inc., 61 Cal. App. 3d 879, 919 (Cal. App. 2d Dist. 1976) ("One who knowingly aids and abets a fiduciary to make secret profits may be held liable jointly with the fiduciary for such secret profits").  California law is consistent in holding that the aiding/abetting party's liability is concurrent with that of the fiduciary.  That is, the aider/abettor's liability at a maximum is joint with the fiduciary for the principal's losses and the fiduciary's profits.  Rosenthal v. Gould, 273 Cal. App. 2d 239, 243 (1969) ("it is equally clear that their liability is co-extensive with Gould's if, as determined by the trier of the fact, they conspired with Gould and aided and abetted him in the breach of his fiduciary obligations"); Anderson v. Thacher, 76 Cal. App. 2d 50, 72 (1946) ("And where, after the violation of a fiduciary obligation, an amount is found to be due from the agent, judgment for the same amount may also be rendered against those proven to have fraudulently aided in the attempt of the fiduciary to obtain secret profits, although they themselves are not fiduciaries, and even though they receive no share of the profits"); Hickson v. Gray, 91 Cal. App. 2d 684, 686-87 (1949) ("If through fraud and conspiracy another person assists a real estate broker in violating his fiduciary obligation to his principal by making a secret profit and retaining the proceeds, he, as well as the fiduciary, is equally liable for all consequences of the fraud and conspiracy regardless of the extent or his participation or the share of the profit he has obtained"); Reid v. Robinson, 64 Cal. App. 46, 58 (1923) ("the law of torts is to the effect that every person concerned in a wrong to another which results in damage is liable therefor, irrespective of the degree in which he therein participates and entirely without reference to the benefits which he may receive on account thereof").

While an aider/abettor's liability for disgorgement of the fiduciary's profits is supported in case law, disgorgement of the aider/abettor's profits is not.  Indeed, Mattel is yet to point to a single case authorizing disgorgement of the aider/abettor's profits connected to a

fiduciary's breach of duty.  Mattel cites a section of the Restatement of Restitution that has only been applied in the real property contest.  For example, in Midstate Amusement Corp. v. Rivers, 54 F. Supp. 738, 739 (D. Wash. 1944), defendant conspired with co-defendants to buy real property based on information he obtained through his role as a fiduciary.  Plaintiff sought transfer of the real property.  The case provides no authority for the disgorgement of profits – from the fiduciary or from a third party.

Similarly, in Ohio Oil Co. v. Sharp, 135 F.2d 303 (10th Cir. Okla. 1943), plaintiffs hired a third party to conduct geophysical surveys in order to identify land aptly suited for oil-drilling.  Id.  After the third party conducted these surveys, an employee shared the results, in breach of his obligation, to defendant.  Relying on this information, defendant obtained leases over the land in question authorizing him to engage in drilling.  Once again, Plaintiffs sought a constructive trust over real property: the gas leases in question.

The cases cited to support Mattel's instruction are equally inapposite.  In County of San Bernardino v. Walsh, 158 Cal. App. 4th 533, 537 (Cal. App. 2d Dist. 2007), plaintiff sued Walsh and Mays for their role in bribing Hlawek, the County's Chief Administrative Officer.  The damages consisted of Hlawek's salary, the direct bribes made to Hlawek, and most of Mays' consulting fees received from NorCal.  Id.  The court explained that Mays and Hlawek were both fiduciaries owing duties to the County.  Id.  The court then found that liability extended to Walsh as an "active participant[ ] in a breach of such duty."  Id. The court's award consisted of "most of Mays's consulting fees from NorCal" but is silent with respect to any benefit obtained by Walsh, the non-fiduciary.  Id. at 540.  Instead, Walsh, the non-fiduciary, shares liability for the benefit conferred upon Mays, a fiduciary, as well as the losses incurred by the County.

In Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101 (C.D. Cal. 2003), plaintiffs sought $200 million in damages from defendant banking institutions in connection with

1  their alleged aiding and abetting of a fiduciary's ponzi scheme which resulted in more than
2  $250 million that was not returned to plaintiffs.   <u>Id.</u> at 1109.   The decision makes no
3  reference to any profits by defendants.   In fact, defendants moved to dismiss because
4  plaintiffs failed to plead that any personal financial gain inhered to defendants.   <u>Id.</u> at 1127-
5  29.   The court denied defendants' motion to dismiss explaining that personal financial gain
6  was not a prerequisite to liability.   <u>Id.</u>   Neilson, therefore, provides no support for the
7  proposition that an aider/abettor's profits may be disgorged.

8

9  In <u>Heckmann v. Ahmanson</u>, 168 Cal. App. 3d 119 (1985), plaintiff Disney stockholders
10  sued the Steinberg Group, who greenmailed Disney, and Disney's directors who paid the
11  greenmail.  <u>Id.</u> at 123.   The plaintiffs sought a constructive trust over the Steinberg Group's
12  profits.  <u>Id.</u>   The court did not predicate this remedy on an aiding/abetting theory.   Instead,
13  the court explained that, "if plaintiffs prove the Steinberg Group breached a fiduciary duty
14  to the corporation and its shareholders in the sale of stock to the corporation the plaintiffs
15  would be entitled to a constructive trust upon the profits of that sale."  <u>Id.</u>

16

17  In <u>Xum Speegle, Inc. v. Fields</u>, 216 Cal. App. 2d 546 (1963), the defendant, a director and
18  an officer of plaintiff, started a corporation that directly competed with plaintiff, using
19  confidential customer information.  <u>Id.</u> at 551.   The court found that plaintiff was entitled to
20  an accounting over all insurance commissions diverted to defendant company.  <u>Id.</u> at 552.
21  The court granted "a trust imposed for a period of five years upon 43 specified accounts of
22  clients diverted from plaintiff to defendant Growers."  <u>Id.</u>   Given the defendant's direct
23  fiduciary duty to the plaintiff, it is not surprising that the court never characterizes defendant
24  company as an "aiding/abetting" party.

25

26  In <u>Adams v. Herman</u>, 106 Cal. App. 2d 92 (1951), plaintiffs owned a parcel of land that
27  they wanted to sell using defendant as their real estate agent for $10,5000.  <u>Id.</u>   Defendant
28  sold the property on plaintiffs' behalf for $10,500 to his wife who in turn sold it for $11,500.

<u>Id.</u> at 95.  Plaintiffs later learned about the resale and demanded the $1,000 in profit.  <u>Id.</u> The court explained that, by virtue of his status as plaintiffs' agent, defendant real estate agent owed plaintiffs a fiduciary duty.  <u>Id.</u> at 99.  As such, the court found that secret profits earned by defendant could be recovered by plaintiffs.  <u>Id.</u>  The court further explained that "a sale by an agent of his principal's property to his, the agent's wife, is the same as a sale to himself, and the same rules are applicable as if the agent sold to himself."  <u>Id.</u> at 102.  Once again, the case does not address aiding/abetting liability.

In <u>Eckard Brandes, Inc. v. Riley</u>, 338 F.3d 1082, 1085 (9th Cir. 2003), employee defendants violated their duties of loyalty by establishing a competing business.  <u>Id.</u> at 1085.  The court affirmed the district court's award of the disgorgement of the employee's profits earned "as a result of breaching their duty of loyalty."  <u>Id.</u> at 1086.  Again, the case does not involve third party liability.  Indeed, the profits that the employees were disgorged of were those that they earned during the period of disloyalty.

## CACI 2102

## PRESUMED MEASURE OF DAMAGES FOR CONVERSION

In Phase 1A of this trial, you found that Mattel had proved its claims for conversion against MGA, Isaac Larian and MGA Hong Kong.  You must now decide how much money will reasonably compensate Mattel for the harm.  This compensation is called "damages."

Mattel must prove the amount of its damages.  However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)    The fair market value of the tangible Bratz works created by Carter Bryant while he was employed by Mattel; and

(2)    Prejudgment interest at the maximum rate, which is 7%, calculated from the date Mattel's property was converted;

(3)    Reasonable compensation for the time and money spent by Mattel in attempting to recover this property;

(4)    Punitive damages.

