QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727 |
| vs. | **[PUBLIC REDACTED]** |
| MATTEL, INC., a Delaware<br>corporation, | **DECLARATION OF JUAN PABLO ALBAN IN SUPPORT OF PLAINTIFF MATTEL, INC.'S *EX PARTE* APPLICATION TO (1) EXCLUDE BELATEDLY-PRODUCED MGA FINANCIAL RECORDS AND (2) COMPEL PRODUCTION OF BRATZ-RELATED LITIGATION MATERIALS** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |
| | **Phase 1:**<br>Trial Date:                 May 27, 2008 |

07209/2588223.1

# DECLARATION OF JUAN PABLO ALBAN

I, Juan Pablo Alban, declare as follows:

1.     I am a member of the bar of the State of California and an associate at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel"). I make this declaration in support of Mattel's Motion to Exclude Belatedly-Produced MGA Financial Records. I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.     Attached as Exhibit 1 is a true and correct copy of relevant excerpts from Mattel's First Set of Requests for Documents and Things to Isaac Larian, dated June 13, 2007.

3.     Attached as Exhibit 2 is a true and correct copy of Judge Infante's Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for Sanctions, dated December 31, 2007.

4.     Attached as Exhibit 3 is a true and correct copy of Trial Exhibit No. 4947.

5.     Attached as Exhibit 4 is a true and correct copy of Isaac and Angela Larian's List of Assets (MGA 3896257R).

6.     Attached as Exhibit 5 is a true and correct copy of MGA's letter to Mattel, dated July 23, 2008.

7.     Attached as Exhibit 6 is a true and correct copy of Moss Adams's Valuation Analysis of MGA Entertainment, Inc. as of June 30, 2007, Cover Letter to MGA dated October 12, 2007 (MGA 3896305-3896408).

8.     Attached as Exhibit 7 is a true and correct copy of MGA's Motion to Quash Subpoenas Or, in the Alternative, for Protective Order, dated December 21, 2007.

1    9.    Attached as Exhibit 8 is a true and correct copy of the Court's Order

2 Granting in Part and Denying in Part MGA Parties' Motion to Quash Subpoenas,

3 dated May 7, 2008.

4    10.    Attached as Exhibit 9 is a true and correct copy of excerpts from the

5 deposition transcript of Lisa Tonnu, Volume 2, dated September 24, 2007.

6    11.    Attached as Exhibit 10 is a true and correct copy of excerpts from the

7 deposition transcript of Lisa Tonnu, Volume 4, dated January 17, 2008.

8    12.    Attached as Exhibit 11 is a true and correct copy of relevant excerpts

9 from Mattel's Second Set of Requests for Documents and Things to MGA

10 Entertainment, Inc, dated June 6, 2007.

11    13.    Attached as Exhibit 12 is a true and correct copy of Judge Infante's

12 Order Granting Mattel, Inc's Motion to Compel Production of Documents by MGA

13 Entertainment, Inc, dated December 28, 2007.

14    14.    Attached as Exhibit 13 is a true and correct copy of MGA's letter to

15 Mattel, dated July 25, 2008.

16    15.    James Judah, an associate at Quinn Emanuel, reviewed the page count

17 of MGA's June 23, 2008 native format production and found it to consist of

18 approximately 40,838 pages of documents, of which 40,005 pages have 2007 data.

19    16.    Attached as Exhibit 14 is a true and correct copy of the first ten pages

20 of MGA 3896237.

21    17.    Attached as Exhibit 15 is a true and correct copy of the first ten pages

22 of MGA 3896238.

23    18.    Attached as Exhibit 16 is a true and correct copy of the first ten pages

24 of MGA 3896239.

25    19.    Attached as Exhibit 17 is a true and correct copy of the first ten pages

26 of MGA 3896240.

27    20.    Attached as Exhibit 18 is a true and correct copy of the first ten pages

28 of MGA 3896242.

-2-

DECLARATION OF JUAN PABLO ALBAN

1    21.    Attached as Exhibit 19 is a true and correct copy of the first tab of
2  MGA 3896244.

3    22.    Attached as Exhibit 20 is a true and correct copy of the first ten pages
4  of MGA 3896245.

5    23.    Attached as Exhibit 21 is a true and correct copy of the first tab of
6  MGA 3896246.

7    24.    Attached as Exhibit 22 is a true and correct copy of relevant excerpts
8  from MGA 3896247.

9    25.    Attached as Exhibit 23 is a true and correct copy of the first ten pages
10  of MGA 3896248.

11    26.    Attached as Exhibit 24 is a true and correct copy of the first tab of
12  MGA 3896249.

13    27.    Attached as Exhibit 25 is a true and correct copy of the first ten pages
14  of MGA 3896251.

15    28.    Attached as Exhibit 26 is a true and correct copy of the first ten pages
16  of MGA 3896252.

17    29.    Attached as Exhibit 27 is a true and correct copy of the first ten pages
18  of MGA 3896253.

19    30.    Attached as Exhibit 28 is a true and correct copy of the first ten pages
20  of MGA 3896254.

21    31.    Attached as Exhibit 29 is a true and correct copy of the first ten pages
22  of MGA 3896255.

23    32.    Attached as Exhibit 30 is a true and correct copy of MGA 3896257.

24    33.    Attached as Exhibit 31 is a true and correct copy of the first tab of
25  MGA 3896565.

26    34.    Attached as Exhibit 32 is a true and correct copy of MGA and Larian's
27  tax payment records (MGA 3896503-3896564).

28

DECLARATION OF JUAN PABLO ALBAN

1     35.    Attached as Exhibit 33 is a true and correct copy of the Court's Order

2 Granting in Part Mattel's Motion for Review and Objecting to Portions of the

3 Discovery Master's April 14, 2008 Order, dated May 12, 2008.

4     36.    Attached as Exhibit 34 is a true and correct copy of Mattel Inc.'s Third

5 Set of Requests for Documents and Things to MGA Entertainment, Inc., dated

6 October 24, 2008.

7     37.    Attached as Exhibit 35 is a true and correct copy of Trial Exhibit

8 10234.

9     38.    Attached as Exhibit 36 is a true and correct copy of Trial Exhibit

10 10174-19.

11     39.    Attached as Exhibit 37 is a true and correct copy of Trial Exhibit

12 13747-005.

13     40.    Attached as Exhibit 38 is a true and correct copy of relevant excerpts

14 from Trial Exhibit 13561.

15     41.    Attached as Exhibit 39 is a true and correct copy of relevant excerpts

16 from Trial Exhibit 13718.

17     42.    Attached as Exhibit 40 is a true and correct copy of relevant excerpts

18 from Trial Exhibit 13707.

19     43.    Attached as Exhibit 41 is a true and correct copy of relevant excerpts

20 from Trial Exhibit 13725.

21     44.    Attached as Exhibit 42 is a true and correct copy of relevant exceprts of

22 from Trial Exhibit 13743.

23

24           Executed on July 31, 2008, at Los Angeles, California.

25

26                     Juan Pablo Alban

27

28

-4-

# EXHIBIT 1

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 90378)
2     (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9                  UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                      EASTERN DIVISION

12 | CARTER BRYANT, an individual,      | CASE NO. CV 04-9049 SGL (RNBx)

13 |            Plaintiff,               | Consolidated with
                                          Case No. CV 04-09059
14 |     v.                             | Case No. CV 05-02727

15 | MATTEL, INC., a Delaware           | MATTEL, INC.'S FIRST SET OF
     corporation,                        REQUESTS FOR DOCUMENTS AND
16 |                                      THINGS TO ISAAC LARIAN
                Defendant.
17

18 | AND CONSOLIDATED CASES.

19

20

21

22

23

24

25

26

27        **EXHIBIT** ___1___

28        **PAGE** ___5___

07209/2142932.1                                  C 4 | 13 | c 7

1  REQUEST FOR PRODUCTION NO. 208:

2      Documents sufficient to establish YOUR gross income, and the sources

3  of that gross income, for the years 1999 through the present, inclusive.

4

5  REQUEST FOR PRODUCTION NO. 209:

6      YOUR federal and state tax returns for each of the years 1999 through

7  the present, inclusive.

8

9  REQUEST FOR PRODUCTION NO. 210:

10      DOCUMENTS sufficient to IDENTIFY each telephone subscription

11  service account that YOU have or have had, or that YOU use or have used, since

12  January 1, 1999.

13

14  REQUEST FOR PRODUCTION NO. 211:

15      All MATTEL DOCUMENTS that BRYANT or any other PERSON

16  has shown, given, provided, summarized or otherwise communicated to YOU or

17  MGA (whether directly or indirectly) at any time since January 1, 1999.

18

19  REQUEST FOR PRODUCTION NO. 212:

20      All DOCUMENTS that YOU knew or were informed that, or ever had

21  any reason to believe, had been or were created by or originated from MATTEL,

22  other than MATTEL products that YOU or MGA purchased at retail.

23

24  REQUEST FOR PRODUCTION NO. 213:

25      All COMMUNICATIONS between YOU and any PERSON

26  RELATING TO the retention or destruction of DOCUMENTS or DIGITAL

27  INFORMATION between January 1, 1999 and the present.

**EXHIBIT** 1

28

1 REQUEST FOR PRODUCTION NO. 268:

2         All DOCUMENTS that REFER OR RELATE TO the value of the

3 BRATZ brand.

4

5 REQUEST FOR PRODUCTION NO. 269:

6         DOCUMENTS sufficient to show or calculate YOUR net worth on a

7 yearly basis for each year from 1999 to the present.

8

9 REQUEST FOR PRODUCTION NO. 270:

10         All DOCUMENTS that evidence, reflect or REFER OR RELATE TO

11 the BRATZ DOLL's share of the fashion doll market including, without limitation,

12 the extent to which Bratz has been or is gaining or losing market share in the fashion

13 doll market.

14

15 REQUEST FOR PRODUCTION NO. 271:

16         DOCUMENTS sufficient to show each of YOUR position(s), titles and

17 functions with and relationship to MGA, including without limitation with or to

18 MGA Entertainment HK Limited and MGAE de Mexico, S.r.l. de C.V.

19

20 REQUEST FOR PRODUCTION NO. 272:

21         All DOCUMENTS RELATING TO the ownership of MGA

22 Entertainment HK Limited.

23

24

25

26

27

28

EXHIBIT ____1____

PAGE ____7____

-63-

REQUEST FOR PRODUCTION NO. 273:

All DOCUMENTS RELATING TO the ownership of MGAE de Mexico, S.r.l. de C.V.

REQUEST FOR PRODUCTION NO. 274:

An electronic copy of each DOCUMENT that YOU have produced in this action, or that is responsive to these Requests, that is or was created, prepared, generated, maintained or transmitted in digital form.

REQUEST FOR PRODUCTION NO. 275:

The metadata for each DOCUMENT that YOU have produced in this action, or that is responsive to these Requests, that is or was created, prepared, generated, maintained or transmitted in digital form.

REQUEST FOR PRODUCTION NO. 276:

To the extent not produced in response to any other Request for Production, all DOCUMENTS and tangible things upon which YOU intend to rely in this ACTION.

DATED: June 13, 2007          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By *Michael T. Zeller*
   Michael T. Zeller
   Attorneys for Mattel, Inc.

EXHIBIT ____1____

PAGE ____8____

-64-

MATTEL'S FIRST SET OF DOCUMENT REQUESTS TO ISAAC LARIAN

# EXHIBIT 2

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11

12                                          | CASE NO. CV 04-09049 SGL (RNBx)
    CARTER BRYANT, an individual,           | JAMS Reference No. 1100049530
13
                Plaintiff,
14
         v.                                 | Consolidated with
15                                          | Case No. CV 04-09059
    MATTEL, INC., a Delaware corporation,   | Case No. CV 05-2727
16
                Defendant.                  | **ORDER GRANTING IN PART AND**
17                                          | **DENYING IN PART MATTEL'S**
                                            | **MOTION TO COMPEL PRODUCTION**
18                                          | **OF DOCUMENTS BY ISAAC LARIAN;**
                                            | **DENYING REQUEST FOR**
19                                          | **SANCTIONS**

20  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
21  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
22

23                         I. INTRODUCTION

24      On October 11, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Compel Production

25  of Documents by Isaac Larian and for Award of Monetary Sanctions." Specifically, Mattel seeks

26  an order compelling Isaac Larian ("Larian") to produce documents responsive to Mattel's First

27  Set of Requests for Documents and Things, including, without limitation, Request Nos. 1, 2, 13,

28                                                                                        1
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)              EXHIBIT     2
                              12-31     PAGE        9

15, 32, 33, 35, 41, 61-76, 79-101, 113-115, 123-125, 139-146, 178, 180, 181, 190-192, 194-199, 207-209, 213, 221-225, 227-228, 269, 272 and 273 and a privilege log identifying all documents withheld based on any claimed privilege.  Mattel also seeks an award of sanctions against Larian in the amount of $4,500, which represents a portion of the costs incurred by Mattel in bringing this motion.  Larian submitted an opposition on December 5, 2007.[1]  Mattel submitted a reply on December 10, 2007.  The matter was heard on December 14, 2007.  Having considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in part and denied in part, and the request for sanctions is denied.

## II. BACKGROUND

On June 13, 2007, Mattel propounded its First Set of Requests for Production of Documents and Things to Larian, the CEO and majority owner of MGA.  On August 6, 2007, Larian filed his initial responses and objections.  The parties met and conferred, and on September 25, 2007, Larian served supplemental responses and objections.

Mattel filed the instant motion on October 11, 2007 seeking further responses to 87 of the 276 Requests.  The parties met and conferred further, and Larian ultimately agreed to provide further responses to 55 of the disputed 87 Requests.  Specifically, Larian agreed to supplement his responses and to produce documents responsive to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-146, 213, 221 and 223, "to include documents, if any, in his personal files that have not previously been produced."  MGA's Opposition at pp. 1-2.

The remaining 32 Requests at issue can be grouped into ten categories:  (1) personal financial data; (2) communications with Mattel employees; (3) statements to the media; (4) telephone records; (5) storage devices; (6) Carter Bryant's ("Bryant") storage devices; (7) market research concerning products not at issue; (8) Bryant's attorney and niece; (9) the Larian brother's arbitration; and (10) MGA Hong Kong and MGA Mexico.

//

---

[1] Mattel filed an Objection to Larian's Opposition and Response to Mattel's Separate Statement, asserting that the submissions should not be considered because they are untimely and because the Response to Mattel's Separate Statement fails to set forth a complete and verbatim statement of Mattel's position.  The Objection is overruled because Mattel has not been prejudiced and because of the court's preference to resolve Mattel's motion on the merits.

1

## II. DISCUSSION

2    Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

3 discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

4 party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not

5 permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

6 2004) ("District courts need not condone the use of discovery to engage in 'fishing

7 expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

8 (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

9 (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

10 the phrase "subject matter involved in the pending action," were intended to prevent discovery

11 that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

12 litigate the issues presented by the pleadings but to develop new claims or defenses.).

Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or

13 extent of use of the discovery methods if the court determines that "(i) the discovery sought is

14 unreasonably cumulative or duplicative, or is obtainable from some other source that is more

15 convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

16 opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

17 expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

18 the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

19 the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

20 26(b)(2).

21

## The 55 Requests Resolved During Meet and Confer Session

22    During the meet and confer session held after the instant motion was filed, Larian agreed

23 to produce documents responsive to 55 requests. In his Opposition brief, Larian states that the 55

24 requests are no longer in dispute.

25    Nevertheless, a court order compelling production is warranted for two reasons. First,

26 Larian has not yet produced documents responsive to the 55 requests or provided a date by which

27

28

EXHIBIT ___2___

PAGE ___11___

1    he will do so.  Second, Larian's agreement to produce responsive documents is apparently limited

2    to documents from his so-called "personal files."  See Opposition at 2:2-3.

3           Mattel's counsel "never agreed that Larian could limit his response to the above requests

4    to documents in his 'personal files' and Larian's counsel did not state that Larian would limit his

5    response to documents in Larian's 'personal files.'"  Supp. Decl. of Scott B. Kidman.

6    Furthermore, the limitation to "personal files" suggested by Larian is contrary to Rule 34,

7    Fed.R.Civ.P, which imposes a duty to produce responsive documents within the responding

8    parties' "possession, custody or control."  The limitation is also unworkable because, as Mattel

9    points out, it "would create a situation by which responsive and highly relevant documents might

10   never be produced because MGA, on the one hand, deems [a] document to belong to Larian, and

11   Larian, on the other hand, deems [a] document not to be part of his 'personal files.'"  Reply at p.6.

12   Market Research for Products Not at Issue:  Request Nos. 79-81

13          In Request No. 79, Mattel seeks all documents relating to any focus groups relating to

14   Bratz and/or Angel, including without limitation all videotapes, summaries, notes and reports.  In

15   his supplemental response, Larian agrees to produce the following documents, subject to his

16   general objections:

17          Larian will produce all documents within his possession, custody, or control that
            relate to focus groups for "MGA contested products" and "Mattel contested
18          products," as those terms are defined in Mattel's First Requests for Production
            regarding Claims of Unfair Competition, if any, and that have not already been
19          produced, that he discovers in the course of his reasonable search and diligent
            inquiry, and to which no privilege or other protection applies, including without
20          limitation, the attorney-client privilege or attorney's work product doctrine.

