# EXHIBIT 35

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 90378)
2    (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

12

13  CARTER BRYANT, an individual,      CASE NO. CV 04-09049 SGL (RNBx)

14             Plaintiff,              Consolidated with Case Nos. CV 04-
                                       9059 and CV 05-2727
15       v.

16  MATTEL, INC., a Delaware
   Corporation,                        MATTEL, INC.'S FIFTH SET OF
17                                      REQUESTS FOR ADMISSION TO
              Defendant,               MGA ENTERTAINMENT, INC.
18

19

20  AND CONSOLIDATED ACTIONS.

21

22

23

24

25  PROPOUNDING PARTY:     Mattel, Inc.

26  RESPONDING PARTY:      MGA Entertainment, Inc.

27  SET NO.:               FIVE

28

07209/2138116.1

─────────────────────────────────────
MATTEL'S FIFTH SET OF REQUESTS FOR ADMISSION PROPOUNDED TO MGA

EXHIBIT  35  ....!...!.-.-1

PAGE  512

EX 10234-0001

1    Pursuant to <u>Federal Rule of Civil Procedure</u> 36, MGA

2   Entertainment, Inc. is requested to respond to the following requests for admission

3   (the "Requests") within thirty days hereof.  MGA Entertainment, Inc. shall be

4   obligated to supplement its responses to the Requests at such times and to the extent

5   required by the <u>Federal Rules of Civil Procedure</u>.

6

7                                **Definitions**

8

9        1.    "BRYANT" means Carter Bryant individually.

10       2.    "YOU" and "MGA" mean MGA Entertainment, Inc., any of its

11   current or former employees, officers, directors, agents, representatives, attorneys,

12   experts, divisions, AFFILIATES, predecessors-in-interest and successors-in-interest,

13   and any other PERSON acting on its behalf, pursuant to its authority or subject to its

14   control.  Without limiting the foregoing, "MGA" includes the entities known as

15   ABC International Traders or ABC International Traders, Inc.  For purposes of the

16   Requests, "YOU" and "MGA" do not include BRYANT.

17       3.    "AFFILIATES" means any and all corporations, proprietorships,

18   d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or

19   indirectly, in whole or in part, own or control, are under common ownership or

20   control with, or are owned or controlled by a PERSON, party or entity, including

21   without limitation each parent, subsidiary and joint venture of such PERSON, party

22   or entity.

23       4.    "PERSON" or "PERSONS" means all natural persons,

24   partnerships, corporations, joint ventures and any kind of business, legal or public

25   entity or organization, as well as its, his or her agents, representatives, employees,

26   officers and directors and any one else acting on its, his or her behalf, pursuant to

27   its, his or her authority or subject to its, his or her control.

28

-1-
MATTEL'S FIFTH SET OF REQUESTS FOR ADMISSION PROPOUNDED TO MGA

EXHIBIT ____35____

PAGE ____513____

EX 10234-0002

1        5.    "DESIGN" or "DESIGNS" means any and all representations,

2 whether two-dimensional or three-dimensional, and whether in tangible, digital,

3 electronic or other form, including but not limited to all works, designs, artwork,

4 sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

5 diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

6 practice, developments, inventions and/or improvements, as well as all other items,

7 things and DOCUMENTS in which any of the foregoing are or have been

8 expressed, embodied, contained, fixed or reflected in any manner, whether in whole

9 or in part.

10        6.    "BRATZ" means any project, product, doll or DESIGN ever

11 known by that name (whether in whole or in part and regardless of what such

12 project, product or doll is or has been also, previously or subsequently called) and

13 any product, doll or DESIGN or any portion thereof that is now or has ever been

14 known as, or sold or marketed under, the name or term "Bratz" (whether in whole or

15 in part and regardless of what such product, doll or DESIGN or portion thereof is or

16 has been also, previously or subsequently called) or that is now or has ever been

17 sold or marketed as part of the "Bratz" line, and each version or iteration of such

18 product, doll or DESIGN or any portion thereof. As used herein, "product, doll or

19 DESIGN or any portion thereof" also includes without limitation any names,

20 fashions, accessories, artwork, packaging or any other works, materials, matters or

21 items included or associated therewith. Without limiting the generality of the

22 foregoing, and contrary to MGA's recent assertions in connection with other Mattel

23 discovery requests, the term "BRATZ" does not and shall not require that there be a

24 doll existing at the time of the event, incident or occurrence that is the subject of, or

25 otherwise relevant or responsive to, the Requests.

26        7.    "BRATZ WORK" or "BRATZ WORKS" means any

27 representation of BRATZ, whether two-dimensional or three-dimensional, and

28

07209/2138116.1

-2-

EXHIBIT _____ 35

PAGE _____ 514

EX 10234-0003

1  whether in tangible, digital, electronic or other form, including any DESIGN that, in
2  whole or in part, REFERS OR RELATES TO BRATZ.

3       8.   "MATTEL" means plaintiff and counter-defendant Mattel, Inc.,
4  its current employees, officers, directors, agents, representatives, attorneys, parents,
5  subsidiaries, divisions, AFFILIATES, predecessors-in-interest and successors-in-
6  interest, and any other PERSON acting on its behalf, pursuant to its authority or
7  subject to its control.

8       9.   "THE BRATZ PITCH MATERIALS" means each and every
9  BRATZ WORK which was displayed, shown, provided, or offered to YOU on or
10 before the date on which YOU executed the BRYANT/MGA AGREEMENT.

11      10.   "THIS ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV
12 04-9059 SGL (RNBx), filed on April 27, 2004, and the cases consolidated
13 therewith.

14      11.   "BRYANT/MGA AGREEMENT" means the written agreement
15 between CARTER BRYANT and MGA dated as of September 18, 2000, produced
16 as BRYANT 00794-00799, and any other version or versions thereof.

17      12.   "CONTEND" means to contend, argue, assert, maintain, put at
18 issue, declare, and/or claim in connection with THIS ACTION.

19      13.   "CREATE OR IMPROVE" or "CREATED OR IMPROVED,"
20 in the context of a BRATZ WORK or BRATZ WORKS, means to create, improve,
21 develop, modify, alter, conceive, reduce to practice, or otherwise work on the
22 BRATZ WORK or BRATZ WORKS.

23      14.   "DOCUMENT" or "DOCUMENTS" means all "writings" and
24 "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil
25 Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not
26 limited to, all writings and records of every type and description including, but not
27 limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles,
28 electronic mail ("e-mail"), records of telephone conversations, handwritten and

-3-

EXHIBIT ___35___

PAGE ___515___

EX 10234-0004

1 | typewritten notes of any kind, statements, reports, minutes, recordings, transcripts
2 | and summaries of meetings, voice recordings, pictures, photographs, drawings,
3 | computer cards, tapes, discs, printouts and records of all types, studies, instruction
4 | manuals, policy manuals and statements, books, pamphlets, invoices, canceled
5 | checks and every other device or medium by which or through which information of
6 | any type is transmitted, recorded or preserved. Without any limitation on the
7 | foregoing, the term "DOCUMENT" shall include all copies that differ in any respect
8 | from the original or other versions of the DOCUMENT, including, but not limited
9 | to, all drafts and all copies of such drafts or originals containing initials, comments,
10 | notations, insertions, corrections, marginal notes, amendments or any other variation
11 | of any kind.

12 |      15.   The singular form of a noun or pronoun includes within its
13 | meaning the plural form of the noun or pronoun so used, and vice versa; the use of
14 | the masculine form of a pronoun also includes within its meaning the feminine form
15 | of the pronoun so used, and vice versa; the use of any tense of any verb includes
16 | also within its meaning all other tenses of the verb so used, whenever such
17 | construction results in a broader request for information; and "and" includes "or"
18 | and vice versa, whenever such construction results in a broader disclosure of
19 | documents or information.

20
21
22
23
24
25
26
27
28

07209/2138116.1

MATTEL'S FIFTH SET OF REQUESTS FOR ADMISSION PROPOUNDED TO MGA

EXHIBIT _____ 35
PAGE _____ 516

EX 10234-0005

1  **Requests for Admission**

2

3  REQUEST FOR ADMISSION NO. 1:

4  Admit that YOU have copied or prepared derivative works from at least

5  one of THE BRATZ PITCH MATERIALS.

6

7  REQUEST FOR ADMISSION NO. 2:

8  Admit that YOU have not copied or prepared derivative works from at

9  least one of THE BRATZ PITCH MATERIALS.

10

11  REQUEST FOR ADMISSION NO. 3:

12  Admit that YOU have copied or prepared derivative works from more

13  than one of THE BRATZ PITCH MATERIALS.

14

15  REQUEST FOR ADMISSION NO. 4:

16  Admit that YOU have not copied or prepared derivative works from

17  more than one of THE BRATZ PITCH MATERIALS.

18

19  REQUEST FOR ADMISSION NO. 5:

20  Admit that YOU have copied or prepared derivative works from all of

21  THE BRATZ PITCH MATERIALS.

22

23  REQUEST FOR ADMISSION NO. 6:

24  Admit that YOU have not copied or prepared derivative works from all

25  of THE BRATZ PITCH MATERIALS.

26

27

28

07209/2138116.1

-5-

EXHIBIT ____ 35

PAGE ____ 517

EX 10234-0006

1  REQUEST FOR ADMISSION NO. 7:

2       Admit that at least one of THE BRATZ PITCH MATERIALS is an

3  original work of authorship within the meaning of 17 U.S.C. § 102.

4

5  REQUEST FOR ADMISSION NO. 8:

6       Admit that none of THE BRATZ PITCH MATERIALS is an original

7  work of authorship within the meaning of 17 U.S.C. § 102.

8

9  REQUEST FOR ADMISSION NO. 9:

10      Admit that more than one of THE BRATZ PITCH MATERIALS is an

11  original work of authorship within the meaning of 17 U.S.C. § 102.

12

13  REQUEST FOR ADMISSION NO. 10:

14      Admit that each of THE BRATZ PITCH MATERIALS is an original

15  work of authorship within the meaning of 17 U.S.C. § 102.

16

17  REQUEST FOR ADMISSION NO. 11:

18      Admit that YOU CONTEND YOU believed the BRYANT/MGA

19  AGREEMENT was lawful when YOU entered into the agreement.

20

21  REQUEST FOR ADMISSION NO. 12:

22      Admit that YOU do not CONTEND YOU believed the

23  BRYANT/MGA AGREEMENT was lawful when YOU entered into the agreement.

24

25  REQUEST FOR ADMISSION NO. 13:

26      Admit that YOU believed the BRYANT/MGA AGREEMENT may not

27  be lawful when YOU entered into the agreement.

28

EXHIBIT _____ 35

PAGE _____ 518

EX 10234-0007

1  REQUEST FOR ADMISSION NO. 14:

2       Admit that YOU CONTEND YOU believed at the time YOU entered

3  into the BRYANT/MGA AGREEMENT that it would be lawful for YOU to market

4  BRATZ.

5

6  REQUEST FOR ADMISSION NO. 15:

7       Admit that YOU do not CONTEND YOU believed at the time YOU

8  entered into the BRYANT/MGA AGREEMENT that it would be lawful for YOU to

9  market BRATZ.

10

11  REQUEST FOR ADMISSION NO. 16:

12       Admit that YOU believed at the time YOU entered into the

13  BRYANT/MGA AGREEMENT that it may not be lawful for YOU to market

14  BRATZ.

15

16  REQUEST FOR ADMISSION NO. 17:

17       Admit that YOU CONTEND YOU believed at the time YOU entered

18  into the BRYANT/MGA AGREEMENT that it would be lawful for YOU to copy

19  THE BRATZ PITCH MATERIALS.

20

21  REQUEST FOR ADMISSION NO. 18:

22       Admit that YOU do not CONTEND YOU believed at the time YOU

23  entered into the BRYANT/MGA AGREEMENT that it would be lawful for YOU to

24  copy THE BRATZ PITCH MATERIALS.

25

26

27

28

-7-

EXHIBIT ___35___

PAGE ___519___

EX 10234-0008

1  REQUEST FOR ADMISSION NO. 19:

2        Admit that YOU believed at the time YOU entered into the

3  BRYANT/MGA AGREEMENT that it may not be lawful for YOU to copy THE

4  BRATZ PITCH MATERIALS.

5

6  REQUEST FOR ADMISSION NO. 20:

7        Admit that YOU CONTEND YOU believed at the time YOU entered

8  into the BRYANT/MGA AGREEMENT that it would be lawful for YOU to

9  produce BRATZ.

10

11  REQUEST FOR ADMISSION NO. 21:

12        Admit that YOU do not CONTEND YOU believed at the time YOU

13  entered into the BRYANT/MGA AGREEMENT that it would be lawful for YOU to

14  produce BRATZ.

15

16  REQUEST FOR ADMISSION NO. 22:

17        Admit that YOU believed at the time YOU entered into the .

18  BRYANT/MGA AGREEMENT that it may not be lawful for YOU to produce

19  BRATZ.

20

21  REQUEST FOR ADMISSION NO. 23:

22        Admit that YOU CONTEND YOU believed at the time YOU entered

23  into the BRYANT/MGA AGREEMENT that it would be lawful for YOU to prepare

24  derivative works from THE BRATZ PITCH MATERIALS.

25

26

27

28

07209/2138116.1

-8-

EXHIBIT ___35___

PAGE ___520___

EX 10234-0009

1  REQUEST FOR ADMISSION NO. 24:

2        Admit that YOU do not CONTEND YOU believed at the time YOU

3  entered into the BRYANT/MGA AGREEMENT that it would be lawful for YOU to

4  prepare derivative works from THE BRATZ PITCH MATERIALS.

5

6  REQUEST FOR ADMISSION NO. 25:

7        Admit that YOU believed at the time YOU entered into the

8  BRYANT/MGA AGREEMENT that it may not be lawful for YOU to prepare

9  derivative works from THE BRATZ PITCH MATERIALS.

10

11  REQUEST FOR ADMISSION NO. 26:

12        Admit that YOU CONTEND YOU believed at the time YOU entered

13  into the BRYANT/MGA AGREEMENT that it would be lawful for YOU to acquire

14  THE BRATZ PITCH MATERIALS from BRYANT.

15

16  REQUEST FOR ADMISSION NO. 27:

17        Admit that YOU do not CONTEND YOU believed at the time YOU

18  entered into the BRYANT/MGA AGREEMENT that it would be lawful for YOU to

19  acquire THE BRATZ PITCH MATERIALS from BRYANT.

20

21  REQUEST FOR ADMISSION NO. 28:

22        Admit that YOU believed at the time YOU entered into the

23  BRYANT/MGA AGREEMENT that it may not be lawful for YOU to acquire THE

24  BRATZ PITCH MATERIALS from BRYANT.

25

26

27

28

07209/2138116.1

-9-

MATTEL'S FIFTH SET OF REQUESTS FOR ADMISSION PROPOUNDED TO MGA

EXHIBIT _____ 35

PAGE _____ 521

EX 10234-0010

1 | REQUEST FOR ADMISSION NO. 29:

2 |      Admit that YOU CONTEND YOU believed at the time YOU entered

3 | into the BRYANT/MGA AGREEMENT that entering into the BRYANT/MGA

4 | AGREEMENT would not subject YOU to legal liability.

5 |

6 | REQUEST FOR ADMISSION NO. 30:

7 |      Admit that YOU believed at the time YOU entered into the

8 | BRYANT/MGA AGREEMENT that entering into the BRYANT/MGA

9 | AGREEMENT could subject YOU to legal liability.

10 |

11 | REQUEST FOR ADMISSION NO. 31:

12 |      Admit that YOU CONTEND that no one told YOU when or before

13 | YOU entered into the BRYANT/MGA AGREEMENT that entering into the

14 | BRYANT/MGA AGREEMENT could or might subject YOU to legal liability.

15 |

16 | REQUEST FOR ADMISSION NO. 32:

17 |      Admit that at least one person told YOU when or before YOU entered

18 | into the BRYANT/MGA AGREEMENT that entering into the BRYANT/MGA

19 | AGREEMENT could or might subject YOU to legal liability.

