QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
  Jon D. Corey (Bar No. 185066)
  joncorey@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. CV 04-09059 and Case No. CV 05-02727 |
| vs. | **MATTEL, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR MISTRIAL** |
| MATTEL, INC., a Delaware corporation, | |
| Defendant. | Date:        August 4, 2008<br>Time:        1:00 pm. |
| AND CONSOLIDATED ACTIONS | **Phase 1**<br>Pre-Trial Conference: May 19, 2008<br>Trial Date:   May 27, 2008 |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................... 1

ARGUMENT ................................................................................................... 2

I.   THE PHASE 1(A) VERDICT HAS NOT BEEN COMPROMISED ............. 2

    A.   A Mistrial Should not be Declared Based on Actual or Implied Bias ........................................................................................................ 2

        1.   Statements During Deliberation Cannot Be Considered For Purposes Of Assessing Bias ................................... 2

            (a)   Juror Testimony About the Deliberative Process is Inadmissible ........................................................ 2

            (b)   Extrinsic Information Is Not At Issue ............... 7

        2.   Even If Juror Statements Were Admissible, MGA Has Not Shown Actual or Implied Bias ...................................... 9

    B.   A Mistrial Should Not Be Declared Based on Voir Dire .................... 13

    C.   A Finding of Bias Would Require an Evidentiary Hearing ................. 16

    D.   Because The Remarks Did Not Influence The Verdict, The Phase 1(a) Verdict Must Stand ................................................................... 18

II.   EVEN IF BIAS HAD AFFECTED THE VERDICT, REDELIBERATION WOULD BE THE PROPER REMEDY ..................... 20

    A.   The Remaining Jurors Were Not Tainted by the Remarks .................. 20

    B.   At Most MGA Would Be Entitled To Redeliberation, Not Mistrial ............................................................................................... 21

III.   GRANTING A NEW TRIAL NOW WOULD DEPRIVE MATTEL OF FUNDAMENTAL APPEAL RIGHTS ................................................... 23

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

Bacon v. Lee,
225 F.3d 470 (4th Cir. 2000) ............................................................... 4

Brown v. United States,
411 U.S. 223 (1973) ............................................................................ 8

Canady v. Runnels,
2006 WL 2331008 (C.D. Cal. 2006) ................................................... 6

Caterpillar, Inc. v. Sturman Indus., Inc.,
387 F.3d 1358 (Fed. Cir. 2004) ......................................................... 19

Cherensky v. George Washington--East Motor Lodge,
317 F. Supp. 1401 (E.D. Pa. 1970) ...................................................... 4

Dyer v. Calderon,
151 F.3d 970 (9th Cir. 1998) ..............................................14, 16, 18, 23

Coughlin v. Tailhook Ass'n,
112 F.3d 1052 (9th Cir. 1997) ........................................................... 16

Duk v. MGM Grand Hotel, Inc.,
320 F.3d 1052 (9th Cir. 2003) ........................................................... 22

Estrada v. Scribner,
512 F.3d 1227 (9th Cir. 2008) ....................................................5, 7, 18

Evans v. United States,
504 U.S. 255 (1992) .......................................................................... 15

Fields v. Brown,
431 F.3d 1186 (9th Cir. 2005) ........................................................... 18

Fields v. Brown,
503 F.3d 755 (9th Cir. 2007) .......................................................... 2, 10

Fields v. Woodford,
309 F.3d 1095 (9th Cir. 2002) ........................................................... 18

Green v. White,
232 F.3d 671 (9th Cir. 2000) ............................................................. 18

Hard v. Burlington N. R. Co.,
870 F.2d 1454 (9th Cir. 1989) ...........................4, 8, 13, 14, 15, 17, 19

Irvin v. Dowd,
366 U.S. 717 (1961) ........................................................................ 9, 10

-ii-

Jiminez v. Heyliger,
   792 F. Supp. 910 (D.P.R. 1992) ................................................................. 19

Jorgensen v. York Ice Mach. Corp.,
   160 F.2d 432 (2d Cir. 1947) ....................................................................... 9

Kansas v. Marsh,
   548 U.S. 163 (2006) .......................................................................... 11, 12

Marcavage v. Bd. of Trustees of Temple Univ.,
   400 F. Supp. 2d 801 (E.D. Pa. 2005) .......................................................... 4

Martinez v. Food City, Inc.,
   658 F.2d 369 (5th Cir. 1981) ...................................................................... 4

Mason v. Mitchell,
   320 F.3d 604 (6th Cir. 2003) ...................................................................... 3

Mateyko v. Felix,
   924 F.2d 824 (9th Cir. 1990) .................................................................... 22

Mattice v. Maryland Cas. Co.,
   5 F.2d 233 (W.D. Wash. 1925) ................................................................ 24

McDonough Power Equipment, Inc. v. Greenwood,
   464 U.S. 548 (1984) .................................................................... 2, 8, 9, 13

Murphy v. Florida,
   421 U.S. 794 (1975) ................................................................................ 11

Murray v. Laborers Union Local No. 324,
   55 F.3d 1445 (9th Cir. 1995) .................................................................... 23

Patton v. Yount,
   467 U.S. 1025 (1984) .............................................................................. 13

Poynter v. Ratcliff,
   874 F.2d 219 (4th Cir. 1989) ...................................................................... 9

Rinker v. County of Napa,
   724 F.2d 1352 (9th Cir. 1983) .................................................................. 19

Rushen v. Spain,
   464 U.S. 114 (1983) .................................................................................. 6

Sanders v. Lamarque,
   357 F.3d 943 (9th Cir. 2004) ................................................................. 9, 15

Sassounian v. Roe,
   230 F.3d 1097 (9th Cir. 2000) .................................................................. 18

Sea Hawk Seafoods v. Alyeska Pipeline Serv. Co.,
   206 F.3d 900 (9th Cir. 2000) .................................................................... 19

Shillcutt v. Gagnon,
    602 F. Supp. 1280 (E.D. Wis. 1985) ........................................................ 5

Shillcutt v. Gagnon,
    827 F.2d 1155 (7th Cir. 1987) ........................................................... 4, 5

Smith v. Phillips,
    455 U.S. 209 (1982) ................................................................ 9, 16, 17

Smith v. Pitman Mfg. Co.,
    952 F.2d 1400, 1992 WL 8182 (9th Cir. 1992) ...................................... 19

Spaziano v. Florida,
    468 U.S. 447 (1984) ........................................................................ 19

Summers v. United States,
    11 F.2d 583 (4th Cir. 1926) .............................................................. 22

Sussman v. Unum Provident Corp.,
    2001 WL 1352789 (C.D. Cal. 2001) ............................................... 17, 18

Tanner v. United States,
    483 U.S. 107 (1987) .............................................................. 2, 3, 5, 6, 17

Tavares v. Holbrook,
    779 F.2d 1 (1st Cir. 1985) ................................................................ 12

Tracey v. Palmateer,
    341 F.3d 1037 (9th Cir. 2003) ........................................................... 17

United States v. Aguon,
    851 F.2d 1158 (9th Cir. 1988) ........................................................... 15

United States v. Angel,
    355 F.3d 462 (6th Cir. 2004) .............................................................. 9

United States v. Angulo,
    4 F.3d 843 (9th Cir. 1993) ................................................................ 16

United States v. Bussell,
    414 F.3d 1048 (9th Cir. 2005) ........................................................... 17

United States v. Davis,
    960 F.2d 820 (9th Cir. 1992) .............................................................. 6

United States v. Duzac,
    622 F.2d 911 (5th Cir. 1980) .............................................................. 4

United States v. Foghorn,
    2006 WL 4017477 (D.N.M. 2006) .................................................. 4, 12

United States v. Gonzalez,
    214 F.3d 1109 (9th Cir. 2000) ....................................................... 11, 18

United States v. Hanley,
190 F.3d 1017 (9th Cir. 1999) ................................................................. 9

United States v. Heller,
785 F.2d 1524 (11th Cir. 1986) ......................................................... 5, 13

United States v. Hendrix,
549 F.2d 1225 (9th Cir. 1977) ................................................................. 9

United States v. Henley,
238 F.3d 1111 (9th Cir. 2001) .......................................................... 5, 13

