# EXHIBIT 1

200

1                    UNITED STATES DISTRICT COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3                              - - -

4        **HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING**

5                              - - -

6   MATTEL, INC.,                :   PAGES 200 - 342
                                  :
7             PLAINTIFFS,         :
                                  :
8       VS.                       :   NO. ED CV04-09049-SGL
                                  :   [Consolidated with
9   MGA INC., ET AL.,             :   CV04-9059 & CV05-2727]
                                  :
10            DEFENDANTS.         :

11

12

13

14            REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                   RIVERSIDE, CALIFORNIA

16                 TUESDAY, MAY 20, 2008

17                  JURY TRIAL - DAY 1

18                  AFTERNOON SESSION

19

20

21

22                              MARK SCHWEITZER, CSR, RPR, CRR
                                OFFICIAL COURT REPORTER
23   **CERTIFIED**               UNITED STATES DISTRICT COURT
                                 181-H ROYBAL FEDERAL BUILDING
24   **COPY**                    255 EAST TEMPLE STREET
                                 LOS ANGELES, CALIFORNIA 90012
25                               (213) 663-3494

EXHIBIT____1____

PAGE____3____

1   please raise your hand.

2           A number of you have raised your hand with respect

3   to employment agreements, and then some of you have raised

4   your hands and described them as confidentiality or

5   inventions agreements.

6           How many, and please raise your hand, believe that

7   it is ethical for a company to claim that an employee, by

8   signing an inventions agreement, signs away rights that he

9   had even before he went to work at the company?  Would that

10  be ethical?

11          Ms. Voegele, let me go to you for a moment.  Baby

12  carriages.  You've worked for a number of years with this

13  company.  And apparently your agreement prohibits you from

14  going to work for a competitor.

15          Is that clearly spelled out in your contract?

16          PROSPECTIVE JUROR VOEGELE:  Yes.

17          MR. NOLAN:  So when you signed your contract, was

18  it absolutely clear to you every day, when you went to work,

19  that you could never seek employment with a competitor?

20          PROSPECTIVE JUROR VOEGELE:  Yes.

21          MR. NOLAN:  Before going to work for your employer,

22  did you ever have an idea about something that you wanted to

23  pursue on your own?

24          PROSPECTIVE JUROR VOEGELE:  Yes.

25          MR. NOLAN:  How long had you had that idea?

EXHIBIT ___/___

PAGE ___4___

1          MR. NOLAN:  And why do you do that?  Just to show

2     your ideas to other employees?

3          PROSPECTIVE JUROR NGUYEN:  Yes.

4          MR. NOLAN:  And are these ideas that you know would

5     never have been pursued by Northrop Grumman?

6          PROSPECTIVE JUROR NGUYEN:  Yes.

7          MR. NOLAN:  Are you prohibited by signing your

8     agreement to go to work for a competitor?

9          PROSPECTIVE JUROR NGUYEN:  No.

10          MR. NOLAN:  One thing that Mr. Quinn and I can

11     agree on is that this case after today, you'll never hear

12     about Hot Wheels.  They are not involved in the case.  Nor,

13     frankly, is Barbie.

14          But I have to be honest with you.  I was thinking

15     last night of all right, if I'm going to ask all these people

16     these questions, I better be prepared to share something

17     about me.  I mean, my wife still has the Barbies that she had

18     when she grew up.  She's not a collector.

19          But our daughters don't play with Barbie.  Do you

20     think it's okay that even though Barbie is an icon and has

21     been around forever, that sometimes competition is good for

22     the marketplace and the consumer?  Does anybody disagree with

23     the notion that competition is good?

24          Do you think it's ethical to compete?  Does anybody

25     disagree with this proposition?  If a product has been around

EXHIBIT ____1____

PAGE____5____

1  questions to us, and ethics are clearly right and wrong. And

2  I think if it's a specific, there's always an ethical answer

3  of goodness that should be answered to that.

4         So I think you really are asking us to agree with

5  the ethics of good press and principle of ideas. But they

6  shouldn't be colored where something is a standard, like the

7  Barbie that has been so acceptable out there. Even I know

8  about that with my daughters. With my granddaughters, I

9  don't have to get involved with that because I'm not raising

10  them. I don't know this new doll that's come along. But I

11  heard about it.

12         And I think these are serious issues of ethics that

13  have to be worked out, and you are asking us to give you a

14  direct answer.

15         MR. NOLAN: And I appreciate that. But let's just

16  stay talking together for a moment on this point. Do you

17  think, then, that just because Barbie has been around for 40

18  years that it would be ethical for her to stomp out any

19  competition even if it doesn't even look like it?

