1 THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
2 DAVID W. HANSEN (Bar. No. 196958)
(dhansen@skadden.com)
3 LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
(laguiar@skadden.com)
4 SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
5 Los Angeles, CA 90071-3144
Tel.: (213) 687-5000
6 Fax: (213) 687-5600

7 Attorneys for The MGA Parties

8 UNITED STATES DISTRICT COURT

9 CENTRAL DISTRICT OF CALIFORNIA

10 EASTERN DIVISION

| | |
|---|---|
| 11 CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12 Plaintiff, | Consolidated with Case No. 04-9059 |
| 13 v. | and Case No. 05-2727 |
| 14 MATTEL, INC., a Delaware | Honorable Stephen G. Larson |
| 15 corporation, | **MGA'S MOTION FOR CLARIFICATION** |
| 16 Defendant. | **OR RECONSIDERATION OF THE** |
| | **COURT'S JULY 24, 2008 ORDER** |
| 17 | **CONCERNING SCOPE OF COPYRIGHT** |
| | **PROTECTION** |
| 18 | |
| | Date: August 5, 2008 |
| 19 AND CONSOLIDATED ACTIONS. | Time: 8:30 a.m. |
| 20 | Courtroom: 1 |

21
22
23
24
25
26
27
28

MGA'S Motion For Clarification Or Reconsideration Of July 24, 2008 Order
Re: Scope Of Copyright Protection – Case No. CV 04-9049 SGL (RNBx)

1

## TABLE OF CONTENTS

2

Page

3

4 PRELIMINARY STATEMENT ...........................................................................................1

5 ARGUMENT.......................................................................................................................1

6     A.    The July 24 Order Holds That The Jury Will "Analytically
            Dissect" Bryant's Drawings And "Filter" Unprotectable Elements....................3

7

8     B.    The July 24 Order Does Not Hold, As A Matter Of Law, That The
            Bryant Drawings Are Entitled to "Broad" Protection. .......................................4

9 CONCLUSION ...................................................................................................................8

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

3

**Cases** **Page(s)**

Aliotti v. R. Dakin & Co.,
 831 F.2d 898 (9th Cir. 1987)...................................................................................... 7

Apple Computer, Inc. v. Microsoft Corp.,
 35 F.3d 1435 (9th Cir. 1994)............................................................................. 4, 5, 6

Cavalier v. Random House, Inc.,
 297 F.3d 815 (9th Cir. 2002)...................................................................................... 3

Cosmos Jewelry v. Po Sun Hon Co.,
 470 F. Supp. 2d 1072 (C.D. Cal. 2006) ...................................................................... 7

Dr. Seuss Enterprises v. Penguin Books, Inc.,
 109 F.3d 1394 (9th Cir. 1997)...................................................................................... 3

Dyer v. Napier,
 No. CV 04-0408-PHX-SMM,
 2006 U.S. Dist. LEXIS 68990 (D. Ariz. Sept. 25, 2006)............................................. 6

Feist Publications, Inc. v. Rural Telelephone Service Co.,
 499 U.S. 340 (1991) .................................................................................................. 6

George S. Chen Corp. v. Cadona International, Inc.,
 266 Fed. Appx. 523 (9th Cir. 2008).............................................................................. 6

Herbert Rosenthal Jewelry Corp. v. Kalpakian,
 446 F.2d 738 (9th Cir. 1971)........................................................................................ 6

Lucky Break Wishbone Corp. v. Sears, Roebuck, & Co.,
 528 F. Supp. 2d 1106 (W.D. Wash. 2007)..................................................................... 7

Mattel, Inc. v. Azrak-Hamway International, Inc.,
 724 F.2d 357 (2d Cir. 1983)........................................................................................ 8

Mattel, Inc. v. Goldberger Doll Manufacturing. Co.,
 365 F.3d 133 (2d Cir. 2004).................................................................................... 7, 8

Satava v. Lowry,
 323 F.3d 805 (9th Cir. 2003)] ............................................................................ 2, 5, 6

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

See v. Durang,
  337 F. Supp. 2d 1103 (E.D. Wis. 2004)......................................................................... 5

Stanislawski v. Jordan,
  337 F. Supp. 2d 1103 (E.D. Wis. 2004)......................................................................... 7

1

**PRELIMINARY STATEMENT**

2      MGA respectfully submits this motion for clarification or reconsideration of the
3 Court's July 24, 2008 "Post-Phase 1-A Order re: Motion for Partial Summary Judgment On
4 the Issue of Substantial Similarity" (the "July 24 Order"), as it relates to the scope of
5 protection to be afforded the Carter Bryant drawings at issue in the Phase 1-B trial.

