THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
(laguiar@skadden.com)
CARL ALAN ROTH (Bar No. 151517)
(croth@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Tel.: (213) 687-5000
Fax: (213) 687-5600

Attorneys for The MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>**MGA PARTIES' OPPOSITION TO MATTEL'S *EX PARTE* APPLICATION TO (1) EXCLUDE BELATEDLY PRODUCED MGA FINANCIAL RECORDS AND (2) COMPEL PRODUCTION OF BRATZ-RELATED LITIGATION MATERIALS;**<br><br>**[DECLARATIONS OF CARL ALAN ROTH, LISA TONNU AND STEPHEN SCHULTZ FILED UNDER SEPARATE COVER]**<br><br>Phase 1<br>Trial Date: May 27, 2008 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

ARGUMENT .......................................................................................................... 2

    I.    Isaac Larian Is Entitled To Rely On The Updated Net Worth Documents He Was Recently Ordered To Produce ............................ 2

          A.    The Moss Adams Valuation Concerns Only Mr. Larian, Not MGA .................................................................................. 3

          B.    Mr. Larian Has Not Violated Any Court Order Or Discovery Rule By Producing The Moss Adams Valuation Of MGA ........................................................................................ 5

          C.    Isaac Larian Produced The Moss Adams Valuation Immediately After The Final Version Was Provided To Him, And In Compliance With This Court's Orders And The Discovery Rules ................................................................... 6

    II.   MGA Produced Its Fiscal Year 2007 Data In Compliance With The Court's Orders And Consistent With Its Discovery Obligations ............................................................................................ 7

    III.  Mattel Seeks A Double Standard Which Ignores Its Recent Production Of Damages-Related Data And Information .................... 9

    IV.  Mattel's Motion To Compel Is Baseless ............................................ 10

CONCLUSION ..................................................................................................... 12

# TABLE OF AUTHORITIES

**PAGE(S):**

**CASES**

Adams v. Murakami,
  54 Cal. 3d 105 (1991) .................................................................................. 2

Competitive Techs. v. Fujitsu Ltd.,
  286 F. Supp. 2d 1161 (N.D. Cal. 2003) ....................................................... 9

Galaxy Computer Servs., Inc. v. Baker,
  325 B.R. 544 (E.D. Va. 2005) ...................................................................... 8

Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc.,
  851 F.2d 540 (1st Cir. 1988) ........................................................................ 8

Marriott v. Williams,
  152 Cal. 705 (1908) ...................................................................................... 3

Potlatch Corp. v. United States,
  679 F.2d 153 (9th Cir. 1982) ........................................................................ 9

Robert L. Cloud & Assocs., Inc. v. Mikesell,
  69 Cal. App. 4th 1141 (1st Dist. 1999) ........................................................ 2

Washington v. Farlice,
  1 Cal. App. 4th 766 (1991) ........................................................................... 3

United States v. Heavrin,
  330 F.3d 723 (6th Cir. 2003) ........................................................................ 4

Zhadan v. Downtown Los Angeles Motor Distributions, Inc.,
  100 Cal. App. 3d 821 (1979) .................................................................... 3, 5

## PRELIMINARY STATEMENT

Mattel wants to pick and choose the financial data the jury should consider during Phase 1(b). On the one hand, Mattel wants to present the new and updated data it produced last week in connection with its damages experts; but on the other hand, Mattel does not want MGA or Isaac Larian to present the new and updated data they produced last week. On the one hand, Mattel wants to request, subpoena and/or have the Court order the production of new and updated data from MGA and Mr. Larian; but on the other hand, if Mattel does not think that data helps its damages case, Mattel wants to preclude the jury from considering it. Mattel cannot have it both ways.

Mattel's double standard is premised upon a falsity—that MGA and Mr. Larian have produced the data that Mattel recently requested in an untimely manner. For example, Mattel targets a recent Moss Adams valuation of MGA that pertains to the calculation of Mr. Larian's net worth. That valuation was provided to MGA and Mr. Larian in final form for the first time on the same day it was produced to Mattel. Thus, it was not untimely produced. Moreover, because Mr. Larian's net worth is relevant only to his ability to pay punitive damages, and net worth is to be measured for such purpose *at the time of trial*, it would be unjust to preclude Mr. Larian from using the most current data to show his net worth.

