THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
LAUREN E. AGUIAR (Admitted Pro Hac Vice)
(laguiar@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA  90071-3144
Tel.: (213) 687-5000
Fax: (213) 687-5600

Attorneys for The MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>　　　　　　　Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with Case No. 04-9059<br>and Case No. 05-2727<br><br>Honorable Stephen G. Larson<br><br>REPLY IN SUPPORT OF MGA PARTIES' MOTION FOR MISTRIAL<br><br>Hearing Date: August 4, 2008<br>Time: 1:00 p.m. |

**PUBLIC REDACTED VERSION**

# TABLE OF CONTENTS

PAGE:

ARGUMENT ..................................................................................................... 2

    I. Federal Rule of Evidence 606 Permits This Court to Consider Evidence of Juror No. 8's Bias, and That Evidence Proves That She Was Biased ....... 2

        A. Under Ninth Circuit Precedent, Rule 606(b) Permits Inquiry into the *Existence* of Racial/Ethnic Juror Bias ............................... 2

        B. Juror No. 8's Statement Demonstrated Her Actual Bias, Which Is Imputed to the Entire Jury and Invalidates the Phase 1a Verdict ........................................................................................... 6

        C. Rule 606(b) Bars Evidence Of the *Effect* of Juror No. 8's Statements ................................................................................ 7

    II. The MGA Parties' *Voir Dire* Was Adequate To Reveal Juror No. 8's Bias ................................................................................................................ 8

    III. No Evidentiary Hearing Is Needed Given The Court's Factual Findings ............................................................................................................... 10

    IV. Mattel's Unsupported Suggestion That The Jury Redeliberate Is Specious ................................................................................................... 11

    V. Granting A Mistrial Does No Harm At All To Mattel's Appeal Rights ................................................................................................................ 12

CONCLUSION ................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**            **Page(s)**

Bacon v. Lee,
  225 F.3d 470 (4th Cir. 2000) ........................................................................5

Batson v. Kentucky,
  476 U.S. 79 (1986) ........................................................................................4

Beard v. Mitchell,
  604 F.2d 485 (7th Cir. 1979) ........................................................................8

Canady v. Runnels,
  No. CV05-6551,
  2006 WL. 2331008 (C.D. Cal. Aug. 4, 2006) ..............................................4

Carson v. Polley,
  689 F.2d 562 (5th Cir. 1982) ........................................................................5

Duk v. MGM Grand Hotel, Inc.,
  320 F.3d 1052 (9th Cir. 2003) ....................................................................11

Dyer v. Calderon,
  151 F.3d 970 (9th Cir. 1998) ........................................................................3

Hard v. Burlington,
  870 F.2d 1454 (9th Cir. 1989) ..................................................................7, 9

Jimenez v. Dr. Eduardo Heyliger Seguros Triple S, Inc.,
  792 F. Supp. 910 (D.P.R. 1992) .................................................................11

Lawson v. Borg,
  60 F.3d 608 (9th Cir. 1995) ........................................................................11

Lopez v. Aramark Uniform & Career Apparel, Inc.,
  417 F. Supp. 2d 1062 (N.D. Iowa 2006) ......................................................9

Martinez v. Food City, Inc.,
  658 F.2d 369 (5th Cir. 1981) ........................................................................5

Mason v. Mitchell,
  320 F.3d 604 (6th Cir. 2003) ........................................................................5

Mateyko v. Felix,
  924 F.2d 824 (9th Cir. 1990) ......................................................................11

McCoy v. Goldston,
  652 F.2d 654 (6th Cir. 1981) ........................................................................7

Medrano v. City of Los Angeles,
  973 F.2d 1499 (9th Cir. 1992) ......................................................................8

Neal v. John,
  110 F.R.D. 187 (D.V.I. 1986) .....................................................................10

<a>

Parker v. Gladden,
 385 U.S. 363 (1966) ..................................................................................11

Photostat Corp. v. Ball,
 338 F.2d 783 (10th Cir. 1964) .....................................................................9

Rainey v. Conerly,
 973 F.2d 321 (4th Cir. 1992) .......................................................................6

Rinker v. County of Napa,
 724 F.2d 1352 (9th Cir. 1983) .....................................................................6

Rushen v. Spain,
 464 U.S. 114 (1983) ....................................................................................3

Sanders v. Lamarque,
 357 F.3d 943 (9th Cir. 2004) .......................................................................9

Sea Hawk Seafoods, Inc. v. Alyeska Pipeline Serv. Co.,
 206 F.3d 900 (9th Cir. 2000) .......................................................................6

Shillcutt v. Gagnon,
 827 F.2d 1155 (7th Cir. 1987) .....................................................................5

