THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
DAVID W. HANSEN (Bar. No. 196958)
(dhansen@skadden.com)
LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
(laguiar@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Tel.: (213) 687-5000
Fax: (213) 687-5600

Attorneys for The MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>Honorable Stephen G. Larson<br><br>**MGA'S MOTION FOR SANCTIONS AND A CURATIVE INSTRUCTION IN CONNECTION WITH MATTEL'S IMPROPER USE OF FOREIGN LAWSUITS DURING MATTEL'S PHASE 1-B OPENING STATEMENT**<br><br>**Date:** August 5, 2008<br>**Time:** 8:30 am<br>**Place:** Courtroom 1 |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT...........................................................................1

ARGUMENT .........................................................................................................2

I. THE APPLICABLE LEGAL STANDARD ........................................2

II. MATTEL'S COUNSEL USED AN INCORRECT AND HIGHLY PREJUDICIAL ILLUSTRATION OF MGA'S SUPPOSED INFRINGEMENT CLAIMS AGAINST THE "TRENDY TEENZ" DOLLS ..................................3

III. MATTEL'S ILLUSTRATIONS OF MGA'S SUPPOSED COPYRIGHT INFRINGEMENT CLAIMS WERE INCORRECT AND HIGHLY PREJUDICIAL IN OTHER RESPECTS ..........................................................5

IV. MGA'S PRIOR CONCERNS ABOUT UNDUE PREJUDICE STEMMING FROM MATTEL'S USE OF THE HONG KONG LITIGATIONS HAVE NOW BEEN CONFIRMED..................................................................................9

CONCLUSION ....................................................................................11

i

MGA'S Motion For Sanctions And A Curative Instruction In Connection With Mattel's Improper Use Of Foreign Lawsuits During Mattel's Phase 1-B Opening Statement – Case No. CV 04-9049 SGL (RNBx)

# TABLE OF AUTHORITIES

Page

**Cases**

Grant Thornton, LLP v. Federal Deposit Insurance. Corp,
  2007 WL 518421 (S.D. W.Va. Feb 13, 2007) ........................................................ 9

Lasar v. Ford Motor Co.,
  399 F.3d 1101 (9th Cir. 2005) ............................................................................... 2

Leatherman Tool Group, Inc. v. Cooper Industry, Inc.,
  199 F.3d 1009 (9th Cir. 1999) ............................................................................... 7

San-X Co. v. Tai Pan Bread & Cakes Co. Ltd.,
  Civ. Appeal No. 219 of 2002, 2002 WL 1341664 (Hong Kong Court of Appeal 2002) .... 8

United States v. Dinitz,
  424 U.S. 600 (1976) .............................................................................................. 2

**Other Authorities**

C.D. Cal. L.R. 83-3.1.2 .............................................................................................. 2

C.D. Cal. L.R. 83-7 ................................................................................................... 2

Model R. Prof. Conduct 3.4(e) (2004) ...................................................................... 2

ii

MGA'S Motion For Sanctions And A Curative Instruction In Connection With Mattel's Improper Use Of Foreign Lawsuits During Mattel's Phase 1-B Opening Statement – Case No. CV 04-9049 SGL (RNBx)

**PRELIMINARY STATEMENT**

Over MGA's strenuous objections, counsel for Mattel was allowed to present to the jury, during the Phase 1-B opening statements, information concerning foreign copyright lawsuits filed by MGA. The tangible dolls shown by Mattel's counsel during the opening statement were not produced to MGA during discovery, and MGA's counsel was only shown the slides illustrating these dolls shortly before Mattel's opening statement.

MGA's counsel has since determined that the tangible doll used by Mattel's counsel to illustrate MGA's supposed claims in the MGA v. Double Grand case was not actually the "Trendy Teenz" doll at issue in that case. Statements by Mattel's counsel concerning MGA's allegation against the "Mini Trendy Teenz" dolls, also at issue in Double Grand, were similarly misleading in that they did not involve MGA's copyright allegations, which were actually quite different and much narrower. Also, MGA's claims in the Double Grand case were based on a comparison of the 3-D Bratz dolls with the accused dolls, not on the Bryant drawings as argued by Mattel's counsel, and MGA's claims did not involve a comparison of the overall appearance of the Bratz dolls and the infringing Trendy Teenz dolls.

