```
 1  THOMAS J. NOLAN (Bar No. 66992)
    (tnolan@skadden.com)
 2  LAUREN E. AGUIAR (Admitted Pro Hac Vice)
    (laguiar@skadden.com)
 3  CARL ALAN ROTH (Bar No. 151517)
    (croth@skadden.com)
 4  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    300 South Grand Avenue, Suite 3400
 5  Los Angeles, CA  90071-3144
    Tel.: (213) 687-5000
 6  Fax: (213) 687-5600

 7  Attorneys for The MGA Parties
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>**MEMORANDUM REGARDING PUNITIVE DAMAGES** |
| AND CONSOLIDATED ACTIONS. | Phase 1<br>Trial Date:  May 27, 2008 |

# MEMORANDUM

An extensive search did not produce any cases directly addressing whether the jury in a bifurcated trial should consider the impact of a phase one verdict on the defendant's net worth in the context of determining the amount of punitive damages to award, if any. However, the longstanding policies underlying punitive damages and analogous case law strongly suggest that the jury should be armed with current information pertaining to a defendant's ability to pay any punitive damages award, including the effect of the jury's decisions on net worth.

"The principle that a punitive award must be considered in light of the defendant's financial condition is ancient." Adams v. Murakami, 54 Cal. 3d 105, 113 (1991) (citing Browning-Ferris Indus. v. Kelco Disposal, 492 U.S. 257, 287-89, 106 L. Ed. 2d 219, 246-47, 109 S. Ct. 2909, 2927 (1989) (O'Connor, J., concurring and dissenting) (discussing English law system of civil sanctions known as amercements)).

> The modern concept of punitive damages in the United States has its historical basis in Thirteenth Century England, where a system developed in which monetary penalties, called amercements, were exacted from civil wrongdoers. Amercements were imposed arbitrarily in amounts which were determined by courts according to their discretion. Abuses in the system of amercements arose, and consequently, several provisions of Magna Carta were devoted to the subject of amercements. These provisions of Magna Carta required that there be a reasonable, proportional, and sensible relationship between punishment and offense, and that the penalty exacted should not destroy the offender's means of making a living in his trade.[1]

See also Exxon Shipping Co. v. Baker, ___ U.S. ___, 171 L. Ed. 2d 570, 584-85, 128 S. Ct. 2605, 2620-21 (2008) (discussing origins of punitive damages).

---

[1] RICHARD L. BLATT ET AL., PUNITIVE DAMAGES: A STATE-BY-STATE GUIDE TO LAW AND PRACTICE § 1:3 (West 2007).

Thus, it is now well-settled that an award of punitive damages should be, "in view of the defendant's financial condition, the amount necessary to punish him or her and discourage future wrongful conduct." Kelly v. Haag, 145 Cal. App. 4th 910, 914 (2006). This is because the purpose of punitive damages is to deter future conduct, not to financially destroy the defendant. Adams, 54 Cal. 3d at 111. Accordingly, the amount of a punitive damages award must be based on the defendant's ability to pay. Id. at 116.

To be certain, the purpose of punitive damages is *not* to reward the plaintiff, either through a monetary windfall or by financially destroying a defendant who may be a competitor. See Exxon-Valdez, 128 S. Ct. at 2621 (punitive damages are not aimed at compensation, but rather punishment and deterrence). Thus, the law should be applied so as to embrace the policies underlying punitive damages – punishment and deterrence. Providing the jury with an incorrect, inflated net worth upon which to determine punitive damages does not serve those policies. And here, because it is Mattel that seeks to preclude the jury from considering current and relevant net worth information, it is Mattel's burden to prove that such data should be kept from the jury – a burden it cannot carry. Again, the purpose is to deter, not to destroy, and the jury should be fully armed with the information necessary to properly effectuate the policy. Adams, 54 Cal. 3d at 112; see also Grassilli v. Barr, 142 Cal. App. 4th 1260, 1291 (2006) (punitive damages should not be so high as to result in financial ruin).

