QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
Jon D. Corey (Bar No. 185066)
joncorey@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. CV 04-09059 and Case No. CV 05-02727<br><br>**MATTEL, INC.'S RESPONSE TO MGA'S MOTION FOR CLARIFICATION OR RECONSIDERATION OF THE COURT'S JULY 24, 2008 ORDER CONCERNING SCOPE OF COPYRIGHT PROTECTION**<br><br>**Phase 1B**<br>Trial Date: July 23, 2008 |

PUBLIC REDACTED

Case No. CV 04-9049 SGL (RNBx)
RESPONSE TO MGA'S MOTION FOR CLARIFICATION OR RECONSIDERATION OF JULY 24, 2008 ORDER

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................ 1

ARGUMENT .............................................................................................................. 1

I. AS MGA PREVIOUSLY CONCEDED, IT IS FOR THE COURT TO DETERMINE THE SCOPE OF PROTECTABILITY AFTER "DISSECTING" AND "FILTERING" BRYANT'S DRAWINGS .................. 1

II. AS A MATTER OF LAW, BRYANT'S ARTISTIC WORKS DESERVE FULL COPYRIGHT PROTECTION ............................................ 3

III. EVIDENCE OF THE ALLEGED LACK OF PROTECTABILITY SHOULD NOT BE INTRODUCED TO THE JURY .................................. 8

IV. THE JURY SHOULD NOT BE INSTRUCTED ON ANALYTIC DISSECTION OR FILTERING ............................................................ 9

# TABLE OF AUTHORITIES

**Page**

**Cases**

Apple Computer, Inc. v. Microsoft Corp.,
   35 F.3d 1435 (9th Cir. 1994) .................................................................. 3, 4, 5, 11

Brookhaven Typesetting Services, Inc. v. Adobe Systems, Inc.,
   2007 WL 2429653 (N.D. Cal. 2007) .................................................................. 3, 11

Cavalier v. Random House, Inc.,
   297 F.3d 815 (9th Cir. 2002) .................................................................. 10

Coston v. Product Movers,
   1990 WL 56516 (E.D. Pa. 1990) .................................................................. 3

Dr. Seuss Enters. v. Penguin Books, Inc.,
   109 F.3d 1394 (9th Cir. 1997) .................................................................. 10, 11

Dyer v. Napier,
   2006 U.S. Dist. LEXIS 68990 (D. Ariz. Sept. 25, 2006) .................................................................. 7

Fogerty v. Fantasy, Inc.,
   510 U.S. 517 (1994) .................................................................. 7

Kay Berry, Inc. v. Taylor Gifts, Inc.,
   421 F.3d 199 (3d Cir. 2005) .................................................................. 9

Mattel Inc. v. Azrak-Hamway Int'l, Inc.,
   724 F.2d 357 (2d Cir. 1983) .................................................................. 9

Mattel Inc. v. Goldberger Doll Mfg Co.,
   365 F.3d 133 (2d Cir. 2004) .................................................................. 9

McCulloch v. Albert E. Price, Inc.,
   823 F.2d 316 (9th Cir. 1987) .................................................................. 7

Newton v. Diamond,
   204 F. Supp. 2d 1244 (C.D. Cal. 2002) .................................................................. 3

Satava v. Lowry,
   323 F.3d 805 (9th Cir. 2003) .................................................................. 1, 2, 6, 7, 9

Stillman v. Leo Burnett Co., Inc.,
   720 F. Supp. 1353 (N.D. Ill. 1989) .................................................................. 3

Three Boys Music Corp. v. Bolton,
   212 F.3d 477 (9th Cir. 2000) .................................................................. 8

Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.,
   338 F.3d 127 (2d Cir. 2003) .................................................................. 8

Webloyalty.com, Inc. v. Consumer Innovations, LLC,
  2005 WL 468496 (D. Del. 2005) .................................................................. 3

