EXHIBIT 1

5098

1                    UNITED STATES DISTRICT COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3                              ---

4          HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

5                              ---

6   MATTEL, INC.,                :   PAGES:  5098 - 5215
                                 :
7             PLAINTIFF,         :
                                 :
8       VS.                      :   NO. ED CV04-09049-SGL
                                 :   [CONSOLIDATED WITH
9   MGA ENTERTAINMENT, INC.,     :   CV04-9059 & CV05-2727]
    ET AL.,                      :
10                               :
              DEFENDANTS.        :
11  _____:

12

13

14

15              REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                   RIVERSIDE, CALIFORNIA

17                   FRIDAY, JULY 18, 2008

18

19

20

21

22                               MARK SCHWEITZER, CSR, RPR, CRR
                                 OFFICIAL COURT REPORTER
23    CERTIFIED                  UNITED STATES DISTRICT COURT
                                 181-H ROYBAL FEDERAL BUILDING
24    COPY                       255 EAST TEMPLE STREET
                                 LOS ANGELES, CALIFORNIA 90012
25                               (213) 663-3494

EXHIBIT  1
PAGE     2

5099

```
 1  Appearances of Counsel:

 2

 3  On Behalf of Mattel:

 4      Quinn, Emmanuel, Urquhart, Oliver & Hedges, LLP
        By John B. Quinn, Esq.
 5         B. Dylan Proctor, Esq.
           Michael T. Zeller, Esq.
 6         Harry Olivar, Esq.
           John Corey, Esq.
 7         Diane Hutnyan, Esq.
           William Price, Esq.
 8         Scott Kidman, Esq.
        855 South Figueroa Street
 9      10th Floor
        Los Angeles, CA 90017
10      (213) 624-7707

11

12  On Behalf of MGA Entertainment:

13      Skadden, Arps, Slate, Meagher & Flom LLP
        By Thomas J. Nolan, Esq.
14         Carl Alan Roth, Esq.
           Jason Russell, Esq.
15         Lauren Aguiar, Esq.
           David Hansen, Esq.
16         Matthew Sloan, Esq.
           Robert Herrington, Esq.
17      300 South Grand Avenue
        Los Angeles, CA 90071-3144
18      (213) 687-5000

19

20

21

22

23

24

25
```

EXHIBIT ___1___
PAGE ___4___

5100

1                           **I N D E X**

2

3       MATTER:   1-B CONFERENCE........................... 5100

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT __1__
PAGE ____5____

5101

1          **Riverside, California; Friday, July 18, 2008**

2                        **12:05 P.M.**

3          WHEREUPON THE CASE HAVING BEEN CALLED AND

4          APPEARANCES GIVEN, THE FOLLOWING PROCEEDINGS

5          WERE HELD:

6          THE COURT:  Good afternoon, Counsel.  I asked

7    counsel to come together at noon today to basically go over

8    any pretrial matters that we need to take up to prepare for

9    next week.  And I also asked counsel to submit to the Court

10   copies of any motions that they believe might still be

11   outstanding, and I've received those, and I appreciate that.

12         What I'd like to do in this first part of the

13   hearing this afternoon is get a sense, pin down on both sides

14   what exactly it is counsel intends to do with the trial, what

15   we need to get resolved now, and figure out where we are.

16         I'll begin with plaintiff Mattel.  I trust that we

17   have a witness list at this point.

18         MR. ZELLER:  If I could get some guidance from the

19   Court as to what is the best way of summarizing what we

20   intend to do.  We have provided witness lists, which is our

21   best effort as of today, to put in order what we expect to

22   do.

23         THE COURT:  Can I get a copy of that?

24         MR. ZELLER:  Yes, I'm sure we have an extra copy of

25   that, your Honor.  We may have E-filed it.


EXHIBIT ___1___
DACE      10

5136

1  Motion for Summary Judgment. I'll hear from MGA first on
2  that.

3  MR. NOLAN: Thank you, your Honor. With respect to
4  the issue that I think is squarely presented to the Court,
5  both by submission of the expert reports and the briefing on
6  the summary judgment, is what is the scope of protection that
7  will be afforded to Carter Bryant's drawings.

8  I think the cases that we've cited set forth that
9  it's the obligation of Mattel in this case to first identify
10 which elements they believe are afforded protection. Because
11 they are arguing, as I understand the position, that the test
12 ultimately would be one of substantial similarity. You'll
13 recall that --

14 THE COURT: And so you need to know what it is that
15 we're -- what is substantially similar to -- what are we
16 comparing the allegedly violating works to.

17 MR. NOLAN: Correct. And they have not done that,
18 your Honor. But we are guided in certain respects by the
19 testimony of their own expert. And this is Mr. Loetz, who
20 has already in his deposition admitted such things as the
21 following are not subject to protection: Body proportions,
22 attitude, facial features, and posing.

23 And the reason for that is quite frankly borne out
24 of common sense, and that is in Loetz's rebuttal report and
25 deposition testimony, he shows the alignment with many of the

EXHIBIT _1_
PAGE _7_

5137

1  Bryant sketches on the one hand with the Bratz dolls.

2      We're talking about -- I recall back to fonder days

3  where we were having the -- where Mattel had on the screen

4  two examples of lines, horizontal lines over the anatomical

5  features of various dolls. Well, Mr. Loetz in his report

6  identifies that those lines are similar to the ones we find

7  in the Steve Madden Devil Angel advertisements, as well as

8  Toon types. So I don't think body portions are --

9      THE COURT: Let me stop you here, Counsel, for a

10  second. Because I assume that you're not simply going to

11  accept Professor Loetz's expert opinion as the final

12  determination of what is protectable here.

13      MR. NOLAN: No, your Honor.

14      THE COURT: All right. That's my first -- the

15  first question that needs to be addressed here is how we

16  should go about determining what is and what is not

17  protectable before we get to arguing over whether something

18  substantially is similar to it. From your perspective, from

19  MGA's perspective, is this a matter of law, or is this a

20  matter of fact?

21      MR. NOLAN: You've put your finger on the issue.

22  Mattel in its supplemental report, supplemental response to

23  its summary judgment papers suggested to the Court that it

24  was a question of law.

25      THE COURT: What is MGA's position?



EXHIBIT ____
PAGE    2

5138

1        MR. NOLAN:  Well, MGA's position is that typically
2   it is a question of fact for the jury to determine what is,
3   you know, I think they call it the intrinsic test.  But your
4   Honor --

5        THE COURT:  I'm not talking about intrinsic and
6   extrinsic tests right now.  We're talking about what is
7   protectable.

8        MR. NOLAN:  We believe that is generally submitted
9   to the jury, but if the Court were willing to conduct a
10  hearing with experts where the experts could present this
11  type of testimony before your Honor in advance of testifying
12  before the jury, that that would be extremely helpful in that
13  respect rather than submitting this in the limited time we
14  have to the jury.  And then I think that was something that
15  we had talked about earlier.

16       THE COURT:  Well, we couldn't do it before because
17  we didn't have the issue of ownership resolved.

18       MR. NOLAN:  I wasn't suggesting that.  I was just
19  bringing the Court back to the type of argument that we were
20  talking about, that it was almost like a quasi-Markman
21  hearing in terms of the copyright issue.  That's where I was
22  going.  And I think that's how I referred to it, your Honor.

23       But I think that at the end of the day, the
24  ultimate question that we have to get to is what is the level
25  of protection that is going to be afforded, whether or not

EXHIBIT  1
PAGE     9

5139

1   it's broad or thin.  That's -- it's my view that's how you

2   get to the identifiable results here.

3           THE COURT:  I've got to pin you down here.  Is this

4   a matter of law, or is this a matter of fact?  I'm not asking

5   you what you think.  But what does the law say?  That's what

6   I was doing back there.  And I was having trouble finding

7   anything particular which defined this.

8           MR. NOLAN:  Right.

9           THE COURT:  Maybe we need some more time to look at

10  this.

11          MR. NOLAN:  I believe our research is the same,

12  that it's not absolutely clear.  There are cases that state

13  that it's fact, and there are other cases.  We submit to your

14  Honor that it's a question of law.  And if Mattel is willing

15  to submit that to you, we think that where we stand in this

16  case in the limited time available, that we would agree that

17  you could make those determinations and give us the Court's

18  indication as to what the scope of the protection is.

19          THE COURT:  Very well.  Let me hear from Mattel on

20  that point.

21          MR. QUINN:  Just on that last point, whether it's a

22  question of --

23          THE COURT:  Yes, just I want to --

24          MR. QUINN:  Your Honor, it's always been our

25  understanding that the question -- the initial question of



5140

1  originality and whether a work is protectable under the
2  copyright law is a question of law for the Court.

3          THE COURT:  We're beyond that.  Both sides have
4  registered this copyright, these copyrights.  So you both
5  have recognized and you are estopped from arguing that there
6  is nothing original in these various drawings, or at least
7  the 17 drawings that MGA -- so we're beyond that.

8          Now the question is what are the elements of that.
9  What are the elements of copyrightability.  What is the
10  scope, as Mr. Nolan suggests.  The question I'm having is is
11  that something that we just turn over to the jury?  Because
12  you have to have that answered before you can get to the
13  substantial similarity.

14          You have to have a basis for comparison.  What are
15  you comparing the other works to to determine whether or not
16  there's been a copyright infringement?  What are the elements
17  of what is protected?  And my question is is that something
18  that the Court should decide before we start this phase?  Is
19  that something I should articulate next week and come up with
20  based on whether it's a brief hearing or just based on what
21  has been submitted, or is that something that goes to the
22  jury as part of this mix?

23          I think it's interesting that the Ninth Circuit
24  Jury Instructions don't come close to defining this.  I'm not
25  suggesting that this is not an issue that goes to the jury.


EXHIBIT ___1___
PAGE ___11___

5215

1

2

3

4

5

6

7                    C E R T I F I C A T E

8

9

10            I hereby certify that pursuant to Title 28,

11    Section 753 United States Code, the foregoing is a true and

12    correct transcript of the stenographically reported

13    proceedings in the above matter.

14            Certified on July 18, 2008.

15

16

17    MARK SCHWEITZER, CSR, RPR, CRR
      Official Court Reporter
18    License No. 10514

19

20

21

22

23

24

25

EXHIBIT
DAGE

EXHIBIT 2

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                           Date:  July 24, 2008

Title:    CARTER BRYANT -v- MATTEL, INC.
          AND CONSOLIDATED ACTIONS
====================================================================
=

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes                              None Present
          Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:     ATTORNEYS PRESENT FOR DEFENDANTS:

John B. Quinn                         Thomas J. Nolan
B. Dylan Proctor                      Carl Alan Roth
Michael T. Zeller                     Jason Russell
Jon Corey                             Lauren Aguiar
William Price                         David Hansen
Scott B. Kidman

PROCEEDINGS:   **POST-PHASE1A ORDER RE MOTION FOR PARTIAL SUMMARY
               JUDGMENT ON THE ISSUE OF SUBSTANTIAL SIMILARITY;**

               **ORDER RE PROCEEDINGS REGARDING LACHES AND OTHER
               EQUITABLE DEFENSES**

               **ORDER RE FRAUDULENT CONCEALMENT JURY ISSUE**

        These matters were heard on Friday, July 18, 2008, and again on Monday, July 21, 2008, at
which time the Court announced its rulings.  This Order sets forth those rulings and the rationale
therefor.

MINUTES FORM 90                                          Initials of Deputy Clerk:  jh
CIVIL -- GEN

1

EXHIBIT __2__
PAGE __13__

## I. SUBSTANTIAL SIMILARITY AND SCOPE OF PROTECTABILITY

At a post-Phase 1A hearing on remaining legal issues to be addressed prior to
commencement of the Phase 1B trial, counsel for MGA raised an issue regarding the scope of the
protection to be given to the copyrighted drawings. This issue, in turn, implicates the arguments
raised by the parties in the motions for partial summary judgment regarding originality and
protectability (raised by MGA) and substantial similarity (an element of copyright infringement upon
which Mattel seeks summary judgment).

To address these issues, the Court begins its analysis with a recitation of the elements of
copyright infringement, which are (1) ownership of a valid copyright, (2) access by the defendant to
the original, and (3) substantial similarity of the original and allegedly infringing works. North Coast
Industries v. Jason Maxwell, Inc., 972 F.2d 1031, 1033 (9th Cir. 1992).

The first element, although not amenable to resolution on summary judgment, was decided
by the jury's verdict in Phase 1A. The second element was not contested by MGA, and in any
event, was also decided by virtue of the jury verdict. Thus, although the Court previously deferred
the issue of substantial similarity, it is now appropriate to consider whether the record on summary
judgment allows the Court to adjudicate the final element of copyright infringement in favor of
Mattel.

To determine substantial similarity, the Court must apply both the extrinsic test and the
intrinsic test.

To apply the extrinsic test, the Court must first examine the specific expressive elements of
the works at issue and compare them to those found in the allegedly infringing work. Dr. Seuss
Enterprises v. Penguin Books, Inc., 109 F.3d 1394, 1398 (9th Cir. 1997). This involves analytically
dissecting works into their components in order to determine whether some – or all – similarities
are attributable to unprotected elements, which must be filtered out of the analysis before a
conclusion regarding substantial similarity is reached. Id. To apply the extrinsic test to visual
works, such as the drawings at issue here, "[t]he basic mode of analysis for comparison of the
literary elements applies . . . [, and] unprotect[a]ble elements should not be considered when
applying the extrinsic test to art work." Cavalier v. Random House, Inc., 297 F.3d 815, 825-26
(2002). However, "[t]he precise factors evaluated for literary works do not readily apply to art
works. Rather, a court looks to the similarity of the objective details in appearance." Id. at 826.

To apply the intrinsic test, the Court examines the overall similarity of expression in the two
works from the perspective of the ordinary observer. Olson v. National Broadcasting Co., 855 F.2d
1446, 1448-49 (9th 1988).

In applying both the extrinsic and intrinsic tests, the Court must be mindful of the so-called
"inverse ratio rule" which states that where, as here, a high degree of access to the original works

MINUTES FORM 90
CIVIL – GEN

Initials of Deputy Clerk: jh

2

EXHIBIT  2
PAGE  14

is shown, the burden to show substantial similarity is reduced. Three Boys Music Corp. v. Bolton, 212 F.3d 477, 485 (9th Cir.2000).

