THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
DAVID W. HANSEN (Bar. No. 196958)
(dhansen@skadden.com)
LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
(laguiar@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA  90071-3144
Tel.:  (213) 687-5000
Fax:  (213) 687-5600
Attorneys for The MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| Defendant. | **MGA'S BENCH MEMORANDUM REGARDING THE SCOPE OF EVIDENCE PERMITTED IN PHASE 1-B** |
| AND CONSOLIDATED CASES | |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................... **Error! Bookmark not defined.**

PRELIMINARY STATEMENT.............................................................................. 1

ARGUMENT ....................................................................................................... 3

    I.      MATTEL'S BELATED OBJECTION TO MGA'S PROPOSED EVIDENCE, IF GRANTED, WOULD SEVERLY PREJUDICE MGA .............................................................................................. 3

    II.     EVIDENCE REGARDING THE CREATION OF THE BRATZ DOLLS IS DIRECTLY RELEVANT TO REBUTTING THE INFERENCE OF "COPYING" ................................................. 5

    III.    MGA MUST BE PERMITTED TO REBUT THE EVIDENCE PRESENTED BY MATTEL IN ITS CASE–IN–CHIEF ..................... 8

    IV.    MGA'S EFFORTS TO DEVELOP THE BRATZ DOLLS AND THE BRATZ BRAND ARE RELEVANT TO MATTEL'S DAMAGES CLAIMS ........................................................................ 11

CONCLUSION ................................................................................................... 13

i

**TABLE OF AUTHORITIES**

**CASES**

Abend v. MCA, Inc., 863 F.2d 1465 (9th Cir. 1988) ................................... 13

Burns v. Imagine Films Entertainment, Inc., 2001 U.S. Dist. LEXIS 24653 (W.D.N.Y. 2001) ........................................................................... 13

Di Loreto v. Shumake, 38 Cal. App. 4th 35 (1995)...................................... 13

Feist Publications, Inc. v. Rural Telegraph Services Co., 499 U.S. 340 (1991)........................................................................................................... 8

Herbert  Rosenthal Jewelry Corp. v. Kalpakian, 446 F.2d 738 (9th Cir.1971) .............................................................................................. 1, 5

John G. Danielson, Inc. v. Winchester-Conant Properties, Inc., 322 F.3d 26 (1st Cir. 2003) ..................................................................................... 13

Keeler v. Brass Co. v. Continental Brass Co., 862 F.2d 1063 (4th Cir. 1988) ........................................................................................................... 6

Mattel, Inc. v. Goldberger Doll Manufacturing Co., 365 F.3d 133 (2d Cir. 2004) ..................................................................................................... 8

Miller v. Miramax Film Corp., 2001 U.S. Dist. LEXIS 25967 (C.D. Cal. 2001) .......................................................................................................... 6

Nunley v. City of Los Angeles, 52 F.3d 792 (9th Cir. 1995) ......................... 6

Sheldon v. Metropolitan-Goldwyn Pictures Corp., 309 U.S. 390 (1940) .... 13

Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A., 2007 U.S. Dist. LEXIS 91947 (N.D. Tex. 2007)......................................................... 14

Three Boys Music Corp. v. Bolton, 212 F.3d 477 (9th Cir. 2000)................. 5

Twentieth Century Fox Film Corp. v. Stonesifer, 140 F.2d 579 (9th Cir.1944) ..................................................................................................... 13

Wellman v. Dickinson, 682 F.2d 355 (2d Cir. 1982) ................................... 14

**STATUTES**

17 U.S.C. 504 (b) ....................................................................................... 12

Fed. R. Evid. 301 ......................................................................................... 6

ii

1
2

## MISCELLANEOUS

Nimmer on Copyright § 13.03[B][1][b] ......................................................... 8

Ninth Circuit Manual Of Model Jury Instructions – Civil, No. 17.15
    "Copying – Access And Substantial Similarity" .................................... 1, 6

iii

## **PRELIMINARY STATEMENT**

This memorandum addresses Mattel's argument at the August 7, 2008 hearing (the "hearing") that testimony by MGA witnesses concerning the development of the Bratz doll and the process of how MGA independently created those dolls should not be permitted, on the grounds that it is irrelevant and would confuse the jury. Mattel's argument is wrong on a number of fronts and should be rejected. MGA cannot be stripped of the chance to put on a complete defense.

