QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
  Jon D. Corey (Bar No. 185066)
  joncorey@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. CV 04-09059 and Case No. CV 05-02727 |
| vs. | **MATTEL, INC.'S TRIAL BRIEF RE JOINT AUTHORSHIP AND OWNERSHIP OF EXHIBIT NO. 1136** |
| MATTEL, INC., a Delaware corporation, | |
| Defendant. | |
| | **Phase 1B** |
| AND CONSOLIDATED ACTIONS | Trial Date:   July 23, 2008 |

### **Preliminary Statement**

Despite a jury verdict that unequivocally resulted in Mattel's sole copyright ownership of the sculpt identified as Exhibit 1136, MGA began suggesting in recent days that it may have a co-ownership interest with Mattel in that sculpt. Apparently, MGA's theory is predicated on principles of joint authorship under federal copyright law. So says MGA, when Margaret Leahy recast certain two-dimensional Bratz characters of Carter Bryant that were created by him when he was a Mattel employee into a three-dimensional form, she was a co-author—and hence, co-owner—of the sculpt she produced. MGA claims to have acquired Leahy's ownership interest in the sculpt via written assignment. MGA's argument, however, both contradicts the jury's verdict and fails to establish any co-ownership rights as a matter of law. It also has been waived, having never been raised in the Final Pretrial Conference Order.

### **Argument**

### I.   **MARGARET LEAHY WAS NOT A JOINT AUTHOR OF THE SCULPT THAT IS IDENTIFIED AS EXHIBIT NO. 1136**

Though the Copyright Act defines a "joint work" as one "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole," the term "joint author" was left undefined. 17 U.S.C. § 101. That determination, Congress decided, was best left to the courts.

In the Ninth Circuit, a multifactor test is applied for joint authorship in the absence of a contract: (1) whether the putative author superintended the work by exercising control; (2) whether the putative coauthors made objective manifestations of a shared intent to be coauthors; and (3) whether the audience appeal of the work turns on the contributions of all of the putative coauthors and "the share of each in its success cannot be appraised." Aalmuhammed v. Lee, 202 F.3d 1227, 1234 (9th Cir. 1999) (consultant on film, *Malcolm X*, held not to be coauthor of film). Further, a "joint work" requires each author to make an independently copyrightable contribution to the

work.  Id. at 1231 ("A 'joint work' in this circuit 'requires each author to make an independently copyrightable contribution' to the disputed work.'") (citations omitted).

Here, MGA has not satisfied, and cannot satisfy, this test.  First, it introduced no evidence in Phase 1(a) that Leahy had control over the sculpt's creation.  To the contrary, the evidence showed that it was Carter Bryant, not Leahy, who superintended and exercised control over the creation of the sculpt.  As Aalmuhammed stated, "[c]ontrol in many cases will be the most important factor" and the "absence of control is strong evidence of the absence of co-authorship."   Id. at 1234-35.  Bryant was the "inventive or mastermind" behind the sculpt, and he used Leahy's services to realize his vision of translating two-dimensional Bratz works into a three-dimensional one.  Regardless of whether Leahy made creative contributions of her own in carrying out her charge, Bryant was not bound to accept of any of them, and all were subject to his approval.  This was made clear even at Bryant's first review of the sculpt, where Bryant gave specific directions for revisions, which Leahy testified were incorporated into the sculpt.  Trial Transcript at 4362:17-4363:10.

Second, MGA presented no facts whatsoever to demonstrate that Carter Bryant ever made objective manifestations of intent to be a co-author with Leahy.  Indeed, nobody—including Leahy—made any indication that at the time of creation of the sculpt, Leahy was intended to be a co-author.  MGA's lack of such evidence in this regard speaks volumes.  Having failed to adduce such evidence in Phase 1(a) relating to Bratz ownership, MGA cannot now be allowed to introduce it, in violation of the Court's phasing Orders.

Third, MGA adduced no evidence that the audience appeal of the sculpt turned on any contribution of Leahy.  Again, to the contrary, the Phase 1(a) trial evidence and verdict established that it was Bryant -- and Bryant alone -- who designed and provided the "blueprint" upon which the sculpt was based.  Leahy's services were merely a conduit in recasting the "blueprint" into a tangible object, and Leahy herself testified herself that her job was merely to turn the concept drawing into a producible

sculpt.  Trial Transcript at 4365:5-11.  Any competent sculptor could have performed that task.  Thus, not only has MGA failed to prove joint authorship, but its current contention seeks to contradict the jury's finding that this blueprint drawing on which the sculpt was based was created by Bryant while he was employed by Mattel.

More fundamentally, as Phase 1(a) testimony also proved, Leahy's contribution to the sculpt was not even sufficiently original to merit copyright protection, which is a requisite of joint authorship in this Circuit, as well as a constitutional requirement of authorship as made clear in Feist Publications, Inc. v. Rural Telephone Service Company, Inc., 499 U.S. 340, 346 (1991) ("Originality is a constitutional requirement.").  Any contribution Leahy might have made to the Exhibit 1136 sculpt was simply to recast a two-dimensional work into one that was three-dimensional and was guided by functional considerations, e.g., making nose larger in sculpt so the bone structure would "make sense" (Trial Transcript at 4262:16-24), making the ankles larger so they would not break (Trial Transcript at 4159:8-15), and making the sculpt manufacturable (Trial Transcript at 4365:5-11).  Courts have routinely held such minimal or functional contributions do not meet the standards for copyright protection.  See, e.g., L. Batlin & Son, Inc. v. Snyder, 536 F.2d 486, 490-92 (2d Cir. 1976) (en banc) (transforming antique Uncle Sam bank into medium of molded plastic replica held to contain insufficient originality to merit copyright protection); Entertainment Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211, 1222-23 (differences in form, texture, and proportionality between three-dimensional inflatable costumes and the two-dimensional cartoon characters upon which they were based stemmed from unprotectable functional considerations).

