THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
(laguiar@skadden.com)
CARL ALAN ROTH (Bar No. 151517)
(croth@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA  90071-3144
Tel.: (213) 687-5000
Fax: (213) 687-5600

Attorneys for The MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>   Plaintiff,<br><br>   v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>   Defendant.<br><br>AND CONSOLIDATED ACTIONS. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>**MGA PARTIES' OPPOSITION TO MATTEL'S MOTION TO QUASH PHASE 1B CUSTODIAN OF RECORDS TRIAL SUBPOENA**<br><br>[DECLARATION OF JONATHAN D. USLANER CONCURRENTLY FILED HEREWITH] |

**PRELIMINARY STATEMENT**

This Court has already addressed and overruled Mattel's objection to MGA's Phase 1B Custodian of Records Subpoena directed to Mattel, Inc. The Court held on July 2, 2008, that the parties may call each other's Custodian of Records to authenticate and introduce relevant documents into evidence. Both Mattel and MGA have availed themselves of this well-accepted trial practice, and Custodians of Records have testified during Mattel's and MGA's cases-in-chief. Mattel offers no principled justification for changing the rules of engagement at this stage in the trial.

Mattel also challenges the admissibility of certain documents that MGA hopes to introduce through Mattel's Custodian of Records. Mattel's challenge is baseless: the documents are admissible to support MGA's apportionment and damages theories. The Court's ruling on Motion *In Limine* No. 9 does not, as Mattel suggests, render inadmissible highly relevant documents simply because they may include the words of Mattel products such as "Barbie" and/or "My Scene." The documents that MGA seeks to put into evidence through Mattel's Custodian of Records relate to Bratz and its success, and are a critical component of MGA's apportionment and damages theory. Thus, it is little wonder why the same or similar documents have been relied on extensively by Mattel's own experts and appear on Mattel's Phase 1B Exhibit List.

Moreover, even if certain documents listed in the Custodian of Records Subpoena were ultimately ruled to be inadmissible, that would not justify quashing the subpoena to Mattel's Custodian of Records.

**FACTUAL BACKGROUND**

During Phase 1A, on June 12, 2008, Mattel served subpoenas on the Custodian of Records for MGA and MGA (HK) (collectively, for these purposes, "MGA"). The subpoenas compelled MGA to produce a Custodian of Records on June 17, 2008 – only five days after the issuance of the subpoena. The subpoenas required MGA's Phase 1A Custodian of Records to "authenticate, identify, and/or verify the

1  authenticity and manner of keeping of [specifically listed] documents, thing and/or
2  tangible items," as well as "any other exhibits on the parties' trial exhibit lists in
3  [MGA's] possession, custody and/or control that have not yet been authenticated."
4  (Exh. 1.)[1]  On June 24, 2008, Mattel conducted an examination of MGA's Custodian
5  of Records, an MGA in-house lawyer, Craig Holden.
6      On June 27, 2008, MGA served a nearly identical subpoena on Mattel's
7  Custodian of Records. (Exh. 2.) On July 2, 2008, Mattel made an oral motion to
8  quash that subpoena. The Court denied Mattel's motion. The Court held that, given
9  the number of documents produced in this litigation and for purposes of judicial
10 economy, "[a Custodian of Records is] an appropriate way to get [documents] in."
11 (Exh. 3 at Tr. 4191:18-20.)  The Court also noted that it was Mattel, not MGA, that
12 first issued a mid-trial subpoena to MGA's Custodian of Records. Having itself
13 insisted on introducing documents and tangibles through MGA's Custodian of
14 Records, Mattel was in no position to challenge MGA's use of the same procedure.
15 ((Id. at 4190:16-17) ("What's good for the goose is good for the gander."))
16      On July 18, 2008, MGA submitted its Phase 1B Witness List to the Court and
17 Mattel. (Exh. 4.) MGA listed Mattel's Custodian of Records as one of the witnesses
18 it would be calling during its Phase 1B case-in-chief. Mattel neither lodged any
19 objections nor filed any motion.
20     On July 21, 2008, Mattel issued a subpoena to MGA's Phase 1B Custodian
21 Records, who Mattel examined four days later on July 23, 2008. (Exh. 5.)
22     On July 31, 2008, MGA served its own trial subpoena on Mattel's Phase 1B
23 Custodian of Records specifically identifying trial exhibits that MGA would seek to
24 introduce through Mattel's Custodian. (Exh. 6.) Mattel's Custodian is expected to
25 testify on August 11, 2008 – more than ten days after the issuance of the subpoena.

---

[1]  All exhibits referenced herein are attached to the August 11, 2008 Declaration of Jonathan D. Uslaner, filed concurrently herewith.

## I. MGA'S SUBPOENA TO MATTEL'S CUSTODIAN OF RECORDS IS PROPER.

Mattel first objects that the Custodian of Records Subpoena is improper because (1) MGA did not provide Mattel with sufficient notice of its intent to call Mattel's Custodian; (2) the subpoena purportedly compels discovery; and (3) a Custodian of Records is an improper vehicle to move exhibits into evidence. These challenges can be quickly disposed of.

