1 | THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
2 | DAVID W. HANSEN (Bar. No. 196958)
(dhansen@skadden.com)
3 | LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
(laguiar@skadden.com)
4 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
5 | Los Angeles, CA 90071-3144
Tel.: (213) 687-5000
6 | Fax: (213) 687-5600
Attorneys for The MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED CASES | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>Hon. Stephen G. Larson<br><br>**MGA'S TRIAL BRIEF CONCERNING MGA'S OWNERSHIP OF THE COPYRIGHT IN EXHIBIT NO. 1136A** |

## PRELIMINARY STATEMENT

MGA submits this trial brief in support of MGA's rights to ownership of the copyright in Trial Exhibit No. 1136A, and in response to Mattel's trial brief on this issue.

Contrary to Mattel's argument, the Phase 1-A verdict did not address, much less decide, copyright ownership issues concerning any of the works at issue, including Exhibit 1136A, the casting made by Margaret Leahy. The evidence establishes that Ms. Leahy was the "author" of the Exhibit 1136A work for purposes of copyright ownership. At the very least, the issue of whether Ms. Leahy and Mr. Bryant were "joint authors" of the casting is a fact question for the jury.

Mattel is not helped by its statement that Exhibit 1136A is an "unauthorized derivative work." Assuming that Mattel is correct, Exhibit 1136A would not be copyrightable and Mattel could not own any copyrights in that work. Therefore, Exhibit 1136A could not form the basis for copyright infringement claims by Mattel.

Finally, MGA has always maintained that it owns the copyright in Exhibit 1136A, and it did not "waive" its ownership rights. Mattel did not include its claimed ownership of this casting in the Final Pretrial Conference Order. If anything, Mattel's failure to include ownership issues concerning Exhibit 1136A waived Mattel's ability to now claim copyright in this work.

## ARGUMENT

### I. THE PHASE 1-A VERDICT DID NOT DETERMINE COPYRIGHT OWNERSHIP ISSUES

Mattel argues that the Phase 1-A jury verdict "unequivocally resulted in Mattel's sole copyright ownership of the casting identified as Exhibit 1136A . . . ." (Mattel Br. at 1). The Court was clear, however, that the Phase 1-A verdict was solely directed to issues of <u>timing</u> of the creation of the various works, and that <u>all</u> issues of copyright ownership were reserved for Phase 1-B.

The Court's decision in this regard was made at the urging of Mattel. For example, Mattel's counsel told the Court during the Phase 1-A jury charging conference that Mattel believed that Phase 1-A was intended to determine issue of timing, <u>not</u> issues of copyright: "As we perceive this phase of the case, it is a simple up and down question as to particular works. Was this drawing created in 1998 versus '99. And then in Phase 1-B we get into the copyright...." [7/7/08 Tr. at 102-03]. The Court agreed:

> "We haven't reached the copyright significance of any drawings whatsoever. The Court hasn't gotten there. We haven't gotten there as a matter of law.
>
> So I don't want anything that I would be encouraging in terms of a stipulation to be taken as the Court's view on the copyright issue, because I'm just not there yet myself, and it's not clear to me what impact or significance for ownership, ultimate ownership, legal ownership, which is not what the jury is deciding....
>
> **<u>The issue for the jury is what was done and when. That's the factual issue. The Court will ultimately have the issue of ownership to decide based on findings in Phase 1-A and, if necessary, findings in Phase 1-B</u>.**"

[<u>Id</u>. at 106-07 (emphasis added)].

Indeed, the Court declined MGA's proposal to have the Phase 1-A verdict include a determination of whether certain of Bryant's drawings were "based on" other drawings because that "gets into too much of the Phase 1-B issue of what is and what is not copyrightable . . . ." [7/7/08 Tr. at 94]. The Court specifically structured the Phase 1-A verdict form so that issues of "copyright significance" were left for Phase 1-B. [<u>See</u> <u>id</u>. at 95; <u>see also</u> <u>id</u>. at 110 ("I think at the end of the day, I – I am going to stick to what I believe this first phase to be about, and that's the

1 timing of these drawings, and I think to go beyond that risks improperly going into
2 the copyright issues at this point."); 7/8/08 Tr. at 4727-28 (The Court: "[W]e're not
3 deciding ownership in this phase. All we're deciding is the factual predicate of when
4 these things came into existence."); id. at 4733 ("[A]ll we're determining is creation
5 issues as opposed to ownership issues. The ownership issues are really the 1-B
6 issue.")].

The Court also specifically rejected Mattel's proposed verdict form, pursuant
to which the jury would need to determine whether Bryant "create[d] or directed
others to create" the works at issue during his Mattel employment. [See 7/7/08 Tr. at
117-18]. The Court conformed the verdict form to the language in Bryant's
employment agreement, pursuant to which the jury determined whether the various
works at issue, including Exhibit 1136A, were created by Bryant "alone or jointly
with others" during his Mattel employment. Thus, consistent with Mattel's position
that Phase 1-A only involved the "up and down" issue of timing, the jury's Phase 1-
A verdict did not determine copyright ownership.

