THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
(laguiar@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Tel.: (213) 687-5000/Fax: (213) 687-5600

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Plaintiff,<br><br>          v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                    Defendant.<br><br>AND CONSOLIDATED ACTIONS. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>Honorable Stephen G. Larson<br><br>MGA PARTIES' SECOND REVISED DISPUTED [PROPOSED] PHASE 1-B JURY INSTRUCTIONS |

# AFFIRMATIVE DEFENSES

| No. | Description | Authority | Page |
|---|---|---|---|
| Special Inst. __ | Affirmative Defenses — General | | 1 |
| CACI 1302 | Affirmative Defenses — Consent | WITHDRAWN | |
| 9th Cir. 17.19 | Affirmative Defenses — Abandonment | WITHDRAWN | |
| Special Inst. __ | Affirmative Defenses — 205(d) (Bona Fide Purchaser for Value) | WITHDRAWN | |
| Special Inst. __ | Good Faith | People v. Webb, 74 Cal. App. 4th 688, 694 (1999); 5 B.E. Witkin, Cal. Proc.: Pleadings § 1008 (4th ed. 1997). | 2 |
| Special Inst. __ | Affirmative Defenses — De Minimis Use | WITHDRAWN | |
| Special Inst. __ | Statute of Limitations (Fraudulent Concealment) | Final Pre-Trial Conference Order at 6;.Cal. Civ. Proc. Code §§ 338(c) & 339(1); Forcier v. Microsoft Corp., 123 F. Supp. 2d 520, 530 (N.D. Cal. 2000); Charles Lowe Co. v. Xomox Corp., No. C95-0498 SI, 1999 WL 1293362, at *9 (N.D. Cal. Dec. 27, 1999); Menefee v. Ostawari, 228 Cal. App. 3d 239, 245 (1991); 3 B.E. Witkin, Cal. Procedure: Actions, § 575, at 728 (4th ed. 1996); AmerUS Life Ins. Co. v. Bank of Am., N.A., 143 Cal. App. 4th 631, 639 (2006); Strasberg v. Odyssey Group, Inc., 51 Cal. App. 4th 906, 916 (1996); Garamendi v. SDI Venodome SA, 276 F. Supp. 2d 1030, 1041-42 (C.D. Cal 2003); Snapp & Assoc. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson, 96 Cal. App. 4th 884, 890-891 (2002). | 3 |

# DAMAGES

| No. | Description | Authority | Page |
|---|---|---|---|
| 9th Cir. 5.1 | Damages—Introduction | Ninth Circuit Manual of Model Jury Instructions, Civil, 5.1 (2007) (as modified). | 5 |
| CACI 3925 | Arguments Of Counsel Not Evidence Of Damages | CACI No. 3925 (2008). | 6 |
| CACI 3901 | Introduction To Tort Damages – Liability Established For Intentional Interference With Contractual Relations | CACI No. 3901 (2008) (as modified). | 7 |
| CACI 430 | Causation:  Substantial Factor | WITHDRAWN | |
| Special Inst. __ | Limitations On Damages For Intentional Interference With Contractual Relations | April 25, 2008 Order at 2. | 8 |
| CACI 3901 | Introduction To Tort Damages – Liability Established For Aiding And Abetting Breach Of Fiduciary Duty | CACI No. 3901 (2008) (as modified). | 9 |
| Special Inst. __ | Limitation On Damages For Aiding And Abetting Breach Of Fiduciary Duty | Del Madera Props. v. Rhodes & Gardner, Inc., 820 F.2d 973, 977 (9th Cir. 1987), overruled on other grounds, Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994). | 10 |
| Special Inst. __ | Further Limitation On Damages For Aiding And Abetting Breach Of Fiduciary Duty | People v. Bestline Products, Inc., 61 Cal. App. 3d 879, 919 (1976); Rosenthal v. Gould, 273 Cal.App.2d 239, 243 (1969); Anderson v. Thacher, 76 Cal. App. 2d 50, 72 (1946); Reid v. Robinson, 64 Cal. App. 46, 58 (1923); GAB Business Services, Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000), overruled on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004); Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1407-1408 (9th Cir. 1993).. | 11 |

| CACI 3901 | Introduction To Tort Damages – Liability Established For Aiding And Abetting Breach Of Duty Of Loyalty | CACI No. 3901 (2008) (as modified). | 13 |
|---|---|---|---|
| Special Inst. __ | Limitation On Damages For Aiding And Abetting Breach Of Duty Of Loyalty | Del Madera Props. v. Rhodes & Gardner, Inc., 820 F.2d 973, 977 (9th Cir. 1987), overruled on other grounds, Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994). | 14 |
| Special Inst. __ | Further Limitation On Damages For Aiding And Abetting Breach Of Duty Of Loyalty | Rosenthal v. Gould, 273 Cal.App.2d 239, 243 (1969); Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966); Charles T. Powner, Inc. v. Smith, 91 Cal. App. 101 (1928); Sumner v. Nevin, 4 Cal. App. 347, 350 (1906); Design Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005); Frye-Tech, Inc. v. Harris, 46 F. Supp. 2d 1144 (D. Kan. 1999). | 15 |
| **Special Inst. __** | **Disgorgement Of Profits NEW (8/11/08)** | SEC v. First Pac. Bancorp, 142 F.3d 1186, 1192 (9th Cir. 2001); SEC v. Platforms Wireless Int'l Corp., 2008 U.S. Dist. LEXIS 27503, at **38-39 (S.D. Cal. Apr. 3, 2008). See also Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A., 2007 U.S. Dist. LEXIS 91947, at **62 (N.D. Tex. Dec. 14, 2007); Commodity Futures Trading Comm'n v. American Bd. Of Trade, 803 F.2d 1242, 1251 (2d Cir. 1986); Allstate Ins. Co v. Receivable Fin. Co. LLC, 501 F.3d 398, 413 (5th Cir. 2007); FTC v. Magui Publishers, Inc., 1991 U.S. Dist. LEXIS 20452, at **48-50 (C.D. Cal. Mar. 28, 1991); Oshana v. Coca-Cola Co., 2005 U.S. Dist. LEXIS 14184, at **34-35 (N.D. Ill. July 13, 2005). Cf. Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC, 479 F. Supp. 2d 349, 371 (S.D.N.Y. | **16** |

iii

| | | | |
|---|---|---|---|
| | | 2007). | |
| CACI 2021 | Presumed Measure Of Damages For Conversion (Civ. Code § 3336) | CACI No. 2021 (2008) (modified); Cal. Civ. Code §3336; Melchior v. New Line Productions, Inc., 106 Cal. App. 4th 779 (2003); April 25, 20008 Order, at 3. | 18 |
| 9th Cir. 17.24 | Copyright—Damages—Defendants' Profits (17 U.S.C. § 504(B)) | 9th Cir. Model Civ. Jury Instr. 17.24 (2007); Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 518 (9th Cir. 1985). | 20 |
| Special Inst. __ | Copyright—Damages—Indirect Profits | Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 711, 714 n.10 (9th Cir. 2004). | 22 |
| Special Inst. __ | Choice Of Alternative Methods Of Determining Plaintiff's Damages | A. A. Baxter Corp. v. Colt Indus., Inc., 10 Cal. App. 3d 144, 160 (1970). | 23 |
| 9th Cir. 5.3 | Damages—Duty To Mitigate | Ninth Circuit Manual of Model Jury Instructions, Civil, 5.3 (2007); see also CACI No. 3931 (2008). | 24 |
| Special Inst. __ | Duplicative Damages | Pattern Civ. Jury Instr. 5th Cir. 15.14 (2006) (modified); ; CACI No. 361 (2008); Softel v. Dragon Med. & Scientific Communications, 118 F.3d 955, 969 (2d Cir. 1997); Computer Assocs. Int'l v. Altai, Inc., 982 F.2d 693, 720 (2d Cir. 1992); Stein v. United Artists Corp., 691 F.2d 885, 897 (9th Cir. 1982); Sparaco v. Lawler, Matusky, Skelly Engineers, LLP, 313 F. Supp. 2d 247, 250 (S.D.N.Y. 2004); 4 Nimmer on Copyright § 14.01[C]; Kissell Co. v. Gressley, 591 F.2d 47, 51 (9th Cir. Ariz. 1979); Gidatex, S.r.L. v. Campaniello Imports, Ltd., 82 F. Supp.2d 136, 146 (S.D.N.Y. 2000); Compaq Computer Corp. v. Ergonome Inc., 2001 U.S. Dist. LEXIS 23485 (S.D. Tex. 2001). | 25 |
| 9th Cir. 5.6 | Nominal Damages | Ninth Circuit Manual of Model Civ. Jury Instr. 5.6 (2007) | 27 |

