# EXHIBIT 1



1
2
3
4
5
6
7
8
9       UNITED STATES DISTRICT COURT
10          CENTRAL DISTRICT OF CALIFORNIA
11             EASTERN DIVISION
12   CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)
13          Plaintiff,                      Consolidated with
                                            Case No. CV 04-09059
14      vs.                                 Case No. CV 05-02727
15   MATTEL, INC., a Delaware               **COURT'S FINAL PRE-TRIAL
     corporation,                           CONFERENCE ORDER FOR
16                                          PHASE 1 TRIAL**
            Defendant.
17
18   AND CONSOLIDATED ACTIONS
19
20
21
22
23
24
25
26
27
28

1    Following pretrial proceedings, pursuant to Federal Rule of Civil

2  Procedure 16 and Local Rule 16-1 et seq., and in accordance with the Court's

3  Scheduling Order entered February 22, 2007, IT IS ORDERED:

4

5                                      I.

6                                  **PARTIES**

7    For purposes of this Phase 1 trial, the parties are:

8        (a)    Plaintiff and Counter-Defendant Mattel, Inc. ("Mattel");

9        (b)    Defendant and Counter-Defendant MGA Entertainment, Inc.

10  ("MGA");

11       (c)    Defendant and Counter-Defendant Isaac Larian;

12       (d)    Defendant and Counter-Defendant MGA Entertainment (HK)

13  Limited ("MGA HK").

14    Each of these parties has been served and has appeared.  For purposes

15  of this Phase 1 trial, and the claims and defenses to be tried therein, no party other

16  than those identified above has asserted a claim, been served, or asserted any

17  defense.  Because the Court has bifurcated these consolidated cases, the Court will

18  not at this point dismiss any other party, including any Doe defendants.

19    In addition, as a result of the confidential settlement between Mattel

20  and Carter Bryant, Carter Bryant is no longer a party to this case, although Carter

21  Bryant remains bound by all past Orders of this Court and will be bound by any

22  injunctive, declaratory or other non-monetary relief relating to Bratz that the Court

23  enters in the future against the MGA parties.

24    The pleadings that raise the issues in Phase 1 are:

25       (a)    Complaint filed by Mattel, Inc. (Case No. BC314398) on April

26  27, 2004 in the Superior Court of the State of California for the County of Los

27  Angeles (the "Bryant Case");

28

07209/2474226.14

EXHIBIT ___1___

PAGE ___6___

1    (b)    Answer to Plaintiff's Unverified Complaint filed by Carter
2  Bryant on May 14, 2004;

3    (c)    Defendant/Cross-Complainant Carter Bryant's Cross-Complaint
4  for (1) Unfair Competition; (2) Rescission; (3) Declaratory Relief; and (4) Fraud,
5  filed by Bryant on September 8, 2004 in the Superior Court of the State of
6  California for the County of Los Angeles;

7    (d)    Notice to Federal Court of Removal of Civil Action from State
8  Court Pursuant to 28 U.S.C. Section 1332(a)(1) and 1331, filed by defendant Carter
9  Bryant on November 2, 2004.  That notice removed the case to federal court on
10  November 2, 2004, where it was assigned Case No. 04-9059;

11    (e)    Stipulation Permitting MGA to Intervene as a Party to This
12  Action and Order, dated December 7, 2004, and MGA's Answer in Intervention;

13    (f)    Complaint filed by MGA Entertainment, Inc. (Case No. CV 05-
14  2727 SGL (RNBx)) on April 13, 2005 in the District Court of the Central District of
15  California (the "MGA Case"), as limited by the Court's Order dated August 25,
16  2005, striking allegations regarding the Brawer litigation;

17    (g)    Second Amended Answer and Counterclaims filed by Mattel,
18  Case No. CV 04-9059 SGL (RNBx) on July 12, 2007 in the District Court of the
19  Central District of California;

20    (h)    Amended Answer and Affirmative Defenses of MGA
21  Entertainment Inc., MGA Entertainment (HK) Limited and MGAE de Mexico
22  S.R.L. de C.V. to Mattel, Inc.'s Second Amended Answer and Counterclaims filed
23  by defendants MGA, MGA HK, and MGA Mexico (collectively, the "MGA
24  Defendants") on September 19, 2007 in the District Court of the Central District of
25  California;

26    (i)    Isaac Larian's Amended Answer and Affirmative Defenses to
27  Mattel, Inc.'s Second Amended Answer and Counterclaims filed by Larian on
28  November 8, 2007 in the District Court of the Central District of California.

1    By Order dated June 19, 2006, the Court consolidated the <u>Bryant</u> case

2 and the <u>MGA</u> case with <u>Bryant v. Mattel, Inc.</u>, Case No. 04-9049.  The matter shall

3 hereafter be referred to as <u>Mattel, Inc., v. MGA Entertainment, Inc., et al.</u>, Case No.

4 04-9049-SGL(RNBx).

5    The MGA Parties may file a motion seeking a determination of good

6 faith settlement pursuant to CCP § 877.6.  To the extent that Mattel continues to list

7 pleadings that address claims asserted by or against Bryant – and fail to exclude

8 them specifically from the list – the MGA Parties object to Mattel's list of pleadings.

9 Mattel's claims against the MGA parties have been modified by the terms of the

10 Court's Orders re the parties' motions for partial summary judgment dated April 25,

11 2008, May 22, 2008, May 27, 2008, and June 2, 2008.

12

13                                      **II.**

14          <u>**ABANDONED CLAIMS, COUNTERCLAIMS AND DEFENSES**</u>

15    The following claims, counter-claims, or defenses have been dismissed

16 or abandoned:

17    By Order dated July 17, 2006, the Court dismissed Defendant/Cross-

18 Complainant Carter Bryant's Cross-Complaint for (1) Unfair Competition; (2)

19 Rescission; (3) Declaratory Relief; and (4) Fraud; and Bryant's Complaint for

20 Declaratory Relief of Copyright Non-Infringement.  Bryant was given leave to

21 amend his Complaint and Cross-Complaint, but elected not to do so and the

22 dismissal became final.

23    Bryant's Ninth Affirmative Defense: Failure of Contract was withdrawn

24 by Bryant, by stipulation on October 5, 2007;

25    Bryant's Tenth Affirmative Defense: Duress/Unconscionability was

26 withdrawn by Bryant, by stipulation on October 5, 2007;

27    Bryant's Eleventh Affirmative Defense: Alleged Duties Contrary to

28 Law was withdrawn by Bryant, by stipulation on October 5, 2007;

PAGE _____

1

8

1          MGA Defendants' Sixteenth Affirmative Defense:  Innocent Intent was

2    withdrawn by MGA Entertainment, Inc., by stipulation on September 5, 2007;

3          Larian's Sixteenth Affirmative Defense:  Innocent Intent was

4    withdrawn by MGA Entertainment, Inc., by stipulation on September 5, 2007;

5          MGA Defendants' Ninth Affirmative Defense:  Res Judicata was

6    withdrawn by MGA Entertainment, Inc., by stipulation on September 5, 2007;

7          Larian's Ninth Affirmative Defense:  Res Judicata was withdrawn by

8    MGA Entertainment, Inc., by stipulation on September 5, 2007;

9          MGA Defendants' Twelfth Affirmative Defense:  Lack of Ownership

10   was withdrawn by MGA Entertainment, Inc., by stipulation on September 5, 2007;

11         Unclean Hands Affirmative Defense was withdrawn with respect to

12   Phase 1 claims by the MGA Defendants by Notice on February 15, 2008;

13         Unclean Hands Affirmative Defense was limited by Carter Bryant as to

14   Phase 1 issues by letter dated February 27, 2008.

15         By Order dated April 25, 2008, the Court granted partial summary

16   judgment in favor of Mattel.  In particular, the Court ruled that the Employee

17   Confidential Information and Inventions Agreement that Carter Bryant entered into

18   as a Mattel designer is a valid and enforceable contract.  It further ruled that, under

19   the Inventions Agreement, Mattel owns "any Bratz-related 'inventions' (including

20   any designs, improvements, ideas, concepts and copyrightable subject matter)" that

21   Carter Bryant "created during the period of his employment with Mattel."  The

22   Court found that it was irrelevant whether Bryant performed such work on Bratz

23   during his own time.

24         In its Order granting Mattel partial summary judgment, the Court

25   further ruled that Carter Bryant owed Mattel a duty of loyalty and that Bryant

26   "breached this duty by entering into a contract with Mattel's competitor, while still

27   employed by Mattel, to produce a line of fashion dolls to be marketed in direct

28

07209/2474226.14                              -4-                    Case No. CV 04-9049 SGL (RNBx)

1   competition with Mattel's products." The Court rejected defendants' claim that such

2   activities were mere "preparations to compete" with Mattel.

3           By virtue of its April 25, 2008, and May 21, 2008, Orders granting

4   Mattel partial summary judgment, the Court ruled that Carter Bryant owed a

5   fiduciary duty to Mattel, but held that there is a triable issue of fact as to Bryant's

6   breach of that duty.

7           Also by Order dated April 25, 2008, the Court granted partial summary

8   judgment in favor of Bryant and the MGA Defendants on Mattel's claims for (1)

9   tortious interference with contractual relations, but only "to the extent that it is based

10   on Mattel's rights to Bratz," such that it remains in the case "as to Mattel's claims for

11   breach of fiduciary duty" (Order at 2); (2) conversion, but only to the extent it is

12   based on conversion of ideas, such that it remains in the case "to the extent it seeks

13   the return of tangible things" (*id.* at 3); (3) common law unfair competition (*id.* at 7);

14   and (4) unjust enrichment (*id.*).

15           By virtue of its Orders dated April 25, 2008, May 22, 2008, and its

16   clarification on May 23, 2008, the Court further ruled that the MGA parties were

17   entitled to partial summary judgment on Mattel's statutory unfair competition

18   claims, except that Mattel's statutory unfair competition claim presented triable

19   issues of fact relating to "whether MGA tortiously interfered with Bryant and

20   Mattel's contractual relationship and whether MGA engaged in commercial

21   bribery."

22           In its orders regarding the statute of limitations affirmative defense,

23   dated May 27, 2008, and June 2, 2008, the Court made rulings regarding the accrual

24   dates of various claims asserted by Mattel. As to defendant MGA only, the Court

25   ruled that Mattel's state-law claims other than tortious interference with contractual

26   relations claim and the conversion claim accrued no earlier than July 18, 2003, and

27   no later than November 23, 2003, but that triable issues of fact precluded a

28   determination as to the exact accrual date.

EXHIBIT     1

FINAL PRE TRIAL CONFERENCE ORDER

PAGE _____ 10

1        As to defendants Isaac Larian and MGA HK, the Court ruled that these

2  state-law claims arose no earlier than the date of Carter Bryant's deposition,

3  November 4, 2004.

4        In these orders, regarding the tortious interference with contractual

5  relations claim and the conversion claim as to all defendants, the Court ruled that the

6  discovery rule was inapplicable to these claims, and that they were therefore time

7  barred unless Mattel establishes a period of fraudulent concealment of sufficient

8  duration.

