# EXHIBIT 7

## MODIFICATION AND CLARIFICATION
## OF THE 2000 AGREEMENT

MGA Entertainment, Inc., having an office and principal place of business at 16730 Schoenborn Street, North Hills, California 91343 (hereinafter "MGA") and Carter Bryant, an individual residing at 694 W. Mount Vernon, #264 Nixa, MO 65714 (hereinafter "Bryant") hereby modify and clarify the intent of the parties in, and meaning of, the agreement entered into between the parties in 2000.

### RECITALS

WHEREAS MGA has retained and continues to retain Bryant to perform services relating to the Bratz Property (defined below) for MGA; and

WHEREAS Bryant has performed and continues to perform services for MGA with the understanding that all Intellectual Property Rights (defined below); title and interest of every kind and nature now known or unknown, or hereafter created or coming into force as a result of such services being performed by Bryant for MGA, shall be owned exclusively by MGA;

NOW THEREFORE, as set forth herein, MGA and Bryant confirm that it was and is the intent of the parties that MGA is the owner of all Intellectual Property Rights worldwide, in perpetuity pertaining to the Bratz Property.

### AGREEMENTS

1. DEFINITIONS. For the purposes of this Modification and Clarification Agreement, the following terms shall have the following meanings:

    1.1 "Bryant's Services" or "Services" means all creative and production services and materials used to develop, create, design, render, produce, or deliver the Projects (defined below).

    1.2 "Bratz Property" means and refers to MGA's famous Bratz property consisting of, without limitation, the BRATZ Characters (including without limitation, SASHA, CLOE, DANA, YASMIN, JADE, MEYGAN, FIANNA, NEVRA, DYLAN, CADE, EITAN, CAMERON and KOBE), and all intellectual and industrial property rights associated therewith, including without limitation all copyrights, patents, trademarks, industrial designs, design rights and trade dress rights in any country of the world.

    1.3 "Materials" includes all results and proceeds created in or by the Projects including all additions, deletions, alterations, or revisions to the Projects, and all drafts, notes, concepts, ideas, suggestions, and approaches related thereto or contained therein, or other materials including, without limitation, artwork, sketches, specifications, designs, drawings, models, prototypes, sculptures, works of artistic craftsmanship or other tangible work developed, produced, created or furnished by Bryant, and each element and part thereof, and all results and proceeds thereof.

    1.4 "Projects" means and refers to any and all projects worked on by Bryant with respect to the Bratz Property, and includes, without limitation, all the projects listed or identified

1

ATTORNEY'S EYES ONLY

MGA000429



EXHIBIT 1
PAGE 15    1-5-04    S13

on any invoice provided by Bryant to MGA, all the projects listed or identified on any purchase order provided by MGA to Bryant, and any and all projects otherwise worked on by Bryant with respect to the Bratz Property.

1.5 "Intellectual Property Rights" means copyright rights, trademark rights, patent rights, design rights, industrial designs, trade secrets, moral rights, rights of publicity, authors' rights, contract and licensing rights, goodwill and all other rights as may exist now and/or hereafter come into existence which arise out of the performance by Bryant of the Services, and including all renewals and extensions thereof, regardless of whether such rights arise under the law of the United States or any other state, country or jurisdiction.

