# EXHIBIT 21

由此

HCA1883/2003

IN THE HIGH COURT OF THE
HONG KONG SPECIAL ADMINISTRATIVE REGION
COURT OF FIRST INSTANCE
ACTION NO.1883 OF 2003

---

BETWEEN

MGA ENTERTAINMENT INC. Plaintiff

and

DOUBLE GRAND CORPORATION LIMITED Defendant

---

Before : Deputy High Court Judge Muttrie in Chambers
Date of Hearing : 6 February 2006
Date of Judgment : 24 February 2006

---

JUDGMENT

---

1. The plaintiff is the manufacturer of "Bratz" dolls and the defendant the manufacturer of "Trendy Teenz" dolls. Both are representations of a young girl with a disproportionately large head and feet, and on the head, disproportionately large eyes and lips. The dolls are made in large and small sizes.

EXHIBIT 21
PAGE 207

由此



2. The plaintiff applied for an interim injunction against infringement of copyright and on 5 August 2003 the defendant gave undertakings against reproduction of the dolls. Now the plaintiff applies for summary judgment for a permanent injunction against infringement of copyright and ancillary relief.

3. The plaintiff pleads that it is the owner of the copyright subsisting in the original Artistic Works particularised in paragraph 3 of the Amended Statement of Claim, and that the defendant has infringed the Artistic Works by manufacturing, etc., "Trendy Teenz", "Mini Trendy Teenz" and "Rockerheadz" dolls and "Rockerheadz" doll pens, which are reproductions of the artistic works, without the licence of the plaintiff. It further pleads that the defendant knew or had reason to believe that the infringing dolls were infringing copies of the Artistic Works. I will call the allegedly infringing dolls simply "Teenz dolls".

4. The defendant does not deny manufacturing and selling the Teenz dolls. It does not admit that the intellectual property rights subsist in the plaintiff. However, it denies that the Teenz dolls were copies or substantial copies of the plaintiff's Bratz dolls, and says that they were created through the defendant's own independent design. It therefore owns the copyright in the Teenz dolls. It further says that the special features of the dolls such as the head, eyes, nose, lips, body and shoes of the Bratz dolls are very common in the doll industry.

5. The Artistic Works consist of:

(a) two design drawings, one of the "Zoe" model and one of the head only;

EXHIBIT 21
PAGE 208

由此



(b) a set of polyurethane samples of the head and body of the mini Bratz doll;

(c) a picture of the face design of the "Cloe" model dated "Fall 2001";

(d) one facial drawing of eye design and one pantone colour guide of "Cloe"; and

(e) the décor master of "Cloe".

6. The plaintiff's case is that the defendant's Trendy Teenz dolls, Mini Trendy Teenz, Rockerheadz dolls and Rockerheadz pens are reproductions of a substantial part of its "Cloe" model's facial decoration and the Mini Trendy Teenz are reproductions of a substantial part of the body and head sculpt of "Cloe". Apparently "Zoe" in the first picture later became "Cloe".

7. Evidence of the ownership of the Artistic Works is given in the affidavit of the plaintiff's General Counsel, Daphne Gronich. It is made pursuant to section 121 of the Copyright Ordinance, Cap.528 and, since it fulfils the requirements of that section, is to be admitted without further proof. There is nothing to contradict this evidence. I accept that the plaintiff is the owner of the copyright in the Artistic Works.

8. The plaintiff's case is based on primary infringement by copying, under section 23 of the Ordinance and there is no need to show knowledge on the plaintiff's part.

9. It is for the claimant to prove copying to the ordinary civil standard. The defences are independent creation and common source.

EXHIBIT 21

PAGE 209

由此



This being an application for summary judgment, there is a threshold onus on the defendant to show a triable issue : *Murjani v. Bank of India* [1990] 1 HKLR586. The defendant must show a fair or reasonable possibility of having a real or *bona fide* defence :*Banque de Paris v. Costa de Naray* [1984] 1 Lloyd's Rep. 21.

10. *Copinger & Skone James on Copyright*, 15th ed., at 7-17 explains the law on proof of copying in this way :

> "In most cases copying can only be deduced by inference from all the surrounding circumstances because normally there will be no evidence from anyone 'being present and looking over the [defendant's] shoulder' at the time he designed or made his work. The case will therefore normally start with establishing substantial similarity combined with the possibility of access. Where there is substantial similarity this is prima facie evidence of copying and also of access. Once a prima facie case is established in this way, a shift in the evidential burden takes place which the party charged may refute by evidence of independent creation or by giving some alternative explanation for the similarities. The task of the judge is then to decide, on the evidence as a whole, whether or not there has been copying. This can be summarised by saying that proof of sufficient similarity, coupled with proof of the possibility of access, raises a prima facie case or inference of copying for the defendant to answer. This shifting of the burden of proof is merely one of plain, rational thought."

