THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
(laguiar@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA  90071-3144
Tel.: (213) 687-5000
Fax: (213) 687-5600

Attorneys for The MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>　　　　　Defendant.<br><br>AND CONSOLIDATED ACTIONS. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>Honorable Stephen G. Larson<br><br>MGA PARTIES' OPPOSITION TO MATTEL'S MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER FED. R. CIV. P. 50(A) FOR PHASE 1B<br><br>Hearing Date:　August 20, 2008<br>Time:　　　　　10:00 AM |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ..................................................................................................................... 1

    I.    MATTEL IS NOT ENTITLED TO JMOL ON "INDEPENDENT CREATION" ............................................................................................................ 1

    II.   MATTEL IS NOT ENTITLED TO JMOL ON FRAUDULENT CONCEALMENT .................................................................................................. 3

    III.  MATTEL IS NOT ENTITLED TO JMOL ON SUBSTANTIAL SIMILARITY ............................................................................................................ 7

        A.    The Court Has Already Rejected Mattel's Judicial Estoppel Argument ............................................................................................... 7

        B.    Whether The First Generation BRATZ Dolls Are Substantially Similar To The Bryant Drawings Is A Factual Issue For The Jury .......... 9

CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

## CASES

Page(s)

Abercrombie & Fitch Company v. Moose Creek, Inc.,
    486 F.3d 629 (9th Cir. 2007) .................................................................. 8

Bethea v. Burnett,
    CV 04-7690 JFWPLAX,
    2005 WL 1720631 (C.D. Cal. June 28, 2005) ........................................ 2, 3

Calhoun v. Lillenas Publishing,
    298 F.3d 1228 (11th Cir. 2002) ............................................................... 2

Clemens v. DaimlerChrysler Corporation,
    Case No. 06-56410,
    __ F.3d __, 2008 WL 2840662 (9th Cir. July 24, 2008) ......................... 4

Cosmos Jewelry, Ltd v. Po Sun Ho Company,
    Case No. CV 03-753 CBM,
    2006 US Dist LEXIS 97115 (C.D. Cal. Apr. 5, 2006) ............................ 2

Diamond v. Davis,
    680 A.2d 364 (D.C. 1996) ...................................................................... 5

Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.,
    122 F.3d 1211 (9th Cir. 1997) ................................................................ 3

Feist Publications, Inc. v. Rural Telephone Services Co.,
    499 U.S. 340, 361 (1991) ........................................................................ 9

Flores v. Emerich & Fike,
    Case No. 05-CV-0291 AWI (DLB),
    2008 WL 2489900 (E.D. Cal. June 18, 2008) ....................................... 4, 6

Funky Films, Inc. v. Time Warner Entertainment Company, L.P.,
    462 F.3d 1072 (9th Cir. 2006) ................................................................ 10

Garamendi v. SDI Vendome S.A.,
    276 F. Supp. 2d 1030 (C.D. Cal. 2003) .................................................. 4, 5

Granite Music Corporation v. United Artists Corporation,
    532 F.2d 718 (9th Cir. 1976) .................................................................. 2, 3

Harbeson v. Parke Davis, Inc.,
    746 F.2d 517 (9th Cir. 1984) .................................................................. 3

Herbert Rosenthal Jewelry Corporation v. Kalpakian,
    446 F.2d 738 (9th Cir. 1971) .................................................................. 3

Hobson v. Wilson,
    737 F.2d 1 (D.C. Cir. 1984) ................................................................... 4, 5

Idema v. Dreamworks, Inc.,
    162 F. Supp. 2d 1129 (C.D. Cal. 2001) .................................................. 2

John L. Perry Studio, Inc. v. Wernick,
  597 F.2d 1308 (9th Cir. 1979) .................................................................................... 2

Keeler Brass Company v. Continental Brass Company,
  862 F.2d 1063 (4th Cir. 1988) .................................................................................... 2

Mars, Inc. v. JCM American Corporation,
  Civil No. 05-3165 (RBK),
  2008 U.S. Dist. LEXIS 21089 (D.N.J. Mar. 17, 2008) ............................................... 8

Migliori v. Boeing North Am., Inc.,
  114 F. Supp. 2d 976 (C.D. Cal. 2000) ........................................................................ 5

Parsons v. Tickner,
  31 Cal. App. 4th 1513 (1995) ..................................................................................... 4

Pfizer, Inc. v. Ranbaxy Laboratories Limited,
  457 F.3d 1284 (Fed Cir. 2006) ................................................................................... 8

Platt Electrical Supply, Inc. v. EOFF Electrical, Inc.,
  522 F.3d 1049 (9th Cir. 2008) .................................................................................... 4

