QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>　　　　Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No.   CV 04-09059<br>Case No.   CV 05-2727<br><br>MATTEL'S SUBMISSION REGARDING EMAIL FROM JUROR NO. 7 AND REQUEST TO RECALL THE JURY |

07209/2620443.2

MATTEL'S SUBMISSION RE JUROR NO. 7'S EMAIL

1    Consistent with the Court's invitation at yesterday afternoon's hearing, Mattel
2    respectfully makes this submission to further explain its position with respect to the
3    email from Juror No. 7 and to request that the Court recall the jury to confirm the
4    correctness of the verdict amount.

5    As the phase 1(b) verdict form reflects, the jury awarded Mattel in excess of
6    $100 million in damages against defendants on Tuesday.  Yesterday, the Court
7    received an email from Juror No. 7 expressing "shock" at recent statements in the
8    press that the damages award in this case were far lower.  That email was the direct
9    result of MGA's and Isaac Larian's misstatements to the press that the amounts
10   awarded by the jury are duplicative and total only $20 million to $40 million.  Juror
11   No. 7's email confirms what is clear from the phase 1(b) verdict form:  the jury
12   awarded, and intended to award, Mattel total damages of more than $100 million.

13   Yesterday's email from Juror No. 7 did not tell MGA or Larian anything they
14   did not already know.  MGA's counsel, and Larian himself, spoke on Tuesday to the
15   jurors immediately after the verdict and were unequivocally told by the jurors that
16   their award to Mattel totaled more than $100 million.  Indeed, at the conference with
17   the Court yesterday regarding Juror No. 7's email, MGA's counsel did not dispute
18   the truth of Juror No. 7's email confirming the $100 million amount of the jury's
19   verdict and essentially conceded that MGA and Larian knew from their own post-
20   trial interviews that when the jury filled out the verdict form it intended that the
21   damages amounts be added up and constituted an award that totaled more than $100
22   million to Mattel.  See Hearing Transcript, August 28, 2008 ("Tr.") at 8358: 14-24.
23   That, however, did not stop MGA and Larian from publicly making the false claims
24   that shocked Juror No. 7—namely, that the damages awards were duplicative and
25   totaled as little as $20 million.

26   MGA and Larian have made clear that—despite their knowing the truth about
27   the verdict—they will continue to make similar claims in post-trial motions to the
28   Court.  Mattel is confident that the verdict form, on its face, shows the jury awarded

Mattel in excess of $100 million and that the damages awards are in no way duplicative. Mattel is equally confident that the jury will confirm—as Juror No. 7 did in her email to the Court and as the jurors did post-verdict on Tuesday to both sides—that the amount awarded Mattel is in excess of $100 million. Accordingly, to avoid further misstatements by MGA and Larian and avoid further groundless motion practice by MGA and Larian that attempts to distort the verdict amount, Mattel requests that the Court recall the jury for the limited purpose of confirming the correct amount of their damages award, either by polling the jurors with a simple yes or no question or by separately interviewing each of the jurors.

MGA and Larian do not—and cannot in good faith—dispute that the jury intended to award Mattel total damages in excess of $100 million. Instead, MGA and Larian take the position that they are nevertheless free to distort the verdict by claiming that Mattel was awarded as little as $20 million dollars because Federal Rule of Evidence 606(b) precludes any effort to confirm the correctness of the $100 million amount of the jury's award. Apart from reflecting a troubling disregard for what they know to be the truth, MGA's and Larian's position is not the law. Numerous cases hold that Rule 606(b) does not prevent the Court from questioning jurors to confirm the accuracy of their verdict. See, e.g., Trans-World Intern., Inc. v. Smith-Hemion Productions, Inc., 952 F. Supp. 667, 671 (C.D. Cal. 1996) (Rule 606(b) does not bar court from considering juror testimony when those comments relate to possible miscommunication by jurors or misinterpretation by court of what jurors actually decided, rather than how they reached their verdict; "Courts have held that the Rule even permits post-discharge inquiry to determine what the jury decided, as contrasted with how or why it did so.") (citations omitted); Resolution Trust Corp. v. Stone, 998 F.2d 1534 (10th Cir. 1993) (district court properly questioned the jury foreman concerning whether the jury meant to aggregate the individual damages awards because Rule 606(b) "does not preclude a juror from testifying as to the potential miscommunication of the verdict"); see also

McCullough v. Consolidated Rail Corp., 937 F.2d 1167, 1171 (6th Cir. 1991) (district court properly doubled damages award based on juror testimony that the panel had decreased the intended award by half to account for the plaintiff's contributory negligence; "jurors [are] competent witnesses on the issue of whether the verdict delivered was the one agreed upon").

Furthermore, the Advisory Committee Notes make clear that recent amendments to Rule 606(b) are intended to distinguish between (a) impermissible inquiries into whether the jury "misunderstood or misapplied an instruction" which go to "the jurors' mental processes underlying the verdict" and (b) permissible inquiries regarding the "verdict's accuracy in capturing what the jurors had agreed upon." Fed. R. Evid. 606(b)(3), 2006 Advisory Committee Notes.

The lone decision that MGA and Larian point to does not support their assertion that any communication by the Court with the jurors to confirm the amount of the verdict is off limits.[1] In the case they cited, Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc., 528 F. 3d 1001(8th Cir. 2006), the Eighth Circuit merely held that the district court did not err in refusing to consider juror affidavits regarding their damages award where "[p]laintiffs' counsel obtained these affidavits after the jury was discharged, without notice to opposing counsel, and without permission from the District Court" to support plaintiffs' argument that an ambiguity in the verdict form confused the jurors. Id. at 1021-22.

The situation here is far different. Juror No. 7 initiated contact with the Court after she was shocked to see MGA and Larian's misstatements in the press about the amount of the jury's award. Mattel does not seek to delve into the jury's thought processes in order to impeach the verdict or otherwise show that the jury misapplied

---

[1] That counsel came to court yesterday with this decision even though the existence of Juror No. 7's email had not yet been disclosed is further evidence that MGA and Larian knew full what the jury intended with its verdict.

1   or misunderstood an instruction or was confused by any alleged ambiguity.  To the
2   contrary, Mattel merely seeks to have the Court—through its own limited
3   questioning either by polling the jury or by separate interviews—confirm the correct
4   amount of the jury's award.  There is nothing that prevents the Court from doing so
5   in these circumstances, and surely justice is not properly served by further efforts by
6   MGA or Larian to misstate to the Court what they know is the true amount of the
7   verdict.  Mattel also respectfully requests that the Court recall the jurors to poll or
8   interview them as soon as practicable and while the matter is still fresh in their
9   minds.

11  DATED:  August 29, 2008            QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP

                                        By /s/ Michael T. Zeller
                                           Michael T. Zeller
                                           Attorneys for Mattel, Inc.