THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
(laguiar@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Tel.: (213) 687-5000
Fax: (213) 687-5600

Attorneys for The MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>    Plaintiff,<br><br> v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>    Defendant.<br><br>AND CONSOLIDATED ACTIONS. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>Honorable Stephen G. Larson<br><br>MGA PARTIES' OPPOSITION TO MATTEL'S REQUEST TO RECALL THE JURY |

# PRELIMINARY STATEMENT

Recognizing that the special verdict form contained blanks for damages awarded on three closely related claims, the Court unambiguously instructed the jury that it was *not* to concern itself with duplicative damages and was *not* to allocate the total damages among the claims:

> Mattel seeks damages under more than one legal claim or theory and as to three defendants. In awarding damages as to any particular claim or defendant, <u>you should not consider or discount your award based on amounts, if any, that you award as to any other claim or defendant</u>. That is, you should award the full amount of damages you find appropriate, if any, as to each separate claim against each defendant. The Court will ensure, once your verdict has been reached, that the plaintiff does not obtain duplicative damages.

(Phase 1(b) Jury Instruction No. 44, p.49 (emphasis added).) This instruction was requested by Mattel, and juries are presumed to follow the Court's instructions. *See United States v. Alston*, 974 F.2d 1206, 1210 (9th Cir. 1992) ("A jury is presumed to follow the instructions given by the court").

During the Hearing on August 28, 2008, the parties were informed of an email from Juror No. 7, which indicated that, notwithstanding the jury instructions regarding duplicative monetary awards, Juror No. 7 intended the duplicative awards to be aggregated for a total of $100 million. After being informed of the email, Mattel's counsel represented that his client would not be asking for the jury to be questioned, stating "Mattel isn't seeking any relief from the Court now." (Hearing Transcript August 28, 2008 ("Tr.") at 8359:16.) Based on this representation, the Court stated "If there is going to be a request for recalling the jury for questioning, I wanted to get that out on the table today, but I'm not hearing that from either side, so the Court is not going to take that action." (*Id.* at 8360:1-4.)

1  Less than 24 hours later, Mattel did a complete about-face, and is now asking the Court to recall the jury and question them about what they intended by their verdict.

Mattel is essentially asking this Court to take testimony that it hopes will create a basis for modifying the jury's verdict to erase a claimed allocation that the jury was prohibited by the instruction from having made in the first place. It bases that request on an inquiry made by one juror *after* the jury was discharged and *after* massive publicity about the verdict. If the Court were to consider Mattel's submission of post-verdict, post-discharge comments of jurors for this purpose, it would find itself examining whether the jury understood the Court's instruction, whether in its deliberations the jury attempted to follow that mandate or whether the jury's analysis of damages was based on a disregard of an unambiguous instruction.

If Federal Rule of Evidence 606(b) does nothing else, it prohibits this type of inquiry into the jury's mental process and deliberations. By its terms, the Rule prohibits taking testimony from jurors regarding what they meant or intended by the verdict. The Eighth Circuit has applied Rule 606(b) in an almost identical factual situation involving damage awards, holding that the Rule prohibited consideration of juror affidavits, which stated that they intended for the separate awards to be aggregated. *See Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1021-22 (8th Cir. 2008). As explained below, courts across the country have reached similar conclusions, holding that Rule 606(b) bars juror testimony offered to clarify, confirm, or explain a verdict. The Court should reach the same conclusion here.

Mattel has offered no support for its request to recall and interrogate the jurors. The three cases it cites allowed jurors to be questioned only <u>before</u> they were discharged. Here, of course, the jury has been discharged and subjected to numerous outside influences, including (i) interviews and telephone calls with trial counsel for both sides; (ii) conversations with the parties, including family members; and (iii) as MGA understands it, an invitation to certain jurors from Mattel's trial counsel to join them for dinner at Mario's

2

Restaurant in Riverside this Tuesday or Wednesday as a "thank you."[1] Any testimony or commentary from jurors would, at this point, be hopelessly tainted.

Mattel's request to interrogate discharged jurors also cannot be justified as an attempt to correct a mistake or "clerical error" in the verdict. As explained below, this exception is extremely narrow and applies only in situations where there is something akin to a scrivener's error. *See Viacom*, 528 F.3d at 1022 ("Clerical error might involve, for example, a transposed number in the damages amount set forth on the verdict form" but does not include testimony to "explain what the jury meant by its verdict and how the jury determined what numbers to transcribe onto the verdict forms.")[2] In any event, the line of cases cited by Mattel is no longer good law, having been rejected by the Advisory Committee when it amended Rule 606(b) in 2006.

