QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No.   CV 04-09059<br>Case No.   CV 05-2727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | MATTEL'S RESPONSE REGARDING EMAIL FROM JUROR NO. 7 AND REQUEST TO RECALL THE JURY |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |

07209/2624159.1

## I. RULE 606(b) DOES NOT PROHIBIT POST-DISCHARGE INQUIRY TO CONFIRM WHAT THE JURY DECIDED

MGA asserts that none of the cases cited by Mattel in its submission to the Court contemplate post-discharge questioning of the jury. (Opp. at 7.) Not so. In fact, while the Trans-World Court sought the jury's clarifying testimony before it was discharged, the Central District Court expressly noted that "[c]ourts have held that the rule even permits post-discharge inquiry to determine *what* the jury decided, as contrasted with *how* or *why* it did so." Trans-World Intern., Inc. v. Smith-Hemion Productions, Inc., 952 F. Supp. 667, 671 (C.D. Cal. 1996) (emphasis in original). Likewise, the jury in McCullough had been discharged, albeit briefly, when the Court solicited its testimony on the jury's verdict. See McCullough v. Consolidated Rail Corp., 937 F.2d 1167, 1168 (6th Cir. 1991).[1]

Courts can, and do, seek the jury's post-discharge testimony to confirm the accuracy of a verdict, either by formally recalling the jury, through juror affidavits, or by informal polling by the Court. See, e.g., Mount Airy Lodge, Inc. v. Upjohn Co., 96 F.R.D. 378, 381 (D.C. Pa. 1982) (district court recalling certain jurors for *in camera* interview). Indeed, MGA's own authorities recognize that the propriety of the inquiry under 606(b) turns on the purpose for which the jury's testimony is sought, not on the timing of the inquiry:

> whether the categorical rule created by rule 606(b) applies to a given case simply does not turn . . . on when or how, after they have rendered

---

[1] In the other case that MGA seeks to distinguish, Resolution Trust Corp. v. Stone, it is unclear whether the jury had already been discharged when the court sought one juror's testimony to confirm the accuracy of the award. See Resolution Trust Corp. v. Stone, 998 F.2d 1534 (10th Cir. 1993). However, because other arguments related to the validity of the verdict turned on the fact that they had been raised post-discharge, it suggests that the jury's testimony also occurred post-discharge. See id., 998 F.2d at 1546-47.

their verdict, the jurors evidence their confusion. Rather, the applicability of rule 606(b) is determined solely by the nature of the testimony sought to be introduced.

Robles v. Exxon Corp., 862 F.2d 1201, 1207 n.6 (5th Cir. 1989).  Contrary to MGA's claims, nothing in Rule 606(b) prevents the Court from conducting a post-discharge inquiry of the jury.

Nor, as MGA claims, have the cases cited by Mattel been rejected by the Advisory Committee in its 2006 amendment to Rule 606(b).  Recent decisions construing Rule 606(b) post-amendment have recognized that while "the drafters rejected a broader exception that would have allowed the use of juror testimony to prove that the jurors were operating under a misunderstanding about the consequences of the result they had reached," the amendment was not intended to preclude juror testimony regarding "the verdict's accuracy in capturing what the jurors had agreed upon."  U.S. v. Casiano, 2007 WL 1692125, at *3 n.2 (D. Conn. Jul. 7, 2007).  Thus, while it is true that the Advisory Committee expressly rejected certain cases that had permitted broader inquiry into the jury's deliberations—and these cases were, not surprisingly, cited in Mattel's pre-amendment authorities as examples of the range of permissible inquiry—nothing in the amendment or the notes suggests that the drafters also intended to reject the type of inquiry Mattel seeks here.[2]

Mattel seeks to only to confirm *what* the jury decided, not *why* or *how* it did so.  This limited inquiry does not require any intrusion into the jury's deliberations or mental impressions.  For this reason, MGA's reliance on Karl, Robles and the

---

[2] Cf. 27 Federal Practice & Procedure § 6075.1 (2007) (stating that the scope of Rule 606(b)(3) remains open after the 2006 amendments).  Similarly, MGA concedes that the Ninth Circuit has not addressed the "precise factual situation" presented here. (Opp. at 4.)

other authorities it cites is unavailing.  In those cases (like those rejected by the Advisory Committee), juror testimony was used to challenge the verdict in some manner—*i.e.*, by showing that the jury misunderstood its instructions, applied the wrong law or was confused by the facts.  Such inquiries may be properly foreclosed because they necessarily require an examination of the jury's deliberative process.  <u>See</u> 27 <u>Federal Practice & Procedure</u> § 6075.1 (2007) (discussing type of impermissible inquiries under the amended Rule 606(b)).  Not surprisingly, MGA seeks to inject such an inquiry here, arguing that Mattel's request would require the Court to interrogate the jurors regarding whether they followed the Court's jury instructions or intended to disregard them. (Opp. at 6-7.)  That is not the case.  The Court need not inquire into the jury's deliberative process in order to confirm the amount of the verdict.

## II. <u>MATTEL SHOULD BE GIVEN THE OPPORTUNITY TO SUBMIT AFFIDAVITS CONFIRMING THAT THE JURY AGREED TO AWARD DAMAGES IN EXCESS OF $100 MILLION</u>

MGA argues that Mattel's request is based on a single juror's statements to the Court, and suggests that any further inquiry would be unhelpful because "interviews with the jurors have produced statements capable of varying interpretations." (Opp. at 3 n.2.)  MGA knows otherwise.  While its post-trial interviews with the jury on a host of subjects may have raised issues subject to "varying interpretations," on one thing the jurors were clear:  the jury agreed to award Mattel damages in excess of $100 million dollars.[3]  MGA does not contend otherwise.  For this reason, Mattel submits that the Court may and should recall the jury for the limited purpose of confirming the amount of its verdict.  To eliminate

---

[3]   <u>See</u> Declaration of Jon D. Corey ¶ 2.

1  any doubt MGA has attempted to create as to whether Juror No. 7's email reflects
2  the isolated view of one juror, Mattel is prepared to obtain and submit sworn
3  affidavits confirming the amount of damages the Jury agreed to award and
4  respectfully requests that the Court give Mattel the opportunity to do so.

DATED: September 3, 2008         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


                                 By /s/ Michael T. Zeller
                                    Michael T. Zeller
                                    Attorneys for Mattel, Inc.