# EXHIBIT 1

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those reduced to this Agreement. This Agreement furthers my appreciation of the Company's goals. This Agreement is intended for the exclusive benefit of the Company. (i) Provisions that I create will be owned by the Company. (ii) my prior and subsequent development and ... I will not create any work, conflict with my employment at expressly of ... rights; and if when and if my employment terminates I will not act any ... position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

## 1. Provisions Related to Trade Secrets

(a) I acknowledge that the Company presents and will continue to develop and acquire valuable Proprietary Information (as defined below, including Confidential Information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information disposed on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, patent, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment, I will deliver to the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other material (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

## 2. Ownership of Inventions

(a) I agree to communicate to the Company promptly and fully and as practicable all inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company, and/or its nominee all my right, title and interest in such inventions, and all...

(b) Any provision in this agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That provision provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either: (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

(c) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any such document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

## 3. Conflict with Other Activities

(a) My employment with the Company requires that my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

## 4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated. In whole or in part, except in writing signed by a Vice President of the Company. Any waiver by the Company of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision of this Agreement. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it enforceable legally enforceable.

(c) My obligations under this Agreement will continue after the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement created any right to my continued employment by the Company, or to any employment for any particular term.

(e) Any breach of this Agreement will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This Agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement concerns the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

Employee Name (print): _CARTER H. BRYANT_

Employee Signature: _[signature]_

Date: _01/04/99_

MATTEL, INC.

By: _[signature]_

Name of Witness (print): _TERESA NEWCOMB_

Signature: _[signature]_

DEPOSITION
EXHIBIT

M 0001596

EXHIBIT

PAGE 3

# EXHIBIT 2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES – GENERAL

Case No.     CV 04-09049 SGL(RNBx)                              Date:  April 25, 2008
Title:       CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC., v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
==============================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes
        Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:        ATTORNEYS PRESENT FOR MATTEL:

None Present                                None Present

ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

**PROCEEDINGS:     ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN
                   PART THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT
                   (IN CHAMBERS)**

        This matter is before the Court on the parties' motions for partial summary judgment.  The
motions were heard on April 22, 2008, and the Court has set the motions for further hearing on
May 19, 2008, at 1:30 p.m.  As set forth below, the Court rules on a number of issues presented
by the motions for partial summary judgment and reserves ruling on other issues until after further
hearing on the motions for partial summary judgment and, in the case of MGA's affirmative
defenses, until after the Phase 1 trial.

        The parties have made hundreds of objections to evidence offered in support of and in
opposition to the motions for partial summary judgment.  Although counsel for Bryant requested

MINUTES FORM 90                                             Initials of Deputy Clerk:  jh
CIVIL -- GEN                          Page 1

EXHIBIT ___2___
PAGE ___4___

explicit rulings on the objections raised by Bryant, the Court declines to do so. To the extent that this Order necessarily relies on evidence subject to any party's objections, the objections are implicitly overruled.

## PREEMPTION

MGA and Bryant seek summary judgment in their favor as to Mattel's claims for intentional interference with contractual relations, conversion, and unfair competition, arguing that these claims are preempted by the Copyright Act. They are partially correct.

A state law is preempted by the Copyright Act where (1) the work at issue comes within the subject matter of copyright, and (2) the state law rights are "equivalent to rights within the general scope of copyright[.]" Del Madera Properties v. Rhodes and Gardner, Inc., 820 F.2d 973, 977 (9th Cir.1987). "If a state law claim includes an 'extra element' that makes the right asserted qualitatively different from those protected under the Copyright Act, the state law claim is not preempted by the Copyright Act." Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1089 (9th Cir. 2005). Generally the Copyright Act does not preempt the enforcement of contractual rights. Id.

As to the first element, the intentional interference with contractual relations claim addresses generally an issue within the subject matter of copyright -- the underlying wrong upon which the claim is premised is Mattel's deprivation of rights to intellectual property.

As to the second element, it is clear that the tort of intentional interference with contractual relations is neither categorically preempted or categorically saved from preemption; rather, the Court must engage in a determination of whether the substance of the tort claim differs qualitatively from the copyright claim at issue. Compare Altera, 424 F.3d at 1089 (holding that a intentional interference claim was not preempted because it was based not on copyrights but on a contractual provision) with Laws v. Sony Music Entertainment, Inc., 448 F.3d 1134, 1144 (9th Cir. 2006) (holding preempted a singer's voice misappropriation claim was not qualitatively different from her copyright claim).

Here, to the extent that the tortious interference is premised upon MGA's alleged interference with any copyrights that Mattel may have under the Inventions Agreement, it is preempted. Such a claim is not qualitatively different from Mattel's copyright claim. However, to the extent that the claim is based on MGA's acts that may be found to have aided and abetted the breach or induced the breach of Bryant's fiduciary duty, the claim is not preempted. That claim is qualitatively different from Mattel's copyright claim.

Therefore, the tortious interference with contractual relations is preempted to the extent that it is based on Mattel's rights to Bratz. It is not preempted as to Mattel's claims for breach of fiduciary duty.

The parties' arguments regarding the conversion claim address two distinct issues: Conversion of ideas and conversion of tangible things. The Court addresses each in turn.

EXHIBIT ___2___

PAGE ___5___

Both sides acknowledge, as this Court certainly agrees, that one cannot copyright an idea. Thus, it would seem, a claim for conversion of ideas is not subject to preemption because it is not "within the subject matter of copyright." Del Madera, 820 F.2d at 977. MGA argues that ideas are not subject to a claim of conversion, to which Mattel responds that such rights in ideas may be created by contract. Mattel relies on Desny v. Wilder, 46 Cal.2d 715, 733 (1956) which, remarkably, so holds. However, that case does not support the proposition that a breach of such rights may be remedied by the tort claim of conversion rather than a breach of contract claim. The law in California regarding the tort of conversion's applicability to ideas remains the same today as in 1956: "The tort of conversion does not apply to ideas." Melchior v. New Line Productions, Inc., 106 Cal.App.4th 779 (2003). Therefore, although this claim is not preempted, it is not actionable as a tort claim. Accordingly, summary judgment in favor of MGA and Bryant is granted as to this particular claim.

Mattel also argues that its conversion claim is not preempted to the extent that it seeks the return of tangible things, most notably the original Bratz drawings. This claim is "within the subject matter of copyright," but the state rights go beyond the rights protected by the Copyright Act by allowing for the return of property.

At oral argument, counsel for MGA argued that Mattel seeks the rights that the drawings represent, not the "paper and ink" of which those drawings are comprised. Mattel disagreed with that interpretation, noting that it seeks the return of the original drawings and certain sculpts to which it may have rights under the Inventions Agreement.

The items to which Mattel lays claim are not like the manuscript at issue in Dielsi v. Falk, 916 F.Supp. 985, 992 (C.D. Cal. 1996), or the government documents at issue in Idema v. Dreamworks, Inc., 162 F.Supp.2d 1129, 1192-93 (C.D. Cal. 2001), both of which had value merely for their ability to hold and convey their contents. Rather, the materials Mattel seeks are works of art that may have value apart from the copyrights they represent or the "paper and ink" and other materials of which they are comprised. Given the role of the drawings and sculpts in developing a new, commercially successful line of fashion dolls, and given the role of these items in the present litigation, the Court discerns a possible inherent value to the materials themselves.

MGA and Bryant also pressed at oral argument that Mattel had not advanced such a claim for return of tangible items. The Court disagrees. Citing to its Complaint at ¶ 157, Mattel contends it has long sought the return of tangible items.[1] An examination of Mattel's claim for conversion reveals that it encompasses such a claim. Therefore, the conversion claim seeking the return of tangible items is not preempted. MGA and Bryant's motions for summary judgment on this issue are therefore denied.

To the extent that Mattel's statutory unfair competition claim, discussed more fully below, is

---

[1] From a review of the record, it is clear to the Court that Mattel intended to cite ¶ 157 of its Amended Answer and Counterclaims, not its Complaint.

EXHIBIT _____2_____

PAGE _____6_____

based on copyright infringement, it is preempted, and the Court grants summary judgment in favor of MGA on this issue.

## STATUTE OF LIMITATIONS

The Court heard argument at length on the statute of limitations issue. Although it is not entirely clear, it appears to the Court from the hearing and from MGA's Rule 56(f) affidavit, that there remain outstanding discovery matters that may have the potential, if resolved in MGA's favor, to factor into the inquiry into the determination of the date of the accrual of any claims against Bryant and/or MGA. Accordingly, the Court defers ruling on the issue of statute of limitations at this time.

## INVENTIONS AGREEMENT

The Court addressed many issues of the enforceability of the Employee Confidentiality and Inventions Agreement in its July 17, 2006, Order. The Court finds no good reason to revisit or revise that Order.

Bryant argues that the Inventions Agreement is ambiguous on the issue of whether it covered anything other than "inventions" as that term is used in patent law. Here, Bryant was a fashion designer. He signed an agreement that assigned his "inventions" to Mattel. "Inventions" is defined by the agreement to include "designs," which was undeniably the focus of Bryant's employment with Mattel. In addition to assigning all rights to Bryant's "inventions" (i.e., "designs") to Mattel, the agreement also assigned to Mattel "all [Bryant's] right, title, and interest in any . . . copyrights . . . and copyright applications based [on those inventions]".

In order to conclude that the Inventions Agreement is ambiguous on the issue of whether it would include any copyrightable drawings or doll designs developed by an employee, the Court would have to read out of the agreement explicit terms assigning to the employer the rights to "designs," "copyrights," and "copyright applications." The Court is required to read the contract as a whole and, where possible, give effect to all its terms. Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."). To accept the interpretation advanced by Bryant, the Court would have to disregard this bedrock principle of contract construction by ignoring an explicit assignment by the employee to the employer of copyrights. The interpretation advanced by Bryant is therefore not reasonable, and the Court finds that the Inventions Agreement is not ambiguous on the issue of its scope with respect to copyrightable materials.

The Inventions Agreement explicitly conveys to Mattel an employee's interest in any copyrights or copyright applications. Assuming copyrightability and the resolution of certain (as yet unresolved) issues of timing of creation and/or alteration in Mattel's favor, the original Bratz drawings clearly fall within the scope of the Inventions Agreement.

Moreover, the Inventions Agreement incorporates, and therefore does not violate, Cal.

MINUTES FORM 90
CIVIL -- GEN

Page 4

Initials of Deputy Clerk: jh

EXHIBIT __2__

PAGE __7__

Labor Code § 2870. Pursuant to that statute (and its incorporation in the Inventions Agreement), because the subject matter at issue -- the Bratz dolls -- relate to Mattel's business of marketing fashion dolls, the factual question of whether Bryant worked on them on his own time, rather during his working hours at Mattel, is not relevant.

MGA argues that contracts of adhesion are unenforceable if they are either outside the scope of the parties' expectations or they are substantively unconscionable. The Court previously determined that the Inventions Agreement was not substantively unconscionable, and now determines that it is not outside the scope of the parties' expectations. As noted above, Bryant was a designer, and the plain language of the Inventions Agreement assigns his "designs" to his employer. Objectively, therefore, it would not be surprising that Mattel would lay claim to Bryant's rights to any doll or doll fashions he designed during the period of his employment with Mattel. Moreover, undisputed evidence establishes that Bryant's subjective understanding of the contract was that it transferred at least some of his rights to Mattel.

Bryant also argues that his actions went no further than lawful preparations to compete with his employer. The undisputed facts, however, tell a different story: Bryant directly competed with Mattel by entering into a contract with its competitor to produce a competing product while still employed by Mattel.

The Court grants summary judgment in favor of Mattel on the issue of the enforceability of the Inventions Agreement and the issue of applicability of the Inventions Agreement to any Bratz-related "inventions" (including any designs, improvements, ideas, concepts, and copyrightable subject matter) that he is found to have created during the period of his employment with Mattel.

## DUTY OF LOYALTY AND FIDUCIARY DUTY

Carter Bryant, like all other California employees, owed a duty of loyalty to Mattel while employed there. See Cal. Labor Code § 2863. The undisputed facts establish that he breached this duty by entering into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products. See Huong Que, Inc. v. Luu, 150 Cal.App.4th 400, 414 (2007) ("The duty of loyalty is breached, and the breach may give rise to a cause of action in the employer, when the employee takes action which is inimical to the best interests of the employer.") (internal quotation marks and citation omitted).

