QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
  Jon D. Corey (Bar No. 185066)
  joncorey@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>CV 04-09059<br>CV 05-2727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **MATTEL, INC.'S NOTICE OF MOTION AND MOTION FOR:** |
| Defendant. | **(1) CONSTRUCTIVE TRUST;** |
| AND CONSOLIDATED ACTIONS | **(2) FINDING OF LIABILITY AND INJUNCTIVE RELIEF UNDER CAL. BUS. & PROF. CODE § 17200; AND** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | [Declaration of Scott B. Kidman and Proposed Order filed concurrently] |
| | Date:    November 10, 2008<br>Time:    1:00 p.m.<br>Place:   Courtroom 1 |
| | **Phase 1:**<br>Trial Date:  May 27, 2008 |

07209/2643823.7

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 1:00 p.m. on November 10, 2008, or as soon thereafter as counsel may be heard in Courtroom 1 of the above-captioned Court located at 3470 Twelfth Street, Riverside, California, before the Honorable Stephen G. Larson, Mattel, Inc. ("Mattel") will, and hereby does, move the Court for:

(1) the imposition of a constructive trust in favor of Mattel on all rights to trademarks, service marks and domain names held by MGA Entertainment, Inc. ("MGA") or Isaac Larian, or any person or entity acting on their behalf or for their benefit, anywhere in the world that include the terms "Bratz" or "Jade," including all such trademark registrations and trademark applications (including, without limitation, United States Trademark Registrations identified by Registration Nos. 3206114, 3327385, 3150045, 3087710, 3055465, 3072141, 3127890, 3024713, 2989052, 2911097, 3080450, 2921772, 3071614, 2803235, 2848386, 2795675, 2776558, 2848281, 2751890, 2671473, 2787942, 2789216 and 2836780 and United States Trademark Applications identified by Serial Nos. 78530196, 78571028, 78706504, 78706502, 78819868, 78857100, 78490324, 77443372 and 77575881), and the good will inhering therein, as well as all such domain name registrations, and an order effecting the transfer thereof;

(2)  an order requiring MGA and Isaac Larian to promptly (a) identify all trademark registrations and applications held by them, or any person or entity acting on their behalf or for their benefit, anywhere in the world that include the terms "Bratz" or "Jade," (b) identify all marks that include the terms "Bratz" or "Jade" in which they, or any person or entity acting on their behalf or for their benefit, claim to own trademark rights, whether or not such marks are subject to existing trademark registrations or pending trademark applications, (c) identify all domain names and domain name registrations held by them, or any person or entity acting on their behalf or for their benefit, anywhere in the world that include the terms "Bratz" or "Jade," and (d) execute any and all documents necessary to effect the

transfer and/or assignment of such marks and domain names and associated applications and registrations to Mattel;

(3) a finding that MGA, MGA Entertainment (HK) Ltd., Isaac Larian and Carter Bryant[1] violated <u>California Business and Professions</u> Code § 17200 and are liable to Mattel on its twelfth claim for relief; and

(4) an injunction permanently enjoining MGA, MGA Entertainment (HK) Ltd., Isaac Larian and Carter Bryant, their officers, directors, principals, agents, representatives, servants, employees, successors or assigns, and any person or entity acting on their behalf or in concert or participation with them, from (a) using the terms "Bratz" or "Jade," either alone or in combination and whether as a trademark or otherwise, in connection with the manufacture, promotion, advertising, distribution, offering for sale or sale of any goods or services anywhere in the world and (b) taking any action to preclude Mattel from using the terms "Bratz" or "Jade" in any such manner, including without limitation as a mark in connection with goods and services.

This Motion is brought pursuant to the Court's prior rulings and the jury verdicts rendered in Phase 1(a) and Phase 1(b) of this action, 17 U.S.C. §§ 502(a) and 503(a), 28 U.S.C. § 2201, Fed. R. Civ. Proc. 57 and 64(b), <u>Cal. Bus. & Prof. Code</u> § 17200 and general principles of equity.

This Motion is based on this Notice of Motion and Motion, the Declaration of Scott B. Kidman filed concurrently herewith, the trial record and all other records and files of this Court, all matters of which the Court may take judicial notice, and any other evidence and argument as may be presented at the hearing on the Motion.

---

[1]  By Order dated May 23, 2008, Bryant is bound by all declarations, injunctions and other rulings of this Court.

1

## <u>Statement of Rule 7-3 Compliance</u>

2          Counsel for Mattel and defendants met and conferred regarding the issues

3    presented by this Motion on September 17, 2008.

4

5    DATED:  September 29, 2008          QUINN EMANUEL URQUHART OLIVER &
                                         HEDGES, LLP
6

7

8                                        By /s/ Michael T. Zeller
                                         _____
9                                          Michael T Zeller
                                           Attorneys for Mattel, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-
MATTEL, INC.'S MOTION FOR CONSTRUCTIVE TRUST AND INJUNCTIVE RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF FACTS ................................................................... 2

ARGUMENT ............................................................................. 5

I.     MATTEL IS ENTITLED TO A CONSTRUCTIVE TRUST OVER
       THE BRATZ AND JADE TRADEMARKS ............................................... 5

       A.     Constructive Trusts Extend To All Benefits Obtained From The
              Wrongful Acquisition And Use Of Property That Belongs To
              Another .................................................................. 5

       B.     The Elements For The Imposition Of A Constructive Trust Are
              Satisfied Here ........................................................... 6

