# Exhibit A

EXHIBIT _A_
PAGE _4_

1

2

3

4

5

6

7

8    UNITED STATES DISTRICT COURT

9    CENTRAL DISTRICT OF CALIFORNIA

10    EASTERN DIVISION

11

| 12  MATTEL, INC., | CASE NO. CV 04-9049 SGL (RNBx) |
| 13         Plaintiff, | Consolidated with |
| 14 | Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 15    vs. | Hon. Stephen G. Larson |
| 16  MGA ENTERTAINMENT, | |
| 17         Defendant. | **FINAL VERDICT FORM AS GIVEN** |
| 18  AND CONSOLIDATED ACTIONS | |

19

20

21

22

23

24

25

26

27

28

EXHIBIT ___A___
PAGE ___5___

7-17

07209/2554627.7

# VERDICT FORM

We answer the questions submitted to us as follows:

## Timing of Tangible Items

1.    For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
|-----|-----|-----|
| ☒ | ☐ | TX 5-52, 62-1, 624/5-74, 62-11, 10537, 15180/5-75, 62-12, 10538, 15181/5-111, 708/5-112, 62-13/5-113/5-114/62-14/62-15, 1152-1, 1152-2, 10613/1328/10033-3/10033-4 |
| ☒ | ☐ | TX 5-88, 35-1, 35-3, 5-101/1327, 10153-3/10153-4 |
| ☒ | ☐ | TX 5-35, 757 |
| ☒ | ☐ | TX 5-36, 701, 702 |
| ☒ | ☐ | TX 5-37, 703 |
| ☒ | ☐ | TX 5-38, 762 |
| ☐ | ☐ | TX 5-39, 523, 752 |
| ☐ | ☐ | TX 5-40, 753, 754, 13583 |
| ☐ | ☐ | TX 751-2, 751-3, 5-41, 755 |
| ☐ | ☐ | TX 5-42, 756 |
| ☒ | ☐ | TX 5-43, 709 |
| ☒ | ☐ | TX 5-46, 710 |
| ☒ | ☐ | TX 5-49, 704 |
| ☒ | ☐ | TX 5-50, 705 |

EXHIBIT _A_

PAGE _6_

-1-

Case No. CV 04-9049 SGL (RNBx)
FINAL PROPOSED VERDICT FORM FOR PHASE 1A

| Yes | No | |
|-----|-----|---|
| ☒ | ☐ | TX 5-53, 1152-5, 1152-6, 10534, 15175 |
| ☒ | ☐ | TX 5-54, 62-2, 620, 774, 775 |
| ☒ | ☐ | TX 5-55, 62-3, 785, 1152-9 |
| ☒ | ☐ | TX 5-56, 764, 15176 |
| ☒ | ☐ | TX 5-57, 776, 777 |
| ☒ | ☐ | TX 5-58, 765, 15177 |
| ☒ | ☐ | TX 5-59, 739, 740 |
| ☒ | ☐ | TX 5-60, 761 |
| ☒ | ☐ | TX 5-61, 62-4, 782, 796-1, 1748 |
| ☒ | ☐ | TX 5-62, 62-5, 621, 767, 768, 5-71, 62-10, 770, 1752-1 |
| ☒ | ☐ | TX 5-63, 758, 759, 760 |
| ☒ | ☐ | TX 5-64, 62-6, 795, 1152-14, 1750 |
| ☒ | ☐ | TX 5-65, 1152-7, 1152-8, 11789 |
| ☒ | ☐ | TX 5-66, 794, 1152-13 |
| ☒ | ☐ | TX 5-67, 62-7, 784, 1152-11, 1152-12, 10535 |
| ☒ | ☐ | TX 5-68, 62-8, 781, 786, 790, 1751-4 |
| ☒ | ☐ | TX 5-69, 11788, 5-70, 62-9, 623, 783 |
| ☒ | ☐ | TX 5-72, 1152-15, 1152-16, 10536, 15179 |
| ☒ | ☐ | TX 5-73, 741, 742 |
| ☒ | ☐ | TX 5-76, 706 |
| ☒ | ☐ | TX 5-77, 707 |
| ☒ | ☐ | TX 5-78, 10539, 18501 |
| ☒ | ☐ | TX 5-136, 711 |
| ☒ | ☐ | TX 10579, 18281 |
| ☒ | ☐ | TX 15172 |

EXHIBIT _A_

PAGE _7_

2.    For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
|-----|----|--|
| ☒ | ☐ | TX 3-1, 779, 780, 1-1, 2-1, 778 |
| ☒ | ☐ | TX 3-2, 726, 727, 728, 1-4, 2-5 |
| ☒ | ☐ | TX 3-3, 1152-19, 1152-20, 11838, 15182, 1-6, 2-10, 5-104, 10544 |
| ☒ | ☐ | TX 3-5, 791, 1-8, 2-2 |
| ☒ | ☐ | TX 3-6, 11837, 15184, 1-7, 2-8, 743, 744, 5-107, 1152-17, 1152-18, 10547 |
| ☒ | ☐ | TX 3-8, 789, 1-11, 2-9, 734, 5-106, 10546 |
| ☒ | ☐ | TX 3-9, 788, 1-10, 2-6, 746, 5-103, 10543 |
| ☒ | ☐ | TX 3-10, 735, 736 |
| ☒ | ☐ | TX 3-12, 792, 1-3, 2-7, 5-102, 10542 |
| ☒ | ☐ | TX 3-13, 793, 1-5, 2-3, 10-3 |
| ☒ | ☐ | TX 5-79, 1-9, 2-4, 737, 10545, 5-105 |
| ☒ | ☐ | TX 1-2 |
| ☒ | ☐ | TX 3-11 |
| ☒ | ☐ | TX 5-26, 712 |
| ☒ | ☐ | TX 5-27, 713 |
| ☒ | ☐ | TX 5-81, 720 |
| ☒ | ☐ | TX 5-82, 715 |
| ☒ | ☐ | TX 5-83, 723 |
| ☒ | ☐ | TX 3-4, 5-84, 716, 717 |
| ☒ | ☐ | TX 3-7, 5-85, 718, 719, 10-2, 63-1 |
| ☒ | ☐ | TX 5-80, 721, 722, 5-86 |
| ☒ | ☐ | TX 5-87, 5-108, 724, 725 |
| ☒ | ☐ | TX 5-34 |

EXHIBIT ___A___

PAGE ___8___

3.      For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
|-----|-----|-----|
| ☒ | ☐ | TX 5-89, 35-2, 323-32, 323-33 |
| ☒ | ☐ | TX 1107, 10638 |
| ☒ | ☐ | TX 1108, 10639 |
| ☒ | ☐ | TX 1109, 771 |
| ☒ | ☐ | TX 1110, 773 |
| ☒ | ☐ | TX 5-14, 10515 |
| ☒ | ☐ | TX 5-18, 10518 |
| ☒ | ☐ | TX 5-19, 10519 |
| ☒ | ☐ | TX 5-28, 10526 |
| ☒ | ☐ | TX 5-30 |
| ☒ | ☐ | TX 5-95 |
| ☒ | ☐ | TX 5-96 |
| ☒ | ☐ | TX 5-99 |
| ☒ | ☐ | TX 323-18 |
| ☒ | ☐ | TX 323-19 |
| ☒ | ☐ | TX 323-26 |

EXHIBIT __A__
PAGE __9__

-4-

1      4.      For each of the items listed below, has Mattel proven by a

2  preponderance of the evidence that the item was "conceived or reduced to practice"

