QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
  Jon D. Corey (Bar No. 185066)
  joncorey@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with CV 04-09059 CV 05-2727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **[PUBLIC REDACTED] MATTEL, INC.'S NOTICE OF MOTION AND MOTION FOR PERMANENT INJUNCTION;** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; AND** |
| | **DECLARATIONS OF DIANE C. HUTNYAN, B. DYLAN PROCTOR, KENNETH HOLLANDER, AND FRANK KEISER** |
| | Date: November 10, 2008 Time: 1:00 p.m. Place: Courtroom 1 |
| | **Phase 1(a):** Trial Date: May 27, 2008 |
| | **Phase 1(b):** Trial Date: July 23, 2008 |

07209/2649465.3

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 |      PLEASE TAKE NOTICE that at 1:00 p.m. on November 10, 2008, or as soon
3 | thereafter as counsel may be heard, in Courtroom 1 of the above-captioned Court
4 | located at 3470 Twelfth Street, Riverside, California, before the Honorable Stephen
5 | G. Larson, Mattel, Inc. ("Mattel") will, and hereby does, move the above-entitled
6 | Court for an order against MGA Entertainment Inc., MGA Entertainment (HK) Ltd.,
7 | Isaac Larian and Carter Bryant (collectively, "Defendants"), along with their
8 | respective officers, directors, principals, agents, representatives, servants,
9 | employees, affiliates, successors or assigns, and any person or entity acting on their
10 | behalf or in concert or participation with them, enjoining them and providing other
11 | relief, as follows:

12 |      1.    Permanently enjoining MGA, MGA Hong Kong, Larian, and Bryant,
13 | along with their respective officers, directors, principals, agents, representatives,
14 | servants, employees, affiliates, successors or assigns, and any person or entity acting
15 | on their behalf or in concert or participation with them, from manufacturing,
16 | procuring the manufacture of, making, producing, reproducing, copying,
17 | distributing, transferring, displaying, marketing, advertising, shipping, importing,
18 | exporting, licensing, offering to license, selling or offering to sell: (a) any doll,
19 | product or other item that embodies or depicts in whole or in part, or incorporates or
20 | uses in any manner, the head and/or body sculpt shown in Exhibit 1 to the Order
21 | (sometimes known as the "core Bratz fashion doll production sculpt;(b) any doll,
22 | product or other item that embodies or depicts in whole or in part, or incorporates or
23 | uses in any manner, the head and/or body sculpt shown in Exhibit 2 (sometimes
24 | known as the "Bratz Movie sculpt"); (c) any doll shown in Exhibits 3 through 7,
25 | inclusive; (d) any product, packaging or other item that embodies or depicts in
26 | whole or in part, or incorporates or uses in any manner, the artwork shown on the
27 | doll packaging located in Exhibit 3 at pp. 72-82, 148-154, 173-175, 185, 187, 189,
28 | 224-225, 240-243, 252-254, 273-282, 287-289, 296, 336-339, 341, 351, and 362-

1  363; (e) any doll, product, packaging or other item that embodies or depicts in whole
2  or in part, or incorporates or uses in any manner, any of the Jade, Cloe, Yasmin and
3  Sasha Bratz characters, including without limitation the items shown in Exhibits 4
4  and 6, inclusive; (f) any marketing or advertising materials that embody or depict in
5  whole or in part, or incorporate or use in any manner, any of the dolls, products,
6  items or other matter described in paragraphs (a) through (e) above, including
7  without limitation the marketing or advertising materials shown in Exhibits 8
8  (screen captures from television commercials) to 9 (print advertisements), inclusive;
9  (g) any doll that counterfeits, copies, is substantially similar to or otherwise utilizes
10  the combination of features of Mattel's copyrighted designs, specifically, (i)
11  oversized eyes; (ii) diminutive nose; (iii) oversized or pouty lips; (iv) head that is
12  oversized in proportion to body; and (iv) feet and/or shoes that are oversized in
13  proportion to body; (h) any doll, product, packaging, advertising or other item or
14  materials that counterfeits, copies or is substantially similar to Mattel's copyright
15  protected head and/or body sculpt shown in Exhibit 10 (TX1136/VAu 964-321),
16  which is incorporated herein by this reference, including without limitation the Bratz
17  fashion dolls known as Cloe, Yasmin, Sasha, Jade, Ciara, Dana, Diona, Felicia,
18  Fianna, Katia, Kiana, Krysta, Kumi, Lana, Leah, Lela, Liliana, Lilee, Lina, Maribel,
19  May Lin, Meygan, Nevra, Nevaeh, Nona, Nora, Oriana, Peyton, Phoebe, Rina,
20  Roxxi, Sharidan, Sierrna, Sorya, Sunya, Tess, Tiana, Trinity, Vinessa, and
21  Valentina, and any and all other dolls employing a sculpt which is substantially
22  similar to Exhibit 10, including without limitation those shown in Exhibits 11
23  through 21, inclusive; (i) any doll, product, packaging or other item that embodies or
24  depicts in whole or in part, or incorporates or uses in any manner, any of the Jade,
25  Cloe, Yasmin and Sasha Bratz characters depicted or described in Exhibits 22
26  through 37, inclusive, and any doll, product, packaging, advertising or other item or
27  materials that counterfeit, copy or are substantially similar to Mattel's Bratz-related
28

1 copyrighted works, including without limitation such works in Exhibits 38 through
2 49, inclusive.

3     2.     Permanently enjoining MGA, MGA Hong Kong, Larian, and Bryant,
4 along with their respective officers, directors, principals, agents, representatives,
5 servants, employees, affiliates, successors or assigns, and any person or entity acting
6 on their behalf or in concert or participation with them, from engaging in any of the
7 following acts: (a) copying, imitating, selling, offering to sell, marketing,
8 distributing, importing, displaying or making any use of the copyrighted works
9 shown in Exhibits 22 through 49, inclusive, which works are owned by Mattel; (b)
10 engaging in any and all further acts of infringement of the copyrighted works shown
11 in Exhibits 22 through 49, inclusive, which works are owned by Mattel; (c) asserting
12 any ownership of rights or any right, title or interest in  the copyrighted works
13 shown in Exhibits 22 through 49, inclusive, which works are owned by Mattel; (d)
14 transferring, disposing of, destroying, spoliating or secreting any dolls, products,
15 documents, records, recordings or materials, whether in electronic or non-electronic
16 form, that evidence, relate to or pertain to any of the matters that are the subject of
17 the Injunction, including without limitation any plates, molds, matrices, and other
18 means of making or manufacturing such dolls, products, packaging, items or other
19 materials that are the subject of the Injunction; (e) assisting, aiding or abetting any
20 other entity or person in engaging in or performing any of the activities referred to
21 in paragraphs 1(a) through 1(i), inclusive, and/or in paragraphs 2(a) through 2(h),
22 inclusive.

23     3.     Requiring Defendants to deliver to Mattel's counsel for impoundment
24 all dolls, products, product packaging, labels, signs, prints, dies, wrappers,
25 receptacles and advertisements, in the direct or indirect possession, custody or
26 control of Defendants, their officers, directors, principals, agents, servants,
27 employees, successors or assigns, or any person or entity acting on their behalf or in
28 concert or participation with them, that are the subject of the Injunction.

1    4.    Requiring Defendants to (a) procure the return, and to withdraw and
2  recall, from any and all channels of trade and distribution, including without
3  limitation from retail shelves and from on-line retailers, all dolls and doll products
4  that are the subject of the Injunction; and (b) notify each and every retailer,
5  distributor, wholesaler, importer, exporter, customer, licensee and any other person
6  or entity to or through whom Defendants have shipped, transferred, imported,
7  exported or sold any infringing doll, product or other item of the terms of the Court's
8  Order and of their obligation to return infringing dolls and doll products to
9  effectuate their recall and withdrawal from the market

10    5.    Requiring Defendants to disclose information regarding the sales of
11  infringing products, including without limitation information regarding the numbers
12  of units sold, the identities of their purchasers and quantities acquired, and the
13  location of inventory, and to submit a written report setting forth the actions taken to
14  comply with the terms herein pursuant to 15 U.S.C. § 1116(a).

15    6.    Pursuant to Federal Rule of Civil Procedure 53, appointing a special
16  master to supervise implementation of the requirements of the Injunction.

17    This Motion is brought pursuant to the Court's prior rulings and the jury
18  verdicts rendered at trial of this action, 17 U.S.C. § 502(a) and 503(a), Fed. R. Civ.
19  P. 53 and 64(b), and principles of equity.

20
21
22
23
24
25
26
27
28

07209/2649465.3

- 4 -

1    This Motion is based on this Notice of Motion and Motion, the Declarations

2    of Diane C. Hutnyan, B. Dylan Proctor, Kenneth Hollander, and Frank Keiser filed

3    concurrently herewith, the Proposed Order Granting Mattel, Inc.'s Motion for

4    Permanent Injunction lodged herewith, the notice of lodging and application to

5    lodge filed herewith, the trial record and all other records and files of this Court, all

6    matters of which the Court may take judicial notice, and any other evidence and

7    argument as may be presented at or before the hearing on the Motion.

8    DATED:  September 29, 2008        QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
9

10

11   By  _Michael T. Zeller / BDP_____

12       Michael T. Zeller
         Attorneys for Mattel, Inc.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

209/264 9465.3

1

## TABLE OF CONTENTS

2

**Page**

3

PRELIMINARY STATEMENT ................................................................. 1

4

ARGUMENT ...................................................................................... 2

5

6  I.   MGA IS ENGAGED IN ONGOING INFRINGEMENT OF MATTEL'S
      COPYRIGHTS ............................................................................ 2

7

8      A.   Each and Every Bratz Doll is Infringing ................................. 2

9           1.   All Core Bratz Fashion Dolls Use The Same Sculpt ..................... 3

10          2.   The Core Bratz Doll Sculpt Is Infringing ........................... 4

11               a.   The Bratz Head and Face Sculpt Is Substantially
                     Similar To Protectable Elements Of Mattel's Works .......... 5

12

13               b.   The Bratz Body Sculpt Is Substantially Similar To
                     Protectable Elements In Mattel's Works.......................... 6

14

15          3.   MGA's Bratz Dolls Encompass a Unique Combination of
                 Elements Protected by Copyright Law ........................... 7

16

17          4.   MGA's Express Admissions Establish Infringement..................... 8

18          5.   MGA's Infringement Suits Establish Its Own Infringement ....... 10

19     B.   Each and Every Identifiable Representation of the Original Bratz
           Characters Is Also Infringing ................................................ 12

20

21     C.   MGA's Bratz-Based Advertising And Licensing Infringe Mattel's
           Copyrights ........................................................................ 14

22

23  II.  MATTEL IS ENTITLED TO A PERMANENT INJUNCTION .................... 15

24     A.   Mattel Will Suffer Irreparable Harm Absent An Injunction................. 16

25          1.   Irreparable Injury is Presumed..................................... 16

26          2.   Even Without Any Presumption, Mattel is Irreparably
                 Harmed.......................................................... 17

