own personal knowledge or gleaned from books and records of the Plaintiff to which I have free access. Insofar as facts and matters that do not fall within the aforesaid category, they are related to me by the respective sources stated hereinunder and are true to the best of my knowledge and belief.

2. The Plaintiff was originally founded in 1979 as a consumer electronics business. In 1987, the Plaintiff obtained exclusive rights to sell Nintendo handheld LCD game players called Game Boy in the United States of America ("USA") and Game Boy was an instant success worldwide. This event paved way for the Plaintiff to create innovative products for other best selling licences, including Hello Kitty and Power Rangers. In 2002, the Plaintiff added "Spider-Man: The Movie" and in 2003, "The Hulk" to its already existing collection of licences. The Plaintiff is thus a successful and reputable company in the toy business internationally. The Plaintiff holds other licences including licences from Marvel Characters, Inc., Atari Corporation and BVS Merchandising, Inc. (Disney). Now produced and shown to me marked "LSC-1" is a copy of the corporate profile of the Plaintiff downloaded from its website.

3. Since 1987 the Plaintiff has primarily concentrated and focused its efforts in the toy industry and as at the date hereof, the Plaintiff has 8 product categories and they are smart toys, interactive dolls, handheld games, fashion dolls, youth electronics, music, licensed products and small dolls. In the years 2002 and 2003, the Plaintiff's revenue exceeded US$225 million and US$750 million respectively. The projected revenue for the year 2004 is over US$1.20 billion due to the remarkable success of a range of dolls known as BRATZ which is the subject matter of this action and will be dealt

2



EXHIBIT 44
PAGE 1947

MGA 3888204
EX 13743-0002

with in detail hereinafter. For the year 2002, the sale of BRATZ dolls and accessories accounted for 69% of the total revenue of approximately US$225 million. For the year 2003, the sale of Bratz dolls and accessories accounted for around 75% to 80% of the total revenue of approximately US$750 million. The Plaintiff estimates that the sale of BRATZ dolls and accessories for the year 2004 will account for around 65% to 70% of the revenue of the year.

4. Toys designed and marketed by the Plaintiff have been the subject of numerous awards and prizes. However, the most successful toy designed and marketed by the Plaintiff must be the BRATZ dolls. For two consecutive years in 2001 and 2002, the Plaintiff won the toy industry's most prestigious award, The People's Choice Toy of the Year for BRATZ-related toys. It has also won two consecutive Family Fun Toy of the Year award for BRATZ-related toys in 2001 and 2002. Additionally, in 2001 and 2002, BRATZ-related toys won Today's toy tests. The Bratz dolls have achieved worldwide fame and popularity.

5. The BRATZ dolls come in 2 sizes. The full version stands at 10 inches tall and the mini version stands at 4 and a half inches tall. The mini version has been marketed under the names "Micro BRATZ" and "Lil' BRATZ" respectively but will be referred to herein as "Mini BRATZ". This application concerns both versions of BRATZ dolls.

**Subsistence and Ownership of Copyright Works**

6. On or about 18th September 2000, the Plaintiff entered into an agreement with Mr.

3



MGA 3888205
EX 13743-0003

Carter Bryant ("Mr. Bryant") under which Mr. Bryant designed and developed a line of dolls known as BRATZ ("the Bryant Agreement"). Mr. Bryant was a graduate of Ottis College in fashion and toy design. Although BRATZ is a variation of the word "brats", the former was coined by the Plaintiff not to denote naughty or spoilt children but to denote hip and cool young adolescent or teenage girls. This idea of hip and cool is born out in the design of the BRATZ dolls.

7. Now produced and shown to me marked "LSC-2" is a copy of the Bryant Agreement. I crave leave to refer to clause 3 of the Bryant Agreement whereby all intellectual property rights including copyright subsisting in the works generated by Mr. Bryant shall be owned by the Plaintiff. Pursuant and prior to the Bryant Agreement and commission, Mr. Bryant initially designed a range of 4 girls and subsequently extended the range by adding 1 more girl and 4 boys. The designs of the BRATZ dolls are all original drawings created by Mr. Bryant using his own independent labour, skill and judgement and wherein copyright subsist. At all material times, Mr. Bryant is a resident of and domiciled in USA.

8. Now produced and shown to me marked "LSC-3" are true copies of 18 initial concept drawings of the first 4 BRATZ dolls designed by Mr. Bryant pursuant and prior to the Bryant Agreement. Now produced and shown to me marked "LSC-4" is a true copy of a sheet of paper setting out the initial concept and idea of the BRATZ dolls by Mr. Bryant. The girls represent best friends in high school who love to trade clothes, shoes and hairdos. Since these accessories are interchangeable, the dolls can look different everyday. The success of the BRATZ dolls ensured a lucrative business of

4




EXHIBIT 44
PAGE 1949

MGA 3888206
EX 13743-0004

supplying accessories to the owners of the BRATZ dolls creating a steady stream of revenue.

