THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, CA 90071-3144
Tel.: (213) 687-5000 / Fax: (213) 687-5600

RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, 38th Floor
San Francisco, CA 94111-5974
Tel.: (415) 984-6400 / Fax: (415) 984-2698

Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE de Mexico, S.R.L. de C.V., and Isaac Larian

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>MGA'S OPPOSITION TO MATTEL, INC.'S *EX PARTE* APPLICATION FOR AN EXPEDITED HEARING ON MATTEL'S MOTION FOR A PERMANENT INJUNCTION<br><br>Phase 1(a)<br>Trial Date:       May 27, 2008<br><br>Phase 1(b)<br>Trial Date:       July 23, 2008<br><br>Phase 1(c)<br>Hearing Date:  Nov. 10, 2008 |

## I. PRELIMINARY STATEMENT

On September 2, 2008, the Court issued its "Order Setting Various Briefing Schedules," which set the hearing on Mattel's Motion for Permanent Injunction for November 10, 2008. Mattel, which had opposed that schedule, was apparently unhappy with the Court's Order but decided not to seek a modification to the scheduling Order pursuant to Federal Rule of Civil Procedure 16(b)(4). Instead, on the day when its papers were due, and the clock began ticking for MGA's response, Mattel filed an ex parte application seeking to alter the schedule by slashing the time for MGA's opposition to 11 days, *enlarging the time for Mattel's reply by three days*, and cutting by two weeks the Court's time to consider the papers on what could be the most important motion in the case. Mattel's request, outrageous on its face, should be summarily rejected.

First, there is no need for emergency ex parte relief. If Mattel really needed to have the hearing and briefing schedule changed, it could have moved the Court for such a change immediately after the Court issued its Phase 1(c) scheduling Order on September 2. Instead, Mattel sat on its hands, demonstrating by its inaction that it does not believe the requested relief is required. Accordingly, Mattel's ex parte Application runs afoul of this Court's Standing Order, pursuant to which Mattel must demonstrate: (1) why the requested relief could not have been sought in the usual manner; and (2) that it was without fault in creating whatever it is that it perceives as a crisis condition. See Standing Order ¶ 6 (citing Mission Power Engineering Co. v. Continental Casualty Co., 883 F. Supp. 488 (C.D. Cal. 1995) (setting forth the showing necessary to justify ex parte relief)).

Second, Mattel has failed to establish that it will suffer any harm if the schedule set by the Court is maintained. Mattel claims that it does much of its business during the holiday season and that permitting Bratz dolls and related products to remain on store shelves will somehow reduce that business. But Mattel

has failed to submit a single shred of evidence in support of its ex parte Application that any Mattel sale – during a holiday season or otherwise – has been or will be lost as a result of the presence of Bratz products in the marketplace. The paucity of such evidence is not surprising since Mattel vociferously opposed any attempt by MGA to take discovery or submit evidence on this point. For example, Mattel previously confirmed for the Court that "in Phase 1, it would not attempt to quantify the amount of sales of Mattel products it has lost because of Bratz as a form of damages,"[1] and argued that experts' "views regarding competition between MGA and Mattel and the winner of that competition at any given time is irrelevant."[2]

For these reasons, as more fully set forth below, Mattel's ex parte Application should be denied in its entirety.

## II.  ARGUMENT

### A. The Application Is Untimely And Inappropriate Because Mattel Intentionally And Inexcusably Delayed Its Scheduling Request

Many courts in this district have recognized the misuse of ex parte applications. This Court is one of them. As this Court's "Standing Order" states:

> **Ex Parte Applications:** Counsel are reminded that ex parte applications are solely for extraordinary relief. See Mission Power Engineering Co. v. Continental Casualty Co., 883 F. Supp. 488 (C.D. Cal. 1995).[3]

In Mission Power, the court outlined the appropriate standards for filing and granting ex parte motions and discussed the problems they cause to the adversary system and to the administration of justice. *The court then denied an ex parte motion to shorten time to hear a motion.* Id. at 493. The same result is in order here.

---

[1] Mattel's Motion in Limine No. 8 at 3-4; Docket No. 3160.
[2] Mattel's Motion in Limine No. 9 at 11, 12; Docket No. 3161.
[3] Standing Order ¶ 6.

