QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No.       CV 04-09059<br>Case No.       CV 05-2727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **MATTEL INC.'S REPLY IN SUPPORT OF ITS *EX PARTE* APPLICATION FOR AN EXPEDITED HEARING ON MATTEL'S MOTION FOR A PERMANENT INJUNCTION** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | **Phase 1(a)**<br>Trial Date:   May 27, 2008<br><br>**Phase 1(b)**<br>Trial Date:   July 23, 2008 |

Although it devotes 8 pages to a simple scheduling application, MGA says little about the actual issue:  whether Mattel will be harmed by not having the hearing on its injunction motion advanced.  That is because there is little MGA can say -- the harm is both patent and irreparable.

What little MGA says on the subject is misguided.  MGA claims in its Opposition that there is "not a single piece of evidence cited by Mattel" that sales of Mattel products will be lessened should infringing Bratz products remain on the market during the holiday season.  That ignores the record.  MGA has repeatedly admitted that its infringing Bratz dolls have taken Mattel's market share.[1]  For example, Isaac Larian has said that "our growth is coming at the expense of other toy companies like Mattel"[2] and that "Bratz awareness and market share are growing by double and triple digits in every country worldwide while [Mattel is] losing market share."[3]  Indeed, MGA has stated that Bratz was designed to take market share from Mattel's fashion dolls.[4]  Moreover, Mattel has shown through the Simpson Taylor declaration, which MGA overlooks, that the holiday season is a crucial period for Mattel, in terms of both revenues from dolls that compete most directly with Bratz and advertising spending for such items.  If there ever were a risk of loss of market share to Bratz, that risk is heightened right now, on the cusp of the holiday season.

Courts recognize that a loss of market share to an infringing product is irreparable harm.  See, e.g., Lubrizol Corp. v. Exxon Corp., 696 F. Supp. 302, 323 (N.D. Ohio 1988) ("A loss of market share as a result of continued infringement has

[1] See Mattel, Inc.'s Motion for a Permanent Injunction, at 23 n.99, and Declaration of Diane C. Hutnyan in support thereof ("Hutnyan Decl."), Exhibits 62 and 128.
[2] Id.
[3] Id.
[4] Id. at n.98, and Hutnyan Decl. at Exhibits 92-93.

1   been found to constitute irreparable harm."); John Fluke Mfg. Co., Inc. v. N. Am.

2   Soar Corp., 1987 WL 46372, at *7 (D. N.J. Sept. 1, 1987) (same).   Moreover,

3   because proof of prospective loss of market share can never be shown with

4   certainty, a plaintiff need only show the potential for market share losses to show

5   irreparable injury.  See, e.g., Muze, Inc. v. Digital On-Demand, Inc., 123 F. Supp.

6   118, 131 (S.D.N.Y. 2000) ("The potential loss of market advantage has been

7   recognized to constitute irreparable harm."); Pittway v. Black & Decker, 667 F.

8   Supp. 585, 592 (N.D. Ill. 1987) (same).

9        Because MGA cannot plausibly dispute its own business plan to take Mattel's

10   market share, it instead suggests Mattel should somehow be estopped from relying

11   on *prospective* market share losses because Mattel did not seek damages at trial for

12   *past* market share losses.  (Opp. at 7.)  The argument is a non-sequitur.  MGA is

13   correct that Mattel did not *seek damages* for past market share losses at trial, but that

14   does not imply that Mattel products never lost market share to Bratz products, nor

15   that they will not in the future.  It is precisely because it is inordinately difficult to

16   quantify market share losses (as required to obtain an award of past damages) that

17   the prospect of such *future* losses is deemed irreparable.  Nor, in any event, is Mattel

18   barred from presenting additional evidence for this Court's consideration on its

19   motion for injunction, and MGA cites no apposite authority for its unfounded

20   suggestion otherwise.  By expediting the hearing on Mattel's motion, the Court can

21   help minimize those prospective, unfair injuries to Mattel caused by MGA's

22   infringement.

23        Having no persuasive argument on the merits of the harm to Mattel, MGA

24   argues ostensible delay.  Thus, MGA claims that Mattel knew of the need for a

25   schedule modification long ago, "[b]ut . . . did nothing and has no one to blame but

26   itself for its inaction."  (Opp. at 3.)  In fact, four days before the Court issued its

27

28

scheduling Order on September 2, Mattel *did* ask the Court to consider injunctive and other equitable relief on an expedited basis.[5]  MGA claims Mattel should have moved the Court for further relief "immediately after the Court issued its Phase 1(c) scheduling Order on September 2,"[6] but that is scarcely the type of inordinate, prejudicial delay that could fairly warrant denial of advancing the hearing date. Moreover, MGA overlooks that item No. 1 of the Court's September 2 Order *stayed* all activities other than those "aimed in good faith at a complete and global settlement."[7]  The first court day after the stay was September 22; after that Mattel promptly moved to advance the hearing further after attempting to work out the matter with MGA.  MGA's delay argument is unavailing.

Finally, contrary to MGA's charge of "gamesmanship," Mattel sought a schedule consistent with the Local Rules.  Mattel did not request that MGA's opposition be set for October 13 because that is Columbus Day, a court holiday.  Of course, Mattel has no objection if the Court wishes to order that MGA's opposition be due then rather than on the 10th.  This application is not about gamesmanship. Far from it.  It is about avoiding prospective losses to Mattel that are both likely and irreparable -- a point MGA cannot refute.

---

[5]   Docket No. 4290, Mattel, Inc.'s Request for Modifications to Proposed Schedule.

[6]   Opp. at 1.

[7]   Docket No. 4293, Order Setting Various Briefing Schedules, at 1.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court grant its application for an expedited hearing.

DATED:  October 2, 2008           QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By /s/ Michael T. Zeller
    Michael T. Zeller
    Attorneys for Mattel, Inc.

-4-