THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
(laguiar@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, CA 90071-3144
Tel.: (213) 687-5000 / Fax: (213) 687-5600

RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, 38th Floor
San Francisco, CA 94111-5974
Tel.: (415) 984-6400 / Fax: (415) 984-2698

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| v. | |
| MATTEL, INC., a Delaware corporation, | DECLARATION OF PAUL K. MEYER |
| Defendant. | |
| | Hearing Date: November 10, 2008<br>Time: 1:00 PM |
| AND CONSOLIDATED ACTIONS. | |

Declaration of Paul K. Meyer - Case No. CV 04-9049 SGL (RNBx)

I, Paul K. Meyer, declare as follows:

1. Counsel for MGA Entertainment, Inc. ("MGA") retained Navigant Consulting, Inc. ("NCI") to address damages issues in the MGA Entertainment, Inc. v. Mattel, Inc., et al. matter. I provided testimony in the trial regarding damages.

2. I am a Managing Director of NCI, an international business, economic, financial and damages consulting company that provides services to government agencies, corporations and counsel. NCI includes approximately 2,000 consulting professionals in over 45 offices throughout the United States, Canada, Europe and Asia.

3. I am a Certified Public Accountant, accredited in business valuation and a Certified Fraud Examiner. I am also a Consulting Professor at Stanford University in the Graduate School of Engineering, where I have been teaching a course covering accounting, quantitative methods and financial issues for over 15 years. I graduated from the University of Virginia in 1979 and am currently a member of the University's Advisory Board for the McIntire School of Commerce.

4. Prior to joining NCI in February 2004, I was co-founder and President of Tucker Alan Inc. ("Tucker Alan"), a national business and litigation consulting firm with 13 offices and approximately 350 employees. Prior to founding Tucker Alan in July 1994, I was employed by Peterson Consulting, an international consulting firm. At Peterson Consulting, I held various positions including Executive Vice President and Member of the Board of Directors. Prior to joining Peterson Consulting in 1981, I worked for an international public accounting and consulting firm.

5. I am experienced in financial, economic, damage, valuation and accounting matters related to the scope of my work, analysis and study on this matter. I have analyzed and prepared numerous claims for lost profits, reasonable royalties, increased costs and other financial and economic impacts, including matters involving intellectual

-1-

Paul K. Meyer Declaration - Case No. CV 04-9049 SGL (RNBx)

property misappropriation and infringement. I have also analyzed hundreds of agreements relating to the licensing of intellectual property, determined reasonable royalty rates for the use of intellectual property, and valued intellectual property on numerous occasions. These matters have involved both litigation and non-litigation assignments. I have consulted on matters involving toys, games, rights of publicity and professional sports property licensing and merchandising.

6. In the trial, Mattel's damages expert, Mr. Wagner, and I both presented analyses and opinions related to MGA's revenues and profits earned on the sales of Bratz-related products including licensed products. These products included first generation Bratz core fashion dolls, later generations of Bratz core fashion dolls, other product lines such as Boyz, Kidz and Petz, and a number of other non-doll products such as playsets, vehicles and electronics.[1]

7. Mr. Wagner opined that MGA's net revenues from sales of Bratz-related products including licensing totaled approximately $3.1 billion, resulting in profits of approximately $777.9 million.[2,3]

8. I opined that MGA's net revenues from sales of Bratz-related products including licensing totaled approximately $3.1 billion, but that the resulting profits were approximately $405.4 million.[4] The difference between our determination of profits for Bratz-related products is a result of different approaches Mr. Wagner and I undertook to determine the appropriate expenses to deduct from revenues.

9. I understand the jury returned a verdict of $10 million for copyright infringement damages, and that the $10 million verdict reflects the portion of the profits the jury apportioned to the copyrights owned by Mattel.[5] Furthermore, I understand that the

---

[1] Meyer Trial Demonstrative, Trial Exhibit No. 18923-015.
[2] Wagner Trial Demonstrative, Trial Exhibit No. 13960.
[3] Net revenues are defined as gross revenues less sales returns, discounts and allowances.
[4] Meyer Trial Demonstrative, Trial Exhibit No. 18923-002.
[5] Phase B Verdict Form as Given filed 8/26/08, p. 5.

