THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
(laguiar@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Tel.: (213) 687-5000
Fax: (213) 687-5600

Attorneys for The MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                          Plaintiff,<br><br>          v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                          Defendant.<br><br>AND CONSOLIDATED ACTIONS. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>Honorable Stephen G. Larson<br><br>MGA PARTIES' OPPOSITION TO MATTEL'S MOTION FOR:<br><br>(1) CONSTRUCTIVE TRUST; AND<br><br>(2) FINDING OF LIABILITY AND INJUNCTIVE RELIEF UNDER CAL. BUS. & PROF. CODE 17200<br><br>Hearing Date:     November 10, 2008<br>Time:                  1:00 PM |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ......................................................................................................... 2

    I.    MATTEL IS NOT ENTITLED TO A CONSTRUCTIVE TRUST ................... 2

        A.    Mattel Has No Rights To The "BRATZ" Trademark............................... 3

        B.    MGA Did Not Acquire The "BRATZ" Trademark Wrongfully ............. 5

        C.    Mattel's Request Is Barred By Laches And Estoppel.............................. 8

    II.    MATTEL IS NOT ENTITLED TO A FINDING OF LIABILITY UNDER THE UCL, NOR TO INJUNCTIVE RELIEF UNDER THAT STATUTE ........................................................................................................ 11

        A.    Mattel's UCL Claim Is Preempted To The Extent It Is Based On Mattel's Rights To BRATZ ................................................................. 11

        B.    Mattel's UCL Claim Fails For Lack of Standing ................................. 12

        C.    Mattel Is Not Entitled to Injunctive Relief Under The UCL Because Mattel Has No Rights To The Name "BRATZ" ..................... 15

CONCLUSION .................................................................................................... 17

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s):</u>

3

## <u>CASES:</u>

4

Akkerman v. Mecta Corp.,
   152 Cal. App. 4th 1094 (2007) ............................................................ 13, 14

5

Arica Institute Inc. v. Palmer,
   970 F.2d 1067 (2d Cir. 1992) ................................................................ 3

6

7

Arvelo v. America International Insurance Co.,
   875 F. Supp. 95 (D.P.R. 1995) .............................................................. 3

8

Aureflam Corp. v. Pho Hoa Phat I, Inc.,
   375 F. Supp. 2d 950 (N.D. Cal. 2005) ............................................... 13, 16

9

Bird v. Parsons,
   289 F.3d 865 (6th Cir. 2002) ................................................................ 3

10

11

Blue Cross & Blue Shield Association v. Group Hospital
   & Medical Services, Inc., 744 F. Supp. 700 (E.D. Va. 1990),
   aff'd without opinion, 911 F.2d 720 (4th Cir. 1990) ............................ 4

12

13

Brookfield Communications, Inc. v. West Coast Entertainment Corp.,
   174 F.3d 1036 (9th Cir. 1999) .......................................................... 3, 4, 6

14

Brzozowski v. Correctional Physician Services, Inc.,
   360 F.3d 173 (3d Cir. 2004) ................................................................ 9

15

16

Buckland v. Threshold Enterprises, Ltd.,
   155 Cal. App. 4th 798 (2007) .............................................................. 15

17

Butler v. Adoption Media, LLC,
   486 F. Supp. 2d 1022 (N.D. Cal. 2007) ............................................... 13, 14

18

19

CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.,
   97 F.3d 1504 (1st Cir. 1996) ................................................................ 3

20

Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,
   20 Cal. 4th 163 (1999) ......................................................................... 15

21

22

Chirco v. Crosswinds Communities, Inc.,
   474 F.3d 227 (6th Cir.), cert. denied, 127 S. Ct. 2975 (2007) ............. 9

23

Columbia Nastri & Carta Carbone S/p/A v. Columbia Ribbon & Carbon
   Manufacturing Co.,
   367 F.2d 308 (2d Cir. 1966) ................................................................ 4

24

25

Communist Party v. 522 Valencia, Inc.,
   35 Cal. App. 4th 980 (1995) ........................................................... 2, 4, 6, 8

26

27

Conversive, Inc. v. Conversagent, Inc.,
   433 F. Supp. 2d 1079 (C.D. Cal. 2006) ............................................... 3, 4

28

Convolve, Inc. v. Compaq Computer Corp.,}
    No 00CV5141(GBD),
    2006 WL 839022 (S.D.N.Y. Mar. 31, 2006)................................................................. 5

Corporate Express Office Products, Inc. v. Martinez,
    No. CV-SA02-87,
    2002 WL 31961458 (C.D. Cal. Mar. 8, 2002)............................................................. 17

Courtesy Temporary Service, Inc. v. Camacho,
    222 Cal. App. 3d 1278 (1990) .................................................................................... 17

Danjaq LLC v. Sony Corp.,
    263 F.3d 942 (9th Cir. 2001) ........................................................................................ 8

Daro v. Super. Ct.,
    151 Cal. App. 4th 1079 (2007) ........................................................................ 13, 15-17

Daugherty v. American Honda Motor Co., Inc.,
    144 Cal. App. 4th 824 (2006) ....................................................................................... 2

Digital Envoy, Inc. v. Google, Inc.,
    370 F. Supp. 2d 1025 (N.D. Cal. 2005)........................................................................ 5

Embarcadero Muni. Improvement District v. County of Santa Barbara,
    88 Cal. App. 4th 781 (2001) ......................................................................................... 9

Environmental Defense Fund, Inc. v. Alexander,
    614 F.2d 474 (5th Cir. 1980) ........................................................................................ 9

Ernest Paper Products Inc. v. Mobil Chemical Co. Inc.,
    No. CV95-7918 LGB (AJWx),
    1997 WL 33483520 (C.D. Cal. Dec. 2, 1997)............................................................. 5

Express, LLC v. Fetish Group, Inc.,
    464 F. Supp. 2d 965 (C.D. Cal. 2006) ........................................................................ 14

Gladstone v. Hillel,
    203 Cal. App. 3d 977 (1988) ........................................................................................ 7

Gordon Bennett & Associates, Inc. v. Volkswagen of America, Inc.,
    186 U.S.P.Q. 271 (N.D. Cal. 1975) .............................................................................. 4

Hangarter v. Provident Life & Accident Insurance Co.,
    373 F.3d 998 (9th Cir. 2004) ...................................................................................... 12

Iconix, Inc. v. Tokuda,
    457 F. Supp. 2d 969 (N.D. Cal. 2006) ........................................................................ 17

Jarrow Formulas v. Nutrition Now,
    304 F.3d 829 (9th Cir. 2002) ........................................................................................ 9

Klamath-Orleans Lumber, Inc. v. Miller,
    87 Cal. App. 3d 458 (1978) ........................................................................................ 17

iii

<u>Lentz v. McMahon</u>,
    49 Cal. 3d 393 (1989) ........................................................................ 8

