THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
(laguiar@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, CA  90071-3144
Tel.: (213) 687-5000 / Fax: (213) 687-5600

RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
DAVID W. HANSEN (Bar No. 196958)
(dhansen@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, 38th Floor
San Francisco, CA  94111-5974
Tel.: (415) 984-6400 / Fax: (415) 984-2698

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Plaintiff,<br><br>      v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                 Defendant.<br><br>_____<br><br>AND CONSOLIDATED ACTIONS. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>**MGA PARTIES' NOTICE OF MOTION, MOTION TO STRIKE AND OBJECTIONS TO EXHIBITS ATTACHED TO THE DECLARATION OF DIANE C. HUTNYAN IN SUPPORT OF MATTEL, INC.'S MOTION FOR A PERMANENT INJUNCTION; AND**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Honorable Stephen G. Larson<br><br>**Phase 1(c)**<br>Hearing Date:    Nov. 10, 2008<br>Time:           1:00 p.m. |

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that on November 10, 2008, at 1:00 p.m., or as soon

3   as counsel may otherwise be heard, in the courtroom of the Honorable Stephen G.

4   Larson, located at 3470 Twelfth Street, Riverside, California 92501, counter-

5   defendants MGA Entertainment, Inc., Isaac Larian, and MGA Entertainment (HK)

6   Limited (collectively, the "MGA Parties") will and hereby do, move the Court to

7   enter an order striking Paragraphs 161, 162, 163, 164 and 165, and Exhibits 62, 86,

8   90, 92, 93, 94, and 128, from the Declaration of Diane C. Hutnyan In Support Of

9   Mattel Inc.'s Motion For a Permanent Injunction, dated September 28, 2008.  The

10  above-listed exhibits were not admitted into evidence at trial, and are inadmissible

11  under the Federal Rules of Evidence.  The MGA Parties' therefore further request

12  that the Court refrain from considering the portions of Mattel's Motion For

13  Permanent Injunction that rely on the inadmissible exhibits.

14       This Motion is made pursuant to <u>Federal Rule of Civil Procedure</u> 9(f); <u>Federal</u>

15  <u>Rules of Evidence</u> 401, 402, 602, 801, 802, and 1101; and on the grounds that the

16  proffered exhibits are hearsay, irrelevant, and otherwise inadmissible.

17       This Motion is based on this Notice of Motion and Motion, the accompanying

18  Memorandum of Points and Authorities, the evidence admitted at trial, the pleadings

19  and papers on file with the Court, and all other matters of which the Court may take

20  judicial notice.

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **Statement of Rule 7-3 Compliance**

Counsel for the MGA Parties and Mattel met and conferred regarding the issues presented by this Motion on October 13, 2008.

DATED:  October 13, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  /s/ Thomas J. Nolan
Thomas J. Nolan
Attorneys for MGA Parties

## MEMORANDUM OF POINTS AND AUTHORITIES

During a lengthy two-month trial, the parties elicited testimony from 50 witnesses and introduced 1,468 trial exhibits, generating nearly 8,000 pages of trial transcripts.  Nonetheless, in apparent recognition of the paucity of trial evidence supporting its Motion for Permanent Injunction, Mattel now seeks to introduce 3,000 pages of new, mostly unadmitted exhibits.  Not only do these new exhibits fail to establish Mattel's claim, but many cannot meet basic standards of admissibility.  As such, the Court should strike these exhibits, and refrain from considering the portions of Mattel's brief that rely upon them.

### A.   The Federal Rules Of Evidence Apply In Permanent Injunction Proceedings

In motions for permanent injunctions, as in trials, the Federal Rules of Evidence apply.  Fed. R. Evid. 1101(b) (providing that Federal Rules "apply generally to civil actions and proceedings," and providing no exception for permanent injunction hearings).  That includes Rules prohibiting admission of hearsay (Fed. R. Evid. 802), requiring competent witnesses (Fed. R. Evid. 602), and excluding irrelevant evidence (Fed. R. Evid. 402).  And unlike in the <u>preliminary injunction</u> context, where more relaxed evidentiary standards may govern, the timing of permanent injunction hearings do not make "it difficult to obtain affidavits from persons who would be competent to testify at trial."  <u>Cf.</u> <u>Flynt Distrib. Co. v. Harvey</u>, 734 F.2d 1389, 1394 (9th Cir. 1984); <u>Levi Strauss & Co. v. Sunrise Int'l Trading Inc.</u>, 51 F.3d 982, 985 (11th Cir. 1995) ("At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction.").  Indeed, in this case, a full trial that included testimony from dozens of competent witnesses has already taken place.  As such, no exception to the Federal Rules of Evidence should or does apply.

