1  THOMAS J. NOLAN (Bar No. 66992)
   (tnolan@skadden.com)
2  JASON D. RUSSELL (Bar No. 169219)
   (jrussell@skadden.com)
3  LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
   (laguiar@skadden.com)
4  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue
5  Los Angeles, CA  90071-3144
   Tel.: (213) 687-5000 / Fax: (213) 687-5600
6
7  RAOUL D. KENNEDY (Bar No. 40892)
   (rkennedy@skadden.com)
8  DAVID W. HANSEN (Bar No. 196958)
   (dhansen@skadden.com)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
9  4 Embarcadero Center, 38th Floor
   San Francisco, CA  94111-5974
10 Tel.: (415) 984-6400 / Fax: (415) 984-2698

11 Attorneys for MGA Parties

12

13             UNITED STATES DISTRICT COURT

14            CENTRAL DISTRICT OF CALIFORNIA

15                    EASTERN DIVISION

16 CARTER BRYANT, an individual,          ) CASE NO. CV 04-9049 SGL (RNBx)
                                          )
17                         Plaintiff,     ) Consolidated with Case No. 04-9059 and
                                          ) Case No. 05-2727
18           v.                           )
                                          ) Honorable Stephen G. Larson
19 MATTEL, INC., a Delaware corporation,  )
                                          ) (1) MGA PARTIES' OPPOSITION TO
20                         Defendant.     )     MATTEL'S MOTION FOR
                                          )     PERMANENT INJUNCTION
21 ─────────────────────────────────     )
                                          ) **FILED UNDER SEPARATE COVER:**
22 AND CONSOLIDATED ACTIONS.             )
                                          ) (2) DECLARATION OF CARL ALAN
23 ─────────────────────────────────     )     ROTH (**UNDER SEAL**); and
24                                          (3) DECLARATION OF PAUL
                                               MEYER
25 **PUBLIC REDACTED**
                                            Hearing Date:    November 10, 2008
26                                          Time:            1:00 PM
27
28

# TABLE OF CONTENTS

PAGE:

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

I. EQUITABLE RELIEF IS UNAVAILABLE BECAUSE MATTEL ELECTED TO SEEK FUTURE DAMAGES AT TRIAL AND THE JURY FOUND THAT MATTEL WAS ENTITLED TO NO PROSPECTIVE RELIEF ...................... 2

II. EVEN IF THE JURY HAD FOUND ON-GOING INFRINGEMENT, INJUNCTIVE RELIEF IS INAPPROPRIATE ................................................. 5

    A. Injunctive Relief Is Inappropriate, As Legal Remedies Are Adequate .............. 6

    B. Irreparable Injury Is Not Presumed .................................................... 7

    C. Mattel Has Not Shown That It Has In Fact Suffered Irreparable Harm ............ 9

        1. Mattel's Alleged Market Share Injury Fails As A Matter Of Law And A Matter Of Fact ................................................................ 10

        2. To Establish Irreparable Injury, Infringement Of Exclusive Rights Is Insufficient ................................................................ 12

        3. A Phase 1(b) Money Judgment Could Be Collected ............................. 13

    D. The Balance Of Hardships Does Not Warrant Injunctive Relief .................... 13

    E. The Public Interest Would Not Be Served By An Injunction ......................... 14

III. THE INJUNCTION SOUGHT BY MATTEL IS OVERLY BROAD AND UNNECESSARY ............................................................................... 17

    A. An Injunction Must Be Narrowly Tailored To The Specific Conduct For Which Defendant Has Been Held Liable .............................................. 17

    B. Mattel Requested A General Verdict On Copyright Infringement To Avoid Prejudicing The Huge Damages Award Mattel Hoped To Achieve ...... 18

    C. The Only Logical Reading Of The Verdict Is That The Jury's Infringement Finding Was Limited To The First Generation Bratz Dolls ....... 19

    D. The Court Is Bound By The Jury's Infringement Verdict ............................ 26

IV. MATTEL SHOULD HAVE SOUGHT A ROYALTY, NOT AN INJUNCTION ..................................................................................... 29

V. A DESTRUCTION OR RECALL ORDER IS INAPPROPRIATE ...................... 32

CONCLUSION ............................................................................................ 35

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

<u>3M v. Pribyl,</u>
259 F.3d 587 (7th Cir. 2001) ................................................................................. 4

<u>Abbott Laboratoriess v. Andrx Pharms., Inc.,</u>
452 F.3d 1331 (Fed. Cir. 2006) ........................................................................... 8

<u>Abend v. MCA, Inc.,</u>
863 F.2d 1465 (9th Cir. 1988) ....................................... 15, 16, 30, 31, 32

<u>Advanced Cardiovascular Systems, Inc. v. Medtronic Vascular, Inc.,</u>
No. CIV. 98-80-SLR, CIV. 98-314-SLR, CIV. 98-316-SLR,
--- F. Supp. 2d -- 2008 WL 4397476 (D. Del. Sept. 26, 2008) ................................. 10

<u>Allora, LLC v. Brownstone, Inc.,</u>
No. 1:07CV87,
2007 WL 1246448 (W.D.N.C. Apr. 27, 2007) ........................................... 9

<u>Amado v. Microsoft Corp.,</u>
Case No. SA CV 03-242 DOC (ANx),
2007 U.S. Dist. LEXIS 96487 (C.D. Cal. Mar. 13, 2007) .............................. 9, 12, 13

<u>American Cyanamid Co. v. U.S. Surgical Co.,</u>
833 F. Supp. 92 (D. Conn. 1992) ..................................................................... 7

<u>Amoco Production Co. v. Village of Gambell,</u>
480 U.S. 531 (1987) ............................................................................................ 8

<u>Applied Innovations, Inc. v. Regents of the University of Minn.,</u>
876 F.2d 626 (8th Cir. 1989) ........................................................................... 33

<u>Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,</u>
369 U.S. 355 (1962) ........................................................................................... 20

<u>Bains LLC v. ARCO Prods. Co.,</u>
405 F.3d 764 (9th Cir. 2005) ............................................................................ 20

<u>Bennigan's Franchising Co., L.P. v. Swigonski,</u>
No. CIV. A. 3:06CV2300G,
2007 WL 603370 (N.D. Tex. Feb. 27, 2007) ............................................. 15

<u>Boston Scientific Corp. v. Johnson & Johnson,</u>
550 F. Supp. 2d 1102 (N.D. Cal. 2008) ......................................................... 30

<u>BR Associates, Inc. v. LaFramboise,</u>
No. 06-11870-BC,
2007 WL 1840031 (E.D. Mich. June 26, 2007) .................................... 15, 16

<u>Brown v. Ornoski,</u>
503 F.3d 1006 (9th Cir. 2007) .......................................................................... 22

Campbell v. Acuff-Rose Music, Inc.,
    510 U.S. 569 (1994) ................................................................ 7, 14

Canon Inc. v. GCC International Ltd.,
    450 F. Supp. 2d 243 (S.D.N.Y. 2006),
    aff'd, 263 Fed. Appx. 57 (Fed. Cir. 2008) ............................... 9

Chamberlain Group, Inc. v. Lear Corp.,
    No. 05 C 3449,
    2007 WL 1017751 (N.D. Ill. Mar. 30, 2007) ........................... 9

Cream Records, Inc. v. Jos. Schlitz Brewing Co.,
    754 F.2d 826 (9th Cir. 1985) ................................................. 12

Crystal Semiconductor Corp. v. Tritech Microelectronics International,
    246 F.3d 1336 (Fed. Cir. 2001) ............................................. 10

CyberMedia, Inc. v. Symantec Corp.,
    19 F. Supp. 2d 1070 (N.D. Cal. 1998) ................................... 34

Danjaq LLC v. Sony Corp.,
    263 F.3d 942 (9th Cir. 2001) ................................................. 27

Data General Corp. v. Grumman System Support Corp.,
    36 F.3d 1147 (1st Cir. 1994) ................................................. 11

Davis v. Rockwell Intern. Corp.,
    596 F. Supp. 780 (N.D. Ohio 1984) ........................................ 5

Designer Skin, LLC v. S&L Vitamins, Inc.,
    No. CV 05-3699-PHX-JAT,
    2008 WL 4174882 (D. Ariz. Sept. 5, 2008) ............................. 9

Dothard v. Rawlinson,
    433 U.S. 321 (1977) .............................................................. 28

Dun v. Lumbermen's Credit Association,
    209 U.S. 20 (1908) ........................................................ 7, 14, 30

eBay Inc. v. MercExchange, L.L.C.,
    547 U.S. 388 (2006) ...................................................... passim

Eisai Co., Ltd. v. Teva Pharms. USA, Inc.,
    No. CIV. 05 5727 (HAA)(ES, CIV. 07 5489 (HAA)(E),
    2008 WL 1722098 (D.N.J. Mar. 28, 2008) ............................... 8

Elvis Presley Enterprises v. Passport Video,
    257 F.3d 896 (9th Cir. 2003) ................................................. 16

Feist Publications, Inc. v. Rural Telegraph Service Co.,
    499 U.S. 349-50 (1991) ........................................................ 17

Finisar Corp. v. DirecTV Group,
    No. 1:05-CV-264,
    2006 U.S. Dist. LEXIS 76380 (E.D. Tex. July 7, 2006) ........... 30

Floyd v. Laws,
   929 F.2d 1390 (9th Cir. 1991) ............................................................ 27, 31

Fogarty v. Fantasy, Inc.,
   510 U.S. 517 (1994) ............................................................................ 17

Foster v. American Machine & Foundry Co.,
   492 F.2d 1317 (2d Cir. N.Y. 1974) ..................................................... 14

Frank Music Corp. v. Metropolitan-Goldwyn-Mayer, Inc.,
   772 F.2d 505 (9th Cir. 1985) .............................................................. 11

Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,
   528 U.S. 167 (2000) ............................................................................ 6

Funky Films, Inc. v. Time Warner Entertainment Co. L.P.,
   462 F.3d 1072 (9th Cir. 2006) ............................................................ 27, 29

Gallick v. Balt. & Ohio Railroad Co.,
   372 U.S. 108 (1963) ............................................................................ 20

General Power Products, LLC v. MTD Products,
   No. 1:06CV00143,
   2006 WL 3692953 (S.D. Ohio Dec. 13, 2006) ................................... 15

Gentner v. Cheyney University of Pennsylvania,
   No. CIV. A. 94-7443,
   1996 WL 525323 (E.D. Pa. Sept. 17, 1996) ....................................... 20

Granville v. Suckafree Records, Inc.,
   No. CIV. A. H-03-3002,
   2006 WL 2520909 (S.D. Tex. June 28, 2006) .................................... 34

Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.,
   527 U.S. 308 (1999) ............................................................................ 6

Guerrero v. Gates,
   110 F. Supp. 2d 1287 (C.D. Cal. 2000) .............................................. 10

Gund, Inc. v. Golden Bear Co., Ltd.,
   No. 92 Civ. 8555 (LJF),
   1992 WL 392602 (S.D.N.Y. Dec. 10, 1992) ..................................... 34

Gund, Inc. v. Swank,
   673 F. Supp. 1233 (S.D.N.Y. 1987) ................................................... 34

Hologic, Inc. v. Senorx, Inc.,
   No. C-08-00133 RMW,
   2008 WL 1860035 (N.D. Cal. Apr. 25, 2008) ................................... 7. 9

IMX, Inc. v. Lendingtree, LLC,
   469 F. Supp. 2d 203 (D. Del. 2007) ................................................... 10, 13

Iconix, Inc. v. Tokuda,
   457 F. Supp. 2d 969 (N.D. Cal. 2006) ............................................... 17

*Innogenetics, N.V. v. Abbott Laboratories,*
    512 F.3d 1363 (Fed. Cir. 2008) ............................................................. 6

*John Fluke Manufacturing Co. v. North American Soar Corp.,*
    No. CIV. 87-0844 (SSB),
    1987 WL 46372 (D.N.J. Sept. 1, 1987) ................................................ 12

*Lakefield Telephone Co. v. Northern Telecom Inc.,*
    679 F. Supp. 881 (E.D. Wis. 1988) .................................................... 4, 6

*Lamb-Weston, Inc. v. McCain Foods, Ltd.,*
    941 F.2d 970 (9th Cir. 1991) ............................................................... 17

*Latman v. Burdette,*
    366 F.3d 774 (9th Cir. 2004) ................................................................. 2

*Lennon v. Premise Media Corp.,*
    556 F. Supp. 2d 310 (S.D.N.Y. 2008) ................................................. 8

*Level 3 Communications, LLC v. City of St. Louis,*
    Nos. 4:04-CV-871 CAS, 4:04-CV-1046 CAS,
    2007 WL 2860171 (E.D. Mo. Sept. 25, 2007),
    *aff'd*, 540 F.3d 794 (2008) .................................................................. 29

*Litchfield v. Spielberg,*
    736 F.2d 1352 (9th Cir. 1984) ............................................................. 25

*Los Angeles Police Protective League v. Gates,*
    995 F.2d 1469 (9th Cir. 1993) ................................................... 5, 27, 32

*Lubrizol Corp. v. Exxon Corp.,*
    696 F. Supp. 302 (N.D. Ohio 1988) .................................................... 12

*McGuire v. Russell Miller, Inc.,*
    1 F.3d 1306 (2d Cir. 1993) .................................................................. 20

*MercExchange, L.L.C. v. eBay, Inc.,*
    500 F. Supp. 2d 556 (E.D. Va. 2007) ............................................... 9, 13

*Merit Diamond Corp. v. Frederick Goldman, Inc.,*
    376 F. Supp. 2d 517 (S.D.N.Y. 2005) ................................................ 34

*Metropolitan-Goldwyn-Mayer Studios v. Grokster Ltd.,*
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) ............................... 8, 9, 12, 13, 17

*Miller v. Fairchild Industries, Inc.,*
    885 F.2d 498 (9th Cir. 1989) ............................................................ 5, 27

*National Resources Defense Council, Inc. v. Winter,*
    508 F.3d 885 (9th Cir. Cal. 2007) ....................................................... 17

