1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2     John B. Quinn (Bar No. 090378)
      johnquinn@quinnemanuel.com
3     Michael T. Zeller (Bar No. 196417)
      (michaelzeller@quinnemanuel.com)
4     Jon D. Corey (Bar No. 185066)
      (joncorey@quinnemanuel.com)
5   865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017-2543
6   Telephone: (213) 443-3000
    Facsimile: (213) 443-3100
7   Attorneys for Mattel, Inc.
8
9                   UNITED STATES DISTRICT COURT
10                 CENTRAL DISTRICT OF CALIFORNIA
11                       EASTERN DIVISION

| 12 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13 | Plaintiff, | Consolidated with Case No. CV 04-09059 |
| 14 | vs. | Case No. CV 05-02727 |
| 15 | MATTEL, INC., a Delaware corporation, | Honorable Stephen G. Larson |
| 16 | Defendant. | **MATTEL, INC.'S RESPONSE TO MGA PARTIES' STATEMENT OF POSITION REGARDING PHASE 1C ISSUES** |
| 17 | | |
| 18 | AND CONSOLIDATED ACTIONS | |
| 19 | | Hearing Date: November 10, 2008 |
| 20 | | Time: 1:00 p.m.<br>Place: Courtroom 1 |

21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ............................................................................................ 1

ARGUMENT .................................................................................................. 2

I.    LACHES DOES NOT APPLY ............................................................ 2

    A.    Mattel Did Not Unreasonably Delay in Filing Its Claims ....................... 3

        1.    The Jury's Findings Defeat Any Laches Defense ........................... 4

        2.    The Court's Rulings Defeat Any Laches Defense ......................... 5

        3.    Mattel Did Not Unreasonably Delay ............................................. 7

    B.    The MGA Parties Were Not Prejudiced as a Result of Any Purported Delay by Mattel ............................................................................ 9

        1.    The MGA Parties Suffered No Evidentiary Prejudice ................. 9

        2.    There Was No Expectations-Based Prejudice .............................. 10

II.   EQUITABLE ESTOPPEL DOES NOT APPLY .............................. 12

III.  THE WAIVER DEFENSE FAILS ..................................................... 15

    A.    Mattel Could Not Intentionally Waive Rights That It Did Not Know It Had. ......................................................................................... 16

    B.    The MGA Parties Seek to Circumvent the Court's Order That Only Comparable Instances of Moonlighting Could Be Relevant ........ 17

    C.    The Inventions Agreement Defeats Any Waiver ................................... 21

IV.   NONE OF THE MGA PARTIES' ARGUMENTS DEFEATS THE DECLARATORY RELIEF MATTEL SEEKS ................................. 22

V.    NONE OF THE MGA PARTIES' ARGUMENTS DEFEATS THE RELIEF MATTEL SEEKS FOR UNFAIR COMPETITION .......... 23

# TABLE OF AUTHORITIES

**Page**

## Cases

A&M Records, Inc. v. Napster, Inc.,
239 F.3d 1004 (9th Cir. 2001) ................................................................ 16

Abbott v. City of Los Angeles,
50 Cal. 2d 438 (1958) ............................................................................... 3

adidas-America, Inc. v. Payless Shoesource, Inc.,
546 F. Supp. 2d 1029 (D. Or. 2008) ........................... 10, 14, 16, 17, 20

Am. Cas. Co. of Reading, Pa. v. Baker,
22 F.3d 880 (9th Cir. 1994) ................................................................... 12

In re Baldwin,
307 B.R. 251 (M.D. Ala. 2004) ............................................................. 16

Batjac Prods. Inc. v. GoodTimes Home Video Corp.,
160 F.3d 1223 (9th Cir. 1998) ............................................................... 25

Bono v. Clark,
103 Cal. App. 4th 1409 (2002) ................................................................ 2

Castle v. Wells Fargo Fin., Inc.,
2007 WL 1105118 (N.D. Cal. 2007) ....................................................... 8

Chirco v. Crosswinds Cmtys., Inc.,
474 F.3d 227 (6th Cir. 2007) ................................................................... 9

City and Co. of San Francisco v. Grant Co.,
181 Cal. App. 3d 1085 (1986) ............................................................... 13

City of Ukiah v. Fones,
64 Cal. 2d 104 (1966) ............................................................................ 15

Coast Federal Bank, FSB v. U.S.,
48 Fed. Cl. 402 (2000) .......................................................................... 21

Couveau v. Am. Airlines, Inc.,
218 F.3d 1078 (9th Cir. 2000) ................................................................. 2

Danjaq LLC v. Sony Corp.,
263 F.3d 942 (9th Cir. 2001) ............................................................... 2, 8

Deal v. Consumer Programs, Inc.,
458 F. Supp. 2d 970 (E.D. Mo. 2005) ................................................... 20

Dimension One Spas, Inc. v. Coverplay, Inc.,
2008 WL 4165034 (S.D. Cal. Sept. 5, 2008) ..................................... 9, 11

Dolch v. United California Bank,
702 F.2d 178 (9th Cir. 1983) ................................................................. 22

07209/2666930.1

Durgom v. Janowiak,
  74 Cal. App. 4th 178 (Cal. Ct. App. 1999)...................................................23

Emerson Electric Co. v. Rogers,
  418 F.3d 841 (8th Cir. 2005)........................................................................19

F.D.I.C. v. Duffy,
  835 F. Supp. 307 (E.D. La. 1993)................................................................17

Family Record Plan, Inc. v. Mitchell,
  172 Cal. App. 2d 235 (1959)..........................................................................7

Field v. Bank of Am. Nat'l Trust & Sav. Ass'n,
  100 Cal. App. 2d 311 (1950)........................................................................12

Field v. Google Inc.,
  412 F. Supp. 2d 1106 (D. Nev. 2006) ..........................................................15

Floyd v. Laws,
  929 F.2d 1390 (9th Cir. 1991)......................................................................22

GNG XI, Inc. v. Quixoti Corp.,
  651 F. Supp. 68 (E.D.Mo. 1986)..................................................................21

Grand Canyon Trust,
  391 F.3d at 988 (citation omitted) ........................................................9, 10, 12

Griggs v. Allstate Ins. Co.,
  1997 WL 1764777 (S.D. Ohio 1997)...........................................................17

HGI Assocs., Inc. v. Wetmore Printing Co.,
  427 F.3d 867 (11th Cir. 2005)......................................................................15

Haas v. Leo Feist, Inc.,
  234 F. 105 (S.D.N.Y. 1916) ...........................................................................6

Hair v. State of Cal.,
  2 Cal. App. 4th 321 (1991)...........................................................................12

Jackson v. Axton,
  25 F.3d 884 (9th Cir. 1994)............................................................................8

Jacobsen v. Desert Book Co.,
  287 F.3d 936 (10th Cir. 2002)........................................................................8

Jarrow Formulas, Inc. v. Nutrition Now, Inc.,
  304 F.3d 829 (9th Cir. 2002)................................................................3, 5, 8

Jones v. Brown,
  13 Cal. App. 3d 513 (1970)..........................................................................16

Kling v. Hallmark Cards Inc.,
  225 F.3d 1030 (9th Cir. 2000)...........................................................3, 5, 6, 7

Lam v. Bureau of Sec. and Investigative Servs.,
  34 Cal. App. 4th 29 (1995).............................................................................7

- iii -

07209/2666930.1

Liberty Mut. Ins. Co. v. Colonial Ins. Co.,
   8 Cal. App. 3d 427 (1970) .......................................................................... 8

Lone Mountain Production Co. v. Natural Gas Pipeline Co. of America,
   710 F. Supp. 305 (D. Utah 1989) ............................................................. 20

Long Island Sav. Bank, FSB v. U.S.,
   503 F.3d 1234 (Fed. Cir. 2007) ................................................................ 21

Los Angeles Police Protective League v. Gates,
   995 F.2d 1469 (9th Cir. 1993) ............................................................. 4, 22

Mangini v. Aerojet-General Corp.,
   230 Cal. App. 3d 1125 (1991) .................................................................... 8

Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,
   518 F. Supp. 2d 1197 (C.D. Cal. 2007) .................................................. 17

Miller v. Fairchild Indus., Inc.,
   885 F.2d 498 (9th Cir. 1989) ................................................................... 22

New Era Publ'ns Int'l, ApS v. Henry Holt & Co., Inc.,
   873 F.2d 576 (2d Cir. 1989) ...................................................................... 6

Novell, Inc. v. Weird Stuff, Inc.,
   0094 WL 16458729 (N.D. Cal. 1993) ............................................... 13, 17

O'Donnell v. Vencor Inc.,
   466 F.3d 1104 (9th Cir. 2006) .................................................................... 8

Orbaun v. Main,
   198 Cal. App. 2d 92 (1961) ........................................................................ 3

Pac. Hills Homeowners Ass'n v. Prun,
   160 Cal. App. 4th 1557 (2008) ................................................................ 11

Pochopien v. Marshall, O'Toole, Gerstein, Murray & Borun,
   315 Ill. App. 3d 329 (Ill. App. 2000) ..................................................... 20

Posey v. Leavitt,
   229 Cal. App. 3d 1236 (1991) .................................................................. 21

Rincon Center Assocs. v. Chrysler MacNally Corp.,
   1998 WL 410886 (N.D. Cal. 1998) ......................................................... 16

Robert F. Kennedy Med. Center v. Department of Health Services,
   61 Cal. App. 4th 1357 (1998) .................................................................... 7

Roberts v. Superior Court,
   9 Cal. 3d 330 (1973) ................................................................................ 16

Rubin v. L.A. Fed. Sav. & Loan Ass'n,
   159 Cal. App. 3d 292 (1984) .................................................................... 15

Scholastic Entertainment, Inc., v. Fox Entertainment Group, Inc.,
   336 F.3d 982 (9th Cir. 2003) ................................................................... 22

