# EXHIBIT 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES – GENERAL

Case No.    CV 04-09049 SGL(RNBx)                      Date: May 27, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx): MATTEL, INC., v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
================================================================================
PRESENT: HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Gina Guzman
          Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:          ATTORNEYS PRESENT FOR MATTEL:

None Present                                  None Present

ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

PROCEEDINGS:    ORDER RE STATUTE OF LIMITATIONS DEFENSE

        Each of the remaining parties to this action, Mattel and MGA, seek summary judgment on the issue of statute of limitations. Crucial to resolution of this issue, is application of California's "discovery rule," which can delay the accrual of a claim. Both parties have offered evidence in support of their positions.[1] For its part, Mattel contends that its claims against Carter Bryant arose on November 24, 2003, and that its claims against the MGA entities, including MGA CEO Isaac Larian, arose on November 4, 2004, the date of Carter Bryant's deposition, at which he testified regarding MGA and Larian's involvement in his actions.

_____

    [1] Although he is no longer a party, the Court discusses at length the timeliness of the claims asserted against Carter Bryant because it is relevant to the Court's relation-back analysis of the claims asserted against MGA.

MINUTES FORM 90
CIVIL -- GEN                        Page 1                    Initials of Deputy Clerk: gg
                                                              Time: 0/00

5/27    EXHIBIT ___1___
        PAGE ___4___

At oral argument and in its briefs, MGA argues at length that Mattel's claims against Bryant accrued some time shortly after Bryant left Mattel's employ in October, 2000. In support of this argument, MGA offered evidence that Mattel has always believed that it took nine months to bring a doll through the stages of development and to market. From that knowledge, in MGA's view, the sudden appearance of the Bratz dolls at a toy fair in Tokyo in January, 2001, should have aroused their suspicions.

MGA cites to the deposition of Bryant's co-worker, who had suspicions at the time Bryant resigned that Bryant was going to work for a competitor based on her subjective belief that Bryant would not pursue any other vocation other than doll designer.

MGA contends that Mattel could have looked at Bryant's phone records and determined that he had called MGA a number of times during the month pre-dating his resignation.

There is evidence that one of Bryant's co-workers believed it was "common knowledge," sometime in 2001, that Bryant probably designed Bratz.

The undisputed facts establish that in August, 2002, an anonymous letter was sent to Mattel's CEO stating that Bryant had designed Bratz. This letter is the first indication that Bryant may have worked on Bratz during the period of his employment with Mattel. See Zeller Decl. Ex. 63 ("While he was working with Mattel and working to create these dolls he worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls and the fact that they are rightly Mattel dolls.").

The undisputed facts also establish that on July 18, 2003, the Wall Street Journal published an article entitled "Dolled Up: To Lure Older Girls, Mattel Brings In Hip-Hop Crowd." In that article, MGA's CEO Isaac Larian is attributed with a statement that Carter Bryant was the creator of Bratz. The article states:

> Isaac Larian, chief executive of MGA, says he had never heard of a project similar to the Bratz at Mattel. He says he chose Mr. Bryant's idea for Bryant over several others after holding a sort of fashion-doll design contest in late 1999.

Zeller Decl. Ex. 118.

At the close of the second hearing, held on May 19, 2008, MGA offered, for the first time, evidence in the form of a time line that showed that a "claim" from a lawsuit filed in Hong Kong by MGA was received by Mattel on September 23, 2003. See Bogorad Supp. Decl. Ex. 145. A copy of court documents from that litigation shows that MGA claimed ownership of Bratz fashion dolls and that, more specifically, at issue were "17 design drawings of various fashion dolls between the years 1998 and 2000." Id. at Ex. 143. Exhibit 143 is a ten-page document captioned as "STATEMENT OF CLAIM" and appears to the Court to be, under Hong Kong law, the equivalent of a complaint. MGA's ownership to the 17 drawings referenced in the "STATEMENT OF CLAIM"

MINUTES FORM 90                                                    Initials of Deputy Clerk: gg
CIVIL -- GEN                              Page 2                    Time: 0/00

EXHIBIT ____I____

PAGE____5____

was based on Bryant's creation of the design drawings during a time period that includes his employment at Mattel. Id.

Also at this time, MGA offered a letter, dated October 17, 2003, from Mattel's Hong Kong counsel to Mattel, that discusses the propriety of providing to Mattel certain documents relating to the City World litigation. Within this letter, certain key details of the "STATEMENT OF CLAIM" were referenced. See Supp. Bogorad Ex. 146 ("One of the exhibits referred to in such Affirmation was a set of coloured drawings described as '17 initial concept and design drawings of the Bratz dolls made by Mr. Carter Bryant in the year 2000.'").

After being given an opportunity to respond to this last-minute evidence, Mattel offered as evidence the documents it received on September 23, 2003, and that evidence did not include the document marked as Ex. 143. See Supp. Moore Decl. Ex. A. The documents Mattel received do not include any reference to Carter Bryant or the dates of creation of the 17 drawings. See id. Instead, it consists of a copy of a "writ of summons" in that same litigation.

In responding to this evidence, counsel for MGA first incorrectly contended that the declaration of in-house counsel, Michael Moore, did not deny receiving a copy of the City World claim setting forth this key language. Compare Reply at 1 ("**Mr. Moore, the only witness offered by Mattel, does *not* deny that Mattel took possession of a copy of the City World claim on or about September 23, 2003.**") (emphasis in the original) with Supp. Moore Decl. ¶ 3 (attaching as Exhibit A all documents received from Mattel's Hong Kong counsel on September 23, 2003; noting that public access to court files in Hong Kong is limited; and verifying that the materials attached as Exhibit A (which does not include the key language regarding Carter Bryant's creation of Bratz drawings) "were the only ones relating to MGA's litigation that Mattel's Hong Kong counsel were allowed to obtain from the Hong Kong court files").

More disturbingly, however, counsel for MGA next lobbed unsubstantiated assaults on Mr. Moore's truthfulness. Counsel states that the documents "appear to have been doctored or manipulated in some fashion." Reply at 2. Counsel does so because the fax itself has an anomalous pagination in the fax header line wherein the first ten pages are numbered "01, 02 . . . 10," and the numbers thereafter are numbered "11/46, 12/46 . . . 46/46." Supp. Moore Ex. A.

This Court has indicated on a number of occasions, most strikingly in connection with its consideration of Mattel's motion to disqualify counsel for MGA, that it will not countenance unsubstantiated dispersions cast upon opposing counsel. Where there is **evidence** of unethical behavior, the Court expects to be made aware of that evidence; where, however, there is mere **speculation** of such behavior, no legitimate purpose is served by its airing.

Nevertheless, focusing on the additional evidence offered by MGA on May 19, 2008, the time line produced in connection with the Simpson-Taylor deposition makes reference to a City World "claim" that was received by Mattel on September 23, 2003. Although this time line stops short of acknowledging that the document entitled "STATEMENT OF CLAIM" was received in

EXHIBIT _____ 1 _____

PAGE _____ 6 _____

September, it is nevertheless sufficient to controvert Moore's declaration regarding whether the "STATEMENT OF CLAIM" was in fact received on this date. Moreover, the October 17, 2003, letter raises an inference regarding the full scope of Mattel's pre-November 23, 2003, knowledge of the contents of the "STATEMENT OF CLAIM."

It is uncontroverted that Mattel first received a copy of the Bryant-MGA contract, the effective date of which pre-dated the effective date of Bryant's resignation from Mattel, on November 24, 2003.

Where a plaintiff advances a state-law claim under California law, federal courts apply the California "discovery rule" to determine whether the state-law claim is time-barred. See, e.g., Orkin v. Taylor, 487 F.3d 734, 741 (9th Cir. 2007).

The Court's analysis begins with the unremarkable proposition that "[a] plaintiff must bring a claim within the limitations period after accrual of the cause of action." Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 806 (Cal. 2005) (citation omitted). To apply this unremarkable proposition, however, the Court must determine what the California Supreme Court means by "accrual of the cause of action."

In that regard, the California Supreme Court has stated that, "[g]enerally speaking, a cause of action accrues at the time when the cause of action *is complete with all of its elements*," id. at 807 (emphasis added) (citation omitted), a phrase which itself must be expounded upon further to ascertain its meaning. When applying the discovery rule, those "elements" are not "specific legal element[s] of a particular cause of action"; rather, they are the "'generic' elements of wrongdoing, causation, and harm." Id. (citation omitted).

The definition of those terms gives a more comprehensive understanding to the California Supreme Court's statement that "the 'discovery rule' . . . postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." Id. (citation omitted). In turn, "[a] plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements." Id. (internal quotation marks and citation omitted). Further refined, where a plaintiff has *knowledge* of at least one of the three generic elements, and *suspicion* of the remaining generic elements, the claim has accrued and the limitations period has begun to run. Id. (citation omitted).

This rule is designed to require plaintiffs to diligently investigate their potential claims. See id. at 808. To that end, in the context of a personal injury action, the California Supreme Court has stated that "plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." Id. Of course, this statement must itself be viewed with the definition of "injury" the California Supreme Court considered: "At common law, the term 'injury,' as used in determining the date of accrual of a cause of action, means both a person's physical condition and its negligent cause. . . . Thus, physical injury alone is often insufficient to trigger the statute of limitations." Id. at 808 n.2 (internal quotation marks and citation omitted).


EXHIBIT ___1___
PAGE ___7___

This requirement of diligence, stated otherwise, prohibits California plaintiffs from passively waiting for the facts supporting their claim to find them and places on them an affirmative requirement to investigate:

> Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.

Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1111 (Cal.1988).

The Jolly court discussed two examples in explaining this standard. First, it cited to Miller v. Bechtel Corp., 33 Cal.3d 868, 874 (Cal.1983), which held time barred the fraud claim of a plaintiff who had suspicions that the value of her husband's stock was understated at the time of their dissolution agreement, but who failed to assert her claim until years later when the stock was sold. Id. In that case, the plaintiff's lawyer sought information, both before the dissolution and within a few months thereafter, regarding the method by which the stock was valued. Id. at 875. When the response was not forthcoming, the lawyer chose not to pursue this inquiry further, and thus plaintiff was charged with knowledge of the facts the investigation would have uncovered – that the stock was valued by the price attributed to it in the shareholders' agreement rather than by any objective valuation. Id.

Second, the Jolly court cited to Gray v. Reeves, 76 Cal.App.3d 567 (Cal. App.1977), which held that a plaintiff's claim based on his use of a prescription drug arose when the plaintiff understood the nature of his injury (deterioration of the hip socket) and the probable cause thereof (the use of the prescription drug prednisone) as well as the identity of the prescribing doctor and the drug's manufacturer.

Although the discovery rule has been largely developed in tort cases, the rule has also been applied in cases involving contract claims. See e.g., April Enterprises, Inc. v. KTTV, 147 Cal.App.3d 805, 832 (1983) ("Specifically, we hold the discovery rule may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time."); Intermedics, Inc. v. Ventritex, Inc., 775 F.Supp. 1258, 1266-67 (N.D. Cal. 1991).

Thus, California's discovery rule is easily understood in the abstract; moreover, it is often easily applied in particular factual situations. Here, however, this Court's application of the rule in this case is not so clear cut, and the Court must consider the premises underlying the parties' respective analysis of this issue.

In substance, MGA contends that Mattel was on notice as early as February, 2001, of a potential claim that Carter Bryant breached the confidentiality provision of his contract by borrowing from or plagiarizing certain non-public Mattel projects. This date coincides with the display of the Bratz dolls at a New York Toy Fair and "speculation in the media started about



EXHIBIT ____/____

PAGE ____8____

alleged similarities between the BRATZ and Mattel's internal projects." MGA Motion at 18.
Alternatively, MGA posits March 15, 2002, the beginning date of an internal Mattel investigation
into MGA and Larian's involvement in Bryant's creation and development of Bratz, as the date
Mattel's current claims accrued.

Mattel, on the other hand, contends that MGA is essentially arguing that a claim Mattel
chose not to bring – that Bratz infringed on the Mattel projects of Toon Teens and Diva Starz – is
time barred. Mattel points out that it has previously disavowed, and that it continues to disavow,
any intent to assert such a claim. Rather, Mattel contends that it is bringing a different claim, a
claim that Mattel has rights to Bratz pursuant to the Inventions Agreement based on Bryant's
actions during the period of his employment with Mattel.

In determining, under California law, which of the parties' diametrically opposed positions
represent the better approach, the Court is guided by the California Supreme Court case cited
above, Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 806 (Cal. 2005). In that case, a plaintiff,
suffering from complications following gastric bypass surgery, sued for medical malpractice. Id. at
802. During the course of discovery, she learned, through the testimony provided at the
deposition of her surgeon, that she had a potential claim against the manufacturer of a surgical
stapler. Id. at 804. Specifically, the plaintiff's surgeon testified that he had found on previous
occasions that the particular stapler had caused post-surgery leaks. Id. When the plaintiff
amended the complaint to assert a products liability claim, the trial court, on statute of limitations
grounds, sustained a demmurrer without leave to amend, reasoning that "when a plaintiff sues
based on knowledge or suspicion of negligence, . . . the statute of limitations begins to run as to all
defendants, including manufacturers possibly liable under products liability theories." Id.

The Court of Appeal reversed, and the California Supreme Court affirmed the reversal. Id.
at 812, 816. In doing so, the California Supreme Court rejected, as inconsistent with its precedent,
the so-called "the Bristol-Myers Squibb rule that all claims arising from an injury accrue
simultaneously, even if based upon distinct types of wrongdoing, is inconsistent with the generic
elements approach . . . . " Id. at 815.

From this discussion, a parallel begins to emerge that MGA's position is like that of the
demurring defendant who seeks to dismiss a products liability claim on the basis of plaintiff's
discovery of a different claim of medical malpractice, and Mattel's position is like that of the plaintiff
who seeks to assert the that products liability claim. In a sense, however, this analogy goes
nowhere, as MGA's position is that the claim Mattel asserts in the current action is not different
from the potential claim for which it was on notice of in 2001. After all, both would be based on
breach of contract and/or copyright claims, both would involve the same defendants, and both
would result in the same type of injury.

