# EXHIBIT 12

CALENDARED



ENTERED
CLERK, U.S. DISTRICT COURT

JAN 12 2006

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION       BY DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(D).

CARTER BRYANT,

             Plaintiff,

v.

MATTEL, INC.,

             Defendant.

and related actions.

CASE NO. CV-04-9049-SGL

(Consolidated with cases CV-04-9059 and CV-05-2727)

ORDER REGARDING MATTEL'S MOTION FOR LEAVE TO AMEND

    This case has, increasingly, become one of the proverbial tail wagging the proverbial dog.

    Back in April, 2004, Mattel, Inc., ("Mattel") filed a complaint in Los Angeles County Superior Court against its former employee and the reputed creator of the BRATZ dolls, Carter Bryant. The complaint pressed five separate state-law theories relating to certain agreements Bryant signed while an employee with Mattel, namely, an Employee Confidential Information and Inventions Agreement ("Inventions Agreement") and a Conflict of Interest Questionnaire ("COI Questionnaire"). Although couched in state law terms and ostensibly pled as a simple employment action, lurking beneath the allegations in the complaint was whether Bryant had either misappropriated Mattel's intellectual property or

EXHIBIT    12

PAGE    71

1   resources in creating and/or developing the BRATZ dolls or whether he continued

2   to develop his BRATZ design while still working in Mattel's employ. In either event,

3   the rights to the BRATZ dolls could become the property of Mattel, either through

4   infringement or through operation of the agreements noted above. The case was

5   later removed to this Court and was assigned the case number CV-04-9059. MGA

6   Entertainment, Inc. ("MGA"), the maker of the BRATZ doll line, then intervened "to

7   protect its rights to Bratz dolls" that were at stake in the action. Mattel, Inc. v.

8   Bryant, 446 F.3d 1011, 1012 (9th Cir. 2006); see also id. at 1013 ("Mattel argues, 'a

9   significant risk of prejudice' to MGA [exists] if the ownership of rights to intellectual

10  property, i.e., the Bratz creations, were decided in the absence of MGA").

11       In the interim, Bryant filed a declaratory judgment action in this Court,

12  seeking for the Court to declare that his BRATZ doll creations did not infringe

13  Mattel's copyright in its Toon Teens products. See Court's July 18, 2006, Order at

14  3 (noting that, although "Bryant's complaint . . . makes reference to 'other Mattel

15  products,' . . . the substance of his allegations all address the product 'Toon

16  Teens'"). The declaratory judgment action was assigned the case number CV-04-

17  9049.

18       MGA then filed an action against Mattel in this Court broadening the scope

19  of the controversy beyond that concerned with the ownership rights to the BRATZ

20  doll line. MGA's complaint asserted various Lanham Act claims and their California

21  state law equivalent arising out of Mattel's alleged "habitual and unfair tactics of

22  competition-by-intimidation and serial copycatting of MGA's products." (Compl.

23  ¶ 7). In essence, although the prior actions were concerned with ownership in the

24  rights to the BRATZ doll line, the allegations in 05-2727 concerned whether there

25  had been unlawful efforts to block the marketing of those rights in the BRATZ dolls.

26  MGA's complaint did make mention of other products that were affected by Mattel's

27  alleged predatory business practices, but by far the largest portion of its complaint

28  concerned Mattel's conduct in undermining (or seeking to undermine) MGA's rival

2



1   line of BRATZ dolls.[1]

2   By Order dated June 19, 2006, the Court consolidated all three cases "for all
3   purposes" as they "involve[d] a number of common issues of law and fact." As the
4   Court later noted in its August 10, 2006, Order: "At its heart, this case asks the
5   question: Who owns the rights to the Bratz dolls?" Resolution of this question lies
6   at the heart of or, at the very least, affects many of the other claims set forth in
7   each of the three respective cases. For instance, even though the allegations in
8   05-2727 concern Mattel's alleged efforts at defeating the marketing of the BRATZ
9   dolls, resolution of who owned the rights to the BRATZ dolls could serve to moot
10  many of those allegations. It is hard to imagine how it is unlawful for a company to
11  thwart or otherwise undermine the marketing of a product it owns. Thus, if Mattel
12  owned the rights to the BRATZ dolls, many of the allegations in the 05-2727
13  complaint would become moot. That said, such consolidation did not do away with
14  the distinctions that do exist between the three cases. As the Court highlighted in
15  its consolidation order, when either party files a pleading in the case, "the first
16  paragraph of [that] document . . . shall inform the Court to which case(s) the
17  document relates."

18  On July 18, 2006, the Court dismissed Bryant's declaratory judgment action,
19  04-9049, finding there existed no reasonable apprehension of an imminent
20  copyright infringement claim being filed against him by Mattel based on Mattel's
21  Toon Teen intellectual property. See Court's July 18, 2006, Order at 4. The
22  Court's Order was predicated entirely upon counsel for Mattel's representation
23  during oral argument that it "will not maintain that Bratz infringes the copyright in
24  Toon Teens." Owing to this representation, the Court, in dismissing the declaratory
25  judgment action, made clear that any future "claim by Mattel of copyright

26  ─────────────────────

27      [1] That the marketing of the BRATZ dolls lies at the heart of the issues
    between the rival doll makers in the 05-2727 case is best illustrated by the Court's
28  discussion of those allegations in its August 26, 2005, Order, Granting in Part and
    Denying Part Mattel's Motion to Strike portions of MGA's complaint.

3

EXHIBIT __12__

PAGE __73__

1  infringement based on the Toon Teens product is barred by counsel's

2  representation." July 18, 2006, Order at 4.

3        Presently before the Court is Mattel's request for leave to file an amended

4  complaint in the 04-9059 action.  The complaint broadens considerably the nature

5  of the action from its genesis in state court.  Whereas before the complaint simply

6  sought to litigate alleged contractual and fiduciary breaches by Bryant while in the

7  employ of Mattel (no doubt geared toward procuring a legal basis for Mattel to lay

8  claim to the BRATZ doll line), the amended complaint adds five more defendants

9  and nine new legal claims, alleging a wide range of commercial disputes between

10  the rival doll makers that spans three countries.  For instance, the amended

11  complaint now contains RICO claims, a misappropriation of trade secrets claim,

12  and various aiding and abetting claims all stemming from allegations that MGA

13  cherry-picked certain high-ranking Mattel executives in foreign markets (many also

14  named as defendants in the amended complaint) or designers (namely, Bryant),

15  and then enticed or encouraged those same individuals to steal various trade and

16  proprietary secrets (be it sales plans, sales projections, customer profiles, or

17  intellectual property) from Mattel and hand them over to MGA before going to work

18  at MGA.

19        Moreover, the amended complaint expands upon the existing breaches of

20  contract and fiduciary duty claims in the original complaint by expanding the

21  universe of former employees (namely, the cherry-picked executives) to whom

22  those claims now apply.

23        Finally, Mattel now makes plain what was always lurking in its original

24  complaint — a copyright claim, but one directed not only to Bryant but also to MGA,

25  MGA's Hong Kong subsidiary, and MGA's President and CEO Isaac Larian.

26  Moreover, Mattel characterizes its copyright claim somewhat differently from that at

27  issue in Bryant's declaratory relief action: "The Amended Complaint does not

28  include a claim for infringement of copyrights in Toon Teens, but rather

4



EXHIBIT _12_

PAGE _74_

1  infringement of copyrights in Bratz." (Reply to MGA Opp. at 11). Toward that end,

2  Mattel has recently filed copyright registrations with the U.S. Copyright Office

3  claiming ownership in various BRATZ doll design drawings penned by Bryant.

4  A.      ANALYSIS

5          Federal Rule of Civil Procedure 15(a) provides that, once a responsive

6  pleading has been served, "a party may amend the party's pleading only by leave of

7  court or by written consent of the adverse party; and leave shall be freely given

8  when justice so requires." With no consent to Mattel's proposed filing proffered by

9  MGA and Bryant, determining whether to grant Mattel leave to file an amended

10  complaint is gauged by looking to the familiar formulation of factors set forth by the

11  Supreme Court in Forman v. Davis:

12

13          In the absence of any apparent or declared
            reason—such as undue delay, bad faith or dilatory
            motive on the part of the movant, repeated failure to
14          cure deficiencies by amendments previously allowed,
            undue prejudice to the opposing party by virtue of
15          allowance of the amendment, futility of amendment,
            etc.—the leave sought should, as the rules require, be
16          'freely given.' Of course, the grant or denial of an
            opportunity to amend is within the discretion of the
17          District Court, but outright refusal to grant the leave
            without any justifying reason appearing for the denial is
18          not an exercise of discretion; it is merely abuse of that
            discretion and inconsistent with the spirit of the Federal
19          Rules.

20  371 U.S. 178, 182 (1962).

21          MGA and Bryant offer the following reasons for denying Mattel leave to

22  amend: (1) Mattel has long known of the factual predicates underlying its copyright

23  and intentional interference claims but delayed in asserting them; (2) the proposed

24  amendment to add the copyright claim and the intentional interference claims

25  (against the new defendants) are futile because they are barred by the applicable

26  statute of limitations; (3) the copyright claim had been brought in bad faith by Mattel

27  because of its prior public disavowal of an intent to assert such a claim; and (4)

28  MGA and Bryant would incur undue prejudice were the copyright claim added to the

EXHIBIT _12_  ⁵

PAGE _75_

1  suit because of alleged spoilation of evidence issues involving Mattel's ZEUS

2  computer system used by doll designers at Mattel and its e-mail system. None of

3  these arguments are persuasive.

4     1.    Awareness of Factual Predicate for Copyright and Intentional

5           Interference Claims

6     MGA argues that Mattel has long known about the factual predicate for its

7  recently added copyright claim, observing that, "[o]ver four years ago, in August

8  2002, Mattel CEO Bob Eckert received an anonymous letter stating that Bryant

9  created the project that became the 'Bratz' dolls — and worked with MGA to 'steal'

10 that project — while still employed at Mattel." (MGA Opp. at 9). Similarly, MGA

11 argues that Mattel has long known of the factual predicate for its intentional

12 interference claim with respect to Bryant's contract given that, "[b]y Mattel's own

13 admission, it learned in November 2003 — more than three years ago — that

14 Bryant had signed a contract with MGA 'dated as of' a month prior to his final day at

15 Mattel." (MGA Opp. at 11-12).

16    At the outset it must be observed that "[m]ere delay in proffering an

17 amendment does not justify denying leave to amend." Sierra Club v. Union Oil Co.

18 of California, 813 F.2d 1480, 1493 (9th Cir. 1987), vacated on other grounds by,

19 485 U.S. 931 (1988), and reinstated by, 853 F.2d 667 (9th Cir. 1988). Seizing upon

20 this point of law, Mattel argues that "only in . . . cases" when "granting leave would

21 require discovery to be reopened after summary judgment motions have been filed"

22 has the Ninth Circuit found the denial of leave "justified" based on the passage of

23 time alone. (Reply to MGA Opp. at 3). That is incorrect. There is a line of cases

24 from the Ninth Circuit finding that, if a "party seeking amendment knows or should

25 know of the facts underlying the amendment when the original complaint is filed,

26 the motion to amend may be denied." Sierra Club, 813 F.2d at 1493 (citing Jordan

27 v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982)). And, recently, the

28 Ninth Circuit upheld the denial of leave to amend based on the passage of time

1   even though the requested leave to amend was tendered <u>before</u> the time, as set

2   forth in a Rule 16(b) pre-trial scheduling order, for amending pleadings had expired.

