# EXHIBIT 21

1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT

10          CENTRAL DISTRICT OF CALIFORNIA

11              EASTERN DIVISION

| | |
|---|---|
| 12  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13          Plaintiff, | Consolidated with Case No. CV 04-09059 |
| 14      vs. | Case No. CV 05-02727 |
| 15  MATTEL, INC., a Delaware corporation, | **COURT'S FINAL PRE-TRIAL CONFERENCE ORDER FOR PHASE 1 TRIAL** |
| 16          Defendant. | |
| 17 | |
| 18  AND CONSOLIDATED ACTIONS | |

19
20
21
22
23
24
25
26
27
28

07209/2474226.14

EXHIBIT ___21___

PAGE ___152___

1    Following pretrial proceedings, pursuant to Federal Rule of Civil

2 Procedure 16 and Local Rule 16-1 et seq., and in accordance with the Court's

3 Scheduling Order entered February 22, 2007, IT IS ORDERED:

4

5                                  **I.**

6                              **PARTIES**

7    For purposes of this Phase 1 trial, the parties are:

8        (a)    Plaintiff and Counter-Defendant Mattel, Inc. ("Mattel");

9        (b)    Defendant and Counter-Defendant MGA Entertainment, Inc.

10 ("MGA");

11        (c)    Defendant and Counter-Defendant Isaac Larian;

12        (d)    Defendant and Counter-Defendant MGA Entertainment (HK)

13 Limited ("MGA HK").

14    Each of these parties has been served and has appeared.  For purposes

15 of this Phase 1 trial, and the claims and defenses to be tried therein, no party other

16 than those identified above has asserted a claim, been served, or asserted any

17 defense.  Because the Court has bifurcated these consolidated cases, the Court will

18 not at this point dismiss any other party, including any Doe defendants.

19    In addition, as a result of the confidential settlement between Mattel

20 and Carter Bryant, Carter Bryant is no longer a party to this case, although Carter

21 Bryant remains bound by all past Orders of this Court and will be bound by any

22 injunctive, declaratory or other non-monetary relief relating to Bratz that the Court

23 enters in the future against the MGA parties.

24    The pleadings that raise the issues in Phase 1 are:

25        (a)    Complaint filed by Mattel, Inc. (Case No. BC314398) on April

26 27, 2004 in the Superior Court of the State of California for the County of Los

27 Angeles (the "Bryant Case");

28

07209/2474226.14

1                Case No. CV 04-9049 SGL (RNBx)
                 FINAL PRE TRIAL CONFERENCE ORDER

EXHIBIT ___21___

PAGE ___153___

1         (b)    Answer to Plaintiff's Unverified Complaint filed by Carter
2  Bryant on May 14, 2004;

3         (c)    Defendant/Cross-Complainant Carter Bryant's Cross-Complaint
4  for (1) Unfair Competition; (2) Rescission; (3) Declaratory Relief; and (4) Fraud,
5  filed by Bryant on September 8, 2004 in the Superior Court of the State of
6  California for the County of Los Angeles;

7         (d)    Notice to Federal Court of Removal of Civil Action from State
8  Court Pursuant to 28 U.S.C. Section 1332(a)(1) and 1331, filed by defendant Carter
9  Bryant on November 2, 2004. That notice removed the case to federal court on
10  November 2, 2004, where it was assigned Case No. 04-9059;

11         (e)    Stipulation Permitting MGA to Intervene as a Party to This
12  Action and Order, dated December 7, 2004, and MGA's Answer in Intervention;

13         (f)    Complaint filed by MGA Entertainment, Inc. (Case No. CV 05-
14  2727 SGL (RNBx)) on April 13, 2005 in the District Court of the Central District of
15  California (the "MGA Case"), as limited by the Court's Order dated August 25,
16  2005, striking allegations regarding the Brawer litigation;

17         (g)    Second Amended Answer and Counterclaims filed by Mattel,
18  Case No. CV 04-9059 SGL (RNBx) on July 12, 2007 in the District Court of the
19  Central District of California;

20         (h)    Amended Answer and Affirmative Defenses of MGA
21  Entertainment Inc., MGA Entertainment (HK) Limited and MGAE de Mexico
22  S.R.L. de C.V. to Mattel, Inc.'s Second Amended Answer and Counterclaims filed
23  by defendants MGA, MGA HK, and MGA Mexico (collectively, the "MGA
24  Defendants") on September 19, 2007 in the District Court of the Central District of
25  California;

26         (i)    Isaac Larian's Amended Answer and Affirmative Defenses to
27  Mattel, Inc.'s Second Amended Answer and Counterclaims filed by Larian on
28  November 8, 2007 in the District Court of the Central District of California.

EXHIBIT   21

PAGE   154

1    By Order dated June 19, 2006, the Court consolidated the Bryant case
2  and the MGA case with Bryant v. Mattel, Inc., Case No. 04-9049.  The matter shall
3  hereafter be referred to as Mattel, Inc., v. MGA Entertainment, Inc., et al., Case No.
4  04-9049-SGL(RNBx).

5    The MGA Parties may file a motion seeking a determination of good
6  faith settlement pursuant to CCP § 877.6.  To the extent that Mattel continues to list
7  pleadings that address claims asserted by or against Bryant – and fail to exclude
8  them specifically from the list – the MGA Parties object to Mattel's list of pleadings.
9  Mattel's claims against the MGA parties have been modified by the terms of the
10  Court's Orders re the parties' motions for partial summary judgment dated April 25,
11  2008, May 22, 2008, May 27, 2008, and June 2, 2008.

12

13    **II.**

14    **ABANDONED CLAIMS, COUNTERCLAIMS AND DEFENSES**

15    The following claims, counter-claims, or defenses have been dismissed
16  or abandoned:

17    By Order dated July 17, 2006, the Court dismissed Defendant/Cross-
18  Complainant Carter Bryant's Cross-Complaint for (1) Unfair Competition; (2)
19  Rescission; (3) Declaratory Relief; and (4) Fraud; and Bryant's Complaint for
20  Declaratory Relief of Copyright Non-Infringement.  Bryant was given leave to
21  amend his Complaint and Cross-Complaint, but elected not to do so and the
22  dismissal became final.

23    Bryant's Ninth Affirmative Defense: Failure of Contract was withdrawn
24  by Bryant, by stipulation on October 5, 2007;

25    Bryant's Tenth Affirmative Defense: Duress/Unconscionability was
26  withdrawn by Bryant, by stipulation on October 5, 2007;

27    Bryant's Eleventh Affirmative Defense: Alleged Duties Contrary to
28  Law was withdrawn by Bryant, by stipulation on October 5, 2007;

EXHIBIT ___2/___

PAGE ___155___

1       MGA Defendants' Sixteenth Affirmative Defense:  Innocent Intent was
2  withdrawn by MGA Entertainment, Inc., by stipulation on September 5, 2007;

3       Larian's Sixteenth Affirmative Defense:  Innocent Intent was
4  withdrawn by MGA Entertainment, Inc., by stipulation on September 5, 2007;

5       MGA Defendants' Ninth Affirmative Defense:  Res Judicata was
6  withdrawn by MGA Entertainment, Inc., by stipulation on September 5, 2007;

7       Larian's Ninth Affirmative Defense:  Res Judicata was withdrawn by
8  MGA Entertainment, Inc., by stipulation on September 5, 2007;

9       MGA Defendants' Twelfth Affirmative Defense:  Lack of Ownership
10  was withdrawn by MGA Entertainment, Inc., by stipulation on September 5, 2007;

11       Unclean Hands Affirmative Defense was withdrawn with respect to
12  Phase 1 claims by the MGA Defendants by Notice on February 15, 2008;

13       Unclean Hands Affirmative Defense was limited by Carter Bryant as to
14  Phase 1 issues by letter dated February 27, 2008.

15       By Order dated April 25, 2008, the Court granted partial summary
16  judgment in favor of Mattel.  In particular, the Court ruled that the Employee
17  Confidential Information and Inventions Agreement that Carter Bryant entered into
18  as a Mattel designer is a valid and enforceable contract.  It further ruled that, under
19  the Inventions Agreement, Mattel owns "any Bratz-related 'inventions' (including
20  any designs, improvements, ideas, concepts and copyrightable subject matter)" that
21  Carter Bryant "created during the period of his employment with Mattel."  The
22  Court found that it was irrelevant whether Bryant performed such work on Bratz
23  during his own time.

24       In its Order granting Mattel partial summary judgment, the Court
25  further ruled that Carter Bryant owed Mattel a duty of loyalty and that Bryant
26  "breached this duty by entering into a contract with Mattel's competitor, while still
27  employed by Mattel, to produce a line of fashion dolls to be marketed in direct

28

07209/2474226.14

-4-

EXHIBIT _____21_____

PAGE _____156_____

1  competition with Mattel's products."  The Court rejected defendants' claim that such
2  activities were mere "preparations to compete" with Mattel.

3        By virtue of its April 25, 2008, and May 21, 2008, Orders granting
4  Mattel partial summary judgment, the Court ruled that Carter Bryant owed a
5  fiduciary duty to Mattel, but held that there is a triable issue of fact as to Bryant's
6  breach of that duty.

7        Also by Order dated April 25, 2008, the Court granted partial summary
8  judgment in favor of Bryant and the MGA Defendants on Mattel's claims for (1)
9  tortious interference with contractual relations, but only "to the extent that it is based
10  on Mattel's rights to Bratz," such that it remains in the case "as to Mattel's claims for
11  breach of fiduciary duty" (Order at 2); (2) conversion, but only to the extent it is
12  based on conversion of ideas, such that it remains in the case "to the extent it seeks
13  the return of tangible things" (*id.* at 3); (3) common law unfair competition (*id.* at 7);
14  and (4) unjust enrichment (*id.*).

15        By virtue of its Orders dated April 25, 2008, May 22, 2008, and its
16  clarification on May 23, 2008, the Court further ruled that the MGA parties were
17  entitled to partial summary judgment on Mattel's statutory unfair competition
18  claims, except that Mattel's statutory unfair competition claim presented triable
19  issues of fact relating to "whether MGA tortiously interfered with Bryant and
20  Mattel's contractual relationship and whether MGA engaged in commercial
21  bribery."

22        In its orders regarding the statute of limitations affirmative defense,
23  dated May 27, 2008, and June 2, 2008, the Court made rulings regarding the accrual
24  dates of various claims asserted by Mattel. As to defendant MGA only, the Court
25  ruled that Mattel's state-law claims other than tortious interference with contractual
26  relations claim and the conversion claim accrued no earlier than July 18, 2003, and
27  no later than November 23, 2003, but that triable issues of fact precluded a
28  determination as to the exact accrual date.

-5-

EXHIBIT _____21_____

PAGE _____157_____

1        As to defendants Isaac Larian and MGA HK, the Court ruled that these
2   state-law claims arose no earlier than the date of Carter Bryant's deposition,
3   November 4, 2004.

4        In these orders, regarding the tortious interference with contractual
5   relations claim and the conversion claim as to all defendants, the Court ruled that the
6   discovery rule was inapplicable to these claims, and that they were therefore time
7   barred unless Mattel establishes a period of fraudulent concealment of sufficient
8   duration.

9        Additionally, the Court ruled that the copyright claim arose no earlier
10  than November 23, 2003.

11       Finally, the Court ruled that the new claims asserted on November 20,
12  2006, the Court ruled that all claims (except the copyright claim, upon which the
13  Court found it unnecessary to rule) related back to the filing of Mattel's complaint
14  against Carter Bryant in April, 2004.

15       Finally, pursuant to the confidential settlement between Mattel and
16  Carter Bryant and pursuant to the Stipulation entered as part of that settlement, all
17  claims, counterclaims and defenses as between Mattel and Carter Bryant have been
18  dismissed, although Carter Bryant remains bound by all past Orders of this Court
19  and will be bound by any injunctive, declaratory or other non-monetary relief
20  relating to Bratz that the Court enters in the future against the MGA parties.

21
22
23                                   **III.**

                        **JURISDICTION AND VENUE**

24       Federal jurisdiction and venue are invoked upon the following grounds:

25       This Court has diversity jurisdiction over the claims asserted in Mattel

26  v. Bryant pursuant to 28 U.S.C. § 1332, as determined by the Ninth Circuit in Mattel
27
28

EXHIBIT ___21___

PAGE ___158___

1  v. Bryant, Inc., 446 F.3d 1011, 1013 (9th Cir. 2006).  This Court has supplemental

2  jurisdiction over Mattel's state law claims in that case pursuant to 28 U.S.C. § 1367.

3           This Court has federal question jurisdiction over MGA's claims in

4  MGA Entertainment, Inc. v. Mattel, Inc. pursuant to 15 U.S.C. §§ 1116 and §1121,

5  28 U.S.C. §§ 1331, 1338(a), and supplemental subject matter jurisdiction over

6  MGA's state law claims pursuant to 28 U.S.C. § 1367.

7           This Court has federal question jurisdiction over Mattel's counterclaims

8  in MGA Entertainment, Inc. v. Mattel, Inc. pursuant to 28 U.S.C. §§ 1331, 1338(a),

9  17 U.S.C. §§ 101 et seq., and 18 U.S.C. § 1964(c).  This court has supplemental

10  jurisdiction over Mattel's state law counterclaims pursuant to 28 U.S.C. § 1367.

11           Venue in this Court for MGA Entertainment, Inc. v. Mattel, Inc. is

12  alleged to be proper pursuant to 28 U.S.C. §§ 1391(b) - (d), 1391(f) and 1400(a) and

13  18 U.S.C. § 1965.

14                                      **IV.**

15                              **TRIAL ESTIMATE**

16           The parties understand that the Court has directed each side to complete

17  the presentation of evidence in Phase 1, including the examination and cross-

18  examination of witnesses, in 60 hours.  The parties further understand that the 60

19  hours shall not apply to argument, jury selection, opening statements, or closing

20  arguments.

21           Consistent with the express language of the Court's April 7, 2008 Order

22  [Docket No. 2998], the 60-hour limit may be enlarged "if extraordinary

23  circumstances warrant such relief."  Apr. 7, 2008 Order, at 2.

