QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. CV 04-09059 and Case No. CV 05-02727 |
| vs. | Honorable Stephen G. Larson |
| MATTEL, INC., a Delaware corporation, | MATTEL, INC.'S EVIDENTIARY OBJECTIONS REGARDING MGA PARTIES' STATEMENT OF POSITION REGARDING PHASE 1C ISSUES |
| Defendant. | |
| AND CONSOLIDATED CASES | Hearing Date:  November 10, 2008<br>Time:          1:00 p.m.<br>Place:         Courtroom 1 |

Mattel, Inc. ("Mattel") respectfully submits the following Evidentiary Objections Regarding MGA Parties' Statement of Position Regarding Phase 1C Issues.

Evidence submitted to the Court on motion practice must meet the requirements for admissibility of evidence if offered at the time of trial.  Beyene v. Coleman Sec. Services, Inc., 854 F.2d 1179, 1181-1182 (9th Cir. 1988); Travelers Cas. & Sur. Co. of America v. Telstar Const. Co., Inc., 252 F. Supp. 2d 917, 923 (D. Ariz. 2003).  See also Fed. R. Evid. 101 (Rules of Evidence apply to all proceedings in the courts of the United States); Fed. R. Evid. 1101 (listing exceptions to Rule 101).  Here, much of the evidence submitted in support of the MGA Parties' Statement of Position Regarding Phase 1C Issues ("MGA Parties' Statement") is inadmissible, as set forth below.

The MGA Parties refer to some evidence that the Court admitted at trial over Mattel's objections.  Mattel will not burden the Court by repeating its objections to such evidence now.  However, Mattel reserves and incorporates by reference all its prior objections to all evidence on which defendants rely.

## I.    GENERAL OBJECTIONS

In addition to the specific objections set forth below, Mattel objects generally to MGA's new evidence because it was not properly disclosed.  Mattel previously asked MGA to "[s]tate the facts upon which YOU intend to rely at trial to support YOUR affirmative defenses, and IDENTIFY all PERSONS with knowledge of those facts and all DOCUMENTS that REFER OR RELATE TO those facts."[1]  The

---

[1]    See Mattel, Inc.'s Supplemental Interrogatory Regarding Defendants' Affirmative Defenses, dated December 3, 2007 ("Mattel's Supp. Rog."), Proctor Dec. Exh. 25.

1   Court ordered MGA to comply.[2]  However, in response to Mattel's contention
2   interrogatory MGA never identified most of the purported evidence it now offers in
3   support of its affirmative defenses.  For example, MGA did not disclose that it
4   would support its laches defense with claimed evidence of Mattel employees'
5   attendance at the New York and Hong Kong toy fairs or of Wal-Mart's purported
6   receipt of drawings with Bryant's name on them.[3]  MGA also never alleged that it
7   was prejudiced for "laches" purposes because of purportedly "destroyed" evidence.[4]
8   Likewise, with respect to its estoppel and waiver defenses, MGA's responses did not
9   disclose any of the above evidence.[5]

10       Evidence not disclosed in MGA's response to Mattel's Supplemental
11   Interrogatory Regarding Defendants' Affirmative Defenses is inadmissible and
12   should be disregarded.  "A party that without substantial justification fails to
13   disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior
14   response to discovery as required by Rule 26(e)(2), is not, unless such failure is
15   harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any
16   witness or information not so disclosed."  Fed.R.Civ.P. 37(c)(1); see also Yeti by
17   Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001) (holding
18   that Rule 37(c)(1) gives "teeth" to Rule 26's requirements by forbidding the use at
19   trial or hearing of any information required to be disclosed by Rule 26(a) that is not
20   properly disclosed).  "Courts have upheld the use of the sanction even when a
21   litigant's entire cause of action or defense has been precluded."  Id.

22   _____

23   [2]   See Order Granting Motion for Leave to Serve a Supplemental Interrogatory,
24   dated December 3, 2007, Proctor Dec. Exh. 26.
25   [3]   See MGA's Response to Mattel, Inc.'s Amended Supplemental Interrogatory,
     dated January 7, 2008, at 23:27-28:25 (discussing facts supporting its laches
26   defense), Proctor Dec. Exh. 27.
27   [4]   See id.
     [5]   See id. at 40:20-45:17, 55:18-60:15.
28

## II.  <u>SPECIFIC OBJECTIONS</u>

| <u>Objectionable Factual Allegations and Evidence</u> | <u>Objection</u> |
|---|---|
| Trial Tr. at 6463:23-6464:3 (Michael Moore):<br><br>Q.   Now, prior to the time that you had this meeting with Cityworld, had you heard from any source that there was the possibility Carter Bryant had some kind of relationship with MGA during the time he was employed by Mattel?<br>A.   I think there were rumors that Carter Bryant had created Bratz. | Incomplete excerpt.  <u>Fed. R. Evid.</u> 106. Mr. Moore actually testified that the first time he heard of Bryant working on Bratz for MGA was following the publication of the Wall Street Journal article in July 2003.  Trial Tr. at 6464:3-12. |
| Trial Ex. 4900 | To the extent this document is offered for the truth of the matter asserted, it is inadmissible hearsay, as this Court has already ruled.  <u>See</u> Trial Tr. at 2030:8-2032:1; <u>see</u> <u>also</u> <u>Fed. R. Evid.</u> 801, 802.  It is also irrelevant and prejudicial.  <u>Fed. R. Evid.</u> 402, 403. |
| Trial Tr. at 6603:19-6606:19 (Moore):<br><br>(EXHIBIT 1195 IS RECEIVED.) | Incomplete excerpt.  <u>Fed. R. Evid.</u> 106. MGA omits Mr. Moore's testimony that the 2002 investigation focused on whether Carter Bryant created Bratz, |

