```
1              UNITED STATES DISTRICT COURT
2             CENTRAL DISTRICT OF CALIFORNIA
3                         ---
4        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING
5                         ---
6   MATTEL, INC.,           : PAGES 8285 - 8298
                            :
7        PLAINTIFF,         :
                            :
8   VS.                     : NO. ED CV04-09049-SGL
                            : [CONSOLIDATED WITH
9   MGA ENTERTAINMENT, INC.,: CV04-9059 & CV05-2727]
    ET AL.,                 :
10                          :
        DEFENDANTS.         :
11
12
13
14
15         REPORTER'S TRANSCRIPT OF PROCEEDINGS
16              RIVERSIDE, CALIFORNIA
17             FRIDAY, AUGUST 22, 2008
18             JURY DELIBERATIONS - DAY 3
19
20
21
22           MARK SCHWEITZER, CSR, RPR, CRR
             OFFICIAL COURT REPORTER
23           UNITED STATES DISTRICT COURT
             181-H ROYBAL FEDERAL BUILDING
24           255 EAST TEMPLE STREET
             LOS ANGELES, CALIFORNIA 90012
25           (213) 663-3494
```

```
 1    Appearances of Counsel:
 2
 3    On Behalf of Mattel:
 4        Quinn, Emmanuel, Urquhart, Oliver & Hedges, LLP
          By John B. Quinn, Esq.
 5           B. Dylan Proctor, Esq.
             Michael T. Zeller, Esq.
 6           Harry Olivar, Esq.
             John Corey, Esq.
 7           Diane Hutnyan, Esq.
             William Price, Esq.
 8        855 South Figueroa Street
          10th Floor
 9        Los Angeles, CA 90017
          (213) 624-7707
10
11
12    On Behalf of MGA Entertainment:
13        Skadden, Arps, Slate, Meagher & Flom LLP
          By Thomas J. Nolan, Esq.
14           Carl Alan Roth, Esq.
             Jason Russell, Esq.
15           Lauren Aguiar, Esq.
             David Hansen, Esq.
16           Matthew Sloan, Esq.
             Robert Herrington, Esq.
17        300 South Grand Avenue
          Los Angeles, CA 90071-3144
18        (213) 687-5000
19
20
21
22
23
24
25
```

| | |
|---|---|
| 1 | I N D E X |
| 2 | |
| 3 | MATTER:  JURY DELIBERATIONS DAY 3, JURY NOTE |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

1          Riverside, California; Friday, August 22, 2008

2                    3:06 P.M.

3          THE COURT:  Good afternoon, Counsel.  The Court has

4   received the following note.  Note No. 4 from the jury in

5   Mattel versus MGA.  It's a two-part question.  The first

6   question reads as follows:  "Can we find that the first

7   generation dolls violate the copyright of Mattel but that

8   subsequent generations of dolls do not violate the

9   copyright?"

10         The second question, which I'll preface by saying

11  is not understandable or understood by the Court, reads as

12  follows:  "Our dilemma, colon, appropriation of first

13  generation, $4 million profit."

14         Mr. Holmes will provide each of you a copy of this

15  note.

16         Counsel?  Just so you know, my thoughts start off

17  the answer to the first question is easy enough.  It's simply

18  a yes.  The second one I'd be inclined to indicate that the

19  court does not understand what -- it's not even clear it is a

20  question, I guess, because there's no question mark.  It's

21  just a statement.

22         MR. ROTH:  Okay.  Agreed, your Honor.  I believe

23  that the answer to the first question is yes.  I think the

24  second question may have resulted from the nature of our

25  damages presentation where we offered a -- a chart that had a

1  number of columns.

2       And that chart did not offer up apportionment

3  percentage for the first generation of dolls.  And that may

4  be where the jury is at.

5       THE COURT:  And you think that instead of the word

6  "appropriation," that they meant "apportionment"?

7       MR. ROTH:  That's what I'm assuming, obviously

8  without knowing.

9       THE COURT:  Okay.  What about the Court's proposal,

10 that I answer the first question yes, and as to the second

11 question, the Court does not understand the question.

12      MR. ROTH:  Perhaps we could ask if they meant

13 apportionment.

14      THE COURT:  But even if they meant apportionment, I

15 still don't understand the question.  Let's say we substitute

16 the word apportionment for appropriation.  What I have is

17 two, our dilemma, colon, apportionment of first generation,

18 $4 million profit.  What does that mean?

19      MR. ROTH:  Granted, your Honor, it doesn't appear

20 to be a question as opposed to a statement of a situation.

21 Again, our view would be that -- our assumption is that they

22 are talking about whether or not the apportionment concept

23 applies to the first generation.  That may go back to our

24 damages presentation, which did not offer an apportionment

25 percentage for that.

1    THE COURT: So what would you suggest the Court do?

2    If you disagree, I need some clear answers here. Do you

3    disagree with the Court's approach to say the Court does not

4    understand your second question, and if so, what alternative

5    language would you propose me sending to the jury?

