1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                  EASTERN DIVISION

4                      - - -

5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                      - - -

7    CARTER BRYANT, ET. AL.,        )
                                    )
8              PLAINTIFFS,  )
                                    )
9         VS.            )  NO. ED CV 04-09049
                         )  (LEAD LOW NUMBER)
10   MATTEL, INC., ET. AL.,        )
                                    )
11             DEFENDANTS.  )  EX-PARTE APPLICATIONS
     _____)  RE:  DISCOVERY
12   AND CONSOLIDATED ACTIONS,      )
                                    )
13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              RIVERSIDE, CALIFORNIA

17             MONDAY, FEBRUARY 4, 2008

18                  10:15 A.M.

19

20

21

22

23          THERESA A. LANZA, RPR, CSR

            FEDERAL OFFICIAL COURT REPORTER

24          3470 12TH STREET, RM. 134

            RIVERSIDE, CALIFORNIA  92501

25             951-274-0844

            CSR11457@SBCGLOBAL.NET


Unsigned                                    Page 1

```
 1   APPEARANCES:
 2   ON BEHALF OF CARTER BRYANT:
 3              KEKER & VAN NEST
               BY:  MICHAEL PAGE
 4              710 SANSOME STREET
               SAN FRANCISCO, CALIFORNIA  94111-1704
 5              415-391-5400
 6
     ON BEHALF OF MATTEL:
 7
               QUINN EMANUEL
 8              BY:  JOHN QUINN
               BY:  JON COREY
 9              865 S. FIGUEROA STREET,
               10TH FLOOR
10              LOS ANGELES, CALIFORNIA  90017
               213-624-7707
11
12   ON BEHALF OF MGA ENTERTAINMENT:
13              SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
               BY:  THOMAS J. NOLAN
14              BY:  CARL ALAN ROTH
               BY:  ROBERT JAMES HERRINGTON
15              300 SOUTH GRAND AVENUE
               LOS ANGELES, CALIFORNIA  90071-3144
16              213-687-5000
17
     ON BEHALF OF GUSTAVO MACHADO:
18
               OVERLAND BORENSTEIN SCHEPER & KIM LLP
19              BY:  ALEXANDER H. COTE
               300 SOUTH GRAND AVENUE
20              SUITE 2750
               LOS ANGELES, CALIFORNIA  90071
21              213-613-4660
22
     ON BEHALF OF CLOONAN, MARLOW & LEAHY:
23
               KEATS MCFARLAND & WILSON LLP
24              BY:  LARRY W. MCFARLAND
               9720 WILSHIRE BOULEVARD
25              BEVERLY HILLS, CA  90212
               310-777-3750
```

1    APPEARANCES CONTINUED:
2
     ON BEHALF OF NON-PARTY CHRISTENSEN GLASER:
3
                 CHRISTENSEN, GLASER, FINK, JACOBS,
4                 WEIL & SHAPIRO, LLP
                 BY:  SCOTT E. GIZER
5                10250 CONSTELLATION BOULEVARD
                 LOS ANGELES, CA  90067
6                310-553-3000
7
     ON BEHALF OF THIRD PARTIES ANA CABRERA & BEATRIZ MORALES:
8
                 ALLRED, MAROKO & GOLDBERG
9                BY:  RAMIT MIZRAHI
                 6300 WILSHIRE BOULEVARD,
10               SUITE 1500
                 LOS ANGELES, CA  90048
11               323-653-6530
12
     ON BEHALF OF THIRD PARTY WITNESS GENTLE GIANT STUDIOS:
13
                 BAUTE & TIDUS LLP
14               BY:  HENRY H. GONZALEZ
                 777 S. FIGUEROA STREET,
15               SUITE 4900
                 LOS ANGELES, CA  90017
16               213-630-5000
17
     ON BEHALF OF WACHOVIA:
18
                 DAVIS POLK & WARDWELL
19               BY:  NEAL A. POTISCHMAN
                 1600 EL CAMINO REAL
20               MENLO PARK, CA  94025
                 650-752-2000
21
22   ON BEHALF OF KAMI GILMOR:
23               BUCHALTER NEMER
                 BY:  JOHN PATRICK PETRULLO
24               1000 WILSHIRE BOULEVARD,
                 SUITE 1500
25               LOS ANGELES, CA  90017-2457
                 213-891-0700

1                    I N D E X

2                                    PAGE

3    HEARING.......................................    5

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        RIVERSIDE, CALIFORNIA; MONDAY, FEBRUARY 4, 2008; 10:15 A.M.

