THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
(laguiar@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Tel.: (213) 687-5000
Fax: (213) 687-5600

Attorneys for The MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, <br><br> Plaintiff, <br><br> v. <br><br> MATTEL, INC., a Delaware corporation, <br><br> Defendant. <br><br> AND CONSOLIDATED ACTIONS. | CASE NO. CV 04-9049 SGL (RNBx) <br><br> Consolidated with Case No. 04-9059 and Case No. 05-2727 <br><br> Honorable Stephen G. Larson <br><br> **MGA PARTIES' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR STATEMENT OF POSITION REGARDING PHASE 1C ISSUES** <br><br> Hearing Date: November 10, 2008 <br> Time: 1:00 PM |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ..................................................................................................................... 1

    I.    MATTEL'S CLAIMS ARE BARRED BY LACHES ........................................ 1

        A.    Mattel Delayed In Bringing This Action For As Long As It Possibly Could ............................................................................................. 1

        B.    The Prejudice Suffered By The MGA Parties Was Extraordinary ........... 3

            1.    The Record Is Replete With Evidentiary Prejudice To MGA Parties ........................................................................................ 3

            2.    Billions Of Dollars Invested In BRATZ Constitute Prejudice ........................................................................................ 6

    II.    MATTEL'S CLAIMS ARE BARRED BY ESTOPPEL ..................................... 8

    III.    MATTEL'S CLAIMS ARE BARRED BY WAIVER ....................................... 8

    IV.    MATTEL IS NOT ENTITLED TO DECLARATORY RELIEF ..................... 10

    V.    MATTEL IS NOT ENTITLED TO INJUNCTIVE RELIEF UNDER THE UCL ......................................................................................................... 11

CONCLUSION ............................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s):**

**CASES:**

adidas-America, Inc. v. Payless Shoesource, Inc.,
    546 F. Supp. 2d 1029 (D. Or. 2008) .................................................. 3, 8, 10

Biren v. Equal. Emergency Medical Group, Inc.,
    102 Cal. App. 4th 125 (2002) ..................................................................... 10

Brzozowski v. Correctional Physician Services, Inc.,
    360 F.3d 173 (3d Cir. 2004) ......................................................................... 2

Buckland v. Threshold Enterprises, Ltd.,
    155 Cal. App. 4th 798 (2007) ..................................................................... 12

Castle v. Wells Fargo Finance, Inc.,
    NO. C 06-4347 SI,
    2007 WL 1105118 (N.D. Cal. Apr. 10, 2007) .............................................. 2

Chirco v. Crosswinds Communities, Inc.,
    474 F.3d 227 (6th Cir.), cert. denied,
    __ U.S. __, 127 S. Ct. 2975 (2007) ......................................................... 7, 8

Colgan v. Leatherman Tool Group, Inc.,
    135 Cal. App. 4th 663 (2006) ..................................................................... 12

Cortez v. Purolator Air Filtration Products Co.,
    23 Cal. 4th 163 (2000) ................................................................................ 12

Danjaq LLC v. Sony Corp.,
    263 F.3d 942 (9th Cir. 2001) ..................................................................... 6-7

Daro v. Superior Court,
    151 Cal. App. 4th 1079 (2007) ................................................................... 11

Deal v. Consumer Programs, Inc.,
    458 F. Supp. 2d 970 (E.D. Mo. 2005),
    aff'd, 470 F.3d 1225 (8th Cir. 2006) ........................................................... 10

Dimension One Spas, Inc. v. Coverplay, Inc.,
    NO. 03CV1099-L(CAB),
    2008 WL 4165034 (S.D. Cal. Sept. 5, 2008) ................................................ 6

Emerson Electric Co. v. Rogers,
    418 F.3d 841 (8th Cir. 2005) ...................................................................... 10

Field v. Bank of America National Trust & Savings Association,
    100 Cal. App. 2d 311 (1950) ........................................................................ 6

Friedman v. Estate of Presser,
    929 F.2d 1151 (6th Cir. 1991) ...................................................................... 2

Grand Canyon Trust v. Tucson Elec. Power Co,
    391 F.3d 979 (9th Cir. 2004) .................................................................... 3, 6

Jackson v. Axton,
    25 F.3d 884 (9th Cir. 1994) ............................................................................... 5, 7

Jacobsen v. Deseret Book Co.,
    287 F.3d 936 (10th Cir. 2002) ................................................................................ 3

Jarrow Formulas, Inc. v. Nutrition Now, Inc.,
    304 F.3d 829 (9th Cir. 2002) .......................................................................... 2, 3, 7

Kling v. Hallmark Cards Inc.,
    225 F.3d 1030 (9th Cir. 2000) ................................................................................ 3

Korody-Colyer Corp. v. General Motors Corp.,
    828 F.2d 1572 (Fed. Cir. 1987) .............................................................................. 2

Lam. v. Bur. of Sec & Investigative Services,
    34 Cal. App. 4th 29 (1995) ..................................................................................... 3

Lone Mountain Production Co. v. Natural Gas Pipeline Co. of America,
    710 F. Supp. 305 (D. Utah 1989),
    aff'd, 984 F.2d 1551 (10th Cir. 1992) ................................................................... 10

Madrid v. Perot Systems Corp.,
    130 Cal. App. 4th 440 (2005) ............................................................................... 12

New Era Publishings International, ApS v. Henry Holt & Co.,
    873 F.2d 576 (2d Cir. 1989) ................................................................................... 7

