1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3               EASTERN DIVISION

4                  - - -

5     HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                  - - -                    CERTIFIED
                                            COPY
7   MATTEL, INC.,                    )
                                      )
8              PLAINTIFF,            )
                                      )
9        VS.                         )    NO. CV 04-09049
                                      )
10  MGA ENTERTAINMENT, INC., ET. AL., )
                                      )
11             DEFENDANTS.           )    CONTINUED BENCH
    _____ )    CONFERENCE
12  AND CONSOLIDATED ACTIONS,        )    PAGES 5216-5323
    _____ )

13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16             RIVERSIDE, CALIFORNIA

17            MONDAY, JULY 21, 2008

18                 4:04 P.M.

19

20

21

22

23            THERESA A. LANZA, RPR, CSR
           FEDERAL OFFICIAL COURT REPORTER
24            3470 12TH STREET, RM. 134
           RIVERSIDE, CALIFORNIA  92501
25               951-274-0844
              WWW.THERESALANZA.COM

```
 1    APPEARANCES:

 2
      ON BEHALF OF MATTEL, INC.:
 3
                              QUINN EMANUEL
 4                            BY:   JOHN QUINN
                                    JON COREY
 5                                  MICHAEL T. ZELLER
                                    DYLAN PROCTOR
 6                            865 S. FIGUEROA STREET,
                              10TH FLOOR
 7                            LOS ANGELES, CALIFORNIA   90017
                              213-624-7707
 8

 9

10
      ON BEHALF OF MGA ENTERTAINMENT:
11
                              SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
12                            BY:   THOMAS J. NOLAN
                                    JASON RUSSELL
13                                  LAUREN AGUIAR
                              300 SOUTH GRAND AVENUE
14                            LOS ANGELES, CALIFORNIA   90071-3144
                              213-687-5000
15

16

17

18

19

20

21

22

23

24

25
```

```
 1                          I N D E X

 2                                               PAGE

 3   CONTINUED BENCH CONFERENCE

 4   (TELEPHONIC) ..................................   5219

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

MONDAY, JULY 21, 2008                    CONTINUED BENCH CONFERENCE (TELEPHONIC

```
 1          RIVERSIDE, CALIFORNIA; MONDAY, JULY 21, 2008; 4:04 P.M.

 2                              -OOO-

 3          THE CLERK:  CALLING CASE NUMBER CV04-09049-SGL,

 4   MATTEL, INC., V. MGA ENTERTAINMENT, INC.

 5          COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE

 6   RECORD.

 7          MR. QUINN:  FOR MATTEL, JOHN QUINN, MIKE ZELLER,

 8   BILL PRICE, DYLAN PROCTOR, SCOTT KIDMAN, AND JON COREY.

 9          MR. NOLAN:  TOM NOLAN FOR MGA, ALONG WITH

10   LAUREN AGUIAR, DAVID HANSEN, JASON RUSSELL, CARL ROTH.

11          THE CLERK:  COUNSEL, COULD I PLEASE REMIND YOU THAT

12   WE ARE ON A TELEPHONIC CONFERENCE AND THAT THE COURT REPORTER

13   WOULD LIKE EVERYONE TO SAY THEIR NAME INTO THE RECORD WHEN THEY

14   SPEAK.  THANK YOU.

15          THE COURT:  THE OTHER THING TO KEEP IN MIND, GIVEN

16   THE NUMBER OF PEOPLE ON THE LINE, JUST BE SURE TO SPEAK UP

17   CLEARLY FOR EVERYBODY.

18          COUNSEL, I APPRECIATE EVERYONE GETTING TOGETHER AT

19   4:00 BY PHONE.  I KNOW THIS IS NOT THE MOST CONVENIENT WAY TO

20   DO THIS, BUT AT LEAST WE'LL BE ABLE TO GET THROUGH THESE ISSUES

21   AND THESE MOTIONS AND HOPEFULLY BE READY TO PROCEED WITH TRIAL

22   ON WEDNESDAY.

23          I'VE HAD A CHANCE TO REVIEW THE VARIOUS MOTIONS, AS

24   WELL AS THE ISSUE RELATED TO PROTECTABILITY AND THE AFFIRMATIVE

25   DEFENSES.  I'VE GOT EXTENSIVE NOTES HERE IN FRONT OF ME.  THE
```

04:04

04:04

04:05

04:05

04:05

1    ORDER THAT I'M GOING TO GO THROUGH THEM IS BASICALLY THE ORDER

2    IN WHICH I HAVE WRITTEN MY NOTES; SO IT'S NOT IN ANY PARTICULAR

3    ORDER, BUT I'LL TRY TO BE AS CLEAR AS I CAN.

4         I'VE ALREADY DRAFTED UP A SUBSTANTIAL AMOUNT OF

5    LANGUAGE ON MY RULING ON THE SCOPE OF PROTECTABILITY AND ON THE     04:05

6    AFFIRMATIVE DEFENSES, AND WHAT I PLAN TO DO IS CLEAN THAT UP IN

7    THE NEXT DAY OR TWO AND ISSUE AN ORDER.  BECAUSE THIS IS, IN

8    LARGE MEASURE, PART OF THE RULINGS ON THE MOTIONS FOR PARTIAL

9    SUMMARY JUDGMENT, I THINK IT IS IMPORTANT TO HAVE AN ORDER

10   WRITTEN BY THE COURT ON THESE POINTS; SO THE COURT WILL TAKE       04:06

11   CARE OF ISSUING THAT ORDER.

12        I'LL GIVE YOU MY RULING NOW, BUT THE ORDER WILL FLUSH

13   THIS OUT AND ALL OF THE AUTHORITY, ET CETERA, WILL BE

14   FORTHCOMING IN THE NEXT DAY OR TWO.

15        AS FAR AS THE RULINGS ON THE MOTIONS *IN LIMINE*, I'M        04:06

16   GOING TO ASK COUNSEL TO TAKE CAREFUL NOTES AND PREPARE A

17   PROPOSED ORDER FOR THE COURT'S CONSIDERATION SO THAT WE CAN

18   HAVE A WRITTEN MEMORIALIZATION OF MY RULINGS ON THOSE AS WELL.

19        SO LET ME BEGIN WITH THE SCOPE OF COPYRIGHT

20   PROTECTABILITY.                                                    04:06

21        THE COURT HEARD AT LENGTH ON FRIDAY ON THIS ISSUE.

22        IS THERE ANYTHING FURTHER THAT THE COURT SHOULD HAVE

23   IN FRONT OF IT BESIDES WHAT IT ALREADY HAS IN THE FORM OF THE

24   EXTENSIVE BRIEFINGS AND THE MOTIONS FOR PARTIAL SUMMARY

25   JUDGMENT, AS WELL AS THE ADDITIONAL ARGUMENT THAT HAS ALREADY      04:07

1    BEEN MADE?

2         ANYTHING FURTHER FROM MATTEL?

3         **MR. ZELLER:**  AS A REMINDER, YOUR HONOR, ON FRIDAY WE

4    HAD RAISED THE ISSUE THAT SINCE THE TIME OF THE BRIEFING OF

5    PARTIAL SUMMARY JUDGMENT, WE HAD RECEIVED MORE PLEADINGS FROM          04:07

6    THE MGA DEFENDANTS THAT WE THOUGHT BORE ON THIS ISSUE OF

7    PROTECTABILITY, AS WELL AS THE JUDICIAL ESTOPPEL EFFECT OF

8    THOSE POSITIONS THAT WERE TAKEN IN PRIOR LITIGATION THAT BEAR

9    ON PROTECTABILITY.

10        **THE COURT:**  RIGHT.  I'M MINDFUL OF THAT.                       04:07

11        IS THERE ANYTHING ELSE BESIDES THAT?

12        **MR. QUINN:**  NOT FROM MATTEL.

13        **THE COURT:**  FROM MGA?

14        **MR. NOLAN:**  ON BEHALF OF MGA, TOM NOLAN.

15        I THINK THAT IN THE LITANY OF ITEMS YOU MENTIONED, I              04:08

16   DIDN'T HEAR A REFERENCE TO THE EXPERT REPORTS, BUT THE EXPERT

17   REPORTS ARE BEFORE THE COURT.

18        **THE COURT:**  YES.  PARTICULARLY THE EXPERT REPORT AS

19   IT RELATES TO THE ISSUE OF SUBSTANTIAL SIMILARITY.  THE COURT

20   HAS RECEIVED AND REVIEWED ALL OF THOSE.  I'VE REVIEWED THEM          04:08

21   SEVERAL TIMES IN THE CONTEXT OF THE MOTION FOR PARTIAL SUMMARY

22   JUDGMENT, BUT ALSO IN THE CONTEXT OF THE VARIOUS MOTIONS *IN

23   LIMINE* THAT I'LL BE DECIDING SHORTLY AS WELL; SO THE COURT IS

24   QUITE FAMILIAR WITH THOSE.

25        WITH ALL OF THAT, THESE ARE MY RULINGS.  AND I'M               04:0

1   GOING TO READ FROM WHAT I'VE WRITTEN UP HERE, BUT LIKE I SAID,

2   I'LL FLUSH THIS OUT AND GIVE IT TO YOU IN WRITTEN FORM IN THE

3   NEXT FEW DAYS.

4        AT FRIDAY'S HEARING, BASICALLY THERE WAS A QUESTION

5   RAISED BY MGA CONCERNING THE SCOPE OF THE PROTECTION TO BE      04:08

6   GIVEN TO THE COPYRIGHTED DRAWINGS.  THIS IMPLICATES THE

7   ARGUMENTS THAT WERE RAISED BY THE PARTIES IN THE MOTIONS FOR

8   PARTIAL SUMMARY JUDGMENT, AS I MENTIONED, REGARDING ORIGINALITY

9   AND PROTECTABILITY.  THOSE WERE RAISED BY MGA.  AND THEN THE

10  SUBSTANTIAL SIMILARITY ARGUMENT, WHICH IS THE ELEMENT OF        04:09

11  COPYRIGHT INFRINGEMENT THAT MATTEL IS SEEKING SUMMARY JUDGMENT.

12       THE ELEMENTS, OF COURSE, FOR A COPYRIGHT ARE, ONE,

13  OWNERSHIP OF A VALID COPYRIGHT; TWO, ACCESS BY THE DEFENDANT TO

14  THE ORIGINAL; AND, THREE, SUBSTANTIAL SIMILARITY OF THE WORKS.

15       THE FIRST ELEMENT, ALTHOUGH NOT AMENABLE TO              04:09

16  RESOLUTION ON SUMMARY JUDGMENT, WHICH IS LARGELY WHY WE

17  PROCEEDED WITH PHASE 1-A, HAS BEEN ADDRESSED BY THE JURY'S

18  VERDICT IN PHASE 1-A, FROM THE COURT'S PERSPECTIVE.

19       THE SECOND ELEMENT WAS NOT REALLY CONTESTED BY MGA,

20  BUT IN ANY EVENT, IT HAS BEEN RESOLVED BY VIRTUE OF THE JURY    04:09

21  VERDICT AND THIS WHAT THE COURT DEFERRED RULING ON AS A MATTER

22  OF LAW PREVIOUSLY, WAS THE ISSUE OF SUBSTANTIAL SIMILARITY, AND

23  WHAT THE COURT IS GOING TO DO NOW IS CONSIDER WHETHER OR NOT,

24  BASED ON THE RECORD I HAVE BEFORE ME PRESENTLY, THE COURT IS IN

25  A POSITION TO ADJUDICATE THIS ISSUE.                           04:10

1    TO DETERMINE SUBSTANTIAL SIMILARITY, THE COURT MUST

2  APPLY BOTH THE EXTRINSIC TEST AND THE INTRINSIC TEST.

3    TO APPLY THE EXTRINSIC TEST, THE COURT MUST FIRST

4  EXAMINE THE SPECIFIC EXPRESSIVE ELEMENTS OF THE WORKS AT ISSUE

5  AND COMPARE THEM TO THOSE FOUND IN THE ALLEGING INFRINGING          04:10

6  WORK.  THIS INVOLVES ANALYTICALLY DISSECTING THE WORKS INTO

7  THEIR COMPONENTS IN ORDER TO DETERMINE WHETHER SOME OR ALL OF

8  THE SIMILARITIES ARE ATTRIBUTABLE TO UNPROTECTED ELEMENTS,

9  WHICH MUST BE FILTERED OUT OF THE ANALYSIS BEFORE A CONCLUSION

10 REGARDING SUBSTANTIAL SIMILARITY IS REACHED.                        04:10

11   TO APPLY THIS TEST OF VISUAL WORKS, SUCH AS THE

12 DRAWINGS AT ISSUE HERE, THE BASIC MODE OF ANALYSIS FOR

13 COMPARISON OF THE LITERARY ELEMENT APPLIES, AND UNPROTECTABLE

14 ELEMENTS SHOULD NOT BE CONSIDERED WHEN APPLYING THE EXTRINSIC

15 TEST TO ART WORK.  HOWEVER, THE PRECISE FACTORS EVALUATED FOR       04:10

16 LITERARY WORKS DO NOT READILY APPLY TO ART WORKS; RATHER, A

17 COURT LOOKS TO THE SIMILARITY OF THE OBJECTIVE DETAILS IN

18 APPEARANCE.

19   NOW, TO APPLY THE INTRINSIC TEST, THE COURT EXAMINES

20 THE OVERALL SIMILARITY OF EXPRESSION IN THE TWO WORKS FROM THE      04:11

21 PERSPECTIVE OF THE ORDINARY OBSERVER.

22   IN APPLYING THESE TESTS, THE COURT MUST BE MINDFUL,

23 AS MATTEL HAS URGED, THAT THE SO-CALLED INVERSE RATIO RULE THAT

24 STATES 'WHERE, AS HERE, A HIGH DEGREE OF ACCESS TO THE ORIGINAL

25 WORKS IS SHOWN, THE BURDEN TO SHOW SUBSTANTIAL SIMILARITY IS        04:11

1    SOMEWHAT REDUCED.'

2           APPLYING THESE TESTS TO WHAT I HAVE BEFORE ME

3    PRESENTLY, THE COURT CANNOT CONCLUDE THAT MATTEL HAS SHOWN IT

4    IS ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF SUBSTANTIAL

5    SIMILARITY.  ON SUMMARY JUDGMENT, MGA OFFERED EVIDENCE FROM ITS       04:11

6    DOLL DESIGN EXPERT POINTING OUT A NUMBER OF DIFFERENCES BETWEEN

7    THE BRATZ DOLLS AND THE REGISTERED DRAWINGS.  ADDITIONALLY, IT

8    OFFERED THE EVIDENCE OF PAULA GARCIA REGARDING THE CHANGES THAT

9    MGA WISHED TO MAKE IN THE PROCESS OF CREATING THE DOLLS FROM

10   THE DRAWINGS TO MAKE THEM LESS EDGY AND TO BETTER APPEAL TO THE       04:12

11   'TWEEN MARKET.  MGA ALSO OFFERED EVIDENCE THAT ITS SCULPTOR WAS

12   GIVEN A CERTAIN AMOUNT OF ARTISTIC FREEDOM IN CREATING THE

13   SCULPT.  ALL THESE COMBINE, IN THE COURT'S VIEW, TO CREATE A

14   TRIABLE ISSUE OF FACT REGARDING SUBSTANTIAL SIMILARITY.

15          RELATED TO THIS ISSUE IS ANOTHER ONE RAISED BY MGA:           04:12

16   WHAT IS THE SCOPE OF THE PROTECTABILITY OF THE COPYRIGHTED

17   DRAWINGS?

18          THE COURT CANNOT CONCLUDE THAT THE SCOPE IS, AS MGA

19   CONTENDS, LIMITED TO THE THIN PROTECTION THAT WOULD PROHIBIT

20   LITTLE MORE THAN A VIRTUAL COPYING OF THE WORKS.                     04:12

21          THE COURT'S ANALYSIS HERE BEGINS WITH A PRESUMPTION

22   OF PROTECTABILITY CONFERRED BY THE REGISTRATION OF THE

23   DRAWINGS, WHERE, AS HERE, THE RELEVANT WORKS HAVE REGISTERED

24   COPYRIGHTS, REGISTRATION IS PRIMA FACIE EVIDENCE OF THE

25   VALIDITY OF A COPYRIGHT.  THE PRESUMPTION CAN BE REBUTTED BY         04:13

1   THE DEFENDANTS' SHOWING THAT THE PLAINTIFF'S WORK IS NOT

2   ORIGINAL; THAT IS, UNWORTHY OF COPYRIGHT PROTECTION.

3   ORIGINALITY IN THIS CONTEXT MEANS LITTLE MORE THAN A

4   PROHIBITION AGAINST ACTUAL COPYING.

5          THE SUPREME COURT HAS DESCRIBED THE LOW THRESHOLD FOR

6   COPYRIGHTABILITY:  THE SINE QUA NON OF COPYRIGHT IS

7   ORIGINALITY.  TO QUALIFY FOR COPYRIGHT PROTECTION, A WORK MUST

8   BE ORIGINAL TO THE AUTHOR.  ORIGINAL, AS THE TERM IS USED IN

9   COPYRIGHT, MEANS ONLY THAT THE WORK WAS INDEPENDENTLY CREATED

10  BY THE AUTHOR, AS OPPOSED TO COPIED FROM OTHER WORKS, AND THAT

11  IT POSSESSES AT LEAST SOME MINIMAL DEGREE OF CREATIVITY.

12          I DON'T BELIEVE THAT MGA HAS CONTENDED THAT THE

13  REGISTERED DRAWINGS ARE UNWORTHY OF ANY PROTECTION, BUT I

14  BELIEVE THAT MR. NOLAN ARTICULATED ON FRIDAY THAT THEY ARE

15  SUGGESTING THAT THEY ARE WORTHY OF ONLY A THIN PROTECTION.

16          THE COURT IS GUIDED ON THIS POINT BY THE JELLYFISH

17  CASE, THE SATAVA V. LOWRY CASE, OUT OF THE NINTH CIRCUIT IN

18  2003.  IN THAT CASE, AN ARTIST BY THE NAME OF SATAVA BEGAN

19  MAKING A GLASS-IN-GLASS JELLYFISH SCULPTURE.  WHEN A SECOND

20  ARTIST BY THE NAME OF LOWRY BEGAN MAKING EXTREMELY SIMILAR

21  SCULPTURES, SATAVA SUED FOR COPYRIGHT INFRINGEMENT.  THE IDEA

22  TO DO SUCH A SCULPTURE WAS HELD TO BE BEYOND COPYRIGHT

23  PROTECTION.  SO, TOO, WERE THE ELEMENTS OF EXPRESSION THAT

24  NATURALLY FOLLOW FROM THE IDEA, OUTSIDE THE SCOPE OF COPYRIGHT

25  PROTECTION.  THUS, THE NINTH CIRCUIT HELD THAT SATAVA'S

1    SCULPTURES WERE UNPROTECTED TO THE EXTENT THE PHYSIOLOGY OF

2    JELLYFISH DROVE THE PRESENTATION OF THE SCULPTURES.  RELATEDLY,

3    TO THE EXTENT THAT TRADITIONAL METHODS OF GLASS-IN-GLASS

4    SCULPTURE ALSO INFLUENCED THE PRESENTATION, THE SCULPTURES WERE

5    UNPROTECTED.                                                    04:15

6            CERTAIN FEATURES DID WARRANT PROTECTION, HOWEVER.

7    FOR INSTANCE, THE COURT FOUND UNPROTECTABLE DEPICTION OF

8    JELLYFISH SWIMMING VERTICALLY, WITH BRIGHT COLORS, OR WITH

9    TENDRIL-LIKE TENTACLES ATTACHED TO ROUNDED BELLS; HOWEVER, THE

10   COURT FOUND PROTECTABLE SATAVA'S DISTINCTIVE CURLS OF          04:15

11   PARTICULAR TENDRILS, THE ARRANGEMENT OF CERTAIN HUES OF COLOR,

12   AND THE UNIQUE SHAPE OF THE JELLYFISH'S BELLS.

13           AFTER ITS ANALYSIS, THE NINTH CIRCUIT DID NOT PLACE A

14   HIGH QUALITATIVE VALUE ON SATAVA'S COPYRIGHT.  THE COURT STATED

15   IT THIS WAY:  'SATAVA'S COPYRIGHT ON THESE ORIGINAL ELEMENTS,   04:15

16   OR THEIR COMBINATION, IS THIN, HOWEVER, COMPRISING NO MORE THAN

17   HIS ORIGINAL CONTRIBUTION TO IDEAS ALREADY IN THE PUBLIC

18   DOMAIN.  STATED ANOTHER WAY, SATAVA MAY PREVENT OTHERS FROM

19   COPYING THE ORIGINAL FEATURES HE CONTRIBUTED, BUT HE MAY NOT

20   PREVENT OTHERS FROM COPYING ELEMENTS OF EXPRESSION THAT NATURE  04:16

21   DISPLAYS FOR ALL OBSERVERS, OR THAT THE GLASS-IN-GLASS MEDIUM

22   SUGGESTS TO ALL SCULPTORS.  SATAVA POSSESSES A THIN COPYRIGHT

23   THAT PROTECTS ONLY AGAINST VIRTUALLY IDENTICAL COPYING.'

24           THE DRAWINGS AT ISSUE HERE, HOWEVER, ARE NOT LIKE

25   SATAVA'S JELLYFISH SCULPTURES.  JELLYFISH ANATOMY IS MUCH       04:16

