THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
(laguiar@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Tel.: (213) 687-5000
Fax: (213) 687-5600

Attorneys for The MGA Parties

UNITED STATED DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                              Plaintiff,<br><br>          v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                              Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>Honorable Stephen G. Larson<br><br>(1)   MGA PARTIES' RESPONSE TO MATTEL, INC.'S EVIDENTIARY OBJECTIONS TO MGA PARTIES' STATEMENT OF POSITION REGARDING PHASE 1C ISSUES; and<br><br>(2)   DECLARATION OF THOMAS J. NOLAN IN SUPPORT THEREOF.<br><br>Hearing Date: November 10, 2008<br>Time: 1 p.m. |

MGA Parties respectfully submit the following responses in opposition to Mattel's Evidentiary Objections to MGA Parties' Statement of Position Regarding Phase 1C Issues.

I.   **MGA Parties' Response to Mattel's General Objections:**

Mattel's General Objections are devoted to Mattel's laments that certain of the evidence relied upon by the MGA Parties has not been formally disclosed to Mattel via supplementation of the MGA Parties' responses to Mattel's supplemental interrogatory dealing with MGA Parties' affirmative defenses. In effect, Mattel simply rehashes the argument it already made as part of its motion *in limine* No. 11 – the very part that got <u>denied</u> by this Court.[1] Thus, the General Objections here should be overruled for the same reasons as stated in the MGA Parties' opposition to that motion. (<u>See</u> MGA MIL No. 11 Opp'n at 18-20.)

In any event, Mattel's arguments fall flat for two specific reasons. <u>First</u>, the bulk of the evidence Mattel complains about was <u>actually disclosed</u> to Mattel via MGA Parties' supplemental interrogatory responses. While Mattel cites exclusively to MGA Parties' interrogatory response dated January 7, 2008, Mattel chooses to ignore the supplemental responses that followed – namely, the MGA Parties' supplemental interrogatory responses dated April 28, 2008 and June 2, 2008. (<u>See</u> Declaration of Thomas J. Nolan in Support of MGA Parties' Opposition to Mattel's Evidentiary Objections To The MGA Parties' Phase 1c Statement of Position, dated October 20, 2008 ("Nolan Decl."), Exs. 1 & 2.) In the April 28, 2008 supplemental response, the MGA Parties disclosed to Mattel that, in support of their affirmative defenses of statute

---

[1] <u>Compare</u> Mattel MIL No. 11 at 24 (arguing that evidence supporting MGA Parties' affirmative defenses should be excluded to the extent not formally disclosed with supplemental interrogatory responses), <u>with</u> Final Pretrial Conference Order at 16 (as to Mattel MIL No. 11, stating that the motion was granted as to the evidence of Bryant's test project and deferred as to the apportionment evidence, but <u>otherwise denied</u>).

of limitations and failure to state a claim, they will show that Mr. Romano, a representative of Mattel de Mexico, a wholly owned subsidiary of Mattel, Inc., not only attended the New York Toy Fair, but also communicated with Mr. Martin Hitch of MGA about a possible licensing opportunity for Mattel to distribute the BRATZ. (See Nolan Decl., Ex. 1 at 2-3 (detailing communications between Mr. Romano and Mr. Hitch).) In turn, in its June 2, 2008 supplemental response, the MGA Parties detailed every public exhibition of BRATZ prior to June 2001, which included Mattel's videotaping of the BRATZ booth at the Tokyo Toy Fair. (See Nolan Decl., Ex. 2 at 2-4.)[2]

Second, all of the evidence at issue – and, specifically, the MGA Parties' reliance thereon in support of their affirmative defenses of laches, waiver, and estoppel – was disclosed to Mattel via pretrial briefing, including summary judgment and motion *in limine* briefing. By its very terms, Rule 26 requires supplementation of initial disclosures only to the extent that "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing …." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added);[3] accord Newman v. GHS Osteopathic Inc., 60 F.3d 153, 156 (3d Cir. 1995) (no abuse of discretion in refusing to

---

[2] While the latter disclosure was not expressly tied to the MGA Parties' affirmative defenses, Rule 26 does not require such exactitude, as long as the opposing party is aware of the evidence at issue. See, e.g., Coleman v. Keebler Co., 997 F. Supp. 1102, 1107 (N.D. Ind. 1998) ("[t]he duty to supplement imposed by [Rule] 26(e)(1) does not require an application of form over substance"; supplementation was not required where the defendant was made aware of the witnesses' identities at deposition) (emphasis added).

[3] See also Nobles v. Jacobs/IMC, 2003 WL 23198817, at *2 (D.V.I. July 07, 2003) ("A party must supplement its discovery response if additional or corrective information has not otherwise been made known to the other parties.") (emphasis added); 8 Charles Alan Wright et al., Fed. Practice & Procedure, § 2049.1, at 604 (Civil 2d ed. 1994 & supp. 2007) ("there is no need as a matter of form to submit a supplemental disclosure to include information already revealed by a witness in a deposition or otherwise through formal discovery"; "[t]he informal nature of the requirement is reinforced by the alternative of providing the additional information in writing whether or not in a formal discovery response").

1   exclude testimony when other party knew names of undisclosed witnesses and scope of

2   their relevant knowledge well before trial); <u>McKesson Info. Solutions, Inc. v. Bridge</u>

3   <u>Med., Inc.</u>, 434 F. Supp. 2d 810, 813 (E.D. Cal. 2006) (rejecting defendant's motion to

4   exclude plaintiff's trial witnesses because, while plaintiff had not identified the

5   witnesses as part of any formal Rule 26 disclosures, pursuant to Rule 26(e), "the

6   challenged witnesses were identified in documents produced by both [parties] during

7   discovery"); <u>E.E.O.C. v. Lennar Homes of Ariz., Inc.</u>, 2006 WL 1734594, at *3 (D.

8   Ariz. June 23, 2006) ("The Court concludes that because the damages computation was

9   'otherwise made known' to Defendant through … [expert]'s report, Plaintiff was not

10  required to include it in a Rule 26(e)(1) supplement and should not be sanctioned for

11  failing to do so in a timely manner.").

12          Thus where, as here, the evidence at issue was disclosed during pretrial briefing

13  (as demonstrated by the specific responses below), it is not subject to the

14  supplementation requirement of Rule 26 and, for that reason, its nondisclosure via

15  formal supplementation is harmless. <u>See</u> <u>EMI Music Mktg. v. Avatar Records, Inc.</u>, 334

16  F. Supp. 2d 442, 445-46 (S.D.N.Y. 2004) (refusing to exclude defendant's evidence that

17  was not included in formal supplementations under Rule 26 because plaintiff was

18  sufficiently aware of the evidence at issue through, <u>inter alia</u>, summary judgment

19  briefing); <u>Rodriguez-Garcia v. Municipality of Caguas</u>, 225 F.R.D. 67, 67-8 (D.P.R.

20  2004) (defendants had sufficient notice of plaintiff's intent to call a witness at trial even

21  though plaintiffs did not give notice before discovery had closed, since the defendants

22  knew of the witness as early as the filing of plaintiff's opposition to their summary

23  judgment motion); <u>see also</u> <u>DuBose v. State Farm Ins. Co.</u>, 2007 WL 4463561, at *1

24  (S.D. Ala. Dec. 14, 2007) (denying plaintiffs' motion to limit the asserted affirmative

25  defenses because "Plaintiffs appear to have been adequately apprised of the basis for

26  each of State Farm's affirmative defenses despite State Farm's failure to be more

27  forthright in its answers to plaintiffs' interrogatories"); <u>Price v. Code-Alarm, Inc.</u>, 1992

28  WL 390895, at *1 (N.D. Ill. Dec. 16, 1992) (refusing to exclude evidence in support of

affirmative defenses for failure to identify the evidence in response to the interrogatories requiring defendants to state "facts on which they intend to rely at trial for their affirmative defenses" because the evidence had been sufficiently disclosed to the plaintiff through other pretrial submissions). Therefore, Mattel's General Objections are due to be overruled.

II.   **MGA Parties' Responses to Mattel's Specific Objections:**

| **Purportedly Objectionable Evidence** | **Mattel's Objections & MGA Parties' Responses Thereto** |
|---|---|
| Trial Tr. at 6463:23-6464:3 (Michael Moore): Q. Now, prior to the time that you had this meeting with Cityworld, had you heard from any source that there was the possibility Carter Bryant had some kind of relationship with MGA during the time he was employed by Mattel? A. I think there were rumors that Carter Bryant had created Bratz. | Incomplete excerpt. Fed. R. Evid. 106. Mr. Moore actually testified that the first time he heard of Bryant working on Bratz for MGA was following the publication of the Wall Street Journal article in July 2003. Trial Tr. at 6464:3-12. <br><br> **MGA Parties Dispute This Objection As Stated Below:** <br> Mattel's objection misstates the evidence; Moore's testimony was not that the article is the "first time he heard of Bryant working on BRATZ" – the question asked was whether Moore "read" anything about Bryant's work at MGA, and does not reflect whether that happened before or after he "heard" the rumors of Bryant's involvement. (Tr. 6464:4-12.) <br><br> Moreover, Mattel's objection is unnecessary and specious given this Court's order that the parties submit complete "copies of the sessions of the transcript to which the parties cite" in their Phase 1c briefing.  <u>See</u> September 9, 2008 Order at 1. |
| Trial Ex. 4900 | To the extent this document is offered for the truth of the matter asserted, it is inadmissible hearsay, as this Court has |

-4-

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | already ruled. See Trial Tr. at 2030:8-2032:1; see also Fed. R. Evid. 801, 802. It is also irrelevant and prejudicial. Fed. R. Evid. 402, 403. **MGA Parties Dispute This Objection As Stated Below:** This document is offered to demonstrate Isaac Larian's state of mind and not for the truth of the matter asserted and is therefore not hearsay, as this Court ruled in admitting it over Mattel's identical objections at trial.  (Tr. 2030:8- 2032:1.)  It is unquestionably relevant.  Evidence is relevant under Fed. R. Evid. 401 if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable."  This document directly addresses MGA Parties' belief Mattel was likely to sue any competitor who threatened rights of Mattel.  Moreover, since the document is not offered as proof of Mattel's litigiousness but only Isaac Larian's belief that Mattel might be considering action against the MGA Parties, it is not prejudicial. |
| Trial Tr. at 6603:19-6606:19 (Moore): (EXHIBIT 1195 IS RECEIVED.) BY MR. SLOAN: Q. Sir, you said that you did review this document after the litigation was commenced; is that correct? A. Yeah. I've seen the document after | Incomplete excerpt. Fed. R. Evid. 106. MGA omits Mr. Moore's testimony that the 2002 investigation focused on whether Carter Bryant created Bratz,not on when he created it. See Trial Tr. at 6606:16-6607:3; see also Fed. R. Evid. 106. Irrelevant, prejudicial, lacks foundation. Fed. R. Evid. 402, 403. As the Court has ruled, Mattel's 2002 investigation did not |

| **Purportedly Objectionable Evidence** | **Mattel's Objections & MGA Parties' Responses Thereto** |
|---|---|
| the litigation began, yes.<br>Q. I'd like to have you look at page 66 of this document, if we could  publish that.<br>          By the way, have you looked at these types of documents before, meaning investigative reports prepared by the globe security department?<br>A. No. I mean, I may have seen excerpts, but I have not looked at the files before.<br>Q. I'm not talking about this particular case. I'm talking about in other cases, have you looked at – are you familiar with this type of a document?<br>A. Well, like I said, I have never reviewed a full file before. I've probably seen excerpts from files, but I don't keep these files; these aren't in my control.<br>Q. Let me direct your attention to the second line, where it says 3-20, and it says "met with Ivy Ross on this case and discussed IP protection program." Do you see that?<br>A. I see what you've highlighted, yes.<br>Q. Would you agree that appears to be an entry pertaining to March 20, 2002?<br>A. I suppose, yes.<br>Q. Do you know who wrote that?<br>A. I don't.<br>Q. When you looked at this investigative file after the litigation was filed, did you look at this page?<br>A. I don't remember this page.<br>Q. But you looked at some portion of this report.<br>A. I did.<br>Q. Let me direct your attention to the | put it on notice, and is irrelevant, because it did not relate to the claims at bar. See Proctor Dec. Ex. 1 (May 27, 2008 Order), at 7. Moreover, the jury found MGA fraudulently concealed the facts underlying Mattel's claims, and that Mattel was not aware of those facts at that time. See Proctor Dec. Ex. 3 (Phase B Verdict Form As Given), at 8; Ex. 4 (Court's Phase B Jury Instructions As Given), at 39 (Jury Instruction No. 35). This "evidence" is therefore irrelevant.<br><br>**MGA Parties Dispute This Objection As Stated Below:**<br>Moore's testimony is unquestionably relevant.  Evidence is relevant under Fed. R. Evid. 401 if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." The jury's finding of fraudulent concealment and this Court's ruling that Mattel was not on notice of its claims until November 2003 only impacts the statute of limitations analysis; the starting point for assessing Mattel's delay for a laches defense is not necessarily the same as the accrual date for limitations purposes.  See, e.g., Wyler Summit P'ship v. Turner Broad. Sys., Inc., 235 F.3d 1184, 1193 (9th Cir. 2000) (while earlier opinion established accrual date for statute of limitations, it "did not decide directly or by necessary implication … when a possible period for laches actually accrued").  Since a critical issue in establishing MGA's laches defense is whether Mattel unreasonably delayed |

