# EXHIBIT A

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| MATTEL, INC., | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | |
| | Consolidated with |
| vs. | CASE NO. CV 04-9059 SGL (RNBx) |
| | CASE NO. CV 05-2727 SGL (RNBx) |
| MGA ENTERTAINMENT, INC., et al., | Hon. Stephen G. Larson |
| Defendants. | |
| AND CONSOLIDATED ACTIONS | **COURT'S PHASE B JURY INSTRUCTIONS AS GIVEN** |

EXHIBIT _A_

PAGE _3_

Case 2:04-cv-09049-DOC-RNB   Document 4378-2   Filed 10/20/08   Page 3 of 61   Page ID
#:121636
Case 2:04-cv-09049-SGL-RNB      Document 4267      Filed 08/20/2008      Page 43 of 56

**JURY INSTRUCTION NO. 39**

Mattel is entitled to obtain disgorgement of profits as an element of its damages

for the wrongful acts of aiding and abetting breach of fiduciary duty and duty of loyalty

that you have found.  Accordingly, if you find that MGA and/or Isaac Larian obtained

profits or advantages because of these specific wrongful acts, those profits and

advantages should be awarded to Mattel.

EXHIBIT _A_

PAGE _4_

# EXHIBIT B

Case 2:04-cv-09049-DOC-RNB  Document 4378-2  Filed 10/20/08  Page 5 of 61  Page ID
#:121638
Case 2:04-cv-09049-SGL-RNB     Document 4154     Filed 07/24/2008    Page 1 of 9

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                        Date:  July 24, 2008

Title:   CARTER BRYANT -v- MATTEL, INC.
         AND CONSOLIDATED ACTIONS
==========================================================================
=
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes                              None Present
        Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:       ATTORNEYS PRESENT FOR DEFENDANTS:

John B. Quinn                           Thomas J. Nolan
B. Dylan Proctor                        Carl Alan Roth
Michael T. Zeller                       Jason Russell
Jon Corey                               Lauren Aguiar
William Price                           David Hansen
Scott B. Kidman

PROCEEDINGS:    **POST-PHASE1A ORDER RE MOTION FOR PARTIAL SUMMARY
                JUDGMENT ON THE ISSUE OF SUBSTANTIAL SIMILARITY;**

                **ORDER RE PROCEEDINGS REGARDING LACHES AND OTHER
                EQUITABLE DEFENSES**

                **ORDER RE FRAUDULENT CONCEALMENT JURY ISSUE**

        These matters were heard on Friday, July 18, 2008, and again on Monday, July 21, 2008, at
which time the Court announced its rulings.  This Order sets forth those rulings and the rationale
therefor.

MINUTES FORM 90                                 Initials of Deputy Clerk:  jh
CIVIL -- GEN

                                    1

EXHIBIT  B
PAGE  5

## I. SUBSTANTIAL SIMILARITY AND SCOPE OF PROTECTABILITY

At a post-Phase 1A hearing on remaining legal issues to be addressed prior to commencement of the Phase 1B trial, counsel for MGA raised an issue regarding the scope of the protection to be given to the copyrighted drawings. This issue, in turn, implicates the arguments raised by the parties in the motions for partial summary judgment regarding originality and protectability (raised by MGA) and substantial similarity (an element of copyright infringement upon which Mattel seeks summary judgment).

To address these issues, the Court begins its analysis with a recitation of the elements of copyright infringement, which are (1) ownership of a valid copyright, (2) access by the defendant to the original, and (3) substantial similarity of the original and allegedly infringing works. North Coast Industries v. Jason Maxwell, Inc., 972 F.2d 1031, 1033 (9th Cir. 1992).

The first element, although not amenable to resolution on summary judgment, was decided by the jury's verdict in Phase 1A. The second element was not contested by MGA, and in any event, was also decided by virtue of the jury verdict. Thus, although the Court previously deferred the issue of substantial similarity, it is now appropriate to consider whether the record on summary judgment allows the Court to adjudicate the final element of copyright infringement in favor of Mattel.

To determine substantial similarity, the Court must apply both the extrinsic test and the intrinsic test.

To apply the extrinsic test, the Court must first examine the specific expressive elements of the works at issue and compare them to those found in the allegedly infringing work. Dr. Seuss Enterprises v. Penguin Books, Inc., 109 F.3d 1394, 1398 (9th Cir. 1997). This involves analytically dissecting works into their components in order to determine whether some – or all – similarities are attributable to unprotected elements, which must be filtered out of the analysis before a conclusion regarding substantial similarity is reached. Id. To apply the extrinsic test to visual works, such as the drawings at issue here, "[t]he basic mode of analysis for comparison of the literary elements applies . . . [, and] unprotect[a]ble elements should not be considered when applying the extrinsic test to art work." Cavalier v. Random House, Inc., 297 F.3d 815, 825-26 (2002). However, "[t]he precise factors evaluated for literary works do not readily apply to art works. Rather, a court looks to the similarity of the objective details in appearance." Id. at 826.

To apply the intrinsic test, the Court examines the overall similarity of expression in the two works from the perspective of the ordinary observer. Olson v. National Broadcasting Co., 855 F.2d 1446, 1448-49 (9th 1988).

In applying both the extrinsic and intrinsic tests, the Court must be mindful of the so-called "inverse ratio rule" which states that where, as here, a high degree of access to the original works

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

2

EXHIBIT _B_

PAGE _6_

is shown, the burden to show substantial similarity is reduced. Three Boys Music Corp. v. Bolton, 212 F.3d 477, 485 (9th Cir.2000).

In applying these principles, the Court cannot conclude that Mattel has shown that it is entitled to summary judgment on the issue of substantial similarity. On summary judgment, MGA offered evidence from its doll design expert pointing out a number of differences between the Bratz dolls and the registered drawings. Additionally, it offered the evidence of Paula Garcia regarding the changes that MGA wished to make in the process of creating the dolls from the drawings to make them less "edgy" and to better appeal to the "tween" market. MGA also offered evidence that its sculptor was given a certain amount of artistic freedom in creating the sculpt. All these combine to create a triable issue of fact regarding whether the dolls are substantially similar to the drawings.

Related to this issue is the one raised by MGA at Friday's hearing: What is the scope of the protectability of the copyrighted drawings? The Court cannot conclude that the scope is, as MGA contends, limited to the "thin" protection that would prohibit little more than virtual copying.

The Court's analysis begins with a presumption of protectability conferred by the registration of the drawings. Where, as here, the relevant works have registered copyrights, registration is prima facie evidence of the validity of a copyright. See 17 U.S.C. § 410(c). This presumption can be rebutted by the defendant's showing that the plaintiff's work is not original, that is, that it is unworthy of copyright protection. Three Boys Music Corp. v. Bolton, 212 F.3d 477, 489 (9th Cir. 2000) (citation omitted). "Originality in this context means little more than a prohibition of actual copying." Id. (internal quotation marks and citation omitted).

In this vein, the Supreme Court described the low threshold for copyrightability:

> The sine qua non of copyright is originality. To qualify for copyright protection, a work must be original to the author. . . . Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.

Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 345 (1991). The Court elaborated: The "requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." Id. (internal quotation marks omitted).

Based on the record before the Court, it does not appear that MGA has contended that the registered drawings are unworthy of any protection; rather, it contends that it is worthy only of "thin" protection. The Court is guided on this point by the case of Satava v. Lowry, 323 F.3d 805 (9th Cir. 2003).

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk:  jh

EXHIBIT  _B_

PAGE  _7_

In that case, an artist (Satava) began making glass-in-glass jellyfish sculptures. Id. at 807. When a second artist (Lowry) began making extremely similar sculptures, Satava sued for copyright infringement. Id. at 808-09.   The idea to do such a sculpture was held to be beyond copyright protection. Id. at 810. Also outside the scope of copyright protection were the "elements of expression that naturally follow from the idea." Id.   Thus, the Ninth Circuit held that Satava's sculptures were unprotected to the extent the physiology of jellyfish drove the presentation of the sculptures. Id.   Relatedly, to the extent that traditional methods of glass-in-glass sculpture also influenced the presentation, the sculptures were also unprotected. Id.

Certain features did warrant protection, however.   For instance, although the Court found unprotectable depiction of jellyfish swimming vertically, with bright colors, or with tendril-like tentacles attached to rounded bells, the Court found protectable Satava "distinctive curls of particular tendrils; the arrangement of certain hues [of color]; [and] the unique shape of the jellyfishes' bells." Id. at 811-12.

After this analysis, the Ninth Circuit did not place a high qualitative value on Satava's copyright.   The Court stated it this way:

> Satava's copyright on these original elements (or their combination) is "thin," however, comprising no more than his original contribution to ideas already in the public domain. Stated another way, Satava may prevent others from copying the original features he contributed, but he may not prevent others from copying elements of expression that nature displays for all observers, or that the glass-in-glass medium suggests to all sculptors. Satava possesses a thin copyright that protects against only virtually identical copying.

Id. at 812.

The drawings at issue here, however, are not like Satava's jellyfish sculptures. Jellyfish anatomy is much simpler than human anatomy.   Correspondingly, in general, there are far more variations in humans (at least that we humans discern).   For instance, we regularly take notice of a vast number of particularized differences in facial features, ethnicity, size, shape, proportions, hair color, and hair texture and, of course, various particularized combinations and permutations thereof.   Specifically, in the context of the content of the copyrighted drawings at issue, we can also observe the many details of the clothing which adorn the depicted figures.[1]   Moreover, an

---

[1] As noted by the Court at Monday's conference, the Court rejects the argument raised by MGA, stated elsewhere in the record, that the protectability of doll clothing is limited in the same manner as is human clothing. Briefly stated, "[a]s a general rule, items of clothing are not entitled to copyright protection. . . . This is because items of clothing are generally considered useful articles, and useful articles are not entitled to protection under the Copyright Act." Express, LLC v. Fetish Group, Inc., 424 F.Supp.2d 1211, 1224 (C.D. Cal. 2006) (citations omitted).   This general rule is tempered by a limited protection extended to "pictorial, graphic, or sculptural features" even when incorporated into useful articles.   17 U.S.C. § 101.   The doll clothing at issue here -- as well as the clothing depicted in the

EXHIBIT ____B____

PAGE ____8____

artistic expression based on a drawing is much less limited than a glass-in-glass sculpture.

Accordingly, although the Court has denied the motion for summary judgment on the substantial similarity issue, the Court cannot go so far as to find that the registered drawings are subject to only the "thin" protection -- the protection against copying -- referred to in Satava. The relevant test to be employed on this issue in this case -- and upon which the jury will ultimately be instructed -- is the test regarding the extrinsic and intrinsic analyses set forth above.

## II. LACHES AND OTHER EQUITABLE DEFENSES

At the hearing on Friday, July 18, 2008, three separate issues regarding the affirmative defense of laches were raised:  (1) Whether there is, as MGA contends, a presumption that laches applies when, as here, a copyright claim would be time-barred but for the relation-back doctrine;[2] (2) whether the Court should grant Mattel's summary judgment motion as to MGA's laches defense; and (3) whether the defense is legal (and must be presented to a jury) or equitable (and therefore should be decided by the Court, perhaps outside the presence of the jury).  In the ensuing discussion, the Court addresses each of these issues in turn.

The Court first considers whether there is, as MGA contends, a presumption that laches applies where, as here, a copyright claim would be time-barred but for the relation-back doctrine.

This argument is clearly based on the Jarrow Formulas case, cited at footnote 27 of MGA's opposition to Mattel's motion for partial summary judgment, which MGA relies upon to argue that, notwithstanding any contention that Mattel's copyright claim is timely based on the relation-back doctrine, there is a presumption that claims filed outside the limitations period are time barred. MGA reads Jarrow Formulas far too broadly.  That case did not consider how laches should apply when a claim that was otherwise outside the limitations period was saved by the relations-back doctrine.  Therefore, its discussion regarding a "reversal" of the presumption of nonapplicability of laches is of little relevance here.[3]

---

copyrighted drawings – are not useful articles.  The clothing is part of a toy, and the proposition that toys are unprotectable because they are "useful articles" as that term is used in copyright law has been rejected by courts.  See, e.g., Gay Toys, Inc. v. Buddy L Corp., 703 F.2d 970, 974 (6th Cir. 1983); Spinmaster, Ltd. v. Overbreak LLC, 404 F.Supp.2d 1097, 1103 (N.D. Ill. 2005).

[2]  The Court previously held that Mattel's copyright claim was timely as to MGA Entertainment because it was brought within the relevant statute of limitations.  As to the remaining defendants, the claim was timely in light of the relation-back doctrine.

