# EXHIBIT H

CONFORMED COPY

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 90378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Duane R. Lyons (Bar No. 125091)
5    (duanelyons@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
6    Los Angeles, California 90017-2543
     Telephone: (213) 443-3000
7    Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

12            Plaintiff,                 Consolidated With Case No. 04-9059 and
                                         Case No. 05-2727
13     v.
                                         MATTEL, INC.'S SECOND AMENDED
14                                       ANSWER IN CASE NO. 05-2727 AND
                                         COUNTERCLAIMS FOR:
15  MATTEL, INC., a Delaware
    corporation,                         1.  COPYRIGHT INFRINGEMENT;
16                                       2.  VIOLATION OF THE
            Defendant.                       RACKETEER INFLUENCED AND
17                                           CORRUPT ORGANIZATIONS
                                             ACT;
18  _____     3.  CONSPIRACY TO VIOLATE THE
    MGA ENTERTAINMENT, INC. a                RACKETEER INFLUENCED AND
19  California corporation,                  CORRUPT ORGANIZATIONS
                                             ACT;
20            Plaintiff,                 4.  MISAPPROPRIATION OF TRADE
                                             SECRETS;
21     v.                                5.  BREACH OF CONTRACT;
                                         6.  INTENTIONAL INTERFERENCE
22  MATTEL, INC., a Delaware                 WITH CONTRACT;
    corporation, and DOES 1-10,          7.  BREACH OF FIDUCIARY DUTY;
23                                       8.  AIDING AND ABETTING
            Defendants.                      BREACH OF FIDUCIARY DUTY;
24                                       9.  BREACH OF DUTY OF
                                             LOYALTY;
25

26                                          **PUBLIC REDACTED VERSION**

27                                                  **Volume I**

28

2154363.2

C7 12 c 7



1   MATTEL, INC., a Delaware
    corporation,

2                       Counter-claimant,

3       v.

4   MGA ENTERTAINMENT, INC., a
5   California corporation; ISAAC
    LARIAN, an individual; CARTER
6   BRYANT, an individual; MGA
    ENTERTAINMENT (HK) LIMITED,
7   a Hong Kong Special Administrative
    Region business entity; MGAE DE
8   MÉXICO, S.R.L. DE C.V., a
    Mexico business entity; CARLOS
9   GUSTAVO MACHADO GOMEZ, an
    individual; and DOES 4 through 10,

10                     Counter-defendants.

11

12  AND CONSOLIDATED CASES

10.  AIDING AND ABETTING
     BREACH OF DUTY OF
     LOYALTY;
11.  CONVERSION;
12.  UNFAIR COMPETITION; AND
13.  DECLARATORY RELIEF

DEMAND FOR JURY TRIAL

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2154363.2

EXHIBIT _H_
PAGE _58_

-2-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

### Thirteenth Counterclaim

### Declaratory Relief

### (Against All Counter-defendants)

167. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 166, above, as though fully set forth at length.

168. As shown in the foregoing paragraphs above, an actual controversy exists between Mattel and Counter-defendants regarding Counter-defendants' lack of ownership interests in Bratz and Mattel's rights in the same.

169. Accordingly, Mattel seeks a declaration of the Court that Counter-defendants have no valid or protectable ownership rights or interests in Bratz, and that Mattel is the true owner of the same, and further seeks an accounting and imposition of a constructive trust over Bratz, including without limitation registrations and applications for registrations relating thereto made or filed by Counter-defendants and third parties, and over all revenues and other monies or benefits derived or obtained from MGA's and Bryant's purported ownership, use, sale, distribution and licensing of Bratz.

170. Mattel seeks a declaration of the Court that any and all agreements between Bryant, on the one hand, and MGA, on the other hand, in which Bryant purports to assign to MGA any right, title or interests in any work that he conceived, created or reduced to practice while a Mattel employee, including but not limited to the Bratz designs, is void and of no effect, including without limitation because Bryant had previously assigned said right, title or interest to Mattel and because Mattel was otherwise the owner of said right, title or interest.

### Prayer for Relief

WHEREFORE, Mattel respectfully requests judgment:

1.    For a declaration that Counter-defendants have no valid or protectable ownership interests or rights in Bratz designs and works conceived,

2154363.2

-75-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT _____*H*_____

PAGE _____*59*_____

1   created or reduced to practice by Bryant during the term of his Mattel employment

2   and/or by any others then-employed by Mattel, as well as in all derivatives

3   prepared therefrom, and that Mattel is the true owner of the foregoing;

4         2.    For a declaration that any agreement between Bryant, on the one

5   hand, and MGA or any person or entity, on the other hand, in which Bryant

6   purported to assign any right, title or interests in any work that he conceived,

7   created or reduced to practice while a Mattel employee, including but not limited to

8   the Bratz designs, is void and of no effect;

9         3.    For an Order enjoining and restraining Counter-defendants, their

10   agents, servants and employees, and all persons in active concert or participation

11   with them, from further wrongful conduct, including without limitation from

12   imitating, copying, distributing, importing, displaying, preparing derivatives from

13   and otherwise infringing Mattel's copyright-protected works;

14         4.    For an Order, pursuant to 17 U.S.C. § 503(a) and other

15   applicable law, impounding all of Counter-defendants' products and materials that

16   infringe Mattel's copyrights, as well as all plates, molds, matrices and other articles

17   by which copies of the works embodied in Mattel's copyrights may be reproduced

18   or otherwise infringed;

19         5.    For an Order mandating that Counter-defendants return to Mattel

20   all tangible items, documents, designs, diagrams, sketches or any other

21   memorialization of inventions created or reduced to practice during Bryant's

22   employment with Mattel as well as all Mattel property converted by Counter-

23   defendants;

24         6.    For an Order mandating specific performance by Bryant to

25   comply with and satisfy Bryant's contractual obligations to Mattel;

26         7.    That Mattel be awarded, and Counter-defendants be ordered to

27   disgorge, all payments, revenues, profits, monies and royalties and any other

28   benefits derived or obtained as a result of the conduct alleged herein, including

EXHIBIT __H__

PAGE __60__

-76-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

1  without limitation of all revenues and profits attributable to Counter-defendants'
2  infringement of Mattel's copyrights under 17 U.S.C. § 504;

3         8.     For an accounting of all profits, monies and/or royalties from the
4  exercise of ownership, use, distribution, sales and licensing of Bratz;

5         9.     For the imposition of a constructive trust over Bratz, including
6  without limitation registrations and applications for registrations relating thereto
7  made or filed by Counter-defendants and third parties, and all profits, monies,
8  royalties and any other benefits derived or obtained from Counter-defendant's
9  exercise of ownership, use, sale, distribution and licensing of Bratz;

10        10.    That Mattel recover its actual damages and lost profits;

11        11.    That Counter-defendants be ordered to pay exemplary damages
12  in a sum sufficient to punish and to make an example of them, and deter them and
13  others from similar wrongdoing;

14        12.    That Counter-defendants be ordered to pay treble its general and
15  special damages, plus interest, costs and attorney's fees incurred by reason of
16  Counter-defendants' violations of 18 U.S.C. §§ 1962(c)-(d).

17        13.    That Counter-defendants be ordered to pay double damages due
18  to their willful and malicious misappropriation of Mattel's trade secrets with
19  deliberate intent to injure Mattel's business and improve its own;

20        14.    That Counter-defendants pay to Mattel the full cost of this action
21  and Mattel's attorneys' and investigators' fees; and

22
23
24
25
26
27
28

2154363.2

EXHIBIT ___H___

PAGE ___61___

-77-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

1      15.    That Mattel have such other and further relief as the Court may

2   deem just and proper.

3

4   DATED:  July 12, 2007              QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
5

6                                      By _____

7                                         John B. Quinn
                                          Attorneys for Defendant and Counter-
8                                         claimant Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2154363.2

-78-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT __H__

PAGE __62__

# EXHIBIT I

RECEIVED
MAR 0 8 2005

```
                                          FILED
                                 CLERK, U.S. DISTRICT COURT

                                       MAR - 4 2005

                                 CENTRAL DISTRICT OF CALIFORNIA
                                 BY                    DEPUTY
```

____ Priority
__/_ Send
____ Clsd
____ Enter
____ JS-5/JS-6
____ JS-2/JS-3

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>CARTER BRYANT, an individual; and DOES 1 through 10, inclusive,<br><br>        Defendant.<br><br>AND RELATED COUNTERCLAIMS | CASE NO. CV 04-9059 NM (RNBx)<br><br>ORDER DENYING PLAINTIFF MATTEL, INC.'S MOTION TO REMAND AND CERTIFYING QUESTION FOR INTERLOCUTORY REVIEW |

```
DOCKETED ON CM

    MAR  4 2005

BY              006
```

## I. INTRODUCTION

On April 27, 2004, Mattel, Inc. ("Mattel"), the world's largest manufacturer and marketer of toys, dolls, games, and stuffed toys and animals, filed the instant Complaint against its former employee, Carter Bryant ("Bryant"), in the Superior Court for the County of Los Angeles. The Complaint fails to state the amount in controversy and asserts generically-phrased causes of action for: (1) breach of contract; (2) breach of fiduciary duty; (3) breach of duty of loyalty; (4) unjust enrichment; and (5) conversion. On May 14, 2004, Bryant filed a Notice of Removal. On August 20, 2004, the court granted Mattel's motion to remand,

EXHIBIT _I_

PAGE _63_

1  finding that Bryant had failed to demonstrate the presence of either federal

2  question jurisdiction or diversity jurisdiction.  On November 2, 2004, Bryant filed

3  a second Notice of Removal.  On December 7, 2004, MGA Entertainment

4  ("MGA"), pursuant to stipulation and order, intervened as a defendant.  Pending

5  before the court is Mattel's Motion to Remand.

## II. FACTUAL & PROCEDURAL BACKGROUND

### A. Allegations in Mattel's Complaint

9  Mattel employed Bryant as a product designer from September 1995

10  through April 1998, and from January 1999 through October 2000.  Compl. ¶ 9.

11  Upon starting his second term, Bryant signed an Employee Confidential

12  Information and Inventions Agreement, in which he agreed not to "engage in any

13  employment or business other than for [Mattel], or invest or assist (in any manner)

14  any business competitive with the business or future business plans of [Mattel]."

15  Id. ¶ 10.  Bryant assigned to Mattel all rights, title, and interest in the "inventions"

16  he conceived of, or reduced to practice, during his employment.  Id.

17  Bryant also completed Mattel's Conflict of Interest Questionnaire.  Id. ¶ 11.

18  Bryant certified that he had not worked for any of Mattel's competitors in the prior

19  twelve months and had not engaged in any business dealings creating a conflict of

20  interest.  Id.  Bryant agreed to notify Mattel of any future events raising a conflict

21  of interest.  Id.

22  The Complaint asserts that, "[i]n late November 2003, Mattel learned that

23  Bryant had secretly aided, assisted and worked for a Mattel competitor . . . by

24  entering into an agreement with the competitor, during the time [he] was employed

25  by Mattel . . . ."  Id. ¶ 12.  "Bryant's agreement with the competitor obligated

26  Bryant to provide product design services to the competitor on a 'top priority'

27  basis."  Id.  Furthermore, it "provided . . . that Bryant would receive royalties and

2

EXHIBIT _____
PAGE _____

1   other consideration for sales of products on which [he] provided aid or assistance;

2   that all work and services furnished by Bryant to the competitor under the

3   agreement would be considered 'works for hire'; and that all intellectual property

4   rights to preexisting work by Bryant purportedly would be assigned to the

5   competitor." Id. The Complaint also alleges that "Bryant converted,

6   misappropriated and misused Mattel property and resources for the benefit of, and

7   to aid and assist, Bryant personally and Mattel's competitor." Id.

8        In support of its first motion to remand, Mattel provided a copy of this

9   agreement between Bryant and MGA. See Zeller Decl., Ex. 9 (MGA Agreement).

10  Pursuant to the agreement, signed September 18, 2000, Bryant agreed to provide

11  product design services for MGA's line of "Bratz" dolls (the "Bratz"). Id.[1]  In

12  return, MGA agreed to pay Bryant $5,500 per month for the first six months and

13  $5,000 per month for the next three months. Id.  MGA also agreed to pay Bryant a

14  3% royalty on the Bratz he worked on.  Id.

15                   *B. The First Notice of Removal*

16       On May 14, 2004, pursuant to 28 U.S.C. § 1441, Bryant filed his first notice

17  of removal.[2]  Bryant argued that this court had subject matter jurisdiction under

18  both 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1332

19

20   _____

21       [1] Bryant's last day of employment at Mattel was October 20, 2000.

22       [2] 28 U.S.C. § 1441 provides in part:

23

24       (a) Except as otherwise expressly provided by Act of Congress, any civil
         action brought in a State court of which the district courts of the United

25       States have original jurisdiction, may be removed by the defendant or the
         defendants, to the district court of the United States for the district and

26       division embracing the place where such action is pending. For purposes of

27       removal under this chapter, the citizenship of defendants sued under
         fictitious names shall be disregarded.

28

3

EXHIBIT  *I*

PAGE  *65*

1 (diversity jurisdiction).[3] First, Bryant asserted that the court had jurisdiction under
2 § 1331 because Mattel's claims likely implicated the rights to the Bratz and,
3 therefore, would "require construction of federal intellectual property laws . . . ."
4 Opp. to First Mot. to Remand at 11. Second, Bryant contended that the court had
5 jurisdiction under § 1332 because he was of diverse citizenship from Mattel and
6 the rights to the Bratz, worth "millions," were in controversy. Id. at 1-2, 5-6.

7      On June 14, 2004, Mattel filed a motion to remand, arguing it did not know
8 whether the Bratz were in controversy because it did not know whether Bryant
9 developed the Bratz while still employed by Mattel. See, e.g., July 12, 2004 Rep.
10 at 4 (disclaiming knowledge of "whether rights to Bratz are indeed at stake here").

11                   *C. August 20, 2004 Order*

12      On August 20, 2004, the court granted Mattel's motion to remand, finding
13 that Bryant had failed to demonstrate the presence of subject matter jurisdiction.
14 First, the court found that Bryant had failed to demonstrate federal question
15 jurisdiction because the face of the Complaint asserted only state law claims. See
16 Aug. 20, 2004 Order at 8. Second, the court found that Bryant had failed to
17 demonstrate diversity jurisdiction because he had not shown that the rights to the
18 Bratz were in controversy. See id. at 6.

19
20
21     [3] 28 U.S.C. § 1331 provides:

22     The district courts shall have original jurisdiction of all civil actions arising
23     under the Constitution, laws, or treaties of the United States.

24     28 U.S.C. § 1332 provides:

25
26     (a) The district courts shall have original jurisdiction of all civil actions
    where the matter in controversy exceeds the sum or value of $75,000,
27     exclusive of interest and costs, and is between . . . citizens of different
28     States . . . .

4

EXHIBIT   _I_

PAGE   _66_

*D. Events Occurring Between the First and Second Notices of Removal*

On August 12, 2004, Mattel produced to Bryant a July 18, 2003 Wall Street Journal article that suggested Bryant had copied a scrapped Mattel project, known as "Toon Teens," in creating the Bratz.  Not. of.Removal ¶ 21.[4]

---

[4] This article provided:

The history of the Bratz is intertwined with Mattel.  MGA says the Bratz were designed by Carter Bryant, a former member of [Mattel's] Barbie team.  Inside Mattel, some are convinced the Bratz borrow liberally from a Mattel project that was scrapped at the testing stage in 1998.  Mattel declined to comment.

