QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
  Jon D. Corey (Bar No. 185066)
  joncorey@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                Plaintiff,<br><br>       vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>CV 04-09059<br>CV 05-2727<br><br>**REPLY IN SUPPORT OF MATTEL, INC.'S MOTION FOR:**<br><br>**(1) CONSTRUCTIVE TRUST; AND**<br><br>**(2) FINDING OF LIABILITY AND INJUNCTIVE RELIEF UNDER CAL. BUS. & PROF. CODE § 17200**<br><br>Date: November 10, 2008<br>Time: 1:00 p.m.<br>Place: Courtroom 1<br><br>**Phase 1C** |

07209/2672622.6

REPLY ISO MATTEL, INC.'S MOTION FOR CONSTRUCTIVE TRUST AND INJUNCTIVE RELIEF

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ................................................................................................................ 2

I.    MATTEL IS ENTITLED TO A CONSTRUCTIVE TRUST ............................. 2

      A.    Mattel Has a Right to the Bratz Trademark Because It Is One Of
The Benefits MGA Obtained From Its Wrongful Conduct ....................... 2

      B.    MGA's Acquisition Of The Bratz Trademark Was Wrongful ................... 3

      C.    Constructive Trusts Apply to Benefits Received From Wrongful
Conduct In Order To Prevent Unjust Enrichment ..................................... 3

      D.    Mattel's Request Is Not Barred By Laches or Estoppel ............................. 5

           1.    There is no presumption of laches ..................................................... 5

           2.    There has been neither unreasonable delay by Mattel nor
prejudice to MGA ............................................................................... 7

II.   MGA IS LIABLE FOR UNFAIR COMPETITION AND THE COURT
SHOULD ISSUE THE REQUESTED INJUNCTION ......................................... 9

      A.    Mattel's Claim for Unfair Competition is Not Preempted ......................... 9

      B.    Mattel Has Standing to Bring its UCL Claim ............................................. 9

      C.    MGA's Attempt To Conflate "Unlawful Conduct" With Available
Remedies Under the UCL is Specious ...................................................... 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

Akkerman v. Meeta Corp., Inc.,
  152 Cal. App. 4th 1094 (2007) .................................................................... 11

Aron v. U-Haul Co. of Cal.,
  143 Cal. App. 4th 796 (2006) ...................................................................... 10

Brzozowski v. Corr. Physician Servs., Inc.,
  360 F.3d 173 (3d Cir. 2004) .......................................................................... 6

Buckland v. Threshold Enterprises, Ltd.,
  155 Cal. App. 4th 798 (2007) ...................................................................... 11

Burlesci v. Petersen,
  68 Cal. App. 4th at 1069 ............................................................................... 4

Bush v. Sumitomo Bank and Trust Co.,
  513 F. Supp. 1051 (E.D. Tex. 1981) ............................................................. 6

Butler v. Adoption Media, LLC,
  486 F. Supp. 2d 1022 (N.D. Cal. 2007) ...................................................... 11

Castle v. Wells Fargo Fin., Inc.,
  2007 WL 1105118 (N.D. Cal. 2007) ............................................................ 7

Co. of San Bernardino v. Walsh,
  158 Cal. App. 4th 533 (2007) ........................................................................ 2

Communist Party of the United States of America v. 522 Valencia, Inc.,
  35 Cal. App. 4th 980 (1995) ......................................................................... 4

Daro v. Super. Ct.,
  151 Cal. App. 4th 1079 (2007) .................................................................... 12

E & E Co., Ltd. v. Kam Hing Enterprises, Inc.,
  2008 WL 3916256 (E.D. Cal. 2008) ........................................................... 11

E.I. duPont de Nemours & Co. v. Phillips Petroleum Co.,
  621 F. Supp. 310 (D. Del. 1985) ................................................................... 6

Envtl. Def. Fund, Inc. v. Alexander,
  614 F.2d 474 (5th Cir. 1980) ......................................................................... 6

G & C Auto Body Inc. v. Geico General Ins. Co.,
  2007 WL 4350907 (N.D. Cal. 2007) .......................................................... 10

