1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3    michaelzeller@quinnemanuel.com
   Jon D. Corey (Bar No. 185066)
4    joncorey@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                    EASTERN DIVISION

| | |
|---|---|
| 12  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13      Plaintiff, | Consolidated with: CV 04-09059 |
| 14      vs. | CV 05-2727 |
| 15  MATTEL, INC., a Delaware corporation, | **MATTEL, INC.'S REPLY IN SUPPORT OF MOTION FOR** |
| 16      Defendant. | **PERMANENT INJUNCTION** |
| 17 | **[Declarations Of Stephen M. Hauss,** |
| 18  AND CONSOLIDATED ACTIONS | **Judy A. Willis And Stephanie Cota Filed Concurrently]** |
| 19 | Date:  November 10, 2008 |
| 20 | Time:  1:00 p.m. Place:  Courtroom 1 |
| 21 | **Phase 1(a):** Trial Date:  May 27, 2008 |
| 22 | |
| 23 | **Phase 1(b):** Trial Date:  July 23, 2008 |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ............................................................................................. 1

I.   THE COURT HAS AUTHORITY TO GRANT MATTEL THE
     INJUNCTIVE RELIEF IT SEEKS .................................................... 1

     A.   Only Specific and Unambiguous Jury Findings Bind the Court ............. 1

     B.   The Jury Did Not Find That Only First Generation Dolls Infringe ......... 3

     C.   The Jury Verdict as to the Current Value of Isaac Larian's Stock is
          Irrelevant to the Court's Authority to Grant Injunctive Relief ................. 6

II.  THE COURT SHOULD ENJOIN DEFENDANTS' INFRINGEMENT .......... 9

     A.   MGA Is Engaged In Ongoing Acts of Infringement ................................ 9

     B.   The Prospect That MGA Will Not Be Able To Fully Compensate
          Mattel For Its Ongoing Infringement Shows Irreparable Harm ............ 11

     C.   Mattel's Marketplace Losses Constitute Irreparable Harm .................... 12

     D.   Even If It Could and Would Be Compensated, Mattel Will Still
          Suffer Irreparable Harm Absent An Injunction ..................................... 14

     E.   The Balance of Hardships and the Public Interest Favor an
          Injunction .............................................................................................. 17

III. MATTEL'S PROPOSED INJUNCTION AND RELATED REMEDIES
     ARE APPROPRIATE AND SHOULD BE ORDERED ................................. 20

     A.   An Injunction Is The Appropriate Remedy ............................................ 20

     B.   The Injunction is Not Overbroad ........................................................... 22

     C.   The Court Should Order Recall, Destruction and Impoundment ........... 23

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

3M Co. v. Pribyl,
    259 F.3d 587 (7th Cir. 2001) ............................................................... 8

A&M Records, Inc. v. Napster, Inc.,
    239 F.3d 1004 (9th Cir. 2001) ............................................................ 20

Abend v. MCA, Inc.,
    863 F.2d 1465 (9th Cir. 1988) ................................................ 18, 20, 21

Anza v. Ideal Steel Supply Corp.,
    547 U.S. 451 (2006)............................................................................ 13

Applied Innovations, Inc. v. Regents of the Univ. of Minn.,
    876 F.2d 626 (8th Cir. 1989) .............................................................. 24

Arista Records LLC v. Furia Sonidera, Inc.,
    2007 WL 922406 (E.D.N.Y. 2007) ...................................................... 9

BR Assoc., Inc. v. LaFramboise,
    2007 WL 1840031 (E.D. Mich. June 26, 2007) ................................. 19

BUC Int'l Corp. v. Int'l Yacht Council Ltd.,
    2002 WL 31399604 (S.D. Fla. July 5, 2002).................................... 19

Bains LLC v. Arco Prods. Co., Div. of Atl. Richfield Co.,
    405 F.3d 764 (9th Cir. 2005) ...................................................... 4, 8, 21

Beacon Theatres, Inc. v. Westover,
    359 U.S. 500 (1959).............................................................................. 1

Bertram Music Co. v. Yeager Holdings of Cal., Inc.,
    2008 WL 2055480 (E.D. Cal. 2008).............................................. 9, 15

Beverage Distrib., Inc. v. Olympia Brewing Co.,
    440 F.2d 21 (9th Cir. 1971) ................................................................. 6

Blake v. Hall,
    668 F.2d 52 (1st Cir. 1981)................................................................... 2

Bridgeport Music, Inc. v. Justin Combs Pub.,
    507 F.3d 470 (6th Cir. 2007) ............................................................... 5

Burton v. Armontrout,
    975 F.2d 543 (8th Cir. 1992) ............................................................... 2

Bus. Trends Analysts, Inc. v. Freedonia Group, Inc.,
    887 F.2d 399 (2d Cir. 1989) .............................................................. 13

Cadence Design Sys. v. Avant! Corp.,
    125 F.3d 824 (9th Cir. 1997) .................................... 13, 14, 20, 21, 22

Chere Amie, Inc. v. Windstar Apparel, Corp.,
175 F. Supp. 2d 562 (S.D.N.Y. 2001) ............................................... 25

CoxCom, Inc. v. Chaffee,
536 F.3d 101 (1st Cir. 2008) ........................................................ 11

CyberMedia, Inc. v. Symantec Corp.,
19 F. Supp. 2d 1070 (N.D. Cal. 1998) .......................................... 18

Data Gen. Corp. v. Grumman Sys. Support Corp.,
36 F.3d 1147 (1st Cir. 1994) ........................................................ 12

Designer Skin, LLC v. S&L Vitamins, Inc.,
2008 WL 4174882 (D. Ariz. Sept. 5, 2008) ................................ 15

Disney Enters., Inc. v. Merchant,
2007 WL 1101110 (N.D.N.Y. 2007) ............................................. 9

Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.,
109 F.3d 1394 (9th Cir. 1997) ..................................................... 22

Dun v. Lumbermen's Credit Ass'n,
209 U.S. 20 (1908) ............................................................... 18, 21

eBay, Inc. v. MercExch., LLC,
547 U.S. 388 (2006) ........................................................ 15, 21, 22

E.F. Johnson Co. v. Uniden Corp. of Am.,
623 F. Supp. 1485 (D. Minn. 1985) ............................................ 19

Eisai Co., Ltd. v. Teva Pharms. USA, Inc.,
2008 WL 1722098 (D.N.J. Mar. 28, 2008) ................................. 14

Elantech Devices Corp. v. Synaptics, Inc.,
2008 WL 1734748 (N.D. Cal. Apr. 14, 2008) ............................. 14

Elvis Presley Enters. v. Passport Video,
349 F.3d 622 (9th Cir. 2003) ...................................................... 18

Emory Univ. v. Nova Biogenetics, Inc.,
2008 WL 2945476 (N.D. Ga. July 25, 2008) .............................. 14

Fisher-Price, Inc. v. Safety 1st, Inc.,
279 F. Supp. 2d 526 (D. Del. 2003) ........................................... 14

Fisher-Price Toys v. My-Toy Co., Inc.,
385 F. Supp. 218 (S.D.N.Y. 1974) ............................................. 24

Foreign Car Parts, Inc. of New England v. Auto World, Inc.,
366 F. Supp. 977 (M.D. Pa. 1973) ............................................. 24

Granville v. Suckafree Records, Inc.,
2006 WL 2520909 (S.D. Tex. June 28, 2006) ............................ 25

Gund, Inc. v. Golden Bear Co., Ltd.,
1992 WL 392602 (S.D.N.Y. Dec. 10, 1992) .............................. 25

iii

Gund, Inc. v. Swank,
673 F. Supp. 1233 (S.D.N.Y. 1987) ......................................................................... 25

Harper & Row Publishers v. Nation Enters.,
471 U.S. 539 (1985) .............................................................................................. 10

Iconix, Inc. v. Tokuda,
457 F. Supp. 2d 969 (N.D. Cal. 2006) .................................................................... 22

In re Grain Land Coop,
978 F. Supp. 1267 (D. Minn. 1997) .......................................................................... 7

In re Indep. Serv. Orgs. Antitrust Litig.,
910 F. Supp. 1537 (D. Kan. 1995) ......................................................................... 19

Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,
596 F.2d 70 (2d Cir. 1979) .................................................................................... 11

Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. De C.V.,
369 F. Supp. 2d 1075 (S.D. Iowa 2005) .............................................................. 2, 3

Kikumura v. Hurley,
242 F.3d 950 (10th Cir. 2001) ............................................................................... 16

Lamb-Weston, Inc. v. McCain Foods, Ltd.,
941 F.2d 970 (9th Cir. 1991) ................................................................................. 22

Latman v. Burdette,
366 F.3d 774 (9th Cir. 2004) ................................................................................... 7

Lennon v. Premise Media Corp.,
556 F. Supp. 2d 310 (S.D.N.Y. 2008) .................................................................... 14

Los Angeles Police Protective League v. Gates,
995 F.2d 1469 (9th Cir. 1993) .............................................................................. 1, 2

MAI Sys. Corp. v. Peak Computer, Inc.,
991 F.2d 511 (9th Cir. 1993) ................................................................................... 9

Melendez v. Illinois Bell Tel. Co.,
79 F.3d 661 (7th Cir. 1996) ..................................................................................... 5

Merit Diamond Corp. v. Frederick Goldman, Inc.,
376 F. Supp. 2d 517 (S.D.N.Y. 2005) .................................................................... 24

Metro Golden Mayer Studios, Inc. v. Grokster, Ltd.,
518 F. Supp. 2d 1197 (C.D. Cal. 2007) ................................................... 14, 15, 16, 22

Microsoft Corp. v. Atek 3000 Computer Inc.,
2008 WL 2884761 (E.D.N.Y. July 23, 2008) ....................................................... 17

Microsoft Corp. v. Nop,
549 F. Supp. 2d 1233 (E.D. Cal. 2008) .................................................................. 15

Miles v. Lavender,
10 F.2d 450 (9th Cir. 1926) ..................................................................................... 8

iv

1 | Mortgage Mkt. Guide, LLC v. Freedman Report, LLC,
2 |    2008 WL 2991570 (D.N.J. July 28, 2008) ...................................................... 18, 19

3 | Natural Resources Defense Council, Inc. v. Winter,
   508 F.3d 885 (9th Cir. 2007) ................................................................................ 22

4 | Newton v. Diamond,
   204 F. Supp. 2d 1244 (C.D. Cal. 2002) ............................................................... 18

5 |
6 | Nutrition 21 v. United States,
   930 F.2d 867 (Fed. Cir. 1991) ............................................................................... 14

7 | Oakland Tribune, Inc. v. Chronicle Publ'g Co.,
   762 F.2d 1374 (9th Cir. 1985) ............................................................................... 14

