1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                   EASTERN DIVISION

4                      - - -

5       HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                      - - -        CERTIFIED

7   MATTEL, INC.,                )       COPY
                                 )
8                   PLAINTIFF,   )
                                 )
9            VS.                 )   NO. CV 04-09049
                                 )
10  MGA ENTERTAINMENT, INC., ET. AL., )
                                 )
11                  DEFENDANTS.  )   CONTINUED BENCH
    _____)   CONFERENCE
12  AND CONSOLIDATED ACTIONS,    )   PAGES 5216-5323
    _____)

13

14

15         REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              RIVERSIDE, CALIFORNIA

17             MONDAY, JULY 21, 2008

18                  4:04 P.M.

19

20

21

22

23              THERESA A. LANZA, RPR, CSR
                FEDERAL OFFICIAL COURT REPORTER
24               3470 12TH STREET, RM. 134
                RIVERSIDE, CALIFORNIA  92501
25                  951-274-0844
                WWW.THERESALANZA.COM

```
 1    APPEARANCES:

 2
      ON BEHALF OF MATTEL, INC.:
 3
                          QUINN EMANUEL
 4                        BY:   JOHN QUINN
                               JON COREY
 5                             MICHAEL T. ZELLER
                               DYLAN PROCTOR
 6                        865 S. FIGUEROA STREET,
                          10TH FLOOR
 7                        LOS ANGELES, CALIFORNIA   90017
                          213-624-7707
 8

 9

10
      ON BEHALF OF MGA ENTERTAINMENT:
11
                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
12                        BY:   THOMAS J. NOLAN
                               JASON RUSSELL
13                             LAUREN AGUIAR
                          300 SOUTH GRAND AVENUE
14                        LOS ANGELES, CALIFORNIA   90071-3144
                          213-687-5000
15

16

17

18

19

20

21

22

23

24

25
```

```
 1                         I N D E X

 2                                              PAGE

 3   CONTINUED BENCH CONFERENCE

 4   (TELEPHONIC) ................................    5219

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1        RIVERSIDE, CALIFORNIA; MONDAY, JULY 21, 2008; 4:04 P.M.

 2                              -OOO-

 3            THE CLERK:  CALLING CASE NUMBER CV04-09049-SGL,

 4   MATTEL, INC., V. MGA ENTERTAINMENT, INC.

 5            COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE         04:04

 6   RECORD.

 7            MR. QUINN:  FOR MATTEL, JOHN QUINN, MIKE ZELLER,

 8   BILL PRICE, DYLAN PROCTOR, SCOTT KIDMAN, AND JON COREY.

 9            MR. NOLAN:  TOM NOLAN FOR MGA, ALONG WITH

10   LAUREN AGUIAR, DAVID HANSEN, JASON RUSSELL, CARL ROTH.         04:04

11            THE CLERK:  COUNSEL, COULD I PLEASE REMIND YOU THAT

12   WE ARE ON A TELEPHONIC CONFERENCE AND THAT THE COURT REPORTER

13   WOULD LIKE EVERYONE TO SAY THEIR NAME INTO THE RECORD WHEN THEY

14   SPEAK.  THANK YOU.

15            THE COURT:  THE OTHER THING TO KEEP IN MIND, GIVEN    04:05

16   THE NUMBER OF PEOPLE ON THE LINE, JUST BE SURE TO SPEAK UP

17   CLEARLY FOR EVERYBODY.

18            COUNSEL, I APPRECIATE EVERYONE GETTING TOGETHER AT

19   4:00 BY PHONE.  I KNOW THIS IS NOT THE MOST CONVENIENT WAY TO

20   DO THIS, BUT AT LEAST WE'LL BE ABLE TO GET THROUGH THESE ISSUES  04:05

21   AND THESE MOTIONS AND HOPEFULLY BE READY TO PROCEED WITH TRIAL

22   ON WEDNESDAY.

23            I'VE HAD A CHANCE TO REVIEW THE VARIOUS MOTIONS, AS

24   WELL AS THE ISSUE RELATED TO PROTECTABILITY AND THE AFFIRMATIVE

25   DEFENSES.  I'VE GOT EXTENSIVE NOTES HERE IN FRONT OF ME.  THE   04:05
```

1   ORDER THAT I'M GOING TO GO THROUGH THEM IS BASICALLY THE ORDER

2   IN WHICH I HAVE WRITTEN MY NOTES; SO IT'S NOT IN ANY PARTICULAR

3   ORDER, BUT I'LL TRY TO BE AS CLEAR AS I CAN.

4          I'VE ALREADY DRAFTED UP A SUBSTANTIAL AMOUNT OF

5   LANGUAGE ON MY RULING ON THE SCOPE OF PROTECTABILITY AND ON THE       04:05

6   AFFIRMATIVE DEFENSES, AND WHAT I PLAN TO DO IS CLEAN THAT UP IN

7   THE NEXT DAY OR TWO AND ISSUE AN ORDER.  BECAUSE THIS IS, IN

8   LARGE MEASURE, PART OF THE RULINGS ON THE MOTIONS FOR PARTIAL

9   SUMMARY JUDGMENT, I THINK IT IS IMPORTANT TO HAVE AN ORDER

10  WRITTEN BY THE COURT ON THESE POINTS; SO THE COURT WILL TAKE          04:06

11  CARE OF ISSUING THAT ORDER.

12         I'LL GIVE YOU MY RULING NOW, BUT THE ORDER WILL FLUSH

13  THIS OUT AND ALL OF THE AUTHORITY, ET CETERA, WILL BE

14  FORTHCOMING IN THE NEXT DAY OR TWO.

15         AS FAR AS THE RULINGS ON THE MOTIONS *IN LIMINE*, I'M          04:06

16  GOING TO ASK COUNSEL TO TAKE CAREFUL NOTES AND PREPARE A

17  PROPOSED ORDER FOR THE COURT'S CONSIDERATION SO THAT WE CAN

18  HAVE A WRITTEN MEMORIALIZATION OF MY RULINGS ON THOSE AS WELL.

19         SO LET ME BEGIN WITH THE SCOPE OF COPYRIGHT

20  PROTECTABILITY.                                                       04:06

21         THE COURT HEARD AT LENGTH ON FRIDAY ON THIS ISSUE.

22         IS THERE ANYTHING FURTHER THAT THE COURT SHOULD HAVE

23  IN FRONT OF IT BESIDES WHAT IT ALREADY HAS IN THE FORM OF THE

24  EXTENSIVE BRIEFINGS AND THE MOTIONS FOR PARTIAL SUMMARY

25  JUDGMENT, AS WELL AS THE ADDITIONAL ARGUMENT THAT HAS ALREADY         04:07

1    BEEN MADE?

2            ANYTHING FURTHER FROM MATTEL?

3            **MR. ZELLER:**  AS A REMINDER, YOUR HONOR, ON FRIDAY WE

4    HAD RAISED THE ISSUE THAT SINCE THE TIME OF THE BRIEFING OF

5    PARTIAL SUMMARY JUDGMENT, WE HAD RECEIVED MORE PLEADINGS FROM        04:07

6    THE MGA DEFENDANTS THAT WE THOUGHT BORE ON THIS ISSUE OF

7    PROTECTABILITY, AS WELL AS THE JUDICIAL ESTOPPEL EFFECT OF

8    THOSE POSITIONS THAT WERE TAKEN IN PRIOR LITIGATION THAT BEAR

9    ON PROTECTABILITY.

10           **THE COURT:**  RIGHT.  I'M MINDFUL OF THAT.                  04:07

11           IS THERE ANYTHING ELSE BESIDES THAT?

12           **MR. QUINN:**  NOT FROM MATTEL.

13           **THE COURT:**  FROM MGA?

14           **MR. NOLAN:**  ON BEHALF OF MGA, TOM NOLAN.

15           I THINK THAT IN THE LITANY OF ITEMS YOU MENTIONED, I         04:08

16   DIDN'T HEAR A REFERENCE TO THE EXPERT REPORTS, BUT THE EXPERT

17   REPORTS ARE BEFORE THE COURT.

18           **THE COURT:**  YES.  PARTICULARLY THE EXPERT REPORT AS

19   IT RELATES TO THE ISSUE OF SUBSTANTIAL SIMILARITY.  THE COURT

20   HAS RECEIVED AND REVIEWED ALL OF THOSE.  I'VE REVIEWED THEM         04:08

21   SEVERAL TIMES IN THE CONTEXT OF THE MOTION FOR PARTIAL SUMMARY

22   JUDGMENT, BUT ALSO IN THE CONTEXT OF THE VARIOUS MOTIONS *IN*

23   *LIMINE* THAT I'LL BE DECIDING SHORTLY AS WELL; SO THE COURT IS

24   QUITE FAMILIAR WITH THOSE.

25           WITH ALL OF THAT, THESE ARE MY RULINGS.  AND I'M            04:08

1    GOING TO READ FROM WHAT I'VE WRITTEN UP HERE, BUT LIKE I SAID,

2    I'LL FLUSH THIS OUT AND GIVE IT TO YOU IN WRITTEN FORM IN THE

3    NEXT FEW DAYS.

4            AT FRIDAY'S HEARING, BASICALLY THERE WAS A QUESTION

5    RAISED BY MGA CONCERNING THE SCOPE OF THE PROTECTION TO BE        04:08

6    GIVEN TO THE COPYRIGHTED DRAWINGS.  THIS IMPLICATES THE

7    ARGUMENTS THAT WERE RAISED BY THE PARTIES IN THE MOTIONS FOR

8    PARTIAL SUMMARY JUDGMENT, AS I MENTIONED, REGARDING ORIGINALITY

9    AND PROTECTABILITY.  THOSE WERE RAISED BY MGA.  AND THEN THE

10   SUBSTANTIAL SIMILARITY ARGUMENT, WHICH IS THE ELEMENT OF         04:09

11   COPYRIGHT INFRINGEMENT THAT MATTEL IS SEEKING SUMMARY JUDGMENT.

12           THE ELEMENTS, OF COURSE, FOR A COPYRIGHT ARE, ONE,

13   OWNERSHIP OF A VALID COPYRIGHT; TWO, ACCESS BY THE DEFENDANT TO

14   THE ORIGINAL; AND, THREE, SUBSTANTIAL SIMILARITY OF THE WORKS.

15           THE FIRST ELEMENT, ALTHOUGH NOT AMENABLE TO              04:09

16   RESOLUTION ON SUMMARY JUDGMENT, WHICH IS LARGELY WHY WE

17   PROCEEDED WITH PHASE 1-A, HAS BEEN ADDRESSED BY THE JURY'S

18   VERDICT IN PHASE 1-A, FROM THE COURT'S PERSPECTIVE.

19           THE SECOND ELEMENT WAS NOT REALLY CONTESTED BY MGA,

20   BUT IN ANY EVENT, IT HAS BEEN RESOLVED BY VIRTUE OF THE JURY     04:09

21   VERDICT AND THIS WHAT THE COURT DEFERRED RULING ON AS A MATTER

22   OF LAW PREVIOUSLY, WAS THE ISSUE OF SUBSTANTIAL SIMILARITY, AND

23   WHAT THE COURT IS GOING TO DO NOW IS CONSIDER WHETHER OR NOT,

24   BASED ON THE RECORD I HAVE BEFORE ME PRESENTLY, THE COURT IS IN

25   A POSITION TO ADJUDICATE THIS ISSUE.                            04:10

1    TO DETERMINE SUBSTANTIAL SIMILARITY, THE COURT MUST

2  APPLY BOTH THE EXTRINSIC TEST AND THE INTRINSIC TEST.

3    TO APPLY THE EXTRINSIC TEST, THE COURT MUST FIRST

4  EXAMINE THE SPECIFIC EXPRESSIVE ELEMENTS OF THE WORKS AT ISSUE

5  AND COMPARE THEM TO THOSE FOUND IN THE ALLEGING INFRINGING          04:10

6  WORK.  THIS INVOLVES ANALYTICALLY DISSECTING THE WORKS INTO

7  THEIR COMPONENTS IN ORDER TO DETERMINE WHETHER SOME OR ALL OF

8  THE SIMILARITIES ARE ATTRIBUTABLE TO UNPROTECTED ELEMENTS,

9  WHICH MUST BE FILTERED OUT OF THE ANALYSIS BEFORE A CONCLUSION

10  REGARDING SUBSTANTIAL SIMILARITY IS REACHED.                        04:10

11    TO APPLY THIS TEST OF VISUAL WORKS, SUCH AS THE

12  DRAWINGS AT ISSUE HERE, THE BASIC MODE OF ANALYSIS FOR

13  COMPARISON OF THE LITERARY ELEMENT APPLIES, AND UNPROTECTABLE

14  ELEMENTS SHOULD NOT BE CONSIDERED WHEN APPLYING THE EXTRINSIC

15  TEST TO ART WORK.  HOWEVER, THE PRECISE FACTORS EVALUATED FOR       04:10

16  LITERARY WORKS DO NOT READILY APPLY TO ART WORKS; RATHER, A

17  COURT LOOKS TO THE SIMILARITY OF THE OBJECTIVE DETAILS IN

18  APPEARANCE.

19    NOW, TO APPLY THE INTRINSIC TEST, THE COURT EXAMINES

20  THE OVERALL SIMILARITY OF EXPRESSION IN THE TWO WORKS FROM THE      04:11

21  PERSPECTIVE OF THE ORDINARY OBSERVER.

22    IN APPLYING THESE TESTS, THE COURT MUST BE MINDFUL,

23  AS MATTEL HAS URGED, THAT THE SO-CALLED INVERSE RATIO RULE THAT

24  STATES 'WHERE, AS HERE, A HIGH DEGREE OF ACCESS TO THE ORIGINAL

25  WORKS IS SHOWN, THE BURDEN TO SHOW SUBSTANTIAL SIMILARITY IS        04:11

1   SOMEWHAT REDUCED.'

2         APPLYING THESE TESTS TO WHAT I HAVE BEFORE ME

3   PRESENTLY, THE COURT CANNOT CONCLUDE THAT MATTEL HAS SHOWN IT

4   IS ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF SUBSTANTIAL

5   SIMILARITY.  ON SUMMARY JUDGMENT, MGA OFFERED EVIDENCE FROM ITS    04:11

6   DOLL DESIGN EXPERT POINTING OUT A NUMBER OF DIFFERENCES BETWEEN

7   THE BRATZ DOLLS AND THE REGISTERED DRAWINGS.  ADDITIONALLY, IT

8   OFFERED THE EVIDENCE OF PAULA GARCIA REGARDING THE CHANGES THAT

9   MGA WISHED TO MAKE IN THE PROCESS OF CREATING THE DOLLS FROM

10  THE DRAWINGS TO MAKE THEM LESS EDGY AND TO BETTER APPEAL TO THE   04:12

11  'TWEEN MARKET.  MGA ALSO OFFERED EVIDENCE THAT ITS SCULPTOR WAS

12  GIVEN A CERTAIN AMOUNT OF ARTISTIC FREEDOM IN CREATING THE

13  SCULPT.  ALL THESE COMBINE, IN THE COURT'S VIEW, TO CREATE A

14  TRIABLE ISSUE OF FACT REGARDING SUBSTANTIAL SIMILARITY.

15        RELATED TO THIS ISSUE IS ANOTHER ONE RAISED BY MGA:        04:12

16  WHAT IS THE SCOPE OF THE PROTECTABILITY OF THE COPYRIGHTED

17  DRAWINGS?

18        THE COURT CANNOT CONCLUDE THAT THE SCOPE IS, AS MGA

19  CONTENDS, LIMITED TO THE THIN PROTECTION THAT WOULD PROHIBIT

20  LITTLE MORE THAN A VIRTUAL COPYING OF THE WORKS.                 04:12

21        THE COURT'S ANALYSIS HERE BEGINS WITH A PRESUMPTION

22  OF PROTECTABILITY CONFERRED BY THE REGISTRATION OF THE

23  DRAWINGS, WHERE, AS HERE, THE RELEVANT WORKS HAVE REGISTERED

24  COPYRIGHTS, REGISTRATION IS PRIMA FACIE EVIDENCE OF THE

25  VALIDITY OF A COPYRIGHT.  THE PRESUMPTION CAN BE REBUTTED BY      04:13

```
 1 | THE DEFENDANTS' SHOWING THAT THE PLAINTIFF'S WORK IS NOT
 2 | ORIGINAL; THAT IS, UNWORTHY OF COPYRIGHT PROTECTION.
 3 | ORIGINALITY IN THIS CONTEXT MEANS LITTLE MORE THAN A
 4 | PROHIBITION AGAINST ACTUAL COPYING.
 5 |       THE SUPREME COURT HAS DESCRIBED THE LOW THRESHOLD FOR    04:13
 6 | COPYRIGHTABILITY:  THE SINE QUA NON OF COPYRIGHT IS
 7 | ORIGINALITY.  TO QUALIFY FOR COPYRIGHT PROTECTION, A WORK MUST
 8 | BE ORIGINAL TO THE AUTHOR.  ORIGINAL, AS THE TERM IS USED IN
 9 | COPYRIGHT, MEANS ONLY THAT THE WORK WAS INDEPENDENTLY CREATED
10 | BY THE AUTHOR, AS OPPOSED TO COPIED FROM OTHER WORKS, AND THAT  04:13
11 | IT POSSESSES AT LEAST SOME MINIMAL DEGREE OF CREATIVITY.
12 |       I DON'T BELIEVE THAT MGA HAS CONTENDED THAT THE
13 | REGISTERED DRAWINGS ARE UNWORTHY OF ANY PROTECTION, BUT I
14 | BELIEVE THAT MR. NOLAN ARTICULATED ON FRIDAY THAT THEY ARE
15 | SUGGESTING THAT THEY ARE WORTHY OF ONLY A THIN PROTECTION.     04:14
16 |       THE COURT IS GUIDED ON THIS POINT BY THE JELLYFISH
17 | CASE, THE SATAVA V. LOWRY CASE, OUT OF THE NINTH CIRCUIT IN
18 | 2003.  IN THAT CASE, AN ARTIST BY THE NAME OF SATAVA BEGAN
19 | MAKING A GLASS-IN-GLASS JELLYFISH SCULPTURE.  WHEN A SECOND
20 | ARTIST BY THE NAME OF LOWRY BEGAN MAKING EXTREMELY SIMILAR     04:14
21 | SCULPTURES, SATAVA SUED FOR COPYRIGHT INFRINGEMENT.  THE IDEA
22 | TO DO SUCH A SCULPTURE WAS HELD TO BE BEYOND COPYRIGHT
23 | PROTECTION.  SO, TOO, WERE THE ELEMENTS OF EXPRESSION THAT
24 | NATURALLY FOLLOW FROM THE IDEA, OUTSIDE THE SCOPE OF COPYRIGHT
25 | PROTECTION.  THUS, THE NINTH CIRCUIT HELD THAT SATAVA'S        04:14
```

