1    I WILL HEAR MATTEL'S RESPONSE TO THIS PARTICULAR USE

2  OF EVIDENCE RELATED TO BARBIE.

3    **MR. COREY:** YOUR HONOR, I THINK WHAT MR. ROTH

4  ARTICULATED REALLY ISN'T THAT DISSIMILAR FROM WHAT WAS IN THEIR

5  PAPERS BEFORE, AND I THINK IT RUNS SQUARELY INTO THE TEETH OF        05:36

6  THE CONCERN THAT THE COURT IDENTIFIED; THAT BARBIE IS A VERY

7  BIG BRAND WITH A LOT OF PRODUCT, AND TO THE EXTENT WE START

8  INTRODUCING THAT IN FRONT OF THE JURY, WE ARE GOING TO HAVE

9  SIGNIFICANT 403 PROBLEMS.

10    I THINK MR. ROTH STATED CLEARLY THAT AT LEAST        05:36

11  ACCORDING TO MGA, MGA DOES, WITH RESPECT TO BRATZ, WHAT BARBIE

12  DOES WITH RESPECT TO MATTEL; SO THERE SHOULDN'T BE ANY

13  PREJUDICE HERE.

14    MR. ROTH CAN GO AHEAD AND RELY ON THAT INFORMATION

15  FROM MGA IF HE WANTS TO MAKE WHATEVER POINTS HE THINK HE NEEDS      05:36

16  TO MAKE WITH RESPECT TO APPORTIONMENT.

17    **MR. ROTH:** OBVIOUSLY, THE EXTENT TO WHICH MATTEL DOES

18  IT CONFIRMS THE IMPORTANCE OF THAT CONSIDERATION. WHAT WE NEED

19  TO DO IS CONVINCE THE JURY THAT THINGS LIKE, YOU KNOW, THEMES

20  AND PACKAGING ARE IMPORTANT. THE FACT THAT WE THINK IT'S          05:37

21  IMPORTANT, OBVIOUSLY THAT WEIGHS IN, BUT THE FACT THAT MATTEL,

22  VIS-À-VIS BARBIE OR MY SCENE OR WHATEVER FASHION DOLL THEY

23  THINK IS IMPORTANT AS WELL, WE THINK ALSO CONFIRMS OUR

24  ARGUMENTS. AND OBVIOUSLY WE UNDERSTAND AND WE HAVE TIME AND

25  STRENGTHS, AND WE'LL USE OUR TIME AS WE DEEM APPROPRIATE, GIVEN    05:37

 1   THE COURT'S GUIDANCE.  BUT WE THINK THAT WE JUST CANNOT BE

 2   PROHIBITED FROM MAKING ANY KIND OF REFERENCE TO BARBIE IN

 3   CONNECTION WITH OUR APPORTIONMENT CASE.

 4           **THE COURT:**  WELL, THIS GETS INTO A DIFFERENT LIGHT,

 5   AND I WILL GIVE YOU LEAVE TO -- LET'S RAISE THIS WITH THE COURT   05:38

 6   BEFORE WE GO DOWN THIS ROAD.  I'M RULING ON THE MOTION

 7   *IN LIMINE* AS IT'S PRESENTED TO THE COURT, AND FOR THE PURPOSES

 8   SET FORTH BY MGA IN ITS OPPOSITION TO THAT MOTION *IN LIMINE*,

 9   THE COURT IS RULING THAT REFERENCE TO BARBIE IS PRECLUDED.  AND

10   THAT'S ALL I'M RULING AT THIS POINT.                             05:38

11           **MR. NOLAN:**  YOUR HONOR, A LOT OF THE ISSUES THAT

12   TRIGGERED, I THINK, THE MOTION NUMBER NINE BY MATTEL AROSE OUT

13   OF THE EXPERT REPORT OF MARY BERGSTEIN WHICH WE HAD EARLIER

14   INDICATE WE WERE WITHDRAWING.

15           **THE COURT:**  VERY WELL.                                   05:38

16           ANY QUESTIONS FROM MATTEL?

17           **MR. QUINN:**  NO, YOUR HONOR.

18           **THE COURT:**  THE ONE CAVEAT I'D ISSUE TO MATTEL -- I

19   HAD CERTAINLY INTENDED TO KEEP A LOT OF THE STUFF THAT WE ENDED

20   UP GETTING INTO IN THE FIRST PHASE OUT, BUT A LOT OF THAT WAS    05:38

21   OPENED UP TO BY MATTEL; SO I WANT TO MAKE THE SAME WARNING

22   AGAIN.

23           MATTEL CAN CERTAINLY UNDO, AND MGA, OF COURSE, CAN

24   UNDO THE SAME THING; ANY OF THESE RULINGS IN YOUR RESPECTIVE

25   FAVORS CAN BE UNDONE BY STATEMENTS MADE IN OPENING STATEMENT OR  05:39

1  EVIDENCE INTRODUCED IN YOUR CASE IN CHIEF; SO JUST KEEP THAT IN

2  MIND.

3          MATTEL'S MOTION IN LIMINE NUMBER 11, I THINK THIS WAS

4  MR. GRUCA.  I AM FAMILIAR WITH THE SURVEY AT ISSUE HERE; THIS

5  IS THE ONLINE SURVEY BY BRAND WEAR RESEARCH.  AND THEN IF THIS          05:39

6  COMES IN, MATTEL IS SEEKING THE KIVETZ SURVEY.

7          IS THAT CORRECT?

8          **MR. KIDMAN:**  YES, YOUR HONOR.

9          I WOULD LIKE TO RAISE, YOUR HONOR, THAT IN LIGHT OF

10  YOUR RULING WITH RESPECT TO CAROL SCOTT, OUR POSITION                    05:39

11  PREVIOUSLY WAS THE GRUCA SURVEY SHOULD NOT COME IN BECAUSE IT

12  WAS AN IMPROPER REBUTTAL TO PROFESSOR SCOTT.  IN LIGHT OF YOUR

13  RULING THIS AFTERNOON THAT MS. SCOTT CAN'T SPEAK TO BRATZ, IT'S

14  CLEAR THAT THE GRUCA SURVEY IS COMPLETELY IMPROPER REBUTTAL TO

15  MS. SCOTT.  IN HIS REPORT HE SAID HE WAS REBUTTING STATEMENTS           05:40

16  MADE BY MS. SCOTT IN PARAGRAPH 12 OF HER INITIAL REPORT.  IN

17  THAT PARAGRAPH, MS. SCOTT TALKS ABOUT THE BRATZ DOLL, MGA'S

18  SUCCESS OF THE BRATZ DOLL DUE TO THE DESIGN AND APPEARANCE OF

19  THE DOLL; SO I THINK IT'S CLEAR, IN LIGHT OF YOUR RULINGS

20  TODAY, THAT MR. GRUCA WOULD BE IMPROPER REBUTTAL TO MS. SCOTT.          05:40

21          **THE COURT:**  IS THERE SOMEONE FROM MGA WHO WANTS TO

22  SPEAK TO THIS.

23          I KNOW YOU DIDN'T HAVE THE BENEFIT OF MY RULING ON

24  MS. SCOTT WHEN YOU WERE MAKING THIS; SO WHAT IS THE ANALYSIS

25  FROM MGA'S PERSPECTIVE?                                                  05:41

1  **MR. ROTH:** YOUR HONOR, AS YOU MAY RECALL ON FRIDAY

2 VIS-À-VIS THE GRUCA SURVEY, WE OFFERED TWO RATIONALES FOR ITS

3 SUBMISSION; THE SECOND IS THE ONE MR. KIDMAN JUST DEALT WITH,

4 WHICH IS WHETHER IT WAS REBUTTAL OR NOT TO A PARTICULAR

5 PARAGRAPH OR TWO IN MS. SCOTT'S REPORT THAT WE NOW UNDERSTAND 05:41

6 WOULD NOT BE THE SUBJECT OF TESTIMONY AT THE UPCOMING PHASE 1-B

7 TRIAL.

8  HOWEVER, THE PRIMARY REASON WHY THE REPORT SHOULD BE

9 PERMITTED IS THAT THE REPORT WAS NOT REQUIRED TO BE SERVED AS

10 AN INITIAL REPORT IN THE FIRST INSTANCE. AGAIN, THIS IS 05:41

11 STRAIGHT OUT OF THE STRAUS CASE WHICH MAKES IT CLEAR THAT

12 APPORTIONMENT EVIDENCE IS NOT REQUIRED IN THE INITIAL ROUND OF

13 REPORTS; COULD BE OFFERED UP AS A REBUTTAL REPORT, WHICH IS

14 WHAT WE DID.

15  SO AGAIN, I THINK THAT THE PRIMARY THRUST OF OUR 05:41

16 ARGUMENT ON FRIDAY VIS-À-VIS THE BRAND WEAR STUDY REMAINS,

17 WHICH IS IT IS PROPER REBUTTAL TO MATTEL'S POINTING TO ITS

18 GROSS REVENUES. ONCE THEY POINT TO THOSE GROSS REVENUES AND

19 INDICATE WHAT THEY ARE SEEKING, THEN THE BURDEN SHIFTS TO US TO

20 OFFER UP APPORTIONMENT ANALYSIS, AND WE CAN DO SO IN THE 05:42

21 CONTEXT OF REBUTTAL REPORTS. THAT'S WHAT HAPPENED IN STRAUS,

22 AND THAT'S WHAT SHOULD HAPPEN HERE, YOUR HONOR.

23  **THE COURT:** WHAT IS YOUR VIEW IN TERMS OF IF THIS IS

24 BEING RAISED FOR THE FIRST TIME IN A REBUTTAL REPORT OF MATTEL

25 INTRODUCING THE KIVETZ SURVEY? 05:42

 1          **MR. ROTH:**  YOUR HONOR, AS WE INDICATED ON FRIDAY, WE

 2   THINK THERE IS SOME UNFAIRNESS HERE.  THEY HAVE SAT ON THAT

 3   REPORT.  THEY INDICATED TO US ON FRIDAY THAT WE COULD HAVE THAT

 4   REPORT.  WE STILL DON'T HAVE IT.  THEY HAVE BEEN SITTING ON

 5   THOSE RESULTS FOR SIX WEEKS, WAITING UNTIL AFTER THERE WAS A          05:42

 6   1-A VERDICT BEFORE THEY EVEN LET US KNOW ABOUT THIS REPORT.

 7          HOWEVER, IF YOUR HONOR BELIEVES AS A MATTER OF

 8   FAIRNESS THAT IT IS NECESSARY TO OFFER UP BOTH REPORTS, IF

 9   THAT'S THE APPROPRIATE WAY TO GO, THEN WE WOULD AGREE WITH

10   THAT.                                                                 05:43

11          **THE COURT:**  I DON'T BELIEVE I HAVE THE KIVETZ SURVEY

12   MYSELF, SO I'M NOT SURE -- LET ME HEAR FROM MATTEL ON THAT.

13          **UNIDENTIFIED SPEAKER:**  THE COURT'S SCHEDULING ORDER

14   DOES NOT PROVIDE THEY CAN SUBMIT A REPORT FOR THE FIRST TIME IN

15   REBUTTAL, BASED ON WHOSE BURDEN OF PROOF IT IS.                       05:43

16          THEY SUBMITTED THE GRUCA REPORT AS REBUTTAL TO

17   MS. SCOTT, AND SHE'S NO LONGER BEING PERMITTED TO TESTIFY ON

18   THE ISSUE WHICH THEY PURPORTED IT WAS REBUTTAL -- NO DIFFERENT

19   FROM THE HOLLANDER SITUATION.

20          **THE COURT:**  LET ME STOP YOU THERE, BECAUSE I MISSED         05:43

21   THE LINE I THINK THE COURT REPORTER MISSED AS WELL.

22          DID YOU SAY IT WAS NO DIFFERENT THAN THE HOLLANDER

23   SITUATION?

24          **UNIDENTIFIED SPEAKER:**  THAT'S CORRECT.

