1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3              EASTERN DIVISION

4                 - - -

5     HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                 - - -

7   MATTEL, INC.,                    )

                                     )

8                      PLAINTIFF,    )

                                     )

9           VS.                      )   NO. CV 04-09049

                                     )

10  MGA ENTERTAINMENT, INC., ET. AL., )  TRIAL DAY 27

                                     )   MORNING SESSION

11                   DEFENDANTS.     )   PAGES 5324-5477

                                     )

12  AND CONSOLIDATED ACTIONS,        )

                                     )

13

14

15     REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16              RIVERSIDE, CALIFORNIA

17           WEDNESDAY, JULY 23, 2008

18                 8:17 A.M.

19

20

21

22

23          THERESA A. LANZA, RPR, CSR

         FEDERAL OFFICIAL COURT REPORTER

24          3470 12TH STREET, RM. 134

         RIVERSIDE, CALIFORNIA  92501

25             951-274-0844

            WWW.THERESALANZA.COM

```
 1   APPEARANCES:

 2
     ON BEHALF OF MATTEL, INC.:
 3
                          QUINN EMANUEL
 4                        BY:   JOHN QUINN
                                JON COREY
 5                              MICHAEL T. ZELLER
                                HARRY OLIVAR
 6                              TIMOTHY ALGER
                                WILLIAM PRICE
 7                        865 S. FIGUEROA STREET,
                          10TH FLOOR
 8                        LOS ANGELES, CALIFORNIA  90017
                          213-624-7707
 9

10
     ON BEHALF OF MGA ENTERTAINMENT:
11
                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
12                        BY:   THOMAS J. NOLAN
                                DAVID HANSEN
13                              LAUREN AGUIAR
                                CARL ROTH
14                        300 SOUTH GRAND AVENUE
                          LOS ANGELES, CALIFORNIA  90071-3144
15                        213-687-5000

16

17

18

19

20

21

22

23

24

25
```

1                          I N D E X

2                                                    PAGE

3    BENCH CONFERENCE................................. 5327

4    OPENING STATEMENT - PLAINTIFF.................... 5410

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    RIVERSIDE, CALIFORNIA; WEDNESDAY, JULY 23, 2008; 8:17 A.M.

 2                              -OOO-

 3         THE CLERK:  CALLING CASE NUMBER CV04-09049-SGL,

 4    MATTEL, INC., V. MGA ENTERTAINMENT, INC., ET AL.

 5         COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE          08:17

 6    RECORD.

 7         MR. QUINN:  JOHN QUINN, BILL PRICE, MIKE ZELLER FOR

 8    MATTEL.

 9         MR. NOLAN:  TOM NOLAN, LAUREN AGUIAR, AND

10    DAVID HANSEN ON BEHALF OF MGA.                               08:17

11         THE COURT:  GOOD MORNING TO YOU ALL.

12         COUNSEL, WE HAD A FEW MORE MOTIONS TO COVER FROM OUR

13    HEARING ON MONDAY.  IN NO PARTICULAR ORDER, LET'S BEGIN WITH

14    MGA'S MOTION IN LIMINE NUMBER SIX.  THIS IS THE MOTION TO

15    EXCLUDE REFERENCE TO AND USE OF PHASE 2 EVIDENCE.            08:17

16         I'VE READ THE MOTIONS, THE OPPOSITION, AND THE REPLY

17    AGAIN, AND REFLECTED ON YOUR ARGUMENT.  I THINK THE PROBLEM --

18    AND THIS IS A SIMILAR PROBLEM THAT I THINK THE COURT TRIED TO

19    IDENTIFY IN REFERENCE TO DELIBERATE CONCEALMENT OR INTENTIONAL

20    CONCEALMENT -- IS THAT WE'VE BEEN ADOPTING SHORTHAND AND      08:18

21    PROBABLY LOST SIGHT OF EXACTLY WHAT IT IS THAT THE SHORTHAND

22    REPRESENTS.  THERE'S REALLY NO SUCH THING AS PHASE 2 EVIDENCE.

23    THERE ARE PHASE 2 ISSUES AND PHASE 2 CLAIMS, OR PHASE 1-A

24    CLAIMS AND THERE'S 1-B CLAIMS.  EVIDENCE IS EVIDENCE.  IT

25    EITHER GOES TO AN ISSUE OR IT DOESN'T GO TO AN ISSUE.        08:18
```

1 WHAT THE COURT HAS TRIED TO KEEP OUT ARE PHASE 2

2 ISSUES FROM PHASE 1, KEEP OUT PHASE 1-B ISSUES FROM PHASE 1-A,

3 BUT EVIDENCE IS NOT -- WE END UP BASICALLY STATING A TAUTOLOGY

4 IF WE EXCLUDE EVIDENCE SIMPLY BECAUSE WE CHARACTERIZE IT AS

5 PHASE 2 EVIDENCE.          08:19

6 SO THE MOTION IS WELL TAKEN TO THE EXTENT THAT IT

7 WANTS TO EXCLUDE PHASE 2 ISSUES FROM PHASE 1-B.  IT IS NOT WELL

8 TAKEN IF IT'S A CATEGORICAL PRESCRIPTION OR IS TAKEN AS A

9 CATEGORICAL PRESCRIPTION OF EVIDENCE THAT RELATES TO, OR WILL

10 ALSO BE USED TO RELATE TO, AN ISSUE IN PHASE 2.   08:19

11 SO WHERE DOES THAT LEAVE US?

12 TO THE EXTENT THAT MGA INTRODUCES EVIDENCE THAT -- ON

13 ANY NUMBER OF TOPICS THAT THEY IDENTIFY IN THE MOTION

14 *IN LIMINE*, MATTEL HAS A RIGHT TO REBUT THAT EVIDENCE OR IMPEACH

15 THAT EVIDENCE.  I CANNOT AT THIS POINT, WITHOUT SEEING IN THE 08:19

16 CONTEXT OF THE TRIAL ITSELF, RULE IN THE ABSTRACT ON PHASE 2

17 EVIDENCE OR PHASE 1 EVIDENCE.  THE MORE I THOUGHT ABOUT THIS,

18 THE MORE I REALIZE THAT IT REALLY DOESN'T LEND ITSELF TO AN

19 EXCLUSIONARY RULE AS FRAMED IN THE MOTION *IN LIMINE*.  IT'S

20 SOMETHING THAT THE COURT IS GOING TO HAVE TO CONSIDER IN THE 08:20

21 CONTEXT OF THE TRIAL.  QUITE FRANKLY, IT'S SOMETHING THAT MGA

22 CONTROLS THE DOOR ON.

23 I CERTAINLY AGREE THAT NONE OF THE EVIDENCE REFERRED

24 TO BY MGA WOULD BE APPROPRIATE FOR MATTEL TO BRING IN IN ITS

25 CASE-IN-CHIEF IN PHASE 1-B.  I CAN CERTAINLY SEE MGA OPENING 08:20

1   THE DOOR FOR ANY NUMBER OF THESE PIECES OF EVIDENCE; CERTAINLY

2   NOT ALL OF THEM, BUT SOME OF THEM.  AND DEPENDING ON HOW THE

3   EVIDENCE IS PRESENTED, THE COURT WILL ENTERTAIN AND EITHER

4   SUSTAIN OR OVERRULE APPROPRIATE OBJECTIONS TO THE EVIDENCE.

5        BUT I THINK WE NEED TO MOVE BEYOND DESCRIBING                    08:20

6   EVIDENCE AS PHASE 1 OR PHASE 2 EVIDENCE AND FOCUS ON THE FACT

7   THAT WE ARE LIMITING OURSELVES TO PHASE 1 AND PHASE 2 ISSUES OR

8   CLAIMS OR COUNTERCLAIMS, OR WHAT HAVE YOU.

9        THAT'S MY INITIAL SENSE, AFTER READING ALL OF THE

10  BRIEFS AGAIN ON THIS POINT AND CONSIDERING THE ARGUMENT ON BOTH      08:21

11  SIDES.  LET ME HEAR FROM THE PARTIES, IN LIGHT OF THE COURT'S

12  TENTATIVE THOUGHTS, THEN I'LL ISSUE A RULING.

13       **MR. NOLAN:**  YOUR HONOR, I WOULD JUST MAKE THE

14  OBSERVATION THAT THE DISTINCTION THAT THE COURT MAKES BETWEEN

15  PHASE 2 ISSUES AND PHASE 2 DISCOVERY BLURS A COUPLE OF POINTS.       08:21

16       **THE COURT:**  I DIDN'T WANT TO USE THE WORD

17  "DISCOVERY."

18       **MR. NOLAN:**  EVIDENCE.  I APOLOGIZE, YOUR HONOR.

19       BECAUSE THE PHASE 2 DISCOVERY ISSUES IN THIS CASE

20  HAVE BEEN STAYED BY THE COURT AT OUR REQUEST, SOMETIME, I            08:21

21  BELIEVE, IN JANUARY OR FEBRUARY OF THIS YEAR --

22       **THE COURT:**  RIGHT.

23       **MR. NOLAN:**  -- IN AN EFFORT TO ALLOW FOR THIS PHASE

24  OF THE CASE TO BE FULLY DEVELOPED AND TO BE PREPARED TO TRY AS

25  WE'RE TRYING IT NOW.                                                 08:22

1          MANY OF THE ISSUES THAT MATTEL WOULD CLAIM THAT WE

2    OPENED THE DOOR ON, ON APPORTIONMENT AND THAT TYPE OF EVIDENCE,

3    WAS FULLY BEFORE THE COURT, AND THAT ARGUMENT WAS MADE AT THE

4    TIME OF THE PHASE 2 DISCOVERY ORDER THAT WAS PUT INTO PLACE.

5    AND I BELIEVE -- AND I CAN GO BACK ON THE RECORD -- I BELIEVE          08:22

6    THAT CERTAIN OF THESE ISSUES WERE BROUGHT TO THE DISCOVERY

7    MASTER'S ATTENTION, AS WELL AS WITH RESPECT TO THE SCOPE OF

8    DISCOVERY ON THESE ISSUES THAT WOULD BE ALLOWED.

9          WHERE MGA FINDS ITSELF IS THAT, OF COURSE, HAVING

10   COME INTO THE CASE MOST RECENTLY AND TRYING TO FOCUS ALL OF THE        08:22

11   EFFORTS ON GETTING THIS ISSUE OR THESE ISSUES READY TO TRY, AND

12   WITH THE PHASE 2 DISCOVERY IN PLACE, WE DID NOT DEVELOP THE

13   DISCOVERY THAT MIGHT OTHERWISE BE AVAILABLE TO COUNTER SOME OF

14   THE EVIDENCE THAT MATTEL WOULD LIKE TO WHOLESALE PUT INTO THIS

15   ISSUE. AND THAT'S A REAL CONCERN FOR US, IN LIGHT OF THE STAY,        08:23

16   YOUR HONOR.

17          **THE COURT:** GIVE ME AN EXAMPLE.

18          **MR. NOLAN:** I CAN DO IT IN BROAD STROKES.

19          **THE COURT:** THIS IS PART OF THE PROBLEM THAT I HAVE

20   WITH THIS MOTION AS PHRASED, BECAUSE IT'S SO BROADLY WORDED;          08:23

21   AND I KNOW IT CITES EXAMPLES, BUT IT'S NOT CLEAR TO ME WHICH OF

22   THESE ARE ACTUALLY IN PLAY AND WHICH ARE NOT IN PLAY.

23          **MR. NOLAN:** LET ME TRY IT WITH SOME BROAD STROKES AND

24   GIVE YOU AN EXAMPLE; AND ALSO GET THE COURT'S GUIDANCE WITH

25   RESPECT TO WHETHER OR NOT THIS EVIDENCE WOULD OPEN THE DOOR.          08:23

| | |
|---|---|
| 1 | AS MR. ROTH FRAMED THE ISSUE YESTERDAY, THIS LARGELY | |
| 2 | COMES UP IN THE SENSE OF APPORTIONMENT OF DAMAGES.  WHAT | |
| 3 | PORTION OF THE PROFITS SHOULD BE ATTRIBUTED TO THE INFRINGING | |
| 4 | PRODUCT.  AND TO DO SO, WE GO THROUGH, THE EXPERTS HAVE GONE | |
| 5 | THROUGH, AN ELABORATE EXERCISE OF THE VALUE OF ADVERTISING, | 08:24 |
| 6 | BRANDING, AND A SERIES OF THEM. | |
| 7 | IF MATTEL IS -- AND BASED SIMPLY ON THAT, WITHOUT | |
| 8 | HAVING AN EMPLOYEE FROM MGA COMING UP AND SAYING, I CREATED | |
| 9 | THIS IDEA, IT WAS MY IDEA, VERSUS MGA HAD GREAT PACKAGING; WE | |
| 10 | WON AWARDS.  THAT APPEALS TO A CONSUMER THAT ATTITUDE, GROSS | 08:24 |
| 11 | REVENUE -- IF MATTEL IS THEN ALLOWED TO COME IN AND SAY, 'OH, | |
| 12 | THERE'S ALL THIS EVIDENCE THAT ALLEGEDLY CERTAIN THINGS | |
| 13 | WERE' -- | |
| 14 | **THE COURT:**  LET ME STOP THERE. | |
| 15 | YOU GLOSSED OVER THE CRITICAL POINT, BECAUSE HOW MGA | 08:24 |
| 16 | PRESENTS THAT EVIDENCE WILL AFFECT WHETHER OR NOT MATTEL IS | |
| 17 | ABLE TO IMPEACH THAT. | |
| 18 | TO USE YOUR EXAMPLE THERE, IF A MATTEL EMPLOYEE COMES | |
| 19 | UP AND CLAIMS, 'I DEVELOPED ON MY OWN, WITHOUT ANY REFERENCE TO | |
| 20 | ANYTHING ELSE, THIS UNIQUE MARKETING OR THIS UNIQUE BRANDING | 08:25 |
| 21 | THING,' AND THAT'S A LIE, I'M GOING TO ALLOW MGA TO IMPEACH ON | |
| 22 | THAT LIE. | |
| 23 | IF.  I DON'T KNOW.  IF, HOWEVER, IT'S CAST IN AN | |
| 24 | ENTIRELY DIFFERENT WAY WHICH DOESN'T CALL INTO QUESTION WHETHER | |
| 25 | OR NOT IT WAS DONE UNIQUELY OR ON THEIR OWN, THAT'S A DIFFERENT | 08:25 |

1    SCENARIO.  I MEAN, THOSE ARE TWO DIFFERENT SCENARIOS.  I'M NOT

2    GOING TO GROUP THEM TOGETHER.  IT'S LARGELY GOING TO TURN ON

3    HOW THE TESTIMONY COMES UP.  I'M NOT GOING TO HANDCUFF EITHER

4    SIDE AND SAY THAT YOU CAN'T IMPEACH BECAUSE THIS EVIDENCE ALSO

5    HAPPENS TO RELATE -- THE IMPEACHMENT EVIDENCE ALSO HAPPENS TO          08:25

6    RELATE TO AN ISSUE IN PHASE 2.

7            MR. NOLAN:  THAT ADDS TO THE CLARITY, YOUR HONOR.

8            THE COURT:  IT REALLY DEPENDS LARGELY ON HOW THE

9    EVIDENCE IS PRESENTED.  THAT'S WHY I SAID AT THE OUTSET THAT

10   MGA BASICALLY CONTROLS THE DOOR THROUGH WHICH THIS IS.  SO I'M        08:26

11   DISINCLINED TO GRANT A CATEGORICAL -- I THINK IT WOULD BE A

12   TAUTOLOGY FOR THE COURT TO SAY, 'NO PHASE 2 EVIDENCE IN PHASE

13   1-A OR 1-B.'  I THINK THAT DOESN'T PROVIDE ANY GUIDANCE AT ALL.

14   IT BEGS THE QUESTION AS TO -- IT ASSUMES -- THERE'S A FAULTY

15   PREMISE THERE THAT EVIDENCE IS EXCLUSIVELY 1-A OR 1-B OR              08:26

16   PHASE 2, AND EVEN WHEN WE WERE DISCUSSING THE DISCOVERY

17   LIMITATIONS, THERE WAS A RECOGNITION -- AND I REMEMBER THIS

18   COMING UP SEVERAL TIMES, AT LEAST IN THE DISCOVERY MATTERS THAT

19   THIS COURT DECIDED, THAT CERTAIN EVIDENCE APPLIES TO BOTH

20   PHASE 1 AND PHASE 2.  I REMEMBER SEVERAL INSTANCES OF THAT.          08:26

21   AND WHEN THAT WAS THE CASE, THE COURT PERMITTED IT TO GO

22   FORWARD.  I THINK I EVEN EXPRESSED IT AT THE OUTSET, BEFORE

23   ANYTHING WENT TO JUDGE INFANTE, THAT IF THERE WAS A WITNESS

24   THAT WAS TO BE DEPOSED THAT HAD BOTH PHASE 1 AND PHASE 2

25   EVIDENCE, THAT THAT DEPOSITION COULD GO FORWARD.                     08:26

| 1 | I'VE LEFT IT TO THE VERY SOPHISTICATED COUNSEL ON |
| 2 | BOTH SIDES OF THIS CASE TO DETERMINE WHAT EVIDENCE WAS NEEDED |
| 3 | FOR PHASE 1-A AND PHASE 1-B. THE COURT HAS NOT SET ANY |
| 4 | RESTRICTIONS OR PARAMETERS ON THAT, AND I'M NOT GOING TO DO SO |
| 5 | NOW. |

08:27

6       IN TERMS OF IMPEACHMENT EVIDENCE -- AND THAT REALLY
7   IS THE BASIS THAT I SEE ANY OF THIS COMING IN, IF AT ALL --
8   WILL LARGELY TURN ON THE TESTIMONY OF THE MGA WITNESSES. IT'S
9   CERTAINLY NOT GOING TO COME IN IN MATTEL'S CASE-IN-CHIEF IN
10  THIS PHASE OF THE TRIAL.                                             08:27

11          **MR. NOLAN:** THANK YOU, YOUR HONOR.

12          **THE COURT:** MR. ZELLER?

13          **MR. ZELLER:** THANK YOU, YOUR HONOR.

14          WE DO AGREE WITH THE COURT'S APPROACH TO THIS, AND
15  THERE'S NO QUESTION -- WE DON'T INTEND TO BRING THIS STUFF IN      08:27
16  AFFIRMATIVELY AS PART OF OUR CASE-IN-CHIEF. IT'S GOING TO BE
17  RESPONSIVE. WHEN WE ARE TALKING ABOUT THE TRADE SECRET THEFTS
18  OR THE ORIGINS OF CERTAIN INFORMATION THAT THEY ARE GOING TO
19  SAY -- OR ELEMENTS THAT THEY ARE GOING TO SAY CONTRIBUTED TO
20  THE SUCCESS --                                                      08:28

21          **THE COURT:** ONE CONCERN I HAVE IS THE ONE THAT
22  MR. NOLAN -- IF THERE'S ANY EVIDENCE THAT MGA WAS BARRED FROM
23  EXPLORING BY JUDGE INFANTE, OR EVEN BY THIS COURT -- I'M NOT
24  BEING PRESENTED WITH ANY -- NO ONE IS CITING TO ANYTHING RIGHT
25  NOW; I'M NOT REALLY AWARE OF WHAT THAT WOULD BE -- THAT WOULD       08:28

```
 1   BE A CONCERN, THOUGH.

 2          MR. ZELLER:  I UNDERSTAND THE POINT.

 3          TO MAYBE BE A LITTLE MORE EXPANSIVE ABOUT THE COURT'S

 4   POINTS A LITTLE EARLIER, BECAUSE I THINK THE COURT IS

 5   ABSOLUTELY CORRECT.  I MEAN, THE COURT DID NOT STAY DISCOVERY       08:28

 6   AS TO MATTERS OR ISSUES WHERE THERE WAS AN OVERLAP BETWEEN

 7   PHASE 1 AND 2.  THE COURT'S ORDERS WERE ABSOLUTELY EXPLICIT

 8   ABOUT THAT.  IN FACT, THE PARTIES LITIGATED, IN FRONT OF JUDGE

 9   INFANTE ON SEVERAL MOTIONS, IS THIS SOMETHING THAT WAS PHASE 1

10   VERSUS PHASE 2?                                                    08:28

11          SO THOSE ADJUDICATIONS WERE MADE.  I MEAN, IF A PARTY

12   THOUGHT THAT IT NEEDED THIS EVIDENCE FOR PHASE 2, BECAUSE THERE

13   WAS THAT OVERLAPPING KIND OF EVIDENCE, THEY HAD THE ABILITY,

14   AND IN MANY CASES DID, TO BRING THAT TO JUDGE INFANTE'S

15   ATTENTION FOR A RULING, TO THE EXTENT THAT A PARTY THOUGHT THAT    08:29

16   IT WAS WRONGED OR AGGRIEVED BY THE RULING.

17          WELL, THE COURT, OF COURSE, HERE IS THE ONE THAT ONE

18   HAD TO TAKE AN APPEAL TO.  SO I THINK THE DAY FOR THOSE

19   COMPLAINTS ABOUT DISCOVERY HAS PASSED.  I DON'T THINK THAT

20   THAT'S A PROPER BASIS FOR SAYING THAT A CERTAIN ISSUE CANNOT BE    08:29

21   -- OR CERTAIN EVIDENCE CANNOT BE ADMITTED, BECAUSE THE COURT

22   HAD THAT CONSTRUCT AND NO ONE WAS DEPRIVED OF ANYTHING UNDER

23   THAT CONSTRUCT.  AND IF SOMEONE DOES BELIEVE IT, THEY WERE --

24   WELL, THEY NEEDED TO COME TO THE COURT AND SAY SO.

25          SO I THINK THE PROCEDURE AND THE MECHANISMS THAT THE        08:29
```

```
 1   COURT HAD IN PLACE REALLY RESOLVED THIS ISSUE.  AND, OF COURSE,
 2   AS MR. NOLAN POINTS OUT, MGA WAS THE PARTY WHO ASKED FOR THE
 3   STAY IN THE FIRST INSTANCE.  SO IT'S ALSO A LITTLE HARD TO
 4   UNDERSTAND HOW MGA CAN REALLY CLAIM, UNDER ANY CIRCUMSTANCE, TO
 5   HAVE SOMEHOW BEEN DENIED ANYTHING.                                08:30
 6        THE COURT:  IF I RECALL, THERE WAS NO STAY UNTIL A
 7   FEW MONTHS AGO; IS THAT CORRECT?
 8        MR. ZELLER:  THAT'S CORRECT.
 9        THE COURT:  WHEN ALL OF THE MILLIONS OF DOCUMENTS
10   WERE GOING BACK AND FORTH AS BEEN DESCRIBED IN DETAIL, THAT WAS   08:30
11   PHASE 1 AND PHASE 2.
12        MR. ZELLER:  THAT'S CORRECT.  IN FACT, THE STAY WAS
13   NOT EFFECTIVE UNTIL -- I BELIEVE IT WAS APPROXIMATELY JANUARY
14   OF THIS YEAR.  SO THERE WAS CERTAINLY CONSIDERABLE PERIODS OF
15   DISCOVERY, AND, IN FACT, CONSIDERABLE DISCOVERY AND MOTION        08:30
16   PRACTICE AND THE LIKE OVER -- UNDER ANY CHARACTERIZATION OF
17   EVEN PURE PHASE 2 ISSUES.
18        THE COURT:  VERY GOOD.
19        IT'S STILL A CONCERN OF MINE, AND IF AT ANY POINT IN
20   TIME DURING THIS PHASE OF THE TRIAL MGA BELIEVES THAT A          08:30
21   PARTICULAR ITEM OF DISCOVERY OR EVIDENCE HAS BEEN DENIED TO
22   THEM BECAUSE OF THE WAY OF THE DISCOVERY PHASING, AND IF THAT
23   CAN BE IDENTIFIED WITH SPECIFICITY, NOT IN GENERAL, BROAD
24   STATEMENTS, BUT IN TERMS OF SPECIFICITY, THE COURT WILL GIVE
25   MGA LEAVE TO ADDRESS THAT AND RAISE THAT AS PART OF AN           08:31
```

1    OBJECTION TO ANY LINE OF IMPEACHMENT.

2         **MR. NOLAN:**  YOUR HONOR, MY LAST COMMENT IS, I ACCEPT

3    THE COURT'S CLARIFICATIONS.  I APPRECIATE THAT.  AND I ALSO

4    ASSUME, THOUGH, YOUR HONOR, THAT IF WE'RE IN THIS SITUATION,

5    APPLYING THE GOOSE-GANDER RULE -- AND THAT IS THAT IN PHASE          08:31

6    1-A, WHEN WE WERE TRYING TO IMPEACH, THE COURT WAS ADAMANT

7    ABOUT THE IMPEACHMENT COULD NOT BE GENERAL OR SWEEPING; IT HAD

8    TO BE SPECIFIC --

9         **THE COURT:**  ABSOLUTELY.

10        **MR. NOLAN:**  -- SO THAT IF AN EMPLOYEE OF MGA WHO'S A         08:31

11   FORMER MATTEL EMPLOYEE IS ON THE STAND, IT CAN'T BE WITH A

12   SWEEPING BACK OF THE HAND, 'OH, AND YOU TOOK THAT FROM MATTEL,'

13   THAT THERE WOULD BE A PROFFER TO THE COURT AHEAD OF TIME AS TO

14   THE SPECIFIC FORM OF THE IMPEACHMENT, BECAUSE I DON'T WANT TO

15   HAVE TO DO THAT IN FRONT OF A JURY.                                  08:31

16        **THE COURT:**  ABSOLUTELY.  THAT APPLIES TO THEM AS

17   WELL.  THE BIG CONCERN THAT I HAD WITH SOME OF THE IMPEACHMENT

18   THAT MGA ATTEMPTED, THAT APPLIES JUST AS MUCH TO MATTEL.

19        I BELIEVE I'VE ALREADY RECEIVED A REPRESENTATION FROM

20   MR. ZELLER ON MONDAY THAT THIS IS NOT GOING TO BE AN EXPANSIVE       08:32

21   EFFORT ON THE PART OF MATTEL, BUT LIMITED TO PINPOINT INSTANCES

22   OF IMPEACHMENT.

23        IS THAT CORRECT, MR. ZELLER?

24        **MR. ZELLER:**  THAT'S CORRECT, YOUR HONOR.

25        **THE COURT:**  THAT'S WHAT I TOOK YOUR STATEMENT AT            08:32