**Authority:**  CACI No. 2102 (modified); *Betzer v. Olney*, 14 Cal. App. 2d 53, 61 (1937).

1   **OBJECTION**. The preceding instruction is objectionable because it does not define the

2 concept of fair market value and does not explain when to measure it, failing to explain that

3 fair market value is the highest price that a willing buyer would have paid to a willing seller,

4 assuming: (1) That there is no pressure on either one to buy or sell; and (2) That the buyer

5 and seller know all the uses and purposes for which the tangible physical property is

6 reasonably capable of being used. <u>See</u> CACI § 2102.  Here, the fair value market value

7 should be measured as of the time that the property allegedly was converted, not now.  <u>See</u>

8 Cal. Civ. Code, § 3336; <u>Virtanen v. O'Connell</u>, 140 Cal. App. 4th 688, 708 (2006); <u>Spates v.

9 Dameron Hospital Assn.</u>, 114 Cal. App. 4th 208, 221(2003); <u>Lueter v. Cal.</u>, 94 Cal. App.

10 4th 1285, 1302 (2002).  The instruction is also potentially misleading in that it should

11 explain to the jury that they may not award to Mattel the ancillary value of the works

12 created by Bryant while at Mattel, in other words, that they cannot award any sort of

13 damages that would be analogous to those permissible under the Copyright Act because the

14 Court has held that Mattel's claim may only be based on tangible things, not the ideas

15 represented therein.  <u>See</u> April 25, 2008 MSJ Order at 3.

16

17 The MGA Parties also object because this instruction fails to distinguish among the

18 defendants and advise the jury that it must make separate findings with respect to each

19 defendant.  Finally, the instruction is objectionable because Mattel lacks any evidentiary

20 basis to seek punitive damages. <u>See</u> <u>Barry v. Raskov</u>, 232 Cal. App. 3d 447, 457 (1991)

21 (trial court properly refused to instruct jury on punitive damages, as there was not clear and

22 convincing evidence of fraud); see also Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002)

23 ("[a] party is entitled to an instruction about his or her theory of the case if it is supported by

24 law and has foundation in the evidence").

25

26 The MGA Parties object to the portion of the instruction related to prejudgment interest as

27 misleading because it does not explain that prejudgment interest cannot be calculated on a

28

MGA Parties' Objections to Mattel's Proposed Jury Instructions – Case No. CV 04-9049 SGL (RNBx)

judgment for punitive damages.  <u>Lakin v. Watkin Associated Industries,</u> 6 Cal. 4th 644, 664 (1993).

**17.22**

**COPYRIGHT—DAMAGES**
**(17 U.S.C. § 504)**

If you find for the plaintiff, Mattel, on any of its copyright infringement claims against the defendants, you must determine Mattel's damages.  Mattel is entitled to recover the actual damages suffered as a result of the infringement.  In addition, Mattel is also entitled to recover any profits of the defendants attributable to the infringement.  Mattel must prove damages by a preponderance of the evidence.

**Authority:**  9th Cir. Civ. Jury Instr. 17.22 (2007).

**OBJECTION**. The MGA Parties object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant. Further,  the MGA Parties object to this instruction (and Mattel's other copyright damages instructions) because it does not properly explain that the jury must base any damages award on its specific findings of infringement, by considering separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should recover damages based on all of the alleged infringement.

MGA Parties' Objections to Mattel's Proposed Jury Instructions – Case No. CV 04-9049 SGL (RNBx)

## 17.24

## COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS
## (17 U.S.C. § 504(b))

Mattel is entitled to any profits of the defendants attributable to the infringement.

You may make an award of the defendant's profits only if you find that the plaintiff showed a causal relationship between the infringement and the defendant's gross revenue.

The defendant's profit is determined by deducting expenses from the defendant's gross revenue.

The defendant's gross revenue is all of the defendant's receipts from sale of a product containing or using the copyrighted work or associated with the infringement.  Mattel has the burden of proving the defendants' gross revenue by a preponderance of the evidence.

Expenses are all operating costs and production costs incurred in producing the defendant's gross revenue.  The defendants have the burden of proving the defendants' expenses by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement.  The defendants have the burden of proving the portion of the profit, if any, attributable to factors other than infringing the copyrighted work.