21
22   Mattel's Consolidated Separate Statement at pp. 20-21.

23          In Request No. 80, Mattel seeks all documents relating to any services or work performed

24   by L.A. Focus between January 1, 1999 and December 31, 2001, including without limitation, all

25   videotapes, summaries, notes and reports associated therewith.  In his supplemental response,

26   Larian agrees to produce documents relating or referring to Bratz or Angel that are responsive to

27   the request and to which no privilege or other protection applies.

28

EXHIBIT ____2____

PAGE ____12____

4

1    In Request No. 81, Mattel seeks all documents relating to Alaska Momma. In his

2    supplemental response, Larian agrees to produce all documents relating or referring to Bratz,

3    Angel or Bryant that are responsive to the request and to which no privilege or other protection

4    applies.

5    Mattel contends that the requests are as narrowly tailored as possible to capture relevant

6    information. More specifically, Mattel contends that Request No. 79 seeks documents that bear

7    directly on the timing of the development of Bratz, as well as MGA's unfair competition claims

8    and Mattel's defense thereto. Mattel contends that the requested documents may demonstrate that

9    MGA is guilty of copying Mattel's Barbie and My Scene products.

10   Larian contends that Request Nos. 79-81 are overbroad and unduly burdensome. As an

11   example, Larian points to Request No. 80, which requests all documents relating to any services

12   or work performed by L.A. Focus, regardless of whether that work has any relation to the claims

13   and defenses in the action or any of the products at issue. Larian similarly contends that Request

     Nos. 79 and 81 are unbounded by subject matter or time, and are untethered to any claim or

14   defense in this case.

15   Mattel's motion to compel Larian to produce all documents responsive to Request No. 79

16   is granted. The request is reasonably limited in subject matter to Bratz and Angel. The requested

17   documents are relevant to several issues in the case, including the origin, conception and creation

18   of Bratz. The requested documents are also relevant to the unfair competition claims. Larian's

19   supplemental response to Request No. 79 is unduly restrictive. Among other things, the

20   definitions of "contested MGA products" encompass only those products that provide a basis for

21   any claim by MGA against Mattel, and not claims by Mattel against MGA.

22   Mattel's motion to compel Larian to produce all documents responsive to Request Nos.

23   80-81 is denied. These requests, as drafted, are clearly overbroad because they have no

24   reasonable limitations on subject matter or time. In particular, the requests are directed to L.A.

25   Focus and Alaska Momma without regard to whether the services or work the companies

26   provided has any relation to any product at issue.

27   Larian's supplemental responses to Request Nos. 80 and 81 are reasonably limited to

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___2___

PAGE ___13___

5

1   documents related to the products at issue: Bratz and Angel. In Mattel's view, Larian's

2   supplemental response is too narrow and "may result in the exclusion of highly relevant

3   documents because the project, concept or design that is the subject of the focus group is deemed

4   not to relate to something then known as Bratz or Angel." However, Larian acknowledges that

5   these types of hypothetical documents would still fall within the narrower scope of production

6   proposed in his supplemental response.

7        Mattel also contends that it is entitled to all of the requested documents called for by

8   Request No. 80 because they are relevant to credibility and bias, particularly if the documents

9   show that work relating to Bratz or Angel deviate from standard procedures that MGA and L.A.

10  Focus used. It is, however, not apparent how deviations from standard procedures would impact

    credibility or bias.

11       As to Request No. 81, Mattel contends that the documents showing the relationship

12  between Larian or MGA and Alaska Momma are relevant, even if they do not themselves

13  specifically relate to Bratz, Angel or Bryant. Mattel contends that communications from Larian

14  or MGA asking Alaska Momma to look for fashion doll opportunities around the time Bryant

15  claims to have pitched Bratz to Alaska Momma would be highly relevant in impeaching MGA's

16  and Bryant's stories about how and when they came to be introduced. Mattel also contends that

17  documents showing other dealings between Larian or MGA and Alaska Momma are relevant to

18  the issues of bias and credibility. Mattel's supposition about the types of documents that might

19  exist does not justify the type of far-reaching request it has propounded. Request No. 81 is also

20  not limited by either subject matter or time.

21       Accordingly, Larian shall produce documents responsive to Request Nos. 80 and 81 in

22  accordance with his supplemental responses.

23

24  Bryant's Attorney and Niece: Request Nos. 113-115

25       In Request No. 113, Mattel seeks all communications between Larian or MGA and Anne

26  Wang, a lawyer who represented Bryant in his contract negotiations with MGA. In Request No.

27  114, Mattel seeks all documents, including without limitation all communications, between

28

EXHIBIT ___2___

PAGE ___14___

1    Larian or MGA and Anne Wang. In Request No. 115, Mattel seeks documents relating to Brooke

2    Gilbert, Bryant's niece. In his supplemental responses, Larian agrees to produce documents

3    relating to Bratz, Angel or Bryant that are responsive to the requests and to which no privilege or

4    other protection applies. Thus, the only issue is whether Larian should be required to produce

5    responsive documents that do not relate to Bratz, Angel or Bryant.

6       Mattel contends that Request Nos. 113-114 seek documents that are relevant to the origin

7    and conception of Bratz and the timing thereof. Mattel also contends that the documents may

8    disclose relevant information regarding Mattel's claims for breach of contract and inducing

9    breach of contract, including information regarding Bryant's or MGA's knowledge of Bryant's

10    contractual obligations with Mattel. Mattel also contends that Larian has failed to carry his

     burden of demonstrating that the requests are overly burdensome.

11       Mattel further contends that Larian's supplemental responses to Request Nos. 113 and 114

12    are inadequate because the limitations on scope may eliminate otherwise relevant documents that

13    do not specifically refer to Bratz, Angel or Bryant. For example, Mattel contends that

14    communications with or about Bryant's lawyer that do not specifically relate to Bratz, Angel or

15    Bryant may be relevant to the issues of credibility and bias.

16       Mattel contends that Request No. 115 seeks documents that are relevant to determine

17    whether evidence on Bryant's computer was destroyed by the "Evidence Eliminator" software

18    that had been installed and run on the hard drive. Bryant claims to have given his computer to his

19    niece. Mattel also contends that the requested documents are relevant to the issues of credibility

20    and bias. Further, Mattel contends that Larian's supplemental response to Request No. 115 is

21    inadequate, because evidence of any communication between Larian and his niece, regardless of

22    subject matter, is significant.

23       Larian contends that Request Nos. 113-115 are overbroad and unduly burdensome

24    because they lack any subject matter or time constraints. Further, Larian contends that the

25    requests constitute an improper fishing expedition and necessarily sweep in documents that are

26    not relevant to any claim or defense.

27    //

28

EXHIBIT ___2___

PAGE ___15___

7

1    Mattel's motion to compel documents responsive to Request Nos. 113-115 is denied. The

2    requests are overbroad because they are not focused on relevant subject matter and are untethered

3    to any claim or defense. Although Mattel asserts that responsive documents unrelated to Bratz,

4    Angel or Bryant might be relevant to the issues of credibility and bias, that speculative possibility

5    is too remote to justify the breadth of Mattel's requests.

6    Larian's supplemental responses are sufficient to provide Mattel with relevant and

7    responsive documents. Larian shall produce documents responsive to Request Nos. 113-115 in

8    accordance with his supplemental responses.

9

10   The Larian Brothers' "Arbitrations and Suits": Request Nos. 123-125

11   In Request No. 123, Mattel seeks all documents relating to any and all arbitrations and

12   suits between Larian and his brother, Farhad Larian. In Request No. 124, Mattel seeks all

13   documents filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad

14   Larian against Larian, including without limitation all declarations, affidavits, transcripts, video

15   and/or audio recordings and sworn testimony given by any person in such suit or arbitration

16   proceedings. In Request No. 125, Mattel seeks all documents relating to any and all settlements,

17   resolutions, or compromises of any suit and/or arbitration proceedings between Larian and Farhad

18   Larian. In his supplemental responses, Larian agrees to produce all documents referring or

19   relating to Bratz that are responsive to the requests and to which no privilege or other protection

20   applies.

21   Mattel contends that the court has already ruled that the arbitration proceedings between

22   Larian and his brother are relevant because they involve, among other matters, the conception and

23   creation date for Bratz. Mattel contends that Larian's supplemental responses improperly limit

24   the requests to the exclusion of potentially relevant documents. For example, Mattel contends

25   that documents that relate to the business, activities and plans of MGA in early 2000 are relevant

26   to the timing of the development of Bratz, whether or not they specifically refer to Bratz.

27   Mattel also contends that the requested documents are relevant to the value of the Bratz brand and

28   the net worths of Larian and MGA, as well as Mattel's claims for damages, including, for

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT ___2___

PAGE ___16___

1    example, profits from the sale and licensing of Bratz and other information that would impeach

2    Larian's testimony that he has not made any profits from Bratz. Further, Mattel contends that the

3    requested documents may lead to evidence of the assessments or valuations of the net worth or

4    value of MGA or Larian, regardless of any reference to Bratz specifically. Mattel also contends

5    that settlement documents may contain information that bears on the merit of Farhad Larian's

6    claims and the value of Bratz. Mattel also claims that the requested documents are relevant to

7    motive, intent, bias and credibility.

8         Larian contends the instant requests are overbroad and unduly burdensome. Further,

9    Larian contends that the relationship of the requested documents to any of the claims or defenses

10   in the present action is questionable, and the existence of such documents is conjectural.

11   Moreover, Larian contends that many of the categories of documents of interest to Mattel are

12   already the subject of other requests. Larian also contends that Request Nos. 123-125 impose an

13   undue burden because of the protective orders in place that strictly limit the use of any documents

14   from an arbitration and suit between Larian and his brother. Larian represents that he is currently

15   working with Mattel and his brother in an attempt to achieve suitable modifications to the orders

     that are agreeable to all parties.

16        Mattel's motion to compel documents responsive to Request Nos. 123-125 as drafted is

17   denied. The requests are clearly overbroad in calling for all documents from the arbitrations and

18   suits between Larian and his brother, without any subject matter limitations. Furthermore, these

19   requests are unduly burdensome to the extent they require production of documents that do not

20   refer or relate to Bratz. Such documents have marginal relevance, at best, to the claims and

21   defenses in the case.

22        Larian's supplemental responses to Request Nos. 123 -125 are sufficient. Larian's

23   agreement to produce documents that refer or relate to Bratz is a reasonable compromise that will

24   enable Mattel to obtain documents relevant to the claims and defenses in the case, including many

25   of the categories of documents of interest to Mattel. For example, under Larian's proposed

26   limitation, documents that relate to the business, activities and plans of MGA in 2000 that also

27   refer or relate to Bratz must be produced. Documents relating to the value of the Bratz brand are

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT ___2___

PAGE ___17___

1  also within the scope of Larian's proposed limitation and would have to be produced. Documents

2  relating to the net worth of Larian or MGA that refer or relate to Bratz would also have to be

3  produced. Further, Larian's proposed limitation does not necessarily foreclose discovery

4  regarding the appraisal of MGA prepared by Mr. Dutcher. In particular, documents relating to

5  MGA's liabilities, debt, intangible assets, inventory, loans, growth rate projection, and revenue

6  projections must be produced if such documents refer or relate to Bratz. Accordingly, Larian

7  shall produce documents responsive to Request Nos. 123-125 in accordance with his

8  supplemental responses.

9

10  Telephone Records: Request Nos. 178-181

11      In Request No. 178, Mattel seeks all documents relating to, including without limitation

12  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

13  from January 1, 1998 through January 1, 2001. Larian objects to this request.

14      In Request No. 179, Mattel seeks all documents relating to, including without limitation

15  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

16  from January 1, 1998 through January 1, 2001 relating to Bratz and/or Angel. In his supplemental

17  responses, Larian agrees to produce documents responsive to Request No. 179. In response to

18  this motion, however, Larian contends that he should be permitted to produce documents

19  responsive to Request No. 179 in redacted form as discussed more fully below.

20      In Request No. 180, Mattel seeks all documents relating to, including without limitation

21  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

22  from April 1, 2004 through June 1, 2004. Larian objects to this request.

23      In Request No. 181, Mattel seeks all documents relating to, including without limitation

24  phone records for, telephone calls relating to Bryant by or to Larian or anyone on Larian's behalf

25  at any time. In his supplemental response, Larian agrees to produce all documents pertaining to

26  communications made prior to January 1, 2001 that are responsive to the request and to which no

27  privilege or other protection applies.

28  //

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT ____2____

PAGE ____18____

1   Mattel contends that Request No. 178 seeks documents relevant to show Larian's

2   communications with Bryant and other Mattel employees while such employees may still have

3   been employed by Mattel and before Larian claims to have known about Bratz. Similarly, Mattel

4   contends that Request No. 180 seeks documents relevant to Mattel's allegation that MGA, and

5   Larian in particular, were recruiting employees of Mattel's Mexican subsidiary and enticing them

6   to steal Mattel trade secrets.

7   Further, Mattel contends that the requested documents regarding telephone records are

8   relevant to (a) Mattel's claims regarding ownership of Bratz to the extent they show

9   communications with Carter Bryant; (b) Mattel's claims for theft of trade secrets to the extent

10   they show communications with current and former Mattel employees, including Machado,

11   Vargas, Trueba, Brawer, and Brisbois; (c) Mattel's claims regarding allegedly false statements

12   Larian made to retailers; (d) MGA's counterclaims; and (e) Mattel's defenses. With respect to

13   burden, Mattel contends that it would be more burdensome to attempt to produce the requested

14   records in redacted form, and further, that the protective order in place is sufficient to protect

     Larian's privacy concerns.

15   Larian contends that the requests regarding telephone records are overbroad, completely

16   unbounded as to subject matter, and necessarily sweep in private information that is completely

17   irrelevant to any of the claims or defenses in the case. Larian also points out that the court

18   previously considered similar requests served on Bryant and allowed production of redacted

19   copies of telephone records as long as Bryant provided a signed verification that none of his

20   redactions related to Bratz, MGA or any other project he worked on for MGA. Specifically,

21   Bryant was permitted to produce redacted phone records as long as he provided a "signed

22   verification that none of the telephone records that were redacted relate or refer in any way to

23   MGA, Bratz, or any other project that Bryant worked on, with, for or on behalf of MGA."

24   Kennedy Decl., Ex. 1 (January 25, 2007 Order Granting Mattel's Motion to Compel Production

25   of Documents by Bryant). Larian contends that he should be permitted to redact responsive

26   documents consistent with the court's prior order. During the meet and confer, Larian offered to

27   provide redacted records and a signed verification that none of the redacted information was

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

**EXHIBIT** 2

**PAGE** 19

1   relevant to the case, but Mattel did not respond to the offer.

2        Mattel's motion to compel documents responsive to Request Nos. 178 (all documents

3   relating to phone records by or to Larian for January 1, 1998 – January 1, 2001) is denied. The

4   request is overbroad because it lacks any subject matter limitation, and thus necessarily sweeps in

5   private information that is completely irrelevant to the case. Larian should not be subjected to

6   such an intrusion into his private and business affairs when Mattel has made no attempt to tailor

7   the request to the communications, claims, and defenses identified above.

8        In contrast to Request No. 178, Request No. 179 is reasonably tailored to phone records

9   for a particular time frame (January 1, 1998 to January 1, 2001), and to particular subject matters

10  (Bratz and/or Angel). Accordingly, Larian shall abide by his agreement to comply with Request

11  No. 179, as stated in his supplemental response. Larian's proposal to produce responsive

12  documents in redacted form is appropriate to address his privacy concerns. More specifically,

13  Larian may produce documents responsive to Request No. 179 in redacted form as long as Larian

14  provides a signed verification that none of the redacted material refers or relates in any way to

15  MGA, Bratz, or any other proposed or actual project worked on, with, for or on behalf of MGA,

    or that are otherwise relevant to the case.

16       Mattel's motion to compel documents responsive to Request No. 180 (documents relating

17  to telephone calls by or to Larian from April 1, 2004 – June 1, 2004) is granted. Request No. 180

18  is reasonably tailored to a two month period during which MGA and Larian allegedly recruited

19  employees out of Mattel's Mexican subsidiary and enticed them to steal Mattel trade secrets. See

20  Mattel's Second Amended Answer and Counterclaims, ¶¶37-54. Larian may produce documents

21  responsive to Request No. 180 in redacted form as specified above with respect to Request No.

22  179.

23       Request No. 181 (documents relating to telephone calls relating to Bryant by or to Larian)

24  is overbroad as written because it has no time limits. In his supplemental response, Larian agrees

25  to produce communications prior to January 1, 2001 that are responsive to the request. Larian's

26  proposed limitation is a reasonable compromise that will provide Mattel with relevant documents

27  without imposing an undue burden. Accordingly, Larian shall produce documents responsive to

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT ___2___

PAGE ___20___

1  Request No. 181 consistent with his supplemental response, and may produce such documents in

2  redacted form as specified above with respect to Request No. 179.

3

4  Statements to the Media: Request Nos. 190-192, 194-197 and 199

5       In Request Nos. 190-192, 194-197 and 199, Mattel seeks communications between Larian

6  and members of the press or financial institutions relating to Bratz, Bryant, Mattel or this action.