20 |

21 | REQUEST FOR ADMISSION NO. 33:

22 |      Admit that YOU CONTEND YOU believed at the time YOU entered

23 | into the BRYANT/MGA AGREEMENT that BRYANT did not CREATE OR

24 | IMPROVE any of THE BRATZ PITCH MATERIALS while employed by

25 | MATTEL.

26 |

27 |

28 |

-10-

MATTEL'S FIFTH SET OF REQUESTS FOR ADMISSION PROPOUNDED TO MGA

EXHIBIT _____ 35

PAGE _____ 522

EX 10234-0011

1  REQUEST FOR ADMISSION NO. 34:

2         Admit that YOU do not CONTEND YOU believed at the time YOU

3  entered into the BRYANT/MGA AGREEMENT that BRYANT did not CREATE

4  OR IMPROVE any of THE BRATZ PITCH MATERIALS while employed by

5  MATTEL.

6

7  REQUEST FOR ADMISSION NO. 35:

8         Admit that BRYANT CREATED OR IMPROVED at least one of THE

9  BRATZ PITCH MATERIALS while employed by MATTEL.

10

11 REQUEST FOR ADMISSION NO. 36:

12        Admit that BRYANT CREATED OR IMPROVED more than one of

13 THE BRATZ PITCH MATERIALS while employed by MATTEL.

14

15 REQUEST FOR ADMISSION NO. 37:

16        Admit that BRYANT CREATED OR IMPROVED all of THE BRATZ

17 PITCH MATERIALS while employed by MATTEL.

18

19 REQUEST FOR ADMISSION NO. 38:

20        Admit that YOU CONTEND that at the time YOU entered into the

21 BRYANT/MGA AGREEMENT, YOU had no reason to believe that BRYANT

22 CREATED OR IMPROVED any of THE BRATZ PITCH MATERIALS while

23 employed by MATTEL.

24

25 REQUEST FOR ADMISSION NO. 39:

26        Admit that YOU do not CONTEND that at the time YOU entered into

27 the BRYANT/MGA AGREEMENT, YOU had no reason to believe that BRYANT

28

1  CREATED OR IMPROVED any of THE BRATZ PITCH MATERIALS while
2  employed by MATTEL.

3

4  REQUEST FOR ADMISSION NO. 40:

5       Admit that at the time YOU entered into the BRYANT/MGA
6  AGREEMENT, YOU knew or had reason to believe that BRYANT CREATED OR
7  IMPROVED at least one of THE BRATZ PITCH MATERIALS while employed by
8  MATTEL.

9

10  REQUEST FOR ADMISSION NO. 41:

11       Admit that at the time YOU entered into the BRYANT/MGA
12  AGREEMENT, YOU knew or had reason to believe that BRYANT CREATED OR
13  IMPROVED more than one of THE BRATZ PITCH MATERIALS while employed
14  by MATTEL.

15

16  REQUEST FOR ADMISSION NO. 42:

17       Admit that at the time YOU entered into the BRYANT/MGA
18  AGREEMENT, YOU knew or had reason to believe that BRYANT CREATED OR
19  IMPROVED all of THE BRATZ PITCH MATERIALS while employed by
20  MATTEL.

21

22  REQUEST FOR ADMISSION NO. 43:

23       Admit that YOU deny YOU willfully infringed any copyrights in
24  BRATZ WORKS.

25

26  REQUEST FOR ADMISSION NO. 44:

27       Admit that YOU deny YOU willfully infringed any copyrights
28  MATTEL claims it owns in BRATZ WORKS.

07209/2138116.1

-12-

EXHIBIT ____35____

PAGE ____524____

EX 10234-0013

REQUEST FOR ADMISSION NO. 45:

Admit that YOU did not suspect MATTEL owned any of THE BRATZ PITCH MATERIALS when or before YOU executed the BRYANT/MGA AGREEMENT.

REQUEST FOR ADMISSION NO. 46:

Admit that YOU suspected MATTEL owned at least one of THE BRATZ PITCH MATERIALS when or before YOU entered into the BRYANT/MGA AGREEMENT.

REQUEST FOR ADMISSION NO. 47:

Admit that YOU suspected MATTEL owned more than one of THE BRATZ PITCH MATERIALS when or before YOU entered into the BRYANT/MGA AGREEMENT.

REQUEST FOR ADMISSION NO. 48:

Admit that YOU CONTEND that no one told YOU that any of THE BRATZ PITCH MATERIALS belonged to, or could or might belong to, MATTEL when or before YOU entered into the BRYANT/MGA AGREEMENT.

REQUEST FOR ADMISSION NO. 49:

Admit that YOU do not CONTEND that no one told YOU that any of THE BRATZ PITCH MATERIALS belonged to, or could or might belong to, MATTEL when or before YOU entered into the BRYANT/MGA AGREEMENT.

-13-
MATTEL'S FIFTH SET OF REQUESTS FOR ADMISSION PROPOUNDED TO MGA

EXHIBIT ___35___

PAGE ___525___

EX 10234-0014

1  REQUEST FOR ADMISSION NO. 50:

2         Admit that at least one person told YOU that at least one of THE

3  BRATZ PITCH MATERIALS belonged to, or could or might belong to, MATTEL

4  when or before YOU entered into the BRYANT/MGA AGREEMENT.

5

6  REQUEST FOR ADMISSION NO. 51:

7         Admit that YOU CONTEND that no one told YOU that BRYANT

8  CREATED OR IMPROVED any BRATZ WORK while employed by MATTEL

9  when or before YOU entered into the BRYANT/MGA AGREEMENT.

10

11  REQUEST FOR ADMISSION NO. 52:

12         Admit that YOU do not CONTEND that no one told YOU that

13  BRYANT CREATED OR IMPROVED any BRATZ WORK while employed by

14  MATTEL when or before YOU entered into the BRYANT/MGA AGREEMENT.

15

16  REQUEST FOR ADMISSION NO. 53:

17         Admit that at least one person told YOU that BRYANT CREATED

18  OR IMPROVED at least one BRATZ WORK while employed by MATTEL when

19  or before YOU entered into the BRYANT/MGA AGREEMENT.

20

21  REQUEST FOR ADMISSION NO. 54:

22         Admit that YOU CONTEND that, assuming BRYANT transferred

23  rights in any or all of THE BRATZ PITCH MATERIALS to MATTEL, YOU are

24  entitled to priority over MATTEL as to such materials or YOUR rights are superior

25  to those of MATTEL as to such materials under 17 U.S.C. § 205(d) or otherwise.

26

27

28

07209/2138116.1

-14-

EXHIBIT ____35____

PAGE ____526____

EX 10234-0015

REQUEST FOR ADMISSION NO. 55:

Admit that YOU do not CONTEND that, assuming BRYANT transferred rights in any or all of THE BRATZ PITCH MATERIALS to MATTEL, YOU are entitled to priority over MATTEL as to such materials or YOUR rights are superior to those of MATTEL as to such materials under 17 U.S.C. § 205(d) or otherwise.

REQUEST FOR ADMISSION NO. 56

Admit that, assuming BRYANT transferred rights in any or all of THE BRATZ PITCH MATERIALS to MATTEL, YOU are not entitled to priority over MATTEL as to such materials and YOUR rights are not superior to those of MATTEL as to such materials under 17 U.S.C. § 205(d) or otherwise.

REQUEST FOR ADMISSION NO. 57:

Admit that YOU CONTEND that YOU are a transferee in good faith under 17 U.S.C. § 205(d) with respect to at least one of THE BRATZ PITCH MATERIALS.

REQUEST FOR ADMISSION NO. 58:

Admit that YOU do not CONTEND that YOU are a transferee in good faith under 17 U.S.C. § 205(d) with respect to at least one of THE BRATZ PITCH MATERIALS.

REQUEST FOR ADMISSION NO. 59:

Admit that YOU CONTEND that YOU may be a transferee in good faith under 17 U.S.C. § 205(d) with respect to at least one of THE BRATZ PITCH MATERIALS.

-15-
MATTEL'S FIFTH SET OF REQUESTS FOR ADMISSION PROPOUNDED TO MGA

EXHIBIT ___ 35

PAGE ___ 527

EX 10234-0016

1  REQUEST FOR ADMISSION NO. 60:

2        Admit that YOU do not CONTEND that YOU may be a transferee in

3  good faith under 17 U.S.C. § 205(d) with respect to at least one of THE BRATZ

4  PITCH MATERIALS.

5

6  REQUEST FOR ADMISSION NO. 61:

7        Admit that YOU CONTEND that YOU are a transferee in good faith

8  under 17 U.S.C. § 205(d) with respect to all of THE BRATZ PITCH MATERIALS.

9

10  REQUEST FOR ADMISSION NO. 62:

11        Admit that YOU do not CONTEND that YOU are a transferee in good

12  faith under 17 U.S.C. § 205(d) with respect to all of THE BRATZ PITCH

13  MATERIALS.

14

15  REQUEST FOR ADMISSION NO. 63:

16        Admit that YOU CONTEND that YOU may be a transferee in good

17  faith under 17 U.S.C. § 205(d) with respect to all of THE BRATZ PITCH

18  MATERIALS.

19

20  REQUEST FOR ADMISSION NO. 64:

21        Admit that YOU do not CONTEND that YOU may be a transferee in

22  good faith under 17 U.S.C. § 205(d) with respect to all of THE BRATZ PITCH

23  MATERIALS.

24

25  REQUEST FOR ADMISSION NO. 65:

26        Admit that YOU are not a transferee in good faith under 17 U.S.C.

27  § 205(d) with respect to any of THE BRATZ PITCH MATERIALS.

28

-16-
MATTEL'S FIFTH SET OF REQUESTS FOR ADMISSION PROPOUNDED TO MGA

EXHIBIT ___35___

PAGE ___528___

EX 10234-0017

REQUEST FOR ADMISSION NO. 66:

Admit that YOU CONTEND that YOU maintained a good faith belief that MATTEL did not have any rights to THE BRATZ PITCH MATERIALS when YOU entered into the BRYANT/MGA AGREEMENT.

REQUEST FOR ADMISSION NO. 67:

Admit that YOU do not CONTEND that YOU maintained a good faith belief that MATTEL did not have any rights to THE BRATZ PITCH MATERIALS when YOU entered into the BRYANT/MGA AGREEMENT.

REQUEST FOR ADMISSION NO. 68:

Admit that YOU did not maintain a good faith belief that MATTEL did not have any rights to any of THE BRATZ PITCH MATERIALS when YOU entered into the BRYANT/MGA AGREEMENT.

REQUEST FOR ADMISSION NO. 69:

Admit that BRYANT was the sole author of each of THE BRATZ PITCH MATERIALS.

REQUEST FOR ADMISSION NO. 70:

Admit that BRYANT was not the sole author of each of THE BRATZ PITCH MATERIALS.

REQUEST FOR ADMISSION NO. 71:

Admit that BRYANT was the sole author of each and every BRATZ WORK created on or before October 3, 2000.

-17-
MATTEL'S FIFTH SET OF REQUESTS FOR ADMISSION PROPOUNDED TO MGA

EXHIBIT _____ 35

PAGE _____ 529

EX 10234-0018

1  REQUEST FOR ADMISSION NO. 72:

2          Admit that BRYANT was not the sole author of each and every

3  BRATZ WORK created on or before October 3, 2000.

4

5  REQUEST FOR ADMISSION NO. 73:

6          Admit that BRYANT was the sole author of at least one BRATZ

7  WORK created on or before October 3, 2000.

8

9  REQUEST FOR ADMISSION NO. 74:

10          Admit that BRYANT was not the sole author of at least one BRATZ

11  WORK created on or before October 3, 2000.

12

13  REQUEST FOR ADMISSION NO. 75:

14          Admit that the DOCUMENT attached hereto as Exhibit 1 is an authentic

15  and genuine copy of a sworn affidavit signed by Isaac Larian on or about July 5, 2002.

16

17  REQUEST FOR ADMISSION NO. 76:

18          Admit that, in the DOCUMENT attached hereto as Exhibit 1, Isaac Larian

19  swore that the BRATZ dolls were first exhibited in the United States in November

20  2000.

21

22  REQUEST FOR ADMISSION NO. 77:

23          Admit that the BRATZ dolls were first exhibited in the United States in

24  November 2000.

25

26  REQUEST FOR ADMISSION NO. 78:

27          Admit that the BRATZ dolls were not first exhibited in the United States

28  in November 2000.

EXHIBIT _____ 35
PAGE _____ 530

EX 10234-0019

1  REQUEST FOR ADMISSION NO. 79:

2         Admit that the DOCUMENT attached hereto as Exhibit 2 is an authentic

3  and genuine copy of a Statement of Claim YOU filed on or about October 16, 2003.

4

5  REQUEST FOR ADMISSION NO. 80:

6         Admit that, in the DOCUMENT attached hereto as Exhibit 2, YOU

7  claimed that BRYANT was commissioned by YOU to make 18 BRATZ design

8  drawings between 1998 and 2000.

9

10  REQUEST FOR ADMISSION NO. 81:

11         Admit that BRYANT was commissioned by YOU to make 18 BRATZ

12  design drawings between 1998 and 2000.

13

14  REQUEST FOR ADMISSION NO. 82:

15         Admit that BRYANT was not commissioned by YOU to make 18 BRATZ

16  design drawings between 1998 and 2000.

17

18  REQUEST FOR ADMISSION NO. 83:

19         Admit that the set of 18 BRATZ design drawings referenced in Paragraph

20  3(a) in the DOCUMENT attached hereto as Exhibit 2 includes at least one of the

21  BRATZ PITCH MATERIALS.

22

23  REQUEST FOR ADMISSION NO. 84:

24         Admit that the set of 18 BRATZ design drawings referenced in Paragraph

25  3(a) in the DOCUMENT attached hereto as Exhibit 2 includes more than one of the

26  BRATZ PITCH MATERIALS.

27

28

EXHIBIT ____35____

PAGE ____531____                    EX 10234-0020

REQUEST FOR ADMISSION NO. 85:

Admit that the set of 18 BRATZ design drawings referenced in Paragraph 3(a) in the DOCUMENT attached hereto as Exhibit 2 does not include any of the BRATZ PITCH MATERIALS.

REQUEST FOR ADMISSION NO. 86:

Admit that, in the DOCUMENT attached hereto as Exhibit 2, YOU claimed in Paragraph 3(g) that at all material times there was an understanding and agreement between YOU and BRYANT that the copyrights subsisting in the 18 BRATZ design drawings referenced in Paragraph 3(a) should vest in MGA.

REQUEST FOR ADMISSION NO. 87:

Admit that, prior to September 18, 2000, there was an understanding and agreement between YOU and BRYANT that the copyrights subsisting in the 18 BRATZ design drawings referenced in Paragraph 3(a) of the DOCUMENT attached hereto as Exhibit 2 should vest in MGA.

REQUEST FOR ADMISSION NO. 88:

Admit that, prior to September 18, 2000, there was not an understanding and agreement between YOU and BRYANT that the copyrights subsisting in the 18 BRATZ design drawings referenced in Paragraph 3(a) of the DOCUMENT attached hereto as Exhibit 2 should vest in MGA.

REQUEST FOR ADMISSION NO. 89:

Admit that, prior to September 18, 2000, there was an understanding or agreement between YOU and BRYANT that the copyrights subsisting in at least one BRATZ WORK should vest in MGA.

07209/2138116.1

-20-

1  REQUEST FOR ADMISSION NO. 90:

2          Admit that, prior to September 18, 2000, there was neither an

3  understanding nor an agreement between YOU and BRYANT that the copyrights

4  subsisting in any BRATZ WORK should vest in MGA.

5

6  REQUEST FOR ADMISSION NO. 91:

7          Admit that, in the DOCUMENT attached hereto as Exhibit 2 YOU

8  claimed in Paragraph 3(g) that the assignment between Bryant and MGA in the

9  BRYANT/MGA AGREEMENT was confirmatory.

10

11  REQUEST FOR ADMISSION NO. 92:

12          Admit that the assignment between Bryant and MGA in the

13  BRYANT/MGA AGREEMENT was confirmatory.

14

15  REQUEST FOR ADMISSION NO. 93:

16          Admit that the assignment between Bryant and MGA in the

17  BRYANT/MGA AGREEMENT was not confirmatory.

18

19  REQUEST FOR ADMISSION NO. 94:

20          Admit that, while BRYANT was employed by MATTEL in 1999 and

21  2000, he held a position of confidence and trust at MATTEL.