United States v. Hyatt,
2007 WL 1454280 (E.D. Cal. 2007) ..................................................... 10

United States v. Ladd,
885 F.2d 954 (1st Cir. 1989) .................................................................. 22

United States v. Martinez-Martinez,
369 F.3d 1076 (9th Cir. 2004) .............................................................. 18

United States v. McClinton,
135 F.3d 1178 (7th Cir. 1998) ......................................................... 12, 21

United States v. McFarland,
34 F.3d 1508 (9th Cir. 1994) ................................................................. 23

United States v. Roach,
164 F.3d 403 (8th Cir. 1998) .................................................................. 4

United States v. Sarkisian,
197 F.3d 966 (9th Cir. 1999) ........................................................... 20, 21

United States v. Shapiro,
669 F.2d 593 (9th Cir. 1982) ................................................................ 18

United States v. Smith,
424 F.3d 992 (9th Cir. 2005) ................................................................ 17

United States v. Wood,
299 U.S. 123 (1936) .............................................................................. 10

In re Victory Const. Co., Inc.,
9 B.R. 570 (Bankr. C.D. Cal. 1981) ..................................................... 24

Wadley Southern Ry. Co. v. State of Georgia,
235 U.S. 651 (1915) .............................................................................. 24

Wainwright v. Witt,
469 U.S. 412 (1985) ................................................................................ 2

Williams v. Price,
343 F.3d 223 (3d Cir. 2003) ............................................................... 3, 6

In re Winship,
   397 U.S. 358 (1970) ........................................................................ 19

## Statutes

Federal Rules of Civil Procedure

   Rule 47 ............................................................................... 10, 22

   Rule 47(c) ........................................................................... 10, 23

   Rule 48 ..................................................................................... 20

Federal Rules of Criminal Procedure

   Rule 24(c) ................................................................................. 23

Federal Rules of Evidence

   Rule 606 .......................................................... 4, 5, 6, 8, 12, 17, 20

   Rule 606(b) ............................................................................. 2, 3

## Other Authorities

3 Weinberg, Weinberg on Evidence, § 606.04[5][a] ................................. 5

## <u>Introduction</u>

It is beyond legitimate dispute that nine fair, honest, impartial jurors returned a unanimous verdict against defendants.  After those nine jurors reached their verdict but before it was returned, a tenth juror made an inappropriate ethnic remark that was condemned by the other jurors.  The Court found the remark had no effect on the jury's verdict.  And yet, because it was made, MGA insists that the verdict, reached after hearing two months of evidence, must be summarily tossed.  Neither the law nor the facts require such a result.  Like the Court and the other jurors, Mattel condemns the remark that was made.  But it does not justify a mistrial.

MGA does not even claim that Juror No. 8's remark actually influenced or tainted the verdict.  Instead, it claims the remark reveals the juror had preconceived notions, and "must have" been biased all along.  But as the Supreme Court has repeatedly explained, having preconceived notions--even abhorrent ones--is very different from being "biased" in the legal sense relevant here.  Such bias requires proof that a juror did not set aside any such notions and reach her decision on the basis of the evidence presented.  While the law grants wide berth to counsel to use voir dire to ferret out jurors whose experiences or preconceptions may raise questions about impartiality, once a jury has been impaneled both the procedural rules for uncovering bias and the substantive standards governing its assessment change dramatically.  The deliberative process is strictly protected.  The burden of proving actual or implied bias is substantial.  Proof of preconceptions does not suffice.

Defendants have not cited to a single civil case where a court granted a mistrial based on a single inappropriate comment which did not affect the verdict, as here.  Mistrials are to be avoided, not invited.  The Court should not break new ground in granting one here.

**Argument**

**I.    THE PHASE 1(A) VERDICT HAS NOT BEEN COMPROMISED**

The Ninth Circuit recognizes three types of juror bias: (1) "so-called McDonough-style bias, which turns on the truthfulness of a juror's responses on voir dire;" (2) "actual bias, which stems from a pre-set disposition not to decide an issue impartially;" and (3) "implied (or presumptive) bias, which may exist in exceptional circumstances where, for example, a prospective juror has a relationship to the crime itself or to someone involved in a trial, or has repeatedly lied about a material fact to get on the jury." Fields v. Brown, 503 F.3d 755, 766 (9th Cir. 2007). MGA cannot meet its burden to show any of them under the legal standards. See Wainwright v. Witt, 469 U.S. 412, 423 (1985) (moving party bears burden of establishing bias).

MGA's primary argument is that Juror No. 8 must be considered biased because of her statements and those of other jurors about their reactions to her remarks. These statements, however, are not admissible to prove Juror No. 8's mental state or thought processes for purposes of impeaching the verdict. Moreover, even if they could be considered, they are insufficient to establish "bias," much less to support a decision voiding the jury's verdict.

    **A.    A Mistrial Should not be Declared Based on Actual or Implied Bias**

        **1.    Statements During Deliberation Cannot Be Considered For Purposes Of Assessing Bias**

            **(a)    Juror Testimony About the Deliberative Process is Inadmissible**

Federal Rule of Evidence 606(b) embodies the "near-universal and firmly established common-law rule" that "flatly prohibit[s]" the admission of juror testimony to impeach a verdict except where an "extraneous influence," like the influence of the media or a newspaper article, affected the verdict. Tanner v. United States, 483 U.S. 107, 117 (1987). The Rule expressly prohibits juror testimony

regarding "***any matter or statement occurring during the course of the jury's deliberations*** or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith." Fed. R. Evid. 606(b) (emphasis added).  In fact, MGA acknowledges that "the contents of the deliberations and any evidence concerning the deliberative process ***are inadmissible*** as a matter of law."  Motion at 8:26-27 (emphasis added).  Yet the only evidence before the Court is juror testimony regarding remarks made during deliberations.  Such evidence may not be considered for what it purportedly shows about the juror's mental processes.

The rule against allowing juror testimony for the purposes of impeaching a verdict is long standing.  In Tanner, the Supreme Court applied it to refuse to vacate a verdict despite juror testimony that jurors drank large amounts of alcohol during deliberations, slept during trial, and bought and sold drugs to each other during deliberations.   The Court explained, "[t]here is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior.  It is not at all clear, however, that the jury system could survive such efforts to perfect it."  Id. at 120; see also id. at 125 ("the legislative history demonstrates with uncommon clarity that Congress specifically understood, considered, and rejected a version of Rule 606(b) that would have allowed jurors to testify on juror conduct during deliberations").

This rule has, with near uniformity, been applied to *preclude* consideration of statements by jurors which allegedly evince their biases – even in capital cases, much less in civil suits.  See, e.g., Williams v. Price, 343 F.3d 223, 233 (3d Cir. 2003) (excluding testimony showing racial bias during deliberations, such as that juror was called a "nigger lover" by another juror); Mason v. Mitchell, 320 F.3d 604, 636 (6th Cir. 2003) (upholding death sentence because juror testimony that