20         PROSPECTIVE JUROR WEINER: Of course not, it

21  wouldn't.

22         MR. NOLAN: We talked about duty of loyalty,

23  Mr. Quinn did. How many believe that it is a two-way street

24  between an employer and an employee? I see a number of you

25  nodding your head.

EXHIBIT _____1_____

PAGE_____6_____

1   work every day to put in his eight, ten, twelve-hour shift or

2   whatever. And if you don't treat the employees fair, your

3   job as the employer, or your business as the employer won't

4   succeed because you don't have quality people, you know, that

5   are there moving you forward and stuff.

6                MR. NOLAN: Ms. Dome?

7                PROSPECTIVE JUROR DOME: Are you asking if ethics

8   is relative?

9                MR. NOLAN: Yes.

10               PROSPECTIVE JUROR DOME: I don't think it would be

11  relative. If I have a commitment as an employee, I'm going

12  to uphold that even if my employer somehow -- I don't think

13  it negates the commitment that I make. I didn't know if

14  that's what you were asking. If the employer holds up their

15  end. It's not --

16               MR. NOLAN: Both sides of an agreement have to act

17  ethically. Does everybody agree with that?

18               Nobody really would disagree with this in this

19  world.

20               How many, though, would agree that large powerful

21  corporations are in a far more superior position than an

22  individual employee is with respect to enforcing the terms of

23  employment agreements?

24               Miss Beasley?

25               PROSPECTIVE JUROR BEASLEY: You are spinning this

EXHIBIT _____1_____

PAGE _____7_____

```
1              I believe I described it as almost the American
2    dream.  Does anybody here believe, still believe in that
3    American dream?  Does anybody not believe in the American
4    dream, that if you work hard enough, you can be a success?
5              PROSPECTIVE JUROR DEHART:  I think we all should
6    regardless of corporate companies or bad experiences.  We all
7    have our right.  We all have an obligation to believe in
8    that.  It is in our Constitution.  We have the obligation to
9    pursue our own happiness.
10             MR. NOLAN:  Does anybody disagree with what
11   Mr. Dehart said?
12             PROSPECTIVE JUROR CASAS:  Well, okay, like in my
13   case, ability is one thing, and opportunity is another thing.
14   Any man can dream, but their ability is nothing if they don't
15   have an opportunity to like exploit that ability, to reach
16   that dream.  And there's a lot of people that don't have that
17   chance or have that opportunity to even come across a moment
18   like that.  And some people it gets passed by them, you know.
19   Not a lot of people have that opportunity for the American
20   dream, you know, quote, unquote.
21             So like to say that, you know, like everybody can
22   do it, no, not everybody can do it.  Because not everybody
23   has the necessary equipment or opportunities available to
24   them to accomplish that dream.
25             MR. NOLAN:  Do you think, though, that if the
```

EXHIBIT _____1_____

PAGE _____8_____

1  opportunity arises and a person is willing to take the risk
2  and reach for that opportunity, that the mere fact that he's
3  not born in the United States should disqualify him from ever
4  pursuing that dream?

5         PROSPECTIVE JUROR CASAS:  No, because if you just
6  look at it, like okay, who hasn't seen that one, that movie,
7  "Pursuit of Happyness."  That guy had nothing, and he made
8  something of himself.  He made it an overdrive in his life to
9  pursue that dream.  If you sacrifice so much and if you offer
10 yourself to that dream and if you feel like -- fulfill it,
11 stick your head in it and keep on going and never stop, and
12 you finally do accomplish that, who is to say that somebody
13 else can't come by and take it away from you, you know?
14 You're the one that busted your butt for it.

15        MR. NOLAN:  Is it unethical for someone to come in
16 and try to take away what that person worked so hard to do?

17        PROSPECTIVE JUROR CASAS:  You guys keep using
18 ethics.  But the businesses do that to protect themselves.
19 But if the employee, you know, going up to the employer
20 doesn't like the terms of, you know, of the contract, then
21 they have to debate it, and they have to like come to an
22 accord with that employer to make it possible for him to do
23 other things.

24        Like I have my contract.  But I still have the
25 ability to like do side jobs and stuff like that.  They tried

EXHIBIT _____1_____

PAGE _____9_____

342

1

2

3

4

5

6

7

8

9

10

11

12                    C E R T I F I C A T E

13

14

15          I hereby certify that pursuant to Title 28,

16   Section 753 United States Code, the foregoing is a true and

17   correct transcript of the stenographically reported

18   proceedings in the above matter.