6      Mattel improperly interprets the July 24 Order as holding that the jury is not required
7 to undertake "analytic dissection" and "filtering" of unprotectable elements in connection
8 with the "extrinsic" prong of the Ninth Circuit's two-prong copyright infringement test.
9 Mattel also erroneously interprets the July 24 Order as holding, as a matter of law, that the
10 Bryant drawings are entitled to "broad" protection, and that the "thin" protection standard
11 was found to be inapplicable as a matter of law.

12      MGA submits that Mattel's interpretation of the July 24 Order is wrong as to both
13 issues. The Court specifically held that the jury is required to "analytically dissect" the
14 Bryant drawings and "filter" out unprotectable elements in connection with the "extrinsic"
15 portion of the infringement analysis. Based on the wording of the Order, it is apparent that
16 the Court did not determine the scope of protection to be afforded the Bryant drawings.
17 Rather, in the July 24 Order, the Court held that it was unable to rule on the applicable
18 standard as a matter of law, without the benefit of trial testimony.[1]

19

**ARGUMENT**

20      In the July 24 Order, the Court denied Mattel's motion for partial summary judgment
21 on the issue of copyright infringement. See July 24 Order at 3. The Court's Order also
22 specifically held that "analytic dissection" and "filtering" were required as part of the
23 "extrinsic" prong of the applicable Ninth Circuit test for infringement. Id. at 2. The Court
24 also held that it could not "find that the registered drawings are subject to only the 'thin'

25

26 ──────────────
[1]     To the extent that MGA's interpretation of the Court's Order is wrong as to either
27 issue, MGA respectfully requests that the Court reconsider its ruling(s).

28 ──────────────

1  protection – the protection against copying – referred to in Satava [v. Lowry, 323 F.3d 805
2  (9th Cir. 2003)]." Id. at 5.

3  Despite the clear language of the Order, Mattel interprets the Court's Order as having
4  held that the jury is not required to "analytically dissect" the Bryant drawings and "filter"
5  elements not protected by copyright. Mattel also incorrectly interprets the Order as having
6  held, as a matter of law, that the Bryant drawing at issue in the Phase 1-B trial are entitled to
7  "broad" protection.

8  For example, on July 29, 2008, in response to MGA's objections to Mattel's proposed
9  jury instructions, Mattel argued that:

10  [MGA's] contention that the jury should be instructed on the process of
11  analytical dissection or filtration is incorrect. That process is complex and
12  confusing. Here, there is no reason to confuse the jury with such
13  instructions. The Court has rejected [MGA's] repeated assertions that
14  Bryant's designs are subject to only "thin" protection, and instead held, as
15  defendants acknowledge, that they are subject to "broad" protection. Hence,
16  there is nothing to "filter out" when performing a substantial similarity
17  analysis under the extrinsic test. And there is no reason to instruct the jury
18  on filtration.

19  See Mattel's Third Amended Proposed Jury Instructions for Phase 1B – Disputed Set;
20  Defendants' Objections to Same; Mattel's Statement in Support of Same ("Mattel's Third
21  Am. Proposed Jury Instr.") at 38.  See also id. at 40 ("[D]espite defendants' assertion to the
22  contrary, the Court already rejected defendants' argument that Bryant's drawings are
23  entitled to less-than-full protection that protects only against 'virtual' copying. See July 24,
24  2008 Order at 4-5.… [T]here is no basis for defendants to continue to assert that the Bryant
25  drawings are subject only to protection against virtual copying.").