Mattel's attack on MGA's production of final year-end 2007 financial data and draft 2008 financial data is similarly hollow. That data was not available before the close of Phase 1(a) discovery. When Mattel recently asked for it to be produced, MGA promptly did so. That Mattel does not now like the data it asked for and received, however, is not a basis to preclude the jury from considering the data.

Mattel's own actions are telling. Just as MGA and Mr. Larian produced updated data last week, so did Mattel. In short, the recently available data produced by MGA and Mr. Larian was timely produced, and moreover, was produced at

Mattel's request and/or by the Court's directive. Mattel has no viable basis to preclude the use of that data at trial. There is no harm.

Mattel's eleventh-hour request to compel production of "Bratz-related litigation materials" also lacks merit, for several independent reasons, including that Judge Infante previously denied the same request, any challenge to the completeness of MGA's discovery production is both baseless and untimely, and the request amounts to a mid-trial discovery request that would impose an undue burden on MGA.

## ARGUMENT

### I. Isaac Larian Is Entitled To Rely On The Updated Net Worth Documents He Was Recently Ordered To Produce

On March 27, 2008, Mattel served Mr. Larian with a trial subpoena specifically requesting "documents sufficient to establish your net worth as of December 31, 2007 and through March 31, 2009."[1] Regarding that request, on July 21, 2008, the Court ordered Mr. Larian to provide updated personal net worth information no later than July 23, 2008, in anticipation of his upcoming trial testimony in Phase 1(b).[2] Mr. Larian complied, but now Mattel is complaining about the very documents it subpoenaed and that the Court ordered Mr. Larian to produce. That makes no sense.

Moreover, Mattel's position undermines the very reason the requested documents are relevant in the first instance. As the Court has acknowledged, Mr. Larian's net worth is pertinent to his ability to satisfy a punitive damages award, if any.[3] E.g., Robert L. Cloud & Assocs., Inc. v. Mikesell, 69 Cal. App. 4th 1141, 1152 (1st Dist. 1999) (evidence of the defendant's ability to pay punitive damages award is required); see also Adams v. Murakami, 54 Cal. 3d 105, 110-116 (1991). It relates to

---

[1]  Declaration of Carl Alan Roth ("Roth Decl."), Ex. 4: March 27, 2008 Subpoena in a Civil Case to Isaac Larian, Attachment A.
[2]  Roth Decl., Ex. 5: July 21, 2008 Telephonic Hearing Tr. at 5267:24-5271:19.
[3]  Roth Decl., Ex. 5: July 21, 2008 Telephonic Hearing Tr. at 5267:24-5271:19.

1  no other issue in this case. Further, the determination of the ability to pay punitive
2  damages is based on the defendant's net worth *at the time of trial*. Zhadan v.
3  Downtown Los Angeles Motor Distributions, Inc., 100 Cal. App. 3d 821, 839 (1979)
4  ("It has been determined that the jury should make its determination of the punitive
5  damages based on defendant's net worth at the time of trial."); Marriott v. Williams,
6  152 Cal. 705, 710 (1908). Accordingly, Mr. Larian is entitled to show—and rely on
7  documents that establish—his net worth *at the time of trial*.

8        Mattel, however, does not like the current, updated net worth calculations that
9  it specifically requested through its trial subpoena of Mr. Larian and that it urged the
10 Court to order to be produced just last week. But forcing Mr. Larian to stand on an
11 outdated calculation of his net worth when more current financial data is readily
12 available would be unjust. See Washington v. Farlice, 1 Cal. App. 4th 766, 777
13 (1991) (reversing and remanding to trial court for re-determination of punitive
14 damages award based on evidence of defendant's financial condition at the time to
15 trial). Mattel's application should thus be denied.

16     **A.**     **The Moss Adams Valuation Concerns Only Mr. Larian, Not MGA**

17       Mattel seeks to preclude the introduction of or reliance upon a Moss Adams
18 valuation of MGA that was served on July 23, 2008.[4] As a preliminary matter, it is
19 important to clarify that although Moss Adams was evaluating MGA, in the context
20 of this lawsuit, the valuation concerns only Mr. Larian, not MGA. This is because
21 the value of MGA is not related to any claim or issue in this case concerning
22 MGA—including damages. To be certain, the Moss Adams valuation is not relied
23 upon or even considered by MGA's damages experts.

24       In arguing that the Moss Adams *valuation* was responsive to Mattel's requests
25 for "DOCUMENTS sufficient to calculate [MGA's] *net worth*," Mattel confuses "net

---

[4]   See Mattel Declaration of Juan Pablo Alban ("Alban Decl."), Ex. 6.