Smith v. Pitman Manufacturing,
 1992 WL 8182 (9th Cir. Jan. 15, 1992) ......................................................7

Spaziano v. Florida,
 468 U.S. 447 (1994) ....................................................................................7

Summers v. United States,
 11 F.2d 583 (4th Cir. 1926) .......................................................................11

Sussman v. Unum Provident Corp.,
 2001 WL 1352789 (C.D. Cal. Oct. 30, 2001) ............................................7

Tanner v. United States,
 483 U.S. 107 (1987) ....................................................................................4

Tavares v. Holbrook,
 779 F.2d 1 (1st Cir. 1985) ...........................................................................6

Tinsley v. Borg,
 895 F.2d 520 (9th Cir. 1990) .......................................................................6

Tobias v. Smith,
 468 F. Supp. 1287 (W.D.N.Y. 1979) ..........................................................3

Tracey v. Palmateer,
 341 F.3d 1037 (9th Cir. 2003) ...................................................................10

United States v. Click,
 807 F.2d 847 (9th Cir. 1987) .......................................................................8

United States v. Aguon,
 851 F.2d 1158 (9th Cir. 1988) .....................................................................9

</a>

United States v. Angulo,
4 F.3d 843 (9th Cir. 1993) .................................................................................. 11

United States v. Duzac,
622 F.2d 911 (5th Cir. 1980) ................................................................................ 5

United States v. Foghorn,
No. CR 03-2365,
2006 WL. 4017477 (D.N.M. Oct. 20, 2006) ........................................................ 5

United States v. Gonzalez,
214 F.3d 1109 (9th Cir. 2000) .............................................................................. 6

United States v. Heller,
785 F.2d 1524 (11th Cir. 1986) ........................................................................ 6, 7

United States v. Henley,
238 F.3d 1111 (9th Cir. 2001) .......................................................................... 6, 7

United States v. Ladd,
885 F.2d 954 (1st Cir. 1989) ............................................................................... 11

United States v. McClinton,
135 F.3d 1178 (7th Cir. 1998) ....................................................................... 6, 11

United States v. Roach,
164 F.3d 403 (8th Cir. 1998) ................................................................................ 5

U.S. v. Sarkisian,
197 F.3d 966 (1999) ........................................................................................... 11

United States v. Smith,
424 F.3d 992 (9th Cir. 2005) .............................................................................. 10

Williams v. Price,
343 F.3d 223 (3d Cir. 2003) ................................................................................. 4

Wright v. United States,
559 F. Supp. 1139 (E.D.N.Y. 1983),
aff'd, 732 F.2d 1048 (2d Cir. 1984) ...................................................................... 3

**STATUTES**

Fed. R. Civ. P. 48 ................................................................................................ 11

## PRELIMINARY STATEMENT

The MGA Parties were entitled to a unanimous verdict reached by ten unbiased jurors. No one, including Mattel, disputes that one of those jurors was not impartial. The nature of the statement made by Juror No. 8 can leave no doubt on that score. Given Juror No. 8's indisputable bias, Mattel implicitly concedes in the first sentence of their brief that she was biased by arguing that "nine fair, honest, impartial jurors returned a unanimous verdict," when there were **ten** jurors. (Opp'n at 1.)

See also 7/25/08 Order at Finding 1.) The law is crystal clear that, in civil and criminal cases alike, the taint of even one unbiased juror is sufficient to require a mistrial.

Unable to deny Juror No. 8's bias, Mattel seeks to preclude all evidence of it, arguing that Evidence Rule 606(b) prohibits admission of evidence of juror bias. Were Mattel's position accepted, no form of later-discovered bias would be curable, no matter how egregious. Both the Ninth Circuit and the Supreme Court, however, have indicated that evidence of racial/ethnic bias is so serious that it qualifies as an exception to the general rule prohibiting investigation into jury deliberations. Racial or ethnic bias, by definition, has no place in deliberations in a case and is always, by nature, an "extraneous" factor. Mattel tries to avoid the directly applicable analysis in U.S. v. Henley, 238 F.3d 1111 (9th Cir. 2001) by citing a litany of out-of-Circuit cases, most of which Mattel badly misstates. Mattel does not, because it cannot, deny that the tainted vote of even one juror is sufficient to nullify a verdict. Neither the impact of the juror's bias on the other jurors nor a showing of actual prejudice is required or relevant – all that need be proven is the underlying bias.