MGA predicted that Mattel would attempt to misuse the foreign litigation materials to confuse and mislead the jury and unfairly prejudice MGA. MGA's vehement objections to the use of these materials by Mattel were made to avoid precisely the sort of misconduct that occurred during Mattel's opening statement. MGA has already been seriously prejudiced by the misrepresentations by Mattel's counsel, and the presentation of evidence in Phase 1-B has not yet even begun. The misrepresentations by Mattel's counsel during opening statements is merely the tip of the iceberg, and allowing Mattel to continue down this path would be completely inappropriate. MGA therefore respectfully requests that the Court issue a sanctions order barring Mattel from further use of foreign litigation materials and any other sanction that the Court deems appropriate. MGA also requests that the Court provide the jury with a curative instruction relating to Mattel's misconduct during its opening statement.

1

MGA'S Motion For Sanctions And A Curative Instruction In Connection With Mattel's Improper Use Of Foreign Lawsuits During Mattel's Phase 1-B Opening Statement – Case No. CV 04-9049 SGL (RNBx)

# ARGUMENT

## I.   THE APPLICABLE LEGAL STANDARD

Central District of California Local Rule 83-3.1.2 adopts the California Rules of Professional Conduct, and notes that "the Model Rules of Professional Conduct of the American Bar Association may be considered as guidance." C.D. Cal. L.R. 83-3.1.2 Section 5-200(B) of the California Rules of Professional Conduct provide that, "[i]n presenting a matter to a tribunal, a member … shall not seek to mislead the judge . . . or jury by an artifice or false statement of fact or law." The Model Rules of Professional Conduct of the ABA similarly provide that a "lawyer shall not … in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence …." Model R. Prof. Conduct 3.4(e) (2004). Consistent with these ethical rules, Justice Burger stated in United States v. Dinitz, 424 U.S. 600 (1976):

> An opening statement has a narrow purpose and scope…. To make statements which will not or cannot be supported by proof is, if it relates to significant elements of the case, professional misconduct. Moreover, it is fundamentally unfair to an opposing attorney, with the standing and prestige inherent in being an officer of the court, to present the jury statements not susceptible of proof but intended to influence the jury in reaching a verdict

Id. at 612 (Burger, J., concurring).

The Central District of California's local rules provide for a variety of sanctions that the Court may impose at its discretion based on a party's failure "to conform to any of these Local Rules" – including monetary sanctions, the imposition of costs and attorneys' fees, or any other sanctions as the Court may deem appropriate under the circumstances. C.D. Cal. L.R. 83-7. The Ninth Circuit has held that "the decision to impose sanctions under its inherent authority is within the sound discretion of the district court." Lasar v. Ford Motor Co., 399 F.3d 1101, 1109 (9th Cir. 2005).

The misconduct by Mattel's counsel in opening statement, and the serious prejudice it has caused MGA, warrants appropriate sanctions here.

2

MGA'S Motion For Sanctions And A Curative Instruction In Connection With Mattel's Improper Use Of Foreign Lawsuits During Mattel's Phase 1-B Opening Statement – Case No. CV 04-9049 SGL (RNBx)

## II. MATTEL'S COUNSEL USED AN INCORRECT AND HIGHLY PREJUDICIAL ILLUSTRATION OF MGA'S SUPPOSED INFRINGEMENT CLAIMS AGAINST THE "TRENDY TEENZ" DOLLS

During its opening statement, Mattel's counsel showed the jury the following two slides, titled "2001 Cloe Bratz Doll vs. Trendy Teenz Doll":





Mattel's counsel presented these and other slides to suggest to the jury that MGA's copyright defense in <u>this</u> case was completely unfounded in light of MGA's claims in

3

foreign jurisdictions (e.g., Hong Kong) of copyright infringement against other dolls that are allegedly less similar to Bryant's drawings than the Bratz dolls. Mattel's presentation also was intended to prejudice the jury against MGA by making it appear as though MGA has in the past brought overreaching copyright infringement claims or made statements in other litigations that are inconsistent with MGA's current position. Thus, Mattel's counsel told the jury that:

> "Another case, they had a case called a Trendy Teens doll which they filed a lawsuit against, again, using the drawings. Right here I'm showing, comparing, the actual Cloe doll to the Trendy Teens doll to give some idea of proportion. You may see the actual Trendy Teens doll when you're back there. So the lawsuit was filed, again, listing these same basic drawings, the Carter Bryant drawings, the Mattel drawings. And the allegations in that lawsuit were, with respect to the Trendy Teens, is that this copied the Carter Bryant drawing, the Mattel drawing, and, in particular, what were copied were the eyes and the lips."