At its core, the function of punitive damages is not served by an award which, in light of the defendant's wealth exceeds the level necessary to punish and deter. Kelly, 145 Cal. App. 4th at 915 (quoting Neal v. Farmers Ins. Exchange, 21 Cal. 3d 910, 928 & n.13 (1978)). "[T]he award can be so disproportionate to the defendant's ability to pay that the award is excessive for that reason alone." Adams, 54 Cal. 3d at 111. To this end, it has been said that punitive damages in California generally

should not exceed 10 percent of the defendant's net worth. <u>Michelson v. Hamada</u>, 29 Cal. App. 4th 1566, 1596 (1994).

Concomitantly, a predicate to a principled punitive damages award is an accurate appreciation of the defendant's ability to pay the punitive damages award. Otherwise, the policy gets perverted, and a jury's misinformed decision to punish a civil defendant becomes a life sentence. For example, if a defendant's net worth were $1,000,000, a punitive damages award of $30,000 may be reasonable under certain circumstances; however, $30,000 in punitive damages would not be reasonable if the defendant's net worth was only $30,000. The defendant would not be able to pay the punitive damages award without being financially destroyed.

Because punitive damages are only meant to deter and not destroy, there is no reasoned basis to preclude the jury from considering a defendant's most recent net worth information when deciding punitive damages. For example, in <u>Zhadan v. Downtown Los Angeles Motor Distributions, Inc.</u>, 100 Cal. App. 3d 821, 839 (1979), during a second trial after reversal, the plaintiff sought to introduce updated net worth information. The defendant objected, largely because its net worth had increased. The <u>Zhadan</u> court affirmed, however, holding that "the jury should make its determination of the punitive damages based on defendant's net worth at the time of trial." <u>Id.</u>

A defendant's net worth does not exist in a vacuum. "[T]he defendant's financial status may be shown by such sources as the defendant's difficulty in making payments, the unpredictable nature of the defendant's business, and a recent loss of capital assets due to adverse economic circumstances."[2] In fact, prior to reaching a decision on the amount of punitive damages, a jury should consider the effect, if any,

---

[2] *Punitive damages: relationship to defendant's wealth as factor in determining propriety of award*, 87 A.L.R. 4th 141 (1991) (citing <u>Klimek v. Hitch</u>, 464 N.E.2d 1272 (1984)).

1 | of its compensatory damages award on net worth. See Robbins v. Sanders, 927 So.
2 | 2d 777, 791 (Ala. 2005) (finding any award of punitive damages excessive where
3 | compensatory damages award resulted in defendant having a negative net worth). In
4 | this regard, some courts do not even permit discovery or reception of evidence of a
5 | defendant's net worth until after a prima facie case has been established or the trier of
6 | fact has determined liability. See Doralee Estates, Inc. v. Cities Serv. Oil Co., 569
7 | F.2d 716 (2d Cir. 1977) (applying New York law).[3] California law in fact provides a
8 | method by which access to net worth information can be limited until further stages
9 | of litigation. See Cal. Civ. Code § 3295.[4]

In sum, in order to faithfully pursue the policy rationale behind punitive damages, the jury should be armed with the most recent net worth information. Where that information is fluid because of outside forces and/or because of other decisions made by the jury, the information can potentially change quickly and even substantially. However, such forces do not change the policy behind punitive damages – to punish and deter, not destroy.

---

[3] See also James McLoughlin, *Necessity of determination or showing of liability for punitive damages before discovery or reception of evidence of defendant's wealth*, 32 A.L.R. 4th 432 (1984).

[4] Where an estate was permitted to seek double damages, which were "punitive in nature, or a 'species' of punitive damages," the court found that it was appropriate to determine liability first and "to defer the valuation process [for the purposes of determining these double damages] until the accounting phase of the proceedings." Estate of Young, 160 Cal. App. 4th 62 (2008). The court explained that this was appropriate since "it was admittedly difficult to prepare such valuation opinions because of the complex set of transactions before the court" and that "[t]hose transactions had to be unwound before the issue of the property value could easily be addressed." Id.

DATED: August 6, 2008

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: /s/ Thomas J. Nolan
    Thomas J. Nolan
    Attorneys for the MGA Parties