**Statutes**

17 U.S.C. § 410(c) .............................................................................................. 8

**Other Authorities**

C.D. Local Rule 7-18 ......................................................................................... 6

## Introduction

As MGA has conceded, the scope of copyright protection of Bryant's works is an issue for the Court, not the jury. Yet it now seeks to burden the jury with irrelevant, confusing evidence of "prior art," animation practices and techniques and discourses on "standard" body proportions, all in an effort to suggest the drawings are not protectable at all. There is no reason to introduce such evidence before the jury, nor any reason to instruct the jury on the "dissection" and "filtration" process courts use to determine what aspects of copyrighted works are protectible. Mattel submits that, to the extent the Court has not already decided questions of protectability, the Court should decide such issues as a matter of law, following a hearing held outside the presence of the jury if need be. This will comport with *both* parties' position that this issue may be decided by the Court, not the jury, and avoid wasting the jury's time and confusing it with evidence that does not bear on any issue it will decide.

## Argument

### I. AS MGA PREVIOUSLY CONCEDED, IT IS FOR THE COURT TO DETERMINE THE SCOPE OF PROTECTABILITY AFTER "DISSECTING" AND "FILTERING" BRYANT'S DRAWINGS

As discussed in the briefing on Mattel's motion for partial summary judgment and at oral argument, it is solely for the Court to determine as a matter of law which elements of Carter Bryant's drawings, or combinations thereof, are protectable. See, e.g., Newton v. Diamond, 204 F. Supp. 2d 1244, 1253 (C.D. Cal. 2002) ("The protectability of elements in a copyrighted work is a question of law."); Brookhaven Typesetting Services, Inc. v. Adobe Systems, Inc., 2007 WL 2429653, at * 7 (N.D. Cal. 2007) ("As the Ninth Circuit held in Apple Computer, whether a copyrighted work is entitled to broad or thin protection and the scope of the plaintiff's copyright

are questions of law for the court").[1] MGA has never persuasively disputed this point. To the contrary, when pressed MGA conceded that the Court, not the jury, should determine what is protectable. See July 18, 2008 Tr. at 5137:14-5139:2 (Mr. Nolan: "We submit to your Honor that it's a question of law . . . we would agree that you could make those determinations and give us the Court's indication as to what the scope of the protection is."), Proctor Dec., Exh. 1.

Apple Computer -- the case MGA has repeatedly cited regarding the framework for determining the scope of protectability -- makes clear that the Court should engage in any "dissection" and "filtering" that may be appropriate for the works at issue. In that case the Ninth Circuit identified three "steps" used to determine the scope of copyright protection. These included: (2) using analytic dissection to determine which features of the works are protected, including by "apply[ing] the relevant limiting doctrines in the context of the particular medium involved"; and (3) *"[h]aving dissected the alleged similarities and considered the range of possible expression, the court must . . . decide whether the work is entitled to 'broad' or 'thin' protection"*. Apple, 35 F.3d at 1443 (emphasis added).

In summary, it is for the Court to determine the scope of the works' protection after applying appropriate "analytic dissection" principles. For visual works, this entails a process different than the filtering analysis for literary works which MGA has invoked -- as the Court recognized, the Ninth Circuit has held the extrinsic test

---

[1] See also, e.g., Webloyalty.com, Inc. v. Consumer Innovations, LLC, 2005 WL 468496 at *2 (D. Del. 2005) (while a finding of copyright infringement may involve questions of fact, the protectability of copyrighted material is a question of law); Coston v. Product Movers, 1990 WL 56516 at *3 (E.D. Pa. 1990) ("The question of which aspects of plaintiffs' work are protectible expression as opposed to unprotectible idea is an issue of law."); Stillman v. Leo Burnett Co., Inc., 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve findings of fact, but the issue of protectibility/ nonprotectibility is an issue of law.").

merely requires a comparison of "objective details in appearance" in cases of visual works because the analytic dissection and filtering standards laid down for literary works "do not readily apply" to visual works. Cavalier v. Random House, Inc., 297 F.3d 815, 826-27 (9th Cir. 2002) (comparing a wide range of elements of visual works under extrinsic test).