In applying these principles, the Court cannot conclude that Mattel has shown that it is entitled to summary judgment on the issue of substantial similarity. On summary judgment, MGA offered evidence from its doll design expert pointing out a number of differences between the Bratz dolls and the registered drawings. Additionally, it offered the evidence of Paula Garcia regarding the changes that MGA wished to make in the process of creating the dolls from the drawings to make them less "edgy" and to better appeal to the "tween" market. MGA also offered evidence that its sculptor was given a certain amount of artistic freedom in creating the sculpt. All these combine to create a triable issue of fact regarding whether the dolls are substantially similar to the drawings.

Related to this issue is the one raised by MGA at Friday's hearing: What is the scope of the protectability of the copyrighted drawings? The Court cannot conclude that the scope is, as MGA contends, limited to the "thin" protection that would prohibit little more than virtual copying.

The Court's analysis begins with a presumption of protectability conferred by the registration of the drawings. Where, as here, the relevant works have registered copyrights, registration is prima facie evidence of the validity of a copyright. See 17 U.S.C. § 410(c). This presumption can be rebutted by the defendant's showing that the plaintiff's work is not original, that is, that it is unworthy of copyright protection. Three Boys Music Corp. v. Bolton, 212 F.3d 477, 489 (9th Cir. 2000) (citation omitted). "Originality in this context means little more than a prohibition of actual copying." Id. (internal quotation marks and citation omitted).

In this vein, the Supreme Court described the low threshold for copyrightability:

The sine qua non of copyright is originality. To qualify for copyright protection, a work must be original to the author. . . . Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.

Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 345 (1991). The Court elaborated: The "requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." Id. (internal quotation marks omitted).

Based on the record before the Court, it does not appear that MGA has contended that the registered drawings are unworthy of any protection; rather, it contends that it is worthy only of "thin" protection. The Court is guided on this point by the case of Satava v. Lowry, 323 F.3d 805 (9th Cir. 2003).

MINUTES FORM 90                                                                 Initials of Deputy Clerk: jh
CIVIL – GEN

3

EXHIBIT 2
PAGE 15

In that case, an artist (Satava) began making glass-in-glass jellyfish sculptures. Id. at 807. When a second artist (Lowry) began making extremely similar sculptures, Satava sued for copyright infringement. Id. at 808-09. The idea to do such a sculpture was held to be beyond copyright protection. Id. at 810. Also outside the scope of copyright protection were the "elements of expression that naturally follow from the idea." Id. Thus, the Ninth Circuit held that Satava's sculptures were unprotected to the extent the physiology of jellyfish drove the presentation of the sculptures. Id. Relatedly, to the extent that traditional methods of glass-in-glass sculpture also influenced the presentation, the sculptures were also unprotected. Id.

Certain features did warrant protection, however. For instance, although the Court found unprotectable depiction of jellyfish swimming vertically, with bright colors, or with tendril-like tentacles attached to rounded bells, the Court found protectable Satava "distinctive curls of particular tendrils; the arrangement of certain hues [of color]; [and] the unique shape of the jellyfishes' bells." Id. at 811-12.

After this analysis, the Ninth Circuit did not place a high qualitative value on Satava's copyright. The Court stated it this way:

> Satava's copyright on these original elements (or their combination) is "thin," however, comprising no more than his original contribution to ideas already in the public domain. Stated another way, Satava may prevent others from copying the original features he contributed, but he may not prevent others from copying elements of expression that nature displays for all observers, or that the glass-in-glass medium suggests to all sculptors. Satava possesses a thin copyright that protects against only virtually identical copying.

Id. at 812.

The drawings at issue here, however, are not like Satava's jellyfish sculptures. Jellyfish anatomy is much simpler than human anatomy. Correspondingly, in general, there are far more variations in humans (at least that we humans discern). For instance, we regularly take notice of a vast number of particularized differences in facial features, ethnicity, size, shape, proportions, hair color, and hair texture and, of course, various particularized combinations and permutations thereof. Specifically, in the context of the content of the copyrighted drawings at issue, we can also observe the many details of the clothing which adorn the depicted figures.[1] Moreover, an

---

[1] As noted by the Court at Monday's conference, the Court rejects the argument raised by MGA, stated elsewhere in the record, that the protectability of doll clothing is limited in the same manner as is human clothing. Briefly stated, "[a]s a general rule, items of clothing are not entitled to copyright protection. . . . This is because items of clothing are generally considered useful articles, and useful articles are not entitled to protection under the Copyright Act." Express, LLC v. Fetish Group, Inc., 424 F.Supp.2d 1211, 1224 (C.D. Cal. 2006) (citations omitted). This general rule is tempered by a limited protection extended to "pictorial, graphic, or sculptural features" even when incorporated into useful articles. 17 U.S.C. § 101. The doll clothing at issue here -- as well as the clothing depicted in the

Initials of Deputy Clerk: jh

4

EXHIBIT 2
PAGE 116

artistic expression based on a drawing is much less limited than a glass-in-glass sculpture.

Accordingly, although the Court has denied the motion for summary judgment on the substantial similarity issue, the Court cannot go so far as to find that the registered drawings are subject to only the "thin" protection -- the protection against copying -- referred to in Satava. The relevant test to be employed on this issue in this case -- and upon which the jury will ultimately be instructed -- is the test regarding the extrinsic and intrinsic analyses set forth above.

## II. LACHES AND OTHER EQUITABLE DEFENSES

At the hearing on Friday, July 18, 2008, three separate issues regarding the affirmative defense of laches were raised: (1) Whether there is, as MGA contends, a presumption that laches applies when, as here, a copyright claim would be time-barred but for the relation-back doctrine;[2] (2) whether the Court should grant Mattel's summary judgment motion as to MGA's laches defense; and (3) whether the defense is legal (and must be presented to a jury) or equitable (and therefore should be decided by the Court, perhaps outside the presence of the jury). In the ensuing discussion, the Court addresses each of these issues in turn.

The Court first considers whether there is, as MGA contends, a presumption that laches applies where, as here, a copyright claim would be time-barred but for the relation-back doctrine.

This argument is clearly based on the Jarrow Formulas case, cited at footnote 27 of MGA's opposition to Mattel's motion for partial summary judgment, which MGA relies upon to argue that, notwithstanding any contention that Mattel's copyright claim is timely based on the relation-back doctrine, there is a presumption that claims filed outside the limitations period are time barred. MGA reads Jarrow Formulas far too broadly. That case did not consider how laches should apply when a claim that was otherwise outside the limitations period was saved by the relations-back doctrine. Therefore, its discussion regarding a "reversal" of the presumption of nonapplicability of laches is of little relevance here.[3]

---

copyrighted drawings -- are not useful articles. The clothing is part of a toy, and the proposition that toys are unprotectable because they are "useful articles" as that term is used in copyright law has been rejected by courts. See, e.g., Gay Toys, Inc. v. Buddy L Corp., 703 F.2d 970, 974 (6th Cir. 1983); Spinmaster, Ltd. v. Overbreak LLC, 404 F.Supp.2d 1097, 1103 (N.D. Ill. 2005).

[2] The Court previously held that Mattel's copyright claim was timely as to MGA Entertainment because it was brought within the relevant statute of limitations. As to the remaining defendants, the claim was timely in light of the relation-back doctrine.

[3] The court's discussion regarding this issue states:

In sum, we presume that laches is not a bar to suit if the plaintiff files within the limitations period for the analogous state action; the presumption is reversed if the plaintiff files suit after the analogous limitations period has expired. For purposes of laches, the limitations period may expire even though

Initials of Deputy Clerk: jh

5



The Court, in its own research, has been unable to locate any authority that suggests that a related-back claim would be especially vulnerable to the defense of laches. To the contrary, to the extent that such authority is found, it suggests the contrary. See e.g., In re Prempro Products Liability Litigation, 417 F.Supp.2d 1058, 1061 (E.D. Ark. 2006) (dismissing certain plaintiffs from a case, allowing them to re-file their claims in a separate complaint, and clarifying that "for application of . . . laches . . . the filing date of [the new complaint] will be deemed to relate back to the date [of the dismissed complaint]"); Bush v. Sumitomo Bank and Trust Co., Ltd., 513 F.Supp. 1051, 1054 (D.C.Tex., 1981) (noting that the court would consider the related-back date of an amended claim to assess the merits of a laches defense); E.I. duPont de Nemours & Co. v. Phillips Petroleum Co., 621 F.Supp. 310, 313 (D.C. Del.,1985) (noting that the applicability of laches did not need to be addressed in light of the fact that the proposed complaint related back to the original pleading pursuant to Fed. R. Civ. P. 15(c)).

The language of the rule allowing relation-back is in accord because it suggests that an amendment that relates back should be treated as if it was filed on the date of the original pleading. See Fed. R. Civ. P. 15(c) ("[a]n amendment to a pleading relates back to the date of the original pleading").

Therefore, in the absence of persuasive authority, the Court is unwilling to apply the "reversed" presumption suggested by MGA. Instead, the Court will continue to be guided by the touchstones of the doctrine of laches: Unreasonable delay and resulting prejudice.

The Court next considers whether the Court should grant Mattel's summary judgment motion as to MGA's laches defense. The Court previously deferred, as it does now, the motion for summary judgment on the remaining affirmative defenses. The Court will consider those at the close of Phase B of the trial as set forth below.

Finally, the Court considers whether the defense of laches is legal (and must be presented to a jury rather than the Court) or equitable (and therefore should be decided by the Court, perhaps outside the presence of the jury).

At Friday's hearing, counsel for MGA stated that MGA had argued in written briefs before the Court that laches, at least insofar as it is applied to a claim of copyright infringement, is a legal defense that must be submitted to the jury. Tr. at 96. When questioned as to the source of the authority, counsel eventually identified the case of Haas v. Leo Feist, 234 F. 105 (S.D.N.Y. 1916). Tr. 102, 106. Referring to this case, counsel contended that "most courts agree that was the first time that laches was applied as a legal defense to copyright." Tr. at 102. However, this case does not address the defense of laches. It does not address what, if any, affirmative defenses to a

_____

part of the defendant's conduct occurred within the limitations period.

Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 838 (9th Cir. 2002).



copyright claim should be presented to a jury. The case does not even involve a trial by jury. This case was cited in MGA's opposition to Mattel's motion for partial summary judgment, but for an entirely different proposition, relating to the merits of the laches defense.

At Monday's hearing, the Court articulated its ruling on this issue on the record in much the same form that it appears herein. The Court referred specifically to the representations of counsel set forth above, noting that the Haas case did not involve a trial by jury and further did not address the defense of laches. Tr. at 5303.

After the Court articulated its ruling, counsel for MGA revealed that perhaps he "wasn't as clear as [he] should have been" regarding this argument, explaining that Haas was "the case from which most courts agree the doctrine of laches could apply to a copyright case." Tr. at 5306. This contention was clear from counsel's argument the previous Friday. What was not clear, however, and what ultimately became clear during Monday's hearing after the Court articulated its ruling, was the source of MGA's briefing on this issue, which was MGA's opposition to Mattel's motion in limine #4 and not MGA's summary judgment papers (which the Court had reviewed at length and in vain in its attempt to locate counsel's argument on this issue). Tr. at 5306.

Although the Court informed counsel that the briefing to which he referred was not included in the materials that the Court instructed the parties to prepare in advance of the Friday hearing, counsel nevertheless asked that the Court to "take another look" at its opposition to the motion in limine, citing specifically the cases of Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc., 106 F.3d 894, 896 (9th Cir. 1997), and United States Fidelity & Guar. Co. v. Lee Investments LLC, 551 F.Supp.2d 1114, 1128 (E.D. Cal. 2008).[4] Both these cases, as well as a third case cited in MGA's opposition to Mattel's motion in limine #4, San Francisco Bay Area Rapid Transit Dist. v. Spencer, No. C-04-04632 SI, 2007 WL 1450350 at *10 (N.D.Cal., May 14, 2007), merely represent examples of cases in which trial courts submitted resolution of certain equitable affirmative defenses to the jury. These cases do not stand for the proposition that a Court must submit for the jury's consideration the ultimate conclusion regarding equitable affirmative defenses.[5]

The defense of laches to a copyright claim is clearly an equitable defense. See, e.g., Kling v. Hallmark Cards Inc., 225 F.3d 1030, 1036 (9th Cir. 2000) (beginning its analysis of whether

---

[4] Despite counsel's contention that his argument is based on authority derived from the Haas case, that case is not cited in MGA's opposition to Mattel's motion in limine #4.

[5] MGA's other concern, that the jury's role as factfinder not be usurped, is a valid one. Notwithstanding Mattel's contention that there are no facts that are relevant to both the legal claims and the equitable affirmative defenses, see Mattel's reply to motion in limine #4 at 7-9, the Court will consider MGA's timely proposal for any special interrogatories it deems appropriate to address this concern. As previously indicated by the Court, the parties' proposed jury instructions (which should include any proposed special interrogatories) and verdict forms must be filed no later than July 24, 2008, with indexed and tabbed courtesy copies (in a three-ring binder) provided to the Court.

laches applied to a copyright claim by noting that laches is an "equitable defense"); Zuill v. Shanahan, 80 F.3d 1366, 1370 (9th Cir. 1996) (distinguishing the defense of statute of limitations as "legal" defense from the defense of laches an "equitable" defense). As such, it will be tried to the Court. See e.g., Danjaq LLC v. Sony Corp., 263 F.3d 942, 962 (9th Cir. 2001) (noting that although the plaintiff had a jury trial right as to his copyright infringement claims, he did not have a right to a jury on the equitable defense of laches); accord Granite State Ins. Co. v. Smart Modular Techs., Inc., 76 F.3d 1023, 1027 (9th Cir.1996) ("A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature.").

The Court previously suggested that it was inclined to seek an advisory jury verdict on the affirmative defenses; however, the Court is now disinclined to do so based on the risk of jury confusion. The Court is of the opinion that this jury's attention should be focused on the narrow range of issues it is being asked to decide in Phase B.

Therefore, the Court will have the parties present to the jury evidence relevant only to the remaining claims, the issue of fraudulent concealment (as discussed below), and any legal defenses to the remaining claims.

## III. FRAUDULENT CONCEALMENT JURY ISSUE

Also discussed at Friday and Monday's hearing was the issue of fraudulent concealment and its relationship with the previously-adjudicated statute of limitations issue. From the Court's perspective, two issues need to be resolved.