As an initial matter, although Mattel has known since at least March 2008 that MGA intended to present evidence concerning independent creation from the MGA employees and contractors who created the Bratz dolls, Mattel has never previously objected. In fact, MGA stated during its Phase 1B opening statement, without drawing any objection from Mattel, that it would offer such evidence. To now preclude MGA from offering such evidence would be severely prejudicial and grossly unfair to MGA.

Moreover, the evidence MGA intends to offer from the highly-skilled MGA employees and contractors, such as Paula Garcia and Margaret Leahy who actually created the Bratz dolls, is directly relevant to rebutting the presumption of "copying" that may arise from evidence presented by Mattel on the issues of "access" and "substantial similarity." Under settled Ninth Circuit precedent, "[i]f a plaintiff shows the defendant had access to the plaintiff's work and that there is a substantial similarity between the infringed and infringing works, a presumption of copying arises shifting the burden to the defendant to rebut or to show that the alleged infringing work was independently created." Ninth Circuit Manual Of Model Jury Instructions – Civil, No. 17.15 "Copying – Access And Substantial Similarity" (citing Three Boys Music Corp. v. Bolton, 212 F.3d 477, 486 (9th Cir. 2000) ("By establishing reasonable access and substantial similarity, a copyright plaintiff creates a presumption of copying. The burden shifts to the defendant to rebut that

1

1  presumption through proof of independent creation.") (citation omitted) and Herbert
2  Rosenthal Jewelry Corp. v. Kalpakian, 446 F.2d 738, 741 (9th Cir.1971) ("It is true
3  that defendants had access to plaintiff's [copyrighted] pin and that there is an
4  obvious similarity between plaintiff's pin and those of defendants.  These two facts
5  constitute strong circumstantial evidence of copying.  But they are not conclusive,
6  and there was substantial evidence to support the trial court's finding that
7  defendant's pin was in fact an independent creation.").  Assuming the Court believes
8  that Mattel has offered evidence sufficient to create a "presumption of copying," that
9  presumption is not conclusive and MGA is entitled to present evidence to rebut the
10 presumption.

11         This is precisely what MGA intends to do through the testimony of various
12 MGA witnesses who developed and created (and continue to create) the Bratz dolls.
13 This evidence will show the steps used to create the Bratz dolls, the limited use
14 actually made of Bryant's drawings, and the many creative decisions and changes
15 from the Bryant drawings that were made during the creative process.  The Court
16 recognized during the hearing that the limited evidence presented illustrates the
17 artistic skills involved in creating the "perfect look" that "captures the imagination"
18 of young girls and boys.  [Tr. at 8].  The additional evidence MGA intends to present
19 will provide the jury with a complete and compelling picture of the detailed process
20 and significant artistic decisions that changed the appearance from Bryant's
21 drawings and resulted in the Bratz dolls having the "particularized expression" that
22 contributes to the doll's success.  MGA's testimony will show that it was only
23 through this creative process that MGA "got the look just right."  This evidence will
24 further show that merely copying Bryant's drawings would have resulted in a much
25 different doll that, in MGA's view, would not have been marketable to the target
26 audience.

27

28

2

1    MGA is also entitled to present this evidence to specifically rebut evidence

2 presented by Mattel during its case-in-chief. Mattel's Phase 1-B case focused in

3 large part on Mattel's argument that the Bratz doll is merely a recreation of the

4 Bryant drawings. For example, Mattel claimed during opening that "MGA was

5 attempting to . . . take these drawings and make them dolls that looked like the

6 drawings. Of course, now they say they don't look anything like them." [Tr.

7 5432:17-20]. Similarly, Mattel twice used an MGA discovery response in a Hong

8 Kong lawsuit to incorrectly suggest that Ms. Leahy and the other skilled MGA

9 artisans who actually created the Bratz dolls "referenced" Bryant's drawings so they

10 could make the dolls look like just like the drawings. Moreover, Mattel has

11 repeatedly argued that the entire success of the Bratz dolls and products is solely

12 attributable to Bryant's drawings.