MGA failed to establish in Phase 1(a) that Leahy was a joint author of the Exhibit 1136 sculpt and, indeed, the only evidence that was introduced showed that she was not.  Of necessity, Leahy had no rights in the sculpt to convey to MGA.  See 17 U.S.C. § 204(a) ("A transfer of copyright ownership, other than by operation of law, is

1  not valid unless an instrument of conveyance . . . is in writing and signed by the ***owner***

2  of the rights conveyed . . . .") (emphasis added).[1]

3  **II.    MGA COULD NOT HAVE ACQUIRED A COPYRIGHT INTEREST**

4          **IN EXHIBIT 1136 FROM MARGARET LEAHY BECAUSE IT WAS**

5          **AN UNAUTHORIZED DERIVATIVE WORK OF MATTEL'S**

6          **PROPERTY**

7              Even assuming that Margaret Leahy's efforts on the sculpt met the

8  standards for joint authorship—and they do not—MGA's co-ownership contention still

9  fails.  One of the exclusive rights afforded a copyright owner is the right "to prepare

10  derivative works based on the copyrighted work" that he owns.  17 U.S.C. § 106(2).  A

11  derivative work that has been created without authorization of the owner of the

12  underlying copyright is infringement, and as such, courts deny copyright protection and

13  rights to the preparer(s) of the unauthorized derivative work.  17 U.S.C. § 103(a)

14  (protection for work employing preexisting material in which copyright subsists does

15  not extend to any part of the work in which such material has been used unlawfully);

16  Pickett v. Prince, 207 F.3d 402, 406 (7th Cir. 2000) (creator of unauthorized guitar

17  shaped like copyright protectible symbol associated with musical artist Prince had no

18  claim to copyright); Anderson v. Stallone, 1989 WL 206431 at *5-11 (C.D. Cal. April

19  25, 1989) (holding that infringing derivative work is not entitled to copyright

20  protection, thus denying creator of unauthorized treatment based on popular *Rocky*

21

22

---

23      [1]  Mattel does not brief here the other fatal defects in Leahy's purported attempts
24  to contractually transfer rights to MGA.  As the Court is aware, Mattel has sought
     declaratory relief of ownership in the Bratz properties, including as a necessary
25  component that MGA contracts supposedly transferring such rights are invalid.  At
     the conclusion of the trial evidence, Mattel will seek declaratory relief based upon
26  the jury's findings and the Court's prior legal rulings.  If the issue regarding Leahy's
     supposed joint authorship remains at that time, Mattel will brief the contractual
27  defects in MGA's claims of co-ownership.

28

movie franchise any copyright protection or ability to enjoy any rights associated with copyright ownership).

Here, there is no question that neither Carter Bryant, nor Margaret Leahy, received authorization to create any derivative work based on Bratz drawings that belong to Mattel.  True, Leahy apparently had Bryant's consent, but that is irrelevant.  Bryant was never in a position to authorize the preparation of derivative works employing material from his drawings since they were owned by Mattel.  As the jury has found, Bryant reduced his ideas for a new line of fashion dolls to tangible form during the term of his Mattel employment and, under this Court's rulings, they were assigned to Mattel based on the Inventions Agreement he had executed.  Therefore, the only entity that could have granted authorization to prepare derivative works based on Bryant's drawings was Mattel.  Tellingly, MGA has introduced no evidence that Mattel granted such permission.  Nor could it: it does not exist.

Because Leahy's actions constituted at best the preparation of an unauthorized derivative, neither she nor MGA could acquire any rights in it.  Pickett, 207 F.3d at 406; Anderson, 1989 WL 206431 at *5-11.[2]  As a consequence, MGA's arguments that it is a co-owner of Exhibit 1136 are both legally erroneous and inconsistent with the Phase 1(a) verdict for these reasons as well.

---

[2]   MGA suggested recently at one point that it should be permitted to show that Leahy is a joint author of Exhibit 1136 because the jury verdict form asked whether Bryant had created the work "alone or jointly with others" during the term of his Mattel employment.  MGA misapprehends the significance of this language.  The language comes from Mattel's Inventions Agreement that was designed to protect Mattel, not to protect third parties such as Leahy or MGA who were secretly and illegally working with Mattel employees.  In any event, because the evidence does not establish joint authorship by Leahy under the Copyright Act as discussed above, the "alone or jointly with others" language cannot support MGA's argument.  Further, as also discussed above, because Leahy's work on the sculpt was at best the preparation of an authorized derivative work, she could not have acquired any rights (footnote continued)

1  ### III.   <u>MGA HAS WAIVED ANY CO-OWNERSHIP CLAIM</u>.

2          MGA did not disclose its belated contention about Leahy's alleged joint

3  authorship giving rise to co-ownership by MGA in the Final Pretrial Conference Order.

4  Accordingly, MGA's recent claim of co-ownership fails not only on substantive

5  grounds as shown above, but it has been waived as well.  <u>Fed. R. Civ. P. 16</u>; <u>United

6  States v. First National Bank of Circle</u>, 652 F.2d 882, 886 (9th Cir. 1981) (theory

7  barred if not included in pretrial order).

8

9  DATED:  August 10, 2008          QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
10

11                                  By /s/ Michael T. Zeller
                                       Michael T. Zeller
12                                     Attorneys for Mattel, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26  _____

27  for that independent reason.  The "alone or jointly with others" language does not
    alter that conclusion either.

28