First, MGA submitted a Phase 1B Witness List to the Court and Mattel on July 18, 2008, the day after the Phase 1A verdict, stating that it would call Mattel's Custodian of Records during Phase 1B. MGA served its subpoena on Mattel's Custodian of Records more than ten days before Mattel's custodian would take the stand. Such notice is ample, especially given the timing and nature of this trial. Indeed, Mattel has provided MGA with equal (or less) notice when it subpoenaed MGA's Custodian of Records during Phases 1A and 1B. (Exhs. 1 & 5.)

Second, Mattel claims that Request Nos. 23 and 24 in MGA's Subpoena constitute an "improper request for additional discovery beyond the discovery cut-off date." (Mot. at 1 & n.1.) Mattel's objection is without merit and, instead, appears to be a remnant from a different motion. Request Nos. 23 and 24 do not compel the production of documents; they ask Mattel merely to authenticate two specific documents already produced by Mattel in this litigation.[2]

---

[2] Specifically, Requests No. 23 and 24 ask Mattel's Custodian of Records to authenticate the following:
23. TX 15740 (M0079806 - M0079806): 12-Sep-05 Mattel Worldwide Consumer Research Memorandum;
24. TX 15747 (M0080379 – M0080388): 4-Mar-05 Worldwide Consumer Research Memorandum.
(See Exh. 6, at 3.)

1    Third, the Court has already held that it will permit the parties to call a
2 Custodian of Records to move documents into evidence, even if the Custodian lacks
3 personal knowledge of the facts contained within the documents themselves. Both
4 parties have relied on this practice, and MGA has structured its Phase 1B case
5 accordingly.

6 **II.    MOTION *IN LIMINE* NO. 9 DOES NOT RENDER INADMISSIBLE
7          HIGHLY RELEVANT PHASE 1B DOCUMENTS.**

8    Mattel claims that this Court held, by granting Mattel's Motion *In Limine* No.
9 9, that all documents that include the words "Barbie" and/or "My Scene" are
10 automatically, *per se* inadmissible in Phase 1B, including Mattel's marketing and
11 branding analyses of Bratz. Mattel totally misstates the scope of Mattel's Motion *In*
12 *Limine* No. 9. Its reach does not extend to the documents at issue here nor to the
13 purposes for which the documents will be used by MGA. Mattel's Motion *In Limine*
14 No. 9 does not address whether MGA may use Mattel's marketing and research
15 analyses in Phase 1B to assist the jury in understanding why Bratz is successful and
16 what damages should be apportioned. Indeed, the Court made clear during a July 21,
17 2008 telephonic hearing that its intention, when granting Mattel's motion, was not to
18 preclude the use of Mattel's internal marketing and research analyses for Phase 1B
19 issues. (Exh. 7, at Tr. 5276:6-10) ("I'm ruling on the motion in limine as it's
20 presented to the Court, and for the purposes set forth by MGA in its opposition to
21 that motion in limine.")

22    Mattel's preliminary statement to Motion *In Limine* No. 9 confirms its limited
23 reach. Motion *In Limine* No. 9 only sought to preclude references to "What
24 BARBIE is or is not, or how she is perceived by scholars" and "[w]hether Bergstein
25 or other academics and writers consider her 'tired' or sexist or racist." (Exh. 8, at 1.)
26 The Motion sought to block such references to Barbie only if they were being used to

prove "whether Carter Bryant designed Bratz while employed by Mattel, whether Bratz is owned by Mattel and whether MGA acted improperly." (Id.)

Neither Motion *In Limine* No. 9, itself, nor the Court's Order addresses the documents at issue and the legitimate purposes for which they will be used in Phase 1B. The documents that Mattel's Custodian of Records is being asked to authenticate for admission into evidence are internal Mattel documents discussing and analyzing the various factors that contribute to the development and success of dolls, including Bratz. The documents compare and contrast the strengths and weaknesses of the Bratz dolls and dolls created by Mattel. These documents, from Mattel's own files, confirm the testimony of MGA's fact and expert witnesses. They do not concern "What BARBIE is or is not, or how she is perceived by scholars" – the subject of Motion *In Limine* No. 9. Nor is the purpose of admitting them to show whether Barbie has or has not been successful. Given their significance, it is little surprise that many of the documents at issue have been relied on extensively by both parties' experts and appear on Mattel's Phase 1B Exhibit List.[3]

Finally, MGA will be attempting to enter into evidence through Mattel's Custodian of Records documents and tangibles that nowhere concern or reference Barbie or My Scene. Accordingly, even if the Court were to find that certain documents that MGA seeks to introduce are inadmissible, such a determination does not justify quashing MGA's entire subpoena.

---

[3] Mattel's own expert Carol Scott has relied on documents of the sort it now complains, including "Mattel Girls Monthly Tracking Studies." Mattel, itself, has added many of these same documents to its Phase 1B Exhibit List.

## CONCLUSION

For the foregoing reasons, the MGA Parties respectfully request that Mattel's Motion to Quash be denied.

DATED: August 11, 2008

                            Respectfully submitted,

                            SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                            By: _/s/ Carl A. Roth_____
                                  Carl A. Roth
                              Attorneys for the MGA Parties