## II. THE UNDISPUTED EVIDENCE ESTABLISHES THAT MGA OWNS THE COPYRIGHT IN EXHIBIT 1136A

As the Court previously noted, the jury held in connection with the Phase 1-A
verdict that Exhibit 1136A was created "solely or jointly by Carter Bryant while he
worked at Mattel." [Tr. 6693-94]. Consistent with the structure of the Phase 1-A
verdict form, this does **not** mean that Bryant owned, or Mattel now owns, any
copyright in Exhibit 1136A.

Under the Copyright Act, "[o]wnership of a copyright, or of any of the
exclusive rights under a copyright, is distinct from ownership of any material object
in which the work is embodied." 17 U.S.C. § 202. The copyright in a work "vests
initially in the author or authors of a work." Id. § 201(a). "Authorship is a
designation for the 'originator' of a work, [who] causes something to come into
being.'" See Comment, Ninth Circuit Manual of Model Jury Instructions – Civil, No.

3

17.6 "Copyright Interests – Authorship" (citing <u>Aalmuhammed v. Lee</u>, 202 F.3d 1227, 1232 (9th Cir. 2000)).[1] The undisputed evidence establishes that Margaret Leahy, the professional sculptor hired by MGA to create the Bratz sculpt, is the one who actually caused the Bratz sculpts "to come into being," including Exhibit 1136A.

As Mattel acknowledges, a person can only be a "joint author" of a work if that person exercises "control" over the creation of the work and "make[s] an independently copyrightable contribution to the work." Mattel Br. at 1-2 (citing <u>Aalmuhammed</u>, 202 F.3d at 1231). The evidence establishes, however, that Bryant did not exercise "control" over the creation of Exhibit 1136A. It also establishes that Bryant did not make "an independently copyrightable contribution" to Exhibit 1136A.

Thus, although Bryant gave Ms. Leahy his "pitch book drawings," Ms. Leahy specifically testified that she did not use Bryant's these drawings in creating her sculpts. For example, Leahy testified that she "couldn't really use [the drawings] to come up with something in the three-dimensional world." [Tr. 4144:23-24]. Therefore, contrary to Mattel's argument, the only evidence on this issue is that Ms. Leahy **did not use** Bryant's drawings. Ms. Leahy also testified that, because Bryant's "concept drawings were really basic and not very practical" from a "sculpting standpoint," she "went more by the Steve Madden ad because it … was a little easier to come up with something from." [Tr. 4144:7-15]. Moreover, Ms. Leahy testified that Bryant ceded control over the creation of the sculpts to her. As Ms. Leahy testified, Bryant told her: "Here's my idea. Just take it and run with it. Let me know when you've sculpted something." [Tr. 4131:7-10]. Ms. Leahy also

---

[1] Contrary to Mattel's argument, MGA did not only recently suggest that there were the authorship issues that needed to be resolved. Mattel Br. at 1. Among other things, MGA's proposed jury instructions, provided to Mattel nearly three weeks ago, include the Ninth Circuit model instructions concerning "authorship" and "joint authors." <u>See</u> MGA Proposed Instructions at 136 & 139.

testified that Bryant's decision to turn control of the creation of the sculpt over to her was, in her experience, "rare." [Tr. 4371:1-5 ("[I]t's rare that you get a designer that says here's my vision. You know, do your magic and run with it.")].

The only other evidence concerning Bryant's potential contribution to Exhibit 1136A were a few general suggestions that Bryant might have made to Ms. Leahy during meetings on September 29, 2000 and October 6, 2000. Ms. Leahy testified that Bryant was a "very quiet guy" and that "most of the time he would just sit back" at the meetings. [Tr. 4153]. The only suggestion made by Bryant that Ms. Leahy could recall was to make the ankles thinner, but Ms. Leahy testified that she did not follow this suggestion because it was "hard to do in production." [Tr. 4151 & 4159]. Moreover, even assuming any suggestions offered by Bryant were made and accepted, they were not "independently copyrightable" contributions to Exhibit 1136A. Under Ninth Circuit precedent, to be a joint author, "one must apply more than mere direction or ideas: one must translate[] an idea into a fixed, tangible expression entitled to copyright protection." S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1087 (9th Cir. 1989). The Ninth Circuit has squarely held that "[a] person who merely describes to an author what the commissioned work should do or look like is not a joint author for purposes of the Copyright Act." Id. at 1087. Thus, the general "direction or "ideas" Bryant may have provided Ms. Leahy concerning what Exhibit 1136A should look like does not make him a "joint author" of Exhibit 1136A. Bryant gave general ideas, not particularized expression entitled to copyright protection.