iv

| CACI 3947 | Punitive Damages – Individual And Entity Defendants – Trial Not Bifurcated NEW (8/11/08) | CACI No. 3947. | 28 |

## COPYRIGHT

| No. | Description | Authority | Page |
|-----|-------------|-----------|------|
| Special Inst. __ | Copyright – Preliminary Instruction | | 31 |
| 9th Cir. 17.1 | Copyright – Defined | Ninth Circuit Manual of Model Jury Instructions 17.1 (2007); 17 U.S.C. § 106; 2-8 Nimmer on Copyright §§ 8.01–8.20; 3 Patry on Copyright §§ 8:1, 9:2; 12-76 Nimmer on Copyright § 12.04[A][1]. | 32 |
| 9th Cir. 17.2 | Copyright – Subject Matter – Generally | Ninth Circuit Manual of Model Jury Instructions 17.2 (2007). | 34 |
| 9th Cir. 17.3 | Copyright – Subject Matter – Idea And Expression | Ninth Circuit Manual of Model Jury Instructions 17.3 (2007); U.S. Constitution, Art. I, § 8, cl. 8; Feist Publications, Inc. v. Rural Telephone Co., 499 U.S. 340, 349-50 (1991); Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156 (1975); Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 556-57 (1985). | 35 |
| 9th Cir. 17.4 | Copyright Infringement – Elements – Ownership And Copying | Ninth Circuit Manual Model Jury Instructions 17.4 (2007) (modified to account for Phase 1-A verdict). | 36 |
| 9th Cir. 17.6 | Copyright Interests – Authorship | Ninth Circuit Manual of Model Jury Instructions 17.6 (2007). | 37 |
| 9th Cir. 17.7 | Copyright Interests—Joint Authors (17 U.S.C. §§ 101, 201(A)) | WITHDRAWN PER COURT'S AUGUST 12, 2008 RULING. | |
| 9th Cir. 17.12 | Copyright Interests – Originality | Ninth Circuit Manual of Model Jury Instructions 17.12 (2007). Feist Publications, Inc. v. Rural Telephone | 38 |

| No. | Description | Authority | Page |
|---|---|---|---|
| | | Services, Inc., 499 U.S. 340, 346 (1991); see also Expert Report of Ralph Oman, dated Feb. 25, 2005, in Team Play, Inc. v. Boyer, 03 C 7240 (N.D. Ill. 2005) (Document M-RO-00174); (2007); 17 U.S.C. § 410(c); 37 C.F.R. § 202.20(b)(2)(i) & (ii). | |
| 9th Cir. 17.14 | Compilation (17 U.S.C. § 101) | Ninth Circuit Manual of Model Jury Instructions 17.14 (2007). | 39 |
| 9th Cir. 17.15 | Copying – Access And Substantial Similarity | Ninth Circuit Manual of Model Jury Instructions 17.15 (2007) (modified). See also 4-13 Nimmer on Copyright § 13.03. | 40 |
| **9th Cir. 17.17** | **Copyright Infringement – Extrinsic Test; Intrinsic Test REVISED PER COURT'S RULINGS** | Ninth Circuit Manual of Model Jury Instructions 17.17 (2007); Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1990); Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir. 2004); Mattel v. Goldberger Doll Mfg. Co., 365 F.3d 133, 136 (2d Cir. 2004); Apple Computer, Inc. v. Microsoft Corporation, 35 F.3d 1435, 1447 (9th Cir. 1994); Data East USA, Inc. v. Epyx, Inc., 862 F.2d 204 (9th Cir. 1988); Fryberger v. Int'l Bus. Machines Corp., 812 F.2d 525, 530 (9th Cir. 1987); Thomas v. The Walt Disney Co., 2008 U.S. Dist. LEXIS 14643 (N.D. Cal. Feb. 14, 2008); Bensbargains.Net v. XPBargains.Com, 2007 U.S. Dist. LEXIS 60544 at 8–10 (S.D. Cal. Aug. 16, 2007); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176 (C.D. Cal. 2001). Nimmer on Copyright § 13.03[B]. | **41** |
| **Special Inst. __** | **Hong Kong Law NEW (8/13/08)** | Fossil, Inc. v. Trimset Ltd., [2003] 3 HKLRD 11, 2003 WL 17991 (Hong Kong Court of First Instance May 14, 2003) | **46** |
| Special | Copyright Infringement – | 1-2 Nimmer on Copyright § | 47 |

vi

| No. | Description | Authority | Page |
|-----|-------------|-----------|------|
| Inst. __ | Comparing A Two-Dimensional Work With A Three-Dimensional Work | 2.08(C)(2). | |
| Special Inst. __ | Copyright Infringement – Multiple Copyright Registrations | Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1144 n.31 (C.D. Cal. 2001); Green v. Schwarzenegger, 1995 U.S. Dist. LEXIS 14031 at ** 61-62 (C.D. Cal. July 17, 1995); 9 Patry on Copyright § 9:66 (2008). | 48 |
| 9th Cir. 17.20 | Derivative Liability: Vicarious Infringement | Ninth Circuit Manual of Model Jury Instructions 17.20 (2007). | 49 |
| 9th Cir. 17.21 | Derivative Liability: Contributory Infringement | Ninth Circuit Manual of Model Jury Instructions 17.21 (2007). | 50 |
| **9th Cir. 17.27** | **Willful Infringement NEW (8/13/08)** | Ninth Circuit Manual of Model Jury Instructions 17.27 (2007). | **52** |

MGA Parties' Second Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**PHASE 1-B – Affirmative Defenses**

## INSTRUCTION NO. ____

## AFFIRMATIVE DEFENSES — GENERAL

I will now instruct you on the affirmative defenses raised by MGA Entertainment, Inc. ("MGA"), Isaac Larian ("Larian"), and MGA Entertainment (HK), Ltd. ("MGA (HK)").

1

# INSTRUCTION NO. _____

# GOOD FAITH

The good faith of Larian, MGA, and MGA (HK) is a factor that should be considered when assessing any claim by Mattel that Larian, MGA, and/or MGA (HK) acted in bad faith or with bad intent.  To the extent Mattel's claims implicate defendants' intent or mental state, good faith is a relevant inquiry for which Mattel bears the burden of proof.

**Authority:** <u>People v. Webb</u>, 74 Cal. App. 4th 688, 694 (1999); 5 B.E. Witkin, <u>Cal. Proc.: Pleadings</u> § 1008 (4th ed. 1997) (distinguishing new matters from facts constituting a denial of an element and identifying good faith as the latter and, thus, not an affirmative defense).