9        Additionally, the Court ruled that the copyright claim arose no earlier

10  than November 23, 2003.

11        Finally, the Court ruled that the new claims asserted on November 20,

12  2006, the Court ruled that all claims (except the copyright claim, upon which the

13  Court found it unnecessary to rule) related back to the filing of Mattel's complaint

14  against Carter Bryant in April, 2004.

15        Finally, pursuant to the confidential settlement between Mattel and

16  Carter Bryant and pursuant to the Stipulation entered as part of that settlement, all

17  claims, counterclaims and defenses as between Mattel and Carter Bryant have been

18  dismissed, although Carter Bryant remains bound by all past Orders of this Court

19  and will be bound by any injunctive, declaratory or other non-monetary relief

20  relating to Bratz that the Court enters in the future against the MGA parties.

21

22

23                 **III.**

          **JURISDICTION AND VENUE**

24        Federal jurisdiction and venue are invoked upon the following grounds:

25        This Court has diversity jurisdiction over the claims asserted in Mattel

26  v. Bryant pursuant to 28 U.S.C. § 1332, as determined by the Ninth Circuit in Mattel

27

28

-6-

Case No. CV 04-9049 SGL (RNBx)
FINAL PRE TRIAL CONFERENCE ORDER

EXHIBIT 1

PAGE ___11___

1    v. Bryant, Inc., 446 F.3d 1011, 1013 (9th Cir. 2006). This Court has supplemental

2    jurisdiction over Mattel's state law claims in that case pursuant to 28 U.S.C. § 1367.

3          This Court has federal question jurisdiction over MGA's claims in

4    MGA Entertainment, Inc. v. Mattel, Inc. pursuant to 15 U.S.C. §§ 1116 and §1121,

5    28 U.S.C. §§ 1331, 1338(a), and supplemental subject matter jurisdiction over

6    MGA's state law claims pursuant to 28 U.S.C. § 1367.

7          This Court has federal question jurisdiction over Mattel's counterclaims

8    in MGA Entertainment, Inc. v. Mattel, Inc. pursuant to 28 U.S.C. §§ 1331, 1338(a),

9    17 U.S.C. §§ 101 et seq., and 18 U.S.C. § 1964(c). This court has supplemental

10   jurisdiction over Mattel's state law counterclaims pursuant to 28 U.S.C. § 1367.

11         Venue in this Court for MGA Entertainment, Inc. v. Mattel, Inc. is

12   alleged to be proper pursuant to 28 U.S.C. §§ 1391(b) - (d), 1391(f) and 1400(a) and

13   18 U.S.C. § 1965.

14                        **IV.**

15               **TRIAL ESTIMATE**

16          The parties understand that the Court has directed each side to complete

17   the presentation of evidence in Phase 1, including the examination and cross-

18   examination of witnesses, in 60 hours. The parties further understand that the 60

19   hours shall not apply to argument, jury selection, opening statements, or closing

20   arguments.

21          Consistent with the express language of the Court's April 7, 2008 Order

22   [Docket No. 2998], the 60-hour limit may be enlarged "if extraordinary

23   circumstances warrant such relief." Apr. 7, 2008 Order, at 2.

24

25                        **V.**

26              **TYPE OF TRIAL**

27          The trial is to be a jury trial, except for issues which are not properly

28   tried to jury. Pursuant to the Court's Scheduling Order, the parties have already

07209/2474226.14

Case No. CV 04-9049 SGL (RNBx)
FINAL PRE TRIAL CONFERENCE ORDER

EXHIBIT 1

PAGE 12

1   delivered to the Court (a) a set of Joint Proposed Jury Instructions and (b) a set of

2   disputed Jury Instructions, along with reasons supporting and opposing each

3   disputed instruction, and (c) at the Pre-Trial Conference brief proposed voir dire

4   questions for the jury.  The parties shall revise and supplement the jury instructions

5   and verdict forms on or before June 6, 2008, in light of the Court's May 22 and May

6   23 Orders relating to the parties' respective motions for partial summary judgment

7   and motions *in limine*, as well as the Court's May 22, 2008 Order on the MGA

8   Parties' motion for reconsideration.

9           The Court intends to rule upon the MGA parties' equitable affirmative

10   defenses at the close of the Phase 1 trial, but will allow evidence as to these defenses

11   to be presented to the jury.  The Court may have the jury answer special

12   interrogatories as to certain of these equitable defenses so as to establish the

13   requisite factual findings for the Court to rule upon such defenses.

14

15                                  **VI.**

16                          **STIPULATED FACTS**

17           1.      The following facts have been stipulated, and shall be deemed

18   established:[1]

19                          **Parties**

20           1.      Mattel, Inc. is a corporation formed under the laws of the State of

21                   Delaware with its headquarters in El Segundo, California.

22   _____

23   [1]  The parties to this action do not understand the rules to require the recitation

24   of admissions in the Pre-Trial Conference Order for those admissions to be

25   introduced at trial.  Therefore, admissions are not included herein.
     The parties' lists of facts herein are not exhaustive.  The parties reserve the right

26   to introduce additional evidence in support of their claims — or in opposition to

27   affirmative defenses — at trial.  In addition, the parties intend to introduce expert
     evidence not listed below in support of its claims.

28

| | | |
|---|---|---|
| 1 | 2. | MGA Entertainment, Inc. is a privately held California |
| 2 | | corporation. |
| 3 | 3. | MGA Entertainment (HK) Limited, a Hong Kong company, and |
| 4 | | MGAE de Mexico, S.R.L. de C.V., a Mexico corporation, are |
| 5 | | wholly owned subsidiaries of MGA Entertainment, Inc. |
| 6 | 4. | Isaac Larian, an individual, is the CEO and majority shareholder |
| 7 | | of MGA Entertainment, Inc. and is a resident of California. |

**Bryant's Employment at Mattel**

| | | |
|---|---|---|
| 9 | 5. | Carter Bryant first worked for Mattel in the mainline Barbie |
| 10 | | group from September 1995 to April 1998. |
| 11 | 6. | Bryant signed a document titled "Employee Confidential |
| 12 | | Information and Inventions Agreement," dated November 6, |
| 13 | | 1995. |
| 14 | 7. | Bryant signed a document titled "Conflict of Interest |
| 15 | | Questionnaire," dated November 6, 1995. |
| 16 | 8. | Bryant left California in December 1997 and moved to Missouri |
| 17 | | to live with his parents, where he continued to do work for |
| 18 | | Mattel until April 1998. |
| 19 | 9. | In late December 1998, Mattel offered Bryant a position in the |
| 20 | | Barbie Collectibles group. |
| 21 | 10. | Bryant accepted Mattel's offer, moved back to California, and |
| 22 | | started work at Mattel on January 4, 1999. |
| 23 | 11. | Bryant signed a document titled "Employee Confidential |
| 24 | | Information and Inventions Agreement" dated January 4, 1999. |
| 25 | 12. | Bryant signed a document titled "Conflict of Interest |
| 26 | | Questionnaire," incorrectly dated January 4, 1998, instead of |
| 27 | | 1999. |
| 28 | | |

07209/2474226.14

-9-

EXHIBIT

Case No. CV 04-9049 SGL (RNBx)

FINAL PRE TRIAL CONFERENCE ORDER

1

14

PAGE _____

13. Before Bryant left Mattel, he was asked to and did participate in an exit interview.

14. During his exit interview, Bryant signed a document titled "Proprietary Information Checkout," dated October 19, 2000.

15. Carter Bryant, an individual, is a resident of Missouri.

## VII.

## CLAIMS

### A. MATTEL INC.'S CLAIMS AND COUNTERCLAIMS

Except to the extent already adjudicated in its favor by the Court's Orders re Summary Judgment, and pursuant to the Court's July 5, 2007 Phasing Order, Mattel, Inc. plans to pursue the following claims and counterclaims against the defendants in Phase 1 trial as indicated[2]:

---

[2] Mattel has claims for misappropriation of trade secrets that are being reserved for Phase II of this litigation. To the extent defendants seek to raise the issue of trade secrets during Phase I, either as a claim or as an affirmative defense, Mattel reserves its right to argue its misappropriation of trade secrets claim in Phase I. The MGA parties note that the Court gave specific guidance on this issue and expressly limited the type of evidence that Mattel may introduce that falls outside of the scope of Phase I of the trial in ruling on the MGA parties' motion *in limine* number 6.

EXHIBIT 1
PAGE 15

1           **Claim 1: Intentional Interference with Contract (Against Larian**

2 **and MGA).**

3           **Claim 2: Aiding and Abetting Breach of Fiduciary Duty (Against**

4 **Larian and MGA).**

5           **Claim 3: Aiding and Abetting Breach of Duty of Loyalty (Against**

6 **Larian and MGA).**

7           **Claim 4: Conversion (Against MGA, MGA HK and Larian).**

8           **Claim 5: Statutory Unfair Competition (Against Larian, MGA,**

9 **and MGA HK).**

10           **Claim 6: Declaratory Relief  (Against Larian, MGA, and MGA**

11 **HK) (ownership of original Bratz works and associated copyrights allegedly**

12 **created by Bryant while employed by Mattel)**

13           **Claim 7: Copyright Infringement (Against Larian, MGA, and**

14 **MGA HK)**

15           The parties stipulated, and the Court agreed, that contentions of law and

16 fact, were not necessary and would not be productive, in light of the parties'

17 exhaustive briefing of the same issues in their cross-motions for partial summary

18 judgment and the fact that the Court has not yet ruled on certain of those cross-

19 motions.

20

21                                      **VIII.**

22                 **DEFENDANTS' AFFIRMATIVE DEFENSES**

23           Relevant to Phase 1 of the Trial, Defendants assert the following

24 affirmative defenses:

25           Affirmative Defense 3: Laches

26           Affirmative Defense 4: Statute of Limitations

27           Affirmative Defense 5 and 6: 205(d)/Bona Fide Purchaser for Value

28           Affirmative Defense 9: Estoppel

EXHIBIT 1

PAGE 10

1    Affirmative Defense 10:  Acquiescence

2    Affirmative Defense 11:  Mitigation

3    Affirmative Defense 13:  Waiver

4    Affirmative Defense 14: Abandonment

5    Affirmative Defense 15: *De Minimus* Use

6    Affirmative Defense 17: Privilege/Justification

7    Affirmative Defense 18: Good Faith

8    Affirmative Defense 21: Consent

9    **MGA PARTIES' AFFIRMATIVE DEFENSE TO COPYRIGHT DAMAGES**

10   MGA, MGA (HK), and/or Larian must prove:

11       1.    Expenses deductible from gross revenues causally connected to the

12             alleged infringement;

13       2.    Elements of defendants' profit attributable to factors other than the

14             copyrighted work.