1.6 The "2000 Agreement" means the agreement entered into between MGA and Bryant in 2000.

2. INTENT. Bryant confirms, acknowledges and agrees that it is the continuing intent, and has always been the intent of the parties from the beginning of their contractual relationship, that MGA shall own, in the United States and in all other countries and jurisdictions of the world, all Intellectual Property Rights subsisting in all Services and Materials created and worked on by Bryant. Bryant confirms, acknowledges and agrees that in order to effect this intent in any country or jurisdiction, he will execute the assignments and any and all other documents necessary to confirm this Agreement. In addition, Bryant confirms, acknowledges and agrees that but for Bryant's agreement that MGA shall own all Intellectual Property Rights worldwide pertaining to the BRATZ Property, MGA would not have employed Bryant and would not have entered into the 2000 Agreement. Bryant further confirms, acknowledges and agrees that all services rendered by Bryant in connection with one or more Projects have been, or will be rendered, on behalf of MGA and that the results and proceeds thereof, including, without limitation, all Materials of whatever nature rendered by Bryant hereunder, were and/or will be created by Bryant as a work made for hire specially ordered or commissioned by MGA, and that as a work made for hire all rights vest in MGA. To the extent that any such rights in all Services and Materials did not or do not automatically vest in MGA as a work made for hire, Bryant confirms, acknowledges and agrees that for good and valuable consideration, the receipt and adequacy of which he acknowledged in the 2000 Agreement and hereby acknowledges again, Bryant irrevocably granted, assigned and transferred and continues to grant, assign and transfer to MGA all of Bryant's worldwide rights, title and interest in and to the Services and Materials upon creation. Bryant shall, at the request of MGA, execute additional documentation, assignments or other agreements confirming the original intention of the parties that all Intellectual Property Rights vest in MGA in all countries and jurisdictions, and evidencing the existence of this Modification and Clarification Agreement.

3. RIGHTS.

3.1 MGA shall solely and exclusively own throughout the world in perpetuity all right, title, and interest of every kind and nature now known or hereafter created in and to the Projects and the Materials. Such rights, title, and interest shall include, without limitation, (i) all Intellectual Property Rights; (ii) all of the results, products and proceeds of Bryant's Services hereunder; (iii) all original ideas in connection therewith; and (iv) all rights generally known as "moral rights of authors."

2

ATTORNEY'S EYES ONLY

MGA000430

EXHIBIT 7
PAGE 7o

EX 17-0002

3.2     Without limiting section 3.1, with respect to all work done by Bryant prior to September 18, 2000, which became known as the Bratz Property, including without limitation the drawings which are the subject of Copyright Registration Nos. VA 1-218-487, VA 1-218-488, VA 1-218-489, VA 1-218-490 and VA 1-218-491 (and the characters that are now referred to as CLOE, JADE, SASHA and YASMIN) and during the same period, all additions, deletions, alterations, or revisions, and all drafts, notes, concepts, ideas, suggestions, and approaches related thereto or contained therein, and other materials including, without limitation, artwork, sketches, specifications, designs, drawings, models, prototypes, sculptures, works of artistic craftsmanship or other tangible work developed, produced, created or furnished by Bryant, and each element and part thereof, and all results and proceeds thereof, Bryant confirms that through the 2000 Agreement, he did irrevocably grant, assign, and transfer to MGA all of Bryant's right, title, and interest worldwide in and to the Services and Materials and the results and proceeds thereof including, without limitation, all right, title and interest in (i) all Intellectual Property Rights in the United States of America and in all other countries throughout the world; (ii) all versions and derivative works of the Materials, and all copyrights in and to such other versions, derivative works, and all renewals and extensions thereof, in the United States of America, and all copyrights and proprietary rights therein in all other countries throughout the world; and (iii) all causes of action for infringement of the copyright and of all other rights of whatsoever nature, vested or contingent, past, present and future, in and to the Materials in the United States of America and in all other countries throughout the world and all of the proceeds from the foregoing, accrued and unpaid and hereafter accruing. To the extent the 2000 Agreement does not operate to effect such irrevocable grant, assignment, and transfer, by this Modification and Clarification Agreement, Bryant hereby irrevocably grants, assigns, and transfers to MGA all of such rights as set forth in sections (i)-(iii) contained in this paragraph. For the purposes of this paragraph and the 2000 Agreement, Bryant hereby appoints MGA as attorney-in-fact for the limited purpose of effecting this assignment and executing all documents necessary to effect this assignment. This power of attorney is coupled with an interest and is irrevocable. Bryant confirms, acknowledges and agrees that the compensation paid to Bryant includes consideration for this grant, assignment and transfer, and Bryant further acknowledges by its signature on this Agreement the adequacy and sufficiency of the consideration therefor.