11. The substantial similarity between the plaintiff's drawings and the dolls produced from them, and the defendant's dolls are obvious on inspection. There are, of course, some differences. The lips, though in both cases puffed up, are slightly different in shape. The eyelashes are slightly different, though the eye colours and the plaintiff's pantone eye colour chart are exactly the same. On the small dolls, some of the shoes, which are interchangeable by the same snap-on fastening on both the

EXHIBIT 21

PAGE 210

Teenz and the Bratz dolls, are absolutely identical. Even the packaging, provision of accessories and so on are strikingly similar.

12. As to access, the Bratz dolls were launched on the market before the Teenz dolls were produced and this indicates at any rate the possibility of access which is in any event to be inferred from the striking similarities.

13. The defendant's evidence comes from Peter Leung and Leung Wai Hung, who are brothers. Peter Leung affirms that in late 2000 the plaintiff, which already manufactured "Little Big Eyes" and "Mini Little Big Eyes" dolls planned to make a Chinese opera singer doll but later abandoned this project because of cost. However, the steel mould of the head and the design of the outline of the eyes were kept and later used for the Teenz dolls. At the suggestion of a customer, these features were later modified, after reference to some doll websites, in particular one called "Funky Girl Model", magazines and a Japanese postcard, to produce the Teenz prototype. At the suggestion of the same customer, the smaller dolls were also designed. Peter Leung and an American designer designed the Rockerheadz dolls and he designed the Rockerheadz pens. He says that the exaggerated eyes and mouth and facial features are common in the market as is the shoe snap-on function. Leung Wai Hung gives much the same evidence in a short affirmation.

14. Mr Shipp, counsel for the plaintiff, argued that the defence evidence consists of bare affirmations, and there is nothing really to support independent creation; there is a dearth of design drawings, prototypes and the like. He relies on dicta in *Murjani* and in *Tandy/Rank*

由此



*Video v. Yee Hing Cassette Factory Ltd* [1991] 1 HKC 3 to the effect that the mere assertion in an affidavit of a given situation which was to be the basis of a defence does not *ipso facto* provide leave to defend. He also relies on further passages in *Copinger & Skone James* and the authorities there cited, to the effect that a bare denial of copying without any explanation of the similarities is unlikely to be convincing.

15. Mr Leung argued at some length about the differences in the dolls, and sought to show by reference to other pictures that some of the features are common in the trade. However, this cannot overcome the absence of any kind of documentary evidence to show independent design. While Mr Leung argued that a small company, such as the defendant, would not produce drawings in the same way as a large company like the plaintiff, it is impossible to imagine that dolls could be mass-produced without design drawings. There is really nothing to explain away the points of similarity. It is also to be noted that there are discrepancies and contradictions in the evidence on dates and other matters, and of course these have to be taken into account in deciding whether the threshold onus has been passed.

16. Having considered the affirmation evidence herein, it seems to me that the defendant has not shown a fair or reasonable possibility of having a real or *bona fide* defence. This is, therefore, a proper case for Order 14.

*Judgment*

17. There will be an order in terms of paragraph 1 of the plaintiff's summons.

EXHIBIT 21

PAGE 212

由此



18. I do not know whether the need remains for an order for delivery up in terms of paragraph 2 or for an affirmation in terms of paragraph 6 of the summons. This seems to have been dealt with already; see the affirmations of Leung Wai Hung dated 18 August and 11 October 2003. I will make no order in terms of paragraphs 2 and 6 but the plaintiff will have liberty to apply.

19. As to damages, the plaintiff will have leave to apply for an inquiry, in terms of paragraph 3 and there will be an order in terms of paragraph 5 for payment of any damages found due.

20. I heard no argument on the application in paragraph 4 for additional damages under section 108(2) of the Ordinance and have been pointed to no evidence in support of it so I will not include any order for such damages.

21. The plaintiff is awarded the costs of the action including the costs of the Order 14 summons, to be taxed if not agreed.

(G.P. Muttrie)
Deputy High Court Judge

Mr Colin Shipp, instructed by Messrs William W.L. Fan, for the Plaintiff

Defendant, in person