Reeves v. Sanderson Plumbing Products, Inc.,
  530 U.S. 133 (2000) .................................................................................................... 8

Riddell v. Riddell Wash. Corp.,
  866 F.2d 1480 (D.C. Cir. 1989) .............................................................................. 4, 5

Rita M. v. Roman Catholic Archbishop,
  187 Cal. App. 3d 1453 (1986) .................................................................................... 5

Smith v. Jackson,
  84 F.3d 1213 (9th Cir. 1996) .................................................................................... 10

Snapp & Associates Insurance Services, Inc. v. Malcolm Bruce Burlingame Robertson,
  96 Cal. App. 4th 884 (2002) ....................................................................................... 4

Soliman v. Philip Morris Inc.,
  311 F.3d 966 (9th Cir. 2002) ...................................................................................... 4

Thorman v. American Seafoods Co.,
  421 F.3d 1090 (9th Cir. 2005) ................................................................................ 4, 6

Three Boys Music Corporation v. Bolton,
  212 F.3d 477 (9th Cir. 2000) ...................................................................................... 2

Warner Brothers, Inc. v. American Broadcasting Companies,
  654 F.2d 204 (2d Cir. 1981) ....................................................................................... 3

**STATUTES**

Federal Rule of Civil Procedure 50(a) ................................................................................. 1

**MISCELLANEOUS**

3-12 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12.11 (2008) ............. 3

4-13 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03 (2008) ............. 3

## PRELIMINARY STATEMENT

Based on a misunderstanding of the relevant law and a one-sided view of the facts, Mattel seeks judgment as a matter of law ("JMOL") on the MGA Parties' statute of limitations defense as well as the issues of independent creation and the substantial similarity element of Mattel's copyright infringement claim. As shown below, Mattel's motion should be denied as there are (at the very least) disputed issues of fact.

First, Mattel is not entitled to JMOL on the issue of the MGA Parties' independent creation as it is neither an affirmative defense that has been waived nor an attempt to subvert the jury's findings in Phase 1A. Rather, it is a legitimate means of negating Mattel's evidence of purported infringement, albeit one that Mattel obviously dislikes.

Second, as to Mattel's request for JMOL on the MGA Parties' statute of limitations defense, Mattel fails to appreciate that even assuming that Mattel has set forth sufficient proof of the alleged fraudulent concealment of the facts underlying its current claims (and it has not), Mattel simply ignores that the MGA Parties offered ample evidence to enable the jury to find that any tolling based on such fraudulent concealment ended as soon as Mattel suspected that there had been some wrong done to it in connection with the BRATZ.

Third, on the substantial similarity point, again Mattel ignores that MGA introduced ample evidence negating this element, which creates at least a genuine issue for the jury.[1]

## ARGUMENT

### I. MATTEL IS NOT ENTITLED TO JMOL ON "INDEPENDENT CREATION"

Mattel argues that "independent creation" is an "affirmative defense" that MGA waived "by not asserting it either in answer to Mattel's counterclaims or in the Final Pretrial Conference Order." (Mattel JMOL at 1, 2 n.2.)  Mattel is wrong: "'independent creation' is not an affirmative defense. The defendants, therefore, do not have the burden of persuasion for independent creation. [Plaintiff]'s *prima facie* case advanced the proposition that the

---

[1] Mattel's JMOL refers generically to the "Bratz dolls."  The MGA Parties have no basis for determining what Mattel means by this term.  At no point does Mattel specify whether it is referring to the first generation dolls, later dolls, other merchandise, or all of the above.  For this reason among others, Mattel's motion should be denied.  See Fed. R. Civ. P. 50(a)(2) (motion must "specify the judgment sought and the law and the facts that entitle the movant to the judgment").

defendants copied the design. Evidence of independent creation simply tends to prove the reverse of that proposition, i.e., that the design was not copied. A defense which points out a defect in the plaintiff's *prima facie* case is not an affirmative defense." Keeler Brass Co. v. Continental Brass Co., 862 F.2d 1063, 1066 (4th Cir. 1988) (emphasis added).[2] Thus, evidence of independent creation is relevant to rebut a copyright holder's *prima facie* case of "copying"; however, the burden of proving "copying" remains with the copyright owner (i.e., Mattel). Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1171 (C.D. Cal. 2001).