In short, Mattel has offered no basis to recall and interrogate discharged jurors. The request to do so violates Rule 606(b) and should be denied.

## ARGUMENT

### A. Mattel's Request to Recall and Interrogate Discharged Jurors Violates Rule 606(b).

Mattel has latched onto Juror No. 7's email and seeks to use it as an excuse for

---

[1]   Declaration of Thomas J. Nolan ("Nolan Decl.") ¶ 3.

[2]   Mattel's unsupported assertion that MGA supposedly "knows" the jury intended to award $100 million is false. As Mattel is aware, interviews with jurors have produced statements capable of varying interpretations, including statements that could call the jury's Phase 1A verdict into question. Rule 606(b) was designed for exactly this situation. The Rule exists to protect the finality of the verdict and to guard against creating the type of uncertainty that Mattel apparently wishes to inject into post-trial proceedings. *See Robles v. Exxon Corp.*, 862 F.2d 1201, 1205 (5th Cir. 1989) ("the 'central focus' of the federal decisions on which the rule [Rule 606(b)] is based has been to 'insulate ... the manner in which the jury reached the verdict, ... including arguments, statements, discussions, mental and emotional reactions, votes, and any other feature of the process") (alterations in original, citation omitted); *Karl v. Burlington Northern R.R. Co.*, 880 F.2d 68, 74 (8th Cir. 1989) (purpose of Rule 606(b) is to "prevent jurors from being harassed by the defeated party in an effort to secure from them evidence of facts which might be sufficient to set aside a verdict, and to assure the finality of the jury's verdict"). No good can come of Mattel's request to recall and interrogate jurors, particularly now given that this jury has been discharged and exposed to numerous outside influences, including press reports and discussions with the parties about this case. (*See* Nolan Decl. ¶ 1.) Given the circumstances, questioning jurors will lead only to second-guessing and an inevitable undermining of the judicial process.

1 recalling and questioning the entire jury about whether they followed the Court's
2 instructions regarding duplicative awards. Mattel's request is contrary to Federal Rule of
3 Evidence 606(b), which expressly prohibits this type of inquiry:

> Upon an inquiry into the validity of a verdict or indictment, <u>a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations</u> or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

Fed. R. Evid. 606(b) (emphasis added); *Traver v. Meshriy*, 627 F.2d 934, 941 (9th Cir. 1980) ("Once a verdict has been delivered and accepted in open court, and the jury is polled and discharged, jurors may not claim that their assent was mistaken or unwilling.").

Although the Ninth Circuit has not addressed this precise factual situation, the overwhelming weight of authority holds that Rule 606(b) prohibits the type of inquiry Mattel proposes. For example, in *Robles* the Fifth Circuit held that the district court had improperly taken testimony from jurors regarding the meaning of the verdict. 862 F.2d at 1203-04. After the jury rendered a verdict that plaintiff was 51% responsible for an accident, the court observed on the record that this would mean plaintiff would recover nothing. *Id.* Jurors then commented that this was not their intent, and the court elicited testimony that jurors wanted to award plaintiff something. *Id.* at 1203. The court then instructed jurors to resume deliberations, and the jury returned another verdict finding plaintiff only 49% liable. *Id.* at 1203-04. On appeal, the Fifth Circuit reversed and ordered that judgment be entered for defendant based on the first verdict, notwithstanding the jurors' testimony that the first verdict did not reflect their intent. *Id.* at 1208-09 (jury testimony improper under Rule 606(b) because "the error alleged here goes to the substance of what the jury was asked to decide, necessarily implicating the jury's mental processes insofar as it questions the jury's understanding of the court's instructions and application of those

instructions to the facts of the case.").

Similarly, in *Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc.*, the plaintiff attempted to show that the jury did not award duplicative damages by submitting juror affidavits attesting that they intended each separate award to be totaled. 528 F.3d 1001, 1021-22 (8th Cir. 2008). The Eighth Circuit held that the district court properly refused to consider the affidavits because they violated Rule 606(b). *Id.* at 1022 (rejecting juror affidavits because "they purport to explain what the jury meant by its verdict and how the jury determined what numbers to transcribe onto the verdict form.")

And in *Plummer v. Springfield Terminal Railway Co.*, the First Circuit rejected the plaintiff's attempt to question jurors about whether they reduced a damages award based on comparative negligence. 5 F.3d 1, 4 (1st Cir. 1993). Noting that the jury instructions expressly told the jury not to reduce the damages verdict based on the plaintiff's negligence, the court held that the requested inquiry violated Rule 606(b). *Id.* at 4 ("the requested inquiry went to what the jurors were thinking when they chose the number that they did and whether their thinking was sound.").