Bryant also owed a fiduciary duty to Mattel by virtue of the language set forth in ¶ 1(a) of the Inventions Agreement. Id. ("The value of the Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust."). Under California law, a confidential relationship that gives rise to a fiduciary duty is created "where a confidence is reposed by one person in the integrity of another, and . . . the party in whom the confidence is reposed . . . voluntarily accepts or assumes to accept the confidence . . . ." City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1050-51 (N.D. Cal. 2002). The Inventions Agreement imposed such a duty on Bryant.

EXHIBIT ___2___

PAGE ___8___

At the hearing on this matter, counsel contended that a required element for imposing a fiduciary duty -- that the party with the duty be in a superior position to the party to whom the duty is owed -- was missing. That element is described as follows: "[T]he essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1050 (N.D. Cal. 2002) (internal quotation marks and citation omitted). The "superior position" to which California courts refer in this context is not superior bargaining power -- a position on which Mattel would apparently have the edge -- but rather it refers to a superior position vis-à-vis the duty imposed. Here, because the duty imposed upon Bryant was essentially to police his own actions by maintaining Mattel's confidentiality and communicating his own "inventions" to Mattel, Bryant was "in a superior position to exert unique influence over" Mattel because he was in the best position, arguably the only one in a position, to know of and police his actions.

As with the duty of loyalty, the undisputed facts establish that Bryant breached his fiduciary duty to communicate his inventions to Mattel when, rather than doing so, he secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products.

Accordingly, the Court grants Mattel's motion for summary judgment on the issues of the existence and breach of the duty of loyalty. The Court grants Mattel's motion for summary judgment and denies Bryant's motion for summary judgment on the issue of the existence and breach of a fiduciary duty.

In its motion, MGA argued that there can be no liability for aiding and abetting a breach of fiduciary duty in the absence of a fiduciary duty. Because the Court has rejected this argument, the Court denies MGA's motion for summary judgment on this issue.

### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

MGA moved for summary judgment as to Mattel's claim for intentional interference with contractual relations.

The elements of a claim for intentional interference with contractual relations are stated as (1) a valid contract between a plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. Family Home & Finance Center, Inc. v. Federal Home Loan Mortg. Corp., 461 F.Supp.2d 1188, 1193 (C.D. Cal. 2006) (citing Pac. Gas & Elec. Co. v. Bear Stearns Co., 50 Cal.3d 1118, 1126 (1990)).

The undisputed facts show that the first, third, and fifth elements are met. Mattel has raised a triable issue of fact as to the second. The fourth element may be resolved after the

EXHIBIT ___2___

PAGE ___9___

Court's further hearing on the motions for partial summary judgment. The Court therefore defers ruling on this issue.

## UNFAIR COMPETITION

MGA and Bryant's motions are granted in part and denied in part as to Mattel's unfair competition claims.

Mattel's statutory unfair competition claim, brought pursuant to Cal. Bus. & Profs. Code § 17200, survives summary judgment because Mattel has raised a triable issue of fact as to whether MGA tortiously interfered with Bryant and Mattel's contractual relationship and whether MGA engaged in commercial bribery.

However, two bases for this claim are foreclosed at this time. To the extent that the § 17200 claim is based on copyright infringement, it is preempted. To the extent that it is based on unfair conduct, summary judgment in favor of MGA is granted because the articulated unfair conduct does not approximate an antitrust violation that threatens competition. See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 186-87 (1999).

As to Mattel's common law unfair competition claim, summary judgment in favor of MGA and Bryant is granted. This claim is not, as it must be, based on the act of passing off another's goods as one's own. See Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1153 (9th Cir. 2008) (citing Bank of the W. v. Superior Court, 2 Cal.4th 1254 (1992)).

## UNJUST ENRICHMENT

Because Mattel failed to oppose this portion of Bryant's motion, the Court grants Bryant's motion for partial summary judgment on the issue of unjust enrichment.

## AFFIRMATIVE DEFENSES

Mattel seeks summary judgment as to many of the affirmative defenses asserted by the MGA entities and Carter Bryant. Most of these defenses are essentially equitable in nature, and therefore the Court **DEFERS RULING** on them until after trial. Specifically, the Court **DEFERS RULING** on the affirmative defenses of abandonment, acts and omissions of others, acquiescence, consent, estoppel, failure to mitigate, laches, unclean hands, and waiver until after trial.

For the reason set forth above in a separate section, the Court defers ruling on Mattel's motion as to the statute of limitations defense.

The final affirmative defense is based on 17 U.S.C. § 205(d). With this affirmative defense, MGA essentially contends that it is a bona fide purchaser for value of the Bratz copyrights which

EXHIBIT ___2___

PAGE ___10___

took the rights in good faith and without notice of any prior transfer of the rights therein to Mattel. As the issue is argued by the parties, the Court would be required to determine the legal issue of whether MGA's registration of the copyrights as an "assignment" constitutes "constructive notice" in the manner required to give MGA the protection of 17 U.S.C. § 205(d). In the Court's view, this is a complex legal issue that is not thoroughly addressed by the parties' briefs. Moreover, the Court notes that a trial on the merits is likely to resolve the less complex factual issue of whether MGA acted in good faith and without notice of an earlier assignment of rights. Accordingly, the Court **DEFERS RULING** on this issue until after the Phase 1 trial.

* * * *

The Court will consider a number of remaining issues at the further hearing on these motions, set for May 19, 2008. Specifically, referencing the parties' Notices of Motion, the Court will consider the following issues:

Mattel's motion: Issue (2)(c), whether there is a factual dispute regarding the timing of certain drawings and a dummy model; issue (3), whether the first-generation Bratz dolls are substantially similar to seventeen drawings and a doll sculpt drawing or blueprint created by Bryant and whether those are original, protectable works of expression; issue (5), whether MGA and Larian are liable for aiding and abetting Bryant's breaches of the duty of loyalty and fiduciary duty; and issue (6)(a) whether Mattel is entitled to summary judgment as to the affirmative defense of statute of limitations.

Bryant's motion: Whether Bryant is entitled to summary judgment as to Mattel's claim for copyright infringement; whether Bryant is entitled to summary judgment as to Mattel's breach of contract claim; and whether Bryant is entitled to summary judgment on any portion of his claim for declaratory relief.

MGA's motion: Whether Mattel's claims are time barred; and whether the fourth element of intentional interference with contractual relations -- actual breach or disruption of the contractual relationship -- can be resolved on summary judgment.

Except for any updates from any party regarding the outstanding discovery matters that may be relevant to the statute of limitations, these issues are considered by the Court to be fully briefed. Any supplemental briefs by the parties on any issue other than the statute of limitations will be stricken by the Court. Any supplemental filings regarding the statute of limitations issue shall be limited to addressing the status of outstanding discovery issues and/or recently produced evidence.

**IT IS SO ORDERED.**

EXHIBIT ___2___

PAGE ___11___

# EXHIBIT 3

*Final*

**MGA ENTERTAINMENT**
16730 Schoenborn Street
North Hills, California 91343

Dated as of September 18, 2000

Mr. Carter Bryant
1319 West 160th Street
Gardena, California 90247

Dear Mr. Bryant:

Set forth below are the terms and conditions upon which we (hereinafter "MGA") are retaining you ("Bryant") to consult and advise MGA in the design and development of certain products which MGA wishes to manufacture and distribute (hereinafter our agreement is sometimes referred to as the "MGA Consulting Agreement"). The parties' agreement is as follows:

1.   Retention as Consultant/Services: MGA retains Bryant to provide his services to consult with MGA and advise MGA on the design and development by MGA of a line of dolls presently known as "Bratz" (the "MGA Products"). Bryant will render his services at such locations and times as may be reasonably be designated by MGA. It is understood and agreed that Bryant shall provide his services on a "top priority" basis as his services pertain to other clients of Bryant. In addition, Bryant and all other Bryant staff will take direction from and be under the supervision of such person(s) as may be reasonably designated by MGA from time to time upon notice to Bryant. It is understood and agreed that, subject to MGA's prior written consent, Bryant may retain third party contractors ("Contractors") to assist at his direction in the services to be rendered hereunder. Such third parties shall be compensated in a manner ("Contractor Fees") to be determined between Bryant and such third parties and shall be subject to the terms of this Agreement, including without limitation, paragraphs 3, 4, and 7, below. Bryant shall enter into agreements with all Contractors on a form approved by MGA as conforming to the terms of this Agreement and confirming MGA's ownership of all results and proceeds of the services provided by any such Contractors; such form is attached a Exhibit "A" to this Agreement, and is incorporated herein by reference.

2.   Term/Exclusivity: The Term shall commence on the date of this Agreement. MGA shall have the right to terminate this Agreement on not less than forty-five (45) days prior written notice to Bryant. During the Term of this Agreement, Bryant will not provide consulting services to any person, firm or corporation engaged in the design, development and manufacture and sale of dolls or similar products.

3.   Ownership:

(a)   All results and proceeds of the services provided by Bryant hereunder and any Contractor, including without limitation, any inventions, and any documentation related thereto, and any other material, whether written or oral (collectively, the "Bryant Work Product") shall be considered "work made for hire" and shall be owned exclusively, throughout the world, and in perpetuity by MGA (including all copyrights and patents therein and thereto, and all renewals and extensions thereof). MGA shall have the sole and exclusive right to use the Bryant Work Product, in whole or in part, in whatever manner MGA may desire, including without limitation, the right to cut, edit, revise, alter and/or otherwise modify the Bryant Work Product and the results of Bryant's services hereunder and the Contractors' services, and to freely use, perform, distribute, exhibit and exploit such materials and license others to do so in any and all media now known or hereafter devised. MGA shall have the sole and exclusive right to copyright or patent the Bryant Work Product in MGA's name, as the owner and author thereof, and to secure any and all registrations, renewals and extensions of such copyrights and

{00006662.DOC/2 / 10/04/2000 03:05 PM}

1

ATTORNEY'S EYES ONLY

BRYANT 00794



11-5-04        SH

EXHIBIT _____3_____

PAGE _____12_____

EX 15-0001

patents in MGA's name or Bryant's name or the Contractors' names, as permitted pursuant to applicable statute. Bryant expressly waives, and shall cause all Contractors to waive, any "moral rights" (as such term is commonly understood around the world) in and to the Bryant Work Product prepared by Bryant and/or the Contractors pursuant to the Agreement. Bryant shall, upon request, execute, acknowledge and deliver, and shall cause each Contractor to execute, acknowledge and deliver, to MGA such additional documents as MGA may deem necessary to evidence and effectuate MGA's rights hereunder, and Bryant hereby grants to MGA the right as Bryant's attorney-in-fact to execute, acknowledge, deliver and record in the U.S. Copyright Office, the U.S. Patent Office or elsewhere any and all such documents. If, whether by statutory amendment to the U.S. Copyright and/or Patent Laws, or a decision by a court of competent jurisdiction interpreting such laws, MGA shall not be deemed to be the author or owner of the Bryant Work Product, this Agreement and each agreement with a Contractor shall, nevertheless, constitute an irrevocable assignment by Bryant and each Contractor, as applicable, to MGA of any and all of Bryant's and each Contractors' right, title and interest, including copyright and patent (and all renewals and extensions thereof), in and to the Bryant Work Product. Bryant acknowledges and agrees, and shall cause each Contractor to acknowledge and agree, that he and they have no interest in and shall not, by virtue of this Agreement or any services rendered by Bryant and/or each Contractor to MGA acquire any interest in the MGA Products and that MGA may exploit the MGA Products and any derivative works thereto, without obligation to Bryant and/or the Contractors, except as provided in Paragraph 4, below.