       C.     Absent A Constructive Trust Over The Bratz And Jade
              Trademarks, MGA Will Retain The Benefit From Its Wrongful
              Conduct .................................................................. 8

       D.     MGA's Subsequent Acquisition Of A Single, Narrow Trademark
              Registration From A Third Party Does Not Defeat Mattel's Right
              To A Constructive Trust ................................................. 10

II.    MGA ENGAGED IN UNLAWFUL BUSINESS PRACTICES AND
       THE COURT SHOULD ENJOIN MGA'S USE OF THE "BRATZ"
       AND "JADE" NAMES .............................................................. 12

       A.     MGA Has Violated The Unfair Competition Law ............................. 12

       B.     The Court Should Enjoin MGA From Using The Names "Bratz"
              Or "Jade" ............................................................... 14

CONCLUSION ........................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

Allied North Am. Ins. Brokerage Corp. of Cal. v. Woodruff-Sawyer,
  2005 WL. 2354119 (N.D. Cal. Sept. 26, 2005).................................................. 13

Bancroft-Whitney Co. v. Glen,
  64 Cal. 2d  327, 332 (1966) ............................................................................ 13

Bank of the West v Superior Court,
  2 Cal. 4th 1254 (1992) ................................................................................... 15

Barquis v. Merchants Collection Ass'n,
  7 Cal. 3d 94 (1972) ........................................................................................ 12

Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v.
  MDL Info. Sys., Inc.,
  2006 WL. 3218719 (N.D. Cal. Nov. 7, 2006) ................................................. 12

Benson v. Kwikset Corp.,
  152 Cal. App. 4th 1254 (2007) ....................................................................... 14

Blue Cross & Blue Shield Ass'n v. Group Hosp. & Med. Servs.,
  744 F. Supp. 700 (E.D. Va. 1990) .................................................................... 7

Brockey v. Moore,
  107 Cal. App. 4th 86 (2003) ........................................................................... 13

Burlesci v. Petersen,
  68 Cal. App. 4th 1062 (1998) ........................................................................... 5

CRST Van Expedited, Inc. v. Werner Enterprises, Inc.,
  479 F.3d 1107 (9th Cir. 2007) ........................................................................ 13

Calistoga Civic Club v. City of Calistoga,
  143 Cal. App. 3d 111 (1983) ............................................................................ 6

Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,
  20 Cal. 4th 163 (1999) .............................................................................. 12, 14

Columbia Nastri & Carta Carbone S/p/A v. Columbia
  Ribbon & Carbon Mfg. Co.,
  367 F.2d 308 (2d Cir. 1966) ............................................................................. 7

Corporate Express Office Prods, Inc. v. Martinez,
  2002 WL. 31961458 (C.D. Cal. Mar. 8, 2002) ............................................... 15

Cortez v. Purolator Air Filtration Prods. Co.,
  23 Cal. 4th 163 (2000) ................................................................................... 14

07209/2643823.7

County of San Bernardino v. Walsh
    158 Cal. App. 4th 533 (2007) ............................................................. 6, 9

Courtesy Temp. Serv., Inc. v. Camacho,
    222 Cal. App. 3d 1278 (1990) .............................................................. 15

GAB Bus. Servs. Inc. v. Lindsey & Newsom Claim Servs., Inc.,
    83 Cal. App. 4th 409 (2000) ................................................................. 13

GHK Assocs. v. Mayer Group, Inc.,
    224 Cal. App. 3d 856 (1990) .................................................................. 5

Gladstone v. Hillel,
    203 Cal. App. 3d 977 (1988) ............................................................. 9, 16

Haskel Engineering & Supply Co. v. Hartford Acc. & Indem. Co.,
    78 Cal. App. 3d 371 (1978) ................................................................. 6, 9

Heckmann v. Ahmanson,
    168 Cal. App. 3d 119 (1985) ........................................................... 5, 6, 9

Iconix, Inc. v. Tokuda,
    457 F. Supp. 2d 969 (N.D. Cal. 2006) .............................................. 13, 15

Juarez v. Arcadia Fin. Ltd.,
    152 Cal. App. 4th 889 (2007) ............................................................... 15

Klamath-Orleans Lumber, Inc. v. Miller,
    87 Cal. App. 3d 458 (1978) ................................................................. 15

Lurzer GMBH v. Am. Showcase, Inc.,
    75 F. Supp. 2d 98 (S.D.N.Y. 1998) ........................................................ 7

Martin v. Kehl,
    145 Cal. App. 3d 228 (1983) .................................................................. 6

Mazzera v. Wolf,
    30 Cal. 2d 531 (1947) ........................................................................... 6

Online Partners.com, Inc. v. Atlanticnet Media Corp.,
    2000 WL 101242 (N.D. Cal. Jan. 20, 2000) ............................................ 7

Readylink Healthcare v. Cotton,
    126 Cal. App. 4th 1006 (2005) ............................................................. 15

Warren v. Merrill,
    143 Cal. App. 4th 96 (2006) .................................................................. 5

Weiss v. Marcus,
    51 Cal. App. 3d 590 (1975) ................................................................. 5, 6

-iii-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................ 2, 12, 14, 15

Cal. Bus. & Prof. Code § 17203 ................................................................ 14

Cal. Civ. Code § 3336 ............................................................................... 13

**Other Authorities**

California Civil Jury Instructions (BAJI) § 12.99 (Fall ed. 2008) ............................ 14

California Unfair Competition & Business Torts § 2.09 [1] (8th ed. 2008) ...…..... 13

Dan B. Dobbs, Law of Remedies § 4.3(2) (2d ed. 1993)..............…………………..5, 7

Anne Gilson LaLonde & Jerome Gilson,
  Gilson on Trademarks § 10.02 (2008) ...…...……………………………..……..8

Restatement of Restitution § 201 ............................................................... 6

Restatement of Restitution § 201(2) .......................................................... 9, 15

-iv-

MATTEL, INC.'S MOTION FOR CONSTRUCTIVE TRUST AND INJUNCTIVE RELIEF

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

This Court should impose a constructive trust for Mattel's benefit on the Bratz and Jade marks, order that the rights in the marks be transferred to Mattel and enjoin MGA from further use of the Bratz and Jade names and marks.