3  — that is, created — by Carter Bryant, alone or jointly with others, during the

4  period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

5

6              **Trial Exhibit No.**                        YES      NO

7      The Three Dimensional Item Presented at Pitch          X      _____

8                          Meeting

9

10                  Trial Exhibit 1136                        X      _____

11

12                      **Timing of Ideas**

13

14     5.      Has Mattel proven by a preponderance of the evidence that Carter

15  Bryant conceived the "Bratz" characters while employed by Mattel?

16     Yes    X

17     No     _____

18

19

20     6.      Has Mattel proven by a preponderance of the evidence that Carter

21  Bryant conceived the name "Bratz" while employed by Mattel?

22          Yes    X

23          No     _____

24

25

26                                              EXHIBIT   A

27                                              PAGE      10

28

## Intentional Interference with Contractual Relations

7. Is MGA Entertainment, Inc. ("MGA") liable to Mattel for intentional interference with contractual relations?

  Yes <u>X</u>

  No <u>  </u>

8. Is Isaac Larian liable to Mattel for intentional interference with contractual relations?

  Yes <u>X</u>

  No <u>  </u>

## Aiding and Abetting Breach of Fiduciary Duty

9. Is MGA liable to Mattel for aiding and abetting breach of fiduciary duty?

  Yes <u>X</u>

  No <u>  </u>

10. Is Isaac Larian liable to Mattel for aiding and abetting breach of fiduciary duty?

  Yes <u>X</u>

  No <u>  </u>

## Aiding and Abetting Breach of the Duty of Loyalty

11. Is MGA liable to Mattel for aiding and abetting breach of the duty of loyalty?

  Yes <u>X</u>

  No <u>  </u>

EXHIBIT _A_

PAGE __11__

1    12.    Is Isaac Larian liable to Mattel for aiding and abetting breach of the
2  duty of loyalty?

3           Yes    _X_

4           No    _____

5

6                           **Conversion**

7    13.    Is MGA liable to Mattel for conversion?

8           Yes    _X_

9           No    _____

10

11   14.    Is Isaac Larian liable to Mattel for conversion?

12          Yes    _X_

13          No    _____

14

15   15.    Is MGA Entertainment (HK) Limited liable to Mattel for conversion?

16          Yes    _X_

17          No    _____

18

19

20         Once this verdict form is completed, the foreperson of the jury should sign

21  and date on the lines below.

22  DATED: _July 17_____, 2008

23

24

25  _____

26                     Presiding Juror

      EXHIBIT __4__

27    PAGE __12__

28

07209/2554627.7                                          -7-          Case No. CV 04-9049 SGL (RNBx)
                                                     FINAL PROPOSED VERDICT FORM FOR PHASE 1A

# Exhibit B

EXHIBIT __B__
PAGE __13__



ALL MATERIALS © 2000 CARTER BRYANT

II
EX. NO. 302
15 PAGES 1, 18, 06
A. PRAXMARER, CSR · WIT: LARIAN

CONFIDENTIAL
ATTORNEY'S EYES ONLY

MGA006453

EXHIBIT B
PAGE 14        302

EX 302-0001

# Bratz!

Meet the Bratz! The Totally Transformable Teenage dolls! They're four best friends from high school who love to trade clothes, shoes and hairdos! They come to school with a new look every day!

By simply popping off the hairstyle and shoes, and exchanging them for one of their other hairstyles and pairs of shoes, or a friend's hairstyle and shoes, you can create a whole new look! Complete the look by changing their pants or skirts for one of their additional garments!

Each doll comes dressed in a trendy, hip outfit, with one or two additional pieces, such as an additional skirt or t-shirt (for mix and matching.) Each doll also comes with two great hairstyles, 2 great pairs of shoes, and a cool backpack.

CONFIDENTIAL
ATTORNEY'S EYES ONLY

MGA006454

EXHIBIT __B__
PAGE __15__

EX 302-0002



## Meet Zoe!

She's the queen of cool at school
with her short dark brown hair
and funky stompin' sneaks.
Hiphugger jeans, short tee shirt
and glittery vinyl backpack
complete her daytime look.

CONFIDENTIAL
ATTORNEY'S EYES ONLY

EXHIBIT B
PAGE 16

MGA006455

EX 302-0003



To give Zoe a whole new look for night, change her short dark brown hairstyle to her long blonde hairdo (included), change her pants to a skirt (also included) and change her sneakers to platform sandals (you get those too!)

CONFIDENTIAL
ATTORNEY'S EYES ONLY

EXHIBIT ___B___
PAGE ___17___

MGA006456

EX 302-0004

CONFIDENTIAL
ATTORNEY'S EYES ONLY

MGA006457

EXHIBIT _B_
PAGE _18_

EX 302-0005



Now she has a whole new look for nighttime fun with the rest of the Bratz gang!

# Meet Lupe!

She's the princess of pretty in her casual wear of tank top and wide leg khakis. Cute sweatshirt, silvery tennies , a fun red updo and fresh backpack give her a great look for school!

CONFIDENTIAL
ATTORNEY'S EYES ONLY

MGA0006458

EXHIBIT 8
PAGE 19

EX 302-0006



For partytime, change her into a short skirt, braids and silver stompers!

CONFIDENTIAL
ATTORNEY'S EYES ONLY

MGA006459

EXHIBIT _B_
PAGE _20_

EX 302-0007



# Meet Hallidae!

She's got the beat! Ultra trendy street wear 'n' braids for hittin' the books. Jean skirt, boots and knit cap, not to mention a funky bookpack (check out the logos!) give Hallidae a look that is all that!

CONFIDENTIAL
ATTORNEY'S EYES ONLY

MGA0008460

EXHIBIT B
PAGE 21

EX 302-0008



On date night, it's a sassy short
dress, platforms, and a totally
new 'do!

MGA006461

CONFIDENTIAL
ATTORNEY'S EYES ONLY

EX 302-0009

EXHIBIT  12
PAGE  22



## Meet Jade!

Jade loves far-out fashion! Mary Janes and a baby doll are just perfect for study hall! Twisty hairdo, fringe-y jacket and a sweeter than sweet backpack and Jade is ready for serious school house rock!

CONFIDENTIAL
ATTORNEY'S EYES ONLY

EXHIBIT _B_
PAGE _23_

MGA0006462



EX 302-0010



For weekend nights hangin' with the Bratz, it's a sweet dragon logo tee, with ruffly skirt and those boots, she's as cool as can be!

CONFIDENTIAL
ATTORNEY'S EYES ONLY

EXHIBIT B
PAGE 24

MGA006463

EX 302-0011



CONFIDENTIAL
ATTORNEY'S EYES ONLY

MGA006464

EXHIBIT _B_
PAGE _25_

EX 302-0012



MGA006465

CONFIDENTIAL
ATTORNEY'S EYES ONLY

EXHIBIT _B_
PAGE _26_

EX 302-0013



CONFIDENTIAL
ATTORNEY'S EYES ONLY

MGA006466

EXHIBIT ___B___
PAGE ___27___

EX 302-0014



CONFIDENTIAL
ATTORNEY'S EYES ONLY

MGA006467

EXHIBIT _B_
PAGE _28_

EX 302-0015

# Exhibit C

EXHIBIT _C_
PAGE _29_

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CARTER BRYANT, | CASE NUMBER |
| | CV 04-09049 SGL (RNBx) |
| PLAINTIFF(S), | |
| v. | |
| MATTEL, INC., et al., | NOTICE OF CLERICAL ERROR |
| DEFENDANT(S), | |

TO:     U. S. District Judge(s)
        U. S. Magistrate Judge(s)
        Counsel of Record

You are hereby notified that due to a clerical error ☐ documents associated with the filing of the new action ☐ the following scanned document ☑ docket entry  have/has been corrected as indicated below.