27

28

a.   MGA's Interference With Mattel's Exclusive Rights
Constitutes Irreparable Harm ............................................. 18

b.   Encouraging Third Parties' Interference With
Mattel's Exclusive Rights Constitutes Irreparable
Harm ................................................................................. 20

c.   MGA's Apparent Inability to Pay Also Establishes
Irreparable Harm ............................................................... 21

d.   Mattel's Loss of Market Share Is Irreparable Harm .......... 22

B.   There is No Adequate Legal Remedy ...................................... 24

C.   The Balance of Hardships Favors A Permanent Injunction ................... 25

D.   The Public Interest Favors An Injunction ............................... 25

III.   THE COURT SHOULD GRANT IMPOUNDMENT REMEDIES ................ 26

IV.   THE COURT SHOULD ORDER THE INFRINGING PRODUCTS
WITHDRAWN FROM THE MARKET ............................................. 27

V.   THE COURT SHOULD APPOINT A SPECIAL MASTER TO
MONITOR COMPLIANCE ......................................................... 28

CONCLUSION .................................................................... 30

# TABLE OF AUTHORITIES

**Page**

## Cases

Abbott Labs. v. Andrx Pharms., Inc.,
452 F.3d 1331 (Fed. Cir. 2006) ............................................................. 17

Anderson v. Stallone,
1989 WL 206431 (C.D. Cal. April 25, 1989) ....................................... 12

Arista Records, Inc. v. Kabani,
2004 WL 884445 (N.D. Tex. Apr. 23, 2004) ....................................... 26

BMG Music v. Gonzalez,
430 F.3d 888 (7th Cir. 2005) ............................................................... 18

Cadence Design Sys., Inc. v. Avant! Corp.,
125 F.3d 824 (9th Cir. 1997) ............................................................... 19

Canadian Lumber Trade Alliance,
441 F. Supp. 2d at 1266 ....................................................................... 18

Continental Airlines, Inc. v. Intra Brokers, Inc.,
24 F.3d 1099 (9th Cir. 1994) ............................................................... 24

Cybermedia, Inc. v. Symantec Corp.,
19 F. Supp. 2d 1070 (N.D. Cal. 1998) ................................................. 28

Del Amo v. Baccash,
2008 WL 2780978 (C.D. Cal. Jul. 15, 2008) ....................................... 27

Designer Skin, LLC v. S&L Vitamins, Inc.,
2008 WL 4174882 (D. Ariz. Sept. 5, 2008) ........................................ 18

Disney Enter., Inc. v. Delane, ,
446 F. Supp. 2d 402 (D. Md. 2006) ..................................................... 25

eBay, Inc. v. MercExchange, LLC,
547 U.S. 388 (2006) ....................................................................... 15, 16

Eisai Co., Ltd. v. Teva Pharms. USA, Inc.,
2008 WL 1722098 (D.N.J. Mar. 28, 2008) ..................................... 16, 17

Elektra Entm't. Group, Inc. v. Bryant,
2004 WL 783123 (C.D. Cal. Feb. 13, 2004) ........................................ 16

Equitable Life Assur. Soc. of U.S. v. Rex K. DeGeorge,
2006 WL 4704613 (C.D. Cal. Aug. 28, 2006) ..................................... 25

Gund, Inc. v. Golden Bear Co., Ltd.,
1992 WL 392602 (S.D.N.Y. Dec. 10, 1992) ........................................ 28

Halderman v. Pennhurst State School & Hosp.,
  612 F.2d 84 (3d Cir. 1979) ................................................................ 29

Health Ins. Ass'n of Am. v. Novelli,
  211 F. Supp. 2d 23 (D.D.C. 2002)...................................................... 19

Honeywell Int'l v. Universal Avionics Sys. Corp.,
  397 F. Supp. 2d 537 (D. Del. 2005).................................................... 24

Hukafit Sportswear, Inc. v. Banff, Ltd., Inc.,
  1985 WL 5943 (S.D.N.Y. Dec. 5, 1985).............................................. 27

John Fluke Mfg. Co., Inc. v. N. Am. Soar Corp.,
  1987 WL 46372 (D. N.J. Sept. 1, 1987)............................................... 22

Kyjen Co., Inc. v. Vo-Toys, Inc.,
  223 F. Supp. 2d 1065 (C.D. Cal. 2002) ............................................... 27

Lava Records, LLC v. Ates,
  2006 WL 1914166 (W.D. La. July 11, 2006)........................................ 22

Lennon v. Premise Media Corp.,
  556 F. Supp. 2d 310 (S.D.N.Y. 2008) ............................................ 16, 17

Lewis v. S.S. Baune,
  534 F.2d 1115 (5th Cir. 1976) ............................................................ 24

Lubrizol Corp. v. Exxon Corp.,
  696 F. Supp. 302 (N.D. Ohio 1988)..................................................... 22

MAI Sys. Corp. v. Peak Computer, Inc.,
  991 F.2d 511 (9th Cir. 1993) .............................................................. 18

MercExchange, L.L.C. v. eBay, Inc.,
  500 F. Supp. 2d 556 (E.D. Va. 2007) .................................................. 24

Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Co., Inc.,
  900 F. Supp. 1287 (C.D. Cal. 1995) .................................................... 12

Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,
  518 F. Supp. 2d 1197 (C.D. Cal. 2007) ................. 16, 17, 18, 21, 22, 24, 25

Micro Star v. Formgen, Inc.,
  154 F.3d 1107 (9th Cir. 1998) ............................................................ 16

Microsoft Corp. v. Atek 3000 Computer Inc.,
  2008 WL 2884761 (E.D.N.Y. July 23, 2008)........................................ 25

Microsoft Corp. v. McGee,
  490 F. Supp. 2d 874 (S.D. Ohio 2007) ................................................ 25

Muze, Inc. v. Digital On-Demand, Inc.,
  123 F. Supp. 118 (S.D.N.Y. 2000) ...................................................... 23

7209/2649465.3

N. Am. Med. Corp. v. Axion Worldwide, Inc.,
    522 F.3d 1211 (11th Cir. 2008) ............................................................ 17

Nat'l Ass'n of Radiation Survivors v. Turnage,
    115 F.R.D. 543 (N.D. Cal. 1987)........................................................... 29

Nat'l Football League v. Primetime 24 Joint Venture,
    1999 WL 760130 (S.D.N.Y. Sept. 27, 1999) ........................................ 19

Nikon, Inc. v. Ikon Corp.,
    1992 WL 398440 (S.D.N.Y. Dec. 18, 1992) ......................................... 27

Novelty Textile Mills, Inc. v. Joan Fabrics Corp.,
    558 F.2d 1090 (2d Cir. 1977) .................................................................. 7

Paramount Pictures Corp. v. Carol Pub. Group,
    11 F. Supp. 2d 329 (S.D.N.Y. 1998) ............................................... 19, 24

Paulsson Geophysical Servs., Inc. v. Sigmar,
    529 F.3d 303 (5th Cir. 2008) ................................................................ 17

Pennhurst State School & Hosp v. Halderman,
    451 U.S. 1 (1981)................................................................................... 29

Perfect 10 v. Amazon.com, Inc.,
    487 F.3d 701 (9th Cir. 2007) ................................................................ 26

Perfect 10 v. Google, Inc.,
    416 F. Supp. 2d 828 (C.D. Cal. 2006) .................................................. 26

Picker Int'l Corp. v. Imaging Equip. Servs., Inc.,
    931 F. Supp. 18 (D. Mass. 1995) .......................................................... 29

Pittway v. Black & Decker,
    667 F. Supp. 585 (N.D. Ill. 1987)................................................... 20, 23

Rogers v. Koons,
    960 F.2d 301 (2d Cir. 1992) ................................................................. 27

Seibert v. Sperry Rand Corp.,
    586 F.2d 949 (2d Cir. 1978) ................................................................. 15

Smith & Nephew, Inc. v. Synthes,
    466 F. Supp. 2d 978 (W.D. Tenn. 2006) ......................................... 18, 24

Sony Corp. of Am. v. Universal City Studios, Inc.,
    464 U.S. 417 (1984)........................................................................ 19, 26

Taylor Corp. v. Four Seasons Greetings, LLC,
    403 F.3d 958 (8th Cir. 2005) ................................................................ 19

Telequip Corp. v. The Change Exch.,
    2006 WL 2385425 (N.D.N.Y. Aug. 15, 2006)...................................... 24

Three Boys Music Corp. v. Bolton,
  212 F.3d 477 (9th Cir. 2000) ............................................................ 8

Time Warner Cable, Inc. v. DIRECTV, Inc.,
  497 F.3d 144 (2d Cir. 2007) ............................................................ 17

Toho Co., Ltd. v. William Morrow and Co., Inc.,
  33 F. Supp. 2d 1206 (C.D. Cal. 1998) ............................................ 12

Ty, Inc. v. GMA Accessories, Inc.,
  959 F. Supp. 936 (N.D. Ill. 1997) .................................................... 25

UMG Recordings, Inc. v. Blake,
  2007 WL 1853956 (E.D.N.C. June 26, 2007) ................................. 25

UMG Recordings, Inc. v. Does 1-4,
  2006 WL 1343597 (N.D. Cal. Mar. 6, 2006) ................................... 18

WPOW, Inc. v. MRLJ Enter.,
  584 F. Supp. 132 (D.D.C. 1984) ...................................................... 27

Walt Disney Prods. v. Air Pirates,
  581 F.2d 751 (9th Cir. 1978) ............................................................ 12

Warner Bros. Entm't. Inc. v. RDR Books,
  2008 WL 4126736 (S.D.N.Y. Sept. 8, 2008) ................................. 16

Warner Bros. Inc. v. Am. Broad. Companies, Inc.,
  720 F.2d 231 (2d Cir. 1983) ............................................................ 12

Wildlife Exp. Corp. v. Carol Wright Sales, Inc.,
  18 F.3d 502 (7th Cir. 1994) .............................................................. 7

**Statutes**

17 U.S.C. § 502(a) ...................................................................... 15, 27

17 U.S.C. § 503(b) ............................................................................ 27

17 U.S.C.A. § 503(a) ........................................................................ 26

Fed. R. Civ. P. 53(a)(1)(C) ............................................................... 29

Fed. R. Civ. P. 65(f) ......................................................................... 27

**Other Authorities**

2 William F. Patry, Copyright Law & Practice § 502, at 1158 n. 348 (1994) ............ 20

6 William F. Patry, Patry on Copyrights, § 22:74 (2008) .................................. 17, 27

Robert C. Ostenberg and Eric C. Ostenberg, SUBSTANTIAL SIMILARITY IN COPYRIGHT LAW § 2.6 at 2-34 (2008) ............................................................ 7

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

The jury found that MGA has infringed Mattel's copyrights.  MGA has stated that it intends to continue to make and market dolls -- and to advertise and grant licenses -- using Mattel's copyrighted designs.  Mattel is entitled to a permanent injunction to stop that ongoing infringement.

The only issue even arguably open to debate is the scope of the injunction. MGA all but concedes that the four Bratz dolls released in June 2001 are substantially similar to Mattel's copyrighted works, but contends that no later Bratz dolls infringe.  No such line can be drawn among the Bratz dolls.  The original four dolls and all later dolls are based on the same sculpt – the sculpt that was developed from Mattel's designs, and infringes Mattel's copyrights in those designs.  The infringing sculpt, which gives every core Bratz doll its unique look and feel, is still used for all Bratz dolls today.  Accordingly, every one of those dolls necessarily bears substantial similarities to the elements of Mattel's copyrighted works which this Court ruled are protectable.