9. The first 4 BRATZ dolls were each given a name and a different ethnic origin so they could appeal to everyone in the targeted age group of girls between 5 and 14 years old. Cloe is Caucasian, Sasha is Black, Yasmin is Hispanic and Jade is Asian. Meygan the fifth female doll that was subsequently added to the range is a red-head.

10. After making the design drawings exhibited as "LSC-3", wax models of the sculpting of the head, body parts and shoes of the BRATZ dolls were made by Margaret Leahy who was a freelance sculptor in or about winter 2000-2001. These wax models were created by Margaret Leahy using her own independent skill, labour and judgement wherein copyright subsisted. Margaret Leahy was commissioned by the Plaintiff to make the said wax models for valuable consideration. At all material times, Margaret Leahy was a resident of and domiciled in USA. It was the understanding and agreement between Margaret Leahy and the Plaintiff that all intellectual property rights including copyright subsisting in the wax models shall belong to the Plaintiff. Now produced and shown to me marked "LSC-5" is a copy assignment of copyright executed by Margaret Leahy in favour of the Plaintiff.

11. The wax models were then used to make silicon rubber moulds of the head, body parts and shoes of the BRATZ dolls. The silicon rubber moulds were made under commission by Jessie Ramirez under valuable consideration in or about winter 2000-2001. These silicon rubber moulds were created by Jessie Ramirez using her own

MGA 3888207
EX 13743-0005

independent skill, labour and judgement wherein copyright subsisted. At all material times, Jessie Ramirez is a resident of and domiciled in USA. It was the understanding and agreement between Jessie Ramirez and the Plaintiff that all intellectual property rights including copyright subsisting in the silicon rubber moulds shall belong to the Plaintiff. During the process of making the silicon rubber moulds the wax models were destroyed.

12. Polyurethane samples were produced from the silicon rubber moulds. The silicon rubber moulds have also been destroyed after the polyurethane samples were made. These samples were necessary for the making of production moulds of the dolls. There are now produced and shown to me marked "LSC-6" the polyurethane samples of the head sculpt and some body parts and shoes of BRATZ dolls. It was the understanding and agreement between Jesse Ramirez and the Plaintiff that all intellectual property rights including copyright subsisting in the polyurethane samples shall belong to the Plaintiff. Now produced and shown to me marked "LSC-7" is a copy assignment of copyright executed by Jesse Ramirez in favour of the Plaintiff.

13. As regards the mini BRATZ, the design process is more or less the same as the full version. Margaret Leahy was again commissioned to produce wax models of the miniature version of the BRATZ dolls. The wax models were used by Jessie Ramirez to produce silicon rubber moulds and from the silicon rubber moulds, polyurethane samples of the head and body parts were produced. Now produced and shown to me marked as "LSC-8" are polyurethane samples of the head and body parts of the mini BRATZ. Again, the wax models and the silicon rubber moulds were destroyed during

6



the process only leaving behind the polyurethane samples. Similar to the full version, copyright subsisting in the mini version of the wax models, silicon rubber moulds and polyurethane samples belong to the Plaintiff and are covered by the respective assignment exhibited as "LSC-5" and "LSC-7".

14. The facial decorations and features of the BRATZ dolls are unique and much time, effort and monetary resources have been expended in creating and perfecting them. The Plaintiff commissioned Anne Rhee to design the facial decoration of the BRATZ dolls with the understanding and agreement that all intellectual property rights including copyright shall belong to the Plaintiff. At all material times, Anne Rhee is a resident of and domiciled in USA.

15. Based on and originated from the initial concept drawings of Mr. Bryant, Anna Rhee drew some decoration directions for the facial decorations for different series of dolls. She then created the original decor or paint masters which are hand-painted facial decorations on a rubber head sculpt of a doll. With the input of Mr. Bryant, Anne Rhee revised the decor masters a number of times until they were perfected being the final version that were used to serve as the benchmark and template from which the original four different BRATZ dolls' individual facial decorations were mass produced by spray masking. Now produced and shown to me marked "LSC-9" is the pile of decoration directions (inclusive those on the 2001 Fall series) made by Anna Rhee from the initial drawings of Mr. Bryant in or about Winter 2000-2001, "LSC-10a-d" are the decor masters hand-painted by Anna Rhee for the 2001 Fall Series in or about Winter 2000-2001 and "LSC-11" is a bundle of documents setting out the

7




EXHIBIT 44
PAGE 1952

MGA 3888209
EX 13743-0007

various changes contributed to by Mr. Bryant during the design process. There is now produced and shown to me marked "LSC-12" a copy of the assignment of copyright executed by Anne Rhee in favour of the Plaintiff. Copyright subsisting in the above decor masters and directions and drawings made by Anne Rhee belong to the Plaintiff and are covered by the assignment exhibited as "LSC-12" and the copyright subsisting in "LSC-11" is covered by "LSC-2".