1    Like the <u>Mission Power</u> plaintiff, Mattel failed to demonstrate why the
2 requested relief could not have been sought in the usual manner, *i.e.*, by way of a
3 regularly noticed motion seeking modification of the Phase 1(c) scheduling order
4 pursuant to Federal Rule of Civil Procedure 16(b)(4). <u>See id.</u> at 492.  On September
5 2, 2008, the Court issued its "Order Setting Various Briefing Schedules" for Phase
6 1(c).  Immediately after the Order was issued, Mattel could have commenced regular
7 motion procedures to seek a revision of the schedule.  Mattel instead did nothing for
8 27 days; it made no objection to the schedule and filed no motion to amend the Order.
9 Rather, Mattel exhausted the briefing time afforded to it under the September 2
10 Order and then on September 29, the day it filed its motion for injunctive relief,
11 simultaneously sought an <u>ex parte</u> alteration of the schedule regarding that motion –
12 one that shortens MGA's time to respond while lengthening Mattel's time to reply.
13   Mattel has provided no explanation for its inexcusable delay.  Accordingly,
14 Mattel's <u>ex parte</u> Application should be denied.  <u>See</u> <u>In re Real Estate Assocs. Ltd.</u>
15 <u>P'ship Litig.</u>, Case No. CV 98-7035 DDP (AJWx), 2002 U.S. Dist. LEXIS 18048, at
16 *5 (C.D. Cal. Aug. 28, 2002) (denying plaintiffs' <u>ex parte</u> application where plaintiffs
17 failed to explain why they waited over three weeks before attempting to strike the
18 contested declaration).
19   Likewise, Mattel has also failed to "establish that it was without fault in
20 creating whatever it is that it perceives as a crisis condition." <u>Mission Power</u>, 883 F.
21 Supp. at 493.  The purported foundation for the <u>ex parte</u> relief requested is that sales
22 of Bratz-related products will reduce sales of Mattel products during the holiday
23 season if the hearing is held on November 10 instead of October 27.  But Christmas
24 was not invented this year.  Mattel knew *on September 2* that it should seek an
25 adjustment to the Phase 1(c) schedule.  But Mattel did nothing and has no one to
26 blame but itself for its inaction.  Indeed, at least four holiday seasons have passed
27 since Mattel discovered the alleged infringing activity, but Mattel never moved for
28

injunctive relief. Accordingly, any last-minute urgency was caused by Mattel and thus the ex parte Application should be denied. See In re Intermagnetics Am., Inc., 101 B.R. 191, 193 (Bankr. C.D. Cal. 1989) (ex parte "applications are not intended to save the day for parties who have failed to present requests when they should have"); Love v. The Mail on Sunday, Case No. CV 05-7798 ABC (PJWx), 2006 U.S. Dist. LEXIS 95454, at **3-4 (C.D. Cal. July 17, 2006) (denying ex parte relief where it was plaintiff's "own neglect that gave rise to the circumstance prompting his ex parte application").

### B. The Application Is A Tactical Maneuver Advanced Without Regard For The Court's Time

Mattel has advanced no reason for the delay because the ex parte Application is merely a tactical ploy. After using the full allotment of time to comfortably draft its Motion for Permanent Injunction, Mattel decided to try to "jam" MGA by moving to shorten MGA's allotted response time, by requiring MGA to take on the additional work of answering this improvident ex parte application and, in an astonishingly unfair move, actually seeking to *increase* Mattel's time to reply. This type of gamesmanship is the exact kind that the Mission Power court warned was often the improper aim of ex parte motions: "The goal often appears to surprise opposing counsel or at least to force him or her to drop all other work to respond on short notice." Id. at 490. Mattel should not be rewarded for such gamesmanship.

This is particularly true where Mattel has shown little regard for the Court's time as well. While seeking to shorten by three days the time for MGA to respond to the Motion for Permanent Injunction (from October 13 to October 10) and the time between the reply brief and the hearing for the Court to study the papers (from November 10 to October 27), Mattel proposes no change to the deadline for its reply brief (from October 20 to October 20). In fact, Mattel would actually *gain* three

extra days to file its reply brief as a result of MGA's brief being due on October 10 instead of October 13.

Mattel's improper use of the <u>ex parte</u> procedure for its last-minute, tactical scheduling request also puts an unnecessary burden on the Court. As the <u>Mission Power</u> court explained:

> When an ex parte motion is filed, it is hand-delivered immediately from the clerk's office to the judge. The judge drops everything except other urgent matters to study the papers. It is assumed that the tomatoes are about to spoil or the yacht is about to leave the jurisdiction and that all will be lost unless immediate action is taken. Other litigants are relegated to a secondary priority. The judge stops processing other motions. Even hearings or trials—where a courtroom of deserving users of the court are waiting—are often interrupted or delayed.
>
> It is rare that a lawyer's credibility is more on the line, more vulnerable, than when he or she has created this kind of interruption. Lawyers must understand that filing an ex part motion, whether of the pure or hybrid type, is the forensic equivalent of standing in a crowded theater and shouting, "Fire!" There had better be a fire.