$10 million award is comprised of three parts: $6 million for copyright infringement by MGA, $3 million for copyright infringement by Mr. Isaac Larian through distributions received by Mr. Larian and $1 million for copyright infringement by MGA Hong Kong.[6]

10. Comparing the possible interpretations of the jury's verdict for copyright damages to net revenues and profits for Bratz-related products as shown in **TABLE I** indicates that the jury found a small percentage of net revenues and profits from Bratz-related products are attributable to Mattel's copyrights.

**TABLE I**

| Damage Award | Damages as a Percentage of Net Revenues Calculated by Wagner and Meyer ($3.1 billion) | Damages as a Percentage of Profits Calculated by Wagner ($777.9 million) | Damages as a Percentage of Profits Calculated by Meyer ($405.4 million) |
|---|---|---|---|
| $6 million | 0.2% | 0.8% | 1.5% |
| $10 million | 0.3% | 1.3% | 2.5% |

11. Regardless of whether the jury accepted Mr. Wagner's analysis of profits or my analysis of profits, the profits that the jury found were attributable to Mattel's copyrights represent less than 3% of profits earned by MGA from the sales of Bratz-related products.

12. The relatively small size of the copyright infringement award may indicate certain findings by the jury. For example, the jury may have found that the number of infringing products was quite small. At trial, I presented my analysis of profits from the first generation core Bratz fashion dolls, which totaled approximately $4 million.[7]

13. Alternatively, the jury may have concluded that the contribution of the copyrights to MGA's Bratz profits associated with the infringing sales was quite low. This would

---

[6] Phase B Verdict Form as Given filed 8/26/08, p. 5.
[7] Meyer Trial Demonstrative, Trial Exhibit No. 18923-018.

-3-

suggest that factors unrelated to Mattel's copyright, such as branding and the development of themes, characters, fashions and accessories, played a significant role in generating sales and profits of Bratz-related products.

14. A reasonable royalty may be determined for MGA to pay to Mattel for any continued use of Mattel's copyrights. Based on my review of licensing information produced by Mattel and MGA, discussions with MGA licensing personnel and over 20 years of experience analyzing licensing agreements, royalties are often calculated as a percentage of net revenues. Calculation of a royalty rate in this matter based on a percentage of net revenues (instead of profits) is appropriate because both Mr. Wagner and I agree that net revenues from sales of Bratz-related products totaled $3.1 billion.

15. One method to determine a reasonable royalty is to accept the finding of the jury regarding the value of the copyrights and convert that value into a running royalty rate to apply to future infringing sales, if any. **TABLE II** below calculates the effective royalty rate based on historical MGA net revenues from the sale of Bratz-related products including licensing totaling approximately $3.1 billion. I have calculated an effective royalty rate accepting $6 million and $10 million as possible interpretations of the damages awarded by the jury.

**TABLE II**

| Damage Award | Effective Royalty Rate as a Percentage of Net Revenue ($3.1 billion) |
|---|---|
| $6 million | 0.2% |
| $10 million | 0.3% |

16. Based on the jury's finding, a running royalty rate to apply to future infringing net revenues, if any, from Bratz products including licensing ranges between 0.2% and 0.3%. Even though the damages specifically awarded for copyright infringement ranged between $6 million and $10 million, an effective royalty rate can be calculated

-4-
Paul K. Meyer Declaration - Case No. CV 04-9049 SGL (RNBx)

based on different interpretations of the damage figures expressed by the jury in its verdict by using the simple math shown above.

17. This approach to computing a running royalty rate based on the jury's findings is appropriate since the process of apportioning profits in a copyright infringement matter is theoretically similar to determining the portion of the infringer's profits that should be paid as a royalty. In calculating unjust enrichment, the defendant's profit is apportioned to reflect only the profit that is attributable to the infringement.[8] In determining a reasonable royalty, the portion of the infringer's profit attributable to the intellectual property is determined. The royalty payment reflects a splitting of the infringer's profits between the intellectual property and the contributions provided by the infringer.

18. I understand that Mattel claims that it would suffer irreparable harm from "MGA's apparent inability to pay" future royalties to Mattel. According to Mattel's expert Mr. Wagner (based on data through June 30, 2008), the present value of MGA's projected future income or profit from Bratz is $283.7 million.[9] This amount should be more than sufficient to satisfy any past or future damage award.

19. I declare under penalty and perjury under the laws of the State of California that the foregoing is true and correct. Executed this 13th day of October, 2008, in San Francisco, California.

By: _____
Paul K. Meyer

---

[8] 17 U.S.C. 2 504(b).
[9] Wagner Trial Demonstrative, Trial Exhibit No. 13963.