<u>Lujan v. Defenders of Wildlife</u>,
    504 U.S. 555 (1992)........................................................................ 12

<u>Lurzer GMBH v. America Showcase, Inc.</u>,
    75 F. Supp. 2d 98 (S.D.N.Y. 1998) ................................................. 4

<u>Mister Donut of America, Inc. v. Mr. Donut, Inc.</u>,
    418 F.2d 838 (9th Cir. 1969) ........................................................... 4

<u>New Era Publishings International, ApS v. Henry Holt & Co., Inc.</u>,
    873 F.2d 576 (2d Cir. 1989) ............................................................ 9

<u>Pac. Lumber Co. v. Super. Ct.</u>,
    226 Cal. App. 3d 371 (1990) ........................................................ 7-8

<u>ReadyLink Healthcare v. Cotton</u>,
    126 Cal. App. 4th 1006 (2005) ...................................................... 17

<u>Sengoku Works Ltd. v. RMC International, Ltd.</u>,
    96 F.3d 1217 (9th Cir. 1996), <u>as modified</u>, 97 F.3d 1460 (9th Cir. 1996) ........... 3, 4, 6

<u>Trujillo v. First America Registry, Inc.</u>,
    157 Cal. App. 4th 628 (2007) ........................................................ 14

<u>Tustin Community Hospital, Inc. v. Santa Ana Community Hospital Association</u>,
    89 Cal. App. 3d 889 (1979) .......................................................... 10

<u>Vernon Firefighters Association, Local 2312 v. City of Vernon</u>,
    178 Cal. App. 3d 710 (1986) ........................................................ 10

<u>Watermark Publishers v. High Tech. System Inc.</u>,
    44 U.S.P.Q. 2d 1578 (S.D. Cal. 1997)............................................. 8

**<u>STATUTES</u>:**

Cal. Bus. & Prof. Code § 17200 ............................................... 1, 17

Cal. Bus. & Prof. Code § 17203 .................................................. 13

Cal. Bus. & Prof. Code § 17204 .................................................. 13

Cal. Civ. Code § 3426.7 ................................................................ 5

Cal. Evid. Code § 623 ................................................................. 10

**<u>MISCELLANEOUS</u>:**

3 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u>
    § 18:2 (4th ed. 2008)..................................................................... 4

Restatement (First) of Restitution § 201 (1937) ............................ 7

## PRELIMINARY STATEMENT

Mattel's request for a constructive trust betrays Mattel's fundamental misunderstanding of the law of trademarks. To obtain a constructive trust, Mattel asserts that it is the rightful owner of MGA's trademarks because they were conceived of by Bryant and that MGA wrongfully acquired those trademarks as a result of Bryant's breach of his duties to Mattel.  (Mattel Br. (Dkt 4305) at 7-8.)  Neither assertion is accurate.  As an "inventor" of trademarks who never used them in commerce, Bryant never owned the trademarks and thus had no ownership rights to assign to Mattel.  Consequently, Mattel has no basis to claim rightful ownership of the marks.  (See Section I.A, infra.)  Likewise, MGA did not acquire its rights to the marks from or through Bryant – it acquired them, as every trademark owner does, through its use of the marks in connection with its products.  Thus, MGA's ownership of the marks is entirely legitimate.  (See Section I.B.)  Having shown neither any legitimate ownership rights of its own nor any basis for finding MGA's acquisition of such rights to be wrongful, Mattel cannot establish the necessary prerequisites for imposition of a constructive trust.

Moreover, even if Mattel were entitled to a constructive trust over MGA's trademarks (which it does not), it lost that entitlement as a result of its own delay and gamesmanship. Mattel's request for a constructive trust is barred by laches and estoppel as a result of its extended delay in bringing claims against the MGA Parties and its even more extended delay in asserting any rights to the MGA trademarks.  Indeed, Mattel has repeatedly affirmed that it did not claim any rights to MGA's trademarks, and it is only with the instant motion that Mattel for the first time laid claims to be the rightful owner of those marks. (See Section I.C, infra.)  Mattel's thirteenth-hour request (coming after a jury verdict) should be denied.

Finally, Mattel's attempt to obtain relief vis-à-vis the marks in question via the California Unfair Competition Law, Cal. Bus & Prof. C. § 17200, et seq. ("UCL"), fares no better.  As an initial barrier, such a request is barred by the Court's preemption rulings. (See Section II.A.) Mattel also has no standing to seek relief under the UCL because Mattel

1

MGA Parties' Opp'n To Mattel's Mot. for Const. Trust & Liab./Injunction Under Cal. Bus. & Prof. Code § 17200 –Case No. CV 04-9049 SGL (RNBx)

1   already has conceded that it cannot meet the injury-in-fact requirement of the statute (see

2   Section II.B.). Moreover, given that Mattel has no rights to the marks in question and cannot

3   show that MGA has obtained them wrongfully, there is simply no "unlawful" activity

4   recognized by the statute that is at play here (see Section II.C.).[1] As such, both Mattel's

5   request for a finding of liability under the UCL and its demand for an injunction thereunder

6   should be rejected out of hand.

## ARGUMENT

## I.   MATTEL IS NOT ENTITLED TO A CONSTRUCTIVE TRUST

9        A constructive trust is only appropriate where the plaintiff can show 1) the existence

10  of a property or property interest; 2) that the plaintiff has the right to that property; and

11  3) that the defendant has wrongfully acquired that property. See Communist Party v. 522

12  Valencia, Inc., 35 Cal. App. 4th 980, 990 (1995).  Here, the property over which Mattel

13  seeks a trust is MGA's trademark "BRATZ." [2]  (Mattel Br. at 7, 11.)  Mattel argues that it

14  has a right to the trademark because Bryant came up with the name from which the

15  trademark was derived while he was at Mattel.  (Id. at 7-8.)  Mattel further argues that MGA

16  wrongfully acquired the trademark from Bryant, who had a duty not to disclose the name.

17  (Id.)  Neither of Mattel's arguments are successful, and, in fact, neither the second nor the

18  third requirements for a constructive trust are met in this case.  In assessing its own rights –

19  as well as those of MGA's – Mattel ignores fundamental principles of trademark law. Those

20  fundamental principles support only one conclusion:  Mattel has no rights to the trademark

21  "BRATZ."

---

[1]      Pursuant to the UCL, "there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent."  See Daugherty v. Am. Honda Motor Co., Inc., 144 Cal. App. 4th 824, 837 (2006). Neither the unfair nor fraudulent conduct prongs of the UCL survived the Court's summary judgment rulings. (See April 25 MSJ Order (Dkt 3287) at 7; May 21 MSJ Order (Dkt 3758) at 10.) Mattel's UCL claim thus can be based on "unlawful" conduct only.  (See id.)