**B.    The Court Should Strike Inadmissible Exhibits Submitted Concurrently With Mattel's Motion For Permanent Injunction**

In an effort to substantiate its claims of market-share loss, Mattel cites to a handful of newspaper stories, television-show transcripts and other irrelevant hearsay materials.  Such "evidence" is inadmissible under the Federal Rules of Evidence and should be stricken.  Among other things, the Rules of Evidence prohibit admission of out-of-court statements offered for the truth of the matter asserted.  Fed. R. Evid. 801; Fed. R. Evid. 802; see also Mahone v. Lehman, 347 F.3d 1170, 1173 (9th Cir. 2003) (holding that an out-of-court statement is hearsay and inadmissible when the inference the proponent wants the trier of fact to draw from the statement depends on its truth).  Under limited circumstances, certain out-of-court statements may be admissible where, for example, they are made by a "party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."  Fed. R. Evid. 801(d)(2)(D).  But even under these circumstances, the content of the statement alone is insufficient to establish "the agency or employment relationship and scope thereof."  Fed R. Evid. 801(d)(2).

Additionally, the Rules of Evidence prohibit lay witnesses from testifying about matters in which they have no personal knowledge.  Fed. R. Evid. 602; see Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1028 (9th Cir. 2001) ("It is not enough for a witness to tell all she knows; she must know all she tells.").  Before a witness may be permitted to testify, the proffering party must first introduce evidence "sufficient to support a finding that the witness has personal knowledge of the matter."  Fed. R. Evid. 602.  Finally, the Rules require evidence to be relevant to the issues before the Court.  Fed. R. Evid. 402; United States v. W. R. Grace, 504 F.3d 745, 761 (9th Cir. 2007) (upholding district court's decision to exclude irrelevant documents under Fed. R. Evid. 402).  To be relevant, the proffered evidence must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it

1  would be without the evidence."  Fed. R. Evid. 401.  Any "[e]vidence which is not

2  relevant is not admissible."  Fed. R. Evid. 402.

3        Applying these Rules, the following exhibits submitted in support of Mattel's

4  motion should be stricken:

5        <u>Hutnyan Decl Ex. 62.</u>[1]  This exhibit is a June 2003 e-mail chain involving

6  Isaac Larian.  The cited portion, as well as the entire document, is inadmissible.  First,

7  Mr. Larian is not competent to testify regarding Mattel's market share; only Mattel

8  and its executives have personal knowledge of Mattel's market-share performance.

9  <u>See</u> Fed. R. Evid. 602.  Tellingly, Mattel has produced no competent witnesses (or

10  any other evidence) to testify regarding its purported market-share losses.  And

11  certainly no evidence was introduced at trial that Mr. Larian had personal knowledge

12  of Mattel's market share.  The exhibit should therefore be stricken.  <u>See id.</u>  Second,

13  whether Mr. Larian believed, in 2003, that Bratz' growth had come at the expense of

14  "other toy companies like Mattel," does not bear upon whether Bratz had actually

15  taken Mattel's market share, whether Bratz took Mattel's market share in the five

16  years since, or whether Bratz will take any of Mattel's market share going forward.

17  For this reason, the evidence is irrelevant to the issues before the Court.  <u>See</u> Fed. R.

18  Evid. 402.  Finally, the evidence does not support the proposition for which it is cited,

19  namely, that MGA somehow "targeted" Mattel's market share.  (Mot. at 23.)  Rather,

20  the document represents Mr. Larian's conjecture that Bratz' growth "came at the

21  expense" of other toy companies.

22        <u>Hutnyan Decl. Ex. 92.</u>[2]  This exhibit is a 2002 newspaper article that purports

23  to quote an MGA public-relations director.  The cited portion, as well as the article

24  itself, is hearsay within hearsay that is not subject to any hearsay exception.  <u>See</u> Fed.

25  R. Evid. 805.  The article's author does not purport to have any personal knowledge

26  _____

27  [1] Mot. at 23, n.99.

28  [2] Mot. at 23, n.98.

1   of the pertinent facts.  And the MGA employee purportedly quoted is not an "MGA

2   executive," as Mattel asserts, but a "public relations director."  (<u>See</u> Hutnyan Ex. 92

3   at MGA 0142815.)  Because the development of MGA's business strategy is not

4   within the scope of public relations, the purported comments do not constitute

5   admissible non-hearsay.  Fed. R. Evid. 801(d).  Moreover, even if non-hearsay, the

6   purported statements are irrelevant to the issues before the Court.  Whether or not, in

7   2002, MGA had intended to take market share from Barbie does not bear upon

8   whether MGA (1) in fact did take market share from Barbie, or (2) will continue to

9   do so into the future.  The proffered evidence is therefore further inadmissible under

10  Fed. R. Evid. 402.

11      <u>Hutnyan Exhibit 93.</u>[3]  This exhibit is a *Los Angeles Times* article that purports

12  to quote Isaac Larian.  But the cited portion, as well as the entire exhibit, is irrelevant

13  to the issues before this Court.  Here again, whether or not Mr. Larian aspired to be

14  "No. 1" does not bear upon whether MGA (1) took market share away from Mattel,

15  or (2) will take market share away from Mattel in the future; it is therefore

16  inadmissible under Fed. R. Evid. 402.  Moreover, the proffered exhibit fails to

17  support the proposition for which it is cited.  Mattel claims that "MGA has asserted

18  that its business model is to target Mattel market share specifically."  (Mot. at 23.)