*New York Times Co. v. Tasini,*
    533 U.S. 483 (2001) ............................................................................. 7

*Next Level Communications LP v. DSC Communications Corp.,*
    179 F.3d 244 (5th Cir. 1999) ................................................................ 5

Nikon, Inc. v. Ikon Corp.,
   No. 89 Civ. 6044 (KMW)(NG),
   1992 WL 398440 (S.D.N.Y. Dec. 18, 1992) .................................................. 34

Northern Cheyenne Tribe v. Norton,
   503 F.3d 836 (9th Cir. 2007) .......................................................................... 6

Novartis Pharmaceuticals Corp. v. Teva Pharmaceuticals USA, Inc.,
   No. 05-CV-1887 (DMC),
   2007 WL 2669338 (D.N.J. Sept. 6, 2007) ...................................................... 9

Nutrition 21 v. United States,
   930 F.2d 867 (Fed. Cir. 1991) ....................................................................... 7

Oakland Tribune, Inc. v. Chronicle Publishing Co.,
   762 F.2d 1374 (9th Cir. 1985) ...................................................................... 7

PGBA v. United States,
   389 F.3d 1219 (Fed. Cir. 2004) .................................................................... 9

Paice LLC v. Toyota Motor Corp.,
   No. 2:04CV211DF,
   2006 WL 2385139 (E.D. Tex. Aug. 16, 2006) ...................................... 6, 13

Paice LLC v. Toyota Motor Corp.,
   504 F.3d 1293 (Fed. Cir. 2007) .................................................................. 30

Pass & Seymour, Inc. v. Hubbell, Inc.,
   532 F. Supp. 2d 418 (N.D.N.Y. 2007) ...................................................... 15

Pittway v. Black & Decker,
   667 F. Supp. 585 (N.D. Ill. 1987) .............................................................. 12

Polar Bear Products, Inc. v. Timex Corp.,
   384 F.3d 700 (9th Cir. 2004) ..................................................................... 12

Polymer Technologies, Inc. v. Bridwell,
   103 F.3d 970 (Fed. Cir. 1996) .................................................................... 11

Popham v. City of Kennesaw,
   820 F.2d 1570 (11th Cir. Ga. 1987) ..................................................... 20, 25

Practice Management Information Corp. v. American Medical Association,
   121 F.3d 516 (9th Cir. 1997) ...................................................................... 34

Precision Automation, Inc. v. Technical Services, Inc.,
   No. 07-CV-707-AS,
   2007 WL 4480739 (D. Or. Dec. 14, 2007) ............................................ 9, 10

Price v. City of Stockton,
   390 F.3d 1105 (9th Cir. 2004) .................................................................... 17

Propet USA, Inc. v. Shugart,
   No. C06-0186-MAT,
   2007 WL 4376204 (W.D. Wash. Dec. 13, 2007) ........................................ 9

Rent-A-Car v. Canyon Television & Appliance Rental, Inc.,
    944 F.2d 597 (9th Cir. 1991) ................................................................ 6-7

Richard Feiner & Co. v. Turner Entertainment,
    926 F. Supp. 40 (S.D.N.Y 1996) ........................................................... 30

Rogers v. Koons,
    960 F.2d 301 (2d Cir. 1992) ................................................................. 34

Rosewood Apartments Corp. v. Perpignano,
    200 F. Supp. 2d 269 (S.D.N.Y. 2002) ................................................... 13

Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.,
    245 F.2d 67 (9th Cir. 1957) ................................................................... 2

Shatterproof Glass Corp. v. Libbey-Owens Ford Co.,
    758 F.2d 613 (Fed. Cir 1985) ............................................................... 30

Silverstein v. Penguin Putnam, Inc.,
    368 F.3d 77 (2d Cir. 2004) ................................................................... 30

Smith & Nephew, Inc. v. Synthes (U.S.A.),
    466 F. Supp. 2d 978 (W.D. Tenn. 2006) ............................................. 6-7

Societe Civile Succession Richard Guino v. International Foundation
    for Anticancer Drug Discovery,
    460 F. Supp. 2d 1105 (D. Ariz. 2006) .................................................. 33

Sony Corp. v. Universal Studios,
    464 U.S. 417 (1984) ....................................................................... 16, 30

Starter Corp. v. Converse, Inc.,
    170 F.3d 286 (2d Cir. 1999) ................................................................. 17

Sun Optics, Inc. v. FGX International, Inc.,
    No. 07-137-SLR,
    2007 WL 2228569 (D. Del. Aug. 2, 2007) ............................................. 9

Syntex (U.S.A.) LLC v. Apotex, Inc.,
    No. C 01-02214 MJJ,
    2005 WL 6042726 (N.D. Cal. Oct. 26, 2005), ..................................... 29

T.J. Smith & Nephew Ltd. v. Consolidated Medical Equipment, Inc.,
    821 F.2d 646 (Fed. Cir. 1987) ............................................................. 11

TVT Records v. Island Defense Jam Music Group,
    279 F. Supp. 366 (S.D.N.Y. 2003) ...................................................... 33

Taylor Corp. v. Four Seasons Greetings, LLC,
    403 F.3d 958 (8th Cir. 2005) ............................................................... 12

Tiber Laboratoriess, LLC v. Hawthorn Pharms., Inc.,
    527 F. Supp. 2d 1373 (N.D. Ga. 2007) .................................................. 9

Time Warner Cable, Inc. v. DIRECTV, Inc.,
        497 F.3d 144 (2d Cir. 2007) ............................................................. 8

Torspo Hockey International, Inc. v. Kor Hockey Ltd.,
        491 F. Supp. 2d 871 (D. Minn. 2007).......................................... 9

United States v. Oregon Lumber Co.,
        260 U.S. 290 (1922)................................................................... 2, 5

United States v. Sturdivant,
        244 F.3d 71 (2d Cir. 2001) ......................................................... 19

United States v. Virginia,
        88 F.R.D. 656 (E.D. Va. 1980) ............................................ 28, 29

Universal City Studios v. Sony Corp.,
        659 F.2d 963 (9th Cir. 1981) ...................................................... 30

Vaughan v. Ricketts,
        950 F.2d 1464 (9th Cir. 1991) .................................................... 20

Velo-Bind, Inc. v. Minnesota Mining & Manufacturing Co.,
        647 F.2d 965 (9th Cir. 1981) ...................................................... 12

Voile Manufacturing Corp. v. Dandurand,
        551 F. Supp. 2d 1301 (D. Utah 2008) ......................................... 9

Waldman Publishing Corp. v. Landoll, Inc.,
        43 F.3d 775 (2d Cir. 1994) ......................................................... 17

Ward v. Walsh,
        1 F.3d 873 (9th Cir. 1993) .......................................................... 14

Warner Brothers Entertainment Inc. v. RDR Books,
        No. 07 Civ. 9667 (RPP), ___ F. Supp. 2d ___,
        2008 WL 4126736 (S.D.N.Y. Sept. 8, 2008) ............................... 8

Weeks v. Angelone,
        528 U.S. 225 (2000).................................................................... 22

Winston Research Corp. v. Minnesota Mining & Manufacturing Co.,
        350 F.2d 134 (9th Cir. 1965) ........................................................ 5

Woods v. Universal City Studios,
        920 F. Supp. 62 (S.D.N.Y. 1996) ............................................... 30

z4 Technologies, Inc. v. Microsoft Corp.,
        434 F. Supp. 2d 437 (E.D. Tex. 2006)............................... 9, 13, 16

**STATUTES**

Fed. R. Civ. P. 65(d)(1)....................................................................... 17

17 U.S.C. § 503 ............................................................................. 32, 33

## OTHER

2 Dan B. Dobbs, Law of Remedies § 6.3(5) (2d ed. 1993) ..................................................... 15

M. Nimmer & D. Nimmer, Nimmer on Copyright, (2008)
    § 3.01 ........................................................................................................................ 25
    § 14.06 ............................................................................................................... 17, 31

James L. Oakes, Copyrights and Copyremedies: Unfair Use and Injunctions,
    18 Hofstra L. Rev. 983, 997 (1990) ........................................................................ 16

6 William F. Patry, Patry On Copyrights (2008),
    § 22:74 ........................................................................................................................ 9
    § 22.79 ....................................................................................................................... 34
    § 22.81 ....................................................................................................................... 33
    § 22.86 .................................................................................................................. 32, 33

MGA's Opposition to Mattel's Motion For Permanent Injunction - Case No. CV 04-9049 SGL (RNBx)

## PRELIMINARY STATEMENT

$2.135 billion.  For four years, Mattel pursued a damage award in excess of $2 billion in this case. The components of Mattel's damages request were breathtaking – $1.120 billion in MGA's Bratz-related revenues; another $385 million in profit distributions from MGA to Isaac Larian; $310 million from the future profits generated by what Mattel labeled the "Bratz franchise;" $320 million in pre-judgment interest; plus, untold hundreds of millions in punitive damages from both MGA and Mr. Larian. The jury almost entirely rejected Mattel's request, awarding only $10 million for copyright infringement, with "0" awarded for future Bratz profits. Given the jury's infringement and damages findings, which a Court sitting in equity must follow, there is no basis to grant Mattel's request for a permanent injunction, which should be rejected for a host of reasons.

First, Mattel is precluded from seeking injunctive relief because it "elected" instead to pursue future damages at trial.  The jury awarded "$0" under that theory.  Mattel cannot ask the Court to unwind Mattel's election and to contradict the jury's decision.

Second, given its pursuit of more than $2 billion in damages, including the presentation of a future damages model to the jury, Mattel is precluded from maintaining that any harm it might suffer cannot be satisfied by a remedy at law.

Third, Mattel failed to establish, as it must, that absent an injunction it will suffer irreparable injury.  Mattel barely even tried.  Its only argument is that its existing products will lose market share if Bratz products remain in the marketplace.  But Mattel fails to point to any actual lost sales and it has consistently eschewed any showing of lost market share.

Fourth, the balancing of the equities does not weigh in favor of enjoining the sale of Bratz across the board. Among other things, such an injunction is not in the public interest, as Bratz is effectively the only fashion doll serving the teen market.

Fifth, even if the Court were inclined to grant injunctive relief, the only logical conclusion to draw from the jury's verdict is that they found no infringement beyond the first generation Bratz fashion dolls, which are no longer manufactured. Thus, there is no reason for an injunction – much less the sweeping injunction sought by Mattel. While

1  arguing for its simplistic verdict form, Mattel's counsel assured the Court that it would be
2  able to "discern" the scope of the jury's infringement finding from the amount of damages
3  awarded. One can discern the scope of the infringement from the verdict: the first
4  generation dolls.  Mattel made the strategic decision to avoid detailed infringement findings
5  so as not to prejudice the huge damages award it hoped the jury would return against MGA.
6  Indeed, as the Court noted: "MGA requested to have a[n] [infringement] finding on
7  particular dolls and particular generations ... and Mattel did not want that." Mattel's strategy
8  failed, as must its request for injunctive relief which is flatly at odds with the jury verdict.

9      Finally, if the Court were to determine that there is ongoing infringement that was not
10  remedied by the jury and that equitable relief is appropriate (which MGA maintains is not
11  the case), then a royalty, and not an injunction, would be the proper remedy.  As courts have
12  routinely held, such a royalty would be an appropriate remedy where the infringing
13  elements comprise – as the jury held – only a small part of the relevant product.

14                                          **ARGUMENT**
15  **I.  EQUITABLE RELIEF IS UNAVAILABLE BECAUSE MATTEL ELECTED
          TO SEEK FUTURE DAMAGES AT TRIAL AND THE JURY FOUND
16        THAT MATTEL WAS ENTITLED TO NO PROSPECTIVE RELIEF**

17      At trial, Mattel sought legal damages in the form of past <u>and</u> future profits and it did
18  so understanding that seeking future profits would preclude any opportunity to seek an
19  injunction.  Having been awarded no future damages, Mattel cannot go back and change its
20  strategic decision.  <u>See, e.g.</u>, <u>U.S. v. Oregon Lumber Co.</u>, 260 U.S. 290, 296 (1922)
21  (plaintiff may not vex defendant again with an action inconsistent with adverse decision).
22  Rather, because Mattel had the choice between the inconsistent remedies of future damages
23  or injunctive relief before the jury trial, and elected to pursue future damages, it is estopped
24  from now pursuing an injunction.  <u>See e.g.</u>, <u>Latman v. Burdette</u>, 366 F.3d 774, 781-82 (9th
25  Cir. 2004); <u>Sears, Roebuck & Co. v. Metro. Engravers, Ltd.</u>, 245 F.2d 67, 70 (9th Cir. 1957).

26      Mattel claimed that it was entitled to the value of Larian's share in the Bratz franchise,
27  which was based not on past or present profits, but on future Bratz profits.

28                                          REDACTED

                                              -2-

REDACTED

[1] Mattel then conducted a computation to come up with a $310 million present value for Larian's portion of the Bratz franchise. (Tr. 6300:9-17; TX 13961.) While presenting these calculations to the jury, Mattel conceded it was seeking prospective money damages.

MR. ROTH: The one observation we would make here is that Mattel has made through Mr. Wagner assertions about the future. So if we're holding – and there are assertions about what profits and losses will be in the future. So that's the state of play. . . . This is in play because they are seeking future profits. They are making assertions about the future.

*       *       *

MR. ROTH: . . . and I was a little confused about a comment made by Mr. Quinn, which was the theory being offered in the compensatory context was not being offered as a future profits theory.

*       *       *

THE COURT: Let me get a clarification from Mr. Quinn on that. Because if future profits are not at issue and essentially, Mr. Corey, Mattel is simply relying on injunctive relief for anything going forward, then that makes this easy as well.

MR. COREY: And that's not right. I think the portion that was quoted was from Mr. Wagner's initial report. He did that analysis in his rebuttal report. It is a portion of the damages that we are claiming on a prospective basis.

THE COURT: So you are seeking future compensatory damages.

---

[1] See Decl. of Carl Alan Roth ("Roth Decl."), Ex. 1 (2/11/08 Wagner Report) at 13-17.

REDACTED

MR. COREY:   We are seeking damages attributable to the benefit of Bratz to Mr. Larian.  One piece of that is the value of the MGA stock, and we value that using future Bratz profits.