07209/2666930.1

MATTEL, INC.'S RESPONSE TO MGA PARTIES' STATEMENT OF POSITION REGARDING PHASE 1C ISSUES

Secs. and Exchange Comm'n v. Lincoln Thrift Ass'n,
   557 F.2d 1274 (9th Cir. 1977) ...................................................................... 21

Selph v. Nelson, Reabe & Synder, Inc.,
   966 F.2d 411 (8th Cir. 1992) ........................................................................ 8

Shouse v. Pierce County,
   559 F.2d 1142 (9th Cir. 1977) ...................................................................... 3

So. Cent. Farmers Feeding Families v. City of Los Angeles,
   2008 WL 4402115 (Cal. App. Sept. 30, 2008) .............................................. 8

Strong v. Co. of Santa Cruz,
   15 Cal. 3d 720 (1975) ........................................................................... 12, 13

Symantec Corp. v. CD Micro, Inc.,
   286 F. Supp. 2d 1265 (D. Or. 2003) .......................................................... 2, 3

T.B. Harms Co. v. Eliscu,
   339 F.2d 823 (2d Cir. 1964) ........................................................................ 22

TV Interactive Data Corp. v. Microsoft Corp.,
   2005 WL 2277121 (N.D. Cal. Sept. 19, 2005) ........................................... 10

Therma-Tru Corp. v. Peachtree Doors Inc.,
   44 F.3d 988 (8th Cir. 1995) ......................................................................... 4

Three Sixty Five Club v. Shostak,
   104 Cal. App. 2d 735 (1951) ....................................................................... 15

U.S. v. King Features Entm't, Inc.,
   843 F.2d 394 (9th Cir. 1988) ...................................................................... 15

Watermark Publishers v. High Tech. Sys. Inc.,
   44 U.S.P.Q. 2d 1578 (S.D. Cal. 1997) ......................................................... 6

Wells Fargo Bank, N.A. v. Bank of Am. NT & SA,
   32 Cal. App. 4th 424 (1995) ................................................... 2, 13, 14, 15

Westfed Holdings, Inc. v. U.S.,
   407 F.3d 1352 (Fed. Cir. 2005) .................................................................. 21

**Statutes**

17 U.S.C. § 205(d) ............................................................................................ 25

17 U.S.C. § 507(b) .............................................................................................. 8

18 U.S.C. § 1832(a) .......................................................................................... 24

Cal. Bus. & Prof. Code § 17200 ..................................................................... 23

Cal. Bus. & Prof. Code § 17208 ....................................................................... 8

**<u>Miscellaneous</u>**

12 Am. Jur. <u>Contracts</u> § 635 ........................................................................ 21

13 B.E. Witkin, Summary of California Law, Equity § 14(a)(2) (10th ed. 2005) ........ 3

MATTEL, INC.'S RESPONSE TO MGA PARTIES' STATEMENT OF POSITION REGARDING PHASE 1C
ISSUES

## **Introduction**

Having been found liable on every claim that Mattel took to the jury, the MGA Parties now seek to escape liability for their wrongdoing through equitable defenses that are unsupported by the evidence, inconsistent with prior rulings of the Court and at odds with MGA's own allegations.   The MGA Parties also assert contentions they never disclosed in discovery -- in violation of Court Orders compelling them to do so -- and argue against claims for relief that Mattel has never raised.

First, the MGA Parties argue that Mattel's claims are barred by laches and estoppel based on allegations that Mattel, with full knowledge of the facts, sat on its rights and waited to "see if MGA's Bratz line was successful" before suing.[1]   Both the Court (on summary judgment) and the jury (in its verdict on fraudulent concealment) rejected that argument.   The MGA Parties present no reason why the Court should revisit these conclusions.   According to Defendants' refrain, BARBIE was a "Brand in Crisis" that was "indisputably losing market share to Bratz," and yet Mattel -- which supposedly sues every new entrant into the doll business no matter what -- inexplicably sat idle though it had long known of the claims on which it prevailed.[2]   The evidence is to the contrary.   As the Court has ruled, Mattel was not on notice of its claims against Bryant and MGA until a few months before it sued Bryant in state court and was not on notice of its claims against MGA Hong Kong and Larian until after that suit was filed.   MGA intervened as a party-defendant in late 2004; the Court issued a year-long stay shortly thereafter; and Mattel filed its counterclaims just months after the stay was lifted.   Mattel never did anything to suggest that it would not sue MGA.   Quite the opposite.   Mattel always acted diligently to protect its interests.   There was no undue delay, and no prejudice or detrimental reliance.

Second, the MGA Parties argue that Mattel waived its tort claims against them -- Mattel competitors -- by allegedly permitting *Mattel* employees *other than* Bryant to

---

[1]   MGA Parties Statement of Position Regarding Phase 1C Issues ("Memo."), at 1:15-18.
[2]   Memo. at 7 n.5, 8:13-9:2.

- 1 -

"moonlight."  Mattel has never knowingly turned a blind eye to an employee's work on a competing product for a competitor in the toy industry.  MGA's own witnesses at trial admitted that such conduct was wrong and would not be tolerated by Mattel, and Bryant himself testified that he knew Mattel would not condone his secret work for MGA. Moreover, any failure by Mattel to bring actions against other employees in similar circumstances (and none was established) would not constitute a waiver of Mattel's claims against MGA itself, its competitor.  Mattel has vigorously pursued its claims against both Bryant and the MGA Parties at all times; it is a measure of Mattel's diligence that MGA's fraudulent concealment ultimately did not succeed in denying Mattel the information necessary to bring suit.  MGA's claim that Mattel intentionally relinquished its rights while simultaneously spending millions to enforce them is unsupported by the evidence.  Indeed, the claim makes no sense.  Having lost in their efforts to convince the jury at trial that Mattel was too aggressive in pursuing its claims, the MGA Parties now try to convince the Court that Mattel was too passive and slept on its rights.

Finally, without having seen Mattel's motions that it filed last week, the MGA Parties speculate here about Mattel's claims for declaratory relief and under California's Unfair Competition Law ("UCL").   In doing so, they argue against relief that Mattel does not seek.  The relief that Mattel actually seeks is set forth in its separately filed motions.  MGA's irrelevant arguments should be disregarded.

## Argument

## I.    LACHES DOES NOT APPLY

Defendants focus on laches.  "Laches is an equitable defense that prevents a plaintiff, who with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights."  Danjaq LLC v. Sony Corp., 263 F.3d 942, 950-51 (9th Cir. 2001) (quotations omitted); see Symantec Corp. v. CD Micro, Inc., 286 F. Supp. 2d 1265, 1272 (D. Or. 2003).  Laches "is not designed to punish a plaintiff," and can be invoked only to prevent an "unwarranted injustice."  Bono v. Clark, 103 Cal. App. 4th 1409, 1418

(2002).  To prevail, the MGA Parties must establish that Mattel delayed unreasonably and that each defendant suffered prejudice.  <u>Couveau v. Am. Airlines, Inc.</u>, 218 F.3d 1078, 1083 (9th Cir. 2000); <u>Wells Fargo Bank, N.A. v. Bank of Am. NT & SA</u>, 32 Cal. App. 4th 424, 439 (1995).  They have shown neither here.[3]

## A.   <u>Mattel Did Not Unreasonably Delay in Filing Its Claims</u>

The law presumes laches is inapplicable when a claim was filed within the limitations period.  <u>E.g.</u>, <u>Jarrow Formulas, Inc. v. Nutrition Now, Inc.</u>, 304 F.3d 829, 835 (9th Cir. 2002) ("If the plaintiff filed suit within the analogous limitations period, *the strong presumption is that laches is inapplicable*.") (emphasis added); <u>Kling v. Hallmark Cards Inc.</u>, 225 F.3d 1030, 1041 n.8 (9th Cir. 2000) ("'When a limitation on the period for bringing suit has been set by statute, laches will generally not be invoked to shorten the statutory period.'").  It is "extremely rare for laches to be effectively invoked when a plaintiff has filed his action before limitations in an analogous action at law has run." <u>Shouse v. Pierce Co.</u>, 559 F.2d 1142, 1147 (9th Cir. 1977).  The Court has ruled that Mattel filed its claims at issue -- copyright infringement, declaratory relief and unfair competition -- within the limitations period.  And the Court, in holding Mattel's claims to be timely, rejected the very same assertions of accrual and delay raised again here.[4] The jury further found that MGA fraudulently concealed the critical facts giving rise to those claims and that Mattel did not have knowledge of those facts.

---

[3]  As the MGA Parties recognize (Memo. at 3:5), because laches is not a defense to Mattel's legal state-law claims, it can only be raised as a defense to Mattel's claims for copyright infringement, declaratory relief and unfair competition.  <u>See</u> <u>Abbott v. City of Los Angeles</u>, 50 Cal. 2d 438, 462 (1958) (laches is not available as affirmative defense to action for money damages); 13 B.E. WITKIN, SUMMARY OF CALIFORNIA LAW, EQUITY § 14(a)(2) (10th ed. 2005) ("Laches can be asserted only in a suit in equity; an action at law may be brought at any time within the period of the statute of limitations").

[4]  When an equitable claim does not have its own statute of limitations, courts refer to the limitations period for "analogous" claims to apply the presumption of timeliness.  <u>See, e.g.</u>, <u>Shouse</u>, 559 F.2d at 1147.  Here, however, the Court has already held that the claims relevant here were timely filed.  <u>See</u> October 13, 2008 Dec. of B. Dylan Proctor, dated October 13, 2008 ("Proctor Dec."), Ex. 1 (June 2, 2008 Order), at 2-4 (holding that Mattel's state law claims other than conversion and intentional interference are subject to discovery rule and could not have accrued before July 18, 2003 and that Mattel's copyright claim could not have accrued before November 23, 2003).