However, the Fox Court's elaboration on the rule it enunciates convinces the Court that
Mattel's position is the stronger one. After discussing the application of its rule in the more narrow
situation presented by the overlap of medical malpractice and products liability claims at issue in
the case before it, the Fox Court explained:

Initials of Deputy Clerk: gg
                                                            Time: 0/00



EXHIBIT _____1_____

PAGE _____9_____

> More broadly stated, if a plaintiff's reasonable and diligent investigation
> discloses only one kind of wrongdoing when the injury was actually
> caused by tortious conduct of a wholly different sort, the discovery rule
> postpones accrual of the statute of limitations on the newly discovered
> claim.

Id. at 813. In analyzing the discovery rule, the term "wrongdoing" is used not in a technical or legal
sense, but in its everyday meaning. Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1111 (1988) ("In this
context, 'wrong,' 'wrongdoing,' and 'wrongful' are used in their lay understanding.").

Here, on one hand, we have a breach of contract claim or copyright infringement claim
based on alleged copying or "borrowing" of Mattel's undisputed rights in Toon Teens and/or Diva
Starz to create Bratz that perhaps Mattel was on notice of as early as 2001, and which Mattel
admittedly investigated as early as 2002, but upon which Mattel ultimately chose not to file suit.
On the other hand, we have the claims asserted here, for breach of contract and copyright
infringement, based on Mattel's (disputed) ownership rights to the Bratz drawings pursuant to
Bryant's employment agreement with Mattel and in light of the (disputed) fact that Carter Bryant
created these works during the period of his employment with Mattel. Applied to the present case,
in the Court's view, the question the Court must ask is whether the first type of claim is based on
qualitatively different type of "wrongdoing" – as that term might be understood by lay persons –
than that which gives rise to the present claims.

Thus framed, the Court considers the two claims: Although they are similar in that they
both include the wrongdoing of the failure to keep one's promise to maintain confidentiality, they
are qualitatively different, however, in that the former situation involves the alleged taking of rights
known to Mattel while the latter involves the alleged concealment of certain creations that belong
to Mattel in the first instance in order to facilitate the taking of rights unknown to Mattel. This
fundamental difference leads the Court to the conclusion that the latter claims, those asserted
here, involve a different element of "wrongdoing" than do the unasserted claims based on Toon
Teens and/or Diva Starz.

The burden of proof on the discovery rule issue is on Mattel.[2]  Examining the claim Mattel
asserts, rather than the claim Mattel chose not to assert, the Court must determine whether Mattel
had knowledge of any one of the three generic elements of wrongdoing, causation, or damages,
coupled with suspicion of the remaining generic elements. This determination cannot be made on
the undisputed record before the Court.

Rather, MGA has raised triable issues of fact precluding summary judgment on the statute
of limitations issue. Any of the following could be the date upon which MGA claims against Carter

---

[2]  See Fox, 35 Cal.4th at 803 (imposing upon a plaintiff that seeks to take advantage of the
discovery rule a requirement that it "plead[] and prove[] that a reasonable investigation at that time
would not have revealed a factual basis for that particular cause of action).

Initials of Deputy Clerk  gg
Time:  0/00

EXHIBIT _____1_____

PAGE _____10_____

Bryant accrued: The July 18, 2003, Wall Street Journal article; the September 23, 2003, date of receipt of the City World "claim"; the October 17, 2003, date of counsel's letter to Mattel regarding the City World litigation; or the November 24, 2003, date of receipt of the MGA-Bryant agreement that pre-dated Bryant's resignation of his employment.[3]

The accrual of a copyright claim, as the parties recognize, approximates the state-law standard discussed herein. See Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004) ("Thus, . . . the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances."). Accordingly, the Court makes the same conclusion regarding the accrual date of Mattel's copyright claim against Carter Bryant as it does regarding the accrual date of Bryant's state-law claims.

As stated earlier, although Bryant is no longer a party to this action, the parties recognize, as does the Court, that the timeliness of the claims asserted against Carter Bryant is relevant because of the potential that Mattel's claims against the MGA entities and Isaac Larian may, pursuant to Fed. R. Civ. P. 15(c), relate back to those claims. Mattel embraces the concept of relation back; MGA rejects it.

Although such distinction has not been particularly important at other points in this litigation, the Court has referred to the MGA entities and Isaac Larian collectively as MGA. More specifically, as to Phase 1, there are two separate MGA entities: MGA Entertainment, Inc. and MGA Entertainment HK Limited. There is also MGA's CEO, Isaac Larian. This distinction is important to the Court's analysis of relation back.

MGA Entertainment, Inc., but not Isaac Larian or the other MGA entity, intervened in this action on December 7, 2004. Therefore, based on the status of MGA Entertainment, Inc., as a party, the standard for whether the claims relate back differs from that governing the relation back of claims against MGA Entertainment HK Limited. See infra. As this Court has noted before, the Phase 1 claims against MGA sought to be asserted by Mattel on November 20, 2006, which arise out of the same factual allegations as do the claims asserted by Mattel against Carter Bryant on April 27, 2004, relate back to the date that complaint was filed. See Court's Jan. 12, 2007, Order at 13-15. The Court does not revisit that issue now.

MGA argues that "some courts have dis-allowed 'relation back' of claims against intervening defendants." MGA Opp. at 25 n.21 (emphasis in the original). However, in support of this argument, MGA cites a two-page Texas appellate court decision which does not cite to or interpret Fed. R. Civ. P. 15(c), Davis v. Outdoor Equip. Co., 551 S.W.3d 72, 73 (Tex. Ct. App. 1977), which the Court finds unpersuasive.

As to the new parties sought to be added on November 20, 2006 (MGA Entertainment HK

---

[3]   The analysis is slightly different for the conversion claim. See infra at 9-10.

EXHIBIT _____

PAGE _____//_____

Limited and Isaac Larian), MGA challenges the timeliness of the amendment to add these parties
based on whether their identities were known to Mattel at an earlier date. The Court has already
held that the claims against them relate back to the April, 2004, complaint. See Court's Jan. 12,
2007, Order at 15-16 n.5. The Court will not revisit that issue either.

The Court rejects the proposition, however, that the claims against both MGA entities did
not arise until the date of Carter Bryant's deposition. Whatever the date on which the claims
against Carter Bryant arose is ultimately found to be, the August 2002 anonymous letter should
have given Mattel a suspicion of that MGA Entertainment, Inc., participated in any wrongdoing by
Carter Bryant. See Zeller Decl. Ex. 63 (alleging that Carter Bryant "worked out a deal with MGA
that let him collect a large sum of money each year from MGA in exchange for his secrecy about
the dolls").

The same is not true as to MGA Entertainment HK Limited and as to Isaac Larian, whom
the anonymous letter did not implicate. Therefore, the claims against these defendants arose no
earlier than November 4, 2004.

Intentional interference with contractual relations is subject to a two-year statute of
limitations. MGA contends that the claim accrues upon the breach of contract, and therefore
argues that the claim was untimely before it was asserted against Carter Bryant. They make a
similar argument regarding Mattel's conversion claim, which carries with it a three-year statute of
limitations.

However, the statute of limitations for breach of contract is tolled during a period of
fraudulent concealment. Gryczman v. 4550 Pico Partners, Ltd., 107 Cal.App.4th 1, 5 (2003). The
rationale for such tolling easily extends to intentional interference with contractual relations claim,
which includes the element of a breach of a contract. The limitations period is likewise tolled
during a period of fraudulent concealment as to a conversion claim. AmerUS Life Ins. Co. v. Bank
of America, 143 Cal.App.4th 631, 639 (2006) ("To the extent our courts have recognized a
'discovery rule' exception to toll the statute, it has only been when the defendant in a conversion
action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts
in violation of his or her fiduciary duty to the plaintiff.") Mattel has raised a triable issue of fact as to
whether the evidence of the breach and the tortious interference thereof was fraudulently
concealed from them before the July 18, 2003, Wall Street Journal article.

The Court will permit further briefing from the parties on the limited issue of what further
conclusions regarding the timeliness of each claim should be drawn as a result of this Order. The
parties' simultaneous briefs shall be limited to seven pages in length, and shall not re-argue any
point upon which the Court has ruled in this Order or its previous two summary judgment Orders.
The briefs shall be e-filed no later than 8:30 a.m., Thursday, May 29, 2008, and a courtesy copy
must be provided to chambers at the same time. The parties shall also file, as exhibits thereto,
their revised proposed special interrogatories on the issue of statute of limitations.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN                                    Page 9                          Initials of Deputy Clerk: gg
                                                                                Time: 0/00

EXHIBIT _____ / _____

PAGE _____ /∂ _____

# EXHIBIT 2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                            Date:  June 2, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx): MATTEL, INC. v. CARTER BRYANT
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC. v. MATTEL, INC.
=================================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes
        Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:          ATTORNEYS PRESENT FOR MATTEL:

None Present                                  None Present

ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

PROCEEDINGS:   **FURTHER AND FINAL ORDER RE STATUTE OF LIMITATIONS DEFENSE
               (IN CHAMBERS)**

        In an order dated May 27, 2008, the Court made several rulings regarding the timeliness of
Mattel's claims ("SOL Order"). At that time, the Court invited further, limited briefing from the
parties regarding "what further conclusions regarding the timeliness of each claim should be
drawn" in light of the Court's rulings. The parties filed further briefing in conformity with the Court's
Order, which the Court has reviewed.

        As a result of the briefing, the Court discusses the following issues:  (1) Clarification of the
Court's Ruling Regarding the August 2002 Anonymous Letter; (2) Clarification of the Court's
Ruling Regarding Fraudulent Concealment and Mattel's Claims for Intentional Interference with
Contractual Relations and Conversion; and (3) Accrual of Mattel's Copyright Claim.

MINUTES FORM 90                                              Initials of Deputy Clerk: jh
CIVIL -- GEN                          1

EXHIBIT ____2____

PAGE ____13____

## I. Clarification of the Court's Ruling Regarding the August 2002 Anonymous Letter

The parties differ on their interpretation of the Court's holding as to the earliest accrual date of Mattel's claims. Although the Court's SOL Order, read as a whole, is most reasonably interpreted as clarified herein, MGA, quite understandably, interprets the Court's Order in a manner more favorable to its position regarding the statute of limitations defense. Accordingly, the Court clarifies its Order as set forth below.

In a key paragraph of the SOL Order, the Court articulates the four possible accrual dates of those state-law claims, asserted by Mattel against Carter Bryant, that are subject to the discovery rule:[1]

> MGA has raised triable issues of fact precluding summary judgment on the statute of limitations issue. Any of the following could be the date upon which MGA claims against Carter Bryant accrued: The July 18, 2003, Wall Street Journal article; the September 23, 2003, date of receipt of the City World "claim"; the October 17, 2003, date of counsel's letter to Mattel regarding the City World litigation; or the November 24, 2003, date of receipt of the MGA-Bryant agreement that pre-dated Bryant's resignation of his employment.

SOL Order at 7-8. This portion of the Court's Order implicitly rejects MGA's contention that the August, 2002, letter could give rise to Mattel's claims against Bryant.

As set forth in the SOL Order, a claim accrues where a plaintiff has **_knowledge_** of at least one of the three generic elements of wrongdoing, causation, and harm. Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 807 (Cal. 2005) (citation omitted). The SOL Order did not explicitly state, as the Court does now, that there is no evidence that Mattel had any **_knowledge_** of any one of the three generic elements of its claims, and thus no claim accrued, prior to the earliest date identified by the Court, which is July 18, 2003.

MGA's argument that Mattel's claims against Carter Bryant could have accrued in August 2002, is based on a statement made by the Court's regarding when the claims against MGA Entertainment, Inc., accrued:

> The Court rejects the proposition, however, that the claims against both MGA entities did not arise until the date of Carter Bryant's deposition. Whatever the date on which the claims against Carter Bryant arose is ultimately found to be, the August 2002 anonymous letter should have given Mattel a suspicion of that MGA Entertainment, Inc., participated in any wrongdoing by Carter Bryant. See Zeller Decl. Ex. 63

---

[1]     This portion of the Court's Order does not apply to Mattel's claims for intentional interference with contractual relations and conversion, which are addressed infra, in Section II.

Initials of Deputy Clerk: jh

EXHIBIT _____2_____

PAGE _____14_____

(alleging that Carter Bryant "worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls").

SOL Order at 9. Mattel's understanding of this part of the SOL Order, that the claims against MGA Entertainment, Inc., accrued on the same date as did the claims against Carter Bryant, is correct. See Mattel Supp. Brief at 6 n.4.

## II. Clarification of the Court's Ruling Regarding Fraudulent Concealment and Mattel's Claims for Intentional Interference with Contractual Relations and Conversion

The Court's statute of limitations analysis regarding Mattel's claims for intentional interference with contractual relations and conversion was rather inartfully articulated. The Court's ruling was meant to convey that although the remainder of the state-law claims asserted by Mattel are subject to the discovery rule, these two claims are not. Therefore, the conclusions drawn by the Court regarding the possible accrual dates for the remaining state-law claims do not apply to Mattel's claims for intentional interference with contractual relations and conversion. Instead, these claims, having arisen around the time Bryant resigned from Mattel, are time-barred unless the relevant limitations periods have been extended by a period of fraudulent concealment.

Whether a period of fraudulent concealment exists, as well as the duration of any such period, cannot be determined on the undisputed record and are therefore questions of fact for the jury.

## III. Accrual of Copyright Claim

The supplemental briefing brings into focus an issue not addressed by the SOL Order: The accrual date of Mattel's copyright claim.

MGA refers to two arguments it made in its partial summary judgment papers regarding the statute of limitations and Mattel's copyright claim. First, MGA argues that the date Mattel registered its copyrights impacts upon the Court's application of the relation-back doctrine; second, MGA argues that the "rolling" statute of limitations regarding copyright claims is inapplicable when the gravamen of the claim is a claim of ownership rather than infringement.

Mattel did not address this issue in its supplemental briefing, which was filed concurrently with MGA's supplemental briefing. In its partial summary judgment papers, however, Mattel had responded to these arguments.

In reviewing the supplemental briefs, as well as the relevant portions of the partial summary judgment papers, and reflecting upon the hearings held on this matter, the Court concludes that it need not resolve MGA's two arguments.