3   See <u>AmerisourceBergen Corp. v. Dialysist West, Inc.</u>, 465 F.3d 946 (9th Cir. 2006).

4   The Ninth Circuit observed that, even when a request for leave to amend is timely

5   under a Rule 16(b) schedule for pretrial motions, the district court may nonetheless

6   still deny the request based on any of the <u>Forman</u> factors. <u>Id.</u> at 951-52. The Ninth

7   Circuit then noted that the issue of untimeliness (regardless of whether the

8   amendment is tendered "within the period of time allotted by the district court in a

9   Rule 16 scheduling order") in seeking to amend can constitute a justification for

10  denying leave to amend if "the moving party knew or should have known the facts

11  and theories raised by the amendment in the original pleading." <u>Id.</u> at 953.

12  Toward that end, the Ninth Circuit observed that "an eight month delay between the

13  time of obtaining a relevant fact and seeking a leave to amend is unreasonable."

14  <u>Id.</u> In this regard, the Ninth Circuit in <u>Dialysist</u> was unpersuaded by the fact that,

15  even though the moving party had known of the facts prompting the amendment for

16  a long period of time, there still remained eight more months of discovery for the

17  parties to marshal facts against the allegations raised by the amended pleading:

18  "Even though eight months of discovery remained, requiring the parties to scramble

19  and attempt to ascertain whether the Procrit purchased by AmerisourceBergen was

20  tainted, would have unfairly imposed potentially high, additional litigation costs on

21  Dialysist West that could have easily been avoided had AmerisourceBergen

22  pursued its 'tainted product' theory in its original complaint or reply." <u>Id.</u> Thus,

23  absent "a satisfactory explanation" for the delay in amending the complaint, the

24  Court is well within its rights to deny leave to amend. <u>Id.</u>

25          Mattel proffers the following reasons for taking the time that it did before

26  presenting its amended complaint: (1) Acting out of an abundance of caution to its

27  obligations under Rule 11 to present "factual contentions [that] have evidentiary

28  support," Mattel waited until its claims were better supported by evidence

7



EXHIBIT 12

PAGE 77

1  uncovered in discovery; and (2) the delay in the proceedings caused by "the year-
2  long stay and the parties' prior jurisdictional disputes" have left the case still in its
3  "nascent stage."  (Reply to MGA Opp. at 2, 4).

4          The first reason is not well-founded.  Rule 11 specifically allows parties to
5  aver factual allegations that "are likely to have evidentiary support after a
6  reasonable opportunity for further investigation or discovery" so long as the party
7  makes clear in its pleading that its factual contentions on those points are with the
8  caveat that they are based on a good faith belief that further discovery would
9  unearth evidence to support them. See FED. R. CIV. P. 11(b)(3).  Simply put, Rule
10  11 did not stand in the way of Mattel averring the factual contentions it now claims it
11  "merely suspected" as being the case based on the limited information before it.
12  Mattel could have gone ahead and made such suspected factual allegations so
13  long as it caveated those claims with the declaration that it reasonably believed that
14  those allegations would be borne out by further discovery.  Perhaps the time by
15  which Mattel could have reasonably believed such allegations would be borne out
16  by further discovery occurred after the dates noted by MGA, but it is hard to fathom
17  that such materialization took three or four years to occur.

18          The second reason would have some merit to it but for the fact that the
19  information that alerted (or should have alerted) Mattel to the existence of its now
20  asserted copyright and intentional interference claims was brought to Mattel's
21  attention well before the case was stayed on May 20, 2005.  The stay, therefore,
22  did not operate as an obstacle to Mattel asserting its claims; nor even if it did, the
23  stay does not explain why Mattel waited nearly six months after the stay was lifted
24  on May 16, 2006, to present those claims now.

25          All of that being said, the one thing that gives the Court pause in denying
26  leave based on the tardiness in Mattel's presentation is the lack of any evidence
27  that MGA or Bryant have been prejudiced by the delay.   Delay unconnected to
28  some showing of prejudice, be it prejudice to the parties or disruption in judicial

8


EXHIBIT  12
PAGE  78

1   management of the case, does not suffice to deny granting leave to amend.  The

2   Ninth Circuit has noted that, "where a defendant is on notice of the facts contained

3   in an amendment to a complaint, there is no serious prejudice to defendant in

4   allowing the amendment" even if it is made tardily. Sierra Club, 813 F.2d at 1493.

5   Indeed, the denial of leave was proper in the Dialysist case not simply because of

6   the length of the delay, but because the delay itself was "detrimental" in that it

7   would entail the opposing party to have "unfairly" incurred "potentially high,

8   additional litigation costs" that could have been avoided if the moving party had

9   made clear its intentions earlier. 465 F.3d at 953.

10          Here, as well demonstrated in Mattel's papers, it is readily apparent from the

11   pleadings filed by MGA and Bryant in this case that both have been aware for some

12   time of the factual predicates now underlying Mattel's copyright claim and

13   intentional interference claim. (See MGA Opp. at 5 ("As Bryant and MGA

14   suspected at the time of filing — and Mattel now concedes by conduct — those

15   deceptively-pled state-law claims [in 04-9059] were copyright infringement claims all

16   along")(emphasis added)).  The parties have engaged in meaningful discovery

17   regarding many of the facts touched upon by these new claims, be it tracking down

18   experts in various forensic fields or taking depositions of various of the key players

19   to those claims.  In point of fact, in their papers filed with this Court before this

20   present motion, both Bryant and MGA have made it abundantly clear that they have

21   long suspected that a copyright infringement claim was in the offing as evidenced

22   by Bryant's filing of the declaratory judgment action and MGA's intervention in the

23   05-9059 matter to protect its rights to the BRATZ dolls.  Similarly, MGA and Bryant

24   have been on notice to the facts comprising the interference claim concerning

25   Bryant's contract as evidenced by the identity of the individuals who have been

26   deposed by Mattel, as well as the nature of the questions posed and the testimony

27   proffered at those depositions. MGA's argument that, with the amendments, it

28   faces the prospect of defending "against stale claims" owing to faded memories and

1  loss of documents caused by the great passage of time, (see MGA Opp. at 3, 13),

2  is diminished by the fact that (no doubt owing to the sophistication of all counsel

3  involved) discovery on these very issues have been proceeding apace by both

4  sides long before Mattel filed its proposed amendments.  This is simply not a case

5  where "additional litigation costs" will be "unfairly" visited upon Bryant and MGA by

6  allowing the proposed amendments; much of those costs have already been borne

7  by the parties for some time.

8      2.    Spoilation of Evidence

9          MGA next argues that Mattel's delay in bringing the amended complaint has

10  caused it prejudice as, in the interim, critical pieces of evidence have been or are

11  suspected of having become lost.  For instance, MGA asserts that Mattel's Rule

12  30(b)(6) witness concerning its Zeus computer system, Julia Marine, testified that,

13  "although Mattel identified and segregated its most relevant backup tapes available

14  for Zeus, Mattel allowed its tape backup system to expire the database for those

15  backup tapes, thereby eliminating all information about what was actually stored on

16  those backup tapes." (MGA Opp. at 9-10).  Information on the Zeus computer

17  system is critical because of Mattel's assertion that part of its copyright claim rests

18  on Bryant's exposure to Mattel development programs.  (First Am. Compl. ¶ 26(a)).

19  As explained by MGA: "[C]oncept data and drawings created by [Mattel] design

20  center personnel are stored on Zeus.  Thus, the electronic documents stored on

21  Zeus -- which should include the metadata showing who created, edited and

22  accessed Mattel's concept drawings and designs – during the time Bryant worked

23  in the design center at Mattel is vitally important to defending against Mattel's

24  claims." (MGA Opp. at 14).  MGA's argument is neither an accurate

25  characterization of Ms. Marine's testimony nor of the nature of Mattel's exposure

26  claim.

27          Ms. Marine did not testify that the information on the backup tapes (some

28  fifty in total) was lost, but rather that Mattel no longer carried the type of hardware

10

EXHIBIT __12__

PAGE __80__

that could restore the information still found on those tapes:

> Q.   So if you wanted to restore that 2002 backup tape[s] then, how would you go about doing that?
>
>      . . . .
>
> A.   You need the hardware so if we don't have the hardware — if [the technology used by the tape is] DLT we don't have the hardware and you've got to buy it and — well, first you have to find a place to put it with adequate power which we don't have in the design center. You need to have a tape library. You need to have the tape drives that carried those tapes. You need a server that has the capability to — that's big enough to handle all of the hardware. You need the software – the license for the backup software[, Net Backup]. You need the disk space to restore it to and then you have to start reading in all those tapes.
>
> Q.   You said that you don't have that in the design center. Do you have that hardware anywhere else in the company?
>
> A.   DLT? No, no.
>
> Q.   At what point did you get rid of the hardware?
>
> A.   Once the last backups — DLT backups expired so it would have been a couple years ago probably.

(Decl. Diana Torres, Ex. K at 118-119).

The above testimony clearly denotes the difficulty in restoring what was on Mattel's Zeus computer system during the relevant time frame, but it certainly does not demonstrate that the information on those backup tapes has been "eliminated" or forever lost. Undoubtedly it will be a costly endeavor to recover that information (not to mention to later search and sort through it); but to argue, as MGA does, that the information is "unavailable" or "lost," (MGA Opp. at 9, 14), exaggerates its plight. Indeed, Ms. Marine's testimony indicates that the difficulty in retrieving the information on the Zeus backup tapes has been present for some time (maybe since 2004 or perhaps even earlier). This is important because it undermines MGA's claim that Mattel's undue delay in bringing its amended complaint will cause

11



EXHIBIT _12_

PAGE _81_

1    it to suffer prejudice it otherwise would not have faced if the amendments were

2    brought sooner.  Such prejudice has been present for years, and Mattel's failure to

3    bring its amended complaint sooner would not have changed this situation.

4          Similarly, MGA's point that access to what was on the Zeus computer

5    system is vital in demonstrating that Bryant was not exposed to or otherwise did not

6    hack the system to steal other designers work is diminshed to some extent by the

7    fact that Bryant himself testified that he did not use the Zeus computer system and

8    was "pretty much computer illiterate" while employed at Mattel.  Admittedly, the

9    ability to point to information on the Zeus system backup tapes to prove that Bryant

10   did not access other designers drawings or to prove the date those drawings were

11   created by those other designers would be useful evidence to negate Mattel's

12   factual claims.  Nonetheless, such evidence still would not discount other avenues

13   outside of the Zeus computer system by which Mattel could seek to prove that

14   Bryant was exposed to its copyrighted works, e.g., witness testimony that Bryant

15   saw drawings of the same posted on other designers' cubicles.

16         MGA next surmises that Mattel's e-mail records have disappeared, not

17   because it has any proof on that point, but simply because Mattel has postponed

18   the deposition of the individual most knowledgeable of Mattel's e-mail records until

19   after the hearing on Mattel's motion for leave to amend.  (MGA Opp. at 10).

20   Speculation of spoilation does not suffice.  That MGA's argumentation on this point

21   is nothing more than speculation is best exhibited by the evidence it has proffered

22   in support of its argument:  "[I]f the sole retained backup for Zeus is no longer

23   available, it is not hard to imagine that Mattel's electronic mail archives are similarly

24   out of reach." (MGA Opp. at 15 (emphasis added)).  MGA then makes much of a

25   deposition from a Mattel executive, Alan Kaye, who testified that e-mails in his

26   inbox would be automatically deleted if they had remained there for more than a

27   certain time period. (Decl. Diana Torres, Ex. H at 292-93).  MGA takes from this

28   acknowledgment that Mattel has an "automatic email deletion system" that has

EXHIBIT _12_

PAGE _80_

12

1   compromised Mattel's "duty to preserve documents." (MGA's Opp. at 14).