24

25                                       **V.**

26                                **TYPE OF TRIAL**

27           The trial is to be a jury trial, except for issues which are not properly

28  tried to jury.  Pursuant to the Court's Scheduling Order, the parties have already

07209/2474226.14

Case No. CV 04-9049 SGL (RNBx)
FINAL PRE TRIAL CONFERENCE ORDER

EXHIBIT  21

PAGE  159

1  delivered to the Court (a) a set of Joint Proposed Jury Instructions and (b) a set of
2  disputed Jury Instructions, along with reasons supporting and opposing each
3  disputed instruction, and (c) at the Pre-Trial Conference brief proposed voir dire
4  questions for the jury. The parties shall revise and supplement the jury instructions
5  and verdict forms on or before June 6, 2008, in light of the Court's May 22 and May
6  23 Orders relating to the parties' respective motions for partial summary judgment
7  and motions *in limine*, as well as the Court's May 22, 2008 Order on the MGA
8  Parties' motion for reconsideration.

9        The Court intends to rule upon the MGA parties' equitable affirmative
10 defenses at the close of the Phase 1 trial, but will allow evidence as to these defenses
11 to be presented to the jury. The Court may have the jury answer special
12 interrogatories as to certain of these equitable defenses so as to establish the
13 requisite factual findings for the Court to rule upon such defenses.

14

15                          **VI.**

16               **STIPULATED FACTS**

17         1.      The following facts have been stipulated, and shall be deemed
18 established:[1]

19                   **Parties**

20         1.      Mattel, Inc. is a corporation formed under the laws of the State of
21              Delaware with its headquarters in El Segundo, California.

22

23    [1]  The parties to this action do not understand the rules to require the recitation
24 of admissions in the Pre-Trial Conference Order for those admissions to be
25 introduced at trial. Therefore, admissions are not included herein.
     The parties' lists of facts herein are not exhaustive. The parties reserve the right
26 to introduce additional evidence in support of their claims — or in opposition to
27 affirmative defenses — at trial. In addition, the parties intend to introduce expert
evidence not listed below in support of its claims.
28

2. MGA Entertainment, Inc. is a privately held California corporation.

3. MGA Entertainment (HK) Limited, a Hong Kong company, and MGAE de Mexico, S.R.L. de C.V., a Mexico corporation, are wholly owned subsidiaries of MGA Entertainment, Inc.

4. Isaac Larian, an individual, is the CEO and majority shareholder of MGA Entertainment, Inc. and is a resident of California.

**Bryant's Employment at Mattel**

5. Carter Bryant first worked for Mattel in the mainline Barbie group from September 1995 to April 1998.

6. Bryant signed a document titled "Employee Confidential Information and Inventions Agreement," dated November 6, 1995.

7. Bryant signed a document titled "Conflict of Interest Questionnaire," dated November 6, 1995.

8. Bryant left California in December 1997 and moved to Missouri to live with his parents, where he continued to do work for Mattel until April 1998.

9. In late December 1998, Mattel offered Bryant a position in the Barbie Collectibles group.

10. Bryant accepted Mattel's offer, moved back to California, and started work at Mattel on January 4, 1999.

11. Bryant signed a document titled "Employee Confidential Information and Inventions Agreement" dated January 4, 1999.

12. Bryant signed a document titled "Conflict of Interest Questionnaire," incorrectly dated January 4, 1998, instead of 1999.

-9-

EXHIBIT 21

PAGE 161

1         13.    Before Bryant left Mattel, he was asked to and did participate in

2                 an exit interview.

3         14.    During his exit interview, Bryant signed a document titled

4                 "Proprietary Information Checkout," dated October 19, 2000.

5         15.    Carter Bryant, an individual, is a resident of Missouri.

6

7                             **VII.**

8                        **CLAIMS**

9

10      **A.**    **MATTEL INC.'S CLAIMS AND COUNTERCLAIMS**

11          Except to the extent already adjudicated in its favor by the Court's

12 Orders re Summary Judgment, and pursuant to the Court's July 5, 2007 Phasing

13 Order, Mattel, Inc. plans to pursue the following claims and counterclaims against

14 the defendants in Phase 1 trial as indicated[2]:

15

16

17

18

19

20

21

22

23    [2]  Mattel has claims for misappropriation of trade secrets that are being reserved
for Phase II of this litigation.  To the extent defendants seek to raise the issue of

24 trade secrets during Phase I, either as a claim or as an affirmative defense, Mattel

25 reserves its right to argue its misappropriation of trade secrets claim in Phase I.
The MGA parties note that the Court gave specific guidance on this issue and

26 expressly limited the type of evidence that Mattel may introduce that falls outside of

27 the scope of Phase I of the trial in ruling on the MGA parties' motion *in limine*
number 6.

28

    Case No. CV 04-9049 SGL (RNBx)
FINAL PRE TRIAL CONFERENCE ORDER

EXHIBIT _____ 21

PAGE _____ 162

1              **Claim 1:  Intentional Interference with Contract (Against Larian**
2  **and MGA).**

3              **Claim 2:  Aiding and Abetting Breach of Fiduciary Duty (Against**
4  **Larian and MGA).**

5              **Claim 3:  Aiding and Abetting Breach of Duty of Loyalty (Against**
6  **Larian and MGA).**

7              **Claim 4:  Conversion (Against MGA, MGA HK and Larian).**

8              **Claim 5:  Statutory Unfair Competition (Against Larian, MGA,**
9  **and MGA HK).**

10              **Claim 6:  Declaratory Relief (Against Larian, MGA, and MGA**
11  **HK) (ownership of original Bratz works and associated copyrights allegedly**
12  **created by Bryant while employed by Mattel)**

13              **Claim 7: Copyright Infringement (Against Larian, MGA, and**
14  **MGA HK)**

15         The parties stipulated, and the Court agreed, that contentions of law and
16  fact, were not necessary and would not be productive, in light of the parties'
17  exhaustive briefing of the same issues in their cross-motions for partial summary
18  judgment and the fact that the Court has not yet ruled on certain of those cross-
19  motions.

20

21                                          **VIII.**

22                  **DEFENDANTS' AFFIRMATIVE DEFENSES**

23         Relevant to Phase 1 of the Trial, Defendants assert the following
24  affirmative defenses:

25         Affirmative Defense 3:  Laches

26         Affirmative Defense 4:  Statute of Limitations

27         Affirmative Defense 5 and 6:  205(d)/Bona Fide Purchaser for Value

28         Affirmative Defense 9:  Estoppel

-11-

Case No. CV 04-9049 SGL (RNBx)
FINAL PRE TRIAL CONFERENCE ORDER

EXHIBIT _____21_____

PAGE _____163_____

1    Affirmative Defense 10: Acquiescence

2    Affirmative Defense 11: Mitigation

3    Affirmative Defense 13: Waiver

4    Affirmative Defense 14: Abandonment

5    Affirmative Defense 15: *De Minimus* Use

6    Affirmative Defense 17: Privilege/Justification

7    Affirmative Defense 18: Good Faith

8    Affirmative Defense 21: Consent

9    **MGA PARTIES' AFFIRMATIVE DEFENSE TO COPYRIGHT DAMAGES**

10   MGA, MGA (HK), and/or Larian must prove:

11       1.    Expenses deductible from gross revenues causally connected to the

12             alleged infringement;

13       2.    Elements of defendants' profit attributable to factors other than the

14             copyrighted work.

15

16                                     **IX.**

17                                 **DISCOVERY**

18       Phase 1 Discovery is not complete, but will be within two weeks.

19   Counsel have waived any prejudice from commencing trial without completing

20   discovery. Phase 2 discovery has been stayed. Many Phase 1 discovery motions

21   remain to be heard. The parties are working to complete them as expeditiously as

22   possible.

23

24                                     **X.**

25                                 **EXHIBITS**

26       All disclosures under F.R.Civ. P. 26(a)(3) have been made. The joint

27   exhibit list of the parties has been filed.

28

EXHIBIT _____ 21

PAGE _____ 164

## XI.

## WITNESSES

All disclosures under F.R.Civ.P. 26(a)(3) have been made.  Witness lists of the parties have been filed with the Court pursuant to the schedule approved by the Court.  Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7.  For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1:  William Ackerman (Art Attacks), Bryant Joseph Armstrong, Nana Ashong, Schuyler Bacon, Ronald Brawer, Kerry Brode, Charnayne Brooks, Carter Bryant, Carter Bryant (Art Attacks), Carter Bryant (Gunther-Wahl), Janet Bryant, Thomas Bryant, Ana Cabrera, Mei Wah (Sarah) Chui, Elise Cloonan, Nick Contreras, Daniel Cooney, Wendy Feinberg, Jeanne Galvano, Paula Garcia, Paula Garcia (Art Attacks), Brooke Gilbert, Kami Gillmour, Daphne Gronich, Sarah Halpern, Esther Han, Rachel Harris, Rebecca Harris (Art Attacks), Amy Hyland, Richard Irmen, Mitchell Kamarck, Samir Khare, Andreas Koch, Susana Kuemmerle, Robert Kullman, Farhad Larian, Isaac Larian, Isaac Larian (Art Attacks), Isaac Larian (Larian v. Larian), Isaac Larian (Ubisoft), Margaret Leahy, Edmond Lee, Steven Linker, Kenneth Lockhart, Jennifer Lynn Maurus (Larian v. Larian), Albert Lyter, David Malacrida, Peter Marlow, Veronica Marlow, Karl Meyer, Beatriz Morales, Amy Myers, Joyce Ng, Victoria O'Connor, Sarah D. Odom, Denise O'Neal, Jacqueline Prince, Jessie Ramirez, Anna Rhee, David Rosenbaum, Lon Ross (Fun4All), Maria Salazar, Shirin Salemnia, Joe Tiongco, Maureen Tkacik, Lisa Tonnu, Anne Wang, Jeffrey Neil Weiss, Spencer Woodman, Mel Woods, and MGA's 30(b)(6) witness regarding Larian v. Larian.

Additional depositions to be lodged: Ronald Brawer, Richard DeAnda, Ann Driskill, Robert Eckert, Kevin Farr, Lissa Freed, Jeanne Galvano, Hoi Hoffman-Briggs, Brian Hooks, Julia Jensen, Alan Kaye, Fred Kawashima, Tim Kilpin, Liliana Martinez, Heather McComb, Ginger McRae, Nicholas Mirzoeff,

EXHIBIT _____ 21

PAGE _____ 165

1 | Teresa Newcomb, Jill Nordquist, Ralph Oman, Rodney Palmer, Joni Pratte,
2 | Jacqueline Prince, Kathleen Simpson-Taylor, Maureen Tafoya, and Sandra
3 | Yonemoto.

4 |     Furthermore, certain depositions have been recently taken or remain to
5 | be taken.  The parties will advise the Court of such transcripts to be lodged as they
6 | become available and relevant.

7 |     Pursuant to ¶ 97 of the Court's Scheduling Order, the parties identify
8 | the following expert witnesses to be called:

9 |     Mattel:  Valery Aginsky, John Alex, Lloyd Cunningham, William
10 | Flynn, Frank Keiser, Lee Loetz, Mark Menz, Nicholas Mirzoeff, Ralph Oman,
11 | Walter Rantanen, Carol Scott, Bryce Stein, Michael Wagner, Robert Lind, Angel
12 | Gomez, Heather McComb, Ginger McRae, Denise Van Patten, and Kenneth
13 | Hollander.

14 |     Defendants:  Mary Bergstein, D. Jan Duffy, Thomas S. Gruca, Erich
15 | Joachimstaler, Robert D. Kullman, Albert H. Lyter, Peter Menell, Paul Meyer,
16 | Debora Middleton, Robert Tonner, Glenn Vilppu, Douglas Kidder, and Gary Funck.

17 |     The following law and motion matters and motions in limine have been
18 | decided:

19 |     Mattel has filed the following motions *in limine*:

20 |     1.    MIL No. 1 to exclude: (1) evidence or argument that Bryant's
21 | invention assignment agreements are unfair or unconscionable; (2) evidence of other
22 | versions of Mattel's inventions agreements; and (3) expert testimony of D. Jan
23 | Duffy;

24 |     Granted.

25 |     2.    MIL No. 2 to exclude evidence, argument or reference to
26 | Mattel's alleged motive in filing suit or re consequences thereof ;

27 |     Denied as written.  Will allow late evidence with proper foundation.
28 | Consequences of lawsuit to MGA may not be admitted.

1         3.    MIL No. 3 to exclude Phase 1(B) evidence in the Phase 1(A)

2  trial and Phase 2 evidence in the Phase 1 trials or, in the alternative, to permit

3  expedited Phase 2 discovery;

4             Granted insofar as apportionment and responsive evidence is limited to

5             1B; deferred on rest.

6         4.    MIL No. 4 to preclude introduction to jury of evidence and

7  testimony relating to equitable defenses to be tried by court ;

8             Denied.

9         5.    MIL No. 5 to exclude evidence of or argument concerning other

10  lawsuits and other purported bad acts and dismissed defenses;

11             Granted as to Nos. 1-4 and 10; Denied without prejudice to specific

12             objections as to Nos. 5-9.

13         6.    MIL No. 6 to exclude evidence or argument concerning actions

14  taken by or against Mattel employees other than Carter Bryant;

15             Granted in part and denied in part; Evidence is admissible only if such

16             other employees are analogous to Bryant.

17         7.    MIL No. 7 to preclude the MGA Defendants from asserting or

18  relying on an advice of counsel defense;

19             Granted.  However, the MGA Parties can introduce Rosenbaum's

20             testimony relaying his factual conversations not as reliance on any legal

21             advice he gave but as to the fact that he undertook certain actions and had

22             certain conversations, provided otherwise admissible.

23         8.    MIL No. 8 to exclude evidence relating to whether Mattel would

24  have marketed Bratz;

25             Granted as to 1A; Deferred as to 1B.

26         9.    MIL No. 9 to exclude argument, evidence, or expert testimony

27  regarding Barbie and other Mattel dolls;

28             Daubert hearing to be held one day prior to testifying.

EXHIBIT _____21_____

PAGE _____167_____

1      10.    MIL No. 10 to exclude testimony by Glenn V. Vilppu;

2           Daubert hearing to be held one day prior to testifying.

3      11.    MIL No. 11 to preclude Defendants from offering improperly

4   disclosed evidence;

5           Granted as to test project. Deferred on apportionment issues otherwise

6           denied.

7      12.    MIL No. 12 to exclude the testimony of Peter S. Menell;

8           Daubert hearing to be held one day prior to testifying.

9      13.    MIL No. 13 to exclude expert testimony of Mary Bergstein,

10   Robert Tonner, and Debora Middleton;

11           Daubert hearing to be held one day prior to testifying.

12      14.    MIL No. 14 to exclude evidence and argument related to certain

13   discovery matters;

14           Granted.

15      15.    MIL No. 15 for a preclusion order regarding MGA's disqualified

16   expert Christina Tomiyama.