| | |
|---|---|
| 1 | BY MR. SLOAN: |
| 2 | Q.  Sir, you said that you did review |
| 3 | this document after the litigation was |
| 4 | commenced; is that correct? |
| 5 | A.  Yeah.  I've seen the document |
| 6 | after the litigation began, yes. |
| 7 | Q.  I'd like to have you look at page |
| 8 | 66 of this document, if we could |
| 9 | publish that. |
| 10 |       By the way, have you looked at |
| 11 | these types of documents before, |
| 12 | meaning investigative reports |
| 13 | prepared by the globe security |
| 14 | department? |
| 15 | A.  No.  I mean, I may have seen |
| 16 | excerpts, but I have not looked at the |
| 17 | files before. |
| 18 | Q.  I'm not talking about this |
| 19 | particular case.  I'm talking about in |
| 20 | other cases, have you looked at -- are |
| 21 | you familiar with this type of a |
| 22 | document? |
| 23 | A.  Well, like I said, I have never |
| 24 | reviewed a full file before.  I've |
| 25 | probably seen excerpts from files, but |
| 26 | I don't keep these files; these aren't in |
| 27 | my control. |
| 28 | |

not on *when* he created it.  <u>See</u> Trial Tr. at 6606:16-6607:3; <u>see</u> <u>also</u> <u>Fed. R. Evid.</u> 106.

Irrelevant, prejudicial, lacks foundation.  <u>Fed. R. Evid.</u> 402, 403. As the Court has ruled, Mattel's 2002 investigation did not put it on notice, and is irrelevant, because it did not relate to the claims at bar.  <u>See</u> Proctor Dec. Ex. 1 (May 27, 2008 Order), at 7. Moreover, the jury found MGA fraudulently concealed the facts underlying Mattel's claims, and that Mattel was not aware of those facts at that time.  <u>See</u> Proctor Dec. Ex. 3 (Phase B Verdict Form As Given), at 8; Ex. 4 (Court's Phase B Jury Instructions As Given), at 39 (Jury Instruction No. 35).  This "evidence" is therefore irrelevant.

1   Q.  Let me direct your attention to the

2   second line, where it says 3-20, and it

3   says "met with Ivy Ross on this case

4   and discussed IP protection

5   program."

6        Do you see that?

7   A.  I see what you've highlighted,

8   yes.

9   Q.  Would you agree that appears to

10  be an entry pertaining to March 20,

11  2002?

12  A.  I suppose, yes.

13  Q.  Do you know who wrote that?

14  A.  I don't.

15  Q.  When you looked at this

16  investigative file after the litigation

17  was filed, did you look at this page?

18  A.  I don't remember this page.

19  Q.  But you looked at some portion of

20  this report.

21  A.  I did.

22  Q.  Let me direct your attention to the

23  next line, March 28, which says "met

24  with Cassidy Park to get more info on

25  the MGA issue.  She suggested

26  Carter Bryant as illustrator/former

27  employee who may have plagiarized

28

1   design of Lily Martinez and created
2   Bratz dolls for MGA."
3        Do you see that?
4   A.  Yes.
5   Q.  Does that appear to be an entry
6   that was made on March 28,
7   2002?
8   A.  It says March 28; I'm assuming
9   2002.
10  Q.  And did you review that after this
11  litigation was filed?
12  A.  Again, I really don't remember
13  this particular page.
14  Q.  So you're not saying you didn't
15  review it; you're just saying you do
16  not recall reviewing it; is that correct?
17  A.  There are so many documents in
18  this case.  I don't recall reviewing this
19  particular one.  It doesn't -- I don't
20  remember.
21  Q.  And it says "at 1500, checked
22  with hr for Bryant's file term date,
23  10-20-2000; file is at off-site storage;
24  requested it to be retrieved."
25       Do you see that?
26  A.  Yes.
27  Q.  Do you think it's fair
28

1    interpretation that that's an entry that

2    was made at 1500 hours, or 3:00

3    p.m., on March 28, 2002?

4         MR. ZELLER:  Objection as to

5    interpretation.

6         THE COURT:  Rephrase,

7    counsel.

8    BY MR. SLOAN:

9    Q.  What do you think that 1500

10   means there?

11   A.  I don't keep these files.  I mean, I

12   could speculate that it means 3:00,

13   but that's speculation.  I don't know.

14   Q.  Sir, are you aware of who Cassidy

15   Park is?

16   A.  Yes.

17   Q.  Do you have any reason to doubt

18   the accuracy of the information

19   reflected in this Mattel investigative

20   report?

21        MR. ZELLER:  Lacks

22   foundation.

23        THE COURT:  Sustained.

24        MR. ZELLER:  Privileged

25   issue.

26        THE COURT:  Sustained.

27   BY MR. SLOAN:

28

-7-

| | |
|---|---|
| Q.  Sir, if you had seen this, would you still have testified that, to the best of your knowledge, no one before you had been involved in investigating whether Carter Bryant was involved in creating Bratz in some respects? | |
| Trial Tr. at 6473:12-17 (Moore): Q.  BY MR. SLOAN:  Sir, have you been investigating for some time whether Carter Bryant is the person who designed the Bratz doll? A.  I've been looking into that since sometime in 2003. Q.  Since 2003? A.  Yes. | This is an incomplete excerpt.  Fed. R. Evid. 106.  Mr. Moore testified that he only began investigating Bryant's connection to Bratz in the Summer of 2003.  Trial Tr. at 6474:2-5.  He also testified that he first learned in late November 2003 that Bryant had worked with MGA while a Mattel employee.  Trial Tr. at 6463:13-18. |
| Nolan 04/28/08 Dec. (Dkt 3396) Exh. 113. | Hearsay.  Fed. R. Evid. 801, 802. These documents are apparently offered for their truth, and are inadmissible hearsay.