6    MR. ROTH: I disagree with that and wonder if the

7    Court respectfully would ask if there's a question regarding

8    apportionment. Are you -- the question could be is the jury

9    wondering whether or not apportionment is appropriate for the

10   first generation of dolls.

11   THE COURT: Okay. Mr. Price?

12   MR. PRICE: I think the answer to the first

13   question is yes, obviously. The second question, I don't

14   think we should be trying to guess or speculate as to what

15   they are getting at. I think the Court should say we

16   don't -- I don't understand, we don't understand the second

17   question, if indeed it's a question. Or it might be just

18   saying that's why we're asking the first question.

19   Respectfully.

20   THE COURT: I do think that that is -- that was the

21   Court's initial inclination, and I think that's the better

22   way to go. First response, number one, I'm going to write

23   yes.

24   Number two, I'm going to say I do not understand

25   the question.

1     Instead of me guessing and trying to ask them is

2    this what you meant and have them come back with a yes or a

3    no and still be left not really to know what they are asking,

4    I think it's better to have them rephrase their question.

5         MR. KENNEDY:  That's what I was going to suggest.

6    Perhaps something a little less harsh than I don't know what

7    you're talking about.  The Court needs further clarification

8    or expansion.  Something other than get lost.

9         THE COURT:  I don't want to do the get lost

10   approach.  That's helpful.  The Court needs further

11   clarification regarding your second question.

12        MR. PRICE:  And the only problem is I'm not sure

13   it's a question.

14        THE COURT:  I'm not sure either.  But it's supposed

15   to be a question.

16        MR. PRICE:  How about further clarification

17   regarding number two.

18        THE COURT:  Okay.  So the way I've written it is

19   one, yes, two, the Court needs clarification regarding number

20   two.

21        That's what I'll send back to the jury.

22        Mr. Holmes, if you would provide that to the

23   marshal.  And that concludes the matter with Mattel versus

24   MGA.

25        Jury Note 5.

1 	The Court received a fifth note. I received it

2 	before four o'clock, and I was going to take a break at that

3 	time, but then I received word that the jury had already left

4 	for the weekend. So there was no point in doing so. So I

5 	appreciate your patience. I did actually provide Mr. Holmes

6 	a copy of the note to provide to you, which I trust you

7 	received. Just for the record, I will read it into the

8 	record.

9 	"In attempting to come up with a damages award

10 	regarding our verdict in Phase 1-A, what are options

11 	regarding a starting point, if any, as per the jury

12 	instructions to not rely on guesswork, conjecture,

13 	et cetera?"

14 	Then next part is crossed out. And it goes on to

15 	say: "In reference to question 1, we are struggling with

16 	this point."

17 	The Court will certainly want to hear from both

18 	counsel. My thought at this point is to simply respond as

19 	follows: "Carefully review and consider all of the Court's

20 	instructions regarding damages Instructions Nos. 36 through

21 	46, inclusive."

22 	I'll hear from counsel, though, if they have any

23 	thoughts, countersuggestions or edits, et cetera.

24 	MR. ROTH: Your Honor, Carl Roth on behalf of the

25 	MGA parties. Given that the question appears to be focused

1   on question No. 1, we think that particular attention should

2   be made --

3       THE COURT: You said on question No. 1?

4       MR. ROTH: I think the -- it's the fourth question,

5   but if you look at the sixth line down --

6       THE COURT: I see the reference to question 1.

7       MR. ROTH: Exactly. We think, and that deals with

8   the intentional interference claims.

9       THE COURT: Mr. Holmes, the verdict form, please.

10      MR. ROTH: We believe that particular focus should

11  be on the third paragraph of Jury Instruction 37, beginning

12  with Mattel must prove the amount of damages. And then in

13  addition to that, the overall instruction regarding damages,

14  which is Jury Instruction No. 36, it looks like the word

15  guesswork comes from that instruction on line 7. So our --

16      THE COURT: I'm very reluctant ever to highlight or

17  point out a particular paragraph in an instruction, Counsel.

18  I'm really reluctant to emphasize a particular paragraph of

19  an instruction. I'm more comfortable with referencing an

20  entire instruction, but the way the instructions are

21  carefully worded, I think a particular paragraph is

22  problematic.

23      MR. ROTH: Understood. It's just that it appeared

24  to us that the question would come directly from those

25  portions of the instructions.

1        THE COURT: What does the third paragraph tell

2   them? Mattel must prove the amount of damages. Mattel does

3   not have to prove the exact amount of damages. They must not

4   speculate. They got that part. They just don't know where

5   to go from there.

6        MR. ROTH: We believe the starting point is that

7   Mattel has the burden to prove the amount of damages. And

8   they must provide evidence such that the jury is not required

9   to speculate or guess in awarding damages.