2                        -OOO-

3        THE CLERK:  CALLING CALENDAR ITEM NUMBER FIVE, IN THE

4   MATTER OF CARTER BRYANT VERSUS MATTEL, INC., AND ALSO RELATED

5   CONSOLIDATED ACTIONS, CASE NUMBER CV 04-9059.

6        MAY WE HAVE COUNSEL PLEASE STATE YOUR APPEARANCES.

7        MR. QUINN:  GOOD MORNING, YOUR HONOR.

8        JOHN QUINN, JON COREY FOR MATTEL.

9        THE COURT:  MR. QUINN, MR. COREY, GOOD MORNING.

10       MR. NOLAN:  GOOD MORNING, YOUR HONOR.

11       TOM NOLAN, CARL ROTH, AND ROB HERRINGTON ON BEHALF OF

12   THE MGA DEFENDANTS.

13       THE COURT:  GOOD MORNING, COUNSEL.

14       MR. COTE:  GOOD MORNING, YOUR HONOR.

15       ALEXANDER COTE ON BEHALF OF CARLOS GUSTAVO MACHADO.

16       THE COURT:  COUNSEL.

17       MR. MCFARLAND:  LARRY MCFARLAND ON BEHALF OF

18   NONPARTIES MS. CLOONAN, MS. LEAHY, AND MS. MARLOW.

19       THE COURT:  MR. MCFARLAND, GOOD MORNING.

20       MR. GIZER:  GOOD MORNING, YOUR HONOR.

21       SCOTT GIZER FROM CHRISTENSEN & GLASER ON BEHALF OF

22   NON-PARTY CHRISTENSEN & GLASER.

23       THE COURT:  GOOD MORNING.

24       MR. PAGE:  GOOD MORNING, YOUR HONOR.

25       MICHAEL PAGE ON BEHALF OF CARTER BRYANT.

1        THE COURT:  MR. PAGE.

2        MS. MIZRAHI:  GOOD MORNING, YOUR HONOR.

3        RAMIT MIZRAHI ON BEHALF OF NONPARTIES ANA CABRERA AND

4    BEATRIZ MORALES.

5        THE COURT:  GOOD MORNING.

6        MR. GONZALEZ:  GOOD MORNING, YOUR HONOR.

7        HENRY GONZALEZ ON BEHALF OF NONPARTY GENTLE GIANT

8    STUDIOS.

9        THE COURT:  GOOD MORNING.

10        MR. POTISCHMAN:  GOOD MORNING, YOUR HONOR.

11        NEIL POTISCHMAN FROM DAVIS, POLK & WARDWELL ON BEHALF

12    OF NONPARTY WACHOVIA CORPORATION.

13        THE COURT:  COUNSEL.

14        MR. PETRULLO:  AND GOOD MORNING, YOUR HONOR.

15        JOHN PETRULLO FROM BUCHALTER & NEMER APPEARING FOR A

16    NONPARTY WITNESS, MS. GILMORE.

17        THE COURT:  GOOD MORNING.

18        GOOD MORNING TO YOU ALL.

19        WE'RE ON CALENDAR THIS MORNING ON THE COURT'S OWN

20    ORDER TO SET THE VARIOUS EX-PARTE APPLICATIONS THAT THE COURT

21    RECEIVED FOR A HEARING.

22        THE COURT HAS RECEIVED AND REVIEWED -- ACTUALLY,

23    THERE'S SIX EX-PARTE APPLICATIONS.  ONE OF THE EX-PARTE

24    APPLICATIONS HAS A SUPPLEMENT, SO I GUESS WE CAN COUNT THAT AS

25    SEVEN.  I'LL TRY TO GET THROUGH THESE AS BEST I CAN THIS

1    MORNING.

2          I HAVE RECEIVED THE PARTIES' PAPERS.  THERE WAS A

3    REPLY WHICH CAME IN AT APPROXIMATELY 9:36 THIS MORNING; AND I

4    MENTION THIS ONLY AS KIND OF A CAVEAT TO ALL PARTIES IN THIS

5    CASE AS WE GO FORWARD HERE.  THIS WAS A REPLY SUBMITTED BY

6    MATTEL IN SUPPORT OF THEIR EX-PARTE TO COMPEL VARIOUS

7    DEPOSITIONS.

8          I KNOW THAT IT WAS ELECTRONICALLY-FILED AT 2:24 ON

9    FRIDAY, BUT THE COURTESY COPY CAME IN THIS MORNING AT 9:36.  I

10   CAN'T REVIEW A DOCUMENT, OBVIOUSLY, 25 MINUTES BEFORE A

11   HEARING, PARTICULARLY WHEN I WAS ALREADY ON THE BENCH AT 9:30,

12   ON THE SCHEDULING CONFERENCES.

13         SO IT'S JUST A CAVEAT TO EVERYBODY IN THIS CASE, THAT

14   TO THE EXTENT THAT YOU WANT ME TO READ SOMETHING BEFORE A

15   HEARING, THAT COURTESY COPY IS ALMOST AS IMPORTANT, IF NOT MORE

16   IMPORTANT, THAN THE ELECTRONIC FILING, BECAUSE THAT'S WHAT I

17   USE; THAT'S WHAT I TOOK HOME THIS WEEKEND, WERE ALL OF THE

18   COURTESY COPIES.  SO IF YOU WANT TO FILE SOMETHING ON FRIDAY

19   BEFORE A HEARING, THAT'S FINE.  BUT YOU'RE GOING TO HAVE TO

20   MAKE THAT EFFORT.  I KNOW IT'S AN ADDED EXPENSE AND IT'S NOT

21   REQUIRED TO FILE IT -- IT'S TECHNICALLY FILED, BUT IT DOESN'T

22   DO MUCH GOOD IF YOU WANT THE COURT TO ACTUALLY READ IT.

23         SO I HAVE NOT READ THAT REPLY, BUT I HAVE READ

24   EVERYTHING ELSE THAT HAS BEEN SUBMITTED.

25         AND I SAY THAT NOT TO ADMONISH, BUT JUST SIMPLY TO

1    PUT EVERYONE ON THE SAME PLAYING FIELD, THAT IN THE FUTURE --

2    BECAUSE I'M SURE, AS WE GET CLOSER TO HEARING DATES AND TRIAL

3    DATES, THAT THERE'S GOING TO BE A LOT OF THINGS FILED AND

4    YOU'RE GOING TO WANT TO GET A LOT OF STUFF BEFORE THE COURT.

5    IF YOU WANT ME TO READ IT, I NEED THAT COURTESY COPY.  THAT'S

6    WHAT'S CRITICAL.

7         WE HAVE A REINFORCED COURTESY BOX NOW FOR THAT

8    PURPOSE.

9         MR. NOLAN:  IS IT LARGER?

10        THE COURT:  IT'S LARGER AND IT'S WOOD, NOT PLASTIC.

11        I'D LIKE TO BEGIN, BECAUSE I THINK THIS MAY HELP

12   RESOLVE A NUMBER OF THESE APPLICATIONS, WITH MR. MACHADO'S

13   EX-PARTE APPLICATION, MR. MACHADO-GOMEZ'S EX-PARTE APPLICATION,

14   FOR A CLARIFICATION OF THE COURT'S JANUARY 7, 2008 ORDER.

15        AND THE CONCERN THAT MR. MACHADO-GOMEZ EXPRESSED

16   THROUGH HIS EX-PARTE APPLICATION WAS JUST BASICALLY A

17   CLARIFICATION THAT THE COURT MEANT WHAT IT SAID BACK ON

18   OCTOBER 31ST, THAT PHASE TWO CASE MANAGEMENT DATES HAD BEEN

19   VACATED AND THAT THE DATES THAT I IMPOSED WERE FOR PHASE ONE,

20   INCLUDING THE DISCOVERY CUTOFF, WHICH HAS NOW COME AND GONE.

21   AND WHAT HAS COME AND GONE IS THE DISCOVERY CUTOFF FOR PHASE

22   ONE, NOT FOR PHASE TWO.

23        I INDICATED AT THAT TIME THAT I WAS DENYING MGA'S

24   REQUEST TO DELAY OR OTHERWISE BIFURCATE DISCOVERY REGARDING

25   PHASE TWO ISSUES, AND I THINK THE REASONING FOR THAT -- AND I

1    TRIED TO ARTICULATE THIS IN MY JANUARY ORDER -- WAS THAT I DID

2    NOT WANT TO HAVE DISCOVERY BOGGED DOWN BY DISPUTES OVER WHETHER

3    OR NOT A PARTICULAR WITNESS'S OR DEPONENT'S TESTIMONY WAS PHASE

4    ONE DISCOVERY OR PHASE TWO DISCOVERY.  SO I THOUGHT IT MADE

5    SENSE, TO THE EXTENT THAT YOU WERE DOING A PHASE ONE

6    DEPOSITION, IF THAT WITNESS HAD INFORMATION RELATED TO PHASE

7    TWO, THAT YOU GATHER THAT AT THE SAME TIME.

8         THAT IS NOT TO SUGGEST THAT SOMEHOW ALL PHASE TWO

9    DISCOVERY WAS TO BE COMPLETED BY JANUARY 28TH.  SO IN MY ORDER

10   THAT I WILL ISSUE TODAY, I WILL BASICALLY, I SUPPOSE, GRANT

11   MR. MACHADO-GOMEZ'S EX-PARTE APPLICATION, TO CLARIFY THE ORDER

12   THAT THE COURT NEVER INTENDED FOR PHASE TWO DISCOVERY TO BE

13   COMPLETED BY JANUARY 28TH.

14        IN REFLECTING ON THIS, THOUGH, AND REFLECTING ON

15   WHERE WE ARE IN THE DISCOVERY -- AND, I SUPPOSE, TO KIND OF

16   GIVE YOU A PREVIEW AS TO WHERE I'M GOING WITH SOME OF THESE

17   OTHER APPLICATIONS -- THERE'S NO QUESTION THAT THE COURT WANTS

18   TO MAKE SURE ALL OF THE DISCOVERY THAT IT HAS ORDERED TO BE

19   CONDUCTED FOR PHASE ONE BE CONDUCTED AND COMPLETED.  AND I

20   CERTAINLY INTEND TO GIVE LEAVE TO BOTH PARTIES TO COMPLETE

21   WHATEVER DISCOVERY WAS ORDERED BEFORE THE DISCOVERY CUTOFF DATE

22   WITH REGARD TO PHASE ONE.

23        IT'S ALSO CLEAR TO ME, AT THIS TIME, IT MIGHT MAKE A

24   LOT OF SENSE TO STAY OR STOP PHASE TWO DISCOVERY UNTIL THE

25   PHASE ONE TRIAL IS COMPLETED.  HAVING READ THROUGH A NUMBER OF

1  THE BRIEFS OPPOSING THE VARIOUS EX-PARTE APPLICATIONS, I KNOW

2  THAT BOTH SIDES, OR ALL SIDES -- THERE'S NOT REALLY JUST TWO

3  SIDES HERE -- BUT ALL SIDES HAVE BEEN WORKING AT A FEVERISH

4  PACE, AND I APPRECIATE THE EFFORTS OF EVERYONE.  BUT I THINK

5  THAT WE HAVE TO BE REALISTIC AS WELL, AND I THINK THAT A FOCUS

6  ON -- WE'RE IN THE MONTH OF FEBRUARY NOW -- ON WRAPPING UP

7  PHASE ONE DISCOVERY SHOULD BE OUR PRIORITY.

8       I WOULD STILL WANT TO KEEP IN PLACE MY ADMONITION OR

9  DIRECTION THAT TO THE EXTENT THAT A PHASE ONE WITNESS IS BEING

10  DEPOSED AND HAS PHASE TWO INFORMATION, THAT THAT ALL BE TAKEN

11  AT THE SAME DEPOSITION.  I'M NOT CONTEMPLATING TRYING TO CREATE

12  MORE DEPOSITIONS DOWN THE ROAD BY SAYING THIS.

13       AND I THINK MATTEL CLEARLY IDENTIFIES A NUMBER OF

14  THESE WITNESSES AS CLEARLY PHASE TWO WITNESSES -- I JUST DON'T

15  THINK THAT'S A WISE IDEA, OR PRUDENT, FOR US TO BE HAVING THOSE

16  DEPOSITIONS GOING FORWARD IN FEBRUARY.  AND THERE'S A GOOD

17  NUMBER OF WITNESSES THAT HAVE BEEN IDENTIFIED BY MATTEL IN

18  THEIR PAPERS AS BEING PHASE TWO WITNESSES.

19       MY TENTATIVE THOUGHT THIS MORNING, OR OVER THIS

20  WEEKEND, IS THAT THOSE WITNESSES AND THOSE DEPOSITIONS BE PUT

21  OFF UNTIL WE'RE DONE WITH THIS PHASE ONE TRIAL, SO THAT WE CAN

22  FOCUS ALL OF THE RESOURCES -- AND ADMITTEDLY, THERE'S A LOT OF

23  RESOURCES -- BUT FOCUS THE RESOURCES ON FINISHING UP PHASE ONE

24  DISCOVERY.

25       SO THOSE ARE MY TENTATIVE THOUGHTS, I SUPPOSE, WITH

1    RESPECT TO MR. MACHADO-GOMEZ'S APPLICATION.  I WILL WANT TO

2    HEAR BRIEFLY FROM BOTH SIDES, IF THERE ARE ANY THOUGHTS OR

3    REACTIONS.

4        I'M TRYING TO THINK OF ALL OF THE UNINTENDED

5    CONSEQUENCES OF MAKING THIS MOVE, AND PRECISELY BECAUSE THEY'RE

6    UNINTENDED, I'M SURE I CAN'T CONTEMPLATE THEM; SO I HAVE TO

7    RELY ON COUNSEL TO ALERT ME TO ANY PROBLEMS IN GOING DOWN THIS

8    ROAD AT THIS POINT.

9        I DO RECOGNIZE, OF COURSE, THERE'S A DANGER OF A

10   DISPUTE OVER WHAT'S A PHASE ONE WITNESS AND WHAT'S A PHASE TWO

11   WITNESS.  I'VE GOT TO BELIEVE, THOUGH, THAT YOU'RE AT A POINT

12   IN THIS CASE WHERE YOU CAN IDENTIFY BETWEEN THE TWO.  IF IT'S

13   MIXED, THEN IT GOES FORWARD.  BUT IF IT'S JUST CLEARLY A PHASE

14   TWO WITNESS, I JUST CAN'T THINK OF A COMPELLING NEED TO BUSY UP

15   OUR TIME AT THIS POINT WITH THOSE WITNESSES.

16       NO ONE IS FORFEITING ANY RIGHT TO TAKE THOSE

17   DEPOSITIONS.  YOU ALL NEED TO BE HAVING PLENTY OF LEAVE TO DO

18   WHATEVER DISCOVERY IS NECESSARY IN PHASE TWO, ONCE WE GET

19   THROUGH OUR PHASE ONE TRIAL, WHICH IS SCHEDULED TO BEGIN IN

20   MAY; BUT I JUST WANT US TO BE REALISTIC AS WE GO FORWARD.

21       SO I'LL HEAR WHOMEVER WISHES TO GO FIRST ON THIS.

22       MR. QUINN?

23       MR. QUINN:  GOOD MORNING, YOUR HONOR.

24       THERE'S TWO EX-PARTES THAT THE COURT HAS THAT DEAL

25   WITH DEPOSITIONS, AND I THINK I CAN ADDRESS BOTH OF THOSE

1    TOGETHER.  AND I THINK THERE ARE, OBVIOUSLY, SOME ISSUES THAT

2    THE PARTIES HAVE.  THE GOOD NEWS IS THAT IN THE WEEK ENDING

3    JANUARY 28TH, THE PARTIES TOOK AND DEFENDED 27 DEPOSITIONS.  WE

4    DID NOTICE ALL OF THE DEPOSITIONS THAT WE GOT LEAVE TO TAKE

5    PURSUANT TO THE COURT'S JANUARY 7TH ORDER.

6           THE ORDER INDICATED -- FRANKLY, IT WASN'T ENTIRELY

7    CLEAR TO THE LAWYERS WHAT THE COURT'S INTENTIONS WERE ABOUT THE

8    CUTOFF DATE, TO THE EXTENT THEY CAN BE COMPLETED BY

9    JANUARY 28TH UNLESS THERE'S A STIPULATION.  THAT SORT OF LED TO

10   SOME MISUNDERSTANDINGS OR DISAGREEMENTS BETWEEN THE LAWYERS,

11   WHICH I THINK I CAN SUMMARIZE FOR THE COURT.

12          THE DISAGREEMENTS SORT OF FALL INTO A TOTAL OF SEVEN

13   CATEGORIES.  FIRST, THERE ARE PERSONS, PARTIES, THIRD-PARTY

14   DEPONENTS, WHO ARE IDENTIFIED IN THE JANUARY 7TH ORDER WHO WE

15   NOTICED AND WE SUBPOENAED; AND THEY ASKED, FOR REASONS OF THEIR

16   OWN, THAT THE DEPOSITIONS BE TAKEN AFTER JANUARY 28TH; THAT

17   THEY BE TAKEN IN FEBRUARY.

18          SO THERE'S AN ISSUE OF, DO WE HAVE PERMISSION TO DO

19   THAT?

20          IT'S REALLY FOR THE CONVENIENCE OF THE THIRD PARTIES.

21   THEY WERE DULY NOTICED AND SERVED WITH SUBPOENAS.  WE THOUGHT

22   IT WAS APPROPRIATE TO GO AHEAD AND DO THOSE IN FEBRUARY.  BUT

23   AT THIS POINT, WE DON'T REALLY HAVE A STIPULATION FROM THE

24   OTHER SIDE THAT IT'S OKAY TO DO THAT.

25          SO THAT'S ONE SORT OF CATEGORY.

1        ANOTHER CATEGORY ARE PEOPLE -- AND THERE ARE FOUR OF

2    THESE -- WHO TURN OUT TO BE OUT OF THE COUNTRY, ONE IN CANADA

3    AND THE OTHER THREE IN HONG KONG, WHERE WE ARE PROCEEDING BY

4    LETTERS ROGATORY.  AND THAT TAKES A LITTLE LEAD TIME.  AND IT

5    WAS NOT POSSIBLE, FOR THAT REASON, TO GET THOSE DONE BY

6    JANUARY 28TH.

7        SO THERE'S AN ISSUE OF, IS IT OKAY TO CONTINUE DOWN

8    THAT PATH AND COMPLETE THOSE, EVEN THOUGH IT WOULD BE DONE

9    AFTER JANUARY 28TH?

10        THE COURT:  WITH RESPECT TO THOSE THREE OUT OF THE

11    COUNTRY, IN YOUR VIEW, WOULD YOU DESCRIBE THOSE AS PHASE ONE OR

12    TWO OR MIXED?

13        MR. QUINN:  THE ONE IN CANADA, I WOULD SAY, IS PHASE

14    TWO; THE THREE IN HONG KONG ARE PHASE ONE, YOUR HONOR.

15        THE COURT:  VERY WELL.

16        MR. QUINN:  THE THIRD CATEGORY ARE PEOPLE, FOLKS, WHO

17    ARE COVERED BY THE JANUARY 7TH ORDER BY NAME.  WE NOTICED THEM

18    AND WE'VE BEEN TRYING TO SERVE THEM WITH SUBPOENAS AND HAVE NOT

19    BEEN SUCCESSFUL.  WE'VE DETAILED OUR EFFORTS ON THAT IN THE

20    PAPERS.  WE JUST NEED A LITTLE MORE TIME TO SERVE THOSE PEOPLE.

21        THESE INCLUDE, BY THE WAY, AN ATTORNEY,

22    UNFORTUNATELY, MR. MCFARLAND, WHO WE THINK HAS BEEN AVOIDING

23    SERVICE.  WE'VE TRIED TO SERVE HIM.  WE'VE LEFT MESSAGES.  WE

24    FINALLY SENT HIM AN E-MAIL SAYING, 'WE HAVE A SUBPOENA FOR YOU,

25    SIR.  COULD YOU PLEASE CALL US AND LET US KNOW WHEN IT WOULD BE

1   CONVENIENT TO ACCEPT THAT.'  WE KNOW HE OPENED THAT E-MAIL

2   MESSAGE, BUT HE HAS NOT RESPONDED.  AND HIS CLIENTS AS WELL.

3   SOMEHOW WE HAVE NOT BEEN ABLE TO TRACK DOWN -- WE HAVE NOT BEEN

4   ABLE TO SERVE HALPERN, ARANT, AND PETER MARLOW, WHO HE

5   REPRESENTS; SO THERE'S A CATEGORY THERE.

6           THE LIST OF THESE PEOPLE WHO WE CLEARLY COVERED BY

7   THE JANUARY 7TH ORDER BY NAME, WE NOTICED THEM, WE'VE HAD

8   SUBPOENAS OUT AND HAVE NOT BEEN ABLE TO SERVE THEM; THAT'S

9   MCFARLAND, WARD, HALPERN, ARANT, MARLOW, SALEMNIA, ABUNDIS, AND

10  WITSCHELL.

11          THEN THERE ARE TWO INDIVIDUALS WHO, THERE'S A DISPUTE

12  ABOUT WHETHER THEY'RE COVERED BY THE JANUARY 7TH ORDER.  THEY

13  ARE REFERRED TO BY NAME IN THE PAPER.  THIS IS GRONICH, DAPHNE

14  GRONICH; AND JOE TIONGCO.

15          WHAT WE NEED THE COURT'S HELP ON IS A CONSTRUCTION OF

16  THE ORDER.  THE COURT'S ORDER AT ONE POINT SAYS THAT MATTEL HAS

17  MADE A SHOWING, BECAUSE OF THE DOCUMENT RETENTION ISSUES, THAT

18  THESE DEPOSITIONS SHOULD BE TAKEN.  AND THE COURT GRANTED THE

19  MOTION -- THERE'S A POINT IN THE ORDER WHERE THE COURT SAYS THE

20  MOTION IS GRANTED EXCEPT FOR ADDITIONAL TIME WITH

21  CARTER BRYANT.

22          WE UNDERSTOOD THAT SINCE GRONICH AND TIONGCO ARE THE

23  ONLY PEOPLE WHO HAVE ANYTHING TO DO WITH DOCUMENT COLLECTION

24  AND RETENTION, THAT WE HAD LEAVE TO TAKE THEIR DEPOSITIONS.

25          IT'S MGA'S VIEW THAT SINCE THE COURT'S ORDER REFERRED

1    TO, AT ONE POINT, TWO PAGES IN OUR MOTIONS WHERE THERE WERE

2    LISTS OF NAMES, AND THOSE TWO NAMES WEREN'T THERE, THAT THE

3    COURT DID NOT MEAN TO INCLUDE THEM.

4        SO I THINK I'VE HIGHLIGHTED THE ISSUE THERE.

5        FROM OUR STANDPOINT, THE COURT ELSEWHERE SAID,

6    "MOTION GRANTED, EXCEPT BRYANT."  THE COURT ALSO SAID BECAUSE

7    OF DOCUMENT RETENTION AND COLLECTION ISSUES, AND THEY'RE THE

8    ONLY ONES THAT KNOW ABOUT THAT.

9        THE COURT:  I UNDERSTAND YOUR POSITION, COUNSEL.

10       MR. QUINN:  ALL RIGHT.

11       THEN THERE ARE TWO FOLKS WHO ARE IN MEXICO, VARGAS

12   AND TRUEBA, AND I BELIEVE THEY WOULD BE PHASE TWO.  AND THE

13   QUESTION THERE FOR THE COURT'S DECISION -- MAYBE IF THIS IS

14   GOING TO BE PUT OFF, MAYBE THE COURT DOESN'T HAVE TO DECIDE

15   RIGHT NOW -- IS WHETHER THEY ARE MANAGING AGENTS.  BECAUSE IF

16   THEY ARE MANAGING AGENTS, THEY COULD BE COMPELLED TO APPEAR

17   SIMPLY BY NOTICE.  IF THEY'RE NOT MANAGING AGENTS, THEN WE HAVE

18   TO PROCEED UNDER MORE FORMAL PROCEDURES.  THAT ISSUE OF WHAT A

19   MANAGING AGENT IS AND WHAT THE EVIDENCE IS ON THAT HAS BEEN

20   BRIEFED FOR THE COURT, AND WE THINK THE COURT CAN DECIDE THAT.

21       I WOULD JUST NOTE THAT IN THE INITIAL DISCLOSURES, WE

22   WERE TOLD THAT THESE WERE PEOPLE WHO CAN BE CONTACTED THROUGH

23   MGA'S COUNSEL.  WE CONTACTED THEM AND SAID, 'OKAY, WE'D LIKE TO

24   TAKE THEIR DEPOSITIONS.'  WE WERE TOLD WE COULDN'T.  WE ASKED

25   FOR THEIR ADDRESSES.  WE WERE TOLD WE COULDN'T HAVE THEM.  SO

1    WE KIND OF RAN INTO A WALL THERE.

2         THE FINAL CATEGORY IS THE 30(B)(6) NOTIONS OF MGA TO

3    MEXICO AND MGA.  THOSE NOTICES WERE ATTACHED TO OUR

4    APPLICATION, AND THE COURT GRANTED PERMISSION FOR US TO TAKE

5    THOSE DEPOSITIONS.  THE COURT FOUND GOOD CAUSE TO TAKE THE

6    DEPOSITIONS.  NO OBJECTIONS WERE MADE TO THE TOPICS, THE

7    30(B)(6) TOPICS DESCRIBED IN THE NOTICES; SO IT'S OUR VIEW THAT

8    THE COURT AUTHORIZED TO GO AHEAD AND TAKE THOSE DEPOSITIONS.

9    MGA HAS STARTED A PROCEEDING BEFORE JUDGE INFANTE TO QUESTION

10   THE DEPOSITION TOPICS AND OBJECT TO THEM SORT OF AFTER THE

11   FACT.

12        SO THE ISSUE THERE IS, WAS IT TOO LATE FOR THEM TO

13   OBJECT?  BY FINDING GOOD CAUSE TO TAKE THOSE DEPOSITIONS ON

14   JANUARY 7TH, DID THE COURT INTEND THAT WE COULD GO AHEAD AND

15   TAKE THEM ON THOSE TOPICS?  OR SHOULD THERE BE THIS ANCILLARY

16   PROCEEDING BEFORE JUDGE INFANTE?

17        THE COURT:  ARE THOSE PHASE TWO OR PHASE ONE, FROM

18   YOUR PERSPECTIVE?

19        MR. QUINN:  I BELIEVE THE MGA TO MEXICO IS PHASE TWO;

20   THE 30(B)(6) TO MGA IS PARTLY PHASE ONE AND PARTLY PHASE TWO.

21        THE COURT:  ALL RIGHT.

22        NOW, THESE WERE SIX CATEGORIES.  YOU INDICATED SEVEN

23   AREAS OF DISPUTE.

24        IS THERE ANOTHER?

25        MR. QUINN:  THE SEVENTH IS SORT OF -- YOU'LL SEE IN

1   THE PAPERS -- A QUESTION MIGHT RAISE IN YOUR MIND, YOUR HONOR,

2   WHETHER LAWYERS CAN COUNT AS TO HOW MANY DEPOSITIONS HAVE BEEN

3   TAKEN.  THE ORIGINAL SCHEDULING ORDER SAID 24 DEPOSITIONS.  AND

4   IT'S MGA'S VIEW THAT WE USED UP OUR 24.  WE THINK THEY GET TO

5   THAT BY SAYING THAT THE JANUARY 7TH ORDER CUT OFF AND

6   ELIMINATED ANY UNUSED ONES THAT WE HAD AT THE TIME; SO ANY

7   UNUSED ONES, WE DON'T GET TO USE NOW.

8         THE COURT:  I UNDERSTAND.

9         MR. QUINN:  WE THINK WE HAVE TAKEN 18 DEPOSITIONS.

10   THEY SAY WE'VE TAKEN VASTLY MORE THAN -- YOU KNOW, WE USED

11   THOSE UP.

12         THE COURT:  THERE'S NO QUESTION LAWYERS CAN COUNT.

13   THE PROBLEM IS THAT LAWYERS HAVE MANY DIFFERENT WAYS OF

14   COUNTING.

15         MR. QUINN:  RIGHT.

16         I HAVE THE LIST OF THE ONES WE'VE TAKEN, YOUR HONOR.

17   TO GET OVER THE 24, THEY COUNT DEPOSITIONS WE HAVEN'T TAKEN, OR

18   ONE THAT'S BEING TAKEN AS WE SPEAK NOW, MR. LARIAN'S BROTHER,

19   FARAD LARIAN.  BUT HE WAS ALSO SPECIFICALLY LISTED IN THE

20   JANUARY 7TH ORDER.  AND THEY ALSO COUNT THE DEPOSITION OF

21   GUSTAVO MACHADO, WHO'S A PARTY TO THIS CASE, WHO WE'VE BEEN

22   TRYING TO DEPOSE SINCE LAST JUNE.  THIS IS A PARTY, AND WE

23   STILL HAVEN'T TAKEN THAT DEPOSITION.

24         THE COURT:  I'M GOING TO STOP YOU FOR A SECOND,

25   MR. QUINN, BECAUSE I WANT TO GET TO ALL OF THE EX PARTES ON THE

1    DEPOSITIONS WHICH YOU'VE JUST ADDRESSED HERE, BUT I FIRST

2    WANTED SOMEONE TO RESPOND FROM MATTEL TO THE COURT'S -- I'M

3    STILL ON MACHADO-GOMEZ'S EX-PARTE APPLICATION.

4         DO YOU HAVE A POSITION WITH RESPECT TO THE COURT'S

5    SUGGESTION THAT WE DELAY THE PHASE TWO DEPONENTS, OR

6    DEPOSITIONS, UNTIL AFTER THE PHASE ONE TRIAL, KEEPING IN MIND,

7    YOU ARE NOT -- THE COURT WILL ENSURE THAT YOU ARE NOT

8    COMPROMISING ANY OF THE LEAVE THAT'S BEEN AFFORDED TO YOU TO

9    TAKE ANY OF THESE DEPOSITIONS.  IT'S JUST SIMPLY A MATTER OF

10   TIMING.

11        MR. QUINN:  I UNDERSTAND.

12        PRINCIPALLY, YOUR HONOR, I THINK THAT'S SOMETHING

13   THAT WE CAN SUPPORT.

14        THE COURT:  DO YOU THINK THAT YOU COULD IDENTIFY,

15   WITHOUT TOO MUCH DISPUTATION, DEPOSITIONS THAT ARE PHASE TWO?

16        THAT'S WHY I WAS ASKING YOU BEFORE -- YOU SEEM TO BE

17   ABLE TO.

18        MR. QUINN:  WE WOULD CERTAINLY, YOUR HONOR, ENDEAVOR

19   TO DO THAT.  HOPE BLOOMS ETERNAL, AND I WOULD HOPE THAT WE

20   COULD DO THAT.

21        JUST TWO ISSUES.  ONE IS, ON SOME OF THESE, THERE

22   REALLY IS SOME LEAD TIME.  WE NEED TO TAKE A DEPOSITION IN

23   ORDER TO FIND OUT WHO THE THIRD PARTIES ARE; WHAT YOUR PHONE

24   NUMBER WAS, WHERE YOUR BANKING WAS; THAT ALL TAKES SOME TIME,

25   TO SERVE THOSE THIRD-PARTY SUBPOENAS.

1        WE HAVE GOT THIRD PARTIES, YOU KNOW, BANKS, THAT

2    APPEARED THIS MORNING, BECAUSE WE FINALLY GOT SOME INFORMATION

3    SO WE COULD SERVE THE SUBPOENA ON A BANK; THAT CAN TAKE SOME

4    LEAD TIME.

5        THE COURT:  I UNDERSTAND.

6        MR. QUINN:  THERE MAY BE SOME THAT WE WOULD SAY,

7    'YOUR HONOR, WE REALLY NEED THAT;' SOMEBODY WHO'S TECHNICALLY

8    PHASE TWO, WE REALLY NEED TO START THAT PROCESS EARLIER.

9        THAT'S ONE EXCEPTION.

10        THE OTHER EXCEPTION --

11        THE COURT:  LET ME STOP YOU THERE, COUNSEL, BECAUSE I

12    REALLY WANT TO MAKE SURE I'VE ADDRESSED AS MANY OF THESE

13    PROBLEMS AS I CAN.  I DON'T REALLY SEE --

14        EARLY, AS OPPOSED TO WHAT?  WE DON'T EVEN HAVE A

15    TRIAL SET FOR PHASE TWO YET, SO WE DON'T KNOW HOW MUCH TIME OR

16    HOW LITTLE TIME WE'RE GOING TO HAVE ONCE THE PHASE ONE TRIAL IS

17    OVER.

18        MR. QUINN:  RIGHT.

19        THE COURT:  IF YOU'RE SAYING THAT IT TAKES YOU THREE

20    MONTHS TO SECURE THE INFORMATION THAT YOU NEED, WE CAN PROBABLY

21    ACCOMMODATE THAT IN OUR PHASE TWO TRIAL.

22        MR. QUINN:  WELL, I RAISED IT BECAUSE I DON'T KNOW

23    THE COURT'S THINKING.  WE DON'T HAVE A TRIAL DATE.  IT'S JUST A

24    CAUTION THAT GOES OFF.

25        THE OTHER IS MR. MACHADO, WHO WE'VE BEEN TRYING TO

1    DEPOSE.  HE'S PHASE TWO.  HE'S A PARTY TO THIS CASE.  WE'VE

2    BEEN TRYING TO DEPOSE HIM SINCE JUNE.  WE HAD SEVERAL DAYS.

3    HIS LAWYER, AFTER GIVING US DATES, CANCELLING, GIVING US DATES,

4    CANCELLING, GAVE US A DATE IN JANUARY; AND MGA CANCELLED IT.

5    WE FINALLY GOT A DATE.

6          HE NOW SAYS HE WILL APPEAR ON FEBRUARY 27TH.  AND

7    GIVEN THE LONG ROAD THAT WE'VE HAD TO GO TO GET TO THIS POINT,

8    THAT'S ONE THAT WE REALLY WOULD LIKE TO DO.

9          THE COURT:  WELL, CERTAINLY, MR. MACHADO-GOMEZ IS

10   GOING TO SIT FOR HIS DEPOSITION.  IF HE HAS TO SIT FOR IT IN

11   THIS COURTROOM, HE'S GOING TO SIT FOR HIS DEPOSITION IN THIS

12   CASE.  THAT'S NOT A QUESTION.  THE QUESTION IS TIMING.

13         IS THERE ANY REASON WHY HE HAS TO SIT FOR HIS

14   DEPOSITION BEFORE THE PHASE ONE TRIAL?

15         MR. QUINN:  NO.

16         THE COURT:  OKAY.

17         I UNDERSTAND THE PROBLEM.  IF YOU CONTINUE TO HAVE

18   THOSE PROBLEMS, WE CAN ADDRESS THAT, BUT I WANT TO --

19         DOES ANYONE ELSE WISH TO ADDRESS THE COURT ON ITS

20   RESOLUTION TO THIS FIRST EX-PARTE APPLICATION AND THE PROPOSAL

21   TO PLACE PHASE TWO DEPOSITIONS, BASICALLY A STAY ON THAT, AT

22   THIS POINT, FOR EXCLUSIVE PHASE TWO DEPOSITIONS?

23         I REALLY HOPE THERE'S NOT GOING TO BE ANY

24   MISUNDERSTANDING OR NEED FOR CLARIFICATION AS TO WHAT I MEAN BY

25   THAT.  I'M TALKING ABOUT WITNESSES LIKE MR. MACHADO-GOMEZ, WHO,

1   FROM MY UNDERSTANDING OF WHAT HE HAS TO SAY AND WHAT HE

2   CONTRIBUTES TO THIS, IS REALLY A PHASE TWO WITNESS.

3       MR. NOLAN:  YOUR HONOR, ON BEHALF OF MGA AND

4   ISAAC LARIAN, WE DO NOT DISPUTE THAT APPROACH.  THAT IS

5   ACTUALLY HOW WE INTERPRETED THE COURT'S ORDER WHEN IT WAS

6   ISSUED ON JANUARY 7TH.  SOME OF THE DIFFICULTY THAT WE'VE HAD

7   IN THIS CASE HAS BEEN TRYING TO GET ALL SIDES TO AGREE TO IT.

8       I'M NOT GOING TO GO INTO THE OTHER ISSUES RIGHT NOW.

9   I AGREE WITH RESPECT TO MR. MACHADO.  BUT I DO WANT TO SAY

10  SOMETHING ABOUT ONE THING.

11      TO THE EXTENT THAT WE WERE CALLED OUT FOR CANCELLING

12  MR. MACHADO'S DEPOSITION, I THINK THE PAPERS MADE IT QUITE

13  CLEAR THAT JACK DICANIO, WHO WAS ASSIGNED TO HANDLE THE MATTER,

14  WAS HANDLING A SENTENCING.  WE COMMUNICATED THAT TO COUNSEL.

15  AND FOR ANY SIDE IN THIS CASE TO TAKE ISSUE WITH CANCELLING

16  DEPOSITIONS UNILATERALLY, THEY SHOULD BE REMINDED ABOUT THE OLD

17  ADAGE, 'PEOPLE WHO LIVE IN GLASS HOUSES SHOULDN'T THROW ROCKS,'

18  BECAUSE I COULD GO ON AND ON ABOUT THE NUMBER OF CANCELLATIONS

19  AND THE --

20      THE COURT:  THERE'S NO NEED TO DO THAT, COUNSEL.  I

21  APPRECIATE THE SENTIMENT.

22      IS THERE ANYONE ELSE WHO WISHES TO BE HEARD ON THIS

23  ASPECT THAT I'M SUGGESTING RIGHT NOW?

24      MR. COTE:  WE TOTALLY AGREE WITH YOUR HONOR'S

25  SUGGESTION.  I THINK THAT'S THE RIGHT WAY TO SPLIT IT UP.

1        THE COURT:  IS THERE ANYBODY WHO DISAGREES WITH MY

2    SUGGESTION?

3        OKAY.  WELL, THAT'S GOOD.

4        THAT WILL BE THE FIRST ELEMENT OF TRYING TO RESOLVE

5    THESE VARIOUS MATTERS.

6        THE SECOND EX PARTE THAT I WOULD LIKE TO ADDRESS IS

7    THE EX PARTE BROUGHT BY MATTEL FOR A STAY OF THE DISCOVERY

8    MASTER'S JANUARY 11, 2008 ORDER GRANTING MGA'S AND BRYANT'S

9    MOTION TO COMPEL, REGARDING ALLEGED BANDYING OF 30(B)(6)

10   WITNESSES, PENDING REVIEW OF OBJECTIONS.

11       I RECEIVED THE EX PARTE FOR THE STAY.  I RECEIVED THE

12   OPPOSITION TO THE STAY.  THE COURT GRANTED A TEMPORARY STAY

13   THROUGH TODAY'S HEARING.  I ALSO HAVE THE UNDERLYING MOTION

14   WHICH SETS FORTH MATTEL'S OBJECTIONS.  I DON'T HAVE AN

15   OPPOSITION, ALTHOUGH I CERTAINLY HAVE AN INDICATION THAT AN

16   OPPOSITION WILL BE FORTHCOMING.

17       RIGHT NOW THE NOTICE DATE IS FOR MARCH 3RD.

18       THE FIRST QUESTION IS, IS THIS SOMETHING WHICH NEEDS

19   TO BE ADDRESSED NOW, OR CAN THIS WAIT?

20       MR. NOLAN?

21       MR. NOLAN:  YES, YOUR HONOR.

22       WE BELIEVE THAT IT HAS TO BE ADDRESSED IMMEDIATELY.

23       THIS HAS BEEN A MATTER THAT HAS BEEN BEFORE

24   JUDGE INFANTE SINCE BEFORE WE GOT INVOLVED IN THE CASE.  THE

25   MATTER WAS BRIEFED AND PREPARED TO BE ARGUED IN FRONT OF

1   JUDGE INFANTE IN OCTOBER, BUT BECAUSE THE PARTIES WERE TALKING

2   AND WE THOUGHT WE COULD RESOLVE IT -- WE WERE NEW ON THE BLOCK

3   AT THE TIME -- HOPE WAS GREAT AT THE TIME, IN TERMS OF WORKING

4   OUT ANYTHING IN THIS CASE; SO THE MATTER WAS PUSHED OFF.

5        JUDGE INFANTE DEALT WITH IT, RULED ON IT, ORDERED IT,

6   CAME UP WITH THE REMARKABLE FINDING THAT MATTEL HAS TO PRODUCE

7   A WITNESS MOST KNOWLEDGEABLE ON A PARTICULAR SUBJECT.

8        THEY GO TO CORE ISSUES IN PHASE ONE.

9        MATTEL, NOT ACCEPTING THAT ORDER, NOW COMES BEFORE

10  YOU ON THE NINTH DAY AND FILES WHAT WE BELIEVE IS GOING TO BE A

11  FRIVOLOUS APPEAL FROM JUDGE INFANTE.  GIVEN THE STANDARD OF

12  REVIEW THE COURT HAS IMPOSED ALREADY IN THIS CASE AND GIVEN THE

13  AMOUNT OF BRIEFING AND ATTENTION THAT JUDGE INFANTE HAS ALREADY

14  ADDRESSED TO IT, WHAT I WOULD REQUEST, YOUR HONOR, IS THIS:

15  THAT THE COURT LOOK AT THIS AS QUICKLY AS POSSIBLE.  WE WILL

16  GET OUR OPPOSITION IN --

17        THE COURT:  THAT WAS GOING TO BE MY NEXT QUESTION,

18  COUNSEL.

19        WHEN CAN YOU HAVE YOUR OPPOSITION ON FILE?

20        MR. NOLAN:  TODAY IS MONDAY.  WE'LL FILE IT ON

21  WEDNESDAY, IF WE COULD.

22        THE COURT:  ALL RIGHT.

23        MR. NOLAN:  I'D SAY TOMORROW, YOUR HONOR, BECAUSE I

24  THINK THE PAPER'S ALREADY DONE.  I JUST WANT TO MAKE CERTAIN

25  THAT I'M NOT OVERCOMMITTING TO IT.  BUT I WOULD SAY WE WOULD

1    FILE IT ON WEDNESDAY OF THIS WEEK.

2            THE COURT:  ALL RIGHT.

3            SO YOU WOULD BE ABLE TO FILE FEBRUARY 6TH.

4            HOW MUCH TIME WOULD YOU NEED FOR A REPLY, MR. QUINN

5    AND MR. COREY?

6            MR. QUINN:  COULD WE HAVE UNTIL MONDAY, THE 11TH?

7    FRIDAY?

8            THE COURT:  THE 18TH IS A HOLIDAY.  THE COURT'S IN A

9    LONG TRIAL RIGHT NOW THAT'S GOING TO TAKE TUESDAY THROUGH

10   FRIDAY OF THIS WEEK, TUESDAY AND WEDNESDAY OF NEXT WEEK.  I'M

11   SITTING BY DESIGNATION ON THE NINTH CIRCUIT THE 14TH AND 15TH;

12   AND THEN WE START ANOTHER CASE ON THE 19TH.  I REALLY HAVE TO

13   DO THESE HEARINGS ON MONDAYS, WHICH MEANS WE HAVE THE 4TH,

14   11TH, AND THE 25TH.