O'Donnell v. Vencor,
    466 F.3d 1104 (9th Cir. 2006) ................................................................................ 2

Pacific Hills Homeowners Association v. Prun,
    160 Cal. App. 4th 1557 (2008) ............................................................................... 6

Pochopien v. Marshall, O'Toole, Gerstein, Murray & Borun,
    315 Ill. App. 3d 329 (2000) .................................................................................. 10

Richard B. LeVine, Inc. v. Higashi,
    131 Cal. App. 4th 566 (2005) ............................................................................... 10

Robert F. Kennedy Medical Ctr. v. Department of Health Services,
    61 Cal. App. 4th 1357 (1998) ................................................................................. 3

Rubin v. Los Angeles Federal Savings & Loan Association,
    159 Cal. App. 3d 292 (1984) ................................................................................ 10

San Francisco v. Grant Co.,
    181 Cal. App. 3d 1085 (1986) ................................................................................ 8

Selph v. Nelson, Reabe & Snyder, Inc.,
    966 F.2d 411 (8th Cir. 1992) .................................................................................. 2

TV Interactive Data Corp. v. Microsoft Corp.,
    NO. C 02-02385JSW,
    2005 WL 2277121 (N.D. Cal. Sept. 19, 2005) ........................................................ 6

Three Sixty Five Club v. Shostak,
   104 Cal. App. 2d 735 (1951) ...................................................................... 8

Tillamook Country Smoker, Inc. v. Tillamook County Creamery Association,
   311 F. Supp. 2d 1023 (D. Or. 2004),
   aff'd, 465 F.3d 1102 (9th Cir. 2006) ........................................................... 7

Watermark Publishers v. High Tech. System Inc.,
   44 U.S.P.Q. 2d 1578 (S.D. Cal. 1997) ......................................................... 8

Wells Fargo Bank , N.A. v. Bank of America NT&SA,
   32 Cal. App. 4th 424 (1995) ....................................................................... 8

Wyler Summit Partnership v. Turner Broad. System, Inc.,
   235 F.3d 1184 (9th Cir. 2000) ..................................................................... 2

**STATUTES:**

Cal. Bus. & Prof. Code § 17204 ......................................................................... 11

**MISCELLANEOUS:**

5 William F. Patry, Patry on Copyright § 18:24 (2008) ..................................... 11

**PRELIMINARY STATEMENT**

The MGA Parties established in their Statement of Position ("Stmt.") that Mattel's claims were barred by laches and estoppel because Mattel deliberately delayed suing them, which deprived them of opportunities to obtain evidence and caused them to sink millions of dollars into BRATZ development. Faced with adverse law and unfriendly facts, Mattel claims MGA's laches defense theory is "inexplicabl[e]" and "makes no sense" because, given the supposed fraudulent concealment of Bryant's wrongdoing by MGA and this Court's rulings on notice on statute of limitations grounds, Mattel cannot be deemed to have delayed. (Mattel Response to MGA Stmt. ("Resp.") at 1-2.) Mattel ignores that the starting point for assessing delay in equitable defenses is different than the same statute of limitations analysis. Mattel waited to see if BRATZ posed a real threat to Barbie and speculated on potential future damages. This is textbook laches. (See Sections I & II, infra.)

The MGA Parties also established that Mattel's knowledge of and failure to enforce its contractual rights to prevent employees from working for competitors constituted a waiver of Mattel's right to enforce the Inventions Agreement, which is the foundation for Mattel's claims to BRATZ. Mattel ignores compelling evidence of its waiver and/or draws distinctions well beyond the Court's rulings, as well as the California law finding waiver where, as here, Mattel affirmatively permitted its employees to escape their contractual obligations. (See Section III, infra.) Finally, Mattel rehashes its other Phase 1c briefing on its declaratory judgment and unfair competition claims, which should be disregarded for the reasons stated in MGA's Phase 1c briefing on the same issues. (See Sections IV & V, infra.)

**ARGUMENT**

**I.  MATTEL'S CLAIMS ARE BARRED BY LACHES**

**A.  Mattel Delayed In Bringing This Action For As Long As It Possibly Could**

Mattel asserts that the verdict on fraudulent concealment and this Court's prior rulings defeat the MGA Parties' laches defense.[1] Not true. Laches bars Mattel's claims

---

[1] Mattel argues that the jury's finding of fraudulent concealment as to MGA "compel[s] the conclusion that laches does not apply." (Resp. at 4.) In fact, the jury found that the concealment took place "until at least April 27, 2001" or "April 27, 2002" (Proctor Decl. Ex. 3 ¶¶ 18, 20).
*(cont'd)*

under even the most charitable view of when Mattel had notice. Even if Mattel's claims did not accrue until Bryant's deposition <u>on November 4, 2004</u>, its claim for a constructive trust is <u>presumptively</u> barred by laches. (MGA Constr. Trust/UCL Opp'n (Dkt 4349) at 9-10.)[2] Moreover, Mattel's delay in bringing its copyright, declaratory relief, and UCL claims was unreasonable and prejudicial even assuming Mattel only became aware of those claims on November 23, 2003 – *i.e.*, when Mattel received Bryant's drawings. (Stmt. at 5.) After Mattel deposed Bryant in 2004, it knew all it needed to sue, yet Mattel waited until November 20, 2006 to file its claims – <u>three days</u> before the statute of limitations on its copyright claims expired. (<u>Id.</u>) This delay was unreasonable and prejudicial.[3]

This Court, however, need not adopt the most charitable view. (<u>See</u> Stmt. at 5-8.) The starting point for assessing Mattel's delay is not necessarily the same as the accrual date for limitations purposes. <u>See, e.g.</u>, <u>Wyler Summit P'ship v. Turner Broad. Sys., Inc.</u>, 235 F.3d 1184, 1193 (9th Cir. 2000). In the copyright context, while courts must look to actual infringement for the limitations analysis, the standard is more flexible for laches: because it is inequitable to allow a plaintiff to sit on its rights while the purported infringer makes

---

*(cont'd from previous page)*
Plainly, there was no concealment after MGA disclosed Bryant's role as the creator in July 2003 and yet Mattel waited over three and a quarter more years to file its infringement claims.