```
 1   SIMPLER THAN HUMAN ANATOMY.  CORRESPONDINGLY, THERE IS MORE
 2   VARIATION IN HUMANS, AT LEAST AS PERCEIVED BY FELLOW HUMANS,
 3   SUCH AS FACIAL FEATURES, ETHNICITY, SIZE, SHAPE, PROPORTIONS,
 4   HAIR COLOR, AND HAIR TEXTURE.  MOREOVER, AN ARTISTIC EXPRESSION
 5   BASED ON A DRAWING IS MUCH LESS LIMITED THAN A GLASS-IN-GLASS      04:16
 6   SCULPTURE.
 7          ACCORDINGLY, ALTHOUGH THE COURT HAS DENIED THE MOTION
 8   FOR SUMMARY JUDGMENT ON THE SUBSTANTIAL SIMILARITY ISSUE, THE
 9   COURT CANNOT GO SO FAR AS TO FIND THAT THE REGISTERED DRAWINGS
10   ARE SUBJECT TO ONLY THE THIN PROTECTION, THE PROTECTION AGAINST    04:17
11   COPYING, REFERRED TO IN SATAVA.
12          THEREFORE, THE RELEVANT TEST TO BE EMPLOYED ON THIS
13   ISSUE IN THIS TRIAL, AND UPON WHICH THE JURY WILL ULTIMATELY BE
14   INSTRUCTED, IS THE TEST REGARDING THE EXTRINSIC/INTRINSIC
15   ANALYSIS SET FORTH ABOVE.                                         04:17
16          SO THAT IS THE COURT'S RULING ON THE SCOPE OF
17   COPYRIGHT PROTECTABILITY.
18          ARE THERE ANY QUESTIONS CONCERNING THE RULING?
19          FIRST, WITH MATTEL.
20          MR. QUINN:  NO, YOUR HONOR.                                 04:17
21          THE COURT:  WITH MGA?
22          MR. NOLAN:  NOT AT THIS POINT.
23          THE COURT:  VERY WELL.
24          I'M NEXT TURNING TO THE MGA MOTION FOR LEAVE TO FILE
25   A SUPPLEMENTAL EXPERT REPORT.  I'VE GOT TO SAY THAT THERE'S        04:1
```

1   NOTHING THAT I'VE SPENT MORE TIME ON OR REVERSED MYSELF MORE

2   TIMES ON IN THE LAST TWO DAYS THAN ON THIS PARTICULAR MOTION.

3           ULTIMATELY, THE COURT IS GOING TO GRANT THE MOTION.

4   I'M GOING TO PERMIT THE LEAVE TO FILE THE SUPPLEMENTAL EXPERT

5   REPORT, BECAUSE I FIND THAT THE DISCOVERY THAT WAS PRODUCED          04:18

6   REALLY COULD NOT BE USED EFFICIENTLY AT TRIAL WITHOUT IT COMING

7   IN THROUGH AN EXPERT.  I CONSIDERED LONG AND HARD MATTEL'S

8   SUGGESTION OF SIMPLY GIVING LEAVE TO USE THE DISCOVERY THAT WAS

9   RECEIVED AS CROSS-EXAMINATION, BUT GIVEN THE NATURE OF THE

10  DISCOVERY, GIVEN THE NATURE OF THE FINANCIAL RECORDS                04:18

11  THEMSELVES, I THINK THAT'S MUCH MORE AKIN TO THE SITUATION WE

12  CONFRONTED WHEN MATTEL WAS SEEKING TO ALLOW THE EXPERT REPORT

13  FOR 42LC.

14          HOWEVER, AT THE SAME TIME, TO AVOID THIS SERVING AS

15  AN IMPROPER SURREBUTTAL, I AM GOING TO GIVE LEAVE TO               04:18

16  MR. WAGNER, MATTEL'S FINANCIAL EXPERT, TO ADDRESS THIS SAME

17  DATA, THIS SAME EVIDENCE, THE SAME REPORT, IN HIS EXPERT

18  PRESENTATION.

19          WHETHER OR NOT WE HAVE DEPOSITIONS ON THIS FINE POINT

20  BY EITHER EXPERT OR FOR EITHER EXPERT BEFORE -- WHAT WOULD BE       04:19

21  BEFORE THEY TESTIFY, IS SOMETHING THAT I'M GOING TO LEAVE UP TO

22  THE PARTIES.  I DON'T KNOW IF YOU'RE GOING TO BE SEEKING THAT

23  OR NOT, BUT ESSENTIALLY, WHAT I'M DOING IS I'M ALLOWING BOTH

24  EXPERTS TO SPEAK TO THIS ISSUE, NOTWITHSTANDING THE

25  UNTIMELINESS OF THE DISCOVERY OR THE UNTIMELINESS OF THE EXPERT     04:19

1   REPORT.

2           DOES EITHER SIDE WISH TO ADDRESS THIS?

3           **MR. ROTH:**  NO, YOUR HONOR.

4           **MR. QUINN:**  NO, YOUR HONOR.

5           **THE COURT:**  VERY WELL.                    04:19

6           THE NEXT MOTION IS MGA'S MOTION *IN LIMINE* NUMBER

7   SEVEN.   THIS IS A MOTION *IN LIMINE* TO EXCLUDE MICHAEL WAGNER.

8   THAT MOTION IS DENIED, ALTHOUGH I WANT TO SPEAK TO A FEW OF THE

9   ISSUES RAISED BY THE MOTION.

10          THE COURT BELIEVES THAT MR. WAGNER'S TESTIMONY      04:20

11  REGARDING THE PROFITS RECEIVED BY MGA AND LARIAN ARE RELEVANT,

12  AND THE PROFITS INCLUDE BOTH THE CASH DISTRIBUTIONS AND VALUE

13  OF THE COMPANY.   BOTH SIDES CITE A NUMBER OF CASES THAT THE

14  COURT HAS REVIEWED IN CONSIDERING THIS MOTION.   IT'S CLEAR THAT

15  THE ANALYSIS TO BE EMPLOYED HERE IS TO AVOID EVIDENCE THAT IS   04:20

16  TOO SPECULATIVE, WHERE THERE IS UNDUE SPECULATION BEING OFFERED

17  IN TERMS OF EITHER THE PROFITS RECEIVED OR THE VALUE OF THE

18  COMPANY; AND I THINK, BASED ON THE EXPERT REPORT, THAT IT IS

19  NOT TOO SPECULATIVE TO GO TO THE JURY.

20          OBVIOUSLY, THERE ARE ARGUMENTS TO BE MADE BY MGA      04:20

21  WHICH CALL INTO QUESTION HOW MUCH WEIGHT THE JURY IS TO GIVE

22  THIS PARTICULAR EXPERT TESTIMONY, BUT I THINK THAT IS SOMETHING

23  WHICH IS VERY SUITABLE TO TRIAL.

24          ANOTHER POINT RELATES TO THE CONCERN ABOUT DOUBLE

25  COUNTING, AND THAT IS A CONCERN THE COURT HAS AS WELL.   BUT I'M   04:21

1   PERSUADED BY MATTEL'S ARGUMENT ON THEIR ENTITLEMENT TO SEEK

2   SEVERAL LIABILITY AND SEVERAL DAMAGES.  CERTAINLY, AT THE END

3   OF THE DAY, IF THE COURT, FOR EXAMPLE, IMPOSES AN INJUNCTION,

4   ASSUMING THAT A COPYRIGHT INFRINGEMENT WERE TO BE FOUND OR IF

5   THE DAMAGES BEING RETURNED CLEARLY DO PLAY OUT TO BE DOUBLE          04:21

6   COUNTING, MATTEL WILL HAVE TO EXERCISE A CHOICE OF REMEDIES,

7   AND SOME OF THAT DAMAGE, OR ENTIRE PORTIONS OF THAT DAMAGE, MAY

8   HAVE TO BE SET ASIDE.

9          BUT AT THIS POINT, I THINK IT WOULD BE ENTIRELY

10  PREMATURE TO FORCE MATTEL TO CHOOSE BETWEEN, FOR EXAMPLE,          04:22

11  PROFITS OBTAINED BY MGA VERSUS PROFITS OBTAINED BY

12  ISAAC LARIAN.  THIS IS PARTICULARLY UNDERSCORED SINCE THE

13  DAMAGES HERE IS NOT JUST IN THE COPYRIGHT INFRINGEMENT BUT ALSO

14  ATTENDS TO THE STATE TORT CLAIMS THAT THE JURY HAS FOUND

15  LIABILITY AS AGAINST BOTH MGA AND ISAAC LARIAN, AND WITH          04:22

16  RESPECT TO CONVERSION, MGA HONG KONG AS WELL.

17         HAVING SAID THAT, THOUGH, WE'RE CLEARLY GOING TO HAVE

18  TO SPELL OUT ON THE VERDICT FORM THESE VARIOUS PERMUTATIONS AND

19  THESE VARIOUS CATEGORIES OF DAMAGES SO THAT IF DAMAGES ARE

20  RETURNED AGAINST MGA OR ISAAC LARIAN, WE WOULD BE IN A POSITION   04:22

21  POST-TRIAL TO MAKE THE APPROPRIATE RULINGS.

22         I'M TRYING TO THINK IF THERE'S ANYTHING ELSE HERE.

23         I DO FIND THAT THE CALCULATIONS BY MR. WAGNER ARE

24  BASED ON A DEFENSIBLE ANALYSIS, BOTH IN TERMS OF THE HISTORICAL

25  REVENUES AND THE ENTERPRISE VALUE ANALYSIS THAT HE ENGAGES IN.    04:23

1    I DID TAKE A CAREFUL LOOK AT THAT <u>BURNS</u> CASE OUT OF THE WESTERN

2    DISTRICT OF NEW YORK THAT MGA CITES TO, BUT I THINK THE REPORT

3    HERE IS DISTINGUISHABLE.   THE INJUNCTION IS BY NO MEANS A

4    FOREGONE CONCLUSION AT THIS POINT, SO I THINK WE NEED TO

5    PROCEED WITH THE EXPERT.                                          04:23

6              SO THAT'S MY RULING ON MGA NUMBER SEVEN.

7              ANY QUESTIONS FROM EITHER SIDE ON THAT?

8         **MR. QUINN:**   NO QUESTIONS FROM MATTEL.

9         **THE COURT:**   VERY WELL.

10        **MR. ROTH:**   WHILE WE CERTAINLY ACCEPT THE COURT'S          04:23

11   DECISION, OUR PRIMARY CONCERN IS THE ONE THE COURT HAS

12   IDENTIFIED, AND WE DO BELIEVE THAT, AS PRESENTED, MR. WAGNER IS

13   SEEKING OR IS EXPRESSING AN OPINION THAT WOULD, HE ADMITS,

14   DOUBLE-COUNT DOLLARS.

15        **THE COURT:**   AND I READ THAT.   YOU INCLUDE THE            04:24

16   DEPOSITION TRANSCRIPT IN THERE, AND HE DOUBLE-COUNTS IN THE

17   SENSE OF THAT IF YOU COUNTED BOTH ISAAC LARIAN AND MGA.   AND I

18   DO GET IT; I DO UNDERSTAND HOW IT'S THE SAME DOLLARS; AND

19   THAT'S WHY I THINK WE NEED TO SEPARATE THIS OUT ON THE VERDICT

20   FORM.                                                            04:24

21             BUT THEY ARE SEPARATE DEFENDANTS, AND AS LONG AS WE

22   CAN SEPARATE THAT OUT IN THE VERDICT FORM AND THE JURY HAS A

23   BASIS, A FACTUAL BASIS, TO MAKE THAT DISTINCTION, I THINK WE'D

24   BE ABLE TO MAKE THE DECISIONS THAT WE NEED TO POST-TRIAL IF

25   THAT ARISES.                                                     04:24

1    I INTERRUPTED YOU, BUT I DO UNDERSTAND THE CONCERN.

2         **MR. ROTH:**  JUST FROM A PURE MATH PERSPECTIVE, WE

3    WOULD ASSUME THAT ANY MONIES AWARDED AGAINST MR. LARIAN, BASED

4    UPON DISTRIBUTION PROFITS, WOULD THEN BE SUBTRACTED FROM THE

5    PROFITS THAT WERE AWARDED AGAINST MGA.                        04:25

6         **THE COURT:**  I UNDERSTAND THE ARGUMENT.  I'M NOT GOING

7    TO RULE ON THAT RIGHT NOW, BUT THAT'S THE TYPE OF RULING THAT I

8    WOULD WANT TO BE IN A POSITION TO MAKE POST-TRIAL, DEPENDING ON

9    THE CIRCUMSTANCES.  IT WOULD BE PREMATURE FOR THE COURT TO RULE

10   ON THAT RIGHT NOW, BUT I'M VERY MINDFUL OF THAT ISSUE, AND     04:25

11   THAT'S PRECISELY WHY I WOULD NOT HAVE A VERDICT FORM WHICH

12   WOULD SIMPLY ALLOW THE JURY TO FILL IN THE TOTAL AMOUNT OF

13   DAMAGES.  WE NEED TO MAKE SURE THAT IT'S BROKEN DOWN.  BUT I AM

14   MINDFUL OF THE CONCERN, AND I THINK THAT CONCERN CAN BE

15   ADDRESSED POST-TRIAL.                                         04:25

16        **MR. ROTH:**  UNDERSTOOD, YOUR HONOR.

17        **THE COURT:**  VERY WELL.

18        THE NEXT MOTION IS MGA NUMBER EIGHT, REGARDING

19   HOLLANDER.

20        MY DECISION ON NUMBER EIGHT IS TO GRANT MOTION          04:26

21   *IN LIMINE* NUMBER EIGHT, TO EXCLUDE THE TESTIMONY OF

22   MR. HOLLANDER.  THIS IS SOMEWHAT TIED IN OR CONNECTED WITH THE

23   REPRESENTATION THAT I RECEIVED FROM MS. AGUIAR THE OTHER DAY

24   WITH RESPECT TO MATTEL'S MOTION NUMBER 11 RELATED TO MR. GRUCA,

25   THAT MGA IS WITHDRAWING THAT AND THEY'RE NOT PLANNING TO USE   04:26

1   THE SURVEY EVIDENCE FOR MR. GRUCA, FOR WHICH MR. HOLLANDER'S

2   TESTIMONY OR EXPERT REPORT WAS A REBUTTAL.  SO IF MGA IS NO

3   LONGER PLANNING TO USE THAT AND THEY'RE STILL REPRESENTING TO

4   THE COURT, THEN THE COURT IS GOING TO TREAT THIS AS THE

5   REBUTTAL REPORT THAT IT WAS PROFFERED TO BE AND PRECLUDE THAT          04:26

6   FROM MATTEL'S CASE-IN-CHIEF.

7          I LOOK TO THE MERITS OF THIS ISSUE AS WELL.  THE LAW

8   GENERALLY SEEMS TO BE THAT INTRINSIC ANALYSIS DOES NOT ALLOW

9   FOR EXPERT TESTIMONY.  HOWEVER, I'M SOMEWHAT PERSUADED BY THE

10  MATTEL LINE OF CASES WHICH SUGGESTS THAT IN THE PARTICULAR            04:27

11  CONTEXT OF CHILDREN, A SUB GROUP LIKE CHILDREN, THAT 'AVERAGE,

12  REASONABLE ADULTS MIGHT NOT BE ABLE TO FULLY UNDERSTAND THAT A

13  TYPE OF SURVEY ANALYSIS OF THIS NATURE MIGHT BE ADMISSIBLE'; SO

14  I SUPPOSE ON THE MERITS, I MIGHT BE INCLINED TO INCLUDE IT.

15         HOWEVER, GIVEN THAT THIS WAS NOT AN EXPERT REPORT             04:27

16  THAT WAS SUBMITTED BY MATTEL IN THE FIRST INSTANCE, THAT'S

17  GIVING MGA AN OPPORTUNITY TO RESPOND TO IT, BUT RATHER IT WAS A

18  REBUTTAL REPORT, AND IT WAS A REBUTTAL OF SOMEONE WHO WAS NO

19  LONGER BEING CALLED, I THINK THE BEST COURSE IS TO KEEP ALL OF

20  THE SURVEY EVIDENCE OUT.                                            04:27

21         BUT I DO WANT TO RECONFIRM WITH MGA THAT THEY ARE NOT

22  CALLING MR. GRUCA.

23         **MS. AGUIAR:**  THE STATEMENT THAT I MADE ON THE RECORD

24  THE OTHER DAY IN COURT WAS THAT WE ARE NOT CALLING THE TWO

25  PEOPLE THAT THIS SURVEY SUPPOSEDLY IS IN REBUTTAL TO; AND THOSE      04:28

1   TWO PEOPLE ARE ROBERT TONNER -- AND WE CURRENTLY DON'T INTEND

2   TO CALL MARY BERGSTEIN EITHER.   THOSE WERE THE TWO EXPERTS THAT

3   WE'RE NOT CALLING.   THOSE ARE THE TWO EXPERTS THAT MR. TONNER

4   WAS SUPPOSEDLY REBUTTING.

5            THE COURT:  WHAT ABOUT THE GRUCA SURVEY EVIDENCE?  IS   04:28

6   THAT OUT AS WELL?   THE ON-LINE SURVEY BY BRAND RESEARCH.

7            MR. ROTH:   THE COUPLING THERE WAS, MATTEL HAD FILED A

8   MOTION SEEKING TO HAVE MR. GRUCA'S SURVEY EXCLUDED.  WE ARGUED

9   THAT IT SHOULD BE INCLUDED UNDER THE STRAUS CASE BECAUSE IT WAS

10  CLEARLY APPROPRIATE REBUTTAL.  MATTEL THEN MADE A MOTION THAT   04:29

11  -- I THINK IT'S A MR. KIVETZ -- WHO WOULD OFFER -- THAT IF WE

12  WERE PERMITTED TO PROCEED WITH THE GRUCA SURVEY, THEY WANTED TO

13  OFFER UP THE KIVETZ SURVEY.  THAT'S THE SURVEY, YOU RECALL,

14  THAT WAS CONCLUDED, I THINK, SOMETIME IN EARLY JUNE.  THERE WAS

15  SOME ARGUMENT ABOUT WHETHER THAT HAS BEEN PROPERLY PRODUCED.   04:29

16  BUT THERE REALLY WAS NO EXPLICIT CONNECTION, AT LEAST FROM

17  MGA'S PERSPECTIVE, BETWEEN HOLLANDER ON THE ONE HAND AND GRUCA

18  ON THE OTHER HAND.

19            THE COURT:  WHILE WE'RE ON THAT, MR. ROTH, ARE YOU

20  PROCEEDING WITH THE GRUCA REPORT?   04:29

21            MR. ROTH:  YES, WE ARE, YOUR HONOR.  ASSUMING THAT

22  THE COURT, AS WE BELIEVE IS APPROPRIATE, DENIES MOTION

23  IN LIMINE NUMBER 11 FILED BY MATTEL, WE WOULD SUBMIT THE GRUCA

24  REPORT.

25            THE COURT:  ALL RIGHT.  I WAS TYING IT, THEN, TO THE   04:30

1    WRONG ONE.  BUT THE BOTTOM LINE, THOUGH, GETTING BACK TO

2    HOLLANDER, IS THE EXPERT TO WHICH MR. HOLLANDER WAS IN

3    REBUTTAL, THAT SURVEY IS NOT BEING INTRODUCED.

4            IS THAT CORRECT, MS. AGUIAR?

5            **MS. AGUIAR:**  YES.                                         04:30

6            MR. HOLLANDER IS THE SURVEY EXPERT.  INTERESTINGLY

7    ENOUGH -- AND THIS IS PART OF OUR ARGUMENT, YOUR HONOR, AND

8    MAYBE IT'S THE CAUSE OF SOME OF THE CONFUSION -- THE TWO

9    WITNESSES WHO HE CLAIMS TO BE REBUTTING, NEITHER ONE OF THEM IS

10   A SURVEY EXPERT.  AND THAT IS PART OF MY ARGUMENT TO YOUR        04:30

11   HONOR, THAT EVEN WHEN WE GET TO MATTEL'S REBUTTAL CASE THAT I

12   WILL BE ARGUING TO YOUR HONOR THAT IT IS NOT PROPER REBUTTAL.

13           THE EXPERTS TONNER AND BERGSTEIN DO NOT PUT IN SURVEY

14   EVIDENCE OF ANY SORT.  AND SO MR. HOLLANDER, WHO'S THE SURVEY

15   EXPERT FOR MATTEL, CLAIMS THAT HE IS REBUTTING THEM.  WE DON'T   04:31

16   BELIEVE THAT'S ACTUALLY PROPER REBUTTAL TO PEOPLE WHO DIDN'T

17   PROFFER A SURVEY.

18           **THE COURT:**  VERY GOOD.

19           I'LL HEAR FROM MATTEL ON THIS.  OTHERWISE, THOUGH, MY

20   INCLINATION IS TO DENY THIS AS PART OF MATTEL'S CASE-IN-CHIEF.   04:31

21           ANYONE FROM MATTEL ON THIS?

22           **MR. KIDMAN:**  TO RESPOND TO MS. AGUIAR'S ARGUMENT THAT

23   HOLLANDER IS NOT PROPER REBUTTAL BECAUSE HE WASN'T RESPONDING

24   TO SURVEY TESTIMONY, BY THAT SAME LOGIC, MR. GRUCA SHOULD BE

25   EXCLUDED, BECAUSE MR. GRUCA PURPORTS TO BE REBUTTAL TO THE       04:31

1   EXPERT OPINION OF CAROL SCOTT, AND CAROL SCOTT DID NOT SUBMIT

2   AN EXPERT.  AND, INDEED, OUR POSITION IS THAT MR. GRUCA IS NOT

3   PROPER REBUTTAL TESTIMONY.

4       **THE COURT:**  I APPRECIATE THAT.  THE COURT'S ANALYSIS

5   WAS NOT PARALLEL TO MS. AGUIAR'S STATEMENT.  CONFINE YOUR       04:32

6   RESPONSE TO THE COURT'S ANALYSIS.  THIS IS CLEARLY A REBUTTAL

7   EXPERT DESIGNATED AS SUCH BY MATTEL.  THE EXPERTS TO WHOM HE

8   WAS DESIGNATED AS A REBUTTAL EXPERT ARE NO LONGER BEING CALLED,

9   SO ON THAT BASIS AND THAT BASIS ONLY, THE COURT IS NOT GOING TO

10  PERMIT HIM TO GO FORWARD IN THE CASE-IN-CHIEF.                  04:32

11      IS THERE ANY RESPONSE TO THAT?

12      **MR. KIDMAN:**  NO, YOUR HONOR.

13      **THE COURT:**  VERY WELL.

14      **MS. AGUIAR:**  YOUR HONOR, JUST TO CLOSE IT OUT, IF WE

15  DO GET TO THE POINT AT SOME JUNCTURE WHERE WE ARE ARGUING ON    04:32

16  THE HOLLANDER MOTION AGAIN, I DID JUST WANT TO RESERVE THE

17  RIGHT TO ARGUE REGARDING THOSE CASES THAT MATTEL CITED ON

18  WHETHER OR NOT EXPERT TESTIMONY OF THIS SORT WOULD BE PROPER

19  WITH THIS "INTENDED AUDIENCE."  IT'S THE LAY PUBLIC AND IT'S

20  CHILDREN OF A CERTAIN AGE.                                     04:33

21      BUT CERTAINLY, I DISAGREE AND I WOULD LIKE THE

22  OPPORTUNITY, ONLY IF IT RISES LATER, TO ADDRESS THAT.

23      **THE COURT:**  FAIR ENOUGH.  WE'LL PUT THAT OFF FOR

24  ANOTHER DAY.  I GIVE YOU THE COURT'S TENTATIVE THOUGHTS, HAVING

25  REVIEWED THOSE CASES, BUT I'LL CERTAINLY GIVE BOTH SIDES AN     04:33

1   OPPORTUNITY TO ARGUE BEFORE MR. HOLLANDER WILL BE CALLED AS

2   PART OF THE REBUTTAL CASE.

3           **MS. AGUIAR:**  THANK YOU, YOUR HONOR.

4           **THE COURT:**  VERY WELL.

5           MGA NUMBER NINE, THIS IS WITH RESPECT TO MR. OMAN,

6   THE INDIVIDUAL FORMERLY FROM THE U.S. COPYRIGHT OFFICE.

7           MY TENTATIVE ON THIS IS TO PERMIT MR. OMAN TO TESTIFY

8   WITH RESPECT TO THE PRACTICES AND PROCEDURES OF THE U.S.

9   COPYRIGHT OFFICE AND TO TESTIFY WITH RESPECT TO REGISTRATION

10  PRACTICES IN GENERAL, INCLUDING IN HONG KONG, HOWEVER, TO

11  EXCLUDE HIS TESTIMONY THAT RELATES TO HIS OPINION CONCERNING

12  THE PRACTICES AND STANDARDS FOR SOPHISTICATED COMPANIES AND

13  VARIOUS LEGAL OPINIONS THAT HE HAS OFFERED AND INTERPRETATIONS

14  OF COPYRIGHT LAW.

15          BASICALLY, I THINK HE'S CERTAINLY WELL QUALIFIED TO

16  TALK ABOUT REGISTRATION PRACTICES AND PROCEDURES, BASED ON HIS

17  EXPERIENCE.  AND I THINK THAT GIVEN THE EVIDENCE THAT HAS BEEN

18  INTRODUCED ALREADY, AND THAT THE COURT ANTICIPATES WILL BE

19  INTRODUCED, I CAN SEE A BENEFIT TO THE JURY FROM HAVING THAT

20  TYPE OF TESTIMONY.  BUT I THINK HIS TESTIMONY CONCERNING THE

21  STANDARDS FOR SOPHISTICATED COMPANIES AND THE DIFFERENT

22  STANDARDS ON THAT AND THE VARIOUS LEGAL OPINIONS, THAT IS

23  CONSISTENT WITH WHAT THE COURT HAS PREVIOUSLY STATED ABOUT NOT

24  HAVING LEGAL OPINION OFFERED OF THAT SORT, BUT RATHER, ONLY

25  HAVE THE COURT'S LEGAL INSTRUCTIONS TO THE JURY GOVERN THAT --

1   FAVORS PRECLUDING THAT TYPE OF TESTIMONY.  SO BASICALLY, MGA

2   MOTION NUMBER NINE WILL BE GRANTED IN PART AND DENIED IN PART.

3            LET ME HEAR FROM BOTH SIDES BEFORE I MAKE THAT FINAL.

4            **MR. ZELLER:**  WE SUBMIT ON THAT, YOUR HONOR.

5            **THE COURT:**  VERY WELL.                          04:35

6            **MR. NOLAN:**  ON BEHALF OF MGA, I WANT TO FOCUS

7   PARTICULARLY ON THE APPARENT INDICATION THAT MR. OMAN WOULD BE

8   ALLOWED TO TESTIFY BEFORE THIS JURY ON REGISTRATION PROCEEDINGS

9   IN HONG KONG, IN EFFECT, THEREBY TESTIFYING AS AN EXPERT ON

10  HONG KONG LAW AND PROCEDURES.  THERE'S AT LEAST THREE          04:35

11  PARTICULAR POINTS THAT I WANT TO --

12           **THE COURT:**  LET ME STOP YOU FOR ONE SECOND.  IT WOULD

13  NOT BE HONG KONG LAW.  IT WOULD BE MORE HONG KONG PROCEDURES.

14  I KNOW THAT MAY BE A FINE POINT -- AND YOU'RE CERTAINLY GOING

15  TO RESERVE ALL OF YOUR OBJECTIONS ON FOUNDATION ON THIS -- BUT  04:36

16  JUST TO BE CLEAR, I'M NOT GOING TO PERMIT MR. OMAN, OR ANYBODY

17  ELSE FOR THAT MATTER, TO TUTOR THE JURY ON LEGAL PRINCIPLES.

18  THIS IS MORE A MATTER OF PRACTICE AND PROCEDURES BASED ON HIS

19  EXPERIENCE AND TRAINING.  AND THAT'S THE DIVIDING LINE THAT I'M

20  ENVISIONING.                                                   04:36

21           BUT WITH THAT IN MIND, PLEASE GO AHEAD.

22           **MR. NOLAN:**  THANK YOU FOR THAT, YOUR HONOR.

23           I HAD MISAPPREHENDED THE COURT'S INITIAL RULING.

24  HOWEVER, I DO WANT TO GO BACK TO ONE THING THAT WAS TROUBLING

25  ABOUT THE WHOLE WAY THIS ISSUE DEVELOPED; AND THAT IS, OF       04:36

1   COURSE, THE COURT SET OUT STRICT TIMELINES FOR THE DESIGNATION

2   OF EXPERTS AND WHAT THEY WERE GOING TO TESTIFY TO.

3          MR. OMAN PREPARED A REPORT, LIMITED IT TO THE U.S.

4   COPYRIGHT OFFICE PROCEDURES.  AT HIS DEPOSITION, HE AGAIN

5   REAFFIRMED THAT WAS THE LIMITED AREA THAT HE WAS GOING TO OFFER      04:37

6   AN OPINION ON, EVEN AT THAT DEPOSITION, DISAVOWING THAT HE HAD

7   SIGNIFICANT EXPERIENCE IN FOREIGN JURISDICTIONS.

8          IT WASN'T UNTIL SIX WEEKS AFTER THE DATE FOR THE

9   DEADLINE FOR EXPERT DESIGNATIONS, AND WELL AFTER HIS DEPOSITION

10  WAS TAKEN IN THIS CASE, THAT MATTEL SUBMITTED A SUPPLEMENTAL        04:37

11  DECLARATION WHICH THEN SET FORTH HIS ALLEGED QUALIFICATIONS TO

12  TESTIFY EVEN TO THE NARROW ISSUE THAT THE COURT IS LEANING

13  TOWARDS ALLOWING HIM TO TESTIFY; THAT IS, HONG KONG PROCEDURES.

14         WE IMMEDIATELY FILED A MOTION TO STRIKE THAT.  WE

15  THOUGHT THAT IT WAS LATE BY SIX WEEKS FOR CERTAIN, AND THAT HIS     04:37

16  QUALIFICATIONS WERE NOT SUCH THAT HE, AS A DOMESTIC LAWYER,

17  COULD BE IN THE POSITION TO OFFER THIS TYPE OF TESTIMONY.

18         WE ALSO BELIEVE, YOUR HONOR, THAT -- AND THIS TIES

19  BACK TO THE WHOLE ISSUE OF THE HONG KONG PROCEEDINGS, AND I

20  DON'T WANT TO BELABOR THIS POINT, BUT THE COURT WILL RECALL,        04:38

21  PRIOR TO THE START OF 1-A, WE HAD SUBSTANTIAL ARGUMENT ON THE

22  ADMISSIBILITY AND RELEVANCE OF THE HONG KONG PROCEEDINGS.  SOME

23  OF THAT EVIDENCE CAME IN IN THE CONTEXT OF 1-A, WHERE THE ISSUE

24  WAS OBVIOUSLY TIMING, AND TO A LESSER DEGREE, OWNERSHIP; BUT

25  THE TIMING, OBVIOUSLY, WOULD INFORM THE COURT WITH RESPECT TO       04:38