| **Purportedly Objectionable Evidence** | **Mattel's Objections & MGA Parties' Responses Thereto** |
|---|---|
| next line, March 28, which says "met with Cassidy Park to get more info on the MGA issue. She suggested Carter Bryant as illustrator/former employee who may have plagiarized design of Lily Martinez and created Bratz dolls for MGA." Do you see that? <br> A. Yes. <br> Q. Does that appear to be an entry that was made on March 28, 2002? <br> A. It says March 28; I'm assuming 2002. <br> Q. And did you review that after this litigation was filed? <br> A. Again, I really don't remember this particular page. <br> Q. So you're not saying you didn't review it; you're just saying you do not recall reviewing it; is that correct? <br> A. There are so many documents in this case. I don't recall reviewing this particular one. It doesn't -- I don't remember. <br> Q. And it says "at 1500, checked with hr for Bryant's file term date, 10-20-2000; file is at off-site storage; requested it to be retrieved." Do you see that? <br> A. Yes. <br> Q. Do you think it's fair interpretation that that's an entry that was made at 1500 hours, or 3:00 p.m., on March 28, 2002? <br> MR. ZELLER: Objection as to interpretation. <br> THE COURT: Rephrase, counsel. <br> BY MR. SLOAN: <br> Q. What do you think that 1500 means there? | bringing suit to the prejudice of the MGA Parties, the testimony of Mattel's general counsel regarding a 2002 Mattel investigation of Carter Bryant and Isaac Larian directly relates to that issue and is relevant.  Moreover, as Moore is testifying to his own recollection and state of mind, there is no issue of foundation. <br><br> Nor is this evidence prejudicial.  See White v. Ford Motor Co., 500 F.3d 963, 977 (9th Cir. 2007) (noting that evidence is not unduly prejudicial under Fed. R. Evid. 403 merely because it has a negative impact on a parties' case because the evidence presented "was probative and a proper factor in the jury's analysis, any 'prejudice' experienced by [defendant] was not 'unfair' as that term is used in [Federal Rule of Evidence] 403."); Brazos River Auth. v. GE Ionics, Inc., 469 F.3d 416, 427 (5th Cir. 2006) ("'Unfair prejudice' as used in [Federal Rule of Evidence] 403 is not to be equated with testimony that is merely adverse to the opposing party. ***Virtually all evidence is prejudicial; otherwise it would not be material***. The prejudice must be 'unfair.'") (emphasis added); O'Brien v. Papa Gino's of Am., Inc., 780 F.2d 1067, 1075 (1st Cir. 1986) ("Naturally, this testimony was unfavorable to the defendant's case, but we must keep in mind that it is only unfair prejudice with which we are concerned."); Koloda v. Gen. Motors Corp., 716 F.2d 373, 378 (6th Cir. 1983) ("To be excluded under Rule 403, evidence must be more than damaging to party's case; it must be |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| A. I don't keep these files. I mean, I could speculate that it means 3:00, but that's speculation. I don't know.<br>Q. Sir, are you aware of who Cassidy Park is?<br>A. Yes.<br>Q. Do you have any reason to doubt the accuracy of the information reflected in this Mattel investigative report?<br>MR. ZELLER: Lacks foundation.<br>THE COURT: Sustained.<br>MR. ZELLER: Privileged issue.<br>THE COURT: Sustained.<br>BY MR. SLOAN:<br>Q. Sir, if you had seen this, would you still have testified that, to the best of your knowledge, no one before you had been involved in investigating whether Carter Bryant was involved in creating Bratz in some respects? | unfairly prejudicial."). In other words, the fact that this evidence may paint an *unflattering* picture of Mattel's investigative practices of competitors does not make it an *unfair* one. Therefore, Moore's testimony is admissible.<br><br>Moreover, Mattel's objection is unnecessary and specious given this Court's order that the parties submit complete "copies of the sessions of the transcript to which the parties cite" in their Phase 1c briefing. See September 9, 2008 Order at 1. |
| Trial Tr. At 6473:12-17 (Moore):<br>Q. BY MR. SLOAN: Sir, have you been investigating for some time whether Carter Bryant is the person who designed the Bratz doll?<br>A. I've been looking into that since sometime in 2003.<br>Q. Since 2003?<br>A. Yes. | This is an incomplete excerpt. Fed. R. Evid. 106. Mr. Moore testified that he only began investigating Bryant's connection to Bratz in the Summer of 2003. Trial Tr. at 6474:2-5. He also testified that he first learned in late November 2003 that Bryant had worked with MGA while a Mattel employee. Trial Tr. at 6463:13-18.<br><br>**MGA Parties Dispute This Objection As Stated Below:**<br><br>Mattel's objection is unnecessary and specious given this Court's order that the parties submit complete "copies of the sessions of the transcript to which the parties cite" in their Phase 1c briefing. |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | <u>See</u> September 9, 2008 Order at 1. |
| Nolan 04/28/08 Dec. (Dkt 3396) Exh. 113. | Hearsay. Fed. R. Evid. 801, 802. These documents are apparently offered for their truth, and are inadmissible hearsay. |
| | Irrelevant and confusing. Fed. R. Evid. 401, 402, 403. The amounts MGA purportedly spent to develop BRATZ after Mattel filed its suit are irrelevant for the purposes of laches analysis, particularly absent consideration of MGA's <u>profits</u> from those investments. |
| | Lacks foundation. MGA offers no foundation for the exhibit. |
| | **MGA Parties Dispute This Objection As Stated Below:** |
| | The expert report by the MGA Parties' expert Paul K. Meyer has been offered for what it is – an expert report. It is entirely appropriate for an accounting expert such as Mr. Meyer to rely on the defendant's financials, which the figures collected by Mr. Meyer and cited by the MGA Parties are based upon. As they are based on the MGA Parties' business records, they do not constitute hearsay. <u>See</u> Fed. R. Evid. 803(6); <u>see also</u> <u>U.S. v. Affleck</u>, 776 F.2d 1451 (10th Cir. 1985) (expert opinion based on, <u>inter alia</u>, defendant's financial records was properly admitted despite the hearsay objection). And, in any event, an expert's opinion may be properly based on inadmissible hearsay.  <u>See</u> Fed. R. Evid. 703 ("If [the facts or data are] of a type reasonably relied upon by experts in |

| **Purportedly Objectionable Evidence** | **Mattel's Objections & MGA Parties' Responses Thereto** |
|---|---|
| | the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted."); see also S.E.C. v. Todd, 2006 WL 5201386, at *5 (S.D. Cal. Oct. 17, 2006) (although not admissible under the "business records" hearsay exception, the company's financial restatements are properly admitted as forming the basis of an accounting expert's opinion).<br><br>The excerpts of Meyer's expert report cited here are unquestionably relevant. Evidence is relevant under Fed. R. Evid. 401 if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable."  A critical issue in establishing MGA's laches defense is whether Mattel unreasonably delayed bringing suit to the prejudice of the MGA Parties, such as "expectations prejudice", which involves a "showing [by defendant] that it took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly." Danjaq LLC v. Sony Corp., 263 F.3d 942, 955 (9th Cir. 2001). Courts have found that a defendant's substantial investments present an especially compelling bar to injunctive relief.  See New Era Publ'ns Int'l, ApS v. Henry Holt & Co., 873 F.2d 576, 584 (2d Cir. 1989) (timely claim for injunction barred by laches where plaintiff had knowledge of potential future infringement and failed to take action, as defendants invested substantially in production of allegedly |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | infringing book during period of delay); Chirco v. Crosswinds Cmtys., Inc., 474 F.3d 227, 235-36 (6th Cir. 2007) (laches barred timely claim for injunction brought after defendants had already constructed and sold infringing property, because "[s]uch a request smacks of the inequity against which Judge Hand cautioned in Haas and which the judicial system should abhor"). Meyer's expert report establishes the hundreds of millions of dollars MGA invested in product development, new employees and marketing BRATZ – something Mattel repeatedly concedes (5/21/08 Tr. 220:3-5, 5/22/08 PM Tr. 30:22-23) – and is therefore directly relevant to the question of expectations prejudice in the laches analysis.  Moreover, this evidence is not confusing precisely because it demonstrates the hardly disputed proposition that the MGA Parties spent millions on BRATZ while Mattel delayed its suit. |
| | Finally, as to Mattel's objection based on lack of foundation, the time to challenge Mr. Meyer's credentials and reliability of his opinion has passed. Mr. Meyer presented sufficient qualifications for admissibility of his expert opinion. See, e.g., U.S. v. Jawara, 474 F.3d 565, 583 (9th Cir. 2007) (expert's "extensive academic qualifications and experience and the relevance and value of her testimony to the jury" are sufficient to provide foundation for his opinion); Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (expert's "recognized |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required."). Mattel did not object to Meyer's designation as a financial expert at trial. (Tr. 7687:25-7688:4.)  The only "foundational" concerns Mattel raised at trial focused exclusively on Meyer's apportionment analysis, not the evidence in question here.  (Tr. 7669:12-7672:25.) Nor did Mattel offer any foundational objections to Meyer's testimony on any of this exact evidence at trial.  (Tr. 7692:11-7693:8, 7694:1-7697:3.)  Mattel's raising of this challenge now is specious, to say the least. |
| Trial Ex. 11297. | Irrelevant, lacks foundation, confusing. Fed. R. Evid. 402, 403. MGA offers no foundation for the exhibit. The mere fact that Bratz was being offered for sale by MGA could not have and should not have led Mattel to the conclusion that Bryant had secretly conceived and created Bratz. This argument was previously raised by MGA on summary judgment and rejected. The MGA Parties fail to articulate any reason the Court should revisit its finding that July 18, 2003 is earliest date on which Mattel could have had any knowledge of the wrongdoing at issue in this lawsuit.

This alleged evidence should also be stricken because it was not disclosed in MGA's response to Mattel's Supplemental Interrogatory Regarding Defendants' Affirmative Defenses. See General Objection. |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | **MGA Parties Dispute This Objection As Stated Below:**

The Court's ruling that Mattel could not have knowledge of potential Bryant wrongdoing before July 2003 only impacts the statute of limitations analysis; the starting point for assessing Mattel's delay for a laches defense is not necessarily the same as the accrual date for limitations purposes.  See, e.g., Wyler Summit P'ship v. Turner Broad. Sys., Inc., 235 F.3d 1184, 1193 (9th Cir. 2000) (while earlier opinion established accrual date for statute of limitations, it "did not decide directly or by necessary implication … when a possible period for laches actually accrued").  Since a critical issue in establishing MGA's laches defense is whether Mattel unreasonably delayed bringing suit to the prejudice of the MGA Parties, evidence establishing that Mattel saw and video-recorded the BRATZ drawings in early 2001 directly relates to that issue and is relevant.

Moreover, as Mattel provided this video as part of their production, and can no doubt establish that such documentation of competitor's products at toy fairs are kept in the normal course of business, there is no issue of foundation.  See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 454 F. Supp. 2d 966, 972 (C.D.Cal. 2006) ("production of the items at issue in response to a discovery request" by party or its agent satisfies authentication requirement, even if party |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
|  | itself later challenges authenticity); <u>see also</u> <u>United States v. Brown</u>, 688 F.2d 1112, 1116 (7th Cir. 1982) ("Once [a defendant] voluntarily produced the documents and implicitly represented them to be [corporate] records, he cannot be heard to contend that they are not [corporate] records.").<br><br>Nor is this evidence prejudicial.  <u>See</u> <u>White v. Ford Motor Co.</u>, 500 F.3d 963, 977 (9th Cir. 2007) (noting that evidence is not unduly prejudicial under Fed. R. Evid. 403 merely because it has a negative impact on a parties' case because the evidence presented "was probative and a proper factor in the jury's analysis, any 'prejudice' experienced by [defendant] was not 'unfair' as that term is used in [Federal Rule of Evidence] 403."); <u>Brazos River Auth. v. GE Ionics, Inc.</u>, 469 F.3d 416, 427 (5th Cir. 2006) ("'Unfair prejudice' as used in [Federal Rule of Evidence] 403 is not to be equated with testimony that is merely adverse to the opposing party. ***Virtually all evidence is prejudicial; otherwise it would not be material***. The prejudice must be 'unfair.'") (emphasis added); <u>O'Brien v. Papa Gino's of Am., Inc.</u>, 780 F.2d 1067, 1075 (1st Cir. 1986) ("Naturally, this testimony was unfavorable to the defendant's case, but we must keep in mind that it is only unfair prejudice with which we are concerned."); <u>Koloda v. Gen. Motors Corp.</u>, 716 F.2d 373, 378 (6th Cir. 1983) (to be excluded under Rule 403, evidence "must be more than damaging to the adverse party; it |