[3]  The court's discussion regarding this issue states:

In sum, we presume that laches is not a bar to suit if the plaintiff files within the limitations period for the analogous state action; the presumption is reversed if the plaintiff files suit after the analogous limitations period has expired. For purposes of laches, the limitations period may expire even though

EXHIBIT ____B____

PAGE ____9____

Case 2:04-cv-09049-DOC-RNB   Document 4378-2   Filed 10/20/08   Page 10 of 61   Page ID
#:121643
Case 2:04-cv-09049-SGL-RNB   Document 4154     Filed 07/24/2008     Page 6 of 9

The Court, in its own research, has been unable to locate any authority that suggests that a related-back claim would be especially vulnerable to the defense of laches. To the contrary, to the extent that such authority is found, it suggests the contrary. See e.g., In re Prempro Products Liability Litigation, 417 F.Supp.2d 1058, 1061 (E.D. Ark. 2006) (dismissing certain plaintiffs from a case, allowing them to re-file their claims in a separate complaint, and clarifying that "for application of . . . laches . . . the filing date of [the new complaint] will be deemed to relate back to the date [of the dismissed complaint]"); Bush v. Sumitomo Bank and Trust Co., Ltd., 513 F.Supp. 1051, 1054 (D.C.Tex., 1981) (noting that the court would consider the related-back date of an amended claim to assess the merits of a laches defense); E.I. duPont de Nemours & Co. v. Phillips Petroleum Co., 621 F.Supp. 310, 313 (D.C. Del.,1985) (noting that the applicability of laches did not need to be addressed in light of the fact that the proposed complaint related back to the original pleading pursuant to Fed. R. Civ. P. 15(c)).

The language of the rule allowing relation-back is in accord because it suggests that an amendment that relates back should be treated as if it was filed on the date of the original pleading. See Fed. R. Civ. P. 15(c) ("[a]n amendment to a pleading relates back to the date of the original pleading").

Therefore, in the absence of persuasive authority, the Court is unwilling to apply the "reversed" presumption suggested by MGA. Instead, the Court will continue to be guided by the touchstones of the doctrine of laches: Unreasonable delay and resulting prejudice.

The Court next considers whether the Court should grant Mattel's summary judgment motion as to MGA's laches defense. The Court previously deferred, as it does now, the motion for summary judgment on the remaining affirmative defenses. The Court will consider those at the close of Phase B of the trial as set forth below.

Finally, the Court considers whether the defense of laches is legal (and must be presented to a jury rather than the Court) or equitable (and therefore should be decided by the Court, perhaps outside the presence of the jury).

At Friday's hearing, counsel for MGA stated that MGA had argued in written briefs before the Court that laches, at least insofar as it is applied to a claim of copyright infringement, is a legal defense that must be submitted to the jury. Tr. at 96. When questioned as to the source of the authority, counsel eventually identified the case of Haas v. Leo Feist, 234 F. 105 (S.D.N.Y. 1916). Tr. 102, 106. Referring to this case, counsel contended that "most courts agree that was the first time that laches was applied as a legal defense to copyright." Tr. at 102. However, this case does not address the defense of laches. It does not address what, if any, affirmative defenses to a

---

part of the defendant's conduct occurred within the limitations period.

Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 838 (9th Cir. 2002).

MINUTES FORM 90                                                      Initials of Deputy Clerk: jh
CIVIL -- GEN

EXHIBIT _____ B _____

PAGE _____ 10 _____

copyright claim should be presented to a jury. The case does not even involve a trial by jury. This case was cited in MGA's opposition to Mattel's motion for partial summary judgment, but for an entirely different proposition, relating to the merits of the laches defense.

At Monday's hearing, the Court articulated its ruling on this issue on the record in much the same form that it appears herein. The Court referred specifically to the representations of counsel set forth above, noting that the Haas case did not involve a trial by jury and further did not address the defense of laches. Tr. at 5303.

After the Court articulated its ruling, counsel for MGA revealed that perhaps he "wasn't as clear as [he] should have been" regarding this argument, explaining that Haas was "the case from which most courts agree the doctrine of laches could apply to a copyright case." Tr. at 5306. This contention was clear from counsel's argument the previous Friday. What was not clear, however, and what ultimately became clear during Monday's hearing after the Court articulated its ruling, was the source of MGA's briefing on this issue, which was MGA's opposition to Mattel's motion in limine #4 and not MGA's summary judgment papers (which the Court had reviewed at length and in vain in its attempt to locate counsel's argument on this issue). Tr. at 5306.

Although the Court informed counsel that the briefing to which he referred was not included in the materials that the Court instructed the parties to prepare in advance of the Friday hearing, counsel nevertheless asked that the Court to "take another look" at its opposition to the motion in limine, citing specifically the cases of Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc., 106 F.3d 894, 896 (9th Cir. 1997), and United States Fidelity & Guar. Co. v. Lee Investments LLC, 551 F.Supp.2d 1114, 1128 (E.D. Cal. 2008).[4]  Both these cases, as well as a third case cited in MGA's opposition to Mattel's motion in limine #4, San Francisco Bay Area Rapid Transit Dist. v. Spencer, No. C-04-04632 SI, 2007 WL 1450350 at *10 (N.D.Cal., May 14, 2007), merely represent examples of cases in which trial courts submitted resolution of certain equitable affirmative defenses to the jury. These cases do not stand for the proposition that a Court must submit for the jury's consideration the ultimate conclusion regarding equitable affirmative defenses.[5]

The defense of laches to a copyright claim is clearly an equitable defense. See, e.g., Kling v. Hallmark Cards Inc., 225 F.3d 1030, 1036 (9th Cir. 2000) (beginning its analysis of whether

---

[4] Despite counsel's contention that his argument is based on authority derived from the Haas case, that case is not cited in MGA's opposition to Mattel's motion in limine #4.

[5] MGA's other concern, that the jury's role as factfinder not be usurped, is a valid one. Notwithstanding Mattel's contention that there are no facts that are relevant to both the legal claims and the equitable affirmative defenses, see Mattel's reply to motion in limine #4 at 7-9, the Court will consider MGA's timely proposal for any special interrogatories it deems appropriate to address this concern. As previously indicated by the Court, the parties' proposed jury instructions (which should include any proposed special interrogatories) and verdict forms must be filed no later than July 24, 2008, with indexed and tabbed courtesy copies (in a three-ring binder) provided to the Court.

EXHIBIT ___13___

PAGE ___11___

Case 2:04-cv-09049-DOC-RNB   Document 4378-2   Filed 10/20/08   Page 12 of 61   Page ID
#:121645
Case 2:04-cv-09049-SGL-RNB   Document 4154     Filed 07/24/2008    Page 8 of 9

laches applied to a copyright claim by noting that laches is an "equitable defense"); Zuill v.
Shanahan, 80 F.3d 1366, 1370 (9th Cir. 1996) (distinguishing the defense of statute of limitations
as "legal" defense from the defense of laches an "equitable" defense).  As such, it will be tried to
the Court.  See e.g., Danjaq LLC v. Sony Corp., 263 F.3d 942, 962 (9th Cir. 2001) (noting that
although the plaintiff had a jury trial right as to his copyright infringement claims, he did not have a
right to a jury on the equitable defense of laches); accord Granite State Ins. Co. v. Smart Modular
Techs., Inc., 76 F.3d 1023, 1027 (9th Cir.1996) ("A litigant is not entitled to have a jury resolve a
disputed affirmative defense if the defense is equitable in nature.").

        The Court previously suggested that it was inclined to seek an advisory jury verdict on the
affirmative defenses; however, the Court is now disinclined to do so based on the risk of jury
confusion.  The Court is of the opinion that this jury's attention should be focused on the narrow
range of issues it is being asked to decide in Phase B.

        Therefore, the Court will have the parties present to the jury evidence relevant only to the
remaining claims, the issue of fraudulent concealment (as discussed below), and any legal
defenses to the remaining claims.

### III. FRAUDULENT CONCEALMENT JURY ISSUE

        Also discussed at Friday and Monday's hearing was the issue of fraudulent concealment
and its relationship with the previously-adjudicated statute of limitations issue.  From the Court's
perspective, two issues need to be resolved.

        First is the jury's role with respect to a finding of fraudulent concealment.  Both parties agree
that the issue of whether Mattel has established a period of fraudulent concealment should be
submitted to the jury.  However, at Friday's hearing, Mattel suggested that the Court's findings as a
matter of law on summary judgment regarding the statute of limitations places limitations on the
time period during which the jury may find fraudulent concealment. Tr. at 100.  Specifically, Mattel
attempted to link the Court's findings regarding the earliest possible accrual date of Mattel's claims
-- other than conversion and intentional inference with contractual relations -- with the period of
fraudulent concealment to be determined by the jury regarding these two claims.

        The Court's conclusion regarding the narrow range of possible accrual dates for Mattel's
state-law claims, other than the conversion and intentional interference with contractual relations
claims, was linked to a specific test relating to California's so-called "discovery rule," which the
Court will not repeat here.  See May 27, 2008, Order re Statute of Limitations Defense at 4 - 8.  In
the Court's June 2, 2008, Further and Final Order Re Statute of Limitations Defense, the Court
noted that, because the claims for conversion and intentional interference with contractual relations
are not subject to the discovery rule, "the conclusions drawn by the Court regarding the possible
accrual dates for the remaining state-law claims do not apply to" these claims.  Id. at 3.  As noted
by the Court in that Order, "[w]hether a period of fraudulent concealment exists, as well as the

MINUTES FORM 90                                                          Initials of Deputy Clerk: jh
CIVIL -- GEN

8

EXHIBIT ___B___

PAGE ___12___

duration of any such period, . . . are . . . questions of fact for the jury." Id. If Mattel believes that this approach is erroneous, then it may file, in an introductory statement to its proposed jury instructions, a short statement of legal argument in support of its position, to which, of course, MGA may respond.

Second is the scope of the relevant evidence regarding fraudulent concealment. As articulated by the Court at Monday's hearing (and before that, in its statute of limitations summary judgment orders cited above), the relevant issues -- or, stated otherwise, the ultimate facts -- are whether and for what time period the MGA defendants fraudulently concealed from Mattel the fact that Carter Bryant worked on the Bratz drawings during his period of employment with Mattel. See Tr. at 5317-19. The relevant evidence, of course, may extend beyond that boundary. See Fed. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.") (emphasis added). For instance, evidence of Mattel's knowledge of (and evidence regarding MGA's concealment of) the fact that Carter Bryant was involved at some point with the Bratz project in general is relevant to -- but by no means dispositive of -- the ultimate facts of whether and for what time period the MGA defendants fraudulently concealed from Mattel the fact that Carter Bryant worked on the Bratz drawings during his period of employment with Mattel.

This distinction is in accord with that made by the Court yesterday regarding the admission of "Phase 2 evidence" in Phase 1B. Although the relevant issues have been, more or less, neatly dissected into various phases to facilitate efficient adjudication, the relevant evidence is not as conducive to any surgical cuts and has thus far managed to allude such neat dissection. Therefore, although counsel should conduct themselves in accordance with the general principles articulated herein and elsewhere on the record, relevancy, and other limits thereon placed on admissibility of evidence, most notably Fed. R. Evid. 403, will continue to be determined by the Court as objections are raised at trial.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

9

EXHIBIT ___ B ___

PAGE ___ 13 ___

# EXHIBIT C

Case 2:04-cv-09049-SGL-RNB     Document 3286     Filed 04/25/2008     Page 2 of 11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES – GENERAL

Case No.   CV 04-09049 SGL(RNBx)                              Date:  April 25, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC., v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
==============================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

              Jim Holmes
              Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:        ATTORNEYS PRESENT FOR MATTEL:

None Present                                 None Present


ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

**PROCEEDINGS:    ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN
                  PART THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT
                  (IN CHAMBERS)**

         This matter is before the Court on the parties' motions for partial summary judgment.  The
motions were heard on April 22, 2008, and the Court has set the motions for further hearing on
May 19, 2008, at 1:30 p.m.  As set forth below, the Court rules on a number of issues presented
by the motions for partial summary judgment and reserves ruling on other issues until after further
hearing on the motions for partial summary judgment and, in the case of MGA's affirmative
defenses, until after the Phase 1 trial.

         The parties have made hundreds of objections to evidence offered in support of and in
opposition to the motions for partial summary judgment.  Although counsel for Bryant requested

EXHIBIT _____ C _____

PAGE _____ 14 _____

explicit rulings on the objections raised by Bryant, the Court declines to do so. To the extent that this Order necessarily relies on evidence subject to any party's objections, the objections are implicitly overruled.

## PREEMPTION

MGA and Bryant seek summary judgment in their favor as to Mattel's claims for intentional interference with contractual relations, conversion, and unfair competition, arguing that these claims are preempted by the Copyright Act. They are partially correct.

A state law is preempted by the Copyright Act where (1) the work at issue comes within the subject matter of copyright, and (2) the state law rights are "equivalent to rights within the general scope of copyright[.]" Del Madera Properties v. Rhodes and Gardner, Inc., 820 F.2d 973, 977 (9th Cir.1987). "If a state law claim includes an 'extra element' that makes the right asserted qualitatively different from those protected under the Copyright Act, the state law claim is not preempted by the Copyright Act." Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1089 (9th Cir. 2005). Generally the Copyright Act does not preempt the enforcement of contractual rights. Id.