Mr. Bryant didn't work on the line that Mattel scrapped, according to former and current Mattel designers.  But most Barbie designers had seen the prototypes, his former colleagues say.  Mr. Bryant, through MGA, declined to be interviewed.

The Mattel doll line that was scrapped wasn't exactly like the Bratz, says a longtime Mattel designer who worked on the project.  But the Bratz's oversized heads – with their pursed lips and cartoonish eyes – are "virtually identical" to the heads of the dolls her team created, says the designer, who left Mattel in 2001.

Lily Martinez, a designer who still works at Mattel, came up with the idea for the big doll heads for Mattel, colleagues say.  Mattel declined to comment.  She even posted her sketch on her cubicle, colleagues say.  "Anyone who passed by her cubicle would see the picture up on the wall," says another designer who also left Mattel in 2001.  "The big heads, the big eyes, the big feet – they were all the same" as the Bratz.  Ms. Martinez declined to comment . . . .

This year, closely held MGA expects revenue of about $800 million – with 65% of that coming from the Bratz . . . .

Zeller Decl., Ex. 35 (Maureen Tkacik, <u>Dolled Up: To Lure Older Girls, Mattel Brings in</u>

(continued . . .)

5

EXHIBIT _____ 𝓘 _____

PAGE _____ 𝟨𝟩 _____

On August 16, 2004, upon Bryant's specific request, Mattel produced to Bryant drawings of the Toon Teens. Jacoby Decl. ¶ 5. Mattel also produced the copyright registration for the Toon Teens drawings filed November 28, 2003, four years after the drawings were allegedly created. Not. of Removal ¶ 21; Zeller Decl. ¶ 27.[5] Mattel had failed to produce these documents in response to Bryant's June 14, 2004 comprehensive Request for Production. Jacoby Decl. ¶ 5; Zeller Decl., Ex. 36; Second Zeller Decl., Ex. 6.[6] When Mattel eventually produced the Toon Teens documents in August, it maintained: "Mattel does not believe the Toon Teens drawings and documents . . . are responsive to defendant's propounded document requests." Zeller Decl., Ex. 36.

_____

Hip-Hop Crowd; It Sees Stalwart Barbie Lose Market Share, So 'Flavas' Will Take on the 'Bratz', Wall St. J., July 18, 2003, at A1).

[5] Copyright registration is a prerequisite for bringing a copyright infringement action. 17 U.S.C. § 411(a).

[6] Bryant requested all documents: (1) "that support [the] contention . . . that Bryant . . . converted, used, sold, assigned or transferred any Mattel work product . . . created by any Mattel employee other than Bryant"; (2) "that support [the] contention . . . that any product sold at any time by [MGA] under the trade name 'Bratz' originated from, is derived from, is based on, copies, incorporates, or is substantially or confusingly similar to any design or work product owned at any time by Mattel . . . or created by any Mattel employee"; (3) "that [Mattel] contend[s] . . . [were] created by any employee of Mattel . . . and improperly used by Bryant for his own gain, or the gain of any third party"; (4) that evidence, relate, or refer to the contention that "Bryant misappropriated any property"; (5) that "evidence, relate or refer to any damages [Mattel] contend[s] to have suffered as the result of any act or omission of Bryant"; (6) that "evidence, relate or refer to the items or rights that [Mattel] contend[s] Bryant converted, improperly used, sold, assigned or otherwise transferred"; (7) that "evidence, relate or refer to the creation of 'Bratz' dolls"; and (8) that "evidence, relate or refer to any art work or other work product done at Mattel that [Mattel] contend[s] Bryant utilized in connection with his creation of anything for MGA, including but not limited to . . . 'Bratz.'" Second Zeller Decl., Ex. 6 (Request for Production of Documents).

6

EXHIBIT _____I_____

PAGE _____68_____

1    On September 8, 2004, Bryant filed a cross-complaint against Mattel
2  asserting claims for unfair competition, rescission, declaratory relief, and fraud.
3  See Cross-Compl. On September 9 and 10, 2004, Bryant filed papers in state
4  court arguing that Mattel's action was implicitly premised upon the allegation that
5  Bryant copied the Toon Teens in developing the Bratz. Zeller Decl., Exs. 8
6  (Bryant's Mot. for Protective Order) & 45 (Bryant's Case Management
7  Statement).

8    On October 8, 2004, Mattel again produced to Bryant the above-mentioned
9  Toon Teens documents, this time in response to Bryant's discovery request
10  seeking "[a]ll documents . . . that evidence, relate or refer to Toon Teen's [sic]
11  similarity to any toy sold under the trademark or trade name 'Bratz.'" Jacoby
12  Decl. ¶ 8; Second Zeller Decl., Ex. 7.

13    On October 11, 2004, Mattel produced to Bryant evidence of a document-
14  exchange agreement it has with a company being sued by MGA for infringing the
15  copyrights to the Bratz. Jacoby Decl. ¶ 9 & Ex. 7. The company had requested
16  that Mattel send it documents relating to the Toon Teens "so that [it] [could]
17  challenge the originality of MGA's design [in the Bratz] and [MGA's]
18  corresponding claim to copyright." Jacoby Decl., Ex. 7.

19    On October 13, 2004, Mattel produced to Bryant an anonymous letter
20  received by Mattel's CEO in August 2002, alleging that Bryant had stolen the idea
21  for the Bratz from Mattel. Jacoby Decl. ¶ 10 & Ex. 8. Mattel also produced
22  documents indicating that this letter triggered an investigation in 2002 into
23  Bryant's conduct. Id.

24    Mattel has aggressively pursued discovery relating to the Bratz. See Not. of
25  Removal ¶ 21. In late October 2004, "Mattel[] . . . informed . . . Bryant it would
26  no longer honor a previously agreed upon discovery limitation[] that Mattel would
27
28

7

EXHIBIT _____I_____

PAGE _____69_____

1   seek only documents related to the 'first generation of Bratz designs.'" Not. of

2   Removal ¶ 21; Jacoby Decl. ¶ 13 & Exs. 9, 13, 14.

3                             *E. Second Notice of Removal*

4         On November 2, 2004, Bryant filed a second Notice of Removal based upon

5   both § 1331 (federal question) and § 1332 (diversity) jurisdiction.[7] Bryant asserts

6   that the Complaint presents a federal question because events occurring since the

7   first removal and remand demonstrate that Mattel's conversion claim involves the

8   rights to the Bratz and is completely preempted by the Copyright Act. Not. of

9   Removal ¶¶ 10, 29, 34. Bryant also contends that there is diversity jurisdiction

10   because he and Mattel are of diverse citizenship and the same facts demonstrate

11   that the amount in controversy exceeds $75,000. See id. ¶¶ 9-24.

12         *F. Events Occurring After Bryant Filed the Second Notice of Removal*

13         On November 2, 2004, Bryant filed a Complaint in federal court seeking a

14   declaratory judgment that the Bratz do not violate Mattel's copyrights.

15         From November 4 through November 8, 2004, Mattel's lead counsel took

16   Bryant's deposition and questioned Bryant regarding not only the "substantial

17   similarity" between the Toon Teens and the Bratz, but also the amount of royalties

18   Bryant had received from the Bratz. Jacoby Decl., Ex. 1 (Bryant Depo.) at 254-58,

19   564-67, 703. When pressed for the relevance of the latter line of questioning,

20

21

22         [7] An hour before filing his second Notice of Removal, Bryant faxed Mattel an

23   offer to settle the case for an amount hundreds of thousands of dollars over the

24   jurisdictional minimum. Not. of Removal ¶ 25; Zeller Decl. ¶ 35 & Ex. 51. The timing
of Bryant's offer, although suspicious, does not detract from the fact that Mattel has not

25   pursued the offer, which, by its own terms, remained open for seven days. Not. of

26   Removal ¶ 25; Zeller Decl. ¶ 35 & Ex. 51. Furthermore, despite Mattel's arguments to
the contrary, the scope of the offer's releases do not render it meaningless, especially in

27   light of the fact that Mattel does not argue that the offer would have been acceptable if

28   more narrowly tailored.

EXHIBIT   *I*

PAGE   70

1  Mattel's counsel stated: "Damages." Id. at 703. Bryant testified that he had

2  received approximately $10 million in Bratz-related royalties. Id. at 705.

3      On December 1, 2004, Mattel filed the instant Motion to Remand. On

4  December 7, 2004, by stipulation and order, MGA intervened as a defendant.[8] In

5  the stipulation, MGA asserted that "it has a significantly protectable interest

6  relating to the subject matter of the action, . . . the disposition of the action may

7  impair or impede [its] ability to protect its interest absent intervention, and [its]

8  interest is not adequately represented by the existing parties." Stip. & Order

9  Permitting Intervention at 1.[9]

10     Also on December 7, 2004, Mattel filed a Motion to Dismiss Bryant's

11  Complaint for Declaratory Relief arguing, in part, that Bryant's case regarding the

12  copyrights to the Bratz "attempts to get a federal court to preemptively decide

13  issues presented in [Mattel's action against Bryant]." Mot. to Dismiss Comp. for

14  Decl. Rel. at 1.

15     After both Bryant and MGA filed Oppositions to the instant Motion to

16  Remand, Mattel filed two reply briefs. Mattel argued, in part, that MGA's post-

17  removal intervention destroyed the possibility of diversity jurisdiction. The court

18  ordered supplemental briefing on the issue. See Jan. 12, 2005 Order. On January

19  25, 2005, the court ordered further briefing on two issues: (1) whether MGA had

20

21      [8] MGA, like Mattel, has its principal place of business in California. Compl. ¶ 1;

22  Second Zeller Decl. ¶ 8 & Exs. 14-15. MGA is also incorporated in California. Second
    Zeller Decl. ¶ 8 & Ex. 16. 28 U.S.C. § 1332(c)(1) provides that "a corporation shall be

23  deemed to be a citizen of any State by which it has been incorporated and of the State

24  where it has its principal place of business."

25      [9] MGA acquired the first Bratz drawings from Bryant in late 2000. Woods Decl. ¶

26  2. In the first two years of sales of the Bratz, MGA earned "tens of millions of dollars."
    Id. ¶ 10. MGA employs over 200 people in Southern California. Id. "Of those, the

27  majority are directly or indirectly involved in production, marketing and sales of the

28  'Bratz' product line." Id.

9

EXHIBIT ___𝒯___

PAGE ___7/___

1  properly intervened under Rule 24 of the Federal Rules of Civil Procedure; and
2  (2) whether MGA was an "indispensable party" under Rule 19(b). See Jan. 25,
3  2005 Order. For the reasons set forth below, the court denies Mattel's Motion to
4  Remand.

5

6                              **III. ANALYSIS**

7        Generally, a state civil action is removable only if it could have been filed
8  originally in federal court. 28 U.S.C. § 1441. This "original jurisdiction" may be
9  based upon either the presence of a federal question or the diversity of the parties.
10  See Chesler/Perlmutter Prods., Inc. v. Fireworks Entm't Inc., 177 F. Supp. 2d
11  1050, 1054-55 (C.D. Cal. 2001) (Collins, J.). On removal, the removing defendant
12  bears the burden of proving the existence of the jurisdictional facts. See Gaus v.
13  Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). There is a "strong presumption"
14  against removal. Id. When a plaintiff moves to remand, the removing party has
15  the burden of establishing by a preponderance of the evidence that removal was
16  proper. See Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 403-04 (9th Cir.
17  1996).

18        In its Motion to Remand, Mattel argues: (1) that Bryant was precluded from
19  removing this action without any "new evidence"; (2) that removal was untimely;
20  (3) that Bryant waived his right to remove; and (4) that Bryant's removal fails on
21  the merits.

22                              *A. Preclusion*

23        Mattel argues that Bryant was precluded from removing a second time
24  without any "new" evidence. Mot. at 1, 15. Successive removals are not
25  necessarily barred. 16 James Wm. Moore et al., Moore's Federal Practice
26  § 107.30[4] (3d ed. 2004); Green v. R.J. Reynolds Tobacco Co., 274 F.3d 263,
27  266-68 (5th Cir. 2001); Benson v. SI Handling Sys., Inc., 188 F.3d 780, 782-83

28

                                    10

EXHIBIT __I__

PAGE __72__

1  (7th Cir. 1999); Doe v. American Red Cross, 14 F.3d 196, 198 (3d Cir. 1993).

2  "For example, if a district court remands a case to state court because the

3  defendant failed to prove the jurisdictional amount, but the plaintiff after remand

4  discloses that the amount in controversy is greater than the statutory amount in

5  controversy, the defendant may file a second notice of removal." 16 Moore et al.,

6  supra § 107.30[4] (citing Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d

7  527 (6th Cir. 1999)). For the reasons discussed in detail below, the court finds

8  new evidence permitted Bryant to filed a second notice of removal. See infra Part

9  III.D.2.

10                              *B. Timeliness*

11      Mattel argues that Bryant's second Notice of Removal was untimely. Mot.

12  at 2, 5-8. The timeliness of removal is governed by 28 U.S.C. § 1446(b), which

13  provides:

14      If the case stated by the initial pleading is not removable, a notice of
        removal may be filed within thirty days after receipt by the defendant,
15      through service or otherwise, of a copy of an amended pleading,
16      motion, order or other paper from which it may first be ascertained
        that the case is one which is or has become removable . . . .
17

18  28 U.S.C. § 1446(b). This time limit "is triggered only when the information

19  supporting removal is unequivocally clear and certain." Moore et al., supra

20  § 107.30[3][a][i][C] (citing Bosky v. Kroger Texas, LP., 288 F.3d 208, 211 (5th

21  Cir. 2002); Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d 1072, 1078 (10th Cir.

22  1999)). See also Schwarzer et al., Cal. Prac. Guide: Fed. Civ. Pro. Before Trial

23  § 2:914.5 (2004) ("The information supporting removal (i.e., federal question or

24  diversity of citizenship) must be 'unequivocally clear and certain' to start the 30-

25  day removal period running.") (emphasis omitted) (quoting Bosky, 288 F.3d at

26  211)).

27

28

EXHIBIT ___*I*___

PAGE ___73___

1    Without conceding the existence of any basis for removal, Mattel argues
2 that Bryant had "unequivocally clear and certain" information supporting removal
3 more than 30 days before he filed the notice of removal on November 2, 2004.
4 First, Mattel argues that the action became removable on federal question grounds
5 when Bryant received the Complaint. Second, Mattel asserts that the action
6 became removable on diversity grounds more than 30 days before Bryant filed the
7 notice because prior to October 2004, Bryant: (1) had received the Wall Street
8 Journal article and the Toon Teens documents; and (2) had filed papers in state
9 court arguing that Mattel's case was premised upon the allegation that Bryant
10 "stole the 'Bratz' concept from Mattel."

11    As to federal question jurisdiction, Mattel's position contradicts its own
12 assertion – and this court's conclusion – that the Complaint failed to state a federal
13 question on its face. See Aug. 20, 2004 Order at 8; see also infra Part III.D.1. It
14 also contradicts Mattel's assertion  – and this court's conclusion – that there is
15 insufficient pre-removal evidence to permit the court to find complete copyright
16 preemption and thus federal question jurisdiction. See infra Part III.D.1.
17 Accordingly, the 30-day removal period could not have been triggered by
18 "unequivocally clear and certain" evidence of federal question jurisdiction prior to
19 removal.