Gladstone v. Hillel,
  203 Cal. App. 3d 977 (1988) ........................................................................ 5

Haskell Engineering & Supply Co. v. Hartford Acc. & Indem. Co.,
　78 Cal. App. 3d 371 (1978) ............................................................................... 4

Hewlett v. Squaw Valley Ski Corp.,
　54 Cal. App. 4th 499 (1997) ........................................................................... 12

Jarrow Formulas v. Nutrition Now,
　304 F.3d 829 (9th Cir. 2002) ........................................................................ 6, 7

Lozano v. AT&T Wireless Serv.,
　504 F.3d 718 (9th Cir. 2008) .......................................................................... 10

O'Donnell v. Vencor Inc.,
　466 F.3d 1104 (9th Cir. 2006) .......................................................................... 7

Pacific Lumber Co. v. Superior Court,
　226 Cal. App. 3d 371 (1990) ............................................................................ 5

In re Prempro Products Liability Litigation,
　417 F. Supp. 2d 1058 (E.D. Ark. 2006) ........................................................... 6

Selph v. Nelson, Reabe & Synder, Inc.,
　966 F.2d 411 (8th Cir. 1992) ............................................................................ 7

White v. Trans Union, LLC,
　462 F. Supp. 2d 9 (C.D. Cal. 2006) ........................................................... 10, 11

## **Statutes**

Cal. Bus. & Prof. Code § 17203 ............................................................................ 12

Fed. R. Civ. P. 15(c) ................................................................................................ 6

## **Other Authorities**

Restatement of Restitution § 201 ............................................................................. 4

Gilson on Trademarks § 10.02 (2008) ..................................................................... 3

## Preliminary Statement

Without MGA's participation in Bryant's theft, MGA would never have had the "Bratz" and "Jade" names, would never have been able to use them, and would not have trademark rights.  MGA only has the trademarks because of its unlawful conduct, but argues that this Court is powerless to prevent it from continuing to use them.  That is the very purpose of the remedy of constructive trust.  It takes away from the wrongdoer the benefits it obtained by its wrongful conduct.  Here, those benefits include the Bratz trademark.  MGA asserts its acquisition of the mark was "entirely legitimate."  But MGA could not turn the "Bratz" name into a trademark except by selling the stolen dolls under the stolen name.  If MGA were right, Mattel would own the name but MGA—by retaining the trademark—could prevent Mattel from using it.  That would be like returning the stolen car but letting the thief own the keys to the ignition.

The doctrines of laches and estoppel do not save MGA.  The Court has already rejected MGA's contention that a "reverse" presumption of laches applies.  And, in any event, there has been no unreasonable delay by Mattel or unfair prejudice to MGA.

MGA also argues that the UCL claim is preempted—an argument expressly rejected by the Court in its summary judgment ruling.  The jury has rejected MGA's further argument that Mattel suffered no injury—harm to Mattel was an element of each the tort claims on which the jury found MGA liable.  MGA is wrong on the law to suggest that Mattel cannot obtain an injunction absent entitlement to restitution.  And even if it were not, the jury's verdict entitles Mattel to restitution—the return of the Bratz properties identified in Mattel's Motion for Declaratory Relief.  Under the UCL, the Court has "extraordinarily broad" authority to issue the requested injunction to prevent MGA from continuing to benefit from its unlawful conduct.

## Argument

### I. MATTEL IS ENTITLED TO A CONSTRUCTIVE TRUST

#### A. Mattel Has a Right to the Bratz Trademark Because It Is One Of The Benefits MGA Obtained From Its Wrongful Conduct

In arguing that Mattel does not have any rights to the Bratz trademark, MGA asserts that Mattel's claim is based solely "on the fact that the jury found that Bryant conceived of the name 'BRATZ' while he was employed by Mattel." (Opp. at p. 3.) Not so. Mattel has never argued that Bryant's conception of the "Bratz" name while employed by Mattel endowed it with trademark rights. Rather, as Mattel's motion makes clear, Mattel has rights to the Bratz mark because it is one of the benefits MGA obtained by its wrongful conduct.[1]