8 |
9 | Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.,
   585 F.2d 821 (7th Cir. 1978) ............................................................................... 2, 5

10 | Paice, LLC v. Toyota Motor Corp.,
   504 F.3d 1293 (Fed. Cir. 2007) ............................................................................ 21

11 |
12 | Pass & Seymour, Inc. v. Hubbell, Inc.,
   532 F. Supp. 2d 418 (N.D.N.Y. 2007) ................................................................. 19

13 | Perfect Fit Indus. v. Acme Quilting Co., Inc.,
   646 F.2d 800 (2d Cir. 1981) ................................................................................. 24

14 |
15 | Perkins Marine Lamp & Hardware Co. v. Goodwin Stanley Co.,
   86 F. Supp. 630 (E.D.N.Y. 1949) ........................................................................ 23

16 | Polar Bear Prods., Inc. v. Timex Corp.,
   384 F.3d 700 (9th Cir. 2004) ........................................................................... 12, 13

17 | Price v. City of Stockton,
18 |    390 F.3d 1105 (9th Cir. 2004) ............................................................................... 22

19 | Rebis v. Universal Cad Consultants, Inc.,
   1999 WL 1000435 (N.D. Cal. Oct. 27, 1999) ..................................................... 23

20 | Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.,
21 |    944 F.2d 597 (9th Cir. 1991) ................................................................................ 14

22 | Richard Feiner & Co. v. Turner Entm't Co.,
   926 F. Supp. 40 (S.D.N.Y. 1996) ........................................................................ 21

23 | Riss & Co. v. Ass'n. of Am. R.R.,
24 |    170 F. Supp. 354 (D.D.C. 1959) .......................................................................... 21

25 | Roberts v. Coll. of the Desert,
   870 F.2d 1411 (9th Cir. 1988) ............................................................................... 2

26 | Rogers v. Koons,
27 |    960 F.2d 301 (2d Cir. 1992) ................................................................................. 23

28 | Sears, Roebuck & Co. v. Metro. Engravers,
   245 F.2d 67 (9th Cir. 1957) .................................................................................... 8

Sharpe v. F.D.I.C.,
126 F.3d 1147 (9th Cir. 1997) ................................................................. 7

Silverstein v. Penguin Putnam, Inc.,
368 F.3d 77 (2d Cir. 2004) .................................................................. 21

Singh v. Gonzales,
491 F.3d 1019 (9th Cir. 2007) .............................................................. 12

Smith & Nephew, Inc., v. Synthes,
466 F. Supp. 2d 978 (W.D. Tenn. 2006) ................................................. 14

Societe Civile Succession Richard Guino v. Int'l Found. for Anticancer
Drug Discovery,
460 F. Supp. 2d 1105 (D. Ariz. 2006) ..................................................... 24

Span-Deck, Inc. v. Fab-Con, Inc.,
677 F.2d 1237 (9th Cir. 1982) ................................................................ 5

Starter Corp. v. Converse, Inc.,
170 F.3d 286 (2d Cir. 1999) .................................................................. 22

Sunset Lamp Corp. v. Alsy Corp.,
749 F. Supp. 520 (S.D.N.Y. 1990) ......................................................... 12

Sweetheart Cup Co., Inc. v. Buchberg Inv. Holdings, Inc.,
2005 WL 1515405 (S.D.N.Y. June 23, 2005) ........................................... 22

TVT Records v. Island Def Jam Music Group,
279 F. Supp. 2d 366 (S.D.N.Y. 2003) .................................................... 23

Taylor v. Burlington Northern R. Co.,
787 F.2d 1309 (9th Cir. 1986) ................................................................ 6

Tri-State Gen. and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.,
874 F.2d 1346 (10th Cir. 1989) .............................................................. 16

Triad Sys. Corp. v. Se. Express Co.,
64 F.3d 1330 (9th Cir. 1995) ................................................................ 17

UMG Recordings, Inc. v. Blake,
2007 WL 1853956 (E.D.N.C. 2007)..................................................... 9, 14

UMG Recordings, Inc. v. Higareda,
2008 WL 3836074 (E.D. Cal. Aug. 14, 2008)........................................... 15

U.S. v. An Article of Drug,
661 F.2d 742 (9th Cir. 1981) .................................................................. 2

Universal City Studios, Inc. v. Sony Corp.,
659 F.2d 963 (9th Cir. 1981), rev'd on other grounds, 464 U.S. 417 (1984)........ 18

Vaughan v. Ricketts,
950 F.2d 1464 (9th Cir. 1991) ................................................................ 5

Velo-Bind, Inc. v. Minnesota Min. & Mfg. Co.,
    647 F.2d 965 (9th Cir. 1981) ................................................................. 12

Waldman Publ'g Corp. v. Landoll, Inc.,
    43 F.3d 775 (2d Cir. 1994) .................................................................. 22

Warner Bros. Entm't, Inc. v. Carsagno,
    2007 WL 1655666 (E.D.N.Y. June 4, 2007) ......................... 14, 15, 17

Warner Bros. Entm't. Inc. v. RDR Books,
    2008 WL 4126736 (same) ........................................................ 14, 17

Williams Elec., Inc. v. Artic Int'l., Inc.,
    685 F.2d 870 (3d Cir. 1982) ................................................................. 18

Williams v. First Gov't Mortgage and Inv. Corp.,
    225 F.3d 738 (D.C. Cir. 2000) ............................................................... 5

Windsurfing Int'l, Inc. v. AMF, Inc.,
    782 F.2d 995 (Fed. Cir. 1986) ............................................................ 18

Woods v. Universal City Studios,
    920 F. Supp. 62 (S.D.N.Y. 1996) ....................................................... 20

Yurman Design Inc. v. Chaindom Enters., Inc.,
    1999 WL 1075942 (S.D.N.Y. Nov. 29, 1999) ..................................... 25

z4 Techs. v. Microsoft Corp.,
    434 F. Supp. 2d 437 (E.D. Tex. 2006) ................................................ 18

## Statutes

17 U.S.C. § 502(a) ....................................................................... 6

17 U.S.C. § 503(b) ..................................................................... 23

17 U.S.C. § 504(b) .................................................................. 6, 12

17 U.S.C. § 504(c)(1) ................................................................... 7

## Other Authorities

H.R. Rep. No. 94-1476, at 160 (1976) ...................................... 23

**Preliminary Statement**

What is most striking about defendants' opposition is what is missing. Defendants all but ignore the detailed facts that are the basis of Mattel's motion: they do not contest that *all* Bratz fashion dolls are based on the same sculpt; they do not challenge Mattel's proof that the sculpt is based on Bryant designs owned by Mattel, incorporates the specific elements this Court held were protectable and infringes. They do not deny that absent an injunction they will continue to produce Bratz dolls based on the infringing sculpt. And they do not address Mattel's ownership of the four original Bratz characters, nor challenge Mattel's showing that they continue to copy them. Instead, defendants speculate that the jury's award of infringement damages implied a finding that only the first generation dolls infringe, and insist the Court is bound by their speculative, and unsupported, interpretation of the verdict. MGA is engaged in massive, ongoing infringement. It should be enjoined.

**Argument**

**I.   THE COURT HAS AUTHORITY TO GRANT MATTEL THE INJUNCTIVE RELIEF IT SEEKS**

Defendants argue the Court lacks authority to award injunctive relief because (1) it is bound by the jury's damage award which purportedly limits their copyright infringement to the first generation Bratz dolls; and (2) Mattel's election to seek future damages at trial against Larian precludes it from now seeking an injunction against the defendants. These assertions are wrong on both the facts and law.

**A.   Only Specific and Unambiguous Jury Findings Bind the Court**

Where a plaintiff seeks both legal and equitable relief, the Seventh Amendment requires the legal claims to be tried first to a jury. See Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 508-09 (1959). A judge then deciding equitable claims "based on the same facts" is bound by traditional principles of issue preclusion to follow the jury's factual determinations. Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993). "Any actual issues *necessarily and actually decided by the*

1

1 *jury* are foreclosed under settled principles of collateral estoppel from subsequent
2 reconsideration by the district court." Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc., 585
3 F.2d 821, 844 (7th Cir. 1978) (emphasis added).

4      A general verdict that lacks specific factual findings as to the scope of liability
5 does not bind a court in determining the proper scope of injunctive relief. See Roberts v.
6 Coll. of the Desert, 870 F.2d 1411, 1418 (9th Cir. 1988) (district court not bound by
7 general verdict where "it is impossible to say upon which theory . . . the jury imposed
8 liability."). Where "it is impossible to tell from [a] general verdict" the specific factual
9 findings the jury made, the court may award injunctive relief "based upon [its own] view
10 of the facts established by the evidence." U.S. v. An Article of Drug, 661 F.2d 742, 746-
11 47 (9th Cir. 1981); see Burton v. Armontrout, 975 F.2d 543, 545 (8th Cir. 1992)
12 (affirming injunction despite jury verdict of *no* liability: where "general verdict
13 directive did not allow the jury to make specific factual findings upon which the district
14 court could rely when crafting or denying the injunction," it was "proper for the court to
15 supply its own factual findings to supplement the jury's verdict"); Blake v. Hall, 668
16 F.2d 52, 54 (1st Cir. 1981) (trial judge not bound in equity despite jury verdict of *no*
17 liability where issues decided by jury in general verdict could not be determined).

18      The size of a damages award is relevant to the availability of equitable relief only
19 where the amount of the verdict "*makes it a mathematical certainty*" that the jury found
20 the specific facts that control the scope of such relief. Ohio-Sealy, 585 F.2d at 844
21 (emphasis added); see Los Angeles Police, 995 F.2d at 1474 (the jury "could *not* have
22 awarded the level of damages it awarded without finding that [plaintiff] would not have
23 been discharged except for his refusal to be illegally searched.") (italics in original).
24 Liability, not damages, controls the appropriate scope of injunctive relief. See Roberts,
25 870 F.2d at 1418 (examining which theory of *liability* the jury accepted); An Article of
26 Drug, 661 F.2d at 746-47 (same). Injunctions frequently issue even where the damages
27 awarded are less than what plaintiffs sought. See, e.g., Kemin Foods, L.C. v. Pigmentos
28 Vegetales Del Centro S.A. De C.V., 369 F. Supp. 2d 1075, 1083 (S.D. Iowa 2005)

1  (rejecting claim that "the amount of the jury awarded somehow indicates the jury did not
2  find the modified process infringing").