1    SCULPTURES WERE UNPROTECTED TO THE EXTENT THE PHYSIOLOGY OF

2    JELLYFISH DROVE THE PRESENTATION OF THE SCULPTURES.  RELATEDLY,

3    TO THE EXTENT THAT TRADITIONAL METHODS OF GLASS-IN-GLASS

4    SCULPTURE ALSO INFLUENCED THE PRESENTATION, THE SCULPTURES WERE

5    UNPROTECTED.                                                     04:15

6         CERTAIN FEATURES DID WARRANT PROTECTION, HOWEVER.

7    FOR INSTANCE, THE COURT FOUND UNPROTECTABLE DEPICTION OF

8    JELLYFISH SWIMMING VERTICALLY, WITH BRIGHT COLORS, OR WITH

9    TENDRIL-LIKE TENTACLES ATTACHED TO ROUNDED BELLS; HOWEVER, THE

10   COURT FOUND PROTECTABLE SATAVA'S DISTINCTIVE CURLS OF           04:15

11   PARTICULAR TENDRILS, THE ARRANGEMENT OF CERTAIN HUES OF COLOR,

12   AND THE UNIQUE SHAPE OF THE JELLYFISH'S BELLS.

13        AFTER ITS ANALYSIS, THE NINTH CIRCUIT DID NOT PLACE A

14   HIGH QUALITATIVE VALUE ON SATAVA'S COPYRIGHT.  THE COURT STATED

15   IT THIS WAY:  'SATAVA'S COPYRIGHT ON THESE ORIGINAL ELEMENTS,   04:15

16   OR THEIR COMBINATION, IS THIN, HOWEVER, COMPRISING NO MORE THAN

17   HIS ORIGINAL CONTRIBUTION TO IDEAS ALREADY IN THE PUBLIC

18   DOMAIN.  STATED ANOTHER WAY, SATAVA MAY PREVENT OTHERS FROM

19   COPYING THE ORIGINAL FEATURES HE CONTRIBUTED, BUT HE MAY NOT

20   PREVENT OTHERS FROM COPYING ELEMENTS OF EXPRESSION THAT NATURE  04:16

21   DISPLAYS FOR ALL OBSERVERS, OR THAT THE GLASS-IN-GLASS MEDIUM

22   SUGGESTS TO ALL SCULPTORS.  SATAVA POSSESSES A THIN COPYRIGHT

23   THAT PROTECTS ONLY AGAINST VIRTUALLY IDENTICAL COPYING.'

24        THE DRAWINGS AT ISSUE HERE, HOWEVER, ARE NOT LIKE

25   SATAVA'S JELLYFISH SCULPTURES.  JELLYFISH ANATOMY IS MUCH       04:16

1    SIMPLER THAN HUMAN ANATOMY.  CORRESPONDINGLY, THERE IS MORE

2    VARIATION IN HUMANS, AT LEAST AS PERCEIVED BY FELLOW HUMANS,

3    SUCH AS FACIAL FEATURES, ETHNICITY, SIZE, SHAPE, PROPORTIONS,

4    HAIR COLOR, AND HAIR TEXTURE.  MOREOVER, AN ARTISTIC EXPRESSION

5    BASED ON A DRAWING IS MUCH LESS LIMITED THAN A GLASS-IN-GLASS          04:16

6    SCULPTURE.

7            ACCORDINGLY, ALTHOUGH THE COURT HAS DENIED THE MOTION

8    FOR SUMMARY JUDGMENT ON THE SUBSTANTIAL SIMILARITY ISSUE, THE

9    COURT CANNOT GO SO FAR AS TO FIND THAT THE REGISTERED DRAWINGS

10   ARE SUBJECT TO ONLY THE THIN PROTECTION, THE PROTECTION AGAINST       04:17

11   COPYING, REFERRED TO IN SATAVA.

12           THEREFORE, THE RELEVANT TEST TO BE EMPLOYED ON THIS

13   ISSUE IN THIS TRIAL, AND UPON WHICH THE JURY WILL ULTIMATELY BE

14   INSTRUCTED, IS THE TEST REGARDING THE EXTRINSIC/INTRINSIC

15   ANALYSIS SET FORTH ABOVE.                                            04:17

16           SO THAT IS THE COURT'S RULING ON THE SCOPE OF

17   COPYRIGHT PROTECTABILITY.

18           ARE THERE ANY QUESTIONS CONCERNING THE RULING?

19           FIRST, WITH MATTEL.

20        **MR. QUINN:**  NO, YOUR HONOR.                                 04:17

21        **THE COURT:**  WITH MGA?

22        **MR. NOLAN:**  NOT AT THIS POINT.

23        **THE COURT:**  VERY WELL.

24           I'M NEXT TURNING TO THE MGA MOTION FOR LEAVE TO FILE

25   A SUPPLEMENTAL EXPERT REPORT.  I'VE GOT TO SAY THAT THERE'S          04:1

1    NOTHING THAT I'VE SPENT MORE TIME ON OR REVERSED MYSELF MORE

2    TIMES ON IN THE LAST TWO DAYS THAN ON THIS PARTICULAR MOTION.

3          ULTIMATELY, THE COURT IS GOING TO GRANT THE MOTION.

4    I'M GOING TO PERMIT THE LEAVE TO FILE THE SUPPLEMENTAL EXPERT

5    REPORT, BECAUSE I FIND THAT THE DISCOVERY THAT WAS PRODUCED          04:18

6    REALLY COULD NOT BE USED EFFICIENTLY AT TRIAL WITHOUT IT COMING

7    IN THROUGH AN EXPERT.  I CONSIDERED LONG AND HARD MATTEL'S

8    SUGGESTION OF SIMPLY GIVING LEAVE TO USE THE DISCOVERY THAT WAS

9    RECEIVED AS CROSS-EXAMINATION, BUT GIVEN THE NATURE OF THE

10   DISCOVERY, GIVEN THE NATURE OF THE FINANCIAL RECORDS                 04:18

11   THEMSELVES, I THINK THAT'S MUCH MORE AKIN TO THE SITUATION WE

12   CONFRONTED WHEN MATTEL WAS SEEKING TO ALLOW THE EXPERT REPORT

13   FOR 42LC.

14         HOWEVER, AT THE SAME TIME, TO AVOID THIS SERVING AS

15   AN IMPROPER SURREBUTTAL, I AM GOING TO GIVE LEAVE TO                 04:18

16   MR. WAGNER, MATTEL'S FINANCIAL EXPERT, TO ADDRESS THIS SAME

17   DATA, THIS SAME EVIDENCE, THE SAME REPORT, IN HIS EXPERT

18   PRESENTATION.

19         WHETHER OR NOT WE HAVE DEPOSITIONS ON THIS FINE POINT

20   BY EITHER EXPERT OR FOR EITHER EXPERT BEFORE -- WHAT WOULD BE        04:19

21   BEFORE THEY TESTIFY, IS SOMETHING THAT I'M GOING TO LEAVE UP TO

22   THE PARTIES.  I DON'T KNOW IF YOU'RE GOING TO BE SEEKING THAT

23   OR NOT, BUT ESSENTIALLY, WHAT I'M DOING IS I'M ALLOWING BOTH

24   EXPERTS TO SPEAK TO THIS ISSUE, NOTWITHSTANDING THE

25   UNTIMELINESS OF THE DISCOVERY OR THE UNTIMELINESS OF THE EXPERT      04:19

```
 1    REPORT.

 2              DOES EITHER SIDE WISH TO ADDRESS THIS?

 3              MR. ROTH:  NO, YOUR HONOR.

 4              MR. QUINN:  NO, YOUR HONOR.

 5              THE COURT:  VERY WELL.                          04:19

 6         THE NEXT MOTION IS MGA'S MOTION IN LIMINE NUMBER

 7    SEVEN.  THIS IS A MOTION IN LIMINE TO EXCLUDE MICHAEL WAGNER.

 8    THAT MOTION IS DENIED, ALTHOUGH I WANT TO SPEAK TO A FEW OF THE

 9    ISSUES RAISED BY THE MOTION.

10         THE COURT BELIEVES THAT MR. WAGNER'S TESTIMONY         04:20

11    REGARDING THE PROFITS RECEIVED BY MGA AND LARIAN ARE RELEVANT,

12    AND THE PROFITS INCLUDE BOTH THE CASH DISTRIBUTIONS AND VALUE

13    OF THE COMPANY.  BOTH SIDES CITE A NUMBER OF CASES THAT THE

14    COURT HAS REVIEWED IN CONSIDERING THIS MOTION.  IT'S CLEAR THAT

15    THE ANALYSIS TO BE EMPLOYED HERE IS TO AVOID EVIDENCE THAT IS   04:20

16    TOO SPECULATIVE, WHERE THERE IS UNDUE SPECULATION BEING OFFERED

17    IN TERMS OF EITHER THE PROFITS RECEIVED OR THE VALUE OF THE

18    COMPANY; AND I THINK, BASED ON THE EXPERT REPORT, THAT IT IS

19    NOT TOO SPECULATIVE TO GO TO THE JURY.

20         OBVIOUSLY, THERE ARE ARGUMENTS TO BE MADE BY MGA        04:20

21    WHICH CALL INTO QUESTION HOW MUCH WEIGHT THE JURY IS TO GIVE

22    THIS PARTICULAR EXPERT TESTIMONY, BUT I THINK THAT IS SOMETHING

23    WHICH IS VERY SUITABLE TO TRIAL.

24         ANOTHER POINT RELATES TO THE CONCERN ABOUT DOUBLE

25    COUNTING, AND THAT IS A CONCERN THE COURT HAS AS WELL.  BUT I'M   04:21
```