25          THE WITNESSES WHO MR. HOLLANDER WAS REBUTTING ARE NOT          05:44

1  BEING CALLED ANY LONGER, SO HE'S NOT BEING PERMITTED TO

2  TESTIFY.

3  **THE COURT:** OKAY. I WAS HOPING WE COULD WORK OUT A

4  STIPULATION TO THIS.

5  I NEED TO TAKE A LOOK AT THIS, BECAUSE I WAS REALLY          05:44

6  RELYING ON THE PROCEDURAL MOOTNESS OF THIS. I MIXED MY SURVEYS

7  UP HERE. I WILL TAKE ANOTHER LOOK AT MATTEL NUMBER 11, THE

8  OPPOSITIONS AND THE REPLY. I'LL CONSIDER THIS ARGUMENT BEING

9  MADE NOW, AND I'LL ISSUE A RULING ON THIS ON WEDNESDAY.

10  **MR. ROTH:** YOUR HONOR, ONE QUICK RESERVATION.          05:44

11  OBVIOUSLY, SHOULD YOUR HONOR DECIDE THAT THE

12  APPROPRIATE APPROACH HERE IS TO OFFER MATTEL THE OPPORTUNITY TO

13  PUT IN MR. KIVETZ REPORT, WE WOULD RESERVE THE RIGHT TO FILE

14  ANY MOTION TO THAT REPORT ONCE WE SEE IT. IT WOULD BE NICE IF

15  WE SAW IT SOON SO WE COULD BEGIN TO MAKE THAT KIND OF          05:44

16  CALCULATION.

17  **THE COURT:** IS THERE A REASON WHY MATTEL CAN'T

18  PRODUCE THE KIVETZ REPORT AT THIS TIME?

19  **UNIDENTIFIED SPEAKER:** NO, YOUR HONOR. WE CAN DO

20  THAT.                                                          05:45

21  **THE COURT:** COULD YOU FAX A COPY OF THAT TO MY

22  CHAMBERS AS WELL.

23  **UNIDENTIFIED SPEAKER:** THAT DOESN'T CHANGE OUR VIEW

24  THAT NEITHER REPORT --

25  **THE COURT:** I UNDERSTAND. YOU'RE NOT WAIVING          05:45

```
 1   ANYTHING.  IT'S JUST, IN THE ALTERNATIVE -- IF THE COURT DOES
 2   ALLOW THE GRUCA SURVEY TO COME IN, I SUSPECT, IF YOU WANT THE
 3   KIVETZ SURVEY, YOU'D BETTER GIVE ME A COPY OF IT.
 4              UNIDENTIFIED SPEAKER:  YES, YOUR HONOR.
 5              THE COURT:  VERY WELL.                              05:45
 6         MOVING ALONG TO PROBABLY THE MOST DISTASTEFUL MOTION
 7   ON THE WHOLE TRIAL, AND THAT'S THE MOTION IN LIMINE NUMBER 15.
 8   I ALWAYS SAY THAT BECAUSE, UNFORTUNATELY, THIS ONE DEALS NOT
 9   WITH THE SUBSTANTIVE ISSUES SO MUCH, BUT WITH THIS ISSUE OF
10   DISQUALIFICATION AND CHANGE AND ALL THAT.  I PUT THIS OFF TO    05:45
11   THE END, BECAUSE IT'S THE ONE I LEAST LOOK FORWARD TO DEALING
12   WITH IT.  BUT DEAL WITH IT I MUST.
13         THIS IS WHERE I'VE COME OUT ON THE MOTION IN LIMINE
14   TO PRECLUDE THE EXPERT TESTIMONY OF MS. TOMIYAMA AND OTHERWISE
15   PRECLUDE ANY REFERENCE.                                        05:46
16         AS I THINK MR. NOLAN POINTED OUT -- NOT MR. NOLAN; IT
17   WAS SOMEBODY ELSE; I CAN'T REMEMBER WHO IT WAS; MAYBE IT WAS
18   MS. AGUIAR -- WE'VE ALREADY HAD TESTIMONY RECEIVED IN THIS
19   TRIAL FROM MS. MARTINEZ, FROM OTHERS, CONCERNING THE
20   DISTINCTIONS BETWEEN A 2-DIMENSIONAL DOLL AND A 3-DIMENSIONAL   05:46
21   DOLL.  WE'VE HAD LAY TESTIMONY, ESSENTIALLY.
22         WHAT I'M INCLINED TO DO AT THIS POINT IS TO PRECLUDE
23   MGA FROM INTRODUCING ANY EXPERT TESTIMONY THAT A 3-DIMENSIONAL
24   DOLL CANNOT INFRINGE A 2-DIMENSIONAL DOLL, BUT PERMIT BOTH LAY
25   WITNESS TESTIMONY AND ARGUMENT CONCERNING THE ARGUMENT THAT A   05:47
```

```
 1   2-DIMENSIONAL DOLL DRAWING IS DIFFERENT THAN A 3-DIMENSIONAL
 2   DOLL.
 3        THE RATIONALE HERE, OF COURSE, IS NOT BASED ON
 4   ANYTHING MORE THAN ATTEMPTING TO ACHIEVE WHAT MR. ZELLER
 5   PERSUASIVELY ARGUED ON FRIDAY AS A REMOVAL OF THE TAINT OF WHAT    05:47
 6   TOOK PLACE EARLIER WITH MS. TOMIYAMA, WHILE AT THE SAME TIME
 7   RECOGNIZING WHAT MGA ARGUED ON FRIDAY WAS THE FACT THAT THIS
 8   ISSUE HAD ALREADY BEEN INTRODUCED THROUGH MATTEL WITNESSES, AND
 9   OTHERS, INTO THE TRIAL, AND THAT IS AN ARGUMENT THAT IS OUT
10   THERE AND IS ALMOST A CERTAIN COMMON-SENSICAL WAY THAT THE         05:47
11   ARGUMENT IS ALREADY OUT THERE.  BUT I THINK BY PRECLUDING ANY
12   EXPERT TESTIMONY FROM DISCUSSING IT, THE COURT ACHIEVES A
13   CERTAIN LEVELING OF THE PLAYING FIELD CONCERNING THE TAINT
14   ISSUE.
15        BUT THAT'S MY TENTATIVE ON THAT.  I'LL HEAR FROM BOTH        05:48
16   SIDES.  THAT'S WHERE I'M AT ON THAT AT PRESENT.
17        MR. ZELLER:  THANK YOU, YOUR HONOR.
18        WE'LL SUBMIT ON THE COURT'S RULING WITH RESPECT TO
19   MS. TOMIYAMA.  A CONCERN, HOWEVER, IS THIS.  EVEN BEYOND THE
20   ISSUES REGARDING THE RETENTION OF MS. TOMIYAMA AND WHAT WOULD      05:48
21   BE AN APPROPRIATE REMEDY IN LIGHT OF THE EVENTS THERE, IS THE
22   FACT THAT COPYRIGHT LAW IS QUITE CLEAR THAT 2-D TO 3-D IS STILL
23   INFRINGEMENT IF IT'S SUBSTANTIALLY SIMILAR.
24        THIS IS RIGHT OUT OF THE TREATISES; RIGHT OUT OF THE
25   NINTH CIRCUIT CASES.                                              05:49
```

```
 1        THE COURT:  I AGREE WITH YOU.  SO THERE'S NO
 2   TESTIMONY THAT'S GOING TO COME IN THAT SAYS THAT A
 3   3-DIMENSIONAL DOLL CANNOT INFRINGE A 2-DIMENSIONAL DRAWING.
 4   THERE'S JUST BEEN SOME TESTIMONY THAT THERE ARE DIFFERENCES.
 5   AND THOSE DIFFERENCES ARE PART OF THE WHOLE MIX THAT GOES INTO      05:49
 6   THE ISSUE OF SUBSTANTIAL SIMILARITY THAT THE JURY MUST RECKON
 7   WITH.
 8        WHAT I'M NOT PREPARED DO, MR. ZELLER, IS RULE THAT
 9   MGA CANNOT EVEN USE THE PHRASE "2-DIMENSIONAL; 3-DIMENSIONAL."
10   I THINK THAT GIVEN HOW THE TRIAL HAS PLAYED OUT SO FAR, GIVEN       05:49
11   ALMOST THE COMMON-SENSICAL NATURE OF THE DIFFERENCES BETWEEN A
12   3-DIMENSIONAL DOLL AND THE 2-DIMENSIONAL DRAWING, THAT I THINK
13   GOES BEYOND THE NECESSARY CURATIVE PRESCRIPTION AGAINST
14   AFFORDING THIS KIND OF EXPERT TESTIMONY ALONG THE LINES THAT
15   MS. TOMIYAMA HAD SUGGESTED IN HER EXPERT REPORT.                    05:49
16        MR. ZELLER:  SURE.  AND I UNDERSTAND THE DISTINCTION
17   THE COURT IS MAKING.  THAT'S WHY I'M SOMEWHAT DIVORCING IT FROM
18   THE COURT'S, SHALL WE SAY, CURATIVE ASPECTS OF THIS, VERSUS
19   WHAT WE THINK THE LAW IS, APART FROM WHETHER OR NOT
20   MS. TOMIYAMA HAD EVER BEEN RETAINED.                               05:50
21        WE HAVE PROPOSED, AND CERTAINLY WE ANTICIPATE ASKING
22   THE COURT TO GIVE, A JURY INSTRUCTION THAT SAYS QUITE PLAINLY
23   TO THE JURY THAT 3-DIMENSIONAL OBJECTS, DOLLS, THAT THE
24   DRAWINGS CAN BE INFRINGED, EVEN THOUGH THEY ARE IN 2-D, BY 3-D
25   ITEMS.                                                             05:50
```

```
 1          THE COURT:  I'M NOT GETTING TO THAT AT ALL RIGHT NOW.
 2    WE'LL TAKE THAT UP AT THE CHARGING STAGE.  I UNDERSTAND YOUR
 3    POSITION THERE, MR. ZELLER, AND YOU CERTAINLY WILL BE IN A
 4    POSITION TO MAKE THAT REQUEST TO THE COURT AT THAT TIME AND THE
 5    COURT WILL TAKE IT UP.  ALL I'M DOING IS RULING ON WHETHER OR      05:50
 6    NOT -- YOU CERTAINLY PRESERVE ANY OTHER LEGAL OBJECTIONS TO ANY
 7    ARGUMENTS BEING MADE OR ANY EVIDENCE BEING INTRODUCED ALONG
 8    THESE LINES.  I'M JUST ADDRESSING THOSE THAT ARE RELATED TO THE
 9    ISSUE OF TAINT.
10          MR. ZELLER:  FAIR ENOUGH, YOUR HONOR.                        05:51
11          I WAS ONLY CONCERNED BECAUSE THE COURT WAS SUGGESTING
12    THAT THEY COULD MAKE THESE ARGUMENTS; AND SO I JUST WANTED TO
13    MAKE SURE.
14          THE COURT:  I PROBABLY DIDN'T CHOOSE MY WORDS AS
15    CAREFULLY AS I SHOULD HAVE.  THAT'S A GOOD POINT YOU'RE MAKING.    05:51
16    ALL I'M SAYING IS THAT THE TAINT ISSUE IS NOT GOING TO RESTRICT
17    ARGUMENT OR LAY EVIDENCE WITH RESPECT TO 2-D/3-D, AS OPPOSED TO
18    POTENTIAL OTHER ARGUMENTS THAT COULD BE MADE THAT ARE NOT
19    BEFORE ME RIGHT NOW.  I'M JUST LIMITING THE EXTENT OF THE
20    COURT'S PRECLUSION RULING WITH RESPECT TO THE TAINT ISSUE TO      05:51
21    NOT ONLY MS. TOMIYAMA -- YOU CONVINCED ME ON FRIDAY THAT IT
22    NEEDS TO GO BEYOND THAT -- I THINK I NEED TO EXTENT IT TO
23    EXPERT WITNESSES; BUT THAT'S AS FAR AS I THINK I'M WILLING TO
24    EXTEND IT.
25          MR. ZELLER:  I APPRECIATE THAT, YOUR HONOR.                  05:52
```

| | |
|---|---|
| 1 | THANK YOU. |
| 2 | **THE COURT:** ANYTHING FROM MGA ON THIS POINT? |
| 3 | **MS. AGUIAR:** WE SUBMIT ON OUR PRIOR ARGUMENTS. |
| 4 | THANK YOU. |
| 5 | **THE COURT:** VERY WELL. |
| 6 | THE LAST THING I WANT TO GET TO IS THE AFFIRMATIVE |
| 7 | DEFENSES; AND AGAIN, THE COURT WILL BE ISSUING A WRITTEN |
| 8 | OPINION ON THIS. |
| 9 | **MS. AGUIAR:** I BELIEVE THAT THERE IS ACTUALLY ANOTHER |
| 10 | MATTEL MOTION *IN LIMINE*, IF YOU WANTED TO DO ALL OF THE MOTIONS |
| 11 | *IN LIMINE* TOGETHER, OR DID YOU WANT TO -- |
| 12 | **THE COURT:** I THOUGHT I WAS DONE. |
| 13 | WHICH ONE ARE YOU REFERRING TO? |
| 14 | **MS. AGUIAR:** MATTEL'S MOTION *IN LIMINE* NUMBER 13; I |
| 15 | THINK THAT WAS THE ONE MR. COREY REMINDED YOU ABOUT BEFORE; AND |
| 16 | THERE'S A SECOND ONE ACTUALLY, AN MGA MOTION *IN LIMINE* NUMBER |
| 17 | SIX. |
| 18 | **THE COURT:** ON NUMBER 13, BERGSTEIN, TONNER ARE OUT. |
| 19 | IS THERE A DEBORAH MIDDLETON? |
| 20 | **MS. AGUIAR:** YES. |
| 21 | **THE COURT:** AND MGA'S NUMBER SIX. |
| 22 | **MR. ROTH:** THIS IS THE ISSUE YOU MAY RECALL FROM OUR |
| 23 | EXTENDED HEARINGS PRIOR TO PHASE 1-A; IT WAS AN ISSUE THAT WAS |
| 24 | PUT OFF, REALLY, UNTIL 1-B, WHICH IS THE EXTENT TO WHICH PHASE |
| 25 | TWO TYPE EVIDENCE -- LET'S CALL IT MISAPPROPRIATION TRADE |