```
 1   MONDAY'S HEARING TO BE.
 2            SO THE MOTION IN LIMINE AS PHRASED IS DENIED.
 3   HOWEVER, THE COURT BASICALLY REPHRASES THE MOTION TO LIMIT THE
 4   EVIDENCE TO BE INTRODUCED TO ESSENTIALLY IMPEACHMENT EVIDENCE
 5   OF MGA APPORTIONMENT EVIDENCE, ASSUMING, OF COURSE, THAT IT'S      08:32
 6   FRAMED IN SUCH AND THE IMPEACHMENT EVIDENCE IS SUCH THAT IT
 7   CAN, IN FACT, SERVE THAT PURPOSE.  I REALLY WANTED TO GET OFF
 8   OF THIS MOTION OF REFERRING TO -- AND THE COURT WILL TRY --
 9   BECAUSE THE COURT HAS BEEN JUST AS GUILTY OF THIS AS ANYBODY
10   ELSE -- OF REFERRING TO THIS AS PHASE 1 EVIDENCE AND PHASE 2      08:32
11   EVIDENCE.  IT'S PHASE 1 ISSUES AND PHASE 2 ISSUES.  EVIDENCE,
12   OF COURSE, CAN SUPPORT BOTH.  I SUSPECT A LOT OF THE EVIDENCE
13   THAT WE'VE HEARD IN PHASE 1 WOULD BE IN A PHASE 2 TRIAL, AND
14   VICE VERSA.
15            SO THAT'S MGA'S MOTION NUMBER SIX.                       08:33
16            I NEXT HAVE TO DEAL WITH THE NEXT QUESTION THAT I
17   HAVE, JUST IN ORDER, IS MATTEL'S MOTION IN LIMINE NUMBER 11.
18   THIS RELATES TO -- SPECIFICALLY, WHAT THIS BOILS DOWN TO AT
19   THIS POINT IS MR. GRUCA'S -- THE REBUTTAL REPORT OF MR. GRUCA.
20            LET ME ASK MGA TO RESPOND TO THIS THOUGHT THAT I HAD,    08:33
21   ACTUALLY AS I WAS LYING DOWN LAST NIGHT.  THE GRUCA REPORT, AS
22   I UNDERSTAND IT, IS INDICATED TO BE A REBUTTAL REPORT TO
23   CAROL SCOTT.  THE COURT HAS ALREADY GRANTED MGA'S MOTION
24   IN LIMINE, LIMITING WHAT CAROL SCOTT CAN TESTIFY TO.  NAMELY,
25   SHE'S NOT GOING TO BE ABLE TO TESTIFY TO THE POINTS THAT IT       08:34
```

1    APPEARS THAT MR. GRUCA'S BRAND WEAR RESEARCH SURVEY IS

2    DIRECTED; NAMELY, MS. SCOTT'S STATEMENTS CONCERNING THE DESIGN

3    OF BRATZ AND ALL OF THAT.

4            SO MY QUESTION IS, IS IT REALLY NECESSARY AT THIS

5    POINT?  AND IF IT IS, IF THAT REBUTTAL IS GOING TO COME IN, IF     08:34

6    IT'S GOING TO OTHER THINGS SUCH AS APPORTIONMENT STANDING BY

7    ITSELF, THEN THE QUESTION BECOMES WHETHER WE NOW ALLOW A

8    SURREBUTTAL.

9            MR. ROTH?

10           **MR. ROTH:**  GOOD MORNING, YOUR HONOR.                     08:35

11           THIS IS AN ISSUE THAT WAS RAISED BY MR. KIDMAN TOWARD

12   THE END OF THE HEARING ON MONDAY.  AS YOU MAY RECALL, WE MADE,

13   IN BOTH HEARINGS, TWO ARGUMENTS VIS-À-VIS MR. GRUCA'S REPORT.

14   ONE WAS -- IT REALLY WAS -- THE SECONDARY ARGUMENT WAS THAT IT

15   WAS IN REBUTTAL TO CAROL SCOTT'S REPORT, VIS-À-VIS BRATZ,          08:35

16   PARAGRAPHS 12 AND 13 OF HER FEBRUARY 11TH REPORT.  I WOULD

17   AGREE WITH YOUR HONOR, THAT'S NOT AN ISSUE IN THE CASE ANYMORE,

18   AS THAT PIECE OF MS. SCOTT'S TESTIMONY HAS BEEN EXCLUDED BY THE

19   COURT.

20           HOWEVER, YOUR HONOR JUST PUT HIS FINGER ON THE REAL         08:35

21   REASON WHY WE THINK IT'S APPROPRIATE THAT THE REPORT PROCEED

22   AND BE PERMITTED INTO EVIDENCE HERE.  AND THAT IS THAT WE

23   THINK, BASED ON THE STRAUS CASE, APPORTIONMENT EVIDENCE WAS NOT

24   REQUIRED TO BE SET FORTH AS AN INITIAL REPORT.

25           **THE COURT:**  I'VE TAKEN A CAREFUL LOOK AT STRAUS,        08:36

```
 1    BECAUSE IT HAD -- I'VE READ IT AGAIN, AND CLEARLY, STRAUS IS A
 2    DISTRICT COURT CASE OUT OF TEXAS.  AND IT REPEATS THE
 3    WELL-ESTABLISHED PRINCIPLE THAT THE BURDEN, THE INITIAL BURDEN,
 4    ON A COPYRIGHT INFRINGEMENT IS FOR THE PLAINTIFF, THE PARTY
 5    ALLEGING INFRINGEMENT, TO COME FORWARD WITH THE GROSS REVENUES.    08:36
 6          CORRECT?
 7          MR. ROTH:  CORRECT.
 8          THE COURT:  AND THEN, AND ONLY THEN, DOES THE BURDEN
 9    SHIFT, ESSENTIALLY, TO THE DEFENSE, OR THE ALLEGEDLY -- OR THE
10    INFRINGING PARTY, ASSUMING THAT INFRINGEMENT HAS BEEN             08:36
11    ESTABLISHED, TO NET OUT THE COSTS, AND TO, IF THEY WISH, ARGUE
12    APPORTIONMENT.  AND I CLEARLY UNDERSTAND THAT.
13          ALL OF THE CASES SUPPORT THAT.
14          AND IT'S REFERRED TO AS A REBUTTAL, AND IN THE TEXAS
15    CASE, YES, THE COURT DID ALLOW A REBUTTAL REPORT TO COME IN.      08:36
16    AND THAT MAKES SENSE, BECAUSE IT IS, IN A SENSE, A REBUTTAL.
17          BUT CERTAINLY, THERE'S NOTHING IN STRAUS THAT I CAN
18    SEE -- AND THIS IS THE AUTHORITY THAT I'D LIKE TO FIND, AND I
19    HAVE NOT BEEN ABLE TO FIND ANYTHING ALONG THESE LINES -- THAT
20    SOMEHOW WHEN YOU BRING OUT APPORTIONMENT FOR THE FIRST TIME IN    08:37
21    A REBUTTAL EXPERT REPORT, THAT THE OTHER SIDE DOES NOT HAVE A
22    CHANCE, OR CANNOT BE AFFORDED A CHANCE, TO REBUTTAL THAT NEW
23    ARGUMENT WHICH HAS BEEN INTRODUCED.
24          CERTAINLY, YOU'RE NOT SUGGESTING THAT JUST BECAUSE
25    THERE'S A BURDEN-SHIFTING ANALYSIS HERE, FROM A LEGAL            08:37
```

1   EVIDENTIARY STANDPOINT, THAT SOMEHOW FOR DISCOVERY PURPOSES,

2   THAT ENTITLES THE INFRINGER TO THROW OUT AN APPORTIONMENT

3   EXPERT AND THE PLAINTIFF OR THE PARTY ALLEGING THE INFRINGEMENT

4   HAS NO RIGHT FOR THEIR EXPERT TO RESPOND.

5           DO YOU UNDERSTAND?                                          08:37

6           **MR. ROTH:**  I UNDERSTAND WHERE YOU'RE GOING.  IT SEEMS

7   TO ME WHERE YOU'RE HEADING TOWARD IS THE ISSUE OF WHETHER WE

8   OUGHT TO RELY ON MR. KIVITZ' REPORT, WHICH WOULD BE --

9           **THE COURT:**  I'M GOING THERE, BUT BEFORE I GET THERE,

10  I WANT TO MAKE SURE THAT I UNDERSTAND, BECAUSE THE STRAUS CASE    08:38

11  HAS BEEN OFFERED UP NOW NUMEROUS TIMES AS SUGGESTING THAT THE

12  PROPER PLACE TO BRING UP APPORTIONMENT IS IN THE REBUTTAL.  YOU

13  COMBINE THAT, THEN, LINK THAT UP, WITH CASES WHICH SAY THAT A

14  SURREBUTTAL IS NOT NECESSARILY APPROPRIATE, THEN THAT WOULD

15  SEEM TO SUGGEST THAT THE COURT IN TEXAS IS SAYING THAT           08:38

16  BASICALLY THE PLAINTIFF IS JUST STUCK.  AND I THINK WE'RE

17  CONFLATING BURDEN-SHIFTING WITH THE REQUIREMENT THAT EXPERT

18  REPORTS BE DISCLOSED UP FRONT.

19          I MEAN, THERE'S NO QUESTION THAT THE TEXAS COURT DID

20  WHAT IT DID.  I THINK, FIRST OF ALL, IT WAS NOT A TRIAL; IT WAS   08:38

21  A SUMMARY JUDGMENT.  THERE'S A NUMBER OF DIFFERENCES BETWEEN

22  THE STRAUS CASE AND THIS CASE AND THE POSTURE THAT WE FIND

23  OURSELVES AT, AND THERE'S NO QUESTION THAT ANY TRIAL -- IT IS

24  NOT INCUMBENT UPON THE INFRINGER TO COME FORWARD WITH

25  APPORTIONMENT UNTIL AND UNLESS THE PLAINTIFF HAS COME FORWARD     08:38

```
 1    WITH THE REQUISITE SHOWING OF GROSS REVENUES ATTRIBUTABLE TO

 2    THE INFRINGEMENT.  BUT THAT DOES NOT SPEAK TO WHAT IS REQUIRED

 3    BACK IN THE DISCOVERY PHASE IN TERMS OF DISCLOSING ANY EXPERT

 4    TESTIMONY THAT ANY PARTY INTENDS TO RELY ON IN THEIR INITIAL

 5    DISCLOSURE OF EXPERTS AND AFFORDING THE OTHER SIDE A CHANCE TO     08:39

 6    REBUT IT.

 7          MR. ROTH:  THAT IS TRUE, YOUR HONOR, AND WE WOULD NOT

 8    CONTEND THAT MATTEL DOES NOT HAVE AN OPPORTUNITY TO RESPOND TO

 9    OUR APPORTIONMENT ARGUMENT IN GENERAL.

10          THE COURT:  IF THAT'S TRUE, THEN, MR. ROTH, THEN YOU        08:39

11    SHOULD HAVE DISCLOSED THIS APPORTIONMENT IN YOUR INITIAL EXPERT

12    REPORT AND NOT IN A REBUTTAL.

13          MR. ROTH:  YOUR HONOR, WE CONTEND, BASED ON THE

14    STRAUS CASE, ON A VARIETY OF CASES, THAT WE HAD -- SINCE WE DID

15    NOT HAVE THE INITIAL BURDEN OF PROOF, THE FUNDAMENTAL RULE HERE    08:39

16    WAS, 'WHERE YOU DON'T HAVE THE INITIAL BURDEN OF PROOF, IT WAS

17    NOT REQUIRED TO BE DISCLOSED IN YOUR INITIAL REPORT.'

18          THE COURT:  IS THERE ANY CASE -- I KNOW STRAUS

19    PERMITTED -- MY SENSE WAS, OUT OF A MATTER OF EQUITY -- AND

20    THIS COURT IS INCLINED TO DO THE SAME THING, MIND YOU -- TO       08:40

21    ALLOW THAT REBUTTAL TO COME IN TO, IN THAT CASE, THE SUMMARY

22    JUDGMENT.  BUT IS THERE ANY AUTHORITY AT ALL, ANY CASE, WHICH

23    STANDS FOR THE PROPOSITION THAT YOU'RE NOW ASSERTING, THAT IT

24    IS PROPERLY BECAUSE THE BURDEN ONLY SHIFTS TO THE INFRINGER

25    AFTER THE GROSS REVENUES HAS BEEN PUT IN?                         08:40
```

```
 1              IS THERE ANYTHING WHICH SUGGESTS THAT BECAUSE OF
 2    THAT, THERE'S NO NEED IN THE EXPERT DISCLOSURE -- WHICH, OF
 3    COURSE, FOLLOWS ALL OF THE DISCOVERY AND WHICH YOU'VE ALREADY
 4    RECEIVED ALL OF THE EVIDENCE OR THE EVIDENCE HAS BEEN -- I
 5    MEAN, DISCOVERY HAS GONE BACK AND FORWARD IN TERMS OF THE GROSS    08:40
 6    REVENUE ISSUE, AND CLEARLY, THE PLAINTIFF HAS BEEN ASSERTING
 7    GROSS REVENUE PROFITS FOR QUITE SOME TIME NOW -- YOU'RE STILL
 8    ABLE TO SIT AND WAIT UNTIL YOU ACTUALLY SEE THE EXPERT REPORT
 9    BEFORE YOU SUBMIT THE APPORTIONMENT EVIDENCE IN THE REBUTTAL
10    EXPERT REPORT?                                                    08:40
11              IS THERE ANY CASE THAT STANDS FOR THAT?
12              MR. ROTH:  YOUR HONOR, THE BEST I HAVE IS THE STRAUS
13    CASE.
14              THE COURT:  RIGHT.  IN STRAUS, SIMPLY, THE COURT LET
15    IT IN; IT DIDN'T SAY THAT WAS NECESSARILY THE PROPER WAY OF       08:41
16    DOING IT, UNLESS I'M MISSING SOME LANGUAGE IN THERE.
17              MR. ROTH:  WELL, I THINK IMPLICIT THE COURT DID NOT
18    SAY THAT WAS -- DID NOT EXPLICITLY SAY THAT'S THE PROPER WAY TO
19    DO IT.
20              THE COURT:  IT WAS IMPLICIT, AND I RECKON THAT.         08:41
21              MR. ROTH:  THE FACTS WERE AS PRECISELY AS THEY ARE
22    HERE, AND THE EXACT SAME ARGUMENT WAS MADE BY THE PLAINTIFF.
23    THE COURT ALLOWED THE REPORT IN AS A REBUTTAL REPORT.  SO I
24    WOULD SAY, YOUR HONOR, THAT THE HOLDING OF STRAUS IS DIRECTLY
25    ON POINT ON THIS QUESTION.                                       08:41
```

1       **THE COURT:**  DO YOU WISH TO ADDRESS NOW -- WHERE THIS

2   TAKES ME, THEN, IS TO -- IS EXACTLY TO WHERE YOU'RE SUGGESTING,

3   IS THAT IF THE COURT, AS THE COURT DID IN STRAUS, FOR A MATTER

4   OF EQUITY, ALLOWS IN THE -- IN THIS CASE THE SURVEY, THEN

5   CERTAINLY, THE OTHER SIDE SHOULD BE ALLOWED TO SUBMIT THE          08:41

6   REBUTTAL TO THAT.

7       **MR. ROTH:**  YOUR HONOR, AS A MATTER OF FUNDAMENTAL

8   FAIRNESS -- CERTAINLY, AS WE ARGUED IN THE CONTEXT OF THE MEYER

9   REPORT, I WOULD AGREE WITH YOU HERE.  I THINK THERE ARE

10  PARTICULAR FACTS HERE THAT WEIGH AGAINST THAT, HOWEVER, AND        08:42

11  THAT IS THAT THE MANNER IN WHICH MATTEL HANDLED THE KIVITZ

12  REPORT -- AS THE COURT WILL RECALL, THIS WAS AN ISSUE THAT WAS

13  SQUARELY PRESENTED TO MATTEL WHEN WE SERVED MR. GRUCA'S REPORT

14  ON MARCH 17TH.  THEY IMMEDIATELY BEGAN A SURVEY.  THAT WAS FOUR

15  MONTHS AGO.  THEY WAITED FOUR MONTHS.  APPARENTLY, THE RESULTS,    08:42

16  AS INDICATED BY MR. KIDMAN TOWARD THE END OF THE HEARING, WERE

17  AVAILABLE TO MR. KIDMAN AS OF LATE MAY, EARLY JUNE.  IT IS NOW

18  LATE JULY.  I WOULD CONTRAST THAT WITH THE WAY WE HANDLED THE

19  MEYER REPORT.  WE UNDERSTOOD, GIVEN THE TIMING OF THE TRIAL,

20  THAT THE SUPPLEMENTAL REPORT SHOULD BE DISCLOSED IMMEDIATELY.      08:43

21  WE DID NOT WAIT FOR THE HEARING ON THE MATTER.  WE IMMEDIATELY

22  DISCLOSED THE REPORT.

23          THEY HAVE HAD THAT REPORT NOW FOR THREE WEEKS.  THEY

24  HAVE HAD AN OPPORTUNITY TO REVIEW IT AND RESPOND, AND THE COURT

25  HAS NOW PROVIDED THEM AN OPPORTUNITY TO RESPOND.                   08:43

1    THAT'S NOT THE WAY MATTEL HANDLED IT.

2    MATTEL DECIDED TO WAIT.  THEY DECIDED TO WAIT THROUGH

3  JUNE, THROUGH THE 1-A TRIAL, GET TO THE STAGE OF A VERDICT IN

4  1-B, AND THEN TELL US ABOUT THE REPORT.  WE THEN ASKED FOR THE

5  REPORT.  THEY SAID WE COULD HAVE IT.  WE HAVE ASKED A SECOND          08:43

6  TIME FOR THE REPORT.  WE FINALLY GOT IT YESTERDAY.

7    NOW WE'VE READ THE REPORT.  THE REPORT IS 37-40

8  PAGES.  IT'S PRIMARILY -- I'D SAY 29 OF THE 37 PAGES ARE A

9  CRITIQUE BY MR. KIVITZ OF WHAT MR. GRUCA DID.  IT IS A CRITIQUE

10  THEY COULD HAVE MADE THREE MONTHS AGO.  WE COULD HAVE HAD THE          08:44

11  OPPORTUNITY TO TAKE THE DEPOSITION OF MR. KIVITZ AND BE

12  PREPARED TO DEAL WITH IT.

13    NOW WE COULD BE SEEING THIS REPORT IMMEDIATELY; NOT

14  HAVE THE OPPORTUNITY TO TAKE A DEPOSITION, HAVE AN OPPORTUNITY

15  TO REVIEW WHAT IS A FAIRLY COMPLEX ISSUE.  SO I AGREE WITH THE          08:44

16  FUNDAMENTAL PRINCIPLE, AND I THINK HAD MATTEL COME FORTH, AS WE

17  DID WITH MR. MEYER -- THEY'VE HAD THREE WEEKS TO LOOK AT IT.

18  HAVE THEY OPERATED FAIRLY?  I WOULD AGREE WITH YOUR HONOR'S

19  PROPOSITION, THAT THEY LOST THAT CHANCE BY THE WAY THEY HANDLED

20  THE KIVITZ REPORT.                                                   08:44

21    SO, YOUR HONOR, I THINK, IN THIS CONTEXT, IT SIMPLY

22  IS NOT FAIR TO ALLOW THEM TO SERVE THAT REPORT.

23    **THE COURT:**  THANK YOU, COUNSEL.

24    **MR. ZELLER:**  FUNDAMENTALLY, IN THIS WHOLE REBUTTAL

25  ARGUMENT, MGA IS CONFUSING THE REQUIREMENTS OF THE COURT'S           08:44