**Authority:**  9th Cir. Civ. Jury Instr. 17.24 (2007) (modified).

**OBJECTION**. Contrary to Mattel's reference, this instruction is not part of 9th Circuit Civil Model Jury Instruction 17.24 and it does not accurately state the law.  The MGA Parties further object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant. The MGA Parties further object to this instruction (and Mattel's other copyright damages instructions) because it does not properly explain that the jury must base any damages award on its specific findings of infringement, by considering separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should recover damages based on all of the alleged infringement.  Finally, the MGA Parties object to this instruction because it fails to advise the jurors that they may not include in an award of profits any amount that they took into account in determining actual damages.

## MATTEL'S SPECIAL JURY INSTRUCTION NO. __
## COPYRIGHT—DAMAGES—APPORTIONMENT OF PROFITS

In determining what portion of the defendants' profits are attributable to copyright infringement, the benefit of the doubt should be given to Mattel, and not defendants.

**Authority:**  9th Cir. Civ. Jury Instr. 17.24, comments (2007); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1549 (9th Cir. 1989) ("In performing the apportionment, the benefit of the doubt must always be given to the plaintiff, not the defendant . . . .").

1   **OBJECTION.**  The MGA Parties object to the instruction insofar as it suggests that MGA

2 must prove the apportionment of its profits with precision. All that the law requires is a

3 "reasonable and just apportionment." <u>Abend v. MCA, Inc.</u>, 863 F.2d 1465, 1480 (9th Cir.

4 1988) ("[C]ourts cannot be expected to determine with 'mathematical exactness' an

5 apportionment of profits."); <u>see also</u> <u>Sheldon v. Metro-Goldwyn Pictures Corp.</u>, 106 F.2d

6 45, 51 (2d Cir. 1939) (explaining that courts will make "the best estimate [they] can, even

7 though it is really no more than a guess."); <u>Caffey v. Cook</u>, 409 F. Supp. 2d 484, 506

8 (S.D.N.Y. 2006) ("Apportionment is 'not an area susceptible to precise measurement' …

9 particularly where the analysis does not rest on quantifiable factors such as minutes, pages

10 or lines incorporating the infringed work,  but rather on the incorporation of the infringed

11 work into a new presentation."); <u>accord</u> <u>Sygma Photo News, Inc. v. High Soc'y Magazine,</u>

12 <u>Inc.</u>, 778 F.2d 89, 95 (2d Cir. 1985) (finding that the trial court "correctly held that want of

13 precision is not a ground for denying apportionment altogether."); <u>Multitherm Corp. v.</u>

14 <u>Fuhr</u>, 1991 U.S. Dist. LEXIS 10475, at *47 (D. Pa. July 24, 1991) (recognizing "that this

15 measure of damages is imprecise" but that all that was required was a "reasonable and just

16 apportionment."); <u>cf.</u> <u>Walker v. Forbes, Inc.</u>, 28 F.3d 409, 414 (4th Cir. 1994) (upholding

17 trial court's jury instruction stating that "[i]t is not required that [the defendant] prove these

18 elements to a mathematical exactness.   They must only prove them to a reasonable

19 approximation….").   For this reason, the Fourth Circuit in <u>Walker</u> upheld the trial court's

20 rejection of the very instruction Mattel proposes here.  <u>Id.</u> (upholding rejection of plaintiff's

21 proposed instruction that "Any error or doubt in your mind about the apportionment must be

22 resolved in favor of the Plaintiff").

23

24 The MGA Parties further object to the proposed jury instruction insofar as it suggests that

25 when infringing and non-infringing elements "cannot readily be separated," all of the

26 infringer's indirect profits should be awarded to the copyright owner.  That is not the law.

27 <u>See</u> <u>Cream Records, Inc., v. Jos. Schlitz Brewing Co.</u>, 754 F.2d 826, 828 (9th Cir. 1985)

28 ("Although the statute imposes upon the infringer the burden of showing "the elements of

profit attributable to factors other than the copyrighted work," 17 U.S.C. § 504(b), nonetheless where it is clear ... that not all of the profits are attributable to the infringing material, the copyright owner is not entitled to recover all of those profits merely because the infringer fails to establish with certainty the portion attributable to the non-infringing elements.").