7  Mattel contends that the requests are sufficiently narrowly tailored to seek information that goes

8  to the issues in the lawsuit. More specifically, Mattel contends that the request are relevant to

9  Mattel's allegation that MGA and Larian repeatedly issued false and misleading press releases

   regarding Bratz's sales, Bratz's market share, Bratz's position relative to Mattel's Barbie
10
   products, sales of Mattel's Barbie products, and the market share of Mattel's Barbie products.
11
   Further, Mattel contends that statements to lenders or investors relating to Bratz or Bryant may
12
   also contain admissions regarding the origin and conception of Bratz and statements relevant to
13
   damages.

14       Larian contends that the requests are overbroad and unduly burdensome, particularly

15  because several of the requests seek publicly available information. Further, Larian points out

16  that the court has already considered and rejected as overbroad a nearly identical request served

17  on MGA that called for all documents relating to any communications by MGA with any news

18  organization regarding the contested MGA products or the contested Mattel products. Larian

19  contends that the same reasoning applies to the instant requests.

20       Mattel's motion to compel documents responsive to Request Nos. 190-192, 194-197 and

21  199 is denied. Although several of the requests encompass potentially relevant documents, the

22  requests are overbroad and encompass documents that have little to no relevance to the claims and

23  defenses in the case. Not one of the requests is limited to relevant subject matters, such as Bratz's

24  sales, Bratz's market share, Bratz's position relative to Mattel's Barbie products, sales of Mattel's

25  Barbie products, the market share of Mattel's Barbie products, the origin and conception of Bratz,

26  or damages.

27  //

28  Bryant v. Mattel, Inc.,                                                                    13
    CV-04-09049 SGL (RNBx)

EXHIBIT ___2___

PAGE ___21___

1  Furthermore, many of these overbroad requests seek publicly available information that is
2  readily accessible to Mattel for which Larian should not be burdened. To the extent the requested
3  documents and information are not publicly available, such documents and information are
4  marginally, if at all, relevant because they are not likely to have caused Mattel compensable harm.
5  In either case, the burden and expense of searching for and producing responsive documents are
6  unjustified.

7
8  Communications With Mattel Employees: Request No. 198
9  In Request No. 198, Mattel seeks all communications between Larian and any individual
10 while the individual was employed by Mattel. Mattel contends that this request is directly
11 relevant to Mattel's claims of trade secret theft, and that the relevancy outweighs any purported
   burden of production.
12 Larian contends that the request is overbroad and unduly burdensome because it is
13 unrestricted as to time and subject matter. Larian also points out that the court has previously
14 found a similar request overbroad. Larian further contends that employees in the toy industry are
15 likely to maintain contacts with other toy manufacturers, and that a large corporation such as
16 Mattel is likely to have a high number of employees communicating with MGA or its officers,
17 which makes the request more unduly burdensome and unreasonable than it appears on its face.
18 Unlike other requests regarding communications, Request No. 198 is reasonably tailored
19 to the specific and numerous allegations in the case regarding alleged trade secret theft. Although
20 the request is not limited by subject matter, it is limited in other respects to seek relevant
21 documents without imposing an undue burden. The request is limited to communications
22 between Larian (and not MGA or persons acting on his behalf) and individuals employed at
23 Mattel. The request is also limited to only those communications that took place while the
24 individuals were employed at Mattel.
25 Nevertheless, an additional temporal limit is appropriate to tailor the request to Mattel's
26 allegations of trade secret theft. The alleged trade secret theft began with Bryant's conduct in
27 1999 and continued to 2005. Accordingly, Larian shall produce documents responsive to Request
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___2___

PAGE ___22___

14

1    No. 198 that are limited to the time frame 1999 to 2005.

2

3    Personal Financial Data:  Request Nos. 207-209 and 269

4         In Request No. 207, Mattel seeks documents sufficient to identify each of Larian's banks

5    or financial institutions and other banking relationships since January 1, 1999.  In Request No.

6    208, Mattel seeks documents sufficient to establish Larian's gross income and sources for such

7    income for each year from 1999 to the present.  In Request No. 209, Mattel seeks Larian's federal

8    and state tax returns for each year from 1999 to the present.  In Request No. 269, Mattel seeks

9    documents sufficient to show or calculate Larian's net worth on a yearly basis for each year from

10   1999 to the present.

11        Mattel contends that Request No. 207 seeks information reasonably calculated to lead to

12   information showing the timing of payments to Bryant and others, which in turn is relevant to the

13   timing of the development of Bratz and issues of credibility.  Mattel contends that Request Nos.

14   208-209 and 269 seek non-privileged information that is directly relevant to Larian's financial

15   condition, which in turn is relevant to damages.  Further, Mattel contends that it is entitled to

16   information regarding the sources of Larian's income to determine whether they are attributable

17   to the alleged misconduct and thus subject to disgorgement.

18        Larian contends that the requested personal financial information is not relevant to the

19   claims or defenses at issue.  More specifically, Larian contends that neither the names of his

20   banks nor his gross income have any bearing upon either compensatory or punitive damages or

21   Mattel's claim for disgorgement of profits.  Larian further contends that there is no support for

22   Mattel's supposition that Larian has siphoned off MGA assets for his own personal benefit.

23        Larian also contends that all three of the requests overlap substantially with requests

24   Mattel previously propounded upon MGA, and that Mattel has failed to justify the duplication or

25   burden posed by these requests to him.  Further, Larian contends that the court has previously

26   found that Mattel was not entitled to obtain tax returns from Bryant, and that Mattel has offered

27   no reason why the same result should not apply here.

28        Mattel's motion to compel responses to Request Nos. 207-208 and 269 is granted.  The

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

15

EXHIBIT ___2___

PAGE ___23___

1  requests are reasonably calculated to lead to the discovery of admissible evidence relevant to
2  several issues in the case.  For example, the requested information is likely to lead to information
3  regarding payments from Larian to Bryant, which is relevant to, among other things, the timing of
4  the creation of Bratz.  The requested information is also likely to show Larian's income and net
5  worth, which are relevant to damages.  Further, Larian has failed to establish that the requests are
6  unduly burdensome.  Although Mattel has sought and obtained broad discovery of financial
7  information from MGA, Mattel is also entitled to seek financial information directly from Larian.

8  Mattel's motion is denied as to Request No. 209, provided that Larian complies with
9  Request Nos. 207, 208 and 269.  In light of the discovery of financial information ordered herein
   and other requests propounded to MGA, Mattel has not shown a compelling need for Larian's tax
10 returns.

11

12 Storage Devices;  Request Nos. 222 and 224

13      In Request Nos. 222 and 224, Mattel seeks digital storage devices and documents relating
14 to digital storage devices used by Larian to create, prepare, generate, copy, transmit, receive,
15 delete or modify digital information relating to Bratz, Angel, or Bryant.  Mattel contends that a
16 request for documents under Rule 34, Fed.R.Civ.P., operates as a request for documents stored in
17 electronic form.  Mattel also contends that Rule 34 permits a party to obtain and test computer
18 hard drives and other storage devices.

19      Larian contends that the requests are overbroad, unduly burdensome, duplicative, and
20 ignore his privilege and privacy interests.  Larian also objects to an inspection of his actual hard
21 drives or other storage devices based upon the Committee Note to Rule 34, Fed.R.Civ.P., which
22 states that the amendment of Rule 34 relating to "electronically stored information is not meant to
23 create a routine right of direct access to a party's electronic information system."  See
24 Fed.R.Civ.P. 34(a)(1), 2006 Adv. Comm. Notes.  Larian contends that there is no justification for
25 an inspection of his electronic devices because there is no allegation that he improperly deleted
26 documents.

27      Mattel's motion to compel documents responsive to Request Nos. 222 and 224 is denied.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT ___2___

PAGE ___24___

1   With respect to Request No. 222, Larian correctly notes that Rule 34 was not intended to

2   authorize the routine production of a party's electronic devices. Mattel attempts to justify

3   Request No. 222 by pointing to various instances of alleged destruction of evidence. See Mattel's

4   Consolidated Separate Statement at pp. 203-204 (purported destruction of Larian's computer

5   laptops; "wiping" information from the hard drives of Larian's computer laptops every six

6   months; redacting "Barbie Collectibles" from a faxed version of Bryant's Bratz agreement; and

7   destructive testing of Bryant's original Bratz drawings). However, Mattel fails to explain how

8   these alleged instances of evidence destruction justify Request No. 222, other than to assert that it

9   has a right to inspect Larian's storage devices to ensure that relevant information has not been

10  deleted or permanently destroyed. Mattel's stated purpose suggests instead that Mattel is

11  launching a fishing expedition in pursuit of new claims, which is not permitted by the Federal

12  Rules of Civil Procedure. See e.g. Rivera v. NIBCO, Inc., supra. Furthermore, Mattel's stated

13  purpose for inspecting Larian's storage devices does not justify the breadth of Request No. 222.

14  Among other things, Request No. 222 encompasses every storage device that Larian has used to

15  copy digital information relating to Bratz. Mattel does not need every CD and DVD containing

    copies of Bratz-related video and audio content, but that is what the request seeks.

16      Request No. 222 is also duplicative because it requests information that is sought in

17  numerous other requests served on Larian as well as MGA. Mattel has served hundreds of

18  requests for documents and communications relating to Bratz, Angel, and Bryant. To comply

19  with the requests, Larian was required to search for documents in both hard-copy and electronic

20  form. Under the circumstances, it is unnecessary for Larian to also produce the requested storage

21  devices.

22      Documents responsive to Request No. 224 are minimally relevant (if at all) to the claims

23  and defenses in the case, and therefore do not justify the burden of production on Larian.

24

25  Bryant's Storage Devices: Request Nos. 225, 227 and 228

26      In Request Nos. 225, 227 and 228, Mattel seeks digital storage devices and documents

27  relating to digital storage devices used by Bryant to create, prepare, generate, copy, transmit,

28

EXHIBIT ___2___

PAGE ___25___

1    receive, delete or modify digital information relating to Bratz, Angel, or MGA.

2          Larian contends that the requests are improperly directed to him because he does not have

3    personal possession of Bryant's hard drive or storage devices, or other information about those

4    devices. Mattel's Consolidated Separate Statement at p. 206. Larian also contends that the

5    requests are overbroad and unduly burdensome for the reasons discussed above in connection

6    with Request Nos. 222 and 224.

7          Mattel's motion to compel documents responsive to Request Nos. 225, 227 and 228 is

8    denied for the reasons already discussed in connection with Request Nos. 222 and 224.

9

10   MGA Hong Kong and MGA Mexico: Request Nos. 272 and 273

11          In Request Nos. 272 and 273, Mattel seeks documents relating to the ownership of MGA

12   Entertainment HK Ltd. ("MGA Hong Kong") and MGAE de Mexico S.r.l. de C.V. ("MGA

13   Mexico"), both of which are named defendants. In his supplemental responses, Larian agrees to

     produce documents sufficient to show the ownership of these entities.

14          Mattel contends that the requests seek information relevant to refute MGA Mexico's

15   personal jurisdiction defense, and which bear on whether the acts of Larian and others are

16   attributable to the entities. Mattel also contends that Larian's (or MGA's ) ownership interest in

17   these companies is relevant to net worth. Mattel contends that Larian's supplemental response is

18   inadequate because it would allow Larian to withhold contradictory information and conceal the

19   true ownership of the business entities. Furthermore, Mattel contends that it is entitled to know

20   the ownership of these entities at times when different allegedly wrongful acts took place and to

21   determine if the ownership structure changed as a means of concealing assets or concealing the

22   payments of commercial bribes.

23          Larian contends that these requests should not be made to him, but to the entities

24   themselves or to MGA. Further, Larian contends that the requests are duplicative of a request

25   Mattel served on MGA Mexico, another request served on MGA Hong Kong, and another request

26   served on MGA. Moreover, Larian contends that the requests are overbroad and unduly

27   burdensome, and that at most, he should only have to produce a list of owners.

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

     EXHIBIT ___2___

     PAGE ___26___

                                                                                        18

1    Mattel contends that Larian cannot avoid his duty to respond to these requests simply by

2    saying that the information is obtainable from another source.  Further, Mattel contends that

3    Larian has failed to establish that the requests are unduly burdensome.

4    Mattel's motion to compel documents responsive to Request Nos. 272-273 is denied

5    pursuant to Rule 26(b)(2), Fed.R.Civ.P., because the requested information is clearly obtainable

6    from another source that is more convenient, less burdensome, or less expensive, namely MGA

7    Mexico and MGA Hong Kong.  The requests are also overbroad and unduly burdensome.

## IV. CONCLUSION

8    For the reasons set forth above, it is hereby ordered as follows:

9
10   1.    At meet and confer sessions held after the filing of this motion, Larian agreed to

produce documents in response to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-

11   146, 213, 221 and 223.  Accordingly, Larian shall produce, without limitation, all non-privileged

12   documents that are responsive to these Requests.

13   2.    With respect to the remaining requests that are at issue in this motion, Larian shall:

14         A.    produce, without limitation, all non-privileged documents that are

15   responsive to Request Nos.  79, 180, 198 (for the time period 1999-2005), 207, 208 and

16   269; and

17         B.    produce, in accordance with his supplemental responses, non-privileged

18   documents that are responsive to Request Nos. 80, 81, 113-115, 123-125, 179, 181 and

19   209.

20         C.    Larian may produce documents responsive to Request Nos. 179, 180 and

21   181 in redacted form as provided herein.

22         D.    Mattel's motion is denied as to Request No. 178, 190-192, 194-197, 199,

23   209, 222, 224, 225, 227, 228, 272 and 273.

24   3.    Larian shall produce all non-privileged documents that are required by this Order

25   that are in his possession, custody or control and that have not already been produced no later

26   than January 11, 2008.

27   4.    Larian shall produce a privilege log no later than January 15, 2008.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19

EXHIBIT  2

PAGE  27

1    5.    Mattel's request for sanctions is denied.

2         Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

3    Master, Mattel shall file this Order with the Clerk of Court forthwith.

4

5    Dated: December 31, 2007

                                        HON. EDWARD A. INFANTE (Ret.)
6                                              Discovery Master

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                                                          20
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)           EXHIBIT ____2____

                                      PAGE ____28____

# EXHIBIT 3

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 4

# REDACTED



# SUBJECT TO



# PROTECTIVE ORDER

# EXHIBIT 5

RECEIVED

JUL 2 3 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144

———

TEL: (213) 687-5000

FAX: (213) 687-5600

www.skadden.com

DIRECT DIAL
213.687.5526
DIRECT FAX
213.621.5526
EMAIL ADDRESS
RYAN.WEINSTEIN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
NEWARK
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

July 23, 2008

Jon Corey, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

RE:  Mattel v. MGA

Dear Jon:

Enclosed please find a DVD containing documents Bates labeled MGA 3896237 to MGA 3896499. Pursuant to the Court's order, the DVD includes current financial information relating to the computation of Isaac Larian's net worth. Additionally, pursuant to your e-mail request dated July 17, 2008, the DVD includes MGA financial data through June 2008.

All documents are hereby designated Attorneys' Eyes Only under the stipulated Protective Order.

Sincerely,

Ryan Weinstein · by MSC

Ryan Weinstein

cc:    Carl Roth, Esq.

EXHIBIT _____5_____

PAGE _____45_____



EXHIBIT _____5_____

PAGE _____46_____

# EXHIBIT 6

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 7

1  THOMAS J. NOLAN (Bar No. 66992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, CA 90071-3144
3  Telephone: (213) 687-5000
   Facsimile: (213) 687-5600
4  E-mail: tnolan@skadden.com

5  RAOUL D. KENNEDY (Bar No. 40892)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  4 Embarcadero Center, 38th Floor
   San Francisco, California 94111-5974
7  Telephone: (415) 984-6400
   Facsimile: (415) 984-2698
8  Email: rkennedy@skadden.com

9  Attorneys for Counter-Defendants,
   MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA
10 ENTERTAINMENT (HK) LIMITED, and MGAE de MEXICO S.R.L. de C.V.