22

23  REQUEST FOR ADMISSION NO. 95:

24          Admit that, while BRYANT was employed by MATTEL in 1999 and

25  2000, he did not hold a position of confidence and trust at MATTEL.

26

27

28

07209/2138116.1

EXHIBIT ____35____

PAGE ____533____

EX 10234-0022

1  REQUEST FOR ADMISSION NO. 96:

2           Admit that, while BRYANT was employed by MATTEL in 1999 and

3  2000, he was MATTEL's fiduciary.

4

5  REQUEST FOR ADMISSION NO. 97:

6           Admit that, while BRYANT was employed by MATTEL in 1999 and

7  2000, he was not MATTEL's fiduciary.

8

9  REQUEST FOR ADMISSION NO. 98:

10          Admit that, when YOU met with BRYANT on September 1, 2000, YOU

11  knew BRYANT was employed by MATTEL at the time.

12

13  REQUEST FOR ADMISSION NO. 99:

14          Admit that, when YOU met with BRYANT on September 1, 2000, YOU

15  did not know BRYANT was employed by MATTEL at the time.

16

17  REQUEST FOR ADMISSION NO. 100:

18          Admit that, when YOU entered into the BRYANT/MGA AGREEMENT,

19  YOU knew BRYANT was employed by MATTEL at the time.

20

21  REQUEST FOR ADMISSION NO. 101:

22          Admit that, when YOU entered into the BRYANT/MGA AGREEMENT,

23  YOU did not know BRYANT was employed by MATTEL at the time.

24

25

26

27

28

07209/2138116.1

MATTEL'S FIFTH SET OF REQUESTS FOR ADMISSION PROPOUNDED TO MGA

EXHIBIT _____ 35

PAGE _____ 534

EX 10234-0023

1 | DATED: June 8, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

2

3 | By _B. Dylan Proctor_ /

4 | B. Dylan Proctor
Attorneys for Mattel, Inc.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2138116.1

-23-
MATTEL'S FIFTH SET OF REQUESTS FOR ADMISSION PROPOUNDED TO MGA

EXHIBIT _____ 35

PAGE _____ 535

EX 10234-0024

**Exhibit 1**

EXHIBIT ___35___

PAGE ___536___

EX 10234-0025



HCA 2152/2002

IN THE HIGH COURT OF THE

HONG KONG SPECIAL ADMINISTRATIVE REGION

COURT OF FIRST INSTANCE

CIVIL ACTION NO. 2152 OF 2002

BETWEEN

ABC INTERNATIONAL TRADERS, INC.                          Plaintiff
doing business as MGA ENTERTAINMENT

and

(1) TOYS & TRENDS (HONG KONG) LIMITED

(2) CITYWORLD LIMITED

(3) JURG WILLI KESSELRING                                Defendants

---

AFFIDAVIT OF ISAAC LARIAN

---

I, Isaac Larian of 16730 Schoenborn Street, North Hills, California, United States of American do make oath and say as follows: -

1.    I am the CEO of MGA and duly authorised by MGA to make this affidavit on its behalf. Unless otherwise stated, the facts and matters contained herein are either within my own personal knowledge or gleaned from books and records of MGA to which I have free access. Insofar as facts and matters that do not fall within the aforesaid category, they are related to me by the respective sources stated hereinafter and are true to the best of my information and belief. For the purpose of this affidavit, I shall adopt the abbreviations used in the First Affirmation of Lee Shiu Cheung filed on behalf of MGA on the 18th June 2002 (hereinafter referred to as "the 1st Lee Affirmation").

M 0001558

EXHIBIT _____ 35

PAGE _____ 537

EX 10234-0026

2.

3.

4.

5.

2

M 0001559

EXHIBIT _____ 35

PAGE _____ 538

EX 10234-0027

6.

7.

8.

3

M 0001560

EXHIBIT ___35___

PAGE ___539___

EX 10234-0028



9.

10.

11.

Paragraphs 13 to 19

12.  I fail to understand the point made by the Defendants in these paragraphs and consequently the relevance of these matters. Insofar as the concept of the Bratz dolls are concerned, the 1st Lee Affirmation dealt with these matters to provide the Court with the background and history of the Bratz dolls and mainly the marketing strategy or concept. Furthermore, I am advised by my legal advisors that copyright law does not protect concepts or ideas *per se* but the expression of an idea in a material form. And in this case, it is the 17 design drawings exhibited as "LSC-3". The complaint made by MGA is that

4

M 0001561

EXHIBIT _____35_____

PAGE _____540_____

EX 10234-0029



the 3 dimensional Funky Tweenz dolls have infringed the 2 dimensional drawings which are artistic works in which copyright subsists. The aforesaid, I think, would be sufficient to deal with these paragraphs but for the sake of completeness I shall deal with the dolls mentioned therein.

13.  The Bratz dolls were first exhibited in the USA in November 2000. They were further exhibited in Hong Kong in January 2001. The Bratz dolls were first publicly made available for sale at the retail level in August 2001 in the USA.

14.  I have never heard of Simba Toys GmbH & Co. and have never come across these Girlz dolls until reading the Kesselring Affidavit. Just by looking at the photographs and not having seen the samples I cannot see how these dolls can infringe MGA's copyright in the artistic works for they do not look the same. Furthermore, I do not accept that these dolls were marketed all over Europe before the Nurnberg Toy Fair without any evidence but a bare allegation coming from Mr. Kesselring.

15.  The photographs of the We Teen dolls exhibited as "JWK-6" do not resemble the Bratz dolls by just looking at the pictures.

16.  To say the Fad dolls have similar dimensions and proportions to the Bratz dolls is just sheer nonsense. One can see very clearly from the photographs that they do not. These dolls have plastic hair and square faces  Mr. Kesselring has not asserted that these dolls are published prior to the Bratz dolls.

17.  Looking at the photographs of the Sassy Secrets dolls one can see very clearly that they do not resemble the Bratz dolls at all. These are 6 inch electronic dolls which can talk. Further, they do not have change of fabric fashion and shoes that Bratz are popular for and Funky Tweenz have copied. Again Mr. Kesselring has not asserted that these dolls are published prior to the Bratz dolls.

5

M 0001562

EXHIBIT _____35_____

PAGE _____541_____

EX 10234-0030



18. In light of the foregoing, the existence of these dolls in the market can in no way impeach the originality of MGA's artistic works. Mr. Kesselring is again speculating without any evidence. Furthermore, I find it quite odd for Mr. Kesselring to say that both Funky Tweenz dolls and the Bratz dolls originate from a common source when he attempts to explain how the Defendants came up with the Funky Tweenz dolls.

19.

20.

21.

6

M 0001563

EXHIBIT ___35___

PAGE ___542___

EX 10234-0031



22. I fail to see any point in paragraph 19 of the Kesselring Affirmation. I am advised by my legal advisors that copyright law is territorial and each jurisdiction has its own set laws regulating copyright. MGA's cause of action is based on the Copyright Ordinance of Hong Kong and not the Federal Copyright Act of the USA. The USA registration certificates were exhibited to show that the Bratz dolls enjoy copyright protection in the USA.

23.

24.

25.

7

M 0001564

EXHIBIT ___35___

PAGE ___543___

EX 10234-0032

26.   Dressing dolls had always been a huge market for the toy industry.  The Barbie doll has been around for over 43 years and has a retail turnover of US$1.5 billion a year.  According to the leading USA toy market research company, TRSTS, Barbie dolls command 88.5% of the doll market last year.  But the latest research results show this share has shrunken to 84.6% so far this year due to the appearance of the Bratz dolls which now command 10.1% of the market share which is the 2nd largest market share after Mattel and Barbie. Prior to the appearance of Bratz dolls, no doll could take away the market share enjoyed by Barbie.  The Barbie doll has been so successful because it has been able to reinvent itself time and time again like 3 or 4 years ago, the Barbie doll range introduced a new range of dolls called the Generation Girls which is a dressing doll with a trendy look.

27.

28.

29.

8

M 0001565

EXHIBIT   35
PAGE   544

EX 10234-0033



30.  Mr. Kesselring said he took inspiration from a lot of other dolls on the market but oddly, he never referred to the Bratz dolls. The Bratz dolls won the People's Choice Awards of the Toy Industry which is similar to the Oscars in the film industry, as well as Doctor Toy best top 10 Toy Award and Family Fun Best Toy Award. Bratz were further cited to be the first doll ever to beat Barbie in the fashion doll category. I find it quite inconceivable that he never referred to the Bratz dolls despite its huge success and wide media coverage evidenced by some of the sample media cuttings exhibited as "LSC-10" to the 1st Lee Affirmation. Even the article taken from The Toy Book which he exhibited as "JWK-10c" has a whole column devoted to Bratz dolls. The said article says and I quote, "Trying to capture some of MGA's success, a host of manufacturers are debuting personality/fashion dolls."

31.  The reason why design drawings of the dolls head had to be made was because they had to get the colour scheme of features of the head so that after moulding they can be dyed properly according to the scheme which serves as a benchmark. This is very apparent from paragraph 21 of the Affirmation of Wilson Lam.

32.  Having taken a look at the pictures of the Barbie dolls exhibited as "JWK-12" they bear no resemblance to the Funky Tweenz but Funky Tweenz bear a striking resemblance to the Bratz dolls.

Paragraphs 30-33

33.  The safety certificates exhibited as "JWK-13" only pertain to Europe and Canada and not the USA which has more stricter requirements. MGA's fears stated in paragraph 36 of the 1st Lee Affirmation are valid.

34.  I fail to see how that the life span of fashion dolls will only last 2 years as alleged. The Barbie doll has been around for over 43 years. The Defendants have not shown by way of evidence how an injunction would affect their reputation.

9

M 0001566

EXHIBIT _____ 35

PAGE _____ 545

EX 10234-0034

35.     MGA is not using this action to stifle competition as alleged.  MGA welcomes lawful competition but not copying.  The other examples of dolls mentioned in the Kesselring Affidavit do not resemble the Bratz dolls at all.  If MGA was to stifle lawful competition it would have taken legal action against those manufacturers.  One must bear in mind that no one has stated that other dolls on the market resemble Bratz dolls save and except Funky Tweenz dolls. There is abundant evidence in this regard from independent third parties.

36.

37.

38.

10

M 0001567

EXHIBIT __35__

PAGE ____546____

EX 10234-0035

39.

40.

41.

42.

Sworn at State of California )
County of Los Angeles )
)
)
Subscribed and sworn to before )
me on )
this 2 day of July      2002 )

Before me, Eve Marie Johnson

_____ Notary Public

EVE MARIE JOHNSON
COMM. # 1312814
NOTARY PUBLIC ➤ CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. JULY 12, 2005

This affidavit is filed on behalf of the Plaintiff.

11

M 0001568

EXHIBIT ___35___

PAGE ___547___

EX 10234-0036



HCA 2152/2002

IN THE HIGH COURT OF THE

HONG KONG SPECIAL ADMINISTRATIVE REGION

COURT OF FIRST INSTANCE

CIVIL ACTION NO. 2152 OF 2002

BETWEEN

ABC INTERNATIONAL TRADERS, INC.
doing business as MGA ENTERTAINMENT          Plaintiff

and

(1) TOYS & TRENDS (HONG KONG) LIMITED

(2) CITYWORLD LIMITED

(3) JURG WILLI KESSELRING          Defendants

AFFIDAVIT OF ISAAC LARIAN

Filed this 5ᵗʰ day of July, 2002.

William WL Fan & Co.
507 Hang Seng Building
77 Des Voeux Road
Central
Hong Kong
Tel: 2110 2128

12

M 0001569

EXHIBIT ___35___

PAGE ___548___

EX 10234-0037

**Exhibit 2**

EXHIBIT ___35___

PAGE ___549___

EX 10234-0038





(Folio 1)

## HCA 3856/2003

### IN THE HIGH COURT OF THE
### HONG KONG SPECIAL ADMINISTRATIVE REGION
### COURT OF FIRST INSTANCE
### CIVIL ACTION NO. *3856* OF 2003

HIGH COURT ACC. OFFICE

Served by    FEESPAID

| FC2 | 1045.00 |
|-----|---------|
| CHEQUE | 1045.00 |
| OCT16'03#001A0101 16:01R | FEESPAID |

*****************************

BETWEEN:-

**MGA ENTERTAINMENT INC.**                     **Plaintiff**

and

**UNI-FORTUNE TOYS INDUSTRIAL LIMITED**        1st   **Defendant**
**FU WEI TOYS COMPANY LIMITED**               2nd   **Defendant**

*******************************

To the 1st Defendant **UNI-FORTUNE TOYS INDUSTRIAL LIMITED** whose registered office is situate at Flat A-B, 21st Floor, Cheung Hing Shing Centre, 23 Sha Tsui Road, Tsuen Wan, New Territories, Hong Kong

And to the 2nd Defendant **FU WEI TOYS COMPANY LIMITED** whose registered office situate at Flat A-B, 21st Floor, Cheung Hing Shing Centre, 23 Sha Tsui Road, Tsuen Wan, New Territories, Hong Kong

**THIS WRIT OF SUMMONS** has been issued against you by the above-named Plaintiff in respect of the claim set out on the back.

Within 14 days after the service of this Writ on you, counting the day of service, you must either satisfy the claim or return to the Registry of High court the accompanying **ACKNOWLEDGEMENT OF SERVICE** stating therein whether you intend to contest these proceedings.

If you fail to satisfy the claim or to return the Acknowledgement within the time stated, or if you return the Acknowledgement without stating therein an intention to contest the proceedings, the Plaintiff(s) may proceed with the action and judgment may be entered against you forthwith without further notice.

Issued from the Registry of the High Court this 16th day of October 2003.

*Registrar*

Note:-     This Writ may not be served later than 12 calendar months beginning with that date unless renewed by order of the Court.

**IMPORTANT**

Directions for Acknowledgement of Service are given with the accompanying form.

S.C.549 (s)

C:\MAG GIE\IPCopyright\WRT - 1978-MGA\WRL.doc

M0012593

EXHIBIT _____35_____

PAGE _____550_____

EX 10234-0039

## STATEMENT OF CLAIM

**(Please see attached)**

~~*(Where the Plaintiff's claim is for a debt or liquidated demand only: If, within the
time for returning the Acknowledgment of Service, the Defendant pays the amount
claimed and $1,550.00 for costs and, if the Plaintiff obtains an order for substituted
service, the additional sum of $565.00, further proceedings will stayed. The money must
be paid to the Plaintiff or his Solicitors.)~~

**THIS WRIT** was issued by Messrs. William W. L. Fan & Co. of Room 507, 5th
Floor, Hang Seng Building, 77 Des Voeux Road Central, Hong Kong, Solicitors for the
Plaintiff MGA Entertainment Inc. whose principal place of business is situate at 16730
Schoenborn Street, North Hills, Ca 91343-6122, USA and c/o Room 1001, 10th Floor,
Empire Centre, 68 Mody Road, Tsimshatsui East, Kowloon, Hong Kong.

C:\MGGIE\IPPcopyright\W7-1076-MGAWrit.doc

M0012594

EXHIBIT _____35_____

PAGE _____651_____

EX 10234-0040

## STATEMENT OF CLAIM

1. The Plaintiff is and at all material times a corporation existing under the laws of the U.S.A. carrying on business in the design, manufacture, marketing and selling of toys, in particular, fashion dolls.

2. The 1st and 2nd Defendants were and at all material times companies incorporated and existing under the laws of Hong Kong carrying on the business in the manufacture and marketing of toys.  The shareholders, directors and registered office of 1st and 2nd Defendant are identical.

3. The Plaintiff is and at all material times, has been the owner of the copyright subsisting in original artistic works in respect of the Plaintiff's Bratz fashion dolls ("the said Artistic Works").

### Particulars of Original Artistic Works

(a) 18 design drawings of various Bratz fashion dolls made between the years 1998 and 2000.

(b) Wax models of the head, body and shoes of the Bratz fashion dolls made between the year 2000 and 2001.

C:\MAGG\EV\Fitcopyright\WT-1978-MGAWHR.DOC

M0012595

EXHIBIT _____35_____

PAGE _____552_____

EX 10234-0041

(c) Silicon rubber moulds and polyurethane samples made therefrom of the Bratz fashion dolls made between the years 2000 and 2001.