Case No. CV 04-9049 SGL (RNBx)
OPPOSITION TO MGA'S MOTION FOR A MISTRIAL

jurors made racial slurs, presumed the defendant's guilt and slept during trial "involve[d] internal influences, and testimony on those subjects should have been barred by the evidentiary rule prohibiting juror impeachment of a jury"); <u>Bacon v. Lee</u>, 225 F.3d 470, 485 (4th Cir. 2000) (declining in capital case to consider juror's evidence of racial slurs and jokes during deliberations); <u>United States v. Roach</u>, 164 F.3d 403, 413 (8th Cir. 1998) (holding inadmissible juror's affidavit of racial slurs and intimidation during deliberations); <u>Shillcutt v. Gagnon</u>, 827 F.2d 1155, 1159 (7th Cir. 1987) (affirming denial of habeas relief because <u>Rule</u> 606 barred evidence of a juror stating during deliberations, ""Let's be logical.  [The defendant is] black and he sees a seventeen year old white girl--I know the type."); <u>Martinez v. Food City, Inc.</u>, 658 F.2d 369, 372-73 (5th Cir. 1981) (<u>Rule</u> 606(b) barred juror testimony that another juror stated during deliberations that appellant "should be taught a lesson" for hiring Mexican nationals holding green cards); <u>United States v. Duzac</u>, 622 F.2d 911, 913 (5th Cir. 1980) (evidence of "personal prejudices" is inadmissible because prejudice cannot be defined as external influence); <u>United States v. Foghorn</u>, 2006 WL 4017477, at *8, 30 (D.N.M. 2006) (evidence that a juror said "those poor Indians and their alcohol" during deliberations held not admissible to show bias); <u>Marcavage v. Bd. of Trustees of Temple Univ.</u>, 400 F. Supp. 2d 801, 806 (E.D. Pa. 2005) ("Rule 606(b) generally precludes testimony concerning the effect of a juror's racial or other bias on deliberations.  Such biases should be uncovered when the jury is being selected."); <u>Cherensky v. George Washington-- East Motor Lodge</u>, 317 F.Supp. 1401, 1403-04 (E.D. Pa. 1970) (juror incompetent to testify that verdict was motivated by anti-Semitic prejudice); <u>see</u> <u>also</u> <u>Hard v. Burlington N. R. Co.</u>, 870 F.2d 1454, 1461 (9th Cir. 1989) ("Rule 606(b) bars not just juror testimony but evidence of any sort as to a statement by a juror concerning jury deliberations, so long as a juror would be barred from making the same statement in the form of testimony in court.").

OPPOSITION TO MGA'S MOTION FOR A MISTRIAL

Though this rule of evidentiary exclusion may appear harsh, it is consistently applied because "[i]mpeachment of jury verdicts on the ground that a juror has expressed racial or other bias would defeat the important interests of free and open jury deliberations and the finality of judgments." Shillcutt v. Gagnon, 602 F.Supp. 1280, 1282 (E.D. Wis. 1985); see also 3 Weinberg, Weinberg on Evidence, § 606.04[5][a] ("Generally, it seems better to draw the line in favor of juror privacy, in the heat of juror debate all kinds of statements may be made that have little effect on outcome, though taken out of context they seem damning."). The Rules bar consideration of any juror testimony for purposes of assessing bias.[1]

In urging an exception to Rule 606(b) for juror expressions of bias, MGA relies on United States v. Henley, 238 F.3d 1111, 1121 (9th Cir. 2001), where the Court suggested juror testimony about racial prejudice may be permitted to protect a criminal defendant's Sixth Amendment right to a fair trial. Henley, however, involved improper statements *before* the jury commenced deliberations, and the suggestion was dicta. In a more recent opinion, Estrada v. Scribner, 512 F.3d 1227, 1237 (9th Cir. 2008), the Ninth Circuit clarified that, after Henley, it remains an open question in this Circuit whether evidence of bias "disclosed *during deliberations* is admissible despite the prohibition of subjective evidence by Fed.R.Evid. 606(b)." 512 F.3d at 1241 n.14 (emphasis added).

While Estrada states this precise question remains open, Ninth Circuit law is clear, like that of the Supreme Court (see Tanner), that juror statements of their own biases given *outside* of deliberations are not admissible. See Estrada, 512 F.3d at 1237 (evidence of "the subjective 'mental processes'" of the jurors held inadmissible); id. at 1237-38 (holding inadmissible juror's declaration as to his mental process that he agreed to convict because he believed a mistrial would

---

[1]   United States v. Heller, 785 F.2d 1524 (11th Cir. 1986), on which MGA relies, did not address the Rule 606 admissibility issue at all.

1   adversely affect the juror's "probation status" and lead to personal repercussions for

2   juror); United States v. Davis, 960 F.2d 820, 828 (9th Cir. 1992) (refusing to

3   consider juror's post-trial statement that "[f]rom the first day I knew [the defendant]

4   was guilty" under Rule 606).  In light of these authorities and Rule 606's bar against

5   admitting "any matter or statement occurring during the course of the jury's

6   deliberations," there is simply no cause to admit a juror's statement of her purported

7   bias made *during* deliberations.

8        In fact, this Court has so held.  In Canady v. Runnels, 2006 WL 2331008, at

9   *13 (C.D. Cal. 2006), the Court was confronted with allegations from one juror that

10  his colleagues had been influenced by their views about race in judging the

11  defendants.  A court questionnaire sent post-verdict asked, "What did you dislike

12  about your service in this case?"  One juror's answer--"Just the attitudes of others in

13  aspects of the way they judged the defendants. (race, etc.)"--suggested that bias may

14  have influenced the jury.  Id.  The Court refused even to order a hearing to assess

15  the defendants' claim of bias because testimony would have been inadmissible.

16       MGA argues that Juror No. 8's statement establishes she could not have been

17  objective in evaluating the evidence and quotes the comments of Juror No. 6 as to

18  his doubts about Juror No. 8's objectivity.  That is precisely the sort of juror

19  testimony as to mental processes to which Rule 606(b) applies.

20       Jury verdicts should certainly not be based on racial prejudice.  But the

21  Supreme Court has recognized that impeachment of verdicts by breaching the

22  privacy of jury deliberations is a greater evil, and that "several aspects of the trial

23  process," including the role of a proper voir dire, ameliorate any harsh results from

24  the required broad application of Rule 606.  Tanner, 483 U.S. at 127.  As the Ninth

25  Circuit has likewise explained, "[t]he prime safeguard [against juror bias] is voir

26  dire. . . . The whole point of the voir dire process is to elicit information from the

27  venire that may shed light on bias, prejudice, interest in the outcome, competence,

28  and the like so that counsel and the parties may exercise their judgment about whom

1  to seat and whom to challenge." <u>Fields</u>, 503 F.3d at 772 (refusing to grant relief

2  where defendant's counsel did not explore purportedly disqualifying information

3  disclosed in voir dire).[2]

4  **(b)   <u>Extrinsic Information Is Not At Issue</u>**

5  <u>Rule</u> 606(b) does recognize an exception when "extraneous prejudicial

6  information" or "extrinsic evidence"--evidence not admitted in court--is brought

7  before the jury.  Testimony about such information, even juror testimony, may be

8  admissible because a juror who communicates extrinsic facts "in effect becomes an

9  unsworn witness, not subject to confrontation or cross examination," which can

10  cause prejudice.  <u>Estrada</u>, 512 F.3d at 1238.  But MGA does not show that Juror No.

11  8's *presentation of any purported extrinsic evidence* to the jury (her husband's

12  statements about his clients) *prejudiced the jury's verdict*.  Instead, MGA argues

13  that the statement she made *evidences her bias*, which is a very different issue.

14  Even if Juror No. 8's statement could be assessed as potentially impermissible

15  extrinsic evidence considered by the jury (which MGA does not urge), it does not

16  follow that it may also be considered to assess Juror No. 8's mental processes.

17  <u>Estrada</u> itself makes clear that allegations of prejudicial extrinsic evidence

18  presented to the jury are very different from allegations of juror bias.  MGA points

19  out that in criminal cases, actual bias is not subject to a harmless error analysis.  But

20  where a juror commits misconduct in presenting extrinsic evidence, the "misconduct

21  _____

22  [2]   MGA cites to a footnote in <u>Rushen v. Spain</u>, 464 U.S. 114, 121 n.5 (1983), to suggest that evidence of racial bias is admissible under <u>Rule</u> 606(b).  This is incorrect.

23  First, the statement on which MGA relies--that a juror "may testify concerning any mental bias in matters unrelated to the specific issues that the juror was called upon to decide"--is

24  dictum.  <u>See</u> <u>Williams v. Price</u>, 343 F.3d 223, 237-38 (3d Cir. 2003) (discussing <u>Rushen's</u> "dictum").  Nor can it properly be read as a broad exemption of evidence of racial bias

25  from Rule 606(b)'s reach, as <u>Rushen</u> did not even involve a claim of racial bias, but rather a juror whose childhood friend had been murdered by an informant in the case.  <u>See</u>

26  <u>Rushen</u>, 464 U.S. at 115-16; <u>Williams</u>, 343 F.3d at 238 (articulating more limited interpretation of passage from <u>Rushen</u>).  In any event, the cited language does not appear

27  to have survived the Supreme Court's subsequent decision in <u>Tanner</u>, 483 U.S. at 121-22, which held evidence of juror alcohol and drug use--a mental state which unquestionably is

28  (footnote continued)

1    *is* subject to 'harmless error' analysis," even in criminal cases.   512 F.3d at 1238

2    (italics added).  It is precisely for this reason that MGA does *not* argue the statement

3    itself requires a mistrial -- the factors clearly are not satisfied.  "We look to the

4    following factors to determine whether a defendant has suffered prejudice from

5    juror misconduct:  (1) whether the material was actually received, and if so, how; (2)

6    the length of time it was available to the jury; (3) the extent to which the juror

7    discussed and considered it; (4) whether the material was introduced before a verdict

8    was reached, and if so at what point in the deliberations; and (5) any other matters

9    which may bear on the issue of the reasonable possibility of whether the extrinsic

10   material affected the verdict."  Id.