19          Certified on May 20, 2008.

20

21

22        MARK SCHWEITZER, CSR, RPR, CRR
          Official Court Reporter
23        License No. 10514

24

25

EXHIBIT ___1___

PAGE ___10___

# EXHIBIT 2

1

```
 1                UNITED STATES DISTRICT COURT

 2               CENTRAL DISTRICT OF CALIFORNIA

 3                     EASTERN DIVISION

 4                        -  -  -

 5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

 6                        -  -  -

 7   MATTEL, INC.,                  )
                                    )
 8                   PLAINTIFF,     )
                                    )
 9          VS.                     )  NO. ED CV 04-09049
                                    )
10   MGA ENTERTAINMENT, INC., ET. AL., )
                                    )
11                   DEFENDANTS.    )  TRIAL DAY 2,
                                    )  MORNING SESSION
12   AND CONSOLIDATED ACTIONS,      )
                                    )

13

14

15        REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16                  RIVERSIDE, CALIFORNIA

17                 TUESDAY, MAY 27TH, 2008

18                      8:30 A.M.

19

20

21

22

23                THERESA A. LANZA, RPR, CSR
                  FEDERAL OFFICIAL COURT REPORTER
24                3470 12TH STREET, RM. 134
                  RIVERSIDE, CALIFORNIA  92501
25                     951-274-0844
                  WWW.THERESALANZA.COM
```

CERTIFIED COPY

53

1   THE JURY IN.  I'LL GIVE THEM THE PRELIMINARY INSTRUCTIONS, AND

2   THEN WE'LL HAVE OPENING STATEMENTS.

3           (WHEREUPON A BRIEF RECESS WAS HELD.)