26
27
28

1      Given the parties' sharply divergent interpretations of the July 24 Order, MGA
2 submits that the Court should provide the parties with guidance if or when the trial
3 continues.

### A. The July 24 Order Holds That The Jury Will "Analytically Dissect" Bryant's Drawings And "Filter" Unprotectable Elements.

In the Order, the Court held that the "relevant test . . . upon which the jury will
ultimately be instructed – is the test regarding the extrinsic and intrinsic analyses set forth
above." See July 24 Order at 5. Consistent with Ninth Circuit precedent, the Court held in
connection with its discussion of the "extrinsic" analysis that unprotectable elements must
be filtered from the Bryant drawings and not considered when applying the extrinsic test:

> To apply the extrinsic test, the Court must first examine the specific
> expressive elements of the works at issue and compare them to those found
> in the allegedly infringing work. Dr. Seuss Enterprises v. Penguin Books,
> Inc., 109 F.3d 1394, 1398 (9th Cir. 1997). This involves analytically
> dissecting works into their components in order to determine whether some
> – or all – similarities are attributable to unprotected elements, which must be
> filtered out of the analysis before a conclusion regarding substantial
> similarity is reached. Id. To apply the extrinsic test to visual works, such as
> the drawings at issue here, "**[t]he basic mode of analysis for comparison of**
> **the literary elements applies . . . [, and] unprotect[a]ble elements should**
> **not be considered when applying the extrinsic test to art work**." Cavalier
> v. Random House, Inc., 297 F.3d 815, 825-26 ([9th Cir.] 2002).

23 July 24 Order at 2 (emphasis added).

24      Thus, contrary to the arguments made by Mattel in connection with the Phase 1-B
25 jury instructions, the Court's July 24 Order clearly held that the jury will be instructed to
26 "analytically dissect" the Bryant drawings and "filter" out elements not protected by
27 copyright law as part of its "extrinsic" analysis. In fact, when asked about filtering during

28

1  the July 21, 2008, telephonic conference, the Court stated that "the instruction on [filtering]
2  will be going to the jury from the Court." See July 21, 2008 Tr. at 5296:6-7.

3  **B.  The July 24 Order Does Not Hold, As A Matter Of Law, That The Bryant Drawings Are Entitled to "Broad" Protection.**
4

5  Based on its analysis of the Ninth Circuit's decision in Satava, the Court held in the
6  July 24 Order that, at the summary judgment stage, it "cannot go so far as to find that the
7  registered drawings are subject to only the 'thin' protection – the protection against copying
8  – referred to in Satava." July 24 Order at 5.  As noted, Mattel interprets this as the Court
9  holding as a matter of law that the Bryant drawings are necessarily entitled to "broad"
10  protection.  MGA believes that, consistent with Ninth Circuit precedent, the Court merely
11  declined to conclude on summary judgment that the "thin" protection standard is applicable,
12  but did not determine which standard ultimately will apply.  MGA therefore seeks
13  clarification that its interpretation of the Court's Order is correct.

14  The framework for determining the scope of protection to be afforded a copyrighted
15  work was set forth in Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435 (9th Cir.
16  1994).  Under the proper framework, the scope of protection can only be determined after
17  the unprotected elements are filtered from the work:

18  (2)  Using analytic dissection, and, if necessary, expert testimony, the
19  court must determine whether any of the allegedly similar features are
20  protected by copyright…. [U]nprotectable ideas must be separated from
21  potentially protectable expression; to that expression, the court must then
22  apply the relevant limiting doctrines in the context of the particular medium
23  involved, through the eyes of the ordinary consumer of that product.

24  (3)  Having dissected the alleged similarities and considered the range of
25  possible expression, the court must define the scope of the plaintiff's
26  copyright - that is, decide whether the work is entitled to "broad" or "thin"
27  protection.