MGA Parties' Opposition to Ex Parte Application to Exclude MGA's Financial Records and to
Compel Production of Bratz-Related Litigation Materials
Case No. CV 04-9049 SGL (RNBx)
3

worth" with "valuation." (App. at 4.) MGA's "net worth" is simply the book value of its assets less its liabilities, a figure easily obtained from MGA's balance sheets – something MGA produced long ago. See United States v. Heavrin, 330 F.3d 723, 732 (6th Cir. 2003) (net worth is calculated "by subtracting total liabilities from total assets"). Indeed, Mattel's damages expert, Mr. Wagner, has already calculated MGA's net worth on the basis of MGA's balance sheets.[5] By contrast, a *valuation* is an estimate of MGA's "fair market value," usually based on a projection of future cash flows discounted to the present. And the Moss Adams valuation is just that: a reflection of the value of MGA's future cash flows,[6] not the net value of its assets.

Mattel's expert understands the distinction between MGA's "net worth" and its "valuation." Mr. Wagner's expert report includes a section entitled "Net Worth of MGA,"[7] and as his supporting schedules make clear, Mr. Wagner obtained MGA's net worth figure from MGA's balance sheets.[8] Separately, Mr. Wagner's report includes a *valuation* of the Bratz franchise, which Mr. Wagner calculates by projecting future cash flows.[9]

Mattel's accusations regarding Ms. Tonnu's Rule 30(b)(6) testimony are therefore baseless. Ms. Tonnu's testimony on MGA's net worth does not implicate

---

[5] See Roth Decl., Ex. 6: Wagner Report at 23, Tab B2 Schedule 13.0 & Tab B2 Schedule 2.5 (deriving net worth figures from "MGA's Consolidated Balance Sheets, 1999-2006").

[6] Alban Decl., Ex. 6 at MGA 3896326 ("In the income approach, expected future . . . cash flows are discounted to present value at an appropriate rate of return for an investment.")

[7] Roth Decl., Ex. 6: Wagner Report at 23.

[8] Roth Decl., Ex. 6: Wagner Report at Tab B2 Schedule 13.0; Tab B2 Schedule 2.5 (deriving net worth from the Shareholders' Equity line on "MGA's Consolidated Balance Sheets, 1999-2006").

[9] Roth Decl., Ex. 6: Wagner Report at 13 ("I performed a valuation of the Bratz contribution to MGA stock based on the income approach in the form of a discounted cash flow (DCF) analysis.").

valuations performed by Moss Adams; rather, it related to the net value of MGA's assets, as reflected on MGA's balance sheets. That Ms. Tonnu could not recall this number from memory[10] has nothing to do with Ms. Tonnu's dealings with Moss Adams in connection with its valuation of the company. Ms. Tonnu simply testified truthfully that, as Vice President of Taxation, she does not "deal with net worth."

In sum, the only relevance of the Moss Adams valuation is to Mr. Larian's net worth, which necessarily includes the value of his ownership of MGA shares.[11] Because Mr. Larian's net worth at the time of trial must be ascertained in order to determine what punitive damages he would be able to pay, the value of MGA at the time of trial must be ascertained. Zhadan, 100 Cal. App. 3d at 839. Accordingly, the most recent valuation of MGA is important information that Mr. Larian should be permitted to rely upon when showing his current net worth.[12]

### B. Mr. Larian Has Not Violated Any Court Order Or Discovery Rule By Producing The Moss Adams Valuation Of MGA

Mattel seeks to preclude the use of the Moss Adams valuation on the ground that Mr. Larian has violated discovery rules and/or court orders. This is wrong.

Mattel's Request to Produce No. 269 demanded documents "sufficient to show or calculate" Mr. Larian's net worth. Mr. Larian met this demand. Although he

---

[10] Alban Decl., Ex. 9 at 324:18-20.
[11] On July 23, 2008, pursuant to the Court's order during the July 21, 2008 telephonic hearing, Mr. Larian produced an updated "List of Assets." See Alban Decl., Ex. 4 (MGA 3896257 R). That updated list includes an MGA share value, which constitutes the value of MGA as determined by Moss Adams in its valuation, multiplied by the percentage of MGA shares in which Mr. Larian maintains an interest. See Alban Decl., Ex. 6: Moss Adams Valuation, at 36.
[12] The Moss Adams valuation was finalized in July 2008 but is based on June 2007 data. Thus, it does not reflect the year-end 2007 and 2008 downturn. Moreover, it does not reflect the effect of the Phase 1(a) verdict – which casts a cloud over MGA's profitability and hence its value.