Mattel compounds its error by offering evidence that Juror No. 8's bias supposedly had no effect on other jurors. However, Rule 606(b) permits evidence of a juror's bias, but precludes as a matter of law any inquiry or evidence into the effect of that bias on the deliberations or verdict. This is why a finding of bias of even one juror requires no

evidence of prejudice to mandate a mistrial. Naturally, Juror No. 8 denied her bigotry and the other jurors denied being influenced by her. This is precisely why Rule 606(b) forecloses inquiry into the effects of Juror No. 8's bias, because such denials are inherently untrustworthy. While no one doubts that the other jurors believe they were not influenced, it matters not as the jury acts as a single unit and the taint of one must be implied to all.

Mattel argues the MGA Parties were obligated to "ferret out potential ethnic biases" during *voir dire* and contends they failed to do so. (Opp'n at 13-15.) As discussed below, Mattel misstates the standard on *voir dire* and ignores the record showing that the questions asked sufficed under the proper standard to elicit any bias.

Mattel's remaining arguments are specious. For instance, Mattel asserts that "an evidentiary hearing is necessary before a finding of actual bias can be made" but ignores the fact that this Court already held an evidentiary hearing (at Mattel's request), interviewing every juror in chambers on this exact issue, with the explicit consent of counsel for both parties, and made findings of fact that compel the conclusion that Juror No. 8 was biased. Mattel also proposes that the Court order the remaining nine jurors to redeliberate, ignoring that the taint of Juror No. 8 infected and is imputed to all jurors and that the remaining jurors have now heard Phase 1b evidence that was inadmissible in Phase 1a.

The MGA Parties had a constitutional right to a fair and impartial jury reaching a unanimous verdict. The record cannot be disputed that Juror No. 8 was ethnically biased and under settled law, that fact compels granting the MGA Parties a mistrial. A decision endorsed by our judicial system should be free of any taint.

## ARGUMENT

### I. Federal Rule of Evidence 606 Permits This Court to Consider Evidence of Juror No. 8's Bias, and That Evidence Proves That She Was Biased

#### A. Under Ninth Circuit Precedent, Rule 606(b) Permits Inquiry into the *Existence* of Racial/Ethnic Juror Bias

In arguing that Fed. R. Evid. 606(b) bars consideration of Juror No. 8's statements, Mattel overlooks a critical point: that Juror No. 8's statements were not just any type of statement, they were statements evincing racial/ethnic bias going to the core of this case (e.g.

theft of ideas). That simple but essential fact was at the center of the Ninth Circuit's extended discussion of the matter in Henley, 238 F.3d 1111, and explains why Juror No. 8's statements are the basis for declaring a mistrial.

Henley extensively discussed Rule 606(b)'s impact on racial bias allegations, mindful of "the apparent conflict between protecting a defendant's right to a fair trial, free of racial bias, and protecting the secrecy and sanctity of jury deliberations." 238 F.3d at 1119. The Ninth Circuit recognized that compelling reasons grounded in due process counsel against mechanical application of Rule 606(b) to exclude evidence of racial/ethnic bias. Id.[1] The due process right to a fair trial, the Court noted, would be compromised "by the bias or prejudice of even a single juror." Id. at 1120 (quoting Dyer v. Calderon, 151 F.3d 970, 973 (9th Cir. 1998) (en banc)). Thus, "[e]ven without characterizing racial bias as 'extraneous,' a powerful case can be made that Rule 606(b) is wholly inapplicable to racial bias because, as the Supreme Court has explained, '[a] juror may testify concerning any mental bias in matters unrelated to the specific issues that the juror was called upon to decide.'" Id. (quoting Rushen v. Spain, 464 U.S. 114, 121 n. 5 (1983) (per curiam)). The Court explained:

> Racial prejudice is plainly a mental bias that is unrelated to any specific issue that a juror in a criminal case may legitimately be called upon to determine. **It would seem, therefore, to be consistent with the text of the rule, as well as with the broad goal of eliminating racial prejudice from the judicial system, to hold that evidence of racial bias is generally not subject to Rule 606(b)'s prohibitions against juror testimony.**

Id. (emphasis added). Thus, the Ninth Circuit "f[ou]nd persuasive those cases that have exempted evidence of racial prejudice from Rule 606(b)'s" reach. Id. at 1121. While technically not a holding, this extended discussion of the precise issue involved here demonstrates how the Ninth Circuit has analyzed the question. Mattel cited no Ninth

---

[1] Accord Wright v. U.S., 559 F. Supp. 1139, 1151 (E.D.N.Y. 1983) (noting "potential constitutional difficulties in applying Rule 606(b) to all allegations of racial prejudice" and "if a criminal defendant could show that the jury was racially prejudiced, such evidence could not be ignored without trampling the sixth amendment's guarantee to a fair trial and an impartial jury"); Tobias v. Smith, 468 F. Supp. 1287, 1290 (W.D.N.Y. 1979) (permitting racial bias evidence).