Tr. at 5444:3-14.

However, the doll used by Mattel's counsel in these slides is not the Trendy Teenz doll at issue in the Double Grand lawsuit filed by MGA. The actual Trendy Teenz doll at issue in the Double Grand lawsuit shown below is known to Mattel, and in fact was included with Mattel's proposed trial exhibits. (See TX 13561-0124, attached as Ex. 1 to the Declaration of David W. Hansen In Support Of MGA's Motion ("Hansen Decl."), submitted herewith):

4

It is readily apparent that the Trendy Teenz doll at issue in the <u>Double Grand</u> lawsuit looks completely different than the doll used by Mattel's counsel in his opening statement slides. This misconduct is inexcusable, and the prejudice to MGA is obvious.

### III. MATTEL'S ILLUSTRATIONS OF MGA'S SUPPOSED COPYRIGHT INFRINGEMENT CLAIMS WERE INCORRECT AND HIGHLY PREJUDICIAL IN OTHER RESPECTS

Mattel's counsel also showed the jury the following two slides, titled "2001 Cloe Bratz Doll vs. Design Girls Mini Trendy Teenz Doll," during his opening statement:



**2001 Cloe Bratz Doll vs. Design Girls Mini Trendy Teenz Doll**

While showing the jury these slides, Mattel's counsel stated as follows during his opening statement:

> "This is the mini Trendy Teenz doll, where MGA, in Hong Kong, cites the drawings … And I've got a picture here that gives you an idea of the scale of the mini, because it's a Mini Trendy Teenz compared to the Cloe Bratz doll. . . . And what MGA said with respect to this doll is saying 'you can't make this doll because we own this drawing.' They said that this Mini Trendy Teen doll had the same shape, head, as the drawing; that the shape of the head in comparison with the rest of the body is a little oversized – was the same as the drawing; that the shape and size of the nose was similar; that the shape of the eyes was similar; that the shape of the lips was similar; and that the shape of the feet, the feet were a little larger. . . . the point is that they were saying there were similarities. There were factual similarities. Which means you shouldn't be able to make those dolls because we owned the drawings."

Tr. at 5445:5-5446:6.

These slides and counsel's corresponding statements were improper and misleading

6

MGA'S Motion For Sanctions And A Curative Instruction In Connection With Mattel's Improper Use Of Foreign Lawsuits During Mattel's Phase 1-B Opening Statement – Case No. CV 04-9049 SGL (RNBx)

in a number of respects, and highly prejudicial to MGA.

First, the specific comparisons referenced by Mattel's counsel were not made in connection with MGA's copyright claims against the Trendy Teenz dolls. The comparisons appear to have been taken from the cease and desist letter sent by MGA's UK counsel, and relate to MGA's claims brought under what is known as the Hong Kong "Registered Design Ordinance." (See Hansen Decl., Ex. 1 at TX 13561-0111 "Design Rights"). The Hong Kong "Registered Design Ordinance" is significantly different from the Hong Kong "Copyright Ordinance," and the two laws involve different standards. (See Hansen Decl. Ex. 2, "Design Registration and Copyright Protection in Hong Kong– A Comparative Study"). To MGA's knowledge, the United States has not enacted laws similar to the Hong Kong "Registered Design Ordinance." See, e.g., Leatherman Tool Group, Inc. v. Cooper Ind., Inc., 199 F.3d 1009, 1012 (9th Cir. 1999) ("design protection laws [which have repeatedly been introduced in Congress during virtually every session since 1917] have not once been enacted") (citations omitted).