## II. AS A MATTER OF LAW, BRYANT'S ARTISTIC WORKS DESERVE FULL COPYRIGHT PROTECTION

To the extent the Court did not already find on summary judgment that Bryant's drawings are entitled to "broad" protection, Mattel submits it should do so now for all the reasons articulated in the Court's Order. Indeed, the reasoning of the Court's Order dictates that result.[2]

---

[2] In its July 24 Order, the Court rejected MGA's summary judgment arguments that the drawings are only subject to "thin" protection and that the "virtual identity" standard should apply: "the Court cannot go so far as to find that the registered drawings are subject to only the 'thin' protection -- the protection against copying -- referred to in Satava. The relevant test to be employed on this issue in this case -- and upon which the jury will ultimately be instructed -- is the test regarding the extrinsic and intrinsic analyses set forth above." Id. at 5, Proctor Dec., Exh. 2. MGA claims Mattel "erroneously interprets" the Order as finding "broad" protection, but *MGA itself* previously admitted the Court found the drawings are entitled to "broad" protection in its Order: *"MGA acknowledges (although it disagrees) that the Court held that the Bryant drawings are entitled to "broad" protection* under which infringement should be determined based on the "substantially similar" test . . ." MGA Parties' Objections to Mattel's Third Amended Proposed Jury Instructions for Phase 1B (Docket No. 4168) ("MGA's Objections"), at 19 (emphasis added), Proctor Dec., Exh. 3. That admission made sense. Although the Order does not use the word "broad," the case law recognizes only two levels of protection: "thin" protection for works that only permit limited creativity (e.g., factual works such as calendars) and "broad" (i.e., regular) protection for all other creative works. See, e.g., Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994) ("Having dissected the alleged similarities and considered the range of possible expression, the court must define the scope of
(footnote continued)

MGA continues to rely heavily on Satava. In that case, the Ninth Circuit found many elements of a "lifelike" jellyfish sculpture were not protectable because they merely reflected "jellyfish physiology" or elements resulting inherently from the glass-in-glass medium. Satava v. Lowry, 323 F.3d 805, 810 (9th Cir. 2003). In light of the limited number of original elements in the jellyfish sculptures, the court held they were entitled only to "thin" copyright protection which "protects against only virtually identical copying." Id. at 812. MGA argues that depictions of humans should be treated like jellyfish sculptures because "there are significant discernable variations in jellyfish anatomy, size, shape and other features." Motion at 6 (citing "wikipedia").

However, as recognized by the Court, the possibilities for expression of the human form -- unlike that of a jellyfish -- are virtually limitless. July 24, 2008 Order, at 4-5 ("The drawings at issue here, however, are not like Satava's jellyfish sculptures. Jellyfish anatomy is much simpler than human anatomy. Correspondingly, in general, there are far more variations in humans (at least that we humans discern)"). To a human eye, most jellyfish look more or less alike. Though there are billions of humans, each person's appearance is unique.

Unlike the realistic, "lifelike" jellyfish depicted in the works in Satava, Bryant's drawings are not only expressions of human forms, but *stylized,* fanciful representations of characters -- there is nothing lifelike or realistic about them. The Ninth Circuit recognized in Satava that artists may protect original expressions of even common ideas (e.g., a teenaged girl) when they vary, for example, "the pose, attitude, gesture, muscle structure, [and] facial expression." 323 F.3d at 813. MGA cites a variety of cases applying Satava, but each of those, like Satava, involved

---

the plaintiff's copyright-that is, decide whether the work is entitled to 'broad' *or* 'thin' protection.") (emphasis added).