First is the jury's role with respect to a finding of fraudulent concealment. Both parties agree that the issue of whether Mattel has established a period of fraudulent concealment should be submitted to the jury. However, at Friday's hearing, Mattel suggested that the Court's findings as a matter of law on summary judgment regarding the statute of limitations places limitations on the time period during which the jury may find fraudulent concealment. Tr. at 100. Specifically, Mattel attempted to link the Court's findings regarding the earliest possible accrual date of Mattel's claims -- other than conversion and intentional inference with contractual relations -- with the period of fraudulent concealment to be determined by the jury regarding these two claims.

The Court's conclusion regarding the narrow range of possible accrual dates for Mattel's state-law claims, other than the conversion and intentional interference with contractual relations claims, was linked to a specific test relating to California's so-called "discovery rule," which the Court will not repeat here. See May 27, 2008, Order re Statute of Limitations Defense at 4 - 8. In the Court's June 2, 2008, Further and Final Order Re Statute of Limitations Defense, the Court noted that, because the claims for conversion and intentional interference with contractual relations are not subject to the discovery rule, "the conclusions drawn by the Court regarding the possible accrual dates for the remaining state-law claims do not apply to" these claims. Id. at 3. As noted by the Court in that Order, "[w]hether a period of fraudulent concealment exists, as well as the

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

8


EXHIBIT ___
PAGE ___

duration of any such period, . . . are . . . questions of fact for the jury." <u>Id.</u> If Mattel believes that this approach is erroneous, then it may file, in an introductory statement to its proposed jury instructions, a short statement of legal argument in support of its position, to which, of course, MGA may respond.

Second is the scope of the relevant evidence regarding fraudulent concealment. As articulated by the Court at Monday's hearing (and before that, in its statute of limitations summary judgment orders cited above), the relevant <u>issues</u> – or, stated otherwise, the ultimate facts -- are whether and for what time period the MGA defendants fraudulently concealed from Mattel the fact that Carter Bryant worked on the Bratz drawings during his period of employment with Mattel. <u>See</u> Tr. at 5317-19. The relevant <u>evidence</u>, of course, may extend beyond that boundary. <u>See</u> Fed. R. Evid. 401 ("'Relevant evidence' means evidence having <u>any</u> tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.") (emphasis added). For instance, evidence of Mattel's knowledge of (and evidence regarding MGA's concealment of) the fact that Carter Bryant was involved at some point with the Bratz project in general is relevant to -- but by no means dispositive of -- the ultimate facts of whether and for what time period the MGA defendants fraudulently concealed from Mattel the fact that Carter Bryant worked on the Bratz drawings during his period of employment with Mattel.

This distinction is in accord with that made by the Court yesterday regarding the admission of "Phase 2 evidence" in Phase 1B. Although the relevant issues have been, more or less, neatly dissected into various phases to facilitate efficient adjudication, the relevant <u>evidence</u> is not as conducive to any surgical cuts and has thus far managed to allude such neat dissection. Therefore, although counsel should conduct themselves in accordance with the general principles articulated herein and elsewhere on the record, relevancy, and other limits thereon placed on admissibility of evidence, most notably Fed. R. Evid. 403, will continue to be determined by the Court as objections are raised at trial.

**IT IS SO ORDERED.**

Initials of Deputy Clerk: jh

9

EXHIBIT 2
PAGE 21

EXHIBIT 3

1 | THOMAS J. NOLAN (Bar No. 66992)
2 | (tnolan@skadden.com)
  | JASON D. RUSSELL (Bar No. 169219)
3 | (jrussell@skadden.com)
4 | LAUREN E. AGUIAR (Admitted Pro Hac Vice)
  | (laguiar@skadden.com)
5 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6 | 300 South Grand Avenue, Suite 3400
  | Los Angeles, CA 90071
7 | Tel.: (213) 687-5000/Fax: (213) 687-5600

8 |
9 | Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | EASTERN DIVISION

| 12 | CARTER BRYANT, an individual, | ) | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|---|---|
| 13 | Plaintiff, | ) | Consolidated with Case No. 04-9059 |
| 14 | v. | ) | and Case No. 05-2727 |
| 15 | MATTEL, INC., a Delaware | ) | Honorable Stephen G. Larson |
| 16 | corporation, | ) | MGA PARTIES' OBJECTIONS TO MATTEL'S THIRD AMENDED |
| 17 | Defendant. | ) | PROPOSED JURY INSTRUCTIONS FOR PHASE 1-B |
| 18 | AND CONSOLIDATED ACTIONS. | ) | |
| 19 | | | |

20
21
22
23
24
25
26
27
28

Objections to Mattel's Proposed Jury Instructions – Case No. CV 04-9049 SGL (RNBx)

1 **OBJECTION.** As an initial matter, the MGA Parties object to this instruction on the
2 grounds that it is not limited to the 16 registered drawings that the Court has determined to
3 be a proper basis for Mattel's copyright infringement claims in this case. The MGA Parties
4 also object to this instruction on the grounds that it represents Mattel's continuing attempt to
5 avoid acknowledging the filtration analysis required under Ninth Circuit copyright
6 principles. Instead of identifying the elements in the Bryant drawings that it claims are
7 protectable – which is unquestionable Mattel's burden – Mattel disingenuously asserts that
8 all of the elements in the sketches, including a combination thereof, are "original and
9 protectable," and that the Court has so found as a matter of law. This is wrong. The Court
10 actually held, consistent with Ninth Circuit precedent, that this case requires "analytically
11 dissecting works into their components in order to determine whether some – or all –
12 similarities  are attributable to unprotectable elements, which must be filtered out of the
13 analysis before a conclusion regarding substantial similarity is reached." July 24, 2008
14 Order at 2. Mattel must identify for the jury which elements in the 16 registered Bryant
15 drawings (the only works on which an infringement finding ccan be based) it believes are
16 protectable by copyright, and which are not. See, e.g., 17 U.S.C. §102(b) ("In no case does
17 copyright protection for an original work of authorship extend to any idea, procedure,
18 process, system, method of operation, concept, principle, or discovery, regardless of the
19 form in which it is described, explained, illustrated, or embodied in such work"). Numerous
20 aspects of the Bryant drawings are not entitled to protection and the Court has not held
21 otherwise.

22

23 The MGA Parties further object to this instruction on the grounds that, unlike MGA's
24 proposed instruction on the "extrinsic/intrinsic" test, Mattel's proposed instruction does not
25 explain the analytical steps the jury must take in applying the legal test to determine
26 infringement and it does not provide any guidance as to how the jury is to determine what
27 should and should not be filtered from the Bryant drawings. For example, Mattel's
28 proposed instruction does not explain that the "extrinsic" test requires that the jury remove

1 from infringement analysis those elements of the copyrighted work that are not entitled to
2 copyright protection, or that the party claiming infringement (Mattel) cannot rely on any
3 similarity in expression resulting from unprotectible elements for copyright infringement.
4 Mattel's proposed instruction does not explain "analytic dissection" (wherein the jury must
5 isolate the elements of the copyrighted work and analyze each one separately, excluding the
6 other elements present in the work and the combination of elements) or "filtering" (wherein
7 the jury must filter out all of the unprotected elements) aspects of the "extrinsic" test.
8 Mattel's proposed instruction also does not provide the jury with any guidance as to when
9 the jury can consider and rely on expert testimony in connection with the "extrinsic" test
10 and the "intrinsic" test. Thus, Mattel's proposed instruction does not explain that the jury
11 must determine what, if any, protectable expression is present in each of the Bryant sketches,
12 the legal structure used to make this determination, the fact that the jury must limit its
13 comparison to the protected expression in a particular drawing to a particular Bratz doll and,
14 unless a sufficient amount of protected expression from a sketch was copied in the Bratz
15 dolls, Mattel's claim of copyright infringement must fail. Compare Mattel's proposed
16 instruction with MGA Parties' Proposed Jury Instruction – Substantial Similarity.

17

18 Mattel's assertion that Mattel must "establish that specific ideas and expressive elements of
19 the Bratz products that Mattel claims are infringing" is misleading. As stated above, ideas
20 cannot infringe a copyright, because ideas are not protectible under United States copyright
21 law. See, e.g., Satava v. Lowry, 323 F.3d 805, 812 (9th Cir. 2003) ("Only by vigorously
22 policing the line between idea and expression can we ensure both that artists receive due
23 reward for their original creations and that proper latitude is granted other artists to make
24 use of ideas that properly belong to us all.")

25

26 The MGA Parties also object to this instruction on the grounds that it improperly uses the
27 concept of "picturization." The MGA Parties object to any reference to the term or concept
28 "picturization" as referring to an outdated concept used almost exclusively historically to

18

1  refer to the process of comparing an alleged infringing audio visual work such as a film
2  with a literary work.  See, e.g., Berkic v. Crichton, 761 F.2d 1289, 1292 (9th Cir. 1985);
3  Cain v. Universal Pictures Co., 47 F. Supp. 1013, 1016 (C.D. Cal. 1942); see also Anderson
4  v. Stallone, 1989 U.S. Dist. LEXIS 11109, at *35, 11 U.S.P.Q. 2d 1161 (C.D. Cal. Apr. 26,
5  1989).  Accord 4-13 Nimmer on Copyright § 13.03[E][2] (2008) (questioning the validity of
6  the related "audience" test.).  Any references to "picturization" are inappropriate, vague and
7  ambiguous, and will only confuse the jury with respect to the "total concept and feel"
8  standard actually applied under the intrinsic test.  See Lanard Toys, Ltd. v. Novelty, Inc.,
9  511 F. Supp. 2d 1020, 1037–38 (C.D. Cal. 2007) (citing Litchfield v. Spielberg, 736 F.2d
10  1352, 1357 (9th Cir. 1984)).

11

12  Mattel's proposed instruction also does not instruct the jury that it should not consider the
13  unprotectible elements filtered out as part of the extrinsic test analysis in connection with its
14  determination under the "intrinsic" test, and it improperly describes the "ordinary,
15  reasonable audience" as girls between the ages of 6 and 12, when the target audience for
16  Bratz dolls is girls between the ages of 8 and 12.

17

18  The MGA Parties object to this instruction (and Mattel's other copyright instructions)
19  because it does not properly explain that the jury must consider separately each alleged
20  infringing act and/or product.  Thus, the instruction would mislead the jury by improperly
21  suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel
22  should prevail as to the full scope of all alleged infringements.

23

24  Finally, although MGA acknowledges (although it disagrees) that the Court held that the
25  Bryant drawings are entitled to "broad" protection under which infringement should be
26  determined based on the "substantially similar" test, the MGA Parties also respectfully
27  submit that the Court's ruling that "broad" protection is proper for the Bryant drawings
28  cannot be made without the benefit of the full filtering analysis.  In addition, the Court's

1  order does not clarify whether this standard also applies to Mattel's "compilation" claims.
2  Settled case law establishes that infringement of "compilations" should be determined based
3  on the narrower "virtual identity" standard.  See, e.g. Satava v. Lowry, 323 F.3d 805, 812
4  (9th Cir. 2003); Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1446-47 (9th Cir.
5  1994); Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 205 (9th Cir. 1989);
6  Cosmos Jewelry Ltd. v. Po Sun Hon Co., 470 F. Supp. 2d 1072, 1082-84 (C.D. Cal. 2006);
7  Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1178 (C.D. Cal. 2001).

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  **OBJECTION**.  Mattel lacks any evidentiary basis to request an instruction concerning
2  punitive damages.  See Barry v. Raskov, 232 Cal. App. 3d 447, 457 (1991) (trial court
3  properly refused to instruct jury on punitive damages, as there was not clear and convincing
4  evidence of fraud); see also Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("[a] party
5  is entitled to an instruction about his or her theory of the case if it is supported by law and
6  has foundation in the evidence").  Moreover, this instruction is improper because it does not
7  distinguish among the defendants and advise the jury that it must make separate findings
8  with respect to each defendant.

9

10

11

12  DATED:  July 29, 2008              SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

13                                    By:  _____/s/ Thomas J. Nolan_____.
14                                                  Thomas J. Nolan
                                              Attorneys for the MGA Parties

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 3

EXHIBIT 4

DALE M. CENDALI
(of counsel, not admitted in California)
DIANA M. TORRES (S.B. #162284)
PAULA E. AMBROSINI (S.B. #193126)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
email:     dtorres@omm.com

PATRICIA GLASER (S.B. # 55668)
CHRISTENSEN, MILLER, FINK,
JACOBS, GLASER, WEIL &
SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

Attorneys for Plaintiff
MGA Entertainment, Inc.

·FILED·

·· ··· 13  FE 3:04

····· ·····-·······  ·····T
·······  ·· · ·· ···
···········

··· ······ ·· · ······     ·· ·

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

CV 05 - 02727  CBM(Rzx)

| | |
|---|---|
| MGA ENTERTAINMENT, INC., | Case No. |
| Plaintiff, | **COMPLAINT FOR FALSE DESIGNATION OF ORIGIN, AFFILIATION, ASSOCIATION OR SPONSORSHIP (15 U.S.C. § 1125 (a)); UNFAIR COMPETITION (15 U.S.C. § 1125 (a), Cal. Bus. & Prof. Code § 17200 *et seq.* and California Common Law); DILUTION (15 U.S.C. § 1125 (c), Cal. Bus. & Prof Code § 14330 and California Common Law); AND UNJUST ENRICHMENT** |
| v. | |
| MATTEL, INC., a Delaware Corporation, and DOES 1-10, | |
| Defendants. | |
| | **DEMAND FOR JURY TRIAL** |

EXHIBIT ___4___
PAGE ___28___

24.   Unlike "Barbie" dolls, the "BRATZ" line of dolls and branded products sported a hip, multi-ethnic urban look that appealed to contemporary teenage and pre-teen girls.

## MGA's "BRATZ"



25.   At approximately 9.5 to 10 inches tall, the "BRATZ" dolls were intentionally shorter than "Barbie" dolls and looked like no other, with disproportionately large heads, big, dramatic eyes and lips, small, thin bodies, oversized feet (to emphasize shoe fashion and to stand on their own, unlike "Barbie," which requires a stand), and up-to-date fashions.

EXHIBIT 4
PAGE 29

7

1          b.     unfair competition and unfair business practices; and

2          c.     dilution;

3     4.     For costs of suit and reasonable attorneys' fees;

4     5.     For punitive and/or exemplary damages as a result of Mattel's willful

5     and malicious conduct to the extent allowable by law; and

6     6.     For such other and further relief as the Court deems just and proper.