13    MGA must be permitted to rebut the evidence presented by Mattel in its case-

14 in-chief. MGA must be permitted to counter Mattel's arguments, and provide the

15 jury with the complete story concerning the <u>actual</u> use of Bryant's drawings by MGA,

16 details concerning the <u>actual</u> artistic process involved in creating the Bratz dolls, and

17 the reason for the differences between the drawings and the dolls. This evidence is

18 completely proper and necessary to squarely address the evidence that Mattel chose

19 to present in its case-in-chief, and it will help the jury understand why the success of

20 the Bratz dolls is not "solely" attributable to Bryant's drawings as Mattel has argued.

21    Finally, as discussed in detail below, MGA's efforts to develop the Bratz dolls

22 and build the Bratz brand are <u>separately</u> relevant to Mattel's damages claims.

23                                    **ARGUMENT**

24 **I.    MATTEL'S BELATED OBJECTION TO MGA'S PROPOSED**

25 **EVIDENCE, IF GRANTED, WOULD SEVERELY PREJUDICE MGA**

26    Mattel has not previously objected to MGA's presentation of testimony

27 concerning the development process. It would be completely improper and unduly

28 prejudicial to MGA for the Court to grant Mattel's requested relief at this stage, the

3

1  day before MGA's case-in-chief is to begin.  Mattel has been on notice that MGA
2  planned to offer evidence on this issue since at least March 24, 2008, when MGA
3  filed its Opposition to Mattel's Motion for Partial Summary Judgment:

> [M]aterial fact disputes exist on the issue of "factual" copying.  While there is
> no dispute that MGA started with Bryant's sketches as the inspiration for the
> first generation Bratz dolls, the doll design moved well beyond those sketches,
> after MGA's initial assessment revealed that MGA wanted a different look and
> feel to the dolls.  Thus, the record includes direct evidence of significant
> development of the dolls independent of Bryant's sketches …

10  MGA's Opposition to Mattel's Motion for Partial Summary Judgment at 5.  Mattel
11  did not respond that MGA's proposed evidence was improper.

12  MGA's counsel repeatedly told the jury during opening statements nearly two
13  weeks ago that MGA intended to present evidence of independent creation.  For
14  example, MGA's counsel stated:

> And [Mattel's counsel] described [the changes from the drawings made in
> creating the doll] as merely just mechanical changes … Mr. Bryant's drawings
> were the inspiration for Bratz.  But it was just that.  We couldn't sell that
> inspiration at Wal-Mart.  We had to make it into a doll … The evidence will
> not be, ladies and gentlemen, that Margaret Leahy and others had on the wall
> or in all of their cubicles Carter Bryant's drawings and used them like the
> Bible.  Oh, wait, wait, wait a minute.  Mr. Bryant's  drawings tell us to do this.
> We got to keep it this way.  We've got to do it exactly like that. It's not there.
> This was inspiration …

24  [Tr. 5517:20-5520:18].  Mattel did not object to these statements.

25  By failing to previously object to MGA's proposed testimony, Mattel has
26  waived any such objection.  To hold otherwise, would seriously and unfairly
27  prejudice MGA.

28

4

## II.   EVIDENCE REGARDING THE CREATION OF THE BRATZ DOLLS IS DIRECTLY RELEVANT TO REBUTTING THE INFERENCE OF "COPYING"

The Ninth Circuit held in Three Boys Music Corp. v. Bolton, 212 F.3d 477, 486 (9th Cir. 2000), that "[b]y establishing reasonable access and substantial similarity, a copyright plaintiff creates a presumption of copying.  The burden shifts to the defendant to rebut that presumption through proof of independent creation." (citation omitted).  Similarly, in Herbert Rosenthal Jewelry Corp. v. Kalpakian, 446 F.2d 738 (9th Cir.1971), the court held:

> It is true that defendants had access to plaintiff's [copyrighted] pin and that there is an obvious similarity between plaintiff's pin and those of defendants. These two facts constitute strong circumstantial evidence of copying.  But they are not conclusive, and there was substantial evidence to support the trial court's finding that defendant's pin was in fact an independent creation.