Moreover, the evidence establishes that Bryant did not supervise Ms. Leahy's work on Exhibit 1136A, she did not ask for his guidance, he did not provide Ms. Leahy with "any specifics," and he was not even present while she worked on the casting. [Tr. 4136 & 4148]. Bryant confirmed that he gave Ms. Leahy control over the casting. In response to questioning by Mattel, Bryant confirmed that, although

he provided comments to Ms. Leahy, he left creation of the casting to her: "I had told her, you know, 'I'm not a sculptor; here's the drawing, you know; just, you know, put your own spin on it.'" [Tr. 2567:4-7].

The evidence therefore establishes that Ms. Leahy was the "author" of Exhibit 1136A, and that Bryant did not exercise control over the casting or provide any "copyrightable" input that would make him a "joint author" under the Copyright Act.

Although Mattel downplays the significance of Ms. Leahy's contribution to the casting, there is no question that Ms. Leahy made the most extensive and fundamental contributions. She was the sole sculptor. The evidence shows that Ms. Leahy's contribution to the casting was much more significant than Mattel suggests and, at a minimum, the issue of authorship of the Exhibit 1136A casting "'is a question of fact for the jury.'" See Comment, Ninth Circuit Manual of Model Jury Instructions – Civil, No. 17.6 "Copyright Interests – Authorship" (quoting Del Madera Properties v. Rhodes and Gardner, Inc., 820 F.2d 973, 980 (9th Cir. 1987)).[2]

### III. UNDER MATTEL'S "UNAUTHORIZED DERIVATE WORKS" ARGUMENT, MATTEL DOES NOT OWN ANY COPYRIGHTS IN EITHER EXHIBIT 1136A OR OTHER ALLEGED "DERIVATIVE WORKS" PREPARED BY BRYANT AND MGA

Mattel states that "there is no question that neither Carter Bryant, nor Margaret Leahy, received authorization to create any derivative work based on Bratz drawings that belong to Mattel." Mattel Br. at 5. Based on this lack of authorization, Mattel argues that Exhibit 1136A was an "unauthorized" derivative work. Id.

---

[2] Concerning the other two Aalmuhammed factors referenced by Mattel, the issue of whether Ms. Leahy and Mr. Bryant manifested an intent to be "co-authors" of the casting is a fact question for the jury. See Mattel Br. at 2. In this regard, Ms. Leahy was creating the casting for MGA with comments from numerous people. Moreover, since Bryant did not make a "copyrightable contribution" to Exhibit 1136A, contrary to Mattel's argument the "audience appeal" of the casting certainly does not "turn" on Bryant's contribution. See id. At the very least, this is also a fact question for the jury.

Taking Mattel's statement at face value, the effect of this statement is not limited to MGA's potential ownership of a copyright in Exhibit 1136A (or other "unauthorized" derivative works prepared by Bryant and/or MGA). It also means that the casting is not copyrightable and that Mattel also does not own a copyright in these works. As the Court held in Anderson v. Stallone, 1989 U.S. Dist. LEXIS 11109 (C.D. Cal. 1989), one of the decisions cited by Mattel, "since [defendant's work] is an unauthorized derivative work, no part of the treatment can be granted copyright protection." Id. at *25. As explained by Professor William Patry, a recognized authority on copyright law, the notion that "the original copyright owner obtains copyright in an unauthorized derivative work as a result of an infringement finging . . . is erroneous." Wm. Patry, Patry on Copyright §12:22 (2008). The reason for this is simple: the "original copyright owner is not the author" of the material added to the derivative work and therefore cannot be the owner of that material. See id.

Thus, assuming that Mattel is correct that Exhibit 1136A is an "unauthorized" derivative work, the casting would not be entitled to copyright protection and Mattel would not be entitled to any copyright ownership in that work that it could assert against MGA or anyone else.

## IV. MGA DID NOT WAIVE ITS OWNERSHIP CLAIM

Contrary to Mattel's argument, MGA's claim to ownership of the copyright in Exhibit 1136A was not waived. MGA has always claimed to own this object and all the copyrights therein. If anything, Mattel waived its rights to claim co-ownership interests by not raising this issue during discovery and by not including this issue in the Final Pretrial Conference Order. This Court previously rejected Mattel's belated attempt to modify the Final Pretrial Conference Order to include another work allegedly owned by Mattel. See Tr. (5/27/08) at 36-39. Mattel has never even sought to add any issues concerning MGA's ownership of the copyrights in Exhibit

1136A to the Final Pretrial Conference Order and there is no good cause to do so at this late date. Mattel's belated efforts would be highly prejudicial to MGA and should be rejected by the Court.

DATED: August 11, 2008

SKADDEN ARPS SLATE MEAGHER & FLOM LLP

By /s/ Thomas J. Nolan
Attorneys for MGA Entertainment, Inc., Isaac Larian, and MGA Entertainment (HK) Ltd.