**INSTRUCTION NO. ___**

**STATUTE OF LIMITATIONS - FRAUDULENT CONCEALMENT**

Mattel's intentional interference with contract claim and conversion claims were <u>not</u> filed within the time set by law.  However, Mattel contends that the doctrine of "fraudulent concealment" saves its claims.

Isaac Larian and MGA have proven that Mattel did not file its intentional interference claims against them within two years of the occurrence of the acts that Mattel contends were wrongful, in this case, the breach of Carter Bryant's contracts with Mattel.  Larian, MGA, and MGA (HK) have proven that Mattel did not file its conversion claims within three years of the act of wrongfully taking the property that Mattel contends was converted.  Thus, Mattel's claim is barred unless Mattel can prove that Larian or MGA fraudulently concealed the facts on which it based its claims.

In order to prove fraudulent concealment, Mattel must show:

    1.    Larian, MGA, or MGA(HK) took affirmative steps to conceal the information Mattel would have needed to suspect that wrongdoing had taken place; <u>and</u>

    2.    Mattel was not aware, and could not have been aware, that wrongdoing had taken place.  If Mattel was aware or could have been aware that wrongdoing had taken place, it does not matter what lengths any defendant may have gone to try to conceal the wrong.

**Authority:**  Final Pre-Trial Conference Order at 6; Cal. Civ. Proc. Code §§ 338(c) & 339(1); <u>Forcier v. Microsoft Corp.</u>, 123 F. Supp. 2d 520, 530 (N.D. Cal. 2000); <u>Charles Lowe Co. v. Xomox Corp.</u>, No. C95-0498 SI, 1999 WL 1293362, at *9 (N.D. Cal. Dec. 27, 1999); <u>Menefee v. Ostawari</u>, 228 Cal. App. 3d 239, 245 (1991); 3 B.E. Witkin, <u>Cal. Procedure: Actions</u>, § 575, at 728 (4th ed. 1996); <u>AmerUS Life Ins. Co. v. Bank of Am.</u>,

3

N.A., 143 Cal. App. 4th 631, 639 (2006); Strasberg v. Odyssey Group, Inc., 51 Cal. App. 4th 906, 916 (1996); Garamendi v. SDI Venodome SA, 276 F. Supp. 2d 1030, 1041-42 (C.D. Cal 2003) ("Although a culpable defendant cannot be permitted to benefit from intentional concealment, any period of equitable tolling will come to an end once the plaintiff has, or should have, notice of his claim."); Snapp & Assoc. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson, 96 Cal. App. 4th 884, 890-891 (2002) ("The fraudulent concealment doctrine 'does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim.'").

*MGA Parties' Second Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)*

**PHASE 1-B – Damages**

**INSTRUCTION NO. 5.1**

**DAMAGES — INTRODUCTION**

In Phase 1A, you found in favor of Mattel as to the following claims: intentional interference with contractual relations, aiding and abetting breach of fiduciary duty, aiding and abetting breach of the duty of loyalty, and conversion.  You must now determine Mattel's damages.  Mattel has the burden of proving damages by a preponderance of the evidence.  Damages means the amount of money that will reasonably and fairly compensate Mattel for any injury you find was caused by the defendants.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

**Authority:**   Ninth Circuit Manual of Model Jury Instructions, Civil, 5.1 (2007) (as modified).

## INSTRUCTION NO. 3925

## ARGUMENTS OF COUNSEL NOT EVIDENCE OF DAMAGES

The arguments of the attorneys are not evidence of damages.  The amount of damages that Mattel has claimed in its written pleadings is not evidence of Mattel's damages.   Your award must be based on your reasoned judgment applied to the testimony of the witnesses and the other evidence that has been admitted during trial.

**Authority:**  CACI No. 3925 (2008)

6

## INSTRUCTION NO. 3901

## INTRODUCTION TO TORT DAMAGES –

## LIABILITY ESTABLISHED FOR

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

If you decide that Mattel was harmed by MGA's and/or Mr. Larian's interference with Mattel's contract with Carter Bryant, you must first decide whether that interference was a substantial factor in causing the harm to Mattel.

If the interference was a substantial factor, you must then decide how much money will reasonably compensate Mattel for the harm resulting from MGA's and/or Mr. Larian's interference. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by the intentional interference, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

[Lost Profits]

[Loss or Destruction of Personal Property]

**Authority**:  CACI No. 3901 (2008) (as modified)

### INSTRUCTION NO. \_\_\_\_

### LIMITATIONS ON DAMAGES FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

In measuring damages under Mattel's claim of intentional interference, you are to consider only those monetary losses (if any) that Mattel suffered as a result of MGA and Mr. Larian's interference with Mattel's contract with Carter Bryant.  You may not consider the MGA Parties' interference (if any) with Mattel's rights to Bratz or any of the revenues, profits, or other benefits realized by MGA or Mr. Larian from Bratz dolls or related products

**Authority**: April 25, 2008 Order Granting in Part, Denying in Part, and Deferring in Part the Parties' Motions for Partial Summary Judgment, at 2 ("[T]he tortuous interference with contract claim is preempted to the extent that it is based on Mattel's rights to Bratz.").

## INSTRUCTION NO. 3901

## INTRODUCTION TO TORT DAMAGES –
## LIABILITY ESTABLISHED FOR
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

If you decide that Mattel was harmed by MGA's aiding and abetting of Carter Bryant's breach of his fiduciary duty to Mattel, you must decide whether one or more specific acts of misconduct was a substantial factor in causing the harm to Mattel.

If you decide that one or more specific acts of misconduct were substantial factors, you must then decide how much money will reasonably compensate Mattel for the harm caused by the specific conduct. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by MGA and Mr. Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

   [Lost Profits]

   [Loss or Destruction of Personal Property]

**Authority**:  CACI No. 3901 (2008) (as modified).

9

**INSTRUCTION NO. ____**

**LIMITATION ON DAMAGES FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY  (PREEMPTION)**

In determining the amount of damages to award in connection with Mattel's claim that MGA and Isaac Larian aided and abetted Carter Bryant's breach of his fiduciary duty to Mattel,  you <u>may not </u>consider any revenues, profits or other financial benefits that MGA realized from the use of Mr. Bryant's sketches.

**Authority**:  <u>Del Madera Props. v. Rhodes & Gardner, Inc.</u>, 820 F.2d 973, 977 (9th Cir. 1987), <u>overruled on other grounds</u>, <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517 (1994).

**INSTRUCTION NO. _____**

**FURTHER LIMITATION ON DAMAGES FOR AIDING AND ABETTING**

**BREACH OF FIDUCIARY DUTY**

In connection with Mattel's claim thaT MGA and Isaac Larian aided and abetted Mr. Bryant's breach of his fiduciary duty, Mattel's recovery is limited to pecuniary losses caused by Mr. Bryant's breach, and any profits or other gains realized by Mr. Bryant as a result of his breach.

You may not, however, award profits or other benefits that MGA and/or Mr. Larian realized from Bratz in connection with this claim.