15

16                              **IX.**

17                          **DISCOVERY**

18       Phase 1 Discovery is not complete, but will be within two weeks.

19   Counsel have waived any prejudice from commencing trial without completing

20   discovery.  Phase 2 discovery has been stayed.  Many Phase 1 discovery motions

21   remain to be heard.  The parties are working to complete them as expeditiously as

22   possible.

23

24                               **X.**

25                           **EXHIBITS**

26       All disclosures under F.R.Civ. P. 26(a)(3) have been made.  The joint

27   exhibit list of the parties has been filed.

28

## XI.

### WITNESSES

All disclosures under F.R.Civ.P. 26(a)(3) have been made. Witness lists of the parties have been filed with the Court pursuant to the schedule approved by the Court. Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7. For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1:  William Ackerman (Art Attacks), Bryant Joseph Armstrong, Nana Ashong, Schuyler Bacon, Ronald Brawer, Kerry Brode, Charnayne Brooks, Carter Bryant, Carter Bryant (Art Attacks), Carter Bryant (Gunther-Wahl), Janet Bryant, Thomas Bryant, Ana Cabrera, Mei Wah (Sarah) Chui, Elise Cloonan, Nick Contreras, Daniel Cooney, Wendy Feinberg, Jeanne Galvano, Paula Garcia, Paula Garcia (Art Attacks), Brooke Gilbert, Kami Gillmour, Daphne Gronich, Sarah Halpern, Esther Han, Rachel Harris, Rebecca Harris (Art Attacks), Amy Hyland, Richard Irmen, Mitchell Kamarck, Samir Khare, Andreas Koch, Susana Kuemmerle, Robert Kullman, Farhad Larian, Isaac Larian, Isaac Larian (Art Attacks), Isaac Larian (Larian v. Larian), Isaac Larian (Ubisoft), Margaret Leahy, Edmond Lee, Steven Linker, Kenneth Lockhart, Jennifer Lynn Maurus (Larian v. Larian), Albert Lyter, David Malacrida, Peter Marlow, Veronica Marlow, Karl Meyer, Beatriz Morales, Amy Myers, Joyce Ng, Victoria O'Connor, Sarah D. Odom, Denise O'Neal, Jacqueline Prince, Jessie Ramirez, Anna Rhee, David Rosenbaum, Lon Ross (Fun4All), Maria Salazar, Shirin Salemnia, Joe Tiongco, Maureen Tkacik, Lisa Tonnu, Anne Wang, Jeffrey Neil Weiss, Spencer Woodman, Mel Woods, and MGA's 30(b)(6) witness regarding Larian v. Larian.

Additional depositions to be lodged: Ronald Brawer, Richard DeAnda, Ann Driskill, Robert Eckert, Kevin Farr, Lissa Freed, Jeanne Galvano, Hoi Hoffman-Briggs, Brian Hooks, Julia Jensen, Alan Kaye, Fred Kawashima, Tim Kilpin, Liliana Martinez, Heather McComb, Ginger McRae, Nicholas Mirzoeff,

EXHIBIT

PAGE

1

18

1  Teresa Newcomb, Jill Nordquist, Ralph Oman, Rodney Palmer, Joni Pratte,

2  Jacqueline Prince, Kathleen Simpson-Taylor, Maureen Tafoya, and Sandra

3  Yonemoto.

4          Furthermore, certain depositions have been recently taken or remain to

5  be taken.  The parties will advise the Court of such transcripts to be lodged as they

6  become available and relevant.

7          Pursuant to ¶ 97 of the Court's Scheduling Order, the parties identify

8  the following expert witnesses to be called:

9          Mattel:  Valery Aginsky, John Alex, Lloyd Cunningham, William

10 Flynn, Frank Keiser, Lee Loetz, Mark Menz, Nicholas Mirzoeff, Ralph Oman,

11 Walter Rantanen, Carol Scott, Bryce Stein, Michael Wagner, Robert Lind, Angel

12 Gomez, Heather McComb, Ginger McRae, Denise Van Patten, and Kenneth

13 Hollander.

14         Defendants:  Mary Bergstein, D. Jan Duffy, Thomas S. Gruca, Erich

15 Joachimstaler, Robert D. Kullman, Albert H. Lyter, Peter Menell, Paul Meyer,

16 Debora Middleton, Robert Tonner, Glenn Vilppu, Douglas Kidder, and Gary Funck.

17         The following law and motion matters and motions in limine have been

18 decided:

19         Mattel has filed the following motions *in limine*:

20         1.      MIL No. 1 to exclude: (1) evidence or argument that Bryant's

21 invention assignment agreements are unfair or unconscionable; (2) evidence of other

22 versions of Mattel's inventions agreements; and (3) expert testimony of D. Jan

23 Duffy;

24         Granted.

25         2.      MIL No. 2 to exclude evidence, argument or reference to

26 Mattel's alleged motive in filing suit or re consequences thereof ;

27         Denied as written.  Will allow late evidence with proper foundation.

28 Consequences of lawsuit to MGA may not be admitted.

07209/2474226.14                    -14-              CV 04-9049 SGL (RNBx)
                                                  FINAL PRE TRIAL CONFERENCE ORDER

PAGE _____

1

19

1           3.     MIL No. 3 to exclude Phase 1(B) evidence in the Phase 1(A)

2  trial and Phase 2 evidence in the Phase 1 trials or, in the alternative, to permit

3  expedited Phase 2 discovery;

4                Granted insofar as apportionment and responsive evidence is limited to

5                1B; deferred on rest.

6           4.     MIL No. 4 to preclude introduction to jury of evidence and

7  testimony relating to equitable defenses to be tried by court ;

8                Denied.

9           5.     MIL No. 5 to exclude evidence of or argument concerning other

10  lawsuits and other purported bad acts and dismissed defenses;

11                Granted as to Nos. 1-4 and 10; Denied without prejudice to specific

12                objections as to Nos. 5-9.

13           6.     MIL No. 6 to exclude evidence or argument concerning actions

14  taken by or against Mattel employees other than Carter Bryant;

15                Granted in part and denied in part; Evidence is admissible only if such

16                other employees are analogous to Bryant.

17           7.     MIL No. 7 to preclude the MGA Defendants from asserting or

18  relying on an advice of counsel defense;

19                Granted.  However, the MGA Parties can introduce Rosenbaum's

20                testimony relaying his factual conversations not as reliance on any legal

21                advice he gave but as to the fact that he undertook certain actions and had

22                certain conversations, provided otherwise admissible.

23           8.     MIL No. 8 to exclude evidence relating to whether Mattel would

24  have marketed Bratz;

25                Granted as to 1A; Deferred as to 1B.

26           9.     MIL No. 9 to exclude argument, evidence, or expert testimony

27  regarding Barbie and other Mattel dolls;

28                Daubert hearing to be held one day prior to testifying.

1

20

PAGE _____

1    10. MIL No. 10 to exclude testimony by Glenn V. Vilppu;

2    Daubert hearing to be held one day prior to testifying.

3    11. MIL No. 11 to preclude Defendants from offering improperly

4 disclosed evidence;

5    Granted as to test project.  Deferred on apportionment issues otherwise

6    denied.

7    12. MIL No. 12 to exclude the testimony of Peter S. Menell;

8    Daubert hearing to be held one day prior to testifying.

9    13. MIL No. 13 to exclude expert testimony of Mary Bergstein,

10 Robert Tonner, and Debora Middleton;

11    Daubert hearing to be held one day prior to testifying.

12    14. MIL No. 14 to exclude evidence and argument related to certain

13 discovery matters;

14    Granted.

15    15. MIL No. 15 for a preclusion order regarding MGA's disqualified

16 expert Christina Tomiyama.

17    Taken under submission.  Deferred ruling until Phase 1(b).

18    Defendants filed the following motions in limine:

19    1. MGA Parties' Notice of Motion and Motion in Limine Number 1

20 to  Exclude All Evidence Relating to Litigation or Other Proceedings Between Isaac

21 and Farhad Larian;

22    Denied.

23    2. MGA Parties' Notice of Motion and Motion in Limine Number 2

24 to  Exclude All Evidence Relating to Isaac Larian's Wealth and Assets;

25    Granted in part, denied in part. General evidence regarding Mr. Larian's

26 wealth is inadmissible.  Any gain to Larian from Bratz may be introduced only in Phase

27 1b.  In Phase 1a, Mattel only may submit evidence of what Larian stood to gain **at the**

28 **time** of any alleged breach, not subsequent gain.

07209/2474226.14        -16-    CASE NO. CV 04-9049 SGL (RNBx)

FINAL PRE TRIAL CONFERENCE ORDER

EXHIBIT 1

PAGE 21

1        3.    MGA Parties' Notice of Motion and Motion in Limine Number 3

2 to Exclude Reference to and Use of Evidence of Other Legal Proceedings;

3        Granted insofar as findings of foreign courts are excluded unless they

4 are the only evidence of MGA's prior positions.

5        4.    MGA Parties' Notice of Motion and Motion in Limine Number 4

6 to Exclude Reference to and Use of MGA's Employment Agreements With its

7 Employees;

8        Denied.

9        5.    MGA Parties' Notice of Motion and Motion in Limine Number 5

10 to Exclude References to Prior Legal Representation;

11        Granted.

12        6.    MGA Parties' Notice of Motion and Motion in Limine Number 6

13 to Exclude Reference to and Use of Phase Two Evidence;

14        Denied as to Nos. 1, 2, and 5. Based on stipulation of counsel, moot as

15 to Nos. 4 and 6. Granted as to No. 3 in 1A but door may be opened in 1B.

16        7.    MGA Parties' Notice of Motion and Motion in Limine Number 7

17 to Exclude All References to and Use of Certain "Expert" Testimony Proffered by

18 Mattel Witness Michael J. Wagner;

19        Daubert hearing to be held one day prior to testifying.

20        8.    MGA Parties' Notice of Motion and Motion in Limine Number 8

21 to Strike Expert Rebuttal Report of Kenneth Hollander and Sections of Expert

22 Rebuttal Reports of Heather McComb, Denise Van Patten, and Nicholas Mirzoeff;

23        Daubert hearing to be held one day prior to testifying.

24        9.    MGA Parties' Notice of Motion and Motion in Limine Number 9

25 to Strike the Expert Report and Testimony of Ralph Oman and John Alex;

26        Daubert hearing to be held one day prior to testifying.

27

28

1          10.    MGA Parties' Notice of Motion and Motion in Limine Number

2  10 to Exclude All References to and Use of Certain "Expert" Testimony Proffered

3  by Mattel Witness Carol A. Scott;

4          Daubert hearing to be held one day prior to testifying.

5          11.    MGA Parties' Notice of Motion and Motion in Limine Number

6  11 to Strike the Expert Rebuttal Report of Robert C. Lind;

7          Daubert hearing to be held one day prior to testifying.

8          12.    MGA Parties' Notice of Motion and Motion in Limine Number

9  12 to Strike Portion of the Expert Report of Lee Loetz;

10         Daubert hearing to be held one day prior to testifying.

11         13.    Motion in Limine Number 13:  To exclude evidence and

12  argument regarding alleged spoliation by Bryant;

13         Hearing to be held one day prior to Bryant testifying; hearing to include

14  Bryant and experts; excluded from opening statement.

15         14.    Motion in Limine Number 14:  To exclude evidence and

16  argument regarding Bryant's alleged "borrowing" of ideas or concepts from

17  preexisting Mattel projects, including Toon Teens, Diva Starz, the "Swan" line, and

18  Skipper.

19         Denied.

20         The Court ruled upon or otherwise addressed the remaining motions

21  during recent hearings.