3.3     Without limiting section 3.1, Bryant confirms and acknowledges that Bryant's Services after September 18, 2000, and all results and proceeds thereof, including, without limitation, the Materials, are and were works done under MGA's direction and control, are and have been specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a supplementary work, or as a compilation, and that all such services, results, and proceeds shall be considered work made for hire. As agreed by the parties at the outset of their relationship, as between Bryant and MGA, MGA shall be considered the author of the Materials and shall own all the rights in and to the Materials including, without limitation, all Intellectual Property Rights, and shall have the right to register the copyrights and other Intellectual Property Rights therefor in MGA's name or in the name of its nominee.

3.4     To the extent that any rights in the work or services set forth in section 3.3, in whole or in part, did not or do not vest in MGA as a work made for hire or otherwise in the United States or any other country, Bryant confirms that he did, does and will irrevocably grant, assign, and transfer to MGA all of Bryant's right, title, and interest worldwide in and to the Services and Materials and the results and proceeds thereof including, without

C:\Documents and Settings\bwad\Local Settings\Temporary Internet Files\OLKX\Bryant Agreement.doc

3

ATTORNEY'S EYES ONLY

MGA000431

EXHIBIT 7
PAGE 71

EX 17-0003

limitation, all right, title and interest in (i) all Intellectual Property Rights in the United States of America and in all other countries throughout the world; (ii) all versions and derivative works of the Materials and all copyrights in and to such other versions, derivative works, and all renewals and extensions thereof, in the United Sates of America, and all copyrights and proprietary rights therein in all other countries throughout the world; and (iii) all causes of action for infringement of the copyright and of all other rights of whatsoever nature, vested or contingent, past, present and future, in and to the Materials in the United States of America and in all other countries throughout the world, and all of the proceeds from the foregoing, accrued and unpaid and hereafter accruing. For this purpose, Bryant hereby appoints MGA as attorney-in-fact for the limited purpose of effecting this assignment and executing all documents necessary to effect this assignment. This power of attorney is coupled with an interest and is irrevocable. Bryant confirms, acknowledges and agrees that the compensation paid to Bryant includes consideration for this grant, assignment and transfer, and Bryant further acknowledges by its signature on this Agreement the adequacy and sufficiency of the consideration therefor.

3.5  MGA shall have the sole and exclusive right throughout the world, in all languages, in perpetuity to use and exploit all or any part of the Materials and all or any part of any material contained therein or prepared therefor, whether or not used therein, in any format or version, by any means and in any media, whether now or hereafter known or developed, each without further payment or consideration to Bryant. Without limiting the foregoing, Bryant hereby waives any and all claims that Bryant may now or hereafter have in any jurisdiction to so-called "moral rights" or "droit moral" with respect to the results and proceeds of Bryant's Services hereunder.

3.6  Bryant represents and confirms that he is the sole creator of all Materials contributed by Bryant, that he had no employees, agents, subcontractors, vendors and/or independent contractors working on the Projects, and therefore that no copies of Exhibit A to the 2000 Agreement were ever signed, as none were required.

3.7  Bryant acknowledges, confirms and agrees that with respect to this Modification and Clarification Agreement, he has received valuable consideration, the adequacy and sufficiency of which is hereby acknowledged, that this Modification and Clarification Agreement is fully enforceable, and that Bryant's assignment of rights to MGA and acknowledgement of rights as set forth herein and in the 2000 Agreement (including without limitation the work-made-for-hire nature of Bryant's work as set forth in section 3.3 herein) are irrevocable and, subject only to the Copyright Act, non-terminable. If MGA breaches its obligations under this Modification and Clarification Agreement or the 2000 Agreement, the damage, if any, caused to Bryant shall not be irreparable or sufficient to entitle Bryant to injunctive or other equitable relief. Consequently, Bryant's rights and remedies in such cases shall be limited to the right, if any, to obtain damages at law and Bryant shall not have any right in such event to terminate, revoke or rescind this Modification and Clarification Agreement or the 2000 Agreement or any of the rights granted to MGA hereunder or in the 2000 Agreement, or to enjoin or restrain any manufacturing, production, advertising, promotion, distribution or exploitation of the BRATZ Property, any derivative work, and/or any of MGA's rights hereunder or under the 2000 Agreement.