As the Ninth Circuit has explained, "[t]he burden of proof, i.e., the risk of non-persuasion, remains on the plaintiff throughout the presentation of the case, unless it is declared to be elsewhere by statute or practice." Granite Music Corp. v. United Artists Corp., 532 F.2d 718, 723 (9th Cir. 1976). Where the plaintiff creates an "inference of copying," the accused infringer may make an "affirmative offering of evidence" of "independent creation" which results in "what may be referred to as a shift in the duty of 'going forward.'" Id. at 723-24. The ultimate burden of proof of copying, however, remains with the plaintiff copyright holder. Id.[3] Because independent creation is not an affirmative defense, the MGA Parties did not waive their absolute right to present evidence concerning the independent creation of the accused items at issue in this case.[4] Indeed, the Court has

---

[2] Accord Calhoun v. Lillenas Publ'g, 298 F.3d 1228, 1230 n.3 (11th Cir. 2002) ("It should be emphasized that independent creation is not an affirmative defense (i.e., a claim extraneous to the plaintiff's *prima facie* case). Rather, independent creation attempts to prove the opposite of [the copyright owner's] primary claim, i.e., copying"); Cosmos Jewelry, Ltd v. Po Sun Ho Co., 2006 U.S. Dist. LEXIS 97115, at *3 (C.D. Cal. Apr. 5, 2006) ("[E]vidence relating to 'independent creation' does not constitute evidence relating to any previously-waived affirmative defense.").

[3] Similarly, in John L. Perry Studio, Inc. v. Wernick, 597 F.2d 1308 (9th Cir. 1979), the copyright owner "erroneously characterize[d] the foregoing burden of persuasion, the burden required to rebut the presumption of copying, as one of going forward with 'clear and convincing' or 'strong, convincing and persuasive evidence.'" Id. at 1310. The Court noted that this argument was rejected in Granite Music, and quoted with approval the above cited language from Granite Music, which explained the shifting burden of persuasion (not proof) on the issue of "copying." Id.

[4] Three Boys Music Corp. v. Bolton, 212 F.3d 477 (9th Cir. 2000), cited by Mattel, does not hold otherwise. Rather, the court cited Granite Music to support its holding that, "[b]y establishing reasonable access and substantial similarity, a copyright plaintiff creates a presumption of copying. The burden shifts to the defendant to rebut that presumption through proof of independent creation." Id. at 486. Three Boys did not hold that "independent creation" is an affirmative defense nor did it alter the fact that the plaintiff bears the ultimate burden of proof on the issue of copying. Mattel cites only one other case, Bethea v. Burnett, 2005 WL 1720631 (C.D. Cal. June 28, 2005),

*(cont'd)*

already recognized the propriety of MGA's evidence of independent creation and included a jury instruction on this issue (see Jury Instruction No. 29) and rejected Mattel's contention that this issue was waived (see Tr. 8/20/08 AM session; Tr. 6548:22-6549:6; 6524:5-24).

Mattel also wrongly argues that MGA's independent creation evidence offered during Phase 1B from such witnesses as Margaret Leahy and Paula Garcia is an improper attempt to have the jury "reconsider its verdict in Phase 1A." (Mattel JMOL at 2.) Under the Ninth Circuit precedent discussed above, MGA is entitled to rebut Mattel's *prima facie* case with evidence showing that the various accused BRATZ-related works were created completely independently of the Bryant drawings.[5] The MGA Parties have presented compelling evidence of independent creation, and it would be error to take this issue from the jury.[6]

## II. <u>MATTEL IS NOT ENTITLED TO JMOL ON FRAUDULENT CONCEALMENT</u>

Mattel's JMOL request on fraudulent concealment is based on a misunderstanding of the pertinent legal standard concerning the level of notice required to end tolling based on

---

*(cont'd from previous page)*
in support of its position. Although <u>Bethea</u> did use the phrase "affirmative defense," it is apparent that the court was actually applying the burden-shifting approach, as it quotes the test directly from <u>Three Boys Music</u>. <u>Id.</u> at *15. <u>Harbeson v. Parke Davis, Inc.</u>, 746 F.2d 517, 520 (9th Cir. 1984), also cited by Mattel, merely offers a general statement of the law of pleading affirmative defenses.

[5] See, e.g., <u>Granite Music</u>, 532 F.2d at 720-21 ("Any evidence pertaining to the manner in which the defendant created his composition is logically relevant: his training, the subject matter of the art, his access to other works or to the plaintiff's composition"; rejecting plaintiff's objection to jury instruction that "[a]ny evidence produced by the defendant which explains or accounts to the satisfaction of the jury for such similarity or identity, rebuts [the presumption of copying]"); <u>Warner Bros., Inc. v. Am. Broad. Cos.</u>, 654 F.2d 204, 211 (2d Cir. 1981) ("While '[n]o plagiarist can excuse the wrong by showing how much of his work he did not pirate,' … 'a defendant may legitimately avoid infringement by intentionally making sufficient changes in a work which would otherwise be regarded as substantially similar to that of the plaintiff's.'"); <u>Herbert Rosenthal Jewelry Corp. v. Kalpakian</u>, 446 F.2d 738, 741 (9th Cir. 1971) (plaintiff made a "strong circumstantial evidence of copying" which the court held was "not conclusive"; the accused infringer was permitted to "testif[y] to independent creation from identified sources other than plaintiff's [copyrighted] pin"); 3-12 <u>Nimmer on Copyright</u> § 12.11 (courts have "held that '[a]ny evidence produced by the defendant which explains or accounts to the satisfaction of the jury for such similarity or identity, rebuts such presumption [of copying]'"); 4-13 <u>Nimmer on Copyright</u> § 13.03 ("a defendant may legitimately avoid infringement by intentionally making sufficient changes in a work that would otherwise be regarded as substantially similar to plaintiff's").