Based on these authorities, the Court should reject Mattel's invitation to violate Rule 606(b) by recalling and interrogating the jurors regarding their intent. As in *Plummer*, jurors in this case were told to award the full amount of damages available under each claim and against each defendant, notwithstanding any duplication. (Phase 1(b) Jury Instruction No. 44, p.49.)[3] Based on this instruction, the verdict included separate, duplicative awards for each of the state law claims, as well as for copyright infringement.[4] Mattel's only

---

[3] During closing argument, Mattel emphasized this point: "And I want to take a moment to address a question that may have occurred to some of you. Included in MGA's $777.9 million in profits is money that went to Isaac Larian. You might be concerned that Mattel is trying to double-count by asking for it to be awarded against both Mr. Larian and MGA. Rest assured, as the Court has already indicated, the Court will not let that happen. Mattel does not seek to recover twice, and Mattel will not be allowed to recover twice. But Mattel is entitled to an accurate judgment against both MGA and Mr. Larian. The issue of collection, which defendant pays which or how much, is something that you don't need to be concerned about in arriving at your verdict." (Tr. at 8136:7-18.)

[4] The duplicative monetary awards must be vacated. *See Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1112 (9th Cir. 1992) (vacating duplicative portion of damage award); *see also Waffer Int'l*
*(cont'd)*

possible justification for recalling jurors would be to ask them if they followed Jury Instruction No. 44 regarding duplicative damages or whether they disregarded this instruction, as Juror No. 7 apparently did, and "intended" that the duplicative awards be aggregated. That type of inquiry is foreclosed by Rule 606(b). *See Sims' Crane Serv., Inc. v. Ideal Steel Prods., Inc.*, 800 F.2d 1553, 1556 (11th Cir. 1986) (contemporaneous explanation of verdict by juror could not be considered under Rule 606(b)); *Cont'l Cas. Co. v. Howard*, 775 F.2d 876, 885 (7th Cir. 1985) (juror affidavit stating that jurors intended to award higher damages amount, notwithstanding jury instructions, violated Rule 606(b)).

Recalling the jury would be particularly inappropriate in this case because the Court already discharged the jurors. *See Howard*, 775 F.2d at 886 ("the proper procedure is for the attorney to request the verdict to be clarified before the jury was discharged.") As is evident from Juror No. 7's email, jurors have been reviewing press reports and other outside information regarding the case. Furthermore, as its counsel admitted last week, Mattel has been meeting and discussing the case with jurors. (Tr. at 8359:9-10 ("I do know we were conveyed information in this vain [sic] from some of the jurors….").) At this point, any testimony from jurors would be seriously tainted by outside influences. *See* 3 Weinstein's Federal Evidence § 606.04[2][b] ("'The reasons for [Rule 606(b)], namely, the dangers of uncertainty and of tampering with the jurors to procure testimony, disappear in large part <u>if such investigation as may be desired is made by the judge and takes place *before the jurors discharge* and separate[e]</u>.'") (underlining added; italics in original).

Mattel cannot justify its request to interrogate discharged jurors by asserting that it is trying to correct or clarify a "clerical error." As courts have explained, the exception permitting jury testimony regarding a clerical error is extremely narrow and refers "only to

---

(cont'd from previous page)
*Corp. v. Khorsandi*, 69 Cal. App. 4th 1261, 1280-81 (1999) (explaining that under California law, it is an "undeniable proposition" that a plaintiff is "not entitled to a double recovery"); *Abdala v. Aziz*, 3 Cal. App. 4th 369, 376-77 (1992) ("'Duplicate recovery of damages is barred, and neither double recovery of the same item of loss nor double liability for the same item of injury is permitted.'") (Citation omitted).

discrepancies between the verdict delivered in court and the precise verdict physically or verbally agreed to in the jury room...." *Robles*, 862 F.2d at 1208 n.9.[5] This limited exception does <u>not</u> permit inquiry into "discrepancies between the verdict delivered in court and the verdict or general result which the jury testifies it 'intended' to reach." *Id.* Here, there was no clerical error, and Mattel is not claiming otherwise. Rather, Mattel is seeking to interrogate jurors regarding what they intended and whether they followed the Court's instructions to the jury regarding duplicative damages – inquiries expressly prohibited by Rule 606(b).

### B. Mattel Has Not Provided Any Legal Authority That Supports Its Request to Recall and Interrogate Discharged Jurors.