(b)      Without limiting the generality of the provisions of Paragraph 3(a), above, with respect only to any inventions, and any documentation related thereto, and any other material, whether written or oral, created by or for Bryant relating to the MGA Products prior to the commencement of the term of this Agreement, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Bryant, Bryant hereby irrevocably grants, conveys, transfers, sets over and assigns to MGA in perpetuity all of Bryant's right, title and interest, in an to the such material, including, without limiting the generality of the foregoing, all rights under copyright and patent (and all renewals and extensions thereof) including the right to produce and authorize the production of any and all derivative works, and all proprietary rights of any kind therein, now known or hereafter created throughout the world. MGA shall have the sole and exclusive right to use such material, in whole or in part, in whatever manner MGA may desire, including without limitation, the right to cut, edit, revise, alter and/or otherwise modify such materials and to freely use, perform, distribute, exhibit and exploit such materials and license others to do so in any and all media now known or hereafter devised or refrain from doing so as MGA may determine. Bryant expressly waives any "moral rights" (as such term is commonly understood around the world) in and to such materials.

4.      **Compensation/Costs:**

(a)      For the first six (6) months of the Term of this Agreement, MGA shall pay Bryant for his services at the rate of five thousand five hundred dollars ($5,500.00) per month; for the next three (3) months of the Term, MGA shall pay Bryant for his services at the rate of five thousand dollars ($5,000.00) per month. All sums paid to Bryant as monthly fees shall be deemed to be non-refundable, fully-recoupable advances against any royalties that may be payable to Bryant pursuant to paragraph 4(b), below.

(b)      MGA shall pay to Bryant a royalty of three percent (3%) of the Net Sales Receipts from the sales by MGA of any of the MGA Products developed by MGA on which Bryant provided his consulting services. As used herein, the term "Net Sales Receipts" means all monies actually received by MGA from its customers on sales of MGA Products less (i) any and all excise, sales, value added or comparable or similar taxes; (ii) freight and similar third party handling charges paid or payable by MGA; and (iii) returns, discounts, allowances or credits (inclusive of co-op and trade discounts and allowances). MGA shall account to Bryant on a calendar quarterly basis within thirty (30) days after the end of each quarter. All statements of royalties rendered by MGA hereunder shall be conclusive, final,

{00006662.DOC/2 7 10/04/2000 03:05 PM}

2

ATTORNEY'S EYES ONLY

BRYANT 00795

EXHIBIT    3

PAGE    13

EX 15-0002

and binding on Bryant, shall constitute an account stated, and shall not be subject to any question for any reason whatsoever unless specific written objection, stating the basis thereof, is given by Bryant to MGA within two (2) years after the date rendered.  No action, suit, or proceeding of any nature in respect of any royalty statement or other accounting rendered by MGA hereunder may be maintained against MGA unless such action, suit, or proceeding is commenced against MGA  in a court of competent jurisdiction within one (1) year after the date of MGA's notice rejecting such objection. Bryant or his representatives shall have the right, not more than once per year and not more than once per statement of royalties, to examine MGA's books and records relating to the sales of such MGA Products, such examination to be conducted during MGA's normal business hours and upon reasonable prior written notice.

(c)     All costs and expenses incurred by Bryant in connection with the performance of his obligations hereunder shall be borne solely by Bryant, except as otherwise agreed and incurred with MGA's prior written consent.  In the event MGA requests Bryant to travel to the Orient on MGA's behalf in connection with his services hereunder, MGA will reimburse Bryant for all travel expenses incurred in connection therewith, such as parking, airfare (economy class), auto rental, meals and hotel accommodations. Reimbursement shall be at the actual cost of such item without any mark-up.

(d)     Bryant shall submit invoices to MGA for his monthly fees (and reimbursable expenses, if and as agreed) on a monthly basis.  Each invoice shall provide sufficient detail to support the monthly fee charges and hours rendered (and shall include satisfactory copies of bills and/or payments for reimbursable expenses, as applicable).  MGA shall pay each such invoice within fifteen (15) days after receipt of such invoice, provided, however, MGA reserves the right to request further explanation or documentation before paying any invoice submitted by Bryant.

(e)     MGA shall use its reasonable business efforts, consistent with its business judgment, to market, promote, distribute, sell and/or exploit the MGA Products and to collect on all monies due from sales.  MGA has not made and does not hereby make any representation or warranty with respect to the quantity of sales (if any) of MGA Products embodying the Property which MGA may sell.  Bryant recognizes and acknowledges that the sale of MGA Products is speculative and agrees that MGA's judgment and the judgment of its subsidiaries and affiliated companies with regard to the sales of any of its MGA Products and with regard to the marketing, promotion, advertising and exploitation of the MGA Products shall be binding and conclusive upon Bryant.  Bryant warrants and agrees that Bryant will not make any claim, nor shall any liability be imposed upon MGA based upon any claim, that more sales could have been made or that better business could have been done than what was actually made or done by MGA or any of MGA's subsidiaries or its affiliated companies, or that better prices or terms could have been obtained.

5.     Warranties and Indemnity:  Bryant represents, warrants and agrees that:

(a)     he has the right and is free to execute this Agreement, to grant the rights granted by him to MGA hereunder, and to perform each and every term and provision hereof;

(b)     neither the execution and delivery of this Agreement nor the performance by Bryant of any of his obligations hereunder will constitute a violation, breach or default under any agreement, arrangement or understanding, or any other restriction of any kind, to which Bryant is a party or by which Bryant is bound;

(c)     the Bryant Work Product shall be free of all liens and encumbrances and there will be no claims, demands or actions pending or threatened with respect thereto; and that the Bryant Work Product is original and no part thereof infringes or shall infringe upon any common law or statutory rights or intellectual property rights of any third party including, without limitation, contractual rights,

{00005662.DOC/2 / 10/04/2000  03:05 PM}

3

ATTORNEY'S EYES ONLY          BRYANT 00796

EXHIBIT ___3___

PAGE ___14___

EX 15-0003

patents, copyrights, mask-work rights, trade secrets, rights of privacy and other intellectual property rights;

(d)    he shall comply with all applicable laws and regulations in force during the Term of this Agreement with respect to the services to be rendered hereunder; and

(e)    he shall indemnify and hold MGA harmless from and against any and all claims, losses, costs, judgments, settlements, damages and expenses (including reasonable counsel fees) arising from any breach by him of any of the warranties, representations and agreements made by him hereunder.

6.    Default/Termination:

(a)    In the event either Party fails to perform any of its material obligations hereunder, or breaches any representation, warranty or agreement contained herein, the other Party may terminate this Agreement on thirty (30) days prior written notice, provided the breaching Party shall not have remedied such failure within such thirty (30) day period.

(b)    Upon the termination of this Agreement Bryant shall turn over to MGA all materials relating to the MGA Products furnished by MGA to Bryant or shall give MGA satisfactory evidence of their destruction.

7.    Confidentiality:

(a)    Bryant shall keep in confidence and not disclose to any third party, without the written permission of MGA, the Confidential Information made known to him under this Agreement. As used herein, the term "Confidential Information" means information relating to MGA's products (whether current or projected), product titles, customers, employees, tools and techniques, designs, drawings, schematics and other documentation relating thereto and other confidential and proprietary business information of MGA and which is expressly labeled or identified to Bryant in writing as "confidential" or which, under the circumstances of such disclosure, Bryant knows, or reasonably should know, are treated by MGA as confidential. This requirement of confidentiality shall not apply to any information that is (i) in the public domain through no wrongful act of Bryant; (ii) rightfully received by the Bryant from a third party who is not bound by a restriction of nondisclosure; (iii) already in the Bryant's possession without restriction as to disclosure; or (iv) required to be disclosed by operation of law or by order of a court or administrative body of competent jurisdiction, (provided that prior to such disclosure, MGA shall first receive notice thereof from Bryant and have the opportunity to contest such order or requirement of disclosure or seek appropriate protective order).

(b)    Bryant agrees and acknowledges that all Confidential Information disclosed to him shall be and remain the sole property of MGA. Nothing contained in this Agreement shall be construed as granting to Bryant any right, title or interest of any kind, by license or otherwise, to the Confidential Information disclosed by MGA, the intellectual property therein or any part or copy thereof. Bryant further acknowledges and agrees that nothing contained herein shall be construed as granting Bryant any right to develop, manufacture, produce and/or distribute any product(s) derived from or which otherwise uses any of the Confidential Information disclosed by MGA, or authorize or in any way assist others to do so. Bryant may not make, sell, license or distribute copies of the Confidential Information disclosed by MGA and may not sublicense, transfer or assign in any manner whatsoever this Agreement or any of Bryant's rights or obligations under this Agreement.

(c)    Bryant acknowledges that his failure to perform any of the terms or conditions of this Agreement shall result in immediate and irreparable damage to MGA. Bryant also acknowledges that there may be no adequate remedy at law for such failures and that in the event thereof MGA shall be

{00006662.DOC/2 / 10/04/2000 03:05 PM}

4

ATTORNEY'S EYES
ONLY                    BRYANT 00797

EXHIBIT _____3_____

PAGE _____15_____

EX 15-0004

entitled to equitable relief in the nature of injunction and to all other available relief, at law and/or in equity.

8.       **Notices:** All notices, statements and/or payments to be given to the parties hereunder shall be addressed to the parties at the addresses set forth on the first page hereof or at such other address as the parties shall designate in writing from time to time. All notices shall be in writing and shall either be served by personal delivery, mail, or facsimile (if confirmed by mail or personal delivery of the hard copy), all charges prepaid. Except as otherwise provided herein, such notices shall be deemed given when personally delivered, all charges prepaid, or on the date five (5) days following the date of mailing, except that notices of change of address will be effective only after the actual receipt thereof. Copies of all notices to MGA shall be sent to Fischbach, Perlstein & Lieberman LLP, 1875 Century Park East, Suite 850, Los Angeles, California 90067, Attention: David S. Rosenbaum, Esq. Copies of all notices to Bryant shall be sent to Carter Bryant 1319 West 160th Street, Gardena, California 90247.

9.       **Independent Contractor/No Partnership/Third Party Beneficiary:** Bryant's relationship with MGA is that of an independent contractor. Bryant does not have, and will not represent that he has, any power, right or authority to bind MGA, or to assume or create any obligation or responsibility, express or implied, on behalf of MGA in MGA's name. Nothing stated in the Agreement shall be construed as constituting a partnership or as creating the relationships of employer/employee or principal/agent between the parties. In all matters relating to the Agreement, Bryant shall not act as MGA's employee within the meaning or application of any federal or state unemployment insurance laws, or any other laws or regulations which may impute any obligations or liabilities to MGA by reason of an employment relationship. Bryant will be solely responsible for all taxes, including without limitation, employee and employer, and that he carries all of his own insurance. Neither of the parties hereto shall hold itself out contrary to the terms of this provision by advertising or otherwise. This Agreement shall not be construed to be for the benefit of any third party.

10.      **Services Rendered Deemed Special, etc.:** Bryant acknowledges that the services to be rendered by him hereunder are of a special, unique, extraordinary and intellectual character which gives them peculiar value, the loss of which cannot be adequately compensated for in an action at law and that a breach of any term, condition or covenant hereof will cause irreparable harm and injury to MGA and in addition to any other available relief MGA will be entitled to seek injunctive relief.

11.      **General Provisions:**

(a)      This Agreement may not be assigned by either Party hereto either voluntarily or by operation of law. Any such assignment shall not relieve such Party of its obligations hereunder.

(b)      The titles of the paragraphs of this Agreement are for convenience only and shall not in any way affect the interpretation of any paragraph of this Agreement or the Agreement itself.

(c)      A waiver by either Party of the terms or conditions of this Agreement in any instance shall not be deemed or construed to be a waiver of such terms or conditions for the future or of any subsequent breach thereof. All remedies, rights, undertakings, obligations and agreements contained herein shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either Party.

(d)      Neither Party hereto shall be liable to the other for any incidental, consequential, special or punitive damages of any nature or kind, arising out of in connection with a breach by such Party of this Agreement, whether such liability is asserted on the basis of contract, tort (including negligence or strict liability), or otherwise, even if such Party has been warned of the possibility of any such loss or damage.

{00006662.DOC/2 / 10/04/2000 03:05 PM}

5

ATTORNEY'S EYES ONLY

BRYANT 00798

EXHIBIT ___3___

PAGE ___16___

EX 15-0005

TO PAGE.01         818984894                          OCT 04 '00 16:51

     (e)    This Agreement shall be construed and interpreted pursuant to the laws of the State of California, applicable to agreements made and to be performed entirely therein, and the parties hereto submit and consent to the jurisdiction of the courts of the State of California, including Federal Courts located therein, should Federal jurisdiction requirements exist, in any action brought to enforce (or otherwise relating to) this contract.