As the jury found, Bryant was a Mattel employee when he conceived of the "Bratz" name for the doll designs, concepts and characters that he also created while a Mattel employee. The jury further found that Bryant conceived the original Bratz character "Jade"—which is also an individual doll name disclosed to and used by MGA—and three other characters while he was a Mattel employee. Bryant not only had assigned the rights to the "Bratz" and "Jade" names (and other Bratz-related property) to Mattel under his Inventions Agreement, but those names constituted part of Mattel's proprietary, confidential information that this Court has ruled Bryant had a fiduciary duty to protect. In violation of his duties to Mattel, Bryant disclosed and purported to transfer the names and other Bratz-related properties to MGA. As the jury found, MGA and Isaac Larian knowingly aided and abetted Bryant in his breach of duties to Mattel.

Mattel is entitled to the return of the benefits MGA received from its tortious conduct, including any and all trademark rights in the "Bratz" and "Jade" names. The law has long recognized that where, as here, a party obtains information through the commission of a tort, that party holds in constructive trust for the rightful owner all benefits obtained from the use of that information. Indeed, "[w]here a fiduciary in violation of his duty to the beneficiary communicates confidential information to a third person, the third person, if he had notice of the violation of duty, holds upon a constructive trust for the beneficiary any profit which he makes *through the use of such information*." RESTATEMENT OF RESTITUTION § 201 (emphasis added). Trademark rights are no exception. In fact, anything short

-1-

of a constructive trust over the Bratz and Jade marks will not restore Mattel to its original position because MGA will undoubtedly assert that it is able to prevent Mattel—the rightful owner of the "Bratz" and "Jade" names—from using those names in any meaningful way.

Furthermore, the jury's verdict entitles Mattel to a finding of liability on its claim for violation of § 17200 of the <u>California Business and Professions Code</u>. California's Unfair Competition Law expressly authorizes the Court to enjoin MGA's continued exploitation of the confidential information it took from Mattel. Pursuant to that authority, the Court should enjoin MGA from any continued use of the "Bratz" and "Jade" names.  Absent such relief, Mattel will not be made whole, and MGA will continue to enjoy—unjustly and at Mattel's expense—the rewards of its wrongful conduct.

## **Statement of Facts**

**Mattel's ownership and MGA's wrongful acquisition of the "Bratz" and "Jade" names**.   In Phase 1(a), the jury unanimously found that Carter Bryant created Bratz-related ideas, concepts, drawings, designs and other works while he was employed by Mattel.[2]  These included Bratz design drawings, sculpt drawings, three-dimensional models as well as the "Bratz" name itself.[3]  They also included the original four Bratz characters—including one named "Jade"—which the jury found Bryant conceived while employed by Mattel.[4]  Bryant described these characters in his original pitch to MGA and disclosed them to MGA in contravention of his duties to Mattel.[5]  As the Court has already ruled, as a matter of

---

[2]   Phase 1A Verdict, Question Nos. 1-6, Declaration of Scott B. Kidman dated September 29, 2008 ("Kidman Dec."), Exh. A.

[3]   <u>Id.</u>

[4]   <u>Id.</u> at Question No. 5.

[5]   Trial Exh. 302 (Bryant's Pitch Book), Kidman Dec., Exh. B.  Each of the four Bratz characters Bryant pitched to MGA was made into a corresponding doll.  The (footnote continued)

law, Mattel is the rightful owner of each and every one of these inventions, including the "Bratz" and "Jade" names and characters, under the Employee Confidential Information and Inventions Agreement (the "Inventions Agreement") between Bryant and Mattel.[6]

Bryant owed Mattel a fiduciary duty under the Inventions Agreement not to disclose the "Bratz" and "Jade" names or other proprietary information.[7]  Bryant also owed Mattel a duty of loyalty not to knowingly act against Mattel's interests while he was employed by Mattel.[8]  The jury necessarily found that Bryant breached his fiduciary duty and duty of loyalty to Mattel.[9]  Indeed, the Court ruled as a matter of law that Bryant breached his duty of loyalty by entering into a contract with MGA, while he was still a Mattel employee, to produce the Bratz line of fashion dolls.[10]  Moreover, it is beyond dispute that Bryant disclosed to MGA while he was a Mattel employee the "Bratz" and "Jade" names and other proprietary Bratz information upon which Bratz dolls and other Bratz products were based.

---

Zoe character became the Cloe doll, the Lupe character became the Yasmin doll, the Hallidae character became the Sasha doll, and the Jade character became the Jade doll.

[6]   Order dated April 25, 2008 Granting in Part, Denying in Part, and Deferring in Part the Parties' Motions for Partial Summary Judgment ("April 25, 2008 Order") at 5, Kidman Dec., Exh. C; Trial Exh. 25 (Inventions Agreement) at ¶ 2(a), Kidman Dec., Exh. D.