Title of Scanned Document: _Minute Order of 4-25-08, Granting in part, Denying in part, and Deferring in Part the Parties' MSJ_

Filed Date: _4-25-08_ _____ Document Number: _3285_ _____

☐   Incorrect case number _____ was assigned to this ☐ action ☐ document.

☐   Case number has been corrected. The correct case number is _____

☐   Incorrect judge's initials were indicated on this ☐ action ☐ document. The correct judge's initials are _____

☐   Incorrect magistrate judge's initials were indicated on this ☐ action ☐ document. The correct magistrate judge's initials are _____.

☐   Case has been reassigned from ☐ Judge ☐ Magistrate Judge _____ to
      ☐ Judge ☐ Magistrate Judge _____. The initials of the new judge(s) are _____

☐   Case was assigned to ☐ Western ☐ Southern ☐ Eastern division. Pursuant to General Order ☐ 349, ☐ 98-3 ☐ 02-06,
      the case has been reassigned to the ☐ Western ☐ Southern ☐ Eastern division. The former case number _____
      has been reassigned to new case number _____

☐   Subsequent documents must be filed at the ☐ Western ☐ Southern ☐ Eastern division. Failure to file at the proper location
      will result in your documents being returned to you.

☐   Case title is corrected from _____ to _____

☐   Document has been re-numbered as document number _____

☐   Incorrect ☐ Filed Date ☐ Date of Document ☐ ENTERED Date ☐ DATE ENTERED ON CM/ICMS was stamped on
      document. The correct date is _____

☑   Document is missing page number(s): _7 and 8_ _____

☐   To ensure proper routing of documents, all documents filed with the court must reflect the following case number and judge's
      initials: _____

☑   Other: a complete copy with missing pages are re-scanned for service on the parties.

CLERK, U.S. DISTRICT COURT

Date _4-25-08_ _____     By: _____ Jim Holmes, CRD _____
                                              Deputy Clerk

cc: _Intake Supervisor / Deputy In Charge_

G-11 (06/05)                          NOTICE OF CLERICAL ERROR

EXHIBIT __C__
PAGE __30__



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                          Date:  April 25, 2008
Title:       CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC., v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
==============================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

                Jim Holmes
                Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:         ATTORNEYS PRESENT FOR MATTEL:

None Present                                 None Present

ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

**PROCEEDINGS:    ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN
                 PART THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT
                 (IN CHAMBERS)**

        This matter is before the Court on the parties' motions for partial summary judgment.  The
motions were heard on April 22, 2008, and the Court has set the motions for further hearing on
May 19, 2008, at 1:30 p.m.  As set forth below, the Court rules on a number of issues presented
by the motions for partial summary judgment and reserves ruling on other issues until after further
hearing on the motions for partial summary judgment and, in the case of MGA's affirmative
defenses, until after the Phase 1 trial.

        The parties have made hundreds of objections to evidence offered in support of and in
opposition to the motions for partial summary judgment.  Although counsel for Bryant requested

MINUTES FORM 90
CIVIL -- GEN                              Page 1                     Initials of Deputy Clerk: jh

EXHIBIT __C__
PAGE __31__

explicit rulings on the objections raised by Bryant, the Court declines to do so. To the extent that
this Order necessarily relies on evidence subject to any party's objections, the objections are
implicitly overruled.

## PREEMPTION

MGA and Bryant seek summary judgment in their favor as to Mattel's claims for intentional
interference with contractual relations, conversion, and unfair competition, arguing that these
claims are preempted by the Copyright Act. They are partially correct.

A state law is preempted by the Copyright Act where (1) the work at issue comes within the
subject matter of copyright, and (2) the state law rights are "equivalent to rights within the general
scope of copyright[.]" Del Madera Properties v. Rhodes and Gardner, Inc., 820 F.2d 973, 977 (9th
Cir.1987). "If a state law claim includes an 'extra element' that makes the right asserted
qualitatively different from those protected under the Copyright Act, the state law claim is not
preempted by the Copyright Act." Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1089 (9th Cir.
2005). Generally the Copyright Act does not preempt the enforcement of contractual rights. Id.

As to the first element, the intentional interference with contractual relations claim
addresses generally an issue within the subject matter of copyright -- the underlying wrong upon
which the claim is premised is Mattel's deprivation of rights to intellectual property.

As to the second element, it is clear that the tort of intentional interference with contractual
relations is neither categorically preempted or categorically saved from preemption; rather, the
Court must engage in a determination of whether the substance of the tort claim differs
qualitatively from the copyright claim at issue. Compare Altera, 424 F.3d at 1089 (holding that a
intentional interference claim was not preempted because it was based not on copyrights but on a
contractual provision) with Laws v. Sony Music Entertainment, Inc., 448 F.3d 1134, 1144 (9th Cir.
2006) (holding preempted a singer's voice misappropriation claim was not qualitatively different
from her copyright claim).

Here, to the extent that the tortious interference is premised upon MGA's alleged
interference with any copyrights that Mattel may have under the Inventions Agreement, it is
preempted. Such a claim is not qualitatively different from Mattel's copyright claim. However, to
the extent that the claim is based on MGA's acts that may be found to have aided and abetted the
breach or induced the breach of Bryant's fiduciary duty, the claim is not preempted. That claim is
qualitatively different from Mattel's copyright claim.

Therefore, the tortious interference with contractual relations is preempted to the extent
that it is based on Mattel's rights to Bratz. It is not preempted as to Mattel's claims for breach of
fiduciary duty.

The parties' arguments regarding the conversion claim address two distinct issues:
Conversion of ideas and conversion of tangible things. The Court addresses each in turn.

EXHIBIT _C_
PAGE _32_

Both sides acknowledge, as this Court certainly agrees, that one cannot copyright an idea. Thus, it would seem, a claim for conversion of ideas is not subject to preemption because it is not "within the subject matter of copyright." Del Madera, 820 F.2d at 977. MGA argues that ideas are not subject to a claim of conversion, to which Mattel responds that such rights in ideas may be created by contract. Mattel relies on Desny v. Wilder, 46 Cal.2d 715, 733 (1956) which, remarkably, so holds. However, that case does not support the proposition that a breach of such rights may be remedied by the tort claim of conversion rather than a breach of contract claim. The law in California regarding the tort of conversion's applicability to ideas remains the same today as in 1956: "The tort of conversion does not apply to ideas." Melchior v. New Line Productions, Inc., 106 Cal.App.4th 779 (2003). Therefore, although this claim is not preempted, it is not actionable as a tort claim. Accordingly, summary judgment in favor of MGA and Bryant is granted as to this particular claim.

Mattel also argues that its conversion claim is not preempted to the extent that it seeks the return of tangible things, most notably the original Bratz drawings. This claim is "within the subject matter of copyright," but the state rights go beyond the rights protected by the Copyright Act by allowing for the return of property.

At oral argument, counsel for MGA argued that Mattel seeks the rights that the drawings represent, not the "paper and ink" of which those drawings are comprised. Mattel disagreed with that interpretation, noting that it seeks the return of the original drawings and certain sculpts to which it may have rights under the Inventions Agreement.