MGA has made clear that it intends to continue to produce and sell infringing dolls in the future.  The injury to Mattel from such activity is, by definition, irreparable.  It is irreparable because MGA's continued copying violates Mattel's statutory right to exclude others from copying its works.  It is irreparable because MGA's infringement wrongfully diminishes the demand for dolls Mattel sells.  It is irreparable because MGA itself claims to be on the brink of insolvency and therefore may not be able to pay monetary damages assessed against it for both past and future infringement.  Mattel should not be required to file dozens of lawsuits to stop ongoing and future infringement by MGA and its licensees.  Mattel has a statutory right to exclude others from using its designs.  A permanent injunction against further infringement is required.

1

### Argument

2  **I.  MGA IS ENGAGED IN ONGOING INFRINGEMENT OF MATTEL'S**

3  **COPYRIGHTS**

4   At trial, the jury found that Carter Bryant created numerous two- and three-

5  dimensional Bratz doll designs during his Mattel employment.[1]  Under the Inventions

6  Agreement, Mattel owns these works,[2] and has registered them with the U.S.

7  Copyright Office.[3]  This Court has held these designs are protectable under copyright

8  law,[4] and the jury has now found that MGA, MGA Hong Kong, and Isaac Larian

9  each infringed Mattel's Bratz copyrights.[5]  The full line of core Bratz fashion dolls,[6]

10  the original characters created by Bryant, the advertising and packaging that

11  incorporate the images of the infringing dolls, and the licensing program for Bratz-

12  related products are all based on the protectable elements in the drawings and sculpt

13  owned and copyrighted by Mattel, and infringe those copyrights.

14   **A.  Each and Every Bratz Doll is Infringing**

15   Each and every Bratz doll sold by MGA infringes Mattel's copyrights.  MGA

16  conceded at trial that the four original Bratz dolls released in June 2001 "are similar

17  to Carter Bryant's drawings."[7]  But MGA's infringement is not limited to Cloe,

18

19   [1]  See Phase 1(a) Verdict Form at 1-4, Declaration of Diane C. Hutnyan ("Hutnyan

20  Decl.") Ex. 1.

  [2]  April 25, 2008 Order re: Partial S.J. at 5, Hutnyan Decl. Ex. 2; Phase 1(b) Jury

21  Instructions, at Instruction No. 20, Hutnyan Dec., Ex. 4; see also Mattel's concurrently filed

22  Motion for Declaratory Relief.

  [3]  Hutnyan Decl. ¶ 96 -111.

23   [4]  Trial Tr. 6197:12-6198:9.

  [5]  Phase 1(b) Verdict Form, Hutnyan Decl. Ex. 3; see also Phase 1(b) Jury Instructions

24  As Given, Instr. No. 20, Hutnyan Dec., Ex. 4.

  [6]  "Core Bratz fashion dolls" refers to all dolls which use the head and/or body sculpt

25  depicted in Exhibit 9 to the Declaration of B. Dylan Proctor ("Proctor Decl.").

26   [7]  See, e.g., Trial Tr. 5531:1-3 (MGA's counsel arguing that ". . . the evidence will be

27  that with respect to the first generation fashions and the look, they are similar to Carter

28  Bryant's drawings . . .").

Yasmin, Sasha and Jade. It also includes Ciara, Dana, Diona, Felicia, Fianna, Katia, Kiana, Krysta, Kumi, Lana, Leah, Lela, Liliana, Lilee, Lina, Maribel, May Lin, Meygan, Nevra, Nevaeh, Nona, Nora, Oriana, Peyton, Phoebe, Rina, Roxxi, Sharidan, Sierrna, Sorya, Sunya, Tess, Tiana, Trinity, Vinessa, and Valentina, and all of the other core Bratz dolls that use the same sculpt and incorporate the same protectable elements.

### 1. All Core Bratz Fashion Dolls Use The Same Sculpt

MGA has sold core Bratz dolls with many different names, themes, hairstyles and coloring. However, the same sculpt has been used on every one of them. Even on the handful of occasions where MGA has made changes in the body of a Bratz doll, it has continued to use the same head and face sculpt.[8] This sculpt incorporates not only the physical dimensions of the doll, but the unique attitude and expression which define it.

Numerous MGA witnesses confirmed that this sculpt never changed. Leon Djiguerian, an MGA manager, affirmed that all the core fashion dolls use the same sculpt.[9] Lui Domingo, a senior MGA designer, acknowledged that the sculpt used to this day is still the "core Bratz fashion doll sculpt."[10] Ninette Pembleton, MGA's Vice President of Operations, could not identify any changes to the head and body of the Bratz doll sculpt over time.[11] MGA's expert, Peter Menell, explained that he

---

[8] The Bratz "Movie" Doll uses a very slight variation on the body of the core sculpt, see Hutnyan Ex. 151, which MGA itself registered with the Copyright Office as a "derivative" of the core sculpt. See TX 577, Hutnyan Decl. Ex. 132; TX 565, Hutnyan Decl. Ex. 133. The Walking Bratz dolls and Bratz Star Singerz dolls are the only Bratz fashion dolls with different bodies than the original four, but they too use the same head and face sculpt, complete with the imprint "copyright 2001." See Trial Tr. 7246:14-23; 7220:16-20; 7220:1-20. All of the dolls therefore infringe Mattel's copyrights.

[9] Trial Tr. 7220:1-20.

[10] Trial Tr. 7246:14-23; 7220:16-20.

[11] Trial Tr. 5784:4-5785:8.

needed to review only one doll because "the sculpt is the same for all the dolls."[12] MGA's counsel likewise acknowledged at trial that "[w]hat has remained unchanged is the sculpt, generally speaking."[13]

## 2. The Core Bratz Doll Sculpt Is Infringing

The sculpt that MGA has used for all core Bratz fashion dolls is substantially similar to Mattel's Bratz copyrights. It was copied directly and intentionally from the designs owned by Mattel. All the dolls based on it therefore infringe Mattel's copyrights.

This Court has identified the protectable elements of Mattel's copyrighted Bratz works. These include their (a) "particularized, synergistic compilation and expression of the human form and anatomy that expresses a unique style and conveys a distinct look or attitude;" and (b) "particularized expression of a doll's head, lips, eyes, eyebrows, eye features, nose, chin, hair style and breasts, including the accentuation or exaggeration of certain anatomical features relative to others (doll lips, eyes, eyebrows, and eye features) and de-emphasis of certain anatomical features relative to others (doll nose and thin, small doll bodies)."[14]

As the Court instructed the jury, "Mattel does not need to establish that the works it alleges are infringing are identical or virtually identical to the works it owns, nor that the allegedly infringing works do not contain any non-infringing material."[15] Rather, the question is simply whether "there are substantial similarities between the copyright-protected works and the allegedly infringing works."[16] In this case, there are.

---

[12]   Menell Dep. Tr., 125:6-21, Hutnyan Decl. Ex. 9.
[13]   Trial Tr. 6540:13-15.
[14]   Phase 1(b) Jury Instructions, Hutnyan Decl. Ex. 4 at Instruction No. 26.
[15]   Id.
[16]   Id.

1

2

### a.   The Bratz Head and Face Sculpt Is Substantially Similar To Protectable Elements Of Mattel's Works

3    The Bratz head and face sculpt is substantially similar to works owned by

4  Mattel. For example, comparison of the face in Mattel's copyrighted drawing TX 5-

5  74[17] and the face of "Tess" Play Sportz (Dance), released in 2007,[18] shows that the

6  distances between the brow, the top and bottom of the eye, the nose, the top and

7  bottom of the lips, and the chin, are all virtually the same.[19] Comparison of the face

8  from Mattel's drawing TX 5-74 and the face of "Leah" Play Sportz Extreme Skate,

9  released in 2008,[20] again shows that the same proportions are the same.[21]

10  Comparison of Mattel's copyrighted drawing TX 778-2[22] with the 2007 "Sasha" Play

11  Sportz (RC X-treme!) Skateboarding doll[23] likewise shows that the doll's jawline,

12  cheekbone and forehead, and the distance between the eyes, match the drawing

13  closely. Comparison of Mattel's copyrighted drawing TX 717[24] with the 2008

14  "Leah" Play Sportz Extreme doll shows that the design, shape and placement of the

15  facial features of the doll and drawing -- including eye shape, eyeliner design, eye

16  angle, pupil placement and lip shape -- are all extremely similar.[25] TX 1136 -- a

17  three-dimensional Bratz doll sculpt that Mattel owns[26] -- was, according to MGA

18  itself, intended to "translate" Bryant's drawings (also owned by Mattel) into a three-

19

20

---

21    [17] VAu 715-273 and VAu 964-319, Proctor Decl. Ex. 12.
22    [18] Proctor Decl. ¶ 22 and Ex. 13.
      [19] See Proctor Decl. ¶ 22.
23    [20] Proctor Decl. ¶ 23 and Ex. 14.
      [21] See Proctor Decl. ¶ 24.
24    [22] Drawing and VA 1-378-650, Proctor Decl. Ex. 15 and 16.
25    [23] Proctor Decl. ¶ 26 and Ex. 17.
      [24] Drawing and VA 1-378-653, Proctor Decl. Ex. 18 and 19.
26    [25] See Proctor Decl. ¶ 27.
27    [26] VAu 964-321, Hutnyan Decl. Ex. 122; see also Phase 1(a) Verdict Form at 5, Hutnyan Decl. Ex. 1, Sculpt, Proctor Decl. Ex. 7.

28

1  dimensional representation.[27]  Comparison of a cast made from the same mold as TX
2  1136[28] and a 2008 Bratz production doll shows that the proportions and shapes of the
3  facial features on the sculpts are virtually identical.[29]

### b.   The Bratz Body Sculpt Is Substantially Similar To Protectable Elements In Mattel's Works

6  TX 5-88 is a copyrighted sculpt drawing that Mattel owns.[30]  Bryant gave this
7  drawing to sculptor Margaret Leahy to guide her as to what the Bratz sculpt should
8  look like.[31]  She followed it, and the protectable elements of Mattel's work are
9  embodied in the sculpt used for the Bratz dolls sold in 2001.[32]  The sculpt closely
10  follows the curves of the drawing.  The proportions of the 2001 dolls follow the
11  figure in the drawing, both vertically and horizontally.  Because the Bratz sculpt has
12  never changed, these similarities are necessarily reflected in all later dolls also.
13  Thus, the sculpt of the "Nevaeh" Bratz World Twins doll, released in 2008 and on
14  sale today, is equally similar, and equally as infringing, as the 2001 dolls were.[33]

15  Another copyrighted sculpt drawing owned by Mattel is TX 323-32.[34]  Bryant
16  also provided this drawing to Leahy for her use in making the Bratz sculpt.[35]  A