16. The Plaintiff has also registered the design of the first 4 BRATZ in the United Kingdom ("UK") in July 2001. There are now produced and shown to me marked "LSC-13" copy certificates of the registered designs dated 27th July 2001.

17. The full version of the first 4 BRATZ dolls were first published in USA in June 2001 (2001 Fall Series) when they were offered for sale to the general public. The mini version of the first 4 BRATZ dolls were first published in the United States of America in or about March 2002 when they were offered for sale to the general public. Both versions of the BRATZ dolls were available for sale in Hong Kong since December 2002. Now produced and shown to me marked "LSC-14a-d" are samples of the first 4 full version BRATZ dolls in their packaging and "LSC-15a-d" are samples of the first 4 mini version BRATZ dolls in their packaging.

18. The BRATZ dolls are unique in a variety of ways including their oversized heads and individual facial decoration. One thing that has contributed to the success of BRATZ is the oversized eyes and the protrusive mouth that are capable of being decorated with makeup and the diminished size of the nose that serves no decorative purposes.

8


EXHIBIT 44
PAGE 1953

MGA 3888210
EX 13743-0008

Thus, the elements of the face that can be made-up, the eyes and mouth, are exaggerated while the elements of the face that cannot be made-up, the nose, is reduced. In addition, BRATZ make-up is multi-coloured and the eyelashes are exaggerated in size but limited in number of eyelashes. The lipstick is also two-toned in order to draw attention to the lips.

19. A prominent feature of BRATZ is the snap-on shoes. Mr. Bryant's design of the snap-on shoes can be shown in the concept drawing with 2 identical girls standing in the same posture with four hands demonstrating the interchangeable hairdos and snap on shoes for the BRATZ dolls, the drawing titled "Basic Doll Piece Count" which narrates different interchangeable pieces of BRATZ dolls, inclusive "Pop On / Off Sneakers" and "Pop On / Off Mary Janes" (plat-formed sandals) and the body sketch all exhibited in "LSC-3" hereinabove. The interchangeable shoes are an important part of the play value of BRATZ. By employing snap-on shoes, girls are able to easily change the dolls footwear and it allows many different varieties of footwear to be worn by the dolls.

20. The current average FOB sales value of the full version and mini BRATZ dolls are US$10.66 and US$4.73 respectively.

21. The BRATZ dolls and their accessories are marketed and sold in more than 52 countries and places including the European Union, the Americas, the Balkans, the Baltics, Norway, Switzerland, Russia, Ukraine, Poland, Hungary, Czech Republic, Lebanon, UAE, Saudi Arabia, Egypt, Syria, Israel, South Africa, Australia, New



EXHIBIT 44
PAGE 1954

MGA 3888211
EX 13743-0009

Zealand, Philippines, Indonesia, Taiwan, Thailand, Singapore, South Korea, Japan and Hong Kong.

22. The BRATZ dolls have their own website at "www.bratzpack.com". The site provides some games, e-greetings and Mix N Match Mall of BRATZ' fashion and hairdos. The site also maintains a fan club known as BRATZ pack and maintain a list of its members. The aim of this fan club is to notify its members of new fashion trends that the BRATZ dolls will wear themselves and launch and marketing thereof. Now produced and shown to me marked "LSC-16" are downloaded copies from the said website.

23. So far the Plaintiff has spent a total of over US$22 million in advertising and on promotion expenses worldwide in relation to BRATZ.

24. As mentioned hereinbefore, the BRATZ dolls have become an instant success and they have become collectibles. Considerable media coverage have been given to these dolls and now produced and shown to me marked "LSC-17" is a selection of press cuttings and celebrity photos of the BRATZ pack including Singtao Daily dated 13th December 2002 and South China Morning Post dated 19th January 2003 which reported the official launch of BRATZ dolls in Hong Kong in December 2002.

25. Another major source of revenue generated by the BRATZ dolls is income derived form merchandising rights by granting non-exclusive licences to other companies worldwide. So far, 120 merchandise licence agreements have been granted in respect of a wide range of products including paper napkins, girls clothing, jewelry, bedding,

10

EXHIBIT 44
PAGE 1955

MGA 3888212
EX 13743-0010