<u>Id.</u> at 491-92.

There is clearly no fire here. Mattel knew all of the points it makes in support of its <u>ex parte</u> Application before the Phase 1(c) schedule was issued and could have raised them then. It did not do so, however. Moreover, it raised no objection to the scheduling Order *after* its issuance on September 2. Now, only after conveniently exhausting the entirety of the 27 days it was allotted to draft its motion papers, Mattel screams "fire," seeking to shorten the Court's and MGA's time to prepare while simultaneously increasing its own time to reply. Again, there is no fire and Mattel should not be rewarded for its gamesmanship.

### C. Mattel's Lack Of Diligence Prevents It From Establishing The Good Cause Necessary To Modify The Schedule

In truth, what Mattel seeks is a tardy modification of the Phase 1(c) scheduling order issued on September 2. "A schedule may be modified only for good cause." Fed. R. Civ. P. 16(b)(4). "[T]he 'good cause' standard set forth in Rule 16 primarily focuses upon the diligence of the party requesting the amendment." Schwerdt v. Int'l Fid. Ins. Co., 28 Fed. Appx. 715, 719 (9th Cir. 2002). "'If that party was not diligent, the inquiry should end.'" Id. (quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992), and Schwerdt, 28 F. Appx. at 719). If the matters allegedly necessitating an amendment to the schedule were reasonably foreseeable, or the party did not seek relief once it became apparent that it an amendment was needed, then the party was not diligent. E.g., Jackson v. Laureate, Inc., 186 F.R.D. 605, 608 (E.D. Cal. 1999). In inexcusably waiting four weeks after the scheduling Order was issued and until after the briefing under the Order had commenced, Mattel was not diligent in seeking an amendment to the scheduling Order.[4]

### D. Mattel Failed To Establish That Any Irreparable Harm Will Result If The Court Does Not Change Its Hearing Schedule And Force MGA To File Its Opposition Brief Earlier

Finally, Mattel also failed to establish – and could not establish – that it will be irreparably harmed if its Motion for Permanent Injunction is heard on November 10 as opposed to October 27. Mission Power, 883 F. Supp. at 492 ("the evidence must show that moving party's cause will be irreparably prejudiced if heard according to the regular noticed motion procedures"). In support of its ex parte Application, Mattel asserts that during the holiday season it invests heavily in advertising, ships much of its product, earns much of its revenue for its Barbie fashion dolls, and that

---

[4] Notably, this Court requires applications to extend scheduling deadlines to be filed in advance of the due date. See Standing Order ¶ 7. It reasonably follows from this standing requirement that applications to shorten an opposing party's deadline should be filed before the opposing party's clock starts ticking.

sales of Bratz products will reduce the sales of Mattel products. These blanket, unsubstantiated assertions do not constitute or connect to *any* cognizable harm to Mattel, much less any irreparable harm, as either a matter of fact or law.

Moreover, there is not a single piece of evidence cited by Mattel that such sales have in fact been lost or will be lost. Mattel's evidentiary failure is not surprising: information which Mattel now attempts to create and buoy in support of a requested schedule change is the same information that it has blocked from being developed or introduced during Phase 1 in the first instance. As Mattel has previously argued to the Court, "Mattel long ago confirmed to MGA that, in Phase 1, it would not attempt to quantify the amount of sales of Mattel products it has lost because of Bratz as a form of damages."[5] Similarly, Mattel argued that "Barbie's popularity in the face of competition is irrelevant in this case," that experts "should be prevented from testifying about the comparative success of Bratz and Barbie," and that experts' "views regarding competition between MGA and Mattel and the winner of that competition at any given time is irrelevant."[6]

Where Mattel has repeatedly fought the discovery, development and introduction of information pertaining to the success or failure of Barbie and other Mattel products because of alleged Bratz infringement, Mattel cannot now be permitted to create, produce and use such previously withheld information as a sword to execute an unfair tactical advantage.

---

[5] Mattel's Motion in Limine No. 8 at 3-4; Docket No. 3160.
[6] Mattel's Motion in Limine No. 9 at 11, 12; Docket No. 3161.

### III. CONCLUSION

For the reasons set forth above, Mattel's ex parte Application should be denied in its entirety.

DATED: October 1, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: /s/ Thomas J. Nolan
Thomas J. Nolan
Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE de Mexico, S.R.L. de C.V., and Isaac Larian