[2]      In addition to the "BRATZ" mark itself, Mattel also seeks all other MGA marks that include the name "BRATZ" and all domain names held by MGA that include the word "BRATZ," on the theory that they are all derived from the initial mark.  (Mattel Br. at 4.)  All of these claims fail becuase Mattel's claim for the "BRATZ" mark fails.  Mattel also seeks the trademark to the name "Jade."  (Id.)  However, the MGA Parties do not hold any such trademark, which is owned by others with no affiliation with MGA, and do the Court cannot take what MGA does not have.

2

## A.   <u>Mattel Has No Rights To The "BRATZ" Trademark</u>

To establish that the first requirement for a constructive trust is satisfied, Mattel argues that <u>trademark rights</u> constitute a property interest over which a constructive trust may be imposed.  (<u>See</u> Mattel Br. at 7.)  Thus, the property at issue – the property that Mattel must prove it rightfully owns – is the trademark "BRATZ."  Try as it might, Mattel cannot show that it is the rightful owner of this mark.  As a result, it cannot meet the second requirement for imposition of a trust.

Mattel's claim that it has a right to the <u>trademark</u> "BRATZ" is based on fact that the jury found that Bryant conceived of the <u>name</u> "BRATZ" while he was employed at Mattel. (<u>Id.</u> at 7-8.)  Mattel asserts that, pursuant to the Inventions Agreement (TX 25) it entered into with Bryant, it owns <u>the idea for the name</u> as a "BRATZ-related invention."  (Mattel Br. at 7.)  It is true that, under that agreement, Bryant assigned to Mattel "all [his] right, title, and interest" in any invention he created during the period of his employment.  (TX 25 ¶ 2(a).)  However, Bryant's invention of the name "BRATZ" did not endow Bryant with any rights or interest in the name as a trademark.  And as Mattel itself has pointed out, Bryant could not assign what he did not own.  (<u>See</u> Memorandum of Points and Authorities filed in support of Mattel's Motion for Declaratory Judgment of Ownership of Bratz Works, dated September 29, 2008, (Dkt 4303) at 7.)

A person who merely invents a potential trademark has no exclusive rights to its use. <u>See</u> <u>Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.</u>, 174 F.3d 1036, 1046 (9th Cir. 1999); <u>Sengoku Works Ltd. v. RMC Int'l, Ltd.</u>, 96 F.3d 1217, 1219 (9th Cir. 1996), <u>as modified</u>, 97 F.3d 1460 (9th Cir. 1996); <u>Conversive, Inc. v. Conversagent, Inc.</u>, 433 F. Supp. 2d 1079, 1089 (C.D. Cal. 2006).[3]  This is true no matter how much the inventor discusses the trademark with others or asserts his or her intentions to use it at some point in the future. <u>See</u> <u>Arvelo v. Am. Int'l Ins. Co.</u>, 875 F. Supp. 95, 101-102 (D.P.R. 1995) (plaintiff did not

---

[3]    Nor did Bryant have any rights under copyright law, as a single word is not subject to copyright.  <u>See</u> <u>Bird v. Parsons</u>, 289 F.3d 865, 881 (6th Cir. 2002); <u>CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.</u>, 97 F.3d 1504, 1519-20 (1st Cir. 1996); <u>Arica Inst. Inc. v. Palmer</u>, 970 F.2d 1067, 1072-73 (2d Cir. 1992).

3

MGA Parties' Opp'n To Mattel's Mot. for Const. Trust & Liab./Injunction Under Cal. Bus. & Prof. Code § 17200 –Case No. CV 04-9049 SGL (RNBx)

1  have any rights to trademark despite inventing it and presenting it to defendant; rather

2  defendant who eventually used name held trademark rights); Gordon Bennett & Assocs.,

3  Inc. v. Volkswagen of Am., Inc., 186 U.S.P.Q. 271, 272 (N.D. Cal. 1975) (soliciting

4  advertising service business from financial institutions by suggesting use of trademark did

5  not establish rights to trademark).  Indeed, any purported assignment of the "BRATZ" mark

6  by Bryant to Mattel (or MGA for that matter) prior to its actual use would be invalid.  "[N]o

7  rights can be transferred apart from the business with which the mark has been associated."

8  Conversive, Inc., 433 F. Supp. 2d at 1090 (quoting Mister Donut of Am., Inc. v. Mr. Donut,

9  Inc., 418 F.2d 838, 842 (9th Cir. 1969)).  Thus, "where a designation has never been used as

10  a mark, there is nothing to assign."  3 McCarthy on Trademarks and Unfair Competition

11  § 18:2 (4th ed. 2008) (citing Conversive).  "The law is well settled that there are no rights in

12  a trademark alone."  Conversive, 433 F. Supp 2d at 1090 (emphasis added).  Until a

13  trademark is actually put to use, it is not entitled to protection.  Id.; Brookfield Commc'ns,

14  Inc., 174 F.3d at 1046; Sengoku Works Ltd., 96 F.3d at 1219.

15    Put simply, until MGA actually began using the "BRATZ" trademark, no one – not

16  Bryant, not Mattel – owned that mark.  As a result, Mattel cannot meet the second

17  requirement for a constructive trust.[4]  A constructive trust should not be granted where the

18  party requesting it has no legal rights to the object of the trust.  See, e.g., Communist Party,

19  35 Cal. App. 4th at 991 (denying request for constructive trust because "there is absolutely

20  no evidence in the record that respondent was the owner with legal title to the property and

21

22  [4] Tellingly, the cases cited by Mattel in support of its contention that a constructive trust may be used to transfer a trademark all involve ownership disputes over trademarks being used by both parties – a vastly different situation than the one presented here.  See Columbia Nastri & Carta Carbone S/p/A v. Columbia Ribbon & Carbon Mfg. Co., 367 F.2d 308, 311 (2d Cir. 1966) (transferring "Columbia" trademark used by both parties from Columbia Nastri in Italy to Columbia Ribbon in the US after Nastri violated licensing agreement); Lurzer GMBH v. Am. Showcase, Inc., 75 F. Supp. 2d 98, 106 (S.D.N.Y. 1998) (transferring trademark used by Lurzer and Am. Showcase as partners for benefit of Lurzer, but secretly registered by Am. Showcase); Blue Cross & Blue Shield Ass'n v. Group Hosp. & Med. Servs. Inc., 744 F. Supp. 700, 706-708, 720-21 (E.D. Va. 1990), aff'd without opinion, 911 F.2d 720 (4th Cir. 1990), (transferring Blue Cross marks used by both parties from defendant who secretly registered them in foreign jurisdictions).

1  assets of the appellant corporations, or was ever intended to be"). Because Mattel has no

2  rights to the property it seeks, Mattel's request for a constructive trust should be denied.