19  The exhibit says nothing about MGA's purported intent to target Mattel's market

20  share, or, for that matter, the market share of any other company.

21      <u>Hutnyan Decl. Ex. 94.</u>[4]  This exhibit is a March 21, 2002 e-mail string

22  involving Isaac Larian and others.  It is irrelevant.  Whether or not Larian aspired to

23  market share equal to half of Mattel's share of the UK market does not bear upon

24  whether MGA at any time, in any market, actually took market share from Mattel; or

25  whether MGA will ever take market share from Mattel going forward.  It therefore

26  _____

27  [3] Mot. at 23, n.98.
    [4] Mot. at 23, n.99.

28

1    does not bear upon the issues before the Court, and is inadmissible.  See Fed. R. Evid.

2    402.

3       Hutnyan Decl. Ex. 86.[5]  This exhibit is MGA's Petition for Writ of Mandamus

4    to the Ninth Circuit.  The cited portion, as well as the entire document, is

5    inadmissible.  Like Mr. Larian, MGA's appellate counsel is not competent to testify

6    regarding Mattel's market share; only Mattel and its executives have personal

7    knowledge of the Company's market-share performance.  See Fed R. Evid. 602.  As

8    noted, however, Mattel has produced no competent witnesses to testify regarding its

9    purported market-share losses.  This evidence is therefore inadmissible.  Id.

10   Additionally, the evidence is irrelevant to any issues before the Court.  Whether, in

11   fact, Bratz "began eroding Mattel's substantial market share in 2001" says nothing

12   about whether that erosion continued, or will continue going forward.  Mattel here

13   seeks compensation for alleged prospective harm, not any alleged past damages.

14   Indeed, at trial, Mattel's expert projected that Bratz sales would decline, thus making

15   it impossible for Bratz to take market share from any company, much less from

16   Mattel, the market's dominant player.[6]

17      Hutnyan Decl. Ex. 128.[7]  This exhibit is a 2004 news article that purports to

18   quote Mr. Larian regarding Bratz' market share vis-a-vis "our competitors."  But Mr.

19   Larian is not competent to testify regarding Mattel's market share; accordingly, the

20   purported quotation says nothing about it.  The cited portion of Exhibit 128 is

21   therefore inadmissible.  See Fed. R. Evid. 602.  Moreover, the exhibit fails to support

22   the proposition for which it is cited, namely, that "Bratz dolls successfully reduced

23   Mattel's market share." (Mot at 23.)  Instead, the exhibit supports the notion that

24   storylines and content – rather than doll design – drive fashion-doll sales.  For

_____

25   [5] Mot. at 23, n.99.

26   [6] See Tr. 6395:22-6396:7 (predicting a 55% decline in 2008, and another 22% decline through mid-2009).

27   [7] Mot. at 23, n.99.

28

1 example, it quotes Tim Kilpin, Mattel's senior vice-president of marketing,

2 discussing Mattel's strategy to use "content and storytelling" to sell Barbie dolls.

3 (Hutnyan Decl. Ex. 128 at M 0070239.)  Further, the article states that, in contrast to

4 Mattel's assertions of declining market share, "Barbie still claims to be the number

5 one girl brand in the world and the most popular fashion doll ever introduced."  (Id.;

6 accord Id. Ex. 90 at M 0062150 ("Chuck Scothon (Senior Vice President Mattel -

7 Girls Division): …[B]arbie has been and will remain the number one fashion doll in

8 the industry.").)  Mr. Kilpin likewise explains:  "I don't believe that Bratz is anything

9 close to equaling Barbie's level of aspiration." (Id. Ex. 128 at M 0070240.)  This is

10 contrary to Mattel's current contentions.

11     Hutnyan Decl. Ex. 90.[8]  This exhibit purports to be a transcript from a

12 December 23, 2006 television show.  The cited quotation is hearsay within hearsay.

13 Further, it does not purport to be based on the news correspondent's personal

14 knowledge.  The exhibit is therefore inadmissible under Federal Rules of Evidence

15 602 and 801.  Moreover, the correspondent's out-of-court statement is irrelevant.

16 Whether or not Bratz has a 40% market share has no bearing on whether (1) that

17 market share came at Mattel's expense; or (2) whether any future market share will

18 come at Mattel's expense.  See Fed. R. Evid. 402.  Finally, the exhibit does nothing

19 to support the proposition for which it is cited, namely, that "Bratz dolls have

20 successfully reduced Mattel's market share."  (Mot. at 23.)  Again, Mattel has failed

21 to produce competent evidence on this subject.

22

23

24

25

26

27 _____

[8] Cited at Mot. at 23, n.99.

28

1

## <u>CONCLUSION</u>

2         For the foregoing reasons, the MGA Parties request that the Court sustain the

3  objections set forth above and strike the objectionable evidence.

4

5  DATED:  October 13, 2008       Respectfully submitted,

6                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

7

8                       By:  /s/ Thomas J. Nolan
                            Thomas J. Nolan

9                            Attorneys for MGA Parties

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28