THE COURT:   Okay.

(Tr. 6440:25-6441:4; 6441:11-13; 6443:5-8; 6443:15-6444:5.)[2]

Mattel also admitted the mutual exclusivity of the two remedies.  In objecting to MGA questions of Mattel's damages expert on the relationship between an injunction, which would preclude the possibility of future Bratz profits, and Mattel's claim for $310 million in future profits, Mattel's counsel argued:

MR. QUINN:   There are competing remedies here, your Honor.  We're not both going to get – I think this is something that's going to be solved by the verdict form.  We are not both going to get an injunction plus damages.

\*        \*        \*

MR. QUINN:   We should not both get a value for Bratz which builds in future profits and also get an injunction.  We shouldn't get that.

THE COURT:   Right.

MR. QUINN:   Both of those.

THE COURT:   No, you should not.  Everyone, I think, would agree on that.

(Tr. 6430:9-12, 22-24, 6431:3.)

The objection was sustained and the jury was then presented evidence of the amount of future profits.  When Mattel voluntarily took this route, sought future profits, it elected its remedy.  Mattel is not entitled to now seek an alternative remedy from the Court.  See 3M Co. v. Pribyl, 259 F.3d 587, 608 (7th Cir. 2001) (denying injunction where jury previously denied monetary relief for same future conduct); Lakefield Tel. Co. v. N. Telecom Inc., 679

---

[2]     Mattel's damages expert then testified that under his damages model, Mattel was entitled to over $310 million in future Bratz profits.  (TX 13961.)  He further testified that this was not speculation, but rested on well-accepted valuation principles.  (Tr. 6299:25-6300:3; Mattel's Opp'n to MGA's MIL No. 7 (Public Redacted) (Dkt 4050) at 12:4-5 ("Wagner's opinions . . . are based on accepted accounting and business valuation methods.")

F. Supp. 881, 883-84 (E.D. Wis. 1988) (unfairness of requiring one to defend against remedy at law, then equity, is an underlying principle of the election-of-remedies doctrine).[3]

That the jury ultimately found that Mattel was entitled to <u>no</u> money damages for future infringement does not change the result.  (Phase 1(b) Verdict (Dkt 4279) ¶ 11(b).)  Indeed, the Seventh Amendment requires a court sitting in equity to follow the factual findings of the jury: "[W]here legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are 'based on the same facts,' in deciding the equitable claims 'the Seventh Amendment requires the trial judge to follow the jury's <u>implicit or explicit factual determinations</u>.'"  <u>Los Angeles Police Protective League v. Gates</u>, 995 F.2d 1469, 1473 (9th Cir. 1993) (citing <u>Miller v. Fairchild Indus.</u>, 885 F.2d 498, 507 (9th Cir. 1989)) (emphasis added).  Here, the jury awarded $0 in future profits.  Thus, Mattel cannot now seek an injunction based on a contrary finding.  <u>Los Angeles Police</u>, 995 F.2d at 1473.[4]

## II.  <u>EVEN IF THE JURY HAD FOUND ON-GOING INFRINGEMENT, INJUNCTIVE RELIEF IS INAPPROPRIATE</u>

Even if the Court were to conclude that the jury found there is on-going infringement, injunctive relief would be inappropriate because:  (1) given its pursuit of nearly $2 billion in damages, including the presentation of a future damages model to the jury, Mattel cannot conceivably claim that any harm it might suffer cannot be satisfied by a remedy at law; (2) Mattel has failed to establish as a matter of law or fact that absent an injunction it will suffer irreparable injury; and (3) the balancing of the equities does not weigh in favor of enjoining the sale of Bratz; among other things, such injunction is not in the public interest.

---

[3]     <u>See also Next Level Commc'ns LP v. DSC Commc'ns Corp.</u>, 179 F.3d 244, 250 (5th Cir. 1999) (denying injunctive relief where plaintiff already compensated); <u>Winston Research Corp. v. 3M Co.</u>, 350 F.2d 134, 144 (9th Cir. 1965) ("To enjoin future sales and at the same time make an award based on future profits from the prohibited sales would result in duplicating and inconsistent relief"); <u>Davis v. Rockwell Int'l Corp.</u>, 596 F. Supp. 780, 787 (N.D. Ohio 1984) (preventing experimentation with remedies is a policy behind election-of-remedies doctrine).

[4]     <u>See also Oregon Lumber</u>, 260 U.S. at 301 (if incorrect estimation of the strength of its case "were sufficient to warrant the bringing of a second and inconsistent action the result would be to confine the defense of election of remedies to cases where the first suit had been won by plaintiff and to deny it in all cases where plaintiff had lost.  But the election was determined by the bringing and maintenance of the suit, not by the final disposition of the case by the court.").

**A.**    **Injunctive Relief Is Inappropriate, As Legal Remedies Are Adequate**

Mattel must demonstrate that legal remedies, specifically money damages here, are inadequate to address its injury.  eBay, Inc. v. MercExhchange LLC, 547 U.S. 388, 391 (2006).[5]  But Mattel conceded that monetary damages are adequate when it proffered its future damages theory to the jury during Phase 1(b), as discussed *supra*.  See Innogenetics, N.V. v. Abbott Labs., 512 F.3d 1363, 1380 (Fed. Cir. 2008) (vacating permanent injunction because plaintiff's future damages model had been presented to and decided by the jury). Mattel cannot argue for a legal remedy from the jury, then request injunctive relief on the ground that legal remedies are inadequate.  Lakefield Tel. Co., 679 F. Supp. at 883-84.

Moreover, Mattel asserted that its Phase 1(b) future money damages model was not speculative. (Mattel's Opp'n to MGA's MIL No. 7 (Public Redacted) at 12:4-6.) Thus, it cannot contend that these very damages are too difficult and/or speculative to compensate future infringement. The jury's apportionment of damages shows that future damages could be calculated with precision. Paice LLC v. Toyota Motor Corp., 2006 WL 2385139, at *5 (E.D. Tex. Aug. 16, 2006) (no inadequate legal remedy where jury "determined an appropriate reasonable royalty rate that can be easily calculated on future sales of the accused devices thereby removing uncertainty from future damages calculations").

Mattel may claim that the jury's determination of damages is irrelevant because it is now pursuing a new damage theory – market share loss.  But, it is plain, Mattel's claimed market share loss can be recompensed through legal damages.[6]  Rent-A-Car Center Inc. v.

---

[5]    As Mattel concedes (Mot. at 15), a plaintiff seeking a permanent injunction must satisfy a four-factor test.  eBay Inc., 547 U.S. at 391; N. Cheyenne Tribe v. Norton, 503 F.3d 836, 843 (9th Cir. 2007). Thus, Mattel's must prove that:  (1) remedies at law, like monetary damages, are inadequate; (2) it suffered an irreparable injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by the injunction. Id.  The substantive prerequisites for obtaining injunctive relief depend on traditional principles of equity, Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 318-19 (1999), and a federal judge is not mechanically obligated to grant an injunction for every violation of law.  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 192 (2000).

[6]    To the extent Mattel relies on its exclusionary rights, "[a] violation of the right to exclude does not compel the conclusion that a patent holder cannot be adequately compensated by remedies at law, such as monetary damages." Smith & Nephew, Inc. v. Synthes (U.S.A.), 466 F. Supp. 2d

*(cont'd)*

1  Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991) (economic

2  injury alone does not support finding of irreparable harm because such injury can be

3  remedied by damage award); Oakland Tribune, Inc. v. Chronicle Publ'g Co., 762 F.2d 1374,

4  1375-76 (9th Cir. 1985) (no injunctive relief because claim of loss of circulation and

5  revenue alleged purely monetary harm measurable in damages).  "[N]either the difficulty of

6  calculating losses in market share, nor speculation that such losses might occur" justify the

7  issuance of an injunction.  Nutrition 21 v. U.S., 930 F.2d 867, 871 (Fed. Cir. 1991); Am.

8  Cyanamid Co. v. U.S. Surgical Co., 833 F. Supp. 92, 132 (D. Conn. 1992) ("Since market

9  share is measured by sales, money damages are generally ascertainable for the loss of

10  market share").[7]  Thus, not only has Mattel already effectively conceded that money

11  damages are adequate for any future infringement, it has failed to show why its newly

12  alleged market loss cannot be adequately remedied by money damages.

13  **B.  Irreparable Injury Is Not Presumed**

14  Trying to dodge its burden to prove irreparable injury, Mattel argues that copyright

15  infringement is presumed to give rise to irreparable injury. (Mot. at 16-17.) Not true. In

16  eBay, the Supreme Court rejected replacing the well-established "traditional equitable

17  principles" with "categorical rules" such as presumptions when determining whether a

18  plaintiff can satisfy the four-factor test for injunctive relief.  eBay, 547 U.S. at 392-94.[8]

19  Mattel argues that eBay merely rejected a presumption that the injunction should issue, not

20  that one of the four factors may be presumed, such as irreparable injury.  (Mot. at 16.)  As

21  an initial matter, Mattel erroneously relies on preliminary injunction cases, which even

22  _____

(cont'd from previous page)
23  978, 983-84 (W.D. Tenn. 2006).

24  [7]  See also Hologic, Inc. v. Senorx, Inc., 2008 WL 1860035, at *17 (N.D. Cal. Apr. 25, 2008) ("While the entry of SenoRx into the APBI market may very likely cause a decrease in Hologic's

25  market share, revenue and profits, Hologic's harms can be compensated economically").

26  [8]  In rejecting presumptions under the Patent Act, the eBay Court relied on its prior decisions construing the Copyright Act.  Id. at 392-93 ("And as in our decision today, this Court has consistently rejected invitations to replace traditional equitable considerations with a rule that an

27  injunction automatically follows a determination that a copyright has been infringed") (citing New York Times Co. v. Tasini, 533 U.S. 483, 505 (2001); Campbell v. Acuff-Rose Music, Inc., 510 U.S.

28  569, 578 n.10 (1994); Dun v. Lumbermen's Credit Ass'n, 209 U.S. 20, 23-24 (1908)).

1   courts in the cases cited by Mattel recognized as involving a distinctive analysis.[9]

2   In the permanent injunction context, the presumption of irreparable injury has been

3   rejected. In eBay, the Court relied on Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531

4   (1987), where the Court reversed the Ninth Circuit after it applied a presumption of

5   irreparable harm in issuing an injunction pursuant to the federal Alaska National Interest

6   Lands Conservation Act (ANILCA). eBay, 547 U.S. at 391. In doing so, Amoco held that

7   "[t]his presumption is contrary to traditional equitable principles and has no basis in

8   ANILCA." Amoco, 480 U.S. at 545. In relying on Amoco, as well as its prior opinions

9   under the Copyright Act, eBay clearly was not leaving open the possibility of "depart[ing]

10  from the long tradition of equity practice" and applying a presumption of irreparable harm

11  "following a determination that a copyright has been infringed." eBay, 547 U.S. at 391, 393.

12  In fact, one court in the Central District has already squarely rejected Mattel's

13  position in considering a motion for permanent injunction in the copyright infringement

14  context. In Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F. Supp. 2d 1197

15  (C.D. Cal. 2007) (Wilson, J.), the court read Amoco and eBay as "stand[ing] together for

16  the principle that a district court should not depart from a traditional analysis of the relevant

---

17  [9]      The cases cited by Mattel do not support the existence of a presumption of irreparable injury

18  here. All but one of those cases involved motions for preliminary injunctions. See Time Warner
    Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 161-63 (2d Cir. 2007); Abbott Labs. v. Andrx

19  Pharms., Inc., 452 F.3d 1331, 1347-48 (Fed. Cir. 2006); Eisai Co., Ltd. v. Teva Pharms. USA, Inc.,
    2008 WL 1722098, at *10 (D.N.J. Mar. 28, 2008); Lennon v. Premise Media Corp., 556 F. Supp.

20  2d 310, 320 & n.1 (S.D.N.Y. 2008). As the court in Metro-Goldwyn-Mayer Studios, Inc. v.
    Grokster, Ltd., 518 F. Supp. 2d 1197 (C.D. Cal. 2007) (Wilson, J.) explained, the posture of a

21  permanent injunction differs: "Preliminary injunctions are typically requested when a lawsuit's
    factual development is limited and are designed to preserve the status quo pending trial. Relatedly,

22  preliminary injunctions are also temporary in the sense that they will expire once the case's merits
    are decided. Given these considerations, one could legitimately conclude that a plaintiff should be

23  absolved of proving irreparable harm at such an early stage." Id. at 1212. In fact in Lennon, cited
    by Mattel, the court distinguished eBay on this ground, and confined its holding to preliminary

24  injunctions, explaining that "[a] presumption temporarily removing the need to prove irreparable
    harm may serve the ends of equity at this early stage of the litigation even if it would be

25  inappropriate where the record is complete." Lennon, 556 F. Supp. 2d at 320 n.1. The only post-
    eBay case involving permanent injunctive relief discussed the irreparable harm presumption only

26  in dicta. Warner Bros. Entm't. Inc. v. RDR Books, 2008 WL 4126736, at *34 (S.D.N.Y. Sept. 8,
    2008) ("there is some question of whether the presumption of irreparable harm still applies," but

27  "even if irreparable injury is not presumed, Plaintiffs have presented sufficient evidence that such

28  injury would result from Defendant's infringement in the absence of relief").

---

1  equitable factors," and collectively removing any doubt that "the presumption of irreparable

2  harm no longer inures to the benefit of Plaintiffs." Id. at 1211, 1214. As Grokster

3  recognized, "[t]his view appears to have been followed by perhaps every court expressly

4  considering eBay." Id. at 1211.[10]  This includes other courts in the Ninth Circuit.[11]  See,

5  e.g., Amado v. Microsoft Corp., 2007 U.S. Dist. LEXIS 96487, at *37 (C.D. Cal. Mar. 13,

6  2007) ("post-eBay Amado must prove irreparable injury"). Commentators agree.  6 William

7  F. Patry, Patry on Copyrights § 22:74 (2008) ("irreparable harm may not be presumed").

8  ## C.   Mattel Has Not Shown That It Has In Fact Suffered Irreparable Harm

9      As shown above, Mattel is not entitled to a presumption of irreparable injury as a

10  matter of law.  Mattel also has not shown it suffered irreparable injury as a matter of fact.