- 3 -
MATTEL, INC.'S RESPONSE TO MGA PARTIES' STATEMENT OF POSITION REGARDING PHASE 1C ISSUES

1           **1.     The Jury's Findings Defeat Any Laches Defense**

2           Laches can apply only when a plaintiff, "with full knowledge of the facts . . .

3    sleeps upon his rights." <u>Symantec Corp.</u>, 286 F. Supp. 2d at 1272.  When "the delay in

4    commencing an action is induced by the conduct of the defendants, laches is no defense."

5    <u>Orbaun v. Main</u>, 198 Cal. App. 2d 92, 100 (1961).  The jury in this case found (1) that

6    MGA fraudulently concealed the facts that Carter Bryant created Bratz and signed a

7    contract with MGA while employed by Mattel;  and (2) that Mattel was unaware of these

8    facts.[5]  The jury's findings on these points, which are amply supported by the record,[6]

9    compel the conclusion that laches does not apply.  <u>See, e.g.</u>, <u>Therma-Tru Corp. v.</u>

10   <u>Peachtree Doors Inc.</u>, 44 F.3d 988, 995 (8th Cir. 1995) (reversing ruling on equitable

11   affirmative defense because judicial findings "contrary to facts found by the jury in

12   reaching its verdict" are impermissible); <u>Los Angeles Police Protective League v. Gates</u>,

13   995 F.2d 1469, 1473 (9th Cir. 1993) ("[I]t would be a violation of the Seventh

14   Amendment right to jury trial for the court to disregard a jury's finding of fact.").  Mattel

15   could not sleep on rights it did not know it had; the MGA Parties cannot complain of

16   delay that MGA intentionally caused and created.[7]

17

18

---

19       [5]  Proctor Dec. Ex. 3 (Phase B Verdict Form As Given), at 8; Ex. 4 (Court's Phase B Jury Instructions As Given), at 39 (Jury Instruction No. 35).

20       [6]  <u>See, e.g.</u>, Proctor Dec. Ex. 5 (Trial Ex. 4507) ("There must be no mention about . . .
21   Carter"); Ex. 6 (Trial Ex. 4942) ("I know we want to keep Carter under wraps."); Exs. 7 and 8 (Trial Exs. 500, 1701) (patent application and declaration stating Larian is inventor of Bratz);
22   Trial Tr. at 2375:9-2376:1 (Harris testimony that Garcia told her "not to say anything" about Bryant coming over to MGA during his lunch break while he was still a Mattel employee); Trial
23   Tr. at 2382:24-2383:9 (Harris testimony that Larian told her and others that they "shouldn't mention that Carter Bryant was involved with [Bratz]; that it should have been a doll line coming from MGA."); Trial Tr. at 1328:13-23 (O'Connor testimony that Larian told her to
24   white out "Barbie Collectibles" fax header on fax from Bryant).
25       [7]  That the jury did not find fraudulent concealment by Larian or MGA Hong Kong is irrelevant for purposes of laches.  The jury could find fraudulent concealment only if it
26   concluded that MGA "took affirmative steps to conceal the facts that could have led Mattel to discover that Carter Bryant created Bratz-related works while employed by Mattel or that Carter
27   Bryant entered into a contract with and worked with MGA while he was still employed by Mattel," ***and*** that "Mattel was unaware of such facts." Ex. 4 at 39 (Jury Instruction No. 35).  It
28   thus necessarily had to have found that Mattel was unaware of the relevant facts from any source.

MATTEL, INC.'S RESPONSE TO MGA PARTIES' STATEMENT OF POSITION REGARDING PHASE 1C ISSUES

07209/2666930.1

1    ## 2.    The Court's Rulings Defeat Any Laches Defense

2        This Court has already rejected the allegations that the MGA Parties now seek to

3    relitigate.  After extensive briefing and argument on summary judgment, the Court ruled

4    that July 18, 2003 was the earliest conceivable date on which Mattel could have been

5    aware of any wrongdoing by Bryant or MGA;[8] that November 23, 2003, when Mattel

6    first obtained a copy of the Bryant drawings, was the earliest date on which Mattel could

7    have been on notice of its copyright infringement claim against MGA;[9] and that Mattel's

8    claims against Larian and MGA Hong Kong arose no earlier than November 4, 2004.[10]

9        The MGA Parties have offered no basis for the Court to reverse these rulings.  The

10   inquiry for laches is whether Mattel unreasonably delayed *after learning of its claims.*

11   "[A]ny delay is to be measured from the time that the plaintiff knew or should have

12   known about the potential claim at issue . . . [T]here can be no laches in failing to assert

13   rights of which a party is wholly ignorant, and whose existence he had no reason to

14   apprehend."  Kling, 225 F.3d at 1036.  Where "the plaintiff legitimately was unaware of

15   the defendant's conduct, laches is no bar to suit."  Jarrow,  304 F.3d  at 835.

16       The MGA Parties assert that "the inquiry is not when Mattel knew of the precise

17   drawings created by Bryant but rather when Mattel knew or should have known that

18   MGA was hiring Mattel employees and purportedly pilfering Mattel designs."[11]  That is

19   incorrect.  The Mattel claims at issue here are based on its ownership of Bratz works and

20   the infringement of those works by the MGA Parties.  Just as these claims could not have

21   accrued for statute of limitations purposes based on alleged knowledge that MGA had

22   _____

23   [8]   Proctor Dec. Ex. 2 (June 2, 2008 Order), at 2; Ex. 1 (May 27, 2008 Order), at 2.
     [9]   Proctor Dec. Ex. 2 (June 2, 2008 Order), at 4 ("[I]t is uncontroverted that Mattel did not
24   receive copies of the Bratz drawings prior to November 23, 2003.  Without the drawings, Mattel
     could not assess the substantial similarity factor to determine whether it could assert a claim
25   that the Bratz dolls infringed Mattel's rights to them.  Accordingly, on the undisputed record,
     the Court concludes that Mattel's copyright claim did not accrue prior to November 23, 2003.")
26   (emphasis in original); Proctor Dec. Ex. 1 (May 27, 2008 Order), at 4.  Mattel did not receive a
     copy of the MGA-Bryant agreement until November 24, 2003.  Proctor Dec. Ex. 1 (May 27,
27   2008 Order), at 4.
     [10]   Proctor Dec. Ex. 1 (May 27, 2008 Order), at 9 ("the claims against [MGA Hong Kong
28   and Isaac Larian] arose no earlier than November 4, 2004").
     [11]   Memo. at 1:10-12.

"hired [other] Mattel employees" or "pilfered" non-Bratz designs, they could not have accrued based on such ostensible knowledge for laches purposes.

The MGA Parties also argue that the accrual date for laches may be earlier than for the statute of limitations when a plaintiff is aware of an "impending infringement" before the infringement actually occurs.[12] But the MGA Parties point to no evidence of Mattel's knowledge of any "impending infringement," and such a situation is obviously inapposite here. Mattel's copyright claim could not have accrued before November 2003 because, as this Court found, Mattel did not receive Bryant's Bratz drawings until then.[13] The authorities the MGA Parties cite are therefore totally irrelevant. In New Era Publ'ns Int'l, ApS v. Henry Holt & Co., Inc., 873 F.2d 576, 584 (2d Cir. 1989), the court found laches applicable only because the plaintiff knew *both* that an allegedly infringing book would be published *and* that the plaintiff owned the copyright at issue, but nevertheless did nothing until the book was printed and shipped. Similarly, in Watermark Publishers v. High Tech. Sys. Inc., 44 U.S.P.Q.2d 1578, 1583-84 (S.D. Cal. 1997), the court found a copyright claim barred by laches when a plaintiff knew she owned the copyright at issue and was aware of the infringement for over four years and yet did nothing. Defendants' quote from Judge Learned Hand's opinion in Haas v. Leo Feist, Inc., 234 F. 105, 108 (S.D.N.Y. 1916) -- a case this Court has found MGA materially miscited before[14] -- confirms that a copyright owner must have "full notice of an intended infringement" for laches to apply.[15] Mattel, unlike the plaintiffs in those cases, did not know that it owned the copyrights in Bratz, let alone that there was impending infringement by the MGA. Therefore, laches does not apply. See Kling, 225 F.3d at 1041 (cited by MGA) (*reversing* finding of laches because undisputed evidence did not show plaintiffs had knowledge of impending infringement).

---

[12] Memo. at 4:9-12.
[13] Proctor Dec. Ex. 2 (June 2, 2008 Order), at 4.
[14] See Trial Tr. at 5303:12-5304:2.
[15] Memo. at 3:7-13.