In the SOL Order, the Court's analysis equated the accrual of Mattel's copyright claim with

MINUTES FORM 90
CIVIL -- GEN                                      3                          Initials of Deputy Clerk: jh

EXHIBIT _____ 2 _____

PAGE _____ 15 _____

Case 2:04-cv-09049-SGL-RNB    Document 3902    Filed 06/02/2008    Page 4 of 4

the accrual with certain of Mattel's state-law claims; as explained below, this analysis overlooks important concepts of copyright law.

As noted by the Court in its order regarding summary judgment, in order to establish copyright infringement, a plaintiff must establish three elements: (1) ownership of a valid copyright, (2) the defendant's access to the original, and (3) substantial similarity between the copyrighted work and the allegedly infringing work.  Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1144 (9th Cir. 2003).  Here, although the date Mattel received details regarding the City World litigation is in dispute, it is uncontroverted that Mattel did not receive copies of the Bratz drawings prior to November 23, 2003.  Without the drawings, Mattel could not assess the substantial similarity factor to determine whether it could assert a claim that the Bratz dolls infringed Mattel's rights to them.  Accordingly, on the undisputed record, the Court concludes that Mattel's copyright claim did not accrue prior to November 23, 2003.

Therefore, when first asserted on November 20, 2006, Mattel's copyright claim was timely in its own right, and the Court need not resolve MGA's two arguments regarding relation back and the rolling statute of limitations.[2]

**IT IS SO ORDERED.**

---

[2] In accordance with the foregoing, the Court VACATES the following language from the SOL Order:

> The accrual of a copyright claim, as the parties recognize, approximates the state-law standard discussed herein. See Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004) ("Thus, . . . the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances."). Accordingly, the Court makes the same conclusion regarding the accrual date of Mattel's copyright claim against Carter Bryant as it does regarding the accrual date of Bryant's state-law claims.

SOL Order at 8.

MINUTES FORM 90                                                          Initials of Deputy Clerk:  jh
CIVIL -- GEN                                    4

EXHIBIT _____2_____

PAGE _____16_____

# EXHIBIT 3

1

2

3

4

5

6

7

8           UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10                EASTERN DIVISION

11

12  | MATTEL, INC.,                              | CASE NO. CV 04-9049 SGL (RNBx)

13  |           Plaintiff,                        | Consolidated with
                                                  | Case No. CV 04-09059 SGL (RNBx)
14  |       vs.                                   | Case No. CV 05-02727 SGL (RNBx)

15  | MGA ENTERTAINMENT, INC., et al.,            | Honorable Stephen G. Larson

16  |           Defendant.                        | **PHASE B VERDICT FORM AS GIVEN**

17  | AND CONSOLIDATED ACTIONS

18

19

20

21

22

23

24

25

26

27

28

07209/2609529.2209/260
584.2

PHASE B VERDICT FORM AS GIVEN

EXHIBIT _____ 3 _____

PAGE _____ 17 _____

# VERDICT FORM - PHASE B

We answer the questions submitted to us as follows:

## I.  Damages for Phase A Claims

(Answer all four questions in this section.)

### Intentional Interference With Contractual Relations

1.  In Phase A of this trial, you found that MGA Entertainment, Inc. ("MGA") and Isaac Larian are liable to Mattel for intentional interference with contractual relations.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:          $ _____ 20  MILLION _____
As to Mr. Larian:  $ _____ 10  MILLION _____

### Aiding and Abetting Breach of Fiduciary Duty

2.  In Phase A of this trial, you found that MGA and Isaac Larian are liable to Mattel for aiding and abetting Carter Bryant's breach of fiduciary duty.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:          $ _____ 20 MILLION _____
As to Mr. Larian:  $ _____ 10  MILLION _____

### Aiding and Abetting Breach of the Duty of Loyalty

3.  In Phase A of this trial, you found that MGA and Isaac Larian are liable to Mattel for aiding and abetting Carter Bryant's breach of the duty of loyalty.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:          $ _____ 20  MILLION _____
As to Mr. Larian:  $ _____ 10  MILLION _____

PHASE B VERDICT FORM AS GIVEN

EXHIBIT ____3____

PAGE ____18____

Case 2:04-cv-09049-SGL-RNB   Document 4279   Filed 08/26/2008   Page 3 of 9

## Conversion

4.    In Phase A of this trial, you found that MGA, Isaac Larian and MGA

Entertainment (HK) Limited ("MGA Hong Kong") are liable to Mattel for

conversion.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:                  $   *31,500  PLUS 7% INTEREST*

As to Mr. Larian:         $      *0*      *CALCULATED FROM*

As to MGA Hong Kong: $        *0*      *THE DATE MATTEL'S*

*PROPERTY WAS*

*CONVERTED.*

07209/2609529.2608584.2

PHASE B VERDICT FORM AS GIVEN

EXHIBIT ___3___

PAGE ___19___

## II.  Copyright Infringement

5.      Has Mattel proven by a preponderance of the evidence that MGA is liable to Mattel for copyright infringement?

        Yes     _X_

        No    _____

If your answer is "yes," then answer Question 6.

If your answer is "no," then answer Question 7.

6.      Was MGA's copyright infringement willful?

        Yes   ____

        No   _X_

Answer Question 7.

7.      Has Mattel proven by a preponderance of the evidence that Isaac Larian is liable to Mattel for copyright infringement?

        Yes  _X_

        No  _____

If your answer is "yes," then answer Question 8.

If your answer is "no," then answer Question 9.

8.      Was Mr. Larian's copyright infringement willful?

        Yes  _____

        No  _X_

Answer Question 9.

9.      Has Mattel proven by a preponderance of the evidence that MGA Hong Kong is liable to Mattel for copyright infringement?

        Yes  _X_

07209/2609529.2608584

-4-

EXHIBIT _____3_____

PAGE _____20_____

PHASE B VERDICT FORM AS GIVEN

1          No ____

2      If your answer is "yes," then answer Question 10.

3      If your answer is "no," then answer Question 11.

4

5      10.    Was MGA Hong Kong's copyright infringement willful?

6          Yes ____

7          No   X

8      Answer Question 11.

9

10     11.    What amount of damages, if any, should be awarded to Mattel for the

11    defendants' copyright infringement?

12     (a)    Copyright Infringement by MGA

13             $   6 Million

14     (b)    Copyright Infringement by Isaac Larian

15             Distributions Mr. Larian received from MGA attributable to Bratz-

16             related works:

17             $   3 Million

18             Value of Mr. Larian's ownership percentage of MGA attributable to

19             Bratz-related works:

20             $   0

21     (c)    Copyright Infringement by MGA Hong Kong:

22             $   1 Million

23

24

25

26

27

28

PHASE B VERDICT FORM AS GIVEN

EXHIBIT    3

PAGE    21

1          **III.  Punitive Damages**

2          12.    Has Mattel proven by clear and convincing evidence that MGA acted

3    with malice, oppression, or fraud?

4                 Yes  ____

5                 No    X

6          If your answer is "yes," then answer Question 13.

7          If your answer is "no," then answer Question 14.

8

9          13.    What amount of punitive damages, if any, should be awarded against

10   MGA?

11                $ _____ Ø _____

12         Answer Question 14.

13

14         14.    Has Mattel proven by clear and convincing evidence that Isaac Larian

15   acted with malice, oppression, or fraud?

16                Yes  ____

17                No    X

18         If your answer is "yes," then answer Question 15.

19         If your answer is "no," then answer Question 16.

20

21         15.    What amount of punitive damages, if any, should be awarded against

22   Mr. Larian?

23                $ _____ Ø _____

24         Answer Question 16.

25

26         16.    Has Mattel proven by clear and convincing evidence that MGA Hong

27   Kong acted with malice, oppression, or fraud?

28                Yes  ____

07209/2609529.2608584                    -6-
                                                    PHASE B VERDICT FORM AS GIVEN

        EXHIBIT ____3____

        PAGE ____22____

1              No    X

2       If your answer is "yes," then answer Question 17.

3       If your answer is "no," then answer Question 18.

4

5       17.    What amount of punitive damages, if any, should be awarded against

6   MGA Hong Kong?

7              $ _____

8       Answer Question 18.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-7-

                                                              PHASE B VERDICT FORM AS GIVEN

EXHIBIT _____ 3 _____

PAGE _____ 23 _____

## IV. Fraudulent Concealment

(Answer all five questions in this section.)

18. Has Mattel proven by a preponderance of the evidence that MGA fraudulently concealed the bases for Mattel's claim of intentional interference with contract against it until at least April 27, 2002?

      Yes   _X_

      No   ____

19. Has Mattel proven by a preponderance of the evidence that Isaac Larian fraudulently concealed the bases for Mattel's claim of intentional interference with contract against him until at least April 27, 2002?

      Yes   ____

      No   _X_

20. Has Mattel proven by a preponderance of the evidence that MGA fraudulently concealed the bases for Mattel's claim of conversion against it until at least April 27, 2001?

      Yes   _X_

      No   ____

21. Has Mattel proven by a preponderance of the evidence that Mr. Larian fraudulently concealed the bases for Mattel's claim of conversion against him until at least April 27, 2001?.

      Yes   ____

      No   _X_

07209/2609529.2608584

-8-

EXHIBIT ___3___

PAGE ___24___

1    22.   Has Mattel proven by a preponderance of the evidence that MGA Hong

2    Kong fraudulently concealed the bases for Mattel's claim of conversion against it

3    until at least April 27, 2001?

4             Yes   ____

5             No    ✗

6

7         Once this verdict form is completed, the foreperson of the jury should sign

8    and date on the lines below.

9

10   DATED: *August 26, 2008*                    /s/
                                          _____
11                                        Jury Foreperson

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2609529.2608584

-9-

PHASE B VERDICT FORM AS GIVEN

EXHIBIT _____3_____

PAGE _____25_____

# EXHIBIT 4

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

11    MATTEL, INC.,                    | CASE NO. CV 04-9049 SGL (RNBx)

12              Plaintiff,             |

13                                     | Consolidated with

14          vs.                        | CASE NO. CV 04-9059 SGL (RNBx)

15                                     | CASE NO. CV 05-2727 SGL (RNBx)

16    MGA ENTERTAINMENT, INC., et al., | Hon. Stephen G. Larson

17

18    Defendants.

19                                     | **COURT'S PHASE B JURY**
      AND CONSOLIDATED ACTIONS
20                                     | **INSTRUCTIONS AS GIVEN**

21

22

23

24

25

26

27

28

EXHIBIT ___4___

PAGE ___26___

Case 2:04-cv-09049-DOC-RNB   Document 4355-3   Filed 10/13/08   Page 28 of 78   Page ID
#:111422
Case 2:04-cv-09049-SGL-RNB      Document 4267      Filed 08/20/2008      Page 39 of 56

**JURY INSTRUCTION NO. 35**

Mattel claims that defendants fraudulently concealed the facts underlying

Mattel's claims of intentional interference with contract and conversion. Defendants deny

these allegations.

To prove fraudulent concealment, Mattel must show the following by a

preponderance of the evidence

(1)    the defendants took affirmative steps to conceal the facts that could have led

Mattel to discover that Carter Bryant created Bratz-related works while

employed by Mattel or that Carter Bryant entered into a contract with and

worked with MGA while he was still employed by Mattel; and

(2)    Mattel was not aware of such facts that either did or would have, with

diligence, led Mattel to discover that Carter Bryant created Bratz works

while employed by Mattel or that Carter Bryant entered into a contract with

and worked with MGA while he was still employed by Mattel.

If you so find by the preponderance of the evidence, you should find for Mattel

on its allegations of fraudulent concealment. If not, you should find for defendants on the

allegations of fraudulent concealment.

EXHIBIT 394

PAGE 27

# EXHIBIT 5

| | |
|---|---|
| **From:** | Isaac Larian |
| **To:** | Victoria O'Connor; Dave Malacrida; Aileen Storer; Paula Treantafelles; Margo Chazen; Dianna Eisenberg |
| **CC:** | Abe Mirza; Julie Mote; Beth Cahill |
| **BCC:** | |
| **Sent Date:** | 2002-03-12 12:17:42:953 |
| **Received Date:** | 2002-03-12 12:17:42:953 |
| **Subject:** | FW: Hi |
| **Attachments:** | |

Victoria, Dave: Who gave David Dees info and what he does for us to this Yahoo lady and why?

This Yahoo lady is giving us too much legal grief even though she does not mean it.

Please DO NOT send any information or reply to her e mails unless you have cleared it with me.

Julie/Beth/ Abe:                         There must be no mention about Mattel or any of their properties, Carter , any MGA Bratz arts ,etc.


-----Original Message-----
From: Paula Treantafelles
Sent: Monday, March 11, 2002 5:55 PM
To: Isaac Larian; Abe Mirza; Beth Cahill
Subject: FW: Hi

-----Original Message-----
From: David Dees [mailto:davodees@hotmail.com}
Sent: Saturday, March 09, 2002 12:37 PM
To: bryant598@cs.com
Subject: Hi

Hi Carter,

I thought you would enjoy this letter i wrote to the Bratzworld club on Yahoo. It starts off with the club leader introducing it. Dees.

Hello!

I'm posting a wonderful letter from David Dees- the guy who does the awesome art we love to look at on the Bratz website and on posters and wherever Bratz girls are. I just want to post it to its own message so I can save that as a text file in the David Dees folder in files so you can read it anytime you like. We've



CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___5___

PAGE ___28___

MGA 3801819

4507 - 1

EX 4507-0001

always liked it that MGA communicates with the Bratz fans and
this takes it even further into VERY COOL land.

Make sure you also check out his portfolio for all the other stuff
he does- you've probably seen lots of it- he's extremely talented!

Okay enough from me- I'll post his letter right after this
:)
snowflakebebe

>Hello my name is Christian (I'm a girl!) and I do a fan list for the Bratz
>dolls and I was wondering if you could post and maybe share some of your
>other Bratz art that we may not have seen (we have lots of it in the files
>section) - or talk about your experience working on the illustrations of
>the
>Bratz. I am in contact with MGA and they have endorsed this "fan club" so
>if
>I need to get permission from them for anything I can ask- but I hope
>you'll
>share some art if you can. We have the link to your portfolio up in our
>files and bookmark section. Come visit sometime :) We love your art. Its
>a
>big part of the fun of the Bratz :)

Hi Christian,

Thanks so much for your letter and interest in the world of Bratz. I talked
to the art director at MGA , and she said that of course i am not the one to
be releasing any Bratz art ahead of time, so i will check and see if i can
post some of that older airbrush art for you. She also said MGA is in the
process of building a new website that is going to be packed to the hilt
with cool art of all the new fashions, and believe me, they are wild and
colorful as i just finished about thirty new pieces of art that will amaze
you.