2   Noticeably absent from MGA's argument is any evidence that the e-mails so

3   deleted from a Mattel employee's inbox are forever lost or, as is far more likely,

4   whether such information remains or is otherwise archived on some backup file on

5   Mattel's computer system.  Absent concrete proof that spoilation has occurred,

6   nothing in MGA's argument forms a basis for denying Mattel its requested leave to

7   amend.

8         3.    <u>Statute of Limitations</u>

9         MGA next argues that Mattel's copyright and intentional interference claims

10  are futile as both are barred by the applicable statute of limitations.  This argument

11  was pressed emphatically at oral argument.  With respect to the copyright claim,

12  MGA argues that the applicable statute of limitations is three years, with the

13  limitations period accruing from when a party has knowledge of a violation or when

14  a reasonably diligent person would have been put on inquiry of the infringement.

15  (MGA Opp. at 16 (citing <u>Roley v. New World Pictures</u>, 19 F.3d 479, 481 (9th Cir.

16  1994)).  MGA argues that Mattel was put on notice about its copyright claim in

17  August, 2002, upon the receipt of the anonymous letter to Mattel's CEO that Bryant

18  had stolen the idea for BRATZ while working at Mattel.  Thus, according to MGA,

19  the limitations period on Mattel's claim expired in August, 2005, rendering Mattel's

20  current copyright claim stale.

21        The problem with MGA's analysis is it fails to take into account the relations-

22  back principles found in Rule 15(c), which provides that "[a]n amendment of a

23  pleading relates back to the date of the original pleading when "the claim . . . in the

24  amended pleading arose out of the conduct, transaction, or occurrence set forth . . .

25  in the original pleading," or if such relation back is otherwise permissible by the

26  state "law that provides the statute of limitations applicable to the action."  By

27  MGA's own admission Mattel's copyright claim arises out of the same conduct or

28  transaction contained in the original complaint filed in April, 2004, well within the

1    applicable limitations period.[2] (MGA Opp. at 12 ("These very same allegations

2    [contained in the original complaint] underlie the copyright infringement and

3    intentional interference contract claims Mattel now seeks to allege against MGA,

4    Mr. Larian and Bryant")).

5            MGA's statute of limitations argument with respect to the intentional

6    interference claims fares no better.  According to MGA, the applicable statute of

7    limitations is two years for an intentional interference with contract claim and Mattel

8    was aware of the facts alerting it to this claim (insofar as Bryant's contract is

9    concerned) on November 24, 2003, when it learned "that Bryant worked with MGA

10   to develop the 'Bratz' dolls prior to his last day of employment by Mattel and, hence,

11   prior to the expiration of his contractual relationship with Mattel."[3]  (MGA Opp. at 18

12   (citing Knoell v. Petrovich, 76 Cal. App.4th 164, 168 (1999)) .  Such a time line

13   would, according to MGA, mean that the applicable limitations period expired on

14   Mattel's interference with Bryant's contract claim on November 24, 2005, well

15   before Mattel sought leave to file its amended complaint.  (Id).  The problem again

16   with MGA's argument is that it ignores that through Rule 15(c) Mattel's intentional

17   interference claim would relate back to when it filed its original complaint in April,

18

19

20        [2] The same would appear to be true — that the amendments would be timely

21   — if the amendments related back to Mattel's answer (filed on May 13, 2005) to
     MGA's complaint in the 05-2727 case.

22

23        [3] With respect to Mattel's interference with contract claim as to one of its
     former executives, Ron Brawer, MGA claims Mattel was put on notice of that claim
24   on September 17, 2004, when Brawer informed Mattel that he leaving to go to work
     for MGA. (MGA Opp. at 19-20).  The problem with this argument is that nothing from
25   that simple event — Brawer's declaration of his intent to leave — in any way would
     apprise Mattel that MGA had encouraged Brawer to engage in nefarious conduct
26   (the stealing of proprietary information) causing Brawer to breach his contract with
     Mattel that he would not do anything to help a competitor while working for them.
27   MGA's contention that Mattel must have known of those misdeeds in mid-September
     is nothing more than speculation. Futility cannot be founded on what might or might
28   not be the case; either a claim is futile to bring or it is not.

14



EXHIBIT  12

84

PAGE

1   2004, well before the limitations period expired.[4]

2          Accordingly, MGA's futility argument is not well-founded.

3          4.   Prior Disavowals of Asserting a Copyright Claim

4          Finally, MGA takes umbrage with the cageyness to which Mattel has taken in

5   this case as to whether or not it is asserting a copyright infringement claim against

6   it. To MGA, such ducking and weaving on Mattel's part renders its effort to now

7   bring such a copyright claim as one done in bad faith. No doubt the Court itself has

8   been subjected to Mattel's overly vague statements on this point, but in the end

9   nothing in those statements has ever foreclosed the possibility that such a claim

10  may be in the offing. Indeed, during the oral argument on Mattel's motion to

11  dismiss Bryant's declaratory judgment action, the Court pressed Mattel's counsel as

12  to whether it would assert such a copyright claim against Bryant as it is currently

13  seeking to do. The most that Mattel's counsel would proffer was that Mattel would

14  not assert a copyright claim against Bryant based on Mattel's copyright rights in

15  TOON TEENS. At that point, the Court directed the parties to engage in a meet

16  and confer based on counsel for Mattel's representation and to provide a report to

17  the Court based on those discussions. The report submitted to the Court made

18  clear that, although Mattel was willing to accede that it would not bring a copyright

19  claim based on TOON TEENS, it refused to accede to Bryant's broader request

20  that "Bryant 'never copied anything' and that no Mattel product has any 'relevance'

21  to any claim that Mattel has or ever will assert against Bryant." This by itself should

22  have dispelled any illusion either Bryant or MGA was operating under that Mattel's

23  prior statements had foreclosed any potential copyright claim against them.[5]

24  

25          [4] Again the relations-back principle would also seem to render its claim timely
     if it were filed as an amended answer (the original having been filed in May, 2005) in
26  the 05-2727 case.

27          [5] MGA also argues that Mattel's effort to substitute MGA and its CEO, Isaac
     Larian, for the "Doe" defendants listed in its original complaint is improper because
28  Mattel knew of their identity when it filed the original complaint. The argument is

15



EXHIBIT   12

PAGE   85

1    That said, Mattel's allegation in the amended complaint as to how it is

2  seeking to lay claim to the copyright in BRATZ is disconcerting.  Paragraph 26,

3  subsection a, in the amended complaint alleges that Bryant "misappropriated and

4  misused Mattel property" by "using his exposure to Mattel development programs to

5  create the concept, design and name of Bratz."  (First Am. Compl. ¶ 26(a)).  Such

6  "exposure" could include Bryant misappropriating the Mattel design concept in

7  TOON TEENS in drawing his inspiration for the BRATZ doll.  Were Mattel's

8  copyright claim so predicated it would be barred by this Court's July, 2006, Order,

9  dismissing Bryant's declaratory judgment action.  Mattel was pressed on this point

10  during oral argument and conceded that such "exposure" to Mattel "development

11  programs" did not include TOON TEENS.  With this representation, nothing in

12  Mattel's proposed copyright claim is barred under the rubric of bad faith.

13       5.     Judicial Economy Considerations

14       In his opposition, Bryant adds an additional reason for denying leave beyond

15  those contained in MGA's papers — the amendment would muddy the waters in the

16  04-9059 by adding "tangential" issues that would only serve to delay resolution of

17  the key issue lying at the heart of the complaint: Who owns the rights to the

18  BRATZ line of dolls.  (Bryant Opp. at 2 ).  Bryant notes that the case has proceeded

19  apace in moving toward resolving that issue, and the amendment would "transform

20

21       misplaced.  As made clear by Mattel, California law allows a plaintiff to substitute in a

22       defendant for a "Doe" if the plaintiff was ignorant of that defendant's identity or
        ignorant of the basis for liability at the time the complaint was filed.  See Miller v.

23       Thomas, 121 Cal.App.3d 440 (1981).  MGA does not dispute this legal contention

24       but at oral argument disputed that Mattel did not know the basis for liability against
        itself or Mr. Larian due to the "uncanny" similarity between the allegations averred in

25       the original complaint and those now proffered against the two in the amended
        complaint.  Specifically, MGA notes that the original complaint spoke of Bryant

26       working for one of Mattel's competitiors and of that employee's theft of Mattel's
        intellectual property before leaving to work for that competitior.  At most, all this

27       shows is that Mattel knew that Bryant went to work for MGA, not that MGA or Mr.

28       Larian encouraged Bryant's alleged unlawful behavior recited in the original
        complaint.



16

EXHIBIT _____12_____

PAGE _____86_____

1   what Mattel has always claimed was a straightforward employment action against
2   an individual defendant into a global commercial dispute against Mattel's primary
3   competitor, MGA," that "will last years" thereby "delay[ing]" resolution of who owns
4   BRATZ.[6] (Bryant Opp. at 2). Mattel argues that "the law does not deny leave to
5   amend because claims are 'tangential'" and then reiterates its point that some
6   showing of prejudice, namely, seeking leave after expiration of discovery, is
7   necessary. (Reply to Bryant Opp. at 3). That is not entirely correct.

8        As noted previously, the Ninth Circuit recently upheld a denial for leave to
9   amend because the amendment would have "drastically changed" the litigation,
10  even though the leave request was tendered <u>before</u> the time, as set forth in a Rule
11  16(b) pre-trial scheduling order, for filing a motion to amend had expired and well
12  before the discovery cut-off. <u>See</u> <u>AmerisourceBergen Corp. v. Dialysist West, Inc.</u>,
13  465 F.3d 946, 953 (9th Cir. 2006). In justifying its reasoning the Ninth Circuit cited
14  approvingly to the following statement from a well-respected treatise: "If an
15  amendment substantially changes the theory on which the case has been
16  proceeding and is proposed late enough so that the opponent would be required to
17  engage in significant new preparation, the court may deem it prejudicial." <u>Id.</u> at 953
18  n.2 (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE,
19  FEDERAL PRACTICE AND PROCEDURE § 1487 (2nd ed. 1990)). Thus, <u>Dialysist</u>
20  recognized that the introduction of "different legal theories" and/or proof of
21  materially different facts well into the litigation can itself be a basis for finding
22  prejudice regardless of whether the period for discovery has expired (or is even
23  close to expiring) or the parties have already filed summary judgment motions. <u>Id.</u>
24  at 953-54.

25        Although the parties can safely be said to be at this point well into the

26

27        [6] Bryant also brings intricate legal arguments about the sufficiency of the
28  allegations Mattel has averred in building its RICO claims against him. Such
    considerations are best left to be resolved on a properly filed motion to dismiss.



EXHIBIT _12_
                    17

PAGE _87_

1  litigation in this consolidated action (as evidenced by the protracted discovery
2  disputes contained in the docket sheet that the parties have had before the
3  magistrate judge and now the special master, and the litigation of motions to
4  dismiss in both the 04-9049 and 04-9059 cases), the fact remains that, as Mattel
5  has made painfully clear in its papers, no scheduling order has been entered in this
6  case.[7] This takes away somewhat from the prejudice Dialysist found to exist when
7  a "drastic change [in a party's] litigation theory" takes place mid-stream in the
8  litigation process. Id. at 953. Simply put, without a schedule for the filing of pre-trial
9  motions and other matters (e.g., discovery cutoff), the parties have been given free
10 reign in how to conduct the litigation in this case.