17           Taken under submission. Deferred ruling until Phase 1(b).

18           Defendants filed the following motions in limine:

19      1.    MGA Parties' Notice of Motion and Motion in Limine Number 1

20   to  Exclude All Evidence Relating to Litigation or Other Proceedings Between Isaac

21   and Farhad Larian;

22           Denied.

23      2.    MGA Parties' Notice of Motion and Motion in Limine Number 2

24   to  Exclude All Evidence Relating to Isaac Larian's Wealth and Assets;

25           Granted in part, denied in part. General evidence regarding Mr. Larian's

26   wealth is inadmissible. Any gain to Larian from Bratz may be introduced only in Phase

27   1b. In Phase 1a, Mattel only may submit evidence of what Larian stood to gain **at the**

28   **time** of any alleged breach, not subsequent gain.

EXHIBIT ___21___

PAGE ___168___

Case 2:04-cv-09049-SGL-RNB   Document 3917   Filed 06/04/2008   Page 18 of 20

1        3.      MGA Parties' Notice of Motion and Motion in Limine Number 3
2   to Exclude Reference to and Use of Evidence of Other Legal Proceedings;

3        Granted insofar as findings of foreign courts are excluded unless they
4   are the only evidence of MGA's prior positions.

5        4.      MGA Parties' Notice of Motion and Motion in Limine Number 4
6   to Exclude Reference to and Use of MGA's Employment Agreements With its
7   Employees;

8        Denied.

9        5.      MGA Parties' Notice of Motion and Motion in Limine Number 5
10   to Exclude References to Prior Legal Representation;

11       Granted.

12       6.      MGA Parties' Notice of Motion and Motion in Limine Number 6
13   to Exclude Reference to and Use of Phase Two Evidence;

14       Denied as to Nos. 1, 2, and 5. Based on stipulation of counsel, moot as
15   to Nos. 4 and 6. Granted as to No. 3 in 1A but door may be opened in 1B.

16       7.      MGA Parties' Notice of Motion and Motion in Limine Number 7
17   to Exclude All References to and Use of Certain "Expert" Testimony Proffered by
18   Mattel Witness Michael J. Wagner;

19       Daubert hearing to be held one day prior to testifying.

20       8.      MGA Parties' Notice of Motion and Motion in Limine Number 8
21   to Strike Expert Rebuttal Report of Kenneth Hollander and Sections of Expert
22   Rebuttal Reports of Heather McComb, Denise Van Patten, and Nicholas Mirzoeff;

23       Daubert hearing to be held one day prior to testifying.

24       9.      MGA Parties' Notice of Motion and Motion in Limine Number 9
25   to Strike the Expert Report and Testimony of Ralph Oman and John Alex;

26       Daubert hearing to be held one day prior to testifying.

27

28

Case No. CV 04-9049 SGL (RNBx)
FINAL PRE TRIAL CONFERENCE ORDER

EXHIBIT _____21_____

PAGE _____169_____

1   10. MGA Parties' Notice of Motion and Motion in Limine Number

2 10 to Exclude All References to and Use of Certain "Expert" Testimony Proffered

3 by Mattel Witness Carol A. Scott;

4   Daubert hearing to be held one day prior to testifying.

5   11. MGA Parties' Notice of Motion and Motion in Limine Number

6 11 to Strike the Expert Rebuttal Report of Robert C. Lind;

7   Daubert hearing to be held one day prior to testifying.

8   12. MGA Parties' Notice of Motion and Motion in Limine Number

9 12 to Strike Portion of the Expert Report of Lee Loetz;

10   Daubert hearing to be held one day prior to testifying.

11   13. Motion in Limine Number 13: To exclude evidence and

12 argument regarding alleged spoliation by Bryant;

13   Hearing to be held one day prior to Bryant testifying; hearing to include

14 Bryant and experts; excluded from opening statement.

15   14. Motion in Limine Number 14: To exclude evidence and

16 argument regarding Bryant's alleged "borrowing" of ideas or concepts from

17 preexisting Mattel projects, including Toon Teens, Diva Starz, the "Swan" line, and

18 Skipper.

19   Denied.

20   The Court ruled upon or otherwise addressed the remaining motions

21 during recent hearings.

22   Bifurcation of the claims and counterclaims was ordered pursuant to

23 the Court's Order of July 2, 2007. The claims and counterclaims to be tried in Phase

24 1 trial are set forth herein. The claims remaining for trial in Phase 2 are set forth on

25 pages 8-9 in Mattel's Memorandum of Trial Structure, filed June 20, 2007, as

26 adopted in the July 2, 2007 Order. At the hearing on May 22, 2008, the Court

27 provided guidance to the parties as to the issues that may be tried as part of Phase 1a

28 versus Phase 1b.

EXHIBIT 21

PAGE 170

1       The foregoing admissions having been made by the parties, and the

2 parties having specified the foregoing issues of fact and law remaining to be

3 litigated, this Pretrial Conference Order shall supersede the pleadings as they relate

4 to claims or defenses to be tried in Phase 1 and govern the course of the trial of the

5 Phase 1 claims and defense, unless modified to prevent manifest injustice.

6 DATED: June 04, 2008

7

8

9 Approved as to form by:

10 QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

11

12   By /s/ John B. Quinn

13      John B. Quinn, Esq.
     Attorneys for Mattel, Inc.

14

15 SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

16

17

18   By /s/ Thomas J. Nolan, Esq.
     Thomas J. Nolan, Esq.

19      Attorneys for MGA Entertainment, Inc.

20

21

22

23

24

25

26

27

28

07209/2474226.14

-19-

Case No. CV 04-9049 SGL (RNBx)
FINAL PRE TRIAL CONFERENCE ORDER

EXHIBIT 21
PAGE 171

# EXHIBIT 22

From: Peter Marlow
Sent: Monday, August 01, 2005 12:31 PM
To: 'cbe1068@sbcglobal.net'
Subject: FW: Veronica Marlow

-----Original Message-----
From: Peter Marlow [mailto:pmarlow@socal.rr.com]
Sent: Monday, June 20, 2005 3:14 PM
To: Paula Garcia
Cc: Isaac Larian (ilarian@mgae.com); 'Isaac Larian (President / CEO)'; 'mwoods@mgae.com';
'CBE1068@cs.com'
Subject: Veronica Marlow

Hi Paula,

I have prepared the following table to show how Veronica's costs to you this year are in line with
previous years. Also, you will see that the cost per doll is quite reasonable and is not increasing.
(Please let me know if your e-mail formatting makes this table difficult to read.)

2002

2003

2004

2005

2005 (note 1)

total payments (note 2)

318,731

545,077

238,274

181,562

215,452

sales tax charged

0

0

1,865

5,823

8,199

net

CONFIDENTIAL ATTORNEYS' EYES ONLY

KMW-MARLOW 002915

EXHIBIT ___22___

PAGE ___172___

EX 13223-0001

318,731

545,077

236,409

175,739

207,253

dolls (note 3)

100

159

77

101

147

cost per doll

3,187

3,428

3,070

1,740

1,410

Notes:

1) Data in this last column of 2005 shows dolls quoted, not yet invoiced.

2) Shows payments received from MGA during the calendar year. Payments do not include Sugar Planets royalty payments.

3) Includes all Bratz, Boyz, Babyz, Lil' Bratz and Lipstixx. Some dolls may have outfits with many more pieces than others, even 2 or 3 sets of outfits per doll. This item indicates a count of dolls, not outfits. Each duplicate sample is also counted as one doll.

Due to a delay in my bookkeeping, 49 of the 101 dolls that appear as being made in 2005 (first column of 2005) were actually delivered in 2004 but not invoiced or paid for until 2005. This type of discrepancy exists to a much smaller degree (5 or 10 dolls) between other years.

Cost per doll was higher in 2003 due to overtime expenses. Average cost per doll has gone down in 2005 due to an increase of duplicates and Babyz in the mix. (Duplicates cost less to make than the first preliminary design sample because they do not require research, shopping, pattern making, spec sheets, etc.) If you would like, we may break this table down further to show cost per outfit as well as create separate tables for Babyz and duplicates.

Veronica has seriously considered your very generous offer of employment with MGA and regrets that she cannot accept it. This is her concern:

If Veronica goes to work for MGA, she will no longer be able to work with her team of pattern and sample makers. They have secure day jobs with an outlook of many more years of stability that they

CONFIDENTIAL ATTORNEYS' EYES ONLY

KMW-MARLOW 002916

EXHIBIT __22__

PAGE __173__

EX 13223-0002

are unwilling to leave. They only moonlight for Veronica. About 6 months ago we offered each of them full-time employment at double their present salaries with a very generous benefits package but they all refused.

These are older ladies, comfortable with the way things are and they don't want to change. We pay them very generously because they are risking their day jobs - even a nice retirement - to work for us. If they were ever discovered they'd certainly be painfully humiliated and fired. Yet they have told Veronica several times that they don't work for her for the money.

Veronica never shows them any impatience. She never intimidates, threatens or pressures them. They have nothing to fear. Veronica sits and works with them, always by their sides with tools in her hands. She's one of them. She's their friend. There's never any bickering or gossip.

Veronica invented giving them yearly bonuses. Not because they asked for it, but because she loves them. So we give them an extra $3,000 to $5,000 a year each. They cried upon getting their first bonus checks realizing that after all these years they have finally found someone to work for that treats them right. I don't think they are motivated by the amount of money we give them. I think it just helps them understand how much we love them, value them and enjoy them. The money is a sure way of showing it.

These women have fun together. They eat and sit around a big TV watching Spanish soap operas while they work. As Veronica leaves for work in the evening I sometimes ask her if she can't stay home that night. She'll usually tell me she needs to go. She doesn't "need" to go so she can supervise or crack a whip. She needs to go because they want her there. They need her.

So, how do they get any work done like this? Maybe it's just that they are so talented. They have more than 100 years total of doll making experience between them. They are extremely fast and accurate. Despite the TV and the laughter, they work at a very intense pace. More importantly, though, they just love what they do. They are having fun. And what Veronica does through her love for these women, perhaps without even realizing it, is create a work environment where that fun never goes away. It's as close as you can get to a Santa's workshop.

When it's over they'll be fine. They aren't going to start looking for jobs when Veronica has to call it quits. They have jobs. Working for Veronica is their fun. They do this for her.

With Veronica at MGA, Mel and Isaac would be expecting the same productivity and quality they get from her now. But that just won't happen. The dolls won't be as nice, deadlines will be missed and sales will go down.

In the short term, MGA might be able to save a few thousand dollars by shaking up this delicate but very successful arrangement. But it will cause frustrations and aggravations down the line that Veronica will not want to put up with for any amount of money, especially if there will be more meetings like the last one. If MGA is willing to destroy Bratz over a few thousand dollars, then something very wrong is going on. Veronica will not want to be a part of it.

Best regards,

Peter

CONFIDENTIAL ATTORNEYS' EYES ONLY

KMW-MARLOW 002917

EXHIBIT __22__

PAGE __174__

EX 13223-0003

# EXHIBIT 23

1 │ QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   │   John B. Quinn (Bar No. 090378)
2 │   johnquinn@quinnemanuel.com
   │   Michael T. Zeller (Bar No. 196417)
3 │   (michaelzeller@quinnemanuel.com)
   │   Jon D. Corey (Bar No. 185066)
4 │   (joncorey@quinnemanuel.com)
   │   Timothy L. Alger (Bar No. 160303)
5 │   (timalger@quinnemanuel.com)
   │ 865 South Figueroa Street, 10th Floor
6 │ Los Angeles, California  90017-2543
   │ Telephone:  (213) 443-3000
7 │ Facsimile:   (213) 443-3100

8 │ Attorneys for Mattel, Inc. and Richard De Anda
9 │

10 │           UNITED STATES DISTRICT COURT

11 │          CENTRAL DISTRICT OF CALIFORNIA

12 │                EASTERN DIVISION

| 13 CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|
| 14      Plaintiff, | Consolidated with |
| 15      vs. | Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 16 MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| 17      Defendant. | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order of December 6, 2006]** |
| 18 | |
| 19 AND CONSOLIDATED ACTIONS | |
| 20 | DECLARATION OF RICHARD DE ANDA IN SUPPORT OF MATTEL, INC.'S OPPOSITION TO MGA'S MOTION TO OVERRULE MATTEL'S AND RICHARD DE ANDA'S OBJECTIONS TO SUBPOENA AND TO COMPEL DISCOVERY |
| 21 | |
| 22 | |
| 23 **CONFIDENTIAL:** **FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER** | |
| 24 | Date:   TBA<br>Time:   TBA<br>Place:  TBA |
| 25 | |
| 26 | **Phase I** |
| 27 | Discovery Cut-off:  January 28, 2008<br>Pre-trial Conference:  May 5, 2008<br>Trial Date: May 27, 2008 |
| 28 | |

07209/2376581.1

2-7-08

DE ANDA DECLARATION ISO MATTEL'S OPPOSITION TO MGA'S MOTION TO OVERRULE OBJECTIONS TO DE ANDA SUBPOENA

EXHIBIT 23

PAGE 175

## DECLARATION OF RICHARD DE ANDA

I, Richard de Anda, declare as follows:

1. I am currently Vice President of Global Security at Mattel, Inc. ("Mattel"). I make this declaration in support of Mattel's Opposition to MGA's Motion to Overrule Mattel's and Richard De Anda's Objections to Subpoena and to Compel Discovery. I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2. I am a licensed private investigator. A true and correct copy of my current license is attached as Exhibit A. At my deposition I could not recall whether in addition to verbal authorization to provide outside investigative, consulting and expert witness services while a Mattel employee, I also had written authorization to do so. I did. Attached as Exhibit B is a true and correct copy of a letter from Josie Williams, Mattel HR representative, to me, confirming my acceptance of an offer of employment from Mattel. That letter contains handwritten authorization by Alan Kaye, Mattel's Senior Vice President in charge of Human Resources that allows me to remain eligible to "consult" and act as an "expert witness" while a Mattel employee.

3. I am informed that MGA Entertainment, Inc. ("MGA") seeks documents related to any investigation that I may have done either personally or through Richard N. De Anda Associates.

4. While I and those who report to me at Mattel have conducted investigations regarding Carter Bryant and MGA, I have conducted no investigation related to MGA, Bryant or Bratz other than in my capacity as a Vice-President of Mattel.

5. I am the only person who prepares and maintains my personal files and the files of Richard N. De Anda Associates, both located at my house. These constitute less than six inches of documentation. I am aware of the contents of

EXHIBIT __23__

PAGE __176__

1  those files.  Those files contain no documents relating to any investigation of MGA,
2  Isaac Larian or Carter Bryant.