Irrelevant and confusing.  Fed. R. Evid. 401, 402, 403. The amounts MGA purportedly spent to develop BRATZ after Mattel filed its suit are irrelevant for the purposes of laches analysis, particularly absent consideration of |

| | |
|---|---|
| | MGA's <u>profits</u> from those investments.<br><br>Lacks foundation.  MGA offers no foundation for the exhibit. |
| Trial Ex. 11297. | Irrelevant, lacks foundation, confusing. <u>Fed. R. Evid.</u> 402, 403.  MGA offers no foundation for the exhibit.  The mere fact that Bratz was being offered for sale by MGA could not have and should not have led Mattel to the conclusion that Bryant had secretly conceived and created Bratz.  This argument was previously raised by MGA on summary judgment and rejected.  The MGA Parties fail to articulate any reason the Court should revisit its finding that July 18, 2003 is earliest date on which Mattel could have had any knowledge of the wrongdoing at issue in this lawsuit.<br><br>This alleged evidence should also be stricken because it was not disclosed in MGA's response to Mattel's Supplemental Interrogatory Regarding Defendants' Affirmative Defenses.  <u>See</u> General Objection. |

| | |
|---|---|
| Russell 03/07/08 Dec., Exhs. 42-43, 64. | Irrelevant, lacks foundation, hearsay, confusing, prejudicial.  Fed. R. Evid. 402, 403, 801, 802.  MGA apparently cites these documents to show that Mattel was aware of Bratz in 2001.  Even if Mattel were aware of Bratz in 2001, that did not put Mattel on notice that Bryant created Bratz while employed by Mattel.  The Court rejected MGA's assertions otherwise on summary judgment.

This alleged evidence should also be stricken because it was not disclosed in MGA's response to Mattel's Supplemental Interrogatory Regarding Defendants' Affirmative Defenses.  See General Objection. |
| Russell 03/07/08 Dec., Exhs. 65-66. | Irrelevant, lacks foundation, confusing, prejudicial.  Fed. R. Evid. 402, 403.  Even if Mattel were aware of Bratz in 2001, that did not put Mattel on notice that Bryant created Bratz while employed by Mattel.  The Court rejected MGA's assertions otherwise on summary judgment. |

| | |
|---|---|
| | To the extent the contents of these news articles are offered for the truth of the matter asserted, they are inadmissible hearsay and no exception is applicable.  Fed. R. Evid. 801, 802.  See, e.g., Doe v. Texaco, Inc., 2006 WL 2850035, at *3 (N.D. Cal. 2006) ("It would thwart the purposes of [the hearsay] rule and the interests of justice to allow newspaper articles to be entered into evidence for the truth of the matters asserted."); Green v. Baca, 226 F.R.D. 624, 638 (C.D. Cal. 2005) (newspaper articles are inadmissible hearsay).<br><br>This alleged evidence should also be stricken because it was not disclosed in MGA's response to Mattel's Supplemental Interrogatory Regarding Defendants' Affirmative Defenses.  See General Objection. |
| Russell 03/07/08 Dec., Exhs. 38-39. | Irrelevant, prejudicial, lacks foundation, confusing.  Fed. R. Evid. 402 and 403. Mattel's claims against Defendants are not based upon any similarities between Bratz and Mattel's |

1  DIVA STARZ and "Toon Teens" -- but
2  upon Bryant's conception and creation
3  of Bratz while a Mattel employee and
4  defendants' complicity in his
5  wrongdoing. <u>See</u> Proctor Dec. Ex. 1
6  (May 27, 2008 Order), at 7.  Moreover,
7  even if Mattel were aware of Bratz in
8  2001, that did not put Mattel on notice
9  that Bryant created Bratz while
10  employed by Mattel.  The Court
11  rejected MGA's assertions otherwise on
12  summary judgment.
13
14  To the extent MGA seeks to rely on
15  Mr. Hitch's statements for their truth,
16  they are inadmissible hearsay.  <u>Fed. R.</u>
17  <u>Evid.</u> 801, 802.
18
19  Finally, the evidence cited is
20  incomplete.  Mr. Romano has
21  declared—without contradiction by
22  MGA—that MGA did not inform him
23  of the facts relevant to Mattel's claims
24  and that he was unaware of Carter
25  Bryant before this suit was filed.  <u>See</u>
26  Declaration of Mateo Romano in
27  Support of Mattel, Inc.'s Consolidated
28

-12-

| | |
|---|---|
| | Opposition to Defendants' Motions for Partial Summary Adjudication, dated March 20, 2008, at ¶ 7, attached as Exhibit A to Mattel, Inc.'s Notice of Lodging in Support of Response to MGA Parties' Statement of Position Regarding Phase 1c Issues. |
| Hitch Dec. ¶ 6 (Dkt 2397):<br><br>I confronted Mr. Romano with this information on April 24, 2001. Attached as Exhibit E is a true and correct copy of an e-mail starting on April 24, 2001 from me to Mateo Romano of Mattel bearing Bates numbers MGA 03059 15- 917, which was previously attached to the Jason Russell declaration as Exhibit 39. In response to my inquiry about Mattel distributing non-competing products, Mr. Romano cited "restrictions from El Segundo" as the reason why Mattel was not interested in MGA's products. I understood the reference to "El Segundo" to be to Mattel, Inc.'s main offices, which are located in El Segundo, California. In other words, | Mr. Hitch's declaration is hearsay and lacks foundation. Fed. R. Evid. 801, 802.   His characterizations of the e-mails between himself and Mr. Romano are also improper summaries of documents which are not voluminous and speak for themselves, and violate the best evidence rule. Fed. R. Evid. 1002, 1004, 1006.   This paragraph is also argumentative and conclusory in violation of Local Rule 7-7.<br><br>See also supra at Objections to Russell 03/07/08 Dec., Exhs. 38-39. |