10       THE COURT: Right. So you're not asking the Court

11  to give any additional instruction. You agree that we should

12  just refer to the instructions as given. You're asking the

13  Court, though, to have them focus just on that one paragraph.

14       MR. ROTH: That's correct, your Honor.

15       THE COURT: Let me hear from Mattel.

16       MR. PRICE: Well, your Honor, if we're going to

17  refer them to an instruction, I think they should get the

18  entire instruction. And we were thinking that

19  instructions -- most of the testimony in this obviously was

20  through the experts. And there are charts that are in

21  evidence that were provided by both experts.

22       So I think it would be fair to say that your

23  starting point is the evidence you heard, including expert

24  testimony and the charts of the experts which are in evidence

25  from both sides, and we would actually not object to listing

1   those charts from both sides.  And then referring them to the

2   instructions themselves, which would include, I think, 15

3   through 17 about experts and charts.

4       THE COURT:  Well, the concern I have here is

5   slightly a different take on the concern I have with

6   Mr. Roth's proposal.  I don't want to focus on a particular

7   paragraph of an instruction, and I certainly don't want to

8   focus on a particular type of evidence or piece of evidence.

9   The Court must be very careful in dealing with the jury not

10  to suggest that either damages are or are not appropriate or

11  that a particular piece of evidence is particularly important

12  or helpful in resolving that question.

13      So I'm very concerned actually with both

14  suggestions.  I understand where they are coming from.  But I

15  don't want, on the one hand, to overemphasize that.  I don't

16  want to overemphasize anything.  I just want the jury to read

17  the instructions and follow them.

18      MR. PRICE:  Well, they are obviously struggling in

19  doing that.  But I do think it's appropriate to tell them to

20  refer to the Court's instructions.  I think Instruction 37 is

21  what they are looking at.

22      THE COURT:  Mr. Roth is definitely right.  They are

23  focusing on question No. 1 at this point.  It doesn't sound

24  like they have gone too far in their deliberations.

25      MR. PRICE:  So I would say that they refer to Jury

1   Instruction 37 and that their starting point is the evidence

2   they have heard, including the evidence in both Phase 1-A and

3   1-B.

4         THE COURT: You know, I don't know what to make of

5   this. There's this line that's crossed out. Can the amounts

6   be differing. And then they crossed that out.

7         MR. PRICE: I actually think, your Honor, that

8   would be complete, it should be Instruction 37 and

9   Instruction 39, which then talks about defining that this is

10  disgorgement profits as opposed to -- well --

11        THE COURT: Anything further from MGA?

12        MR. ROTH: Just a quick question on -- point on

13  Instruction 39. It doesn't seem to be a question about the

14  concept of disgorgement, which is the subject of Jury

15  Instruction 39. We've been directed to the specific part of

16  the instruction that the jury is struggling with. We would

17  simply read back or highlight that section of the

18  instruction, which is in our view the third paragraph of

19  Instruction 37.

20        THE COURT: Okay. The Court has a new proposal.

21  Simply to tell the jury to carefully review and consider the

22  applicable instructions provided by the Court. I know that

23  doesn't give them a lot other than to say that to the extent

24  there's an answer, the answer is in the jury instructions.

25  And I'm not telling them what I think is more applicable to

1  their particular question.  It's not a particularly well

2  written question.  I am not inclined to highlight particular

3  paragraphs or particular instructions that have been

4  submitted by either side.

5       I want their focus to go back to the instructions.

6  If they can articulate a more particular concern or question,

7  they know how to do that, and they have done that before in

8  phase A, where they came out with particular questions.  This

9  is very broad based.  The question itself, the question part

10  is what are options regarding a starting point, if any?  And

11  I think the answer to what are options considered at starting

12  point would be to carefully review the instructions provided

13  by the Court and leave it at that.

14       MR. KENNEDY:  MGA is agreeable to that.

15       THE COURT:  Is there any objection to that?  I

16  understand that you both have preferences more specific in

17  nature, but is there any legal objection?

18       MR. PRICE:  No legal objection.

19       THE COURT:  From MGA?

20       MR. KENNEDY:  No, your Honor.

21       THE COURT:  Hopefully, they will go home this

22  weekend and have some rest, relaxation, recreation, come back

23  and read the instructions again and be able to move forward

24  one way or another.

25       Was there something further, Mr. Price, that you

1  going to say?
2      MR. PRICE:  No, your Honor.
3      THE COURT:  All right.  That will be what the Court
4  will write, then.  Carefully review the instructions provided
5  by the Court -- carefully review and consider the applicable
6  instructions provided by the Court.
7      Very well.  I know this is an anxious time for
8  everybody.  Try to have as good a weekend as you can.  And
9  I'll see you here Tuesday.  The jury will resume
10 deliberations at 9:00 A.M.  See you then.  Take care,
11 Counsel.
12
13      (Proceedings concluded at 4:45 P.M.)
14
15          C E R T I F I C A T E
16
17     I hereby certify that pursuant to Title 28,
18 Section 753 United States Code, the foregoing is a true and
19 correct transcript of the stenographically reported
20 proceedings in the above matter.
21     Certified on Friday, August 22, 2008.
22
23
         _____
24     MARK SCHWEITZER, CSR, RPR, CRR
       Official Court Reporter
25     License No. 10514