15           I WAS HOPING THAT MAYBE WE COULD HEAR THIS ON THE

16   11TH.

17           MR. QUINN:  WE'LL DO THE REPLY ON THE 8TH,

18   YOUR HONOR, IF THAT WORKS.

19           THE COURT:  THAT'S GREAT.

20           AND YOU'LL MAKE SURE THAT I GET THAT COURTESY COPY ON

21   THE 8TH, IF YOU WANT ME TO READ IT.

22           MR. QUINN:  YES, YOUR HONOR.  WE WOULD APPRECIATE IT.

23           THE COURT:  SO FEBRUARY 6TH WILL BE THE OPPOSITION;

24   FEBRUARY 8TH WILL BE THE REPLY; AND THEN WE'LL HAVE THE HEARING

25   ON THIS MOTION ON FEBRUARY 11TH.  AND I WILL GRANT A STAY

1    THROUGH FEBRUARY 11TH.

2         SO THAT EX-PARTE APPLICATION IS GRANTED TO THE EXTENT

3    THAT IT'S SEEKING A STAY THROUGH THE HEARING; I'M JUST

4    ADVANCING THE HEARING DATE FOR MARCH 3RD, WHICH WAS THE NOTICE

5    DATE, TO FEBRUARY 11TH.

6         LET ME NEXT DEAL WITH THE DEPOSITIONS.  THERE'S

7    REALLY, DEPENDING ON HOW WE COUNT, THREE EX-PARTE APPLICATIONS

8    HERE.  THERE'S THE ORIGINAL EX-PARTE APPLICATION TO COMPEL THE

9    APPEARANCE OF ANA CABRERA, BEATRIZ MORALES, AND MARIE SALAZAR;

10   AND THEN A SUPPLEMENT TO AN EX-PARTE APPLICATION TO INCLUDE TO

11   THAT LIST MEL WOODS.

12        AND THEN THERE IS THE EX-PARTE APPLICATION TO COMPEL

13   THE DEPOSITIONS OF DAPHNE GRONICH, JOE TIONGCO, MARIANA TRUEBA,

14   PABLO VARGAS, MGA INTERTAINMENT, MGA E DE MEXICO; AND THEN, AS

15   I'VE WRITTEN IN SHORTHAND, A BUNCH OF OTHER DEPOSITIONS AS

16   WELL; LEAVE TO TAKE THE DEPOSITIONS IN FEBRUARY OF 2008 OF

17   NUMEROUS OTHER DEPONENTS.

18        THESE ARE BASICALLY THE DEPOSITIONS THAT MR. QUINN --

19   AND THE ARGUMENTS AND THE PROBLEMS HAVE BEEN BROKEN DOWN INTO

20   KIND OF THE SEVEN CATEGORIES THAT MR. QUINN JUST SPOKE TO.

21        MY INITIAL THOUGHT ON THIS, HAVING GONE THROUGH ALL

22   OF THIS, IS THAT WE SHOULD, HOPEFULLY, FIRST OF ALL, ONLY BE

23   TAKING DEPOSITIONS NOW THAT RELATE TO PHASE ONE.  AND TO THE

24   EXTENT THAT ANY OF THESE DEPOSITIONS RELATE TO PHASE TWO,

25   NO ONE'S RIGHTS HAVE BEEN COMPROMISED, NO LEAVE IS BEING

1   WITHDRAWN, BUT THEY'RE SIMPLY GOING TO BE HANDLED AFTER THE

2   PHASE ONE TRIAL.

3          SECONDLY, TO THE EXTENT THAT MOTIONS TO QUASH OR

4   CHALLENGES TO THE SERVICE HAVE BEEN BROUGHT BEFORE

5   JUDGE INFANTE, JUDGE INFANTE HAS TO RULE ON THOSE.

6          MATTEL BROUGHT AN EX-PARTE APPLICATION FOR A

7   CLARIFICATION REGARDING THE DISCOVERY MASTER ORDER, AND THEY

8   ASKED THE COURT TO MAKE A VERY FIRM STATEMENT THAT ALL

9   DISCOVERY MATTERS, THE FIRST IMPRESSION, GO TO THE DISCOVERY

10  MASTER; AND I GRANTED THAT APPLICATION.

11         I COULD NOT HAVE USED, I DON'T THINK, CLEARER

12  LANGUAGE THAT DISCOVERY DISPUTES IN THE FIRST INSTANCE NEED TO

13  GO TO THE DISCOVERY MASTER AND NOT COME TO THIS COURT BY WAY OF

14  EX-PARTE APPLICATION.

15         SO WHAT'S GOOD FOR ONE SIDE IS GOOD FOR THE OTHER,

16  AND I THINK THAT THOSE MOTIONS TO QUASH -- LEAVE WAS AFFORDED

17  TO TAKE THE DEPOSITIONS, BUT THAT DOESN'T EVISCERATE THE NEED

18  TO PROPERLY SERVE AND PROPERLY NOTICE THOSE DEPOSITIONS.

19  THAT'S WHAT'S BEING CHALLENGED.

20         I'M NOT PASSING ANY JUDGMENT AS TO WHETHER OR NOT ONE

21  SIDE IS RIGHT OR THE OTHER SIDE IS WRONG.  BUT I THINK IF I GET

22  INTO THE BUSINESS OF DECIDING SOME OF THESE AND TAKING SOME OF

23  THEM BACK FROM JUDGE INFANTE, IT JUST CREATES A MESS, QUITE

24  FRANKLY.  AND I KNOW THERE'S A TREMENDOUS BURDEN ON

25  JUDGE INFANTE.  JUDGE INFANTE IS RECEIVING, I THINK, ADEQUATE

1   COMPENSATION FOR THE BURDEN THAT'S BEING PLACED ON HIM, AND I

2   THINK HE'S DOING A FABULOUS JOB OF MANAGING THIS.  I WILL CALL

3   HIM THIS AFTERNOON AND LET HIM KNOW THAT ANY MATTER RELATED TO

4   PHASE TWO DOES NOT NEED TO BE RESOLVED RIGHT NOW.  TO THE

5   EXTENT THAT THERE HAVE BEEN CHALLENGES MADE TO PHASE TWO

6   DEPONENTS, YOU CAN PUT THAT OFF.  THAT'S NOT TO SAY THAT HE'S

7   NOT GOING TO HAVE TO CROSS THAT BRIDGE AT SOME TIME; HE

8   CERTAINLY WILL; BUT I THINK THAT WILL FREE UP THE TIME TO

9   ADDRESS THOSE MATTERS THAT RELATE TO PHASE ONE.

10      AND THEN TO THE EXTENT THAT MATTEL OR MGA OR

11  CARTER BRYANT OR ANYBODY ELSE DISAGREES WITH THE DECISION MADE

12  BY JUDGE INFANTE, THEN THAT CAN BE BROUGHT BEFORE THIS COURT,

13  AND I WOULD CERTAINLY DO ALL THAT I CAN TO HEAR THAT ON AN

14  EXPEDITED BASIS.

15      WHAT I DON'T THINK IS PROPER FOR THIS COURT TO DO IS

16  TO START ISSUING DISCOVERY ORDERS THAT MAY OR MAY NOT CONFLICT

17  WITH EARLIER POSITIONS THAT JUDGE INFANTE HAS TAKEN.  I THINK

18  THAT JUST MAKES A MESS OF THE WHOLE THING.

19      SO THAT'S KIND OF THE TWO-PRONGED APPROACH THAT I

20  THOUGHT WE WOULD TAKE THROUGH THIS TO HOPEFULLY KEEP THIS

21  GOING.

22      AS FAR AS, HOWEVER, THE DEPOSITIONS THAT I'VE GIVEN

23  LEAVE TO TAKE THAT ARE PHASE ONE DEPOSITIONS, I GUESS A THIRD

24  ASPECT OF THE ORDER WOULD BE THAT, YES, PLAINTIFF DOES HAVE

25  LEAVE TO TAKE THOSE, EVEN IF THAT MEANS TAKING THEM IN

1    FEBRUARY.  THE DISCOVERY CUTOFF DATE HAS COME AND GONE.  NO NEW

2    DISCOVERY REQUESTS ARE MADE.  BUT TO THE EXTENT THAT ADDITIONAL

3    DISCOVERY NEEDS TO BE TAKEN RELATED TO PHASE ONE THAT ONE OR

4    EITHER OF THE SIDES HAS RECEIVED LEAVE TO TAKE, THAT'S GOING TO

5    HAVE TO BE DONE IN FEBRUARY.  AND WE NEED TO GET IT DONE SO

6    THAT WE DON'T COMPROMISE OUR SCHEDULE HERE.

7         THE EXPERT REPORTS ARE GOING TO BE DUE IN FEBRUARY

8    AND MARCH.  WE HAVE FILINGS OF MOTIONS IN LIMINE ON MAY 5TH.

9    BUT MOST IMPORTANTLY, WE HAVE A DISPOSITIVE MOTION CUTOFF DATE

10   ON MARCH 31ST.  I SAW A PREVIEW OF COMING ATTRACTIONS IN

11   MR. NOLAN'S BRIEF, AND SEVERAL OTHER PLACES, SO I KNOW THAT

12   THERE ARE MOTIONS IN THE WORKS AND I KNOW THAT WE NEED TO START

13   FOCUSING ON THOSE, BUT WE DO HAVE TO GET THROUGH THIS DISCOVERY

14   FOR WHICH PARTIES HAVE BEEN AFFORDED LEAVE; SO IT'S GOING TO BE

15   BUSY A MONTH.

16        THOSE ARE KIND OF THE THREE GENERAL PARAMETERS THAT I

17   WANT TO USE TO RESOLVE THESE MOTIONS, AND I'D LIKE TO ENTERTAIN

18   THOUGHTS FROM WHOEVER AT THIS POINT CONCERNING THOSE.

19        MR. QUINN:  I'M NOT GOING TO ARGUE.  I'M JUST GOING

20   TO MAKE OBSERVATIONS.

21        MR. NOLAN:  YOUR HONOR, I WAS GOING TO ARGUE, SO

22   MAYBE --

23        THE COURT:  I'LL LET MR. QUINN GO FIRST.  IT IS HIS

24   APPLICATION.

25        YOU'LL HAVE THE LAST WORD, MR. NOLAN.

1          MR. QUINN:  I UNDERSTAND WHAT THE COURT HAS SAID, AND

2     WE'LL BE TAKING THESE UP WITH JUDGE INFANTE.

3          THE ONLY REASON WE WERE HERE WAS, THERE'S A COUPLE OF

4     THESE ISSUES THAT RELATE TO THE CONSTRUCTION OF THIS COURT'S

5     ORDER AND WHAT THE COURT MEANT.

6          ONE, THE GRONICH, THE OTHER INDIVIDUAL, THE DOCUMENT

7     RETENTION --

8          THE COURT:  MR. GRONICH OR MR. TIONGCO?

9          MR. QUINN:  TIONGCO.

10         I THINK IT WOULD BE HELPFUL TO THE PARTIES AND

11    JUDGE INFANTE IF THE COURT COULD SHARE WITH US ITS VIEWS ON

12    WHAT IT MEANT THERE, AS TO WHETHER THOSE WERE INCLUDED IN THE

13    JANUARY 7TH ORDER.

14         AND THEN JUST FROM A STANDPOINT OF CONSTRUCTION OF

15    THE COURT'S ORDER, WHETHER OR NOT THE COURT INTENDED, BY

16    GRANTING THAT APPLICATION FOR ADDITIONAL DISCOVERY, TO RULE

17    THAT ANY UNUSED DEPOSITION SLOTS UNDER THE ORIGINAL SCHEDULING

18    ORDER THAT HADN'T BEEN USED ARE LOST.

19         I THINK IF THE COURT CAN GIVE US AND JUDGE INFANTE

20    GUIDANCE ON THOSE TWO ISSUES, WE CAN TAKE IT FROM THERE WITH

21    JUDGE INFANTE.

22         THE COURT:  WELL, LET ME ASK YOU THIS, MR. QUINN; AND

23    THIS MAY REVEAL MORE THAN I PROBABLY WANTED TO REVEAL RIGHT

24    NOW:  WHEN YOU BROUGHT THAT EX-PARTE APPLICATION FOR LEAVE TO

25    TAKE THE ADDITIONAL DEPOSITIONS, WAS NOT THE PREMISE THERE THAT

1    YOU NEEDED TO TAKE ADDITIONAL DEPOSITIONS?  THAT YOU HAD

2    ESSENTIALLY USED UP YOUR DEPOSITIONS AND YOU NEEDED MORE

3    DEPOSITIONS?

4         MR. QUINN:  NO.  THERE WERE DEPOSITIONS SCHEDULED.

5    WE HAD A DISCOVERY CUTOFF APPROACHING.  WE HAD A LONG LIST OF

6    PEOPLE THAT WE WANTED TO DEPOSE; WE KNEW WE WERE GOING TO BE

7    GOING OVER THE LIMIT; BUT WE, AT NO POINT -- I THINK TO THE

8    CONTRARY, YOUR HONOR, WE SAID WE HADN'T USED UP ALL OF THE

9    SLOTS.  WE JUST ANTICIPATED WE NEEDED TO GET THE CEILING

10   RAISED, KNOWING WHAT NEEDED TO BE DONE.

11        THE COURT:  FROM 24 TO 64?

12        ALL RIGHT.  VERY WELL.

13        MR. NOLAN?

14        MR. NOLAN:  THANK YOU, YOUR HONOR.

15        I THINK WITH THE COURT'S CLARIFICATION, AND, IN

16   PARTICULAR, THE CLARITY WITH RESPECT TO IF SOMETHING IS PENDING

17   IN FRONT OF JUDGE INFANTE, IT WAS NOT THE INTENT OF THIS COURT

18   TO CIRCUMVENT ALL OF THE HARD WORK THAT JUDGE INFANTE HAS DONE.

19        AND I WANT TO START WITH THAT POLICY, IF YOU WOULD,

20   AND GO TO THE ADDITIONAL DEPOSITIONS THAT WERE, WE BELIEVE, NOT

21   ORDERED BY THE JANUARY 7TH ORDER, WITH RESPECT TO DOCUMENT

22   PRESERVATION AND COLLECTION.  AND THAT'S THE GRONICH AND

23   BURKEVICH DEPOSITIONS.

24        AND THE REASON WHY, YOUR HONOR, WE DO NOT BELIEVE

25   THAT THEY WERE COVERED IN THE FIRST INSTANCE BY YOUR ORDER IS

1    THAT IN OUR PAPERS, AS YOU WELL NOW KNOW, THIS MATTER WAS

2    BROUGHT BEFORE JUDGE INFANTE; FULLY REVIEWED BY HIM; DETERMINED

3    THAT WITH RESPECT TO ALL BUT ONE TOPIC, TOPIC 39, WE HAD

4    PRODUCED WITNESSES THAT WERE MOST KNOWLEDGEABLE AND HAD GIVEN

5    VERY THOROUGH TESTIMONY.

6          AND WITH RESPECT TO TOPIC NUMBER 39, WHICH WAS THE

7    COLLECTION TOPIC, THAT WAS THE DEPOSITION THAT HE ORDERED US TO

8    COMPLY WITH; AND WE PRODUCED MR. KHARE FOR TWO ADDITIONAL DAYS

9    ON THAT VERY SUBJECT.

10         NOW, MATTEL, NOT SATISFIED WITH JUDGE INFANTE'S

11   RULING, DOESN'T APPEAL THAT; NOW TAKES YOUR ORDER, WHERE YOU DO

12   NOT IDENTIFY OR CALL OUT GRONICH AND TRAVONAVICH {SIC}, AND

13   SAYS, 'BUT YOU REFERRED TO A TOPIC'.  AND WE RESPECTFULLY

14   SUBMIT, YOUR HONOR, AS CAREFUL AS I KNOW YOU ARE IN YOUR

15   ORDERS, THAT THAT IS STRETCHING IT, IN LIGHT OF WHAT WE'VE --

16   THE RECORD THAT WE'VE ALREADY SHOWN BEFORE JUDGE INFANTE.

17   BECAUSE MATTEL HAD NOT DEMONSTRATED TO YOU THAT THERE WAS ANY

18   INADEQUATE SHOWING OR TESTIMONY ON THE SUBJECT BY US.  IN FACT,

19   WE STEPPED UP AND WE PRODUCED ALL OF THE WITNESSES, AND

20   JUDGE INFANTE HAS BLESSED IT, EXCEPT FOR KHARE; AND WE'VE NOW

21   PRODUCED IT.

22         THERE ARE DECLARATIONS IN THIS CASE WITH RESPECT TO

23   THE PRESERVATION, COLLECTION, AND DOCUMENTATION OF THESE

24   DOCUMENTS.  I DON'T BELIEVE THAT IT'S APPROPRIATE TO ORDER THE

25   ADDITIONAL DEPOSITIONS OF GRONICH AND TRAVONAVICH {SIC}.

1      I'M ALWAYS GOING TO MISPRONOUNCE THAT NAME.  I

2   APOLOGIZE.

3      THE COURT:  TIONGCO.

4      MR. NOLAN:  THEY'RE NOT COVERED BY THE ORDER.  AND

5   THIS SUBJECT HAS BEEN COMPLETELY ADDRESSED BY JUDGE INFANTE.

6      THE COURT:  PUTTING THAT ASIDE, WHAT IS YOUR GENERAL

7   APPROACH?

8      MR. NOLAN:  WITH RESPECT TO ANOTHER CATEGORY, AND

9   THAT IS -- YOU KNOW, WHAT IS ALSO CLEAR, I BELIEVE, AND WHAT WE

10   NEED TO LEAVE WITH TODAY -- IS THAT THE JANUARY 28TH DISCOVERY

11   CUTOFF APPLIED TO PHASE ONE --

12      THE COURT:  IT DID.

13      MR. NOLAN:  -- AND THAT WHETHER OR NOT MATTEL, FOR

14   ITS OWN CHOOSING IN THIS CASE, DECIDED FOR INTERNAL PURPOSES TO

15   DELAY PROVIDING PROPER NOTICE BEFORE THE EXPIRATION OF THE

16   DISCOVERY CUTOFF DATE, KNOWING FULL WELL WHAT THE DISCOVERY

17   CUTOFF DATE WAS, THEY SHOULD NOT BE ALLOTTED ADDITIONAL TIME

18   NOW TO TAKE THOSE DEPOSITIONS.  AND THOSE ARE MOTIONS THAT ARE

19   PENDING BEFORE JUDGE INFANTE.  AND WHEN YOU SAID MOTIONS THAT

20   ARE PENDING IN FRONT OF JUDGE INFANTE, DEALING WITH THE SERVICE

21   AND THOSE KINDS OF ISSUES, I'M ASSUMING -- AND I'M REALLY DOING

22   THIS MORE FOR THE RECORD, BECAUSE WE HAVE THIS HABIT OF NOT

23   AGREEING AFTER WE LEAVE HERE AS TO WHAT ACTUALLY OCCURRED --

24   THAT THOSE MATTERS ARE NOW BEFORE JUDGE INFANTE, AND THAT IF

25   JUDGE INFANTE, WHO HAS ESTABLISHED A RULE IN THIS CASE THAT TEN

1    DAYS' NOTICE FOR DEPOSITIONS WAS REASONABLE UNDER THE

2    APPLICABLE RULES THAT WE WERE OPERATING UNDER, RULES THAT WERE

3    IMPOSED ON US BY MATTEL THROUGHOUT THIS GAME, THIS CASE, HAS

4    NOT CHANGED AS A RESULT OF TODAY'S ORDER.

5         THE COURT:  I'M NOT GOING TO GIVE EITHER SIDE ANY

6    SOLACE AT THIS POINT.  I DO NOT WANT TO SHORT-CIRCUIT

7    JUDGE INFANTE'S RULINGS.  AND I'M ALSO NOT GOING TO, IN ANY

8    WAY, RESTRICT EITHER SIDE FROM APPEALING JUDGE INFANTE'S

9    RULINGS TO THIS COURT.  SO I'M NOT GOING TO OPINE AT THIS POINT

10   AS TO WHETHER OR NOT I THINK THE TEN-DAY NOTICE IS REASONABLE

11   OR NOT REASONABLE, IS APPLICABLE OR SHOULD NOT BE APPLICABLE.

12   ALL I'M SAYING AT THIS POINT IS -- AND PRECISELY TO AVOID

13   GETTING INVOLVED IN TRYING TO SHORT-CIRCUIT JUDGE INFANTE'S

14   WORK, I'M JUST GOING TO PERMIT THAT TO PROCEED.

15        JANUARY 28TH WAS THE CUTOFF FOR PHASE ONE DISCOVERY.

16   ON JANUARY 7TH, WHEN I GAVE LEAVE FOR THOSE ADDITIONAL

17   DEPOSITIONS, APPROXIMATELY 40 ADDITIONAL DEPOSITIONS, I

18   CERTAINLY -- AND I THINK I MADE THIS PRETTY CLEAR IN THE

19   ORDER -- ENVISIONED THOSE TO BE DONE IN THE MONTH OF JANUARY.

20        I DID INDICATE, CERTAINLY IF THE PARTIES WANTED TO

21   STIPULATE, THAT THEY COULD CONTINUE THIS UNTIL FEBRUARY.  AND

22   CERTAINLY FOR ANYTHING THAT WAS PROPERLY NOTICED OR PROPERLY

23   SERVED DURING THE MONTH OF JANUARY, BEFORE THE CUTOFF, AT LEAST

24   FROM THIS COURT'S PERSPECTIVE AT THIS POINT IN TIME, THAT MAY

25   HAVE TO PROCEED INTO FEBRUARY.

1        I UNDERSTAND THERE'S CHALLENGES TO THOSE SERVICES,

2    THERE'S CHALLENGES TO THOSE NOTICES; THAT NEEDS TO BE BROUGHT

3    TO JUDGE INFANTE; AND THEN, IF NECESSARY, APPEALED TO THIS

4    COURT.  BUT AT THE END OF THE DAY, THE ONLY LIMITATION I'M

5    PUTTING ON WHAT'S BEING CONSIDERED BY JUDGE INFANTE AND WHAT

6    WILL BE CONSIDERED BY THIS COURT OVER THE COURSE OF THE NEXT

7    TWO MONTHS IS THAT WE'RE JUST GOING TO LOOK AT PHASE ONE

8    ISSUES.

9        MR. NOLAN:  RIGHT.

10       AND I APOLOGIZE, YOUR HONOR.  I WASN'T TRYING TO BE

11   CLEVER AND GET -- BUT YOUR COMMENTS DO INVITE THIS FOLLOW-UP:

12       WHAT I AM SAYING IS THAT THE MOTIONS THAT ARE BEFORE

13   JUDGE INFANTE, WITH RESPECT TO WHETHER OR NOT TWO-DAY NOTICE IS

14   APPROPRIATE IN JANUARY, IS AN ISSUE TO BE DECIDED BY

15   JUDGE INFANTE.  WE RESERVE THE RIGHT TO TAKE AN APPEAL TO

16   YOUR HONOR, DEPENDING ON WHO WINS OR LOSES THAT ISSUE.  THAT'S

17   ALL I WAS TRYING TO SAY.

18       THE COURT:  THAT'S FINE.

19       MR. NOLAN:  SO I UNDERSTOOD THAT CATEGORY APPLIES TO

20   THOSE PEOPLE.

21       THE COURT:  AND I'M SURE JUDGE INFANTE WILL CONSIDER

22   THAT IN LIGHT OF THE TOTALITY OF THE CIRCUMSTANCES AND HE WILL

23   ISSUE WHATEVER ORDER HE BELIEVES IS APPROPRIATE; AND THE LOSING

24   SIDE CAN APPEAL TO THIS COURT.

25       MR. NOLAN:  BY THE WAY, ON ONE PIECE OF NEWS, WE WERE

1    ABLE TO, IN CERTAIN INSTANCES, STIPULATE WITH RESPECT TO

2    DEPOSITIONS.  IN FACT, THE DEPOSITION OF FRED LARIAN IS GOING

3    ON TODAY; AND WE'VE AGREED THAT IT WOULD STILL APPLY TO PHASE

4    ONE.

5         SO THERE WERE INSTANCES WHERE WE BELIEVED IT WAS

6    APPROPRIATE AND NOBODY WAS TRYING TO SHOVE PHASE TWO INTO PHASE

7    ONE.  WE'VE WORKED THOSE DIFFERENCES OUT.

8         I WANT TO TURN NOW TO WHAT I WOULD DESCRIBE AS THE

9    CATEGORY OF THREE:  MS. MORALES, MS. CABRERA; AND THE LAST ONE

10   IS SALAZAR.

11        THE COURT:  AND MEL WOODS.

12        MR. NOLAN:  AND MEL WOODS IS IN THIS CATEGORY.

13        THE COURT:  RIGHT.

14        MR. NOLAN:  NOW, THERE IS NO DISPUTE THAT EACH ONE OF

15   THESE PEOPLE WERE KNOWN TO MATTEL, CERTAINLY BY THEIR OWN

16   ADMISSION, AS OF DECEMBER 28TH.  THEY WERE KNOWN AT THE TIME OF

17   THE JANUARY 7TH HEARING.  MATTEL DOES NOT CHOOSE AT THAT TIME

18   TO INCLUDE THEM IN THE LIST, DOES NOT REQUEST AND DOES NOT

19   ACCELERATE THE REQUEST, IF THEY DECIDED TO TAKE THESE

20   DEPOSITIONS.

21        AS WE LAY OUT IN THE PAPER, IN A PRETTY SORRY AND, WE

22   THINK, VERY SAD SET OF CIRCUMSTANCES, TRAGIC, TO BE HONEST WITH

23   YOU, YOUR HONOR, NOW --

24        THE COURT:  ADMITTEDLY, I HAVEN'T READ THE REPLY TO

25   THAT, BUT AS YOU LAY IT OUT, IT WAS UNUSUAL, IF NOTHING ELSE.

1          MR. NOLAN:  YOUR HONOR, THERE'S A LOT OF TRAGEDIES IN

2     THIS CASE.  I WILL GO A LONG WAY THINKING THAT HISPANIC WOMEN,

3     RAISING CHILDREN -- ONE OF WHICH IS IN MEDICAL SCHOOL -- HER

4     HUSBAND, A MENTAL PATIENT -- IS FIRED BECAUSE SHE SEWED A

5     CONCRETE FLOOR, NOT KNOWING WHAT SHE WAS SEWING UNTIL SOME

6     POINT IN TIME DOWN THE ROAD, NOW HAS TO LOSE HER JOB.

7          BUT SETTING THAT ASIDE -- AND ALSO BEING QUESTIONED

8     BY MR. DE ANDA, WHO HE HIMSELF HAS ADMITTED THAT HE MOONLIGHTS

9     AS AN EXPERT WITNESS ON THE SIDE.  IT'S A TRAGIC IRONY IN THIS

10    CASE.

11         BUT THE POINT HERE IS, YOUR HONOR, MATTEL

12    UNILATERALLY WORKED THE CLOCK THE WAY THEY CHOSE TO DO SO.

13    THEY INTERVIEWED THESE WOMEN -- I'M NOW TALKING ABOUT CABRERA

14    AND MORALES -- WITHOUT COUNSEL; BROUGHT THEM IN; SUBJECTED THEM

15    TO, IN CABRERA'S INSTANCE, A VERY LENGTHY INTERVIEW, THAT WE'VE

16    NOW BEEN PROVIDED THE AUDIOTAPE OF.  THEY CONDUCTED A SEARCH OF

17    HER HOUSE, WITH A WOMAN WHO CAN BARELY SPEAK ENGLISH ASKING

18    THAT THE INTERVIEW BE CONDUCTED IN SPANISH.  THEY REFUSE IT.

19    BUT THIS IS ALL ON THEIR OWN TIME.  THEY MAKE A CHOICE.

20         THEN, YOUR HONOR, AFTER THEY'VE COMPLETELY

21    INTERVIEWED THESE PEOPLE, FIRED THEM AND DEALT WITH WHATEVER

22    THEY WANT, THEY THEN, ON THE 22ND OR 23RD, TRY TO GO OUT AND

23    SERVE THE DEPONENTS.  THE DEPONENT GETS COUNSEL.  COUNSEL IS

24    PRESENT IN THE COURTROOM TODAY.  THAT COUNSEL SAYS, 'WE'RE NOT

25    GOING TO SIT FOR A DEPOSITION' -- WORDS TO THE EFFECT, 'WE'RE

1    NOT GOING TO SIT FOR A DEPOSITION ON ONE OR TWO DAY'S NOTICE.

2    THAT'S NOT REASONABLE.  AND, MORE IMPORTANTLY, YOU'VE GOT TO

3    GIVE DOCUMENTS,' AND STUFF LIKE THAT.

4         SO MATTEL JUST RAN OUT THE CLOCK, YOUR HONOR.  IF

5    THAT WAS PHASE ONE, THEY KNEW IT.  THEY UNILATERALLY DECIDED

6    NOT TO INCLUDE IT IN THE LIST THAT THEY SUBMITTED TO YOUR

7    HONOR.  THEY WAITED UNTIL TWO OR THREE DAYS BEFORE THE END OF

8    THE DEPOSITION.  THAT'S PENDING IN FRONT OF JUDGE INFANTE.

9         THE COURT:  AND YOUR PRIMARY ARGUMENT THERE,

10   THOUGH -- I READ ALL OF THE INFORMATION YOU PROVIDED ABOUT THE

11   CIRCUMSTANCES OF THE INTERROGATION, OR THE INTERVIEW OR

12   WHATEVER IT WAS.  BUT YOUR ARGUMENT GOES BACK TO THIS NUMBER

13   COUNTING THING, WHETHER OR NOT THEY HAD THE ADDITIONAL SIX THAT

14   THEY CLAIMED.  AND IF THEY DID, THEN THEY NOTICED THEM BEFORE

15   THE CUTOFF.  IF THEY DON'T, THEN THEY DIDN'T.

16        MR. NOLAN:  THAT'S ONE ARGUMENT.

17        AND THEN THE SECOND ARGUMENT -- AND WE THINK THE

18   COUNT IS VERY SIMPLE.  THEY HAD 22 DEPOSITIONS IN THE BAG.

19   THEY HAD TWO MORE THAT WERE SET AT THE TIME WE CAME BEFORE YOU

20   ON JANUARY 7TH.  WE MADE THESE ARGUMENTS CONSISTENTLY, AND I AM

21   STRUCK BY THE FACT THAT WE HAD TO COME IN HERE WHEN THEY STILL

22   HAD DEPOSITIONS ON THE TABLE, APPARENTLY BY THEIR COUNT, AND

23   SAY, 'OH, NOW WE NEED ADDITIONAL DISCOVERY.'  I THINK THEY'RE

24   TRYING TO REINTERPRET WHAT THEIR POSITIONS WERE ORIGINALLY.

25        NEVERTHELESS, THEY WERE OUT OF DEPOSITIONS EXCEPT FOR

1    WHAT YOU ORDERED ON THE JANUARY 7TH DATE.

2         THAT'S OUR FIRST ARGUMENT.

3         THE SECOND ARGUMENT, HOWEVER, YOUR HONOR, IS THAT

4    EVEN IF THEY'RE RIGHT AND THEY HAD THE OPTION OF TAKING

5    ADDITIONAL DEPOSITIONS, THEY WELL KNEW OF THESE INDIVIDUALS AND

6    THEY COULD HAVE PROVIDED PROPER NOTICE.

7         THE COURT:  THIS GETS BACK TO JUDGE INFANTE'S

8    POSITION OF THE TEN DAYS.

9         MR. NOLAN:  YES.

10        THE COURT:  AND, AGAIN, THAT'S NOT -- NO.  I

11   UNDERSTAND THAT THAT'S --

12        MR. NOLAN:  THAT'S THE OTHER POINT.

13        THE COURT:  YOU SAID YOU WERE ADDRESSING A THIRD

14   AREA.

15        THE ONE I'D LIKE YOU TO ADDRESS -- AND I'LL PROBABLY

16   NEED TO HEAR MORE FROM MR. QUINN OR MR. COREY ON THIS -- IS

17   THOSE THAT WERE NOT SERVED WITH SUBPOENAS AND ARE NOT THE TYPE

18   OF DEPONENT THAT CAN BE -- THERE'S A CATEGORY THAT APPEARS TO

19   HAVE BEEN EXPIRED.

20        MR. NOLAN:  RIGHT.  LET ME ADDRESS THAT.

21        YOU KNOW, THERE ARE CONSEQUENCES.

22        I THINK I CAN QUOTE THIS, BECAUSE IT WAS MR. ZELLER

23   WHO SAID, AND IF MR. QUINN SAYS THIS IS NOT HIS REACTION -- WE

24   BOTH HAVE THE SAME REACTION TO YOUR ORDER.  BOTH OF US VIEWED

25   THE ORDER AND TOLD OUR RESPECTIVE COLLEAGUES, THIS IS AN EDICT

1    OF MUTUAL SELF-DESTRUCTION, ASSURED SELF-DESTRUCTION, IN TERMS

2    OF THE AMOUNT OF EFFORT THAT WAS REQUIRED BY ALL OF US.

3          WE SAW THAT -- WE THOUGHT WHAT YOU WERE SAYING IS,

4    'YOU KNOW, IF YOU, MGA, IF YOU ARE REALLY TELLING ME YOU NEED

5    TO TAKE TEN DEPOSITIONS, THEN STEP UP AND DO WHAT IS REQUIRED

6    TO TAKE THOSE DEPOSITIONS.  GOD BLESS YOU IF YOU CAN DO IT.  IF

7    YOU CAN'T, SO BE IT.'  BUT I UNDERSTOOD THAT, IN A SENSE, YOU

8    WERE REALLY CALLING MY BLUFF IN THE SENSE OF WHETHER OR NOT I

9    NEEDED THOSE TEN.  WE NEEDED THOSE TEN.

10         WE PLAYED WITH THE UNDERSTANDING THAT JULY 28TH DATE

11   WAS GOING TO HOLD.

12         THE COURT:  JANUARY 28TH.

13         MR. NOLAN:  I'M SORRY.  JANUARY 28TH.

14         MATTEL, ON THE OTHER HAND, YOUR HONOR, NOW WANTS -- I

15   THINK THEY INTERPRETED IT THE SAME AWAY, BUT THEY DID NOT USE

16   REASONABLE MEANS TO GO OUT AND ENSURE THAT THEY COULD NOTICE UP

17   AND TAKE THE DEPOSITIONS.

18         NOW THEY WANT ADDITIONAL TIME TO DO THAT.

19         I DON'T THINK THAT'S FAIR, YOUR HONOR.  FIRST OF ALL,

20   I DON'T THINK IT'S FAIR.  I THINK YOUR ORDER WAS QUITE CLEAR ON

21   IT.

22         THE COURT:  COUNSEL, I DON'T DISAGREE WITH YOU ON

23   THAT, SO PERHAPS I SHOULD BE HEARING FROM MR. QUINN ON THIS.

24         MR. NOLAN:  BUT I'M GOING TO RAISE ONE THING THAT I

25   THINK HE'S GOING TO ANTICIPATE.  AND THAT IS -- AND IT'S JUST

1    AN OBSERVATION; IT'S NOT PART OF MY ARGUMENT.

2    THE COURT:  ALL RIGHT.  VERY WELL.

3    MR. NOLAN:  HE MIGHT SAY, 'GEE, YOU KNOW, IN THE

4    BEGINNING OF THE LITIGATION, THE O'MELVENY FIRM SAID, "IF YOU

5    WANT TO CONTACT CERTAIN PEOPLE"' -- NOW, THIS IS NOT ALL OF THE

6    CATEGORY -- '"CALL US FIRST".'

7    YOUR HONOR, THAT IS A RED HERRING IN THIS CASE,

8    BECAUSE WHETHER OR NOT O'MELVENY AND MEYERS SAID THAT, YOU ONLY

9    HAVE TO GO TO THE JANUARY 7TH HEARING, WHEN WE WERE FACED WITH

10    SOMETHING SIMILAR, AND THAT IS -- YOU RECALL AT THE VERY END,

11    THERE WAS A DISCUSSION ABOUT THE ACCEPTANCE OF SUBPOENAS, AND

12    YOU SAID, 'I DON'T HAVE THAT IN FRONT OF ME.'

13    WELL, YOUR HONOR, IT WAS TRUE, IT WAS NOT IN FRONT OF

14    YOU.  AND ALTHOUGH WE COULD NOT TALK TO THEIR PEOPLE, BECAUSE

15    THEY WERE REPRESENTED BY QUINN EMANUEL, QUINN EMANUEL WOULD NOT

16    ACCEPT SERVICE.  WE HAD TO GO OUT, LOCATE THE PEOPLE, RETAIN

17    SERVICE PROCESSORS, AND GET THEM SERVED.

18    THERE WAS NO GAME-PLAYING HERE.  ALL WE WERE DOING AT

19    ALL TIMES WAS APPLYING THE RULES OF ENGAGEMENT THE WAY THEY

20    WERE BEING APPLIED AGAINST US; AND I IMPLORE YOU, YOUR HONOR,

21    TO DO THE SAME.

22    THE COURT:  COUNSEL, I GUESS THE ONLY THING THAT I DO

23    TAKE EXCEPTION TO -- WHEN STIPULATIONS ARE ENTERED INTO BETWEEN

24    PARTIES, THEY'RE ENTERED INTO BETWEEN THE PARTIES; THROUGH

25    THEIR ATTORNEYS, BUT IT'S BETWEEN THE PARTIES.  SO TO THE

1    EXTENT THAT YOUR CLIENT ENTERED INTO AN AGREEMENT THROUGH

2    O'MELVENY & MYERS, THAT APPLIES TO YOUR PARTY.  AND THE FACT

3    THAT THEY HAVE REPLACED O'MELVENY & MYERS WITH SKADDEN ARPS,

4    YOURSELF, THAT DOESN'T EVISCERATE THE AGREEMENT.

5         I'M NOT SAYING WHETHER THIS IS GOOD OR NOT.  THIS IS

6    A GENERAL PRINCIPAL.  I DON'T KNOW HOW IT APPLIES.  BUT THIS IS

7    THE TYPE OF THING THAT IF THERE'S A DISPUTE OVER WHETHER OR NOT

8    A DEPOSITION WAS PROPERLY NOTICED OR PROPERLY SERVED, PURSUANT

9    TO AN AGREEMENT OR OTHERWISE, AGAIN, THAT GOES TO

10   JUDGE INFANTE.

11        MR. NOLAN:  IN PRINCIPAL, YOUR HONOR, I AGREE WITH

12   YOU, AND I DON'T BELIEVE THERE'S BEEN AN INSTANCE WHERE WE HAVE

13   STEPPED BACK FROM ANYTHING THAT O'MELVENY COMMITTED TO.

14        ALL I'M SAYING IS THAT IN REGARDS TO -- AND MAYBE I

15   SHOULDN'T HAVE MADE THIS OBSERVATION; IT'S NOT GOING TO MAKE

16   THIS ARGUMENT -- BUT ALL MY POINT IS, YOUR HONOR, IS THAT THAT

17   WAS NOT AN AGREEMENT OR A STIPULATION TO ACCEPT SERVICE OF A

18   DEPOSITION ON THREE MONTH'S NOTICE OR TWO DAY'S NOTICE.

19        AND THE SAME RULE HAS BEEN APPLIED BY MATTEL TO US,

20   AS EVIDENCED BY THE LAST TIME WE WERE BEFORE YOU.

21        I PROBABLY HAVE LEFT OUT SOME OF THE CATEGORIES OF

22   INDIVIDUALS, BUT I THINK THAT GIVEN THE OVERVIEW THAT THE COURT

23   HAS PROVIDED TO US, I THINK WE HAVE A GOOD UNDERSTANDING AS TO

24   WHAT'S LEFT; AND WE'LL COOPERATE.

25        THE COURT:  I THINK IT ADDRESSES -- EXCEPT FOR THIS

1    CATEGORY NUMBER THREE, THE NOT-SERVED -- THOSE POTENTIAL

2    DEPONENTS WHO HAVE NOT BEEN SERVED WITH A SUBPOENA.  IT

3    ADDRESSES THE THIRD-PARTY DEPONENTS; IT ADDRESSES THE

4    OUT-OF-COUNTRY.

5        MR. NOLAN:  THERE'S ONE THAT I DID NOT ADDRESS, YOUR

6    HONOR; AND I APOLOGIZE.  EVERYTHING SEEMS, AT THIS LEVEL, TO BE

7    VERY CLEAR.  WHEN YOU DROP DOWN, LIKE, TWO FEET, YOU'LL SEE

8    WHAT THE TROUBLE IS.

9        THERE WAS AN ISSUE THAT MR. QUINN ASKED CLARIFICATION

10    ON, AND THAT HAD TO DO WITH -- YOU ORDERED THESE 30(B)(6)

11    WITNESSES, SO, MY GOSH, THEY SHOULD SIT FOR THEM, AND THEN HE

12    CONCEDED THAT MGA, MEXICO IS REALLY PHASE TWO ISSUES, BUT

13    THERE'S OUTSTANDING -- YOU ORDERED A 30(B)(6) DEPOSITION

14    AGAINST MGA.

15        YOUR HONOR, THERE WERE 161 CATEGORIES SET FORTH IN

16    THAT 30(B)(6).  WE DID NOT BELIEVE, BECAUSE THAT WAS NOT THE

17    OPPORTUNITY OF THE JANUARY 7TH HEARING, TO GO THROUGH WHAT

18    TYPICALLY WOULD OCCUR AND SAY 161 CATEGORIES ON THE LAST MONTH

19    OF TRIAL SEEMS A LITTLE BIT LARGE.

20        THAT MATTER IS PENDING BEFORE JUDGE INFANTE IN TERMS

21    OF WHERE WE OBJECTED, BECAUSE THEY'VE EITHER BEEN DUPLICATIVE;

22    THEY'RE NOT THE RIGHT TOPICS FOR 30(B)(6) AS APPLIED TO THE

23    RULES IN THIS CASE.  THAT MATTER IS PENDING BEFORE

24    JUDGE INFANTE.

25        AND I WANT TO BE ABSOLUTELY CLEAR, WITHOUT PREVIEWING

1    THE OUTCOME OF IT, THAT IT'S UNDERSTOOD, AS WE WALK OUT OF

2    HERE, THAT THAT MOTION IS IN FRONT OF JUDGE INFANTE.  HE CAN

3    RULE ON IT HOWEVER HE MAY WISH.  WE MAY COME BACK TO YOU.  BUT

4    THAT WE'RE NOT WALKING OUT OF HERE COMMITTED AND ORDERED TO SIT

5    FOR A 30(B)(6) ON 161 TOPICS.  THAT'S THE POINT.

6          AND MY ONLY LAST COMMENT, YOUR HONOR, WAS WITH

7    RESPECT TO THIS --

8          THE COURT:  COUNSEL, LET ME STOP YOU RIGHT THERE.

9          I DID ORDER THE 30(B)(6) DEPOSITION TO GO FORWARD.

10   THERE WAS NO CHALLENGE AT THE TIME TO THE TOPICS.  I UNDERSTAND

11   YOU NOW HAVE A CHALLENGE BEFORE JUDGE INFANTE; AND HE'LL

12   RESOLVE THAT.  THAT'S WHERE WE'RE AT.

13         MR. NOLAN:  RIGHT.  EXACTLY, YOUR HONOR, BECAUSE THE

14   HEARING THAT WE HAD ON MOTIONS JUST TO EXTEND WAS NOT -- WE DID

15   NOT -- AND NOBODY DISCUSSED IT AT THE TIME, NOR WAS IT FRAMED

16   THAT WAY.  TO NOW START ATTACKING THE VARIOUS SUBTOPICS --

17         THE COURT:  FAIR ENOUGH.  THAT'S BEFORE JUDGE INFANTE

18   RIGHT NOW, AND I'M NOT GOING TO OPINE ON THAT.

19         MR. NOLAN:  YOUR HONOR, THE LAST CATEGORY THAT I WANT

20   TO MAKE CERTAIN I'VE MADE MY POINT CLEAR ON; AND THAT IS THAT

21   CATEGORY THAT WAS ORDERED BUT NOT SERVED WITHIN THE PROPER

22   TIME, FOR WHATEVER REASON.

23         THE COURT:  RIGHT.

24         MR. NOLAN:  SINCE WE ALL WATCHED THE GAME YESTERDAY,

25   HERE'S THE ANALOGY THAT I WOULD USE:

1          I BET YOU THAT TOM BRADY AND THE PATRIOTS WOULD HAVE

2     LOVED TO HAVE HAD ONE MORE SHOT.  BUT, YOU KNOW, THE RULES WERE

3     THAT THE TIME ENDED IN THE FOURTH QUARTER.

4          YOU SET A VERY CLEAR RULING ON JANUARY 28TH; IF THESE

5     PEOPLE WERE NOT SERVED -- AND WE COOPERATED.  WE SAID WHENEVER

6     -- AND IF YOU CAN SERVE THEM, WE'LL MAKE OURSELVES AVAILABLE.