[2] A claim is presumptively barred by laches if filed outside the limitations period, <u>Jarrow Formulas, Inc. v. Nutrition Now, Inc.</u>, 304 F.3d 829, 838 (9th Cir. 2002), and the relation-back rule does not apply to laches. <u>Brzozowski v. Corr. Phys. Servs., Inc.</u>, 360 F.3d 173, 182 (3d Cir. 2004).

[3] Mattel's delay in bringing claims against MGA even after filing its complaint against Bryant supports laches. (Stmt. at 3-4.) Mattel tries to explain away the <u>two-and-a-half</u> year delay using the <u>one year</u> stay entered in 2005. (Resp. at 7-8.) The Court has already rejected this contention: "[Mattel's argument] would have some merit to it but for the fact that the information that alerted (or should have alerted) Mattel to the existence of its now asserted copyright and intentional interference claims was brought to Mattel's attention well before the case was stayed on May 20, 2005. The stay, therefore, did not operate as an obstacle to Mattel asserting its claims; nor even if it did, the stay does not explain why Mattel waited nearly six months <u>after</u> the stay was lifted on May 16, 2006, to present those claims now." (1/12/07 Order (Dkt 142) at 8 (10/13/08 Proctor Decl. (Dkt 4355) Ex. 30).) The stay also did not preclude Mattel filing or amending other pleadings (MGA MSJ Reply at 13-14) or toll the limitations period for unasserted claims on non-parties. (<u>Id.</u>, citing <u>Friedman v. Estate of Presser</u>, 929 F.2d 1151, 1156-57 (6th Cir. 1991); <u>Korody-Colyer Corp. v. Gen. Motors Corp.</u>, 828 F.2d 1572, 1575 (Fed. Cir. (Cal.) 1987).) Mattel's cases are inapposite as none involve new claims or parties. <u>O'Donnell v. Vencor</u>, 466 F.3d 1104, 1112 (9th Cir. 2006) (motion to dismiss existing claims); <u>Selph v. Nelson, Reabe & Snyder, Inc.</u>, 966 F.2d 411, 413 (8th Cir. 1992) (same parties and claims in another court); <u>Castle v. Wells Fargo Fin., Inc.</u>, 2007 WL 1105118, at *1 (N.D. Cal. Apr. 10, 2007) (putative class members).

investments, the laches period is triggered when a plaintiff learns that infringement is likely, even if actual infringement has not occurred. See, e.g., Kling v. Hallmark Cards Inc., 225 F.3d 1030, 1038-39 (9th Cir. 2000). There is no equity in allowing Mattel to sit on its rights past July 2003, when it learned that Bryant had gone to a competitor and that he was developing a new line of fashion dolls released shortly after his departure.[4] Using July 2003 as the starting point, Mattel's copyright claim is presumptively barred by laches. Jarrow, 304 F.3d at 838. Even using a later date, Mattel's claims still should be barred by laches.

### B. The Prejudice Suffered By The MGA Parties Was Extraordinary

Mattel opens its discussion of prejudice with a quote from Grand Canyon Trust v. Tucson Elec. Power Co.: "A lengthy delay, even if unexcused, that does not result in prejudice does not support a laches defense." (Resp. at 9; quoting 391 F.3d 979, 988 (9th Cir. 2004).) But Mattel omits the following key sentence: "By contrast, a brief unexcused delay that causes sufficient prejudice to the defendant is a proper ground for invocation of the doctrine." 391 F.3d at 988. Mattel's delay was not brief, but it was highly prejudicial.[5]

#### 1. The Record Is Replete With Evidentiary Prejudice To MGA Parties

Mattel insists that the MGA Parties "do not establish the prejudice sufficient to reject" Mattel's claims and complains that they have offered only "conclusory statements that there are missing witnesses, that witnesses' memories have lessened, and that there is missing documentary evidence." (Resp. at 9-10.)[6] Apparently Mattel's memory is even

---

[4] Indeed, Mattel itself used this evidence to argue that Bryant was on notice of its claims against him and MGA in arguing that Bryant's removal was untimely. (See, e.g., Mattel's Remand Mot. (04-9059 Dkt 32) at 2, 7; Mattel's Reply to Bryant's Opp'n (04-9059 Dkt 60) at 1-3.)