```
 1   THE OWNERSHIP QUESTION; SO STATEMENTS MADE BY MGA OR

 2   ISAAC LARIAN AND MGA IN PROCEEDINGS INITIATED IN HONG KONG CAME

 3   INTO EVIDENCE.

 4        HOWEVER, IN THIS PHASE OF THE CASE NOW, YOU HAD

 5   INDICATED THAT YOU WOULD TAKE UP THE HONG KONG PLEADINGS AND

 6   COLLATERAL PLEADINGS WHEN THEY AROSE SO THAT THE ISSUE WOULD BE

 7   BETTER FRAMED.

 8        IT IS STRIKING TO US, YOUR HONOR, THAT WE HAVE GONE

 9   THROUGH -- AND I KNOW THE COURT HAS DEVOTED A SUBSTANTIAL

10   AMOUNT OF TIME REVIEWING THE RECORD EVIDENCE TO REACH THE

11   DECISION YOU DID AT THE START OF THIS HEARING WITH RESPECT TO

12   'WHAT IS THE LEVEL OF PROTECTION, ET CETERA, ET CETERA,' FOR

13   CARTER BRYANT'S DRAWINGS.

14        THERE IS NO EVIDENCE PRESENTED TO THIS JURY THAT SUCH

15   PROCEDURES WERE EVER FOLLOWED IN HONG KONG WITH RESPECT TO THE

16   TESTS THAT WOULD BE APPLIED, AND WE THINK THAT WE WOULD RESERVE

17   FOR FURTHER ARGUMENT, YOUR HONOR -- CERTAINLY, NOT ON THE PHONE

18   LIKE THIS, BUT JUST TO REMIND THE COURT OF AN EARLIER

19   INDICATION THAT AT A POINT IN TIME BEFORE THESE HONG KONG

20   PLEADINGS GO IN -- AND WE NOW HAVE, OVER THE WEEKEND, A NUMBER

21   OF DOCUMENTS THAT WE'VE RECEIVED BACK FROM MATTEL WITH TRIAL

22   EXHIBIT NUMBERS, WHERE WE BELIEVE, FRANKLY, THAT -- I

23   RESPECTFULLY SUBMIT THAT THIS COPYRIGHT ISSUE IS GOING TO BE

24   SUFFICIENTLY CONFUSING FOR THIS JURY AND THEY HAVE A LOT OF

25   HOMEWORK TO DO ALREADY ON WHAT ARE THE SUBSTANTIAL
```

04:38
04:39
04:39
04:39
04:40

1    SIMILARITIES, AND THAT THE REAL RISK HERE WITH MR. OMAN

2    TESTIFYING NOW AS TO HONG KONG PROCEDURES IS TO ACTUALLY --

3    THERE IS A REAL PREJUDICE HERE THAT AN END RUN WILL OCCUR

4    AROUND WHAT THE COURT'S INSTRUCTIONS ARE WITH RESPECT TO WHAT

5    THE TEST IS IN THE MATTERS TO BE TRIED IN THIS PHASE OF THE          04:40

6    CASE AND WOULD REQUIRE US AN ENORMOUS AMOUNT OF TIME TO TRY TO

7    PUT INTO CONTEXT STATEMENTS THAT ARE CONTAINED IN PLEADINGS

8    FILED IN FOREIGN JURISDICTIONS WHERE THE TEST IS NOT THE SAME,

9    WHICH YOU HAVE JUST GONE THROUGH IN THE ANALYSIS ON THE SUMMARY

10   JUDGMENT.                                                           04:40

11          WE DON'T HAVE TO BELABOR THIS ALL TODAY, YOUR HONOR.

12   I JUST WOULD WANT TO HAVE AN OPPORTUNITY, MAYBE IN PERSON,

13   BEFORE ANY OF THE HONG KONG PLEADINGS ARE INTRODUCED, WHERE WE

14   CAN ACTUALLY MAKE THIS POINT AND SHOW TO YOU THE ACTUAL

15   LANGUAGE OR POSITION THAT MATTEL WOULD LIKE TO USE AND              04:41

16   INTRODUCE BEFORE THIS JURY.

17          BUT THE BOTTOM LINE IS, THIS WHOLE HONG KONG -- I

18   ACTUALLY KNOW, FROM THE AMOUNT OF EXHIBITS THAT ARE BEING SENT

19   OVER TO US, THAT WE ARE GOING TO HAVE TO HAVE ALMOST A TRIAL

20   WITHIN A TRIAL ON THE COPYRIGHT IMPLICATIONS OF POSITIONS THAT      04:41

21   WERE TAKEN IN HONG KONG AND WHETHER OR NOT THEY ARE CONSISTENT

22   OR INCONSISTENT WITH WHAT POSITION IS GOING TO BE TAKEN IN THIS

23   CASE.

24          IT WOULD BE SIMILAR TO, YOUR HONOR, IF I WANTED TO

25   INTRODUCE INTO EVIDENCE IN THIS CASE POSITIONS THAT MATTEL HAS      04:41

1    TAKEN IN OTHER LITIGATION MATTERS OUTSIDE OF CALIFORNIA.   FOR

2    INSTANCE, WE TALKED ABOUT THE GOLDBERGER CASE AND THE POSITIONS

3    THAT WERE TAKEN THERE, AND I THINK THE COURT KNOWS THAT THE

4    STANDARD BETWEEN THE NINTH CIRCUIT AND THE SECOND CIRCUIT ARE

5    DIFFERENT WITH RESPECT TO THE SCOPE OF PROTECTABILITY AND HOW    04:42

6    YOU ANALYZE THAT.

7         THE SAME ISSUE, IN A MUCH GRANDER AND MUCH MORE

8    PREJUDICIAL WAY, APPLIES WHEN WE'RE TALKING ABOUT A FOREIGN

9    JURISDICTION AND TRYING TO EXPLAIN WHAT THE IMPLICATIONS ARE.

10   AND I KNOW THE LIMITATION THE COURT HAS PLACED -- AND THIS WILL   04:42

11   BE THE LAST ONE I MAKE -- I KNOW THE COURT HAS PUT A LIMITATION

12   ON THE FACT THAT MR. OMAN WILL NOT BE ALLOWED TO TESTIFY AS TO

13   HONG KONG LAW.

14        BUT WE RESPECTFULLY SUBMIT THAT THE 403 ANALYSIS IS

15   EQUALLY STRONG ON EVEN HAVING HIM APPEAR AS AN EXPERT ON HONG    04:42

16   KONG PROCEDURES, BECAUSE WE THINK IT'S GOING TO LAY A

17   FOUNDATION FOR MATTEL TO INTRODUCE ALL OF THESE EXHIBITS

18   WITHOUT ANY CONTEXT FOR THE JURY, AND WHICH WILL REQUIRE US,

19   THEN, TO POTENTIALLY NOW BRING IN OUR OWN REBUTTAL, NOW THAT WE

20   UNDERSTAND THAT MATTEL IS GOING TO HAVE SUCH AN EXPERT WITNESS,   04:42

21   WHEN THERE WAS A LATE DESIGNATION BY MATTEL IN THE FIRST

22   INSTANCE.

23        SO I'LL SUBMIT ON THAT, YOUR HONOR.

24        **THE COURT:**  VERY WELL.

25        FROM MATTEL?                                               04:43

1      **MR. ZELLER:**  WITH RESPECT TO THE ALLEGATIONS TO THE

2  LATE SUBMISSION, THAT IS NOT CORRECT.

3          MR. OMAN'S REPORT INCLUDED IN SECTION C-1 A SPECIFIC

4  DISCUSSION OF THESE DECLARATIONS FROM HONG KONG.  SO THAT WAS

5  ALWAYS IN HIS REPORT.  HOW THIS PLAYED OUT, YOUR HONOR, IS THAT          04:43

6  SUBSEQUENT TO THE DEPOSITION, MGA FILED THIS MOTION *IN LIMINE*

7  AND WAS QUESTIONING MR. OMAN'S ABILITY TO ADDRESS THESE HONG

8  KONG ISSUES.  WE PUT IN A DECLARATION TALKING ABOUT HIS

9  QUALIFICATIONS FURTHER.  THAT WAS ALL THAT HAPPENED.

10          AND CONTRARY TO WHAT MR. NOLAN HAS JUST SAID, AT HIS          04:43

11  DEPOSITION, HE ABSOLUTELY DID NOT DISAVOW COMPETENCE ON THESE

12  ISSUES.  THE QUESTIONS HE WAS ASKED WERE VERY NARROW ONES.  HE

13  WAS ASKED QUESTIONS SUCH AS, 'HAVE YOU EVER TESTIFIED IN A HONG

14  KONG LAWSUIT BEFORE?'

15          THEY DID NOT EXPLORE, EVEN THOUGH THEY HAD EVERY          04:44

16  OPPORTUNITY TO DO SO, HIS BONA FIDE AND HIS QUALIFICATIONS.

17          I DON'T THINK THERE'S ANY DOUBT -- AND THIS WAS

18  CERTAINLY ONE MAJOR ISSUE IN THE WAY IT WAS TEED UP ON THE

19  MOTION *IN LIMINE* -- THAT HE IS QUALIFIED TO ADDRESS THESE

20  ISSUES.          04:44

21          NUMBER TWO, THE PARADE OF HORRIBLES THAT MGA IS

22  RAISING HERE IS ENTIRELY OF THEIR OWN MAKING.

23          THIS IS A RESPONSE, YOUR HONOR, TO MGA'S ARGUMENTS.

24  WHAT MR. NOLAN IS PROPOSING IS THAT MGA BE PERMITTED TO

25  BASICALLY, WITH A SWEEP OF A HAND, SAY, 'OH, HONG KONG IS          04:44

5244

1  DIFFERENT; IGNORE OUR PRIOR INCONSISTENT STATEMENTS THAT WE'VE

2  MADE TO COURTS BECAUSE THEY WERE IN HONG KONG, AND NOT ALLOW

3  MATTEL TO RESPOND.'

4       THAT IS, IN FACT, THE NET EFFECT OF WHAT IS BEING

5  PROPOSED HERE.                                                    04:44

6       NOW, IF MR. NOLAN IS, IN FACT, SO CONCERNED ABOUT THE

7  TIMING, THE POTENTIAL FOR CONFUSION, AND THE LIKE, THAT HE

8  WANTS TO RAISE HERE, MGA HAS ITS OWN REMEDY.  IT CAN SIMPLY

9  STOP MAKING THAT ARGUMENT.  BECAUSE THERE'S NO QUESTION -- AND

10 THE COURT WILL RECALL THAT THE PARTIES ADDRESSED THIS AT SOME    04:45

11 LENGTH IN CONNECTION WITH ANOTHER MOTION *IN LIMINE* AND OTHER

12 PRETRIAL RULINGS -- THAT MGA'S PRIOR LITIGATION STATEMENTS

13 ABOUT THE EXACT WORKS THAT ARE AT ISSUE NOW IN THIS CASE ARE

14 RELEVANT AND THEY ARE ADMISSIBLE.  IT'S CLASSIC PRIOR ADMISSION

15 MATERIAL.  SO I THINK THAT THE PARTICULAR CONTEXT IN WHICH       04:45

16 THESE ISSUES AROSE ARE VERY IMPORTANT FOR, REALLY, THE RULING

17 ON THIS ISSUE.

18       AND AS I SAY, I MEAN, MATTEL SUBMITS ON THE COURT'S

19 RULING, BUT MR. NOLAN'S ARGUMENTS HERE, IN TRYING TO PRECLUDE

20 MATTEL FROM COUNTERING MGA'S OWN POSITION, WOULD BE SEVERELY     04:45

21 PREJUDICIAL TO MATTEL AND JUST DOESN'T SEEM WARRANTED.

22       **THE COURT:**  THANK YOU, COUNSEL.

23       WHERE WE'RE AT RIGHT NOW, THERE'S A MOTION *IN LIMINE*

24 BEFORE ME, AND I'M GOING TO DENY IN PART AND GRANT IN PART THE

25 MOTION *IN LIMINE* ALONG THE LINES THAT I PREVIOUSLY INDICATED.  04:46

1          AGAIN, LEGAL OPINIONS ABOUT TERMS, ABOUT STANDARDS,

2   AND THIS WHOLE LINE OF OPINION ABOUT THE DIFFERENT STANDARDS

3   FOR SOPHISTICATED COMPANIES IS OUT.  BUT I AM NOT GOING TO

4   GRANT A MOTION TO PRECLUDE PRACTICE AND PROCEDURE TESTIMONY.

5          NOW, HAVING SAID THAT, MR. NOLAN, I'M VERY MINDFUL OF        04:46

6   MGA'S CONCERNS ABOUT THIS.  I DON'T HAVE IN FRONT OF ME THE

7   PARTICULAR EVIDENCE THAT YOU'RE REFERRING TO THAT YOU RECEIVED

8   OVER THIS WEEKEND.  YOU ARE PRESERVING, OF COURSE, YOUR ABILITY

9   TO MAKE ANY FOUNDATIONAL OBJECTIONS TO THIS.  I THINK THIS IS

10  SOMETHING THAT WE SHOULD TAKE UP BEFORE WE GET TO IT IN THE        04:46

11  TRIAL.

12          BUT I AM SOMEWHAT CONVINCED BY THE FACT THAT WE'VE

13  ALREADY HAD TESTIMONY IN CONCERNING HONG KONG, AND I WOULD

14  ANTICIPATE THAT THERE'S GOING TO BE MORE EVIDENCE, LIKE I SAY,

15  WITHOUT HAVING ANYTHING PARTICULARLY IN MIND.  BUT TO THE         04:47

16  EXTENT THAT THERE IS EVIDENCE BEFORE THIS JURY CONCERNING THESE

17  HONG KONG PROCEEDINGS OR REPRESENTATIONS OR STATEMENTS OR

18  POSITIONS MADE DURING THE HONG KONG PROCEEDINGS, I THINK IT IS

19  APPROPRIATE EXPERT TESTIMONY TO HAVE AN EXPERT EDUCATE THE JURY

20  AS TO THOSE PROCEDURES AND PRACTICES, AS OPPOSED TO ANY LEGAL      04:47

21  INSTRUCTIONS.

22          TO THE EXTENT THAT THERE'S A NEED FOR A LEGAL

23  INSTRUCTION, EVEN ABOUT THE HONG KONG PROCEEDINGS, THAT IS

24  SOMETHING WHICH IS MORE SUITABLE FOR THIS COURT TO GIVE, AND

25  THE COURT WILL GIVE BOTH SIDES LEAVE TO PROPOSE JURY              04:47

1    INSTRUCTIONS WHICH ADDRESS THESE LEGAL ISSUES.  BUT THERE'S

2    ONLY GOING TO BE ONE SOURCE OF LEGAL INSTRUCTION PROVIDED TO

3    THE JURY, AND THAT IS GOING TO BE THE COURT.

4           SO I THINK ALL OF THESE CONCERNS CAN BE ADDRESSED,

5    BUT I'M NOT GOING TO PRECLUDE, AS A MATTER OF A MOTION          04:48

6    *IN LIMINE*, MR. OMAN'S TESTIMONY ON PRACTICE AND PROCEDURE.

7           **MR. NOLAN:**  YOUR HONOR, WE UNDERSTAND; WE ACCEPT.

8           IN ANTICIPATION OF THE CONTINUING ISSUE THAT MIGHT

9    COME UP DURING THE COURSE OF THE TRIAL WITH RESPECT TO SPECIFIC

10   DOCUMENTS RELATING TO THESE PROCEEDINGS, WE WERE GOING TO ASK   04:48

11   LEAVE TO THE COURT JUST TO SUBMIT A BENCH BRIEF TOMORROW, WHICH

12   I THINK WILL BE LESS THAN TEN PAGES, THAT JUST DISCUSSES THE

13   DOCUMENTS THAT WE KNOW ARE NOW INTENDED TO BE USED BY MATTEL,

14   SO THE COURT WOULD HAVE THAT IN ADVANCE OF ANY SIDE-BARS SO

15   WE'RE NOT BLIND-SIDING ANYBODY WITH RESPECT TO WHAT THE         04:48

16   UNDERLYING ISSUES MIGHT BE ON THOSE PARTICULAR MATTERS, IF

17   THAT'S OKAY.

18          **THE COURT:**  IT MIGHT BE HELPFUL.

19          HOW MANY PAGES?

20          **MR. NOLAN:**  I WAS GOING TO SAY TEN PAGES.           04:49

21          **THE COURT:**  LET'S TRY TO DO IT A LITTLE SHORTER, IF

22   WE CAN; BUT THAT'S FINE.  AND THEN I'LL WANT TO HEAR FROM

23   MATTEL AS WELL.

24          THIS WOULD BE A BRIEF ON THE ISSUE OF THE

25   ADMISSIBILITY OF THESE DOCUMENTS THEMSELVES, AS OPPOSED TO THE  04:49

1  ISSUE OF THE EXPERT TESTIMONY RELATED TO THE HONG KONG

2  PROCEDURES.

3          IS THAT UNDERSTOOD?

4          **MR. NOLAN:**  YES, YOUR HONOR.  THANK YOU.

5          **THE COURT:**  MR. ZELLER?                                    04:49

6          **MR. ZELLER:**  THE DOCUMENTS THAT MR. NOLAN IS

7  REFERRING TO ARE NOT DOCUMENTS THAT WERE PRODUCED BY MATTEL.

8  RATHER, WHAT HE'S REFERRING TO, I BELIEVE, ARE THE EXHIBITS

9  THAT WE IDENTIFIED FOR PHASE 1-B. THOSE DOCUMENTS THEMSELVES

10  ARE MGA'S PLEADINGS.                                            04:49

11          **THE COURT:**  I UNDERSTAND.

12          I MISSPOKE, MR. ZELLER.  I DO UNDERSTAND THAT THEY

13  ARE PRODUCED BY MGA.  YOU HAVE SIMPLY PRODUCED THEM NOW AS

14  PROPOSED EXHIBITS IN THE TRIAL.  THAT WAS MY MISTAKE.

15          I DO THINK THAT THERE IS VALUE TO ADDRESSING THESE UP    04:50

16  FRONT IN TERMS OF THE ADMISSIBILITY OF THE DOCUMENTS, BECAUSE I

17  HAVE IN MIND KIND OF A THEORETICAL FRAMEWORK IN TERMS OF WHAT

18  I'M GOING TO PERMIT IN AND WHAT I'M NOT GOING TO PERMIT IN, BUT

19  IT WOULD BE VERY HELPFUL TO HAVE THE PARTIES' INPUT ON THAT,

20  AND WE'LL DISCUSS THIS FURTHER AT THAT TIME.                    04:50

21          RIGHT NOW, I'M JUST DEALING WITH THE MOTION *IN LIMINE*

22  WITH RESPECT TO MR. OMAN.

23          **MR. NOLAN:**  THANK YOU, YOUR HONOR.  I'M SORRY IF I

24  TOOK US OFF TRACK ON THAT.

25          **MR. QUINN:**  MAY WE FILE SOME TYPE OF A RESPONSE TO    04:50

1    WHATEVER MGA FILES?

2           THE COURT:  I THOUGHT I INDICATED THAT.

3           ABSOLUTELY.  I WOULD INVITE A RESPONSE FROM MGA.  I

4    THINK THAT WOULD BE HELPFUL TO HAVE BOTH PARTIES' POSITIONS ON

5    THAT.  ABSOLUTELY.                                          04:50

6           MR. QUINN:  I'M SORRY, YOUR HONOR.  I DIDN'T HEAR

7    THAT.

8           MR. ZELLER:  IS IT POSSIBLE FOR US TO GET THIS BRIEF

9    TODAY?

10          AND PART OF THE REASON WHY I'M A LITTLE CONCERNED IS   04:51

11   THAT WE'LL BE DOING OPENINGS ON WEDNESDAY.  IT MAY BE WE'RE

12   GOING TO BE RIGHT INTO THOSE ISSUES WEDNESDAY AFTER THE

13   CLOSING, BECAUSE WE WOULD ANTICIPATE CURRENTLY -- AND I KNOW

14   WE'RE WORKING OUT PEOPLE'S SCHEDULES, BUT WE WOULD ANTICIPATE

15   SOME OF THOSE WILL BE THE EARLIER WITNESSES WE WERE GOING TO   04:51

16   CALL.

17          THE COURT:  VERY GOOD.

18          I TRUST, MR. NOLAN, YOU CAN GET THIS DONE SOONER AS

19   OPPOSED TO LATER?

20          MR. NOLAN:  YES, YOUR HONOR.  IN FACT, WE'RE WORKING   04:51

21   ON IT RIGHT NOW.  I COULD COMMIT TO DELIVER THIS BY NOON

22   TOMORROW TO THEM, YOUR HONOR.  WE'LL WORK AROUND THE CLOCK TO

23   GET THIS DONE TONIGHT.

24          THE COURT:  VERY WELL.

25          SINCE THE COURT IS GOING TO BE IN TRANSIT TOMORROW,   04:51

1   IF YOU COULD GET IT IN BY NOON TOMORROW, AND IF MATTEL CAN GET

2   ME SOMETHING BY THE END OF THE DAY.  WHY DON'T YOU FAX YOUR

3   RESPONSE TO CHAMBERS AT 951-328-4418, AND I WILL HAVE THAT

4   FIRST THING WEDNESDAY MORNING, AND WE'LL TAKE THIS UP IN

5   ADVANCE OF THE JUROR ISSUE AT 8:00.                          04:52

6           MR. QUINN:  VERY WELL, YOUR HONOR.

7           THE COURT:  NOT A WHOLE LOT OF TIME, BUT...

8           MR. QUINN:  WE'LL WORK WITH IT, YOUR HONOR.

9           THE COURT:  THANK YOU, MR. QUINN.

10          MGA'S MOTION NUMBER TEN, REGARDING CAROL SCOTT.        04:52

11          WE REALLY DIDN'T GET INTO THIS IN THE MOTIONS FOR

12   PARTIAL SUMMARY JUDGMENT VERY MUCH.  LET ME ASK BOTH PARTIES'

13   POSITION ON THIS.

14          HOW DO THE PARTIES INTEND TO PROCEED ON THE ISSUE OF

15   WHETHER ANY OF THE BRATZ MERCHANDISE -- AND I'M USING THAT     04:52

16   PHRASE AS BROADLY AS IT CAN BE USED RIGHT NOW -- BRATZ-RELATED

17   MERCHANDISE IS DERIVATIVE OF THE BRATZ DOLLS?

18          ANYBODY?  MATTEL?  MGA?  SOMEBODY?

19          MR. COREY:  MATTEL IS PROCEEDING WITH RESPECT TO MUCH

20   OF THE MERCHANDISE ON TWO THEORIES.  ONE IS THAT IT IS A       04:53

21   DERIVATIVE WORK -- OR ACTUALLY, IT DIRECTLY INFRINGES TO THE

22   EXTENT THAT THE MERCHANDISE HAS THE IMAGES FROM THE PROTECTED

23   WORKS ON THEM, AND THEN SEPARATELY ON THE THEORY THAT -- NOT

24   THAT THEY ARE DERIVATIVE WORKS, BUT THEY ARE INDIRECT -- THAT

25   MATTEL IS ENTITLED TO INDIRECT PROFITS BECAUSE THE PROFITS FROM  04:53

1    THAT MERCHANDISE WOULD NOT HAVE BEEN GENERATED BUT FOR THE

2    INFRINGEMENT, AND IT'S DIRECTLY CAUSED BY THE INFRINGEMENT.

3              THE COURT:  I UNDERSTAND THAT.  I UNDERSTAND THAT

4    POSITION, THE INDIRECT CAUSATION ISSUE, AND I ALSO UNDERSTAND

5    THE DIRECT INFRINGEMENT.  BUT IN SOME OF YOUR BRIEFS THAT I          04:54

6    WENT THROUGH, AT VARIOUS PARAGRAPHS, YOU MADE REFERENCE TO THE

7    DERIVATIVE NATURE OF SOME OF THIS COPYRIGHTED MATERIAL, BUT IT

8    IS NOT AN ISSUE WHICH YOU HAVE BRIEFED IN DEPTH.  I GUESS I

9    JUST WANT TO -- WHAT AM I MISSING HERE?

10             MR. COREY:  I'M NOT SURE THAT THE COURT IS MISSING          04:54

11   ANYTHING.  I THINK THAT I'VE ARTICULATED THE THEORIES THAT WE

12   HAVE WITH RESPECT TO THE MERCHANDISE.

13             THE COURT:  VERY WELL.

14             MR. ROTH:  WE UNDERSTAND THAT THERE HAVE BEEN

15   REFERENCES BY MATTEL IN THEIR PAPERS TO PROCEEDING WITH RESPECT      04:54

16   TO SOME OF THE BRATZ-BRANDED MERCHANDISE ON AN INFRINGEMENT

17   THEORY.  WE ALSO UNDERSTAND THAT VARIOUS EXPERTS FROM BOTH

18   SIDES HAVE ADDRESSED THOSE ISSUES.

19             CAROL SCOTT WAS OFFERED UP AS AN EXPERT TO THE EXTENT

20   THAT MATTEL WAS SEEKING PROFITS ON AN INDIRECT PROFITS THEORY,      04:55

21   AND THAT WAS THE FRAMEWORK WITHIN WHICH WE ADDRESSED THIS

22   MOTION *IN LIMINE*.

23             THE COURT:  I UNDERSTAND THAT.

24             YOU'RE NOT TAKING THE POSITION WITH RESPECT TO THESE

25   WORKS BEING THE DERIVATIVE YOURSELF; IS THAT CORRECT?              04:55

1     **MR. ROTH:**  NO, YOUR HONOR, WE'RE NOT.

2         **THE COURT:**  VERY WELL.

3         **MR. QUINN:**  YOUR HONOR, IF I MAY.

4         JUST TO ALERT THE COURT, SINCE WE'RE ON THIS SUBJECT,

5     IN TERMS OF THE NUMBER OF BRATZ PRODUCTS THAT ARE AT ISSUE,          04:55

6     WE'RE PROBABLY TALKING ABOUT SOMETHING CLOSE TO 900 SEPARATE

7     PRODUCTS, DOLLS; SOME OF THEM -- MANY OF THEM ARE THE VERY SAME

8     DOLLS WHICH WILL BE REISSUED, IF YOU WILL, WITH DIFFERENT

9     THEMES OVER TIME.  SOME OF THEM ARE NOT DOLLS; THEY ARE IN THE

10    NATURE OF BRATZ-BRANDED MERCHANDISE, WHICH WE BELIEVE FALLS         04:56

11    UNDER THE INDIRECT PROFITS THEORY.

12        BUT WE ARE FACING A PROSPECT -- AND I JUST WANTED TO

13    ALERT THE COURT TO THIS -- OF DEALING WITH A VERY, VERY LARGE

14    NUMBER OF SEPARATE OBJECTS.  WE HAVE EXPLORED WITH MGA VARIOUS

15    WAYS BY WHICH THIS MIGHT BE STREAMLINED; FOR EXAMPLE,               04:56

16    STIPULATING THAT, SAY, A SASHA DOLL -- THAT WE DON'T NEED TO

17    INTRODUCE EVERY SINGLE SCENARIO -- SUN AND SAND SASHA,

18    WINTERTIME SASHA, HALLOWEEN SASHA, -- EVERY SINGLE PRODUCT;

19    THAT MAYBE WE COULD DEAL WITH ALL SASHAS AS A BATCH; OR WE

20    COULD DEAL WITH PHOTOGRAPHS OF ALL OF THE PRODUCTS.                 04:56

21        MGA DOES NOT BELIEVE THAT EITHER OF THOSE APPROACHES

22    ARE APPROPRIATE.  SO WE HAVE GIVEN MGA NOTICE THAT WE NEED

23    ORIGINAL EXEMPLARS OF ALL 800 PRODUCTS BROUGHT TO COURT, ALONG

24    WITH A DOCUMENT CUSTODIAN ON FRIDAY WHO WILL BE IN A POSITION

25    TO AUTHENTICATE ALL OF THESE DOCUMENTS.                             04:57

```
 1          WE DON'T KNOW WHAT THIS IS GOING TO LOOK LIKE WHEN

 2   IT'S ACTUALLY BOXED UP AND BROUGHT TO COURT.  IT COULD WELL BE

 3   THAT WE'RE TALKING ABOUT A COUPLE OF HUNDRED BANKER'S BOXES.

 4   BUT GIVEN THE POSITION, AS I UNDERSTAND IT, OF MGA THAT WE

 5   REALLY NEED TO DEAL ONLY WITH ACTUAL ORIGINAL MERCHANDISE AND     04:57

 6   THAT THEY CAN'T BE DEALT WITH IN ANY BATCH BASIS, WE DON'T

 7   REALLY HAVE ANOTHER IDEA ABOUT HOW TO PROCEED.

 8          MS. AGUIAR:  AS YOUR HONOR, I'M SURE, CAN APPRECIATE,

 9   MATTEL IS SEEKING, POTENTIALLY, HUNDREDS OF MILLIONS OF DOLLARS

10   IN DISGORGEMENT OF MGA'S PROFITS.                                 04:58

11          THE COURT:  RIGHT.

12          MS. AGUIAR:  OVER THE YEARS, BETWEEN 2001 AND THE

13   PRESENT, MGA HAS SEPARATELY AND INDEPENDENTLY CREATED AND

14   DEVELOPED HUNDREDS OF DIFFERENT DOLLS, AND EVERY TIME A NEW

15   DOLL IS ISSUED, THAT DOLL HAS NEW FASHIONS, NEW FACE PAINT, NEW   04:58

16   ACCESSORIES, NEW HAIR, A TOTALLY DIFFERENT THEME.

17          THERE ARE NO SHORTCUTS TO SEEKING HUNDREDS OF

18   MILLIONS OF DOLLARS IN DISGORGEMENT OF PROFITS BASED ON -- THEY

19   ARE TOTALLY DIFFERENT DOLLS.

20          THE COURT:  I LIKE THAT LINE, 'THERE'S NO SHORTCUTS        04:58

21   TO...'  THAT'S A GOOD LINE.  YOU'RE RIGHT.

22          MS. AGUIAR:  MR. NOLAN IS OVER HERE POINTING TO

23   HIMSELF, BECAUSE IT REALLY WAS HIS LINE.

24          THE COURT:  FAIR ENOUGH.

25          MS. AGUIAR:  SO I WANT TO GIVE CREDIT WHERE IT'S DUE.      04:58
```

1          BUT VERY SERIOUSLY, THOUGH, BECAUSE WE ARE VERY

2     SERIOUS ABOUT THESE DOLLS, THESE DOLLS WERE CREATED BY MGA, AND

3     FOR MR. QUINN TO SUGGEST THAT WE DO SASHA AS A BATCH, FRANKLY,

4     IS QUITE SILLY.

5          IT IS PART OF OUR DEFENSE OF APPORTIONMENT AND                04:59

6     DEVELOPMENT AND INDEPENDENT CREATIVITY THAT EACH ONE OF THESE

7     DOLLS IS DIFFERENT.  I APPRECIATE THE FACT THAT IT'S GOING TO

8     BE A LOT OF DOLLS.  BUT YOU KNOW WHAT?  THEY ARE SEEKING A LOT

9     OF DAMAGES.

10         SO WE'RE GOING TO HAVE THOSE TANGIBLE OBJECTS READY;        04:59

11    WE WILL HAVE A CUSTODIAN THERE; WE WILL HAVE ALL OF THEM IN

12    COURT; AND WE WILL DO WHATEVER WE CAN TO EASE THE BURDEN ON THE

13    JURY AND ON THE COURT BY ORGANIZING IT IN THE BEST WAY THAT WE

14    CAN.

15         **MR. QUINN:**  WE DON'T EXPECT A SHORTCUT TO REACH THE       04:59

16    VERDICT HERE, AND THAT'S NOT REALLY WHAT WE'RE ASKING FOR.

17         BUT TO, ONE BY ONE, PUT BEFORE A DOCUMENT CUSTODIAN,

18    JUST TO AUTHENTICATE PRODUCTS WHICH MGA AGREES ARE AUTHENTIC,

19    THAT REALLY SHOULD NOT COME OUT OF OUR REMAINING TEN HOURS, OR

20    WHATEVER IT IS.  THAT SHOULD BE CHARGED TO MGA.                   05:00

21         **THE COURT:**  MR. QUINN, I UNDERSTAND YOUR CONCERN

22    HERE.  IN TERMS OF AUTHENTICATING THE DOCUMENTS AND ENTERING

23    THEM INTO EVIDENCE, I WOULD IMAGINE THAT ONCE WE PHYSICALLY --

24    ASSUMING THAT THE COURT CAN ACCOMMODATE ALL OF THESE -- AND I

25    ASSUME THESE ARE ALL RELATIVELY SMALL -- THE MERCHANDISE HERE     05:00

1   IS SMALL; CORRECT?

2          MR. QUINN:  THEY ARE SMALL, BUT THEY'RE PROBABLY

3   PACKAGED.  ACTUALLY, THE PACKAGES ARE PROBABLY LARGER THAN THE

4   OBJECTS.

5          THE COURT:  I WILL LEAVE IT UP TO MATTEL TO TRY TO          05:00

6   WORK OUT A WAY TO PRODUCE THIS IN AN EFFICIENT MANNER, AND

7   WE'LL GO FROM THERE.

8          EVERYONE IS RESERVING THEIR OBJECTIONS ON THIS, BUT

9   THE COURT WILL CERTAINLY ALSO RESERVE ITS RIGHT TO MANAGE THE

10  TRIAL.  WE'LL SEE HOW THIS PLAYS OUT.                             05:01

11         MR. QUINN:  YOUR HONOR, WE WOULD REQUEST -- AND TO

12  THAT END, TO TRY TO DO THIS IN THE MOST EFFICIENT MANNER, WE

13  WOULD REQUEST THAT WE HAVE THE ABILITY TO -- EITHER MGA DOES IT

14  OR WE DO IT OR WE DO IT TOGETHER -- THAT THESE 800-ODD PRODUCTS

15  BE EXHIBIT NUMBERED IN ADVANCE AND THAT WHOEVER THE DOCUMENT     05:01

16  CUSTODIAN IS WILL BE PREPARED TO TAKE THE STAND AND SAY THAT

17  ALL OF THOSE PRODUCTS ARE MGA PRODUCTS, THAT THEY DO NOT HAVE

18  TO BE INDIVIDUALLY EXAMINED.  TO ME, THAT WOULD JUST BE

19  FARCICAL.

20         THE COURT:  WE'LL PROCEED AS REQUIRED BY THE RULES OF     05:01

21  EVIDENCE.  THE COURT RETAINS FOR ITSELF THE RIGHT, OF COURSE,

22  TO ADJUST TIME IF I BELIEVE THAT THERE'S SOME -- YOU SEEM TO ME

23  TO BE EXPRESSING A CONCERN THAT SOMEHOW YOUR REMAINING TIME IS

24  GOING TO HAVE TO BE TAKEN UP BY INTRODUCING THESE DOCUMENTS,

25  AND THAT'S NOT THE CASE -- NOT DOCUMENTS, BUT THE MERCHANDISE.   05:02

```
 1    THE COURT WILL MAKE ADJUSTMENTS AS IT DEEMS ARE FAIR.