| **Purportedly Objectionable Evidence** | **Mattel's Objections & MGA Parties' Responses Thereto** |
|---|---|
| | must be *unfairly* prejudicial."). In other words, the fact that this evidence may paint an *unflattering* picture of Mattel's investigative practices of competitors does not make it an *unfair* one.<br><br>Nor is there any risk of confusion raised by the spectre of Mattel's monitoring of its competition and the evidence Mattel saw Bryant's drawings in Tokyo. Therefore, this evidence is admissible.<br><br>Finally, Mattel's demand to strike this evidence is meritless. See supra, MGA Parties' Response to Mattel's General Objections. As the instant objection itself makes clear, MGA Parties' intent to rely on this evidence in support of their affirmative defenses has been disclosed to Mattel via the MGA Parties' summary judgment briefing. (See MGA MSJ Opp'n at 23 n.17; MGA MSJ Reply at 5 n.7; see also Declaration of Thomas J. Nolan in Support of MGA Parties' Opposition to Mattel's Evidentiary Objections To The MGA Parties' Phase 1c Statement of Position, dated October 20, 2008 ("Nolan Decl."), Ex. 2 (supplemental interrogatory response specifically disclosing MGA Parties' intent to rely on this evidence)). |
| Russell 03/07/08 Dec., Exhs. 42-43, 64. | Irrelevant, lacks foundation, hearsay, confusing, prejudicial. Fed. R. Evid. 402, 403, 801, 802. MGA apparently cites these documents to show that Mattel was aware of Bratz in 2001. Even if Mattel were aware of Bratz in 2001, that did not put Mattel on notice that Bryant created Bratz while employed by Mattel. The |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | Court rejected MGA's assertions otherwise on summary judgment.<br><br>This alleged evidence should also be stricken because it was not disclosed in MGA's response to Mattel's Supplemental Interrogatory Regarding Defendants' Affirmative Defenses. See General Objection.<br><br>**MGA Parties Dispute This Objection As Stated Below:**<br>The Court's ruling that Mattel could not have knowledge of potential Bryant wrongdoing before July 2003 only impacts the statute of limitations analysis; the starting point for assessing Mattel's delay for a laches defense is not necessarily the same as the accrual date for limitations purposes. See, e.g., Wyler Summit P'ship v. Turner Broad. Sys., Inc., 235 F.3d 1184, 1193 (9th Cir. 2000) (while earlier opinion established accrual date for statute of limitations, it "did not decide directly or by necessary implication … when a possible period for laches actually accrued").  Since a critical issue in establishing MGA's laches defense is whether Mattel unreasonably delayed bringing suit to the prejudice of the MGA Parties, evidence establishing that Mattel saw and video-recorded the BRATZ drawings in early 2001 directly relates to that issue and is relevant.<br><br>Nor is this evidence prejudicial.  See White v. Ford Motor Co., 500 F.3d 963, 977 (9th Cir. 2007) (noting that evidence is not unduly prejudicial under Fed. R. |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | Evid. 403 merely because it has a negative impact on a parties' case because the evidence presented "was probative and a proper factor in the jury's analysis, any 'prejudice' experienced by [defendant] was not 'unfair' as that term is used in [Federal Rule of Evidence] 403."); <u>Brazos River Auth. v. GE Ionics, Inc.</u>, 469 F.3d 416, 427 (5th Cir. 2006) ("'Unfair prejudice' as used in [Federal Rule of Evidence] 403 is not to be equated with testimony that is merely adverse to the opposing party. ***Virtually all evidence is prejudicial; otherwise it would not be material***. The prejudice must be 'unfair.'") (emphasis added); <u>O'Brien v. Papa Gino's of Am., Inc.</u>, 780 F.2d 1067, 1075 (1st Cir. 1986) ("Naturally, this testimony was unfavorable to the defendant's case, but we must keep in mind that it is only unfair prejudice with which we are concerned."); <u>Koloda v. Gen. Motors Corp.</u>, 716 F.2d 373, 378 (6th Cir. 1983) (to be excluded under Rule 403, evidence "must be more than damaging to the adverse party; it must be *unfairly* prejudicial."). In other words, the fact that this evidence may paint an *unflattering* picture of Mattel's investigative practices of competitors does not make it an *unfair* one.  This evidence is not confusing given the plain relevance of Mattel's monitoring of its competition and the evidence Mattel saw Bryant's drawings in Tokyo. Therefore, this evidence is admissible.  The authenticity and foundation for this |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | document, which is one of Mattel's business records, is established by Mattel's counsel's production of this document, accompanied by a statement that this is a true and correct copy, and reliance on this document in its own argument.  See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 454 F. Supp. 2d 966, 972 (C.D.Cal. 2006) ("production of the items at issue in response to a discovery request" by party or its agent satisfies authentification requirement, even if party itself later challenges authenticity); see also United States v. Brown, 688 F.2d 1112, 1116 (7th Cir. 1982) ("Once [a defendant] voluntarily produced the documents and implicitly represented them to be [corporate] records, he cannot be heard to contend that they are not [corporate] records.").

Moreover, they are not offered for the truth of their contents, they are offered because their existence demonstrates that Mattel attended the toy fair.  (Stmt. at 8.) As such, they are not hearsay.  See Harvey Barnett, Inc. v. Shidler, 338 F.3d 1125, 1130 n.4 (10th Cir. 2003) (admitting evidence where "these pieces of evidence were not admitted for the truth of the matter asserted therein, but rather for the very fact of their existence").

Finally, Mattel's demand to strike this evidence is meritless. See supra, MGA Parties' Response to Mattel's General Objections. As the instant objection itself |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | makes clear, MGA Parties' intent to rely on this evidence in support of their affirmative defenses has been disclosed to Mattel via the MGA Parties' summary judgment briefing. (See, e.g., MGA MSJ at 6-7.) |
| Russell 03/07/08 Dec., Exhs. 65-66. | Irrelevant, lacks foundation, confusing, prejudicial. Fed. R. Evid. 402, 403. Even if Mattel were aware of Bratz in 2001, that did not put Mattel on notice that Bryant created Bratz while employed by Mattel. The Court rejected MGA's assertions otherwise on summary judgment.<br><br>To the extent the contents of these news articles are offered for the truth of the matter asserted, they are inadmissible hearsay and no exception is applicable. Fed. R. Evid. 801, 802. See, e.g., Doe v. Texaco, Inc., 2006 WL 2850035, at *3 (N.D. Cal. 2006) ("It would thwart the purposes of [the hearsay] rule and the interests of justice to allow newspaper articles to be entered into evidence for the truth of the matters asserted."); Green v. Baca, 226 F.R.D. 624, 638 (C.D. Cal. 2005) (newspaper articles are inadmissible hearsay).<br><br>This alleged evidence should also be stricken because it was not disclosed in MGA's response to Mattel's Supplemental Interrogatory Regarding Defendants' Affirmative Defenses. See General Objection.<br><br>**MGA Parties Dispute This Objection** |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
|  | **As Stated Below:**<br>The Court's ruling the Mattel could not have knowledge of potential Bryant wrongdoing before July 2003 only impacts the statute of limitations analysis; the starting point for assessing Mattel's delay for a laches defense is not necessarily the same as the accrual date for limitations purposes.  See, e.g., Wyler Summit P'ship v. Turner Broad. Sys., Inc., 235 F.3d 1184, 1193 (9th Cir. 2000) (while earlier opinion established accrual date for statute of limitations, it "did not decide directly or by necessary implication … when a possible period for laches actually accrued").  Since a critical issue in establishing MGA's laches defense is whether Mattel unreasonably delayed bringing suit to the prejudice of the MGA Parties, evidence establishing that BRATZ were widely covered in the toy industry media directly relates to that issue and is relevant.<br><br>Nor is this evidence prejudicial.  See White v. Ford Motor Co., 500 F.3d 963, 977 (9th Cir. 2007) (noting that evidence is not unduly prejudicial under Fed. R. Evid. 403 merely because it has a negative impact on a parties' case because the evidence presented "was probative and a proper factor in the jury's analysis, any 'prejudice' experienced by [defendant] was not 'unfair' as that term is used in [Federal Rule of Evidence] 403.");  Brazos River Auth. v. GE Ionics, Inc., 469 F.3d 416, 427 (5th Cir. 2006) ("'Unfair prejudice' as used in [Federal Rule of Evidence] 403 is not to be |

| **Purportedly Objectionable Evidence** | **Mattel's Objections & MGA Parties' Responses Thereto** |
|---|---|
| | equated with testimony that is merely adverse to the opposing party. ***Virtually all evidence is prejudicial; otherwise it would not be material***. The prejudice must be 'unfair.'") (emphasis added); O'Brien v. Papa Gino's of Am., Inc., 780 F.2d 1067, 1075 (1st Cir. 1986) ("Naturally, this testimony was unfavorable to the defendant's case, but we must keep in mind that it is only unfair prejudice with which we are concerned."); Koloda v. Gen. Motors Corp., 716 F.2d 373, 378 (6th Cir. 1983) (to be excluded under Rule 403, evidence "must be more than damaging to the adverse party; it must be *unfairly* prejudicial.").  Mattel cannot explain how media coverage of the BRATZ success is remotely prejudicial to Mattel, let alone unfairly so; nor is there any risk of confusion raised by the fact that the media covered the BRATZ success. Therefore, this evidence is admissible. |
| | Moreover, as discussed in MGA Parties' Request for Judicial Notice, newspaper and magazine articles are the proper subject of judicial notice.  See, e.g., Microsoft Corp. v. BEC Computer Co., 818 F. Supp. 1313, 1319 (C.D. Cal. 1992) ("[T]his Court finds that it may properly take judicial notice of the existence of the article and advertisements from PC Magazine.")  MGA Parties requested judicial notice of the fact that these articles were published, not the truth of their contents. |
| | Finally, Mattel's demand to strike this |

| **Purportedly Objectionable Evidence** | **Mattel's Objections & MGA Parties' Responses Thereto** |
|---|---|
| | evidence is meritless. See supra, MGA Parties' Response to Mattel's General Objections. As the instant objection itself makes clear, MGA Parties' intent to rely on this evidence in support of their affirmative defenses has been disclosed to Mattel via the MGA Parties' summary judgment briefing. (See, e.g., MGA MSJ at 6-7.) |
| Russell 03/07/08 Dec., Exhs. 38-39. | Irrelevant, prejudicial, lacks foundation, confusing. Fed. R. Evid. 402 and 403. Mattel's claims against Defendants are not based upon any similarities between Bratz and Mattel's DIVA STARZ and "Toon Teens" – but upon Bryant's conception and creation of Bratz while a Mattel employee and defendants' complicity in his wrongdoing. See Proctor Dec. Ex. 1 (May 27, 2008 Order), at 7. Moreover, even if Mattel were aware of Bratz in 2001, that did not put Mattel on notice that Bryant created Bratz while employed by Mattel. The Court rejected MGA's assertions otherwise on summary judgment.<br><br>To the extent MGA seeks to rely on Mr. Hitch's statements for their truth, they are inadmissible hearsay. Fed. R. Evid. 801, 802.<br><br>Finally, the evidence cited is incomplete. Mr. Romano has declared—without contradiction by MGA—that MGA did not inform him of the facts relevant to Mattel's claims and that he was unaware of Carter Bryant before this suit was filed. See Declaration of Mateo Romano in Support of Mattel, Inc.'s Consolidated |