As to the first element, the intentional interference with contractual relations claim addresses generally an issue within the subject matter of copyright – the underlying wrong upon which the claim is premised is Mattel's deprivation of rights to intellectual property.

As to the second element, it is clear that the tort of intentional interference with contractual relations is neither categorically preempted or categorically saved from preemption; rather, the Court must engage in a determination of whether the substance of the tort claim differs qualitatively from the copyright claim at issue. Compare Altera, 424 F.3d at 1089 (holding that a intentional interference claim was not preempted because it was based not on copyrights but on a contractual provision) with Laws v. Sony Music Entertainment, Inc., 448 F.3d 1134, 1144 (9th Cir. 2006) (holding preempted a singer's voice misappropriation claim was not qualitatively different from her copyright claim).

Here, to the extent that the tortious interference is premised upon MGA's alleged interference with any copyrights that Mattel may have under the Inventions Agreement, it is preempted. Such a claim is not qualitatively different from Mattel's copyright claim. However, to the extent that the claim is based on MGA's acts that may be found to have aided and abetted the breach or induced the breach of Bryant's fiduciary duty, the claim is not preempted. That claim is qualitatively different from Mattel's copyright claim.

Therefore, the tortious interference with contractual relations is preempted to the extent that it is based on Mattel's rights to Bratz. It is not preempted as to Mattel's claims for breach of fiduciary duty.

The parties' arguments regarding the conversion claim address two distinct issues: Conversion of ideas and conversion of tangible things. The Court addresses each in turn.

EXHIBIT ___C___

PAGE ___15___

Both sides acknowledge, as this Court certainly agrees, that one cannot copyright an idea. Thus, it would seem, a claim for conversion of ideas is not subject to preemption because it is not "within the subject matter of copyright." Del Madera, 820 F.2d at 977. MGA argues that ideas are not subject to a claim of conversion, to which Mattel responds that such rights in ideas may be created by contract. Mattel relies on Desny v. Wilder, 46 Cal.2d 715, 733 (1956) which, remarkably, so holds. However, that case does not support the proposition that a breach of such rights may be remedied by the tort claim of conversion rather than a breach of contract claim. The law in California regarding the tort of conversion's applicability to ideas remains the same today as in 1956: "The tort of conversion does not apply to ideas." Melchior v. New Line Productions, Inc., 106 Cal.App.4th 779 (2003). Therefore, although this claim is not preempted, it is not actionable as a tort claim. Accordingly, summary judgment in favor of MGA and Bryant is granted as to this particular claim.

Mattel also argues that its conversion claim is not preempted to the extent that it seeks the return of tangible things, most notably the original Bratz drawings. This claim is "within the subject matter of copyright," but the state rights go beyond the rights protected by the Copyright Act by allowing for the return of property.

At oral argument, counsel for MGA argued that Mattel seeks the rights that the drawings represent, not the "paper and ink" of which those drawings are comprised. Mattel disagreed with that interpretation, noting that it seeks the return of the original drawings and certain sculpts to which it may have rights under the Inventions Agreement.

The items to which Mattel lays claim are not like the manuscript at issue in Dielsi v. Falk, 916 F.Supp. 985, 992 (C.D. Cal. 1996), or the government documents at issue in Idema v. Dreamworks, Inc., 162 F.Supp.2d 1129, 1192-93 (C.D. Cal. 2001), both of which had value merely for their ability to hold and convey their contents. Rather, the materials Mattel seeks are works of art that may have value apart from the copyrights they represent or the "paper and ink" and other materials of which they are comprised. Given the role of the drawings and sculpts in developing a new, commercially successful line of fashion dolls, and given the role of these items in the present litigation, the Court discerns a possible inherent value to the materials themselves.

MGA and Bryant also pressed at oral argument that Mattel had not advanced such a claim for return of tangible items. The Court disagrees. Citing to its Complaint at ¶ 157, Mattel contends it has long sought the return of tangible items.[1] An examination of Mattel's claim for conversion reveals that it encompasses such a claim. Therefore, the conversion claim seeking the return of tangible items is not preempted. MGA and Bryant's motions for summary judgment on this issue are therefore denied.

To the extent that Mattel's statutory unfair competition claim, discussed more fully below, is

---

[1] From a review of the record, it is clear to the Court that Mattel intended to cite ¶ 157 of its Amended Answer and Counterclaims, not its Complaint.

EXHIBIT ___C___

PAGE ___16___

based on copyright infringement, it is preempted, and the Court grants summary judgment in favor
of MGA on this issue.

### STATUTE OF LIMITATIONS

The Court heard argument at length on the statute of limitations issue. Although it is not
entirely clear, it appears to the Court from the hearing and from MGA's Rule 56(f) affidavit, that
there remain outstanding discovery matters that may have the potential, if resolved in MGA's
favor, to factor into the inquiry into the determination of the date of the accrual of any claims
against Bryant and/or MGA. Accordingly, the Court defers ruling on the issue of statute of
limitations at this time.

### INVENTIONS AGREEMENT

The Court addressed many issues of the enforceability of the Employee Confidentiality and
Inventions Agreement in its July 17, 2006, Order. The Court finds no good reason to revisit or
revise that Order.

Bryant argues that the Inventions Agreement is ambiguous on the issue of whether it
covered anything other than "inventions" as that term is used in patent law. Here, Bryant was a
fashion designer. He signed an agreement that assigned his "inventions" to Mattel. "Inventions"
is defined by the agreement to include "designs," which was undeniably the focus of Bryant's
employment with Mattel. In addition to assigning all rights to Bryant's "inventions" (i.e., "designs")
to Mattel, the agreement also assigned to Mattel "all [Bryant's] right, title, and interest in any . . .
copyrights . . . and copyright applications based [on those inventions]".

In order to conclude that the Inventions Agreement is ambiguous on the issue of whether it
would include any copyrightable drawings or doll designs developed by an employee, the Court
would have to read out of the agreement explicit terms assigning to the employer the rights to
"designs," "copyrights," and "copyright applications." The Court is required to read the contract as
a whole and, where possible, give effect to all its terms. Cal. Civ. Code § 1641 ("The whole of a
contract is to be taken together, so as to give effect to every part, if reasonably practicable, each
clause helping to interpret the other."). To accept the interpretation advanced by Bryant, the Court
would have to disregard this bedrock principle of contract construction by ignoring an explicit
assignment by the employee to the employer of copyrights. The interpretation advanced by
Bryant is therefore not reasonable, and the Court finds that the Inventions Agreement is not
ambiguous on the issue of its scope with respect to copyrightable materials.

The Inventions Agreement explicitly conveys to Mattel an employee's interest in any
copyrights or copyright applications. Assuming copyrightability and the resolution of certain (as
yet unresolved) issues of timing of creation and/or alteration in Mattel's favor, the original Bratz
drawings clearly fall within the scope of the Inventions Agreement.

Moreover, the Inventions Agreement incorporates, and therefore does not violate, Cal.

EXHIBIT ____C____

PAGE ____17____

Labor Code § 2870. Pursuant to that statute (and its incorporation in the Inventions Agreement), because the subject matter at issue -- the Bratz dolls -- relate to Mattel's business of marketing fashion dolls, the factual question of whether Bryant worked on them on his own time, rather during his working hours at Mattel, is not relevant.

MGA argues that contracts of adhesion are unenforceable if they are either outside the scope of the parties' expectations <u>or</u> they are substantively unconscionable. The Court previously determined that the Inventions Agreement was not substantively unconscionable, and now determines that it is not outside the scope of the parties' expectations. As noted above, Bryant was a designer, and the plain language of the Inventions Agreement assigns his "designs" to his employer. Objectively, therefore, it would not be surprising that Mattel would lay claim to Bryant's rights to any doll or doll fashions he designed during the period of his employment with Mattel. Moreover, undisputed evidence establishes that Bryant's subjective understanding of the contract was that it transferred at least some of his rights to Mattel.

Bryant also argues that his actions went no further than lawful preparations to compete with his employer. The undisputed facts, however, tell a different story: Bryant directly competed with Mattel by entering into a contract with its competitor to produce a competing product while still employed by Mattel.

The Court grants summary judgment in favor of Mattel on the issue of the enforceability of the Inventions Agreement and the issue of applicability of the Inventions Agreement to any Bratz-related "inventions" (including any designs, improvements, ideas, concepts, and copyrightable subject matter) that he is found to have created during the period of his employment with Mattel.

### DUTY OF LOYALTY AND FIDUCIARY DUTY

Carter Bryant, like all other California employees, owed a duty of loyalty to Mattel while employed there. <u>See</u> Cal. Labor Code § 2863. The undisputed facts establish that he breached this duty by entering into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products. <u>See</u> <u>Huong Que, Inc. v. Luu</u>, 150 Cal.App.4th 400, 414 (2007) ("The duty of loyalty is breached, and the breach may give rise to a cause of action in the employer, when the employee takes action which is inimical to the best interests of the employer.") (internal quotation marks and citation omitted).

Bryant also owed a fiduciary duty to Mattel by virtue of the language set forth in ¶ 1(a) of the Inventions Agreement. <u>Id.</u> ("The value of the Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust."). Under California law, a confidential relationship that gives rise to a fiduciary duty is created "where a confidence is reposed by one person in the integrity of another, and . . . the party in whom the confidence is reposed . . . voluntarily accepts or assumes to accept the confidence . . . ." City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1050-51 (N.D. Cal. 2002). The Inventions Agreement imposed such a duty on Bryant.

MINUTES FORM 90
CIVIL -- GEN

Page 5

Initials of Deputy Clerk:  jh

EXHIBIT _____C_____

PAGE _____18_____

At the hearing on this matter, counsel contended that a required element for imposing a fiduciary duty -- that the party with the duty be in a superior position to the party to whom the duty is owed -- was missing. That element is described as follows: "[T]he essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1050 (N.D. Cal. 2002) (internal quotation marks and citation omitted). The "superior position" to which California courts refer in this context is not superior bargaining power -- a position on which Mattel would apparently have the edge -- but rather it refers to a superior position vis-à-vis the duty imposed. Here, because the duty imposed upon Bryant was essentially to police his own actions by maintaining Mattel's confidentiality and communicating his own "inventions" to Mattel, Bryant was "in a superior position to exert unique influence over" Mattel because he was in the best position, arguably the only one in a position, to know of and police his actions.

As with the duty of loyalty, the undisputed facts establish that Bryant breached his fiduciary duty to communicate his inventions to Mattel when, rather than doing so, he secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products.

Accordingly, the Court grants Mattel's motion for summary judgment on the issues of the existence and breach of the duty of loyalty. The Court grants Mattel's motion for summary judgment and denies Bryant's motion for summary judgment on the issue of the existence and breach of a fiduciary duty.

In its motion, MGA argued that there can be no liability for aiding and abetting a breach of fiduciary duty in the absence of a fiduciary duty. Because the Court has rejected this argument, the Court denies MGA's motion for summary judgment on this issue.

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

MGA moved for summary judgment as to Mattel's claim for intentional interference with contractual relations.

The elements of a claim for intentional interference with contractual relations are stated as (1) a valid contract between a plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. Family Home & Finance Center, Inc. v. Federal Home Loan Mortg. Corp., 461 F.Supp.2d 1188, 1193 (C.D. Cal. 2006) (citing Pac. Gas & Elec. Co. v. Bear Stearns Co., 50 Cal.3d 1118, 1126 (1990)).

The undisputed facts show that the first, third, and fifth elements are met. Mattel has raised a triable issue of fact as to the second. The fourth element may be resolved after the

MINUTES FORM 90
CIVIL -- GEN                                    Page 6                    Initials of Deputy Clerk:  jh

EXHIBIT _____ C _____

PAGE _____ 19 _____

Court's further hearing on the motions for partial summary judgment. The Court therefore defers ruling on this issue.

## UNFAIR COMPETITION

MGA and Bryant's motions are granted in part and denied in part as to Mattel's unfair competition claims.

Mattel's statutory unfair competition claim, brought pursuant to Cal. Bus. & Profs. Code § 17200, survives summary judgment because Mattel has raised a triable issue of fact as to whether MGA tortiously interfered with Bryant and Mattel's contractual relationship and whether MGA engaged in commercial bribery.

However, two bases for this claim are foreclosed at this time. To the extent that the § 17200 claim is based on copyright infringement, it is preempted. To the extent that it is based on unfair conduct, summary judgment in favor of MGA is granted because the articulated unfair conduct does not approximate an antitrust violation that threatens competition. See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 186-87 (1999).

As to Mattel's common law unfair competition claim, summary judgment in favor of MGA and Bryant is granted. This claim is not, as it must be, based on the act of passing off another's goods as one's own. See Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1153 (9th Cir. 2008) (citing Bank of the W. v. Superior Court, 2 Cal.4th 1254 (1992)).

## UNJUST ENRICHMENT

Because Mattel failed to oppose this portion of Bryant's motion, the Court grants Bryant's motion for partial summary judgment on the issue of unjust enrichment.