20    As to diversity jurisdiction, it was not "unequivocally clear and certain"
21 more than 30 days prior to Bryant's November 2, 2004 removal that the rights to
22 the Bratz – and thus more than $75,000 – were in controversy. Bryant's receipt of
23 the Wall Street Journal article provided no clear notice that Mattel would assert in
24 this litigation that Bryant stole the Bratz idea from Mattel. Indeed, the article
25 twice noted that Mattel had declined to comment. Similarly, the importance of
26 Mattel's August 16, 2004 document production was diminished by Mattel's own
27 disclaimer of the documents' relevancy. Finally, as Mattel concedes, how Bryant
28

12

EXHIBIT _____ $\mathcal{I}$

PAGE _____ 74

1 has characterized Mattel's case is not dispositive of this court's jurisdiction. See
2 Mattel's Obj. to Torres Decl. at 4. Because the removal period did not start
3 running more than 30 days before November 2, 2004, Bryant's removal was not
4 untimely.

## C. Waiver

6 Mattel argues that Bryant waived his right to remove by filing permissive
7 counter-claims in state court after the case had become removable. Mot. at 2-3,
8 8-13.[10] "[I]t is well established that a defendant 'may waive the right to remove to
9 federal court where, after it is apparent that the case is removable, the defendant
10 takes actions in state court that manifest his or her intent to have the matter
11 adjudicated there, and to abandon his or her right to a federal forum.'" Acosta v.
12 Direct Merchs. Bank, 207 F. Supp. 2d 1129, 1131-32 (S.D. Cal. 2002) (Whelan,
13 J.) (quoting Resolution Trust Corp. v. Bayside Developers, 43 F.3d 1230, 1240
14 (9th Cir. 1994)). A defendant so manifests his intent to remain in state court if he
15 files permissive counter-claims in state court after the case has become removable.
16 See Moore v. Permanente Med. Group, Inc., 981 F.2d 443 (9th Cir. 1992); Schmitt
17 v. Insurance Co. of N. Am., 845 F.2d 1546, 1548 (9th Cir. 1988); Acosta, 207 F.
18 Supp. 1131-33; California Republican Party v. Mercier, 652 F. Supp. 928, 931

---

20 [10] Mattel also argues that Bryant waived his right to remove by moving for a
21 protective order and engaging in discovery in state court. Mot. at 2-3, 12-13. A
defendant does not waive his right to remove by engaging in this sort of litigation activity.
22 See 16 Moore et al., supra § 107.18[3][b] (defendant does not waive right to remove by
23 "moving for confidentiality order"). See also Acosta v. Direct Merchs. Bank, 207 F.
Supp. 2d 1129, 1131 (S.D. Cal. 2002) (Whelan, J.) ("In general, the right of removal is
24 not lost by action in state court short of proceeding to an adjudication on the merits.")
25 (quotation marks omitted). Mattel cites only one case, Chavez v. Kincaid, 15 F. Supp. 2d
1118 (D.N.M. 1998), for the proposition that a defendant waives his right to remove by
26 engaging in discovery. The Chavez court, however, focused on the fact that the
27 defendant had filed a motion to dismiss, not that the defendant had engaged in discovery.
28 Id. at 1125.

EXHIBIT _____ $\underline{I}$

PAGE _____ $\underline{75}$

1  (C.D. Cal. 1986) (Pfaelzer, J.). See also Moore et al., supra § 107.18[3][a] (a

2  defendant waives right to remove by "[p]articipating in state court proceedings,

3  such as seeking some form of affirmative relief, when the defendant is not

4  compelled to take the action"). "However, [for there to be a waiver,] it must

5  [have] be[en] unequivocally apparent that the case [was] removable [before the

6  defendant engaged in the litigation conduct], [] the intent to waive the right to

7  remove to federal court and to submit to state court jurisdiction must [have been]

8  clear and unequivocal, and the defendant's actions must be inconsistent with the

9  right to remove." Moore et al., supra § 107.18[3][a] (citing numerous cases). See

10 also Acosta, 207 F. Supp. 2d at 1131 ("A waiver of the removal right must be clear

11 and unequivocal.").

12      The instant action was not removable on September 8, 2004, when Bryant

13 filed his counter-claims. As noted above, it was not "unequivocally apparent" that

14 the case was removable any time before October 2004. See supra Part III.B.

15 Thus, Bryant did not waive his right to remove.

16                    *D. The Merits of the Removal*

17      Bryant asserts that removal was proper because this court has jurisdiction

18 under both § 1331 (federal question) and § 1332 (diversity).

19                 1. Section 1331: Federal Question Jurisdiction

20      Bryant and MGA contend that the court has federal question jurisdiction

21 under § 1331 because Mattel's conversion claim is completely preempted by the

22 Copyright Act.[11]

23

24      [11] MGA also argues in its Opposition that Mattel's breach of fiduciary duty,

25 breach of loyalty, and unjust enrichment claims are completely preempted. MGA Opp. at

26 6-12. Because these arguments did not appear in the Notice of Removal, the court need

27 not consider them. 14C Charles Alan Wright & Arthur Miller, Federal Practice and

28 Procedure § 3732 (3d ed. 1988) ("the district court may decline to assert jurisdiction over

                                                                    (continued . . .)

                                    14

EXHIBIT ___*I*___

PAGE ___*76*___

1   Federal question jurisdiction is governed by the "well-pleaded complaint
2   rule." This rule provides that jurisdiction under § 1331 is proper only when a
3   federal question appears on the face of a well-pled complaint. See, e.g.,
4   Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). As a result, a plaintiff – as
5   master of the complaint  – "may avoid federal jurisdiction by exclusive reliance on
6   state law." Id. Further, a defendant cannot remove solely "on the basis of a
7   federal defense, including the defense of preemption, even if the defense is
8   anticipated in the plaintiff's complaint, and even if both parties concede that the
9   federal defense is the only question truly at issue." Id. at 393. Thus, the federal
10  question must appear on the face of the complaint, as alleged and controlled by the
11  plaintiff. Chesler/Perlmutter Prods., Inc., 177 F. Supp. 2d at 1055.

12  "There does exist, however, a corollary to the well-pleaded complaint rule,
13  known as the 'complete preemption' doctrine. The Supreme Court has concluded
14  that the preemptive force of some statutes is so strong that they 'completely
15  preempt' an area of state law. In such cases, any claim purportedly based on that
16  preempted state law is considered, from its inception, a federal claim, and
17  therefore arises under federal law." Balcorta v. Twentieth Century-Fox Film
18  Corp., 208 F.3d 1102, 1107 (9th Cir. 2000) (quoting Metropolitan Life Ins. Co. v.
19  Taylor, 481 U.S. 58, 65 (1987)). In these cases, even a well-pled state law
20  complaint may be removed to federal court.[12]

21

22  the case for reasons not averred in the removal notice"). Furthermore, consideration of
23  the arguments would not change the court's conclusion that there was no basis for federal
24  question jurisdiction at the time of removal.

25  [12] Moreover, "under the artful pleading rule a plaintiff may not defeat removal by
26  omitting to plead necessary federal questions in a complaint." ARCO Envtl.
    Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of the State of Montana, 213
27  F.3d 1108, 1114 (9th Cir. 2000) (quotation marks omitted). "Though 'artful pleading'
28                                                          (continued . . .)

15

EXHIBIT _____I_____

PAGE _____77_____

1    In determining whether a particular state law claim is completely preempted
2  by federal law for purposes of removal jurisdiction, the court may look to the
3  factual allegations in the complaint and the information included in the notice of
4  removal. Chesler/Perlmutter Prods., Inc., 177 F. Supp. 2d at 1058 ("[D]istrict
5  courts may consider the petition of removal 'to clarify the action plaintiff presents
6  and to determine if it encompasses an action within federal jurisdiction.") (quoting
7  Schroeder v. Trans World Airlines, Inc., 702 F.2d 189, 191 (9th Cir. 1983)). The
8  court cannot consider post-removal evidence. See id. (court cannot consider
9  evidence in motion to dismiss or opposition to motion to remand). This contrasts
10 with diversity jurisdiction, where the court can "consider post-removal evidence in
11 determining whether [the] requisite amount is in controversy." 16 Moore et al.,
12 supra § 107.14[2][g] n. 102.1.

13    The Copyright Act has complete preemptive force. See Rosciszewski v.
14 Arete Assocs., Inc., 1 F.3d 225 (4th Cir. 1993); Chesler/Perlmutter Prods., Inc.,
15 177 F. Supp. 2d 1050; Worth v. Universal Pictures, Inc., 5 F. Supp. 2d 816 (C.D.
16 Cal. 1997) (Baird, J.); Dielsi v. Falk, 916 F. Supp. 985 (C.D. Cal. 1996) (Collins,
17 J.). Furthermore, state law conversion claims are capable of being completely
18 preempted by the Copyright Act. See, e.g., Dielsi, 916 F. Supp. at 992; Worth, 5
19 F. Supp. 2d at 822-23. In order for there to be such preemption, the state law
20 claim must meet two requirements. First, the "work at issue" must come within
21 the subject matter of copyright. Del Madera Props. v. Rhodes & Gardner, Inc.,

22

23

---

24 and 'complete preemption' ostensibly remain separate doctrines, they are so intertwined
   in the available case law that they appear to raise [the] same question: are Plaintiff's
25 claims so 'completely preempted' that it is only by 'artful pleading' that [it] manages to
   avoid a 'federal question' in the Complaint[?]" Braco v. MCI Worldcom
26 Communications, Inc., 138 F. Supp. 2d 1260, 1268 (C.D. Cal. 2001) (Collins, J.). "In
27 other words, it seems that 'complete preemption' is a prerequisite of sorts to any finding
   that a plaintiff has 'pled around' what would otherwise be a federal claim." Id.
28

16

EXHIBIT ___*I*___

PAGE ___*78*___

1   820 F.2d 973, 976 (9th Cir. 1987); Selby v. New Line Cinema Corp., 96 F. Supp.
2   2d 1053, 1057 (C.D. Cal. 2000) (Matz, J.).  Second, the rights granted under the
3   state law must be "equivalent to [one] of the exclusive rights within the general
4   scope of copyright."  Del Madera, 820 F.2d at 976; see also Selby, 96 F. Supp. 2d
5   at 1057.

6        The court cannot find that Mattel's conversion claim was completely
7   preempted at the time of removal because the Complaint and the Notice of
8   Removal fail to reveal what work is even "at issue," much less whether that work
9   falls within "the subject matter of copyright."  First, the Complaint is vague and
10  generalized; Mattel never mentions what items or works Bryant allegedly
11  converted.  As Bryant acknowledges, the Complaint's allegations are so generic
12  that "Mattel could conceivably be trying to recover the value of anything from a
13  pen or pad of paper to [a] truckload of collectible 'Barbie' dolls or more."  Not. of
14  Removal ¶ 18.  Second, although the information in the Notice of Removal sheds
15  some light on the nature of Mattel's claims, it does not necessarily demonstrate
16  what works are "at issue."  It was not until *after* removal – when Mattel admitted
17  that the Bratz are relevant to its damages and asserted that this action involves the
18  same issues as Bryant's declaratory relief action – that it became clear that
19  Mattel's conversion claim is rooted in the allegation that Bryant "stole" the Bratz
20  idea from Mattel.  The court, however, may not consider this post-removal
21  evidence for purposes of determining if there was complete preemption at
22  removal.  See Chesler/Perlmutter Prods., Inc., 177 F. Supp. 2d at 1058.  Thus
23  constrained by the evidence it may consider, the court cannot find that Mattel's
24  conversion claim was preempted by the Copyright Act at the time of removal.
25  Consequently, Bryant has failed to show that the court has federal question
26  jurisdiction under § 1331.
27
28

17

EXHIBIT ___*I*___

PAGE ___*79*___

1                2. Section 1332: Diversity Jurisdiction

2        Bryant and MGA argue that there is diversity jurisdiction under § 1332.

3 This presents two issues: first, whether diversity jurisdiction was present at the

4 time of removal; second, whether MGA's post-removal intervention as a non-

5 diverse defendant destroyed the possibility of diversity jurisdiction.

6                  *a. Diversity Jurisdiction at Removal*

7        To demonstrate the existence of diversity jurisdiction at the time of removal,

8 Bryant must show that he and Mattel were of diverse citizenship and that it is more

9 likely than not that "the matter in controversy exceed[ed] the sum or value of

10 $75,000, exclusive of interest and costs." 28 U.S.C. § 1331; Singer v. State Farm

11 Mut. Auto. Ins. Co., 116 F.3d 373, 376 (9th Cir. 1997); Sanchez v. Monumental

12 Life Ins. Co., 102 F.3d 398, 403-4 (9th Cir. 1996). Mattel was and is a citizen of

13 Delaware and California, and Bryant was and is a citizen of Missouri. Not. of

14 Removal ¶¶ 12-13. Therefore, Mattel and Bryant were of diverse citizenship at the

15 time of removal.

16        Further, Bryant has demonstrated that it is more likely than not that more

17 than $75,000 was in controversy at the time of removal. Unlike federal question

18 jurisdiction, the court may "consider post-removal evidence in determining

19 whether [the] requisite amount is in controversy." 16 James Wm. Moore et al.,

20 Moore's Federal Practice § 107.14[2][g] n. 102.1 (3d ed. 2004) (citing Singer v.

21 State Farm Mut. Auto Ins., 116 F.3d 373, 377 (9th Cir. 1997) (court may consider

22 plaintiff counsel's post-removal oral admission to court); Williams v. Best Buy

23 Co., Inc., 269 F.3d 1316, 1319-20 (11th Cir. 2001); Allen v. R & H Oil & Gas Co.,

24 63 F.3d 1326, 1335-36 (5th Cir. 1995)). See also Sierminski v. Transouth Fin.

25 Corp., 216 F.3d 945, 947-49 (11th Cir. 2000) (court may consider, among other

26 post-removal evidence, plaintiff's post-removal admissions); Harmon v. OKI Sys.,

27

28

EXHIBIT _____ *I*_____

PAGE _____ *80*_____

1   115 F.3d 477 (7th Cir. 1997). Cumulatively, the pre-removal and post-removal

2   evidence demonstrates that the rights to the Bratz were and are in controversy.

3       Specifically, Mattel's counsel has admitted that Bryant's royalties on the

4   Bratz are relevant to Mattel's claim for damages; Mattel has acknowledged the

5   similarity of the Toon Teens and the Bratz in its responses to discovery requests;

6   Mattel has sought discovery regarding the "substantial similarity" between the

7   Toon Teens and the Bratz; Mattel has agreed to provide a third party with

8   documentation regarding the Toon Teens to demonstrate the Bratz are knock-offs

9   of the Toon Teens; Mattel has admitted launching an investigation into the

10   allegation the Bryant stole the idea for the Bratz from Mattel; Mattel has

11   vigorously pursued discovery relating to the Bratz; and Mattel has admitted that its

12   case involves that same issues as Bryant's declaratory relief action regarding the

13   Bratz. Because the value of the rights to the Bratz easily exceeds $75,000, Bryant

14   has demonstrated that it is more likely than not that the amount in controversy

15   exceeded the jurisdictional minimum at the time of removal. See Jacoby Decl.,

16   Ex. 1 (Bryant Depo.) at 705 (testimony that Bryant has received approximately

17   $10 million in royalties from the Bratz). Accordingly, Bryant has met his burden

18   in demonstrating that diversity jurisdiction existed at the time of removal.