Under its state law tort claims, Mattel is entitled to all benefits MGA obtained as a result of its wrongful conduct.[2] The Bratz mark is one such benefit. As MGA points out, trademark rights are acquired, in the United States, through use in commerce. MGA acknowledges that it acquired the Bratz mark through use of the "Bratz" name. The acquisition and use of the name itself was wrongful. The "Bratz" name was one of the Bratz-related inventions that Bryant conceived while a Mattel employee and unlawfully disclosed to MGA, with MGA's complicity. Accordingly, the use of the "Bratz" name that ripened into the Bratz trademark is merely one of the benefits MGA obtained from its wrongful use of property that belonged to Mattel. The mark is properly the subject of a constructive trust.

---

[1] MGA asserts that the MGA parties have no rights in the trademark Jade. In fact, MGA purports to own no fewer than two registrations and one pending application for Jade trademarks in Hong Kong alone. Supplemental Declaration of Scott B. Kidman dated October 20, 2008 ("Supp. Kidman Dec."), Exhs. M, N, O. For the same reasons set forth herein, Mattel is entitled to a constructive trust over these and any other registrations, applications or common law rights in the mark Jade held by or for the benefit of MGA.

[2] See Co. of San Bernardino v. Walsh, 158 Cal. App. 4th 533, 543 (2007) ("Active participants in the breach of fiduciary duty by another are accountable for all advantages they gained thereby.").

### B.  MGA's Acquisition Of The Bratz Trademark Was Wrongful

MGA's also argues that its acquisition of the Bratz mark was "entirely legitimate." MGA admits it acquired the "Bratz" name from Carter Bryant (who had no right to it), but claims that it acquired the Bratz mark through use. This logic ignores that MGA's use of the stolen name is part of the wrongful conduct for which it is liable. Two wrongs do not make a right. MGA's wrongful acquisition and wrongful use do not bar a constructive trust over the resulting trademark. To the contrary, MGA's use of Mattel's invention should inure to Mattel's benefit and those benefits properly should be returned to Mattel.[3]

Moreover, even if wrongful use of a wrongfully acquired mark could legitimize MGA's trademark in the United States, it could not do so outside the United States. Outside the United States use is not a requirement. Trademark rights outside the U.S. are conferred by registration. See Anne Gilson LaLonde & Jerome Gilson, Gilson on Trademarks § 10.02 (2008). Thus, even if MGA's argument had merit in the United States—and it does not—a constructive trust would still be required over trademark registrations and applications in foreign jurisdictions.[4]

### C.  Constructive Trusts Apply to Benefits Received From Wrongful Conduct In Order To Prevent Unjust Enrichment

Alternatively, MGA argues that even if its retaining the trademark is inequitable, there is no remedy. MGA points out that Mattel never had a trademark in Bratz.

---

[3]  Nor does MGA's settlement of a disputed claim with Lovins render its acquisition of the Bratz mark legitimate. MGA had already acquired the Bratz mark as a result of its wrongful acquisition and use of Mattel's property before any agreement with Lovins. MGA cannot rely on the subsequent acquisition of Lovins' purported rights with respect to a narrow class of goods--children's apparel--to undo its wrongful conduct and retain the benefits it received as a result. Rather, as the constructive trustee of the Bratz mark, any steps by MGA to perfect rights with respect to this limited class of goods were undertaken for and inure to the benefit of Mattel.

[4]  Rights to domain names are also conferred by the mere act of registration, even in the United States. Accordingly, Mattel is entitled to a constructive trust over all domain names that include the term "Bratz" or "Jade."

According to MGA, constructive trusts do not apply to "any item of property not initially belonging to the plaintiff." (Opp. at p. 7.)

If MGA's argument were correct, the remedy of constructive trust would serve no purpose. If a plaintiff could get back only what had originally been stolen, then an action for replevin would be sufficient. The remedy of constructive trust exists precisely because wrongdoers sometimes use stolen property to acquire other property. In those situations, the constructive trust remedy is available to recover the additional property.