3  ### B.  The Jury Did Not Find That Only First Generation Dolls Infringe

4  At the 1(b) charging conference, the Court recognized it would ultimately be
5  required to determine the scope of infringement itself for purposes of equitable relief
6  because of limitations on the evidence: "[A]t the end of the day…I'm going to have to
7  re-evaluate all the products myself before I can make the injunction findings or grant the
8  injunctive relief.  *I am not going to be able to rely upon a jury verdict or a jury*
9  *questioning* which simply answers the question with respect to some but not all [of the
10 products]."[1]  MGA argued against the verdict form ultimately adopted by the Court
11 precisely because it would not produce specific findings as to the scope of infringement:
12 "They just want to say was there infringement?  *And we'll never know, was it the first*
13 *generation?  Was it all of the fashion dolls?  … Was the net cast even wider?*"[2]  As MGA
14 points out, the Court recognized this as well.  (Opp. at 19) (quoting the Court: "we will
15 not know specifically what the jury found to be direct infringement and what they found
16 to be derivative of indirect damage").  In part because the more detailed form requested
17 by MGA would not have alleviated the burden on the Court to determine for itself the
18 scope of infringement,[3] the Court proceeded with a general verdict form.[4]

19 MGA argues the size of the damages award demonstrates the jury found that only
20 the first generation Bratz dolls infringe.  But MGA cannot explain the jury award on this

21
22
---
[1] Trial Tr. at 8015:20-8016:1 (emphasis added).
[2] Trial Tr. at 8025:2-8 (emphasis added).
[3] Trial Tr. at 8014:14-20.
23 [4] MGA claims injunctive relief should be denied because Mattel, in advocating a general
24 verdict form, "should not be able to profit by its own failed litigation tactic." Opp. at 19. The
assertion is baseless. MGA proposed a detailed verdict form but limited the questions to
direct infringement and excluded questions regarding indirect infringement. Mattel opposed
25 this selective framing of the questions, which ignored a large component of its case. The
Court expressed concerns with MGA's selective framework as well. Trial Tr. at 8023:14
26 ("Why are we drawing this line in the sand about direct infringement?"); Trial Tr. at 8023:9-
13 ("should we not also ask …do you find this is derivative or not derivative, whether this is
27 indirect or not direct?"). Mattel's opposition to this inappropriate form has no bearing on its
entitlement to relief. <u>Kemin Foods</u>, 369 F. Supp. 2d at 1084 (rejecting argument that plaintiff
28 cannot "benefit from opposing … specific questions" in favor of general verdict form).

1  basis. Its own damages expert, Paul Meyer, testified that MGA's total profits for sales of

2  first generation dolls were $4 million, and that the share of those profits attributable to

3  Bryant's designs was zero.[5]  MGA cites the August 22, 2008 jury note addressed to the

4  "dilemma" of "appropriation" (likely meaning "apportionment") of "1st generation $4

5  million profit" to support its interpretation of the jury verdict, but the note does just the

6  opposite.  Had the jury actually found that only the first generation dolls infringed, it

7  would necessarily have awarded damages *under* $4 million.  In fact, it awarded two-and-

8  a-half times that in copyright damages.[6]  MGA has no explanation for this, suggesting

9  only the jury might have thought "that MGA's proffer of $4 million in profits on nearly

10  $80 million revenue was a bit low."[7]  One can also speculate the jury may have based its

11  award on MGA's assertion that it was in dire financial straits as a result of the verdict in

12  Phase 1(a).[8]  Or they may have taken into account the evidence introduced by MGA and

13  later ruled inadmissible by the Court as to the likelihood of injunctive relief, and the

14  impact such relief would have on MGA's ability to satisfy an award.[9]  For the Court to

15  be bound, MGA must prove the *only* possible explanation of the verdict--to a

16  mathematical certainty--is that the jury decided MGA's infringement was limited to the

17  first four Bratz dolls.  That MGA is reduced to speculation about what the jury

18  "apparently agreed" to in its verdict (Opp. at 25) proves it cannot meet this standard.[10]

19

20

21      [5]  Trial Tr. at 7778:2-7779:6; 7784:1-9.
       [6]  MGA also improperly ignores the entirety of the jury's damages award--$100 million.

22  See Bains LLC v. Arco Prods. Co., Div. of Atl. Richfield Co., 405 F.3d 764, 771-72 (9th Cir. 2005) (cited by MGA) (award of $1 for 42 U.S.C. § 1981 violation did not show no economic

23  harm because jury awarded $50,000 for breach of contract and jury may have thought "putting the same $50,000 under both the § 1981 and the breach of contract causes of action

24  would be double counting").
       [7]  Opp. at 21 n.30.

25      [8]  Trial Tr. at 6392:9-6393:7; 6395:1-6396:24; 6398:16-6399:16; 7760:1-17.
       [9]  Trial Tr. at 6385:17-6386:14.

26      [10]  See also Meyer Decl., dated October 13, 2008, at ¶¶ 12, 13 (speculating about alternative findings jury "may have" made). MGA's contention that the evidence introduced

27  at trial was "consistent with" a finding that only the first dolls infringed (Opp. at 22-25) is irrelevant under the applicable rules. The question is not whether evidence "consistent with"

28  a putative jury finding was introduced, but whether the putative finding necessarily was made.

1    The case law is uniform that in these circumstances there is "no reason to pluck
2    from the verdict speculative findings not necessarily reached by the jury." Melendez v.
3    Illinois Bell Tel. Co., 79 F.3d 661, 670 (7th Cir. 1996); accord Bridgeport Music, Inc. v.
4    Justin Combs Pub., 507 F.3d 470, 484 (6th Cir. 2007) ("Because the jury simply
5    returned a numerical amount for damages, and did not specify how it calculated
6    damages, there is no way of knowing the jury's reasons for rejecting defendants'
7    arguments."). Where "nobody can say what the jury found the facts to be," the "jury's
8    verdict can . . . have no binding effect on the district court's subsequent factfinding."
9    Williams v. First Gov't Mortgage and Inv. Corp., 225 F.3d 738, 748 (D.C. Cir. 2000)
10   (citations omitted). MGA does not cite a single contrary case.[11]

11   Ignoring these precedents MGA urges the Court to "harmonize the jury's
12   findings," Opp. at 20, by equating the damages award with a finding of limited
13   infringement. But the cases cited by MGA deal with a court's duty to harmonize
14   verdicts that might be considered inconsistent, not with the binding effect of jury
15   factfinding. "[W]here inconsistent verdicts are alleged, the test is not whether there was
16   substantial evidence for the jury's conclusion, but whether it is possible to reconcile the
17   verdicts." Vaughan v. Ricketts, 950 F.2d 1464, 1470 (9th Cir. 1991). The duty to
18   harmonize requires a court to do precisely what the doctrine of issue preclusion
19   prohibits: to ask what the jury "could have found," id., rather than what it "necessarily
20   and actually decided." Ohio-Sealy, 585 F.2d at 844. These authorities have no
21   application here. MGA offers no basis to conclude that the jury actually and necessarily
22   made specific findings that preclude the injunctive relief Mattel seeks.[12]

---

[11]  MGA makes much of the fact that counsel for Mattel at one point suggested the jury's
damage award might enable the Court to discern the scope of infringement. Opp. at 28-29. It
was certainly possible that the jury would agree to an award of damages that so clearly and
unequivocally matched one or more of the expert's calculations that it would have established
the scope of infringement to "a mathematical certainty." But as MGA's labored efforts to
explain the damages actually awarded make clear, that did not happen. The Court, as it
predicted, must make the necessary factual findings as to the scope of infringement.
[12]  To the extent the jury's verdict permits any presumption, it is a presumption that
*everything* Mattel put at issue infringes given the jury's general verdict of infringement.
Span-Deck, Inc. v. Fab-Con, Inc., 677 F.2d 1237, 1241 n.5 (9th Cir. 1982) ("A general
(footnote continued)

## C. The Jury Verdict as to the Current Value of Isaac Larian's Stock is Irrelevant to the Court's Authority to Grant Injunctive Relief

Defendants argue that because Mattel used future Bratz profits as one of three ways to determine Larian's *current* benefit from his infringement of Mattel's copyrights, 17 U.S.C. § 504(b), Mattel elected never to seek to enjoin MGA, MGA Hong Kong and Larian from selling infringing products. The argument is wrong on the facts and law.

First, even according to defendants, Mattel never sought future damages from MGA or MGA Hong Kong. Thus, Mattel may seek to enjoin those defendants.

Second, Mattel never sought future damages from Larian, nor could it. The Copyright Act permits a plaintiff to obtain both damages, which redress past infringement, and a permanent injunction. 17 U.S.C. §§ 502(a), 504; see 6 Patry on Copyright § 22:78 ("May the court award a permanent injunction if monetary damages have already been awarded by the trier of fact?  The answer is clearly yes:  monetary damages are awarded for past harm, while injunctive relief is intended to prevent future harm."). "Future damages are not awardable," id. § 22:101, nor are "future[] profits." Id. § 22:116 (citing Sheldon v. MGM Pictures Corp., 309 U.S. 390, 400 (1940) ("The infringer is liable for actual, not for possible, gains.")). Mattel never sought an award of damages for future sales; the only issue was how much of the *current* value of Larian's interest in MGA was attributable to infringement.[13]  "The doctrine of election of remedies is no longer strictly enforced in the federal courts," Taylor v. Burlington Northern R. Co., 787 F.2d 1309, 1317 (9th Cir. 1986), and does not apply here.

---

verdict, without more, will of course give rise to the presumption that material fact issues have been resolved in favor of the prevailing party."); Beverage Distrib., Inc. v. Olympia Brewing Co., 440 F.2d 21, 25 n.4 (9th Cir. 1971) (by issuing a general verdict, jury resolved all material issues in plaintiff's favor).

[13]  Mattel's expert used three generally accepted measurements (income approach, comparable companies approach, comparable transactions approach) to place a *current* value on Larian's MGA stock.  See Trial Ex. 13932, Hauss Decl. Ex. 5; Trial Tr. at 6299:25-6304:14.  MGA conceded that none of these approaches actually addresses future damages. Trial Tr. at 6434:19-6435:7.