1   PERSUADED BY MATTEL'S ARGUMENT ON THEIR ENTITLEMENT TO SEEK

2   SEVERAL LIABILITY AND SEVERAL DAMAGES. CERTAINLY, AT THE END

3   OF THE DAY, IF THE COURT, FOR EXAMPLE, IMPOSES AN INJUNCTION,

4   ASSUMING THAT A COPYRIGHT INFRINGEMENT WERE TO BE FOUND OR IF

5   THE DAMAGES BEING RETURNED CLEARLY DO PLAY OUT TO BE DOUBLE        04:21

6   COUNTING, MATTEL WILL HAVE TO EXERCISE A CHOICE OF REMEDIES,

7   AND SOME OF THAT DAMAGE, OR ENTIRE PORTIONS OF THAT DAMAGE, MAY

8   HAVE TO BE SET ASIDE.

9            BUT AT THIS POINT, I THINK IT WOULD BE ENTIRELY

10  PREMATURE TO FORCE MATTEL TO CHOOSE BETWEEN, FOR EXAMPLE,          04:22

11  PROFITS OBTAINED BY MGA VERSUS PROFITS OBTAINED BY

12  ISAAC LARIAN. THIS IS PARTICULARLY UNDERSCORED SINCE THE

13  DAMAGES HERE IS NOT JUST IN THE COPYRIGHT INFRINGEMENT BUT ALSO

14  ATTENDS TO THE STATE TORT CLAIMS THAT THE JURY HAS FOUND

15  LIABILITY AS AGAINST BOTH MGA AND ISAAC LARIAN, AND WITH          04:22

16  RESPECT TO CONVERSION, MGA HONG KONG AS WELL.

17           HAVING SAID THAT, THOUGH, WE'RE CLEARLY GOING TO HAVE

18  TO SPELL OUT ON THE VERDICT FORM THESE VARIOUS PERMUTATIONS AND

19  THESE VARIOUS CATEGORIES OF DAMAGES SO THAT IF DAMAGES ARE

20  RETURNED AGAINST MGA OR ISAAC LARIAN, WE WOULD BE IN A POSITION   04:22

21  POST-TRIAL TO MAKE THE APPROPRIATE RULINGS.

22           I'M TRYING TO THINK IF THERE'S ANYTHING ELSE HERE.

23           I DO FIND THAT THE CALCULATIONS BY MR. WAGNER ARE

24  BASED ON A DEFENSIBLE ANALYSIS, BOTH IN TERMS OF THE HISTORICAL

25  REVENUES AND THE ENTERPRISE VALUE ANALYSIS THAT HE ENGAGES IN.    04:23

```
 1   I DID TAKE A CAREFUL LOOK AT THAT BURNS CASE OUT OF THE WESTERN
 2   DISTRICT OF NEW YORK THAT MGA CITES TO, BUT I THINK THE REPORT
 3   HERE IS DISTINGUISHABLE.  THE INJUNCTION IS BY NO MEANS A
 4   FOREGONE CONCLUSION AT THIS POINT, SO I THINK WE NEED TO
 5   PROCEED WITH THE EXPERT.                                        04:23
 6              SO THAT'S MY RULING ON MGA NUMBER SEVEN.
 7              ANY QUESTIONS FROM EITHER SIDE ON THAT?
 8         MR. QUINN:  NO QUESTIONS FROM MATTEL.
 9         THE COURT:  VERY WELL.
10         MR. ROTH:  WHILE WE CERTAINLY ACCEPT THE COURT'S          04:23
11   DECISION, OUR PRIMARY CONCERN IS THE ONE THE COURT HAS
12   IDENTIFIED, AND WE DO BELIEVE THAT, AS PRESENTED, MR. WAGNER IS
13   SEEKING OR IS EXPRESSING AN OPINION THAT WOULD, HE ADMITS,
14   DOUBLE-COUNT DOLLARS.
15         THE COURT:  AND I READ THAT.  YOU INCLUDE THE            04:24
16   DEPOSITION TRANSCRIPT IN THERE, AND HE DOUBLE-COUNTS IN THE
17   SENSE OF THAT IF YOU COUNTED BOTH ISAAC LARIAN AND MGA.  AND I
18   DO GET IT; I DO UNDERSTAND HOW IT'S THE SAME DOLLARS; AND
19   THAT'S WHY I THINK WE NEED TO SEPARATE THIS OUT ON THE VERDICT
20   FORM.                                                          04:24
21              BUT THEY ARE SEPARATE DEFENDANTS, AND AS LONG AS WE
22   CAN SEPARATE THAT OUT IN THE VERDICT FORM AND THE JURY HAS A
23   BASIS, A FACTUAL BASIS, TO MAKE THAT DISTINCTION, I THINK WE'D
24   BE ABLE TO MAKE THE DECISIONS THAT WE NEED TO POST-TRIAL IF
25   THAT ARISES.                                                   04:24
```

```
 1                I INTERRUPTED YOU, BUT I DO UNDERSTAND THE CONCERN.

 2           MR. ROTH:   JUST FROM A PURE MATH PERSPECTIVE, WE

 3    WOULD ASSUME THAT ANY MONIES AWARDED AGAINST MR. LARIAN, BASED

 4    UPON DISTRIBUTION PROFITS, WOULD THEN BE SUBTRACTED FROM THE

 5    PROFITS THAT WERE AWARDED AGAINST MGA.                                04:25

 6           THE COURT:   I UNDERSTAND THE ARGUMENT.   I'M NOT GOING

 7    TO RULE ON THAT RIGHT NOW, BUT THAT'S THE TYPE OF RULING THAT I

 8    WOULD WANT TO BE IN A POSITION TO MAKE POST-TRIAL, DEPENDING ON

 9    THE CIRCUMSTANCES.   IT WOULD BE PREMATURE FOR THE COURT TO RULE

10    ON THAT RIGHT NOW, BUT I'M VERY MINDFUL OF THAT ISSUE, AND          04:25

11    THAT'S PRECISELY WHY I WOULD NOT HAVE A VERDICT FORM WHICH

12    WOULD SIMPLY ALLOW THE JURY TO FILL IN THE TOTAL AMOUNT OF

13    DAMAGES.   WE NEED TO MAKE SURE THAT IT'S BROKEN DOWN.   BUT I AM

14    MINDFUL OF THE CONCERN, AND I THINK THAT CONCERN CAN BE

15    ADDRESSED POST-TRIAL.                                               04:25

16           MR. ROTH:   UNDERSTOOD, YOUR HONOR.

17           THE COURT:   VERY WELL.

18                THE NEXT MOTION IS MGA NUMBER EIGHT, REGARDING

19    HOLLANDER.

20                MY DECISION ON NUMBER EIGHT IS TO GRANT MOTION         04:26

21    IN LIMINE NUMBER EIGHT, TO EXCLUDE THE TESTIMONY OF

22    MR. HOLLANDER.   THIS IS SOMEWHAT TIED IN OR CONNECTED WITH THE

23    REPRESENTATION THAT I RECEIVED FROM MS. AGUIAR THE OTHER DAY

24    WITH RESPECT TO MATTEL'S MOTION NUMBER 11 RELATED TO MR. GRUCA,

25    THAT MGA IS WITHDRAWING THAT AND THEY'RE NOT PLANNING TO USE         04:26
```

```
 1   THE SURVEY EVIDENCE FOR MR. GRUCA, FOR WHICH MR. HOLLANDER'S
 2   TESTIMONY OR EXPERT REPORT WAS A REBUTTAL.  SO IF MGA IS NO
 3   LONGER PLANNING TO USE THAT AND THEY'RE STILL REPRESENTING TO
 4   THE COURT, THEN THE COURT IS GOING TO TREAT THIS AS THE
 5   REBUTTAL REPORT THAT IT WAS PROFFERED TO BE AND PRECLUDE THAT        04:26
 6   FROM MATTEL'S CASE-IN-CHIEF.

 7          I LOOK TO THE MERITS OF THIS ISSUE AS WELL.  THE LAW
 8   GENERALLY SEEMS TO BE THAT INTRINSIC ANALYSIS DOES NOT ALLOW
 9   FOR EXPERT TESTIMONY.  HOWEVER, I'M SOMEWHAT PERSUADED BY THE
10   MATTEL LINE OF CASES WHICH SUGGESTS THAT IN THE PARTICULAR          04:27
11   CONTEXT OF CHILDREN, A SUB GROUP LIKE CHILDREN, THAT 'AVERAGE,
12   REASONABLE ADULTS MIGHT NOT BE ABLE TO FULLY UNDERSTAND THAT A
13   TYPE OF SURVEY ANALYSIS OF THIS NATURE MIGHT BE ADMISSIBLE'; SO
14   I SUPPOSE ON THE MERITS, I MIGHT BE INCLINED TO INCLUDE IT.

15          HOWEVER, GIVEN THAT THIS WAS NOT AN EXPERT REPORT           04:27
16   THAT WAS SUBMITTED BY MATTEL IN THE FIRST INSTANCE, THAT'S
17   GIVING MGA AN OPPORTUNITY TO RESPOND TO IT, BUT RATHER IT WAS A
18   REBUTTAL REPORT, AND IT WAS A REBUTTAL OF SOMEONE WHO WAS NO
19   LONGER BEING CALLED, I THINK THE BEST COURSE IS TO KEEP ALL OF
20   THE SURVEY EVIDENCE OUT.                                           04:27

21          BUT I DO WANT TO RECONFIRM WITH MGA THAT THEY ARE NOT
22   CALLING MR. GRUCA.

23      MS. AGUIAR:  THE STATEMENT THAT I MADE ON THE RECORD
24   THE OTHER DAY IN COURT WAS THAT WE ARE NOT CALLING THE TWO
25   PEOPLE THAT THIS SURVEY SUPPOSEDLY IS IN REBUTTAL TO; AND THOSE     04:28
```

| | |
|---|---|
| 1 | TWO PEOPLE ARE ROBERT TONNER -- AND WE CURRENTLY DON'T INTEND |
| 2 | TO CALL MARY BERGSTEIN EITHER.  THOSE WERE THE TWO EXPERTS THAT |
| 3 | WE'RE NOT CALLING.  THOSE ARE THE TWO EXPERTS THAT MR. TONNER |
| 4 | WAS SUPPOSEDLY REBUTTING. |
| 5 | **THE COURT:**  WHAT ABOUT THE GRUCA SURVEY EVIDENCE?  IS |
| 6 | THAT OUT AS WELL?  THE ON-LINE SURVEY BY BRAND RESEARCH. |
| 7 | **MR. ROTH:**  THE COUPLING THERE WAS, MATTEL HAD FILED A |
| 8 | MOTION SEEKING TO HAVE MR. GRUCA'S SURVEY EXCLUDED.  WE ARGUED |
| 9 | THAT IT SHOULD BE INCLUDED UNDER THE STRAUS CASE BECAUSE IT WAS |
| 10 | CLEARLY APPROPRIATE REBUTTAL.  MATTEL THEN MADE A MOTION THAT |
| 11 | -- I THINK IT'S A MR. KIVETZ -- WHO WOULD OFFER -- THAT IF WE |
| 12 | WERE PERMITTED TO PROCEED WITH THE GRUCA SURVEY, THEY WANTED TO |
| 13 | OFFER UP THE KIVETZ SURVEY.  THAT'S THE SURVEY, YOU RECALL, |
| 14 | THAT WAS CONCLUDED, I THINK, SOMETIME IN EARLY JUNE.  THERE WAS |
| 15 | SOME ARGUMENT ABOUT WHETHER THAT HAS BEEN PROPERLY PRODUCED. |
| 16 | BUT THERE REALLY WAS NO EXPLICIT CONNECTION, AT LEAST FROM |
| 17 | MGA'S PERSPECTIVE, BETWEEN HOLLANDER ON THE ONE HAND AND GRUCA |
| 18 | ON THE OTHER HAND. |
| 19 | **THE COURT:**  WHILE WE'RE ON THAT, MR. ROTH, ARE YOU |
| 20 | PROCEEDING WITH THE GRUCA REPORT? |
| 21 | **MR. ROTH:**  YES, WE ARE, YOUR HONOR.  ASSUMING THAT |
| 22 | THE COURT, AS WE BELIEVE IS APPROPRIATE, DENIES MOTION |
| 23 | *IN LIMINE* NUMBER 11 FILED BY MATTEL, WE WOULD SUBMIT THE GRUCA |
| 24 | REPORT. |
| 25 | **THE COURT:**  ALL RIGHT.  I WAS TYING IT, THEN, TO THE |

04:28
04:29
04:29
04:29
04:29
04:30

```
 1   WRONG ONE.  BUT THE BOTTOM LINE, THOUGH, GETTING BACK TO

 2   HOLLANDER, IS THE EXPERT TO WHICH MR. HOLLANDER WAS IN

 3   REBUTTAL, THAT SURVEY IS NOT BEING INTRODUCED.

 4            IS THAT CORRECT, MS. AGUIAR?

 5        MS. AGUIAR:  YES.                                          04:30

 6            MR. HOLLANDER IS THE SURVEY EXPERT.  INTERESTINGLY

 7   ENOUGH -- AND THIS IS PART OF OUR ARGUMENT, YOUR HONOR, AND

 8   MAYBE IT'S THE CAUSE OF SOME OF THE CONFUSION -- THE TWO

 9   WITNESSES WHO HE CLAIMS TO BE REBUTTING, NEITHER ONE OF THEM IS

10   A SURVEY EXPERT.  AND THAT IS PART OF MY ARGUMENT TO YOUR       04:30

11   HONOR, THAT EVEN WHEN WE GET TO MATTEL'S REBUTTAL CASE THAT I

12   WILL BE ARGUING TO YOUR HONOR THAT IT IS NOT PROPER REBUTTAL.

13            THE EXPERTS TONNER AND BERGSTEIN DO NOT PUT IN SURVEY

14   EVIDENCE OF ANY SORT.  AND SO MR. HOLLANDER, WHO'S THE SURVEY

15   EXPERT FOR MATTEL, CLAIMS THAT HE IS REBUTTING THEM.  WE DON'T   04:31

16   BELIEVE THAT'S ACTUALLY PROPER REBUTTAL TO PEOPLE WHO DIDN'T

17   PROFFER A SURVEY.

18        THE COURT:  VERY GOOD.

19            I'LL HEAR FROM MATTEL ON THIS.  OTHERWISE, THOUGH, MY

20   INCLINATION IS TO DENY THIS AS PART OF MATTEL'S CASE-IN-CHIEF.   04:31

21            ANYONE FROM MATTEL ON THIS?

22        MR. KIDMAN:  TO RESPOND TO MS. AGUIAR'S ARGUMENT THAT

23   HOLLANDER IS NOT PROPER REBUTTAL BECAUSE HE WASN'T RESPONDING

24   TO SURVEY TESTIMONY, BY THAT SAME LOGIC, MR. GRUCA SHOULD BE

25   EXCLUDED, BECAUSE MR. GRUCA PURPORTS TO BE REBUTTAL TO THE       04:31
```

```
 1   EXPERT OPINION OF CAROL SCOTT, AND CAROL SCOTT DID NOT SUBMIT
 2   AN EXPERT.  AND, INDEED, OUR POSITION IS THAT MR. GRUCA IS NOT
 3   PROPER REBUTTAL TESTIMONY.
 4        THE COURT:  I APPRECIATE THAT.  THE COURT'S ANALYSIS
 5   WAS NOT PARALLEL TO MS. AGUIAR'S STATEMENT.  CONFINE YOUR        04:32
 6   RESPONSE TO THE COURT'S ANALYSIS.  THIS IS CLEARLY A REBUTTAL
 7   EXPERT DESIGNATED AS SUCH BY MATTEL.  THE EXPERTS TO WHOM HE
 8   WAS DESIGNATED AS A REBUTTAL EXPERT ARE NO LONGER BEING CALLED,
 9   SO ON THAT BASIS AND THAT BASIS ONLY, THE COURT IS NOT GOING TO
10   PERMIT HIM TO GO FORWARD IN THE CASE-IN-CHIEF.                   04:32
11        IS THERE ANY RESPONSE TO THAT?
12        MR. KIDMAN:  NO, YOUR HONOR.
13        THE COURT:  VERY WELL.
14        MS. AGUIAR:  YOUR HONOR, JUST TO CLOSE IT OUT, IF WE
15   DO GET TO THE POINT AT SOME JUNCTURE WHERE WE ARE ARGUING ON     04:32
16   THE HOLLANDER MOTION AGAIN, I DID JUST WANT TO RESERVE THE
17   RIGHT TO ARGUE REGARDING THOSE CASES THAT MATTEL CITED ON
18   WHETHER OR NOT EXPERT TESTIMONY OF THIS SORT WOULD BE PROPER
19   WITH THIS "INTENDED AUDIENCE."  IT'S THE LAY PUBLIC AND IT'S
20   CHILDREN OF A CERTAIN AGE.                                       04:33
21        BUT CERTAINLY, I DISAGREE AND I WOULD LIKE THE
22   OPPORTUNITY, ONLY IF IT RISES LATER, TO ADDRESS THAT.
23        THE COURT:  FAIR ENOUGH.  WE'LL PUT THAT OFF FOR
24   ANOTHER DAY.  I GIVE YOU THE COURT'S TENTATIVE THOUGHTS, HAVING
25   REVIEWED THOSE CASES, BUT I'LL CERTAINLY GIVE BOTH SIDES AN      04:33
```

1 OPPORTUNITY TO ARGUE BEFORE MR. HOLLANDER WILL BE CALLED AS

2 PART OF THE REBUTTAL CASE.

3       **MS. AGUIAR:** THANK YOU, YOUR HONOR.

4       **THE COURT:** VERY WELL.

5       MGA NUMBER NINE, THIS IS WITH RESPECT TO MR. OMAN,   04:33

6 THE INDIVIDUAL FORMERLY FROM THE U.S. COPYRIGHT OFFICE.

7       MY TENTATIVE ON THIS IS TO PERMIT MR. OMAN TO TESTIFY

8 WITH RESPECT TO THE PRACTICES AND PROCEDURES OF THE U.S.

9 COPYRIGHT OFFICE AND TO TESTIFY WITH RESPECT TO REGISTRATION

10 PRACTICES IN GENERAL, INCLUDING IN HONG KONG, HOWEVER, TO   04:33

11 EXCLUDE HIS TESTIMONY THAT RELATES TO HIS OPINION CONCERNING

12 THE PRACTICES AND STANDARDS FOR SOPHISTICATED COMPANIES AND

13 VARIOUS LEGAL OPINIONS THAT HE HAS OFFERED AND INTERPRETATIONS

14 OF COPYRIGHT LAW.

15       BASICALLY, I THINK HE'S CERTAINLY WELL QUALIFIED TO   04:34

16 TALK ABOUT REGISTRATION PRACTICES AND PROCEDURES, BASED ON HIS

17 EXPERIENCE. AND I THINK THAT GIVEN THE EVIDENCE THAT HAS BEEN

18 INTRODUCED ALREADY, AND THAT THE COURT ANTICIPATES WILL BE

19 INTRODUCED, I CAN SEE A BENEFIT TO THE JURY FROM HAVING THAT

20 TYPE OF TESTIMONY. BUT I THINK HIS TESTIMONY CONCERNING THE   04:34

21 STANDARDS FOR SOPHISTICATED COMPANIES AND THE DIFFERENT

22 STANDARDS ON THAT AND THE VARIOUS LEGAL OPINIONS, THAT IS

23 CONSISTENT WITH WHAT THE COURT HAS PREVIOUSLY STATED ABOUT NOT

24 HAVING LEGAL OPINION OFFERED OF THAT SORT, BUT RATHER, ONLY

25 HAVE THE COURT'S LEGAL INSTRUCTIONS TO THE JURY GOVERN THAT --   04:34

1   FAVORS PRECLUDING THAT TYPE OF TESTIMONY.  SO BASICALLY, MGA

2   MOTION NUMBER NINE WILL BE GRANTED IN PART AND DENIED IN PART.

3        LET ME HEAR FROM BOTH SIDES BEFORE I MAKE THAT FINAL.

4        **MR. ZELLER:**  WE SUBMIT ON THAT, YOUR HONOR.

5        **THE COURT:**  VERY WELL.                                04:35

6        **MR. NOLAN:**  ON BEHALF OF MGA, I WANT TO FOCUS

7   PARTICULARLY ON THE APPARENT INDICATION THAT MR. OMAN WOULD BE

8   ALLOWED TO TESTIFY BEFORE THIS JURY ON REGISTRATION PROCEEDINGS

9   IN HONG KONG, IN EFFECT, THEREBY TESTIFYING AS AN EXPERT ON

10  HONG KONG LAW AND PROCEDURES.  THERE'S AT LEAST THREE          04:35

11  PARTICULAR POINTS THAT I WANT TO --

12       **THE COURT:**  LET ME STOP YOU FOR ONE SECOND.  IT WOULD

13  NOT BE HONG KONG LAW.  IT WOULD BE MORE HONG KONG PROCEDURES.

14  I KNOW THAT MAY BE A FINE POINT -- AND YOU'RE CERTAINLY GOING

15  TO RESERVE ALL OF YOUR OBJECTIONS ON FOUNDATION ON THIS -- BUT  04:36

16  JUST TO BE CLEAR, I'M NOT GOING TO PERMIT MR. OMAN, OR ANYBODY

17  ELSE FOR THAT MATTER, TO TUTOR THE JURY ON LEGAL PRINCIPLES.

18  THIS IS MORE A MATTER OF PRACTICE AND PROCEDURES BASED ON HIS

19  EXPERIENCE AND TRAINING.  AND THAT'S THE DIVIDING LINE THAT I'M

20  ENVISIONING.                                                   04:36

21       BUT WITH THAT IN MIND, PLEASE GO AHEAD.

22       **MR. NOLAN:**  THANK YOU FOR THAT, YOUR HONOR.