05:52
05:52
05:52
05:53
05:53

1  SECRET TYPE ALLEGATIONS -- COULD BE INTRODUCED INTO THE PHASE

2  ONE TRIAL.  YOU'LL RECALL THAT THERE WAS A CONCLUSION THAT IT

3  WOULD NOT BE INTRODUCED INTO 1-A AND THAT THE ISSUE WOULD BE

4  PUT OFF UNTIL 1-B.  AND NOW, YOUR HONOR, WE WOULD LIKE TO

5  ADDRESS THAT ISSUE, IF YOUR HONOR IS PREPARED TO ADDRESS IT          05:53

6  NOW.

7           **THE COURT:**  HOW DOES THIS RELATE TO MGA'S NUMBER

8  NINE?

9           THAT'S A TRADE SECRET.  I SEE.  THANK YOU.

10          LET ME HEAR FROM THE PARTIES ON THIS.                       05:54

11          **MR. ROTH:**  JUST TO FRAME THE ISSUE, THE QUESTION IN

12 THE COPYRIGHT DAMAGES OR REMEDY CONTEXT IS 'WHAT IS THE AMOUNT

13 OF PROFIT GENERATED BY THE SALE OF BRATZ' -- OR POTENTIALLY

14 BRATZ RELATED PRODUCTS, DEPENDING ON HOW THE LIABILITY PHASE

15 GOES -- 'THAT IS ATTRIBUTABLE TO THE INFRINGEMENT OR INFRINGING      05:54

16 MATERIAL IN THE BRATZ DOLLS?'

17          SO THE QUESTION REALLY IS, 'WHAT ARE THE FACTORS THAT

18 GENERATE THAT PROFIT OTHER THAN CARTER BRYANT'S DRAWINGS AND

19 THE DESIGN THAT IS REFLECTED, TO THE EXTENT IT IS, IN THE

20 DOLLS?'                                                             05:55

21          WE BELIEVE THAT THERE IS NO BASIS IN THE CONTEXT OF

22 THAT QUESTION, OF THE FRAMEWORK OF ANSWERING THAT QUESTION, TO

23 PERMIT MATTEL TO OFFER EVIDENCE THAT SOMEHOW FACTORS THAT WERE

24 RELEVANT TO THE SUCCESS OF BRATZ DOLLS OTHER THAN, SAY,

25 MR. BRYANT'S DRAWINGS, WERE THE SUBJECT OF A POTENTIAL             05:55

1    MISAPPROPRIATION CLAIM OR TRADE SECRET CLAIM THAT WE THINK IS

2    PROBABLY LODGED IN PHASE TWO.

3            TO MAKE THIS MORE CONCRETE, THERE ARE LOTS OF CASES

4    -- FIRST OF ALL, THERE'S NO CASE THAT EITHER SIDE POINTS TO

5    THAT PERMITS SUCH TESTIMONY TO BE USED IN THE CONTEXT OF THE          05:55

6    APPORTIONMENT ANALYSIS.

7            WHERE YOU HAVE, FOR INSTANCE, A THIRD PARTY'S

8    CREATIVE INPUT INTO A PRODUCT -- NOT SOMETHING THAT THE

9    DEFENDANT IS RESPONSIBLE FOR -- THE FACT THAT CREATIVE ELEMENT

10   CAME FROM A THIRD PARTY IS NOT RELEVANT TO THE APPORTIONMENT          05:56

11   ANALYSIS.  THE FACT THAT A NONPROTECTABLE ELEMENT FROM THE

12   PLAINTIFF GOES TOWARD EXPLAINING THE SUCCESS AND PROFITS OF THE

13   DOLL.  AGAIN, THAT'S NOT RELEVANT TO THE APPORTIONMENT

14   ANALYSIS.

15           THE ONLY THING THAT THIS PROCESS IS TRYING TO                 05:56

16   CONCLUDE IS 'WHAT ARE THE PROFITS ATTRIBUTABLE TO THE

17   INFRINGEMENT?'  NOT WHERE THE OTHER FACTORS CAME FROM.  AND IF

18   WE GO DOWN THE LINE OF ALLOWING IN CLAIMS OF TRADE SECRET THEFT

19   OR MISAPPROPRIATION OR TAKING EMPLOYEES, WE'RE GETTING OFF INTO

20   EVIDENCE THAT HAS NOTHING TO DO AND REALLY NO PART IN THE            05:57

21   APPORTIONMENT ANALYSIS.

22           AS WE'VE INDICATED IN OUR PAPERS, THERE IS A SEPARATE

23   PHASE, A PHASE TWO IN THIS CASE, WHERE THOSE CLAIMS, TO THE

24   EXTENT THEY ARE COGNIZABLE, WILL BE LITIGATED.

25           **THE COURT:**  I SEE BOTH SIDES OF THIS.  I SEE YOUR        05:57

 1  ARGUMENT. LET ME HEAR FROM MATTEL.

 2      **MR. ZELLER:** THE COURT HAS PREVIOUSLY INDICATED ON A

 3  COUPLE OF OCCASIONS THAT IN THE EVENT THEY START RAISING POINTS

 4  CLAIMING THAT, 'WELL, NO, THE SUCCESS OF BRATZ HAS NOTHING TO

 5  DO WITH THE APPEARANCE OF THE DOLL BUT IT'S ALL OUR BRILLIANT          05:57

 6  MARKETING,' WE'RE ENTITLED TO RESPOND TO THAT. THAT IS A

 7  MATTER OF FAIRNESS AND THAT'S A MATTER OF FACTUAL TRUTH.

 8      MR. ROTH PARSES THIS SO FINELY AS TO BASICALLY SAY

 9  THAT MGA SHOULD BE ALLOWED TO TELL THE JURY BASICALLY A

10  FALSEHOOD; THAT THIS CAME FROM THEM; THAT THIS IS WHAT DRIVES          05:58

11  IT; DON'T PUNISH US BECAUSE WE ARE THE ONES WHO EXECUTED THIS

12  IN SUCH A FABULOUS FASHION.

13      SO, I MEAN, THIS IS MORE THAN JUST PARSING THINGS IN

14  SOME FINE LEGAL WAY. THIS IS A MATTER OF FUNDAMENTAL TRUTH

15  AND, REALLY, THAT THE JURY SHOULD KNOW WHAT THE FACTS ARE. MGA        05:58

16  HAS ITS CHOICES HERE. BUT WHAT IT CERTAINLY CANNOT BE ALLOWED

17  TO DO IS TELL A VERSION OF THE EVENTS THAT THEY WANT TO TELL

18  THE JURY AND THEN BASICALLY SHUT US UP AND SAY, 'WELL, GUESS

19  WHERE THAT CAME FROM, THAT WAS STOLE FROM MATTEL.'

20      **THE COURT:** I THINK I DO UNDERSTAND YOUR ARGUMENT.           05:58

21      THE CONCERN THAT I HAVE IS SCOPE, AND I AM VERY

22  CONCERNED ABOUT OPENING UP, BASICALLY IMPORTING PHASE TWO INTO

23  PHASE 1-B. I UNDERSTAND THAT DEPENDING ON WHAT MGA DOES OR

24  DOES NOT DO WITH APPORTIONMENT -- AND IT'S NOT CLEAR EXACTLY

25  HOW FAR THIS GOES OR HOW FAR THEY WANT TO GO WITH IT -- I CAN         05:59

1  SEE TH EROTICALLY ISSUES THAT COULD BE RAISED BY MGA THAT, OUT

2  OF FAIRNESS, TO GIVE A CLEAR PICTURE, THAT MATTEL WOULD HAVE

3  THE RIGHT TO REBUT WITH INTRODUCING EVIDENCE THAT RIGHT NOW

4  WE'RE PRESUMING IS GOING TO BE RESERVED FOR PHASE TWO, ASSUMING

5  THERE IS A PHASE TWO.                                             05:59

6        BUT THE CONCERN I HAVE IS THE SCOPE OF WHERE THAT

7  WOULD GO.

8        **MR. ROTH:**  AGAIN, I THINK MR. ZELLER HAS FRAMED THE

9  QUESTION IMPROPERLY.  IT'S NOT A MATTER OF WHO IT COMES FROM.

10 IT DOESN'T MATTER WHO IT COMES FROM.                             05:59

11       THE QUESTION IS 'WHAT IS THE PROFITABLE ATTRIBUTABLE

12 TO THE INFRINGEMENT, VERSUS EVERY OTHER FACTOR, REGARDLESS OF

13 WHERE THOSE FACTORS CAME FROM.'

14       WE DON'T HAVE TO PROVE THAT WE'RE RESPONSIBLE FOR IT.

15 ALL WE HAVE TO PROVE IS THAT IT'S NOT THE INFRINGEMENT.  THAT'S  06:00

16 THE QUESTION.  SO I THINK, WITH ALL DUE RESPECT, MR. ZELLER IS

17 IMPROPERLY FRAMING THE QUESTION THAT NEEDS TO BE ANSWERED IN

18 THIS PHASE.

19       **THE COURT:**  MR. ZELLER?

20       **MR. ZELLER:**  YOUR HONOR, LOOK AT IT THIS WAY,          06:00

21 RESPECTFULLY.  IT'S IMPEACHMENT.  IF SOMEONE WANTS TO GET UP

22 THERE AND SAY IT'S OUR BRILLIANT MARKETING, WE SHOULD BE

23 ENTITLED TO IMPEACH THE PERSON AND COMMENT ON THEIR CREDIBILITY

24 OF HAVING BASICALLY COUNTING SOMETHING THAT THEY STARTED.

25       SO I UNDERSTAND THE COURT'S --                             06:00

1    **THE COURT:**  THAT ALMOST HAS A TINGE OF THE VERY

2    'MATTEL BASHING' THAT I WAS SO HARD ON ON MGA IN THE FIRST

3    PHASE.  I DON'T WANT THIS TO TURN INTO MGA BASHING.

4    **MR. ZELLER:**  I COMPLETELY AGREE, YOUR HONOR, AND THE

5    COURT'S COMMENTS ABOUT SCOPE, I THINK ARE REALLY THE RIGHT          06:01

6    ONES.  OBVIOUSLY, THE COURT WILL HAVE CONTROL OVER THAT.  AND

7    ALSO, WE ONLY HAVE 12 HOURS; SO THE MORE TIME WE WERE TO SPEND

8    ON SOMETHING LIKE THIS, WE'RE HURTING OURSELVES; SO I THINK

9    THAT AS A PRACTICAL MATTER, THE COURT WILL FIND THAT THE SCOPE

10   CAN BE MANAGED FAIRLY READILY.                                      06:01

11   AND I'M ABSOLUTELY MINDFUL OF THE --

12   **THE COURT:**  BUT ADDRESS MR. ROTH'S POINT, BECAUSE

13   IT'S A GOOD ONE.  EVEN IF THIS DID COME FROM MATTEL, EVEN IF

14   THIS DID COME FROM A STOLEN TRADE SECRET, WHATEVER IT IS, IF

15   IT'S NOT ACCOUNTABLE TO THE INFRINGED COPYRIGHTS, OR NOT            06:01

16   DERIVATIVE OR RESULTING FROM THE INFRINGED COPYRIGHT, THEN IT

17   DOESN'T COME IN AS PART OF THE COPYRIGHT DAMAGES.

18   **MR. ZELLER:**  YES.  LET ME ADDRESS A COUPLE OF POINTS,

19   YOUR HONOR.

20   AS A PRELIMINARY MATTER, WE INTEND TO ARGUE THAT                    06:01

21   THERE SHOULD BE NO APPORTIONMENT PERIOD; SO THE COURT MAY NOT

22   EVEN HAVE TO REACH THIS ISSUE IN TERMS OF 'HOW CAN MATTEL

23   RESPOND TO APPORTIONMENT ISSUES.'

24   NUMBER TWO, IN FACT, AND WE MAY BE GETTING A LITTLE

25   AHEAD OF OURSELVES ON SOME OF THIS, BECAUSE THE COURT, AS I'M       06:02

1  SURE IS AWARE, THAT UNCLEAN HANDS IS ITSELF A RESPONSE TO

2  EQUITABLE DEFENSES SUCH AS LACHES AND THE OTHER EQUITABLE

3  DEFENSES THAT'S MGA WANTS TO RAISE; SO TO THE EXTENT WE START

4  GETTING INTO THOSE VERY ISSUES IN FRONT OF THE JURY, THEN THAT

5  CERTAINLY IS RELEVANT TO THOSE MATTERS.                        06:02

6        AND, AGAIN, OBVIOUSLY THE COURT HAS NOT GOTTEN TO

7  THAT RULING YET, SO I DON'T WANT TO JUMP TOO FORWARD AHEAD.

8        INSOFAR AS IT GOES TO THE APPORTIONMENT ISSUE, EVEN

9  ASSUMING WE GET TO IT, AGAIN, IT'S NOT NECESSARILY THAT IT HAS

10 TO BE RELATED JUST TO APPORTIONMENT; IT'S AS A MATTER OF       06:02

11 CREDIBILITY AND IMPEACHMENT, THEY ARE GOING TO SAY IT IS OUR

12 BRILLIANT MARKETING.

13       THAT WILL NOT BE A TRUE STATEMENT.  IT IS NOT THEIR

14 BRILLIANT MARKETING.  THEY TOOK IT FROM MATTEL.  AND SO WHILE

15 ONE COULD SAY IN A VERY NARROW, TECHNICAL WAY, THAT IT DOESN'T  06:03

16 MATTER WHAT THE SOURCE OF IT IS, FOR PURPOSES OF APPORTIONMENT,

17 THEIR STATEMENTS TOUTING THEIR ABILITIES, AS THEY DID

18 THROUGHOUT PHASE 1-A, IT'S THEIR RESPONSE, AND A TRUTHFUL

19 RESPONSE TO IT IS:  THAT'S NOT YOU.

20       IT'S IMPEACHMENT; IT GOES RIGHT TO THEIR CREDIBILITY.    06:03

21       MR. ROTH:  YOUR HONOR, AGAIN, HE'S ATTEMPTING TO

22 CHANGE THE QUESTION THAT IS GOING TO BE ANSWERED IN THIS PHASE.

23       AS I THINK I FRAMED IT PROPERLY, THE QUESTION HERE IN

24 THE APPORTIONMENT CONTEXT IS 'WHAT PROFITS ARE ATTRIBUTABLE TO

25 THE INFRINGEMENT, VERSUS EVERYTHING ELSE.'  AND IT DOESN'T     06:03

1   MATTER WHERE THE 'EVERYTHING ELSE' CAME FROM.

2         AND WHERE THE 'EVERYTHING ELSE' CAME FROM IS GOING TO

3   GET US DOWN A 403 HOLE THAT'S IRRELEVANT TO THE DAMAGES

4   CALCULATION, AND WE, FRANKLY, THINK SHOULD NOT BE PART OF THE

5   1-B TRIAL.                                                          06:04

6         **THE COURT:**  I'M GOING TO HAVE TO TAKE THIS ONE UNDER

7   SUBMISSION.  I UNDERSTAND YOUR RESPECTIVE ARGUMENTS, I THINK,

8   AND I WILL READ THE MOTION AND THE OPPOSITION AND THE REPLY,

9   AND I WILL CIRCLE BACK TO IT.  THIS IS THE ONE I MISSED.

10        THE OTHER ONE I'D LIKE TO HEAR ARGUMENT ON IS THE          06:04

11  MIDDLETON EXPERT REPORT.

12        **MR. NOLAN:**  BEFORE YOU GO OFF TO THIS NEXT ONE, THE

13  ONLY OTHER POINT I WOULD SUPPLEMENT ON THIS LAST DISCUSSION.

14  SCOPE, I THINK, IS ALSO REFERRED TO AS -- I THINK IF WE'RE

15  GOING TO BREAK DOWN THE BARRIERS BETWEEN PHASE TWO AND PHASE     06:04

16  1-B, THIS RAISES A POTENTIAL, VERY SERIOUS SEVENTH AMENDMENT

17  ISSUE THAT WOULD BE ADDRESSED LATER ON.  IF ALL OF A SUDDEN

18  THIS INFORMATION AND THIS EFFORT BY MR. ZELLER IN A CLOSING

19  ARGUMENT FORMAT, TO SAY EVERYTHING WE DID WAS STOLEN FROM

20  MATTEL, SIMPLY GETS OLD, NUMBER ONE.  NUMBER TWO, IT'S NOT       06:05

21  TRUE.  AND, THREE, IF THAT'S THE WAY THIS IS GOING TO BE TRIED

22  IN 1-B, YOUR HONOR, WE'RE JUST GOING TO HAVE A LOT OF ISSUES

23  WITH PHASE TWO.  AND I'LL SUBMIT ON THAT.

24        **THE COURT:**  VERY WELL.