```
 1   SCHEDULING ORDER AND DISCLOSURE REQUIREMENTS WITH THE BURDEN OF

 2   PRODUCTION AND GOING FORWARD.  THOSE ARE VERY DIFFERENT

 3   ANIMALS, AS THE COURT IS AWARE.  THE COURT'S SCHEDULING ORDER

 4   REQUIRED A PARTY TO PUT IN ITS EXPERT REPORT AS THE MATTERS ON

 5   WHICH IT BORE THE BURDEN OF PROOF.  NOT GOING FORWARD.          08:45

 6           SO, I MEAN, WHATEVER THE COURT DID IN TEXAS -- I

 7   MEAN, WE DON'T HAVE THE COURT'S SCHEDULING ORDER, NECESSARILY.

 8   IT'S THE COURT'S OWN INTERPRETATION OF ITS SCHEDULING ORDER,

 9   BASED UPON ALL OF THE CIRCUMSTANCES OF THE FACTS.  WE HAVE A

10   PARTICULAR SCHEDULING ORDER, THIS COURT'S ORDER, THAT QUITE     08:45

11   CLEARLY REQUIRED THE DISCLOSURE OF THIS MATTER AT THAT TIME.

12           AND I DO THINK THAT IN MANY RESPECTS, MGA IS TRYING

13   TO PLAY BOTH SIDES OF THIS.  AND I SAY THAT BECAUSE THE COURT

14   WILL RECALL WITH THE HOLLANDER REPORT, THEY MOVED TO EXCLUDE

15   IT, CLAIMING UNDER EXACTLY THE SAME CIRCUMSTANCES THAT WE       08:45

16   SHOULD NOT BE ALLOWED TO PUT IN THE HOLLANDER SURVEY.  AND THE

17   COURT AGREED WITH THAT POINT.  THIS IS JUST A CLASSIC

18   APPLICATION OF THE SAME RULING.  AND UNDER THAT RULING, THIS

19   REPORT IS OUT.  I JUST DON'T THINK THAT THERE'S ANY OTHER

20   ALTERNATIVE.                                                    08:46

21           NOW, IF THE COURT IS GOING TO LET IT IN, THEN

22   CERTAINLY WE'VE SAID, AS A MATTER OF FAIRNESS, 'PLEASE ALLOW US

23   TO PUT IN OUR RESPONSIVE EXPERT REPORT.'

24           AND WHILE I HEARD MR. ROTH TAKE ISSUE WITH HOW HE

25   THINKS WE HANDLED IT, I DON'T AGREE WITH THE COMPLETE          08:46
```

1  CHARACTERIZATION, BUT I'M NOT GOING TO QUIBBLE ABOUT SOME OF

2  THIS STUFF.  BUT LET ME PUT IT THIS WAY:  WE MOVED BEFORE THE

3  CLOSE OF 1-A FOR PERMISSION TO DO THIS, AS WE NEEDED TO.  I

4  DIDN'T HEAR MR. ROTH ARTICULATE ANY PREJUDICE, SO IF THEIR

5  REPORT COMES IN, CERTAINLY OUR EXPERT OUGHT TO.                    08:46

6         **THE COURT:**  HE DID INDICATE THAT THEY WOULD BE

7  PREJUDICED BY NOT BEING ABLE TO ADEQUATELY INVESTIGATE,

8  PROPOSE, PREPARE TO RESPOND TO THIS REPORT.

9         **MR. ZELLER:**  WE'RE OFF NEXT WEEK.  HE CAN BE DEPOSED.

10  THIS IS NOT EXACTLY THE WORLD'S MOST COMPLICATED ISSUE.  I        08:46

11  THINK THE RESOURCES OF SKADDEN AND MGA CAN MORE THAN ADEQUATELY

12  DEAL WITH THIS PARTICULAR EXPERT IN THE COURSE OF NEXT WEEK.

13  WHATEVER DISCOVERY THEY THINK THEY NEED, THEY CAN SEEK; WE'LL

14  PROVIDE; AND THEY CAN TAKE HIS DEPOSITION.

15         SO THAT'S WHY I SAY I DON'T REALLY HEAR AN                 08:47

16  ARTICULATION OF PREJUDICE.  THEY CLAIM THAT THEY NEED MORE

17  INFORMATION TO RESPOND, BUT BECAUSE OF THE SCHEDULE, THEY HAVE

18  ALL OF NEXT WEEK TO DO THAT.

19         **THE COURT:**  MR. ROTH?  MR. ZELLER DID RAISE A POINT

20  THAT I HAD WRITTEN DOWN HERE ON MY 'CON' SIDE ON THIS.  I KEEP    08:47

21  TWO -- AND I PUT DOWN 'HOLLANDER.'

22         HOW DO I RULE IN YOUR FAVOR ON THE HOLLANDER REPORT,

23  WHERE I EXCLUDED IT BECAUSE IT WAS NOT PROPERLY DISCLOSED, AND

24  NOT DO SO HERE?

25         **MR. ROTH:**  YOUR HONOR, I THINK BECAUSE OF THE          08:47

```
 1    FUNDAMENTAL POINT MADE AGAIN IN STRAUS.  THE OPINION

 2    ARTICULATED IN MR. GRUCA'S REPORT IS PROPER REBUTTAL.  THAT'S

 3    THE POINT OF STRAUS.

 4          THE OPINION ARTICULATED IN MR. HOLLANDER'S HAD

 5    SEVERAL DEFECTS, INCLUDING WHETHER OR NOT IT'S AN APPROPRIATE     08:48

 6    SORT OF EVIDENCE TO ADDRESS THE COPYRIGHT ISSUE PRESENTED BY

 7    THAT REPORT.  BUT BEYOND THAT, THEY CITED NO AUTHORITY THAT

 8    THAT REPORT IS PROPER REBUTTAL.  THEY DIDN'T TRY TO ARGUE THAT

 9    IN RESPONSE.  SO I THINK THERE IS A FUNDAMENTAL DISTINCTION IN

10    THAT REGARD.                                                     08:48

11          IN TERMS OF THE SCHEDULING ORDER -- YOU KNOW, I

12    ACTUALLY READ, BECAUSE IT SETS FORTH IN THE STRAUS CASE WHAT

13    THE SCHEDULING WAS IN THAT CASE.  IT'S THE SAME THING THERE AS

14    HERE.

15          AND, FINALLY, THE COURT HAS INDICATED THERE IS            08:48

16    PREJUDICE HERE.  THE PREJUDICE IS FORCING US AT THE LAST MINUTE

17    TO DEAL WITH THIS REPORT.  AND IT'S PREJUDICE INTENTIONALLY

18    CREATED BY THEM, INTENTIONALLY.  THEY'VE HAD THE REPORT, THE

19    RESULTS, SINCE THE END OF MAY, EARLY JUNE.  THEY WAITED ON

20    PURPOSE FOR THIS PRECISE REASON.                                08:48

21          I THINK, FOR THAT REASON, THEY SHOULD NOT BE

22    PERMITTED TO SUBMIT THE REPORT.

23          THE COURT:  THEY WAITED, BUT ALSO SINCE THE END OF

24    MAY, THERE HAS BEEN A PENDING MOTION IN LIMINE BEFORE THIS

25    COURT TO EXCLUDE THE GRUCA REPORT.  SO THAT'S...               08:49
```

 1          **MR. ROTH:**  YOUR HONOR, AGAIN, CONTRAST.  WITH RESPECT

 2   TO MR. MEYER, WE DID NOT HAVE A RULING FROM THE COURT THAT WE

 3   WOULD BE PERMITTED TO SUBMIT THAT REPORT.  NEVERTHELESS, GIVEN

 4   THE TIMING CONCERN, WE IMMEDIATELY GAVE IT TO THEM.

 5          **THE COURT:**  AND YOU'RE TO BE COMMENDED FOR DOING SO.      08:49

 6          THANK YOU, COUNSEL.

 7          MR. ZELLER, ANYTHING FURTHER?

 8          **MR. ZELLER:**  THERE IS NO DISTINCTION BETWEEN THE

 9   HOLLANDER SITUATION AND THIS ONE.

10          WHAT MR. ROTH IS ARTICULATING IS EXACTLY THE ARGUMENT      08:49

11   THAT MR. KIDMAN ARGUED IN OPPOSITION TO THEIR MOTION *IN LIMINE*

12   TO EXCLUDE THE HOLLANDER REPORT.  GRUCA REBUTS NOTHING NOW.  HE

13   SAYS IN HIS REPORT QUITE EXPLICITLY WHAT HE IS REFUTING ARE

14   MATTERS RAISED BY SCOTT THAT THIS COURT HAS NOW SAID SHE'S NOT

15   GOING TO TESTIFY ON.  IT'S EXACTLY THE SAME SCENARIO.  WHAT      08:50

16   GRUCA PURPORTS TO REBUT IS NOW OUT OF THE CASE.  AND THAT MEANS

17   HE'S NO LONGER A -- IT'S NO LONGER PROPER TESTIMONY.

18          IT'S EXACTLY THE SAME ARGUMENT.

19          NOW, IN TERMS OF THE -- WE'LL CALL IT THE EQUITY OF

20   THE SITUATION ABOUT OUR REPORT -- THE FACT IS THAT MR. ROTH IS      08:50

21   REALLY TALKING ABOUT SURVEY RESULTS.  AS THE COURT IS AWARE,

22   SURVEY RESULTS ARE RAW DATA.  I MEAN, THAT'S NOT THE END OF THE

23   REPORT.  IT'S NOT LIKE WHEN YOU CONDUCT A SURVEY, YOU END UP

24   WITH ONE PIECE OF INFORMATION AND THAT'S YOUR REPORT.  I MEAN,

25   YOU HAVE TO ANALYZE THE DATA; YOU HAVE TO PUT TOGETHER THE      08:50

1   REPORT.  AND THERE WAS NOT DELAY.  I THINK THE COURT KNOWS WHAT

2   THE CHRONOLOGY IS HERE.  AND WE DID MOVE TO EXCLUDE GRUCA, AND

3   WE MOVED THEN, PRIOR TO THE CLOSE OF PHASE 1-A, TO SERVE THIS

4   REPORT.  AND THE COURT CAN EVEN SEE FROM THE DATING OF IT -- I

5   MEAN, THE REPORT ITSELF WAS ONLY DONE RECENTLY, BECAUSE IT DOES   08:51

6   TAKE TIME TO DO THESE THINGS.

7         SO I ALSO DID NOT HEAR FROM MGA SOME INABILITY TO GET

8   WHATEVER INFORMATION THEY NEED ABOUT OUR EXPERT NEXT WEEK.

9         **THE COURT:**  ALL RIGHT.  I'M GOING TO COME BACK TO

10  THIS ONE.                                                        08:51

11        THE LAST ONE IS THE MIDDLETON; AND THAT IS MOTION

12  *IN LIMINE* NUMBER 13.

13        GOING THROUGH THE MIDDLETON REPORT, IT IS CLEAR THAT

14  DEBORAH MIDDLETON SHOULD BE ABLE TO TESTIFY.  I AM DISINCLINED

15  TO ALLOW HER TO TESTIFY AS AN EXPERT.  I BELIEVE SHE'S MORE      08:51

16  APPROPRIATELY CHARACTERIZED AS A FACT WITNESS.

17        I HAVE CONCERNS AS TO WHAT THIS WOULD DO BY

18  DESIGNATING HER AS AN EXPERT.

19        AT THE SAME TIME -- AND THIS IS BASED ON MY READING

20  OF THE REPORT -- I WILL GIVE MGA LEAVE, IF THEY WISH, TO CALL    08:51

21  MS. MIDDLETON OUTSIDE THE PRESENCE OF THE COURT, AND THROUGH

22  EXAMINATION, TRY TO ESTABLISH HER CREDENTIALS AS AN EXPERT.

23  BUT I THINK THE TESTIMONY THAT SHE OFFERS IS ESSENTIALLY

24  FACT-BASED.  AND ANY MORE THAN ANY OF THE OTHER WITNESSES IN

25  THIS CASE WHO HAVE BEEN CALLED BY MATTEL AND MGA COULD BE        08:51

1    CHARACTERIZED AS EXPERTS IN THEIR RESPECTIVE FIELDS -- I DON'T

2    MEAN TO SUGGEST THAT AS AN MGA EMPLOYEE SHE'S NOT A VERY

3    EXTRAORDINARILY TALENTED EMPLOYEE ANY MORE THAN BOB ECKERT, FOR

4    EXAMPLE, OR ISAAC LARIAN, ARE EXTREMELY TALENTED CEO'S.  BUT

5    THEY DON'T GET TO BE DESIGNATED AS EXPERTS IN BUSINESS AND        08:53

6    OPINE WHETHER THEIR BUSINESS PRACTICES ARE GOOD OR BAD OR RIGHT

7    OR WRONG OR ANYTHING ELSE SIMPLY BECAUSE OF THEIR REMARKABLE

8    CREDENTIALS.

9         I THINK THAT'S BASICALLY WHERE WE'RE GOING WITH

10   DEBORAH MIDDLETON.  I THINK IT'S BEST THAT SHE IS BEST CALLED     08:53

11   AS A FACT WITNESS.  BUT I WILL GIVE LEAVE, IF VOIR DIRE WANTS

12   TO BE CONDUCTED, BY BOTH SIDES OUTSIDE THE PRESENCE OF THE

13   JURY.

14        **MR. HANSEN:**  GOOD MORNING, JUDGE.

15        WHAT WE WOULD ASK IS -- I THINK WE'LL BE ABLE TO            08:53

16   ESTABLISH TO YOUR HONOR'S SATISFACTION HER EXPERTISE.  I GUESS

17   THE ONLY THING THAT WE WOULD REQUEST IS THAT MR. LOETZ, THEIR

18   COUNTER EXPERT ON THIS PACKAGE ART ISSUE, ALSO BE VOIR DIRED IN

19   ADVANCE FOR HIS EXPERTISE.

20        **THE COURT:**  WELL, LET ME ASK YOU ABOUT -- IN THE AREA    08:53

21   OF PACKAGING; IS THAT CORRECT?

22        **MR. HANSEN:**  YES.

23        **THE COURT:**  ADDRESS THE COURT'S CONCERN ABOUT HER

24   STATUS AS AN EMPLOYEE AT MGA AND HER -- THIS IS NOT YOUR

25   TRADITIONAL EXPERT, SOMEBODY HIRED TO RETAIN AN EXPERT,          08:54

1    UNASSOCIATED, AND, AT LEAST THEORETICALLY, UNCONNECTED TO THE

2    LITIGATION, WHO IS CALLED IN TO HELP EDUCATE THE JURY ON A

3    PARTICULAR POINT.  THIS IS AN MGA EMPLOYEE.  NO QUESTION, VERY

4    TALENTED.  AND THE VOIR DIRE THAT I'M FOCUSING ON IS NOT HER

5    CREDENTIALS.                                                    08:54

6          LIKE I SAY, ISAAC LARIAN IS AN EXTRAORDINARILY

7    TALENTED CEO.  BOB ECKERT IS AN EXTRAORDINARILY TALENTED CEO.

8    I WOULDN'T PERMIT THEM TO BE QUALIFIED AS EXPERTS IN BUSINESS.

9          AND I COULD GO DOWN THE LIST.  LILY MARTINEZ, AN

10   EXTREMELY TALENTED DESIGNER.  CARTER BRYANT, AN EXTREMELY       08:54

11   TALENTED DESIGNER.  WE'RE NOT DESIGNATING THOSE INDIVIDUALS AS

12   EXPERTS.  THOSE ARE PEOPLE INTIMATELY INVOLVED IN THE

13   LITIGATION.  THEY WORK FOR THE COMPANIES AND THEY ARE CERTAINLY

14   ABLE TO OFFER THEIR FACTUAL OPINION -- NOT THE FACTUAL

15   OPINION -- THEIR FACTUAL TESTIMONY CONCERNING WHAT HAPPENED.    08:55

16         BUT I THINK IT'S A VERY DANGEROUS ROAD TO GO DOWN TO

17   DESIGNATE AN EMPLOYEE OF ONE PARTY OR THE OTHER AS AN EXPERT

18   UNDER THESE CIRCUMSTANCES.

19         **MR. HANSEN:**  I THINK THE LAW THAT WE CITE IS FAIRLY

20   CLEAR THAT THE FACT THAT SOMEONE IS AN EMPLOYEE DOES NOT        08:55

21   PRECLUDE THEM FROM OFFERING EXPERT TESTIMONY AS WELL.  I REALLY

22   DON'T THINK THAT'S DISPUTED.

23         MS. MIDDLETON HAS, AS I MENTIONED ON THE PHONE ON

24   MONDAY, YOUR HONOR -- MS. MIDDLETON HAS AN ART DEGREE FROM

25   COLLEGE.  SHE ALSO SPENT EXTENSIVE TIME WORKING IN THE          08:55

```
 1   ANIMATION INDUSTRY, AND THEN WITH AN AGENCY SPECIFICALLY IN THE
 2   AREA OF PACKAGE ART FOR A NUMBER OF YEARS, BEFORE COMING TO MGA
 3   TO WORK IN PACKAGE ART.  SO HER EXPERTISE IN TERMS OF
 4   UNDERSTANDING PACKAGE ART IS NOT JUST SOMETHING SHE LEARNED IN
 5   HER FACT CAPACITY AT MGA.  SHE ALSO HAS A GENERAL AREA OF          08:56
 6   EXPERTISE IN TERMS OF PACKAGE ART, IN TERMS OF ART, IN TERMS OF
 7   THE TYPE OF THINGS THAT SHE WOULD BE DOING HERE, WHICH IS
 8   TAKING A LOOK AND MAKING SORT OF ARTIST TYPE OF COMPARISONS
 9   THAT THEIR EXPERT, MR. LOETZ, ALSO MAKES.  MR. LOETZ HAS A VERY
10   SIMILAR -- WE CAN DEBATE WHO'S BETTER OR WHO'S WORSE --           08:56
11          THE COURT:  I UNDERSTAND THAT, BUT THE CONCERN I HAVE
12   IS THE EMPLOYEE.  AND I UNDERSTAND THAT THERE'S NO LEGAL
13   PROHIBITION AGAINST IT.  I JUST THINK IN THE CONTEXT OF THIS
14   CASE, IN THE CONTEXT OF THE ACTUAL REPORT AND HER ROLE AT MGA,
15   THE COURT HAS -- THIS IS MORE OF A DAUBERT CONCERN THAN          08:56
16   ANYTHING ELSE.
17          MR. HANSEN:  IN TERMS OF THE DAUBERT ISSUES, I THINK
18   THAT THE STANDARDS THAT ARE BEING IMPLIED IN TERMS OF HOW THE
19   TWO EXPERTS, LOETZ AND MIDDLETON, GO ABOUT DOING THINGS -- I
20   THINK ONCE YOU LOOK AT THE ACTUAL STANDARDS THAT ARE BEING       08:56
21   USED, BOTH BY MS. MIDDLETON AND MR. LOETZ, YOU WILL FIND -- I,
22   FRANKLY, THINK THAT MR. LOETZ'S STANDARD IS MORE SUBJECT TO A
23   DAUBERT MOTION THAN MS. MIDDLETON'S, BUT WE CAN LEAVE THAT FOR
24   ANOTHER DAY.
25          THE COURT:  AGAIN, I'M NOT SO MUCH FOCUSING ON            08:57
```

1    THEIR -- LET ME HEAR FROM MATTEL.

2         **MR. HANSEN:**  ALL I WOULD SAY, YOUR HONOR, IS THAT I

3    THINK THE FACT THAT SHE'S AN EMPLOYEE WOULD GO, PERHAPS, TO

4    CROSS-EXAMINE AND THE WEIGHT THAT SHE HAS SOME BIAS, BUT NOT

5    HER EXPERTISE.                                                        08:57

6         **THE COURT:**  MR. ZELLER?

7         **MR. ZELLER:**  I THINK WE'VE SAID -- AND I THINK THE

8    BASE LINE HERE IS, SHE CAN TESTIFY AS A FACT WITNESS.  AND THE

9    VERY FACT THAT MGA FIGHTS ON THIS, AND THE WAY THAT IT IS,

10   SUGGESTS THAT THE VERY THING THAT WE'RE CONCERNED ABOUT, WHICH       08:57

11   IS THAT THE COURT IS GOING TO BASICALLY GIVE IT SOME IMPRIMATUR

12   TO A FACT WITNESS AS AN EXPERT AND TELL THE JURY THAT THIS

13   PERSON IS AN EXPERT AND THEN THEY'RE GOING TO ARGUE

14   MS. MIDDLETON, AN EXPERT.  I MEAN, THAT IS THE WHOLE CRUX OF

15   THIS.  THAT'S OUR VERY CONCERN.                                      08:57

16        **THE COURT:**  BUT ADDRESS MR. HANSEN'S -- THE LAW IS

17   CLEAR THAT IT'S NOT REQUIRED BUT PERMISSIBLE FOR THE COURT, IN

18   ITS DISCRETION, TO ALLOW AN EMPLOYEE THAT'S NOT

19   DISQUALIFYING -- WHY SHOULDN'T THIS JUST GO TO THE WEIGHT?  YOU

20   CAN STAND UP IN CLOSING ARGUMENT OR MR. QUINN OR MR. PRICE CAN,      08:58

21   AND SAY, 'YOU HEARD THEIR EXPERT.  THEY DIDN'T EVEN FIND THEIR

22   OUTSIDE EXPERT.  THEY GO TO AN EMPLOYEE WHO WORKS FOR THE

23   COMPANY, WHO HAS A VESTED INTEREST IN THE OUTCOME OF HER

24   TESTIMONY.'

25        ISN'T THAT A VERY -- THAT MIGHT BE A VERY POWERFUL              08:58

```
 1   ARGUMENT TO MAKE, BUT IS THAT A REASON TO EXCLUDE HER AS AN

 2   EXPERT?

 3            MR. ZELLER:  I THINK THOSE ARE SOMEWHAT DISTINCT

 4   POINTS.  BECAUSE ON THE ONE HAND, I COMPLETELY AGREE, THERE IS

 5   NO DISPUTE THAT AN EXPERT CAN BE AN EMPLOYEE.  THERE'S NO          08:58

 6   PROHIBITION AGAINST IT.  AND THAT IS NOT OUR CONCERN.  OUR

 7   CONCERN IS, HOW IS THAT PERSON CHARACTERIZED TO THE JURY BY THE

 8   COURT?  AND THERE'S NO QUESTION THAT WHEN WE'RE IN THAT AREA,

 9   THAT'S A MATTER OF THE COURT'S DISCRETION.  THAT'S TRUE, EVEN

10   IF, SAY, FOR EXAMPLE, THERE'S AN INDEPENDENT EXPERT APPOINTED      08:58

11   BY THE COURT UNDER RULE 706.  THE COURT CAN TELL THE JURY THAT

12   PERSON IS AN INDEPENDENT EXPERT.  THE COURT CAN TELL THEM

13   NOTHING.

14            THE COURT:  ISN'T IT OBVIOUS, THOUGH, BASED ON

15   WHOEVER DOES THE EXAMINATION OF MS. MIDDLETON, THAT SHE'S         08:59

16   CLEARLY NOT AN OUTSIDE RETAINED EXPERT OR A COURT-APPOINTED

17   EXPERT OR ANY OTHER KIND OF EXPERT, THAT SHE IS SIMPLY AN

18   EMPLOYEE WHO, BECAUSE OF HER EXPERIENCE AND BACKGROUND, IS

19   BEING PERMITTED TO OFFER OPINIONS, AND THE JURY WILL BE

20   INSTRUCTED, LIKE ANY OTHER EXPERT, TO ASSIGN WHAT WEIGHT THEY     08:59

21   BELIEVE IS APPROPRIATE TO THAT OPINION?

22            MR. ZELLER:  I THINK, WHILE THE DEVIL IS IN THE

23   DETAILS OF THAT KIND OF MESSAGE TO THE JURY -- I THINK THAT

24   IS -- I THINK THAT MAKES A LOT OF SENSE.  IF THE COURT IS GOING

25   TO SIMPLY SAY, 'LOOK, SHE'S ALLOWED TO OFFER AN OPINION, BUT      08:59
```

1  NOT SAYING SHE IS DESIGNATED AS AN EXPERT' -- I MEAN,

2  OBVIOUSLY, EVEN LAY OPINION CAN BE ALLOWED UNDER CERTAIN

3  CIRCUMSTANCES. I MEAN, THE COURT DOESN'T HAVE TO CHARACTERIZE

4  IT. NEITHER DOES MGA.

5          **THE COURT:** THE COURT HAS REALLY NOT DONE -- I'VE      08:59

6  TRIED NOT TO BE TOO OVER DRAMATIC IN DESIGNATING ANYBODY IN

7  THIS CASE. SIMPLY HOW IT'S BEEN DONE IS, COUNSEL HAS

8  INDICATED, 'YOUR HONOR, WE DESIGNATE THIS PERSON AS AN EXPERT,'

9  STATE THE SUBJECT MATTER, AND THE COURT ASKS IF THERE'S AN

10 OBJECTION, AND IF THERE'S NOT, WE MOVE FORWARD. IT'S NOT LIKE   09:00

11 I'M MAKING A GRAND ANNOUNCEMENT OR AN IMPRIMATUR OF ANY SORT.

12         **MR. ZELLER:** I THINK THAT'S FAIR ENOUGH. WHAT I

13 THINK IS THE DIFFERENCE HERE, HOWEVER, IS THAT IN MOST OF THESE

14 INSTANCES, AND CERTAINLY THE INSTANCES THAT HAVE BEEN FACED SO

15 FAR, THERE IS NO DISPUTE ABOUT THAT PERSON'S ABILITY TO BE AN    09:00

16 EXPERT. THAT ISN'T ANYTHING -- NO ONE HAD SAID, 'I WANT TO

17 VOIR DIRE THE EXPERT. I'M GOING TO CHALLENGE HIS CREDENTIALS.'

18         **THE COURT:** WE HAVE HAD CHALLENGES TO EXPERTS OFFERED

19 IN THIS CASE.

20         **MR. ZELLER:** ABSOLUTELY. BUT NOT IN FRONT OF A JURY.  09:00

21 I'M SAYING, ONCE SOMEONE IS UP ON THE STAND -- BUT THE PRACTICE

22 IN THIS CASE SO FAR IS, ONCE AN EXPERT IS UP ON THE STAND --

23 AND YOU'RE RIGHT, THE COURT ISN'T MAKING SOME GRAND

24 ANNOUNCEMENT. BUT CERTAINLY, IN THOSE INSTANCES, IT'S JUST NOT

25 THAT DISPUTED. WE'RE NOT GETTING INTO A SITUATION WHERE WE ARE   09:01