Moreover, the MGA Parties object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant.

## MATTEL'S SPECIAL JURY INSTRUCTION NO. __
## COPYRIGHT—DAMAGES—INDIRECT PROFITS

Indirect profits are the defendant's profits with a less direct connection or link to the infringement.  A plaintiff such as Mattel may be entitled to indirect profits in addition to direct profits.  To recover indirect profits, Mattel must establish a causal relationship between the infringement and the profits generated indirectly from such infringement.

In other words, Mattel must offer some evidence that the infringement at least partially caused the profits that the infringer generated as a result of the infringement.

**Authority:**  9th Cir. Civ. Jury Instr. 17.24 (2007); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 710-11, 714 n.10 (9th Cir. 2004).

1   **OBJECTION**. Contrary to Mattel's reference, this instruction is not part of 9th Circuit

2   Civil Model Jury Instruction 17.24 and misstates the law.  Specifically, the MGA Parties

3   object insofar as Mattel's proposed jury instruction mischaracterizes Mattel's burden of

4   proof.  To recover indirect profits, Mattel "must proffer sufficient non-speculative evidence

5   to support a causal relationship between the infringement and the profits generated

6   indirectly from such an infringement." <u>Mackie v. Rieser</u>, 296 F.3d 909, 915-16 (9th Cir.

7   2002).  The MGA Parties also object to the proposed instruction insofar as it confuses the

8   defendant's obligation to apportion elements of indirect profit attributable to factors other

9   than the infringement with the plaintiff's initial burden to prove a causal relationship

10  between the infringement and the indirect profits at issue. <u>Mackie</u>, 296 F.3d at 915

11  ("[T]here must first be a demonstration that the infringing acts had an effect on profits

12  before the parties can wrangle about apportionment.").  Moreover, the MGA Parties object

13  to this instruction because it fails to ensure that the jury distinguishes among the defendants

14  and makes appropriate findings with respect to each defendant.

15

16  The MGA Parties also object to this instruction (and Mattel's other copyright damages

17  instructions) because it does not properly explain that the jury must base any damages

18  award on its specific findings of infringement, by considering separately each alleged

19  infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting

20  that if any infringement at all is found, of any of the copyrights at issue, Mattel should

21  recover damages based on all of the alleged infringement. Finally, the MGA Parties also

22  object to this instruction because it is unnecessary and improper and can only confuse and

23  mislead the jury.

24

25

26

27

28

1
2
3

**MATTEL'S SPECIAL JURY INSTRUCTION NO. __**

**COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT**

4     Mattel also claims that defendants engaged in willful infringement of Mattel's

5   copyrights.  An infringement is considered willful when the plaintiff has proved both of the

6   following elements by a preponderance of the evidence:

7     1.     The defendant engaged in acts that infringed the copyright; and

8     2.     The defendant knew that those acts infringed the copyright.

9     A defendant cannot deduct overhead expenses, operating expenses or taxes from

10  his/its gross revenue when the copyright infringement is willful.

11

12     **Authority:**  9th Cir. Civ. Jury Instr. 17.27 (2007); *Three Boys Music Corp. v. Bolton*,

13  212 F.3d 477, 487 (9th Cir. 2000) (noting that willful infringers are not permitted to deduct

14  income taxes); *Kamar Int'l, Inc. v. Russ Berrie and Co., Inc*., 752 F.2d 1326, 1331-32 (9th

15  Cir. 1982) ("[a] portion of an infringer's overhead properly may be deducted from gross

16  revenues to arrive at profits, at least where the infringement was not willful, conscious, or

17  deliberate.") (emphasis added); *Sheldon v. Metro-Goldwyn Pictures Corp*., 106 F.2d 45, 53

18  (2d Cir. 1939) (a willful infringer may not deduct its income taxes); *Saxon v. Blann*, 968

19  F.2d 676, 681 (8th Cir. 1992) (a willful infringer may not deduct overhead expenses); *Jarvis*

20  *v. A & M Records*, 827 F. Supp. 282, 294 (1993) ("[I]f defendant's conduct is willful,

21  overhead may not be deducted"); *Liu v. Price Waterhouse LLP*, 2000 WL 1644585,

22  *6  (N.D. Ill. 2000) (approving jury instruction barring deduction of overhead if the jury

23  were to find willful infringement); 5 Melville B. Nimmer & David Nimmer, *Nimmer on*

24  *Copyright*, § 14.03[C][2] (2006) (it is "settled law" that infringers are not entitled to income

25  tax deductions).