11

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14

15 | CARTER BRYANT, an individual        CASE NO. CV 04-9049 SGL (RNBx)

                Plaintiff,              Consolidated with Case No. 04-9059
16                                       and Case No. 05-2727
        v.
17                                       **DISCOVERY MATTER**
   MATTEL, INC., a Delaware
18 corporation                          **[To be heard by Discovery Master
                                         Hon. Edward A. Infante (Ret.)]**
19              Defendant.
                                         **MGA DEFENDANTS' NOTICE OF
20                                        MOTION AND MOTION TO
                                          QUASH SUBPOENAS OR, IN THE
21                                        ALTERNATIVE, FOR
                                          PROTECTIVE ORDER AND
22                                        MEMORANDUM IN SUPPORT**

23                                       **[DECLARATION OF AMY PARK
                                          AND SEPARATE STATEMENT
24                                        FILED UNDER SEPARATE
   Consolidated with MATTEL, INC. v.      COVER]**
25 BRYANT and MGA
   ENTERTAINMENT, INC. v.               Date:  TBD
26 MATTEL, INC.                          Time:  TBD
                                         Place: TBD
27

28

                        *12-21*

   MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
        FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

                                        EXHIBIT ___7___

                                        PAGE ___151___

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

I.   PRELIMINARY STATEMENT. ................................................................... 1

II.  STATEMENT OF FACTS. ............................................................................ 3

    A.   In Response to Mattel's Thousands of Document Requests, the MGA Defendants Have Produced and Are Producing Over Three Million Pages of Documents. ........................................................... 3

    B.   Mattel Has Targeted Non-Parties Having Personal, Financial or Business Relationships with the MGA Defendants and Subpoenaed Them for Irrelevant or Duplicative Documents............... 5

III. THE DISCOVERY MASTER MUST STOP MATTEL'S ABUSIVE NON-PARTY DISCOVERY PRACTICES............................................ 9

    A.   The Federal Rules Require Mattel to Limit Its Subpoenas to Relevant Matter that Is Not Duplicative of Party Discovery and Cannot Be Obtained Through Less Burdensome Means. .................. 9

    B.   Mattel's Subpoenas Are Abusively Drawn to Seek Irrelevant and Duplicative Materials and Are Designed Solely to Harass the MGA Defendants and Non-Parties with whom They Have Personal, Financial or Business Relationships. ................................. 11

        1.   Mattel Seeks Irrelevant and Duplicative Financial Information Regarding MGA and Isaac Larian. ....................... 13

        2.   Mattel Seeks Irrelevant Financial Information Regarding Many Non-Parties. ................................................................. 19

        3.   Mattel Seeks Irrelevant and Duplicative Information Regarding Litigation Between Isaac and Farhad Larian.......... 21

        4.   Mattel's Requests for Documents Related to MGA's Products or Carter Bryant Are Overly Broad and Abusively Drawn. ................................................................................. 23

IV.  CONCLUSION. .......................................................................................... 25

i

EXHIBIT _____ 7 .

PAGE _____ 152

# TABLE OF AUTHORITIES

**Page**

## CASES

Aliotti v. Senora,
  217 F.R.D. 496 (N.D. Cal. 2003) ................................................................. 10, 16

Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.,
  649 F.2d 646 (9th Cir. 1980) ............................................................................ 9

In re Ashworth, Inc. Sec. Litig.,
  Civil No. 99 cv 0121 L (JAH),
  2002 U.S. Dist. LEXIS 27991 (S.D. Cal. May 10, 2002) ......................................... 13

J & M Turner, Inc. v. Applied Bolting Tech. Prods.,
  Civil Action No. 95-2179, Civil Action No. 96-5819,
  1997 U.S. Dist. LEXIS 4447 (E.D. Pa. Apr. 2, 1997) ........................................... 11

Lectrolarm Custom Sys. v. Pelco Sales,
  212 F.R.D. 567 (E.D. Cal. 2002) ................................................................. 11, 23

Mattel, Inc. v. Walking Mountain Productions,
  353 F.3d 792 (9th Cir. 2003) ................................................................. passim

Moon v. SCP Pool Corp.,
  232 F.R.D. 633 (C.D. Cal. 2005) ................................................................. 10, 21

Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.,
  262 F. Supp. 2d 923 (N.D. Ill. 2003) .............................................................. 15

S. Cal. Hous. Rights Ctr. v. Krug,
  Case No. CV 06-1420 SJO (JCx),
  2006 U.S. Dist. LEXIS 65330 (C.D. Cal. Sept. 5, 2006) ....................................... 13

Travelers Indem. Co. v. Metropolitan Life Ins. Co.,
  228 F.R.D. 111 (D. Conn. 2005) ................................................................. 10

## RULES

Federal Rule of Civil Procedure 26(b)(1) ................................................................. 9, 16

Federal Rule of Civil Procedure 26(b)(2) ................................................................. 10

Federal Rule of Civil Procedure 26(b)(2)(C) ................................................... 10, 17, 21, 23

Federal Rule of Civil Procedure 45(c)(1) ................................................................. 9, 24

Federal Rule of Civil Procedure 45(c)(3)(A)(iv) ......................................................... 9

MGA DEFENDANT'S MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT _____7_____

PAGE _____153_____

1 | TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2 |     PLEASE TAKE NOTICE that on _____, 2008, at ____, or as soon
3 | thereafter as the matter may be heard, before the Honorable Edward Infante (Ret.),
4 | Discovery Master, located at Two Embarcadero Center, Suite 1500, San Francisco,
5 | CA 94111, counter-defendants MGA Entertainment, Inc., Isaac Larian, MGA
6 | Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively,
7 | the "MGA Defendants") will and hereby do move, pursuant to Federal Rule of Civil
8 | Procedure 26(b)(2) and 45(c)(3), for an order quashing subpoenas issued by Mattel,
9 | Inc. to non-parties ConsumerQuest, Deloitte & Touche, Ernst & Young, the Isaac
10 | and Angela Larian Trust, the Isaac Larian Annuity Trust, Moss Adams, Wachovia
11 | Bank and Wells Fargo, or, in the alternative, a protective order limiting the scope of
12 | those subpoenas.

13 |     This motion is made on the grounds that Mattel's subpoenas are overly broad
14 | and impose an undue burden on the above-referenced non-parties. In particular, the
15 | subpoenas seek documents that are irrelevant to this litigation or are duplicative of
16 | documents and information that, to the extent it is relevant, has already been sought
17 | and obtained or is being obtained by Mattel through other discovery. In addition,
18 | Mattel has made no effort to properly tailor its requests and has failed to take
19 | reasonable steps to avoid unduly burdening the non-parties.

20 |     This motion is based on this Notice of Motion and Motion to Quash
21 | Subpoenas or, in the Alternative, for Protective Order, the attached Memorandum of
22 | Points and Authorities in support thereof, the supporting Declaration of Amy S. Park
23 | and Separate Statement filed herewith, the pleadings and records on file in this action,
24 | and any further evidence and argument as may be presented to the Discovery Master
25 | on this motion.

26
27
28

MGA DEFENDANT'S MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT _____ 7 _____

PAGE _____ 154 _____

1    **Statement of Local Rule 7-3 Compliance**

2        The parties met and conferred on December 21, 2007, regarding the subject of

3    this motion but were not able to resolve this motion.

4

5    DATED:  December 21, 2007

6                                                   SKADDEN, ARPS, SLATE, MEAGHER &
                                                    FLOM, LLP

7

8                                                   By: _Thomas J. Nolan /DO_.

9                                                        Thomas J. Nolan

10                                                  Attorneys for Counter-Defendants, MGA
                                                    ENTERTAINMENT, INC., ISAAC
11                                                  LARIAN, MGA ENTERTAINMENT (HK)
                                                    LIMITED, and MGAE de MEXICO S.R.L.
12                                                  de C.V.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        2
─────────────────────────────────────────────────────────
MGA DEFENDANT'S MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
      FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT _____7_____

PAGE _____155_____

## MEMORANDUM OF POINTS AND AUTHORITIES

I.  **PRELIMINARY STATEMENT.**

Counter-defendants MGA Entertainment, Inc. ("MGA"), Isaac Larian, MGA Entertainment (HK) Limited ("MGA HK"), and MGAE de Mexico S.R.L. de C.V. ("MGA Mexico") (collectively, the "MGA Defendants") bring this motion to quash subpoenas issued by Mattel to ConsumerQuest, Deloitte & Touche, Ernst & Young, the Isaac and Angela Larian Trust, the Isaac Larian Annuity Trust, Moss Adams, Wachovia Bank and Wells Fargo (collectively, the "Non-Parties"), or, alternatively, for a protective order substantially limiting the scope of those subpoenas.[1]

Mattel has propounded thousands of discovery requests, including more than 2,300 document requests, on the MGA Defendants in this case. Many of the documents that Mattel has sought and obtained from the MGA Defendants include a wide assortment of financial documents. Indeed, the Discovery Master recently heard several motions brought by Mattel to compel the MGA Defendants to produce even more financial documents.

Apparently not satisfied with the voluminous production of information that Mattel has received and will be receiving from the MGA Defendants, Mattel has recently embarked on an expansive and harassing campaign to obtain much of the same information, as well as substantial amounts of other irrelevant documents, from a host of non-parties who have a personal, financial or business relationship with the MGA Defendants but have no involvement in this case. Mattel's efforts to harass these non-parties with overly broad subpoenas represent the same type of abusive non-party discovery tactics that Mattel has been sanctioned for in other litigation.

---

[1] The issue of whether the Discovery Master Order in this case applies to non-parties subpoenaed by Mattel is the subject of a pending motion before the Court. The MGA Defendants' motion, however, does not implicate that motion because the MGA Defendants only seek relief as to Mattel, over whom the Discovery Master unquestionably has jurisdiction, and the subpoenas at issue here implicate issues that Mattel has already put before the Discovery Master in prior motions to compel.

EXHIBIT _____ 7 _____

PAGE _____ 156

1 Indeed, in *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 813-14 (9th
2 Cir. 2003), the Ninth Circuit affirmed the district court's order sanctioning Mattel
3 and its counsel, Quinn Emanuel, for issuing a "very broad" and "abusively drawn"
4 discovery subpoena. The Court held that – just like the subpoenas here – "no attempt
5 had been made to try to tailor the information request to the immediate needs of the
6 case" and that the subpoena was served simply "for the purpose of annoying and
7 harassment and not really for the purpose of getting information." *Id.*

8      Mattel's subpoenas to the Non-Parties generally consist of four categories of
9 requests, all of which are overly broad and seek materials that are irrelevant to this
10 case or that have been or could be obtained from the MGA Defendants.

11      *First*, Mattel has subpoenaed the Non-Parties for the *entirety* of MGA and Mr.
12 Larian's financial records, from tax returns to canceled checks, for a nine-year period
13 from 1999 to the present. There is no claim or defense at issue in this case that could
14 possibly justify giving Mattel such unfettered access to MGA and Mr. Larian's
15 financial histories. Moreover, to the extent some of the requested documents may be
16 relevant, the MGA Defendants have already produced many responsive documents,
17 and indeed, the Discovery Master recently ordered MGA to produce numerous other
18 financial documents.

19      *Second*, Mattel has demanded that the Non-Parties produce vast amounts of
20 financial records for a host of other *non-parties*, including every person who ever did
21 any work for MGA or Mr. Larian, and every conceivable relative of Mr. Larian. The
22 private financial records of these non-parties are not even remotely relevant to this
23 case and Mattel's efforts to obtain such information constitute a clear abuse of the
24 non-party discovery process.

25      *Third*, Mattel has requested from the Non-Parties all documents relating to any
26 litigation between Mr. Larian and his brother Farhad Larian. Mattel, however, has
27 already requested the same documents from both Isaac and Farhad Larian, as well as
28

EXHIBIT _____ 7 _____

PAGE _____ 157 _____

1  MGA and at least two law firms involved in the litigation between the Larian
2  brothers.  Even if the documents were relevant, Mattel should not be permitted to
3  seek the same documents from twelve different sources.  Such duplication is not only
4  unreasonable, it also unduly burdens the Non-Parties.

5      *Fourth*, Mattel's subpoenas include various requests for all documents
6  obtained from MGA or Isaac Larian relating to Bratz, other MGA products, or Carter
7  Bryant.  While some documents relating to Mr. Bryant or the MGA products at issue
8  in this case may be relevant, Mattel's requests to the Non-Parties are improper
9  because Mattel has already requested and received well over three million pages of
10 such documents from the MGA Defendants.  To the extent that Mattel is seeking
11 relevant documents that are not duplicative, Mattel's requests are so overly broad that
12 it is impossible to discern what specific relevant, non-duplicative documents Mattel
13 is requesting from the Non-Parties.

14     With fewer than 40 days left until the January 28, 2008 Phase 1 fact discovery
15 cut-off, the parties should be working diligently to wrap up Phase 1 discovery, not
16 ramp it up with excessive non-party discovery.  However, absent the Discovery
17 Master's intervention, it is clear that Mattel will continue its abusive and harassing
18 non-party discovery tactics.  Accordingly, the MGA Defendants request that the
19 Discovery Master grant their motion to quash or, alternatively, for a protective order.

20 **II.    STATEMENT OF FACTS.**

21     **A.    In Response to Mattel's Thousands of Document Requests, the**
           **MGA Defendants Have Produced and Are Producing Over Three**
22         **Million Pages of Documents.**

23     During the course of this nearly four-year-old litigation, Mattel has served and
24 continues to serve the MGA Defendants with more than a dozen sets of document
25 requests containing more than 2,300 individual requests.  (Declaration of Amy Park
26 ("Park Decl."), ¶ 1.)  These requests have included hundreds of requests for
27 documents relating to Bratz and other MGA products at issue in the case.  (Park
28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT _____7_____

PAGE _____158_____

1  Decl., ¶ 1.) They have also included well over 120 requests devoted to an overly

2  broad array of personal and corporate financial information. (*See, e.g.,* Park Decl.,

3  Ex. 1 (Mattel's 2nd Set of RFPs to MGA) at Requests 3-45; Ex. 2 (Mattel's 1st Set of

4  RFPs to MGA HK) at Requests 3-45; Ex. 3 (Mattel's 5th Set of RFPs to MGA) at

5  Requests 4-7, 12-47.) The MGA Defendants have responded and are responding to

6  Mattel's requests by objecting, where appropriate, on relevance, breadth and other

7  grounds, and by producing responsive documents. (Park Decl. ¶ 4.) To date, the

8  MGA Defendants have produced more than three million pages of documents

9  responsive to Mattel's many requests. (*Id.* ¶ 2.)

10       With respect to financial information, Mattel has already sought *and obtained*

11  broad discovery from MGA, including the following:

12       •   Audited and unaudited quarterly and annual profit and loss statements;

13       •   Audited and unaudited quarterly and annual statements;

14       •   Annual reports;

15       •   Various MGA financial reports;

16       •   Various financial documents relating to Veronica Marlow;

17       •   Documents showing royalty payments to Carter Bryant;

18       •   Documents showing MGA's sales, returns and costs of good sold for
19          each month, by SKU, since 2001;

20       •   Documents showing MGA's promotional, advertising and media
        expenditures, including MGA's internal allocation of those expenditures
21          by brand and/or product;

22       •   Documents showing MGA's amortization and depreciation of certain
        capital assets and expenditures;

23       •   Documents showing MGA's monthly general ledger entries aggregated
24          by account, including income and expense accounts, reserves and
        liabilities; and

25       •   Documents sufficient to explicate MGA's various accounts as presently
        and historically maintained in MGA's books and records, as well as
26          various nomenclature assigned to items, products, brands, sub-brands,
27          and profit centers.

28

EXHIBIT ___7___

PAGE ___159___

1   (Park Decl. ¶ 3.) The MGA Defendants also will be producing or otherwise making

2   available to Mattel additional documents responsive to Mattel's Second Set of

3   Requests for Production. (Park Decl. ¶ 4.) In addition, in the upcoming weeks, the

4   MGA Defendants will be responding to six other outstanding sets of document

5   requests for which responses are not yet due, including, by producing responsive

6   documents, identifying responsive documents that have already been produced, or by

7   requesting that the parties meet and confer over the scope of the requests. (Id.)

8   **B.    Mattel Has Targeted Non-Parties Having Personal, Financial or Business Relationships with the MGA Defendants and Subpoenaed Them for Irrelevant or Duplicative Documents.**

9

10      In addition to seeking millions of pages of documents from the MGA

11   Defendants, Mattel has issued subpoenas seeking wide-ranging categories of

12   documents from dozens of non-parties. In particular, in the past few months, Mattel

13   has served subpoenas on non-parties who have personal, financial or business

14   relationships with the MGA Defendants, but have no connection to this litigation.

15   These subpoenas, which are summarized below, are replete with requests for

16   documents that are largely irrelevant, duplicative of materials already sought from

17   the MGA Defendants, or seek information that is obtainable from the parties or other

18   less intrusive means.

19      In September 2007, Mattel served document subpoenas on Isaac Larian's

20   brother Farhad Larian, who is a former executive and shareholder of MGA, and two

21   law firms that were involved in an arbitration between Isaac and Farhad Larian—

22   Kaye Scholer, which represented Isaac Larian, and Stern & Goldberg, which

23   represented the arbitrator. (Park Decl., Exs. 4-5.) Although some of the requests

24   concerned Bratz and Mattel, many were directed at a variety of unrelated matters.

25   For example, Mattel's subpoenas included numerous requests seeking all documents

26   relating in any way to any disputes between Farhad and Isaac Larian (Park Decl., Ex.

27   6 (F. Larian Subpoena) at Requests 1, 2, 4, 16, 22; Ex. 5 (Stern & Goldberg

28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT _____ 7

PAGE _____ 160

1 Subpoena) at Requests 1-3, 21; Ex. 4 (Kaye Scholer Subpoena) at Requests 1-3, 21);

2 and all documents relating in any way to any financial transactions or other

3 agreements between MGA, Isaac Larian or his family, on the one hand, and Farhad

4 Larian or his family, on the other (Park Decl., Ex 6 (F. Larian Subpoena) at Requests

5 3, 23, 24; Ex. 5 (Stern & Goldberg Subpoena) at Requests 4, 22, 23; Ex. 4 (Kaye

6 Scholer Subpoena) at Requests 4, 22, 23).[2]

7        On October 25, 2007, Mattel issued identical subpoenas to MGA's auditors,

8 Ernst & Young and Deloitte & Touche. (Park Decl., Exs. 7-8.) Only one request

9 specifically related to Bratz. (*Id.* at Request 4.) The other requests demanded all

10 documents related in any way to MGA audits, including "accounting records, audit

11 programs, audit reports and drafts thereof, tax returns, work papers, worksheets,

12 payroll records, financial projections, pro formas and budgets"; calculations of

13 MGA's net worth or the value of its intellectual property or goodwill; and any

14 litigation between Isaac and Farhad Larian. (*Id.* at Requests 1-3, 6.) Mattel also

15 requested that MGA's auditors produce documents identifying any other MGA

16 accountants or auditors. (*Id.* at Request 8.)