(d) 4 drawings of the facial decoration of the Bratz fashion dolls made between the years 2000 and 2001.

(e) 8 drawings 4 of which are pantone colour guides of the facial decorations of the Bratz fashion dolls made between the years of 2000 and 2001.

(f) 4 hand painted deco-masters on 4 rubber head sculpts made between the years 2000 and 2001.

### Particulars of Ownership and Subsistence

(g) Carter Bryant (hereinafter referred to as "Mr. Bryant") was commissioned by the Plaintiff to make the design drawings referred to in sub-paragraphs (a) and (e) hereof. At all material times, it was the understanding and agreement between the Plaintiff and Mr. Bryant that copyright subsisting in the artistic works should vest in the Plaintiff. Pursuant thereto, a confirmatory assignment was made between the Plaintiff and Mr. Bryant in September 2000.

C:\MACCS\EVP\copyright\WF-1878-MO A\WH.doc

EXHIBIT ___35___

PAGE ___553___

M0012596

(h) At all material times, Mr. Bryant is a resident of and domiciled in the U.S.A.

(i) Margaret Leahy (hereinunder referred to as "Ms. Leahy") was commissioned by the Plaintiff to make the artistic works referred to in subparagraph (b) hereof. At all material times, it was the understanding and agreement between the Plaintiff and Ms. Leahy that copyright subsisting in the artistic works should vest in the Plaintiff. Pursuant thereto, a confirmatory assignment was made between the Plaintiff and Ms. Leahy in June 2003.

(j) At all material times, Ms. Leahy is a resident of and domiciled in the USA.

(k) Jessie Ramirez (hereinunder referred to as "Ms. Ramirez") was commissioned by the Plaintiff to make the silicon rubber moulds and polyurethane samples referred in subparagraph (c) hereof. At all material times, it was the understanding and agreement between the Plaintiff and Ms. Ramirez that copyright subsisting in the artistic works should vest in the Plaintiff. Pursuant thereto, a confirmatory assignment was made between the Plaintiff and Ms. Ramirez on 16th June 2003.

(l) At all material times, Ms. Ramirez is a resident of and domiciled in the USA.

(m) Anna Rhee (hereinunder referred to as "Ms. Rhee") was commissioned by the Plaintiff to make the artistic works referred to in sub-paragraphs (d) and (f) hereof. At all material times, it was the understanding and agreement

M0012597

EXHIBIT ___35___

PAGE ___554___

EX 10234-0043

between the Plaintiff and Ms. Rhee that copyright subsisting in the artistic works should vest in the Plaintiff. Pursuant thereto, a confirmatory assignment was made between the Plaintiff and Ms. Rhee on 12th June 2003.

(n) At all material times, Ms. Rhee is a resident of and domiciled in the USA.

(o) The said Artistic Works as described in sub-paragraphs (a) to (f) above were first published in the USA in or about June 2001 when the Bratz fashion dolls were exhibited and offered for sale. Alternatively, the said Artistic Works are unpublished. The artistic works referred to in sub-paragraph (b) hereof and the silicon rubber moulds referred to in sub-paragraph (c) hereof were destroyed in the course of the Plaintiff's business.

4. Prior to the issue of the Writ herein, the 1st and 2nd Defendants have infringed the said Artistic Works by authorising the manufacture, the manufacture of and/or importing into and exporting from Hong Kong in its course of business, possessing for the purpose of trade or business, selling or offering or exposing for sale, for the purpose of trade or business exhibiting in public or distributing fashion dolls known as Glitter Girls which are reproductions of or a reproduction of a substantial part of the said Artistic Works without the license of the Plaintiff (hereinafter collectively

C:\MAGGIE\IP\copyright\F-1976-MGA\WE.doc

M0012598

EXHIBIT 35

PAGE 555

EX 10234-0044

referred as "the Infringing Dolls")

## Particulars

The Plaintiff will in particular rely on the following facts and matters:-

a) The exposure for sale of the Infringing Dolls to an investigator employed by the Plaintiff by the distribution of leaflets depicting the Infringing Dolls on 8th February 2003 and 14th February 2003.

b) The possession for the purpose of trade or business and exposure for sale of the Infringing Dolls by the 1st and/or the 2nd Defendants in a showroom at Room 802A, Empire Centre, Tsimshatsui East, Kowloon on the 14th February 2003 to an investigator employed by the Plaintiff.

c) The sale and/or distribution of 2 Infringing Dolls by the 1st Defendant at the 1st and 2nd Defendant's registered offices on the 11th March 2003 to an investigator employed by the Plaintiff.

d) The exposure for sale by the 2nd Defendant of the Infringing Dolls by the provision of a quotation dated 11th March 2003.

e) The exposure for sale of the Infringing Dolls by the 1st and 2nd Defendants

M0012599

EXHIBIT _____ 35 _____

PAGE _____ 556 _____

EX 10234-0045

by way of an advertisement in p.140 of Vol. 2 of 2003 issue of the Hong Kong Toys Magazine.

f) The exhibition in public of the Infringing Dolls by the 1st and/or 2nd Defendants at the Hong Kong Houseware Fair and Hong Kong Gifts & Premium Fair 2003 ("the Hong Kong Fair") in July 2003.

g) The manufacture, authorization of manufacture, sale and export on divers dates an unknown quantity of the Infringing Dolls to Europe and the United States by the 1st and 2nd Defendants.

h) The admission by the 1st and 2nd Defendants that the 2nd Defendant was the supplier of the Infringing Dolls to the 1st Defendant in a letter dated 21st August 2003 sent by the 1st and 2nd Defendants' solicitor to the Plaintiff's, solicitors.

The Plaintiff is, prior to proper discovery and/or interrogatories, unable to give full particulars of all the wrongful acts of copyright infringement of the 1st and 2nd Defendants but will seek to recover damages in respect of each and every such wrongful act.

5. The Plaintiff will in so far as is necessary rely on the fact that at all material times

C:\MMGG\EVP\copyright\W9 - 1878-MCA\WA.doc

M0012600

EXHIBIT _____ 35 _____

PAGE _____ 557 _____

EX 10234-0046

by way of an advertisement in p.140 of Vol. 2 of 2003 issue of the Hong Kong Toys Magazine.

f) The exhibition in public of the Infringing Dolls by the 1st and/or 2nd Defendants at the Hong Kong Houseware Fair and Hong Kong Gifts & Premium Fair 2003 ("the Hong Kong Fair") in July 2003.

g) The manufacture, authorization of manufacture, sale and export on divers dates an unknown quantity of the Infringing Dolls to Europe and the United States by the 1st and 2nd Defendants.

h) The admission by the 1st and 2nd Defendants that the 2nd Defendant was the supplier of the Infringing Dolls to the 1st Defendant in a letter dated 21st August 2003 sent by the 1st and 2nd Defendants' solicitor to the Plaintiff's solicitors.

The Plaintiff is, prior to proper discovery and/or interrogatories, unable to give full particulars of all the wrongful acts of copyright infringement of the 1st and 2nd Defendants but will seek to recover damages in respect of each and every such wrongful act.

5. The Plaintiff will in so far as is necessary rely on the fact that at all material times

C:\MAGGIE\Pleadyright\WF\1978-MCAWrk.doc

M0012601

EXHIBIT ___35___

PAGE ___558___

the 1st and 2nd Defendants knew or had reason to believe that the Infringing Dolls are infringing copies of the said Artistic Works within the meaning of the Copyright Ord., Cap. 528.

### Particulars of Knowledge

The Plaintiff will in particular rely upon the following facts and matters:-

(a)     The Plaintiff relies on the fact that the 1st and 2nd Defendants are in the same business as the Plaintiff, the Bratz fashion dolls being first exhibited and sold in the USA in June 2001.

(b)     The Bratz fashion dolls have won numerous awards including Toy of the Year Award, People's Choice of the Year Award, Doctor Toy Award and Family Fun Best Toy Award and numerous articles have been about the Bratz fashion dolls and their success.  The Bratz fashion dolls have achieved worldwide fame and publicity.

(c)     The Plaintiff relies on the objective similarity between the said Artistic Works and the Infringing Dolls.

(d)     On 14th February 2003, a Mr. Allen Ho on behalf of the 1st and 2nd Defendants informed an investigator employed by the Plaintiff that some modifications were made to the Infringing Dolls so that the Infringing Dolls would not resemble the Bratz fashion dolls too much.

(e)     In correspondence dated 7th August 2003 between the solicitors for the

C:\MAOGIE\P\copyright\7-1878-MCATAWS.doc

M0012602

EXHIBIT ___35___

PAGE ___559___

EX 10234-0048

the 1st and 2nd Defendants knew or had reason to believe that the Infringing Dolls are infringing copies of the said Artistic Works within the meaning of the Copyright Ord., Cap. 528.

### Particulars of Knowledge

The Plaintiff will in particular rely upon the following facts and matters:-

(a) The Plaintiff relies on the fact that the 1st and 2nd Defendants are in the same business as the Plaintiff, the Bratz fashion dolls being first exhibited and sold in the USA in June 2001.

(b) The Bratz fashion dolls have won numerous awards including Toy of the Year Award, People's Choice of the Year Award, Doctor Toy Award and Family Fun Best Toy Award and numerous articles have been about the Bratz fashion dolls and their success. The Bratz fashion dolls have achieved worldwide fame and publicity.

(c) The Plaintiff relies on the objective similarity between the said Artistic Works and the Infringing Dolls.

(d) On 14th February 2003, a Mr. Allen Ho on behalf of the 1st and 2nd Defendants informed an investigator employed by the Plaintiff that some modifications were made to the Infringing Dolls so that the Infringing Dolls would not resemble the Bratz fashion dolls too much.

(e) In correspondence dated 7th August 2003 between the solicitors for the

M0012603

EXHIBIT ___35___

PAGE ___560___

EX 10234-0049

1st and 2nd Defendants and the Plaintiff's solicitors, the 1st Defendant asserted that it ceased dealing with the Infringing Dolls upon learning the infringement of copyright, however on 21 August 2003, the 1st Defendant asserted that prior to the receipt of the cease and desist letter dated 30th July 2003, it had not promoted, offered and/or exposed for sale and/or sold the Infringing Dolls. On 10th September 2003, the 1st Defendant further asserted that it has not promoted, offered and/or exposed for sale and/or sold the Infringing Dolls. The Plaintiff refers to sub-paragraphs (a) to (e) of paragraph 4 herein. In light of the foregoing, the Plaintiff relies on the deliberate attempt by the 1st Defendant to conceal its infringing activities to show that the 1st Defendant had knowledge or had reason to believe that the Infringing Dolls were infringing copies of the said Artistic Works. The Plaintiff also relies on the fact that the 1st and 2nd Defendants have identical directors and thus any knowledge of the 1st Defendant is imputed to the 2nd Defendant as well.

The Plaintiff is, prior to proper discovery and/or interrogatories, unable to give full particulars of all the particulars of knowledge of the 1st and 2nd Defendants.

6. By reason of the foregoing, the Plaintiff has suffered loss and unless the 1st and 2nd Defendants are restrained by this Honourable Court, will continue to suffer loss and damage.

7. By reason of all the circumstances of this case, including the flagrancy of the infringement, the benefit accruing to the 1st and 2nd Defendants by reason of the

M0012604

EXHIBIT _____35_____

PAGE _____561_____

EX 10234-0050

infringement and the completeness, accuracy and reliability of the 1st and 2nd Defendants' business accounts and records, the Plaintiff claims additional damages under Section 108 of the Copyright Ord., Cap. 528.

### Particulars

The Plaintiff will in particular rely upon the following facts and matters:-

(a) The Plaintiff repeats the particulars supplied under paragraphs 5 hereof.

(b) The 1st and 2nd Defendants in infringing the said Artistic Works have reaped substantial benefits in that the 1st and 2nd Defendants do not have to incur development costs, marketing costs and the risks that the Infringing Dolls might not be popular with its customers. The 1st and 2nd Defendants knew that in copying the said Artistic Works they will be able to produce, market and sell a product that has proven to be successful and is in demand by members of the trade and public.

8.  By reason of the 1st and 2nd Defendants' wrongful acts and/or by reason of the 1st and 2nd Defendants' dealing in the Infringing Dolls, the 1st and 2nd Defendants owe a duty to the Plaintiff to assist the Plaintiff by supplying the Plaintiff with full information relating to the products complained of, all dealings therein or therewith

C:\MAOCIE\P\copyright\WF-1675-MCA\WHL.doc

M0012605

EXHIBIT ___35___

PAGE ___562___

and the identities of all other wrong doers.

9. Further by virtue of sections 48 and 49 of the High Court Ordinance (Cap. 4) the Plaintiff is entitled to and claims to recover interest on any amount found to be due to the Plaintiff at such rate(s) and for such period(s) as this Honourable Court considers just and proper.

AND the Plaintiff claims:-

1. An injunction to restrain the 1st and 2nd Defendants whether acting by themselves, their directors, officers, servants or agents or any of them or otherwise howsoever from infringing the Plaintiff's copyright in original artistic works relating to the Plaintiff's fashion dolls under the name "Bratz" and/or from directing, procuring, instigating, causing, enabling or assisting others to do so.

2. An order for delivery up or destruction upon oath of all articles and materials in the 1st and 2nd Defendants' possession, power, custody or control including dies, plates, templates, labels, moulds, leaflets, catalogues and packaging the use or sale or dealing therewith by the 1st and 2nd Defendants would offend against the foregoing injunction.

C:\MAGGIE\IMP\copyright\WF-1878-MGA\Writ.doc

M0012606

EXHIBIT ___35___

PAGE ___563___

EX 10234-0052

3. An inquiry as to damages, alternatively damages or, at the Plaintiff's option, account of profits, in respect of the 1st and 2nd Defendants' wrongful acts of infringement of copyright.

4. Additional damages pursuant to section 108(2) of the Copyright Ordinance.

5. An order for the payment by the 1st and 2nd Defendants' of all sums found due to the Plaintiff upon making such inquiries and/or accounts together with such interest thereon as this Honourable Court shall deem just pursuant to Section 48 of the High Court Ordinance.

6. An order for discovery or verification upon oath of all matters relating to the foregoing.

7. Costs

8. Such further or other relief as this Honourable Court shall deem just.

Dated this 16th day of October 2003.

William W.L. Fan & Co.

Solicitors for the Plaintiff

C:\MAGGIE\PGPympgbWP-1079-MOA\W6.doc

M0012607

EXHIBIT ___35___

PAGE ___544___

EX 10234-0053

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

On June 8, 2007, I served true copies of the following document(s) described as **MATTEL, INC.'S FIFTH SET OF REQUESTS FOR ADMISSION TO MGA ENTERTAINMENT, INC.** on the parties in this action as follows:

John Keker                            Diana M. Torres
Keker & Van Nest, LLP                 O'Melveny & Myers, LLP
710 Sansome Street                    400 S Hope Street
San Francisco, CA 94111              Los Angeles, CA 90071

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 8, 2007, at Los Angeles, California.

David Quintana

07209/2138758.1

EXHIBIT ___35___

PAGE ___565___

EX 10234-0054

# EXHIBIT 36

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 37



EXHIBIT ___37___

PAGE ___587___

MGA 3887949

EX 13747-0005

# EXHIBIT 38

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 39

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 40

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 41

HCA $\frac{3242}{}$/2003

IN THE HIGH COURT OF THE

HONG KONG SPECIAL ADMINISTRATIVE REGION

COURT OF FIRST INSTANCE

ACTION NO. $\frac{3242}{}$ OF 2003

---

BETWEEN

MGA ENTERTAINMENT INC.                                    . Plaintiff

and

UNION TOP (HK) COMPANY LIMITED                           Defendant

---

## AFFIRMATION OF LEE SHIU CHEUNG

I, Lee Shiu Cheung of Room 1001, Empire Centre, 68 Mody Road, Tsimshatsui East,

Kowloon, Hong Kong do solemnly, sincerely and truly affirm and say as follows:-

1.       I am the Managing Director of MGA (H.K.) Entertainment Limited (hereinafter

"MGAHK"), which is a subsidiary company and manufacturing licensee of MGA

Entertainment Inc., formerly known as ABC International Traders, Inc. trading as

MGA Entertainment, the Plaintiff herein. I am duly authorized by the Plaintiff to

make this affirmation on its behalf. Unless otherwise stated, the facts and matters

1

EXHIBIT __41__

PAGE __651__

MGA 3892910
EX 13725-0001

contained herein are true to the best of my knowledge and belief and they either are within my own personal knowledge or gleaned from books and records of the Plaintiff to which I have free access. Insofar as facts and matters that do not fall within the aforesaid category, they are related to me by the respective sources stated hereunder and are true to the best of my knowledge and belief.