11       MGA does not argue that the extrinsic evidence itself (the husband's

12   experience) affected the verdict.  Nor could it in light of the Court's findings as to

13   the timing of the statement.  There is no claim that the verdict (which had already

14   been reached) was the product of the jury's consideration of Juror No. 8's husband's

15   experience with Iranian clients.  Rather, the thrust of MGA's motion is that Juror

16   No. 8's statement proves she is biased; that a person who could say such things

17   could not be impartial in her judgments.  It is not the jury's reliance on her

18   husband's experience with Iranian clients but her internal mental processes that are

19   at issue.  The difference goes to the core of the deliberative process protected by

20   Rule 606.  The statement is not admissible to show bias.[3]

21

22

23

24   _____

25   "unrelated to the specific issues that the juror was called upon to decide"--inadmissible under Rule 606(b).

26   [3]  In all events, if the Court were inclined to recognize an exception to Rule 606(b) to allow testimony as to what Juror No. 8 said during deliberations for purposes of impeaching the verdict, it cannot, as MGA would have it, allow the testimony as to her

27   statement without also allowing testimony from her and the other jurors as to its lack of impact.  MGA cannot have it both ways.  If the statement is to be considered, so must the

28   testimony that her comments had no impact on the verdict.

**2.** **Even If Juror Statements Were Admissible, MGA Has Not Shown Actual or Implied Bias**

A mistrial cannot be ordered even if the jurors' statements were admissible to show Juror No. 8's mental state.   There is a difference between having preconceptions--even highly inappropriate ones--and being biased under the law. As the Ninth Circuit has explained, "[t]he type of after-acquired information that potentially taints a jury verdict should be carefully distinguished from the general knowledge, opinions, feelings, *and bias* that every juror carries into the jury room." Hard, 870 F.2d at 1461 (emphasis added).    A litigant "is entitled to a fair trial but not a perfect one, for there are no perfect trials."   McDonough, 464 U.S. at 553 (quotations omitted); see also Brown v. United States, 411 U.S. 223, 231-32 (1973) (same).   As Judge Learned Hand stated, "it would be impracticable to impose the counsel of absolute perfection that no verdict shall stand, unless every juror has been entirely without bias, and has based his vote only upon evidence he has heard in court.  It is doubtful whether more than one in a hundred verdicts would stand such a test".   Jorgensen v. York Ice Mach. Corp., 160 F.2d 432, 435 (2d Cir. 1947); see McDonough, 464 U.S. at 553 ("Trials are costly, not only for the parties, but also for the jurors performing their civic duty and for society which pays the judges and support personnel who manage the trials.  It seems doubtful that our judicial system would have the resources to provide litigants with perfect trials, were they possible, and still keep abreast of its constantly increasing case load.").

A fair trial requires that jurors be "impartial" in considering the evidence.  A juror is impartial if she can disregard her preconceptions "and render a verdict based on the evidence presented in court."   Irvin v. Dowd, 366 U.S. 717, 723 (1961); see also United States v. Angel, 355 F.3d 462, 470 (6th Cir. 2004) (same); Poynter v. Ratcliff, 874 F.2d 219, 221 (4th Cir. 1989) (same).  The law does not assume that all jurors have no biases.  Rather, "[t]he proper inquiry is whether juror bias rises to the level of a constitutional deprivation."   United States v. Hanley, 190 F.3d 1017, 1031

1   (9th Cir. 1999); see United States v. Hendrix, 549 F.2d 1225, 1230 (9th Cir. 1977)

2   ("we are not convinced that Hendrix was denied his right to a trial by an impartial

3   jury.  Any juror misconduct or bias did not prejudice Hendrix to the extent that he

4   did not receive a fair trial.").

5        First, there is no basis for a finding of implied bias under Ninth Circuit law.

6   "Implied bias will be found only in 'exceptional' or 'extraordinary' cases." Sanders,

7   357 F.3d at 949 (citing Smith v. Phillips, 455 U.S. 209, 222 (1982) (J. O'Connor

8   concurring)).  In Smith, Justice O'Connor identified the "extreme examples" that

9   might justify a finding of implied bias: "a revelation that the juror is an actual

10  employee of the prosecuting agency, that the juror is a close relative of one of the

11  participants in the trial or the criminal transaction, or that the juror was a witness or

12  somehow involved in the criminal transaction." Smith, 455 U.S. at 222.  Following

13  Justice O'Connor's examples, courts have recognized implied bias only where a

14  juror has an intimate relationship to the issues being decided or to someone involved

15  in the trial.  See, e.g., Fields, 503 F.3d at 766 (citing "a relationship to the crime

16  itself or to someone involved in a trial" or "repeated[] lie[s] about a material fact to

17  get on the jury" as exceptional circumstances supporting a finding of implied bias).

18  Here, Juror No. 8's remarks do not demonstrate the sort of intimate relationship to

19  the issues or individuals in the trial necessary to support a finding of implied bias.

20       MGA also cannot show "actual bias" under Ninth Circuit law.[4]  Unlike

21  implied bias, which is "a bias attributable in law to the prospective juror regardless

22  of actual partiality," United States v. Wood, 299 U.S. 123, 134 (1936), "actual bias"

---

[4]  MGA may claim that Mattel acknowledged Juror No. 8's bias in the legal sense in agreeing she should be removed from the jury.  Not so.  Mattel agreed that Juror No. 8 should be excused because her statements "offended and upset several of the jurors" and, if anything, her continued service threatened to cause unfairness to Mattel.  It was entirely appropriate to excuse Juror No. 8, but that does not require a mistrial.  See, e.g., Fed. R. Civ. P. 47(c) ("During trial or deliberation, the court may excuse a juror for good cause."); Fed. R. Civ. P. 47, Ad. Comm. Note ("[T]he court may in appropriate circumstances excuse a juror during the jury deliberations without causing a mistrial.  Sickness, family
       (footnote continued)

is "bias in fact."  Fields, 503 F.3d at 767.  "Actual bias is typically found when a prospective juror states that he can not be impartial, or expresses a view adverse to one party's position and responds equivocally as to whether he could be fair and impartial despite that view."  Id.

A juror is presumed to be impartial.  Irvin, 366 U.S. at 723 (1961); see United States v. Hyatt, 2007 WL 1454280, at *2 (E.D. Cal. 2007) ("In evaluating a claim of juror misconduct [or bias], [the court] begin[s] with the presumption that the juror is impartial [and followed the instructions given by the court].") (citation omitted). The "mere existence" of preconceived notions--even notions regarding guilt or innocence--does not rebut the presumption of a juror's impartiality.  Irvin, 366 U.S. at 723.  "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."  Id.  The Supreme Court has **repeatedly** emphasized this key distinction between having preconceptions and being biased:  "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard.  It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."  Murphy v. Florida, 421 U.S. 794, 800 (1975) (citation omitted).

Moreover, while not necessarily conclusive, "[i]n determining whether a district court has abused its discretion in refusing to remove a juror for actual bias [the Ninth Circuit] accords significant weight to a juror's definitive statement that he can serve impartially," such as the statement made by Juror No. 8 here.  United States v. Gonzalez, 214 F.3d 1109, 1112 n.3 (9th Cir. 2000).  MGA's claims that Juror No. 8's statement that she could serve impartially "should be disregarded" or

_____

emergency or ***juror misconduct that might occasion a mistrial*** are examples of appropriate grounds for excusing a juror.") (emphasis added).