4           (WHEREUPON, THE CASE, HAVING BEEN PREVIOUSLY

5           CALLED AND APPEARANCES GIVEN, PROCEEDED

6           AS FOLLOWS:)

7       **THE COURT:**  GOOD MORNING, COUNSEL, AND GOOD MORNING,

8   MEMBERS OF THE JURY.

9           I APOLOGIZE FOR THE TARDY START THIS MORNING, BUT

10  WE'LL CERTAINLY TRY TO GET STARTED RIGHT ON TIME GOING FORWARD.      09:59

11          I'M GOING TO BEGIN WITH SOME VERY PRELIMINARY

12  INSTRUCTIONS TO YOU THIS MORNING, AND THEN WE'RE GOING TO HEAR

13  THE OPENING STATEMENTS BY COUNSEL.

14                      **JURY INSTRUCTIONS**

15      **THE COURT:**  LADIES AND GENTLEMEN, YOU ARE NOW THE           09:59

16  JURY IN THIS CASE.  IT IS MY DUTY TO INSTRUCT YOU ON THE LAW.

17  THESE INSTRUCTIONS ARE PRELIMINARY INSTRUCTIONS TO HELP YOU

18  UNDERSTAND THE PRINCIPLES THAT APPLY TO CIVIL TRIALS AND TO

19  HELP YOU UNDERSTAND THE EVIDENCE AS YOU LISTEN TO IT.  YOU WILL

20  BE ALLOWED TO KEEP THIS SET THROUGHOUT THE TRIAL TO WHICH TO        09:59

21  REFER.  THIS SET OF INSTRUCTIONS IS NOT TO BE TAKEN HOME AND

22  MUST REMAIN IN THE COURTROOM WHEN YOU LEAVE IN THE EVENINGS.

23          YOU MUST NOT INFER FROM THESE INSTRUCTIONS OR FROM

24  ANYTHING I MAY SAY OR DO AS INDICATING THAT I HAVE AN OPINION

25  REGARDING THE EVIDENCE OR WHAT YOUR VERDICT SHOULD BE.  IT IS       10:00

MAY 27, 2008     EXHIBIT ___2___     TRIAL DAY 2, MORNING SESSION

                 PAGE ___12___

54

```
 1   YOUR DUTY TO FIND THE FACTS FROM ALL OF THE EVIDENCE IN THE
 2   CASE.  TO THOSE FACTS YOU WILL APPLY THE LAW AS I GIVE IT TO
 3   YOU.  YOU MUST FOLLOW THE LAW AS I GIVE IT TO YOU WHETHER YOU
 4   AGREE WITH IT OR NOT, AND YOU MUST NOT BE INFLUENCED BY ANY
 5   PERSONAL LIKES OR DISLIKES, OPINIONS, PREJUDICES, OR SYMPATHY.    10:00
 6   THAT MEANS THAT YOU MUST DECIDE THE CASE SOLELY ON THE EVIDENCE
 7   BEFORE YOU.  YOU WILL RECALL THAT YOU TOOK AN OATH TO DO SO
 8   WHEN WE ASSEMBLED YOU LAST WEEK.
 9           IN FOLLOWING MY INSTRUCTIONS, YOU MUST FOLLOW ALL OF
10   THEM AND NOT SINGLE OUT SOME AND IGNORE OTHERS.  THEY ARE ALL    10:00
11   IMPORTANT.
12           THE EVIDENCE YOU ARE TO CONSIDER IN DECIDING THE
13   FACTS OF THIS CASE CONSIST OF THE FOLLOWING:  ONE, THE SWORN
14   TESTIMONY OF ANY WITNESS; TWO, THE EXHIBITS WHICH ARE RECEIVED
15   INTO EVIDENCE; AND, THREE, ANY FACTS TO WHICH THE LAWYERS HAVE   10:00
16   AGREED.
17           IN REACHING YOUR VERDICT, YOU MAY CONSIDER ONLY THE
18   TESTIMONY AND EXHIBITS RECEIVED INTO EVIDENCE.  CERTAIN THINGS
19   ARE NOT EVIDENCE, AND YOU MAY NOT CONSIDER THEM IN DECIDING
20   WHAT THE FACTS ARE.  I WILL LIST THEM FOR YOU.                   10:01
21           ONE:  ARGUMENTS AND STATEMENTS BY LAWYERS ARE NOT
22   EVIDENCE.
23           THE LAWYERS ARE NOT WITNESSES.  WHAT THEY HAVE SAID
24   IN THEIR OPENING -- WHAT THEY WILL BE SAYING IN THEIR OPENING
25   STATEMENTS, WHAT THEY WILL BE SAYING IN THEIR CLOSING ARGUMENTS  10:01
```

112

1      **THE COURT:**  WHY DON'T YOU MEET WITH MR. QUINN AND YOU

2  CAN DISCUSS THIS.  IF YOU CAN AGREE TO IT, GREAT.  IF NOT, I'LL

3  TAKE IT UP AT 1:00.

4      **MR. NOLAN:**  EXCELLENT.  THANK YOU.

5      **MR. QUINN:**  I DON'T AGREE WITH THAT.  MY          11:43

6  UNDERSTANDING IS THAT EVERYTHING IS TO BE SHOWN BEFORE.

7      **THE COURT:**  I WOULDN'T EXPECT YOU TO AGREE.

8      WHY DON'T YOU MEET DURING THE BREAK, AND THEN AT

9  1:00, WE'LL TAKE IT UP, AND THE COURT WILL MAKE ITS DECISION.

10     WE'RE IN RECESS UNTIL 1:00.                          11:43

11     (WHEREUPON, A LUNCH RECESS WAS HELD.)

12     (CONCLUSION OF MORNING SESSION.)

13

14

15

16

17                    CERTIFICATE

18

19  I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
    STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
20  THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
    ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
21  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
    THE UNITED STATES.
22

23  _____        5-28-08
    THERESA A. LANZA, CSR, RPR          _____
24  FEDERAL OFFICIAL COURT REPORTER        DATE

25

MAY 27, 2008      EXHIBIT ___2___      TRIAL DAY 2, MORNING SESSION

                  PAGE ___14___

# EXHIBIT 3

4764

1                  UNITED STATES DISTRICT COURT

2                 CENTRAL DISTRICT OF CALIFORNIA

3                              - - -

4        **HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING**

5                              - - -

6    MATTEL, INC.,                  :   PAGES 4764 - 4889
                                    :
7          PLAINTIFF,               :
                                    :
8       VS.                         :   NO. ED CV04-09049-SGL
                                    :   [CONSOLIDATED WITH
9    MGA ENTERTAINMENT, INC.,       :   CV04-9059 & CV05-2727]
     ET AL.,                        :
10                                  :
           DEFENDANTS.             :
11   _____

12

13

14

15            REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                  RIVERSIDE, CALIFORNIA

17               THURSDAY, JULY 10, 2008

18                 JURY TRIAL - DAY 22

19                   MORNING SESSION

20

21

22                          MARK SCHWEITZER, CSR, RPR, CRR
                            OFFICIAL COURT REPORTER
23   CERTIFIED              UNITED STATES DISTRICT COURT
                            181-H ROYBAL FEDERAL BUILDING
24   COPY                   255 EAST TEMPLE STREET
                            LOS ANGELES, CALIFORNIA 90012
25                          (213) 663-3494

EXHIBIT____3_____

PAGE      15

1   to have the attorneys here present in case any questions or

2   issues come up, and, of course, when you return your verdict.