28

1  Id. at 1443 (emphasis added).

2  The Court recognized in the July 24 Order that "all" of the alleged similarities
3 between the Bryant drawings and the Bratz dolls could be "attributable to unprotected
4 elements …." See July 24 Order at 2 (the extrinsic test "involves analytically dissecting
5 works into their components in order to determine whether some – **or all** – similarities are
6 attributable to unprotected elements, which must be filtered out of the analysis") (emphasis
7 added). [2] Under Apple, a determination that many or all of the elements in the Bryant
8 drawings are unprotectable would require a finding that the drawings are only entitled to
9 "thin" protection. See 35 F.3d at 1439 ("When the range of protectable and unauthorized
10 expression is narrow, the appropriate standard for illicit copying is virtual identity.").

11  Consistent with Apple, MGA believes that the Court's July 24 Order is properly
12 interpreted to mean that a decision on the scope of protection to be afforded the Bryant
13 drawings could not be made at this point, but needs to await presentation of the evidence
14 pertinent to "the relevant limiting doctrines" that the jury will need to apply in connection
15 with its filtering analysis. See Apple, 35 F.3d at 1443 ("the relevant limiting doctrines"
16 must be applied to the "potentially protectable expression"). Although the July 24 Order
17 focused on the "elements found in nature" limiting doctrine at issue in Satava, this is only
18 one of the limiting doctrines relevant to this case. Other factors undermining the originality
19 and scope of protection for Bryant's drawings include (i) the standard fashion doll elements
20 included in the Bryant drawings,[3] as well as (ii) prior art, including the various

21

22  [2] Mattel concedes this possibility in connection with its proposed "Combination of
23 Unprotectable Elements" jury instruction. See Mattel's Third Am. Proposed Jury Instr. at
24 48 ("If you find that any elements of Mr. Bryant's drawings are not original, you must
   decide whether the combination of such elements is original.").

25  [3] As the Satava court held, "expressions that are standard, stock, or common to a
26 particular subject matter or medium are not protectable under copyright law." 323 F.3d at
   810 (citing See v. Durang, 711 F.2d 141, 143 (9th Cir. 1983)). See also Apple, 35 F.3d at
27 1443 ("similarities derived from the use of common ideas cannot be protected; otherwise,
   *(cont'd)*

28 _____

1 advertisements for Paris Blues, Coke and Steve Madden, as well as additional evidence
2 bearing on the lack of originality that will be presented during the Phase 1-B trial. See Feist
3 Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 348 (1991) ("Originality remains the
4 sine qua non of copyright; accordingly, copyright protection may extend only to those
5 components of a work that are original to the author.); see also Apple, 35 F.3d at 1445
6 ("Originality is another doctrine which limits the scope of protection. As the Supreme
7 Court recently made clear, protection extends only to those components of a work that are
8 original to the author") (citing Feist).

9     Although the Court distinguished Satava on the grounds that "[j]elly fish anatomy is
10 much simpler than human anatomy," neither party presented evidence on this issue or
11 presented it as a basis for distinguishing Satava. In fact, there are significant discernable
12 variations in jellyfish anatomy, size, shape and other features. See, e.g.,
13 http://en.wikipedia.org/wiki/Jellyfish. Moreover, regardless of whether human anatomy is
14 more complex than jellyfish anatomy, standard elements of human anatomy present in
15 Bryant's drawings are still relevant to the ultimate determination of the protection to be
16 afforded to the drawings. Like jellyfish anatomy, human anatomy is "expressed by nature"
17 and "the common heritage of human kind," and "no artist may use copyright law to prevent
18 others from depicting" it. See Satava, 323 F.3d at 813. For this reason, the holding in
19 Satava has been applied to a wide variety of life forms. See, e.g., George S. Chen Corp. v.
20 Cadona Int'l, Inc., 266 Fed. Appx. 523, 524 (9th Cir. 2008) (unpublished) (affirming lower
21 court decision that dolphin shaped wind chime ornaments had features that "necessarily
22 follow from the idea of a swimming dolphin"); Dyer v. Napier, No. CV 04-0408-PHX-
23 SMM, 2006 U.S. Dist. LEXIS 68990, at * 28 (D. Ariz. Spet. 25, 2006) (holding that
24 "[p]laintiffs cannot prevent defendants from copying any aspect of the mother mountain
25

26 *(cont'd from previous page)*
the first to come up with an idea will corner the market") (citing Herbert Rosenthal Jewelry
27 Corp. v. Kalpakian, 446 F.2d 738, 742 (9th Cir. 1971)).