initially objected to Request No. 269, Mr. Larian thereafter complied with Judge Infante's December 31, 2007 order to respond by producing documents that were "sufficient to show or calculate" his net worth at that time. To meet his obligation to provide documents "sufficient to show or calculate" his net worth, Mr. Larian was not obligated to produce "all" documents pertaining to his net worth.[13]

While Mattel takes issue with the production of the Moss Adams valuation now, that valuation is no exception. Moss Adams provided only a valuation of MGA, not a direct analysis of Mr. Larian's net worth. As was explained in MGA's successful Motion to Quash Subpoenas, including the subpoena directed at Moss Adams, MGA and Mr. Larian had clearly provided documents "sufficient to show or calculate" the value of MGA, and thus the value of Mr. Larian's interests in MGA for the purposes of ascertaining Mr. Larian's net worth.[14] Judge Infante correctly agreed that further production from Moss Adams would thus be cumulative or duplicative.[15]

### C. Isaac Larian Produced The Moss Adams Valuation Immediately After The Final Version Was Provided To Him, And In Compliance With This Court's Orders And The Discovery Rules

In addition, Mattel is incorrect that Mr. Larian was tardy in producing the Moss Adams valuation. The valuation was not provided by Moss Adams in final form until July 23, 2008, the same day it was produced to Mattel.[16] Thus, it was not late. Rather, it was a timely supplemental production under Rule 26.

Further, the Court on July 21, 2008 ordered Mr. Larian to provide updated personal net worth information no later than July 23, 2008, in anticipation of his

---

[13] Mattel in its document requests distinguishes between producing "all" documents related to a matter and producing documents "sufficient to show" a particular fact. See Alban Decl., Ex. 1.
[14] Alban Decl., Ex. 7: MGA Motion to Quash Subpoenas at 18.
[15] Alban Decl., Ex. 8: Order Granting In Part and Denying In Part MGA Parties' Motion to Quash Subpoenas.
[16] Declaration of Lisa Tonnu ("Tonnu Decl.") ¶ 4.

upcoming Phase 1(b) testimony.[17] Mr. Larian's production of the Moss Adams valuation was pursuant to and in compliance with that order, as it provides underlying support for Mr. Larian's updated net worth calculation.[18]

## II. MGA Produced Its Fiscal Year 2007 Data In Compliance With The Court's Orders And Consistent With Its Discovery Obligations

Contrary to Mattel's contentions, MGA has produced its financial data in compliance with the Court's orders and its discovery obligations under the Federal Rules.

By December 2007, MGA had produced more than 3 million pages of documents, including thousands of pages of financial schedules and related data. Then, on December 28, 2007, Judge Infante ordered MGA to produce still more financial documents.[19] MGA complied with that Order on January 17, 2008, producing the most up-to-date financial data available, including sales and cost data through October 2007.

Mattel's speculation that MGA withheld more recent data that was available at that time is simply baseless. Due in part to the turmoil wrought by this litigation, MGA's 2007 year-end profit-and-loss statements were not available until after the

---

[17] Roth Decl., Ex. 5: July 21, 2008 Telephonic Hearing Tr. at 5267:24-5271:19.
[18] Tonnu Decl. ¶ 5. The 2006 "List of Assets" calculates the value of the Larians' shares at $1,636,380,000. Roth Decl., Ex. 7. That same value was re-used for the 2007 "List of Assets." Compare Alban Decl., Ex. 3 with Roth Decl., Ex. 7. The 2008 "List of Assets" produced on July 23, 2008, updates the value of the 2007 list by, inter alia, providing an updated value for the MGA shares, i.e., 81.82% of the value of MGA set forth in the Moss Adams valuation. Tonnu Decl. ¶ 5; Alban Decl., Ex. 4.
[19] See Alban Decl., Ex. 12: Dec. 28, 2007 Order.

---

January 28, 2008 discovery cut-off.[20]  In fact, for similar reasons, audited financials for 2007 are still unavailable.[21]

Mattel did not request updated financial information until July 17, 2008.[22] MGA complied with that request within five days,[23] producing its final 2007 profit-and-loss statement and draft financials reflecting results from January through June 2008.[24]  MGA has since produced additional data in response to Mattel's inquiries.