1  Circuit authority even remotely questioning Henley's analysis.²

2      Mattel's contention that Tanner v. U.S., 483 U.S. 107 (1987), somehow changes the landscape is misplaced. Mattel's fundamental misconception here is to equate the particular evil of racial/ethnic prejudice (the subject of the analysis in Henley and Rushen) with the more generalized notion of juror incompetence at issue in Tanner. It goes without saying that the two are not the same, let alone coextensive. Thus, Tanner stands for the proposition that many general allegations of juror incompetence – such as a juror's lack of sobriety, which was the specific issue in Tanner – are off-limits under Rule 606(b). But Tanner does not hold – because the question was never presented – that evidence of racial or ethnic prejudice is or should be treated on a par with other, generalized juror misconduct. To construe Tanner as Mattel proposes obscures the fact that a juror that engages in misconduct could in some circumstances continue to serve as an impartial juror, while a bias that nullifies the ability to be impartial **always** requires that the juror be removed from the jury. See, e.g., Batson v. Kentucky, 476 U.S. 79, 87-88 (1986) (racial bias in the judicial system "is an impediment to securing to [members of racial minorities] that equal justice which the law aims to secure to all others.").

      Mattel's other citations are similarly inapposite, some in the extreme. Canady v. Runnels, 2006 WL 2331008 (C.D. Cal. Aug. 4, 2006), which is identified as a decision of "this Court" (Opp'n at 6), is an unpublished report and recommendation by a magistrate judge concerning California state rules of evidence presented in the posture of a habeas corpus petition. Williams v. Price, 343 F.3d 223 (3d Cir. 2003), which is cited as a lead case in a long string of cases (Opp'n at 3-4), also addressed a habeas corpus petition dealing with state law rules of evidence. The specific question presented in Williams was whether the petitioner had procedurally defaulted the issue of admissibility of juror evidence because it had not squarely been presented to the state court. 343 F.3d at 237. Contrary to the inference Mattel wishes to draw, Williams clearly states that "[o]ur role in this case,

---
² Due to the special nature of racial/ethnic bias, evidence of such bias need not be "extrinsic" to be admissible, and thus Mattel's arguments regarding whether or not Juror No. 8's comments reflected extrinsic information (see Opp'n at 7-8) are irrelevant here.

however, is not to interpret Rule 606(b) or any other version of the 'no impeachment' rule but merely to determine whether the state courts contravened or unreasonably applied 'clearly established Federal law, as determined by the Supreme Court.'" Id. at 239.[3]

In other instances, while the emphasis is different, the courts are not as rigid and categorical as Mattel suggests. Moreover, if the facts of this case are applied under these alternative standards, the outcome is the same as what MGA seeks here. In Shillcutt v. Gagnon, 827 F.2d 1155, 1158-59 (7th Cir. 1987), for example (Opp'n at 4), the Seventh Circuit recognized an exception under Rule 606(b) for introduction of racist statements in cases where the resulting prohibition would deprive a defendant of the right to a fair trial. Id. at 1159 ("The rule of juror incompetency cannot be applied in such an unfair manner as to deny due process. Thus, further review may be necessary in the occasional case in order to discover the extremely rare abuse that could exist even after the court has applied the rule and determined the evidence incompetent.").[4] Thus, even applying the standard as expressed in Shillcutt, this Court has already found that this instance constitutes a rare, egregious occurrence, or it would not have dismissed Juror No. 8. Nor does Mattel dispute this dispositive underlying fact, as evidenced by the first sentence in its brief.[5]

Thus, Mattel misconstrues Ninth Circuit and Supreme Court precedent, and improvidently cites to case law that nowhere supports its rigid and categorical reading of Rule 606(b). Such a categorical reading is not plausible given the history of racial/ethnic

---

[3] Several other cases in Mattel's string cite are also habeas cases where the courts had no occasion to consider Rule 606(b). See Mason v. Mitchell, 320 F.3d 604, 614, 636 (6th Cir. 2003) (same); Bacon v. Lee, 225 F.3d 470, 477, 485 (4th Cir. 2000) (same))

[4] The Fifth Circuit adheres to a similar flexible standard, see Carson v. Polley, 689 F.2d 562, 581-82 (5th Cir. 1982) ("In an appropriate case, a letter from a juror to the court may reveal such a magnitude of prejudice as to move the court to grant a new trial rather than suffer an obvious default of justice."), even though a previous decision of that court appears to have made a different suggestion. See U.S. v. Duzac, 622 F.2d 911, 913 (5th Cir. 1980).