MGA's claims under the Hong Kong "Copyright Ordinance" were different, and more narrow, than those presented by Mattel's counsel during his opening statement. (See Hansen Decl., Ex. 1 at TX 13561-111). Thus, contrary to the statements by Mattel's counsel, MGA's claims under the "Copyright Ordinance" did not include claims concerning the head shape, the size of the head in comparison to the body, the shape and size of the nose, the general shape of the eyes or lips, or the shape or size of the feet. (See id. "Copyright")

Also contrary to the statements by Mattel's counsel both in connection with the "Trendy Teenz" and "Mini Trendy Teenz" dolls, the relative size of the dolls were not at issue in connection with MGA's claims in Hong Kong. (See Hansen Decl., Ex. 1 at TX 13561-110) For example, the cease and desist letter by MGA's UK counsel that apparently formed the basis of Mattel's remarks during opening statements specifically stated that "[a]part from the size of the full size doll, it is very similar to the MINI TRENDY TEENZ doll." (Id.) The statements and illustrations to the contrary were misleading and highly

7

1 prejudicial.

2 Moreover, the statements and illustrations made by Mattel's counsel that MGA's claims in Hong Kong involved a comparison of the Bryant drawings and the Trendy Teenz dolls are equally incorrect and highly prejudicial. As stated by MGA's UK counsel in connection with the cease and desist letter, MGA claimed that the Trendy Teen dolls infringed MGA's "copyright in the surface decoration of the BRATZ **dolls**." (Hansen Decl., Ex. 1 at TX 13561-111 (emphasis added)).

The suggestion by Mattel's counsel that the overall look of the Bratz dolls and the infringing dolls were at issue in these proceedings is also wrong and prejudicial to MGA. As noted, MGA's claims were limited to specific features of the infringing dolls, which MGA believes is consistent with standard practice under the Hong Kong "Copyright Ordinance." As the Hong Kong Court of Appeal explained in <u>San-X Co. v. Tai Pan Bread & Cakes Co. Ltd.</u>, Civ. Appeal No. 219 of 2002, 2002 WL 1341664 (Hong Kong Court of Appeal 2002) (Hansen Decl., Ex. 3), in distinguishing "passing-off" actions and "copyright infringement" actions under Hong Kong law:

> The gist of an action for passing off is deceptive resemblance. The defendant is charged with deceiving the public into taking his goods as and for the goods of the plaintiff. A visual comparison of the competing articles is often all that is required. If the overall impression is that 'they just do not look sufficiently similar' then the action will fail.
>
> **An action for infringement of artistic copyright, however, is very different. It is not concerned with the appearance of the defendant's work but with its derivation**.

2002 WL at ¶ 21 (emphasis added). The Hong Kong court further explained that:

> The first step in an action for infringement of artistic copyright is to identify those features of the defendant's design which the plaintiff alleges have been copied from the copyright work. The court undertakes a visual comparison of the two designs, noting the similarities and the differences. **The purpose of**

8

**the examination is not to see whether the overall appearance of the two designs is similar, but to judge whether the particular similarities relied on are sufficiently close, numerous or extensive to be more likely to be the result of copying than of coincidence.**

Id. (emphasis added); see also id. (in determining the ultimate issue of infringement "[t]here is no need to look at the infringing work").

Thus, even putting aside the basic impropriety of Mattel's use of MGA's allegations in foreign proceedings during the Phase 1-B trial, Mattel's comparisons of the "overall appearances" of the Bratz dolls and the accused dolls, rather than the specific features alleged by MGA to be copied, are clearly misleading, improper and highly prejudicial to MGA.

## IV. MGA'S PRIOR CONCERNS ABOUT UNDUE PREJUDICE STEMMING FROM MATTEL'S USE OF THE HONG KONG LITIGATIONS HAVE NOW BEEN CONFIRMED

Recognizing the inevitability of prejudice that would result from placing in front of the jury the Hong Kong actions, MGA asked the Court on three separate occasions to prevent Mattel from going down this road. On April 14, 2008, MGA filed its Motion In Limine No. 3, which foresaw the exact scenario now presented to the Court:

> Even if this Court finds that some of the evidence presented by Mattel is marginally relevant, it should be excluded as its limited probative value is substantially outweighed by the fact that this evidence is unduly prejudicial, confusing, misleading and certain to waste the Court's limited time. … Grant Thornton, LLP v. Federal Deposit Ins. Corp, 2007 WL 518421 at *1 (S.D. W.Va. Feb 13, 2007) (granting motion *in limine* to exclude evidence of other litigation involving the plaintiff: 'Allowing evidence of other litigation would not only cause the issues of the current case to be delayed in discussion, but would confuse the issues by introducing twelve additional fact situations which would

9

MGA'S Motion For Sanctions And A Curative Instruction In Connection With Mattel's Improper Use Of Foreign Lawsuits During Mattel's Phase 1-B Opening Statement – Case No. CV 04-9049 SGL (RNBx)

have to be dealt with individually before a decision on the merits of the current case could be reached.')