1  *realistic* representations of objects in nature: a swimming dolphin (George S. Chen
2  Corp. v. Cadona Int'l, Inc.), a Tyranosaurus Rex with its mouth open (Aliotti v. R.
3  Dakin & Co.), a replica of a turkey wishbone (Lucky Break Wishbone Corp. v.
4  Sears, Roebuck & Co.), and the image of a mother mountain lion with a kitten in her
5  mouth (Dyer v. Napier). These are all ideas "first expressed by nature" and
6  "naturally occurring poses created and displayed by nature." Dyer v. Napier, 2006
7  U.S. Dist. LEXIS 68990, *28, 29-30 (D. Ariz. Sept. 25, 2006). The are, like
8  calendars, more "factual" in nature.

9       By contrast, Bryant's drawings are artistic and highly stylized representations
10 of the human form. Artistic, fanciful works such as Bryant's are not subject to only
11 thin protection. As the Ninth Circuit has explained, "works that are not factual
12 receive much broader protection under the copyright laws because of the endless
13 variations of expression available to the artist." McCulloch v. Albert E. Price, Inc.,
14 823 F.2d 316, 321 (9th Cir. 1987), disapproved on other grounds, Fogerty v.
15 Fantasy, Inc., 510 U.S. 517 (1994); see Apple, 35 F.3d at 1447 (citing McCulloch
16 for proposition that "artistic work like a decorative plate receives broader protection
17 because of endless variations of expression available to artist"). Bryant's drawings
18 are stylized and artistic. Lifelike depictions of animals as they naturally occur in
19 nature are "factual" and subject to a narrowed scope of protection that does not
20 apply.

21      MGA suggests other limiting doctrines could apply. It seeks to limit the
22 scope of the works' protection because the subject or idea has been done before --
23 dolls with big heads have been made before, the human form has been depicted
24 before. Mattel does not seek protection for such amorphous ideas, but for the
25 particular expression of those ideas in the Bryant drawings. As recognized by the
26 Court, the threshold for originality is low: "Originality in this context means little
27 more than a prohibition of actual copying." Order at 3 (quoting Three Boys Music
28

Corp. v. Bolton, 212 F.3d 477, 489 (9th Cir. 2000)). MGA has admitted that Bryant's drawings "satisfy the low 'originality' threshold necessary to copyrightability."[3] In fact, it has made such admissions for years, even alleging the uniqueness of Bratz in this case: "the 'BRATZ' dolls . . . looked like no other, with disproportionately large heads, big, dramatic eyes and lips, small, thin bodies, oversized feet . . . and up-to-date fashions."[4]

Accordingly, MGA's references to "prior art" -- such as Seventeen magazine advertisements its purported expert intends to discuss -- are misleading. It is undisputed that Bryant did not actually copy these advertisements; at most, he was influenced by them. Of course every artist is influenced by prior art. The scope of protection for such artists' work is not reduced (or, as MGA suggests, eliminated) for this reason. See, e.g., Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 207 (3d Cir. 2005) ("all creative works draw on the common wellspring that is the public domain . . . . When an author combines these elements and adds his or her own

---

[3] See MGA's Objections, at 22, Proctor Dec., Exh. 3.

[4] See MGA's Complaint in MGA Entertainment, Inc. v. Mattel, Inc., Case No. CV 05-2727 SGL (RNBx), Proctor Dec., Exh. 4. MGA also admitted, in responses to requests for admission, that many of Bryant's drawings are original works of authorship. See MGA Entertainment, Inc.'s Third Supplemental Responses to Mattel, Inc.'s Fifth Set of Requests for Admission, dated November 30, 2007, at 10-12 (responding to Request for Admission Nos. 9 and 10), Proctor Dec., Exh. 5. MGA obtained copyrights in Bryant's drawings, creating a presumption of protectability. See 17 U.S.C. § 410(c); July 24, 2008 Order, at 3, Proctor Dec., Exh. 2. And, as discussed further in the summary judgment briefing, MGA also has repeatedly sued on the drawings, affirming, for example, that they "are all original drawings created by Mr. Bryant using his own independent labour, skill and judgement." See Affirmation of Lee Shiu Cheung in MGA Entertainment, Inc. v. Double Grand Corp. Ltd. at ¶ 8, Proctor Dec., Exh. 6; Woodman Tr. Vol. 1 at 281:7-14, Proctor Dec., Exh. 7; see also Affirmation of Wai Lim Fan at ¶ 5(2) in MGA Entertainment, Inc. v. Hunglam Toys Co. Ltd., dated July 24, 2003, Proctor Dec., Exh. 8.