7

8     Dated:     April 13, 2005              PATRICIA GLASER
                                            CHRISTENSEN, MILLER, FINK,
9                                           JACOBS, GLASER, WEIL &
                                            SHAPIRO LLP
10
                                            DALE M. CENDALI
11                                          DIANA M. TORRES
                                            PAULA E. AMBROSINI
12                                          O'MELVENY & MYERS LLP

13

14

15                                          By: _____
                                               Diana M. Torres
16                                          Attorneys for Plaintiff
                                            MGA ENTERTAINMENT, INC.

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT  4
PAGE  30

37

EXHIBIT 5

1  THOMAS J. NOLAN (Bar No. 066992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, CA 90071-3144
3  Telephone: (213) 687-5000
   Facsimile: (213) 687-5600
4  E-mail:    tnolan@skadden.com

5  RAOUL D. KENNEDY (Bar No. 40892)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  Four Embarcadero Center, Suite 3800
   San Francisco, CA 94111
7  Telephone: (415) 984-6400
   Facsimile: (415) 984-2698
8  E-mail:    rkennedy@skadden.com

9  Attorneys for Counter-Defendants,
   MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
10 (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

11              UNITED STATES DISTRICT COURT

12            CENTRAL DISTRICT OF CALIFORNIA

13                  EASTERN DIVISION

   CARTER BRYANT, an individual        )  CASE NO. CV 04-9049 SGL (RNBx)
14                                      )
                Plaintiff,              )  Consolidated with Case No. 04-9059
15                                      )  and Case No. 05-2727
        v.                             )
16                                      )  MGA ENTERTAINMENT,
   MATTEL, INC., a Delaware            )  INC.'S THIRD
17 corporation                         )  SUPPLEMENTAL RESPONSES
                                        )  TO MATTEL, INC.'S FIFTH
18              Defendant.              )  SET OF REQUESTS FOR
                                        )  ADMISSION
19                                      )
                                        )  Honorable Stephen G. Larson
20                                      )  Courtroom 1
                                        )
21                                      )
                                        )
22  _____        )
   Consolidated with MATTEL, INC. v.   )  Discovery Cut-Off: March 3, 2008
23 BRYANT and MGA                       )
   ENTERTAINMENT, INC. v.               )
24 MATTEL, INC.                         )
                                        )
25 _____

26 PROPOUNDING PARTY:    MATTEL, INC. ("MATTEL")

27 RESPONDING PARTY:     MGA ENTERTAINMENT, INC.

28 SET NO.:         FIVE

11-30

EXHIBIT  5
PAGE  31

1 | **RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

2 | In addition to the above General Objections, each of which is
3 | incorporated by reference as though fully set forth herein, MGA also objects to this
4 | request on the grounds that this request calls for a legal conclusion. MGA also
5 | objects that this request calls for the disclosure of information protected by the
6 | attorney-client privilege, the work-product doctrine, the joint defense privilege
7 | and/or the common interest privilege. MGA further objects that the term "THE
8 | BRATZ PITCH MATERIALS" is vague and ambiguous.

9 | **SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION**
10 | **NO. 8:**

11 | In addition to the above General Objections, each of which is
12 | incorporated by reference as though fully set forth herein, MGA also objects to this
13 | request on the grounds that this request calls for a legal conclusion. MGA also
14 | objects that this request calls for the disclosure of information protected by the
15 | attorney-client privilege, the work-product doctrine, the joint defense privilege
16 | and/or the common interest privilege. MGA further objects that the term "THE
17 | BRATZ PITCH MATERIALS" is vague and ambiguous.

18 | Subject to, and without waiving, the foregoing objections, MGA
19 | responds: Deny.

20 | **REQUEST FOR ADMISSION NO. 9:**

21 | Admit that more than one of THE BRATZ PITCH MATERIALS is an
22 | original work of authorship within the meaning of 17 U.S.C. § 102.

23 | **RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

24 | In addition to the above General Objections, each of which is
25 | incorporated by reference as though fully set forth herein, MGA also objects to this
26 | request on the grounds that this request calls for a legal conclusion. MGA also
27 | objects that this request calls for the disclosure of information protected by the
28 | attorney-client privilege, the work-product doctrine, the joint defense privilege

10

EXHIBIT ___5___
PAGE ___32___

1  and/or the common interest privilege. MGA further objects that the term "THE
2  BRATZ PITCH MATERIALS" is vague and ambiguous.

3  **SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION**
4  **NO. 9:**

5      In addition to the above General Objections, each of which is
6  incorporated by reference as though fully set forth herein, MGA also objects to this
7  request on the grounds that this request calls for a legal conclusion. MGA also
8  objects that this request calls for the disclosure of information protected by the
9  attorney-client privilege, the work-product doctrine, the joint defense privilege
10  and/or the common interest privilege. MGA further objects that the term "THE
11  BRATZ PITCH MATERIALS" is vague and ambiguous.

12      Subject to, and without waiving, the foregoing objections, MGA
13  responds: Admit.

14  **REQUEST FOR ADMISSION NO. 10:**

15      Admit that each of THE BRATZ PITCH MATERIALS is an original
16  work of authorship within the meaning of 17 U.S.C. § 102.

17  **RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

18      In addition to the above General Objections, each of which is
19  incorporated by reference as though fully set forth herein, MGA also objects to this
20  request on the grounds that this request calls for a legal conclusion. MGA also
21  objects that this request calls for the disclosure of information protected by the
22  attorney-client privilege, the work-product doctrine, the joint defense privilege
23  and/or the common interest privilege. MGA further objects that the term "THE
24  BRATZ PITCH MATERIALS" is vague and ambiguous.

25  **SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION**
26  **NO. 10:**

27      In addition to the above General Objections, each of which is
28  incorporated by reference as though fully set forth herein, MGA also objects to this

11

EXHIBIT 5
2 2

1 request on the grounds that this request calls for a legal conclusion. MGA also
2 objects that this request calls for the disclosure of information protected by the
3 attorney-client privilege, the work-product doctrine, the joint defense privilege
4 and/or the common interest privilege. MGA further objects that the term "THE
5 BRATZ PITCH MATERIALS" is vague and ambiguous.

6      Subject to, and without waiving, the foregoing objections, MGA
7 responds: Admit.

8 **REQUEST FOR ADMISSION NO. 11:**

9      Admit that YOU CONTEND YOU believed the BRYANT/MGA
10 AGREEMENT was lawful when YOU entered into the agreement.

11 **RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

12      In addition to the above General Objections, each of which is
13 incorporated by reference as though fully set forth herein, MGA also objects to this
14 request on the grounds that this request calls for a legal conclusion. MGA also
15 objects that this request calls for the disclosure of information protected by the
16 attorney-client privilege, the work-product doctrine, the joint defense privilege
17 and/or the common interest privilege.

18      Subject to, and without waiving, the foregoing objections, MGA
19 responds: Admit.

20 **SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR ADMISSION**
21 **NO. 11:**

22      In addition to the above General Objections, each of which is
23 incorporated by reference as though fully set forth herein, MGA also objects to this
24 request on the grounds that this request calls for a legal conclusion. MGA also
25 objects that this request calls for the disclosure of information protected by the
26 attorney-client privilege, the work-product doctrine, the joint defense privilege
27 and/or the common interest privilege.

28      Subject to, and without waiving, the foregoing objections, MGA

12

EXHIBIT 5

PAGE 24

1         Subject to, and without foregoing the General Objections, MGA

2 responds: MGA denies the request, because MGA employees Isaac Larian and

3 Victoria O'Connor testified at their depositions that Bryant told them on or about

4 September 1, 2000, that he was employed by Mattel at that time, but admits that no

5 other MGA employees knew of Bryant's employment with Mattel at that time.

6 DATED: November 30, 2007

7

8                                     SKADDEN, ARPS, SLATE, MEAGHER &

9                                     FLOM LLP

10                                 By: _____

11                                        Thomas J. Nolan
                                    Attorneys for Counter-Defendants, MGA

12                                     ENTERTAINMENT, INC., ISAAC LARIAN,
                                    MGA ENTERTAINMENT (HK) LTD., and

13                                     MGAE de MEXICO S.R.L. de C.V.

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                       EXHIBIT _5_

28                                       PAGE _35_

MGA'S 3d SUPP. RESPONSES TO MATTEL'S 5th SET OF REQUESTS FOR ADMISSION     NO. CV 04-9049 SGL (RNBx)
201413-San Francisco Server 1A - MSWM

EXHIBIT 6

# THIS EXHIBIT IS UNDER SEAL
# PURSUANT TO PROTECTIVE ORDER

EXHIBIT 7

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL, )
)
              PLAINTIFF, )
)
        V. )     NO.  CV 04-9040  SGL (RNBX)
)
MATTEL, INC., A DELAWARE )
CORPORATION, )
)
         DEFENDANTS. )
_____ )
)
AND CONSOLIDATED ACTION (S). )
_____ )

# 30 (B) (6) DEPOSITION OF SPENCER WOODMAN

# VOLUME I

# OCTOBER 9, 2007



COURT REPORTERS

515 S. flower Street
Suite 3600
Los Angeles, California 9007 I
Office: (213) 955-0070
Fax: (213) 955-0077

REPORTED BY:
PAULA PYBURN
CSR NO. 7304
JOB NO. 07AE623-PP

EXHIBIT __7__

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| CARTER BRYANT, AN | ) | |
| INDIVIDUAL, | ) | |
| | ) | CASE NO. |
| PLAINTIFF, | ) | CV 04-9049 SGL(RNBX) |
| | ) | |
| V. | ) | CONSOLIDATED WITH |
| | ) | CASE NO. 04-9059 |
| MATTEL, INC., A DELAWARE | ) | AND |
| CORPORATION, | ) | CASE NO. 05-2727 |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |
| | ) | |
| AND CONSOLIDATED ACTION(S) | ) | |
| | ) | |

VIDEOTAPED 30(B)(6) DEPOSITION OF
SPENCER WOODMAN, VOLUME I, TAKEN ON
BEHALF OF MATTEL, INC., AT 865 SOUTH
FIGUEROA STREET, 2ND FLOOR, LOS
ANGELES, CALIFORNIA, COMMENCING AT
9:31 A.M., TUESDAY, OCTOBER 9, 2007,
BEFORE PAULA A. PYBURN, C.S.R. 7304,
R.P.R., C.L.R.

2

EXHIBIT 7
PAGE 40

```
 1   APPEARANCES OF COUNSEL:
 2
 3   FOR M.G.A. ENTERTAINMENT, INC.:
 4     CHRISTENSEN, GLASER, FINK, JACOBS,
       WEIL & SHAPIRO, LLP
 5     BY:  JOEL KLEVENS, ESQ.
       10250 CONSTELLATION BOULEVARD
 6     LOS ANGELES, CALIFORNIA 90067
       (310) 553-3000
 7     JKLEVENS@CHRISGLASE.COM
 8
 9   FOR MATTEL, INC.:
10     QUINN EMANUEL URQUHART OLIVER & HEDGES, L.L.P.
       BY:  DIANE CAFFERATA HUTNYAN, ESQ.
11     BY:  LILY Y. LU, ESQ.
       865 SOUTH FIGUEROA STREET
12     10TH FLOOR
       LOS ANGELES, CALIFORNIA 90017-2543
13     (213) 443-3000
       DIANEHUTNYAN@QUINNEMANUEL.COM
14     LILYLU@QUINNEMANUEL.COM
15
     ALSO PRESENT:
16
       RICH DANIELS,
17         IN-HOUSE COUNSEL, M.G.A. ENTERTAINMENT, INC.
       STEVEN TOGAMI,
18         J.T.V. LITIGATION SERVICES, INC.
19
20
21
22
23
24
25
```

3

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

EXHIBIT ___7___
PAGE ___41___

```
 1   REFERRING TO AS FIRST PUBLISHED IN THE UNITED
 2   STATES.
 3        Q.   OKAY.   OKAY.   BUT THAT'S NOT MY QUESTION.
 4             YOU CAN CONTEMPLATE A SITUATION WHERE THAT
 5   FIRST PHRASE IS CORRECT?                                    04:34:13
 6             MR. KLEVENS:   SAME OBJECTIONS.
 7   BY MS. HUTNYAN:
 8        Q.   YOU DON'T THINK SHE'S JUST OUT-AND-OUT
 9   FALSE, THERE'S NO INTERPRETATION OF "FIRST
10   PUBLISHED" THAT COULD POSSIBLY MAKE THAT STATEMENT           04:34:21
11   CORRECT, FROM "THE" TO "2001"?
12             MR. KLEVENS:   CALLS FOR SPECULATION.
13             THE WITNESS:   YEAH, I -- I DON'T KNOW WHAT
14   SHE'S REFERRING TO THERE.
15   BY MS. HUTNYAN:                                             04:34:29
16        Q.   I UNDERSTAND THAT.   AGAIN, YOU'RE NOT
17   TELLING ME SHE'S INCORRECT?
18        A.   RIGHT.
19             MR. KLEVENS:   OBJECTION; ASKED AND
20   ANSWERED.                                                   04:34:46
21   BY MS. HUTNYAN:
22        Q.   IF YOU THOUGHT THAT THAT STATEMENT WAS JUST
23   FALSE UNDER ANY INTERPRETATION, YOU WOULD TELL ME
24   SO; CORRECT?
25        A.   I CAN'T ANSWER THAT.   I DON'T KNOW.   I          04:34:54
```

278

EXHIBIT 7
PAGE 42

| | |
|---|---|
| 1 | DON'T UNDERSTAND WHAT SHE MEANS BY THAT SENTENCE. |
| 2 | Q. SO IT MAY VERY WELL BE TOTALLY INCORRECT? |
| 3 | MR. KLEVENS: OBJECTION; ASKED AND |
| 4 | ANSWERED. |
| 5 | THE WITNESS: I DON'T KNOW. | 04:35:06 |
| 6 | BY MS. HUTNYAN: |
| 7 | Q. OKAY. AND IT COULD BE TOTALLY RIGHT? |
| 8 | A. I DON'T KNOW. |
| 9 | MS. HUTNYAN: WHAT IS THIS? |
| 10 | Q. I THINK WE MAY HAVE DONE THIS. PLEASE | 04:35:51 |
| 11 | FORGIVE ME IF WE HAVE, BUT I JUST WANTED TO MAKE |
| 12 | SURE THAT WE'RE VERY CLEAR. |
| 13 | ON EXHIBIT -- |
| 14 | I THINK I DON'T -- DO I HAVE A COPY OF THIS |
| 15 | ONE? | 04:36:02 |
| 16 | MS. LU: 949. |
| 17 | BY MS. HUTNYAN: |
| 18 | Q. 949, DG-4, WHICH IS ONE OF THE EXHIBITS, IT |
| 19 | WAS THE ONE WHERE IT SAID TRUE COPIES OF THE |
| 20 | DECORATION DIR- -- DIRECTIONS. | 04:36:11 |
| 21 | A. ARE YOU REFERRING TO THE EXHIBIT ITSELF? |
| 22 | Q. ACTUALLY PAGE MGA 0883262. |
| 23 | A. OKAY. |
| 24 | Q. NOW, I BELIEVE YOU HAD CONFIRMED THAT THE |
| 25 | DATE OF BETWEEN LATE 2000 AND 2001 WAS CORRECT FOR | 04:36:42 |