Id. at 741.  Based on these holdings, the Ninth Circuit Model Jury Instructions state that "[i]f a plaintiff shows the defendant had access to the plaintiff's work and that there is a substantial similarity between the infringed and infringing works, a presumption of copying arises shifting the burden to the defendant to rebut or to show that the alleged infringing work was independently created."  Ninth Circuit Manual Of Model Jury Instructions – Civil, No. 17.15 "Copying – Access And Substantial Similarity."  See also Keeler v. Brass Co. v. Continental Brass Co., 862 F.2d 1063 (4th Cir. 1988) ("The establishment of a prima facie case creates a presumption of copying which can be rebutted.  A plaintiff, of course, is not limited to presenting minimal evidence establishing a prima facie case.  If the defendant meets his burden of going forward by successfully rebutting the presumption of copying, however, the function of the fact finder then is to weigh all the evidence, keeping in mind that the plaintiff has the ultimate burden of persuading it that the defendant copied the material.") (citation omitted); Miller v. Miramax Film Corp.,

5

1   2001 U.S. Dist. LEXIS 25967, at *31-32 (C.D. Cal. 2001) ("it is well accepted that a
2   'defendant may rebut the inference of copying (resulting from the plaintiff's evidence
3   of substantial similarity and access) with evidence of independent creation of the
4   alleged … infringing work"). Cf. Nunley v. City of Los Angeles, 52 F.3d 792, 795-
5   96 & n.5 (9th Cir. 1995) (stating that "[u]nder the so-called 'bursting bubble'
6   approach to presumptions, a presumption disappears where rebuttal evidence is
7   presented"); Fed. R. Evid. 301 ("In all civil actions and proceedings not otherwise
8   provided for by Act of Congress or by these rules, a presumption imposes on the
9   party against whom it is directed the burden of going forward with evidence to rebut
10  or meet the presumption, but does not shift to such party the burden of proof in the
11  sense of the risk of nonpersuasion, which remains throughout the trial upon the party
12  on whom it was originally cast.").

13      Consistent with this precedent, MGA's proposed jury instructions include an
14  "independent creation" instruction:

15      Even if Mattel proves that MGA had access to the 16 Bryant sketches and that
16      particular Bratz dolls are substantially similar to certain of these sketches, this
17      only creates a presumption of illegal copying.  MGA may rebut that
18      presumption with evidence that the Bratz dolls are the product of independent
19      creation, and were not copied from the 16 Bryant sketches.  If MGA presents
20      evidence of independent creation, then you should weigh all of the evidence
21      bearing in mind that Mattel bears the burden of proving that MGA copied the
22      16 Bryant sketches.

23  See MGA Parties' Responses To Mattel's Objections To The MGA Parties' Revised
24  Disputed [Proposed] Phase 1-B Jury Instructions at 151.

25      Assuming the Court believes that Mattel has offered evidence sufficient to
26  create a "presumption of copying," that presumption is not conclusive and MGA is
27  entitled to present the evidence to rebut the presumption.  MGA's anticipated

28

1  evidence on this score will show the actual steps used to create the Bratz dolls, the
2  limited use actually made of Bryant's drawings, and the many creative decisions and
3  changes from the Bryant drawings that were made during the creation of the dolls.
4  The Court recognized during the hearing that the limited evidence presented
5  illustrates the artistic skills involved in creating the "perfect look" that "captures the
6  imagination" of young girls and boys. [Rough Tr. at 8]. The additional evidence
7  MGA intends to present will provide the jury with a picture of the detailed process a
8  that changed the appearance from Bryant's drawings and resulted in the Bratz dolls
9  having the "particularized expression" that is part of the doll's success.  MGA's
10  testimony will show that it was only through this creative input that MGA "got the
11  look just right" and made the Bratz doll a success.

12       The Second Circuit held in <u>Mattel, Inc. v. Goldberger Doll Mfg. Co.</u>, 365 F.3d
13  133 (2d Cir. 2004), that "Mattel's copyright in a doll visage with an upturned nose,
14  bow lips, and widely spaced eyes will not prevent a competitor from making dolls
15  with upturned noses, bow lips, and widely spaced eyes, **even if the competitor has**
16  **taken the idea from Mattel's example, so long as the competitor has not copied**
17  **Mattel's particularized expression**." <u>Id</u>. at 136 (emphasis added).  This is
18  consistent with the Supreme Court's statement in <u>Feist Publ'ns, Inc. v. Rural Tel.</u>
19  <u>Serv. Co.</u>, 499 U.S. 340 (1991), that "copyright assures authors the right to their
20  original expression, but encourages others to build freely upon the ideas and
21  information conveyed by a work." <u>Id</u>. at 349-50 (citation omitted).