**Authority:** People v. Bestline Products, Inc., 61 Cal. App. 3d 879, 919 (1976) ("One who knowingly aids and abets a fiduciary to make secret profits may be held liable jointly with the fiduciary for such secret profits."); Rosenthal v. Gould, 273 Cal.App.2d 239, 243 (1969) ("it is equally clear that their liability is co-extensive with Gould's if, as determined by the trier of the fact, they conspired with Gould and aided and abetted him in the breach of his fiduciary obligations.");  Anderson v. Thacher, 76 Cal.App.2d 50, 72 (1946) ("And where, after the violation of a fiduciary obligation, an amount is found to be due from the agent, judgment for the same amount may also be rendered against those proven to have fraudulently aided in the attempt of the fiduciary to obtain secret profits, although they themselves are not fiduciaries, and even though they receive no share of the profits."); Reid v. Robinson, 64 Cal. App. 46, 58 (1923) ("the law of torts is to the effect that every person concerned in a wrong to another which results in damage is liable therefor, irrespective of the degree in which he therein participates and entirely without reference to the benefits which he may receive on account thereof."); GAB Business Services, Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000), overruled on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004) (damages for breach of

11

fiduciary duty were expenses incurred to recruit new employees); <u>Lindy Pen Co. v. Bic Pen Corp.</u>, 982 F.2d 1400, 1407-1408 (9th Cir. 1993) (affirming lower court's rejection of damage theory because it did not provide a reasonable basis for computation).

## INSTRUCTION NO. 3901

## INTRODUCTION TO TORT DAMAGES –

## LIABILITY ESTABLISHED FOR

## AIDING AND ABETTING BREACH OF DUTY OF LOYALTY

If you decide that Mattel was harmed by MGA's and/or Isaac Larian's aiding and abetting of Carter Bryant's breach of his duty of loyalty to Mattel, you must decide whether that specific conduct was a substantial factor in causing the harm to Mattel.

If you decide that MGA and/or Mr. Larian's specific conduct was a substantial factor, you must then decide how much money will reasonably compensate Mattel for the harm. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by MGA and Mr. Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

    [Lost Profits]

    [Loss or Destruction of Personal Property]

**Authority**:  CACI No. 3901 (2008).

# INSTRUCTION NO. ____

# LIMITATION ON DAMAGES FOR AIDING AND ABETTING BREACH OF DUTY OF LOYALTY (PREEMPTION)

In determining the amount of damages to award Mattel in connection with its claim that MGA and Isaac Larian aided and abetted Carter Bryant's breach of his duty of loyalty, you *may not* consider any revenues, profits or other financial benefits that MGA realized from the use of Carter Bryant's sketches.

**Authority**:  Del Madera Props. v. Rhodes & Gardner, Inc., 820 F.2d 973, 977 (9th Cir. 1987), overruled on other grounds, Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994).

**INSTRUCTION NO. \_\_\_\_**

**FURTHER LIMITATION ON DAMAGES FOR AIDING AND ABETTING BREACH OF DUTY OF LOYALTY**

In connection with Mattel's claim than MGA and Isaac Larian aided and abetted Mr. Bryant's breach of his fiduciary duty of loyalty, Mattel's recovery is limited to pecuniary losses caused by Mr. Bryant's breach, and any profits or other gains realized by Mr. Bryant as a result of his breach.

You may not, however, award profits or other benefits that MGA and/or Mr. Larian realized from Bratz in connection with this claim beyond those realized by Mr. Bryant as a result of his breach.

**Authority:** Rosenthal v. Gould, 273 Cal.App.2d 239, 243 (1969) ("it is equally clear that their liability is co-extensive with Gould's if, as determined by the trier of the fact, they conspired with Gould and aided and abetted him in the breach of his fiduciary obligations."); Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966) (remanding to assess damage to plaintiff book publisher for the costs incurred to replace personnel recruited by president and competitor using confidential information in breach of president's fiduciary duty); Charles T. Powner, Inc. v. Smith, 91 Cal. App. 101 (1928) (damages were profits on directly competitive sales resulting from use of employer's time and facilities); Sumner v. Nevin, 4 Cal. App. 347, 350 (1906) (damages were commissions received by disloyal employee while still employed); Design Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005) (damages were amount of salary earned during time employee was disloyal, and not the profits from a contract that evidence showed employer would not have been awarded); Frye-Tech, Inc. v. Harris, 46 F. Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of resources including employee time used to develop competing products).

1

2

3

**INSTRUCTION NO. _____**

**DISGORGEMENT OF PROFITS**

4  Mattel is entitled to obtain disgorgement of profits that MGA and Isaac Larian obtained by

5  engaging in the wrongful acts of aiding and abetting breach of fiduciary duty and duty of

6  loyalty that you have found.   Accordingly, if you find that MGA and/or Mr. Larian

7  obtained profits or advantages because of these wrongful acts, those profits and advantages

8  should be awarded to Mattel.

9

10  **Authority**: SEC v. First Pac. Bancorp, 142 F.3d 1186, 1192 (9th Cir. 2001) (finding that a

11  disgorgement award requires a "reasonable approximation of profits causally connected to

12  the violation"); SEC v. Platforms Wireless Int'l Corp., 2008 U.S. Dist. LEXIS 27503, at

13  **38-39 (S.D. Cal. Apr. 3, 2008) (vacating a disgorgement order where the "causal

14  connection between the profits and [the defendant's] violation [was] too speculative to

15  support disgorgement").   See also Super Future Equities, Inc. v. Wells Fargo Bank Minn.,

16  N.A., 2007 U.S. Dist. LEXIS 91947, at *62 (N.D. Tex. Dec. 14, 2007) (finding that

17  plaintiff was "not entitled to disgorgement" because plaintiff had "not offered a reasonable

18  approximation of what the Defendants [had] earned as a result of their alleged breach of

19  fiduciary duties"); Commodity Futures Trading Comm'n v. American Bd. Of Trade, 803

20  F.2d 1242, 1251 (2d Cir. 1986) ("Normally, where the defendant has received benefits

21  from both lawful and unlawful activities, the party seeking disgorgement must distinguish

22  between the legally and illegally derived profits"); Allstate Ins. Co v. Receivable Fin. Co.

23  LLC, 501 F.3d 398, 413 (5th Cir. 2007) (reversing a disgorgement award and explaining

24  that "the party seeking disgorgement must distinguish between that which has been legally

25  and illegally obtained"; also explaining that in a "private action, the party seeking

26  monetary compensation [through disgorgement] may have a greater burden to prove its

27  claim to the amount requested" than in an action brought by a public entity like the SEC);

28  FTC v. Magui Publishers, Inc., 1991 U.S. Dist. LEXIS 20452, at **48-50 (C.D. Cal. Mar.

16

28, 1991) (explaining in an FTC action that the threshold requirements for an award of disgorgement require a showing that "the defendant profited from violations of the FTC Act," "that the profits are causally related to the violations," and "that the disgorgement figure reasonably approximates the amount of unjust enrichment"); Oshana v. Coca-Cola Co., 2005 U.S. Dist. LEXIS 14184, *34-35 (N.D. Ill. July 13, 2005) ("Any disgorgement award must be traceable to her individual injury. Accordingly, Oshana's disgorgement remedy is limited to only those ill-gotten gains that Coca-Cola obtained from her in connection with its alleged illegal conduct"). Cf. Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC, 479 F. Supp. 2d 349, 371 (S.D.N.Y. 2007) ("In the aiding and abetting context, a plaintiff must allege that the defendant's substantial assistance in the primary violation proximately caused the harm on which the primary liability is predicated. Plaintiffs must allege more than but-for causation.  They must allege also that their injury was 'a direct or reasonably foreseeable result of the conduct.'").

## INSTRUCTION NO. 2021

## PRESUMED MEASURE OF DAMAGES FOR CONVERSION (CIV. CODE § 3336)

In Phase 1(a) of this trial, you found that MGA, Isaac Larian and MGA Hong Kong converted Mattel's property.  You must now decide how much money will reasonably compensate Mattel for the harm. This compensation is called "damages."