22         Bifurcation of the claims and counterclaims was ordered pursuant to

23  the Court's Order of July 2, 2007.  The claims and counterclaims to be tried in Phase

24  1 trial are set forth herein.  The claims remaining for trial in Phase 2 are set forth on

25  pages 8-9 in Mattel's Memorandum of Trial Structure, filed June 20, 2007, as

26  adopted in the July 2, 2007 Order.  At the hearing on May 22, 2008, the Court

27  provided guidance to the parties as to the issues that may be tried as part of Phase 1a

28  versus Phase 1b.

EXHIBIT **1**

FINAL PRE TRIAL CONFERENCE ORDER

PAGE **23**

1          The foregoing admissions having been made by the parties, and the

2  parties having specified the foregoing issues of fact and law remaining to be

3  litigated, this Pretrial Conference Order shall supersede the pleadings as they relate

4  to claims or defenses to be tried in Phase 1 and govern the course of the trial of the

5  Phase 1 claims and defense, unless modified to prevent manifest injustice.

6  DATED:  June 07, 2008

7

8

9  Approved as to form by:

10  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

11

12  By /s/ John B. Quinn

13      John B. Quinn, Esq.
       Attorneys for Mattel, Inc.

14

15  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

16

17

18  By /s/ Thomas J. Nolan, Esq.
      Thomas J. Nolan, Esq.

19      Attorneys for MGA Entertainment, Inc.

20

21

22

23

24

25

26

27

28

EXHIBIT ____ 1

24

# EXHIBIT 2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES – GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                          Date:  May 27, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.

<u>Consolidated With Related Actions</u>:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.,  v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
============================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

              Gina Guzman
              Courtroom Deputy Clerk

<u>ATTORNEYS PRESENT FOR CARTER BRYANT</u>:      <u>ATTORNEYS PRESENT FOR MATTEL</u>:

None Present                                None Present


<u>ATTORNEYS PRESENT FOR MGA</u> <u>AND</u>
<u>ISAAC LARIAN:</u>

None Present

PROCEEDINGS:   **ORDER RE STATUTE OF LIMITATIONS DEFENSE**

        Each of the remaining parties to this action, Mattel and MGA, seek summary judgment on the issue of statute of limitations.  Crucial to resolution of this issue, is application of California's "discovery rule," which can delay the accrual of a claim.  Both parties have offered evidence in support of their positions.[1]  For its part, Mattel contends that its claims against Carter Bryant arose on November 24, 2003, and that its claims against the MGA entities, including MGA CEO Isaac Larian, arose on November 4, 2004, the date of Carter Bryant's deposition, at which he testified regarding MGA and Larian's involvement in his actions.

_____

        [1]  Although he is no longer a party, the Court discusses at length the timeliness of the claims asserted against Carter Bryant because it is relevant to the Court's relation-back analysis of the claims asserted against MGA.

MINUTES FORM 90                                        Initials of Deputy Clerk: gg
CIVIL -- GEN                    Page 1                 Time:  0/00

5/27

EXHIBIT ___2___

PAGE ___25___

At oral argument and in its briefs, MGA argues at length that Mattel's claims against Bryant accrued some time shortly after Bryant left Mattel's employ in October, 2000. In support of this argument, MGA offered evidence that Mattel has always believed that it took nine months to bring a doll through the stages of development and to market. From that knowledge, in MGA's view, the sudden appearance of the Bratz dolls at a toy fair in Tokyo in January, 2001, should have aroused their suspicions.

MGA cites to the deposition of Bryant's co-worker, who had suspicions at the time Bryant resigned that Bryant was going to work for a competitor based on her subjective belief that Bryant would not pursue any other vocation other than doll designer.

MGA contends that Mattel could have looked at Bryant's phone records and determined that he had called MGA a number of times during the month pre-dating his resignation.

There is evidence that one of Bryant's co-workers believed it was "common knowledge," sometime in 2001, that Bryant probably designed Bratz.

The undisputed facts establish that in August, 2002, an anonymous letter was sent to Mattel's CEO stating that Bryant had designed Bratz. This letter is the first indication that Bryant may have worked on Bratz during the period of his employment with Mattel. See Zeller Decl. Ex. 63 ("While he was working with Mattel and working to create these dolls he worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls and the fact that they are rightly Mattel dolls.").

The undisputed facts also establish that on July 18, 2003, the Wall Street Journal published an article entitled "Dolled Up: To Lure Older Girls, Mattel Brings In Hip-Hop Crowd." In that article, MGA's CEO Isaac Larian is attributed with a statement that Carter Bryant was the creator of Bratz. The article states:

> Isaac Larian, chief executive of MGA, says he had never heard
> of a project similar to the Bratz at Mattel. He says he chose Mr.
> Bryant's idea for Bryant over several others after holding a sort of
> fashion-doll design contest in late 1999.

Zeller Decl. Ex. 118.

At the close of the second hearing, held on May 19, 2008, MGA offered, for the first time, evidence in the form of a time line that showed that a "claim" from a lawsuit filed in Hong Kong by MGA was received by Mattel on September 23, 2003. See Bogorad Supp. Decl. Ex. 145. A copy of court documents from that litigation shows that MGA claimed ownership of Bratz fashion dolls and that, more specifically, at issue were "17 design drawings of various fashion dolls between the years 1998 and 2000." Id. at Ex. 143. Exhibit 143 is a ten-page document captioned as "STATEMENT OF CLAIM" and appears to the Court to be, under Hong Kong law, the equivalent of a complaint. MGA's ownership to the 17 drawings referenced in the "STATEMENT OF CLAIM"

EXHIBIT ___2___

PAGE ___23___

was based on Bryant's creation of the design drawings during a time period that includes his employment at Mattel. Id.

Also at this time, MGA offered a letter, dated October 17, 2003, from Mattel's Hong Kong counsel to Mattel, that discusses the propriety of providing to Mattel certain documents relating to the City World litigation. Within this letter, certain key details of the "STATEMENT OF CLAIM" were referenced. See Supp. Bogorad Ex. 146 ("One of the exhibits referred to in such Affirmation was a set of coloured drawings described as '17 initial concept and design drawings of the Bratz dolls made by Mr. Carter Bryant in the year 2000.'").

After being given an opportunity to respond to this last-minute evidence, Mattel offered as evidence the documents it received on September 23, 2003, and that evidence did not include the document marked as Ex. 143. See Supp. Moore Decl. Ex. A. The documents Mattel received do not include any reference to Carter Bryant or the dates of creation of the 17 drawings. See id. Instead, it consists of a copy of a "writ of summons" in that same litigation.

In responding to this evidence, counsel for MGA first incorrectly contended that the declaration of in-house counsel, Michael Moore, did not deny receiving a copy of the City World claim setting forth this key language. Compare Reply at 1 ("**Mr. Moore, the only witness offered by Mattel, does _not_ deny that Mattel took possession of a copy of the City World claim on or about September 23, 2003.**") (emphasis in the original) with Supp. Moore Decl. ¶ 3 (attaching as Exhibit A all documents received from Mattel's Hong Kong counsel on September 23, 2003; noting that public access to court files in Hong Kong is limited; and verifying that the materials attached as Exhibit A (which does not include the key language regarding Carter Bryant's creation of Bratz drawings) "were the only ones relating to MGA's litigation that Mattel's Hong Kong counsel were allowed to obtain from the Hong Kong court files").

More disturbingly, however, counsel for MGA next lobbed unsubstantiated assaults on Mr. Moore's truthfulness. Counsel states that the documents "appear to have been doctored or manipulated in some fashion." Reply at 2. Counsel does so because the fax itself has an anomalous pagination in the fax header line wherein the first ten pages are numbered "01, 02 . . . 10," and the numbers thereafter are numbered "11/46, 12/46 . . . 46/46." Supp. Moore Ex. A.

This Court has indicated on a number of occasions, most strikingly in connection with its consideration of Mattel's motion to disqualify counsel for MGA, that it will not countenance unsubstantiated dispersions cast upon opposing counsel. Where there is *evidence* of unethical behavior, the Court expects to be made aware of that evidence; where, however, there is mere *speculation* of such behavior, no legitimate purpose is served by its airing.

Nevertheless, focusing on the additional evidence offered by MGA on May 19, 2008, the time line produced in connection with the Simpson-Taylor deposition makes reference to a City World "claim" that was received by Mattel on September 23, 2003. Although this time line stops short of acknowledging that the document entitled "STATEMENT OF CLAIM" was received in

EXHIBIT ___2___

PAGE ___24___

September, it is nevertheless sufficient to controvert Moore's declaration regarding whether the "STATEMENT OF CLAIM" was in fact received on this date. Moreover, the October 17, 2003, letter raises an inference regarding the full scope of Mattel's pre-November 23, 2003, knowledge of the contents of the "STATEMENT OF CLAIM."

It is uncontroverted that Mattel first received a copy of the Bryant-MGA contract, the effective date of which pre-dated the effective date of Bryant's resignation from Mattel, on November 24, 2003.

Where a plaintiff advances a state-law claim under California law, federal courts apply the California "discovery rule" to determine whether the state-law claim is time-barred. See, e.g., Orkin v. Taylor, 487 F.3d 734, 741 (9th Cir. 2007).

The Court's analysis begins with the unremarkable proposition that "[a] plaintiff must bring a claim within the limitations period after accrual of the cause of action." Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 806 (Cal. 2005) (citation omitted). To apply this unremarkable proposition, however, the Court must determine what the California Supreme Court means by "accrual of the cause of action."

In that regard, the California Supreme Court has stated that, "[g]enerally speaking, a cause of action accrues at the time when the cause of action is *complete with all of its elements*," id. at 807 (emphasis added) (citation omitted), a phrase which itself must be expounded upon further to ascertain its meaning. When applying the discovery rule, those "elements" are not "specific legal element[s] of a particular cause of action"; rather, they are the "'generic' elements of wrongdoing, causation, and harm." Id. (citation omitted).

The definition of those terms gives a more comprehensive understanding to the California Supreme Court's statement that "the 'discovery rule' . . . postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." Id. (citation omitted). In turn, "[a] plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements." Id. (internal quotation marks and citation omitted). Further refined, where a plaintiff has *knowledge* of at least one of the three generic elements, and *suspicion* of the remaining generic elements, the claim has accrued and the limitations period has begun to run. Id. (citation omitted).