4.  ADDITIONAL PROVISIONS

C:\Documents and Settings\Uvm\Local Settings\Temporary Internet Files\OLK3\Bryant Agreement.doc

4

ATTORNEY'S EYES ONLY

MGA000432

EXHIBIT 7
PAGE 76

EX 17-0004

4.1. Other than as set forth herein, the 2000 Agreement remains in full force and effect. The 2000 Agreement, as clarified and modified by this document, constitutes the entire and final agreement of the parties with respect to the subject matter hereof and supersedes any and all prior agreements, representations, promises and undertakings of any kind, whether oral or written. In the event of any conflict between this Modification and Clarification Agreement and the 2000 Agreement or any other agreement, the parties agree that this Modification and Clarification Agreement shall govern.

4.2. The parties understand and agree that the 2000 Agreement was entered into between Carter Bryant and ABC International Traders, Inc. d/b/a MGA Entertainment and that ABC International Traders, Inc. is now known as MGA Entertainment, Inc.

4.3. MGA may freely assign any or all of its Intellectual Property Rights, including any and all rights in the Bratz Property.

4.4. The 2000 Agreement and this Modification and Clarification Agreement shall be binding upon and shall inure to the benefit of the parties and their respective successors and assigns. Bryant shall not voluntarily or by operation of law assign, transfer, encumber or otherwise dispose of all or part of any rights or obligations set forth in the 2000 Agreement or this Modification and Clarification Agreement.

4.5. Any amendment or modification of the 2000 Agreement or this Modification and Clarification Agreement, or any waiver of the terms, in order to be binding, must be written and signed by the parties hereto.

4.6. Except as expressly stated in the 2000 Agreement and this Modification and Clarification Agreement, no party hereto has made any statement or representation to any other party hereto regarding any facts relied upon by said party in entering into these agreements, and, except for the representation and warranties stated in these agreements, each party hereto specifically does not rely upon any statement, representation or promise of any other party hereto in executing these agreements.

4.7. Each of the parties to this Modification and Clarification Agreement represents and warrants that as of the date of this agreement it has the right and authority to execute this agreement on its or his behalf, and that it or he has not sold, assigned, transferred, conveyed, or otherwise disposed of any claim or demand relating to any right surrendered by virtue of this agreement. Each of the parties to this agreement represents and warrants that it or he has not entered into any agreements which conflict with this agreement and has taken the necessary steps to give effect to this Modification and Clarification Agreement.

4.8. This Modification and Clarification Agreement and the 2000 Agreement will be governed by and construed in accordance with federal laws of the United States and the laws of the State of California applicable to agreements entered into, and to be performed entirely, within California without regard to choice of law provisions and regardless of the place or places of its actual execution or performance. Any suit, action or proceeding between or among any of the parties hereto arising out of or related to these agreements shall be brought solely in the United States District Court, Central District of California, or the Superior Court, County of Los Angeles, and Bryant hereby submits to the personal jurisdiction thereof and agrees to such court as the appropriate venue.

5

ATTORNEY'S EYES ONLY

MGA000433

EXHIBIT 7

PAGE 79

EX 17-0005

4.9. These agreements are severable. If any provision of the 2000 Agreement or this Modification and Clarification Agreement is found invalid or unenforceable in any jurisdiction, that provision, as to that jurisdiction, will be ineffective to the extent of such invalidity or unenforceable without rendering invalid or unenforceable the other remaining provisions of these agreements, which other remaining provisions will not be affected and shall remain in force, to the maximum extent permissible.

4.10. This Modification and Clarification Agreement may be executed in one or more counterparts, and by facsimile transmission, each copy of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument, but this Agreement shall not be binding upon the parties until it has been signed by all parties.

Date: MAY 11, 2004

MGA ENTERTAINMENT, INC.

By: DAPHNE GRONICH
Its: SENIOR V.P. + GENERAL COUNSEL

Date: 5/5, 2004

By: CARTER BRYANT

6

ATTORNEY'S EYES ONLY

MGA000434

EXHIBIT 7
PAGE 80

EX 17-0006