[6] Mattel's reliance on <u>Entm't Research Group, Inc. v. Genesis Creative Group, Inc.</u>, 122 F.3d 1211 (9th Cir. 1997), is misplaced. The "costumes" at issue in that case involved exact duplication of such well-known characters as "Toucan Sam" and "Cap'n Crunch." Unlike this case, whether the 2-D and 3-D renderings of these characters were "substantial similar" was not at issue there.

fraudulent concealment. Mattel argues "near-actual" knowledge is the standard. (Mattel JMOL at 5 & 6 n.25.) The Ninth Circuit disagrees. As the Ninth Circuit recently observed, "California applies a special standard in cases of fraudulent concealment" under which a plaintiff must show, *inter alia*, "that the plaintiff <u>was not at fault</u> for failing to discover [its cause of action] or had no actual <u>or presumptive knowledge</u> of facts sufficient to put him on inquiry." <u>Clemens v. DaimlerChrysler Corp.</u>, __ F.3d __, 2008 WL 2840662, at *4 (9th Cir. July 24, 2008) (emphasis added).[7] Thus, presumptive knowledge suffices to end any claimed fraudulent concealment. <u>Id.</u>; <u>see also</u> <u>Platt Elec. Supply, Inc. v. EOFF Elec., Inc.</u>, 522 F.3d 1049, 1055-56 (9th Cir. 2008) (fraudulent concealment tolling ends when plaintiff "<u>should have been suspicious</u>" of the underlying facts at an earlier date and had "reason to at least suspect that a type of wrongdoing [that] ha[d] injured" him) (emphasis added).[8]

Emboldened by this heightened standard of notice it erroneously created for itself,[9]

---

[7] <u>See also</u> <u>Thorman v. Am. Seafoods Co.</u>, 421 F.3d 1090, 1094 (9th Cir. 2005) ("To establish fraudulent concealment, [plaintiff] <u>carries the burden of proving</u> that … [he] 'had neither actual <u>nor constructive knowledge</u>' of the[] operative facts despite his diligence in trying to uncover them.") (emphasis added); <u>Flores v. Emerich & Fike</u>, 2008 WL 2489900, at *21 (E.D. Cal. June 18, 2008); <u>Snapp & Assoc. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson</u>, 96 Cal. App. 4th 884, 890-891 (2002) ("The fraudulent concealment doctrine 'does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim.'"); <u>cf.</u> <u>Soliman v. Philip Morris Inc.</u>, 311 F.3d 966, 971-72 (9th Cir. 2002) (plaintiff on notice "<u>when, simply put, he at least 'suspects ... that someone has done something wrong' to him</u>") (emphasis added). (<u>Accord</u> MGA MSJ Opp'n at 22 n.16 (collecting cases).)

[8] <u>Platt</u> noted: "[i]n urging lack of means of obtaining knowledge [for purposes of fraudulent concealment], it must be shown that in the exercise of reasonable diligence the facts could not have been discovered at an earlier date." <u>Id.</u> at 1056. Discussing the level of notice sufficient to end the fraudulent concealment tolling, <u>Platt</u> noted the following passage from <u>Parsons v. Tickner</u>, 31 Cal. App. 4th 1513, 1525 (1995): "Under this rule constructive and presumed notice or knowledge are equivalent to knowledge. So, when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to [its] investigation (such as public records or corporation books), the statute commences to run."