The three cases cited by Mattel are inapposite and do not support its request to recall and interrogate discharged jurors.[6] **First**, in each case, the court condoned the questioning only <u>before</u> jurors were discharged. Here, the jury already has been discharged and exposed to outside influences, including press reports and discussions with members of the press, the parties and their counsel. (*See* Nolan Decl. ¶¶ 2, 3) In this circumstance, "any question concerning the correctness of the jury's decision constitutes an 'inquiry into the validity of the verdict'" barred by Rule 606(b). *See* 27 Charles Alan Wright & Victor James Gold, Federal Practice & Procedure § 6074 (2007); *United States v. Stacey*, 475 F.2d 1119, 1121 (9th Cir. 1973) ("After a verdict is returned a juror will not be heard to impeach the verdict when his testimony concerns his misunderstanding of the court's instructions."); *Walker v. United States*, 298 F.2d 217, 226 (9th Cir. 1962) (same); *see also Schutzky Distribs., Inc. v.*

---

[5] *See also Viacom*, 528 F.3d at 1022 ("Clerical error might involve, for example, a transposed number in the damages amount set forth on the verdict form" but does not include testimony to "explain what the jury meant by its verdict and how the jury determined what numbers to transcribe onto the verdict forms."); *Meyerhoff v. Michelin Tire Corp.*, 852 F. Supp. 933, 939 (D. Kan. 1994) (jury's potential misunderstanding of the interplay between the total damages awarded and the percentage of fault allocated did not constitute a "clerical error"), *aff'd*, 70 F.3d 1175 (10th Cir. 1995).

[6] The only authorities cited by Mattel are *Trans-World Int'l v. Smith-Hemion Prods.*, 952 F. Supp. 667 (C.D. Cal. 1996); *Resolution Trust Corp. v. Stone*, 998 F.2d 1534 (10th Cir. 1993); and *McCullough v. Consol. Rail Corp.*, 937 F.2d 1167, 1172 (6th Cir. 1991).

1 | *Kelly*, 643 F. Supp. 57, 60 (N.D. Cal. 1986) ("Nor could the Court simply recall the jury and inquire as to its intentions, as plaintiffs have previously urged.").

**Second**, each of Mattel's cases pre-date the 2006 amendments to Rule 606(b), which reject Mattel's position:

> In adopting the exception for proof of mistakes in entering the verdict on the verdict form, the amendment specifically rejects the broader exception, adopted by some courts, permitting the use of juror testimony to prove that the jurors were operating under a misunderstanding about the consequences of the result that they agreed upon. The broader exception is rejected because an inquiry into whether the jury misunderstood or misapplied an instruction goes to the jurors' mental processes underlying the verdict, rather than the verdict's accuracy in capturing what the jurors had agreed upon.

Fed. R. Evid. 606, Notes of Advisory Committee on 2006 amendments (citations omitted).

Significantly, the Advisory Committee Notes expressly endorse the decisions in *Karl* and *Robles* – authorities relied on by MGA – as cases that properly applied Rule 606(b). *Id.* At the same time, the Advisory Committee <u>expressly rejected</u> a line of cases relied on in the cases cited by Mattel, including *Attridge v. Cencorp Div. of Dover Tech. Int'l, Inc.*, 836 F.2d 113 (2d Cir. 1987) and *Eastridge Dev. Co. v. Halpert Assocs, Inc.*, 853 F.2d 772 (10th Cir. 1988). Fed. R. Evid. 606, Notes of Advisory Committee on 2006 amendments (rejecting the *Attridge/Eastridge* line of cases). Mattel's request is thus based on cases that are no longer good law.

**Third**, each case cited by Mattel involved a verdict that was facially inconsistent or ambiguous, and there was no jury instruction that clarified the ambiguity. In contrast, Mattel has identified no ambiguity in the jury's verdict, and this jury had an express instruction regarding duplicative damages – one telling them to award the full amount on each claim, notwithstanding any duplication. To create an ambiguity, Mattel must assume

MGA PARTIES' OPPOSITION TO MATTEL'S MOTION TO RECALL THE JURY – Case No. CV 04-9049 SGL (RNBx)

1 | that jurors disregarded the Court's instruction, an assumption contrary to established law.
2 | *See United States v. A. Lanoy D.M.D., P.C.*, 974 F.2d 1206, 1210 (9th Cir. 1992) ("A jury is
3 | presumed to follow the instructions given by the court"); *Masoner v. Thurman*, 996 F.2d
4 | 1003, 1008 (9th Cir. 1993) ("The jury was specifically instructed to find a high degree of
5 | probability, and we presume the jury followed its instructions").
6 |     In sum, Mattel has not offered a single authority that supports its request to recall
7 | discharged jurors and question them about their verdict.

## CONCLUSION

Mattel's request to recall and interrogate the jury violates Rule 606(b) and should be denied.

DATED: September 2, 2008    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____/s/ Thomas J. Nolan_____
Thomas J. Nolan
Attorneys for the MGA Parties