     (f)    This Agreement constitutes the entire Agreement between the parties hereto and supersedes all prior agreements, whether written or oral, with respect to the subject matter herein contained. No provision of this Agreement shall be deemed waived, amended or modified by either Party unless such waiver, amendment or modification shall be in writing and signed by a duly authorized officer of the Party against whom the waiver, amendment or modification is to be enforced.

     (g)    Nothing contained in this Agreement shall be construed so as to require the commission of any act contrary to law, and wherever there is any conflict between any provision of this Agreement and any material statute, law, ordinance, order or regulation contrary to which the parties hereto have no legal right to contract, the latter shall prevail, but in such event any provision of this Agreement so affected shall be curtailed and limited only to the extent necessary to bring it within the legal requirements.

     Kindly indicate your agreement with the foregoing by signing in the space provided below.

                   Very truly yours,

                   MGA ENTERTAINMENT

                   By: _____

                   Its: _____

AGREED TO AND ACCEPTED:

_____
CARTER BRYANT

Social Security Number

{N00006662.DOC/2 / 10/04/2000  03:05 PM}

                   6

** TOTAL PAGE.04 **

**BRYANT 00799**

ATTORNEY'S EYES ONLY     818984894     mga entertainment     Oct 04 00 04:38p

EXHIBIT ___3___

PAGE ___17___

EX 15-0006

# EXHIBIT 4

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12   MATTEL, INC.,                    CASE NO. CV 04-9049 SGL (RNBx)

13          Plaintiff,                Consolidated with
                                       Case No. CV 04-09059
14                                     Case No. CV 05-02727
        vs.
15                                     Hon. Stephen G. Larson
     MGA ENTERTAINMENT,
16
           Defendant.                 **FINAL VERDICT FORM AS GIVEN**
17   ─────────────────────────

18   AND CONSOLIDATED ACTIONS

19

20

21

22

23

24

25

26

27

28

7-17

Case No. CV 04-9049 SGL (RNBx)
FINAL PROPOSED VERDICT FORM FOR PHASE 1A

EXHIBIT ____4____

PAGE ____18____

1

2

## VERDICT FORM

3      We answer the questions submitted to us as follows:

4

5      ### Timing of Tangible Items

6

7      1.     For each of the items listed below, has Mattel proven by a

8   preponderance of the evidence that the item was "conceived or reduced to practice"

9   — that is, created — by Carter Bryant, alone or jointly with others, during the

10  period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

11

12

| Yes | No | |
|-----|----|----|
| ☒ | ☐ | TX 5-52, 62-1, 624/5-74, 62-11, 10537, 15180/5-75, 62-12, 10538, 15181/5-111, 708/5-112, 62-13/5-113/5-114/62-14/62-15, 1152-1, 1152-2, 10613/1328/10033-3/10033-4 |
| ☒ | ☐ | TX 5-88, 35-1, 35-3, 5-101/1327, 10153-3/10153-4 |
| ☒ | ☐ | TX 5-35, 757 |
| ☒ | ☐ | TX 5-36, 701, 702 |
| ☒ | ☐ | TX 5-37, 703 |
| ☒ | ☐ | TX 5-38, 762 |
| ☐ | ☐ | TX 5-39, 523, 752 |
| ☐ | ☐ | TX 5-40, 753, 754, 13583 |
| ☐ | ☐ | TX 751-2, 751-3, 5-41, 755 |
| ☐ | ☐ | TX 5-42, 756 |
| ☒ | ☐ | TX 5-43, 709 |
| ☒ | ☐ | TX 5-46, 710 |
| ☒ | ☐ | TX 5-49, 704 |
| ☒ | ☐ | TX 5-50, 705 |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-1-

EXHIBIT ___4___

PAGE ___19___

| Yes | No | |
|-----|-----|---|
| ☒ | ☐ | TX 5-53, 1152-5, 1152-6, 10534, 15175 |
| ☒ | ☐ | TX 5-54, 62-2, 620, 774, 775 |
| ☒ | ☐ | TX 5-55, 62-3, 785, 1152-9 |
| ☒ | ☐ | TX 5-56, 764, 15176 |
| ☒ | ☐ | TX 5-57, 776, 777 |
| ☒ | ☐ | TX 5-58, 765, 15177 |
| ☒ | ☐ | TX 5-59, 739, 740 |
| ☒ | ☐ | TX 5-60, 761 |
| ☒ | ☐ | TX 5-61, 62-4, 782, 796-1, 1748 |
| ☒ | ☐ | TX 5-62, 62-5, 621, 767, 768, 5-71, 62-10, 770, 1752-1 |
| ☒ | ☐ | TX 5-63, 758, 759, 760 |
| ☒ | ☐ | TX 5-64, 62-6, 795, 1152-14, 1750 |
| ☒ | ☐ | TX 5-65, 1152-7, 1152-8, 11789 |
| ☒ | ☐ | TX 5-66, 794, 1152-13 |
| ☒ | ☐ | TX 5-67, 62-7, 784, 1152-11, 1152-12, 10535 |
| ☒ | ☐ | TX 5-68, 62-8, 781, 786, 790, 1751-4 |
| ☒ | ☐ | TX 5-69, 11788, 5-70, 62-9, 623, 783 |
| ☒ | ☐ | TX 5-72, 1152-15, 1152-16, 10536, 15179 |
| ☒ | ☐ | TX 5-73, 741, 742 |
| ☒ | ☐ | TX 5-76, 706 |
| ☒ | ☐ | TX 5-77, 707 |
| ☒ | ☐ | TX 5-78, 10539, 18501 |
| ☒ | ☐ | TX 5-136, 711 |
| ☒ | ☐ | TX 10579, 18281 |
| ☒ | ☐ | TX 15172 |

-2-

EXHIBIT ___4___

PAGE ___20___

1        2.        For each of the items listed below, has Mattel proven by a

2    preponderance of the evidence that the item was "conceived or reduced to practice"

3    — that is, created — by Carter Bryant, alone or jointly with others, during the

4

5    period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

6

| Yes | No | |
|---|---|---|
| ☒ | ☐ | TX 3-1, 779, 780, 1-1, 2-1, 778 |
| ☒ | ☐ | TX 3-2, 726, 727, 728, 1-4, 2-5 |
| ☒ | ☐ | TX 3-3, 1152-19, 1152-20, 11838, 15182, 1-6, 2-10, 5-104, 10544 |
| ☒ | ☐ | TX 3-5, 791, 1-8, 2-2 |
| ☒ | ☐ | TX 3-6, 11837, 15184, 1-7, 2-8, 743, 744, 5-107, 1152-17, 1152-18, 10547 |
| ☒ | ☐ | TX 3-8, 789, 1-11, 2-9, 734, 5-106, 10546 |
| ☒ | ☐ | TX 3-9, 788, 1-10, 2-6, 746, 5-103, 10543 |
| ☒ | ☐ | TX 3-10, 735, 736 |
| ☒ | ☐ | TX 3-12, 792, 1-3, 2-7, 5-102, 10542 |
| ☒ | ☐ | TX 3-13, 793, 1-5, 2-3, 10-3 |
| ☒ | ☐ | TX 5-79, 1-9, 2-4, 737, 10545, 5-105 |
| ☒ | ☐ | TX 1-2 |
| ☒ | ☐ | TX 3-11 |
| ☒ | ☐ | TX 5-26, 712 |
| ☒ | ☐ | TX 5-27, 713 |
| ☒ | ☐ | TX 5-81, 720 |
| ☒ | ☐ | TX 5-82, 715 |
| ☒ | ☐ | TX 5-83, 723 |
| ☒ | ☐ | TX 3-4, 5-84, 716, 717 |
| ☒ | ☐ | TX 3-7, 5-85, 718, 719, 10-2, 63-1 |
| ☒ | ☐ | TX 5-80, 721, 722, 5-86 |
| ☒ | ☐ | TX 5-87, 5-108, 724, 725 |
| ☒ | ☐ | TX 5-34 |

EXHIBIT _____4_____

PAGE _____21_____

3.    For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
|-----|----|----|
| ☒ | ☐ | TX 5-89, 35-2, 323-32, 323-33 |
| ☒ | ☐ | TX 1107, 10638 |
| ☒ | ☐ | TX 1108, 10639 |
| ☒ | ☐ | TX 1109, 771 |
| ☒ | ☐ | TX 1110, 773 |
| ☒ | ☐ | TX 5-14, 10515 |
| ☒ | ☐ | TX 5-18, 10518 |
| ☒ | ☐ | TX 5-19, 10519 |
| ☒ | ☐ | TX 5-28, 10526 |
| ☒ | ☐ | TX 5-30 |
| ☒ | ☐ | TX 5-95 |
| ☒ | ☐ | TX 5-96 |
| ☒ | ☐ | TX 5-99 |
| ☒ | ☐ | TX 323-18 |
| ☒ | ☐ | TX 323-19 |
| ☒ | ☐ | TX 323-26 |

Case No. CV 04-9049 SGL (RNBx)
FINAL PROPOSED VERDICT FORM FOR PHASE 1A

07209/2554627.7

EXHIBIT __4__

PAGE __22__

1      4.     For each of the items listed below, has Mattel proven by a

2   preponderance of the evidence that the item was "conceived or reduced to practice"

3   — that is, created — by Carter Bryant, alone or jointly with others, during the

4   period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

5

6                  **Trial Exhibit No.**              YES      NO

7         The Three Dimensional Item Presented at Pitch        X

8                        Meeting

9

10                   Trial Exhibit 1136                      X

11

12                          **Timing of Ideas**

13

14      5.     Has Mattel proven by a preponderance of the evidence that Carter

15   Bryant conceived the "Bratz" characters while employed by Mattel?

16         Yes    X

17         No    ____

18

19

20      6.     Has Mattel proven by a preponderance of the evidence that Carter

21   Bryant conceived the name "Bratz" while employed by Mattel?

22         Yes    X

23         No    ____

24

25

26

27

28

EXHIBIT ___4___

23

1            **Intentional Interference with Contractual Relations**

2            7.      Is MGA Entertainment, Inc. ("MGA") liable to Mattel for intentional

3       interference with contractual relations?

4                    Yes    _X_

5                    No     ____

6

7            8.      Is Isaac Larian liable to Mattel for intentional interference with

8       contractual relations?

9                    Yes    _X_

10                   No     ____

11

12           **Aiding and Abetting Breach of Fiduciary Duty**

13           9.      Is MGA liable to Mattel for aiding and abetting breach of fiduciary

14      duty?

15                   Yes    _X_

16                   No     ____

17

18           10.     Is Isaac Larian liable to Mattel for aiding and abetting breach of

19      fiduciary duty?

20                   Yes    _X_

21                   No     ____

22

23           **Aiding and Abetting Breach of the Duty of Loyalty**

24           11.     Is MGA liable to Mattel for aiding and abetting breach of the duty of

25      loyalty?

26                   Yes    _X_

27                   No     ____

28

EXHIBIT ____4____

PAGE ____24____

12. Is Isaac Larian liable to Mattel for aiding and abetting breach of the duty of loyalty?

       Yes    X

       No    _____

### Conversion

13. Is MGA liable to Mattel for conversion?

       Yes    X

       No    _____

14. Is Isaac Larian liable to Mattel for conversion?

       Yes    X

       No    _____

15. Is MGA Entertainment (HK) Limited liable to Mattel for conversion?

       Yes    X

       No    _____

Once this verdict form is completed, the foreperson of the jury should sign and date on the lines below.