[7]   April 25, 2008 Order at 5, Kidman Dec., Exh. C; Trial Exh. 25 (Inventions Agreement) at ¶ 1(a), Kidman Dec., Exh. D.

[8]   April 25, 2008 Order at 5, Kidman Dec., Exh. C; Phase 1A Final Jury Instructions As Given, Instruction No. 27, Kidman Dec., Exh. E; Trial Exh. 25 (Inventions Agreement) at ¶ 3, Kidman Dec., Exh. D.

[9]   Phase 1A Final Jury Instructions as Given, Instruction Nos. 26 and 27, Kidman Dec., Exh. E; Phase 1A Verdict, Question Nos. 9 and 11, Kidman Dec., Exh. A.

[10]   April 25, 2008 Order at 5, Kidman Dec., Exh. C; Phase 1A Final Jury Instructions as Given, Instruction No. 28, Kidman Dec., Exh. E.

It is also beyond dispute at this juncture that MGA was no innocent bystander in this course of illegal conduct.  The jury found that MGA and Isaac Larian aided and abetted Bryant's breach of his fiduciary duty, aided and abetted Bryant's breach of his duty of loyalty and tortiously interfered with Bryant's contractual duties to Mattel.[11]

**MGA's trademark rights in the "Bratz" and "Jade" names**.  MGA used the wrongfully disclosed and acquired "Bratz" and "Jade" names to obtain trademark rights in the United States and abroad.  Those rights purport to prevent Mattel—the rightful owner of the names—and others from using those terms in connection with dolls and other product categories.  Presently, MGA professes to own no fewer than 23 trademark registrations that include the term "Bratz" in the United States alone.[12]  Further, MGA has applications pending before the United States Patent and Trademark Office for at least nine more Bratz trademarks.[13]

MGA's public statements following the jury's verdicts in phase 1A and 1B make it clear that MGA intends to continue to use and claim ownership of the wrongfully acquired "Bratz" name and associated trademark rights therein.[14]  In fact, as recently as last week, MGA applied for yet another trademark registration that includes the term "Bratz."[15]  MGA also continues to sell dolls and other products using the terms "Bratz" and "Jade."

---

[11]  Phase 1A Verdict, Question Nos. 7-12, Kidman Dec., Exh. A.
[12]  Kidman Dec. at ¶ 7, Exh. F.
[13]  Id. at ¶ 8, Exh. G.  In addition, MGA claims to own and uses numerous domain names that include the term "Bratz," including "bratz.com, "be-bratz.com" and "bratzpetz.com."  Id.,  Exh. J.
[14]  Id., Exh. K.
[15]  Id., Exh. O.

**Argument**

I.   **MATTEL IS ENTITLED TO A CONSTRUCTIVE TRUST OVER THE BRATZ AND JADE TRADEMARKS**

    A.   **Constructive Trusts Extend To All Benefits Obtained From The Wrongful Acquisition And Use Of Property That Belongs To Another**

A constructive trust is an equitable remedy that may be imposed in a wide variety of circumstances to prevent a defendant from retaining the benefits of its wrongful conduct.  See Burlesci v. Petersen, 68 Cal. App. 4th 1062, 1069 (1998) ("The essence of the theory of constructive trust is to prevent unjust enrichment and to prevent a person from taking advantage of his or her wrongdoing."); Weiss v. Marcus, 51 Cal. App. 3d 590, 600 (1975) ("[A] constructive trust may be imposed in practically any case where there is a wrongful acquisition or detention of property to which another is entitled.") (citation omitted); see also Dan B. Dobbs, LAW OF REMEDIES § 4.3(2) (2d ed. 1993) at 589-90 ("The constructive trust might be imposed on any identifiable kind of property or entitlement in the defendant's hands if, in equity and conscience, it belongs to the plaintiff.").

California courts routinely employ constructive trusts to prevent defendants from retaining benefits obtained through the commission of torts like those for which the jury found MGA liable here.  See GHK Assocs. v. Mayer Group, Inc., 224 Cal. App. 3d 856, 878 (1990) (imposing constructive trust to remedy intentional interference with contract and noting "[t]he trial court in this case found that appellants had conspired to deprive GHK of its rights under the agreements and its profit interest in the Project.  Accordingly, the trial court acted well within its discretion in imposing a constructive trust on those profits for the benefit of GHK."); Heckmann v. Ahmanson, 168 Cal. App. 3d 119, 135 (1985) (finding constructive trust to be appropriate remedy for aiding and abetting breach of fiduciary duty); see also Warren v. Merrill, 143 Cal. App. 4th 96, 113 (2006) ("A

-5-

constructive trust may be imposed when a party has acquired property to which he is not justly entitled, if it was obtained by actual fraud, mistake or the like, or by constructive fraud through the violation of some fiduciary or confidential relationship.") (citing <u>Mazzera v. Wolf</u>, 30 Cal. 2d 531, 535 (1947)).

Moreover, in order to prevent unjust enrichment, it is well established that a constructive trust extends not only to the wrongfully acquired property but to all benefits obtained from the use of that property.  Thus, for example, "[w]here a fiduciary in violation of his duty to the beneficiary communicates confidential information to a third person, the third person, if he had notice of the violation of duty, holds upon a constructive trust for the beneficiary any profit which he makes through the use of such information."  RESTATEMENT OF RESTITUTION § 201; <u>see also</u> <u>County of San Bernardino v. Walsh</u>, 158 Cal. App. 4th 533, 543 (2007) ("Active participants in the breach of fiduciary duty by another are accountable for all advantages they gained thereby."); <u>Heckmann</u>, 168 Cal. App. 3d at 135 (imposing constructive trust on amounts wrongfully acquired together with income earned on those amounts to prevent defendant from being rewarded for wrongdoing); <u>Haskel Engineering & Supply Co. v. Hartford Acc. & Indem. Co.</u>, 78 Cal. App. 3d 371, 375-76 (1978) (constructive trust extends to profits made on wrongfully acquired funds to prevent unjust enrichment).