The items to which Mattel lays claim are not like the manuscript at issue in Dielsl v. Falk, 916 F.Supp. 985, 992 (C.D. Cal. 1996), or the government documents at issue in Idema v. Dreamworks, Inc., 162 F.Supp.2d 1129, 1192-93 (C.D. Cal. 2001), both of which had value merely for their ability to hold and convey their contents. Rather, the materials Mattel seeks are works of art that may have value apart from the copyrights they represent or the "paper and ink" and other materials of which they are comprised. Given the role of the drawings and sculpts in developing a new, commercially successful line of fashion dolls, and given the role of these items in the present litigation, the Court discerns a possible inherent value to the materials themselves.

MGA and Bryant also pressed at oral argument that Mattel had not advanced such a claim for return of tangible items. The Court disagrees. Citing to its Complaint at ¶ 157, Mattel contends it has long sought the return of tangible items.[1] An examination of Mattel's claim for conversion reveals that it encompasses such a claim. Therefore, the conversion claim seeking the return of tangible items is not preempted. MGA and Bryant's motions for summary judgment on this issue are therefore denied.

To the extent that Mattel's statutory unfair competition claim, discussed more fully below, is

---

[1]  From a review of the record, it is clear to the Court that Mattel intended to cite ¶ 157 of its Amended Answer and Counterclaims, not its Complaint.

EXHIBIT ___C___
PAGE ___33___


based on copyright infringement, it is preempted, and the Court grants summary judgment in favor of MGA on this issue.

## STATUTE OF LIMITATIONS

The Court heard argument at length on the statute of limitations issue. Although it is not entirely clear, it appears to the Court from the hearing and from MGA's Rule 56(f) affidavit, that there remain outstanding discovery matters that may have the potential, if resolved in MGA's favor, to factor into the inquiry into the determination of the date of the accrual of any claims against Bryant and/or MGA. Accordingly, the Court defers ruling on the issue of statute of limitations at this time.

## INVENTIONS AGREEMENT

The Court addressed many issues of the enforceability of the Employee Confidentiality and Inventions Agreement in its July 17, 2006, Order. The Court finds no good reason to revisit or revise that Order.

Bryant argues that the Inventions Agreement is ambiguous on the issue of whether it covered anything other than "inventions" as that term is used in patent law. Here, Bryant was a fashion designer. He signed an agreement that assigned his "inventions" to Mattel. "Inventions" is defined by the agreement to include "designs," which was undeniably the focus of Bryant's employment with Mattel. In addition to assigning all rights to Bryant's "inventions" (i.e., "designs") to Mattel, the agreement also assigned to Mattel "all [Bryant's] right, title, and interest in any . . . copyrights . . . and copyright applications based [on those inventions]".

In order to conclude that the Inventions Agreement is ambiguous on the issue of whether it would include any copyrightable drawings or doll designs developed by an employee, the Court would have to read out of the agreement explicit terms assigning to the employer the rights to "designs," "copyrights," and "copyright applications." The Court is required to read the contract as a whole and, where possible, give effect to all its terms. Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."). To accept the interpretation advanced by Bryant, the Court would have to disregard this bedrock principle of contract construction by ignoring an explicit assignment by the employee to the employer of copyrights. The interpretation advanced by Bryant is therefore not reasonable, and the Court finds that the Inventions Agreement is not ambiguous on the issue of its scope with respect to copyrightable materials.

The Inventions Agreement explicitly conveys to Mattel an employee's interest in any copyrights or copyright applications. Assuming copyrightability and the resolution of certain (as yet unresolved) issues of timing of creation and/or alteration in Mattel's favor, the original Bratz drawings clearly fall within the scope of the Inventions Agreement.

Moreover, the Inventions Agreement incorporates, and therefore does not violate, Cal.

EXHIBIT __C__
PAGE __34__

Labor Code § 2870. Pursuant to that statute (and its incorporation in the Inventions Agreement), because the subject matter at issue -- the Bratz dolls -- relate to Mattel's business of marketing fashion dolls, the factual question of whether Bryant worked on them on his own time, rather during his working hours at Mattel, is not relevant.

MGA argues that contracts of adhesion are unenforceable if they are either outside the scope of the parties' expectations or they are substantively unconscionable. The Court previously determined that the Inventions Agreement was not substantively unconscionable, and now determines that it is not outside the scope of the parties' expectations. As noted above, Bryant was a designer, and the plain language of the Inventions Agreement assigns his "designs" to his employer. Objectively, therefore, it would not be surprising that Mattel would lay claim to Bryant's rights to any doll or doll fashions he designed during the period of his employment with Mattel. Moreover, undisputed evidence establishes that Bryant's subjective understanding of the contract was that it transferred at least some of his rights to Mattel.

Bryant also argues that his actions went no further than lawful preparations to compete with his employer. The undisputed facts, however, tell a different story: Bryant directly competed with Mattel by entering into a contract with its competitor to produce a competing product while still employed by Mattel.

The Court grants summary judgment in favor of Mattel on the issue of the enforceability of the Inventions Agreement and the issue of applicability of the Inventions Agreement to any Bratz-related "inventions" (including any designs, improvements, ideas, concepts, and copyrightable subject matter) that he is found to have created during the period of his employment with Mattel.

## DUTY OF LOYALTY AND FIDUCIARY DUTY

Carter Bryant, like all other California employees, owed a duty of loyalty to Mattel while employed there. See Cal. Labor Code § 2863. The undisputed facts establish that he breached this duty by entering into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products. See Huong Que, Inc. v. Luu, 150 Cal.App.4th 400, 414 (2007) ("The duty of loyalty is breached, and the breach may give rise to a cause of action in the employer, when the employee takes action which is inimical to the best interests of the employer.") (internal quotation marks and citation omitted).

Bryant also owed a fiduciary duty to Mattel by virtue of the language set forth in ¶ 1(a) of the Inventions Agreement. Id. ("The value of the Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust."). Under California law, a confidential relationship that gives rise to a fiduciary duty is created "where a confidence is reposed by one person in the integrity of another, and . . . the party in whom the confidence is reposed . . . voluntarily accepts or assumes to accept the confidence . . . ." City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1050-51 (N.D. Cal. 2002). The Inventions Agreement imposed such a duty on Bryant.

Initials of Deputy Clerk:  jh

EXHIBIT  C
PAGE  35

At the hearing on this matter, counsel contended that a required element for imposing a
fiduciary duty -- that the party with the duty be in a superior position to the party to whom the duty
is owed -- was missing.  That element is described as follows: "[T]he essence of a fiduciary or
confidential relationship is that the parties do not deal on equal terms, because the person in
whom trust and confidence is reposed and who accepts that trust and confidence is in a superior
position to exert influence over the dependent party."  City Solutions, Inc. v. Clear Channel
Communications, Inc., 201 F.Supp.2d 1048, 1050 (N.D. Cal. 2002) (internal quotation marks and
citation omitted).  The "superior position" to which California courts refer in this context is not
superior bargaining power -- a position on which Mattel would apparently have the edge -- but
rather it refers to a superior position vis-à-vis the duty imposed.  Here, because the duty imposed
upon Bryant was essentially to police his own actions by maintaining Mattel's confidentiality and
communicating his own "inventions" to Mattel, Bryant was "in a superior position to exert unique
influence over" Mattel because he was in the best position, arguably the only one in a position, to
know of and police his actions.