17  _____

18  [27]  Trial Tr. 642:7-25; 644:25-645:6 ("I asked Margaret to create a sculpt to match what
19  she understood to be the drawings in Carter's portfolio"); 651:14-652:7; 800:6-17 (in
creating the sculpt, "the exercise was to create a 3D version of those 2D drawings").
20  [28]  TX 1136 was not made available to Mattel for scanning.  However, TX 1135 is a
casting from the same mold as TX 1136 and thus is virtually identical to that exhibit, see
21  Proctor Decl. ¶ 17. Leahy Dep. Tr., 12/12/07, at 227:25-229:20, Hutnyan Decl. Ex. 150.
22  [29]  See Proctor Decl. ¶ and 11-17 and Exhs. 8-10
[30]  VAu 715-270, Hutnyan Decl. Ex. 12; see also Phase 1(a) Verdict Form at 1, Hutnyan
23  Decl. Ex. 1.
24  [31]  Trial Tr. 2561:22-2563:16; see also 2567:2-15.
[32]  Trial Tr. 644:25-645:6; see also Trial Tr. 6665:8-6666:8.
25  [33]  Proctor Decl. ¶ 4 and Ex. 2.
26  [34]  Drawing and VAu 960-439, Proctor Decl. Ex. 3 and 4; see also Phase 1(a) Verdict
Form at 4, Hutnyan Decl. Ex. 1.
27  [35]  Garcia Dep. Tr., 589:25-590:6; 591:12-592:4; 593:25-595:1; 603:2-13, Hutnyan
Decl. Ex. 146.
28

1  comparison of this drawing to the 2008 "Peyton" Bratz World Twins doll shows that
2  the major vertical anatomical landmarks of the body line up exactly.[36]

3  In short, the visual comparisons in the accompanying Proctor declaration
4  demonstrate that MGA's current Bratz production dolls continue to follow Mattel's
5  copyrighted works in facial structure and shape; proportions and placement of the
6  features relative to each other and to the face; proportions, placement and shape of
7  the individual features themselves; and proportions and placement of the body
8  features. The Bratz dolls continue to have the same jawlines and cheekbones; cheek
9  color placement; eye width and height in relation to face; spacing between the eyes;
10 eyelid height; eye shape; eyebrow shape; pupil placement; eye angle; spacing
11 between nose and lips; lip height; lip shape; and spacing between lips and chin, as
12 well as the same distinct body proportions as the Mattel drawings.   Substantial
13 similarity is undeniable.

14         **3.**   **MGA's Bratz Dolls Encompass a Unique Combination of**
15           **Elements Protected by Copyright Law**

16 MGA's continued use of the infringing production sculpt defeats any claim that
17 seasonal changes in names or fashions or makeup immunize it from a finding of
18 infringement.   Once a copyrighted design is found to have been copied, "mere
19 changes in the color scheme of the copied design" are no defense to a claim of
20 infringement. See, e.g., Wildlife Exp. Corp. v. Carol Wright Sales, Inc., 18 F. 3d
21 502, 511 (7th Cir. 1994); Novelty Textile Mills, Inc. v. Joan Fabrics Corp., 558 F.2d
22 1090, 1094 n.6 (2d Cir. 1977) (same); see also Robert C. Ostenberg and Eric C.
23 Ostenberg, SUBSTANTIAL SIMILARITY IN COPYRIGHT LAW § 2.6 at 2-34 (2008) ("If a
24 plagiarist has copied a substantial portion of plaintiff's work, it matters not that he
25 may have contributed additional dissimilar material of his own.").   In fact, MGA

26

27    [36]   Proctor Decl. ¶ 8 and Ex. 5.
28

1  itself argued at trial that merely adding colors or changing fashions did not change
2  the central appearance of Bratz.[37]

3      A finding of substantial similarity is required not only because of MGA's
4  continued use of the original production sculpt, but also because of its faithful
5  adherence to the unique combination of protectable elements reflected in Bryant's
6  original designs. The particularized expressions of the characters' head and face,
7  body and feet, clothes, shoes and accessories, which give Bratz their overall look and
8  feel, style and attitude, are as evident in today's dolls as they were in the original
9  Bryant drawings and the 2001 dolls. What made "Bratz" so unique at the outset
10 continues to make the dolls, and the products which incorporate them, unique in
11 2008. Especially in light of the lowered burden that applies when there is a high
12 degree of access (MGA's access to Mattel's property was unbounded and
13 uncontestable), a finding of ongoing infringement is required. See, e.g., Three Boys
14 Music Corp. v. Bolton, 212 F.3d 477, 485 (9th Cir. 2000) ("we require a lower
15 standard of proof of substantial similarity when a high degree of access is shown").

16          **4.    MGA's Express Admissions Establish Infringement**

17     MGA's own admissions also prove infringement. From the start, MGA
18 recognized the importance of the distinctive features in Bryant's design drawings and
19 used them in the dolls. As it wrote in its business plan from early 2001, "[t]he
20 Bratz[] are unique in many ways; their eyes are big with a hint of animé style; their
21 lips are more pronounced, their feet and heads are oversized."[38] At trial, Bryant
22 identified the lips and eyes of the Bratz dolls as "distinctive" and acknowledged that
23 these features were reflected in his drawings.[39] Leahy agreed that "Bryant's drawings
24 have the factors that MGA say[s] are unique to the dolls, which is the oversized eyes,

25

26   [37] Trial Tr. 4950:17-4952:12.
27   [38] TX 13520-15, Hutnyan Decl. Ex. 13.
     [39] Trial Tr. 6664:14-6665:7.
28

1 protrusive lips, and the diminished nose."[40]  Paula Garcia affirmed that the Bratz
2 dolls "stay[ed] true" to Bryant's vision in the "overall design and the look of each
3 girl."[41]  Between them, Isaac Larian and Paula Garcia admitted no fewer than 18
4 times at trial that Bryant's drawings were the "inspiration" for the Bratz dolls.[42]
5 MGA's counsel said it four more times.[43]  MGA's counsel also admitted that the
6 Bryant drawings were the "original concept drawings for the Bratz."[44]

7      In numerous lawsuits, MGA specifically acknowledged that the Bratz dolls are
8 based on the Bryant drawings owned by Mattel.  In *Multitoy*, MGA asserted that the
9 Bratz dolls are three-dimensional depictions of Bryant's Bratz drawings.[45]  In *Uni-*
10 *Fortune*, MGA claimed that each of the Bratz "Artistic Works," including the Bratz
11 doll sculpt,[46] were based on Bryant's drawings.[47]  In *Double Grand*, MGA Hong
12 Kong's Managing Director swore that the facial decorations on the Bratz dolls came
13 from Bryant's drawings.[48]

14      When MGA registered its dolls with the Copyright Office, it admitted that they
15 were based on the Bryant drawings owned by Mattel.[49]  MGA may now try to claim
16 that was only true as to the 2001 dolls, but, as Bryant testified, all the dolls in the

---

18   [40]  Trial Tr. 6847:22-6848:1; see also Cheung Affirmation at MGA0883926-33 ("the
19 facial decorations and features of the [Bratz] dolls are unique. . ."); Hutnyan Decl. Ex. 14.
    [41]  TX-10001-02, Hutnyan Decl. Ex. 15.
20   [42]  Trial Tr. (Larian) 1649:12-17; 1654:4-6; 1654:12-14; 1656:21-23; 1664:5-9;
21 1700:19-24; 1749:10-14; 1750:22-1751:2; 1856:13-14; 1860:3-6; 6096:11-17; 6100:3-8;
6115:7-11; 6116:11-16; 6126:20-25; 6171:25-6172:1; 6172:5-17; Trial Tr. (Garcia) 6868:3-
22 7; see also Amended Final Pre-Trial Conference Order for Phase 1 Trial, dated May 23,
2008, at 97.
23   [43]  Trial Tr. 5518:10-11; see also Trial Tr. 4901:23-25; 5552:6-9; 5553:10-14.
  [44]  Trial Tr. 4950:6-8; see also Trial Tr. 214:13-16; 256:20-22; 4901:23-25.
24   [45]  See Hutnyan Decl. at ¶ 34; TX 13738-002-03, Hutnyan Decl. Ex. 16.
25   [46]  See TX 13572-002, Hutnyan Decl. Ex. 26.
  [47]  Id.
26   [48]  Hutnyan Decl. at ¶ 44; TX 13691-0007, 0028, 0049, Hutnyan Decl. Ex. 14.
27   [49]  See Hutnyan Decl. at ¶ 84-95; TX 505, 507, 509, 511, 557-564, Hutnyan Decl. Exs.
18, 19, 20, 21, 66, and 5-57.

1   Bratz line have an "overall similar appearance."[50]   When shown them, witnesses

2   immediately recognized Bryant's drawings as representations of the Bratz dolls.[51]

3   Isaac Larian claimed the "Bratz dolls" were exhibited when MGA showed K-Mart

4   the Bryant drawings owned by Mattel in November 2000.[52]   Children, the intended

5   audience for the dolls, overwhelmingly identify Bryant's drawings as "Bratz dolls."[53]

6   ### 5.   MGA's Infringement Suits Establish Its Own Infringement

7   Finally, the positions MGA has taken in bringing prior infringement actions

8   confirm its own infringement of Mattel's rights, and estop it from now denying the

9   substantial similarities that it once asserted on its own behalf.  MGA has repeatedly

10  sued third parties for selling dolls that are *less* similar to Mattel's copyrighted works

11  than are the current Bratz dolls -- and it did so based on the very drawings that Mattel

12  owns.  For example, in *Double Grand*, MGA claimed the defendant's "Mini Trendy

13  Teenz" doll and other dolls were "reproductions of a substantial part" of works that

14  included 17 Bratz drawings the jury found that Mattel owns.[54]   Tellingly, in that case

15  MGA specifically singled out as being infringed the very same elements which this

16

17

18  [50]   Trial Tr. 6669:11-23 ("Q. . . . [D]o you believe that all the dolls in the Bratz doll line have a similar appearance? A. . . . Are you referring to the fashions, the dolls themselves?

19  Q.  Say the dolls themselves.  A.  Yes, they are similar.  Q.  Do you believe that all the Bratz dolls have an overall similar appearance?  A.  Again, if you're just talking about the

20  doll, without any fashions or accessories or anything like that, then yes, they're similar.").

21  [51]   Trial Tr. 6650:18-6652:22; see also Trial Tr. 6649:16-6650:2; TX 323, Proctor Decl. Ex. 3.

22  [52]   Trial Tr. 1805:8-1807:9; Trial Tr. 6137:12-6139:12.

[53]   See Exhibit B to the Declaration of Kenneth Hollander at 15.

23  [54]   TX 13690-002, 005 (identifying Bryant's 17 design drawings as the Artistic Works

24  being infringed), Hutnyan Decl. Ex. 27; TX 13691-0140 (accusing Mini Trendy Teenz, Trendy Teenz, Rocker Headz Fashion Doll Bobblehead Pen, and Rocker Headz Bobblehead

25  Fashion Doll of infringing Bratz dolls and registered designs and original drawings), Hutnyan Decl. Ex. 14; TX 13696 (Photograph of Mini Trendy Teenz doll), Hutnyan Decl.

26  Ex. 29; TX 13698 (same), Hutnyan Decl. Ex. 30; TX 13700 (same), Hutnyan Decl. Ex. 31;

27  TX 13561-0029-31, 0120-122, 0124-125, 0194, 0208, 0210, 0278, 0280 (images of the infringing product).

28

1   Court found to be protectable.  These include (a) the shape of each doll's head;  (b)

2   the size of each doll's head in comparison with the remainder of the doll;  (c) the

3   shape and size of the nose;  (d) the shape of the eyes;  (e) the shape of the lips;  and (f)

4   the unusual size of each doll's feet in comparison with the remainder of the doll.[55]

5   MGA made similar claims in other infringement litigation.[56]  The current Bratz dolls

6   are far more similar to Mattel's Bratz-related works than the products MGA

7   previously claimed infringed those same works.  Mr. Larian admitted as much at trial

8   when he testified that the Bratz doll named "Nevra" -- which uses the core Bratz

---

[55]   TX 13561-0022-23; 0044-65; 0067-81 (accusing Mini Trendy Teenz of infringing the Bratz dolls and registered designs and original drawings, both of which include Carter Bryant's drawings), Hutnyan Decl. Ex. 28.