3  **B.   MGA Did Not Acquire The "BRATZ" Trademark Wrongfully**

4        In an attempt to meet the third requirement for a constructive trust, Mattel argues that

5  MGA's acquisition of the "BRATZ" trademark was wrongful because Bryant conveyed the

6  name to MGA despite a duty not to do so.  (See Mattel Br. at 7.)  This conduct, however,

7  did not give rise to MGA's rights to the "BRATZ" mark.  As such, it cannot support a claim

8  that MGA's rights were wrongfully acquired.[5]

9        MGA acquired the rights to the "BRATZ" trademark based on its own use of the

10  mark, as evidenced by its registration of that mark.  As detailed in the MGA Parties' Phase

11  1c Statement, it is undisputed that MGA – not Mattel and not Bryant – used the "BRATZ"

12  trademark first.  (See MGA Parties' Statement of Position Regarding Phase 1c Issues, dated

13  September 29, 2008 (Dkt 4308) (hereinafter, "MGA 1c Br.") at 14-17.)  MGA registered its

14  intent to use the "BRATZ" mark in connection with dolls on December 11, 2000.  (See

15  MGA Parties' Request for Judicial Notice In Support of MGA Parties' Statement of

16  Position On Phase 1c (Dkt 4309) ("Phase 1c RJN"), Ex. 1 (Appl.–TM Ser. No. 76179479).)

17  MGA subsequently filed a declaration stating that it first used the "BRATZ" trademark for

18  dolls on May 21, 2001.  (See id., Ex. 3 (Statement of Use–TM Ser. No. 76179479).)  MGA

19  continues to hold the "BRATZ" mark for dolls.  (See id., Ex. 2 (Reg. Cert.–TM Ser. No.

20  76179479).)

21

22

---

23  [5]      Moreover, to the extent that Mattel is seeking redress for Bryant's revelation of the name as
24  misappropriation of a trade secret, that claim is preempted by the California Uniform Trade Secrets
   Act ("CUTSA").  See Cal. Civ. Code § 3426.7; see also MGA Parties' Phase 1b JMOL (Dkt 4264)
25  at 5 n.4.  CUTSA preemption applies to any common law tort claim involving conduct that could
   support a claim for misappropriation of trade secrets.  See Digital Envoy, Inc. v. Google, Inc., 370
26  F. Supp. 2d 1025, 1032-35 (N.D. Cal. 2005); see also Convolve, Inc. v. Compaq Computer Corp.,
   2006 WL 839022, at *7 (S.D.N.Y. Mar. 31, 2006) (applying California law, finding preemption of
27  "all common law claims that are based on the same conduct which could support a UTSA cause of
   action"); Ernest Paper Prods. Inc. v. Mobil Chem. Co. Inc., 1997 WL 33483520, at *9 (C.D. Cal.
28  Dec. 2, 1997) (finding preemption of all claims based on misappropriation of customer lists).

1   Mattel makes light of the fact that MGA acquired additional rights from an even more

2   senior user of the "BRATZ" mark, Lovins Inc., noting that MGA "did not get the 'Bratz'

3   name from Lovins."   (Mattel Br. at 10-11.)   Once again, Mattel betrays its fundamental

4   misunderstanding of the most basic premise in trademark law:  the right to a trademark has

5   nothing to do with where a mark "came from" – all that matters is who used it first. See

6   Brookfield Commc'ns, Inc., 174 F.3d at 1046; Sengoku Works Ltd., 96 F.3d at 1219.

7   MGA's initial registration of the "BRATZ" mark was opposed by Lovins, Inc., an entity

8   which purported to have used the "BRATZ" mark in commerce since 1994.[6]   (See Phase 1c

9   RJN, Ex. 4 (Trademark Trial & Appeal Board Petition No. 91150381); Ex. 6 (Appl.–TM

10  Ser. No. 76242565); see also Tr. 2149:2-13, 6172:5-12.)   Lovins Inc. used and applied to

11  register the "BRATZ" mark in connection with children's clothing, and alleged that MGA's

12  use and registration of the same mark for a children's product – dolls – would constitute

13  infringement.   (See Phase 1c RJN, Ex. 4 ¶¶ 3-4; Ex. 5 ¶¶ 13-16 (1st Am. Compl. in Lovins

14  Inc v. Abc Intl Traders Inc, et al.); Ex. 6.)   The merits of that claim were never decided, as

15  MGA settled the suit with Lovins, Inc. and acquired its trademark for "BRATZ."   (See id.,

16  Ex. 7-8 (Assign. & Reg.–TM Ser. No. 76242565); see also Tr. 2149:2-13, 6172:5-12.)

17  Thus, it was by virtue of MGA's use and registration of the "BRATZ" mark, coupled

18  with MGA's settlement with Lovins, Inc., that MGA legitimately acquired the rights to the

19  trademark at issue here.   MGA's rights did not come from Bryant, and those rights never

20  belonged to Mattel.   The result, once again, is that Mattel is not entitled to a constructive

21  trust.   As one California court in put it, "in order to conclude that [defendants] wrongfully

22  retained the disputed property, there must be some basis for determining that [plaintiff]

23  actually owned or was rightfully entitled to possession of it."   Communist Party, 35 Cal.

24  App. 4th at 991.   There is no basis for such a conclusion here.

25  Indeed, Mattel seems to recognize this fatal flaw in its logic.   In an attempt to

26

27  [6]   The fact that Lovins used the mark "Bratz" in the childrens' market long before Bryant supposedly "conceived" the name begs the questions whether Bryant actually conceived of the idea

28  himself as opposed to remembering it from seeing it in the public domain.

1   circumvent the issue, Mattel argues that "[e]ven if MGA's use of the 'BRATZ' and 'Jade'

2   names were not itself part of MGA's wrongful conduct … Mattel is still entitled to a

3   constructive trust over marks including the term 'BRATZ' and 'Jade' because they

4   represent benefits from use of the wrongfully taken property."  (Mattel Br. at 8.)  This

5   theory, however, is also unsupported by law.[7]  To obtain a constructive trust over property,

6   Mattel must show that it was wrongfully deprived of the specific property it seeks to

7   retrieve, not that it was wrongfully deprived of some property (if an idea for a name even

8   counts as such) that <u>led</u> to acquisition of the property that Mattel seeks to retrieve.  See <u>Pac.</u>

9   <u>Lumber Co. v. Superior Court,</u> 226 Cal. App. 3d 371, 377 (1990) (shareholders were not

10   entitled to constructive trust over real property acquired as a result of fraudulent transfer of

11   shares because shareholders never had title to the real property and the real property itself

12   was not wrongfully acquired).  Mattel's complaint that, regardless of Mattel's or MGA's

13   

_____

14   [7]   In making its argument, Mattel cites statements made in cases and in Section 201 of the
Restatement (First) of Restitution that a constructive trust may be appropriate to recover the <u>profits</u>

15   that result from misappropriated money, property, or information.  (<u>See</u> Mattel Br. at 9.)  However,
these statements do not speak to the issue here – whether it is appropriate to impose a trust over

16   <u>property</u> that is somehow derivative of information conveyed to defendant.