11  As a threshold matter, Mattel's failure to seek preliminary injunctive relief weighs against

12  its contention that it faces irreparable harm absent an injunction.  MercExchange, L.L.C. v.

13  eBay, Inc., 500 F. Supp. 2d 556, 573 (E.D. Va. 2007); PGBA v. U.S., 389 F.3d 1219, 1229

14  (Fed. Cir. 2004) (lower court did not error in "consider[ing] [plaintiff]'s failure to seek a

15  preliminary injunction as a factor weighing against a grant of injunctive relief").  For four

16  years Mattel pursued a damages theory.  Four holiday seasons have passed since it

17  discovered the alleged infringement, yet Mattel did not once seek preliminary injunctive

18  relief. Mattel's approach fatally undermines any claim of "irreparable harm."  Mattel's

19

---

20  [10]    Many courts have held that, post-eBay, a presumption of irreparable harm does not exist.
    Voile Mfg. Corp. v. Dandurand, 551 F. Supp. 2d 1301, 1306 (D. Utah 2008); Tiber Labs., LLC v.
21  Hawthorn Pharms., Inc., 527 F. Supp. 2d 1373, 1380 (N.D. Ga. 2007); Torspo Hockey Int'l., Inc. v.
    Kor Hockey Ltd., 491 F. Supp. 2d 871, 881 (D. Minn. 2007); Novartis Pharms. Corp. v. Teva
22  Pharms. USA, Inc., 2007 WL 2669338, at *13 (D.N.J. Sept. 6, 2007); Sun Optics, Inc. v. FGX Int'l,
    Inc., 2007 WL 2228569, at *1 (D. Del. Aug. 2, 2007); Allora, LLC v. Brownstone, Inc., 2007 WL
23  1246448, at *5 (W.D.N.C. Apr. 27, 2007); Chamberlain Group, Inc. v. Lear Corp., 2007 WL
    1017751, at *5 (N.D. Ill. Mar. 30, 2007); Canon Inc. v. GCC Int'l Ltd., 450 F. Supp. 2d 243, 254
24  (S.D.N.Y. 2006); z4 Techs., Inc. v. Microsoft Corp., 434 F. Supp. 2d 437, 442-45 (E.D. Tex. 2006).
    [11]    See Designer Skin, LLC v. S&L Vitamins, Inc., 2008 WL 4174882, at *4 (D. Ariz. Sept. 5,
25  2008) (finding "the presumption to be irreconcilable with eBay's holding that it is the plaintiff who
    'must demonstrate . . . irreparable injury' because the application of the presumption would shift
26  the burden of proof to the defendant" and that "it is now clear that past infringement alone cannot
    equal irreparable harm"); Hologic, 2008 WL 1860035, at *14-15; Precision Automation, Inc. v.
27  Tech. Servs., 2007 WL 4480739, at *2-3 (D. Or. Dec. 14, 2007); Propet USA, Inc. v. Shugart,
    2007 WL 4376204, at **1-2 (W.D. Wash. Dec. 13, 2007).
28

---

1  failure is not surprising in light of its inability to articulate a theory of irreparable harm.

2  **1.    Mattel's Alleged Market Share Injury Fails As A Matter Of Law And A Matter Of Fact**

4  Mattel asserts that loss of market share for products unrelated to the copyrighted

5  materials, such as Barbie, constitutes irreparable harm.  (Mot. at 22-24.)  But injunctive

6  relief is unavailable where claim of future injury is speculative, <u>Guerrero v. Gates</u>, 110 F.

7  Supp. 2d 1287, 1290 (C.D. Cal. 2000), and Mattel failed to factually establish any loss.

8  Mattel presented no <u>evidence</u> that it actually lost market share.  In fact, Mattel did not even

9  define the market.  <u>Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l</u>, 246 F.3d

10  1336, 1356 (Fed. Cir. 2001) (to determine a plaintiff's lost market share, record must

11  accurately identify the market).  Thus, Mattel failed to <u>factually</u> establish its market share

12  theory of irreparable injury.[12]  <u>Advanced Cardiovascular Sys. Inc. v. Medtronic Vascular,</u>

13  <u>Inc.</u>, --- F. Supp. 2d ---, 2008 WL 4397476, at *4 (D. Del. Sept. 26, 2008) (plaintiff failed to

14  provide evidence of specific customers it lost, or stands to lose, as a direct result of

15  infringement); <u>IMX, Inc. v. LendingTree LLC</u>, 469 F. Supp. 2d 203, 225 (D. Del. 2007) (no

16  injury based on market share where plaintiff "put forward no evidence of irreparable harm

17  resulting from defendant's infringement, for example, market or financial data, to support

18  its sweeping statements"); <u>Precision</u>, 2007 WL 4480739, at *4-7.[13]

19  Mattel's evidentiary failure is not surprising: information which Mattel would

20  presumably now wish to proffer in support of its purported market share loss is the very

21  same information it fought so hard to keep out of the trial record in the first instance.[14]  As

22  Mattel previously argued to the Court, "Mattel long ago confirmed to MGA that, in Phase 1,

---

23  [12]    Moreover, Mattel relies on inadmissible evidence. (<u>See</u> MGA Motion to Strike Inadmissible Exhibits (filed concurrently).)

24  [13]    In <u>Precision</u>, although the plaintiff submitted several declarations to claim past harm, because it failed to "provide evidence of any specific examples of such lost sales," the <u>Precision</u>

25  court found its submission insufficient to establish irreparable injury.  <u>Id.</u> at *4-7.  The <u>Precision</u> court specifically rejected "speculation about possible future harm" because it was not "supported

26  by evidence in the record such as customer statements, sales data, or market-share information."  <u>Id.</u>

27  [14]    <u>See, e.g.</u>, Mattel's MIL No. 8 (Dkt 3160), at 3:8-10 (objecting to MGA effort to establish whether Mattel would have developed Bratz on ground that "likely actions or non-actions upon

28  receiving Bryant's drawings will not make any fact of consequence more or less probable").

1  it would not attempt to quantify the amount of sales of Mattel products it has lost because of

2  Bratz as a form of damages."[15]  Similarly, Mattel argued that "Barbie's popularity in the

3  face of competition is irrelevant in this case," that experts "should be prevented from

4  testifying about the comparative success of Bratz and Barbie," and that experts' "views

5  regarding competition between MGA and Mattel and the winner of that competition at any

6  given time is irrelevant."[16]  Where Mattel has repeatedly fought the discovery, development

7  and introduction of information pertaining to the success or failure of Barbie and other

8  Mattel products because of alleged Bratz infringement, Mattel cannot now be permitted to

9  create, produce and use such previously withheld information to try to establish market loss.

10      In addition, Mattel did not even try to demonstrate, because it cannot, that the

11  presence of Bratz in the marketplace somehow <u>actually caused</u> any past market share loss.

12  <u>See</u> <u>Data Gen. Corp. v. Grumman Sys. Support Corp.</u>, 36 F.3d 1147, 1170 (1st Cir. 1994)

13  ("The plaintiff bears the burden of proving that the infringement was the cause of its loss of

14  revenue").

REDACTED

15                                                                                  [17]  Further,

16  it is uncertain whether Mattel would have offered Bratz to the market, refused to license the

17  Bratz concept, or been able to access the "new market" Mattel since one of Bratz

18  identifying characteristics is that it is <u>not</u> Barbie.  These are relevant inquiries.  <u>See</u> eBay,

19  500 F. Supp. 2d at 570 (lack of commercial activity and willingness to license relevant).[18]

20      Moreover, Mattel cannot establish <u>proximate cause</u>.  A copyright holder's injury is

21  defined by the harm <u>to the infringed materials</u> and the copyright holder's rights in those

22  materials – <u>not</u> by harm to a copyright holder's other non-infringed, unrelated products.

23  <u>Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.</u>, 772 F.2d 505, 512 (9th Cir. 1985)

24  ("'Actual damages' are the extent to which the market value of a copyrighted work has been

---

25  [15]    <u>See</u> Mattel's MIL No. 8 at 3:20-22.
26  [16]    <u>See</u> Mattel's MIL No. 9 (Dkt 3161) at 11:3, 11:12-13, 12:5-6.
   [17]    <u>See</u> Roth Decl., Ex. 2 (Kevin Farr Depo. Tr. 17:12-18:10, 200:11-202:12, 205:6-16).
27  [18]    <u>See</u> also Polymer Techs., Inc. v. Bridwell, 103 F.3d 970, 974 (Fed. Cir. 1996) (pattern of
   licensing relevant); <u>T.J. Smith & Nephew Ltd. v. Consolidated Med. Equip., Inc.</u>, 821 F.2d 646,
28  648 (Fed. Cir. 1987) (history of granting licenses relevant).

injured or destroyed by an infringement"); <u>Cream Records, Inc. v. Jos. Schlitz Brewing Co.</u>,
754 F.2d 826, 827-828 (9th Cir. 1985).[19]   For example, in the patent context, the Ninth
Circuit has found that lost sales on non-infringed products caused by defendant's
infringement are not compensable.  <u>Velo-Bind, Inc. v. 3M Co.</u>, 647 F.2d 965, 973 (9th Cir.
1981).  As that court explained, there are "many elements of damage which may be caused
by an infringement and yet which are unrecoverable as a matter of law."  <u>Id.</u>  Just because
Mattel's lost market share <u>may</u> have <u>theoretically</u> been connected to the success of the Bratz
line does not mean that such lost market share constitutes injury which the Copyright Act is
designed to protect, which is injury to the rights associated with the copyrighted material.[20]

## 2.   To Establish Irreparable Injury, Infringement Of Exclusive Rights Is Insufficient

Mattel also asserts that interference with exclusive rights under the Copyright Act
standing alone constitutes irreparable injury. (Mot. at 18-20.) That is not the law.   In
<u>Grokster</u>, for example, the court held in rejecting <u>Taylor Corp. v. Four Seasons Greetings,
LLC</u>, 403 F.3d 958 (8th Cir. 2005), a case relied upon by Mattel, that:

> [T]his Court is not persuaded by the Eighth Circuit's pre-<u>eBay</u> conclusion in
> <u>Taylor</u> that because '[a plaintiff] certainly has the right to control the use of its
> copyrighted materials, ... irreparable harm inescapably flows from the denial of
> that right.' In substance, such language is nothing more than a disguised
> presumption, particularly with the use of the word 'inescapably.' After <u>eBay</u>,
> Plaintiffs cannot rely on the pure fact of infringement in order to establish
> irreparable harm.

<u>Grokster</u>, 518 F. Supp. 2d at 1211 n.13.  Likewise, <u>Amado v. Microsoft Corp.</u>, 2007 U.S.

---

[19]   Lost market share can be calculated in two ways: (1) copyright holder's lost profits due to
the infringement; and (2) "'the value of the use of the copyrighted work to the infringer,'" which is
called a lost license fee or reasonable royalty.  <u>Polar Bear Prods., Inc. v. Timex Corp.</u>, 384 F.3d
700, 708 (9th Cir. 2004).

[20]   Thus, Mattel cites only cases with lost market share directly relating to copyrighted works,
not unrelated products.  (<u>See</u> Mot. at 22-24 (citing <u>Lubrizol Corp. v. Exxon Corp.</u>, 696 F. Supp.
302, 323 (N.D. Ohio 1988); <u>Pittway v. Black & Decker</u>, 667 F. Supp. 585, 592 (N.D. Ill. 1987);
<u>John Fluke Mfg. Co. v. N. Am. Soar Corp.</u>, 1987 WL 46372 (D.N.J. Sept. 1, 1987)).

1  Dist. LEXIS 96487, at *37, held that construction of irreparable harm like that asserted here

2  by Mattel clearly conflicts with "the Supreme Court's reasoning that the right to exclude

3  does not automatically justify the issuance of injunction."[21]

**3.    A Phase 1(b) Money Judgment Could Be Collected**

5  Mattel argues that irreparable injury exists due to an "apparent inability to pay."  But

6  a plaintiff must provide concrete evidence of potential insolvency.  "'[M]erely alleging an

7  opponent's inability to pay damages does not constitute irreparable harm.'"  Grokster, 518 F.

8  Supp. 2d at 1217 (quoting Rosewood Apartments Corp. v. Perpignano, 200 F. Supp. 2d 269,

9  278 (S.D.N.Y. 2002)).  Mattel has not provided a sufficient evidentiary showing.

10  For past damages, Mattel relies on MGA declarations submitted at a point in this

11  litigation when MGA was facing a request for monetary damages of over $2 billion.  Those

12  MGA statements, however, preceded the Phase 1(b) verdict.  Mattel submitted no evidence

13  – because it could not – that MGA cannot satisfy the money judgment that follows from the

14  Phase 1(b) verdict. For future damages, any potential infringing activity by MGA is directly

15  tied to revenue production, i.e., Bratz sales and profits.  Therefore, it is virtually impossible

16  for any potential future damage award to be so enormous that it would "far outstrip the

17  amount of revenue" MGA would earn concurrently. Id.[22] This is particularly true where the

18  jury has apportioned such a substantial portion of profit to non-infringing activity.[23]

**D.    The Balance Of Hardships Does Not Warrant Injunctive Relief**

20  To justify the extraordinary remedy of injunctive relief, Mattel also must demonstrate

21  that the balance of hardships weighs in its favor.  eBay, 547 U.S. at 391.  For its part, Mattel

22

[21]    See also MercExchange, 500 F. Supp. 2d at 577 ("the Supreme Court rejected the Federal Circuit's contention that the 'statutory right to exclude alone justifies [a] general rule in favor of permanent injunctive relief'") (quoting eBay, 126 S. Ct. at 1840); IMX, 469 F. Supp. 2d at 224-25 (finding interference with "exclusive rights" under patent to be insufficient to constitute irreparable harm); Paice, 2006 WL 2385139, at *14 ("Infringing one's right to exclude alone, however, is insufficient to warrant injunctive relief"); z4 Techs., 434 F. Supp. 2d at 440 ("suggestion that the right to exclude creates a presumption of irreparable harm" inconsistent with eBay).