07209/2666930.1

Nor does the MGA Parties' creative factual recitation support an earlier accrual date.  The MGA Parties rely on the same facts that they asserted on summary judgment (which the Court rejected) and at trial (which the jury rejected).[16]  The Court already ruled that Mattel's investigations of *different* claims, involving the potential copyright infringement of Mattel's Toon Teens or DIVA STARZ projects, are irrelevant here.[17]  Similarly, evidence that Mattel knew that Bryant worked for MGA *after* he left Mattel did not put Mattel on notice that Bryant secretly created Bratz *while employed by* Mattel or that Bryant entered into an agreement to work for MGA on a "top priority" basis before resigning from Mattel.  The cease-and-desist letter Mattel sent to MGA based on unauthorized use of Mattel trademarks (BARBIE and DIVA STARZ) in connection with a Yahoo! website which supposedly revealed that Bryant created Bratz is equally irrelevant.  There is no evidence that Mattel ever saw the information about Bryant.  Nor did the site even reveal that Bryant created Bratz while still employed by Mattel.  And whether or not *Wal-Mart* received a few Bryant drawings in December 2000, *Mattel* indisputably did not see the drawings until November 23, 2003.  Mattel's claims accrued for laches purposes only when they accrued for statute of limitations purposes, which, under the Court's rulings, was in mid- to late-2003 for MGA at the earliest, and November 2004 for Larian and MGA Hong Kong.[18]

### 3.   Mattel Did Not Unreasonably Delay

In light of the applicable accrual dates, Mattel in no way unreasonably delayed in seeking redress.  Mattel filed its initial complaint against Bryant in April 2004, within months of learning of his potential wrongdoing at issue here.[19]  MGA intervened as a defendant in December 2004, stating that it needed to protect its interests in Bratz against what it claimed were Mattel's "disguised" copyright infringement claims.[20]  Mattel then

---

[16]  Memo. at 6-8 (referencing  events from 2000, 2001 and 2002).
[17]  Proctor Dec. Ex. 1 (May 27, 2008 Order), at 7.
[18]  Proctor Dec. Ex. 2 (June 2, 2008 Order), at 2, 4; Ex. 1 (May 27, 2008 Order), at 2, 4, 9.
[19]  Proctor Dec. Ex. 9 (Complaint in Mattel, Inc. v. Carter Bryant, filed April 27, 2004).
[20]  Proctor Dec. Ex. 10 (Defendant in Intervention MGA Entertainment, Inc.'s Joinder in Defendant Carter Bryant's Opposition to Plaintiff Mattel, Inc.'s Motion to Remand), at 1:6-8; (footnote continued)

MATTEL, INC.'S RESPONSE TO MGA PARTIES' STATEMENT OF POSITION REGARDING PHASE 1C ISSUES

07209/2666930.1

1    filed its counterclaims in November 2006, within months of the lifting of the stay in this

2    case.  "Delays" of this magnitude do not support laches.  E.g., Kling, 225 F.3d at 1041

3    n.8 (noting defendants had not even argued laches would be justified based on delay

4    equivalent to limitations period); Robert F. Kennedy Medical Center v. Dep't of Health

5    Services, 61 Cal. App. 4th 1357, 1362 (1998) (delay of over 3 years not unreasonable);

6    Lam v. Bureau of Sec. and Investigative Servs., 34 Cal. App. 4th 29, 39 n.3 (1995)

7    (same, almost 3 years); Family Record Plan, Inc. v. Mitchell, 172 Cal. App. 2d 235, 246

8    (1959) (same, 4 years).  This is all the more true given the strong presumption that laches

9    will not bar timely claims, like Mattel's here.  Jarrow, 304 F.3d at 835.[21]

10         The Ninth Circuit has held that only in "extraordinary" circumstances will laches

11   be found to bar a timely infringement claim.  See Danjaq, 263 F.3d at 954 (finding 1998

12   lawsuit based on films released between 1962 and 1977 -- i.e., delay ranging from 19-36

13   years -- barred by laches although infringement claim was technically timely as a result

14   of recent DVD re-releases).  The circumstances here are anything but "extraordinary."

15   Mattel sued Bryant within months of accrual; MGA intervened shortly thereafter; five

16   months later, the Court then stayed the action for approximately a year;[22] and Mattel

17   _____

18   Ex. 11 (MGA's Answer in Intervention to Plaintiff's Unverified Complaint), at 1:24-25 ("Mattels' purported conversion claim is nothing more than a copyright claim in disguise.").
        [21]   MGA argues that Mattel cannot rely on principles of relation back in the laches context.

19   That is a red herring.  The claims at issue here were all timely even without relation back .  The statute of limitations is 3 years for copyright infringement, See 17 U.S.C. § 507(b), It is 4 years

20   for unfair competition, see Cal. Bus. & Prof. Code § 17208, and for declaratory relief arising out of written contractual obligations.  See Mangini v. Aerojet-General Corp., 230 Cal. App. 3d

21   1125, 1155 (1991) ("[T]he statute of limitations governing a request for declaratory relief is the one applicable to an ordinary legal or equitable action based on the same claim."); So. Cent.

22   Farmers Feeding Families v. City of Los Angeles, 2008 WL 4402115, *14 (Cal. App. Sept. 30, 2008) (four-year statute of limitations for breach of written contract applies to declaratory relief

23   claim based on controversy relating to contract); Liberty Mut. Ins. Co. v. Colonial Ins. Co., 8 Cal. App. 3d 427, 432-33 (1970) (four-year statute of limitations applies to declaratory relief

24   claim based on obligation arising from written insurance policy).
        [22]   Proctor Dec. Exs. 13 and 14 (Minute Orders, dated May 20, 2005 and May 16, 2006).

25   The Court's year-long stay of proceedings while the Ninth Circuit considered an interlocutory appeal tolled the limitations period for Mattel's claims for the duration of the stay.  See Castle v.

26   Wells Fargo Fin., Inc., 2007 WL 1105118 (N.D. Cal. 2007) (finding statute of limitations equitably tolled for period of stay); Selph v. Nelson, Reabe & Synder, Inc., 966 F.2d 411, 413

27   (8th Cir. 1992) ("A stay tolls the statute of limitations . . ."); cf. O'Donnell v. Vencor Inc., 466 F.3d 1104, 1112 (9th Cir. 2006) (defense not barred by laches because delay in filing motion to

28   dismiss was reasonable as a result of multiple stays of case).

filed its counterclaims months after the stay was lifted.[23]  The "delays" here do not begin to compare to the cases cited by the MGA Parties, such as the dozen-plus-years that the plaintiffs waited in Danjaq or the twenty years in Jackson v. Axton, 25 F.3d 884, 889 (9th Cir. 1994).  See Jacobsen v. Desert Book Co., 287 F.3d 936, 951 (10th Cir. 2002) (distinguishing Danjaq and Jackson as rare cases where plaintiff had delayed for prolonged periods, and finding three years to be a reasonable period of time in which to bring suit).  And no evidence supports the MGA Parties' erroneous claim that, as in Danjaq, Mattel intentionally delayed "to capitalize on the alleged infringer's labor."  In fact, MGA induced -- and profited from -- the delay it now relies upon for laches.[24]

## B.   The MGA Parties Were Not Prejudiced as a Result of Any Purported Delay by Mattel

Laches "is primarily concerned with prejudice.  A lengthy delay, even if unexcused, that does not result in prejudice does not support a laches defense."  Grand Canyon Trust, 391 F.3d at 988 (citation omitted).

### 1.   The MGA Parties Suffered No Evidentiary Prejudice

The MGA Parties make no attempt to argue that they were unable to present the sort of "full and fair defense on the merits" that would qualify as evidentiary prejudice.  See Dimension One Spas, Inc. v. Coverplay, Inc., 2008 WL 4165034, *14-15 (S.D. Cal. Sept. 5, 2008) (laches did not apply to patent infringement claim where six year delay did not create prejudice).  Instead, they argue that "witnesses could not remember contemporaneous events."[25]  They quote only two witnesses.  Cloonan, the first of the witnesses, was being asked to describe a vinyl head *that still exists* when she said, "[i]t's been too long."[26]  De Anda, the second witness, remarked that "ten years is a long time"

---

[23]  Dkt. No. 89 (Mattel's First Amended Complaint, dated November 20, 2006).
[24]  The MGA Parties' reliance on Chirco v. Crosswinds Cmtys., Inc., 474 F.3d 227, 235 (6th Cir. 2007), is puzzling.  The court there found that laches did **not** bar plaintiffs's claims even where plaintiffs were aware of the allegedly infringing development plans before construction began and did nothing for over eighteen months while "extensive construction . . . occurred."
[25]  Memo. at 9:10-13.
[26]  Proctor Dec. Ex. 15 (Cloonan Depo. Tr.), at 169:13-170:8.

- 9 -

in referring to the period of his Mattel employment, not the wrongdoing underlying Mattel's claims.[27]   These quotes do not establish the prejudice sufficient to reject otherwise valid claims.  "Conclusory statements that there are missing witnesses, that witnesses' memories have lessened, and that there is missing documentary evidence, are not sufficient to establish evidentiary prejudice."  <u>adidas-America, Inc. v. Payless Shoesource, Inc.</u>, 546 F. Supp. 2d 1029, 1072 (D. Or. 2008) (citations omitted).

The MGA Parties also aver that "internal Mattel emails . . . from 1998 through 2005 were destroyed."[28]  The Court has rejected this assertion of prejudice.  In ruling on MGA's motion for terminating sanctions, the Court found there was never any intentional destruction by Mattel and that, as of November 2003, when Mattel's infringement claim against MGA accrued, Mattel made  reasonable efforts to  retain potentially relevant emails.[29]  Any subsequent "delay" by Mattel in filing could not have caused "lost" evidence since, once the claims accrued, relevant evidence was *preserved*. As noted by the Court, emails from earlier time periods were deleted in the ordinary course as a result of Mattel's reasonable, 90-day email retention policy.[30]   To show relevant prejudice, then, MGA would have to establish that Mattel knew of its claims within 90 days of Bryant's departure from Mattel in October 2000 (or even earlier). MGA has no such evidence.  Moreover, the MGA Parties can hardly complain that Mattel did not preserve emails during the earlier period when Mattel did not even know of its potential claims because of MGA's own fraudulent concealment.

## 2.   <u>There Was No Expectations-Based Prejudice</u>

To show expectations-based prejudice, the MGA Parties must prove they "took actions or suffered consequences that [they] would not have, had the plaintiff brought suit promptly."  <u>Grand Canyon Trust</u>, 391 F.3d at 988; <u>cf.</u> <u>TV Interactive Data Corp. v.</u>

---

[27]  Proctor Dec. Ex. 16 (De Anda Depo. Tr.), at 151:15-152:6.
[28]  Memo. at 9:8-10.
[29]   <u>See</u> Proctor Dec. Ex. 17 (Aug. 27, 2007 Order Denying Motion for Terminating Sanctions), at 3; Ex. 18 (August 27, 2007 Hearing Tr.), at 83:17-84:23 (testimony from M. Moore describing preservation efforts undertaken by Mattel beginning in November 2003).
[30]   Proctor Dec. Ex. 17 (Aug. 27, 2007 Order), at 3.