I work freelance as an illustrator and have my own studio at home where i
paint at my leisure, but if a job comes in you can be sure that it is
usually being rushed. My immediate live-in family consists of two furry
felines. A crosseyed siamese mix named Buddy, and a female red striped tabby
named Goose.

I am swamped right now with colorizing lots of the new wacky funk styles,
and there are new hats and boas and tops that I got a kick out of. However I
can't take credit for creating the Bratz Dolls, or even the first Bratz
illustrations, for that honor would go to a fellow named Carter Bryant*, who
is truly a genius of fashion and the soul and only person who first drew
those great pouty lips and that extreme look that only our heros share. I
have never met him personally, but on the phone and emails he is certainly
the nicest sincere fellow ever, and very optimistic and complementary about
my art in his approach. It felt good early on when he would tell me i was
doing a good job bringing them to life. Can you tell I am a fan of his as

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___5___

PAGE ___29___

MGA 3801820

4507 -2

EX 4507-0002

well?

Let me tell you about MGA. It is located in North Hills, California, at the west end of the beautiful San Fernando Valley, where i lived for many years, but now i live in Salt Lake, where the Olympics just were. Anyway, when you walk into the big, high ceiling lobby there is a real pretty receptionist with reddish brown hair (and that sometimes wears leopard prints), and if you look to the left you will see the stairs wind up to the second floor where all the cool stuff happens. And as you start up them there is, to the right, a little rock garden with plants, and it always has some of the new toys, like robot dogs, insectobots, or baby dolls sitting in there as if they are playing. As you get to the top of the stairs, that is if you can get permission to come up to this top secret place, the first thing you notice to your right is two big doors opening into a spacious office with a fancy glass desk, usually covered with toys, and sitting there working busily away is a great fellow named Isaac, who is the owner, president, and creator of most of the MGA toys. He always seems to leave his doors open and when i stop by to pick up a job i glance in and wave if he happens to look up.

The first big area past there has lots of low partitioned cubicles with all the business people who keep the finances working, but then the next rows are the package and advertising designers, which is sort of the front line of the creativity, and as you continue up the steps there is a silly sign hanging that says Design Farm, and that is the beginning of the art studios. It always freaks me out to go in there because it is a busy beehive of toy ideas and designers flying around like a tornado. It is a big open room with black walls and bright lights shining down spotlighting the work areas, and colorful toys and wacky new ideas and drawings lining the walls. The middle area has a long table work table covered with new toy packages being assembled for the first time, with most of the mocked up packages being created by cutting and pasting by hand, and only after the idea is shown through many approval lines is it mass produced. Sometimes a whole new line of Bratz accessories will be displayed, and i am amazed at the details of the clothes at such a small scale. When i pop in I am usually asked for my opinion about the new toys, such as if i think they will be popular or how to promote them, and i am always happy to put in my two cents. There are about a dozen or so design areas with computers that surround the work table, and at each station is someone with more talent than you can imagine all corraled into one group. That is why they come up with such great stuff. There is also a window on one wall and whenever i look out of it, it is stunning to look down into the warehouse which quite a large expanse of big boxes and lifts carrying them around. I guess that is the tour.

About working on the illustrations, well they are all colored on the computer. The best thing i can say is that i finally figured out a great way to paint their hair that flows great, and looks sort of real. But that is in the last group of art i just finished and it will available to you soon i suppose. If you have any suggestions about any of the art I always welcome your viewpoint.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT __5__

PAGE __30__

MGA 3801821

4907-3

EX 4507-0003

Anyway that is about it. I will send in anything that i am allowed to
release to you guys, or check my website for new art that i am putting up
all the time. Feel free to download any art that you like off my site. See
ya. david.

(* You can do a google.com search under Carter Bryant and you
can see some things he has done.

-snowflakebebe)

WOW what a cool letter... i have to say again that everyone so far involved
with the Bratz company is so cool, and responds personally and actually
takes some time.... as for Carter Bryant i searched and searched and came up
with nothing. so if any one find his website, can you post the URL.. ;) many
thanks...

Pink Glitter
>>Vayne<<
xxx

Get your FREE download of MSN Explorer at http://explorer.msn.com/intl.asp.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ____5____

PAGE ____31____

MGA 3801822

4507 - 4

EX 4507-0004

# EXHIBIT 6

| From: | Isaac Larian |
| To: | Dee Dee Valencia |
| CC: | |
| BCC: | |
| Sent Date: | 2003-02-06 20:05:14:687 |
| Received Date: | 2003-02-06 20:05:14:687 |
| Subject: | RE: Bratz |
| Attachments: | |

Good ideas.

Lets share with the team after NY and execute.

-----Original Message-----
**From:** Dee Dee Valencia
**Sent:** Thursday, February 06, 2003 11:59 AM
**To:** Isaac Larian
**Subject:** RE: Bratz

Okay ... I am jotting down my first thought .... I'll think more. Had experience in past lives in collectible market....

Limited Edition Collectible # of pcs low low low - build for the future

SELLING - DISTRIBUTION
-Go for 2 partners; 1 TV (QVC) and other Hallmark sold in Collectibles Section (next would be ornaments with Hellmark)
-Offer the first 1,000 to our fan club members - 1st come first serve - build frenzy then you can advertise that the remaining # is going to be on QVC and in Hallmark only for a limited time.
-This strategy would also help, 'literally presell' the program to QVC & Hallmark. Built in demand, advertised, slam dunk!
-After market sales - will boom - ebay.... keep track of it .. powerful ...

FEATURES:
-Signed by....???? - I know we want to keep Carter under wraps ...

-Custom / Original art of girls as the certificate of authenticity - framed for room and showing off to friends

-The box is JUST AS IMPORTANT as THE PRODUCT in the collectible market. So packaging needs to be authentic and out of this world.

Product Ideas:
-Porcelain real hair, real fabrics as accents - high high detail
-Tie to well known hip fashion designer that designed clothing for extra equity
-Set of 4 dolls 6"-8"high (size smaller than mass market dolls - these are display only pcs)
-They need to be sold in a showcase cool environment - funky - this is part of the display in their room
-Something exclusive for the girl herself ... exclusive fashion bag is my first thought.

I'll think more.... we should absolutely utilize the Bratz Fan Club more. They 'expect' to be the first ones to know what is up and coming for Bratz. This is a built in base for exclusive or allocated or presold sell of goods.

DD

EXHIBIT 6

CONFIDENTIAL - ATTORNEYS' EYES ONLY   PAGE 32

MGA 3801558
EX 4942-0001

-----Original Message-----
**From:** Isaac Larian
**Sent:** Wednesday, February 05, 2003 8:13 PM
**To:** Summer Wells; Paula Treantafelles; Dee Dee Valencia; Shawn Brower; Randi Kagan
**Subject:** Bratz

What do you think about the idea of developing a high end ,really cute, older, collectable plush to sell only in Specialty and gift? For dolls, may be we do a plastic head?

Let me know what do you think?

Isaac Larian
CEO
MGA ENTERTAINMENT
*A Consumer Entertainment Product Company*
16730 Schoenborn Street
North Hills, California, 91343-6122
Tel: 818-894-3150
Fax:818-894-1267
llarian@mgae.com
www.MGAE.COM
Meet the girls with Passion for Fashion
www.Bratzpack.com

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT _6_

PAGE _33_

MGA 3801559

EX 4942-0002

# EXHIBIT 7

Matter No. 15904-142

UNITED STATES PATENT APPLICATION

For

# DOLL WITH AESTHETIC CHANGEABLE FOOTGEAR

Inventor: Isaac Larian

OPPENHEIMER

OPPENHEIMER WOLFF & DONNELLY LLP
2029 Century Park East, Suite 3800
Los Angeles, California 90067
(310) 788-5000
Fax (310) 788-5100

Attorney Matter No. 15904-142



LA: 333498 v01 02/13/2003

EXHIBIT ___7___

PAGE ___34___

MGA 0825485

EX 500-0001

# DOLL WITH AESTHETIC CHANGEABLE FOOTGEAR

## FIELD OF THE INVENTION

[0001] This invention relates to dolls or toy figures with changeable footgear.

## BACKGROUND OF THE INVENTION

[0002] It has previously been proposed to make dolls with shoes, boots or footgear which may be changed, and patents which relate to such arrangements include the following:

[0003]

| | | |
|---|---|---|
| L. Schmetzer | U.S. Pat. No. 187,322 | Granted February 13, 1877 |
| G. Doebrich | U.S. Pat. No. 831,330 | Granted September 18, 1906 |
| F. Steiff | U.S. Pat. No. 898,018 | Granted September 8, 1908 |
| P.H. Young | U.S. Pat. No. 2,175,789 | Granted October 10, 1939 |
| G.H. Calverley | U.S. Pat. No. 2,662,335 | Granted December 15, 1953 |
| S.F. Speers et al. | U.S. Pat. No. 3,475,042 | Granted October 28, 1969 |
| H.J. Solson et al. | U.S. Pat. No. 3,624,960 | Granted December 7, 1971 |
| Goldfarb et al. | U.S. Pat. No. 3,782,027 | Granted January 1, 1974 |
| Port | U.S. Pat. No. 4,030,240 | Granted June 21, 1977 |
| Lambert | U.S. Pat. No. 4,137,115 | Granted January 30, 1979 |
| Rahmstorf | U.S. Pat. No. 4,185,412 | Granted January 29, 1980 |
| Keiji | U.S. Pat. No. 4,643,691 | Granted February 17, 1987 |
| Schiavo et al. | U.S. Pat. No. 4,729,751 | Granted March 8, 1988 |
| Fogarty et al. | U.S. Pat. No. 1,186,673 | Granted February 16, 1993 |
| Larson | U.S. Pat. No. 5,588,895 | Granted December 31, 1996 |
| Kulchyski | U.S. Pat. No. 5,803,787 | Granted September 8, 1998 |
| Toft | U.S. Pat. No. 6,179,685 | Granted January 30, 2001 |
| Asmussen et al. | U.S. Pat. No. 6,203,396 | Granted March 20, 2001 |

[0004] In reviewing these patents, the appearance of the resultant dolls or figures is relatively "clunky" and not aesthetically pleasing.

## SUMMARY OF THE INVENTION

[0005] In accordance with the present invention a more aesthetically pleasing and elegant doll with changeable footgear, includes open work shoes with exposed portions of the feet matching the color and texture of the exposed legs; and straps of the shoes extend around the lower legs at the separation point where the removable foot/shoe assemblies mate with the lower leg. With this configuration, the straps of the shoes conceal the joint between the leg and the foot/shoe assembly, resulting in a more realistic and elegant doll construction.

-1-

EXHIBIT 7

PAGE 35

MGA 0825486

EX 500-0002

[0006]   Additional features which may be included would involve the use of colored shoes and shoe straps which contrast sharply with the exposed skin areas of the foot; and snap-in mechanical arrangements for assembling the shoe/foot assemblies to the legs of the doll.

[0007]   Other objects, features and advantages will become apparent from a consideration of the following detailed description, and from the accompanying drawings.

## BRIEF DESCRIPTION OF THE DRAWINGS

[0008]   Fig. 1 shows a doll provided with changeable shoes or footgear, illustrating the principles of the invention;

[0009]   Fig. 2 is an enlarged cross-sectional view taken along the plane indicated at 2-2 of Fig. 1; and

[0010]   Figs. 3 – 5 illustrate alternative shoes or foot/shoe assemblies shown mounted on one leg of the doll of Fig. 1.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

[0011]   While the specification describes particular embodiments of the present invention, those of ordinary skill can devise variations of the present invention without departing from the inventive concepts.

[0012]   Referring more particularly to the drawings, Fig. 1 shows a doll 12 formed of known materials employed for dolls, such as resilient plastic material.  The doll 12 has lower legs 14, 16 and foot and shoe assemblies 18, 20 for mounting on the lower legs 14, 16, respectively.

[0013]   Fig. 2 is an enlarged cross-sectional view taken in the plane indicated at 2 – 2 in Fig. 1.

[0014]   In order to removably secure the shoe and foot assemblies 18, 20 to the legs 14, 16, the leg 14 has an enlarged protuberance 22 which snaps into a recess 24 in the assembly 18; and similarly, as shown in Fig. 2, the leg 16 has an enlarged protuberance 26 which locks into a recess 28 in the shoe and foot assembly 20.

2

EXHIBIT _____7_____

PAGE _____36_____

MGA 0825487

EX 500-0003

[0015]   It is desirable that the separation points 30 and 32 be concealed or made less noticeable, to provide a more realistic appearance.  This is accomplished by providing the shoes with the appearance of a strap 34 on assembly 18, and strap 36 on assembly 20.  With the upper edge of the simulated strap enlargements 34, 36 coincident with the separation points 30, 32, the separation points are not conspicuous.

[0016]   This effect is enhanced by the exposed skin areas 42 on assembly 18 and 44 on assembly 20.  Further, the color and texture of the lower legs 14, 16 are substantially the same as the color and texture of the exposed feet areas 42 and 44.

[0017]   Figs. 3, 4 and 5 illustrate typical alternative shoe styles which may be employed with the doll 12 of Fig. 1.  Thus, a shoe/foot assembly may be selected of a color to match the color of a dress to be worn by the doll, or may be selected for special activities such as beach wear or formal occasions.

[0018]   In Fig. 3 the leg 52, separation point 54, and upper strap 56 on the foot/shoe assembly 58, are shown.  In addition, the skin area 60 of the foot/shoe assembly 58 is substantially the same as that of the leg 52.

[0019]   Fig. 4 shows another alternative shoe/foot configuration 64 mounted on the leg 66 at separation point 68.  As in the arrangements of Figs. 1 – 3, the simulated strap 70 conceals the separation point 68, and the skin area 72 of the foot matches that of the lower leg 66.

[0020]   Fig. 5 is a similar showing of a shoe/foot assembly 76 mounted on the lower leg 78 of the doll at separation point 80.  The simulated strap 82 serves to camouflage the separation point.  In Fig. 5 the shoe is shown darkened to emphasize that different colored shoes may be employed, and that it is desirable that the shoe color contrast sharply with the skin color for more effective concealment or camouflaging of the separation point.  For specific examples, the shoe colors may be blue, green, red, black or some combination thereof.