11      That the delay in bringing the proposed amendments and the relative length
12 of time into the litigation when those amendments were brought may not neatly fold
13 into Dialysist's reasoning does not mean that leave must nonetheless be granted.
14 The 04-9059 action, as it is presently constituted, is not a complex one.  It asks a
15 rather narrow and straightforward question — Did anything from Bryant's
16 employment at Mattel during the 1999-2000 period give Mattel ownership rights to
17 the BRATZ doll line?  The proposed amendments would radically alter the litigation
18 in that case to include far ranging disputes involving multiple parties and concerning
19 events not connected with the BRATZ ownership issue.  That the original action
20 was a relatively simple and straight-forward matter raises another point beyond the
21 change in the action's litigation posture — whether entangling the rival doll makers'
22 other commercial disputes into this particular case would serve to muddy the waters
23 and make the matter that much more difficult to manage from the Court's
24 perspective.

25

26      [7] Mattel's repeated refrain that the matter is in its nascent stage as evidenced
   by the fact that the parties only just recently exchanged in initial disclosures is
27 misleading.  The exchange of initial disclosures referred to by Mattel is in the 05-
   2727 case.  With respect to the 04-9059 case it appears that such initial disclosures
28 were completed long ago as evidenced by the fact that discovery disputes appeared
   in that case as far back as January, 2005.



18

EXHIBIT  12

PAGE  88

1    As has long been recognized, equally important in determining whether to

2  grant such leave is what impact such amendments would have on the court's ability

3  to manage the case. See 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE

4  § 15.15[1] at 15-42.1 to 15-43 (3rd ed. 2006)("A court should also consider judicial

5  economy and its ability to manage the case. . . . The court should also temper the

6  policy favoring freely granting leave to amend with consideration of the ability of the

7  district court to manage the case adequately if amendment is allowed"). As Judge

8  Clark for the Fifth Circuit once observed: "In keeping with the purposes of the rule,

9  the court should consider judicial economy and whether the amendments would

10  lead to expeditious disposition of the merits of the litigation. Finally, the court

11  should consider whether the amendment adds substance to the original allegations,

12  and whether it is germane to the original case of action." Chitimacha Tribe of

13  Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982); see also

14  Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1493 (9th Cir.

15  1987)("General considerations of judicial economy also justify allowing the

16  amendments. The violations included in the proposed amendment relate to the

17  same subject matter as the original complaint. Allowing the amendment will further

18  the federal policy of 'wrapping in one bundle all matters concerning the same

19  subject matter.'").

20    Mattel's amendments do not add substance to the claims contained in its

21  original complaint. Rather, they would expand the universe of claims and

22  defendants stretching well-beyond the questions raised in the original complaint

23  over whether Bryant's conduct while in the employ of Mattel subjected his later

24  attributed creation of the BRATZ dolls to the provisions in Mattel's Inventions

25  Agreement or otherwise rendered his creation subject to an infringement action.

26  Nowhere does Mattel seek to reconcile the breadth of its present amendments with

27  the narrowness of the allegations contained in its original complaint. In fact, the

28  precise opposite is true. Mattel acknowledges that its proposed amendments bear

19

EXHIBIT __12__

PAGE __89__

1   more congruity to the allegations leveled against it in MGA's Lanham Act case than

2   to those in the action to which it seeks to add them:

> [M]any of the matters raised by Mattel's proposed Amended Complaint are and will remain at issue because of MGA's Complaint, whether or not leave to amend is granted. MGA's claims allege that a broad array of purported Mattel conduct across the globe, starting at least as early as 1999, has violated the Lanham Act and unfair competition law. This includes Mattel's alleged infringement of Bratz and other MGA products. As a result, <u>issues in the proposed Amended Complaint are already part and parcel of Mattel's defenses to MGA's unfair competition claims</u>, including because they show that MGA and Bryant, and not Mattel, are ones who stole the products and other properties involved.

11  (Reply to Bryant Opp. at 7 (emphasis added)). Mattel apparently finds this

12  discongruity unimportant because "all of these matters have been consolidated with

13  the <u>Bryant</u> case." (Id. at 7). As noted earlier, the fact that the cases have been

14  consolidated does not mean that the parties can ignore the distinctions that still

15  exist between them. If, as Mattel acknowledges, the present amendments are

16  nothing more than re-formulated defenses and counterclaims it presently has to

17  MGA's complaint against it in the 05-2727 case, then such amendments should be

18  brought in the form of an amended answer and counterclaim in that case.

19      Consideration of the distinctions between the two cases is wise as it serves

20  as a useful tool in providing the Court a better means to manage the cases now

21  that they have been consolidated. The proverbial dog (ownership in BRATZ)

22  should be wagging the proverbial tail (the remaining commercial disputes), not the

23  other way around. Admittedly, the dog's tail has grown in size both by MGA's filing

24  of its complaint in the 05-2727 action and Mattel's response thereto through its

25  proposed amendments. Nonetheless, it is readily apparent to the Court that the

26  crown jewel in this action still remains the ownership rights to the BRATZ dolls. The

27  parties have engaged in extensive and undoubtedly expensive discovery on this

28  very issue (from hiring world-renowned experts to test the age of Bryant's design


EXHIBIT  12

PAGE  90

1   drawings to technically complex discovery of what is on each other's computers).

2   Indeed the separateness of the two matters is reflected in how the cases are

3   currently structured, namely, the narrowness of the issue involved in 04-9059 and

4   the expansiveness of the facts at issue in 05-2727.  In light of this fact, the Court

5   believes a two-track scheduling order wherein the 04-9059 matter's discovery cut

6   off and trial date are set well-ahead of those in 05-2727 makes the most sense.  As

7   noted earlier, many of the legal claims being pressed in 05-2727 will be affected by

8   the result of the litigation in 04-9059.  If, for instance, Mattel does own the rights to

9   the BRATZ dolls (either owing to Bryant's stealing his idea from one of Mattel's

10  "development programs" or by way of the Inventions Agreement because he

11  continued to work on his designs while at Mattel), then large portions of MGA's

12  Lanham Act infringement claims may become moot.  By the same token, if Mattel

13  does not own rights to BRATZ, then some of the defenses and counterclaims set

14  forth as independent claims in the present amended complaint may become moot,

15  including Mattel's copyright infringement claim as well as portions of its remaining

16  RICO, misappropriation, and aiding and abetting claims.  If, however, the Court

17  were to allow the amended complaint to be filed in the 04-9059 action, such case

18  management would be difficult, if not impossible as many of the issues being

19  litigated in the 05-2727 case would have been poured into the 04-9059 case by the

20  amendment.  Due to this substantial overlap in claims and facts, a two-track

21  scheduling order utilizing the case number distinctions would be impossible to craft.

22  When pressed by the Court at oral argument as to which of its proposed claims it

23  believed would not undermine the BRATZ ownership posture of the 04-9059 case,

24  Mattel cited to its copyright and RICO claims.  However, upon further questioning

25  by the Court, counsel for Mattel acknowledged that much of those claims were, like

26  the claims at issue in 05-2727, dependent upon resolution of the ownership issue.

27  In light of the burden allowing Mattel's amendment to proceed would have on

28  this Court's ability to efficiently manage these consolidated matters denial of

21

EXHIBIT _____12_____

PAGE _____91_____

1   Mattel's request to amend its complaint in the 04-9059 matter is justified.  See

2   Perrian v. O'Grady, 958 F.2d 192, 195 (7th Cir. 1992)("The burden to the judicial

3   system can justify a denial of a motion to amend 'even if the amendment would

4   cause no hardship at all to the opposing party'").  Buttressing the Court's decision is

5   the fact that, even with such a denial, Mattel may file (and the Court provides leave

6   to Mattel to so file) an amended answer and counterclaim in the 05-2727 case

7   raising all the new claims and defendants presently sought to be achieved through

8   amendment of its complaint in the 04-9059 action.  None of the substantive

9   concerns raised by MGA and Bryant to the present amended complaint, e.g.,

10  statutes of limitations, would appear to be affected if the new claims and

11  defendants were brought as defenses and counterclaims in the 05-2727 case as

12  opposed to the 04-9059 one.

13          Accordingly, the Court GRANTS Mattel's motion for leave to file its proposed

14  amendments, but only insofar as they are pled in the form of an amended answer

15  and counterclaim in the 05-2727 case.

16          Finally, the lack of a scheduling order in this case is problematic; one should

17  have been entered long ago.  See Fed. R. Civ. P. 16(b)(noting that a scheduling

18  "order shall issue as soon as practicable but in any event within 90 days after the

19  appearance of a defendant and within 120 days after the complaint has been

20  served on a defendant").  In light of the fact that entry of a scheduling order is

21  woefully overdue in this case, the Court hereby ORDERS that a Rule 16(b)

22  scheduling conference be held in this consolidated matter on February 12, 2007, at

23  1:30 p.m. in Courtroom One.  The parties are directed to file a Joint Rule 26(f)

24  report with the Court by February 5, 2007.

25          IT IS SO ORDERED.

26  DATE: _/-//- o7_

27

28  STEPHEN G. LARSON
    UNITED STATES DISTRICT JUDGE

EXHIBIT __12__
                22
PAGE __92__

# EXHIBIT 13

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES-GENERAL

_____ Priority
_____ Send
_____ Clsd
_____ Enter
_____ JS-5/JS-6
_____ JS-2/JS-3

CV04-09059-NM(RNBx)
CASE NO.  CV05-02727-NM(RNBx)          DATE:  5/20/05

TITLE:  Mattel Inc. -v- Carter Bryant, et al
        MGA Entertainment Inc. -v- Mattel, Inc.

PRESENT:            HON. NORA M. MANELLA, JUDGE

Judith Hurley              N/A
Deputy Clerk               Court Reporter

ATTORNEY FOR PLAINTIFF        ATTORNEY FOR DEFENDANT

    N/A                          N/A

PROCEEDINGS:  IN CHAMBERS

    Now that the Ninth Circuit has granted Mattel's petition for permission to file
an interlocutory appeal, all discovery in these actions is stayed pending the
determination of the appeal.  The stay of discovery also applies to pending &
prospective discovery motions.

DOCKETED ON CM

MAY 20 2005

BY _____ 006

cc: Counsel                          Initials of Deputy Clerk _____
CIVIL MINUTES 11

EXHIBIT  13
PAGE  93

EXHIBIT 13

PAGE 94

# EXHIBIT 14

RightFAX                5/17/2006 2:28   PAGE 002/002   Fax Server

# PRIORITY SEND

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
### CIVIL MINUTES -- GENERAL

Case No.   CV 05-02727 SGL(RNBx)                    Date: May 16, 2006

Title:   MGA ENTERTAINMENT, INC. -v- MATTEL, INC.
==============================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

      Jim Holmes                              None Present
      Courtroom Deputy                        Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:       ATTORNEYS PRESENT FOR DEFENDANTS:

None present                            None present

PROCEEDINGS:   MINUTE ORDER (IN CHAMBERS)

    This matter is before the Court on its own motion.  The Court orders the parties to show cause why this action should not be consolidated for all purposes with the two related actions: Bryant v. Mattel, Inc., CV 04-09049 SGL (RNBx); Mattel, Inc. v. Bryant, CV 04-09059 SGL (RNBx). The parties' briefs re consolidation must be filed no later than June 5, 2006.  The Court will address the matter at the hearing on the motions set in the related cases on June 26, 2006.

    The Court's stay order, entered May 20, 2005, is vacated.

    IT IS SO ORDERED.