3          6.       Since joining Mattel in 1997, in my capacity as principal of
4  Richard N. De Anda Associates, I have done only a handful of cases.  I have been
5  retained as a consulting or testifying expert.  My documents include communications
6  between me and the attorneys who retained me and reflect my and their mental
7  impressions.  The subject matter of those engagements have been unrelated to Mattel.
8  During those engagements, I obtained private or confidential information related to
9  my clients or to the people or companies that I investigated, including information
10  related to sexual assaults (including sexual assaults on minors and other criminal
11  misconduct).  The only non-litigation investigations that I recall handling since
12  joining Mattel were for a pre-existing client, Jacmar Company, a food service firm, as
13  I explained in my deposition.

14          I declare under penalty of perjury under the laws of the United States of
15  America that the foregoing is true and correct.

16          Executed on February 7, 2008, at El Segundo, California.

18          _____
19          Richard de Anda

07209/2376581.1

-2-
DE ANDA DECLARATION ISO MATTEL'S OPPOSITION TO MGA'S MOTION TO OVERRULE OBJECTIONS
TO DE ANDA SUBPOENA

EXHIBIT ___23___

PAGE ___177___

# EXHIBIT A

EXHIBIT 23

PAGE 178

BUREAU OF SECURITY & INVESTIGATIVE SERVICES
P.O. BOX 989001
WEST SACRAMENTO, CA 95798-9002;
(916) 322-4000
Private Investigator

QUAL MGR/OWNER OF
RICHARD N DEANDA INVESTIGATIONS
RICHARD NATHAN DEANDA
1312 LYNNMERE DRIVE
THOUSAND OAKS CA 91360

License No: PI  15885          Expiration: 10/31/08

Signature
PPIPIA 06/31/08                                    RECEIPT NO.
                                                   00937108

M 0257828

EXHIBIT  23
PAGE  179

# EXHIBIT

# B

EXHIBIT __23__

PAGE __180__



**Mattel, Inc.**

333 Continental Boulevard
El Segundo, California 90245-5012
Phone: (310) 252-2000
Telex:   188155 or 188170

10-21-97

Mr. Richard N. de Anda
1312 Lynnmere Drive
Thousand Oaks, CA 91360

Congratulations and welcome to Mattel!

We are pleased to confirm your acceptance of our offer for the position of Director
Security and outline various benefits that are available to you as a member of the
Mattel team.

### Compensation

Your annual base salary will be $126,516 per year payable on a bi-weekly basis at
$4,866.

You will be eligible to participate in the 1998 Management Incentive Plan.  Under
this Plan, you will have the opportunity to earn an annual bonus based on both
the performance of the Company and your own individual performance.  You will
be eligible to receive a payment of up to a maximum of 50% of your earned salary
during the year, with a target of 33%.  Any such payments will be made during the
first quarter of the following year.

A signing bonus in the gross amount of  $10,000 with applicable federal and state
taxes deducted, will be paid to you no later than 30 days following
commencement of your employment.  If you choose to voluntarily terminate your
employment with Mattel within one year of your date of hire, you will be required
to repay this amount in full.

### Benefits

*The following is a brief outline of Company benefits in which you will be eligible to
participate, effective with your date of hire. Specific details and plan limitations are
provided in Summary Plan Descriptions and Plan Documents, and are subject to
periodic modification and revision.*

You and your qualified dependents will be eligible for coverage under our health
insurance programs, which provide medical, dental, vision and prescription drug
benefits.  The Company provides: life insurance and accidental death and
dismemberment insurance equal to one-and-one-half times your base annual
salary; business travel accident coverage in the amount of $1,000,000; and

**CONFIDENTIAL**

EXHIBIT __23__

PAGE __181__

M 0262667

income protection benefits through the Mattel short- and long-term disability programs.

You will be enrolled in the Mattel Personal Investment Plan (PIP), which is a 401(k) savings/retirement benefit. PIP includes automatic Company contributions to your account, from 3% to 8% of salary based on your age. You may also make voluntary contributions to the plan which will be matched dollar-for-dollar by the Company, up to 2% of your annual salary. Any additional contributions will be matched 50% up to the next 4% you contribute.

Of course, this offer is contingent upon satisfactory verification of all information as to previous employers and academic institutions attended, eligibility to work in the United States, and the signing of an employee Confidential Information and Inventions Agreement. Further, you understand that the terms of this letter do not imply employment for a specific period and thus your employment is at will; either you or the Company can terminate it at any time, with or without cause. This statement is the entirety of your agreement with the Company on the subject of the duration of your employment.

Enclosed is a packet containing various information and forms required to activate your employment. Please complete these forms and bring them with you on your first day of employment. Also, you will need to bring with you certain documents as set forth in the enclosed directions. Upon your arrival in the second floor lobby, please advise the security officer that you are a new employee. You will be escorted to an orientation session beginning at 8:00 a.m., which will last most of the morning.

Richard, we are all looking forward to you joining the Mattel team on November 3, 1997. As a new member of the Mattel family, please feel free to call me at (310) 252-2923 if you have any questions.

Sincerely,

Josie Williams
HR Consultant
MATTEL, INC.

Enclosure

2

CONFIDENTIAL

EXHIBIT 23

PAGE 182

M 0262668

# EXHIBIT 24

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 25

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  | John B. Quinn (Bar No. 090378)
2 | johnquinn@quinnemanuel.com
  | Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
  | Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
  | Timothy L. Alger (Bar No. 160303)
5 | (timalger@quinnemanuel.com)
  | 865 South Figueroa Street, 10th Floor
6 | Los Angeles, California 90017-2543
  | Telephone: (213) 443-3000
7 | Facsimile: (213) 443-3100

8 | Attorneys for Plaintiff Mattel, Inc.

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case Nos. CV 04-9059 and CV 05-2727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | MATTEL, INC.'S SUPPLEMENTAL INTERROGATORY REGARDING DEFENDANTS' AFFIRMATIVE DEFENSES |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |

PROPOUNDING PARTY:       Mattel, Inc.

RESPONDING PARTIES:       MGA Entertainment, Inc., Isaac Larian, Carter Bryant, MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V., and Carlos Gustavo Machado Gomez

SET NO.:       SUPPLEMENTAL

12-3

MATTEL'S SUPPLEMENTAL INTERROGATORY RE DEFENDANTS' AFFIRMATIVE DEFENSES

EXHIBIT 25

PAGE 199

1　　　　　Pursuant to <u>Federal Rule of Civil Procedure</u> 33, plaintiff Mattel, Inc.

2　("Mattel") hereby requests that MGA Entertainment, Inc., Isaac Larian, Carter

3　Bryant, MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V., and

4　Carlos Gustavo Machado Gomez (collectively, "the Responding Parties")

5　individually answer the following Interrogatory separately and fully, in writing and

6　under oath, within 30 days after service hereof.  The Responding Parties shall be

7　obligated to supplement their responses to the Interrogatories at such times and to

8　the extent required by the <u>Federal Rules of Civil Procedure</u>.

9

10　　　　　　　　　　　　**Definitions**

11　　　　1.　　"YOU" and "YOUR" mean each of the Responding Parties.

12　　　　2.　　"PERSON" or "PERSONS" means all natural persons,

13　partnerships, corporations, joint ventures and any kind of business, legal or public

14　entity or organization, as well as its, his or her agents, representatives, employees,

15　officers and directors and any one else acting on its, his or her behalf, pursuant to

16　its, his or her authority or subject to its, his or her control.

17　　　　3.　　"DOCUMENT" or "DOCUMENTS" means all "writings" and

18　"recordings" as those terms are defined in <u>Rule</u> 34 of the <u>Federal Rules of Civil</u>

19　<u>Procedure</u> and <u>Rule</u> 1001 of the <u>Federal Rules of Evidence</u>, including, but not

20　limited to, all writings and records of every type and description including, but not

21　limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles,

22　electronic mail ("e-mail"), COMMUNICATIONS, records of telephone

23　conversations, handwritten and typewritten notes of any kind, statements, reports,

24　minutes, recordings, transcripts and summaries of meetings, voice recordings,

25　pictures, photographs, drawings, computer cards, tapes, discs, printouts and records

26　of all types, studies, instruction manuals, policy manuals and statements, books,

27　pamphlets, invoices, canceled checks and every other device or medium by which or

28　through which information of any type is transmitted, recorded or preserved.

-2-

MATTEL'S SUPPLEMENTAL INTERROGATORY RE DEFENDANTS' AFFIRMATIVE DEFENSES

EXHIBIT ___ 25

PAGE ___ 200

1  Without any limitation on the foregoing, the term "DOCUMENT" shall include all
2  copies that differ in any respect from the original or other versions of the
3  DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or
4  originals containing initials, comments, notations, insertions, corrections, marginal
5  notes, amendments or any other variation of any kind.

6      4.     "COMMUNICATION" or "COMMUNICATIONS" means and
7  includes any disclosure, transfer or exchange of information between two or more
8  PERSONS, whether orally or in writing, including without limitation, any
9  conversation or discussion by means of meeting, letter, telephone, note,
10  memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or
11  other medium, including without limitation in written, audio or video form.

12      5.     "REFER OR RELATE TO" a given subject matter means relate
13  to, refer to, constitute, contain, embody, depict, incorporate, reflect, evidence,
14  identify, state, deal with, comment on, respond to, describe, analyze, support, refute,
15  contradict, or in any way pertain to that subject matter, either directly or indirectly.

16      6.     "IDENTIFY" or "IDENTITY" means the following:

17          (a)    with reference to an individual or individuals, means to
18  state, fully and separately as to each, such individual's full name, any known
19  business title, current or last known business affiliation, current or last known
20  residential address, current or last known business address, current or last known
21  relationship to MGA, and current or last known telephone number.

22          (b)    with reference to an entity or entities, means to state, fully
23  and separately as to each, such entity's full name, state (or country) of incorporation
24  or organization, present or last known address, and present or last known telephone
25  number.

26          (C)    with reference to any DOCUMENT or DOCUMENTS,
27  means to describe each DOCUMENT by Bates number. In the event that a
28  DOCUMENT does not have a Bates number, IDENTIFY means, with respect to

07209/2227746.2

-3-

EXHIBIT _____ 25

PAGE _____ 201

1  each such DOCUMENT, to provide a complete description of it such that it may be
2  the subject of a request for the production of documents, including by stating the
3  date, identity of the author, addressee(s), signatories, parties, or other PERSONS
4  identified therein, its present location or custodian and a description of its contents.

5         7.  "Any" as used in these interrogatories includes the word "all,"
6  and the word "all" as used in these interrogatories includes the word "any."

7         8.  The singular form of a noun or pronoun includes within its
8  meaning the plural form of the noun or pronoun so used, and vice versa; the use of
9  the masculine form of a pronoun also includes within its meaning the feminine form
10  of the pronoun so used, and vice versa; the use of any tense of any verb includes
11  also within its meaning all other tenses of the verb so used, whenever such
12  construction results in a broader request for information; and "and" includes "or"
13  and vice versa, whenever such construction results in a broader disclosure of
14  documents or information.

## Instructions

16        A.  When an interrogatory requests disclosure of a
17  COMMUNICATION or other information as to which YOU claim any privilege or
18  protection as a ground for nondisclosure, identify each PERSON who participated in
19  or had knowledge of the COMMUNICATION or other information and provide the
20  following:

21        (i)  the privilege or protection that YOU claim precludes disclosure;
22        (ii)  the subject matter of the COMMUNICATION or information
23        (without revealing the content as to which the privilege is claimed);
24        and
25        (iii)  any additional facts or grounds on which YOU base YOUR
26        claim of privilege or protection.

27        B.  When an interrogatory requests that YOU provide information,
28  YOU are required to supply all information known by or available to YOU or

07209/2227746.2

-4-

EXHIBIT ____25____

PAGE ____202____

1 | YOUR employees, officers, directors, agents, representatives, attorneys and experts.
2 | If YOU cannot completely answer the interrogatory in whole or in part after making
3 | diligent efforts to do so, please so state.  Then describe in detail all efforts made to
4 | answer the interrogatory or portion thereof; identify every PERSON involved in
5 | such efforts; and state the additional information YOU need, if any, to respond
6 | completely to the interrogatory.

7 | **Interrogatory**

8 | SUPPLEMENTAL INTERROGATORY:

9 | .   State all facts which support YOUR affirmative defenses, and
10 | IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that
11 | REFER OR RELATE to such facts.

12 | DATED:  December 3, 2007          QUINN EMANUEL URQUHART OLIVER &
13 |                                                        HEDGES, LLP

14 |
15 | By
16 |                                                      B. Dylan Proctor
                                                         Attorneys for Plaintiff
                                                         Mattel, Inc.
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

07209/2227746.2

-5-

MATTEL'S SUPPLEMENTAL INTERROGATORY RE DEFENDANTS' AFFIRMATIVE DEFENSES

EXHIBIT _____ 25 _____

PAGE _____ 203

1

## PROOF OF SERVICE

2      I am employed in the County of Los Angeles, State of California.  I am over the age of
eighteen years and not a party to the within action; my business address is Now Legal Service,
3   1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

4   On December 3, 2007, I served true copies of the following document(s) described as **MATTEL,
INC.'S SUPPLEMENTAL INTERROGATORY REGARDING DEFENDANTS'**
5   **AFFIRMATIVE DEFENSES** on the parties in this action as follows:

6      Thomas J. Nolan, Esq.                    Mark E. Overland, Esq.
       **Skadden, Arps, Slate, Meagher &**       David C. Scheper, Esq.
7       **Flom LLP**                             Alexander H. Cote, Esq.
       300 South Grand Avenue, Suite 3400        **Overland Borenstein Scheper &**
8      Los Angeles, CA  90071                    **Kim, LLP**
                                                 300 South Grand Avenue, Suite 2750
9                                                Los Angeles, CA 90071

10     John W. Keker, Esq.
       Michael H. Page, Esq.
11     Christina M. Anderson, Esq.
       **Keker & Van Nest, LLP**
12     710 Sansome Street
       San Francisco, CA 94111
13

14

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s)
15   being served.