| | |
|---|---|
| Mr. Romano was explaining to me that he had been instructed by Mattel, Inc. not to carry products that Mattel believed were too similar to Mattel's existing or planned products. | |
| Nolan 03/24/08 Dec. (Dkt. 2789), Exh. 106. | Irrelevant and confusing.  Fed. R. Evid. 402, 403.  Even if Mattel were aware of Bratz in 2001, that did not put Mattel on notice that Bryant created Bratz while employed by Mattel.<br><br>See also supra at Objections to Russell 03/07/08 Dec., Exhs. 38-39. |
| Proctor 04/14/08 Dec. (Dkt. 3172), Exh. 97. | Lack of authenticity, lacks foundation.  Fed. R. Evid. 901.  Irrelevant and confusing.  Fed. R. Evid. 402 and 403.  The mere fact that Mattel learned that Bratz was being offered for sale by MGA could not have, and should not have, led Mattel to the conclusion that Bratz was secretly developed by Carter Bryant while he was employed by Mattel.  Nor could similarities between Bratz and Mattel's DIVA STARZ and "Toon Teens" have led to such a conclusion.  This argument was previously raised by MGA in its |

| | |
|---|---|
| | motion for summary judgment and rejected.  The MGA Parties fail to articulate any reason the Court should revisit its finding that July 18, 2003 is earliest date on which Mattel had any possible knowledge of the wrongdoing at issue in this lawsuit. |
| Russel 03/07/08 Dec. (Dkt 2578), Exhs. 30-31. | Irrelevant, confusing.  Fed. R. Evid. 402, 403.  This Court has already rejected the argument that the August 2002 anonymous letter to Mattel's CEO somehow put Mattel on notice of the claims at issue in this case.  See May 27, 2008 Order, at 2, Proctor Dec. Exh. 1; June 2, 2008 Order, at 2, Proctor Dec., Exh. 2. |
| Proctor 04/14/08 Dec. Exh. 103. | Irrelevant, confusing, lacks foundation, hearsay.  Fed. R. Evid. 402, 403, 801, 802.  The Court has already ruled that such general evidence of Mattel's business condition is irrelevant.  See Trial Tr. at 3996:1-3 ("I'm not going to permit these broad-based "House is on Fire" questions.  This is nonsense. *This is not evidence of anything*.  This is a blunderbuss attack." (emphasis added)). |

-15-

| | |
|---|---|
| | Moreover, this evidence is inadmissible because it was not disclosed in MGA's response to Mattel's Supplemental Interrogatory Regarding Defendants' Affirmative Defenses.  <u>See</u> General Objections. |
| Russell 03/07/08 Dec. (Dkt 2576) Exh. 14 (Kilpin Depo. at 168:17-23; 235:29-22):<br>Q.  It says "Barbie 2003 Status Summary."  Do you see that?<br>A.  Yes.<br>Q.  Can you read the next line for me?<br>A.  "A Brand in Crisis."<br>Q.  What brand were you referring to?<br>A.  Barbie.<br>Q.  And what did you mean by "The House is on Fire!"?<br>A.   It's the same meaning as a brand in crisis in my view. | <u>See</u> <u>supra</u> at Objections to Proctor 04/14/08 Dec. Exh. 103. |
| Proctor 04/14/08 Dec., Exh. 93. | <u>See</u> <u>supra</u> at Objections to Proctor 04/14/08 Dec. Exh. 103. |
| Proctor Dec., Exh. 94. | <u>See</u> <u>supra</u> at Objections to Proctor 04/14/08 Dec. Exh. 103. |

-16-

| Proctor Dec., Exh. 96. | See supra at Objections to Proctor 04/14/08 Dec. Exh. 103. |
|---|---|
| Russell 03/07/08 Dec., Exh. 21 (Brawer Depo. at 232:19-233:22):<br><br>Q.  What specifically have you heard Mr. Bousquette say on the topic of using litigation as a business strategy?<br>A.  Let me think about.  You're saying specifically.<br>When we would sit in staff meetings, which happened weekly and for hours and hours at end with Matt, we would review the business and the dynamics going on in the business. This would be taking place 2002, 2003, 2004.  I can't differentiate between the meetings because there were probably in that time period alone over a hundred.  But in some of the meetings we would review what our market share and situation was with girls and with Barbie and we would talk about different efforts the company was making to try and fight the loss of share of Barbie and the | See supra at Objections to Proctor 04/14/08 Dec. Exh. 103. |

| | |
|---|---|
| declining sales of Barbie. There would always be two sides in the room.  There would be the sales-oriented people: myself, Milt Zablow. We would get blamed for the fact that not every store had every doll exactly on the shelf exactly at the time and that was hurting our sales.  There was push-back from another side that would say, "Hey, the issue goes well beyond just distribution."  There was competitive issues such as Bratz that were forcing the decline of Barbie. Some of the comments around what the company was doing over and above our distribution problems were to face off with MGA with litigation as a business strategy.  That would be – it wouldn't be discussed much beyond that, but one of the strategies for trying to defeat Bratz was to litigate them to death.  To litigate the owners or to litigate MGA to death and that was one of the business strategies. | |
| Nolan 3/24/08 Decl. Vol. 1,  Ex. 77 (Cloonan) at 170:4-8 : | Irrelevant, confusing, prejudicial, and incomplete.  <u>Fed. R. Evid.</u> 106, 402, |