7     WE HAD 12 TRACKS OF DEPOSITIONS ON THE 28TH, YOUR HONOR.  FOR

8     WHATEVER REASON, MATTEL CHOSE NOT TO TRY TO GET THOSE PEOPLE

9     SERVED QUICKER.  WE THINK IT'S BECAUSE THEY DECIDED THAT MAYBE,

10    IN THE GRAND SCHEME OF THINGS, IT WASN'T RELEVANT.

11         SO I SUBMIT ON THAT, YOUR HONOR.

12         THE COURT:  THANK YOU, COUNSEL.

13         MR. QUINN?

14         MR. QUINN:  YOUR HONOR, WE SET FORTH IN OUR PAPERS

15    THE EFFORTS THAT WE MADE TO SERVE THOSE PEOPLE.  THE COURT WILL

16    EITHER FIND THOSE ADEQUATE AND THAT WE SHOULD GET A CHANCE TO

17    TRY FURTHER, OR THE COURT WON'T.  BUT IT WASN'T LIKE WE SAT

18    ON -- THOSE PEOPLE WERE LISTED IN THE ORDER, AND WE DID TRY,

19    AND WE PUT BEFORE THE COURT --

20         THE COURT:  I RECOGNIZE THAT YOU TRIED.  I DID READ

21    THOSE.  BY RULING THAT THE JANUARY 28TH CUTOFF DATE IS A CUTOFF

22    DATE, I'M NOT SUGGESTING THAT YOU DIDN'T TRY.

23         MR. QUINN:  RIGHT.

24         THE COURT:  IT IS WHAT IT IS.

25         I SUSPECT, AS WE GO FORWARD IN THE NEXT MONTH AND A

1    HALF, I'M SURE THERE'S ALL KINDS OF ADDITIONAL DISCOVERY THAT A

2    NUMBER OF PARTIES WOULD LIKE TO BE ABLE TO TAKE.  IT'S GOING TO

3    BE THE WAY IT IS IN THIS CASE.  GIVEN ITS NATURE, GIVEN THE

4    BREADTH OF IT, WE COULD PROBABLY DO DISCOVERY FOR YEARS AND

5    STILL WANT MORE.

6         MR. QUINN:  ALL GOOD THINGS HAVE TO COME TO AN END.

7    WE UNDERSTAND THAT, YOUR HONOR.

8         THE COURT:  AND EVEN NOT SO GOOD THINGS.

9         MR. QUINN:  EVEN NOT SO GOOD THINGS.

10        BUT THESE ARE INDIVIDUALS WHERE -- YOU KNOW, WE MADE

11   A SHOWING, THE COURT SAID, 'OKAY, THERE'S GOOD CAUSE.'

12        THE COURT:  I DID.  AND I GAVE YOU A DEADLINE,

13   THOUGH; THAT DEADLINE HAS COME AND GONE.

14        MR. QUINN:  IN THE CASE OF MR. MCFARLAND, YOUR HONOR,

15   WE HAVE A LAWYER WHO -- YOU KNOW, I WAS ALWAYS BROUGHT UP THAT

16   LAWYERS SHOULD NOT EVADE SERVICE, AND IF SOMEBODY CONTACTS YOU

17   AND SAYS, 'I HAVE A' -- WE SENT THE MAN AN E-MAIL, AND HE

18   OPENED IT.  I THINK A LAWYER IS IN A DIFFERENT CATEGORY.  AND

19   HE'S GOT THREE CLIENTS WHO SOMEHOW WE COULDN'T TRACK DOWN

20   EITHER.  I DON'T KNOW, MAYBE THAT SHOULD BE TREATED

21   DIFFERENTLY.

22        THE COURT:  I UNDERSTAND YOUR FRUSTRATION, COUNSEL.

23        MR. QUINN:  YOUR HONOR, JUST TO RESPOND TO

24   MR. NOLAN'S COMMENTS ABOUT HOW WE WOULDN'T ACCEPT SERVICE AND

25   APPLY THE SAME RULE.  REMEMBER THAT MOMENT AT THE END OF THE

1    LAST HEARING?

2        WE SAID WE COULDN'T ACCEPT SERVICE BECAUSE WE HADN'T

3    SPOKEN TO THE INDIVIDUALS.  WE ENDED UP ACCEPTING EIGHT OUT OF

4    THE TEN.  THE TWO WE DIDN'T ACCEPT FOR, WE COULDN'T FIND.  SO

5    ANY SUGGESTION THAT WE DIDN'T COOPERATE, THAT'S -- WE'RE

6    ACCUSED -- THE POT CALLING THE KETTLE BLACK SIMPLY ISN'T

7    ACCURATE HERE.

8        WOODS, CABRERA, MORALES, SALAZAR.

9        THE COURT:  YES.

10       MR. QUINN:  NOW WE HAVE TO GO BACK TO DECEMBER, WHEN

11   THE COURT ORDERED VICTORIA MARLOW TO SIT FOR DEPOSITION.  AND

12   VICTORIA MARLOW'S COUNSEL WANTED IT TO BE IN JANUARY.  THERE'S

13   A DISCUSSION, 'WE NEED TO DO IT SOONER BECAUSE WE DON'T KNOW

14   WHAT WE'RE GOING TO FIND OUT IN VICTORIA MARLOW'S DEPOSITION.'

15       THE COURT:  AND I UNDERSTAND WHAT YOU FOUND OUT.

16       MR. QUINN:  IN THE MEANTIME, WE HAD ALREADY FILED,

17   HAD ON CALENDAR, THE MOTION FOR ADDITIONAL DISCOVERY, AND WHEN

18   I WAS BEFORE THE COURT ON JANUARY 7TH, I SAID, YOUR HONOR, WE

19   TOOK MARLOW'S DEPOSITION AFTER THIS MOTION WAS FILED, AND WE

20   LEARNED ABOUT WOODS, CABRERA, MORALES, AND SALAZAR; SO THAT'S

21   WHY THEY ARE NOT IDENTIFIED IN OUR PAPERS.

22       BUT I RELATED THAT TO THE COURT.  AND I SAID, 'THESE

23   ARE PEOPLE THAT, OBVIOUSLY, WE NEED TO DEPOSE.  THIS IS PRETTY

24   AMAZING THAT THERE ARE THREE OTHER MATTEL EMPLOYEES WHO HAVE

25   BEEN WORKING ON BRATZ.'

1         AT THE END OF THE DAY, THOUGH, YOUR HONOR, I THINK

2    THAT DOES COME DOWN TO A QUESTION OF COUNTING.  IF WE DIDN'T

3    HAVE THE NUMBER OF UNUSED DEPOSITIONS UNDER THE ORIGINAL

4    SCHEDULING ORDER, I WOULD BE ASKING THE COURT -- BECAUSE I

5    THINK THERE IS GOOD CAUSE -- TO TAKE THOSE DEPOSITIONS, BECAUSE

6    THEY ARE SO CENTRAL TO THE CASE.

7         THE COURT:  YOU WOULD HAVE ASKED THE COURT.

8         MR. QUINN:  I WOULD HAVE ASKED THE COURT.

9         THE COURT:  I DO WANT TO GIVE YOU AN OPPORTUNITY TO

10   RESPOND.  I HAVEN'T READ THE REPLY, AND MAYBE THE RESPONSE IS

11   IN THERE; BUT THERE HAVE BEEN SOME PRETTY SERIOUS ALLEGATIONS

12   MADE CONCERNING THE MANNER OF QUESTIONING THESE WITNESSES.  I'D

13   LIKE TO GIVE YOU A CHANCE TO RESPOND TO THAT.

14        MR. QUINN:  WELL, I WASN'T INVOLVED IN DOING THE

15   REPLY TO THAT.  THE COURT HAS THE REPLY FOR THE COURT.  WE HAVE

16   A VERY DIFFERENT PERSPECTIVE ON WHAT HAPPENED THERE.

17        THE COURT:  COULD SOMEONE SPEAK TO THAT FROM MATTEL

18   WHO'S PRESENT?

19        MR. COREY:  I ACTUALLY CAN'T.

20        MR. QUINN:  HE CAN'T.

21        BUT, YOUR HONOR, THESE ARE INDIVIDUAL -- SUPPOSE THEY

22   HAD NOT BEEN TERMINATED, YOUR HONOR.  SUPPOSE THEY HAD NOT BEEN

23   TERMINATED.  MGA WOULD BE TELLING US, 'YOU TOLERATE

24   MOONLIGHTING; NOT JUST ANY MOONLIGHTING; WE TOLERATED PEOPLE

25   WORKING ON BRATZ.'

1          THINK ABOUT IT FOR A MOMENT.

2          THEY'RE SAYING IT WAS OKAY FOR CARTER BRYANT --

3          THE COURT:  I DON'T THINK ANYONE FAULTS THE

4     TERMINATION ITSELF; IT'S MORE THE MANNER IN WHICH IT ALL CAME

5     ABOUT.

6          MR. QUINN:  I CAN'T GET INTO THE -- I CAN'T DISCUSS

7     THE DETAILS OF THAT, YOUR HONOR.  I CAN'T RESPOND TO THOSE

8     SPECIFIC ALLEGATIONS, BECAUSE I'M JUST NOT FAMILIAR WITH THEM.

9          THERE IS A REPLY ON THAT ISSUE.

10         WE CAN, ON MONDAY, WHEN WE'RE GOING TO BE BACK, IF

11    THE COURT WISHES TO HEAR ABOUT THAT.

12         THE COURT:  YOU MIGHT WANT TO HAVE A RESPONSE

13    PREPARED.  I'LL TAKE A LOOK AT THE PAPERS ON THAT.

14         MR. QUINN:  ALL RIGHT.

15         THE COURT:  OTHERWISE, IT'S CLEAR WHERE I'M GOING

16    WITH THIS, TO YOU?

17         MR. QUINN:  NOT ENTIRELY.

18         THE COURT:  ALL RIGHT.  WHICH PART OF IT IS NOT

19    CLEAR?

20         MR. QUINN:  THE COUNTING ISSUE, YOUR HONOR.  I THINK

21    WE DO NEED SOME GUIDANCE ABOUT WHETHER -- IF WE TOOK A

22    DEPOSITION --

23         THE COURT:  THAT COUNTS AS ONE.

24         MR. QUINN:  IF WE TAKE A DEPOSITION THAT WE GOT LEAVE

25    TO TAKE THAT WAS ON THE LIST AS A RESULT OF THE JANUARY 7TH

1    ORDER, DOES THAT COUNT AGAINST THE ORIGINAL 24?

2         WE'VE BEEN TOLD THAT IF WE TAKE A DEPOSITION THAT WAS

3    ON THAT LIST, THAT COUNTS AGAINST THE ORIGINAL 24.

4         THE COURT:  THE COURT GRANTED YOU LEAVE TO TAKE

5    ADDITIONAL DEPOSITIONS.

6         MR. QUINN:  BUT I'M ASSUMING THAT MEANS THEY WERE IN

7    ADDITION TO THE 24.

8         THE COURT:  I TRUST JUDGE INFANTE WILL BE ABLE TO

9    TAKE THE COURT'S ORDER, GRANTING YOU LEAVE TO TAKE ADDITIONAL

10   DEPOSITIONS, AND THEN DETERMINE HOW MANY OTHER DEPOSITIONS YOU

11   HAVE TAKEN, ADD THEM UP, AND SEE IF YOU HAVE ANY ADDITIONAL

12   ONES, SO AS TO AFFORD YOU THE ABILITY TO HAVE NOTICED THE

13   DEPOSITIONS OF THESE FOUR INDIVIDUALS:  MS. CABRERA,

14   MS. MORALES, MS. SALAZAR, AND MR. WOOD.

15        MR. QUINN:  IS IT OUT OF LINE, YOUR HONOR, FOR ME TO

16   ASK WHETHER THE COURT IS SAYING THAT THOSE ARE ADDITIONAL TO

17   THE 24?  THAT'S A VERY BASIC ISSUE THAT WE'VE HAD DISAGREEMENT

18   ON.

19        THE COURT:  THE ORDER GAVE YOU LEAVE TO TAKE

20   ADDITIONAL DEPOSITIONS.

21        I DON'T KNOW WHAT ELSE IT WOULD BE OTHER THAN

22   ADDITIONAL TO THE 24.

23        MR. QUINN:  ALL RIGHT.

24        THE COURT:  DO YOU DISAGREE WITH THAT, MR. NOLAN?

25        I MEAN, I UNDERSTAND YOU DISAGREE WITH HOW THEY

1   COUNTED, BUT YOU'RE NOT SUGGESTING THAT THE DEPOSITIONS I

2   AFFORDED ON JANUARY 7TH WERE NOT ANYTHING OTHER THAN BEING IN

3   ADDITION TO THE 24 THAT EACH SIDE HAD?

4        MR. NOLAN:  WE MADE THAT POINT IN THE PAPERS, BECAUSE

5   CANDIDLY, YOUR HONOR, IT WASN'T CLEAR.  IT'S AN ARGUMENT

6   THAT WE'VE MADE BECAUSE, WHY DID THEY COME HERE AND ASK FOR

7   ADDITIONAL DISCOVERY IF THEY WERE GOING TO STILL HAVE SOME IN

8   THEIR POCKET THAT THEY WEREN'T GOING TO DISCLOSE TO ANYBODY?

9        BUT OUR PRIMARY ARGUMENT WAS ALWAYS THAT THE REASON

10  WHY WE WERE THERE WAS THAT THEY WERE OUT OF DEPOSITIONS.  THEY

11  HAD 22 THEY HAD ALREADY TAKEN; TWO WERE NOTICED.  AND THEN YOU

12  GAVE THEM AN ADDITIONAL -- SOMEWHERE BETWEEN 40 AND 50

13  DEPOSITIONS.

14       BUT BY ALL ACCOUNTS, ONE THING THAT'S FOR CERTAIN,

15  THESE THREE INDIVIDUALS, ALTHOUGH KNOWN TO MATTEL, WERE NOT

16  INCLUDED AT ANY TIME AND WERE NOT NOTICED.  THEY WERE ARGUED

17  BEFORE YOUR HONOR ON THE 7TH, BUT THEY'RE NOT INCLUDED.

18       THE COURT:  I WILL SAY THIS, TO MAYBE JUST

19  SHORT-CIRCUIT SOME CONFUSION, BECAUSE IT IS CLEAR TO THE COURT.

20       THE TOTAL NUMBER OF DEPOSITIONS WAS 40; CORRECT?

21       MR. QUINN:  24 A SIDE.

22       OH, I'M SORRY.  IN THE JANUARY 7TH ORDER?

23       THE COURT:  YES.

24       MR. QUINN:  IT WAS 40 SOMETHING.  I DON'T KNOW THE

25  NUMBER, YOUR HONOR.

1        MR. NOLAN:  I BELIEVE IT WAS 40, PLUS TEN ON OUR

2    PART; ALL IN ALL, IT WAS 50.

3        THE COURT:  AND YOU HAD PREVIOUSLY BEEN EACH AFFORDED

4    24.