[5] It is because of this substantial prejudice that Mattel's delay, even if found to be within the limitations period, nonetheless constitutes laches. In Mattel's cited cases no such prejudice was shown See Robert F. Kennedy Med. Ctr. v. Dept. of Health Servs., 61 Cal. App. 4th 1357, 1362 (1998) (no prejudice based on defendant's own mishandling of financial records); Lam v. Bur. of Sec. & Invest. Servs., 34 Cal. App. 4th 29, 39-40 (1995) (defendant could not show costs incurred in areas of business affected by lawsuit, or that witness was affected by loss of memory). Mattel's other cases apply a summary judgment standard, which is inapplicable here. See Jacobsen v. Deseret Book Co., 287 F.3d 936, 949 (10th Cir. 2002) ("Although a district court can make factual findings related to laches after a bench trial, the court should not make factual findings when addressing a summary judgment motion based on laches."); Kling, 225 F.3d at 1041 (same).

[6] Mattel quotes adidas-America, Inc. v. Payless Shoesource, Inc., 546 F. Supp. 2d 1029, 1072 (D. Or. 2008), where the court found that, at the summary judgment phase – prior to either side's attempt to put on its case at trial – conclusory speculations regarding what would happen at trial

*(cont'd)*

more fleeting than its witnesses', for Mattel seems to have forgotten the <u>literally hundreds</u> of instances at trial where MGA's and Mattel's witnesses were unable to remember details of important events due to the passage of time.[7] For example, Mattel witnesses Ivy Ross and Lily Martinez could not remember key details of the creation and rejection of Mattel's Toon Teens line or the Mattel legal department's investigation of potential infringement of that line, or when they found out that Bryant worked with MGA or was "one of the illustrators or designers" of BRATZ for MGA – evidence that would have been instrumental to MGA's proving when Mattel was or should have been aware of its claims that Bryant created the BRATZ drawings while at Mattel. (<u>See</u> Tr. 308:15-309:7, 319:3-8, 324:25-325:6, 326:18-327:7, 333:1-21, 334:17-335:1, 492:15-493:9, 495:2-12, 498:25-499:4, 500:10-501:8.)

The MGA Parties' witnesses also were impacted by the years of delay. For example, Paula Garcia testified that she couldn't remember crucial details about meetings or communications with Bryant, Steve Linker and/or Margaret Leahy in the fall of 2000 because "I just simply don't remember. <u>It was, like, what, nine or eight years ago</u>." (Tr. 653:11-21; 534:24-536:11, 624:1-625:1, 639:5-10, 643:2-7, 646:18-647:3, 800:6-9, 929:14-19, 7158:3-11; Tr. 614:10-615:2, 868:12-19, 959:8-12 (Garcia attributing inability to recall to time elapsed).)[8] Bryant and Isaac Larian were similarly affected, unable to provide

---

*(cont'd from previous page)*
were insufficient to establish evidentiary prejudice. Here, after trial, speculation is not an issue.

[7] Mattel's denial of evidentiary prejudice is simply baffling given that at trial its counsel emphasized this point, asking witnesses if their inability to recall was "a function of time" as the events took place "a number of years ago", or if the events "sort of blend[] in your mind" (Tr. 535:12-18, 1320:6-12, 1675:2-8, 2749:22-23), and Mattel counsel even seized on the passage of time to chastise Larian, scorning "[a]gain we're getting into the 'I don't recall.'" (Tr. 1726:19.)

[8] Victoria O'Connor could not remember specific, significant details about how and when Bryant came to meet with MGA, what and how many drawings were shown, and what was said at Bryant's initial meetings with MGA (Tr. 1312:15-18, 1314:6-10, 1316:13-23, 1357:20-1358:9), and noted that for at least one document that "<u>I don't recall it from eight years ago</u>." (Tr. 1354:7-12.) Other witnesses expressed similar memory failures on key issues, some crucial to MGA's defense. <u>See</u> Tr. 357:10-14 (Ross did not remember "the brands that were being offered by Mattel in the girls' division" while there because, as she testified, "I don't remember them all five years later[.]");1431:3-13 (Arant answer to question about communications with Garcia in 2000: "I don't remember. <u>It was eight years ago</u>. I don't remember."); 3719:12-3721:23 (J. Bryant testimony unable to remember clearly Bryant's drawings and inspiration for BRATZ); 4143: 25-4144:6, 4151:13-20, 4260:18-22, 4322:5-12, 4363:11-22, 4364:6-14, 4372:12-4373:14 (Leahy unable to remember what she was provided to assist with sculpts, i.e., whether she had concept drawings, or

*(cont'd)*

details of the communications, meetings or contract negotiations between Bryant and MGA personnel, the development of BRATZ in fall 2000, or how BRATZ were publicly displayed at toy fairs in 2001[9] because so much time had passed.[10] These details are central to MGA's defenses to the majority of Mattel's state law claims, and MGA was denied a fair opportunity to explore these issues with witnesses in a timely manner due to Mattel's delay.

Trying to explain away the prejudice to MGA from Mattel's destruction of six years' of internal emails, Mattel blubbers that the Court found it did not delete them "intentional[ly]." (Resp. at 10.) So what? MGA did not have access to internal emails that would prove when Mattel knew of Bryant's wrongdoing, such as emails about Mattel's suspicions at Bryant's departure in October 2000 or when the BRATZ came out in 2001, or the 2002 Mattel investigation of Larian and Bryant, as they were deleted by Mattel. (MGA MSJ at 8-11; Proctor Decl. Ex. 17 at 3.) Mattel's inability to produce Bryant's lost October 2000 telephone records also prejudiced MGA. Although the Court posited, based on the September records of Bryant's calls to MGA, that the October records "would not assist Bryant" (Proctor Decl. Ex. 17 at 4), evidence that Bryant did not call MGA after October 4, 2000 would <u>support MGA's defense</u> that it believed Bryant quit Mattel when he signed the contract, evidence that MGA was denied by Mattel's delay. (MGA MSJ Opp'n at 19-20.)