 2          LET'S GET BACK TO THE ISSUE ITSELF ON CAROL SCOTT AND

 3    THE MOTION IN LIMINE.  THIS IS MGA'S MOTION IN LIMINE NUMBER

 4    TEN.  THIS IS WHERE I AM WITH CAROL SCOTT:  THIS IS ANOTHER

 5    GRANT IN PART AND DENY IN PART.  I BELIEVE THERE ARE THINGS          05:02

 6    THAT SHE IS VERY WELL QUALIFIED TO TESTIFY ABOUT, AND I BELIEVE

 7    THERE ARE OTHER THINGS THAT SHE IS NOT WELL QUALIFIED TO

 8    TESTIFY ABOUT.  IT'S NOT AN ALL OR NOTHING THING.

 9          I BELIEVE HER TESTIMONY REGARDING BRAND BUILDING,

10    WHICH GOES TO ESTABLISHING THAT INFRINGEMENT WAS A SUBSTANTIAL        05:02

11    FACTOR, HER TESTIMONY ON FOLLOW-ON PRODUCTS AND THE NATURE OF

12    HOW THAT PLAYS OUT IN THE INDUSTRY, BASED ON HER EXPERTISE, I

13    THINK SHE'S ON FIRM GROUND TESTIFYING THERE.

14          WHEN IT GETS TO HER TESTIMONY CONCERNING THE

15    CONCLUSION THAT ACCESSORIES AND NON-DOLL BRATZ PRODUCTS WOULD        05:03

16    NOT SELL IF THE BRATZ DOLLS WOULD NOT SELL, WHEN SHE GETS INTO

17    PARTICULAR TESTIMONY ABOUT THE BRATZ LINE, THAT'S WHERE I HAVE

18    SERIOUS CONCERNS ABOUT HER ABILITY TO TESTIFY, BASED ON MY

19    REVIEW OF THE EXPERT REPORTS.

20          AT ONE POINT IN TIME, MATTEL DESCRIBES THAT              05:03

21    CONCLUSION, QUITE FRANKLY, AS SELF-EVIDENT, AND I SUPPOSE THAT

22    HAS A CERTAIN LOGICAL APPEAL TO IT.  I MEAN, IF THE DOLL LINE

23    ITSELF DOES NOT SELL, THEN THE ACCESSORIES GO NOWHERE.  I DON'T

24    THINK THAT'S A PARTICULARLY NOVEL OR DIFFICULT-TO-UNDERSTAND

25    POINT THAT NECESSARILY REQUIRES EXPERT TESTIMONY.              05:03
```

1          BUT BE THAT AS IT MAY, I DO HAVE SERIOUS CONCERNS

2   ABOUT HER UNDERSTANDING OF THE BRATZ PRODUCTS, THE

3   BRATZ-RELATED PRODUCTS, FOR HER TO TESTIFY AS TO SPECIFICS

4   ABOUT THAT.   BUT I DO BELIEVE THAT HER TESTIMONY REGARDING

5   BRAND BUILDING IN GENERAL IS WELL FOUNDED, AND IT'S ALONG THOSE          05:04

6   LINES THAT I INTEND -- MY TENTATIVE IS TO GRANT IN PART AND

7   DENY IN PART THIS MOTION *IN LIMINE.*

8          I'LL HEAR FROM THE PARTIES.

9          **MR. ROTH:**  YOUR HONOR, WE UNDERSTAND YOUR OPINION,

10  AND, IN FACT, WE WOULD AGREE THAT MUCH OF WHAT CAROL SCOTT HAS          05:04

11  TO SAY ABOUT THE GENERAL SUBJECT OF BRAND BUILDING OUGHT TO

12  COME IN.   FRANKLY, IT'S QUITE SUPPORTIVE OF OUR CASE, AND WE'RE

13  HAPPY TO HAVE IT COME IN, GIVEN WHAT SHE HAS TO SAY ABOUT THE

14  BRATZ BRAND.

15         OUR CRITICISM WAS DIRECTED AT HER ATTEMPT TO --          05:04

16  REALLY, ANY INVESTIGATION AT ALL TO MAKE STATEMENTS BASED UPON

17  A CAUSAL RELATIONSHIP BETWEEN THE DOLLS, AND IN PARTICULAR,

18  BRANDED MERCHANDISE.   SO, YOUR HONOR, I'M PREPARED TO ANSWER

19  ANY QUESTIONS, BUT WE ACCEPT THAT DECISION.

20         **THE COURT:**  FROM MATTEL?          05:05

21         **MR. COREY:**  ONE QUESTION IN CLARIFICATION.

22         I THINK, UNDER THE MACKIE CASE, THE THRESHOLD FOR

23  SHOWING CAUSATION HERE IS FAIRLY LOW, AND I UNDERSTAND THAT

24  MS. SCOTT WILL BE ALLOWED TO TESTIFY ABOUT BRAND BUILDING

25  GENERALLY, AND I TRUST THERE IS NOT A PROBLEM HAVING HER          05:05

1   TESTIFY GENERALLY THAT MGA FOLLOWED SOME BRAND-BUILDING

2   ACTIVITIES, BECAUSE I DO THINK THAT SHE'S COMPETENT TO TESTIFY

3   ABOUT THAT.

4             **THE COURT:**  WOULD YOU REPEAT YOUR LAST LINE.

5             **MR. COREY:**  JUST A QUESTION OF CLARIFICATION.          05:06

6        UNDER THE MACKIE CASE, THERE'S A FAIRLY LOW THRESHOLD

7   FOR CAUSATION, BUT THE QUESTION IS, WOULD MS. SCOTT BE

8   PERMITTED TO TESTIFY THAT MGA, WITH RESPECT TO THE BRATZ

9   PRODUCT, DID FOLLOW SOME BRAND-BUILDING ACTIVITIES AND THEY DID

10  WORK TO BUILD THE BRAND?                                          05:06

11            **THE COURT:**  WELL, I GUESS I GET BACK TO THE

12  COMMENT -- I DON'T KNOW WHO WROTE THE BRIEF -- FROM MATTEL'S

13  PERSPECTIVE -- AM I MISSING SOMETHING HERE?  ISN'T IT

14  SELF-EVIDENT THAT THE BRATZ-RELATED PRODUCTS WERE BUILT UPON

15  THE BRATZ DOLL AND THAT THE SUCCESS OF THE BRATZ DOLL PAVED THE   05:06

16  WAY FOR THE SUCCESS OF THE BRATZ-RELATED PRODUCTS?

17       I CAN'T IMAGINE THE JURY IS NOT -- THAT SEEMS VERY

18  SELF-EVIDENT.  I'M NOT SEEING WHAT IT IS THAT YOU WANT HER TO

19  TESTIFY TO ON THAT POINT THAT REALLY REQUIRES EXPERT TESTIMONY.

20  SHE CAN LAY OUT HER WHOLE BRAND-BUILDING THEORY, AND EXPLAIN IN   05:07

21  TERMS OF HOW THIS GOES, BUT AS MR. ROTH MADE REFERENCE TO, SHE

22  REALLY DID NOT EXPEND A LOT OF TIME INVESTING IN AND BECOMING

23  KNOWLEDGEABLE ABOUT MGA, THE BRATZ LINE, AND HOW THAT

24  PARTICULAR LINE PLAYED OUT.  SO I DON'T KNOW WHAT BASIS THAT

25  SHE HAS TO TESTIFY ON THAT, PUTTING ASIDE WHETHER THERE'S A       05:07

1   NEED FOR IT.  BUT ASSUMING THERE'S A NEED FOR IT, I DON'T SEE A

2   BASIS FOR IT.

3        MR. COREY:  I UNDERSTAND.  THE BASIS FOR IT IS THAT

4   MGA IS DISPUTING THAT IS SELF-EVIDENT, I BELIEVE, YOUR HONOR.

5        THE COURT:  VERY WELL.                                    05:07

6        MR. ROTH:  WE WOULD ACCEPT YOUR HONOR'S DECISION THAT

7   SHE MAY TESTIFY ABOUT GENERAL MATTERS ABOUT BRAND BUILDING,

8   INCLUDING ABOUT THE STRENGTH OF THE BRATZ BRAND, WHICH SHE

9   IDENTIFIED IN HER DEPOSITION AS BEING QUITE STRONG.  WE'LL

10  WELCOME THAT TESTIMONY.                                        05:08

11       THE COURT:  WE'RE NOT GOING TO PICK AND CHOOSE.  I'M

12  SAYING THAT SHE'S NOT GOING TO BE TESTIFYING ABOUT BRATZ.  I

13  DON'T THINK THERE'S A BASIS FOR HER TO DO THAT.  WE'RE NOT

14  GOING TO PICK AND CHOOSE.  I'M SAYING THAT HER TESTIMONY

15  REGARDING BRAND BUILDING IN GENERAL -- FROM WHAT I'M READING,  05:08

16  SHE'S THIS BRILLIANT PROFESSOR FROM UCLA.  SHE CAN TALK ABOUT

17  BRAND BUILDING.  BUT SHE DID NOT, FROM THE COURT'S PERSPECTIVE,

18  DO HER HOMEWORK ON BRATZ.  NEITHER SIDE IS GOING TO GET INTO

19  BRATZ WITH MS. SCOTT, IS WHERE THIS IS GOING.

20       MR. ROTH:  I UNDERSTAND THE REFINEMENT YOU MAKE TO        05:08

21  WHAT I WAS SAYING, AND I'LL CERTAINLY ACCEPT THAT DECISION.

22       THE COURT:  VERY WELL.

23       ANY QUESTIONS FROM MATTEL ON THIS?

24       MR. COREY:  NO, YOUR HONOR.

25       THE COURT:  MGA NUMBER 12, MR. LOETZ.                     05:09

5259

1          I'M GOING TO DENY THE MOTION TO PRECLUDE MR. LOETZ.

2    THERE ARE A NUMBER OF NULLIFYING OBJECTIONS, BUT I THINK ALL OF

3    THOSE GO TO THE WEIGHT OF THE TESTIMONY.  I GUESS, ON THE BEAR

4    VERSUS HUMAN ISSUE, I TEND TO THINK THE DOLLS ARE MORE LIKE

5    BEARS THAN THEY ARE LIKE HUMANS; SO ON THE CLOTHES, I DON'T SEE          05:09

6    THE FUNCTIONAL UTILITY, SO I THINK MR. LOETZ IS ON FIRM GROUND

7    ON HIS ANALYSIS, SUBJECT, OF COURSE, TO THE OBJECTIONS THAT MGA

8    IS MAKING.  I THINK THAT'S ALL FAIR GAME FOR CROSS-EXAMINATION.

9          ANY QUESTIONS ON THAT FROM EITHER SIDE?

10          **MS. AGUIAR:**  YOUR HONOR, WHAT I WOULD SAY IS THAT          05:10

11   WE'VE MADE A MOTION -- OUR MOTION IS NOT TO EXCLUDE HIM IN HIS

12   ENTIRETY, BUT WE DO HAVE THE MOTION THAT GOES TO WHETHER OR NOT

13   MR. LOETZ CAN EXPRESS AN OPINION REGARDING ANYTHING BEYOND THE

14   FIRST GENERATION OF DOLLS.

15          IT SOUNDS LIKE YOU ABSOLUTELY HAVE READ HIS REPORT.          05:10

16   AND IF YOU LOOK AT THE EXHIBITS TO HIS REPORT, THEY ARE ALL

17   CONCERNING THE FIRST GENERATION DOLLS.  IF YOU LOOK AT HIS

18   CONCLUSIONS IN HIS REPORT, WHICH ARE ON PAGES 2 AND 9, THE

19   FUNDAMENTAL CONCLUSIONS IN HIS REPORT CONCERN THE FIRST WAVE OF

20   BRATZ DOLLS.          05:10

21          WE HAVE NO PROBLEM -- I SHOULDN'T SAY WE HAVE NO

22   PROBLEM -- WE UNDERSTAND THAT HE HAS EXPRESSED OPINIONS

23   REGARDING THE FIRST GENERATION OF BRATZ DOLLS, AND WE WILL

24   CROSS HIM ON THAT.

25          **THE COURT:**  RIGHT.          05:10

1    **MS. AGUIAR:**  BUT WE ATTEMPTED TO ASK HIM A NUMBER OF

2    QUESTIONS AT HIS DEPOSITION REGARDING THE LATER GENERATION OF

3    DOLLS, AND HE WAS UNABLE TO EXPRESS AN OPINION REGARDING THOSE

4    DOLLS AS COMPARED TO THE DRAWINGS.

5    **THE COURT:**  I ASSUME THAT WILL PLAY OUT THE SAME WAY          05:11

6    IN THE TRIAL AS IT DID IN THE DEPOSITION.  IF HE HAS NO BASIS,

7    THERE'S NOT GOING TO BE ANY OPINION ON IT.

8    **MS. AGUIAR:**  OKAY.

9    **THE COURT:**  THAT'S WHAT I MEANT BY YOUR OBJECTIONS GO

10   TO THE WEIGHT AND SCOPE AND BREADTH OF HIS TESTIMONY.  INSTEAD   05:11

11   OF DEALING WITH THIS AS A MOTION TO PRECLUDE, I'M GOING TO

12   PERMIT YOU TO MAKE YOUR OBJECTIONS AND SEE HOW THIS PLAYS OUT

13   AT TRIAL.

14   **MS. AGUIAR:**  SO AS LONG AS WE MADE OUR POSITION CLEAR

15   THAT HE SHOULD NOT BE ABLE TO TESTIFY AND GIVE AN OPINION        05:11

16   REGARDING THE COMPARISON BETWEEN LATER GENERATION DOLLS AND THE

17   DRAWINGS, THEN I UNDERSTAND AND WE ACCEPT THAT.

18   **THE COURT:**  WITHOUT ADEQUATE FOUNDATION.

19   **MR. NOLAN:**  JUST A QUICK FOLLOW-UP ON THAT.

20   I THINK I HAD MORE DISCUSSIONS ABOUT NAKED BEARS FOR            05:12

21   MGA.

22   DO I UNDERSTAND FROM THE COURT THAT THE COURT IS

23   GOING TO ALLOW MR. LOETZ TO EXPRESS AN OPINION WITH RESPECT TO

24   THE COPYRIGHTABILITY OR THE PROTECTION AFFORDED IN THE FASHIONS

25   DEPICTED IN CARTER BRYANT'S DRAWINGS?                           05:12

1      **THE COURT:**  AGAIN, I'M NOT ALLOWING ANYONE TO OFFER

2   LEGAL OPINIONS ABOUT COPYRIGHTABILITY.  THAT'S A LEGAL OPINION

3   THAT NOBODY IS GOING TO GIVE IN THIS PHASE OF THE TRIAL.

4      HE'S GOING TO BE PERMITTED TO EXAMINE ELEMENTS THAT I

5   BELIEVE DO GO TO WITHIN THE SCOPE OF COPYRIGHTABILITY, AS I        05:1?

6   DESCRIBED IT AT THE BEGINNING OF THIS HEARING.

7      **MR. NOLAN:**  SO THAT I UNDERSTAND IT, WE'RE NOT TAKING

8   FROM THIS RULING, THEN, THE COURT HAS MADE A DETERMINATION THAT

9   FASHIONS, PER SE, ARE SUBJECT TO COPYRIGHT PROTECTIONS?

10      **THE COURT:**  I GUESS THAT WAS THE POINT OF MY COMMENT.        05:1?

11  I AM FAIRLY CONVINCED THAT ON A DOLL, A PARTICULAR FASHION, A

12  PARTICULAR ATTITUDE OR A LOOK, IS COPYRIGHTABLE.  I'LL FLUSH

13  THIS OUT A LITTLE BIT MORE IN THE SCOPE OF COPYRIGHTABILITY.

14  THESE VARIOUS ELEMENTS ARE PART OF WHAT IS BEING COPYRIGHTED,

15  IF THAT MAKES SENSE.                                                05:1?

16      **MR. NOLAN:**  I THINK THAT DOES GIVE A LITTLE GUIDANCE.

17      **THE COURT:**  WHAT I'M NOT GOING TO PERMIT IS THE GOING

18  DOWN FROM A CLOTHES AND UTILITY FUNCTIONS; SO THEY'RE NOT

19  COPYRIGHTABLE.  HAIR, EVERYONE'S GOT HAIR, SO THAT'S NOT

20  COPYRIGHTABLE; AND THROUGH AN ANALYSIS BASICALLY ELIMINATE         05:14

21  EVERYTHING AND THERE'S NOTHING LEFT.  I THINK QUITE THE

22  CONTRARY.  I FIND THE ANALYSIS WITH RESPECT TO TEDDY BEARS AND

23  CLOTHES ON TEDDY BEARS TO BE VERY SIMILAR TO THE ANALYSIS OF

24  CLOTHES ON A FASHION DOLL.  THAT'S PART OF, I SUPPOSE,

25  INTRINSICALLY SPEAKING, WHAT MAKES UP THE WORK THAT IS            05:14

1    COPYRIGHTED.

2         MR. NOLAN:   YOUR HONOR, WOULD THE COURT, IN LIGHT OF

3    THAT, THEN -- LET'S ASSUME, THEN, THAT WE WOULD BE ABLE TO

4    EXPLORE WITH A MATTEL WITNESS THE FACT THAT, NOTWITHSTANDING

5    SELLING BARBIE DOLLS FOR OVER 40 YEARS, MATTEL HAS NEVER          05:14

6    COPYRIGHTED A FASHION OUTFIT.

7         THE COURT:   I CAN JUMP FORWARD AND TELL YOU MY RULING

8    ON TESTIMONY REGARDING BARBIE.  AND MY INTENTION AT THIS POINT,

9    OR MY TENTATIVE AT THIS POINT, IS TO GRANT THAT MOTION

10   IN LIMINE IN ITS ENTIRETY, THAT WE'RE NOT GETTING INTO BARBIE.   05:15

11   YOUR EXAMPLE, YOUR SUGGESTION RIGHT NOW, IS YET JUST ANOTHER

12   EXAMPLE.  I DON'T THINK WHAT MATTEL DID OR DID NOT DO WITH

13   BARBIE IS RELEVANT TO THIS TRIAL.

14        MR. NOLAN:   FINE, YOUR HONOR.  I ACCEPT THAT.

15        THE COURT:   WITH ONE CAVEAT -- AND I'M GETTING AHEAD       05:15

16   OF MYSELF A LITTLE BIT -- BECAUSE THERE ARE CERTAIN AFFIRMATIVE

17   DEFENSES THAT I COULD SEE THAT IT MIGHT BE RELEVANT TO; BUT I

18   HAVE A WAY OF DEALING WITH THAT WHEN I GET TO MY DISCUSSION ON

19   AFFIRMATIVE DEFENSES.  SO IT'S NOT A CATEGORICAL --

20        LET ME GO BACK TO MY RULING ON THIS PARTICULAR MOTION      05:15

21   IN LIMINE.  THAT IS DENIED WITH RESPECT TO MR. LOETZ.  HE GOES

22   FORWARD.

23        MOVING ON TO MATTEL'S MOTIONS NOW.

24        MATTEL MOTION IN LIMINE NUMBER TEN, WITH RESPECT TO

25   MR. VILPPU, THIS IS ANOTHER TOUGH ONE.  MY TENTATIVE IS TO      05:15

1    GRANT IN PART AND DENY IN PART THIS MOTION.  I SUPPOSE IT'S

2    EASIER FOR ME TO CLEARLY DELINEATE WHAT OPINIONS OF MR. VILPPU

3    ARE NOT GOING TO BE PERMITTED.  THOSE ARE THESE:  FIRST OF ALL,

4    TESTIMONY OR OPINION AS TO WHAT ELEMENTS IN THE SKETCHES

5    DESERVE COPYRIGHT PROTECTION.                                05:16

6          AGAIN, I'M NOT GOING TO HAVE ANY EXPERT ON EITHER

7    SIDE DESCRIBE FOR THE JURY WHAT IS AND WHAT IS NOT ENTITLED TO

8    COPYRIGHT PROTECTION.

9          WHAT INSPIRED CARTER BRYANT?

10         THE JURY HAS ALREADY, IN LARGE MEASURE, DECIDED WHEN    05:16

11   CARTER BRYANT WAS INSPIRED TO DO THESE DRAWINGS.  WHAT OTHER

12   MATERIALS MAY OR MAY NOT HAVE INSPIRED CARTER BRYANT ARE NOT

13   RELEVANT.  AND THEN THE INDUSTRY PRACTICES REGARDING

14   MOONLIGHTING IN THE TOY INDUSTRY, WE'VE CROSSED THAT BRIDGE

15   ALREADY; SO THOSE ARE AREAS THAT MR. VILPPU WILL NOT BE       05:17

16   TESTIFYING TO.

17         THESE CASES ON WHETHER QUALITATIVE DIFFERENCES CAN BE

18   TESTIFIED TO IN LIGHT OF JUDGE LEARNED HAND'S OFT-QUOTED

19   STATEMENT IS NOT CLEAR CUT.  AND THIS MAY BE ONE OTHER AREA

20   WHERE THE COURT DECIDES TO ELABORATE IN A WRITTEN OPINION.  BUT  05:17

21   TO A LARGE EXTENT, IN CONTEXT, QUALITATIVE DIFFERENCES CAN BE

22   VIEWED AS THE FLIP SIDE OF QUALITATIVE SIMILARITIES.  I THINK

23   IT'S VERY DIFFICULT TO SAY THAT IN CONDUCTING AN ASSESSMENT OF

24   QUALITATIVE SIMILARITIES, A FACTFINDER, SUCH AS A JURY, SHOULD

25   JUST BE PRECLUDED FROM HAVING EVIDENCE OF QUALITATIVE         05:17

1    DIFFERENCES.

2         HAVING SAID THAT, I GUESS ONE OF THE BIGGEST PROBLEMS

3    THAT I HAVE WITH MR. VILPPU'S REPORT IS THAT ITS ENTIRE FOCUS

4    IS ON DIFFERENCES.  BUT I SUPPOSE THE BEST WAY TO DEAL WITH

5    THIS IS TO PERMIT THE REPORT, TO LET THE EXPERT TO GO FORWARD      05:18

6    AND BE SUBJECTED TO CROSS-EXAMINATION.  I HAVE SOME SERIOUS

7    RESERVATIONS ABOUT THIS.  THIS DOES NOT ARISE, AT LEAST FROM MY

8    READING OF THE REPORT, TO THE CONCERN I HAVE THAT I DEVELOPED

9    WITH MR. TONNER, WHERE I FELT THAT THE EXPERT WAS SIMPLY

10   SHIFTING HIS TESTIMONY TO ACCOMMODATE A PARTICULAR POINT OF        05:18

11   VIEW.

12        THAT'S NOT TO SAY THAT I DON'T HAVE SOME CONCERN

13   ABOUT MR. VILPPU.  I UNDERSTAND HE IS EXTRAORDINARILY WELL

14   QUALIFIED FROM AN ARTISTIC PERSPECTIVE, BUT I CONTINUE TO HAVE

15   CONCERNS.  BASICALLY, WHERE I'M AT RIGHT NOW IS TO GRANT THE       05:19

16   MOTION WITH RESPECT TO THOSE THREE AREAS THAT I IDENTIFIED AND

17   DENY IT WITH RESPECT TO HIS ABILITY TO GO FORWARD AND MAKE THE

18   QUALITATIVE ASSESSMENT OF DIFFERENCES AND SIMILARITIES.

19        BUT I WILL JUST KIND OF ISSUE A CAVEAT THAT TO THE

20   EXTENT THAT IT BECOMES CLEAR THAT -- BASICALLY, MATTEL            05:19

21   PRESERVES ITS RIGHT TO MAKE WHATEVER FOUNDATIONAL OBJECTIONS IT

22   WANTS TO TO THE EXPERT GOING FORWARD.

23        THAT'S WHERE I'M AT RIGHT NOW.

24        LET ME HEAR FROM BOTH SIDES.

25        **MS. AGUIAR:**  THANK YOU, YOUR HONOR.  WE ACCEPT THE        05:19

1   RULING AND UNDERSTAND THAT HE'LL BE PERMITTED TO TESTIFY

2   REGARDING THE SIMILARITY OR DISSIMILARITY IN THE FEATURES.

3            JUST TO SET THE STAGE, THOUGH, AS I WAS AT THE

4   HEARING REGARDING MR. TONNER -- AND YOU'VE MENTIONED MAYBE SOME

5   PRELIMINARY HESITATION REGARDING HIS METHODOLOGY -- MR. VILPPU

6   IS THE PAIRING, THE EQUIVALENT EXPERT, TO MR. LOETZ.  MR. LOETZ

7   IS MATTEL'S ART EXPERT.  IF YOUR HONOR IS INCLINED TO HAVE ANY

8   CONCERNS WITH MR. VILPPU'S PROCEDURES, THEN I HAVE TO ASSUME

9   THAT YOU HAVE THE SAME ISSUES WITH MR. LOETZ.

10           MR. LOETZ GOES THROUGH ALL OF THE ELEMENTS OF THE

11   DRAWINGS AND GOES THROUGH THE ELEMENTS OF THE DOLLS, AND IN

12   MR. LOETZ'S WORLD, THEY ARE ALL EXACTLY THE SAME, BASICALLY.

13   HE CALLS THEM --

14           **THE COURT:**  AND IN MR. VILPPU'S WORLD, THEY COULDN'T

15   BE MORE DISSIMILAR.  AND I DO -- AND I STATED AT THE OUTSET

16   WHAT I'D DO TO MGA'S MOTION NUMBER 12, THAT THERE ARE SERIOUS

17   OBJECTIONS; THEY GO TO THE WEIGHT OF THE TESTIMONY; AND THAT'S

18   WHERE I AM WITH MR. VILPPU.

19           AND PERHAPS I'M ELABORATING HERE, AND THIS CERTAINLY

20   DOES APPLY TO BOTH:  TO BE HONEST, IN READING THROUGH THE TWO

21   EXPERT REPORTS, THERE WERE MORE TIMES WHEN I HAD A RAISED

22   EYEBROW WITH MR. VILPPU THAN WITH MR. LOETZ, BUT THAT'S NOT TO

23   SAY THAT THERE AREN'T SERIOUS CONCERNS ON BOTH SIDES.

24           THERE'S A PART OF ME WHICH ALMOST -- AT ONE POINT IN

25   TIME, I WAS AT THE POINT WHERE I SAID 'LETS TRY THIS WITHOUT

| | |
|---|---|
| 1 | THE EXPERTS; THIS IS SOMETHING WHICH THE JURY CAN EVALUATE. |
| 2 | AND I SUPPOSE, IF WE WERE JUST LOOKING AT INTRINSIC ANALYSIS, |
| 3 | THAT'S WHERE I WOULD BE.  BUT GIVEN THE NINTH CIRCUIT |
| 4 | REQUIREMENT THAT WE CONSIDER EXTRINSIC ANALYSIS AS WELL, I |
| 5 | THINK THE EXPERTS ARE NECESSARY. |
| 6 | BUT I'M JUST SAYING TO BOTH PARTIES, I HAVE REAL |
| 7 | CONCERNS, AND WE'LL JUST HAVE TO SEE HOW THIS WORKS OUT. |
| 8 | **MS. AGUIAR:**  I APPRECIATE THAT. |
| 9 | I THINK YOUR HONOR MADE A COMMENT AT ONE OF THE |
| 10 | HEARINGS IN MAY WHICH WAS VERY TELLING, WHICH IS THAT WHEN YOU |
| 11 | LOOKED AT THE DRAWINGS AND YOU WERE LOOKING AT THE DOLLS FOR |
| 12 | THE FIRST TIME, YOU SAW CERTAIN THINGS OR MAYBE DIDN'T SEE |
| 13 | CERTAIN THINGS; AND THAT WOULD BE TRUE FOR ALL OF US AS WELL. |
| 14 | BUT THEN YOU MADE A COMMENT ABOUT HAVING READ THE EXPERT |
| 15 | REPORTS, AND AT LEAST THEY ALLOWED YOU TO THINK ABOUT THIS IN A |
| 16 | DIFFERENT WAY AND TO VIEW THE ELEMENTS OF THE DOLL IN A WAY |
| 17 | THAT MOST LAY PEOPLE DON'T TYPICALLY THINK OF THEM. |
| 18 | AND SO I THINK IN THE END YOU CAME DOWN THE RIGHT |
| 19 | WAY, WHICH IS TO LET BOTH OF THE EXPERTS IN SO THAT THE JURY |
| 20 | CAN UNDERSTAND WHERE THERE CAN BE DIFFERENCES WHERE YOU MAY NOT |
| 21 | INITIALLY THINK THERE ARE.  SO WE'LL SUBMIT ON THAT. |
| 22 | **THE COURT:**  VERY GOOD. |
| 23 | MATTEL? |
| 24 | **MR. PROCTOR:**  WE'RE HAPPY TO SUBMIT ON THE RULINGS, |
| 25 | JUDGE. |

05:21
05:21
05:22
05:22
05:22

1        THE COURT:  VERY WELL.

2            MATTEL'S MOTION IN LIMINE NUMBER 13, THAT WAS

3    PREVIOUSLY GRANTED.

4            I BELIEVE I ALSO ALREADY ADDRESSED ON FRIDAY,

5    ALTHOUGH I DID TAKE A LOOK AT IT AGAIN OVER THE WEEKEND,          05:22

6    MATTEL'S MOTION IN LIMINE NUMBER EIGHT.  I HAD INDICATED THAT I

7    WAS GOING TO GRANT THAT MOTION.  ALTHOUGH I DO WANT TO GET --

8    JUST TO BE CLEAR, I NEED A COMMITMENT FROM MATTEL.  YOU'VE

9    ALREADY GIVEN THIS TO ME.  I JUST WANT TO MAKE SURE I

10   UNDERSTOOD IT RIGHT -- THAT THE DISGORGEMENT OF PROFITS AND      05:23

11   REVENUES IS THE DAMAGES THAT YOU'RE SEEKING WITH RESPECT TO ALL

12   CLAIMS, NOT JUST THE CLAIM FOR COPYRIGHT INFRINGEMENT.

13           IS THAT CORRECT?

14           MR. ZELLER:  THAT'S CORRECT, YOUR HONOR.

15           THE COURT:  VERY WELL.                                   05:23

16           BECAUSE WHETHER MATTEL WOULD HAVE MARKETED BRATZ

17   WOULD BE RELEVANT IF YOU WERE SEEKING TRADITIONAL DAMAGES, BUT

18   I AGREE WITH YOUR ANALYSIS THAT IT'S NOT RELEVANT IF THE ONLY

19   DAMAGES BEING SOUGHT ARE DISGORAGEMENT OF PROFITS AND REVENUES.

20           I KNOW THERE WAS SOME CONCERN BY MGA THAT THIS IS        05:23

21   RELEVANT TO THE CAUSATION OF STATE COURT CLAIMS, BUT WE'RE PAST

22   THAT AT THIS POINT, GIVEN THE JURY'S FINDINGS.

23           ANYTHING FURTHER FROM MGA ON THAT POINT?

24           MR. NOLAN:  I DO HAVE ONE QUESTION THAT ARISES IN

25   TERMS OF THE SCOPE OF DAMAGES, AND I CERTAINLY UNDERSTAND THE    05:24

1    REPRESENTATION THAT THIS IS JUST DISGORGEMENT AND IT'S FOR ALL

2    CAUSES OF ACTION, BUT I JUST WANT TO PAUSE FOR A MOMENT, YOUR

3    HONOR, ON AN ISSUE.

4          GROSS REVENUES, DISTRIBUTIONS, THAT'S ALL ONE THING.

5    THERE'S A REQUEST OUTSTANDING THAT MR. LARIAN SHOULD PRODUCE          05:24

6    EVIDENCE OF HIS NET WORTH THAT GOES BEYOND, LET'S SAY, BRATZ.

7    AS WE HAVE BRIEFED -- AND I KNOW WE'RE NOT GOING TO ARGUE RIGHT

8    NOW THE JMOL MOTIONS.  HOWEVER, THE PUNITIVE DAMAGE --

9          **THE COURT:**  HIS NET WORTH FOR OUTSIDE OF BRATZ WOULD

10   GO TO THE ISSUE OF PUNITIVE DAMAGES.                                  05:24

11         **MR. NOLAN:**  YES, YOUR HONOR.  AND THE MOTION THAT HAS

12   BEEN TEED UP IN THE JMOL IS THAT TO THE EXTENT THAT MATTEL IS

13   SEEKING DAMAGES ON THEIR WHAT I'LL JUST CALL THE STATE TORT

14   CLAIMS, THAT WOULD INCLUDE PUNITIVE DAMAGES -- THAT THE MEASURE

15   OF DAMAGES THERE WOULD NOT BE COPYRIGHT DAMAGES FLOWING FROM          05:25

16   THE SALE OF THE BRATZ DOLLS; IT WOULD BE LIMITED TO THE EXTENT

17   THAT THEY ARE RECOVERABLE DAMAGES PURSUANT TO THE STATE LAW

18   CLAIMS.

19         ONE OF THE CONCERNS THAT WE HAVE AND WHAT WE SAID IN

20   THE JMOL MOTION IS, YOUR HONOR, THAT IN ANALYZING WHETHER OR         05:25

21   NOT MR. LARIAN SHOULD BE FORCED TO DISCLOSE HIS NET WORTH

22   INFORMATION ON A POTENTIAL PUNITIVE DAMAGE CLAIM ON A STATE LAW

23   CLAIM WHERE WE WOULD CONTEND THAT THE RECORD EVIDENCE IS OVER

24   WHELMING THAT THE AMOUNT IN QUESTION WOULD NOT EXCEED -- AND

25   I'M JUST GIVING A ROUGH FIGURE -- $75,000; AND I USED THAT           05:25