| **Purportedly Objectionable Evidence** | **Mattel's Objections & MGA Parties' Responses Thereto** |
|---|---|
| | Opposition to Defendants' Motions for Partial Summary Adjudication, dated March 20, 2008, at ¶ 7, attached as Exhibit A to Mattel, Inc.'s Notice of Lodging in Support of Response to MGA Parties' Statement of Position Regarding Phase 1c Issues.<br><br>**MGA Parties Dispute This Objection As Stated Below:**<br>Exs. 38 and 39 make no reference to and have nothing whatsoever to do with Mattel's Toon Teens or Diva Starz line.<br><br>The Court's ruling that Mattel could not have knowledge of potential Bryant wrongdoing before July 2003 only impacts the statute of limitations analysis; the starting point for assessing Mattel's delay for a laches defense is not necessarily the same as the accrual date for limitations purposes. See, e.g., Wyler Summit P'ship v. Turner Broad. Sys., Inc., 235 F.3d 1184, 1193 (9th Cir. 2000) (while earlier opinion established accrual date for statute of limitations, it "did not decide directly or by necessary implication … when a possible period for laches actually accrued"). Since a critical issue in establishing MGA's laches defense is whether Mattel unreasonably delayed bringing suit to the prejudice of the MGA Parties, evidence establishing that Mattel saw and was interested in possibly licensing BRATZ in early 2001 directly relates to that issue and is relevant. This evidence is not confusing given the plain relevance of Mattel's awareness and interest in BRATZ in |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | 2001.<br><br>Nor is this evidence prejudicial.  See White v. Ford Motor Co., 500 F.3d 963, 977 (9th Cir. 2007) (noting that evidence is not unduly prejudicial under Fed. R. Evid. 403 merely because it has a negative impact on a parties' case because the evidence presented "was probative and a proper factor in the jury's analysis, any 'prejudice' experienced by [defendant] was not 'unfair' as that term is used in [Federal Rule of Evidence] 403."); Brazos River Auth. v. GE Ionics, Inc., 469 F.3d 416, 427 (5th Cir. 2006) ("'Unfair prejudice' as used in [Federal Rule of Evidence] 403 is not to be equated with testimony that is merely adverse to the opposing party. ***Virtually all evidence is prejudicial; otherwise it would not be material***. The prejudice must be 'unfair.'") (emphasis added); O'Brien v. Papa Gino's of Am., Inc., 780 F.2d 1067, 1075 (1st Cir. 1986) ("Naturally, this testimony was unfavorable to the defendant's case, but we must keep in mind that it is only unfair prejudice with which we are concerned."); Koloda v. Gen. Motors Corp., 716 F.2d 373, 378 (6th Cir. 1983) (to be excluded under Rule 403, evidence "must be more than damaging to the adverse party; it must be *unfairly* prejudicial.").  Mattel cannot show that evidence it saw and at one time was interested in potentially licensing BRATZ is remotely prejudicial, let alone unfairly so.<br><br>Moreover, Mattel's cited evidence from |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | the Romano declaration is irrelevant in that it does not tend to make MGA's statement more or less probable.  (Fed. R. Evid. 401.)<br><br>Mr. Hitch's statements are not offered for the truth of the matter asserted, they are offered as proof of the existence of a discussion between Mattel and MGA representative's regarding the Bratz dolls.  (Stmt. at 8.)  As such, they are not hearsay.  See Harvey Barnett, Inc. v. Shidler, 338 F.3d 1125, 1130 n.4 (10th Cir. 2003) (admitting evidence where "these pieces of evidence were not admitted for the truth of the matter asserted therein, but rather for the very fact of their existence").<br><br>Implicit in Mattel's objection is its concession that *Mr. Romano's* statements are certainly non-hearsay.  Mattel's own statements are admissions by a party and therefore non-hearsay.  Fed. R. Evid. 801(d)(2); Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 454 F. Supp. 2d 966, 973-74 (C.D.Cal. 2006) (statements made in emails by party's officers, agents, or employees are non-hearsay).<br><br>The authenticity and foundation for these Exhibits was established in the Hitch Decl. (Dkt. 2937). |
| Hitch Dec. ¶ 6 (Dkt 2937):<br><br>I confronted Mr. Romano with this information on April 24, 2001. | Mr. Hitch's declaration is hearsay and lacks foundation. Fed. R. Evid. 801, 802. His characterizations of the emails between himself and Mr. Romano are also |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| Attached as Exhibit E is a true and correct copy of an e-mail starting on April 24, 2001 from me to Mateo Romano of Mattel bearing Bates numbers MGA 03059 15- 917, which was previously attached to the Jason Russell declaration as Exhibit 39. In response to my inquiry about Mattel distributing non-competing products, Mr. Romano cited "restrictions from El Segundo" as the reason why Mattel was not interested in MGA's products. I understood the reference to "El Segundo" to be to Mattel, Inc.'s main offices, which are located in El Segundo, California. In other words, Mr. Romano was explaining to me that he had been instructed by Mattel, Inc. not to carry products that Mattel believed were too similar to Mattel's existing or planned products. | improper summaries of documents which are not voluminous and speak for themselves, and violate the best evidence rule. Fed. R. Evid. 1002, 1004, 1006. This paragraph is also argumentative and conclusory in violation of Local Rule 7-7. <br><br> See also supra at Objections to Russell 03/07/08 Dec., Exhs. 38-39. <br><br> **MGA Parties Dispute This Objection As Stated Below:** <br><br> Mr. Hitch's declaration explains his understanding of references in the attached email.  It is therefore "factual, evidentiary matter" as required by Local Rule 7-7.  The testimony relates Hitch's own understanding and beliefs, so there is no issue of foundation or hearsay. <br><br> The emails themselves are not offered for the truth of the matter asserted, they are offered as proof of the existence of a discussion between Mattel and MGA representative's regarding the Bratz dolls. (Stmt. at 8.)  As such, they are not hearsay.  See Harvey Barnett, Inc. v. Shidler, 338 F.3d 1125, 1130 n.4 (10th Cir. 2003) (admitting evidence where "these pieces of evidence were not admitted for the truth of the matter asserted therein, but rather for the very fact of their existence").  Moreover, the best evidence rule does not apply.  Fed. R. Evid. 1002 (best evidence rule only applies where content of document is at issue). |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | Implicit in Mattel's objection is its concession that <u>Mr. Romano's</u> statements are certainly non-hearsay.  Mattel's own statements are admissions by a party and therefore non-hearsay.  Fed. R. Evid. 801(d)(2); <u>Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.</u>, 454 F. Supp. 2d 966, 973-74 (C.D.Cal. 2006) (statements made in emails by party's officers, agents, or employees are non-hearsay). <br><br> <u>See</u> also <u>supra</u> at MGA Response to Mattel Objections to Russell 03/07/08 Dec., Exhs. 38-39. |
| Nolan 03/24/08 Dec. (Dkt. 2789), Exh. 106. | Irrelevant and confusing. Fed. R. Evid. 402, 403. Even if Mattel were aware of Bratz in 2001, that did not put Mattel on notice that Bryant created Bratz while employed by Mattel. <br><br> <u>See</u> also <u>supra</u> at Objections to Russell 03/07/08 Dec., Exhs. 38-39. <br><br> **<u>MGA Parties Dispute This Objection As Stated Below:</u>** <br> The Court's ruling that Mattel could not have knowledge of potential Bryant wrongdoing before July 2003 only impacts the statute of limitations analysis; the starting point for assessing Mattel's delay for a laches defense is not necessarily the same as the accrual date for limitations purposes.  <u>See, e.g.</u>, <u>Wyler Summit P'ship v. Turner Broad. Sys., Inc.</u>, 235 F.3d 1184, 1193 (9th Cir. 2000) (while earlier opinion established accrual date for statute of limitations, it "did not |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | decide directly or by necessary implication … when a possible period for laches actually accrued").  Since a critical issue in establishing MGA's laches defense is whether Mattel unreasonably delayed bringing suit to the prejudice of the MGA Parties, evidence establishing that Mattel saw and was interested in possibly licensing BRATZ in early 2001 directly relates to that issue and is relevant.  This evidence is not confusing given the plain relevance of Mattel's awareness and interest in BRATZ in 2001.<br><br>See supra at MGA Response to Mattel Objections to Russell 03/07/08 Dec., Exhs. 38-39. |
| Proctor 04/14/08 Dec. (Dkt. 3172), Exh. 97. | Lack of authenticity, lacks foundation. Fed. R. Evid. 901. Irrelevant and confusing. Fed. R. Evid. 402 and 403. The mere fact that Mattel learned that Bratz was being offered for sale by MGA could not have, and should not have, led Mattel to the conclusion that Bratz was secretly developed by Carter Bryant while he was employed by Mattel. Nor could similarities between Bratz and Mattel's DIVA STARZ and "Toon Teens" have led to such a conclusion. This argument was previously raised by MGA in its motion for summary judgment and rejected. The MGA Parties fail to articulate any reason the Court should revisit its finding that July 18, 2003 is earliest date on which Mattel had any possible knowledge of the wrongdoing at issue in this lawsuit. |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | **MGA Parties Dispute This Objection As Stated Below:**<br><br>As a preliminary matter, it is worth noting that Mattel is objecting on foundation and authenticity grounds <u>to a document it cited in summary judgment briefing</u> and was attached to the Proctor declaration.<br><br>The authenticity and foundation for this document, which is one of Mattel's business records, is established by Mattel's counsel's production of this document, accompanied by a statement that this is a true and correct copy, and reliance on this document in its own argument.  <u>See</u> <u>Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.</u>, 454 F. Supp. 2d 966, 972 (C.D.Cal. 2006) ("production of the items at issue in response to a discovery request" by party or its agent satisfies authentification requirement, even if party itself later challenges authenticity); <u>see also</u> <u>United States v. Brown</u>, 688 F.2d 1112, 1116 (7th Cir. 1982) ("Once [a defendant] voluntarily produced the documents and implicitly represented them to be [corporate] records, he cannot be heard to contend that they are not [corporate] records.").<br><br>It is unquestionably relevant.  Evidence is relevant under Fed. R. Evid. 401 if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable."  This document directly |

| **Purportedly Objectionable Evidence** | **Mattel's Objections & MGA Parties' Responses Thereto** |
|---|---|
| | addresses Mattel's interest in seeking to delay its suit against the MGA Parties, such as Mattel's loss of market share and strategies to overcome the success of BRATZ, and it is therefore relevant to the MGA Parties laches defense. Courts in this Circuit routinely permit such evidence of "motive."  See Rondor Music Int'l, Inc. v. TVT Records LLC, 2006 WL 5105272, at *13 (C.D. Cal. Aug. 21, 2006) (denying in part plaintiffs' motion *in limine* seeking to exclude evidence of size, wealth and financial condition of plaintiffs in copyright infringement action and permitting evidence "refer[ring] indirectly to the relative size and influence of plaintiff Rondor and Universal Music Group in questioning ***the motives and credibility of plaintiff Sterling***"); see also Memry Corp. v. Kentucky Oil Tech., N.V., 2007 WL 4208317, at *10 (N.D. Cal. Nov. 27, 2007) (deferring ruling on motion *in limine* seeking to exclude evidence and argument on motives for filing suit but noting that "***it appears, however, that the evidence may be relevant to impeach or show bias . . . among other possible bases for relevance***") (emphasis added). Since a critical issue in establishing MGA's laches defense is whether Mattel unreasonably delayed bringing suit to the prejudice of the MGA Parties, evidence establishing Mattel's interest in doing so directly relates to that issue and is relevant.  This evidence is not confusing given the plain relevance of Mattel's concerns with its loss of market share and the rising success of BRATZ. |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | |
| Russell 03/07/08 Dec. (Dkt 2578), Exhs. 30-31. | Irrelevant, confusing. Fed. R. Evid. 402, 403. This Court has already rejected the argument that the August 2002 anonymous letter to Mattel's CEO somehow put Mattel on notice of the claims at issue in this case. See May 27, 2008 Order, at 2, Proctor Dec. Exh. 1; June 2, 2008 Order, at 2, Proctor Dec., Exh. 2.

**MGA Parties Dispute This Objection As Stated Below:**
The Court's ruling that Mattel could not have knowledge of potential Bryant wrongdoing before July 2003 only impacts the statute of limitations analysis; the starting point for assessing Mattel's delay for a laches defense is not necessarily the same as the accrual date for limitations purposes. See, e.g., Wyler Summit P'ship v. Turner Broad. Sys., Inc., 235 F.3d 1184, 1193 (9th Cir. 2000) (while earlier opinion established accrual date for statute of limitations, it "did not decide directly or by necessary implication … when a possible period for laches actually accrued"). Since a critical issue in establishing MGA's laches defense is whether Mattel unreasonably delayed bringing suit to the prejudice of the MGA Parties, evidence establishing that Mattel received a letter stating that Carter Bryant created the BRATZ while at Mattel and that Mattel investigators were "aware of the situation" with Carter Bryant and Bratz and already had been investigating it for several months in 2003 directly relates to that issue and is |

| **Purportedly Objectionable Evidence** | **Mattel's Objections & MGA Parties' Responses Thereto** |
|---|---|
| | relevant.  This evidence is not confusing given the plain relevance of Mattel's awareness in 2003 of Carter Bryant's creation of BRATZ while still at Mattel. |
| Proctor 04/14/08 Dec. Exh. 103. | Irrelevant, confusing, lacks foundation, hearsay. Fed. R. Evid. 402, 403, 801, 802. The Court has already ruled that such general evidence of Mattel's business condition is irrelevant. See Trial Tr. at 3996:1-3 ("I'm not going to permit these broad-based "House is on Fire" questions. This is nonsense. *This is not evidence of anything.* This is a blunderbuss attack." (emphasis added)).<br><br>Moreover, this evidence is inadmissible because it was not disclosed in MGA's response to Mattel's Supplemental Interrogatory Regarding Defendants' Affirmative Defenses. See General Objections.<br><br>**MGA Parties Dispute This Objection As Stated Below:**<br><br>As a preliminary matter, it is worth noting that Mattel is objecting on foundation grounds to a document <u>it cited in summary judgment briefing</u> and was attached to the Proctor declaration.<br><br>The authenticity and foundation for this document, which is one of Mattel's business records, is established by Mattel's counsel's production of this document, accompanied by a statement that this is a true and correct copy, and reliance on this document in its own |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | argument.  See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 454 F. Supp. 2d 966, 972 (C.D.Cal. 2006) ("production of the items at issue in response to a discovery request" by party or its agent satisfies authentification requirement, even if party itself later challenges authenticity); see also United States v. Brown, 688 F.2d 1112, 1116 (7th Cir. 1982) ("Once [a defendant] voluntarily produced the documents and implicitly represented them to be [corporate] records, he cannot be heard to contend that they are not [corporate] records.").