## AFFIRMATIVE DEFENSES

Mattel seeks summary judgment as to many of the affirmative defenses asserted by the MGA entities and Carter Bryant. Most of these defenses are essentially equitable in nature, and therefore the Court **DEFERS RULING** on them until after trial. Specifically, the Court **DEFERS RULING** on the affirmative defenses of abandonment, acts and omissions of others, acquiescence, consent, estoppel, failure to mitigate, laches, unclean hands, and waiver until after trial.

For the reason set forth above in a separate section, the Court defers ruling on Mattel's motion as to the statute of limitations defense.

The final affirmative defense is based on 17 U.S.C. § 205(d). With this affirmative defense, MGA essentially contends that it is a bona fide purchaser for value of the Bratz copyrights which

MINUTES FORM 90                                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                                       Page 7

EXHIBIT ___C___

PAGE ___∂ʘ___

took the rights in good faith and without notice of any prior transfer of the rights therein to Mattel.
As the issue is argued by the parties, the Court would be required to determine the legal issue of
whether MGA's registration of the copyrights as an "assignment" constitutes "constructive notice"
in the manner required to give MGA the protection of 17 U.S.C. § 205(d). In the Court's view, this
is a complex legal issue that is not thoroughly addressed by the parties' briefs. Moreover, the
Court notes that a trial on the merits is likely to resolve the less complex factual issue of whether
MGA acted in good faith and without notice of an earlier assignment of rights. Accordingly, the
Court **DEFERS RULING** on this issue until after the Phase 1 trial.

* * * *

The Court will consider a number of remaining issues at the further hearing on these
motions, set for May 19, 2008. Specifically, referencing the parties' Notices of Motion, the Court
will consider the following issues:

Mattel's motion: Issue (2)(c), whether there is a factual dispute regarding the timing of
certain drawings and a dummy model; issue (3), whether the first-generation Bratz dolls are
substantially similar to seventeen drawings and a doll sculpt drawing or blueprint created by
Bryant and whether those are original, protectable works of expression; issue (5), whether MGA
and Larian are liable for aiding and abetting Bryant's breaches of the duty of loyalty and fiduciary
duty; and issue (6)(a) whether Mattel is entitled to summary judgment as to the affirmative
defense of statute of limitations.

Bryant's motion: Whether Bryant is entitled to summary judgment as to Mattel's claim for
copyright infringement; whether Bryant is entitled to summary judgment as to Mattel's breach of
contract claim; and whether Bryant is entitled to summary judgment on any portion of his claim for
declaratory relief.

MGA's motion: Whether Mattel's claims are time barred; and whether the fourth element of
intentional interference with contractual relations -- actual breach or disruption of the contractual
relationship -- can be resolved on summary judgment.

Except for any updates from any party regarding the outstanding discovery matters that
may be relevant to the statute of limitations, these issues are considered by the Court to be fully
briefed. Any supplemental briefs by the parties on any issue other than the statute of limitations
will be stricken by the Court. Any supplemental filings regarding the statute of limitations issue
shall be limited to addressing the status of outstanding discovery issues and/or recently produced
evidence.

**IT IS SO ORDERED.**

EXHIBIT _____ C _____

PAGE _____ 21 _____

# EXHIBIT D

CALENDARED

JAN 1 6 2007

P-Send

ENTERED
CLERK, U.S. DISTRICT COURT

JAN 1 2 2006

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION          BY DEPUTY

FILED

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(D).

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT,

              Plaintiff,

v.

MATTEL, INC.,

              Defendant.

and related actions.

CASE NO. CV-04-9049-SGL

(Consolidated with cases CV-04-9059 and CV-05-2727)

ORDER REGARDING MATTEL'S MOTION FOR LEAVE TO AMEND

This case has, increasingly, become one of the proverbial tail wagging the proverbial dog.

Back in April, 2004, Mattel, Inc., ("Mattel") filed a complaint in Los Angeles County Superior Court against its former employee and the reputed creator of the BRATZ dolls, Carter Bryant. The complaint pressed five separate state-law theories relating to certain agreements Bryant signed while an employee with Mattel, namely, an Employee Confidential Information and Inventions Agreement ("Inventions Agreement") and a Conflict of Interest Questionnaire ("COI Questionnaire"). Although couched in state law terms and ostensibly pled as a simple employment action, lurking beneath the allegations in the complaint was whether Bryant had either misappropriated Mattel's intellectual property or

EXHIBIT   D

PAGE   22

1  resources in creating and/or developing the BRATZ dolls or whether he continued
2  to develop his BRATZ design while still working in Mattel's employ. In either event,
3  the rights to the BRATZ dolls could become the property of Mattel, either through
4  infringement or through operation of the agreements noted above. The case was
5  later removed to this Court and was assigned the case number CV-04-9059. MGA
6  Entertainment, Inc. ("MGA"), the maker of the BRATZ doll line, then intervened "to
7  protect its rights to Bratz dolls" that were at stake in the action. Mattel, Inc. v.
8  Bryant, 446 F.3d 1011, 1012 (9th Cir. 2006); see also id. at 1013 ("Mattel argues, 'a
9  significant risk of prejudice' to MGA [exists] if the ownership of rights to intellectual
10 property, i.e., the Bratz creations, were decided in the absence of MGA").

11      In the interim, Bryant filed a declaratory judgment action in this Court,
12 seeking for the Court to declare that his BRATZ doll creations did not infringe
13 Mattel's copyright in its Toon Teens products. See Court's July 18, 2006, Order at
14 3 (noting that, although "Bryant's complaint . . . makes reference to 'other Mattel
15 products,' . . . the substance of his allegations all address the product 'Toon
16 Teens'"). The declaratory judgment action was assigned the case number CV-04-
17 9049.

18      MGA then filed an action against Mattel in this Court broadening the scope
19 of the controversy beyond that concerned with the ownership rights to the BRATZ
20 doll line. MGA's complaint asserted various Lanham Act claims and their California
21 state law equivalent arising out of Mattel's alleged "habitual and unfair tactics of
22 competition-by-intimidation and serial copycatting of MGA's products." (Compl.
23 ¶ 7). In essence, although the prior actions were concerned with ownership in the
24 rights to the BRATZ doll line, the allegations in 05-2727 concerned whether there
25 had been unlawful efforts to block the marketing of those rights in the BRATZ dolls.
26 MGA's complaint did make mention of other products that were affected by Mattel's
27 alleged predatory business practices, but by far the largest portion of its complaint
28 concerned Mattel's conduct in undermining (or seeking to undermine) MGA's rival

EXHIBIT __D__ ²

PAGE __23__

1 | line of BRATZ dolls.[1]

2 | By Order dated June 19, 2006, the Court consolidated all three cases "for all
3 | purposes" as they "involve[d] a number of common issues of law and fact." As the
4 | Court later noted in its August 10, 2006, Order: "At its heart, this case asks the
5 | question: Who owns the rights to the Bratz dolls?" Resolution of this question lies
6 | at the heart of or, at the very least, affects many of the other claims set forth in
7 | each of the three respective cases. For instance, even though the allegations in
8 | 05-2727 concern Mattel's alleged efforts at defeating the marketing of the BRATZ
9 | dolls, resolution of who owned the rights to the BRATZ dolls could serve to moot
10 | many of those allegations. It is hard to imagine how it is unlawful for a company to
11 | thwart or otherwise undermine the marketing of a product it owns. Thus, if Mattel
12 | owned the rights to the BRATZ dolls, many of the allegations in the 05-2727
13 | complaint would become moot. That said, such consolidation did not do away with
14 | the distinctions that do exist between the three cases. As the Court highlighted in
15 | its consolidation order, when either party files a pleading in the case, "the first
16 | paragraph of [that] document . . . shall inform the Court to which case(s) the
17 | document relates."

18 | On July 18, 2006, the Court dismissed Bryant's declaratory judgment action,
19 | 04-9049, finding there existed no reasonable apprehension of an imminent
20 | copyright infringement claim being filed against him by Mattel based on Mattel's
21 | Toon Teen intellectual property. See Court's July 18, 2006, Order at 4. The
22 | Court's Order was predicated entirely upon counsel for Mattel's representation
23 | during oral argument that it "will not maintain that Bratz infringes the copyright in
24 | Toon Teens." Owing to this representation, the Court, in dismissing the declaratory
25 | judgment action, made clear that any future "claim by Mattel of copyright

---

27 | [1] That the marketing of the BRATZ dolls lies at the heart of the issues
28 | between the rival doll makers in the 05-2727 case is best illustrated by the Court's discussion of those allegations in its August 26, 2005, Order, Granting in Part and Denying Part Mattel's Motion to Strike portions of MGA's complaint.



EXHIBIT $\underline{\hspace{0.5cm} \mathcal{D} \hspace{0.2cm}^{3}}$

PAGE $\underline{\hspace{0.5cm} \mathcal{24}}$

1   infringement based on the Toon Teens product is barred by counsel's

2   representation." July 18, 2006, Order at 4.

3        Presently before the Court is Mattel's request for leave to file an amended

4   complaint in the 04-9059 action. The complaint broadens considerably the nature

5   of the action from its genesis in state court. Whereas before the complaint simply

6   sought to litigate alleged contractual and fiduciary breaches by Bryant while in the

7   employ of Mattel (no doubt geared toward procuring a legal basis for Mattel to lay

8   claim to the BRATZ doll line), the amended complaint adds five more defendants

9   and nine new legal claims, alleging a wide range of commercial disputes between

10  the rival doll makers that spans three countries. For instance, the amended

11  complaint now contains RICO claims, a misappropriation of trade secrets claim,

12  and various aiding and abetting claims all stemming from allegations that MGA

13  cherry-picked certain high-ranking Mattel executives in foreign markets (many also

14  named as defendants in the amended complaint) or designers (namely, Bryant),

15  and then enticed or encouraged those same individuals to steal various trade and

16  proprietary secrets (be it sales plans, sales projections, customer profiles, or

17  intellectual property) from Mattel and hand them over to MGA before going to work

18  at MGA.

19       Moreover, the amended complaint expands upon the existing breaches of

20  contract and fiduciary duty claims in the original complaint by expanding the

21  universe of former employees (namely, the cherry-picked executives) to whom

22  those claims now apply.

23       Finally, Mattel now makes plain what was always lurking in its original

24  complaint — a copyright claim, but one directed not only to Bryant but also to MGA,

25  MGA's Hong Kong subsidiary, and MGA's President and CEO Isaac Larian.

26  Moreover, Mattel characterizes its copyright claim somewhat differently from that at

27  issue in Bryant's declaratory relief action: "The Amended Complaint does not

28  include a claim for infringement of copyrights in Toon Teens, but rather

EXHIBIT $\underline{D}$ <sup>4</sup>

PAGE $\underline{25}$

1  infringement of copyrights in Bratz." (Reply to MGA Opp. at 11). Toward that end,

2  Mattel has recently filed copyright registrations with the U.S. Copyright Office

3  claiming ownership in various BRATZ doll design drawings penned by Bryant.

4  A.     ANALYSIS

5      Federal Rule of Civil Procedure 15(a) provides that, once a responsive

6  pleading has been served, "a party may amend the party's pleading only by leave of

7  court or by written consent of the adverse party; and leave shall be freely given

8  when justice so requires." With no consent to Mattel's proposed filing proffered by

9  MGA and Bryant, determining whether to grant Mattel leave to file an amended

10 complaint is gauged by looking to the familiar formulation of factors set forth by the

11 Supreme Court in Forman v. Davis:

12
13          In the absence of any apparent or declared
            reason—such as undue delay, bad faith or dilatory
            motive on the part of the movant, repeated failure to
14          cure deficiencies by amendments previously allowed,
            undue prejudice to the opposing party by virtue of
15          allowance of the amendment, futility of amendment,
            etc.—the leave sought should, as the rules require, be
16          'freely given.' Of course, the grant or denial of an
            opportunity to amend is within the discretion of the
17          District Court, but outright refusal to grant the leave
            without any justifying reason appearing for the denial is
18          not an exercise of discretion; it is merely abuse of that
            discretion and inconsistent with the spirit of the Federal
19          Rules.

20 371 U.S. 178, 182 (1962).

21     MGA and Bryant offer the following reasons for denying Mattel leave to

22 amend: (1) Mattel has long known of the factual predicates underlying its copyright

23 and intentional interference claims but delayed in asserting them; (2) the proposed

24 amendment to add the copyright claim and the intentional interference claims

25 (against the new defendants) are futile because they are barred by the applicable

26 statute of limitations; (3) the copyright claim had been brought in bad faith by Mattel

27 because of its prior public disavowal of an intent to assert such a claim; and (4)

28 MGA and Bryant would incur undue prejudice were the copyright claim added to the

EXHIBIT _____ $\cancel{D}$ ⁵

PAGE _____ 26

1  suit because of alleged spoilation of evidence issues involving Mattel's ZEUS

2  computer system used by doll designers at Mattel and its e-mail system. None of

3  these arguments are persuasive.