19                   *b. The Effect of MGA's Intervention*

20       Mattel argues that MGA's post-removal intervention as a non-diverse

21   defendant destroyed diversity. In contrast, Bryant and MGA contend that MGA's

22   intervention had no such effect, due to the long-standing rule that "[i]f a non-

23   diverse party enters a case by intervention as of right, his presence will not destroy

24   jurisdiction unless [he] was an indispensable party when the plaintiff filed the

25   complaint." Deutsche Fin. Serv. Corp. v. Schwartz Homes, Inc., 187 F.R.D. 542,

26   545 (N.D. Ohio 1999) (citing Dean v. Holiday Inns, Inc., 860 F.2d 670, 672 (6th

27   Cir. 1988)). See also Wichita R.R. & Light Co. v. Pub. Utils. Comm'n, 260 U.S.

28

19

EXHIBIT   *I*

PAGE   *81*

1  48, 54 (1922); Am. Nat'l Bank & Trust Co. of Chicago v. Bailey, 750 F.2d 577,

2  582 (7th Cir. 1984); Gaines v. Dixie Carriers, Inc., 434 F.2d 52, 54 (5th Cir.

3  1970); Hardy-Latham v. Wellons, 415 F.2d 674, 676 (4th Cir. 1968); Black v.

4  Texas Employers' Ins. Ass'n, 326 F.2d 603 (10th Cir. 1964); Formulabs, Inc. v.

5  Hartley Pen Co., 318 F.2d 485, 492 (9th Cir. 1963); Mut. Fire, Marine & Inland

6  Co. v. Adler, 726 F. Supp. 478, 481-82 (S.D.N.Y. 1989).  Mattel responds: (1) that

7  MGA's intervention did not meet the requirements of this rule; and (2) that this

8  rule is no longer good law in light of the passage of 28 U.S.C. § 1447(e) in 1988

9  and 28 U.S.C. § 1367(b) in 1990.

10         i. Application of the Rule Regarding Non-Diverse Intervenors

11         To intervene as "of right," one must meet the requirements of Rule 24(a)(2),

12  which provides:

13    Intervention of Right.  Upon timely application anyone shall be
      permitted to intervene in an action: . . . (2) when the applicant claims
14    an interest relating to the property or transaction which is the subject
15    of the action and the applicant is so situated that the disposition of the
      action may as a practical matter impair or impede the applicant's
16    ability to protect that interest, unless the applicant's interest is
17    adequately represented by existing parties.
18

19  Fed. R. Civ. P. 24(a)(2).  The court applies a four-part test under Rule 24(a)(2):

20  (1) the application for intervention must be timely; (2) the applicant must have a

21  "significantly protectable" interest relating to the property or transaction that is the

22  subject of the action; (3) the applicant must be so situated that the disposition of

23  the action may, as a practical matter, impair or impede the applicant's ability to

24  protect that interest; and (4) the applicant's interest must not be adequately

25  represented by the existing parties in the lawsuit.  Northwest Forest Res. Council

26  v. Glickman, 82 F.3d 825, 836 (9th Cir. 1996).  "In general, [courts] construe Rule

27  24(a) liberally in favor of potential intervenors."  Southwest Ctr. for Biological

28

20

EXHIBIT  7

PAGE  82

1   Diversity v. Berg, 268 F.3d 810, 818 (9th Cir. 2001). "In addition to mandating
2   broad construction, [the court's] review is 'guided primarily by practical
3   considerations,' not technical distinctions." Id.

4        MGA's intervention met the requirements of Rule 24(a)(2). First, MGA's
5   intervention was indisputably timely as the parties stipulated to allow MGA to
6   intervene. See Southwest Ctr. for Biological Diversity, 268 F. 3d at 818 ("As the
7   parties agree that Applicants' motion to intervene was timely, we need not address
8   this factor."). Second, MGA has a "significantly protectable" interest in Bryant's
9   services relating to the Bratz and in the drawings of and rights to the Bratz. See
10  generally Moore et al., supra § 19.06[1] (assignees are usually "necessary parties"
11  under Rule 19(a), which employs same analysis as Rule 24(a)(2)). Third, MGA is
12  so situated that the disposition of the action may, as a practical matter, impair or
13  impede its ability to protect these interests. For example, MGA's interests could
14  be impacted by an injunction precluding Bryant from continuing to assist MGA in
15  developing the Bratz. Similarly, as MGA notes: "[I]f Bryant somehow were held
16  to have copied Mattel's 'Toon Teens' work, MGA's acquisition of Bryant's
17  original 'Bratz' drawings could be challenged." Bryant & MGA's Brief in
18  Response to Court's Questions at 5. Finally, because MGA has broader rights to
19  the Bratz than Bryant, Bryant may not adequately protect MGA's interests. See
20  generally Moore et al., supra § 24.03[4][a][i] ("the applicant's burden on this
21  matter should be viewed as minimal"). Thus, MGA intervened as "of right" under
22  Rule 24(a)(2).

23
24
25  / / /
26
27
28

21

EXHIBIT _____ I _____

PAGE _____ 83 _____

Consequently, unless it was "indispensable" under Rule 19(b) at the time

Mattel filed the Complaint, MGA did not destroy diversity by intervening.[13] In

---

[13] Rule 19 provides:

(a) Persons to be Joined if Feasible.  A person who is subject to service of
process and whose joinder will not deprive the court of jurisdiction over the
subject matter of the action shall be joined as a party in the action if . . .
(2) the person claims an interest relating to the subject of the action and is
so situated that the disposition of the action in the person's absence may
(i) as a practical matter impair or impede the person's ability to protect that
interest . . . .  If the person has not been so joined, the court shall order that
the person be made a party . . . .

(b) Determination by Court Whenever Joinder not Feasible.  If a [party
meeting the requirements of 19(a)] cannot be made a party, the court shall
determine whether in equity and good conscience the action should proceed
among the parties before it, or should be dismissed, the absent person being
thus regarded as indispensable.  The factors to be considered by the court
include: first, to what extent a judgment rendered in the person's absence
might be prejudicial to the person or those already parties; second, the
extent to which, by protective provisions in the judgment, by the shaping of
relief, or other measures, the prejudice can be lessened or avoided; third,
whether a judgment rendered in the person's absence will be adequate;
fourth, whether the plaintiff will have an adequate remedy if the action is
dismissed for nonjoinder.

Fed. R. Civ. P. 19.

An absent party is "necessary" if he meets the requirements of Rule 19(a).  He is
"indispensable" if he meets the requirements of Rule 19(b) and the court determines, in
equity and good conscience, that the case should be dismissed rather than proceed without
him.

Although the factors in Rule 19(b) "overlap" with those in Rule 19(a), "[o]verlap .
. . should not be equated with redundancy."  Moore et al., supra § 19.05[1][a].  "While the
necessary party analysis under Rule 19(a) and the indispensability analysis under Rule
19(b) look at similar issues, each has a different thrust which reflects its different
purpose."  Id.  "Under the former, the court is more or less concerned with whether

(continued . . .)

22

EXHIBIT _____ I

PAGE _____ 84

1   this context, the court examines whether the intervenor was "indispensable" at the

2   time the original action was filed. See Mut. Fire, Marine & Inland Ins. Co., 726 F.

3   Supp. at 481 (an intervenor has to show an independent basis for jurisdiction only

4   if it "was indispensable to the action at the time it was brought"). See also Am.

5   Nat'l Bank & Trust Co. of Chicago, 750 F.2d at 582 (Posner, J.) ("[I]f the

6   nondiverse party comes into the case by intervening in it, his presence will not

7   deprive the court of jurisdiction unless the intervenor was an indispensable party

8   when the complaint was filed. Federal jurisdiction is determined by the facts as

9   they exist when the case is filed, and not by what happens later . . . . So the fact

10   that a resident of the plaintiff's state intervenes will not require the plaintiff to

11   abandon his suit unless the resident was an indispensable party at the time the suit

12   was filed – in which event the plaintiff should have joined him at the outset, and if

13   he had done so the court would have known that complete diversity was

14   lacking."). Examining whether the intervenor was "indispensable" when the

15   action was filed "prevent[s] collusion between parties to avoid jurisdictional

16   requirements." Mut. Fire, Marine & Inland Ins. Co., 726 F. Supp. at 481. "If the

17   rule were otherwise, the requirement of complete diversity could be avoided by

18   having one party bring an action while the indispensable party waits and then

19   intervenes as of right under the court's ancillary jurisdiction." Id.

20        Here, MGA was not "indispensable" to the lawsuit as Mattel chose to

21   characterize it in its Complaint. Mattel elected to sue Bryant in state court on what

22   Mattel – as master of its Complaint – asserted were purely state law claims.

23   Conspicuously absent from the Complaint was any mention of MGA or the Bratz.

24   Indeed, as late as July 2004, months after filing its Complaint against Bryant,

25

26   nonjoinder *could* have one of the adverse effects addressed by that Rule." Id. (emphasis

27   in original). "Under the indispensability analysis, the court . . . must determine whether

28   nonjoinder *actually will* result in . . . prejudice . . . ." Id. (emphasis in original).

EXHIBIT    _I_

PAGE    _85_

1 │ Mattel claimed to be unable to determine "whether rights to Bratz are indeed at

2 │ stake here." See, e.g., July 12, 2004 Rep. at 4. Thus, it cannot be said that MGA

3 │ was "necessary," much less "indispensable" to the action at the time Mattel filed

4 │ its Complaint against Bryant.

5 │      Furthermore, there is no indication that the parties colluded to avoid the

6 │ requirement of complete diversity. First, the parties have submitted over 126

7 │ pages in briefing, 118 exhibits, and two *ex parte* applications in connection with

8 │ the instant motion to remand. Second, because this case was removed by Bryant

9 │ from state court, there is a "*prima facie* absence of effort by the plaintiff to

10 │ circumvent the complete diversity requirement." Joan Steinman, Supplemental

11 │ Jurisdiction in § 1441 Removed Cases: An Unsurveyed Frontier of Congress'

12 │ Handiwork, 35 Ariz. L. Rev. 305, 347 (1993).

13 │      Because MGA intervened as of right and was not "indispensable" at the

14 │ time Mattel filed its Complaint against Bryant, its intervention did not destroy

15 │ diversity jurisdiction under the rule as it existed prior to the enactment of

16 │ § 1447(e) and § 1367(b).

17 │                   ii. The Effect of § 1447(e) and § 1367(b)

18 │      Mattel argues that § 1447(e) and § 1367(b) modified the application of the

19 │ rule that the intervention of a non-diverse, non-indispensable party does not

20 │ destroy diversity jurisdiction.

21 │      Section 1447(e) provides:

22 │     If after removal the plaintiff seeks to join additional defendants

23 │     whose joinder would destroy subject matter jurisdiction, the court
   │     may deny joinder, or permit joinder and remand the action to the State

24 │     court.

25 │

26 │ 28 U.S.C. § 1447(e). This section does not apply to the present case. While

27 │ § 1447(e) discusses the court's options when a *plaintiff* attempts to *join* a non-

28 │

24

EXHIBIT   _I_

PAGE   _86_

1 diverse defendant, the present case involves the *intervention* of a non-diverse
2 *defendant*. Therefore, § 1447(e) did not change the above-mentioned rule as it
3 applies here.

4    Section 1367 provides in pertinent part:

5 (a) Except as provided in subsection[] (b) . . . , in any civil action of
6 which the district courts have original jurisdiction, the district courts
     shall have supplemental jurisdiction over all other claims that are so
7 related to claims in the action within such original jurisdiction that
8 they form part of the same case or controversy under Article III of the
     United States Constitution. Such supplemental jurisdiction shall
9 include claims that involve the joinder or intervention of additional
10 parties.

11

12 (b) In any civil action of which the district courts have original
     jurisdiction founded solely on section 1332 of this title, the district
13 courts shall not have supplemental jurisdiction under subsection (a)
14 over claims by plaintiffs against persons made parties under Rule 14,
     19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims
15 by persons proposed to be joined as plaintiffs under Rule 19 of such
16 rules, or seeking to intervene as plaintiffs under Rule 24 of such rules,
17 when exercising supplemental jurisdiction over such claims would be
18 inconsistent with the jurisdictional requirements of section 1332.

19 28 U.S.C. § 1367. Mattel argues that because the court's jurisdiction is premised
20 upon § 1332 and MGA and Mattel are not diverse, the court is prohibited by
21 § 1367(b) from exercising supplemental jurisdiction over MGA. This argument
22 fails to recognize the distinction between "parties" and "claims." Section 1367(b)
23 is concerned with the assertion of new "claims," not the intervention alone of new
24 "parties." As succinctly stated by one of the preeminent scholars in the field:

25 [W]hether the context is removal or not, there can be persons who
26 intervene on the side of the defendants . . . against whom the plaintiff
     has no claim to assert. Indeed, the intervention of persons under Rule
27 24 typically will be at the instigation of the intervenors, and not at the
28

25

EXHIBIT _____ *I*_____

PAGE _____ *87*_____

1

2

3

4

5

6

7

8

> urging of the plaintiff, and will be precipitated by the persons'
> concern that disposition of the action in their absence will as a
> practical matter impair or impede their ability to protect their interests
> .... In these situations where the plaintiff does not seek to assert a
> claim against the defendant intervenor, the plaintiff has not sought to
> circumvent the complete diversity requirement of § 1332, and
> § 1367(b) does not purport to limit the exercise of supplemental
> jurisdiction over the involvement or interests of such intervening
> parties. Its limitations apply only to the *claims*, if any, that the
> plaintiff would assert against such intervening defendants.

9    Joan Steinman, Supplemental Jurisdiction in § 1441 Removed Cases: An

10   Unsurveyed Frontier of Congress' Handiwork, 35 Ariz. L. Rev. 305, 344-45

11   (1993) (emphasis in original).[14]

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[14]   See also Wichita R.R. & Light Co., 260 U.S. 48 (1922) (allowing intervention of non-diverse defendant); Home Ins. Co. v. Hughes, CIV. A. No. 95-1833, 1996 WL 109292, *2 (E.D. La. Mar. 11, 1996) (intervention of non-diverse defendant does not destroy diversity); Maryland Cas. Co. v. W.R. Grace & Co., No. 88 Civ. 4337 (JSM), 1996 WL 34154 (S.D.N.Y. Jan. 30, 1996) (intervention of non-diverse "cross-claim defendant" does not destroy diversity); MCI Telecomms. Corp. v. Logan Group, Inc., 848 F. Supp. 86, 89 & n. 2 (N.D. Tex. 1994) (suggesting that intervening defendant does not trigger § 1367(b) concerns); Schwarzer et al., Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 7:179 (2004) ("An independent basis for subject matter jurisdiction may not be required where one intervenes as a defendant as a matter of right."); 36 Suzanne J. Bailey et al., Corpus Juris Secundum § 142 (2004) ("[J]urisdiction of an action between citizens of different states ordinarily is not lost by the intervention of new parties who are citizens of the same state as the original parties to whom their interests are opposed."); Marilyn J. Ireland, Supplemental Jurisdiction Over Claims in Intervention, 23 N.M. L. Rev. 57, 68-69 (1993) ("Jurisdiction once acquired on [the] ground [of diversity] is not . . . defeated by the intervention . . . of a party whose presence is not essential to a decision of the controversy between the original parties. Section 1367 does not change this conclusion . . . . [I]n the case of subject matter jurisdiction, it is jurisdiction over claims, not over parties, that is in issue . . . . [D]efensive intervenors have never been considered to violate the complete diversity rule in the past. It does not now necessarily follow that they will be held to be 'inconsistent with the requirements of section 1332.'") (quotation

(continued . . .)