For example, in <u>Haskell Engineering & Supply Co. v. Hartford Acc. & Indem. Co.</u>, 78 Cal. App. 3d 371, 376 (1978), the court held that, as between an employer and former employee who had embezzled funds, the employer was entitled to a constructive trust <u>upon real property</u> acquired by the former employee with those funds, including any enhanced value of the property. The court noted that "the beneficiary of the constructive trust is entitled to enhancement in value of the trust property not because he has a substantive right to it but rather to prevent unjust enrichment of the wrongdoer-constructive trustee." <u>Id.</u> at 378.[5]

None of the cases cited by MGA hold that a constructive trust applies only to the property originally stolen. The issue in <u>Communist Party of the United States of</u>

---

[5] MGA argues that RESTATEMENT OF RESTITUTION § 201 does not apply because the "profit" over which constructive trust apply is limited to monetary gain. As a preliminary matter, MGA's interpretation of "profit" is inconsistent with the plain meaning of the term. "Profit" includes "[a] material benefit derived from a property, position, etc." and "[t]he advantage or benefit inherent in or resulting from something." Oxford English Dictionary Online, definition of "profit" (2008), retrieved October 17, 2008, from http://dictionary.oed.com/cgi/entry/ 50189495. Furthermore, there is no principled basis for limiting the subject of a constructive trust to money obtained from the use of wrongfully acquired information as opposed to other benefits obtained from such use. Such a limitation would be inconsistent with the stated purpose of a constructive trust—"to prevent unjust enrichment and to prevent a person from taking advantage of his or her wrongdoing." <u>Burlesci v. Petersen</u>, 68 Cal. App. 4th at 1069.

America v. 522 Valencia, Inc., 35 Cal. App. 4th 980 (1995), was "alter ego"—that is, to establish a construct trust over certain property, the plaintiff had to show that it was the alter ego of two other corporations that had held the property. The plaintiff failed to prove alter ego. The case had nothing to do with whether constructive trusts cover only property "originally owned." Similarly, Pacific Lumber Co. v. Superior Court, 226 Cal. App. 3d 371 (1990), turned on title, not "original ownership." The plaintiff class sued to recover shares that had been transferred to a corporation. The plaintiffs sought a constructive trust over the shares and the real property owned by the corporation. The decision turned on the fundamental principle of corporate law that shareholders own the stock and not the corporation's assets. Id. at 375-76. It has no application here.[6]

### D. Mattel's Request Is Not Barred By Laches or Estoppel

#### 1. There is no presumption of laches

MGA's laches defense turns primarily on its contention that there is a presumption of laches because Mattel's state law tort claims would be time-barred but for relation-back. (Opp. at p. 9.) MGA has made this very argument before. The Court rejected it then and should do so again.

At the hearing after the Phase 1A verdict, MGA argued that a presumption of laches applied to Mattel's copyright claim because it supposedly would be time-barred but for the relation-back doctrine. The Court held that MGA's cited authority for this

---

[6] MGA's reliance on Gladstone v. Hillel, 203 Cal. App. 3d 977 (1988), is puzzling. Stating that defendants "should not be permitted to benefit from the fruit of their conversion of [plaintiff's] property," the court there upheld an injunction preventing defendants from using plaintiff's jewelry design molds and other representations of his designs which defendants had wrongfully acquired. Id. at 989-90. The court noted, however, that a blanket injunction preventing defendants from using any of plaintiff's designs or other representations of his work was essentially an injunction not to copy and needed to be more closely tailored to the rights conferred by state law. Id. at 990. It is difficult to see how this decision "undermines" in any way the relief Mattel seeks here.

proposition, which MGA cites again here—Jarrow Formulas v. Nutrition Now, 304 F.3d 829 (9th Cir. 2002)—did not support MGA's contention: "MGA reads Jarrow Formulas far too broadly. That case did not consider how laches should apply when a claim that was otherwise outside the limitations period was saved by the relations-back doctrine."[7] The Court went on to state that in its own research it "has been unable to locate any authority that suggests that a relation-back claim would be especially vulnerable to the defense of laches."[8] The Court pointed out that the authority that does exist is to the contrary.[9]