1    Third, the Copyright Act permits the election of remedies "at any time before final

2 judgment is rendered."  17 U.S.C. § 504(c)(1) (election between statutory and actual

3 damages).  In response to MGA's Motion in Limine No. 7 the Court advised Mattel that

4 it would have to elect its remedies if the Court enjoined MGA at a later date.  But any

5 earlier election would be "entirely premature":

6       Certainly, at the end of the day, if the Court, for example, imposes an
        injunction, assuming that a copyright infringement were to be found or if
7       the damages being returned clearly do play out to be double counting,
        Mattel will have to exercise a choice of remedies, and some of that
8       damage, or entire portions of that damage, may have to be set aside.  But at
        this point, I think it would be entirely premature to force Mattel to choose
9       between, for example, profits obtained by MGA versus profits obtained by
        Isaac Larian.[14]
10
To permit an election later, the Court required the parties to "spell out on the verdict
11
form these various permutations and these various categories of damages so that if
12
damages are returned against MGA or Isaac Larian, we would be in a position post-trial
13
to make the appropriate rulings."[15]   The parties acknowledged that any potential
14
duplication between damages and injunctive relief would be resolved with the verdict
15
form.[16]  And it was.  The Court ruled, properly,[17] that Mattel could go forward with its
16
damages claims and also seek an injunction; MGA's "gotcha" suggestion that Mattel is
17
nevertheless barred from seeking such relief fails.  See Latman v. Burdette, 366 F.3d
18
774, 781-82 (9th Cir. 2004) (cited by MGA) (no election of remedies where party has
19

20    ———————————
      [14]  Trial Tr. at 5230:2-5231:25 (denying MGA Motion in Limine No. 7).
21    [15]  Id.
      [16]  Trial Tr. at 6430:10-12 (Mr. Quinn: "We're not going to get--I think this is something
22 that's going to be solved by the verdict form."); Trial Tr. at 6431:10-11 (Mr. Kennedy: "I
   suggest this is something that perhaps can be taken care of by the verdict."); Trial Tr. at
23 8012:18-25 (Mattel acknowledging, with the Court's agreement, that the purpose of the two
   questions about Mr. Larian's copyright liability was "if the Court issues an injunction, that
24 present value [of Mr. Larian's stock attributable to Bratz] could be changed."); see generally
   Trial Tr. at 8011:19-8012:25.
25    [17]  Courts require parties to elect a remedy prior to trial only if a defendant can show
   "substantial prejudice."  See, e.g., Sharpe v. F.D.I.C., 126 F.3d 1147, 1153 (9th Cir. 1997)
26 ("only if the plaintiffs' actions cause substantial prejudice to the defendant are the plaintiffs
   required to make a binding election of remedies prior to judgment"); In re Grain Land Coop,
27 978 F. Supp. 1267, 1278 (D. Minn. 1997) (refusing to force plaintiff to choose between
   alternative remedies prior to judgment because defendants "have not been substantially
28 prejudiced and there is little chance of double recovery").

1 | not "affirmatively chosen[] or elected" one remedy over another); <u>Miles v. Lavender</u>, 10
2 | F.2d 450, 454 (9th Cir. 1926) (party must take "decisive act" that reflects "full
3 | knowledge" that remedies are inconsistent for there to be an election of remedies).[18]

4 |     Finally, the jury did not find, by awarding zero damages for Larian's stock value,
5 | that there would be no future infringement. The verdict form said nothing about
6 | damages for sales of Bratz works in the future; the relevant question merely asked for
7 | the "Value of Mr. Larian's ownership percentage of MGA attributable to Bratz-related
8 | works."[19] The jury instructions did not address future damages either.[20] MGA contends
9 | the jury understood the nuances of Wagner's valuation of Larian's stock using a
10 | comparable companies analysis, a comparable transactions analysis, and an income
11 | analysis; disregarded the first two as a basis for the valuation analysis; relied solely on
12 | the discounted present value analysis; and then rejected that analysis since it found no
13 | future infringement.[21] But MGA ignores the opinion Meyer rendered (over Mattel's
14 | objection) relating to the value of Larian's stock: that as a result of the jury's verdict in
15 | Phase 1A and other uncertainties "you could not place a value on Mr. Larian's interest at
16 | this point in time. *You just could not do that*."[22] It is far more plausible that the jury
17 | concluded, as MGA itself urged, that it could not value Larian's stock at that moment
18 | than that it performed the sophisticated sorting of Wagner's methods that MGA now
19 | plucks from the verdict.[23] If both readings are possible, the Court is bound by neither.

---

[18] MGA's cases are off point. <u>See, e.g.</u>, <u>Sears, Roebuck & Co. v. Metro. Engravers</u>, 245 F.2d 67, 69-70 (9th Cir. 1957) (relying on "one recovery" doctrine where plaintiffs levied a writ of attachment in a prior state case based on the same facts); <u>3M Co. v. Pribyl</u>, 259 F.3d 587, 608 (7th Cir. 2001) (agreeing with plaintiff's assertion that "payment of monetary damages should have *no* impact on the court's decision to grant a permanent injunction against use," and upholding partial permanent injunction).

[19] Phase 1(b) Verdict Form As Given at ¶ 11(b), Hutnyan Decl. Ex. 3.

[20] Jury Instruct. Nos. 41-42 (silent as to profits from future sales), Hutnyan Decl. Ex. 4.

[21] <u>See</u> TX 13932, Hauss Decl. Ex. 5; Trial Tr. at 6300:10-17.

[22] Trial Tr. at 7757:25-7760:12 (emphasis added).

[23] <u>Cf.</u> <u>Bains</u>, 405 F.3d at 771 (award of $1 for § 1981 violation did not show lack of economic harm because jury may have found that "even though lost profits were proved, the 'amount' of lost profits could not be established 'with reasonable certainty'"). Contrary to MGA's claim (Opp. at 5:3-4), the jury's denial of damages for the current value of Larian's stock actually shows the election of remedies doctrine does not apply; the thrust of the doctrine is to prevent double recovery, and there is no double recovery threat in this case.

7209/2675259.3

MATTEL, INC.'S REPLY IN SUPPORT OF MOTION FOR A PERMANENT INJUNCTION

1    **II.     THE COURT SHOULD ENJOIN DEFENDANTS' INFRINGEMENT**

2            It has long been the law that a finding of past infringement coupled with a threat

3    of future infringement warrants an injunction. E.g., MAI Sys. Corp. v. Peak Computer,

4    Inc., 991 F.2d 511, 520 (9th Cir. 1993) ("As a general rule, a permanent injunction will

5    be granted when liability has been established and there is a threat of continuing

6    violations."). Post-eBay, as before, the issuance of an injunction upon a showing of

7    copyright infringement is the norm, not "extraordinary" as MGA insists (Opp. at 13).[24]

8            **A.     MGA Is Engaged In Ongoing Acts of Infringement**

9            MGA is engaged in widespread, ongoing infringement. Claiming only that the

10   jury found otherwise, MGA does not seriously attempt to answer the proof in Mattel's

11   motion. It does not seek to explain away its admissions showing its ongoing

12   infringement.[25]  It does not dispute the evidence of its infringement of Mattel's

13   characters, except to speculate the jury found otherwise.[26] It does not deny that the

14   original four dolls and all later dolls are based on the same sculpt.[27]

15           MGA suggests the jury "could have found" that only "the first generation clothing

16   and packaging" -- and not the sculpt  -- are infringing. (Opp. at 23.) MGA points out

17   that Leahy claimed not to use Bryant's "drawings" to create "her sculpt,"[28] but does not

18   acknowledge the jury's contrary finding that *Mattel owns* that sculpt (or Leahy's

19   admissions that Bryant gave her his drawings so she could do the sculpt).[29]  MGA

20   suggests it jointly owns the sculpt, but does not acknowledge the Court's rejection of that

21

22   [24] See, e.g., Bertram Music Co. v. Yeager Holdings of Cal., Inc., 2008 WL 2055480, at *2 (E.D. Cal. 2008) ("Generally, a showing of copyright infringement liability and the threat of future violations is sufficient to warrant a permanent injunction."); Arista Records LLC v.

23   Furia Sonidera, Inc., 2007 WL 922406, at *4 (E.D.N.Y. 2007) (same); UMG Recordings, Inc. v. Blake, 2007 WL 1853956, at *2 (E.D.N.C. 2007) (same); Disney Enters., Inc. v. Merchant,

24   2007 WL 1101110, at *6 (N.D.N.Y. 2007) ("Permanent injunctions are routinely awarded in favor of copyright owners whose protected works have been misappropriated in order to serve

25   the public's interest in upholding copyright protections.").
        [25] Mot. at 8-12.

26      [26] Mot. at 12-13; Opp. at 27 n.42.
        [27] Mot. at 3-7.

27      [28] Opp. at 23.
        [29] Phase 1(a) Final Verdict Form As Given at ¶ 4, Hutnyan Decl. Ex. 1; Trial Tr. at

28   4311:15-4312:15, 6839:18-22.

1   contention.[30]  MGA says Leahy testified to "dozens of changes" between sculpts, but
2   ignores her admissions that those changes were done to make the doll "feasible" and
3   "producible," and generally did not involve changes to the elements the Court found
4   protectible.[31]  Garcia admits she "asked Margaret to create a sculpt to match what she
5   understood to be the drawings in Carter's portfolio" and that "the exercise was to create a
6   3D version of those 2D drawings."[32]  Bryant admits that "the final sculpt" was created
7   from drawings owned by Mattel.[33]  Garcia "tried to stay true" to Bryant's vision.[34]

8        MGA's unfettered access to Mattel's works is undisputed, and a visual comparison
9   shows substantial similarity.[35]  MGA admitted "the look" of the first generation dolls
10  was "similar" to Mattel's works,[36] yet there is no basis to distinguish between the first
11  generation Bratz dolls and all others; they all are the same doll, all based on and
12  developed from Mattel's sculpt and drawings.  Any minor changes or additions MGA
13  made were just that: minor adjustments that did not eliminate the underlying substantial
14  similarity.[37]  The entire line of core Bratz fashion dolls is infringing, as is MGA's

15

16

17

18  [30] Opp. at 23 n. 34.  See Trial Tr. at 6907:24-6909:7 ("Moreover, the jury's finding with respect to conversion in particular, but as well as the other torts, seem to completely vitiate any basis to argue joint ownership at this point -- or joint authorship at this point.  But that
19  aside, this is -- this was clearly waived.").  MGA's claim that Mattel did not argue in its closing argument that this sculpt was a basis for an infringement, Opp. at 23 n.34, is mistaken.
20  See Trial Tr. at 8143:23-8144:23; 8153:21-8154:1; 8154:14-18.
     [31] Trial Tr. at 4160:11-19; 4364:15-4365:15; 4366:16-19 (the changes Leahy made were
21  to make the doll "producible"); 6794:6-11 ("overall effect" of the changes was to make it "producible"); 6847:22- 6848:1 ("the factors that MGA say are unique to the dolls" are in
22  Bryant's drawings).
     [32] Trial Tr. 642:7-25; 644:25-645:6, 651:14-652:7; 800:6-17.
23  [33] Trial Tr. 6665:8-6667:11.
     [34] TX 10001, Hutnyan Decl. Ex. 15.
24  [35] See generally Proctor Dec. ¶¶ 3-88, Exhs 1-55.  MGA's suggestion that Mattel conceded its infringement case "focused" on the first generation dolls, Opp. at 24 n.37, is
25  erroneous.  See Trial Tr. at 8029:18-8030:14 (arguing that even merchandise is directly infringing where it has an image of the Bratz characters" on it, but primary damages theory
26  as to merchandise like "helmets" was indirect profits).
     [36] Trial Tr. at 5530:24-5531:9, 5509:18-5510:1.
27  [37] See Harper & Row Publishers v. Nation Enters., 471 U.S. 539, 565 (1985) ("'no plagiarist can excuse the wrong by showing how much of his work he did not pirate.'")
28  (quoting Hand, J).