23       I HAD MISAPPREHENDED THE COURT'S INITIAL RULING.

24  HOWEVER, I DO WANT TO GO BACK TO ONE THING THAT WAS TROUBLING

25  ABOUT THE WHOLE WAY THIS ISSUE DEVELOPED; AND THAT IS, OF       04:36

1    COURSE, THE COURT SET OUT STRICT TIMELINES FOR THE DESIGNATION

2    OF EXPERTS AND WHAT THEY WERE GOING TO TESTIFY TO.

3         MR. OMAN PREPARED A REPORT, LIMITED IT TO THE U.S.

4    COPYRIGHT OFFICE PROCEDURES. AT HIS DEPOSITION, HE AGAIN

5    REAFFIRMED THAT WAS THE LIMITED AREA THAT HE WAS GOING TO OFFER      04:37

6    AN OPINION ON, EVEN AT THAT DEPOSITION, DISAVOWING THAT HE HAD

7    SIGNIFICANT EXPERIENCE IN FOREIGN JURISDICTIONS.

8         IT WASN'T UNTIL SIX WEEKS AFTER THE DATE FOR THE

9    DEADLINE FOR EXPERT DESIGNATIONS, AND WELL AFTER HIS DEPOSITION

10   WAS TAKEN IN THIS CASE, THAT MATTEL SUBMITTED A SUPPLEMENTAL       04:37

11   DECLARATION WHICH THEN SET FORTH HIS ALLEGED QUALIFICATIONS TO

12   TESTIFY EVEN TO THE NARROW ISSUE THAT THE COURT IS LEANING

13   TOWARDS ALLOWING HIM TO TESTIFY; THAT IS, HONG KONG PROCEDURES.

14        WE IMMEDIATELY FILED A MOTION TO STRIKE THAT. WE

15   THOUGHT THAT IT WAS LATE BY SIX WEEKS FOR CERTAIN, AND THAT HIS     04:37

16   QUALIFICATIONS WERE NOT SUCH THAT HE, AS A DOMESTIC LAWYER,

17   COULD BE IN THE POSITION TO OFFER THIS TYPE OF TESTIMONY.

18        WE ALSO BELIEVE, YOUR HONOR, THAT -- AND THIS TIES

19   BACK TO THE WHOLE ISSUE OF THE HONG KONG PROCEEDINGS, AND I

20   DON'T WANT TO BELABOR THIS POINT, BUT THE COURT WILL RECALL,       04:38

21   PRIOR TO THE START OF 1-A, WE HAD SUBSTANTIAL ARGUMENT ON THE

22   ADMISSIBILITY AND RELEVANCE OF THE HONG KONG PROCEEDINGS. SOME

23   OF THAT EVIDENCE CAME IN IN THE CONTEXT OF 1-A, WHERE THE ISSUE

24   WAS OBVIOUSLY TIMING, AND TO A LESSER DEGREE, OWNERSHIP; BUT

25   THE TIMING, OBVIOUSLY, WOULD INFORM THE COURT WITH RESPECT TO      04:38

```
 1   THE OWNERSHIP QUESTION; SO STATEMENTS MADE BY MGA OR

 2   ISAAC LARIAN AND MGA IN PROCEEDINGS INITIATED IN HONG KONG CAME

 3   INTO EVIDENCE.

 4         HOWEVER, IN THIS PHASE OF THE CASE NOW, YOU HAD

 5   INDICATED THAT YOU WOULD TAKE UP THE HONG KONG PLEADINGS AND      04:38

 6   COLLATERAL PLEADINGS WHEN THEY AROSE SO THAT THE ISSUE WOULD BE

 7   BETTER FRAMED.

 8         IT IS STRIKING TO US, YOUR HONOR, THAT WE HAVE GONE

 9   THROUGH -- AND I KNOW THE COURT HAS DEVOTED A SUBSTANTIAL

10   AMOUNT OF TIME REVIEWING THE RECORD EVIDENCE TO REACH THE         04:39

11   DECISION YOU DID AT THE START OF THIS HEARING WITH RESPECT TO

12   'WHAT IS THE LEVEL OF PROTECTION, ET CETERA, ET CETERA,' FOR

13   CARTER BRYANT'S DRAWINGS.

14         THERE IS NO EVIDENCE PRESENTED TO THIS JURY THAT SUCH

15   PROCEDURES WERE EVER FOLLOWED IN HONG KONG WITH RESPECT TO THE    04:39

16   TESTS THAT WOULD BE APPLIED, AND WE THINK THAT WE WOULD RESERVE

17   FOR FURTHER ARGUMENT, YOUR HONOR -- CERTAINLY, NOT ON THE PHONE

18   LIKE THIS, BUT JUST TO REMIND THE COURT OF AN EARLIER

19   INDICATION THAT AT A POINT IN TIME BEFORE THESE HONG KONG

20   PLEADINGS GO IN -- AND WE NOW HAVE, OVER THE WEEKEND, A NUMBER    04:39

21   OF DOCUMENTS THAT WE'VE RECEIVED BACK FROM MATTEL WITH TRIAL

22   EXHIBIT NUMBERS, WHERE WE BELIEVE, FRANKLY, THAT -- I

23   RESPECTFULLY SUBMIT THAT THIS COPYRIGHT ISSUE IS GOING TO BE

24   SUFFICIENTLY CONFUSING FOR THIS JURY AND THEY HAVE A LOT OF

25   HOMEWORK TO DO ALREADY ON WHAT ARE THE SUBSTANTIAL              04:40
```

```
 1   SIMILARITIES, AND THAT THE REAL RISK HERE WITH MR. OMAN
 2   TESTIFYING NOW AS TO HONG KONG PROCEDURES IS TO ACTUALLY --
 3   THERE IS A REAL PREJUDICE HERE THAT AN END RUN WILL OCCUR
 4   AROUND WHAT THE COURT'S INSTRUCTIONS ARE WITH RESPECT TO WHAT
 5   THE TEST IS IN THE MATTERS TO BE TRIED IN THIS PHASE OF THE        04:40
 6   CASE AND WOULD REQUIRE US AN ENORMOUS AMOUNT OF TIME TO TRY TO
 7   PUT INTO CONTEXT STATEMENTS THAT ARE CONTAINED IN PLEADINGS
 8   FILED IN FOREIGN JURISDICTIONS WHERE THE TEST IS NOT THE SAME,
 9   WHICH YOU HAVE JUST GONE THROUGH IN THE ANALYSIS ON THE SUMMARY
10   JUDGMENT.                                                          04:40

11          WE DON'T HAVE TO BELABOR THIS ALL TODAY, YOUR HONOR.
12   I JUST WOULD WANT TO HAVE AN OPPORTUNITY, MAYBE IN PERSON,
13   BEFORE ANY OF THE HONG KONG PLEADINGS ARE INTRODUCED, WHERE WE
14   CAN ACTUALLY MAKE THIS POINT AND SHOW TO YOU THE ACTUAL
15   LANGUAGE OR POSITION THAT MATTEL WOULD LIKE TO USE AND             04:41
16   INTRODUCE BEFORE THIS JURY.

17          BUT THE BOTTOM LINE IS, THIS WHOLE HONG KONG -- I
18   ACTUALLY KNOW, FROM THE AMOUNT OF EXHIBITS THAT ARE BEING SENT
19   OVER TO US, THAT WE ARE GOING TO HAVE TO HAVE ALMOST A TRIAL
20   WITHIN A TRIAL ON THE COPYRIGHT IMPLICATIONS OF POSITIONS THAT     04:41
21   WERE TAKEN IN HONG KONG AND WHETHER OR NOT THEY ARE CONSISTENT
22   OR INCONSISTENT WITH WHAT POSITION IS GOING TO BE TAKEN IN THIS
23   CASE.

24          IT WOULD BE SIMILAR TO, YOUR HONOR, IF I WANTED TO
25   INTRODUCE INTO EVIDENCE IN THIS CASE POSITIONS THAT MATTEL HAS     04:41
```

```
 1   TAKEN IN OTHER LITIGATION MATTERS OUTSIDE OF CALIFORNIA.  FOR

 2   INSTANCE, WE TALKED ABOUT THE GOLDBERGER CASE AND THE POSITIONS

 3   THAT WERE TAKEN THERE, AND I THINK THE COURT KNOWS THAT THE

 4   STANDARD BETWEEN THE NINTH CIRCUIT AND THE SECOND CIRCUIT ARE

 5   DIFFERENT WITH RESPECT TO THE SCOPE OF PROTECTABILITY AND HOW      04:42

 6   YOU ANALYZE THAT.

 7          THE SAME ISSUE, IN A MUCH GRANDER AND MUCH MORE

 8   PREJUDICIAL WAY, APPLIES WHEN WE'RE TALKING ABOUT A FOREIGN

 9   JURISDICTION AND TRYING TO EXPLAIN WHAT THE IMPLICATIONS ARE.

10   AND I KNOW THE LIMITATION THE COURT HAS PLACED -- AND THIS WILL    04:42

11   BE THE LAST ONE I MAKE -- I KNOW THE COURT HAS PUT A LIMITATION

12   ON THE FACT THAT MR. OMAN WILL NOT BE ALLOWED TO TESTIFY AS TO

13   HONG KONG LAW.

14          BUT WE RESPECTFULLY SUBMIT THAT THE 403 ANALYSIS IS

15   EQUALLY STRONG ON EVEN HAVING HIM APPEAR AS AN EXPERT ON HONG      04:42

16   KONG PROCEDURES, BECAUSE WE THINK IT'S GOING TO LAY A

17   FOUNDATION FOR MATTEL TO INTRODUCE ALL OF THESE EXHIBITS

18   WITHOUT ANY CONTEXT FOR THE JURY, AND WHICH WILL REQUIRE US,

19   THEN, TO POTENTIALLY NOW BRING IN OUR OWN REBUTTAL, NOW THAT WE

20   UNDERSTAND THAT MATTEL IS GOING TO HAVE SUCH AN EXPERT WITNESS,    04:42

21   WHEN THERE WAS A LATE DESIGNATION BY MATTEL IN THE FIRST

22   INSTANCE.

23          SO I'LL SUBMIT ON THAT, YOUR HONOR.

24          **THE COURT:**  VERY WELL.

25          FROM MATTEL?                                                04:43
```

```
 1          MR. ZELLER:  WITH RESPECT TO THE ALLEGATIONS TO THE

 2   LATE SUBMISSION, THAT IS NOT CORRECT.

 3          MR. OMAN'S REPORT INCLUDED IN SECTION C-1 A SPECIFIC

 4   DISCUSSION OF THESE DECLARATIONS FROM HONG KONG.  SO THAT WAS

 5   ALWAYS IN HIS REPORT.  HOW THIS PLAYED OUT, YOUR HONOR, IS THAT    04:43

 6   SUBSEQUENT TO THE DEPOSITION, MGA FILED THIS MOTION IN LIMINE

 7   AND WAS QUESTIONING MR. OMAN'S ABILITY TO ADDRESS THESE HONG

 8   KONG ISSUES.  WE PUT IN A DECLARATION TALKING ABOUT HIS

 9   QUALIFICATIONS FURTHER.  THAT WAS ALL THAT HAPPENED.

10          AND CONTRARY TO WHAT MR. NOLAN HAS JUST SAID, AT HIS        04:43

11   DEPOSITION, HE ABSOLUTELY DID NOT DISAVOW COMPETENCE ON THESE

12   ISSUES.  THE QUESTIONS HE WAS ASKED WERE VERY NARROW ONES.  HE

13   WAS ASKED QUESTIONS SUCH AS, 'HAVE YOU EVER TESTIFIED IN A HONG

14   KONG LAWSUIT BEFORE?'

15          THEY DID NOT EXPLORE, EVEN THOUGH THEY HAD EVERY            04:44

16   OPPORTUNITY TO DO SO, HIS BONA FIDE AND HIS QUALIFICATIONS.

17          I DON'T THINK THERE'S ANY DOUBT -- AND THIS WAS

18   CERTAINLY ONE MAJOR ISSUE IN THE WAY IT WAS TEED UP ON THE

19   MOTION IN LIMINE -- THAT HE IS QUALIFIED TO ADDRESS THESE

20   ISSUES.                                                            04:44

21          NUMBER TWO, THE PARADE OF HORRIBLES THAT MGA IS

22   RAISING HERE IS ENTIRELY OF THEIR OWN MAKING.

23          THIS IS A RESPONSE, YOUR HONOR, TO MGA'S ARGUMENTS.

24   WHAT MR. NOLAN IS PROPOSING IS THAT MGA BE PERMITTED TO

25   BASICALLY, WITH A SWEEP OF A HAND, SAY, 'OH, HONG KONG IS          04:44
```

1   DIFFERENT; IGNORE OUR PRIOR INCONSISTENT STATEMENTS THAT WE'VE

2   MADE TO COURTS BECAUSE THEY WERE IN HONG KONG, AND NOT ALLOW

3   MATTEL TO RESPOND.'

4          THAT IS, IN FACT, THE NET EFFECT OF WHAT IS BEING

5   PROPOSED HERE.                                                    04:44

6          NOW, IF MR. NOLAN IS, IN FACT, SO CONCERNED ABOUT THE

7   TIMING, THE POTENTIAL FOR CONFUSION, AND THE LIKE, THAT HE

8   WANTS TO RAISE HERE, MGA HAS ITS OWN REMEDY.  IT CAN SIMPLY

9   STOP MAKING THAT ARGUMENT.  BECAUSE THERE'S NO QUESTION -- AND

10  THE COURT WILL RECALL THAT THE PARTIES ADDRESSED THIS AT SOME    04:45

11  LENGTH IN CONNECTION WITH ANOTHER MOTION *IN LIMINE* AND OTHER

12  PRETRIAL RULINGS -- THAT MGA'S PRIOR LITIGATION STATEMENTS

13  ABOUT THE EXACT WORKS THAT ARE AT ISSUE NOW IN THIS CASE ARE

14  RELEVANT AND THEY ARE ADMISSIBLE.  IT'S CLASSIC PRIOR ADMISSION

15  MATERIAL.  SO I THINK THAT THE PARTICULAR CONTEXT IN WHICH       04:45

16  THESE ISSUES AROSE ARE VERY IMPORTANT FOR, REALLY, THE RULING

17  ON THIS ISSUE.

18         AND AS I SAY, I MEAN, MATTEL SUBMITS ON THE COURT'S

19  RULING, BUT MR. NOLAN'S ARGUMENTS HERE, IN TRYING TO PRECLUDE

20  MATTEL FROM COUNTERING MGA'S OWN POSITION, WOULD BE SEVERELY     04:45

21  PREJUDICIAL TO MATTEL AND JUST DOESN'T SEEM WARRANTED.

22         **THE COURT:**  THANK YOU, COUNSEL.

23         WHERE WE'RE AT RIGHT NOW, THERE'S A MOTION *IN LIMINE*

24  BEFORE ME, AND I'M GOING TO DENY IN PART AND GRANT IN PART THE

25  MOTION *IN LIMINE* ALONG THE LINES THAT I PREVIOUSLY INDICATED.  04:46

1    AGAIN, LEGAL OPINIONS ABOUT TERMS, ABOUT STANDARDS,

2    AND THIS WHOLE LINE OF OPINION ABOUT THE DIFFERENT STANDARDS

3    FOR SOPHISTICATED COMPANIES IS OUT.  BUT I AM NOT GOING TO

4    GRANT A MOTION TO PRECLUDE PRACTICE AND PROCEDURE TESTIMONY.

5    NOW, HAVING SAID THAT, MR. NOLAN, I'M VERY MINDFUL OF      04:46

6    MGA'S CONCERNS ABOUT THIS.  I DON'T HAVE IN FRONT OF ME THE

7    PARTICULAR EVIDENCE THAT YOU'RE REFERRING TO THAT YOU RECEIVED

8    OVER THIS WEEKEND.  YOU ARE PRESERVING, OF COURSE, YOUR ABILITY

9    TO MAKE ANY FOUNDATIONAL OBJECTIONS TO THIS.  I THINK THIS IS

10   SOMETHING THAT WE SHOULD TAKE UP BEFORE WE GET TO IT IN THE      04:46

11   TRIAL.

12   BUT I AM SOMEWHAT CONVINCED BY THE FACT THAT WE'VE

13   ALREADY HAD TESTIMONY IN CONCERNING HONG KONG, AND I WOULD

14   ANTICIPATE THAT THERE'S GOING TO BE MORE EVIDENCE, LIKE I SAY,

15   WITHOUT HAVING ANYTHING PARTICULARLY IN MIND.  BUT TO THE      04:47

16   EXTENT THAT THERE IS EVIDENCE BEFORE THIS JURY CONCERNING THESE

17   HONG KONG PROCEEDINGS OR REPRESENTATIONS OR STATEMENTS OR

18   POSITIONS MADE DURING THE HONG KONG PROCEEDINGS, I THINK IT IS

19   APPROPRIATE EXPERT TESTIMONY TO HAVE AN EXPERT EDUCATE THE JURY

20   AS TO THOSE PROCEDURES AND PRACTICES, AS OPPOSED TO ANY LEGAL      04:47

21   INSTRUCTIONS.

22   TO THE EXTENT THAT THERE'S A NEED FOR A LEGAL

23   INSTRUCTION, EVEN ABOUT THE HONG KONG PROCEEDINGS, THAT IS

24   SOMETHING WHICH IS MORE SUITABLE FOR THIS COURT TO GIVE, AND

25   THE COURT WILL GIVE BOTH SIDES LEAVE TO PROPOSE JURY      04:47

```
 1   INSTRUCTIONS WHICH ADDRESS THESE LEGAL ISSUES.  BUT THERE'S

 2   ONLY GOING TO BE ONE SOURCE OF LEGAL INSTRUCTION PROVIDED TO

 3   THE JURY, AND THAT IS GOING TO BE THE COURT.

 4        SO I THINK ALL OF THESE CONCERNS CAN BE ADDRESSED,

 5   BUT I'M NOT GOING TO PRECLUDE, AS A MATTER OF A MOTION            04:48

 6   IN LIMINE, MR. OMAN'S TESTIMONY ON PRACTICE AND PROCEDURE.

 7        MR. NOLAN:  YOUR HONOR, WE UNDERSTAND; WE ACCEPT.

 8        IN ANTICIPATION OF THE CONTINUING ISSUE THAT MIGHT

 9   COME UP DURING THE COURSE OF THE TRIAL WITH RESPECT TO SPECIFIC

10   DOCUMENTS RELATING TO THESE PROCEEDINGS, WE WERE GOING TO ASK     04:48

11   LEAVE TO THE COURT JUST TO SUBMIT A BENCH BRIEF TOMORROW, WHICH

12   I THINK WILL BE LESS THAN TEN PAGES, THAT JUST DISCUSSES THE

13   DOCUMENTS THAT WE KNOW ARE NOW INTENDED TO BE USED BY MATTEL,

14   SO THE COURT WOULD HAVE THAT IN ADVANCE OF ANY SIDE-BARS SO

15   WE'RE NOT BLIND-SIDING ANYBODY WITH RESPECT TO WHAT THE           04:48

16   UNDERLYING ISSUES MIGHT BE ON THOSE PARTICULAR MATTERS, IF

17   THAT'S OKAY.

18        THE COURT:  IT MIGHT BE HELPFUL.

19        HOW MANY PAGES?

20        MR. NOLAN:  I WAS GOING TO SAY TEN PAGES.                    04:49

21        THE COURT:  LET'S TRY TO DO IT A LITTLE SHORTER, IF

22   WE CAN; BUT THAT'S FINE.  AND THEN I'LL WANT TO HEAR FROM

23   MATTEL AS WELL.

24        THIS WOULD BE A BRIEF ON THE ISSUE OF THE

25   ADMISSIBILITY OF THESE DOCUMENTS THEMSELVES, AS OPPOSED TO THE    04:49
```

1   ISSUE OF THE EXPERT TESTIMONY RELATED TO THE HONG KONG

2   PROCEDURES.

3           IS THAT UNDERSTOOD?

4           **MR. NOLAN:** YES, YOUR HONOR.  THANK YOU.