25        LET ME HEAR ON THE MIDDLETON REPORT; THIS IS THE           06:05

| | |
|---|---|
| 1 | OTHER ONE I SKIPPED OVER. |
| 2 | **MR. COREY:** WITH RESPECT TO MS. MIDDLETON, WHAT SHE |
| 3 | IS, REALLY, IS A FACT WITNESS DRESSED UP AS AN EXPERT, AND |
| 4 | SHE'S AN MGA EMPLOYEE, AND SHE'S BEING OFFERED TO RENDER A |
| 5 | COUPLE OF OPINIONS THAT REALLY, IN MATTEL'S OPINION, JUST GO TO |
| 6 | THE PROVINCE OF THE JURY AS TO DECIDE WHETHER SPECIFICALLY SOME |
| 7 | OF THE PACKAGING ART ON THE BRATZ PRODUCTS AFTER 2003 LOOKED |
| 8 | LIKE CARTER BRYANT'S DRAWINGS. |
| 9 | I THINK, AT BEST, IT'S SOMETHING THE JURY NEEDS TO |
| 10 | DECIDE. AT WORST, I'M AFRAID THE COURT IS GOING TO -- MGA IS |
| 11 | ASKING THE COURT TO DRESS THE FACT WITNESS UP INTO AN EXPERT, |
| 12 | AND I THINK THAT WILL IMPROPERLY TAINT HER TESTIMONY. |
| 13 | **THE COURT:** LET ME ASK YOU THIS. |
| 14 | DO YOU HAVE AN OBJECTION TO HER TESTIFYING AS A FACT |
| 15 | WITNESS PURSUANT TO THESE ITEMS? |
| 16 | OBVIOUSLY, IT WOULD HAVE TO BE REGEARED IN TERMS OF |
| 17 | HOW HER TESTIMONY CAME OUT AS A FACT WITNESS, AS OPPOSED TO AN |
| 18 | EXPERT OPINION. |
| 19 | **MR. COREY:** NO, NOT AT ALL. SHE'S AN MGA EMPLOYEE. |
| 20 | SHE WORKED ON PACKAGING ART AFTER 2003. IF THEY WANT TO BRING |
| 21 | HER IN AS A FACT WITNESS, SHE WOULD BE TREATED LIKE ANY OTHER |
| 22 | FACT WITNESS. |
| 23 | **THE COURT:** LET ME HEAR FROM MGA. |
| 24 | **MR. HANSEN:** YOUR HONOR, THIS IS DAVID HANSEN. IT'S |
| 25 | MY FIRST ARGUMENT BEFORE YOU, SO YOU'RE NOT FAMILIAR WITH ME. |

06:05
06:06
06:06
06:06
06:07

1    ON MS. MIDDLETON, I'M GLAD TO HEAR THEY DON'T OBJECT

2    TO THE FACT WITNESS PART, BECAUSE SHE DOES HAVE A LOT TO SAY IN

3    THAT AREA.  SHE WAS HEAD OF THE CHARACTER ART PACKAGING ISSUES

4    FOR MGA, THAT DEPARTMENT.

5        THE ISSUE GOES DIRECTLY, AS THEY MENTIONED BEFORE, TO    06:07

6    THE DIRECT INFRINGEMENT OF CERTAIN PRODUCTS TO THE EXTENT IT

7    HAS THE IMAGES ON THEM.  THERE'S NOTHING WRONG -- I THINK THE

8    CASES IN OUR PAPERS SHOW -- THERE'S NOTHING WRONG WITH USING AN

9    EMPLOYEE AS A FACT WITNESS AS WELL AS AN EXPERT WITNESS.  AND

10   MS. MIDDLETON, SHE HAS A DEGREE IN FINE ARTS.  SHE SPENT A LOT    06:07

11   OF TIME IN THE INDUSTRY, AND SHE PARTICULARLY WORKED AT AN

12   AGENCY DOING CHARACTER ART BEFORE SHE CAME TO MGA.

13       SO I THINK AS A BASIC MATTER, SHE WOULD SATISFY THE

14   STANDARD FOR OFFERING EXPERT TESTIMONY ON THIS ISSUE THAT WOULD

15   HELP THE JURY IN DECIDING WHAT IS ADMITTEDLY A RELEVANT ISSUE.    06:08

16   AND FRANKLY, SORT OF TO MS. AGUIAR'S POINTS BEFORE, IN TERMS OF

17   -- SHE IS THE ART EXPERT REBUTTAL OF THEIR EXPERT, LOETZ; SO

18   REALLY, ON THE PACKAGE AREA, SHE WOULD BE DIRECTLY RESPONSIVE

19   TO MR. LOETZ'S TESTIMONY.  FRANKLY, SHE HAS MORE EXPERTISE IN

20   THE AREA OF PACKAGE ARTS THAN MR. LOETZ DOES.    06:08

21       SO I GUESS THE ANSWER WOULD BE TO THE EXTENT THEY

22   WANT TO BOUNCE MIDDLETON ON THE PACKAGE ARTS, YOU SHOULD ALSO

23   BOUNCE LOETZ.

24       **THE COURT:**  I APPRECIATE THAT, MR. HANSEN.

25       ANYTHING FURTHER ON THIS?    06:08

MONDAY, JULY 21, 2008                    CONTINUED BENCH CONFERENCE (TELEPHONIC

```
 1        MR. COREY:  MS. MIDDLETON IS ACTUALLY NOT AS
 2   QUALIFIED AS MR. LOETZ, AND WHAT SHE DOES IS -- WE CAN ADDRESS
 3   THE CREDIBILITY OF HER QUALIFICATIONS A LIT BIT LATER, IF WE
 4   GET TO THAT POINT.  BUT WHAT SHE REALLY DOES IS SHE SAYS THAT
 5   THIS PACKAGING ART IS NOT SUBSTANTIALLY SIMILAR TO                06:09
 6   CARTER BRYANT'S DRAWINGS, AND IT REALLY IS NOT MORE
 7   ANALYTICALLY SOUND THAN THAT.
 8        IF THE COURT WERE TO TAKE A MOMENT AND LOOK AT EITHER
 9   THE INITIAL REPORT THAT SHE OFFERED OR HER REBUTTAL REPORT, IT
10   DOESN'T GET MUCH BEYOND THAT.  IT'S NOT THE SAME KIND OF          06:09
11   ANALYSIS THAT MR. LOETZ DOES WHERE THERE'S SOME STANDARDS BEING
12   APPLIED.
13        THE COURT:  WELL, I'LL TAKE A LOOK AT THOSE REPORTS.
14        SO THERE ARE THREE MATTERS THAT I NEED TO HAVE.  I
15   APOLOGIZE THAT I WON'T HAVE THOSE FOR YOU UNTIL WEDNESDAY         06:09
16   MORNING.  BUT I TRUST YOU'LL BE ABLE TO WORK YOUR OPENING
17   STATEMENTS AND YOUR FIRST DAY OF TESTIMONY AROUND THAT.
18        MR. QUINN?
19        MR. QUINN:  YES, YOUR HONOR.
20        THE COURT:  MR. NOLAN?                                       06:09
21        MR. NOLAN:  YES, YOUR HONOR.  WE CAN.
22        MR. HANSEN:  I APOLOGIZE, I MISSED THE ONE IN
23   CONNECTION WITH THE COURT'S COPYRIGHT SCOPE RULING.
24        CAN YOU GIVE US ANY INSIGHT AS TO -- YOU MENTIONED
25   THAT YOU HAVE LOOKED AT IT AND THAT IT'S IMPORTANT TO FILTER      06:10
```

```
 1 | OUT UNPROTECTABLE ELEMENTS WITH RESPECT TO THE ART WORK.
 2 |       THE ISSUE I WAS NOT CERTAIN ON IS WHO'S ACTUALLY
 3 | GOING TO DO THE FILTERING?  MAYBE I MISSED THAT.  I APOLOGIZE
 4 | IF YOU'VE ALREADY SAID.
 5 |       THE COURT:  YOU DIDN'T MISS ANYTHING.
 6 |       THAT'S GOING TO BE -- THE INSTRUCTION ON THAT WILL BE
 7 | GOING TO THE JURY FROM THE COURT.  I'M DECLINING MR. NOLAN'S
 8 | INVITATION TO DO A MINI-MARKMAN-TYPE HEARING ON THIS.  I DON'T
 9 | THINK IT'S NECESSARY.  I THINK THAT WE CAN HAVE THE ELEMENTS
10 | ADDRESSED BY THE EXPERTS.  THIS IS PART OF MY REASONING FOR
11 | ALLOWING THESE EXPERTS TO IDENTIFY WHAT THEY ARE GOING TO BE
12 | IDENTIFYING.  I THINK THAT, COMBINED WITH THE INSTRUCTIONS TO
13 | THE JURY IN TERMS OF WHAT IT IS THAT THEY ARE LOOKING AT WILL
14 | BE SUFFICIENT.
15 |       I THINK A COMBINATION OF WELL-WORDED JURY
16 | INSTRUCTIONS AND THE EVIDENCE THAT WE'RE GOING TO HAVE
17 | PRESENTED IN THIS PHASE WILL BE A SUFFICIENT BASIS FOR THE JURY
18 | TO DECIDE ONE WAY OR THE OTHER, AND THEN FOR THE COURT TO MAKE
19 | THE LEGAL FINDINGS IT NEEDS TO MAKE.
20 |       MR. NOLAN:  LAST POINT, YOUR HONOR.
21 |       I WAS GOING TO ASK, IN LIGHT OF THE ISSUES THAT THE
22 | JURY WILL BE ADDRESSING IN PHASE 1-B, WOULD THE COURT ENTERTAIN
23 | THE POSSIBILITY OF DOING A PRE-INSTRUCTION TO THE JURY WITH
24 | RESPECT TO THE COPYRIGHT ISSUES THAT THEY WILL BE -- I THINK
25 | BOTH SIDES HAVE SUBMITTED SOME VERSION OF THE FORM INSTRUCTION
```

06:1C
06:1C
06:11
06:11
06:11

1    WITH RESPECT TO COPYRIGHT PROTECTION.

2         BUT IT'S A UNIQUE ANIMAL, AND THIS JURY MAY NOT FULLY

3    APPRECIATE WHAT IT IS AND WHAT IT DOESN'T COVER.  FOR INSTANCE,

4    IDEAS.  AND IN LIGHT OF THE WAY 1-A WAS TRIED, AND IN LIGHT OF

5    SOME OF THE VERDICT FINDINGS THAT WERE INCLUDED IN THE VERDICT

6    FORM, WE WOULD REQUEST THE COURT TO TAKE A LOOK AT THAT.  MAYBE

7    IT NEEDS SLIGHT MODIFICATION.  PERHAPS WE COULD WORK TOMORROW

8    WITH MATTEL.  IT WOULD SIMPLY BE THAT ONE FORM INSTRUCTION THAT

9    MIGHT BE READ BEFORE WE START OPENING STATEMENTS, AND IT COULD

10   HELP.

11        **THE COURT:**  WHAT ARE MATTEL'S THOUGHTS ON THAT?