```
 1   HAVING THOSE FIGHTS IN FRONT OF THE JURY.  THAT'S OUR CONCERN.
 2   OUR CONCERN IS DRIVEN ENTIRELY BY THE COURT'S IMPRIMATUR ON
 3   THIS PARTICULAR EMPLOYEE AND BASICALLY SAYING, 'WELL, HERE'S
 4   SOMEBODY FROM MGA WHO IS AN EXPERT.'
 5        THE COURT:  BUT YOUR CONCERN IS NOT BEING DRIVEN BY A    09:01
 6   CONCERN ABOUT HER CREDENTIALS.
 7        MR. ZELLER:  NO, THAT'S NOT CORRECT, YOUR HONOR.  WE
 8   ARE CONCERNED ABOUT THAT.  AND WE DO WANT A DAUBERT HEARING, IN
 9   ADDITION, IF THE COURT IS INCLINED TO GIVE SOME SORT OF
10   INDICATION THAT SHE IS EITHER AN EXPERT OR, PERHAPS, EVEN JUST  09:01
11   THAT SHE'S ALLOWED TO OFFER OPINIONS BEYOND WHAT A NORMAL
12   WITNESS WOULD BE, BECAUSE WE THINK HER ANALYSIS IS EXTREMELY
13   FUZZY AND WE DON'T THINK THAT IT HAS THE KIND OF RIGOR THAT
14   REALLY IS WARRANTED.
15        I THINK THE COURT'S INITIAL REACTION HERE IS THE    09:01
16   RIGHT ONE, WHICH IS, WE CAN HAVE A HEARING; WE CAN HEAR FROM
17   HER; WE CAN SEE WHAT HAPPENS.  THE COURT DID THAT EVEN WITH LAY
18   OPINION, IN THE CASE OF CASSIDY PARK, FOR EXAMPLE; AND I THINK
19   THAT'S REALLY A FAIR PROCEDURE OF DOING IT.  IN THIS PARTICULAR
20   CASE, WE CAN HEAR WHAT SHE HAS TO SAY; WE CAN HEAR WHAT HER    09:02
21   ANALYSIS IS; AND THEN I THINK WE CAN GO FROM THERE AS TO WHAT
22   SHE IS ALLOWED TO TESTIFY ON AND HOW SHE IS CHARACTERIZED TO
23   THE JURY.
24        THE COURT:  VERY WELL.  THANK YOU, COUNSEL.
25        I AM CONVINCED BY MR. HANSEN THAT THIS IS MORE    09:02
```

```
 1   APPROPRIATE FOR ARGUMENT THAN IT IS FOR A MATTER OF THE COURT

 2   TO PRECLUDE IT OUTRIGHT, SO THE MOTION IN LIMINE IS DENIED.

 3            HOWEVER, I WILL GIVE LEAVE TO MATTEL TO -- AS I WILL

 4   TO MGA, TO BOTH PARTIES -- WITH RESPECT TO ANY OF THE EXPERTS

 5   HEREIN, TO THE EXTENT THAT THEY WANT TO CONDUCT A VOIR DIRE          09:02

 6   EITHER IN THE MORNING OR DURING THE LUNCH BREAK OR AT THE END

 7   OF THE DAY, HAVE YOUR EXPERT HERE, COORDINATE WITH THE OTHER

 8   SIDE, AND THE COURT WILL DO WHAT IT DID WITH MR. TONNER, WITH

 9   MS. PARK, AND WE'LL HAVE -- I'LL ALLOW THAT VOIR DIRE TO GO ON

10   OUTSIDE THE PRESENCE OF THE JURY.                                   09:02

11            IT'S 9:00.  I TRUST THE JURORS ARE HERE.  I DID WANT

12   TO INTERVIEW THE ONE JUROR IN CHAMBERS CONCERNING THAT NOTE.

13   I'M ALSO GOING TO BE MAKING AN INQUIRY OF THE OTHER JURORS IN

14   TERMS OF HARDSHIP.  I'M HOPING THAT WE STILL HAVE ALL TEN

15   TOGETHER WITH US AS OF THIS MORNING.  AND THEN WE'LL PROCEED         09:03

16   WITH THE TRIAL.  BOTH SIDES ARE LIMITED TO -- BOTH SIDES HAD

17   INDICATED THE OPENING STATEMENTS WOULD BE ABOUT TWO HOURS, AND

18   I'D REALLY LIKE TO KEEP TO THAT, IF POSSIBLE.

19            WHAT I'D LIKE TO DO IS HAVE THE -- WE'LL GO STRAIGHT

20   THROUGH WITH AN OPENING STATEMENT FOR TWO HOURS, THEN WE'LL         09:03

21   TAKE A BREAK; AND THEN WE'LL DO THE OTHER OPENING STATEMENT.

22   I'LL GET YOU THE RULING ON THE GRUCA MOTION IN LIMINE AT THE

23   BREAK, PROBABLY.

24            MR. ZELLER:  ONE THING WE WOULD LIKE THE COURT TO

25   RESOLVE PRIOR TO OPENING STATEMENTS IS THE MOST RECENT              09:03
```

```
 1   HONG KONG MOTION.

 2            THE COURT:  YES.

 3            I'VE RECEIVED MATTEL'S OPPOSITION, BUT FOR WHATEVER

 4   REASON, I HAVEN'T RECEIVED MGA'S.

 5            IF SOMEONE COULD GIVE ME A...                        09:04

 6            MR. NOLAN:  WE FAXED THAT TO CHAMBERS YESTERDAY AT

 7   NOON.

 8            THE COURT:  WHAT I HAVE -- I RECEIVED THE REPORTS --

 9   OH, WAIT A SECOND.  I'M SORRY.  I DO.

10            MR. NOLAN:  OKAY.                                    09:04

11            THE COURT:  I DO HAVE THEM.  I HAVEN'T READ THEM.

12   I'M GOING TO HAVE TO TAKE A LOOK AT THEM.

13            MR. NOLAN:  YOUR HONOR, WITH RESPECT TO THAT AND A

14   COUPLE OF OTHER MATTERS IN -- THE RULES OF PROTOCOL IN THE

15   FIRST TRIAL WITH OPENING STATEMENTS WAS THAT IF THERE WERE    09:04

16   OBJECTIONS TO VARIOUS SLIDES --

17            THE COURT:  IT'S NOT GOING TO BE USED, THAT'S

18   CORRECT.

19            MR. NOLAN:  BECAUSE WE DID LODGE OBJECTIONS THIS

20   MORNING WITH MR. PRICE WITH RESPECT TO THE USE OF A NUMBER    09:04

21   GRAPHICS AND EXHIBITS.  AND HE HAS ALSO OBJECTED TO OURS.  AND

22   SO FOR PURPOSES OF OPENING STATEMENT, WE'LL BE FREE TO USE

23   THOSE WHERE THERE'S NO OBJECTION, AND THEN DEAL WITH THESE

24   LATER ON.

25            THE COURT:  THAT'S CORRECT.                          09:04
```

1          **MR. PRICE:**  YOUR HONOR, FIRST, I'D LIKE TO CONSULT

2     MR. NOLAN AS TO SPECIFIC SLIDES, BUT MOST OF THEM RELATE TO A

3     VERY IMPORTANT ARGUMENT IN THE CASE.  THAT IS THE HONG KONG

4     ISSUE.

5          IT RELATES TO DOCUMENTS WHICH WILL BE COMING INTO          09:05

6     EVIDENCE.  IT'S A KEY PART OF OUR CASE.

7          **THE COURT:**  THESE ARE NOT LENGTHY BRIEFS BY DESIGN.

8     I ASKED -- LET ME TAKE THESE UP -- LET'S TAKE CARE OF THIS

9     JUROR ISSUE FIRST, AND THEN I'LL TAKE THESE UP.

10         **MR. NOLAN:**  DO YOU WANT TO DO THAT IN CHAMBERS,          09:05

11    YOUR HONOR?

12         **THE COURT:**  YES, WE'RE GOING TO DO THE JUROR ISSUE IN

13    CHAMBERS.

14         WE'RE GOING TO RECESS NOW.  WE'LL TAKE THE JUROR

15    ISSUE UP IN CHAMBERS.  I'LL TAKE A LOOK AT THESE TWO BRIEFS.      09:05

16    I'LL RULE ON THIS.  I DO UNDERSTAND THAT YOU WANTED TO HAVE

17    THAT FOR YOUR OPENING STATEMENT.

18         ARE THERE ANY OTHER ISSUES?

19         **MR. PRICE:**  THERE'S ONE OTHER ISSUE WE WANTED TO

20    FRONT WITH THE COURT, AND MR. NOLAN POINTED OUT WHEN WE SHOWED    09:0

21    HIM THE SLIDES.  ONE OF THE THINGS WE DISCUSSED IN THE OPENING

22    IS MR. LARIAN'S NET WORTH, OR WE THINK WE NEED TO DISCUSS THAT,

23    BECAUSE WE'RE IN A PHASE NOW WHERE PUNITIVE DAMAGES IS AN

24    ISSUE.  I THINK THERE ARE CASES SAYING IT'S ERROR NOT TO PUT IN

25    THE NET WORTH OF THE PERSON AGAINST WHOM YOU'RE TRYING TO GET     09:0

1   PUNITIVE DAMAGES.

2        **THE COURT:**  YOU'VE RECEIVED THE FINANCIAL INFORMATION

3   YOU REQUESTED; CORRECT?

4        **MR. PRICE:**  I DON'T BELIEVE WE HAVE.  WE'RE BASING

5   THE EVIDENCE ON AN EXHIBIT WHICH WE RECEIVED IN DISCOVERY,                    09:06

6   WHICH DOES PURPORT TO STATE MR. LARIAN'S NET WORTH.

7        SO AT THIS POINT, WE'RE RELYING ON THAT.

8        **MR. ZELLER:**  THAT'S CORRECT.

9        **THE COURT:**  I THOUGHT I INDICATED THAT I WANTED TO

10  HAVE THOSE EXHIBITS TODAY.                                                    09:06

11       VERY GOOD.  ALL RIGHT.  FAIR ENOUGH.

12       **MR. NOLAN:**  COULD I BE HEARD ON THAT POINT?

13       **THE COURT:**  YOU MAY.

14       **MR. NOLAN:**  BECAUSE IT'S NOT AS SIMPLE AS MR. PRICE

15  HAS SAID.  THOSE CASES DO NOT INCLUDE UNIQUE SITUATIONS THAT                  09:06

16  ARE PRESENT HERE.  AND THESE ARE ISSUES THAT WE'VE ADDRESSED IN

17  THE JMOL MOTION.  TO THE EXTENT THAT MR. LARIAN HAS ANY

18  EXPOSURE TO A PUNITIVE DAMAGE AWARD, WE RESPECTFULLY SUBMIT --

19  AND I THINK THIS IS PRETTY CLEAR UNDER THE LAW -- THAT IT ONLY

20  GOES TO THE STATE LAW CLAIMS, AND THAT THE POTENTIAL DAMAGE                   09:0

21  AMOUNT IN THE STATE LAW CLAIMS CANNOT BE DUPLICATIVE OR SIMILAR

22  TO THE COPYRIGHT DAMAGES.  OTHERWISE, IT WOULD HAVE BEEN

23  SUPERSEDED OR PREEMPTED BY THE COPYRIGHT ACT.

24       THOSE DAMAGES, THEN, ARE REALLY LIMITED IN FASHION

25  AND AMOUNT TO AN EXTENT THAT WE WOULD SUGGEST -- IN FACT TO                   09:0

1    SUCH A DE MINIMIS AMOUNT, THAT IN RESISTING REMOVAL TO THE

2    FEDERAL COURT, MATTEL CONTENDED THAT THOSE DAMAGES COULD NOT

3    EXCEED $75,000.

4            **THE COURT:**  THAT'S WITH RESPECT TO COMPENSATORY

5    DAMAGES.  AND I UNDERSTAND YOUR ARGUMENT THERE.                          09:07

6            HOW DOES THAT RELATE TO THE PUNITIVE DAMAGE AWARD?

7            I UNDERSTAND THE SUPREME COURT HAS SPOKEN TO THIS

8    QUITE RECENTLY, BUT STILL, AS I UNDERSTAND IT, THERE'S NO LIMIT

9    ON PUNITIVE DAMAGES.  THERE'S NO SET LIMIT GOING INTO THE

10   ARGUMENT.  I KNOW IT HAS TO BE BASED ON EVIDENCE AND THE              09:08

11   FACTORS SET FORTH.

12           **MR. NOLAN:**  RIGHT.  BUT UNDER THE STATE FARM ANALYSIS

13   AND OTHER SUPREME COURT CASES, INCLUDING ONES THAT I'M SURE THE

14   COURT IS WELL FAMILIAR WITH, THE DUE PROCESS CONCERNS ARE

15   EXPRESSED IN MULTIPLES.  AND MY POINT HERE IS THAT IF THE BASE        09:08

16   AMOUNT THAT YOU'RE GOING TO BE USING AS A MEASURING DEVICE FOR

17   THE MULTIPLE THAT MIGHT BE ALLOWED, WE ARE STILL NOT TALKING

18   ABOUT A SIGNIFICANT SUM OF MONEY, SUCH THAT WE BELIEVE --

19           **THE COURT:**  I UNDERSTAND THAT.  THAT'S IN TERMS OF

20   THE AMOUNT OF THE AWARD ITSELF.  BUT ONE OF THE IMPORTANT             09:08

21   FACTORS FOR ANY JURY TO CONSIDER IN AWARDING PUNITIVE DAMAGES

22   IS THE NET WORTH OF WHATEVER ENTITY OR PERSON IT IS THAT

23   THEY'RE CONSIDERING IMPOSING THE PUNITIVE DAMAGES ON.

24           REGARDLESS OF WHERE THEY COME OUT, THAT IS, FROM ALL

25   OF THE AUTHORITY THAT I'VE SEEN, CONSISTENTLY A RELATIVE             09:09

```
 1    FACTOR.
 2              MR. NOLAN:  YOUR HONOR, RESPECTFULLY -- AND I'D LIKE
 3    TO MAYBE BRIEF THIS ISSUE WITH THE COURT -- THOSE CASES DO TALK
 4    ABOUT WHERE THERE'S A SITUATION WHERE THE RANGE OF A PERSON'S
 5    NET WORTH FAR EXCEEDS ANY AWARD THAT COULD POSSIBLY --            09:09
 6              THE COURT:  DO YOU HAVE ANY AUTHORITY ON THAT POINT?
 7              MR. NOLAN:  I'M GOING TO TRY TO PULL CASES ON THAT.
 8              BECAUSE, OTHERWISE, YOUR HONOR --
 9              THE COURT:  DO YOU HAVE ANY AUTHORITY RIGHT NOW?
10              NOW WOULD BE THE TIME.                                  09:09
11              MR. NOLAN:  I DO NOT HAVE AUTHORITY ON THAT POINT,
12    YOUR HONOR.
13              BUT I CAN SAY THAT A SITUATION WHERE WE COULD
14    STIPULATE THAT MR. LARIAN'S NET WORTH WOULD BE SUFFICIENT TO
15    COVER --                                                         09:09
16              THE COURT:  THAT'S NOT THE POINT, COUNSEL.
17              THE POINT IS FOR A JURY, IN A PUNITIVE DAMAGES
18    CASE -- I'M PRETTY SURE YOU WILL SEE THAT THE LAW IS IN ACCORD
19    WITH THIS -- IT'S THE OBLIGATION OF A JURY TO CONSIDER THE
20    TOTAL NET WORTH OF THE ENTITY OR THE DEFENDANT IN WHICH THEY     09:09
21    ARE CONSIDERING THE PUNITIVE DAMAGES AND THEY MUST MEASURE THAT
22    AS A PERCENTAGE.  IT MAY BE ONE PERCENT.  IT MAY BE A HALF A
23    PERCENT.  IT MAY BE 80 PERCENT.  BUT WHATEVER IT IS, THEY NEED
24    TO CONSIDER THAT NOW.  IT'S NOT SUFFICIENT SIMPLY TO SAY,
25    'DON'T WORRY; HE CAN PAY IT, WHATEVER YOU COME UP WITH,' OR      09:10
```

1   'DON'T WORRY; WHATEVER YOU COME UP WITH THAT WOULD BE
2   REASONABLE AS DETERMINED BY THE COURT AFTER IT REDUCES YOUR
3   PUNITIVE DAMAGE AWARD, IT CAN BE PAID.'

4        THAT'S NOT THE STANDARD.  UNLESS THERE'S SOME
5   AUTHORITY THAT I'M NOT FAMILIAR WITH.                          09:1C

6        **MR. NOLAN:**  YOUR HONOR, MY POINT IS VERY CLEAR -- AND
7   THAT IS THAT THERE'S A HIGH RISK OF CONCERN THAT THIS JURY --
8   AND THIS IS WHY MATTEL WANTS TO DO IT -- IS TO PUT IN A HIGH
9   NET WORTH NUMBER FOR MR. LARIAN PERSONALLY TO PREJUDICE THE
10  JURY ON OTHER ISSUES THAT FLOW OVER WITH RESPECT TO THE        09:1C
11  COPYRIGHT INFRINGEMENT CASE.

12        AND THE DANGER HERE, YOUR HONOR, WHERE -- AND MAYBE
13  THIS IS THE 403 ASPECT OF IT -- WHERE THERE IS NO DISPUTE THAT
14  THE DAMAGE AMOUNT THAT MATTEL IS SEEKING IS DE MINIMIS ON THOSE
15  CLAIMS WHERE PUNITIVE DAMAGES ARE ALLOWED, AND WHERE THE       09:11
16  SUPREME COURT, I BELIEVE IN THE CAMPBELL CASE AND OTHER CASES,
17  AND RECENTLY THE EXXON VALDEZ CASE, RULED THAT A MULTIPLE OF
18  MAYBE NINE WOULD BE ACCEPTABLE UNDER THE CIRCUMSTANCES.

19        ASSUMING THAT CARTER BRYANT'S LOST SALARY TO MATTEL
20  FOR HIS LOYAL SERVICES DURING THE PERIOD OF SEPTEMBER 1ST      09:11
21  THROUGH OCTOBER 19TH WOULD AMOUNT TO $7,000 -- AND LET'S ASSUME
22  THAT THE VALUE TO BE ATTACHED TO THE "TANGIBLE PROPERTY," THE
23  SO-CALLED FRANKENSTEIN DOLL, IS DE MINIMIS.  WE DON'T EVEN HAVE
24  A VALUE ON IT, WHERE A JURY IS BEING PRESENTED WITH THE
25  POTENTIAL OF AWARDING, LESS THEN --                           09:12

```
1        AS I'M SITTING HERE, YOUR HONOR, I CAN'T EVEN
2   CALCULATE $10,000 -- TO -- AND THEN HAVE THE MAXIMUM AMOUNT
3   THAT POSSIBLY WOULD BE SUSTAINED BY A COURT, WOULD BE A
4   MULTIPLE OF THAT OF $90,000.  TO THEN ALLOW A NET WORTH, WHICH
5   IS, BY A MULTIPLE, SUBSTANTIALLY MORE THAN THAT, I RESPECTFULLY
6   SUBMIT, UNDER 403 AND FOR DUE PROCESS CONCERNS, IT REALLY GOES
7   TO WHAT MATTEL IS OBVIOUSLY TRYING TO DO, IS SHOCK THE JURY
8   INTO SUCH A WAY, NOT FOR THE TORT CLAIMS, BUT TO HAVE IT COME
9   BACK TO THE COPYRIGHT CLAIMS.  AND THAT IS THE CONFUSION, YOUR
10  HONOR, THAT I BELIEVE COULD CREEP INTO THIS CASE, AND WHY I
11  WOULD RESPECTFULLY SUBMIT THAT THE COURT TAKE THAT INTO
12  CONSIDERATION AND NOT VIEW THIS AS A STRAIGHT PUNITIVE DAMAGE
13  ANALYSIS CASE WHERE ONLY THAT ONE ASPECT IS CONSIDERED.  I'M
14  ASKING FOR THE POTENTIAL CONTAMINATION TO THE PUNITIVE DAMAGE
15  AWARD.  THEY JUST SIMPLY DON'T NEED IT, YOUR HONOR.  THEY WANT
16  TO EMBARRASS MR. LARIAN.  WE ALL KNOW IT.  THERE'S NO REASON TO
17  PUT THAT NET WORTH --
18        THE COURT:  COUNSEL, HOW IS IT THAT SOMEONE'S WEALTH
19  IS AN EMBARRASSMENT?
20        MR. NOLAN:  IT IS AN EMBARRASSMENT BECAUSE IT IS A
21  PRIVATE MATTER AND IT'S ONLY RELEVANT IF RELEVANT TO ISSUES
22  THAT ARE GOING TO BE TRIED IN THE CASE.  AND IN THIS SENSE,
23  YOUR HONOR, MR. LARIAN'S NET WORTH DOES NOT HAVE A RELEVANCY
24  BEYOND WHAT THE POTENTIAL CLAIM COULD BE IN THIS CASE AGAINST
25  HIM INDIVIDUALLY ON A PUNITIVE DAMAGE CLAIM.
```

1           **THE COURT:**  THANK YOU, COUNSEL.

2           **MR. ZELLER:**  IT WAS A LITTLE STARTLING TO HEAR THAT

3    THIS WOULD BE AN EMBARRASSMENT.  THE COURT WILL RECALL THAT

4    WHEN CASSIDY PARK WAS TESTIFYING, HE ASKED HER THINGS LIKE HER

5    SALARY, AN EMPLOYEE WHO, OF COURSE, EVERYONE KNOWS IS AN                09:13

6    EMPLOYEE OF MATTEL.

7               SO WHAT OTHER PURPOSE DID THAT HAVE?

8               BUT THEY ARGUED IT GOES TO BIAS.

9           **THE COURT:**  IT WAS VALID IMPEACHMENT.

10          **MR. ZELLER:**  EXACTLY.  IMPEACHMENT.  AND THAT'S AN --      09:14

11          **THE COURT:**  THAT'S NOT THE PURPOSE FOR WHICH YOU'RE

12   INTRODUCING THIS.

13          **MR. ZELLER:**  NO.  I UNDERSTAND.  BUT IT IS A PURPOSE

14   FOR WHICH IT CAN BE INTRODUCED, AND WE THINK IT'S RELEVANT TO

15   THAT TOO.                                                             09:14

16              BUT THIS IDEA THAT IT'S PRIVATE, I THINK, IS A RED

17   HERRING, AND NOT TO MENTION THE FACT THAT IT IS NOT ONLY

18   RELEVANT TO PUNITIVE DAMAGES; IT IS REQUIRED.  MR. NOLAN DOES

19   NOT CITE ANY CASE THAT SAYS, 'WELL, IT'S REQUIRED, EXCEPT, OF

20   COURSE, WHERE THE OTHER SIDE, THE DEFENDANT, CHARACTERIZES THE        09:14

21   COMPENSATORY DAMAGES AS DE MINIMIS.'

22          **THE COURT:**  I'M NOT FAMILIAR WITH THAT AUTHORITY

23   EITHER.  I CERTAINLY INVITE MGA TO SUBMIT IT TO THE COURT IF

24   THERE IS SUCH AUTHORITY FOR THAT; BUT I THINK THE AUTHORITY IS

25   TO THE CONTRARY.                                                      09:14