26
27
28

1   **OBJECTION**. The MGA Parties object to this proposed instruction because Mattel

2   previously represented that it is not asserting willful infringement by the MGA Parties.

3   (Mattel Inc.'s Reply Memorandum Of Points And Authorities In Further Support Of It's

4   Motion For Partial Summary Judgment at 32-33 ("MGA does not refute the cases Mattel

5   cited to show that copyright infringement does not require intent. … Mattel's inclusion in its

6   complaint of words like 'knowingly' and 'deliberately' do not change the legal elements of

7   ordinary copyright infringement.").)  If were, then Mattel's instruction that good faith is

8   not a relevant inquiry on copyright infringement should be withdrawn.  Moreover, the MGA

9   Parties object to this proposed instruction to the extent that it appears to seek "statutory"

10  damages as described in 17 U.S.C. § 504(c), and Mattel is not seeking statutory damages in

11  this case, which is presumably why Mattel has not included in its proposed instructions 9th

12  Circuit Civil Model Jury Instruction 17.25.   As Mattel stated in connection with its

13  summary judgment motion in response to the MGA Parties' "good faith" affirmative

14  defense:

15          MGA suggests that Mattel has subjected itself to such a defense by "indicating

16          that Mattel intends to seek enhanced statutory damages under 17 U.S.C.

17          504(c)," which does impose a scienter requirement. (MGA Opp. 32.) But

18          MGA's prognostication is off-base: Mattel does ***not*** intend to seek enhanced

19          statutory damages.

20  (Mattel Inc.'s Reply Memorandum Of Points And Authorities In Further Support Of It's

21  Motion For Partial Summary Judgment at 33 (emphasis in original).)

22

23  The MGA Parties also object to this instruction because it fails to ensure that the jury

24  distinguishes among the defendants and makes appropriate findings with respect to each

25  defendant.  The MGA Parties further object to this instruction (and Mattel's other copyright

26  damages instructions) because it does not properly explain that the jury must base any

27  damages award on its specific findings of infringement, by considering separately each

28  alleged infringing act and/or product.  Thus, the instruction would mislead the jury by

suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should recover damages based on all of the alleged infringement.

## MATTEL'S SPECIAL JURY INSTRUCTION NO. __
## AFFIRMATIVE DEFENSE—FAILURE TO MITIGATE[6]

The defendants claim that Mattel failed to mitigate damages allegedly caused by the defendants' wrongful conduct. The doctrine of mitigation of damages holds that a plaintiff who suffers damages as a result of a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and may not recover for damages avoidable through ordinary care and reasonable exertion. The duty to mitigate damages does not require an injured party to do what is unreasonable or impracticable.

The burden of proving that losses could have been avoided by plaintiff by reasonable effort and expense is always on the party who harmed the plaintiff.

**Authority:** CACI No. 358, comments; *Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994).

---

[6] Mattel does not believe that any instruction on mitigation is appropriate. However, if any instruction is to be given, Mattel proposes this instruction.

94

1  **OBJECTION.**   To begin with, the MGA Parties object to Mattel's contention that no

2  instruction regarding failure to mitigate should be given.   Failure to mitigate is not strictly

3  viewed as an affirmative defense.   As noted in the comments to CACI No. 3931 (which

4  Mattel cites):

5  > The frequent statement of the principle in the terms of a 'duty' imposed on the

6  > injured party has been criticized on the theory that a breach of the 'duty' does

7  > not give rise to a correlative right of action.   It is perhaps more accurate to say

8  > that the wrongdoer is not required to compensate the injured party for damages

9  > which are avoidable by reasonable effort on the latter's part.