17        On October 25, 2007, Mattel also issued a subpoena to Wachovia, one of

18 MGA's lenders. (Park Decl., Ex. 9.) As with the subpoenas to MGA's auditors, only

19 one request to Wachovia related to Bratz. (*Id.* at Request 8.) The other requests

20 sought all documents related in any way to any loan agreement with MGA, including

21 "accounting records, tax returns, pro formas, expense records, financial projections,

22 budgets or business plans"; calculations of MGA's net worth or the value of its

23 intellectual property or goodwill; and any litigation between Isaac and Farhad Larian.

24

25 ────────────────

26 [2] The subpoenas to Farhad Larian and the law firms are currently the subject of motions to compel that Mattel filed with the Discovery Master. As will be pointed

27 out in the briefing on those motions, those subpoenas suffer from the same defects as the subpoenas at issue here.

28

EXHIBIT _____7_____

PAGE _____161_____

1 (*Id.* at Requests 1-4, 6, 7, 10.) Mattel also demanded all communications with MGA,
2 regardless of subject matter, in 1999 and 2000. (*Id.* at Request 5.)

3      On November 16, 2007, Mattel issued a subpoena to ConsumerQuest, a
4 market research firm that did various research work for MGA. (Park Decl., Ex. 10.)
5 The requests sought wide-ranging categories of documents, including: all documents
6 related in any way to Bratz or Scooter Samantha, or to any work done for MGA
7 relating to those and various other MGA products (*id.* at Requests 1-5, 8, 13); all
8 documents related in any way to any work done for MGA before 2003, regardless of
9 the subject matter (*id.* at Request 6); all actual or proposed agreements with MGA,
10 Isaac Larian, Farhad Larian or Carter Bryant on any subject matter (*id.* at Request
11 12); and all documents related in any way to any litigation between Isaac and Farhad
12 Larian (*id.* at Request 14). Mattel's subpoena also sought virtually every
13 communication between ConsumerQuest and the MGA Defendants, without
14 limitation as to time or subject. (*Id.* at Requests 9-11.)

15      On November 20, 2007, Mattel subpoenaed MGA's bank Wells Fargo,
16 requesting all documents related in any way to MGA during a nine-year period from
17 1999 to the present. (Park Decl., Ex. 11 at Request 1.) Mattel also requested all
18 documents from the same nine-year period related in any way to any MGA account
19 with Wells Fargo, including "statements, monthly statements, annual statements,
20 daily transaction history reports, monthly transaction history reports, deposit reports,
21 deposit slips, canceled checks, [and] signature cards." (*Id.* at Requests 2-5.)

22      On November 26, 2007, Mattel subpoenaed Isaac Larian's tax accounting firm,
23 Moss Adams, for all documents related in any way to MGA, Isaac or Farhad Larian,
24 any of their relatives, and two trusts established by Isaac Larian—the Isaac Larian
25 Annuity Trust and the Isaac and Angela Larian Trust (collectively, the "Larian

26
27
28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT _____7_____

PAGE _____162_____

1 | Trusts")[3]—during a nine-year period from 1999 to the present. (Park Decl., Ex. 12 at
2 | Requests 1-5, 12.) The documents requested by Mattel included "accounting records,
3 | tax returns and schedules (including without limitation Form 1040, Form 1099, Form
4 | 1120, Schedule E and Schedule K-1) and drafts thereof, W-2s, work papers,
5 | worksheets, payroll records, financial statements (audited and unaudited), pro formas,
6 | budgets, account information and account statements." (Id. at Requests 1-5.)

7 | Mattel also sought numerous other documents from Moss Adams, including:
8 | all documents indicating Isaac Larian's net worth, MGA's net worth or the value of
9 | MGA's intellectual property or goodwill (id. at Requests 6-8); all documents related
10 | in any way to any litigation between Isaac and Farhad Larian (id. at Request 11); all
11 | documents related in any way to payments from MGA, Isaac Larian or any of his
12 | relatives to Mr. Bryant or any of his relatives, Veronica Marlow or any of her
13 | relatives, Paula Garcia or any of her relatives, or any former Mattel employee (id. at
14 | Requests 13-16). Mattel also demanded documents identifying every auditor or
15 | accountant used by MGA, Isaac or Farhad Larian, any of their relatives, or the Larian
16 | Trusts since 1999. (Id. at Request 18.) In addition, Mattel sought documents
17 | identifying every entity in which Isaac Larian or any of his relatives ever had any
18 | ownership interest in or served as an employee, officer, director, trustee, shareholder,
19 | beneficiary or member. (Id. at Request 19.)

20 | On December 14, 2007, Mattel issued identical subpoenas to the Larian
21 | Trusts.[4] (Park Decl., Exs. 13-14.) The subpoenas demanded a host of documents
22 | covering virtually every aspect of the Trusts, including: all of their actual and draft
23 |
24 |

[3] Mattel misidentified the trusts. The correct names of the trusts are The Isaac and
25 | Angela Larian Family Trust and The Isaac E. Larian Qualified Annuity Trust 2004.

26 | [4] Mattel's misidentification of the trusts renders the subpoenas to them ineffective.
However, assuming Mattel serves the same subpoenas on the correctly named trusts,
27 | those subpoenas should be quashed or a protective order as to those subpoenas issued
for the reasons set forth herein.
28 |

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT 7
PAGE 163

1 formation documents (*id.* at Request 1); all documents relating in any way to the
2 Larian Trusts' tax liabilities, including all actual and draft tax returns and schedules
3 from 1999 to the present (*id.* at Requests 2-3); documents showing all trustees,
4 beneficiaries, disbursements made, assets owned, or liabilities owed since 1999 (*id.*
5 at Requests 4-8); all documents related in any way to Bratz or Bryant (*id.* at Requests
6 9-10); and all documents related in any way to any litigation between Isaac and
7 Farhad Larian (*id.* at Request 12). As with the Moss Adams subpoena, Mattel
8 demanded documents identifying every auditor or accountant used by the Larian
9 Trusts since 1999, plus documents identifying every entity in which Isaac Larian or
10 any of his relatives ever had an ownership interest or served as an employee, officer,
11 director, trustee, shareholder, beneficiary or member. (*Id.* at Requests 14-15.)

12       All of the Non-Parties, as well as the MGA Defendants, have objected to
13 Mattel's subpoenas on the grounds that, *inter alia*, they are overly broad, unduly
14 burdensome, and seek irrelevant and/or duplicative information. (Park Decl. Exs.
15 15-26.) Counsel for Mattel and the MGA Defendants met and conferred on
16 December 21, 2007, in an attempt to resolve the MGA Defendants' objections to the
17 subpoenas, but they were not able to reach a resolution. (Park Decl., ¶ 5.)

18 **III.**     **THE DISCOVERY MASTER MUST STOP MATTEL'S ABUSIVE**
19       **NON-PARTY DISCOVERY PRACTICES.**

20     **A.**     **The Federal Rules Require Mattel to Limit Its Subpoenas to**
              **Relevant Matter that Is Not Duplicative of Party Discovery and**
21               **Cannot Be Obtained Through Less Burdensome Means.**

22       A party is only entitled to seek discovery of materials and information that are
23 "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The need to
24 limit the permissible scope of discovery applies with even greater force in the
25 context of non-party discovery. *See Dart Indus. Co., Inc. v. Westwood Chem. Co.,*
26 *Inc.*, 649 F.2d 646, 649 (9th Cir. 1980) ("While discovery is a valuable right and
27 should not be unnecessarily restricted, . . . the 'necessary' restriction may be broader
28

EXHIBIT _____ 7

PAGE _____ 164

1 when a nonparty is the target of discovery.") (citation omitted). Indeed, a

2 subpoenaing party must "take reasonable steps to avoid imposing undue burden or

3 expense on a person subject to that subpoena." Fed. R. Civ. P. 45(c)(1).

4 Where the subpoenaing party fails to properly limit the scope of its subpoena

5 such that the subpoena "subjects a person to undue burden," a court must quash or

6 modify the subpoena on timely motion. Fed. R. Civ. P. 45(c)(3)(A)(iv). In addition,

7 Federal Rule of Civil Procedure 26(b)(2) requires that discovery shall be limited by

8 the court if it finds any of the following:

9 (i) the discovery sought is unreasonably cumulative or duplicative, or
can be obtained from some other source that is more convenient, less
10 burdensome, or less expensive;

11 (ii) the party seeking discovery has had ample opportunity to obtain the
information by discovery in the action; or
12

13 (iii) the burden or expense of the proposed discovery outweighs its
likely benefit, considering the needs of the case, the amount in
controversy, the parties' resources, the importance of the issues at stake
14 in the action, and the importance of the discovery in resolving the issues.

15 Fed. R. Civ. P. 26(b)(2)(C).

16 A motion to quash a subpoena or for a protective order as to that subpoena

17 may be made by a party-opponent. *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633,

18 636 (C.D. Cal. 2005) (granting defendants' motion to quash subpoena issued by

19 plaintiff); *Aliotti v. Senora*, 217 F.R.D. 496, 499 (N.D. Cal. 2003) (granting

20 defendant's motion for protective order as to subpoenas issued by plaintiff). Indeed,

21 a party cannot merely object to a subpoena served on a nonparty; rather, the party

22 "must seek a protective order or make a motion to quash." *Moon*, 232 F.R.D. at 636.

23 In evaluating whether a subpoena imposes an undue burden and therefore

24 must be quashed or modified, "'the court [must] weigh the burden to the subpoenaed

25 party against the value of the information to the serving party,' . . . and, in particular,

26 requires the court to consider: 'such factors as relevance, the need of the party for the

27 documents, the breadth of the document request, the time period covered by it, the

28

10
MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT ___7___

PAGE ___165___

1 particularity with which the documents are described and the burden imposed.'" *Id.*

2 at 637, quoting *Travelers Indem. Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111,

3 113 (D. Conn. 2005) (granting defendant's motion to quash subpoena because it

4 covered a ten-year period and was not limited to products at issue).

5       A subpoena is also unduly burdensome where the subpoenaing party "can

6 more easily and inexpensively obtain the documents from [another party], rather than

7 from [the] nonparty." *Moon*, 232 F.R.D. at 638. *See also Lectrolarm Custom Sys. v.*

8 *Pelco Sales*, 212 F.R.D. 567, 573 (E.D. Cal. 2002) (issuing protective order where

9 plaintiff subpoenaed non-party for documents that plaintiff had sought from

10 defendant because the "burdensome and harassing nature of the requests clearly

11 outweigh[ed] the minimal need for the very limited amount of information that could

12 be discovered under the subpoenas"); *J & M Turner, Inc. v. Applied Bolting Tech.*

13 *Prods.*, Civil Action No. 95-2179, Civil Action No. 96-5819, 1997 U.S. Dist. LEXIS

14 4447 (E.D. Pa. Apr. 2, 1997) (granting non-party bank's motion to quash subpoena

15 seeking financial information already sought and obtained from another party).

16       Applying these principles here, there is no question that Mattel's subpoenas to

17 the Non-Parties must be quashed or, at a minimum, substantially narrowed.

18     **B.**     **Mattel's Subpoenas Are Abusively Drawn to Seek Irrelevant and**
               **Duplicative Materials and Are Designed Solely to Harass the MGA**
19                **Defendants and Non-Parties with whom They Have Personal,**
               **Financial or Business Relationships.**
20

21       Spurning the limitations that the Federal Rules and the Court have expressly

22 imposed on non-party discovery, Mattel has spent its last few months of Phase 1

23 discovery issuing a multitude of subpoenas demanding the production of vast

24 amounts of largely irrelevant personal and financial information about the MGA

25 Defendants, every person who ever worked for or represented MGA, and every

26 conceivable relative of Isaac Larian. As is clear from the face of Mattel's requests,

27

28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT _____ 7 _____

PAGE _____ 166

1 │ Mattel has abused the non-party discovery process with these unnecessary and
2 │ harassing subpoenas.

3 │     This is hardly the first time that Mattel has engaged in improper non-party
4 │ discovery practices. In *Mattel, Inc. v. Walking Mountain Productions*, Mattel and its
5 │ trial counsel, Quinn Emanuel, tried to enforce a subpoena issued to the San Francisco
6 │ Museum Of Modern Art ("SFMOMA"), the employer of one of the defendant's
7 │ experts. The subpoena demanded not only "all documents relating to [the defendant]
8 │ and his works and all documents relating to Mattel or Barbie, . . . [b]ut it also
9 │ demanded all documents relating to the SFMOMA's 'policy or practice relating to the
10 │ third-party copying, reproduction, or photographing' of works in which the
11 │ SFMOMA had a proprietary interest—a topic that [had] no bearing on [the] litigation
12 │ or [the expert]." 353 F.3d at 813.

13 │     The district court quashed the subpoena and sanctioned Mattel, finding that
14 │ Mattel's subpoena was "very broad" and "abusively drawn"; that Mattel made "no
15 │ attempt . . . to try to tailor the information request to the immediate needs of the
16 │ case"; and that the subpoena was "served for the purpose of annoying and
17 │ harassment and not really for the purpose of getting information." *Id.* at 813-14.
18 │ The Ninth Circuit affirmed the district court's order: "Given the intended protections
19 │ of the Rule [45] and Mattel's violation of those protections, we find that the San
20 │ Francisco federal district court did not abuse its discretion by quashing Mattel's
21 │ subpoena, and its factual findings do not display clear error." *Id.* at 814.

22 │     Mattel's non-party discovery tactics in this case are as abusive and improper as
23 │ its tactics in *Walking Mountain*, if not more so. Mattel's subpoenas to the Non-
24 │ Parties generally seek four categories of information: (1) financial information
25 │ regarding MGA and Isaac Larian; (2) financial information regarding non-parties,
26 │ including every current and former MGA employee, the Larian Trusts and every
27 │ conceivable relative of Mr. Larian; (3) all documents related in any way to any
28 │

12
MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT _____ 7

PAGE _____ 167

1 litigation between Isaac and Farhad Larian; and (4) various documents related to
2 Bratz, other MGA products at issue or Carter Bryant. Mattel's requests are so overly
3 broad and abusively drawn that it is readily apparent that they were specifically
4 drafted solely to burden and harass the Non-Parties and the MGA Defendants. In
5 addition, to the extent that any of the materials sought by Mattel are relevant, Mattel
6 has made no effort to exclude from the scope of its subpoenas those documents that
7 it has already obtained, sought or could seek through party discovery.

8
9
### 1. Mattel Seeks Irrelevant and Duplicative Financial Information Regarding MGA and Isaac Larian.

10      Mattel has subpoenaed five different entities that perform financial services
11 for MGA or Isaac Larian seeking virtually every scrap of paper and every byte of
12 data pertaining to MGA and Mr. Larian's finances over the last nine years. (Park
13 Decl., Ex. 11 (Wells Fargo Subpoena) at Requests 1-5; Ex. 9 (Wachovia Subpoena)
14 at Requests 1-7, 12; Exs. 7-8 (Ernst & Young and Deloitte & Touche Subpoenas) at
15 Requests 1-3, 8; Ex. 12 (Moss Adams Subpoena) at Requests 1, 2, 6-8, 12-16, 18.)
16 There is no justification for issuing such expansive subpoenas covering largely
17 irrelevant material, particularly since whatever small amount of relevant information
18 may be covered by the subpoenas has already been requested from the parties.

19      When a party subpoenas an adverse party's financial information, courts are
20 especially vigilant in limiting the subpoena's scope so that irrelevant financial
21 information is not produced. *See S. Cal. Hous. Rights Ctr. v. Krug,* Case No. CV 06-
22 1420 SJO (JCx), 2006 U.S. Dist. LEXIS 65330 (C.D. Cal. Sept. 5, 2006) (denying
23 request for production of tax return because plaintiff could not show a compelling
24 need for the return where less intrusive means could be used to establish defendant's
25 net worth); *In re Ashworth, Inc. Sec. Litig.,* Civil No. 99 cv 0121 L (JAH), 2002 U.S.
26 Dist. LEXIS 27991, at *20 (S.D. Cal. May 10, 2002). In *Ashworth,* for example, the
27 district court quashed subpoenas issued to the defendant's financial analysts and
28

EXHIBIT _____ 7 _____

PAGE _____ 168 _____

1  investment companies as "overwhelmingly broad in category and content" because
2  "[a]s they are phrased, the requests appear, in this Court's view, to seek all
3  documents in the third party financial analysis' possession that refer to or mention
4  Ashworth in any shape or form." 2002 U.S. Dist. LEXIS 27991, at *20.