2.   The Plaintiff was originally founded in 1979 as a consumer electronics business. In 1987, the Plaintiff obtained exclusive rights to sell Nintendo hand-held LCD game players called "Game Boy" in the United States of America ("USA"). Game Boy was an instant success worldwide. This paved the way for the Plaintiff to create and market under licences innovative products in respect of other best-selling names, including "Hello Kitty" and "Power Rangers". In 2002, the Plaintiff added "Spider-Man: The Movie" and in 2003, "The Hulk" to its collection of licences. The Plaintiff is thus a successful and reputable company in the toy business internationally. The Plaintiff holds other licences including licences from Marvel Characters, Inc., Atari Corporation and BVS Merchandising, Inc. (Disney). Now produced and shown to me marked "LSC-1" is a copy of the corporate profile of the Plaintiff downloaded from its website.

3.   Since 1987, the Plaintiff concentrated and focused its effort primarily in the toy industry and, at present, the Plaintiff has 8 product categories; smart toys, interactive dolls, handheld games, fashion dolls, youth electronics, music, licensed products and small dolls. In the years 2001 and 2002, the Plaintiff's revenue exceeded US$98 million and US$225 million respectively. The projected revenue for the year 2003 is

2

EXHIBIT ___41___

PAGE_____652_____

MGA  3892911
EX 13725-0002

over US$650 million due to the success of a range of dolls known as BRATZ which is the subject matter of this action and will be dealt with in detail below. For the year 2002, the sale of BRATZ dolls and accessories accounted for 69% of the total revenue of the Plaintiff. The Plaintiff forecasts that the sale of BRATZ dolls and accessories will account for 72% of the revenue for the year 2003.

4.   The toys designed and marketed by the Plaintiff have won international acclaim and were made the subject of numerous awards and prizes. However, the most successful toys designed and marketed by the Plaintiff must be the BRATZ dolls. For two consecutive years in 2001 and 2002, the Plaintiff has won the toy industry's most prestigious award, The People's Choice Toy of the Year for BRATZ-related toys. It has also won two consecutive Family Fun Toy of the Year award for BRATZ-related toys in 2001 and 2002. Furthermore, in 2001 and 2002, BRATZ-related toys won Today's toy tests.

5.   The BRATZ dolls come in 2 sizes. The full-sized version stands at 10 inches tall and the mini version stands at 4 and a half inches tall. This application is only concerned with the full-sized version doll.

6.   The Plaintiff is and was at all material times the owner of copyright in the works relating to the BRATZ dolls.

Subsistence and Ownership of Copyright Works

3

EXHIBIT __41__

PAGE __653__

MGA   3892912
EX 13725-0003

7.      On or about 18th September 2000, the Plaintiff entered into an agreement with Mr. Carter Bryant ("Mr. Bryant") whereby Mr. Bryant transferred the rights including copyright relating to a line of dolls known as "BRATZ" originally designed and developed by him, including rights in any future works ("the Bryant Agreement"). Mr. Bryant was a graduate of Ottis College in fashion and toy design. Although BRATZ is a variation of the word "brats", the former was coined by the Plaintiff not to denote naughty or spoilt children but to denote hip and cool young adolescent or teenage girls. This idea of hip and cool is born out in the theme and design of the BRATZ dolls.

8.      Now produced and shown to me marked "LSC-2" is a copy of the Bryant Agreement. I crave leave to refer to clause 3 of the Bryant Agreement whereby all intellectual property rights including copyright subsisting in the works generated by Mr. Bryant shall be owned by the Plaintiff, regardless of whether the works were created before or after the Bryant Agreement. Pursuant and prior to the Bryant Agreement and commission, Mr. Bryant initially designed a range of 4 girls and subsequently extended the range by adding 2 more girls and 4 boys. These design works of the BRATZ dolls were all original drawings created by Mr. Bryant using his own independent labour, skill and judgement and copyright subsisted in them. At all material times, Mr. Bryant was a resident of and domiciled in the USA.

9.      Now produced and shown to me marked "LSC-3" are true copies of 18 initial concept drawings of the first 4 BRATZ dolls designed by Mr. Bryant pursuant and prior to the Bryant Agreement. These drawings were made by Mr. Bryant on divers dates

4

EXHIBIT __41__

PAGE __654__

MGA 3892913
EX 13725-0004

between 1998 and 2000 in the USA. Now produced and shown to me marked "LSC-4" is a true copy of a sheet of paper setting out the initial concept and idea of the BRATZ dolls by Mr. Bryant. The girls represent best friends in high school who love to trade clothes, shoes and hairdos. Since these accessories are interchangeable, the dolls can look different everyday. The success of the BRATZ dolls ensured a lucrative business in supplying accessories to owners of the BRATZ dolls thereby creating a steady stream of revenue.

10.   The first 4 BRATZ dolls were each given a name and a different ethnic origin so they could appeal to everyone in the targeted age group of girls between 5 and 14 years old. Cloe is Caucasian, Sasha is Black, Yasmin is Hispanic and Jade is Asian. Meygan is the fifth female doll that was subsequently added to the range and is red-headed. The Plaintiff has also recently introduced the latest girl Dana, the 6th female doll in the line.

11.   After making the design drawings exhibited as "LSC-3", wax models of the sculpting of the head, body parts and shoes of the BRATZ dolls were made by Margaret Leahy, a freelance sculptor, in or about winter 2000-2001. These wax models were created by Margaret Leahy using her own independent skill, labour and judgement and copyright subsisted in them. Margaret Leahy was commissioned by the Plaintiff to make the wax models for valuable consideration. At all material times, Margaret Leahy was a resident of and domiciled in the USA. It was the understanding and agreement between Margaret Leahy and the Plaintiff that all intellectual property rights including copyright subsisting in the wax models should belong to the Plaintiff. Now produced and shown to me marked "LSC-5" is a copy assignment of copyright

5

EXHIBIT __41__

PAGE __655__

MGA 3892914

EX 13725-0005

executed by Margaret Leahy in favour of the Plaintiff.

12. The wax models were then used to make silicon rubber moulds of the head, body parts and shoes of the BRATZ dolls. The silicon rubber moulds were made under commission by Jessie Ramirez for valuable consideration in or about winter 2000-2001. These silicon rubber moulds were created by Jessie Ramirez using her own independent skill, labour and judgement and copyright subsisted in them. At all material times, Jessie Ramirez was a resident of and domiciled in the USA. It was the understanding and agreement between Jessie Ramirez and the Plaintiff that all intellectual property rights including copyright subsisting in the silicon rubber moulds should belong to the Plaintiff. During the process of making the silicon rubber moulds, the wax models were destroyed.

13. Polyurethane samples were produced from the silicon rubber moulds. These samples were made by Jessie Ramirez using her own independent skill, labour and judgment for the purpose of making production moulds of the dolls. The silicon rubber moulds were destroyed after the polyurethane samples had been made. There are now produced and shown to me marked "LSC-6" the polyurethane samples of the head sculpt and some body parts and shoes of BRATZ dolls. It was the understanding and agreement between Jessie Ramirez and the Plaintiff that all intellectual property rights including copyright subsisting in the polyurethane samples should belong to the Plaintiff. Now produced and shown to me marked "LSC-7" is a copy assignment of copyright executed by Jessie Ramirez in favour of the Plaintiff.

6



EXHIBIT 41

PAGE 656

MGA 3892915
EX 13725-0006

14. The facial decorations and features of the BRATZ dolls are unique and much time, effort and monetary resources have been expended in creating and perfecting them. The Plaintiff commissioned one Anna Rhee to design the facial decoration of the BRATZ dolls with the understanding and agreement that all intellectual property rights including copyright should belong to the Plaintiff. At all material times, Anna Rhee was a resident of and domiciled in the USA.

15. Based on the initial concept drawings of Mr. Bryant and using her own independent skill, labour and judgment, Anna Rhee drew some decoration directions for the facial decorations for different series of dolls. She then created the original deco or paint masters which were hand-painted facial decoration on a rubber head sculpt of a doll. With the input of Mr. Bryant, Anna Rhee revised the deco masters a number of times until they were perfected and became the final version that were used to serve as the benchmark and template from which the original four different BRATZ dolls' individual facial decoration were mass produced by spray masking. Now produced and shown to marked "LSC-8" is the pile of decoration direction (inclusive those on the 2001 Fall series and Funk 'N' Glow Series) made by Anna Rhee from the initial concept drawings of Mr. Bryant in Winter 2000-2001, "LSC-9a-d" are the deco masters hand-painted by Anna Rhee for the 2001 Fall Series in about Winter 2000 - 2001 and "LSC-10" is a bundle of documents setting out the various changes contributed to by Mr. Bryant during the design process. There is now produced and shown to me marked "LSC-11" a copy assignment of copyright executed by Anna Rhee in favour of the Plaintiff. Copyright subsisting in the above deco masters and decoration directions made by Anna Rhee belong to the Plaintiff and is covered by the

7

EXHIBIT __41__

PAGE __657__

MGA 3892916
EX 13725-0007

assignment exhibited as "LSC-11" and the copyright subsisting in "LSC-10" is covered by "LSC-2".

16.    The Plaintiff has also registered the design of the first 4 BRATZ in the United Kingdom ("UK") in July 2001.  There is now produced and shown to me marked "**LSC-12**" copy certificates of the design registration all dated 27ᵗʰ July 2001.

17.    The first 4 BRATZ dolls were first published in the USA in June 2001 (2001 Fall Series) when they were offered for sale to the general public.  The BRATZ dolls were available for sale in Hong Kong since December 2002.  They are available for sale to the public in Hong Kong in retail outlets such as Jusco, Toys "R" Us, Sogo, Citi-Store, Seibu, Seiyu and Kalm's.  They were also marketed in Taiwan at around the same time.  Now produced and shown to me marked "LSC-13a-d" are samples of the first 4 BRATZ dolls in their packaging, "LSC-13e" is a sample of the red-headed Meygan added subsequently and "LSC-13f" is the photograph of the newly introduced Dana in "the Styln' Salon 'N' Spa".

18.    The BRATZ dolls are very unique and each of them has an oversized head and individual facial decoration.  One thing that has contributed to the success of BRATZ is the oversized eyes and the protrusive mouth that are capable of being decorated with make-up and the diminished size of the nose that serves no decorative purposes.  Thus, the elements of the face that can be made-up, the eyes and mouth, are exaggerated while the element of the face that cannot be made-up, the nose, is reduced.  In addition, BRATZ make-up is multi-coloured and the eyelashes are

8



EXHIBIT ___41___

PAGE ___658___

MGA  3892917
EX 13725-0008

exaggerated in size but limited in number. The lipstick is also two-toned in order to draw attention to the lips. I should also mention that the BRATZ dolls have different collections with modified facial decorations to go with the collection themes. For instance, in the "Fun 'N' Glow" Collection, the BRATZ girls had an even more funky appearance for discos and dancing while in the "Slumber Party" Collection, they sport a more casual outlook.

19. A prominent feature of BRATZ is the snap-on shoes. Mr. Bryant's design of the snap-on shoes is shown in the concept drawing with 2 identical girls standing in the same posture with four hands demonstrating the interchangeable hairdos and snap on shoes for the BRATZ dolls, that is, the drawing entitled "Basic Doll Piece Count" which narrates different interchangeable pieces of BRATZ dolls, including "Pop On / Off Sneakers" and "Pop On / Off Mary Janes" (plat-formed sandals) and the body sketch exhibited "LSC-3" hereinabove. The interchangeable shoes are an important part of the play value of BRATZ. By employing snap-on shoes, girls are able to easily change the dolls' footwear and it allows different varieties of footwear to be worn by the dolls.

20. The current average FOB sales value of the BRATZ dolls is US$10.66 and that of the mini version is US$4.73.

21. The BRATZ dolls and their accessories are marketed and sold in more than 52 countries and places including the European Union, the Americas, the Balkans, the Baltic, Norway, Switzerland, Russia, Ukraine, Poland, Hungary, Czech Republic,

9



EXHIBIT 41

PAGE 659

MGA 3892918
EX 13725-0009

Lebanon, UAE, Saudi Arabia, Egypt, Syria, Israel, South Africa, Australia, New Zealand, the Philippines, Indonesia, Taiwan, Thailand, Singapore, South Korea, Japan and Hong Kong.

22. The BRATZ dolls have their own website at "www.bratzpack.com". The site provides some games, e-greetings and Mix N Match Mall of BRATZ' fashion and hairdos. The site also maintains a fan club known as BRATZ pack and maintains a list of its members. The aim of this fan club is to notify its members of new fashion trends that the BRATZ dolls will wear themselves and launch and marketing thereof. Now produced and shown to me marked "LSC-14" are downloaded copies from the said website.

23. So far the Plaintiff has spent a total of over US$22 million in advertising and on promotion expenses worldwide in relation to BRATZ.

24. As mentioned hereinbefore, the BRATZ dolls have become an instant success and they have become collectibles. Considerable media coverage have been given to these dolls and there is now produced and shown to me marked "LSC-15a" a selection of press cuttings and celebrity photos of the BRATZ pack, including Singtao Daily dated 13th December 2002 and the South China Morning Post dated 19th January 2003 which reported the official launch of BRATZ dolls in Hong Kong in December 2002. Now produced and shown to me marked "LSC-15b" is a bundle of press and/or marketing materials of Hasbro Hong Kong Limited, BRATZ' distributor in Hong Kong, and pictures of in-store display at some of the Hong Kong outlets. There is now

10

EXHIBIT __4 1__

PAGE __660__

MGA 3892919
EX 13725-0010

further produced and shown to me marked "LSC-15c" a copy of a recent article published on 11th August 2003 by the South China Morning Post on the competition between BRATZ and BARBIE.

25. Another major source of revenue generated by the BRATZ dolls is income derived from merchandising rights by granting non-exclusive licences to other companies worldwide. So far, 120 merchandise licence agreements have been granted in respect of a wide range of products including paper napkins, girls clothing, jewelry, bedding, home furnishing, stationery, toiletries, video games, footwear and electrical appliances etc. Pursuant to these licenses, BRATZ branded goods are marketed in Spain, Portugal, Australia, New Zealand, Finland, Germany, Austria, Switzerland, France, Belgium, Luxembourg, Mexico, Italy, UK, Ireland, Greece, Norway, Channel Islands, Brazil, Columbia, Greece, Cyprus, Denmark, Iceland, Sweden, Columbia, Venezuela, Turkey, Peru, Israel, all Central America countries, all Carribean Island countries, Dominican Republic, Ecuador, Venezuela, Bolivia, Paraguay, Chile, UAE, Saudi Arabia, Kuwait, Iran, Lebanon, Syria, Jordan, Egypt, Qatar, Oman, Behrain, Yemen and Hong Kong. The Plaintiff projects an annual licensing revenue of US$12 million per year by year end in 2004.

26. Furthermore, the Plaintiff has granted exclusive distribution rights of the BRATZ dolls to, inter alia, Bandai UK Ltd. in the UK and Ireland since 1st April 2001 and to Hasbro S.A. in Belgium, the Netherlands and Luxembourg.