1   are "irrelevant" are incorrect; it is entitled to "significant weight" under the law.  Id.

2   Further, the Court instructed the jury to consider only the evidence and to disregard

3   any preconceptions they might have.[5]  The jurors are presumed to have done so.

4   See, e.g., Kansas v. Marsh, 548 U.S. 163, 179 (2006).

5       There is no evidence that any preconceived notions Juror No. 8 had affected

6   her verdict in this case.  To the contrary, Juror No. 8, in the Court's questioning,

7   sought to minimize the import of her remarks,[6] and the remaining jurors rejected

8   them.[7]  This is consistent with the timing of the remark itself.  It was only "after the

9   jury had reached agreement on the Verdict Form questions that were ultimately

10  returned unanimously" that Juror No. 8 remarked that her husband had a past

11  experience that was consistent with her assessment of the evidence.[8]  The evidence

12  does not rebut the presumption that Juror No. 8 followed the Court's instructions to

13  disregard any preconceptions and consider only the evidence when deliberating.

14      Even in criminal trials, courts have held that a juror's grossly inappropriate

15  ethnic or racial slurs do not necessarily warrant a finding of actual bias.  For

16  example, in United States v. McClinton, 135 F.3d 1178, 1184 (7th Cir. 1998), two

17  jurors noticed that a woman sat with one African-American defendant one day, and

18  with the other African-American defendant on another.  One juror said the

19  defendants passed her around "like the coke," and another responded, "like a

20  commodity."  One said, "They do that, you know.  That's what they do."  The

21  district court interviewed both jurors and excused one, but *refused* to excuse the

22  other, concluding he could "put aside his feelings and deliberate fairly and

23

24      [5]   May 27, 2008 Trial Transcript at 54:3-8, attached as Exhibit 2 to the concurrently
        filed declaration of B. Dylan Proctor ("Proctor Dec.") ("You must follow the law as I give
25      it to you whether you agree with it or not, and you must not be influenced by any personal
        likes or dislikes, opinions, prejudices, or sympathy that means that you must decide the
26      case solely on the evidence before you.  You will recall that you took an oath to do so
        when we assemble last week."); July 10, 2008 Trial Transcript at 4796:17-24 (same),
27      Proctor Dec., Exh. 3.
        [6]   See Order Regarding Juror No. 8 [Docket No. 4155], Finding of Fact No. 1.
28      [7]   Id., Finding of Fact No. 3.

1   impartially in this case".   The Seventh Circuit affirmed: "if we accepted the

2   defense's argument, then we would be saying that this Court does not believe that

3   jurors can set aside a statement they have heard or an impression they have.  We

4   believe this notion underestimates a vast number of potential jurors."  <u>Id.</u> at 1188.

5   <u>See also</u> <u>Tavares v. Holbrook</u>, 779 F.2d 1, 1-2 (1st Cir. 1985) (now Justice Breyer

6   holding that jurors who had referred to an African-American defense witness by

7   stereotypical name could still be fair and impartial); <u>United States v. Foghorn</u>, 2006

8   WL 4017477, at *8, 30 (D.N.M. 2006) (evidence that a juror said "those poor

9   Indians and their alcohol" during deliberations did not show bias).[9]

10          Mattel does not in any way condone the comments made by Juror No. 8.  But

11   they are insufficient under the law to rebut the essential presumption that, whatever

12   individual comments may be made in the jury room, jurors will follow the Court's

13   instructions and reach their judgments based on the evidence presented.[10]

14          **B.      A Mistrial Should Not Be Declared Based on Voir Dire**

15          MGA also argues that it is entitled to a mistrial because Juror No. 8 allegedly

16   failed to disclose her bias during voir dire.  MGA's argument is wrong on the facts

17   and contrary to Ninth Circuit law.

18          The Supreme Court and Ninth Circuit have long held that pre-trial voir dire is

19   the time for ferreting out potential biases.  <u>McDonough Power Equipment, Inc. v.</u>

20   <u>Greenwood</u>, 464 U.S. 548, 554 (1984); <u>Hard v. Burlington N. R. Co.</u>, 870 F.2d

---

[8]   <u>Id.</u>, Finding of Fact No. 4.

[9]   In both <u>McClinton</u> and <u>Tavares</u>, unlike here, the jurors made their offensive remarks *before* jury deliberations commenced.  And <u>Foghorn</u> actually held that Rule 606 precluded the evidence, but ruled it insufficient to even require a hearing in the alternative.

[10]   Defendants cite <u>United States v. Henley</u>, 238 F.3d 1111 (9th Cir. 2001), as an example of a case where a single use of a racial slur was enough to establish bias.  But <u>Henley</u> never made that finding.  Rather, the Court found, in assessing voir dire honesty issues, that "it is necessary to determine precisely what [the juror] did or did not say before evaluating the truthfulness of his voir dire responses."  <u>Id.</u> at 1121.  Defendants also rely on <u>United States v. Heller</u>, 785 F.2d 1524 (11th Cir. 1986).  But that case involved far more than the isolated comment at issue here--there were numerous anti-Semitic jokes and comments made by multiple jurors throughout trial and deliberations, greeted by "gales of laughter."  <u>Id.</u> at 1525-1526.

1454, 1461 (9th Cir. 1989) ("Voir dire questioning is the proper method of uncovering prejudicial character traits of potential jurors."). "Voir dire has long been recognized as an effective method of rooting out [ ] bias, especially when conducted in a careful and thoroughgoing manner." <u>Patton v. Yount</u>, 467 U.S. 1025, 1038 n.13 (1984) (citation omitted). The emphasis on voir dire as the appropriate time and place for addressing possible bias respects the resources of the Court, the parties, and the jurors.

To establish bias based on alleged dishonesty at voir dire, "a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." <u>McDonough</u>, 464 U.S. at 556. MGA points to no evidence that Juror No. 8 failed to honestly answer any questions on voir dire. The evidence shows the contrary.

MGA had every opportunity to specifically question prospective jurors during voir dire about their preconceptions and potential biases based on ethnicity. It chose not to do so. Instead, counsel chose to use voir dire to "educate" the jury as to defense themes, rather than ask factual questions designed to actually ferret out potential ethnic biases or preconceptions or other relevant information.[11] MGA did not ask a single question directly of Juror No. 8. It did not ask Juror No. 8 (or the panel as a whole) whether they or family members had ever done business with Middle Easterners or Persians, or had any negative experiences with anyone of that

_____

[11]   For example, MGA's counsel asked prospective jurors: (1) "How many, and please raise your hand, believe that it is ethical for a company to claim that an employee, by signing an inventions agreement, signs away rights that he had even before he went to work at the company?"; (2) "Do you think it's okay that even though Barbie is an icon and has been around forever, that sometimes competition is good for the marketplace and the consumer?"; (3) "Do you think, then, that just because Barbie has been around for 40 years that it would be ethical for her to stomp out any competition even if it doesn't even look like it?"; and (4) "How many, though, would agree that large powerful corporations are in a far more superior position than an individual employee is with respect to enforcing the terms of employment agreements?" May 20, 2008 Trial Transcript at 303:6-9, 306:19-22, 308:16-19, 310:20-23, Proctor Dec., Exh. 1.

1   ethnicity, or held preconceptions about them.[12]   MGA cannot now claim, after a

2   verdict has been reached, that it should be set aside for alleged bias when MGA

3   failed to utilize the procedures established to uncover such bias.  See Hard, 870 F.2d

4   at 1460 (denying new trial; if plaintiff's counsel wanted to know about juror's

5   previous dealings with defendant, "he should have asked" during voir dire).  It is not

6   as though Juror No. 8 "lied" by claiming that she had no opinions or negative

7   experiences with Iranians when in fact she did; she was simply never asked.

8   Compare Dyer v. Calderon, 151 F.3d 970, 981-83 (9th Cir. 1998) (juror lied during

9   voir dire in capital case by stating that neither she nor any member of her family had

10   been victim of a crime when in fact her brother had been murdered, she herself had

11   been repeatedly victimized, and her estranged husband had been arrested for rape).