3        At this time I'm going to read the instructions.

4   You will have copies of these instructions.  So instead of

5   taking notes, I want you to listen to my reading.  But each

6   of you will have a physical copy of the instructions to refer

7   to to help you refresh your recollection of the instructions.

8        Members of the jury, now that you have heard all of

9   the evidence and the arguments -- well, actually, you will

10  have heard the arguments of the attorneys -- it is my duty to

11  instruct you as to the law of the case.

12       A copy of these instructions will be sent with you

13  to the jury room when you deliberate.

14       You must not infer from these instructions or from

15  anything I may say or do as indicated that I have an opinion

16  regarding the evidence or what your verdict should be.

17       It is your duty to find the facts from all the

18  evidence in the case.  To those facts you will apply the law

19  as I give it to you.  You must follow the law, as I give it

20  to you, whether you agree with it or not.  And you must not

21  be influenced by any personal likes or dislikes, opinions,

22  prejudices, or sympathy.  That means that you must decide the

23  case solely on the evidence before you.  You will recall that

24  you took an oath to do so.

25       In following my instructions, you must follow all

EXHIBIT ___3___

PAGE ___16___

4889

1

2

3

4

5

6

7                              C E R T I F I C A T E

8

9

10          I hereby certify that pursuant to Title 28,

11   Section 753 United States Code, the foregoing is a true and

12   correct transcript of the stenographically reported

13   proceedings in the above matter.

14          Certified on July 10, 2008.

15

16

17   MARK SCHWEITZER, CSR, RPR, CRR
     Official Court Reporter
18   License No. 10514

19

20

21

22

23

24

25

EXHIBIT ____3____

PAGE ____17____

# EXHIBIT 4

Page 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

- - -

HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

- - -

MATTEL, INC.,                           )
                                        )
                    PLAINTIFF,          )
                                        )
          VS.                           )  NO. CV 04-09049
                                        )
MGA ENTERTAINMENT, INC., ET. AL.,       )
                                        )
                    DEFENDANTS.         )  TRIAL DAY 28,
_____ )  MORNING SESSION
AND CONSOLIDATED ACTIONS,               )
                                        )


REPORTER'S TRANSCRIPT OF PROCEEDINGS

RIVERSIDE, CALIFORNIA

FRIDAY, JULY 25, 2008

10:53 A.M.




THERESA A. LANZA, RPR, CSR
FEDERAL OFFICIAL COURT REPORTER
3470 12TH STREET, RM. 134
RIVERSIDE, CALIFORNIA  92501
951-274-0844
WWW.THERESALANZA.COM