28

1 lion or kitten that naturally result from the physiology of mountain lions"); Lucky Break
2 Wishbone Corp. v. Sears, Roebuck, & Co., 528 F. Supp. 2d 1106, 1123-24 (W.D. Wash.
3 2007) (holding that the copyright in a plastic breakable turkey wishbone is thin and subject
4 to the "virtual identity" standard); Cosmos Jewelry v. Po Sun Hon Co., 470 F. Supp. 2d
5 1072, 1082 (C.D. Cal. 2006) (holding that the plaintiff would not be afforded broad
6 copyright protection for its representation of the Plumeria flower in jewelry, because a
7 number of the features occurred in Plumeria flowers in nature); Stanislawski v. Jordan, 337
8 F. Supp. 2d 1103, 1116 (E.D. Wis. 2004) (explaining that Satava's "reasoning is sound. An
9 artist cannot protect an element of his realistic art that is inherent in an animal's physiology.
10 One could no more copyright the shape of oak leaf or the shape of a horse."). See also
11 Aliotti v. R. Dakin & Co., 831 F.2d 898, 901 (9th Cir. 1987) (copyright owner "may place
12 no reliance upon any similarity in expression resulting from either the physiognomy of
13 dinosaurs").

14 In the fashion doll context, the Second Circuit held in Mattel, Inc. v. Goldberger Doll
15 Mfg. Co., 365 F.3d 133, 135 (2d Cir. 2004), that, although the "central expressive features
16 of Barbie's face" were entitled to copyright protection, "[t]he protection that flows from
17 such a copyright is, of course, quite limited."

18 The copyright does not protect ideas; it protects only the author's particularized
19 expression of the idea. Thus, Mattel's copyright in a doll visage with an upturned
20 nose, bow lips, and widely spaced eyes will not prevent a competitor from
21 making dolls with upturned noses, bow lips, and widely spaced eyes, even if the
22 competitor has taken the idea from Mattel's example, so long as the competitor
23 has not copied Mattel's particularized expression. An upturned nose, bow lips,
24 and wide eyes are the "idea" of a certain type of doll face. That idea belongs not
25 to Mattel but to the public domain. But Mattel's copyright will protect its own
26 particularized expression of that idea and bar a competitor from copying Mattel's
27 realization of the Barbie features.

28

1 │ Id. at 135-36.  See also Mattel, Inc. v. Azrak-Hamway Int'l, Inc., 724 F.2d 357, 360 (2d Cir.

2 │ 1983) (citations omitted) (creator of a muscle-bound action doll has copyright in

3 │ "particularized expression [such as] the decision to accentuate certain muscle groups

4 │ relative to others" even though imitator is free to make dolls expressing same general idea;

5 │ the "district court apparently credited the evidence of [defendant's] expert on human

6 │ anatomy that the [defendant's] doll was not a direct copy of the Mattel doll, but rather was

7 │ simply another artist's rendering of the human form with an exaggerated musculature").

8 │ **CONCLUSION**

9 │ MGA therefore respectfully requests that the Court confirm that Courts' rulings in the

10 │ July 24, 2008 Order.  Clear guidance on these issues is important prior to the possible

11 │ continuation of the Phase 1-B trial.

12 │ DATED:  August 1, 2008                SKADDEN, ARPS, SLATE, MEAGHER &
13 │                                       FLOM LLP

14 │

15 │                             By: _____ /s/ Thomas J. Nolan _____

16 │                                       Thomas J. Nolan
    │                                       Attorneys for the MGA Parties

17 │

18 │

19 │

20 │

21 │

22 │

23 │

24 │

25 │

26 │

27 │

28 │ _____
    │       MGA'S Motion For Clarification Or Reconsideration Of July 24, 2008 Order
    │         Re: Scope Of Copyright Protection – Case No. CV 04-9049 SGL (RNBx)
    │                                       8