In short, MGA did not – and has not – withheld financial data.  Rather, MGA promptly produced the financial schedules available to it.  Mattel's effort to preclude MGA from introducing timely produced financial documents that Mattel itself requested, simply because it does not like the data contained therein, should be rejected.[25]

---

[20] Declaration of Stephen Schultz ("Schultz Decl.") ¶¶ 3-8.
[21] Schultz Decl. ¶ 9.
[22] Roth Decl., Ex. 1: July 17, 2008 E-mail from J. Corey to C. Roth.
[23] Roth Decl. ¶ 4.
[24] Id.
[25] Mattel's suggestion that MGA's 2007 financial data is unreliable because it is unaudited lacks merit. (See App. at 5 n.19.) Mattel's own expert relies without reservation on scores of unaudited financial documents to compute Bratz profits. See, e.g., Roth Decl. Ex. 6: Wagner Report at 9 (basing calculation of MGA ad media and ad production expenses on unaudited, internal documents). And courts routinely permit experts to testify based on unaudited financial reports and other internal financial data. See, e.g., Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc., 851 F.2d 540, 544-546 (1st Cir. 1988) (permitting expert to rely upon internal financial documents and interviews with company personnel for purpose of deriving damages estimates because it is "obvious that these are sources of information normally and reasonably relied upon by accountants"); Galaxy Computer Servs., Inc. v. Baker, 325 B.R. 544, 560-561 (E.D. Va. 2005) (permitting expert to testify based on unaudited financial statements and sales reports).

III. **Mattel Seeks A Double Standard Which Ignores Its Recent Production Of Damages-Related Data And Information**

Mattel's claim that it will be prejudiced by new, updated information is ill-founded and disingenuous. Both sides have produced new schedules and data relating to Phase 1(b) damages since the Phase 1(a) verdict was delivered. Mattel should not be permitted to use the reality of updated information as both a sword and a shield.

On July 22, 2008—the same day MGA produced updated financial data—Mattel produced revised schedules from its damages expert, Mr. Wagner.[26] Those schedules altered Mr. Wagner's previous damages estimate by $100 million. Also on that same day, Mattel produced a new expert report focused on damages and apportionment issues.[27] Rather than resorting to motion practice, the parties have addressed the new disclosures by producing witnesses for deposition. For example, on July 22, MGA produced revised damages schedules from its damages expert, Paul Meyer, that incorporated MGA's year-end 2007 and 2008 financials.[28] At Mattel's request, MGA is producing Mr. Meyer for deposition today, during which Mattel is free to examine Mr. Meyer regarding the schedules and his use of the new financial data.[29]

Under such circumstances, there is simply no harm. See Potlatch Corp. v. United States, 679 F.2d 153, 158 (9th Cir. 1982) (Rule 37(b) preclusion inapplicable where prejudice is insubstantial); Competitive Techs. v. Fujitsu Ltd., 286 F. Supp. 2d 1161, 1168-1169 (N.D. Cal. 2003) (refusing to strike expert reports where, inter alia,

---

[26] Roth Decl. ¶ 5.
[27] Roth Decl. ¶ 6.
[28] Roth Decl. ¶ 9.
[29] Roth Decl. ¶ 10.

failure to comply was harmless). The real harm would be to withhold from the jury current financial information that is available.

## IV. Mattel's Motion To Compel Is Baseless

Mattel's application also includes a host of untimely and meritless requests for the production of documents and tangibles related to MGA's prior litigations. Specifically, Mattel seeks to compel the production of items that MGA has previously alleged infringe the Bratz dolls, higher resolution color copies of certain documents, and allegedly missing exhibits to pleadings filed in Hong Kong actions. In apparent recognition of the emptiness of their demands, Mattel last week issued trial subpoenas to MGA, MGA Entertainment (HK) Limited and non-party Multitoy, Inc. (the "Subpoenas") requesting the production of virtually the same documents and tangibles.