[5] Mattel's citations to other cases in that string are equally unavailing. (See Opp'n at 4.) In U.S. v. Foghorn, 2006 WL 4017477, at **14, 30-31 (D.N.M. 2006), the court found it unnecessary to reach the question of the applicability of Rule 606(b). In U.S. v. Roach, 164 F.3d 403, 413 (8th Cir. 1998), Rule 606(b) was applicable because a juror claimed "racial overtones" in other juror's treatment of her, testified about the resulting effect on her own vote but did not testify regarding any express statements of racial bias harbored by other jurors. Martinez v. Food City, Inc., 658 F.2d 369, 372-73 (5th Cir. 1981) was decided before Rushen and is inconsistent with the Fifth Circuit's decision a year later in Carson v. Polley, which applied a flexible standard. (Supra n.4.)

discrimination and the importance of ensuring that decisions in our judicial system are in any manner whatsoever affected or informed by such insidious factors.

### B. Juror No. 8's Statement Demonstrated Her Actual Bias

Juror No. 8's actual bias is beyond reasonable dispute. (Mot. § I.B.) Expressions of bias are by their "very nature an expression of prejudice on the part of the maker." Heller, 785 F.2d at 1527; see also Henley, 238 F.3d at 1121 ("[w]e have considerable difficulty accepting the government's assumption that, at this time in our history, people who use the word 'nigger' are not racially biased"). The circumstance of this case leave no doubt as to the seriousness of the statement and its import.

This Court lamented that Juror No. 8 could "harbor such a feeling and then make such a statement." (7/25/08 Tr. at 14:3-4.) These reactions compel the conclusion "that the person will not act with entire impartiality" – the standard for actual bias. Gonzalez, 214 F.3d at 1112.[6] "Doubts regarding bias must be resolved against the juror." Id. at 1114. Here, there can be no such doubts; Juror No. 8 was actually biased.[7] Thus, the verdict must be disregarded. (See Mot. § 1.A.)

Mattel's suggestion that bias is treated more leniently in civil trials than in criminal trials is wholly without merit. The Ninth Circuit has been clear that both civil and criminal litigants have a right to have their case heard and decided by an impartial jury. Sea Hawk Seafoods v. Alyeska Pipeline Serv. Co., 206 F.3d 900, 906 & n.4 (9th Cir. 2000); Rinker v. County of Napa, 724 F.2d 1352, 1354 (9th Cir. 1983).[8] See also Rainey v. Conerly, 973

---

[6] Cases such as U.S. v. McClinton, 135 F.3d 1178, 1188 (7th Cir. 1998) and Tavares v. Holbrook, 779 F.2d 1, 2-3 (1st Cir. 1985) are inapposite because a verdict had not been returned in those cases. In Foghorn, 2006 WL 4017477, at **30-31, the court declined to imply bias against the defendant because of the ambiguous nature of the statement. Here, there is no such ambiguity.

[7] Moreover, contrary to Mattel's assertions, there is also a basis for finding implied bias in this case. Courts imply bias where "'the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances.'" Gonzales, 214 F.3d at 1112 (quoting Tinsley v. Borg, 895 F.2d 520, 527 (9th Cir. 1990)). By any measure, a person who believed Iranians "stole other person's ideas" (Order at 1, finding No. 1; see also, 7/25/08 Tr. at 21:5-11) could not be expected to remain impartial in this case, which is supported by Juror No. 6's commonsensical and appropriate reaction that Juror No. 8 was not objective or impartial.

[8] Mattel "distinguishes the MGA Parties' authority by contending these cases "merely" establish that courts use the same "standard" to "assess[] the impact of extraneous influence on the jury." (See Opp'n at 19 n.23). As Henley makes clear, Mattel's purported distinction is inapposite

F.2d 321, 325 n.2 (4th Cir. 1992) ("an unbiased jury is no less a concern in civil proceedings than in criminal trials"); McCoy v. Goldston, 652 F.2d 654, 657 (6th Cir. 1981).

### C. Rule 606(b) Bars Evidence Of the *Effect* of Juror No. 8's Statements

Because Juror No. 8's own bias fatally undermines the legitimacy of this trial, there is no reason to explore further into the jury's deliberations. Moreover, it is not permissible. Not only is the effect of Juror No. 8's statements on the other jurors' deliberations irrelevant, evidence regarding that effect **is** barred under Rule 606(b). As the Supreme Court has made clear: "A juror may testify concerning any mental bias in matters unrelated to the specific issues that the juror was called upon to decide and whether extraneous prejudicial information was improperly brought to the juror's attention. But a juror generally cannot testify about the mental process by which the verdict was arrived." Rushen, 464 U.S. at 121 n.5. Thus, Juror No. 8's impermissible bias, but not its purported effect on the other jurors or the verdict, is all that may be considered in assessing the need for a mistrial.