MGA Motion In Limine No.3 at 13.  See also MGA's Reply in Further Support of Motion In Limine No. 3 at 1, May 8, 2008 ("even if this Court would consider admitting such factual evidence, Mattel's biased and inaccurate summaries, based on its mischaracterization of cases, should not be admitted into evidence").

On July 22, 2008, MGA filed a bench memorandum specifically addressing Mattel's intent to offer into evidence Hong Kong pleadings during the Phase 1-B trial.  MGA once again pointed out the danger (which has now been realized) of permitting Mattel to utilize the Hong Kong pleadings in the context of a United States copyright case.  MGA explained how various statements "although factual, were made in a very different legal context." Bench Mem. at 4 (citations omitted).  MGA also pointed out its concerns that Mattel's use of the Hong Kong actions would lead to confusing "trial[s] within a trial," in which the jury would have to make a variety of comparisons between the Bryant drawings, Bratz dolls, and third party dolls, and that it was unduly prejudicial to ask the jury, as Mattel implicitly suggested, to "make a determination whether which of the dolls is 'less similar' to the Bryant drawings." Id. at 6-7.

Finally, during Mattel's opening statement, when Mattel's counsel first made the offending and inaccurate comparisons, MGA reiterated its objections, "referring to the comments and arguments we made before with respect to the direct comparison in other jurisdictions." Tr. 5443:8-10.

After months of reviewing (and arguing over the admissibility of) MGA's production of materials from actions in Hong Kong, Mattel is perfectly aware what was actually being claimed in those foreign litigations.  Nevertheless, Mattel used its opening statement to misrepresent the Hong Kong litigations to mislead and confuse the jury, distracting the jury from its task of determining copyright infringement under the Ninth Circuit's extrinsic and intrinsic tests.  These abuses – and the resulting confusion of the jury – will not be an isolated affair if the Court permits Mattel to continue using the Hong Kong litigations to its

10

1 unfair advantage.

2 The Court expressed concern at the July 23, 2008 hearing regarding the Hong Kong documents that it was "being asked to rule in the abstract about the specifics before me." Tr. 5391:7-8. The Court also recognized that statements in Hong Kong pleadings were not always clear, noting that "a statement may appear on the surface to be just a factual statement, but it is clear that it related to a legal concept, and that's what I will exclude." Tr. 5391:13-15. Now that Mattel has injected its misleading and incorrect summaries of MGA's Hong Kong litigation into its opening statement, the undue prejudice to MGA, which previously could only be discussed in the abstract, is evident and concrete. Mattel abused the Court's decision to allow Mattel to offer evidence concerning MGA's foreign lawsuits <u>before the presentation of evidence during the Phase 1-B trial has even begun</u>. MGA has been prejudiced by Mattel's misconduct, and there should be no legitimate question at this point that Mattel will continue to misuse the foreign litigation materials to confuse and mislead the jury. On this basis, it is clear that this danger can not be ruled upon on a "case-by-case" basis, and the Court should therefore preclude Mattel from using these foreign litigations further during the Phase 1-B trial.

## **CONCLUSION**

For the foregoing reasons, MGA respectfully requests that the Court bar Mattel from further use of the foreign copyright litigation materials during the Phase 1-B trial and issue any other sanctions order that the Court deems appropriate. This is the only way to end the misuse of these materials and avoid further jury confusion and prejudice to MGA. MGA also respectfully requests that the Court provide the jury with a curative instruction relating to Mattel's misconduct during its opening statement.

DATED: August 1, 2008    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: ____/s/ Thomas J. Nolan____
Thomas J. Nolan
Attorneys for the MGA Parties

11

MGA'S Motion For Sanctions And A Curative Instruction In Connection With Mattel's Improper Use Of Foreign Lawsuits During Mattel's Phase 1-B Opening Statement – Case No. CV 04-9049 SGL (RNBx)