imaginative spark, creation occurs, and the author is entitled to protection for the result."); Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 132 (2d Cir. 2003) (same).

It may be that an expression that flows naturally from a medium or a concept (like aspects of the glass-in-glass sculptures in Satava) is not protectible because it can be manifested in only a limited number of ways. But, as noted by the Court, Bryant's works are artistic drawings of the human form, which permit a wide -- and practically infinite -- range of possible expression. Order at 5 ("Moreover, an artistic expression based on a drawing is much less limited than a glass-in-glass sculpture."). Where the subject and the medium permit limitless expressive possibilities, the protection for original works is necessarily "broad."

The Court's Order held that Bryant's depictions of both the human form (the characters) and the clothing are protectable. See Order at 4-5, n.1 ("the Court rejects the argument raised by MGA . . . that the protectability of doll clothing is limited in the same manner as is human clothing"). To the extent it has not already done so, the Court should find the drawings are entitled to broad protection as a matter of law.[5]

---

[5] MGA once again refers the Court to Mattel Inc. v. Goldberger Doll Mfg Co., 365 F. 3d 133 (2d Cir. 2004). In that case, the Second Circuit held that "[o]ne artist's version of a doll face with upturned nose, bow lips, and widely spaced eyes will be irresistible to an eight-year-old collector. Another artist's version, which to a grownup may look very like the first, will be a dud to the eight-year-old. . . . We can surmise that *in the highly competitive, billion-dollar doll industry, getting the doll's face and expression exactly right is crucial to success.*" Id. at 136 (emphasis added). Mattel does not contend that it has a monopoly on fashion dolls, let alone human anatomy. Rather, its rights in Bryant's drawings encompass a particular vision and expression of human anatomy which is entitled to full copyright protection. MGA's reliance on Mattel Inc. v. Azrak-Hamway Int'l, Inc., 724 F. 2d 357 (2d Cir. 1983), is misplaced for similar reasons. In that case, the Second Circuit emphasized that although "[t]he rendering of . . . an idea [of a muscleman crouching] is not in itself protectable; the particularized expression of that idea, for (footnote continued)

## III. EVIDENCE OF THE ALLEGED LACK OF PROTECTABILITY SHOULD NOT BE INTRODUCED TO THE JURY

In no event should MGA be permitted to confuse the jury with supposed evidence that the drawings are not protectible. It clearly will seek to do so. For instance, its alleged design expert, Glenn Villpu -- who purports solely to rebut an expert Mattel is not calling in its case-in-chief -- will tell the jury (if he survives Daubert, which he should not) that any similarities between Bryant's works and the dolls should be ignored because they constitute "                    " or "                              ."[6] He will tell the jury there is "                                        "[7] even though this directly contradicts MGA's admissions. He will opine that "

REDACTED

"[8] and that "

"[9] He will

---

example, the particular form created by the decision to accentuate certain muscle groups relative to others, can be protected." Id. at 360.

[6] See, e.g., Vilppu Report ¶ 14 ("                                                                    "), Proctor Dec., Exh. 9; Id. at ¶ 58, and Vilppu Depo Tr., 81:22-82:3 (          REDACTED                              "), Proctor Dec., Exh. 10.

[7] Vilppu Depo. Tr. at 81:22-82:3 ("Q. So you're saying, in your view, there is nothing unique in any of the Carter Bryant drawings of Bratz? A. In essence, I think I'm saying that, yes."), Proctor Dec., Exh. 10.