279

EXHIBIT 7
PAGE 73

| | |
|---|---|
| 1 | TRUE COPIES OF THE DECORATION DIRECTIONS -- HAVE |
| 2 | TROUBLE WITH THAT FOR SOME REASON -- IS THAT RIGHT? |
| 3 | A.   THAT IS CORRECT. |
| 4 | Q.   OKAY.  THANK YOU. |
| 5 | HAVE A FULL COPY OF THIS ONE?  OKAY.  CAN |
| 6 | YOU -- CAN YOU QUICKLY MAKE A COPY OF THE WHOLE ONE, |
| 7 | OR IS IT HUGE OR SOMETHING? |
| 8 | MS. LU:  I THINK IT'S RIGHT -- |
| 9 | MS. HUTNYAN:  JUST BE EASIER FOR ALL |
| 10 | CONCERNED, RATHER THAN DOING THESE TIDBITS.  IN THE |
| 11 | MEANTIME WE CAN USE THIS, WORK OUR WAY THROUGH IT. |
| 12 | MS. LU:  ALL OF THEM ARE, THAT'S WHY -- |
| 13 | MS. HUTNYAN:  OKAY.  OKAY.  WELL, WE'LL |
| 14 | WORK WITH WHAT WE HAVE.  I DON'T WANT TO HOLD THINGS |
| 15 | UP. |
| 16 | (EXHIBIT NUMBER 952 WAS MARKED FOR |
| 17 | IDENTIFICATION AND IS BOUND |
| 18 | SEPARATELY.) |
| 19 | MS. HUTNYAN:  THIS WILL BE -- |
| 20 | THE REPORTER:  952. |
| 21 | MS. HUTNYAN:  -- 952.  THANK YOU. |
| 22 | Q.   OKAY.  YOU'VE BEEN HANDED A COPY OF EXHIBIT |
| 23 | 952, WHICH IS EXCERPTS OF THE AFFIRMATION OF LEE |
| 24 | SHIU CHEUNG.  I APOLOGIZE IF I'M MISPRONOUNCING HIS |
| 25 | NAME.  IT'S MGA 0883920, AND THE LAST PAGE, ALTHOUGH |

04:37:01

04:38:00

04:38:16

04:38:26

04:38:59

280

EXHIBIT 7
PAGE 44

```
 1      I DON'T BELIEVE IT'S CONSECUTIVE, IT MAY OR MAY NOT
 2   BE, IS 0883963.
 3          A.    -63?
 4          Q.    UH-HUH, AT THE -- AT THE VERY END.
 5                IS THAT YOUR LAST PAGE?                        04:39:20
 6          A.    YES.
 7          Q.    OKAY.  HAVE YOU SEEN THIS DOCUMENT BEFORE?
 8          A.    YES, I BELIEVE I HAVE.
 9          Q.    OKAY.  AND IS IT YOUR UNDERSTANDING THAT
10   THIS WAS A DOCUMENT THAT WAS SUBMITTED TO THE HONG         04:39:31
11   KONG HIGH COURT WITH RESPECT TO M.G.A.
12   ENTERTAINMENT, INC., VERSUS DOUBLE GRAND CORPORATION
13   LIMITED?
14          A.    YES.
15          Q.    DO YOU KNOW WHAT THAT CASE IS ABOUT?          04:39:41
16          A.    NO.
17          Q.    OR WAS ABOUT?
18          A.    NO, I DON'T.
19          Q.    DID YOU ASK ANYBODY WHAT IT WAS ABOUT?
20          A.    NO, I DIDN'T.                                 04:39:49
21          Q.    OKAY.  AND WILL YOU AGREE WITH ME THAT THIS
22   IS MR. LEE'S SWORN STATEMENT AS TO THE MATTERS THAT
23   HE'S ATTESTED TO IN THIS DOCUMENT?
24                MR. KLEVENS:  AND ARE YOU -- ARE YOU
25   INCLUDING THOSE -- THE LAST TWO PAGES AS WELL, OR --       04:40:12
```

281

EXHIBIT 7
PAGE 45

```
 1    IT APPEARS TO BE TWO DOCUMENTS PUT TOGETHER.  YOU'VE

 2    GOT A PINK PAGE BETWEEN IT.  I DON'T KNOW IF IT'S A

 3    SEPARATE DOCUMENT OR NOT.

 4            MS. HUTNYAN:  THAT'S --

 5            MR. KLEVENS:  DO YOU WANT HIM TO ANSWER          04:40:26

 6    WITH RESPECT TO BOTH?

 7            MS. HUTNYAN:  THAT'S ONE OF THE EXHIBITS.

 8    JUST ONE OF THE EXHIBITS.

 9            MR. KLEVENS:  OH, YOU'RE SAYING THE LAST

10    TWO PAGES PURPORT TO BE ONE OF THE EXHIBITS TO THE      04:40:33

11    AFFIRMATION?

12            MS. HUTNYAN:  YEAH, THAT'S WHY IT SAYS

13    LSC-4.  SO SEE HIS INITIALS?  I THINK THE CONVENTION

14    IS THEY USE THE WITNESS'S INITIALS AND THEN THEY

15    TACK A NUMBER ON.                                       04:40:44

16         Q.   SO -- SO THIS IS MR. LEE'S SWORN

17    AFFIRMATION?

18         A.   I'M SORRY, YOUR QUESTION AGAIN IS?

19         Q.   THIS DOCUMENT IS MR. LEE'S SWORN

20    AFFIRMATION?  HE -- HE DID THIS UNDER OATH?            04:40:57

21         A.   YES, I BELIEVE IT IS.

22         Q.   DO YOU KNOW HOW THIS DOCUMENT WAS PREPARED?

23         A.   NO, I DON'T.

24         Q.   DO YOU KNOW WHEN -- WELL, DO YOU KNOW WHY

25    IT WAS SUBMITTED IN THIS ACTION, THIS DOUBLE GRAND     04:41:13
```

282

EXHIBIT 7
PAGE 410

```
 1   ACTION?

 2        A.   NO, I DON'T.

 3        Q.   DO YOU KNOW WHAT WAS AT STAKE IN THAT

 4   ACTION?

 5        A.   NO, I DON'T.                                    04:41:26

 6        Q.   DO YOU KNOW IF ANYBODY AUTHORIZED MR. LEE'S

 7   TESTIMONY HERE?

 8        A.   NO, I DON'T.

 9        Q.   DID ANYBODY REVIEW THIS TESTIMONY BEFORE IT

10   WAS PRESENTED TO THE HIGH COURT?                          04:41:48

11        A.   I DO NOT KNOW.

12        Q.   OKAY.  AND THEN ON THE THIRD PAGE, WHICH IS

13   0883922 IT SAYS (READING):

14             ON 18TH SEPTEMBER 2000 M.G.A.

15             ENTERED INTO AN AGREEMENT WITH               04:42:26

16             MR. CARTER BRYANT, HEREINAFTER

17             REFERRED TO AS "MR. BRYANT," WHEREBY

18             MR. BRYANT DESIGNED AND DEVELOPED A

19             LINE OF DOLLS KNOWN AS BRATZ,

20             HEREINAFTER REFERRED TO AS "THE            04:42:36

21             BRYANT AGREEMENT."

22             IS THAT THE AGREEMENT THAT YOU HAD REVIEWED

23   IN PREPARATION FOR YOUR DEPOSITION TODAY?

24        A.   YES.

25        Q.   AND IS IT YOUR UNDERSTANDING THAT THAT      04:42:50
```

283

EXHIBIT __7__
PAGE __47__

```
 1    FIRST SENTENCE IS TRUE AND CORRECT?

 2         A.   WELL, I KNOW MR. BRYANT DESIGNED, AND HE --

 3    IT COULD BE MISLEADING THAT HE DEVELOPED ALONE THE

 4    LINE OF DOLLS, BUT HE PARTICIPATED IN THE

 5    DEVELOPMENT OF THE LINE OF DOLLS KNOWN AS BRATZ,          04:43:12

 6    YES.

 7         Q.   OKAY.  SO YOU FEEL LIKE THIS STATEMENT IS

 8    MISLEADING?

 9         A.   IT POTENTIALLY COULD BE.  NOT

10    INTENTIONALLY.                                            04:43:24

11         Q.   HOW DO YOU KNOW?

12         A.   WELL, BECAUSE I DON'T THINK THERE'S ANY --

13    I DON'T KNOW.

14         Q.   SO YOU DON'T KNOW WHETHER IT'S MISLEADING

15    OR NOT?                                                   04:43:37

16         A.   NO.

17         Q.   AND WHY IS THAT?

18              MR. KLEVENS:  OBJECTION; ASKED AND

19    ANSWERED.

20              THE WITNESS:  BECAUSE I BELIEVE IT DEPENDS      04:43:52

21    ON HOW YOU DEFINE HIS INVOLVEMENT IN THE DEVELOPMENT

22    OF THE BRATZ DOLLS.

23    BY MS. HUTNYAN:

24         Q.   WELL, IF YOU WERE AN IMPORTANT JUDGE IN

25    HONG KONG AND SOMEBODY WAS SUBMITTING A SWORN            04:44:12
```

284

EXHIBIT 7
PAGE 48

```
 1      STATEMENT TO YOU -- STRIKE THAT.

 2             IT'S TRUE THAT THIS WAS SUBMITTED TO THE

 3      HIGH COURT IN CONNECTION WITH SOME KIND OF

 4      LITIGATION; CORRECT?

 5          A.    WHAT ARE YOU REFERRING TO AS "THIS," THE --      04:44:46

 6          Q.    THIS DOCUMENT.

 7          A.    -- THE AGREEMENT -- OR THE EXHIBIT?

 8          Q.    THE WHOLE DOCUMENT.

 9          A.    OH.

10          Q.    THIS AFFIRMATION WAS TO AFFIRM SOMETHING TO      04:44:54

11      THIS COURT; CORRECT?

12          A.    I BELIEVE IT IS, YES.

13          Q.    IT WAS UNDER OATH?

14          A.    YES.

15          Q.    IT SAYS (READING):                              04:45:02

16                I, LEE SHIU CHEUNG, OF ROOM 1001,

17                EMPIRE CENTER, 68 M-O-D-Y ROAD,

18      AND THEN THERE IS MORE ADDRESS WHICH IS HARD TO

19      READ (READING):

20                HONG KONG, DO SOLEMNLY, SINCERELY               04:45:15

21                AND TRULY AFFIRM AND SAY AS FOLLOWS.

22                WOULD YOU SAY THAT THAT'S A PRETTY SINCERE

23      STATEMENT ON BEHALF OF MR. LEE?

24                MR. KLEVENS:   OBJECTION; CALLS FOR

25      SPECULATION.                                              04:45:31
```

285

EXHIBIT __7__
PAGE __49__

```
 1          THE WITNESS:  I DON'T KNOW WHERE YOU'RE
 2   REFERRING TO, I'M SORRY.
 3   BY MS. HUTNYAN:
 4      Q.   VERY BEGINNING WHERE HE STARTS OUT, HE'S
 5   AFFIRMING SOLEMNLY, SINCERELY AND TRULY.                04:45:35
 6          MR. KLEVENS:  THAT'S WHAT IT SAYS.  WHAT'S
 7   YOUR QUESTION?
 8          MS. HUTNYAN:  IT'S TO THE WITNESS WHO'S
 9   HERE TO PROVIDE TESTIMONY AS TO SWORN STATEMENTS OF
10   THE COMPANY, WHETHER THAT IS A PRETTY IMPORTANT          04:45:48
11   AFFIRMATION.
12          MR. KLEVENS:  OBJECTION; VAGUE AND
13   AMBIGUOUS, CALLS FOR SPECULATION.
14          THE WITNESS:  CAN YOU SHOW ME WHERE THAT --
15   I'M SORRY, I STILL DON'T SEE WHERE YOU'RE REFERRING      04:45:56
16   TO --
17   BY MS. HUTNYAN:
18      Q.   RIGHT UNDER --
19      A.   OH, DO -- I SEE (INDICATING).
20          AND YOUR QUESTION?                                04:46:05
21      Q.   WELL, YOU KNOW, YOU DON'T KNOW ANYTHING
22   ABOUT THE LITIGATION, YOU DON'T KNOW ANYTHING ABOUT
23   THE PROCEEDING, YOU DON'T KNOW ANYTHING ABOUT WHAT
24   WAS AT STAKE, BUT -- BUT HERE YOU HAVE A HIGH LEVEL
25   OFFICIAL OF M.G.A. WHO IS SOLEMNLY, SINCERELY AND        04:46:16
```

286

EXHIBIT 7
PAGE 50

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

```
 1   STATE OF CALIFORNIA        )
 2   COUNTY OF LOS ANGELES      )  SS.
 3
 4     I, PAULA A. PYBURN, CSR NO. 7304, RPR, IN AND FOR
 5   THE STATE OF CALIFORNIA, DO HEREBY CERTIFY:
 6     I AM THE DEPOSITION OFFICER THAT STENOGRAPHICALLY
 7   RECORDED THE TESTIMONY IN THE FOREGOING DEPOSITION;
 8     PRIOR TO BEING EXAMINED THE DEPONENT WAS FIRST DULY
 9   SWORN BY ME;
10     THE FOREGOING TRANSCRIPT IS A TRUE RECORD OF THE
11   TESTIMONY GIVEN.
12     BEFORE COMPLETION OF THE DEPOSITION, REVIEW OF THE
13   TRANSCRIPT [X] WAS [ ] WAS NOT REQUESTED.  IF
14   REQUESTED, ANY CHANGES MADE BY THE DEPONENT (AND
15   PROVIDED TO THE REPORTER) DURING THE PERIOD ALLOWED
16   ARE APPENDED HERETO.
17
18   DATED _October 16, 2007_.
19
20
21                    _Paula A. Pyburn_
22
23
24
25
```