22       This is even more important in this case, which involves allegations that a 3-
23  dimensional doll infringes 2-dimensional drawings.  <u>Goldberger</u> involved a doll to
24  doll comparison.  Here, MGA was creating a doll from scratch.  As one of Mattel's
25  own witness, Ann Driskill, explained in her deposition, it "takes a large village" to
26  build a doll. (Driskill at 302:7-9)  In this case, many steps were involved in creating
27  the 3-dimensional Bratz dolls – all of which are relevant to MGA's defense that it did

28

1 not build dolls based solely on Mr. Bryant's drawings. Intentional dissimilarities

2 between works are relevant to the substantial similarity analysis. See Nimmer on

3 Copyright §13.03[B][1][b] ("a defendant may legitimately avoid infringement by

4 intentionally making sufficient changes in a work that would otherwise be regarded

5 as substantially similar to plaintiff's.").

6       Mattel owns whatever "original expression" exists in the Bryant drawings.

7 The testimony from MGA's witnesses will show that MGA "built" on the

8 information contained in the drawings but did not copy the "particularized

9 expression" in Bryant's drawings. Specifically, the testimony will show that MGA

10 implemented changes and interpreted what the drawings should look like in 3-

11 dimensional form. This was accomplished through the skills of numerous people.

12 **III.   MGA MUST BE PERMITTED TO REBUT THE EVIDENCE**

13       **PRESENTED BY MATTEL IN ITS CASE–IN-CHIEF**

14       Mattel's Phase 1-B case focused in large part on the argument that the Bratz

15 doll is merely a re-creation of the Bryant drawings. Mattel opened the door to

16 evidence related to the various inspirations and creative contributions for the dolls as

17 early as opening statement, when Mattel implied that the dolls were *only* based on

18 the drawings, repeatedly stating that the dolls are based on the drawings without

19 acknowledging the importance of any additional influences or sources of inspiration.

20 For example, Mattel claimed during opening that "MGA was attempting to . . . take

21 these drawings and make them dolls that looked like the drawings. Of course, now

22 they say they don't look anything like them." [Tr. 5432:17-20]. Mattel also claimed

23 that "[i]f you look at the distinguishing Bratz characteristics, you are going to

24 conclude that although there may be minor differences, that the dolls are

25 substantially similar to these drawings and, in fact, were based on these drawings."

26 [Tr. 5425:5-9].

27       Similarly, Mattel used an MGA discovery response in a Hong Kong lawsuit to

28 incorrectly suggest that Ms. Leahy and the other skilled MGA artisans who actually

1  created the Bratz dolls "referenced" Bryant's drawings so they could make the dolls

2  look like just like the drawings.  The discovery response listed the various Bratz-

3  related "Artistic Works" as (a) certain of the Bryant drawings, (b) wax models

4  created by Ms. Leahy, (c) rubber molds created by another MGA employee, (d)

5  drawings of face decorations created by another MGA employee, (e) color guides for

6  the facial decorations, and (f) painted deco-masters.  Over MGA's strenuous

7  objections, Mattel was allowed to question Edmond Yeung about the pleading.  Mr.

8  Yeung testified that he understood the pleading to mean that these items all referred

9  to the "18 drawings listed under item (a)."  [Tr. 6080].  In response to further

10  questioning by Mattel, Mr. Yeung "repeated" that MGA's statement meant that

11  "[t]he author of the wax models, the author of the silicone rubber molds -- sorry.

12  The author of the four drawings of facial decoration, the author of the eight drawings,

13  four of which are pantone color guides, and the author of the four hand-painted Deco

14  masters referred to the 18 [Bryant] design drawings when he or she created the

15  respective copyright works."  [Tr. at 6081].  Mr. Yeung also testified that he would

16  "expect that, before MGA gave an answer under oath to your request for particulars,

17  that MGA would speak to the authors in order to get that information."  [Tr. 6085:2-

18  7].