Mattel must prove the amount of its damages. However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

    1  The fair market value of the sketches and other tangible items that Mr. Bryant created at Mattel and provided to MGA, Mr. Larian, and MGA Hong Kong; and

    2  Reasonable compensation for the time and money spent by Mattel in attempting to recover the tangible items.

"Fair market value" is measured as of the time the item was converted.

"Fair market value" is the highest price that a willing buyer would have paid to a willing seller, assuming: 1) that there is no pressure on either one to buy or sell; and 2) that the buyer and seller know all the uses and purposes for which the sketches and tangible items are reasonably capable of being used.

Conversion does not apply to ideas.  Therefore, in determining the fair market value of Mr. Bryant's sketches and other tangible items converted, you are not to consider the value of

1    Mr. Bryant's ideas.

2

3    **Authorities**:  CACI No. 2021 (2008) (modified); Cal. Civ. Code §3336; <u>Melchior v. New</u>

4    <u>Line Productions, Inc.</u>, 106 Cal. App. 4th 779 (2003); April 25, 20008 Order, at 3.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 17.24**

**COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS (17 U.S.C. § 504(b))**

If you find that MGA infringed Mattel's copyrights, Mattel is entitled to MGA's profits that are attributable to the infringement.

You may make an award of MGA's profits only if you find that Mattel has showed a causal relationship between the infringement and the defendant's gross revenue.

MGA's profit is determined by subtracting all expenses from the defendant's gross revenue.

MGA's gross revenue is all of the MGA's receipts from the sale of a product containing or using the copyrighted work. Mattel has the burden of proving MGA's gross revenue by a preponderance of the evidence.

Expenses are all operating costs and production costs incurred in producing the defendant's gross revenue. The defendant has the burden of proving the defendant's expenses by a preponderance of the evidence.

If you find that MGA's profits were derived from both infringing and non-infringing activities, not all of MGA's profits can be attributed to the infringement. MGA has the burden of proving the percentage of the profit, if any, attributable to factors other than infringing the copyrighted work.

MGA is not required to prove with precision the percentage of its profits attributable to factors other than the infringement, so long as the apportionment is reasonable and just.

1   **Authorities**:  9th Cir. Model Civ. Jury Instr. 17.24 (2007*)*; <u>Frank Music Corp. v. Metro-</u>

2   <u>Goldwyn-Mayer, Inc.</u>, 772 F.2d 505, 518 (9th Cir. 1985).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. ___**

**COPYRIGHT—DAMAGES—INDIRECT PROFITS**

Mattel seeks indirect profits in this case.  Indirect profits have a less direct connection or link to the infringement.  To recover indirect profits, Mattel must establish a non-speculative, causal relationship between the infringement and the profits generated indirectly from such infringement.

**Authorities**:  <u>Polar Bear Productions, Inc. v. Timex Corp.</u>, 384 F.3d 700, 711, 714 n.10 (9th Cir. 2004).

MGA Parties' Second Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

# INSTRUCTION NO. ___

## CHOICE OF ALTERNATIVE METHODS OF DETERMINING PLAINTIFF'S DAMAGES

If you determine that an award of damages is warranted by the facts and these instructions, you must select a method of damages for determining the amount of damages.  Select the method that you find produces the most accurate and certain result.  However, if you find that find that either of two methods produces a result that is certain and accurate and will fully compensate plaintiff, you should use the method that produces the lowest amount of damages.

**Authority:**  <u>A. A. Baxter Corp. v. Colt Indus., Inc.</u>, 10 Cal. App. 3d 144, 160 (1970).

## INSTRUCTION NO. 5.3

## DAMAGES—DUTY TO MITIGATE

The plaintiff has a duty to use reasonable efforts to mitigate damages.  To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

      1.    that the plaintiff failed to use reasonable efforts to mitigate damages; and

      2.    the amount by which damages would have been mitigated.

**Authority:**   Ninth Circuit Manual of Model Jury Instructions, Civil, 5.3 (2007); see also CACI No. 3931 (2008).

## INSTRUCTION NO.

## DUPLICATIVE DAMAGES

You may find that Mattel is entitled to damages awards under multiple claims.  However, you may not award compensatory damages more than once for the same injury or harm.  Mattel is only entitled to be made whole once, and may not recover more than what was lost.  Of course, if you find that different injuries are attributed to the separate claims, then you must compensate Mattel fully for all injuries.

You may also find that Mattel is entitled to damage awards from multiple defendants.  However, you may not award damages more than once for the same injury or harm.  Also, you may not award the same profits from two separate defendants.  Mattel is only entitled to be made whole once, and may not recover more than what was lost.

**Authority**:  Pattern Civ. Jury Instr. 5th Cir. 15.14 (2006) (modified); ; CACI No. 361 (2008); Softel v. Dragon Med. & Scientific Communications, 118 F.3d 955, 969 (2d Cir. 1997) (upholding district court's refusal to award damages on trade secret claim because such damages would have been "coextensive with the damages it had already awarded for copyright infringement"); Computer Assocs. Int'l v. Altai, Inc., 982 F.2d 693, 720 (2d Cir. 1992) (finding that a plaintiff "may not obtain a double recovery where the damages for copyright infringement and trade secret misappropriation are coextensive."); Stein v. United Artists Corp., 691 F.2d 885, 897 (9th Cir. 1982) (dismissing claim where "danger of double recovery [was] manifest"); Sparaco v. Lawler, Matusky, Skelly Engineers, LLP, 313 F. Supp. 2d 247, 250 (S.D.N.Y. 2004) ("the plaintiff could not receive 'double recovery where the damages for the copyright infringement and trade secret misappropriation are coextensive."); 4 Nimmer on Copyright § 14.01[C] ("When violation of two distinct rights results from the same conduct, multiple recoveries are permissible - but only to the extent that two different types of harm have been suffered."); Kissell Co. v.

25

1    <u>Gressley</u>, 591 F.2d 47, 51 (9th Cir. Ariz. 1979) (remanding to "the trial court to reduce

2    [plaintiff's] judgment" because of duplicative recovery); <u>Gidatex, S.r.L. v. Campaniello</u>

3    <u>Imports, Ltd.</u>, 82 F. Supp.2d 136, 146 (S.D.N.Y. 2000) ("In determining whether the two

4    damages awards are coextensive, the key inquiry is whether the awards address the same

5    injury"); <u>Compaq Computer Corp. v. Ergonome Inc.</u>, 2001 U.S. Dist. LEXIS 23485 (S.D.

6    Tex. 2001) ("The fraud damages are merely coextensive with the infringement damages.").

# INSTRUCTION NO. 5.6

# NOMINAL DAMAGES

The law which applies to this case authorizes an award of nominal damages. If you find for the plaintiff but you find that the plaintiff has failed to prove damages as defined in these instructions, you must award nominal damages. Nominal damages may not exceed one dollar.

**Authority:**  Ninth Circuit Manual of Model Civ. Jury Instr. 5.6 (2007).

27

## CACI NO. 3947

## PUNITIVE DAMAGES – INDIVIDUAL AND ENTITY DEFENDANTS – TRIAL NOT BIFURCATED

If you decide that MGA's or Mr. Larian's conduct caused Mattel harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against Mr. Larian only if Mattel proves by clear and convincing evidence that Mr. Larian engaged in that conduct with malice, oppression, or fraud.

You may award punitive damages against MGA only if Mattel proves that MGA acted with malice, oppression, or fraud. To do this, Mattel must prove one of the following by clear and convincing evidence:

1. That the malice, oppression, or fraud was conduct of one or more officers, directors, or managing agents of MGA, who acted on behalf of MGA; or

2. That an officer, a director, or a managing agent of MGA had advance knowledge of the unfitness of another officer, director, or managing agent of MGA and employed that person with a knowing disregard of the rights or safety of others; or

3. That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of MGA; or

4. That one or more officers, directors, or managing agents of MGA knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it had occurred.