This rule is designed to require plaintiffs to diligently investigate their potential claims. See id. at 808. To that end, in the context of a personal injury action, the California Supreme Court has stated that "plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." Id. Of course, this statement must itself be viewed with the definition of "injury" the California Supreme Court considered: "At common law, the term 'injury,' as used in determining the date of accrual of a cause of action, means both a person's physical condition and its negligent cause. . . . Thus, physical injury alone is often insufficient to trigger the statute of limitations." Id. at 808 n.2 (internal quotation marks and citation omitted).

Initials of Deputy Clerk: gg
Time: 0/00

EXHIBIT ___2___

PAGE ___25___

This requirement of diligence, stated otherwise, prohibits California plaintiffs from passively waiting for the facts supporting their claim to find them and places on them an affirmative requirement to investigate:

> Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.

Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1111 (Cal.1988).

The Jolly court discussed two examples in explaining this standard. First, it cited to Miller v. Bechtel Corp., 33 Cal.3d 868, 874 (Cal.1983), which held time barred the fraud claim of a plaintiff who had suspicions that the value of her husband's stock was understated at the time of their dissolution agreement, but who failed to assert her claim until years later when the stock was sold. Id. In that case, the plaintiff's lawyer sought information, both before the dissolution and within a few months thereafter, regarding the method by which the stock was valued. Id. at 875. When the response was not forthcoming, the lawyer chose not to pursue this inquiry further, and thus plaintiff was charged with knowledge of the facts the investigation would have uncovered -- that the stock was valued by the price attributed to it in the shareholders' agreement rather than by any objective valuation. Id.

Second, the Jolly court cited to Gray v. Reeves, 76 Cal.App.3d 567 (Cal. App.1977), which held that a plaintiff's claim based on his use of a prescription drug arose when the plaintiff understood the nature of his injury (deterioration of the hip socket) and the probable cause thereof (the use of the prescription drug prednisone) as well as the identity of the prescribing doctor and the drug's manufacturer.

Although the discovery rule has been largely developed in tort cases, the rule has also been applied in cases involving contract claims. See e.g., April Enterprises, Inc. v. KTTV, 147 Cal.App.3d 805, 832 (1983) ("Specifically, we hold the discovery rule may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time."); Intermedics, Inc. v. Ventritex, Inc., 775 F.Supp. 1258, 1266-67 (N.D. Cal. 1991).

Thus, California's discovery rule is easily understood in the abstract; moreover, it is often easily applied in particular factual situations. Here, however, this Court's application of the rule in this case is not so clear cut, and the Court must consider the premises underlying the parties' respective analysis of this issue.

In substance, MGA contends that Mattel was on notice as early as February, 2001, of a potential claim that Carter Bryant breached the confidentiality provision of his contract by borrowing from or plagiarizing certain non-public Mattel projects. This date coincides with the display of the Bratz dolls at a New York Toy Fair and "speculation in the media started about

EXHIBIT ___2___

PAGE ___26___

alleged similarities between the BRATZ and Mattel's internal projects." MGA Motion at 18.
Alternatively, MGA posits March 15, 2002, the beginning date of an internal Mattel investigation
into MGA and Larian's involvement in Bryant's creation and development of Bratz, as the date
Mattel's current claims accrued.

Mattel, on the other hand, contends that MGA is essentially arguing that a claim Mattel
chose not to bring – that Bratz infringed on the Mattel projects of Toon Teens and Diva Starz – is
time barred. Mattel points out that it has previously disavowed, and that it continues to disavow,
any intent to assert such a claim. Rather, Mattel contends that it is bringing a different claim, a
claim that Mattel has rights to Bratz pursuant to the Inventions Agreement based on Bryant's
actions during the period of his employment with Mattel.

In determining, under California law, which of the parties' diametrically opposed positions
represent the better approach, the Court is guided by the California Supreme Court case cited
above, Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 806 (Cal. 2005). In that case, a plaintiff,
suffering from complications following gastric bypass surgery, sued for medical malpractice. Id. at
802. During the course of discovery, she learned, through the testimony provided at the
deposition of her surgeon, that she had a potential claim against the manufacturer of a surgical
stapler. Id. at 804. Specifically, the plaintiff's surgeon testified that he had found on previous
occasions that the particular stapler had caused post-surgery leaks. Id. When the plaintiff
amended the complaint to assert a products liability claim, the trial court, on statute of limitations
grounds, sustained a demurrer without leave to amend, reasoning that "when a plaintiff sues
based on knowledge or suspicion of negligence, . . . the statute of limitations begins to run as to all
defendants, including manufacturers possibly liable under products liability theories." Id.

The Court of Appeal reversed, and the California Supreme Court affirmed the reversal. Id.
at 812, 816. In doing so, the California Supreme Court rejected, as inconsistent with its precedent,
the so-called "the Bristol-Myers Squibb rule that all claims arising from an injury accrue
simultaneously, even if based upon distinct types of wrongdoing, is inconsistent with the generic
elements approach . . . ." Id. at 815.

From this discussion, a parallel begins to emerge that MGA's position is like that of the
demurring defendant who seeks to dismiss a products liability claim on the basis of plaintiff's
discovery of a different claim of medical malpractice, and Mattel's position is like that of the plaintiff
who seeks to assert the that products liability claim. In a sense, however, this analogy goes
nowhere, as MGA's position is that the claim Mattel asserts in the current action is not different
from the potential claim for which it was on notice of in 2001. After all, both would be based on
breach of contract and/or copyright claims, both would involve the same defendants, and both
would result in the same type of injury.

However, the Fox Court's elaboration on the rule it enunciates convinces the Court that
Mattel's position is the stronger one. After discussing the application of its rule in the more narrow
situation presented by the overlap of medical malpractice and products liability claims at issue in
the case before it, the Fox Court explained:

Initials of Deputy Clerk: gg
Time:  0/00

EXHIBIT ___2___

PAGE ___27___

> More broadly stated, if a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim.

Id. at 813.  In analyzing the discovery rule, the term "wrongdoing" is used not in a technical or legal sense, but in its everyday meaning. Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1111 (1988) ("In this context, 'wrong,' 'wrongdoing,' and 'wrongful' are used in their lay understanding.").

Here, on one hand, we have a breach of contract claim or copyright infringement claim based on alleged copying or "borrowing" of Mattel's undisputed rights in Toon Teens and/or Diva Starz to create Bratz that perhaps Mattel was on notice of as early as 2001, and which Mattel admittedly investigated as early as 2002, but upon which Mattel ultimately chose not to file suit. On the other hand, we have the claims asserted here, for breach of contract and copyright infringement, based on Mattel's (disputed) ownership rights to the Bratz drawings pursuant to Bryant's employment agreement with Mattel and in light of the (disputed) fact that Carter Bryant created these works during the period of his employment with Mattel. Applied to the present case, in the Court's view, the question the Court must ask is whether the first type of claim is based on qualitatively different type of "wrongdoing" – as that term might be understood by lay persons – than that which gives rise to the present claims.

Thus framed, the Court considers the two claims:  Although they are similar in that they both include the wrongdoing of the failure to keep one's promise to maintain confidentiality, they are qualitatively different, however, in that the former situation involves the alleged taking of rights known to Mattel while the latter involves the alleged concealment of certain creations that belong to Mattel in the first instance in order to facilitate the taking of rights unknown to Mattel. This fundamental difference leads the Court to the conclusion that the latter claims, those asserted here, involve a different element of "wrongdoing" than do the unasserted claims based on Toon Teens and/or Diva Starz.

The burden of proof on the discovery rule issue is on Mattel.[2]  Examining the claim Mattel asserts, rather than the claim Mattel chose not to assert, the Court must determine whether Mattel had knowledge of any one of the three generic elements of wrongdoing, causation, or damages, coupled with suspicion of the remaining generic elements.  This determination cannot be made on the undisputed record before the Court.

Rather, MGA has raised triable issues of fact precluding summary judgment on the statute of limitations issue.  Any of the following could be the date upon which MGA claims against Carter

---

[2]  See Fox, 35 Cal.4th at 803 (imposing upon a plaintiff that seeks to take advantage of the discovery rule a requirement that it "plead[] and prove[] that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action).

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: gg
Time:  0/00

EXHIBIT _____2_____

PAGE _____28_____

Bryant accrued: The July 18, 2003, Wall Street Journal article; the September 23, 2003, date of receipt of the City World "claim"; the October 17, 2003, date of counsel's letter to Mattel regarding the City World litigation; or the November 24, 2003, date of receipt of the MGA-Bryant agreement that pre-dated Bryant's resignation of his employment.[3]

The accrual of a copyright claim, as the parties recognize, approximates the state-law standard discussed herein. See Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004) ("Thus, . . . the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances."). Accordingly, the Court makes the same conclusion regarding the accrual date of Mattel's copyright claim against Carter Bryant as it does regarding the accrual date of Bryant's state-law claims.

As stated earlier, although Bryant is no longer a party to this action, the parties recognize, as does the Court, that the timeliness of the claims asserted against Carter Bryant is relevant because of the potential that Mattel's claims against the MGA entities and Isaac Larian may, pursuant to Fed. R. Civ. P. 15(c), relate back to those claims. Mattel embraces the concept of relation back; MGA rejects it.

Although such distinction has not been particularly important at other points in this litigation, the Court has referred to the MGA entities and Isaac Larian collectively as MGA. More specifically, as to Phase 1, there are two separate MGA entities: MGA Entertainment, Inc. and MGA Entertainment HK Limited. There is also MGA's CEO, Isaac Larian. This distinction is important to the Court's analysis of relation back.

MGA Entertainment, Inc., but not Isaac Larian or the other MGA entity, intervened in this action on December 7, 2004. Therefore, based on the status of MGA Entertainment, Inc., as a party, the standard for whether the claims relate back differs from that governing the relation back of claims against MGA Entertainment HK Limited. See infra. As this Court has noted before, the Phase 1 claims against MGA sought to be asserted by Mattel on November 20, 2006, which arise out of the same factual allegations as do the claims asserted by Mattel against Carter Bryant on April 27, 2004, relate back to the date that complaint was filed. See Court's Jan. 12, 2007, Order at 13-15. The Court does not revisit that issue now.

MGA argues that "some courts have dis-allowed 'relation back' of claims against intervening defendants." MGA Opp. at 25 n.21 (emphasis in the original). However, in support of this argument, MGA cites a two-page Texas appellate court decision which does not cite to or interpret Fed. R. Civ. P. 15(c), Davis v. Outdoor Equip. Co., 551 S.W.3d 72, 73 (Tex. Ct. App. 1977), which the Court finds unpersuasive.

As to the new parties sought to be added on November 20, 2006 (MGA Entertainment HK

---

[3]    The analysis is slightly different for the conversion claim. See infra at 9-10.