[9] Mattel's lone authority for this erroneous standard is <u>Garamendi v. SDI Vendome S.A.</u>, 276 F. Supp. 2d 1030 (C.D. Cal. 2003). <u>Garamendi</u> starts off correctly noting: "[t]he defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or <u>until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it</u>." <u>Id.</u> at 1042 (emphasis added). But then <u>Garamendi</u> veers off course by discussing a "near-actual" knowledge standard. Assuming <u>Garamendi</u> survives <u>Clemens</u> and <u>Platt</u>, it should not be followed. <u>First</u>, its discussion of "near-actual" knowledge is *dicta*, as plaintiff there had <u>actual</u> notice of its claims. 276 F. Supp. 2d at 1042. <u>Second</u>, this *dicta* is based on cases applying D.C. law. <u>Id.</u> at 1042-43 ("[n]o California court appears explicitly to have adopted this formulation," i.e., "near actual" knowledge, and relying on <u>Riddell v. Riddell Wash. Corp.</u>, 866 F.2d 1480, 1494-95 (D.C. Cir. 1989), and <u>Hobson v. Wilson</u>,

*(cont'd)*

Mattel ignores the evidence showing that it should have suspected the facts underlying its interference and conversion claims long before the relevant deadlines. For instance, Mattel's interference claim relates to Bryant's entry into a contract with MGA while still a Mattel employee. Given the Court's preemption ruling, the timing of the creation of Bryant's Bratz drawings has <u>nothing</u> to do with this claim. Thus, the claim accrued when Bryant signed the contract with MGA and Mattel's fraudulent concealment defense fails as soon as Mattel had reason to suspect that Bryant had entered a contract with a competitor. Mattel has admitted to suspecting this very thing <u>before Bryant even left Mattel</u>. (Tr. 7410:11-7411:12.) Mattel's own phone records showed that Bryant called and faxed MGA while still working at Mattel. (TX 472.) Indeed, Mattel investigated that MGA allegedly was hiring away Mattel employees in March 2002. (TX 1195.1 RS, TX 1195.4 RS, TX 1195.66 RS.)[10]

---

*(cont'd from previous page)*
737 F.2d 1, 25 (D.C. Cir. 1984)). <u>Riddell</u> was disapproved on this very issue. See <u>Diamond v. Davis</u>, 680 A.2d 364, 372 (D.C. 1996) (declining to follow <u>Riddell</u> on its requirement of the "near-actual" knowledge standard to end fraudulent concealment tolling "as inconsistent with decisions that are binding upon us and the policies that motivate our accrual rules").  Although <u>Garamendi</u> suggests that <u>Hobson</u> was cited "approvingly" by a California court, the court that cited <u>Hobson</u>, <u>Rita M. v. Roman Catholic Archbishop</u>, 187 Cal. App. 3d 1453, 1460 (1986), merely relied on its statement of the rule that fraudulent concealment tolling ends once "'plaintiff is on notice of a potential claim'" and did <u>not</u> endorse a "near actual" knowledge standard.  While <u>Garamendi</u> also relied on <u>Migliori v. Boeing North Am., Inc.</u>, 114 F. Supp. 2d 976 (C.D. Cal. 2000), that court stated: "<u>discovery or inquiry notice of the facts terminates the tolling</u>." <u>Id.</u> at 984 (emphasis added).

[10] The evidence concerning Mattel's suspicions on the conversion claim show Mattel had constructive notice of this claim many years ago as well. Contrary to Mattel's assertions, the evidence shows that Mattel had reason to suspect that BRATZ must have been created when Bryant worked at Mattel, given that BRATZ dolls were first exhibited at the Hong Kong Toy Fair in January 2001. (Tr. 2001:1-6; 6141:6-22; 6134:5-8; TX 911.) Even Mattel's own self-serving testimony shows it takes more than three months, <u>even up to a year</u>, to take a line of dolls from creation to exhibition. (Tr. 518:6-22 (characterizing three month production schedule as "aggressive").) That fact, taken together with Mattel's knowledge in early 2001 that it was Bryant who created BRATZ, puts Mattel on notice of the ultimate issue here. (Tr. 2011:19-2018:17 (toy fair exhibitions of BRATZ in early 2001 should have made Mattel suspicious that an insider might have accessed Mattel's intellectual property and used it to create BRATZ); Tr. 4278:3-4279:15, 4285:22-4286:14, 4288:2-22, 4290:5-4291:22, 6828:20-6832:12, 7413:21-7416:3 (by early summer 2001, Mattel knew Bryant did the concept drawings for BRATZ, because "everybody talked about it"); Tr. 1122:14-23 (testimony that Mattel had first considered using the name "Brats" in connection with Diva Starz as early as January 2000; thus, by the summer of 2001, when Bryant's involvement with BRATZ became known to Mattel, Mattel had enough facts to suspect that Bryant began working on BRATZ while he was still at Mattel); Tr. 731:4-733:6, 1730:7-1731:10, 1734:2-1736:3, 1738:14-19 (BRATZ fan site monitored by Mattel at the time reveals Bryant as the creator of BRATZ by March 2002).)