DATED: _July 17_____, 2008

_____
            Presiding Juror

EXHIBIT ____4____

PAGE ____25____

# EXHIBIT 5

Case 2:04-cv-09049-DOC-RNB   Document 4303-3   Filed 09/29/08   Page 29 of 63   Page ID
#:107794
Case 2:04-cv-09049-SGL-RNB   Document 4267   Filed 08/20/2008   Page 1 of 56

1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

11   MATTEL, INC.,                      | CASE NO. CV 04-9049 SGL (RNBx)

12            Plaintiff,

13                                      | Consolidated with

14        vs.                           | CASE NO. CV 04-9059 SGL (RNBx)

15                                      | CASE NO. CV 05-2727 SGL (RNBx)

16   MGA ENTERTAINMENT, INC., et al.,   | Hon. Stephen G. Larson

17

18   Defendants.

19                                      | **COURT'S PHASE B JURY**
     AND CONSOLIDATED ACTIONS
20                                      | **INSTRUCTIONS AS GIVEN**

21

22

23

24

25

26

27

28

EXHIBIT   5

PAGE   26

## JURY INSTRUCTION NO. 20

Mattel claims that the defendants, MGA Entertainment, Inc. ("MGA"), Isaac Larian and MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), engaged in copyright infringement of certain items that you found in Phase A of this trial were created by Carter Bryant when he worked at Mattel. The defendants deny that claim.

Copyright is the exclusive right to copy.

This right to copy includes the exclusive rights to:

(1)     Authorize, or make additional copies, or otherwise reproduce the copyrighted work;

(2)     Recast, transform, or adopt the work, that is, to prepare derivative works based upon the copyrighted work;

(3)     Distribute copies of the copyrighted work to the public by sale or other transfer of ownership; and

(4)     Display publicly a copyrighted work.

It is the owner of a copyright who may exercise these exclusive rights to copy.

As a matter of law, Mattel is the owner, by assignment, of the Bratz-related items that you found were created by Carter Bryant, alone or jointly with others, while employed by Mattel, which items have been registered by Mattel at the U.S. Copyright Office. In general, copyright law protects against production, adaptation and distribution of substantially similar copies of the owner's copyrighted work without the owner's permission. An owner may enforce these rights to exclude others in an action for copyright infringement.

EXHIBIT ____5____

PAGE ____27____

1    You must consider each defendant's acts separately to determine whether that

2  defendant has engaged in an act that is an infringement of Mattel's copyright.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22    EXHIBIT ___5___

PAGE ___28___

Case 2:04-cv-09049-DOC-RNB   Document 4303-3   Filed 09/29/08   Page 32 of 63   Page ID
#:107797
Case 2:04-cv-09049-SGL-RNB      Document 4267      Filed 08/20/2008      Page 24 of 56

1

## JURY INSTRUCTION NO. 22

2

3    Anyone who copies original elements of a copyrighted work without the owner's

4    permission infringes the copyright.

5    Mattel claims that the defendants have infringed copyrights for the Bratz-related

6    items described above. On Mattel's copyright infringement claim, Mattel has the burden

7    of proving both of the following by a preponderance of the evidence:

8        1.    Mattel is the owner of a valid copyright; and

9        2.    The defendants copied original elements from the copyrighted work.

10

11    If you find that Mattel has proved both of these elements, your verdict should be

12    for Mattel.

13    If, on the other hand, Mattel has failed to prove either of these elements, your

14    verdict should be for the defendants.

15    As a matter of law, the first element is satisfied because Mattel is the owner of

16    each of the items you found were created by Carter Bryant, alone or jointly with others,

17

18    while employed by Mattel and which Mattel has registered with the U.S. Copyright

19    Office.

20    Whether or not the second element is satisfied is for you to decide.

21

22

23

24

25

26

27

28

24    EXHIBIT ____5____

PAGE ____29____

# EXHIBIT 6

1  THOMAS J. NOLAN (Bar No. 66992)
   (tnolan@skadden.com)
2  JASON D. RUSSELL (Bar No. 169219)
   (jrussell@skadden.com)
3  LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
   (laguiar@skadden.com)
4  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue, Suite 3400
5  Los Angeles, CA 90071
   Tel.: (213) 687-5000/Fax: (213) 687-5600
6
7
8  Attorneys for MGA Parties

9            UNITED STATES DISTRICT COURT

10          CENTRAL DISTRICT OF CALIFORNIA

11              EASTERN DIVISION

12 | CARTER BRYANT, an individual,        | CASE NO. CV 04-9049 SGL
   |                                        | (RNBx)
13 |              Plaintiff,                |
   |                                        | Consolidated with Case No. 04-
14 |        v.                              | 9059 and Case No. 05-2727
15 | MATTEL, INC., a Delaware               | Honorable Stephen G. Larson
   | corporation,                           |
16 |              Defendant.                | MGA PARTIES' REVISED
   |                                        | DISPUTED [PROPOSED] PHASE
17 |                                        | 1-B JURY INSTRUCTIONS
18 | AND CONSOLIDATED ACTIONS.              |
19
20
21
22
23
24
25
26
27          EXHIBIT ___6___
28          PAGE ___30___

**PHASE 1-B – Copyright**

<u>**INSTRUCTION NO.**</u>

<u>**PRELIMINARY INSTRUCTION**</u>

Based on your findings in Phase 1-A of this trial regarding when certain drawings were "created" by Carter Bryant, the Court has determined as a matter of law that Mattel owns the copyrights to Mr. Bryant's drawings. Mattel alleges that MGA's Bratz-related products have infringed their copyrights in Mr. Bryant's drawings. The Court has also determined that Mattel's copyright claims are limited to the 16 Bryant drawings that Mattel has registered with the Copyright Office. Those drawings are as follows: TX [302] [VA 1-378-648, VA 1-378-649, VA 1-378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653, VA 1-378-654, VA 1-378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-378-659, VA 1-378-660, VAu 715-270, VAu 715-271 and VAu 715-273.]

MGA denies that any of its Bratz products infringe Mattel's copyrights.

**Authority:** Given the number of drawings at issue in the Phase 1-A trial, it is important that the jury understand that Mattel's infringement claims are limited to the 16 registered drawings listed in the Final Pretrial Conference Order.

EXHIBIT _6_

PAGE _31_

32

1    **Authority**:   Ninth Circuit Manual of Model Jury Instructions 17.21 (2007) (modified).

2    Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 931-33 (2005);

3    Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 262-263 (9th Cir. 1996).

7    DATED:  July 25, 2008              SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

9                                        By:  _____ /s/ Thomas J. Nolan _____
10                                                        Thomas J. Nolan
11                                               Attorneys for the MGA Parties

28                                              EXHIBIT ___6___

EXHIBIT 6

PAGE 32

# EXHIBIT 7

CONFORMED COPY

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 90378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Duane R. Lyons (Bar No. 125091)
5    (duanelyons@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
6    Los Angeles, California 90017-2543
     Telephone: (213) 443-3000
7    Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

| 11 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|---|
| 12 | Plaintiff, | Consolidated With Case No. 04-9059 and Case No. 05-2727 |
| 13 | v. | |
| 14 | | MATTEL, INC.'S SECOND AMENDED ANSWER IN CASE NO. 05-2727 AND COUNTERCLAIMS FOR: |
| 15 | MATTEL, INC., a Delaware corporation, | |
| 16 | Defendant. | 1.  COPYRIGHT INFRINGEMENT; |
| 17 | | 2.  VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT; |
| 18 | MGA ENTERTAINMENT, INC. a California corporation, | 3.  CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT; |
| 19 | | |
| 20 | Plaintiff, | 4.  MISAPPROPRIATION OF TRADE SECRETS; |
| 21 | v. | 5.  BREACH OF CONTRACT; |
| 22 | MATTEL, INC., a Delaware corporation, and DOES 1-10, | 6.  INTENTIONAL INTERFERENCE WITH CONTRACT; |
| 23 | | 7.  BREACH OF FIDUCIARY DUTY; |
| | Defendants. | 8.  AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; |
| 24 | | 9.  BREACH OF DUTY OF LOYALTY; |
| 25 | | |
| 26 | | **PUBLIC REDACTED VERSION** |
| 27 | | **Volume I** |
| 28 | | |

2154363.2

EXHIBIT ____7____

PAGE ____33____

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1   allowed MGA to avoid expending time, money and effort necessary to build a
2   legitimate business, but also allowed MGA to unfairly compete against Mattel by
3   taking Mattel's playbook.

4   **III. MGA STEALS A NEW LINE OF FASHION DOLLS FROM MATTEL**

5       21.   Carter Bryant is a former Mattel employee. Bryant joined Mattel
6   in September 1995, where he worked in Mattel's Design Center as a BARBIE
7   product designer. In or about April 1998, Bryant resigned his position with Mattel
8   and moved to Missouri to live with his parents. Late in 1998, Bryant applied to
9   Mattel to be rehired. On January 4, 1999, he began working at Mattel in Mattel's
10   Design Center, again as a product designer, for Mattel's BARBIE collectibles line.

11       22.   Upon his return to Mattel in January 1999, Bryant executed an
12   Employee Confidential Information and Inventions Agreement (the "Employment
13   Agreement"), a true and correct copy of which is attached hereto as Exhibit A.

14       23.   Pursuant to his Employment Agreement and as a condition of
15   and in consideration for his employment, Bryant agreed, among other things, that
16   he held a position of trust with Mattel, that the designs and inventions he created
17   during his Mattel employment (with certain exceptions not relevant here) were
18   owned by Mattel, and that he would be loyal to the company by agreeing not to
19   assist or work for any competitor of Mattel while he was employed by Mattel.

20       24.   On January 4, 1999, Bryant also executed Mattel's Conflict of
21   Interest Questionnaire (the "Conflict Questionnaire"). Among other things, Bryant
22   certified in the Conflict Questionnaire that, other than as disclosed, he had not
23   worked for any competitor of Mattel in the prior twelve months and had not
24   engaged in any business venture or transaction involving a Mattel competitor that
25   could be construed as a conflict of interest. Bryant understood what the Conflict
26   Questionnaire required because, among other things, he disclosed on it the
27   freelance work he had performed while in Missouri for Ashton-Drake, which is

28

EXHIBIT   7   -34-

PAGE   34

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1  unrelated to the conduct alleged herein. A true and correct copy of the Conflict
2  Questionnaire executed by Bryant is attached hereto as Exhibit B.

3        25.  Pursuant to the Conflict Questionnaire, Bryant also agreed that
4  he would immediately notify his supervisor of any change in his situation that
5  would cause him to change any of the foregoing certifications. Despite this
6  obligation, at no time did Bryant disclose to Mattel that he was engaging in any
7  business venture or transaction with MGA or any other Mattel competitor.

8        26.  More specifically, while Bryant was employed by Mattel, Bryant
9  and other Counter-defendants misappropriated and misused Mattel property and
10 Mattel resources for the benefit of Bryant and MGA. Such acts included, but are
11 not limited to, the following:

12             a.    using his exposure to Mattel development programs to
13 create the concept, design and name of Bratz;

14             b.    using Mattel resources, and while employed by Mattel,
15 Bryant worked by himself and with other Mattel employees and contractors to
16 design and develop Bratz, including without limitation by creating drawings and
17 three-dimensional models of Bratz dolls, and fashion designs for the dolls'
18 associated clothing and accessories; and

19             c.    using Mattel resources, and while employed by Mattel,
20 Bryant took steps to assist MGA to produce Bratz dolls.

21        27.  During the time that he was employed by Mattel and thereafter,
22 Bryant concealed these actions from Mattel, including by failing to notify his
23 supervisor of the conflict of interest he created when he began working on MGA's
24 behalf and when he began receiving payments from MGA. Bryant additionally
25 enlisted other Mattel employees to perform work on Bratz during the time he was
26 employed by Mattel and, by all indications, in at least some cases led them to
27 believe that they were performing work on a project for Mattel.

28

EXHIBIT ___7___
                                          -35-
PAGE ___35___
SECOND AMENDED ANSWER AND COUNTERCLAIMS

1        28.   Bryant also made affirmative misrepresentations to Mattel

2 management and employees immediately before his departure from Mattel on

3 October 20, 2000. For example, during his last few weeks at Mattel, Bryant told

4 his co-workers and supervisors that he was going to leave Mattel for "non-

5 competitive" pursuits. Bryant's representations to his supervisors and his co-

6 workers were false. Bryant knew at the time that those representations were false

7 and made those false statements to conceal from Mattel the fact that he was already

8 working with MGA and that he had contracted with MGA to assign Bratz works to

9 MGA and to provide design and development services to MGA, a Mattel

10 competitor.