**B.**   **The Elements For The Imposition Of A Constructive Trust Are Satisfied Here**

To obtain a constructive trust, a plaintiff generally must show (1) the existence of a *res* (property or some interest in property); (2) its *right* to that res; and (3) some *wrongful* acquisition or detention of the *res* by another party who is not entitled to it.  <u>Martin v. Kehl</u>, 145 Cal. App. 3d 228, 237-38 (1983); <u>Calistoga Civic Club v. City of Calistoga</u>, 143 Cal. App. 3d 111, 116 (1983); <u>Weiss</u>, 51 Cal. App. 3d at 600.  These elements are general considerations to guide a court, not firm rules. <u>Martin</u>, 145 Cal. App. 3d at 237 ("In order to provide the necessary flexibility to

apply an equitable doctrine to individual cases, these sections state general principles for a court's guidance rather than restrictive rules.") (citation omitted).

Each of these elements is satisfied here. First, trademark rights constitute an interest in property or entitlement over which a constructive trust may be imposed. See Dobbs, supra § 4.3(2) ("The asset may be an intangible entitlement such as a trademark."); Columbia Nastri & Carta Carbone S/p/A v. Columbia Ribbon & Carbon Mfg. Co., 367 F.2d 308, 311 (2d Cir. 1966) (transferring wrongfully acquired trademark through a constructive trust); Lurzer GMBH v. Am. Showcase, Inc., 75 F. Supp. 2d 98, 106 (S.D.N.Y. 1998) (same); Blue Cross & Blue Shield Ass'n v. Group Hosp. & Med. Servs., 744 F. Supp. 700, 720-21 (E.D. Va. 1990), aff'd without opinion, 911 F.2d 720 (4th Cir. 1990) (same). So, too, do domain names. See Online Partners.com, Inc. v. Atlanticnet Media Corp., 2000 WL 101242, at *10 (N.D. Cal. Jan. 20, 2000) (transferring wrongfully acquired domain name through a constructive trust).

As to the second and third elements, MGA cannot contest that it wrongfully acquired the "Bratz" and "Jade" names that belonged to Mattel as part of the Bratz project Bryant conceived and created while a Mattel employee. The jury unanimously found that Bryant conceived the name "Bratz," conceived the "Jade" character and created other Bratz-related inventions while he was employed by Mattel. Under his Inventions Agreement, Bryant had fiduciary and contractual duties not to disclose to MGA the Bratz-related inventions that he created during his Mattel employment.[16] He nevertheless breached those duties by disclosing to MGA

---

[16] Trial Ex. 25 (Inventions Agreement) at ¶ 1, Kidman Dec., Exh. D; April 25, 2008 Order at 5, Kidman Dec., Exh. C; Phase 1A Final Jury Instructions As Given, Instruction No. 28, Kidman Dec., Exh. E. The Court also has ruled as a matter of law that under the Inventions Agreement Mattel owns all Bratz-related inventions, including any designs, improvements, ideas, concepts, and copyrightable subject
   (footnote continued)

the "Bratz" and "Jade" names and other aspects of the Bratz project he conceived and created while a Mattel employee.  As the jury found, MGA knowingly interfered with and aided and abetted Bryant's breaches of those duties.  MGA accordingly cannot dispute that its receipt, acquisition and use of the Bratz-related inventions created by Bryant during his employment by Mattel was wrongful.

C. **Absent A Constructive Trust Over The Bratz And Jade Trademarks, MGA Will Retain The Benefit From Its Wrongful Conduct**

The jury's verdict establishes that MGA's theft of the terms "Bratz" and "Jade."  Mattel is entitled to all benefits MGA obtained as a result of its wrongful conduct.  The Bratz and Jade marks are one such benefit.

In the United States, trademark rights are obtained by use of the mark in commerce in connection with the sale or offering of goods or services.  MGA's use of the "Bratz" and "Jade" names to establish trademarks is merely an example of MGA's improper use of property that belongs to Mattel.  It is part of the very wrongful conduct for which MGA is liable.  That wrongful use entitles Mattel to a constructive trust over the resulting trademark rights.[17]

Even if MGA's use of the "Bratz" and "Jade" names were not itself part of MGA's wrongful conduct—and it clearly is—Mattel is still entitled to a constructive trust over marks including the term "Bratz" or "Jade" because they represent benefits from use of the wrongfully taken property.  As set forth above, a

---

matter, created by Bryant during the period of his employment with Mattel. April 25, 2008 Order at 5-6, Kidman Dec., Exh. C.