As with the duty of loyalty, the undisputed facts establish that Bryant breached his fiduciary
duty to communicate his inventions to Mattel when, rather than doing so, he secretly entered into
a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion
dolls to be marketed in direct competition with Mattel's products.

Accordingly, the Court grants Mattel's motion for summary judgment on the issues of the
existence and breach of the duty of loyalty.  The Court grants Mattel's motion for summary
judgment and denies Bryant's motion for summary judgment on the issue of the existence and
breach of a fiduciary duty.

In its motion, MGA argued that there can be no liability for aiding and abetting a breach of
fiduciary duty in the absence of a fiduciary duty.  Because the Court has rejected this argument,
the Court denies MGA's motion for summary judgment on this issue.

### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

MGA moved for summary judgment as to Mattel's claim for intentional interference with
contractual relations.

The elements of a claim for intentional interference with contractual relations are stated as
(1) a valid contract between a plaintiff and a third party; (2) the defendant's knowledge of the
contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the
contractual relationship; (4) actual breach or disruption of the contractual relationship; and
(5) resulting damage.  Family Home & Finance Center, Inc. v. Federal Home Loan Mortg. Corp.,
461 F.Supp.2d 1188, 1193 (C.D. Cal. 2006) (citing Pac. Gas & Elec. Co. v. Bear Stearns Co., 50
Cal.3d 1118, 1126 (1990)).

The undisputed facts show that the first, third, and fifth elements are met.  Mattel has
raised a triable issue of fact as to the second.  The fourth element may be resolved after the

EXHIBIT __a__
PAGE __36__

Court's further hearing on the motions for partial summary judgment. The Court therefore defers ruling on this issue.

## UNFAIR COMPETITION

MGA and Bryant's motions are granted in part and denied in part as to Mattel's unfair competition claims.

Mattel's statutory unfair competition claim, brought pursuant to Cal. Bus. & Profs. Code § 17200, survives summary judgment because Mattel has raised a triable issue of fact as to whether MGA tortiously interfered with Bryant and Mattel's contractual relationship and whether MGA engaged in commercial bribery.

However, two bases for this claim are foreclosed at this time. To the extent that the § 17200 claim is based on copyright infringement, it is preempted. To the extent that it is based on unfair conduct, summary judgment in favor of MGA is granted because the articulated unfair conduct does not approximate an antitrust violation that threatens competition. See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 186-87 (1999).

As to Mattel's common law unfair competition claim, summary judgment in favor of MGA and Bryant is granted. This claim is not, as it must be, based on the act of passing off another's goods as one's own. See Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1153 (9th Cir. 2008) (citing Bank of the W. v. Superior Court, 2 Cal.4th 1254 (1992)).

## UNJUST ENRICHMENT

Because Mattel failed to oppose this portion of Bryant's motion, the Court grants Bryant's motion for partial summary judgment on the issue of unjust enrichment.

## AFFIRMATIVE DEFENSES

Mattel seeks summary judgment as to many of the affirmative defenses asserted by the MGA entities and Carter Bryant. Most of these defenses are essentially equitable in nature, and therefore the Court **DEFERS RULING** on them until after trial. Specifically, the Court **DEFERS RULING** on the affirmative defenses of abandonment, acts and omissions of others, acquiescence, consent, estoppel, failure to mitigate, laches, unclean hands, and waiver until after trial.

For the reason set forth above in a separate section, the Court defers ruling on Mattel's motion as to the statute of limitations defense.

The final affirmative defense is based on 17 U.S.C. § 205(d). With this affirmative defense, MGA essentially contends that it is a bona fide purchaser for value of the Bratz copyrights which

MINUTES FORM 90
CIVIL – GEN

Initials of Deputy Clerk: jh

EXHIBIT ___C___
PAGE ___37___

took the rights in good faith and without notice of any prior transfer of the rights therein to Mattel. As the issue is argued by the parties, the Court would be required to determine the legal issue of whether MGA's registration of the copyrights as an "assignment" constitutes "constructive notice" in the manner required to give MGA the protection of 17 U.S.C. § 205(d). In the Court's view, this is a complex legal issue that is not thoroughly addressed by the parties' briefs. Moreover, the Court notes that a trial on the merits is likely to resolve the less complex factual issue of whether MGA acted in good faith and without notice of an earlier assignment of rights. Accordingly, the Court **DEFERS RULING** on this issue until after the Phase 1 trial.

\* \* \* \*

The Court will consider a number of remaining issues at the further hearing on these motions, set for May 19, 2008. Specifically, referencing the parties' Notices of Motion, the Court will consider the following issues:

Mattel's motion: Issue (2)(c), whether there is a factual dispute regarding the timing of certain drawings and a dummy model; issue (3), whether the first-generation Bratz dolls are substantially similar to seventeen drawings and a doll sculpt drawing or blueprint created by Bryant and whether those are original, protectable works of expression; issue (5), whether MGA and Larian are liable for aiding and abetting Bryant's breaches of the duty of loyalty and fiduciary duty; and issue (6)(a) whether Mattel is entitled to summary judgment as to the affirmative defense of statute of limitations.

Bryant's motion: Whether Bryant is entitled to summary judgment as to Mattel's claim for copyright infringement; whether Bryant is entitled to summary judgment as to Mattel's breach of contract claim; and whether Bryant is entitled to summary judgment on any portion of his claim for declaratory relief.

MGA's motion: Whether Mattel's claims are time barred; and whether the fourth element of intentional interference with contractual relations -- actual breach or disruption of the contractual relationship -- can be resolved on summary judgment.

Except for any updates from any party regarding the outstanding discovery matters that may be relevant to the statute of limitations, these issues are considered by the Court to be fully briefed. Any supplemental briefs by the parties on any issue other than the statute of limitations will be stricken by the Court. Any supplemental filings regarding the statute of limitations issue shall be limited to addressing the status of outstanding discovery issues and/or recently produced evidence.

**IT IS SO ORDERED.**

EXHIBIT ___C___
PAGE ___38___

## NOTICE PARTY SERVICE LIST

Case No.  CV 04-09049 SGL(RNBx)   Case Title  Carter Bryant v. Mattel, Inc.

Title of Document  Minute Order of April 25, 2008

| | |
|---|---|
| Atty Sttlmnt Officer Panel Coordinator | US Attorneys Office - Civil Division -L.A. |
| BAP (Bankruptcy Appellate Panel) | US Attorneys Office - Civil Division - S.A. |
| Beck, Michael J (Clerk, MDL Panel) | US Attorneys Office - Criminal Division -L.A. |
| BOP (Bureau of Prisons) | US Attorneys Office - Criminal Division -S.A. |
| CA St Pub Defender (Calif. State PD) | US Bankruptcy Court |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) | US Marshal Service - Los Angeles (USMLA) |
| Case Asgmt Admin (Case Assignment Administrator) | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| Catterson, Cathy (9th Circuit Court of Appeal) | US Probation Office (USPO) |
| Chief Deputy Admin | US Trustee's Office |
| Chief Deputy Ops | Warden, San Quentin State Prison, CA |
| Clerk of Court | |
| Death Penalty H/C (Law Clerks) | |
| Dep In Chg E Div | |
| Dep In Chg So Div | |
| Federal Public Defender | |
| Fiscal Section | |
| Intake Section, Criminal LA | |
| Intake Section, Criminal SA | |
| Intake Supervisor, Civil | |
| PIA Clerk - Los Angeles (PIALA) | |
| PIA Clerk - Riverside (PIAED) | |
| PIA Clerk - Santa Ana (PIASA) | |
| PSA - Los Angeles (PSALA) | |
| PSA - Riverside (PSAED) | |
| PSA - Santa Ana (PSASA) | |
| Schnack, Randall (CJA Supervising Attorney) | |
| Statistics Clerk | |