[56]   For example, in *Cityworld*, MGA claimed the "Funky Tweenz" dolls were "reproductions" of Bryant's design drawings owned by Mattel.  TX 13705-002-003, Hutnyan Decl Ex. 33; TX 12; TX 13707-003, 0015-32, 0091-00105, 00113, 116, 119 (Bryant's 17 initial concept drawings and images of Funky Tweenz), Hutnyan Decl Ex. 35; TX 13709 (Photograph of Funky Tweenz Doll), Hutnyan Decl Ex. 36.

In *Hung Lam*, MGA accused the "Scampz" of being a reproduction of facial decorations that were based on Bryant's design drawings.  TX 13784-002, 004, Hutnyan Decl. Ex. 37; TX 13856-033-038 (Scampz images), Hutnyan Decl. Ex. 23; TX 13722 (Photograph of Scampz Doll), Hutnyan Decl. Exs. 40; TX 13718-0016-017, 0163, 0182 (comparing Scampz and Bratz, and images of Scampz), Hutnyan Decl. Ex. 38; TX 13867 (photograph of Scampz Doll), Hutnyan Decl. Ex. 41.

In *Union Top*, MGA claimed the "Fashion Doll" infringed MGA's "Copyrighted Works," which include Bryant's drawings.  TX 13785-0003-0004, 0007, 0011, Hutnyan Decl. Ex. 42; TX 13725-007, 0015, 0018-0020, 0045, 0175-208 (accusing the "Fashion Doll" of copying Bratz facial decorations; attesting that the Bratz facial decorations and snap-on shoes were from Bryant's drawings and input; images of "Fashion Doll"), Hutnyan Decl. Ex. 43.

In *Wai Man*, MGA accused the "Twin Sisters" of being "slavish copies" of the Bratz facial decorations (which MGA admitted were based off Bryant's drawings).  TX 13743-0007, 0013-15, 0142-145, Hutnyan Decl. Ex. 44; TX 13742-004, 0015, Hutnyan Decl. Ex. 77.

In *Uni-Fortune*, MGA claimed that the "Glitter Girls" were "reproductions" of Bryant's design drawings.  TX 10234-0041-42, 0044; Hutnyan Decl. Ex. 22; TX 13865, Hutnyan Decl. Ex. 23; TX 13866, Hutnyan Decl. Ex. 24; TX 13868, Hutnyan Decl. Ex. 25.

1 | fashion doll sculpt -- is more similar to the 2001 Bratz dolls than the accused "Mini

2 | Trendy Teenz" doll was.[57] All the Bratz dolls are infringing.

### B.   Each and Every Identifiable Representation of the Original Bratz Characters Is Also Infringing

5 | MGA's depictions of the Bratz characters conceived by Bryant also infringe

6 | Mattel's copyrights for a separate and independent reason. As the Court instructed

7 | the jury, above and beyond the protectable elements of Mattel's works identified by

8 | the Court, copyright law also "protects distinctive characters."[58] See, e.g., Warner

9 | Bros. Inc. v. Am. Broad. Companies, Inc., 720 F.2d 231, 235 (2d Cir. 1983)

10 | ("Plaintiffs own the copyright in various works embodying the character of

11 | Superman and have thereby acquired copyright protection for the character itself.")

12 | (citations omitted); Walt Disney Prods. v. Air Pirates, 581 F.2d 751, 755 (9th Cir.

13 | 1978) (distinctive characters, especially if they are expressed in visual form, are

14 | protectable by copyright); Toho Co., Ltd. v. William Morrow and Co., Inc., 33 F.

15 | Supp. 2d 1206, 1215 (C.D. Cal. 1998) (copyright protection extended to the Godzilla

16 | character); Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Co., Inc., 900 F. Supp.

17 | 1287, 1296 (C.D. Cal. 1995) (James Bond); Anderson v. Stallone, 1989 WL 206431,

18 | at *7-8 (C.D. Cal. April 25, 1989) ( Rocky).  MGA's "works infringe Mattel's

19 | copyrights if they copy recognizable and distinctive traits, attributes, and elements of

20 | the personalities of the characters portrayed in Carter Bryant's works."[59]

21 | The jury found that Bryant conceived the initial four Bratz characters (Sasha,

22 | Cloe, Jade and Yasmin) while employed by Mattel.[60] These characters were and are

---

[57]   Trial Tr. 6159:13-18.
[58]   Phase 1(b) Jury Instructions, Hutnyan Decl. Ex. 4 at Instruction No. 28.
[59]   Id.
[60]   Phase 1(a) Verdict at 5, Hutnyan Decl. Ex. 1.

distinctive, as shown both by their visual appearance[61] and the written personality attributes Bryant gave them.[62]   Therefore, MGA's recognizable depictions of these four characters are infringing, in whatever form they may take. For example, the "Jade" doll released by MGA in 2001 clearly copies recognizable traits of the "Jade" character created by Bryant -- it is a depiction of the "character" conceived by Bryant. The striking visual similarities show this.[63]   That MGA's doll even has the same mascot as Bryant's character -- a cat -- also shows this.[64]   The same is true for the other characters: visually, they are recognizable as the characters Bryant created,[65] and they perfectly copy detailed personality traits like the mascots.[66]

The same is true as to MGA's depictions of these characters on other products. Jade is always recognizable as Jade,[67] and Cloe is always recognizable as Cloe,[68] whether the depiction takes the form of a doll or a character on a backpack or toothbrush.[69]   Because MGA continues to copy characters owned by Mattel, all these depictions are infringing.

---

[61]   See TX 302-001, 003, 006, 008, 010, Hutnyan Decl. Ex. 136; TX 1107, Hutnyan Decl. Ex. 137; TX 1108-1110, Proctor Dec. Exs. 40, 42, and 49.
[62]   See TX 5-043, Hutnyan Decl. Ex. 149; TX 302-003, 006, 008, 010, *supra* note 61.
[63]   See TX 13976, Hutnyan Decl. Ex. 141.
[64]   See Phase 1(b) Opening Slide 30.20, Hutnyan Decl. Ex. 54.
[65]   See TX 13975, 13977, 13978, Hutnyan Decl. Ex. 138-140.
[66]   Cloe's is an Angel, Yasmin's is a princess, and Sasha's is a rabbit. See Phase 1(b) Opening Slides 30.23, 30.25, and 30.26, Hutnyan Decl. Exs. 55, 56, and 57.
[67]   See Phase 1(b) Opening Slides 34.1 and 34.2, Hutnyan Decl. Exs. 58 and 59.
[68]   See TX 14632, Hutnyan Decl. Ex. 134; TX 14633, Hutnyan Decl. Ex. 135.
[69]   See Hutnyan Decl. Ex. 60; Hutnyan Decl. Ex. 61.

### C.    MGA's Bratz-Based Advertising And Licensing Infringe Mattel's Copyrights

Images of infringing Bratz fashion dolls figure prominently in virtually all MGA print and television advertising.[70]  Ads that focus on the protectable elements of Bratz – large eyes, accentuated lips and eyebrows, disproportionately small noses and bodies – infringe on Mattel's copyrighted works.[71]  Many ads are little more than a photograph of an actual doll or dolls.[72]  When the dolls depicted in the photographs are infringing, as all of the Bratz fashion dolls are, the photograph is simply another infringement.[73]

MGA's packaging also infringes Mattel's rights when it features elements that belong to Mattel.  The jury's findings establish that Mattel owns the hero shot drawing,[74] which MGA concedes is featured on the Bratz packaging.[75]  Packaging that consists of little more than the name Bratz, the Bratz logo, and the hero shot infringe on Mattel's copyrights every bit as much as the dolls inside.[76]

MGA also has thousands of license agreements,[77] covering a wide range of products, from toothpaste to clothes to Halloween costumes,[78] which infringe on Mattel's Bratz copyrights.  MGA policy requires that the key attributes of Bratz be

---

[70]  See e.g., MGA0147532, MGA0031331; Hutnyan Decl. Ex. 81; see also screenshots from MGBZ3263, MGBZ4335, MGBZ4355, MGBZ5213, MGBZ4013, MGBZ4025, and MGBZ4035, Hutnyan Decl. Ex. 81, and full videos lodged concurrently herewith.
[71]  E.g., MGA0031330, MGA031332, and MGA0066857, Hutnyan Decl. Ex. 80.
[72]  E.g., MGA0031330, MGA0031331, MGA0031332, Hutnyan Decl. Ex. 80.
[73]  E.g., MGA0203974 and MGA2684712, Hutnyan Decl. Ex. 80.
[74]  TX 774, Phase 1(a) Verdict at 2, Hutnyan Decl. Ex. 1.
[75]  Samir Khare Dep. Tr., dated January 25, 2008, at 1019:19-1020:1, Hutnyan Decl. Ex. 82; see also TX 504, Proctor Decl. Ex. 28.
[76]  See Phase 1(b) Closing Slides at 14D, Hutnyan Decl. Ex. 129; TX 12286, Hutnyan Decl. Ex. 130, Proctor Decl. Ex. 20; TX 3-001, Hutnyan Decl. Ex. 131.
[77]  The Hollywood Reporter, "What's Up With Bratz?", June 2005, Hutnyan Decl. Ex. 64.

1 "mirrored in any brand extensions."[79]  MGA requires licensees to follow style guides

2 which use Bratz images that are "based upon and derived from" the infringing Bratz

3 dolls.[80]  Indeed, MGA has registered copyrights for many of these style guides as

4 derivatives of "preexisting artwork" that includes Mattel's designs.[81]  Licensed goods

5 that use infringing images of Bratz infringe on Mattel's copyrights.[82]

6 **II.    MATTEL IS ENTITLED TO A PERMANENT INJUNCTION**

7 Because MGA is engaged in widespread, ongoing acts of infringement, and

8 intends to continue to engage in such infringement, Mattel is entitled to an injunction.

9 Under the Copyright Act, the Court has authority to grant permanent injunctive relief

10 "on such terms as it may deem reasonable to prevent or restrain infringement of a

11 copyright."  17 U.S.C. § 502(a); see Seibert v. Sperry Rand Corp., 586 F.2d 949, 951

12 (2d Cir. 1978) ("The district court has a wide range of discretion in framing its decree

13 to afford complete relief.") (citations omitted).  Courts typically weigh four factors in

14 determining whether or not to grant permanent injunctive relief:  (1) whether the

15 plaintiff has suffered irreparable injury, (2) whether remedies at law provide

16 inadequate compensation for the injury, (3) whether the balance of hardships

17 warrants an equitable remedy, and (4) whether the public interest would be disserved

18 by a permanent injunction.  eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 391

19 (2006 (citations omitted).  All four of these factors support issuance of injunctive

20 relief here.