17   Indeed, Section 201 of the Restatement makes this distinction:   while Mattel cites
subsection 2, which states that where a fiduciary "<u>communicates confidential information</u> to a third

18   person," that person "holds upon a constructive trust for the beneficiary <u>any profit</u> which he makes
through the use of such information," subsection 1 states that where a fiduciary "<u>transfers property</u>

19   <u>or causes property to be transferred</u> to a third person," that person "holds <u>the property</u> upon a
constructive trust for the beneficiary."  Rest. 1st § 201 (1937) (emphasis added).  In fact, none of

20   the cases cited by Mattel authorize a constructive trust over any item of property not initially
belonging to the plaintiff – all only permit disgorgement of profits.  Mattel has already reaped the

21   rewards of disgorgement in its jury verdict and is not entitled to anything more.  (<u>See</u> Final Jury
Instructions (Phase 1B) (Dkt 4267) at 41-43 (instructing the jury that Mattel is entitled to

22   disgorgement of any illegitimate profits as damages).)

23   Mattel's argument is also undermined by the decision in <u>Gladstone v. Hillel,</u> 203 Cal. App.
3d 977 (1988) (cited by Mattel (Mattel Br. at 9)).  In that case, the court opted to use an injunction

24   as its tool of equitable relief despite discussing the applicability of a constructive trust, and ordered
the defendant to cease using wrongfully acquired property – jewelry molds designed by the

25   plaintiff– and destroy them.  <u>Id.</u> at 989-90.  However, the court rejected any injunction barring the
defendant from using the designs themselves, on the grounds that such an injunction was

26   effectively a copyright, which should only be granted pursuant to copyright law.  <u>Id.</u> at 990.  The
same logic would seem to apply here – even if Mattel has rights to physical drawings with the

27   name "BRATZ" on them, or under some theory of property has rights to the idea for the name
"BRATZ," ownership of the trademark for the name "BRATZ" should be decided on the basis of

28   trademark law, not by virtue of equitable relief.

7

MGA Parties' Opp'n To Mattel's Mot. for Const. Trust & Liab./Injunction Under Cal. Bus. & Prof.
Code § 17200 –Case No. CV 04-9049 SGL (RNBx)

1  rights to the mark, a constructive trust should be imposed simply because MGA will be

2  unjustly enriched is equally unavailing.  See id. at 378 (rejecting plaintiff's contention that

3  "the plaintiff's right to the property is not a necessary requirement but that unconscionability

4  or unjust enrichment alone will support a constructive trust").  Once again, Mattel's claim

5  fails because Mattel does not have, and has never had, any rights to the trademark

6  "BRATZ."

7      "A constructive trust cannot exist unless there is evidence that property has been

8  wrongfully acquired or detained by a person not entitled to its possession."  Communist

9  Party, 35 Cal. App. 4th at 991.  Because MGA is the legitimate legal owner of the

10  "BRATZ" trademark and did not wrongfully acquire its rights, Mattel request should be

11  denied.

12      **C.    Mattel's Request Is Barred By Laches And Estoppel**

13      Even if Mattel had some conceivable basis for a constructive trust here, which, as

14  shown above, it does not, its claim still would be barred by laches and estoppel.  Laches

15  applies when there is unreasonable delay by plaintiff, and prejudice to defendant.  See

16  Danjaq LLC v. Sony Corp., 263 F.3d 942, 951 (9th Cir. 2001). (See also MGA 1c Br. at 3-

17  6.)  Similarly, a plaintiff's conduct constitutes estoppel when (1) the plaintiff is aware of the

18  relevant facts; and (2) intends that its conduct shall be acted upon, or conducts itself such

19  that the defendant had a right to believe it so intended; while (3) the defendant is ignorant of

20  the true state of facts; and (4) relies upon the plaintiff's conduct to its injury.  See Lentz v.

21  McMahon, 49 Cal. 3d 393, 399 (1989).  (See also MGA 1c Br. at 9-10.)   Laches and

22  estoppel often operate interchangeably, because the showing required for estoppel –

23  knowing delay by the plaintiff and the defendant's unknowing, detrimental reliance thereon

24  – also satisfies the requirements for laches.  See Watermark Publ'rs v. High Tech. Sys. Inc.,

25  44 U.S.P.Q.2d 1578, 1583-84 (S.D. Cal. 1997).  MGA's prejudice and Mattel's

26  unreasonableness are discussed at length in the MGA Parties' Phase 1c Statement and need

27  not be reiterated here.  (See MGA 1c Br. at 3-10.)  However, what makes laches and

28  estoppel particularly appropriate to bar Mattel's request for a constructive trust is the nature

8

MGA Parties' Opp'n To Mattel's Mot. for Const. Trust & Liab./Injunction Under Cal. Bus. & Prof.
Code § 17200 –Case No. CV 04-9049 SGL (RNBx)

1  and extent of Mattel's delay in asserting its claim.  As described below, Mattel repeatedly

2  affirmed that it was <u>not</u> seeking trademark rights to the name "BRATZ."  Indeed, it was no

3  earlier than September 29, 2008, when Mattel filed the motion at issue here, that Mattel for

4  the very first time asserted that it is the rightful owner of the "BRATZ" trademark.

5  Where plaintiff files suit after the limitations period, the presumption is that laches is

6  applicable.  See <u>Jarrow Formulas v. Nutrition Now</u>, 304 F.3d 829, 838 (9th Cir. 2002).

7  Where, as here, a plaintiff's claims are facially time-barred and the plaintiff relies on

8  relation-back and tolling theories to revive them, this presumption should be applied with

9  equal force, as relation-back does not apply in the context of laches.  <u>See Brzozowski v.</u>

10 <u>Corr. Physician Servs., Inc.</u>, 360 F.3d 173, 182 (3d Cir. 2004); <u>Envtl. Def. Fund, Inc. v.</u>

11 <u>Alexander</u>, 614 F.2d 474, 478-79 & n.3 (5th Cir. 1980).  Even if a plaintiff's claims are

12 timely and the court permits them to go forward in pursuit of damages, courts have found

13 that laches may bar a request for equitable relief arising from those claims.  <u>See New Era</u>

14 <u>Publ'ns Int'l, ApS v. Henry Holt & Co., Inc.</u>, 873 F.2d 576, 584 (2d Cir. 1989); <u>Chirco v.</u>

15 <u>Crosswinds Cmtys., Inc.</u>, 474 F.3d 227, 235-36 (6th Cir. 2007); <u>Jarrow Formulas</u>, 304 F.3d

16 at 839-40.