[22]    See also z4 Techs., Inc., 434 F. Supp. 2d at 442 ("Furthermore, it is not a legitimate concern that Microsoft would be unable to pay damages incurred by z4 through any future infringement").

[23]    In reality, it is far more likely that an injunction could create an inability to satisfy a Phase 1(b) money judgment, by undercutting the revenue stream that largely sustains MGA.

1  merely repeated its claim that it will be irreparably harmed.  Thus, even accepting its market

2  loss theory of irreparable harm, Mattel has not even speculated as to what <u>hardship</u> it will

3  incur in the absence of a permanent injunction.  MGA, on the other hand, would suffer

4  substantial hardship if it is enjoined from manufacturing any Bratz fashion dolls.  <u>See</u> <u>Dun v.</u>

5  <u>Lumbermen's Credit Ass'n</u>, 209 U.S. 20, 23-24 (1908) (enjoining entire operation based on

6  partial infringement would be "unconscionable").

7       In balancing the equities, it is important to consider the jury's finding that neither

8  MGA nor Larian willfully infringed Mattel's copyrights.  In <u>eBay</u> on remand, "[t]he jury's

9  finding of willfulness plainly weigh[ed] against eBay in the equitable calculus."  <u>eBay</u>, 500

10  F. Supp. 2d at 584 n.25.  Thus, that MGA and Larian did not commit willful infringement

11  militates against an injunction here.  An injunction halting MGA's production of all Bratz

12  dolls would impose a severe hardship on MGA because, as the jury found by way of its

13  apportionment assignable to Mattel's property, the infringement is a <u>de</u> <u>minimis</u> part of the

14  entire Bratz franchise.  Of the $400-800 million in Bratz-related profits, the jury attributed

15  only $6-10 million to infringement. Shutting down MGA due to a potential infringement

16  that might contribute approximately 1% of the Bratz product value would impose the

17  ultimate hardship on MGA that far outweighs any purported hardship to Mattel.[24]

18      **E.**   **The Public Interest Would Not Be Served By An Injunction**

19       Injunctive relief is inappropriate where it would run counter to the public interest.

20  <u>eBay</u>, 547 U.S. at 391.  The goals of copyright law are not always served by granting

21  injunctive relief.  <u>Campbell</u>, 510 U.S. at 578 n.10.

22  

_____

23  [24]    An injunction would result in lethal consequences to the future of MGA as a going-concern, as it has invested heavily in the Bratz franchise and Bratz-related products comprise a significant

24  portion of MGA revenue.  Such a result does not weigh in favor of injunctive relief, particularly where Mattel merely seeks to lock the Bratz franchise in a drawer forever.  <u>See</u> <u>Foster v. Am.</u>

25  <u>Mach. & Foundry Co.</u>, 492 F.2d 1317, 1324 (2d Cir. 1974) (the relative equities counsel against injunction that will "impose irreparable hardship on the infringer by injunction, without any

26  concomitant benefit to the patentee").  Likewise, a substantial portion of MGA's workforce (including hundreds of employees in California) is devoted to the Bratz franchise.  An injunction

27  would unquestionably impose a substantial hardship, namely unemployment, on those MGA employees and their families.  Equity requires the assessment of harm to non-parties.  <u>Ward v.</u>

28  <u>Walsh</u>, 1 F.3d 873, 878-79 (9th Cir. 1993).

1   The public interest would not be served by an injunction shutting down Bratz

2   operations.  As this Court and Mattel have already recognized:

3       THE COURT:  The one thing that is clear is that we have a product that is a

4       profitable product; and regardless of how it plays out, I presume it is in the

5       economic interest of everyone to maintain it as a profitable product.

6       MR. QUINN:  Yes, Your Honor.  No one could quarrel with what the Court has

7       said.

8   (Tr. 8331:17-22.)

9       If the Bratz franchise were to be enjoined, a litany of public interests would be

10  negatively impacted.  Consumers will be denied products in the new market created by

11  Bratz, seriously curtailing competition in the toy and doll industries.  See Abend v. MCA,

12  Inc., 863 F.2d 1465, 1479 (9th Cir. 1988) (injunction inappropriate where public would be

13  denied opportunity to enjoy creative film expression).  An injunction would only serve to

14  effectively eliminate Mattel's chief competitor in the doll industry, resulting in a monopoly.

15  See Pass & Seymour, Inc. v. Hubbell, Inc., 532 F. Supp. 2d 418, 434 (N.D.N.Y. 2007)

16  (denying an injunction where public interest would not have been served due to the "anti-

17  competitive nature of such an injunction").[25]  And an injunction would chill competition

18  generally in the toy industry by discouraging others from competing against Mattel.

19      Further, an injunction would cause significant economic waste by removing a valued,

20  successful commodity occupying its own position in the market and millions of dollars that

21  have been invested in developing the successful Bratz line.  See 2 Dan B. Dobbs, Law of

22  Remedies § 6.3(5) (2d ed. 1993) ("To the extent that destruction or even an injunction

23  against distribution will prevent exploitation of economically viable materials, the problem

24  is one of economic waste, certainly if the economic value of the plaintiff's copyright is less

25  ─────────────

[25]   The wholesale elimination of a billion dollar enterprise also strips the government of

26  significant tax revenue.  The insolvency of a major Southern California employer coupled with the unemployment of hundreds of employees in a troubled economy would only exacerbate the strain

27  on public resources as a result of an injunction. See Bennigan's Franchising Co., L.P. v. Swigonski, 2007 WL 603370, at *5 (N.D. Tex. Feb. 27, 2007); Gen. Power Prods., LLC v. MTD Prods., 2006

28  WL 3692953, at **5-6 (S.D. Ohio Dec. 13, 2006).

1 | than the economic costs entailed in the destruction or injunction"); see also BR Assocs., Inc.
2 | v. LaFramboise, 2007 WL 1840031, at *10 (E.D. Mich. June 26, 2007) (denying injunction
3 | where it would result in economic waste).

4 |     In addition, the goals of copyright are to promote creativity and competition;
5 | rewarding the author is merely a secondary by-product. See Sony Corp. v. Universal
6 | Studios, 464 U.S. 417, 499-500 (1984). As one leading commentator has said, "copyright
7 | doctrine should . . . conform to the general constitutional rule which restricts use of the
8 | injunctive remedy against conduct which is consonant with first amendment rights, once
9 | again with the qualification that those rights encompass the public's right to receive
10 | information and knowledge." James L. Oakes, Copyrights and Copyremedies: Unfair Use
11 | and Injunctions, 18 Hofstra L. Rev. 983, 997 (1990).

12 |     Finally, consumer interest in Bratz weighs against an injunction. See, e.g., Abend,
13 | 863 F.2d at 1479 (finding an injunction inappropriate where it "would cause public injury
14 | by denying the public the opportunity to view a classic film).[26] The public's interest in
15 | Bratz has spanned nearly a decade. For most of its existence, Bratz has been the top selling
16 | fashion doll in the United States. Since 2001, children and their parents have purchased
17 | more than $3.1 billion in Bratz dolls and merchandise worldwide and during that time, the
18 | Bratz franchise has garnered countless awards from industry groups for its packaging,
19 | themes, and other innovations.

20 | REDACTED     Should
21 | the Court determine that equitable relief is appropriate, the widespread use and popularity of
22 | Bratz, particularly where its success is derived from factors other than infringement,
23 | militates against an injunction. Id.

24 |
25 |

26 | [26]   See also Elvis Presley Enters. v. Passport Video, 357 F. 3d 896, 888-90 (9th Cir. 2003)
 | (holding that injunction was a "miscarriage of justice" because the public's interest in Elvis
27 | Presley's life weighed against enjoining "The Definitive Elvis" documentary); z4 Techs., 434 F.
 | Supp. 2d at 442-45 (awarding continuing royalty because Microsoft Windows products are "the
28 | most popular software products in the world" and an injunction would therefore harm the public).

## III.   THE INJUNCTION SOUGHT BY MATTEL IS OVERLY BROAD AND UNNECESSARY

### A.   An Injunction Must Be Narrowly Tailored To The Specific Conduct For Which Defendant Has Been Held Liable

A permanent injunction must be specific and narrowly tailored. Fed. R. Civ. P. 65(d)(1) ("Every order granting an injunction . . . must . . . (B) state its terms specifically; and (C) describe in reasonable detail . . . the act or acts restrained or required."). "Injunctive relief must be tailored to remedy the specific harm alleged" and an overbroad injunction "is an abuse of discretion." NRDC, Inc. v. Winter, 508 F.3d 885, 886 (9th Cir. 2007) (citing Lamb-Weston, Inc. v. McCain Foods, Ltd., 941 F.2d 970, 974 (9th Cir. 1991); see also Iconix, Inc. v. Tokuda, 457 F. Supp. 2d 969, 998 (N.D. Cal. 2006) ("an injunction must be narrowly tailored . . . to remedy only the specific harms shown by the plaintiffs, rather than 'to enjoin all possible breaches of the law'"); Price v. City of Stockton, 390 F.3d 1105, 1117 (9th Cir. 2004)).

Limiting the scope of injunctive relief is particularly important in copyright cases where, due to constitutional concerns, "the scope of the injunction should be coterminous with the infringement." 4 M. Nimmer & D. Nimmer, Nimmer on Copyright § 14.06[C]. "Injunctive relief should be narrowly tailored to fit specific legal violations." Waldman Publ'g Corp. v. Landoll, Inc., 43 F.3d 775, 785 (2d Cir. 1994) (emphasis added). Accordingly, "a district court should only include injunctive terms that have a common sense relationship to the needs of the specific case, and **the conduct for which a defendant has been held liable**." Grokster, 518 F. Supp. 2d at 1226 (emphasis added). It is an abuse of discretion for a district court to issue an injunction that exceeds the jury's infringement findings. Starter Corp. v. Converse, Inc., 170 F.3d 286, 300 (2d Cir. 1999).[27]

---

[27]   "Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible." Fogarty v. Fantasy, Inc., 510 U.S. 517, 527 (1994); see also Feist Publ'ns., Inc. v. Rural Tel. Service Co., Inc., 499 U.S. 340, 349-50 (1991) ("The primary objective of copyright is not to reward the labor of authors, but 'to promote the Progress of Science and useful Arts.' To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work.").

Not surprisingly, Mattel completely ignores the requirement that any injunction issued by the Court be "narrowly tailored." Rather, Mattel instead pursues an injunction that is completely divorced from the jury's actual, limited infringement findings and is so overbroad that it would preclude the creation of any doll with arguably "Bratz-like" characteristics. Mattel's motion is completely improper and should be denied.

### B. Mattel Requested A General Verdict On Copyright Infringement To Avoid Prejudicing The Huge Damages Award Mattel Hoped To Achieve

At Mattel's insistence, the jury was not asked to make any specific determinations regarding which of the hundreds of allegedly infringing Bratz products were actually infringing. Rather, Mattel made the tactical decision to push for a general verdict form. This is in stark contrast to the form proposed by MGA, pursuant to which the jury would have specifically identified which of the many accused product(s) it found to be infringing. (MGA's 3d Rev. [Prop.] Phase 1(b) Verdict Form (Dkt 4253) at 2-6.)

The Court initially agreed that MGA's proposed form was appropriate since, among other things, specific infringement findings would help the Court in "tailoring injunctive relief." (Tr. 7978:14-18; see also 7989:19-21 ("[H]aving these findings will be helpful when and if the Court is called upon to fashion injunctive relief.").) But Mattel objected to any specific questions about the scope of infringement, concerned that such findings might prejudice Mattel's "primary theory" of damages, "indirect profits." (Tr. 8030:1-9; see also 7985:11-13 (The Court: "So you don't even want the splitting up of direct and indirect profits?" Mattel's counsel: "Absolutely not.").) As Mattel's counsel explained:

And I do have serious concerns about the potential confusion to the jury of having it walk through a list of . . . a hundred boxes or whatever the number ends up being, and then start to change its mindset, the jury's collective mindset, from the realm of . . . direct profits to indirect profits in this . . . separate analysis, which . . . has not really been separated in terms of the presentation of the evidence through the experts at least. You know, the damages evidence, the numbers that the jury has been writing down when the

1   experts are testifying, the numbers that are going to go up in closing,

2   presumably, have been . . . merging these things.

3   (Tr. 7994:4-16; see also 8036:5-7 ("highlighting this . . . direct infringement issue in the

4   alternative – you know, instead of indirect profits is – is prejudicial").

5        The Court ultimately adopted Mattel's proposed verdict form.  It also reminded

6   Mattel's counsel shortly before the jury returned its verdict that, in light of the verdict form

7   advocated by Mattel, "we will not know specifically what [the jury] found to be direct

8   infringement and what they found to be derivative or of indirect damage."  (Tr. 8305:4-6.)[28]

9        Mattel sacrificed detailed infringement findings in favor of what it thought would be

10  a monstrous damages award, which may have obviated any need for an injunction.  Mattel's

11  tactics failed, however, and the jury flatly rejected Mattel's broad infringement arguments

12  and returned copyright damages that are a fraction of the amount sought by Mattel and of

13  Bratz-related revenues.  But for Mattel's insistence on a general verdict form, the jury

14  would have been able to expressly limit its finding of infringement, and Mattel would have

15  had absolutely no basis to seek a broad injunction. It would be improper to allow Mattel to

16  profit by its own failed litigation tactic.  See, e.g., U.S. v. Sturdivant, 244 F.3d 71, 77-78 (2d

17  Cir. 2001) ("Principles of equity prohibit the government from benefiting from the

18  prejudicial ambiguity that the government alone was responsible for creating.  It was the

19  government which . . . decided not to seek a special verdict.").