- 10 -

Microsoft Corp., 2005 WL 2277121, *2 (N.D. Cal. Sept. 19, 2005) ("A nexus must be shown between the patentee's delay in filing suit and the expenditures; the alleged infringer must change his position 'because of and as a result of the delay'"). Defendants present no evidence that they would have done anything differently had Mattel filed its claims against them sooner. The evidence is to the contrary. Defendants *immediately* proceeded to produce and market Bratz dolls after Bryant assigned Bratz to MGA in the fall of 2000, showing the Bratz doll concept to retailers by November and starting the production process even before Bryant resigned from Mattel,[31] and they have not changed course since then. When MGA intervened as a party-defendant in 2004 -- proclaiming that "its substantial interest in the 'Bratz' property [was] at stake"[32] as a result of Mattel's "copyright claim in disguise"[33] -- MGA *continued* its infringement. Indeed, MGA claims to have spent more money on product development relating to Bratz in 2005, after it had intervened as a defendant, than in any prior year.[34] Defendants continue to this very day to market Bratz products that infringe Mattel's copyrights, undeterred even by the jury's verdict of infringement. The MGA Parties have not proven, and cannot prove, that they took steps they would not have taken because of Mattel's alleged delays. See, e.g., Dimension One Spas, 2008 WL 4165034 at *16 (laches and estoppel failed where defendant failed to produce evidence showing it would have acted differently had plaintiff filed suit earlier); Pac. Hills Homeowners Ass'n v. Prun, 160 Cal. App. 4th 1557, 1565 (2008) (no prejudice from plaintiff's delay in enforcing setback where defendants began construction prior to even seeking approval).

Nor did they suffer any adverse consequences as a result of Mattel's alleged delay. Even taking into account their claimed $1.7 billion in costs, defendants' own expert

---

[31]  Proctor Dec. Ex. 19 (Trial Ex. 1103 (Bratz Production Schedule)); Trial Tr. at 717:16-724:23; 726:9-18; 950:6-9.

[32]  Proctor Dec. Ex. 10 (MGA's Joinder in Opposition to Remand), at 1:6-8.

[33]  Proctor Dec. Ex. 11 (MGA's Answer in Intervention to Plaintiff's Unverified Complaint), at 1:24-25 ("Mattels' purported conversion claim is nothing more than a copyright claim in disguise.").

[34]  Memo. at 7:13-15.

MATTEL, INC.'S RESPONSE TO MGA PARTIES' STATEMENT OF POSITION REGARDING PHASE 1C ISSUES

07209/2666930.1

1   concluded that they *profited* by over $500 million in pre-tax dollars from Bratz from

2   2001 through 2006: approximately $4.1 million in 2001, $66.97 million in 2002, $182.95

3   million in 2003, $102.5 million in 2004, $63 million in 2005 and $117 million in 2006.[35]

4   In 2007 -- after Mattel had amended its pleadings to assert claims against MGA for

5   copyright infringement -- MGA continued to produce its infringing products and made

6   millions in profits.[36]  If anything, any delays by Mattel allowed the MGA Parties to

7   benefit by recouping their investment and further profiting from their wrongdoing.  That

8   is fatal to any claim of prejudice.  See, e.g., Grand Canyon Trust,  391 F.3d at 988-89 (no

9   prejudice where "delay worked to the benefit of [defendant] because it allowed [it] the

10  opportunity to recover some or all of its investment . . . before this suit was filed"); Field

11  v. Bank of Am. Nat'l Trust & Sav. Ass'n, 100 Cal. App. 2d 311, 314 (1950) (no prejudice

12  where bank "benefited" from inactivity because "trustee's fees . . . accrued to it by reason

13  of [plaintiff's] delay").

14       For all of the foregoing reasons, the Court should reject MGA's laches defense.

15  **II.    EQUITABLE ESTOPPEL DOES NOT APPLY**

16       The MGA Parties' equitable estoppel defense rehashes their laches defense and

17  likewise fails.  They claim that Mattel is estopped from pursuing claims against them

18  because they "reasonably concluded that Mattel did not seek to assert any claims against

19  [them], unaware of Mattel's intention to delay its suit. . . ."[37]  The MGA Parties have no

20  evidence to support this defense.

21       The doctrine of equitable estoppel holds that "a person may not deny the existence

22  of a state of facts if he intentionally led another to believe a particular circumstance to be

23  true and to rely upon such belief to his detriment."  Strong v. Co. of Santa Cruz, 15 Cal.

24  3d 720, 725 (1975).  There are four elements to estoppel:  "(1) the party to be estopped

25

---

26       [35]  Proctor Dec. Ex. 20 (Trial Ex. 13861-011 (Meyer Supp'l Report)); Trial Tr. at 7775:13-
     16; 7778:22-24; 7779:7-19; 7780:11-14 (Meyer testimony confirming Bratz profits figures
27  contained in Meyer Supp'l Report).
         [36]  Proctor Dec. Ex. 20 (Trial Ex. 13861-0011); Trial Tr. at 7780:19-21.
28       [37]  Memo. at 10:8-11.

must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." Id.; see also Am. Cas. Co. of Reading, Pa. v. Baker, 22 F.3d 880, 891-892 (9th Cir. 1994).  The failure to prove any one of these elements is fatal to the defense.  See Hair v. State of Cal., 2 Cal. App. 4th 321, 328 (1991) ("Where any one of the elements of equitable estoppel is absent, the claim must fail.").  Defendants cannot prove any of them here.

First, for estoppel to apply, Mattel must have known of MGA's misconduct. Mattel, however, was not "apprised of the facts."  Mattel was not aware of the wrongdoing by Bryant or the MGA Parties until mid- to late-2003 at the earliest, as the Court has held.  (See Section I.A.2., supra.)  Absent knowledge of the facts, which Mattel did not have because MGA fraudulently concealed them, there can be no estoppel.  See, e.g., Wells Fargo, 32 Cal. App. 4th at 438 (plaintiff not estopped from enforcing contractual clause against bank where plaintiff was "ignorant of the bank's purchase of the lease until after the transaction had been completed"); City and Co. of San Francisco v. Grant Co., 181 Cal. App. 3d 1085 (1986) (Government not estopped from enforcing handicap access requirements where it "was not apprised of the fact of the remodeling of the restaurant").

Second, estoppel can be invoked only where a party "intentionally led another to believe a particular circumstance to be true." Strong, 15 Cal. 3d at 725; see also Novell, Inc. v. Weird Stuff, Inc., 0094 WL 16458729, *13 (N.D. Cal. 1993) ("Estoppel arises only when a party's conduct misleads another to believe that a right will not be enforced").  The MGA Parties claim that after learning of Mattel's lawsuit against Bryant in April 2004, they supposedly "concluded that Mattel did not seek to assert any claims against the MGA Parties"[38] and purportedly "reli[ed] on Mattel's silence" in "pour[ing]

---

[38]   Memo. at 10:4-11.

1  millions of dollars into developing the Bratz brand and product lines."[39]  MGA's actions

2  belie those representations.   MGA soon intervened as a party-defendant in the very

3  lawsuit they claim to have been lulled by and indeed intervened expressly because "its

4  substantial interest in the 'Bratz' property [was] at stake" as a result of what it described

5  as Mattel's "disguised" copyright infringement claims.[40]   Mattel subsequently filed

6  timely claims against the MGA Parties within months of the Court's lifting of the one-

7  year stay.[41]  Defendants also present no evidence that Mattel made any representation or

8  acted in any way to lead them to believe Mattel would not enforce its rights.   Indeed,

9  Defendants' argument substantially repeats contentions they made -- and lost -- in

10  arguing against Mattel's motion for leave to file its Second Amended Complaint.[42]

11      Third, the MGA Parties were not "ignorant of the true facts."  The jury found just

12  the opposite -- that MGA actually took affirmative steps to conceal the true facts from

13  Mattel.[43]   And, as early as December 2004, MGA itself claimed that Mattel was

14  attempting to pursue copyright infringement claims relating to Bratz.[44]

15      Finally, the MGA Parties cannot establish detrimental reliance.  They knew Bryant

16  was a Mattel employee when he presented and then purported to assign Bratz to them.[45]

17  They also knew Mattel would own any works created by an employee during the term of

18  employment.[46]  They believed Mattel to be litigious.[47]  They were "fully aware of the

19

20  [39]  Memo. at 10:11-13.
    [40]  Proctor Dec. Ex. 10 (MGA's Opposition to Remand), at 1:6-8; 6:14-16; Ex. 11 (MGA's

21  Answer in Intervention to Plaintiff's Unverified Complaint), at 1:24-25.   The Court also observed that "a copyright claim" was "always lurking in [Mattel's] original complaint" against

22  Bryant. Id. Ex. 12 (Order Re Mattel's Motion for Leave to Amend, dated January 11, 2007), at 4:23-24.
    [41]  Proctor Dec., Exs. 13 and 14 (Minute Orders, dated May 20, 2005 and May 16, 2006);

23  Dkt. No. 89 (Mattel's First Amended Complaint, dated November 20, 2006).
    [42]  Proctor Dec., Ex. 30 (Order Regarding Mattel's Motion for Leave to Amend, dated

24  January 11, 2007).
    [43]  Proctor Dec. Ex. 3 (Phase B Verdict Form As Given), at 8; Ex. 4 (Court's Phase B Jury

25  Instructions As Given), at 39 (Jury Instruction No. 35).
    [44]  Proctor Dec. Ex. 10 (MGA's Opposition to Remand), at 6:14-16 (describing Mattel's

26  claims against Bryant as "Disguised Copyright Infringement Claims"); Ex. 11 (MGA's Answer in Intervention to Plaintiff's Unverified Complaint), at 1:24-25.