[0021]   Return to Fig. 2 of the drawings, it may be noted that the protuberance 26 has a larger cross-sectional configuration than the mouth 27 of the opening 28.  Accordingly, with both the doll legs 16, 18 and the foot/shoe assemblies 18 and 20 being of resilient

3.

EXHIBIT   7

PAGE   37

MGA 0825488

EX 500-0004

Matter No. 15904-142

material, the protuberance 26 may be snapped through the mouth 27 of the opening 28, and thereafter the shoe/foot assemblies are firmly held onto the legs 14, 16 of the doll.

[0022]  In the foregoing detailed description, specific embodiments of the invention have been described. However, it is to be understood that various changes and modifications may be made without departing from the spirit and scope of the invention. Thus, by way of example and not of limitation instead of having the protuberance 26 on the leg 16 and the recess 28 on the shoe/foot assemblies, this configuration may be reversed, with the protuberance on the shoe/foot assembly, and the recess on the doll legs.  Further, instead of a single protuberance and mating recess, other snap-together arrangements may be employed, using more than one protuberance/recess, or a snap-in ring and mating ring shaped recess could be used.  It is also noted that, instead of using resilient plastic for the doll, stiffer plastic could be employed, and the foot/shoe assemblies may be attached using a simple concealed mechanical latch.  Accordingly, the invention is not limited to the exact embodiments described hereinabove and shown in the drawings.

4

EXHIBIT ____7____

PAGE ____38____

MGA 0825489

EX 500-0005

Matter No. 15904-142

**WE CLAIM:**

1.   A doll with changeable footgear comprising:

a torso having a body and legs, said legs having a predetermined skin color and texture;

a pair of foot/shoe assemblies, each including an open shoe with straps, with the shoe being open to expose at least part of the foot, the foot having substantially the same predetermined skin color and texture;

each said assembly being removable secured to one of said legs at the lower leg or ankle of said doll at a separation point;

each said assembly and lower legs having a snap-together joint with a protuberance on one part and a mating recess on the other part; and

a simulated strap forming part of said shoe extending around said assembly at said separation point.

2.   A doll as defined in claim 1 wherein the shoe portion of the foot/shoe assembly is colored to contrast sharply with the exposed skin areas of the foot.

3.   A doll with changeable footgear as defined in claim 1 further including a plurality of different sets of shoes of different styles for selectively mounting on said legs.

4.   A doll as defined in claim 1 wherein said doll and said foot/shoe assemblies are formed of resilient plastic material.

5.   A doll with changeable footgear comprising:

a torso having a body and legs, said legs having a predetermined color;

a pair of foot/shoe assemblies, each including an open shoe with straps, with the shoe being open to expose at least part of the foot, the foot having substantially the same predetermined color;

each said assembly being removable secured to one of said legs at the lower leg or ankle of said doll at a separation point;

5

EXHIBIT ___7___

PAGE ___39___

MGA 0825490

EX 500-0006

Matter No. 15904-142

each said assembly and lower legs having a joint for releasably securing the foot/shoe assemblies to the legs; and

a simulated strap forming part of said shoe extending around said assembly at said separation point.

6.    A doll as defined in claim 5 wherein the shoe portion of the foot/shoe assembly is colored to contrast sharply with the exposed skin areas of the foot.

7.    A doll with changeable footgear as defined in claim 5 further including a plurality of different sets of shoes of different styles for selectively mounting on said legs.

8.    A doll as defined in claim 5 wherein said doll and said foot/shoe assemblies are formed of resilient plastic material.

9.    A doll with changeable footgear comprising:

a torso having a body and legs, said legs having a predetermined color;

a pair of foot/shoe assemblies, each including an open shoe with straps, with the shoe being open to expose at least part of the foot, the foot having substantially the same predetermined color;

each said assembly being removable secured to one of said legs at the lower leg or ankle of said doll at a separation point;

each said assembly and lower legs having a snap-together joint; and

a simulated strap forming part of said shoe extending around said assembly at said separation point.

10.  A doll as defined in claim 9 wherein the shoe portion of the foot/shoe assembly is colored to contrast sharply with the exposed skin areas of the foot.

11.  A doll with changeable footgear as defined in claim 9 further including a plurality of different sets of shoes of different styles for selectively mounting on said legs.

12.  A doll as defined in claim 9 wherein said doll and said foot/shoe assemblies are formed of resilient plastic material.

8

EXHIBIT _____7_____

PAGE _____40_____

MGA 0825491

EX 500-0007

Matter No. 15904-142

13. A doll with changeable footgear comprising:

a torso having a body and legs;

a pair of foot/shoe assemblies, each including an open shoe with straps, with the shoe being open to expose at least part of the foot;

each said assembly being removable secured to one of said legs at the lower leg or ankle of said doll at a separation point;

each said assembly and lower legs having a joint for releasably securing the foot/shoe assemblies to the legs; and

a simulated strap forming part of said shoe extending around said assembly at said separation point.

14. A doll as defined in claim 13 wherein the shoe portion of the foot/shoe assembly is colored to contrast sharply with the exposed skin areas of the foot.

15. A doll with changeable footgear as defined in claim 13 further including a plurality of different sets of shoes of different styles for selectively mounting on said legs.

16. A doll as defined in claim 13 wherein said doll and said foot/shoe assemblies are formed of resilient plastic material.

17. A doll as defined in claim 13 wherein said exposed parts of the feet have substantially the same color as said legs.

Z

EXHIBIT 7
PAGE 41

MGA 0825492

EX 500-0008

Matter No. 15904-142

## Doll With Aesthetic Changeable Footgear

### ABSTRACT OF THE DISCLOSURE

A doll with changeable footgear includes a torso with legs, and a pair of foot/shoe assemblies mounted on the legs at separation points; and each foot shoe assembly has exposed skin of a color and texture substantially matching the skin of the legs, and the simulated shoes include simulated straps extending around the foot/shoe assembly immediately adjacent the separation point on each leg. Each foot/shoe assembly may be mounted on one of the doll legs, employing a protuberance on one part and a recess on the other part, with a snap-in locking fit between the two parts. The simulated shoes may be of a sharply contrasting color relative to the skin color.

8

EXHIBIT ___7___

PAGE ___42___

MGA 0825493

EX 500-0009

1/2



FIG. 1

FIG. 2

EXHIBIT 7

PAGE 43

MGA 0825494

EX 500-0010

2/2



FIG. 3

FIG. 4

FIG. 5

EXHIBIT ___7___

PAGE ___44___

MGA 0825495

EX 500-0011

# EXHIBIT 8

02/24/08  11:08am  P. 002

FROM OPPENHEIMER - L. A.                    (THU) 2. 13' 03 16:46/ST. .0:42/NO. 4860087645 P 14

Docket No. 15994-142

## DECLARATION, POWER OF ATTORNEY AND PETITION

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled DOLL WITH AESTHETIC CHANGEABLE FOOTGEAR the specification of which is attached hereto.

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with 37 C.F.R. § 1.56(a).

I hereby declare: All statements made of my own knowledge are true, and I believe that all statements made on information and belief are true. I make these statements with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001 and that such willful false statements may jeopardize the validity of the application or any patent issued on the application.

## POWER OF ATTORNEY

I appoint the following as my attorneys with full power of substitution and revocation, to prosecute said application and to transact in connection therewith all business in the Patent and Trademark Office and before competent International Authorities:

Herman, C., Reg. 29,349
Bobya, M.F., Reg. 45,267
Bosworth, M.K., Reg. 28,186
Bovasso, L.J., Reg. 24,075
Boyce, J., Reg. 40,920
Brown, M.E., Reg. 28,590
Burton, D.L., Reg. 45,323
Canter, B., Reg. 34,792
Chen, A., Reg. P48,508
Chou, C., Reg. 41,672
Coleman, B.R., Reg. 39,145
Collman, L.C., Reg. 39,645

Darrow, C., Reg. 30,166
Diepenbrock III, A.B., Reg. 39,960
Edwards, W.G., Reg. 44,426
Farber, M., Reg. 32,612
Gelfound, C.A., Reg. 41,032
Hamciok, C.A.S., Reg. 22,586
Hansen, S.R., Reg. 38,456
Harris, M.D., Reg. 26,690
Hayden, R.D., Reg. 42,645
Heyninck, M., Reg. 44,763
Hickman, P.L., Reg. 28,516

Hilberg, C.R., Reg. P48,749
Inskeep, J.W., Reg. 33,910
Kennedy, B., Reg. 33,407
Khan, T., Reg. 46,273
Kudla, J.P., Reg. P47,724
Larson, D.N., Reg. 29,401
Lazaris, S.J., Reg. 45,981
Lervick, C.J., Reg. 35,244
Licsko, S.C. Reg. 47,749
MacLean, K.A., Reg. 31,118
Maddux, M.M., Reg. 50,962
McKinley, D., Reg. 42,867

McRoss, L., Reg. 40,427
Morton, C.A., Reg. 44,954
Nader, R., Reg. P47,260
Rose, A. C., Reg. 17,047
Rosenberg, C., Reg. 31,464
Sherry, L., Reg. 43,918
Smith, G.P., Reg. 20,142
Switedun, B., Reg. 49,050
Valencia, R.A., Reg. 43,216
Wood, G.B., Reg. 28,133
Wrigley, B.A., Reg. 34,950

whose address is:

## OPPENHEIMER

OPPENHEIMER WOLFF & DONNELLY LLP
2029 Century Park East, Suite 3800
Los Angeles, California 90067
(310) 788-5000 ● Fax (310) 788-5100

Exhibit 1701

___/___/08 ___ ___
Jana Siegers, CSR 10648

CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT ___8___

PAGE ___45___

MGA 3765285

EX 1701-0001

02/24/09   11:03am   P. 008

FROM OPPENHEIMER - L. A.                    (THU) 2. 13'03 16:47/St. 16:42/NO. 4860087645 P 15

Docket No. 15994-142

Address all communications and telephone calls to Alan C. Rose of the below-listed firm at (310) 788-5030 and at e-mail address arose@oppenheimer.com.

Wherefore I pray that Letters Patent be granted to me for the invention or discovery described and claimed in the foregoing specification and claims, and I hereby subscribe my name to the foregoing specification and claims, declaration, power of attorney, and this petition.

Full name of sole or first inventor ISAAC LARIAN

Inventor's signature _____ Date 2 - 24 - 2003

Residence:          237 Carolwood, Los Angeles, California 90077
Citizenship         United States of American
Post Office Address  237 Carolwood, Los Angeles, California 90077 USA

- 2 -

LA: 333537 v01 02/13/2003

CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT _____ 8 _____

PAGE _____ 46 _____

MGA 3765286

EX 1701-0002

# EXHIBIT 9

**COPY**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 90378)
2      Michael T. Zeller (Bar No. 196417)
    865 South Figueroa Street, 10th Floor
3  Los Angeles, California 90017
    Telephone:  (213) 443-3000
4      Facsimile:  (213) 443-3100

5  Attorneys for Plaintiff
   Mattel, Inc.
6

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

APR 27 2004

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
SUE GABB

7

8        SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            FOR THE COUNTY OF LOS ANGELES

10

11  MATTEL, INC., a Delaware corporation,    )  CASE NO.   BC314398

12                         )

13            Plaintiff,       )  COMPLAINT FOR:

14          v.              )  (1)  BREACH OF CONTRACT;
                       )  (2)  BREACH OF FIDUCIARY
15                         )       DUTY;
   CARTER BRYANT, an individual; and     )  (3)  BREACH OF DUTY OF
16  DOES 1 through 10, inclusive,         )       LOYALTY;
                       )  (4)  UNJUST ENRICHMENT; AND
17                         )  (5)  CONVERSION
          Defendants.     )
18                         )

19

20

21

22

23

24

25

26

27

28

07209/579342.1

EXHIBIT ___9___

PAGE ___47___

COMPLAINT

1     Plaintiff Mattel, Inc. ("Mattel") brings this action against defendants Carter
2  Bryant ("Bryant") and Does 1 through 10 (all defendants being collectively referred to as
3  "defendants") and alleges as follows:

4

5                                    Parties

6

7        1.    Mattel is a corporation organized and existing under the laws of the
8  State of Delaware and has its principal place of business in El Segundo, California.

9        2.    Mattel is informed and believes, and on that basis alleges, that defendant
10  Bryant is an individual currently residing in Springfield, Missouri.

11       3.    The true names and capacities of defendants sued herein as Does 1
12  through 10, inclusive, are unknown to Mattel, which therefore sues said defendants by such
13  fictitious names. Mattel will amend this Complaint to allege their true names and capacities
14  when the same are ascertained.

15       4.    Mattel is informed and believes, and on that basis alleges, that at all
16  times relevant herein, defendants, and each of them, were acting in concert and active
17  participation with each other in committing the wrongful acts alleged herein, and were the
18  agents of each other, and in doing the things alleged herein, each defendant was acting
19  within the course and scope of his, her or its agency and was subject to and under the
20  supervision of, and was acting with the knowledge of, his, her or its co-defendants.

21

22                              Jurisdiction and Venue

23

24       5.    During the time of the acts complained of herein, Bryant was employed
25  by Mattel in, and was a resident of, Los Angeles County. Bryant's contracts with Mattel that
26  are at issue in this action were executed, performed and breached by Bryant in Los Angeles
27  County.  In addition, defendants committed the tortious conduct alleged herein while
28  physically located in Los Angeles County, and Mattel felt the effects of Bryant's breach and

07209/579342.1                                      -2-
                          EXHIBIT____9____                              COMPLAINT
                          PAGE____48____

1          43.    As a direct and proximate result of defendants' wrongful conversion of

2  Mattel's property and resources, Mattel has incurred damages. Mattel is entitled to recover

3  compensatory damages against defendants in an amount to be determined at trial.

4          44.    Defendants acted with malice, fraud and oppression, and in conscious

5  disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages

6  against defendants in an amount to be determined at trial.

7          45.    Furthermore, defendants' conduct has caused, and unless enjoined will

8  continue to cause, irreparable injury to Mattel that cannot be adequately compensated by

9  money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel

10  is entitled to an order restraining defendants from further conversion of Mattel property and

11  resources and/or restraining defendants from continuing to benefit from such conversion.