MINUTES FORM 90                                    1
CIVIL -- GEN

Initials of Deputy Clerk ___jh___

EXHIBIT ___14___

PAGE ___95___

ORIGINAL

# EXHIBIT 15

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 16

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 17

RightFAX          8/30/2007 2:34    PAGE 002/006    Fax Server

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
Priority ___    Send ___
Entered ___    Closed ___
JS-5/JS-6 ___   JS-2/JS-3 ___
Scan Only ___   Docketed on CM ___
___ THIS CONSTITUTES NOTICE OF
ENTRY AS REQUIRED BY FRCP 77(d)

8/29/07

EASTERN DIVISION
BY ___    DEPUTY

**PRIORITY SEND**
& ENTERED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL (RNBx)                    Date: August 27, 2007

Title:    CARTER BRYANT -v- MATTEL, INC.
          AND CONSOLIDATED ACTIONS
=================================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Gina L. Guzman                    Theresa Lanza
          Courtroom Deputy Clerk            Court Reporter

ATTORNEYS PRESENT FOR CARTER        ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker, Esq.                 John B. Quinn, Esq.
(morning session only)              Michael T. Zeller, Esq.
                                    Jon D. Corey, Esq.

ATTORNEYS PRESENT FOR MGA:

Patricia Glaser, Esq.
Diana M. Torres, Esq.

PROCEEDINGS:    **ORDER DENYING MOTION FOR TERMINATING SANCTIONS;**
                **ORDER DENYING REQUEST FOR INTERLOCUTORY**
                **APPEAL; ORDER REQUIRING FILING OF AFFIDAVITS RE**
                **EVIDENCE PRESERVATION**

        This matter is before the Court on MGA's and Carter Bryant's Motion for Terminating
Sanctions, filed on July 24, 2007 (docket #689). This matter was heard on August 27, 2007, at
which time it was taken under submission. The Court has considered the moving, opposition, and
reply briefs, as well as the many declarations and other evidence presented by the parties. The

MINUTES FORM 90                              Initials of Deputy Clerk _ glg
CIVIL -- GEN                                  Time: 02/52
                        1                    **Docket No. 895**

EXHIBIT   17

PAGE   128

Court has also considered the arguments presented at the August 27 hearing and the sworn testimony given by Michael C. Moore, in-house counsel for Mattel. Although at the hearing the Court indicated it would defer ruling on the present motion pending further filings by all parties regarding their efforts to preserve evidence, upon further reflection the Court sees no reason to delay ruling on the current motion.[1]  As set forth below, the Court **DENIES** the motion.

Based on their inherent power to sanction for "abusive litigation practices," district courts may impose sanctions against a party who destroys evidence, including the ultimate sanction of dismissal. Leon v. IDX Systems Corp., 464 F.3d 951, 958 (9th Cir. 2006). Dismissal is a harsh sanction, which may nonetheless be imposed upon those parties who have "engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir. 1995). However, before imposing the ultimate sanction of dismissal, district courts should consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Id. Nevertheless, district courts need not make explicit findings regarding each of these factors and, in any event, "a finding of willfulness, fault, or bad faith is required for dismissal to be proper." Leon, 464 F.3d 951, 958 (9th Cir. 2006) (internal quotation marks and citation omitted).

"A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" Id. at 959 (quoting United States v. Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir. 2002) (finding no willful spoliation where documents were destroyed in the routine course of business)). Neither Leon nor Kitsap elaborate on when a party has the "notice" necessary to trigger the duty to preserve evidence. However, in In re Napster, Inc. Copyright Litigation, 462 F.Supp.2d 1060, 1068 (N.D. Cal. 2006), the district court presented a persuasive discussion of the standard, first rejecting an argument that the duty to preserve evidence arises only when litigation is "imminent," and then setting forth a lesser standard. Specifically, the Napster court noted that the duty arose "when a party should have known that the evidence may be relevant to future litigation," and that any such "future litigation" must be "probable," and not merely "possibl[e]." (Internal quotation marks and citation omitted).

Keeping in mind these standards, the Court turns to the categories of evidence MGA and Bryant allege that Mattel has despoiled. As articulated by the Court at the hearing on this matter, those categories are (1) Mattel employees' emails, (2) documents maintained on the Zeus document storage system, (3) the delay in producing certain Rule 30(b)(6) witnesses, (4) Carter

---

[1]  By the same token, upon further reflection, the Court sees no reason to delay ruling on MGA's request for interlocutory appeal of the present order. See 28 U.S.C. § 1292(b) (stating that certifications for interlocutory appeal should be set forth in the order to be appealed). The Court's ruling on that matter appears infra.

MINUTES FORM 90
CIVIL – GEN

2

Initials of Deputy Clerk ___glg_____
Time: 02/52

Docket No. 895

EXHIBIT __17__

PAGE __129__

Bryant's missing phone records, and (5) Carter Bryant's missing time records.

In considering the arguments of the parties regarding when Mattel's duty to begin to preserve evidence arose, the Court determines that November 24, 2003, marks the date when litigation between Mattel and Bryant became more than merely speculative and in fact became probable.  On this date, in-house counsel for Mattel received in discovery in an unrelated action a copy of a contract between MGA and Bryant that pre-dated Bryant's resignation from Mattel.  This contract appeared to Mattel to violate certain employment agreements executed by Bryant and Mattel, thus giving rise to one of the current consolidated actions.  Although prior to this date an internal investigation may have raised a suspicion on Mattel's part that litigation might arise, there was no evidence presented to the Court that Mattel should have known it had a viable claim against Bryant before November 2003.  Cf. Fed. R. Civ. P. 11(b)(3) ("By presenting to the court . . . a pleading . . . , an attorney
. . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .").

The Court heard testimony from Michael C. Moore, in-house counsel for Mattel, regarding the efforts to preserve email communications and other evidence.  Counsel for MGA and Bryant cross-examined Mr. Moore at the hearing on this matter.  The Court credits his testimony.  The efforts Mr. Moore described regarding the preservation of emails is reasonable, and certainly does not amount to spoliation.  Moore described communications with specific individuals identified by Mattel as those most likely to have information relevant to the litigation and efforts made to preserve any evidence those individuals had in their custody or control.  Emails not otherwise archived from the relevant time period – mostly September and October, 2000 – had already been deleted from Mattel's email servers in accordance with its email retention policies.  Mattel cannot be faulted for deleting these emails in the regular course of business before it had notice of its claims against Bryant.

In April, 2005, the current litigation took a dramatic turn, when MGA filed suit against Mattel.  At that time, all Mattel employees were instructed to maintain any evidence potentially relevant to the litigation.  When that suit was filed, Mattel took action to preserve all of its emails, capturing emails that date back to December, 2004.  They retain these backup tapes to this day.  MGA and Bryant make much of Mattel's failure to suspend its 90-day auto-delete policy regarding emails, but fail to address two key points:  First, Mattel altered only the storage mechanism for its emails, it did not actually delete any emails; and second, Mattel, a number of years ago, informed MGA that it was not planning on suspending its 90-day auto-delete policy, and MGA did not at that time object.

As for the Zeus tapes, there is simply no evidence of spoliation.  First and foremost, as the system has been described to the Court, the system is a cumulative file system that continues to accumulate.  The system is still in operation, does not have an auto-delete function, and

MINUTES FORM 90
CIVIL -- GEN

                                3

Initials of Deputy Clerk ___glg_____
Time: 02/52

Docket No. 895

EXHIBIT ____17____

PAGE ____130____

information dating back to all relevant time period in this case may be accessed from it. Additionally, Mattel's in-house counsel testified as to the existence of several backup tapes that it can make available to MGA and Bryant. Finally, outside of pure speculation, there is no evidence that anyone has deleted anything from the Zeus system. Although production issues may still remain with respect to these data, preservation of this data, in the Court's view, is simply not an issue based on the record before the Court.

The delay in producing certain Rule 30(b)(6) witnesses is not a proper basis for terminating sanctions in this case. No motions to compel were brought to compel these witnesses's depositions at earlier times, and MGA and Bryant's accusations that the delay in producing them for deposition is part of a cover-up of the destruction of evidence is mere unfounded speculation. Moreover, the Court is mindful that MGA has been found by the discovery master to be guilty of the very same unexcused delay of which it accuses Mattel. See August 14, 2007, J. Infante Order, at 8 and 9 (attached to the Supplemental Proctor Decl. as Ex. 1).

Although Mattel is at a loss to explain the missing phone records from the critical month of October, 2000, there is no evidence that the records were destroyed. Moreover, other evidence presented by Mattel, especially phone records produced by Bryant that show he was in contact with MGA during that time period, suggest that the missing records would not assist Bryant.

The "missing" time records were either never created or were deleted. There is no evidence that the latter occurred. In fact, the only evidence on this point, from Mattel's Rule 30(b)(6) witness, is that although deletion of time records is possible, he was unaware of any instances of that occurring. Artavia Depo. 116, 170-71.

In sum, MGA and Bryant have failed to present any evidence regarding the "willfulness, fault, or bad faith" required to justify the imposition of terminating sanctions. Leon, 464 F.3d at 958. Many of MGA and Bryant's allegations, especially those raised in connection with Mattel's failure to suspend its auto-delete policy (portrayed as a wholesale failure to preserve emails less than 90-days old) and the availability of data from the Zeus system, are nothing more than rhetoric laced with hyperbole. Other allegations, such as Mattel's motive for delaying certain Rule 30(b)(6) depositions, and the destruction of Bryant's October, 2000, phone records and time records, are nothing more than sheer speculation, unsupported by evidence. Although counsel impressed upon the Court MGA's conviction of the righteousness of its cause, such overzealous conviction as witnessed by the Court at the hearing is no substitute for proof.

Accordingly, the Court **DENIES** MGA's and Bryant's Motion for Terminating Sanctions.

At the hearing, counsel for MGA and Bryant requested the Court certify the present order for interlocutory appeal. That request is **DENIED**. Permissive interlocutory appeals are governed by 28 U.S.C. § 1292(b):

When a district judge, in making in a civil action an order not otherwise

MINUTES FORM 90
CIVIL – GEN

Initials of Deputy Clerk __glp_____
Time: 02/52
**Docket No. 895**

4

EXHIBIT ___17___

PAGE ___131___

appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Id. Here, there is no "controlling question of law" in controversy. The law is quite settled. Accordingly, certification for interlocutory appeal of the present order is unwarranted.