16      I declare that I am employed in the office of a member of the bar of this Court at whose
direction the service was made.
17

18      Executed on December 3, 2007, at Los Angeles, California.

19

20                                    NOW LEGAL -- Dave Quintana

21

22

23

24

25

26

27

28

07209/2312830.1

EXHIBIT 25

PAGE 204

# EXHIBIT 26

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.     CV 04-09049 SGL(RNBx)                    Date: December 3, 2007
Title:       CARTER BRYANT -v- MATTEL, INC.
             AND CONSOLIDATED ACTIONS

=================================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes                              Theresa Lanza
          Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR CARTER              ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

Matthew M. Werdegar                       Michael T. Zeller
                                          B. Dylan Proctor
                                          Jon D. Corey

ATTORNEYS PRESENT FOR MGA:                ATTORNEY PRESENT FOR CARLOS
                                          GUSTAVO MACHADO GOMEZ:

Thomas J. Nolan                           Alexander H. Cote
Carl A. Roth
Ryan Weinstein

PROCEEDINGS:   ORDER GRANTING MOTION FOR LEAVE TO SERVE A SUPPLEMENTAL
               INTERROGATORY; ORDER DENYING MOTION TO STRIKE (OR
               ALTERNATIVELY, FOR SUMMARY JUDGMENT AS TO) AFFIRMATIVE
               DEFENSES

     The Court heard argument on these motions on December 3, 2007. For reasons discussed
on the record, the Court GRANTS the motion for leave to serve a supplemental interrogatory.
Mattel may serve on all opposing parties, and all parties served shall answer without objection
thereto, the following interrogatory:

     State the facts upon which YOU intend to rely at trial to support YOUR
     affirmative defenses, and IDENTIFY all PERSONS with knowledge of those facts and

MINUTES FORM 90                                   Initials of Deputy Clerk __jh_____
CIVIL -- GEN                          1           Time: 00/45

EXHIBIT  26
PAGE  205

all DOCUMENTS that REFER OR RELATE TO those facts.

In light of the Court's granting of the motion for leave to file a supplemental interrogatory,
the motion to strike (or alternatively, for summary judgment as to) MGA's affirmative defenses is
DENIED WITHOUT PREJUDICE pending completion of discovery in this action.

IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN                              2              Initials of Deputy Clerk __jh_____
                                                         Time: 00/45

EXHIBIT ___26___

PAGE ___206___

# EXHIBIT 27

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 28

Fees are effective through June 30, 2002. After that date, check the Copyright Office Website at www.loc.gov/copyright or call (202) 707-3000 for current fee information.

RECEIVED

NOV 6 2006

DOCUMENT SECTION

Do not write above this line.

To the Register of Copyrights:

*Please record the accompanying original document or copy thereof.*

**DOCUMENT COVER SHEET**
For Recordation of Documents
UNITED STATES COPYRIGHT OFFICE

DATE OF RECORDATION
(Assigned by Copyright Office)

Month _11_ Day _06_ Year _06_

Volume _3544_ Page _330_

Volume _____ Page _____

FUNDS RECEIVED _____

---

**FOR OFFICE USE ONLY**

1. Name of the party or parties to the document spelled as they appear in the document (List up to the first three)

   CARTER H. BRYANT

   MATTEL, INC.

2. Date of execution and/or effective date of the accompanying document

   | 01 | 04 | 1999 |
   | (month) | (day) | (year) |

3. Completeness of document
   ☒ Document is complete by its own terms.
   ☐ Document is not complete. Record "as is."

4. Description of document
   ☒ Transfer of Copyright
   ☐ Security Interest
   ☐ Change of Name of Owner
   ☐ Termination of Transfer(s) [Section 304]
   ☐ Shareware
   ☐ Life, Identity, Death Statement [Section 302]
   ☐ Transfer of Mask Works
   ☐ Other _____

5. Title of first work as given in the document _____

6. Total number of titles in document _0_

7. Amount of fee calculated $ 95.00

8. Fee enclosed
   ☒ Fee authorized to be charged to:
   Copyright Office
   Deposit Account number _37842_

   ☐ Check
   ☐ Money Order

   Account name _Mattel, Inc._

9. Affirmation: I hereby affirm to the Copyright Office that the information given on this form is a true and correct representation of the accompanying document. This affirmation will not suffice as a certification of a photocopy signature on the document. (Affirmation *must* be signed even if you are also signing Space 10.)

   Signature _____

   Date _November 6, 2006_

   Phone Number _(703) 415-1640_   Fax Number _(703) 415-0788_

10. Certification: Complete this certification in addition to the Affirmation if a photocopy of the original signed document is substituted for a document bearing the actual signature.
    NOTE: This space *may not* be used for an official certification.
    I certify under penalty of perjury under the laws of the United States of America that the accompanying document is a true copy of the original document.

    Signature _Mattel, Inc._

    Duly Authorized Agent of: _November 6, 2006_

    Date _____

Recordation will be mailed in window envelope to this address:

Name: Michael Moore, Senior Counsel
Mattel, Inc.
Number/Street/Apt/ 333 Continental Blvd., M1-1518
City/State/ZIP: El Segundo, CA 90245

**YOU MUST:**
- Complete all necessary spaces
- Sign your Cover Sheet in Space 9
**SEND ALL 3 ELEMENTS TOGETHER:**
1. Two copies of the Document Cover Sheet
2. Check/money order payable to *Register of Copyrights*
3. Document
**MAIL TO:**
Library of Congress, Copyright Office
Documents Recordation Section, LM-462
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

The recordation fee for a Docume Cover Sheet $50 and for each grou of 10 additional titles of July 1, 3t

*Knowingly and willfully falsifying material facts on this form may result in criminal liability. 18 U.S.C. §1001
June 1999—20,000*

EXHIBIT _28_

PAGE _293_

M 0059686

EX 13758-0001



# Certificate of Recordation

This is to certify that the attached document was recorded
in the Copyright Office on the date and in the place shown below.

This certificate is issued under the seal of the
United States Copyright Office.

| DATE OF RECORDATION | |
| --- | --- |
| 6Nov06 | |
| VOLUME | DOC. NO. |
| 3544 | 330 |
| VOLUME | DOC. NO. |

*Marybeth Peters*

Register of Copyrights and
Associate Librarian for Copyright Services

c-761 · JANUARY 2004 — 4,000

**EXHIBIT** 28

**PAGE** 294

**M 0059687**

EX 13758-0002

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

**1. Provisions Related to Trade Secrets**

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

**2. Ownership of Inventions**

(a) I agree to communicate to the Company as promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such Inventions, and all my rights, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such Inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) I hereby acknowledge that this agreement requiring me to assign my rights in any Invention does not apply to an Invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an Invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those Inventions that either (1) relate at the time of conception or reduction to practice of the Invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by me for the employer." I understand that I bear the burden of proving that an Invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

**3. Conflicts with Other Activities**

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

**4. Miscellaneous**

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach or any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of the the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement. In addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. The Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS
THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.

Employee Signature _____

Employee Name (print) CARTER A. BRYANT

Date 01/04/99

MATTEL, INC.
By: _____
Signature

TERESA NEWCOMB
Name of Witness (print)

V3544 D330
Page 1

V3544 D330

EXHIBIT 28

PAGE 295

M 0059688

EX 13758-0003

# EXHIBIT 29

RECEIVED

JUL 2 3 2007

1  DALE M. CENDALI (admitted *pro hac vice*)
   DIANA M. TORRES (S.B. #162284)
2  CHRIS D. NGUYEN (S.B. #222236)
   O'MELVENY & MYERS LLP
3  400 South Hope Street
   Los Angeles, CA  90071-2899
4  Telephone:   (213) 430-6000
   Facsimile:   (213) 430-6407
5  Email:  cnguyen@omm.com

6  PATRICIA GLASER (S.B. #55668)
   CHRISTENSEN, GLASER, FINK,
7  JACOBS, WEIL & SHAPIRO LLP
   10250 Constellation Boulevard, 19th Floor
8  Los Angeles, CA  90067
   Telephone: (310) 553-3000
9  Facsimile:  (310) 556-2920
   Email: pglaser@chrisglase.com

10
   Attorneys for Plaintiff
11 MGA Entertainment, Inc.

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14                    EASTERN DIVISION

15 CARTER BRYANT, an individual,    | Case No.  CV 04-09049 SGL (RNBx)
                                    | (consolidated with CV 04-9059 & 05-2727)
16              Plaintiff,           |
                                    | MGA ENTERTAINMENT, INC.'S
17     v.                           | SECOND SUPPLEMENTAL AND
                                    | AMENDED RESPONSES TO
18 MATTEL, INC., a Delaware         | MATTEL, INC.'S THIRD SET OF
                                    | REQUESTS FOR ADMISSION
19 Corporation,                     |

20              Defendant.

21 CONSOLIDATED WITH
   MATTEL, INC. v. BRYANT and
22 MGA ENTERTAINMENT, INC. v.
   MATTEL, INC.
23

24

25

26

27

28

MGA'S SUPPLEMENTAL RESPONSES TO
MATTEL'S THIRD SET OF RFAs

EXHIBIT _____ 29

PAGE _____ 296

1    **RESPONSE TO REQUEST FOR ADMISSION NO. 239:**

2         MGA incorporates by reference the above-stated general objections as

3 if fully set forth herein. MGA further objects to this request on the grounds that it

4 seeks information about a statement that is incomplete and/or out of context.

5         Subject to and without waiving the foregoing general and specific

6 objections, MGA responds as follows to this request: MGA has made a reasonable

7 inquiry and the information known or readily obtainable by MGA is insufficient to

8 enable MGA to admit or deny this request. On that basis, MGA denies the request.

9

10    **REQUEST FOR ADMISSION NO. 240:**

11         Admit that the work registered as VA 1-233-104 is a derivative of the

12 works registered as VA 1-218-487, VA 1-218-488, VA 1-218-489, VA 1-218-490,

13 VA 1-218-491, VA 1-090-287, VA 1-090-288, VA 1-090-289 and VA 1-090-290.

14

15    **RESPONSE TO REQUEST FOR ADMISSION NO. 240:**

16         MGA incorporates by reference the above-stated general objections as

17 if fully set forth herein. MGA specifically objects to this request on the grounds

18 that it calls for a legal conclusion. MGA also specifically objects to this request on

19 the grounds that it calls for the disclosure of attorney-client privileged information

20 or information protected from disclosure by the work-product doctrine, joint

21 defense or common interest privilege or other privilege.

22

23    **REQUEST FOR ADMISSION NO. 241:**

24         Admit that, as of the date of these Requests, MGA has not recorded the

25 agreement produced by BRYANT as BRYANT 00794-BRYANT 0000799, or any

26 version thereof, with the U.S. Copyright Office.

27

28

MGA'S SUPPLEMENTAL RESPONSES TO
MATTEL'S THIRD SET OF RFAs

EXHIBIT ___29___

PAGE ___297___

1  **RESPONSE TO REQUEST FOR ADMISSION NO. 241:**

2       MGA incorporates by reference the above-stated general objections as

3  if fully set forth herein.  MGA specifically objects to this request on the grounds

4  that the request seeks information not relevant to any claim or defense of any party

5  in this action.

6       Subject to and without waiving the foregoing general and specific

7  objections, MGA responds as follows to this request:  MGA admits the request.

8

9  **REQUEST FOR ADMISSION NO. 242:**

10       Admit that, as of the date of these Requests, MGA has not recorded the

11  agreement produced by Bryant as BRYANT 00794-BRYANT 0000799, or any

12  version thereof, with any state or federal agency, department or entity.

13

14  **RESPONSE TO REQUEST FOR ADMISSION NO. 242:**

15       MGA incorporates by reference the above-stated general objections as

16  if fully set forth herein.  MGA specifically objects to this request on the grounds

17  that the request seeks information not relevant to any claim or defense of any party

18  in this action.

19       Subject to and without waiving the foregoing general and specific

20  objections, MGA responds as follows to this request:  MGA admits the request.

21

22  **REQUEST FOR ADMISSION NO. 243:**

23       Admit that, as of the date of these Requests, MGA has not recorded the

24  agreement produced by MGA as MGA000001-MGA000006, or any version

25  thereof, with the U.S. Copyright Office.

26

27

28

MGA'S SUPPLEMENTAL RESPONSES TO
MATTEL'S THIRD SET OF RFAs

EXHIBIT  _29_

PAGE  _298_

**RESPONSE TO REQUEST FOR ADMISSION NO. 243:**

MGA incorporates by reference the above-stated general objections as if fully set forth herein. MGA specifically objects to this request on the grounds that the request seeks information not relevant to any claim or defense of any party in this action.

Subject to and without waiving the foregoing general and specific objections, MGA responds as follows to this request: MGA admits the request.

**REQUEST FOR ADMISSION NO. 244:**

Admit that, as of the date of these Requests, MGA have not recorded the agreement produced by MGA as MGA000001-MGA000006, or any version thereof, with any state or federal agency, department or entity.

**RESPONSE TO REQUEST FOR ADMISSION NO. 244:**

MGA incorporates by reference the above-stated general objections as if fully set forth herein. MGA specifically objects to this request on the grounds that the request seeks information not relevant to any claim or defense of any party in this action.

Subject to and without waiving the foregoing general and specific objections, MGA responds as follows to this request: MGA admits the request.

**REQUEST FOR ADMISSION NO. 245:**

Admit that, as of the date of these Requests, BRYANT has not recorded the agreement produced by MGA as MGA000001-MGA000006, or any version thereof, with the U.S. Copyright Office.

- 138 -

MGA'S SUPPLEMENTAL RESPONSES TO
MATTEL'S THIRD SET OF RFAs

EXHIBIT _29_

PAGE _299_

1   **RESPONSE TO REQUEST FOR ADMISSION NO. 256:**

2            MGA incorporates by reference the above-stated general objections as

3   if fully set forth herein.  MGA specifically objects to this request on the grounds

4   that the request seeks information not relevant to any claim or defense of any party

5   in this action.  MGA specifically objects to this request on the grounds that it seeks

6   information not reasonably expected to be in MGA's possession.

7            Subject to and without waiving the foregoing general and specific

8   objections, MGA responds as follows to this request:  MGA has made a reasonable

9   inquiry and the information known or readily obtainable by MGA is insufficient to

10  enable MGA to admit or deny this request.  On that basis, MGA denies the request.

11

12

13      Dated:  July 20, 2007                              O'MELVENY & MYERS LLP

14

15

16                                                         By:  Chris D. Nguyen
                                                           Attorneys for MGA Entertainment, Inc.

17

LA2:827466

18

19

20

21

22

23

24

25

26

27

28

- 145 -

MGA'S SUPPLEMENTAL RESPONSES TO
MATTEL'S THIRD SET OF RFAs

EXHIBIT    29

PAGE    300

# EXHIBIT 30

CALENDARED

JAN 1 6 2007

P-Send

ENTERED
CLERK, U.S. DISTRICT COURT

JAN 1 2 2006

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION      BY DEPUTY

FILED

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, | |
| Plaintiff, | CASE NO. CV-04-9049-SGL |
| | (Consolidated with cases CV-04-9059 and CV-05-2727) |
| v. | |
| MATTEL, INC., | ORDER REGARDING MATTEL'S MOTION FOR LEAVE TO AMEND |
| Defendant. | |
| and related actions. | |

This case has, increasingly, become one of the proverbial tail wagging the proverbial dog.