| | |
|---|---|
| Q.   Do you remember what the vinyl heads looked like that -- that you transported, you talked about earlier, in connection with the Toon Teens project?<br><br>A.   It's been too long. | 403.  Ms. Cloonan gave this testimony while discussing a vinyl head that was in fact marked as an exhibit and shown to her at the deposition.  <u>See</u> Cloonan Tr. at 169:13-24, Proctor Dec., Exh. 15. Nor is it clear how the vinyl head at issue has any conceivable relevance to the issues here.<br><br>This alleged evidence should also be stricken because it was not disclosed in MGA's response to Mattel's Supplemental Interrogatory Regarding Defendants' Affirmative Defenses.  <u>See</u> General Objection. |
| Nolan 3/24/08 Decl. Vol. 1, Ex. 78 (De Anda) at 152:2-6:<br><br>THE WITNESS:  As I sit here today, I do not have a recollection -- not that I did not hear it -- I don't recall ever hearing that.  That doesn't mean that I may or may not have.  As we sit here today, ten years is a long time. | Irrelevant, confusing, prejudicial, and incomplete.  <u>Fed. R. Evid.</u> 106, 402, 403.  Mr. de Anda gave was referring to the period of his employment at Mattel, not the wrongdoing underlying Mattel's claims, as evidenced by the question defendants asked:<br><br>Q.   But, again, I just want to be clear that although I'm talking about the **ten-year period of time that you've been at Mattel** -- I just want to make this |

| | |
|---|---|
| | absolutely clear -- you have no recollection of anybody coming to you in your capacity as Vice President in charge of Security or hearing that someone approached a member of your department and reported that there were people at Mattel who were copying products of other companies? You never heard that, did you?<br><br>De Anda Tr. at 151:15-24, Proctor Dec., Exh. 16 (emphasis added).<br><br>This alleged evidence should also be stricken because it was not disclosed in MGA's response to Mattel's Supplemental Interrogatory Regarding Defendants' Affirmative Defenses.  See General Objection. |
| Trial Tr. at 4122:12-4125:7; 4123:22-24; 4124:23-24 (Leahy):<br><br>Q.   BY MR. QUINN:  During the period of time that you were employed at Mattel, did you do side projects outside of Mattel?<br>A.   Yes, I did. | Irrelevant, confusing, prejudicial, and incomplete.  Fed. R. Evid. 106, 402, 403.  The Court has already excluded this testimony because Ms. Leahy confirmed that she knew non-Mattel work was not authorized by her contract.  "I didn't believe that my contract authorized me to do that." |

| | |
|---|---|
| 1 Q. For which you were paid? | Trial Tr. at 4124:23-4125:24. As the |
| 2 A. Correct. | Court accordingly ruled, "But I think to |
| 3 Q. On approximately how many | get now into evidence of moonlighting |
| 4 occasions did you do such projects? | where it's acknowledged that it's in |
| 5 A. Maybe about seven or eight. | conflict with the contract, |
| 6 Q. Did you, in connection with | notwithstanding that it may be |
| 7 those seven or eight projects, always | common, I think it gets outside the |
| 8 have the permission of your | field." Trial Tr. at 4124:18-4125:7. |
| 9 supervisor at Mattel? | |
| 10 A. I didn't necessarily have the | |
| 11 permission of him. But he told me | |
| 12 how to do it. There was a time when | |
| 13 my husband wasn't working, and we | |
| 14 didn't have a lot of money. And he | |
| 15 said well, he felt badly for me. So he | |
| 16 said here's a way you can make extra | |
| 17 money. | |
| 18 Q. And did that apply for each of | |
| 19 the jobs that you did? | |
| 20 A. No, it didn't. I didn't tell him | |
| 21 about any of the jobs that I was doing | |
| 22 at the time. He just told me how to | |
| 23 do it. | |
| 24 Q. Did you ask him for written | |
| 25 permission to do these outside jobs? | |
| 26 A. No, I did not. | |
| 27 Q. My understanding is that your | |
| 28 | |

-21-

EVIDENTIARY OBJECTIONS

1   supervisor was Michael Hebden?

2   A.   Yes.

3   Q.   And my understanding is you

4   told him about your financial

5   situation?

6   A.   Well, we were very close.  He

7   knew about it.

8   Q.   And he was your supervisor?

9   A.   Yes.

10  Q.   And he said that one way you

11  can make money is to contact

12  vendors, other vendors for extra

13  work; right?

14  A.   That's what he told me, yes.

15  Q.   And he didn't tell you a specific

16  vendor to contact?

17  A.   No, he didn't tell me a specific

18  vendor.  He said check with the

19  vendors you are working with and see

20  if they have any extra runoff work.

21  Q.   He said as far as he was

22  concerned, that's okay if you did that?

23  A.   Well, I don't know if he said that

24  verbatim.

25  Q.   He's the one who said here's what

26  you should do.  Contact these

27  vendors and get some extra work.

28

A.   Correct.

Q.   And your understanding was that your written employment agreement, under that agreement, that would have been prohibited?

A.   I knew it was considered a conflict of interest in the employment agreement.  But it was a very common thing for people to do in the toy business as well as Mattel.

Q.   But your supervisor is the one who suggested that you do it to help make ends meet; correct?

A.   He said this is a way you can do it.  He didn't --

Q.   Right.  And you didn't feel it was necessary to tell him you were doing what he said to do.

A.   Yeah, I didn't want to tell him.

     THE COURT:  Let me ask and try to cut to the chase.