5        THERE IS NO QUESTION, TO THE COURT'S THINKING -- AND

6    I WILL MAKE THIS CLEAR TODAY -- THAT THE 40 I AWARDED TO MATTEL

7    AND THE TEN ADDITIONAL ONES I AWARDED TO MGA WERE IN ADDITION

8    TO THE 24 THAT THEY RECEIVED.

9        NOW, I WILL LEAVE IT TO JUDGE INFANTE TO COUNT UP THE

10   NUMBER OF DEPOSITIONS THAT HAD BEEN TAKEN PRIOR TO YOUR

11   NOTICING THESE FOUR ADDITIONAL ONES.

12       IF THAT NUMBER COMES UP TO BE 20 OR LESS, THEN

13   THEY'RE IN.  IF THAT NUMBER COMES UP TO BE 24 OR MORE, THEN

14   THEY'RE OUT.  AND I'M NOT AT THIS POINT CONSIDERING ARGUMENTS

15   FOR GOOD CAUSE, TO INCLUDE OR NOT INCLUDE.  SIMILARLY, I'M NOT

16   GOING TO COUNTENANCE ARGUMENTS TO SAY THAT THEY SHOULDN'T BE

17   BECAUSE THEY KNEW ABOUT THESE PEOPLE BEFORE.  WE HAVE A

18   DEADLINE.  AS YOU SAY, THE CLOCK EXPIRED.  THEY WERE EITHER

19   PART OF THE NUMBER THAT THEY COULD TAKE OR THEY WEREN'T.

20       I ASSUME THAT YOU CAN SIT DOWN AND YOU CAN IDENTIFY

21   FOR JUDGE INFANTE EXACTLY THE NUMBER OF DEPOSITIONS,

22   PARTICULARLY NOW, THAT YOU'VE TAKEN.  AND THAT'S WHY, AS FAR AS

23   MR. GRONICH AND MR. TIONGCO ARE CONCERNED --

24       WOULD THAT MAKE IT 42, MR. QUINN?

25       MR. QUINN:  YOUR HONOR, I WASN'T SURE 40 WAS THE

1    NUMBER.

2         THOSE TWO INDIVIDUALS WERE REFERENCED IN THOSE

3    PAPERS.

4         THE COURT:  I DON'T WANT YOU TO LEAVE TODAY -- WE

5    SHOULD BE ABLE TO ANSWER THIS QUESTION.  THERE'S ENOUGH LAWYERS

6    AND THERE'S ENOUGH STUFF IN THIS ROOM THAT WE SHOULD BE ABLE TO

7    ANSWER THIS QUESTION PLAINLY TO THE COURT.

8         HOW MANY DEPOSITIONS DID I AUTHORIZE EXPRESSLY ON

9    JANUARY 7TH?  IF WE NEED TO TAKE A BRIEF RECESS TO COME UP WITH

10   THAT, LET'S DO THAT.

11        MR. NOLAN:  YOU REFERENCED SPECIFIC PAGES, AND ON

12   THOSE PAGES, PEOPLE WERE LISTED.  OUR POSITION IS THAT THEY

13   WEREN'T LISTED ON THOSE PAGES.

14        WE CAN DO THAT AT A BREAK AND COME BACK AND MAYBE

15   SUBMIT IT TO MR. HOLMES OR WHATEVER.

16        YOUR HONOR, ONLY BECAUSE I KNOW THIS TRANSCRIPT IS

17   GOING TO BE DISSECTED BY BOTH COUNSEL, I JUST WANT TO COME BACK

18   TO WHEN YOU SAID RECENTLY THAT WITH RESPECT TO CABRERA AND

19   MORALES AND SALAZAR, THAT IF THEY WERE WITHIN THE NUMBER,

20   THEY'RE IN.

21        THE COURT:  THEY'RE IN, SUBJECT TO ANY ARGUMENT THAT

22   YOU'RE MAKING BEFORE JUDGE INFANTE THAT THEY WERE NOT PROPERLY

23   NOTICED, SERVED, OR WHATEVER IT MIGHT BE.

24        MR. NOLAN:  AND I APOLOGIZE FOR BEING REDUNDANT.  I'M

25   TRYING TO AVOID --

1          THE COURT:  YOU UNDERSTOOD WHAT I'M SAYING,

2    MR. QUINN?

3          MR. QUINN:  YES, I DO, YOUR HONOR.

4          THE COURT:  I'M NOT OVERRULING ANY DECISION THAT

5    JUDGE INFANTE HASN'T MADE YET.  I'M SIMPLY SAYING THEY'RE IN IN

6    THE SENSE THAT, ASSUMING THAT YOU PROPERLY NOTICED OR SERVED

7    THEM, YOU CAN TAKE THEIR DEPOSITION.  BUT THAT'S BEING

8    CHALLENGED, AND THAT'S BEING CHALLENGED BEFORE JUDGE INFANTE;

9    AND I WILL AWAIT HIS DECISION.

10         MR. QUINN:  OKAY.

11         YOUR HONOR, I HAVE THIS FEELING THAT IT MIGHT BE

12   HELPFUL IF I WENT -- AND I HATE TO DO THIS, AND I HOPE IT'S NOT

13   TRYING THE COURT'S PATIENCE -- IF I WENT BACK THROUGH THOSE

14   CATEGORIES, JUST TO MAKE SURE THAT -- AS I MENTIONED IN THE

15   BEGINNING, JUST TO MAKE SURE THAT WE HAVE AN UNDERSTANDING AS

16   WE LEAVE HERE.

17         THE COURT:  RIGHT.  AND THEN WE'RE GOING TO TAKE A

18   BRIEF RECESS.  I'M GOING TO TAKE UP ANOTHER MATTER THAT'S

19   PATIENTLY WAITING IN THE BACK WINGS HERE, WHILE YOU COME UP

20   WITH IT.  I WANT TO HAVE SPELLED OUT HERE CLEARLY WHAT IT WAS

21   THAT I ORDERED ON JANUARY 7TH, WHAT THE NUMBER WAS, BECAUSE I

22   DO THINK YOU ARE ENTITLED TO THAT.

23         MR. QUINN:  ALL RIGHT.

24         THE COURT:  BUT GOING THROUGH THOSE CATEGORIES, THE

25   FIRST CATEGORY WAS THE THIRD-PARTY DEPONENTS FROM JANUARY 7TH;

1       AND THEY REQUESTED THAT THEY BE TAKEN POST JANUARY 28TH.

2              MR. QUINN:  RIGHT.

3              THE COURT:  I DON'T SEE ANY PROBLEM WITH THAT,

4       SUBJECT TO ANY CHALLENGE BEING MADE BY THEIR ATTORNEYS BEFORE

5       JUDGE INFANTE.

6              MR. QUINN:  RIGHT.

7              THE COURT:  THE OUT-OF-COUNTRY DEPONENTS:  WELL, THE

8       ONE FROM CANADA IS PHASE TWO; SO THAT'S BEEN PLACED OFF.  THE

9       THREE FROM HONG KONG, IS THAT BEING CHALLENGED?

10             MR. QUINN:  THERE'S NOTHING BEFORE JUDGE INFANTE ON

11      THAT RIGHT NOW.

12             THE COURT:  AND YOU'VE SERVED THEM?

13             MR. QUINN:  NO.  THAT'S GOING TO REQUIRE LETTERS

14      ROGATORY PROCESS.

15             THE COURT:  HAVE YOU STARTED THAT PROCESS?  DID YOU

16      START THAT PROCESS BEFORE JANUARY 28TH?

17             MR. QUINN:  NO, WE DID NOT.

18             THE COURT:  WELL, YOU SHOULD HAVE STARTED THAT

19      PROCESS BEFORE JANUARY 28TH; THAT WAS THE CUTOFF FOR PHASE ONE

20      DISCOVERY.

21             THE THIRD CATEGORY, NOT SERVED WITH SUBPOENAS:  IN

22      ADDITION, THE QUESTION IS WHETHER OR NOT THEY WERE SERVED OR

23      NOTICED BEFORE JANUARY 28TH.

24             MR. QUINN:  THOSE, WE NOTICED THE DEPOSITIONS; WE

25      HAVE NOT SUCCEEDED IN SERVING THE WITNESSES WITH THE SUBPOENAS.

1        THE COURT:  THE QUESTION OF WHETHER OR NOT THE NOTICE

2    WAS PERFECTED, THAT'S AN ISSUE THAT GOES BEFORE JUDGE INFANTE.

3        MR. QUINN:  RIGHT.

4        THE COURT:  ALL I'M DECIDING TODAY IS -- I'M

5    REINFORCING THE COURT'S PRIOR ORDER THAT JANUARY 28TH WAS THE

6    CUTOFF.  I GAVE YOU, ON JANUARY 7TH, LEAVE TO TAKE.  YOU KNOW

7    WHAT THAT MEANS.  YOU KNOW HOW LONG YOU HAD.  WE ALL UNDERSTOOD

8    AT THAT TIME THAT IT WAS GOING TO BE A CRAZY MONTH.  AND I'M

9    AFFORDING YOU LEAVE NOW, I SUPPOSE, TO TAKE ANYTHING THAT WAS

10   PROPERLY NOTICED AND SERVED INTO FEBRUARY THAT RELATES TO PHASE

11   ONE.  BUT THE CUTOFF WAS JANUARY 28TH.

12       MR. QUINN:  WHAT I HEAR THE COURT SAYING IS, IF WE

13   DID NOT SUCCEED IN SERVING THEM BEFORE THE 28TH --

14       THE COURT:  EITHER BY NOT SERVING THEM OR BY HAVING

15   JUDGE INFANTE RULING THAT THE SERVICE WAS IMPROPER, THEN YOU'RE

16   OUT.

17       MR. QUINN:  I UNDERSTAND, YOUR HONOR.

18       THE COURT:  AS FAR AS THE FOURTH CATEGORY, WHETHER

19   MR. GRONICH AND TIONGCO WERE INCLUDED IN MY ORDER, THAT'S WHAT

20   I WANT TO LOOK AT IN A FEW MINUTES HERE.

21       THE TWO IN MEXICO ARE PHASE TWO; SO THAT'S IRRELEVANT

22   FOR OUR CURRENT PURPOSES.

23       THE 30(B)(6), YOU SAID THE MGA DE MEXICO WAS PHASE

24   TWO; SO THAT'S OFF.

25       THE MGA IS BEFORE JUDGE INFANTE.  HE WILL DECIDE

1    THAT, BUT YOU AT LEAST -- THAT WAS PART OF A PREVIOUS ORDER.

2          AND THE NUMBER OF DEPOSITIONS IS GOING TO BE

3    CONSIDERED BY JUDGE INFANTE, ALTHOUGH I'M GOING TO PROVIDE SOME

4    GUIDANCE HERE WHEN I TAKE A LOOK AT THESE ORDERS.  AND THE

5    ORDERS THAT I WANT TO SEE ARE THE JANUARY 7TH ORDER, WITH THE

6    CROSS-REFERENCE TO THE PAGES; THAT'S BASICALLY WHAT I NEED TO

7    SEE.

8          I KNOW THAT'S HERE SOMEPLACE.

9          MR. QUINN:  I THINK WE HAVE A COPY, YOUR HONOR.

10         MR. NOLAN:  WE HAVE IT, TOO, YOUR HONOR.

11         THE COURT:  PROVIDE THAT TO MR. HOLMES.

12         MR. NOLAN:  YOUR HONOR, I'M LOOKING AT THE

13   JANUARY 7TH ORDER, TOP OF PAGE 3.  I CAN HAND THIS UP.

14         I'LL JUST READ THE SENTENCE: "SPECIFICALLY, THE

15   COURT GRANTS MATTEL'S REQUEST TO TAKE THE INDIVIDUAL

16   DEPOSITIONS RELATING TO THE BRATZ CLAIMS SET FORTH IN THE

17   MOVING PAPERS AT 9 THROUGH 11, AND RELATING TO THE TRADE SECRET

18   AND RICO CLAIMS SET FORTH IN THE MOVING PAPERS AT 13."

19         THE COURT:  SO THAT WAS THE PHASE ONE AND PHASE TWO

20   REFERENCES.

21         MR. NOLAN:  THEN, YOUR HONOR, I'VE GIVEN TO MR. QUINN

22   RIGHT NOW A COPY OF HIS MOTION, PAGES 9 THROUGH 11, AND

23   PAGE 13; AND I ASSUME THAT MR. QUINN WILL CONFIRM THAT NEITHER

24   OF THOSE TWO WITNESSES ARE IDENTIFIED ON THOSE THREE PAGES.

25         MR. QUINN:  THAT IS CORRECT, YOUR HONOR.  I THINK I

1    SAID THAT WHEN I FIRST STOOD UP TODAY.

2         THE COURT:  RIGHT.

3         MR. QUINN:  BUT ELSEWHERE, THE COURT SAID THAT

4    BECAUSE OF THE ISSUES THAT HAVE BEEN RAISED ABOUT DOCUMENT

5    RETENTION AND COLLECTION, MATTEL HAS SHOWN GOOD CAUSE.

6         THESE INDIVIDUALS THAT WE'RE TALKING ABOUT ARE THE

7    ONLY WITNESSES WHO HAVE ANY KNOWLEDGE OF THAT.  GRONICH IS THE

8    ONE WHO SIGNED THE CERTIFICATION ABOUT DOCUMENT RETENTION

9    EFFORTS.

10        AND THEN ELSEWHERE, THE COURT'S ORDER SAYS MATTEL'S

11   MOTION IS GRANTED, EXCEPT FOR THE REQUEST TO TAKE THE

12   DEPOSITION OF MR. BRYANT; SO THAT'S HOW WE UNDERSTOOD IT, THAT

13   THE COURT INTENDED THAT WE GET TO TAKE THOSE DEPOSITIONS AS

14   WELL.

15        THOSE TWO NAMES WERE CALLED OUT IN OUR MOVING PAPERS;

16   AND THERE'S A WHOLE SECTION B OF THAT MEMORANDUM THAT DISCUSSED

17   THIS ISSUE, ABOUT THE NEED TO TAKE ADDITIONAL DEPOSITIONS

18   BECAUSE THE INTEGRITY OF MGA AND BRYANT'S PRESERVATIONS OF

19   DOCUMENTS IS AT ISSUE.  AT PAGE 14, WE CALLED OUT THOSE NAMES.

20        THE COURT:  HAVE YOU NOTICED THOSE TWO DEPOSITIONS?

21        MR. QUINN:  YES.  AND WE HAVE SUBPOENAED THE

22   INDIVIDUALS.

23        THE COURT:  SO THE QUESTION IS ONLY WHETHER OR NOT

24   THEY WERE INCLUDED IN THE ORDER GRANTING LEAVE OR NOT.

25        MR. QUINN:  YES, YOUR HONOR.

1          MR. NOLAN:  OF COURSE, JANUARY 8TH IS

2     JUDGE INFANTE -- WE HAD ALREADY -- AND MATTEL KNEW THIS AT THE

3     TIME WE WERE ARGUING IT BEFORE YOU -- THE MATTER HAD BEEN FULLY

4     BRIEFED AND SUBMITTED, ARGUED AND SUBMITTED, IN FRONT OF

5     JUDGE INFANTE.  HE RULED ON JANUARY 8TH THAT ALL OF THE

6     TESTIMONY THAT WE PROVIDED WAS ADEQUATE, EXCEPT FOR THE LIMITED

7     SUBJECT THAT I TALKED ABOUT.  AND WE'VE ALREADY PROVIDED

8     SAM KHARI FOR TWO DAYS.

9          THE COURT:  I WANT TO TAKE A LITTLE LONGER LOOK AT

10    THIS.  I'LL GET YOU AN ANSWER TODAY IN THE MINUTE ORDER THAT

11    GOES OUT THIS AFTERNOON.  I'LL ADDRESS THOSE TWO.

12         OTHERWISE, I THINK WHAT I'VE SET DOWN OR WHAT I WILL

13    SET DOWN IN THE MINUTE ORDER WILL COVER THESE.

14         COUNSEL?

15         MS. MIZRAHI:  RAMIT MIZRAHI FOR ANA CABRERA AND

16    BEATRIZ MORALES.

17         I WANTED TO, FIRST OF ALL, JUST POINT OUT THAT WE'RE

18    NOT TAKING A POSITION IN THE CASE, AND WE ARE SEEKING GUIDANCE

19    FROM THE COURT WITH RESPECT TO THE DEPOSITIONS.

20         THE COURT:  VERY WELL.

21         MS. MIZRAHI:  WE WOULD REQUEST A FEW DAYS TO PREPARE

22    FOR THE DEPOSITIONS, SINCE WE'VE JUST BEEN PREPARED, AND THAT

23    THERE BE A SPANISH TRANSLATOR FOR THE WOMEN THERE.

24         TWO POINTS --

25         THE COURT:  LET ME STOP YOU FOR A SECOND, COUNSEL.

1          IS THERE ANYTHING ABOUT WHAT I'VE ORDERED HERE THAT

2     IS NOT CLEAR TO YOU IN TERMS OF WHERE WE'RE GOING WITH THOSE?

3          MS. MIZRAHI:  I TAKE IT WE'RE PENDING JUDGE INFANTE'S

4     RULING.

5          THE COURT:  EXACTLY.  IN TERMS OF WHETHER OR NOT THEY

6     ARE INCLUDED IN THE NUMBER.

7          THEN AS FAR AS REASONABLE NOTICE -- YOU'RE ASKING FOR

8     A SPANISH TRANSLATOR TO BE PRESENT?

9          MS. MIZRAHI:  YES.

10         THE COURT:  MR. QUINN, GIVEN THE HISTORY IN THIS, IS

11    THERE ANY OBJECTION TO HAVING A SPANISH TRANSLATOR?

12         MR. QUINN:  I WOULDN'T THINK SO, YOUR HONOR.

13         THE COURT:  SEEMS TO MAKE SENSE.  IF THAT'S THE

14    PRIMARY LANGUAGE, THAT WOULD BE APPROPRIATE.

15         OKAY.  SO THERE'S AN AGREEMENT THERE BY THE COUNSEL

16    TAKING THE DEPOSITION.

17         MS. MIZRAHI:  GREAT.

18         TWO OTHER THINGS:  THE FIRST IS, WE WOULD LIKE MATTEL

19    TO PROVIDE US WITH THE INTERVIEW TAPES TAKEN OF THE WOMEN.  I'M

20    NOT SURE IF THAT'S SOMETHING THAT THE JUDGE CAN ORDER OR SHOULD

21    ORDER.

22         THE COURT:  MR. QUINN, WHAT ARE YOUR THOUGHTS ON

23    THAT?

24         MR. QUINN:  WE CAN ASK HIM TO DO THAT, YOUR HONOR.

25         MS. MIZRAHI:  PERFECT.

1          AND THE THIRD THING IS THAT I BELIEVE THAT MATTEL IS

2     IN POSSESSION OF A BOX FROM MS. CABRERA, TAKEN DURING THE

3     INTERVIEW PROCESS.  I THINK THERE'S BEEN SOME EXCHANGE BETWEEN

4     MY ASSOCIATE, MARIA DIAZ, AND COUNSEL; AND I THINK MATTEL IS

5     REFUSING TO RETURN THE BOX TO HER.

6          THE COURT:  COUNSEL?

7          MR. QUINN:  FOR ALL I KNOW, IT'S MATTEL'S PROPERTY,

8     YOUR HONOR.  I'M SORRY.  I JUST CAN'T ADDRESS THAT.

9          I DON'T KNOW WHAT IT IS.

10         THE COURT:  COUNSEL, THIS WOULD BE AN APPROPRIATE --

11    YOU'RE ASKING FOR THE RETURN -- I'M TRYING TO THINK WHO THIS

12    WOULD BE AN APPROPRIATE MOTION BEFORE.  IT'S NOT FAIR TO HAVE

13    MR. QUINN JUST RESPOND OFF THE CUFF TO SOMETHING LIKE THIS.

14         BRING THIS MATTER BEFORE THIS COURT.  I'M INTERESTED

15    IN WHAT HAPPENED HERE.  SO WHY DON'T YOU MEET AND CONFER WITH

16    MR. QUINN; SEE IF YOU CAN'T WORK OUT THE RETURN OF THE TAPES,

17    RETURN OF ANYTHING WHICH IS YOUR CLIENT'S PROPERTY THAT WAS

18    TAKEN FROM HER, OR ALLEGEDLY TAKEN FROM HER.  SEE IF YOU CAN'T

19    WORK IT OUT.  AND IF YOU CAN'T, BRING A MOTION TO THIS COURT.

20         MS. MIZRAHI:  SURE.  THANK YOU.

21         THE COURT:  AND THAT MOTION WOULD HAVE TO BE RESOLVED

22    BEFORE THE DEPOSITION WENT FORWARD.

23         MS. MIZRAHI:  AND BEFORE THE BOX IS OPENED, I'M

24    ASSUMING AS WELL.

25         THE COURT:  I'M SORRY?

1          MS. MIZRAHI:  I'M UNDER THE IMPRESSION THAT MATTEL

2     WAS SEEKING TO OPEN THE BOX PRIOR TO THE DEPOSITION.  I'M

3     REALLY NOT CERTAIN.

4          THE COURT:  MR. QUINN, DO YOU KNOW ANYTHING ABOUT

5     THAT?

6          MR. QUINN:  I DON'T, YOUR HONOR.

7          THE COURT:  YOU NEED TO MEET AND CONFER.

8          MR. NOLAN:  WE'VE BEEN PROVIDED A VIDEO OF MATTEL

9     OPENING THE BOX, MR. DE ANDA OPENING THE BOX.

10          NOW, I KNOW THERE'S REPRESENTATIONS THAT THEY'RE

11     GOING TO RETURN THE SEALED BOX TO MS. CABRERA.  BUT WE HAVE A

12     VIDEO -- WE CAN SHOW IT AT THE HEARING -- OF MR. DE ANDA GOING

13     THROUGH THE BOX OF BELONGINGS THAT WERE SEIZED FROM

14     MS. CABRERA'S HOUSE.  I'LL MAKE CERTAIN YOU HAVE A COPY OF

15     THAT, BUT I THINK MATTEL SHOULD PROVIDE THAT TO YOU.

16          MS. MIZRAHI:  SURE.

17          I GUESS IT RENDERS THAT POINT MOOT ABOUT --

18          THE COURT:  COUNSEL, DON'T TALK TO OPPOSING COUNSEL.

19     YOU'RE ADDRESSING THE COURT RIGHT NOW.  YOU HAVE ALL OF THE

20     TIME IN THE WORLD TO ADDRESS CO-COUNSEL.

21          MS. MIZRAHI:  SURE.  THANK YOU.

22          THE COURT:  COUNSEL, WHAT I WANT YOU TO DO IS MEET

23     AND CONFER WITH MR. QUINN.  I WILL INDICATE, CERTAINLY, THAT --

24     OR I WILL DIRECT THAT THE DEPOSITION DOES NOT FORWARD, ASSUMING

25     THAT IT IS GOING FORWARD, DEPENDING ON JUDGE INFANTE'S RULING,

1    UNTIL YOU HAVE MET AND CONFERRED AND ANY MOTION HAS BEEN HEARD

2    BY THIS COURT CONCERNING THE ITEMS THAT WERE OR WERE NOT TAKEN

3    FROM YOUR CLIENT.

4        MS. MIZRAHI:  THANK YOU.

5        THE COURT:  ANYBODY ELSE?

6        MR. POTISCHMAN:  YOUR HONOR, NEIL POTISCHMAN ON

7    BEHALF OF WACHOVIA CORPORATION.  I'LL TRY TO BE EXCEEDINGLY

8    BRIEF.

9        I JUST WANT TO CLARIFY ONE POINT.  YOUR HONOR ENTERED

10   AN ORDER ON JANUARY 31ST, AS YOU KNOW, WITH RESPECT TO A

11   SUBPOENA PRACTICE DIRECTED AT WACHOVIA.  SOME OF THOSE MATTERS

12   ARE BEFORE JUDGE INFANTE.  YOUR HONOR DIRECTED A BRIEFING

13   SCHEDULE, IN ESSENCE, WITH RESPECT TO POSSIBLE FOLLOW-ON MOTION

14   PRACTICE AFTER JUDGE INFANTE RULES.

15       I THINK IT'S POSSIBLE, IF THERE IS A DEPOSITION OF

16   WACHOVIA, THAT BASED ON THAT SCHEDULE AND BASED ON MY CLIENT'S

17   SCHEDULE, THAT DEPOSITION MIGHT NOT HAPPEN UNTIL MARCH; BUT I

18   WANTED TO CLARIFY, WHILE WE'RE HERE, IF YOUR HONOR INSISTED IT

19   BE DONE BY FEBRUARY, THEN WE'LL CONFER WITH THE PARTIES AND

20   WE'LL TRY TO MAKE SURE THAT --

21       THE COURT:  I'D REALLY LIKE TO GET THIS DISCOVERY

22   WRAPPED UP IN FEBRUARY.  I'M NOT ORDERING THAT IT BE DONE SO,

23   BUT I'M GIVING LEAVE FOR THE DISCOVERY TO CONTINUE INTO

24   FEBRUARY.

25       IN MARCH, WE'RE GETTING AWFUL CLOSE TO THE

1   DISPOSITIVE MOTION HEARING CUTOFF DATE; AND THAT'S MY CONCERN

2   THERE.

3        TRY TO WORK THIS OUT WITH COUNSEL, DEPENDING ON HOW

4   JUDGE INFANTE RULES.  WHAT I WILL SIMPLY DO IS MAKE MYSELF

5   AVAILABLE ON THE 11TH AND THE 25TH.  WE DON'T HAVE A HEARING

6   DATE ON THE 18TH BECAUSE OF THE PRESIDENT'S HOLIDAY.  AND THEN,

7   I SUPPOSE, AT THE VERY LATEST, MARCH 3RD, TO TAKE UP ANY

8   MOTIONS THAT STEM FROM RULINGS BY JUDGE INFANTE.  I'M GOING TO

9   GIVE HIM A CALL THIS AFTERNOON AND EXPLAIN TO HIM WHAT, IN MY

10   VIEW, HE NEEDS TO BE FOCUSING ON AND HOW TIME IS OF THE

11   ESSENCE.  I THINK WE CAN WORK THIS OUT, COUNSEL.

12        MR. POTISCHMAN:  VERY WELL, YOUR HONOR.

13        ONE POINT I SHOULD CLARIFY:  IT'S POSSIBLE, IF THERE

14   IS MOTION PRACTICE WITH RESPECT TO THE SUBPOENA, IT WOULDN'T BE

15   IN THIS COURT.  IT WOULD BE IN THE COURT FROM WHICH THE

16   SUBPOENA IS ISSUED, WHICH WOULD BE THE EASTERN DISTRICT OF

17   PENNSYLVANIA OR THE NORTHERN DISTRICT OF CALIFORNIA.  THAT'S

18   ONE REASON WHY IT MAY BE OUTSIDE OF OUR CONTROL.

19        THE COURT:  OF COURSE.

20        MR. POTISCHMAN:  THANK YOU, YOUR HONOR.

21        THE COURT:  VERY GOOD.

22   THANK YOU, COUNSEL.

23        MR. GIZER:  GOOD MORNING AGAIN, YOUR HONOR.

24        SCOTT GIZER FROM CHRISTENSEN & GLASER.

25        THE COURT:  GOOD MORNING, COUNSEL.

1        MR. GIZER:  I HAD ONE POINT OF CLARIFICATION.

2        IN YOUR ORDER, YOU AUTHORIZED A SPECIFIC TOPIC AS TO

3    CHRISTENSEN & GLASER REGARDING A COMMUNICATION POSSIBLY BETWEEN

4    A PARTY AND OUR FIRM.  IN OUR SUBPOENA, THERE WERE 13 OTHER

5    TOPICS BESIDES THAT ONE, AND WE WOULD LIKE CLARIFICATION THAT

6    THIS COURT ONLY GRANTED LEAVE AS TO THAT ONE SPECIFIC TOPIC,

7    NOT AS TO THE 13 OTHER TOPICS THAT WENT ALONG IN THE SUBPOENA.

8        THE COURT:  MR. QUINN?

9        MR. QUINN:  THAT'S NOT MY UNDERSTANDING, YOUR HONOR,

10    THAT THE ORDER ONLY REFERENCED ONE TOPIC AS BEING APPROPRIATE.

11        THE COURT:  COULD YOU REFER ME TO WHAT --

12        MR. GIZER:  IT'S ON PAGE 10.  IT SAYS, "CHRISTENSEN &

13    GLASER, LLP, FIRM TO WHICH VICTORIA O'CONNOR FAXED THE

14    MGA-BRYANT AGREEMENT THAT ISAAC LARIAN HAD ORDERED HER TO

15    ALTER." THAT WAS TOPIC 13 IN THE SUBPOENA TO US.  THERE WAS 14

16    TOTAL TOPICS.  THAT WAS JUST ONE SPECIFIC ONE.

17        THE COURT:  IF THAT'S WHAT THE ORDER WAS, COUNSEL,

18    THAT'S WHAT THE ORDER WAS.

19        MR. QUINN:  YOUR HONOR, THERE'S NOTHING IN THE ORDER

20    THAT LIMITS THE DEPOSITION TO THAT SUBJECT.  WE HAD IDENTIFIED

21    A NUMBER OF TOPICS, AND THE COURT SAID, IN THE CONTEXT OF,

22    'THIS DEPOSITION CAN GO FORWARD, IDENTIFYING THE FIRM.'