There is no denying that crucial evidence was lost due to the passage of time, and that this loss is sufficient to support laches. <u>See, e.g.</u>, <u>Jackson v. Axton</u>, 25 F.3d 884, 890 (9th Cir. 1994) (that witnesses testified "does not mean that their memories have not faded or that relevant evidence has not been lost" and the fact that plaintiff could prove his own case "does not mean that [defendants] have not been harmed."). Thus, Mattel's claims are barred.

---

*(cont'd from previous page)*
who attended and what was discussed at sculpt meetings because "that being eight years ago …. I'm just foggy on who was at the meeting… [W]hen it comes to meetings and stuff like that, it's a lot harder to remember…. I'm just foggy on what [was] said, what comments [were made.]").

[9] See Tr. 1708:23-1709:3, 1709:13-1710:2, 1711:19-25, 1764:25-1765:15, 2749:22-23, 2504:6-14, 2505:5-21, 2511:24-2512:4, 2518:23-2519:11, 2556:9-2557:20, 2561:2-12, 2567:23-2568:18, 2749:12-23, 3028:5-20, 3117:8-3119:3, 6141:16-6142:20.

[10] Larian repeatedly attributed his inability to remember to the intervening years: "I don't recall that many years back. … Frankly, going back, what, seven, eight years, I don't recall it.") Tr. 6142:15-20; <u>accord</u> Tr. 1585:17-23, 1620:6-1621:7, 1621:13-19, 6162:12-6163:12, 6181:15-19.

### 2. **Billions Of Dollars Invested In BRATZ Constitute Prejudice**

Mattel claims that the MGA Parties cannot show economic prejudice because they cannot prove a nexus between the MGA Parties' investments in the BRATZ products and Mattel's delay in bringing its suit. (Resp. at 10-12.) Mattel explains that there can be no prejudice because the MGA Parties did not halt production of BRATZ upon MGA's intervention in 2004, and "continue to this very day to market Bratz products that infringe Mattel's copyrights, undeterred even by the jury's verdict of infringement." (Id. at 11.) Moreover, Mattel notes, the MGA Parties have profited from BRATZ-related sales. (Id.) Thus, Mattel contends, the MGA Parties cannot show prejudice needed to support laches.[11]

Mattel's reasoning crumples under scrutiny. As shown at trial, MGA was concerned about Mattel's propensity for litigation and reacted swiftly to threats from Mattel. (Stmt. at 6.) Had Mattel filed suit against MGA in March of 2002 when it investigated potential infringement, or even in July of 2003 (when the world knew about Bryant), perhaps MGA would have ceased creating BRATZ as it had not invested substantially in the line at that time. However, Mattel did not sue in July 2003; it did not sue in November of 2003 when it received Bryant's drawings; it did not sue MGA when it sued Bryant; Mattel did not even assert claims against MGA when MGA intervened. Faced with these facts, MGA understandably and justifiably relied on Mattel's inaction and poured hundreds of millions of dollars into BRATZ, secure in the knowledge that Mattel would have sued if it had a claim. That Mattel waited until after that investment and then complains that MGA did not immediately abandon its massive investment proves the fallacy of Mattel's position.

Simple logic dictates that this cannot be the law, and indeed, Ninth Circuit precedent

---

[11] Most of the cases relied upon by Mattel do not involve defendants who made ongoing investments while the plaintiff delayed. See Grand Canyon Trust, 391 F.3d at 988-89 (defendant made one-time investment in challenged machinery); Pac. Hills Homeowners Ass'n v. Prun, 160 Cal. App. 4th 1557, 1565 (2008) (defendant made one-time investment before the plaintiff was on notice); Field v. Bank of Am. Nat'l Trust & Sav. Ass'n, 100 Cal. App. 2d 311, 314 (1950) (bank had no ongoing investment; moreover, primary reason for denying laches was that plaintiff had no notice). The remaining two cases, Dimension One Spas, Inc. v. Coverplay, Inc., 2008 WL 4165034 (S.D. Cal. Sept. 5, 2008), and TV Interactive Data Corp. v. Microsoft Corp., 2005 WL 2277121 (N.D. Cal. Sept. 19, 2005), are patent cases which rely exclusively on Federal Circuit authority and run counter to Ninth Circuit copyright infringement authority as explained below.

confirms that it is not. "Laches is based on the plaintiff's delay in beginning litigation, not on the information a defendant has regarding a claim." Danjaq LLC v. Sony Corp., 263 F.3d 942, 953 (9th Cir. 2001) (quoting Jackson, 25 F.3d at 889). In Danjaq, the purported infringers were well aware of the counterclaimant's purported rights to the James Bond series of films: there was repeated litigation between various players in the dispute; the author of the infringed work sent telegrams to the studio and its counsel, filed a correction to the copyright registration for a disputed Bond book, and, to remove any residual ambiguity, "placed full-page and multi-page ads in Variety, stating that the rights to James Bond were being infringed by MGM/UA and Danjaq." 263 F.3d at 949. Yet, the purported infringers continued to release James Bond films. Id. at 950 n.7. Even after the lawsuit was filed, they released yet another James Bond film. Id. Under Mattel's theory, this would have doomed the laches defense. The Ninth Circuit, however, found prejudice because Danjaq "invested approximately one billion dollars … in the development, production, marketing, and distribution of the James Bond movies," barring the plaintiff from "profit[ing] from the risk inherent in Danjaq's investment in the franchise." Id. at 956.