```
 1   FIGURE, BECAUSE BEFORE THEY WERE FIGHTING OVER THE -- WHETHER

 2   OR NOT FOR REMOVAL PURPOSES, THE BRATZ RELATED ROYALTIES WERE

 3   BEING IMPACTED.  THEY ARGUED BEFORE JUDGE MANELLA -- AND I

 4   THINK SUCCESSFULLY DID IT ONE TIME -- THAT THE AMOUNT IN

 5   QUESTION WAS NOT IN EXCESS OF $75,000.                          05:26

 6        IN LIGHT OF THAT, YOUR HONOR, WE UNDERSTAND THAT WE

 7   HAVE TO PRODUCE DOCUMENTS WITH RESPECT TO GROSS REVENUES AND TO

 8   THE EXTENT THAT THIS IS THE SUBCHAPTER S, THE DISTRIBUTIONS

 9   THAT WERE MADE TO MR. LARIAN.

10        BUT, YOUR HONOR, TO THE EXTENT THAT THE NET WORTH        05:26

11   INFORMATION IS IN ADDITION TO THAT, THEN WE DON'T THINK THAT

12   IT'S CALLED FOR UNDER THE PRESENT POSTURE OF THIS CASE, EVEN IN

13   LIGHT OF THE JURY'S FINDINGS; AND THAT CERTAINLY REPRESENT THAT

14   THE FINANCIAL INFORMATION WITH RESPECT TO THE AMOUNT OF

15   DISTRIBUTIONS FLOWING FROM BRATZ, CERTAINLY DWARFS ANY          05:26

16   POTENTIAL CLAIM THEY WOULD HAVE ON THE CONTRACT CLAIMS.  I JUST

17   WANTED TO FLAG THAT ISSUE, BECAUSE IT MAY BE SOMETHING WE NEED

18   TO BRING TO THE COURT IN FURTHER DETAIL.  UNLESS MATTEL WOULD

19   AGREE WITH US THAT THE NET WORTH FINANCIAL INFORMATION FROM

20   MR. LARIAN IS NOT PRODUCIBLE AT THIS TIME.                      05:27

21        THE COURT:  WE'LL TAKE THAT ISSUE UP BEFORE

22   MR. LARIAN TESTIFIES.

23        MR. NOLAN:  I JUST WANTED TO FLAG IT.

24        THE COURT:  VERY WELL.

25        MR. ZELLER:  YOUR HONOR, THERE IS ONE ISSUE I WOULD        05:27
```

IONDAY, JULY 21, 2008                    CONTINUED BENCH CONFERENCE (TELEPHONIC

1   ASK THE COURT TO TAKE UP HOWEVER, CONCERNING MR. LARIAN'S

2   FINANCIALS.

3          THE COURT WILL RECALL THAT IT ORDERED MR. LARIAN TO

4   PRODUCE HIS FINANCIAL INFORMATION.

5          **THE COURT:**  YES.                                    05:27

6          **MR. ZELLER:**  THERE WAS A LONG HISTORY OF THIS

7   THROUGHOUT DISCOVERY, AND THE COURT, QUITE SPECIFICALLY --

8          **THE COURT:**  I RECALL THE HISTORY.  I RECALL THE

9   COURT'S ORDERS.  HAS THAT NOT BEEN DONE?

10         **MR. QUINN:**  WE ASKED MGA, MR. LARIAN, FOR THAT      05:28

11  INFORMATION, AND WE HAVE NOT RECEIVED IT, AND THIS IS CAUSING

12  US GREAT CONCERN.

13         **THE COURT:**  MR. NOLAN, I DO BELIEVE I DID ORDER THAT

14  TURNED OVER.

15         **MR. NOLAN:**  YOUR HONOR, MR. ROTH HAS BEEN DEALING    05:28

16  WITH THAT.  I'M NOT PASSING THE BUCK; I'LL COMMENT AS WELL; BUT

17  MR. ROTH CAN GIVE YOU THE UPDATED REPORT.

18         **MR. ROTH:**  WE UNDERSTOOD THAT THE ORDER WAS TO HAVE

19  IT AVAILABLE WHEN MR. LARIAN TESTIFIED.  WE ARE GATHERING THAT

20  INFORMATION AND WE WILL BE PRODUCING IT WITHIN THE NEXT FEW     05:28

21  DAYS.

22         **THE COURT:**  ALL RIGHT.

23         I GUESS I THOUGHT THAT WOULD BE HAVE BEEN PRODUCED

24  BEFORE NOW.  BUT BE THAT AS IT MAY, MR. ZELLER, YOU'LL HAVE

25  THAT INFORMATION WITHIN THE NEXT FEW DAYS.                     05:29

1    **MR. ZELLER:** UNFORTUNATELY, YOUR HONOR, WE GAVE

2 NOTICE OF THIS SOME PERIOD OF TIME AGO TO MGA. WE EXPECT TO

3 CALL MR. LARIAN ON WEDNESDAY OR FRIDAY; HE IS EARLY IN OUR

4 CASE. AND AS THE COURT KNOWS, WE DON'T HAVE THAT MUCH TIME.

5    **MR. NOLAN:** YOUR HONOR, AS MR. ROTH INDICATED, WE ARE

6 GATHERING THAT INFORMATION. THEY TOLD US FOR THE FIRST TIME, I

7 BELIEVE -- CONTRARY, MR. LARIAN WAS LISTED NINTH, ON FRIDAY

8 WHEN WE WERE LAST BEFORE YOU, YOUR HONOR. WE SAID WE WOULD

9 PULL THE INFORMATION AND WE WILL PRESENT IT AS QUICKLY AS WE

10 GET IT. I'M HOPEFUL WE CAN HAVE IT IN A DAY OR TWO.

11    CERTAINLY, GIVEN THE LENGTH OF TIME MR. QUINN AND I

12 HAVE TALKED ABOUT WITH RESPECT TO THE AMOUNT OF OPENING

13 STATEMENTS IN THIS PHASE OF THE CASE, I THINK IT'S MORE LIKELY

14 THAT MR. LARIAN WILL BE ON THE STAND BY FRIDAY AND WE'LL GATHER

15 THE INFORMATION, AS WE HAVE BEEN DIRECTED TO.

16    **THE COURT:** I AM GOING TO PUT A STOP TO THIS.

17    BY THE CLOSE OF BUSINESS ON WEDNESDAY, THAT

18 INFORMATION IS TO BE PRODUCED.

19    **MR. NOLAN:** THANK YOU, YOUR HONOR. WE'LL DO THAT.

20    **THE COURT:** MATTEL NUMBER NINE, TESTIMONY REGARDING

21 BARBIE. AS I PREVIOUSLY INDICATED, MY TENTATIVE IS TO GRANT

22 THIS MOTION *IN LIMINE*.

23    THE ONLY RELEVANCE THAT I CAN SEE THIS POTENTIALLY

24 HAVING IS RELEVANT TO SOME OF THE AFFIRMATIVE DEFENSES. I'M

25 GOING TO ADDRESS THE AFFIRMATIVE DEFENSES AFTER I'VE GONE

05:29
05:29
05:29
05:29
05:30

THROUGH THESE MOTIONS IN LIMINE, AND I'M GOING TO SET CLEAR

PARAMETERS FOR WHAT TYPES OF EVIDENCE WILL COME IN ON THE

AFFIRMATIVE DEFENSES BEFORE THIS JURY IN PHASE 1-B.  CERTAINLY

SOME EVIDENCE RELATED TO THE AFFIRMATIVE DEFENSES HAS ALREADY

COME IN IN 1-A.

          I DO HAVE SOME CONCERN AT THIS POINT -- A CONCERN I

SUPPOSE I DIDN'T HAVE WHEN THIS TRIAL STARTED, BUT IT'S A

CONCERN THAT I HAVE NOW -- OF JUROR CONFUSION WITH RESPECT TO

SOME OF THE EVIDENCE CONCERNING SOME OF THE AFFIRMATIVE

DEFENSES.

          AT THE SAME TIME, I WANT TO MAKE SURE THAT MGA HAS

THE ABILITY TO BRING IN, UNIMPEDED BY THE COURT'S CONCERNS

ABOUT CONFUSION, ALL OF THE EVIDENCE THEY THINK IS NECESSARY TO

PROVE UP ANY OF THEIR AFFIRMATIVE DEFENSES.  SO IN AN

ALTERATION FROM WHAT I HAVE PREVIOUSLY INDICATED, I'M GOING TO

CONTINUE TO PERMIT EVIDENCE RELATED TO CERTAIN OF THE

AFFIRMATIVE DEFENSES TO COME IN, AND I'LL GET TO THAT SHORTLY

IN TERMS OF THE PARAMATERS; IT'S GOING TO BE LARGELY RELATE TO

THE ISSUE OF FRAUDULENT CONCEALMENT WHICH COMES ACROSS IN A

NUMBER OF THE AFFIRMATIVE DEFENSES.  BUT WITH RESPECT TO ANY

OTHER EVIDENCE THAT IS EXCLUDED ON 403 GROUNDS, SUCH AS BARBIE

TESTIMONY HERE, WHICH I AM INCLUDING ON 403 GROUNDS, TO THE

EXTENT THAT MGA BELIEVES THAT THE COURT SHOULD HAVE THAT BEFORE

IT TO DECIDE THE AFFIRMATIVE DEFENSES, I WILL GIVE LEAVE AFTER

1-B TO MGA, AND OF COURSE TO MATTEL AS WELL, TO PRESENT ANY

1  ADDITIONAL EVIDENCE THAT WAS NOT PRESENTED DURING THE TRIAL

2  THAT IS RELEVANT TO THE AFFIRMATIVE DEFENSES.

3         I'LL EXPAND ON THAT WHEN I GET TO THE AFFIRMATIVE

4  DEFENSES, BUT IT'S WITH THAT PROVISO THAT I'M OTHERWISE

5  GRANTING MATTEL'S MOTION IN LIMINE NUMBER NINE RELATING TO          05:32

6  TESTIMONY REGARDING BARBIE.

7         ANY QUESTIONS FROM MGA?

8         **MR. ROTH:**  YES, YOUR HONOR.

9         THERE IS SOME EVIDENCE THAT WE BELIEVE IS RELEVANT TO

10  THE APPORTIONMENT CASE THAT RELATES TO THE MANNER IN WHICH         05:32

11  MATTEL PRODUCES AND DISTRIBUTES BARBIE.  AND THAT IS

12  ESSENTIALLY THE APPORTIONMENT QUESTIONS ATTEMPTING TO DETERMINE

13  WHAT ARE THE FACTORS THAT ARE IMPORTANT TO THE PROFITABILITY OF

14  A FASHION DOLL.  OBVIOUSLY BARBIE IS A PRIME EXAMPLE OF A

15  FASHION DOLL, AND SOME OF THE THINGS THAT MATTEL DID WITH          05:33

16  RESPECT TO BARBIE AND THE 2003/2004 TIME FRAME, WE BELIEVE

17  CONFIRMS OUR VIEWS ABOUT THE METHODS THAT A TOY COMPANY

18  UNDERTAKES TO SUCCEED WITH A DOLL IN THE MARKETPLACE.

19         SO, FOR INSTANCE, TO GIVE YOU ONE PRIME EXAMPLE, WE

20  BELIEVE THAT THE CHOICE AND THE EXECUTION ON THEMES RELATED TO     05:33

21  SPECIFIC DOLLS GOES A LONG WAY TOWARDS EXPLAINING THE SUCCESS

22  OF A FASHION DOLL IN CONTRAST TO THE DOLL'S UNDERLYING DESIGN.

23  WE BELIEVE THAT MGA OPERATES IN A MANNER THAT'S CONSISTENT WITH

24  THAT WITH RESPECT TO BRATZ, AND MATTEL OPERATES IN A MANNER

25  THAT IS CONSISTENT WITH THAT RESPECT TO BARBIE.                    05:33

1        THERE ARE OTHER EXAMPLES ABOUT HOW MATTEL VIEWS THE

2   IMPORTANCE OF PACKAGING, OF FASHIONS; ALL OF THESE FACTORS THAT

3   WE THINK ARE CRUCIAL TO OUR APPORTIONMENT OF THE CASE; AND WE

4   SIMPLY WANT TO POINT OUT THAT THOSE FACTORS THAT WE BELIEVE ARE

5   IMPORTANT, VIS-À-VIS BRATZ, MATTEL BELIEVES THEY ARE IMPORTANT        05:34

6   VIS-À-VIS BOTH BRATZ AND THEIR OTHER DOLLS, INCLUDING BARBIE.

7        **THE COURT:**  THIS ARGUMENT YOU'RE MAKING NOW IS NOT

8   THE ARGUMENT YOU SET FORTH IN YOUR OPPOSITION TO THE MOTION

9   *IN LIMINE.*

10        WHAT I'M REJECTING AND WHAT I'M GRANTING IS THE        05:34

11   MOTION *IN LIMINE* FOR USE OF BARBIE IN ANY OF THE CONTEXT

12   THAT --

13        (BRIEF TECHNICAL PROBLEMS.)

14        **MR. QUINN:**  I THINK WE JUST LOST JUDGE LARSON.

15        **THE CLERK:**  I THINK WE MIGHT NEED HIM.        05:35

16   HOLD ON ONE MOMENT.

17        (RESUMING WITH PROCEEDINGS.)

18        **THE COURT:**  THIS IS JUDGE LARSON.

19        IS EVERYONE STILL THERE?

20        **MR. QUINN:**  YES.        05:35

21        **MR. NOLAN:**  YES.

22        **THE COURT:**  I GUESS I GOT CUTOFF.

23        I DON'T KNOW WHERE I CUT OUT.  I WAS SPEAKING WITH

24   MR. ROTH, INDICATING THAT WHAT HE JUST SET FORTH WAS NOT WHAT

25   WAS SET FORTH IN MOTION IN LIMINE NUMBER NINE.        05:36

1      I WILL HEAR MATTEL'S RESPONSE TO THIS PARTICULAR USE

2  OF EVIDENCE RELATED TO BARBIE.

3      **MR. COREY:**   YOUR HONOR, I THINK WHAT MR. ROTH

4  ARTICULATED REALLY ISN'T THAT DISSIMILAR FROM WHAT WAS IN THEIR

5  PAPERS BEFORE, AND I THINK IT RUNS SQUARELY INTO THE TEETH OF      05:36

6  THE CONCERN THAT THE COURT IDENTIFIED; THAT BARBIE IS A VERY

7  BIG BRAND WITH A LOT OF PRODUCT, AND TO THE EXTENT WE START

8  INTRODUCING THAT IN FRONT OF THE JURY, WE ARE GOING TO HAVE

9  SIGNIFICANT 403 PROBLEMS.

10      I THINK MR. ROTH STATED CLEARLY THAT AT LEAST      05:36

11  ACCORDING TO MGA, MGA DOES, WITH RESPECT TO BRATZ, WHAT BARBIE

12  DOES WITH RESPECT TO MATTEL; SO THERE SHOULDN'T BE ANY

13  PREJUDICE HERE.

14      MR. ROTH CAN GO AHEAD AND RELY ON THAT INFORMATION

15  FROM MGA IF HE WANTS TO MAKE WHATEVER POINTS HE THINK HE NEEDS      05:36

16  TO MAKE WITH RESPECT TO APPORTIONMENT.

17      **MR. ROTH:**   OBVIOUSLY, THE EXTENT TO WHICH MATTEL DOES

18  IT CONFIRMS THE IMPORTANCE OF THAT CONSIDERATION.   WHAT WE NEED

19  TO DO IS CONVINCE THE JURY THAT THINGS LIKE, YOU KNOW, THEMES

20  AND PACKAGING ARE IMPORTANT.   THE FACT THAT WE THINK IT'S      05:37

21  IMPORTANT, OBVIOUSLY THAT WEIGHS IN, BUT THE FACT THAT MATTEL,

22  VIS-À-VIS BARBIE OR MY SCENE OR WHATEVER FASHION DOLL THEY

23  THINK IS IMPORTANT AS WELL, WE THINK ALSO CONFIRMS OUR

24  ARGUMENTS.   AND OBVIOUSLY WE UNDERSTAND AND WE HAVE TIME AND

25  STRENGTHS, AND WE'LL USE OUR TIME AS WE DEEM APPROPRIATE, GIVEN      05:37

1  THE COURT'S GUIDANCE.  BUT WE THINK THAT WE JUST CANNOT BE

2  PROHIBITED FROM MAKING ANY KIND OF REFERENCE TO BARBIE IN

3  CONNECTION WITH OUR APPORTIONMENT CASE.

4      **THE COURT:**  WELL, THIS GETS INTO A DIFFERENT LIGHT,

5  AND I WILL GIVE YOU LEAVE TO -- LET'S RAISE THIS WITH THE COURT      05:38

6  BEFORE WE GO DOWN THIS ROAD.  I'M RULING ON THE MOTION

7  *IN LIMINE* AS IT'S PRESENTED TO THE COURT, AND FOR THE PURPOSES

8  SET FORTH BY MGA IN ITS OPPOSITION TO THAT MOTION *IN LIMINE*,

9  THE COURT IS RULING THAT REFERENCE TO BARBIE IS PRECLUDED.  AND

10  THAT'S ALL I'M RULING AT THIS POINT.      05:38

11      **MR. NOLAN:**  YOUR HONOR, A LOT OF THE ISSUES THAT

12  TRIGGERED, I THINK, THE MOTION NUMBER NINE BY MATTEL AROSE OUT

13  OF THE EXPERT REPORT OF MARY BERGSTEIN WHICH WE HAD EARLIER

14  INDICATE WE WERE WITHDRAWING.

15      **THE COURT:**  VERY WELL.      05:38

16      ANY QUESTIONS FROM MATTEL?

17      **MR. QUINN:**  NO, YOUR HONOR.

18      **THE COURT:**  THE ONE CAVEAT I'D ISSUE TO MATTEL -- I

19  HAD CERTAINLY INTENDED TO KEEP A LOT OF THE STUFF THAT WE ENDED

20  UP GETTING INTO IN THE FIRST PHASE OUT, BUT A LOT OF THAT WAS      05:38

21  OPENED UP TO BY MATTEL; SO I WANT TO MAKE THE SAME WARNING

22  AGAIN.

23      MATTEL CAN CERTAINLY UNDO, AND MGA, OF COURSE, CAN

24  UNDO THE SAME THING; ANY OF THESE RULINGS IN YOUR RESPECTIVE

25  FAVORS CAN BE UNDONE BY STATEMENTS MADE IN OPENING STATEMENT OR      05:39

```
 1   EVIDENCE INTRODUCED IN YOUR CASE IN CHIEF; SO JUST KEEP THAT IN
 2   MIND.
 3           MATTEL'S MOTION IN LIMINE NUMBER 11, I THINK THIS WAS
 4   MR. GRUCA.  I AM FAMILIAR WITH THE SURVEY AT ISSUE HERE; THIS
 5   IS THE ONLINE SURVEY BY BRAND WEAR RESEARCH.  AND THEN IF THIS     05:39
 6   COMES IN, MATTEL IS SEEKING THE KIVETZ SURVEY.
 7           IS THAT CORRECT?
 8       MR. KIDMAN:  YES, YOUR HONOR.
 9           I WOULD LIKE TO RAISE, YOUR HONOR, THAT IN LIGHT OF
10   YOUR RULING WITH RESPECT TO CAROL SCOTT, OUR POSITION              05:39
11   PREVIOUSLY WAS THE GRUCA SURVEY SHOULD NOT COME IN BECAUSE IT
12   WAS AN IMPROPER REBUTTAL TO PROFESSOR SCOTT.  IN LIGHT OF YOUR
13   RULING THIS AFTERNOON THAT MS. SCOTT CAN'T SPEAK TO BRATZ, IT'S
14   CLEAR THAT THE GRUCA SURVEY IS COMPLETELY IMPROPER REBUTTAL TO
15   MS. SCOTT.  IN HIS REPORT HE SAID HE WAS REBUTTING STATEMENTS      05:40
16   MADE BY MS. SCOTT IN PARAGRAPH 12 OF HER INITIAL REPORT.  IN
17   THAT PARAGRAPH, MS. SCOTT TALKS ABOUT THE BRATZ DOLL, MGA'S
18   SUCCESS OF THE BRATZ DOLL DUE TO THE DESIGN AND APPEARANCE OF
19   THE DOLL; SO I THINK IT'S CLEAR, IN LIGHT OF YOUR RULINGS
20   TODAY, THAT MR. GRUCA WOULD BE IMPROPER REBUTTAL TO MS. SCOTT.     05:40
21       THE COURT:  IS THERE SOMEONE FROM MGA WHO WANTS TO
22   SPEAK TO THIS.
23           I KNOW YOU DIDN'T HAVE THE BENEFIT OF MY RULING ON
24   MS. SCOTT WHEN YOU WERE MAKING THIS; SO WHAT IS THE ANALYSIS
25   FROM MGA'S PERSPECTIVE?                                            05:41
```

1    **MR. ROTH:**  YOUR HONOR, AS YOU MAY RECALL ON FRIDAY

2    VIS-À-VIS THE GRUCA SURVEY, WE OFFERED TWO RATIONALES FOR ITS

3    SUBMISSION; THE SECOND IS THE ONE MR. KIDMAN JUST DEALT WITH,

4    WHICH IS WHETHER IT WAS REBUTTAL OR NOT TO A PARTICULAR

5    PARAGRAPH OR TWO IN MS. SCOTT'S REPORT THAT WE NOW UNDERSTAND    05:41

6    WOULD NOT BE THE SUBJECT OF TESTIMONY AT THE UPCOMING PHASE 1-B

7    TRIAL.

8         HOWEVER, THE PRIMARY REASON WHY THE REPORT SHOULD BE

9    PERMITTED IS THAT THE REPORT WAS NOT REQUIRED TO BE SERVED AS

10   AN INITIAL REPORT IN THE FIRST INSTANCE.  AGAIN, THIS IS    05:41

11   STRAIGHT OUT OF THE STRAUS CASE WHICH MAKES IT CLEAR THAT

12   APPORTIONMENT EVIDENCE IS NOT REQUIRED IN THE INITIAL ROUND OF

13   REPORTS; COULD BE OFFERED UP AS A REBUTTAL REPORT, WHICH IS

14   WHAT WE DID.

15        SO AGAIN, I THINK THAT THE PRIMARY THRUST OF OUR    05:41

16   ARGUMENT ON FRIDAY VIS-À-VIS THE BRAND WEAR STUDY REMAINS,

17   WHICH IS IT IS PROPER REBUTTAL TO MATTEL'S POINTING TO ITS

18   GROSS REVENUES.  ONCE THEY POINT TO THOSE GROSS REVENUES AND

19   INDICATE WHAT THEY ARE SEEKING, THEN THE BURDEN SHIFTS TO US TO

20   OFFER UP APPORTIONMENT ANALYSIS, AND WE CAN DO SO IN THE    05:42

21   CONTEXT OF REBUTTAL REPORTS.  THAT'S WHAT HAPPENED IN STRAUS,

22   AND THAT'S WHAT SHOULD HAPPEN HERE, YOUR HONOR.

23        **THE COURT:**  WHAT IS YOUR VIEW IN TERMS OF IF THIS IS

24   BEING RAISED FOR THE FIRST TIME IN A REBUTTAL REPORT OF MATTEL

25   INTRODUCING THE KIVETZ SURVEY?    05:42