Moreover, Mattel's own statements are admissions by a party and therefore non-hearsay.  Fed. R. Evid. 801(d)(2); Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 454 F. Supp. 2d 966, 973-74 (C.D.Cal. 2006) (statements made in emails by party's officers, agents, or employees are non-hearsay).

While Mattel cites the Court's ruling indicating the Court's reluctance to admit this evidence before the jury on liability and damages, it is unquestionably relevant to the MGA Parties' affirmative defenses to be decided by the Court, and this Court refused Mattel's request to categorically exclude such evidence in light of its potential applicability to MGA's presentation of its affirmative defenses in 1-B.  (5/22/08 PM Tr. at 23:7-24.) Evidence is relevant under Fed. R. Evid. 401 if it tends "to make the existence of any fact that is of consequence to the |

| **Purportedly Objectionable Evidence** | **Mattel's Objections & MGA Parties' Responses Thereto** |
|---|---|
| | determination of the action more probable or less probable." This document directly addresses Mattel's interest in seeking to delay its suit against the MGA Parties, such as Mattel's loss of market share and strategies to overcome the success of BRATZ, and it is therefore relevant to the MGA Parties laches defense. Courts in this Circuit routinely permit such evidence of "motive." See Rondor Music Int'l, Inc. v. TVT Records LLC, 2006 WL 5105272, at *13 (C.D. Cal. Aug. 21, 2006) (denying in part plaintiffs' motion *in limine* seeking to exclude evidence of size, wealth and financial condition of plaintiffs in copyright infringement action and permitting evidence "refer[ring] indirectly to the relative size and influence of plaintiff Rondor and Universal Music Group in questioning ***the motives and credibility of plaintiff Sterling***"); see also Memry Corp. v. Kentucky Oil Tech., N.V., 2007 WL 4208317, at *10 (N.D. Cal. Nov. 27, 2007) (deferring ruling on motion *in limine* seeking to exclude evidence and argument on motives for filing suit but noting that "***it appears, however, that the evidence may be relevant to impeach or show bias . . . among other possible bases for relevance***") (emphasis added). Since a critical issue in establishing MGA's laches defense is whether Mattel unreasonably delayed bringing suit to the prejudice of the MGA Parties, evidence establishing Mattel's interest in doing so directly relates to that issue and is relevant. This evidence is not confusing given the plain relevance of Mattel's |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | concerns with its loss of market share and its plans to cope with the rising success of BRATZ.<br><br>Finally, Mattel's demand to strike this evidence is meritless. See supra, MGA Parties' Response to Mattel's General Objections. MGA Parties' intent to rely on this evidence in support of their affirmative defenses has been disclosed to Mattel via the MGA Parties' summary judgment and motion *in limine* briefing. (See, e.g., MGA MSJ at 12-13; MGA's Opposition to Mattel's MIL No. 2, at 1-4 (specifically citing the evidence at issue in support of MGA Parties' laches, waiver and estoppel defenses).) |
| Russell 03/07/08 Dec. (Dkt 2576) Exh. 14 (Kilpin Depo. at 168:17-23; 235:29-22):<br>Q. It says "Barbie 2003 Status Summary." Do you see that?<br>A. Yes.<br>Q. Can you read the next line for me?<br>A. "A Brand in Crisis."<br>Q. What brand were you referring to?<br>A. Barbie.<br>Q. And what did you mean by "The House is on Fire!"?<br>A. It's the same meaning as a brand in crisis in my view. | See supra at Objections to Proctor 04/14/08 Dec. Exh. 103.<br><br>**MGA Parties Dispute This Objection As Stated Below:**<br><br>Kilpin is testifying to his own recollection and state of mind at the time of creating the document, so there is no issue of foundation.<br><br>Moreover, Mattel's own statements are admissions by a party and therefore non-hearsay.  Fed. R. Evid. 801(d)(2); Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 454 F. Supp. 2d 966, 973-74 (C.D. Cal. 2006) (statements made in emails by party's officers, agents, or employees are non-hearsay).<br><br>See supra at MGA Response to |

-35-

| **Purportedly Objectionable Evidence** | **Mattel's Objections & MGA Parties' Responses Thereto** |
|---|---|
| | Objections to Proctor 04/14/08 Dec. Exh. 103. |
| Proctor 04/14/08 Dec., Exh. 93. | See supra at Objections to Proctor 04/14/08 Dec. Exh. 103.<br><br>**MGA Parties Dispute This Objection As Stated Below:**<br>See supra at MGA Response to Objections to Proctor 04/14/08 Dec. Exh. 103. |
| Proctor Dec., Exh. 94. | See supra at Objections to Proctor 04/14/08 Dec. Exh. 103.<br><br>**MGA Parties Dispute This Objection As Stated Below:**<br>See supra at MGA Response to Objections to Proctor 04/14/08 Dec. Exh. 103. |
| Proctor Dec., Exh. 96. | See supra at Objections to Proctor 04/14/08 Dec. Exh. 103.<br><br>**MGA Parties Dispute This Objection As Stated Below:**<br>See supra at MGA Response to Objections to Proctor 04/14/08 Dec. Exh. 103. |
| Russell 03/07/08 Dec., Exh. 21 (Brawer Depo. at 232:19-233:22):<br><br>Q. What specifically have you heard Mr. Bousquette say on the topic of using litigation as a business strategy?<br>A. Let me think about. You're saying specifically. When we would sit in staff meetings, which happened weekly and | See supra at Objections to Proctor 04/14/08 Dec. Exh. 103.<br><br>**MGA Parties Dispute This Objection As Stated Below:**<br><br>Brawer is testifying to his own recollection and state of mind, so there is no issue of foundation. |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| for hours and hours at end with Matt, we would review the business and the dynamics going on in the business. This would be taking place 2002, 2003, 2004. I can't differentiate between the meetings because there were probably in that time period alone over a hundred. But in some of the meetings we would review what our market share and situation was with girls and with Barbie and we would talk about different efforts the company was making to try and fight the loss of share of Barbie and the declining sales of Barbie. There would always be two sides in the room. There would be the salesoriented people: myself, Milt Zablow. We would get blamed for the fact that not every store had every doll exactly on the shelf exactly at the time and that was hurting our sales. There was pushback from another side that would say, "Hey, the issue goes well beyond just distribution." There was competitive issues such as Bratz that were forcing the decline of Barbie. Some of the comments around what the company was doing over and above our distribution problems were to face off with MGA with litigation as a business strategy. That would be – it wouldn't be discussed much beyond that, but one of the strategies for trying to defeat Bratz was to litigate them to death. To litigate the owners or to litigate MGA to death and that was one of the business strategies. | Moreover, Brawer is discussing statements made by Mattel agents and employees within the scope of their agency and employment.  Such statements are non-hearsay.  Fed. R. Evid. 801(d)(2); Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 454 F. Supp. 2d 966, 973-74 (C.D.Cal. 2006) (statements made in emails by party's officers, agents, or employees are non-hearsay).

See supra at MGA Response to Objections to Proctor 04/14/08 Dec. Exh. 103. |

| **Purportedly Objectionable Evidence** | **Mattel's Objections & MGA Parties' Responses Thereto** |
|---|---|
| Nolan 3/24/08 Decl. Vol. 1, Ex. 77 (Cloonan) at 170:4-8 : <br><br> Q. Do you remember what the vinyl heads looked like that -- that you transported, you talked about earlier, in connection with the Toon Teens project? <br> A. It's been too long. | Irrelevant, confusing, prejudicial, and incomplete. Fed. R. Evid. 106, 402, 403. Ms. Cloonan gave this testimony while discussing a vinyl head that was in fact marked as an exhibit and shown to her at the deposition. See Cloonan Tr. at 169:13-24, Proctor Dec., Exh. 15. Nor is it clear how the vinyl head at issue has any conceivable relevance to the issues here. <br><br> This alleged evidence should also be stricken because it was not disclosed in MGA's response to Mattel's Supplemental Interrogatory Regarding Defendants' Affirmative Defenses. See General Objection. <br><br> **MGA Parties Dispute This Objection As Stated Below:** <br><br> Cloonan's testimony is unquestionably relevant. Evidence is relevant under Fed. R. Evid. 401 if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." A critical issue in establishing MGA's laches defense is whether Mattel's unreasonable delay in filing suit prejudiced the MGA Parties in depriving them of evidence. Evidentiary prejudice involves "lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died." Danjaq LLC v. Sony Corp., 263 F.3d 942, 955 (9th Cir. 2001). Clearly, the testimony of a witness demonstrating a failure of memory due to the prolonged passage of time directly relates to that issue and is |

| **Purportedly Objectionable Evidence** | **Mattel's Objections & MGA Parties' Responses Thereto** |
|---|---|
| | relevant.  This evidence is not confusing given the plain relevance of the prejudice sustained by MGA.  Nor is it incomplete, since the MGA Parties are citing this testimony merely to show Cloonan's inability to remember events long past.

Nor is this evidence prejudicial.  See White v. Ford Motor Co., 500 F.3d 963, 977 (9th Cir. 2007) (noting that evidence is not unduly prejudicial under Fed. R. Evid. 403 merely because it has a negative impact on a parties' case because the evidence presented "was probative and a proper factor in the jury's analysis, any 'prejudice' experienced by [defendant] was not 'unfair' as that term is used in [Federal Rule of Evidence] 403."); Brazos River Auth. v. GE Ionics, Inc., 469 F.3d 416, 427 (5th Cir. 2006) ("'Unfair prejudice' as used in [Federal Rule of Evidence] 403 is not to be equated with testimony that is merely adverse to the opposing party. **Virtually all evidence is prejudicial; otherwise it would not be material**. The prejudice must be 'unfair.'") (emphasis added); O'Brien v. Papa Gino's of Am., Inc., 780 F.2d 1067, 1075 (1st Cir. 1986) ("Naturally, this testimony was unfavorable to the defendant's case, but we must keep in mind that it is only unfair prejudice with which we are concerned."); Koloda v. Gen. Motors Corp., 716 F.2d 373, 378 (6th Cir. 1983) (to be excluded under Rule 403, evidence "must be more than damaging to the adverse party; it must be *unfairly* prejudicial.").  In other words, the fact that this evidence may |

| **Purportedly Objectionable Evidence** | **Mattel's Objections & MGA Parties' Responses Thereto** |
|---|---|
| | paint an *unflattering* picture of Mattel's deliberate delay in suing its competitor does not make it an *unfair* one. Therefore, Cloonan's testimony is admissible.<br><br>Finally, Mattel's demand to strike this evidence is meritless. See supra, MGA Parties' Response to Mattel's General Objections. MGA Parties' intent to rely on this evidence in support of their affirmative defenses has been disclosed to Mattel via the MGA Parties' summary judgment and motion *in limine* briefing. (See, e.g., MGA MSJ Opp'n at 29-30; MGA's Opposition to Mattel's MIL No. 2, at 1-4 (specifically citing the evidence at issue in support of MGA Parties' laches, waiver and estoppel defenses).) |
| Nolan 3/24/08 Decl. Vol. 1, Ex. 78 (De Anda) at 152:2-6:<br><br>THE WITNESS: As I sit here today, I do not have a recollection -- not that I did not hear it -- I don't recall ever hearing that. That doesn't mean that I may or may not have. As we sit here today, ten years is a long time. | Irrelevant, confusing, prejudicial, and incomplete. Fed. R. Evid. 106, 402, 403. Mr. de Anda gave was referring to the period of his employment at Mattel, not the wrongdoing underlying Mattel's claims, as evidenced by the question defendants asked:<br><br>Q. But, again, I just want to be clear that although I'm talking about the **ten-year period of time that you've been at Mattel** -- I just want to make this absolutely clear -- you have no recollection of anybody coming to you in your capacity as Vice President in charge of Security or hearing that someone approached a member of your department and reported that there were people at Mattel who were copying products of |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
|  | other companies? You never heard that, did you? |
|  | De Anda Tr. at 151:15-24, Proctor Dec., Exh. 16 (emphasis added). |
|  | This alleged evidence should also be stricken because it was not disclosed in MGA's response to Mattel's Supplemental Interrogatory Regarding Defendants' Affirmative Defenses. See General Objection. |
|  | **MGA Parties Dispute This Objection As Stated Below:** |
|  | De Anda's testimony is unquestionably relevant. Evidence is relevant under Fed. R. Evid. 401 if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." A critical issue in establishing MGA's laches defense is whether Mattel's unreasonable delay in filing suit prejudiced the MGA Parties in depriving them of evidence. Evidentiary prejudice involves "lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died." Danjaq LLC v. Sony Corp., 263 F.3d 942, 955 (9th Cir. 2001). Clearly, the testimony of a witness demonstrating a failure of memory due to the prolonged passage of time directly relates to that issue and is relevant. This evidence is not confusing given the plain relevance of the prejudice sustained by MGA. Nor is it incomplete, since the MGA Parties are citing this |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | testimony merely to show De Anda's inability to remember events long past.