4      1.    Awareness of Factual Predicate for Copyright and Intentional

5            Interference Claims

6      MGA argues that Mattel has long known about the factual predicate for its

7  recently added copyright claim, observing that, "[o]ver four years ago, in August

8  2002, Mattel CEO Bob Eckert received an anonymous letter stating that Bryant

9  created the project that became the 'Bratz' dolls — and worked with MGA to 'steal'

10  that project — while still employed at Mattel." (MGA Opp. at 9). Similarly, MGA

11  argues that Mattel has long known of the factual predicate for its intentional

12  interference claim with respect to Bryant's contract given that, "[b]y Mattel's own

13  admission, it learned in November 2003 — more than three years ago — that

14  Bryant had signed a contract with MGA 'dated as of' a month prior to his final day at

15  Mattel." (MGA Opp. at 11-12).

16      At the outset it must be observed that "[m]ere delay in proffering an

17  amendment does not justify denying leave to amend." Sierra Club v. Union Oil Co.

18  of California, 813 F.2d 1480, 1493 (9th Cir. 1987), vacated on other grounds by,

19  485 U.S. 931 (1988), and reinstated by, 853 F.2d 667 (9th Cir. 1988). Seizing upon

20  this point of law, Mattel argues that "only in . . . cases" when "granting leave would

21  require discovery to be reopened after summary judgment motions have been filed"

22  has the Ninth Circuit found the denial of leave "justified" based on the passage of

23  time alone. (Reply to MGA Opp. at 3). That is incorrect. There is a line of cases

24  from the Ninth Circuit finding that, if a "party seeking amendment knows or should

25  know of the facts underlying the amendment when the original complaint is filed,

26  the motion to amend may be denied." Sierra Club, 813 F.2d at 1493 (citing Jordan

27  v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982)). And, recently, the

28  Ninth Circuit upheld the denial of leave to amend based on the passage of time

6


EXHIBIT _D_
PAGE _27_

1  even though the requested leave to amend was tendered before the time, as set

2  forth in a Rule 16(b) pre-trial scheduling order, for amending pleadings had expired.

3  See AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946 (9th Cir. 2006).

4  The Ninth Circuit observed that, even when a request for leave to amend is timely

5  under a Rule 16(b) schedule for pretrial motions, the district court may nonetheless

6  still deny the request based on any of the Forman factors. Id. at 951-52. The Ninth

7  Circuit then noted that the issue of untimeliness (regardless of whether the

8  amendment is tendered "within the period of time allotted by the district court in a

9  Rule 16 scheduling order") in seeking to amend can constitute a justification for

10 denying leave to amend if "the moving party knew or should have known the facts

11 and theories raised by the amendment in the original pleading." Id. at 953.

12 Toward that end, the Ninth Circuit observed that "an eight month delay between the

13 time of obtaining a relevant fact and seeking a leave to amend is unreasonable."

14 Id. In this regard, the Ninth Circuit in Dialysist was unpersuaded by the fact that,

15 even though the moving party had known of the facts prompting the amendment for

16 a long period of time, there still remained eight more months of discovery for the

17 parties to marshal facts against the allegations raised by the amended pleading:

18 "Even though eight months of discovery remained, requiring the parties to scramble

19 and attempt to ascertain whether the Procrit purchased by AmerisourceBergen was

20 tainted, would have unfairly imposed potentially high, additional litigation costs on

21 Dialysist West that could have easily been avoided had AmerisourceBergen

22 pursued its 'tainted product' theory in its original complaint or reply." Id. Thus,

23 absent "a satisfactory explanation" for the delay in amending the complaint, the

24 Court is well within its rights to deny leave to amend. Id.

25       Mattel proffers the following reasons for taking the time that it did before

26 presenting its amended complaint: (1) Acting out of an abundance of caution to its

27 obligations under Rule 11 to present "factual contentions [that] have evidentiary

28 support," Mattel waited until its claims were better supported by evidence



EXHIBIT ___D___

PAGE ___28___

1  uncovered in discovery; and (2) the delay in the proceedings caused by "the year-
2  long stay and the parties' prior jurisdictional disputes" have left the case still in its
3  "nascent stage." (Reply to MGA Opp. at 2, 4).

4      The first reason is not well-founded. Rule 11 specifically allows parties to
5  aver factual allegations that "are likely to have evidentiary support after a
6  reasonable opportunity for further investigation or discovery" so long as the party
7  makes clear in its pleading that its factual contentions on those points are with the
8  caveat that they are based on a good faith belief that further discovery would
9  unearth evidence to support them. See FED. R. CIV. P. 11(b)(3). Simply put, Rule
10 11 did not stand in the way of Mattel averring the factual contentions it now claims it
11 "merely suspected" as being the case based on the limited information before it.
12 Mattel could have gone ahead and made such suspected factual allegations so
13 long as it caveated those claims with the declaration that it reasonably believed that
14 those allegations would be borne out by further discovery. Perhaps the time by
15 which Mattel could have reasonably believed such allegations would be borne out
16 by further discovery occurred after the dates noted by MGA, but it is hard to fathom
17 that such materialization took three or four years to occur.

18     The second reason would have some merit to it but for the fact that the
19 information that alerted (or should have alerted) Mattel to the existence of its now
20 asserted copyright and intentional interference claims was brought to Mattel's
21 attention well before the case was stayed on May 20, 2005. The stay, therefore,
22 did not operate as an obstacle to Mattel asserting its claims; nor even if it did, the
23 stay does not explain why Mattel waited nearly six months after the stay was lifted
24 on May 16, 2006, to present those claims now.

25     All of that being said, the one thing that gives the Court pause in denying
26 leave based on the tardiness in Mattel's presentation is the lack of any evidence
27 that MGA or Bryant have been prejudiced by the delay. Delay unconnected to
28 some showing of prejudice, be it prejudice to the parties or disruption in judicial



EXHIBIT __D__

PAGE __29__

8

1  management of the case, does not suffice to deny granting leave to amend. The

2  Ninth Circuit has noted that, "where a defendant is on notice of the facts contained

3  in an amendment to a complaint, there is no serious prejudice to defendant in

4  allowing the amendment" even if it is made tardily. Sierra Club, 813 F.2d at 1493.

5  Indeed, the denial of leave was proper in the Dialysist case not simply because of

6  the length of the delay, but because the delay itself was "detrimental" in that it

7  would entail the opposing party to have "unfairly" incurred "potentially high,

8  additional litigation costs" that could have been avoided if the moving party had

9  made clear its intentions earlier. 465 F.3d at 953.

10       Here, as well demonstrated in Mattel's papers, it is readily apparent from the

11  pleadings filed by MGA and Bryant in this case that both have been aware for some

12  time of the factual predicates now underlying Mattel's copyright claim and

13  intentional interference claim. (See MGA Opp. at 5 ("As Bryant and MGA

14  suspected at the time of filing — and Mattel now concedes by conduct — those

15  deceptively-pled state-law claims [in 04-9059] were copyright infringement claims all

16  along")(emphasis added)). The parties have engaged in meaningful discovery

17  regarding many of the facts touched upon by these new claims, be it tracking down

18  experts in various forensic fields or taking depositions of various of the key players

19  to those claims.  In point of fact, in their papers filed with this Court before this

20  present motion, both Bryant and MGA have made it abundantly clear that they have

21  long suspected that a copyright infringement claim was in the offing as evidenced

22  by Bryant's filing of the declaratory judgment action and MGA's intervention in the

23  05-9059 matter to protect its rights to the BRATZ dolls. Similarly, MGA and Bryant

24  have been on notice to the facts comprising the interference claim concerning

25  Bryant's contract as evidenced by the identity of the individuals who have been

26  deposed by Mattel, as well as the nature of the questions posed and the testimony

27  proffered at those depositions. MGA's argument that, with the amendments, it

28  faces the prospect of defending "against stale claims" owing to faded memories and



EXHIBIT  $D$ [9]

PAGE  30

1  loss of documents caused by the great passage of time, (see MGA Opp. at 3, 13),
2  is diminished by the fact that (no doubt owing to the sophistication of all counsel
3  involved) discovery on these very issues have been proceeding apace by both
4  sides long before Mattel filed its proposed amendments. This is simply not a case
5  where "additional litigation costs" will be "unfairly" visited upon Bryant and MGA by
6  allowing the proposed amendments; much of those costs have already been borne
7  by the parties for some time.

8       2.    Spoilation of Evidence

9       MGA next argues that Mattel's delay in bringing the amended complaint has
10  caused it prejudice as, in the interim, critical pieces of evidence have been or are
11  suspected of having become lost. For instance, MGA asserts that Mattel's Rule
12  30(b)(6) witness concerning its Zeus computer system, Julia Marine, testified that,
13  "although Mattel identified and segregated its most relevant backup tapes available
14  for Zeus, Mattel allowed its tape backup system to expire the database for those
15  backup tapes, thereby eliminating all information about what was actually stored on
16  those backup tapes." (MGA Opp. at 9-10). Information on the Zeus computer
17  system is critical because of Mattel's assertion that part of its copyright claim rests
18  on Bryant's exposure to Mattel development programs. (First Am. Compl. ¶ 26(a)).
19  As explained by MGA: "[C]oncept data and drawings created by [Mattel] design
20  center personnel are stored on Zeus. Thus, the electronic documents stored on
21  Zeus – which should include the metadata showing who created, edited and
22  accessed Mattel's concept drawings and designs – during the time Bryant worked
23  in the design center at Mattel is vitally important to defending against Mattel's
24  claims." (MGA Opp. at 14). MGA's argument is neither an accurate
25  characterization of Ms. Marine's testimony nor of the nature of Mattel's exposure
26  claim.

27       Ms. Marine did not testify that the information on the backup tapes (some
28  fifty in total) was lost, but rather that Mattel no longer carried the type of hardware

EXHIBIT $D^{10}$

PAGE 31

1  that could restore the information still found on those tapes:

2     Q.  So if you wanted to restore that 2002 backup
           tape[s] then, how would you go about doing that?

3

4                  . . . .

5     A.  You need the hardware so if we don't have the
           hardware — if [the technology used by the tape
           is] DLT we don't have the hardware and you've
6          got to buy it and — well, first you have to find a
           place to put it with adequate power which we
7          don't have in the design center. You need to
           have a tape library. You need to have the tape
8          drives that carried those tapes. You need a
           server that has the capability to – that's big
9          enough to handle all of the hardware. You need
           the software – the license for the backup
10         software[, Net Backup]. You need the disk space
           to restore it to and then you have to start reading
11         in all those tapes.

12    Q.  You said that you don't have that in the design
           center. Do you have that hardware anywhere
13         else in the company?

14    A.  DLT? No, no.

15    Q.  At what point did you get rid of the hardware?

16    A.  Once the last backups — DLT backups expired
           so it would have been a couple years ago
17         probably.

18  (Decl. Diana Torres, Ex. K at 118-119).

19         The above testimony clearly denotes the difficulty in restoring what was on

20  Mattel's Zeus computer system during the relevant time frame, but it certainly does

21  not demonstrate that the information on those backup tapes has been "eliminated"

22  or forever lost. Undoubtedly it will be a costly endeavor to recover that information

23  (not to mention to later search and sort through it); but to argue, as MGA does, that

24  the information is "unavailable" or "lost", (MGA Opp. at 9, 14), exaggerates its

25  plight. Indeed, Ms. Marine's testimony indicates that the difficulty in retrieving the

26  information on the Zeus backup tapes has been present for some time (maybe

27  since 2004 or perhaps even earlier). This is important because it undermines

28  MGA's claim that Mattel's undue delay in bringing its amended complaint will cause

EXHIBIT  D
PAGE  32

1 | it to suffer prejudice it otherwise would not have faced if the amendments were
2 | brought sooner. Such prejudice has been present for years, and Mattel's failure to
3 | bring its amended complaint sooner would not have changed this situation.

4 |     Similarly, MGA's point that access to what was on the Zeus computer
5 | system is vital in demonstrating that Bryant was not exposed to or otherwise did not
6 | hack the system to steal other designers work is diminshed to some extent by the
7 | fact that Bryant himself testified that he did not use the Zeus computer system and
8 | was "pretty much computer illiterate" while employed at Mattel. Admittedly, the
9 | ability to point to information on the Zeus system backup tapes to prove that Bryant
10 | did not access other designers drawings or to prove the date those drawings were
11 | created by those other designers would be useful evidence to negate Mattel's
12 | factual claims. Nonetheless, such evidence still would not discount other avenues
13 | outside of the Zeus computer system by which Mattel could seek to prove that
14 | Bryant was exposed to its copyrighted works, _e.g._, witness testimony that Bryant
15 | saw drawings of the same posted on other designers' cubicles.