26

EXHIBIT __*I*__

PAGE __88__

1    Here, MGA has intervened as a defendant and Mattel has not attempted to

2  amend its Complaint to assert any claims against MGA.[15]   Therefore, MGA's

3

4  marks and citations omitted); Abram Chayes, The Role of the Judge in Public Law

5  Litigation, 89 Harv. L. Rev. 1281, 1290 (1976) (the right to participate in a case has

   ceased to depend on having a right to relief or liability to satisfy a claim). Mattel cites

6  Lumber Ins. Cos., Inc. v. Allen, 892 F. Supp. 31 (D.N.H. 1993), for the proposition that

7  the mere intervention of a non-diverse defendant destroys diversity. Insofar as Lumber

   Ins. stands for this proposition, the court disagrees, as such a holding ignores the

8  distinction between claims and parties.

9     [15] Mattel cites Uni Storebrand Ins. Co., UK Ltd. v. Star Terminal Corp., No. 96

10  CIV. 9556 (DLC), 1997 WL 391125 (S.D.N.Y. July 11, 1997), for the proposition that an

    intervening defendant "steps into the shoes" of a full-party defendant and, therefore,

11  "takes on" the plaintiff's original "claims" as if they were asserted against the intervening

12  party. Uni Storebrand is distinguishable. There, the original defendant had completely

    failed to appear in the action and Societe Generale Energie Corp., S.A. ("SGE") sought to

13  intervene as a defendant to protect its interests that were otherwise subject to default. In

14  those specific circumstances, the court found that SGE, by intervening, "stepped into the

    shoes" of the original defendant and "took on" the claims asserted by the original

15  plaintiff. See id. at *4 ("As a practical matter, the only live claim in this action is a non-

16  diverse claim between [the plaintiff] and SGE."); id. at *6 ("The unique posture of this

17  case stems from the fact that . . . the nominal defendant[] is a dissolved corporation which

    does not intend to appear."). In contrast, Bryant, the original defendant, has appeared in

18  this action and has litigated his rights vigorously.

19     Furthermore, even if the court assumed that MGA "took on" Mattel's claims

20  against Bryant, the court would not be barred by § 1367(b) from retaining jurisdiction.

    After all, "[w]hen one turns to removed cases, . . . supplemental jurisdiction should be

21  liberally exercised – because of the prima facie absence of effort by the plaintiff to

22  circumvent the complete diversity requirement." Steinman, supra at 347 (emphasis

    added). Because this is a removed case, the court may liberally exercise supplemental

23  jurisdiction over the "claims" MGA might have "taken on" by intervening after removal.

24  This "[does] not expand federal jurisdiction beyond the bounds that the [Supreme] Court

    [has] recognized." Id. at 347-48; see Phelps v. Oaks, 117 U.S. 236 (1886). Additionally,

25  by exercising supplemental jurisdiction over these claims, the court can "simultaneously

26  adjudicate the original civil action, safeguard the defendant's removal, and allow all of

    plaintiff's related claims to be heard in one suit." Steinman, supra at 348. "All this serves

27  fairness and efficiency, without sacrificing enforcement of the jurisdictional requirements

28                                                                        (continued . . .)

EXHIBIT ___*I*___

PAGE ___*89*___

intervention did not implicate § 1367(b). In short, because neither § 1447(e) nor § 1367(b) precludes the court from exercising diversity jurisdiction over an action involving the post-removal intervention of a non-diverse, non-indispensable defendant, the court finds that MGA's intervention did not destroy diversity.[16]

## IV. CERTIFICATION UNDER 28 U.S.C. § 1292(b)

"In circumstances where a district judge upholds subject matter jurisdiction and denies a motion to remand, but has doubts about these rulings, the judge may sometimes secure interlocutory review by certifying the rulings under 28 U.S.C. § 1292(b)." Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 332 F.3d

---

of § 1332 . . . ." Id.
   Finally, to the extent Mattel argues its "claims" are asserted against MGA, it lends credence to the inference that its claims are actually related to the rights to the Bratz and are likely preempted by the Copyright Act, thereby raising a federal question.

   [16] The cases cited by Mattel fail to address the situation before the court. See Stevens v. Brink's Home Sec., Inc., 378 F.3d 944, 949 (9th Cir. 2004) (plaintiff's amending complaint to join non-diverse defendants); TIG Ins. Co. v. Reliable Research Co., 334 F.3d 630, 634 (7th Cir. 2003) (intervening plaintiff); Doleac v. Michalson, 264 F.3d 470, 473-77 (5th Cir. 2001) (plaintiff's amending complaint to add claims against non-diverse defendant); Cobb v. Delta Exports, Inc., 186 F.3d 675, 677 (5th Cir. 1999) (same); Casas Office Mach., Inc. v. Mita Copystar Am, Inc., 42 F.3d 668, 672-78 (1st Cir. 1995) (same); Yniques v. Cabral, 985 F.2d 1031 (9th Cir. 1993) (plaintiff's amending complaint to join non-diverse defendant; holding based on 1447(e), which applies only to efforts by plaintiffs to join non-diverse defendants); Miller v. Grgurich, 763 F.2d 372, 373 (9th Cir. 1985) (paraphrasing Desert Empire Bank v. Ins. Co. of N. Am., 623 F.2d 1371, 1374 (9th Cir. 1980), involving plaintiff's amending complaint to add claims against non-diverse defendant); Carolina Asphalt Paving, Inc. v. Balfour Beatty Constr., Inc., No. 9:04-1578-28, 2004 WL 3015177, at *3 (D.S.C. Nov. 19, 2004) (plaintiff's addition of claims against third-party defendant); Diaz v. Allstate Ins. Group, 185 F.R.D. 581, 595-96 (C.D. Cal. 1998) (plaintiff's joining non-diverse defendant); Farm Bureau Mut. Ins. Co., Inc. v. Eighmy, 849 F. Supp. 40 (D. Kan. 1994) (pre-removal intervention of non-diverse defendant).

28

EXHIBIT ___I___

PAGE ___90___

116, 132 (2d Cir. 2003) (Newman, J., concurring) (citing Breuer v. Jim's Concrete of Brevard, Inc., 538 U.S. 691 (2003)). 28 U.S.C. § 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b).

No court of appeals has addressed whether § 1447(e) or § 1367(b) causes the post-removal, Rule 24(a)(2) intervention of a non-diverse, non-indispensable defendant to destroy diversity jurisdiction. This court's finding that neither section does so is a controlling question of law critical to the court's exercise of jurisdiction and as to which there is no precedent. Resolution of the issue will both materially advance the litigation and avoid the needless expenditure of judicial resources if the Court of Appeals concludes this court lacks jurisdiction. See, e.g., Valdez v. Allstate Ins. Co., 372 F.3d 1115 (9th Cir. 2004) (raising issue of jurisdiction *sua sponte* after case had proceeded to summary judgment in district court). Accordingly, the court certifies the issue for interlocutory appeal under § 1292(b). No later than 10 days from the date of this order, Mattel shall file its application to appeal this court's order or notify this court, in writing, that no such application will be made.

29

EXHIBIT _____ I
PAGE _____ 91

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V. CONCLUSION

Finding the presence of diversity jurisdiction under § 1332, the court **DENIES** Mattel's Motion to Remand. [17]

IT IS SO ORDERED.

DATED: March 4, 2005

Nora M. Manella
United States District Judge

---

[17] Mattel's request for attorneys' fees is denied.

30

EXHIBIT _____ I

PAGE _____ 92

# EXHIBIT J

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                         EASTERN DIVISION

12 | CARTER BRYANT, an individual,        | CASE NO. CV 04-9049 SGL (RNBx)

13 |              Plaintiff,               | Consolidated with
                                            Case No. CV 04-09059
14 |         vs.                           | Case No. CV 05-02727

15 | MATTEL, INC., a Delaware              | Honorable Stephen G. Larson
   | corporation,
16 |                                       | **MATTEL, INC.'S OPPOSITION TO**
   |              Defendant.               | **THE MGA PARTIES' MOTION**
17 |                                       | **FOR JUDGMENT AS A MATTER**
                                            **OF LAW**
18 | AND CONSOLIDATED ACTIONS

19 |                                       | Hearing Date: August 21, 2008
                                            Place:       Courtroom 1
20 |                                       | Time:        10:00 a.m.

21 |                                       | **Phase 1B:**

22 |                                       | Trial Date:      July 23, 2008

23

24

25

26

27         EXHIBIT ___J___

28         PAGE ___93___

1

## TABLE OF CONTENTS

2                                                                                                    **Page**

3

4  INTRODUCTION ................................................................................................. 1

5  I.  MATTEL HAS PROVED DAMAGES FOR ITS STATE LAW
    CLAIMS ........................................................................................................ 1

6
    A.  The Jury and the Court Have Already Found Harm or Damage. ........... 1
7
    B.  Mattel's State Law Claims Are Not Preempted. ..................................... 2
8
    C.  Damages Are Not Limited to Bryant's Profits. ....................................... 5
9
    D.  MGA Is Not Entitled to JMOL on Conversion. ..................................... 6
10
11  II.  MATTEL PRESENTED EVIDENCE OF DAMAGES AS TO MGA
    HK ................................................................................................................. 7

12  III.  DEFENDANT'S PUNITIVE DAMAGES ARGUMENT IS
    MERITLESS .................................................................................................. 8
13
14  IV.  MATTEL HAS VIABLE CLAIMS BASED ON THE "BRATZ"
    NAME ............................................................................................................ 9

15  V.  LATER GENERATION BRATZ DOLLS, OTHER BRATZ
    PRODUCT LINES, AND BRATZ-BRANDED MERCHANDISE
16    INFRINGE MATTEL'S COPYRIGHTS ..................................................... 10

17

18

19

20

21

22

23

24

25

26

27          EXHIBIT ____J____

28          PAGE ____94____

1   copyright remedies, even if the claims satisfy the "extra element" test.  Bucklew, on

2   which defendants rely, found the state law claims preempted -- it does not support

3   the proposition that punitive damages cannot be awarded on state claims which

4   *survive* preemption, as Mattel's claims here have.   Neither does Troensegaard v.

5   Silvercrest Indus. Inc., 175 Cal. App. 3d 218, 226-28 (1985), which does not even

6   address Copyright Act preemption.[22]  Where a state law claim is not preempted and

7   permits punitive damages, the fact that copyright law permits no such damages is

8   irrelevant.  See, e.g., Shuptrine, 535 F. Supp. 2d at 897 (rejecting attack on punitive

9   damages claim because underlying state-law claim not preempted).

10   **IV.    MATTEL HAS VIABLE CLAIMS BASED ON THE "BRATZ" NAME**

11          MGA's arguments regarding the Bratz name are specious.  The "Bratz" name

12   is an invention assigned to Mattel and is part of the proprietary information Bryant

13   wrongfully disclosed to MGA, which MGA wrongfully obtained and used.  Under

14   Mattel's state law claims, MGA's continuing wrongful use of property stolen from

15   Mattel, under a name that belongs to Mattel, is actionable.  Mattel is entitled to

16   recover MGA's benefits from the use of the name under a disgorgement of benefits

17   theory and through a constructive trust.[23]  Indeed, the Court has already found that

18   "the Bratz name is part of what was claimed or was awarded by the jury to Mattel in

19

20

21

22   [22]   Instead, that case denied punitive damages because the state legislature did
     not intend such recovery under the general civil remedy, Cal. Civ. Code § 1794, for
23   the same "willful, oppressive, malicious and oppressive acts" encompassed by the
     punitive damages provisions of a separate section of the code.  Cal. Civ. Code §
24   3294.
     [23]   See, e.g., Weiss v. Marcus, 51 Cal. App. 3d 590, 600 (1975) ("[A]
25   constructive trust may be imposed in practically any case where there is a wrongful
     acquisition or detention of property to which another is entitled."); Restatement of
26   Restitution, § 201 (2008) ("Where a fiduciary in violation of his duty to the
     beneficiary communicates confidential information to a third person, the third
27   person, if he had notice of the violation of duty, holds upon a constructive trust for
     the beneficiary any profit which he makes through the use of such information.").

28   EXHIBIT _____J_____

07209/2609633                PAGE ____95____        -9-              Case No. CV 04-9049 SGL (RNBx)
                      MATTEL'S OPPOSITION TO MGA PARTIES' MOTION FOR JUDGMENT AS A MATTER OF LAW

1 │ the first phase. . . . The name and the conception both went to Mattel."[24]  MGA fails

2 │ to even address this finding, let alone present grounds to disturb it.[25]

3 │ **V.    LATER BRATZ DOLLS, OTHER BRATZ PRODUCT LINES, AND**

4 │ **BRATZ-BRANDED   MERCHANDISE   INFRINGE   MATTEL'S**

5 │ **COPYRIGHTS**

6 │ MGA's motion as to Mattel's copyright claim fails. If Mattel is not entitled to

7 │ JMOL on its claim of infringement, which it is, at most this is a jury issue.

8 │ Hundreds of Bratz products -- including later Bratz dolls, other Bratz product lines,

9 │ and Bratz branded merchandise -- were admitted into evidence.[26]   The parties

10 │ stipulated that these items were a representative sample of all Bratz products.[27]  The

11 │ jury can compare this evidence to Mattel's copyrighted works to determine whether

12 │ they are substantially similar. See, e.g., Stromback v. New Line Cinema, 384 F.3d

13 │ 283, 295 (6th Cir. 2004) (expert testimony was not necessary in a copyright

14 │ infringement case because jury could compare two works to determine if they were

15 │ substantially similar).[28]

16 │ Moreover, several MGA witnesses acknowledged the similarity between

17 │ Bryant's drawings and later generation Bratz dolls, other Bratz product lines and

18 │ Bratz-branded merchandise.   Isaac Larian himself testified that a later Bratz

19 │ character had "more similarity to the first four Bratz dolls than [to Mini Trendy

---

[24] Cole Dec. Ex. B (July 23, 2008 Tr.), at 5526:8-14.
[25] MGA contends that it purchased the right to use the Bratz name from a third party. What is at issue here are MGA's rights to the Bratz name vis-a-vis *Mattel*, not with respect to some third party.
[26] Cole Dec. Ex. P (Stipulation Regarding Admission of Tangible Items, dated August 5, 2008) (listing more than 600 Bratz products admitted into evidence).
[27] Cole Dec. Ex. P; id. at Ex. B (August 5, 2008 Tr.), at 5748:8-5749:12.
[28] MGA claims Mattel must prove both that MGA copied original elements from Mattel's copyrighted works and that there is a substantial similarity between the allegedly infringing works and the copyrighted works. Not so. As the Court's jury instructions make clear, Mattel need only show that MGA copied original elements from Mattel's copyrighted works. Mattel can prove that by *either* (1) showing that MGA actually copied a significant amount of protectable expression from the works, *or* (2) showing that there are substantial similarities between the (footnote continued)

EXHIBIT ____J____

1  Teenz]," a doll that MGA claimed infringed its purported copyright in Bratz.[29]

2  Carter Bryant testified that "all the Bratz dolls have an overall similar appearance."[30]

3  And Debora Middleton, MGA's character art director, testified that the character art

4  MGA created for its Bratz branded merchandise is similar to the Bratz dolls.[31]

5  MGA's style guides -- the registrations for which list the Bratz designs created by

6  Bryant as the works on which they were based -- mandated that licensed products

7  look like their designs.[32]   In short, not only is the jury capable of determining

8  substantial similarity through its own examination, but defendants' own admissions

9  support such a finding with respect to every Bratz product that bears an image of the

10  Bratz characters.  MGA's motion should be denied.

11

12  DATED:  August 20, 2008            QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
13

14                                    By /s/ John B. Quinn
                                          John B. Quinn
15                                        Attorneys for Mattel, Inc.