MGA now cites two additional out-of-circuit cases, Brzozowski v. Corr. Physician Servs., Inc., 360 F.3d 173, 182 (3d Cir. 2004), and Envtl. Def. Fund, Inc. v. Alexander, 614 F.2d 474, 478-79, n.3 (5th Cir. 1980). Neither case considered how laches applies when a claim outside the limitations period was timely only because of relation back.[10] These cases are not authority at all, much less "persuasive authority,"

---

[7] Order dated July 24, 2008 at p. 5, Supp. Kidman Dec., Exh. B.
[8] Id. at p. 6.
[9] See, e.g., In re Prempro Products Liability Litigation, 417 F. Supp. 2d 1058, 1061 (E.D. Ark. 2006) (allowing plaintiffs to re-file their claims in a separate complaint and clarifying that "for application of . . . laches . . . the filing date of [the new complaint] will be deemed to relate back to the date [of the dismissed complaint]"); E.I. duPont de Nemours & Co. v. Phillips Petroleum Co., 621 F. Supp. 310, 313 (D. Del. 1985) (noting that applicability of laches did not need to be addressed in light of the fact that the proposed complaint related back to the original pleading pursuant to Fed. R. Civ. P. 15(c)); Bush v. Sumitomo Bank and Trust Co., 513 F. Supp. 1051, 1054 (E.D. Tex. 1981) (noting that court would consider the related-back date of amended claim to assess merits of laches defense).
[10] In Envtl. Def. Fund, the court stated that for purposes of laches it would apply the filing date of the amended complaint, not the original complaint. 614 F.2d at 474. However, there was no discussion of a presumption of laches, whether the claim would be time-barred but for the relation-back and, if so, whether relation-back applied. In Brzozowski, the plaintiff in a Title VII discrimination action sought to join an additional defendant after the 90-day period for filing suit after receiving a right to sue letter from the EEOC. The defendant argued that the claim was time-barred and that relation back did not apply. The court held that Title VII did not specify any limitations period for joining additional defendants and Title VII claims were an exception to the policy that, in federal litigation, if Congress does not provide a limitations period, courts look to analogous state statutes. 360 F.3d at 180-82. Accordingly,
(footnote continued)

for the presumption of laches argued for by MGA.[11]

As the Court has already ruled, Mattel's state law tort claims were timely filed. Accordingly, there is a presumption that they are not barred by laches. <u>Jarrow Formulas</u>, 304 F.3d at 835.

### 2. There has been neither unreasonable delay by Mattel nor prejudice to MGA

MGA's laches defense also fails because MGA does not identify any evidence of prejudice or undue delay. MGA points to the MGA Parties' Phase 1C Statement, but as set forth in Mattel's response thereto, that Statement does not establish any unreasonable delay or prejudice to MGA.[12] Furthermore, this Court already found no demonstrated prejudice.[13] There is no reason to revisit that ruling now, and MGA offers none.

---

there was no discussion of whether laches would apply to a claim that was otherwise outside the limitations period because there was no limitations period.

[11] Moreover, MGA's assumption that Mattel's claims relating to the Bratz name are time barred but for relation back is itself erroneous. Just as Mattel was not on notice of its claims against Isaac Larian and MGA Hong Kong until November 2004, when Bryant was deposed, because it has no reason to know of their unlawful actions prior to that time (<u>see</u> May 27, 2008 Order at 9, Supp. Kidman Dec., Exh. K), Mattel also had no reason to know of its ownership of the Bratz name prior to Bryant's deposition. It was at his deposition that Bryant testified, for the first time, that he conceived the name "Bratz"—prior to that, Mattel did not have reason to know Bryant had conceived the name, let alone that he had done so at Mattel. <u>See</u> Bryant Depo. dated Nov. 4, 2004, at 140:3-141:14, 155:2-156:8, Supp. Kidman Dec., Exh. L. Accordingly, Mattel's claims as to the name could not have accrued prior to November 4, 2004, and Mattel filed its counterclaims just over two years later. In the interim, the Court stayed this action for approximately a year, which tolled the limitations period. <u>See</u> <u>Castle v. Wells Fargo Fin., Inc.</u>, 2007 WL 1105118 (N.D. Cal. 2007) (finding statute of limitations equitably tolled for period of stay); <u>Selph v. Nelson, Reabe & Synder, Inc.</u>, 966 F.2d 411, 413 (8th Cir. 1992) ("A stay tolls the statute of limitations . . ."); <u>cf.</u> <u>O'Donnell v. Vencor Inc.</u>, 466 F.3d 1104, 1112 (9th Cir. 2006) (defense not barred by laches because delay in filing motion to dismiss was reasonable as a result of multiple stays of case).