1  continued depictions of the original characters, its advertising and packaging that utilize

2  images of infringing dolls, and the licensing program for Bratz-related products.[38]

3         **B.**    **The Prospect That MGA Will Not Be Able To Fully Compensate**

4                    **Mattel For Its Ongoing Infringement Shows Irreparable Harm**

5        Regardless of what presumptions are applied, it is universally recognized that the

6  prospect of uncompensated harm is irreparable injury.[39]  MGA does not dispute that

7  potential inability to pay damages constitutes irreparable harm, but claims that Mattel

8  "has not provided a sufficient evidentiary showing" of inability to pay. (Opp. at 13.)

9        MGA rests its own case on a single paragraph in the declaration of its expert, Paul

10  Meyer: "According to Mattel's expert Mr. Wagner (based on data through June 30,

11  2008), the present value of MGA's projected future income or profit from Bratz is

12  $283.7 million. This amount should be more than sufficient to satisfy any past or future

13  damage award."[40]  But nowhere in his declaration does Meyer himself state that MGA

14  will be able to satisfy a damage award, and at trial MGA and Meyer urged the jury to

15  reject Wagner's valuation (and the jury did not award damages based on that

16  valuation).[41]  Moreover, the $283.7 million figure Wagner calculated was based on data

17  through June 2008; it was months later that MGA trumpeted its financial woes as a

18  result of the 1(a) verdict to this Court and the Ninth Circuit.[42]  MGA faults Mattel for not

19  submitting evidence that post-dates the 1B verdict (Opp. at 13:10-18), but Mattel has not

20

21      [38]   As discussed above, the Court is not bound by any jury finding of no ongoing infringement because there was no such finding. But even if there were the Court would not

22  be bound. A jury finding of no ongoing infringement, were there one, would appropriately be set aside in light of the overwhelming evidence that the entire Bratz line of dolls, all of which

23  are based on the same infringing sculpt, is infringing. See Mattel's Mot. for Judgment as a Matter of Law dated, August 18, 2008, Decl. of Stephen M. Hauss ("Hauss Decl.") Ex. 1.

    [39]   See, e.g., CoxCom, Inc. v. Chaffee, 536 F.3d 101, 112 (1st Cir. 2008) (irreparable harm

24  exists when there is "'substantial injury that is not accurately measurable or adequately compensable by money damages'") (citation omitted); Jackson Dairy, Inc. v. H.P. Hood &

25  Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979) ("For it has always been true that irreparable injury means injury for which a monetary award cannot be adequate compensation").

26      [40]   Meyer Decl. at ¶ 18.

    [41]   Trial Tr. at 7693:19-25; 7699:11-7702:1; 7757:3-7758:8; 7760:1-17; 8226:12-8228:23;

27  8235:7-8236:7.

    [42]   Decl. of Isaac Larian in Support of MGA's Pet. for a Writ of Mandamus dated August

28  7, 2008, Hutnyan Decl. Ex. 84 at ¶¶ 3-5; Hutnyan Decl. Exs. 87-89.

1   had been able to obtain financial discovery since then. Only MGA could provide such

2   evidence. Tellingly, it did not. See Singh v. Gonzales, 491 F.3d 1019, 1024 (9th Cir.

3   2007) ("'When a party has relevant evidence in his control which he fails to produce, that

4   failure gives rise to an inference that the evidence is unfavorable to him.'").

5   ### C.   Mattel's Marketplace Losses Constitute Irreparable Harm

6   MGA's continued production of infringing Bratz dolls will cause Mattel market

7   losses that cannot be precisely measured. That too is irreparable harm.

8   MGA argues that any loss in market share is irrelevant because Mattel's losses to

9   date have been in sales of non-Bratz products, and the injury was not "to the infringed

10  materials."[43] "[I]nfringed materials" do not suffer injuries -- plaintiffs do. As a plaintiff,

11  Mattel is entitled to protection from *all* injuries it suffers as a proximate result of MGA's

12  ongoing and future infringement; there is no restriction to "infringed materials"

13  damages. See 17 U.S.C. § 504(b) ("The copyright owner is entitled to recover the actual

14  damages suffered by him or her as a result of the infringement."); Polar Bear Prods., Inc.

15  v. Timex Corp., 384 F.3d 700, 708 (9th Cir. 2004) (awards of copyright damages are

16  governed by traditional tort principles of causation and damages).[44]

17

18  [43] Opp. at 11 (underline in original).
    [44] In Polar Bear, the plaintiff sought to recover as copyright damages "the company's
19  losses during the period of Timex's infringement [which] totaled $200,000." 384 F.3d at 709.
    The Ninth Circuit rejected this theory, but only because it was speculative on the particular
    facts. Id. at 710 ("It is too speculative to say that Timex's failure to pay a modest license fee
20  was the cause of Polar Bear's business failure."). Nowhere did the court suggest that the
    plaintiff's theory of damages was inherently flawed because general business losses are not
21  available for copyright infringement where a plaintiff can show proximate causation. See also
    Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1171 (1st Cir. 1994)
22  (affirming $27 million award in general business losses caused by infringement: "A plaintiff
    may seek compensation for both direct and 'indirect' losses, as long as the losses claimed are
23  not unduly speculative."); Sunset Lamp Corp. v. Alsy Corp., 749 F. Supp. 520, 523-25
    (S.D.N.Y. 1990) (permitting plaintiff to seek copyright damages measured by lost sales on
24  non-infringed items); 4 Nimmer on Copyright, §14.03[B][2][a] at 14-46.2, 14-47 ("As long
    as proximate causation is demonstrated, it would seem that profits 'attributable to
25  infringement' could include even those profits attributable only indirectly," although "claims for
    indirect profits are more frequently unsuccessful" because such damages can be speculative).
26  In any case, now that Mattel can produce dolls based on its own designs, the prospect of
    future market losses in the "infringed works" is real.
27  Velo-Bind, Inc. v. Minnesota Min. & Mfg. Co., 647 F.2d 965, 972-73 (9th Cir. 1981), on
    which MGA relies, is off point. The court did not permit recovery of lost profits in other
28  products there because the plaintiff's theory "comes close to asking the court to give de facto
    (footnote continued)

1   MGA also absurdly claims that Mattel "failed to <u>factually</u> establish" that it lost
2   market share to Bratz.[45]  Yet MGA does not deny that its core business model is for
3   Bratz to take Mattel's market share, nor its touting of its success in doing so.[46]  MGA
4   asserts that Mattel's CFO "testified that Mattel's market share had **not** been affected by
5   Bratz," (Opp. at 11) (emphasis in original), but in fact he acknowledged that Bratz *has*
6   taken Mattel's market share.[47]  Other Mattel witnesses acknowledged the same.[48]  Even
7   in its opposition to this motion MGA claims it is "Mattel's chief competitor in the doll
8   industry."[49]  It is beyond plausible dispute that Mattel has suffered market share loss
9   because of MGA's infringement, and will continue to do so absent an injunction.

10   MGA urges this loss "can be recompensed through legal damages."[50]  But courts
11   often deny monetary relief on market loss theories precisely because these losses are
12   difficult to calculate.  See, e.g., <u>Anza v. Ideal Steel Supply Corp.</u>, 547 U.S. 451, 458-59
13   (2006) (calculating loss of market share would be speculative); <u>Polar Bear</u>, 384 F.3d at
14   709-10.  Market losses also give rise to other losses that are even harder to quantify.
15   <u>Bus. Trends Analysts, Inc. v. Freedonia Group, Inc.</u>, 887 F.2d 399, 404 (2d Cir. 1989)
16   (copyright holder may recover for effects of infringement on "good will and market
17   recognition," but quantifying such effects "may be difficult").  The prospect of these
18   losses justifies an injunction.  See, e.g., <u>Cadence Design Sys. v. Avant! Corp.</u>, 125 F.3d
19   824, 828 n.6 (9th Cir. 1997) (reversing finding of no irreparable harm: "[O]ne wonders

20

21   recognition to a tieing relationship which would be illegal," and based on a patent rule that
    "[i]ndirect consequential damages" are not available, which is contrary to copyright law.
        [45] Opp. at 10 (underlining in original).
22       [46] See Mot. at 23 & n.98, n.99; see also Trial Tr. at 7680:10 - 12 ("Q: Mr. Larian, do you
23   compete with Mattel in the marketplace?  A: Yes, fiercely.  Q: For how long?  A: For the
    past seven years.  Q: Do you want to kick their ass in the marketplace?  A: Yes, I do.").
        [47] Farr Tr. at 17:12-21 ("I think Bratz has affected it."), 200:1-16 ("we did have
24   competitive incursions . . . . I think we had a competitor, MGA, gained market share.  It
25   actually increased market share in fashion dolls and gained market share."), Roth Decl. Ex. B.
        [48] See, e.g., Trial Tr. at 405:15 - 20 ("A: [Mattel] definitely lost some market share to
26   Bratz"); Cassidy Park Depo Tr. at 155:7–11, 155:21-24 (similar), Hauss Decl. Ex. 2; Robert
    Eckert Depo. Tr. at 43:8-11 (similar), Hauss Decl. Ex. 3.
        [49] Opp. at 15.  Similarly, MGA's counsel argued in closing, "Mattel and MGA compete
27   in the marketplace.  And you now know that for 40 years, Barbie was the only doll in town,
28   and Bratz came in and knocked her off her pedestal."  Trial Tr. at 4902:6-8.