5           **THE COURT:** MR. ZELLER?                                    04:49

6           **MR. ZELLER:** THE DOCUMENTS THAT MR. NOLAN IS

7   REFERRING TO ARE NOT DOCUMENTS THAT WERE PRODUCED BY MATTEL.

8   RATHER, WHAT HE'S REFERRING TO, I BELIEVE, ARE THE EXHIBITS

9   THAT WE IDENTIFIED FOR PHASE 1-B. THOSE DOCUMENTS THEMSELVES

10  ARE MGA'S PLEADINGS.                                               04:49

11          **THE COURT:** I UNDERSTAND.

12          I MISSPOKE, MR. ZELLER.  I DO UNDERSTAND THAT THEY

13  ARE PRODUCED BY MGA.  YOU HAVE SIMPLY PRODUCED THEM NOW AS

14  PROPOSED EXHIBITS IN THE TRIAL.  THAT WAS MY MISTAKE.

15          I DO THINK THAT THERE IS VALUE TO ADDRESSING THESE UP   04:50

16  FRONT IN TERMS OF THE ADMISSIBILITY OF THE DOCUMENTS, BECAUSE I

17  HAVE IN MIND KIND OF A THEORETICAL FRAMEWORK IN TERMS OF WHAT

18  I'M GOING TO PERMIT IN AND WHAT I'M NOT GOING TO PERMIT IN, BUT

19  IT WOULD BE VERY HELPFUL TO HAVE THE PARTIES' INPUT ON THAT,

20  AND WE'LL DISCUSS THIS FURTHER AT THAT TIME.                      04:50

21          RIGHT NOW, I'M JUST DEALING WITH THE MOTION *IN LIMINE*

22  WITH RESPECT TO MR. OMAN.

23          **MR. NOLAN:** THANK YOU, YOUR HONOR.  I'M SORRY IF I

24  TOOK US OFF TRACK ON THAT.

25          **MR. QUINN:** MAY WE FILE SOME TYPE OF A RESPONSE TO     04:50

```
 1   WHATEVER MGA FILES?
 2          THE COURT:  I THOUGHT I INDICATED THAT.
 3          ABSOLUTELY.  I WOULD INVITE A RESPONSE FROM MGA.  I
 4   THINK THAT WOULD BE HELPFUL TO HAVE BOTH PARTIES' POSITIONS ON
 5   THAT.  ABSOLUTELY.
 6          MR. QUINN:  I'M SORRY, YOUR HONOR.  I DIDN'T HEAR
 7   THAT.
 8          MR. ZELLER:  IS IT POSSIBLE FOR US TO GET THIS BRIEF
 9   TODAY?
10          AND PART OF THE REASON WHY I'M A LITTLE CONCERNED IS
11   THAT WE'LL BE DOING OPENINGS ON WEDNESDAY.  IT MAY BE WE'RE
12   GOING TO BE RIGHT INTO THOSE ISSUES WEDNESDAY AFTER THE
13   CLOSING, BECAUSE WE WOULD ANTICIPATE CURRENTLY -- AND I KNOW
14   WE'RE WORKING OUT PEOPLE'S SCHEDULES, BUT WE WOULD ANTICIPATE
15   SOME OF THOSE WILL BE THE EARLIER WITNESSES WE WERE GOING TO
16   CALL.
17          THE COURT:  VERY GOOD.
18          I TRUST, MR. NOLAN, YOU CAN GET THIS DONE SOONER AS
19   OPPOSED TO LATER?
20          MR. NOLAN:  YES, YOUR HONOR.  IN FACT, WE'RE WORKING
21   ON IT RIGHT NOW.  I COULD COMMIT TO DELIVER THIS BY NOON
22   TOMORROW TO THEM, YOUR HONOR.  WE'LL WORK AROUND THE CLOCK TO
23   GET THIS DONE TONIGHT.
24          THE COURT:  VERY WELL.
25          SINCE THE COURT IS GOING TO BE IN TRANSIT TOMORROW,
```

```
 1   IF YOU COULD GET IT IN BY NOON TOMORROW, AND IF MATTEL CAN GET

 2   ME SOMETHING BY THE END OF THE DAY.  WHY DON'T YOU FAX YOUR

 3   RESPONSE TO CHAMBERS AT 951-328-4418, AND I WILL HAVE THAT

 4   FIRST THING WEDNESDAY MORNING, AND WE'LL TAKE THIS UP IN

 5   ADVANCE OF THE JUROR ISSUE AT 8:00.                          04:52

 6            MR. QUINN:  VERY WELL, YOUR HONOR.

 7            THE COURT:  NOT A WHOLE LOT OF TIME, BUT...

 8            MR. QUINN:  WE'LL WORK WITH IT, YOUR HONOR.

 9            THE COURT:  THANK YOU, MR. QUINN.

10            MGA'S MOTION NUMBER TEN, REGARDING CAROL SCOTT.       04:52

11            WE REALLY DIDN'T GET INTO THIS IN THE MOTIONS FOR

12   PARTIAL SUMMARY JUDGMENT VERY MUCH.  LET ME ASK BOTH PARTIES'

13   POSITION ON THIS.

14            HOW DO THE PARTIES INTEND TO PROCEED ON THE ISSUE OF

15   WHETHER ANY OF THE BRATZ MERCHANDISE -- AND I'M USING THAT     04:52

16   PHRASE AS BROADLY AS IT CAN BE USED RIGHT NOW -- BRATZ-RELATED

17   MERCHANDISE IS DERIVATIVE OF THE BRATZ DOLLS?

18            ANYBODY?  MATTEL?  MGA?  SOMEBODY?

19            MR. COREY:  MATTEL IS PROCEEDING WITH RESPECT TO MUCH

20   OF THE MERCHANDISE ON TWO THEORIES.  ONE IS THAT IT IS A       04:53

21   DERIVATIVE WORK -- OR ACTUALLY, IT DIRECTLY INFRINGES TO THE

22   EXTENT THAT THE MERCHANDISE HAS THE IMAGES FROM THE PROTECTED

23   WORKS ON THEM, AND THEN SEPARATELY ON THE THEORY THAT -- NOT

24   THAT THEY ARE DERIVATIVE WORKS, BUT THEY ARE INDIRECT -- THAT

25   MATTEL IS ENTITLED TO INDIRECT PROFITS BECAUSE THE PROFITS FROM 04:53
```

| | |
|---|---|
| 1 | THAT MERCHANDISE WOULD NOT HAVE BEEN GENERATED BUT FOR THE |
| 2 | INFRINGEMENT, AND IT'S DIRECTLY CAUSED BY THE INFRINGEMENT. |
| 3 | **THE COURT:**  I UNDERSTAND THAT.  I UNDERSTAND THAT |
| 4 | POSITION, THE INDIRECT CAUSATION ISSUE, AND I ALSO UNDERSTAND |
| 5 | THE DIRECT INFRINGEMENT.  BUT IN SOME OF YOUR BRIEFS THAT I | 04:54 |
| 6 | WENT THROUGH, AT VARIOUS PARAGRAPHS, YOU MADE REFERENCE TO THE |
| 7 | DERIVATIVE NATURE OF SOME OF THIS COPYRIGHTED MATERIAL, BUT IT |
| 8 | IS NOT AN ISSUE WHICH YOU HAVE BRIEFED IN DEPTH.  I GUESS I |
| 9 | JUST WANT TO -- WHAT AM I MISSING HERE? |
| 10 | **MR. COREY:**  I'M NOT SURE THAT THE COURT IS MISSING | 04:54 |
| 11 | ANYTHING.  I THINK THAT I'VE ARTICULATED THE THEORIES THAT WE |
| 12 | HAVE WITH RESPECT TO THE MERCHANDISE. |
| 13 | **THE COURT:**  VERY WELL. |
| 14 | **MR. ROTH:**  WE UNDERSTAND THAT THERE HAVE BEEN |
| 15 | REFERENCES BY MATTEL IN THEIR PAPERS TO PROCEEDING WITH RESPECT | 04:54 |
| 16 | TO SOME OF THE BRATZ-BRANDED MERCHANDISE ON AN INFRINGEMENT |
| 17 | THEORY.  WE ALSO UNDERSTAND THAT VARIOUS EXPERTS FROM BOTH |
| 18 | SIDES HAVE ADDRESSED THOSE ISSUES. |
| 19 | CAROL SCOTT WAS OFFERED UP AS AN EXPERT TO THE EXTENT |
| 20 | THAT MATTEL WAS SEEKING PROFITS ON AN INDIRECT PROFITS THEORY, | 04:55 |
| 21 | AND THAT WAS THE FRAMEWORK WITHIN WHICH WE ADDRESSED THIS |
| 22 | MOTION *IN LIMINE*. |
| 23 | **THE COURT:**  I UNDERSTAND THAT. |
| 24 | YOU'RE NOT TAKING THE POSITION WITH RESPECT TO THESE |
| 25 | WORKS BEING THE DERIVATIVE YOURSELF; IS THAT CORRECT? | 04:55 |

1     **MR. ROTH:** NO, YOUR HONOR, WE'RE NOT.

2     **THE COURT:** VERY WELL.

3     **MR. QUINN:** YOUR HONOR, IF I MAY.