12        **MR. QUINN:**  YOUR HONOR, I GUESS MY REACTION TO THAT

13   IS I DON'T REALLY SEE ANY REASON TO SINGLE OUT COPYRIGHT ISSUES

14   AND TREAT THEM ANY DIFFERENTLY.  I MEAN, JURORS ARE USED TO

15   HEARING A LOT OF CONCEPTS AND JURY INSTRUCTIONS AT THE END OF

16   THE CASE WHICH THEY HAVE NOT HAD EXPOSURE TO BEFORE.

17        OF COURSE, WE DON'T HAVE AN AGREED OR RULED UPON SET

18   OF INSTRUCTIONS AT THIS POINT, AND I DOUBT WE COULD HAVE THEM

19   BY WEDNESDAY, JUST AS A PRACTICAL MATTER.  BUT I'M WONDERING

20   WHETHER THAT DOESN'T GIVE UNDUE EMPHASIS TO SOME CONCEPTS THAT

21   WOULD BE INTRODUCED AT THE BEGINNING, AS OPPOSED TO THE BALANCE

22   OF THE INSTRUCTIONS THAT THEY WOULD HEAR FOR THE FIRST TIME AT

23   THE END.

24        I JUST DON'T SEE A REASON TO DO IT.

25        **THE COURT:**  WELL.  YOU KNOW, ONE THING WE DO, THE

06:12
06:12
06:12
06:13
06:13

1   COURT DOES, IN CRIMINAL CASES, AND SOME CIVIL CASES, IS PROVIDE

2   SOME GUIDANCE TO THE JURY AT LEAST AS TO WHAT THE ISSUES OR, IN

3   A CRIMINAL CASE, THE OFFENSES THAT ARE AT THE CORE OF THE CASE.

4   OFTEN, THE COURT READS THE INDICTMENT IN A CRIMINAL CASE.

5          I DO THINK MR. NOLAN'S SUGGESTION THAT WE PROVIDE            06:13

6   PERHAPS GREATER GUIDANCE TO THE JURY THAN THE COURT ALREADY

7   HAS -- I TOUCHED UPON IT VERY BRIEFLY ON THURSDAY WHEN I SENT

8   THE JURY HOME AFTER THEY RETURNED THE VERDICT.  BUT PERHAPS

9   THERE MIGHT BE SOME VALUE TO HAVING THE COURT PROVIDE SOME

10  OUTLINE.                                                          06:14

11         NOW, I SUPPOSE THAT'S THE PURPOSE OF OPENING

12  STATEMENTS, AND I'M GOING TO AFFORD BOTH OF YOU AN OPPORTUNITY

13  TO GIVE THOSE, AND PERHAPS THAT'S THE BETTER WAY OF DEALING

14  WITH THIS.  I'M SORT OF THINKING OUT LOUD NOW.

15         ANY THOUGHTS ABOUT THE COURT GIVING A TENTATIVE            06:14

16  OVERVIEW OF WHAT ISSUES ARE IN PLAY FOR PHASE 1-B?

17         **MR. QUINN:**  OFTEN, ESPECIALLY IN STATE COURT, BUT

18  SOMETIMES IN FEDERAL COURT TOO, THE JURY IS GIVEN SORT OF A

19  SHORT STATEMENT OF THE CASE:  THESE ARE THE CLAIMS, THIS IS

20  WHAT THE PLAINTIFF CONTENDS; THE DEFENDANT DENIES IT; THE        06:14

21  DEFENDANT HAS THE FOLLOWING AFFIRMATIVE DEFENSES...

22         WE COULD TRY TO WORK TOGETHER WITH THE FOLKS AT

23  SKADDEN AND SEE IF WE CAN COME UP WITH THE EQUIVALENT OF THAT

24  FOR THAT PHASE 1-B, IF THAT'S WHAT THE COURT HAS IN MIND.

25         **THE COURT:**  MR. NOLAN, WOULD THAT TO ADDRESS YOUR     06:14

```
 1  CONCERN?

 2          MR. NOLAN:  THE DEVIL IS IN THE DETAILS.

 3          I THINK IT MIGHT.

 4          WHAT I'M CONCERNED ABOUT IS WE CAME OFF OF EIGHT

 5  WEEKS.  I THINK THE JURY WAS TIRED; IT WAS AN EMOTIONAL DAY FOR    06:15

 6  EVERYBODY.  AND I JUST DON'T KNOW WHETHER OR NOT THEY REALLY

 7  HAD A GRASP OF WHAT THE FUTURE LOOKS LIKE, OTHER THAN WHEN THEY

 8  ARE GOING TO GET OUT OF PURGATORY, OR WHERE EVER THEY FEEL THEY

 9  MAY BE.

10          THE COURT:  IF YOU AND MATTEL CAN COME UP WITH           06:15

11  SOMETHING THAT YOU ALL AGREE ON, I'LL READ IT.  IF YOU COME UP

12  WITH SOMETHING THAT YOU CAN CLOSELY AGREE WITH, I'LL TWEAK IT

13  AND WORK IT INTO SOMETHING THE COURT FEELS COMFORTABLE WITH.

14          I DO THINK THERE IS VALUE IN PROVIDING AN OVERVIEW

15  FROM THE COURT THAT IS A LITTLE MORE FORMAL, A LITTLE MORE        06:15

16  DETAILED THAN WHAT I PROVIDED ON THURSDAY.

17          BUT I ALSO AGREE WITH MR. QUINN THAT PERHAPS A FULL-

18  BLOWN INSTRUCTION ON COPYRIGHT INFRINGEMENT MIGHT BE A BIT MUCH

19  AND MIGHT PUT UNDUE EMPHASIS ON ONE INSTRUCTION VERSUS ANOTHER;

20  SO SOMETHING SHORT OF THAT, BUT WITH ENOUGH DETAIL TO PROVIDE     06:16

21  THE JURORS WITH A SENSE OF WHAT IT IS THAT THEY'RE GOING TO

22  HAVE TO BE DECIDING AT THE END OF THIS PHASE IS IN ORDER.

23          SPEAKING OF JURY INSTRUCTIONS, AS YOU KNOW, WE'RE

24  GOING TO HAVE TRIAL THIS WEEK; I'LL BE ATTENDING THE NINTH

25  CIRCUIT CONFERENCE NEXT WEEK; THERE WILL BE DOWN TIME DURING      06:16
```

| | |
|---|---|
| 1 | THAT CONFERENCE, AND I WOULD LIKE TO BE WORKING ON THE JURY |
| 2 | INSTRUCTIONS DURING THAT DOWN TIME; SO WHAT I WOULD LIKE |
| 3 | COUNSEL TO DO ON BOTH SIDES IS, BY THE END OF THIS WEEK, BY |
| 4 | FRIDAY, BEFORE THE COURT LEAVES, SO 6:00 OR 7:00 IN THE |
| 5 | EVENING, I WILL WANT TO HAVE THE SAME TYPE OF BREAKDOWN IN THE |
| 6 | BINDERS OF THE PROPOSED JURY INSTRUCTIONS, THE JOINTLY AGREED |
| 7 | INSTRUCTIONS, THE OBJECTIONS, JUST AS YOU DID BEFORE; WHAT YOU |
| 8 | DID THE LAST TIME WAS JUSTIFY PERFECT; SO THAT I CAN BE |
| 9 | REVIEWING THOSE WHEN I GET BACK FROM THE NINTH CIRCUIT |
| 10 | CONFERENCE, I WILL BE ABLE TO PROCEED WITH A CHARGING |
| 11 | INSTRUCTION, AND WE CAN HAVE THAT HOPEFULLY WORKED OUT ON THAT |
| 12 | MONDAY, AUGUST 4TH.  SO GOING INTO THE LAST WEEK OR TWO OF |
| 13 | TRIAL, EVERYONE WILL KNOW WHAT THEIR FINAL JURY INSTRUCTIONS |
| 14 | ARE. |
| 15 | IS THAT SOMETHING THAT WILL BE MANAGEABLE TO BOTH |
| 16 | SIDES? |
| 17 | **MR. QUINN:**  YES, YOUR HONOR. |
| 18 | **MR. NOLAN:**  WE'LL WORK ON IT; AND THAT INCLUDES, I |
| 19 | GUESS, THE VERDICT FORM. |
| 20 | **THE COURT:**  VERY GOOD.  YES, THE VERDICT FORM AS |
| 21 | WELL. |
| 22 | **LAW CLERK:**  COULD WE TAKE FIVE MINUTES FOR THE |
| 23 | BENEFIT OF THE COURT REPORTER? |
| 24 | **THE COURT:**  ABSOLUTELY. |
| 25 | I STILL HAVE MY RULING ON THE AFFIRMATIVE DEFENSES TO |

06:16

06:17

06:17

06:17

06:17

| | |
|---|---|
| 1 | GIVE. LET'S TAKE A FIVE-MINUTE BREAK. |
| 2 | I'M GOING TO HANG UP AND I WILL CALL BACK IN FIVE |
| 3 | MINUTES. ACCORDING TO MY CLOCK NOW, IT'S 6:17 NOW. AT 6:25 |
| 4 | I'LL CALL BACK IN. |
| 5 | (WHEREUPON A BRIEF RECESS WAS HELD.) |
| 6 | **THE COURT:** OKAY. I'M BACK. |
| 7 | THE LAST ISSUE I WANTED TO RULE ON TODAY WAS THE |
| 8 | ISSUE WITH RESPECT TO THE AFFIRMATIVE DEFENSES AND LACHES, IN |
| 9 | PARTICULAR. AS I INDICATED, I'VE WRITTEN SOMETHING UP ON THIS, |
| 10 | SO I'LL PUT THIS ON THE RECORD NOW AND I WILL ISSUE A MORE |
| 11 | FLUSHED-OUT RULING LATER THIS WEEK. |
| 12 | GOING OVER MY NOTES FROM FRIDAY, THERE WERE THREE |
| 13 | ISSUES THAT NEED TO BE ADDRESSED. FIRST, WHETHER THERE IS, AS |
| 14 | MGA CONTENDS, A PRESUMPTION THAT LACHES APPLIES WHEN, AS HERE, |
| 15 | A COPYRIGHT CLAIM WOULD BE TIME BARRED BUT FOR THE RELATION |
| 16 | BACK DOCTRINE; |
| 17 | SECOND, WHETHER THE COURT SHOULD GRANT MATTEL'S |
| 18 | SUMMARY JUDGMENT MOTION AS TO MGA'S LACHES DEFENSE; |
| 19 | AND THIRD, WHETHER THE DEFENSE IS LEGAL AND MUST BE |
| 20 | PRESENTED TO A JURY, OR EQUITABLE, AND THEREFORE SHOULD BE |
| 21 | DECIDED BY THE COURT, PERHAPS OUTSIDE THE PRESENCE OF THE JURY. |
| 22 | AS TO THE FIRST ISSUE, WHETHER THERE IS A PRESUMPTION |
| 23 | THAT LACHES APPLIES WHEN, AS HERE, A COPYRIGHT CLAIM WOULD BE |
| 24 | TIME BARRED BUT FOR THE RELATION-BACK DOCTRINE. ARGUMENT IS |
| 25 | CLEARLY BASED ON THE JARROW FORMULAS CASE, WHICH AT FOOTNOTE 27 |