```
 1          MR. ZELLER:  WE DO CERTAINLY TAKE ISSUE WITH

 2    MR. NOLAN'S AND MGA'S STATEMENT HERE THAT THERE'S NO DISPUTE

 3    OVER WHAT THE STATE LAW DAMAGES ARE.  FAR FROM AGREEING THAT

 4    THEY ARE DE MINIMIS, WE HAVE MADE VERY CLEAR THAT OUR

 5    PERSPECTIVE IS THAT UNDER THE STATE LAW CLAIMS, AND            09:15

 6    PARTICULARLY THE AIDING AND ABETTING OF BREACH OF FIDUCIARY

 7    DUTY, WE ARE ENTITLED TO DISGORGEMENT OF ALL BENEFITS THAT MGA

 8    EVER RECEIVED FROM BRATZ.  AND THAT'S ACTUALLY VERY WELL

 9    FOUNDED LAW.  IT GOES BACK TO THE STATEMENT OF RESTITUTION,

10    STARTING IN 1937.  SO THIS IS A VENERABLE DOCTRINE.  THE LAW IS  09:15

11    VERY CLEAR THAT IF A PARTY AIDS AND ABETS OR INDUCES THE BREACH

12    OF FIDUCIARY DUTY AND IT CAUSES THE FIDUCIARY TO DISCLOSE

13    CONFIDENTIAL INFORMATION, PROPRIETARY INFORMATION, AND THEN IT

14    IS USED, ALL BENEFITS FROM THAT CAN BE DISGORGED.

15          MR. NOLAN'S PREEMPTION ARGUMENT -- WE CAN GET INTO       09:15

16    THIS AT SOME POINT ON THE RIGHT DAY, AT THE RIGHT TIME, TO

17    DISCUSS PREEMPTION IN MORE DETAIL, IF THEY REALLY WANT TO RUN

18    WITH THIS, BUT THE REALITY IS THAT PREEMPTION IS NOT BASED ON

19    RELIEF.  THAT IS NOT THE TEST.  AND THAT HAS NEVER BEEN THE

20    TEST.                                                          09:15

21          AND ALL HE WANTS TO SAY IS, 'WELL, BECAUSE IT'S THE

22    KIND OF RELIEF YOU CAN GET UNDER THE COPYRIGHT ACT, NECESSARILY

23    YOU CAN'T GET IT UNDER THE STATE LAW CLAIMS.'  AND THAT'S JUST

24    NOT THE LAW OF PREEMPTION WHATSOEVER.

25          BUT JUST SO IT'S VERY CLEAR, THE FACT IS, OUR STATE      09:16
```

1   LAW CLAIM DAMAGES ARE NOT DE MINIMIS.  AND THIS EVIDENCE

2   CONCERNING NET WORTH IS DIRECTLY RELEVANT TO PUNITIVE DAMAGES.

3   IT'S REQUIRED ON THAT FRONT.  AND CERTAINLY, UNDER THE

4   GOOSE-AND-GANDER RULE, IT CERTAINLY IS RELEVANT TO IMPEACHMENT

5   AND FOR THE JURY'S ASSESSMENT OF MR. LARIAN'S CREDIBILITY.          09:16

6           THE COURT:  THANK YOU, COUNSEL.

7           MR. NOLAN:  MY ONLY LAST POINT IS THAT WITH RESPECT

8   TO THE NET WORTH, OBVIOUSLY IT GOES BEYOND WHAT MR. LARIAN

9   DERIVED FROM THE SALE OF BRATZ.

10          I WILL SAY THAT THE FIRST SLIDE, THE FINANCIAL           09:16

11  BENEFIT FROM BRATZ, THAT THEY INTEND TO SHOW IN THE CASE SHOWS

12  PROFITS THROUGH JUNE OF 2008 OF $815,895,883.  LARIAN'S

13  FINANCIAL BENEFIT -- THAT'S MR. LARIAN'S FINANCIAL BENEFIT --

14  THAT THEY'RE GOING TO INTRODUCE EVIDENCE ON IS $987,000[SIC], A

15  LITTLE BIT MORE THAN THAT.                                       09:17

16          WHY THEY SHOULD THEN BE ALLOWED TO GO ON AND PRODUCE

17  ADDITIONAL INFORMATION WHICH --

18          THE COURT:  I SUSPECT YOU MISSPOKE.  I DOUBT THAT

19  MATTEL IS SIMPLY SAYING THAT ALL MR. LARIAN MADE WAS $970,000.

20          MR. NOLAN:  I APOLOGIZE.  IT'S $987 MILLION.             09:17

21          BUT, YOUR HONOR, THAT'S, I THINK -- MAYBE I WAS

22  THINKING FREUDIAN, BUT THAT'S ABOUT THE AMOUNT OF DAMAGES THAT

23  THEY COULD GET ON THEIR STATE LAW CLAIM.

24          BUT ALL I'M SAYING IS, YOUR HONOR, THEY HAVE

25  FINANCIAL INFORMATION THAT'S COMING IN ON THE COPYRIGHT CLAIMS.   09:17

1   TO THEN GO AND BROADEN IT TO NET WORTH, I THINK THAT'S WHERE

2   THE PREJUDICE COMES IN.  I ASK FOR 403 CONSIDERATIONS ON THAT.

3           **THE COURT:**  THANK YOU, COUNSEL.

4           ARE THERE OTHER ANY OTHER ISSUES THAT THE COURT NEEDS

5   TO TAKE UP BEFORE TRIAL?                                          09:17

6           **MR. NOLAN:**  YOUR HONOR, THERE IS ONE ISSUE.

7           MR. PRICE HAS A SLIDE IN HERE OF COMMENTS IN CLOSING

8   ARGUMENT IN PHASE 1-A, CONTENDING THAT IS RELEVANT IN PHASE 2.

9   WE WOULD SUBMIT THAT ARGUMENTS OF COUNSEL, OBVIOUSLY, ARE NOT

10  EVIDENCE.  IN FACT, THE COURT INSTRUCTED THE JURY ON THAT        09:18

11  POINT.

12          THE ISSUES IN THE FIRST PHASE ARE SUBSTANTIALLY

13  DIFFERENT THAN THE ISSUES WITH RESPECT TO PHASE 1-B.

14          **THE COURT:**  BUT YOU DO AGREE -- THIS JURY -- THE

15  REASON WHY WE'RE HAVING THE SAME JURY DECIDE THIS IS BECAUSE     09:18

16  EVERYTHING THAT HAPPENED IN 1-A CAN BE USED AND ARGUED IN

17  CLOSING ARGUMENTS IN 1-B.

18          YOU'RE NOT SUGGESTING THAT YOU'RE GOING TO LIMIT

19  YOURSELF IN YOUR 1-B ARGUMENTS ONLY TO EVIDENCE THAT WAS

20  ADDUCED IN 1-B?                                                  09:18

21          **MR. NOLAN:**  NO, YOUR HONOR.  BUT I'M GOING JUST

22  SAYING THAT STATEMENTS OF COUNSEL --

23          **THE COURT:**  I TEND TO AGREE NORMALLY, BUT BOTH SIDES

24  HAVE USED STATEMENTS OF COUNSEL -- BOTH SIDES USED STATEMENTS

25  OF COUNSEL IN THEIR CLOSING ARGUMENTS.                           09:18

1          **MR. NOLAN:**  BUT, YOUR HONOR, THOSE STATEMENTS WERE

2    MADE IN THE CONTEXT OF THE PHASE THAT WAS BEING TRIED AND THE

3    ARGUMENTS THAT WERE BEING PROFFERED AT THAT POINT IN TIME SO

4    THAT THEY COULD BE PUT INTO CONTEXT.

5          IN THE FIRST PHASE, THE COURT WILL RECALL THAT WE                    09:19

6    TRIED THE TIMING PORTION OF THE CASE.  THERE WAS AN ISSUE AT

7    SOME POINT IN TIME WHERE WE THOUGHT OWNERSHIP WAS ALSO GOING TO

8    BE DETERMINED, AND THAT WAS CLARIFIED AT THE END WHEN WE

9    STARTED WORKING ON JURY INSTRUCTIONS.

10         HOWEVER, MUCH OF THAT TESTIMONY GOING IN ABOUT                       09:19

11   DRAWINGS AND THE TIMING OF THE DRAWINGS AND WHETHER OR NOT

12   COLOR CHANGED THE CONCEPT OF IT, I SUBMIT, YOUR HONOR, WITHOUT

13   THE INSTRUCTIONS THAT WE'VE ASKED TO BE CONSIDERED IN TERMS OF

14   COPYRIGHT AREAS OF LAW, USING OUT OF CONTEXT COMMENTS OF

15   COUNSEL IN THE FIRST PHASE COULD BE MISLEADING.  THEY'RE NOT            09:19

16   GOING TO BE PREJUDICED BY IT.  THEY CAN DEVELOP THE EVIDENCE

17   THROUGH THE WITNESSES AT TRIAL IN PHASE 1-B.

18         **THE COURT:**  DO YOU HAVE A COPY OF THE STATEMENTS?  I

19   DON'T KNOW WHAT WE'RE TALKING ABOUT.

20         **MR. NOLAN:**  I CAN HAND UP THIS ONE, YOUR HONOR.                  09:20

21         **THE COURT:**  WHILE YOU'RE DOING THAT, DO WE HAVE -- I

22   INVITED THE PARTIES TO SUBMIT TO THE COURT A JOINT INSTRUCTION

23   CONCERNING THE OVERVIEW OF THE ISSUES TO BE TRIED IN PHASE 1-B.

24   IT'S SOMEWHAT RELATED TO THIS ISSUE HERE.

25         HAVE THE PARTIES BEEN ABLE TO AGREE ON SUCH AN                       09:20

```
 1    INSTRUCTION?

 2            MR. NOLAN:  NO, YOUR HONOR.

 3            THE COURT:  I'LL RELY ON YOUR OPENING STATEMENTS,

 4    THEN, TO PROVIDE CLARIFY TO THE JURY AS TO WHAT THIS CASE IS

 5    ABOUT.                                                         09:20

 6            MR. NOLAN:  MAY I HAND THIS UP TO YOU?

 7            THE COURT:  PLEASE.

 8            MR. PRICE?

 9            MR. PRICE:  OUR POINT, YOUR HONOR, IS THAT WE CAN

10    POINT OUT IF THE PARTY CHANGES ITS POSITION.                   09:21

11            THE COURT:  YOUR POINT IS WELL TAKEN.

12            IS THERE ANYTHING ELSE WE NEED TO TAKE UP?

13            MR. ZELLER:  NOT BEFORE THE JURY COMES OUT,

14    YOUR HONOR.  WE DO HAVE THE MOTION PERTAINING TO MR. MCFARLAND.

15    THERE ARE SOME OTHER ISSUES CONCERNING SOME WITNESSES.  BUT    09:21

16    THAT IS PROBABLY BEST SUITED TO SOMETHING OVER LUNCH OR ANOTHER

17    BREAK.

18            THE COURT:  VERY WELL.

19            ANYTHING FURTHER FROM MGA AT THIS TIME?

20            MR. NOLAN:  NO, YOUR HONOR.                            09:21

21            THE COURT:  VERY WELL.

22            SO I DO NEED TO RESOLVE THE HONG KONG ISSUE.  WE NEED

23    TO RESOLVE THE JURY ISSUE.

24            LET'S TAKE A RECESS AT THIS TIME.

25            (WHEREUPON, A BRIEF RECESS WAS HELD.)                  09:21
```

1          **THE COURT:**  THE COURT HAS HAD A CHANCE NOW TO READ

2    MGA'S BENCH MEMORANDUM SUBMITTED IN CONNECTION WITH MATTEL'S

3    INTENT TO OFFER INTO EVIDENCE HONG KONG PLEADINGS DURING THE

4    PHASE 1-B TRIAL.  THE COURT HAS ALSO RECEIVED THE OPPOSITION TO

5    MGA PARTIES' BENCH MEMORANDUM REGARDING HONG KONG PLEADINGS AND     09:58

6    THE DECLARATION OF MR. PROCTOR THAT WAS FILED CONCURRENTLY.

7          THE COURT WANTS TO HEAR ORAL ARGUMENT ON THIS, JUST

8    TO GET SOME CLARIFICATION.

9          FIRST OF ALL, THE PROCEDURAL OBJECTION RAISED BY

10   MATTEL IS NOT WELL TAKEN.  THE COURT DID PROVIDE LEAVE FOR THIS     09:59

11   BENCH MEMORANDUM TO BE FILED.  I DO UNDERSTAND THAT IT WAS

12   ADDRESSED BY THE COURT'S RULING ON MGA'S MOTION *IN LIMINE*

13   NUMBER THREE, IN WHICH THE COURT ONLY GRANTED THE MOTION

14   INSOFAR AS RULINGS BY THE HONG KONG COURTS WERE CONCERNED, BUT

15   OTHERWISE, DEFERRED RULING ON THAT MOTION.                          09:59

16         I THINK IT'S APPROPRIATE TO TAKE THAT UP AT THIS

17   POINT IN TIME.

18         MY GENERAL SENSE, IN GOING THROUGH THIS, IS PROBABLY,

19   THE BEST WAY TO ADDRESS THE CONCERNS IS TO PERMIT FACT-BASED

20   ADMISSIONS OR STATEMENTS INTO EVIDENCE, BUT NOT LEGAL ARGUMENTS     09:59

21   BASED ON FOREIGN LAW INTO EVIDENCE.  AND I KNOW THE DIVISION

22   WILL NOT ALWAYS BE NEAT AND TIDY, AND THE COURT MAY HAVE TO

23   CONSIDER SOME OF THIS IN THE CONTEXT OF THE TRIAL ITSELF.

24         I CAN GIVE CLEAR EXAMPLES OF ONE OR THE OTHER, BUT

25   THAT'S WHERE I THINK I COME OUT ON THIS.                            10:00

1          ONE POINT, THOUGH -- AND THIS IS -- I WOULD LIKE TO

2    HEAR FURTHER ARGUMENT ON THIS.  I HAVE A GENERALIZED STATEMENT

3    THAT IS REPEATED NUMEROUS TIMES BY MGA THAT HONG KONG LAW IS

4    DRAMATICALLY DIFFERENT THAN NINTH CIRCUIT LAW.  BUT THE ONLY

5    EVIDENCE OF THAT POINT IS THE STANDARD FOR COPYRIGHT, THIS          10:00

6    MATERIAL COPYING STANDARD.  MATTEL CITES NUMEROUS CASES

7    SUGGESTING THAT HONG KONG DOES ADOPT THE SUBSTANTIAL SIMILARITY

8    TEST.  NOW, IT'S NOT FLUSHED OUT TO THE EXTENT THAT IT DOESN'T

9    INDICATE HOW THE SUBSTANTIAL SIMILARITY TEST IS APPLIED,

10   EXTRINSIC, INTRINSIC, ET CETERA, SO I DON'T KNOW WHERE THAT          10:00

11   ULTIMATELY GOES.  I'LL HEAR ARGUMENT ON THAT.

12          BUT MY TENTATIVE THOUGHT WOULD BE TO TRY TO SPLIT

13   THIS INTO LEGAL -- AND I THINK THIS IS CONSISTENT WITH THE

14   COURT'S EARLIER RULING ON MGA'S MOTION *IN LIMINE* NUMBER THREE,

15   TO EXCLUDE LEGAL FINDINGS AND LEGAL ARGUMENTS AS NOT ONLY           10:01

16   INAPPROPRIATE BECAUSE THEY'RE BASED ON HONG KONG LAW, BUT

17   BECAUSE ALSO 403 GROUNDS, THAT IT WOULD BE VERY CONFUSING TO

18   THE JURY.  BUT AT THE SAME TIME, CERTAIN FACTUAL STATEMENTS,

19   FOR INSTANCE, STATEMENTS ABOUT THE SOURCE OF THE DOLLS OR THE

20   SOURCE OF THE PRODUCTS OR THEIR CONNECTION BETWEEN THE DOLLS         10:0

21   AND THE PRODUCTS, SIMPLY FACT-BASED STATEMENTS OF THAT SORT, I

22   DON'T SEE HOW A DIFFERENT LEGAL STANDARD IN HONG KONG COMES

23   ANYWHERE CLOSE TO VITIATING THE RELIABILITY OF THOSE

24   STATEMENTS.

25          BUT THAT'S WHERE I AM AFTER READING THE TWO BRIEFS.          10:0

1              MR. HANSEN?

2         **MR. HANSEN:**  I'M WORKING ON LEARNING HONG KONG LAW.

3         I THINK THE BEST PLACE TO START ON THE ISSUE IS THE

4    CASES THAT THEY PROVIDED TO YOU LAST NIGHT.  IF YOU TAKE, FOR

5    EXAMPLE, THE FOSSIL CASE, WHICH IS IN 2000, OUT OF THE COURT OF

6    FIRST INSTANCE, AND IF YOU LOOK AT PAGE -- I HAVE PAGE 7 IN

7    MINE.  I'M NOT SURE -- IT'S STAR 21; SO IT'S THE SEVENTH PAGE

8    OF THE WEST LAW DECISION.

9         **THE COURT:**  YES.

10        **MR. HANSEN:**  SO IF YOU DROP DOWN, IT TALKS ABOUT

11   GUIDANCE IN THIS RESPECT.  IT'S TALKING ABOUT HONG KONG

12   COPYRIGHT LAW AND WHAT YOU'RE SUPPOSED TO DO.

13        "GUIDANCE ON THIS ASPECT TO BE FOUND IN THE RECENT

14   AND IMPORTANT HOUSE OF LORDS DECISION IN DESIGNER'S GUILD V.

15   RUSSELL FROM WHICH MR. YAN EXTRACTS FOUR PROPOSITIONS."

16        AND I WOULD DROP DOWN, YOUR HONOR, TO POINT C, WHICH

17   STATES, QUOTE, "IT IS WRONG TO DISSECT THE PLAINTIFF'S WORK,

18   TAKING EACH PART WHICH HAS BEEN COPIED AND ASKING WHETHER EACH

19   PART COULD HAVE BEEN SUBJECT OF COPYRIGHT IF IT STOOD ALONE."

20        SO WE'LL START THERE.

21        I THINK IF -- WE AGREE THAT THIS IS NOT A MOTION TO

22   RECONSIDER BY US -- AND, FRANKLY, I THINK IF IT'S A MOTION TO

23   RECONSIDER, IT'S BY MATTEL OF YOUR HONOR'S RULING ON MONDAY.

24   AS YOU KNOW, MATTEL'S BEEN ARGUING THROUGHOUT THE CASE, ALL THE

25   WAY UP UNTIL MONDAY, THAT DISSECTION AND FILTERING OF ART

10:02

10:02

10:02

10:0[]

10:0[]

```
 1   WORKS, LIKE MR. BRYANT'S DRAWING, IS INAPPROPRIATE.  ON MONDAY,
 2   YOUR HONOR HELD, WE THINK CORRECTLY, THAT THE ANALYTICAL
 3   DISSECTION AND FILTERING IS REQUIRED DURING THE NINTH CIRCUIT
 4   TEST; THE EXTRINSIC PART OF THE TEST IS APPROPRIATE.
 5          UNDER HONG KONG LAW, IT'S NOT.  SO I THINK THAT IS A          10:03
 6   FUNDAMENTAL DIFFERENCE.  THE GIST OF THIS IS, YOUR HONOR, WHAT
 7   THEY'RE TRYING TO DO IS TAKE VARIOUS DOLLS THAT WERE ACCUSED OF
 8   INFRINGEMENT IN HONG KONG AND COMPARE THEM TO DOLLS AND/OR
 9   DRAWINGS -- IT'S NOT ENTIRELY CLEAR -- AND BASICALLY SKIP THE
10   ENTIRE EXTRINSIC PART THAT YOUR HONOR HAS RULED IS APPROPRIATE    10:04
11   AND SAY, 'TAKE A LOOK.'
12          NOW, WHETHER THAT'S EVEN THE PROPER STANDARD OF THE
13   INTRINSIC TEST IS FOR ANOTHER DAY, BUT IT'S CLEAR THAT WHAT
14   THEY'RE ATTEMPTING TO DO IS CIRCUMVENT YOUR HONOR'S RULING INTO
15   THE PROPER ANALYSIS, THAT YOUR HONOR RULED ON MONDAY.            10:04
16          THE COURT:  THAT ACTUALLY GOES TO THE CONCERN THAT I
17   HAVE, BECAUSE THE REFERENCES MADE IN MATTEL'S BRIEF WERE SIMPLY
18   TO SUBSTANTIAL SIMILARITY.  BUT WHAT DOES THAT MEAN IN THE
19   CONTEXT OF HONG KONG LAW?  AND YOU'VE SHED SOME LIGHT ON THAT.
20          GO BACK TO THE DISTINCTION THAT THE COURT -- TO BE         10:04
21   REINFORCED IS MY INITIAL INCLINATION THAT LEGAL ARGUMENTS AND
22   LEGAL CONCLUSIONS -- AND THIS IS WHERE I WAS, BASICALLY, MONTHS
23   AGO ON MGA'S MOTION NUMBER THREE -- DO NOT COME IN FOR THESE
24   VERY REASONS.
25          BUT PURELY FACTUAL STATEMENTS THAT ARE DIVORCED FROM       10:05
```

```
 1   ANY PARTICULAR LEGAL FRAMEWORK ARE ADMISSIONS AND WOULD BE

 2   ADMITTED.

 3           MR. HANSEN:  WE'RE NOT SEEKING TO RECONSIDER ON THAT

 4   AT THIS POINT.

 5           THE COURT:  VERY WELL.                              10:05

 6           MR. HANSEN:  I THINK AN ILLUSTRATION OF THAT IS

 7   PART C OF THEIR BRIEF.  AND I JUST GOT THIS LATE, SO I HAVE NOT

 8   FULLY DIGESTED IT.  BUT IF YOU GO TO --

 9           THE COURT:  YOU AND I BOTH.

10           MR. HANSEN:  -- PAGE 6 OF THE MATTEL BRIEF, IT TALKS   10:05

11   ABOUT THE HONG KONG PLEADINGS.  THE BIG HEADING C ON LINE 19,

12   IT TALKS 'THE BRATZ DOLLS DERIVE SALES OF OTHER BRATZ-RELATED

13   PRODUCTS."

14           THESE ARE FACT-BASED STATEMENTS, AND WE'RE NOT --

15   THIS IS NOT THE SUBJECT OF WHAT WE'RE TALKING ABOUT.          10:05

16           THE COURT:  VERY GOOD.

17           MR. HANSEN:  SO THAT'S NOT AN ISSUE.

18           I THINK JUST A LITTLE FURTHER CLARIFICATION ON THE

19   LEGAL POINT -- AND THE DIFFICULTIES HERE -- THE DIFFICULT

20   WATERS THAT YOU'RE GOING INTO IN TERMS OF THE LEGAL ASPECT IS  10:06

21   THE OTHER CASE THAT THEY CITE IN THEIR BRIEF.  AND I HAVEN'T

22   LOOKED AT ALL OF THE HONG KONG CASES, BUT THEY TALK ABOUT THE

23   BG LIGHTING COMPANY, LIMITED CASE.  THIS ONE IS THE

24   SUPREME COURT OF HONG KONG, WHICH I ASSUME IS THE TOP COURT,

25   BUT I DON'T KNOW.  THIS CASE DEALS WITH A COPYRIGHT            10:06
```

1    INFRINGEMENT OF A LIGHT BULB DESIGN.  THEY BASICALLY GO THROUGH

2    THE FULL COPYRIGHT ANALYSIS OF WHETHER OR NOT THIS LIGHT BULB

3    INFRINGES THIS LIGHT BULB.  AND IN THE UNITED STATES, LIGHT

4    BULBS -- YOUR HONOR RULED THAT DOLL FASHIONS ARE NOT USEFUL

5    ARTICLES.  LIGHT BULBS ARE.                                          10:06

6            THE COURT:  RIGHT.  I UNDERSTAND.

7            MR. HANSEN:  AND THE NINTH CIRCUIT HAS HELD THAT.

8            SO THIS CASE IS BASICALLY BASING INFRINGEMENT ON

9    ISSUES THAT SHOULD BE UNDER THE EXTRINSIC PART OF YOUR HONOR'S

10   CORRECT INTERPRETATION OF THE NINTH CIRCUIT TEST, FILTERED OUT.      10:06

11           SO IT SORT OF ILLUSTRATES THE PROBLEM OF GETTING INTO

12   HONG KONG LAW, BECAUSE IN TERMS OF EXACTLY -- SUBSTANTIAL

13   SIMILARITY IS ONE THING, AND IF YOU'LL RECALL, IN PART OF OUR

14   BRIEF, MATTEL HAD SOUGHT TO EXCLUDE PROFESSOR MENELL ON THE

15   GROUNDS THAT, 'MY GOD, HE'S USING SECOND CIRCUIT LAW,' WHICH IS      10:07

16   AN ENTIRELY DIFFERENT THING.

17           THE COURT:  YOUR POINT IS WELL TAKEN, MR. HANSEN.

18   THANK YOU.

19           MR. HANSEN:  WOULD A SPECIFIC EXAMPLE THAT'S BEING

20   USED IN THE OPENING HELP?                                           10:07

21           THE COURT:  SURE.

22           MR. HANSEN:  IF YOU LOOK AT -- I THINK AN EXAMPLE OF

23   THE TYPE OF LEGAL ISSUE -- IT IS -- I JUST GOT THE COREY

24   DECLARATION ABOUT 20 MINUTES AGO, AND IT IS IN MY BINDER.

25           THE COURT:  YOU MEAN MR. PROCTOR'S DECLARATION?             10:07