10  Green v. Smith, 261 Cal. App. 2d 392, 396 (1968) (internal citations omitted).   Thus, the

11  trier of fact considering the amount of damages must also consider whether the defendant

12  has failed to mitigate, such that defendants are not required to compensate plaintiff for any

13  such damages.   Second, failure to mitigate is a jury question, as the existence of state and

14  federal jury instructions makes clear and Mattel cites no cases suggesting that mitigation is

15  an equitable defense (because it is not).   Any objection based on the Court's April 25, 2008

16  Order is also premature because that Order did not resolve the issues presented here.   Even

17  if the Court makes the ultimate decision as to whether this defense will limit Mattel's claims

18  (and it should not), the jury must still make the factual determinations that underlie the

19  Court's decision, as it must do for all affirmative defenses with factual underpinnings that

20  overlap with the claims to be tried to the jury.   Because the defense of mitigation of

21  damages involves the same factual questions as Mattel's proof of its damages claim, the

22  Seventh Amendment requires that those facts be tried to the jury.   Accordingly, the jury

23  should be given a proper framework for making those factual determinations.

24

25  The MGA Parties respectfully suggest that the version of the Ninth Circuit Instruction that

26  they propose is simpler and less confusing for the jury that Mattel's special instruction, and

27  thus should be used here.

28

# CACI 3947

## PUNITIVE DAMAGES—INDIVIDUAL AND ENTITY DEFENDANTS

If you decide that Isaac Larian's, MGA's or MGA Hong Kong's conduct caused Mattel harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against Mr. Larian only if Mattel proves by clear and convincing evidence that Mr. Larian engaged in that conduct with malice, oppression, or fraud.

You may award punitive damages against MGA or MGA Hong Kong only if Mattel proves that MGA or MGA Hong Kong acted with malice, oppression, or fraud.  To do this, Mattel must prove by clear and convincing evidence that the malice, oppression, or fraud was conduct of one or more officers, directors, or managing agents of MGA or MGA Hong Kong, who acted on behalf of MGA or MGA Hong Kong.

"Malice" means that a defendant acted with intent to cause injury or that a defendant's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another.  A defendant acts with knowing disregard when the defendant is aware of the problem dangerous consequences of his or its conduct and deliberately fails to avoid those consequences.

"Oppression" means that a defendant's conduct was despicable and subjected Mattel to cruel and unjust hardship in knowing disregard of its rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that a defendant intentionally misrepresented or concealed a material fact and did so intending to harm Mattel.

1  An employee is a "managing agent" if he or she exercises substantial independent
2  authority and judgment in his or her corporate decision making such that his or her
3  decisions ultimately determine corporate policy.

4  There is no fixed formula for determining the amount of punitive damages, and you
5  are not required to award any punitive damages.  If you decide to award punitive damages,
6  you should consider all of the following separately for each defendant in determining the
7  amount:

8  (a)  How reprehensible was that defendant's conduct?  In deciding how
9  reprehensible a defendant's conduct was, you may consider, among other factors:

10  (b)  Is there a reasonable relationship between the amount of punitive damages and
11  Mattel's harm?

12  (c)  In view of that defendant's financial condition, what amount is necessary to
13  punish him or it and discourage future wrongful conduct?  You may not increase the
14  punitive award above an amount that is otherwise appropriate merely because a defendant
15  has substantial financial resources.

16

17  **Authority:**  CACI No. 3947.

18
19
20
21
22
23
24
25
26
27
28

1  **OBJECTION**.   Mattel lacks any evidentiary basis to request an instruction concerning
2  punitive damages.   See Barry v. Raskov, 232 Cal. App. 3d 447, 457 (1991) (trial court
3  properly refused to instruct jury on punitive damages, as there was not clear and convincing
4  evidence of fraud); see also Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("[a] party
5  is entitled to an instruction about his or her theory of the case if it is supported by law and
6  has foundation in the evidence").   Moreover, this instruction is improper because it does not
7  distinguish among the defendants and advise the jury that it must make separate findings
8  with respect to each defendant.

9

10

11
     DATED:  July 29, 2008            SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
12

13                                    By:  _____ /s/ Thomas J. Nolan _____ .
                                                        Thomas J. Nolan
14                                            Attorneys for the MGA Parties

15

16

17

18

19

20

21

22

23

24

25

26

27

28