5      Here, Mattel's subpoenas do not merely appear to ask for everything relating
6  to MGA or Mr. Larian, they *literally* demand everything. The subpoena to MGA's
7  bank Wells Fargo, for example, demands "[a]ll DOCUMENTS REFERRING OR
8  RELATING TO MGA from January 1, 1999 to the present, inclusive." (Park Decl.,
9  Ex. 11 at Request 1. *See also id.* at Requests 2-5 (requesting all documents related to
10 any MGA account at Wells Fargo or any other financial institution).) The subpoena
11 to Mr. Larian's tax accounting firm Moss Adams similarly demands "[a]ll
12 DOCUMENTS RELATING TO MGA [and] ISAAC LARIAN, including without
13 limitation accounting records, tax returns and schedules . . . and drafts thereof, W-2s,
14 work papers, worksheets, payroll records, financial statements (audited and
15 unaudited), pro formas, budgets, account information and account statements." (Park
16 Decl., Ex. 12 at Requests 1, 2.) Moreover, in case it was not clear enough from these
17 requests that Mattel truly wanted *everything*, Mattel gave the term "RELATING TO"
18 the broadest possible construction imaginable. (*Id.* at 4 (defined as "referencing,
19 referring to, constituting, evidencing, pertaining to, mentioning, supporting,
20 contradicting, negating, bearing on, touching on, containing, embodying, reflecting,
21 identifying, stating, dealing with, concerning, commenting on, summarizing,
22 responding to, relating to, describing or discussing in any way.").)

23     Mattel's subpoenas to MGA's auditors and lender are equally unrestrained in
24 scope. For example, Mattel's subpoenas request all documents relating to the
25 financial services that MGA's auditors and lender have provided MGA over the last
26 nine years. (Park Decl., Exs. 7-8 (Ernst & Young and Deloitte & Touche Subpoenas)
27 at Request 1 ("All documents constituting or relating to MGA's annual audits . . .
28

14

EXHIBIT _____7_____

PAGE _____169_____

1   from the period beginning January 1, 1999 to the present."); Ex. 9 (Wachovia
2   Subpoena) at Request 1 ("All documents relating to any loan agreement . . . that
3   YOU have entered into with MGA since January 1, 1999 . . .").) Mattel has also
4   requested that the Non-Parties produce documents identifying other lenders, auditors
5   or accountants of MGA or Mr. Larian, presumably because Mattel wants to serve
6   them with similar subpoenas. (Park Decl., Exs. 7-8 (Ernst & Young and Deloitte &
7   Touche Subpoenas) at Request 8; Ex. 12 (Moss Adams Subpoena) at Request 18; Ex.
8   9 (Wachovia Subpoena) at Request 12.)

9       Mattel has asserted that it needs this financial information because it is
10  relevant to damages, Mattel's commercial bribery allegations, and to counter a
11  statement Mr. Larian made in a prior litigation that, as of 2007, he could not recall
12  whether he received a bonus in 2003 because MGA's owners invested the company's
13  profits back into the company. Such inchoate assertions of relevance are insufficient
14  to justify the type of unfettered access to MGA and Mr. Larian's financial
15  information that Mattel seeks. *See, e.g., Ocean Atlantic Woodland Corp. v. DRH*
16  *Cambridge Homes, Inc.*, 262 F. Supp. 2d 923, 927 (N.D. Ill. 2003).

17      In *Ocean Atlantic*, the copyright owner of real estate development plans sued a
18  developer for infringement with respect to one of its development sites. The
19  plaintiff's "interrogatories and production requests [sought] all of the defendants'
20  financial records relating to their entire business and professional activities, on all
21  construction projects throughout the country, beginning from 1997 through present
22  date." *Id.* at 926. Posing the question "can anything remotely relevant to the claims
23  and defenses-or more pointedly to damages-arising from use of the Development
24  Plans at the Liberty Grove development site justify this massive body of discovery,"
25  the court answered, "*We hardly think so.*" *Id.* (emphasis added). "This court
26  perceives an improper motive and purpose to this broad discovery. We cannot
27  conceive of any relevance to the claims or defenses asserted in this copyright
28

15

EXHIBIT _____7_____

PAGE _____170_____

1 | infringement case, or of any legitimate purpose of this massive discovery demand.
2 | The production of virtually the entirety of defendants' business books and records
3 | relating to all of its projects could not lead to any admissible evidence." *Id.* at 927.

4 |     The Discovery Master should reach the same conclusion in this case. Mattel's
5 | alleged damages in this case are tied to the particular products at issue, not MGA or
6 | Mr. Larian's entire financial history. Documents such as all of MGA and Mr.
7 | Larian's tax returns, account statements and expense records, or the audit files and
8 | loan documents for MGA, are neither relevant to damages in this case nor reasonably
9 | calculated to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P.
10 | 26(b)(1). Indeed, the Discovery Master already rejected an attempt by Mattel to
11 | obtain Carter Bryant's tax returns. (Park Decl., Ex. 27 (1/25/07 Order) at 14-15.)

12 |     Similarly, Mattel's assertion that the requested financial information is relevant
13 | to its commercial bribery allegations is specious. Mattel's bribery allegations consist
14 | of nothing more than an assertion that MGA financed Bryant to develop Bratz while
15 | he was still employed at Mattel. Mattel's Second Am. Answer & Counterclaim at 37
16 | (¶ 33), 59 (¶ 93(d)), 74 (¶ 165). Thus, the only financial documents that could
17 | possibly be relevant to this allegation are documents showing any payments by
18 | MGA to Bryant during the time he was a Mattel employee.

19 |     Mattel's claim that it needs all of Mr. Larian's financial records to counter his
20 | statement that he did not think he received a bonus in 2003 because MGA's owners
21 | invested the company's profits back into MGA is nothing more than an absurd
22 | fishing expedition. *See Aliotti*, 217 F.R.D. at 498 (rejecting request for party-
23 | opponent's tax returns for impeachment purposes because request was "the kind of
24 | 'fishing expedition' that would undermine the public policy against unnecessary
25 | public disclosure of tax returns") (quotation marks and citations omitted). Setting
26 | aside the issue of relevance (which we dispute), Mattel does not need to comb
27 |
28 |

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT _____ 7
PAGE _____ 17 ℓ

1  through nine years' worth of Mr. Larian's financial records to determine whether he
2  received a bonus from MGA in 2003.  That information is obtainable from MGA.

3      In addition to seeking irrelevant material, Mattel's subpoenas contain requests
4  that are covered by one or more of the more than 2,300 document requests Mattel
5  has served on the MGA Defendants.  (Park Decl., Ex. 28 (chart comparing Mattel's
6  requests to Non-Parties with Mattel's document requests to MGA Defendants).)  For
7  example, Mattel has requested that some of the Non-Parties produce documents
8  relating to calculations of MGA and Mr. Larian's net worth and the value of MGA's
9  intellectual property and goodwill, even though Mattel has already requested the
10 same documents from the MGA Defendants.  (Id. at 24, 39, and 53.)  As shown
11 below, MGA has already produced numerous documents reflecting MGA's historical
12 and current financial status.  In addition, MGA is continuing to identify, offer to
13 meet and confer about, and produce other relevant, responsive documents.  There is
14 no reason for Mattel to harass non-parties for the same information.

15      Similarly, Mattel's subpoenas for financial records relating to Mr. Larian are
16 duplicative of documents that Mattel served on Mr. Larian.  The document requests
17 to Mr. Larian are the subject of a motion to compel that Mattel filed with the
18 Discovery Master and that has been taken under submission.  Regardless of how the
19 Discovery Master rules as to Mr. Larian's financial documents, resolution of that
20 motion will obviate the need for any production by the Non-Parties.  If the Discovery
21 Master orders Mr. Larian to produce financial documents, Mattel's requests to the
22 Non-Parties will be duplicative of those documents and therefore unnecessary.  If,
23 however, the Discovery Master finds that Mattel's requests to Mr. Larian seek
24 irrelevant information, that ruling would also prevent Mattel from pursuing the Non-
25 Parties for the same irrelevant information.

26      Numerous other documents requested from the Non-Parties are also
27 duplicative of documents that the MGA Defendants have already produced or will be
28

17

EXHIBIT _____7_____

PAGE_____172_____

1 producing. *See* Fed. R. Civ. P. 26(b)(2)(C) (limiting discovery if it "is unreasonably

2 cumulative or duplicative, or can be obtained from some other source that is more

3 convenient, less burdensome, or less expensive"). The financial documents produced

4 by the MGA Defendants to date include:

5 • Audited and unaudited quarterly and annual profit and loss statements;

6 • Audited and unaudited quarterly and annual statements;

7 • Annual reports;

8 • Various MGA financial reports;

9 • Various financial documents relating to Veronica Marlow;

10 • Documents showing royalty payments to Carter Bryant;

11 • Documents showing MGA's sales, returns and costs of good sold for each month, by SKU, since 2001;

12

13 • Documents showing MGA's promotional, advertising and media expenditures, including MGA's internal allocation of those expenditures by brand and/or product;

14

15 • Documents showing MGA's amortization and depreciation of certain capital assets and expenditures;

16 • Documents showing MGA's monthly general ledger entries aggregated by account, including income and expense accounts, reserves and

17 liabilities; and

18 • Documents sufficient to explicate MGA's various accounts as presently and historically maintained in MGA's books and records, as well as

19 various nomenclature assigned to items, products, brands, sub-brands, and profit centers.

20

21 (Park Decl., ¶ 3.) The MGA Defendants also will be producing or otherwise making

available to Mattel additional documents responsive to Mattel's Second Set of

22

Requests for Production. (Park Decl., ¶ 4.) In addition, since Mattel continues to

23

serve additional document requests, the MGA Defendants will continue to review

24

and respond to those requests, and to offer to meet and confer regarding the scope of

25

any production of documents. (*Id.*) In view of the ample financial documents that

26

the MGA Defendants have produced or will be producing, there is no basis for

27

Mattel to be seeking volumes of financial information from the Non-Parties.

28

EXHIBIT ___7___

PAGE ___173___

1    Mattel has no legitimate need to discover the entirety of MGA and Mr.
2  Larian's financial records over the last nine years. Nor is there any reason to unduly
3  burden non-parties with expansive requests for such records when those materials
4  either are irrelevant or are properly the subject of party discovery. The Discovery
5  Master should bar Mattel from seeking such discovery from the Non-Parties.

6              2.    **Mattel Seeks Irrelevant Financial Information Regarding**
7                    **Many Non-Parties.**

8    Mattel's subpoenas also demand financial documents regarding numerous non-
9  parties, including everyone who has ever worked for or represented MGA or Isaac
10 Larian, and every relative of Mr. Larian. (Park Decl., Ex. 11 (Wells Fargo Subpoena)
11 at Requests 1-5; Ex. 9 (Wachovia Subpoena) at Requests 1-7, 12; Exs. 7-8 (Ernst &
12 Young and Deloitte & Touche Subpoenas) at Requests 1-3, 8; Ex. 12 (Moss Adams
13 Subpoena) at Requests 1-8, 12-16, 18, 19; Exs. 13-14 (Larian Trusts Subpoenas) at
14 Requests 1-8, 14, 15.) Such documents are irrelevant and Mattel's efforts to discover
15 them constitute a clear abuse of the non-party discovery process.

16    Mattel's subpoenas to Moss Adams and the Larian Trusts, for example,
17 include requests that expressly demand the production of a wide array of financial
18 records relating to the Larian Trusts and Farhad Larian. (Park Decl., Ex. 12 (Moss
19 Adams Subpoena) at Requests 3-5, 12.) Among the documents sought from the
20 Larian Trusts are "[a]ll of [their] formation DOCUMENTS," all tax returns and any
21 other tax-related documents from 1999 to the present, and documents relating to
22 every material aspect of the Larian Trusts' operation since 1999, including every
23 trustee and beneficiary of each trust, every disbursement made by each trust, every
24 asset owned by each trust, and every liability owed by each trust. (Park Decl., Exs.
25 13-14 (Larian Trusts Subpoenas) at Requests 1-8.)

26    The financial records of the Larian Trusts and Farhad Larian are not relevant
27 to this case. None of them are parties to this litigation or alleged to have participated
28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT _____7_____

PAGE _____174_____

1  in any of the wrongful acts charged by Mattel. Mattel asserts that financial
2  information regarding Farhad Larian and the Larian Trusts is relevant to show what
3  Mr. Larian did with his money. How Larian spent or invested his money, however,
4  is irrelevant to the party's claims and defenses. Mattel's conversion counterclaim, for
5  example, alleges that Mr. Larian wrongfully obtained property and monies belonging
6  to Mattel. Mattel's Second Am. Answer and Counterclaim at 72-73. *See also id.* at
7  76 (requesting disgorgement of monies "obtained as a result of the conduct alleged
8  herein"). How Larian spent or invested his money does not bear on the issue of
9  where that money came from or how Larian obtained it. Nor is such information
10 reasonably calculated to lead to admissible evidence regarding that issue.

11      In addition to the Larian Trusts and Farhad Larian, Mattel has demanded that
12 Wells Fargo, Moss Adams, Ernst & Young, Deloitte & Touche and Wachovia
13 produce financial records for numerous non-parties by using overly broad definitions
14 of "MGA" and "ISAAC LARIAN." Specifically, Mattel has broadly defined "MGA"
15 to include "any of its current or former employees, officers, directors, agents,
16 representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-
17 interest and successors-in-interest, and any other PERSON acting on its behalf,
18 pursuant to its authority or subject to its control." (Park Decl., Ex. 11 (Wells Fargo
19 Subpoena) at 1. *See also* Ex. 12 (Moss Adams Subpoena) at 3; Park Decl., Ex. 9
20 (Wachovia Subpoena) at 1-2.) Similarly, Mattel has defined "ISAAC LARIAN" to
21 include "all of his current or former employees, agents, representatives, attorneys,
22 accountants, vendors, consultants, independent contractors, predecessors-in-interest
23 and successors-in-interest, relatives (whether by blood or marriage), and any other
24 PERSON acting on his behalf, pursuant to his authority or subject to his control."
25 (Park Decl., Ex. 12 (Moss Adams Subpoena) at 1.)

26      Mattel's sweeping definitions have no legitimate purpose and were intended
27 solely to harass. Indeed, *Mattel's definition of Mr. Larian even extends to his*
28

EXHIBIT ___7___

PAGE ___175___

1  *children.* Mattel cannot credibly assert that the tax returns, financial statements,
2  payroll records and other financial records for Mr. Larian's children and all of these
3  other non-parties are even remotely relevant to proving damages or establishing or
4  refuting any of the parties' claims or defenses. Even if Mattel could concoct some
5  theory of relevance, any probative value would be far outweighed by the burden and
6  expense associated with identifying all of these individuals and searching for and
7  collecting responsive documents, as well as by the substantial privacy interests of the
8  many non-parties who would be affected by compliance with the subpoenas.

9  Mattel's attempt to seek financial records of non-parties such as the Larian
10 Trusts, all of Mr. Larian's relatives and everyone who has ever done any work for
11 MGA or Mr. Larian mirrors the abusive non-party discovery tactics that Mattel and
12 Quinn Emanuel employed in *Walking Mountain.* As was the case in *Walking*
13 *Mountain,* none of the non-party information that Mattel is demanding in this case
14 has anything to do with this litigation. In addition, Mattel's requests are overly broad
15 and have not been tailored in any way to focus on relevant documents that Mattel
16 actually needs. Indeed, Mattel appears to have deliberately drafted its requests to be
17 as broad as possible. The Discovery Master should respond in the same manner that
18 the district court and Ninth Circuit responded in *Walking Mountain*—quash Mattel's
19 subpoenas.

20         **3.**    **Mattel Seeks Irrelevant and Duplicative Information**
21                **Regarding Litigation Between Isaac and Farhad Larian.**

22  Each of Mattel's subpoenas to the Non-Parties except Wells Fargo includes a
23 request for all documents relating to any litigation between Isaac Larian and his
24 brother Farhad. (Park Decl., Ex. 9 (Wachovia Subpoena) at Request 10; Exs. 7-8
25 (Ernst & Young and Deloitte & Touche Subpoenas) at Request 6; Ex. 12 (Moss
26 Adams Subpoena) at Request 11; Ex. 10 (ConsumerQuest Subpoena) at Request 14;
27 Exs. 13-14 (Larian Trusts Subpoenas) at Request 12.) These requests are excessive
28

21
MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT _____7_____

PAGE _____176_____

1 | and unnecessary. Mattel has requested those documents from the best sources of
2 | those materials and, to the extent they are relevant, has obtained or will obtain them
3 | from those sources. *See* Fed. R. Civ. P. 26(b)(2)(C) (limiting discovery where it "is
4 | unreasonably cumulative or duplicative, or can be obtained from some other source
5 | that is more convenient, less burdensome, or less expensive"); *Moon*, 232 F.R.D. at
6 | 638 (subpoena was unduly burdensome where party "can more easily and
7 | inexpensively obtain the documents from [another party]").