27. Furthermore, the Plaintiff is and was at all material times the registered owner of the

11

EXHIBIT 41

PAGE 661

MGA  3892920
EX 13725-0011

trademark "BRATZ" in Hong Kong in various international classifications, including

dolls and dolls' accessories in Class 28. They are as follows:

| Date | Number | Mark | Class | Specification of Goods |
|------|--------|------|-------|------------------------|
| 2.8.2001 | 200213329 | BRATZ & Device | 28 | games and playthings, dolls and doll accessories, etc. |
| 24.8.2001 | 200212579 | BRATZ | 18 | luggage, tags, umbrellas, purses, handbags, wallets, backpacks, travel cases and bags, etc. |
| 24.8.2001 | 200212580 | BRATZ | 25 | girls' clothing, garment, hosiery, footwear and other apparels, etc. |
| 24.8.2001 | 200212627 | BRATZ | 16 | scrapbooks, photo albums and other stationery, etc. |
| 5.2.2002 | 200309866 | BRATZ | 28 | dolls and dolls' accessories, etc. |

There are now produced and shown to me marked "LSC-16" copies of the certificates

of trademark registrations. It should be noted that the registered owner of Trade Mark

Registration No.200213329 is listed as "ABC International Traders, Inc. trading as

MGA Entertainment", which was the former trading name of the Plaintiff.

12

EXHIBIT  4 1

PAGE  6 6 2

MGA  3892921
EX 13725-0012

**The Defendant's Infringing Activities**

28.    Due to the success of the BRATZ dolls, there are and have been numerous knock offs and unauthorized copies appearing in the market worldwide. In order to protect its intellectual property rights and business interests and the exclusivity of the BRATZ dolls, the Plaintiff has taken numerous legal actions and obtained injunctive relief against infringers in many parts of the world, including the UK and Italy. In many instances, the infringing supply in Europe was traced back to Hong Kong. In Hong Kong itself, the Plaintiff has also taken actions against suppliers of infringing copies of the BRATZ dolls and obtained interim injunctions.

29.    In approximately April of this year, one Ms Emanunela Silvestri, the Plaintiff's licensing agents in Italy, discovered some fashion dolls named "Fashion Dolls" which she believed were copies of Bratz dolls at a retail shop in Italy. She referred the matter to Mr. Isaac Larian, the Chief Executive Officer of the Plaintiff, and Mr. Larian requested her to purchase some samples of the dolls for examination. Two dolls, namely one "Fashion Doll - Hair Styling Playset" and one "Fashion Doll Playset" were then purchased and delivered to the Plaintiff's office in the USA by courier. The label at the back of the packaging boxes of the dolls showed that the infringing copies of the BRATZ dolls were imported and marketed in Martina Franca, Italy by one "General Trade SpA". The Plaintiff thus instructed its lawyers in Italy, Messrs. Trevisan & Cuonzo, to take immediate action against General Trade.

13

EXHIBIT __41__

PAGE __663.__

MGA  3892922
EX 13725-0013

30.  In respect of the action brought in Italy, I crave leave to refer to the copy Affirmation of Donatella Anna Capelli exhibited to the Affidavit of Chan Wai Ling to be filed herein a copy of which I have read and the contents of which I verily believe to be true. It was due to discovery under the seizure order executed at the offices of General Trade in Martina Franca that the identity of Union Top (HK) Co. Ltd., the Defendant herein, as the supplier of the infringing "Fashion Doll" was uncovered.

31.  The "Fashion Doll" supplied by the Defendant is not and has never been authorized by the Plaintiff.  The Plaintiff placed instructions with its lawyers in Hong Kong, Messrs. William W.F. Fan & Co., to investigate into the extent of the Defendant's infringing activities.  Hence professional investigators, Kroll Facts Finders Limited ("Fact Finders"), were engaged to inquire into the Defendant's activities.  For details of the investigation and finding, I would respectfully refer this Honourable Court to the Affirmation of Lam Yuen Chak to be filed herein.  I have read the affirmation in draft and verily believe that its contents are true.

32.  Although Fact Finders could not manage to obtain a sample of the "Fashion Doll", their finding was very disturbing.  Not only that the Defendant is persisting in its dealing of the "Fashion Doll", it also shows that the Defendant was dealing in counterfeit dolls which bore the Plaintiff's trademark "BRATZ".  The counterfeit dolls were displayed alongside the "Fashion Doll" in its showroom.  In other words, the Defendant did not stop at copyright infringement, but was simultaneously infringing the Plaintiff's trademark.

14

EXHIBIT 41

PAGE 664

MGA 3892923
EX 13725-0014

33. As no sample could be obtained from the Defendant, Messrs. Trevisan & Cuonzo was asked to send to the Plaintiff's solicitors the sample of the "Fashion Doll". I am informed and verily believe that, as the sample had been made an exhibit in evidence, it could not be released to Hong Kong for use in this action. Messrs. Trevisan & Cuonzo has taken photographs of the "Fashion Doll" which are now produced and shown to me marked "LSC-17". Furthermore, the Italian lawyers have also made a videotape of the "Fashion Doll" (Playset) and this is now produced and shown to me marked "LSC-18". Both the photographs and the videotape were taken and sent to Hong Kong by Messrs. Trevisan & Cuonzo. Messrs. Trevisan & Cuonzo also sent us copies of the documents seized from General Trade showing a supply of the "Fashion Doll" by the Defendant and they are now produced and shown to me marked "LSC-19". There was another doll called "Fashion Doll - Hair Styling Playset" which was mainly used for decoration and hairdo. This was sent by Messrs. Trevisan & Cuonzo for our reference. The sample "Fashion Doll - Hair Styling Playset" is now produced and shown to me marked "LSC-20". I wish to say that the BRATZ girls have hair styling play sets. As the degree of resemblance of the "Fashion Doll Hair Styling Playset" is less close, the Plaintiff does not propose to bring an action for it at this stage. It is noted that, like the "Play Set", the "Hair Styling Playset" sample also has the label of General Trade on its packaging.

34. Even a cursory comparison of the "Fashion Doll" as shown in the photographs and the videotape and the BRATZ dolls and their copyright works, in particular Cloe, as exhibited above demonstrates a clear case of copyright infringement. Most if not all of the prominent features of the BRATZ dolls were taken collectively.

15

EXHIBIT 41

PAGE 665

MGA 3892924
EX 13725-0015

35. The BRATZ dolls have been a worldwide market success and received international press coverage of their success. Their rise in popularity within a relatively short time-span has been miraculous and is much talked of by the trade and public in Hong Kong and elsewhere. Their introduction in the Hong Kong market in December 2002 was covered in the Chinese and English press. This could not have escaped the attention of the Defendant, a business in the toy trade and dealing in dolls. The close similarity between the "Fashion Doll" and the BRATZ dolls and the copying of the packaging feature, which I shall turn to below, show that the Defendant was dealing in the infringing copies with their eyes open and was well aware that the "Fashion Doll" was an infringing copy of the copyright works relating to the BRATZ dolls.

36. It is also clear from the evidence of the investigator that the Defendant was offering counterfeit dolls bearing the trademark "BRATZ". This is not and has never been authorized by the Plaintiff. For these reasons, the Defendant has also infringed the trademark rights of the Plaintiff in Hong Kong.

37. In the light of the above, the Plaintiff decided to take legal action against the Defendant for copyright infringement, trademark infringement and passing off. The Plaintiff also wishes to apply for an ex parte entry order for the preservation of evidence relevant to the action. For the purpose of the ex parte application and the inter partes application intended to be taken out, the Plaintiff does not rely on passing off.

16

EXHIBIT ___41___

PAGE ___666___

MGA 3892925
EX 13725-0016

**Preservation of Evidence**

38.     The investigator's inquiry shows that the Defendant was dealing with the "Fashion Doll" and was in possession of infringing copies of the BRATZ dolls.   It was also dealing and had in its possession counterfeit dolls bearing an infringing "BRATZ" mark.

39.     The Defendant's sales staff was very cautious in dealing with the investigator, who was posing as an overseas buyer.   The investigator's request for samples of the infringing dolls was refused, as was his/her request to take photographs of the same. It is a normal business practice to supply samples to customers upon request, either on spot or by future delivery arrangement.   When the photographs of products were subsequently sent to the investigator, there was no photograph of any infringing doll. Upon enquiry from the investigator, it seems clear that a pretext was given by the Defendant in that the infringing dolls were exclusive items for a certain client. Commercially this could hardly be the case.   A merchant could only offer product exclusivity if he has exclusivity on the product himself.   On its own statement to the investigator, the Defendant was supposed to have obtained supply of the infringing dolls from two alternative sources.     If that was true, the alleged exclusivity was meaningless.   I verily believe that, in alleging exclusivity, the Defendant was making up a story in order to avoid supplying samples to the investigator, supposedly an unfamiliar customer, which might expose its infringing activities and risk being sued for infringement.

<div align="center">17</div>

EXHIBIT   41

PAGE   667

MGA 3892926
EX 13725-0017

40.     The Defendant's illicit trade was carried out evasively and in a clandestine manner. Once alerted of an action against it, I verily fear that the Defendant will take immediate steps to conceal or destroy the evidence relating to its infringing activities. I do not know whether the Defendant became aware of the action in Italy against General Trade in May 2003 or the actions that the Plaintiff has previously taken in Hong Kong. What is certain is that, after the Plaintiff had commenced actions in Italy and in Hong Kong, the Defendant was still in possession for trade infringing copies of the BRATZ dolls and counterfeit dolls which usurped and infringed the "BRATZ" trademark. It is also probable that the Defendant have in its possession relevant documents and materials relating to its infringements.

41.     For these reasons, I would respectfully request for an ex parte entry order to be made so that the evidence relating to the infringement of both trademark and copyright by the Defendant may be preserved.

**Strong Prima Facie Case**

42.     I have looked at the "Fashion Dolls" closely from the photographs and the videotape exhibited hereinabove and find that it is a slavish copy of the BRATZ dolls and is a clear infringement of the Plaintiff's copyright in the works relating to BRATZ. In particular, I would draw attention to the following features in the "Fashion Doll", namely:

(a)     The oversized head;

(b)     The facial decoration;

18

EXHIBIT   41

PAGE      068

MGA   3892927

EX 13725-0018

(c)    The oversized eyes;

(d)    The diminished nose;

(e)    The protrusive and defined mouth;

(f)    The multi-coloured make-up;

(g)    The few and exaggerated eyelashes;

(h)    The two-toned lipstick;

(i)    The disproportionately large feet and shoes;

(j)    The snap-on shoes.


43.    The similarities between BRATZ and the "Fashion Doll" is even more obvious when one looks at them and their facial decoration or make-up. I crave leave to refer to the exhibit "LSC-9a -d" are the deco masters and "LSC-8" the decoration directions. The pattern, style and combination and layers of different colours of the multi-coloured facial decoration or make-up on the "Fashion Doll" are substantially similar to those of BRATZ. Even the exaggerated eyelashes and two-toned lips in BRATZ are present in the "Fashion Doll".


44.    These are prominent features of BRATZ. There may be dolls in the market which may have some of these attributes but, as far as I am aware, there are no dolls that I know of which possess these features in aggregate or which look similar to BRATZ, save for the infringing copies. Not only that BRATZ were copied in close resemblance in the "Fashion Doll", the 5-girls theme of the BRATZ girls was also imitated. This is shown in the packaging of the "Fashion Doll". Furthermore, the

19



EXHIBIT __4 1__

PAGE __6 6 9__

MGA 3892928

EX 13725-0019

BRATZ "2002 Fall Limited Edition- The Funk 'N' Glow Collection" featured a pictorial depiction of the 5 BRATZ girls dancing together both in front and at the back of the packaging. Now produced and shown to me marked "LSC-21a" is a sample of Cloe in the Funk 'N' Glow Collection packaging and "LSC-21b" is a sample Sasha in the Funk 'N' Glow Collection packaging. The packaging of the other BRATZ girls in the Funk 'N' Glow Collection was the same. The pictorial depiction was identically copied in the "Fashion Doll" packaging.

45. All of above suggest a strong case of copying of BRATZ by the "Fashion Doll". In short, the Defendant has copied the head sculpt and the facial decoration of the BRATZ dolls. I verily believe that the close similarities between the "Fashion Doll" and BRATZ could not have been coincidental and must have come about as a result of copying. At all material times, the Defendant had market access to the BRATZ dolls in Hong Kong and elsewhere.

46. We could not acquire a sample of the Defendant's "BRATZ" dolls. The investigator has seen 4 samples of the Defendant's "BRATZ" dolls of which, according to Fact Finders, the packaging and appearance looked very cheap. The Plaintiff is the registered owner of the trademark "BRATZ" in Hong Kong in respect of dolls: It has never permitted or licensed the use of the "BRATZ" trademark on the Defendant's dolls. It is obvious that the Defendant's dolls were counterfeit dolls which infringed the Plaintiff's trademark.

47. The similarities between BRATZ and the "Fashion Doll" and the infringing acts of

20

EXHIBIT __41__

PAGE __670__

MGA  3892929
EX 13725-0020

the Defendant have raised more than a triable issue for copyright infringement and trademark infringement.

**Irreparable Damage**

48. The success of BRATZ worldwide cannot be taken for granted. The competition is keen and BRATZ cannot afford to sit on its laurels. Similarly, the Plaintiff cannot afford to treat the success of BRATZ as self-perpetuating and needs to continuously apply its mind to build on that success and to remove any threat which jeopardizes the success of BRATZ and its image.

49. By reason of the success of BRATZ, many knock offs have appeared in the market. The Plaintiff well understands that infringers prey on successful marks and successful products with cheap imitations for profits whilst having no commitment to the same. Once the successful marks and products are ruined, they will move on to others. In order to protect the Plaintiff's intellectual property rights and to safeguard the business interests and exclusivity of BRATZ, the Plaintiff had obtained interim injunctions in Hong Kong against at least three companies which the Plaintiff says have infringed its rights. On present information, as far as I am aware and unlike Union Top, these companies only copied the BRATZ dolls without also imitating the "BRATZ" trademark. The Plaintiff has also taken action in the UK against two companies which settled the Plaintiff's claims and paid significant amounts of damages. There was also an action taken in Italy against General Trade.

21

EXHIBIT 41

PAGE 671

MGA 3892930
EX 13725-0021

50.   As already adverted to hereinabove, an important revenue stream of BRATZ are licence fees. The demand and price of BRATZ licences depend on the exclusivity and popularity of the BRATZ products and the value of "BRATZ" as a mark and brand.

51.   BRATZ is popular because of its unique funky and sassy image. I have explained the unique facial features of the BRATZ dolls. The "Fashion Doll" has copied BRATZ' image and appearance, in particular the eyes and the lips, and this will dilute the exclusivity and affect the image of the BRATZ dolls.

52.   The Plaintiff has spent multi-million dollars for the worldwide promotion of BRATZ and its image. The continuous sale of cheap imitations will no doubt affect the demand for licences and the level of fees. Any damage to the "BRATZ" mark and its reputation, dilution in exclusivity and diminution in the value of BRATZ is a loss which cannot be measured in money and cannot be adequately compensated by damages. Once a mark and its reputation is ruined, it is difficult if not impossible to re-build it.

53.   There have already been complaints to the Plaintiff from its exclusive distributors concerning the influx of cheap imitations of BRATZ in the world market. I do not mean to suggest that the Defendant solely contributed to this phenomenon, as there were other infringers. Nevertheless, the continuous sales of cheap imitations, including the "Fashion Doll", would no doubt adversely affect the sales of BRATZ. The distributors of BRATZ are very concerned with the status of BRATZ protection.

22

EXHIBIT  41
PAGE  672

MGA 3892931
EX 13725-0022

Thus, the appearance in market of infringing copies such as the "Fashion Doll" have caused much concern. If the Defendant is not stopped in its track, the sales and business of distributors will be adversely affected and the interest in BRATZ will gradually diminish. It will also deal a severe blow to the Plaintiff's business relationship with the distributors and its bargaining power vis-a-vis the distributors. Two of the Plaintiff's exclusive distributors, the Bandai group of companies and the Hasbro group of companies, are the largest toy companies in the world. The Plaintiff cannot afford to maintain a weaker bargaining position with them by reason of the appearance of cheap imitations. This will also affect the terms of the distributorships when they come up for renewal. These are important factors which would ultimately lead to monetary losses to the Plaintiff and such losses are irreparable and unquantifiable.

54. The targeted consumers of BRATZ dolls are girls aged between 4 and 14 years old. They may not all be savvy or mature enough to notice the "Fashion Doll" is not the Plaintiff's product. Many customers may have mistakenly thought the "Fashion Doll" is in fact a BRATZ doll or an addition to the BRATZ line. To make matters worse, the Defendant was also engaged in trademark infringement. Even without taking the aforesaid into account, it would be a matter of conjecture as to how many sales of BRATZ dolls would have been made were it not for the Defendant's unlawful activities. It would be difficult, if not impossible, for the Plaintiff to show any diminution in projected sales attributable to the "Fashion Doll" in the market, although an entry order for the preservation of evidence may help in that respect.