12        MGA attempts to excuse its failure to make inquiries by asserting it was the

13   jurors' duty to volunteer their preconceptions in response to questions as general as,

14   "Is there any reason that you cannot be a fair and impartial juror in this case?"[13]

15   This argument is contrary to Ninth Circuit law.  In United States v. Aguon, 851 F.2d

16   1158, 1170 (9th Cir. 1988), overruled on other grounds, Evans v. United States, 504

17   U.S. 255 (1992), the defendant claimed a juror who was under investigation for a

18   similar offense failed to volunteer that information during voir dire in response to

19   questions about the jurors' ability to be impartial.  The Ninth Circuit, en banc, held

20   there could be no finding of voir dire dishonesty bias because the juror was not

21   asked a specific question about whether he was under investigation, specifically

22   rejecting the argument MGA makes now -- that a juror has a duty to volunteer any

23   purported or potential biases in response to general inquiries regarding her ability to

24

25       [12]   The closest it came was counsel's question to the entire panel whether "the mere

26   fact that [an individual is] not born in the United States should disqualify him from ever pursuing [the American dream]."  May 20, 2008 Trial Transcript at 318:25-319:4, Proctor

27   Dec., Exh. 1.  MGA does not contend, and there is no evidence, that Juror No. 8 believes immigrants cannot pursue the American dream.

28       [13]   MGA's Motion at 6 (citing a voir dire question posed by the Court).

1  be impartial.  Id. at 1170; see also Hard, 870 F.2d at 1459-60 (discussing Aguon);

2  Sanders v. Lamarque, 357 F.3d 943, 949 (9th Cir. 2004) (juror not dishonest in voir

3  dire where she did not disclose that she had lived in the area and her sons had a

4  background with gangs because "[a]ll of the questions posed by the trial court

5  relating to familiarity with the neighborhood were couched in the present tense" and

6  "the questions relating to gangs . . . expressly asked about discrete and particular

7  contacts with gangs and [were] not open-ended queries into all possible contacts

8  with gangs or gang members.").

9  　　　Further, MGA has not shown that Juror No. 8 was lying when she told the

10 Court she could and would be fair and impartial in evaluating the evidence, without

11 regard to her personal experiences or preconceptions.  MGA's suggestion otherwise

12 is circular.  According to MGA, (1) Juror No. 8 "must have harbored bias"[14] because

13 she later made an inappropriate comment in the jury room; (2) she was dishonest on

14 voir dire because she failed to disclose that bias when asked generally if she could

15 be fair; and (3) her dishonesty on voir dire proves she is biased.  But, as discussed,

16 the evidence does not show she had "actual bias" within the meaning of the law.[15]

17 　　　　**C.　A Finding of Bias Would Require an Evidentiary Hearing**

18 　　　Under no circumstances would it be appropriate for the Court to grant a

19 mistrial at this point based on juror bias.  Under the law, although the Court has

20 discretion to *deny* a request for an evidentiary hearing, an evidentiary hearing is

21 required to test allegations of bias before a finding of bias can be made.

22

23 _____

24 [14]　Motion at 2.
   [15]　Moreover, a lie, were there one, does not automatically require a mistrial.  Even in
   the criminal context, only where a juror *deliberately* lies during voir dire, and only where

25 that lie clearly bespeaks a lack of impartiality, will the court conclude there is
   impermissible bias.  See Dyer, 151 F.3d at 973 (citing McDonough) ("The Supreme Court

26 has held that an honest yet mistaken answer to a voir dire question rarely amounts to a
   [Sixth Amendment] violation; even an intentionally dishonest answer is not fatal, so long

27 as the falsehood does not bespeak a lack of impartiality."); Coughlin v. Tailhook Ass'n,
   112 F.3d 1052, 1059-62 (9th Cir. 1997) (affirming denial of new trial even though juror

28 *did* lie on voir dire).  MGA has not shown actual partiality, even were there a lie.

1    The Supreme Court "has long held that the remedy for allegations of juror

2 partiality is a hearing in which the defendant has the opportunity to prove actual

3 bias." Smith, 455 U.S. at 215-216; United States v. Angulo, 4 F.3d 843, 847 (9th

4 Cir. 1993) ("the Supreme Court has stressed that the remedy for allegations of jury

5 bias is a *hearing*, in which the trial court determines the circumstances of what

6 transpired, the impact on the jurors, and whether or not it was prejudicial.")

7 (emphasis in original).

8    MGA's motion highlights the reason an evidentiary hearing is necessary

9 before a finding of actual bias can be made.  Because there is much the parties do

10 not know about Juror No. 8's remarks and what they may or may not demonstrate,

11 MGA resorts to speculation on the matter.  For example, MGA speculates her

12 statements were based on conversations with her husband that took place

13 "*presumably* long before the verdict in Phase 1(a)"[16] and her purported bias "*very*

14 *likely* tainted her interpretation of" the evidence.[17]  A mistrial may not be based on

15 speculation.  That is why "the remedy for allegations of juror partiality is a hearing".

16 Smith, 455 U.S. at 215-216.  Yet MGA did not seek any such hearing when Juror

17 No. 8's statements came to light,[18] and does not seek one now.  Its motion fails.[19]

18

19

20 _____

21    [16] MGA's Motion at 14 (emphasis added).
    [17] MGA's Motion at 19 (emphasis added). MGA also speculates that she must have

22 "violated the Court's instruction not to discuss the case." MGA's Motion at 14.
    [18] July 25, 2008 Trial Transcript at 20:14-21:4, Proctor Dec., Exh. 4.

23    [19] Mattel is not suggesting that a hearing is required here.  See Tracey v. Palmateer,
341 F.3d 1037, 1044 (9th Cir. 2003) (an evidentiary hearing is *not* required "any time

24 evidence of juror bias comes to light"); United States v. Smith, 424 F.3d 992, 1012-1013
(9th Cir. 2005) (affirming denial of request for evidentiary hearing where the hearing

25 would have delved into matters excluded by Rule 606(b)); United States v. Bussell, 414
F.3d 1048, 1054-55 (9th Cir. 2005) (juror declaration regarding another juror's speculation

26 that codefendant had pled guilty was inadmissible under Rule 606(b) and, therefore, no
evidentiary hearing or new trial was warranted).  Given the strictures of Rule 606(b), any

27 hearing would have to be circumscribed in the inquiries to be made.  See Tanner, 483 U.S.
at 120 (discussing Smith).  But in the absence of a hearing, the argument that Juror No. 8

28 was not impartial within the meaning of the law is speculative.  The appropriate course is
to deny the motion outright.

1

2

**D.** **Because The Remarks Did Not Influence The Verdict, The Phase 1(a) Verdict Must Stand**

3

4

5

6

7

"Where a losing party in a civil case seeks to impeach a jury verdict, it must be shown by a preponderance of the evidence that the outcome would have been different."   Hard, 870 F.2d at 1461; see also Sussman v. Unum Provident Corp., 2001 WL 1352789, at *2 (C.D. Cal. 2001).   Here, there can be no doubt that Juror No. 8's remarks had no bearing on the verdict.

8

9

10

11

12

13

14

15

16

17

18

19

Granting MGA's request for a mistrial in these circumstances would make this the first civil case in the country in which a jury verdict has been set aside for juror bias based on what is at most harmless error.   Every case which MGA relies on to avoid inquiry into prejudice is a criminal case; in every one of them, the courts invoked the *Sixth* Amendment to support the holding (or dictum).   See, e.g., Estrada, 512 F.3d at 1239 (because "[t]he Sixth Amendment guarantees criminal defendants a verdict by impartial, indifferent jurors," "[t]he bias . . . of even a single juror would violate [Defendant's] right to a fair trial."); Gonzalez, 214 F.3d at 1111 (bias of a single juror violates the "Sixth Amendment guarantee [to] criminal defendants").[20]   In the civil context, there is no authority for finding juror bias to be a structural defect requiring a mistrial notwithstanding its failure to affect the verdict.   There is no such rule.