EXHIBIT 4

PAGE 18

029ab816-4720-4666-b495-8ba3bf1ada50

Page 20

1    THE JURORS IN PARTICULAR THOUGHT THIS WAS ABHORRENT, AND I'M

2    CONVINCED WE HAVE A JURY OF NINE PEOPLE WHO ARE REALLY --

3    NEITHER ARE THEY GOING TO BE UNFAIR TO MGA AND MR. LARIAN OR TO

4    MATTEL.  I TRIED TO EXPLORE THIS, BECAUSE I COULD SEE AN

5    OVERCOMPENSATION.

6            AT THE SAME TIME, THIS IS A CANCER --

7            MR. NOLAN:  IT'S A TOUGH ISSUE, YOUR HONOR.

8            THE RESEARCH WE DID DURING THE BREAK, YOUR HONOR --

9            THE COURT:  I JUST NEED TO CONSIDER THE LEGAL

10   STANDARD, IN LIGHT OF THE FINDINGS.

11           I'M GOING TO TYPE UP MY FINDINGS AND ISSUE THEM IN

12   THE FORM OF A MINUTE ORDER SO YOU HAVE THOSE FINDINGS BASED ON

13   YOUR -- YOU REQUESTED THE IN-CAMERA MEETING WITH THE JURORS --

14   I'M RELUCTANT TO GO DOWN THE ROAD OF OPENING UP FURTHER

15   QUESTIONING OF THE JURY ON THIS, UNLESS COUNSEL IS SEEKING

16   THAT.

17           MR. NOLAN:  WHAT I REALLY NEED TO DO IS REFLECT ON

18   THIS AND GET SOME OF OUR BEST MINDS UNDERSTANDING WHAT THE LAW

19   IS ON THIS STANDARD.

20           THE COURT:  MR. QUINN, ARE YOU REQUESTING ANYTHING

21   FURTHER?

22           MR. QUINN:  NO, WE'RE NOT.  JUST THAT QUESTION OF THE

23   CORRECTIVE INSTRUCTION FROM --

24           THE COURT:  IN TERMS OF THE JURY, YOU'RE NOT --

25           MR. QUINN:  NO.  WE'RE NOT REQUESTING ANYTHING

Page 21

1   FURTHER.

2          THE COURT:  AND YOU'RE NOT SEEKING ANY QUESTIONS AT

3   THIS TIME?

4          MR. NOLAN:  NO.  NOT AT THIS TIME.

5          THE COURT:  WHAT I'M GOING TO INCLUDE IN MY FINDING

6   IS THE STATEMENT ITSELF.  I'VE HEARD THE STATEMENT.  THERE'S

7   NINE VARIATIONS, BUT I HAVE THE ESSENCE OF IT AND WHAT IT IS IS

8   THAT APPARENTLY SHE STATED THAT HER HUSBAND IS AN ATTORNEY, AND

9   THAT HE HAS ANY NUMBER OF IRANIAN CLIENTS -- SHE SAID ONE, A

10  CLIENT, OR SOME SEVERAL CLIENTS -- AND ESSENTIALLY THAT THEY

11  ARE STUBBORN AND THAT THEY ARE THIEVES, BASICALLY.

12         MR. NOLAN:  YOUR HONOR, THAT'S WHAT I NEEDED TO -- I

13  WANT TO GO HOME.  IT'S ONE OF THOSE TROUBLING MOMENTS.

14         THE COURT:  I KNOW HOW TROUBLING THIS MUST BE TO

15  MATTEL.

16         MR. QUINN:  WE DON'T KNOW HOW IT SHAKES OUT IN

17  PEOPLE'S MINDS.  IT RAISES A QUESTION.

18         MR. NOLAN:  I'M NOT GOING TO ARGUE THAT.  MY

19  MOTHER --

20         HERE'S MY PROBLEM, AND I NEED THE COURT'S GUIDANCE ON

21  THIS.

22         WOULD THE COURT ENTERTAIN HEARING FROM MR. LARIAN?

23         THE COURT:  IN CHAMBERS?

24         MR. NOLAN:  YES.

25         THE COURT:  YES, IN CHAMBERS.

Page 33

1          THE COURT:  YES.  THEN WE'LL TAKE UP THAT OTHER

2     MATTER.

3          MR. NOLAN:  THANK YOU.

4          THE COURT:  COURT IS IN RECESS.

5          (OPEN COURT PROCEEDINGS CONCLUDED.)

6

7

8                         CERTIFICATE

9

10    I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
      STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
11    THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
      ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
12    CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
      THE UNITED STATES.
13

14    _____        _____
      THERESA A. LANZA, CSR, RPR                      DATE
15    FEDERAL OFFICIAL COURT REPORTER

16

17

18

19

20

21

22

23

24

25

FRIDAY, JULY 25, 2008   EXHIBIT ____4____      TRIAL DAY 28, MORNING SESSION

PAGE    21

# EXHIBIT 5

1  DALE M. CENDALI (admitted *pro hac vice*)
   MICHAEL KEATS (admitted *pro hac vice*)
2  JAMES P. JENAL (S.B. #180190)
   O'MELVENY & MYERS LLP
3  400 South Hope Street
   Los Angeles, CA  90071-2899
4  Telephone:  (213) 430-6000
   Facsimile:   (213) 430-6407
5  mkeats@omm.com

6  PATRICIA GLASER (S.B. #55668)
   CHRISTENSEN, GLASER, FINK,
7  JACOBS, WEIL & SHAPIRO, LLP
   10250 Constellation Boulevard, 19th Floor
8  Los Angeles, CA 90067
   Telephone:  (310) 553-3000
9  Facsimile:   (310) 557-9815

10 Attorneys for MGA Entertainment, Inc.

11          **UNITED STATES DISTRICT COURT**

12          **CENTRAL DISTRICT OF CALIFORNIA**

13                **EASTERN DIVISION**

14

15 CARTER BRYANT, an individual,        Case No.  CV 04-9049 SGL (RNBx)
                                        (consolidated with CV 04-9059 & 05-
16              Plaintiff,              2727)