As discussed at length in the MGA Parties' Motion to Quash the Subpoenas, filed July 31, 2008 (Docket No. 4173), Mattel's eleventh-hour request to compel lacks merit for several independent reasons. *First*, Judge Infante denied Mattel's motion to compel the very tangible items Mattel seeks to compel here.[30] Although

---

[30] Judge Infante denied Mattel's requests to produce:
1. A sample of each doll, product or other matter that, whether in whole or in part, [MGA has] alleged or contended INFRINGES BRATZ in any THIRD PARTY LAWSUIT, including without limitation in the BRATZ LAWSUITS.
2. To the extent not produced in Response to Request No. 1, a sample of each doll, product or other matter that, whether in whole or in part, [MGA has] alleged or contended, including in any cease and desist letter, INFRINGES BRATZ.
3. All photographs, digital scans or other depictions of each and every doll, product or other matter that, whether in whole or in part, [MGA has] alleged or contended INFRINGES BRATZ in any THIRD-PARTY LAWSUIT, including without limitation in the BRATZ LAWSUITS.
4. To the extent not produced in Response to Request No. 3, all photographs, digital scans or other depictions of each doll, product or other

(cont'd)

1 | Mattel appealed portions of Judge Infante's ruling, it did not appeal the portions of
2 | the order denying Mattel's request for the production of the products that MGA has
3 | previously claimed in litigation infringed Bratz. (Docket No. 4173 at 3-4.) Thus, it
4 | is little surprise that Mattel's application nowhere cites any language from the Court's
5 | May 12, 2008 Order that would compel the production of the tangibles at issue.
6 | Having failed to appeal, Mattel may not now attempt to circumvent Judge Infante's
7 | Order.

8 |     *Second*, Mattel's discovery requests are time-barred. Any alleged deficiencies
9 | in MGA's document production have been known to Mattel for at least six months
10 | after the discovery cut-off and several months after MGA's May 22, 2008 final
11 | supplemental production of pleadings and documents related to its other litigations.

12 |     *Third*, MGA has satisfied its production obligations. Acting in good faith,
13 | MGA spent millions of dollars producing high-quality, color copies of documents
14 | responsive to Mattel's requests for production. MGA has no obligation to produce
15 | higher resolution copies of those images. Plus, the four examples of allegedly
16 | missing documents appear elsewhere in MGA's production or are irrelevant.[31]

---

*(cont'd from previous page)*
    matter that, whether in whole or in part, [MGA has] ever alleged or contended,
    including in any cease and desist letter, INFRINGES BRATZ.
(*See* Docket No. 4173 at 2-3.)

[31] The four exhibits identified by Mattel are attached to the affirmation of Lee Shiu Cheung in two separate litigations. Mattel complains that MGA has failed to produce Exhibit LSC-3 to Cheung's affirmation in the *Union Top* and *Wai Man* cases. MGA already produced several of Mr. Cheung's affirmations, which appear to attach the same exhibit of "initial concept drawings." Exhibit LSC-3 to Affirmation of Lee Shiu Cheung in MGA v. Linwell (MGA 3888429-47; also MGA 3886990-7008); Exhibit LSC-3 to Affirmation of Lee Shiu Cheung in MGA v. Toys & Trends (MGA 3883142-59); Exhibit LSC-3 to Affirmation of Lee Shiu Cheung in MGA v. Hunglam (MGA 0886139-57); Exhibit LSC-3 to Affirmation of Lee Shiu Cheung in MGA v. Double Grand (MGA 0883947-61). The situation is the same with Exhibit LSC-9 to Mr. Cheung's Affirmation in MGA v. Wai Man, which is the "pile of

*(cont'd)*

*Finally*, it would impose an undue burden on MGA to search for the requested documents and tangibles during the last weeks of trial. Many of the tangibles and documents requested are not in MGA's possession, custody, or control, may not exist, or are being held by courts in other jurisdictions. (Docket No. 4173 at 7.)

## CONCLUSION

For these reasons, MGA and Isaac Larian respectfully request that the *Ex Parte* Application be denied in its entirety.

DATED: August 1, 2008

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: /s/ Thomas J. Nolan
    Thomas J. Nolan
    Attorneys for the MGA Parties

---

*(cont'd from previous page)*
decoration directions . . . made by Anna Rhee from the initial drawings of Mr. Bryant . . . ." (TX 13743-7.) This same exhibit is attached to other Cheung affirmations from other cases. (E.g., MGA 0886062-86; MGA 3887016-40; MGA 3889347-72; MGA 3892449-73.) The final exhibit is completely irrelevant to this litigation; Exhibit LSC-22 to Mr. Cheung's affirmation in the MGA v. Union Top case is "the latest annual return of the Defendant [Union Top]." (TX 13725.)