Juror No. 8's self-assessing averments that she was not biased is entitled to virtually no weight. See Henley, 238 F.3d at 1121 (denials by a person who made a racist statement are entitled to little weight "[b]ecause the bias of a juror will rarely be admitted by the juror himself...."); U.S. v. Heller, 785 F.2d 1524, 1527 & n.1 (11th Cir. 1986) ("A racially or religiously biased individual harbors certain negative stereotypes which, despite his protestations to the contrary, may well prevent him or her from making decisions based

---

as racial bias is per se extraneous to any matter a jury may properly consider. The cases Mattel cites for the argument that the Constitutional right to an impartial jury is somehow lesser in civil cases say nothing of the sort. For example, Mattel relies on concurring opinions in two Supreme Court cases that note the unremarkable proposition that procedural safeguards generally are more stringent in criminal cases than civil cases. Spaziano v. Florida, 468 U.S. 447, 468 (1994) (Stevens, J., concurring in part and dissenting in part); In re Winship, 397 U.S. 358, 372 (1970) (Harlan, J., concurring). Mattel cites no cases, however, establishing that an impartial juror is more permissible in a civil case than a criminal one. Indeed, the unpublished Ninth Circuit case cited by Mattel, Smith v. Pitman Mfg., 1992 WL 8182 (9th Cir. Jan. 15, 1992), simply directs civil litigants to Hard v. Burlington Northern R. Co., in which the Ninth Circuit identified no sharp distinctions between civil and criminal litigants, and cited liberally to criminal cases in its analysis under McDonough and its analysis of Rule 606(b). 870 F.2d 1454, 1459-61 (9th Cir. 1989). The Central District case cited by Mattel, Sussman v. Unum Provident Corp., 2001 WL 1352789, at *1 (C.D. Cal. Oct. 30, 2001), cites to a Ninth Circuit criminal decision for the proposition that "[j]uror misconduct may be grounds for a new trial if prejudicial to the losing party," but does not address the issue here of juror bias. None of these cases dispute the fundamental precept established in the cases cited by MGA: due process requires that both civil and criminal cases be decide by a fair and impartial jury.

solely on the facts and law that our jury system requires."). Additionally, just as Juror No. 8's assessments of her own prejudices are particularly suspect (see Mot. § I.B at 15-17), so too are protestations by any other members of the jury because the jury acted as a unit and the other jurors were not aware of Juror No. 8's racial biases until after a verdict. Thus, Juror No. 8's views on the evidence and discussion during deliberations necessarily tainted each of the jurors, whether they were aware of it or not.

## II.   The MGA Parties' *Voir Dire* Was Adequate To Reveal Juror No. 8's Bias

Mattel argues that the MGA Parties' *voir dire* questions about the jurors' views on immigrants, and specifically immigrants from the Middle East, were not sufficient to "ferret[] out potential biases" and that the MGA Parties should have asked the panel "whether they or family members had ever done business with Middle Easterners or Persians or had any negative experiences" with Iranians. (Opp'n at 14-15.) Mattel's suggestion that the MGA Parties had to guess at every bias and ask specific questions or lose their right to complain is impractical, illogical, and unsupported in the Ninth Circuit.

"There is of course no rigid standard for determining the adequacy of the *voir dire*. ... 'The focus is exclusively on whether the procedure used for testing impartiality **created a reasonable assurance that prejudice would be discovered if present**.' An examination of the voir dire in its totality **must reveal questions or commentary adequate 'to call to the attention of the veniremen those important matters that might lead them to recognize or to display their disqualifying attributes**.'" Beard v. Mitchell, 604 F.2d 485, 501 (7th Cir. 1979) (emphasis added). In the Ninth Circuit, *voir dire* is found "adequate" and "sufficiently probed for prejudice and bias" where the court gave an overview of the case, asked jurors about their employment and connections to law enforcement and "whether they had any prejudices or biases that would prevent them from being fair and impartial in the case." Medrano v. City of Los Angeles, 973 F.2d 1499, 1507-08 (9th Cir. 1992). The Ninth Circuit does not require a party to ask highly sensitive questions directly to elicit bias to preserve their rights. See, e.g., U.S. v. Click, 807 F.2d 847, 850 (9th Cir. 1987) (court's refusal to ask specific question to determine homophobic bias was appropriate because the

1 question "would unnecessarily call attention to Click's effeminate mannerisms" and that the
2 court "conscientiously questioned the panel and determined that each member could serve
3 as a fair and impartial juror in the case"). Asking jurors about "negative experiences" with
4 Iranian businessmen would only "call attention to" something that should have played no
5 role in the jury's consideration of the issues. Mattel cited no contrary cases.[9]