[8] Vilppu Report at ¶ 40, Proctor Dec., Exh. 9.

[9] Id. at ¶ 52.

tell the jury that large feet have been done before and this is nothing new, even though Mattel does not claim it owns the raw idea for any and all large feet, but rather Bryant's expression of them.[10] He will tell the jury he has seen kids in Japan with similar styles as the characters.[11] He will tell the jury, implausibly, the face proportions of the dolls ar    REDACTED    [12] In short, in whatever ways it can, MGA will urge the jury to disregard or de-value the drawings that Mattel now owns.

The jury should do no such thing. The drawings are protectible, and the Court should so find. The evidence MGA will seek to introduce is irrelevant and prejudicial. It would also turn the trial into a time-consuming and distracting crash course on the history of animation, popular culture and doll design. To the extent the Court believes it needs to hear live testimony to decide this matter, Mattel requests it do so at a hearing out of the presence of the jury to avoid confusion and prejudice.

## IV. THE JURY SHOULD NOT BE INSTRUCTED ON ANALYTIC DISSECTION OR FILTERING

In all events, the Court should not instruct the jury on questions of protectability, as MGA has requested. MGA seeks to confuse the jury with a convoluted, over-length proposed jury instruction (the latest version is ten pages long) regarding substantial similarity. It would be inappropriate to give this

---

[10] See id. at ¶ 35.

[11] Vilppu Depo. Tr. at 393:19-16 ("Q. And so based on your experience, the fashions in [Japan], the fashions that are seen there today are the type of fashions that you'll see in the United States next year? A. They influence the fashions that we see here."). Proctor Dec., Exh. 10; Vilppu Report, ¶ 119 ."), Proctor Dec., Exh. 9.

[12] Vilppu Report at ¶¶ 32, 76-78, Proctor Dec., Exh. 9.

instruction, or any instruction that the jury should "dissect" and "filter" the expression and protected elements in the drawings.

MGA's proposed instruction erroneously -- and repeatedly -- informs the jury that it must decide which elements of Bryant's drawings are protectable, and invites the jury to conclude that virtually none are:

> I will give you a few examples to illustrate the process of filtering.
>
> MGA asserts that Carter Bryant's sketches show a group of four contemporary "sassy" or "bratty" teenage friends of diverse ethnic backgrounds and a "funky urban hip" attitude and style as the basis for a line of fashion dolls. MGA asserts that all of this is a concept or idea, and is thus not protected by copyright. If you agree with MGA's position, then the idea and concept of such a line of fashion dolls must be filtered out of any subsequent analysis of claimed similarities.
>
> MGA also asserts that the oversized heads, eyes, feet and lips in the sketches are not forms of expression original to Carter Bryant's sketches, but rather simply reflected common expression that can be found in other dolls, fashion advertisements, and artwork. If you agree with that contention, then you must "filter out" these elements in connection with your subsequent analysis regarding substantial similarity, because the use of oversized heads, eyes, feet and lips in the sketches was not original to Mr. Bryant.
>
> Common physical features of a teenage girl are not protectible, as they are the features found in real-life teenage girls and depictions of teenage girls. These features could be considered an idea, or even a fact, and therefore they must be filtered out. This would apply to things found in nature such as the presence of heads, 2 ears, lips, hair, 2 arms, legs, standard body proportions, and other anatomical features in the drawings. While the particular expression and unique arrangement of these features can be protected by copyright, the mere presence of those features as found in nature cannot.
>
> Also, common or standard treatments of the subject matter, what are referred to "scenes a faire," are also not protected by copyright. Even though they are forms of expression, they lack sufficient originality to

be protected. Basic ideas or treatments "remain forever the common property of artistic mankind."