329

EXHIBIT ___7___
PAGE ___51___

EXHIBIT 8

# THIS EXHIBIT IS UNDER SEAL
# PURSUANT TO PROTECTIVE ORDER

EXHIBIT 9

# THIS EXHIBIT IS UNDER SEAL
# PURSUANT TO PROTECTIVE ORDER

EXHIBIT 10

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, AN INDIVIDUAL., ) | CASE NUMBER CV 04-9049 SGL |
| PLAINTIFF, ) | (RNBX) |
| ) | |
| VS. ) | CONSOLIDATED WITH |
| ) | CASE NO. CV 04-09059 |
| MATTEL, INC., A DELAWARE ) | CASE NO. CV 05-2727 |
| CORPORATION, ) | |
| ) | |
| DEFENDANTS. ) | |
| | |
| AND RELATED CROSS-ACTIONS. ) | |

## DEPOSITION OF GLENN V. VILPPU

MAY 15, 2008

KIMBERLY WILDISH
CSR 8078
19539



Kelli Norden and Associates
C o u r t   R e p o r t e r s
310.820.7733 phone 310.820.7933 fax
11726 San Vicente Boulevard  Suite 205
Los Angeles, California 90049
kna@kellinorden.com www.kellinorden.com



EXHIBIT 10
PAGE 109

## DEPOSITION OF GLENN VILPPU

1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA

3    EASTERN DIVISION

4

5    CARTER BRYANT, AN INDIVIDUAL,     )
                                       )  CASE NO.
6                   PLAINTIFF,         )  CV 04-9049 SGL (RNBX)
                                       )  CONSOLIDATED WITH
7              VS.                     )  CASE NO. CV 04-09059
                                       )  CASE NO. CV 05-2727
8    MATTEL, INC., A DELAWARE          )
     CORPORATION,                      )
9                                      )
                    DEFENDANT.         )
10   _____  )
                                       )
11   AND CONSOLIDATED ACTIONS          )
     _____  )

12

13

14

15

16            DEPOSITION OF GLENN V. VILPPU, TAKEN

17       ON BEHALF OF THE DEFENDANT, AT 865

18       SOUTH FIGUEROA STREET, TENTH FLOOR,

19       LOS ANGELES, CALIFORNIA, COMMENCING

20       AT 9:13 A.M., THURSDAY, MAY 15, 2008,

21       BEFORE KIMBERLY WILDISH, CSR NUMBER

22       8078.

23

24

25

                                              2

EXHIBIT  10
PAGE   110

DEPOSITION OF GLENN VILPPU

1   APPEARANCES OF COUNSEL:

2

3

4   FOR THE PLAINTIFF:

5        SKADDEN, ARPS, SLATE, MEAGHOR & FLOM
         BY:  DAVID W. HANSEN, ESQ.
6             -AND-
              LAUREN AGUIAR, ESQ.
7        525 UNIVERSITY AVENUE
         SUITE 1100
8        PALO ALTO, CALIFORNIA  94301
         650.470.4500
9        DHANSEN@SKADDEN.COM

10

11

12

13   FOR THE DEFENDANT MATTEL, INC.:

14        QUINN, EMANUEL, URQUHART, OLIVER
          & HEDGES, L.L.P.
15        BY:  DAVID W. QUINTO
               -AND-
16             STAN KARAS, ESQ.
          865 SOUTH FIGUEROA STREET
17        10TH FLOOR
          LOS ANGELES, CALIFORNIA  90017
18        213.443.3000
          DAVIDQUINTO@QUINNEMANUEL.COM
19        STANKARAS@QUINNEMANUEL.COM

20

21

22

23

24

25

3

EXHIBIT 10
PAGE 111

DEPOSITION OF GLENN VILPPU

1    APPEARANCES OF COUNSEL (CONTINUED):

2

3

4    FOR THE DEFENDANT M.G.A. ENTERTAINMENT:

5            M.G.A. ENTERTAINMENT
             BY:  CRAIG HOLDEN, ESQ.
6            16360 ROSCOE BOULEVARD
             SUITE 105
7            VAN NUYS, CALIFORNIA  91406

8

9

10

11   ALSO PRESENT:

12        •    CHUCK GOSWITZ, LEGAL VIDEO SERVICES

13

14

15

16

17

18

19

20

21

22

23

24

25

4

EXHIBIT __10__

DEPOSITION OF GLENN VILPPU

11:15:23  1        Q.    HAVE YOU EVER TALKED WITH HIM?
11:15:26  2        A.    NO.
11:15:26  3        Q.    HAVE YOU EVER READ ANY DEPOSITION HE'S
11:15:28  4    GIVEN?
11:15:30  5        A.    NO.
11:15:31  6        Q.    HAVE YOU EVER READ ANY DECLARATION HE
11:15:33  7    SIGNED?
11:15:35  8        A.    DECLARATION OF WHAT?
11:15:37  9        Q.    HAVE YOU EVER READ ANY DECLARATION
11:15:39  10    THAT MR. BRYANT HAS SIGNED?
11:15:41  11        A.    NO.
11:15:42  12        Q.    DO YOU KNOW WHAT A DECLARATION IS?
11:15:44  13            MR. HANSEN:    OBJECT TO FORM.
11:15:47  14            THE DEPONENT:    ISN'T THAT THE EQUIVALENT TO
11:15:50  15    WHAT I'VE JUST DONE?
11:15:52  16            MR. QUINTO:    A DECLARATION IS A STATEMENT MADE
11:15:56  17    UNDER PENALTY OF PERJURY.    IT'S A WRITTEN STATEMENT
11:15:58  18    MADE UNDER PENALTY OF PERJURY THAT ATTEMPTS TO SET
11:15:58  19    FORTH FACTS.
11:16:01  20            THE DEPONENT:    NO.
11:16:01  21            MR. HANSEN:    OBJECTION TO FORM.
11:16:21  22            THE DEPONENT:    NO.
11:16:23  23            BY MR. QUINTO:
11:16:24  24        Q.            LET ME SEE WHETHER I UNDERSTAND WHAT
11:16:27  25    YOU WERE SAYING A FEW MINUTES AGO ABOUT THE

DEPOSITION OF GLENN VILPPU

| 11:16:41 | 1 | ADDITIONAL OPINION YOU HAVE THAT'S IN ADDITION TO |
| 11:16:42 | 2 | THOSE SUMMARIZED IN THE SUMMARY OF YOUR OPINIONS. |
| 11:16:45 | 3 | DO I UNDERSTAND CORRECTLY THAT YOU ARE |
| 11:16:48 | 4 | SAYING THAT THERE IS NOTHING UNIQUE ABOUT THE BRATZ |
| 11:16:53 | 5 | DOLLS? THAT THEY SIMPLY REFLECT A CARTOON, THAT |
| 11:16:54 | 6 | THEY'RE A DERIVATIVE OF THE CARTOON CULTURES? |
| 11:16:56 | 7 | A. I DIDN'T MENTION THE DOLLS. |
| 11:16:57 | 8 | Q. WELL, I'M TRYING TO UNDERSTAND, WHAT |
| 11:16:59 | 9 | WERE YOU TALKING ABOUT? |
| 11:17:01 | 10 | MR. HANSEN: OBJECT TO THE FORM. |
| 11:17:04 | 11 | AND IT'S A LONG ANSWER. YOU WANT TO |
| 11:17:08 | 12 | READ IT BACK? WHAT WERE YOU TALKING ABOUT? |
| 11:17:08 | 13 | I OBJECT TO THE FORM. |
| 11:17:12 | 14 | BY MR. QUINTO: |
| 11:17:19 | 15 | Q. CAN YOU ANSWER MY QUESTION? |
| 11:17:23 | 16 | A. I WAS TALKING ABOUT THE WORK THAT WAS |
| 11:17:25 | 17 | THE INSPIRATION OF HIM TAKING AND DOING HIS WORK. |
| 11:17:28 | 18 | Q. WHO IS THE "HIM" HERE? |
| 11:17:30 | 19 | A. OH, BRYANT. |
| 11:17:32 | 20 | Q. CARTER BRYANT? |
| 11:17:34 | 21 | A. OR BRYANT. EXCUSE ME. YES. |
| 11:17:38 | 22 | Q. SO YOU'RE SAYING, IN YOUR VIEW, THERE |
| 11:17:39 | 23 | IS NOTHING UNIQUE IN ANY OF THE CARTER BRYANT |
| 11:17:43 | 24 | DRAWINGS OF BRATZ? |
| | 25 | MR. HANSEN: OBJECT TO THE FORM. THAT'S NOT |

81

KELLI NORDEN AND ASSOCIATES   310.820.7733   FAX. 310.820.7933

EXHIBIT 10
PAGE 114

DEPOSITION OF GLENN VILPPU

| | | |
|---|---|---|
| 11:17:49 | 1 | WHAT HE SAID. |
| 11:17:50 | 2 | THE DEPONENT:  IN ESSENCE, I THINK I'M SAYING |
| 11:18:04 | 3 | THAT, YES. |
| 11:18:07 | 4 | BY MR. QUINTO: |
| 11:18:10 | 5 | Q.    IS THERE ANYTHING UNIQUE IN THE BRATZ |
| 11:18:12 | 6 | DOLLS? |
| 11:18:13 | 7 | A.    I'M SORRY? |
| 11:18:35 | 8 | Q.    IN YOUR OPINION, IS THERE ANYTHING |
| 11:18:37 | 9 | UNIQUE IN THE BRATZ DOLLS? |
| 11:18:40 | 10 | A.    I THINK THEY'RE -- I DON'T THINK |
| 11:18:47 | 11 | THEY'RE PARTICULARLY UNIQUE.  I THINK IT'S A |
| 11:18:49 | 12 | CONTINUATION OF A POPULAR CULTURE. |
| 11:18:51 | 13 | MR. QUINTO:  WHY DON'T WE TAKE A VERY-SHORT |
| 11:18:52 | 14 | BREAK, PLEASE. |
| 11:29:25 | 15 | THE VIDEOGRAPHER:  OFF THE RECORD AT |
| 11:29:28 | 16 | 11:19 A.M.  THIS IS THE END OF TAPE ONE. |
| 11:29:33 | 17 | (WHEREUPON, A RECESS WAS HELD |
| 11:29:33 | 18 | FROM 1:19 A.M. TO 11:30 A.M. |
| 11:29:45 | 19 | DURING WHICH MR. HOLDEN EXITED |
| 11:29:47 | 20 | THE DEPOSITION PROCEEDINGS.) |
| 11:29:52 | 21 | THE VIDEOGRAPHER:  AND WE ARE ON THE RECORD AT |
| 11:30:07 | 22 | 11:30 A.M.  THIS IS THE BEGINNING OF TAPE TWO. |
| 11:30:09 | 23 | BY MR. QUINTO: |
| 11:30:12 | 24 | Q.    MR. VILPPU, DO YOU KNOW WHETHER THERE |
| | 25 | HAS EVER BEEN ANY COPYRIGHT INFRINGEMENT LITIGATION |

82

EXHIBIT  10
PAGE  115

DEPOSITION OF GLENN VILPPU

| | | |
|---|---|---|
| 11:30:17 | 1 | INVOLVING ANY OF THE ANIMATION PROJECTS YOU HAVE |
| 11:30:24 | 2 | WORKED ON? |
| 11:30:27 | 3 | A. NO. |
| 11:30:32 | 4 | Q. HAVE YOU EVER FELT THAT SOMEONE ELSE |
| 11:30:41 | 5 | HAD INFRINGED YOUR COPYRIGHT ON ANY OF YOUR WORKS? |
| 11:30:43 | 6 | A. NO. |
| 11:30:50 | 7 | Q. DO YOU HAVE ANY KIND OF PERSONAL |
| 11:30:53 | 8 | UNDERSTANDING OF WHAT DEGREE OF SIMILARITY BETWEEN |
| 11:30:58 | 9 | TWO WORKS IS REQUIRED TO ESTABLISH COPYRIGHT |
| 11:31:01 | 10 | INFRINGEMENT? |
| 11:31:06 | 11 | A. AS A WORKING ARTIST, I HAVE SORT OF A |
| 11:31:09 | 12 | VAGUE IDEA, THAT I THOUGHT 10 PERCENT DIFFERENCE, |
| 11:31:13 | 13 | ALTHOUGH I DON'T KNOW WHERE THAT COMES FROM. BUT I |
| 11:31:15 | 14 | DON'T KNOW. |
| 11:31:17 | 15 | Q. HOW WOULD YOU MEASURE 10 PERCENT |
| 11:31:20 | 16 | DIFFERENCE? |
| 11:31:42 | 17 | A. I WOULD HAVE TO DEAL WITH SOMETHING |
| 11:31:47 | 18 | FACTUAL TO LOOK AT, TO SEE THE SIMILARITIES. |
| 11:31:53 | 19 | Q. IN THE COURSE OF YOUR WORK RELATED TO |
| 11:31:55 | 20 | THIS LAWSUIT, HAVE YOU LEARNED WHETHER CARTER BRYANT |
| 11:31:59 | 21 | WAS PAID ANYTHING FOR THE DRAWINGS HE DID? |
| 11:32:00 | 22 | A. IF CARTER BRYANT WAS PAID? |
| 11:32:00 | 23 | Q. YES. |
| 11:32:02 | 24 | A. FOR WHAT? |
| | 25 | Q. THE DRAWING HE DID. |