19        Mattel similarly questioned Mitchell Kamarck, MGA's former General

20  Counsel, about this document.  [Tr. at 5856:10-14 (Q. what this pleading "tells us is

21  those other authors, the authors of the mold, the sculpts, and the other things referred

22  to in B, D, E, and F, Ms. Leahy and Mr. Ramirez, in doing their work, they referred

23  to the [Bryant] drawings; correct? A.   Correct.")

24        Moreover, Mattel has repeatedly argued that the entire success of the Bratz

25  dolls and products is "solely" attributable to Bryant's drawings.  In taking testimony

26  of some of the witnesses that it called in its case-in-chief, Mattel attempted to

27  establish that the Bryant drawings were the sole basis for the establishment and

28

1  success of the Bratz dolls, and, as a direct consequence, the Bratz brand.  First, with

2  Ninette Pembleton, MGA's Vice President of Operations, <u>Mattel asked the following</u>:

3      Q.    And MGA has a successful brand because Mr. Bryant brought over to

4      MGA Mattel's confidential designs for Bratz; correct?

5      A.    No.  I do not agree.  I believe that MGA has a successful brand because

6      it was nurtured internally with creative people developing it.

7  [Tr. at 5626:7-11].

8      Mattel's examination of Mr. Larian suggested that MGA's only "inspiration"

9  for the Bratz dolls was the drawings, and nothing else

10      Q.    As of [October 16, 2000], the only thing that was inspiring this

11      business, this idea of a line extension, was that you had seen confidential

12      information that belonged to Mattel; correct?

13      A.    I don't know as of October 16 if we had other things besides just those

14      drawings.  I don't recall.  I got to look at papers to say that.

15  [Tr. 6121:6-14].

16      Q.    Now, you said that these drawings, this Mattel confidential information

17      inspired you.

18      Do you recall saying that?

19      A.    I said those drawings were the inspiration for what became the Bratz

20      dolls, which MGA created through many, many changes and many employees.

21      Q.    Well, you know –

22      A.    And a lot of investment.  Over seven years.

23  [Tr. 6100:3-10].

24      Q.    As of October 31st, what you had, again, to base your business plans

25      and projections on, were the designs of Carter Bryant, which belonged to

26      Mattel; correct?

27

28

1    A.    I believe by October 31st, 2000, we had more than just those drawings.

2    Again, I think we had done at least some preliminary sculpts that the jury

3    found was done by Carter Bryant jointly with MGA.  And some other things.

4    Q.    Well, certainly the jury knows what the jury meant to do.  So let me ask

5    you –

6  [Tr. 6122:15-21].

7    As the Court well knows, MGA's position has always been that the Bryant

8  drawings served as inspiration and a jumping-off point for the Bratz project, rather

9  than a blueprint to be followed "verbatim" in creating the Bratz dolls.  Central to

10  establishing this theme is MGA's intended testimony about the process of making the

11  Bratz doll.  To preclude MGA from rebutting Mattel's case-in-chief would be

12  extremely prejudicial and unwarranted.

13  **IV.    MGA'S EFFORTS TO DEVELOP THE BRATZ DOLLS AND THE**

14        **BRATZ BRAND ARE RELEVANT TO MATTEL'S DAMAGES**

15        **CLAIMS**

16    Separately, the efforts of MGA's employees and contractors bear directly on

17  the damages Mattel seeks under both its copyright and state-law claims.  With regard

18  to Mattel's copyright claim, MGA is entitled to offer evidence related to the

19  apportionment of its profits.  See 17 U.S.C. 504 (b) ( "[T]he infringer is required to

20  prove … the elements of profit attributable to factors other than the copyrighted

21  work.").  To the extent that MGA's profits derive from the efforts of its employees

22  over the years, evidence of those efforts bears directly on apportionment.

23    For example, in the landmark case of Sheldon v. Metro-Goldwyn Pictures

24  Corp., 309 U.S. 390 (1940), the Supreme Court approved an apportionment of profits

25  from an infringing motion picture because the film involved "distinctive profit-

26  making features, apart from the use of any infringing material." Id. at 407.  Among

27  those "profit-making features" was the film's "expert supervision and direction of

28  the various processes which made possible the composite result." Id. at 407.