28

1

2   "Malice" means that a defendant acted with intent to cause injury or that a defendant's

3   conduct was despicable and was done with a willful and knowing disregard of the rights or

4   safety of another.  A defendant acts with knowing disregard when the defendant is aware

5   of the probable dangerous consequences of his, her, or its conduct and deliberately fails to

6   avoid those consequences.

7

8   "Oppression" means that a defendant's conduct was despicable and subjected Mattel to

9   cruel and unjust hardship in knowing disregard of its rights.

10

11  "Despicable conduct " is conduct that is so vile, base, or contemptible that it would be

12  looked down on and despised by reasonable people.

13

14  "Fraud" means that a defendant intentionally misrepresented or concealed a material fact

15  and did so intending to harm Mattel.

16

17  An employee is a "managing agent" if he or she exercises substantial independent

18  authority and judgment in his or her corporate decision making such that his or her

19  decisions ultimately determine corporate policy.

20

21  There is no fixed formula for determining the amount of punitive damages, and you are not

22  required to award any punitive damages.  If you decide to award punitive damages, you

23  should consider all of the following separately for each defendant in determining the

24  amount:

25

26      (a) How reprehensible was that defendant's conduct? In deciding how reprehensible a

27          defendant's conduct was, you may consider, among other factors:

28

1.  Whether the conduct caused physical harm;

2.  Whether the defendant disregarded the health or safety of others;

3.  Whether Mattel was financially weak or vulnerable and the defendant knew Mattel was financially weak or vulnerable and took advantage of it;

4.  Whether the defendant's conduct involved a pattern or practice; and

5.  Whether the defendant acted with trickery or deceit.

(b) Is there a reasonable relationship between the amount of punitive damages and Mattel's harm or between the amount of punitive damages and potential harm to Mattel that the defendant knew was likely to occur because of its conduct?  Punitive damages may not be used to punish a defendant for the impact of its alleged misconduct on persons other than Mattel.

(c) In view of the defendant's financial condition, what amount is necessary to punish it and discourage future wrongful conduct?  You may not increase the punitive award above an amount that is otherwise appropriate merely because a defendant has substantial financial resources.  Any award you impose may not exceed that defendant's ability to pay.

**Authority:** CACI No. 3947.

**PHASE 1-B – Copyright**

## INSTRUCTION NO.

## PRELIMINARY INSTRUCTION

Based on your findings in Phase 1-A of this trial regarding when certain drawings were "created" by Carter Bryant, the Court has determined as a matter of law that Mattel owns the copyrights to Mr. Bryant's drawings.  Mattel alleges that MGA's Bratz-related products have infringed their copyrights in Mr. Bryant's drawings.  The Court has also determined that Mattel's copyright claims are limited to the 16 Bryant drawings that Mattel has registered with the Copyright Office.  Those drawings are as follows: TX [302] [VA 1-378-648, VA 1-378-649, VA 1-378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653, VA 1-378-654, VA 1-378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-378-659, VA 1-378-660, VAu 715-270, VAu 715-271 and VAu 715-273.]

MGA denies that any of its Bratz products infringe Mattel's copyrights.

**Authority:**  Given the number of drawings at issue in the Phase 1-A trial, it is important that the jury understand that Mattel's infringement claims are limited to the 16 registered drawings listed in the Final Pretrial Conference Order.

## INSTRUCTION NO. 17.1

## COPYRIGHT – DEFINED

Copyright is the exclusive right to copy.  This right to copy includes the exclusive right to:

1.      Authorize or make additional copies, or otherwise reproduce the copyrighted work;

2.      Recast, transform, adapt the work, that is prepare derivative works based upon the copyrighted work;

3.      Distribute copies of the copyrighted work to the public by sale or other transfer of ownership;

4.      Display publicly a copyrighted pictorial work or graphic work.

It is the owner of a copyright who may exercise these exclusive rights.  In general, copyright law protects against reproduction, adaptation, distribution and display of substantially similar copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in a lawsuit for copyright infringement.  As I mentioned, the Court has determined that your determination of whether Mattel's copyrights have been infringed should be limited to the 16 Bryant drawings that Mattel has registered with the Copyright Office.

Mere possession of a work protected by copyright does not constitute infringement.  That Carter Bryant and MGA had possession of Mr. Bryant's drawings, and made reference to them, is not copyright infringement, just like a person who owns and reads a book has not

32

infringed the copyright of the book's publisher or author.  [<u>Lapham v. Porach</u>, 2007 U.S. Dist. LEXIS 30751, at *15 (S.D.N.Y. Apr. 25, 2007).]

You must consider each defendant's acts separately to determine whether that defendant has engaged in an act that is an infringement of Mattel's copyrights.

**Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.1 (2007); 17 U.S.C. § 106; 2-8 <u>Nimmer on Copyright</u> §§ 8.01–8.20; 3 <u>Patry on Copyright</u> §§ 8:1, 9:2; 12-76 Nimmer on Copyright § 12.04[A][1].

## INSTRUCTION NO. 17.2

## COPYRIGHT – SUBJECT MATTER – GENERALLY

The 16 Bryant drawing that Mattel has registered with the Copyright Office are known as pictorial works, which includes such things as works of fine art, graphic and applied art, photographs, prints and art reproductions.

It is agreed by the parties that the 16 registered drawings are copyrighted original works of authorship.  Only that part of the drawings comprised of original works of authorship fixed in any tangible medium of expression from which is can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device is protected by the Copyright Act.

Copyright protection for an original work of authorship does not extend to any facts, ideas or concepts, regardless of the form in which it is described, explained, illustrated, or embodied.

**Authority:**  Ninth Circuit Manual of Model Jury Instructions 17.2 (2007).

# INSTRUCTION NO. 17.3

## COPYRIGHT – SUBJECT MATTER – IDEA AND EXPRESSION

Copyright law allows the owner of an original work to prevent others from copying the way or form the author used to express the ideas in the author's work.  Only the particular original expression of an idea can be copyrighted.  Copyright law does not give the author the right to prevent others from copying or using the underlying facts, ideas or concepts contained in the work.

The right to exclude others from copying extends only to how the author expressed the facts, ideas or concepts in the copyrighted work.  The copyright is not violated when someone uses a fact, idea or concept from a copyrighted work, as long as the particular way of expressing that fact, idea or concept in the work is not copied.

Copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work.  This principle, known as the idea/expression or fact/expression dichotomy, applies to all works of authorship.

**Authority**: Ninth Circuit Manual of Model Jury Instructions 17.3 (2007); U.S. Constitution, Art. I, § 8, cl. 8; Feist Publications, Inc. v. Rural Telephone Co., 499 U.S. 340, 349-50 (1991); Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156 (1975); Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 556-57 (1985).

## <u>INSTRUCTION NO. 17.4</u>

## <u>COPYRIGHT INFRINGEMENT – ELEMENTS – OWNERSHIP AND COPYING</u>

Anyone who copies original elements of a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

On Mattel's copyright infringement claim, Mattel has the burden of proving by a preponderance of the evidence that each defendant copied original elements from the 16 Bryant drawings registered with the Copyright Office.

If you find that Mattel has proved this for each defendant, your verdict should be for Mattel.  If, on the other hand, Mattel has failed to prove this for any defendant, your verdict should be for that defendant.