EXHIBIT ___2___

PAGE ___29___

Limited and Isaac Larian), MGA challenges the timeliness of the amendment to add these parties based on whether their identities were known to Mattel at an earlier date. The Court has already held that the claims against them relate back to the April, 2004, complaint. <u>See</u> Court's Jan. 12, 2007, Order at 15-16 n.5. The Court will not revisit that issue either.

The Court rejects the proposition, however, that the claims against <u>both</u> MGA entities did not arise until the date of Carter Bryant's deposition. Whatever the date on which the claims against Carter Bryant arose is ultimately found to be, the August 2002 anonymous letter should have given Mattel a suspicion of that MGA Entertainment, Inc., participated in any wrongdoing by Carter Bryant. <u>See</u> Zeller Decl. Ex. 63 (alleging that Carter Bryant "worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls").

The same is not true as to MGA Entertainment HK Limited and as to Isaac Larian, whom the anonymous letter did not implicate. Therefore, the claims against these defendants arose no earlier than November 4, 2004.

Intentional interference with contractual relations is subject to a two-year statute of limitations. MGA contends that the claim accrues upon the breach of contract, and therefore argues that the claim was untimely before it was asserted against Carter Bryant. They make a similar argument regarding Mattel's conversion claim, which carries with it a three-year statute of limitations.

However, the statute of limitations for breach of contract is tolled during a period of fraudulent concealment. <u>Gryczman v. 4550 Pico Partners, Ltd.</u>, 107 Cal.App.4th 1, 5 (2003). The rationale for such tolling easily extends to intentional interference with contractual relations claim, which includes the element of a breach of a contract. The limitations period is likewise tolled during a period of fraudulent concealment as to a conversion claim. <u>AmerUS Life Ins. Co. v. Bank of America</u>, 143 Cal.App.4th 631, 639 (2006) ("To the extent our courts have recognized a 'discovery rule' exception to toll the statute, it has only been when the defendant in a conversion action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in violation of his or her fiduciary duty to the plaintiff.") Mattel has raised a triable issue of fact as to whether the evidence of the breach and the tortious interference thereof was fraudulently concealed from them before the July 18, 2003, <u>Wall Street Journal</u> article.

The Court will permit further briefing from the parties on the limited issue of what further conclusions regarding the timeliness of each claim should be drawn as a result of this Order. The parties' simultaneous briefs shall be limited to seven pages in length, and shall not re-argue any point upon which the Court has ruled in this Order or its previous two summary judgment Orders. The briefs shall be e-filed no later than 8:30 a.m., Thursday, May 29, 2008, and a courtesy copy must be provided to chambers at the same time. The parties shall also file, as exhibits thereto, their revised proposed special interrogatories on the issue of statute of limitations.

**IT IS SO ORDERED.**

EXHIBIT ___2___

PAGE ___30___

# EXHIBIT 3

Case 2:04-cv-09049-SGL-RNB   Document 3902   Filed 06/02/2008   Page 1 of 4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                         Date:  June 2, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx): MATTEL, INC. v. CARTER BRYANT
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC. v. MATTEL, INC.
================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Jim Holmes
            Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:      ATTORNEYS PRESENT FOR MATTEL:

None Present                               None Present

ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

PROCEEDINGS:   **FURTHER AND FINAL ORDER RE STATUTE OF LIMITATIONS DEFENSE
               (IN CHAMBERS)**

        In an order dated May 27, 2008, the Court made several rulings regarding the timeliness of
Mattel's claims ("SOL Order").  At that time, the Court invited further, limited briefing from the
parties regarding "what further conclusions regarding the timeliness of each claim should be
drawn" in light of the Court's rulings.  The parties filed further briefing in conformity with the Court's
Order, which the Court has reviewed.

        As a result of the briefing, the Court discusses the following issues:  (1) Clarification of the
Court's Ruling Regarding the August 2002 Anonymous Letter; (2) Clarification of the Court's
Ruling Regarding Fraudulent Concealment and Mattel's Claims for Intentional Interference with
Contractual Relations and Conversion; and (3) Accrual of Mattel's Copyright Claim.

MINUTES FORM 90                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                           1

EXHIBIT ___3___

PAGE ___31___

## I. Clarification of the Court's Ruling Regarding the August 2002 Anonymous Letter

The parties differ on their interpretation of the Court's holding as to the earliest accrual date of Mattel's claims. Although the Court's SOL Order, read as a whole, is most reasonably interpreted as clarified herein, MGA, quite understandably, interprets the Court's Order in a manner more favorable to its position regarding the statute of limitations defense. Accordingly, the Court clarifies its Order as set forth below.

In a key paragraph of the SOL Order, the Court articulates the four possible accrual dates of those state-law claims, asserted by Mattel against Carter Bryant, that are subject to the discovery rule:[1]

> MGA has raised triable issues of fact precluding summary judgment on the statute of limitations issue. Any of the following could be the date upon which MGA claims against Carter Bryant accrued:  The July 18, 2003, Wall Street Journal article; the September 23, 2003, date of receipt of the City World "claim"; the October 17, 2003, date of counsel's letter to Mattel regarding the City World litigation; or the November 24, 2003, date of receipt of the MGA-Bryant agreement that pre-dated Bryant's resignation of his employment.

SOL Order at 7-8.  This portion of the Court's Order implicitly rejects MGA's contention that the August, 2002, letter could give rise to Mattel's claims against Bryant.

As set forth in the SOL Order, a claim accrues where a plaintiff has **_knowledge_** of at least one of the three generic elements of wrongdoing, causation, and harm.  Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 807 (Cal. 2005) (citation omitted).  The SOL Order did not explicitly state, as the Court does now, that there is no evidence that Mattel had any **_knowledge_** of any one of the three generic elements of its claims, and thus no claim accrued, prior to the earliest date identified by the Court, which is July 18, 2003.

MGA's argument that Mattel's claims against Carter Bryant could have accrued in August 2002, is based on a statement made by the Court's regarding when the claims against MGA Entertainment, Inc., accrued:

> The Court rejects the proposition, however, that the claims against both MGA entities did not arise until the date of Carter Bryant's deposition.  Whatever the date on which the claims against Carter Bryant arose is ultimately found to be, the August 2002 anonymous letter should have given Mattel a suspicion of that MGA Entertainment, Inc., participated in any wrongdoing by Carter Bryant.  See Zeller Decl. Ex. 63

---

[1]   This portion of the Court's Order does not apply to Mattel's claims for intentional interference with contractual relations and conversion, which are addressed infra, in Section II.

Initials of Deputy Clerk: jh

EXHIBIT ___3___

PAGE ___32___

(alleging that Carter Bryant "worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls").

SOL Order at 9. Mattel's understanding of this part of the SOL Order, that the claims against MGA Entertainment, Inc., accrued on the same date as did the claims against Carter Bryant, is correct. See Mattel Supp. Brief at 6 n.4.

## II. Clarification of the Court's Ruling Regarding Fraudulent Concealment and Mattel's Claims for Intentional Interference with Contractual Relations and Conversion

The Court's statute of limitations analysis regarding Mattel's claims for intentional interference with contractual relations and conversion was rather inartfully articulated. The Court's ruling was meant to convey that although the remainder of the state-law claims asserted by Mattel are subject to the discovery rule, these two claims are not. Therefore, the conclusions drawn by the Court regarding the possible accrual dates for the remaining state-law claims do not apply to Mattel's claims for intentional interference with contractual relations and conversion. Instead, these claims, having arisen around the time Bryant resigned from Mattel, are time-barred unless the relevant limitations periods have been extended by a period of fraudulent concealment.

Whether a period of fraudulent concealment exists, as well as the duration of any such period, cannot be determined on the undisputed record and are therefore questions of fact for the jury.

## III. Accrual of Copyright Claim

The supplemental briefing brings into focus an issue not addressed by the SOL Order: The accrual date of Mattel's copyright claim.

MGA refers to two arguments it made in its partial summary judgment papers regarding the statute of limitations and Mattel's copyright claim. First, MGA argues that the date Mattel registered its copyrights impacts upon the Court's application of the relation-back doctrine; second, MGA argues that the "rolling" statute of limitations regarding copyright claims is inapplicable when the gravamen of the claim is a claim of ownership rather than infringement.

Mattel did not address this issue in its supplemental briefing, which was filed concurrently with MGA's supplemental briefing. In its partial summary judgment papers, however, Mattel had responded to these arguments.

In reviewing the supplemental briefs, as well as the relevant portions of the partial summary judgment papers, and reflecting upon the hearings held on this matter, the Court concludes that it need not resolve MGA's two arguments.

In the SOL Order, the Court's analysis equated the accrual of Mattel's copyright claim with

Initials of Deputy Clerk: jh

EXHIBIT ___3___

PAGE ___33___

the accrual with certain of Mattel's state-law claims; as explained below, this analysis overlooks important concepts of copyright law.

As noted by the Court in its order regarding summary judgment, in order to establish copyright infringement, a plaintiff must establish three elements: (1) ownership of a valid copyright, (2) the defendant's access to the original, and (3) substantial similarity between the copyrighted work and the allegedly infringing work. Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1144 (9th Cir. 2003). Here, although the date Mattel received details regarding the City World litigation is in dispute, it is uncontroverted that Mattel did not receive copies of the Bratz drawings prior to November 23, 2003. Without the drawings, Mattel could not assess the substantial similarity factor to determine whether it could assert a claim that the Bratz dolls infringed Mattel's rights to them. Accordingly, on the undisputed record, the Court concludes that Mattel's copyright claim did not accrue prior to November 23, 2003.

Therefore, when first asserted on November 20, 2006, Mattel's copyright claim was timely in its own right, and the Court need not resolve MGA's two arguments regarding relation back and the rolling statute of limitations.[2]

**IT IS SO ORDERED.**

---

[2] In accordance with the foregoing, the Court VACATES the following language from the SOL Order:

The accrual of a copyright claim, as the parties recognize, approximates the state-law standard discussed herein. See Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004) ("Thus, . . . the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances."). Accordingly, the Court makes the same conclusion regarding the accrual date of Mattel's copyright claim against Carter Bryant as it does regarding the accrual date of Bryant's state-law claims.

SOL Order at 8.

MINUTES FORM 90                                                        Initials of Deputy Clerk: jh
CIVIL – GEN                                    4

EXHIBIT ___3___

PAGE ___34___

# EXHIBIT 4

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                    Date:  July 24, 2008

Title:      CARTER BRYANT -v- MATTEL, INC.
            AND CONSOLIDATED ACTIONS
=========================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes                              None Present
        Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:       ATTORNEYS PRESENT FOR DEFENDANTS:

John B. Quinn                           Thomas J. Nolan
B. Dylan Proctor                        Carl Alan Roth
Michael T. Zeller                       Jason Russell
Jon Corey                               Lauren Aguiar
William Price                           David Hansen
Scott B. Kidman

PROCEEDINGS:   **POST-PHASE1A ORDER RE MOTION FOR PARTIAL SUMMARY
               JUDGMENT ON THE ISSUE OF SUBSTANTIAL SIMILARITY;**

               **ORDER RE PROCEEDINGS REGARDING LACHES AND OTHER
               EQUITABLE DEFENSES**

               **ORDER RE FRAUDULENT CONCEALMENT JURY ISSUE**

        These matters were heard on Friday, July 18, 2008, and again on Monday, July 21, 2008, at
which time the Court announced its rulings.  This Order sets forth those rulings and the rationale
therefor.