Moreover, the purported evidence of fraudulent concealment is hotly disputed. "To establish fraudulent concealment, the <u>plaintiff carries the burden</u> of proving that … the defendant <u>affirmatively misled the plaintiff</u> as to the operative facts that gave rise to the claim." <u>Flores</u>, 2008 WL 2489900, at *21 (emphasis added). "<u>Merely keeping someone in the dark is not the same as affirmatively misleading him</u>." <u>Thorman</u>, 421 F.3d at 1095 (emphasis added); <u>see also id.</u> ("the defendants' '<u>silence</u> … does <u>not</u> constitute fraudulent concealment'") (emphasis added). Here, Mattel has not shown any attempts to affirmatively mislead Mattel, only that (at most) it was kept "in the dark" as to Bryant's creation of the BRATZ – <u>i.e.</u>, exactly the type of evidence that the Ninth Circuit held to be insufficient for fraudulent concealment in <u>Thorman</u>. Mattel argues that Larian and Garcia instructed employees to keep quiet about Bryant's involvement with BRATZ, based on a single disgruntled and self-interested former MGA employee's testimony (Mattel JMOL at 4 n.8.)[11] But both Larian and Garcia denied giving such instructions; Mattel has no other evidence to the contrary.[12] Instead, many witnesses testified under oath that they were never instructed nor instructed anyone else to conceal Bryant's identity; indeed, they discussed Bryant's involvement with BRATZ with then-Mattel employees.[13] Mattel dismisses this testimony as conclusory and self-serving (Mattel JMOL at 4), while relying

---

[11] Rachel Harris testified that she had been terminated by MGA, that at the time she gave her deposition testimony she had applied for a vacant position at Mattel, and at the time of trial continued to actively pursue employment at Mattel via an online application process. (Tr. 2389:14-2390:17.) Moreover, Harris said that Mercedeh Ward told her the reason to hide Bryant's identity was that he had presented the BRATZ concept to Mattel and Mattel passed (Tr. 2381:21-2382:1) but this is wholly inaccurate, calling into question Harris' truthfulness and/or memory.

[12] <u>See, e.g.</u>, Tr. 728:14-18, 887:14-888:7, 1725:2-9, 1738:20-1739:3, 1741:21-1742:6, 1742:15-18, 1743:5, 1751:20-21. Mattel also cites to Larian's email reacting to a posting on a Yahoo fan site revealing Bryant as a former Mattel employee and the BRATZ creator. (Mattel JMOL at 4, citing TX 4507.) But the MGA Parties already showed that this reaction was in response to the cease and desist letter that Mattel's current counsel sent to Larian on February 7, 2002, demanding that MGA remove all references to Mattel and Barbie from the site in question – clearly the source of the "legal grief" Larian referred to in his email. (<u>See</u> TX 17252, 4507.) Similarly, the "keep Carter under wraps" email (Mattel JMOL at 4, citing TX 4942) contains no evidence of any instruction to do so; moreover, Larian testified that he didn't even "recall paying attention to that portion of the e-mail", and no response suggests he did. (Tr. 1741:8-20.)

[13] <u>See, e.g.</u>, Tr. 1037:19-1038:1 (Maurus); 4278:3-4279:15, 4285:22-4286:14, 4287:20-22, 4288:2-22, 4290:5-4291:22, 6828:20-6832:12 (Leahy, detailing conversations with Mattel employees about Bryant's involvement), 1134:25-1135:21 (former Mattel consultant Linker testimony that he met with Garcia and Bryant (then still a Mattel employee) on October 12, 2000).

1  on actually self-serving and conclusory blanket statements of its own in-house counsel
2  Moore to the effect that Mattel had no notice of the underlying facts until it received a copy
3  of Bryant's contract with MGA in November 2003 (id. at 5). Similarly, Mattel's purported
4  evidence that Larian lied to the press is internally inconsistent with Mattel's admitted
5  suspicions at the time.[14] In short, there is a genuine factual dispute here.

### III. MATTEL IS NOT ENTITLED TO JMOL ON SUBSTANTIAL SIMILARITY

#### A. The Court Has Already Rejected Mattel's Judicial Estoppel Argument

With neither new facts nor new law, Mattel regurgitates its argument that the MGA Parties are judicially estopped from denying substantial similarity between the Bryant drawings and the first generation BRATZ dolls, ignoring that the argument has already been considered and rejected by this Court on multiple occasions. Mattel provides no reason why the Court should reconsider its decision and this argument should be rejected out of hand.