11        29.   As a result of the efforts of Bryant and other Mattel employees

12 working on Bratz (which were done without Mattel's knowledge), the Bratz dolls

13 had been designed and were far along in development during the time that Bryant

14 was employed by Mattel and prior to the time that Bryant left Mattel on

15 October 20, 2000. Not only did Bryant create and develop designs for the dolls as

16 well as other aspects of the products such as their fashion accessories during the

17 time he was employed by Mattel, but MGA showed Bratz prototypes and/or

18 product to both focus groups and retailers in November 2000, less than three weeks

19 after Bryant left Mattel. Bryant, Larian and others at MGA arranged these

20 meetings while Bryant was still employed by Mattel.

21        30.   Bryant and MGA employees also repeatedly and continuously

22 communicated with employees of MGA Entertainment (HK) Limited on subjects

23 such as design and manufacturing of Bratz. On information and belief, at all

24 material times, MGA Entertainment (HK) Limited has maintained regular and

25 continuous contacts with persons in the County of Los Angeles; it regularly has

26 shipped products that it manufactures, or that are manufactured for it, to the County

27 of Los Angeles; and such products have been distributed to retailers and sold to

28 consumers in the County of Los Angeles.

2154363.2

EXHIBIT   __7__

PAGE   __36__

-36-

1         31.    Bratz also were shown to retailers at the Hong Kong Toy Fair in
2    January 2001. By early 2001, only a few months after Bryant resigned from
3    Mattel, MGA began having the Bratz fashion doll line and accessories
4    manufactured and then, shortly thereafter, began selling them at retail.

5         32.    Since 2001, MGA has distributed and sold Bratz and Bratz-
6    related products throughout the world. Mattel is informed and believes that MGA
7    also licenses Bratz to third parties. Mattel is also informed and believes that MGA
8    derives annual revenue from its sales and licenses of Bratz in excess of $500
9    million. Mattel is further informed and believes that MGA and Bryant claim
10   current ownership of Bratz, and all copyrights and copyright registrations attendant
11   thereto. MGA continues to market, sell and license Bratz and has expressed an
12   intention to continue to do so.

13        33.    Mattel is informed and believes that MGA and Larian
14   encouraged, aided and financed Bryant to develop Bratz, knowing full well that
15   Bryant was still employed by Mattel at the time and that by performing such work,
16   including design-related work, for his own benefit and/or the benefit of MGA,
17   Bryant would be, and was, in breach of his contractual, statutory and common law
18   duties to Mattel. Mattel is also informed and believes that MGA proceeded to aid
19   and encourage Bryant to develop Bratz with the goal of obtaining a valuable
20   fashion doll line that would be commercially successful in the competitive, multi-
21   billion dollar market for fashion dolls.

22        34.    Pursuant to Bryant's contract with Mattel, among other things,
23   Mattel is the true owner of Bratz designs and works, including those specifically
24   that were conceived, created or reduced to practice during Bryant's Mattel
25   employment as well as all designs and works that are or have been derived
26   therefrom. Counter-defendants' continued use, sale, distribution and licensing of
27   Bratz thus infringes upon Mattel's rights, injures Mattel and unlawfully enriches the
28   Counter-defendants.

EXHIBIT 7

PAGE 37

37

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

1          35.   Bryant and MGA deliberately and intentionally concealed facts
2  sufficient for Mattel to suspect or to know that it was the true owner of Bratz.
3  Their acts of concealment include, but are not limited to, concealing the fact that
4  Bryant conceived, created, designed and developed Bratz while employed by
5  Mattel, including by tampering with and defacing documents which showed that, in
6  fact, Bryant was a Mattel employee while he was working for and with MGA;
7  concealing the fact that Bryant worked with and assisted MGA during the time
8  Bryant was employed by Mattel and was compensated for that assistance;
9  concealing that Bryant was providing consulting services to MGA; concealing
10  Bryant's role in Bratz by falsely claiming that Larian and others were the creators
11  of Bratz; and concealing the fact that Mattel was the true owner of Bratz by, among
12  other things, filing fraudulent registrations and/or amendments to registrations with
13  the United States Copyright Office claiming MGA as the author of Bratz as a work
14  for hire and altering relevant dates on such documents to further obscure the true
15  facts of when the works were created.

16          36.   Because of Bryant's and MGA's acts of concealment and Bryant's
17  misrepresentations to Mattel, Mattel had no reason to suspect that Bryant had
18  worked with MGA, or assisted MGA, while he still employed by Mattel until
19  approximately November 24, 2003, when Mattel received, through an unrelated
20  legal action, a copy of Bryant's agreement with MGA which showed that the date
21  of Bryant's agreement with MGA predated Bryant's departure from Mattel. It was
22  then, as a result, that Mattel learned for the first time that Bryant had secretly aided,
23  assisted and worked for and with MGA while employed at Mattel and in violation
24  of his Mattel Employment Agreement. Specifically, Bryant's agreement with
25  MGA obligated Bryant to provide product design services to MGA on a "top
26  priority" basis. Bryant's agreement with MGA also provided that Bryant would
27  receive royalties and other consideration for sales of products on which Bryant
28  provided aid or assistance; that all works and services furnished by Bryant under

EXHIBIT ____7____         -38-
                                   SECOND AMENDED ANSWER AND COUNTERCLAIMS

PAGE ____38____

1   the agreement, including those he purportedly provided while still a Mattel
2   employee, purportedly would be considered "works for hire" of MGA; and that all
3   intellectual property rights to preexisting works by Bryant, including Bratz designs,
4   purportedly were assigned to MGA.

5   **IV. MGA STEALS MATTEL TRADE SECRETS IN MEXICO**

6          37.    On information and belief, in or about late 2003 or early 2004,
7   MGA decided to open business operations in Mexico. Faced with the difficult task
8   of developing an overall strategy for expanding into a market in which it had only a
9   nominal presence and no operations, MGA elected to steal Mattel's plans, strategy
10  and business information for the Mexican market and materials related to Mattel's
11  worldwide business strategies. As detailed below, MGA and Larian approached
12  three employees of Mattel's Mexican subsidiary ("Mattel Mexico"), enticed them to
13  steal Mattel's most sensitive business planning materials, and then hired them to
14  assist in establishing and running MGA's new Mexican subsidiary.

15         **A.    MGA Hires Three Senior Mattel Employees in Mexico**

16         38.    Carlos Gustavo Machado Gomez ("Machado") was the Senior
17  Marketing Manager, Boys Division, for Mattel Mexico, a position of trust and
18  confidence. He was employed at Mattel Mexico from April 1, 1997 until April 19,
19  2004. His duties included short, medium and long-term marketing planning,
20  generating product sales projections, and assisting in creation of the media plan. In
21  his position, Machado had access to highly confidential and sensitive marketing
22  and product development information. Machado had an employment agreement
23  with Mattel in which he agreed to maintain the confidentiality of Mattel's protected
24  information. Mattel's policies also required Machado to protect Mattel's
25  proprietary information and not to disclose it to competitors.

26         39.    Mariana Trueba Almada ("Trueba") was the Senior Marketing
27  Manager, Girls Division, for Mattel Mexico, a position of trust and confidence.
28  She was employed at Mattel Mexico from November 3, 1997 until April 19, 2004.

2154363.2

EXHIBIT ___7___

PAGE ___39___

-39-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

1   Answer and Counterclaims, Mattel is aware that Larian represented to each retailer

2   that each was the only retailer to purchase the product and that Mattel would not be

3   supporting the product with television advertising.  At the time that Larian made

4   these statements, he knew them to be false.  As a result of Larian's

5   misrepresentations, at least one retailer cancelled its order for 75,000 units of the

6   MY SCENE MY BLING BLING product with real gems.  Only after Mattel

7   learned of Larian's misrepresentations and was able to correct them was Mattel able

8   to assure the retailer that Larian's representations were false and to persuade the

9   retailer to reinstate the order.

10          81.   Such conduct is not an isolated incident.  MGA and Larian, in an

11  effort to gain an unfair competitive advantage, repeatedly issued false and

12  misleading press releases.  In these press releases, MGA and Larian have

13  misrepresented Bratz's sales, Bratz's market share, Bratz's position vis-à-vis

14  Mattel's BARBIE products, sales of Mattel's BARBIE products, and the market

15  share of Mattel's BARBIE products.

16                          **CLAIMS FOR RELIEF**

17                          **First Counterclaim**

18                          **Copyright Infringement**

19            **(Against MGA, MGA Entertainment (HK) Limited,**

20                 **Larian, Bryant and Does 4 through 10)**

21          82.   Mattel repeats and realleges each and every allegation set forth in

22  paragraphs 1 through 81, above, as though fully set forth at length.

23          83.   Mattel is the owner of copyrights in works that are fixed in

24  tangible media of expression and that are the subject of valid, and subsisting,

25  copyright registrations owned by Mattel.  These include, without limitation, the

26  works that are the subject of Registrations VA 1-378-648, VA 1-378-649, VA 1-

27  378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653, VA 1-378-654, VA 1-

28

EXHIBIT ___7___

PAGE ___40___

-53-

2154363.2

1 | 378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-378-659, VA 1-
2 | 378-660, VAu 715-270, VAu 715-271 and VAu 715-273.

3 |      84.    Counter-defendants have reproduced, created derivative works
4 | from and otherwise infringed upon the exclusive rights of Mattel in its protected
5 | works without Mattel's authorization.  Counter-defendants' acts violate Mattel's
6 | exclusive rights under the Copyright Act, including without limitation Mattel's
7 | exclusive rights to reproduce its copyrighted works and to create derivative works
8 | from its copyrighted works, as set forth in 17 U.S.C. §§ 106 and 501.

9 |      85.    Counter-defendants' infringement (and substantial contributions
10 | to the infringement) of Mattel's copyrighted works is and has been knowingly made
11 | without Mattel's consent and for commercial purposes and the direct financial
12 | benefit of Counter-defendants.  Counter-defendants, moreover, have deliberately
13 | failed to exercise their right and ability to supervise the infringing activities of
14 | others within their control to refrain from infringing Mattel's copyrighted works
15 | and have failed to do so in order to deliberately further their significant financial
16 | interest in the infringement of Mattel's copyrighted works.  Accordingly, Counter-
17 | defendants have engaged in direct, contributory and vicarious infringement of
18 | Mattel's copyrighted works.

19 |      86.    By virtue of defendants' infringing acts, Mattel is entitled to
20 | recover Mattel's actual damages plus Counter-defendants' profits, Mattel's costs of
21 | suit and attorneys' fees, and all other relief permitted under the Copyright Act.

22 |      87.    Counter-defendants' actions described above have caused and
23 | will continue to cause irreparable damage to Mattel, for which Mattel has no
24 | remedy at law.  Unless Counter-defendants are restrained by this Court from
25 | continuing their infringement of Mattel's copyrights, these injuries will continue to
26 | occur in the future.  Mattel is accordingly entitled to injunctive relief restraining
27 | Counter-defendants from further infringement.

28 |

2154363.2

EXHIBIT __7__

PAGE __41__

-54-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Thirteenth Counterclaim

### Declaratory Relief

### (Against All Counter-defendants)

167.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 166, above, as though fully set forth at length.

168.  As shown in the foregoing paragraphs above, an actual controversy exists between Mattel and Counter-defendants regarding Counter-defendants' lack of ownership interests in Bratz and Mattel's rights in the same.

169.  Accordingly, Mattel seeks a declaration of the Court that Counter-defendants have no valid or protectable ownership rights or interests in Bratz, and that Mattel is the true owner of the same, and further seeks an accounting and imposition of a constructive trust over Bratz, including without limitation registrations and applications for registrations relating thereto made or filed by Counter-defendants and third parties, and over all revenues and other monies or benefits derived or obtained from MGA's and Bryant's purported ownership, use, sale, distribution and licensing of Bratz.

170.  Mattel seeks a declaration of the Court that any and all agreements between Bryant, on the one hand, and MGA, on the other hand, in which Bryant purports to assign to MGA any right, title or interests in any work that he conceived, created or reduced to practice while a Mattel employee, including but not limited to the Bratz designs, is void and of no effect, including without limitation because Bryant had previously assigned said right, title or interest to Mattel and because Mattel was otherwise the owner of said right, title or interest.