[17]    Outside the United States, use is not a requirement for the acquisition of trademark rights.  Trademark rights are conferred by the mere act of registration. Anne Gilson LaLonde & Jerome Gilson, GILSON ON TRADEMARKS  § 10.02 (2008). Accordingly, a constructive trust should also be imposed over all registrations and applications using the term "Bratz" or "Jade" that are held by or for MGA in foreign jurisdictions.

constructive trust extends to the benefits received from the use of wrongfully acquired property.  See, e.g., RESTATEMENT OF RESTITUTION § 201(2) ("Where a fiduciary in violation of his duty to the beneficiary communicates confidential information to a third person, the third person, if he had notice of the violation of duty, holds upon a constructive trust for the beneficiary any profit which he makes through the use of such information.").  This includes any enhancement in the value of wrongfully acquired property.  Gladstone v. Hillel, 203 Cal. App. 3d 977, 989 (1988) ("The constructive trust includes the product of the misappropriated property: 'The constructive trust extends to property acquired in exchange for that wrongfully acquired, and includes the direct product, i.e., profit on and enhancement in the value of the property traced into the trust.'") (citation omitted); Heckmann, 168 Cal. App. 3d at 135 (imposing constructive trust on amounts wrongfully acquired together with income earned on those amounts to prevent defendant from being rewarded for wrongdoing); Haskel Engineering & Supply Co., 78 Cal. App. 3d at 375-76 (constructive trust extends to profits made on wrongfully acquired funds to prevent unjust enrichment).

But for this rule, there would not be a sufficient deterrent to the wrongful conduct.  See County of San Bernardino, 158 Cal. App. at 543 (2007) (without disgorgement of all benefits received from the wrongful conduct "there would be an insufficient deterrent to improper conduct which is more profitable than lawful conduct").  Absent a constructive trust over the Bratz and Jade marks here, MGA would continue to unjustly benefit from its theft of the names.  This is not, for example, an instance where MGA could return the stolen property and retain the value added.  MGA's unlawful acquisition and use of the Bratz and Jade names is so intertwined with the trademarks that allowing MGA to retain the marks will allow it to keep that which it stole in the first place.  Moreover, because a mark is by definition the right to exclude use by others, MGA undoubtedly will purport to preclude Mattel from making any meaningful use of the terms "Bratz" and "Jade" if

1  MGA is allowed to retain the marks, even if the names could somehow be separated

2  from the marks.

3  **D.   MGA's Subsequent Acquisition Of A Single, Narrow Trademark**

4  **Registration From A Third Party Does Not Defeat Mattel's Right**

5  **To A Constructive Trust**

6  In late 2002—*after* MGA had wrongfully obtained disclosure of Mattel's

7  "Bratz" name and began using it connection with Bratz dolls and other Bratz

8  products—MGA ostensibly purchased certain trademark rights from a company

9  called Lovins, Inc., which had claimed to have rights to the word "Bratz" for

10  children's clothing.  MGA suggested at trial that this somehow trumps Mattel's

11  rights to the Bratz trademarks.  It does not.

12  MGA did not get the "Bratz" name from Lovins.  It is undisputed that the

13  "Bratz" name came from Carter Bryant when he wrongfully disclosed it to MGA

14  along with other Bratz-related inventions that he had developed while he was a

15  Mattel employee.  As Isaac Larian testified at trial:

16  Q:   I want to go to the name Bratz for a second.  There's been a lot

17  of discussion about that.

18  My question is this, sir:  There's been a lot of testimony in this

19  case with respect to the origin of the name "Bratz."

20  A:   Yes.

21  Q:   Do you dispute in any way that Carter Bryant had the idea of

22  Bratz when he presented the drawings to you?

23  A:   I do not.[18]

24  MGA would not have had the "Bratz" name to use or acquire trademark rights

25  in had it not been for the wrongful disclosure and use of Mattel's property in the

---

[18]   Trial Transcript at 2148:2-10.  See also Trial Transcript at 1645:1-22; (Larian); 1747:20-1748:1 (Larian); 567:5-8 (Garcia); 996:3-20 (Garcia).

MATTEL, INC.'S MOTION FOR CONSTRUCTIVE TRUST AND INJUNCTIVE RELIEF

first place.  Indeed, it is undisputed that MGA had been using the "Bratz" name *prior* to any agreement with Lovins.  At most, the claim by Lovins was merely a potential obstacle to MGA perfecting trademark rights in Bratz with respect to a single class of goods—clothing—which, according to MGA's expert, has accounted for less than 1.6 percent of MGA's total Bratz product line sales.[19]  As the constructive trustee of the "Bratz" name, any steps by MGA to perfect such trademark rights were undertaken for and inure to the benefit of Mattel.

In any event, by MGA's own account, the purported rights asserted by Lovins were limited to the narrow category of children's apparel.[20]  They have nothing whatsoever to do with the Bratz marks MGA has acquired for dolls and all the products other than children's apparel that now make up the Bratz brand.  And, of course, MGA's contention here could not conceivably avoid the imposition of a constructive trust over the Jade marks.

* * *

The Court should impose a constructive trust over the "Bratz" and "Jade" names, marks and domain names and order the rights therein transferred to Mattel. Furthermore, as shown in the next section, the Court should permanently enjoin MGA and those acting with it or on its behalf from further use of the "Bratz" and "Jade" names, marks and domain names in connection with any goods or services under California's Unfair Competition Law.

---

[19]   Trial Exh. 18923-15, Kidman Dec. Exh. L.
[20]   <u>See</u> MGA's response to Lovins' motion to suspend opposition proceedings before the Trademark Trial and Appeal Board, Kidman Dec., Exh. M.  On its face, the registration MGA obtained pursuant to the assignment from Lovins is limited to "infants and children's clothing, namely, tops, bottoms, sleepwear, hats; and infants and children's outerwear namely, jackets, parkas, coats, snow suits and mittens, in Class 25."  Kidman Dec., Exh. N.