✓ **ADD NEW NOTICE PARTY**
(If sending by fax, mailing address must also be provided)

Name: Ambassador Pierre-Richard Prosper

Firm:

Address (include suite or floor): P.O. Box 581103

Salt Lake City, UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

* For CIVIL cases only

| *JUDGE / MAGISTRATE JUDGE (list below):* |
|---|
| |
| |
| |
| |

Initials of Deputy Clerk jh

EXHIBIT __C__
PAGE __39__

Case 2:04-cv-09049-SGL-RNB    Document 3286    Filed 04/25/2008    Page 11 of 11

## NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)    **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**  Minute Order of April 25, 2008

| | |
|---|---|
| Atty Sttlmnt Officer Panel Coordinator | US Attorneys Office - Civil Division -L.A. |
| BAP (Bankruptcy Appellate Panel) | US Attorneys Office - Civil Division - S.A. |
| Beck, Michael J (Clerk, MDL Panel) | US Attorneys Office - Criminal Division -L.A. |
| BOP (Bureau of Prisons) | US Attorneys Office - Criminal Division -S.A. |
| CA St Pub Defender (Calif. State PD) | US Bankruptcy Court |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) | US Marshal Service - Los Angeles (USMLA) |
| Case Asgmt Admin (Case Assignment Administrator) | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| Catterson, Cathy (9ᵗʰ Circuit Court of Appeal) | US Probation Office (USPO) |
| Chief Deputy Admin | US Trustee's Office |
| Chief Deputy Ops | Warden, San Quentin State Prison, CA |
| Clerk of Court | |

| |
|---|
| ✓  **ADD NEW NOTICE PARTY** (if sending by fax, mailing address must also be provided) |
| Name: Hon. Edward A. Infante (Ret.) |
| Firm: |
| Address (Include suite or floor):  Two Embarcadero Center, Suite 1500, San Francisco, CA 94111 |
| *E-mail: |
| *Fax No.: |
| * For CIVIL cases only |

| | |
|---|---|
| Death Penalty H/C (Law Clerks) | |
| Dep In Chg E Div | |
| Dep In Chg So Div | |
| Federal Public Defender | |
| Fiscal Section | |
| Intake Section, Criminal LA | |
| Intake Section, Criminal SA | |
| Intake Supervisor, Civil | |
| PIA Clerk - Los Angeles (PIALA) | |
| PIA Clerk - Riverside (PIAED) | |
| PIA Clerk - Santa Ana (PIASA) | |
| PSA - Los Angeles (PSALA) | |
| PSA - Riverside (PSAED) | |
| PSA - Santa Ana (PSASA) | |
| Schnack, Randall (CJA Supervising Attorney) | |
| Statistics Clerk | |

| *JUDGE / MAGISTRATE JUDGE (list below):* |
|---|
| |
| |
| |
| |

Initials of Deputy Clerk jh

EXHIBIT _C_
PAGE _40_



# Exhibit D

EXHIBIT __D__
PAGE __41__



# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it engages in an ongoing process of developing and acquiring valuable Proprietary Information (as defined below), including information that is highly sensitive and confidential. The value to and interest of the Company in its Proprietary Information depends on it remaining confidential. The Company sometimes reveals to employees certain of its Proprietary Information in order for the Company to conduct its business. In order to obtain such Proprietary Information, I agree that I will not conflict with the Company's development of its proprietary rights and the business of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree as follows:

## 1. Provisions Related to Trade Secrets

(a) I acknowledge that in the course of my employment with the Company I have had and will continue to have access to and become acquainted with valuable Proprietary Information (as defined below, including information that I may develop or discover in the course of my employment). The value and confidentiality of the Company's Proprietary Information depends on it remaining confidential. The Company therefore requires, and I hereby agree, to maintain the confidentiality of, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, patterns, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and is the subject of reasonable efforts by the Company to maintain its secrecy, licensees, licensors, distributors and other persons with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company, for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine-readable and other material (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

## 2. Ownership of Inventions

(a) I agree to communicate to the Company promptly and fully and to participate (at the Company's expense) in the protection of all Inventions (whether or not patentable) that I may solely or jointly conceive, discover, invent or develop during my employment by the Company. Thereby assign to the Company and/or its designee without further compensation all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its designee at the Company's expense to obtain, maintain and enforce patents, copyrights and other forms of protection for such Inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any Invention does not apply to an Invention which qualifies under the provision of Section 2870 of the California Labor Code. This section provides that the requirement to assign "shall not apply to an Invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those Inventions that either (i) relate at the time of conception or reduction to practice of the Invention to the employer's business, or actual or demonstrably anticipated research or development of the employer, or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an Invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agents and attorneys-in-fact to act for and on my behalf and instead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

## 3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will not comply with the California Labor Code, that as it may be restrained from time to time, I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

## 4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any other breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one clause will in no way impair the enforceability of any other provision. If any provision is held to be unreasonable, arbitrary or against public policy, such provision will be considered to be valid only to the extent to the extent necessary to make it enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to any continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This Agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all prior agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the date of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

Employee Signature

Employee Name (print)  CARTER H. BRYANT

Date  01/04/99

Signature

Name of Witness (print)  FREDA NELSONS

Date

M 0001596

DEPOSITION EXHIBIT

EXHIBIT 2
PAGE 42

EX 25-0001

# Exhibit E

EXHIBIT __E__
PAGE __43__



FILED
CLERK, U.S. DISTRICT COURT

JUL 10 2008

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION         BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MATTEL, INC.,<br><br>       Plaintiff,<br><br>   vs.<br><br>MGA ENTERTAINMENT, INC.,<br><br>       Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>**FINAL JURY INSTRUCTIONS AS GIVEN** |

EXHIBIT ___E___
PAGE ___44___

## JURY INSTRUCTION NO. 1

Members of the Jury: Now that you have heard all of the evidence and will soon hear the arguments of the attorneys, it is my duty to instruct you as to the law of the case.

A copy of these instructions will be sent with you to the jury room when you deliberate.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

EXHIBIT ___E___
PAGE ___45___

-1-                Case No. Case No. CV 04-9049 SGL (RNBx)
                   JOINT PROPOSED JURY INSTRUCTIONS

## JURY INSTRUCTION NO. 2

When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

In criminal trials, the prosecution must prove that the defendant is guilty beyond a reasonable doubt. But in civil trials, such as this one, the party who is required to prove something by a preponderance of the evidence need prove only that it is more likely to be true than not true.

EXHIBIT __E__
PAGE __46__

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

## JURY INSTRUCTION NO. 3

The law defines cause in its own particular way.  A cause of injury, damage, loss or harm is something that is a substantial factor in bringing about an injury, damage, loss or harm.

A "substantial factor" is something which is more than a slight, trivial, negligible, or theoretical factor in producing a particular result.

EXHIBIT ___ E

PAGE ___ 47



Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

## JURY INSTRUCTION NO. 4

You should decide the case as to each defendant separately.  Unless otherwise stated, the instructions apply to all parties.