21

22

23    [78]  See TX 1709A, Hutnyan Decl. Ex. 147; see also Cheung Affirmation, MGA0883929,

24 Hutnyan Decl. Ex. 78; TX 660, Hutnyan Decl. Ex. 5.
     [79]  TX 13239, Hutnyan Decl. Ex. 63.

25    [80]  See Trial Tr. (Armstrong) 6654:4-7, 6655:3-13.
     [81]  See TX 567, TX 568, TX 569, TX 570, TX 571, TX 572, TX 573, TX 574, and TX

26 505-513, Hutnyan Decl. Exs. 65-76; see also Phase 1(a) Verdict Form; Hutnyan Decl. Ex.

27 1.
     [82]  TX 660 at MGA0868723-865, Hutnyan Decl. Ex. 5.

28

**A.   Mattel Will Suffer Irreparable Harm Absent An Injunction**

**1.   Irreparable Injury is Presumed**

Until recently, "[c]opyright infringement [was] presumed to give rise to irreparable injury." Elektra Entm't. Group, Inc. v. Bryant, 2004 WL 783123, at *6 (C.D. Cal. Feb. 13, 2004); see also Micro Star v. Formgen, Inc., 154 F.3d 1107, 1109 (9th Cir. 1998) (even showing of likelihood of success on the merits of copyright infringement claim raises presumption of irreparable injury). Some recent cases have interpreted the Supreme Court's eBay decision to mean that this presumption of irreparable injury no longer applies. See, e.g., Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F. Supp. 2d 1197, 1210-11 (C.D. Cal. 2007) ("The eBay Court plainly stated that Plaintiffs 'must demonstrate' the presence of the traditional factors, and therefore have the burden of proof with regard to irreparable harm."). But in eBay, a patent case, the Supreme Court merely rejected the practice of automatically issuing an injunction upon a finding of infringement. The Court held "only that the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity." eBay, 547 U.S. at 394. What the eBay Court rejected was "a presumption that the *injunction* should issue, not a presumption that one of the four prongs -- irreparable harm -- exists." Eisai Co., Ltd. v. Teva Pharms. USA, Inc., 2008 WL 1722098, at *10 (D.N.J. Mar. 28, 2008) (emphasis in original).

Because eBay did not even address, much less abrogate, the traditional presumption that copyright infringement causes irreparable harm, the presumption applies here. See, e.g., Lennon v. Premise Media Corp., 556 F. Supp. 2d 310, 320 n.1 (S.D.N.Y. 2008) (eBay "cannot be read" as abrogating presumption of irreparable harm because "[t]he presumption of irreparable harm in copyright infringement actions, unlike the rule addressed in eBay, does not require courts to impose an injunction following a determination of infringement") (citation omitted); Warner Bros. Entm't. Inc. v. RDR Books, 2008 WL 4126736, at *34 (S.D.N.Y. Sept. 8,

1   2008) (citing cases that have applied presumption post-eBay: "Because Plaintiffs
2   have demonstrated a case of copyright infringement, . . . irreparable injury may be
3   presumed in this case."); Eisai Co., 2008 WL 1722098, at *10.[83]

## 2.   Even Without Any Presumption, Mattel is Irreparably Harmed

6   Irreparable injury to Mattel exists in any event. "[P]roof of irreparable injury
7   "should not be difficult to establish. Plaintiffs may establish an irreparable harm
8   stemming from the infringement (*e.g.,* loss of market share, reputational harm)."
9   Grokster, 518 F. Supp. 2d. at 1215; see 6 William F. Patry, Patry on Copyrights, §
10  22:74 (2008) ("This is not to say irreparable harm need to be difficult to establish in
11  cases of copyright infringement . . . in run-of-the-mill copyright litigation, such proof
12  should not be difficult to establish"). Such irreparable harm exists here.

---

[83]   To date, two Circuits appear to have adopted this view as well. See Abbott Labs. v. Andrx Pharms., Inc., 452 F.3d 1331, 1347 (Fed. Cir. 2006) (because of plaintiff's failure to demonstrate a likelihood of success on the merits, "[plaintiff] is no longer entitled to the presumption of irreparable harm"); see also Eisai, Co., 2008 WL 1722098, at *10 ("*Presumably,* if the Federal Circuit had read eBay as [defendant] reads it, then the Abbott court would have noted at such a juncture that a presumption of irreparable harm no longer exists, period. Accordingly, this Court is loath to expand the Supreme Court's eBay decision to apply in such a manner, especially where our specialist court of appeals in patent matters passed on reading eBay so broadly.") (emphasis in original); Lennon, 556 F. Supp. 2d at 320, n.1 ("since eBay, the Second Circuit has applied a presumption of irreparable harm in the context of a preliminary injunction sought pursuant to a false advertising claim") (citing Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 162 (2d Cir. 2007)).

Two other Circuits have not yet decided whether the irreparable harm presumption survives eBay. See Paulsson Geophysical Servs., Inc. v. Sigmar, 529 F.3d 303, 312-13 (5th Cir. 2008) (in preliminary injunction context, recognizing traditional rule that "a court may presume irreparable harm upon finding a likelihood of confusion in a trademark case," and finding "no need to decide" whether such presumption survives eBay); N. Am. Med. Corp. v. Axion Worldwide, Inc., 522 F.3d 1211, 1227-28 (11th Cir. 2008) ("declin[ing] to address whether such [presumption of irreparable injury] is the equivalent of the categorical rules rejected by the Court in eBay").

1

2

### a.    **MGA's Interference With Mattel's Exclusive Rights Constitutes Irreparable Harm**

3    MGA has made it clear that it intends to continue its widespread

4 infringement.[84] "As a general rule, a permanent injunction will be granted when

5 liability has been established and there is a threat of continuing violations." MAI

6 Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 520 (9th Cir. 1993) (citations

7 omitted); see Designer Skin, LLC v. S&L Vitamins, Inc., 2008 WL 4174882, at *4-5

8 (D. Ariz. Sept. 5, 2008) (recognizing that "a finding of past infringement coupled

9 with a threat of future violations" may be show irreparable harm).[85]

10    The right to exclude others from reproducing or distributing a copyright

11 owner's works is one of the fundamental rights of copyright. Grokster, 518 F. Supp.

12 2d at 1218 ("As copyright owners, Plaintiffs have the exclusive right to decide when

13 and how their material should be reproduced and/or distributed, regardless of

14 whether their decisions make good business sense."). Accordingly, denial of or

15 interference with the right to control use of copyrighted materials has long

16 constituted irreparable harm. UMG Recordings, Inc. v. Does 1-4, 2006 WL

17 1343597, at *1 (N.D. Cal. Mar. 6, 2006) (a copyright holder "is presumed to suffer

18

---

19    [84]  In particular, Larian has declared publicly that MGA will continue to produce Bratz

20 despite the jury verdict. See Hutnyan Decl. ¶ 149 ("Under no circumstance will Mattel be able to assert ownership of the Bratz franchise -- which will always belong to MGA. Our

21 customers, retailers, vendors, and suppliers can take comfort knowing there will be no disruption in MGA's manufacture and sales of Bratz dolls or any other products.").

22    [85]  Of course, even a defendant that--unlike MGA--protests that it will cease its unlawful conduct properly may be enjoined. See, e.g., BMG Music v. Gonzalez, 430 F.3d 888, 893

23 (7th Cir. 2005) ("discontinuation of unlawful conduct does not make the dispute moot,

24 however. An injunction remains appropriate to ensure that the misconduct does not recur as soon as the case ends"); Canadian Lumber Trade Alliance, 441 F. Supp. 2d at 1266

25 ("Indeed, the entire purpose of an injunction is to take away defendant's discretion not to obey the law"); Smith & Nephew, Inc., 466 F. Supp. 2d at 984 ("Even if [defendant] were

26 to terminate its sales of the infringing products voluntarily, it would be free to return to its

27    (footnote continued)

28

1  irreparable harm as a matter of law when his right to the exclusive use of copyrighted

2  material is invaded."); Health Ins. Ass'n of Am. v. Novelli, 211 F. Supp. 2d 23, 28

3  (D.D.C. 2002) (same).

4        To deny an injunction here would in effect impose an involuntary license on

5  Mattel. Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 967-68 (8th

6  Cir. 2005) (The denial of a request for injunctive relief could otherwise "amount to a

7  forced license to use the creative work of another. . . . Taylor certainly has the right

8  to control the use of its copyrighted materials, and irreparable harm inescapably

9  flows from the denial of that right.") (internal citations omitted). Courts refrain from

10  interfering with a copyright holder's determination of how to best exercise its rights.

11  Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 447 n.28 (1984)

12  ("It is not the role of the courts to tell copyright holders the best way for them to

13  exploit their copyrights").

14        For these reasons, monetary damages for future violations is no remedy, even

15  assuming such damages could be calculated and collected. Cadence Design Sys.,

16  Inc. v. Avant! Corp., 125 F.3d 824, 828-29 (9th Cir. 1997) (reversing denial of

17  permanent injunction even though monetary damages were available and

18  quantifiable); Nat'l Football League v. Primetime 24 Joint Venture, 1999 WL

19  760130, at *4 (S.D.N.Y. Sept. 27. 1999) ("the infringer will continue to infringe, the

20  failure to issue a final injunction will ordinarily be tantamount to the creation of a

21  compulsory license, future damages then becoming a sort of royalty. That is not,

22  absent compelling reason, a desirable practice or consistent with the objectives of the

23  Copyright Act."); Paramount Pictures Corp. v. Carol Pub. Group, 11 F. Supp. 2d 329,

24  338 (S.D.N.Y. 1998) (rejecting argument that "money damages would be a

25  satisfactory remedy" and explaining, "[a]llowing this argument to prevail would, in

26  _____

27  offending conduct, thereby further imposing monetary and intangible losses on

28     (footnote continued)

1  effect, make any copyright holder an involuntary licensor of the copyright to any

2  entity that could be relied on to pay damages.  Such a policy would considerably

3  weaken the integrity of a copyrighted work"); 2 William F. Patry, Copyright Law &

4  Practice § 502, at 1158 n. 348 (1994) (same).  Entry of a permanent injunction is

5  required to effectuate the purposes of the Copyright Act, and to enable Mattel to

6  choose for itself how best to exercise its copyrights.

7                  **b.  Encouraging Third Parties' Interference With Mattel's**

8                       **Exclusive Rights Constitutes Irreparable Harm**

9         Permitting MGA to infringe further "will encourage others to copy [Mattel's]

10  invention and flood the market with infringing products without fear of being

11  stopped by a prompt injunction," Pittway v. Black & Decker, 667 F. Supp. 585, 592

12  (N.D. Ill. 1987), causing irreparable harm to Mattel.  Denial of an injunction would

13  also embolden MGA's licensees to continue to infringe with impunity.  MGA claims

14  that "Bratz licensed products are some of the hottest sought after products out

15  there."[86]  MGA also complains that there are a substantial number of manufacturers

16  producing unlicensed Bratz goods.[87]  These other manufacturers will certainly

17  continue to produce Bratz products unless MGA itself is enjoined.

18         As MGA itself has argued, "[a]ny dilution in exclusivity and diminution in the

19  value of license fee is a potential loss which cannot be adequately compensated by

20  damages,"[88] and "cheap imitations also affect the value of license fees and such loss

21  is irreparable and unquantifiable."[89]  Absent an injunction, the irreparable harm to

22  _____

23  [plaintiff].").