17 Applying this reasoning, Mattel's request for a constructive trust is presumptively

18 barred by laches.  "A constructive trust is not a substantive device but merely a remedy, and

19 an action seeking to establish a constructive trust is subject to the limitation period of the

20 underlying substantive right."  <u>Embarcadero Mun. Improvement Dist. v. County of Santa</u>

21 <u>Barbara</u>, 88 Cal. App. 4th 781, 793 (2001).  Here, Mattel's request for constructive trust is

22 primarily based on its claim for aiding and abetting breach of fiduciary duty and intentional

23 interference with contractual relations – it is these claims that Mattel uses to assert that

24 MGA's acquisition of the trademark was wrongful.  (See Mattel Br. at 6-8.)  Thus, the

25 relevant statute of limitations for Mattel's request for a constructive trust is two years.  (See

26 MGA MSJ Br. at 20-22.)  Mattel delayed in bringing any claims against MGA until more

27 than two and half years after filing its complaint against Bryant and more than two years

28 after Bryant's November 4, 2004 deposition.  (See 5/27/08 Order (Docket 3826) at 7-9.)

9

1   Even under the most generous assessment of Mattel's notice of its claim, Mattel's request is

2   presumptively barred by laches.

3        However, Mattel's delay in bringing its claim for the "BRATZ" trademark did not

4   end when it filed its counterclaims, making the case for laches and estoppel all the more

5   compelling.   Unlike the statute of limitations defense, "delay <u>during litigation</u> may

6   constitute such laches as would bar the granting of relief."   <u>Tustin Cmty. Hosp., Inc. v.</u>

7   <u>Santa Ana Cmty. Hosp. Ass'n</u>, 89 Cal. App. 3d 889, 904 (1979) (emphasis added); <u>accord</u>

8   <u>Vernon Firefighters Assn., Local 2312 v. City of Vernon</u>, 178 Cal. App. 3d 710, 720 (1986)

9   ("the period of time to be considered as constituting possible laches includes the period of

10  time the action is pending.   Filing of the action does not toll laches"); <u>see also</u> Cal. Evid.

11  Code § 623 ("Whenever a party has, by his own statement or conduct, intentionally and

12  deliberately led another to believe a particular thing true and to act upon such belief, he is

13  not, in any litigation arising out of such statement or conduct, permitted to contradict it.").

14       Mattel's counterclaims against the MGA Parties make no mention of any claim to the

15  "BRATZ" trademark.   (<u>See</u> Mattel's SAA.)   Throughout this litigation, Mattel has made

16  only occasional reference to the "BRATZ" name, such that when Mattel added the name to

17  the Final Pre-Trial Conference Order, the MGA Parties objected.   (<u>See</u> MGA Parties' Obj.

18  to PTO Amend. (Dkt 3697).)   In defending its addition of the name, Mattel argued that <u>it</u>

19  <u>was not seeking a property right</u> – such as a trademark – in the name:   "[MR. ZELLER:]

20  [W]e have not said that the name BRATZ is, quote, proprietary, end quote, to Mattel.   That

21  is not the basis of our theory."   (5/23/08 Tr. 79:20-22.)   The morning of the opening

22  statements in Phase 1a, the MGA Parties confirmed this understanding was shared by the

23  Court:

24        [MR. NOLAN:]  I think that at the last hearing and a few hearings back, what

25        they were saying is they are not dealing with the trademark of BRATZ; they

26        are dealing with the idea of BRATZ, the name itself, just to be clear, again, for

27        the record.

28

10

MGA Parties' Opp'n To Mattel's Mot. for Const. Trust & Liab./Injunction Under Cal. Bus. & Prof. Code § 17200 –Case No. CV 04-9049 SGL (RNBx)

1    THE COURT:  Yes.  And I understand the distinction.  It's not a trademark

2    claim because it was never put into use by Mattel during the time period.

3    (Tr. 39:22-40:3.)  At the close of the trial, the MGA Parties reaffirmed that Mattel had no

4    rights to the "BRATZ" trademark (MGA Phase 1b JMOL at 8-9), and Mattel's response,

5    once again, made no claim to ownership of the "BRATZ" trademark, but only to the name

6    as a concept and thus to profits derived from the name.  (See Mattel Opp'n to MGA Phase

7    1b JMOL (Dkt 4269) at 9-10.)  It was not until the filing of this motion that Mattel ever

8    expressed any proprietary interest in MGA's trademark for "BRATZ."  It is only now that

9    Mattel claims to be the trademark's rightful owner.  Pursuant to the doctrines of laches and

10   estoppel, Mattel's delay – and, indeed, its continued denials that it was asserting rights to

11   the "BRATZ" mark – should bar its claim to those rights now.

12   **II.    MATTEL IS NOT ENTITLED TO A FINDING OF LIABILITY UNDER THE UCL, NOR TO INJUNCTIVE RELIEF UNDER THAT STATUTE**

13

14        Mattel seeks injunctive relief under the UCL to prevent MGA from using the

15   "BRATZ" and "Jade" names, notwithstanding that Mattel's UCL claim has been already

16   found by this Court to be preempted to the extent it is based on Mattel's rights to BRATZ.

17   (See MGA 1c Br. at 18.) Even if it was not so preempted, Mattel's requested relief is barred

18   by Mattel's lack of standing, since the record shows that Mattel cannot satisfy the standing

19   requirement of injury-in-fact under the UCL.  (See id. at 18-20.)  And, in any event, the

20   requested relief must be rejected because Mattel cannot show that it has any rights to the

21   names in question or that MGA's use of those names is wrongful in any way.

22        **A.    Mattel's UCL Claim Is Preempted To The Extent It Is Based On Mattel's Rights To BRATZ**

23        As MGA already showed in its September 29, 2008 brief on Phase 1c issues, Mattel's

24   unfair competition claim is preempted to the extent it is based on copyright infringement

25   vis-à-vis Mattel's rights in BRATZ. (See April 25 MSJ Order (Dkt 3286) at 7.) The

26   intentional interference with contract predicate for Mattel's UCL claim is also preempted to

27   the extent it is based on Mattel's rights to BRATZ, leaving only MGA and Larian's

28   inducement of Bryant to breach his contract with and/or duties to Mattel as a basis for

11

Mattel's UCL claim. (See id. at 2.)[8]   Thus, this Court's summary judgment rulings effectively foreclose Mattel's ability to claim relief based on its rights to BRATZ under its UCL claim, which must necessarily include Mattel's claims to the BRATZ names themselves – assuming they are even copyrightable, which, as shown above, they are not.[9]