20  **C.    The Only Logical Reading Of The Verdict Is That The Jury's
    Infringement Finding Was Limited To The First Generation Bratz Dolls**

21

22       Mattel's counsel argued that its proposed verdict form would not hinder the Court

23  from tailoring injunctive relief because the Court would be able to "discern" the scope of

    the jury's infringement finding from the size of the jury's damages award:

24       And the damages number is going to reflect the overall award one way or the

25

26  ────────────

[28]  Although the Court expressed concern that only a "representative sample" of Bratz products

27  were in evidence, findings as to those samples (e.g., a doll that was part of a particular "theme")
    would be binding as to other dolls associated with the representative dolls that were in evidence

28  (e.g., the other dolls that were part of that "theme").  (See Tr. 8019:14-8020:5.)

-19-

1    other.  You're going to be able to discern from the damages award what the

2    jury finds.  So the jury will make a finding and make a damages award based

3    on that.  The only finding that's legally required is the finding of copyright

4    infringement.

5 (Tr. 7981:22-7982:3; see also 7978:5-10 ("The Court: I could very well see a jury finding

6 substantial similarity with respect to certain dolls or classes of dolls and ... not finding it

7 with respect to others." "Mr. Proctor: Sure, but their –their damages award will reflect that.")

8    Mattel's view is consistent with the case law, which obligates courts to harmonize the

9 jury's findings.  See, e.g., Vaughan v. Ricketts, 950 F.2d 1464, 1470 (9th Cir. 1991) (courts

10 must "reconcile the verdicts on any reasonable theory consistent with the evidence"); Bains

11 LLC v. ARCO Prods. Co., 405 F.3d 764, 772 (9th Cir. 2005) ("The district court, having

12 heard all the evidence, was able to reconcile the verdicts").  As the Supreme Court held in

13 Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355 (1962):

14    [N]either we nor the Court of Appeals can redetermine facts found by the jury

15    any more than the District Court can predetermine them.  For the Seventh

16    Amendment says that "no fact tried by a jury, shall be otherwise reexamined in

17    any Court of the United States, than according to the rules of the common

18    law." . . .  Where there is a view of the case that makes the jury's answers to

19    special interrogatories consistent, they must be resolved that way.

20 Id. at 358-59, 364; see also Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108, 119 (1962)

21 (courts "must attempt to reconcile the jury's findings, by exegesis if necessary.").   In

22 harmonizing the jury's verdict, the Court may consider the jury instructions and "extrinsic"

23 expressions of the jury.  See, e.g., McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1311 (2d

24 Cir. 1993) ("court should refer to the entire case and not just the answers themselves");

25 Popham v. City of Kennesaw, 820 F.2d 1570, 1575 (11th Cir. 1987) (court may consider

26 "all the circumstances, especially the issues submitted to the jury, the instructions to the jury,

27 and any expressions of the jury extrinsic to their answers to the interrogatories"); Gentner v.

28 Cheyney Univ. of Penn., 1996 WL 525323, at *4 (E.D. Pa. Sept. 17, 1996) (same).

1    Here, the circumstances clearly show that the only reasonable conclusion to draw is

2  that the jury's infringement finding was limited to a small universe of products, specifically

3  the first generation Bratz dolls as clothed and packaged.

4    **1.    The low damages award.**  The jury's $10 million damages award is consistent

5  with a jury finding that only the first generation Bratz dolls infringed Mattel's copyrights.[29]

6  Mattel argued for infringement damages that covered the entire Bratz line, consisting of

7  $777.9 million against MGA, $696 million against Isaac Larian, and $777.9 million against

8  MGA Hong Kong.  (Tr. 8268:7-13.)  Mattel's all-or-nothing strategy did not include a

9  damage estimate for infringement by the first generation Bratz dolls alone.  On the other

10 hand, MGA presented expert evidence that MGA's revenues and profits for the first

11 generation dolls were $77.9 million and $4 million, respectively.

12    The jury's $10 million infringement damages award consisted of a $6 million award

13 against MGA (0.77% of the amount request), a $3 million award against Mr. Larian (0.43%

14 of the amount requested), and a $1 million award against MGA Hong Kong (0.13% of the

15 amount requested).  The size of this award "reflects" (in the words of Mattel's counsel) the

16 jury's flat rejection of Mattel's argument that the entire Bratz line infringed, and its

17 determination that only a small subset of the accused products (less than 1%) were actually

18 infringing, closely tracking the first generation damages figure presented by MGA.[30]

19    The jury's decision not to award Mattel **any** future profit damages is also a clear

20 indication that the jury did not believe that there was any ongoing infringement.  Combined

21 with the low infringement award, Mattel's loss on the future profits issue is also consistent

22 with a determination that the infringement ended with the first generation Bratz product.

23    The Court instructed the jury that Mattel was entitled to recover any profits of the

24 MGA Parties' "attributable to the infringement," but "**only** if you find that [Mattel] showed

25 ─────────────

[29]    Although MGA believes that the $10 million award contains duplicative awards and should
26 be remitted, for purposes of this brief only, and without waiver of MGA's rights to seek remittitur,
MGA assumes that the full amount is the proper reference point.

[30]    The jury's decision to award $6 million against MGA (and $10 million total) rather than
27 simply the $4 million argued by MGA as profits for the first generation may be due to the jury
believing that MGA's proffer of $4 million in profits on nearly $80 million revenue was a bit low.
28

1   a causal relationship between the infringement and the [MGA Parties'] gross revenue."
2   (See Phase B Jury Instruct. (Dkt 4267) Nos. 41 & 42.)  "[J]uries are presumed to follow the
3   court's instructions."  Brown v. Ornoski, 503 F.3d 1006, 1018 (9th Cir. 2007) (citing Weeks
4   v. Angelone, 528 U.S. 225, 234 (2000)).  The jury's $10 million damages award shows that
5   Mattel failed in its attempt to prove a "causal relationship" between the alleged
6   infringement and the entirety of MGA's Bratz-related revenues.  Combined with the jury's
7   decision to award $0 for future harm, the only logical reading consistent with the proffered
8   damages evidence and the jury instructions, is that the jury found a "causal relationship"
9   between infringement and damages only as to the first generation Bratz dolls.

10       **2.   The parties' infringement evidence.**   A finding that the jury's verdict was
11   limited to the first generation Bratz dolls is also consistent with the evidence offered at trial
12   on the issue of infringement. Over MGA's objection, the Court ruled that doll clothes, shoes
13   and accessories were protected by copyright, and the jury was so instructed.[31]  Mattel used
14   this ruling throughout Phase 1(b) to point out what it believed were similarities between the
15   Bryant drawings and the first generation Bratz dolls – dressed in the first generation
16   fashions – and repeatedly emphasized the similarities between the clothes, shoes and
17   accessories.  (Tr. 5421:25-24:12, 5429:16-32:3, 8141:16-42:22.)[32]  MGA conceded that the
18   fashions sold with the first generation dolls were similar to the fashions depicted in Bryant's
19   drawings.   MGA also conceded that the art used for the first generation Bratz dolls'
20   packaging infringed Bryant's "hero shot" drawing.[33]  Given MGA's position, and the
21   Court's instructions concerning "compilation" infringement and infringement if the dolls

22   _____

23   [31]     The jury instructions included as protectable elements "particularized doll clothes, doll shoes, and doll accessories that express aggressive, contemporary, youthful style."  (See Phase B
24   Jury Instruct. No. 26.)
      [32]     For example, the overwhelming majority of visual comparisons made to the jury in Mattel's
25   opening statement and closing argument compared clothed versions of the Bryant drawings and first generation Bratz dolls.  (See Roth Decl., Ex. 3; see also Tr. 5421:25-25:22, 8141:16-42:22.)
26   [33]     Contrary to Mattel's argument, MGA did not concede that any character art beyond the first generation infringes the Bryant drawings.  On this point, MGA's character art manager, Debora
27   Middleton, testified that she had never once seen or used a Bryant concept sketch as a basis for packaging art (Tr. 7198:6-7199:4), and that MGA creates character art independently of the Bratz
28   dolls themselves.  (Tr. 7197:7-9.)

1   were a "picturization" of Bryant's sketches, the jury could have found that the first

2   generation clothing and packaging supported an infringement finding for the first generation.

3        In stark contrast, MGA submitted compelling evidence that certain features of the

4   first generation Bratz dolls differed substantially from Bryant's drawings.  For example,

5   Margaret Leahy testified as to dozens of changes that she made between different sculpts.

6   (See, e.g., Tr. 6724:11-6732:15; 6784:11-6797:10.) [34] As Bryant's two dimensional

7   drawings were not "turn-around" drawings that would have provided her with more

8   "information" regarding the specifics of dimensions (depth, size, etc.), Leahy testified that

9   she did not utilize the Bryant drawings to create her sculpt.  Rather, she created her sculpt

10  based on the Steve Madden advertisement and her own creativity and vision. (See, e.g., Tr.

11  6839:18-6842:8; 6852:24-6853:6; see also 6872:21-6873:19, 6930:5-12 (Garcia).)   Paula

12  Garcia, project manager for Bratz, testified about significant differences between Bryant's

13  drawings and the final manufactured Bratz sculpt, including differences in the expression of

14  protectable elements such as the head, body proportions, feet, and posture. (See, e.g., Tr.

15  6933:13-6936:4.) Garcia also testified as to her role in making changes to make the doll

16  marketable, like changing the face paint, abandoning the removable hair feature, and

17  making changes in the fashions to make them workable in three dimensions. (See, e.g., Tr.

18  6937:12-6938:3; 6941:6-6942:2; 6958:21-6960:4.)  She also testified to differences between

19  facial features of the drawings and the dolls, like the eyes and lips. (Tr. 6960:5-6969:7.)

20  These witnesses not only made specific comparisons of protectable elements of the works,

21  but also testified as to differences in the "overall look and feel," (see, e.g., Tr. 6791:15-21,

22  6794:6-11, 6809:20-23, 6941:10-42:2, 6991:9-12, 7091:20-24), the core jury issue

23  concerning the "intrinsic" test.  MGA also submitted compelling evidence that the later

24  generation Bratz dolls were created independently of the Bryant drawings,[35] and differed

25  ───────────────────────────
    [34]     As to the preliminary sculpt that the jury determined was co-owned by Mattel, the evidence
26  established that MGA was at a minimum a co-owner of the copyrights in the sculpt and this sculpt
    therefore is not a proper basis for an infringement finding against MGA.  (See MGA's Trial Br.
27  Concerning MGA's Ownership of the Copyright In Exhibit 1136A (Dkt 4241).) Mattel did not
    argue that this sculpt was a basis for an infringement finding during closing arguments.
28  [35]     See MGA's Opp'n to Mattel's Phase 1b JMOL (Dkt 4268) at 1-3.

1   substantially from the first generation dolls.[36]   For example, MGA offered evidence

2   demonstrating how later generation Bratz dolls differed from first generation dolls as to

3   themes, fashions, accessories, face paint, and characters. Mattel, however, could not adduce

4   any evidence to demonstrate that the MGA artists who designed these later generation dolls

5   "copied" protected expression from Carter Bryant's drawings. In fact, the evidence is

6   squarely to the contrary. It shows that MGA employees working on later generation dolls

7   used their own creative process to create new doll designs, and had never even seen Carter

8   Bryant's drawings. (See, e.g., Tr. 7249:1-9 (testimony of L. Domingo, explaining that he

9   had never seen Bryant's drawings and designed different face paint, accessories, and

10  fashions for later generation Bratz dolls).) Similarly, concerning artwork used in connection

11  with later generation Bratz dolls, Debora Middleton, MGA's character art director, testified

12  that in developing hundreds of character art images per year, she has never seen or made

13  reference to the Carter Bryant drawings which Mattel now owns, nor has she ever directed

14  any of her employees to do so.  (Tr. 7198:12-99:4.)  Indeed, Ms. Middleton testified to

15  creating character art independently of the Bryant drawings and of the Bratz dolls

16  themselves.  (Id., Tr. 7197:7-9.)  Mattel did not proffer any contrary evidence and the later

17  generation art looks nothing like the figures in Bryant's drawings.

18       When Mattel actually did attempt to address substantial similarity, primarily in its

19  own opening and closing arguments, Mattel focused almost exclusively on comparisons of

20  the Bryant drawings with the first generation Bratz dolls.[37]   (See, e.g., Tr. 5422:8-24:12;

21  8141:20-43:18.)  In fact, Mattel's infringement arguments concerning later generation Bratz

22  ────────────────

23  [36]    See MGA's Phase 1b JMOL (Dkt 4264) at 9-10.  For example, Mattel's argument that MGA admitted that the Bratz dolls were "derivative" of the Bryant drawings focused only on

24  initial and supplemental registrations with the Copyright Office for the "configuration, accessories, and packaging" for the first four Bratz dolls.  (TX 557-564.)

25  [37]    During arguments over the form of verdict, Mattel's counsel indicated that Mattel's "primary" damages theory was "indirect" profits and that Mattel's "direct" infringement case

26  focused on the first generation dolls.  (See Tr. 8030:1-2, 11-13 ("Our primary theory is indirect profits. . . . We certainly do, you  know, maintain a very strong infringement, direct infringement

27  claim as to the first generation of dolls."); see also Tr. 8036:3-7 ("Certainly, we do have a basic question as to direct infringement of the first generation of dolls.  After that, highlighting this direct

28  infringement issue in the alternative – you know, instead of indirect profits is – is prejudicial.").)

1  dolls were limited to a few comparisons of later generation Bratz dolls to the first generation

2  dolls.[38] (See, e.g., Tr. 5446:23-48:10, 8153:23-54:16.)  Moreover, although it attempted to

3  downplay the differences, Mattel's counsel admitted during closing argument that the hair,

4  face paint and clothes on later generation dolls were different than on the first generation

5  dolls.  (See Tr. 8154:4-13, 8155:14-15.)  The evidence MGA presented showed that these

6  differences were in fact significant and the jury apparently agreed.

7      3.   **On-the-record expressions of jury intent.**  The jury's on-the-record

8  expressions of intent also confirm that it limited the infringement finding to the first

9  generation Bratz dolls. See Popham, 820 F.2d at 1575 (court may consider "all the

10  circumstances, especially the issues submitted to the jury, the instructions to the jury, and

11  any expressions of the jury extrinsic to their answers to the interrogatories"). The jury

12  specifically asked during deliberations: "Can we find that the first generation of dolls

13  violate the copyright of Mattel but subsequent generations of dolls do not violate the

14  copyright?" (Tr. 8288:6-9.) With the approval of both MGA and Mattel, the Court

15  responded to the jurors that an infringement finding limited to the first generation dolls

16  would be permitted.[39] (Tr. 8288:16-90:23.)