27  [45]  See Trial Tr. at 1676:4-9, 1702:7-10 (I. Larian testimony).
    [46]  See Trial Tr. at 1700:25-1703:10 (I. Larian testimony); see also Trial Tr. at 1679:23-

28  1680:8.

1  risk" that Mattel would take legal action against them, and had no reasonable basis for

2  assuming that Mattel would not do so.  Wells Fargo, 32 Cal. App. 4th at 438 (no estoppel

3  where bank knew contract might be enforced); see adidas-America, 546 F. Supp. 2d at

4  1075 (no estoppel where evidence did not show that "adidas' failure to act *caused* Payless

5  to sell potentially infringing footwear" or that defendant "actually relied on adidas'

6  alleged inaction") (italics in original); Three Sixty Five Club v. Shostak, 104 Cal. App.

7  2d 735 (1951) (estoppel defense not available where party's reliance "unreasonable").

8  Moreover, defendants made millions of dollars from Bratz while purportedly "relying"

9  on Mattel's inaction by "pour[ing] millions of dollars into" Bratz.  Pouring money into a

10  product to make even more is not injury.  See Wells Fargo, 32 Cal. App. 4th at 438 (no

11  injury where bank obtained "a financial windfall").[48]

12  ### III.   THE WAIVER DEFENSE FAILS

13       In order to prevail on their waiver defense, the MGA Parties must prove, by clear

14  and convincing evidence, that Mattel *intentionally* relinquished *known* rights under the

15  Inventions Agreement with Bryant.  See U.S. v. King Features Entm't, Inc., 843 F.2d

16  394, 399 (9th Cir. 1988) ("Waiver is the intentional relinquishment of a known right with

17  knowledge of its existence and the intent to relinquish it") (citation omitted); see also

18  CACI No. 336 (defendant must prove plaintiff "freely and knowingly gave up [its]

19  right[s]").  The MGA Parties cannot make the required showing.  While an express

20

21  [47]  See, e.g., Memo. at 8:28-9:2 (claiming that Mattel employs "litigation as a business
strategy"); Trial Tr. at 2028:11-13 (I. Larian:  "Mattel had sued literally anybody who got into
22  the fashion doll business."); Trial Tr. at 2216:22-2217:14 (I. Larian:  "It's published [] that
anybody who decides in the toy business to get into the fashion doll business, they have a target
23  painted on their back by Mattel.").

24  [48]  The cases cited by the MGA Parties do not aid them -- if anything, they highlight the
absence here of the kind of intentional conduct by Mattel that would justify a finding of
25  estoppel.  In HGI Assocs., Inc. v. Wetmore Printing Co., 427 F.3d 867, 875 (11th Cir. 2005),
the Eleventh Circuit found the doctrine of estoppel applicable based on the fact that the parties
26  to be estopped had (1) intentionally misled plaintiff regarding its purchase of software, and (2)
remained silent in the face of plaintiff's expressed belief (which they knew to be erroneous) that
27  it would not need a license.  Similarly, in Field v. Google Inc., 412 F. Supp. 2d 1106, 1117 (D.
Nev. 2006), the court found estoppel where a copyright owner knew in advance Google would
28  provide certain access to his website unless he instructed it otherwise, never instructed Google
otherwise, and then sued Google for copyright infringement.

07209/2666930.1

1   relinquishment of rights is not required, waiver can be implied only where conduct "is so

2   inconsistent with the intent to enforce the right in question as to induce a reasonable

3   belief that such right has been relinquished."  Rubin v. L.A. Fed. Sav. & Loan Ass'n, 159

4   Cal. App. 3d 292, 298 (1984).  "[D]oubtful cases will be decided against a waiver."  City

5   of Ukiah v. Fones, 64 Cal. 2d 104, 107-08 (1966).

6       **A.     Mattel Could Not Intentionally Waive Rights That It Did Not Know**

7               **It Had.**

8           "[W]aiver of an important right must be a voluntary and knowing act done with

9   sufficient awareness of the relevant circumstances and likely consequences."  Roberts v.

10  Superior Court, 9 Cal. 3d 330, 343 (1973) (citation omitted).  Thus, the MGA Parties

11  must prove that Mattel was aware of its rights with respect to Bryant's Bratz-related

12  works before it allegedly waived them.  See, e.g., Jones v. Brown, 13 Cal. App. 3d 513,

13  519 (1970) ("the valid waiver of a right presupposes an actual and demonstrable

14  knowledge of the very right being waived.").  But the jury found that MGA successfully

15  concealed the key facts from Mattel, and the Court found that Mattel did not have

16  knowledge of these facts until July 18, 2003 or November 23, 2003 at the earliest.[49]

17          By definition, if Mattel did not know of its rights in Bratz until July 2003 at the

18  earliest, then it could not have intended to waive its rights prior to that date.  A&M

19  Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1026 (9th Cir. 2001) (waiver of copyright

20  "occurs only if there is an intent by the copyright proprietor to surrender rights in his

21  work") (citing 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright

22  ¶13.06 (2000)); Rincon Center Assocs. v. Chrysler MacNally Corp., 1998 WL 410886,

23  at *4 (N.D. Cal. 1998) ("A waiver is valid only if it is a clear expression made with a full

24  knowledge of the facts and an intent to waive the right") (internal quotations omitted).

25  And  Mattel certainly did not waive its rights after that date.  Mattel sued Bryant within

---

26  [49]  See Proctor Dec. Ex. 3 (Phase B Verdict Form As Given), at 8; Ex. 4 (Court's Phase B
27  Jury Instructions As Given), at 39 (Jury Instruction No. 35); Proctor Dec. Ex. 21 (Court's Final
    Pretrial Conference Order for Phase 1 Trial, dated June 4, 2008 ("Final Pretrial Order")), at
28  5:22-28; 6:9-10.

months of learning of his potential wrongdoing.  Mattel's prompt assertion of claims against Bryant contradicts an alleged intent to waive its rights against him.  See adidas-America, 546 F. Supp. 2d at 1074 (no waiver absent evidence "of a 'clear, decisive and unequivocal' intent by adidas to relinquish . . . its trademark or trade dress rights"); In re Baldwin, 307 B.R. 251, 258, 270 (M.D. Ala. 2004) (plaintiff did not waive where he promptly filed after learning of factual basis for claims).

Moreover, even assuming (contrary to fact) Mattel delayed taking action against Bryant, a "failure to act, without more, is insufficient evidence of … [plaintiff's] intent to waive its right to claim infringement."  adidas-America, 546 F. Supp. 2d at 1074; see Novell Inc. v. Weird Stuff, Inc., 0094 WL 16458729, at *13 (no waiver even if plaintiff "failed to take preventive measures to stop 'dumpster diving'").  The MGA Parties do not cite any action by Mattel between July 2003 and April 2004 that is "so inconsistent with the intent to enforce [its] right" that waiver must be implied.  The defense fails.

## B.   The MGA Parties Seek to Circumvent the Court's Order That Only Comparable Instances of Moonlighting Could Be Relevant

The MGA Parties allege that "[d]espite the prevalence of employee moonlighting, Mattel did nothing to stop it,"[50] and claim this operates as a waiver.  They do not cite *any* authority, however, for the proposition that a third-party competitor may take advantage of an employer's purported waiver of contractual rights with respect to its employee -- let alone that a competitor may claim waiver based on the employer's supposed tolerance of breaches by *other* employees where it is undisputed that the employer never condoned the unlawful conduct by the particular employee at issue.  Compare Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F. Supp. 2d 1197, 1225 (C.D. Cal. 2007) ("The waiver analysis should ordinarily be limited to evaluating the conduct and/or communications that occur between a plaintiff and a defendant claiming the waiver defense."); Griggs v. Allstate Ins. Co., 1997 WL 1764777, *5  (S.D. Ohio 1997) ("The

---

[50]  Memo. at 12:14-15.

MATTEL, INC.'S RESPONSE TO MGA PARTIES' STATEMENT OF POSITION REGARDING PHASE 1C ISSUES

07209/2666930.1

1  Court has discovered a number of cases pertaining to illegal contracts.  Specifically,

2  these are cases considering whether a third party non-beneficiary to an agreement may

3  raise arguments of nonexistence or invalidity as to the agreement.  The courts have held

4  that the third party may not attack a contract's validity, even though the third party stands

5  to gain if the contract is declared illegal and unenforceable.") (collecting cases); F.D.I.C.

6  v. Duffy, 835 F. Supp. 307, 318 (E.D. La. 1993) (third party not in privity to a contract

7  lacks standing to argue that one of the parties to the contract waived its rights under the

8  contract).  Moreover, most of Mattel's claims are not even predicated solely on Bryant's

9  breaches of the Inventions Agreement, as to which MGA now claims waiver, but instead

10  are based on defendants' own acts of wrongdoing, which Mattel did not even allegedly

11  condone.  So-called "moonlighting" by Mattel employees other than Bryant is simply

12  irrelevant to Mattel's claims against the MGA Parties.