12

13                          <u>PRAYER FOR RELIEF</u>

14

15          WHEREFORE, Mattel hereby respectfully requests that this Court:

16          A.    Award Mattel its damages;

17          B.    Order defendants to disgorge to Mattel all payments, revenue, profits,

18  monies, royalties and any other benefits derived or obtained by defendants as a result of the

19  conduct described herein;

20          C.    Order specific performance by Bryant to comply with and satisfy

21  Bryant's contractual obligations to Mattel;

22          D.    Enter an injunction restraining defendants, and all those acting in

23  concert or participation with them, from engaging in further wrongful conduct and/or from

24  continuing to benefit from their wrongful conduct;

25          E.    Order defendants to pay Mattel the full cost of this action and Mattel's

26  reasonable attorneys' fees;

27          F.    Award Mattel punitive damages in an amount sufficient to punish

28  defendants and deter such misconduct in the future; and

EXHIBIT ___9___  -11-

PAGE ___49___

COMPLAINT

1            G.     Award such other and further relief as this Court deems just and proper.

2

3    DATED:  April 27, 2004            QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP

4

5

6                                      By _____
                                     Michael T. Zeller

7                                         Attorneys for Plaintiff
                                     Mattel, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/579342.1

-12-

EXHIBIT 9
PAGE 50

COMPLAINT

# EXHIBIT 10

1  M. RANDALL OPPENHEIMER (S.B. #77649)
   DIANA TORRES (S.B. #162284)
2  O'MELVENY & MEYERS, LLP
   400 South Hope Street
3  Los Angeles, CA  90071-2899
   Telephone:  (213) 430-6000
4  Facsimile:  (213) 430-6407

5  Attorneys for Defendant
   MGA ENTERTAINMENT, INC.

6

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11  MATTEL, INC., a Delaware          Case No.  CV 04-09059 NM (RNBx)
    Corporation,
12                                    **DEFENDANT IN INTERVENTION
              Plaintiff,              MGA ENTERTAINMENT, INC.'S
13                                    JOINDER IN DEFENDANT
         v.                           CARTER BRYANT'S OPPOSITION
14                                    TO PLAINTIFF MATTEL, INC.'S
    CARTER BRYANT, an individual;     MOTION TO REMAND
15  and DOES 1 through 10, inclusive,
                                      **[28 U.S.C. § 1332(a)(1), § 1331, § 1441
16            Defendant.              (a) & (b), § 1446]**

17  _____

18  CARTER BRYANT, on behalf of
    himself, all present and former
19  employees of Mattel, Inc., and the
    general public,
20
              Cross-Plaintiff,
21
         v.
22
    MATTEL, INC., a Delaware
23  Corporation,

24            Cross-Defendant.
    _____
25

26              **FILED UNDER SEAL
              HIGHLY CONFIDENTIAL
27            ATTORNEYS EYES ONLY**

28
    LA2:745111.3
    _____
         DEFENDANT MGA'S JOINDER IN DEFENDANT BRYANT'S OPPOSITION TO REMAND

    EXHIBIT _____10_____

    PAGE _____51_____

1

## **TABLE OF CONTENTS**

2
Page

3   I.    PRELIMINARY STATEMENT ...........................................................................1

4   II.   BACKGROUND FACTS....................................................................................1

5   III.  MORE THAN $75,000 IS AT STAKE...............................................................3

6         A.    Mattel's Requested Injunctive Relief Exceeds $75,000...........................3

7         b.    Mattel's Requested Monetary Relief Exceeds $75,000. ...........................5

8   IV.   MATTEL'S MISAPPROPRIATION-RELATED STATE LAW TORT
         CLAIMS ARE MERELY DISGUISED COPYRIGHT
9        INFRINGEMENT CLAIMS AND THUS ARE PREEMPTED,
         DEMONSTRATING FEDERAL JURISDICTION.............................................6
10

11        A.    Mattel's Claims Are Within the Subject Matter of Copyright.................7

12        B.    Each of The Claims At Issue Protects Rights Equivalent to Those
               Granted Under Copyright Law................................................................9

13  V.    CONCLUSION................................................................................... 12

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT MGA'S JOINDER IN DEFENDANT BRYANT'S OPPOSITION TO REMAND

EXHIBIT _____ *10* _____

PAGE _____ *52* _____

# TABLE OF AUTHORITIES

## CASES

*Caterpillar, Inc. v. Williams,*
  482 U.S. 386 (1987)....................................................................................5

*Del Madera Props. v. Rhodes & Gardner, Inc.,*
  820 F.2d 973 (9th Cir. 1987).............................................................. 5, 9, 10

*Dielsi v. Falk,*
  916 F. Supp. 985 (C.D. Cal. 1996) ................................................. 5, 6, 9, 10

*Endemol Entertainment, B.V. v. Twentieth Television, Inc.,*
  No. CV 98-0608 ABC (BQRx),
  1998 U.S. Dist LEXIS 19049, at *9 U.S.P.Q.2d (BNA) 1524 (C.D.
  Cal. Oct. 1, 1998)................................................................................. 6, 7

*Entous v. Viacom Int'l, Inc.,*
  151 F. Supp. 2d 1150 (C.D. Cal. 2001) ...............................................................7

*Fogerty v. Fantasy, Inc.,*
  510 U.S. 517 (1994)....................................................................................6

*G.S. Rasmussen & Assocs. v. Kalitta Flying Serv.,*
  958 F.2d 896 (9th Cir. 1992)................................................................6

*Idema v. Dreamworks, Inc.,*
  162 F. Supp. 2d 1129 (C.D. Cal. 2001) ...............................................9

*Mayer v. Josiah Wedgwood & Sons, Ltd.,*
  601 F. Supp. 1523 (S.D.N.Y. 1985)........................................................8

*McCauley v. Ford Motor Co. (In re Ford Motor Company/Citibank
(S.D.) N.A.),*
  264 F.3d 952 (9th Cir. 2001)..............................................................3

*Selby v. New Line Cinema Corp.,*
  96 F. Supp. 2d 1053 (C.D. Cal. 2000) .................................................7

*Trenton v. Infinity Broadcasting Corp.,*
  865 F. Supp. 1416 (C.D. Cal. 1994) ..................................................... 10

*United States ex rel. Berge v. Trustees of Univ. of Ala.,*
  104 F.3d 1453U (4th Cir. 1997)............................................................6

## STATUTES

17 U.S.C. § 301(a).......................................................................................6

## OTHER AUTHORITIES

1 M. Nimmer, The Law of Copyright § 1.01 [B][3] at 1-11-12 (1984) .......................9

Copyright Act .................................................................................. 5, 6, 7

DEFENDANT MGA'S JOINDER IN DEFENDANT BRYANT'S OPPOSITION TO REMAND

EXHIBIT ___70___

PAGE ___53___

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    PRELIMINARY STATEMENT

PLEASE TAKE NOTICE that Defendant in Intervention MGA Entertainment, Inc., ("MGA") hereby joins in Defendant Carter Bryant's Opposition to Plaintiff Mattel, Inc.'s, Motion to Remand for all of the reasons states therein. MGA further submits the following statement concerning the value of the relief that Mattel seeks in this action. As set forth in the stipulation and order allowing MGA to intervene as a defendant, MGA has intervened in this matter because it believes that its substantial interest in the "Bratz" property is at stake.

## II.    BACKGROUND FACTS

MGA is a consumer entertainment products company and manufacturer of the "Bratz" line of fashion dolls, which defendant Carter Bryant ("Bryant") created. (Decl. of Mel Woods ¶ 2.) The first "Bratz" drawings were created by Bryant and acquired by MGA in late 2000. (*Id.*) Bryant continues to provide services and creative input to MGA through the present. (*Id.*)

MGA introduced the "Bratz" line of fashion dolls in June 2001, and it quickly became and one of the world's most popular toy lines. (*Id.* ¶ 3.) "Bratz" has garnered extensive positive media coverage, including segments on many major U.S. broadcast and cable networks and numerous local television stations, e.g., ABC, NBC, CNN. (*Id.* ¶ 4.) Moreover, the national television shows on which "Bratz" has been featured include *Good Morning America*, *LIVE with Regis and Kelly*, *The Today Show*, *World News Tonight with Peter Jennings*, and *NBC Nightly News*. (*Id.*) At various times since the introduction of the "Bratz" line of dolls, these television shows have lauded "Bratz" with terms such as "one of the hottest toys of the year," the toy "all the kids are asking for," "the best-selling fashion doll in America," and "the hip doll of the season." (*Id.*) Furthermore, widely-disseminated print media such as *The Wall Street Journal*, *Business Week*, *USA Today*, the *Los Angeles Times*, the *New York Post*, *The Philadelphia Inquirer*, the *Boston Herald*, and the *San Francisco Chronicle*, as well as

EXHIBIT ___

PAGE ___ 54

1  trade publications such as the *Hollywood Reporter* have commented favorably about

2  "Bratz" and provided it with additional coverage. (*Id.* ¶ 5.)

3  "Bratz" has become a media phenomenon, in part because it is an innovative

4  toy. (*Id.*) "Bratz" has also made sales inroads in a difficult but lucrative market

5  niche. Specifically, "Bratz" has tapped the pre-teen "tween" market, a segment of the

6  market that marketers and makers had previously somewhat overlooked. (*Id.*)

7  Indeed, some press reports have concluded that "Bratz" created an entirely new

8  category of kids' toys, consisting of kids who have outgrown "Barbie" dolls and who

9  demand toys that are more up-to-date and that reflect the lifestyles and fashions of

10  "tweens." (*Id.*) Importantly, not only does MGA believe that these toys are market

11  innovations and more stylish than other dolls, but the industry has confirmed these

12  beliefs through several awards to "Bratz," including "Girl Toy of the Year" in 2003

13  and "People's Choice Toy of the Year" in 2001 and 2002. (*Id.* ¶ 6.) In 2004, the

14  "Bratz" line was awarded the Licensing Property of the Year by the Licensing

15  Industry Manufacturers Association (LIMA), and various "Bratz" lines have received

16  awards over time from media and various people responsible for identifying toy

17  market trends. (*Id.*)

18  As one might expect, the introduction of "Bratz" into the marketplace has

19  caused some tumult in the toy industry and has apparently raised the hackles of long-

20  dominant Mattel. Mattel's "Barbie" fashion doll has long led its market segment. (*Id.*

21  ¶ 7.) As evidenced by its toy and licensing industry recognition, awards, media

22  attention, and sales (discussed below), "Bratz" has challenged the "Barbie" doll line

23  dominance in the fashion doll market since being introduced in 2001. (*Id.* ¶¶ 6-7.)

24  "Bratz" and "Barbie" differ in significant ways. Unlike "Barbie" dolls,

25  "Bratz" dolls and products present a contemporary, urban appearance that is not

26  confined to one ethnicity or race. (*Id.* ¶ 8.) Moreover, "Bratz" dolls are a bit shorter

27  than "Barbie," have exaggerated features such as large feet, on which they can stand

28  (also unlike "Barbie"), thereby emphasizing shoe fashions. (*Id.*) "Bratz" thus appeals

LA2:745111.3                                    2.

1  to contemporary teenage and pre-teen girls. (*Id.*)

2  Apparently due to the "Bratz" phenomenon in the doll industry, Mattel hurried

3  to release "My Scene Barbie" in 2002 a line of fashion dolls under the "Barbie"

4  umbrella that looked much more like "Bratz" than the traditional "Barbie." (*Id.* ¶ 9.)

5  In an apparent imitation of "Bratz," the "My Scene Barbie" dolls have oversized

6  heads, artfully made-up almond-shaped eyes, large, overly-lined and lipsticked lips,

7  trendy clothes and hairstyles, over-sized feet and a more ethnic look. (*Id.*)

8  Furthermore, Mattel includes two outfits and an accessory with "My Scene Barbie"

9  dolls, following the trend set by "Bratz." (*Id.*)  In addition, Mattel's "My Scene

10  Barbie" dolls have (since fall 2003) been introduced with themes, just as "Bratz" are.

11  (*Id.*)

12  "Bratz" has been a commercial success. (*Id.* ¶ 10.)  The net sales of "Bratz"

13  and related products earned (at the very least) tens of millions of dollars in just the

14  first two years of sales (2001 and 2002), along with continuing revenues though today.

15  (*Id.*)[1]  The majority of the 200+ people that MGA employs in Southern California are

16  directly or indirectly involved in some aspect of the production, marketing and sales

17  of the "Bratz" product line. (*Id.*)

18  ## ARGUMENT

19  **III.  MORE THAN $75,000 IS AT STAKE**

20  **A.  Mattel's Requested Injunctive Relief Exceeds $75,000.**

21  In this Circuit, the value of the injunctive relief in a single plaintiff case is

22  determined by the "either viewpoint" rule.  Under that rule, "if the value of the thing

23  to be accomplished [is] equal to the dollar minimum of the jurisdictional amount

24  requirement to anyone concerned in the action, then jurisdiction [is] satisfied."

25  [1] MGA is a privately owned company and does not make public its sales and profit figures.

26  Accordingly, even though there is a protective order in this case, MGA is reluctant to provide exact financial data to anyone, let alone Mattel, its fiercest competitor, which has begun a campaign of

27  threatening or suing employees who leave Mattel to work for MGA.  To the extent the Court requires more specific information to confirm that the potential cost to MGA's of Mattel's requested

28  injunctive relief from MGA's viewpoint, is far greater than $75,000, MGA is willing to provide more specific information to the Court for *in camera* review.