As stated at the hearing, the Court **ORDERS** all parties to set forth, in affidavit form, their preservation efforts and policies with respect to the present litigation on or before September 10, 2007.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL – GEN

5

Initials of Deputy Clerk ___glg_____
Time: 02/52
**Docket No. 895**

EXHIBIT ___17_____

PAGE ___132_____

RightFAX          8/30/2007 2:34     PAGE 001/006   Fax Server

**From:**   Name:       United States District Court
                        312 North Spring Street
                        Los Angeles, CA  90012
            Voice Phone: (213) 894-5474


**To:**     Name:       Michael Zeller
            Company:

                        865 S Figueroa St, 10th Floor,
            City/State: Los Angeles, CA 90017-2543
            Fax Number: 213-443-3100



### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

## Automated Document Delivery Service
*Notice pursuant to Rule 77(d) FRCiv.P*
*The attached copy is hereby served upon you pursuant to Federal Rule of Civil Procedure 77(d).*

**Fax Notes:**

Case 2:04-CV-09049 : CARTER BRYANT V. MATTEL INC

*Pursuant to General Order 06-07, Section F, the following documents shall be submitted in the traditional manner: Pen Registers, Search Warrants, Seizure Warrants, Wire Taps, Bond Related Documents, Under Seal and In-Camera Documents, and All Charging Documents (Complaints, Informations, Indictments, and Superseding Charging Documents).  All other documents filed in cases unassigned to a judge shall be filed electronically with a copy e-mailed to the criminal intake mailbox for the appropriate division.  The proper e-mail address for each division is as follows:*

*Western Division:  CrimIntakeCourtDocs-LA@cacd.uscourts.gov*
*Southern Division:  CrimIntakeCourtDocs-SA@cacd.uscouts.gov*
*Eastern Division:  CrimIntakeCourtDocs-RS@cacd.uscourts.gov*

*For additional information and assistance, please refer to the CM/ECF page on the Court website at www.cacd.uscourts.gov.*

**Switch to e-mail delivery and get these documents sooner!**
**To switch, complete and submit**
**Optical Scanning Enrollment / Update form G-76.**
**Call 213-894-5474 for help and free technical support.**

*If you received this document in error because the attorney with whom this document is directed is no longer the attorney on the case, a Notice of Change of Attorney Information, form G-6, must be filed.  If there are other cases which you've received documents for which you are no longer the attorney, separate notices must be filed for each case. Failure to do so will result in the continued sending of documents to you. Form G-6 is available on the court's website at www.cacd.uscourts.gov or at the Clerk's Office.*

Date and time of transmission:          Thursday, August 30, 2007 2:34:04 PM
Number of pages including this cover sheet:  06

EXHIBIT ___17___

PAGE ___133___

RightFAX          8/30/2007 2:34   PAGE 002/006   Fax Server

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
Priority ___   Send ___
Entered ___    Closed ___
JS-5/JS-6 ___  JS-2/JS-3 ___
Scan Only ___  Docketed on CM ___
___ THIS CONSTITUTES NOTICE OF
ENTRY AS REQUIRED BY FRCP 77(d)

8/29/07

EASTERN DIVISION
BY ___ DEPUTY

# PRIORITY SEND
### & ENTERED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL (RNBx)                Date: August 27, 2007

Title:    CARTER BRYANT -v- MATTEL, INC.
          AND CONSOLIDATED ACTIONS
==================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Gina L. Guzman                    Theresa Lanza
            Courtroom Deputy Clerk            Court Reporter

ATTORNEYS PRESENT FOR CARTER         ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker, Esq.                  John B. Quinn, Esq.
(morning session only)               Michael T. Zeller, Esq.
                                     Jon D. Corey, Esq.

ATTORNEYS PRESENT FOR MGA:

Patricia Glaser, Esq.
Diana M. Torres, Esq.

PROCEEDINGS:    **ORDER DENYING MOTION FOR TERMINATING SANCTIONS;
                ORDER DENYING REQUEST FOR INTERLOCUTORY
                APPEAL; ORDER REQUIRING FILING OF AFFIDAVITS RE
                EVIDENCE PRESERVATION**

     This matter is before the Court on MGA's and Carter Bryant's Motion for Terminating
Sanctions, filed on July 24, 2007 (docket #689). This matter was heard on August 27, 2007, at
which time it was taken under submission. The Court has considered the moving, opposition, and
reply briefs, as well as the many declarations and other evidence presented by the parties. The

MINUTES FORM 90                                    Initials of Deputy Clerk __ glg
CIVIL -- GEN                                       Time: 02/52
                        1                          **Docket No. 895**

EXHIBIT    17
PAGE       134

Court has also considered the arguments presented at the August 27 hearing and the sworn testimony given by Michael C. Moore, in-house counsel for Mattel. Although at the hearing the Court indicated it would defer ruling on the present motion pending further filings by all parties regarding their efforts to preserve evidence, upon further reflection the Court sees no reason to delay ruling on the current motion.[1]  As set forth below, the Court **DENIES** the motion.

Based on their inherent power to sanction for "abusive litigation practices," district courts may impose sanctions against a party who destroys evidence, including the ultimate sanction of dismissal. Leon v. IDX Systems Corp., 464 F.3d 951, 958 (9th Cir. 2006). Dismissal is a harsh sanction, which may nonetheless be imposed upon those parties who have "engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir. 1995). However, before imposing the ultimate sanction of dismissal, district courts should consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Id. Nevertheless, district courts need not make explicit findings regarding each of these factors and, in any event, "a finding of willfulness, fault, or bad faith is required for dismissal to be proper." Leon, 464 F.3d 951, 958 (9th Cir. 2006) (internal quotation marks and citation omitted).

"A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" Id. at 959 (quoting United States v. Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir. 2002) (finding no willful spoliation where documents were destroyed in the routine course of business)). Neither Leon nor Kitsap elaborate on when a party has the "notice" necessary to trigger the duty to preserve evidence. However, in In re Napster, Inc. Copyright Litigation, 462 F.Supp.2d 1060, 1068 (N.D. Cal. 2006), the district court presented a persuasive discussion of the standard, first rejecting an argument that the duty to preserve evidence arises only when litigation is "imminent," and then setting forth a lesser standard. Specifically, the Napster court noted that the duty arose "when a party should have known that the evidence may be relevant to future litigation," and that any such "future litigation" must be "probable," and not merely "possibl[e]." (Internal quotation marks and citation omitted).

Keeping in mind these standards, the Court turns to the categories of evidence MGA and Bryant allege that Mattel has despoiled. As articulated by the Court at the hearing on this matter, those categories are (1) Mattel employees' emails, (2) documents maintained on the Zeus document storage system, (3) the delay in producing certain Rule 30(b)(6) witnesses, (4) Carter

---

[1]  By the same token, upon further reflection, the Court sees no reason to delay ruling on MGA's request for interlocutory appeal of the present order. See 28 U.S.C. § 1292(b) (stating that certifications for interlocutory appeal should be set forth in the order to be appealed). The Court's ruling on that matter appears infra.

Initials of Deputy Clerk ___glg_____
Time: 02/52
**Docket No. 895**

EXHIBIT ___17___

PAGE ___135___

Bryant's missing phone records, and (5) Carter Bryant's missing time records.

In considering the arguments of the parties regarding when Mattel's duty to begin to
preserve evidence arose, the Court determines that November 24, 2003, marks the date when
litigation between Mattel and Bryant became more than merely speculative and in fact became
probable. On this date, in-house counsel for Mattel received in discovery in an unrelated action a
copy of a contract between MGA and Bryant that pre–dated Bryant's resignation from Mattel. This
contract appeared to Mattel to violate certain employment agreements executed by Bryant and
Mattel, thus giving rise to one of the current consolidated actions. Although prior to this date an
internal investigation may have raised a suspicion on Mattel's part that litigation might arise, there
was no evidence presented to the Court that Mattel should have known it had a viable claim
against Bryant before November 2003. Cf. Fed. R. Civ. P. 11(b)(3) ("By presenting to the court . . .
a pleading . . . , an attorney
. . . is certifying that to the best of the person's knowledge, information, and belief, formed after an
inquiry reasonable under the circumstances, . . . the allegations and other factual contentions have
evidentiary support or, if specifically so identified, are likely to have evidentiary support after a
reasonable opportunity for further investigation or discovery . . . .").

The Court heard testimony from Michael C. Moore, in-house counsel for Mattel, regarding
the efforts to preserve email communications and other evidence. Counsel for MGA and Bryant
cross-examined Mr. Moore at the hearing on this matter. The Court credits his testimony. The
efforts Mr. Moore described regarding the preservation of emails is reasonable, and certainly does
not amount to spoliation. Moore described communications with specific individuals identified by
Mattel as those most likely to have information relevant to the litigation and efforts made to
preserve any evidence those individuals had in their custody or control. Emails not otherwise
archived from the relevant time period – mostly September and October, 2000 – had already been
deleted from Mattel's email servers in accordance with its email retention policies. Mattel cannot
be faulted for deleting these emails in the regular course of business before it had notice of its
claims against Bryant.

In April, 2005, the current litigation took a dramatic turn, when MGA filed suit against Mattel.
At that time, all Mattel employees were instructed to maintain any evidence potentially relevant to
the litigation. When that suit was filed, Mattel took action to preserve all of its emails, capturing
emails that date back to December, 2004. They retain these backup tapes to this day. MGA and
Bryant make much of Mattel's failure to suspend its 90-day auto-delete policy regarding emails,
but fail to address two key points: First, Mattel altered only the storage mechanism for its emails, it
did not actually delete any emails; and second, Mattel, a number of years ago, informed MGA that
it was not planning on suspending its 90-day auto-delete policy, and MGA did not at that time
object.

As for the Zeus tapes, there is simply no evidence of spoliation. First and foremost, as the
system has been described to the Court, the system is a cumulative file system that continues to
accumulate. The system is still in operation, does not have an auto-delete function, and

MINUTES FORM 90
CIVIL -- GEN

3

Initials of Deputy Clerk ___glg_____
Time: 02/52
Docket No. 895

EXHIBIT _____17_____

PAGE _____136_____

information dating back to all relevant time period in this case may be accessed from it. Additionally, Mattel's in-house counsel testified as to the existence of several backup tapes that it can make available to MGA and Bryant. Finally, outside of pure speculation, there is no evidence that anyone has deleted anything from the Zeus system. Although production issues may still remain with respect to these data, preservation of this data, in the Court's view, is simply not an issue based on the record before the Court.

The delay in producing certain Rule 30(b)(6) witnesses is not a proper basis for terminating sanctions in this case. No motions to compel were brought to compel these witnesses's depositions at earlier times, and MGA and Bryant's accusations that the delay in producing them for deposition is part of a cover-up of the destruction of evidence is mere unfounded speculation. Moreover, the Court is mindful that MGA has been found by the discovery master to be guilty of the very same unexcused delay of which it accuses Mattel. See August 14, 2007, J. Infante Order, at 8 and 9 (attached to the Supplemental Proctor Decl. as Ex. 1).

Although Mattel is at a loss to explain the missing phone records from the critical month of October, 2000, there is no evidence that the records were destroyed. Moreover, other evidence presented by Mattel, especially phone records produced by Bryant that show he was in contact with MGA during that time period, suggest that the missing records would not assist Bryant.

The "missing" time records were either never created or were deleted. There is no evidence that the latter occurred. In fact, the only evidence on this point, from Mattel's Rule 30(b)(6) witness, is that although deletion of time records is possible, he was unaware of any instances of that occurring. Artavia Depo. 116, 170-71.

In sum, MGA and Bryant have failed to present any evidence regarding the "willfulness, fault, or bad faith" required to justify the imposition of terminating sanctions. Leon, 464 F.3d at 958. Many of MGA and Bryant's allegations, especially those raised in connection with Mattel's failure to suspend its auto-delete policy (portrayed as a wholesale failure to preserve emails less than 90-days old) and the availability of data from the Zeus system, are nothing more than rhetoric laced with hyperbole. Other allegations, such as Mattel's motive for delaying certain Rule 30(b)(6) depositions, and the destruction of Bryant's October, 2000, phone records and time records, are nothing more than sheer speculation, unsupported by evidence. Although counsel impressed upon the Court MGA's conviction of the righteousness of its cause, such overzealous conviction as witnessed by the Court at the hearing is no substitute for proof.

Accordingly, the Court **DENIES** MGA's and Bryant's Motion for Terminating Sanctions.

At the hearing, counsel for MGA and Bryant requested the Court certify the present order for interlocutory appeal. That request is **DENIED**. Permissive interlocutory appeals are governed by 28 U.S.C. § 1292(b):

When a district judge, in making in a civil action an order not otherwise

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk __glp_____
Time: 02/52

4

**Docket No. 895**

EXHIBIT ___17___

PAGE ___137___

`RightFAX          8/30/2007 2:34    PAGE 006/006    Fax Server

appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Id. Here, there is no "controlling question of law" in controversy. The law is quite settled. Accordingly, certification for interlocutory appeal of the present order is unwarranted.