Back in April, 2004, Mattel, Inc., ("Mattel") filed a complaint in Los Angeles County Superior Court against its former employee and the reputed creator of the BRATZ dolls, Carter Bryant. The complaint pressed five separate state-law theories relating to certain agreements Bryant signed while an employee with Mattel, namely, an Employee Confidential Information and Inventions Agreement ("Inventions Agreement") and a Conflict of Interest Questionnaire ("COI Questionnaire"). Although couched in state law terms and ostensibly pled as a simple employment action, lurking beneath the allegations in the complaint was whether Bryant had either misappropriated Mattel's intellectual property or

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(D).

EXHIBIT ___30___

PAGE ___301___

1-12

1   resources in creating and/or developing the BRATZ dolls or whether he continued
2   to develop his BRATZ design while still working in Mattel's employ. In either event,
3   the rights to the BRATZ dolls could become the property of Mattel, either through
4   infringement or through operation of the agreements noted above. The case was
5   later removed to this Court and was assigned the case number CV-04-9059. MGA
6   Entertainment, Inc. ("MGA"), the maker of the BRATZ doll line, then intervened "to
7   protect its rights to Bratz dolls" that were at stake in the action. Mattel, Inc. v.
8   Bryant, 446 F.3d 1011, 1012 (9th Cir. 2006); see also id. at 1013 ("Mattel argues, 'a
9   significant risk of prejudice' to MGA [exists] if the ownership of rights to intellectual
10  property, i.e., the Bratz creations, were decided in the absence of MGA").

11       In the interim, Bryant filed a declaratory judgment action in this Court,
12  seeking for the Court to declare that his BRATZ doll creations did not infringe
13  Mattel's copyright in its Toon Teens products. See Court's July 18, 2006, Order at
14  3 (noting that, although "Bryant's complaint . . . makes reference to 'other Mattel
15  products,' . . . the substance of his allegations all address the product 'Toon
16  Teens'"). The declaratory judgment action was assigned the case number CV-04-
17  9049.

18       MGA then filed an action against Mattel in this Court broadening the scope
19  of the controversy beyond that concerned with the ownership rights to the BRATZ
20  doll line. MGA's complaint asserted various Lanham Act claims and their California
21  state law equivalent arising out of Mattel's alleged "habitual and unfair tactics of
22  competition-by-intimidation and serial copycatting of MGA's products." (Compl.
23  ¶ 7). In essence, although the prior actions were concerned with ownership in the
24  rights to the BRATZ doll line, the allegations in 05-2727 concerned whether there
25  had been unlawful efforts to block the marketing of those rights in the BRATZ dolls.
26  MGA's complaint did make mention of other products that were affected by Mattel's
27  alleged predatory business practices, but by far the largest portion of its complaint
28  concerned Mattel's conduct in undermining (or seeking to undermine) MGA's rival

2

EXHIBIT ___30___

PAGE    302

1  line of BRATZ dolls.[1]

2  By Order dated June 19, 2006, the Court consolidated all three cases "for all
3  purposes" as they "involve[d] a number of common issues of law and fact." As the
4  Court later noted in its August 10, 2006, Order: "At its heart, this case asks the
5  question: Who owns the rights to the Bratz dolls?" Resolution of this question lies
6  at the heart of or, at the very least, affects many of the other claims set forth in
7  each of the three respective cases. For instance, even though the allegations in
8  05-2727 concern Mattel's alleged efforts at defeating the marketing of the BRATZ
9  dolls, resolution of who owned the rights to the BRATZ dolls could serve to moot
10 many of those allegations. It is hard to imagine how it is unlawful for a company to
11 thwart or otherwise undermine the marketing of a product it owns. Thus, if Mattel
12 owned the rights to the BRATZ dolls, many of the allegations in the 05-2727
13 complaint would become moot. That said, such consolidation did not do away with
14 the distinctions that do exist between the three cases. As the Court highlighted in
15 its consolidation order, when either party files a pleading in the case, "the first
16 paragraph of [that] document . . . shall inform the Court to which case(s) the
17 document relates."

18 On July 18, 2006, the Court dismissed Bryant's declaratory judgment action,
19 04-9049, finding there existed no reasonable apprehension of an imminent
20 copyright infringement claim being filed against him by Mattel based on Mattel's
21 Toon Teen intellectual property. See Court's July 18, 2006, Order at 4. The
22 Court's Order was predicated entirely upon counsel for Mattel's representation
23 during oral argument that it "will not maintain that Bratz infringes the copyright in
24 Toon Teens." Owing to this representation, the Court, in dismissing the declaratory
25 judgment action, made clear that any future "claim by Mattel of copyright

26

27      [1] That the marketing of the BRATZ dolls lies at the heart of the issues
between the rival doll makers in the 05-2727 case is best illustrated by the Court's
28 discussion of those allegations in its August 26, 2005, Order, Granting in Part and
Denying Part Mattel's Motion to Strike portions of MGA's complaint.

3

EXHIBIT ___30___

PAGE ___303___

1  infringement based on the Toon Teens product is barred by counsel's

2  representation." July 18, 2006, Order at 4.

3      Presently before the Court is Mattel's request for leave to file an amended

4  complaint in the 04-9059 action. The complaint broadens considerably the nature

5  of the action from its genesis in state court. Whereas before the complaint simply

6  sought to litigate alleged contractual and fiduciary breaches by Bryant while in the

7  employ of Mattel (no doubt geared toward procuring a legal basis for Mattel to lay

8  claim to the BRATZ doll line), the amended complaint adds five more defendants

9  and nine new legal claims, alleging a wide range of commercial disputes between

10  the rival doll makers that spans three countries. For instance, the amended

11  complaint now contains RICO claims, a misappropriation of trade secrets claim,

12  and various aiding and abetting claims all stemming from allegations that MGA

13  cherry-picked certain high-ranking Mattel executives in foreign markets (many also

14  named as defendants in the amended complaint) or designers (namely, Bryant),

15  and then enticed or encouraged those same individuals to steal various trade and

16  proprietary secrets (be it sales plans, sales projections, customer profiles, or

17  intellectual property) from Mattel and hand them over to MGA before going to work

18  at MGA.

19      Moreover, the amended complaint expands upon the existing breaches of

20  contract and fiduciary duty claims in the original complaint by expanding the

21  universe of former employees (namely, the cherry-picked executives) to whom

22  those claims now apply.

23      Finally, Mattel now makes plain what was always lurking in its original

24  complaint — a copyright claim, but one directed not only to Bryant but also to MGA,

25  MGA's Hong Kong subsidiary, and MGA's President and CEO Isaac Larian.

26  Moreover, Mattel characterizes its copyright claim somewhat differently from that at

27  issue in Bryant's declaratory relief action: "The Amended Complaint does not

28  include a claim for infringement of copyrights in Toon Teens, but rather

4

EXHIBIT ___30___

PAGE ___304___

1  infringement of copyrights in Bratz." (Reply to MGA Opp. at 11). Toward that end,

2  Mattel has recently filed copyright registrations with the U.S. Copyright Office

3  claiming ownership in various BRATZ doll design drawings penned by Bryant.

4  A.     ANALYSIS

5      Federal Rule of Civil Procedure 15(a) provides that, once a responsive

6  pleading has been served, "a party may amend the party's pleading only by leave of

7  court or by written consent of the adverse party; and leave shall be freely given

8  when justice so requires." With no consent to Mattel's proposed filing proffered by

9  MGA and Bryant, determining whether to grant Mattel leave to file an amended

10  complaint is gauged by looking to the familiar formulation of factors set forth by the

11  Supreme Court in Forman v. Davis:

12
13      In the absence of any apparent or declared
       reason—such as undue delay, bad faith or dilatory
       motive on the part of the movant, repeated failure to
14      cure deficiencies by amendments previously allowed,
       undue prejudice to the opposing party by virtue of
15      allowance of the amendment, futility of amendment,
       etc.—the leave sought should, as the rules require, be
16      'freely given.' Of course, the grant or denial of an
       opportunity to amend is within the discretion of the
17      District Court, but outright refusal to grant the leave
       without any justifying reason appearing for the denial is
18      not an exercise of discretion; it is merely abuse of that
       discretion and inconsistent with the spirit of the Federal
19      Rules.

20  371 U.S. 178, 182 (1962).

21      MGA and Bryant offer the following reasons for denying Mattel leave to

22  amend: (1) Mattel has long known of the factual predicates underlying its copyright

23  and intentional interference claims but delayed in asserting them; (2) the proposed

24  amendment to add the copyright claim and the intentional interference claims

25  (against the new defendants) are futile because they are barred by the applicable

26  statute of limitations; (3) the copyright claim had been brought in bad faith by Mattel

27  because of its prior public disavowal of an intent to assert such a claim; and (4)

28  MGA and Bryant would incur undue prejudice were the copyright claim added to the

EXHIBIT ___30___   5

PAGE ___305___

1  suit because of alleged spoilation of evidence issues involving Mattel's ZEUS
2  computer system used by doll designers at Mattel and its e-mail system.  None of
3  these arguments are persuasive.

4    1.    Awareness of Factual Predicate for Copyright and Intentional
5          Interference Claims

6  MGA argues that Mattel has long known about the factual predicate for its
7  recently added copyright claim, observing that, "[o]ver four years ago, in August
8  2002, Mattel CEO Bob Eckert received an anonymous letter stating that Bryant
9  created the project that became the 'Bratz' dolls — and worked with MGA to 'steal'
10 that project — while still employed at Mattel." (MGA Opp. at 9).  Similarly, MGA
11 argues that Mattel has long known of the factual predicate for its intentional
12 interference claim with respect to Bryant's contract given that, "[b]y Mattel's own
13 admission, it learned in November 2003 — more than three years ago — that
14 Bryant had signed a contract with MGA 'dated as of' a month prior to his final day at
15 Mattel." (MGA Opp. at 11-12).

16 At the outset it must be observed that "[m]ere delay in proffering an
17 amendment does not justify denying leave to amend." Sierra Club v. Union Oil Co.
18 of California, 813 F.2d 1480, 1493 (9th Cir. 1987), vacated on other grounds by,
19 485 U.S. 931 (1988), and reinstated by, 853 F.2d 667 (9th Cir. 1988).  Seizing upon
20 this point of law, Mattel argues that "only in . . . cases" when "granting leave would
21 require discovery to be reopened after summary judgment motions have been filed"
22 has the Ninth Circuit found the denial of leave "justified" based on the passage of
23 time alone. (Reply to MGA Opp. at 3). That is incorrect. There is a line of cases
24 from the Ninth Circuit finding that, if a "party seeking amendment knows or should
25 know of the facts underlying the amendment when the original complaint is filed,
26 the motion to amend may be denied." Sierra Club, 813 F.2d at 1493 (citing Jordan
27 v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982)).  And, recently, the
28 Ninth Circuit upheld the denial of leave to amend based on the passage of time

EXHIBIT ___30____

PAGE ___306____

6

1  even though the requested leave to amend was tendered <u>before</u> the time, as set

2  forth in a Rule 16(b) pre-trial scheduling order, for amending pleadings had expired.

3  See <u>AmerisourceBergen Corp. v. Dialysist West, Inc.</u>, 465 F.3d 946 (9th Cir. 2006).

4  The Ninth Circuit observed that, even when a request for leave to amend is timely

5  under a Rule 16(b) schedule for pretrial motions, the district court may nonetheless

6  still deny the request based on any of the <u>Forman</u> factors. <u>Id.</u> at 951-52. The Ninth

7  Circuit then noted that the issue of untimeliness (regardless of whether the

8  amendment is tendered "within the period of time allotted by the district court in a

9  Rule 16 scheduling order") in seeking to amend can constitute a justification for

10  denying leave to amend if "the moving party knew or should have known the facts

11  and theories raised by the amendment in the original pleading." <u>Id.</u> at 953.

12  Toward that end, the Ninth Circuit observed that "an eight month delay between the

13  time of obtaining a relevant fact and seeking a leave to amend is unreasonable."

14  <u>Id.</u> In this regard, the Ninth Circuit in <u>Dialysist</u> was unpersuaded by the fact that,

15  even though the moving party had known of the facts prompting the amendment for

16  a long period of time, there still remained eight more months of discovery for the

17  parties to marshal facts against the allegations raised by the amended pleading:

18  "Even though eight months of discovery remained, requiring the parties to scramble

19  and attempt to ascertain whether the Procrit purchased by AmerisourceBergen was

20  tainted, would have unfairly imposed potentially high, additional litigation costs on

21  Dialysist West that could have easily been avoided had AmerisourceBergen

22  pursued its 'tainted product' theory in its original complaint or reply." <u>Id.</u> Thus,

23  absent "a satisfactory explanation" for the delay in amending the complaint, the

24  Court is well within its rights to deny leave to amend. <u>Id.</u>

25      Mattel proffers the following reasons for taking the time that it did before

26  presenting its amended complaint: (1) Acting out of an abundance of caution to its

27  obligations under Rule 11 to present "factual contentions [that] have evidentiary

28  support," Mattel waited until its claims were better supported by evidence

7

EXHIBIT ___30___

PAGE ___307___

1  uncovered in discovery; and (2) the delay in the proceedings caused by "the year-

2  long stay and the parties' prior jurisdictional disputes" have left the case still in its

3  "nascent stage." (Reply to MGA Opp. at 2, 4).

4        The first reason is not well-founded. Rule 11 specifically allows parties to

5  aver factual allegations that "are likely to have evidentiary support after a

6  reasonable opportunity for further investigation or discovery" so long as the party

7  makes clear in its pleading that its factual contentions on those points are with the

8  caveat that they are based on a good faith belief that further discovery would

9  unearth evidence to support them. See FED. R. CIV. P. 11(b)(3). Simply put, Rule

10 11 did not stand in the way of Mattel averring the factual contentions it now claims it

11 "merely suspected" as being the case based on the limited information before it.

12 Mattel could have gone ahead and made such suspected factual allegations so

13 long as it caveated those claims with the declaration that it reasonably believed that

14 those allegations would be borne out by further discovery. Perhaps the time by

15 which Mattel could have reasonably believed such allegations would be borne out

16 by further discovery occurred after the dates noted by MGA, but it is hard to fathom

17 that such materialization took three or four years to occur.