     Did you understand -- you mentioned a conflict of interest.  Did you understand what you were doing, the moonlighting, the working for the other vendors, to be in conflict with your agreement with Mattel?

| | |
|---|---|
| THE WITNESS:  I knew I could lose my job over it, but it was such a common thing, that everybody did it, and at that point I was going to lose my car. | |
| THE COURT:  Again, I'm not asking for whatever rationalization you may have imposed on it.  And I'm not trying to make a moral judgment here.  Just in terms of your understanding with your contract with Mattel, did you or did you not believe that your contract authorized you to do that? | |
| THE WITNESS:  I didn't believe that my contract authorized me to do that. | |
| A.  No, he didn't tell me a specific vendor.  He said check with the vendors you are working with and see if they have any extra runoff work. | |
| THE WITNESS:  I knew I could lose my job over it, but it was such a common thing, that everybody did it, and at | |
| Anderson 3/07/08 Dec. (Dkt 2963), Exh. 22 (Leahy Depo) at 181:6- | Irrelevant and prejudicial.  Fed. R. Evid. 402, 403.  The Court has already |

182:12; 180:12-18):

Q   What other work did you do?

A   I did work for a vendor who would give me the work, and I would do it, and I didn't know who it was for.  I just did it for her.  It was her run-off work.

Q   Who was the vendor?

A.  Am I allowed to say?

MR. MC FARLAND:  Yes, you can answer.

THE WITNESS:  It was Ilana Raynes.

BY MR. ZELLER:

Q   Can you spell that, please?

A.  I-L-A-N-A R-A-Y-N-E-S.

Q   Was she -- was she a Mattel vendor at that time?

A.  Yeah.  She was a free-lance sculptor.

Q   How is it you came to become aware of her?

A.  Michael knew her somehow -- Michael Hebden.

Q   So you were introduced to her through Mattel?

A.  Yes.

excluded Ms. Leahy's moonlighting testimony because she confirmed that she knew non-Mattel work was not authorized by her contract:  "But I think to get now into evidence of moonlighting where it's acknowledged that it's in conflict with the contract, not withstanding that it may be common, I think it gets outside the field."  Trial Tr. at 4124:18-4125:7.

To the extent they are offered for the truth of the matter asserted, Ms. Leahy's out of court statements are also inadmissible hearsay to which no exception is applicable.  Fed. R. Evid. 801, 802.

1   Q   Does Ms. Raynes -- I should
2   say, at that time, was Ms. Raynes
3   living in southern California?
4   A.  Yes.
5   Q   Where?
6   A.  She lived in the Hollywood Hills
7   in two different places.
8   Q   And if I understood your
9   testimony correctly, she would have -
10  - she would hire you on to do work
11  for other companies, but you weren't
12  sure of the identity of the other
13  companies?
14  A.  Right.
15  Q   What was -- what was the kind
16  of work that you did?
17  A.  It was your standard
18  moonlighting sculpting things.
19   Did you when you were working
20  there at Mattel work for any Mattel
21  competitor?
22  A.  Yes, I did.
23  Q   Who did you work for?
24  A.  I did a free-lance job for Hanna-
25  Barbera.
26  Q   And what did you do?
27  A.  It was a Penelope pit stop.
28

| | |
|---|---|
| Anderson 03/07/08 Dec., Exh. 23 (Marlow Depo. at 48:8-11): Q.   Did you have an understanding? A.   I did not, because it was common knowledge that a lot of people were moonlighting and doing other work and on their times at their own homes and doing stuff. | Irrelevant, confusing and, to the extent it is offered for the truth of the matter asserted, inadmissible hearsay to which no exception is applicable.  Fed. R. Evid. 402, 403, 802.  Veronica Marlow could not name a single Mattel employee who worked for a competitor—with the exception of Cabrera, Morales, and Salazar, who were immediately terminated upon discovery.[6]  Indeed, the Court has already determined that "evidence" such as this is irrelevant and inadmissible:  "I'm not going to permit someone to just get up and say, 'Oh, Yeah.  I heard hearsay rumors that there's lots of moonlighting going on over at Mattel.'  That's not going to fly. It's got to be a specific incident of apples and apples that a person, in a position like Carter Bryant, is moonlighting for a company, either MGA itself or like MGA, without getting permission."  Trial Tr. at 44:23- |

---

[6]   Proctor Dec. Ex. 24  (Marlow Depo. Tr., dated December 28, 2007), at 49:12-51:8; 54:2-55:14.

| | |
|---|---|
| | 45:6. |
| Anderson 03/07/08 Dec., Exh. 22 (Leahy Depo. at 180:12-184:8):<br><br>Q.  Did you when you were working there at M.G.A.<br>-- I'm sorry.  Strike that.<br>Did you when you were working there at Mattel work for any Mattel competitor?<br>A.  Yes, I did.<br>Q.  Who did you work for?<br>A.  I did a free-lance job for Hanna-Barbera.<br>Q.  And what did you do?<br>A.  It was a penelope pit stop.<br>Q.  When did you do this?<br>A.  I don't remember.<br>Q.  Was it sometime in 2000?<br>A.  It would have been before that.<br>Q.  Your best estimate is 1999 or earlier?<br>A.  That's my best estimate.<br>Q.  Other than this instance that you mentioned for Hanna-Barbera, did you do any work for any Mattel competitor while you were working | Irrelevant, confusing, and incomplete. Fed. R. Evid. 402, 403.  The Court has already excluded this testimony because Ms. Leahy confirmed that she knew non-Mattel work was not authorized by her contract:  "But I think to get now into evidence of moonlighting where it's acknowledged that it's in conflict with the contract, not withstanding that it may be common, I think it gets outside the field."  Trial Tr. at 4124:18-4125:7.<br><br>To the extent they are offered for the truth of the matter asserted, Ms. Leahy's out of court statements and any legal statements of others are also inadmissible hearsay to which no exception is applicable. Fed. R. Evid. 802.  Her testimony also lacks foundation and is speculative to the extent it refers to alleged "moonlighting" by others. |

EVIDENTIARY OBJECTIONS

1    for Mattel?