23    THERE'S NOTHING IN THERE THAT SAID THAT WE COULDN'T EXAMINE

24    THEM ON THE OTHER TOPICS.

25        THE COURT:  I'LL TAKE A LOOK AT THAT AS WELL.  ALONG

1    WITH THE MR. GRONICH AND MR. TIONGCO, I'LL ALSO TAKE A LOOK AT

2    THE CHRISTENSEN & GLASER PART OF THE ORDER.  I CAN'T SAY FOR

3    CERTAIN RIGHT NOW WHAT IT WAS THAT I INTENDED OR DIDN'T INTEND,

4    WITHOUT LOOKING AT THE PAPER AND THE ORDER.

5         THANK YOU, COUNSEL.

6         MR. GIZER:  THANK YOU, YOUR HONOR.

7         THE COURT:  DOES ANYBODY ELSE NEED TO ADDRESS

8    ANYTHING WITH RESPECT TO THE DEPOSITIONS, THESE TWO EX-PARTE

9    APPLICATIONS?

10        I STILL HAVE TWO MORE TO GET TO.

11        MR. PAGE:  MICHAEL PAGE, YOUR HONOR, FOR

12   CARTER BRYANT.

13        YOUR HONOR MENTIONED BEING AVAILABLE FOR HEARINGS ON

14   THE 11TH AND THE 25TH TO DEAL WITH ISSUES COMING OUT OF

15   JUDGE INFANTE RULINGS.

16        DOES THAT MEAN THAT THEY CAN BE BROUGHT TO YOU ON A

17   SHORTENED OR AN EX-PARTE BASIS?  AND HOW SHOULD WE DO THAT?

18        THE COURT:  IT MAKES SENSE TO DO SO.

19        AS THE COURT HAS ORDERED HERE, WE HAVE AN OPPOSITION

20   DUE ON WEDNESDAY.  WE HAVE THE REPLY DUE A FEW DAYS LATER.  YOU

21   CAN MORE OR LESS USE THAT AS A MODEL.  I DON'T WANT TO LAY OUT

22   A SCHEDULING PLAN FOR MOTIONS THAT HAVEN'T EVEN BEEN BROUGHT

23   YET.  I'M HOPING THAT YOU SEE THE WISDOM IN JUDGE INFANTE'S

24   RULING AND HAVE NOTHING TO DISPUTE.  BUT ASSUMING THAT YOU

25   MIGHT HAVE SOMETHING TO DISPUTE, TRY TO WORK OUT A SCHEDULE

1    AMONGST YOURSELVES.

2         I'M CERTAINLY GOING TO AGREE TO ANY STIPULATION THAT

3    YOU REACH, AS LONG AS YOU GIVE ME ONE FULL WEEKEND TO GET READY

4    FOR THE MONDAY HEARING; THAT'S ALL I'M ASKING FOR.

5         MR. PAGE:  THANK YOU, YOUR HONOR.

6         THE COURT:  THE NEXT EX PARTE IS MATTEL'S EX PARTE TO

7    ENFORCE COURT ORDERS COMPELLING PRODUCTION OF TANGIBLE ITEMS.

8    THESE RELATE TO THESE 12 MOLDS THAT ARE OVER IN CHINA.

9         SO, MR. NOLAN, LET ME BEGIN WITH YOU.

10        I AM A LITTLE -- THERE'S THIS REPEATED REPRESENTATION

11   THAT NO ONE DELIBERATELY DID ANYTHING, AND I GUESS I'M NOT

12   CONCERNED ABOUT WHAT PEOPLE DELIBERATELY DID OR DIDN'T DO; I'M

13   MORE CONCERNED ABOUT WHY THESE THINGS WERE NOT IDENTIFIED

14   SOONER.  AND I GUESS I DON'T HAVE A REAL CLEAR ANSWER TO THAT.

15        MR. NOLAN:  YOUR HONOR, ALL I CAN SAY --

16        THE COURT:  -- GIVEN -- LET ME SAY THIS -- GIVEN THE

17   REPRESENTATIONS THAT WERE MADE ABOUT THE DILIGENCE UPON WHICH

18   SEARCHES WERE DONE PURSUANT TO DOCUMENT REQUESTS.

19        THERE'S NO DISPUTE THAT THESE ARE COVERED BY THE

20   DOCUMENT REQUESTS.  JUDGE INFANTE HAS FOUND SUCH, ESSENTIALLY;

21   AND I -- READING THE DOCUMENT REQUESTS, I THINK MATTEL IS RIGHT

22   ON THAT THESE ARE CERTAINLY WITHIN THE AMBIT OF SEVERAL OF THE

23   DOCUMENT REQUESTS; SO THERE'S NO QUESTION THAT THEY NEED TO BE

24   PRODUCED.  THEY'VE BEEN ASKED FOR.

25        I'M SOMEWHAT CONCERNED AS TO WHY THEY WERE JUST

1    FOUND.

2         MR. NOLAN:  YOUR HONOR, I THINK IT'S PRETTY CLEAR.

3         BOTH SIDES HAVE BEEN ENGAGED IN ROLLING PRODUCTIONS

4    AS THEY HAVE FOUND NEW MATERIAL.  AND WE CERTAINLY, COMING INTO

5    THIS, HAVE DONE THAT, YOUR HONOR; AND I THINK THE RECORD IS

6    CLEAR THAT WE HAVE PRODUCED -- I THINK IT'S SOMEWHERE AROUND

7    800 TO 900 INTANGIBLE OBJECTS AS WE'VE LOCATED THEM

8    DOMESTICALLY.  WE THEN CAME UP AND IDENTIFIED, IN -- I BELIEVE

9    IT WAS EARLY DECEMBER, THE LOCATION IN CHINA AND IN HONG KONG,

10   THESE ADDITIONAL ITEMS.  ALL IN GOOD FAITH, YOUR HONOR.

11        WE'RE TRYING TO DO WHAT WE CAN.

12        MATTEL PRODUCED 73 PERCENT OF THEIR DOCUMENTS IN

13   JANUARY, IN OUR PRODUCTION, YOUR HONOR.

14        THE COURT:  I UNDERSTAND THAT ARGUMENT THAT YOU MADE.

15        MR. NOLAN:  ALL I'M SAYING IS, YOUR HONOR, WITH

16   RESPECT TO THIS, WE IMMEDIATELY NOTIFIED THEM WHEN THEY WERE

17   IDENTIFIED AS MOLDS RELATED TO BRATZ.  THERE'S A LOT OF MOLDS

18   OUT THERE, YOUR HONOR, AND SCULPTS AND PRODUCTS AND STUFF LIKE

19   THAT.  IT IS SIMPLY THAT, YOUR HONOR; WE IDENTIFIED IT, WE

20   FOUND IT, WE IMMEDIATELY TURNED IT OVER.

21        I CAN'T ADDRESS WHAT O'MELVENY --

22        THE COURT:  I'M NOT ASKING YOU TO.

23        MR. NOLAN:  NO, NO, NO.  BUT WHAT I MEANT BY THAT IS

24   THAT I CAN REPRESENT TO THE COURT THAT I HAVE SEEN NOTHING

25   WHICH WOULD SUGGEST, 'OH, DON'T PRODUCE THAT.'  THAT'S NOT THE

1    ISSUE HERE.

2         THE COURT:  I'LL TELL YOU THE ONE THING, THE ONLY

3    THING THAT SEEMS TO SUGGEST THAT, ARE THESE LETTERS AND

4    CORRESPONDENCE WHICH SUGGESTS AN INTERPRETATION OF THE REQUEST

5    AS NOT CALLING FOR THAT.

6         MR. NOLAN:  ON THE MOLDS?

7         THE COURT:  YES.

8         HOW CAN YOU BE SUGGESTING THAT ON THE ONE HAND,

9    YOU'RE IN GOOD FAITH, LOOKING FOR THESE, BUT ON THE OTHER HAND,

10   COUNSEL IS SAYING, 'NO, THIS IS NOT COVERED'?

11        MR. NOLAN:  WELL, IF I MIGHT ADDRESS THAT REAL

12   QUICKLY, YOUR HONOR.

13        DESPITE THAT CORRESPONDENCE, AT THE SAME TIME, WE ARE

14   ALSO TELLING THEM ABOUT IT AND ALSO PROVIDING DIGITAL

15   PHOTOGRAPHS OF IT SO THEY CAN START PROCESSING IT IMMEDIATELY.

16        YOUR HONOR, ALL I CAN SAY IS THAT IN THIS CASE, MORE

17   THAN ANY CASE I'VE EVER SEEN, EVERY POSSIBLE ARGUMENT IS

18   RESERVED; AND IF WE'RE GUILTY OF THAT, I OWN UP TO IT; I'M

19   RESPONSIBLE AS THE LEAD LAWYER ON THIS CASE.  BUT IT WAS NOT

20   INTENDED AT ALL TO EVER SAY, 'YOU CAN'T HAVE ACCESS TO THIS

21   MATERIAL.'

22        NOW, I COULD MAKE AN INTERESTING ARGUMENT THAT ON ONE

23   PRODUCTION, THEY DID ASK FOR MOLDS SPECIFICALLY.  ON THE ONE

24   THAT WE WERE RESPONDING TO, THAT DIDN'T RELATE TO THESE, IT

25   DIDN'T RELATE TO THAT LOCATION, BUT --

1          THE COURT:  I DON'T FIND THAT A CONVINCING ARGUMENT.

2          MR. NOLAN:  BUT WE'RE NOT ADVANCING THAT ARGUMENT.

3          THE COURT:  FAIR ENOUGH.

4          MR. NOLAN:  AND WE DIDN'T ARGUE THAT.

5          YOUR HONOR, WHAT I'M ADVANCING IS OUR POSITION, IS

6     THAT WE DID A DILIGENT SEARCH.  WE WENT AND WE LOCATED THIS.

7     WE IMMEDIATELY NOTIFIED MATTEL.  WE PROVIDED THEM DATES FOR

8     THEM TO LOOK AT THIS STUFF.

9          WE CAN'T GET IT OUT OF CHINA.

10          THE COURT:  WHAT ABOUT THAT?  I KNOW THERE'S THIS

11     UNDERTAKING.  WHAT EFFORTS HAVE BEEN MADE TO GET RELIEF FROM

12     THAT AND GET THEM OVER HERE?

13          MR. NOLAN:  REAL QUICKLY, YOUR HONOR -- AND I WAS

14     HANDLING THIS, SO I CAN SPEAK TO THIS FIRST HAND -- I WAS

15     ADVISED AS TO THE LOCATION OF THIS MATERIAL IN HONG KONG.  I

16     WAS TOLD THAT THEY WERE SUBJECT TO AN UNDERTAKING BECAUSE

17     THERE'S LITIGATION GOING ON.  IT'S LIKE REMOVING EVIDENCE FROM

18     THE COURTROOM.

19          WE THEN IMMEDIATELY CALLED MATTEL, ADVISED THEM OF

20     THE SITUATION, AND TOLD THEM, 'LISTEN, WE HAVE TWO CHOICES.

21     ONE IS THAT WE CAN MAKE IT AVAILABLE IN HONG KONG.  THAT'S NOT

22     AN ISSUE.  BY THE WAY, WE NOTE THAT YOU HAVE AN OFFICE RIGHT

23     ACROSS FROM OUR OFFICES IN HONG KONG' -- THIS IS MATTEL AND MGA

24     -- 'SO THAT SHOULDN'T BE AN ISSUE.  BUT WE'LL GO THE EXTRA

25     MILE, AND WE WILL TALK TO COUNSEL IN HONG KONG TO TRY TO GET A

1    RELIEF FROM THE COURT.'

2        WE DID THAT.  SKADDEN IMMEDIATELY CALLED THE LAWYER

3    OVER IN HONG KONG, INSTRUCTED HIM TO GO TO COURT AND SEEK A

4    RELIEF SO THAT WE COULD MAKE THEM AVAILABLE.

5        THE COURT:  WHAT'S THE STATUS OF THAT?

6        MR. NOLAN:  THE FIRST COURT DENIED THE REQUEST AND

7    SAID -- AND I MAY BE WRONG ON THIS, YOUR HONOR -- IT WOULD BE

8    AKIN TO ALMOST LIKE ONE MAGISTRATE HAVING CRIMINAL DUTY AND

9    MAKING A RULING AND THEN GETTING A NEW MAGISTRATE AND THAT

10   MAGISTRATE SAYS, 'YOU KNOW, THE OTHER MAGISTRATE REVIEWED THE

11   BAIL CONDITIONS' -- THIS IS MY INTERPRETATION OF IT.  SO THE

12   FIRST JUDGE SAID, 'SOMEBODY ELSE RULES ON IT.  YOU HAVE TO GO

13   TO THE OTHER PERSON.'

14       WE WENT TO THE OTHER PERSON, AND THAT MATTER IS STILL

15   PENDING BEFORE THE COURT.  SO WE'VE MADE EVERY EFFORT, ALL OF

16   THE TIME, SAYING TO MATTEL, 'YOU HAVE OFFICES IN CHINA, AND YOU

17   HAVE OFFICES IN HONG KONG.  THESE THINGS ARE AVAILABLE.  HERE

18   ARE THE DATES THAT THEY'RE AVAILABLE.'  AND WE GAVE THEM DATES,

19   YOUR HONOR; WE GAVE THEM DATES IN ADVANCE.

20       AND I'LL REPRESENT TO THE COURT THAT WE CANNOT TAKE

21   THE MOLDS OUT OF CHINA, BECAUSE OF THE SIZE -- I MEAN, EVEN

22   THOSE THESE ARE SMALL DOLLS, THESE MOLDS ARE ENORMOUS; SO IT

23   MADE SENSE TO US TO JUST SIMPLY SAY, 'THIS ISN'T A BURDEN.

24   YOU'RE GOING TO HAVE A CAMERA TAKE PICTURES OF THIS' -- AND

25   THAT'S ALL THEY'RE GOING TO DO, IS TAKE THE DIGITAL PHOTOGRAPHS

1    OF THEM AND BRING THEM OVER HERE -- 'YOU'VE GOT STAFF OVER IN

2    CHINA AND IN HONG KONG.

3        THE COURT:  THIS ISN'T LIKE A KODAK CAMERA.  THIS

4    SOUNDS LIKE A PRETTY INTENSIVE, THREE-DIMENSIONAL

5    PHOTOGRAPHY --

6        MR. NOLAN:  YOUR HONOR, THAT'S THEIR OWN CHOOSING.

7    YOU KNOW, WE'RE MAKING THEM AVAILABLE IN THE LOCATION WHERE

8    THEY ARE KEPT --

9        THE COURT:  WHAT ABOUT THE EXPENSES SHIFTING ON THIS

10    BECAUSE OF THE INABILITY OF MGA TO GET THOSE OVER HERE?

11        MR. NOLAN:  I'M NOT AWARE OF ANY SITUATION WHERE

12    BECAUSE OF COURT RESTRICTIONS IN A JURISDICTION, WHERE WE'RE

13    BEING BOUND BY THOSE RULINGS, THAT WE SHOULD HAVE TO BEAR THE

14    BURDEN OF COSTS, WHERE THE PARTY HAS OFFICES AND A PRESENCE IN

15    BOTH HONG KONG AND IN CHINA.

16        I MEAN, YOUR HONOR, LET'S FACE IT, BOTH OF OUR

17    CLIENTS HAVE MANUFACTURING PLANTS LOCATED IN CHINA AND HONG

18    KONG.  THIS IS NOT A BURDEN TO THEM.  WE'RE NOT GETTING ANY

19    BENEFIT FROM THIS.

20        I WOULD REPRESENT TO YOU, YOUR HONOR, I THINK THAT

21    WE'VE ACTED IN COMPLETE GOOD FAITH IN THIS RESPECT.  IN TERMS

22    OF COST-SHIFTING, THE COST THAT WE'VE BORNE IN RESPONSE TO SOME

23    OF THE DISCOVERY IN THIS CASE IS JUST ASTRONOMICAL.  AND ONE OF

24    THE MOTIONS THAT YOU'RE GOING TO HEAR ABOUT SOON, YOUR HONOR,

25    IS THAT THERE'S A MOTION IN FRONT OF JUDGE INFANTE, THAT WE

1    JUST LEARNED ABOUT ON THURSDAY IN THE OPPOSITION -- IF YOU'RE

2    TALKING ABOUT COST-SHIFTING -- WHERE -- AND I THINK IN ONE OF

3    OUR PAPERS HERE, WE SAID THAT WE'VE PAID -- EXCLUSIVE

4    ATTORNEY'S FEE, WE'VE PAID $4 MILLION TO MAKE PRODUCTION HERE.

5    WE LEARNED ON THURSDAY THAT DESPITE JUDGE INFANTE'S ORDERS IN

6    THIS CASE, MATTEL HAS NOT REVIEWED LIVE E-MAILS OR BACKUP TAPE

7    E-MAILS IN DOING THEIR PRODUCTION REQUESTS, BECAUSE ON THEIR

8    OWN, THEY DETERMINED THAT IT WAS TOO EXPENSIVE.

9         SO I'M JUST SAYING, YOUR HONOR, I RESPECTFULLY DO NOT

10   BELIEVE THAT IT IS APPROPRIATE FOR COST-SHIFTING HERE,

11   ESPECIALLY WHEN WE HAVE PROVIDED THEM SO MUCH DISCOVERY HERE,

12   IN TERMS OF OBJECTS, MOLDS -- THEY ALREADY HAVE OTHER MOLDS

13   THAT WERE USED, YOUR HONOR.  THEY COULD EASILY GO, WALK ACROSS

14   THE STREET, DO WHATEVER CAMERA PHOTOGRAPHS THEY NEED.  WE'VE

15   ALREADY PROVIDED DIGITAL PHOTOGRAPHS TO THEM.

16        THE COURT:  OKAY, COUNSEL.  I THINK I UNDERSTAND YOUR

17   POSITION.

18        LET ME HEAR FROM MR. COREY ON THIS.

19        AND, MR. COREY, MAYBE I SHOULD SAY THIS:  I AGREE

20   THAT YOU NEED TO HAVE ACCESS TO THESE, AND I'M PREPARED TO GIVE

21   YOU LEAVE THROUGH THE MONTH OF FEBRUARY, UNTIL MARCH 1ST, TO

22   HAVE ACCESS TO THESE, TO TAKE THE THREE-DIMENSIONAL

23   PHOTOGRAPHS.

24        MY QUESTION IS -- WHAT I'M DECIDING HERE IS BASICALLY

25   ON THE COST-SHIFTING ISSUE.

1          MR. COREY:  WITH RESPECT TO THE COST-SHIFTING ON THIS

2     PARTICULAR ISSUE, I DO THINK IT'S APPROPRIATE, AND IT'S

3     APPROPRIATE FOR THE REASON THAT THE COURT IDENTIFIED; THAT IF

4     THERE HAD BEEN SOME SHOWING OF DILIGENCE, THEN WE COULD HAVE

5     DEALT WITH THE UNDERTAKING SOONER.  IT COULD HAVE BEEN PRODUCED

6     IN THE UNITED STATES.

7          I THINK THE FACT THAT THEY'RE JUST GETTING AROUND TO

8     IDENTIFYING THE UNDERTAKING FOR US NOW, SAYING THAT THEY'RE

9     TRYING TO DEAL WITH IT IN THIS VERY COMPRESSED PERIOD OF TIME,

10    IN LIGHT OF THE FACT THAT JUDGE INFANTE HAD ORDERED THAT THESE

11    THINGS SHOULD HAVE BEEN PRODUCED OR MADE AVAILABLE TO US MONTHS

12    AGO --

13         THE COURT:  CAN I REALLY MAKE THAT FINDING, THOUGH,

14    BECAUSE I REALLY DON'T KNOW ENOUGH ABOUT THAT COURT PROCEEDING

15    OVER IN HONG KONG TO SAY WHETHER THIS CHALLENGE TO THE

16    UNDERTAKING OR REQUEST FOR RELIEF FROM THE UNDERTAKING WOULD

17    HAVE BEEN MADE IN OCTOBER, AS OPPOSED TO JANUARY, THAT THAT

18    REALLY WOULD HAVE HAD ANY DIFFERENT RESULT.

19         MR. COREY:  I THINK THE ABSENCE OF EVIDENCE ON THIS

20    IS SIGNIFICANT, BUT I DON'T THINK THAT SHOULD BEAR AGAINST

21    MATTEL.  THE ONUS IS ON THEM TO SAY, 'THIS IS THE NATURE OF THE

22    UNDERTAKING, THIS IS THE NATURE OF THE PROCEEDING.'  THEY

23    HAVEN'T EVEN IDENTIFIED THE PROCEEDING FOR US.

24         THIS ISN'T AN OBJECTION OR ANYTHING THAT THEY HAD

25    RAISED IN FRONT OF JUDGE INFANTE, WHEN THESE REQUESTS WERE IN

1   FRONT OF HIM. SO I DON'T THINK THAT BURDEN, PARTICULARLY IN

2   LIGHT OF THE ABSENCE OF EVIDENCE, AN ARTICULATION OF WHAT

3   EXACTLY THE NATURE OF THIS UNDERTAKING IS. WHAT PRODUCTS OR

4   WHAT ITEMS THIS APPLIES TO SHOULD BE BORNE BY MATTEL.

5       THE COURT: IS THERE ANYTHING ELSE YOU WANT TO SAY,

6   COUNSEL?

7       MR. COREY: YES. VERY BRIEFLY.

8       WHAT WE'RE REALLY CONCERNED ABOUT HERE IS BEING

9   PREJUDICED WITH RESPECT TO WHAT OUR EXPERTS CAN LOOK AT; AND

10   THAT'S THE REASON THAT THIS IS BEFORE THIS COURT AND NOT BEFORE

11   JUDGE INFANTE.

12       WE WOULD LIKE SOME RELIEF, OR AT LEAST THE ABILITY TO

13   SUPPLEMENT OUR INITIAL EXPERT REPORTS WITH INFORMATION THAT WE

14   MAY OBTAIN FROM THESE SCANS.

15       AND THE NEXT POINT IS, WE APPRECIATE THE OPPORTUNITY

16   TO DO IT BY THE END OF FEBRUARY. WE WILL TRY TO DO THAT. THE

17   CHINESE NEW YEAR, HOWEVER, RUNS BETWEEN, I BELIEVE,

18   FEBRUARY 2ND AND FEBRUARY 16TH, WHEN NOTHING CAN REALLY HAPPEN.

19   MY UNDERSTANDING IS THAT IT TAKES ABOUT TEN DAYS TO GET THROUGH

20   CUSTOMS WITH THIS TYPE OF SCANNING EQUIPMENT.

21       WHAT WOULD MAKE IT EXCEEDINGLY --

22       THE COURT: THEY DON'T HAVE THAT OVER THERE? HONG

23   KONG IS PRETTY ADVANCED.

24       MR. QUINN: IT'S THE CONSULTANT'S SCANNING EQUIPMENT.

25   I CAN'T SPEAK INTELLIGENTLY TO EXACTLY WHAT IT IS. IT'S HIS

1    EQUIPMENT.  IT'S SET UP THE WAY HE LIKES IT.  IF HE USES

2    SOMEBODY ELSE'S SCANNING EQUIPMENT, I GUARANTEE YOU, HE WOULD

3    BE CROSS-EXAMINED ON THE FACT THAT HE DIDN'T USE HIS OWN

4    EQUIPMENT.  THAT'S REALLY WHAT IT COMES DOWN TO.

5         THE COURT:  I SEE.

6         MR. COREY:  WE WILL TRY TO GET IT ACCOMPLISHED IN

7    MARCH.  WHAT WOULD BE EXCEEDINGLY HELPFUL IS IF ALL OF THE

8    MATERIALS CAN BE MADE AVAILABLE IN A SINGLE LOCATION.  I

9    UNDERSTAND THAT (UNINTELLIGIBLE) IS ABOUT 20 MILES FROM HONG

10   KONG.  IF ALL OF THOSE MATERIALS COULD BE MADE AVAILABLE IN THE

11   SAME LOCATION, THAT WOULD PREVENT THE CONSULTANT FROM HAVING TO

12   TAKE HIS SCANNING EQUIPMENT THROUGH CUSTOMS TWICE.

13        THE COURT:  RIGHT.  YOU JUST WANT TO GO INTO THE

14   ADMINISTRATIVE ZONE OF HONG KONG AND NOT HAVE TO GO INTO THE

15   PRC ITSELF.

16        MR. COREY:  RIGHT.  ABSOLUTELY.

17        THE COURT:  I'M NOT SUGGESTING THAT HONG KONG IS NOT

18   PART OF THE PRC.

19        MR. COREY:  ALL I'M SAYING IS, IF WE CAN GO THROUGH

20   CUSTOMS ONCE, THAT WOULD BE MUCH EASIER.

21        THE COURT:  VERY WELL.

22        COUNSEL, WHAT ABOUT THE IDEA OF BRINGING IT TOGETHER

23   IN HONG KONG?  IS THAT SOMETHING THAT CAN HAPPEN?

24        MR. NOLAN:  YOUR HONOR, WE WOULD TRY TO ACCOMMODATE,

25   FOR THE CONVENIENCE OF THE PARTY, PUTTING THEM ALL IN ONE

1    LOCATION.  HOWEVER, I CANNOT TALK TO THE CUSTOMS PROCEDURES.  I

2    DON'T KNOW HOW EASY IT IS TO GET THE MOLDS TO HONG KONG OR GET

3    THE PRODUCT THAT'S IN HONG KONG OVER TO CHINA.  I THINK THAT

4    THERE ARE ISSUES.

5         AND I RESPECTFULLY SUBMIT, YOUR HONOR, THAT IF THIS

6    IS JUST A -- AND I'M NOT SAYING "JUST" A CONSULTANT -- BUT IF

7    THIS IS BECAUSE THEY'RE USING A PARTICULAR CONSULTANT WHO LIKES

8    A PARTICULAR CAMERA, A, I DON'T THINK THERE'S A REASON FOR THE

9    COST-SHIFTING TO ME, AS A RESULT BECAUSE THEY HAVE A PREFERENCE

10   TO USE ONE CAMERA VERSUS --

11        THE COURT:  IT'S NOT A PREFERENCE.  HE'S CONCERNED

12   ABOUT YOUR OBJECTION TO THE EXPERT RELYING ON SOMEBODY ELSE'S

13   THREE-DIMENSIONAL PHOTOGRAPHS.  THEY'RE WILLING TO STIPULATE TO

14   WHATEVER THESE PHOTOGRAPHS ARE AND NOT RAISE ANY OBJECTION.

15        MR. NOLAN:  YOUR HONOR, WE PROVIDED THEM DIGITAL

16   PHOTOGRAPHS.  THEY ASKED US TO TAKE THE DIGITAL PHOTOGRAPHS.

17   YOUR HONOR, IF THEY WANT TO COME TO US AND SHOW US PHOTOGRAPHS

18   OF THESE OBJECTS AND LET US BE THERE WHEN THEY TAKE THE

19   PHOTOGRAPHS, WE'VE GOT -- WE'RE GOING TO WIN THIS CASE IN A

20   DIFFERENT WAY THAN WORRYING ABOUT WHETHER OR NOT THE CAMERA WAS

21   AN INSTAMATIC OR A VIDEO CAMERA.

22        THE COURT:  ALL RIGHT.

23        MR. NOLAN:  BUT I DO WANT TO MAKE ONE LAST POINT ON

24   THIS, SO THE RECORD IS CLEAR, YOUR HONOR.

25        WE IDENTIFIED, IN DECEMBER, IN FACT DECEMBER 7TH,

1    THAT THERE WAS AN UNDERTAKING THAT WE HAD TO DEAL WITH; AND IT

2    WAS MATTEL THAT ASKED US FOR THE RIGHT TO INSPECT IN HONG KONG.

3    AND WE IMMEDIATELY SAID YES.

4          AT THE SAME TIME, WE DID THIS DOUBLE-TRACKING.

5          IT WASN'T UNTIL DECEMBER 26TH, FOR WHATEVER REASON --

6    WHY IT TOOK 22 DAYS, I DON'T KNOW -- FOR THEM TO ADVISE US THAT

7    THEY WERE GOING TO HAVE TROUBLE GETTING A CAMERA THROUGH

8    CUSTOMS.  IT WAS GOING TO TAKE SEVEN DAYS TO GET THROUGH

9    CUSTOMS.

10         ALL I'M SAYING IS, YOUR HONOR, I'M JUST ADDRESSING

11   THIS COST-SHIFTING ISSUE.

12         THE COURT:  VERY WELL.

13         MR. COREY:  EXTRAORDINARILY BRIEFLY.

14         JUST SO THERE'S NO CONFUSION, WE'RE NOT TALKING

15   ABOUT, LIKE, A CAMERA THAT YOU CAN GO BUY AT A STORE.  I MEAN,

16   THE EQUIPMENT COSTS ABOUT A QUARTER OF A MILLION DOLLARS; AND

17   THAT'S BEFORE IT'S CALIBRATED.  THE DEGREE OF PRECISION HERE IS

18   VERY SIGNIFICANT.  I'M NOT TALKING ABOUT SOMETHING SOMEBODY CAN

19   RUN DOWN TO BEST BUY AND BUY.  IT'S NOT A TRIVIAL UNDERTAKING.

20         THE COURT:  BUT IF THERE IS SOMEBODY WITH THAT KIND

21   OF EQUIPMENT AND THAT KIND OF EXPERTISE TO DO IT OVER IN HONG

22   KONG ALREADY, AND COUNSEL IS WILLING TO STIPULATE THAT WHATEVER

23   PICTURE THEY TAKE CAN BE USED BY THE EXPERT FOR HIS PURPOSES,

24   AND THERE'S NOT GOING TO BE ANY AUTHENTICATION OR FOUNDATION OR

25   CHALLENGE BASED ON THE PHOTOGRAPH ITSELF, THEN THAT WOULD SAVE

1    A LOT OF MONEY AND A LOT OF TIME AND EFFORT FOR EVERYBODY;

2    CORRECT?

3        MR. COREY:  IT THEORETICALLY WOULD.  BUT IN LIGHT OF

4    THE CHINESE NEW YEAR, THAT'S NOT A PROCESS WE WOULD EVEN BE

5    ABLE TO START UNTIL THE SECOND HALF OF THIS MONTH.

6        THE COURT:  ALL RIGHT.

7        WELL, ASSUMING THE COURT GAVE YOU SUFFICIENT TIME TO

8    OBTAIN THIS...

9        MR. COREY:  THAT'S REALLY THE BASIS FOR OUR MOTION,

10   IS WE DON'T WANT TO BE PREJUDICED BY HAVING THIS STUFF GIVEN TO

11   US --

12       THE COURT:  YOU'RE NOT GOING TO BE PREJUDICED.

13       MR. NOLAN:  BY THE WAY, WE DON'T OPPOSE THE

14   SUPPLEMENTATION OF THE EXPERT REPORTS.  IN FACT, I THINK SINCE

15   THE WAY THE TIMING IS GOING TO BE WITH JUDGE INFANTE'S RULINGS

16   COMING OUT ON EITHER THE 11TH OR THE 13TH, I THINK BOTH SIDES

17   ARE GOING TO HAVE TO BE SUPPLEMENTING THEIR EXPERT REPORTS THAT

18   ARE DUE ON THE 11TH.  IT'S JUST GOING TO BE VIRTUALLY

19   IMPOSSIBLE.  SO WE HAVE NO OBJECTION, YOUR HONOR, AS THIS PLAYS

20   OUT, IF THEY HAVE TO SUPPLE ONE OF THEIR EXPERTS.

21       MR. COREY:  WE'VE IDENTIFIED SOME THINGS THAT HAVE

22   BEEN IN OUR REPLY ON PAGES 1 AND 2 THAT HAVE BEEN IDENTIFIED IN

23   THE DOCUMENT PRODUCTION, THAT ARE TANGIBLE ITEMS, THAT HAVE NOT

24   BEEN PROVIDED.

25       I'D ENCOURAGE THE COURT TO LOOK AT THAT.

1       THE COURT:  I AM GOING TO GRANT THE EX-PARTE

2    APPLICATION IN PART.  I AM GOING TO GRANT LEAVE TO MATTEL TO

3    TAKE THESE PHOTOGRAPHS AND OBTAIN THIS INFORMATION AND TO

4    REVIEW THE MOLDS.

5       I'M DISINCLINED AT THIS POINT TO MAKE THE

6    COST-SHIFTING.  I WILL GIVE LEAVE TO SUPPLEMENT EXPERT REPORTS,

7    THOUGH, DEPENDING ON THE TIMING AND WHEN THIS INFORMATION AND

8    THESE THINGS ARE MADE AVAILABLE.  BUT I DO WANT COUNSEL TO MEET

9    AND CONFER.

10       AND THE COURT'S DENIAL OF THE COST-SHIFTING IS MADE

11    WITHOUT PREJUDICE.  IF EITHER SIDE IS UNREASONABLE IN TERMS OF

12    HOW THEY GO ABOUT MAKING THESE MOLDS AVAILABLE, THE COURT MIGHT

13    RECONSIDER IT DOWN THE ROAD.  BUT LET'S TRY TO GET THESE MOLDS

14    TOGETHER IN HONG KONG, IF WE CAN.  IF WE CAN'T, WE CAN'T.  AND

15    I'M NOT GOING TO ORDER YOU TO DO SOMETHING YOU CAN'T DO.

16       LET'S TRY TO FIND SOMEBODY OVER THERE ON THE GROUND

17    THAT CAN TAKE IT AND WORK OUT A STIPULATION IN TERMS OF ANY

18    OBJECTIONS TO THAT BEING RELIED UPON BY THE EXPERT.  AND IF

19    ANYONE IS UNREASONABLE IN TRYING TO COME UP WITH SOME

20    COST-SAVING MEASURES, THEN THE COURT MIGHT RECONSIDER IMPOSING

21    COSTS.  BUT ASSUMING THAT EVERYONE IS WORKING IN GOOD FAITH,

22    I'M GOING TO DECLINE TO DO THAT.

23       THE LAST EX-PARTE APPLICATION IS CONCERNING THE

24    COMPELLING OF PRODUCTION OF ELECTRONIC MEDIA FROM THIRD

25    PARTIES, OR, IN THE ALTERNATIVE, MODIFYING THE SCHEDULING

1    ORDER.

2        MY SENSE ON THIS EX-PARTE APPLICATION IS THAT THIS IS

3    SOMETHING WHICH IS PROPERLY BEFORE JUDGE INFANTE.  IT'S NOT

4    CLEAR TO ME WHY THIS SHOULD NOT BE, AS OTHER DISPUTES OVER

5    PROVIDING THE ELECTRONIC MEDIA -- WHY IT IS NOT BEFORE

6    JUDGE INFANTE.

7        SO I'D LIKE TO HEAR FROM THE PLAINTIFF, FROM MATTEL,

8    ON THIS.

9        IN FACT, MR. NOLAN ACTUALLY MAKES THE ACCUSATION THAT

10   YOU'RE DOING A BIT OF FORUM SHOPPING IN THIS; THAT YOU GOT AN

11   ADVERSE RULING ON THIS BEFORE JUDGE INFANTE ON AN UNRELATED

12   WITNESS AND THAT'S WHY YOU'RE BEFORE THE COURT HERE ON THIS.

13       IS JUST NOT CLEAR TO ME, MR. COREY, WHY THIS IS

14   BEFORE THIS COURT AND NOT BEFORE JUDGE INFANTE.

15       MR. COREY:  THE REASON THIS APPLICATION IS BEFORE

16   THIS COURT IS THE SAME AS THE OTHER APPLICATION.  ONLY YOUR

17   HONOR HAS THE ABILITY TO ENSURE THAT WE CAN EITHER GET RELIEF

18   FROM THE EXPERT CUTOFF -- FROM THE FILING OF THE EXPERT CUTOFF

19   DATE, BUT BY RELYING ON INFORMATION THAT IS THE SUBJECT OF THIS

20   EX-PARTE APPLICATION THAT WE WILL UNDOUBTEDLY RECEIVE AFTER THE

21   CLOSE OF DISCOVERY.

22       THE COURT:  AND THAT'S FAIR ENOUGH.  AND I WILL

23   CERTAINLY GIVE ANY PARTY LEAVE TO COME BACK TO THE COURT AFTER

24   A RULING BY JUDGE INFANTE THAT APPARENTLY HAS AN EFFECT OR IS

25   MAKING THE SCHEDULING ORDER UNMANAGEABLE OR NEEDS RELIEF TO

1    FILE A SUPPLEMENTAL EXPERT REPORT, OR WHATEVER IT MIGHT BE.

2    BUT IN THE FIRST INSTANCE, I THINK THIS ISSUE SHOULD BE DECIDED

3    BY JUDGE INFANTE.  I DON'T WANT TO HAVE ME DECIDING SOME OF

4    THESE ISSUES AND JUDGE INFANTE DECIDING OTHER ONES.

5         MR. COREY:  WE'LL PUT THIS IN FRONT OF JUDGE INFANTE,

6    YOUR HONOR.

7         THE COURT:  VERY WELL.

8         SO THIS EX-PARTE APPLICATION IS DENIED.

9         I THINK THAT TAKES CARE OF ALL OF IT.  I'M GOING TO

10   ISSUE AN ORDER THIS AFTERNOON WHICH WILL SPELL THIS OUT AS

11   CLEARLY AS I CAN.  IF THERE ARE ANY QUESTIONS ABOUT IT, COME

12   BACK EARLY AS OPPOSED TO LATER.

13        AND MR. QUINN...

14        MR. QUINN:  YOUR HONOR, JUST ONE THING THAT HAD

15   OCCURRED TO ME ABOUT PUTTING PHASE TWO DEPOSITIONS OFF.  THERE

16   IS ONE IN LONDON THIS WEEK.  OUR LAWYER IS ALREADY ON AN

17   AIRPLANE TO GET OVER THERE; THAT'S MR. BRAUR.

18        I DON'T KNOW IF THAT'S GOING TO BE A PROBLEM.

19        MR. NOLAN:  NO ISSUE.  WE'LL AGREE.

20        MR. DICANIO, WHO'S OVER IN LONDON, WILL KILL ME IF HE

21   COMES HOME WITHOUT HAVING BEEN DEPOSED.  WE MADE HIM AVAILABLE

22   ONE DAY IN LONDON AND --

23        THE COURT:  SOUNDS GOOD.

24        MR. QUINN:  THEN, YOUR HONOR, WE'RE THINKING AHEAD TO

25   SUMMARY JUDGMENT MOTIONS.  I KNOW WE ALL ARE LOOKING AT THIS

1    CASE AND THINKING ABOUT WAYS IT MIGHT BE CUT DOWN AND SHAPED

2    FOR TRIAL.

3         WE'RE AWARE OF YOUR HONOR'S RULE IN THIS COURTROOM

4    THAT THERE BE ONLY ONE MOTION.

5         THE COURT:  YES.

6         MR. QUINN:  IT SEEMS TO US THAT -- AS WE LOOK AT IT,

7    WE SEE SEVERAL ISSUES, SEVERAL SIGNIFICANT ISSUES, WHICH MIGHT

8    APPROPRIATELY BE DEALT WITH BY SUMMARY JUDGMENT MOTION.

9         THE COURT:  WHEN I SAY ONLY ONE MOTION, I'M NOT

10   SUGGESTING THAT YOU HAVE TO PICK ONLY ONE ISSUE.  YOU CAN

11   CERTAINLY BRING AS MANY ISSUES IN THAT MOTION AS YOU NEED TO

12   BRING.  I JUST DON'T WANT TO HAVE SUMMARY JUDGMENT MOTIONS ON

13   MULTIPLE DAYS.  THAT'S REALLY NOT EVEN IN PLAY IN THIS CASE.  I

14   DON'T WANT A MOTION FOR SUMMARY JUDGMENT BROUGHT HALFWAY

15   THROUGH DISCOVERY AND THEN ANOTHER ONE BROUGHT LATER.  I JUST

16   WANT TO DEAL WITH ALL OF THE ISSUES THAT COULD BE RAISED ON A

17   MOTION FOR SUMMARY JUDGMENT AT ONCE.

18        MR. QUINN:  THE REASON I RAISE THE ISSUE, YOUR HONOR,

19   IS BECAUSE, PRESUMABLY, THE PAGE LIMIT WOULD APPLY.  IN A CASE

20   LIKE THIS, WE MIGHT NEED --

21        THE COURT:  I ASSUME YOU KNOW HOW TO GO ABOUT ASKING

22   FOR A WAIVER OF THE PAGE LIMIT.

23        MR. QUINN:  THANK YOU, YOUR HONOR.

24        THE COURT:  ALTHOUGH THAT'S REALLY TEMPTING NOT TO

25   DO IT.

1          MR. NOLAN:  YOUR HONOR, WE WOULD ASK, JUST LIKE

2    NANCY REAGAN, 'JUST SAY NO.'  SOMETIMES THAT WILL WORK.

3          YOUR HONOR, CAN I HAVE ONE CLARIFICATION WITH RESPECT

4    TO SCHEDULING?

5          WHEN IS MATTEL TO FILE A RESPONSE WITH RESPECT TO THE

6    MANNER AND THE CONDUCT OF THE INTERVIEWS OF MS. CABRERA AND

7    MORALES?  IS IT FRIDAY?  AND IS THERE A HEARING ON MONDAY ABOUT

8    THAT?

9          THE COURT:  THAT'S CORRECT.  THERE'S AN OPPOSITION ON

10   WEDNESDAY; MATTEL'S REPLY IS FRIDAY; AND THE HEARING IS ON

11   MONDAY.

12         MR. NOLAN:  THAT WAS ON THE BANDYING.

13         THE COURT:  OH, I'M SORRY.

14         MR. NOLAN:  ON CABRERA AND MORALES, I THOUGHT THAT

15   YOU HAD SUGGESTED THAT YOU WANTED TO HANDLE THAT.

16         THESE ARE THE TWO HISPANIC WOMEN.

17         THE COURT:  RIGHT.  THAT'S ONLY IF -- THERE'S GOING

18   TO BE A MEET-AND-CONFER, AND I HOPE THEY'RE GOING TO WORK THIS

19   ALL OUT BETWEEN THEM.  ONLY IF THERE'S A MOTION.  AND THEN

20   SHE'S INVITED TO BRING THAT MOTION ON THE 11TH OR THE 25TH,

21   WHATEVER IT IS, AND I'LL LET YOU WORK OUT A SCHEDULING ORDER,

22   AS LONG AS I HAVE THE BRIEFS THE FRIDAY BEFORE THE MONDAY

23   HEARING.  I SET THAT FOR THE 11TH, BECAUSE I TRUST COUNSEL CAN

24   WORK THAT OUT.

25         MR. NOLAN:  BECAUSE I HAD UNDERSTOOD THAT MR. COREY

1    AND MR. QUINN WERE ASKED TO FILE A RESPONSE OR A REPLY TO THE

2    COURT WITH RESPECT TO THE CIRCUMSTANCES.

3          THE COURT:  I THINK THEY INDICATED THAT THEY ALREADY

4    HAVE FILED A REPLY AND THAT THERE'S INFORMATION CONCERNING THAT

5    ON THIS.

6          MR. NOLAN:  I APOLOGIZE FOR NOT UNDERSTANDING.

7          THE COURT:  AM I RIGHT, MR. QUINN?

8          MR. QUINN:  THAT WAS MY UNDERSTANDING.

9          THE COURT:  THEY JUST DIDN'T KNOW ANYTHING ABOUT THE

10   REPLY; THAT WAS SOMEBODY ELSE WHO WROTE THAT; SO THEY DON'T

11   WANT TO TALK TO ME ABOUT IT RIGHT NOW.

12         THANK YOU.  GOOD AFTERNOON.

13

14

15

16

17

18               CERTIFICATE

19

20   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
        STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF

21   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
        ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN

22   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
        THE UNITED STATES.

23

24   _____          _____

        THERESA A. LANZA, CSR, RPR                    DATE

25   FEDERAL OFFICIAL COURT REPORTER