The same is true here. As the MGA Parties established in their opening brief, they have invested heavily in BRATZ products. (Stmt. at 7.) Mattel was not entitled to wait for the MGA Parties' investment to pay off, and only then step in to claim a share of the profits, much less the rights to the successful franchise. Indeed, the MGA Parties' substantial investments present an especially compelling bar to injunctive relief.[12] See New Era Publ'ns Int'l, ApS v. Henry Holt & Co., 873 F.2d 576, 584 (2d Cir. 1989); see also Chirco v. Crosswinds Cmtys., Inc., 474 F.3d 227, 235-36 (6th Cir. 2007); Jarrow Formulas, 304 F.3d at 839-40.[13] This is even more true given the jury's verdict, which established that those

---

[12] In the context of trademarks – which gain their value entirely from the goodwill built up by their users – investment is likewise a compelling basis for applying laches. See, e.g., Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n, 311 F. Supp. 2d 1023, 1038 (D. Or. 2004) aff'd 465 F. 3d 1102 (9th Cir. 2006) (prejudice exists when "defendant actually spent money promoting its brand name … [t]o divest [defendant] of its trade name after years of an intensive campaign to develop the name would require [defendant's] entire selling organization to be recast and its market to be re-educated. It is difficult even to estimate what the losses may be.")).

[13] Mattel distinguishes New Era only on issues of notice, saying nothing of the court's finding
*(cont'd)*

very investments – not the infringed copyrights – were almost entirely responsible for the brand's success. (MGA Perm. Inj. Opp'n (Public Redacted) (Dkt 4353) at 19-26.) Thus, Mattel's claims for copyright damages and equitable relief are barred by laches.

## II. <u>MATTEL'S CLAIMS ARE BARRED BY ESTOPPEL</u>

The facts that underlie laches also support the defense of estoppel. (Stmt. at 9-10.) The delay and prejudice demonstrated above thus also support the MGA Parties' estoppel defense. (<u>See</u> <u>supra</u>, Sections I.A & I.B.) The additional elements required for estoppel – Mattel's intentional deception and the MGA Parties' ignorant reliance – have also been established by the evidence discussed in connection with laches. (Stmt. at 9-10.) Mattel explicitly disavowed its copyright claims for years before bringing them,[14] even when MGA intervened, leading MGA to believe that those claims may never be forthcoming – yet Mattel apparently always planned to bring them. (<u>Id.</u>)[15] Such behavior constitutes estoppel. <u>Watermark Publ'rs v. High Tech. Sys. Inc.</u>, 44 U.S.P.Q.2d 1578, 1584 (S.D. Cal. 1997).[16]

## III. <u>MATTEL'S CLAIMS ARE BARRED BY WAIVER</u>

Mattel first challenges the MGA Parties' demonstrations of Mattel's waiver as

---

*(cont'd from previous page)*
that the defendant's investments militated against an award of injunctive relief (Resp. at 6) and claims that the MGA Parties reliance on <u>Chirco</u> is "puzzling" (<u>id.</u> at 9 n.24), apparently oblivious to the court's strong language in applying laches to bar injunctive relief, finding that the request for such relief "smacks of the inequity … the judicial system should abhor." 474 F.3d at 236.

[14] <u>See</u> 1/12/07 Order at 3-5 (10/13/08 Proctor Dec. Ex. 30); 7/18/06 Order (Dkt 63) at 2-4 (<u>based on Mattel's representations</u>, Bryant had no reasonable apprehension of copyright claim).

[15] Mattel claims that the MGA Parties' arguments have already been rejected by the Court in granting Mattel leave to amend its counterclaims. (Resp. at 14.) In fact, the Court found that Mattel did delay in bringing its claims and had no valid excuse for doing so. (1/12/07 Order at 8 (10/13/08 Proctor Decl., Ex. 30).) While the Court found the evidence of prejudice was insufficient at that time, the Court based this analysis on the fact that the MGA Parties could offer only speculation that emails and other records were lost (<u>id.</u> at 10-13) – speculation that has now become fact, as described above. Moreover, the amendment analysis addressed only evidentiary prejudice (<u>see id.</u>), not the economic prejudice which so strongly supports laches and estoppel here.

[16] Mattel's cases do not suggest otherwise. <u>See</u> <u>Wells Fargo Bank , N.A. v. Bank of Am. NT&SA</u>, 32 Cal. App. 4th 424, 438 (1995) (payments based on <u>preexisting</u> obligations not made in reliance on plaintiff's delay); <u>San Francisco v. Grant Co.</u>, 181 Cal. App. 3d 1085, 1091-92 (1986) (state did not have notice so estoppel inapplicable); <u>Three Sixty Five Club v. Shostak</u>, 104 Cal. App. 2d 735, 737-38 (1951) (defendant could not reasonably rely on claim that property was available where it had been renovated); <u>adidas-America, Inc.</u>, 546 F. Supp. 2d at 1072-75 (speculation about lost evidence and decorative use of trademark insufficient to support estoppel).