```
 1          MR. ROTH:  YOUR HONOR, AS WE INDICATED ON FRIDAY, WE
 2   THINK THERE IS SOME UNFAIRNESS HERE.  THEY HAVE SAT ON THAT
 3   REPORT.  THEY INDICATED TO US ON FRIDAY THAT WE COULD HAVE THAT
 4   REPORT.  WE STILL DON'T HAVE IT.  THEY HAVE BEEN SITTING ON
 5   THOSE RESULTS FOR SIX WEEKS, WAITING UNTIL AFTER THERE WAS A      05:42
 6   1-A VERDICT BEFORE THEY EVEN LET US KNOW ABOUT THIS REPORT.
 7          HOWEVER, IF YOUR HONOR BELIEVES AS A MATTER OF
 8   FAIRNESS THAT IT IS NECESSARY TO OFFER UP BOTH REPORTS, IF
 9   THAT'S THE APPROPRIATE WAY TO GO, THEN WE WOULD AGREE WITH
10   THAT.                                                            05:43
11          THE COURT:  I DON'T BELIEVE I HAVE THE KIVETZ SURVEY
12   MYSELF, SO I'M NOT SURE -- LET ME HEAR FROM MATTEL ON THAT.
13          UNIDENTIFIED SPEAKER:  THE COURT'S SCHEDULING ORDER
14   DOES NOT PROVIDE THEY CAN SUBMIT A REPORT FOR THE FIRST TIME IN
15   REBUTTAL, BASED ON WHOSE BURDEN OF PROOF IT IS.                  05:43
16          THEY SUBMITTED THE GRUCA REPORT AS REBUTTAL TO
17   MS. SCOTT, AND SHE'S NO LONGER BEING PERMITTED TO TESTIFY ON
18   THE ISSUE WHICH THEY PURPORTED IT WAS REBUTTAL -- NO DIFFERENT
19   FROM THE HOLLANDER SITUATION.
20          THE COURT:  LET ME STOP YOU THERE, BECAUSE I MISSED      05:43
21   THE LINE I THINK THE COURT REPORTER MISSED AS WELL.
22          DID YOU SAY IT WAS NO DIFFERENT THAN THE HOLLANDER
23   SITUATION?
24          UNIDENTIFIED SPEAKER:  THAT'S CORRECT.
25          THE WITNESSES WHO MR. HOLLANDER WAS REBUTTING ARE NOT    05:44
```

1  BEING CALLED ANY LONGER, SO HE'S NOT BEING PERMITTED TO

2  TESTIFY.

3          THE COURT:  OKAY.  I WAS HOPING WE COULD WORK OUT A

4  STIPULATION TO THIS.

5          I NEED TO TAKE A LOOK AT THIS, BECAUSE I WAS REALLY          05:44

6  RELYING ON THE PROCEDURAL MOOTNESS OF THIS.  I MIXED MY SURVEYS

7  UP HERE.  I WILL TAKE ANOTHER LOOK AT MATTEL NUMBER 11, THE

8  OPPOSITIONS AND THE REPLY.  I'LL CONSIDER THIS ARGUMENT BEING

9  MADE NOW, AND I'LL ISSUE A RULING ON THIS ON WEDNESDAY.

10          MR. ROTH:  YOUR HONOR, ONE QUICK RESERVATION.          05:44

11          OBVIOUSLY, SHOULD YOUR HONOR DECIDE THAT THE

12  APPROPRIATE APPROACH HERE IS TO OFFER MATTEL THE OPPORTUNITY TO

13  PUT IN MR. KIVETZ REPORT, WE WOULD RESERVE THE RIGHT TO FILE

14  ANY MOTION TO THAT REPORT ONCE WE SEE IT.  IT WOULD BE NICE IF

15  WE SAW IT SOON SO WE COULD BEGIN TO MAKE THAT KIND OF          05:44

16  CALCULATION.

17          THE COURT:  IS THERE A REASON WHY MATTEL CAN'T

18  PRODUCE THE KIVETZ REPORT AT THIS TIME?

19          UNIDENTIFIED SPEAKER:  NO, YOUR HONOR.  WE CAN DO

20  THAT.          05:45

21          THE COURT:  COULD YOU FAX A COPY OF THAT TO MY

22  CHAMBERS AS WELL.

23          UNIDENTIFIED SPEAKER:  THAT DOESN'T CHANGE OUR VIEW

24  THAT NEITHER REPORT --

25          THE COURT:  I UNDERSTAND.  YOU'RE NOT WAIVING          05:45

1  ANYTHING.  IT'S JUST, IN THE ALTERNATIVE -- IF THE COURT DOES

2  ALLOW THE GRUCA SURVEY TO COME IN, I SUSPECT, IF YOU WANT THE

3  KIVETZ SURVEY, YOU'D BETTER GIVE ME A COPY OF IT.

4           **UNIDENTIFIED SPEAKER:**  YES, YOUR HONOR.

5           **THE COURT:**  VERY WELL.        05:4?

6           MOVING ALONG TO PROBABLY THE MOST DISTASTEFUL MOTION

7  ON THE WHOLE TRIAL, AND THAT'S THE MOTION IN LIMINE NUMBER 15.

8  I ALWAYS SAY THAT BECAUSE, UNFORTUNATELY, THIS ONE DEALS NOT

9  WITH THE SUBSTANTIVE ISSUES SO MUCH, BUT WITH THIS ISSUE OF

10  DISQUALIFICATION AND CHANGE AND ALL THAT.  I PUT THIS OFF TO    05:4?

11  THE END, BECAUSE IT'S THE ONE I LEAST LOOK FORWARD TO DEALING

12  WITH IT.  BUT DEAL WITH IT I MUST.

13           THIS IS WHERE I'VE COME OUT ON THE MOTION IN LIMINE

14  TO PRECLUDE THE EXPERT TESTIMONY OF MS. TOMIYAMA AND OTHERWISE

15  PRECLUDE ANY REFERENCE.        05:4?

16           AS I THINK MR. NOLAN POINTED OUT -- NOT MR. NOLAN; IT

17  WAS SOMEBODY ELSE; I CAN'T REMEMBER WHO IT WAS; MAYBE IT WAS

18  MS. AGUIAR -- WE'VE ALREADY HAD TESTIMONY RECEIVED IN THIS

19  TRIAL FROM MS. MARTINEZ, FROM OTHERS, CONCERNING THE

20  DISTINCTIONS BETWEEN A 2-DIMENSIONAL DOLL AND A 3-DIMENSIONAL    05:4?

21  DOLL.  WE'VE HAD LAY TESTIMONY, ESSENTIALLY.

22           WHAT I'M INCLINED TO DO AT THIS POINT IS TO PRECLUDE

23  MGA FROM INTRODUCING ANY EXPERT TESTIMONY THAT A 3-DIMENSIONAL

24  DOLL CANNOT INFRINGE A 2-DIMENSIONAL DOLL, BUT PERMIT BOTH LAY

25  WITNESS TESTIMONY AND ARGUMENT CONCERNING THE ARGUMENT THAT A    05:4?

1    2-DIMENSIONAL DOLL DRAWING IS DIFFERENT THAN A 3-DIMENSIONAL

2    DOLL.

3             THE RATIONALE HERE, OF COURSE, IS NOT BASED ON

4    ANYTHING MORE THAN ATTEMPTING TO ACHIEVE WHAT MR. ZELLER

5    PERSUASIVELY ARGUED ON FRIDAY AS A REMOVAL OF THE TAINT OF WHAT    05:47

6    TOOK PLACE EARLIER WITH MS. TOMIYAMA, WHILE AT THE SAME TIME

7    RECOGNIZING WHAT MGA ARGUED ON FRIDAY WAS THE FACT THAT THIS

8    ISSUE HAD ALREADY BEEN INTRODUCED THROUGH MATTEL WITNESSES, AND

9    OTHERS, INTO THE TRIAL, AND THAT IS AN ARGUMENT THAT IS OUT

10   THERE AND IS ALMOST A CERTAIN COMMON-SENSICAL WAY THAT THE    05:47

11   ARGUMENT IS ALREADY OUT THERE.  BUT I THINK BY PRECLUDING ANY

12   EXPERT TESTIMONY FROM DISCUSSING IT, THE COURT ACHIEVES A

13   CERTAIN LEVELING OF THE PLAYING FIELD CONCERNING THE TAINT

14   ISSUE.

15            BUT THAT'S MY TENTATIVE ON THAT.  I'LL HEAR FROM BOTH    05:48

16   SIDES.  THAT'S WHERE I'M AT ON THAT AT PRESENT.

17            **MR. ZELLER:**  THANK YOU, YOUR HONOR.

18            WE'LL SUBMIT ON THE COURT'S RULING WITH RESPECT TO

19   MS. TOMIYAMA.  A CONCERN, HOWEVER, IS THIS.  EVEN BEYOND THE

20   ISSUES REGARDING THE RETENTION OF MS. TOMIYAMA AND WHAT WOULD    05:48

21   BE AN APPROPRIATE REMEDY IN LIGHT OF THE EVENTS THERE, IS THE

22   FACT THAT COPYRIGHT LAW IS QUITE CLEAR THAT 2-D TO 3-D IS STILL

23   INFRINGEMENT IF IT'S SUBSTANTIALLY SIMILAR.

24            THIS IS RIGHT OUT OF THE TREATISES; RIGHT OUT OF THE

25   NINTH CIRCUIT CASES.    05:49

1    **THE COURT:**  I AGREE WITH YOU.  SO THERE'S NO

2    TESTIMONY THAT'S GOING TO COME IN THAT SAYS THAT A

3    3-DIMENSIONAL DOLL CANNOT INFRINGE A 2-DIMENSIONAL DRAWING.

4    THERE'S JUST BEEN SOME TESTIMONY THAT THERE ARE DIFFERENCES.

5    AND THOSE DIFFERENCES ARE PART OF THE WHOLE MIX THAT GOES INTO        05:49

6    THE ISSUE OF SUBSTANTIAL SIMILARITY THAT THE JURY MUST RECKON

7    WITH.

8        WHAT I'M NOT PREPARED DO, MR. ZELLER, IS RULE THAT

9    MGA CANNOT EVEN USE THE PHRASE "2-DIMENSIONAL; 3-DIMENSIONAL."

10   I THINK THAT GIVEN HOW THE TRIAL HAS PLAYED OUT SO FAR, GIVEN        05:49

11   ALMOST THE COMMON-SENSICAL NATURE OF THE DIFFERENCES BETWEEN A

12   3-DIMENSIONAL DOLL AND THE 2-DIMENSIONAL DRAWING, THAT I THINK

13   GOES BEYOND THE NECESSARY CURATIVE PRESCRIPTION AGAINST

14   AFFORDING THIS KIND OF EXPERT TESTIMONY ALONG THE LINES THAT

15   MS. TOMIYAMA HAD SUGGESTED IN HER EXPERT REPORT.                      05:49

16       **MR. ZELLER:**  SURE.  AND I UNDERSTAND THE DISTINCTION

17   THE COURT IS MAKING.  THAT'S WHY I'M SOMEWHAT DIVORCING IT FROM

18   THE COURT'S, SHALL WE SAY, CURATIVE ASPECTS OF THIS, VERSUS

19   WHAT WE THINK THE LAW IS, APART FROM WHETHER OR NOT

20   MS. TOMIYAMA HAD EVER BEEN RETAINED.                                 05:50

21       WE HAVE PROPOSED, AND CERTAINLY WE ANTICIPATE ASKING

22   THE COURT TO GIVE, A JURY INSTRUCTION THAT SAYS QUITE PLAINLY

23   TO THE JURY THAT 3-DIMENSIONAL OBJECTS, DOLLS, THAT THE

24   DRAWINGS CAN BE INFRINGED, EVEN THOUGH THEY ARE IN 2-D, BY 3-D

25   ITEMS.                                                               05:50

1    **THE COURT:**  I'M NOT GETTING TO THAT AT ALL RIGHT NOW.

2    WE'LL TAKE THAT UP AT THE CHARGING STAGE.  I UNDERSTAND YOUR

3    POSITION THERE, MR. ZELLER, AND YOU CERTAINLY WILL BE IN A

4    POSITION TO MAKE THAT REQUEST TO THE COURT AT THAT TIME AND THE

5    COURT WILL TAKE IT UP.  ALL I'M DOING IS RULING ON WHETHER OR          05:50

6    NOT -- YOU CERTAINLY PRESERVE ANY OTHER LEGAL OBJECTIONS TO ANY

7    ARGUMENTS BEING MADE OR ANY EVIDENCE BEING INTRODUCED ALONG

8    THESE LINES.  I'M JUST ADDRESSING THOSE THAT ARE RELATED TO THE

9    ISSUE OF TAINT.

10    **MR. ZELLER:**  FAIR ENOUGH, YOUR HONOR.          05:51

11    I WAS ONLY CONCERNED BECAUSE THE COURT WAS SUGGESTING

12    THAT THEY COULD MAKE THESE ARGUMENTS; AND SO I JUST WANTED TO

13    MAKE SURE.

14    **THE COURT:**  I PROBABLY DIDN'T CHOOSE MY WORDS AS

15    CAREFULLY AS I SHOULD HAVE.  THAT'S A GOOD POINT YOU'RE MAKING.          05:51

16    ALL I'M SAYING IS THAT THE TAINT ISSUE IS NOT GOING TO RESTRICT

17    ARGUMENT OR LAY EVIDENCE WITH RESPECT TO 2-D/3-D, AS OPPOSED TO

18    POTENTIAL OTHER ARGUMENTS THAT COULD BE MADE THAT ARE NOT

19    BEFORE ME RIGHT NOW.  I'M JUST LIMITING THE EXTENT OF THE

20    COURT'S PRECLUSION RULING WITH RESPECT TO THE TAINT ISSUE TO          05:51

21    NOT ONLY MS. TOMIYAMA -- YOU CONVINCED ME ON FRIDAY THAT IT

22    NEEDS TO GO BEYOND THAT -- I THINK I NEED TO EXTENT IT TO

23    EXPERT WITNESSES; BUT THAT'S AS FAR AS I THINK I'M WILLING TO

24    EXTEND IT.

25    **MR. ZELLER:**  I APPRECIATE THAT, YOUR HONOR.          05:52

| | |
|---|---|
| 1 | THANK YOU. |
| 2 | **THE COURT:**  ANYTHING FROM MGA ON THIS POINT? |
| 3 | **MS. AGUIAR:**  WE SUBMIT ON OUR PRIOR ARGUMENTS. |
| 4 | THANK YOU. |
| 5 | **THE COURT:**  VERY WELL. |
| 6 | THE LAST THING I WANT TO GET TO IS THE AFFIRMATIVE |
| 7 | DEFENSES; AND AGAIN, THE COURT WILL BE ISSUING A WRITTEN |
| 8 | OPINION ON THIS. |
| 9 | **MS. AGUIAR:**  I BELIEVE THAT THERE IS ACTUALLY ANOTHER |
| 10 | MATTEL MOTION *IN LIMINE*, IF YOU WANTED TO DO ALL OF THE MOTIONS |
| 11 | *IN LIMINE* TOGETHER, OR DID YOU WANT TO -- |
| 12 | **THE COURT:**  I THOUGHT I WAS DONE. |
| 13 | WHICH ONE ARE YOU REFERRING TO? |
| 14 | **MS. AGUIAR:**  MATTEL'S MOTION *IN LIMINE* NUMBER 13; I |
| 15 | THINK THAT WAS THE ONE MR. COREY REMINDED YOU ABOUT BEFORE; AND |
| 16 | THERE'S A SECOND ONE ACTUALLY, AN MGA MOTION *IN LIMINE* NUMBER |
| 17 | SIX. |
| 18 | **THE COURT:**  ON NUMBER 13, BERGSTEIN, TONNER ARE OUT. |
| 19 | IS THERE A DEBORAH MIDDLETON? |
| 20 | **MS. AGUIAR:**  YES. |
| 21 | **THE COURT:**  AND MGA'S NUMBER SIX. |
| 22 | **MR. ROTH:**  THIS IS THE ISSUE YOU MAY RECALL FROM OUR |
| 23 | EXTENDED HEARINGS PRIOR TO PHASE 1-A; IT WAS AN ISSUE THAT WAS |
| 24 | PUT OFF, REALLY, UNTIL 1-B, WHICH IS THE EXTENT TO WHICH PHASE |
| 25 | TWO TYPE EVIDENCE -- LET'S CALL IT MISAPPROPRIATION TRADE |

05:52
05:52
05:52
05:53
05:53

1    SECRET TYPE ALLEGATIONS -- COULD BE INTRODUCED INTO THE PHASE

2    ONE TRIAL.   YOU'LL RECALL THAT THERE WAS A CONCLUSION THAT IT

3    WOULD NOT BE INTRODUCED INTO 1-A AND THAT THE ISSUE WOULD BE

4    PUT OFF UNTIL 1-B.   AND NOW, YOUR HONOR, WE WOULD LIKE TO

5    ADDRESS THAT ISSUE, IF YOUR HONOR IS PREPARED TO ADDRESS IT      05:53

6    NOW.

7             **THE COURT:**   HOW DOES THIS RELATE TO MGA'S NUMBER

8    NINE?

9             THAT'S A TRADE SECRET.   I SEE.   THANK YOU.

10            LET ME HEAR FROM THE PARTIES ON THIS.                   05:54

11            **MR. ROTH:**   JUST TO FRAME THE ISSUE, THE QUESTION IN

12   THE COPYRIGHT DAMAGES OR REMEDY CONTEXT IS 'WHAT IS THE AMOUNT

13   OF PROFIT GENERATED BY THE SALE OF BRATZ' -- OR POTENTIALLY

14   BRATZ RELATED PRODUCTS, DEPENDING ON HOW THE LIABILITY PHASE

15   GOES -- 'THAT IS ATTRIBUTABLE TO THE INFRINGEMENT OR INFRINGING  05:54

16   MATERIAL IN THE BRATZ DOLLS?'

17            SO THE QUESTION REALLY IS, 'WHAT ARE THE FACTORS THAT

18   GENERATE THAT PROFIT OTHER THAN CARTER BRYANT'S DRAWINGS AND

19   THE DESIGN THAT IS REFLECTED, TO THE EXTENT IT IS, IN THE

20   DOLLS?'                                                          05:55

21            WE BELIEVE THAT THERE IS NO BASIS IN THE CONTEXT OF

22   THAT QUESTION, OF THE FRAMEWORK OF ANSWERING THAT QUESTION, TO

23   PERMIT MATTEL TO OFFER EVIDENCE THAT SOMEHOW FACTORS THAT WERE

24   RELEVANT TO THE SUCCESS OF BRATZ DOLLS OTHER THAN, SAY,

25   MR. BRYANT'S DRAWINGS, WERE THE SUBJECT OF A POTENTIAL           05:55

1    MISAPPROPRIATION CLAIM OR TRADE SECRET CLAIM THAT WE THINK IS

2    PROBABLY LODGED IN PHASE TWO.

3            TO MAKE THIS MORE CONCRETE, THERE ARE LOTS OF CASES

4    -- FIRST OF ALL, THERE'S NO CASE THAT EITHER SIDE POINTS TO

5    THAT PERMITS SUCH TESTIMONY TO BE USED IN THE CONTEXT OF THE        05:55

6    APPORTIONMENT ANALYSIS.

7            WHERE YOU HAVE, FOR INSTANCE, A THIRD PARTY'S

8    CREATIVE INPUT INTO A PRODUCT -- NOT SOMETHING THAT THE

9    DEFENDANT IS RESPONSIBLE FOR -- THE FACT THAT CREATIVE ELEMENT

10   CAME FROM A THIRD PARTY IS NOT RELEVANT TO THE APPORTIONMENT        05:56

11   ANALYSIS.  THE FACT THAT A NONPROTECTABLE ELEMENT FROM THE

12   PLAINTIFF GOES TOWARD EXPLAINING THE SUCCESS AND PROFITS OF THE

13   DOLL.  AGAIN, THAT'S NOT RELEVANT TO THE APPORTIONMENT

14   ANALYSIS.

15           THE ONLY THING THAT THIS PROCESS IS TRYING TO              05:56

16   CONCLUDE IS 'WHAT ARE THE PROFITS ATTRIBUTABLE TO THE

17   INFRINGEMENT?'  NOT WHERE THE OTHER FACTORS CAME FROM.  AND IF

18   WE GO DOWN THE LINE OF ALLOWING IN CLAIMS OF TRADE SECRET THEFT

19   OR MISAPPROPRIATION OR TAKING EMPLOYEES, WE'RE GETTING OFF INTO

20   EVIDENCE THAT HAS NOTHING TO DO AND REALLY NO PART IN THE          05:57

21   APPORTIONMENT ANALYSIS.

22           AS WE'VE INDICATED IN OUR PAPERS, THERE IS A SEPARATE

23   PHASE, A PHASE TWO IN THIS CASE, WHERE THOSE CLAIMS, TO THE

24   EXTENT THEY ARE COGNIZABLE, WILL BE LITIGATED.

25           **THE COURT:**  I SEE BOTH SIDES OF THIS.  I SEE YOUR      05:57

1    ARGUMENT.  LET ME HEAR FROM MATTEL.

2        **MR. ZELLER:**  THE COURT HAS PREVIOUSLY INDICATED ON A

3    COUPLE OF OCCASIONS THAT IN THE EVENT THEY START RAISING POINTS

4    CLAIMING THAT, 'WELL, NO, THE SUCCESS OF BRATZ HAS NOTHING TO

5    DO WITH THE APPEARANCE OF THE DOLL BUT IT'S ALL OUR BRILLIANT          05:57

6    MARKETING,' WE'RE ENTITLED TO RESPOND TO THAT.  THAT IS A

7    MATTER OF FAIRNESS AND THAT'S A MATTER OF FACTUAL TRUTH.

8        MR. ROTH PARSES THIS SO FINELY AS TO BASICALLY SAY

9    THAT MGA SHOULD BE ALLOWED TO TELL THE JURY BASICALLY A

10   FALSEHOOD; THAT THIS CAME FROM THEM; THAT THIS IS WHAT DRIVES          05:58

11   IT; DON'T PUNISH US BECAUSE WE ARE THE ONES WHO EXECUTED THIS

12   IN SUCH A FABULOUS FASHION.

13       SO, I MEAN, THIS IS MORE THAN JUST PARSING THINGS IN

14   SOME FINE LEGAL WAY.  THIS IS A MATTER OF FUNDAMENTAL TRUTH

15   AND, REALLY, THAT THE JURY SHOULD KNOW WHAT THE FACTS ARE.  MGA        05:58

16   HAS ITS CHOICES HERE.  BUT WHAT IT CERTAINLY CANNOT BE ALLOWED

17   TO DO IS TELL A VERSION OF THE EVENTS THAT THEY WANT TO TELL

18   THE JURY AND THEN BASICALLY SHUT US UP AND SAY, 'WELL, GUESS

19   WHERE THAT CAME FROM, THAT WAS STOLE FROM MATTEL.'

20       **THE COURT:**  I THINK I DO UNDERSTAND YOUR ARGUMENT.             05:58

21       THE CONCERN THAT I HAVE IS SCOPE, AND I AM VERY

22   CONCERNED ABOUT OPENING UP, BASICALLY IMPORTING PHASE TWO INTO

23   PHASE 1-B.  I UNDERSTAND THAT DEPENDING ON WHAT MGA DOES OR

24   DOES NOT DO WITH APPORTIONMENT -- AND IT'S NOT CLEAR EXACTLY

25   HOW FAR THIS GOES OR HOW FAR THEY WANT TO GO WITH IT -- I CAN         05:59

1  SEE TH EROTICALLY ISSUES THAT COULD BE RAISED BY MGA THAT, OUT

2  OF FAIRNESS, TO GIVE A CLEAR PICTURE, THAT MATTEL WOULD HAVE

3  THE RIGHT TO REBUT WITH INTRODUCING EVIDENCE THAT RIGHT NOW

4  WE'RE PRESUMING IS GOING TO BE RESERVED FOR PHASE TWO, ASSUMING

5  THERE IS A PHASE TWO.                                          05:59

6        BUT THE CONCERN I HAVE IS THE SCOPE OF WHERE THAT

7  WOULD GO.

8        **MR. ROTH:**  AGAIN, I THINK MR. ZELLER HAS FRAMED THE

9  QUESTION IMPROPERLY.  IT'S NOT A MATTER OF WHO IT COMES FROM.

10  IT DOESN'T MATTER WHO IT COMES FROM.                          05:59

11        THE QUESTION IS 'WHAT IS THE PROFITABLE ATTRIBUTABLE

12  TO THE INFRINGEMENT, VERSUS EVERY OTHER FACTOR, REGARDLESS OF

13  WHERE THOSE FACTORS CAME FROM.'

14        WE DON'T HAVE TO PROVE THAT WE'RE RESPONSIBLE FOR IT.

15  ALL WE HAVE TO PROVE IS THAT IT'S NOT THE INFRINGEMENT.  THAT'S  06:00

16  THE QUESTION.  SO I THINK, WITH ALL DUE RESPECT, MR. ZELLER IS

17  IMPROPERLY FRAMING THE QUESTION THAT NEEDS TO BE ANSWERED IN

18  THIS PHASE.

19        **THE COURT:**  MR. ZELLER?

20        **MR. ZELLER:**  YOUR HONOR, LOOK AT IT THIS WAY,         06:00

21  RESPECTFULLY.  IT'S IMPEACHMENT.  IF SOMEONE WANTS TO GET UP

22  THERE AND SAY IT'S OUR BRILLIANT MARKETING, WE SHOULD BE

23  ENTITLED TO IMPEACH THE PERSON AND COMMENT ON THEIR CREDIBILITY

24  OF HAVING BASICALLY COUNTING SOMETHING THAT THEY STARTED.

25        SO I UNDERSTAND THE COURT'S --                          06:00

1      **THE COURT:**  THAT ALMOST HAS A TINGE OF THE VERY

2  'MATTEL BASHING' THAT I WAS SO HARD ON ON MGA IN THE FIRST

3  PHASE.  I DON'T WANT THIS TO TURN INTO MGA BASHING.

4      **MR. ZELLER:**  I COMPLETELY AGREE, YOUR HONOR, AND THE

5  COURT'S COMMENTS ABOUT SCOPE, I THINK ARE REALLY THE RIGHT   06:01

6  ONES.  OBVIOUSLY, THE COURT WILL HAVE CONTROL OVER THAT.  AND

7  ALSO, WE ONLY HAVE 12 HOURS; SO THE MORE TIME WE WERE TO SPEND

8  ON SOMETHING LIKE THIS, WE'RE HURTING OURSELVES; SO I THINK

9  THAT AS A PRACTICAL MATTER, THE COURT WILL FIND THAT THE SCOPE

10  CAN BE MANAGED FAIRLY READILY.   06:01

11      AND I'M ABSOLUTELY MINDFUL OF THE --

12      **THE COURT:**  BUT ADDRESS MR. ROTH'S POINT, BECAUSE

13  IT'S A GOOD ONE.  EVEN IF THIS DID COME FROM MATTEL, EVEN IF

14  THIS DID COME FROM A STOLEN TRADE SECRET, WHATEVER IT IS, IF

15  IT'S NOT ACCOUNTABLE TO THE INFRINGED COPYRIGHTS, OR NOT   06:01

16  DERIVATIVE OR RESULTING FROM THE INFRINGED COPYRIGHT, THEN IT

17  DOESN'T COME IN AS PART OF THE COPYRIGHT DAMAGES.

18      **MR. ZELLER:**  YES.  LET ME ADDRESS A COUPLE OF POINTS,

19  YOUR HONOR.

20      AS A PRELIMINARY MATTER, WE INTEND TO ARGUE THAT   06:01

21  THERE SHOULD BE NO APPORTIONMENT PERIOD; SO THE COURT MAY NOT

22  EVEN HAVE TO REACH THIS ISSUE IN TERMS OF 'HOW CAN MATTEL

23  RESPOND TO APPORTIONMENT ISSUES.'

24      NUMBER TWO, IN FACT, AND WE MAY BE GETTING A LITTLE

25  AHEAD OF OURSELVES ON SOME OF THIS, BECAUSE THE COURT, AS I'M   06:02

1   SURE IS AWARE, THAT UNCLEAN HANDS IS ITSELF A RESPONSE TO

2   EQUITABLE DEFENSES SUCH AS LACHES AND THE OTHER EQUITABLE

3   DEFENSES THAT'S MGA WANTS TO RAISE; SO TO THE EXTENT WE START

4   GETTING INTO THOSE VERY ISSUES IN FRONT OF THE JURY, THEN THAT

5   CERTAINLY IS RELEVANT TO THOSE MATTERS.                                    06:02

6           AND, AGAIN, OBVIOUSLY THE COURT HAS NOT GOTTEN TO

7   THAT RULING YET, SO I DON'T WANT TO JUMP TOO FORWARD AHEAD.

8           INSOFAR AS IT GOES TO THE APPORTIONMENT ISSUE, EVEN

9   ASSUMING WE GET TO IT, AGAIN, IT'S NOT NECESSARILY THAT IT HAS

10  TO BE RELATED JUST TO APPORTIONMENT; IT'S AS A MATTER OF                   06:02

11  CREDIBILITY AND IMPEACHMENT, THEY ARE GOING TO SAY IT IS OUR

12  BRILLIANT MARKETING.

13          THAT WILL NOT BE A TRUE STATEMENT.  IT IS NOT THEIR

14  BRILLIANT MARKETING.  THEY TOOK IT FROM MATTEL.  AND SO WHILE

15  ONE COULD SAY IN A VERY NARROW, TECHNICAL WAY, THAT IT DOESN'T            06:03

16  MATTER WHAT THE SOURCE OF IT IS, FOR PURPOSES OF APPORTIONMENT,

17  THEIR STATEMENTS TOUTING THEIR ABILITIES, AS THEY DID

18  THROUGHOUT PHASE 1-A, IT'S THEIR RESPONSE, AND A TRUTHFUL

19  RESPONSE TO IT IS:  THAT'S NOT YOU.

20          IT'S IMPEACHMENT; IT GOES RIGHT TO THEIR CREDIBILITY.             06:03

21      **MR. ROTH:**  YOUR HONOR, AGAIN, HE'S ATTEMPTING TO

22  CHANGE THE QUESTION THAT IS GOING TO BE ANSWERED IN THIS PHASE.

23          AS I THINK I FRAMED IT PROPERLY, THE QUESTION HERE IN

24  THE APPORTIONMENT CONTEXT IS 'WHAT PROFITS ARE ATTRIBUTABLE TO

25  THE INFRINGEMENT, VERSUS EVERYTHING ELSE.'  AND IT DOESN'T                06:03

1    MATTER WHERE THE 'EVERYTHING ELSE' CAME FROM.

2         AND WHERE THE 'EVERYTHING ELSE' CAME FROM IS GOING TO

3    GET US DOWN A 403 HOLE THAT'S IRRELEVANT TO THE DAMAGES

4    CALCULATION, AND WE, FRANKLY, THINK SHOULD NOT BE PART OF THE

5    1-B TRIAL.                                                    06:04

6         **THE COURT:**  I'M GOING TO HAVE TO TAKE THIS ONE UNDER

7    SUBMISSION.  I UNDERSTAND YOUR RESPECTIVE ARGUMENTS, I THINK,

8    AND I WILL READ THE MOTION AND THE OPPOSITION AND THE REPLY,

9    AND I WILL CIRCLE BACK TO IT.  THIS IS THE ONE I MISSED.

10        THE OTHER ONE I'D LIKE TO HEAR ARGUMENT ON IS THE         06:04

11   MIDDLETON EXPERT REPORT.

12        **MR. NOLAN:**  BEFORE YOU GO OFF TO THIS NEXT ONE, THE

13   ONLY OTHER POINT I WOULD SUPPLEMENT ON THIS LAST DISCUSSION.

14   SCOPE, I THINK, IS ALSO REFERRED TO AS -- I THINK IF WE'RE

15   GOING TO BREAK DOWN THE BARRIERS BETWEEN PHASE TWO AND PHASE   06:04

16   1-B, THIS RAISES A POTENTIAL, VERY SERIOUS SEVENTH AMENDMENT

17   ISSUE THAT WOULD BE ADDRESSED LATER ON.  IF ALL OF A SUDDEN

18   THIS INFORMATION AND THIS EFFORT BY MR. ZELLER IN A CLOSING

19   ARGUMENT FORMAT, TO SAY EVERYTHING WE DID WAS STOLEN FROM

20   MATTEL, SIMPLY GETS OLD, NUMBER ONE.  NUMBER TWO, IT'S NOT     06:05

21   TRUE.  AND, THREE, IF THAT'S THE WAY THIS IS GOING TO BE TRIED

22   IN 1-B, YOUR HONOR, WE'RE JUST GOING TO HAVE A LOT OF ISSUES

23   WITH PHASE TWO.  AND I'LL SUBMIT ON THAT.

24        **THE COURT:**  VERY WELL.

25        LET ME HEAR ON THE MIDDLETON REPORT; THIS IS THE          06:05

1    OTHER ONE I SKIPPED OVER.

2         MR. COREY:  WITH RESPECT TO MS. MIDDLETON, WHAT SHE

3    IS, REALLY, IS A FACT WITNESS DRESSED UP AS AN EXPERT, AND

4    SHE'S AN MGA EMPLOYEE, AND SHE'S BEING OFFERED TO RENDER A

5    COUPLE OF OPINIONS THAT REALLY, IN MATTEL'S OPINION, JUST GO TO          06:05

6    THE PROVINCE OF THE JURY AS TO DECIDE WHETHER SPECIFICALLY SOME

7    OF THE PACKAGING ART ON THE BRATZ PRODUCTS AFTER 2003 LOOKED

8    LIKE CARTER BRYANT'S DRAWINGS.

9         I THINK, AT BEST, IT'S SOMETHING THE JURY NEEDS TO

10   DECIDE.  AT WORST, I'M AFRAID THE COURT IS GOING TO -- MGA IS          06:06

11   ASKING THE COURT TO DRESS THE FACT WITNESS UP INTO AN EXPERT,

12   AND I THINK THAT WILL IMPROPERLY TAINT HER TESTIMONY.

13        THE COURT:  LET ME ASK YOU THIS.

14        DO YOU HAVE AN OBJECTION TO HER TESTIFYING AS A FACT

15   WITNESS PURSUANT TO THESE ITEMS?          06:06

16        OBVIOUSLY, IT WOULD HAVE TO BE REGEARED IN TERMS OF

17   HOW HER TESTIMONY CAME OUT AS A FACT WITNESS, AS OPPOSED TO AN

18   EXPERT OPINION.

19        MR. COREY:  NO, NOT AT ALL.  SHE'S AN MGA EMPLOYEE.

20   SHE WORKED ON PACKAGING ART AFTER 2003.  IF THEY WANT TO BRING          06:06

21   HER IN AS A FACT WITNESS, SHE WOULD BE TREATED LIKE ANY OTHER

22   FACT WITNESS.

23        THE COURT:  LET ME HEAR FROM MGA.

24        MR. HANSEN:  YOUR HONOR, THIS IS DAVID HANSEN.  IT'S

25   MY FIRST ARGUMENT BEFORE YOU, SO YOU'RE NOT FAMILIAR WITH ME.          06:07

1        ON MS. MIDDLETON, I'M GLAD TO HEAR THEY DON'T OBJECT

2   TO THE FACT WITNESS PART, BECAUSE SHE DOES HAVE A LOT TO SAY IN

3   THAT AREA.  SHE WAS HEAD OF THE CHARACTER ART PACKAGING ISSUES

4   FOR MGA, THAT DEPARTMENT.

5        THE ISSUE GOES DIRECTLY, AS THEY MENTIONED BEFORE, TO   06:07

6   THE DIRECT INFRINGEMENT OF CERTAIN PRODUCTS TO THE EXTENT IT

7   HAS THE IMAGES ON THEM.  THERE'S NOTHING WRONG -- I THINK THE

8   CASES IN OUR PAPERS SHOW -- THERE'S NOTHING WRONG WITH USING AN

9   EMPLOYEE AS A FACT WITNESS AS WELL AS AN EXPERT WITNESS.  AND

10  MS. MIDDLETON, SHE HAS A DEGREE IN FINE ARTS.  SHE SPENT A LOT   06:07

11  OF TIME IN THE INDUSTRY, AND SHE PARTICULARLY WORKED AT AN

12  AGENCY DOING CHARACTER ART BEFORE SHE CAME TO MGA.

13       SO I THINK AS A BASIC MATTER, SHE WOULD SATISFY THE

14  STANDARD FOR OFFERING EXPERT TESTIMONY ON THIS ISSUE THAT WOULD

15  HELP THE JURY IN DECIDING WHAT IS ADMITTEDLY A RELEVANT ISSUE.   06:08

16  AND FRANKLY, SORT OF TO MS. AGUIAR'S POINTS BEFORE, IN TERMS OF

17  -- SHE IS THE ART EXPERT REBUTTAL OF THEIR EXPERT, LOETZ; SO

18  REALLY, ON THE PACKAGE AREA, SHE WOULD BE DIRECTLY RESPONSIVE

19  TO MR. LOETZ'S TESTIMONY.  FRANKLY, SHE HAS MORE EXPERTISE IN

20  THE AREA OF PACKAGE ARTS THAN MR. LOETZ DOES.   06:08

21       SO I GUESS THE ANSWER WOULD BE TO THE EXTENT THEY

22  WANT TO BOUNCE MIDDLETON ON THE PACKAGE ARTS, YOU SHOULD ALSO

23  BOUNCE LOETZ.

24       **THE COURT:**  I APPRECIATE THAT, MR. HANSEN.

25       ANYTHING FURTHER ON THIS?   06:08

1          **MR. COREY:**  MS. MIDDLETON IS ACTUALLY NOT AS

2    QUALIFIED AS MR. LOETZ, AND WHAT SHE DOES IS -- WE CAN ADDRESS

3    THE CREDIBILITY OF HER QUALIFICATIONS A LIT BIT LATER, IF WE

4    GET TO THAT POINT.  BUT WHAT SHE REALLY DOES IS SHE SAYS THAT

5    THIS PACKAGING ART IS NOT SUBSTANTIALLY SIMILAR TO                    06:09

6    CARTER BRYANT'S DRAWINGS, AND IT REALLY IS NOT MORE

7    ANALYTICALLY SOUND THAN THAT.

8          IF THE COURT WERE TO TAKE A MOMENT AND LOOK AT EITHER

9    THE INITIAL REPORT THAT SHE OFFERED OR HER REBUTTAL REPORT, IT

10   DOESN'T GET MUCH BEYOND THAT.  IT'S NOT THE SAME KIND OF          06:09

11   ANALYSIS THAT MR. LOETZ DOES WHERE THERE'S SOME STANDARDS BEING

12   APPLIED.

13         **THE COURT:**  WELL, I'LL TAKE A LOOK AT THOSE REPORTS.

14         SO THERE ARE THREE MATTERS THAT I NEED TO HAVE.  I

15   APOLOGIZE THAT I WON'T HAVE THOSE FOR YOU UNTIL WEDNESDAY        06:09

16   MORNING.  BUT I TRUST YOU'LL BE ABLE TO WORK YOUR OPENING

17   STATEMENTS AND YOUR FIRST DAY OF TESTIMONY AROUND THAT.

18         MR. QUINN?

19         **MR. QUINN:**  YES, YOUR HONOR.

20         **THE COURT:**  MR. NOLAN?                                     06:09

21         **MR. NOLAN:**  YES, YOUR HONOR.  WE CAN.

22         **MR. HANSEN:**  I APOLOGIZE, I MISSED THE ONE IN

23   CONNECTION WITH THE COURT'S COPYRIGHT SCOPE RULING.

24         CAN YOU GIVE US ANY INSIGHT AS TO -- YOU MENTIONED

25   THAT YOU HAVE LOOKED AT IT AND THAT IT'S IMPORTANT TO FILTER     06:10

1    OUT UNPROTECTABLE ELEMENTS WITH RESPECT TO THE ART WORK.

2         THE ISSUE I WAS NOT CERTAIN ON IS WHO'S ACTUALLY

3    GOING TO DO THE FILTERING?  MAYBE I MISSED THAT.  I APOLOGIZE

4    IF YOU'VE ALREADY SAID.

5         **THE COURT:**  YOU DIDN'T MISS ANYTHING.                    06:10

6         THAT'S GOING TO BE -- THE INSTRUCTION ON THAT WILL BE

7    GOING TO THE JURY FROM THE COURT.  I'M DECLINING MR. NOLAN'S

8    INVITATION TO DO A MINI-MARKMAN-TYPE HEARING ON THIS.  I DON'T

9    THINK IT'S NECESSARY.  I THINK THAT WE CAN HAVE THE ELEMENTS

10   ADDRESSED BY THE EXPERTS.  THIS IS PART OF MY REASONING FOR    06:10

11   ALLOWING THESE EXPERTS TO IDENTIFY WHAT THEY ARE GOING TO BE

12   IDENTIFYING.  I THINK THAT, COMBINED WITH THE INSTRUCTIONS TO

13   THE JURY IN TERMS OF WHAT IT IS THAT THEY ARE LOOKING AT WILL

14   BE SUFFICIENT.

15        I THINK A COMBINATION OF WELL-WORDED JURY               06:11

16   INSTRUCTIONS AND THE EVIDENCE THAT WE'RE GOING TO HAVE

17   PRESENTED IN THIS PHASE WILL BE A SUFFICIENT BASIS FOR THE JURY

18   TO DECIDE ONE WAY OR THE OTHER, AND THEN FOR THE COURT TO MAKE

19   THE LEGAL FINDINGS IT NEEDS TO MAKE.

20        **MR. NOLAN:**  LAST POINT, YOUR HONOR.                   06:11

21        I WAS GOING TO ASK, IN LIGHT OF THE ISSUES THAT THE

22   JURY WILL BE ADDRESSING IN PHASE 1-B, WOULD THE COURT ENTERTAIN

23   THE POSSIBILITY OF DOING A PRE-INSTRUCTION TO THE JURY WITH

24   RESPECT TO THE COPYRIGHT ISSUES THAT THEY WILL BE -- I THINK

25   BOTH SIDES HAVE SUBMITTED SOME VERSION OF THE FORM INSTRUCTION   06:11

1   WITH RESPECT TO COPYRIGHT PROTECTION.

2         BUT IT'S A UNIQUE ANIMAL, AND THIS JURY MAY NOT FULLY

3   APPRECIATE WHAT IT IS AND WHAT IT DOESN'T COVER.  FOR INSTANCE,

4   IDEAS.  AND IN LIGHT OF THE WAY 1-A WAS TRIED, AND IN LIGHT OF

5   SOME OF THE VERDICT FINDINGS THAT WERE INCLUDED IN THE VERDICT

6   FORM, WE WOULD REQUEST THE COURT TO TAKE A LOOK AT THAT.  MAYBE

7   IT NEEDS SLIGHT MODIFICATION.  PERHAPS WE COULD WORK TOMORROW

8   WITH MATTEL.  IT WOULD SIMPLY BE THAT ONE FORM INSTRUCTION THAT

9   MIGHT BE READ BEFORE WE START OPENING STATEMENTS, AND IT COULD

10  HELP.

11         THE COURT:  WHAT ARE MATTEL'S THOUGHTS ON THAT?

12         MR. QUINN:  YOUR HONOR, I GUESS MY REACTION TO THAT

13  IS I DON'T REALLY SEE ANY REASON TO SINGLE OUT COPYRIGHT ISSUES

14  AND TREAT THEM ANY DIFFERENTLY.  I MEAN, JURORS ARE USED TO

15  HEARING A LOT OF CONCEPTS AND JURY INSTRUCTIONS AT THE END OF

16  THE CASE WHICH THEY HAVE NOT HAD EXPOSURE TO BEFORE.

17         OF COURSE, WE DON'T HAVE AN AGREED OR RULED UPON SET

18  OF INSTRUCTIONS AT THIS POINT, AND I DOUBT WE COULD HAVE THEM

19  BY WEDNESDAY, JUST AS A PRACTICAL MATTER.  BUT I'M WONDERING

20  WHETHER THAT DOESN'T GIVE UNDUE EMPHASIS TO SOME CONCEPTS THAT

21  WOULD BE INTRODUCED AT THE BEGINNING, AS OPPOSED TO THE BALANCE

22  OF THE INSTRUCTIONS THAT THEY WOULD HEAR FOR THE FIRST TIME AT

23  THE END.

24         I JUST DON'T SEE A REASON TO DO IT.

25         THE COURT:  WELL.  YOU KNOW, ONE THING WE DO, THE

1   COURT DOES, IN CRIMINAL CASES, AND SOME CIVIL CASES, IS PROVIDE

2   SOME GUIDANCE TO THE JURY AT LEAST AS TO WHAT THE ISSUES OR, IN

3   A CRIMINAL CASE, THE OFFENSES THAT ARE AT THE CORE OF THE CASE.

4   OFTEN, THE COURT READS THE INDICTMENT IN A CRIMINAL CASE.

5        I DO THINK MR. NOLAN'S SUGGESTION THAT WE PROVIDE                06:13

6   PERHAPS GREATER GUIDANCE TO THE JURY THAN THE COURT ALREADY

7   HAS -- I TOUCHED UPON IT VERY BRIEFLY ON THURSDAY WHEN I SENT

8   THE JURY HOME AFTER THEY RETURNED THE VERDICT.  BUT PERHAPS

9   THERE MIGHT BE SOME VALUE TO HAVING THE COURT PROVIDE SOME

10  OUTLINE.                                                            06:14

11       NOW, I SUPPOSE THAT'S THE PURPOSE OF OPENING

12  STATEMENTS, AND I'M GOING TO AFFORD BOTH OF YOU AN OPPORTUNITY

13  TO GIVE THOSE, AND PERHAPS THAT'S THE BETTER WAY OF DEALING

14  WITH THIS.  I'M SORT OF THINKING OUT LOUD NOW.

15       ANY THOUGHTS ABOUT THE COURT GIVING A TENTATIVE                06:14

16  OVERVIEW OF WHAT ISSUES ARE IN PLAY FOR PHASE 1-B?

17       **MR. QUINN:**  OFTEN, ESPECIALLY IN STATE COURT, BUT

18  SOMETIMES IN FEDERAL COURT TOO, THE JURY IS GIVEN SORT OF A

19  SHORT STATEMENT OF THE CASE:  THESE ARE THE CLAIMS, THIS IS

20  WHAT THE PLAINTIFF CONTENDS; THE DEFENDANT DENIES IT; THE          06:14

21  DEFENDANT HAS THE FOLLOWING AFFIRMATIVE DEFENSES...

22       WE COULD TRY TO WORK TOGETHER WITH THE FOLKS AT

23  SKADDEN AND SEE IF WE CAN COME UP WITH THE EQUIVALENT OF THAT

24  FOR THAT PHASE 1-B, IF THAT'S WHAT THE COURT HAS IN MIND.

25       **THE COURT:**  MR. NOLAN, WOULD THAT TO ADDRESS YOUR          06:14

1    CONCERN?

2              **MR. NOLAN:**  THE DEVIL IS IN THE DETAILS.

3              I THINK IT MIGHT.

4              WHAT I'M CONCERNED ABOUT IS WE CAME OFF OF EIGHT

5    WEEKS.  I THINK THE JURY WAS TIRED; IT WAS AN EMOTIONAL DAY FOR    06:15

6    EVERYBODY.  AND I JUST DON'T KNOW WHETHER OR NOT THEY REALLY

7    HAD A GRASP OF WHAT THE FUTURE LOOKS LIKE, OTHER THAN WHEN THEY

8    ARE GOING TO GET OUT OF PURGATORY, OR WHERE EVER THEY FEEL THEY

9    MAY BE.

10             **THE COURT:**  IF YOU AND MATTEL CAN COME UP WITH      06:15

11   SOMETHING THAT YOU ALL AGREE ON, I'LL READ IT.  IF YOU COME UP

12   WITH SOMETHING THAT YOU CAN CLOSELY AGREE WITH, I'LL TWEAK IT

13   AND WORK IT INTO SOMETHING THE COURT FEELS COMFORTABLE WITH.

14             I DO THINK THERE IS VALUE IN PROVIDING AN OVERVIEW

15   FROM THE COURT THAT IS A LITTLE MORE FORMAL, A LITTLE MORE       06:15

16   DETAILED THAN WHAT I PROVIDED ON THURSDAY.

17             BUT I ALSO AGREE WITH MR. QUINN THAT PERHAPS A FULL-

18   BLOWN INSTRUCTION ON COPYRIGHT INFRINGEMENT MIGHT BE A BIT MUCH

19   AND MIGHT PUT UNDUE EMPHASIS ON ONE INSTRUCTION VERSUS ANOTHER;

20   SO SOMETHING SHORT OF THAT, BUT WITH ENOUGH DETAIL TO PROVIDE    06:16

21   THE JURORS WITH A SENSE OF WHAT IT IS THAT THEY'RE GOING TO

22   HAVE TO BE DECIDING AT THE END OF THIS PHASE IS IN ORDER.

23             SPEAKING OF JURY INSTRUCTIONS, AS YOU KNOW, WE'RE

24   GOING TO HAVE TRIAL THIS WEEK; I'LL BE ATTENDING THE NINTH

25   CIRCUIT CONFERENCE NEXT WEEK; THERE WILL BE DOWN TIME DURING     06:16