Nor is this evidence prejudicial.  See White v. Ford Motor Co., 500 F.3d 963, 977 (9th Cir. 2007) (noting that evidence is not unduly prejudicial under Fed. R. Evid. 403 merely because it has a negative impact on a parties' case because the evidence presented "was probative and a proper factor in the jury's analysis, any 'prejudice' experienced by [defendant] was not 'unfair' as that term is used in [Federal Rule of Evidence] 403."); Brazos River Auth. v. GE Ionics, Inc., 469 F.3d 416, 427 (5th Cir. 2006) ("'Unfair prejudice' as used in [Federal Rule of Evidence] 403 is not to be equated with testimony that is merely adverse to the opposing party. *Virtually all evidence is prejudicial; otherwise it would not be material*. The prejudice must be 'unfair.'") (emphasis added); O'Brien v. Papa Gino's of Am., Inc., 780 F.2d 1067, 1075 (1st Cir. 1986) ("Naturally, this testimony was unfavorable to the defendant's case, but we must keep in mind that it is only unfair prejudice with which we are concerned."); Koloda v. Gen. Motors Corp., 716 F.2d 373, 378 (6th Cir. 1983) (to be excluded under Rule 403, evidence "must be more than damaging to the adverse party; it must be *unfairly* prejudicial.").  In other words, the fact that this evidence may paint an *unflattering* picture of Mattel's deliberate delay in suing its competitor does not make it an *unfair* one.  Therefore, De Anda's testimony is |

| **Purportedly Objectionable Evidence** | **Mattel's Objections & MGA Parties' Responses Thereto** |
|---|---|
| | admissible.<br><br>Finally, Mattel's demand to strike this evidence is meritless. See supra, MGA Parties' Response to Mattel's General Objections. MGA Parties' intent to rely on this evidence in support of their affirmative defenses has been disclosed to Mattel via the MGA Parties' summary judgment briefing. (See, e.g., MGA MSJ Opp'n at 29-30; MGA's Opposition to Mattel's MIL No. 2, at 1-4 (specifically citing the evidence at issue in support of MGA Parties' laches, waiver and estoppel defenses).) |
| Trial Tr. at 4122:12-4125:7; 4123:22-24; 4124:23-24 (Leahy):<br><br>Q. BY MR. QUINN: During the period of time that you were employed at Mattel, did you do side projects outside of Mattel?<br>A. Yes, I did.<br>Q. For which you were paid?<br>A. Correct.<br>Q. On approximately how many occasions did you do such projects?<br>A. Maybe about seven or eight.<br>Q. Did you, in connection with those seven or eight projects, always have the permission of your supervisor at Mattel?<br>A. I didn't necessarily have the permission of him. But he told me how to do it. There was a time when my husband wasn't working, and we didn't have a lot of money. And he said well, he felt badly for me. So he said here's a | Irrelevant, confusing, prejudicial, and incomplete. Fed. R. Evid. 106, 402, 403. The Court has already excluded this testimony because Ms. Leahy confirmed that she knew non-Mattel work was not authorized by her contract. "I didn't believe that my contract authorized me to do that."<br><br>Trial Tr. at 4124:23-4125:24. As the Court accordingly ruled, "But I think to get now into evidence of moonlighting where it's acknowledged that it's in conflict with the contract, notwithstanding that it may be common, I think it gets outside the field." Trial Tr. at 4124:18-4125:7.<br><br>**MGA Parties Dispute This Objection As Stated Below:**<br>Mattel's attempt to characterize this Court's sustaining of Mattel's objection to Leahy's testimony because she "knew her |

| **Purportedly Objectionable Evidence** | **Mattel's Objections & MGA Parties' Responses Thereto** |
|---|---|
| way you can make extra money.<br>Q. And did that apply for each of the jobs that you did?<br>A. No, it didn't. I didn't tell him about any of the jobs that I was doing at the time. He just told me how to do it.<br>Q. Did you ask him for written permission to do these outside jobs?<br>A. No, I did not.<br>Q. My understanding is that your supervisor was Michael Hebden?<br>A. Yes.<br>Q. And my understanding is you told him about your financial situation?<br>A. Well, we were very close. He knew about it.<br>Q. And he was your supervisor?<br>A. Yes.<br>Q. And he said that one way you can make money is to contact vendors, other vendors for extra work; right?<br>A. That's what he told me, yes.<br>Q. And he didn't tell you a specific vendor to contact?<br>A. No, he didn't tell me a specific vendor. He said check with the vendors you are working with and see if they have any extra runoff work.<br>Q. He said as far as he was concerned, that's okay if you did that?<br>A. Well, I don't know if he said that verbatim.<br>Q. He's the one who said here's what you should do. Contact these vendors and get some extra work.<br>A. Correct.<br>Q. And your understanding was that your written employment agreement, under that agreement, that would have | non-Mattel work was not authorized" is in itself incomplete, as it ignores the rest of the Court's consideration of this issue. Specifically, MGA's counsel pointed out that her testimony confirming Mattel's explicit knowledge (indeed, facilitation) of her work for other companies is an issue for the "1-B case" (where MGA's affirmative defenses would be addressed), and the Court agreed, stating "[t]hat's going to be different.  We will revisit the issue in 1-B… [but] for 1-A purposes, we're just focusing on the breach of contract." (Tr. 4125:25-4126:11.)<br><br>Leahy's testimony is unquestionably relevant.  Evidence is relevant under Fed. R. Evid. 401 if "it tends to make the existence of any fact that is of consequence… more or less probable."  A critical issue in establishing MGA's waiver defense is whether Mattel engaged in conduct "so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished."  Rubin v. Los Angeles Fed. Sav. & Loan Assn., 159 Cal. App. 3d 292, 298 (1984).  Obviously, since Leahy's testimony proves Mattel was not enforcing its contractual anti-moonlighting provision, indeed, facilitating her breach of the anti-moonlighting provision, it is wholly relevant to MGA's waiver defense.  This evidence is not confusing given the plain relevance of the Mattel's conduct in establishing its waiver.<br><br>Nor is this evidence prejudicial.  See |

-44-

| **Purportedly Objectionable Evidence** | **Mattel's Objections & MGA Parties' Responses Thereto** |
|---|---|
| been prohibited?<br>A. I knew it was considered a conflict of interest in the employment agreement. But it was a very common thing for people to do in the toy business as well as Mattel.<br>Q. But your supervisor is the one who suggested that you do it to help make ends meet; correct?<br>A. He said this is a way you can do it. He didn't --<br>Q. Right. And you didn't feel it was necessary to tell him you were doing what he said to do.<br>A. Yeah, I didn't want to tell him.<br>THE COURT: Let me ask and try to cut to the chase.<br>Did you understand – you mentioned a conflict of interest. Did you understand what you were doing, the moonlighting, the working for the other vendors, to be in conflict with your agreement with Mattel?<br>THE WITNESS: I knew I could lose my job over it, but it was such a common thing, that everybody did it, and at that point I was going to lose my car.<br>THE COURT: Again, I'm not asking for whatever rationalization you may have imposed on it. And I'm not trying to make a moral judgment here. Just in terms of your understanding with your contract with Mattel, did you or did you not believe that your contract authorized you to do that?<br>THE WITNESS: I didn't believe that my contract authorized me to do that.<br>A. No, he didn't tell me a specific | White v. Ford Motor Co., 500 F.3d 963, 977 (9th Cir. 2007) (noting that evidence is not unduly prejudicial under Fed. R. Evid. 403 merely because it has a negative impact on a parties' case because the evidence presented "was probative and a proper factor in the jury's analysis, any 'prejudice' experienced by [defendant] was not 'unfair' as that term is used in [Federal Rule of Evidence] 403."); Brazos River Auth. v. GE Ionics, Inc., 469 F.3d 416, 427 (5th Cir. 2006) ("'Unfair prejudice' as used in [Federal Rule of Evidence] 403 is not to be equated with testimony that is merely adverse to the opposing party. ***Virtually all evidence is prejudicial; otherwise it would not be material***. The prejudice must be 'unfair.'") (emphasis added); O'Brien v. Papa Gino's of Am., Inc., 780 F.2d 1067, 1075 (1st Cir. 1986) ("Naturally, this testimony was unfavorable to the defendant's case, but we must keep in mind that it is only unfair prejudice with which we are concerned."); Koloda v. Gen. Motors Corp., 716 F.2d 373, 378 (6th Cir. 1983) ("To be excluded under Rule 403, evidence must be more than damaging to party's case; it must be unfairly prejudicial.").  In other words, the fact that this evidence may paint an *unflattering* picture of Mattel's knowingly ignoring the fact that one of its own supervisory employees was facilitating its employees' breach of the non-moonlighting provision does not make it an *unfair* one.  Therefore, Leahy's testimony is admissible. |

| **Purportedly Objectionable Evidence** | **Mattel's Objections & MGA Parties' Responses Thereto** |
|---|---|
| vendor. He said check with the vendors you are working with and see if they have any extra runoff work.<br>THE WITNESS: I knew I could lose my job over it, but it was such a common thing, that everybody did it, and at | |
| Anderson 3/07/08 Dec. (Dkt 2963), Exh. 22 (Leahy Depo) at 181:6-182:12; 180:12-18):<br><br>Q What other work did you do?<br>A I did work for a vendor who would give me the work, and I would do it, and I didn't know who it was for. I just did it for her. It was her run-off work.<br>Q Who was the vendor?<br>A. Am I allowed to say?<br>MR. MC FARLAND: Yes, you can answer.<br>THE WITNESS: It was Ilana Raynes.<br>BY MR. ZELLER:<br>Q Can you spell that, please?<br>A. I-L-A-N-A R-A-Y-N-E-S.<br>Q Was she -- was she a Mattel vendor at that time?<br>A. Yeah. She was a free-lance sculptor.<br>Q How is it you came to become aware of her?<br>A. Michael knew her somehow -- Michael Hebden.<br>Q So you were introduced to her through Mattel?<br>A. Yes.<br>Q Does Ms. Raynes -- I should say, at that time, was Ms. Raynes living in southern California? | Irrelevant and prejudicial. <u>Fed. R. Evid.</u> 402, 403. The Court has already excluded Ms. Leahy's moonlighting testimony because she confirmed that she knew non-Mattel work was not authorized by her contract: "But I think to get now into evidence of moonlighting where it's acknowledged that it's in conflict with the contract, not withstanding that it may be common, I think it gets outside the field." Trial Tr. at 4124:18-4125:7.<br><br>To the extent they are offered for the truth of the matter asserted, Ms. Leahy's out of court statements are also inadmissible hearsay to which no exception is applicable. Fed. R. Evid. 801, 802.<br><br>**<u>MGA Parties Dispute This Objection As Stated Below:</u>**<br><br>Mattel's attempt to characterize this Court's sustaining of Mattel's objection to Leahy's testimony because she "knew her non-Mattel work was not authorized" ignores the rest of the Court's consideration of this issue.  Specifically, MGA's counsel pointed out that her testimony confirming Mattel's explicit knowledge (indeed, facilitation) of her work for other companies is an issue for |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| A. Yes.<br>Q Where?<br>A. She lived in the Hollywood Hills in two different places.<br>Q And if I understood your testimony correctly, she would have - - she would hire you on to do work for other companies, but you weren't sure of the identity of the other companies?<br>A. Right.<br>Q What was -- what was the kind of work that you did?<br>A. It was your standard moonlighting sculpting things.<br>Did you when you were working there at Mattel work for any Mattel competitor?<br>A. Yes, I did.<br>Q Who did you work for?<br>A. I did a free-lance job for Hanna-Barbera.<br>Q And what did you do?<br>A. It was a Penelope pit stop. | the "1-B case" (where MGA's affirmative defenses would be addressed), and the Court agreed, stating "[t]hat's going to be different.  We will revisit the issue in 1-B… [but] for 1-A purposes, we're just focusing on the breach of contract." (Tr. 4125:25-4126:11.)<br><br>Leahy's testimony is unquestionably relevant.  Evidence is relevant under Fed. R. Evid. 401 if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable."  A critical issue in establishing MGA's waiver defense is whether Mattel engaged in conduct "so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished."  Rubin v. Los Angeles Fed. Sav. & Loan Assn., 159 Cal. App. 3d 292, 298 (1984).  Obviously, since Leahy's testimony proves Mattel was not enforcing its contractual anti-moonlighting provision, indeed, facilitating her breach of the anti-moonlighting provision, it is wholly relevant to MGA's waiver defense.  This evidence is not confusing given the plain relevance of the Mattel's conduct in establishing its waiver.<br><br>Nor is this evidence prejudicial.  See White v. Ford Motor Co., 500 F.3d 963, 977 (9th Cir. 2007) (noting that evidence is not unduly prejudicial under Fed. R. Evid. 403 merely because it has a negative impact on a parties' case because the evidence presented "was probative |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | and a proper factor in the jury's analysis, any 'prejudice' experienced by [defendant] was not 'unfair' as that term is used in [Federal Rule of Evidence] 403."); Brazos River Auth. v. GE Ionics, Inc., 469 F.3d 416, 427 (5th Cir. 2006) ("'Unfair prejudice' as used in [Federal Rule of Evidence] 403 is not to be equated with testimony that is merely adverse to the opposing party. ***Virtually all evidence is prejudicial; otherwise it would not be material***. The prejudice must be 'unfair.'") (emphasis added); O'Brien v. Papa Gino's of Am., Inc., 780 F.2d 1067, 1075 (1st Cir. 1986) ("Naturally, this testimony was unfavorable to the defendant's case, but we must keep in mind that it is only unfair prejudice with which we are concerned."); Koloda v. Gen. Motors Corp., 716 F.2d 373, 378 (6th Cir. 1983) (to be excluded under Rule 403, evidence "must be more than damaging to the adverse party; it must be *unfairly* prejudicial."). In other words, the fact that this evidence may paint an *unflattering* picture of Mattel's knowingly ignoring the fact that one of its own supervisory employees was facilitating its employees' breach of the non-moonlighting provision does not make it an *unfair* one. Therefore, Leahy's testimony is admissible.