16 |     MGA next surmises that Mattel's e-mail records have disappeared, not
17 | because it has any proof on that point, but simply because Mattel has postponed
18 | the deposition of the individual most knowledgeable of Mattel's e-mail records until
19 | after the hearing on Mattel's motion for leave to amend. (MGA Opp. at 10).
20 | Speculation of spoilation does not suffice. That MGA's argumentation on this point
21 | is nothing more than speculation is best exhibited by the evidence it has proffered
22 | in support of its argument: "[I]f the sole retained backup for Zeus is no longer
23 | available, it is not hard to imagine that Mattel's electronic mail archives are similarly
24 | out of reach." (MGA Opp. at 15 (emphasis added)). MGA then makes much of a
25 | deposition from a Mattel executive, Alan Kaye, who testified that e-mails in his
26 | inbox would be automatically deleted if they had remained there for more than a
27 | certain time period. (Decl. Diana Torres, Ex. H at 292-93). MGA takes from this
28 | acknowledgment that Mattel has an "automatic email deletion system" that has

EXHIBIT __D__

PAGE __33__

●                                    ●

1   compromised Mattel's "duty to preserve documents." (MGA's Opp. at 14).
2   Noticeably absent from MGA's argument is any evidence that the e-mails so
3   deleted from a Mattel employee's inbox are forever lost or, as is far more likely,
4   whether such information remains or is otherwise archived on some backup file on
5   Mattel's computer system. Absent concrete proof that spoilation has occurred,
6   nothing in MGA's argument forms a basis for denying Mattel its requested leave to
7   amend.

8         3.     Statute of Limitations

9         MGA next argues that Mattel's copyright and intentional interference claims
10  are futile as both are barred by the applicable statute of limitations. This argument
11  was pressed emphatically at oral argument. With respect to the copyright claim,
12  MGA argues that the applicable statute of limitations is three years, with the
13  limitations period accruing from when a party has knowledge of a violation or when
14  a reasonably diligent person would have been put on inquiry of the infringement.
15  (MGA Opp. at 16 (citing Roley v. New World Pictures, 19 F.3d 479, 481 (9th Cir.
16  1994)). MGA argues that Mattel was put on notice about its copyright claim in
17  August, 2002, upon the receipt of the anonymous letter to Mattel's CEO that Bryant
18  had stolen the idea for BRATZ while working at Mattel. Thus, according to MGA,
19  the limitations period on Mattel's claim expired in August, 2005, rendering Mattel's
20  current copyright claim stale.

21        The problem with MGA's analysis is it fails to take into account the relations-
22  back principles found in Rule 15(c), which provides that "[a]n amendment of a
23  pleading relates back to the date of the original pleading when "the claim . . . in the
24  amended pleading arose out of the conduct, transaction, or occurrence set forth . . .
25  in the original pleading," or if such relation back is otherwise permissible by the
26  state "law that provides the statute of limitations applicable to the action." By
27  MGA's own admission Mattel's copyright claim arises out of the same conduct or
28  transaction contained in the original complaint filed in April, 2004, well within the



EXHIBIT __D__

PAGE ___34___

1    applicable limitations period.[2] (MGA Opp. at 12 ("These very same allegations

2    [contained in the original complaint] underlie the copyright infringement and

3    intentional interference contract claims Mattel now seeks to allege against MGA,

4    Mr. Larian and Bryant")).

5         MGA's statute of limitations argument with respect to the intentional

6    interference claims fares no better. According to MGA, the applicable statute of

7    limitations is two years for an intentional interference with contract claim and Mattel

8    was aware of the facts alerting it to this claim (insofar as Bryant's contract is

9    concerned) on November 24, 2003, when it learned "that Bryant worked with MGA

10   to develop the 'Bratz' dolls prior to his last day of employment by Mattel and, hence,

11   prior to the expiration of his contractual relationship with Mattel."[3] (MGA Opp. at 18

12   (citing Knoell v. Petrovich, 76 Cal. App.4th 164, 168 (1999)). Such a time line

13   would, according to MGA, mean that the applicable limitations period expired on

14   Mattel's interference with Bryant's contract claim on November 24, 2005, well

15   before Mattel sought leave to file its amended complaint. (Id). The problem again

16   with MGA's argument is that it ignores that through Rule 15(c) Mattel's intentional

17   interference claim would relate back to when it filed its original complaint in April,

18

19

20       [2] The same would appear to be true — that the amendments would be timely

21   — if the amendments related back to Mattel's answer (filed on May 13, 2005) to
     MGA's complaint in the 05-2727 case.

22

23       [3] With respect to Mattel's interference with contract claim as to one of its
     former executives, Ron Brawer, MGA claims Mattel was put on notice of that claim

24   on September 17, 2004, when Brawer informed Mattel that he leaving to go to work
     for MGA. (MGA Opp. at 19-20). The problem with this argument is that nothing from

25   that simple event — Brawer's declaration of his intent to leave — in any way would
     apprise Mattel that MGA had encouraged Brawer to engage in nefarious conduct

26   (the stealing of proprietary information) causing Brawer to breach his contract with
     Mattel that he would not do anything to help a competitor while working for them.

27   MGA's contention that Mattel must have known of those misdeeds in mid-September
     is nothing more than speculation. Futility cannot be founded on what might or might

28   not be the case; either a claim is futile to bring or it is not.



EXHIBIT _____ $\underset{14}{D}$

PAGE _____ 35

1   2004, well before the limitations period expired.[4]

2          Accordingly, MGA's futility argument is not well-founded.

3      4.    Prior Disavowals of Asserting a Copyright Claim

4          Finally, MGA takes umbrage with the cageyness to which Mattel has taken in

5   this case as to whether or not it is asserting a copyright infringement claim against

6   it. To MGA, such ducking and weaving on Mattel's part renders its effort to now

7   bring such a copyright claim as one done in bad faith. No doubt the Court itself has

8   been subjected to Mattel's overly vague statements on this point, but in the end

9   nothing in those statements has ever foreclosed the possibility that such a claim

10  may be in the offing. Indeed, during the oral argument on Mattel's motion to

11  dismiss Bryant's declaratory judgment action, the Court pressed Mattel's counsel as

12  to whether it would assert such a copyright claim against Bryant as it is currently

13  seeking to do. The most that Mattel's counsel would proffer was that Mattel would

14  not assert a copyright claim against Bryant based on Mattel's copyright rights in

15  TOON TEENS. At that point, the Court directed the parties to engage in a meet

16  and confer based on counsel for Mattel's representation and to provide a report to

17  the Court based on those discussions. The report submitted to the Court made

18  clear that, although Mattel was willing to accede that it would not bring a copyright

19  claim based on TOON TEENS, it refused to accede to Bryant's broader request

20  that "Bryant 'never copied anything' and that no Mattel product has any 'relevance'

21  to any claim that Mattel has or ever will assert against Bryant." This by itself should

22  have dispelled any illusion either Bryant or MGA was operating under that Mattel's

23  prior statements had foreclosed any potential copyright claim against them.[5]

24

25          [4] Again the relations-back principle would also seem to render its claim timely
26  if it were filed as an amended answer (the original having been filed in May, 2005) in
    the 05-2727 case.

27          [5] MGA also argues that Mattel's effort to substitute MGA and its CEO, Isaac
28  Larian, for the "Doe" defendants listed in its original complaint is improper because
    Mattel knew of their identity when it filed the original complaint. The argument is



EXHIBIT __D__ 15

PAGE __36__

1      That said, Mattel's allegation in the amended complaint as to how it is

2  seeking to lay claim to the copyright in BRATZ is disconcerting. Paragraph 26,

3  subsection a, in the amended complaint alleges that Bryant "misappropriated and

4  misused Mattel property" by "using his exposure to Mattel development programs to

5  create the concept, design and name of Bratz." (First Am. Compl. ¶ 26(a)). Such

6  "exposure" could include Bryant misappropriating the Mattel design concept in

7  TOON TEENS in drawing his inspiration for the BRATZ doll. Were Mattel's

8  copyright claim so predicated it would be barred by this Court's July, 2006, Order,

9  dismissing Bryant's declaratory judgment action. Mattel was pressed on this point

10  during oral argument and conceded that such "exposure" to Mattel "development

11  programs" did not include TOON TEENS. With this representation, nothing in

12  Mattel's proposed copyright claim is barred under the rubric of bad faith.

13      5.    Judicial Economy Considerations

14      In his opposition, Bryant adds an additional reason for denying leave beyond

15  those contained in MGA's papers — the amendment would muddy the waters in the

16  04-9059 by adding "tangential" issues that would only serve to delay resolution of

17  the key issue lying at the heart of the complaint: Who owns the rights to the

18  BRATZ line of dolls. (Bryant Opp. at 2 ). Bryant notes that the case has proceeded

19  apace in moving toward resolving that issue, and the amendment would "transform

20

21  misplaced. As made clear by Mattel, California law allows a plaintiff to substitute in a

22  defendant for a "Doe" if the plaintiff was ignorant of that defendant's identity or
      ignorant of the basis for liability at the time the complaint was filed. See Miller v.

23  Thomas, 121 Cal.App.3d 440 (1981). MGA does not dispute this legal contention

24  but at oral argument disputed that Mattel did not know the basis for liability against
      itself or Mr. Larian due to the "uncanny" similarity between the allegations averred in

25  the original complaint and those now proffered against the two in the amended
      complaint. Specifically, MGA notes that the original complaint spoke of Bryant

26  working for one of Mattel's competitiors and of that employee's theft of Mattel's
      intellectual property before leaving to work for that competitior. At most, all this

27  shows is that Mattel knew that Bryant went to work for MGA, not that MGA or Mr.

28  Larian encouraged Bryant's alleged unlawful behavior recited in the original
      complaint.



EXHIBIT   D

16

PAGE   37

1   what Mattel has always claimed was a straightforward employment action against

2   an individual defendant into a global commercial dispute against Mattel's primary

3   competitor, MGA," that "will last years" thereby "delay[ing]" resolution of who owns

4   BRATZ.[6] (Bryant Opp. at 2). Mattel argues that "the law does not deny leave to

5   amend because claims are 'tangential'" and then reiterates its point that some

6   showing of prejudice, namely, seeking leave after expiration of discovery, is

7   necessary. (Reply to Bryant Opp. at 3). That is not entirely correct.

8         As noted previously, the Ninth Circuit recently upheld a denial for leave to

9   amend because the amendment would have "drastically changed" the litigation,

10   even though the leave request was tendered <u>before</u> the time, as set forth in a Rule

11   16(b) pre-trial scheduling order, for filing a motion to amend had expired and well

12   before the discovery cut-off. <u>See</u> AmerisourceBergen Corp. v. Dialysist West, Inc.,

13   465 F.3d 946, 953 (9th Cir. 2006). In justifying its reasoning the Ninth Circuit cited

14   approvingly to the following statement from a well-respected treatise: "If an

15   amendment substantially changes the theory on which the case has been

16   proceeding and is proposed late enough so that the opponent would be required to

17   engage in significant new preparation, the court may deem it prejudical." Id. at 953

18   n.2 (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE,

19   FEDERAL PRACTICE AND PROCEDURE § 1487 (2nd ed. 1990)). Thus, Dialysist

20   recognized that the introduction of "different legal theories" and/or proof of

21   materially different facts well into the litigation can itself be a basis for finding

22   prejudice regardless of whether the period for discovery has expired (or is even

23   close to expiring) or the parties have already filed summary judgment motions. Id.

24   at 953-54.

25         Although the parties can safely be said to be at this point well into the

26

27        [6] Bryant also brings intricate legal arguments about the sufficiency of the

28   allegations Mattel has averred in building its RICO claims against him. Such
considerations are best left to be resolved on a properly filed motion to dismiss.



EXHIBIT <u>D</u>
17

PAGE <u>38</u>

1  litigation in this consolidated action (as evidenced by the protracted discovery
2  disputes contained in the docket sheet that the parties have had before the
3  magistrate judge and now the special master, and the litigation of motions to
4  dismiss in both the 04-9049 and 04-9059 cases), the fact remains that, as Mattel
5  has made painfully clear in its papers, no scheduling order has been entered in this
6  case.[7] This takes away somewhat from the prejudice Dialysist found to exist when
7  a "drastic change [in a party's] litigation theory" takes place mid-stream in the
8  litigation process. Id. at 953. Simply put, without a schedule for the filing of pre-trial
9  motions and other matters (e.g., discovery cutoff), the parties have been given free
10  reign in how to conduct the litigation in this case.

11       That the delay in bringing the proposed amendments and the relative length
12  of time into the litigation when those amendments were brought may not neatly fold
13  into Dialysist's reasoning does not mean that leave must nonetheless be granted.
14  The 04-9059 action, as it is presently constituted, is not a complex one.  It asks a
15  rather narrow and straightforward question — Did anything from Bryant's
16  employment at Mattel during the 1999-2000 period give Mattel ownership rights to
17  the BRATZ doll line?  The proposed amendments would radically alter the litigation
18  in that case to include far ranging disputes involving multiple parties and concerning
19  events not connected with the BRATZ ownership issue.  That the original action
20  was a relatively simple and straight-forward matter raises another point beyond the
21  change in the action's litigation posture — whether entangling the rival doll makers'
22  other commercial disputes into this particular case would serve to muddy the waters
23  and make the matter that much more difficult to manage from the Court's
24  perspective.