16

17

18

19

20

21

22

23

24

25  allegedly infringing works and original elements of Mattel's works.  Cole Dec. Ex.
    D (Court's Phase B Jury Instructions as Given), at 27 (Jury Instruction No. 25).
26    [29]  Cole Dec. Ex. B (August 6, 2008 Tr.), at 6159:13-18.
      [30]  Cole Dec. Ex. B (August 8, 2008 Tr.), at 6669:19-23.
27    [31]  Cole Dec. Ex. B (August 13, 2008 Tr.), at 7200:3-6.
      [32]  Cole Dec. Ex. B (August 8, 2008 Tr.), at 6653:21-6658:22; id. at Exs. Q-Y
28  (Trial Exs. 513, 567-574).

EXHIBIT ____J____

# EXHIBIT K

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES – GENERAL

Case No.    CV 04-09049 SGL(RNBx)                        Date:  May 27, 2008
Title:       CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.,  v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
================================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Gina Guzman
            Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:        ATTORNEYS PRESENT FOR MATTEL:

None Present                                None Present

ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

PROCEEDINGS:    **ORDER RE STATUTE OF LIMITATIONS DEFENSE**

        Each of the remaining parties to this action, Mattel and MGA, seek summary judgment on
the issue of statute of limitations.  Crucial to resolution of this issue, is application of California's
"discovery rule," which can delay the accrual of a claim.  Both parties have offered evidence in
support of their positions.[1]  For its part, Mattel contends that its claims against Carter Bryant arose
on November 24, 2003, and that its claims against the MGA entities, including MGA CEO Isaac
Larian, arose on November 4, 2004, the date of Carter Bryant's deposition, at which he testified
regarding MGA and Larian's involvement in his actions.

──────────────────────────

    [1]  Although he is no longer a party, the Court discusses at length the timeliness of the
claims asserted against Carter Bryant because it is relevant to the Court's relation-back analysis of
the claims asserted against MGA.

EXHIBIT ___K___

PAGE ___98___

At oral argument and in its briefs, MGA argues at length that Mattel's claims against Bryant accrued some time shortly after Bryant left Mattel's employ in October, 2000. In support of this argument, MGA offered evidence that Mattel has always believed that it took nine months to bring a doll through the stages of development and to market. From that knowledge, in MGA's view, the sudden appearance of the Bratz dolls at a toy fair in Tokyo in January, 2001, should have aroused their suspicions.

MGA cites to the deposition of Bryant's co-worker, who had suspicions at the time Bryant resigned that Bryant was going to work for a competitor based on her subjective belief that Bryant would not pursue any other vocation other than doll designer.

MGA contends that Mattel could have looked at Bryant's phone records and determined that he had called MGA a number of times during the month pre-dating his resignation.

There is evidence that one of Bryant's co-workers believed it was "common knowledge," sometime in 2001, that Bryant probably designed Bratz.

The undisputed facts establish that in August, 2002, an anonymous letter was sent to Mattel's CEO stating that Bryant had designed Bratz. This letter is the first indication that Bryant may have worked on Bratz during the period of his employment with Mattel. See Zeller Decl. Ex. 63 ("While he was working with Mattel and working to create these dolls he worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls and the fact that they are rightly Mattel dolls.").

The undisputed facts also establish that on July 18, 2003, the Wall Street Journal published an article entitled "Dolled Up: To Lure Older Girls, Mattel Brings In Hip-Hop Crowd." In that article, MGA's CEO Isaac Larian is attributed with a statement that Carter Bryant was the creator of Bratz. The article states:

> Isaac Larian, chief executive of MGA, says he had never heard of a project similar to the Bratz at Mattel. He says he chose Mr. Bryant's idea for Bryant over several others after holding a sort of fashion-doll design contest in late 1999.

Zeller Decl. Ex. 118.

At the close of the second hearing, held on May 19, 2008, MGA offered, for the first time, evidence in the form of a time line that showed that a "claim" from a lawsuit filed in Hong Kong by MGA was received by Mattel on September 23, 2003. See Bogorad Supp. Decl. Ex. 145. A copy of court documents from that litigation shows that MGA claimed ownership of Bratz fashion dolls and that, more specifically, at issue were "17 design drawings of various fashion dolls between the years 1998 and 2000." Id. at Ex. 143. Exhibit 143 is a ten-page document captioned as "STATEMENT OF CLAIM" and appears to the Court to be, under Hong Kong law, the equivalent of a complaint. MGA's ownership to the 17 drawings referenced in the "STATEMENT OF CLAIM"



EXHIBIT __K__

PAGE __99__

was based on Bryant's creation of the design drawings during a time period that includes his employment at Mattel. Id.

Also at this time, MGA offered a letter, dated October 17, 2003, from Mattel's Hong Kong counsel to Mattel, that discusses the propriety of providing to Mattel certain documents relating to the City World litigation. Within this letter, certain key details of the "STATEMENT OF CLAIM" were referenced. See Supp. Bogorad Ex. 146 ("One of the exhibits referred to in such Affirmation was a set of coloured drawings described as '17 initial concept and design drawings of the Bratz dolls made by Mr. Carter Bryant in the year 2000.'").

After being given an opportunity to respond to this last-minute evidence, Mattel offered as evidence the documents it received on September 23, 2003, and that evidence did not include the document marked as Ex. 143. See Supp. Moore Decl. Ex. A. The documents Mattel received do not include any reference to Carter Bryant or the dates of creation of the 17 drawings. See id. Instead, it consists of a copy of a "writ of summons" in that same litigation.

In responding to this evidence, counsel for MGA first incorrectly contended that the declaration of in-house counsel, Michael Moore, did not deny receiving a copy of the City World claim setting forth this key language. Compare Reply at 1 ("**Mr. Moore, the only witness offered by Mattel, does *not* deny that Mattel took possession of a copy of the City World claim on or about September 23, 2003.**") (emphasis in the original) with Supp. Moore Decl. ¶ 3 (attaching as Exhibit A all documents received from Mattel's Hong Kong counsel on September 23, 2003; noting that public access to court files in Hong Kong is limited; and verifying that the materials attached as Exhibit A (which does not include the key language regarding Carter Bryant's creation of Bratz drawings) "were the only ones relating to MGA's litigation that Mattel's Hong Kong counsel were allowed to obtain from the Hong Kong court files").

More disturbingly, however, counsel for MGA next lobbed unsubstantiated assaults on Mr. Moore's truthfulness. Counsel states that the documents "appear to have been doctored or manipulated in some fashion." Reply at 2. Counsel does so because the fax itself has an anomalous pagination in the fax header line wherein the first ten pages are numbered "01, 02 . . . 10," and the numbers thereafter are numbered "11/46, 12/46 . . . 46/46." Supp. Moore Ex. A.

This Court has indicated on a number of occasions, most strikingly in connection with its consideration of Mattel's motion to disqualify counsel for MGA, that it will not countenance unsubstantiated dispersions cast upon opposing counsel. Where there is *evidence* of unethical behavior, the Court expects to be made aware of that evidence; where, however, there is mere *speculation* of such behavior, no legitimate purpose is served by its airing.

Nevertheless, focusing on the additional evidence offered by MGA on May 19, 2008, the time line produced in connection with the Simpson-Taylor deposition makes reference to a City World "claim" that was received by Mattel on September 23, 2003. Although this time line stops short of acknowledging that the document entitled "STATEMENT OF CLAIM" was received in

EXHIBIT K
PAGE 100

September, it is nevertheless sufficient to controvert Moore's declaration regarding whether the "STATEMENT OF CLAIM" was in fact received on this date. Moreover, the October 17, 2003, letter raises an inference regarding the full scope of Mattel's pre-November 23, 2003, knowledge of the contents of the "STATEMENT OF CLAIM."

It is uncontroverted that Mattel first received a copy of the Bryant-MGA contract, the effective date of which pre-dated the effective date of Bryant's resignation from Mattel, on November 24, 2003.

Where a plaintiff advances a state-law claim under California law, federal courts apply the California "discovery rule" to determine whether the state-law claim is time-barred. See, e.g., Orkin v. Taylor, 487 F.3d 734, 741 (9th Cir. 2007).

The Court's analysis begins with the unremarkable proposition that "[a] plaintiff must bring a claim within the limitations period after accrual of the cause of action." Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 806 (Cal. 2005) (citation omitted). To apply this unremarkable proposition, however, the Court must determine what the California Supreme Court means by "accrual of the cause of action."

In that regard, the California Supreme Court has stated that, "[g]enerally speaking, a cause of action accrues at the time when the cause of action *is complete with all of its elements*," id. at 807 (emphasis added) (citation omitted), a phrase which itself must be expounded upon further to ascertain its meaning. When applying the discovery rule, those "elements" are not "specific legal element[s] of a particular cause of action"; rather, they are the "'generic' elements of wrongdoing, causation, and harm." Id. (citation omitted).

The definition of those terms gives a more comprehensive understanding to the California Supreme Court's statement that "the 'discovery rule' . . . postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." Id. (citation omitted). In turn, "[a] plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements." Id. (internal quotation marks and citation omitted). Further refined, where a plaintiff has *knowledge* of at least one of the three generic elements, and *suspicion* of the remaining generic elements, the claim has accrued and the limitations period has begun to run. Id. (citation omitted).

This rule is designed to require plaintiffs to diligently investigate their potential claims. See id. at 808. To that end, in the context of a personal injury action, the California Supreme Court has stated that "plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." Id. Of course, this statement must itself be viewed with the definition of "injury" the California Supreme Court considered: "At common law, the term 'injury,' as used in determining the date of accrual of a cause of action, means both a person's physical condition and its negligent cause. . . . Thus, physical injury alone is often insufficient to trigger the statute of limitations." Id. at 808 n.2 (internal quotation marks and citation omitted).

EXHIBIT _____K_____

PAGE _____107_____

This requirement of diligence, stated otherwise, prohibits California plaintiffs from passively waiting for the facts supporting their claim to find them and places on them an affirmative requirement to investigate:

> Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.

Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1111 (Cal.1988).

The Jolly court discussed two examples in explaining this standard.  First, it cited to Miller v. Bechtel Corp., 33 Cal.3d 868, 874 (Cal.1983), which held time barred the fraud claim of a plaintiff who had suspicions that the value of her husband's stock was understated at the time of their dissolution agreement, but who failed to assert her claim until years later when the stock was sold. Id.  In that case, the plaintiff's lawyer sought information, both before the dissolution and within a few months thereafter, regarding the method by which the stock was valued. Id. at 875.  When the response was not forthcoming, the lawyer chose not to pursue this inquiry further, and thus plaintiff was charged with knowledge of the facts the investigation would have uncovered – that the stock was valued by the price attributed to it in the shareholders' agreement rather than by any objective valuation.  Id.

Second, the Jolly court cited to Gray v. Reeves, 76 Cal.App.3d 567 (Cal. App.1977), which held that a plaintiff's claim based on his use of a prescription drug arose when the plaintiff understood the nature of his injury (deterioration of the hip socket) and the probable cause thereof (the use of the prescription drug prednisone) as well as the identity of the prescribing doctor and the drug's manufacturer.

Although the discovery rule has been largely developed in tort cases, the rule has also been applied in cases involving contract claims.  See e.g., April Enterprises, Inc. v. KTTV, 147 Cal.App.3d 805, 832 (1983) ("Specifically, we hold the discovery rule may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time."); Intermedics, Inc. v. Ventritex, Inc., 775 F.Supp. 1258, 1266-67 (N.D. Cal. 1991).

Thus, California's discovery rule is easily understood in the abstract; moreover, it is often easily applied in particular factual situations.  Here, however, this Court's application of the rule in this case is not so clear cut, and the Court must consider the premises underlying the parties' respective analysis of this issue.

In substance, MGA contends that Mattel was on notice as early as February, 2001, of a potential claim that Carter Bryant breached the confidentiality provision of his contract by borrowing from or plagiarizing certain non-public Mattel projects.  This date coincides with the display of the Bratz dolls at a New York Toy Fair and "speculation in the media started about

MINUTES FORM 90
CIVIL -- GEN

Page 5

Initials of Deputy Clerk: gg
Time:  0/00

EXHIBIT ___K___
PAGE ___/02___

Case 2:04-cv-09049-DOC-RNB  Document 4378-3  Filed 10/20/08  Page 51 of 78  Page ID
#:121745
Case 2:04-cv-09049-SGL-RNB    Document 3826    Filed 05/27/2008    Page 6 of 9

alleged similarities between the BRATZ and Mattel's internal projects."  MGA Motion at 18.
Alternatively, MGA posits March 15, 2002, the beginning date of an internal Mattel investigation
into MGA and Larian's involvement in Bryant's creation and development of Bratz, as the date
Mattel's current claims accrued.

Mattel, on the other hand, contends that MGA is essentially arguing that a claim Mattel
chose not to bring – that Bratz infringed on the Mattel projects of Toon Teens and Diva Starz – is
time barred. Mattel points out that it has previously disavowed, and that it continues to disavow,
any intent to assert such a claim. Rather, Mattel contends that it is bringing a different claim, a
claim that Mattel has rights to Bratz pursuant to the Inventions Agreement based on Bryant's
actions during the period of his employment with Mattel.

In determining, under California law, which of the parties' diametrically opposed positions
represent the better approach, the Court is guided by the California Supreme Court case cited
above, Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 806 (Cal. 2005).  In that case, a plaintiff,
suffering from complications following gastric bypass surgery, sued for medical malpractice. Id. at
802. During the course of discovery, she learned, through the testimony provided at the
deposition of her surgeon, that she had a potential claim against the manufacturer of a surgical
stapler. Id. at 804. Specifically, the plaintiff's surgeon testified that he had found on previous
occasions that the particular stapler had caused post-surgery leaks. Id. When the plaintiff
amended the complaint to assert a products liability claim, the trial court, on statute of limitations
grounds, sustained a demmurrer without leave to amend, reasoning that "when a plaintiff sues
based on knowledge or suspicion of negligence, . . . the statute of limitations begins to run as to all
defendants, including manufacturers possibly liable under products liability theories."  Id.

The Court of Appeal reversed, and the California Supreme Court affirmed the reversal. Id.
at 812, 816. In doing so, the California Supreme Court rejected, as inconsistent with its precedent,
the so-called "the Bristol-Myers Squibb rule that all claims arising from an injury accrue
simultaneously, even if based upon distinct types of wrongdoing, is inconsistent with the generic
elements approach . . . . " Id. at 815.

From this discussion, a parallel begins to emerge that MGA's position is like that of the
demurring defendant who seeks to dismiss a products liability claim on the basis of plaintiff's
discovery of a different claim of medical malpractice, and Mattel's position is like that of the plaintiff
who seeks to assert the that products liability claim. In a sense, however, this analogy goes
nowhere, as MGA's position is that the claim Mattel asserts in the current action is not different
from the potential claim for which it was on notice of in 2001. After all, both would be based on
breach of contract and/or copyright claims, both would involve the same defendants, and both
would result in the same type of injury.

However, the Fox Court's elaboration on the rule it enunciates convinces the Court that
Mattel's position is the stronger one. After discussing the application of its rule in the more narrow
situation presented by the overlap of medical malpractice and products liability claims at issue in
the case before it, the Fox Court explained:

Initials of Deputy Clerk: gg
Time:  0/00

EXHIBIT _____ K

PAGE _____ 103

> More broadly stated, if a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim.