[12] <u>See</u> Mattel, Inc.'s Response to MGA Parties' Statement of Position Regarding Phase 1c Issues, at 2-15.

[13] Order Re Mattel's Motion for Leave to Amend, dated January 11, 2007, at 8:25-13:7; Supp. Kidman Dec., Exh. D.

MGA contends there has been post-filing delay.  This argument too has previously been rejected by the Court.  In discussing Mattel's Amended Pre-Trial Conference Order, the Court stated:  "With respect to the Bratz name, the Court is inclined to overrule [MGA's] objection as the Court finds no surprise or prejudice to MGA.  The naming of the Bratz is properly within the scope of Mattel's breach of contract claims and was fully explored in discovery."[14]

MGA asserts that Mattel "repeatedly affirmed that it was not seeking trademark rights to the name 'BRATZ.'"  (Opp. at p. 9.)  But in the transcript that MGA cites, Mattel merely clarified that it was not asserting a claim for trademark infringement in the Phase 1 trial.  Mattel never represented that it would not seek appropriate remedies based on a jury's determination that Bryant conceived the "Bratz" name while a Mattel employee and that Mattel therefore owned the "Bratz" name pursuant to the Inventions

---

[14] Trial Tr. at 36:14-18 (5/27/2008). Moreover, the pleadings clearly put MGA on notice of the scope of the relief Mattel would seek, including the "imposition of a constructive trust over Bratz, including without limitation registrations and applications for registrations relating thereto . . . and all profits, monies, royalties and other benefits derived or obtained from [defendant's] exercise of ownership, use, sale, distribution and licensing of Bratz." See e.g. First Amended Complaint, Prayer for Relief at ¶ 9 (filed Nov. 20, 2006), Supp. Kidman Dec. Exh. F;  Amended Answer and Counterclaims, Prayer for Relief at ¶ 9 (filed Jan. 12, 2007), Supp. Kidman Dec. Exh. G; Second Amended Answer and Counterclaims, Prayer for Relief at ¶ 9 (filed July 12, 2007), Supp. Kidman Dec. Exh. H.

Indeed, this relief is well within the ambit of the relief that Mattel has been seeking since the time that it filed its original Complaint in April 2004 and MGA intervened as a party-defendant in December 2004.  See Complaint, Prayer for Relief (seeking, inter alia, disgorgement and return of all properties acquired as a result of wrongful conduct and injunction), Supp. Kidman Dec. Exh. E; Order Denying Plaintiff Mattel, Inc's Motion to Remand and Certifying Question for Interlocutory Review, dated March 4, 2005, at 19 (stating that "the rights to the Bratz were and are in controversy" in this case), Supp. Kidman Dec. Exh. I; Order Re Mattel's Motion for Leave to Amend, dated January 11, 2007, at 18:14-17 (noting that crux of action, even before amendment, "asks a rather narrow and straightforward question—Did anything from Bryant's employment at Mattel during the 1999-2000 period given Mattel ownership rights to the BRATZ doll line?"), Supp. Kidman Dec. Exh. D.

Agreement.[15] MGA also claims that Mattel disavowed any remedy pertaining to the Bratz mark in its response to MGA Phase 1B JMOL. To the contrary, Mattel specifically stated that it "is entitled to recover MGA's benefits from the use of the [Bratz] name under a disgorgement of benefits theory and through a constructive trust."[16] That is precisely what Mattel seeks here.