13

how [plaintiff] could prove how many sales it lost because of the presence of [defendant's] infringing software"); Elantech Devices Corp. v. Synaptics, Inc., 2008 WL 1734748, at *10 (N.D. Cal. Apr. 14, 2008) (granting injunction because "lost market share may be difficult to calculate and compensate with money damages").[51]

## D. Even If It Could and Would Be Compensated, Mattel Will Still Suffer Irreparable Harm Absent An Injunction

MGA's extraordinary interference with Mattel's exclusive rights also constitutes irreparable harm. MGA argues Mattel "cannot rely on the pure fact of infringement" to show irreparable harm after eBay, (Opp. at 12) (quoting Metro Golden Mayer Studios, Inc. v. Grokster. Ltd., 518 F. Supp. 2d 1197, 1211 n.3 (C.D. Cal. 2007)), and suggests its infringement of Mattel's exclusive rights is therefore inconsequential.[52] But post-eBay

[50] Opp. at 6.
[51] See also, e.g., Emory Univ. v. Nova Biogenetics, Inc., 2008 WL 2945476, at *5 (N.D. Ga. July 25, 2008) (granting injunction because the negative effects of injuries such as lost market share "would be difficult to quantify solely through monetary damages"); Smith & Nephew, Inc., v. Synthes, 466 F. Supp. 2d 978, 983 (W.D. Tenn. 2006) (loss of market share and the resulting lost profits and loss of brand name recognition "constitute injuries that are both incalculable and irreparable"); Fisher-Price, Inc. v. Safety 1st, Inc., 279 F. Supp. 2d 526, 528 (D. Del. 2003) ("[A] legal remedy is inadequate to redress the loss in market share . . .").
[52] The cases on which MGA relies are either wholly inapposite or merely show that market share losses may be compensable in cases with different facts. See, e.g., Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991) (making no mention of lost market share but finding that loss of goodwill is irreparable harm and upholding preliminary injunction); Oakland Tribune, Inc. v. Chronicle Publ'g Co., 762 F.2d 1374, 1376 (9th Cir. 1985) (non-copyright case where plaintiff did not dispute lost sales were compensable with monetary damages); Nutrition 21 v. United States, 930 F.2d 867, 872 (Fed. Cir. 1991) (rejecting claim of irreparable harm that was without "an adequate supporting record" in preliminary injunction context where patent may not have been valid).
[52] The presumption of harm is a longstanding feature of copyright law. Cadence, 125 F.3d at 827 n.4. As several courts have recognized, eBay does not reject this presumption by its terms, and instead rejects only the Federal Circuit's presumption of an injunction. Warner Bros. Entm't. Inc. v. RDR Books, -- F. Supp. 2d --, 2008 WL 4126736, at *34 (S.D.N.Y. Sept. 8, 2008); Eisai Co., Ltd. v. Teva Pharms. USA, Inc., 2008 WL 1722098, at *10 (D.N.J. Mar. 28, 2008); Lennon v. Premise Media Corp., 556 F. Supp. 2d 310, 320 n.1 (S.D.N.Y. 2008). MGA suggests the rule may be different for preliminary and permanent injunctions, but if anything the distinction favors the issuance of an injunction here; once liability has been established, there is no longer any danger that injunctive relief will turn out to be unjustified by a finding of wrongdoing. Moreover, MGA is mistaken in its assertion that courts continue to apply the presumption post-eBay only in the preliminary injunction context. See, e.g., UMG Recordings, Inc. v. Blake, 2007 WL 1853956, *3 (E.D.N.C. 2007) (granting permanent injunction: "Irreparable injury is presumed when a plaintiff succeeds on the merits."); Warner Bros. Entm't. Inc. v. RDR Books, 2008 WL 4126736, at *34 (same).

cases continue to hold that a showing of past infringement *coupled with* an ongoing threat to the holder's exclusive rights supports a finding of irreparable harm. See, e.g., Bertram Music, 2008 WL 2055480, at *2 (granting permanent injunction based on showing of past and threat of future infringement); Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233, 1239 (E.D. Cal. 2008) (same); UMG Recordings, Inc. v. Higareda, 2008 WL 3836074 at *5 (E.D. Cal. Aug. 14, 2008) (same); Warner Bros. Entm't, Inc. v. Carsagno, 2007 WL 1655666, *5 (E.D.N.Y. June 4, 2007) (same).  Even post-eBay cases that reject any presumption of harm are in accord on this. See, e.g., Designer Skin, LLC v. S&L Vitamins, Inc., 2008 WL 4174882, at *4-5 (D. Ariz. Sept. 5, 2008) (granting permanent injunction to avoid "rendering [plaintiff's] right to exclude others from using its images illusory"; a plaintiff "meets the burden of *proving* irreparable harm" under eBay by showing both past and threat of future infringement).

Grokster, on which MGA principally relies, itself makes clear that where interference with exclusive rights has the "actual effect of irreparably harming a plaintiff's right to control the use of his/her copyrighted material," irreparable harm exists. Grokster, 518 F. Supp. 2d at 1216-17; see also eBay, Inc. v. MercExch., LLC, 547 U.S. 388, 395 (2006) (Roberts, C.J., Scalia & Ginsburg, JJ., concurring) ("From at least the early 19th century, courts have granted injunctive relief upon a finding of infringement in the vast majority of patent cases. This 'long tradition of equity practice' is not surprising, given the difficulty of protecting a right to *exclude* through monetary remedies that allow an infringer to *use* an invention against the patentee's wishes - a difficulty that often implicates the first two factors of the traditional four-factor test."). If ever there were a case of irreparable harm to the right to exclude, it is here. For years, MGA concealed from Mattel the fact that Mattel even *had* any rights in Bratz.[53] MGA is actually *suing Mattel* for making dolls (MY SCENE) that it claims look too much like

---

[53]   Phase 1(b) Verdict Form As Given at ¶¶ 18, 20, Hutnyan Decl. Ex. 3.

1   Bratz.[54]   MGA does not deny its plans to continue to infringe Mattel's copyrights.[55]

2   MGA's interference with Mattel's Bratz copyrights has been pervasive and egregious.

3   MGA also does not address, and thus concedes, that permitting MGA to infringe

4   further will encourage third party copying which will require Mattel to bring a

5   multiplicity of new lawsuits.[56] Unless MGA is enjoined, third-party manufacturers who

6   currently make or sell infringing Bratz products will continue to infringe Mattel's

7   copyrights, confident they can do so with impunity. MGA's own authority shows this is

8   irreparable harm. Grokster, 518 F. Supp. 2d at 1219 ("[T]he very need to file multiple

9   lawsuits . . . is itself supportive of an irreparable harm finding.").

10   MGA's only answer to the clear inadequacy of legal remedies is that Mattel

11   "conceded that monetary damages are adequate" by proffering a theory of "future"

12   damages in Phase 1(b).[57]   But a theory the jury never accepted, and that MGA itself

13   contested as speculative, in no way establishes that legal remedies are adequate to

14   address MGA's ongoing infringement. If anything this shows the opposite. See, e.g.,

15   Kikumura v. Hurley, 242 F.3d 950, 963 (10th Cir. 2001) (reversing finding of no

16   irreparable harm because "[a] plaintiff suffers irreparable injury when the court would be

17   unable to grant an effective monetary remedy after a full trial because such damages

18   would be inadequate or difficult to ascertain"); Tri-State Gen. and Transmission Ass'n,

19   Inc. v. Shoshone River Power, Inc., 874 F.2d 1346, 1363 (10th Cir. 1989) (vacating

20   denial of permanent injunction: "evidence concerning [plaintiff's] future damages is

21   obviously intertwined with and directly affects the determination of whether injunctive

22   relief should be granted. . . . The jury may indicate that it cannot calculate [plaintiff's]

23   future damages with any reasonable degree of accuracy. . . . Such an indication will

24

25

26   [54]   See MGA Compl. for False Designation of Origin, Association or Sponsorship; Unfair Competition; Dilution; and Unjust Enrichment, dated April 13, 2005, Hauss Decl. Ex. 4.

27   [55]   See Hutnyan Decl. ¶ 149.
     [56]   Mot. at 20-21.

28   [57]   Opp. at 6. See, supra part I.C.

1 certainly affect our review on a subsequent appeal if the district court again determines

2 that damages are calculable and consequently denies injunctive relief.").

3        **E.**     **The Balance of Hardships and the Public Interest Favor an**

4               **Injunction**

5        MGA's balancing of hardships has the scales backwards.  On the Mattel side,

6 MGA fails to credit the significant harm MGA's ongoing infringement will cause Mattel.

7 On its own side, MGA's assertion that an injunction would amount to "[s]hutting down

8 MGA" (Opp. at 14) is a red herring.  Mattel does not seek to "shut down" MGA; it seeks

9 to prevent more infringement of its rights.  Larian himself has claimed that had Bryant

10 never brought Bratz to MGA, he and his team "would have found something else."[58]  He

11 remains free to do so.  But building a business on infringing products is no reason to

12 allow MGA to continue infringing.

13        Under the law, MGA has *no* legally cognizable interest in continuing to infringe

14 Mattel's copyrights.  See, e.g., Triad Sys. Corp. v. Se. Express Co., 64 F.3d 1330, 1338

15 (9th Cir. 1995) ("Where the only hardship that the defendant will suffer is lost profits

16 from an activity which has been shown likely to be infringing, such an argument in

17 defense merits little equitable consideration."); Warner Bros., 2008 WL 4126736, at *35

18 ("The only possible harm to Defendant is the loss of the chance to sell an infringing

19 book, but the law does not protect this type of hardship") (citations omitted); Microsoft

20 Corp. v. Atek 3000 Computer Inc., 2008 WL 2884761, at *5 (E.D.N.Y. July 23, 2008)

21 (balance of hardships "favors granting a permanent injunction because such an

22 injunction only serves to require defendant to comply with the Copyright and Lanham

23 Acts and plaintiff stands to lose goodwill and sales if an injunction is not granted").

24 That is so even if MGA needs to continue to infringe to remain in business.  "One who

25 elects to build a business on a product found to infringe cannot be heard to complain if

26 an injunction against continuing infringement destroys the business so elected."

27

28    [58]  See, e.g., Trial Tr. at 6172:13-21.