4     JUST TO ALERT THE COURT, SINCE WE'RE ON THIS SUBJECT,

5     IN TERMS OF THE NUMBER OF BRATZ PRODUCTS THAT ARE AT ISSUE,     04:55

6     WE'RE PROBABLY TALKING ABOUT SOMETHING CLOSE TO 900 SEPARATE

7     PRODUCTS, DOLLS; SOME OF THEM -- MANY OF THEM ARE THE VERY SAME

8     DOLLS WHICH WILL BE REISSUED, IF YOU WILL, WITH DIFFERENT

9     THEMES OVER TIME. SOME OF THEM ARE NOT DOLLS; THEY ARE IN THE

10    NATURE OF BRATZ-BRANDED MERCHANDISE, WHICH WE BELIEVE FALLS     04:56

11    UNDER THE INDIRECT PROFITS THEORY.

12    BUT WE ARE FACING A PROSPECT -- AND I JUST WANTED TO

13    ALERT THE COURT TO THIS -- OF DEALING WITH A VERY, VERY LARGE

14    NUMBER OF SEPARATE OBJECTS. WE HAVE EXPLORED WITH MGA VARIOUS

15    WAYS BY WHICH THIS MIGHT BE STREAMLINED; FOR EXAMPLE,     04:56

16    STIPULATING THAT, SAY, A SASHA DOLL -- THAT WE DON'T NEED TO

17    INTRODUCE EVERY SINGLE SCENARIO -- SUN AND SAND SASHA,

18    WINTERTIME SASHA, HALLOWEEN SASHA, -- EVERY SINGLE PRODUCT;

19    THAT MAYBE WE COULD DEAL WITH ALL SASHAS AS A BATCH; OR WE

20    COULD DEAL WITH PHOTOGRAPHS OF ALL OF THE PRODUCTS.     04:56

21    MGA DOES NOT BELIEVE THAT EITHER OF THOSE APPROACHES

22    ARE APPROPRIATE. SO WE HAVE GIVEN MGA NOTICE THAT WE NEED

23    ORIGINAL EXEMPLARS OF ALL 800 PRODUCTS BROUGHT TO COURT, ALONG

24    WITH A DOCUMENT CUSTODIAN ON FRIDAY WHO WILL BE IN A POSITION

25    TO AUTHENTICATE ALL OF THESE DOCUMENTS.     04:57

```
 1        WE DON'T KNOW WHAT THIS IS GOING TO LOOK LIKE WHEN
 2   IT'S ACTUALLY BOXED UP AND BROUGHT TO COURT.  IT COULD WELL BE
 3   THAT WE'RE TALKING ABOUT A COUPLE OF HUNDRED BANKER'S BOXES.
 4   BUT GIVEN THE POSITION, AS I UNDERSTAND IT, OF MGA THAT WE
 5   REALLY NEED TO DEAL ONLY WITH ACTUAL ORIGINAL MERCHANDISE AND      04:57
 6   THAT THEY CAN'T BE DEALT WITH IN ANY BATCH BASIS, WE DON'T
 7   REALLY HAVE ANOTHER IDEA ABOUT HOW TO PROCEED.
 8        MS. AGUIAR:  AS YOUR HONOR, I'M SURE, CAN APPRECIATE,
 9   MATTEL IS SEEKING, POTENTIALLY, HUNDREDS OF MILLIONS OF DOLLARS
10   IN DISGORGEMENT OF MGA'S PROFITS.                                 04:58
11        THE COURT:  RIGHT.
12        MS. AGUIAR:  OVER THE YEARS, BETWEEN 2001 AND THE
13   PRESENT, MGA HAS SEPARATELY AND INDEPENDENTLY CREATED AND
14   DEVELOPED HUNDREDS OF DIFFERENT DOLLS, AND EVERY TIME A NEW
15   DOLL IS ISSUED, THAT DOLL HAS NEW FASHIONS, NEW FACE PAINT, NEW   04:58
16   ACCESSORIES, NEW HAIR, A TOTALLY DIFFERENT THEME.
17        THERE ARE NO SHORTCUTS TO SEEKING HUNDREDS OF
18   MILLIONS OF DOLLARS IN DISGORGEMENT OF PROFITS BASED ON -- THEY
19   ARE TOTALLY DIFFERENT DOLLS.
20        THE COURT:  I LIKE THAT LINE, 'THERE'S NO SHORTCUTS          04:58
21   TO...'  THAT'S A GOOD LINE.  YOU'RE RIGHT.
22        MS. AGUIAR:  MR. NOLAN IS OVER HERE POINTING TO
23   HIMSELF, BECAUSE IT REALLY WAS HIS LINE.
24        THE COURT:  FAIR ENOUGH.
25        MS. AGUIAR:  SO I WANT TO GIVE CREDIT WHERE IT'S DUE.        04:58
```

```
 1        BUT VERY SERIOUSLY, THOUGH, BECAUSE WE ARE VERY

 2   SERIOUS ABOUT THESE DOLLS, THESE DOLLS WERE CREATED BY MGA, AND

 3   FOR MR. QUINN TO SUGGEST THAT WE DO SASHA AS A BATCH, FRANKLY,

 4   IS QUITE SILLY.

 5        IT IS PART OF OUR DEFENSE OF APPORTIONMENT AND            04:59

 6   DEVELOPMENT AND INDEPENDENT CREATIVITY THAT EACH ONE OF THESE

 7   DOLLS IS DIFFERENT.  I APPRECIATE THE FACT THAT IT'S GOING TO

 8   BE A LOT OF DOLLS.  BUT YOU KNOW WHAT?  THEY ARE SEEKING A LOT

 9   OF DAMAGES.

10        SO WE'RE GOING TO HAVE THOSE TANGIBLE OBJECTS READY;     04:59

11   WE WILL HAVE A CUSTODIAN THERE; WE WILL HAVE ALL OF THEM IN

12   COURT; AND WE WILL DO WHATEVER WE CAN TO EASE THE BURDEN ON THE

13   JURY AND ON THE COURT BY ORGANIZING IT IN THE BEST WAY THAT WE

14   CAN.

15        MR. QUINN:  WE DON'T EXPECT A SHORTCUT TO REACH THE      04:59

16   VERDICT HERE, AND THAT'S NOT REALLY WHAT WE'RE ASKING FOR.

17        BUT TO, ONE BY ONE, PUT BEFORE A DOCUMENT CUSTODIAN,

18   JUST TO AUTHENTICATE PRODUCTS WHICH MGA AGREES ARE AUTHENTIC,

19   THAT REALLY SHOULD NOT COME OUT OF OUR REMAINING TEN HOURS, OR

20   WHATEVER IT IS.  THAT SHOULD BE CHARGED TO MGA.               05:00

21        THE COURT:  MR. QUINN, I UNDERSTAND YOUR CONCERN

22   HERE.  IN TERMS OF AUTHENTICATING THE DOCUMENTS AND ENTERING

23   THEM INTO EVIDENCE, I WOULD IMAGINE THAT ONCE WE PHYSICALLY --

24   ASSUMING THAT THE COURT CAN ACCOMMODATE ALL OF THESE -- AND I

25   ASSUME THESE ARE ALL RELATIVELY SMALL -- THE MERCHANDISE HERE  05:00
```

```
 1   IS SMALL; CORRECT?

 2           MR. QUINN:  THEY ARE SMALL, BUT THEY'RE PROBABLY

 3   PACKAGED.  ACTUALLY, THE PACKAGES ARE PROBABLY LARGER THAN THE

 4   OBJECTS.

 5           THE COURT:  I WILL LEAVE IT UP TO MATTEL TO TRY TO        05:00

 6   WORK OUT A WAY TO PRODUCE THIS IN AN EFFICIENT MANNER, AND

 7   WE'LL GO FROM THERE.

 8           EVERYONE IS RESERVING THEIR OBJECTIONS ON THIS, BUT

 9   THE COURT WILL CERTAINLY ALSO RESERVE ITS RIGHT TO MANAGE THE

10   TRIAL.  WE'LL SEE HOW THIS PLAYS OUT.                            05:01

11           MR. QUINN:  YOUR HONOR, WE WOULD REQUEST -- AND TO

12   THAT END, TO TRY TO DO THIS IN THE MOST EFFICIENT MANNER, WE

13   WOULD REQUEST THAT WE HAVE THE ABILITY TO -- EITHER MGA DOES IT

14   OR WE DO IT OR WE DO IT TOGETHER -- THAT THESE 800-ODD PRODUCTS

15   BE EXHIBIT NUMBERED IN ADVANCE AND THAT WHOEVER THE DOCUMENT     05:01

16   CUSTODIAN IS WILL BE PREPARED TO TAKE THE STAND AND SAY THAT

17   ALL OF THOSE PRODUCTS ARE MGA PRODUCTS, THAT THEY DO NOT HAVE

18   TO BE INDIVIDUALLY EXAMINED.  TO ME, THAT WOULD JUST BE

19   FARCICAL.

20           THE COURT:  WE'LL PROCEED AS REQUIRED BY THE RULES OF    05:01

21   EVIDENCE.  THE COURT RETAINS FOR ITSELF THE RIGHT, OF COURSE,

22   TO ADJUST TIME IF I BELIEVE THAT THERE'S SOME -- YOU SEEM TO ME

23   TO BE EXPRESSING A CONCERN THAT SOMEHOW YOUR REMAINING TIME IS

24   GOING TO HAVE TO BE TAKEN UP BY INTRODUCING THESE DOCUMENTS,

25   AND THAT'S NOT THE CASE -- NOT DOCUMENTS, BUT THE MERCHANDISE.   05:02
```

```
 1   THE COURT WILL MAKE ADJUSTMENTS AS IT DEEMS ARE FAIR.

 2          LET'S GET BACK TO THE ISSUE ITSELF ON CAROL SCOTT AND

 3   THE MOTION IN LIMINE.  THIS IS MGA'S MOTION IN LIMINE NUMBER

 4   TEN.  THIS IS WHERE I AM WITH CAROL SCOTT:  THIS IS ANOTHER

 5   GRANT IN PART AND DENY IN PART.  I BELIEVE THERE ARE THINGS          05:02

 6   THAT SHE IS VERY WELL QUALIFIED TO TESTIFY ABOUT, AND I BELIEVE

 7   THERE ARE OTHER THINGS THAT SHE IS NOT WELL QUALIFIED TO

 8   TESTIFY ABOUT.  IT'S NOT AN ALL OR NOTHING THING.

 9          I BELIEVE HER TESTIMONY REGARDING BRAND BUILDING,

10   WHICH GOES TO ESTABLISHING THAT INFRINGEMENT WAS A SUBSTANTIAL       05:02

11   FACTOR, HER TESTIMONY ON FOLLOW-ON PRODUCTS AND THE NATURE OF

12   HOW THAT PLAYS OUT IN THE INDUSTRY, BASED ON HER EXPERTISE, I

13   THINK SHE'S ON FIRM GROUND TESTIFYING THERE.

14          WHEN IT GETS TO HER TESTIMONY CONCERNING THE

15   CONCLUSION THAT ACCESSORIES AND NON-DOLL BRATZ PRODUCTS WOULD        05:03

16   NOT SELL IF THE BRATZ DOLLS WOULD NOT SELL, WHEN SHE GETS INTO

17   PARTICULAR TESTIMONY ABOUT THE BRATZ LINE, THAT'S WHERE I HAVE

18   SERIOUS CONCERNS ABOUT HER ABILITY TO TESTIFY, BASED ON MY

19   REVIEW OF THE EXPERT REPORTS.

20          AT ONE POINT IN TIME, MATTEL DESCRIBES THAT                   05:03

21   CONCLUSION, QUITE FRANKLY, AS SELF-EVIDENT, AND I SUPPOSE THAT

22   HAS A CERTAIN LOGICAL APPEAL TO IT.  I MEAN, IF THE DOLL LINE

23   ITSELF DOES NOT SELL, THEN THE ACCESSORIES GO NOWHERE.  I DON'T

24   THINK THAT'S A PARTICULARLY NOVEL OR DIFFICULT-TO-UNDERSTAND

25   POINT THAT NECESSARILY REQUIRES EXPERT TESTIMONY.                    05:03
```

1        BUT BE THAT AS IT MAY, I DO HAVE SERIOUS CONCERNS

2   ABOUT HER UNDERSTANDING OF THE BRATZ PRODUCTS, THE

3   BRATZ-RELATED PRODUCTS, FOR HER TO TESTIFY AS TO SPECIFICS

4   ABOUT THAT.  BUT I DO BELIEVE THAT HER TESTIMONY REGARDING

5   BRAND BUILDING IN GENERAL IS WELL FOUNDED, AND IT'S ALONG THOSE        05:04

6   LINES THAT I INTEND -- MY TENTATIVE IS TO GRANT IN PART AND

7   DENY IN PART THIS MOTION *IN LIMINE*.

8        I'LL HEAR FROM THE PARTIES.

9        **MR. ROTH:**  YOUR HONOR, WE UNDERSTAND YOUR OPINION,

10  AND, IN FACT, WE WOULD AGREE THAT MUCH OF WHAT CAROL SCOTT HAS        05:04

11  TO SAY ABOUT THE GENERAL SUBJECT OF BRAND BUILDING OUGHT TO

12  COME IN.  FRANKLY, IT'S QUITE SUPPORTIVE OF OUR CASE, AND WE'RE

13  HAPPY TO HAVE IT COME IN, GIVEN WHAT SHE HAS TO SAY ABOUT THE

14  BRATZ BRAND.

15       OUR CRITICISM WAS DIRECTED AT HER ATTEMPT TO --              05:04

16  REALLY, ANY INVESTIGATION AT ALL TO MAKE STATEMENTS BASED UPON

17  A CAUSAL RELATIONSHIP BETWEEN THE DOLLS, AND IN PARTICULAR,

18  BRANDED MERCHANDISE.  SO, YOUR HONOR, I'M PREPARED TO ANSWER

19  ANY QUESTIONS, BUT WE ACCEPT THAT DECISION.

20            **THE COURT:**  FROM MATTEL?                            05:05

21            **MR. COREY:**  ONE QUESTION IN CLARIFICATION.

22       I THINK, UNDER THE MACKIE CASE, THE THRESHOLD FOR

23  SHOWING CAUSATION HERE IS FAIRLY LOW, AND I UNDERSTAND THAT

24  MS. SCOTT WILL BE ALLOWED TO TESTIFY ABOUT BRAND BUILDING

25  GENERALLY, AND I TRUST THERE IS NOT A PROBLEM HAVING HER          05:05

```
 1   TESTIFY GENERALLY THAT MGA FOLLOWED SOME BRAND-BUILDING

 2   ACTIVITIES, BECAUSE I DO THINK THAT SHE'S COMPETENT TO TESTIFY

 3   ABOUT THAT.

 4          THE COURT:  WOULD YOU REPEAT YOUR LAST LINE.

 5          MR. COREY:  JUST A QUESTION OF CLARIFICATION.            05:06

 6          UNDER THE MACKIE CASE, THERE'S A FAIRLY LOW THRESHOLD

 7   FOR CAUSATION, BUT THE QUESTION IS, WOULD MS. SCOTT BE

 8   PERMITTED TO TESTIFY THAT MGA, WITH RESPECT TO THE BRATZ

 9   PRODUCT, DID FOLLOW SOME BRAND-BUILDING ACTIVITIES AND THEY DID

10   WORK TO BUILD THE BRAND?                                        05:06

11          THE COURT:  WELL, I GUESS I GET BACK TO THE

12   COMMENT -- I DON'T KNOW WHO WROTE THE BRIEF -- FROM MATTEL'S

13   PERSPECTIVE -- AM I MISSING SOMETHING HERE?  ISN'T IT

14   SELF-EVIDENT THAT THE BRATZ-RELATED PRODUCTS WERE BUILT UPON

15   THE BRATZ DOLL AND THAT THE SUCCESS OF THE BRATZ DOLL PAVED THE  05:06

16   WAY FOR THE SUCCESS OF THE BRATZ-RELATED PRODUCTS?

17          I CAN'T IMAGINE THE JURY IS NOT -- THAT SEEMS VERY

18   SELF-EVIDENT.  I'M NOT SEEING WHAT IT IS THAT YOU WANT HER TO

19   TESTIFY TO ON THAT POINT THAT REALLY REQUIRES EXPERT TESTIMONY.

20   SHE CAN LAY OUT HER WHOLE BRAND-BUILDING THEORY, AND EXPLAIN IN  05:07

21   TERMS OF HOW THIS GOES, BUT AS MR. ROTH MADE REFERENCE TO, SHE

22   REALLY DID NOT EXPEND A LOT OF TIME INVESTING IN AND BECOMING

23   KNOWLEDGEABLE ABOUT MGA, THE BRATZ LINE, AND HOW THAT

24   PARTICULAR LINE PLAYED OUT.  SO I DON'T KNOW WHAT BASIS THAT

25   SHE HAS TO TESTIFY ON THAT, PUTTING ASIDE WHETHER THERE'S A      05:07
```

```
 1   NEED FOR IT.  BUT ASSUMING THERE'S A NEED FOR IT, I DON'T SEE A

 2   BASIS FOR IT.

 3           MR. COREY:  I UNDERSTAND.  THE BASIS FOR IT IS THAT

 4   MGA IS DISPUTING THAT IS SELF-EVIDENT, I BELIEVE, YOUR HONOR.

 5           THE COURT:  VERY WELL.                                      05:07

 6           MR. ROTH:  WE WOULD ACCEPT YOUR HONOR'S DECISION THAT

 7   SHE MAY TESTIFY ABOUT GENERAL MATTERS ABOUT BRAND BUILDING,

 8   INCLUDING ABOUT THE STRENGTH OF THE BRATZ BRAND, WHICH SHE

 9   IDENTIFIED IN HER DEPOSITION AS BEING QUITE STRONG.  WE'LL

10   WELCOME THAT TESTIMONY.                                            05:08

11           THE COURT:  WE'RE NOT GOING TO PICK AND CHOOSE.  I'M

12   SAYING THAT SHE'S NOT GOING TO BE TESTIFYING ABOUT BRATZ.  I

13   DON'T THINK THERE'S A BASIS FOR HER TO DO THAT.  WE'RE NOT

14   GOING TO PICK AND CHOOSE.  I'M SAYING THAT HER TESTIMONY

15   REGARDING BRAND BUILDING IN GENERAL -- FROM WHAT I'M READING,     05:08

16   SHE'S THIS BRILLIANT PROFESSOR FROM UCLA.  SHE CAN TALK ABOUT

17   BRAND BUILDING.  BUT SHE DID NOT, FROM THE COURT'S PERSPECTIVE,

18   DO HER HOMEWORK ON BRATZ.  NEITHER SIDE IS GOING TO GET INTO

19   BRATZ WITH MS. SCOTT, IS WHERE THIS IS GOING.

20           MR. ROTH:  I UNDERSTAND THE REFINEMENT YOU MAKE TO         05:08

21   WHAT I WAS SAYING, AND I'LL CERTAINLY ACCEPT THAT DECISION.

22           THE COURT:  VERY WELL.

23           ANY QUESTIONS FROM MATTEL ON THIS?

24           MR. COREY:  NO, YOUR HONOR.

25           THE COURT:  MGA NUMBER 12, MR. LOETZ.                      05:09
```

```
 1         I'M GOING TO DENY THE MOTION TO PRECLUDE MR. LOETZ.
 2    THERE ARE A NUMBER OF NULLIFYING OBJECTIONS, BUT I THINK ALL OF
 3    THOSE GO TO THE WEIGHT OF THE TESTIMONY.  I GUESS, ON THE BEAR
 4    VERSUS HUMAN ISSUE, I TEND TO THINK THE DOLLS ARE MORE LIKE
 5    BEARS THAN THEY ARE LIKE HUMANS; SO ON THE CLOTHES, I DON'T SEE     05:09
 6    THE FUNCTIONAL UTILITY, SO I THINK MR. LOETZ IS ON FIRM GROUND
 7    ON HIS ANALYSIS, SUBJECT, OF COURSE, TO THE OBJECTIONS THAT MGA
 8    IS MAKING.  I THINK THAT'S ALL FAIR GAME FOR CROSS-EXAMINATION.
 9         ANY QUESTIONS ON THAT FROM EITHER SIDE?
10         MS. AGUIAR:  YOUR HONOR, WHAT I WOULD SAY IS THAT              05:10
11    WE'VE MADE A MOTION -- OUR MOTION IS NOT TO EXCLUDE HIM IN HIS
12    ENTIRETY, BUT WE DO HAVE THE MOTION THAT GOES TO WHETHER OR NOT
13    MR. LOETZ CAN EXPRESS AN OPINION REGARDING ANYTHING BEYOND THE
14    FIRST GENERATION OF DOLLS.
15         IT SOUNDS LIKE YOU ABSOLUTELY HAVE READ HIS REPORT.           05:10
16    AND IF YOU LOOK AT THE EXHIBITS TO HIS REPORT, THEY ARE ALL
17    CONCERNING THE FIRST GENERATION DOLLS.  IF YOU LOOK AT HIS
18    CONCLUSIONS IN HIS REPORT, WHICH ARE ON PAGES 2 AND 9, THE
19    FUNDAMENTAL CONCLUSIONS IN HIS REPORT CONCERN THE FIRST WAVE OF
20    BRATZ DOLLS.                                                       05:10
21         WE HAVE NO PROBLEM -- I SHOULDN'T SAY WE HAVE NO
22    PROBLEM -- WE UNDERSTAND THAT HE HAS EXPRESSED OPINIONS
23    REGARDING THE FIRST GENERATION OF BRATZ DOLLS, AND WE WILL
24    CROSS HIM ON THAT.
25         THE COURT:  RIGHT.                                            05:10
```

```
 1            MS. AGUIAR:  BUT WE ATTEMPTED TO ASK HIM A NUMBER OF

 2   QUESTIONS AT HIS DEPOSITION REGARDING THE LATER GENERATION OF

 3   DOLLS, AND HE WAS UNABLE TO EXPRESS AN OPINION REGARDING THOSE

 4   DOLLS AS COMPARED TO THE DRAWINGS.

 5            THE COURT:  I ASSUME THAT WILL PLAY OUT THE SAME WAY        05:11

 6   IN THE TRIAL AS IT DID IN THE DEPOSITION.  IF HE HAS NO BASIS,

 7   THERE'S NOT GOING TO BE ANY OPINION ON IT.

 8            MS. AGUIAR:  OKAY.

 9            THE COURT:  THAT'S WHAT I MEANT BY YOUR OBJECTIONS GO

10   TO THE WEIGHT AND SCOPE AND BREADTH OF HIS TESTIMONY.  INSTEAD      05:11

11   OF DEALING WITH THIS AS A MOTION TO PRECLUDE, I'M GOING TO

12   PERMIT YOU TO MAKE YOUR OBJECTIONS AND SEE HOW THIS PLAYS OUT

13   AT TRIAL.

14            MS. AGUIAR:  SO AS LONG AS WE MADE OUR POSITION CLEAR

15   THAT HE SHOULD NOT BE ABLE TO TESTIFY AND GIVE AN OPINION          05:11

16   REGARDING THE COMPARISON BETWEEN LATER GENERATION DOLLS AND THE

17   DRAWINGS, THEN I UNDERSTAND AND WE ACCEPT THAT.

18            THE COURT:  WITHOUT ADEQUATE FOUNDATION.

19            MR. NOLAN:  JUST A QUICK FOLLOW-UP ON THAT.

20            I THINK I HAD MORE DISCUSSIONS ABOUT NAKED BEARS FOR       05:12

21   MGA.

22            DO I UNDERSTAND FROM THE COURT THAT THE COURT IS

23   GOING TO ALLOW MR. LOETZ TO EXPRESS AN OPINION WITH RESPECT TO

24   THE COPYRIGHTABILITY OR THE PROTECTION AFFORDED IN THE FASHIONS

25   DEPICTED IN CARTER BRYANT'S DRAWINGS?                               05:12
```

```
 1          THE COURT:  AGAIN, I'M NOT ALLOWING ANYONE TO OFFER
 2   LEGAL OPINIONS ABOUT COPYRIGHTABILITY.  THAT'S A LEGAL OPINION
 3   THAT NOBODY IS GOING TO GIVE IN THIS PHASE OF THE TRIAL.
 4          HE'S GOING TO BE PERMITTED TO EXAMINE ELEMENTS THAT I
 5   BELIEVE DO GO TO WITHIN THE SCOPE OF COPYRIGHTABILITY, AS I        05:12
 6   DESCRIBED IT AT THE BEGINNING OF THIS HEARING.
 7          MR. NOLAN:  SO THAT I UNDERSTAND IT, WE'RE NOT TAKING
 8   FROM THIS RULING, THEN, THE COURT HAS MADE A DETERMINATION THAT
 9   FASHIONS, PER SE, ARE SUBJECT TO COPYRIGHT PROTECTIONS?
10          THE COURT:  I GUESS THAT WAS THE POINT OF MY COMMENT.      05:13
11   I AM FAIRLY CONVINCED THAT ON A DOLL, A PARTICULAR FASHION, A
12   PARTICULAR ATTITUDE OR A LOOK, IS COPYRIGHTABLE.  I'LL FLUSH
13   THIS OUT A LITTLE BIT MORE IN THE SCOPE OF COPYRIGHTABILITY.
14   THESE VARIOUS ELEMENTS ARE PART OF WHAT IS BEING COPYRIGHTED,
15   IF THAT MAKES SENSE.                                              05:13
16          MR. NOLAN:  I THINK THAT DOES GIVE A LITTLE GUIDANCE.
17          THE COURT:  WHAT I'M NOT GOING TO PERMIT IS THE GOING
18   DOWN FROM A CLOTHES AND UTILITY FUNCTIONS; SO THEY'RE NOT
19   COPYRIGHTABLE.  HAIR, EVERYONE'S GOT HAIR, SO THAT'S NOT
20   COPYRIGHTABLE; AND THROUGH AN ANALYSIS BASICALLY ELIMINATE        05:14
21   EVERYTHING AND THERE'S NOTHING LEFT.  I THINK QUITE THE
22   CONTRARY.  I FIND THE ANALYSIS WITH RESPECT TO TEDDY BEARS AND
23   CLOTHES ON TEDDY BEARS TO BE VERY SIMILAR TO THE ANALYSIS OF
24   CLOTHES ON A FASHION DOLL.  THAT'S PART OF, I SUPPOSE,
25   INTRINSICALLY SPEAKING, WHAT MAKES UP THE WORK THAT IS            05:14
```

```
 1   COPYRIGHTED.

 2           MR. NOLAN:  YOUR HONOR, WOULD THE COURT, IN LIGHT OF

 3   THAT, THEN -- LET'S ASSUME, THEN, THAT WE WOULD BE ABLE TO

 4   EXPLORE WITH A MATTEL WITNESS THE FACT THAT, NOTWITHSTANDING

 5   SELLING BARBIE DOLLS FOR OVER 40 YEARS, MATTEL HAS NEVER          05:14

 6   COPYRIGHTED A FASHION OUTFIT.

 7           THE COURT:  I CAN JUMP FORWARD AND TELL YOU MY RULING

 8   ON TESTIMONY REGARDING BARBIE.  AND MY INTENTION AT THIS POINT,

 9   OR MY TENTATIVE AT THIS POINT, IS TO GRANT THAT MOTION

10   IN LIMINE IN ITS ENTIRETY, THAT WE'RE NOT GETTING INTO BARBIE.    05:15

11   YOUR EXAMPLE, YOUR SUGGESTION RIGHT NOW, IS YET JUST ANOTHER

12   EXAMPLE.  I DON'T THINK WHAT MATTEL DID OR DID NOT DO WITH

13   BARBIE IS RELEVANT TO THIS TRIAL.

14           MR. NOLAN:  FINE, YOUR HONOR.  I ACCEPT THAT.

15           THE COURT:  WITH ONE CAVEAT -- AND I'M GETTING AHEAD      05:15

16   OF MYSELF A LITTLE BIT -- BECAUSE THERE ARE CERTAIN AFFIRMATIVE

17   DEFENSES THAT I COULD SEE THAT IT MIGHT BE RELEVANT TO; BUT I

18   HAVE A WAY OF DEALING WITH THAT WHEN I GET TO MY DISCUSSION ON

19   AFFIRMATIVE DEFENSES.  SO IT'S NOT A CATEGORICAL --

20           LET ME GO BACK TO MY RULING ON THIS PARTICULAR MOTION     05:15

21   IN LIMINE.  THAT IS DENIED WITH RESPECT TO MR. LOETZ.  HE GOES

22   FORWARD.

23           MOVING ON TO MATTEL'S MOTIONS NOW.

24           MATTEL MOTION IN LIMINE NUMBER TEN, WITH RESPECT TO

25   MR. VILPPU, THIS IS ANOTHER TOUGH ONE.  MY TENTATIVE IS TO       05:15
```