06:27
06:29
06:29
06:30
06:30

1  OF THE OPPOSITION TO MATTEL'S MOTION FOR PARTIAL SUMMARY

2  JUDGMENT, MGA CONTENDS THAT NOTWITHSTANDING ANY CONTENTION THAT

3  MATTEL'S COPYRIGHT CLAIM IS TIMELY BASED ON THE RELATION-BACK

4  DOCTRINE, THE PRESUMPTION THAT CLAIMS FILED OUTSIDE THE

5  LIMITATIONS ARE TIME BARRED.                                    06:30

6           I THINK THAT MGA IS READING THE JARROW FORMULAS CASE

7  A LITTLE TOO BROADLY.  THAT CASE DID NOT CONSIDER SPECIFICALLY

8  HOW LACHES SHOULD APPLY WHEN A CLAIM THAT WAS OTHERWISE OUTSIDE

9  OF THE LIMITATIONS PERIOD WAS SAVED BY THE RELATIONS-BACK

10 DOCTRINE.                                                       06:31

11          THEREFORE, ITS DISCUSSION REGARDING A REVERSAL OF THE

12 PRESUMPTION OF NON APPLICABILITY OF LACHES IS OF ONLY MARGINAL

13 RELEVANCE.  THE COURT IN ITS OWN RESEARCH CANNOT LOCATE ANY

14 AUTHORITY THAT SUGGESTS THAT A RELATED-BACK CLAIM WOULD BE

15 ESPECIALLY VULNERABLE TO THE DEFENSE OF LACHES.  TO THE         06:31

16 CONTRARY, IN FACT, TO THE EXTENT THAT SOME AUTHORITY IS FOUND,

17 IT SUGGESTS THAT IT DOES NOT.

18          ONE CASE THAT COMES TO MIND IS THE DUPONT VERSUS

19 PHYLLIS CASE, A DISTRICT COURT OF DELAWARE CASE IN 1985, NOTING

20 THAT 'THE APPLICABILITY OF LACHES DID NOT NEED TO BE ADDRESSED  06:31

21 IN LIGHT OF THE FACT THAT THE PROPOSED COMPLAINT RELATED BACK

22 TO THE ORIGINAL PLEADING PURSUANT TO RULE 15-C.'  THE LANGUAGE

23 OF THE RULE ALLOWING RELATIONS BACK IS IN ACCORD, BECAUSE IT

24 SUGGESTS THAT AN AMENDMENT THAT RELATES BACK SHOULD BE TREATED

25 AS IF IT WAS FILED ON THE DATE OF THE ORIGINAL PLEADING.        06:32

1    THEREFORE, IN THE ABSENCE OF PERSUASIVE AUTHORITY,

2   THE COURT IS NOT WILLING TO APPLY THE REVERSE PRESUMPTION

3   SUGGESTED BY MGA.  INSTEAD, THE COURT WILL CONTINUE TO BE

4   GUIDED BY THE TOUCHSTONES OF THE DOCTRINE OF LACHES,

5   UNREASONABLE DELAY AND RESULTING PREJUDICE.                    06:32

6        AS FOR THE SECOND ISSUE, WHETHER THE COURT SHOULD

7   GRANT MATTEL'S SUMMARY JUDGMENT MOTION AS TO MGA'S LACHES

8   DEFENSE, THE COURT PREVIOUSLY DEFERRED, AS IT DOES NOW, THE

9   MOTION FOR SUMMARY JUDGMENT ON THE REMAINING AFFIRMATIVE

10   DEFENSES, INCLUDING LACHES.  THE COURT WILL CONSIDER THOSE AT   06:32

11   THE CLOSE OF PHASE 1-B OF THE TRIAL, AS SET FORTH BELOW.

12        AS FOR THE THIRD ISSUE, WHETHER THE DEFENSE IS LEGAL

13   AND IT MUST BE PRESENTED TO A JURY RATHER THAN TO THE COURT OR

14   EQUITABLE AND THEREFORE SHOULD BE DECIDED BY THE COURT, MGA

15   CONTENDED ON FRIDAY'S HEARING THAT IT HAD PREVIOUSLY BRIEFED    06:33

16   THIS ISSUE, CITING THE HOFF CASE, HOFF VERSUS LEO FEIST, OUT OF

17   NEW YORK, A 1916 CASE.

18        MR. RUSSELL PRESSED THIS CASE, BUT IN REVIEWING THE

19   CASE OVER THE WEEKEND, IT APPEARS TO THE COURT THAT THIS IS NOT

20   A CASE THAT ADDRESSES THE DEFENSE OF LACHES.  IT DOES NOT       06:33

21   ADDRESS WHAT, IF ANY, AFFIRMATIVE DEFENSES TO A COPYRIGHT CLAIM

22   SHOULD BE PRESENTED TO A JURY.  IN FACT, THE CASE DOES NOT

23   INVOLVE A TRIAL BY JURY.  THE CASE WAS CITED IN

24   MGA'S OPPOSITION TO MATTEL'S MOTION FOR PARTIAL SUMMARY

25   JUDGMENT BEFORE AN ENTIRELY DIFFERENT PROPOSITION RELATING TO   06:33

1  THE MERITS OF THE LACHES DEFENSE.

2        THE DEFENSE OF LACHES TO A COPYRIGHT CLAIM IS CLEARLY

3  AN EQUITABLE DEFENSE.  THERE'S A NUMBER OF NINTH CIRCUIT CASES

4  IN 2000/2001, WHICH CLEARLY BEGIN THEIR ANALYSIS WITH A POINT

5  THAT LACHES AS APPLIED TO A COPYRIGHT CLAIM IS AN EQUITABLE       06:34

6  DEFENSE.  IT'S REFERRED THAT WAY IN THE CLING CASE; IN THE

7  JEWEL VERSUS SHANAHAN CASE; AND, TO A LESSER EXTENT, THE DAN

8  JACK VERSUS SONY CASE.

9        THE COURT PREVIOUSLY SUGGESTED THAT IT WAS INCLINED

10  TO SEEK AN ADVISORY JURY VERDICT ON THE AFFIRMATIVE DEFENSES.    06:34

11  HOWEVER, THE COURT IS NOW DISINCLINED TO DO SO BASED ON THE

12  RISK OF JURY CONFUSION THAT I ALLUDED TO EARLIER.

13        THE JURY NEEDS TO STAY FOCUSED ON THE RANGE OF ISSUES

14  THAT THEY ARE BEING ASKED TO DECIDE IN PHASE 1-B.

15        THEREFORE, THE COURT WILL LET THE PARTIES PRESENT TO       06:34

16  THE JURY EVIDENCE RELEVANT ONLY TO THE REMAINING CLAIMS AND THE

17  NON EQUITABLE DEFENSES THERETO.

18        AT THE CLOSE OF THE EVIDENCE, WHEN THE JURY RETIRES

19  TO DELIBERATE, THE COURT WILL HEAR ARGUMENT REGARDING WHETHER

20  AND TO WHAT EXTENT ADDITIONAL EVIDENCE RELEVANT TO THE          06:35

21  REMAINING AFFIRMATIVE DEFENSES MAY BE PRESENTED TO THE COURT,

22  AND THE COURT WILL THEREAFTER ISSUE ITS RULING ON THE

23  AFFIRMATIVE DEFENSES.

24        BASICALLY, WHAT THIS HAS THE EFFECT OF DOING IS --

25  IT'S CERTAINLY ALLOWING IN EVIDENCE RELATED TO THE CLAIM ON THE  06:35

```
 1   STATUTE OF LIMITATIONS THAT THE COURT PRESERVED FOR THE JURY,
 2   AND THAT IS THE FRAUDULENT CONCEALMENT ISSUE, WHICH GOES NOT
 3   ONLY TO THE STATUTE OF LIMITATIONS DEFENSE, OF COURSE, BUT ALSO
 4   TO A NUMBER OF THE OTHER EQUITABLE DEFENSES, SUCH AS LACHES
 5   ITSELF AND WAIVER AND ESTOPPEL.                                  06:35
 6            BUT WHAT I'M NOT GOING TO DO IS ALLOW EVIDENCE THAT
 7   GOES BEYOND THAT CLAIM IN BEFORE THIS JURY.  I AM CONCERNED
 8   ABOUT THE CONFUSING EFFECT THAT MIGHT HAVE.  BUT AT THE SAME
 9   TIME, TO ENSURE THAT MGA HAS AN OPPORTUNITY TO PRESENT ANY
10   EVIDENCE, NOTWITHSTANDING THE COURT'S PRIOR MOTIONS IN LIMINE    06:36
11   AND THE LIKE, TO GET THIS BEFORE THE COURT, I'LL GIVE LEAVE AT
12   THE END OF THE TRIAL TO INTRODUCE SUCH EVIDENCE TO THE COURT
13   ITSELF.
14            SO THAT'S WHERE I AM ON LACHES AND THE AFFIRMATIVE
15   DEFENSES.                                                        06:36
16            ANY QUESTIONS CONCERNING THE RULING?
17            MR. NOLAN:  FOR POINT OF CLARIFICATION, DO I
18   UNDERSTAND THAT IN 1-B, WE WILL BE ABLE TO INTRODUCE EVIDENCE
19   BEFORE THE JURY TO COUNTER THE EVIDENCE THAT WAS ALLOWED IN IN
20   1-A WITH RESPECT TO CONCEALMENT, AS WELL AS EVIDENCE WITH        06:36
21   RESPECT TO THE STATUTE OF LIMITATIONS?
22            THE COURT:  YES.  THE ISSUE OF FRAUDULENT -- THERE'S
23   TWO QUESTIONS THERE.  THE FIRST QUESTION, CERTAINLY, WITH
24   RESPECT TO FRAUDULENT CONCEALMENT, THAT COMES IN.  AND TO THE
25   EXTENT THAT WHAT MATTEL KNEW AND WHEN IS RELEVANT TO THE ISSUE   06:37
```

```
 1   OF FRAUDULENT CONCEALMENT, WHICH IS THEN, OF COURSE, ALL TIED
 2   UP IN THE ISSUE OF STATUTE OF LIMITATIONS, THAT WILL BE
 3   ADMISSIBLE.
 4             MR. NOLAN:  I UNDERSTAND.
 5             THE COURT:  DOES THAT MAKE SENSE?                    06:37
 6             MR. NOLAN:  YES, YOUR HONOR.
 7             THE COURT:  VERY WELL.
 8             ANYTHING ELSE, FROM MGA'S PERSPECTIVE?
 9             MR. RUSSELL:  YES, YOUR HONOR.  I JUST WANTED A
10   COUPLE OF POINTS OF CLARIFICATION, BECAUSE I'M AFRAID THAT,    06:37
11   PERHAPS, I WASN'T AS CLEAR AS I SHOULD HAVE BEEN TO THE COURT.
12   WHEN I WAS DISCUSSING THE HOSS CASE, I WAS DOING SO FOR THE
13   PURPOSE OF POINTING OUT THAT IS THE CASE FROM WHICH MOST COURTS
14   AGREE THE DOCTRINE OF LACHES COULD APPLY TO A COPYRIGHT CASE.
15             YOUR HONOR, WE CITED YOU TO A NUMBER OF CASES IN OUR 06:38
16   OPPOSITION TO MATTEL'S MOTION IN LIMINE NUMBER FOUR, INCLUDING
17   THE WESTINGHOUSE CASE, WHICH IS AT 106 F.3D 894, AS WELL AS THE
18   U.S. FIDELITY & GUARANTY CO. V. LEE, WHICH IS AN EASTERN
19   DISTRICT OF CALIFORNIA CASE, THAT HOLD THAT LACHES IS
20   APPROPRIATELY GIVEN TO A JURY IN INSTANCES, PARTICULARLY SUCH   06:38
21   AS HERE, WHERE LEGAL DEFENSES AND EQUITABLE DEFENSES HAVE
22   SIMILAR AND OVERLAPPING ISSUES.
23             SO I'D ASK THE COURT, IF IT WOULD NOT MIND, TO AT
24   LEAST TAKE ANOTHER LOOK THERE, BECAUSE I DIDN'T HAVE THOSE
25   CITES AVAILABLE TO ME WHEN WE HAD THE ARGUMENT LAST TIME, AND I 06:3
```

1   THINK IT'S IMPORTANT, GIVEN THE OVERLAPPING NATURE --

2           **THE COURT:** OPPOSITION TO MATTEL'S MOTION *IN LIMINE*

3   NUMBER FOUR?

4           **MR. RUSSELL:** YES, YOUR HONOR.

5           **THE COURT:** THAT WAS NOT BEFORE THE COURT ON FRIDAY.    06:38

6   THAT WAS NOT WITH ME THIS WEEKEND, AND I CAN ONLY DO SO MUCH

7   THROUGH COMPUTER RESEARCH UP HERE IN LAKE ALMANOR; SO IT REALLY

8   WAS INCUMBENT UPON YOU, COUNSEL, TO PROVIDE THE COURT WITH WHAT

9   IT NEEDED TO RESOLVE THESE ISSUES.

10          **MR. RUSSELL:** I APOLOGIZE, YOUR HONOR. I HAD           06:39

11  MISTAKENLY THOUGHT THAT THIS SET OF ARGUMENTS WAS IN THE

12  SUMMARY JUDGMENT PAPERS, AND I WAS IN ERROR. IT WAS

13  ACTUALLY --

14          **THE COURT:** I SPENT A LONG TIME LOOKING THROUGH THAT

15  ENTIRE BINDER THAT MATTEL PROVIDED ME WITH THE SUMMARY JUDGMENT   06:39

16  PAPERS LOOKING FOR THIS VERY ARGUMENT, BECAUSE THAT'S WHAT YOU

17  SAID ON FRIDAY, AND I COULDN'T FIND IT.

18          **MR. RUSSELL:** YOUR HONOR, I WAS WRONG AND I APOLOGIZE

19  FOR BEING WRONG, AND I AM CERTAINLY VERY REMORSEFUL THAT YOU

20  HAD TO SPEND THAT TIME, AND THAT'S WHY I WANTED TO CLARIFY THAT   06:39

21  I WAS IN ERROR. IT WAS NOT AN ATTEMPT TO MAKE YOU SPEND TIME

22  THAT YOU SHOULDN'T HAVE, SO I APOLOGIZE FOR THAT.

23          **THE COURT:** THERE'S A NUMBER OF THESE 2000 CASES THAT

24  I DID FIND, THOUGH.

25          WHAT YEAR WAS WESTINGHOUSE?                               06:39

| 1 | **MR. RUSSELL:** 1997. |
| 2 | **THE COURT:** WE'VE GOT SEVERAL CASES IN 2000, |
| 3 | BEGINNING WITH CLAY V. HALLMARK CARDS. THERE'S EXTENSIVE |
| 4 | ANALYSIS OF LACHES IN A COPYRIGHT CLAIM, AND IT BEGAN ITS |
| 5 | ANALYSIS BY SAYING THAT IT'S AN EQUITABLE DEFENSE. |
| 6 | **MR. RUSSELL:** IT IS TRUE THAT IT IS AN EQUITABLE |
| 7 | DEFENSE, AND ALL I'M NOTING IS THAT THERE ARE DECISIONS THAT GO |
| 8 | THE OTHER WAY. WHEREAS HERE, THE FACTUAL PREDICATE FOR LACHES |
| 9 | IS INTERTWINED WITH OTHER DEFENSES THAT ARE GOING TO THE JURY. |
| 10 | SO YOUR HONOR IS, OF COURSE, CORRECT, AND I'M NOT CONTENDING |
| 11 | THAT IT WOULD NEVER BE AN EQUITABLE DEFENSE OR NEVER BE TRIED |
| 12 | OUTSIDE THE PRESENCE OF THE JURY, BUT RATHER, THERE ARE |
| 13 | CASES -- AND I WOULD SUBMIT, THIS IS ONE OF THEM -- WHERE |
| 14 | LACHES SHOULD BE TRIED TO THE JURY. |
| 15 | **THE COURT:** WHEN I LOOK UP WESTINGHOUSE, WHAT AM I |
| 16 | GOING TO FIND? AM I GOING TO FIND THE COURT SAYING THAT THE |
| 17 | COURT HAS DISCRETION TO SEND IT TO THE JURY, OR AM I GOING TO |
| 18 | FIND THE COURT SAYING THAT UNDER THESE CIRCUMSTANCES, I MUST |
| 19 | SEND IT TO THE JURY? |
| 20 | **MR. RUSSELL:** YOU'RE GOING TO HAVE DISCRETION, |
| 21 | YOUR HONOR. THERE'S NO QUESTION ABOUT THAT. |
| 22 | **THE COURT:** VERY GOOD. |
| 23 | AT THIS POINT, I'M RULING AS I JUST INDICATED. |
| 24 | **MR. RUSSELL:** YES, YOUR HONOR. THANK YOU. |
| 25 | **THE COURT:** ANYTHING FURTHER FROM MGA? |

06:40
06:40
06:40
06:40
06:41
06:41

1          **MR. RUSSELL:**  NO, YOUR HONOR.

2          **THE COURT:**  VERY WELL.

3          **MS. AGUIAR:**  YOUR HONOR, NOTHING MORE ON THE POINT

4    THAT YOU WERE JUST DISCUSSING, BUT IF WE'RE AT THE END OF THE

5    CALL, I DID HAVE ONE OTHER MINOR POINT.                          06:41

6          WE RAISED THIS ISSUE ON FRIDAY.  THERE IS A DISCOVERY

7    DISPUTE THAT HAS ARISEN WITH REGARD TO EXHIBITS THEY WANT TO

8    INTRODUCE THROUGH ONE OF THEIR WITNESSES, FRANK KEISER.  SO I

9    GUESS AT THIS POINT, SINCE WE HAVE NOT GOTTEN THE MATERIALS

10   FROM MATTEL, I WOULD BE MAKING AN ORAL MOTION FOR LEAVE TO FILE  06:41

11   A MOTION TO PRECLUDE THEM FROM OFFERING THOSE EXHIBITS INTO

12   EVIDENCE, BECAUSE WE HAVE NOT BEEN PROVIDED WITH THOSE

13   EXHIBITS.

14         **THE COURT:**  HOLD THAT THOUGHT FOR JUST ONE MOMENT.

15         ANYTHING ELSE FROM MGA ON THE LACHES OR THE               06:41

16   AFFIRMATIVE DEFENSES?

17         **MR. NOLAN:**  NO, YOUR HONOR.  WE'LL SUBMIT.

18         **THE COURT:**  WITH RESPECT TO MATTEL?

19         **MR. ZELLER:**  YES, YOUR HONOR.

20         ONE ISSUE, ONE POINT OF CLARIFICATION, THEN, IS THAT,     06:42

21   YOU KNOW, ON FRIDAY WE HAD RAISED THE POINT THAT -- SO THERE IS

22   NO CONFLICT AND THERE IS NO ISSUE CONCERNING THE UNDISPUTED

23   FACTS THAT THE COURT HAS ALREADY FOUND ON SUMMARY JUDGMENT--

24   IS THAT THEY SHOULD NOT BE ALLOWED TO PUT ON EVIDENCE OR ANY

25   ARGUMENT THAT MATTEL WAS ON NOTICE ANY TIME PRIOR TO JULY OF    06:4:

1   2003.

2           **THE COURT:**  MR. ZELLER, I'VE THOUGHT ABOUT THIS A LOT

3   THIS WEEKEND.  THAT WOULD MAKE IT CLEANER.  NO QUESTION.  THAT

4   WOULD MAKE MY IN-COURT RULINGS EASIER TO MAKE.  BUT I DON'T

5   KNOW IF I CAN, AND THIS IS MY THINKING:                             06:42

6           I CAN SEE THE RELEVANCE OF WHAT MATTEL KNEW AND WHEN

7   AS A WAY OF REBUTTING THE INTENTIONAL OR DELIBERATE CONCEALMENT

8   ARGUMENT.

9           I UNDERSTAND THE CONCERN YOU EXPRESSED ON FRIDAY, BUT

10  I DON'T KNOW -- I CAN SEE HOW CERTAIN ARGUMENTS OR EVIDENCE        06:43

11  ABOUT WHAT MATTEL KNEW AT SOME OF THESE EARLIER STAGES

12  UNDERMINES MATTEL'S POSITION ABOUT DELIBERATE CONCEALMENT,

13  BASICALLY AS IMPEACHMENT.  ALONG THE SAME LINES THAT YOU WERE

14  SUGGESTING IN AN ENTIRELY DIFFERENT CONTEXT THAT SOME PHASE 2

15  EVIDENCE CONCERNS IMPEACHMENT, AND THEN 1-B ON OTHER ISSUES, I     06:43

16  THINK THIS MIGHT SERVE AS IMPEACHMENT IN THIS ISSUE.

17          IF YOU CARE TO ADDRESS THAT POINT, I WELCOME YOU TO

18  DO SO.

19          DO YOU UNDERSTAND WHAT I'M SAYING, THOUGH?  DO YOU

20  RECOGNIZE THE ARGUMENT THAT I AM GRAPPLING WITH?                   06:44

21          **MR. ZELLER:**  I DO, YOUR HONOR.  AND I THINK THAT,

22  NUMBER ONE, THE SITUATION IS DIFFERENT IN THE SENSE THAT THE

23  COURT HAS ALREADY MADE A SUMMARY JUDGMENT RULING; IT'S GOVERNED

24  BY CERTAIN STANDARDS.  AND CERTAINLY, THE FUNCTION OF A TRIAL

25  IS NOT TO COLLATERALLY ATTACK, BUT TO GET BACK WHAT IT IS THAT,    06:44

1   IF THEY HAD EVIDENCE, THEY WERE OBLIGATED TO COME FORWARD AND

2   ESTABLISH IN RESPONSE TO SUMMARY JUDGMENT.

3           **THE COURT:**  WHAT I FOUND, MR. ZELLER, THOUGH, IS THAT

4   THE EARLIER THE DATE FOR WHICH MATTEL HAD NOTICE FOR THE

5   PARTICULAR CLAIM THAT IS ALLEGED IN THIS CASE WAS A CERTAIN          06:44

6   DATE IN 2003.  I MEAN, THERE'S OTHER ARGUMENT ABOUT MATTEL

7   KNOWING OTHER THINGS AT EARLIER DATES THAT UNDERMINES MATTEL'S

8   POSITION ON DELIBERATE CONCEALMENT THAT DOESN'T NECESSARILY,

9   AND CAN'T AS A MATTER OF LAW AT THIS POINT, UNDERMINE THE

10  COURT'S FINDING WITH RESPECT TO THE STATUTE OF LIMITATIONS          06:45

11  ARGUMENT, IF THAT MAKES SENSE.

12          **MR. ZELLER:**  SURE.  I THINK I'M FOLLOWING.