```
 1              MR. HANSEN:  I'M SORRY.  I JUST GOT IT.  YES, THE

 2    DYLAN PROCTOR DECLARATION.

 3              IT'S IN HIS DECLARATION, EXHIBIT 7.

 4              THIS IS AN AFFIDAVIT OF MR. LARIAN THAT WAS FILED IN

 5    THE CITY WORLD CASE.                                          10:08

 6              I THINK THIS IS A PERFECT ILLUSTRATION OF

 7    YOUR HONOR'S POINT.  IF YOU GO TO -- I THINK THE MONEY SHOT

 8    THAT THEY WANT TO USE HERE WOULD BE ON PARAGRAPH 12 OF THAT,

 9    THE ONE THAT STARTS, 'I FAIL TO UNDERSTAND'...

10              THE COURT:  YES.                                    10:08

11              MR. HANSEN:  SO THIS AFFIDAVIT, YOUR HONOR, WAS IN

12    THE PHASE 1 TRIAL, AND IT WAS ALLOWED IN UNDER YOUR HONOR'S

13    RULING IN TERMS OF FACTUAL THINGS.

14              SO AT THE BOTTOM OF THAT PARAGRAPH -- IT WON'T LEAP

15    OUT, BECAUSE THIS REALLY WAS USED WITH MR. LARIAN TO REFRESH  10:08

16    HIS RECOLLECTION AS TO ANOTHER EXHIBIT.  AND AT THE BOTTOM, IT

17    TALKS ABOUT LSC-3.

18              THE COURT:  YES.

19              MR. HANSEN:  MR. LARIAN WAS REFRESHED ON THAT BY

20    MR. PRICE.  AND I DON'T KNOW IF IT'S IN MR. COREY'S          10:09

21    DECLARATION, BUT THE BOTTOM LINE IS THAT REFERRED, THEN, TO

22    TRIAL EXHIBIT 10, WHICH ALSO CAME IN.  AND TRIAL EXHIBIT 10

23    HAD, AT THE BOTTOM, MR. LARIAN'S SIGNATURE, AND IT HAD THE

24    STATEMENT, 'CONTRACT DATE, 9-18-2000.'  SO THAT WAS ADMITTED BY

25    YOUR HONOR FOR PURPOSES OF A FACTUAL ISSUE IN THE FIRST PHASE  10:09
```

1    OF THE TRIAL.

2            THIS SAME PARAGRAPH NOW -- AND MR. PRICE STOPPED IN

3    THE TRANSCRIPT WHEN THIS DOCUMENT CAME IN WITH MR. LARIAN.  HE

4    STOPPED AT THE SENTENCE IN PARAGRAPH 12 WHERE THE LSC-3 QUOTE

5    IS.  IF YOU READ THE TRANSCRIPT, IT'S AT --                     10:09

6            THE COURT:  AND THE NEXT STATEMENT, THE CONCLUSION,

7    ABOUT HAVING -- INFRINGED BASED ON HONG KONG LAW.

8            MR. HANSEN:  THE INFRINGEMENT ISSUE IS EXACTLY THE

9    CASE THAT WE CITE.

10           THE COURT:  I UNDERSTAND.                                10:09

11           MR. HANSEN:  THAT'S JUST AN ILLUSTRATION.

12           THE COURT:  VERY WELL.

13           LET ME HEAR FROM MATTEL ON THE COURT'S DISTINCTION.

14           MR. ZELLER:  BEFORE GETTING INTO THE SPECIFICS, IF I

15   MAY, YOUR HONOR, THEIR VERY ARGUMENT HIGHLIGHTS WHY THEIR        10:10

16   MOTION *IN LIMINE* IS EXACTLY THE WRONG CONSTRUCT AND WHY IT IS

17   THAT THE COURT SHOULD GO BACK TO MATTEL'S SUMMARY JUDGMENT

18   MOTION IN WHICH WE ARGUED THEY ARE JUDICIALLY ESTOPPED FROM

19   MAKING ARGUMENTS TO THE CONTRARY.  THAT'S WHAT RESOLVES THIS

20   ISSUE.                                                          10:10

21           BECAUSE IF THEY'RE REALLY GOING TO ARGUE, 'WELL, THE

22   COURT HAS TO MAKE SOME SORT OF LEGAL INTERPRETATION BEFORE THE

23   JURY CAN FULLY UNDERSTAND THE IMPORT OF THOSE STATEMENTS, OF

24   THOSE ADMISSIONS THEY MADE IN OTHER LITIGATION...' IT MEANS

25   THIS IS A MATTER OF JUDICIAL ESTOPPEL.  IT'S SOMETHING THAT THE  10:10

1   COURT OUGHT TO SIMPLY RULE ON AND RESOLVE THOSE LEGAL ISSUES.

2   INSTRUCT THE JURY THAT MGA IS JUDICIALLY ESTOPPED FROM DENYING

3   THAT SUBSTANTIAL SIMILARITY -- JUDICIALLY ESTOPPED FROM MAKING

4   ARGUMENTS ABOUT 2-D TO 3-D.

5               THIS HIGHLIGHTS EXACTLY THE MOTION THAT MATTEL          10:11

6   BROUGHT, BECAUSE THE COURT WILL RECALL HOW WE ENDED UP HERE.

7   WE SAY THAT THEY ARE BOUND BY THESE PRIOR JUDICIAL STATEMENTS.

8   THEY BASICALLY -- THE COURT HAS OBVIOUSLY NOT RULED ON THAT

9   ISSUE, OR AT LEAST, I GUESS, IMPLICITLY, I THINK HAS DENIED THE

10  MOTION WITH RESPECT TO JUDICIAL ESTOPPEL BY DENYING THE MOTION   10:11

11  ON SUBSTANTIAL SIMILARITY.

12               **THE COURT:**  YES.

13               **MR. ZELLER:**  SO TAKING IT AT THAT POINT -- SO, WHERE

14  ARE WE NOW?  WELL, IT'S NOW A JURY ISSUE, FOR THAT REASON.

15               AND THEY ARE GOING TO, OF COURSE, TRY AND DISPUTE     10:11

16  THAT THEIR STATEMENTS TO OTHER COURTS, INCLUDING FACTUAL

17  STATEMENTS, REALLY MEANT ANYTHING, AND THEY ARE GOING TO, OF

18  COURSE, TRY AND SAY THAT IT'S BASED UPON THIS LEGAL

19  DISTINCTION.

20               THAT'S A LEGAL ARGUMENT.  THAT'S NOT SOMETHING THAT   10:11

21  THEY SHOULD THEN BE ABLE TO TURN AGAINST US AND SAY, WELL, THAT

22  MEANS THAT OUR ADMISSIONS NEVER HAPPENED AND THE JURY SHOULDN'T

23  BE AWARE OF THEM.

24               THAT DOES NOT FOLLOW, AND I THINK THEIR VERY ARGUMENT

25  SHOWS THAT THEY ARE IN THE WRONG CONSTRUCT AND WE ARE IN THE     10:12

```
 1   RIGHT ONE TO BRING WITH.  THE COURT OUGHT TO JUST RULE ON THESE
 2   THINGS AS A MATTER OF LAW AND SAY THAT THEY ARE JUDICIALLY
 3   ESTOPPED.  SO THAT'S THE FIRST POINT.
 4         THE SECOND POINT, YOUR HONOR, IS THAT THE
 5   DISTINCTIONS THAT THEY ARE TRYING TO RAISE HERE ARE STILL          10:12
 6   AMORPHUS, ARE STILL COMPLETELY UNPROVEN.  THEY BEAR THE BURDEN
 7   OF PROVING THAT THE LAW IS SOMEHOW DIFFERENT.
 8         THE COURT:  THERE HAVE BEEN CITATIONS MADE TO THE
 9   INTRINSIC TEST NOT BEING APPLIED IN HONG KONG LAW.  THAT'S A
10   SIGNIFICANT DIFFERENCE.                                            10:12
11         MR. ZELLER:  BUT THE CONTEXT IN WHICH THESE THINGS
12   ARE BEING TALKED ABOUT ARE NOT ISSUES OF -- LIKE, FOR EXAMPLE,
13   THE LIGHT BULB EXAMPLE THAT WAS GIVEN.  THAT'S CLEARLY AN ISSUE
14   OF PROTECTABILITY.  AND ALSO IT'S NOT TRUE THAT YOU COULDN'T
15   PROTECT A DRAWING OR A TWO-DIMENSIONAL REPRESENTATION OF A         10:12
16   LIGHT BULB UNDER U.S. COPYRIGHT LAW EITHER.  BUT THAT'S A
17   COMPLETE RED HERRING.  WE'RE TALKING ABOUT WHAT THE LEGAL
18   STANDARD IS.
19         WHAT I WOULD SUBMIT TO THE COURT IS THAT TO THE
20   EXTENT -- AND THIS GOES BACK TO, IN FACT, MONDAY'S RULING -- TO    10:13
21   THE EXTENT THAT ANY OF THIS IS ACTUALLY GOING TO BE AIRED IN
22   FRONT OF THE JURY -- WE GET BEYOND THE JUDICIAL ESTOPPEL
23   ARGUMENT -- WHAT I WOULD SUGGEST IS THAT THE COURT, AT THE END
24   OF THE CASE, AS IT SEEMED INCLINED TO DO, IS INSTRUCT ON HONG
25   KONG LAW.  WE CAN HAVE THE NORMAL KINDS OF PRESENTATIONS THAT      10:13
```

```
 1   WOULD ALLOW THE COURT TO MAKE A FULL DETERMINATION UNDER 441 AS
 2   TO WHAT THE FOREIGN LAW IS.
 3        THE COURT CAN INSTRUCT THE JURY, 'THIS IS WHAT
 4   SUBSTANTIAL SIMILARITY IS.  IT'S THE SAME OR IT'S DIFFERENT
 5   UNDER HONG KONG LAW,' AND THE JURY CAN TAKE THAT INTO ACCOUNT
 6   IN DETERMINING WHAT EFFECT TO GIVE THEIR PRIOR JUDICIAL
 7   STATEMENTS.
 8        BECAUSE THE THING THAT'S VERY TROUBLING, YOUR HONOR,
 9   ABOUT THEIR ENTIRE POSITION ON THIS IS THAT THEY ARE BASICALLY
10   SAYING, WELL, IF WE MAKE A JUDICIAL ADMISSION THAT ANY OTHER
11   JURISDICTION, WHICH IS ALMOST BY DEFINITION GOING TO HAVE
12   DIFFERENCES IN LAW, THAT IT HAS NO EFFECT.  IT MEANS THAT OUR
13   JUDICIAL ADMISSIONS, ONLY THOSE WE MAKE IN THE NINTH CIRCUIT --
14   WELL, NOT EVEN IN THE NINTH CIRCUIT, BECAUSE WE MADE THAT IN
15   OREGON AND THEIR LOCAL RULES ARE DIFFERENT.
16        I MEAN, ANYONE CAN POINT TO ANY NUMBER OF DIFFERENCES
17   BETWEEN JURISDICTIONS.  AND THAT'S JUST NOT THE LAW.  YOU CAN'T
18   JUST SIMPLY SAY THAT ADMISSION NEVER HAPPENED BECAUSE SOME
19   DIFFERENT LEGAL STANDARD WAS EMPLOYED.
20        SO I THINK, FRANKLY, A LARGE PART OF THIS CAN BE
21   RESOLVED BY THE COURT INSTRUCTING ON WHAT THAT LAW IS, AND THEN
22   THE JURY CAN MAKE THE DETERMINATION AS TO, WELL, WHEN THEY SAID
23   IN HONG KONG THAT THE DRAWINGS AND THESE DOLLS, THESE
24   THREE-DIMENSIONAL DOLLS THAT THEY SUED UPON, ARE SUBSTANTIALLY
25   SIMILAR.  WELL, EITHER IT'S ENTITLED TO GREAT WEIGHT, MAYBE NO
```

10:13
10:14
10:14
10:14
10:14

 1   WEIGHT, LITTLE WEIGHT, WHATEVER THE CASE IS; BUT THAT'S A

 2   DETERMINATION THE JURY CAN MAKE, BASED UPON THE COURT'S

 3   INSTRUCTIONS OF WHAT THE LAW IS.

 4          THAT'S WHERE THE COURT, I THINK, SEEMED TO BE ON

 5   MONDAY, AND I THINK THAT'S ONE WAY OF ALSO RESOLVING THIS.          10:15

 6          BUT FUNDAMENTALLY, WHAT WE DO WANT TO SAY TO THE

 7   JURY, YOUR HONOR -- AND WE THINK IT'S IMPORTANT WE BE ABLE TO

 8   SAY TO THE JURY -- IS THAT MGA IN THE PAST USED THOSE VERY

 9   DRAWINGS THAT THE JURY HAS NOW SAID BELONG TO MATTEL TO PREVENT

10   OTHERS TO SEEK -- IN FACT, TO PREVENT AND TO SEEK TO PREVENT       10:15

11   OTHERS FROM MANUFACTURING DOLLS, BECAUSE THEY ARE GOING TO BE

12   MAKING THIS --

13          **THE COURT:**  THAT GOES TO A FACTUAL ISSUE MORE THAN IT

14   DOES A LEGAL ARGUMENT.  I'M MORE CONCERNED ABOUT THE LEGAL

15   ARGUMENTS THAT ARE MADE BASED ON THAT.  THAT'S A FACT THAT MGA     10:15

16   TREATED THE DRAWINGS AS A BASIS TO IS THIS RIGHT?  PROCEED IN

17   COPYRIGHT INFRINGEMENT UNDER WHATEVER LAW.  BUT HOW THAT

18   ACTUALLY PLAYS OUT UNDER HONG KONG LAW -- I UNDERSTAND YOUR

19   POINT, BUT I THINK THAT GOES TO THE TRIAL-WITHIN-A-TRIAL

20   CONCERN OF MR. HANSEN.                                            10:16

21          I MEAN, THIS IS GOING TO BE SOMETHING WHICH THE COURT

22   -- I MEAN, I THINK THERE'S SOME CLEAR THINGS THAT WE CAN

23   IDENTIFY FOR THE BENEFIT OF OPENING STATEMENTS THAT ARE GOING

24   TO CLEARLY COME IN, AND MR. PRICE MAY REFERENCE THOSE, BUT THEN

25   THERE'S OTHERS THAT ARE MORE OF A LEGAL NATURE THAT I'M           10:16

WEDNESDAY, JULY 23, 2008.                    TRIAL DAY 27, MORNING SESSION

```
 1   CONCERNED ABOUT.

 2          MR. PRICE:  TO GIVE CONTEXT, SO WE'RE CLEAR, AND LET

 3   ME TELL YOU AND SHOW YOU AN EXAMPLE OF WHAT I PLAN TO DO.

 4          THE COURT:  GO AHEAD.  YOU'RE NOW ADDRESSING WHAT

 5   YOU'RE PLANNING TO DO IN OPENING?                              10:16

 6          MR. PRICE:  YES, SO THAT WE CAN DECIDE WHICH SIDE OF

 7   THE LINE THIS GOES ON.

 8          ONE OF THE THINGS I PLAN TO TELL THE JURY IS THAT MGA

 9   HAS NOT ONLY BASED THEIR DOLL ON THESE DRAWINGS, THEY'VE USED

10   THESE DRAWINGS TO PREVENT OTHERS FROM MAKING DOLLS THAT LOOK   10:16

11   LIKE BRATZ.  THEY FILED THOSE SUITS IN HONG KONG.  AND WE CAN

12   SHOW THESE 18 DRAWINGS, AND THEY'RE THE DRAWINGS WHICH THE JURY

13   HAS FOUND MATTEL OWNS.

14          AND THEN ANOTHER STEP OF THAT AND SAYING THEY'RE

15   USING THESE DRAWINGS IS TO SAY, 'LET'S LOOK AT THOSE DOLLS.'   10:17

16          THE COURT:  AND THAT'S THE CONCERN I HAVE, IS WHEN WE

17   GET INTO THAT SECOND LEVEL.  THE FACT THAT THEY PURSUED

18   COPYRIGHT BASIS, THE FACT THAT THEY USED THE DRAWINGS TO DO SO,

19   THE FACT THAT -- AND OTHER FACTUAL STATEMENTS CONCERNING THE

20   CONNECTION BETWEEN THE DRAWINGS AND THE DOLLS AND THE DOLLS AND 10:17

21   MARKETING, I BELIEVE THAT'S ALL FAIR GAME.

22          IT'S WHEN YOU GET INTO THE ACTUAL LEGAL ARGUMENTS

23   THAT ARE USED UNDER HONG KONG LAW.  THAT WOULD TRIGGER WHAT

24   MR. ZELLER HAD SUGGESTED, THIS INSTRUCTION FROM THE COURT, AND

25   THAT -- WHILE I'M NOT SAYING IT DOESN'T HAVE SOME RELEVANCE, I  10:17
```

```
 1   THINK IT BECOMES VERY CONFUSING TO THE JURY TO HAVE

 2   INSTRUCTIONS UNDER HONG KONG LAW AND INSTRUCTIONS UNDER NINTH

 3   CIRCUIT LAW IN TERMS OF COPYRIGHT INFRINGEMENT.

 4         MR. PRICE:  TWO THINGS, YOUR HONOR.  ONE IS, IT IS A

 5   FACT IN THE SENSE THAT THEY ARE USING THESE DRAWINGS AND THESE

 6   ARE THE DOLLS THEY'RE TRYING TO STOP FROM MANUFACTURING.  AN

 7   EXAMPLE WOULD BE -- COULD WE PUT UP FOR THE COURT AN -- AN

 8   EXAMPLE WOULD BE, YOUR HONOR -- PUT UP 33.3.  IT WOULD JUST BE

 9   TO ILLUSTRATE THAT -- THEY SAID, FOR EXAMPLE, IN THIS

10   PARTICULAR EXAMPLE, THAT THE DOLL WHICH THEY SUED AGAINST WAS

11   THIS DOLL HERE ON THE RIGHT.  THIS IS THE BLOWUP OF THAT DOLL.

12   AND IN THEIR ARGUMENTS, THEY MAKE FACTUAL ARGUMENTS THAT THE

13   EYES ARE THE SAME, THAT THE LIPS ARE THE SAME, THAT THE

14   EYEBROWS -- THOSE ARE FACTUAL ARGUMENTS THAT THEY'RE MAKING IN

15   COMPARING THOSE DOLLS.

16         SO WE THINK WE SHOULD BE ENTITLED TO SAY, 'THEY'RE

17   USING THE DRAWINGS TO PREVENT DOLLS FROM BEING MANUFACTURED,

18   AND YOU CAN SEE, THESE ARE THE DOLLS THEY'RE TRYING TO PREVENT

19   FROM BEING MANUFACTURED.'  AND THEY MAKE FACTUAL STATEMENTS

20   CONCERNING THAT.

21         SO IT'S TO GIVE THIS JURY CONTEXT AS TO HOW IMPORTANT

22   THESE DRAWINGS ARE, OBVIOUSLY.

23         THE COURT:  VERY WELL.

24         LET ME HEAR MORE FROM MR. HANSEN.

25         MR. HANSEN, IF YOU WOULD, BEGIN BY ADDRESSING
```

10:17

10:18

10:18

10:19

10:19

 1 | MR. ZELLER'S FIRST POINT.  MAYBE NOT HIS FIRST POINT, BUT THE
 2 | JUDICIAL ESTOPPEL POINT, THE FUNDAMENTAL -- I'M WITH YOU ON THE
 3 | LEGAL DISTINCTION AND THE DANGERS, THE 403 DANGERS, OF HAVING
 4 | TO INSTRUCT THE JURY ON HONG KONG LAW AND GETTING INTO WHAT I
 5 | THINK MIGHT VERY WELL BE A QUAGMIRE IF WE WENT DOWN THIS ROAD          10:19
 6 | TOO FAR.

 7 | BUT THERE'S A FUNDAMENTAL UNFAIRNESS THAT MR. ZELLER
 8 | HAS IDENTIFIED THAT RESONATES WITH THE COURT.  FOR MGA TO BE
 9 | ABLE TO GO IN ONE COURT, WHETHER IT'S HONG KONG OR OREGON OR
10 | WHEREVER IT IS, AND SAY, 'AHA, YOU'RE INFRINGING OUR DRAWINGS;        10:19
11 | YOU'RE INFRINGING OUR DOLLS,' AND THEN TURN AROUND AND MAKE ALL
12 | OF THE ARGUMENTS IN TERMS OF SIMILARITY OF EYES, SIMILARITY OF
13 | WHATEVER, AND THEN TURN AROUND IN ANOTHER COURT AND SAY, 'NOW
14 | WE'RE GOING TO BRING IN EXPERTS AND SAY THEY DON'T LOOK
15 | ANYTHING LIKE THE DRAWINGS AND THE DOLLS DON'T EVEN LOOK ALIKE,      10:20
16 | LET ALONE THE DRAWINGS AND THE DOLLS AND SOME OTHER DOLL,' THIS
17 | REALLY STRIKES THE COURT AS A FUNDAMENTALLY UNFAIR POSITION FOR
18 | MGA TO BE TAKING.

19 | **MR. HANSEN:**  IF YOU'RE SPEAKING, YOUR HONOR, TO THE
20 | NOTION THAT'S IN THEIR BRIEF OF WHETHER OR NOT WE'RE ARGUING         10:20
21 | THAT A THREE-DIMENSIONAL ITEM CANNOT INFRINGE A TWO-DIMENSIONAL
22 | DRAWING, THAT'S THE RED HERRING.

23 | WE'RE NOT ARGUING THAT.

24 | SO PART OF WHAT THEY'RE SAYING IS WE CAN'T COME IN
25 | HERE AND SAY --                                                      10:20

1        **THE COURT:** ADDRESS WHAT MR. PRICE -- IN THE CONTEXT

2   OF MR. PRICE.

3        IN ANOTHER COURT, MGA, THROUGH MR. LARIAN, HAS STOOD

4   UP AND SAID THESE EYES LOOK ALIKE; AND NOW WE'RE GOING TO HEAR

5   EVIDENCE FROM MGA'S EXPERT SAYING THEY DON'T LOOK ANYTHING          10:20

6   ALIKE.

7        THERE'S A FUNDAMENTAL INCOHERENCE TO THAT POSITION,

8   WHICH I THINK THE DOCTRINE OF JUDICIAL ESTOPPEL DOES SPEAK TO.

9        **MR. HANSEN:** WHAT WE HAVE, YOUR HONOR, IS -- THE

10  REASON IT DOESN'T SPEAK TO IT IS THAT -- WHAT WE'RE TALKING        10:21

11  ABOUT OVER IN HONG KONG IS -- WE HAVE -- I DON'T KNOW WHAT DOLL

12  THAT IS, SAY THE TRENDY TEENS OR --

13        **THE COURT:** TRENDY TEENS.

14        **MR. HANSEN:** I DON'T KNOW THE NAMES EXACTLY, BUT

15  LET'S SAY TRENDY TEENS, ONE OF THE ONES THAT THEY TALK ABOUT.      10:21

16        SO WHAT'S BEING DISCUSSED OVER THERE IS THAT A BRATZ

17  DOLL LOOKS LIKE A TRENDY TEENS DOLL. SO THE ANALYSIS OF THAT

18  IS BASED ON -- THE THINGS THAT ARE BEING SAID ARE BEING SAID

19  UNDER THE APPLICABLE HONG KONG LEGAL PRINCIPLES; SO THE

20  ARGUMENTS ARE INTERTWINED WITH THE HONG KONG LAW.                  10:21

21        WHAT'S AT ISSUE IN THIS CASE IS NOT WHETHER BRATZ

22  LOOKS LIKE TRENDY TEENS --

23        **THE COURT:** WE'VE GOT TO BREAK THIS DOWN, BECAUSE I

24  CAN'T ACCEPT A BROAD-BASED GENERALITY.

25        IN THE CONTEXT OF THE SPECIFIC EYE COMMENT, HOW IS           10:21