8 |     Mattel's requests to the Non-Parties for documents relating to any litigation
9 | between Isaac and Farhad Larian are duplicative of requests that Mattel previously
10 | served on Isaac Larian, MGA, Farhad Larian, Stern & Goldberg and Kaye Scholer.
11 | (Park Decl., Ex. 28 (comparison chart) at 28-29, 44, 57 and 92.) Mattel has already
12 | received some documents in response to those previously served requests and is
13 | currently engaged in motion practice with respect to the production of additional
14 | documents by Isaac Larian, Farhad Larian and the law firms. (Park Decl., ¶ 6.)
15 | Mattel has not asserted that the Non-Parties possess any unique set of relevant, non-
16 | privileged materials relating to litigation between Isaac and Farhad Larian that
17 | neither Isaac Larian, Farhad Larian, nor the law firms possess. Under the
18 | circumstances, Mattel's duplicative requests to the Non-Parties are improper.

19 |     As to documents that Mattel has already received, Mattel's demand that the
20 | Non-Parties search for and produce the same documents is unduly burdensome. To
21 | the extent production of additional documents is ordered in connection with the
22 | pending discovery motions, Mattel's requests that the Non-Parties also produce those
23 | documents would be improper since Mattel would already be obtaining such
24 | materials from other sources. Moreover, to the extent it is determined that Mattel is
25 | not entitled to any further production by Isaac Larian, Farhad Larian or the law firms,
26 | Mattel should not be permitted to circumvent that ruling by seeking such production
27 | from the Non-Parties. Accordingly, Mattel's requests to the Non-Parties for
28 |

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT _____ 7

PAGE _____ 177

1 | documents relating to all litigation between Isaac and Farhad Larian must be rejected.

2
3

        **4.**    **Mattel's Requests for Documents Related to MGA's Products or Carter Bryant Are Overly Broad and Abusively Drawn.**

4        Mattel's subpoenas to the Non-Parties also include requests for all documents

5 | relating to Bratz that they obtained from MGA and/or Isaac Larian. (Park Decl., Ex.

6 | 9 (Wachovia Subpoena) at Request 8; Exs. 7-8 (Ernst & Young and Deloitte &

7 | Touche Subpoenas) at Request 4; Ex. 12 (Moss Adams Subpoena) at Request 9; Ex.

8 | 10 (ConsumerQuest Subpoena) at Requests 1, 3, 5; Exs. 13-14 (Larian Trusts

9 | Subpoenas) at Request 9.) Mattel has also requested that the Larian Trusts and

10 | ConsumerQuest produce documents relating to Carter Bryant. (Park Decl., Exs. 13-

11 | 14 (Larian Trusts Subpoenas) at Request 10; Ex. 10 (ConsumerQuest Subpoena) at

12 | Request 11.) The ConsumerQuest subpoena further requests documents relating to

13 | other MGA products or work performed for MGA. (Park Decl., Ex. 10 at Requests 2,

14 | 4, 6-8, 10, 12.) Although some documents regarding MGA's products or Mr. Bryant

15 | may be relevant, Mattel's requests are improper because they are overly broad and

16 | not tailored to exclude irrelevant or duplicative information. *See* Fed. R. Civ. P.

17 | 26(b)(2)(C); *Walking Mountain*, 353 F.3d at 813 (quashing subpoena issued by

18 | Mattel and Quinn Emanuel because "no attempt had been made to try to tailor the

19 | information request to the immediate needs of the case").

20        Over the past three years, Mattel has taken vast amounts of discovery

21 | regarding Bratz, other MGA products at issue and Mr. Bryant. Mattel has served the

22 | MGA Defendants with hundreds of document requests covering these subjects and

23 | has received in response to its requests more than three million pages of responsive

24 | documents. (Park Decl., ¶ 2.) For example, Mattel has already requested and

25 | obtained from MGA mountains of documents relating to Bratz. (*See, e.g.,* Park Decl.,

26 | Ex. 29 (Mattel's 1st Set of RFPs to MGA) at Request 32 ("ALL DOCUMENTS

27 | prepared, written, transmitted or received (whether in whole or in part) prior to

28

EXHIBIT _____ 7
PAGE _____ 178

1   January 1, 2001 that REFER OR RELATE TO BRATZ.") & Request 33 ("ALL
2   DOCUMENTS that REFER OR RELATE TO BRATZ that REFER OR RELATE
3   TO any time prior to January 1, 2001 (regardless of when such document was
4   prepared, written, transmitted or received, whether in whole or in part).").) Similarly,
5   documents relating to market research for MGA's "4 Best Friends," "Mommy's Little
6   Patient," "Mommy's Little" and "Alienracers" products are already the subject of
7   several of Mattel's document requests to MGA. (See, e.g., Park Decl., Ex. 30
8   (Mattel's 1st Set of RFPs Re Unfair Competition) at Request 26 ("All DOCUMENTS
9   RELATING TO the target market or potential target market, and the demographics
10  of any actual, potential or prospective consumers, customer, purchasers or licensees
11  of the CONTESTED MGA PRODUCTS.") & Request 36 ("All DOCUMENTS
12  RELATING TO any consumer studies, reports, surveys, interviews or reports
13  regarding the CONTESTED MGA PRODUCTS . . .").)

14          Having had ample opportunity to take discovery regarding Bratz, the other
15  MGA products at issue, and Mr. Bryant, Mattel should not be permitted to burden
16  the Non-Parties with duplicative discovery requests. Fed. R. Civ. P. 26(b)(2)(C);
17  Lectrolarm, 212 F.R.D. at 573 (granting protective order against subpoenas that
18  requested information that was already the subject of party discovery). Even if some
19  of the documents Mattel seeks are relevant, Mattel has a duty to "take reasonable
20  steps to avoid imposing undue burden or expense on [subpoenaed non-parties]." Fed.
21  R. Civ. P. 45(c)(1). Such steps include tailoring the requests by specifying only the
22  relevant, non-duplicative materials that Mattel needs. See Walking Mountain, 353
23  F.3d at 813 (quashing Mattel's subpoena where Mattel made "no attempt . . . to try to
24  tailor the information request to the immediate needs of the case"); Lectrolarm, 212
25  F.R.D. at 573 (holding that plaintiff could only obtain documents from non-party
26  "with a showing that there is specific, relevant information in [non-party's]
27  possession that [is not privileged]").

28

EXHIBIT ____7____

PAGE ____17 9____

1       Mattel has made no effort to tailor its requests, but has deliberately drafted
2  them to cast as wide a net as possible. For example, Mattel has broadly requested
3  that ConsumerQuest produce "ALL DOCUMENTS REFERRING OR RELATING
4  TO BRATZ . . . [AND] SCOOTER SAMANTHA," without any limitation as to time
5  or type of documents. (Park Decl., Ex. 10 at Requests 1, 2.) Mattel has also
6  demanded that ConsumerQuest produce "all DOCUMENTS REFERRING OR
7  RELATING TO any study, survey, focus group, research group or other work or
8  services for MGA that YOU conducted, facilitated or were otherwise involved with
9  prior to December 31, 2002, " which literally encompasses everything that
10  ConsumerQuest ever did for MGA prior to 2003, even if it had nothing to do with
11  Bratz or any of the other MGA products at issue. (*Id.* at Request 6.)

12       Because Mattel has failed to take any steps, let alone reasonable steps, to avoid
13  unduly burdening the Non-Parties, its subpoenas are improper and must be quashed
14  or substantially narrowed.

15  **IV.   CONCLUSION.**

16       Mattel has misused the subpoena process by serving deliberately overbroad
17  requests in an attempt to harass and intimidate the MGA Defendants and Non-Parties.
18  Even worse, Mattel has refused to withdraw the subpoenas or make any effort to
19  narrow their scope in any meaningful way. Accordingly, the MGA Defendants
20  respectfully request that the Discovery Master quash Mattel's subpoenas to
21  ConsumerQuest, Deloitte & Touche, Ernst & Young, the Isaac and Angela Larian
22  Trust, the Isaac Larian Annuity Trust, Moss Adams, Wachovia Bank and Wells
23  Fargo, or, at a minimum, issue a protective order substantially narrowing the scope
24  of those subpoenas and requiring Mattel to specifically identify the relevant and non-
25  duplicative information that it seeks from the Non-Parties.

26

27

28

EXHIBIT _____ 7 _____

PAGE _____ 180 _____

1 | DATED: December 21, 2007

2

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP

3

4

By: 

5

Thomas J. Nolan

6

Attorneys for Counter-Defendants, MGA
ENTERTAINMENT, INC., ISAAC
LARIAN, MGA ENTERTAINMENT (HK)
LIMITED, and MGAE de MEXICO S.R.L.
de C.V.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT ___7___

PAGE ___181___

# EXHIBIT 8

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:   (415) 774-2611
4   Facsimile:   (415) 982-5287

5

6

7

8                   UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                     EASTERN DIVISION

11

| | |
|---|---|
| 12   CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) <br> JAMS Reference No. 1100049530 |
| 13        Plaintiff, | |
| 14        v. | Consolidated with <br> Case No. CV 04-09059 |
| 15   MATTEL, INC., a Delaware corporation, | Case No. CV 05-2727 |
| 16        Defendant. | **ORDER GRANTING IN PART AND DENYING IN PART MGA PARTIES'** |
| 17 | **MOTION TO QUASH SUBPOENAS; GRANTING IN PART AND DENYING** |
| 18 | **IN PART MATTEL'S COUNTER MOTION TO COMPEL** |
| 19 | |
| 20   CONSOLIDATED WITH <br> MATTEL, INC. v. BRYANT and | |
| 21   MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

22                       I. INTRODUCTION

23

24       On December 21, 2007, MGA Entertainment, Inc. ("MGA"), Isaac Larian, MGA

25   Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively, the "MGA

26   Parties") submitted their motion for an order quashing subpoenas issued by Mattel, Inc.

27   ("Mattel") to non-parties ConsumerQuest, Deloitte & Touche, Ernst & Young, the Isaac and

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT   8

5-7-08     PAGE   182

1 | Angela Larian Trust, the Isaac Larian Annuity Trust, Moss Adams, Wachovia Bank and Wells

2 | Fargo, or in the alternative, a protective order limiting the scope of those subpoenas. On

3 | December 27, 2007, the MGA Parties submitted a supplemental brief to add to their motion to

4 | quash three more subpoenas Mattel served on the Isaac E. Larian Qualified Annuity Trust 2004,

5 | the Isaac and Angela Larian Family Trust, and the Isaac and Angela Larian Trust. On January 18,

6 | 2008, Mattel submitted an opposition and counter motion to compel production of documents

7 | responsive to the subpoenas and a privilege log. On February 7, 2008, the MGA Parties

8 | submitted a reply, and on February 15, 2008, Mattel submitted a reply in support of its counter

9 | motion. The parties were directed to meet and confer further regarding the motions, which has

10 | been completed. See Joint Report dated March 28, 2008. Despite the additional meet and confer

11 | sessions, the parties were unable to resolve or narrow their disputes regarding the instant motions.

12 | Pursuant to Paragraph 5 of the Stipulation and Order for Appointment of a Discovery Master, the

13 | Discovery Master finds it appropriate to take the motions under submission for decision without

14 | oral argument.

15 | II. BACKGROUND

16 | Ernst & Young and Deloitte & Touche are MGA's auditors. Mattel's subpoenas to MGA's

17 | auditors seek production of documents: (1) relating to MGA's annual audits and the identity of

18 | other auditors; (2) indicating or calculating MGA's net worth and the value of MGA's goodwill

19 | and intellectual property; (3) relating to Bratz; and (4) relating to the legal dispute between Isaac

20 | and Farhad Larian.

21 | Wachovia lent money to MGA to fund the creation and/or development of Bratz and to

22 | acquire Little Tikes. Mattel's subpoena to Wachovia seeks documents related to: (1) the loans

23 | Wachovia extended to MGA; (2) the legal dispute between Isaac and Farhad Larian; (3) MGA's

24 | net worth, goodwill, and intellectual property; (4) Bratz; and (5) this action.

25 | ConsumerQuest is a marketing research firm that performed market research and analysis

26 | for MGA products, including Bratz. Mattel's subpoena to ConsumerQuest seeks documents

27 |

28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT _____ 8 _____

PAGE _____ 183 _____

1   related to:  (1) Bratz and other products involved in this action; (2) consumer research and

2   marketing work done regarding other MGA products underlying the parties' claims; and (3)

3   communications with MGA, Isaac Larian, and other parties relevant to this action, such as Carter

4   Bryant or other former Mattel employees and vendors.

5          Wells Fargo is and has been MGA's bank during periods relevant to this action.  Mattel's

6   subpoena to Wells Fargo contains five requests, seeking MGA's banking and financial documents,

7   including account information, cancelled checks, monthly and daily transactional history, and

8   bank statements.

9          Moss Adams is and has been Isaac Larian's accountant during the relevant period.  The

10  subpoena to Moss Adams seeks:  (1) accounting records, tax records, and schedules for MGA,

11  Isaac Larian, Isaac Larian's trusts and Farhad Larian; (2) documents indicating or calculating

12  MGA's and Isaac Larian's net worth; (3) documents relating to the value of MGA's intellectual

13  property and goodwill; (4) documents relating to Bratz and this action; (5) evidence of payments

14  from MGA or Isaac Larian to Bryant and other Mattel employees; and (6) Isaac Larian's

15  involvement with other trust or institutions in which he has an interest.

16         Mattel also served subpoenas on several of Isaac Larian's trusts.  Mattel's subpoenas to

17  Isaac Larian's trusts seek:  (1) documents related to the trusts' organization, including the

18  identities of its trustees and beneficiaries; (2) the trusts' tax records; (3) documents indicating the

19  trusts' assets; and (4) information related to other trusts in which Larian has an interest.

20         All of the non-parties objected to Mattel's subpoenas on the grounds that, *inter alia*, they

21  are overly broad, unduly burdensome and seek irrelevant and/or duplicative information.  Park

22  Decl., Exs. 15-26.

23         The MGA Parties contend that Mattel's subpoenas are overly broad, unduly burdensome,

24  and cumulative and duplicative of discovery Mattel has already sought and received.  More

25  specifically, the MGA Parties raise the following objections to each of the four categories of

26  documents Mattel seeks.  First, the MGA Parties contend that Mattel's subpoenas essentially seek

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                    3

EXHIBIT ____8____

PAGE ____184____

1  unfettered access to MGA and Isaac Larian's financial histories for a nine-year period from 1999

2  to the present, and that there is no claim or defense at issue that could possibly justify the breadth

3  and intrusiveness of the subpoenas.  Further, the MGA parties contend that they have already

4  produced vast amounts of relevant financial documents in response to Mattel's discovery requests.

5  To make their point, the MGA Parties prepared a detailed chart that identifies Mattel's subpoenas

6  requests to the non-parties and for each such request, identifies an exemplary list of duplicative

7  document requests and/or interrogatories that Mattel served on Carter Bryant and/or the MGA

8  Parties.  See Decl. of Amy Park in Support of MGA Defendants' Motion to Quash, Ex. 28.

9       Second, the MGA Parties contend that Mattel's subpoenas are overbroad in that they call

10 for production of the financial records of every person who ever did any work for MGA or Isaac

11 Larian, and every conceivable relative of Isaac Larian.  The MGA Parties contend that the private

12 financial records of these non-parties are not relevant to the case, and that Mattel's subpoenas

13 constitute an abuse of the non-party discovery process.

14      Third, the MGA Parties contend that Mattel has already sought and received documents

15 relating to the litigation between Isaac Larian and his brother Farhad Larian from multiple

16 sources.  More specifically, the MGA Parties contend that Mattel has sought and received

17 relevant documents from Isaac and Farhad Larian, as well as MGA and at least two law firms

18 involved in the litigation between the Larian brothers.

19      Fourth, the MGA Parties object to the various requests for all documents obtained from

20 MGA or Isaac Larian relating to Bratz, other MGA products or Carter Bryant.  Although the

21 MGA Parties acknowledge that some of the requested documents may be relevant, the MGA

22 Parties contend that the document requests are objectionable because Mattel has already requested

23 and received well over three million pages of relevant documents from the MGA Parties.  The

24 MGA Parties also contend that Mattel's requests are so overly broad that it is impossible to

25 discern what specific, relevant, non-duplicative documents Mattel is requesting from the non-

26 parties.

27

28 Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

EXHIBIT _____ 8

PAGE _____ 185

4

1    In contrast, Mattel contends that all of the subpoenas seek documents that are relevant to

2    several issues in the case, including, but not limited to, the creation and development of Bratz,

3    Mattel's damages claim (including Mattel's claims for punitive damages and disgorgement),

4    Mattel's claim against MGA for commercial bribery, MGA's damages claims, the value of MGA's

5    goodwill and intellectual property, and the credibility and bias of MGA and Isaac Larian, as well

6    as other potential witnesses.  Mattel contends that it should be permitted to pursue discovery from

7    non-parties, and not have to rely upon the good faith of MGA and Isaac Larian to comply with

8    their discovery obligations.  Mattel also contends that it should be permitted to pursue discovery

9    from the non-parties in order to guard against the possibility of spoliation of evidence and/or

10   document tampering.