23

EXHIBIT ___41___

PAGE ___473___

MGA 3892932
EX 13725-0023

55.   Since toy safety laws in the USA are very stringent, MGAHK, the licensed manufacturer, has to conduct many safety, reliability and drop tests on the BRATZ products. The EU standards are also quite high. We do not know whether the "Fashion Doll" was submitted to any of these tests to comply with overseas legislation or regulations. Although there is at present no evidence to show that the "Fashion Doll" is available for sale in the USA, this does not stop North American customers form purchasing them through the Internet. We know already that the Defendant has supplied the "Fashion Doll" to Italy. Due to the similarities between the "Fashion Doll" and BRATZ, any accident caused by product defects may falsely be attributed to BRATZ and the Plaintiff. The chances of false attribution are heightened where the "BRATZ" mark is also illegitimately used. This damage to reputation, especially to a relatively new product such as BRATZ, is unquantifiable and irreparable.

56.   The Defendant was dealing with counterfeit dolls which bear the "BRATZ" trademark. The purpose was obvious, that is, to masquerade the Defendant's dolls as BRATZ. The investigator has informed us that the counterfeit dolls to which the "BRATZ" mark was applied looked "very cheap" in appearance and packaging. This is alarming. The Plaintiff holds dear its international image and reputation which were painstakingly built in marketing high quality products worldwide. The distribution of these cheap-looking dolls in any market will tarnish the reputation of BRATZ and the Plaintiff beyond redemption. The damage caused by the Defendant in trademark infringement is immense and cannot be quantified in terms of dollars and cents.

24

EXHIBIT  41

PAGE  674

MGA  3892933
EX 13725-0024

57. For these reasons, I humbly pray that an interim injunction be granted to restrain the Defendant from continuing these wrongful acts.

58. I crave leave to refer to exhibit "LSC-22" the latest annual return of the Defendant. The Defendant has a paid up capital of HK$3,000,000. As shown by the Defendant's annual return, its directors and shareholders are all residents of Taiwan. As I have pointed out earlier, the launch of the BRATZ dolls in Taiwan should be around the same time as in Hong Kong.

59. As pointed out earlier, the Plaintiff is a company doing business in a substantial way and is an internationally reputable company. The aggregate turnovers of the Plaintiff's group of companies worldwide in the year 2002 was US$225 million. MGAHK's turnovers for the year 2001 was over HK$30 million and profits for the year was over HK$1.9 million. It has currently retained profits of over HK$5 million. The accounts of MGAHK for the year 2002 are yet to be audited. I have consulted Mr. Isaac Larian, Chief Executive Officer of the Plaintiff and a director of MGAHK, who has confirmed to me that the Plaintiff is able and willing to give a cross-undertaking in damages to this Honourable Court for the grant of the entry order, as well as the interim injunction prayed for. The Plaintiff is financially well able to back its undertaking on damages to this Honourable Court. For these reasons, unless required by this Honourable Court, the Plaintiff does not propose to deposit an amount of money for the fortification of the undertaking.

25

EXHIBIT __41__

PAGE __675__

MGA 3892934
EX 13725-0025

60.   It is essential that an interim restraining order should be granted as soon as possible. As Christmas is the major peak season for toy industry, orders are normally placed at around this time. Further, the Hong Kong Houseware Fair and Hong Kong Gifts and Premium Fair has ended on 26th July 2003. According to my experience, most of the orders generated from such fair come within the first 1 to 2 months immediately after the conclusion of the fair.

26

EXHIBIT ___41___

PAGE ___676___.

MGA 3892935
EX 13725-0026

61. For these reasons, I hereby humbly ask that this Honourable Court grant the relief to the Plaintiff as sought.

Affirmed at *the office of*
*M/s C.L. Chan & Macdison*
*Chan, Solicitors*
this 28th day of August 2003.

)
)
)
)
)

Before me,

Solicitor, Hong Kong SAR

This affirmation is filed for and on behalf of the Plaintiff.

27

EXHIBIT 41.

PAGE 677

MGA 3892936
EX 13725-0027

# EXHIBIT 42

HCA 46/2004

## IN THE HIGH COURT OF THE

### HONG KONG SPECIAL ADMINISTRATIVE REGION

### COURT OF FIRST INSTANCE

### ACTION NO. 46 OF 2004

BETWEEN

MGA ENTERTAINMENT INC.

Plaintiff

and

WAI MAN INTERNATIONAL (HK) LIMITED

Defendant

## AFFIRMATION OF LEE SHIU CHEUNG

I, Lee Shiu Cheung of Room 1001, Empire Centre, 68 Mody Road, Tsimshatsui East, Kowloon, Hong Kong do solemnly, sincerely and truly affirm and say as follows:-

1.    I am the Managing Director of MGA (H.K.) Entertainment Limited (hereinafter "MGAHK"), which is an affiliate and manufacturing licensee of MGA Entertainment Inc., the Plaintiff herein.   I am duly authorised by the Plaintiff to make this affirmation on its behalf.   Unless otherwise stated, the facts and matters contained herein are true to the best of my knowledge and belief and they either are within my

1

EXHIBIT _____42_____

PAGE _____678_____

MGA 3888203
EX 13743-0001

own personal knowledge or gleaned from books and records of the Plaintiff to which I have free access. Insofar as facts and matters that do not fall within the aforesaid category, they are related to me by the respective sources stated hereinunder and are true to the best of my knowledge and belief.

2. The Plaintiff was originally founded in 1979 as a consumer electronics business. In 1987, the Plaintiff obtained exclusive rights to sell Nintendo handheld LCD game players called Game Boy in the United States of America ("USA") and Game Boy was an instant success worldwide. This event paved way for the Plaintiff to create innovative products for other best selling licences, including Hello Kitty and Power Rangers. In 2002, the Plaintiff added "Spider-Man: The Movie" and in 2003, "The Hulk" to its already existing collection of licences. The Plaintiff is thus a successful and reputable company in the toy business internationally. The Plaintiff holds other licences including licences from Marvel Characters, Inc., Atari Corporation and BVS Merchandising, Inc. (Disney). Now produced and shown to me marked "LSC-1" is a copy of the corporate profile of the Plaintiff downloaded from its website.

3. Since 1987 the Plaintiff has primarily concentrated and focused its efforts in the toy industry and as at the date hereof, the Plaintiff has 8 product categories and they are smart toys, interactive dolls, handheld games, fashion dolls, youth electronics, music, licensed products and small dolls. In the years 2002 and 2003, the Plaintiff's revenue exceeded US$225 million and US$750 million respectively. The projected revenue for the year 2004 is over US$1.20 billion due to the remarkable success of a range of dolls known as BRATZ which is the subject matter of this action and will be dealt



EXHIBIT 42

PAGE 679

with in detail hereinafter. For the year 2002, the sale of BRATZ dolls and accessories accounted for 69% of the total revenue of approximately US$225 million. For the year 2003, the sale of Bratz dolls and accessories accounted for around 75% to 80% of the total revenue of approximately US$750 million. The Plaintiff estimates that the sale of BRATZ dolls and accessories for the year 2004 will account for around 65% to 70% of the revenue of the year.

4.  Toys designed and marketed by the Plaintiff have been the subject of numerous awards and prizes. However, the most successful toy designed and marketed by the Plaintiff must be the BRATZ dolls. For two consecutive years in 2001 and 2002, the Plaintiff won the toy industry's most prestigious award, The People's Choice Toy of the Year for BRATZ-related toys. It has also won two consecutive Family Fun Toy of the Year award for BRATZ-related toys in 2001 and 2002. Additionally, in 2001 and 2002, BRATZ-related toys won Today's toy tests. The Bratz dolls have achieved worldwide fame and popularity.

5.  The BRATZ dolls come in 2 sizes. The full version stands at 10 inches tall and the mini version stands at 4 and a half inches tall. The mini version has been marketed under the names "Micro BRATZ" and "Lil' BRATZ" respectively but will be referred to herein as "Mini BRATZ". This application concerns both versions of BRATZ dolls.

**Subsistence and Ownership of Copyright Works**

6.  On or about 18th September 2000, the Plaintiff entered into an agreement with Mr.

3

EXHIBIT 42

PAGE 680

MGA 3888205
EX 13743-0003

Carter Bryant ("Mr. Bryant") under which Mr. Bryant designed and developed a line of dolls known as BRATZ ("the Bryant Agreement"). Mr. Bryant was a graduate of Ottis College in fashion and toy design. Although BRATZ is a variation of the word "brats", the former was coined by the Plaintiff not to denote naughty or spoilt children but to denote hip and cool young adolescent or teenage girls. This idea of hip and cool is born out in the design of the BRATZ dolls.

7.   Now produced and shown to me marked "LSC-2" is a copy of the Bryant Agreement. I crave leave to refer to clause 3 of the Bryant Agreement whereby all intellectual property rights including copyright subsisting in the works generated by Mr. Bryant shall be owned by the Plaintiff. Pursuant and prior to the Bryant Agreement and commission, Mr. Bryant initially designed a range of 4 girls and subsequently extended the range by adding 1 more girl and 4 boys. The designs of the BRATZ dolls are all original drawings created by Mr. Bryant using his own independent labour, skill and judgement and wherein copyright subsist. At all material times, Mr. Bryant is a resident of and domiciled in USA.

8.   Now produced and shown to me marked "LSC-3" are true copies of 18 initial concept drawings of the first 4 BRATZ dolls designed by Mr. Bryant pursuant and prior to the Bryant Agreement. Now produced and shown to me marked "LSC-4" is a true copy of a sheet of paper setting out the initial concept and idea of the BRATZ dolls by Mr. Bryant. The girls represent best friends in high school who love to trade clothes, shoes and hairdos. Since these accessories are interchangeable, the dolls can look different everyday. The success of the BRATZ dolls ensured a lucrative business of

4



EXHIBIT 42

PAGE 681



MGA 3888206
EX 13743-0004

supplying accessories to the owners of the BRATZ dolls creating a steady stream of revenue.

9. The first 4 BRATZ dolls were each given a name and a different ethnic origin so they could appeal to everyone in the targeted age group of girls between 5 and 14 years old. Cloe is Caucasian, Sasha is Black, Yasmin is Hispanic and Jade is Asian. Meygan the fifth female doll that was subsequently added to the range is a red-head.

10. After making the design drawings exhibited as "LSC-3", wax models of the sculpting of the head, body parts and shoes of the BRATZ dolls were made by Margaret Leahy who was a freelance sculptor in or about winter 2000-2001. These wax models were created by Margaret Leahy using her own independent skill, labour and judgement wherein copyright subsisted. Margaret Leahy was commissioned by the Plaintiff to make the said wax models for valuable consideration. At all material times, Margaret Leahy was a resident of and domiciled in USA. It was the understanding and agreement between Margaret Leahy and the Plaintiff that all intellectual property rights including copyright subsisting in the wax models shall belong to the Plaintiff. Now produced and shown to me marked "LSC-5" is a copy assignment of copyright executed by Margaret Leahy in favour of the Plaintiff.

11. The wax models were then used to make silicon rubber moulds of the head, body parts and shoes of the BRATZ dolls. The silicon rubber moulds were made under commission by Jessie Ramirez under valuable consideration in or about winter 2000-2001. These silicon rubber moulds were created by Jessie Ramirez using her own

5

EXHIBIT 42

PAGE 682



MGA 3888207
EX 13743-0005

independent skill, labour and judgement wherein copyright subsisted. At all material times, Jessie Ramirez is a resident of and domiciled in USA. It was the understanding and agreement between Jessie Ramirez and the Plaintiff that all intellectual property rights including copyright subsisting in the silicon rubber moulds shall belong to the Plaintiff. During the process of making the silicon rubber moulds the wax models were destroyed.

12.  Polyurethane samples were produced from the silicon rubber moulds. The silicon rubber moulds have also been destroyed after the polyurethane samples were made. These samples were necessary for the making of production moulds of the dolls. There are now produced and shown to me marked "LSC-6" the polyurethane samples of the head sculpt and some body parts and shoes of BRATZ dolls. It was the understanding and agreement between Jesse Ramirez and the Plaintiff that all intellectual property rights including copyright subsisting in the polyurethane samples shall belong to the Plaintiff. Now produced and shown to me marked "LSC-7" is a copy assignment of copyright executed by Jesse Ramirez in favour of the Plaintiff.

13.  As regards the mini BRATZ, the design process is more or less the same as the full version. Margaret Leahy was again commissioned to produce wax models of the miniature version of the BRATZ dolls. The wax models were used by Jessie Ramirez to produce silicon rubber moulds and from the silicon rubber moulds, polyurethane samples of the head and body parts were produced. Now produced and shown to me marked as "LSC-8" are polyurethane samples of the head and body parts of the mini BRATZ. Again, the wax models and the silicon rubber moulds were destroyed during

6

EXHIBIT 42

PAGE 683

MGA 3888208
EX 13743-0006

the process only leaving behind the polyurethane samples. Similar to the full version, copyright subsisting in the mini version of the wax models, silicon rubber moulds and polyurethane samples belong to the Plaintiff and are covered by the respective assignment exhibited as "LSC-5" and "LSC-7".

14.    The facial decorations and features of the BRATZ dolls are unique and much time, effort and monetary resources have been expended in creating and perfecting them. The Plaintiff commissioned Anne Rhee to design the facial decoration of the BRATZ dolls with the understanding and agreement that all intellectual property rights including copyright shall belong to the Plaintiff. At all material times, Anne Rhee is a resident of and domiciled in USA.

15.    Based on and originated from the initial concept drawings of Mr. Bryant, Anna Rhee drew some decoration directions for the facial decorations for different series of dolls. She then created the original decor or paint masters which are hand-painted facial decorations on a rubber head sculpt of a doll. With the input of Mr. Bryant, Anne Rhee revised the decor masters a number of times until they were perfected being the final version that were used to serve as the benchmark and template from which the original four different BRATZ dolls' individual facial decorations were mass produced by spray masking. Now produced and shown to me marked "LSC-9" is the pile of decoration directions (inclusive those on the 2001 Fall series) made by Anna Rhee from the initial drawings of Mr. Bryant in or about Winter 2000-2001, "LSC-10a-d" are the decor masters hand-painted by Anna Rhee for the 2001 Fall Series in or about Winter 2000-2001 and "LSC-11" is a bundle of documents setting out the

7

EXHIBIT  42

PAGE  684

MGA 3888209
EX 13743-0007

various changes contributed to by Mr. Bryant during the design process. There is now produced and shown to me marked "LSC-12" a copy of the assignment of copyright executed by Anne Rhee in favour of the Plaintiff. Copyright subsisting in the above decor masters and directions and drawings made by Anne Rhee belong to the Plaintiff and are covered by the assignment exhibited as "LSC-12" and the copyright subsisting in "LSC-11" is covered by "LSC-2".

16. The Plaintiff has also registered the design of the first 4 BRATZ in the United Kingdom ("UK") in July 2001. There are now produced and shown to me marked "LSC-13" copy certificates of the registered designs dated 27th July 2001.

17. The full version of the first 4 BRATZ dolls were first published in USA in June 2001 (2001 Fall Series) when they were offered for sale to the general public. The mini version of the first 4 BRATZ dolls were first published in the United States of America in or about March 2002 when they were offered for sale to the general public. Both versions of the BRATZ dolls were available for sale in Hong Kong since December 2002. Now produced and shown to me marked "LSC-14a-d" are samples of the first 4 full version BRATZ dolls in their packaging and "LSC-15a-d" are samples of the first 4 mini version BRATZ dolls in their packaging.

18. The BRATZ dolls are unique in a variety of ways including their oversized heads and individual facial decoration. One thing that has contributed to the success of BRATZ is the oversized eyes and the protrusive mouth that are capable of being decorated with makeup and the diminished size of the nose that serves no decorative purposes.

8

EXHIBIT __4∂__

PAGE __685__



MGA 3888210
EX 13743-0008

Thus, the elements of the face that can be made-up, the eyes and mouth, are exaggerated while the elements of the face that cannot be made-up, the nose, is reduced. In addition, BRATZ make-up is multi-coloured and the eyelashes are exaggerated in size but limited in number of eyelashes. The lipstick is also two-toned in order to draw attention to the lips.

19.   A prominent feature of BRATZ is the snap-on shoes. Mr. Bryant's design of the snap-on shoes can be shown in the concept drawing with 2 identical girls standing in the same posture with four hands demonstrating the interchangeable hairdos and snap on shoes for the BRATZ dolls, the drawing titled "Basic Doll Piece Count" which narrates different interchangeable pieces of BRATZ dolls, inclusive "Pop On / Off Sneakers" and "Pop On / Off Mary Janes" (plat-formed sandals) and the body sketch all exhibited in "LSC-3" hereinabove. The interchangeable shoes are an important part of the play value of BRATZ. By employing snap-on shoes, girls are able to easily change the dolls footwear and it allows many different varieties of footwear to be worn by the dolls.

20.   The current average FOB sales value of the full version and mini BRATZ dolls are US$10.66 and US$4.73 respectively.

21.   The BRATZ dolls and their accessories are marketed and sold in more than 52 countries and places including the European Union, the Americas, the Balkans, the Baltics, Norway, Switzerland, Russia, Ukraine, Poland, Hungary, Czech Republic, Lebanon, UAE, Saudi Arabia, Egypt, Syria, Israel, South Africa, Australia, New

9



EXHIBIT ___4∂___

PAGE ___686___



MGA 3888211
EX 13743-0009

Zealand, Philippines, Indonesia, Taiwan, Thailand, Singapore, South Korea, Japan and Hong Kong.

22.    The BRATZ dolls have their own website at "www.bratzpack.com". The site provides some games, e-greetings and Mix N Match Mall of BRATZ' fashion and hairdos. The site also maintains a fan club known as BRATZ pack and maintain a list of its members. The aim of this fan club is to notify its members of new fashion trends that the BRATZ dolls will wear themselves and launch and marketing thereof. Now produced and shown to me marked "LSC-16" are downloaded copies from the said website.

23.    So far the Plaintiff has spent a total of over US$22 million in advertising and on promotion expenses worldwide in relation to BRATZ.

24.    As mentioned hereinbefore, the BRATZ dolls have become an instant success and they have become collectibles. Considerable media coverage have been given to these dolls and now produced and shown to me marked "LSC-17" is a selection of press cuttings and celebrity photos of the BRATZ pack including Singtao Daily dated 13th December 2002 and South China Morning Post dated 19th January 2003 which reported the official launch of BRATZ dolls in Hong Kong in December 2002.

25.    Another major source of revenue generated by the BRATZ dolls is income derived form merchandising rights by granting non-exclusive licences to other companies worldwide. So far, 120 merchandise licence agreements have been granted in respect of a wide range of products including paper napkins, girls clothing, jewelry, bedding,

10



EXHIBIT ___42___

PAGE ___687___

MGA  3888212
EX 13743-0010

home furnishing, stationery, toiletries, video games, footwear and electrical appliances etc. Pursuant to these licenses, BRATZ branded goods are sold in Spain, Portugal, Australia, New Zealand, Finland, Germany, Austria, Switzerland, France, Belgium, Luxembourg, Mexico, Italy, UK, Ireland, Eire, Greece, Norway, Channel Islands, Brazil, Columbia, Greece, Cyprus, Denmark, Iceland, Sweden, Columbia, Venezuela, Turkey, Peru, Israel, all Central America countries, all Carribean Island countries, Dominican Republic, Ecuador, Venezuela, Bolivia, Paraguay, Chile, UAE, Saudi Arabia, Kuwait, Iran, Lebanon, Syria, Jordan, Egypt, Qatar, Oman, Behrain, Yemen and Hong Kong. The Plaintiff projects an annual licensing revenue of US$12 million per year by year end 2004.

26.     Furthermore, the Plaintiff has granted exclusive distribution rights of the BRATZ dolls to, inter alia, Bandai Espana S.A. in Spain, Vivid Imagination in UK and to Hasbro S.A. in France, Belgium, the Netherlands and Luxembourg.

**The Defendant's Infringing Activities**

27.     By reason of the success of the BRATZ dolls many knock offs have appeared in the market.    The Plaintiff had initiated many court actions against infringers in Hong Kong and elsewhere and interim relief such as Anton Pillers and interlocutory injunctions have been obtained against several of them. In early January 2004, the Plaintiff instructed its legal advisers Messrs. William W. L. Fan & Co., Solicitors ("the Plaintiff's solicitors") to check the booths of the exhibitors of the Hong Kong Toys and Games Fair 2004 ("the Fair") held from 6th–9th January 2004 at the Hong Kong Convention and Exhibition Centre.

11

EXHIBIT ___42___

PAGE ___688___

MGA   3888213
EX 13743-0011

28. The Plaintiff's solicitors then instructed private investigators to attend the Fair to keep a lookout for potential knock offs on 6th January 2004. The investigators have found certain exhibitors, one of which was the Defendant, displaying suspected BRATZ knock offs at their booths. I have read the Affirmation of Lam Yuen Chak of IP Impetus Consultants Limited dated 13th January 2004 and filed on behalf of the Plaintiff and verily believe the contents thereof to be true. Furthermore, a director of the Plaintiff's Product Development (Gifts), Shawn Brower, noted that 7 companies were displaying infringements at the Fair and the Defendant was one of them. Now produced and shown to me marked "LSC-17A" is a copy of Shawn Brower's email with the details of the other 6 companies redacted.

29. Now produced and shown to me marked "LSC-18" is a copy of the latest annual return of the Defendant. It was filed on 7th January 2003. The Defendant has an authorized capital of HK$10,000.00 of which only 2 shares with a nominal value of HK$1.00 each were issued.

30. Based on the information obtained by the investigators from the Defendant, in particular, a catalogue for a series of dolls named "The Twin Sisters" and a Quotation Sheet 2004 which are exhibited to the said Affirmation of Lam Yuen Chak as "LYC-4", the Plaintiff's solicitors lodged a complaint to the organiser of the Fair, Hong Kong Trade Development Council ("HKTDC") for copyright infringement by the Defendant on 6th January 2004, and the said complaint was accepted as valid by HKTDC. Now produced and shown to me marked "LSC-19" are copies of a

12

EXHIBIT 42

PAGE 689

MGA 3888214
EX 13743-0012

complaint letter dated 6th January 2004 from the Plaintiff's solicitors to the Fair Management Office and IPR Form A.

31. Ms. Catherine Ching who is an assistant solicitor to the Plaintiff's solicitors, accompanied by a litigation clerk Mr. Cheung, attended the Defendant's booth (Booth No. 5P07) in the afternoon of 7th January 2004 to examine the infringing dolls displayed thereat and to serve a cease and desist letter. Now produced and shown to me marked "LSC-20" is a copy of the said cease and desist letter.

32. Ms. Ching, during the visit to the Defendant's booth on 7th January 2004 found that apart from the said series of dolls named "The Twin Sisters" which bears a striking resemblance of the full version BRATZ dolls, are two other mini versions of dolls called "Paulina" and "Thalia", the design and facial decoration of which are also substantially similar to mini BRATZ dolls.

33. Despite the Plaintiff's compliant to HKTDC and the said cease and desist letter, the Defendant refused to withdraw from display any of the infringing dolls. Now produced and shown to me marked "LSC-21" are copies of photos of "The Twin Sisters", "Paulina" and "Thalia" taken by HKTDC and an Undertaking dated 8th January 2004 signed by the Defendant to HKTDC refusing to withdraw.

34. In light of the above evidence, the Plaintiff decided to take legal action against the Defendant for copyright infringement. On 9th January 2004, a Writ of Summons against the Defendant was issued.

13

EXHIBIT ___4a___

PAGE ___690___

MGA 3888215
EX 13743-0013

**Serious Issue to be Tried**

35.    I was informed by the Plaintiff's solicitors that the investigators have been unable to obtain a sample doll from the Defendant. However, I have closely examined the said catalogue for "The Twin Sisters" as exhibited to the Affirmation of Lam Yuen Chak and the photos taken by HKTDC, copies of which are exhibited above. I find that "The Twin Sisters", "Paulina" and "Thalia" are obviously slavish copies of the head sculpt and facial decorations of the full version BRATZ dolls and mini BRATZ respectively and it is a clear infringement of the Plaintiff's copyright in BRATZ.

36.    I crave leave to refer to the exhibits "LSC-6" and "LSC-8" the polyurethane samples of the head sculpts of full version BRATZ and mini BRATZ respectively. I would like to draw to this Honourable Court's attention of the shape and configuration of the heads and faces of "The Twin Sisters", "Paulina" and " Thalia" where all the prominent features of the BRATZ dolls are present including in particular the oversized head, eyes and lips and the diminished sized nose.

37.    The similarity between the BRATZ dolls and "The Twin Sisters", "Paulina" and "Thalia" is even more obvious when one looks at them including the facial decoration or makeup on each of the dolls' face. I crave leave to refer to the exhibits "LSC-10a-d", the decor masters and "LSC-9", the drawings. The pattern, style and combination and layers of different colours of the multi-coloured facial decoration or makeup on "The Twin Sisters", "Paulina" and "Thalia" are substantially similar to that of Cloe and Jade of the BRATZ dolls. Even the exaggerated and number of eyelashes are

14

EXHIBIT 4a

PAGE 691



MGA  3888216

EX 13743-0014

present in "The Twin Sisters", "Paulina" and "Thalia".

38.  All of above suggest a strong case of direct copying of the BRATZ dolls. In short, the Defendant has copied the head sculpt and the facial decoration of the BRATZ dolls.

39.  The similarities between the BRATZ dolls and "The Twin Sisters", "Paulina" and "Thalia" and the infringing acts of the Defendant have raised much more than a triable issue for copyright infringement.

**Balance of Convenience**

40.  Many knock offs have appeared in the market due to the success of the BRATZ dolls. In order to save guard the business interests and exclusivity of the BRATZ dolls, the Plaintiff had obtained interim injunctions in Hong Kong against Toys & Trends (Hong Kong) Limited, Cityworld Limited, Double Grand Corporation Limited, Hunglam Toys Company Limited and Union Top (HK) Co. Ltd. The Plaintiff had also taken action in the UK against LB Group Limited and David Halsall International Limited who settled the Plaintiff's claims and paid significant amounts of damages.

41.  As already adverted to hereinabove, one of the main revenue streams of the BRATZ dolls are licence fees. The demand and price of BRATZ licences depend on the exclusivity and popularity of the product.

42.  The FOB value of "The Twin Sisters" ranges from HK$9.20 to HK$11.80 per piece, while full versions of a BRATZ doll is sold at US$10.66. The FOB value of

15

EXHIBIT ___42___
PAGE ___692___



MGA  3888217
EX 13743-0015

"Paulina" and "Thalia" in single packing is HK$5.30 each only while a mini BRATZ is sold at US$4.73. The quotations from the Defendant reflect that the infringing articles are cheap imitations of the BRATZ dolls.

43. BRATZ is popular because of its unique funky and sassy image. I have explained the unique facial decoration of the dolls. "The Twin Sisters", "Paulina" and "Thalia" have copied BRATZ' image in particular the eyes and lips and this will dilute the exclusivity and affect the image of the BRATZ dolls.

44. The continual sale of the cheap imitations will no doubt affect the demand of licences and the prices that the Plaintiff can command. Any dilution in exclusivity and diminution in value of licence fee is a potential loss which is not measurable and cannot be adequately compensated by damages. It is impossible to calculate the monetary loss in this regard.

45. There have already been complaints to the Plaintiff from its exclusive distributors concerning the appearance of infringing dolls on the markets. Now produced and shown to me marked "LSC-22a-c" several complaints from the Plaintiff's distributors concerning discovery of BRATZ knock offs at the Fair:

| *Exhibit Marked* | *Complainant* | *Date of Complaint* | *Form of Complaint* |
|---|---|---|---|
| LSC-22a | Mr. Neil Bandtock of Vivid Imagination, UK | 9th January 2004 | Email |
| LSC-22b | Mr. Jose Antonio of Bandai, Spain | 9th January 2004 | Email |

16

EXHIBIT ___42___

PAGE ___693___



MGA 3888218

EX 13743-0016

LSC-22c    Mr. Jean-Michel CADET of          10th January 2004  Email
           Hasbro, France
           (English translation also attached
           to the this exhibits)

It can be seen that the distributors of BRATZ are seriously and genuinely concerned about the infringing dolls. The continual sale of the cheap imitation would no doubt adversely affect the sales of BRATZ. Thus, the appearance of "The Twin Sisters", "Paulina" and "Thalia" have already caused concern and if the Defendant is not stopped, the Plaintiff's future bargaining power with its distributors would be affected. In particular, Bandai and Hasbro are two of the largest toy companies in the world and the Plaintiff cannot afford to maintain a lesser bargaining position with them by reason of the appearance of cheap imitations. This will affect the terms of the distributorships when they come up for renewal. Cheap imitations also affect the value of licence fees and such loss is irreparable and unquantifiable.

46.    The targeted consumers of BRATZ dolls are girls aged between 4 and 14 years old. They may not all be savvy or mature enough to notice that "The Twin Sisters", "Paulina" and "Thalia" are not of the Plaintiff's manufacture. Many customers may have mistakenly thought this is an addition to the line of BRATZ dolls. Even without taking the aforesaid into account, it would be entirely a matter of guesswork to know how many sales of BRATZ dolls would have been made were it not for the Defendant's unlawful activities. It would be difficult, if not impossible, for the Plaintiff to show any diminution in projected sales attributable to infringing copies on the market.

17

EXHIBIT 42

PAGE 694

MGA  3888219
EX 13743-0017

47.   Since toy safety laws in USA are very stringent, MGAHK has to conduct many safety, reliability and drop tests on the BRATZ dolls. There is no evidence that the Defendant did any of these tests to comply with US legislation. Although there is at present no evidence to show that "The Twin Sisters", "Paulina" and "Thalia" are available for sale in USA at retail level, this does not stop them from reaching North American customers since the Fair is arguably the world's largest toys fair attracting buyers from all over the world, including USA. Due to the apparent similarity between the dolls, any accident caused by defective manufacture of the Defendant's dolls in USA or elsewhere e.g. may falsely be attributed to BRATZ dolls and the Plaintiffs. Again this damage to reputation, especially to a new product is unquantifiable and irreparable.

48.   As shown by the Defendant's latest annual return herein, it is an insubstantial company and its ability to pay damages is in doubt. On the other hand, as shown hereinabove the Plaintiff is a company doing business in a substantial way and it is able and willing to give a cross-undertaking on damages.

49.   As stated in the Affirmation of Lam Yuen Chak, "The Twin Sisters", "Paulina" and "Thalia" were only newly launched and the Defendants have only just embarked on its unlawful activities, the balance of convenience would favour the grant of an injunction for any loss would be easily quantifiable by mould costs and limited advertising expenses incurred unlike on the other hand, the Plaintiff's BRATZ dolls have appeared in the market far longer than the Defendant's dolls. Further, "The

18



EXHIBIT 42

PAGE 695



MGA 3888220
EX 13743-0018

Twin Sisters", "Paulina" and "Thalia" are still in their early stages in marketing, an injunction against would cause only minimal impact on their sales.

50.   It is essential that this Honourable Court grants an interim injunction against the Defendant as soon as possible because orders for Easter which is one of the major peak season for toy industry are normally placed around this time. Further, the Fair has just ended. According to my experience, most of the orders generated from such fair come within the first month immediately after the Fair. I hereby humbly ask that this Honourable Court grants the relief as asked for in the summons.

Affirmed at Messrs. C.L. Chow & Macksion )
Chan, Solicitors, Rooms 501-2, Hang )
Seng Bldg, 77 Des Voeux Road, Central )
Hong Kong )
this 17th  day of January 2004 ------------- )

Before me,

Chau Yiu Chee
Solicitor, Hong Kong SAR
C.L. Chow & Macksion Chan, Solicitors

This affirmation is filed for and on behalf of the Plaintiff.

19

EXHIBIT ___42___

PAGE ___696___

MGA  3888221
EX 13743-0019