20

21

22

23

24

The jury deliberated for four days before reaching a verdict, demonstrating that they thoughtfully and conscientiously considered the evidence presented at trial. See Sussman, 2001 WL 1352789 at *2 (finding that three-day jury deliberation indicated "jury thoughtfully considered the issues presented and did so without [extraneous influences] improperly bearing on their decision").   The Court found the

25

26

27

28

[20]   See also Fields v. Brown, 431 F.3d 1186, 1192 (9th Cir. 2005); United States v. Martinez-Martinez, 369 F.3d 1076, 1081 (9th Cir. 2004) (same); Fields v. Woodford, 309 F.3d 1095, 1103 (9th Cir. 2002) (same); Green v. White, 232 F.3d 671, 676 (9th Cir. 2000) (same); Dyer, 151 F.3d at 973 (same); United States v. Shapiro, 669 F.2d 593, 602-03 (9th Cir. 1982) (same); Sassounian v. Roe, 230 F.3d 1097, 1110 (9th Cir. 2000) (same).

juror's "remarks were made toward the end of the deliberation and after the jury reached agreement on the Jury Verdict Form questions that were ultimately returned unanimously."[21]   And the Court's findings were unequivocal that Juror No. 8's remarks did not impact the verdict:

> Although the remarks offended and upset several of the jurors, the remarks did not, in any way, effect or influence the decision made by the jury.  All of the jurors clearly indicated, by both their verbal and non-verbal response to the Court's questioning, that the remarks had no impact on their decision in Phase 1(a).[22]

The Ninth Circuit has made clear that "the constitutional guarantees for criminal defendants do not apply in civil cases.  The burden of proof established in Hard applies."  Smith v. Pitman Mfg. Co., 952 F.2d 1400, 1992 WL 8182, at *1 (9th Cir. 1992).   "Because a deprivation of liberty is qualitatively different from a deprivation of property, heightened procedural safeguards [in criminal cases] are a hallmark of Anglo-American criminal jurisprudence."  Spaziano v. Florida, 468 U.S. 447, 468 (1984).   "[D]ue process, as an expression of fundamental procedural fairness, requires a more stringent standard for criminal trials than for ordinary civil litigation."  In re Winship, 397 U.S. 358, 372 (1970) (Harlan, J., concurring).   In civil cases, prejudice must be shown.  MGA has not shown that the jury verdict was affected by the inappropriate comment.  That alone should dispose of this motion.[23]

---

[21]  See Order Regarding Juror No. 8 [Docket No. 4155], Finding of Fact No. 4.
[22]  Id., Finding of Fact No. 5.
[23]  In a footnote, MGA cites three civil cases that it claims show that "the standards governing the Sixth and Seventh Amendment rights to a fair and impartial jury are the same."  MGA's Motion at 12 n.4.  However, those cases merely stand for the proposition that the same standard is used *when assessing the impact of an extraneous influence on the jury.*  Sea Hawk Seafoods v. Alyeska Pipeline Serv. Co., 206 F.3d 900, 906 (9th Cir. 2000) (holding standards same in civil and criminal cases in determining whether extraneous influence affected verdict); Rinker v. County of Napa, 724 F.2d 1352, 1354 (9th Cir. 1983) (same).  As discussed, that is not at issue here, and in any case MGA cannot meet the standard.  Caterpillar, Inc. v. Sturman Indus., Inc., 387 F.3d 1358, 1371 n.2 (Fed. Cir. 2004), also cited by MGA, held only that in determining what types of "extraordinary circumstances" warrant a finding of implied bias, the reasoning of Sixth Amendment cases is "germane" to civil cases.  The one civil case cited by MGA in which a new trial was granted, Jiminez v. Heyliger, 792 F. Supp. 910, 918 (D.P.R. 1992), like Alyeska, involved ex parte communications with jurors, not bias, and in any case itself held that jury misconduct in the civil context does not give rise to a "per se" new trial rule.

1  **II.     EVEN IF BIAS HAD AFFECTED THE VERDICT,**
2          **REDELIBERATION WOULD BE THE PROPER REMEDY**

3          Even assuming an evidentiary hearing were to establish that Juror No. 8 was

4  "biased" under legal standards and that this bias affected deliberations adversely

5  against MGA, these problems can be cured by instructing the jury—now sitting

6  without Juror No. 8—to redeliberate on Phase 1(a).  Likewise, there is no reason

7  why the jury cannot fully consider the evidence in Phase 1(b) and issue a verdict.

8  As the Court has found, the remaining jurors were and are completely impartial in

9  their decision-making.   There is no reason why they may not reconsider the

10  evidence and come to a new verdict.[24]

11          **A.     The Remaining Jurors Were Not Tainted by the Remarks**

12          The remaining jurors are unbiased and impartial.  The Court found that Juror

13  No. 8's remark had no impact on the other jurors' impartiality in Phase 1(a), and

14  that it would have no impact in Phase 1(b).[25]  If anything, one of the jurors said she

15  might be biased against Mattel, not MGA.[26]  Yet for MGA to succeed in rejecting

16  this jury, it must show not only that Juror No. 8 was biased, but that the rest of the

17  jury cannot consider the evidence impartially.  It cannot do so.

18          MGA suggests that the Court "may not inquire into whether [Juror No. 8's

19  alleged] bias actually affected (or would affect) deliberations" because it would

20  "risk improperly encroaching on territory forbidden by Fed. R. Evid. 606."[27]  This,

21  however, is irrelevant to the question of juror impartiality *going forward*, before

22  deliberations or redeliberations begin.  Inquiries into whether jurors, prospectively,

23  can be impartial are of course proper.  That is voir dire, and by its very terms Rule

24  606 is limited to "inquir[ies] into the validity of a verdict or indictment."  Assuming

---

[24]   The Federal Rules permit a jury of as few as six jurors, and the current jury has nine members.  See Fed. R. Civ. P. 48.

[25]   See Order Regarding Juror No. 8 [Docket No. 4155], Findings of Fact Nos. 5, 7.

[26]   Id., Finding of Fact No. 6.

[27]   Motion at 17-18.

1  the existing verdict were impeachable, the Court has already found that the

2  remaining jurors are impartial, such that they may appropriately deliberate in Phase

3  1(b), and redeliberate on Phase 1(a), without Juror No. 8.

4       The Ninth and other Circuits have confirmed that a juror may be removed for

5  cause, with others left to continue.  United States v. Sarkisian, 197 F.3d 966, 980

6  (9th Cir. 1999), is instructive.  In that case, an alternate juror made racist statements

7  regarding gypsies, an ethnic group to which he believed defendants belonged.  The

8  court conducted an interview of the remaining jurors, stated that it was "110 percent

9  satisfied that we have an unbiased, unprejudiced jury," and denied a mistrial motion.

10  Id. at 982.  The Ninth Circuit affirmed: "This court has held that when a wise and

11  experienced judge, who presided at the trial and observed the jury, comes to such a

12  conclusion, it is not for us to upset it.  The trial judge was in a better position than

13  we are to determine whether what happened was prejudicial."  Id.  Similarly, in

14  McClinton, the defendant tried to argue that an entirely new jury was necessary after

15  two jurors made remarks critical of the defendants and their race. 135 F.3d at 1184.

16  The district court interviewed each of the jurors, excused one and not the other, and

17  refused to impanel a new jury.  The Seventh Circuit affirmed.

18       If we accepted the defense's argument [that an entirely new jury was
19       necessary], then we would be saying that this Court does not believe
     that jurors can set aside a statement they have heard or an impression
     they have. We believe this notion underestimates a vast number of
20       potential jurors . . . . No court of appeals has established a per se rule
     that district courts must declare a mistrial in this situation, and we
21       refuse to do so today.

22  Id. at 1188.  Just as in Sarkisian and McClinton, this Court appropriately conducted

23  an investigation and found that simply hearing an inappropriate remark by one juror

24  did not taint the entire jury.  Ninth Circuit law respects this finding.

25      **B.**     **At Most MGA Would Be Entitled To Redeliberation, Not Mistrial**

26       Since the jury that remains is a proper jury, this Court, if it has any doubt as to

27  the verdict already reached, may set aside that verdict and have the jury redeliberate

28  on the evidence in the absence of Juror No. 8.  Mattel believes any such procedure is

unnecessary (and objects to it), but it is the most relief MGA could plausibly be entitled to and is far preferable to the enormous waste of resources that retrying this entire case before an entirely new jury would entail.  Other courts have used redeliberation in exactly this way, to eliminate any possible harm to a defendant.

Thus, in <u>United States v. Ladd</u>, 885 F.2d 954 (1st Cir. 1989), the judge failed to give an instruction requested by the defendant but, after the jury reached a verdict of guilty, changed his mind.  He refused to accept the guilty verdict, gave the instruction and resubmitted the case to the jury.  The appellate court affirmed: "While we do not suggest that the court's belt-and-suspenders approach was necessary, it certainly served to obviate any doubt."  <u>Id.</u> at 960-961.  Similarly, in <u>Summers v. United States</u>, 11 F.2d 583 (4th Cir. 1926), the judge inadvertently instructed the jury out of the presence of the defendant.  The judge set aside the verdict, reinstructed the jury in the defendant's presence and sent them back to deliberate again.  This too was affirmed.  <u>Id.</u> at 585-587.  Just as there, any claimed harm to MGA can be repaired by reinstructing the jury and resubmitting the case.

In other circumstances as well, the law favors redeliberation over granting a new trial because fairness and efficiency are best served by resubmitting the matter to the same jury.  <u>See, e.g.</u>, <u>Duk v. MGM Grand Hotel, Inc.</u>, 320 F.3d 1052, 1058 (9th Cir. 2003) ("[W]hen the jury is still available, resubmitting an inconsistent verdict best comports with the fair and efficient administration of justice."); <u>Mateyko v. Felix</u>, 924 F.2d 824, 827 (9th Cir. 1990) ("Permitting the trial court in its discretion to resubmit inconsistent answers for clarification promotes both fairness and efficiency.").  The same rationale applies here.  Each side has presented its evidence to the jury over the course of months, and an unquestionably unbiased jury that has heard that evidence is available.  Any purported infirmity in the verdict should, at most, be addressed by resubmitting the case to this jury.

That the jurors have already commenced deliberations is no reason to prevent further deliberation.  In fact, the <u>Federal Rules</u> specifically call for the excusal of a

1   juror during deliberations as a means to *avoid* a mistrial.  See Fed. R. Civ. P. 47 Ad.

2   Comm. note ("[T]he court may in appropriate circumstances excuse a juror during

3   the jury deliberations without causing a mistrial.  Sickness, family emergency or

4   *juror misconduct that might occasion a mistrial are examples of appropriate*

5   *grounds for excusing a juror*.") (emphasis added); see also Murray v. Laborers

6   Union Local No. 324, 55 F.3d 1445, 1452 (9th Cir. 1995) ("District court judges

7   must have ample discretion to control their dockets.  The removal of Juror Giancoli

8   for good cause early in the day in order to allow the rest of the jury to continue

9   deliberating was entirely proper.").   The fact that a tainted juror has engaged in

10  deliberations -- at most what has happened here -- does not require a mistrial; the

11  preferred route is merely to excuse that juror.  The jury may redeliberate now that

12  Juror No. 8 has been excused.[28]   For these same reasons, the jury is also fully

13  capable of issuing a verdict in Phase 1(b), and should be permitted to do so.

14  ## III.   GRANTING A NEW TRIAL NOW WOULD DEPRIVE MATTEL OF

15  ## FUNDAMENTAL APPEAL RIGHTS

16       In all events, there is one thing the Court clearly should not do--grant MGA's

17  motion now, before the 1(b) verdict is in.  Taking Phase 1 to completion would

18  create a complete record and preserve MGA's rights, including its right to appeal.  A

19  decision to grant the motion now and terminate trial, however, could not be undone

---

21  [28]   Dyer v. Calderon, 151 F.3d 970 (9th Cir. 1998), includes dicta stating that
22  redeliberation may not have been an available remedy in that case.  See id. at 979 n.10.
    This dictum merely recited the procedural rules for criminal cases as they existed at the
23  time, which do not pertain here.  In 1998, the Federal Rules of Criminal Procedure
    prohibited replacement of jurors once deliberation had begun, absent
    waiver by the defense.  See United States v. McFarland, 34 F.3d 1508, 1511 (9th Cir.
24  1994) ("Once the jury begins deliberations, it is error in the Ninth Circuit to substitute an
    alternate for a regular member who has to be discharged, unless there has been an express
25  waiver of Rule [of Criminal Procedure] 24(c) by the defendant.").  Compare this with the
    *civil* rule, and the current version of the criminal rule, modified in 1999.  Fed. R. Civ. P.
26  47(c) ("During trial *or deliberation*, the court may excuse a juror for good cause.")
    (emphasis added); Fed. R. Crim. Proc. 24(c) ("If an alternate replaces a juror after
27  deliberations have begun, the court must instruct the jury to begin its deliberations anew.").
    The rules, including the new rules post-*Dyer*, embrace redeliberation as a means to *avoid* a
28  mistrial.

and would risk unfairly denying Mattel any practical right to appeal.  Indeed, MGA has made claims which, if accepted, would require the entire case to be retried ***even if*** it were decided on appeal that a mistrial should not have been granted.

The stakes are high for both Mattel and MGA.  For Mattel's part, counsel has not found a single instance, nor has MGA cited any, where a court granted a mistrial in a civil case on the basis of a single remark made by a juror about a party's race or ethnicity, as is the case here.  It is thus important that the parties' rights to appeal be preserved, and not rendered illusory.  "[T]he right to a judicial review must be substantial, adequate, and safely available," not "merely nominal and illusory." Wadley Southern Ry. Co. v. State of Georgia, 235 U.S. 651, 661 (1915); see also In re Victory Const. Co., Inc., 9 B.R. 570, 572 (Bankr. C.D. Cal. 1981) ("The right to an effective appeal is as significant and vital to a litigant as the right to a fair and impartial trial in the first instance.").

Obtaining a complete verdict on both parts of Phase 1 is essential to protecting Mattel's rights on appeal.  If a mistrial were granted now, without completing Phase 1(b) and reaching a verdict as to damages, the jury would presumably be discharged, and could not practically be reconvened.  See, e.g., Mattice v. Maryland Cas. Co., 5 F.2d 233, 234 (W.D. Wash. 1925) ("[T]he jury could not be legally reconvened after being discharged from the case.").  Yet, MGA also has claimed that a ***single*** jury must hear ***both*** parts of Phase 1 as a matter of constitutional law.  In connection with the motions on trial phasing, it argued:

> ***The Seventh Amendment precludes*** separating Mattel's claims for damages and liability into two separate trials because its damages claims arise from the same underlying operative facts as Mattel's claims for breach of contract, breach of fiduciary duty, breach of duty of loyalty, and conversion, as well as the counterclaims discussed herein.  Courts have consistently held that where the determination of liability and damages involves a significant overlap of facts, the Seventh Amendment demands that the same jury determine both

questions.[29]

While Mattel disagrees with this argument, the Court ordered that both damages and liability would be tried before a single jury without resolving the issue.

In light of the possibility that a court could ultimately rule that the same jury *must* decide both liability and damages in this case, the Court should allow the trial to proceed to a final Phase 1(b) verdict. Should it not do so, Mattel could be deprived of meaningful appellate review. Even if Mattel were successful on appeal in arguing that a mistrial should not have been granted, the Phase 1(a) verdict would still be in jeopardy, and arguably could not be reinstated, since the same jury would no longer be available to determine damages. Conversely, if the trial is completed, and even if this Court later decides a mistrial is necessary, a later appellate decision in Mattel's favor would require simply reinstating the verdict.

The parties have spent many millions of dollars and several months presenting their cases. The Court and the jury have spent months hearing the evidence. The parties have a limited amount of time left to present the balance of their cases. Completing Phase 1(b) comports with both fairness and efficiency. The Court should not grant any mistrial now, since stopping trial just as it is nearing completion risks the possibility that all this effort will be undone to no purpose, and would deny Mattel the full right to appeal any decision granting a mistrial.

DATED:  July 31, 2008                   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


                                        By /s/ John B. Quinn
                                           John B. Quinn
                                           Attorneys for Mattel, Inc.

---

[29]   MGA's Supplemental Brief Regarding Claims to be Tried in Phase One Trial, filed June 20, 2007 (emphasis added), Proctor Dec., Exh. 5.