17        v.                           **MGA'S SUPPLEMENTAL BRIEF
                                       REGARDING CLAIMS TO BE
18 MATTEL, INC., a Delaware            TRIED IN PHASE ONE TRIAL**
   corporation,
19                                     Hearing Date: T.B.D.
                Defendant.             Time:  T.B.D.
20                                     Judge:  Hon. Stephen G. Larson

21 AND CONSOLIDATED ACTIONS
22
23
24
25
26
27
28
                                       MGA'S SUPPLEMENTAL BRIEF RE:
                                       CLAIMS TRIED IN PHASE ONE TRIAL
                                       CASE NO. CV 04-9049
                                       C4|20|c7

EXHIBIT ___5___

PAGE ___22___

1   threat of inconsistent determinations. Notably, Mattel concedes that the evidence

2   and facts related to determining both liability and damages for its claims against

3   Bryant and counterclaims for intentional interference with contract, unfair

4   competition, and aiding and abetting breach of fiduciary duty and duty of loyalty,

5   will substantially overlap for all of these claims. (*See* Mattel's Motion to Try All

6   Claims Related to Bratz Ownership in Phase One, at 9). On this basis alone,

7   Mattel's claims for damages in connection with its breach of contract, breach of

8   fiduciary duty, breach of the duty of loyalty, and conversion, as well as the

9   counterclaims discussed herein, should be tried in Phase One. Nevertheless, as

10  discussed below, the Seventh Amendment requires that damages and liability be

11  tried together.

12
13
          2.    **The Seventh Amendment Requires That Damages and
                Liability For Mattel's Claims Arising Out of The Same Core
                Set of Facts Be Determined By the Same Jury**

14         The Seventh Amendment precludes separating Mattel's claims for damages

15  and liability into two separate trials because its damages claims arise from the same

16  underlying operative facts as Mattel's claims for breach of contract, breach of

17  fiduciary duty, breach of the duty of loyalty, and conversion, as well as the

18  counterclaims discussed herein. Courts have consistently held that where the

19  determination of liability and damages involves a significant overlap of facts, the

20  Seventh Amendment demands that the same jury determine both questions. *See*

21  *United Air Lines*, 286 F.2d at 306 (finding that where the damages question is "not

22  so distinct and separable that a separate trial of the damages issues may be had

23  without injustice," the Seventh Amendment requires that liability and damages be

24  determined by the same jury); *IPPV Enters. v. Cable/Home Comm'n Corp.*, 26

25  U.S.P.Q. 2d 1714, 1717 (S.D. Cal. 1993).

26         The seminal case is *Gasoline Products Co. v. Champlin Refining Co.*, 283

27  U.S. 494 (1931). There, the plaintiff filed a claim for breach of contract, and the

28  defendant filed counterclaims for breaches of related contracts. The jury awarded

- 8 -

MGA'S SUPPLEMENTAL BRIEF RE:
CLAIMS TRIED IN PHASE ONE TRIAL
CASE NO. CV 04-9049

EXHIBIT ___5___

PAGE ___23___

1  damages to both parties and the First Circuit Court of Appeals reversed and
2  remanded for a retrial on the issue of damages. *Id.* at 496-97. On appeal, the
3  Supreme Court reversed the First Circuit on Seventh Amendment grounds, finding
4  that the right to a fair trial demanded that the liability and damages aspects be
5  determined by the *same* jury. The Supreme Court held that, while the "verdict on
6  the counterclaim may be taken to have established the existence of a contract and
7  its breach," the second jury in a trial on damages "cannot fix the amount of
8  damages unless also advised of the terms of the contract; and the dates of formation
9  and breach may be material, since it will be open to petitioner to insist upon the
10  duty of respondent to minimize damages." *Id.* at 499. In so holding, the Supreme
11  Court recognized that the second jury would either impermissibly reexamine issues
12  decided by the first jury, or would have to guess at what the first jury believed to be
13  the full scope of the contract, which aspects were breached, and which were
14  mitigated by which acts. *Id.* at 500. The Supreme Court further explained that
15  where "the question of damages on the counterclaim is so interwoven with that of
16  liability that the former cannot be submitted to the jury independently of the latter
17  without confusion and uncertainty," having damages determined by a separate jury
18  would amount to a denial of a fair trial. *Id.* at 500-501.

19      Here, the determination of liability for breach of contract, breach of fiduciary
20  duty, breach of duty of loyalty, conversion and the counterclaims discussed herein
21  and any damages arising from these claims, involve a significant overlap in facts.
22  As in *Gasoline Products*, the jury assessing any potential liability must determine
23  the binding contours of Bryant's contractual obligations, whether Bryant owed
24  Mattel fiduciary duties or a duty of loyalty, and then, in turn, assess which, if any,
25  aspects of those were breached. Moreover, the jury will also determine if MGA
26  improperly aided Bryant in breaching any such contract or duties. In the instant
27  case, there are a number of different ways that these obligations or duties could be
28  defined by a jury.

EXHIBIT 5

PAGE 24

- 9 -

1    In assessing damages emanating from these claims, the jury also would be
2    required to examine the exact same facts in order to determine which breach (be it a
3    particular contractual obligation, a fiduciary duty or a duty of loyalty) proximately
4    caused a specific item of damage. Bifurcation of liability and damages in this
5    instance would result in exactly the kind of reexamination of factual questions that
6    is prohibited by the Seventh Amendment. *See, e.g., Ramirez v. DeCosta*, 194
7    F.R.D. 348, 354 (D. Me. 2000) (finding that the Seventh Amendment required the
8    same jury assess both liability and damages in discrimination case because damages
9    would "depend on whether discrimination was the proximate cause of the worker's
10   emotional pain and loss of enjoyment of life, which would necessarily entail the
11   second jury revisiting the extent of the harm of the discriminatory act").

12   Moreover, the claims that Mattel seeks to try in Phase One include punitive
13   damages and thus *must* be presented to the same jury. *See Zender v. Vlasic Foods*,
14   1996 U.S. App. LEXIS 24077 (9th Cir. 1996) (federal and California law generally
15   require that the same jury determine both liability for, and the amount of, punitive
16   damages because those questions are so interwoven) citing *United Air Lines*, 286
17   F.2d at 306. Under the Ninth Circuit's *United Air Lines* decision, an exemplary
18   damages claim must be determined by the same jury that determined liability
19   because a second jury would be required to consider the same facts in assessing the
20   amount of punitive damages that were presented to the first jury in establishing
21   liability. *See United Air Lines*, 286 F.2d at 306 (finding that "the issues of liability
22   and damages, exemplary or normal, are not so distinct and separable that a separate
23   trial of the damage issues may be had without injustice.")

24   Finally, a determination of both liability and damages by the same jury is
25   necessary to allow the jurors to understand the potential consequences of their
26   decision in Phase One, and the impact their decision will have on Bryant and MGA.
27   Mattel's assertion that damages should only be tried in Phase Two is merely a
28   transparent attempt to conceal from the jury the impact of what otherwise might

EXHIBIT ____5____    - 10 -

PAGE ____25____

MGA'S SUPPLEMENTAL BRIEF RE:
CLAIMS TRIED IN PHASE ONE TRIAL
CASE NO. CV 04-9049

1   seem an academic question to an uniformed jury.  Such a structuring of the case

2   would be fundamentally unfair to MGA and Bryant.

3          **3.      Expert Discovery Deadlines and the Phase One and Phase Two Trial Dates Should Be Continued for at least 90 Days**

4          Mattel's request to move claims from Phase Two to Phase One, and its

5   backdoor request for bifurcation (Mattel only raised it in a footnote in its reply

6   brief), have caused uncertainty regarding the scope of trial.  Further, the parties

7   have discussed conducting expert discovery after fact discovery closes.  Right now,

8   expert discovery overlaps with fact discovery.  In view of the foregoing, MGA

9   respectfully requests that the dates for expert discovery, the Phase One trial, and the

10  Phase Two trial each be continued for at least 90 days.

11  **II.    CONCLUSION**

12         For the foregoing reasons, MGA respectfully requests that the Court modify

13  the Scheduling Order to include Mattel's counterclaims for intentional interference

14  with contract, aiding and abetting Bryant's alleged breach of fiduciary duty and

15  duty of loyalty, unfair competition (as it relates to Bryant), copyright infringement,

16  declaratory relief and damages in Phase One.  MGA also requests that expert

17  discovery deadlines, the Phase One trial and Phase Two trial each be continued for

18  90 days.

19

20         Dated:       June 20, 2007

21

22                                              DALE M. CENDALI
                                                MICHAEL C. KEATS
23                                              O'MELVENY & MYERS LLP

24

25                                              By: _Dale M. Cendali /BN_
                                                    Dale M. Cendali
26
                                                Attorneys for MGA Entertainment, Inc.
27

28

- 11 -

MGA'S SUPPLEMENTAL BRIEF RE:
CLAIMS TRIED IN PHASE ONE TRIAL
CASE NO. CV 04-9049

EXHIBIT ___5___

PAGE ___86___

# EXHIBIT 6

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 7

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 8

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**