6 Viewing the *voir dire* "in its totality," as demonstrated in the MGA Parties' opening
7 brief (Mot. at 5-6, 22-24), there is little question that Juror No. 8 was aware during *voir dire*
8 of Mr. Larian's background and was asked questions sufficient to require her to disclose her
9 bias. "[I]t is expected and required that jurors in their answers shall be completely truthful
10 and that they shall disclose, upon a general question, any matters which might tend to
11 disqualify them from sitting on the case for any reason." Photostat Corp. v. Ball, 338 F.2d
12 783, 786 (10th Cir. 1964). Here, given despite ample opportunity, Juror No. 8 never
13 disclosed her biases. Her failure to do so in the face of the questions posed was
14 "unreasonable" and supports a finding that she was dishonest. See Lopez v. Aramark
15 Uniform & Career Apparel, Inc., 417 F. Supp. 2d 1062, 1068-69 (N.D. Iowa 2006) (court
16 considers "whether or not the juror 'could have honestly believed' that no response to the
17 pertinent *voir dire* question was required. ... This, in turn, requires consideration of whether
18 the answer (or presumably, the lack of an answer), was 'reasonable.'").

19 The MGA Parties also showed, and Mattel does not dispute, that Juror No. 8 had a
20 continuing obligation to disclose her biases in light of the Court's instruction to the jury
21 before the trial started and before deliberations began as to their obligation not to "*be
22 influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.* That

---

[9] Mattel's reliance on U.S. v. Aguon, is misplaced, as there a juror under investigation for a crime similar to that of defendant "was not asked if he was under investigation at *voir dire* or if he had been investigated" or whether he had been in a similar situation to defendant's. 851 F.2d 1158, 1170 (9th Cir. 1988). The emphasis on Larian's Middle Eastern immigrant roots and myriad references to Iran during the trial render Aguon inapposite. Similarly inapposite are Sanders v. Lamarque, 357 F.3d 943, 949 (9th Cir. 2004), and Hard, as the allegedly biased jurors in those cases **answered truthfully** voir dire questions likely to reveal bias. In Sanders, the juror "answered questions about her sons' [gang] activities in detail" and no longer lived in close proximity to the crime scene (357 F.3d at 949) and the juror in Hard testified truthfully that he had never been employed by the defendant. 870 F.2d at 1459. Here bias towards Middle East immigrants was raised in *voir dire* and Juror No. 8's concealment of her feelings was dishonest.

means that you must decide the case solely on the evidence before you." (7/10/08 Tr. at 4796:19-23; see also 5/27/08 Tr. at 54:4-7 (same instruction) (emphasis added).) When the Court gave this instruction *for the second time*, Mr. Larian's Iranian heritage was well-established. (See Mot. at 24.) Thus, assuming *arguendo* that Juror No. 8 was confused at the time of *voir dire* whether her belief that Iranians "are thieves, and have stolen other person's ideas" meant she might be harboring prejudice against Middle Eastern immigrant businessmen *en masse*, the fact that she later learned that Mr. Larian was Iranian obligated her to come forward and reveal her bias. See, e.g., Neal v. John, 110 F.R.D. 187, 189 (D.V.I. 1986) (in civil context, granting new trial where juror became biased against defendant for statement heard after testimony concluded, which she recounted to other jurors resulting in "presumptive prejudice" and "irreparably undermin[ing] the right of [the defendant] to a trial by an impartial jury").

### III. No Evidentiary Hearing Is Needed Given the Court's Factual Findings

Despite conceding that "Mattel is not suggesting that a hearing is required here" (Opp'n at 17 n. 19), Mattel argues that a mistrial must be denied because the MGA Parties did not ask for an evidentiary hearing. Nonsense.

at the conclusion of the Court's investigation, held a public hearing in which it outlined its findings as to Juror No. 8's bias – findings it memorialized in an order released that day. (See Mot. at 9-11.) Mattel not only does not challenge those findings, it cites them liberally in its opposition.[10]

---

[10] Mattel's cases are irrelevant. U.S. v. Smith, 424 F.3d 992, 1003-04 (9th Cir. 2005), held that the trial court did not err in failing to conduct an investigation into potential grand juror bias, "[g]iven that Smith makes no factual allegation of actual bias on the part of any grand juror in his case." Tracey v. Palmateer, 341 F.3d 1037, 1044 (9th Cir. 2003) actually questioned the juror accusing two others of bias and noted that in deciding whether to hold an evidentiary hearing, "the court must consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source" – which this Court clearly did in deciding to conduct the evidentiary hearing here.

1     Having asked for the investigation and accepted the findings, Mattel now asserts that to find actual bias and reduce the "speculation" surrounding Juror No. 8's comments, this Court is "required" to conduct a "necessary" evidentiary hearing but cites no cases that so hold. Citing U.S. v. Angulo, 4 F.3d 843, 847 (9th Cir. 1993), Mattel points out that such a hearing would entail that "the trial court determines the circumstances of what transpired, the impact on the jurors, and whether or not it was prejudicial." (Opp'n at 17.) Predictably, Mattel fails to explain how this hearing would differ from this Court's actions and findings a week ago. There is no need for another "evidentiary hearing."

## IV. Mattel's Unsupported Suggestion that the Jury Redeliberate Is Specious

    Mattel suggests that, having removed Juror No. 8, the Court can have the remaining nine jurors redeliberate and remove the taint. Mattel is wrong. Under the Court's orders, "all jurors remaining at the end of the case will be excused to deliberate, and they will be part of the jury that deliberates." (Mot. § I.C at 19-20; accord Fed. R. Civ. P. 48.) Ten jurors deliberated and reached a verdict and the MGA Parties had a right to an impartial and unanimous verdict of all ten jurors. (Mot. at 19-20, citing Parker v. Gladden, 385 U.S. 363, 365-66 (1966) ("petitioner was entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors"); Lawson v. Borg, 60 F.3d 608, 613 (9th Cir. 1995).)[11]

    As the MGA Parties have shown, and Mattel did not dispute, "[j]uries necessarily act as a unit and the misconduct of any juror, actual or implied, which forestalls or prevents a fair and proper consideration of the evidence presented in a case, is misconduct of the entire jury, vitiating their verdict and requiring a new trial." Jimenez v. Heyliger, 792 F. Supp. at 917-18. As Juror No. 8 was biased, her bias tainted the entire jury once they reached a

---

[11] Mattel's redeliberation authority is inapposite. For example, in U.S. v. Ladd, 885 F.2d 954 (1st Cir. 1989), after the jury misunderstood the Court's instructions as to drug use negating specific intent, the Court sent the jury back to redeliberate its guilty verdict. There were no allegations that the jurors engaged in improper behavior, nor was there any reason to believe that sending the jury back to deliberate would prejudice any party. See also Summers v. U.S., 11 F.2d 583 (4th Cir. 1926) (reversing verdict where jury was given a clarifying charge outside the presence of the defendant); Duk v. MGM Grand Hotel, Inc., 320 F.3d 1052 (9th Cir. 2003) (district court resubmitted inconsistent verdict form to jury pursuant to FRCP 49); Mateyko v. Felix, 924 F.2d 824 (9th Cir. 1990) (same). Likewise, both U.S. v. Sarkisian, 197 F.3d 966, 980 (1999) and McClinton, 135 F.3d at 1184, involved biased jurors who were excused before a verdict was reached and so these jurors had not fatally compromised the verdict. (Mot. § 1.A.)

verdict and so simply removing her and redeliberating is not an option. This is especially true since the remaining jurors have now heard opening statements and evidence in Phase 1b, including Mattel's claims to over $1 billion in damages against MGA and against Isaac Larian, an Iranian-American defendant in this case – matters that all parties agree were not properly considered in Phase 1a.

## V. Granting a Mistrial Does No Harm at All to Mattel's Appeal Rights

Mattel argues that it would be irreparably harmed by the Court's granting a mistrial, while the MGA Parties would not be prejudiced by allowing this case to proceed. Mattel has it backwards. If the Court grants a mistrial, Mattel may seek a writ of mandate or certification under 28 U.S.C. §1292(b). Conversely, if the Court allows the case to proceed, the MGA Parties face an award of damages from an irreparably tainted jury, based on a verdict in which an admittedly biased juror participated. If a mistrial is denied, then the MGA Parties will be forced to wait until after Phase 1b to appeal the denial of a mistrial. The financial consequences of such a verdict arguably could preclude MGA from ever getting its day in the appellate court as it likely would be unable to bond a large damage award and it would also face a potential injunction motion from Mattel that could effectively put MGA and its 1,700 employees out of work. And if the MGA Parties were successful on appeal, the case would begin anew at Phase 1(a) with weeks of time and expense unnecessarily wasted. A mistrial not only protects the MGA Parties' rights, but also is the most efficient resolution for both parties.

## CONCLUSION

For the foregoing reasons, the Court should grant a mistrial in this case.

DATED: August 1, 2008

SKADDEN, ARPS, SLATE, MEAGHER, & FLOM, LLP

By: _____
Thomas J. Nolan
Attorneys for the MGA Parties