Let me give you an example from the world of T.V. screen-plays. A television show about a police station in a high crime area will inevitably have standard stock features, such as a precinct house, various levels of police employees from a captain down to the beat officers, criminal suspects who are apprehended, defense lawyers, prosecutors, etc. Such standard plot lines and features may be thought of as creative expression, but no one can claim ownership or exclusive rights to them, and no one T.V. show can accuse another of violating a copyright by allegedly copying and using such standard features in a second show.

As another example, in the world of theatre, devices that are standard plot lines, and are therefore not protectible, include the controlling mother-in-law, the lipstick stained handkerchief, and the butler bent on murder. All authors can use these common plot devices.

The fact that the figures in the drawings display fashions, shoes and accessories, by itself, is not protected because the use of fashions, shoes and accessories are also standard or common features in the genre of fashion dolls. Also, the "style" or general "look" of fashion dolls are not copyrightable. Nor are conventional cosmetic techniques and looks.

Also unprotected is expression in the copyrighted work that reflects expression already in the public domain, and therefore free for all to use. To give one illustration in the context of a doll, "[a]n upturned nose, bow lips, and wide eyes are the 'idea' of a certain type of doll face," and this idea does not belong to any one company but rather is in the public domain. For another illustration, a 5 ½ inch Warlord doll does not infringe upon a 5 ½ inch Masters of the Universe doll because, though the dolls look remarkably similar, the similarities are all attributable to the unprotectible idea of a superhuman muscleman crouching in a traditional fighting pose.

These unprotected elements of a work, ideas and concepts, scenes a faire, and unoriginal material, often overlap and are not always easy to separate into categories. Nevertheless, they are not protected by copyright.

1  MGA Parties' Proposed Jury Instruction 17.17 (Revised), at 3-6 (citations omitted),
2  Proctor Dec., Exh. 12. This is contrary to both law and MGA's admission that the
3  question of which elements of a work are protectable is for the Court, and not the jury.
4  Distinguishing between ideas and expression can often be difficult even for specialists
5  in copyright law; presenting this to the jury is virtually certain to result in confusion.
6      MGA's proposed instruction reads much like its copyright professor's expert
7  report opining that almost every element of Bryant's drawings should be
8  such that nothing protectable remains. See Peter Menell Report at, e.g., 4
9  ("
10
11  **REDACTED**
12
13
14
15  "), Proctor Dec., Exh. 1. The
16  Court should reject MGA's attempt to introduce Menell's opinions at trial under the
17  guise of a jury instruction, lest Menell's legally erroneous, Photoshop-modified
18  versions Bryant's works, designed to "                                  ' for the jury,
19  make an appearance at closing arguments (see, e.g., Menell Report, Slide C21,
20  below).

**REDACTED**

Mattel has never argued that a finding of substantial similarity can be based on the mere fact that both the drawings and dolls reflect dolls, or teenaged girls or have arms and legs, and does not intend to do so now. Rather, the jury should be informed that, under the extrinsic test, "Mattel must establish that *specific ideas and expressive elements* of the Bratz products that Mattel claims are infringing and the works Mattel owns *are substantially similar*." Mattel's Third Amended Proposed Jury Instructions for Phase 1B—Disputed Set, at 32 (citing Dr. Seuss Enters. v. Penguin Books, Inc., 109 F.3d 1394, 1398 (9th Cir. 1997)). The Ninth Circuit has held that, in cases of visual works, the extrinsic test merely requires a comparison of "objective details in appearance" because the analytic dissection and filtering standards laid down for literary works "do not readily apply." Cavalier, 297 F.3d at 826-27 (comparing a wide range of elements of visual works under extrinsic test);

1 see also Dr. Seuss Enterprises, 109 F.3d at 1399 (performing straightforward visual
2 comparison of depictions of "hats"); see Order at 2. Mattel's proposed instruction
3 correctly invites such a comparison.

DATED: August 6, 2008      QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ John B. Quinn
   John B. Quinn
   Attorneys for Mattel, Inc.