83

EXHIBIT 10
PAGE 1110

DEPOSITION OF GLENN VILPPU

19:22:27  1          BUT WHEN HE SAYS "FUNKY URBAN STYLE,"
19:22:29  2    I DON'T RELATE TO THAT AT ALL.
19:22:32  3          Q.    DID YOU READ ANY DEPOSITION TESTIMONY
19:22:34  4    FROM MR. LOETZ AS TO WHAT HE MEANT BY THAT?
19:22:36  5          A.    ACTUALLY, I DID.  YES.
19:22:41  6          Q.    AND DO YOU REMEMBER WHETHER HE HAD
19:22:43  7    ANYTHING TO SAY ABOUT THE STAPLES CENTER?
19:22:47  8          A.    OH, I THINK HE -- YEAH.  HE DID SAY
19:22:50  9    THAT IT'S WHAT YOU SEE OUTSIDE THE STAPLES CENTER.
19:22:51 10          Q.    AND THAT WAS REFERENCING THE FASHIONS
19:22:51 11    ON THE DOLLS?
19:22:54 12          A.    YES.
19:22:57 13          Q.    OKAY.  AND IS THAT CONSISTENT WITH
19:22:59 14    YOUR OPINION?
19:23:02 15          A.    I THINK MY UNDERSTANDING OF WHAT HE
19:23:18 16    WAS SAYING IS WHAT JUST PEOPLE WERE WEARING.
19:23:20 17          Q.    OKAY.  OKAY.
19:23:21 18          YOU MENTIONED SEEING OVERSIZED SHOES
19:23:22 19    IN JAPAN?
19:23:26 20          A.    YES.
19:23:27 21          Q.    WHERE IN JAPAN WAS THAT?
19:23:27 22          A.    I DON'T KNOW IF IT'S THE CORRECT
19:23:30 23    PRONUNCIATION, BECAUSE MY WIFE WAS HERE.
19:23:35 24          SHIMABOUIE (PHONETIC).  SHIMABOUEY
         25    (PHONETIC).  IT'S THE SORT OF A HIGH, RADICAL AREA OF

                                                                   392

EXHIBIT 10
PAGE 117

DEPOSITION OF GLENN VILPPU

| | | |
|---|---|---|
| 19:23:47 | 1 | TOKYO, WHERE IT WOULD BE ULTRA FASHION, ULTRA EXTREME |
| 19:23:51 | 2 | EVERYTHING. |
| 19:23:56 | 3 | I TAUGHT, I GAVE LECTURES AT A SCHOOL |
| 19:24:02 | 4 | OVER THERE FOR ONE DAY AND NIGHT.  BUT IT'S A VERY |
| 19:24:06 | 5 | EXTREME KIND OF THING.  AND MY COMMENTS ABOUT THAT IS |
| 19:24:08 | 6 | THAT IF YOU WANT TO KNOW WHAT'S GOING TO HAPPEN HERE |
| 19:24:09 | 7 | NEXT YEAR, GO THERE. |
| 19:24:10 | 8 | MR. QUINTO:  OBJECTION; NONRESPONSIVE. |
| 19:24:12 | 9 | BY MR. HANSEN: |
| 19:24:14 | 10 | Q.    AND SO BASED ON YOUR EXPERIENCE, THE |
| 19:24:20 | 11 | FASHIONS IN SHIMABOUIE -- PHONETICALLY, HOWEVER IT'S |
| 19:24:24 | 12 | SPELLED -- THE FASHIONS THAT ARE SEEN THERE TODAY ARE |
| 19:24:26 | 13 | THE TYPE OF FASHIONS THAT YOU'LL SEE IN THE |
| 19:24:27 | 14 | UNITED STATES NEXT YEAR? |
| 19:24:29 | 15 | A.    THEY INFLUENCE THE FASHIONS THAT WE |
| 19:24:31 | 16 | SEE HERE. |
| 19:24:37 | 17 | Q.    HAVE YOU EVER BEEN TO JAPAN? |
| 19:24:40 | 18 | A.    I'VE BEEN TO JAPAN MANY TIMES. |
| 19:24:41 | 19 | Q.    YOU WERE ASKED ABOUT CLOWN SHOES. |
| 19:24:41 | 20 | DO YOU REMEMBER THAT? |
| 19:24:44 | 21 | A.    YES. |
| 19:24:47 | 22 | Q.    DO YOU THINK THAT THE SHOES THAT ARE |
| 19:24:51 | 23 | IN THE -- THAT ARE SOLD WITH THE JADE DOLLS, THAT |
| 19:24:51 | 24 | THOSE LOOK LIKE WHAT WE REFERRED TO AS CLOWN SHOES? |
| | 25 | A.    NO. |

393

EXHIBIT 10

EXHIBIT 10

DEPOSITION OF GLENN VILPPU

| | | |
|---|---|---|
| 1 | 19:24:58 | Q. DO YOU HAVE ANY IDEA WHETHER OR NOT |
| 2 | 19:25:02 | ANY OF THESE SHOES OR FASHIONS LOOK LIKE THINGS THAT |
| 3 | 19:25:03 | WERE SOLD AT ANY POINT IN THE LAST TEN YEARS? |
| 4 | 19:25:05 | A. WHETHER THEY WERE SHOES THAT WERE |
| 5 | 19:25:06 | SHOWN TEN YEARS AGO? |
| 6 | 19:25:09 | Q. DO YOU KNOW WHETHER ANY OF THE SHOES |
| 7 | 19:25:10 | OR FASHIONS ARE SIMILAR TO THINGS THAT HAVE BEEN SOLD |
| 8 | 19:25:11 | IN THE LAST TEN YEARS? |
| 9 | 19:25:12 | A. YES. |
| 10 | 19:25:13 | Q. AND WHAT IS YOUR OPINION IN THAT |
| 11 | 19:25:16 | REGARD? |
| 12 | 19:25:23 | A. I DON'T KNOW. MY FEELING IS JUST, |
| 13 | 19:25:26 | REMEMBERING SHOES THAT THE KIDS WERE WEARING EVEN |
| 14 | 19:25:30 | MAYBE BEFORE TEN YEARS AGO, THAT THE STUDENTS OR |
| 15 | 19:25:32 | PEOPLE WERE WEARING, AND I WAS ALWAYS WONDERING HOW |
| 16 | 19:25:34 | THE HELL WOULD YOU WALK AROUND IN THEM. |
| 17 | 19:25:37 | Q. IN TURN, DO ANY OF THESE LOOK LIKE |
| 18 | 19:25:39 | OVERSIZED BASKETBALL SHOES TO YOU? |
| 19 | 19:25:54 | A. NO, THAT WAS A DIRECTION THAT WAS |
| 20 | 19:25:55 | DIFFERENT THAN I WAS TRYING TO SAY. |
| 21 | 19:26:00 | Q. YOU WERE ASKED A LOT OF QUESTIONS |
| 22 | 19:26:02 | ABOUT THE DOLL LEGS AND THE DOLL TORSOS BASED ON |
| 23 | 19:26:02 | DOLLS IN THE BOXES. |
| 24 | 19:26:03 | DO YOU REMEMBER THAT? |
| 25 | | A. YES. |

DEPOSITION OF GLENN VILPPU

1   STATE OF CALIFORNIA   )
                          ) SS
2   COUNTY OF LOS ANGELES)

3

4          I, KIMBERLY WILDISH, CERTIFIED SHORTHAND

5   REPORTER, CERTIFICATE NUMBER 8078, FOR THE STATE OF

6   CALIFORNIA, DO HEREBY CERTIFY:

7          THE FOREGOING PROCEEDINGS WERE TAKEN BEFORE

8   ME AT THE TIME AND PLACE THEREIN SET FORTH, AT WHICH

9   TIME THE DEPONENT WAS PLACED UNDER OATH BY ME;

10         THE TESTIMONY OF THE DEPONENT AND ALL

11   OBJECTIONS MADE AT THE TIME OF THE EXAMINATION WERE

12   RECORDED STENOGRAPHICALLY BY ME AND WERE THEREAFTER

13   TRANSCRIBED;

14         THE FOREGOING TRANSCRIPT IS A TRUE AND CORRECT

15   TRANSCRIPT OF MY SHORTHAND NOTES SO TAKEN;

16         I FURTHER CERTIFY THAT I AM NEITHER COUNSEL

17   FOR NOR RELATED TO ANY PARTY TO SAID ACTION, NOR IN ANY

18   WAY INTERESTED IN THE OUTCOME THEREOF.

19         IN WITNESS WHEREOF, I HAVE HEREUNTO

20   SUBSCRIBED MY NAME THIS 18TH DAY OF MAY, 2008.

21

22

23

24                          _____
                            KIMBERLY WILDISH
25                               CSR NO. 8078

                                                        419

EXHIBIT 10
PAGE 120

EXHIBIT 11

THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
DAVID W. HANSEN (Bar. No. 196958)
(dhansen@skadden.com)
LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
(laguiar@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Tel.: (213) 687-5000
Fax: (213) 687-5600

Attorneys for The MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>Honorable Stephen G. Larson<br><br>**MGA'S [PROPOSED] COPYRIGHT INSTRUCTION NO. 17.17 (REVISED) RE: COPYRIGHT INFRINGMENT – EXTRINSIC TEST; INTRINSIC TEST** |

EXHIBIT 11
PAGE 121

1  The MGA Parties submit the following [Proposed] Copyright Instruction No. 17.17
2  (Revised) concerning the "extrinsic" and "intrinsic" tests to be used by the jury in
3  determining the issue of copyright infringement in connection with the Phase 1-B trial.
4  Consistent with the MGA Parties' initial proposed Copyright Instruction No. 17.17, Ninth
5  Circuit precedent, and the MGA Parties understanding of the correct interpretation of the
6  Court's July 24, 2008 "Post-Phase 1-A Order re: Motion for Partial Summary Judgment On
7  the Issue of Substantial Similarity" (the "July 24 Order"), this proposed instruction includes
8  instructions concerning the method to be used to determine whether the Bryant drawings are
9  entitled to "broad" (substantial similarity) or "thin" (virtual identity) protection. Given the
10 parties' sharply divergent interpretations of the Court's July 24, 2008 Order, the MGA
11 Parties filed a motion with the Court on August 1, 2008, seeking clarification of this aspect
12 of the July 24 Order.

13

14                    **INSTRUCTION NO. 17.17 (Revised)**
15      **COPYRIGHT INFRINGEMENT – EXTRINSIC TEST; INTRINSIC TEST**

16

17 To determine whether the Bratz dolls infringe Mattel's copyrights in the 16 registered
18 Bryant drawings, you must engage in a two-step analysis. The first step is called the
19 "extrinsic" test. If necessary, this is followed by the second step of the analysis, which is
20 called the "intrinsic" test. [Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir.
21 2002); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1177 (C.D. Cal. 2001).]

22

23 Stated generally, the "extrinsic" test considers whether two works share substantial
24 similarity of ideas and expression as measured by external, objective criteria, while the
25 "intrinsic" test considers whether a reasonable person (or in this case, a discerning 8-12 year
26 old girl) would perceive a substantial similarity in the "total concept and feel" of each work,
27 bearing in mind that ideas and concepts and general stylistic features are not protectible

28

i

MGA's [Proposed] Copyright Instruction No. 17.17 (Revised)
Re: Copyright Infringement – Extrinsic Test; Intrinsic Test
Case No. CV 04-9049 SGL (RNBx)

EXHIBIT  11
PAGE  22

1  under copyright law.  [Lanard Toys, Ltd. v. Novelty, Inc., 511 F. Supp. 2d 1020, 1037–38

2  (N.D. Cal. 2007) (citing Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442–43

3  (9th Cir. 1994)).]

4

5  You should keep in mind that what is required to find infringement is not simply general

6  "similarity" of the works but "substantial similarity" of protected elements of those works.

7  [Id.; Berkic v Crichton, 761 F.2d 1289, 1293–94 (9th Cir 1985).]

8

9  I will explain each of these tests in turn.

10

11  EXTRINSIC TEST

12

13  The "extrinsic" test removes from the analysis of infringement those elements of the

14  copyrighted work that are not entitled to copyright protection.  The party claiming

15  infringement – here, Mattel – cannot rely on any similarity in expression resulting from

16  unprotectible elements.  [Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176–77 (C.D.

17  Cal. 2001).]

18

19  The following elements of an original copyrighted work are not entitled to protection under

20  copyright law:

21  • Ideas and concepts.

22  • Common features that are standard or common to the expression of a given idea,

23     called "scenes a faire."

24  • Expression that is not original to the author (in this case Mr. Bryant), such as pre-

25     existing expression that influenced the author consciously or even subconsciously.

26  This is a general list of the common unprotected categories.

27

28

2

1   The process of applying the extrinsic test involves what is called "analytic dissection,"
2   which requires you to isolate each element of the Bryant drawings – such as the eyes, the
3   lips, the nose and the element in the drawings –and analyze each one separately. [See, e.g.,
4   Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1398 (9th Cir. 1997);
5   Lanard Toys, 511 F. Supp. 2d at 1037–38.] The extrinsic test also involves what is called
6   "filtering," which requires you to filter out all of the unprotected elements of the Bryant
7   drawings. [See, e.g., Zella v. E.W. Scripps Co., 529 F. Supp. 2d 1124, 1133 (C.D. Cal.
8   2007); Brookhaven Typesetting Servs. v. Adobe Sys., 2007 U.S. Dist. LEXIS 62661, at *22
9   (N.D. Cal. Aug. 24, 2007).]

11   You should apply the extrinsic test as follows:

13   *First*, identify those elements in the Bryant sketches that Mattel claims are the expression
14   copied by MGA in the Bratz dolls. Mattel has the burden of identifying which specific
15   elements of its works have been copied.

17   *Second*, you should determine which of those elements are entitled to copyright protection
18   and which are not. In other words, you must filter out from each of the 16 Bryant sketches
19   all ideas, all scenes a faire, and all expression that was not original to Mr. Bryant. Mattel
20   has the burden of proving which elements in each of the Bryant sketches are entitled to
21   protection.

23   I will give you a few examples to illustrate the process of filtering.

25   MGA asserts that Carter Bryant's sketches show a group of four contemporary "sassy" or
26   "bratty" teenage friends of diverse ethnic backgrounds and a "funky urban hip" attitude and
27   style as the basis for a line of fashion dolls. MGA asserts that all of this is a concept or idea,

28

3

1   and is thus not protected by copyright. If you agree with MGA's position, then the idea and
2   concept of such a line of fashion dolls must be filtered out of any subsequent analysis of
3   claimed similarities.

4

5   MGA also asserts that the oversized heads, eyes, feet and lips in the sketches are not forms
6   of expression original to Carter Bryant's sketches, but rather simply reflected common
7   expression that can be found in other dolls, fashion advertisements, and artwork. If you
8   agree with that contention, then you must "filter out" these elements in connection with
9   your subsequent analysis regarding substantial similarity, because the use of oversized
10  heads, eyes, feet and lips in the sketches was not original to Mr. Bryant.

11

12  Common physical features of a teenage girl are not protectible, as they are the features
13  found in real-life teenage girls and depictions of teenage girls. These features could be
14  considered an idea, or even a fact, and therefore they must be filtered out. This would apply
15  to things found in nature such as the presence of heads, 2 ears, lips, hair, 2 arms, legs,
16  standard body proportions, and other anatomical features in the drawings.  While the
17  particular expression and unique arrangement of these features can be protected by
18  copyright, the mere presence of those features as found in nature cannot.

19

20  Also, common or standard treatments of the subject matter, what are referred to "scenes a
21  faire," are also not protected by copyright. Even though they are forms of expression, they
22  lack sufficient originality to be protected. Basic ideas or treatments "remain forever the
23  common property of artistic mankind." [Berkic v. Crichton, 761 F.2d 1289, 1293-94 (9th
24  Cir. 1985).]

25

26  Let me give you an example from the world of T.V. screen-plays. A television show about
27  a police station in a high crime area will inevitably have standard stock features, such as a

28

4

EXHIBIT _11_

1 | precinct house, various levels of police employees from a captain down to the beat officers,
2 | criminal suspects who are apprehended, defense lawyers, prosecutors, etc. Such standard
3 | plot lines and features may be thought of as creative expression, but no one can claim
4 | ownership or exclusive rights to them, and no one T.V. show can accuse another of
5 | violating a copyright by allegedly copying and using such standard features in a second
6 | show. [Walker v. Time Life. Films. Inc., 784 F.2d 44, 50 (2d Cir. 1986).]

7

8 | As another example, in the world of theatre, devices that are standard plot lines, and are
9 | therefore not protectible, include the controlling mother-in-law, the lipstick stained
10 | handkerchief, and the butler bent on murder. All authors can use these common plot
11 | devices.

12

13 | The fact that the figures in the drawings display fashions, shoes and accessories, by itself, is
14 | not protected because the use of fashions, shoes and accessories are also standard or
15 | common features in the genre of fashion dolls. Also, the "style" or general "look" of
16 | fashion dolls are not copyrightable. Nor are conventional cosmetic techniques and looks.

17

18 | Also unprotected is expression in the copyrighted work that reflects expression already in
19 | the public domain, and therefore free for all to use. To give one illustration in the context of
20 | a doll, "[a]n upturned nose, bow lips, and wide eyes are the 'idea' of a certain type of doll
21 | face," and this idea does not belong to any one company but rather is in the public domain.
22 | [Mattel, Inc. v. Goldberger Doll Manufacturing Co., 365 F.3d 133, 136 (2d Cir. 2004).] For
23 | another illustration, a 5 ½ inch Warlord doll does not infringe upon a 5 ½ inch Masters of
24 | the Universe doll because, though the dolls look remarkably similar, the similarities are all
25 | attributable to the unprotectible idea of a superhuman muscleman crouching in a traditional
26 | fighting pose. [Mattel, Inc. v. Azrak-Hamway Int'l Inc., 724 F.2d 357, 360 (2d Cir. 1983).]

27

28

5

1   These unprotected elements of a work, ideas and concepts, scenes a faire, and unoriginal
2   material, often overlap and are not always easy to separate into categories. Nevertheless,
3   they are not protected by copyright.

4

5   The parties and their witnesses and experts have pointed to many such issues, asserting that
6   features or elements should, or should not, be filtered out. You are to determine which, if
7   any, of these features and elements should properly be filtered out in connection with your
8   subsequent analysis regarding substantial similarity.

9

10  ## BROAD OR THIN PROTECTION

11  The analytic dissection and filtration you have performed in connection with the extrinsic
12  test also allows you to determine whether the drawings are entitled to "broad" or "thin"
13  copyright protection.

14

15  The drawings will be entitled to "broad" protection if you find that they are highly original
16  and reflect a high degree of artistic judgment. The standard for infringement in such works
17  is substantial similarity of original protected expression.

18

19  On the other hand, if you find that the drawings include only a few protectable elements, or
20  are in a medium in which the effective range of creative expression is limited, then the
21  drawings are only entitled to "thin" protection. In that case, you can find infringement only
22  if the dolls are virtually identical to original protected expression in one of the drawings.
23  [Satava v. Lowry, 323 F.3d 805, 812 (9th Cir. 2003); Apple Computer, Inc. v. Microsoft
24  Corp., 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of protectable and
25  unauthorized expression is narrow, the appropriate standard for illicit copying is virtual
26  identity."); Cosmos Jewelry Ltd. v. Po Sun Hon Co., 470 F. Supp. 2d 1072, 1084 (C.D. Cal.
27  2006) (citing Apple, 35 F.3d at 1439). See generally 4-13 Nimmer on Copyright § 13.03

28

MGA's [Proposed] Copyright Instruction No. 17.17 (Revised)
Re: Copyright Infringement – Extrinsic Test; Intrinsic Test
Case No. CV 04-9049 SGL (RNBx)

EXHIBIT 11
PAGE 127

1  ("Even the measure of how substantial a 'substantial similarity' must be may vary according
2  to circumstances. For many copyrights represent significant creative effort, and are
3  therefore reasonably robust, whereas others reflect only scant creativity; the Supreme Court
4  labels the latter "thin.' It would seem to follow analytically that more similarity is required
5  when less protectible matter is at issue. Thus, if substantial similarity is the normal measure
6  required to demonstrate infringement, 'supersubstantial' similarity must pertain when
7  dealing with 'thin' works. At the limiting case of 'the thinnest of copyright protection,'
8  entire duplication would be required. In line with that approach, the Ninth Circuit has held,
9  'When the range of protectable and unauthorized expression is narrow, the appropriate
10 standard for illicit copying is virtual identity.' Of course, such virtual identity is not the
11 same as absolute identity, meaning that tiny variations fail to detract from supersubstantial
12 similarity, albeit greater distinctions do indeed negate liability.") (citations omitted).]

13

14 Mattel has the burden of proving that the Bryant drawings are entitled to broad protection.

15

16 DETERMINING INFRINGEMENT – EXTRINSIC TEST

17 Once you have filtered out unprotectable elements and determined whether the drawings are
18 entitled to "broad" or "thin" protection, you are ready to compare the individual elements
19 remaining in a particular drawing that you determine to be protectible with the
20 corresponding elements in the Bratz dolls. As the parties disagree with what are, and what
21 are not, the similarities between the two, you must next determine what those similarities
22 are.

23

24 The burden is on Mattel to show by a preponderance of evidence the similarity of each
25 element in the sketches you determine to be protectible. In considering the extrinsic test,
26 you may take into account the testimony of experts called by each party.

27

28

MGA's [Proposed] Copyright Instruction No. 17.17 (Revised)
Re: Copyright Infringement – Extrinsic Test; Intrinsic Test
Case No. CV 04-9049 SGL (RNBx)

EXHIBIT  H
PAGE  108

1 Now comparing the items in the Bratz dolls that you find to be similar to the protected
2 elements of expression in a particular Bryant drawing owned by Mattel, you should
3 determine whether Mattel has shown by a preponderance of the evidence that the two works
4 are substantially similar (if you determine that the drawings are entitled to "broad"
5 protection), or virtually identical (if you have determined that the drawings are only entitled
6 to "thin" protection). If you do not so find, then you must find for MGA on the claim of
7 copyright infringement.

8

9 If you do find substantial similarity/virtual identity under the extrinsic test, then you turn to
10 the next step of the analysis, the "intrinsic" test.

11

12 INTRINSIC TEST

13

14 The second step of the infringement analysis, the "intrinsic" test, involves a subjective
15 comparison of the protectible aspects of the "works as a whole." [Apple Computer, Inc. v.
16 Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994).]

17

18 In this evaluation, you should not consider the unprotectible elements that you filtered out
19 as part of the extrinsic test analysis. [Cavalier v. Random House, Inc., 297 F.3d 815, 822
20 (9th Cir. 2002); Robert C. Lind, Copyright Law (3d ed. 2006) at 173; 4-13 Nimmer on
21 Copyright § 13.03 ("In Feist, the Court took a copyrighted work and eliminated from the
22 substantial similarity calculus all material therein not subject to copyright. The result was to
23 appreciate that the defendant copied only uncopyrightable elements from plaintiff's work,
24 and therefore to deny liability. This writer elsewhere has proposed such a test for works of
25 high technology under the rubric 'successive filtering.' Whatever the label, the method is
26 sound and has been applied, at least sub silentio, by courts in a variety of contexts. In the
27 wake of Feist, it should be considered not only for factual compilations and computer

28

EXHIBIT 11
PAGE 129

1  programs, but across the gamut of copyright law: to determine whether the similarity
2  between plaintiff's and defendant's work is substantial, the comparison should not include
3  unoriginal elements of plaintiff's work; rather, the comparison should take place after
4  filtering out of the analysis elements of plaintiff's work that are not protectable or are
5  otherwise non-actionable, a such as those that can be proven to have been independently
6  created.") (citations omitted).]

7

8  The intrinsic test is determined from the perspective of an ordinary, reasonable observer.
9  [Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996).]  Because girls of the age 8-12 are
10 the core intended market for the Bratz dolls, you should consider such consumers as the
11 ordinary, reasonable observers.  [Aliotti v. R. Dakin & Co., 831 F.2d 898, 902 (9th Cir.
12 1987).]  In other words, you should perform the intrinsic test through the eyes of a
13 discerning 8-12 year old girl who would be a likely user of Bratz dolls.  [Data East USA,
14 Inc. v. Epyx, Inc., 862 F.2d 204, 209-210 (9th Cir. 1988) ("a discerning 17.5 year-old boy
15 could not regard the works as substantially similar"); see also Shaw v. Lindheim, 919 F.2d
16 1353 (9th Cir. 1990) ("in Data East we concluded that "a discerning 17.5 year-old boy could
17 not regard [two karate video games] as substantially similar").

18

19 The testimony of experts is not to be considered in your evaluation of the intrinsic test.

20

21 The appropriate standard for the intrinsic test is whether the ordinary, reasonable person
22 (the 8-12 year old girl) would find the "total concept and feel" of the two separate works to
23 be substantially similar (if you determine the drawings are entitled to "broad" protection) of
24 virtually identical (if you determine the drawings are entitled to "thin" protection), bearing
25 in mind that ideas, concepts, and style are not protectible.  [Satava v. Lowry, 323 F.3d 805,
26 812 (9th Cir. 2003).]

27

28

9

1 Applying this test, you will determine if Mattel has met its burden of proving infringement
2 under the "intrinsic" test. If Mattel has not met its burden under the intrinsic test, then you
3 must find for the defendants on the copyright infringement claims.

4

5 **Authority**: Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1990); Swirsky v.
6 Carey, 376 F.3d 841, 845 (9th Cir. 2004); Mattel v. Goldberger Doll Mfg. Co., 365 F.3d
7 133, 136 (2d Cir. 2004); Apple Computer, Inc. v. Microsoft Corporation, 35 F.3d 1435,
8 1447 (9th Cir. 1994); Data East USA, Inc. v. Epyx, Inc., 862 F.2d 204 (9th Cir. 1988);
9 Frybarger v. Int'l Bus. Machines Corp., 812 F.2d 525, 530 (9th Cir. 1987); Thomas v. The
10 Walt Disney Co., 2008 U.S. Dist. LEXIS 14643 (N.D. Cal. Feb. 14, 2008);
11 Bensbargains.Net v. XPBargains.Com, 2007 U.S. Dist. LEXIS 60544 at 8–10 (S.D. Cal.
12 Aug. 16, 2007); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176 (C.D. Cal. 2001).
13 Nimmer on Copyright § 13.03[B].

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MGA's [Proposed] Copyright Instruction No. 17.17 (Revised)
Re: Copyright Infringement – Extrinsic Test; Intrinsic Test
Case No. CV 04-9049 SGL (RNBx)

EXHIBIT 11

1  DATED: July 21, 2008          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

2

3                                By: _____    /s/ Thomas J. Nolan_____
                                                Thomas J. Nolan
4                                               Attorneys for the MGA Parties

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        11

EXHIBIT 12

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5  (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9               UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                     EASTERN DIVISION

12

13  CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

14                     Plaintiff,          Consolidated with
                                           Case No. CV 04-09059
15                                         Case No. CV 05-02727
              vs.
16                                         Hon. Stephen G. Larson
    MATTEL, INC., a Delaware
17  corporation,
                                           MATTEL, INC.'S THIRD AMENDED
18                                         PROPOSED JURY INSTRUCTIONS
                     Defendant.            FOR PHASE 1B—DISPUTED SET;
19
                                           DEFENDANTS' OBJECTIONS TO
20                                         SAME;
    AND CONSOLIDATED ACTIONS
21                                         MATTEL, INC.'S STATEMENTS IN
                                           SUPPORT OF SAME
22

23                                         Phase 1B:

24                                         Trial Date:        July 23, 2008

25

26

27

28

EXHIBIT 12
PAGE 133

07209/2585682.1

1

2

3

## MATTEL'S SPECIAL JURY INSTRUCTION NO.
## COPYRIGHT INFRINGEMENT—SUBSTANTIAL SIMILARITY

4      You are to make a determination regarding substantial similarity according to

5   a two-step process, which includes application of the "extrinsic test" and the

6   "intrinsic test." To prevail on its claims for copyright infringement, Mattel must

7   satisfy both of these tests.

8      Under the extrinsic test, Mattel must establish that specific ideas and

9   expressive elements of the Bratz products that Mattel claims are infringing and the

10  works Mattel owns are substantially similar. I have already found as a matter of law

11  that each of the elements in Carter Bryant's Bratz drawings, and the combination of

12  those elements, are original and protectable. Accordingly, you should take all of the

13  elements of the drawings into account in analyzing whether they are substantially

14  similar to the defendants' works.

15     The intrinsic test looks at the overall similarity of ideas and expression in the

16  works from the perspective of an ordinary observer. You should ask yourself

17  whether the ordinary, reasonable audience, in this case girls between the ages of 6

18  and 12, would recognize the defendants' products as a "picturization" of the Bratz

19  works that Mattel owns.

20

21     **Authority:** *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d

22  1394, 1398 (9th Cir. 1997); *Shaw v. Lindheim*, 919 F.2d 1353, 1356-57 (9th Cir.

23  1990); *Jada Toys, Inc. v. Mattel, Inc.*, 1008 WL 450891, *6 (9th Cir. Feb. 21, 2008);

24  *see also Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*,

25  562 F.2d 1157, 1164, 1166 (9th Cir. 1977); *See, e.g., Newton v. Diamond*, 204 F.

26  Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of elements in a copyrighted

27  work is a question of law."); *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353,

28

EXHIBIT __
PAGE __

EXHIBIT 13

# THIS EXHIBIT IS UNDER SEAL
# PURSUANT TO PROTECTIVE ORDER