1   Likewise, in <u>John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.</u>,

2   322 F.3d 26 (1st Cir. 2003), the First Circuit addressed profits flowing from an

3   infringing condominium development built using the plaintiff's architectural

4   drawings.  The court considered the "many contributing factors that helped [the

5   defendants] turn a profit besides [the plaintiff's] skeletal site plans," including "the

6   extensive efforts [the defendant] made to coordinate logistics, supervise

7   subcontractors, choose and install various amenities, market the development, and

8   sell the condominium units." <u>Id</u>. at 48.  <u>See also</u> <u>Abend v. MCA, Inc.</u>, 863 F.2d 1465,

9   1478 (9th Cir. 1988) (concluding that infringing film's success was due in large part

10  to the efforts and talents of the infringers); <u>Twentieth Century Fox Film Corp. v.</u>

11  <u>Stonesifer</u>, 140 F.2d 579 (9th Cir.1944) (affirming apportionment based in part on

12  amount of labor invested in film's production); <u>Burns v. Imagine Films Entm't, Inc.</u>,

13  2001 U.S. Dist. LEXIS 24653 (W.D.N.Y. 2001) (apportioning profits from

14  infringing film based in part on the efforts of the directors, cast, set designers,

15  costume designers, and cinematographers).

16  The efforts of MGA's employees to build the Bratz dolls and the brand also

17  are relevant to Mattel's state-law claims.  Among other things, any damages awarded

18  under the state claims must be causally connected to the offending conduct. <u>See</u> <u>Di</u>

19  <u>Loreto v. Shumake</u>, 38 Cal. App. 4th 35, 39 (1995) (stating that damages for tortious

20  interference are the "'economic harm to the plaintiff proximately caused by the acts

21  of the defendant.'").  Accordingly, as respects these claims, it is Mattel's burden to

22  disaggregate the alleged profits generated by Mr. Bryant's transfer of his drawings to

23  MGA, if any, as opposed to other factors which may have resulted in the profits.

24  Thus, to the extent MGA's profits resulted instead from other sources, such as the

25  efforts and contributions of MGA employees, those profits may not be disgorged.

26  Under its claim for aiding and abetting the breach of a fiduciary duty, for example,

27  Mattel must show that whatever profit it seeks was derived "from or proximately

28

12

1  caused by [Mr. Bryant's] breach[ ] of fiduciary duty." <u>Super Future Equities, Inc. v.</u>
2  <u>Wells Fargo Bank Minn., N.A.</u>, 2007 U.S. Dist. LEXIS 91947, *58-63 (N.D. Tex.
3  2007).  In <u>Super Future Equities</u>, the district court agreed that the defendant could
4  not "simply claim that…[the defendant] breached a fiduciary duty and then recover
5  every cent [the defendant] ha[d] earned…since 1999." <u>Id</u>. at *62.  Because the
6  plaintiff had "not offered a reasonable approximation of what the Defendants ha[d]
7  earned as a result of their alleged breach of fiduciary duties," the court held that the
8  plaintiff was "not entitled to disgorgement." <u>Id</u>. at *63.  Though Mattel bears this
9  causal burden, the MGA parties must be permitted to submit evidence to rebut
10 whatever showing, if any, Mattel offers.  <u>See</u> <u>Wellman v. Dickinson</u>, 682 F.2d 355,
11 368 (2d Cir. 1982) (the amount to be disgorged "must proceed directly and
12 proximately from the violation claimed and not be attributable to some supervening
13 cause").

14                              **CONCLUSION**

15        The evidence MGA proposes to offer regarding the creation and continued
16 development of the Bratz dolls is relevant on a number of grounds and should be
17 admitted.  Mattel has not and cannot show that such evidence is unduly prejudicial or
18 that it would "confuse" the jury.

19
20 DATED:  August 8, 2008              SKADDEN ARPS SLATE MEAGHER &
                                      FLOM LLP
21
22
23                                    By  /s/ Thomas J. Nolan
                                      Attorneys for MGA Entertainment, Inc.,
24                                    Isaac Larian, and MGA Entertainment
                                      (HK) Ltd.
25
26
27
28
                                      13

280321.02-Palo Alto Server 1A - MSW