**Authority**:   Ninth Circuit Manual Model Jury Instructions 17.4 (2007) (modified to account for Phase 1-A verdict).

## INSTRUCTION NO. 17.6

## COPYRIGHT INTERESTS – AUTHORSHIP

The creator of an original work is called the author of that work.  An author originates or "masterminds" the original work, controlling the whole work's creation and causing it to come into being.

Others may help or may make valuable or creative contributions to a work.  However, such a contributor cannot be the author of the work unless that contributor caused the work to come into being.  One must translate an idea into a fixed, tangible expression in order to be the author of the work.  Merely giving an idea to another does not make the giver an author of a work embodying that idea.

**Authority:**  Ninth Circuit Manual of Model Jury Instructions 17.6 (2007).

## <u>INSTRUCTION NO. 17.12</u>

## <u>COPYRIGHT INTERESTS – ORIGINALITY</u>

An original work like Bryant's drawings may include or incorporate elements taken from prior works or works from the public domain.  The original parts of Bryant's drawings are the parts created:

      1.     independently by Bryant, that is, that Bryant did not copy it from another work; and

      2.     by use of at least some minimal creativity.

In copyright law, the "original element" of a work need not be new or novel.

It is not disputed that the 16 registered Bryant drawings are, as a whole, sufficiently original to satisfy the "minimal creativity" portion of this test.  It is disputed, however, whether the individual elements in these drawings are in and of themselves "original." That the Bryant drawings were accepted by the Copyright Office for registration does not determine the degree, scope, or amount of original, protected expression in the drawings.

**Authority**: Ninth Circuit Manual of Model Jury Instructions 17.12 (2007).  <u>Feist Publications, Inc. v. Rural Telephone Services, Inc.</u>, 499 U.S. 340, 346 (1991) (originality standard is low; "a modicum of creativity"); <u>see also</u> Expert Report of Ralph Oman, dated Feb. 25, 2005, in <u>Team Play, Inc. v. Boyer</u>, 03 C 7240 (N.D. Ill. 2005) (Document M-RO-00174); (2007); 17 U.S.C. § 410(c); 37 C.F.R. § 202.20(b)(2)(i) & (ii).

## INSTRUCTION NO. 17.14

## COMPILATION (17 U.S.C. § 101)

An owner is entitled to copyright protection of a compilation.  A compilation is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.

The owner of a compilation may enforce the right to exclude others in an action for copyright infringement.

**Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.14 (2007).

# INSTRUCTION NO. 17.15

## COPYING – ACCESS AND SUBSTANTIAL SIMILARITY

Instruction 17.4 states that Mattel has the burden of proving that the defendants copied original elements from the 16 registered Bryant drawings.   Mattel may show the defendants copied from the work by showing by a preponderance of the evidence that the defendants had access to the 16 registered Bryant drawings and that there are substantial similarities between the defendant's work and original elements of the 16 registered Bryant drawings.  MGA's access to the Bryant drawings is not disputed.

**Authority:**   Ninth Circuit Manual of Model Jury Instructions 17.15 (2007) (modified). See also 4-13 Nimmer on Copyright § 13.03 ("even where the fact of copying is conceded, no legal consequences will follow from that fact unless the copying is substantial").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INSTRUCTION NO. _____**

**COPYRIGHT INFRINGEMENT – INDEPENDENT CREATION**

Even if Mattel proves that MGA had access to the 16 Bryant sketches and that particular Bratz dolls are substantially similar to certain of these sketches, this only creates a presumption of illegal copying.  MGA may rebut that presumption with evidence that the Bratz dolls are the product of independent creation, and were not copied from the 16 Bryant sketches.  If MGA presents evidence of independent creation, then you should weigh all of the evidence bearing in mind that Mattel bears the burden of proving that MGA copied the 16 Bryant sketches.

**Authority**:  Three Boys Music Corp. v. Bolton, 212 F.3d 477, 486 (9th Cir. 2000) ("By establishing reasonable access and substantial similarity, a copyright plaintiff creates a presumption of copying. The burden shifts to the defendant to rebut that presumption through proof of independent creation.") (citing Granite Music Corp. v. United Artists Corp., 532 F.2d 718, 721 (9th Cir. 1976)); see also Moore v. Kulicke & Soffa Industries, Inc., 318 F.3d 561 (3d Cir. 2003); Keeler v. Brass Co. v. Continental Brass Co., 862 F.2d 1063 (4th Cir. 1988); Don Post Studios, inc. v. Cinema Secrets, Inc., 124 F. Supp. 2d 311 (E.D. Pa. 2000).

## INSTRUCTION NO. 17.17

## COPYRIGHT INFRINGEMENT – EXTRINSIC TEST; INTRINSIC TEST

## -REVISED-

To determine whether the Bratz dolls infringe Mattel's copyrights in the 16 registered Bryant drawings, you must engage in a two-step analysis. The first step is called the "extrinsic" test. If necessary, this is followed by the second step of the analysis, which is called the "intrinsic" test.

Stated generally, the "extrinsic" test considers whether two works share substantial similarity of ideas and expression as measured by external, objective criteria, while the "intrinsic" test considers whether a reasonable person (or in this case, a 8-12 year old girl) would perceive a substantial similarity in the "total concept and feel" of each work.

You should keep in mind that what is required to find infringement is not simply general "similarity" of the works but "substantial similarity" of protected elements of those works.

I will explain each of these tests in turn.

THE EXTRINSIC TEST

The "extrinsic" test removes from the analysis of infringement those elements of the copyrighted work that are not entitled to copyright protection. The party claiming infringement – here, Mattel – cannot rely on any similarity in expression resulting from unprotectible elements.

1  I have determined, and am instructing you, that the following elements of the 16 Carter
2  Bryant drawings at issue in this part of the trial are not entitled to protection under
3  copyright law:

4
5      [LIST]
6
7  I have also determined that the following elments of the Bryant drawings are entitled to
8  copyright protection:
9
10     [LIST]
11
12  In applying the extrinsic test, you should only compare the protectable elements in the
13  drawings to the corresponding elements in the Bratz dolls and determine whether Mattel
14  has shown by a preponderance of the evidence that these elements are substantially similar.
15  If you do not so find, then you must find for MGA on the claim of copyright infringement.
16
17  If you do find substantial similarity under the extrinsic test, then you turn to the next step
18  of the analysis, the "intrinsic" test.
19
20  THE INTRINSIC TEST
21
22  The second step of the infringement analysis, the "intrinsic" test, involves a subjective
23  comparison of the protectable aspects of the "works as a whole."
24
25  In this evaluation, you should not consider the unprotectible elements that you filtered out
26  as part of the extrinsic test analysis.  [See, e.g., Apple Computer, Inc. v. Microsoft
27  Corporation, 35 F.3d 1435, 1442 (9th Cir. 1994) ("only those elements of a work that are
28  protectable and used without the author's permission can be compared when it comes to

43

1   the ultimate question of illicit copying"); Harper House, Inc. v. Thomas Nelson, Inc., 889

2   F.2d 197, 207-08 (9th Cir. 1989) (trier of fact cannot base infringement decision on

3   unprotectable aspects of plaintiff's work); (Robert C. Lind, Copyright Law (3d ed. 2006) at

4   173  ("Some courts apply the 'total concept and feel' analysis without first distilling the

5   copyrightable elements from the plaintiff's work .   This approach can be criticized for its

6   inclusion of noncopyrightable elements from its comparison of the works at issue."

7   (citation omitted)]

8

9   The appropriate standard for the intrinsic test is whether the ordinary, reasonable person –

10  here, 8-12 year old girls – would find the "total concept and feel" of the two separate

11  works to be substantially similar, bearing in mind that ideas, concepts, attitude and style

12  are not protectable.

13

14  The testimony of experts is not to be considered in your evaluation of the intrinsic test.

15

16  Applying this test, you will determine if Mattel has met its burden of proving infringement

17  under the "intrinsic" test.  If Mattel has not met its burden under the intrinsic test, then you

18  must find for the MGA defendants on the copyright infringement claims.

19

20  **Authority**:  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1990); Swirsky

21  v. Carey, 376 F.3d 841, 845 (9th Cir. 2004); Mattel v. Goldberger Doll Mfg. Co., 365 F.3d

22  133, 136 (2d Cir. 2004); Apple Computer, Inc. v. Microsoft Corporation, 35 F.3d 1435,

23  1447 (9th Cir. 1994); Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002);

24  Data East USA, Inc. v. Epyx, Inc., 862 F.2d 204 (9th Cir. 1988); Harper House, Inc. v.

25  Thomas Nelson, Inc., 889 F.2d 197, 207-08 (9th Cir. 1989); Fryberger v. Int'l Bus.

26  Machines Corp., 812 F.2d 525, 530 (9th Cir. 1987); Thomas v. The Walt Disney Co., 2008

27  U.S. Dist. LEXIS 14643 (N.D. Cal. Feb. 14, 2008); Bensbargains.Net v. XPBargains.Com,

28

2007 U.S. Dist. LEXIS 60544 at 8–10 (S.D. Cal. Aug. 16, 2007); <u>Idema v. Dreamworks, Inc.</u>, 162 F. Supp. 2d 1129, 1176 (C.D. Cal. 2001).  <u>Nimmer on Copyright</u> § 13.03[B].

MGA Parties' Second Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

## **SPECIAL COPYRIGHT INSTRUCTION NO. [   ] –**
## **HONG KONG LAW**
## **-NEW-**

Mattel has presented evidence concerning certain Hong Kong copyright infringement lawsuits brought by MGA.  In assessing the significance of this evidence, you should bear in mind that MGA's lawsuits were governed by Hong Kong copyright law, not U.S. copyright law.  Hong Kong copyright law differs from U.S. law in that the "extrinsic" test that I have just instructed you on under U.S. copyright law is not part of Hong Kong copyright law.

The issue in this case is whether MGA's Bratz dolls infringe Mattel's copyright in the Carter Bryant drawings under U.S. Copyright law.  Your determination of Mattel's copyright infringement claims must be based solely on the U.S. copyright law principles that I instruct you on, and not on Hong Kong copyright law.

**Authority**:  Fossil, Inc. v. Trimset Ltd., [2003] 3 HKLRD 11, 2003 WL 17991 (Hong Kong Court of First Instance May 14, 2003).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### INSTRUCTION NO. ___

### COPYRIGHT INFRINGEMENT –

### COMPARING A TWO-DIMENSIONAL WORK WITH A THREE-

### DIMENSIONAL WORK

The Bryant sketches are 2-dimensional works, while the Bratz dolls are 3-dimensional works. While those facts may complicate your analysis under the extrinsic and intrinsic tests, the copyright in a 2-dimensional work can be infringed by a 3-dimensional work. However, the copyright in a 2-dimensional work only covers what is shown on the face of the work. For example, if a Bryant sketch only shows the front view of a figure, the copyright does not cover the rear or side view of that figure, or anything else that is not specifically visible in that particular sketch. Whether in this case the Bratz dolls (3-dimensional works) infringe the Bryant sketches (2-dimensional works), is for you to decide, using the two-part analyses already described.

**Authority**: 1-2 <u>Nimmer on Copyright</u> § 2.08(C)(2).

47

**INSTRUCTION NO.** ____

**COPYRIGHT INFRINGEMENT – MULTIPLE COPYRIGHT REGISTRATIONS**

Mattel's copyright claims are based on 16 separate copyright registrations, each one registering a different Carter Bryant drawing. Each of these drawings is only entitled to copyright protection for the original expression contained in the particular drawing. Mattel cannot extend or enhance its rights by treating two or more of the sketches as a compilation or as a unified work. In other words, Mattel cannot pick and choose elements from more than one of these drawings to and combine those elements to based its infringement claim against a particular Bratz doll. Each individual drawing is a copyrighted "work" that must be judged based on its own protectible content in a comparison with a particular one of the allegedly infringing Bratz dolls. This means that, in determining whether Mattel has met its burden of proving infringement, you must separately analyze each of the 16 drawings under both the extrinsic and intrinsic tests.

**Authority**: Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1144 n.31 (C.D. Cal. 2001); see also Green v. Schwarzenegger, 1995 U.S. Dist. LEXIS 14031 at ** 61-62 (C.D. Cal. July 17, 1995) ("Plaintiff cannot pick and choose characteristics from any number of characters in his work to search for alleged similarities with a single character in defendants' work."); 9 Patry on Copyright § 9:66 (2008).

## INSTRUCTION NO. 17.20

## DERIVATIVE LIABILITY: VICARIOUS INFRINGEMENT

If you find that MGA or MGA Hong Kong infringed Mattel's copyrights in the Bryant drawings, you may consider Mattel's claims that Isaac Larian vicariously infringed those copyrights. Mattel has the burden of proving each of the following by a preponderance of the evidence:

    1.    That Mr. Larian profited directly from the infringing activity of MGA or MGA Hong Kong;

    2.    That Mr. Larian had the right and ability to supervise the infringing activities of MGA and MGA Hong Kong; and

    3.    That Mr. Larian failed to exercise that right and ability.

If you find that Mattel proved each of these elements, your verdict should be for Mattel as to Mr. Larian if you also find that MGA or MGA Hong Kong infringed Mattel's copyright. If, on the other hand, Mattel has failed to prove any of these elements with respect to Mr. Larian, your verdict should be for Mr. Larian.

**Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.20 (2007).

**INSTRUCTION NO. 17.21**

**DERIVATIVE LIABILITY: CONTRIBUTORY INFRINGEMENT**

A defendant may be liable for copyright infringement engaged in by another if he knew or had reason to know of the infringing activity and intentionally induces that infringing activity.

If you find that MGA or MGA Hong Kong infringed Mattel's copyrights in the Bryant drawings, you may proceed to consider Mattel's claim that Isaac Larian contributorily infringed those copyrights.  To prove contributory copyright infringement, Mattel must prove both of the following elements by a preponderance of the evidence:

    1.    That Mr. Larian knew or had reason to know of the infringing activity of MGA or MGA Hong Kong; and

    2.    That Mr. Larian intentionally induced MGA or MGA Hong Kong's infringing activity.  In assessing intent, Mr. Larian cannot be liable for another's infringement if he did not act with the desire or purpose of intentionally inducing that infringement.  Mere awareness that potential infringing activity might result is not enough.

If you find that MGA or MGA Hong Kong infringed Mattel's copyright, and you also find that Mattel has proved both of these elements as to Mr. Larian, your verdict should be for the Mattel.  If, on the other hand, Mattel has failed to prove either of these elements, your verdict should be for Mr. Larian.

**Authority**:   Ninth Circuit Manual of Model Jury Instructions 17.21 (2007) (modified). Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 931-33 (2005); Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 262-263 (9th Cir. 1996).

## INSTRUCTION NO. 17.27

## COPYRIGHT - WILLFUL INFRINGEMENT

## -NEW-

An infringement is considered willful when the plaintiff has proved both of the following elements by a preponderance of the evidence:

1.     The defendant engaged in acts that infringed the copyright; and

2.     The defendant knew that those acts infringed the copyright..

**Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.27 (2007).

DATED:  August 13, 2008          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  _____ /s/ Thomas J. Nolan _____

Thomas J. Nolan

Attorneys for the MGA Parties