MINUTES FORM 90                                    Initials of Deputy Clerk: jh
CIVIL -- GEN

                            1

EXHIBIT ___4___

PAGE ___35___

## I. SUBSTANTIAL SIMILARITY AND SCOPE OF PROTECTABILITY

At a post-Phase 1A hearing on remaining legal issues to be addressed prior to commencement of the Phase 1B trial, counsel for MGA raised an issue regarding the scope of the protection to be given to the copyrighted drawings. This issue, in turn, implicates the arguments raised by the parties in the motions for partial summary judgment regarding originality and protectability (raised by MGA) and substantial similarity (an element of copyright infringement upon which Mattel seeks summary judgment).

To address these issues, the Court begins its analysis with a recitation of the elements of copyright infringement, which are (1) ownership of a valid copyright, (2) access by the defendant to the original, and (3) substantial similarity of the original and allegedly infringing works. North Coast Industries v. Jason Maxwell, Inc., 972 F.2d 1031, 1033 (9th Cir. 1992).

The first element, although not amenable to resolution on summary judgment, was decided by the jury's verdict in Phase 1A. The second element was not contested by MGA, and in any event, was also decided by virtue of the jury verdict. Thus, although the Court previously deferred the issue of substantial similarity, it is now appropriate to consider whether the record on summary judgment allows the Court to adjudicate the final element of copyright infringement in favor of Mattel.

To determine substantial similarity, the Court must apply both the extrinsic test and the intrinsic test.

To apply the extrinsic test, the Court must first examine the specific expressive elements of the works at issue and compare them to those found in the allegedly infringing work. Dr. Seuss Enterprises v. Penguin Books, Inc., 109 F.3d 1394, 1398 (9th Cir. 1997). This involves analytically dissecting works into their components in order to determine whether some – or all – similarities are attributable to unprotected elements, which must be filtered out of the analysis before a conclusion regarding substantial similarity is reached. Id. To apply the extrinsic test to visual works, such as the drawings at issue here, "[t]he basic mode of analysis for comparison of the literary elements applies . . . [, and] unprotect[a]ble elements should not be considered when applying the extrinsic test to art work." Cavalier v. Random House, Inc., 297 F.3d 815, 825-26 (2002). However, "[t]he precise factors evaluated for literary works do not readily apply to art works. Rather, a court looks to the similarity of the objective details in appearance." Id. at 826.

To apply the intrinsic test, the Court examines the overall similarity of expression in the two works from the perspective of the ordinary observer. Olson v. National Broadcasting Co., 855 F.2d 1446, 1448-49 (9th 1988).

In applying both the extrinsic and intrinsic tests, the Court must be mindful of the so-called "inverse ratio rule" which states that where, as here, a high degree of access to the original works

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

2

EXHIBIT ___4___

PAGE ___36___

is shown, the burden to show substantial similarity is reduced. <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 485 (9th Cir.2000).

In applying these principles, the Court cannot conclude that Mattel has shown that it is entitled to summary judgment on the issue of substantial similarity. On summary judgment, MGA offered evidence from its doll design expert pointing out a number of differences between the Bratz dolls and the registered drawings. Additionally, it offered the evidence of Paula Garcia regarding the changes that MGA wished to make in the process of creating the dolls from the drawings to make them less "edgy" and to better appeal to the "tween" market. MGA also offered evidence that its sculptor was given a certain amount of artistic freedom in creating the sculpt. All these combine to create a triable issue of fact regarding whether the dolls are substantially similar to the drawings.

Related to this issue is the one raised by MGA at Friday's hearing: What is the scope of the protectability of the copyrighted drawings? The Court cannot conclude that the scope is, as MGA contends, limited to the "thin" protection that would prohibit little more than virtual copying.

The Court's analysis begins with a presumption of protectability conferred by the registration of the drawings. Where, as here, the relevant works have registered copyrights, registration is prima facie evidence of the validity of a copyright. <u>See</u> 17 U.S.C. § 410(c). This presumption can be rebutted by the defendant's showing that the plaintiff's work is not original, that is, that it is unworthy of copyright protection. <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 489 (9th Cir. 2000) (citation omitted). "Originality in this context means little more than a prohibition of actual copying." <u>Id.</u> (internal quotation marks and citation omitted).

In this vein, the Supreme Court described the low threshold for copyrightability:

The sine qua non of copyright is originality. To qualify for copyright protection, a work must be original to the author. . . . Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.

<u>Feist Publications, Inc. v. Rural Telephone Service Co., Inc.</u>, 499 U.S. 340, 345 (1991). The Court elaborated: The "requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." <u>Id.</u> (internal quotation marks omitted).

Based on the record before the Court, it does not appear that MGA has contended that the registered drawings are unworthy of <u>any</u> protection; rather, it contends that it is worthy only of "thin" protection. The Court is guided on this point by the case of <u>Satava v. Lowry</u>, 323 F.3d 805 (9th Cir. 2003).

EXHIBIT ____4____

PAGE ____31____

In that case, an artist (Satava) began making glass-in-glass jellyfish sculptures. Id. at 807. When a second artist (Lowry) began making extremely similar sculptures, Satava sued for copyright infringement. Id. at 808-09. The idea to do such a sculpture was held to be beyond copyright protection. Id. at 810. Also outside the scope of copyright protection were the "elements of expression that naturally follow from the idea." Id. Thus, the Ninth Circuit held that Satava's sculptures were unprotected to the extent the physiology of jellyfish drove the presentation of the sculptures. Id. Relatedly, to the extent that traditional methods of glass-in-glass sculpture also influenced the presentation, the sculptures were also unprotected. Id.

Certain features did warrant protection, however. For instance, although the Court found unprotectable depiction of jellyfish swimming vertically, with bright colors, or with tendril-like tentacles attached to rounded bells, the Court found protectable Satava "distinctive curls of particular tendrils; the arrangement of certain hues [of color]; [and] the unique shape of the jellyfishes' bells." Id. at 811-12.

After this analysis, the Ninth Circuit did not place a high qualitative value on Satava's copyright. The Court stated it this way:

> Satava's copyright on these original elements (or their combination) is "thin," however, comprising no more than his original contribution to ideas already in the public domain. Stated another way, Satava may prevent others from copying the original features he contributed, but he may not prevent others from copying elements of expression that nature displays for all observers, or that the glass-in-glass medium suggests to all sculptors. Satava possesses a thin copyright that protects against only virtually identical copying.

Id. at 812.

The drawings at issue here, however, are not like Satava's jellyfish sculptures. Jellyfish anatomy is much simpler than human anatomy. Correspondingly, in general, there are far more variations in humans (at least that we humans discern). For instance, we regularly take notice of a vast number of particularized differences in facial features, ethnicity, size, shape, proportions, hair color, and hair texture and, of course, various particularized combinations and permutations thereof. Specifically, in the context of the content of the copyrighted drawings at issue, we can also observe the many details of the clothing which adorn the depicted figures.[1] Moreover, an

---

[1] As noted by the Court at Monday's conference, the Court rejects the argument raised by MGA, stated elsewhere in the record, that the protectability of doll clothing is limited in the same manner as is human clothing. Briefly stated, "[a]s a general rule, items of clothing are not entitled to copyright protection. . . . This is because items of clothing are generally considered useful articles, and useful articles are not entitled to protection under the Copyright Act." Express, LLC v. Fetish Group, Inc., 424 F.Supp.2d 1211, 1224 (C.D. Cal. 2006) (citations omitted). This general rule is tempered by a limited protection extended to "pictorial, graphic, or sculptural features" even when incorporated into useful articles. 17 U.S.C. § 101. The doll clothing at issue here -- as well as the clothing depicted in the

EXHIBIT ___4___

PAGE ___38___

Case 2:04-cv-09049-DOC-RNB   Document 4266-2   Filed 08/18/08   Page 42 of 46   Page ID
#:106527
Case 2:04-cv-09049-SGL-RNB      Document 4154      Filed 07/24/2008      Page 5 of 9

artistic expression based on a drawing is much less limited than a glass-in-glass sculpture.

Accordingly, although the Court has denied the motion for summary judgment on the substantial similarity issue, the Court cannot go so far as to find that the registered drawings are subject to only the "thin" protection -- the protection against copying -- referred to in Satava. The relevant test to be employed on this issue in this case -- and upon which the jury will ultimately be instructed -- is the test regarding the extrinsic and intrinsic analyses set forth above.

## II. LACHES AND OTHER EQUITABLE DEFENSES

At the hearing on Friday, July 18, 2008, three separate issues regarding the affirmative defense of laches were raised:  (1) Whether there is, as MGA contends, a presumption that laches applies when, as here, a copyright claim would be time-barred but for the relation-back doctrine;[2] (2) whether the Court should grant Mattel's summary judgment motion as to MGA's laches defense; and (3) whether the defense is legal (and must be presented to a jury) or equitable (and therefore should be decided by the Court, perhaps outside the presence of the jury).  In the ensuing discussion, the Court addresses each of these issues in turn.

The Court first considers whether there is, as MGA contends, a presumption that laches applies where, as here, a copyright claim would be time-barred but for the relation-back doctrine.

This argument is clearly based on the Jarrow Formulas case, cited at footnote 27 of MGA's opposition to Mattel's motion for partial summary judgment, which MGA relies upon to argue that, notwithstanding any contention that Mattel's copyright claim is timely based on the relation-back doctrine, there is a presumption that claims filed outside the limitations period are time barred. MGA reads Jarrow Formulas far too broadly.  That case did not consider how laches should apply when a claim that was otherwise outside the limitations period was saved by the relations-back doctrine.  Therefore, its discussion regarding a "reversal" of the presumption of nonapplicability of laches is of little relevance here.[3]

---

copyrighted drawings – are not useful articles.  The clothing is part of a toy, and the proposition that toys are unprotectable because they are "useful articles" as that term is used in copyright law has been rejected by courts.  See, e.g., Gay Toys, Inc. v. Buddy L Corp., 703 F.2d 970, 974 (6th Cir. 1983); Spinmaster, Ltd. v. Overbreak LLC, 404 F.Supp.2d 1097, 1103 (N.D. Ill. 2005).

   [2]  The Court previously held that Mattel's copyright claim was timely as to MGA Entertainment because it was brought within the relevant statute of limitations.  As to the remaining defendants, the claim was timely in light of the relation-back doctrine.

   [3]  The court's discussion regarding this issue states:

   In sum, we presume that laches is not a bar to suit if the plaintiff files within the limitations period for the analogous state action; the presumption is reversed if the plaintiff files suit after the analogous limitations period has expired. For purposes of laches, the limitations period may expire even though

EXHIBIT _____4_____

PAGE _____39_____

Case 2:04-cv-09049-DOC-RNB   Document 4266-2   Filed 08/18/08   Page 43 of 46   Page ID
#:106528
Case 2:04-cv-09049-SGL-RNB     Document 4154     Filed 07/24/2008     Page 6 of 9

The Court, in its own research, has been unable to locate any authority that suggests that a related-back claim would be especially vulnerable to the defense of laches. To the contrary, to the extent that such authority is found, it suggests the contrary. See e.g., In re Prempro Products Liability Litigation, 417 F.Supp.2d 1058, 1061 (E.D. Ark. 2006) (dismissing certain plaintiffs from a case, allowing them to re-file their claims in a separate complaint, and clarifying that "for application of . . . laches . . . the filing date of [the new complaint] will be deemed to relate back to the date [of the dismissed complaint]"); Bush v. Sumitomo Bank and Trust Co., Ltd., 513 F.Supp. 1051, 1054 (D.C.Tex., 1981) (noting that the court would consider the related-back date of an amended claim to assess the merits of a laches defense); E.I. duPont de Nemours & Co. v. Phillips Petroleum Co., 621 F.Supp. 310, 313 (D.C. Del.,1985) (noting that the applicability of laches did not need to be addressed in light of the fact that the proposed complaint related back to the original pleading pursuant to Fed. R. Civ. P. 15(c)).

The language of the rule allowing relation-back is in accord because it suggests that an amendment that relates back should be treated as if it was filed on the date of the original pleading. See Fed. R. Civ. P. 15(c) ("[a]n amendment to a pleading relates back to the date of the original pleading").

Therefore, in the absence of persuasive authority, the Court is unwilling to apply the "reversed" presumption suggested by MGA. Instead, the Court will continue to be guided by the touchstones of the doctrine of laches: Unreasonable delay and resulting prejudice.

The Court next considers whether the Court should grant Mattel's summary judgment motion as to MGA's laches defense. The Court previously deferred, as it does now, the motion for summary judgment on the remaining affirmative defenses. The Court will consider those at the close of Phase B of the trial as set forth below.

Finally, the Court considers whether the defense of laches is legal (and must be presented to a jury rather than the Court) or equitable (and therefore should be decided by the Court, perhaps outside the presence of the jury).

At Friday's hearing, counsel for MGA stated that MGA had argued in written briefs before the Court that laches, at least insofar as it is applied to a claim of copyright infringement, is a legal defense that must be submitted to the jury. Tr. at 96. When questioned as to the source of the authority, counsel eventually identified the case of Haas v. Leo Feist, 234 F. 105 (S.D.N.Y. 1916). Tr. 102, 106. Referring to this case, counsel contended that "most courts agree that was the first time that laches was applied as a legal defense to copyright." Tr. at 102. However, this case does not address the defense of laches. It does not address what, if any, affirmative defenses to a

---

part of the defendant's conduct occurred within the limitations period.

Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 838 (9th Cir. 2002).

EXHIBIT ____4____

PAGE ____40____

copyright claim should be presented to a jury. The case does not even involve a trial by jury. This case was cited in MGA's opposition to Mattel's motion for partial summary judgment, but for an entirely different proposition, relating to the merits of the laches defense.

At Monday's hearing, the Court articulated its ruling on this issue on the record in much the same form that it appears herein. The Court referred specifically to the representations of counsel set forth above, noting that the Haas case did not involve a trial by jury and further did not address the defense of laches. Tr. at 5303.

After the Court articulated its ruling, counsel for MGA revealed that perhaps he "wasn't as clear as [he] should have been" regarding this argument, explaining that Haas was "the case from which most courts agree the doctrine of laches could apply to a copyright case." Tr. at 5306. This contention was clear from counsel's argument the previous Friday. What was not clear, however, and what ultimately became clear during Monday's hearing after the Court articulated its ruling, was the source of MGA's briefing on this issue, which was MGA's opposition to Mattel's motion in limine #4 and not MGA's summary judgment papers (which the Court had reviewed at length and in vain in its attempt to locate counsel's argument on this issue). Tr. at 5306.

Although the Court informed counsel that the briefing to which he referred was not included in the materials that the Court instructed the parties to prepare in advance of the Friday hearing, counsel nevertheless asked that the Court to "take another look" at its opposition to the motion in limine, citing specifically the cases of Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc., 106 F.3d 894, 896 (9th Cir. 1997), and United States Fidelity & Guar. Co. v. Lee Investments LLC, 551 F.Supp.2d 1114, 1128 (E.D. Cal. 2008).[4] Both these cases, as well as a third case cited in MGA's opposition to Mattel's motion in limine #4, San Francisco Bay Area Rapid Transit Dist. v. Spencer, No. C-04-04632 SI, 2007 WL 1450350 at *10 (N.D.Cal., May 14, 2007), merely represent examples of cases in which trial courts submitted resolution of certain equitable affirmative defenses to the jury. These cases do not stand for the proposition that a Court must submit for the jury's consideration the ultimate conclusion regarding equitable affirmative defenses.[5]

The defense of laches to a copyright claim is clearly an equitable defense. See, e.g., Kling v. Hallmark Cards Inc., 225 F.3d 1030, 1036 (9th Cir. 2000) (beginning its analysis of whether

---

[4] Despite counsel's contention that his argument is based on authority derived from the Haas case, that case is not cited in MGA's opposition to Mattel's motion in limine #4.

[5] MGA's other concern, that the jury's role as factfinder not be usurped, is a valid one. Notwithstanding Mattel's contention that there are no facts that are relevant to both the legal claims and the equitable affirmative defenses, see Mattel's reply to motion in limine #4 at 7-9, the Court will consider MGA's timely proposal for any special interrogatories it deems appropriate to address this concern. As previously indicated by the Court, the parties' proposed jury instructions (which should include any proposed special interrogatories) and verdict forms must be filed no later than July 24, 2008, with indexed and tabbed courtesy copies (in a three-ring binder) provided to the Court.

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

EXHIBIT ___4___
PAGE ___41___

laches applied to a copyright claim by noting that laches is an "equitable defense"); Zuill v. Shanahan, 80 F.3d 1366, 1370 (9th Cir. 1996) (distinguishing the defense of statute of limitations as "legal" defense from the defense of laches an "equitable" defense). As such, it will be tried to the Court. See e.g., Danjaq LLC v. Sony Corp., 263 F.3d 942, 962 (9th Cir. 2001) (noting that although the plaintiff had a jury trial right as to his copyright infringement claims, he did not have a right to a jury on the equitable defense of laches); accord Granite State Ins. Co. v. Smart Modular Techs., Inc., 76 F.3d 1023, 1027 (9th Cir.1996) ("A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature.").

The Court previously suggested that it was inclined to seek an advisory jury verdict on the affirmative defenses; however, the Court is now disinclined to do so based on the risk of jury confusion. The Court is of the opinion that this jury's attention should be focused on the narrow range of issues it is being asked to decide in Phase B.

Therefore, the Court will have the parties present to the jury evidence relevant only to the remaining claims, the issue of fraudulent concealment (as discussed below), and any legal defenses to the remaining claims.

### III. FRAUDULENT CONCEALMENT JURY ISSUE

Also discussed at Friday and Monday's hearing was the issue of fraudulent concealment and its relationship with the previously-adjudicated statute of limitations issue. From the Court's perspective, two issues need to be resolved.

First is the jury's role with respect to a finding of fraudulent concealment. Both parties agree that the issue of whether Mattel has established a period of fraudulent concealment should be submitted to the jury. However, at Friday's hearing, Mattel suggested that the Court's findings as a matter of law on summary judgment regarding the statute of limitations places limitations on the time period during which the jury may find fraudulent concealment. Tr. at 100. Specifically, Mattel attempted to link the Court's findings regarding the earliest possible accrual date of Mattel's claims -- other than conversion and intentional inference with contractual relations -- with the period of fraudulent concealment to be determined by the jury regarding these two claims.

The Court's conclusion regarding the narrow range of possible accrual dates for Mattel's state-law claims, other than the conversion and intentional interference with contractual relations claims, was linked to a specific test relating to California's so-called "discovery rule," which the Court will not repeat here. See May 27, 2008, Order re Statute of Limitations Defense at 4 - 8. In the Court's June 2, 2008, Further and Final Order Re Statute of Limitations Defense, the Court noted that, because the claims for conversion and intentional interference with contractual relations are not subject to the discovery rule, "the conclusions drawn by the Court regarding the possible accrual dates for the remaining state-law claims do not apply to" these claims. Id. at 3. As noted by the Court in that Order, "[w]hether a period of fraudulent concealment exists, as well as the

MINUTES FORM 90                                                                Initials of Deputy Clerk: jh
CIVIL -- GEN

8

EXHIBIT ___4___

PAGE ___42___

Case 2:04-cv-09049-DOC-RNB    Document 4266-2    Filed 08/18/08    Page 46 of 46    Page ID
#:106531
       Case 2:04-cv-09049-SGL-RNB       Document 4154       Filed 07/24/2008       Page 9 of 9

duration of any such period, . . . are . . . questions of fact for the jury." Id. If Mattel believes that this approach is erroneous, then it may file, in an introductory statement to its proposed jury instructions, a short statement of legal argument in support of its position, to which, of course, MGA may respond.

Second is the scope of the relevant evidence regarding fraudulent concealment. As articulated by the Court at Monday's hearing (and before that, in its statute of limitations summary judgment orders cited above), the relevant issues -- or, stated otherwise, the ultimate facts -- are whether and for what time period the MGA defendants fraudulently concealed from Mattel the fact that Carter Bryant worked on the Bratz drawings during his period of employment with Mattel. See Tr. at 5317-19. The relevant evidence, of course, may extend beyond that boundary. See Fed. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.") (emphasis added). For instance, evidence of Mattel's knowledge of (and evidence regarding MGA's concealment of) the fact that Carter Bryant was involved at some point with the Bratz project in general is relevant to -- but by no means dispositive of -- the ultimate facts of whether and for what time period the MGA defendants fraudulently concealed from Mattel the fact that Carter Bryant worked on the Bratz drawings during his period of employment with Mattel.

This distinction is in accord with that made by the Court yesterday regarding the admission of "Phase 2 evidence" in Phase 1B. Although the relevant issues have been, more or less, neatly dissected into various phases to facilitate efficient adjudication, the relevant evidence is not as conducive to any surgical cuts and has thus far managed to allude such neat dissection. Therefore, although counsel should conduct themselves in accordance with the general principles articulated herein and elsewhere on the record, relevancy, and other limits thereon placed on admissibility of evidence, most notably Fed. R. Evid. 403, will continue to be determined by the Court as objections are raised at trial.

**IT IS SO ORDERED.**

MINUTES FORM 90                                                    Initials of Deputy Clerk:  jh
CIVIL -- GEN

                                             9

EXHIBIT ____4____

PAGE ____43____