Mattel's judicial estoppel argument dates back to March 7, 2008, when it filed its Motion for Summary Judgment and presented statements made by MGA in foreign pleadings. (Mattel MSJ at 14.)[15] The Court denied summary judgment on this issue. (May 21, 2008 Order at 8-9.) Even Mattel had to acknowledge that this foreclosed the judicial estoppel arguments. (Tr. 5378:14-5379:12.) Mattel again raised judicial estoppel based on the Hong Kong statements during the motion *in limine* process and again the Court declined to find judicial estoppel. (See parties' briefs on MGA's Motion In Limine No. 3.) Mattel raised the issue of judicial estoppel a third time prior to the Phase 1B trial, and although the Court pointed to what it perceived as a "fundamentally unfair position," it rejected Mattel's

---

[14] For example, Mattel points to the Business Week interview and the San Fernando Valley Business Journal article as purportedly containing misleading information about BRATZ origins (Mattel JMOL at 4), while ignoring that both of them came out after the Wall Street Journal article on July 18, 2003, admittedly the basis for Mattel's investigation of Bryant (Tr. 6608:15-6609:4), where Larian not only disclosed that Bryant helped design the BRATZ and was a former Barbie designer, but also indicated that he had originally chosen Mr. Bryant's design during a time period when Mr. Bryant was still employed at Mattel. (TX 1A.1, 1A.2.) Moreover, the reporters cited by Mattel simply never asked Mr. Larian who drew the original concept drawings. (Tr. 1996:18-21.)

[15] Mattel pressed its judicial estoppel argument in its Reply in Further Support of its Motion for Summary Judgment, dated April 1, 2008, when it argued that "MGA's Opposition simply fails to confront its prior statements and conduct regarding the originality of the drawings" — even though the issue of originality of the Bryant drawings was never in dispute.

judicial estoppel argument, this time acknowledging the complex nature of the Hong Kong pleadings. (Tr. 5388:25-5389:4 ("The Court: And the Court is not going to let them do that. That's part of the reason I decline to go down and accept Mr. Zeller's invitation earlier on judicial estoppel, because I think there's too many complicating factors for the Court to do that."); Tr. 5403:7-11.) The Court confirmed its earlier decision rejecting judicial estoppel in its final jury instructions, noting that the jury may "consider any factual statements" made in such pleadings, but that "it is for you [the jury] to decide how much weight, if any, to give to those factual statements." (Final Jury Instruction No. 32.)

The time for raising reconsideration of this issue has long passed. Mattel offers no new evidence or legal authority that could justify it.[16] To find judicial estoppel, the positions taken in separate litigations must be "clearly inconsistent." Abercrombie & Fitch Co. v. Moose Creek, Inc., 486 F.3d 629, 633 (9th Cir. 2007). Mattel, despite its attempt to "connect the dots" between various Hong Kong statements, cannot show where in these other litigations MGA has ever stated, "clearly" or otherwise, that the first generation BRATZ dolls were substantially similar to the Bryant drawings, much less do so as a matter of undisputed fact. Moreover, applicable legal authority indicates that statements related to intellectual property claims made in foreign jurisdictions are rarely, if ever, found to have a preclusive effect under judicial estoppel principles.[17]

---

[16] In the JMOL, Mattel references two statements made by MGA in Hong Kong litigations. The first one is a statement by Lee Shiu Cheung in MGA v. Double Grand, which was referenced in Mattel's Motion for Summary Judgment (at 14-15), so the Court was aware of this statement when it rejected the judicial estoppel argument. Moreover, TX 952, which contains that statement, was not admitted into evidence during the trial. The second statement, which is Mr. Larian's statement regarding third party dolls that "have infringed the 2-dimensional [Bryant] drawings" (TX 12), was never read to the jury and never discussed in front of it in Phase 1B because it is a legal conclusion that the Court would not allow into evidence. A JMOL may only be based on evidence that has been presented to the jury. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Mattel also references the statement from a litigation in the Central District of California which, as MGA's former General Counsel explained during the Phase 1B trial, did not involve a claim of third party dolls infringing the Bryant drawings, but rather that the third party's *packaging art* was misappropriated from MGA's first generation packaging art, which MGA has conceded is a derivative work based on Bryant's work. (Tr. 5935:17-5940:21 (Gronich testimony).)

[17] See, e.g., Pfizer, Inc. v. Ranbaxy Labs. Ltd., 457 F.3d 1284, 1290 (Fed Cir. 2006) (finding that statements made during prosecution of a patent in foreign jurisdiction "are irrelevant to claim construction [in the United States] because they were made in response to patentability requirements unique to Danish and European law"); Mars, Inc. v. JCM Am. Corp., 2008 U.S. Dist. LEXIS 21089, at *39 (D.N.J. Mar. 17, 2008) ("The German action is in a foreign jurisdiction,

*(cont'd)*

### B. Whether The First Generation BRATZ Dolls Are Substantially Similar To The Bryant Drawings Is A Factual Issue For The Jury

During Phase 1B, MGA presented ample evidence for the jury to conclude that the first-generation BRATZ dolls are not substantially similar to the Bryant drawings.[18] For example, Margaret Leahy testified as to dozens of changes that she made between different sculpts. (See, e.g., Tr. 6724:11-6732:15; 6784:11-6797:10.) As the 2D drawings were not "turn-around" drawings that would have provided her with more "information" regarding the specifics of dimensions (depth, size, etc.), Leahy testified that she did not utilize the Bryant drawings to create her sculpt. Rather, she created her sculpt based on the Steve Madden advertisement and her own creativity and vision. (See, e.g., Tr. 6839:18-6842:8; 6852:24-6853:6; 6872:21-6873:19, 6930:5-12.)[19] Paula Garcia, project manager for BRATZ, testified about significant differences between Bryant's drawings and the final manufactured BRATZ sculpt, including differences in the expression of protectable elements such as the head, body proportions, feet, and posture. (See, e.g., Tr. 6933:13-6936:4.) Garcia also testified as to her role in making changes to make the doll marketable, like changing the face paint, abandoning the removable hair feature, and making changes in the fashions to make them workable in three-dimensions. (See, e.g., Tr. 6937:12-6938:3; 6941:6-6942:2; 6958:21-6960:4.) She also testified to differences between facial features of the drawings and the dolls, like the eyes and lips. (Tr. 6960:5-6969:7.)

These witnesses not only made specific comparisons of protectable elements of the works, but also testified as to differences in the "overall look and feel." (See, e.g., Tr.

---

*(cont'd from previous page)*
which likely has different burdens of proof and issues of law and fact; therefore, it is not clear that [defendant's] position is irreconcilably inconsistent with its position here.").

[18] Based on Mattel's statement that it "has established that the body proportions, facial features … of the first-generation Bratz dolls are similar to the Bryant-created Bratz drawings that the jury has found are owned by Mattel," the MGA Parties understand Mattel's motion to be directed toward substantial similarity of the first generation BRATZ dolls only. (JMOL at 8-9.) In their own Motion for a Judgment as a Matter of Law, the MGA Parties have addressed Mattel's failure to present evidence that demonstrates that the later generation BRATZ dolls, other BRATZ-related product lines, and branded merchandise are works that infringe Mattel's copyrights.

[19] Infringement requires proof of actual copying. See Feist Publ'n, Inc. v. Rural Tel. Servs. Co., 499 U.S. 340, 361 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."). This is addressed in greater detail above in connection with "independent creation," see supra Section I.

6791:15-21; 6794:6-11; 6809:20-23; 6941:10-6942:2; 6991:9-12; 7803:3-11; 7091:20-24.) This is relevant to the intrinsic test of copyright infringement, which the Ninth Circuit has found "is exclusively the province of the jury." Funky Films, Inc. v. Time Warner Entm't Co. L.P., 462 F.3d 1072, 1077 (9th Cir. 2006). Accord Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996); Expert Report of R. Lind at 9-10 ("[s]ubjective assessments of similarity in appearance … are deemed best suited to the trier of fact as part of the intrinsic test"). The need to send the substantial similarity question to the jury is emphasized by the Court's Jury Instruction No. 26, which specifies that the subjective (i.e., intrinsic) inquiry whether "girls between the ages of 7 and 12 … would determine or recognize the defendants' products as reflecting the total concept and feel" of Bryant's works.

While MGA introduced significant evidence on substantial similarity, Mattel offers less evidence than it did on its failed March 7, 2008 summary judgment motion.[20] Mattel's reference to the "inverse ratio test" is unavailing and misleading, as it suggests that Mattel has a "reduced burden to show substantial similarity." (Mattel JMOL at 8.) This is a position that the Court explicitly rejected, noting in Jury Instruction No. 27 that "the burden of proving substantial similarity by a preponderance of the evidence always remains with Mattel." Whether Mattel met that burden is for the jury to decide.

## CONCLUSION

For the foregoing reasons, Mattel is not entitled to a judgment as a matter of law.

DATED: August 20, 2008        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____/s/ Thomas J. Nolan_____
Thomas J. Nolan
Attorneys for the MGA Parties

---

[20] On summary judgment Mattel relied heavily on the comparisons a contained in the expert report of its art expert, Lee Loetz, to make specific comparisons of features of the drawings versus the dolls. (Mattel MSJ at 15-22.) But Loetz's testimony was not presented to the jury in Phase 1-B and so it cannot be considered now. Mattel's only other support is MGA's alleged "admission" of substantial similarity on supplementary copyright registrations for the doll configurations, accessories, and packaging. (See, e.g., TX 558, 560, 562, & 564.) However, Mattel ignores the Phase 1-B testimony of MGA's former general counsel, Daphne Gronich, who explained that the language in question referred to two-dimensional packaging art, which the MGA Parties have already conceded is a derivative work based on the Bryant drawings. (Tr. 5918-5931.)