### Prayer for Relief

WHEREFORE, Mattel respectfully requests judgment:

1.  For a declaration that Counter-defendants have no valid or protectable ownership interests or rights in Bratz designs and works conceived,

2154363.2

EXHIBIT ___7___

PAGE ___42___

-75-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1 | created or reduced to practice by Bryant during the term of his Mattel employment
2 | and/or by any others then-employed by Mattel, as well as in all derivatives
3 | prepared therefrom, and that Mattel is the true owner of the foregoing;

4 |     2.    For a declaration that any agreement between Bryant, on the one
5 | hand, and MGA or any person or entity, on the other hand, in which Bryant
6 | purported to assign any right, title or interests in any work that he conceived,
7 | created or reduced to practice while a Mattel employee, including but not limited to
8 | the Bratz designs, is void and of no effect;

9 |     3.    For an Order enjoining and restraining Counter-defendants, their
10 | agents, servants and employees, and all persons in active concert or participation
11 | with them, from further wrongful conduct, including without limitation from
12 | imitating, copying, distributing, importing, displaying, preparing derivatives from
13 | and otherwise infringing Mattel's copyright-protected works;

14 |     4.    For an Order, pursuant to 17 U.S.C. § 503(a) and other
15 | applicable law, impounding all of Counter-defendants' products and materials that
16 | infringe Mattel's copyrights, as well as all plates, molds, matrices and other articles
17 | by which copies of the works embodied in Mattel's copyrights may be reproduced
18 | or otherwise infringed;

19 |     5.    For an Order mandating that Counter-defendants return to Mattel
20 | all tangible items, documents, designs, diagrams, sketches or any other
21 | memorialization of inventions created or reduced to practice during Bryant's
22 | employment with Mattel as well as all Mattel property converted by Counter-
23 | defendants;

24 |     6.    For an Order mandating specific performance by Bryant to
25 | comply with and satisfy Bryant's contractual obligations to Mattel;

26 |     7.    That Mattel be awarded, and Counter-defendants be ordered to
27 | disgorge, all payments, revenues, profits, monies and royalties and any other
28 | benefits derived or obtained as a result of the conduct alleged herein, including

EXHIBIT 7
-76-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

PAGE 43

without limitation of all revenues and profits attributable to Counter-defendants' infringement of Mattel's copyrights under 17 U.S.C. § 504;

8.    For an accounting of all profits, monies and/or royalties from the exercise of ownership, use, distribution, sales and licensing of Bratz;

9.    For the imposition of a constructive trust over Bratz, including without limitation registrations and applications for registrations relating thereto made or filed by Counter-defendants and third parties, and all profits, monies, royalties and any other benefits derived or obtained from Counter-defendant's exercise of ownership, use, sale, distribution and licensing of Bratz;

10.   That Mattel recover its actual damages and lost profits;

11.   That Counter-defendants be ordered to pay exemplary damages in a sum sufficient to punish and to make an example of them, and deter them and others from similar wrongdoing;

12.   That Counter-defendants be ordered to pay treble its general and special damages, plus interest, costs and attorney's fees incurred by reason of Counter-defendants' violations of 18 U.S.C. §§ 1962(c)-(d).

13.   That Counter-defendants be ordered to pay double damages due to their willful and malicious misappropriation of Mattel's trade secrets with deliberate intent to injure Mattel's business and improve its own;

14.   That Counter-defendants pay to Mattel the full cost of this action and Mattel's attorneys' and investigators' fees; and

EXHIBIT _____7_____

PAGE _____44_____

-77-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1        15.   That Mattel have such other and further relief as the Court may

2    deem just and proper.

3

4    DATED:  July 12, 2007                 QUINN EMANUEL URQUHART OLIVER &
                                           HEDGES, LLP
5

6                                          By _____

7                                             John B. Quinn
                                              Attorneys for Defendant and Counter-
8                                             claimant Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2154363.2

EXHIBIT ___7___                    -78-
                                          SECOND AMENDED ANSWER AND COUNTERCLAIMS
PAGE ___45___

# EXHIBIT 8

1    DALE M. CENDALI (admitted pro hac vice)
     DIANA M. TORRES (S.B. #162284)
2    MARC F. FEINSTEIN (S.B. #158901)
     O'MELVENY & MYERS LLP
3    400 South Hope Street
     Los Angeles, California 90071-2899
4    Telephone: (213) 430-6000
     Facsimile: (213) 430-6407
5    Email: dtorres@omm.com

6    PATRICIA GLASER (S.B. # 55668)
     CHRISTENSEN, GLASER, FINK,
7    JACOBS, WEIL & SHAPIRO LLP
     10250 Constellation Boulevard, 19th Floor
8    Los Angeles, California 90067
     Telephone:  (310) 553-3000
9    Facsimile:  (310) 556-2920
     Email: pglaser@chrisglase.com
10
     Attorneys for Counter-defendants MGA
11   Entertainment, Inc., Isaac Larian, MGA
     Entertainment (HK) Limited, and MGAE de
12   Mexico S.R.L. de C.V.

13

14

15                  UNITED STATES DISTRICT COURT

16                 CENTRAL DISTRICT OF CALIFORNIA

17                        EASTERN DIVISION

18   CARTER BRYANT, an individual,          Case No. CV 05-2727 SGL (RNBx)
                                            (Consolidated with CV 04-09049 and
19                  Plaintiff,              CV 04-9059)

20        v.                                **AMENDED ANSWER AND**
                                            **AFFIRMATIVE DEFENSES OF**
21   MATTEL, INC., a Delaware Corporation,  **MGA ENTERTAINMENT INC.,**
                                            **MGA ENTERTAINMENT (HK)**
22                  Defendant               **LIMITED, AND MGAE DE**
                                            **MEXICO S.R.L. DE C.V. TO**
23                                          **MATTEL, INC.'S SECOND**
                                            **AMENDED ANSWER AND**
24                                          **COUNTERCLAIMS**

25   CONSOLIDATED WITH              Judge:      Hon. Stephen G. Larson
26                                  Courtroom:  1
     MATTEL, INC. v. BRYANT and
27   MGA ENTERTAINMENT, INC. v.
     MATTEL, INC.
28

                    EXHIBIT __8__
                    PAGE __46__

1  launching the Bratz fashion doll line, and deny the remaining allegations set forth in
2  paragraph 19.

3      20.  MGA Defendants deny the allegations set forth in paragraph 20.

4      21.  MGA Defendants admit that Carter Bryant is a former employee
5  of Mattel, and state that they are without sufficient knowledge to admit or deny the
6  remaining allegations set forth in paragraph 21, and on that basis, deny the
7  remaining allegations set forth in paragraph 21.

8      22.  MGA Defendants are without sufficient knowledge to admit or
9  deny the allegations set forth in paragraph 22, and on that basis, deny the
10  allegations set forth in paragraph 22.

11      23.  MGA Defendants are without sufficient knowledge to admit or
12  deny the allegations set forth in paragraph 23, and on that basis, deny the
13  allegations set forth in paragraph 23.

14      24.  MGA Defendants are without sufficient knowledge to admit or
15  deny the allegations set forth in paragraph 24, and on that basis, deny the
16  allegations set forth in paragraph 24.

17      25.  MGA Defendants are without sufficient knowledge to admit or
18  deny the allegations set forth in paragraph 25, and on that basis, deny the
19  allegations set forth in paragraph 25.

20      26.  MGA Defendants deny the allegations set forth in paragraph 26.
21      27.  MGA Defendants deny the allegations set forth in paragraph 27.
22      28.  MGA Defendants deny the allegations set forth in paragraph 28.
23      29.  MGA Defendants deny the allegations set forth in paragraph 29.
24      30.  MGA Defendants admit that after MGA made the decision to
25  proceed with the manufacture of the Bratz dolls, MGA employees communicated
26  with employees of MGA Entertainment (HK) Limited on subjects including the
27  manufacturing of Bratz, and deny the remaining allegations set forth in the first
28

LA2:841935.2

- 4 -

EXHIBIT 8

PAGE 47

1    sentence of paragraph 30. MGA Defendants admit the second sentence of

2    paragraph 30.

3          31.    MGA Defendants admit that samples of the four original Bratz

4    dolls were shown at the Hong Kong Toy Fair in January 2001, and deny the

5    remaining allegations set forth in paragraph 31.

6          32.    MGA Defendants admit that MGA and its subsidiaries have

7    distributed and sold Bratz and Bratz-related products in many countries throughout

8    the world, that MGA and its subsidiaries have licensed Bratz to third parties, that

9    MGA has derived annual revenues from its sales and licenses of Bratz in excess of

10    $500 million, that MGA and its subsidiaries continue to market, sell and license

11    Bratz and intend to continue to do so, and deny the remaining allegations set forth

12    in paragraph 32.

13          33.    MGA Defendants deny the allegations set forth in paragraph 33.

14          34.    MGA Defendants deny the allegations set forth in paragraph 34.

15          35.    MGA Defendants deny the allegations set forth in paragraph 35.

16          36.    MGA Defendants admit that Bryant had an agreement with

17    MGA, state that the terms of the agreement speak for themselves, and deny the

18    remaining allegations set forth in paragraph 36.

19          37.    MGA Defendants admit that in or about late 2003 or early 2004,

20    MGA decided to form a new corporation, MGAE de Mexico, S.R.L. de C.V., to

21    conduct business in Mexico, admit that MGAE de Mexico hired three employees of

22    Mattel's Mexican subsidiary, and deny the remaining allegations set forth in

23    paragraph 37.

24          38.    MGA Defendants admit that Carlos Gustavo Machado Gomez

25    was a Marketing Manager, Boys Division, for Mattel Mexico, admit that Machado

26    was employed at Mattel Mexico from April 1997 until April 19, 2004, admit that

27    Machado had access to some nonpublic business information of Mattel Mexico, and

28    state that they are without sufficient knowledge to admit or deny the remaining

LA2:841935.2

- 5 -

EXHIBIT _____ 8 _____

PAGE _____ 48 _____

1          77.    MGA Defendants admit that MGA has hired at least 25

2   employees directly from Mattel's United States operations in the past few years,

3   and deny the remaining allegations set forth in paragraph 77.

4          78.    MGA Defendants deny the allegations set forth in the first

5   sentence of paragraph 78. MGA Defendants admit that Larian has sent email

6   messages to a "Bratz News" distribution list, admit that the recipients of e-mail

7   messages sent to the "Bratz News" distribution list includes members of the media

8   as well as representatives of customers of both MGA and Mattel, and deny the

9   remaining allegations set forth in paragraph 78.

10         79.    MGA Defendants admit that on May 12, 2006, Larian sent an

11   email message to the "Bratz News" distribution list that included a reference to the

12   new My Scene product with real gems, and state that they are without sufficient

13   knowledge to admit or deny the remaining allegations set forth in paragraph 79, and

14   on that basis, deny the remaining allegations set forth in paragraph 79.

15         80.    MGA Defendants admit that Larian told one retailer that such

16   retailer was the only retailer with plans to purchase MY SCENE BLING BLING

17   with real gems, at a time when Larian had a good faith belief that such retailer was

18   the only retailer with plans to purchase MY SCENE BLING BLING with real

19   gems, and deny the remaining allegations set forth in paragraph 80.

20         81.    MGA Defendants deny the allegation set forth in paragraph 81.

21         82.    MGA Defendants repeat their responses contained in paragraphs

22   1 through 81 of this Answer and incorporate them by reference as though fully and

23   completely set forth herein.

24         83.    MGA Defendants deny the allegations set forth in paragraph 83.

25         84.    MGA Defendants deny the allegations set forth in paragraph 84.

26         85.    MGA Defendants deny the allegations set forth in paragraph 85.

27         86.    MGA Defendants deny the allegations set forth in paragraph 86.

28         87.    MGA Defendants deny the allegations set forth in paragraph 87.

LA2:841935.2

- 12 -

EXHIBIT ___8___

PAGE ___49___

1 | affirmative defenses.

2 | **TWENTY-SECOND AFFIRMATIVE DEFENSE**

3 | (Undiscovered Defenses)

4 | MGA Defendants have insufficient knowledge or information upon which to

5 | form a belief as to whether additional defenses are available. MGA Defendants

6 | reserve the right to assert any further or additional defenses upon receiving more

7 | complete information regarding the matters alleged in the Counterclaims, through

8 | discovery or otherwise.

9 |

10 | WHEREFORE, MGA Entertainment, Inc., MGA Entertainment (HK)

11 | Limited, and MGAE de Mexico S.R.L. de C.V., pray for relief as follows:

12 |     a.    that the Counterclaims be dismissed with prejudice;

13 |     b.    that judgment be entered in favor of counter-defendants and against

14 | counterclaimant;

15 |     c.    that counter-defendants recover their costs and attorneys' fees; and

16 |     d.    that the Court award such other and further relief as is just and proper.

17 |

18 | Dated: September 19, 2007        O'MELVENY & MYERS LLP

19 |

20 |

21 |                                   Marc F. Feinstein
                                 Attorneys for Counter-defendants

22 |                                  MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V.

23 |

24 |

25 |

26 |

27 |

28 |

LA2:841935.2

EXHIBIT ___8___

PAGE ___50___

- 26 -

# EXHIBIT 9

CALENDARED

RECEIVED

OCT 1 7 2007

1  KEKER & VAN NEST, LLP
   JOHN W. KEKER - #49092
2  jkeker@kvn.com
   MICHAEL H. PAGE - #154913
3  mpage@kvn.com
   CHRISTA M. ANDERSON - #184325
4  canderson@kvn.com
   710 Sansome Street
5  San Francisco, CA 94111-1704
   Telephone: (415) 391-5400
6  Facsimile: (415) 397-7188

7  Attorneys for Plaintiff
   CARTER BRYANT
8

9
                    UNITED STATES DISTRICT COURT
10
                  CENTRAL DISTRICT OF CALIFORNIA
11
                          EASTERN DIVISION
12

13
   CARTER BRYANT, an individual,          Case No. CV 04-09049 SGL (RNBx)
14                                         (consolidated with CV 04-9059 & 05-
                          Plaintiff,       2727
15
             v.                            **CARTER BRYANT'S SECOND
16                                         AMENDED REPLY TO MATTEL'S
   MATTEL, INC. a Delaware                 COUNTERCLAIMS**
17 Corporation,

18                        Defendant.       **DEMAND FOR JURY TRIAL**

19                                         Dept:    Courtroom 1
   CONSOLIDATED WITH MATTEL,               Judge:   Hon. Stephen G. Larson
20 INC., v. BRYANT and MGA
   ENTERTAINMENT, INC. v.
21 MATTEL, INC.
                                           Discovery Cut-Off: Jan. 14, 2008
22                                         Pre-Trial Conference: April 7, 2008
                                           Trial Date: April 29, 2008
23

24      Counter-defendant Carter Bryant ("Bryant") replies to Mattel's counter-

25 claims, set forth in Mattel's Second Amended Answer and Counterclaims, as

26 follows:

27      As a preliminary matter, Bryant notes that many of Mattel's allegations

28 implicitly include false premises or assumptions. Bryant's denial of any allegation

                              10-16                    1

1    13.    Bryant admits that Isaac Larian is the President and CEO of MGA and

2  an individual residing in the County of Los Angeles. Bryant denies the remaining

3  allegations of this paragraph.

4    14.    Bryant lacks knowledge or information sufficient to form a belief as

5  to the truth of the allegations of this paragraph, and on that basis denies them.

6    15.    Bryant denies the allegations of this paragraph.

7    16.    Bryant admits that Mattel manufactures and markets toys, games,

8  dolls and other consumer products. Bryant lacks knowledge or information

9  sufficient to form a belief as to the truth of the allegations of the second, third, and

10  fourth sentences of this paragraph, and on that basis denies them. Bryant admits

11  that Mattel is a well-known company, and denies all remaining allegations of this

12  paragraph.

13    17.    Bryant admits that Mattel maintains a large design center in El

14  Segundo, California at which many designers, sculptors, painters and other artists

15  work to create Mattel products. Bryant lacks knowledge or information sufficient

16  to form a belief as to the truth of all remaining allegations of this paragraph, and on

17  that basis denies them.

18    18.    Bryant lacks knowledge or information sufficient to form a belief as

19  to the truth of the allegations of this paragraph, and on that basis denies them.

20    19.    Bryant admits that MGA is a toy manufacturer that launched a fashion

21  doll line. Bryant lacks knowledge or information sufficient to form a belief as to

22  the truth of the allegations of the second sentence of this paragraph, and on that

23  basis denies them. Bryant denies that MGA stole a fashion doll that was owned by

24  Mattel, and denies all remaining allegations of this paragraph.

25    20.    Bryant denies all allegations of this paragraph.

26    21.    Bryant admits that he is a former Mattel employee, that he began

27  working for Mattel in September 1995 and worked in Mattel's Design Center as a

28  Barbie product designer, and that he stopped working with Mattel in or about April

1    1998.  Bryant denies that he moved to Missouri to live with his parents in or about

2    April 1998.  Bryant admits that late in 1998, he applied to Mattel to be rehired, and

3    that on or about January 4, 1999, he began working at Mattel in Mattel's Design

4    Center as a product designer.  Bryant denies any remaining allegations of this

5    paragraph.

6          22.     Bryant admits that, upon his return to Mattel in January 1999, he

7    signed the document attached to Mattel's Counterclaims as Exhibit A, which is

8    titled "Employee Confidential Information and Inventions Agreement."  Bryant

9    denies all remaining allegations of this paragraph, explicit or implicit, including

10   Mattel's allegations regarding the legal significance of this document.

11         23.     Bryant denies the allegations of this paragraph.

12         24.     Bryant admits that, upon his return to Mattel in January 1999, he

13   signed the document attached to Mattel's Counterclaims as Exhibit B, which is

14   titled "Conflict of Interest Questionnaire."  Bryant admits that he disclosed on this

15   document freelance work he had performed while in Missouri for Ashton-Drake,

16   which is unrelated to Mattel's allegations here.  Bryant denies all remaining

17   allegations of this paragraph, explicit or implicit, including Mattel's allegations

18   regarding the legal significance of this document.

19         25.     Bryant denies the allegations of this paragraph.

20         26.     Bryant denies the allegations of this paragraph, including all the

21   allegations of each of its sub-paragraphs.

22         27.     Bryant denies the allegations of this paragraph.

23         28.     Bryant denies the allegations of this paragraph.

24         29.     Bryant denies the allegations of this paragraph.

25         30.     Bryant lacks knowledge or information sufficient to form a belief as

26   to the truth of the allegations of this paragraph, and on that basis denies them.

27         31.     Bryant admits that samples of the four original Bratz dolls were

28   shown at the Hong Kong Toy Fair in January 2001.  Bryant denies the remaining

1 | allegations of this paragraph.

2 |   32. Bryant admits that MGA distributes and sells Bratz and Bratz-related

3 | products in many countries throughout the world. Bryant lacks knowledge or

4 | information sufficient to form a belief as to the truth of the allegations of the

5 | second sentence of this paragraph, and on that basis denies them. Bryant admits

6 | the allegations of the third sentence of this paragraph. Bryant admits that MGA

7 | claims current ownership of Bratz, including the copyrights and copyright

8 | registrations attendant thereto. Bryant admits the allegations of the fifth sentence

9 | of this paragraph. Bryant denies all remaining allegations of this paragraph

10 |   33. Bryant denies the allegations of this paragraph.

11 |   34. Bryant denies the allegations of this paragraph.

12 |   35. Bryant denies the allegations of this paragraph.

13 |   36. Bryant admits that he had an agreement with MGA and the terms of

14 | that agreement speak for themselves. Bryant denies all remaining allegations of

15 | this paragraph.

16 |   37. Bryant lacks knowledge or information sufficient to form a belief as

17 | to the truth of the allegations of this paragraph, and on that basis denies them.

18 |   38. Bryant lacks knowledge or information sufficient to form a belief as

19 | to the truth of the allegations of this paragraph, and on that basis denies them.

20 |   39. Bryant lacks knowledge or information sufficient to form a belief as

21 | to the truth of the allegations of this paragraph, and on that basis denies them.

22 |   40. Bryant lacks knowledge or information sufficient to form a belief as

23 | to the truth of the allegations of this paragraph, and on that basis denies them.

24 |   41. Bryant lacks knowledge or information sufficient to form a belief as

25 | to the truth of the allegations of this paragraph, and on that basis denies them.

26 |   42. Bryant lacks knowledge or information sufficient to form a belief as

27 | to the truth of the allegations of this paragraph, and on that basis denies them.

28 |   43. Bryant lacks knowledge or information sufficient to form a belief as

EXHIBIT  9

CARTER BRYANT'S SECOND AMENDED REPLY TO MATTEL'S COUNTERCLAIMS
CASE NO. CV 04-09049 SGL (RNBx)

PAGE  54

1 | to the truth of the allegations of this paragraph, and on that basis denies them.

2 |     72.    Bryant lacks knowledge or information sufficient to form a belief as

3 | to the truth of the allegations of this paragraph, and on that basis denies them.

4 |     73.    Bryant lacks knowledge or information sufficient to form a belief as

5 | to the truth of the allegations of this paragraph, and on that basis denies them.

6 |     74.    Bryant lacks knowledge or information sufficient to form a belief as

7 | to the truth of the allegations of this paragraph, and on that basis denies them.

8 |     75.    Bryant lacks knowledge or information sufficient to form a belief as

9 | to the truth of the allegations of this paragraph, and on that basis denies them.

10 |     76.    Bryant lacks knowledge or information sufficient to form a belief as

11 | to the truth of the allegations of this paragraph, and on that basis denies them.

12 |     77.    Bryant lacks knowledge or information sufficient to form a belief as

13 | to the truth of the allegations of this paragraph, and on that basis denies them.

14 |     78.    Bryant lacks knowledge or information sufficient to form a belief as

15 | to the truth of the allegations of this paragraph, and on that basis denies them.

16 |     79.    Bryant lacks knowledge or information sufficient to form a belief as

17 | to the truth of the allegations of this paragraph, and on that basis denies them.

18 |     80.    Bryant lacks knowledge or information sufficient to form a belief as

19 | to the truth of the allegations of this paragraph, and on that basis denies them.

20 |     81.    Bryant lacks knowledge or information sufficient to form a belief as

21 | to the truth of the allegations of this paragraph, and on that basis denies them.

22 | **Mattel's First Counterclaim**

23 |     82.    Bryant repeats and realleges his answers to paragraphs 1 through 81

24 | above, as though fully set forth here at length.  Bryant denies any allegations not

25 | expressly admitted.

26 |     83.    Bryant denies the allegations of this paragraph.

27 |     84.    Bryant denies the allegations of this paragraph.

28 |     85.    Bryant denies the allegations of this paragraph.

9

EXHIBIT 9

1    (including MGA) in this litigation to the extent that defendants may share in such
2    affirmative defenses.

3

4    Bryant has not knowingly and intentionally waived any applicable
5    affirmative defense and reserves the right to raise additional affirmative defenses
6    as they become known to him through discovery in this litigation.  In stating the
7    above affirmative defenses, Bryant also does not in any way waive or limit any
8    defenses raised by its denials of Mattel's allegations above.  Bryant further
9    reserves the right to amend his answer and/or affirmative defenses accordingly
10   and/or to delete affirmative defenses that he determines during later discovery are
11   not applicable.

12                              **Prayer for Relief**

13        WHEREFORE, Bryant respectfully requests relief as follows:

14        1.    That Mattel's counterclaims be dismissed with prejudice;

15        2.    That Mattel take nothing by its counterclaims;

16        3.    That Mattel's request for injunctive and other equitable relief be
17   denied;

18        4.    That Bryant be awarded the cost of this litigation, including
19   reasonable attorneys' fees and interest; and

20        5.    That Bryant receive such other relief as the Court may deem proper.

21

22                                   Respectfully submitted,

23   Dated:  October 16, 2007          KEKER & VAN NEST, LLP

24

25

26                              By:  _____
                                   CHRISTA M. ANDERSON
27                                 Attorneys for Plaintiff
                                   CARTER BRYANT
28

                                   EXHIBIT _____ 9

                                      19