## II. MGA ENGAGED IN UNLAWFUL BUSINESS PRACTICES AND THE COURT SHOULD ENJOIN MGA'S USE OF THE "BRATZ" AND "JADE" NAMES

### A. MGA Has Violated The Unfair Competition Law

Mattel's twelfth cause of action is for unfair competition under Cal. Bus. & Prof. Code § 17200. California's Unfair Competition Law ("UCL") precludes "unlawful, unfair or fraudulent business act[s] or practice[s]" to preserve "fair business competition." Cal. Bus. & Prof. Code § 17200; see also Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999); Barquis v. Merchants Collection Ass'n, 7 Cal. 3d 94, 110 (1972). The law's coverage is "sweeping," precluding "anything that can properly be called a business practice and that at the same time is forbidden by law." Cel-Tech., 20 Cal. 4th at 180 (internal quotations and citation omitted). By proscribing "unlawful" activity the statutory scheme "borrows" violations of other laws, making them "independently actionable" under the UCL. Id. Thus, its remedies are "cumulative" to remedies  or penalties available for the underlying unlawful activity. Id. at 179.[21]

---

[21] Because the UCL includes three distinct prongs—conduct that is unlawful, unfair, or fraudulent—courts have held that even where federal law preempts claims based on certain conduct or even an entire prong of a potential UCL claim, a viable claim may still be established through other unfair conduct or any of the remaining potential prongs. See, e.g., Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v. MDL Info. Sys., Inc., 2006 WL 3218719, at *4 (N.D. Cal. Nov. 7, 2006) (holding Copyright Act did not preempt claim for unfair competition given defendant's fraudulent actions). This Court previously held that Mattel's unfair competition claim was precluded to the extent it was predicated on copyright infringement or antitrust violations. See April 25, 2008 Order at 7, Kidman Dec. Exh. C. However, the Court recognized that Mattel's claim for unfair competition could still be based on other unlawful activity. See id. Consistent with that Order and the jury's subsequent verdict, Mattel's claim of unfair competition under the "unlawful" prong is based on MGA's tortious conduct and is therefore not preempted.

07209/2643823.7

1    Here, the jury's verdict established that MGA and Larian acted unlawfully by

2    tortiously interfering with Mattel's contractual relations and by aiding and abetting

3    Bryant's breaches of duties owed to Mattel.  Each of those torts is a violation of a

4    duty imposed by law and thereby constitutes an "unlawful" practice "independently

5    actionable" under the UCL.  CRST Van Expedited, Inc. v. Werner Enterprises, Inc.,

6    479 F.3d 1099, 1107 (9th Cir. 2007).

7    In CRST, the Ninth Circuit held that a UCL claim can be predicated on

8    intentional interference with an employment contract.  CRST, 479 F.3d at 1107.

9    Likewise, "[t]he California courts have held that a breach of fiduciary duty can

10   provide the predicate unlawful act that gives rise to an Unfair Competition Law

11   claim."  Iconix, Inc. v. Tokuda, 457 F. Supp. 2d 969, 996 (N.D. Cal. 2006) (granting

12   preliminary injunction to prevent former employee from using confidential

13   information to develop competing product); Allied North Am. Ins. Brokerage Corp.

14   of Cal. v. Woodruff-Sawyer, 2005 WL 2354119, at *9 (N.D. Cal. Sept. 26, 2005)

15   (former employee's use of confidential information in breach of fiduciary duties is

16   unfair competition).  One who aids and abets such a breach is equally liable under

17   the UCL.  See, e.g., Bancroft-Whitney Co. v. Glen, 64 Cal. 2d  327, 332 (1966)

18   (competitor liable for unfair competition for aiding the breach of employee's

19   fiduciary duty to former employer); GAB Bus. Servs. Inc. v. Lindsey & Newsom

20   Claim Servs., Inc., 83 Cal. App. 4th 409, 425 (2000) (same) (overruled on other

21   grounds Reeves v. Hanlon, 33 Cal. 4th 1140, 1154 (2004)).  A UCL claim may also

22   be predicated on conversion, which is an unlawful practice under California law.

23   See Cal. Civ. Code § 3336; California Civil Jury Instructions (BAJI) § 12.99 (Fall

24   ed. 2008).  Conversion of a competitor's confidential information violates public

25   policy and "significantly threatens or harms competition."  Cel-Tech, 20 Cal. 4th at

26   180.

27   The unlawful prong of the UCL "turns a violation of the underlying law into a

28   per se violation of the UCL."  CALIFORNIA UNFAIR COMPETITION & BUSINESS TORTS

§ 2.09[1] (8th ed. 2008).  The jury's verdict therefore establishes that MGA violated the UCL.  <u>See, e.g.</u>, <u>Brockey v. Moore</u>, 107 Cal. App. 4th 86, 98-99 (2003) (declining to address defendant's appeal of injunction under the UCL based on trial court's finding of false advertising where the jury's verdict on liability also established various unlawful activities supporting injunction).

Accordingly, Mattel respectfully requests that the Court find that the MGA defendants and Carter Bryant violated § 17200 of the <u>California Business and Professions Code</u> and rule in Mattel's favor on its twelfth claim for relief.

**B.     The Court Should Enjoin MGA From Using The Names "Bratz" Or "Jade"**

In addition to imposing a constructive trust over the Bratz and Jade marks, the Court should permanently enjoin MGA from making any further use of the term "Bratz" or "Jade."  The UCL provides that "[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction."  <u>Cal. Bus. & Prof. Code</u> § 17203. "The court may make such orders . . . necessary to prevent the use . . . of any practice which constitutes unfair competition . . . or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." <u>Id.</u>  Courts have "'very broad" discretion to formulate equitable relief under the UCL for the purpose of "making the victims of unfair competition whole." <u>Benson v. Kwikset Corp.</u>, 152 Cal. App. 4th 1254, 1277-1278 (2007) (<u>quoting</u> <u>Cortez v. Purolator Air Filtration Prods. Co.</u>, 23 Cal. 4th 163, 180 (2000)); <u>Brockey</u>, 107 Cal. App. 4th at 104 (affirming trial court's injunction as "a necessary mechanism to achieve full disgorgement of [defendant's] wrongful profits") (citation omitted).

Where, as here, a defendant unlawfully obtains and uses a competitor's proprietary or confidential information, courts will grant equitable relief under

§ 17200 to prevent that defendant from unfairly benefiting.  See, e.g., Iconix,  457 F. Supp. 2d at 997 (granting, in part, plaintiff's request for injunctive relief to prevent defendants from "benefiting from the fruits of their wrongdoing"); see also Readylink Healthcare v. Cotton, 126 Cal. App. 4th 1006, 1018 (2005) (affirming trial court's injunction to prevent competitor's use of misappropriated confidential information under UCL); Courtesy Temp. Serv., Inc. v. Camacho, 222 Cal. App. 3d 1278, 1291(1990) (reversing trial court for failure to grant injunction under the UCL to prevent competitor from using confidential information); Klamath-Orleans Lumber, Inc. v. Miller, 87 Cal. App. 3d 458 (1978) (affirming trial court's grant of permanent injunction preventing party from using competitor's customer lists).

The purpose of such injunctive orders is to "foreclose retention by the violator of its ill-gotten gains" and prevent continued violation of the UCL.  Juarez v. Arcadia Fin. Ltd., 152 Cal. App. 4th 889, 913 (2007) (quoting Bank of the West v Superior Court, 2 Cal. 4th 1254, 1267 (1992)).  When a party unlawfully obtains confidential or proprietary information, it is appropriate to order both the return of the information and to enjoin its use going forward.  See, e.g., Corporate Express Office Prods, Inc. v. Martinez, 2002 WL 31961458, at *6 (C.D. Cal. Mar. 8, 2002) (entering preliminary injunction enjoining defendant from retaining confidential information and from engaging in certain activities); see also RESTATEMENT OF RESTITUTION § 201(2) & comments thereto (when fiduciary in violation of his duty to the beneficiary communicates confidential information to a third person who has notice of the violation, the third person will be enjoined from making use of the information).

Thus, for example, in Gladstone v. Hillel, defendants took plaintiff's original jewelry designs and the molds used in their production and used them to launch a competing line of jewelry.  203 Cal. App. 3d at 981.  Plaintiff prevailed at trial on conversion and fraud claims.  The trial court, having already ordered that plaintiff's property be returned, issued an injunction which prohibited defendants from using

1  plaintiff's designs or molds going forward.  Id. at 988.  The appellate court affirmed

2  the order (with slight modifications), concluding that the dispute presented exactly

3  the type of situation that § 17200 was enacted to remedy:

> [Defendants'] conduct displayed a pattern of wrongfully using
> [plaintiff's] molds and designs which represented a sufficient threat of
> violation of Business and Professions Code section 17200 to justify a
> decree which includes an injunction against future violations of that
> statute.

9  Id. at 990.  The court reasoned that defendants "should not be permitted to benefit

10  from the fruit of their wrongful conversion of [plaintiff's] property," which—despite

11  having been ordered to return the property itself—they would continue to do if not

12  prevented from unfairly capitalizing on plaintiff's property. Id. at 989.

13  Here, equitable relief is appropriate and necessary in order to restore to Mattel

14  the confidential information that was unlawfully disclosed to and used by MGA in

15  contravention of the UCL, including the "Bratz" and "Jade" names.  These are, as a

16  matter of law, Mattel's property.  MGA obtained them unlawfully and continues to

17  benefit from the fruits of its wrongdoing.  Only by returning them to Mattel and

18  enjoining MGA from further use will Mattel be made whole.  Absent such an

19  injunction, MGA will continue to benefit from its unlawful business practices.

## Conclusion

21  For the reasons set forth above, Mattel respectfully requests that the Court

22  impose a constructive trust on all rights to any trademarks and domain names owned

23  by MGA or Isaac Larian, or any person or entity acting on their behalf or for their

24  benefit, anywhere in the world that include the terms "Bratz" or "Jade," including

25  all such trademark registrations and pending trademark applications, and all

26  goodwill inhering therein, as well as all such domain names and domain name

27  registrations, and an order effecting the transfer thereof to Mattel.  In addition,

28  Mattel requests that the Court find the MGA Defendants and Carter Bryant liable to

-16-

1   Mattel on its twelfth claim for relief and enjoin them, and any person or entity acting

2   on their behalf or in concert or participation with them, from using the term "Bratz"

3   or "Jade" and from taking any steps to prevent Mattel from using them in any

4   manner.

5

6   DATED:  September 29, 2008           QUINN EMANUEL URQUHART OLIVER &
                                          HEDGES, LLP
7

8

9                                       By /s/ Michael T. Zeller

10                                         Michael T Zeller
                                           Attorneys for Mattel, Inc.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL, INC.'S MOTION FOR CONSTRUCTIVE TRUST AND INJUNCTIVE RELIEF