EXHIBIT ___E___
PAGE ___48___

-4-

## JURY INSTRUCTION NO. 5

1

2

3    The evidence you are to consider in deciding what the facts are consists of:

4

5    (1)  The sworn testimony of any witness;

6

7    (2)  The exhibits which are received into evidence; and

8

9    (3)  Any facts to which the lawyers have agreed.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT  E
PAGE  49

## JURY INSTRUCTION NO. 6

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you.

(1)    Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)    Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3)    Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4)    Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

EXHIBIT ___ E

PAGE ___ 50

-6-

## JURY INSTRUCTION NO. 7

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

EXHIBIT __E__
PAGE __51__

## JURY INSTRUCTION NO. 8

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

EXHIBIT ___ E
PAGE ___ 52

-8-

1
2                        **JURY INSTRUCTION NO. 9**
3
4          If weaker and less satisfactory evidence is offered by a party, when it was
5    within that party's ability to produce stronger and more satisfactory evidence, the
6    evidence offered should be viewed with distrust.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26                                              EXHIBIT   E
27                                              PAGE   53
28

## JURY INSTRUCTION NO. 10

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

    (1)    the opportunity and ability of the witness to see or hear or know the things testified to;

    (2)    the witness's memory;

    (3)    the witness's manner while testifying;

    (4)    the witness's interest in the outcome of the case and any bias or prejudice;

    (5)    whether other evidence contradicted the witness's testimony;

    (6)    the reasonableness of the witness's testimony in light of all the evidence; and

    (7)    any other factors that bear on believability.

EXHIBIT E
PAGE 54

1    The weight of the evidence as to a fact does not necessarily depend on the

2    number of witnesses who testify about it.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT  E
PAGE ___ 55

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

## JURY INSTRUCTION NO. 11

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury was present in the courtroom, or by calling a recess. Please understand that while you were waiting, we were working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we have done what we could to keep the number and length of these conferences to a minimum. I did not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

**EXHIBIT** E
**PAGE** 56

## JURY INSTRUCTION NO. 12

1

2

3      The parties have agreed to certain facts to be placed in evidence.  You

4 should therefore treat these facts as having been proved.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT ___ E

PAGE ___ 57

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

## JURY INSTRUCTION NO. 13

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The depositions of a number of witnesses were taken in this case. You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

EXHIBIT E

PAGE 58

-14-

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

## JURY INSTRUCTION NO. 14

The evidence that a witness has lied under oath on a prior occasion or given inconsistent testimony under oath may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

EXHIBIT _E_

PAGE _59_

-15-                Case No. Case No. CV 04-9049 SGL (RNBx)
                    JOINT PROPOSED JURY INSTRUCTIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### JURY INSTRUCTION NO. 15

Evidence has been presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers have been given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand by the party that responded to the written interrogatories.

EXHIBIT E

PAGE 60

## JURY INSTRUCTION NO. 16

1
2
3    Evidence has been presented to you in the form of admissions of one of the

4    parties to written requests submitted by the other side.  These answers have been

5    given in writing and under oath, before the actual trial, in response to requests that

6    were submitted in writing under established court procedures.  The matters

7    admitted are deemed conclusively established as to the party that made the

8    admission.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT _5_
PAGE _61_

-17-

1

## JURY INSTRUCTION NO. 17

2

3      Some witnesses, because of education or experience, are permitted to state

4    opinions and the reasons for those opinions.

5

6      Opinion testimony should be judged just like any other testimony.  You may

7    accept it or reject it, and give it as much weight as you think it deserves,

8    considering the witness's education and experience, the reasons given for the

9    opinion, and all the other evidence in the case.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                                         EXHIBIT  E

27                                                         PAGE  62

28

1

2 ## <u>JURY INSTRUCTION NO. 18</u>

3

4        Certain charts and summaries not received in evidence have been shown to

5 you in order to help explain the contents of books, records, documents, or other

6 evidence in the case.  They are not themselves evidence or proof of any facts.  If

7 they do not correctly reflect the facts or figures shown by the evidence in the case,

8 you should disregard these charts and summaries and determine the facts from the

9 underlying evidence.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                        EXHIBIT _E_

27                                        PAGE __63_

28

-19-                Case No. Case No. CV 04-9049 SGL (RNBx)
                    JOINT PROPOSED JURY INSTRUCTIONS

1
2                        ## JURY INSTRUCTION NO. 19
3
4          Certain charts and summaries have been received into evidence to illustrate
5    information brought out in the trial.  Charts and summaries are only as good as the
6    underlying evidence that supports them.  You should, therefore, give them only
7    such weight as you think the underlying evidence deserves.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26                                              EXHIBIT __E__
27                                              PAGE ___64___
28
                                    -20-        Case No. Case No. CV 04-9049 SGL (RNBx)
                                                JOINT PROPOSED JURY INSTRUCTIONS

## JURY INSTRUCTION NO. 20

1
2
3          All parties are equal before the law and a corporation is entitled to the same
4    fair and conscientious consideration by you as any party.
5
6          Under the law, a corporation is considered to be a person.  It can only act
7    through its employees, agents, directors, or officers.  Therefore, a corporation is
8    responsible for the acts of its employees, agents, directors, and officers performed
9    within the scope of authority.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT __E__
PAGE __65__

-21-                Case No. Case No. CV 04-9049 SGL (RNBx)
                    JOINT PROPOSED JURY INSTRUCTIONS

### JURY INSTRUCTION NO. 21

1
2
3
In its first claim, Mattel contends that it has certain rights to all Bratz-

4
related ideas, concepts, drawings, designs, and other works "conceived or reduced

5
6
to practice," that is, created, by Carter Bryant, alone or jointly with others, while he

7
was employed by Mattel, including Bratz drawings and the idea for the name

8
"Bratz."

9
10
11
MGA and Isaac Larian deny Mattel's contention.

12
13
14
Mattel's claim is based on a contract between Carter Bryant and Mattel

15
called the "Employee Confidential Information and Inventions Agreement" or

16
simply the "Inventions Agreement." As a matter of law, the Inventions Agreement

17
is a valid and enforceable agreement.

18
19
20
Section 2(a) of the Inventions Agreement provides:

21
22
23
"I agree to communicate to the Company as promptly and fully as

24
practicable all inventions [as defined below] conceived or reduced to practice by

25
26
me (alone or jointly [with] others) at any time during my employment by the

27
Company. I hereby assign to the Company and/or its nominees all my right, title

28

-22-

EXHIBIT E
PAGE 66



1  and interest in such inventions, and all my right, title and interest in any patents,

2  copyrights, patent applications or copyright applications based thereon. I will

3  assist the Company and/or its nominees (without charge but at no expense to me)

4

5  at any time in every proper way to obtain for its and/or their own benefit, patents,

6  and copyrights for all such inventions anywhere in the world and to enforce its

7  and/or their rights in legal proceedings."

8

9

10     The Inventions Agreement defines the term "inventions" as follows:

11

12     "[T]he term 'inventions' includes, but is not limited to, all discoveries,

13  improvements, processes, developments, designs, know-how, data computer programs

14  and formulae, whether patentable or unpatentable."

15

16     To prevail on its first claim, Mattel must show, by the preponderance of the

17  evidence, that any particular Bratz-related idea, concept, drawing, design or work was

18  "conceived or reduced to practice," that is, created, by Mr. Bryant, alone or jointly

19  with others, while employed by Mattel.

20

21     It is for you to decide what, if any, Bratz-related works were created by Mr.

22  Bryant, alone or jointly with others, while he was employed by Mattel.

23

24

25

26

27

28

EXHIBIT _____ E

PAGE _____ 67

## JURY INSTRUCTION NO. 22

In its second claim, Mattel contends that that MGA and Isaac Larian intentionally interfered with the Inventions Agreement between Mattel and Carter Bryant. To establish this claim, Mattel must prove the following by a preponderance of the evidence:

1.      That there was a contract or contracts between Mattel and Carter Bryant;

2.      That MGA and/or Mr. Larian knew of the contract;

3.      That MGA and/or Mr. Larian intended to disrupt the performance of this contract;

4.      That the conduct of MGA and/or Mr. Larian prevented performance or made performance more difficult;

5.      That Mattel was harmed in some way; and

EXHIBIT __E__
PAGE __68__

1      6.      That the conduct of MGA and/or Mr. Larian was a substantial factor

2   in causing Mattel's harm.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-25-                     Case No. Case No. CV 04-9049 SGL (RNBx)
                         JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT     E
PAGE     69

1

2                    <u>**JURY INSTRUCTION NO. 23**</u>

3

4          As a matter of law, there was a valid contract between Mattel and Mr.

5

6    Bryant, namely the Inventions Agreement.

7

8          As a matter of law, Mr. Bryant directly competed with Mattel by entering

9

10   into a contract with MGA, Mattel's competitor, to produce a competing product

11   while he was still employed by Mattel.  Whether the remaining requirements of

12
     Mattel's claim for intentional interference with contractual relations have been
13

14   satisfied or not is for you to decide.

15

16         It is also a matter of law that MGA and/or Isaac Larian's mere offering of

17
     employment to Carter Bryant would not be sufficient, by itself, to establish an
18

19   intentional interference with the contract between Mattel and Mr. Bryant.

20

21

22

23

24

25

26

27

28

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT _E_

PAGE ___70___

1

2

## JURY INSTRUCTION NO. 24

3

In deciding whether MGA or Isaac Larian acted intentionally, you may

4

consider whether they knew that a disruption in the performance of a contract or

5

6   contracts was substantially certain to result from their conduct.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT ___E___

PAGE ___71___

## JURY INSTRUCTION NO. 25

In its third and fourth claims, Mattel contends that MGA and Isaac Larian aided and abetted Carter Bryant's breaches of (1) his fiduciary duty to Mattel and (2) his duty of loyalty to Mattel.  To establish that MGA and/or Mr. Larian are liable for aiding and abetting breaches of fiduciary duty or breach of the duty of loyalty, Mattel must prove the following by a preponderance of the evidence:

1.      Mr. Bryant's conduct constituted a breach of such duty or duties;

2.      MGA and/or Mr. Larian knew that Mr. Bryant's conduct constituted a breach of duty or duties; and

3.      MGA and/or Mr. Larian gave substantial assistance or encouragement to Mr. Bryant to breach his duty or duties.

EXHIBIT _E_

PAGE _72_

## JURY INSTRUCTION NO. 26

To establish that Mr. Bryant breached his fiduciary duty to Mattel, Mattel must prove the following by a preponderance of the evidence:

1.   That Mr. Bryant owed a fiduciary duty to Mattel;

2.   That Mr. Bryant breached his fiduciary duty to Mattel;

3.   That Mattel did not give informed consent to Mr. Bryant's conduct;

4.   That Mattel was harmed in some way; and

5.   That Mr. Bryant's conduct was a substantial factor in causing Mattel's harm.

Once a party assumes a fiduciary duty to another, that party is obligated to act on behalf of the other party, to hold the interest of the other paramount over his own interests, and to take no action that would further his interests over the other person's interest.

-29-

EXHIBIT ___E___
PAGE ___73___

## JURY INSTRUCTION NO. 27

To establish that Mr. Bryant breached his duty of loyalty to Mattel, Mattel must prove the following by a preponderance of the evidence:

1.     That Mr. Bryant was Mattel's employee;

2.     That Mr. Bryant knowingly acted against Mattel's interests while he was employed by Mattel;

3.     That Mattel did not give informed consent to Mr. Bryant's conduct;

4.     That Mattel was harmed in some way; and

5.     That Mr. Bryant's conduct was a substantial factor in causing Mattel's harm.

An employee owes his or her employer a duty of loyalty. The scope of the employee's duty varies with the nature of the employee's relationship with his employer.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT  E
PAGE  74

## JURY INSTRUCTION NO. 28

1

2      As a matter of law, Carter Bryant owed both a fiduciary duty and duty of

3   loyalty to Mattel.

4

5

6      Mr. Bryant's fiduciary duty to Mattel is predicated upon paragraph 1(a) of

7   the Inventions Agreement and is related to Mr. Bryant's obligation to keep

8   Proprietary Information confidential.

9

10

11     Section 1(a) of the Inventions Agreement provides:

12

13

14     "I acknowledge that the Company possesses and will continue to develop

15   and acquire valuable Proprietary Information (as defined below), including

16   information that I may develop or discover as a result of my employment with the

17

18   Company. The value of that Proprietary information depends on it remaining

19   confidential. The Company depends on me to maintain that confidentiality, and I

20   accept that position of trust."

21

22

23     The Inventions Agreement defines the term "Proprietary Information" as

24   follows:

25

26

27

28

EXHIBIT  E
PAGE  75

Case 2:04-cv-09049-SGL-RNB   Document 4115   Filed 07/10/2008   Page 33 of 37

1    "'Proprietary Information' means any information (including formula,

2    pattern, compilation, device, method, technique or process) that derives

3    independent economic value, actual or potential, from not being generally known

4

5    to the public or to other persons who can obtain economic value from its disclosure

6    or use, and includes information on the Company, its customers, suppliers, joint

7    ventures, licensors, licensees, distributors, and other persons and entities with

8

9    whom the Company does business."

10

11    As a matter of law, Mr. Bryant breached his duty of loyalty to Mattel when

12

13    he entered into a contract with MGA, Mattel's competitor, while still employed by

14    Mattel, to produce a line of fashion dolls to be marketed in direct competition with

15    Mattel's products.

16

17

18    At the same time, merely seeking employment from a competitor, and a

19    failure to notify an employer of a decision to seek new employment until a

20    decision is final, does not constitute a breach of duty of loyalty.

21

22

23

24

25

26

27

28

EXHIBIT    E
PAGE    76

## JURY INSTRUCTION NO. 29

In its final claim, Mattel contends that MGA, MGA Entertainment (HK) Limited, and Isaac Larian wrongfully exercised control over Mattel's property, including tangible Bratz-related works such as Mr. Bryant's drawings.  To establish this claim for conversion, Mattel must prove the following by a preponderance of the evidence:

1.      That tangible property was "conceived or reduced to practice" --- that is, created --- by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000);

2.      That any of the defendants intentionally took possession of such property for a significant period of time;

3.      That Mattel did not consent;

4.      That Mattel was harmed; and

5.      That any one of the defendant's conduct was a substantial factor in causing Mattel's harm..

EXHIBIT  E
PAGE   77

1
2
3

## JURY INSTRUCTION NO. 30

4
5
6
7
8

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

9
10
11

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

12
13
14
15

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

16
17
18

Do not hesitate to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.

19
20
21
22
23

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

24
25
26
27
28

EXHIBIT  E
PAGE   78

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURY INSTRUCTION NO. 31

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

-35-

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT E
PAGE 79

## JURY INSTRUCTION NO. 32

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

-36-

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT E
PAGE 80