24  [86]  See TX 630 at 2, Hutnyan Decl. Ex. 62; TX 18819, Hutnyan Decl. Ex. 145.  MGA
    also complains that there are a substantial number of manufacturers producing unlicensed
25  Bratz goods. See TX 3645 at 2, Hutnyan Decl. Ex. 79.

26  [88]  See TX 952 (Affirmation of Lee Shiu Cheung, dated June 18, 2003) at 14, Hutnyan
27  Decl. Ex. 144.
    [89]  See TX 952 at 14, Hutnyan Decl. Ex. 144.

28

1  Mattel--and the burden on the courts--from derivative infringers will be exacerbated
2  by the multiple lawsuits that Mattel will be required to bring against MGA's
3  licensees, MGA's distributors and others.  Grokster, Ltd., 518 F. Supp. 2d at 1219
4  ("Indeed, the very need to file multiple lawsuits as a consequence of StreamCast's
5  inducement is itself supportive of an irreparable harm finding.").

6           **c.    MGA's Apparent Inability to Pay Also Establishes**
7                   **Irreparable Harm**

8           MGA relied upon its claimed inability to pay any judgment to justify its
9  petition to the Ninth Circuit for a writ of mandamus.  ████████████████
10 ███████████████████████████████████████████████████████████
11 ████████████████████████████████████████████[90]  As a
12 result, Mr. Larian declared that the ████████████████████████
13 ████████████████████████████████████████████████████████
14 ████████[91]  Mr. Larian declared that in light of these effects on MGA, including ████
15 ███████████████████████████████████████████████████████████
16 ████████████████████████████████████[92]  MGA relied
17 on these statements by Mr. Larian to argue to the Ninth Circuit that it ████████████
18 ███████████████████████████████████████████████████████████
19 ████████████████████████████████████████████████████████[93]
20 MGA averred that these statements were ███████████████████████
21 ███████████████████████████████████████████████████████████

---

25  [90]  See Declaration of Isaac Larian in support of MGA's Petition for a Writ of
26  Mandamus, Hutnyan Decl. Ex. 84 at ¶ 3.
    [91]  Id. at ¶ 4.
27  [92]  Id. at ¶ 5.
    [93]  Emergency Motion Under Circuit Rule 27-3, Hutnyan Decl. Ex. 86 at 2.

1    ███████████████████████████████████████████████████████████

2    ████[94]

3    ██████████████████████████████████████████████████████████

4    ████████████████████[95]  As MGA advised the court, ██████████████████

5    ███████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████[96]

7        It is thus doubtful that Mattel will be able to recover a monetary award from

8 MGA if MGA were permitted to continue its infringement.  The prospect that MGA

9 may not be able to pay damages awarded in future lawsuits establishes irreparable

10 harm.  Grokster, 518 F. Supp. 2d at 1217 ("Because it is extremely unlikely that

11 [defendant] will be able to compensate Plaintiffs monetarily for the infringements it

12 has induced in the past, or the infringements it could induce in the future through

13 Morpheus, Plaintiffs have and will continue to suffer irreparable harm"); Lava

14 Records, LLC v. Ates, 2006 WL 1914166, at *3 (W.D. La. July 11, 2006) (harm

15 from infringement "will not be remedied by a damage award that may or may not be

16 collectible").

17               **d.**     **Mattel's Loss of Market Share Is Irreparable Harm**

18        Loss of market share constitutes a well-established form of irreparable harm.

19 See, e.g., Lubrizol Corp. v. Exxon Corp., 696 F. Supp. 302, 323 (N.D. Ohio 1988)

20 ("A loss of market share as a result of continued infringement has been found to

21 constitute irreparable harm."); John Fluke Mfg. Co., Inc. v. N. Am. Soar Corp., 1987

22 WL 46372, at *7 (D. N.J. Sept. 1, 1987) ("If defendant is not enjoined from selling

23 the Soar Series 4000 in the United States, Fluke will lose market shares to which it is

24

25

---

[94] Pet. for Writ of Mandamus, at 34 and 36, Hutnyan Decl. Ex. 85.

26 [95] Because MGA has not produced a balance sheet for any fiscal year after 2006,

27 Mattel does not know if MGA has sufficient cash or other assets to pay this loan.

[96] See Hutnyan Decl. Exs. 87-9.

28

1  entitled . . . The court finds that plaintiff has shown that it will be irreparably harmed

2  if defendant is not enjoined from selling the device."); <u>Pittway</u>, 667 F. Supp. at 592

3  ("Some of the injury to the plaintiff may be compensable, but there will be market

4  effects that could never be measurable in monetary terms. It is apparent that

5  irreparable injury would result if the injunction relief is not permitted").

6       MGA has asserted that its business model is to target Mattel market share

7  specifically.[97]  MGA has boasted that its sales of Bratz dolls have successfully

8  reduced Mattel's market share.[98]  Absent a permanent injunction, Mattel may

9  continue to lose market share to products that infringe Mattel's own copyrights. This

10 is irreparable harm. <u>Muze, Inc. v. Digital On-Demand, Inc.</u>, 123 F. Supp. 118, 131

11 (S.D.N.Y. 2000) ("The potential loss of market advantage has been recognized to

12 constitute irreparable harm."); <u>Pittway</u>, 667 F. Supp. at 592 (same). Irreparable lost

13 market share injuries can occur both in the market for dolls and in the market for

14

15

16 [97]  <u>See, e.g.</u>, Paschal, Jan, "With Bratz, a toymaker's dreams come true," Yahoo!
Finance, Feb. 14, 2002 (Dave Malacrida, an MGA executive, announcing that the Bratz

17 dolls were intended "to take market share away from Barbie, Mattel Inc.'s best selling
product"), at Bates No. MGA 0142815, Hutnyan Decl. Ex. 92; <u>see also</u> Fulmer, Melinda,

18 "Bratz Dolls' Maker Play to Win in Battle with Barbie," LA Times, Aug. 1. 2005 at Bates
No. NPD00127 (Larian: "'I'm very competitive . . . I want to be No.1 - I don't want to be

19 No. 2.'"), Hutnyan Decl. Ex. 93; Bates No. MGA 0190238 (Larian: "What is Barbie's

20 market share in UK? We want 50% of that for 2002 (and the rest in 2003!)").
[98]  <u>See, e.g.</u>, Isaac Larian email re: Isaac Larian Interview, June 30, 2003 (Larian: "our

21 growth is coming at the expense of other toy companies like Mattel"), TX 630 at Bates No.
MGA 0860578, Hutnyan Decl. Ex. 62; Emergency Motion Under Circuit Rule 27-3, at 3

22 (MGA claiming that its introduction of Bratz dolls in 2001 "soon began eroding Mattel's

23 substantial market share in fashion dolls"), Hutnyan Decl. Ex. 86; Pet. for Writ of
Mandamus, at 8, Hutnyan Decl. Ex. 85; Factivia, "Barbie's midlife crisis," May 14, 2004 at

24 Bates No. M0070243 ("MGA's Larian is keen to state . . . 'I can tell you that Bratz

25 awareness and market share are growing by double and triple digits in every country
worldwide while [Mattel is] losing market share.'"), Hutnyan Decl. Ex. 128; ABC

26 Nightline, Dec. 22, 2006, at Bates No. M0062149 ("Larian now says Bratz has a 40%

27 market share . . Larian claims the Bratz girls are breathing down the lanky plastic neck of
number one. That would be Barbie."), Hutnyan Decl. Ex. 90.

28

1   other Bratz-themed products that compete with similar merchandise made or licensed
2   by Mattel. See Paramount Pictures, 11 F. Supp. 2d at 336 ("A self-avowed substitute
3   for other Paramount licensed products adversely impacts the market for derivative
4   works").

5   **B.    There is No Adequate Legal Remedy**

6       Determination of whether there is irreparable harm significantly overlaps with
7   the determination of whether an  adequate remedy exists at law.[99]   Mattel lacks an
8   adequate remedy at law because a monetary award will not prevent future
9   infringement and will not vindicate Mattel's right to exclude.  See, e.g., Smith &
10  Nephew, Inc. v. Synthes, 466 F. Supp. 2d 978, 984 (W.D. Tenn. 2006) ("Monetary
11  damages generally are not an adequate remedy against future infringement because
12  the central value of holding a patent is the right to exclude others from using the
13  patented product"); Telequip Corp. v. The Change Exch., 2006 WL 2385425, at *2
14  (N.D.N.Y. Aug. 15, 2006) ("[M]onetary damages are not an adequate remedy against
15  future infringement because the 'principal value of a patent is its statutory right to
16  exclude'").

17      Also, as explained above, the risk that Mattel will be forced to prosecute
18  multiple suits against MGA, MGA's licensees, MGA's distributors and others to
19  protect its legal rights establishes the inadequacy of legal remedies.  Continental
20  Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1104-05 (9th Cir. 1994) ("the
21  multiplicity of suits necessarily to be engendered if redress was sought at law, all
22  establish the inadequacy of a legal remedy and the necessity for the intervention of

23  _____

24      [99]  Lewis v. S.S. Baune, 534 F.2d 1115, 1124 (5th Cir. 1976) ("Often times the concepts
    of 'irreparable injury' and 'no adequate remedy at law' are indistinguishable in the context
25  of a permanent injunction"); Grokster, 518 F. Supp. 2d at 1219 ("The requisite analysis for
    the second factor of the four-factor test inevitably overlaps with that of the first");
26  MercExchange, L.L.C. v. eBay, Inc., 500 F. Supp. 2d 556, 569 fn. 11 (E.D. Va. 2007) ("The
27      (footnote continued)

28

1  equity."); Equitable Life Assur. Soc. of U.S. v. Rex K. DeGeorge, 2006 WL

2  4704613, at *3 (C.D. Cal. Aug. 28, 2006) (permanent injunction warranted by "a

3  legitimate fear of multiple litigation").

4  ## C.    The Balance of Hardships Favors A Permanent Injunction

5          The balance of hardships weighs strongly in Mattel's favor.  The jury verdict

6  extinguishes any legitimate interest of MGA in the Bratz copyrights.  The verdict

7  also establishes that MGA violated Mattel's rights.  Any harm to MGA from an

8  injunction stems from its decision to violate Mattel's rights; that is harm that MGA

9  brought upon itself, and should not be considered.  See, e.g., Ty, Inc. v. GMA

10  Accessories, Inc., 959 F.Supp. 936, 945 (N.D. Ill. 1997) ("Loss of profits from

11  infringing products warrant little consideration in the balancing of harms analysis.").

12  See also Microsoft Corp. v. Atek 3000 Computer Inc., 2008 WL 2884761, at *5

13  (E.D.N.Y. July 23, 2008) ("The third factor-the balance of hardships-also favors

14  granting a permanent injunction because such an injunction only serves to require

15  defendant to comply with the Copyright and Lanham Acts and plaintiff stands to lose

16  goodwill and sales if an injunction is not granted."); Microsoft Corp. v. McGee, 490

17  F. Supp. 2d 874, 883 (S.D. Ohio 2007) (same).  Mattel, on the other hand, will be

18  irreparably harmed absent an injunction, through no fault of its own.

19  ## D.    The Public Interest Favors An Injunction

20          No benefit to the public flows from MGA's continued violations of copyright

21  law.  Grokster, 518 F. Supp. 2d at 1222 ("Certainly, the public does not benefit from

22  [defendant's] inducement of infringement"); UMG Recordings, Inc. v. Blake, 2007

23  WL 1853956, at *3 (E.D.N.C. June 26, 2007) ("No public interest will be disserved

24  by enjoining Defendant from continuing this activity"); Disney Enter., Inc. v. Delane,

25  446 F. Supp. 2d 402, 408 (D. Md. 2006) ("there is greater public benefit in securing

26

27  irreparable harm inquiry and remedy at law inquiry are essentially two sides of the same

28      (footnote continued)

1 the integrity of Plaintiffs' copyrights than in allowing Delane to make Plaintiffs'
2 copyrighted material available to the public"). To the contrary, the public interest is
3 served by preventing MGA's copyright infringement and protecting Mattel's rights.
4 Perfect 10 v. Google, Inc., 416 F. Supp. 2d 828, 859 (C.D. Cal. 2006), rev'd on other
5 grounds by Perfect 10 v. Amazon.com, Inc., 487 F.3d 701 (9th Cir. 2007) ("[T]he
6 public interest is also served when the rights of copyright holders are protected
7 against acts likely constituting infringement."); Arista Records, Inc. v. Kabani, 2004
8 WL 884445, at *4 (N.D. Tex. Apr. 23, 2004) ("[T]he public interest is affirmatively
9 served by requiring continuing strict adherence to intellectual property law.").
10 Moreover, the judicial system, and the public, would be better served if Mattel is not
11 forced to pursue a multiplicity of suits, which the denial of an injunction will require.

12    Thus, all four equitable factors weigh in favor of a permanent injunction to
13 restrain defendants from further infringement of the Bratz copyrights.

14 **III.    THE COURT SHOULD GRANT IMPOUNDMENT REMEDIES**

15    The Copyright Act provides for impoundment and destruction as remedies for
16 infringement. 17 U.S.C.A. § 503(a) ("[T]he court may order the impounding, on
17 such terms as it may deem reasonable, of all copies or phonorecords claimed to have
18 been made or used in violation of the copyright owner's exclusive rights, and of all
19 plates, molds, matrices, masters, tapes, film negatives, or other articles by means of
20 which such copies or phonorecords may be reproduced."); Sony Corp. of Am., 464
21 U.S. at 433-34 (noting that Copyright Act provides for remedies that include
22 "impoundment and destruction of all reproductions" of owner's work made in
23 violation of rights). Because current Bratz products infringe Mattel's Bratz
24 copyrights, the Court should impound and destroy all means of production of further
25 infringing products.

26

27 coin").

28

1    Impoundment and destruction are analyzed under the same four-part test as a
2  permanent injunction. Fed. R. Civ. P. 65(f); WPOW, Inc. v. MRLJ Enter., 584 F.
3  Supp. 132, 135 (D.D.C. 1984).  As shown above, Mattel satisfies these four
4  requirements and, thus, is also entitled to the impoundment and destruction of MGA's
5  infringing goods and its means of producing those goods.  Impoundment and
6  destruction are often granted along with permanent injunctions.[100]  Here, as part of
7  the injunction the Court should require defendants to deliver up all enjoined Bratz
8  products as well as all plates, molds, dies, matrices or other means of making them.

9  **IV.    THE COURT SHOULD ORDER THE INFRINGING PRODUCTS**
10         **WITHDRAWN FROM THE MARKET**

11   For all the reasons discussed above, the Court should also order a recall of
12 MGA's infringing products.  "Recall orders are routinely ordered as part of a
13 permanent injunction."  6 William F. Patry, Patry on Copyrights, § 22:81; see Rogers
14 v. Koons, 960 F.2d 301, 313 (2d Cir. 1992) ("the turn-over order of the artist's copy
15 is an equitable remedy issued under the broad powers vested in a trial judge under 17
16 U.S.C. § 503(b) . . .  We see no abuse of the district court's discretion in directing
17 turn-over"); Nikon, Inc. v. Ikon Corp., 1992 WL 398440 at *2 (S.D.N.Y. Dec. 18,
18 1992) ("A recall provision, as requested by [Plaintiff], is well within the court's
19 equitable powers."); Hukafit Sportswear, Inc. v. Banff, Ltd., Inc., 1985 WL 5943 at
20 *3 (S.D.N.Y. Dec. 5, 1985) (same).

21   As courts recognize, "recall is the only effective remedy" where a defendant
22 has widely distributed infringing products.  Gund, Inc. v. Golden Bear Co., Ltd.,

23
24   [100]   See, e.g., Del Amo v. Baccash, 2008 WL 2780978, at *10 (C.D. Cal. Jul. 15, 2008)
   ("Under the Copyright Act, 17 U.S.C. §§ 502(a) and 503(b), the Court can issue a
25 permanent injunction and order the return of infringed works to prevent future infringement
   by Defendants."); Kyjen Co., Inc. v. Vo-Toys, Inc., 223 F. Supp. 2d 1065, 1071 (C.D. Cal.
26 2002) ("Within thirty days of the issuance of this order, Defendant Vo-Toys, Inc. shall
27   (footnote continued)
28

7209/2649465.3

1  1992 WL 392602, at *5 (S.D.N.Y. Dec. 10, 1992). Recalls are particularly

2  appropriate where a defendant's infringing product competes with the plaintiff's

3  product and can cause a loss of market share. See, e.g., Cybermedia, Inc. v.

4  Symantec Corp., 19 F. Supp. 2d 1070, 1079 (N.D. Cal. 1998) ("In the absence of a

5  recall order, these products will continue to be sold in direct competition . . .

6  depriving [Plaintiff] of customers it might otherwise have acquired in the absence of

7  Defendants' infringement."). Courts also order recalls where, without one, a plaintiff

8  will be required to bring multiple lawsuits to remove the infringing products from the

9  market. Cybermedia, 19 F. Supp. 2d at 1079.

10  MGA has widely distributed its infringing Bratz products throughout the world

11  both directly and through licensees.[101] Conservative estimates identify over 206

12  infringing Bratz dolls currently available on the market.[102] MGA's infringing

13  products compete directly with fashion dolls sold by Mattel, and as discussed can

14  lead to lost market share for Mattel, an irreparable injury. Moreover, absent a recall

15  Mattel may be forced to bring a multiplicity of suits against distributors and others to

16  obtain orders withdrawing the infringing goods. Mattel is entitled to a recall to

17  prevent still further irreparable harm from occurring.

18  **V.   THE COURT SHOULD APPOINT A SPECIAL MASTER TO**

19  **MONITOR COMPLIANCE**

20  Pursuant to the Court's inherent power and Rule 53, Mattel also requests that

21  the Court appoint a special master to monitor implementation of the relief granted by

22  the Court. The potentially huge task ahead in enforcing the impoundment and recall

23

24  _____

deliver to Kyjen for destruction its inventory of the toys depicted in Exhibits 1B through

25  8B, attached hereto.").

[101] See 2007 and 2008 Bratz sales SKUs and Bratz Licensees list Hutnyan Decl. Exs. 5-

26  7; Hutnyan Decl. ¶ 10; see also Office Contact Information, MGA Entertainment's Website,

27  Hutnyan Decl. Ex. 148.

[102] See Proctor Decl. ¶¶ 90-92, Proctor Decl. Ex. 56.

28

1  relief sought with respect to MGA's infringing Bratz products constitutes just the sort

2  of post-trial matter for which appointment of a special master is appropriate. See

3  Fed. R. Civ. P. 53(a)(1)(C) (master may be appointed to "address . . . posttrial matters

4  that cannot be effectively and timely addressed by an available district judge or

5  magistrate judge of the district"); Halderman v. Pennhurst State School & Hosp., 612

6  F.2d 84, 111-12 (3d Cir. 1979) rev'd on other grounds by Pennhurst State School &

7  Hosp v. Halderman, 451 U.S. 1 (1981) (appointment of special master appropriate

8  where implementation of court order would be "a complex and lengthy process,

9  probably involving monitoring, dispute resolution, and development of detailed

10  enforcement mechanisms."). Having a special master oversee implementation, and

11  analyze and make recommendations to the Court regarding any issues or disputes

12  which may arise, will substantially reduce the burden on the Court.

13      A court-appointed master is particularly appropriate here. Where a party has

14  previously violated orders or otherwise engaged in misconduct, courts have

15  appointed masters to ensure compliance with prospective relief. See, e.g., Picker Int'l

16  Corp. v. Imaging Equip. Servs., Inc., 931 F. Supp. 18, 44 (D. Mass. 1995)

17  (appointing master where there was risk that court order would "be disobeyed if its

18  implementation is not monitored" based in part on defendants' "long history of

19  extensive misconduct"); Nat'l Ass'n of Radiation Survivors v. Turnage, 115 F.R.D.

20  543, 560 (N.D. Cal. 1987) (appointment of a master is appropriate "where parties

21  have failed to comply with court orders, displayed intransigence in the litigation, or

22  required close supervision") (citations omitted). MGA has disregarded Court orders

23  in the past. For example, after the Court sealed an anonymous letter received by

24  Isaac Larian, and after MGA's counsel promised to "go and make absolutely certain

25  that there is no distribution to the press,"[103] the sealed letter was quoted the very next

26

27  [103]  Redacted June 5, 2008 Sidebar Conference Transcript at 6:22-23.

28

day in a <u>Los Angeles Times</u> article.[104]  That same letter is now publicly available on MGA's website.[105]  Similarly, nearly a year after Mattel inadvertently produced and clawed back a log protected by the work product doctrine, and after MGA certified destruction of all copies of the log, the <u>Wall Street Journal</u> published an article summarizing the log's contents.[106]  Defendants have also been found to have engaged in "egregious" violations of discovery orders.[107]

Given MGA's past recalcitrance and the complexity of the compliance issues presented by the relief Mattel is requesting, implementation of any order issued by the Court is likely to lead to still further disputes.  The appointment of a special master is appropriate to ensure compliance, and to ease the burden on the Court.

## Conclusion

For the foregoing reasons, this motion should be granted in its entirety.

DATED:  September 29, 2008           QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By  _Michael T Zeller/BJP_
         Michael T Zeller
         Attorneys for Mattel, Inc.

---

[104]  David Colker, <u>Timing Is Key in Mattel Suit Against Bratz</u>, L.A. Times, June 6, 2008, Hutnyan Decl. Ex. 124.

[105]  MGA has refused to remove the letter, despite requests by Mattel.  <u>See</u> Email from Lauren Aguiar to Michael Zeller, dated August 21, 2008, Hutnyan Decl. Ex. 125.

[106]  Nicholas Casey, <u>Barbie's Revenge, Brawl over Doll Is Heading to Trial</u>, Wall St. J., May 23, 2008, at 4, Hutnyan Decl. Ex. 127; June 12, 2007 letter from Laura Heffley of O'Melveny to T. Alger, Hutnyan Decl. Ex. 126; <u>see generally</u> Mattel, Inc.'s Opposition to MGA Parties' Motion for Limited Discovery, and Cross-Motion for Issue Preclusion, dated June 16, 2008, Docket No. 4000, Hutnyan Decl. Ex. 142 at 10-11.

[107]  Order Granting in Part Mattel's Motion to Enforce the Court's Order of May 16, 2007, to Compel MGA to Produce Witnesses for Deposition Pursuant to Rule 30(b)(6), and Granting Request for Sanctions, Hutnyan Decl. Ex. 143 at 9.