## B. Mattel's UCL Claim Fails For Lack of Standing

Moreover, as MGA also showed in its September 29, 2008 brief on Phase 1c issues, even if Mattel could base its claim on the non-preempted conduct, and it cannot, Mattel's inability to satisfy the UCL's standing requirement forecloses any recovery under the UCL. To have standing to bring a claim, Article III of the United States Constitution requires that a plaintiff satisfy three elements: 1) he must have suffered an injury in fact that is a) concrete and particularized and b) actual or imminent; 2) there must be a causal connection between the injury and the conduct complained of; and 3) it must be likely that the injury will be redressed by a favorable decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); see also Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1021-22 (9th Cir. 2004) (applying Article III rule of "standing" to UCL injunction claim and reversing injunction because plaintiff "currently has no contractual relationship with Defendants and therefore is not personally threatened by their conduct"). Proposition 64 imported this constitutional requirement into the UCL by amending the latter to require "injury in fact" standing in suits brought by private parties: "Actions for any relief pursuant to this chapter shall be prosecuted exclusively ... [by] any person ... who has suffered injury

---

[8]   Mattel claims that its UCL claim is also predicated on its claims for aiding and abetting breaches of fiduciary duty and duty of loyalty, as well as its conversion claim. (See Mattel Br. at 13.) None of those predicates were expressly plead by Mattel. (See SAA ¶¶ 163-166.)  In any event, in the Final Pretrial Conference Order, the Court stated that it had granted "partial summary judgment on Mattel's statutory unfair competition claims [in favor of MGA], except that Mattel's statutory unfair competition claim presented triable issues of fact relating to 'whether MGA tortiously interfered with Bryant and Mattel's contractual relationship and whether MGA engaged in commercial bribery.'" (Final Pretrial Conference Order (Dkt 3950) at 5.) Therefore, the **only** UCL predicates that remain after summary judgment are Mattel's claims for tortuous interference with contract and commercial bribery.

[9]   Cf. MGA Phase 1b JMOL at 2-5 (collecting authorities showing that preempted claims are preempted as to both claims and remedies).

12

MGA Parties' Opp'n To Mattel's Mot. for Const. Trust & Liab./Injunction Under Cal. Bus. & Prof. Code § 17200 –Case No. CV 04-9049 SGL (RNBx)

1  in fact and has lost money or property as a result of such unfair competition."  Cal. Bus. &

2  Prof. Code § 17204; see also Prop. 64, § 1, subd. (e); Daro v. Superior Court, 151 Cal. App.

3  4th 1079, 1097 (2007) ("After Proposition 64, a private person has standing to sue under the

4  UCL only if that person has suffered injury and lost money or property 'as a result of such

5  unfair competition.'").

6      This standing requirement applies to Mattel's injunctive claims.  See, e.g., id. at 1100

7  ("a party who has suffered no injury as a result of a UCL violation cannot create standing by

8  arguing that a broad-based injunction designed to remedy the UCL violation will provide

9  him or her some incidental benefit"); Aureflam Corp. v. Pho Hoa Phat I, Inc., 375 F. Supp.

10  2d 950, 955 (N.D. Cal. 2005) ("in order to sue for injunctive relief under California's unfair

11  business practices laws, a party must have 'suffered injury in fact and [have] lost money or

12  property as a result of such unfair competition'"); see also Cal. Bus. & Prof. Code § 17203

13  (in the UCL section authorizing injunctive relief, reflecting Proposition 64's addition of the

14  words "[a]ny person may pursue representative claims or relief on behalf of others only if

15  the claimant meets the standing requirements of Section 17204").

16      Where the evidence shows that plaintiff suffered no injury in fact and thus no harm

17  from the conduct at issue, the UCL claim fails for lack of standing. See Butler v. Adoption

18  Media, LLC, 486 F. Supp. 2d 1022, 1062 (N.D. Cal. 2007) (rejecting plaintiffs' injunctive

19  relief request under the UCL where plaintiffs "have previously taken the position that they

20  should not be required to respond to deposition questions regarding damages" and,

21  furthermore, "have not previously identified any loss of money or property in connection

22  with their unfair competition claims, and cannot now attempt to establish such a loss");

23  Akkerman v. Mecta Corp., Inc., 152 Cal. App. 4th 1094, 1098 (2007) (noting that the court

24  previously "reversed the order granting the injunction" under the UCL because "Proposition

25  64 (§ 17204) imposed a new 'injury in fact' standing requirement for private plaintiffs

26

27

28

1  seeking UCL injunctions and the … [plaintiffs] had not shown they had suffered an out-of-
2  pocket loss").[10]

3      Mattel has conceded on multiple occasions that it has suffered no damages as a result
4  of the conduct at issue in this case. (See, e.g., 5/12/08 Tr. 64:5-7 ("MR. COREY: Topic 8
5  relates to damages suffered by Mattel.  Mattel's not seeking damages for its own injury in
6  this case; that's not a theory that is concerned.") (emphasis added); Tr. 5267:9-14 ("COURT:
7  I just want to make sure I understood it right -- that the disgorgement of profits and
8  revenues is the damages that you're seeking with respect to all claims, not just the claim for
9  copyright infringement. Is that correct? MR. ZELLER: That's correct, Your Honor."); see
10  also Mattel's Reply ISO Objections to 4/11/08 Discovery Order (Dkt 3485) at 11 (stating
11  that Mattel's damages "are not at issue in Phase 1b, because Mattel's damages arise only
12  from MGA's profits from its infringement") (emphasis added).)  Indeed, Mattel vigorously
13  opposed any effort to show impact on Mattel, its market share, or sales of Barbie and such
14  evidence was wholesale excluded on Mattel's motions in limine and objections during trial.
15  (See, e.g., Mattel MIL No. 2 (Dkt 3154) at 1-6, 9-11; Tr. 208:17-209:14, 350:13-19,
16  2923:24-2924:19, 3993:5-8; 5/22/08 PM Tr. 32:5-12.)   Having eschewed any damages
17  theory and prevented evidence of any harm to it, Mattel cannot show any actual injury or
18  out-of-pocket loss, which strips Mattel of any right to proceed with its UCL claim. See
19  Butler, 486 F. Supp. 2d at 1061-62; Akkerman, 152 Cal. App. 4th at 1098.

20      Mattel's lack of standing is further buttressed by its inability to recover restitution, as
21  MGA showed in its September 29, 2008 brief on Phase 1c issues. (See MGA 1c Br. at 20-
22  25 (collecting cases).)  Mattel's failure to seek restitution under the UCL only further

23

---

24  [10]     Cf. Express, LLC v. Fetish Group, Inc., 464 F. Supp. 2d 965, 980 (C.D. Cal. 2006) (granting
25  summary judgment on UCL claim by clothing retailer for fraudulent misrepresentations regarding
    extent of copyright held by clothing manufacturer where retailer did not show sufficient harm;
26  suggestion that retailer could have sold altered, non-infringing product if it had not been misled
    about extent of copyright was too attenuated and speculative); Trujillo v. First Am. Registry, Inc.,
27  157 Cal. App. 4th 628, 639 (2007) (granting summary judgment on UCL claim as rejected tenants
    failed to show injury as result of credit reporting company's incomplete unlawful detainer
28  information in its tenant screening reports).

confirms that it cannot claim that it "lost money or property", as required by the UCL "injury in fact" standing, because, as shown in more detail in the September 29, 2008 brief on Phase 1c issues, it cannot establish that MGA has taken money or property that should be restored to Mattel. (See id.) Proposition 64 limited UCL relief only to those plaintiffs that are entitled to restitution. See Buckland v. Threshold Enterprises, Ltd., 155 Cal. App. 4th 798, 817-818 (2007) (explaining that "the import of the requirement [added by Proposition 64] is to limit standing to individuals who suffer losses of money or property that are eligible for restitution"). Since Mattel is not entitled to restitution under the UCL, its request for injunctive relief under the UCL must fail as well.

## C. Mattel Is Not Entitled to Injunctive Relief Under The UCL Because Mattel Has No Rights To The Name "BRATZ"

Finally, Mattel's claim for injunctive relief to preclude MGA from using the "BRATZ" fails because Mattel can point to no actionable conduct that would qualify as "unlawful" under the UCL. The mere fact that the jury found liability on Mattel's tortuous interference with contract and aiding and abetting claims does not necessarily convert every conceivable activity undertaken by MGA in connection with BRATZ into an unlawful business activity as defined by the statute.

An "unlawful" business practice is "'anything that can properly be called a business practice and that at the same time is forbidden by law.'" Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999). As shown above, MGA's use of the "BRATZ" mark is a lawful business practice protected by trademark law, and Mattel can show no basis for finding such use to be wrongful. (See supra at 3-8.) The jury's finding that the name "BRATZ" was conceived by Bryant during his tenure at Mattel has no bearing on whether or not MGA's rights to the mark are legitimate because, as explained above, those rights are determined by priority of use. (See id.) Therefore, while there may or may not be a tangential logical relationship between Bryant's conception of the name and MGA's subsequent use thereof, that relationship does not magically transform MGA's use of the mark into an "unlawful" business practice, as required by the UCL. See Daro, 151

15

MGA Parties' Opp'n To Mattel's Mot. for Const. Trust & Liab./Injunction Under Cal. Bus. & Prof. Code § 17200 –Case No. CV 04-9049 SGL (RNBx)

Cal. App. 4th at 1098-99 (holding that although the Ellis Act evictions were "part and parcel" and "in furtherance" of the "unfair business practice" under the UCL consisting of building owners' violations of the Subdivided Lands Act, that finding "does not compel the conclusion the Ellis Act evictions were unlawful. <u>A lawful business activity is not transformed into an 'unlawful business practice' simply because it has some relationship to an activity forbidden by law</u>.") (emphasis added); <u>cf</u>. <u>Aureflam Corp.</u>, 375 F. Supp. 2d at 955 (finding no injury under the UCL because plaintiff failed to show the mark at issue had been fraudulently obtained).

In other words, whether or not the unlawful activity alleged by Mattel took place (here – the alleged passing of confidential information from Bryant to MGA), Mattel would still end up with the same result: whoever established priority of use would become the rightful owner of the name, and such priority of use belongs to MGA. This is similar to the situation in <u>Daro</u>, an action brought by tenants against their building owners, where the court found that Ellis Act evictions of the tenants would have taken place whether or not the building owners undertook the "unlawful" activity of non-compliance with the Subdivided Lands Act:

> When a UCL action is based on an unlawful business practice, as here, a party may not premise its standing to sue upon injury caused by a defendant's lawful activity simply because the lawful activity has some connection to an unlawful practice that does not otherwise affect the party. In short, there must be a causal connection between the harm suffered and the unlawful business activity. <u>That causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law.</u> Here, the lack of causation is illustrated by the fact the tenants would suffer the same injury regardless of whether the owners complied with or violated the Subdivided Lands Act. Indeed, <u>even if the LLC owners fully complied with the trial court's injunction, the tenants would still face eviction.</u>

1   <u>Daro</u>, 151 Cal. App. 4th at 1099 (reversing grant of injunction) (emphasis added). Here, by

2   analogy, whether or not MGA obtained confidential information from Bryant does not

3   change the fact that the propriety of MGA's rights to the name "BRATZ" is independent of

4   the alleged unlawful conduct, thus breaking the causal connection between the latter and the

5   harm claimed by Mattel.  As such, there is no "unlawful" business practice under the UCL

6   to enjoin here and, therefore, Mattel's request for injunctive relief must fail.[11]

7                                    **CONCLUSION**

8            For the foregoing reasons, Mattel's motion for constructive trust and for a finding of

9   liability and injunctive relief under Cal. Bus. & Prof. Code § 17200 should be denied.

10  DATED:  October 13, 2008          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

11                                    By:  _____/s/ Thomas J. Nolan_____
                                              Thomas J. Nolan
12                                          Attorneys for the MGA Parties

13

14

15

16

17

18

19

20

_____

21  [11]       Mattel's cases are not to the contrary, since none of them extend injunctive relief under the
22  UCL to lawful activities related to the UCL violations at issue. <u>See</u> <u>Iconix, Inc. v. Tokuda</u>, 457 F.
    Supp. 2d 969, 998-1002 (N.D. Cal. 2006) (specifically tailoring the injunction to apply to conduct
    that constituted copyright infringement only); <u>ReadyLink Healthcare v. Cotton</u>, 126 Cal. App. 4th
23  1006, 1017-18, 1025-26 (2005) (upholding order enjoining use of information that qualified as
    misappropriated "trade secrets" under UTSA, but specifically amending the injunction to assure
24  that the enjoined use of information is limited to such "trade secrets"); <u>see also</u> <u>Corp. Express</u>
    <u>Office Prods., Inc. v. Martinez</u>, 2002 WL 31961458, at *6 (C.D. Cal. Mar. 8, 2002) (limiting
25  injunction to prohibit continued retention of information that qualified as misappropriated "trade
    secrets" under UTSA); <u>Courtesy Temporary Serv., Inc. v. Camacho</u>, 222 Cal. App. 3d 1278, 1292
26  (1990) (holding that trial court should enjoin use of information that qualified as misappropriated
    "trade secrets" under UTSA); <u>Klamath-Orleans Lumber, Inc. v. Miller</u>, 87 Cal. App. 3d 458, 465
27  (1978) (affirming injunction of use of information that qualified as a protectable "trade secret"). <u>Cf.</u>
28  <u>supra</u> n.7 (discussing <u>Gladstone</u>, 203 Cal. App. 3d 977).