17      The same juror note also specifically stated that the jury had a "dilemma" concerning

18  "appropriation of first generation, $4 million profit."  (Tr. 8288:12-13.)  While the precise

19  "dilemma" is unclear, it is clear from this note that the jury conceptually separated the first

20  and later generation dolls for purposes of its infringement analysis.  Combined with the

21  relatively small damages award, which is close to MGA's proffered estimate of profits for

22

---

[38]      These arguments have no evidentiary value, however, since the correct infringement inquiry

23  involves a comparison of Bryant's drawings (the copyrighted works) and the dolls (the allegedly

24  infringing works).  See, e.g., Litchfield v. Spielberg, 736 F.2d 1352, 1354 (9th Cir. 1984) (a work

25  is a derivative work "only if it would be considered an infringing work") (emphasis in original;

25  citation omitted); 1-3 Nimmer § 3.01 ("the term derivative work in a technical sense does not refer

26  to all works that borrow in any degree from pre-existing works. . . .  [A] work will be considered a

26  derivative work only if it would be considered an infringing work[.]").

[39]      Although Mattel tried to withdraw its approval of the Court's response, the Court rejected

27  Mattel's attempt, noting that "pursuant to [Mattel's] request, there's not going to be a finding on

27  the four dolls; there's going to be a finding on infringement.  MGA requested to have a finding on

28  particular dolls and particular generations ... and Mattel did not want that." (Tr. 8304:16-22.)

---

1  the first generation dolls, and the evidence advanced by MGA during trial that provides for

2  exactly this first-versus-later-generation distinction, this juror note provides compelling

3  confirmation that the jury only found the first generation Bratz dolls to infringe Mattel's

4  copyrights.   At the very least, it rebuts any claims by Mattel that the jury found that all

5  "core" Bratz dolls were infringing.   There can be no legitimate dispute that the jury's $6

6  million award against MGA is infinitely more consistent with MGA's first generation Bratz

7  profits than Mattel's shoot-the-moon, everything-but-the-kitchen-sink damages requests.

8       Mattel cannot meet its strict burden of proof with respect to the far-ranging injunction

9  it seeks.   No injunctive relief is warranted here, but if the Court finds otherwise, the

10 injunction should be narrowly tailored to square with the jury's infringement finding, which

11 was based on and limited to the admitted similarity of the first generation fashions and

12 package art.  To provide otherwise would be error.

13      **D.     <u>The Court Is Bound By The Jury's Infringement Verdict</u>**

14      Unhappy with the jury's verdict, which rejects Mattel's sweeping damages request,

15 Mattel attempts to retry its infringement case in its brief.  Mattel argues that "each and every

16 one" of the later generation "core" Bratz fashion dolls "necessarily bears substantial

17 similarities" to Bryant's drawings because they are "based on the same sculpt" as the first

18 generation Bratz dolls. (Mot. at 1, 3-6.)[40]  Mattel also argues that the "particularized

19 expressions" of the Bratz dolls, "which give Bratz their overall look and feel, style and

20 attitude, are as evident in today's dolls as they were in the original Bryant drawings and the

21 2001 dolls."  (<u>Id.</u> at 8.)  Mattel once again argues that "MGA's own admissions also prove

22 infringement" (<u>id.</u>), that "the positions MGA has taken in bringing prior infringement

---

23 [40]    MGA already addressed Mattel's arguments on the merits in its own Motion for Judgment
24 as a Matter of Law (Dkt 4264) and Opposition to Mattel's Motion for Judgment as a Matter of Law
   (Dkt 4268).  For purposes of this motion, however, MGA notes that Mattel's premise that the Bratz
25 "sculpt" infringes Mattel's copyrights has been thoroughly debunked in front of the jury, and
   Mattel provides no reason why this testimony should be disregarded.  (<u>See, e.g.</u>, Tr. 6701:10-
26 6702:8; 6724:11-32:15; 6784:11-97:10 (Leahy testimony explaining dozens of changes between
   successive iterations of the sculpts); 6678:8-25; 6684:16-25; 6698:10-17 (Leahy explaining that
27 she did not utilize the Bryant drawings to create her sculpts); 6933:13-36:4 (Garcia testimony
   pointing out significant differences in expression of protectable elements of the Bryant drawings
28 and the Bratz dolls, such as the head, body proportions, feet, and posture).)

---

1  actions confirm its own infringement of Mattel's rights" (id. at 10),[41] that "MGA's

2  depictions of the Bratz characters conceived by Bryant also infringe Mattel's copyrights"

3  (id. at 12),[42] and that MGA's "package art" infringes the Bryant "hero" shot. (N.33, supra.)

4       Mattel ignores the fact that all of this evidence was presented to the jury during the

5  Phase 1(b) trial.  Now, the Court cannot simply ignore the jury's verdict.  As Mattel

6  correctly states in its declaratory judgment motion, the Seventh Amendment requires the

7  Court "to follow the jury's implicit or explicit factual findings" on legal claims.[43]

8       Mattel's copyright infringement claims are indeed classic "legal claims" on which the

9  jury's "implicit and explicit" findings bind the Court.  See, e.g., Danjaq LLC v. Sony Corp.,

10 263 F.3d 942, 962 (9th Cir. 2001) ("McClory has a constitutional right to a jury trial on his

11 copyright infringement claims").  In fact, the Ninth Circuit has repeatedly emphasized that

12 "the intrinsic test, which examines an ordinary person's subjective impressions of the

13 similarities between two works, is exclusively the province of the jury."  Funky Films, Inc.

14 v. Time Warner Entm't Co. L.P., 462 F.3d 1072, 1077 (9th Cir. 2006).  The Court

---

16 [41]   Mattel makes these same arguments in its Motion for Judgment as a Matter of Law.
17 However, as noted in MGA's Opposition to that motion, the Court has already rejected Mattel's "estoppel" theories based on other lawsuits.  (See MGA Opp'n to Mattel's Mot. JMOL (Dkt 4268) at 7-8.)  Further, MGA rebutted Mattel's theories based on copyright registrations through the testimony by MGA's former General Counsel, Daphne Gronich.  (Tr. 5926:10-30:25.)

18 [42]   The Court left to the jury the determinations whether (a) Bryant's "characters" were
19 sufficiently distinctive to be copyrightable, and (b) whether the Bratz dolls infringed those "characters."  (See Jury Instruct. No. 28.)  Mattel now declares that the characters in Bryant's works
20 were distinctive, but in its Statement in Support of its Proposed Jury Instruction [from the third amended proposed jury instructions for Phase 1(b) at 75, it stated that "[d]efendants are, of course,
21 free to argue to the jury that Bratz characters are not sufficiently distinctive.  Yet, it must be up to the jury to determine whether the Bratz dolls infringe the characters described and depicted in
22 Bryant's drawings." (Mattel Third Am. Prop. Phase 1b Jury Instruct., Obj. & Resp. (Dkt 4163) at 75.)  MGA accepted Mattel's invitation by making that very argument at closing.  (See Tr.
23 8197:18-25.)  The jury's miniscule damages award is a clear rejection of Mattel's argument that the initial four characters were infringed by all later generation dolls.

24 [43]   As Mattel stated in its Motion for Declaratory Judgment of Ownership of Bratz Works (Dkt
25 4303), at 6-7: "The jury's findings are controlling here.  "[I]t would be a violation of the seventh amendment right to jury trial for the court to disregard a jury's finding of fact.  Thus, in a case
26 where legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, in deciding the equitable claims the Seventh Amendment requires the trial
27 judge to follow the jury's implicit or explicit factual determinations."  Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993); see also Floyd v. Laws, 929 F.2d
28 1390, 1397 (9th Cir. 1991); Miller v. Fairchild Indus., Inc., 885 F.2d 498, 507 (9th Cir. 1989)."

---

MGA's Opposition to Mattel's Motion For Permanent Injunction - Case No. CV 04-9049 SGL (RNBx)

1  acknowledged this in its summary judgment rulings and in the jury instructions.  (See, e.g.,

2  Phase 1b Jury Instruct. No. 26 (jury to determine infringement based on "total concept and

3  feel" from perspective of "girls between the ages of 7 and 12").)

4      To the extent Mattel's Motion seeks a judgment as a matter of law that all Bratz dolls

5  and other products directly infringe Bryant's drawings, it should be denied.  The Court

6  cannot rule, as a matter of law, that every Bratz fashion doll infringes the Bryant drawings.

7  Mattel's Phase 1(b) case-in-chief focused almost entirely on a high-level comparison

8  between the Bryant drawings and the first generation Bratz dolls, and Mattel did not try to

9  prove "substantial similarity" between "protected expression" in the Bryant drawings and

10 any of the later generation Bratz dolls.  (MGA Mot. Phase 1b JMOL (Dkt 4264) at 9-10.)

11 MGA submitted extensive evidence demonstrating that the later generation Bratz dolls were

12 independently created and differed significantly from the first generation dolls. (Id. at 10;

13 MGA's Opp'n to Mattel's Mot. Phase 1b JMOL (Dkt 4268) at 1-3.)  MGA also went to

14 great pains to provide the jury with representative samples of dolls from each generation to

15 illustrate the significant differences between the first and later generation dolls.

16     Mattel's attempt to reargue the merits of infringement improperly relies on an

17 extensive amount of "evidence" that was not offered or admitted at trial.  For example,

18 Mattel presents the Court with countless documents and exhibits not offered or admitted at

19 trial, as well as declarations from Dylan Proctor and two of Mattel's long lost experts, Frank

20 Keiser and Kenneth Hollander, who were on Mattel's witness list but never called at trial.

21 (See MGA's Motion to Strike Improper Experts (filed concurrently herewith).)

22     Mattel's attempt to rely on this "evidence" is a tacit admission that the evidence

23 admitted at trial does not support the broad infringement finding that Mattel now asks the

24 Court to make as a matter of law.  Moreover, as discussed in MGA's accompanying Motion

25 to Strike, this "evidence" should not be considered by the Court.  "[T]he time to present

26 evidence . . . is at trial." U.S. v. Virginia, 88 F.R.D. 656, 664 (E.D. Va. 1980) (citing

27 Dothard v. Rawlinson, 433 U.S. 321 (1977)) ("parties, absent error on the part of the Court

28 [in the introduction of evidence], have but one opportunity to present evidence supporting

their respective positions"). "It is well established that a party who fails to introduce at trial all evidence necessary to obtain judgment has generally made a fatal error." <u>Level 3 Comm'cns, LLC v. City of St. Louis</u>, 2007 WL 2860171, at *3 (E.D. Mo. Sept. 25, 2007) aff'd, 540 F.3d 974 (8th Cir. 2008) (citing cases); <u>Virginia</u>, 88 F.R.D. at 662-63 (same).

In <u>Syntex (U.S.A.) LLC v. Apotex, Inc.</u>, the court rejected plaintiffs' attempt to offer additional post-trial evidence as they had a "full and fair opportunity" to present their evidence at trial, the newly-offered evidence was available at trial, and the failure to introduce that evidence at trial was a tactical decision. 2005 WL 6042726, at *4 (N.D. Cal. Oct. 26, 2005). Any limitation on presentation of this evidence "was the result of Plaintiffs' decisions as to how to allocate their time among the disputed issues and the depth of testimony to elicit from their witnesses." <u>Id.</u> Plaintiffs' belief that the additional evidence "may bolster their position ... is insufficient to justify opening the evidentiary record." <u>Id.</u>

Here, Mattel had a "full and fair opportunity" to present its evidence at trial, the new "evidence" Mattel asks the Court to consider with its Motion was or could have been available at the time of trial, and Mattel made a strategic decision not to offer this "evidence." Mattel is bound by its trial strategy, and it would be highly improper and prejudicial to MGA to allow the introduction of this evidence now. Moreover, to the extent this evidence is offered on the issue of infringement, MGA has a Seventh Amendment right to have that issue and evidence considered by the jury. <u>See</u> <u>Funky Films, Inc.</u> 462 F.3d at 1077 ("the intrinsic [infringement] test . . . is exclusively the province of the jury").

## IV.   MATTEL SHOULD HAVE SOUGHT A ROYALTY, NOT AN INJUNCTION

As shown above, Mattel is not entitled to any equitable relief because: (1) it waived the right to such relief when it elected to pursue a future damages theory; (2) Mattel failed to satisfy the four-factor <u>eBay</u> test; and (3) the only reasonable reading of the jury's verdict is that there is no on-going infringement. If, however, the Court is inclined to consider some form of equitable relief, a royalty and not an injunction would be the proper remedy.[44]

---

[44]   Mattel has conceded that a royalty may be an appropriate alternative to an injunction here. (<u>See</u> Tr. 6422:21-6423:1 (Mr. Quinn: "[T]he question of whether this Court will enter an injunction

*(cont'd)*

1    Under similar circumstances, the Ninth Circuit and other courts have approved the

2  use of royalties instead of injunctions in copyright cases.  See, e.g., Abend, 863 F.2d at 1479

3  ("[C]ourts might award damages or a continuing royalty instead of an injunction in special

4  circumstances.").[45]  Indeed, the Supreme Court has recognized where apportionment of

5  infringement is small, an injunction shutting down the whole operation would be

6  "unconscionable."  Dun, 209 U.S. at 23-24; see also Silverstein v. Penguin Putnam, Inc.,

7  368 F.3d 77, 84-85 (2d Cir. 2004) (no injunction where the "protectible interest" maintained

8  by the plaintiff is "slight").  Such a limited injury is more appropriately addressed by legal

9  remedies.  Dun, 209 U.S. at 23-24.

10    The Ninth Circuit in Abend set forth the circumstances under which courts may

11  impose ongoing royalties in lieu of permanent injunctions.  There, the court held that

12  defendant's exploitation of the Hitchcock film, "Rear Window," infringed plaintiff's

13

_____

14  (cont'd from previous page)
or whether, for example, the Court will in the alternative decide to impose a royalty, which there's
15  some case law now under the eBay decision … there is simply no way to assess that."); see also
Roth Decl., Ex. 4 (Mattel's Supp. Resp. & Obj. to MGA's First Set of Interrogs. at 99 (
16  REDACTED                          ).)  See also eBay, 547 U.S. at 396-97 ("When the
patented invention is but a small component of the product the companies seek to produce . . . an
17  injunction may not serve the public interest.") (Kennedy, J., concurring).
[45]  See also Universal City Studios v. Sony Corp., 659 F. 2d 963, 976 (9th Cir. 1981), rev'd in
18  on other grounds, 464 U.S. 417 (1984)(finding that a continuing royalty "may very well be an
acceptable resolution in this context"); Practice Mgmt. Info. Corp. v. Am. Med. Ass'n, 121 F.3d
19  516, 519 (9th Cir. 1997) ("Other remedies would also be available, including . . . mandatory
licensing at a reasonable royalty[.]"); accord Silverstein v. Penguin Putnam, Inc., 368 F.3d 77, 84-
20  85 (2d Cir. 2004) (finding injunctive relief improper and advising the district court to consider a
continuing royalty); Richard Feiner & Co. v. Turner Entm't, 926 F. Supp 40, 43-44 (S.D.N.Y),
21  rev'd in part on other grounds, 98 F.3d 33 (2d Cir. 1996) (considering the award of a "continuing
royalty" in lieu of a preliminary injunction); Woods v. Universal City Studios, 920 F. Supp. 62, 65
22  (S.D.N.Y. 1996) (same). The Supreme Court has also expressed approval of the device. Sony Corp.
v. Universal Studios, 464 U.S. 417, 499-500 (1984) (agreeing with the Ninth Circuit that an award
23  of "continuing royalties . . . may well be an appropriate means of balancing the equities in this
case.") (Blackmun, J., dissenting).  See also, Paice LLC v. Toyota Motor Corp., 504 F.3d 1293,
24  1313-1314 (Fed. Cir. 2007) (noting that "[u]nder some circumstances, awarding an ongoing royalty
for patent infringement in lieu of an injunction may be appropriate") (citing Shatterproof Glass
25  Corp. v. Libbey-Owens Ford Co., 758 F.2d 613, 628 (Fed. Cir 1985)); Boston Scientific Corp. v.
Johnson & Johnson, 550 F. Supp. 2d 1102, 1122 (N.D. Cal. 2008) (holding that the court may
26  award the patent-holder equitable relief in the form of an ongoing royalty for future infringement
of its patent); Finisar Corp. v. DirecTV Group, 2006 U.S. Dist. LEXIS 76380, at *4-5 (E.D. Tex.
27  July 7, 2006) (ordering infringer to pay an ongoing royalty).

28

1  copyright in the underlying story, "It Had To Be Murder."  Abend, 863 F.2d at 1477. But

2  rather than remanding the case, the Ninth Circuit advised the district court that an injunction

3  was "inappropriate" and instructed the district court to consider alternatives to an injunction,

4  including money damages or a "continuing royalty."  Id. at 1478-79 (citing 3 Nimmer

5  § 14.06[b], at 14-56.2).  The Ninth Circuit based its conclusion on several "circumstances,"

6  such as: (i) the success of the infringing film resulted from the collaborative efforts of

7  "many talented individuals"; (ii) the success of the infringing film "resulted in large part

8  from factors completely unrelated to the underlying story," including the "outstanding

9  performances of its stars" and the "brilliant directing"; (iii) "defendants invested substantial

10  money, effort, and talent in creating the infringing work"; (iv) an injunction would foreclose

11  the defendants from enjoying "legitimate profits"; and (v) an injunction "could cause great

12  public injury by denying the public the opportunity to view a classic film."  Id. at 1478-79.

13  All of these circumstances exist in equal if not greater measure here.  Most obviously,

14  the jury has already determined that nearly all of MGA's Bratz profits derived from factors

15  other than the copyrighted works.  At trial, Mattel claimed that the entirety of those profits –

16  $777.9 million – resulted from MGA's use of Bryant's drawings.  (See TX 13959.)  The

17  jury disagreed.  Of the Bratz profits claimed by Mattel, the jury awarded between $6 million

18  and $10 million damages for Mattel's infringement claim, or just 0.8% to 1.2% of Bratz

19  profits.  Thus, just as the Abend court found that the defendant's success resulted "in large

20  part" from other factors, so too did the jury in this case.  Abend, 863 F.2d at 1479.

21  The Court sitting in equity is bound by that finding. The Seventh Amendment

22  provides that "no fact tried by a jury shall be otherwise re-examined in any Court of the

23  United States, than according to the rules of the common law."  U.S. Const. amend. VII.  As

24  the Ninth Circuit has held, "it would be a violation of the Seventh Amendment right to jury

25  trial for the court to disregard a jury's finding of fact."  Floyd v. Laws, 929 F.2d 1390, 1397

26  (9th Cir. 1991).  Thus, in a case like this one, "where legal claims are tried by a jury and

27  equitable claims are tried by a judge, and the claims are 'based on the same facts,' in

28  deciding the equitable claims 'the Seventh Amendment requires the trial judge to follow the

1   jury's <u>implicit or explicit factual determinations</u>.'"   <u>Los Angeles Police</u>, 995 F.2d at 1473

2   (emphasis added).  The Court thus must accept the jury's determination that Bratz profits

3   derived "in large part" from "factors completely unrelated" to the Bryant sketches.  <u>Abend</u>,

4   863 F. 2d at 1479.  To enjoin MGA would be to foreclose it from realizing profits deemed

5   legitimate by the jury.  <u>Id.</u>  That runs afoul of not only <u>Abend</u>, but the U.S. Constitution.

6          Again, for a host of reasons, Mattel is not entitled to any equitable relief.  However, if

7   the Court believes an equitable remedy is appropriate, the jury's findings provide a basis for

8   calculating a reasonable royalty.  In particular, both Mattel and MGA agree that the Bratz

9   franchise generated revenues of $3.1 billion.   (<u>See</u> TX 13960; TX 18923-002.)   And,

10  through its verdict, the jury determined that the $3.1 billion in revenues generated no more

11  than $10 million in infringing profits, although the more precise figure is likely $6 million.

12  Those profit numbers can be divided by $3.1 billion in Bratz revenues to compute to a 0.2-

13  0.3% ongoing royalty on net revenues.  (Declaration of Paul Meyer ("Meyer Decl."), ¶¶ 8-

14  10.)  This rate could, if the Court concludes that any form of equitable relief is appropriate,

15  be applied and limited to Bratz products in a manner consistent with the jury's findings. (<u>Id.</u>

16  ¶¶ 15-17.)

17  **V.    A DESTRUCTION OR RECALL ORDER IS INAPPROPRIATE**[46]

18         Mattel also requests that the Court order MGA to destroy and/or recall its "infringing

19  products."  (Mot. at 27-28.)  Like an injunction, the Copyright Act's destruction and recall

20  remedies  are  equitable  remedies  that  are  limited  to  the  items  specifically  determined  to

21  infringe the copyrighted works: "As part of a final judgment or decree, the court may order

22  the destruction or other reasonable disposition of all copies ... <u>found to have been made or</u>

23  <u>used in violation of the copyright owner's exclusive rights</u>, and of all plates, molds, matrices,

---

24  [46]     Mattel's request for "impoundment" can be denied out of hand.   (<u>See</u> Mot. at 26-27.)

25  Unlike destruction or recall remedies, which are granted as part of a "final judgment or decree"
    under 17 U.S.C. §503(b), "impoundment" remedies are authorized under 17 U.S.C. §503(a), which

26  only  applies  when  "an  action  under  this  title  is  pending."    Accordingly,  impoundments  are
    generally associated with <u>preliminary</u> injunctions, not permanent injunctions.  Patry § 22:86. In the

27  present  case,  a  jury  verdict  has  already  been  returned,  so  the  remedy  of  impoundment  does  not
    apply.  In any event, like recall and destruction, impoundment requires the application of equitable

28  principles and is inappropriate for the same reasons that recall and destruction are inappropriate.

masters, tapes, film negatives, or other articles by means of which such copies . . . may be reproduced." 17 U.S.C. § 503(b) (emphasis added). As shown above, the jury's verdict did not cover all Bratz dolls or products. Rather, the reasonable conclusion is that infringement was limited to the first generation Bratz dolls, in the first generation fashions and packaging. Even a recall or destruction of the first generation dolls would be inappropriate as these items are in the hands of consumers and Mattel has been awarded damages for these items.[47]

Even if the Court agreed with Mattel, despite the jury's verdict, that all Bratz "core" fashion dolls infringed Mattel's copyrights, the equities militate against ordering destruction or recall.[48] Mattel quotes Professor Patry, but omits his statement that "[r]ecall orders are not mandatory, however, and where a recall would deprive the public of the benefit of substantial noninfringing elements, requests for a recall have been denied." Patry § 22:81 (citing TVT Records v. Island Def Jam Music Group, 279 F. Supp. 2d 366, 407-09 (S.D.N.Y. 2003) (noting that defendants' product also reflected the work of others besides the infringing party)). The evidence clearly established the significant independent value and particularized creative expression contributed to later generation Bratz dolls which was not derived from Bryant's work.[49] Even if Mattel could prove that the Bratz sculpt infringed Mattel's copyrights, there is still no question that the Bratz dolls contain substantial non-infringing elements which contributed to its success.

---

[47] See Applied Innovations, Inc. v. Regents of the Univ. of Minn., 876 F.2d 626, 637-38 (8th Cir. 1989) ("it is doubtful that recall would be an available remedy against defendant's customers who are innocent third parties in this copyright infringement litigation"); Societe Civile Succession Richard Guino v. Int'l Foundation for Anticancer Drug Discovery, 460 F. Supp. 2d 1105, 1107 (D. Ariz. 2006) (holding that §503(a) does not permit the impoundment of infringing goods in the hands of innocent purchasers who are not themselves liable for infringement); Patry §22:86 ("[I]mpoundment is not available for articles purchased by a non-infringing person or entity").

[48] Mattel's Motion only alleges that the so-called "core" (female) Bratz fashion dolls infringe Mattel's copyrights in Bryant's drawings. Even if the Court granted an injunction or recall against MGA, there are no grounds to take any action against other non-infringing Bratz-related products such as Bratz Babyz, Lil' Bratz, Bratz Boyz, etc. The evidence is uncontroverted that these other product lines were developed independently of Bryant's drawings. (See, e.g., Tr. 7204:6-7216:20 (Lui Domingo trial testimony); 5757:5-5768:22 (Ninette Pembleton trial testimony).)

[49] See, e.g., Tr. 7197:3-7199:4 (Middleton testimony explaining that she independently developed later generation Bratz two-dimensional character art); Tr. 7227:6-7235:15, 7246:6-7250:10 (testimony of Lui Domingo, explaining that he had never seen Bryant's drawings and designed different face paint, accessories, and fashions for later generation Bratz dolls).)

The Court must also "consider the likely burden and expense of a recall to the defendant, and balance that burden against the benefit that would accrue to the plaintiff." Patry §22:79 (quoting Merit Diamond Corp. v. Frederick Goldman, Inc., 376 F. Supp. 2d 517, 526 (S.D.N.Y. 2005)).  MGA has distributed a variety of Bratz-related products to a large number of retailers; the expense and burden of recalling so many products would be enormous.  Granville v. Suckafree Records, Inc., 2006 WL 2520909, at *7 (S.D. Tex. June 28, 2006) ("[t]o recall and require destruction . . . would cause general disruption in the marketplace and inflict burden and expense upon an unknown number of other persons"); Gund Inc. v. Swank, 673 F. Supp. 1233, 1237 (S.D.N.Y. 1987) (recall of "knock-off" of toy denied because undertaking would be difficult during hectic Christmas season).

Mattel's authority is distinguishable, and does not undercut the importance of this burden.  For example, in Gund, Inc. v. Golden Bear Co., Ltd., 1992 WL 392602, at *5 (S.D.N.Y. Dec. 10, 1992), the court issued a recall only because there was one infringing product, one store ("all of the toys are in the possession of K-Mart"), and the recall would not cause the defendant any "serious economic injury."  Similarly, in Rogers v. Koons, 960 F.2d 301 (2d Cir. 1992), the court upheld the recall of a single sculpt, not thousands of products. A recall order in this case would be far more complex and burdensome.

On the contrary, if the MGA products remain on the shelves of retailers, the only "burden" to Mattel is facing competition.  As discussed above, a copyright holder's injury is defined by the harm to the infringed materials and the copyright holder's rights in those materials, not by any harm to a copyright holder's other non-infringed, unrelated products. Similarly, Mattel's authority only supports a recall where the infringing product and the infringed product are directly competing in the marketplace.[50]  Mattel has presented no

---

[50]   In Nikon, Inc. v. Ikon Corp., 1992 WL 398440 (S.D.N.Y. Dec. 18, 1992), aff'd, 987 F.2d 91 (2d Cir. 1993), a Lanham Act case, the infringing product's existence was likely to confuse consumers and take away business from the infringed product.  In CyberMedia, Inc. v. Symantec Corp., 19 F. Supp. 2d 1070 (N.D. Cal. 1998), the defendants' computer program directly infringed the plaintiff's program, and was "on shelves in retail stores, side by side with [plaintiff's product]." Id. at 1079.  Without a recall order, the court reasoned, the infringing products would continue to directly compete with the infringed product and therefore "deprive[e Plaintiff] of customers it might otherwise have acquired in the absence of Defendants' infringement."  Id.

1  evidence of a loss of market share, and therefore its recall demands fail.

2  <u>**CONCLUSION**</u>

3      For the foregoing reasons, Mattel's motion for permanent injunction should be denied.

4  DATED:  October 13, 2008          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

5                    By:  _____/s/ Thomas J. Nolan_____

6                          Thomas J. Nolan
                 Attorneys for the MGA Parties

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA's Opposition to Mattel's Motion For Permanent Injunction - Case No. CV 04-9049 SGL (RNBx)