13       In any case, the evidence establishes that far from being tolerated, it was

14  understood at Mattel that working for a competitor such as MGA was far from tolerated,

15  but rather was grounds for termination.  For example, Bryant  admitted he had no reason

16  to believe Mattel would permit him to work for a competitor while at Mattel, and knew

17  that to do so would be dishonest.  He also could not identify a single Mattel employee

18  who moonlighted, except to say that it was a "rumor."[51]  Peter Marlow informed Larian

19  in writing that "[i]f they [*i.e.*, the moonlighting employees] were ever discovered, they'd

20  certainly be [] fired."[52]  Similarly, Margaret Leahy testified, "I knew I could lose my job

21  over it [*i.e.*, moonlighting].  I didn't believe that my contract authorized me to do that."[53]

22       The MGA Parties cite the testimony of four witnesses to show the prevalence of

23  alleged "moonlighting," all of which are easily disposed of.  Contrary to MGA's claims,

24  Richard de Anda had written approval for his non-Mattel work, and this work was done

25  in his capacity as a private investigator—hardly a business competitive with Mattel.[54]

---

[51]  Trial Tr., at 2435:19-25, 2436:16-23; 3084:20-3086:19; 3722:19-3723:7.
[52]  Proctor Dec. Ex. 22 (Trial Ex. 13223); Trial Tr. 1832:17-23, 1836:1-9.
[53]  Trial Tr. at 4124:23-4125:24.
[54]  Proctor Dec. Ex. 23 (Declaration of Richard de Anda, dated February 7, 2008).

MATTEL, INC.'S RESPONSE TO MGA PARTIES' STATEMENT OF POSITION REGARDING PHASE 1C ISSUES

Margaret Leahy testified that she knew her non-Mattel work was not authorized, and the Court excluded her testimony as a result.[55]  Veronica Marlow could not name a single Mattel employee who worked for a competitor—with the exception of Cabrera, Morales, and Salazar, who were immediately terminated upon discovery—and thus her implausible testimony that it was "common knowledge" that people were moonlighting is baseless and inadmissible.[56]  And most egregiously, although MGA claims that Elise Cloonan -- a friend of Carter Bryant -- named over fifty Mattel employees who were moonlighting, she in fact testified that she could not name a *single* Mattel employee who worked for a competitor.[57]  She testified only that she had supposedly discussed the *topic* of so-called moonlighting with those other employees.[58]

The Court has already rule that such dissimilar "evidence" of purported moonlighting is irrelevant and inadmissible:  "I'm not going to permit someone to just get up and say, 'Oh, Yeah.  I heard hearsay rumors that there's lots of moonlighting going on over at Mattel.'  That's not going to fly.  *It's got to be a specific incident of apples and apples that a person, in a position like Carter Bryant, is moonlighting for a company, either MGA itself or like MGA, without getting permission.*"[59]  The MGA Parties ignore this ruling.  Their examples of purported moonlighting do not constitute an "apples to apples" comparison.  Bryant's job at Mattel was designing dolls; he breached the Inventions Agreement by performing secret, "top priority" doll design work for MGA.[60]

---

[55]   Trial Tr. at 4124:18-4125:7.

[56]   Proctor Dec. Ex. 24  (Marlow Depo. Tr., dated December 28, 2007), at 49:12-51:8; 54:2-55:14.

[57]    Proctor Dec. Ex. 15 (Cloonan Depo. Tr., dated December 14, 2007), at 100:12-15; 104:10-105:16.

[58]   Id. at 102:12-104:9.  Much of the evidence cited by the MGA Parties is inadmissible.  For instance, rumors about moonlighting are inadmissible hearsay.  Nor do the MGA Parties introduce any evidence that the Mattel employees at issue have the requisite foundation to testify about other employees' alleged moonlighting.  Mattel is filing concurrently herewith its objections to the evidence cited by the MGA Parties.

[59]   Trial Tr. at 44:23-45:6 (emphasis added); see also Proctor Dec. Ex. 21 (Final Pretrial Order), at 15:13-16  ("Evidence is admissible only if such other employees are analogous to Bryant.").

[60]   Declaration of Cyrus S. Naim dated September 29, 2008 ("Naim Dec."), Ex. 3 (Trial Ex. 15) (Bryant-MGA Agreement, dated 09/18/00, in which Bryant agrees "to provide his serves on a '*top priority*' basis.") (emphasis added).

MATTEL, INC.'S RESPONSE TO MGA PARTIES' STATEMENT OF POSITION REGARDING PHASE 1C ISSUES

None of the employees cited by the MGA Parties was "in a position like Carter Bryant," designing dolls for Mattel and moonlighting as a doll designer for MGA or any similar competitor.  In none of the episodes did Mattel discover an employee's secretive work for a competitor, only to take no action.

In any case, even if defendants' argument were factually grounded (and it is not), and even if MGA, a third-party competitor, could assert a waiver on behalf of Mattel's employees (and it cannot), the argument still fails under the law.  A plaintiff need not choose between pursuing all offenders or none.  See Emerson Electric Co. v. Rogers, 418 F.3d 841, 845 (8th Cir. 2005) ("While [employer] may not have exercised its rights under the covenant on every occasion, there is no credible evidence that [its] failure to do so rose to a waiver of its right to enforce the agreement as to [the defendant employee] or that its failure to enforce the agreement as to other employees makes it any less likely that [defendant] could use information gained during his relationship with [the employer] to unfairly compete against it."); adidas-America, 546 F. Supp. 2d at 1074 ("Payless neither cites, nor is the court aware of any authority to support the proposition that adidas waived its trademark rights against Payless simply by agreeing not to sue K-Swiss or its licensees for using four stripes on shoes."); Deal v. Consumer Programs, Inc., 458 F. Supp. 2d 970, 978 n.5 (E.D. Mo. 2005) (employer's alleged non-enforcement of contractual provision against first executive does not operate as a waiver of that provision against second executive because second executive was not a party to employer's contract with first executive); Lone Mountain Production Co. v. Natural Gas Pipeline Co. of America, 710 F. Supp. 305, 311 (D. Utah 1989) ("Of course, the fact that a party has not enforced a provision in another contract on a previous occasion does not grant the other party a license to ignore that provision in subsequent contracts."); Pochopien v. Marshall, O'Toole, Gerstein, Murray & Borun, 315 Ill. App. 3d 329, 339 (Ill. App. 2000) ("The non-enforcement of a provision as to previous employees in different situations is insufficient to constitute waiver as to a subsequent employee."). The MGA Parties cannot establish that Mattel knowingly intended to waive its rights to

MATTEL, INC.'S RESPONSE TO MGA PARTIES' STATEMENT OF POSITION REGARDING PHASE 1C ISSUES

1   Bryant's drawings or to allow Bryant's and MGA's illicit conduct by tolerating
2   moonlighting by other employees, even assuming comparable instances were shown.

3   **C.      The Inventions Agreement Defeats Any Waiver**

4       Defendants' waiver defense is unavailing for additional reasons.  By signing the
5   Inventions Agreement, Bryant agreed that "obligations under this Agreement may not be
6   modified or terminated, in whole or in part, except in writing signed by a Vice-President
7   of the Company."[61]  It is undisputed that no authorized Mattel executive ever provided
8   Bryant or any of the Defendants with written consent to Bryant's assignment of Bratz to
9   MGA, or permitted Bryant to work for MGA while still employed by Mattel.   See, e.g.,
10  Westfed Holdings, Inc. v. U.S., 407 F.3d 1352, 1361 (Fed. Cir. 2005) (applying non-
11  waiver clause under California law); Coast Federal Bank, FSB v. U.S., 48 Fed. Cl. 402,
12  418 (2000) ("Absent controlling federal contract law deeming the nonwaiver clause
13  unenforceable, the court follows the express terms of the parties' contract and, consistent
14  with California law, applies the clause"); see also Long Island Sav. Bank, FSB v. U.S.,
15  503 F.3d 1234, 1252-53 (Fed. Cir. 2007) (existence of non-waiver clauses was
16  "important fact[]" militating against  waiver); Secs. and Exchange Comm'n v. Lincoln
17  Thrift Ass'n, 557 F.2d 1274, 1278 (9th Cir. 1977) (same); GNG XI, Inc. v. Quixoti
18  Corp., 651 F. Supp. 68, 72 (E.D.Mo. 1986) (rejecting implied waiver defense where
19  contract required written waiver); Posey v. Leavitt, 229 Cal. App. 3d 1236, 1248 n. 11
20  (1991) (rejecting "course of dealing" argument in light of nonwaiver clause).

21      The MGA Parties' argument also fails because the Inventions Agreement provides
22  that "[a]ny waiver by the Company of a breach of any provision of this Agreement will
23  not operate or be construed as a waiver of any subsequent breach."[62]  Therefore, even if
24  Defendants could prove that Mattel tolerated breaches of the Inventions Agreement by
25  other employees -- and defendants present no admissible evidence to support this
26  allegation either -- that is irrelevant because any such alleged inaction would "not

---

[61]  Naim Dec. Ex. 1 (Trial Ex. 25 (Inventions Agreement)), at ¶ 4(a).
[62]  Id.

1    operate or be construed as a waiver of any subsequent breach" by Bryant.  See  12 Am.

2    Jur. Contracts § 635 ("a provision in a contract, stating that the waiver of any of the

3    rights granted in the contract does not constitute a permanent waiver, precludes a waiver

4    from resulting in the loss of contract rights with regard to subsequent performances.").

5         The Court should reject the MGA Parties' waiver defense.

6    **IV.   NONE OF THE MGA PARTIES' ARGUMENTS DEFEATS THE**

7           **DECLARATORY RELIEF MATTEL SEEKS**

8         Based on nothing more than speculation about the relief that Mattel had not even

9    yet sought when they filed this motion, the MGA Parties argue that Mattel's claim for

10   declaratory relief "must fail" because the jury's copyright verdict somehow bars any

11   claim by Mattel to "Bratz dolls."  However, Mattel's declaratory relief claim does not

12   seek a declaration that Mattel owns the "Bratz dolls."  Instead, as set forth in Mattel's

13   Motion for Declaratory Judgment of Ownership of Bratz Works (Docket No. 4303),

14   Mattel seeks a declaration that it owns the Bratz-related inventions that the jury found

15   that Carter Bryant conceived and created while employed by Mattel.[63]  The Court has

16   ruled as a matter of law that Mattel owns all such inventions, "including any designs,

17   improvements, ideas, concepts, and copyrightable matter," pursuant to the Inventions

18   Agreement.[64]  Accordingly, as MGA concedes, the jury's verdict regarding these Bratz-

19   related inventions compels the declaration Mattel now seeks.  See  Los Angeles Police

20   Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (trial court required to

21   follow factual determinations made by jury); Floyd v. Laws, 929 F.2d 1390, 1397 (9th

22   Cir. 1991); Miller v. Fairchild Indus., Inc., 885 F.2d 498, 507 (9th Cir. 1989).

23        Nor is a declaration preempted by copyright law.  Indeed, even as to the

24   copyrights themselves, it is well established that claims regarding ownership of rights in

25

26   [63]  The motion also seeks a declaration that such works and MGA's copyright registrations in the Bratz works are subject to a constructive trust in favor of Mattel.

27   [64]  Order Granting in Part, Denying in Part, and Deferring in Part The Parties' Motions for Partial Summary Judgment, dated April 25, 2008, Naim Dec. Exh. 2.  See also Phase B Jury

28   Instructions As Given, Instruction Nos. 20 and 22, Naim Dec., Exh. 5.

07209/2666930.1

a work are not preempted.  T.B. Harms Co. v. Eliscu, 339 F.2d 823, 825 (2d Cir. 1964) (claim for declaration of ownership of copyright did not arise under Copyright Act); see also Scholastic Entertainment, Inc., v. Fox Entertainment Group, Inc., 336 F.3d 982, 986 (9th Cir. 2003) (stating that the "Ninth Circuit follows the majority rule as outlined in T.B. Harms" and holding that questions of ownership of copyright do not arise under Copyright Act); Dolch v. United California Bank, 702 F.2d 178, 180 (9th Cir. 1983) (declaration of ownership of copyright under assignment contract was matter of state law); Durgom v. Janowiak, 74 Cal. App. 4th 178, 180 (Cal. Ct. App. 1999) ("State courts are fully competent to adjudicate state-law breach of contract claims, even where the underlying contract involves the ownership, assignment, or license of a copyright . . . ."); 5 PATRY ON COPYRIGHT § 18:25 ("A classic example of a dispute not arising under the Copyright Act is a contract to assign title to a work.").

The MGA Parties also argue that Mattel is not entitled to a declaration regarding the "Bratz" name because names are not copyrightable and Bryant had no trademark rights to assign.  Mattel is not seeking a declaration that it has a copyright in the Bratz name.  Rather, under the Court's rulings, Mattel seeks a declaration that it owns the Bratz-related inventions which the jury found Carter Bryant conceived and created while employed by Mattel, including the name "Bratz."[65]  It also seeks seek a constructive trust over the Bratz trademark as an equitable remedy in connection with its state law tort claims, as set forth in Mattel's Motion For Constructive Trust and Finding of Liability and Injunctive Relief under Cal. Bus. & Prof. Code § 17200 (Docket No. 4305).

## V.      NONE OF THE MGA PARTIES' ARGUMENTS DEFEATS THE RELIEF MATTEL SEEKS FOR UNFAIR COMPETITION

As with Mattel's claim for declaratory relief, the MGA Parties devote virtually the entirety of their brief regarding Mattel's claim under California's Unfair Competition Law ("UCL") to arguing against relief that Mattel does not seek.  The relief Mattel does

---

[65]  Final Verdict Form as Given, dated July 17, 2008, Question No. 5, Naim Dec., Exh. 4.

07209/2666930.1

1  seek -- an injunction to prevent the MGA Parties from continuing to use names it stole --

2  and the basis for that relief are set forth in Mattel's Motion for Finding of Liability and

3  Injunctive Relief Under <u>Cal. Bus. & Prof. Code</u> § 17200.  (Docket No. 4305.)  Mattel

4  will not burden the Court by repeating the substance of its motion here, but will briefly

5  point out why the arguments the MGA Parties make have no application to it.

6      The MGA Parties argue that Mattel's UCL claim is "preempted to the extent it is

7  based on copyright infringement vis-a-vis Mattel's rights in BRATZ."[66]  Mattel's UCL

8  claim is not based on copyright infringement.  Rather, as set forth in Mattel's motion,

9  Mattel's UCL claim is based on, among other things, underlying tort claims that the

10 Court previously ruled are not preempted and on which the jury found in Mattel's favor.[67]

11     The MGA Parties also argue that Mattel has somehow conceded it cannot satisfy

12 the injury in fact requirement for UCL standing because the monetary damages it sought

13 in Phase 1B were based on MGA's profits rather than "damages for its own injury."[68]

14 This argument has no merit and is contrary to the jury's verdict.  That Mattel sought

15 damages in Phase 1B in the form of MGA's profits does not mean that Mattel suffered no

16 harm as a result of the MGA Parties' tortious conduct.  Indeed, "harm" to Mattel was an

17 element of each of Mattel's underlying state law tort claims.[69]  The jury ruled in Mattel's

18 favor on each and every one of those claims.[70]  In any event, Mattel is seeking an

19 injunction to prevent the MGA Parties' continuing use of the names "Bratz" and "Jade"

20 which the MGA Parties stole from and used to compete unfairly with Mattel.  As set

21 forth in Mattel's motion, Mattel certainly is entitled to pursue such relief.

22

23

---

24  [66]  Memo. at 18:6-8.
    [67]  Mattel's UCL claim is also based on underlying unlawful conduct that is still at issue
25  including, without limitation, misappropriation of trade secrets in violation of 18 U.S.C. §
    1832(a).  <u>See</u> Second Amended Answer and Counterclaims, Dkt. No. 635, at ¶¶ 163-165.  That
26  aspect of Mattel's UCL claim remains to be decided in a subsequent phase of this lawsuit.
    [68]  Memo. at 19:17-26.
27  [69]  Phase 1A Final Jury Instructions as Given, Instruction Nos. 22, 25-27 and 29, attached to
    the Declaration of Scott B. Kidman dated September 29, 2008 ("Kidman Dec."), Ex. E.
28  [70]  Phase 1A Verdict, Question Nos. 7-15, Kidman Dec., Ex. A.

MATTEL, INC.'S RESPONSE TO MGA PARTIES' STATEMENT OF POSITION REGARDING PHASE 1C
ISSUES

07209/2666930.1

1    The MGA Parties further argue that Mattel is not entitled to monetary relief
2 because "monetary relief available under the UCL is limited to restitutionary relief" and
3 Mattel has not demonstrated that it is entitled to any such restitutionary relief.[71]  This
4 argument has no relevance for the simple reason that Mattel is not seeking monetary
5 relief in connection with its UCL claim at this time in phase 1.[72]

6                                        **Conclusion**

7    The Court should reject MGA's phase 1(c) arguments in their entirety.

8 DATED:  October 13, 2008             QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
9
10                                     By /s/ John Quinn
                                          John B. Quinn
11                                        Attorneys for Mattel, Inc.

12

13 _____
     [71] Memo. at 20-23.
14   [72] The MGA Parties do not even mention their Section 205(d) defense, apparently
   abandoning it.  In any case, it fails on the merits.  Section 205(d) of the Copyright Act provides
15 that where there are competing transfers of a copyright (such as the Mattel Inventions
   Agreement and the MGA-Bryant agreement), a prior transferee such as Mattel here prevails and
16 has priority unless the later purported transferee (here, MGA) **both** (1) took in good faith and
   without notice of the earlier transfer **and** (2) recorded its transfer document first.  See 17 U.S.C.
17 § 205(d).  Neither requirement is met here.
     It is undisputed that Mattel recorded its transfer document (the Inventions Agreement)
18 before MGA recorded its transfer of copyright from Bryant (the MGA-Bryant agreement).
   Compare Proctor Dec., Ex. 28 (Mattel registration dated November 6, 2006) with Proctor Dec.,
19 Ex. 29 (MGA Entertainment, Inc.'s Second Supp. Responses to Mattel, Inc.'s Third Set of
   Requests for Admission, dated July 23, 2007), at Responses 241-244 (MGA admissions that it
20 had not recorded).  This is dispositive under the statutory scheme.  See 17 U.S.C. § 205(d) (later
   transfer can prevail only if it is recorded first).  Although MGA previously relied on copyright
21 registration forms for five Bryant drawings that mention an "assignment" from Bryant (see
   Naim Dec. Exs. 10-14 (Trial Exs. 505, 507, 509, 511 and 513)), "**a registration is not a**
22 **substitute for recordation [of transfer]**."  Compendium II; Copyright Office Practices,
   §1604.02 (emphasis in the original); Batjac Prods. Inc. v. GoodTimes Home Video Corp., 160
23 F.3d 1223, 1230 (9th Cir. 1998) (according deference to the Compendium); NIMMER ON
   COPYRIGHT § 7.16[E] (2007) ("there is constructive notice only after registration of the work
24 (**as well as recordation of the [transfer] document**) has occurred.") (emphasis added).
   Moreover, a valid transfer document requires "the actual signature of the person who executed
25 it," Compendium II, Copyright Office Practices, §1602.2.  Here, it is undisputed that Bryant's
   signature does not appear on MGA's registrations and that MGA only registered 5 of the dozens
26 of drawings the jury found Mattel owns and MGA infringed.
     The second requirement is not satisfied either.  MGA did not take in "good faith": the jury
27 found that MGA engaged in fraudulent concealment, intentionally interfered with Mattel's
   contract with Bryant, and aided and abetted Bryant's violations of his duties to Mattel.  MGA
28 was not a bona-fide purchaser, but an intentional tortfeasor.

MATTEL, INC.'S RESPONSE TO MGA PARTIES' STATEMENT OF POSITION REGARDING PHASE 1C ISSUES

07209/2666930.1