DEFENDANT MGA'S JOINDER IN DEFENDANT BRYANT'S OPPOSITION TO REMAND

EXHIBIT ___10___

___56___

PAGE ___

1   *McCauley v. Ford Motor Co. (In re Ford Motor Company/Citibank (S.D.) N.A.)*, 264
2   F.3d 952, 958 (9th Cir. 2001) (internal citations omitted). Thus, under the "either
3   viewpoint" rule, the test for determining the amount in controversy is *the pecuniary*
4   *result to either party* that judgment would produce. *Id.* In other words, where the
5   value of a plaintiff's potential recovery is below the jurisdictional amount, but the
6   potential cost to the defendant of complying with the injunction exceeds that amount,
7   the latter amount represents the amount in controversy for jurisdictional purposes.
8   *(Id.)*

9        Mattel seeks injunctive relief for each of its claims against Bryant. In its breach
10   of contract claim, Mattel contends that Bryant stole its intellectual property by
11   breaching a provision in his agreement "assign[ing] to Mattel all right, title and interest
12   in 'inventions,' including without limitation 'designs,' that he conceived or reduced to
13   practice during his employment by Mattel" by "secretly aid[ing], assist[ing] and
14   work[ing] for a Mattel competitor during his employment with Mattel" (Compl. ¶¶ 16-
15   17). It is this same conduct that underlies Mattel's breach of fiduciary duty, breach of
16   duty of loyalty and unjust enrichment claims. *(See, e.g., id.* ¶¶ 23, 30 and 36.) Mattel
17   seeks injunctive relief for this alleged breach, including "orders mandating Bryant's
18   specific performance of his contracts with Mattel and restraining Bryant from further
19   beach" and "an injunction restraining defendants, and all those acting in concert or
20   participation with them, from engaging in further wrongful conduct and/or continuing
21   to benefit from their wrongful conduct." *(Id.* ¶ 19 & p. 11; *see also id.* ¶¶ 27, 34, 39.)

22        Similarly, Mattel alleges in its claim for conversion that it was "entitled to. . .
23   Bryant's exclusive services and the exclusive ownership of his inventions," but Bryant
24   "purported to grant rights to such inventions to a competitor." (Compl. ¶ 41). Mattel
25   concludes that "Defendants wrongfully converted Mattel property and resources by
26   asserting ownership thereto and appropriating and using Mattel's property and
27   resources for their own benefit . . . without the permission of Mattel" and calls on the
28   court to "restrain[] defendants from further conversion of Mattel property and

LA2:745111.3                                    4.

EXHIBIT _____

PAGE _____ 57

1 resources and/or restraining defendants from continuing to benefit from such
2 conversion." (Compl. ¶¶ 42, 45).

3     If granted, the injunctive relief that Mattel requests would necessarily have a
4 financial impact far greater than $75,000. Fairly read, Mattel seeks an order barring
5 Bryant from further assisting MGA with the "Bratz" line of dolls and precluding both
6 Bryant and MGA – which sells the "Bratz" dolls – from "continuing to benefit" from
7 the sale of those dolls. The "Bratz" line of dolls generated at least tens of millions of
8 dollars in sales for MGA in the first two years after their introduction. If MGA's sales
9 of those dolls were impacted by an injunction, the financial impact on MGA would
10 unquestionably reach into the tens of millions dollars. Moreover, MGA would no
11 longer have work for a substantial percentage of its workforce and would have to
12 dramatically cut back its operations, including the reduction of its staff. (Woods Decl.
13 ¶ 10.) The potential impact of that diminution of operations from the requested
14 injunctive relief, as measured in dollars, would greatly exceed the jurisdictional
15 minimum of this Court. (*Id.*)

16     **B.    Mattel's Requested Monetary Relief Exceeds $75,000.**

17     Not only does Mattel seek such wide-ranging injunctive relief against the
18 "Defendants," but it also seeks monetary relief in an unspecified amount equal to "the
19 value of information and intellectual property owned by Mattel which Bryant
20 provided to the competitor. . . the value of the benefits the competitor obtained from
21 Bryant," (Compl. ¶ 19), punitive damages (Compl. ¶¶ 26, 33, 38 & 44), and
22 disgorgement of "all payments, revenue, profits, monies, royalties and any other
23 benefits derived of obtained by defendants as a result of the conduct described
24 herein." (Compl. at 11).

25     From MGA's perspective, the value of the intellectual property in "Bratz"
26 reaches into the millions of dollars, as do the "payments, revenue, profits, monies,
27 [and] royalties" of which Mattel seeks disgorgement. While MGA disputes Mattel's
28 claims, there can be no question that Mattel seeks *all* of those millions. Indeed,

LA2:745111.3     5.

1  Mattel's half of a Joint Discovery Stipulation submitted to Bryant on December 20

2  contains the following rationale for why Bryant's recent contracts with and royalties

3  from MGA are relevant:

> Where a contract is also breached, as here, remedies may similarly include the
> employee's disgorgement of benefits received as a result of the breach . ..
> Bryant's contracts and related communications with MGA are highly relevant to
> the benefits, including monetary payments, that he received as a consequence of
> his disloyalty. [fn] *Further remedies are also available. [I]f an agent is one of
> a group of conspirators which received a profit as a result of a violation of the
> agent's duty of loyalty, he is subject to liability for the entire amount although
> he received none or only a portion of it.* Rest. (Second) of agency, sec. 403.
> comment c.

9  (2d Jacoby Decl. ¶ 19 & Ex. 11:17-24 (emphasis added).) Thus, it appears that Mattel

10 seeks to recover all "benefits derived" from "Bratz" dolls, whether or not actually

11 earned by Bryant and without regard to the time period in which those "benefits" were

12 earned. As the "benefits" earned by MGA reach into the millions, the monetary relief

13 Mattel seeks therefore well exceeds the jurisdictional minimum.

## IV.   MATTEL'S MISAPPROPRIATION-RELATED STATE LAW TORT CLAIMS ARE MERELY DISGUISED COPYRIGHT INFRINGEMENT CLAIMS AND THUS ARE PREEMPTED, DEMONSTRATING FEDERAL JURISDICTION

As the Court is aware, an ostensible state-law claim may nevertheless be
removed based on federal question jurisdiction if the federal law at issue completely
preempts state law. *Dielsi v. Falk,* 916 F. Supp. 985, 993 (C.D. Cal. 1996) (Collins,
J.) (holding that state conversion claim was completely preempted by federal
Copyright Act, warranting removal) (citing *Caterpillar, Inc. v. Williams,* 482 U.S.
386, 392 (1987)). In the Ninth Circuit, the law is clear that state law claims asserting
a type of misappropriation/wrongful taking of intellectual property are preempted by
the Copyright Act. *Del Madera Props. v. Rhodes & Gardner, Inc.,* 820 F.2d 973,
976-77 (9th Cir. 1987) (California breach of fiduciary duty and unjust enrichment
claims dealing with misappropriation of copyrighted map and time and effort spent
creating map and attachments were "part and parcel of the copyright" statute and were
preempted), *overruled on other grounds by Fogerty v. Fantasy, Inc.,* 510 U.S. 517

1  (1994); *Dielsi,* 916 F. Supp. at 992-93 (state law misappropriation-based claims were
2  completely preempted by Copyright Act and thus removable).

3      Under the Copyright Act, "all legal or equitable rights that are equivalent to any
4  of the exclusive rights within the general scope of copyright . . . and come within the
5  subject matter of copyright . . . are governed *exclusively* by this [Copyright] Act." 17
6  U.S.C. § 301(a) (emphasis added). As a result of this language, federal "'[c]opyright
7  preemption is both *explicit* [in 17 U.S.C. § 301(a)] *and broad.*'" *Dielsi,* 922 F. Supp.
8  at 990 (emphasis added) (quoting *G.S. Rasmussen & Assocs. v. Kalitta Flying Serv.,*
9  958 F.2d 896, 904 (9th Cir. 1992)). Preemption occurs if 1) the work at issue
10  "come[s] within the 'subject matter of copyright'" and 2) the state law rights relied
11  upon by the plaintiff are "equivalent to any of the exclusive rights within the general
12  scope of copyright," i.e., general copyright protections. *Del Madera Props.,* 820 F.2d
13  at 976 (quotations omitted); *Dielsi,* 922 F. Supp. at 991.[2] Furthermore, "'the shadow
14  actually cast by the Act's preemption is notably broader than the wing of its
15  protection.'" *Endemol Entertainment, B.V. v. Twentieth Television, Inc.,* No. CV 98-
16  0608 ABC (BQRx), 1998 U.S. Dist LEXIS 19049, at *9, 48 U.S.P.Q.2d (BNA) 1524
17  (C.D. Cal. Oct. 1, 1998) (Collins, J.) (quoting *United States ex rel. Berge v. Trustees
18  of Univ. of Ala.,* 104 F.3d 1453, 1463 (4th Cir. 1997)).

19  **A.    Mattel's Claims Are Within the Subject Matter of Copyright**
20      This two-part test is satisfied here with respect to Mattel's conversion, breach of
21  fiduciary duty, breach of loyalty and unjust enrichment claims.[3] With regard to the

22  [2] *See also Worth v. Universal Pictures, Inc.* 5 F. Supp. 2d 816, 821 (C.D. Cal. 1997) (Baird, J.)
23  ("Complete preemption has been found for claims brought under the Copyright Act."); *Metrano v.
Fox Broadcasting Co.,* No. CV-00-02279 CAS (JWJx), 2000 U.S. Dist. LEXIS 7662, 2000 WL
24  979664, at *3 (C.D. Cal. Apr. 24, 2000) (Snyder, J.) ("Accordingly, state claims that are equivalent
to federal copyright claims are completely preempted by the Copyright Act.").
[3] MGA acknowledges that Bryant's second removal notice relies only on the preemption of Mattel's
25  conversion claim, not its other tort and equitable claims. As a recently added defendant to this
action via intervention, however, MGA should not be bound by that limitation and would be remiss
26  if it did not bring these additional bases to the Court's attention. Given the Court's continuing duty
to assure itself that it has jurisdiction even if the parties do not raise the issue, MGA would simply
27  note that these additional state-law claims further bolster the federal question jurisdiction asserted by
Bryant, and confirm that federal preemption supplies an adequate and independent basis for removal
28  and for the denial of the requested remand.
LA2:745111.3                              7.

1    first part of the preemption test, each of the claims rests on alleged conduct that comes

2    within copyright's subject matter.  For conversion, Mattel has sued Bryant for the

3    alleged "conversion" of Mattel's "ideas, concepts, rights, designs, proprietary

4    information, and other intellectual property and intangible property." (Compl. ¶ 41.)

5    While "ideas" or "concepts" are not protectable under copyright, courts have

6    consistently held that they nevertheless fall within the "subject matter of copyright"

7    for purposes of a preemption analysis. *Entous v. Viacom Int'l, Inc.*, 151 F. Supp. 2d

8    1150, 1159 (C.D. Cal. 2001); *Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053,

9    1058 (C.D. Cal. 2000) (ideas embodied in a work covered by the Copyright Act are

10    nevertheless within the subject matter of copyright for purposes of preemption

11    because scope and protection are not synonymous); *Endemol Entertainment*, 1998

12    U.S. Dist LEXIS 19049, at *9 (stating that "[e]ven though the ideas embodied in a

13    work covered by the Copyright Act fall outside copyright protection, this does not

14    mean that they fall outside the Act's scope regarding its subject matter").[4]

15         Similarly, Mattel's breach of loyalty, breach of fiduciary duty, and unjust

16    enrichment claim all stem from Mattel's allegation that Bryant provided its

17    intellectual property to MGA. (Compl. ¶¶ 12, 23, 30, 36). For instance, the fiduciary

18    duty claim avers in part that Bryant breached his duty by "using Mattel property,"

19    presumably including the designs for the subsequently copyrighted "Toon Teens,"

20    "for the benefit of, and to aid and assist, himself personally and the competitor of

21    Mattel [MGA]." (Compl. ¶ 23.) The breach of loyalty claim similarly avers that

22    Bryant preferred his own interests, culminating in a breach when he aided MGA by

23    entering into the agreement that assigned ownership of "Bratz" to MGA with royalties

24    payable to Bryant." (*Id.* ¶ 30.) The loyalty claim then repeats the language above in

25

26    [4] Moreover, preemption can be determined where the plaintiff asserting a conversion claim seeks to
     recover the profits from the allegedly converted work. *See Worth*, 5 F. Supp. 2d at 822-23

27    (conversion claim preempted where plaintiffs sought "profits from the movie's reproduction and
     distribution"). Here, Mattel not only seeks compensatory and punitive damages for use of "Mattel's

28    property and resources," but seeks to disgorge profits and royalties as well. (Compl. ¶¶ 42-44 & at
     p. 11.)

LA2:745111.3                                        8.

1    the fiduciary duty claim about "using Mattel property" for his and MGA's benefit.

2    (*Id.*) Finally, the unjust enrichment claim likewise focuses on misappropriating

3    property, alleging that Bryant "used and diverted Mattel property" for his and MGA's

4    benefit. (*Id.* ¶ 36.) The alleged misappropriation of Bryant's time and talent in

5    formulating the "Bratz" designs and allegedly copying them from "Toon Teens"

6    unquestionably brings each of Mattel's conversion, breach of fiduciary duty, breach of

7    loyalty and unjust enrichment claims within the subject matter of copyright. *Del*

8    *Madera Props.*, 820 F.2d at 976-77 (citing *Mayer v. Josiah Wedgwood & Sons, Ltd.*,

9    601 F. Supp. 1523, 1535 (S.D.N.Y. 1985) (stating that misappropriation of author's

10   talent and effort in creating a work "is precisely the type of misconduct the copyright

11   laws are designed to guard against")). Moreover, as set forth in Bryant's opposition

12   brief, it is now clear that Mattel alleges that the intellectual property that Bryant

13   allegedly provided to MGA is the "Toon Teens" property, which Mattel registered for

14   copyright in late November 2003 *and* apparently contends was copied by Bryant.

15   Accordingly, to the extent that each of Mattel's tort and equitable claims are based on

16   Bryant's alleged copying of "Toon Teens" and provision of intellectual property to

17   MGA that Mattel considers to be its own, the first part of the preemption test is met.[5]

18
19      **B.**     **Each of The Claims At Issue Protects Rights Equivalent to Those Granted Under Copyright Law**

20        The second, or equivalence, prong of the preemption test also is met with

21   respect to each of Mattel's tort and equitable claims. The second prong of the

22   preemption test casts a broad net; a right is "equivalent to copyright" if the "mere act

23   of reproduction, performance, distribution or display" will, in and of itself, infringe

---

[5] It makes no difference that Mattel may also be alleging that Bryant converted physical property or
breached his duties by providing physical property to MGA. Where a cause of action incorporates at
least, in part, subject matter of copyright and rights that are equivalent to those protected by
copyright, the part of that cause of action that is equivalent to rights protected by copyright is
preempted and thereby subject to federal jurisdiction. *Del Madera,* 820 F.2d at 977 (portion of
unjust enrichment claim that dealt with copying of materials within subject matter of copyright was
preempted.) Hence, to the extent Mattel purports to base its tort claims on the misappropriation of
such things as discarded doll parts and the personal use of a fax machine, Mattel still cannot avoid
this Court's jurisdiction so long as it claims that Bryant also converted and/or copied intellectual
property.

LA2:745111.3

9.

EXHIBIT __10__

PAGE __62__

1   the right created by state law. *Idema v. Dreamworks, Inc.,* 162 F. Supp. 2d 1129,

2   1189 (C.D. Cal. 2001) (quoting 1 M. Nimmer, The Law of Copyright § 1.01 [B][3] at

3   1-11-12 (1984)(internal quotes omitted)). As noted above, each of the state-law

4   claims addressed in this Joinder focuses on the alleged misappropriation of Mattel's

5   property.

6        Preemption therefore is triggered under the "equivalent rights" prong because,

7   in both the state and federal claims, the "wrong" is the same: "namely, the alleged

8   encroachment on one's exclusive right to profit from sale or reproductions of one's

9   original work(s)." *Idema,* 162 F. Supp. 2d at 1129. This "wrong" is exclusively

10   addressed by the federal Copyright Act. *Id.* Furthermore, none of the state-law

11   claims at issue contains an extra element that changes the nature of the action.[6] Courts

12   have not hesitated to hold these causes of action to be preempted by the Copyright

13   Act. For example, *Dielsi* specifically held that where a state-law conversion claim

14   asserts that the defendant has wrongfully "used and distributed" the plaintiff's

15   property, the "second prong of the *Del Madera* test" *is satisfied. Dielsi,* 916 F. Supp.

16   at 992. Mattel likewise accuses Bryant of wrongfully "asserting ownership" and

17   "appropriating and using Mattel's property," (Compl. ¶ 41), which plainly shows that

18   the state-law claim is nothing more than a disguised attempt to recover for wrongful

19   use and, thus, is also preempted by the federal copyright law.

20        Similarly, in *Del Madera,* 820 F.2d at 977, the Ninth Circuit held that unjust

21   enrichment and breach of fiduciary duty claims also may be preempted by Copyright

22   Act.[7] In *Del Madera,* the plaintiff joint venture asserted that one of its former

23

---

24   [6] The elements of a conversion claim are the 1) interference with the rights of the owner's tangible property, and 2) resulting damages. *Dielsi,* 916 F. Supp. at 992.

25   [7] MGA respectfully notes that *Effects Associates, Inc. v. Cohen,* 817 F.2d 72 (9th Cir. 1987), and *Consolidated World Housewares, Inc. v. Finkle,* 831 F.2d 261 (Fed. Cir. 1987), cited by Mattel, are not to the contrary and are inapposite. To begin with, neither of the cases related to removal. In

26   *Effects Associates,* the court reversed a dismissal of a copyright infringement case, holding that the complaint pleaded all the elements of an infringement claim and that the mere inclusion of a single

27   reference to a promise regarding payment did not divest the federal courts of jurisdiction. 817 F.2d at 73. The court in *Consolidated World Housewares* simply held that a putative patent dispute

28   seeking a declaration of inventorship did not provide federal question jurisdiction.

EXHIBIT ___

PAGE ___

1    consultants, who had fiduciary obligations, provided services to the defendants, who

2    were competitors, thereby enabling the defendants to develop property using

3    documents and information that the former consultant acquired while in a fiduciary

4    relationship with plaintiff. The court analyzed the plaintiff's unfair competition claim

5    based on breach of fiduciary duty and found that plaintiff's claims were based on the

6    premise that the documents and information at issue belonged to plaintiff and were

7    misappropriated. The court also analyzed the unjust enrichment claim and found that

8    the claim arose from an implied promise not to use the property at issue. The court

9    concluded that both claims were preempted because they concerned the subject matter

10   of copyright and asserted rights equivalent to those protected by copyright. *Id.* at 977.

11            As in *Del Madera*, Mattel's claims for breach of loyalty[8] and fiduciary duty,[9]

12   and its claim for unjust enrichment[10] are preempted. Each of the breach claims is

13   based on Mattel's allegation that Bryant misappropriated Mattel's intellectual

14   property. Similarly, the conduct underlying Mattel's unjust enrichment claim

15   involves the alleged "receipt" and "retention" of Mattel's intellectual property; thus,

16   this claim is not functionally different (or legally distinguishable) from the Copyright

17   Act's protection against the wrongful use or misappropriation of protected works. *Del*

18   *Madera*, 820 F.2d at 977; *see also Dielsi*, 916 F. Supp. at 992; *Trenton v. Infinity*

19   *Broadcasting Corp.*, 865 F. Supp. 1416, 1428 (C.D. Cal. 1994) (Keller, J.) (breach of

20   fiduciary duty and unjust enrichment causes of action were "property-based" claims

21   that "in essence merely assert a protectable copyright interest in the [property] and

22   defendants' unauthorized use thereof," so that these claims "are not qualitatively

23

24   [8] The conduct that breaches the fiduciary duty of loyalty, i.e., that is "inimical to the best interests of
     the employer," *Stokes*, 41 Cal. App. 4th at 295, is alleged to be "using Mattel property" for Bryant's
25   own benefit. (Compl. ¶¶ 23, 30). This conduct is likewise part and parcel of the copyright claim and
     "does not add any additional element to the essential claim that Plaintiff's ideas were
26   misappropriated by Defendants." *Dielsi*, 916 F. Supp. at 992 (citing *Del Madera*, 820 F.2d at 977).
     [9] The elements of a breach of fiduciary claim include (1) the existence of a fiduciary duty; (2)
27   the breach of that duty; and (3) damage proximately caused by that breach. *Stanley v. Richmond*, 35
     Cal. App. 4th 1070, 1086 (1995).
28   [10] An unjust enrichment claim's elements are (1) receipt of a benefit and (2) unjust retention of the
     benefit at the expense of another. *See Lectrodryer v. Seoul Bank*, 77 Cal. App. 4th 723, 726 (2000).

EXHIBIT _____

PAGE _____

1 different" from copyright claims "and accordingly are preempted"). Accordingly,

2 each of those claims asserts rights that are equivalent to those protected by federal

3 copyright law.

4 **V. CONCLUSION**

5      MGA intervened in this action because it firmly believes Mattel's claims seek

6 injunctive relief and monetary damages that threaten to interfere with its valuable

7 "Bratz" property that is worth far in excess of the jurisdictional minimum. Moreover,

8 because each of Mattel's claims both concern the subject matter of copyright and

9 assert rights equivalent to those protected by copyright, those claims are preempted, at

10 least in part, by the Copyright Act, thereby giving rise to federal jurisdiction. MGA

11 therefore respectfully requests that the Court deny Mattel's motion to remand.

12

13 Dated: December 22, 2004                    O'MELVENY & MYERS, LLP

14

15                                             DIANA M. TORRES

16                                             O'MELVENY & MYERS, LLP
                                               Attorneys for Defendant MGA

17

18

19

20

21

22

23

24

25

26

27

28

LA2:745111.3                         12.

DEFENDANT MGA'S JOINDER IN DEFENDANT BRYANT'S OPPOSITION TO REMAND

EXHIBIT __10__

PAGE __65__

# EXHIBIT 11

1 | M. RANDALL OPPENHEIMER (S.B. #77649)
DIANA M. TORRES (S.B. #162284)
2 | O'MELVENY & MYERS LLP
400 South Hope Street
3 | Los Angeles, California 90071-2899
Telephone: (213) 430-6000
4 | Facsimile: (213) 430-6407

5 | Attorneys for Applicant-Intervenor
MGA ENTERTAINMENT, INC.

6

7

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | MATTEL, INC., a Delaware
Corporation,

Case No. CV 04-9059 NM (RNBx)

12 | Plaintiff, | **MGA ENTERTAINMENT, INC.'S ANSWER IN INTERVENTION TO PLAINTIFF'S UNVERIFIED COMPLAINT**

13

14 | v.

15 | CARTER BRYANT, an individual; and DOES 1 through 10, inclusive,

Hon. Nora Manella

16 | Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

LA2:730044

ANSWER IN INTERVENTION TO
PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT ___11___

PAGE ___60___

#247

1    As it has now become abundantly clear that its rights are directly at stake in

2   this action, MGA Entertainment, Inc. ("MGA") intervenes in this case as a

3   defendant. Plaintiff Mattel, Inc. ("Mattel") filed suit against Carter Bryant

4   ("Bryant"), a design consultant for MGA, asserting, among other claims, that he

5   "wrongfully converted Mattel property" for his own benefit and "the benefit and

6   gain of others" and seeking both monetary and injunctive relief. It is now evident

7   that Mattel's claims are based on Mattel's misguided theory that Bryant allegedly

8   converted intellectual property from Mattel and used it as the underlying work for

9   his own and MGA's benefit. MGA reaches this conclusion in light of at least the

10  following:

11        (a)    Mattel's recent registration for an unreleased project created in

12              approximately 1999 that it now calls "Toon Teens," from which Mattel

13              has asserted in the press Bryant "borrowed liberally" for his work on

14              "Bratz," and which is also the subject of the declaratory relief action

15              that Bryant has filed;

16        (b)    the questioning of Bryant at his recent deposition focusing on the

17              creation and development of "Bratz;"

18        (c)    Mattel's recent efforts to subpoena third parties who worked on

19              MGA's "Bratz" products and have no information concerning Bryant's

20              employment relationship with Mattel; and

21        (d)    Mattel's recent attempts to assist those who have infringed MGA's

22              rights in other countries to prove (falsely) that MGA does not own the

23              copyrights to its "Bratz" products.

24  Indeed, Mattel's purported conversion claim is nothing more than a copyright claim

25  in disguise. It is preempted by federal copyright law, accordingly, and must be

26  recast as a copyright claim under federal law. This copyright action necessarily

27  implicates MGA's rights, as MGA owns all intellectual property rights in "Bratz."

28  While MGA denies that Mattel is entitled to rights in any of MGA's intellectual

LA2:730044                          - 1 -            ANSWER IN INTERVENTION TO
                                                     PLAINTIFF'S UNVERIFIED COMPLAINT



EXHIBIT _____11_____

PAGE _____07_____

1  property, including, without limitation, MGA's copyrights in the "Bratz" line of
2  products, MGA must now intervene in this action to defend its intellectual property
3  rights.  Therefore Defendant in Intervention MGA, as answer to the Complaint
4  herein, admits, denies, and alleges as follows:

5      1.    Upon information and belief, MGA admits that Mattel is a corporation
6  organized and existing under the laws of the State of Delaware and has a place of
7  business in El Segundo, California.  Except as so admitted, MGA is without
8  sufficient information to admit the allegations of ¶ 1, and on that basis denies the
9  same.

10      2.    MGA admits that defendant Bryant is an individual currently residing
11  in Springfield, Missouri.

12      3.    MGA is without sufficient information concerning either Mattel's
13  knowledge or the identities of the Doe Defendants, if any, to enable it to admit the
14  allegations of ¶ 3, and on that basis denies the same.

15      4.    MGA denies the allegations of ¶ 4.

16      5.    MGA denies the allegations of ¶ 5.

17      6.    MGA admits that Bryant does not currently reside in California and
18  that Los Angeles County is a proper venue for this action.  Except as so admitted,
19  MGA denies the allegations of ¶ 6.

20      7.    MGA is without information to admit the specific allegations of ¶ 7
21  and on that basis denies the same, but admits that reports from Mattel and other
22  public sources make assertions similar to those alleged in ¶ 7.

23      8.    MGA is without information to admit the specific allegations of ¶ 8
24  pertaining to Mattel's operations, and on that basis denies the same, but admits that
25  Mattel has a large facility in El Segundo, California, in which Mattel employs a
26  number of people.

27      9.    MGA is without information to admit the specific allegations of ¶ 9
28  pertaining to Mattel's operations, and on that basis denies the same, but admits that

LA2:730044     - 2 -    ANSWER IN INTERVENTION TO
PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT ___11___

PAGE ___68___

1    allegations in this paragraph assert legal or equitable rights that are equivalent to

2    exclusive rights within the general scope of copyright protection, which are

3    expressly preempted by the Copyright Act, 17 U.S.C. § 101 *et seq.* and must be

4    recast as a federal question under copyright law   To the extent that Mattel herein

5    purports to set forth the allegations in support of its fifth cause of action to

6    substantiate a federal copyright claim, these allegations are also expressly denied.

7         43.    MGA denies the allegations of ¶ 43 and affirmatively asserts that the

8    allegations in this paragraph assert legal or equitable rights that are equivalent to

9    exclusive rights within the general scope of copyright protection, which are

10   expressly preempted by the Copyright Act, 17 U.S.C. § 101 *et seq.* and must be

11   recast as a federal question under copyright law.  To the extent that Mattel herein

12   purports to set forth the allegations in support of its fifth cause of action to

13   substantiate a federal copyright claim, these allegations are also expressly denied.

14        44.    MGA denies the allegations of ¶ 44.

15        45.    MGA denies the allegations of ¶ 45.

16

17                        **AFFIRMATIVE DEFENSES**

18   MGA asserts the following affirmative defenses:

19                    **FIRST AFFIRMATIVE DEFENSE**

20        1.     Plaintiff's Complaint and each purported claim for relief therein is

21   preempted by the Federal Copyright Act.

22                  **SECOND AFFIRMATIVE DEFENSE**

23        2.     Plaintiff's Complaint and each purported claim for relief therein fail to

24   state facts sufficient to constitute a claim for relief.

25                   **THIRD AFFIRMATIVE DEFENSE**

26        3.     Plaintiff's Complaint and each purported claim for relief therein are

27   barred by the equitable doctrine of unclean hands.

28

LA2:730044                        - 7 -              ANSWER IN INTERVENTION TO
                                                     PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT _____*11*_____

PAGE _____*69*_____

1

2      Dated:      December 3, 2004

3                                          O'MELVENY & MYERS LLP

4                                          By
                                              Diana M. Torres
5                                          Attorneys for Defendant-in-Intervention
                                           MGA ENTERTAINMENT, INC.
6

7

8      LA2:730044

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA2:730044                  - 11 -        ANSWER IN INTERVENTION TO
                                           PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT _____11_____

PAGE _____70_____