As stated at the hearing, the Court ORDERS all parties to set forth, in affidavit form, their preservation efforts and policies with respect to the present litigation on or before September 10, 2007.

**IT IS SO ORDERED**.

MINUTES FORM 90
CIVIL -- GEN

5

Initials of Deputy Clerk __gig_____
Time: 02/52
**Docket No. 895**

EXHIBIT __17__

PAGE __138__

'RightFAX              8/30/2007 2:34     PAGE 001/006    Fax Server

**From:**   Name:          United States District Court
                            312 North Spring Street
                            Los Angeles, CA  90012
            Voice Phone:   (213) 894-5474


**To:**     Name:          Michael Zeller
            Company:

                            865 S Figueroa St, 10th Fl,
            City/State:    Los Angeles, CA 90017-2543
            Fax Number:    213-624-0643

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA



## Automated Document Delivery Service
*Notice pursuant to Rule 77(d) FRCiv.P*
*The attached copy is hereby served upon you pursuant to Federal Rule of Civil Procedure 77(d).*

**Fax Notes:**

Case 2:04-CV-09049 : CARTER BRYANT V. MATTEL INC

*Pursuant to General Order 06-07, Section F, the following documents shall be submitted in the traditional manner: Pen Registers, Search Warrants, Seizure Warrants, Wire Taps, Bond Related Documents, Under Seal and In-Camera Documents, and All Charging Documents (Complaints, Informations, Indictments, and Superseding Charging Documents). All other documents filed in cases unassigned to a judge shall be filed electronically with a copy e-mailed to the criminal intake mailbox for the appropriate division. The proper e-mail address for each division is as follows:*

*Western Division:  CrimIntakeCourtDocs-LA@cacd.uscourts.gov*
*Southern Division:  CrimIntakeCourtDocs-SA@cacd.uscourts.gov*
*Eastern Division:  CrimIntakeCourtDocs-RS@cacd.uscourts.gov*

*For additional information and assistance, please refer to the CM/ECF page on the Court website at www.cacd.uscourts.gov.*

**Switch to e-mail delivery and get these documents sooner!**
To switch, complete and submit
Optical Scanning Enrollment / Update form G-76.
Call 213-894-5474 for help and free technical support.

*If you received this document in error because the attorney with whom this document is directed is no longer the attorney on the case, a Notice of Change of Attorney Information, form G-6, must be filed. If there are other cases which you've received documents for which you are no longer the attorney, separate notices must be filed for each case. Failure to do so will result in the continued sending of documents to you. Form G-6 is available on the court's website at www.cacd.uscourts.gov or at the Clerk's Office.*

Date and time of transmission:        Thursday, August 30, 2007 2:34:04 PM
Number of pages including this cover sheet:  06


8|29

EXHIBIT   17
PAGE   139

**EXHIBIT 18**

1        UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA

3           EASTERN DIVISION

4             - - -

5    HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6             - - -

7   CARTER BRYANT,                    )

8                  PLAINTIFF,         )

9        VS.                          )   NO. ED CV 04-09049
                                      )   (LEAD LOW NUMBER)
10   MATTEL, INC.,                    )

11                  DEFENDANT.        )
     _____)      BRYANT'S MOTION FOR
12   AND RELATED ACTIONS,             )   TERMINATING SANCTIONS
     _____)

13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16           RIVERSIDE, CALIFORNIA

17          MONDAY, AUGUST 27, 2007

18             11:06 A.M.

19

20

21

22

23        THERESA A. LANZA, RPR, CSR
     FEDERAL OFFICIAL COURT REPORTER
24        3470 12TH STREET, RM. 134
       RIVERSIDE, CALIFORNIA  92501
25           (951) 274-0844
        CSR11457@SBCGLOBAL.NET

AUGUST 27, 2007  EXHIBIT  _18_              ED CV 04-9049

PAGE ___140___

1   APPEARANCES:

2

3   ON BEHALF OF PLAINTIFF/COUNTER DEFENDANT MATTEL, INC.:

4

5                        QUINN EMANUEL
                         BY:   JOHN B. QUINN
                         BY:   MICHAEL T. ZELLER
6                        BY:   JON C. COREY
                         865 S. FIGUEROA STREET,
7                        10TH FLOOR
                         LOS ANGELES, CALIFORNIA   90017
8                        (213) 624-7707

9

10  ON BEHALF OF PLAINTIFF/COUNTER COMPLAINANT/DEFENDANT,
    CARTER BRYANT:
11
                         KEKER & VAN NEST
12                       BY:   MICHAEL H. PAGE
                         710 SANSOME STREET
13                       SAN FRANCISCO, CALIFORNIA   94111-1704
                         (415) 391-5400
14

15

16  ON BEHALF OF MGA ENTERTAINMENT:

17                       O'MELVENY & MYERS LLP
                         BY:   DIANA M. TORRES
18                       400 SOUTH HOPE STREET
                         LOS ANGELES, CALIFORNIA   90071-2899
19                       (213) 430-6000

20                       CHRISTENSEN, GLASER, FINK,
                          JACOBS, WEIL & SHAPIRO, LLP
21                       BY:   PATRICIA GLASER
                         10250 CONSTELLATION BOULEVARD
22                       LOS ANGELES, CALIFORNIA   90067
                         (310) 553-3000

23

24

25

```
1                          I N D E X

2                                              PAGE

3    ARGUMENT.....................................    4

4    TESTIMONY....................................   83

5

6

7
     WITNESS           DIRECT      CROSS     REDIRECT      RECROSS
8    MICHAEL MOORE

9    BY THE COURT         83
     BY MS. GLASER        86
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    IN FRONT OF JUDGE INFANTE, SPECIFICALLY ON APRIL 4, 2007.

2         THE COURT:   MR. QUINN, LET ME ASK YOU, WHO IS THE

3    PERSON MOST KNOWLEDGEABLE ABOUT ZEUS?

4         MR. COREY:   LET ME CLARIFY THIS.

5         IN THE RELEVANT TIME PERIOD, WHICH IS 1998 THROUGH          02:24

6    2003, THERE WERE TWO GENTLEMEN WHOSE NAMES I CAN'T RECALL WHO

7    WERE RESPONSIBLE FOR ZEUS.   THEY LEFT THE COMPANY.   MS. MARINE

8    HAD SOME RESPONSIBILITY FOR ZEUS PRIOR TO -- I THINK IT WAS

9    1996 OR 1997.   SHE HAD RESPONSIBILITY FOR ZEUS IN -- I BELIEVE

10   STARTING IN 2003 OR 2004.                                       02:25

11        MATTEL'S KNOWLEDGE ON THIS SUBJECT OF ZEUS, WHAT

12   HAPPENED BETWEEN 1998 AND 2003, IS LIMITED.

13        THE COURT:   SO WHAT YOU'RE SAYING BASICALLY IS THAT

14   THIS IS THE PERSON MOST KNOWLEDGEABLE, NOT NECESSARILY THAT SHE

15   ACTUALLY IS KNOWLEDGEABLE.                                       02:25

16        MR. COREY:   THAT'S EXACTLY RIGHT.   WE DID OUR BEST.

17   WE TRIED TO TRACK THESE GUYS DOWN.   WE HAD SOME BRIEF

18   CONVERSATIONS WITH THEM.   THE KNOWLEDGE THAT SHE'S GIVING IS

19   THE KNOWLEDGE THAT MATTEL HAS.   MATTEL CAN'T BE HELD TO A

20   HIGHER STANDARD THAN THAT.   AND WHAT SHE TESTIFIED TO WITH      02:25

21   RESPECT TO THE DOCUMENT MANAGEMENT SYSTEM IS, THERE IS NONE.

22        THE COURT:   I'M GOING TO HEAR VERY BRIEFLY FROM

23   MR. MOORE, AND THEN WE'RE GOING TO TRY TO WRAP THIS UP.

24        MR. MOORE, IF YOU WOULD PLEASE COME TO THE WITNESS

25   STAND.                                                          02:25

JULY 24, 2006                ED CV 04-09049

EXHIBIT  18

PAGE  143

1          **MS. GLASER:**  IS YOUR HONOR GOING TO ASK QUESTIONS, OR

2     MAY I?

3          **THE COURT:**  I'M GOING TO ASK SOME QUESTIONS.  I HAVE

4     A FEW QUESTIONS MYSELF; THAT'S WHY I CALLED THE WITNESS.

5          **MR. QUINN:**  DO YOU WANT HIM AT THE PODIUM?          02:26

6          **THE COURT:**  THE WITNESS STAND, IF YOU WOULD.

7          **THE CLERK:**  DO YOU SOLEMNLY STATE THAT THE TESTIMONY

8     YOU MAY GIVE IN THE CAUSE NOW PENDING BEFORE THIS COURT SHALL

9     BE THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, SO

10    HELP YOU GOD?

11         **THE WITNESS:**  I DO.

12         **THE CLERK:**  PLEASE STATE YOUR FULL NAME AND SPELL

13    YOUR LAST NAME FOR THE RECORD.

14         **THE WITNESS:**  MICHAEL CHRISTOPHER MOORE, M-O-O-R-E.

15                    **DIRECT EXAMINATION**

16    **BY THE COURT:**

17    Q    MR. MOORE, YOU'VE PREVIOUSLY INDICATED IN YOUR

18    DECLARATIONS YOUR POSITION WITH MATTEL.

19         THE COURT BASICALLY WANTS TO GET A CLARIFICATION OF

20    WHAT EXACTLY HAPPENED IN NOVEMBER OF 2003, IN TERMS OF WHAT YOU    02:26

21    DID TO PRESERVE THE DOCUMENTS.

22    A    MY EFFORT TO PRESERVE IN NOVEMBER 2003 REALLY BEGINS WITH

23    AN EXAMINATION OF WHAT WAS OUT THERE HISTORICALLY.  THE EVENT

24    OCCURRED IN 2000, SO I'M LOOKING FOR ANY EVIDENCE, ANY DOCUMENT

25    THAT WOULD HELP US UNDERSTAND THOSE EVENTS.  SO I HAD ALREADY    02:27

1    GONE OUT DURING THE INVESTIGATION -- PREVIOUSLY TO NOVEMBER OF

2    2003, I HAD GONE OUT DURING THE INVESTIGATION TO LOCATE PEOPLE

3    WHO MAY HAVE KNOWN CARTER BRYANT; TO UNDERSTAND WHETHER

4    CARTER BRYANT HAD A COMPUTER; TO TRY TO UNDERSTAND WHETHER

5    CARTER BRYANT USED THE ZEUS SYSTEM; AND SO MY EFFORTS INCLUDE          02:27

6    THAT TIME PERIOD.  AS I COLLECTED DOCUMENTS, I PRESERVED THEM

7    DURING NOVEMBER OF 2003 AND BEYOND.

8              AND AS WE IDENTIFIED PEOPLE WHO EITHER KNEW

9    CARTER BRYANT OR WHO WE THOUGHT HAD DOCUMENTS OR E-MAILS

10   RELEVANT TO THE CASE, WE CONTINUED TO PRESERVE THOSE PEOPLE'S         02:28

11   DOCUMENTS.

12             FOR EXAMPLE, IF WE LOCATED SOMEBODY WHO HAD A

13   COMPUTER HARD DRIVE THAT WE THOUGHT HAD E-MAILS ON IT, WE WOULD

14   PRESERVE IT.

15   Q    WHAT INSTRUCTIONS DID YOU GIVE TO THOSE INDIVIDUALS THAT        02:28

16   YOU SO IDENTIFIED?

17   A    I WOULD ASK THEM WHETHER THEY HAD ANYTHING RELATED TO

18   CARTER BRYANT OR BRATZ.  I WOULD SAY, "PLEASE COLLECT IT AND

19   GIVE IT TO ME; AND IF YOU FIND ANYTHING IN ADDITION TO THAT,

20   PLEASE GIVE IT TO ME."                                              02:28

21   Q    WHAT ABOUT GOING FORWARD?

22   A    WELL, GOING FORWARD, THE INSTRUCTION IS, "IF YOU FIND

23   ANYTHING, GIVE IT TO ME AND MAINTAIN IT."

24   Q    WITH RESPECT TO THIS DEPOSITION THAT YOU WERE -- WERE YOU

25   PRESENT AT THIS MARINE DEPOSITION THAT'S BEEN REFERRED TO?          02:28

JULY 24, 2006  EXHIBIT ___18___    ED CV 04-09049

PAGE ___145___

1    A    I BELIEVE I WAS PRESENT AT THE ONE IN JUNE OF 2000.

2    Q    THERE WAS AN INDICATION THAT SHE WAS NOT AWARE OF THE ZEUS

3    BACKUP?  DO YOU RECALL THAT?

4    A    YES.

5    Q    WHAT STEPS, IF ANY, DID YOU DO TO CLARIFY THAT WITH HER          02:29

6    AFTERWARDS?

7    A    WELL --

8    Q    THE TESTIMONY TODAY IS OR THE REPRESENTATION FROM

9    MR. QUINN IS THAT BACKUPS EXISTED.

10         DEFENSE COUNSEL TAKES ISSUE WITH THE FACT THAT YOU              02:29

11   SAT BY SILENTLY AND ALLOWED THIS TESTIMONY TO PROCEED.

12   A    YES.  I HAD A CONVERSATION WITH COUNSEL ABOUT WHAT TO DO

13   NEXT, BUT I DON'T WANT TO NECESSARILY GET INTO WHAT THAT WAS.

14   Q    I UNDERSTAND.

15   A    BUT I HAD AN UNDERSTANDING, AFTER THOSE CONVERSATIONS,           02:29

16   THAT MGA HAD KNOWLEDGE OF THESE TAPES' EXISTENCE, AND THAT THEY

17   HAD BEEN OFFERED, AND THAT, YOU KNOW, MY DUTY WASN'T TO CORRECT

18   HER MEMORY AT THAT TIME.

19   Q    AND HOW IS IT THAT YOU HAD INFORMATION THAT MGA WAS AWARE

20   THAT THESE TAPES EXISTED, NOTWITHSTANDING HER DEPOSITION             02:30

21   TESTIMONY THAT YOU WITNESSED?

22   A    HOW DID I KNOW THAT MGA --

23   Q    PERHAPS I MISUNDERSTOOD YOU.

24         I THOUGHT YOU JUST INDICATED THAT YOU UNDERSTOOD THAT

25   MGA WAS AWARE THAT THESE BACKUP TAPES EXISTED.                        02:30

JULY 24, 2006                    ED CV 04-09049
EXHIBIT        18
PAGE           146

125

1    IS ACTUALLY GOING TO BE UNDER SEAL.

2          I'LL ISSUE A MINUTE ORDER DIRECTING FURTHER

3    PROCEEDINGS IN THIS MATTER, BUT BE WORKING ON THIS DECLARATION.

4          **MS. GLASER:**   THANK YOU, YOUR HONOR.

5          **MR. QUINN:**   THANK YOU, YOUR HONOR.                    03:19

6          **THE COURT:**   GOOD DAY, COUNSEL.

7

8

9

10

11                        CERTIFICATE

12

13   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
14   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
     ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
15   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

16

17   _____            9-5-07
     THERESA A. LANZA, CSR, RPR             _____
18   FEDERAL OFFICIAL COURT REPORTER             DATE

19

20

21

22

23

24

25

# EXHIBIT 19

# BRATZ DOLL PACKS

| Project start | | |
|---|---|---|
| PDF | | 10/16/2000 |
| vendor selected | | |

## ROTOCAST SCULPTING

| | | | |
|---|---|---|---|
| PDF | | | 10/16/2000 |
| control drawings to LA designer | LA | | 10/2/2000 |
| rough wax | LA | 4 | 10/30/2000 |
| resubmit to LA designer with comments | LA | 0 | 10/30/2000 |
| LA designer submit final wax/approval | LA | 4 | 11/27/2000 |
| approval of final wax/send to HK | LA/HK | 0 | 11/27/2000 |
| roto skin | HK | 4 | 12/25/2000 |
| production mold | HK | 4 | 1/22/2001 |

## ROOTING

| | | | |
|---|---|---|---|
| roto skin avail | HK | | 12/25/2000 |
| LA submission of rooting master/specs | LA | 4 | 1/22/2001 |
| HK submission against rooting master | HK | 3 | 2/12/2001 |
| rooting approval | LA | 0 | 2/12/2001 |

## DECO

| | | | |
|---|---|---|---|
| roto skin | HK | | 12/25/2000 |
| deco master approved | LA | 4 | 1/22/2001 |
| deco approval | HK/LA | 3 | 2/12/2001 |

## SOFTGOODS

| | TARGET | | | | |
|---|---|---|---|---|---|
| fep | 3/20/2000 | 2/19/2000 | swatches to HK | HK | | 10/30/2000 |
| pp | 2 | 4/3/2000 | 3/4/2000 | 1st swatch submision | HK | 2 | 11/13/2000 |
| ps | 4 | 5/1/2000 | 4/1/2000 | fabric approval | LA/HK | 9 | 1/15/2001 |
| | | | | FEP ( earlier or same as FEP) | HK | 9 | 3/19/2001 |
| | | | | LA submission of final outfit pattern | LA | | 1/22/2001 |
| | | | | HK pattern submission | HK | 4 | 2/19/2001 |

## PACKAGING

| | | | |
|---|---|---|---|
| final appearance | LA | | 1/22/2001 |
| copy complete/photo model rec'd. | LA | 4 | 2/19/2001 |
| FMA | LA | 2 | 3/4/2001 |

## INJECTION MOLDED

| | | | |
|---|---|---|---|
| LA wax/control drawings | LA | | 11/27/2000 |
| HK submission | HK | 4 | 12/25/2000 |
| TRA | HK | 0 | 12/25/2000 |
| final shots | HK | 12 | 3/19/2001 |

## Remark:

1. If Jan TF use all the pre-production parts, the development schedule will be as above
2. For packaging, color copies of preli packaging will be used.  To support the TF, preli packaging needed to be in-house by 12/15/00.
3. For fabric, LA may need to provide if HK could not find the correct color fabric from the open market
4. HK will release the tooling for the doll directly with the wax provided from LA
5. To support 3/1/01 PS, LA needed to send the FINAL FMA ETA HK before 1/4/01

Confidential - Attorney's Eyes Only

MGA HK 0011152



Exhibit 1103
Garcia
10,19 /07  Pgs. 3
J'ana Siegers, CSR 10845

EXHIBIT ___19___

PAGE ___148___

EX 1103-0001

# FASHION PACKS

| Project start | | |
|---|---|---|
| PDP | 10/16/2000 | |
| vendor selected | | |

### INJECTION MOLDED

| LA wax/control drawings | LA | | 12/25/2000 |
|---|---|---|---|
| HK submission | HK | 4 | 1/22/2001 |
| TRA | HK | 0 | 1/22/2001 |
| final shots | HK | 12 | 4/16/2001 |

### SOFTGOODS

| swatches to HK | LA | | 10/30/2000 |
|---|---|---|---|
| 1st swatch submision | HK | 2 | 11/13/2000 |
| fabric approval | LA/HK | 9 | 1/15/2001 |
| FEP ( earlier or same as FEP) | HK | 9 | 3/19/2001 |

| | | | | TARGET | |
|---|---|---|---|---|---|
| fep | | 3/20/2000 | 2/19/2000 | LA submission of final outfit pattern | LA | | 2/19/2001 |
| pp | 2 | 4/3/2000 | 3/4/2000 | HK pattern submission | HK | 4 | 3/19/2001 |
| ps | 4 | 5/1/2000 | 4/1/2000 | | | | |

### PACKAGING

| final appearance | LA | | 1/8/2001 |
|---|---|---|---|
| copy complete/photo model rec'd. | LA | 4 | 2/5/2001 |
| PMA | LA | 4 | 3/5/2001 |

### DECO

| roto skin | HK | | 12/25/2000 |
|---|---|---|---|
| deco master approved | LA | 4 | 1/22/2001 |
| deco approval | HK/LA | 3 | 2/12/2001 |

Confidential - Attorney's Eyes Only

MGA HK 0011153

EXHIBIT ___19___

PAGE ___149___

EX 1103-0002

# HAIR PACK

| Project start | |
|---|---|
| PDF | 10/16/2000 |
| vendor selected | |

### PACKAGING

| | | | |
|---|---|---|---|
| final appearance | LA | | 1/22/2001 |
| copy complete/photo model rec'd. | LA | 4 | 2/19/2001 |
| FMA | LA | 2 | 3/5/2001 |

### ROOTING

| | | | |
|---|---|---|---|
| roto skin avail | HK | | 12/25/2000 |
| LA submission of rooting master/specs | LA | 4 | 1/22/2001 |
| HK submission against rooting master | HK | 8 | 3/19/2001 |
| rooting approval | LA | 0 | 3/19/2001 |

### TARGET

| | | | |
|---|---|---|---|
| fep | | 3/20/2000 | 2/19/2000 |
| pp | 2 | 4/3/2000 | 3/4/2000 |
| ps | 4 | 5/1/2000 | 4/1/2000 |

Confidential - Attorney's Eyes Only

MGA HK 0011154

EXHIBIT 19

PAGE 150

EX 1103-0003

# EXHIBIT 20

ATTACHMENT 3

## Corrections to Mr. Wagner's Apportionment Method Using Barbie Profit Margins
### Calculation of Apportionment Percentages

|   |   | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | Total |
|---|---|---|---|---|---|---|---|---|---|
| A | Barbie EBIT Margin [1] | 32.08% | 35.50% | 34.59% | 28.30% | 24.73% | 24.68% | 22.63% | |
| B | Bratz EBIT Margin [2] | -18.17% | 38.28% | 37.94% | 31.47% | 20.61% | 20.39% | 18.85% | |
| C=A/B | As a Percentage | 100.00% | 92.75% | 91.17% | 89.93% | 100.00% | 100.00% | 100.00% | |
| D | Bratz Net Income (Loss) [2] | $ (4,103,788) | $ 66,971,773 | $182,952,962 | $102,476,148 | $ 63,037,784 | $117,019,050 | $ 71,391,527 | $599,745,456 |
| E=C*D | Normal Returns | $ (4,103,788) | $ 62,115,499 | $166,793,325 | $ 92,161,291 | $ 63,037,784 | $117,019,050 | $ 71,391,527 | 568,414,688 |
| F=D-E | Excess Profitability | $ - | $ 4,856,274 | $ 16,159,637 | $ 10,314,857 | $ - | $ - | $ - | $ 31,330,768 |
| G=F/D | Apportionment Percentage | 0.00% | 7.25% | 8.83% | 10.07% | 0.00% | 0.00% | 0.00% | 5.22% |

Notes:

(1) Source Attachment 2

(2) As calculated by Mr. Wagner. See Tab BL Schedule 1.0 to the Expert Report of Michael Wagner, dated March 17, 2008.

EXHIBIT ___20___

PAGE ___151___

EX 13861-0011