18        The second reason would have some merit to it but for the fact that the

19 information that alerted (or should have alerted) Mattel to the existence of its now

20 asserted copyright and intentional interference claims was brought to Mattel's

21 attention well before the case was stayed on May 20, 2005. The stay, therefore,

22 did not operate as an obstacle to Mattel asserting its claims; nor even if it did, the

23 stay does not explain why Mattel waited nearly six months after the stay was lifted

24 on May 16, 2006, to present those claims now.

25        All of that being said, the one thing that gives the Court pause in denying

26 leave based on the tardiness in Mattel's presentation is the lack of any evidence

27 that MGA or Bryant have been prejudiced by the delay. Delay unconnected to

28 some showing of prejudice, be it prejudice to the parties or disruption in judicial

8

EXHIBIT _____30_____

PAGE _____308_____

●　　　　　　　　●

1　management of the case, does not suffice to deny granting leave to amend. The
2　Ninth Circuit has noted that, "where a defendant is on notice of the facts contained
3　in an amendment to a complaint, there is no serious prejudice to defendant in
4　allowing the amendment" even if it is made tardily. Sierra Club, 813 F.2d at 1493.
5　Indeed, the denial of leave was proper in the Dialysist case not simply because of
6　the length of the delay, but because the delay itself was "detrimental" in that it
7　would entail the opposing party to have "unfairly" incurred "potentially high,
8　additional litigation costs" that could have been avoided if the moving party had
9　made clear its intentions earlier. 465 F.3d at 953.

10　　　　Here, as well demonstrated in Mattel's papers, it is readily apparent from the
11　pleadings filed by MGA and Bryant in this case that both have been aware for some
12　time of the factual predicates now underlying Mattel's copyright claim and
13　intentional interference claim. (See MGA Opp. at 5 ("As Bryant and MGA
14　suspected at the time of filing — and Mattel now concedes by conduct — those
15　deceptively-pled state-law claims [in 04-9059] were copyright infringement claims all
16　along")(emphasis added)). The parties have engaged in meaningful discovery
17　regarding many of the facts touched upon by these new claims, be it tracking down
18　experts in various forensic fields or taking depositions of various of the key players
19　to those claims. In point of fact, in their papers filed with this Court before this
20　present motion, both Bryant and MGA have made it abundantly clear that they have
21　long suspected that a copyright infringement claim was in the offing as evidenced
22　by Bryant's filing of the declaratory judgment action and MGA's intervention in the
23　05-9059 matter to protect its rights to the BRATZ dolls. Similarly, MGA and Bryant
24　have been on notice to the facts comprising the interference claim concerning
25　Bryant's contract as evidenced by the identity of the individuals who have been
26　deposed by Mattel, as well as the nature of the questions posed and the testimony
27　proffered at those depositions. MGA's argument that, with the amendments, it
28　faces the prospect of defending "against stale claims" owing to faded memories and

9

EXHIBIT　30

PAGE　309

1  loss of documents caused by the great passage of time, (see MGA Opp. at 3, 13),
2  is diminished by the fact that (no doubt owing to the sophistication of all counsel
3  involved) discovery on these very issues have been proceeding apace by both
4  sides long before Mattel filed its proposed amendments. This is simply not a case
5  where "additional litigation costs" will be "unfairly" visited upon Bryant and MGA by
6  allowing the proposed amendments; much of those costs have already been borne
7  by the parties for some time.

8      2.   Spoilation of Evidence

9      MGA next argues that Mattel's delay in bringing the amended complaint has
10  caused it prejudice as, in the interim, critical pieces of evidence have been or are
11  suspected of having become lost. For instance, MGA asserts that Mattel's Rule
12  30(b)(6) witness concerning its Zeus computer system, Julia Marine, testified that,
13  "although Mattel identified and segregated its most relevant backup tapes available
14  for Zeus, Mattel allowed its tape backup system to expire the database for those
15  backup tapes, thereby eliminating all information about what was actually stored on
16  those backup tapes." (MGA Opp. at 9-10). Information on the Zeus computer
17  system is critical because of Mattel's assertion that part of its copyright claim rests
18  on Bryant's exposure to Mattel development programs. (First Am. Compl. ¶ 26(a)).
19  As explained by MGA: "[C]oncept data and drawings created by [Mattel] design
20  center personnel are stored on Zeus. Thus, the electronic documents stored on
21  Zeus – which should include the metadata showing who created, edited and
22  accessed Mattel's concept drawings and designs – during the time Bryant worked
23  in the design center at Mattel is vitally important to defending against Mattel's
24  claims." (MGA Opp. at 14). MGA's argument is neither an accurate
25  characterization of Ms. Marine's testimony nor of the nature of Mattel's exposure
26  claim.

27      Ms. Marine did not testify that the information on the backup tapes (some
28  fifty in total) was lost, but rather that Mattel no longer carried the type of hardware

EXHIBIT $30^{10}$

PAGE $310$

that could restore the information still found on those tapes:

> Q. So if you wanted to restore that 2002 backup
> tape[s] then, how would you go about doing that?
>
> . . . .
>
> A. You need the hardware so if we don't have the
> hardware — if [the technology is] used by the tape
> is] DLT we don't have the hardware and you've
> got to buy it and – well, first you have to find a
> place to put it with adequate power which we
> don't have in the design center. You need to
> have a tape library. You need to have the tape
> drives that carried those tapes. You need a
> server that has the capability to – that's big
> enough to handle all of the hardware. You need
> the software – the license for the backup
> software[, Net Backup]. You need the disk space
> to restore it to and then you have to start reading
> in all those tapes.
>
> Q. You said that you don't have that in the design
> center. Do you have that hardware anywhere
> else in the company?
>
> A. DLT? No, no.
>
> Q. At what point did you get rid of the hardware?
>
> A. Once the last backups — DLT backups expired
> so it would have been a couple years ago
> probably.

(Decl. Diana Torres, Ex. K at 118-119).

The above testimony clearly denotes the difficulty in restoring what was on

Mattel's Zeus computer system during the relevant time frame, but it certainly does

not demonstrate that the information on those backup tapes has been "eliminated"

or forever lost. Undoubtedly it will be a costly endeavor to recover that information

(not to mention to later search and sort through it); but to argue, as MGA does, that

the information is "unavailable" or "lost", (MGA Opp. at 9, 14), exaggerates its

plight. Indeed, Ms. Marine's testimony indicates that the difficulty in retrieving the

information on the Zeus backup tapes has been present for some time (maybe

since 2004 or perhaps even earlier). This is important because it undermines

MGA's claim that Mattel's undue delay in bringing its amended complaint will cause

11

EXHIBIT ___30___

PAGE ___3//___

1   it to suffer prejudice it otherwise would not have faced if the amendments were
2   brought sooner. Such prejudice has been present for years, and Mattel's failure to
3   bring its amended complaint sooner would not have changed this situation.

4        Similarly, MGA's point that access to what was on the Zeus computer
5   system is vital in demonstrating that Bryant was not exposed to or otherwise did not
6   hack the system to steal other designers work is diminshed to some extent by the
7   fact that Bryant himself testified that he did not use the Zeus computer system and
8   was "pretty much computer illiterate" while employed at Mattel. Admittedly, the
9   ability to point to information on the Zeus system backup tapes to prove that Bryant
10  did not access other designers drawings or to prove the date those drawings were
11  created by those other designers would be useful evidence to negate Mattel's
12  factual claims. Nonetheless, such evidence still would not discount other avenues
13  outside of the Zeus computer system by which Mattel could seek to prove that
14  Bryant was exposed to its copyrighted works, e.g., witness testimony that Bryant
15  saw drawings of the same posted on other designers' cubicles.

16        MGA next surmises that Mattel's e-mail records have disappeared, not
17  because it has any proof on that point, but simply because Mattel has postponed
18  the deposition of the individual most knowledgeable of Mattel's e-mail records until
19  after the hearing on Mattel's motion for leave to amend. (MGA Opp. at 10).
20  Speculation of spoilation does not suffice. That MGA's argumentation on this point
21  is nothing more than speculation is best exhibited by the evidence it has proffered
22  in support of its argument: "[I]f the sole retained backup for Zeus is no longer
23  available, it is not hard to imagine that Mattel's electronic mail archives are similarly
24  out of reach." (MGA Opp. at 15 (emphasis added)). MGA then makes much of a
25  deposition from a Mattel executive, Alan Kaye, who testified that e-mails in his
26  inbox would be automatically deleted if they had remained there for more than a
27  certain time period. (Decl. Diana Torres, Ex. H at 292-93). MGA takes from this
28  acknowledgment that Mattel has an "automatic email deletion system" that has

12

EXHIBIT ___ 30 ___

PAGE ___ 312 ___

1 compromised Mattel's "duty to preserve documents." (MGA's Opp. at 14).
2 Noticeably absent from MGA's argument is any evidence that the e-mails so
3 deleted from a Mattel employee's inbox are forever lost or, as is far more likely,
4 whether such information remains or is otherwise archived on some backup file on
5 Mattel's computer system. Absent concrete proof that spoilation has occurred,
6 nothing in MGA's argument forms a basis for denying Mattel its requested leave to
7 amend.

8      3.   Statute of Limitations

9      MGA next argues that Mattel's copyright and intentional interference claims
10 are futile as both are barred by the applicable statute of limitations. This argument
11 was pressed emphatically at oral argument. With respect to the copyright claim,
12 MGA argues that the applicable statute of limitations is three years, with the
13 limitations period accruing from when a party has knowledge of a violation or when
14 a reasonably diligent person would have been put on inquiry of the infringement.
15 (MGA Opp. at 16 (citing Roley v. New World Pictures, 19 F.3d 479, 481 (9th Cir.
16 1994)). MGA argues that Mattel was put on notice about its copyright claim in
17 August, 2002, upon the receipt of the anonymous letter to Mattel's CEO that Bryant
18 had stolen the idea for BRATZ while working at Mattel. Thus, according to MGA,
19 the limitations period on Mattel's claim expired in August, 2005, rendering Mattel's
20 current copyright claim stale.

21      The problem with MGA's analysis is it fails to take into account the relations-
22 back principles found in Rule 15(c), which provides that "[a]n amendment of a
23 pleading relates back to the date of the original pleading when "the claim . . . in the
24 amended pleading arose out of the conduct, transaction, or occurrence set forth . . .
25 in the original pleading," or if such relation back is otherwise permissible by the
26 state "law that provides the statute of limitations applicable to the action." By
27 MGA's own admission Mattel's copyright claim arises out of the same conduct or
28 transaction contained in the original complaint filed in April, 2004, well within the

1   applicable limitations period.[2]   (MGA Opp. at 12 ("These very same allegations

2   [contained in the original complaint] underlie the copyright infringement and

3   intentional interference contract claims Mattel now seeks to allege against MGA,

4   Mr. Larian and Bryant")).

5          MGA's statute of limitations argument with respect to the intentional

6   interference claims fares no better.  According to MGA, the applicable statute of

7   limitations is two years for an intentional interference with contract claim and Mattel

8   was aware of the facts alerting it to this claim (insofar as Bryant's contract is

9   concerned) on November 24, 2003, when it learned "that Bryant worked with MGA

10  to develop the 'Bratz' dolls prior to his last day of employment by Mattel and, hence,

11  prior to the expiration of his contractual relationship with Mattel."[3]   (MGA Opp. at 18

12  (citing Knoell v. Petrovich, 76 Cal. App.4th 164, 168 (1999)) .   Such a time line

13  would, according to MGA, mean that the applicable limitations period expired on

14  Mattel's interference with Bryant's contract claim on November 24, 2005, well

15  before Mattel sought leave to file its amended complaint.  (Id).  The problem again

16  with MGA's argument is that it ignores that through Rule 15(c) Mattel's intentional

17  interference claim would relate back to when it filed its original complaint in April,

18

19

20          [2] The same would appear to be true — that the amendments would be timely
21  — if the amendments related back to Mattel's answer (filed on May 13, 2005) to
    MGA's complaint in the 05-2727 case.
22

23          [3] With respect to Mattel's interference with contract claim as to one of its
    former executives, Ron Brawer, MGA claims Mattel was put on notice of that claim
24  on September 17, 2004, when Brawer informed Mattel that he leaving to go to work
    for MGA.  (MGA Opp. at 19-20).  The problem with this argument is that nothing from
25  that simple event — Brawer's declaration of his intent to leave — in any way would
    apprise Mattel that MGA had encouraged Brawer to engage in nefarious conduct
26  (the stealing of proprietary information) causing Brawer to breach his contract with
    Mattel that he would not do anything to help a competitor while working for them.
27  MGA's contention that Mattel must have known of those misdeeds in mid-September
    is nothing more than speculation.  Futility cannot be founded on what might or might
28  not be the case; either a claim is futile to bring or it is not.

14

EXHIBIT   30
PAGE   314

1  2004, well before the limitations period expired.[4]

2       Accordingly, MGA's futility argument is not well-founded.

3       4.  Prior Disavowals of Asserting a Copyright Claim

4  Finally, MGA takes umbrage with the cageyness to which Mattel has taken in

5  this case as to whether or not it is asserting a copyright infringement claim against

6  it. To MGA, such ducking and weaving on Mattel's part renders its effort to now

7  bring such a copyright claim as one done in bad faith. No doubt the Court itself has

8  been subjected to Mattel's overly vague statements on this point, but in the end

9  nothing in those statements has ever foreclosed the possibility that such a claim

10  may be in the offing. Indeed, during the oral argument on Mattel's motion to

11  dismiss Bryant's declaratory judgment action, the Court pressed Mattel's counsel as

12  to whether it would assert such a copyright claim against Bryant as it is currently

13  seeking to do. The most that Mattel's counsel would proffer was that Mattel would

14  not assert a copyright claim against Bryant based on Mattel's copyright rights in

15  TOON TEENS. At that point, the Court directed the parties to engage in a meet

16  and confer based on counsel for Mattel's representation and to provide a report to

17  the Court based on those discussions. The report submitted to the Court made

18  clear that, although Mattel was willing to accede that it would not bring a copyright

19  claim based on TOON TEENS, it refused to accede to Bryant's broader request

20  that "Bryant 'never copied anything' and that no Mattel product has any 'relevance'

21  to any claim that Mattel has or ever will assert against Bryant." This by itself should

22  have dispelled any illusion either Bryant or MGA was operating under that Mattel's

23  prior statements had foreclosed any potential copyright claim against them.[5]

24

25       [4] Again the relations-back principle would also seem to render its claim timely
26  if it were filed as an amended answer (the original having been filed in May, 2005) in
   the 05-2727 case.

27       [5] MGA also argues that Mattel's effort to substitute MGA and its CEO, Isaac
28  Larian, for the "Doe" defendants listed in its original complaint is improper because
   Mattel knew of their identity when it filed the original complaint. The argument is

15

EXHIBIT  30

PAGE  315

1   That said, Mattel's allegation in the amended complaint as to how it is
2 seeking to lay claim to the copyright in BRATZ is disconcerting. Paragraph 26,
3 subsection a, in the amended complaint alleges that Bryant "misappropriated and
4 misused Mattel property" by "using his exposure to Mattel development programs to
5 create the concept, design and name of Bratz." (First Am. Compl. ¶ 26(a)). Such
6 "exposure" could include Bryant misappropriating the Mattel design concept in
7 TOON TEENS in drawing his inspiration for the BRATZ doll. Were Mattel's
8 copyright claim so predicated it would be barred by this Court's July, 2006, Order,
9 dismissing Bryant's declaratory judgment action. Mattel was pressed on this point
10 during oral argument and conceded that such "exposure" to Mattel "development
11 programs" did not include TOON TEENS. With this representation, nothing in
12 Mattel's proposed copyright claim is barred under the rubric of bad faith.

13  5. Judicial Economy Considerations

14   In his opposition, Bryant adds an additional reason for denying leave beyond
15 those contained in MGA's papers — the amendment would muddy the waters in the
16 04-9059 by adding "tangential" issues that would only serve to delay resolution of
17 the key issue lying at the heart of the complaint: Who owns the rights to the
18 BRATZ line of dolls. (Bryant Opp. at 2 ). Bryant notes that the case has proceeded
19 apace in moving toward resolving that issue, and the amendment would "transform

---

21 misplaced. As made clear by Mattel, California law allows a plaintiff to substitute in a
22 defendant for a "Doe" if the plaintiff was ignorant of that defendant's identity or
23 ignorant of the basis for liability at the time the complaint was filed. See Miller v.
 Thomas, 121 Cal.App.3d 440 (1981). MGA does not dispute this legal contention
24 but at oral argument disputed that Mattel did not know the basis for liability against
 itself or Mr. Larian due to the "uncanny" similarity between the allegations averred in
25 the original complaint and those now proffered against the two in the amended
 complaint. Specifically, MGA notes that the original complaint spoke of Bryant
26 working for one of Mattel's competitiors and of that employee's theft of Mattel's
 intellectual property before leaving to work for that competitior. At most, all this
27 shows is that Mattel knew that Bryant went to work for MGA, not that MGA or Mr.
28 Larian encouraged Bryant's alleged unlawful behavior recited in the original
 complaint.

16

EXHIBIT___30
PAGE____316

● ●

1 what Mattel has always claimed was a straightforward employment action against
2 an individual defendant into a global commercial dispute against Mattel's primary
3 competitor, MGA," that "will last years" thereby "delay[ing]" resolution of who owns
4 BRATZ.[6] (Bryant Opp. at 2). Mattel argues that "the law does not deny leave to
5 amend because claims are 'tangential'" and then reiterates its point that some
6 showing of prejudice, namely, seeking leave after expiration of discovery, is
7 necessary. (Reply to Bryant Opp. at 3). That is not entirely correct.

8 As noted previously, the Ninth Circuit recently upheld a denial for leave to
9 amend because the amendment would have "drastically changed" the litigation,
10 even though the leave request was tendered before the time, as set forth in a Rule
11 16(b) pre-trial scheduling order, for filing a motion to amend had expired and well
12 before the discovery cut-off. See AmerisourceBergen Corp. v. Dialysist West, Inc.,
13 465 F.3d 946, 953 (9th Cir. 2006). In justifying its reasoning the Ninth Circuit cited
14 approvingly to the following statement from a well-respected treatise: "If an
15 amendment substantially changes the theory on which the case has been
16 proceeding and is proposed late enough so that the opponent would be required to
17 engage in significant new preparation, the court may deem it prejudicial." Id. at 953
18 n.2 (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE,
19 FEDERAL PRACTICE AND PROCEDURE § 1487 (2nd ed. 1990)). Thus, Dialysist
20 recognized that the introduction of "different legal theories" and/or proof of
21 materially different facts well into the litigation can itself be a basis for finding
22 prejudice regardless of whether the period for discovery has expired (or is even
23 close to expiring) or the parties have already filed summary judgment motions. Id.
24 at 953-54.

25 Although the parties can safely be said to be at this point well into the

26

27 ⁶ Bryant also brings intricate legal arguments about the sufficiency of the
28 allegations Mattel has averred in building its RICO claims against him. Such
considerations are best left to be resolved on a properly filed motion to dismiss.

EXHIBIT ___30___ 17

PAGE ___317___

1  litigation in this consolidated action (as evidenced by the protracted discovery

2  disputes contained in the docket sheet that the parties have had before the

3  magistrate judge and now the special master, and the litigation of motions to

4  dismiss in both the 04-9049 and 04-9059 cases), the fact remains that, as Mattel

5  has made painfully clear in its papers, no scheduling order has been entered in this

6  case.[7] This takes away somewhat from the prejudice Dialysist found to exist when

7  a "drastic change [in a party's] litigation theory" takes place mid-stream in the

8  litigation process. Id. at 953. Simply put, without a schedule for the filing of pre-trial

9  motions and other matters (e.g., discovery cutoff), the parties have been given free

10  reign in how to conduct the litigation in this case.

11  That the delay in bringing the proposed amendments and the relative length

12  of time into the litigation when those amendments were brought may not neatly fold

13  into Dialysist's reasoning does not mean that leave must nonetheless be granted.

14  The 04-9059 action, as it is presently constituted, is not a complex one. It asks a

15  rather narrow and straightforward question — Did anything from Bryant's

16  employment at Mattel during the 1999-2000 period give Mattel ownership rights to

17  the BRATZ doll line? The proposed amendments would radically alter the litigation

18  in that case to include far ranging disputes involving multiple parties and concerning

19  events not connected with the BRATZ ownership issue. That the original action

20  was a relatively simple and straight-forward matter raises another point beyond the

21  change in the action's litigation posture — whether entangling the rival doll makers'

22  other commercial disputes into this particular case would serve to muddy the waters

23  and make the matter that much more difficult to manage from the Court's

24  perspective.

25

26      [7] Mattel's repeated refrain that the matter is in its nascent stage as evidenced
by the fact that the parties only just recently exchanged in initial disclosures is

27  misleading. The exchange of initial disclosures referred to by Mattel is in the 05-
2727 case. With respect to the 04-9059 case it appears that such initial disclosures

28  were completed long ago as evidenced by the fact that discovery disputes appeared
in that case as far back as January, 2005.



18

EXHIBIT _____30_____

_____318_____

PAGE _____

1    As has long been recognized, equally important in determining whether to

2  grant such leave is what impact such amendments would have on the court's ability

3  to manage the case. See 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE

4  § 15.15[1] at 15-42.1 to 15-43 (3rd ed. 2006)("A court should also consider judicial

5  economy and its ability to manage the case. . . . The court should also temper the

6  policy favoring freely granting leave to amend with consideration of the ability of the

7  district court to manage the case adequately if amendment is allowed"). As Judge

8  Clark for the Fifth Circuit once observed: "In keeping with the purposes of the rule,

9  the court should consider judicial economy and whether the amendments would

10  lead to expeditious disposition of the merits of the litigation. Finally, the court

11  should consider whether the amendment adds substance to the original allegations,

12  and whether it is germane to the original case of action." Chitimacha Tribe of

13  Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982); see also

14  Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1493 (9th Cir.

15  1987)("General considerations of judicial economy also justify allowing the

16  amendments. The violations included in the proposed amendment relate to the

17  same subject matter as the original complaint. Allowing the amendment will further

18  the federal policy of 'wrapping in one bundle all matters concerning the same

19  subject matter.'").

20    Mattel's amendments do not add substance to the claims contained in its

21  original complaint. Rather, they would expand the universe of claims and

22  defendants stretching well-beyond the questions raised in the original complaint

23  over whether Bryant's conduct while in the employ of Mattel subjected his later

24  attributed creation of the BRATZ dolls to the provisions in Mattel's Inventions

25  Agreement or otherwise rendered his creation subject to an infringement action.

26  Nowhere does Mattel seek to reconcile the breadth of its present amendments with

27  the narrowness of the allegations contained in its original complaint. In fact, the

28  precise opposite is true. Mattel acknowledges that its proposed amendments bear

19

EXHIBIT ____30____

PAGE ____319____

1   more congruity to the allegations leveled against it in MGA's Lanham Act case than

2   to those in the action to which it seeks to add them:

3
4           [M]any of the matters raised by Mattel's proposed
            Amended Complaint are and will remain at issue
5           because of MGA's Complaint, whether or not leave to
            amend is granted. MGA's claims allege that a broad
6           array of purported Mattel conduct across the globe,
            starting at least as early as 1999, has violated the
7           Lanham Act and unfair competition law. This includes
            Mattel's alleged infringement of Bratz and other MGA
8           products. As a result, issues in the proposed Amended
            Complaint are already part and parcel of Mattel's
9           defenses to MGA's unfair competition claims, including
            because they show that MGA and Bryant, and not
10          Mattel, are ones who stole the products and other
            properties involved.

11  (Reply to Bryant Opp. at 7 (emphasis added)).  Mattel apparently finds this

12  discongruity unimportant because "all of these matters have been consolidated with

13  the Bryant case." (Id. at 7).  As noted earlier, the fact that the cases have been

14  consolidated does not mean that the parties can ignore the distinctions that still

15  exist between them.  If, as Mattel acknowledges, the present amendments are

16  nothing more than re-formulated defenses and counterclaims it presently has to

17  MGA's complaint against it in the 05-2727 case, then such amendments should be

18  brought in the form of an amended answer and counterclaim in that case.

19          Consideration of the distinctions between the two cases is wise as it serves

20  as a useful tool in providing the Court a better means to manage the cases now

21  that they have been consolidated.  The proverbial dog (ownership in BRATZ)

22  should be wagging the proverbial tail (the remaining commercial disputes), not the

23  other way around.  Admittedly, the dog's tail has grown in size both by MGA's filing

24  of its complaint in the 05-2727 action and Mattel's response thereto through its

25  proposed amendments.  Nonetheless, it is readily apparent to the Court that the

26  crown jewel in this action still remains the ownership rights to the BRATZ dolls.  The

27  parties have engaged in extensive and undoubtedly expensive discovery on this

28  very issue (from hiring world-renowned experts to test the age of Bryant's design

20

EXHIBIT _____30_____

PAGE _____320_____

1 drawings to technically complex discovery of what is on each other's computers).

2     Indeed the separateness of the two matters is reflected in how the cases are

3 currently structured, namely, the narrowness of the issue involved in 04-9059 and

4 the expansiveness of the facts at issue in 05-2727. In light of this fact, the Court

5 believes a two-track scheduling order wherein the 04-9059 matter's discovery cut

6 off and trial date are set well-ahead of those in 05-2727 makes the most sense. As

7 noted earlier, many of the legal claims being pressed in 05-2727 will be affected by

8 the result of the litigation in 04-9059. If, for instance, Mattel does own the rights to

9 the BRATZ dolls (either owing to Bryant's stealing his idea from one of Mattel's

10 "development programs" or by way of the Inventions Agreement because he

11 continued to work on his designs while at Mattel), then large portions of MGA's

12 Lanham Act infringement claims may become moot. By the same token, if Mattel

13 does not own rights to BRATZ, then some of the defenses and counterclaims set

14 forth as independent claims in the present amended complaint may become moot,

15 including Mattel's copyright infringement claim as well as portions of its remaining

16 RICO, misappropriation, and aiding and abetting claims. If, however, the Court

17 were to allow the amended complaint to be filed in the 04-9059 action, such case

18 management would be difficult, if not impossible as many of the issues being

19 litigated in the 05-2727 case would have been poured into the 04-9059 case by the

20 amendment. Due to this substantial overlap in claims and facts, a two-track

21 scheduling order utilizing the case number distinctions would be impossible to craft.

22 When pressed by the Court at oral argument as to which of its proposed claims it

23 believed would not undermine the BRATZ ownership posture of the 04-9059 case,

24 Mattel cited to its copyright and RICO claims. However, upon further questioning

25 by the Court, counsel for Mattel acknowledged that much of those claims were, like

26 the claims at issue in 05-2727, dependent upon resolution of the ownership issue.

27     In light of the burden allowing Mattel's amendment to proceed would have on

28 this Court's ability to efficiently manage these consolidated matters denial of



21

EXHIBIT __30__

PAGE __321__

1  Mattel's request to amend its complaint in the 04-9059 matter is justified. <u>See</u>
2  <u>Perrian v. O'Grady</u>, 958 F.2d 192, 195 (7th Cir. 1992)("The burden to the judicial
3  system can justify a denial of a motion to amend 'even if the amendment would
4  cause no hardship at all to the opposing party'"). Buttressing the Court's decision is
5  the fact that, even with such a denial, Mattel may file (and the Court provides leave
6  to Mattel to so file) an amended answer and counterclaim in the 05-2727 case
7  raising all the new claims and defendants presently sought to be achieved through
8  amendment of its complaint in the 04-9059 action. None of the substantive
9  concerns raised by MGA and Bryant to the present amended complaint, <u>e.g.</u>,
10 statutes of limitations, would appear to be affected if the new claims and
11 defendants were brought as defenses and counterclaims in the 05-2727 case as
12 opposed to the 04-9059 one.

13     Accordingly, the Court GRANTS Mattel's motion for leave to file its proposed
14 amendments, but only insofar as they are pled in the form of an amended answer
15 and counterclaim in the 05-2727 case.

16     Finally, the lack of a scheduling order in this case is problematic; one should
17 have been entered long ago. <u>See</u> Fed. R. Civ. P. 16(b)(noting that a scheduling
18 "order shall issue as soon as practicable but in any event within 90 days after the
19 appearance of a defendant and within 120 days after the complaint has been
20 served on a defendant"). In light of the fact that entry of a scheduling order is
21 woefully overdue in this case, the Court hereby ORDERS that a Rule 16(b)
22 scheduling conference be held in this consolidated matter on February 12, 2007, at
23 1:30 p.m. in Courtroom One. The parties are directed to file a Joint Rule 26(f)
24 report with the Court by February 5, 2007.

25     IT IS SO ORDERED.

26 DATE: _/- //- o7_

27

28                                    S. EPHEN G. LARSON
                                       UNITED STATES DISTRICT JUDGE

EXHIBIT ___30___
                        22

PAGE ___322___