2    A.  I did work, but I didn't know who

3    it was for all the time.

4    Q.  What other work did you do?

5    A.  I did work for a vendor who

6    would give me the work, and I would

7    do it, and I didn't know who it was

8    for.  I just did it for her.  It was her

9    run-off work.

10    Q.  Who was the vendor?

11    A.  Am I allowed to say?

12        Mr. Mc Farland:  yes, you can

13    answer.

14        The witness:  It was Ilana

15    Raynes.

16    By Mr. Zeller:

17    Q.  Can you spell that, please?

18    A.  I-l-a-n-a r-a-y-n-e-s.

19    Q.  Was she -- was she a Mattel

20    vendor at that time?

21    A.  Yeah.  She was a free-lance

22    sculptor.

23    Q.  How is it you came to become

24    aware of her?

25    A.  Michael knew her somehow --

26    Michael Hebden.

27    Q.  So you were introduced to her

28

EVIDENTIARY OBJECTIONS

1  through Mattel?

2  A.  Yes.

3  Q.  Does Ms. Raynes -- I should say,

4  at that time, was Ms. Raynes living in

5  Southern California?

6  A.  Yes.

7  Q.  Where?

8  A.  She lived in the Hollywood Hills

9  in two different places.

10  Q.  And if I understood your

11  testimony correctly, she would have -

12  - she would hire you on to do work

13  for other companies, but you weren't

14  sure of the identity of the other

15  companies?

16  A.  Right.

17  Q.  What was -- what was the kind of

18  work that you did?

19  A.  It was your standard

20  Moonlighting sculpting things.

21  Q.  What I guess I'm driving at is

22  what were the projects?

23  A.  I remember one was some Tarzan

24  things, but I don't remember the other

25  ones specifically.

26  Q.  Other than the work for Hanna-

27  Barbera that you mentioned and then

28

1  the work through Ilana Raynes was

2  there any other work that you did for

3  any Mattel competitor during the

4  time that you were employed by

5  Mattel?

6  A.  Not that I remember.

7  Q.  There might have been other

8  instances, but you're not sure?

9  A.  There might have been, but I'd

10  have to really rack my brain.

11  Q.  Did you tell other people at

12  Mattel that you were doing this?

13  A.  Yes.

14  Q.  Who did you tell?

15  A.  We all talked about it.  We all did

16  it.

17  Q.  When you say "we all did it,"

18  you're talking about the people in the

19  Sculpting Department?

20  A.  Yes.

21  Q.  Who else do you know there at

22  Mattel who was doing work for

23  competitors at the time that they were

24  employed by Mattel?

25  A.  I can't say anybody specifically

26  because nobody officially came out

27  and said anything.  We just all knew

28

| | |
|---|---|
| 1 we were all doing it. | |
| 2 Q.  Please, tell me who you spoke | |
| 3 with on that subject. | |
| 4 A.  Everybody. | |
| 5 Q.  You can't tell me the name of | |
| 6 anyone? | |
| 7 A.  Michael Hebden, Frederick | |
| 8 Jackson, Ray Moore, Joe Benet to | |
| 9 name a few. | |
| 10 Q.  Were there other names that you | |
| 11 know? | |
| 12 A.  That's all I can think of right now | |
| 13 officially. | |
| 14 Q.  When you say "officially," do I | |
| 15 have your complete testimony on | |
| 16 that, or are there other people you | |
| 17 remember by name? | |
| 18      Mr. Mc Farland:  give yourself | |
| 19 time. | |
| 20      The witness:  Okay. | |
| 21      The witness:  Carolyn Oros. | |
| 22 Gosh, even Hung Lee did it. | |
| 23      Mr. Plevan:  I'm sorry. | |
| 24      the witness:  Hung Lee.  Hung | |
| 25 Lee. | |
| 26 Anderson 03/07/08 Dec., Exh. 21 | Irrelevant, confusing, incomplete, lacks |
| 27 (Cloonan Depo. at 100:21-101:1; | foundation, speculative, and, to the |
| 28 | |

07209/2661050.6

-32-

102:12-103:23):

A.   People that worked at Mattel very often would just take extra work on the side.  What they did, I did not want to know -- have anything to do with.  But it was -- it was fairly common knowledge that people would -- the guys over in Hot Wheels called them G Jobs.

Q.   So my question is a very specific one.

Please tell us everyone who you spoke with about the fact that there was extra work being done on the side by Mattel employees for companies other than Mattel while they were Mattel employees.

A.   Okay.  Diana Troup, Cynthia Young, Margo Michelle, Kitty Black-Perkins, Janet Unalp, Debbie Meyer, Oh, Carol Spencer, Jennifer Kiernan, Bill Kelly, Steve Mcadam, Howie Jesser, Ken Smith, Bob Tomamora, Tom Hodges, Julie Ashe Nobles, my mother, Morris Batay.  I have to go through 20 years here.  So this is

extent it is offered for the truth of the matter asserted, inadmissible hearsay to which no exception is applicable.  Fed. R. Evid. 106, 402, 403, 802.  Ms. Cloonan testified that she had no knowledge of, and could not name, a *single* Mattel employee working for a competitor.  See Proctor Dec. Ex. 15 (Cloonan Depo. Tr., dated December 14, 2007), at 100:12-15; 104:10-105:16.  She testified only that she had discussed the *topic* of moonlighting with those other employees (and such conversations are clear hearsay).  Indeed, the Court has already determined that evidence such as this is irrelevant and inadmissible:  "I'm not going to permit someone to just get up and say, 'Oh, Yeah.  I heard hearsay rumors that there's lots of moonlighting going on over at Mattel.'  That's not going to fly.  It's got to be a specific incident of apples and apples that a person, in a position like Carter Bryant, is moonlighting for a company, either MGA itself or like MGA, without getting permission."  Trial Tr. at 44:23-

| | | |
|---|---|---|
| 1 | going to take a while. | 45:6. |
| 2 | Mr. McFarland:  just take your time | |
| 3 | to answer his question. | |
| 4 | The Deponent:  Bruce Ryniker, Larry | |
| 5 | Wood, Eric Ostendorf, Steve | |
| 6 | Ryniker, Melody Hansen, Anna | |
| 7 | Rhee, Carter Bryant, Joe Feldman, | |
| 8 | Janet Blaser, Bill Greening, Roxanna | |
| 9 | Powell, Ken O'leary, Lily Martinez, | |
| 10 | Cassidy Park, Ivy Ross, Joe Franke, | |
| 11 | Ann Driscoll, Robert Best, Anne | |
| 12 | Olson, Dennis Soai, Kislap | |
| 13 | Ongchangco, Nick Patean, Jerry | |
| 14 | Richardson, Spencer Davis, Bill | |
| 15 | Martinez, Barb Meyer, Larry | |
| 16 | Clayton, Dancer -- Elon Dancer, | |
| 17 | Maury Kessel, Chris Mcadam. | |
| 18 | Larue, I don't remember if that was | |
| 19 | her first or last name.  Mike Norgren, | |
| 20 | Chris Sesto, Paul Sesto, Michael | |
| 21 | Hastey, Sullivan Hastey, Mark | |
| 22 | Rigger, Jeff Fuller, Tim Lewis, Tim | |
| 23 | Correa, Doc O'Connor.  Larry -- I | |
| 24 | don't remember Larry's last name, | |
| 25 | model maker. | |
| 26 | By Mr. Zeller: | |
| 27 | Q.    I'm sorry.  Who? | |
| 28 | | |

-34-

| | |
|---|---|
| A.   I can't remember his last name. He was a model maker.  Larry -- he worked for Janet Unalp.<br>Myziue Hamilton, Joan Gaynor, Patty Gaynor, Mino Marcozamy, Mercedeh Ward, Tony Yao, Aldo Fazilli. | |
| Anderson 03/07/08 Dec. Exh. 24 (De Anda Depo. at 157:20-25):<br><br>Q.   Does your department investigate accusations that Mattel employees are moonlighting?<br>A.  We could have.  We could have but I'm not certain.  I can't recall a set of circumstances – I would say that's a very strong possibility that we have over the years. | Irrelevant and confusing, lacks foundation, speculative.  Fed. R. Evid. 402, 403.  Mr. de Anda testified that there was "a very strong possibility" that investigations had occurred, which does not support MGA's assertion that Mattel tolerates moonlighting.  In any case, such generic testimony, not tied to evidence of specific violations that went unremedied, is irrelevant:  "I'm not going to permit someone to just get up and say, 'Oh, Yeah.  I heard hearsay rumors that there's lots of moonlighting going on over at Mattel.'  That's not going to fly.  It's got to be a specific incident of apples and apples that a person, in a position like Carter Bryant, is moonlighting for a company, either MGA itself or like MGA, without getting permission."  Trial Tr. at 44:23-45:6. |

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15 | Nolan 04/28/08 Dec. Exhs. 117 and 118 at 22:13-24. | Irrelevant, confusing.  <u>Fed. R. Evid.</u> 402, 403.  The documents cited do not show that Mattel has failed to produce evidence of disciplinary action against Mattel employees, and are not relevant for any other reason.  Exhibit 118 shows that Mattel was not required to supply a witness on the topic because it was overbroad and unduly burdensome.  Moreover, evidence in the record shows that disciplinary action has been taken against other employees, including Ms. Cabrera and Ms. Salazar, who also performed unauthorized work on Brat while at Mattel. |
| 16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27 | Nolan 4/28/08 Decl. Ex. 75 (Ross) at 81:20-82:13:<br><br>"Q. Did you ever make any effort to determine whether or not they had – any of the designers or creative people had part-time jobs outside? A. No, I did not.... My understanding is that no one would actively go looking."). | Irrelevant, lacks foundation, speculative, confusing.  <u>Fed. R. Evid.</u> 402, 403.  This again is not evidence of an apples to apples comparison, and is irrelevant as the Court ruled:  "I'm not going to permit someone to just get up and say, 'Oh, Yeah.  I heard hearsay rumors that there's lots of moonlighting going on over at Mattel.'  That's not going to fly.  It's got to be a specific incident of apples and apples that a person, in a position like Carter Bryant, |

EVIDENTIARY OBJECTIONS

| | |
|---|---|
| | is moonlighting for a company, either MGA itself or like MGA, without getting permission."  Trial Tr. at 44:23-45:6. |
| Trial Ex. 315. | Irrelevant and prejudicial.  <u>Fed. R. Evid.</u> 402, 403.  Mattel's consideration of the name "Brats" has no bearing on when Mattel's claims accrued. |

DATED:  October 13, 2008          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


                                                 By /s/ B. Dylan Proctor
                                                    B. Dylan Proctor
                                                    Attorneys for Mattel, Inc.