"irrelevant" because "most of Mattel's claims are not even predicated solely on Bryant's breaches of the Inventions Agreement … but instead are based on defendants' own acts of wrongdoing." (Resp. at 18.) Nonsense. Mattel's claims exists <u>only</u> due to Bryant's failure to abide by the terms of the agreement. Although MGA may be liable for any wrongful acts it committed, there can be no liability absent <u>Bryant's agreement with Mattel</u>. (See, e.g., SAA (counterclaims) ¶¶ 22-23, 26, 33-34, 123-26, 137-39, 150-52, 157.) Clearly, Mattel's waiver of its rights to enforce identical provisions in like agreements is relevant.[17]

MGA already proved that Mattel was fully aware that its employees were performing work for competitors; indeed, Mattel does not – because it cannot – offer any explanation for the fact that <u>Margaret Leahy's Mattel supervisor not only suggested she take on outside work to earn money, but gave her contact information to seek out work from other companies</u> – including for Mattel competitors. (Stmt. at 11-12.)[18] Ignoring the pesky Leahy testimony, Mattel argues that MGA's examples of moonlighting "do not constitute an 'apples to apples' comparison" as required by the Court and points out that "Bryant's job at Mattel was designing dolls; he breached the Inventions Agreement by performing secret 'top priority' doll design work for MGA." (Resp. at 19.) But Leahy was a doll sculptor for Mattel who did doll sculpting work for competitor Hanna-Barbera. (<u>See</u> Stmt. at 12.)

Mattel also ignores the testimony of Richard De Anda, whose "job at Mattel" was conducting investigations for Global Security but was working as a private investigator on the side and he <u>never received written permission to do so and did not always have Mattel's</u>

---

[17] Mattel's "third party" enforcement cases are irrelevant. (Resp. at 17-18.) The MGA Parties are not arguing that Mattel waived a right vis-à-vis MGA or Larian – they are arguing that because Mattel waived its right to enforce the anti-moonlighting provisions of its contract with Bryant, a necessary element of <u>every one</u> of its claims fails, as all arise out of Bryant's moonlighting in violation of the Agreement. (<u>See</u> Final Jury Inst. As Given (Dkt. 4115) Inst. 21-29.)

[18] Mattel's attempt to characterize this Court's sustaining of its objection to Leahy's testimony as she "knew her non-Mattel work was not authorized" ignores the key facts. Specifically, MGA's counsel pointed out that her testimony confirming Mattel's explicit knowledge (indeed, facilitation) of her work for other companies is an issue for the "1-B case" (where MGA's affirmative defenses would be addressed), and the Court agreed, stating <u>"[t]hat's going to be different. We will revisit the issue in 1-B</u>… [but] for 1-A purposes, we're just focusing on the breach of contract." (Tr. 4125:25-4126:11.) Obviously, since Leahy's testimony proves Mattel was not enforcing its contractual anti-moonlighting provision, it is wholly relevant to MGA's waiver defense.

approval for his outside work. (Tr. 4409:19-4410:16.)  Since he was effectively "secretly" performing for another company work identical to that he was obligated to perform exclusively for Mattel, the "apples to apples" comparison is clear.  Mattel lamely responds that "[n]one of the employees cited by the MGA Parties" are like Bryant, apparently based only on the fact that Leahy and De Anda were not doll designers.  (Resp. at 20.)

Mattel further argues that the MGA Parties' claim of waiver is legally unsustainable. Mattel cites a series of cases – none applying California contract law – that purport to stand for the proposition that "a plaintiff need not choose between pursuing all offenders or none." (Id. at 20.)[19] However, the issue here is not mere failure to pursue all offenders – Mattel affirmatively permitted, and indeed, assisted Leahy in acquiring moonlighting positions.  California law will imply a waiver where a party's actions are "so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished." Rubin v. Los Angeles Fed. Sav. & Loan Ass'n, 159 Cal. App. 3d 292, 298-300 (1984). Permitting and assisting moonlighting is inconsistent with enforcement of Mattel's rights to prohibit moonlighting, which establishes waiver.[20]

## IV. **MATTEL IS NOT ENTITLED TO DECLARATORY RELIEF**

MGA has already established that Mattel is not entitled to declaratory relief. (See Stmt. at 13-16; MGA Dec. Judg. Opp'n (Dkt 4350) at 2-11.)  In response, Mattel maintains that it is not seeking a declaration of a copyright in the Bratz name or ownership of the "Bratz dolls" – just a declaration of ownership of "Bratz-related inventions."  (Resp. at 22,

---

[19] Citing Emerson Elec. Co. v. Rogers, 418 F.3d 841, 845 (8th Cir. 2005) (Missouri law); adidas-America, 546 F. Supp. 2d at 1074 (federal trademark law); Deal v. Consumer Programs, Inc., 458 F. Supp. 2d 970, 978 n.5 (E.D. Mo. 2005) (Missouri law); Lone Mountain Prod. Co. v. Natural Gas Pipeline Co. of Am., 710 F. Supp. 305, 311 (D. Utah 1989) (Utah law); Pochopien v. Marshall, O'Toole, Gerstein, Murray & Borun, 315 Ill. App. 3d 329, 339 (2000) (Illinois law). Even so, some fail to support Mattel's argument. See, e.g., Lone Mountain Prod. Co., 710 F. Supp. at 311 (finding waiver of specific assignment procedure because, inter alia, Defendant recognized prior assignment which was "virtually identical in terms to" assignment to Plaintiff).

[20] Mattel's reliance on the non-modification provisions of the Invention Agreements is unavailing.  Those provisions, like any others, can be waived by inconsistent conduct. See, e.g., Biren v. Equal. Emergency Med. Group, Inc., 102 Cal. App. 4th 125, 141 (2002) (plaintiff assumed incorrectly that oral amendments were invalid "because amendments require a writing … But the parties may, by their conduct, waive such a provision where evidence shows that was their intent."); Richard B. LeVine, Inc. v. Higashi, 131 Cal. App. 4th 566, 587 (2005) (same).

23.) Although questions of copyright ownership are exclusively the province of the Copyright Act and are therefore preempted (see, e.g., MGA Dec. Judg. Opp'n at 2-3) (collecting cases)), Mattel maintains otherwise, citing to a string of cases deciding subject matter jurisdiction, not preemption. (Resp. at 23.) Mattel's protestations aside, it is settled that declarations of copyright ownership are preempted. 5 Patry on Copyright § 18:24 (2008) ("Equally unavailing are efforts to impose a constructive trust on the actual ownership of the copyright. Such claims are nothing more than a declaratory judgment for ownership, an action arising solely under the Copyright Act"). MGA also showed that Mattel's declaratory relief claim fails as the jury either did or could have resolved the issues presented therein, and the relief sought is unnecessary, improper, or moot. (MGA Dec. Judg. Opp'n at 3-11.)

## V. MATTEL IS NOT ENTITLED TO INJUNCTIVE RELIEF UNDER THE UCL

In the face of MGA's overwhelming showing (see Stmt. at 18-25) Mattel wisely abandons any request for monetary relief under the statute. Mattel instead argues that it is entitled to an injunction preventing MGA from using the "BRATZ" name it allegedly "stole" from Mattel.[21] MGA has shown that Mattel cannot offer evidentiary support for its request (see MGA Constr. Trust/UCL Opp'n at 3-8), and Mattel's response confirms that it has no such evidence. This comes as no surprise as the name could not have been "stolen" from Mattel as it did not own any rights to it in the first place – so there was nothing to steal.

This, by no coincidence, is also the reason why Mattel cannot satisfy the UCL's standing requirement of "injury in fact," which forecloses Mattel's ability to obtain any relief under the statute. (See Stmt. at 18-20; MGA Constr. Trust/UCL Opp'n at 12-15.) Mattel points to "harm" as an element of its other state law claims and argues that because the jury found in favor of Mattel on those claims, it means that Mattel satisfies the "injury in fact" requirement under the UCL. (Resp. at 24.) Not so. The UCL's standing hurdle of "injury in fact" is not just any "harm" suffered by the plaintiff, but is a very concrete requirement of "lost money or property as a result of such unfair competition."[22] Thus, the

---

[21] Mattel also does not shy from the fact that its claims to the name are preempted to the extent they are grounded on copyright law. (See Resp. at 24.)
[22] Cal. Bus. & Prof. Code § 17204; Daro v. Super. Ct., 151 Cal. App. 4th 1079, 1097 (2007)
*(cont'd)*

11

standing requirement is not simply an element of damages in the traditional sense as "[d]amages are not available under the ... unfair competition law[] because restitution is the only available remedy under th[at] statute[]." Colgan v. Leatherman Tool Group, Inc., 135 Cal. App. 4th 663, 695 (2006). Because the standing requirement under the UCL is a plaintiff's entitlement to restitution, Mattel's claim of "harm" based on MGA's alleged ill-gotten profits simply does not rise to such level: "plaintiff's assertion that defendants received ill-gotten gain does not make a viable UCL claim unless the gain was money in which plaintiff had a vested interest." Madrid v. Perot Sys. Corp., 130 Cal. App. 4th 440, 455 (2005) (emphasis added). (See also Stmt. at 20-25 (explaining why Mattel is not entitled to restitution based on the conduct at issue).) Since Mattel conceded that it lost no money as a result of the conduct at issue here,[23] and there had been no property belonging to Mattel that was lost, the UCL "injury in fact" standing cannot be satisfied. In the absence of any money or property lost due to the conduct at issue under the UCL, Mattel is not entitled to injunctive relief under the statute. Put simply, because there is no money or property that is due to be restored to Mattel, its UCL claim must fail.[24]

## CONCLUSION

For the foregoing reasons, the MGA Parties should prevail on their affirmative defenses and Mattel's declaratory relief and unfair competition claims should be rejected.

DATED: October 20, 2008   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____/s/ Thomas J. Nolan_____
Thomas J. Nolan
Attorneys for the MGA Parties

---

*(cont'd from previous page)*
("After Proposition 64, a private person has standing to sue under the UCL only if that person has suffered injury and lost money or property 'as a result of such unfair competition.'").

[23] See, e.g., Stmt. at 14 (collecting Mattel's concessions). Mattel's citation to its outstanding claim for misappropriation of trade secrets (Resp. at 24 n.67) is besides the point, since the allegedly unlawful conduct at issue there is not at issue for its UCL claim in Phase 1a.

[24] Compare Cortez v. Purolator Air Filtration Prods. Co., 23 Cal. 4th 163, 177-78 (2000) (limiting availability of restitution under the UCL to "money that once had been in the possession of the person to whom it [is] to be restored"; "the remedy we approved was literally restoration of money, the return of money acquired from an individual to that individual"), with Buckland v. Threshold Enters., Ltd., 155 Cal. App. 4th 798, 817-818 (2007) (explaining that "the import of the [UCL "injury in fact"] requirement is to limit standing to individuals who suffer losses of money or property that are eligible for restitution") (emphasis added).