```
 1   THAT CONFERENCE, AND I WOULD LIKE TO BE WORKING ON THE JURY
 2   INSTRUCTIONS DURING THAT DOWN TIME; SO WHAT I WOULD LIKE
 3   COUNSEL TO DO ON BOTH SIDES IS, BY THE END OF THIS WEEK, BY
 4   FRIDAY, BEFORE THE COURT LEAVES, SO 6:00 OR 7:00 IN THE
 5   EVENING, I WILL WANT TO HAVE THE SAME TYPE OF BREAKDOWN IN THE    06:16
 6   BINDERS OF THE PROPOSED JURY INSTRUCTIONS, THE JOINTLY AGREED
 7   INSTRUCTIONS, THE OBJECTIONS, JUST AS YOU DID BEFORE; WHAT YOU
 8   DID THE LAST TIME WAS JUSTIFY PERFECT; SO THAT I CAN BE
 9   REVIEWING THOSE WHEN I GET BACK FROM THE NINTH CIRCUIT
10   CONFERENCE, I WILL BE ABLE TO PROCEED WITH A CHARGING           06:17
11   INSTRUCTION, AND WE CAN HAVE THAT HOPEFULLY WORKED OUT ON THAT
12   MONDAY, AUGUST 4TH.  SO GOING INTO THE LAST WEEK OR TWO OF
13   TRIAL, EVERYONE WILL KNOW WHAT THEIR FINAL JURY INSTRUCTIONS
14   ARE.
15          IS THAT SOMETHING THAT WILL BE MANAGEABLE TO BOTH        06:17
16   SIDES?
17          MR. QUINN:  YES, YOUR HONOR.
18          MR. NOLAN:  WE'LL WORK ON IT; AND THAT INCLUDES, I
19   GUESS, THE VERDICT FORM.
20          THE COURT:  VERY GOOD.  YES, THE VERDICT FORM AS         06:17
21   WELL.
22          LAW CLERK:  COULD WE TAKE FIVE MINUTES FOR THE
23   BENEFIT OF THE COURT REPORTER?
24          THE COURT:  ABSOLUTELY.
25          I STILL HAVE MY RULING ON THE AFFIRMATIVE DEFENSES TO    06:17
```

1    GIVE.  LET'S TAKE A FIVE-MINUTE BREAK.

2         I'M GOING TO HANG UP AND I WILL CALL BACK IN FIVE

3    MINUTES.  ACCORDING TO MY CLOCK NOW, IT'S 6:17 NOW.  AT 6:25

4    I'LL CALL BACK IN.

5         (WHEREUPON A BRIEF RECESS WAS HELD.)                    06:27

6         **THE COURT:**  OKAY.  I'M BACK.

7         THE LAST ISSUE I WANTED TO RULE ON TODAY WAS THE

8    ISSUE WITH RESPECT TO THE AFFIRMATIVE DEFENSES AND LACHES, IN

9    PARTICULAR.  AS I INDICATED, I'VE WRITTEN SOMETHING UP ON THIS,

10   SO I'LL PUT THIS ON THE RECORD NOW AND I WILL ISSUE A MORE      06:29

11   FLUSHED-OUT RULING LATER THIS WEEK.

12        GOING OVER MY NOTES FROM FRIDAY, THERE WERE THREE

13   ISSUES THAT NEED TO BE ADDRESSED.  FIRST, WHETHER THERE IS, AS

14   MGA CONTENDS, A PRESUMPTION THAT LACHES APPLIES WHEN, AS HERE,

15   A COPYRIGHT CLAIM WOULD BE TIME BARRED BUT FOR THE RELATION     06:29

16   BACK DOCTRINE;

17        SECOND, WHETHER THE COURT SHOULD GRANT MATTEL'S

18   SUMMARY JUDGMENT MOTION AS TO MGA'S LACHES DEFENSE;

19        AND THIRD, WHETHER THE DEFENSE IS LEGAL AND MUST BE

20   PRESENTED TO A JURY, OR EQUITABLE, AND THEREFORE SHOULD BE      06:30

21   DECIDED BY THE COURT, PERHAPS OUTSIDE THE PRESENCE OF THE JURY.

22        AS TO THE FIRST ISSUE, WHETHER THERE IS A PRESUMPTION

23   THAT LACHES APPLIES WHEN, AS HERE, A COPYRIGHT CLAIM WOULD BE

24   TIME BARRED BUT FOR THE RELATION-BACK DOCTRINE.  ARGUMENT IS

25   CLEARLY BASED ON THE JARROW FORMULAS CASE, WHICH AT FOOTNOTE 27  06:30

1   OF THE OPPOSITION TO MATTEL'S MOTION FOR PARTIAL SUMMARY

2   JUDGMENT, MGA CONTENDS THAT NOTWITHSTANDING ANY CONTENTION THAT

3   MATTEL'S COPYRIGHT CLAIM IS TIMELY BASED ON THE RELATION-BACK

4   DOCTRINE, THE PRESUMPTION THAT CLAIMS FILED OUTSIDE THE

5   LIMITATIONS ARE TIME BARRED.                                    06:30

6         I THINK THAT MGA IS READING THE JARROW FORMULAS CASE

7   A LITTLE TOO BROADLY.  THAT CASE DID NOT CONSIDER SPECIFICALLY

8   HOW LACHES SHOULD APPLY WHEN A CLAIM THAT WAS OTHERWISE OUTSIDE

9   OF THE LIMITATIONS PERIOD WAS SAVED BY THE RELATIONS-BACK

10  DOCTRINE.                                                       06:31

11        THEREFORE, ITS DISCUSSION REGARDING A REVERSAL OF THE

12  PRESUMPTION OF NON APPLICABILITY OF LACHES IS OF ONLY MARGINAL

13  RELEVANCE.  THE COURT IN ITS OWN RESEARCH CANNOT LOCATE ANY

14  AUTHORITY THAT SUGGESTS THAT A RELATED-BACK CLAIM WOULD BE

15  ESPECIALLY VULNERABLE TO THE DEFENSE OF LACHES.  TO THE         06:31

16  CONTRARY, IN FACT, TO THE EXTENT THAT SOME AUTHORITY IS FOUND,

17  IT SUGGESTS THAT IT DOES NOT.

18        ONE CASE THAT COMES TO MIND IS THE DUPONT VERSUS

19  PHYLLIS CASE, A DISTRICT COURT OF DELAWARE CASE IN 1985, NOTING

20  THAT 'THE APPLICABILITY OF LACHES DID NOT NEED TO BE ADDRESSED  06:31

21  IN LIGHT OF THE FACT THAT THE PROPOSED COMPLAINT RELATED BACK

22  TO THE ORIGINAL PLEADING PURSUANT TO RULE 15-C.'  THE LANGUAGE

23  OF THE RULE ALLOWING RELATIONS BACK IS IN ACCORD, BECAUSE IT

24  SUGGESTS THAT AN AMENDMENT THAT RELATES BACK SHOULD BE TREATED

25  AS IF IT WAS FILED ON THE DATE OF THE ORIGINAL PLEADING.        06:32

1        THEREFORE, IN THE ABSENCE OF PERSUASIVE AUTHORITY,

2   THE COURT IS NOT WILLING TO APPLY THE REVERSE PRESUMPTION

3   SUGGESTED BY MGA.  INSTEAD, THE COURT WILL CONTINUE TO BE

4   GUIDED BY THE TOUCHSTONES OF THE DOCTRINE OF LACHES,

5   UNREASONABLE DELAY AND RESULTING PREJUDICE.                          06:32

6        AS FOR THE SECOND ISSUE, WHETHER THE COURT SHOULD

7   GRANT MATTEL'S SUMMARY JUDGMENT MOTION AS TO MGA'S LACHES

8   DEFENSE, THE COURT PREVIOUSLY DEFERRED, AS IT DOES NOW, THE

9   MOTION FOR SUMMARY JUDGMENT ON THE REMAINING AFFIRMATIVE

10  DEFENSES, INCLUDING LACHES.  THE COURT WILL CONSIDER THOSE AT       06:32

11  THE CLOSE OF PHASE 1-B OF THE TRIAL, AS SET FORTH BELOW.

12       AS FOR THE THIRD ISSUE, WHETHER THE DEFENSE IS LEGAL

13  AND IT MUST BE PRESENTED TO A JURY RATHER THAN TO THE COURT OR

14  EQUITABLE AND THEREFORE SHOULD BE DECIDED BY THE COURT, MGA

15  CONTENDED ON FRIDAY'S HEARING THAT IT HAD PREVIOUSLY BRIEFED        06:33

16  THIS ISSUE, CITING THE HOFF CASE, HOFF VERSUS LEO FEIST, OUT OF

17  NEW YORK, A 1916 CASE.

18       MR. RUSSELL PRESSED THIS CASE, BUT IN REVIEWING THE

19  CASE OVER THE WEEKEND, IT APPEARS TO THE COURT THAT THIS IS NOT

20  A CASE THAT ADDRESSES THE DEFENSE OF LACHES.  IT DOES NOT          06:33

21  ADDRESS WHAT, IF ANY, AFFIRMATIVE DEFENSES TO A COPYRIGHT CLAIM

22  SHOULD BE PRESENTED TO A JURY.  IN FACT, THE CASE DOES NOT

23  INVOLVE A TRIAL BY JURY.  THE CASE WAS CITED IN

24  MGA'S OPPOSITION TO MATTEL'S MOTION FOR PARTIAL SUMMARY

25  JUDGMENT BEFORE AN ENTIRELY DIFFERENT PROPOSITION RELATING TO      06:33

1    THE MERITS OF THE LACHES DEFENSE.

2          THE DEFENSE OF LACHES TO A COPYRIGHT CLAIM IS CLEARLY

3    AN EQUITABLE DEFENSE.  THERE'S A NUMBER OF NINTH CIRCUIT CASES

4    IN 2000/2001, WHICH CLEARLY BEGIN THEIR ANALYSIS WITH A POINT

5    THAT LACHES AS APPLIED TO A COPYRIGHT CLAIM IS AN EQUITABLE      06:34

6    DEFENSE.  IT'S REFERRED THAT WAY IN THE CLING CASE; IN THE

7    JEWEL VERSUS SHANAHAN CASE; AND, TO A LESSER EXTENT, THE DAN

8    JACK VERSUS SONY CASE.

9          THE COURT PREVIOUSLY SUGGESTED THAT IT WAS INCLINED

10   TO SEEK AN ADVISORY JURY VERDICT ON THE AFFIRMATIVE DEFENSES.    06:34

11   HOWEVER, THE COURT IS NOW DISINCLINED TO DO SO BASED ON THE

12   RISK OF JURY CONFUSION THAT I ALLUDED TO EARLIER.

13         THE JURY NEEDS TO STAY FOCUSED ON THE RANGE OF ISSUES

14   THAT THEY ARE BEING ASKED TO DECIDE IN PHASE 1-B.

15         THEREFORE, THE COURT WILL LET THE PARTIES PRESENT TO       06:34

16   THE JURY EVIDENCE RELEVANT ONLY TO THE REMAINING CLAIMS AND THE

17   NON EQUITABLE DEFENSES THERETO.

18         AT THE CLOSE OF THE EVIDENCE, WHEN THE JURY RETIRES

19   TO DELIBERATE, THE COURT WILL HEAR ARGUMENT REGARDING WHETHER

20   AND TO WHAT EXTENT ADDITIONAL EVIDENCE RELEVANT TO THE           06:35

21   REMAINING AFFIRMATIVE DEFENSES MAY BE PRESENTED TO THE COURT,

22   AND THE COURT WILL THEREAFTER ISSUE ITS RULING ON THE

23   AFFIRMATIVE DEFENSES.

24         BASICALLY, WHAT THIS HAS THE EFFECT OF DOING IS --

25   IT'S CERTAINLY ALLOWING IN EVIDENCE RELATED TO THE CLAIM ON THE  06:35

1   STATUTE OF LIMITATIONS THAT THE COURT PRESERVED FOR THE JURY,

2   AND THAT IS THE FRAUDULENT CONCEALMENT ISSUE, WHICH GOES NOT

3   ONLY TO THE STATUTE OF LIMITATIONS DEFENSE, OF COURSE, BUT ALSO

4   TO A NUMBER OF THE OTHER EQUITABLE DEFENSES, SUCH AS LACHES

5   ITSELF AND WAIVER AND ESTOPPEL.                                    06:3⁣

6         BUT WHAT I'M NOT GOING TO DO IS ALLOW EVIDENCE THAT

7   GOES BEYOND THAT CLAIM IN BEFORE THIS JURY.  I AM CONCERNED

8   ABOUT THE CONFUSING EFFECT THAT MIGHT HAVE.  BUT AT THE SAME

9   TIME, TO ENSURE THAT MGA HAS AN OPPORTUNITY TO PRESENT ANY

10  EVIDENCE, NOTWITHSTANDING THE COURT'S PRIOR MOTIONS *IN LIMINE*    06:36

11  AND THE LIKE, TO GET THIS BEFORE THE COURT, I'LL GIVE LEAVE AT

12  THE END OF THE TRIAL TO INTRODUCE SUCH EVIDENCE TO THE COURT

13  ITSELF.

14        SO THAT'S WHERE I AM ON LACHES AND THE AFFIRMATIVE

15  DEFENSES.                                                          06:36

16        ANY QUESTIONS CONCERNING THE RULING?

17        **MR. NOLAN:**  FOR POINT OF CLARIFICATION, DO I

18  UNDERSTAND THAT IN 1-B, WE WILL BE ABLE TO INTRODUCE EVIDENCE

19  BEFORE THE JURY TO COUNTER THE EVIDENCE THAT WAS ALLOWED IN IN

20  1-A WITH RESPECT TO CONCEALMENT, AS WELL AS EVIDENCE WITH         06:36

21  RESPECT TO THE STATUTE OF LIMITATIONS?

22        **THE COURT:**  YES.  THE ISSUE OF FRAUDULENT -- THERE'S

23  TWO QUESTIONS THERE.  THE FIRST QUESTION, CERTAINLY, WITH

24  RESPECT TO FRAUDULENT CONCEALMENT, THAT COMES IN.  AND TO THE

25  EXTENT THAT WHAT MATTEL KNEW AND WHEN IS RELEVANT TO THE ISSUE     06:3⁣

1    OF FRAUDULENT CONCEALMENT, WHICH IS THEN, OF COURSE, ALL TIED

2    UP IN THE ISSUE OF STATUTE OF LIMITATIONS, THAT WILL BE

3    ADMISSIBLE.

4           **MR. NOLAN:**   I UNDERSTAND.

5           **THE COURT:**   DOES THAT MAKE SENSE?                    06:37

6           **MR. NOLAN:**   YES, YOUR HONOR.

7           **THE COURT:**   VERY WELL.

8           ANYTHING ELSE, FROM MGA'S PERSPECTIVE?

9           **MR. RUSSELL:**   YES, YOUR HONOR.   I JUST WANTED A

10   COUPLE OF POINTS OF CLARIFICATION, BECAUSE I'M AFRAID THAT,     06:37

11   PERHAPS, I WASN'T AS CLEAR AS I SHOULD HAVE BEEN TO THE COURT.

12   WHEN I WAS DISCUSSING THE HOSS CASE, I WAS DOING SO FOR THE

13   PURPOSE OF POINTING OUT THAT IS THE CASE FROM WHICH MOST COURTS

14   AGREE THE DOCTRINE OF LACHES COULD APPLY TO A COPYRIGHT CASE.

15          YOUR HONOR, WE CITED YOU TO A NUMBER OF CASES IN OUR     06:38

16   OPPOSITION TO MATTEL'S MOTION *IN LIMINE* NUMBER FOUR, INCLUDING

17   THE WESTINGHOUSE CASE, WHICH IS AT 106 F.3D 894, AS WELL AS THE

18   U.S. FIDELITY & GUARANTY CO. V. LEE, WHICH IS AN EASTERN

19   DISTRICT OF CALIFORNIA CASE, THAT HOLD THAT LACHES IS

20   APPROPRIATELY GIVEN TO A JURY IN INSTANCES, PARTICULARLY SUCH   06:39

21   AS HERE, WHERE LEGAL DEFENSES AND EQUITABLE DEFENSES HAVE

22   SIMILAR AND OVERLAPPING ISSUES.

23          SO I'D ASK THE COURT, IF IT WOULD NOT MIND, TO AT

24   LEAST TAKE ANOTHER LOOK THERE, BECAUSE I DIDN'T HAVE THOSE

25   CITES AVAILABLE TO ME WHEN WE HAD THE ARGUMENT LAST TIME, AND I  06:3

1    THINK IT'S IMPORTANT, GIVEN THE OVERLAPPING NATURE --

2         **THE COURT:**  OPPOSITION TO MATTEL'S MOTION *IN LIMINE*

3    NUMBER FOUR?

4         **MR. RUSSELL:**  YES, YOUR HONOR.

5         **THE COURT:**  THAT WAS NOT BEFORE THE COURT ON FRIDAY.    06:38

6    THAT WAS NOT WITH ME THIS WEEKEND, AND I CAN ONLY DO SO MUCH

7    THROUGH COMPUTER RESEARCH UP HERE IN LAKE ALMANOR; SO IT REALLY

8    WAS INCUMBENT UPON YOU, COUNSEL, TO PROVIDE THE COURT WITH WHAT

9    IT NEEDED TO RESOLVE THESE ISSUES.

10        **MR. RUSSELL:**  I APOLOGIZE, YOUR HONOR.  I HAD    06:39

11   MISTAKENLY THOUGHT THAT THIS SET OF ARGUMENTS WAS IN THE

12   SUMMARY JUDGMENT PAPERS, AND I WAS IN ERROR.  IT WAS

13   ACTUALLY --

14        **THE COURT:**  I SPENT A LONG TIME LOOKING THROUGH THAT

15   ENTIRE BINDER THAT MATTEL PROVIDED ME WITH THE SUMMARY JUDGMENT    06:39

16   PAPERS LOOKING FOR THIS VERY ARGUMENT, BECAUSE THAT'S WHAT YOU

17   SAID ON FRIDAY, AND I COULDN'T FIND IT.

18        **MR. RUSSELL:**  YOUR HONOR, I WAS WRONG AND I APOLOGIZE

19   FOR BEING WRONG, AND I AM CERTAINLY VERY REMORSEFUL THAT YOU

20   HAD TO SPEND THAT TIME, AND THAT'S WHY I WANTED TO CLARIFY THAT    06:39

21   I WAS IN ERROR.  IT WAS NOT AN ATTEMPT TO MAKE YOU SPEND TIME

22   THAT YOU SHOULDN'T HAVE, SO I APOLOGIZE FOR THAT.

23        **THE COURT:**  THERE'S A NUMBER OF THESE 2000 CASES THAT

24   I DID FIND, THOUGH.

25        WHAT YEAR WAS WESTINGHOUSE?    06:39

1          MR. RUSSELL: 1997.

2          THE COURT: WE'VE GOT SEVERAL CASES IN 2000,

3  BEGINNING WITH CLAY V. HALLMARK CARDS.  THERE'S EXTENSIVE

4  ANALYSIS OF LACHES IN A COPYRIGHT CLAIM, AND IT BEGAN ITS

5  ANALYSIS BY SAYING THAT IT'S AN EQUITABLE DEFENSE.          06:40

6          MR. RUSSELL:  IT IS TRUE THAT IT IS AN EQUITABLE

7  DEFENSE, AND ALL I'M NOTING IS THAT THERE ARE DECISIONS THAT GO

8  THE OTHER WAY.  WHEREAS HERE, THE FACTUAL PREDICATE FOR LACHES

9  IS INTERTWINED WITH OTHER DEFENSES THAT ARE GOING TO THE JURY.

10 SO YOUR HONOR IS, OF COURSE, CORRECT, AND I'M NOT CONTENDING    06:40

11 THAT IT WOULD NEVER BE AN EQUITABLE DEFENSE OR NEVER BE TRIED

12 OUTSIDE THE PRESENCE OF THE JURY, BUT RATHER, THERE ARE

13 CASES -- AND I WOULD SUBMIT, THIS IS ONE OF THEM -- WHERE

14 LACHES SHOULD BE TRIED TO THE JURY.

15         THE COURT:  WHEN I LOOK UP WESTINGHOUSE, WHAT AM I    06:40

16 GOING TO FIND?  AM I GOING TO FIND THE COURT SAYING THAT THE

17 COURT HAS DISCRETION TO SEND IT TO THE JURY, OR AM I GOING TO

18 FIND THE COURT SAYING THAT UNDER THESE CIRCUMSTANCES, I MUST

19 SEND IT TO THE JURY?

20         MR. RUSSELL:  YOU'RE GOING TO HAVE DISCRETION,       06:41

21 YOUR HONOR.  THERE'S NO QUESTION ABOUT THAT.

22         THE COURT:  VERY GOOD.

23         AT THIS POINT, I'M RULING AS I JUST INDICATED.

24         MR. RUSSELL:  YES, YOUR HONOR.  THANK YOU.

25         THE COURT:  ANYTHING FURTHER FROM MGA?               06:41

1        **MR. RUSSELL:**  NO, YOUR HONOR.

2        **THE COURT:**  VERY WELL.

3        **MS. AGUIAR:**  YOUR HONOR, NOTHING MORE ON THE POINT

4    THAT YOU WERE JUST DISCUSSING, BUT IF WE'RE AT THE END OF THE

5    CALL, I DID HAVE ONE OTHER MINOR POINT.                          06:41

6        WE RAISED THIS ISSUE ON FRIDAY.  THERE IS A DISCOVERY

7    DISPUTE THAT HAS ARISEN WITH REGARD TO EXHIBITS THEY WANT TO

8    INTRODUCE THROUGH ONE OF THEIR WITNESSES, FRANK KEISER.  SO I

9    GUESS AT THIS POINT, SINCE WE HAVE NOT GOTTEN THE MATERIALS

10   FROM MATTEL, I WOULD BE MAKING AN ORAL MOTION FOR LEAVE TO FILE  06:41

11   A MOTION TO PRECLUDE THEM FROM OFFERING THOSE EXHIBITS INTO

12   EVIDENCE, BECAUSE WE HAVE NOT BEEN PROVIDED WITH THOSE

13   EXHIBITS.

14       **THE COURT:**  HOLD THAT THOUGHT FOR JUST ONE MOMENT.

15       ANYTHING ELSE FROM MGA ON THE LACHES OR THE                  06:41

16   AFFIRMATIVE DEFENSES?

17       **MR. NOLAN:**  NO, YOUR HONOR.  WE'LL SUBMIT.

18       **THE COURT:**  WITH RESPECT TO MATTEL?

19       **MR. ZELLER:**  YES, YOUR HONOR.

20       ONE ISSUE, ONE POINT OF CLARIFICATION, THEN, IS THAT,        06:42

21   YOU KNOW, ON FRIDAY WE HAD RAISED THE POINT THAT -- SO THERE IS

22   NO CONFLICT AND THERE IS NO ISSUE CONCERNING THE UNDISPUTED

23   FACTS THAT THE COURT HAS ALREADY FOUND ON SUMMARY JUDGMENT--

24   IS THAT THEY SHOULD NOT BE ALLOWED TO PUT ON EVIDENCE OR ANY

25   ARGUMENT THAT MATTEL WAS ON NOTICE ANY TIME PRIOR TO JULY OF     06:43

1    2003.

2         THE COURT:  MR. ZELLER, I'VE THOUGHT ABOUT THIS A LOT

3    THIS WEEKEND.  THAT WOULD MAKE IT CLEANER.  NO QUESTION.  THAT

4    WOULD MAKE MY IN-COURT RULINGS EASIER TO MAKE.  BUT I DON'T

5    KNOW IF I CAN, AND THIS IS MY THINKING:                          06:42

6         I CAN SEE THE RELEVANCE OF WHAT MATTEL KNEW AND WHEN

7    AS A WAY OF REBUTTING THE INTENTIONAL OR DELIBERATE CONCEALMENT

8    ARGUMENT.

9         I UNDERSTAND THE CONCERN YOU EXPRESSED ON FRIDAY, BUT

10   I DON'T KNOW -- I CAN SEE HOW CERTAIN ARGUMENTS OR EVIDENCE      06:43

11   ABOUT WHAT MATTEL KNEW AT SOME OF THESE EARLIER STAGES

12   UNDERMINES MATTEL'S POSITION ABOUT DELIBERATE CONCEALMENT,

13   BASICALLY AS IMPEACHMENT.  ALONG THE SAME LINES THAT YOU WERE

14   SUGGESTING IN AN ENTIRELY DIFFERENT CONTEXT THAT SOME PHASE 2

15   EVIDENCE CONCERNS IMPEACHMENT, AND THEN 1-B ON OTHER ISSUES, I   06:43

16   THINK THIS MIGHT SERVE AS IMPEACHMENT IN THIS ISSUE.

17        IF YOU CARE TO ADDRESS THAT POINT, I WELCOME YOU TO

18   DO SO.

19        DO YOU UNDERSTAND WHAT I'M SAYING, THOUGH?  DO YOU

20   RECOGNIZE THE ARGUMENT THAT I AM GRAPPLING WITH?                 06:44

21        MR. ZELLER:  I DO, YOUR HONOR.  AND I THINK THAT,

22   NUMBER ONE, THE SITUATION IS DIFFERENT IN THE SENSE THAT THE

23   COURT HAS ALREADY MADE A SUMMARY JUDGMENT RULING; IT'S GOVERNED

24   BY CERTAIN STANDARDS.  AND CERTAINLY, THE FUNCTION OF A TRIAL

25   IS NOT TO COLLATERALLY ATTACK, BUT TO GET BACK WHAT IT IS THAT,  06:44

1   IF THEY HAD EVIDENCE, THEY WERE OBLIGATED TO COME FORWARD AND

2   ESTABLISH IN RESPONSE TO SUMMARY JUDGMENT.

3           **THE COURT:**  WHAT I FOUND, MR. ZELLER, THOUGH, IS THAT

4   THE EARLIER THE DATE FOR WHICH MATTEL HAD NOTICE FOR THE

5   PARTICULAR CLAIM THAT IS ALLEGED IN THIS CASE WAS A CERTAIN        06:44

6   DATE IN 2003.  I MEAN, THERE'S OTHER ARGUMENT ABOUT MATTEL

7   KNOWING OTHER THINGS AT EARLIER DATES THAT UNDERMINES MATTEL'S

8   POSITION ON DELIBERATE CONCEALMENT THAT DOESN'T NECESSARILY,

9   AND CAN'T AS A MATTER OF LAW AT THIS POINT, UNDERMINE THE

10  COURT'S FINDING WITH RESPECT TO THE STATUTE OF LIMITATIONS        06:45

11  ARGUMENT, IF THAT MAKES SENSE.

12          **MR. ZELLER:**  SURE.  I THINK I'M FOLLOWING.

13          BUT I GUESS THAT VERY POINT WOULD LEAD ME TO AN

14  OPPOSITE CONCLUSION IN THE SENSE THAT -- JUST TO TAKE AN

15  EXAMPLE, THE TOON TEENS INVESTIGATIONS FROM 2002, THE COURT HAS   06:45

16  ALREADY RULED AS A MATTER OF LAW THAT THOSE DID NOT PROVIDE

17  NOTICE.

18          HAVING THAT SORT OF THING DISCUSSED IN FRONT OF THE

19  JURY, YOU KNOW, NOT ONLY IS IT CLASSIC 403 AT A BARE MINIMUM,

20  BUT IT'S JUST NOT RELEVANT AT ALL.  AND THIS IS THE CONCERN --    06:45

21  THIS IS ACTUALLY THE ISSUE ABOUT NOTICE, AND IT GOES LESS TO A

22  NOTICE ISSUE, SUCH AS, WHEN DID MATTEL KNOW THAT CARTER BRYANT

23  WAS WORKING ON BRATZ WHEN EMPLOYED BY MATTEL OR HAVING BUSINESS

24  DEALINGS WITH MGA WHILE EMPLOYED BY MATTEL?  BECAUSE THAT'S,

25  OBVIOUSLY, THE ACTUAL RELEVANT ISSUE.                             06:46

1      WHAT I'M CONCERNED ABOUT IS, NOTWITHSTANDING THE

2   COURT'S SUMMARY JUDGMENT ORDER AND THE RULING THAT THE COURT

3   HAS ALREADY MADE, THAT WE'RE GOING TO GET INTO A WHOLE VARIETY

4   OF ISSUES ABOUT THAT THERE IS THE TOON TEENS INVESTIGATION AND

5   A NUMBER OF OTHER THINGS THAT DO NOT PROVIDE NOTICE, AND THE          06:46

6   COURT HAS ALREADY SAID DO NOT PROVIDE NOTICE.  BECAUSE IN THIS

7   CONTEXT, THE FRAUDULENT CONCEALMENT NOTICE THAT WE'RE TALKING

8   ABOUT IS THE SAME AS IT IS FOR STATUTE OF LIMITATIONS.  THERE'S

9   NO DIFFERENCE ON THAT STANDARD.

10      **THE COURT:**  WELL, YOU'RE GOING TO HAVE YOUR RELEVANCY     06:46

11   OBJECTIONS TO MAKE, AND IT'S GOING TO LARGELY DEPEND ON HOW THE

12   QUESTION IS ASKED.  I AM NOT IN A POSITION RIGHT NOW, I DON'T

13   THINK, TO CATEGORICALLY SAY THAT MGA IS PRECLUDED FROM GETTING

14   INTO THOSE DATES, DEPENDING ON HOW THE FRAUDULENT CONCEALMENT

15   COMES OUT.                                                           06:47

16      LET ME THINK ABOUT THIS SOME MORE.

17      LET ME HEAR FROM MGA ON THIS.

18      **MR. NOLAN:**  FRANKLY, IT'S BREATHTAKING TO ME TO

19   BELIEVE THAT WE COULD HAVE SAT THROUGH A SEVEN-WEEK TRIAL WHERE

20   MATTEL, DAY AFTER DAY, PUT UP EVIDENCE OF CONCEALMENT, ALL THE       06:47

21   WAY FROM START TO FINISH.  AND AT ALL TIMES, WE WERE TOLD, YOU

22   CAN RAISE IT IN 1-B; YOUR AFFIRMATIVE DEFENSES WILL BE IN 1-B

23   TO DEAL WITH THIS.  AND WHETHER OR NOT YOU CALL IT IMPEACHMENT

24   OR WHATEVER, YOUR HONOR, I BELIEVE THAT TO ALLOW MATTEL TO HAVE

25   PRESENTED THE EVIDENCE THAT THEY PRESENTED IN PHASE 1-A WITH         06:47

1   RESPECT TO CONCEALMENT, INCLUDING TOON TEENS --

2        LISTEN, I UNDERSTAND WHY MR. ZELLER DOESN'T WANT TO

3   HAVE HIS TOON TEENS INVESTIGATION IN, BUT I BELIEVE THAT THIS

4   JURY IS ENTITLED TO UNDERSTAND THE EVIDENCE TO COUNTER WHAT

5   MATTEL TRIED FOR SEVEN WEEKS WITH RESPECT TO CONCEALMENT.        06:47

6        I THINK YOUR HONOR RECOGNIZED THIS ON FRIDAY WHEN YOU

7   WERE TALKING ABOUT HOW INTERRELATED ALL OF THIS INFORMATION IS.

8   WE HAVE A SUMMARY JUDGMENT RULING THAT TALKS AND GOES TO THE

9   STATE CLAIMS WITH RESPECT TO WHETHER OR NOT CERTAIN THINGS WERE

10  BARRED BY A CERTAIN DATE.  AND I BELIEVE THAT WE SHOULD BE       06:48

11  ALLOWED TO COUNTER WITH OUR EVIDENCE THAT WE SAT BACK ON --

12        **THE COURT:**  LET ME STOP YOU THERE.

13        THIS IS EXACTLY WHERE MR. RUSSELL WENT ON FRIDAY, AND

14  THIS IS EXACTLY NOW WHY I'M WITHDRAWING THE AFFIRMATIVE

15  DEFENSES, AT LEAST THE EQUITABLE ONES, FROM THE JURY'S          06:48

16  CONSIDERATION.

17        I HAVE A REAL CONCERN THAT WHAT IS GOING ON HERE IS

18  AN ATTEMPT TO CONFUSE THE JURY.  THE ONLY ISSUE THAT THIS JURY

19  IS GOING TO BE CONSIDERING IS INTENTIONAL, DELIBERATE

20  CONCEALMENT AS IT RELATES TO THE STATUTE OF LIMITATIONS         06:48

21  DEFENSE.

22        IT WAS ADMITTED IN PHASE 1-A RELATED TO INTENT ON THE

23  STATE DEFENSES, AND YOU WERE CERTAINLY ENTITLED TO RESPOND TO

24  THAT INTENTIONAL CONCEALMENT IN 1-A WITH RESPECT TO THE PURPOSE

25  FOR WHICH IT WAS GOING TO, NAMELY MR. LARIAN'S INTENT AND MGA'S  06:49

1    INTENT.

2        NOW, IN 1-B, THE ISSUE IS ALIVE WITH RESPECT TO THE

3    ISSUE OF THE STATUTE OF LIMITATIONS.  THAT IS IT.  AND IF WHAT

4    IS ATTEMPTING TO BE GOING ON HERE IS TO DIRTY UP THE RECORD,

5    I'M NOT GOING TO PERMIT THAT.                              06:49

6        **MR. NOLAN:**  I'M NOT TRYING TO DIRTY UP THE RECORD,

7    YOUR HONOR.  WHAT I'M TRYING TO DO IS RESPOND TO WHAT I

8    UNDERSTOOD TO BE THE RULING IN THE COURT THAT SAID THAT THE

9    STATE CLAIMS WERE BARRED UNLESS MATTEL --

10       **THE COURT:**  RIGHT.  YOU'RE PAINTING WITH TOO BROAD A    06:49

11   BRUSH, THOUGH.

12       YOU'RE ABSOLUTELY CORRECT, TWO OF THE STATE CLAIMS

13   ARE BARRED UNDER THE STATUTE OF LIMITATIONS IF MATTEL DOES NOT

14   SUCCEED IN CONVINCING THIS JURY OF THEIR DELIBERATE

15   CONCEALMENT.  AND THAT IS FAIR GAME.  AND THAT IS WHY I'M NOT   06:50

16   GOING TO PLACE ANY LIMITS GOING INTO THE TRIAL ON IMPEACHMENT

17   EVIDENCE OR EVIDENCE DIRECTED AT DELIBERATE CONCEALMENT.

18       BUT IF THIS IS AN ATTEMPT TO TRY TO UNDUE -- FOR ALL

19   OTHER PURPOSES, INCLUDING COPYRIGHT INFRINGEMENT, THE COURT HAS

20   RULED, AS A MATTER OF SUMMARY JUDGMENT, ON THE STATUTE OF       06:50

21   LIMITATIONS.  FOR BETTER OR FOR WORSE, FOR ONE SIDE OR FOR THE

22   OTHER, ANOTHER COURT IS GOING TO HAVE TO OVERTURN THAT

23   DECISION.

24       **MR. NOLAN:**  I'M NOT TRYING TO DO THAT, YOUR HONOR.

25       LET ME BE CLEAR, BECAUSE I KNOW THE HOUR IS LATE.          06:50

1   ALL I'M INTENDING TO TRY TO GET CLARIFICATION ON IS THAT IN

2   ORDER TO COUNTER THE EVIDENCE THAT MATTEL PUT IN ABOUT

3   DELIBERATE CONCEALMENT ON THE PART OF MGA -- WHICH WE, OF

4   COURSE, COUNTERED AND SAID THAT WAS NOT PART OF ANY OF

5   MR. LARIAN'S OR ANY OF THE EMPLOYEES AT MATTEL'S INTENT -- WE      06:51

6   SHOULD BE ABLE TO INTRODUCE THAT.

7          IN FACT, THE BEST EVIDENCE THAT THEY WERE NOT

8   DELIBERATELY CONFUSED, OR, YOU KNOW, THIS INFORMATION WAS

9   WITHHELD, WAS EVIDENCE THAT SHOWS THAT, IN FACT, PEOPLE AT

10  MATTEL WELL KNEW THAT CARTER WAS INVOLVED IN THIS PROJECT.        06:51

11         AND THAT'S ALL I'M TALKING ABOUT, YOUR HONOR, TO TRY

12  TO COUNTER THE CONCEALMENT EVIDENCE.

13         **THE COURT:**  I UNDERSTAND.  AND IN THAT CONTEXT, FOR

14  THAT PURPOSE, I JUST ARTICULATED A RULING THAT WAS CONSISTENT

15  WITH THAT, MR. NOLAN.  DON'T TRY TO RUN TOO MUCH THROUGH THIS.    06:51

16  OTHERWISE, YOU'RE GOING TO RUN THE RISK OF -- JUST BE CAREFUL.

17         I'LL TRY TO SPELL THIS OUT MUCH MORE CLEARLY IN MY

18  WRITTEN FORM OF THIS RULING, BUT THERE'S GOING TO BE A VERY,

19  VERY CLEAR LINE HERE, AS BEST AS I CAN KEEP IT CLEAR, IN TERMS

20  OF WHAT IS AND FOR WHAT PURPOSE THIS EVIDENCE IS BEING           06:52

21  ADMITTED.

22         **MR. NOLAN:**  YOUR HONOR, I APPRECIATE IT, BECAUSE WHAT

23  WE BELIEVE IS THAT THE EVIDENCE WILL SHOW THAT PEOPLE WITHIN

24  MATTEL -- THAT THE INFORMATION WASN'T BEING CONCEALED; THAT

25  THEY KNEW IT AND THEY WERE AWARE OF IT.  AND I THINK THAT        06:52

1    THAT'S ALL I WANT TO DO, IS TO TRY TO COUNTER THE ISSUE OF THE

2    FRAMEWORK OF THE STATUTE OF LIMITATIONS AS YOU HAVE FRAMED IT

3    IN YOUR ORDER AND DEAL WITH THIS CONCEALMENT EVIDENCE THAT THEY

4    PUT ON IN PHASE 1-A.

5         **THE COURT:**  VERY WELL.                                  06:52

6         MR. ZELLER, DO YOU WISH TO RESPOND TO THAT?

7         **MR. ZELLER:**  YES, YOUR HONOR.

8         THE WAY MR. NOLAN ENDED IS EXACTLY THE CONCERN HERE.

9         WHAT IS HE TALKING ABOUT WHEN HE SAYS ABOUT NOTICE?

10   HE WANTS TO MAKE THE SAME ARGUMENTS THE COURT ALREADY HEARD ON   06:52

11   SUMMARY JUDGMENT AND REJECTED, WHICH IS, 'OH, WELL, PEOPLE AT

12   MATTEL KNEW CARTER BRYANT WAS INVOLVED.'

13        THESE ARE ALL FACTS IN AWARENESS OF MATTERS THAT ARE

14   NOT RELEVANT TO LACHES OR STATUTE OF LIMITATIONS.  THIS IS JUST

15   REARGUING PRECISELY WHAT THEY LOST ON SUMMARY JUDGMENT.         06:53

16        IF MR. NOLAN WANTS TO MAKE AN ARGUMENT OR INTRODUCE

17   EVIDENCE REGARDING WHEN DID MATTEL KNOW THAT BRATZ WAS

18   CONCEIVED AT MATTEL OR KNOW THAT CARTER BRYANT WAS WORKING HAND

19   IN GLOVE WITH MGA WHILE EMPLOYED AT MATTEL, THAT'S A RELEVANT

20   ISSUE.  THE COURT HAS ALREADY RULED THAT THAT'S A RELEVANT      06:53

21   ISSUE.  BUT THESE OTHER THINGS ARE A SIDE SHOW, AND THEY AREN'T

22   RELEVANT.  THEY ARE THE SAME ARGUMENTS THEY MADE ON SUMMARY

23   JUDGMENT AND LOST ON.

24        OUR KNOWLEDGE, FOR EXAMPLE, ABOUT TOON TEENS, OR THE

25   INVESTIGATIONS ON THOSE MATTERS, IS NOT EVIDENCE THAT MGA       06:53

```
 1   DIDN'T SUCCESSFULLY CONCEAL THAT CARTER BRYANT MADE BRATZ --
 2          THE COURT:  MR. ZELLER, I DON'T KNOW IF I CAN MAKE IT
 3   ANY MORE CLEARER THAN I HAVE IN THE RULINGS THAT I'VE ISSUED.
 4   I THINK I DO UNDERSTAND THE DISTINCTION HERE.  IT'S A
 5   DISTINCTION THAT I WILL ENFORCE DURING THE TRIAL.  I'LL TRY TO      06:53
 6   SPELL IT OUT EVEN MORE CLEARLY IN MY MOTION.
 7          BUT THERE'S A WORLD OF DIFFERENCE BETWEEN MATTEL
 8   KNOWING THAT CARTER BRYANT WORKED ON BRATZ AND THAT CARTER
 9   BRYANT WAS ASSOCIATED WITH BRATZ, AND WHETHER OR NOT CARTER
10   BRYANT WORKED ON BRATZ WHILE HE WAS AT MATTEL.                      06:54
11          THERE'S A WORLD OF DIFFERENCE BETWEEN THOSE TWO
12   CONCEPTS, AND I UNDERSTAND THAT.
13          MR. ZELLER:  THANK YOU, YOUR HONOR.
14          THE COURT:  AND, MR. NOLAN, I THINK YOU UNDERSTAND
15   THAT AS WELL.                                                      06:54
16          MR. NOLAN:  YOU KNOW, I DO, YOUR HONOR.  I CLEARLY
17   DO.  I UNDERSTAND IT.  BUT, YOUR HONOR, GOING TO THAT VERY,
18   VERY POINT OF WHETHER OR NOT THEY KNEW AND WHEN THEY KNEW IT,
19   YOU KNOW, EVIDENCE, FOR INSTANCE, THAT DURING THE INVESTIGATION
20   PEOPLE WITHIN THE DESIGN CENTER SAID THAT MR. BRYANT               06:54
21   PLAGIARIZED INFORMATION FROM MATTEL, I THINK, DOES GO TO THE
22   HEART OF WHETHER OR NOT THAT WAS CONCEALED OR NOT CONCEALED,
23   AND I THINK THAT'S THE EVIDENCE THAT MR. ZELLER IS TRYING TO
24   KEEP OUT.  AND I'M NOT TRYING TO DO IT FROM A NOTICE POINT OF
25   VIEW AT ALL.  I'M JUST SAYING --                                   06:55
```

1        **THE COURT:**  LET'S USE THAT EXAMPLE, THE ONE THAT YOU

2   JUST USED:  SOMEBODY AT MATTEL KNOWS THAT CARTER BRYANT OR SAYS

3   THAT CARTER BRYANT PLAGIARIZED IT.

4        WHAT'S CRITICAL IS WHEN HE PLAGIARIZED IT.

5        **MR. NOLAN:**  YOUR HONOR, THAT IS CORRECT.  AND THE

6   FRAMEWORK, OF COURSE, IS THAT --

7        **THE COURT:**  I'M NOT GOING TO ISSUE AN ADVISORY RULING

8   NOW.  I'M GOING TO SET DOWN THE BASIC FRAMEWORK, AND I'M GOING

9   TO EVALUATE THIS, AND WE'LL GO THROUGH IT.  BUT JUST TO KNOW

10  THAT CARTER BRYANT -- AT ANY POINT IN TIME, LOOKING AT THE DOLL

11  AND LOOKING AT WHAT CARTER BRYANT DID -- I MEAN, ONE MAY MAKE

12  THE ACCUSATION, BUT THE CRITICAL CONNECTION IS NOT THAT

13  CARTER BRYANT AT SOME POINT IN TIME BECAME INVOLVED IN THE

14  BRATZ WORK; IT'S WHETHER HE WAS DOING THAT WHILE HE WAS AT

15  MATTEL.

16        **MR. NOLAN:**  RIGHT.  AND ALL OF THE EVIDENCE --

17        I UNDERSTAND, YOUR HONOR.

18        **THE COURT:**  AND IF MATTEL KNEW THAT, IF MATTEL KNEW

19  THAT CARTER BRYANT DID THIS WHILE HE WAS AT MATTEL, AND IF

20  MATTEL KNEW THAT WHILE HE WAS WORKING AT MATTEL, IF HE WAS

21  INTERFERING WITH THE CONTRACTUAL RELATIONS OR COMMITTING

22  CONVERSION OR ANYTHING LIKE THAT, OR IF THEY HAD REASON TO KNOW

23  THAT, THEN THAT GOES TO THE ISSUE OF LACHES AND STATUTE OF

24  LIMITATIONS.

25        I UNDERSTAND THERE'S A FUNDAMENTAL DISAGREEMENT WITH

1    MGA IN TERMS OF THE COURT'S RULING.  THAT HAS BEEN MADE

2    ABUNDANTLY CLEAR.  BUT I FEEL VERY GOOD ABOUT THE RULING, AND

3    IT'S GOING TO TAKE ANOTHER COURT TO TELL ME I'M WRONG.

4              **MR. NOLAN:**  I'M NOT TRYING TO -- MAYBE IT SOUNDS LIKE

5    IT IS.  I MEAN, WE'VE GONE ROUND AND ROUND, AND I ACCEPT THE          06:56

6    COURT, OBVIOUSLY, AND RESPECT IT.  BUT I'M JUST TRYING TO MAKE

7    CERTAIN THAT I UNDERSTAND WITH CLARITY WHERE WE GO ON THIS.

8              **THE COURT:**  LET ME TRY TO SPELL IT OUT, PARTICULARLY

9    IN THE CONTEXT OF 1-B.  AND SURELY, THE EVIDENCE WITH RESPECT

10   TO INTENTIONAL CONCEALMENT COMES IN, PRO AND CON, FOR AND            06:57

11   AGAINST.  MAYBE PART OF THE PROBLEM IS THE COURT USING THE

12   PHRASE, THE SHORTHAND PHRASE, DELIBERATE CONCEALMENT.

13             WE'VE GOT TO KEEP IN MIND 'IT'S DELIBERATE

14   CONCEALMENT OF' AND WHAT IT'S OF.  IT'S OF THE FACT THAT -- I

15   CAN SAY "FACT" NOW, BASED ON THE JURY'S FINDING -- THE FACT         06:57

16   THAT CARTER BRYANT WAS ENGAGED IN THIS WORK WHILE HE WAS AT

17   MATTEL.  THAT'S THE 'DELIBERATE CONCEALMENT OF' THAT'S AT

18   ISSUE.  NOT A DELIBERATE CONCEALMENT OF WORK THAT CARTER BRYANT

19   DID ON BRATZ AFTER HE LEFT MATTEL.

20             THAT'S THE DIVIDING LINE.  THAT HAS BEEN THE DIVIDING      06:57

21   LINE.  SO THAT'S WHERE WE ARE.  AND I WILL TRY TO MAKE THAT AS

22   CLEAR AS I CAN IN MY ORDER.

23             UNLESS THERE'S ANYTHING FURTHER ON THIS POINT, I WANT

24   TO CIRCLE BACK TO MS. AGUIAR WHO SAID SHE HAD A MOTION THAT SHE

25   WANTED TO FILE.                                                      06:58

1      **MS. AGUIAR:**  I'M SORRY.  I DIDN'T MEAN TO INTERJECT

2    IN THE MIDDLE, YOUR HONOR.

3          **THE COURT:**  I JUST WANTED TO HAVE THIS DONE, BECAUSE

4    I FIGURED THERE WOULD BE MORE TO THIS THAN THERE WAS.

5          **MS. AGUIAR:**  AND YOU WERE ABSOLUTELY RIGHT.  I JUST          {06:58

6    WANTED TO MAKE SURE I GOT THIS OUT THERE BEFORE WE HUNG UP.

7          THERE IS A DISCOVERY DISPUTE THAT WE'VE BEEN TRYING

8    TO RESOLVE WITH MATTEL.  WE WROTE A LETTER ON THIS AS EARLY AS

9    THE FIRST WEEK IN JUNE.  THERE ARE SOME EXHIBITS THEY WANT TO

10   PUT INTO EVIDENCE WITH A WITNESS, FRANK KEISER.  WE HAVE ASKED          06:58

11   FOR THOSE EXHIBITS, AND THEY KEEP TELLING US THAT WE HAVE THEM.

12   WHAT WE HAVE IS THE UNDERLYING DATA.  WE HAVE WHAT -- FOR LACK

13   OF A BETTER WORD, WE HAVE, LIKE, GOBBLY-DE-GOOK.  WE HAVE DATA,

14   STRINGS OF NUMBERS AND LETTERS.  BUT THEY ARE PLANNING TO TRY

15   TO PUT INTO EVIDENCE A RENDERING, A 3-DIMENSIONAL RENDERING,          06:59

16   AND ACTUALLY PUT THAT IN AS A TRIAL EXHIBIT.

17          **THE COURT:**  WHO CAN SPEAK TO THIS ISSUE FROM MATTEL?

18          **MR. ZELLER:**  WE HAVE GIVEN MGA IMAGES, SO IT IS TRUE

19   WE HAVE BEEN SAYING TO THEM THAT THEY HAVE THIS INFORMATION.

20   I'M NOT REALLY SURE WHY WE'RE BEING TOLD HERE THAT THEY ONLY          06:59

21   HAVE IT IN SOME FORM THAT THEY CAN'T READ.

22          AFTER WE'RE DONE HERE, I'LL LOOK INTO IT.  I WILL, I

23   GUESS, GIVE CHAPTER AND VERSE AS TO WHAT THEY HAVE, AND IF

24   THERE'S SOMETHING AS TO WHY THEY CAN'T READ IT, PERHAPS IT'S IN

25   THE MEDIUM THAT WE HAVE GIVEN IT, WE CAN ADDRESS THAT.          07:00

1            THE COURT:  WHY DON'T WE DO THIS, MR. ZELLER:  WHY

2    DON'T YOU MAKE SURE THAT YOU'VE PROVIDED TO THEM THE EXHIBIT

3    THAT YOU INTEND TO USE AT TRIAL.  IF YOU DON'T PRODUCE IT BY

4    5:00 TOMORROW, THEN IT WON'T BE INTRODUCED AT TRIAL.

5            MR. ZELLER:  FAIR ENOUGH, YOUR HONOR.                07:00

6            THE COURT:  DOES THAT ADDRESS YOUR CONCERN,

7    MS. AGUIAR?

8            MS. AGUIAR:  IT DOES.

9            I JUST WANT TO COME BACK TO YOU, IF THAT'S OKAY, IF

10   THAT DOESN'T HAPPEN.                                         07:00

11           THE COURT:  IF IT DOESN'T HAPPEN, THEN IT'S NOT

12   COMING IN.

13           MS. AGUIAR:  THANK YOU.

14           THE COURT:  ANYTHING ELSE, FROM MGA'S PERSPECTIVE?

15           MR. NOLAN:  NOTHING.  THANK YOU VERY MUCH, YOUR       07:00

16   HONOR.

17           THE COURT:  ANYTHING ELSE, FROM MATTEL'S PERSPECTIVE?

18           MR. QUINN:  NO, YOUR HONOR.  THANK YOU.

19           THE COURT:  BEFORE MS. LARSON TAKES MY COMPUTER, MY

20   BINDERS, MY NOTES, AND EVERYTHING ELSE, AND THROWS THEM, ALONG  07:00

21   WITH ME, INTO THE LAKE, I BETTER SAY GOOD NIGHT.

22           I TRUST, MR. NOLAN, EVERYTHING WENT WELL THIS

23   AFTERNOON.

24           MR. NOLAN:  THANK YOU VERY MUCH FOR THE

25   ACCOMMODATION.                                               07:01

1      THE COURT:  VERY GOOD.

2          I'LL SEE YOU ON WEDNESDAY MORNING AT 8:00.

3      MR. QUINN:  YOUR HONOR, THERE'S ONE THING THAT'S JUST

4  BEEN CALLED TO MY ATTENTION.

5          WE DON'T HAVE ANY UNDERSTANDING ABOUT LENGTH OF           07:01

6  OPENINGS ON WEDNESDAY.  WE DID FOR THE ORIGINAL OPENING, AND I

7  JUST WONDERED IF THE COURT WANTED TO ADDRESS THAT.

8      THE COURT:  HOW LONG DO YOU ANTICIPATE YOUR OPENING,

9  MR. QUINN?

10     MR. QUINN:  I'M ESTIMATING TWO HOURS, YOUR HONOR.          07:01

11     THE COURT:  MR. NOLAN, HOW LONG DO YOU ANTICIPATE

12  YOUR OPENING?

13     MR. NOLAN:  MR. QUINN AND I EXCHANGED E-MAILS ON

14  THIS.  MR. QUINN SAID THAT HE THOUGHT HE WAS AT ABOUT TWO

15  HOURS.  I SAID THAT I THOUGHT I WAS AT ABOUT TWO HOURS OR TWO   07:01

16  AND A HALF HOURS.  WE'RE STILL TRYING TO WORK IT OUT.  BUT I

17  THINK THAT'S THE RANGE OF TIME WE'RE TALKING ABOUT.

18     THE COURT:  THAT'S FINE.  I'LL SEE YOU ON WEDNESDAY.

19     MR. NOLAN:  THANK YOU.

20     MR. QUINN:  THANK YOU.                                    07:01

21

22

23

24  /  /  /

25  /  /  /

1                              CERTIFICATE

2

3      I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
       STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
4      THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
       ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
5      CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
       THE UNITED STATES.

6

7      
       THERESA A. LANZA, CSR, RPR                      DATE
8      FEDERAL OFFICIAL COURT REPORTER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25