Leahy's testimony at her deposition is not hearsay. See Fed. R. Civ. P. 32 ("at the trial or upon hearing of a motion…, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | present and testifying may be used against any party who was present and represented"). Moreover, the statements of Mattel agents and employees made within the scope of their agency or employment is not hearsay. Fed. R. Evid. 801(d)(2); <u>Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.</u>, 454 F. Supp. 2d 966, 973-74 (C.D.Cal. 2006) (statements made in emails by party's officers, agents, or employees are non-hearsay).Therefore, Leahy's testimony is admissible. |
| Anderson 03/07/08 Dec., Exh. 23 (Marlow Depo. at 48:8-11):<br><br>Q. Did you have an understanding?<br>A. I did not, because it was common knowledge that a lot of people were moonlighting and doing other work and on their times at their own homes and doing stuff. | Irrelevant, confusing and, to the extent it is offered for the truth of the matter asserted, inadmissible hearsay to which no exception is applicable. Fed. R. Evid. 402, 403, 802. Veronica Marlow could not name a single Mattel employee who worked for a competitor—with the exception of Cabrera, Morales, and Salazar, who were immediately terminated upon discovery.[4] Indeed, the Court has already determined that "evidence" such as this is irrelevant and inadmissible: "I'm not going to permit someone to just get up and say, 'Oh, Yeah. I heard hearsay rumors that there's lots of moonlighting going on over at Mattel.' That's not going to fly. It's got to be a specific incident of apples and apples that a person, in a position like Carter Bryant, is moonlighting for a company, |

---

[4] Proctor Dec. Ex. 24 (Marlow Depo. Tr., dated December 28, 2007), at 49:12-51:8; 54:2-55:14.

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | either MGA itself or like MGA, without getting permission." Trial Tr. at 44:23-45:6.<br><br>**MGA Parties Dispute This Objection As Stated Below:**<br>Marlow's testimony is unquestionably relevant.  Evidence is relevant under Fed. R. Evid. 401 if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable."  A critical issue in establishing MGA's waiver defense is whether Mattel engaged in conduct "so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished."  Rubin v. Los Angeles Fed. Sav. & Loan Assn., 159 Cal. App. 3d 292, 298 (1984).  The record reflects that it was not until Veronica Marlow named Cabrera and Morales in her deposition in this action in December 2007 that adverse action was taken by Mattel – in January 2008.  (See e.g. 2/4/08 Tr. 35:8-36:23; Tr. 4415:14-22; MGA Parties' Motion Objecting to Portions of Discovery Master's March 11, 2008 Order (Dkt 2801) at 1-4.)  Contrary to Mattel's statement above, Salazar left Mattel for reasons having nothing to do with moonlighting accusations in 2001– after which she did the bulk of her work for Marlow.  (See Tr. 3454:21-24.)  Conduct by the parties after a dispute has arisen is irrelevant.  Employers Reins. Co. v. Super. Ct., 161 Cal.App.4th 906, 921 (2008) (in interpreting a contract, the only relevant conduct is conduct "performed |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | under the contract before any dispute has arisen"); <u>Heston v. Farmers Ins. Group</u>, 160 Cal.App.3d 402, 413 (1984) ("the actions to be considered [must] occur before a dispute has arisen").  Obviously, since Marlow's testimony suggests Mattel was not enforcing its contractual anti-moonlighting provision, and Mattel has no evidence to counter it took any adverse action against moonlighting employees before 2008, it is wholly relevant to MGA's waiver defense.  This evidence is not confusing given the plain relevance of the Mattel's conduct in establishing its waiver.<br><br>Nor is this evidence prejudicial.  <u>See White v. Ford Motor Co.</u>, 500 F.3d 963, 977 (9th Cir. 2007) (noting that evidence is not unduly prejudicial under Fed. R. Evid. 403 merely because it has a negative impact on a parties' case because the evidence presented "was probative and a proper factor in the jury's analysis, any 'prejudice' experienced by [defendant] was not 'unfair' as that term is used in [Federal Rule of Evidence] 403."); <u>Brazos River Auth. v. GE Ionics, Inc.</u>, 469 F.3d 416, 427 (5th Cir. 2006) ("'Unfair prejudice' as used in [Federal Rule of Evidence] 403 is not to be equated with testimony that is merely adverse to the opposing party. ***Virtually all evidence is prejudicial; otherwise it would not be material***. The prejudice must be 'unfair.'") (emphasis added); <u>O'Brien v. Papa Gino's of Am., Inc.</u>, 780 F.2d 1067, 1075 (1st Cir. 1986) ("Naturally, this testimony was |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | unfavorable to the defendant's case, but we must keep in mind that it is only unfair prejudice with which we are concerned."); Koloda v. Gen. Motors Corp., 716 F.2d 373, 378 (6th Cir. 1983) (to be excluded under Rule 403, evidence "must be more than damaging to the adverse party; it must be *unfairly* prejudicial.").  In other words, the fact that this evidence may paint an *unflattering* picture of Mattel's knowingly ignoring the fact that its employees were breaching the non-moonlighting provision does not make it an *unfair* one.  Therefore, Marlow's testimony is admissible.<br><br>Marlow's testimony at her deposition is not hearsay.  See Fed. R. Civ. P. 32 ("at the trial or upon hearing of a motion…, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying may be used against any party who was present and represented").  Moreover, the statements of Mattel agents and employees made within the scope of their agency or employment is not hearsay.  Fed. R. Evid. 801(d)(2); Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 454 F. Supp. 2d 966, 973-74 (C.D.Cal. 2006) (statements made in emails by party's officers, agents, or employees are non-hearsay).  The testimony relates to Marlow's own beliefs, so there is no issue of foundation.  Therefore, Marlow's testimony is admissible. |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| Anderson 03/07/08 Dec., Exh. 22 (Leahy Depo. at 180:12-184:8):<br><br>Q. Did you when you were working there at M.G.A. -- I'm sorry. Strike that.<br>Did you when you were working there at Mattel work for any Mattel competitor?<br>A. Yes, I did.<br>Q. Who did you work for?<br>A. I did a free-lance job for Hanna-Barbera.<br>Q. And what did you do?<br>A. It was a penelope pit stop.<br>Q. When did you do this?<br>A. I don't remember.<br>Q. Was it sometime in 2000?<br>A. It would have been before that.<br>Q. Your best estimate is 1999 or earlier?<br>A. That's my best estimate.<br>Q. Other than this instance that you mentioned for Hanna-Barbera, did you do any work for any Mattel competitor while you were working for Mattel?<br>A. I did work, but I didn't know who it was for all the time.<br>Q. What other work did you do?<br>A. I did work for a vendor who would give me the work, and I would do it, and I didn't know who it was for. I just did it for her. It was her run-off work.<br>Q. Who was the vendor?<br>A. Am I allowed to say?<br>Mr. Mc Farland: yes, you can answer.<br>The witness: It was Ilana Raynes.<br>By Mr. Zeller:<br>Q. Can you spell that, please? | Irrelevant, confusing, and incomplete. Fed. R. Evid. 402, 403. The Court has already excluded this testimony because Ms. Leahy confirmed that she knew non-Mattel work was not authorized by her contract: "But I think to get now into evidence of moonlighting where it's acknowledged that it's in conflict with the contract, not withstanding that it may be common, I think it gets outside the field." Trial Tr. at 4124:18-4125:7.<br><br>To the extent they are offered for the truth of the matter asserted, Ms. Leahy's out of court statements and any legal statements of others are also inadmissible hearsay to which no exception is applicable. Fed. R. Evid. 802. Her testimony also lacks foundation and is speculative to the extent it refers to alleged "moonlighting" by others.<br><br>**MGA Parties Dispute This Objection As Stated Below:**<br>Mattel's attempt to characterize this Court's sustaining of Mattel's objection to Leahy's testimony because she "knew her non-Mattel work was not authorized" is in itself incomplete, as it ignores the rest of the Court's consideration of this issue. Specifically, MGA's counsel pointed out that her testimony confirming Mattel's explicit knowledge (indeed, facilitation) of her work for other companies is an issue for the "1-B case" (where MGA's affirmative defenses would be addressed), and the Court agreed, stating "[t]hat's going to be different.  We will revisit the issue in 1-B… [but] for 1-A purposes, |

| **Purportedly Objectionable Evidence** | **Mattel's Objections & MGA Parties' Responses Thereto** |
|---|---|
| A. I-l-a-n-a r-a-y-n-e-s.<br>Q. Was she -- was she a Mattel vendor at that time?<br>A. Yeah. She was a free-lance sculptor.<br>Q. How is it you came to become aware of her?<br>A. Michael knew her somehow -- Michael Hebden.<br>Q. So you were introduced to her through Mattel?<br>A. Yes.<br>Q. Does Ms. Raynes -- I should say, at that time, was Ms. Raynes living in Southern California?<br>A. Yes.<br>Q. Where?<br>A. She lived in the Hollywood Hills in two different places.<br>Q. And if I understood your testimony correctly, she would have -- she would hire you on to do work for other companies, but you weren't sure of the identity of the other companies?<br>A. Right.<br>Q. What was -- what was the kind of work that you did?<br>A. It was your standard Moonlighting sculpting things.<br>Q. What I guess I'm driving at is what were the projects?<br>A. I remember one was some Tarzan things, but I don't remember the other ones specifically.<br>Q. Other than the work for Hanna-Barbera that you mentioned and then the work through Ilana Raynes was there any other work that you did for any Mattel competitor during the time that you were employed by Mattel? | we're just focusing on the breach of contract." (Tr. 4125:25-4126:11.)<br><br>Leahy's testimony is unquestionably relevant.  Evidence is relevant under Fed. R. Evid. 401 if "it tends to make the existence of any fact that is of consequence… more or less probable."  A critical issue in establishing MGA's waiver defense is whether Mattel engaged in conduct "so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished."  Rubin v. Los Angeles Fed. Sav. & Loan Assn., 159 Cal. App. 3d 292, 298 (1984).  Obviously, since Leahy's testimony proves Mattel was not enforcing its contractual anti-moonlighting provision, indeed, facilitating her breach of the anti-moonlighting provision, it is wholly relevant to MGA's waiver defense.  This evidence is not confusing given the plain relevance of the Mattel's conduct in establishing its waiver.  Therefore, Leahy's testimony is admissible.<br><br>Leahy's testimony at her deposition is not hearsay.  See Fed. R. Civ. P. 32 ("at the trial or upon hearing of a motion…, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying may be used against any party who was present and represented").  Moreover, the statements of Mattel agents and employees made within the scope of their agency or employment is not hearsay.  Fed. R. Evid. |

| **Purportedly Objectionable Evidence** | **Mattel's Objections & MGA Parties' Responses Thereto** |
|---|---|
| A. Not that I remember.<br>Q. There might have been other instances, but you're not sure?<br>A. There might have been, but I'd have to really rack my brain.<br>Q. Did you tell other people at Mattel that you were doing this?<br>A. Yes.<br>Q. Who did you tell?<br>A. We all talked about it. We all did it.<br>Q. When you say "we all did it," you're talking about the people in the Sculpting Department?<br>A. Yes.<br>Q. Who else do you know there at Mattel who was doing work for competitors at the time that they were employed by Mattel?<br>A. I can't say anybody specifically because nobody officially came out and said anything. We just all knew we were all doing it.<br>Q. Please, tell me who you spoke with on that subject.<br>A. Everybody.<br>Q. You can't tell me the name of anyone?<br>A. Michael Hebden, Frederick Jackson, Ray Moore, Joe Benet to name a few.<br>Q. Were there other names that you know?<br>A. That's all I can think of right now officially.<br>Q. When you say "officially," do I have your complete testimony on that, or are there other people you remember by name? Mr. Mc Farland: give yourself time.<br>The witness: Okay. | 801(d)(2); Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 454 F. Supp. 2d 966, 973-74 (C.D.Cal. 2006) (statements made in emails by party's officers, agents, or employees are non-hearsay).  The testimony relates Leahy's own beliefs, so there is no issue of foundation.  Therefore, Leahy's testimony is admissible. |

| **Purportedly Objectionable Evidence** | **Mattel's Objections & MGA Parties' Responses Thereto** |
|---|---|
| The witness: Carolyn Oros. Gosh, even Hung Lee did it. Mr. Plevan: I'm sorry. the witness: Hung Lee. Hung Lee. | |
| Anderson 03/07/08 Dec., Exh. 21 (Cloonan Depo. at 100:21-101:1; 102:12-103:23):<br><br>A. People that worked at Mattel very often would just take extra work on the side. What they did, I did not want to know -- have anything to do with. But it was -- it was fairly common knowledge that people would -- the guys over in Hot Wheels called them G Jobs.<br>Q. So my question is a very specific one.<br>Please tell us everyone who you spoke with about the fact that there was extra work being done on the side by Mattel employees for companies other than Mattel while they were Mattel employees.<br>A. Okay. Diana Troup, Cynthia Young, Margo Michelle, Kitty Black-Perkins, Janet Unalp, Debbie Meyer, Oh, Carol Spencer, Jennifer Kiernan, Bill Kelly, Steve Mcadam, Howie Jesser, Ken Smith, Bob Tomamora, Tom Hodges, Julie Ashe Nobles, my mother, Morris Batay. I have to go through 20 years here. So this is going to take a while. Mr. McFarland: just take your time to answer his question.<br>The Deponent: Bruce Ryniker, Larry Wood, Eric Ostendorf, Steve Ryniker, Melody Hansen, Anna Rhee, Carter Bryant, Joe Feldman, Janet Blaser, Bill | Irrelevant, confusing, incomplete, lacks foundation, speculative, and, to the extent it is offered for the truth of the matter asserted, inadmissible hearsay to which no exception is applicable. Fed. R. Evid. 106, 402, 403, 802.  Cloonan testified that she had no knowledge of, and could not name, a single Mattel employee working for a competitor. See Proctor Dec. Ex. 15 (Cloonan Depo. Tr., dated December 14, 2007), at 100:12-15; 104:10-105:16. She testified only that she had discussed the *topic* of moonlighting with those other employees (and such conversations are clear hearsay). Indeed, the Court has already determined that evidence such as this is irrelevant and inadmissible: "I'm not going to permit someone to just get up and say, 'Oh, Yeah. I heard hearsay rumors that there's lots of moonlighting going on over at Mattel.' That's not going to fly. It's got to be a specific incident of apples and apples that a person, in a position like Carter Bryant, is moonlighting for a company, either MGA itself or like MGA, without getting permission." Trial Tr. at 44:23-45:6.<br><br>**MGA Parties Dispute This Objection As Stated Below:**<br>Cloonan's testimony is unquestionably relevant.  Evidence is relevant under Fed. R. Evid. 401 if it tends "to make the existence of any fact that is of consequence to the determination of the |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| Greening, Roxanna Powell, Ken O'leary, Lily Martinez, Cassidy Park, Ivy Ross, Joe Franke, Ann Driscoll, Robert Best, Anne Olson, Dennis Soai, Kislap Ongchangco, Nick Patean, Jerry Richardson, Spencer Davis, Bill Martinez, Barb Meyer, Larry Clayton, Dancer -- Elon Dancer, Maury Kessel, Chris Mcadam. Larue, I don't remember if that was her first or last name. Mike Norgren, Chris Sesto, Paul Sesto, Michael Hastey, Sullivan Hastey, Mark Rigger, Jeff Fuller, Tim Lewis, Tim Correa, Doc O'Connor. Larry – I don't remember Larry's last name, model maker. By Mr. Zeller: Q. I'm sorry. Who? A. I can't remember his last name. He was a model maker. Larry – he worked for Janet Unalp. Myziue Hamilton, Joan Gaynor, Patty Gaynor, Mino Marcozamy, Mercedeh Ward, Tony Yao, Aldo Fazilli. | action more probable or less probable."  A critical issue in establishing MGA's waiver defense is whether Mattel engaged in conduct "so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished."  Rubin v. Los Angeles Fed. Sav. & Loan Assn., 159 Cal. App. 3d 292, 298 (1984).  Obviously, since Cloonan's testimony suggests Mattel was not enforcing its contractual anti-moonlighting provision, it is wholly relevant to MGA's waiver defense.  This evidence is not confusing given the plain relevance of the Mattel's conduct in establishing its waiver.

Moreover, Mattel's characterization of her testimony is in fact incomplete.  Elise Cloonan's testimony named more than 50 designers who may have been moonlighting and her testimony made clear that in her conversations with moonlighting co-workers she deliberately instructed them not to tell her about outside work they were doing.  (See Proctor Dec. Ex. 15 (Cloonan Depo. Tr., dated December 14, 2007), at 100:19-101:17, 102:12-104:19.)

Cloonan's testimony at her deposition is not hearsay.  See Fed. R. Civ. P. 32 ("at the trial or upon hearing of a motion…, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying may be used against any party who was present and represented").  Moreover, the statements |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | of Mattel agents and employees made within the scope of their agency or employment is not hearsay.  Fed. R. Evid. 801(d)(2); Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 454 F. Supp. 2d 966, 973-74 (C.D.Cal. 2006) (statements made in emails by party's officers, agents, or employees are non-hearsay).  The testimony relates Cloonan's own beliefs, so there is no issue of foundation.  Therefore, Cloonan's testimony is admissible.

Moreover, to the extent that Cloonan's is reporting the contents of conversations with other employees, such evidence is not hearsay.  The statements of Mattel agents and employees made within the scope of their agency or employment is not hearsay.  Fed. R. Evid. 801(d)(2); Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 454 F. Supp. 2d 966, 973-74 (C.D.Cal. 2006) (statements made in emails by party's officers, agents, or employees are non-hearsay). |
| Anderson 03/07/08 Dec. Exh. 24 (De Anda Depo. at 157:20-25):

Q. Does your department investigate accusations that Mattel employees are moonlighting?
A. We could have. We could have but I'm not certain. I can't recall a set of circumstances – I would say that's a very strong possibility that we have over the years. | Irrelevant and confusing, lacks foundation, speculative. Fed. R. Evid. 402, 403. Mr. de Anda testified that there was "a very strong possibility" that investigations had occurred, which does not support MGA's assertion that Mattel tolerates moonlighting. In any case, such generic testimony, not tied to evidence of specific violations that went unremedied, is irrelevant: "I'm not going to permit someone to just get up and say, 'Oh, Yeah. I heard hearsay rumors that there's lots of moonlighting going on over at |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | Mattel.' That's not going to fly. It's got to be a specific incident of apples and apples that a person, in a position like Carter Bryant, is moonlighting for a company, either MGA itself or like MGA, without getting permission." Trial Tr. at 44:23-45:6. <br><br> **MGA Parties Dispute This Objection As Stated Below:** <br><br> DeAnda's testimony is unquestionably relevant.  Evidence is relevant under Fed. R. Evid. 401 if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable."  A critical issue in establishing MGA's waiver defense is whether Mattel engaged in conduct "so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished."  Rubin v. Los Angeles Fed. Sav. & Loan Assn., 159 Cal. App. 3d 292, 298 (1984).  Obviously, since DeAnda's testimony suggests Mattel was not investigating or thereby enforcing its contractual anti-moonlighting provision, it is wholly relevant to MGA's waiver defense.  This evidence is not confusing given the plain relevance of the Mattel's conduct in establishing its waiver. <br><br> The testimony relates De Anda's own recollection and state of mind,, so there is no issue of foundation. |
| Nolan 04/28/08 Dec. Exhs. 117 and | Irrelevant, confusing. Fed. R. Evid. 402, |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| 118 at 22:13-24. | 403. The documents cited do not show that Mattel has failed to produce evidence of disciplinary action against Mattel employees, and are not relevant for any other reason. Exhibit 118 shows that Mattel was not required to supply a witness on the topic because it was overbroad and unduly burdensome. Moreover, evidence in the record shows that disciplinary action has been taken against other employees, including Ms. Cabrera and Ms. Salazar, who also performed unauthorized work on Brat while at Mattel.<br><br>**MGA Parties Dispute This Objection As Stated Below:**<br>The cited exhibits demonstrate that Mattel did not produce evidence of any disciplinary action against Mattel employees were ever disciplined for moonlighting before this suit was instituted; Mattel's insistence that there is such evidence is devoid of citation or factual support. The record reflects that it was not until Veronica Marlow named Cabrera in her deposition in this action in December 2007 that adverse action was taken by Mattel – in <u>January 2008</u>. (<u>See</u> e.g. 2/4/08 Tr. 35:8-36:23; Tr. 4415:14-22; MGA Parties' Motion Objecting to Portions of Discovery Master's March 11, 2008 Order (Dkt 2801) at 1-4.)  Contrary to Mattel's statement above, Salazar left Mattel for reasons having nothing to do with moonlighting accusations <u>in 2001</u>– after which she did the bulk of her work for Marlow.  (<u>See</u> Tr. 3454:21-24.) Conduct by the parties after a dispute has |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
|  | arisen is irrelevant. <u>Employers Reins. Co. v. Super. Ct.</u>, 161 Cal.App.4th 906, 921 (2008) (in interpreting a contract, the only relevant conduct is conduct "performed under the contract before any dispute has arisen"); <u>Heston v. Farmers Ins. Group</u>, 160 Cal.App.3d 402, 413 (1984) ("the actions to be considered [must] occur before a dispute has arisen").  The fact that Mattel has no evidence to show it took any adverse action against moonlighting employees before 2008, or that Mattel ever enforced its rights under the anti-moonlighting provision of its contract prior to filing suit in this case, is relevant to demonstrating the MGA Parties' waiver defense and is not confusing. |
| Nolan 4/28/08 Decl. Ex. 75 (Ross) at 81:20-82:13:<br><br>"Q. Did you ever make any effort to determine whether or not they had – any of the designers or creative people had part-time jobs outside? A. No, I did not.... My understanding is that no one would actively go looking."). | Irrelevant, lacks foundation, speculative, confusing. Fed. R. Evid. 402, 403. This again is not evidence of an apples to apples comparison, and is irrelevant as the Court ruled: "I'm not going to permit someone to just get up and say, 'Oh, Yeah. I heard hearsay rumors that there's lots of moonlighting going on over at Mattel.' That's not going to fly. It's got to be a specific incident of apples and apples that a person, in a position like Carter Bryant, is moonlighting for a company, either MGA itself or like MGA, without getting permission." Trial Tr. at 44:23-45:6.<br><br>**MGA Parties Dispute This Objection As Stated Below:**<br><br>The Ross testimony is not offered as |

| **Purportedly Objectionable Evidence** | **Mattel's Objections & MGA Parties' Responses Thereto** |
|---|---|
| | evidence of rumors of moonlighting.  It is offered to show that Ross, Bryant's supervisor, was aware of moonlighting and did nothing about it.  (Stmt. at 12-13.)  It is entirely relevant to support that proposition, and neither speculative nor confusing on that issue.<br><br> Moreover, as Ross is testifying to her own recollection and state of mind, there is no issue of foundation. |
| Trial Ex. 315. | Irrelevant and prejudicial. Fed. R. Evid. 402, 403. Mattel's consideration of the name "Brats" has no bearing on when Mattel's claims accrued.<br><br>**MGA Parties Dispute This Objection As Stated Below:**<br><br>Trial Exhibit 315 is not offered to support the question of when Mattel's claims accrued.  The MGA Parties offered this evidence to show that Mattel considered but never used the name "Brats," thus undermining its claim to the trademark "Bratz."  (Stmt. at 15.)  It is relevant to support this proposition.<br><br>Nor is this evidence prejudicial.  See White v. Ford Motor Co., 500 F.3d 963, 977 (9th Cir. 2007) (noting that evidence is not unduly prejudicial under Fed. R. Evid. 403 merely because it has a negative impact on a parties' case because the evidence presented "was probative and a proper factor in the jury's analysis, any 'prejudice' experienced by [defendant] was not 'unfair' as that term |

| Purportedly Objectionable Evidence | Mattel's Objections & MGA Parties' Responses Thereto |
|---|---|
| | is used in [Federal Rule of Evidence] 403."); <u>Brazos River Auth. v. GE Ionics, Inc.</u>, 469 F.3d 416, 427 (5th Cir. 2006) ("'Unfair prejudice' as used in [Federal Rule of Evidence] 403 is not to be equated with testimony that is merely adverse to the opposing party. Virtually all evidence is prejudicial; otherwise it would not be material. The prejudice must be 'unfair.'") (emphasis added); <u>O'Brien v. Papa Gino's of Am., Inc.</u>, 780 F.2d 1067, 1075 (1st Cir. 1986) ("Naturally, this testimony was unfavorable to the defendant's case, but we must keep in mind that it is only unfair prejudice with which we are concerned."); <u>Koloda v. Gen. Motors Corp.</u>, 716 F.2d 373, 378 (6th Cir. 1983) (to be excluded under Rule 403, evidence "must be more than damaging to the adverse party; it must be *unfairly* prejudicial."). In other words, the fact that this evidence is not favorable to Mattel's newly hatched claims to MGA's trademark does not make the evidence unfair. Therefore, Trial Exhibit 315 is admissible. |

DATED:  October 20, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____ /s/ Thomas J. Nolan _____
Thomas J. Nolan
Attorneys for the MGA Parties