25

26       [7]  Mattel's repeated refrain that the matter is in its nascent stage as evidenced
by the fact that the parties only just recently exchanged in initial disclosures is
27  misleading.  The exchange of initial disclosures referred to by Mattel is in the 05-
2727 case.  With respect to the 04-9059 case it appears that such initial disclosures
28  were completed long ago as evidenced by the fact that discovery disputes appeared
in that case as far back as January, 2005.



EXHIBIT   D

PAGE   39

18

1      As has long been recognized, equally important in determining whether to
2 grant such leave is what impact such amendments would have on the court's ability
3 to manage the case. See 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE
4 § 15.15[1] at 15-42.1 to 15-43 (3rd ed. 2006)("A court should also consider judicial
5 economy and its ability to manage the case. . . . The court should also temper the
6 policy favoring freely granting leave to amend with consideration of the ability of the
7 district court to manage the case adequately if amendment is allowed"). As Judge
8 Clark for the Fifth Circuit once observed: "In keeping with the purposes of the rule,
9 the court should consider judicial economy and whether the amendments would
10 lead to expeditious disposition of the merits of the litigation. Finally, the court
11 should consider whether the amendment adds substance to the original allegations,
12 and whether it is germane to the original case of action." Chitimacha Tribe of
13 Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982); see also
14 Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1493 (9th Cir.
15 1987)("General considerations of judicial economy also justify allowing the
16 amendments. The violations included in the proposed amendment relate to the
17 same subject matter as the original complaint. Allowing the amendment will further
18 the federal policy of 'wrapping in one bundle all matters concerning the same
19 subject matter.'").

20      Mattel's amendments do not add substance to the claims contained in its
21 original complaint. Rather, they would expand the universe of claims and
22 defendants stretching well-beyond the questions raised in the original complaint
23 over whether Bryant's conduct while in the employ of Mattel subjected his later
24 attributed creation of the BRATZ dolls to the provisions in Mattel's Inventions
25 Agreement or otherwise rendered his creation subject to an infringement action.
26 Nowhere does Mattel seek to reconcile the breadth of its present amendments with
27 the narrowness of the allegations contained in its original complaint. In fact, the
28 precise opposite is true. Mattel acknowledges that its proposed amendments bear

19



1   more congruity to the allegations leveled against it in MGA's Lanham Act case than

2   to those in the action to which it seeks to add them:

> [M]any of the matters raised by Mattel's proposed
> Amended Complaint are and will remain at issue
> because of MGA's Complaint, whether or not leave to
> amend is granted. MGA's claims allege that a broad
> array of purported Mattel conduct across the globe,
> starting at least as early as 1999, has violated the
> Lanham Act and unfair competition law. This includes
> Mattel's alleged infringement of Bratz and other MGA
> products. As a result, <u>issues in the proposed Amended
> Complaint are already part and parcel of Mattel's
> defenses to MGA's unfair competition claims,</u> including
> because they show that MGA and Bryant, and not
> Mattel, are ones who stole the products and other
> properties involved.

11   (Reply to Bryant Opp. at 7 (emphasis added)). Mattel apparently finds this

12   discongruity unimportant because "all of these matters have been consolidated with

13   the <u>Bryant</u> case." (<u>Id</u>. at 7). As noted earlier, the fact that the cases have been

14   consolidated does not mean that the parties can ignore the distinctions that still

15   exist between them. If, as Mattel acknowledges, the present amendments are

16   nothing more than re-formulated defenses and counterclaims it presently has to

17   MGA's complaint against it in the 05-2727 case, then such amendments should be

18   brought in the form of an amended answer and counterclaim in that case.

19       Consideration of the distinctions between the two cases is wise as it serves

20   as a useful tool in providing the Court a better means to manage the cases now

21   that they have been consolidated. The proverbial dog (ownership in BRATZ)

22   should be wagging the proverbial tail (the remaining commercial disputes), not the

23   other way around. Admittedly, the dog's tail has grown in size both by MGA's filing

24   of its complaint in the 05-2727 action and Mattel's response thereto through its

25   proposed amendments. Nonetheless, it is readily apparent to the Court that the

26   crown jewel in this action still remains the ownership rights to the BRATZ dolls. The

27   parties have engaged in extensive and undoubtedly expensive discovery on this

28   very issue (from hiring world-renowned experts to test the age of Bryant's design



EXHIBIT  D  20

PAGE  41

1  drawings to technically complex discovery of what is on each other's computers).

2  Indeed the separateness of the two matters is reflected in how the cases are
3  currently structured, namely, the narrowness of the issue involved in 04-9059 and
4  the expansiveness of the facts at issue in 05-2727. In light of this fact, the Court
5  believes a two-track scheduling order wherein the 04-9059 matter's discovery cut
6  off and trial date are set well-ahead of those in 05-2727 makes the most sense. As
7  noted earlier, many of the legal claims being pressed in 05-2727 will be affected by
8  the result of the litigation in 04-9059. If, for instance, Mattel does own the rights to
9  the BRATZ dolls (either owing to Bryant's stealing his idea from one of Mattel's
10  "development programs" or by way of the Inventions Agreement because he
11  continued to work on his designs while at Mattel), then large portions of MGA's
12  Lanham Act infringement claims may become moot. By the same token, if Mattel
13  does not own rights to BRATZ, then some of the defenses and counterclaims set
14  forth as independent claims in the present amended complaint may become moot,
15  including Mattel's copyright infringement claim as well as portions of its remaining
16  RICO, misappropriation, and aiding and abetting claims. If, however, the Court
17  were to allow the amended complaint to be filed in the 04-9059 action, such case
18  management would be difficult, if not impossible as many of the issues being
19  litigated in the 05-2727 case would have been poured into the 04-9059 case by the
20  amendment. Due to this substantial overlap in claims and facts, a two-track
21  scheduling order utilizing the case number distinctions would be impossible to craft.
22  When pressed by the Court at oral argument as to which of its proposed claims it
23  believed would not undermine the BRATZ ownership posture of the 04-9059 case,
24  Mattel cited to its copyright and RICO claims. However, upon further questioning
25  by the Court, counsel for Mattel acknowledged that much of those claims were, like
26  the claims at issue in 05-2727, dependent upon resolution of the ownership issue.

27  In light of the burden allowing Mattel's amendment to proceed would have on
28  this Court's ability to efficiently manage these consolidated matters denial of



EXHIBIT  $\underline{D}$ 21

PAGE  $\underline{42}$

1  Mattel's request to amend its complaint in the 04-9059 matter is justified. See

2  Perrian v. O'Grady, 958 F.2d 192, 195 (7th Cir. 1992)("The burden to the judicial

3  system can justify a denial of a motion to amend 'even if the amendment would

4  cause no hardship at all to the opposing party'"). Buttressing the Court's decision is

5  the fact that, even with such a denial, Mattel may file (and the Court provides leave

6  to Mattel to so file) an amended answer and counterclaim in the 05-2727 case

7  raising all the new claims and defendants presently sought to be achieved through

8  amendment of its complaint in the 04-9059 action. None of the substantive

9  concerns raised by MGA and Bryant to the present amended complaint, e.g.,

10  statutes of limitations, would appear to be affected if the new claims and

11  defendants were brought as defenses and counterclaims in the 05-2727 case as

12  opposed to the 04-9059 one.

13      Accordingly, the Court GRANTS Mattel's motion for leave to file its proposed

14  amendments, but only insofar as they are pled in the form of an amended answer

15  and counterclaim in the 05-2727 case.

16      Finally, the lack of a scheduling order in this case is problematic; one should

17  have been entered long ago. See Fed. R. Civ. P. 16(b)(noting that a scheduling

18  "order shall issue as soon as practicable but in any event within 90 days after the

19  appearance of a defendant and within 120 days after the complaint has been

20  served on a defendant"). In light of the fact that entry of a scheduling order is

21  woefully overdue in this case, the Court hereby ORDERS that a Rule 16(b)

22  scheduling conference be held in this consolidated matter on February 12, 2007, at

23  1:30 p.m. in Courtroom One. The parties are directed to file a Joint Rule 26(f)

24  report with the Court by February 5, 2007.

25      IT IS SO ORDERED.

26  DATE: _/- //- 0 ꓶ_

27

28                                      STEPHEN G. LARSON
                                        UNITED STATES DISTRICT JUDGE

EXHIBIT __D__

PAGE __43__

# EXHIBIT E

**COPY**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 90378)
2    Michael T. Zeller (Bar No. 196417)
    865 South Figueroa Street, 10th Floor
3  Los Angeles, California 90017
    Telephone:   (213) 443-3000
4  Facsimile:   (213) 443-3100

5  Attorneys for Plaintiff
    Mattel, Inc.

6

7

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

APR 27 2004

John A. Clarke, Executive Officer/Clerk
By _____ , Deputy
        SUE GABB

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF LOS ANGELES

10

11  MATTEL, INC., a Delaware corporation,        )   CASE NO.    BC314398
                                                 )
12                     Plaintiff,                )
                                                 )   COMPLAINT FOR:
13                                               )
              v.                                 )   (1)  BREACH OF CONTRACT;
14                                               )   (2)  BREACH OF FIDUCIARY
                                                 )        DUTY;
15  CARTER BRYANT, an individual; and            )   (3)  BREACH OF DUTY OF
16  DOES 1 through 10, inclusive,                )        LOYALTY;
                                                 )   (4)  UNJUST ENRICHMENT; AND
17                     Defendants.               )   (5)  CONVERSION
                                                 )
18                                               )

19

20

21

22

23

24

25

26

27

28

07209/579342.1

EXHIBIT _E_
PAGE _44_

COMPLAINT

1  43.   As a direct and proximate result of defendants' wrongful conversion of

2  Mattel's property and resources, Mattel has incurred damages.  Mattel is entitled to recover

3  compensatory damages against defendants in an amount to be determined at trial.

4  44.   Defendants acted with malice, fraud and oppression, and in conscious

5  disregard of Mattel's rights.  Accordingly, Mattel is entitled to an award of punitive damages

6  against defendants in an amount to be determined at trial.

7  45.   Furthermore, defendants' conduct has caused, and unless enjoined will

8  continue to cause, irreparable injury to Mattel that cannot be adequately compensated by

9  money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel

10  is entitled to an order restraining defendants from further conversion of Mattel property and

11  resources and/or restraining defendants from continuing to benefit from such conversion.

12

13  PRAYER FOR RELIEF

14

15  WHEREFORE, Mattel hereby respectfully requests that this Court:

16  A.   Award Mattel its damages;

17  B.   Order defendants to disgorge to Mattel all payments, revenue, profits,

18  monies, royalties and any other benefits derived or obtained by defendants as a result of the

19  conduct described herein;

20  C.   Order specific performance by Bryant to comply with and satisfy

21  Bryant's contractual obligations to Mattel;

22  D.   Enter an injunction restraining defendants, and all those acting in

23  concert or participation with them, from engaging in further wrongful conduct and/or from

24  continuing to benefit from their wrongful conduct;

25  E.   Order defendants to pay Mattel the full cost of this action and Mattel's

26  reasonable attorneys' fees;

27  F.   Award Mattel punitive damages in an amount sufficient to punish

28  defendants and deter such misconduct in the future; and

1     G.     Award such other and further relief as this Court deems just and proper.

2

3     DATED: April 27, 2004          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
4

5
                                      By _____
6                                        Michael T. Zeller
                                         Attorneys for Plaintiff
7                                        Mattel, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/579342.1

# EXHIBIT F

**COPY**

LODGED

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 90378)
2   (johnquinn@quinnemanuel.com)
    Michael T. Zeller (Bar No. 196417)
3   (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4   (joncorey@quinnemanuel.com)
    Duane R. Lyons (Bar No. 125091)
5   (duanelyons@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Plaintiff Mattel, Inc.

9             UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11  MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12 | Consolidated With Case No. 04-9059 and Case No. 05-2727 |
| 13                   Plaintiff, | |
| 14        v. | MATTEL, INC.'S FIRST AMENDED COMPLAINT FOR: |
| 15  MGA ENTERTAINMENT, INC., a California corporation; ISAAC | 1.  COPYRIGHT INFRINGEMENT; |
| 16  LARIAN, an individual; CARTER BRYANT, an individual; MGA | 2.  VIOLATION OF THE RACKETEER INFLUENCED AND |
| 17  ENTERTAINMENT (HK) LIMITED, a Hong Kong Special Administrative | CORRUPT ORGANIZATIONS ACT; |
| 18  Region business entity; MGAE DE MÉXICO, S.R.L. DE C.V., a | 3.  CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED AND |
| 19  Mexico business entity; CARLOS GUSTAVO MACHADO GOMEZ, an | CORRUPT ORGANIZATIONS ACT; |
| 20  individual; and DOES 4 through 10, | 4.  MISAPPROPRIATION OF TRADE SECRETS; |
| 21                   Defendants. | 5.  BREACH OF CONTRACT; 6.  INTENTIONAL INTERFERENCE |
| 22  AND CONSOLIDATED CASES | WITH CONTRACT; 7.  BREACH OF FIDUCIARY DUTY; |
| 23 | 8.  AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; |
| 24 | 9.  BREACH OF DUTY OF LOYALTY; |
| 25 | 10. AIDING AND ABETTING BREACH OF DUTY OF |
| 26 | LOYALTY; 11. CONVERSION; |
| 27 | 12. UNFAIR COMPETITION; AND 13. DECLARATORY RELIEF. |
| 28 | DEMAND FOR JURY TRIAL |

07934/2001691.1

FIRST AMENDED COMPLAINT

11-20

1

## **Thirteenth Claim**

2

### **Declaratory Relief**

3

### **(Against All Defendants)**

4     167. Mattel repeats and realleges each and every allegation set forth in

5     paragraphs 1 through 166, above, as though fully set forth at length.

6     168. As shown in the foregoing paragraphs above, an actual

7     controversy exists between Mattel and defendants regarding defendants' lack of

8     ownership interests in Bratz and Mattel's rights in the same.

9     169. Accordingly, Mattel seeks a declaration of the Court that

10    defendants have no valid or protectable ownership rights or interests in Bratz, and

11    that Mattel is the true owner of the same, and further seeks an accounting and

12    imposition of a constructive trust over Bratz, including without limitation

13    registrations and applications for registrations relating thereto made or filed by

14    defendants and third parties, and over all revenues and other monies or benefits

15    derived or obtained from MGA's and Bryant's purported ownership, use, sale,

16    distribution and licensing of Bratz.

17    170. Mattel seeks a declaration of the Court that any and all

18    agreements between Bryant, on the one hand, and MGA, on the other hand, in

19    which Bryant purports to assign to MGA any right, title or interests in any work

20    that he conceived, created or reduced to practice while a Mattel employee,

21    including but not limited to the Bratz designs, is void and of no effect, including

22    without limitation because Bryant had previously assigned said right, title or

23    interest to Mattel and because Mattel was otherwise the owner of said right, title or

24    interest.

25

### **Prayer for Relief**

26    WHEREFORE, Mattel respectfully requests judgment:

27    1.     For a declaration that defendants have no valid or protectable

28    ownership interests or rights in Bratz designs and works conceived, created or

07934/2001691.1

EXHIBIT _____ F _____ -45-

PAGE _____ 48 _____

1  reduced to practice by Bryant during the term of his Mattel employment and/or by

2  any others then-employed by Mattel, as well as in all derivatives prepared

3  therefrom, and that Mattel is the true owner of the foregoing;

4        2.    For a declaration that any agreement between Bryant, on the one

5  hand, and MGA or any person or entity, on the other hand, in which Bryant

6  purported to assign any right, title or interests in any work that he conceived,

7  created or reduced to practice while a Mattel employee, including but not limited to

8  the Bratz designs, is void and of no effect;

9        3.    For an Order enjoining and restraining defendants, their agents,

10  servants and employees, and all persons in active concert or participation with

11  them, from further wrongful conduct, including without limitation from imitating,

12  copying, distributing, importing, displaying, preparing derivatives from and

13  otherwise infringing Mattel's copyright-protected works;

14        4.    For an Order, pursuant to 17 U.S.C. § 503(a) and other

15  applicable law, impounding all of defendants' products and materials that infringe

16  Mattel's copyrights, as well as all plates, molds, matrices and other articles by

17  which copies of the works embodied in Mattel's copyrights may be reproduced or

18  otherwise infringed;

19        5.    For an Order mandating that defendants return to Mattel all

20  tangible items, documents, designs, diagrams, sketches or any other

21  memorialization of inventions created or reduced to practice during Bryant's

22  employment with Mattel as well as all Mattel property converted by defendants;

23        6.    For an Order mandating specific performance by Bryant to

24  comply with and satisfy Bryant's contractual obligations to Mattel;

25        7.    That Mattel be awarded, and defendants be ordered to disgorge,

26  all payments, revenues, profits, monies and royalties and any other benefits derived

27  or obtained as a result of the conduct alleged herein, including without limitation of

28

07934/2001691.1

EXHIBIT   *F*   -46-

PAGE   *49*

FIRST AMENDED COMPLAINT

1   all revenues and profits attributable to defendants' infringement of Mattel's

2   copyrights under 17 U.S.C. § 504;

3         8.    For an accounting of all profits, monies and/or royalties from the

4   exercise of ownership, use, distribution, sales and licensing of Bratz;

5         9.    For the imposition of a constructive trust over Bratz, including

6   without limitation registrations and applications for registrations relating thereto

7   made or filed by defendants and third parties, and all profits, monies, royalties and

8   any other benefits derived or obtained from defendant's exercise of ownership, use,

9   sale, distribution and licensing of Bratz;

10        10.   That Mattel recover its actual damages and lost profits;

11        11.   That defendants be ordered to pay exemplary damages in a sum

12   sufficient to punish and to make an example of them, and deter them and others

13   from similar wrongdoing;

14        12.   That defendants be ordered to pay treble its general and special

15   damages, plus interest, costs and attorney's fees incurred by reason of defendants'

16   violations of 18 U.S.C. §§ 1962(c)-(d).

17        13.   That defendants be ordered to pay double damages due to their

18   willful and malicious misappropriation of Mattel's trade secrets with deliberate

19   intent to injure Mattel's business and improve its own;

20        14.   That defendants pay to Mattel the full cost of this action and

21   Mattel's attorneys' and investigators' fees; and

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1          15.   That Mattel have such other and further relief as the Court may

2  deem just and proper.

3

4  DATED: November 19, 2006       QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

5

6                        By _____

7                           John B. Quinn
                             Attorneys for Plaintiff

8                           Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07934/2001691.1

EXHIBIT _F_    -48-

PAGE _51_

FIRST AMENDED COMPLAINT

# EXHIBIT G



COPY

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 90378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Duane R. Lyons (Bar No. 125091)
5    (duanelyons@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9            UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11  CARTER BRYANT, an individual,    CASE NO. CV 04-9049 SGL (RNBx)

12            Plaintiff,             Consolidated With Case No. 04-9059 and
                                     Case No. 05-2727
13       v.
                                     MATTEL, INC.'S AMENDED ANSWER
14                                   IN CASE NO. 05-2727 AND
   MATTEL, INC., a Delaware         COUNTERCLAIMS FOR:
15  corporation,
                                     1.  COPYRIGHT INFRINGEMENT;
16            Defendant.             2.  VIOLATION OF THE
                                         RACKETEER INFLUENCED AND
17                                       CORRUPT ORGANIZATIONS
                                         ACT;
18  MGA ENTERTAINMENT, INC. a        3.  CONSPIRACY TO VIOLATE THE
   California corporation,               RACKETEER INFLUENCED AND
19                                       CORRUPT ORGANIZATIONS
                                         ACT;
20            Plaintiff,             4.  MISAPPROPRIATION OF TRADE
                                         SECRETS;
21       v.                          5.  BREACH OF CONTRACT;
                                     6.  INTENTIONAL INTERFERENCE
22  MATTEL, INC., a Delaware            WITH CONTRACT;
   corporation, and DOES 1-10,      7.  BREACH OF FIDUCIARY DUTY;
23                                   8.  AIDING AND ABETTING
             Defendants.                 BREACH OF FIDUCIARY DUTY;
24                                   9.  BREACH OF DUTY OF
                                         LOYALTY;
25                                   10. AIDING AND ABETTING
   MATTEL, INC., a Delaware             BREACH OF DUTY OF
26  corporation,                         LOYALTY;
                                     11. CONVERSION;
27            Counter-claimant,      12. UNFAIR COMPETITION; AND

28

EXHIBIT 6
PAGE 52                    AMENDED ANSWER AND COUNTERCLAIMS
1-12



1    v.

13. DECLARATORY RELIEF.

2    MGA ENTERTAINMENT, INC., a
California corporation; ISAAC
3    LARIAN, an individual; CARTER
BRYANT, an individual; MGA
4    ENTERTAINMENT (HK) LIMITED,
a Hong Kong Special Administrative
5    Region business entity; MGAE DE
MEXICO, S.R.L. DE C.V., a
6    Mexico business entity; CARLOS
GUSTAVO MACHADO GOMEZ, an
7    individual; and DOES 4 through 10,

DEMAND FOR JURY TRIAL

8              Counter-defendants.

9

10   AND CONSOLIDATED CASES

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

J7209/2035982.1

EXHIBIT 6
PAGE 53

-2-

AMENDED ANSWER AND COUNTERCLAIMS

1        170. Mattel seeks a declaration of the Court that any and all

2  agreements between Bryant, on the one hand, and MGA, on the other hand, in

3  which Bryant purports to assign to MGA any right, title or interests in any work

4  that he conceived, created or reduced to practice while a Mattel employee,

5  including but not limited to the Bratz designs, is void and of no effect, including

6  without limitation because Bryant had previously assigned said right, title or

7  interest to Mattel and because Mattel was otherwise the owner of said right, title or

8  interest.

**Prayer for Relief**

10     WHEREFORE, Mattel respectfully requests judgment:

11      1.   For a declaration that Counter-defendants have no valid or

12  protectable ownership interests or rights in Bratz designs and works conceived,

13  created or reduced to practice by Bryant during the term of his Mattel employment

14  and/or by any others then-employed by Mattel, as well as in all derivatives

15  prepared therefrom, and that Mattel is the true owner of the foregoing;

16      2.   For a declaration that any agreement between Bryant, on the one

17  hand, and MGA or any person or entity, on the other hand, in which Bryant

18  purported to assign any right, title or interests in any work that he conceived,

19  created or reduced to practice while a Mattel employee, including but not limited to

20  the Bratz designs, is void and of no effect;

21      3.   For an Order enjoining and restraining Counter-defendants, their

22  agents, servants and employees, and all persons in active concert or participation

23  with them, from further wrongful conduct, including without limitation from

24  imitating, copying, distributing, importing, displaying, preparing derivatives from

25  and otherwise infringing Mattel's copyright-protected works;

26      4.   For an Order, pursuant to 17 U.S.C. § 503(a) and other

27  applicable law, impounding all of Counter-defendants' products and materials that

28  infringe Mattel's copyrights, as well as all plates, molds, matrices and other articles

1 | by which copies of the works embodied in Mattel's copyrights may be reproduced
2 | or otherwise infringed;

3 |      5.    For an Order mandating that Counter-defendants return to Mattel
4 | all tangible items, documents, designs, diagrams, sketches or any other
5 | memorialization of inventions created or reduced to practice during Bryant's
6 | employment with Mattel as well as all Mattel property converted by Counter-
7 | defendants;

8 |      6.    For an Order mandating specific performance by Bryant to
9 | comply with and satisfy Bryant's contractual obligations to Mattel;

10 |      7.    That Mattel be awarded, and Counter-defendants be ordered to
11 | disgorge, all payments, revenues, profits, monies and royalties and any other
12 | benefits derived or obtained as a result of the conduct alleged herein, including
13 | without limitation of all revenues and profits attributable to Counter-defendants'
14 | infringement of Mattel's copyrights under 17 U.S.C. § 504;

15 |      8.    For an accounting of all profits, monies and/or royalties from the
16 | exercise of ownership, use, distribution, sales and licensing of Bratz;

17 |      9.    For the imposition of a constructive trust over Bratz, including
18 | without limitation registrations and applications for registrations relating thereto
19 | made or filed by Counter-defendants and third parties, and all profits, monies,
20 | royalties and any other benefits derived or obtained from Counter-defendant's
21 | exercise of ownership, use, sale, distribution and licensing of Bratz;

22 |      10.    That Mattel recover its actual damages and lost profits;

23 |      11.    That Counter-defendants be ordered to pay exemplary damages
24 | in a sum sufficient to punish and to make an example of them, and deter them and
25 | others from similar wrongdoing;

26 |      12.    That Counter-defendants be ordered to pay treble its general and
27 | special damages, plus interest, costs and attorney's fees incurred by reason of
28 | Counter-defendants' violations of 18 U.S.C. §§ 1962(c)-(d).

1          13.   That Counter-defendants be ordered to pay double damages due

2  to their willful and malicious misappropriation of Mattel's trade secrets with

3  deliberate intent to injure Mattel's business and improve its own;

4          14.   That Counter-defendants pay to Mattel the full cost of this action

5  and Mattel's attorneys' and investigators' fees; and

6          15.   That Mattel have such other and further relief as the Court may

7  deem just and proper.

8

9  DATED:  January 12, 2007        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

10

11                        By    *John Quinn (BP)*

12                           John B. Quinn
Attorneys for Defendant and Counter-

13                           claimant Mattel, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT   6

-74-

PAGE   56

AMENDED ANSWER AND COUNTERCLAIMS