Id. at 813. In analyzing the discovery rule, the term "wrongdoing" is used not in a technical or legal sense, but in its everyday meaning. Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1111 (1988) ("In this context, 'wrong,' 'wrongdoing,' and 'wrongful' are used in their lay understanding.").

Here, on one hand, we have a breach of contract claim or copyright infringement claim based on alleged copying or "borrowing" of Mattel's undisputed rights in Toon Teens and/or Diva Starz to create Bratz that perhaps Mattel was on notice of as early as 2001, and which Mattel admittedly investigated as early as 2002, but upon which Mattel ultimately chose not to file suit. On the other hand, we have the claims asserted here, for breach of contract and copyright infringement, based on Mattel's (disputed) ownership rights to the Bratz drawings pursuant to Bryant's employment agreement with Mattel and in light of the (disputed) fact that Carter Bryant created these works during the period of his employment with Mattel. Applied to the present case, in the Court's view, the question the Court must ask is whether the first type of claim is based on qualitatively different type of "wrongdoing" – as that term might be understood by lay persons – than that which gives rise to the present claims.

Thus framed, the Court considers the two claims: Although they are similar in that they both include the wrongdoing of the failure to keep one's promise to maintain confidentiality, they are qualitatively different, however, in that the former situation involves the alleged taking of rights known to Mattel while the latter involves the alleged concealment of certain creations that belong to Mattel in the first instance in order to facilitate the taking of rights unknown to Mattel. This fundamental difference leads the Court to the conclusion that the latter claims, those asserted here, involve a different element of "wrongdoing" than do the unasserted claims based on Toon Teens and/or Diva Starz.

The burden of proof on the discovery rule issue is on Mattel.[2] Examining the claim Mattel asserts, rather than the claim Mattel chose not to assert, the Court must determine whether Mattel had knowledge of any one of the three generic elements of wrongdoing, causation, or damages, coupled with suspicion of the remaining generic elements. This determination cannot be made on the undisputed record before the Court.

Rather, MGA has raised triable issues of fact precluding summary judgment on the statute of limitations issue. Any of the following could be the date upon which MGA claims against Carter

---

[2] See Fox, 35 Cal.4th at 803 (imposing upon a plaintiff that seeks to take advantage of the discovery rule a requirement that it "plead[] and prove[] that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action).

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: gg
Time: 0/00

EXHIBIT _____ K _____

PAGE _____ 104 _____

Bryant accrued: The July 18, 2003, Wall Street Journal article; the September 23, 2003, date of receipt of the City World "claim"; the October 17, 2003, date of counsel's letter to Mattel regarding the City World litigation; or the November 24, 2003, date of receipt of the MGA-Bryant agreement that pre-dated Bryant's resignation of his employment.[3]

The accrual of a copyright claim, as the parties recognize, approximates the state-law standard discussed herein. See Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004) ("Thus, . . . the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances."). Accordingly, the Court makes the same conclusion regarding the accrual date of Mattel's copyright claim against Carter Bryant as it does regarding the accrual date of Bryant's state-law claims.

As stated earlier, although Bryant is no longer a party to this action, the parties recognize, as does the Court, that the timeliness of the claims asserted against Carter Bryant is relevant because of the potential that Mattel's claims against the MGA entities and Isaac Larian may, pursuant to Fed. R. Civ. P. 15(c), relate back to those claims. Mattel embraces the concept of relation back; MGA rejects it.

Although such distinction has not been particularly important at other points in this litigation, the Court has referred to the MGA entities and Isaac Larian collectively as MGA. More specifically, as to Phase 1, there are two separate MGA entities: MGA Entertainment, Inc. and MGA Entertainment HK Limited. There is also MGA's CEO, Isaac Larian. This distinction is important to the Court's analysis of relation back.

MGA Entertainment, Inc., but not Isaac Larian or the other MGA entity, intervened in this action on December 7, 2004. Therefore, based on the status of MGA Entertainment, Inc., as a party, the standard for whether the claims relate back differs from that governing the relation back of claims against MGA Entertainment HK Limited. See infra. As this Court has noted before, the Phase 1 claims against MGA sought to be asserted by Mattel on November 20, 2006, which arise out of the same factual allegations as do the claims asserted by Mattel against Carter Bryant on April 27, 2004, relate back to the date that complaint was filed. See Court's Jan. 12, 2007, Order at 13-15. The Court does not revisit that issue now.

MGA argues that "some courts have dis-allowed 'relation back' of claims against intervening defendants." MGA Opp. at 25 n.21 (emphasis in the original). However, in support of this argument, MGA cites a two-page Texas appellate court decision which does not cite to or interpret Fed. R. Civ. P. 15(c), Davis v. Outdoor Equip. Co., 551 S.W.3d 72, 73 (Tex. Ct. App. 1977), which the Court finds unpersuasive.

As to the new parties sought to be added on November 20, 2006 (MGA Entertainment HK

---

[3] The analysis is slightly different for the conversion claim. See infra at 9-10.

EXHIBIT ____K____

PAGE ____105____

Limited and Isaac Larian), MGA challenges the timeliness of the amendment to add these parties based on whether their identities were known to Mattel at an earlier date. The Court has already held that the claims against them relate back to the April, 2004, complaint. See Court's Jan. 12, 2007, Order at 15-16 n.5. The Court will not revisit that issue either.

The Court rejects the proposition, however, that the claims against both MGA entities did not arise until the date of Carter Bryant's deposition. Whatever the date on which the claims against Carter Bryant arose is ultimately found to be, the August 2002 anonymous letter should have given Mattel a suspicion of that MGA Entertainment, Inc., participated in any wrongdoing by Carter Bryant. See Zeller Decl. Ex. 63 (alleging that Carter Bryant "worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls").

The same is not true as to MGA Entertainment HK Limited and as to Isaac Larian, whom the anonymous letter did not implicate. Therefore, the claims against these defendants arose no earlier than November 4, 2004.

Intentional interference with contractual relations is subject to a two-year statute of limitations. MGA contends that the claim accrues upon the breach of contract, and therefore argues that the claim was untimely before it was asserted against Carter Bryant. They make a similar argument regarding Mattel's conversion claim, which carries with it a three-year statute of limitations.

However, the statute of limitations for breach of contract is tolled during a period of fraudulent concealment. Gryczman v. 4550 Pico Partners, Ltd., 107 Cal.App.4th 1, 5 (2003). The rationale for such tolling easily extends to intentional interference with contractual relations claim, which includes the element of a breach of a contract. The limitations period is likewise tolled during a period of fraudulent concealment as to a conversion claim. AmerUS Life Ins. Co. v. Bank of America, 143 Cal.App.4th 631, 639 (2006) ("To the extent our courts have recognized a 'discovery rule' exception to toll the statute, it has only been when the defendant in a conversion action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in violation of his or her fiduciary duty to the plaintiff.") Mattel has raised a triable issue of fact as to whether the evidence of the breach and the tortious interference thereof was fraudulently concealed from them before the July 18, 2003, Wall Street Journal article.

The Court will permit further briefing from the parties on the limited issue of what further conclusions regarding the timeliness of each claim should be drawn as a result of this Order. The parties' simultaneous briefs shall be limited to seven pages in length, and shall not re-argue any point upon which the Court has ruled in this Order or its previous two summary judgment Orders. The briefs shall be e-filed no later than 8:30 a.m., Thursday, May 29, 2008, and a courtesy copy must be provided to chambers at the same time. The parties shall also file, as exhibits thereto, their revised proposed special interrogatories on the issue of statute of limitations.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN

Page 9

Initials of Deputy Clerk: gg
Time:  0/00

EXHIBIT ___K___

PAGE ___106___

# EXHIBIT L

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT M



香港特別行政區政府知識產權署商標註冊處
Trade Marks Registry, Intellectual Property Department
The Government of the Hong Kong Special Administrative Region

商標記錄
Trade Mark Records

[210 申請編號:             300846612AA
] Application No.:

狀況:                     Published
Status:

[540] 商標:                JADE
Mark:

# JADE

[550] 商標種類:             Ordinary
Mark Type:

[730] 申請人                MGA Entertainment Inc.
姓名／名稱、地址:          16380 Roscoe Boulevard,
Applicant's Name,         Van Nuys, California 91406,
Address:                  United States of America

[740/ 申請人的送達地址:     William W.L. Fan & Co.
750] Applicant's Address  Room 1005, 10th Floor, Far East
for Service:              Finance Centre,
                          16 Harcourt Road,
                          Hong Kong.

代理人地址:                Room 1005, 10th Floor, Far East
Agent's Address:          Finance Centre,
                          16 Harcourt Road,
                          Hong Kong.

[511] 類別編號:             16
Class No.:

[511] 貨品／服務說明:        Class 16
Specification:            children's books; crayons; felt-tip
                          markers; highlighting pens and
                          markers; holiday cards; ink pens;
                          magazines but not relating to the
                          mineral jade, autograph books, baking
                          books, blank journals, comic books,

EXHIBIT _____*M*_____

PAGE _____*123*_____

calendars, children's activity books,
graphic novels, napkins, novels,
posters but not relating to the
mineral jade, stationery; sticker
books and trading cards; patterns for
making clothes; pencils; and stickers.

[220] 提交日期：                04-04-2007
      (日-月-年)
      Date of Filing:
      (D-M-Y)

[442] 公布獲接納註冊申請日期： 18-07-2008
      (日-月-年)
      Date of Publication
      of
      Application of
      Acceptance
      for Registration:
      (D-M-Y)

      詳細背景資料：
      Historical Details:

      作出記項日期      事項
      Date of entry Matters
      29-06-2007    DIVISION

              Application No.        300846612
              before division:

              Application Nos.       300846612AA , 300846612AB
              after division:

EXHIBIT __M__

PAGE __124__

# EXHIBIT N

 香港特別行政區政府知識產權署商標註冊處
Trade Marks Registry, Intellectual Property Department
The Government of the Hong Kong Special Administrative Region

商標記錄
Trade Mark Records

[111 商標編號：                   300846612AB
]   Trade Mark No.:

     狀況：                       Registered
     Status:

[540]商標：                      JADE
     Mark:

# JADE

[550]商標種類：                   Ordinary
     Mark Type:

[730]擁有人                      MGA Entertainment Inc.
     姓名／名稱、地址：           16380 Roscoe Boulevard,
     Owner's Name,               Van Nuys, California 91406,
     Address:                    United States of America

[740/擁有人的送達地址：          William W.L. Fan & Co.
750] Owner's Address            Room 1005, 10th Floor, Far East
     for Service:               Finance Centre,
                                16 Harcourt Road,
                                Hong Kong.

     代理人地址：                 Room 1005, 10th Floor, Far East
     Agent's Address:           Finance Centre,
                                16 Harcourt Road,
                                Hong Kong.

[511]類別編號：                   28
     Class No.:

[511]貨品／服務說明：             Class 28
     Specification:             action figures and playsets therefor;
                                action skill games; arcade games;
                                athletic protective pads, arm pads,
                                knee pads, elbow pads and wrist pads
                                for cycling, skating and
                                skateboarding; balloons; baseballs;

EXHIBIT ___N___

PAGE ___125___

baseball gloves; basketballs; beach balls; bean bag dolls; board games; body boards; card games; children's play cosmetics; Christmas tree ornaments, except confectionery or illumination articles; craft sets for decorating balloons; dolls; doll clothing; doll accessories; flying discs; footballs; hand held unit for playing electronic games; in-line skates; kites; mobiles for children; party favors in the nature of crackers and noisemakers; playground balls; playing cards; plush toys; puppets; puzzles; roller skates; skateboards; skim boards; snow sleds for recreational use; soccer balls; swim floats for recreational use; swim fins; toy action figures and accessories therefor; toy vehicles and playsets therefor; toy scooters; volleyballs; water wing, swim aids for recreational use; wind-up toys; and spinning discs incorporating string which rewinds and returns the disc to the hand when thrown.

[220] 提交日期：
(日-月-年)
Date of Filing:
(D-M-Y)

04-04-2007

[442] 公布獲接納註冊申請日期： 21-09-2007
(日-月-年)
Date of Publication of
Application of
Acceptance
for Registration:
(D-M-Y)

[151] 註冊日期：
(日-月-年)
Date of
Registration:
(D-M-Y)

04-04-2007

實際註冊日期：
(日-月-年)

14-03-2008

EXHIBIT _____ *N*

PAGE _____ *126*

Actual Date of
Registration:
(D-M-Y)

[180]註冊屆滿日期:                03-04-2017
(日-月-年)
Expiry date:
(D-M-Y)

詳細背景資料:
Historical Details:

作出記項日期    事項
Date of entry Matters
14-03-2008    REGISTRATION

作出記項日期    事項
Date of entry Matters
29-06-2007    DIVISION

            Application No.        300846612
            before division:

            Application Nos.       300846612AA , 300846612AB
            after division:

EXHIBIT ___*N*___

PAGE ___*127*___

# EXHIBIT O



香港特別行政區政府知識產權署商標註冊處
**Trade Marks Registry, Intellectual Property Department**
**The Government of the Hong Kong Special Administrative Region**

---

商標記錄
**Trade Mark Records**

---

[111  商標編號：                      300443989AB
]    **Trade Mark No.:**

     狀況：                          Registered
     **Status:**

[540] 商標：                          JADE
     **Mark:**

# JADE

[550] 商標種類：                       Ordinary
     **Mark Type:**

[730] 擁有人                          MGA ENTERTAINMENT INC.
     姓名／名稱、地址：               16380 ROSCOE BOULEVARD, VAN NUYS,
     **Owner's Name,**               CALIFORNIA, 91406,
     **Address:**                    UNITED STATES OF AMERICA.

[740/ 擁有人的送達地址：               William W.L. Fan & Co.
750]  **Owner's Address**            Room 1005, 10th Floor, Far East
     **for Service:**                Finance Centre,
                                     16 Harcourt Road,
                                     Hong Kong.

     代理人地址：                     Room 1005, 10th Floor, Far East
     **Agent's Address:**            Finance Centre,
                                     16 Harcourt Road,
                                     Hong Kong.

[511] 類別編號：                       25
     **Class No.:**

[511] 貨品／服務說明：                  Class 25
     **Specification:**              clothing, belts, blouses, coats,
                                     dresses, gloves, jackets, jeans, knit
                                     tops, mittens, pajamas, pants,
                                     ponchos, raincoats, robes, shirts,
                                     shorts, skirts, socks, sweaters,
                                     swimwear, underwear and vests;

EXHIBIT ____ O _____

Halloween costumes; hats; hosiery,
leggings, panty hose, stockings and
lights; masquerade costumes; and
shoes, athletic sneakers, bed
slippers, loafers, pumps and sandals.

[220] 提交日期 :                    22-06-2005
(日-月-年)
Date of Filing:
(D-M-Y)

[442] 公布獲接納註冊申請日期 : 13-04-2006
(日-月-年)
Date of Publication
of
Application of
Acceptance
for Registration:
(D-M-Y)

[151] 註冊日期 :                    22-06-2005
(日-月-年)
Date of
Registration:
(D-M-Y)

實際註冊日期 :                 25-07-2006
(日-月-年)
Actual Date of
Registration:
(D-M-Y)

[180] 註冊屆滿日期 :               21-06-2015
(日-月-年)
Expiry date:
(D-M-Y)

詳細背景資料 :
Historical Details:

作出記項日期   事項
Date of entry Matters
25-07-2006    REGISTRATION

作出記項日期   事項
Date of entry Matters
06-04-2006    DIVISION

Application No.      300443989

EXHIBIT _____ O _____

before division:

Application Nos.          300443989AA ,  300443989AB
after division:

EXHIBIT _____O_____

PAGE _____130_____

# EXHIBIT P

1

1                UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                  EASTERN DIVISION

4                   - - -

5    HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                 - - -

7  CARTER BRYANT,           )
                         )
8             PLAINTIFF,  )
                         )
9         VS.          )  NO. ED CV 04-09049
                         )  (LEAD LOW NUMBER)
10  MATTEL, INC.,         )
                         )
11          DEFENDANTS.  )
                         )
12  AND RELATED ACTIONS,   )
                         )

CERTIFIED COPY

13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16            RIVERSIDE, CALIFORNIA

17           MONDAY, JUNE 11, 2007

18              10:49 A.M.

19

20

21

22

23        THERESA A. LANZA, RPR, CSR
        FEDERAL OFFICIAL COURT REPORTER
24        3470 12TH STREET, RM. 134
        RIVERSIDE, CALIFORNIA  92501
25          (951) 274-0844
        CSR11457@SBCGLOBAL.NET

JUNE 11, 2007 EXHIBIT ___P___ BRYANT V MATTEL

PAGE___131___

```
 1   APPEARANCES:

 2

 3   ON BEHALF OF MATTEL, INC.:

 4
                         QUINN EMANUEL
 5                       BY:  JOHN B. QUINN
                         BY:  MICHAEL T. ZELLER
 6                       BY:  DYLAN PROCTOR
                         865 S. FIGUEROA STREET,
 7                       10TH FLOOR
                         LOS ANGELES, CALIFORNIA  90017
 8                       (213) 624-7707

 9

10   ON BEHALF OF CARTER BRYANT:

11                       KEKER & VAN NEST
                         BY:  MICHAEL H. PAGE
12                       BY:  CHRISTA MARTINE ANDERSON
                         710 SANSOME STREET,
13                       SAN FRANCISCO, CALIFORNIA  94111-1704
                         (415) 391-5400
14

15

16   ON BEHALF OF MGA AND MGA MEXICO:

                         O'MELVENY & MYERS LLP
17                       BY:  STEVEN J. OLSON
                         BY:  DIANA M. TORRES
18                       400 SOUTH HOPE STREET
                         LOS ANGELES, CALIFORNIA  90071-2899
19                       (213) 430-6000

20
                         CHRISTENSEN, GLASER, FINK,
21                        JACOBS, WEIL & SHAPIRO, LLP
                         BY:  PATRICIA GLASER
22                       10250 CONSTELLATION BOULEVARD
                         LOS ANGELES, CALIFORNIA  90067
23                       (310) 553-3000

24

25
```

JUNE 11, 200 EXHIBIT ___*P*___ BRYANT V MATTEL

PAGE ___*132*___

```
 1        RIVERSIDE, CALIFORNIA; MONDAY, JUNE 11, 2007; 10:49 A.M.

 2                              -OOO-

 3            THE CLERK:  CALLING CALENDAR ITEM 9, CARTER BRYANT

 4    VERSUS MATTEL INC., ET AL., CASE NUMBER ED CV 04-09049.

 5            MAY WE HAVE COUNSEL PLEASE COME FORWARD AND STATE         10:49

 6    YOUR APPEARANCES FOR THE RECORD.

 7            MS. GLASER:  GOOD MORNING, YOUR HONOR.

 8            PATRICIA GLASER FROM MGA.

 9            THE COURT:  COUNSEL.

10            MR. PAGE:  GOOD MORNING, YOUR HONOR.                      10:49

11            MICHAEL PAGE, WITH KEKER & VAN NEST, FOR

12    CARTER BRYANT.  WITH ME IS CHRISTA ANDERSON; WE HAVE RECENTLY

13    SUBSTITUTED IN FOR MR. BRYANT.

14            MS. ANDERSON:  GOOD MORNING, YOUR HONOR.

15            THE COURT:  GOOD MORNING.                                 10:50

16            MR. OLSON:  GOOD MORNING, YOUR HONOR.

17            STEVEN OLSON FOR MGA AND MGA MEXICO.

18            MR. QUINN:  GOOD MORNING, YOUR HONOR.

19            JOHN QUINN, MIKE ZELLER, DYLAN PROCTOR FOR MATTEL.

20            THE COURT:  THERE ARE SIX MOTIONS THAT THE COURT HAS      10:50

21    ON CALENDAR THAT THE COURT IS PREPARED TO ADDRESS AT THIS

22    HEARING.

23            THE FIRST TWO ARE SOMEWHAT RELATED.  I HAVE MGA AND

24    LARIAN'S MOTION TO DISMISS; MATTEL'S AMENDED COUNTERCLAIMS; AND

25    THEN, OF COURSE, CARTER BRYANT'S MOTION TO DISMISS              10:51
```

```
 1              DO YOU HAVE ANOTHER POSITION?

 2              MR. PAGE:  YES, YOUR HONOR.

 3              THE COURT:  PLEASE.

 4              MR. PAGE:  MICHAEL PAGE FOR CARTER BRYANT.

 5              I THINK WE COULD USE SOME OF THE COURT'S GUIDANCE,      12:07

 6   THOUGH, GOING INTO THOSE DISCUSSIONS.

 7              FROM MR. BRYANT'S POINT OF VIEW, OUR CONCERN IS REAL

 8   SIMPLE:  WE WANT HIM TO HAVE ONE TRIAL.

 9              THE COURT:  THAT MIGHT BE HARD TO DO, THOUGH, UNDER

10   ANY SCENARIO.                                                     12:07

11              MR. PAGE:  CERTAINLY ONE TRIAL AS OPPOSED TO

12   EVERYTHING THAT RELATES TO WHAT HE DID WHILE HE WAS A MATTEL

13   EMPLOYEE.  IF THEY HAVE RICO CLAIMS, THAT, THREE YEARS LATER

14   THE DOLLS (UNINTELLIGIBLE) ARE SOMEHOW PART OF A GRAND

15   CONSPIRACY, WE'LL DEAL WITH THAT.  WE DON'T THINK IT'S A          12:07

16   SERIOUS ISSUE.

17              BUT AS TO WHAT HE DID AT MATTEL AND WHAT HAPPENED UP

18   TO OCTOBER 20TH AND THE DAMAGES THAT FLOW FROM IT, MR. BRYANT

19   SHOULD HAVE ONE TRIAL.  IN FACT, IT'S A CONSTITUTIONAL

20   REQUIREMENT THAT HE DO.                                           12:07

21              ALL OF THE BRIEFS ON THIS ISSUE -- THEIR OPENING

22   BRIEF ON THIS ISSUE SAID THAT THEY WANTED TO DECIDE ALL OF THE

23   DAMAGES THAT FLOW FROM MR. BRYANT'S ACTIVITIES IN ONE TRIAL.

24              THE COURT:  IT'S A CONSTITUTIONAL REQUIREMENT THAT HE

25   HAVE ONLY ONE TRIAL?                                              12:07
```

59

```
 1            MR. PAGE:  IT'S A SEVENTH AMENDMENT ISSUE.  YOU CAN'T
 2    TRY SOMEONE'S LIABILITY TO ONE JURY AND THEN THE DAMAGES THAT
 3    FLOW FROM THAT LIABILITY TO ANOTHER JURY, AT LEAST WHERE THE
 4    FACTS INTERTWINE AS TO THE TWO.  AND THEY CERTAINLY DO HERE,
 5    BECAUSE WE HAVE PUNITIVE AND EXEMPLARY DAMAGE CLAIMS.             12:08
 6            BUT THEIR REPLY, FOR THE FIRST TIME IN A FOOTNOTE,
 7    LOGGED IN THE IDEA THAT 'OH, WAIT; WE DON'T WANT TO DO ANY
 8    DAMAGES AT ALL IN THE FIRST TRIAL; THAT'S ALL IN THE SECOND
 9    TRIAL.'
10            THAT'S A COMPLETE 180-DEGREE REVERSAL.  I CALLED THEM     12:08
11    AND SAID, 'WELL, DO YOU WANT DAMAGES IN THE FIRST TRIAL OR
12    NOT?'  I ASKED FOR CLARIFICATION, AND I WAS TOLD I WASN'T GOING
13    TO GET THAT CLARIFICATION.  I WAS TOLD THAT THE BRIEFS WERE
14    RIGHT.
15            WELL, THEY ARE DIAMETRICALLY OPPOSED TO EACH OTHER.       12:08
16            AS LONG AS WE HAVE A SITUATION WHERE MR. BRYANT ONLY
17    HAS TO BRING HIS FAMILY OUT TO TESTIFY; HE HAS TO COME OUT TO
18    TESTIFY; HIS LIVELIHOOD, HE IS ON THE LINE FOR THIS ONE SET OF
19    ACTS ONCE, AS TO WHO ELSE COMES IN, IT'S A QUESTION THAT CAN BE
20    WORKED OUT.  BUT THAT'S MY MAIN CONCERN.                         12:08
21            THE OTHER ISSUE THAT I THINK THAT WE NEED A LITTLE
22    BIT OF CLARITY FROM THE COURT ON IS, WE ALL KEEP SAYING
23    'OWNERSHIP OF BRATZ,' LIKE THAT WAS SOMETHING REAL.  AND I
24    THINK THAT'S GIVING RISE TO A CONSIDERABLE AMOUNT OF CONFUSION.
25    THERE IS NO SUCH THING AS 'OWNERSHIP OF BRATZ.'  THERE IS THE    12:09
```

JUNE 11, 200EXHIBIT ___P___  BRYANT V MATTEL

PAGE ___135___

1  QUESTION OF COPYRIGHT IN THE DRAWINGS THAT MR. BRYANT DID.

2  THAT'S A COPYRIGHT QUESTION.  IT'S A CONTRACT QUESTION AS TO

3  WHO OWNED HIS WORK AT THE TIME.  THEN THERE'S, WELL, WHO OWNS

4  THE COPYRIGHTS IN LATER DOLLS?  THERE'S A TRADEMARK CLAIM HERE.

5  THERE'S NO MENTION OF THE NAME OF BRATZ.  THERE'S NO OWNERSHIP          12:09

6  OF THE ACTUAL OBJECTS.

7          IT'S IMPORTANT, AS WE GO FORWARD, TO TRY TO FIGURE

8  OUT WHAT'S IN TRIAL ONE AND WHAT'S IN TRIAL TWO, THAT WE TALK

9  PRECISELY ABOUT, ARE WE TALKING ABOUT A COPYRIGHT CLAIM?  WHAT

10  WORKS?  ARE WE TALKING ABOUT A COPYRIGHT INFRINGEMENT ACTION?         12:09

11  A CONTRACT ACTION?

12          'OWNERSHIP OF BRATZ' IS A CONVENIENT SHORT NAME, BUT

13  IT'S GETTING US REALLY CONFUSED IN TRYING TO WORK THIS OUT.

14          THE COURT:  VERY WELL.

15          MR. QUINN?                                                    12:10

16          MR. QUINN:  I THINK THIS PROPOSAL THAT WE'VE GOT

17  LOOKS PRETTY PROMISING, ACTUALLY, YOUR HONOR.

18          THE COURT:  ALL RIGHT.

19          MR. QUINN:  I WOULD JOIN IN COUNSEL'S REQUEST THAT WE

20  GET TOGETHER AND SEE IF WE CAN'T COME UP WITH SOMETHING BY            12:10

21  AGREEMENT.

22          IF WE ARE UNABLE TO, AND THERE ARE ANY OPEN ISSUES --

23  THIS REALLY IS PERHAPS EVEN MORE COMPLEX THAN IT LOOKS, AND I

24  DON'T KNOW IF THE COURT EVER DOES THIS, BUT I WAS WONDERING

25  WHETHER IT MIGHT BE POSSIBLE TO HAVE AN INFORMAL CHAMBER'S            12:10

JUNE 11, 2008  EXHIBIT ___P___     BRYANT V MATTEL

PAGE ___130___

```
 1   CONFERENCE WITH THE COURT TO GO OVER SOME ISSUES IF WE'RE
 2   UNABLE TO RESOLVE THEM AMONG OURSELVES.
 3           THE COURT:  WE'LL CERTAINLY HAVE A HEARING IF YOU'RE
 4   NOT ABLE TO RESOLVE IT.  I'M RELUCTANT TO DO IT IN CHAMBERS;
 5   I'D LIKE TO KEEP IT ON THE RECORD.  WE CAN CERTAINLY DO IT IN      12:10
 6   CHAMBERS IF IT'S ON THE RECORD.
 7           MR. QUINN:  OKAY.
 8           YOUR HONOR, JUST A PLACEHOLDER, THEN, IN CASE
 9   WE'RE --
10           THE COURT:  WHY DON'T I SUGGEST THIS, WHY DON'T YOU        12:11
11   SPEND THE NEXT WEEK TRYING TO WORK ON THIS.  THIS IS VERY
12   PROMISING.  WHY DON'T YOU SPEND THE WEEK, AND WHY DON'T YOU
13   SUBMIT SOMETHING IN WRITING TO THE COURT --
14           MR. QUINN:  OKAY.
15           THE COURT:  -- AS TO WHAT YOU ALL THREE AGREE ON, AND      12:11
16   THEN, PROBABLY EVEN MORE IMPORTANTLY, WHAT YOU DISAGREE ON.
17           I UNDERSTAND THAT MR. BRYANT HAS SOME UNIQUE
18   CONCERNS, BEING AN INDIVIDUAL.  AND I APPRECIATE YOUR COMMENTS
19   THERE, COUNSEL.  LET'S SEE IF WE CAN'T WORK SOMETHING OUT THAT
20   ADDRESSES EVERYONE'S CONCERNS.  AND THEN AFTER YOU HAVE           12:11
21   SUBMITTED THAT IN WRITING TO THE COURT NEXT WEEK -- WHY DON'T
22   YOU SUBMIT SOMETHING NEXT MONDAY -- THE COURT WILL TAKE A LOOK
23   AT IT; AND THEN IF THERE'S A NEED TO HAVE A HEARING, WE'LL HAVE
24   A HEARING.  IF YOU'RE CLOSE ENOUGH WHERE I CAN DO THE FINE
25   TUNING WITHOUT HAVING A HEARING, I WILL DO THAT AS WELL, AND      12:11
```

62

1    WE'LL GO FROM THERE.

2           I'LL TRY TO GET AN ORDER OUT ON THESE OTHER FIVE

3    MOTIONS SHORTLY.

4           MR. OLSON:  THANK YOU, YOUR HONOR.

5           MR. QUINN:  THANK YOU, YOUR HONOR.                    12:11

6           MS. ANDERSON:  THANK YOU, YOUR HONOR.

7           THE COURT:  THANK YOU.

8           WE'RE GOING TO TAKE A BRIEF RECESS, JUST TO GIVE THE

9    COURT REPORTER A BREAK.  WE HAVE A FEW OTHER MATTERS TO TAKE

10   UP.                                                          12:12

11          THE COURT IS IN RECESS.

12          THE CLERK:  THE COURT STANDS IN RECESS.

13

14

15

16

17                        CERTIFICATE

18

19   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
20   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
     ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
21   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.
22

23   _____          7-9-07
     THERESA A. LANZA, CSR, RPR              DATE
24   FEDERAL OFFICIAL COURT REPORTER

25

JUNE 11, 2007      EXHIBIT ___P___          BRYANT V MATTEL

                   PAGE ___138___

# EXHIBIT Q

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**