## II. MGA IS LIABLE FOR UNFAIR COMPETITION AND THE COURT SHOULD ISSUE THE REQUESTED INJUNCTION

### A. Mattel's Claim for Unfair Competition is Not Preempted

This Court has already rejected MGA's position that Mattel's UCL claim is preempted. On summary judgment, MGA argued that the Copyright Act preempts Mattel's UCL claims. The Court concluded that Mattel's UCL claim was preempted only "to the extent that the § 17200 claim is based on copyright infringement . . . ."[17] As MGA concedes, Mattel's claim for a UCL injunction precluding use of the names "Bratz" and "Jade" is not governed by copyright law. (Opp. at 3, n.3 ("a single word is not subject to copyright"); see also MGA's Stmt. of Position re Phase 1c at 14-15.) The unlawful activity upon which Mattel's UCL claim is predicated is not MGA's infringement, but MGA's aiding and abetting Bryant's breach of duties and tortious interference. The Court recognized these claims as "qualitatively different" from Mattel's copyright claim.[18] Accordingly, Mattel's UCL claim is not preempted.

### B. Mattel Has Standing to Bring its UCL Claim

Defendants argue that Mattel does not have standing to pursue injunctive relief

---

[15] To the contrary, as Mr. Zeller stated at the pre-trial conference: "There may be consequences for purposes of MGA's right to use [the 'Bratz' name] as a mark, but we are not asserting what we would say is, of course, an infringement claim . . . ." May 19, 2008 Pretrial Conference Tr. at 33:8-10.

[16] See Mattel, Inc.'s Opposition to the MGA Parties' Motion for Judgment as a Matter of Law (Dkt. No. 4269) at 9, Supp. Kidman Dec., Exh. J.

[17] Order Granting in Part, Denying in Part, and Deferring in Part the Parties' Motions for Partial Summary Judgment, dated April 25, 2008, at 7, Supp. Kidman Dec., Exh. C.

[18] Id. at 2, 7.

under the UCL because Mattel suffered no injury. That assertion is defeated by the jury verdict in Mattel's favor. "Harm" to Mattel was an element of each of Mattel's underlying state law tort claims.[19] Because the jury found in Mattel's favor on each one, it necessarily found harm.[20] The jury also found that Bryant conceived dozens of Bratz designs, the Bratz characters and the Bratz name while he was a Mattel employee. Defendants unlawfully took those Mattel inventions and converted Mattel's drawings, and MGA itself has repeatedly asserted that Mattel had lost sales as a result of Bratz.[21] As the Court previously observed, "there is certainly evidence in terms of harm to Mattel" and "it just seems on the undisputed evidence here that no matter how you slice this, that the harm is manifest." Defendants' suggestion that Mattel has not lost "money or property" is groundless. These injuries are more than enough to satisfy the UCL's minimal standing requirement.[22]

Defendants also argue that without restitution, Mattel cannot have an injunction. But Mattel has sought restitution—the return of the Bratz works sought in Mattel's accompanying Motion for Declaratory Judgment. And even if Mattel were not entitled to restitution, the weight of authority holds that Mattel does not need to establish entitlement to restitution to obtain an injunction. In White v. Trans Union, LLC, 462 F. Supp. 2d 9 (C.D. Cal. 2006), the court explained "[a]lthough TransUnion is correct that Plaintiffs would be required to show that TransUnion took money directly from them in order to obtain money damages under the UCL, no such burden exists here, where Plaintiffs seek only injunctive relief." Id. at 1083 (citation omitted); see also G

---

[19] Phase 1A Final Jury Instructions as Given, Instruction Nos. 22, 25-27 and 29, Declaration of Scott B. Kidman dated September 29, 2008 ("Kidman Dec."), Exh. E.
[20] Phase 1A Verdict, Question Nos. 7-15, Kidman Dec., Exh. A.
[21] See Trial Tr. at 4902:6-8, 4964:3-15.
[22] Illustrating this low threshold, in Aron v. U-Haul Co. of Cal., 143 Cal. App. 4th 796, 802-03 (2006), the court found injury in fact stemming from a practice requiring consumers to return a rental car with slightly more fuel than when rented. See also Lozano v. AT&T Wireless Serv., 504 F.3d 718, 733 (9th Cir. 2008) (excessive charges for cell phone minutes).

& C Auto Body Inc. v. Geico General Ins. Co., 2007 WL 4350907, *4 (N.D. Cal. 2007) (adopting White and holding that plaintiff had standing to seek injunctive relief where he lacked standing to seek restitution); E & E Co., Ltd. v. Kam Hing Enterprises, Inc., 2008 WL 3916256, *3 (E.D. Cal. 2008) (same).

Defendants confuse two different concepts: (1) the "injury in fact" requirement for standing to bring the claim and (2) the restitutionary remedy. They argue that "Proposition 64 limited UCL relief only to those plaintiffs that are entitled to restitution" (Opp. at 15:4-5), citing Buckland v. Threshold Enterprises, Ltd., 155 Cal. App. 4th 798, 817-18 (2007). But Buckland does not so hold. There, the plaintiff intentionally purchased the mislabeled product in order to seek restitution and injunctive relief. The court held that the plaintiff suffered no injury and therefore could not bring a UCL claim. Id. at 816. The case had nothing to do with whether a plaintiff—who as here did suffer injury—must seek restitution to obtain injunctive relief.[23]

### C. MGA's Attempt To Conflate "Unlawful Conduct" With Available Remedies Under the UCL is Specious

Defendants do not argue that they did not engage in unlawful business practices. Nor can they. The jury's verdict in Phase 1A is dispositive of this issue. (Motion at 12-14.)

Instead, defendants conflate the concepts of liability and remedy under the UCL. MGA argues that its use of the names "Bratz" and "Jade," viewed in isolation, would not itself be "unlawful" and therefore cannot be enjoined. (Opp. at 15-16.) The UCL does not so limit the Court's authority. It grants the power to "make such orders or

---

[23] The same is true of MGA's other authorities, in which the plaintiffs sought monetary relief in the absence of any actual injury. See, e.g. Butler v. Adoption Media, LLC, 486 F. Supp. 2d 1022, 1062 (N.D. Cal. 2007) (plaintiffs sought only statutory damages); Akkerman v. Meeta Corp., Inc., 152 Cal App. 4th 1094, 1098 (2007) (jury expressly found the plaintiff suffered no injury)

1  judgments . . . as may be necessary to prevent the use or employment by any person of
2  any practice which constitutes unfair competition . . . or as may be necessary restore to
3  any person in interest any money or property, real or personal, which may have been
4  acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203.

5  Here, MGA engaged in torts that resulted in MGA obtaining the names "Bratz" and "Jade" and the corresponding dolls. MGA has no rights to these names yet asserts the Court is powerless to enjoin it from using them. In fact, under the UCL courts have "extraordinarily broad" authority to issue injunctions, even to preclude otherwise lawful conduct. See Hewlett v. Squaw Valley Ski Corp., 54 Cal. App. 4th 499, 538-42 (1997) (affirming injunction prohibiting otherwise lawful activities following a finding of liability under the UCL.).

12  Notably, defendants cite no authority that supports their argument. Defendants' sole case, Daro v. Super. Ct., 151 Cal. App. 4th 1079 (2007), is distinguished by the very language MGA cites and underlines. Mattel would not have "suffer[ed] the same harm whether or not [MGA] complied with the law." Id. at 1099. The undisputed evidence is that MGA obtained the names "Bratz" and "Jade" from Bryant in violation of Bryant's duties. Along with the other thefts, MGA was complicit in stealing that property from Mattel through unlawful activities. Had MGA not knowingly received property stolen from Mattel, those names would properly have been available for Mattel to use. Instead, MGA took them and benefits to this day by that theft. Section 17203 gives this Court ample authority to preclude MGA from continuing to benefit from that theft.

23  DATED: October 20, 2008         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Michael T. Zeller

Michael T Zeller
Attorneys for Mattel, Inc.