1  Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986); see
2  Universal City Studios, Inc. v. Sony Corp., 659 F.2d 963, 976 (9th Cir. 1981) ("A
3  defendant has no right to expect a return on investment from activities which violate the
4  copyright laws. Once a determination has been made that an infringement is involved,
5  the continued profitability of [the defendant's] business is of secondary concern."), *rev'd*
6  *on other grounds*, 464 U.S. 417 (1984). And that MGA will have to "shut down" has
7  not been shown in any event. "[Defendants] can continue to compete against [plaintiff],
8  except not with the [products] that were created by [plaintiff]." Mortgage Mkt. Guide,
9  LLC v. Freedman Report, LLC, 2008 WL 2991570, at *44 (D.N.J. July 28, 2008).[59]

10     As for the public interest, the injunction Mattel seeks would simply bar the further
11  manufacture of infringing toys MGA never had the right to make in the first place. This
12  is not a case like Abend v. MCA, Inc., 863 F.2d 1465 (9th Cir. 1988), where an
13  injunction would have deprived the public of a classic Hitchcock film created under a
14  valid assignment from the author of the copyrighted work.[60] Id. at 1479. Nor is this
15  case analogous to z4 Techs. v. Microsoft Corp., where an injunction would have
16  required a retrofit to the computers of millions of users of Microsoft software. 434 F.
17  Supp. 2d 437, 443-44 (E.D. Tex. 2006).[61]

18
19  [59]  MGA contends an injunction would impose a hardship because the jury found its
       infringement was *de minimis*. But the jury made no such finding; in fact, its verdict of
       infringement shows MGA's infringement is not *de minimis* -- truly *de minimis* infringement is
20  not actionable. Newton v. Diamond, 204 F. Supp. 2d 1244, 1256-57 (C.D. Cal. 2002) ("To
       establish that the infringement of a copyright is *de minimis*, and therefore not actionable, the
21  alleged infringer must demonstrate that the copying of the protected material is so trivial 'as to
       fall below the quantitative threshold of substantial similarity, which is always a required
22  element of actionable copying.'") (internal citation omitted). Dun v. Lumbermen's Credit
       Ass'n, 209 U.S. 20 (1908), is therefore distinguishable--the directory at issue used an
23  "insignificant" number of names from plaintiff's directory.
           MGA also contends its lack of willfulness "militates against an injunction," (Opp. at 14),
24  but cites no authority that only willful infringers may be enjoined; that is not the case.
       Williams Elec., Inc. v. Artic Int'l., Inc., 685 F.2d 870, 878 (3d Cir. 1982) ("[I]njunctions may
25  be issued without a showing of willful or deliberate infringement"); CyberMedia, Inc. v.
       Symantec Corp., 19 F. Supp. 2d 1070, 1079 (N.D. Cal. 1998) (same).
26       [60]  We address Abend more fully in Section III.A, below.
         [61]  MGA's reliance on the Elvis Presley case, Elvis Presley Enters. v. Passport Video, is
27  curious as the majority in fact *affirmed* the entry of a preliminary injunction barring release of
       an Elvis documentary (see 349 F.3d 622, 631 (9th Cir. 2003)); the "holding" cited by MGA
28  was Judge Noonan's amended dissent.

1    Nor are MGA's "monopoly" concerns valid, factually or legally.  Enjoining

2  MGA's infringing dolls will not, as MGA urges, leave only one of two competitors

3  standing; even Larian agrees the market consists of far more than just BARBIE and

4  Bratz,[62] and it was Larian who bragged that MGA could have come up with its own

5  competitive fashion doll apart from Bryant's Bratz designs.[63]  Moreover, a copyright is

6  by definition a right to *exclusive* control of a particular work--it is by definition

7  monopolistic.  See, e.g., In re Indep. Serv. Orgs. Antitrust Litig., 910 F. Supp. 1537,

8  1542 (D. Kan. 1995) ("In essence, a copyright provides the copyright holder with a legal

9  monopoly.").  The monopolistic nature of a copyright does not preclude injunctive relief;

10  it supports it.  See Mortgage Mkt. Guide, 2008 WL 2991570, at *44-45 (rejecting

11  monopoly argument because defendant and other competitors will continue to be able to

12  compete with non-infringing tools); BUC Int'l Corp. v. Int'l Yacht Council Ltd., 2002

13  WL 31399604, at *4 (S.D. Fla. July 5, 2002) ("[T]he breaking of a monopoly cannot be

14  accomplished by copyright infringement."); E.F. Johnson Co. v. Uniden Corp. of Am.,

15  623 F. Supp. 1485, 1504 (D. Minn. 1985) (rejecting monopoly argument).[64]

16

17

18

19  _____

20  [62]  See, e.g., Trial Tr. at 6252:19-6253:15 (listing Hannah Montana, High School Musical, Webkinz and Littlest Pet Shop as "very successful" fashion dolls and products that have taken business from Bratz and BARBIE).  See also Declaration of Stephanie Cota, filed herewith.

21  [63]  Trial Tr. 6172:13-21.
   [64]  Even the case cited by MGA, Pass & Seymour, Inc. v. Hubbell, Inc., 532 F. Supp. 2d

22  418 (N.D.N.Y. 2007), recognized "there is an interest served in promoting innovation by protecting the monopoly conferred by statute, and indeed under the United States

23  Constitution, to inventors under the patent laws." Id. at 434.  The court denied a preliminary injunction in part because the defendant's product "may well be . . . non-infringing." Id.

24  MGA's purported "waste" concerns are equally misplaced.  An injunction will not "prevent exploitation of economically viable materials" (Opp. at 15); it will prevent their *unlawful*

25  exploitation by MGA, and permit their exclusive exploitation by Mattel.  MGA's only case support is off point.  See BR Assoc., Inc. v. LaFramboise, 2007 WL 1840031, at *10 (E.D.

26  Mich. June 26, 2007) (economic waste would result if building *already completed* before a claim was made were ordered destroyed as remedy for breach of contract).  MGA also twists

27  an exchange in which the Court noted, in the context of settlement, that it would be in the parties' economic interest to maintain Bratz as a profitable product. (Opp. at 15)  What might

28  be in the parties' economic interest as a matter of settlement is irrelevant.

### III. MATTEL'S PROPOSED INJUNCTION AND RELATED REMEDIES ARE APPROPRIATE AND SHOULD BE ORDERED

#### A. An Injunction Is The Appropriate Remedy

Relying principally on <u>Abend</u>, 863 F.2d 1465, MGA argues that even if Mattel is entitled to relief against continuing infringement, a royalty is the appropriate remedy. Neither the Ninth Circuit nor any other court has relied on <u>Abend</u> to reject an injunction request in the face of a finding of copyright infringement, nor should this Court.

In <u>Abend</u>, Paramount Pictures produced the Hitchcock film *Rear Window* in 1954 based on a story by Cornell Woolrich, with lawful rights to the story. Woolrich died in 1968 and the renewal term rights to his story reverted to his heirs under the Copyright Act of 1909. The heirs assigned the rights to Abend, who sued Paramount claiming it no longer had the right to exploit the film without the renewal rights. <u>Id.</u> at 1467-68. The Ninth Circuit found that "special circumstances" justified a monetary award in place of an injunction. <u>Id.</u> at 1478-79. As the Ninth Circuit explained later, "the defendant had done nothing improper but had simply lost the right to the short story on a 'technicality' existing under the Copyright Act of 1909; an injunction would have prohibited the defendant from enjoying profits from its own creative efforts (i.e., creating the motion picture from the short story); and the public would be denied the opportunity to view a classic film." <u>Cadence</u>, 125 F.3d at 829.

Since <u>Abend</u>, the Ninth Circuit has rejected royalty arguments in the two published cases where they were sought, finding <u>Abend</u> not to control. <u>See</u> <u>A&M Records, Inc. v. Napster, Inc.</u>, 239 F.3d 1004, 1028 (9th Cir. 2001); <u>Cadence</u>, 125 F.3d at 829. Other courts have done the same, even where the scope of infringement was limited. <u>See, e.g.</u>, <u>Woods v. Universal City Studios</u>, 920 F. Supp. 62, 65 (S.D.N.Y. 1996) (although copyrighted drawings appeared only in one small portion of film *12 Monkeys*, "Universal has not demonstrated that this is a case of 'special circumstances' justifying an award of damages or a continuing royalty instead of an injunction, or that 'great public injury' would result from an injunction").

1   The facts here in no way mirror the "special circumstances" in Abend. Unlike the

2   defendants in Abend, MGA at no time had the right to create works based on Bryant's

3   designs and was not stripped of its exploitation rights based on a legal technicality. A

4   classic work will not be lost forever through an injunction here; MGA will simply lose

5   the right to exploit designs that it never rightly owned. And MGA will not be

6   "prohibited . . . from enjoying profits from its own creative efforts," Cadence, 125 F.3d

7   at 829, as Paramount would have been in Abend; MGA can apply its creative fashion

8   designs, marketing and the like to help sell non-infringing products.[65]

9   MGA suggests the jury's "findings provide a basis for calculating a reasonable

10   royalty," Opp. at 32, but then proposes a manifestly unreasonable royalty. Its reading of

11   the jury verdict is pure speculation, and its proposed royalty would be inappropriate

12   even if a royalty were the proper remedy.[66] An injunction should issue.[67]

---

13

14   [65] MGA's other authorities are inapposite. See, e.g., eBay, 547 U.S. at 396-97 (Kennedy, J., concurring) ("When the patented invention is but a small component of the product the companies seek to produce *and the threat of an injunction is employed simply for undue leverage in negotiations, legal damages may well be sufficient to compensate for the infringement and* an injunction may not serve the public interest") (emphasized language omitted from MGA's citation); Silverstein v. Penguin Putnam, Inc., 368 F.3d 77, 84 (2d Cir. 2004) (reversing summary judgment for plaintiff because there were questions about whether poetry compilation at issue was protectible, and then stating in dicta that "any protectible interest [plaintiff] may have would be so slight that it cannot be enforced by a preliminary or permanent injunction"); Sony, 659 F.2d at 967 (court stated in dicta that royalty was an acceptable resolution but did not make any determination on the issue and noted general rule that copyright plaintiff is entitled to an injunction once past and threat of future infringement is established); Sony, 464 U.S. at 499-500 (Blackmun, J. dissenting) (expressing agreement with Ninth Circuit's dicta *in dissent*); Dun, 209 U.S. at 23-24 (not adopting royalty); Paice, LLC v. Toyota Motor Corp., 504 F.3d 1293, 1313-15 (Fed. Cir. 2007) (reversing royalty order); Richard Feiner & Co. v. Turner Entm't Co., 926 F. Supp. 40, 43-44 (S.D.N.Y. 1996) (refusing to apply Abend and issuing injunction in later decision, see 1997 WL 603447, at *3 (S.D.N.Y. 1997)). Mattel of course also never "conceded that a royalty may be an appropriate alternative to an injunction here." Opp. at 29 n.44. Rather, Mattel merely argued that MGA should not be permitted to question Wagner regarding the impact of a possible injunction on MGA's valuation given that an injunction was not a foregone conclusion, with a royalty being another possible remedy (and one MGA had already said it would propose).

[66] See Mot. to Strike Meyer Decl.; Declaration of Judy A. Willis, filed herewith. In addition to the other flaws in Meyer's analysis, MGA and Meyer also improperly ignore the entirety of the damages award--$100 million. Bains, 405 F.3d at 771-72 (award of nominal damages for § 1981 cause of action did not show finding of no economic harm because jury awarded $50,000 for breach of contract and may have thought "putting the same $50,000 under both the § 1981 and the breach of contract causes of action would be double counting").

[67] MGA faults Mattel for not seeking a preliminary injunction, but "[n]othing in the law requires that a party seeking a permanent injunction also seek a preliminary injunction." (footnote continued)

---

**B.    The Injunction is Not Overbroad**

MGA string-cites cases for the proposition that injunctions should be narrowly tailored and reasonably related to the infringement, (Opp. at 17:4-24), but fails to point out that in almost all these cases the court *did* enjoin distribution of the challenged goods.[68] MGA's generalized descriptions of the outer boundaries of remedial relief shed no light on the propriety of the injunction Mattel seeks.

In fact, the Ninth Circuit has consistently affirmed injunctions similar in scope to the one requested by Mattel. E.g., Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1406 (9th Cir. 1997) (affirming injunction that prohibited distributing entire book even though only back cover art and image of hat were infringing); Cadence, 189 F.3d 472 (affirming injunction that prohibited selling software even though only a portion infringed). MGA's own cases recognize that an injunction must be sufficiently broad to provide the plaintiff full relief. E.g., Lamb-Weston, Inc. v. McCain Foods, Ltd., 941 F.2d 970, 973-74 (9th Cir. 1991) (affirming worldwide injunction prohibiting sale based on trade secret misappropriation); Iconix, 457 F. Supp. 2d at 1000 ("It is not unusual for courts to prohibit infringement--including infringement pertaining to derivative works . . . in preliminary injunctions for alleged copyright infringement."). MGA states no valid objection to the form of Mattel's proposed injunction.[69]

---

Sweetheart Cup Co., Inc. v. Buchberg Inv. Holdings, Inc., 2005 WL 1515405, at *5 (S.D.N.Y. June 23, 2005); see Riss & Co. v. Ass'n. of Am. R.R., 170 F. Supp. 354, 368 (D.D.C. 1959) ("no inference adverse to plaintiff can be made based on its failure to seek an injunction before the trial"). MGA's authority agrees that a decision not to seek a preliminary injunction is "plainly not dispositive" and "numerous factors can impact a plaintiff's decision to forgo seeking a preliminary injunction and such injunction has different prerequisites and serves different purposes than a permanent injunction." MercExchange, 500 F. Supp. 2d at 573.

[68]    See Starter Corp. v. Converse, Inc., 170 F.3d 286, 300 (2d Cir. 1999) (remanding to impose permanent injunctive relief); Iconix, Inc. v. Tokuda, 457 F. Supp. 2d 969, 1003-1004 (N.D. Cal. 2006) (enjoining defendants from infringing plaintiff's copyright ); Grokster, 518 F. Supp. 2d at 1241 (enjoining defendant from inducing copyright infringement).

[69]    Nearly all MGA's authorities involved preliminary injunctions, where courts understandably exercise more restraint because violations of law have not been established. See, e.g., Iconix, 457 F. Supp. 2d at 999-1002; Natural Resources Defense Council, Inc. v. Winter, 508 F.3d 885 (9th Cir. 2007); Lamb-Weston, 941 F.2d at 970; Price v. City of Stockton, 390 F.3d 1105 (9th Cir. 2004); Waldman Publ'g Corp. v. Landoll, Inc., 43 F.3d 775 (footnote continued)

## C. The Court Should Order Recall, Destruction and Impoundment

MGA does not dispute that final judgments under the Copyright Act routinely include recall and destruction orders. MGA does not dispute that absent such an order, millions of infringing Bratz dolls would continue to be offered on retail shelves next to Mattel-marketed products. Recall, destruction and impoundment should be ordered.[70]

MGA contends that recalls should not deprive the public of "substantial non-infringing elements," (Opp. at 33), citing <u>TVT Records v. Island Def Jam Music Group</u>, 279 F. Supp. 2d 366, 407-09 (S.D.N.Y. 2003). That case provides no support for MGA. The defendant in <u>TVT Records</u> produced a music CD and DVD that featured songs by numerous artists, only two of which were infringing (just minutes out of hours of content). The court denied a recall (though it did enjoin further use of the infringing songs and ordered defendants to return the master recordings) because the remaining songs were non-infringing works contributed by innocent third-party artists who might be adversely affected by a recall. Here, however, where the contributors of any non-infringing elements were employed by MGA, the concern about fairness to innocent third parties is completely absent. Moreover, the plaintiff in <u>TVT Records</u> had obtained damages at trial based on the total number of CDs and DVDs manufactured, not sold, so it had already been compensated for the unsold works it sought to have recalled.

Courts sometimes issue remedies narrower than a recall where the non-infringing aspect of a product can be severed from infringing elements. <u>See</u> <u>Perkins Marine Lamp</u>

---

(2d Cir. 1994). Infringement has been established here. A permanent injunction thus favors protection of Mattel's rights without the concerns present at the preliminary injunction stage.
[70] MGA speciously argues Mattel's request for impoundment should be denied because impoundment is "generally associated with preliminary injunctions, not permanent injunctions." (Opp. at 32 n.46.) Whether termed impoundment under § 503(a) or "other reasonable disposition" under § 503(b), MGA can and should be ordered to turn over the infringing goods. <u>See</u> <u>Rogers v. Koons</u>, 960 F.2d 301, 313 (2d Cir. 1992) (affirming turn-over order as "equitable remedy issued under the broad powers vested in a trial judge under 17 U.S.C. 503(b)"); <u>Rebis v. Universal Cad Consultants, Inc.</u>, 1999 WL 1000435, *2 (N.D. Cal. Oct. 27, 1999) (entering judgment calling for infringing software to be "impounded or destroyed, pursuant to 17 U.S.C. § 503(b)"); <u>see also</u> H.R. Rep. No. 94-1476, at 160 (1976), <u>reprinted in</u> 1976 U.S.C.C.A.N. 5659, 5776 ("*as part of its final judgment or decree*, the court
(footnote continued)

& Hardware Co. v. Goodwin Stanley Co., 86 F. Supp. 630, 632 (E.D.N.Y. 1949) (requiring defendant to block out infringing material rather than order destruction where 21 of 137 items in catalog were infringing); Foreign Car Parts, Inc. of New England v. Auto World, Inc., 366 F. Supp. 977, 981 (M.D. Pa. 1973) (ordering defendant to block out the small amount of infringing material from catalogs). The issue is not whether the product contains "substantial non-infringing elements," as MGA contends (Opp. at 33), but whether an adequate lesser remedy  can be imposed. No such lesser remedy is available here because the infringing elements include the non-separable core of the MGA dolls, their sculpt. No remedy short of recall would be adequate.

Nor does MGA show that a recall, destruction and impoundment order would impose an undue burden.  See Perfect Fit Indus. v. Acme Quilting Co., Inc., 646 F.2d 800, 807 (2d Cir. 1981) (ordering recall where defendant failed to show that cost would be unwarranted).  There is nothing inherently onerous about the requirement that a defendant simply "writ[e] its customers requesting a return of the [products] and pa[y] the cost of the return."  Id. Recall orders frequently extend to a defendant's distributors and retailers,[71] regardless of any purported burden. See, e.g., Merit Diamond Corp. v. Frederick Goldman, Inc., 376 F. Supp. 2d 517, 526-27 (S.D.N.Y. 2005) (cited by MGA) (ordering recall from defendant's national retailers and other wholesale customers as these "large corporate entities . . . are capable of managing the process of recalling products from store shelves"); Fisher-Price Toys v. My-Toy Co., Inc., 385 F. Supp. 218, 223 (S.D.N.Y. 1974) (ordering injunction, destruction of infringing dolls and all molds and other means of their manufacture, and the recall and destruction of infringing dolls

---

could order the infringing articles sold, delivered to the plaintiff, or disposed of in some other way that would avoid needless waste and best serve the ends of justice.") (emphasis added).

[71] MGA argues in a footnote that a recall order cannot appropriately extend to "innocent" non-parties.  (Opp. at 33 n.47.)  The cases MGA cites, however, involved consumers, not wholesale or retail business intermediaries.  See, e.g., Societe Civile Succession Richard Guino v. Int'l Found. for Anticancer Drug Discovery, 460 F. Supp. 2d 1105, 1111-12 (D. Ariz. 2006) (distinguishing business entity recalls from those aimed at end-user consumers); Applied Innovations, Inc. v. Regents of the Univ. of Minn., 876 F.2d 626, 637-38 (8th Cir.

(footnote continued)

1   already distributed).[72]   MGA attempts to distinguish <u>Gund, Inc. v. Golden Bear Co.,</u>

2   <u>Ltd.</u>, 1992 WL 392602 (S.D.N.Y. Dec. 10, 1992), as purportedly involving just "*one*

3   store," Opp. at 34:11-15, but the infringing toy in that case had actually been "widely

4   distributed" to *2400* K-Mart stores; the court ordered a recall anyway. <u>Id.</u> at *1, *4-5.[73]

5   MGA's claim that, absent a recall, "the only 'burden' to Mattel is facing

6   competition," Opp. at 34, is telling.   MGA's infringing Bratz products are indeed

7   "competition" and will certainly cause losses for Mattel. That is precisely why Mattel is

8   entitled to injunctive relief and a recall order. The holiday season is a critical time for

9   Mattel.[74]   Mattel should not have to face competition from products based on its own

10   designs, especially during this critical time. Mattel's motion should be granted.

11   DATED:  October 22, 2008        QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
12

13

14                                    By

15                                         John B. Quinn
                                           Attorneys for Mattel, Inc.
16

17

18

19

20   1989). Indeed, <u>Societe Civile</u> cites numerous cases holding that recall orders are appropriate
     where items can be "reasonably obtained by the defendants." <u>Id.</u> at 1111.
21     [72]  <u>See also</u> <u>Chere Amie, Inc. v. Windstar Apparel, Corp.</u>, 175 F. Supp. 2d 562, 563-64,
     566 (S.D.N.Y. 2001) (imposing contempt sanction based on failure to comply with injunction
22   requiring defendant to "recall from all distributors, wholesalers, jobbers, dealers, and retailers
     and deliver to [plaintiff] any originals, copies, facsimiles, or duplicates of any products
23   employing the 'Girl Zone' trademark and [copyrighted designs]"); <u>Yurman Design Inc. v.</u>
     <u>Chaindom Enters., Inc.</u>, 1999 WL 1075942, *8 (S.D.N.Y. Nov. 29, 1999) (ordering recall of
24   existing stock of infringing bracelets from jewelry businesses).
       [73]  The ongoing nature of MGA's infringement distinguishes this case from those MGA
25   cites in opposition. <u>See, e.g.</u>, <u>Gund, Inc. v. Swank</u>, 673 F. Supp. 1233, 1237 (S.D.N.Y. 1987)
     (infringing products had been distributed as part of a "one-time" promotion); <u>Granville v.</u>
26   <u>Suckafree Records, Inc.</u>, 2006 WL 2520909, *7 (S.D. Tex. June 28, 2006) (no evidence
     additional copies of limited edition compilation CD (which contained an infringing "beat" in a
27   single song) would be produced).
       [74]  Decl. of Kathleen Simpson-Taylor in support of Mattel's Ex Parte App. for an
28   Expedited Hearing, dated Sept. 29, 2008, at ¶ 4.