1   GRANT IN PART AND DENY IN PART THIS MOTION.  I SUPPOSE IT'S

2   EASIER FOR ME TO CLEARLY DELINEATE WHAT OPINIONS OF MR. VILPPU

3   ARE NOT GOING TO BE PERMITTED.  THOSE ARE THESE:  FIRST OF ALL,

4   TESTIMONY OR OPINION AS TO WHAT ELEMENTS IN THE SKETCHES

5   DESERVE COPYRIGHT PROTECTION.                                        05:16

6          AGAIN, I'M NOT GOING TO HAVE ANY EXPERT ON EITHER

7   SIDE DESCRIBE FOR THE JURY WHAT IS AND WHAT IS NOT ENTITLED TO

8   COPYRIGHT PROTECTION.

9          WHAT INSPIRED CARTER BRYANT?

10          THE JURY HAS ALREADY, IN LARGE MEASURE, DECIDED WHEN       05:16

11   CARTER BRYANT WAS INSPIRED TO DO THESE DRAWINGS.  WHAT OTHER

12   MATERIALS MAY OR MAY NOT HAVE INSPIRED CARTER BRYANT ARE NOT

13   RELEVANT.  AND THEN THE INDUSTRY PRACTICES REGARDING

14   MOONLIGHTING IN THE TOY INDUSTRY, WE'VE CROSSED THAT BRIDGE

15   ALREADY; SO THOSE ARE AREAS THAT MR. VILPPU WILL NOT BE           05:17

16   TESTIFYING TO.

17          THESE CASES ON WHETHER QUALITATIVE DIFFERENCES CAN BE

18   TESTIFIED TO IN LIGHT OF JUDGE LEARNED HAND'S OFT-QUOTED

19   STATEMENT IS NOT CLEAR CUT.  AND THIS MAY BE ONE OTHER AREA

20   WHERE THE COURT DECIDES TO ELABORATE IN A WRITTEN OPINION.  BUT   05:17

21   TO A LARGE EXTENT, IN CONTEXT, QUALITATIVE DIFFERENCES CAN BE

22   VIEWED AS THE FLIP SIDE OF QUALITATIVE SIMILARITIES.  I THINK

23   IT'S VERY DIFFICULT TO SAY THAT IN CONDUCTING AN ASSESSMENT OF

24   QUALITATIVE SIMILARITIES, A FACTFINDER, SUCH AS A JURY, SHOULD

25   JUST BE PRECLUDED FROM HAVING EVIDENCE OF QUALITATIVE            05:17

1  DIFFERENCES.

2        HAVING SAID THAT, I GUESS ONE OF THE BIGGEST PROBLEMS

3  THAT I HAVE WITH MR. VILPPU'S REPORT IS THAT ITS ENTIRE FOCUS

4  IS ON DIFFERENCES.  BUT I SUPPOSE THE BEST WAY TO DEAL WITH

5  THIS IS TO PERMIT THE REPORT, TO LET THE EXPERT TO GO FORWARD      05:18

6  AND BE SUBJECTED TO CROSS-EXAMINATION.  I HAVE SOME SERIOUS

7  RESERVATIONS ABOUT THIS.  THIS DOES NOT ARISE, AT LEAST FROM MY

8  READING OF THE REPORT, TO THE CONCERN I HAVE THAT I DEVELOPED

9  WITH MR. TONNER, WHERE I FELT THAT THE EXPERT WAS SIMPLY

10  SHIFTING HIS TESTIMONY TO ACCOMMODATE A PARTICULAR POINT OF      05:18

11  VIEW.

12        THAT'S NOT TO SAY THAT I DON'T HAVE SOME CONCERN

13  ABOUT MR. VILPPU.  I UNDERSTAND HE IS EXTRAORDINARILY WELL

14  QUALIFIED FROM AN ARTISTIC PERSPECTIVE, BUT I CONTINUE TO HAVE

15  CONCERNS.  BASICALLY, WHERE I'M AT RIGHT NOW IS TO GRANT THE      05:19

16  MOTION WITH RESPECT TO THOSE THREE AREAS THAT I IDENTIFIED AND

17  DENY IT WITH RESPECT TO HIS ABILITY TO GO FORWARD AND MAKE THE

18  QUALITATIVE ASSESSMENT OF DIFFERENCES AND SIMILARITIES.

19        BUT I WILL JUST KIND OF ISSUE A CAVEAT THAT TO THE

20  EXTENT THAT IT BECOMES CLEAR THAT -- BASICALLY, MATTEL          05:19

21  PRESERVES ITS RIGHT TO MAKE WHATEVER FOUNDATIONAL OBJECTIONS IT

22  WANTS TO TO THE EXPERT GOING FORWARD.

23        THAT'S WHERE I'M AT RIGHT NOW.

24        LET ME HEAR FROM BOTH SIDES.

25        **MS. AGUIAR:**  THANK YOU, YOUR HONOR.  WE ACCEPT THE      05:19

```
 1   RULING AND UNDERSTAND THAT HE'LL BE PERMITTED TO TESTIFY

 2   REGARDING THE SIMILARITY OR DISSIMILARITY IN THE FEATURES.

 3        JUST TO SET THE STAGE, THOUGH, AS I WAS AT THE

 4   HEARING REGARDING MR. TONNER -- AND YOU'VE MENTIONED MAYBE SOME

 5   PRELIMINARY HESITATION REGARDING HIS METHODOLOGY -- MR. VILPPU    05:20

 6   IS THE PAIRING, THE EQUIVALENT EXPERT, TO MR. LOETZ.  MR. LOETZ

 7   IS MATTEL'S ART EXPERT.  IF YOUR HONOR IS INCLINED TO HAVE ANY

 8   CONCERNS WITH MR. VILPPU'S PROCEDURES, THEN I HAVE TO ASSUME

 9   THAT YOU HAVE THE SAME ISSUES WITH MR. LOETZ.

10        MR. LOETZ GOES THROUGH ALL OF THE ELEMENTS OF THE          05:20

11   DRAWINGS AND GOES THROUGH THE ELEMENTS OF THE DOLLS, AND IN

12   MR. LOETZ'S WORLD, THEY ARE ALL EXACTLY THE SAME, BASICALLY.

13   HE CALLS THEM --

14        THE COURT:  AND IN MR. VILPPU'S WORLD, THEY COULDN'T

15   BE MORE DISSIMILAR.  AND I DO -- AND I STATED AT THE OUTSET      05:20

16   WHAT I'D DO TO MGA'S MOTION NUMBER 12, THAT THERE ARE SERIOUS

17   OBJECTIONS; THEY GO TO THE WEIGHT OF THE TESTIMONY; AND THAT'S

18   WHERE I AM WITH MR. VILPPU.

19        AND PERHAPS I'M ELABORATING HERE, AND THIS CERTAINLY

20   DOES APPLY TO BOTH:  TO BE HONEST, IN READING THROUGH THE TWO    05:20

21   EXPERT REPORTS, THERE WERE MORE TIMES WHEN I HAD A RAISED

22   EYEBROW WITH MR. VILPPU THAN WITH MR. LOETZ, BUT THAT'S NOT TO

23   SAY THAT THERE AREN'T SERIOUS CONCERNS ON BOTH SIDES.

24        THERE'S A PART OF ME WHICH ALMOST -- AT ONE POINT IN

25   TIME, I WAS AT THE POINT WHERE I SAID 'LETS TRY THIS WITHOUT     05:21
```

```
 1   THE EXPERTS; THIS IS SOMETHING WHICH THE JURY CAN EVALUATE.'

 2   AND I SUPPOSE, IF WE WERE JUST LOOKING AT INTRINSIC ANALYSIS,

 3   THAT'S WHERE I WOULD BE.  BUT GIVEN THE NINTH CIRCUIT

 4   REQUIREMENT THAT WE CONSIDER EXTRENSIC ANALYSIS AS WELL, I

 5   THINK THE EXPERTS ARE NECESSARY.                                  05:21

 6          BUT I'M JUST SAYING TO BOTH PARTIES, I HAVE REAL

 7   CONCERNS, AND WE'LL JUST HAVE TO SEE HOW THIS WORKS OUT.

 8          MS. AGUIAR:  I APPRECIATE THAT.

 9          I THINK YOUR HONOR MADE A COMMENT AT ONE OF THE

10   HEARINGS IN MAY WHICH WAS VERY TELLING, WHICH IS THAT WHEN YOU   05:21

11   LOOKED AT THE DRAWINGS AND YOU WERE LOOKING AT THE DOLLS FOR

12   THE FIRST TIME, YOU SAW CERTAIN THINGS OR MAYBE DIDN'T SEE

13   CERTAIN THINGS; AND THAT WOULD BE TRUE FOR ALL OF US AS WELL.

14   BUT THEN YOU MADE A COMMENT ABOUT HAVING READ THE EXPERT

15   REPORTS, AND AT LEAST THEY ALLOWED YOU TO THINK ABOUT THIS IN A   05:22

16   DIFFERENT WAY AND TO VIEW THE ELEMENTS OF THE DOLL IN A WAY

17   THAT MOST LAY PEOPLE DON'T TYPICALLY THINK OF THEM.

18          AND SO I THINK IN THE END YOU CAME DOWN THE RIGHT

19   WAY, WHICH IS TO LET BOTH OF THE EXPERTS IN SO THAT THE JURY

20   CAN UNDERSTAND WHERE THERE CAN BE DIFFERENCES WHERE YOU MAY NOT   05:22

21   INITIALLY THINK THERE ARE.  SO WE'LL SUBMIT ON THAT.

22          THE COURT:  VERY GOOD.

23          MATTEL?

24          MR. PROCTOR:  WE'RE HAPPY TO SUBMIT ON THE RULINGS,

25   JUDGE.                                                            05:22
```

```
 1              THE COURT:  VERY WELL.

 2              MATTEL'S MOTION IN LIMINE NUMBER 13, THAT WAS

 3    PREVIOUSLY GRANTED.

 4              I BELIEVE I ALSO ALREADY ADDRESSED ON FRIDAY,

 5    ALTHOUGH I DID TAKE A LOOK AT IT AGAIN OVER THE WEEKEND,          05:22

 6    MATTEL'S MOTION IN LIMINE NUMBER EIGHT.  I HAD INDICATED THAT I

 7    WAS GOING TO GRANT THAT MOTION.  ALTHOUGH I DO WANT TO GET --

 8    JUST TO BE CLEAR, I NEED A COMMITMENT FROM MATTEL.  YOU'VE

 9    ALREADY GIVEN THIS TO ME.  I JUST WANT TO MAKE SURE I

10    UNDERSTOOD IT RIGHT -- THAT THE DISGORGEMENT OF PROFITS AND      05:23

11    REVENUES IS THE DAMAGES THAT YOU'RE SEEKING WITH RESPECT TO ALL

12    CLAIMS, NOT JUST THE CLAIM FOR COPYRIGHT INFRINGEMENT.

13              IS THAT CORRECT?

14              MR. ZELLER:  THAT'S CORRECT, YOUR HONOR.

15              THE COURT:  VERY WELL.                                 05:23

16              BECAUSE WHETHER MATTEL WOULD HAVE MARKETED BRATZ

17    WOULD BE RELEVANT IF YOU WERE SEEKING TRADITIONAL DAMAGES, BUT

18    I AGREE WITH YOUR ANALYSIS THAT IT'S NOT RELEVANT IF THE ONLY

19    DAMAGES BEING SOUGHT ARE DISGORAGEMENT OF PROFITS AND REVENUES.

20              I KNOW THERE WAS SOME CONCERN BY MGA THAT THIS IS      05:23

21    RELEVANT TO THE CAUSATION OF STATE COURT CLAIMS, BUT WE'RE PAST

22    THAT AT THIS POINT, GIVEN THE JURY'S FINDINGS.

23              ANYTHING FURTHER FROM MGA ON THAT POINT?

24              MR. NOLAN:  I DO HAVE ONE QUESTION THAT ARISES IN

25    TERMS OF THE SCOPE OF DAMAGES, AND I CERTAINLY UNDERSTAND THE    05:24
```

1   REPRESENTATION THAT THIS IS JUST DISGORGEMENT AND IT'S FOR ALL

2   CAUSES OF ACTION, BUT I JUST WANT TO PAUSE FOR A MOMENT, YOUR

3   HONOR, ON AN ISSUE.

4           GROSS REVENUES, DISTRIBUTIONS, THAT'S ALL ONE THING.

5   THERE'S A REQUEST OUTSTANDING THAT MR. LARIAN SHOULD PRODUCE       05:24

6   EVIDENCE OF HIS NET WORTH THAT GOES BEYOND, LET'S SAY, BRATZ.

7   AS WE HAVE BRIEFED -- AND I KNOW WE'RE NOT GOING TO ARGUE RIGHT

8   NOW THE JMOL MOTIONS.  HOWEVER, THE PUNITIVE DAMAGE --

9           **THE COURT:**  HIS NET WORTH FOR OUTSIDE OF BRATZ WOULD

10  GO TO THE ISSUE OF PUNITIVE DAMAGES.                              05:24

11          **MR. NOLAN:**  YES, YOUR HONOR.  AND THE MOTION THAT HAS

12  BEEN TEED UP IN THE JMOL IS THAT TO THE EXTENT THAT MATTEL IS

13  SEEKING DAMAGES ON THEIR WHAT I'LL JUST CALL THE STATE TORT

14  CLAIMS, THAT WOULD INCLUDE PUNITIVE DAMAGES -- THAT THE MEASURE

15  OF DAMAGES THERE WOULD NOT BE COPYRIGHT DAMAGES FLOWING FROM      05:25

16  THE SALE OF THE BRATZ DOLLS; IT WOULD BE LIMITED TO THE EXTENT

17  THAT THEY ARE RECOVERABLE DAMAGES PURSUANT TO THE STATE LAW

18  CLAIMS.

19          ONE OF THE CONCERNS THAT WE HAVE AND WHAT WE SAID IN

20  THE JMOL MOTION IS, YOUR HONOR, THAT IN ANALYZING WHETHER OR      05:25

21  NOT MR. LARIAN SHOULD BE FORCED TO DISCLOSE HIS NET WORTH

22  INFORMATION ON A POTENTIAL PUNITIVE DAMAGE CLAIM ON A STATE LAW

23  CLAIM WHERE WE WOULD CONTEND THAT THE RECORD EVIDENCE IS OVER

24  WHELMING THAT THE AMOUNT IN QUESTION WOULD NOT EXCEED -- AND

25  I'M JUST GIVING A ROUGH FIGURE -- $75,000; AND I USED THAT       05:25

1   FIGURE, BECAUSE BEFORE THEY WERE FIGHTING OVER THE -- WHETHER

2   OR NOT FOR REMOVAL PURPOSES, THE BRATZ RELATED ROYALTIES WERE

3   BEING IMPACTED.  THEY ARGUED BEFORE JUDGE MANELLA -- AND I

4   THINK SUCCESSFULLY DID IT ONE TIME -- THAT THE AMOUNT IN

5   QUESTION WAS NOT IN EXCESS OF $75,000.                                    05:26

6         IN LIGHT OF THAT, YOUR HONOR, WE UNDERSTAND THAT WE

7   HAVE TO PRODUCE DOCUMENTS WITH RESPECT TO GROSS REVENUES AND TO

8   THE EXTENT THAT THIS IS THE SUBCHAPTER S, THE DISTRIBUTIONS

9   THAT WERE MADE TO MR. LARIAN.

10        BUT, YOUR HONOR, TO THE EXTENT THAT THE NET WORTH          05:26

11  INFORMATION IS IN ADDITION TO THAT, THEN WE DON'T THINK THAT

12  IT'S CALLED FOR UNDER THE PRESENT POSTURE OF THIS CASE, EVEN IN

13  LIGHT OF THE JURY'S FINDINGS; AND THAT CERTAINLY REPRESENT THAT

14  THE FINANCIAL INFORMATION WITH RESPECT TO THE AMOUNT OF

15  DISTRIBUTIONS FLOWING FROM BRATZ, CERTAINLY DWARFS ANY          05:26

16  POTENTIAL CLAIM THEY WOULD HAVE ON THE CONTRACT CLAIMS.  I JUST

17  WANTED TO FLAG THAT ISSUE, BECAUSE IT MAY BE SOMETHING WE NEED

18  TO BRING TO THE COURT IN FURTHER DETAIL.  UNLESS MATTEL WOULD

19  AGREE WITH US THAT THE NET WORTH FINANCIAL INFORMATION FROM

20  MR. LARIAN IS NOT PRODUCIBLE AT THIS TIME.                     05:27

21        **THE COURT:**  WE'LL TAKE THAT ISSUE UP BEFORE

22  MR. LARIAN TESTIFIES.

23        **MR. NOLAN:**  I JUST WANTED TO FLAG IT.

24        **THE COURT:**  VERY WELL.

25        **MR. ZELLER:**  YOUR HONOR, THERE IS ONE ISSUE I WOULD    05:27

```
 1   ASK THE COURT TO TAKE UP HOWEVER, CONCERNING MR. LARIAN'S

 2   FINANCIALS.

 3         THE COURT WILL RECALL THAT IT ORDERED MR. LARIAN TO

 4   PRODUCE HIS FINANCIAL INFORMATION.

 5         THE COURT:  YES.                                       05:27

 6         MR. ZELLER:  THERE WAS A LONG HISTORY OF THIS

 7   THROUGHOUT DISCOVERY, AND THE COURT, QUITE SPECIFICALLY --

 8         THE COURT:  I RECALL THE HISTORY.  I RECALL THE

 9   COURT'S ORDERS.  HAS THAT NOT BEEN DONE?

10         MR. QUINN:  WE ASKED MGA, MR. LARIAN, FOR THAT         05:28

11   INFORMATION, AND WE HAVE NOT RECEIVED IT, AND THIS IS CAUSING

12   US GREAT CONCERN.

13         THE COURT:  MR. NOLAN, I DO BELIEVE I DID ORDER THAT

14   TURNED OVER.

15         MR. NOLAN:  YOUR HONOR, MR. ROTH HAS BEEN DEALING      05:28

16   WITH THAT.  I'M NOT PASSING THE BUCK; I'LL COMMENT AS WELL; BUT

17   MR. ROTH CAN GIVE YOU THE UPDATED REPORT.

18         MR. ROTH:  WE UNDERSTOOD THAT THE ORDER WAS TO HAVE

19   IT AVAILABLE WHEN MR. LARIAN TESTIFIED.  WE ARE GATHERING THAT

20   INFORMATION AND WE WILL BE PRODUCING IT WITHIN THE NEXT FEW    05:28

21   DAYS.

22         THE COURT:  ALL RIGHT.

23         I GUESS I THOUGHT THAT WOULD BE HAVE BEEN PRODUCED

24   BEFORE NOW.  BUT BE THAT AS IT MAY, MR. ZELLER, YOU'LL HAVE

25   THAT INFORMATION WITHIN THE NEXT FEW DAYS.                   05:28
```

1          **MR. ZELLER:**  UNFORTUNATELY, YOUR HONOR, WE GAVE

2    NOTICE OF THIS SOME PERIOD OF TIME AGO TO MGA.  WE EXPECT TO

3    CALL MR. LARIAN ON WEDNESDAY OR FRIDAY; HE IS EARLY IN OUR

4    CASE.  AND AS THE COURT KNOWS, WE DON'T HAVE THAT MUCH TIME.

5          **MR. NOLAN:**  YOUR HONOR, AS MR. ROTH INDICATED, WE ARE          05:29

6    GATHERING THAT INFORMATION.  THEY TOLD US FOR THE FIRST TIME, I

7    BELIEVE -- CONTRARY, MR. LARIAN WAS LISTED NINTH, ON FRIDAY

8    WHEN WE WERE LAST BEFORE YOU, YOUR HONOR.  WE SAID WE WOULD

9    PULL THE INFORMATION AND WE WILL PRESENT IT AS QUICKLY AS WE

10   GET IT.  I'M HOPEFUL WE CAN HAVE IT IN A DAY OR TWO.          05:29

11         CERTAINLY, GIVEN THE LENGTH OF TIME MR. QUINN AND I

12   HAVE TALKED ABOUT WITH RESPECT TO THE AMOUNT OF OPENING

13   STATEMENTS IN THIS PHASE OF THE CASE, I THINK IT'S MORE LIKELY

14   THAT MR. LARIAN WILL BE ON THE STAND BY FRIDAY AND WE'LL GATHER

15   THE INFORMATION, AS WE HAVE BEEN DIRECTED TO.          05:29

16         **THE COURT:**  I AM GOING TO PUT A STOP TO THIS.

17         BY THE CLOSE OF BUSINESS ON WEDNESDAY, THAT

18   INFORMATION IS TO BE PRODUCED.

19         **MR. NOLAN:**  THANK YOU, YOUR HONOR.  WE'LL DO THAT.

20         **THE COURT:**  MATTEL NUMBER NINE, TESTIMONY REGARDING          05:29

21   BARBIE.  AS I PREVIOUSLY INDICATED, MY TENTATIVE IS TO GRANT

22   THIS MOTION *IN LIMINE*.

23         THE ONLY RELEVANCE THAT I CAN SEE THIS POTENTIALLY

24   HAVING IS RELEVANT TO SOME OF THE AFFIRMATIVE DEFENSES.  I'M

25   GOING TO ADDRESS THE AFFIRMATIVE DEFENSES AFTER I'VE GONE          05:30

```
 1   THROUGH THESE MOTIONS IN LIMINE, AND I'M GOING TO SET CLEAR
 2   PARAMETERS FOR WHAT TYPES OF EVIDENCE WILL COME IN ON THE
 3   AFFIRMATIVE DEFENSES BEFORE THIS JURY IN PHASE 1-B.  CERTAINLY
 4   SOME EVIDENCE RELATED TO THE AFFIRMATIVE DEFENSES HAS ALREADY
 5   COME IN IN 1-A.                                                     05:30
 6        I DO HAVE SOME CONCERN AT THIS POINT -- A CONCERN I
 7   SUPPOSE I DIDN'T HAVE WHEN THIS TRIAL STARTED, BUT IT'S A
 8   CONCERN THAT I HAVE NOW -- OF JUROR CONFUSION WITH RESPECT TO
 9   SOME OF THE EVIDENCE CONCERNING SOME OF THE AFFIRMATIVE
10   DEFENSES.                                                           05:31
11        AT THE SAME TIME, I WANT TO MAKE SURE THAT MGA HAS
12   THE ABILITY TO BRING IN, UNIMPEDED BY THE COURT'S CONCERNS
13   ABOUT CONFUSION, ALL OF THE EVIDENCE THEY THINK IS NECESSARY TO
14   PROVE UP ANY OF THEIR AFFIRMATIVE DEFENSES.  SO IN AN
15   ALTERATION FROM WHAT I HAVE PREVIOUSLY INDICATED, I'M GOING TO      05:31
16   CONTINUE TO PERMIT EVIDENCE RELATED TO CERTAIN OF THE
17   AFFIRMATIVE DEFENSES TO COME IN, AND I'LL GET TO THAT SHORTLY
18   IN TERMS OF THE PARAMATERS; IT'S GOING TO BE LARGELY RELATE TO
19   THE ISSUE OF FRAUDULENT CONCEALMENT WHICH COMES ACROSS IN A
20   NUMBER OF THE AFFIRMATIVE DEFENSES.  BUT WITH RESPECT TO ANY        05:31
21   OTHER EVIDENCE THAT IS EXCLUDED ON 403 GROUNDS, SUCH AS BARBIE
22   TESTIMONY HERE, WHICH I AM INCLUDING ON 403 GROUNDS, TO THE
23   EXTENT THAT MGA BELIEVES THAT THE COURT SHOULD HAVE THAT BEFORE
24   IT TO DECIDE THE AFFIRMATIVE DEFENSES, I WILL GIVE LEAVE AFTER
25   1-B TO MGA, AND OF COURSE TO MATTEL AS WELL, TO PRESENT ANY         05:31
```

```
 1   ADDITIONAL EVIDENCE THAT WAS NOT PRESENTED DURING THE TRIAL

 2   THAT IS RELEVANT TO THE AFFIRMATIVE DEFENSES.

 3          I'LL EXPAND ON THAT WHEN I GET TO THE AFFIRMATIVE

 4   DEFENSES, BUT IT'S WITH THAT PROVISO THAT I'M OTHERWISE

 5   GRANTING MATTEL'S MOTION IN LIMINE NUMBER NINE RELATING TO           05:32

 6   TESTIMONY REGARDING BARBIE.

 7          ANY QUESTIONS FROM MGA?

 8          MR. ROTH:  YES, YOUR HONOR.

 9          THERE IS SOME EVIDENCE THAT WE BELIEVE IS RELEVANT TO

10   THE APPORTIONMENT CASE THAT RELATES TO THE MANNER IN WHICH          05:32

11   MATTEL PRODUCES AND DISTRIBUTES BARBIE.  AND THAT IS

12   ESSENTIALLY THE APPORTIONMENT QUESTIONS ATTEMPTING TO DETERMINE

13   WHAT ARE THE FACTORS THAT ARE IMPORTANT TO THE PROFITABILITY OF

14   A FASHION DOLL.  OBVIOUSLY BARBIE IS A PRIME EXAMPLE OF A

15   FASHION DOLL, AND SOME OF THE THINGS THAT MATTEL DID WITH           05:33

16   RESPECT TO BARBIE AND THE 2003/2004 TIME FRAME, WE BELIEVE

17   CONFIRMS OUR VIEWS ABOUT THE METHODS THAT A TOY COMPANY

18   UNDERTAKES TO SUCCEED WITH A DOLL IN THE MARKETPLACE.

19          SO, FOR INSTANCE, TO GIVE YOU ONE PRIME EXAMPLE, WE

20   BELIEVE THAT THE CHOICE AND THE EXECUTION ON THEMES RELATED TO      05:33

21   SPECIFIC DOLLS GOES A LONG WAY TOWARDS EXPLAINING THE SUCCESS

22   OF A FASHION DOLL IN CONTRAST TO THE DOLL'S UNDERLYING DESIGN.

23   WE BELIEVE THAT MGA OPERATES IN A MANNER THAT'S CONSISTENT WITH

24   THAT WITH RESPECT TO BRATZ, AND MATTEL OPERATES IN A MANNER

25   THAT IS CONSISTENT WITH THAT RESPECT TO BARBIE.                     05:33
```

```
 1             THERE ARE OTHER EXAMPLES ABOUT HOW MATTEL VIEWS THE
 2   IMPORTANCE OF PACKAGING, OF FASHIONS; ALL OF THESE FACTORS THAT
 3   WE THINK ARE CRUCIAL TO OUR APPORTIONMENT OF THE CASE; AND WE
 4   SIMPLY WANT TO POINT OUT THAT THOSE FACTORS THAT WE BELIEVE ARE
 5   IMPORTANT, VIS-À-VIS BRATZ, MATTEL BELIEVES THEY ARE IMPORTANT    05:34
 6   VIS-À-VIS BOTH BRATZ AND THEIR OTHER DOLLS, INCLUDING BARBIE.
 7             THE COURT:  THIS ARGUMENT YOU'RE MAKING NOW IS NOT
 8   THE ARGUMENT YOU SET FORTH IN YOUR OPPOSITION TO THE MOTION
 9   IN LIMINE.
10             WHAT I'M REJECTING AND WHAT I'M GRANTING IS THE         05:34
11   MOTION IN LIMINE FOR USE OF BARBIE IN ANY OF THE CONTEXT
12   THAT --
13             (BRIEF TECHNICAL PROBLEMS.)
14             MR. QUINN:  I THINK WE JUST LOST JUDGE LARSON.
15             THE CLERK:  I THINK WE MIGHT NEED HIM.                  05:35
16             HOLD ON ONE MOMENT.
17             (RESUMING WITH PROCEEDINGS.)
18             THE COURT:  THIS IS JUDGE LARSON.
19             IS EVERYONE STILL THERE?
20             MR. QUINN:  YES.                                        05:35
21             MR. NOLAN:  YES.
22             THE COURT:  I GUESS I GOT CUTOFF.
23             I DON'T KNOW WHERE I CUT OUT.  I WAS SPEAKING WITH
24   MR. ROTH, INDICATING THAT WHAT HE JUST SET FORTH WAS NOT WHAT
25   WAS SET FORTH IN MOTION IN LIMINE NUMBER NINE.                    05:36
```