13          BUT I GUESS THAT VERY POINT WOULD LEAD ME TO AN

14  OPPOSITE CONCLUSION IN THE SENSE THAT -- JUST TO TAKE AN

15  EXAMPLE, THE TOON TEENS INVESTIGATIONS FROM 2002, THE COURT HAS     06:45

16  ALREADY RULED AS A MATTER OF LAW THAT THOSE DID NOT PROVIDE

17  NOTICE.

18          HAVING THAT SORT OF THING DISCUSSED IN FRONT OF THE

19  JURY, YOU KNOW, NOT ONLY IS IT CLASSIC 403 AT A BARE MINIMUM,

20  BUT IT'S JUST NOT RELEVANT AT ALL.  AND THIS IS THE CONCERN --     06:45

21  THIS IS ACTUALLY THE ISSUE ABOUT NOTICE, AND IT GOES LESS TO A

22  NOTICE ISSUE, SUCH AS, WHEN DID MATTEL KNOW THAT CARTER BRYANT

23  WAS WORKING ON BRATZ WHEN EMPLOYED BY MATTEL OR HAVING BUSINESS

24  DEALINGS WITH MGA WHILE EMPLOYED BY MATTEL?  BECAUSE THAT'S,

25  OBVIOUSLY, THE ACTUAL RELEVANT ISSUE.                               06:46

1              WHAT I'M CONCERNED ABOUT IS, NOTWITHSTANDING THE

2    COURT'S SUMMARY JUDGMENT ORDER AND THE RULING THAT THE COURT

3    HAS ALREADY MADE, THAT WE'RE GOING TO GET INTO A WHOLE VARIETY

4    OF ISSUES ABOUT THAT THERE IS THE TOON TEENS INVESTIGATION AND

5    A NUMBER OF OTHER THINGS THAT DO NOT PROVIDE NOTICE, AND THE                06:46

6    COURT HAS ALREADY SAID DO NOT PROVIDE NOTICE.  BECAUSE IN THIS

7    CONTEXT, THE FRAUDULENT CONCEALMENT NOTICE THAT WE'RE TALKING

8    ABOUT IS THE SAME AS IT IS FOR STATUTE OF LIMITATIONS.  THERE'S

9    NO DIFFERENCE ON THAT STANDARD.

10             **THE COURT:**  WELL, YOU'RE GOING TO HAVE YOUR RELEVANCY       06:46

11   OBJECTIONS TO MAKE, AND IT'S GOING TO LARGELY DEPEND ON HOW THE

12   QUESTION IS ASKED.  I AM NOT IN A POSITION RIGHT NOW, I DON'T

13   THINK, TO CATEGORICALLY SAY THAT MGA IS PRECLUDED FROM GETTING

14   INTO THOSE DATES, DEPENDING ON HOW THE FRAUDULENT CONCEALMENT

15   COMES OUT.                                                                 06:47

16             LET ME THINK ABOUT THIS SOME MORE.

17             LET ME HEAR FROM MGA ON THIS.

18             **MR. NOLAN:**  FRANKLY, IT'S BREATHTAKING TO ME TO

19   BELIEVE THAT WE COULD HAVE SAT THROUGH A SEVEN-WEEK TRIAL WHERE

20   MATTEL, DAY AFTER DAY, PUT UP EVIDENCE OF CONCEALMENT, ALL THE             06:47

21   WAY FROM START TO FINISH.  AND AT ALL TIMES, WE WERE TOLD, YOU

22   CAN RAISE IT IN 1-B; YOUR AFFIRMATIVE DEFENSES WILL BE IN 1-B

23   TO DEAL WITH THIS.  AND WHETHER OR NOT YOU CALL IT IMPEACHMENT

24   OR WHATEVER, YOUR HONOR, I BELIEVE THAT TO ALLOW MATTEL TO HAVE

25   PRESENTED THE EVIDENCE THAT THEY PRESENTED IN PHASE 1-A WITH              06:47

1  RESPECT TO CONCEALMENT, INCLUDING TOON TEENS --

2       LISTEN, I UNDERSTAND WHY MR. ZELLER DOESN'T WANT TO

3  HAVE HIS TOON TEENS INVESTIGATION IN, BUT I BELIEVE THAT THIS

4  JURY IS ENTITLED TO UNDERSTAND THE EVIDENCE TO COUNTER WHAT

5  MATTEL TRIED FOR SEVEN WEEKS WITH RESPECT TO CONCEALMENT.          06:47

6       I THINK YOUR HONOR RECOGNIZED THIS ON FRIDAY WHEN YOU

7  WERE TALKING ABOUT HOW INTERRELATED ALL OF THIS INFORMATION IS.

8  WE HAVE A SUMMARY JUDGMENT RULING THAT TALKS AND GOES TO THE

9  STATE CLAIMS WITH RESPECT TO WHETHER OR NOT CERTAIN THINGS WERE

10  BARRED BY A CERTAIN DATE.  AND I BELIEVE THAT WE SHOULD BE        06:48

11  ALLOWED TO COUNTER WITH OUR EVIDENCE THAT WE SAT BACK ON --

12       **THE COURT:**  LET ME STOP YOU THERE.

13       THIS IS EXACTLY WHERE MR. RUSSELL WENT ON FRIDAY, AND

14  THIS IS EXACTLY NOW WHY I'M WITHDRAWING THE AFFIRMATIVE

15  DEFENSES, AT LEAST THE EQUITABLE ONES, FROM THE JURY'S           06:48

16  CONSIDERATION.

17       I HAVE A REAL CONCERN THAT WHAT IS GOING ON HERE IS

18  AN ATTEMPT TO CONFUSE THE JURY.  THE ONLY ISSUE THAT THIS JURY

19  IS GOING TO BE CONSIDERING IS INTENTIONAL, DELIBERATE

20  CONCEALMENT AS IT RELATES TO THE STATUTE OF LIMITATIONS          06:48

21  DEFENSE.

22       IT WAS ADMITTED IN PHASE 1-A RELATED TO INTENT ON THE

23  STATE DEFENSES, AND YOU WERE CERTAINLY ENTITLED TO RESPOND TO

24  THAT INTENTIONAL CONCEALMENT IN 1-A WITH RESPECT TO THE PURPOSE

25  FOR WHICH IT WAS GOING TO, NAMELY MR. LARIAN'S INTENT AND MGA'S  06:49

1    INTENT.

2          NOW, IN 1-B, THE ISSUE IS ALIVE WITH RESPECT TO THE

3    ISSUE OF THE STATUTE OF LIMITATIONS.  THAT IS IT.  AND IF WHAT

4    IS ATTEMPTING TO BE GOING ON HERE IS TO DIRTY UP THE RECORD,

5    I'M NOT GOING TO PERMIT THAT.                                    06:49

6          **MR. NOLAN:**  I'M NOT TRYING TO DIRTY UP THE RECORD,

7    YOUR HONOR.  WHAT I'M TRYING TO DO IS RESPOND TO WHAT I

8    UNDERSTOOD TO BE THE RULING IN THE COURT THAT SAID THAT THE

9    STATE CLAIMS WERE BARRED UNLESS MATTEL --

10         **THE COURT:**  RIGHT.  YOU'RE PAINTING WITH TOO BROAD A    06:49

11   BRUSH, THOUGH.

12         YOU'RE ABSOLUTELY CORRECT, TWO OF THE STATE CLAIMS

13   ARE BARRED UNDER THE STATUTE OF LIMITATIONS IF MATTEL DOES NOT

14   SUCCEED IN CONVINCING THIS JURY OF THEIR DELIBERATE

15   CONCEALMENT.  AND THAT IS FAIR GAME.  AND THAT IS WHY I'M NOT    06:50

16   GOING TO PLACE ANY LIMITS GOING INTO THE TRIAL ON IMPEACHMENT

17   EVIDENCE OR EVIDENCE DIRECTED AT DELIBERATE CONCEALMENT.

18         BUT IF THIS IS AN ATTEMPT TO TRY TO UNDUE -- FOR ALL

19   OTHER PURPOSES, INCLUDING COPYRIGHT INFRINGEMENT, THE COURT HAS

20   RULED, AS A MATTER OF SUMMARY JUDGMENT, ON THE STATUTE OF       06:50

21   LIMITATIONS.  FOR BETTER OR FOR WORSE, FOR ONE SIDE OR FOR THE

22   OTHER, ANOTHER COURT IS GOING TO HAVE TO OVERTURN THAT

23   DECISION.

24         **MR. NOLAN:**  I'M NOT TRYING TO DO THAT, YOUR HONOR.

25         LET ME BE CLEAR, BECAUSE I KNOW THE HOUR IS LATE.         06:50

```
 1    ALL I'M INTENDING TO TRY TO GET CLARIFICATION ON IS THAT IN
 2    ORDER TO COUNTER THE EVIDENCE THAT MATTEL PUT IN ABOUT
 3    DELIBERATE CONCEALMENT ON THE PART OF MGA -- WHICH WE, OF
 4    COURSE, COUNTERED AND SAID THAT WAS NOT PART OF ANY OF
 5    MR. LARIAN'S OR ANY OF THE EMPLOYEES AT MATTEL'S INTENT -- WE     06:51
 6    SHOULD BE ABLE TO INTRODUCE THAT.

 7         IN FACT, THE BEST EVIDENCE THAT THEY WERE NOT
 8    DELIBERATELY CONFUSED, OR, YOU KNOW, THIS INFORMATION WAS
 9    WITHHELD, WAS EVIDENCE THAT SHOWS THAT, IN FACT, PEOPLE AT
10    MATTEL WELL KNEW THAT CARTER WAS INVOLVED IN THIS PROJECT.        06:51
11         AND THAT'S ALL I'M TALKING ABOUT, YOUR HONOR, TO TRY
12    TO COUNTER THE CONCEALMENT EVIDENCE.

13         THE COURT:  I UNDERSTAND.  AND IN THAT CONTEXT, FOR
14    THAT PURPOSE, I JUST ARTICULATED A RULING THAT WAS CONSISTENT
15    WITH THAT, MR. NOLAN.  DON'T TRY TO RUN TOO MUCH THROUGH THIS.    06:51
16    OTHERWISE, YOU'RE GOING TO RUN THE RISK OF -- JUST BE CAREFUL.

17         I'LL TRY TO SPELL THIS OUT MUCH MORE CLEARLY IN MY
18    WRITTEN FORM OF THIS RULING, BUT THERE'S GOING TO BE A VERY,
19    VERY CLEAR LINE HERE, AS BEST AS I CAN KEEP IT CLEAR, IN TERMS
20    OF WHAT IS AND FOR WHAT PURPOSE THIS EVIDENCE IS BEING           06:52
21    ADMITTED.

22         MR. NOLAN:  YOUR HONOR, I APPRECIATE IT, BECAUSE WHAT
23    WE BELIEVE IS THAT THE EVIDENCE WILL SHOW THAT PEOPLE WITHIN
24    MATTEL -- THAT THE INFORMATION WASN'T BEING CONCEALED; THAT
25    THEY KNEW IT AND THEY WERE AWARE OF IT.  AND I THINK THAT        06:52
```

1    THAT'S ALL I WANT TO DO, IS TO TRY TO COUNTER THE ISSUE OF THE

2    FRAMEWORK OF THE STATUTE OF LIMITATIONS AS YOU HAVE FRAMED IT

3    IN YOUR ORDER AND DEAL WITH THIS CONCEALMENT EVIDENCE THAT THEY

4    PUT ON IN PHASE 1-A.

5              **THE COURT:**  VERY WELL.                              06:52

6              MR. ZELLER, DO YOU WISH TO RESPOND TO THAT?

7              **MR. ZELLER:**  YES, YOUR HONOR.

8              THE WAY MR. NOLAN ENDED IS EXACTLY THE CONCERN HERE.

9              WHAT IS HE TALKING ABOUT WHEN HE SAYS ABOUT NOTICE?

10   HE WANTS TO MAKE THE SAME ARGUMENTS THE COURT ALREADY HEARD ON   06:52

11   SUMMARY JUDGMENT AND REJECTED, WHICH IS, 'OH, WELL, PEOPLE AT

12   MATTEL KNEW CARTER BRYANT WAS INVOLVED.'

13             THESE ARE ALL FACTS IN AWARENESS OF MATTERS THAT ARE

14   NOT RELEVANT TO LACHES OR STATUTE OF LIMITATIONS.  THIS IS JUST

15   REARGUING PRECISELY WHAT THEY LOST ON SUMMARY JUDGMENT.         06:53

16             IF MR. NOLAN WANTS TO MAKE AN ARGUMENT OR INTRODUCE

17   EVIDENCE REGARDING WHEN DID MATTEL KNOW THAT BRATZ WAS

18   CONCEIVED AT MATTEL OR KNOW THAT CARTER BRYANT WAS WORKING HAND

19   IN GLOVE WITH MGA WHILE EMPLOYED AT MATTEL, THAT'S A RELEVANT

20   ISSUE.  THE COURT HAS ALREADY RULED THAT THAT'S A RELEVANT      06:53

21   ISSUE.  BUT THESE OTHER THINGS ARE A SIDE SHOW, AND THEY AREN'T

22   RELEVANT.  THEY ARE THE SAME ARGUMENTS THEY MADE ON SUMMARY

23   JUDGMENT AND LOST ON.

24             OUR KNOWLEDGE, FOR EXAMPLE, ABOUT TOON TEENS, OR THE

25   INVESTIGATIONS ON THOSE MATTERS, IS NOT EVIDENCE THAT MGA       06:53

1    DIDN'T SUCCESSFULLY CONCEAL THAT CARTER BRYANT MADE BRATZ --

2         **THE COURT:**  MR. ZELLER, I DON'T KNOW IF I CAN MAKE IT

3    ANY MORE CLEARER THAN I HAVE IN THE RULINGS THAT I'VE ISSUED.

4    I THINK I DO UNDERSTAND THE DISTINCTION HERE.  IT'S A

5    DISTINCTION THAT I WILL ENFORCE DURING THE TRIAL.  I'LL TRY TO      06:53

6    SPELL IT OUT EVEN MORE CLEARLY IN MY MOTION.

7         BUT THERE'S A WORLD OF DIFFERENCE BETWEEN MATTEL

8    KNOWING THAT CARTER BRYANT WORKED ON BRATZ AND THAT CARTER

9    BRYANT WAS ASSOCIATED WITH BRATZ, AND WHETHER OR NOT CARTER

10   BRYANT WORKED ON BRATZ WHILE HE WAS AT MATTEL.                     06:54

11        THERE'S A WORLD OF DIFFERENCE BETWEEN THOSE TWO

12   CONCEPTS, AND I UNDERSTAND THAT.

13        **MR. ZELLER:**  THANK YOU, YOUR HONOR.

14        **THE COURT:**  AND, MR. NOLAN, I THINK YOU UNDERSTAND

15   THAT AS WELL.                                                      06:54

16        **MR. NOLAN:**  YOU KNOW, I DO, YOUR HONOR.  I CLEARLY

17   DO.  I UNDERSTAND IT.  BUT, YOUR HONOR, GOING TO THAT VERY,

18   VERY POINT OF WHETHER OR NOT THEY KNEW AND WHEN THEY KNEW IT,

19   YOU KNOW, EVIDENCE, FOR INSTANCE, THAT DURING THE INVESTIGATION

20   PEOPLE WITHIN THE DESIGN CENTER SAID THAT MR. BRYANT              06:54

21   PLAGIARIZED INFORMATION FROM MATTEL, I THINK, DOES GO TO THE

22   HEART OF WHETHER OR NOT THAT WAS CONCEALED OR NOT CONCEALED,

23   AND I THINK THAT'S THE EVIDENCE THAT MR. ZELLER IS TRYING TO

24   KEEP OUT.  AND I'M NOT TRYING TO DO IT FROM A NOTICE POINT OF

25   VIEW AT ALL.  I'M JUST SAYING --                                  06:55

1        **THE COURT:**  LET'S USE THAT EXAMPLE, THE ONE THAT YOU

2   JUST USED:  SOMEBODY AT MATTEL KNOWS THAT CARTER BRYANT OR SAYS

3   THAT CARTER BRYANT PLAGIARIZED IT.

4        WHAT'S CRITICAL IS WHEN HE PLAGIARIZED IT.

5        **MR. NOLAN:**  YOUR HONOR, THAT IS CORRECT.  AND THE          06:55

6   FRAMEWORK, OF COURSE, IS THAT --

7        **THE COURT:**  I'M NOT GOING TO ISSUE AN ADVISORY RULING

8   NOW.  I'M GOING TO SET DOWN THE BASIC FRAMEWORK, AND I'M GOING

9   TO EVALUATE THIS, AND WE'LL GO THROUGH IT.  BUT JUST TO KNOW

10  THAT CARTER BRYANT -- AT ANY POINT IN TIME, LOOKING AT THE DOLL     06:55

11  AND LOOKING AT WHAT CARTER BRYANT DID -- I MEAN, ONE MAY MAKE

12  THE ACCUSATION, BUT THE CRITICAL CONNECTION IS NOT THAT

13  CARTER BRYANT AT SOME POINT IN TIME BECAME INVOLVED IN THE

14  BRATZ WORK; IT'S WHETHER HE WAS DOING THAT WHILE HE WAS AT

15  MATTEL.                                                            06:56

16       **MR. NOLAN:**  RIGHT.  AND ALL OF THE EVIDENCE --

17       I UNDERSTAND, YOUR HONOR.

18       **THE COURT:**  AND IF MATTEL KNEW THAT, IF MATTEL KNEW

19  THAT CARTER BRYANT DID THIS WHILE HE WAS AT MATTEL, AND IF

20  MATTEL KNEW THAT WHILE HE WAS WORKING AT MATTEL, IF HE WAS         06:56

21  INTERFERING WITH THE CONTRACTUAL RELATIONS OR COMMITTING

22  CONVERSION OR ANYTHING LIKE THAT, OR IF THEY HAD REASON TO KNOW

23  THAT, THEN THAT GOES TO THE ISSUE OF LACHES AND STATUTE OF

24  LIMITATIONS.

25       I UNDERSTAND THERE'S A FUNDAMENTAL DISAGREEMENT WITH          06:56

```
 1   MGA IN TERMS OF THE COURT'S RULING.  THAT HAS BEEN MADE

 2   ABUNDANTLY CLEAR.  BUT I FEEL VERY GOOD ABOUT THE RULING, AND

 3   IT'S GOING TO TAKE ANOTHER COURT TO TELL ME I'M WRONG.

 4         MR. NOLAN:  I'M NOT TRYING TO -- MAYBE IT SOUNDS LIKE

 5   IT IS.  I MEAN, WE'VE GONE ROUND AND ROUND, AND I ACCEPT THE      06:56

 6   COURT, OBVIOUSLY, AND RESPECT IT.  BUT I'M JUST TRYING TO MAKE

 7   CERTAIN THAT I UNDERSTAND WITH CLARITY WHERE WE GO ON THIS.

 8         THE COURT:  LET ME TRY TO SPELL IT OUT, PARTICULARLY

 9   IN THE CONTEXT OF 1-B.  AND SURELY, THE EVIDENCE WITH RESPECT

10   TO INTENTIONAL CONCEALMENT COMES IN, PRO AND CON, FOR AND        06:57

11   AGAINST.  MAYBE PART OF THE PROBLEM IS THE COURT USING THE

12   PHRASE, THE SHORTHAND PHRASE, DELIBERATE CONCEALMENT.

13         WE'VE GOT TO KEEP IN MIND 'IT'S DELIBERATE

14   CONCEALMENT OF' AND WHAT IT'S OF.  IT'S OF THE FACT THAT -- I

15   CAN SAY "FACT" NOW, BASED ON THE JURY'S FINDING -- THE FACT      06:57

16   THAT CARTER BRYANT WAS ENGAGED IN THIS WORK WHILE HE WAS AT

17   MATTEL.  THAT'S THE 'DELIBERATE CONCEALMENT OF' THAT'S AT

18   ISSUE.  NOT A DELIBERATE CONCEALMENT OF WORK THAT CARTER BRYANT

19   DID ON BRATZ AFTER HE LEFT MATTEL.

20         THAT'S THE DIVIDING LINE.  THAT HAS BEEN THE DIVIDING      06:57

21   LINE.  SO THAT'S WHERE WE ARE.  AND I WILL TRY TO MAKE THAT AS

22   CLEAR AS I CAN IN MY ORDER.

23         UNLESS THERE'S ANYTHING FURTHER ON THIS POINT, I WANT

24   TO CIRCLE BACK TO MS. AGUIAR WHO SAID SHE HAD A MOTION THAT SHE

25   WANTED TO FILE.                                                  06:58
```

1          **MS. AGUIAR:**  I'M SORRY.  I DIDN'T MEAN TO INTERJECT

2     IN THE MIDDLE, YOUR HONOR.

3          **THE COURT:**  I JUST WANTED TO HAVE THIS DONE, BECAUSE

4     I FIGURED THERE WOULD BE MORE TO THIS THAN THERE WAS.

5          **MS. AGUIAR:**  AND YOU WERE ABSOLUTELY RIGHT.  I JUST          06:58

6     WANTED TO MAKE SURE I GOT THIS OUT THERE BEFORE WE HUNG UP.

7          THERE IS A DISCOVERY DISPUTE THAT WE'VE BEEN TRYING

8     TO RESOLVE WITH MATTEL.  WE WROTE A LETTER ON THIS AS EARLY AS

9     THE FIRST WEEK IN JUNE.  THERE ARE SOME EXHIBITS THEY WANT TO

10    PUT INTO EVIDENCE WITH A WITNESS, FRANK KEISER.  WE HAVE ASKED          06:58

11    FOR THOSE EXHIBITS, AND THEY KEEP TELLING US THAT WE HAVE THEM.

12    WHAT WE HAVE IS THE UNDERLYING DATA.  WE HAVE WHAT -- FOR LACK

13    OF A BETTER WORD, WE HAVE, LIKE, GOBBLY-DE-GOOK.  WE HAVE DATA,

14    STRINGS OF NUMBERS AND LETTERS.  BUT THEY ARE PLANNING TO TRY

15    TO PUT INTO EVIDENCE A RENDERING, A 3-DIMENSIONAL RENDERING,          06:59

16    AND ACTUALLY PUT THAT IN AS A TRIAL EXHIBIT.

17          **THE COURT:**  WHO CAN SPEAK TO THIS ISSUE FROM MATTEL?

18          **MR. ZELLER:**  WE HAVE GIVEN MGA IMAGES, SO IT IS TRUE

19    WE HAVE BEEN SAYING TO THEM THAT THEY HAVE THIS INFORMATION.

20    I'M NOT REALLY SURE WHY WE'RE BEING TOLD HERE THAT THEY ONLY          06:59

21    HAVE IT IN SOME FORM THAT THEY CAN'T READ.

22          AFTER WE'RE DONE HERE, I'LL LOOK INTO IT.  I WILL, I

23    GUESS, GIVE CHAPTER AND VERSE AS TO WHAT THEY HAVE, AND IF

24    THERE'S SOMETHING AS TO WHY THEY CAN'T READ IT, PERHAPS IT'S IN

25    THE MEDIUM THAT WE HAVE GIVEN IT, WE CAN ADDRESS THAT.          07:00

```
 1          THE COURT:  WHY DON'T WE DO THIS, MR. ZELLER:  WHY

 2   DON'T YOU MAKE SURE THAT YOU'VE PROVIDED TO THEM THE EXHIBIT

 3   THAT YOU INTEND TO USE AT TRIAL.  IF YOU DON'T PRODUCE IT BY

 4   5:00 TOMORROW, THEN IT WON'T BE INTRODUCED AT TRIAL.

 5          MR. ZELLER:  FAIR ENOUGH, YOUR HONOR.                  07:00

 6          THE COURT:  DOES THAT ADDRESS YOUR CONCERN,

 7   MS. AGUIAR?

 8          MS. AGUIAR:  IT DOES.

 9          I JUST WANT TO COME BACK TO YOU, IF THAT'S OKAY, IF

10   THAT DOESN'T HAPPEN.                                          07:00

11          THE COURT:  IF IT DOESN'T HAPPEN, THEN IT'S NOT

12   COMING IN.

13          MS. AGUIAR:  THANK YOU.

14          THE COURT:  ANYTHING ELSE, FROM MGA'S PERSPECTIVE?

15          MR. NOLAN:  NOTHING.  THANK YOU VERY MUCH, YOUR       07:00

16   HONOR.

17          THE COURT:  ANYTHING ELSE, FROM MATTEL'S PERSPECTIVE?

18          MR. QUINN:  NO, YOUR HONOR.  THANK YOU.

19          THE COURT:  BEFORE MS. LARSON TAKES MY COMPUTER, MY

20   BINDERS, MY NOTES, AND EVERYTHING ELSE, AND THROWS THEM, ALONG 07:00

21   WITH ME, INTO THE LAKE, I BETTER SAY GOOD NIGHT.

22          I TRUST, MR. NOLAN, EVERYTHING WENT WELL THIS

23   AFTERNOON.

24          MR. NOLAN:  THANK YOU VERY MUCH FOR THE

25   ACCOMMODATION.                                               07:01
```

IONDAY, JULY 21, 2008                CONTINUED BENCH CONFERENCE (TELEPHONIC

```
 1              THE COURT:  VERY GOOD.

 2         I'LL SEE YOU ON WEDNESDAY MORNING AT 8:00.

 3              MR. QUINN:  YOUR HONOR, THERE'S ONE THING THAT'S JUST

 4    BEEN CALLED TO MY ATTENTION.

 5         WE DON'T HAVE ANY UNDERSTANDING ABOUT LENGTH OF              07:01

 6    OPENINGS ON WEDNESDAY.  WE DID FOR THE ORIGINAL OPENING, AND I

 7    JUST WONDERED IF THE COURT WANTED TO ADDRESS THAT.

 8              THE COURT:  HOW LONG DO YOU ANTICIPATE YOUR OPENING,

 9    MR. QUINN?

10              MR. QUINN:  I'M ESTIMATING TWO HOURS, YOUR HONOR.      07:01

11              THE COURT:  MR. NOLAN, HOW LONG DO YOU ANTICIPATE

12    YOUR OPENING?

13              MR. NOLAN:  MR. QUINN AND I EXCHANGED E-MAILS ON

14    THIS.  MR. QUINN SAID THAT HE THOUGHT HE WAS AT ABOUT TWO

15    HOURS.  I SAID THAT I THOUGHT I WAS AT ABOUT TWO HOURS OR TWO    07:01

16    AND A HALF HOURS.  WE'RE STILL TRYING TO WORK IT OUT.  BUT I

17    THINK THAT'S THE RANGE OF TIME WE'RE TALKING ABOUT.

18              THE COURT:  THAT'S FINE.  I'LL SEE YOU ON WEDNESDAY.

19              MR. NOLAN:  THANK YOU.

20              MR. QUINN:  THANK YOU.                                 07:01

21

22

23

24    / / /

25    / / /
```

1                                    CERTIFICATE

2

3    I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
4    THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
     ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
5    CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

6

7                                        1-23-08
     THERESA A. LANZA, CSR, RPR                              DATE
8    FEDERAL OFFICIAL COURT REPORTER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

IONDAY, JULY 21, 2008                    CONTINUED BENCH CONFERENCE (TELEPHONIC