```
 1    THAT MORE A FUNCTION OF LEGAL HONG KONG PRINCIPLES VERSUS A

 2    FACTUAL STATEMENT OF -- LET'S SAY -- THE EXTRINSIC TEST IS OUT

 3    IN HONG KONG.  WE'VE ESTABLISHED THAT.  IT'S JUST INTRINSIC.

 4    THEY'RE JUST LOOKING AT ORDINARY SIMILARITIES.  AND THAT'S PART

 5    OF WHAT IS GOING TO BE GOING ON HERE.                              10:22

 6          WHY SHOULD MGA BE ABLE, IN A HONG KONG SITUATION,

 7    WHICH IS STRICTLY LIMITED TO INTRINSIC ANALYSIS, BE ABLE TO SAY

 8    THE EYES LOOK EXACTLY THE SAME, AND THEN TURN AROUND HERE --

 9    WHAT'S REALLY TROUBLESOME ABOUT THIS IS, IN HONG KONG, MGA WAS

10    SAYING THE DRAWINGS AND THE DOLLS, GROUPED TOGETHER                10:22

11    ESSENTIALLY, LOOK JUST LIKE THESE OTHER DOLLS.  AND HERE,

12    THEY'RE TRYING TO DRAW THE DISTINCTION THAT THE DRAWINGS DON'T

13    LOOK ANYTHING LIKE THE DOLLS.

14          I REALLY THINK THAT THERE'S SOME SERIOUS PROBLEM WITH

15    THAT POSITION.                                                     10:22

16          MR. HANSEN:  THE WAY I UNDERSTAND HONG KONG LAW

17    WORKS, THE DRAWINGS ARE THERE, ESSENTIALLY, AS A STAKE IN THE

18    GROUND FROM THE BEGINNING; IT'S A NECESSARY PART OF HONG KONG

19    LAW THAT BUILDS THE CHAIN OF TITLE UP TO THE DOLLS SO THAT YOU

20    CAN MAKE THE DOLL-TO-DOLL COMPARISON.  I CAN'T SAY THAT WITH      10:23

21    DEFINITIVE HONG KONG KNOWLEDGE, BUT YOU'RE REALLY BUILDING UP

22    THE CHAIN OF TITLE.

23          IF YOU LOOK THROUGH A LOT OF THE DECLARATIONS THEY

24    ARE SUBMITTING, IT HAS THE DRAWINGS IN THE INITIAL PART; THEN

25    THEY BUILD IT UP INTO THE SCULPT THROUGH MS. LEAHY; THEN THEY     10:23
```

1    HAVE A WAX MODEL; AND THEN THEY HAVE VARIOUS COLOR CHARTS AND

2    VARIOUS OTHER THINGS THAT ULTIMATELY GETS TO THE DOLL; AND THEN

3    YOU HAVE THIS DOLL-TO-DOLL COMPARISON.  SO THERE IS NEVER ANY

4    STATEMENT THAT THE DRAWINGS ARE, AS THEY SAY, A DERIVATIVE WORK

5    OF THE DOLLS, WHICH IS --                                       10:23

6          THE COURT:  WE'RE GOING TO STAY AWAY FROM DERIVATIVE

7    WORKS.  I PRESSED THAT ON MONDAY, AND EVERYONE JUMPED BACK FROM

8    THAT, SO WE'RE NOT GOING TO BE TALKING ABOUT -- THOSE ARE THE

9    TYPES OF LEGAL CONCLUSIONS THAT WE'RE NOT GOING TO BE GETTING

10   INTO.                                                           10:23

11         MR. HANSEN:  AND THAT'S ONE OF THE ARGUMENTS.

12         AND I WANT TO GET BACK TO YOUR POINT, YOUR HONOR, BUT

13   THE BASED ON -- AND ONE OF THE THINGS THEY CITE IS 'BASED ON'

14   -- AND AS YOU KNOW FROM THE SUPERBOY DECISION, YOU KNOW

15   DERIVATIVE WORKS, AND 'BASED ON' IS JUST ONE LITTLE PIECE.      10:23

16         THE COURT:  RIGHT.

17         MR. HANSEN:  IT'S A MUCH MORE COMPLICATED -- IT

18   SAYS -- ESSENTIALLY WHAT THEY WANT TO ARGUE IS THAT IN HONG

19   KONG, WE SAID THAT THIS IS BASED ON THAT, WHICH WE DON'T

20   DISPUTE THAT THE BRYANT DRAWINGS WERE AN INSPIRATION AND PEOPLE  10:24

21   LOOKED AT THEM, BUT THEY WANT TO TAKE THAT SINGLE WORD "BASED

22   ON" THAT WAS USED IN THE DECLARATION IN HONG KONG --

23         THE COURT:  AND GIVE IT A LEGAL IMPORT.

24         MR. HANSEN:  AND SAY IT MEANS IT'S A DERIVATIVE WORK.

25         THE COURT:  AND THE COURT IS NOT GOING TO LET THEM DO    10:24

```
 1   THAT.  THAT'S PART OF THE REASON I DECLINE TO GO DOWN AND

 2   ACCEPT MR. ZELLER'S INVITATION EARLIER ON JUDICIAL ESTOPPEL,

 3   BECAUSE I THINK THERE'S TOO MANY COMPLICATING FACTORS FOR THE

 4   COURT TO DO THAT.

 5           AT THE SAME TIME, THIS INFORMS MY DECISION AND I --    10:24

 6   IT'S BECOMING CLEARER TO ME AS WE GO THROUGH THIS

 7   DISCUSSION THAT FACTUAL STATEMENTS, FACTUAL ASSERTIONS,

 8   PROVIDED THAT THEY ARE DIVORCED OF LEGAL LANGUAGE IN WHICH THEY

 9   REFLECT LEGAL CONCLUSIONS OR THEY REFLECT LEGAL PRINCIPLES, ARE

10   GOING TO BE ADMITTED.                                         10:25

11           MR. HANSEN:  LET ME ADDRESS YOUR SPECIFIC QUESTION ON

12   THE EYELASH AND THE EYE.

13           THE EXHIBIT THAT'S PUT UP -- IF WE'RE TALKING EYE TO

14   EYE, THAT'S ONE THING.  AND THAT IS PROBABLY THE BEST EXAMPLE

15   OF SOMETHING THAT COULD BE ARGUABLY FACT-BASED.               10:25

16           THE COURT:  I THINK IT IS, YES.

17           MR. HANSEN:  OKAY.  BUT THAT'S NOT WHAT THE REST OF

18   THEM ARE.

19           THE COURT:  I DON'T KNOW -- I MEAN, PART OF THIS --

20   WE'VE GOT A JURY NOW WAITING, AND I'M GOING TO BRING THE JURY  10:25

21   IN IN ABOUT FIVE MINUTES, BUT I THINK THE STANDARD THAT I'M

22   ARTICULATING IS CLEAR.  MR. PRICE SHOULD PROBABLY ERR ON THE

23   SIDE OF CAUTION IN OPENING STATEMENT.  THIS IS NOT GOING TO BE

24   THE ENTIRE TRIAL, THESE NEXT TWO HOURS.

25           I WILL ENTERTAIN OBJECTIONS IF ANYTHING GOES UP        10:25
```

1    THERE, WHICH -- LIKE I SAID, THE STANDARD THAT I AM GOING TO

2    ARTICULATE HERE AND HOW I'M RULING ON THIS IS THAT IF IT'S A

3    LEGAL CONCLUSION, IF IT'S BASED ON A LEGAL CONCEPT, IF IT'S NOT

4    STRICTLY FACTUAL-BASED, IT'S GOING TO STAY OUT.

5         IF IT IS A FACT-BASED STATEMENT, EVEN IF IT IS IN THE      10:26

6    CONTEXT OF A LEGAL ARGUMENT, IT'S GOING TO COME IN.  I KNOW

7    THAT MAY NOT BE AS CLEAR GUIDANCE AS YOU'D LIKE, BUT THAT'S THE

8    BEST I CAN DO RIGHT NOW.

9         **MR. HANSEN:**  YOUR HONOR, IF YOU LOOK AT THE OTHER

10   PLEADINGS, WHAT THE STARTING POINT IS FOR THE 'THIS DOLL LOOKS   10:26

11   LIKE THIS DOLL' IS NOT FACTUAL STATEMENTS AS TO EYELASHES AND

12   LIPS AND THINGS LIKE THAT.  IT'S THE GENERAL STATEMENT THAT

13   THIS DOLL INFRINGES THIS DOLL.  THAT'S IT.  THERE IS NO --

14   WE'RE NOT GETTING INTO DECLARATIONS OF -- IN ALMOST ALL OF THE

15   SITUATIONS, IT IS NOT --                                        10:26

16        **THE COURT:**  THOSE ARE TWO DIFFERENT STATEMENTS.  A

17   STATEMENT THAT THIS DOLL LOOKS LIKE ANOTHER DOLL, THAT IS A

18   COMMON LAY STATEMENT.  AND I DON'T THINK IT'S FAIR FOR MGA TO

19   RUN FROM THAT STATEMENT.

20        TO SAY THAT THIS DOLL INFRINGES ANOTHER DOLL, THAT IS      10:27

21   A STATEMENT THAT HAS A LEGAL CONCLUSION.  SO TO USE THE EXAMPLE

22   YOU JUST GAVE ME, I THINK THOSE ARE -- ONE WOULD BE IN AND ONE

23   WOULD BE OUT.

24        **MR. HANSEN:**  AND THE STATEMENTS IN THE MATERIALS --

25   AS YOU COULD IMAGINE, WHEN YOU'RE SUBMITTING THE PLEADINGS IN   10:27

```
 1   HONG KONG, YOU'RE NOT SAYING IT LOOKS LIKE; YOU'RE SAYING
 2   THAT -- IT COULD BE SUBSTANTIAL SIMILARITY.  IT IS INFRINGEMENT
 3   TERMS OF ART UNDER HONG KONG LAW OFF THAT FROM WHICH THEY ARE
 4   BASING THE GENERAL COMPARISON.
 5            THE COURT:  TERMS OF LEGAL ART ARE NOT GOING TO COME        10:27
 6   IN.
 7            I'M SAYING THAT GENERALLY.  AGAIN, I'M BEING ASKED TO
 8   RULE IN THE ABSTRACT ABOUT THE SPECIFICS BEFORE ME, SO IT MAY
 9   VERY WELL BE THAT A STATEMENT THAT MATTEL IS OFFERING CONTAINS
10   A PARTICULAR LEGAL TERM.  BUT IT'S SO CLEAR FROM THE STATEMENT      10:27
11   THAT IT IS ESSENTIALLY A FACT-BASED ASSERTION THAT I'M GOING TO
12   HOLD THAT IT IS ADMISSIBLE AS AN ADMISSION OF A PARTY OPPONENT.
13            ON THE OTHER HAND, A STATEMENT MAY APPEAR ON THE
14   SURFACE TO BE JUST A FACTUAL STATEMENT, BUT IT IS CLEAR THAT IT
15   IS RELATED TO A LEGAL CONCEPT, AND THAT'S WHAT I WILL EXCLUDE.      10:28
16   I'M SURE I WILL ANNOY BOTH SIDES MANY TIMES DURING THE COURSE
17   OF THIS TRIAL.  BUT THAT'S THE STANDARD THAT I'M GOING TO TRY
18   TO IMPOSE ON BOTH SIDES, AND I'LL DO THE BEST I CAN.
19            MR. HANSEN:  THE DIFFICULTY FOR PURPOSES OF
20   OPENING -- AND MAYBE A GOOD PORTION IS -- WHAT'S HAPPENING IS       10:28
21   THIS DOLL TO DOLL, DOLL TO DOLL, DOLL TO DOLL, DOLL TO DOLL,
22   THIS DOLL, VARIOUS NAMES, AGAINST THE BRATZ.  AND THE BASIS
23   UPON WHICH THE COMPARISON IS BEING MADE WOULD BE A PLEADING, OR
24   MR. LARIAN'S DECLARATION, WHERE HE SAYS THIS INFRINGES THAT.
25   THAT'S THE ONLY BASIS UPON WHICH THEY MAKE THE COMPARISON.  IT      10:28
```

```
 1    IS NOT A FACTUAL STATEMENT ANYWHERE WHERE WE GO THROUGH THE

 2    'THIS PUPIL LOOKS LIKE THIS.  THIS EYELASH HAS THIS' --

 3              THE COURT:  I UNDERSTAND THAT ALL OF THIS IS TAKING

 4    PLACE IN THE CONTEXT OF A LEGAL DISPUTE IN HONG KONG.  I HAVE

 5    PREVIOUSLY RULED IN RESPONSE TO MGA'S MOTION IN LIMINE NUMBER        10:28

 6    THREE THAT THE MERE FACT ALONE DOES NOT DISQUALIFY THESE

 7    STATEMENTS AS ADMISSIONS OF A PARTY OPPONENT.

 8              AGAIN, WHAT I'M TRYING TO AVOID HERE IS A LEGAL TRIAL

 9    WITHIN A TRIAL, THE 403 ISSUE CONCERN OF CONFUSING THE JURY

10    WITH VARYING LEGAL STANDARDS.  OTHERWISE, FOR THE REASONS --       10:29

11              MR. HANSEN:  ALL I'M TRYING TO GET AT IS THAT IT'S

12    NOT THE STATEMENTS THAT ARE GOING TO BE SHOWN TO THE JURY, AND

13    IT'S NOT A MATTER OF PUTTING UP A STATEMENT OF THE

14    INFRINGEMENT.  WHAT'S HAPPENING IS, IN THE DEMONSTRATIVE --

15    BECAUSE THAT'S NOT INTERESTING.  IT MAY BE; IT MAY NOT BE.  I       10:29

16    MEAN, IT'S PREJUDICIAL IN AND OF ITSELF.  BUT WHAT'S BEING DONE

17    IN THE OPENING ARE GRAPHICS OF THE DOLLS TO DOLLS, WHERE THERE

18    IS NOTHING IN THE CASE UNDERLYING THAT COMPARISON THAT MAKES

19    THE SORT OF FACTUAL ALLEGATIONS THAT YOUR HONOR IS TALKING

20    ABOUT.  SO THE PREJUDICE COMES IN FROM THE COMPARISON, WITHOUT      10:29

21    ANY OF THE UNDERLYING MGA STATEMENTS THAT YOUR HONOR WOULD SAY

22    WOULD MAKE THAT, PERHAPS, PROBATIVE.

23              THE COURT:  LIKE I SAY, I DON'T KNOW WHAT MR. PRICE

24    IS GOING TO DO OR NOT DO.  I'LL HAVE TO WAIT AND SEE ON THAT.

25    BUT I WILL GIVE YOU LEAVE TO MAKE OBJECTIONS TO THE EXTENT THAT     10:30
```

```
 1   THIS INFRINGES ON LEGAL CONCLUSIONS.

 2          MR. PRICE:  I'M NOT GOING TO PUT UP EVERY PART IN

 3   THESE PLEADINGS WHERE THEY SAY THE EYES ARE SIMILAR, THE NOSES

 4   ARE SIMILAR, ET CETERA.  I WILL TELL THE JURY THAT'S WHAT THEY

 5   SAID.                                                               10:30

 6          THE COURT:  KEEP IN MIND, THIS IS OPENING STATEMENT,

 7   NOT CLOSING ARGUMENT.  YOU'RE GOING TO HAVE A CHANCE TO MAKE

 8   YOUR ARGUMENT, DEPENDING ON WHAT EVIDENCE COMES IN.  IT WOULD

 9   CERTAINLY BE FAIR GAME TO TELL THE JURY THAT YOU ANTICIPATE

10   THAT EVIDENCE WILL INDICATE THAT STATEMENTS WERE MADE, FACTUAL      10:30

11   STATEMENTS, AND I'M GOING TO ADMIT THOSE.

12          MR. PRICE:  WHAT I DO PLAN TO PUT UP ARE THAT THEY'RE

13   BASING ALL OF THESE CASES ON CORE DRAWINGS WHICH WE NOW OWN.

14   THERE ARE STATEMENTS -- AND IT'S A FACTUAL STATEMENT, YOUR

15   HONOR -- WHERE THEY SAY -- THEY DESCRIBE KIND OF THE PROCESS.       10:30

16   THEY SAY MR. BRYANT'S DRAWINGS, THESE DRAWINGS, ARE THEN

17   REFERRED TO BY THE SCULPTOR.  ACTUALLY, IN A, B, C, D, AND E,

18   THEY ACTUALLY IDENTIFY -- THESE ARTISTS ALWAYS REFER TO THE

19   DRAWINGS IN DOING THEIR WORK.  THAT'S A FACTUAL STATEMENT.  AND

20   IT'S AN IMPORTANT FACTUAL STATEMENT.                                10:31

21          THE COURT:  THAT IS AN EXAMPLE OF A FACTUAL

22   STATEMENT, YES.

23          MR. PRICE:  AND THEN WE'RE GOING TO SAY, 'THESE ARE

24   THE DOLLS THAT WE'RE SUING ON.'  SAYING THAT THEY ARE SIMILAR

25   BECAUSE OF THE SHAPE OF EACH DOLL'S HEAD, BECAUSE OF THE SIZE       10:31
```

 1   OF EACH DOLL'S HEAD, COMPARISON TO THE REMAINDER OF THE DOLL IS

 2   THE SAME, THE SHAPE AND SIZE OF THE NOSE, THE SHAPE OF THE

 3   EYES -- THESE ARE VERY SPECIFIC FACTUAL ALLEGATIONS.

 4           **THE COURT:**  VERY WELL.

 5           **MR. NOLAN:**  YOUR HONOR, MY ONLY POINT WITH RESPECT TO    10:31

 6   WHAT MR. PRICE SAID -- I UNDERSTAND THE COURT'S DISTINCTION

 7   BETWEEN LEGAL ARGUMENTS AND FACTUAL STATEMENTS.

 8           **THE COURT:**  MY INITIAL RULING WAS ON LEGAL

 9   CONCLUSIONS BY THE COURT.  WHAT I CERTAINLY DON'T WANT TO HAVE

10   THIS JURY TOLD IS THAT A JUDGE IN HONG KONG HAS FOUND, UNDER       10:31

11   HONG KONG LAW, THAT THERE'S BEEN INFRINGEMENT.  THAT IS

12   VERBOTEN.  IF ANYONE COMES CLOSE TO THAT, THERE WILL BE A

13   SERIOUS SANCTION FROM THE COURT.  THAT IS A CLEAR PARAMETER

14   HERE.

15           ON A SECONDARY LEVEL, WHERE IT'S GOING TO BE A LITTLE      10:32

16   TOUGHER IS THIS DISTINCTION BETWEEN FACTUAL ASSERTIONS OF MGA'S

17   CONDUCT, WHAT THEY HAVE DONE; WHAT THEY HAVE BASED THEIR

18   ACTIONS ON; WHAT ASSERTIONS, FACTUAL ASSERTIONS, THEY HAVE MADE

19   IN THE COURSE OF THAT LITIGATION, VERSUS LEGAL ARGUMENTS AND

20   LEGAL CONCLUSIONS THAT ARE BASED ON HONG KONG LAW.  THAT'S WHAT    10:32

21   I'M TRYING TO DIVIDE HERE.

22           **MR. NOLAN:**  I UNDERSTAND.

23           BUT I JUST WANT TO MAKE CERTAIN THAT I'M CLEAR ABOUT

24   SOMETHING.

25           WHAT WILL HAPPEN IS THAT THEY WILL USE THE FACTUAL         10:32

```
 1   STATEMENT -- THEY WILL USE THE OFFENDING PRODUCT, THAT IT IS
 2   ASSERTED AGAINST, AND THEY WILL SKIP YOUR WELL-REASONED VIEW
 3   THAT WE'RE NOT GOING TO GET INTO THE LAW IN HONG KONG.  BUT BY
 4   THE DIRECT COMPARISON TO THIS JURY, THEY ARE THEN GOING TO
 5   CREATE THE PREJUDICIAL LINK TEST THAT CANNOT BE TAKEN BACK        10:32
 6   WITHOUT THEN HAVING THE TRIAL WITHIN THE TRIAL.  EVERY LITIGANT
 7   MAKES FACTUAL STATEMENTS IN A LAWSUIT IN THE CONTEXT OF
 8   LEGAL --
 9           THE COURT:  THE JURY IS NOT GOING TO KNOW HOW THAT
10   WAS RESOLVED.  THEY ARE JUST GOING TO HAVE THE FACTUAL           10:33
11   STATEMENTS THAT WERE MADE.
12           MR. NOLAN:  BUT THEY ARE GOING TO HAVE THE FACTUAL
13   STATEMENT THAT WAS MADE, AND APPARENTLY, THE 3-D INFRINGING
14   PRODUCT, OR THE ALLEGED INFRINGING PRODUCT, OVER IN HONG KONG.
15           THE COURT:  THAT'S PART OF THE FACTUAL STATEMENT.        10:33
16           MR. NOLAN:  BUT WITHOUT THE BENEFIT OF UNDERSTANDING,
17   A, WHETHER OR NOT IT WAS BEING TESTED BY A DIFFERENT TEST THAN
18   THEY WERE GOING TO BE ASKED -- AND THAT'S THE CONFUSING PART OF
19   IT.
20           THE COURT:  I APPRECIATE YOUR ARGUMENT, COUNSEL.         10:33
21           MR. NOLAN:  THE LAST POINT I WOULD MAKE, YOUR HONOR,
22   IT WOULD BE -- AND MAYBE WE SHOULD DO THIS -- IT WOULD BE AS
23   THOUGH, NOW, WE TAKE -- BECAUSE MATTEL, OF COURSE, CLAIMS
24   COPYRIGHT OWNERSHIP ON THESE DRAWINGS -- FOR US TO GO TO THE
25   VARIOUS LITIGATIONS THAT MATTEL HAS BEEN ENGAGED IN, WHERE THEY  10:33
```

```
 1    HAVE ASSERTED COPYRIGHT INFRINGEMENT AGAINST PRODUCTS THAT WE
 2    MIGHT BELIEVE IS EQUALLY REMOVED FROM THE ORIGINAL ARTISTIC
 3    WORK.  AND WE SHOULD BE ABLE TO DO THAT, BECAUSE THEY ARE
 4    ASSERTING THAT SAME ISSUE, AND WE WOULD SAY THAT THAT'S AN
 5    INCONSISTENT POSITION.  IF YOU'RE SAYING THAT THESE DRAWINGS      10:34
 6    ARE SIMILAR -- I'M JUST SAYING THAT THE OPPOSITE IS TRUE FOR
 7    MATTEL, AS WELL, WITH RESPECT TO POSITIONS THAT THEY HAVE TAKEN
 8    IN OTHER LITIGATIONS THAT MAY BE INCONSISTENT WITH WHAT THEY
 9    ARE ARGUING HERE.
10         THE COURT:  AT THIS POINT, I DON'T KNOW WHAT YOU ARE         10:34
11    REFERRING TO IN TERMS OF OTHER POSITIONS MATTEL HAS TAKEN.  I'M
12    JUST NOT FOLLOWING YOU AT THIS POINT.
13         MR. NOLAN:  WELL, YOUR HONOR, THE COURT HAD EVIDENCE
14    IN THE GOLDBERGER CASE, FOR INSTANCE.  WE'VE SUBMITTED IN
15    PREVIOUS HEARINGS THAT MATTEL TOOK INCONSISTENT POSITIONS IN      10:34
16    THE SECOND CIRCUIT THAN THEY ARE ASSERTING HERE WITH RESPECT TO
17    PROTECTABILITY.
18         THE COURT:  I'M NOT ALLOWING --
19         MR. NOLAN:  WHY WOULD I BE PROHIBITED FROM USING
20    MATTEL'S FACTUAL STATEMENTS IN FRONT OF JUDGE RAYKOFF IN THE      10:35
21    GOLDBERGER CASE AGAINST THE POSITIONS THAT THEY ARE ASSERTING
22    HERE?
23         THE COURT:  WHAT FACTUAL STATEMENT ARE YOU REFERRING
24    TO?
25         MR. NOLAN:  IN COMPARING BARBIE CEO TO THE ROCKETTE          10:35
```

```
 1   CASE, AND OTHER INSTANCES WHERE --

 2          THE COURT:  WHAT FACTUAL STATEMENT WOULD YOU WANT TO

 3   USE IT FOR AND TO IMPEACH WHAT POSITION?

 4          THESE STATEMENTS THAT MATTEL HAS IDENTIFIED ARE

 5   SPECIFIC STATEMENTS THAT ARE BEING USED TO IMPEACH PARTICULAR        10:35

 6   POSITIONS, PARTICULAR EVIDENCE BEING OFFERED BY MGA.  IF YOU

 7   CAN FIND SOMETHING WHERE THEY ARE JUDICIALLY ESTOPPED FROM

 8   TAKING A POSITION, THE COURT WILL CONSIDER THAT.

 9          THIS APPLIES TO -- JUDICIAL ESTOPPEL DOESN'T APPLY

10   JUST TO MGA.  IT APPLIES TO BOTH SIDES.  I'M TRYING TO ADDRESS       10:35

11   THE JUDICIAL ESTOPPEL ISSUE, WHICH I'M NOT PREPARED -- AND I

12   WAS NOT PREPARED TO ENGAGE IN AT -- OR RULE ON ON A MOTION FOR

13   SUMMARY JUDGMENT, BECAUSE I DID NOT THINK THERE WAS A

14   SUFFICIENT BASIS BEFORE THE COURT AT THAT TIME TO MAKE THAT

15   RULING, BECAUSE IT DID NOT HAVE BEFORE IT WHAT IT WOULD HAVE         10:36

16   NEEDED TO MAKE THE JUDICIAL ESTOPPEL ARGUMENT.

17          AT THE SAME TIME, I COME BACK TO THE POINT THAT I

18   THINK IS WELL MADE BY MR. ZELLER ABOUT THE FUNDAMENTAL FAIRNESS

19   OF TAKING A -- MAKING FACTUAL STATEMENTS AND INTRODUCING

20   EVIDENCE THROUGH THE COMPANY THAT IS AT ODDS WITH PREVIOUS           10:36

21   STATEMENTS IN THIS PARTICULAR LITIGATION, IN THIS PARTICULAR

22   SUBJECT MATTER, IN THIS PARTICULAR DOLL, NAMELY BRATZ.  AND IF

23   THERE'S SOMETHING SIMILAR THAT YOU WANT TO INTRODUCE, PROFFER

24   IT TO THE COURT AND THE COURT WILL CONSIDER THAT ARGUMENT.

25          MR. NOLAN:  ALL RIGHT.  BUT THE RECORD WILL CLEARLY           10:36
```

1  REFLECT THAT PARTIES HAVE TAKEN POSITIONS IN THIS CASE AND MADE

2  FACTUAL ARGUMENTS THAT MAY OR MAY NOT BE INCONSISTENT --

3      **THE COURT:**  YOU NEED TO SPECIFY.  YOU'RE BEING VERY

4  GENERAL NOW.  GIVE ME A SPECIFIC INSTANCE -- AND IF YOU'RE

5  ASKING TO USE THAT EVIDENCE, I'LL GIVE YOU LEAVE TO USE IT, BUT   10:36

6  I'M NOT GOING TO SIT HERE AND HAVE YOU JUST MAKE GENERAL

7  STATEMENTS ABOUT WHAT THE COURT HAS OR HAS NOT DONE WITHOUT

8  GIVING ME A SPECIFIC REFERENCE, COUNSEL.

9      **MR. NOLAN:**  WE HAVE SUBMITTED, AS PART OF THE SUMMARY

10  JUDGMENT RECORD, STATEMENTS WITH RESPECT TO SIMILARITIES OR   10:37

11  DISSIMILARITIES BETWEEN DRAWINGS AND DOLLS.  WE DID THAT IN

12  SUPPORT OF VARIOUS --

13      **THE COURT:**  WHAT DOLLS?  WHAT SIMILARITIES?  WHAT

14  SPECIFICALLY ARE YOU REFERRING TO?

15      **MR. NOLAN:**  LET'S SAY THE FIRST GENERATION AND   10:37

16  CERTAIN ASPECTS OF THE FIRST GENERATION DOLLS.  LET'S SAY THE

17  EYES.  LET'S JUST FOCUS ON EYES FOR JUST A MOMENT.

18      **THE COURT:**  ALL RIGHT.

19      **MR. NOLAN:**  AND I'LL BE SPECIFIC.  I'LL SAY WITH

20  RESPECT TO JADE.   10:3'

21      **THE COURT:**  OKAY.

22      **MR. NOLAN:**  SO WITH RESPECT TO THAT, YOUR HONOR,

23  THOSE ARGUMENTS AND THOSE POSITIONS WERE BEING TAKEN, URGING

24  THE COURT TO ADOPT A CERTAIN POSITION UNDER NINTH CIRCUIT LAW.

25      **THE COURT:**  WHAT POSITION?   10:3'

```
 1            MR. NOLAN:   WHETHER OR NOT THEY ARE ENTITLED TO BROAD
 2   OR THIN PROTECTION.
 3            THE COURT:   OKAY.
 4            MR. NOLAN:   SO THEY ARE MADE IN THE CONTEXT.
 5            WHERE AN ADVOCATE, WHICH THEY ARE ENTITLED TO DO,          10:37
 6   MAKES AN ARGUMENT TO THE COURT TO URGE THE COURT TO ADOPT WHAT
 7   WE THOUGHT WAS THE PREVAILING NINTH CIRCUIT STANDARD.
 8            THE COURT NOW YESTERDAY RULED, IN ADVANCE OF THE
 9   TRIAL, WHAT YOU BELIEVE TO BE THE APPROPRIATE TEST, CITING THE
10   SATAVA CASE.                                                       10:38
11            THE COURT:   YES.
12            MR. NOLAN:   NOW HAVING THAT RULING, AND UNDERSTANDING
13   THE SCOPE OF THAT RULING, TO GO FORWARD NOW ON THE TRIAL,
14   LETTING US ADJUST TO THAT RULING NOW THAT IT'S BEEN MADE ON THE
15   EVE OF TRIAL -- AND I'M NOT CRITICIZING; I'M JUST SAYING THAT'S    10:38
16   THE WAY IT WAS FRAMED -- WHY SHOULD ANOTHER PARTY BE ALLOWED TO
17   TAKE OUT OF LEGAL ARGUMENT CONTEXT A POSITION THAT WAS BEING
18   ADVOCATED BY A PARTY UNDER A STANDARD?   THAT'S THE POINT THAT
19   I'M MAKING.
20            THE COURT:   YOU'RE BACK TO THE SAME ARGUMENT THAT WAS    10:38
21   VERY WELL MADE IN THE BRIEF.  I'VE RULED ON THAT.  WE'RE NOW
22   GOING IN CIRCLES.
23            MR. ZELLER, MR. PRICE, ANYTHING FURTHER?
24            MR. ZELLER:   UNLESS THE COURT HAS ANY FURTHER
25   QUESTIONS ON THE SPECIFICS HERE, THE ONLY THING I WANT TO --       10:38
```

```
 1              THE COURT:  I DON'T.

 2         AND JUST FOR THE RECORD, I STILL DIDN'T GET ANYTHING

 3    FROM MR. NOLAN WITH RESPECT TO A SPECIFIC EXAMPLE OF JUDICIAL

 4    ESTOPPEL ARGUMENT OR STATEMENTS THAT MGA WISHES TO INTRODUCE

 5    VIS-À-VIS MATTEL.  THAT'S NOT BEFORE THE COURT, AND THERE'S      10:39

 6    NOTHING FOR ME TO RULE ON.  MGA HAS LEAVE TO BRING THAT TO THE

 7    COURT'S ATTENTION IF AND WHEN THEY DECIDE TO DO SO.

 8              MR. ZELLER:  WHAT I WOULD LIKE TO PROPOSE,

 9    YOUR HONOR, IS AN ALTERNATIVE FOR ANY STATEMENTS THAT WERE MADE

10    IN MGA'S OTHER LITIGATION THAT FALL WITHIN THE AMBIT OF WHAT     10:39

11    THE COURT BELIEVES IS MORE THE LEGAL CONCLUSION AND THAT,

12    THEREFORE, IS NOT REALLY THE SUBJECT OF PROPERLY BEING PUT

13    BEFORE THE JURY, AT LEAST BY US.

14         WHAT I WOULD REQUEST, YOUR HONOR, FOR ANY STATEMENTS

15    SUCH AS THOSE, THAT WE BE GIVEN AN OPPORTUNITY TO BASICALLY      10:39

16    UNPACK THAT, INCLUDING BY MAKING SUBMISSIONS UNDER EXACTLY WHAT

17    HONG KONG LAW IS, AND THEN HAVE THE COURT TELL THE JURY THAT'S

18    WHAT THE IMPORT OF THE STATEMENT IS, POTENTIALLY.

19         THAT AVOIDS THE ISSUE OF GIVING THEM A GENERAL

20    INSTRUCTION ON HONG KONG LAW.                                   10:40

21         ON THE OTHER HAND, IT ENSURES THAT WE DON'T

22    ESSENTIALLY JUST GUT THE DOCTRINE OF JUDICIAL ESTOPPEL.

23    BECAUSE THAT IS REALLY FUNDAMENTALLY WHAT THEY ARE SUGGESTING,

24    IS 'WHETHER LEGAL DIFFERENCES, IT WOULD BE CONFUSING TO THE

25    JURY; YOU, JUDGE, SHOULDN'T RULE ON JUDICIAL ESTOPPEL,' BUT      10:40
```

| | |
|---|---|
| 1 | WHAT THAT MEANS IS THAT THEY ESSENTIALLY ARE BEING ALLOWED TO |
| 2 | TAKE INCONSISTENT POSITIONS BETWEEN COURTS, WHICH IS PRECISELY |
| 3 | WHY THAT DOCTRINE EXISTS. |
| 4 | SO WE FALL INTO THIS LIMBO. |
| 5 | **THE COURT:** I UNDERSTAND YOUR ARGUMENT, AND THIS IS |
| 6 | WHERE I'M -- I'M WITH MGA ON THIS ARGUMENT. I THINK THE 403 |
| 7 | CONCERNS PRECLUDE EITHER THE INSTRUCTION OR THE UNPACKING THAT |
| 8 | YOU'RE SUGGESTING RIGHT NOW. |
| 9 | IN A PERFECT WORLD, I WISH -- IT WOULD BE GREAT TO BE |
| 10 | ABLE TO UNPACK ALL OF THIS BEFORE THE JURY. UNDER THE TIME |
| 11 | CONSTRAINTS OF THIS TRIAL -- AND MY CONCERNS ABOUT THE |
| 12 | MULTIPLICITY OF COPYRIGHT ISSUES THAT THIS JURY IS GOING TO |
| 13 | HAVE TO GRAPPLE WITH AND THEIR COMPLEXITY -- I'M CONCERNED ON |
| 14 | 403 GROUNDS TO GIVE FULL EFFECT TO THIS. THE RELEVANCE OF THAT |
| 15 | IS OUTWEIGHED BY THE CONFUSING NATURE OF THAT INSTRUCTION, |
| 16 | UNPACKING AND UNPACKAGING. |
| 17 | AT THE SAME TIME, I UNDERSTAND THE ARGUMENT, AND I'M |
| 18 | ATTEMPTING TO STRIKE A BALANCE HERE BETWEEN ENSURING THE |
| 19 | JUDICIAL ESTOPPEL EFFECT BY PERMITTING THE FACT-BASED |
| 20 | STATEMENTS IN, WHILE PRECLUDING THE LEGAL ARGUMENTS, THE LEGAL |
| 21 | CONCLUSIONS, MOST IMPORTANTLY, IN, WHICH WOULD REQUIRE A TRIAL |
| 22 | WITHIN A TRIAL. |
| 23 | THAT'S THE BALANCE I'M TRYING TO ACHIEVE HERE. |
| 24 | **MR. ZELLER:** I UNDERSTAND THAT BALANCE, YOUR HONOR. |
| 25 | WHAT I THINK I WAS -- WHAT I'M SUGGESTING, HOWEVER, |

10:40
10:40
10:41
10:41
10:41

1  IS THAT IF THE JURY IS TOLD -- THOSE STATEMENTS ARE PUT INTO

2  PLAIN ENGLISH AND TOLD TO THE JURY -- THAT'S WHAT I'M

3  SUGGESTING.

4  　　　　THIS IS REALLY A LEGAL INTERPRETATION OR CONSTRUCTION

5  POINT, WHICH, TO THE EXTENT OF WHAT THOSE STATEMENTS FALL INTO.  10:42

6  I MEAN, THE FACT IS THAT THEY SAY -- AND THEY USE THE LEGAL

7  TERMINOLOGY, WHICH IS INEVITABLE, OBVIOUSLY, IN LITIGATION IN

8  HONG KONG, BUT THAT'S TRUE FOR ANYTHING WHERE THERE'S JUDICIAL

9  ESTOPPEL.

10  　　　　**THE COURT:**  WE'RE NOT GOING TO GO THERE.  10:42

11  　　　　THANK YOU, COUNSEL.

12  　　　　**MR. ZELLER:**  THANK YOU.

13  　　　　**MR. PRICE:**  YOUR HONOR, I THINK THERE WERE TWO OTHER

14  ISSUES.

15  　　　　**THE COURT:**  I UNDERSTAND -- I'M GOING TO GET TO THEM  10:42

16  AS SOON AS I'M DONE WITH THIS ISSUE, COUNSEL.

17  　　　　**MR. PRICE:**  I THOUGHT WE WERE DONE.

18  　　　　**THE COURT:**  MR. HANSEN, ANYTHING FURTHER?

19  　　　　**MR. HANSEN:**  THE DIFFICULTY IS --  JUST TO MAKE IT

20  CLEAR -- WHAT'S HAPPENING IS THAT THIS LOOKS LIKE THIS -- IN  10:42

21  HONG KONG, WHAT'S ACCUSED OF INFRINGEMENT IS THE STATEMENT --

22  WHAT'S HAPPENING IS THAT IT'S BYPASSING ALL OF THE FILTRATION

23  THAT IS GOING ON IN THIS TRIAL TO MAKE THE DETERMINATION

24  BETWEEN WHETHER THE BRATZ DOLL LOOKS LIKE THIS DRAWING.  SO THE

25  PREJUDICE IS THAT THE JURY IS GOING TO HAVE ALL OF THESE, 'LOOK  10:42

| | |
|---|---|
| 1 | AT THIS; DON'T THEY LOOK THE SAME OR DON'T THEY LOOK |
| 2 | DIFFERENT.' |
| 3 | **THE COURT:**  THAT'S PART OF THE INTRINSIC ANALYSIS. |
| 4 | **MR. HANSEN:**  THAT'S THE INTRINSIC ANALYSIS.  AND |
| 5 | THAT'S THE POINT.  YOU DON'T DO THE INTRINSIC ANALYSIS IN |
| 6 | HONG KONG. |
| 7 | **THE COURT:**  I UNDERSTAND THAT.  AND THAT'S WHY THE |
| 8 | CONCLUSIONS IN THE HONG KONG COURT DON'T COME IN, BECAUSE THEY |
| 9 | ARE LACKING THAT EXTRINSIC ANALYSIS.  THAT'S MY VERY POINT AND |
| 10 | WHY I'M NOT GOING DOWN THE JUDICIAL ESTOPPEL ROAD BEING INVITED |
| 11 | BY MR. ZELLER. |
| 12 | IN TERMS OF THE INTRINSIC ANALYSIS, THE WHOLE ISSUE |
| 13 | OF SIMILARITY, IT WOULD BE ENTIRELY UNFAIR, FROM THIS COURT'S |
| 14 | PERSPECTIVE, FOR -- WHEN YOU GET TO THE COMPARISON PART, THAT |
| 15 | IS, THE INTRINSIC ANALYSIS UNDER NINTH CIRCUIT LAW, AND |
| 16 | SUBSTANTIAL SIMILARITY UNDER HONG KONG LAW -- WHICH APPARENTLY, |
| 17 | AT LEAST BASED ON WHAT WE'VE SEEN HERE, IS NOTHING BUT |
| 18 | INTRINSIC ANALYSIS -- FOR THE PARTIES TO SAY -- FOR MGA TO SAY |
| 19 | ON THE ONE HAND, THE EYES LOOK DISSIMILAR, AND ON THE OTHER |
| 20 | HAND, THEY DON'T, OR THAT THEY ARE BASED ON THE DRAWINGS OR |
| 21 | THEY ARE NOT. |
| 22 | THAT'S ALL I'M GOING ON.  I'M TRYING TO CAPTURE THAT |
| 23 | WHICH IS APPROPRIATE FOR JUDICIAL ESTOPPEL PURPOSES, WITHOUT |
| 24 | GOING THE FULL MEASURE AND DOING THE -- PRESENTING THE LEGAL |
| 25 | ARGUMENTS AND THE LEGAL CONCLUSIONS TO THE JURY. |

10:43
10:43
10:43
10:43
10:43
10:44

| 1 | MR. HANSEN: WHAT'S BEING DONE IN HONG KONG IS THE |
|---|---|

 1    MR. HANSEN:  WHAT'S BEING DONE IN HONG KONG IS THE

 2   INTRINSIC PART OF THE TEST.  SO WHEN YOU GET TO THE END GAME,

 3   ASSUMING THIS ALL COMES IN, WHAT THE JURY IS GOING TO HAVE TO

 4   DO TO ACTUALLY MAKE IT PROBATIVE IN THIS CASE IS TO TAKE A LOOK

 5   AT THE HONG KONG DOLLS THAT ARE BEING PUT UP, DO THE FILTERING        10:44

 6   ANALYSIS THAT THEY ARE REQUIRED TO DO IN CONNECTION WITH THE

 7   BRATZ DOLLS.  SO WE HAVE --

 8    THE COURT:  THEY ARE NOT BEING CALLED UPON TO DO AN

 9   INFRINGEMENT ANALYSIS OF THOSE DOLLS.  I DISAGREE WITH YOU.

10    MR. HANSEN:  THAT'S EXACTLY THE POINT, IS THAT WHAT'S    10:44

11   HAPPENING IS THAT YOU'RE SUGGESTING WHAT THE JURY IS SEEING IS

12   AN INFRINGEMENT ANALYSIS THAT'S DONE WITHOUT THE EXTRINSIC --

13    THE COURT:  THEY ARE NOT GOING TO BE DOING AN

14   INFRINGEMENT ANALYSIS.  THIS IS SIMPLY GOING TO THE ISSUE OF

15   STATEMENTS OR POSITIONS TAKEN BY MR. LARIAN AND MGA IN TERMS OF    10:44

16   WHETHER THESE DOLLS LOOK ALIKE OR NOT.

17    MR. HANSEN:  AND WHAT THEY ARE USING TO SAY LOOKS

18   ALIKE IS SOMETHING THAT WE CLAIM INFRINGED UNDER A DIFFERENT

19   STANDARD WHERE THE LOOK-ALIKE TEST DOESN'T FILTER OUT THE

20   ELEMENTS THAT ARE GOING TO BE FILTERED OUT HERE --        10:45

21    THE COURT:  I UNDERSTAND THAT.

22    MR. HANSEN:  -- WHERE THE INFRINGEMENT STANDARD HERE

23   IS DIFFERENT, SO THE DOLLS THERE ARE REALLY NOT PROBATIVE,

24   BECAUSE THE COMPARISON IS NOT APPLES AND APPLES.  BECAUSE IN

25   ORDER TO MAKE AN APPLES-TO-APPLES COMPARISON, YOU HAVE TO    10:45

1    FILTER OUT THE HONG KONG DOLLS TO SEE WHAT'S LEFT FOR THE --

2              **THE COURT:**  I DO UNDERSTAND YOUR ARGUMENT, COUNSEL.

3              **MR. HANSEN:**  OKAY.  THANK YOU, YOUR HONOR.

4              **THE COURT:**  VERY WELL.

5              AGAIN, BEFORE WE GET STARTED HERE, IS THERE ANYTHING        10:45

6    FROM MGA IN TERMS OF JUDICIAL ESTOPPEL ISSUES THAT YOU'RE

7    LOOKING FOR FROM THIS COURT?  BECAUSE I WILL CERTAINLY

8    ENTERTAIN THAT.

9              I DON'T WANT TO HAVE THIS RECORD LEFT IN THE CURRENT

10   STATE THAT IT'S IN, WITHOUT ONE, ONE WAY OR THE OTHER.            10:45

11             **MR. NOLAN:**  I UNDERSTAND, YOUR HONOR.  WHAT I'D ASK

12   TO DO IS -- WE UNDERSTAND THE COURT'S RULING AS OF NOW.  WITH

13   RESPECT TO THAT, I WANTED TO BE OPEN FOR CONSIDERATION.  LET ME

14   GO BACK -- LET ME GET THE CASES.  I DON'T HAVE THEM READILY

15   AVAILABLE, NOR THE STATEMENTS, FOR INSTANCE, FROM GOLDBERGER.       10:45

16             **THE COURT:**  VERY WELL.

17             **MR. NOLAN:**  I HAVE ENOUGH ISSUES WITH MY OWN OPENING

18   STATEMENT.

19             **THE COURT:**  SO IT WON'T BE PART OF OPENING STATEMENT.

20   WE CAN TAKE THAT UP IN THE COURSE OF THE TRIAL.                   10:46

21             WITH RESPECT TO THE -- BASICALLY, WHERE I AM ON --

22   I'M GOING TO PERMIT BOTH THE GRUCA AND THE KIVITZ REPORTS IN.

23   I'M GOING TO DENY MATTEL'S MOTION *IN LIMINE* TO EXCLUDE THE

24   GRUCA REPORT.  AND BASICALLY, I'M ADOPTING THE EQUITABLE

25   ANALYSIS ON THAT.  I JUST THINK THAT BASED ON THE TOTALITY OF      10:46

```
 1    THE CIRCUMSTANCES HERE, BOTH REPORTS SHOULD COME IN.
 2              THERE'S NO QUESTION THAT MGA SHOULD HAVE DISCLOSED
 3    THE SURVEY IN THEIR INITIAL REPORT, AND THERE'S NO QUESTION
 4    THAT MATTEL SHOULD HAVE PROBABLY DISCLOSED THIS A COUPLE OF
 5    WEEK AGO; BUT IN ANY EVENT, I'M ALLOWING BOTH IN FOR PURPOSES        10:47
 6    OF PHASE 1-B.
 7              WITH RESPECT TO THE NET PROFITS, ALL LEGAL AUTHORITY
 8    THAT THE COURT IS FAMILIAR WITH SUGGESTS THAT IS A REQUIRED
 9    FACTOR FOR THE JURY TO CONSIDER; SO NET PROFITS [SIC] ARE
10    COMING IN.                                                          10:47
11              AND THEN I'VE GIVEN YOU MY RULING ON THE HONG KONG
12    CASES.
13              MR. ROTH?
14         MR. ROTH:  VERY BRIEFLY ON THE ISSUE WITH RESPECT TO
15    MR. KIVITZ.  OBVIOUSLY, GIVEN THE FACT --                          10:47
16         THE COURT:  YES.  YOU MAY TAKE HIS DEPOSITION NEXT
17    WEEK.
18         MR. ROTH:  THANK YOU, YOUR HONOR.
19         MR. PRICE:  YOU SAID PROFITS; I THINK YOU MEANT
20    MR. LARIAN'S NET WORTH.                                            10:47
21         THE COURT:  YES.  WHAT DID I SAY?
22         MR. PRICE:  NET PROFITS.
23         THE COURT:  HIS NET WORTH.
24         MR. PRICE:  AND THE OTHER ISSUE THAT WAS RAISED WAS
25    WHETHER OR NOT WE COULD REFER TO MR. NOLAN'S -- WHAT WE SAY IS      10:47
```