11    Furthermore, Mattel contends that the MGA Parties have not shown that they possess,

12   much less have produced, all of the documents Mattel is seeking from the non-parties.  More

13   specifically, Mattel contends that the MGA Parties have failed to produce the following

14   documents that Mattel has requested from the various non-parties:  documents related to Isaac

15   Larian's net worth and the value of MGA's intellectual property and goodwill; MGA's tax records;

16   Wells Fargo banking records for MGA; documents related to payments to by MGA, Larian, or the

17   Larian trusts to Bryant and other Mattel employees and vendors; documents from the Larian v.

18   Larian litigation; documents related to the Larian trusts, including any documents showing Isaac

19   Larian's interest in, payments received from, or transfer to those trusts; and documents regarding

20   the 1999-2000 and 2006 loans MGA received from Wachovia, including what documents MGA

21   and Larian gave to Wachovia to justify the loans.  Furthermore, Mattel contends that MGA's

22   descriptions of the documents it has produced are vague, inaccurate or misleading.

23    Mattel also contends that the MGA Parties' burden objection is unsubstantiated in that

24   none of the subpoenaed parties has filed a declaration in opposition to the motion or offered any

25   specific evidence that the subpoenas impose an undue burden.  Rather, Mattel represents that

26   some of the subpoenaed parties were already in the process of preparing documents for

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT ___8___

PAGE ___186___

1 | production or meeting and conferring with Mattel when MGA filed the instant motion.  Corey

2 | Decl., ¶¶7-9.  Furthermore, Mattel points out that it has offered to reimburse the non-parties for

3 | copying costs and to have its own paralegal and counsel inspect documents gathered.

### III. STANDARDS

5 |     Rule 26, Fed.R.Civ.P., provides that "[p]arties may obtain discovery regarding any matter,

6 | not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1).  The

7 | court shall, however, limit the frequency or extent of use of the discovery methods if the court

8 | determines that (i) the discovery sought is unreasonably cumulative or duplicative, or is

9 | obtainable from some other source that is more convenient, less burdensome, or less expensive;

10 | (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the

11 | information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely

12 | benefit, taking into account the needs of the case, the amount in controversy, the parties'

13 | resources, the importance of the issues at stake in the litigation, and the importance of the

14 | proposed discovery in resolving the issues.  Fed.R.Civ.P. 26(b)(2)(C).

15 |     Rule 45, Fed.R.Civ.P., requires third parties to produce documents (and reasonably

16 | accessible electronically stored information) that are responsive to a subpoena that a party serves

17 | on them.  Fed.R.Civ.P. 45(b), (d).  If the subpoenaed documents are relevant and there is good

18 | cause for their production, the subpoena is enforced unless the documents are privileged or the

19 | subpoena is unreasonable, oppressive, annoying or embarrassing.  U.S. v. American Optical Co.,

20 | 39 F.R.D. 580, 583 (N.D. Cal. 1966).

21 |     Rule 45(c)(1), Fed.R.Civ.P., requires a party serving a subpoena to take reasonable steps

22 | to avoid imposing undue burden or expense on a person subject to the subpoena.  Furthermore,

23 | "[t]he issuing court must enforce this duty and impose an appropriate sanction--which may

24 | include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply."

25 | Id.  Rule 45 also provides that the issuing court must quash or modify a subpoena under certain

26 | circumstances, including among others, when the subpoena requires the disclosure of privileged

27

28

6

EXHIBIT ____8____

PAGE ____187____

1     or other protected matter or subjects a person to undue burden. Fed.R.Civ.P. 45(c)(3)(A)(iii) and

2     (iv). A motion to quash a subpoena or for a protective order as to that subpoena may be made by

3     a party-opponent. See Moon v. SCP Pool Corp., 232 F.R.D. 633, 636 (C. D. Cal. 2005) (granting

4     defendants' motion to quash subpoena).

5         In evaluating whether a subpoena imposes an undue burden, Rule 45(c)(3)(A),

6     Fed.R.Civ.P., "'requires the court to weigh the burden to the subpoenaed party against the value of

7     the information to the serving party,' . . . and in particular requires the court to consider: 'such

8     factors as relevance, the need of the party for the documents, the breadth of the document request,

9     the time period covered by it, the particularity with which the documents are described and the

10     burden imposed.'" Moon, 232 F.R.D. at 637, quoting Travelers Indem. Co. v. Metropolitan Life

11     Ins. Co., 228 F.R.D. 111, 113 (D. Conn. 2005). Another important factor in evaluating burden is

12     whether the subpoenaing party can more easily and inexpensively obtain the documents from

13     another party, rather than from the nonparty. Moon, 232 F.R.D. at 638.

14                                       IV. DISCUSSION

15     A. Financial Information re MGA and Isaac Larian

16         Mattel has subpoenaed five different entities that perform financial services for MGA or

17     Isaac Larian: Wells Fargo, Wachovia, Ernst & Young, Deloitte & Touche and Moss Adams.

18     Although Mattel's requests encompass documents that are relevant to several issues in the case,

19     the requests are unduly burdensome, exceedingly overbroad and unreasonably cumulative of

20     other discovery Mattel has already sought and received in this case.

21         For example, the subpoena to Wells Fargo demands production of the following broad

22     categories of financial documents: (1) "[a]ll DOCUMENTS REFERRING OR RELATING TO

23     MGA from January 1, 1999 to the present, inclusive"; (2) "[a]ll DOCUMENTS REFERRING OR

24     RELATING TO the ACCOUNT maintained by YOU numbered 9600112551, including but not

25     limited to statements, monthly statements, annual statements, daily transaction history reports,

26     monthly transaction history reports, deposit reports, deposit slips, canceled checks, signature

27

28     Bryant v. Mattel, Inc.,
       CV-04-09049 SGL (RNBx)

7

EXHIBIT _____ 8 _____

PAGE _____ 188

1  cards, and COMMUNICATIONS REFERRING OR RELATING TO such ACCOUNT, created

2  between January 1, 1999 and the present, inclusive"; (3) "[a]ll DOCUMENTS REFERRING OR

3  RELATING TO" any other accounts created between January 1, 1999 and the present, inclusive;

4  (4) DOCUMENTS sufficient to show the account number for all accounts maintained in the name

5  of, for the benefit of or concerning MGA between January 1, 1999 and the present, inclusive; (5)

6  and "[a]ll DOCUMENTS showing or relating to any account(s) held by MGA or any account(s)

7  on which MGA has signatory authority at any other financial institution."

8         The breadth of the requests to Wells Fargo is compounded by the fact that "MGA" is

9  defined to include MGA Entertainment Inc., any of its current or former employees, officers,

10  directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates,

11  predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf.

12  Furthermore, the phrase "REFERRING OR RELATING TO" is defined expansively as

13  "reflecting, identifying, describing, summarizing, evidencing, referencing, concerning, discussing

14  or indicating in any way." Park Decl., Ex. 11.

15         The subpoena to Isaac Larian's tax accounting firm, Moss Adams, is similarly overbroad.

16  For example, Mattel seeks "[a]ll DOCUMENTS RELATING TO MGA [and] ISAAC LARIAN,

17  including without limitation, accounting records, tax returns and schedules . . . and drafts thereof,

18  W-2s, work papers, worksheets, payroll records, financial statements (audited and unaudited), pro

19  formas, budgets, account information and account statements." Park Decl., Ex. 12. The phrase

20  "RELATING TO" in the subpoena to Moss Adams is drafted in the broadest possible manner to

21  include "referencing, referring to, constituting, evidencing, pertaining to, mentioning, supporting,

22  contradicting, negating, bearing on, touching on, containing, embodying, reflecting, identifying,

23  stating, dealing with, concerning, commenting on, summarizing, responding to, relating to,

24  describing or discussing in any way." Id. As another example, Mattel's subpoena to Moss Adams

25  includes a request for all documents relating to any non-payroll payment or transfer of value from

26  MGA or Isaac Larian to any "FORMER MATTEL EMPLOYEE." Mattel does not identify any

27

28
Bryant v. Mattel, Ino.,
CV-04-09049 SGL (RNBx)                                                                        8

EXHIBIT ____8____

PAGE ____189____

1  of these "FORMER MATTEL EMPLOYEES" or otherwise limit the request to any specific time

2  period.

3        The subpoenas to Deloitte & Touch and Ernst & Young are similarly unrestrained in

4  scope, seeking the following categories of financial documents:  all documents constituting or

5  relating to MGA's annual audits, including without limitation accounting records, audit programs,

6  audit reports and drafts thereof, tax returns, work papers, worksheets, payroll records, financial

7  projections, pro formas and budgets, from the period beginning January 1, 1999 to the present; all

8  documents indicating or calculating MGA's net worth; and all documents indicating the value of

9  MGA's intellectual property or goodwill.  Park Decl., Exs. 7-8.

10       With respect to Wachovia, Mattel seeks the following categories of financial documents:

11  all documents relating to any loan agreement that Wachovia entered into with MGA since January

12  1, 1999, including drafts of any agreements; all documents that MGA or any other person

13  provided to Wachovia for purposes of entering into any loan agreement between Wachovia and

14  MGA; all documents that were in the "three (3) boxes of loan documents" that Wachovia referred

15  to in a November 15, 2005 letter to Robert G. Wilson, Esq.; all documents relating to any loan

16  agreement entered into by MGA, or sought or requested by MGA, during the time period January

17  1, 1999 and December 31, 2000, inclusive; all communications between Wachovia and MGA

18  during the time period January 1, 1999 and December 31, 2000, inclusive; all documents

19  indicating or showing a calculation of MGA's net worth or value; all documents indicating or

20  calculating the value of MGA's intellectual property or goodwill; all documents relating to Bratz,

21  including without limitation those obtained from MGA, since January 1, 1999; and documents

22  sufficient to identify any other MGA lender or person who extended or was requested to extend a

23  line of credit to MGA since January 1, 1998.  Park Decl., Ex. 9.  Mattel contends that the loan

24  documents will contain information about the timing and creation of Bratz.  However, all of the

25  requests for financial documents, except for portions of Request Nos. 4 and 5, are much broader,

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT ___8___

PAGE ___190___

1   seeking everything relating to any loan between MGA and Wachovia from 1999 through the

2   present.

3        Furthermore, to the extent any of Mattel's requests for financial information encompass

4   relevant materials, the requests remain unreasonably duplicative and cumulative of discovery

5   Mattel has already sought and obtained from MGA and Isaac Larian (with the exception of

6   Request Nos. 4 and 5 in the Wachovia subpoena). MGA has produced the following: audited and

7   unaudited quarterly and annual profit and loss statements; audited and unaudited quarterly and

8   annual statements; annual reports; various MGA financial reports; various financial documents

9   relating to Veronica Marlow; documents showing royalty payments to Carter Bryant; documents

10  showing MGA's sales, returns and costs of goods sold for each month, by SKU, since 2001;

11  documents showing MGA's promotional advertising and media expenditures, including MGA's

12  internal allocation of those expenditures by brand and/or product; documents showing MGA's

13  amortization and depreciation of certain capital assets and expenditures; documents showing

14  MGA's monthly general ledger entries aggregated by account, including income and expense

15  accounts, reserves and liabilities; and documents sufficient to explain MGA's various accounts as

16  presently and historically maintained in MGA's books and records. Park Decl., ¶3.

17       The MGA Parties also represent that Isaac Larian recently produced over 50,000 pages of

18  documents which included, among other things, documents showing his net worth; his gross

19  income, wages, dividend income, interest income, and other income; his banks and bank

20  accounts; and various other financial documents. Park Decl., ¶2. Thus, Mattel has received

21  ample financial documents. Mattel has also deposed MGA, Isaac Larian, and other witnesses

22  regarding relevant financial information. In view of the discovery Mattel has already sought and

23  received, Mattel's over-reaching, broad subpoenas to the various non-parties seeking more

24  financial information regarding MGA and Isaac Larian are unjustified under Rule 26(b)(2),

25  Fed.R.Civ.P.

26  //

27

28

EXHIBIT _____8_____

PAGE _____191_____

1  B. Financial Information re Non-Parties

2      Mattel's subpoenas also seek financial documents regarding numerous non-parties,

3  including everyone who has ever worked for or represented MGA or Isaac Larian, and every

4  relative of Isaac Larian. Once again, although the subpoenas encompass documents that are

5  potentially relevant to Mattel's claims and defenses, the subpoenas are overly broad, sweeping in

6  vast amounts of documents that have little to no relevance. For example, Mattel's subpoenas to

7  Moss Adams and the various trusts include requests for all formation documents, all tax returns,

8  any other tax-related documents from 1999 to the present, and documents relating to the operation

9  of the trust, including every trustee and beneficiary of each trust, every disbursement by each

10  trust, every asset owned by each trust, and every liability of each trust. Mattel has not shown that

11  all of the requested documents are relevant to the claims and defenses in the case.

12      Mattel's subpoenas to the non-parties are also unreasonably duplicative and cumulative of

13  discovery Mattel has already sought and received in this case. Furthermore, to the extent Mattel's

14  subpoenas might include requests that are not unreasonably duplicative and/or cumulative of

15  other discovery requests, the probative value of the information Mattel seeks is substantially

16  outweighed by the burden of production, especially in light of the privacy interests of the many

17  non-parties who would be affected.[1]

18  C. Information re Litigation Between Isaac and Farhad Larian

19      All of Mattel's subpoenas to the non-parties, except Wells Fargo, include a request for all

20  documents relating to any litigation between Isaac Larian and Farhad Larian. These requests are

21  unreasonably duplicative and cumulative of many requests Mattel previously served on Isaac

22  Larian, MGA, Farhad Larian, Stern & Goldberg and Kaye Scholer. Mattel has sought and

23  received substantial discovery regarding the litigation between Isaac and Farhad Larian. See

24  _____

25     [1]  In its reply brief, Mattel contends that Isaac Larian is the trustee of all of the trusts that Mattel has subpoenaed, and therefore he was required, but purportedly failed, to search for and produce trust documents when

26  responding to the discovery requests directed to him. These issues are beyond the scope of the present motion, and will not be addressed herein.

27

28  Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

           11

EXHIBIT _____8_____

PAGE _____192_____

1    Order Re Mattel's Motions to Compel Farhad Larian, Kaye Scholer and Stern & Goldberg to
2    Produce Documents dated January 25, 2008. Mattel has not shown that the non-parties possess
3    any relevant, non-privileged materials beyond what Mattel has already sought and received from
4    other sources. Furthermore, the burden and expense of complying with the non-party subpoenas
5    substantially outweigh their likely benefit under Rule 26(b)(2), Fed.R.Civ.P.

6    D. Documents re MGA's Products or Carter Bryant

7          Mattel's subpoenas to the non-parties include requests for documents relating to Carter
8    Bryant, Bratz and other MGA products or work performed for MGA. Although this category of
9    requests encompasses documents that are potentially relevant to the claims and defenses in the
10   case, the requests are nevertheless objectionable because they are overly broad and not tailored to
11   exclude irrelevant, duplicative or unreasonably cumulative information. Mattel has taken vast
12   amounts of discovery regarding Carter Bryant, Bratz, and other MGA products from several
13   different sources. Mattel has not shown that the non-parties possess any relevant, non-privileged
14   materials beyond what Mattel has already sought and received from other sources. Furthermore,
15   the burden and expense of complying with the non-party subpoenas substantially outweigh their
16   likely benefit under Rule 26(b)(2), Fed.R.Civ.P.

17                                    V. CONCLUSION

18         For the reasons set forth above, the MGA Parties' motion to quash, or in the alternative for
19   a protective order, is granted, except with respect to the following requests:

20         • Wachovia subpoena, Request No. 4, limited to "all documents relating to any loan
21           agreement entered into by MGA, or sought or requested by MGA, during the time
22           period January 1, 1999 and December 31, 2000, inclusive"; and Request No. 5,
23           limited to "all communications between YOU and MGA during the time period
24           January 1, 1999 and December 31, 2000, inclusive" regarding any loan agreement
25           entered into by MGA, or sought or requested by MGA, during the time period
26           January 1, 1999 and December 31, 2000, inclusive.

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                          12

     EXHIBIT _____ 8 _____

     PAGE _____ 193 _____

1 | Mattel's counter motion to compel is granted in part and denied in part in accordance with the

2 | Court's ruling on the MGA Parties' motion to quash, or in the alternative for a protective order, as

3 | set forth immediately above.  Wachovia shall produce documents responsive to Request Nos. 4

4 | and 5 as set forth above on or before May 16, 2008.

5 |      Nothing in this Order is intended to authorize or preclude Mattel from seeking documents

6 | from the non-parties identified herein as part of Phase 2 discovery, if appropriate.

7 |      Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

8 | Master, the MGA Parties shall file this Order with the Clerk of Court forthwith.

9 |

10 | Dated: May 7, 2008                    /S/

11 |                          HON. EDWARD A. INFANTE (Ret.)

12 |                              Discovery Master

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

EXHIBIT _____ 8 _____

PAGE _____ 194 _____

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 7, 2008, I served the
attached ORDER GRANTING IN PART AND DENYING IN PART MGA PARTIES' MOTION TO QUASH
SUBPOENAS; GRANTING IN PART AND DENYING IN PART MATTEL'S COUNTER MOTION TO
COMPEL in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Diane Hutnyan, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dianehutnyan@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true
and correct.

Executed on May 7, 2008, at San Francisco, California.

Anthony Sales

EXHIBIT ___8___

PAGE ___195___

# EXHIBIT 9

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER