1              UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3                    EASTERN DIVISION

4                       - - -

5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                       - - -

7    MATTEL, INC.,                    )
                                      )
8              PLAINTIFF,             )
                                      )
9         VS.                         ) NO. ED CV 04-09049
                                      )
10   MGA ENTERTAINMENT, INC.,         )
     ET. AL.,                         )
11                                    )
               DEFENDANTS.            ) CONFERENCE
12   _____)
     AND CONSOLIDATED ACTIONS,        )
13   _____)

14

15         REPORTER'S TRANSCRIPT OF PROCEEDINGS

16               RIVERSIDE, CALIFORNIA

17              MONDAY, AUGUST 18, 2008

18                    9:02 A.M.

19

20                    COPY

21

22

23          KYUNG LEE-GREEN, CSR NO. 12655
           FEDERAL CONTRACT COURT REPORTER
24           3470 12TH STREET, RM. 134
           RIVERSIDE, CALIFORNIA 92501
25               (951)274-0844

                                              7874

```
 1   APPEARANCES:

 2

 3   ON BEHALF OF MATTEL:

 4                     QUINN EMANUEL
                       BY:  MIKE ZELLER, ESQ.
 5                          DYLAN PROCTOR, ESQ.
                       865 SOUTH FIGUEROA STREET
 6                     10TH FLOOR
                       LOS ANGELES, CALIFORNIA 90017
 7                     (213)624-7707

 8

 9   ON BEHALF OF MGA ENTERTAINMENT AND ISAAC LARIAN:

10                     SKADDEN, ARPS, SLATE, MEAGHER &
                       FLOM, LLP
11                     BY:  THOMAS NOLAN, ESQ.
                            CARL ROTH, ESQ.
12                          LAUREN AGUIAR, ESQ.
                            RAOUL KENNEDY, ESQ.
13                     300 SOUTH GRAND AVENUE
                       LOS ANGELES, CALIFORNIA 90071-3144
14                     (213)687-5000

15

16

17

18

19

20

21

22

23

24

25
                                                    7875
```

```
 1                        I N D E X

 2                                              PAGE

 3   MOTION                                     7877

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
                                        7876
```

1    RIVERSIDE, CALIFORNIA; MONDAY, AUGUST 18, 2008; 9:02 A.M.

2                           -oOo-

3           THE COURT:  THE FIRST MATTER ON THE CALENDAR WAS

4    TO BE THE MGA ENTERTAINMENT VS. HARTFORD INSURANCE GROUP AND

5    MGA ENTERTAINMENT VS. CRUM & FORSTER SPECIALTY INSURANCE,

6    BUT I UNDERSTAND COUNSEL -- ONE OF -- ONE OF THE ATTORNEYS

7    IS -- THERE WAS SOME MISCOMMUNICATION AND WON'T BE HERE

8    UNTIL TEN O'CLOCK.  SO WE'RE GOING TO PUT THAT MATTER OVER

9    UNTIL TEN O'CLOCK.

10          IN THE INTERIM, WE'LL CALL THE UNDERLYING MATTEL

11   VS. MGA CASE.

12          MR. BIDART:  THANK YOU.

13          THANK YOU, MR. BIDART.

14          THE CLERK:  CALLING NO. 6, IN THE MATTER OF

15   MATTEL, INCORPORATED, VS. MGA ENTERTAINMENT, INCORPORATED,

16   CASE NO. CV 04-9049.

17          MAY WE HAVE COUNSEL IN THAT MATTER PLEASE STATE

18   YOUR APPEARANCES FOR THE RECORD.

19          MR. ZELLER:  GOOD MORNING, YOUR HONOR.

20   MIKE ZELLER AND DYLAN PROCTOR FOR MATTEL.

21          THE COURT:  COUNSEL.

22          MR. NOLAN:  GOOD MORNING, YOUR HONOR.  TOM NOLAN,

23   LAUREN AGUIAR, AND CARL ROTH.  AND RAOUL KENNEDY WILL BE

24   HERE SHORTLY ON BEHALF OF MGA AND ISAAC LARIAN.

25          THE COURT:  GOOD MORNING, COUNSEL.

                                              7877

1        THE COURT, ON FRIDAY, PROVIDED YOU A DRAFT SET OF

2    JURY INSTRUCTIONS.  I CERTAINLY WANT TO HEAR FROM THE

3    PARTIES ON THAT.

4        I ALSO WANT TO HEAR FROM THE PARTIES ON THE

5    VERDICT FORM.

6        WHAT -- ONE OF THE FUNDAMENTAL ISSUES THAT WE NEED

7    TO ADDRESS IS THE DIVERGENCE IN THE PARTIES' PROPOSED

8    VERDICT FORM BETWEEN MATTEL'S APPROACH TO THE COPYRIGHT

9    INFRINGEMENT AND MGA'S APPROACH TO THE COPYRIGHT

10   INFRINGEMENT.

11       MATTEL SIMPLY ASKS A QUESTION OR TWO CONCERNING

12   WHETHER OR NOT INFRINGEMENT HAS TAKEN PLACE, WHEREAS MGA

13   SEEKS THE JURY, AS WE DID IN PHASE 1-A, TO -- TO GO THROUGH

14   AND ANSWER A SERIES OF INTERROGATORIES RELATED TO SPECIFIC

15   PRODUCTS.

16       I THINK THAT'S PROBABLY OF THE MOST FUNDAMENTAL

17   DIFFERENCE BETWEEN THE TWO PROPOSED VERDICTS FORMS.  OF

18   COURSE, THERE'S OTHERS AS WELL IN TERMS OF WORDING OF

19   QUESTIONS.  BUT THAT'S -- THAT'S ONE THAT I'M ANXIOUS TO --

20   TO TAKE UP SOONER AS OPPOSED TO LATER.

21       WHY DON'T WE BEGIN WITH THE JURY INSTRUCTIONS,

22   THOUGH.  I'D LIKE TO HEAR ON THOSE.  AND ONCE WE HAVE THAT

23   MORE OR LESS SETTLED, I THINK THEN THE VERDICT FORM CAN

24   BE -- CAN PROCEED.

25       AND I'VE ALSO RECEIVED NOW MATTEL'S OBJECTIONS TO

```
 1    THE MGA'S PARTY'S INSTRUCTION REGARDING COMPETITOR'S PRODUCT
 2    AND PROPOSED COUNTER-INSTRUCTION, AS WELL AS SUPPLEMENTAL
 3    INSTRUCTIONS BY MATTEL.
 4            BUT BEFORE WE TAKE UP ANY OF THOSE, LET'S -- LET'S
 5    FOCUS ON WHAT WE -- WE DO HAVE, AND THEN WE'LL GO TO THOSE.
 6            SO WHOEVER WISHES TO PROCEED FIRST, ADDRESSING THE
 7    COURT'S PROPOSED INSTRUCTIONS, MAY DO SO.
 8            MR. PROCTOR:  THANK YOU, YOUR HONOR.
 9            BEFORE -- BEFORE I FORGET, IF I CAN ASK
10    TWO NON-JURY INSTRUCTION QUESTIONS THAT -- THAT I'VE BEEN
11    ASKED.
12            FIRST, IS THERE GOING TO BE A TIME LIMIT ON
13    CLOSINGS, AND WHAT WOULD THAT BE?
14            THE COURT:  WELL, I WANT TO TAKE THAT UP WITH
15    COUNSEL.  AS -- YOU KNOW, I -- I'VE SET ASIDE WEDNESDAY FOR
16    CLOSING ARGUMENTS.  AND AS LONG AS WE CAN GET THROUGH
17    INSTRUCTIONS AND THE CLOSINGS BY THE END OF THE DAY ON -- ON
18    WEDNESDAY WITH ADEQUATE BREAKS AND LUNCH, I'M -- I'M
19    FLEXIBLE.  I -- I DON'T -- I -- I ASSUME IT'S GOING TO BE
20    MORE OR LESS THE SAME AS BEFORE, THE TWO HOURS ON -- ON EACH
21    SIDE, BUT THAT SEEMED TO WORK.  WE SEEMED TO GET THROUGH
22    THAT.
23            BECAUSE IT'S GOING TO TAKE THE COURT A GOOD HOUR,
24    MAYBE EVEN A LITTLE EVEN LONGER WITH THIS SET OF
25    INSTRUCTIONS, TO READ THE INSTRUCTIONS.
```

```
 1              WE START AT 9:00.  THAT WILL GO TO, SAY, 10:00 OR
 2      10:30.  WE'LL TAKE A BREAK AT THAT POINT IN TIME.  WE'LL
 3      HAVE MATTEL'S OPENING CLOSING, AND THAT WILL TAKE US TO
 4      LUNCH.
 5              THEN AFTER LUNCH WE'LL HAVE MR. NOLAN AND
 6      MR. KENNEDY'S CLOSING.  AND THEN WE'LL HAVE THE -- A BREAK.
 7      AND THEN WE'LL HAVE MATTEL'S CLOSING REBUTTAL.
 8              AND SO I -- I DON'T THINK WE'RE GOING TO HAVE MORE
 9      THAN PROBABLY TWO HOURS ON EACH SIDE.
10              MR. PROCTOR:  OKAY.
11              THE COURT:  BUT WE'LL -- WE'LL HAVE THAT SPELLED
12      OUT IN ADVANCE.  BUT THAT'S -- THAT'S APPROXIMATELY.
13              I'D LIKE TO HEAR FROM -- AND MR. KENNEDY'S NOT
14      HERE YET.  MR. QUINN AND MR. PRICE ARE NOT HERE YET.  UNLESS
15      YOU CAN MAKE REPRESENTATIONS ON THEIR BEHALF, I'M --
16      I'M . . .
17              MR. PROCTOR:  PERHAPS THE BEST THING IS -- IS
18      MR. NOLAN AND -- AND MR. QUINN CAN CONFER ABOUT IT AND SEE
19      IF THAT'S --
20              THE COURT:  YEAH.  I'D LIKE A PROPOSED --
21      PROPOSED -- AS LONG AS IT'S REASONABLE, I'LL ACCEPT WHATEVER
22      PROPOSAL YOU HAVE.
23              MR. NOLAN:  DOING THE MATH LAST NIGHT AND TRYING
24      TO COMPARE IT TO OUR EXPERIENCE IN THE FIRST PHASE, THERE WE
25      HAD A LITTLE BIT OF A HICCUP IN THE MORNING BECAUSE OF -- WE
```

```
 1    HAD -- WE HAD A WITNESS WHO ACTUALLY TESTIFIED, ALBEIT
 2    BRIEF, BUT WE HAD SOME SIDEBARS AND STUFF LIKE THAT.
 3            AND RECOGNIZING THAT WE ARE GETTING IN ABOUT AN
 4    AVERAGE OF, YOU KNOW, FIVE HOURS, I WAS THINKING ABOUT
 5    TWO HOURS TO TWO AND A HALF.  BUT I COULD CONFIRM THAT WITH
 6    MR. QUINN.
 7            THE CONCERN THAT I THINK ALL OF US HAVE IS JUST
 8    MAKING CERTAIN THAT WE ALL GET IT IN.  THAT -- THAT'S THE
 9    BIGGEST DIFFICULTY.
10            AND THEN ALSO, FRANKLY, HOW THE -- HOW THE
11    ARGUMENTS BREAK IN TERMS OF THE MORNING, THE AFTERNOON.  AND
12    I THINK, IF -- IF YOU'VE ARTICULATED IT -- IF IT PLAYS OUT
13    THE WAY THAT YOU HAVE ARTICULATED IT AND THAT WE START IN
14    THE AFTERNOON, THAT'S THE EASIEST WAY.  BECAUSE MY FEAR
15    WOULD BE THAT, IF I HAD 15 MINUTES AND THEN ALL OF SUDDEN WE
16    TOOK AN HOUR-AND-A-HALF LUNCH BREAK.
17            THE COURT:  WELL --
18            MR. NOLAN:  THAT WOULD BE DIFFICULT.
19            THE COURT:  -- THAT WOULDN'T BE FAIR.  SO, NO, I
20    THINK -- I THINK -- LET'S -- LET'S GO WITH THE TWO HOURS
21    THEN BECAUSE I THINK THAT -- AS MUCH AS I'D LIKE TO THINK
22    THAT THERE'S NOT GOING BE TO ANY OBJECTIONS OR SIDEBARS ON
23    WEDNESDAY, THERE PROBABLY WILL BE, AND -- ON BOTH SIDES.
24    AND IT'S GOING TO TAKE A GOOD HOUR AND A HALF, I THINK, TO
25    GET THROUGH THESE INSTRUCTIONS.
```

```
 1            SO IF WE START AT -- ASSUMING THAT WE CAN START
 2    RIGHT AT 9:00, WHICH THERE'S NO REASON THAT WE SHOULDN'T,
 3    THE COURT'S FINISHED WITH ITS INSTRUCTIONS AT 10:30.  10:45,
 4    WE START WITH MR. QUINN OR MR. PRICE, WHOEVER'S STARTING,
 5    AND GO FROM 10:45, 11:45, SAY TO 12:15, AN HOUR AND A HALF
 6    OR HOUR AND 15 MINUTES, WHATEVER THEY'RE GOING TO TAKE.
 7            WE'LL HAVE OUR LUNCH BREAK.
 8            MR. NOLAN, I DON'T KNOW WHETHER YOU OR
 9    MR. KENNEDY'S GOING TO GO FIRST, AND WE'LL START AT, SAY,
10    1:30 TO 2:30.  WE'LL TAKE A LITTLE BREAK THEN.  MR. KENNEDY
11    CAN THEN FINISH UP FROM 2:30 TO 3:30.
12            MR. NOLAN:  RIGHT.
13            THE COURT:  WE'LL TAKE AN AFTERNOON BREAK FOR
14    15 MINUTES OR SO.  AND THEN, FROM A QUARTER OF 4:00 TO 4:15,
15    4:30, MR. PRICE OR MR. QUINN FINISHES UP.
16            ADD IN ANOTHER HALF HOUR FOR DISCUSSIONS THAT WE
17    DON'T ANTICIPATE, AND THAT GETS US TO FIVE O'CLOCK.
18            MR. PROCTOR:  RIGHT.
19            THE COURT:  SOMETHING ALONG THOSE LINES.
20            SO PLAN FOR TWO HOURS BETWEEN YOU AND MR. KENNEDY.
21            LET MR. QUINN KNOW THAT, BETWEEN HIM AND
22    MR. PRICE, ANOTHER TWO HOURS, AND -- AND I'LL JUST LIMIT IT
23    AT TWO HOURS EACH.
24            MR. PROCTOR:  OKAY.  THANK YOU.
25            THE SECOND QUESTION IS WE DISCUSSED, I THINK, BOTH
                                                         7882
```

1    SIDES ARE FILING JMOL'S LATER TODAY, AND WE DIDN'T DISCUSS A

2    PAGE LIMIT.

3           I KNOW IN THE PAST THE COURT LIMITED US TO

4    FIVE PAGES.  I THINK MORE THAN FIVE PAGES IS PROBABLY

5    APPROPRIATE FOR THE ISSUES THAT ARE BEING RAISED.  I DON'T

6    KNOW IF THE COURT -- IF THE COURT WANTS TO IMPOSE --

7           THE COURT:  WHY DON'T -- WHY DON'T WE SAY

8    10 PAGES.  I MEAN, JUST -- I MEAN, IF YOU NEED AN EXTRA

9    PAGE, I'M NOT GOING TO STRIKE A JMOL AT THIS POINT BECAUSE

10   IT'S 11 PAGES OR WHATEVER.  JUST BE REASONABLE.  DON'T -- WE

11   ALL UNDERSTAND THE ISSUES OF THIS TRIAL FAIRLY WELL AT THIS

12   POINT, AND THERE'S NOT A LOT OF REASON TO REGURGITATE THINGS

13   THAT WE'VE ALREADY -- THAT EVERYONE ALREADY UNDERSTANDS.

14          MR. PROCTOR:  OKAY.  AND THAT APPLIES FOR BOTH

15   MOTIONS AND OPPOSITIONS?

16          THE COURT:  YES.

17          MR. PROCTOR:  OKAY.  THANK YOU.

18          ALL RIGHT.  TURNING TO THE JURY INSTRUCTIONS, THE

19   FIRST COMMENT I HAVE IS ON PAGE 11, YOUR HONOR.

20          THE COURT:  OKAY.

21          MR. PROCTOR:  JUST THE SECOND PARAGRAPH THERE

22   APPEARS TO APPLY TO A PRELIMINARY PRETRIAL INSTRUCTION.

23          THE COURT:  YES.  I'LL STRIKE LINES 6 AND 7.

24          MR. NOLAN:  I'M SORRY.  LET ME JUST CATCH UP, YOUR

25   HONOR.

                                                    7883

```
 1            THE COURT:  YEAH, IT'S PAGES -- PAGE 11.  IT

 2   STATES THAT, "ANY TIME YOU CANNOT HEAR OR SEE THE TESTIMONY,

 3   EVIDENCE, QUESTIONS, OR ARGUMENTS, LET ME KNOW."

 4            MR. PROCTOR:  THEN THE NEXT ONE I HAVE IS ON

 5   PAGE 20.

 6            THE COURT:  ALL RIGHT.

 7            MR. PROCTOR:  ON LINE 6, WE REFER TO IT AS

 8   PHASE 1-A.  AND I THINK THE COURT CORRECTLY REFERRED TO IT

 9   ON THE COVER AS JUST PHASE.  B, AND PROBABLY WE SHOULD TAKE

10   OUT THE NUMBER 1, LEST -- LEST THE JURY THINK THIS -- THIS

11   IS NOT THE LAST PHRASE.

12            THE COURT:  I THINK I MADE THAT CLEAR TO THEM, BUT

13   I DON'T WANT TO CAUSE PANIC FOR ANYBODY.  SO I'LL HEAR FROM

14   MGA ON THAT, BUT IT'S PHASE A AND PHASE B.

15            MR. PROCTOR:  AND THERE'S -- THERE'S ANOTHER ONE

16   THAT HAS THE SAME ISSUE.

17            THE COURT:  RIGHT.

18            MR. PROCTOR:  PAGE 27 IS MY -- IS MY NEXT ONE,

19   YOUR HONOR.  AND THIS IS THE -- THE EXTRINSIC/INTRINSIC ONE.

20            THE COURT:  RIGHT.

21            MR. PROCTOR:  I -- I HAVE A COUPLE FAIRLY MINOR

22   COMMENTS, I THINK.

23            ON -- ON PAGE 27, LINE 24, YOU WRITE, "THE

24   PARTICULARIZED NONFUNCTIONAL DOLL CLOTHES."

25            "NONFUNCTIONAL" STRIKES ME JUST AS A TERM OF ART
                                                        7884
```

1    THAT MAY NOT BE CLEAR TO THE JURY, AND I'M NOT SURE IT'S

2    NECESSARY.  I -- I WOULD SUGGEST JUST TAKING OUT THE WORD

3    "NONFUNCTIONAL."

4              THE COURT:  I SEE.  YOUR ARGUMENT IS THAT THE IT'S

5    NONFUNCTION -- THE FACT THAT THEY'RE NONFUNCTIONAL IS WHY

6    THE COURT IS PERMITTING THIS TO GO FORWARD.  IT'S NOT A

7    NECESSARY --

8              MR. PROCTOR:  CORRECT.

9              THE COURT:  OKAY.  I'LL HERE FROM MGA ON THAT.  I

10   UNDERSTAND YOUR ARGUMENT.

11             MR. PROCTOR:  NEXT PAGE, PAGE 28, LINE 7, THE LAST

12   CLAUSE OF WHAT YOU'RE LISTING AS NON-PROTECTABLE, "DEPICT

13   COMMON OR STANDARD TREATMENT OF THE SUBJECT MATTER."

14             I DON'T THINK THAT INSTRUCTION IS APPROPRIATE

15   HERE.  IT'S -- IT'S WHAT I UNDERSTAND TO BE, YOU KNOW,

16   THE -- BASICALLY, THE SENSE OF FAIR INSTRUCTION.  AND I -- I

17   DON'T THINK IT'S APPROPRIATE BECAUSE THE JURY HAS NO BASIS

18   TO REACH A CONCLUSION ABOUT THAT.

19             I MEAN, SENSE OF FAIR IS A LIMITING DOCTRINE JUST

20   LIKE ORIGINALITY IS AND, YOU KNOW, MERGER, WHATEVER OTHER

21   LIMITING DOCTRINES ARE OUT THERE.  THE COURT HAS TAKEN THOSE

22   DOCTRINES AND APPLIED THEM.  SO THIS IS PROTECTABLE, THIS IS

23   NOT.

24             AND THERE'S NO TESTIMONY, NO EVIDENCE BEFORE THE

25   JURY OF WHAT'S A COMMON OR STANDARD TREATMENT OF THE SUBJECT

                                                        7885

```
 1    MATTER.  AND SO THEY'RE GOING TO READ THIS AND BE LEFT TO
 2    SPECULATE, WELL, WHAT'S A -- WHAT'S A COMMON OR STANDARD
 3    TREATMENT OF THE SUBJECT MATTER?  I HAVE NO IDEA.  WHAT ARE
 4    WE SUPPOSED TO DO WITH THIS?
 5         SO I -- YOU KNOW, THE -- THE COURT HAS APPLIED
 6    THESE DOCTRINES IN REACHING THE CONCLUSIONS IT REACHED.  I
 7    DON'T THINK IT MAKES SENSE TO LIST THE DOCTRINE, WHICH IS
 8    EFFECTIVELY WHAT THAT CLAUSE DOES.
 9         THE COURT:  OKAY.  I'LL HEAR FROM MGA ON THAT.
10         MR. PROCTOR:  NEXT PARAGRAPH, LINE 13, YOU'RE
11    MISSING THE "T" IN BRYANT.
12         THE COURT:  THANK YOU.
13         MR. PROCTOR:  LINE 14, BETWEEN THE WORDS "THOSE"
14    AND "ALLEGEDLY," WE SHOULD ADD "IN THE."
15         "AS COMPARED TO THOSE IN THE ALLEGEDLY INFRINGING
16    BRATZ RELATED WORKS."
17         THE COURT:  THANK YOU.
18         THE REPORTER:  COULD YOU REPEAT THE --
19         MR. PROCTOR:  IT'S LINE 14, BETWEEN THE WORDS
20    "THOSE" AND "ALLEGEDLY," WE SHOULD ADD THE WORDS "IN THE."
21         NEXT ONE IS LINE 21.  AND WE SAY -- YOUR HONOR
22    SAYS IN THIS THAT THE AUDIENCE IS GIRLS BETWEEN THE AGES OF
23    6 AND 12.  I GUESS I HAVE TWO COMMENTS ON THAT.
24         THE COURT:  WELL, ACTUALLY I HAVE 8 AND 12 WRITTEN
25    RIGHT HERE.
```

```
 1              MR. PROCTOR:  I WAS LOOKING AT MY NOTES.  YOU HAVE
 2    8 TO 12.
 3              THE COURT:  RIGHT.
 4              MR. PROCTOR:  MY SUGGESTION IS THAT, ACTUALLY, I
 5    BELIEVE THE DOLLS ARE MARKETED -- NUMBER ONE, I THINK WE
 6    SHOULD ADD "PRIMARILY" BECAUSE IT'S NOT THE EXCLUSIVE
 7    AUDIENCE.  AND NUMBER TWO, TECHNICAL -- BUT NUMBER TWO, I'M
 8    NOT SURE IT STARTS AT 8.  I THINK, IF WE LOOK AT THE
 9    PACKAGING -- AND I MEANT TO CONFIRM THIS AND HAVEN'T HAD A
10    CHANCE TO DO IT.
11              BUT I THINK, IF WE LOOK AT THE PACKAGING, IT SAYS
12    AGES 4 AND UP.  AND SO I'M NOT SURE 8 TO 12 IS -- IS
13    ACTUALLY THE CORRECT RANGE.
14              YEAH, IT DOES.  IT SAYS AGES 4 AND UP ON THE
15    PACKAGING.
16              THE COURT:  HMM.  WELL, I RAISED THIS ISSUE AT
17    SIDEBAR BECAUSE I KNOW IN THE -- OVER IN ENGLAND, IT'S 7 TO
18    12.  AND I KNOW THERE WAS A 6 TO 12 AND THERE WAS 8 TO 12,
19    AND NOW THERE'S 4-PLUS.  IT'S --
20              MR. NOLAN:  YOUR HONOR.
21              THE COURT:  SURE.
22              MR. NOLAN:  I APOLOGIZE.  ON -- ON THIS PARTICULAR
23    ONE, MY -- MY BELIEF IS THAT THE REASON WHY, IN THE
24    UNITED STATES, IT MAY BE 4 IS SIMPLY AN ISSUE OF --
25              THE COURT:  SAFETY?
```

1           MR. NOLAN:  PARDON ME?

2           THE COURT:  SAFETY?

3           MR. NOLAN:  IT'S A SAFETY BECAUSE OF SMALL PARTS.

4    WHERE THE MARKET -- I THINK THE EVIDE -- OVERWHELMING AMOUNT

5    OF EVIDENCE HAS ALWAYS BEEN THAT IT WAS DIRECTED TO THE

6    TWEENS MARKET, WHICH IS FAIRLY PRIMARILY 8 THROUGH 12.

7           THE COURT:  VERY WELL.

8           MR. NOLAN, I WANT TO GET THROUGH ALL OF THESE --

9           MR. NOLAN:  SORRY.

10          THE COURT:  -- AND THEN I'M GOING TO GIVE YOU AN

11   UNFETTERED CHANCE TO RESPOND.  SO --

12          BUT YOUR -- YOU POSITION IS . . .

13          MR. PROCTOR:  I SUPPOSE 4 TO 12, IF NOT -- YOU

14   KNOW, IF NOT, SOME -- SOMEWHERE LOWER THAN 8.  I MEAN,

15   CERTAINLY, THE DOLLS ARE MARKETED TO, YOU KNOW -- ARE --

16   ARE -- CERTAINLY OLDER GIRLS LIKE THE BRATZ DOLLS A LOT, BUT

17   ALSO YOUNGER GIRLS BUY THESE DOLLS.  THERE'S -- I MEAN

18   THERE'S -- IN THE INDUSTRY, I DON'T THINK THERE'S REALLY ANY

19   QUESTION ABOUT THAT.

20          THE COURT:  OKAY.  I UNDERSTAND YOUR ARGUMENT.

21          MR. PROCTOR:  NEXT ONE IS PAGE 30, THE -- THE

22   INVERSE RATIO INSTRUCTION.  WE'RE JUST MISSING MGA

23   HONG KONG, WHICH WE LIST MGA AND -- AND LARIAN BUT NOT

24   HONG KONG.

25          IT'S A NAME YOU -- YOU WILL BECOME FAMILIAR WITH.

7888

```
 1              THE COURT:  ALL RIGHT.

 2              MR. PROCTOR:  THE NEXT ONE IS ON PAGE 38, YOUR

 3   HONOR, LINE 14.  AND I -- I UNDERSTAND AND AM WILLING TO

 4   SUBMIT ON THE COURT'S REJECTION OF -- OF OUR POSITION THAT,

 5   YOU KNOW, THE TIMING OF DISCOVERY HAS BEEN DECIDED ALREADY.

 6   BUT THE RECITATION OF THE STANDARD WE WOULD TAKE ISSUE WITH.

 7              WHAT -- WHAT THE COURT WRITES IS, "MATTEL WAS NOT

 8   AWARE OF SUCH FACTS THAT EITHER DID OR COULD HAVE LED TO

 9   MATTEL TO DISCOVER."  AND IF -- IF YOU LOOK AT THE GARAMENDI

10   CASE, WHICH IS A CENTRAL DISTRICT CASE, IN THE CONTEXT OF

11   FRAUDULENT CONCEALMENT, THE STANDARDS FOR DISCOVERY ARE

12   ACTUALLY GREATER THAN INQUIRY AND NOTICE STANDARDS.  IT'S

13   SOMETHING -- IT'S -- ACCORDING TO THE GARAMENDI COURT, IT'S

14   SOMETHING CLOSER TO ACTUAL NOTICE.

15              AND SO I THINK TAKING OUT THE WORDS "COULD HAVE

16   LED" WOULD BE APPROPRIATE.  INSTEAD WHAT SHOULD BE LISTED IS

17   SIMPLY "DISCOVERY OF FACTS THAT" --

18              THE COURT:  LED MATTEL.

19              MR. PROCTOR:  -- "LED MATTEL", CORRECT.

20              PAGE 40, IT'S JUST THE 1-A VERSUS "A" COMMENT

21   AGAIN.

22              THE COURT:  WOULD YOU DO ME A FAVOR, COUNSEL?  I

23   KNOW I REMEMBER THE CENTRAL DISTRICT GARAMENDI CASE IS CITED

24   SOMEPLACE.  COULD YOU JUST GIVE ME THE CITE TO THAT?

25              MR. PROCTOR:  YES.  LET ME -- LET ME GRAB IT IN
```

```
 1    MINUTE, IF THAT'S OKAY.  I DON'T HAVE IT RIGHT NOW.

 2              THE COURT:  THANK YOU.

 3              MR. PROCTOR:  PAGE 40, IT'S ON -- ON THE

 4    FIRST LINE.  IT'S THE PHASE 1-A VERSUS PHASE A.

 5              THE COURT:  THANK YOU.

 6              MR. PROCTOR:  PAGE 41 IS THE SAME THING.

 7              PAGE 44, THIS IS -- I THINK THIS IS THE STANDARD

 8    INSTRUCTION.  WE LIST -- OR THE COURT LISTS, "MATTEL IS

 9    ENTITLED TO RECOVER THE ACTUAL DAMAGES SUFFERED," AND THEN

10    IT SAYS, "IN ADDITION, WE'RE ENTITLED TO RECOVER THE

11    PROFITS."

12              WE'RE NOT SEEKING ACTUAL DAMAGES, WE'RE SEEKING

13    DISGORGEMENT.  YOU KNOW, THAT'S -- THAT'S OUR DAMAGES

14    THEORY.  SO I THINK PROBABLY TAKING OUT THE CLAUSE ABOUT THE

15    ACTUAL DAMAGES SUFFERED AS A RESULT OF THE INFRINGEMENT

16    WOULD MAKE SENSE.

17              THE COURT:  OKAY.  YOU HAD -- YOU HAD INCLUDED

18    THAT IN YOUR INITIAL SUBMISSION.

19              MR. PROCTOR:  WE VERY WELL MAY HAVE, AND IT IS A

20    STANDARD MODEL INSTRUCTION.  IT'S JUST -- IT -- I'M

21    CONCERNED IT WOULD POTENTIALLY CONFUSE THE JURY.

22              THE COURT:  SO YOU'RE PROPOSING THAT WE JUST HAVE

23    IT READ -- THE SECOND SENTENCE WOULD BE, "MATTEL IS ENTITLED

24    TO RECOVERED ANY PROFITS OF THE DEFENDANTS ATTRIBUTABLE TO

25    THE INFRINGEMENT."
```

1           MR. PROCTOR:  CORRECT.

2           THE COURT:  OKAY.

3           MR. PROCTOR:  PAGE 48, THIS IS THE MITIGATION

4    INSTRUCTION.  I WOULD -- I WOULD AGAIN SUBMIT, AND -- AND I

5    HAVE AN AUTHORITY I CAN OFFER, IF THE COURT WOULD LIKE, IN

6    THE DISGORGEMENT CONTEXT.

7           IT JUST DOESN'T MAKE SENSE.  I MEAN, THERE --

8    THERE -- EITHER -- EITHER IN THE DISGORGEMENT CONTEXT

9    GENERALLY A MITIGATION INSTRUCTION DOESN'T MAKE SENSE, OR IN

10   THE ALTERNATIVE, IN THIS PARTICULAR CASE, IT DOESN'T MAKE

11   SENSE BECAUSE THERE'S NO EVIDENCE OF WHAT WE SHOULD HAVE

12   DONE TO MITIGATE.  I MEAN, THERE'S -- THERE'S JUST NOTHING

13   IN THE RECORD ABOUT THIS.

14          AND SO THE JURY IS GOING TO BE LEFT TO SPECULATE,

15   YOU KNOW, WHAT -- WHAT DOES THIS MEAN?  AND I'M CONCERNED

16   ABOUT THE RISK OF JURY CONFUSION ON THIS.

17          AND THE NEXT ONE I HAVE IS ON PAGE 50.  IN THE

18   DEFINITION OF "MALICE," WE WOULD -- IT SAYS -- THIS IS A

19   STANDARD INSTRUCTION, I BELIEVE, BUT IT SAYS, "DESPICABLE

20   AND WAS DONE WITH A WILLFUL AND KNOWING DISREGARD OF THE

21   RIGHTS OR SAFETY OF ANOTHER."

22          I DON'T THINK THE "OR SAFETY" LANGUAGE IS

23   NECESSARY IN THIS CASE.  I SUGGEST THAT WE CHANGE IT TO

24   SIMPLY "DISREGARD OF THE RIGHTS OF ANOTHER."  THERE'S NO

25   ALLEGATION THAT ANYTHING WAS DONE WITH MALICE TOWARDS

                                                    7891

1    MATTEL'S SAFETY.

2         AND THE LAST ONE, I THINK IT -- ON MY COPY THERE'S

3    A RED-LINED-OUT BEGINNING OF THE PARAGRAPH, SINCE THE

4    FOREPERSON HAS ALREADY BEEN SELECTED, AND SO WE JUST NEED

5    SOME --

6         THE COURT:  ALL RIGHT.  I'M SORRY.  ON PAGE 50 --

7    WHAT WAS THAT?

8         MR. PROCTOR:  I APOLOGIZE.  PAGE 52.

9         THE COURT:  RIGHT.  I -- THAT WAS -- THAT WAS

10   CROSSED OUT --

11        MR. PROCTOR:  SO WE JUST NEED --

12        THE COURT:  -- AND SO THAT HAS TO BE PHYSICALLY

13   CROSSED OUT.  RIGHT.

14        MR. PROCTOR:  RIGHT.  AND WE JUST NEED TO ADD SOME

15   LANGUAGE, SOMETHING -- YOU KNOW, SOMETHING LIKE, "WHEN YOU

16   BEGIN YOUR DELIBERATIONS, YOU WILL DISCUSS THE CASE WITH

17   YOUR FELLOW JURORS."

18        AND THEN WE DID SUBMIT --

19        THE COURT:  WELL, WHAT I'LL DO IS THIS:  "WHEN YOU

20   BEGIN YOUR DELIBERATIONS, YOUR FOREPERSON WILL SPEAK FOR YOU

21   HERE IN COURT, WILL PRESIDE OVER" -- "THE FOREPERSON WILL

22   PRESIDE OVER THE DELIBERATIONS AND SPEAK FOR YOU HERE IN

23   COURT."

24        OKAY.

25        MR. PROCTOR:  THE LAST ONE, I DON'T KNOW IF THE

```
 1   COURT WANTS US TO ADDRESS THE SUPPLEMENTAL INSTRUCTIONS WE
 2   SUBMITTED LAST NIGHT.
 3          THE COURT:  WHY DON'T WE GO -- LET'S SEE.  WHAT DO
 4   WE HAVE HERE?  WE HAVE . . .
 5          I HAVE THREE SUBMITTED BY MGA:  COMPETITOR
 6   PRODUCTS; SUPPLEMENTAL INSTRUCTION ON WILLFUL INFRINGEMENT,
 7   WHICH THE COURT HAS INCLUDED A WILLFUL INFRINGEMENT -- I --
 8   I THINK THAT MAY HAVE BEEN JUST PASSED IN THE NIGHT -- AND
 9   THEN THE 17.15 COPYING ACCESS TO SUBSTANTIAL SIMILARITY, THE
10   INVERSE RATIO RULE.  BUT WHICH -- THE COURT HAS SUBMITTED
11   ONE AS WELL, BUT -- SO THE ONE THAT WOULD BE NEW FROM MGA
12   WOULD BE THE COMPETITIVE PRODUCTS ONE.
13          AND I KNOW YOU SUBMITTED AN OPPOSITION TO THAT.
14          YOU HAVE ALSO SUBMITTED, THAT I'VE JUST RECEIVED
15   NOW, MULTIPLE CLAIMS, OTHER INVESTIGATIONS, AND INJUNCTIVE
16   RELIEF.
17          LET ME HEAR BRIEFLY ON -- ON THAT.
18          MR. PROCTOR:  OKAY.  I SUPPOSE, STARTING WITH THE
19   ONES THAT WE SUBMITTED LAST NIGHT, MULTIPLE CLAIMS IS -- IS
20   THE FLIP SIDE OF AN INSTRUCTION THAT MGA HAD PROPOSED,
21   WHICH -- WHICH I BELIEVED THE COURT REJECTED, WHICH SAID --
22   YOU KNOW, INVITED THE JURY TO SET OFF ITS AWARDS BASED ON
23   AMOUNTS AWARDED AS TO OTHER CLAIMS.
24          I -- I THINK THE COURT CORRECTLY REJECTED THAT
25   INSTRUCTION.  BUT I DO THINK -- I DO THINK THERE IS A RISK
```

```
 1    THAT THE JURY, WITHOUT ANY INSTRUCTION, IS GOING TO SIMPLY

 2    NOT KNOW WHAT THEY'RE SUPPOSED TO DO.

 3              AM I SUPPOSED TO AWARD -- YOU KNOW, IF I AWARD "X"

 4    AMOUNT ONCE AND AWARD "X" AMOUNT AGAIN AND THEN AWARD "X"

 5    AMOUNT AGAIN BECAUSE THERE'S SEVERAL LEGAL THEORIES HERE, OR

 6    AWARD "X" AMOUNT AGAINST MGA AND "X" AMOUNT ALSO AGAINST

 7    MR. LARIAN BECAUSE THERE'S SEVERAL DEFENDANTS, ARE THESE ALL

 8    GOING TO BE ADDED UP?  IS MATTEL GOING TO GET MORE THAN WHAT

 9    I INTEND?  AM I SUPPOSED TO DIVIDE IT UP?

10              AND -- AND WHAT I BELIEVE THE COURT INTENDS IS

11    THAT IT'S GOING TO -- WHAT I BELIEVE THE COURT INTENDS IS

12    THAT THE JURY SHOULD AWARD THE FULL AMOUNT AS TO EACH CLAIM

13    AS TO EACH DEFENDANT, AND THEN THE COURT WILL MAKE SURE THAT

14    WE DON'T GET A DOUBLE RECOVERY AFTERWARDS.

15              THE COURT:  AND -- AND TO BE CLEAR, MATTEL

16    RECOGNIZES THE COURT'S -- AND ACCEPTS THE COURT'S AUTHORITY

17    TO SO ADJUST ANY AWARD RETURNED BY THE VERDICT TO ELIMINATE

18    ANY DUPLICATIVE AWARD FOR COMPENSATION; CORRECT?

19              MR. ZELLER:  THAT'S CORRECT, YOUR HONOR.

20              THE -- THE COURT WILL RECALL THAT A FEW DAYS AGO

21    YOU AND I HAD THAT DISCUSSION, THAT WE THOUGHT THAT THAT WAS

22    THE CORRECT APPROACH.  AND WE ABSOLUTELY ACCEPT THE COURT'S

23    AUTHORITY AND THINK THAT THAT'S REALLY THE ONLY PRACTICAL

24    WAY OF DOING IT UNDER THESE CIRCUMSTANCES.  OTHERWISE,

25    THERE'S JUST GOING TO BE A REAL SERIOUS POTENTIAL FOR JURY
```

1    CONFUSION THAT COULD -- THAT COULD REALLY CREATE ALL MANNER

2    OF PROBLEMS AND INTERPRETATION OF THE VERDICT.  AND WHOSE OX

3    GETS GORED ON THIS IS VERY HARD TO SAY.

4         SO -- I MEAN, WE -- WE CERTAINLY THINK THAT THAT'S

5    THE -- THAT'S THE ROLE OF THE COURT.

6         THE COURT:  ALL RIGHT.

7         MR. PROCTOR:  SO -- SO THAT INSTRUCTION MAKES THAT

8    CLEAR TO THE JURY, THAT ITS -- ITS AWARD SHOULD BE -- EACH

9    AWARD AS TO -- YOU KNOW, ITS AWARD AS TO EACH CLAIM AS TO

10   EACH DEFENDANT SHOULD BE COMPLETE UNTO ITSELF, AND THE COURT

11   WILL FIX THINGS LATER.

12        THE COURT:  WHAT'S YOUR ARGUMENT ON OTHER

13   INVESTIGATIONS?

14        MR. PROCTOR:  OTHER INVESTIGATIONS IS -- IS

15   FAIRLY --

16        THE COURT:  IT RELATES TO FRAUDULENT CONCEALMENT?

17        MR. PROCTOR:  IT DOES.  AND I THINK -- I THINK

18   PROBABLY THIS MAKES THE MOST SENSE AS -- AS A PARAGRAPH THAT

19   WOULD BE INCLUDED IN THE FRAUDULENT CONCEALMENT INSTRUCTION.

20        YOU KNOW, THERE IS, I THINK, A RISK OF JUROR

21   CONFUSION ABOUT WHAT ALL THIS STUFF ABOUT TOON TEENZ AND --

22   AND THE STUFF ABOUT DIVA STARZ THAT CAME IN WAS ABOUT.

23        YOU KNOW, AS A MATTER OF LAW, THE TOON TEENZ AND

24   DIVA STARZ SIMILARITIES DON'T SHOW THE ACTUAL NOTICE OR --

25   OR -- OR COULD HAVE -- COULD HAVE BEEN NOTICE.  INQUIRY

7895

1    NOTICE IS LISTED IN THE INSTRUCTION RIGHT NOW ON FRAUDULENT

2    CONCEALMENT.

3          I MEAN, THERE'S -- YOU KNOW, THAT THE COURT HAS

4    REPEATEDLY REJECTED MGA'S ARGUMENTS THAT TOON TEENZ --

5          THE COURT:  WELL, BUT THE COURT HAS ALREADY

6    INSTRUCTED THE JURY WITH RESPECT TO DISREGARDING THAT

7    PARTICULAR EVIDENCE.

8          MR. ZELLER:  I'M SORRY TO INTERRUPT AGAIN BECAUSE

9    MR. DYLAN'S -- OR DYLAN PROCTOR IS OBVIOUSLY DOING A GOOD

10   JOB, BUT HE WASN'T PRESENT FOR THE SIDEBAR WHERE WE -- WE

11   HAD TALKED ABOUT MR. SLOAN'S EXAMINATION IN PARTICULAR.

12         AND IT'S TRUE THAT THE COURT STRUCK ALL OF THAT

13   TESTIMONY WHICH DEALT WITH, REALLY, THE COMPARISON OF THE

14   PARTICULAR ARTWORK ON THE PACKAGES.

15         BUT THE COURT WILL ALSO RECALL THAT THERE HAS

16   BEEN, YOU KNOW, INTERJECTED INTO THE TESTIMONY PRIOR TO THAT

17   TIME, AND THEN THERE -- IT WAS SOMEWHAT REITERATED THROUGH

18   THE DESIGNATION OF LILY MARTINEZ, REALLY, THIS IDEA OF -- OF

19   TOON TEENZ.

20         AND -- AND I HAD EXPRESSED A CONCERN AT THE

21   SIDEBAR, YOU KNOW, NOT ONLY THE ISSUE ABOUT DIVA STARZ BEING

22   INTERJECTED IN THIS WAY, BUT ALSO JUST EVEN WITH TOON TEENZ.

23         AND, YOU KNOW, WE ARE CONCERNED THAT THERE WILL BE

24   THE ARGUMENT OR THE SUGGESTION OR THE IMPLICATIONS TO THE

25   JURY THAT SOMEHOW, WELL, MATTEL COULD HAVE SUED ON OTHER

7896

```
 1   CLAIMS SUCH AS COPYRIGHT INFRINGEMENT OF TOON TEENZ.
 2            THE COURT:  I CAN'T BELIEVE MR. NOLAN OR
 3   MR. KENNEDY ARE NOT GOING TO RELY ON EVIDENCE THAT I'VE
 4   STRICKEN IN THEIR CLOSING ARGUMENT.  I MEAN, THEY -- IF THEY
 5   DO THAT, PERHAPS THIS MIGHT BE SOMETHING TO REVISIT.  I
 6   JUST --
 7            MR. ZELLER:  I'M NOT -- I'M NOT TRYING TO -- I'M
 8   NOT MAKING SOME ACCUSATION AGAINST THEM, YOUR HONOR.
 9            THE COURT:  RIGHT.
10            MR. ZELLER:  WHAT I'M -- WHAT I'M SAYING THERE IS
11   THAT THERE -- THERE IS EVIDENCE IN THE RECORD THAT HAS NOT
12   BEEN STRUCK PERTAINING TO, NUMBER ONE, DIVA STARZ, AND
13   NUMBER TWO, TOON TEENZ.
14            THE COURT WILL RECALL THAT, WHEN -- I KNOW THAT
15   THERE WAS SOME TESTIMONY THAT WAS ELICITED, AND I -- I
16   APOLOGIZE.  I CAN'T RECALL EXACTLY WHO THE WITNESS WAS.  I
17   THINK IT WAS OTHER THAN JILL NORDQUIST, HOWEVER, WHICH WAS
18   THE WITNESS'S TESTIMONY TO HAVE STRUCK ON THIS SUBJECT.  BUT
19   I'M PRETTY SURE THAT EARLIER ON -- AND I CAN POTENTIALLY
20   FIND THE CITATION -- THERE WERE DISCUSSIONS ABOUT DID YOU
21   THINK THAT BRATZ LOOKED LIKE ANYTHING ELSE?
22            AND THIS MAY HAVE BEEN IVY ROSS.  THIS IS GOING
23   BACK A LITTLE WAYS.
24            BUT -- BUT EVEN MORE IMPORTANTLY, FROM MY
25   PERSPECTIVE, IS THAT THERE IS EVIDENCE -- THERE IS EVIDENCE
```

7897

1   THAT WAS ELICITED ABOUT TOON TEENZ THAT HAS CERTAINLY NOT

2   BEEN STRUCK.  THAT'S REALLY WHAT THIS IS --

3        THE COURT:  I SUPPOSE PART OF MY PROBLEM WAS,

4   PRECISELY BECAUSE I FIND IT SO IRRELEVANT TO THE ISSUE

5   THAT'S BEFORE THE JURY ON FRAUDULENT CONCEALMENT, IT'S HARD

6   TO UNDERSTAND HOW THAT EVIDENCE, SOME OF WHICH HAS BEEN

7   INTRODUCED BY MATTEL IN TERMS OF TOON TEENZ AND THE

8   RELATIONSHIP BETWEEN TOON TEENZ AND BRATZ FOR ENTIRELY

9   SEPARATE PURPOSES, AND THEN WITH TIMING COULD POSSIBLY

10  SUPPORT AN ARGUMENT THAT MATTEL WAS AWARE THAT CARTER BRYANT

11  DID THESE DRAWINGS WHILE, IN FACT, HE WAS WORKING FOR

12  MATTEL, OR THAT, YOU KNOW, HE ENTERED INTO A -- THIS

13  CONTRACT WHILE HE WAS -- WHILE HE WAS WORKING FOR MATTEL.

14        I JUST -- IT'S PRECISELY BECAUSE IT IS SO

15  IRRELEVANT THAT THAT -- AND I'M ALWAYS RELUCTANT TO INSTRUCT

16  THE JURY HOW TO VIEW -- WHAT TO DO WITH PARTICULAR PIECES OF

17  EVIDENCE.

18        AGAIN, I COULD SEE IF -- IF SOMEHOW ARGUMENT IS

19  MADE ON THIS DURING CLOSING THAT RUNS AFOUL OF THE COURT'S

20  PREVIOUS RULING ON THIS, THEN -- THEN PERHAPS SOMETHING LIKE

21  THIS MIGHT BE APPROPRIATE.

22        I'LL -- I'LL THINK ABOUT IT COUNSEL.  I -- I THINK

23  I UNDERSTAND YOUR ARGUMENT.

24        MR. ZELLER:  THANK YOU.

25        MR. PROCTOR:  ALL RIGHT.  AND THE LAST ONE WE --

1    WE PROPOSED IS -- IS ABOUT INJUNCTIVE RELIEF.  WE WENT BACK

2    AND CHECKED THE -- THE TRANSCRIPT BECAUSE THERE WAS A --

3    THERE WAS A -- A FAIRLY LENGTHY SIDEBAR DISCUSSION ABOUT THE

4    PROSPECT OF INJUNCTIVE RELIEF AND HOW THAT PLAYS INTO

5    VALUATIONS FOR THE PURPOSES OF ASSESSING DAMAGES AGAINST

6    MR. LARIAN.

7           AND -- AND THE -- THE INSTRUCTION THE COURT GAVE,

8    THE COURT INSTRUCTED -- THE COURT DID NOT EXPRESSLY INSTRUCT

9    THE JURY TO -- TO DISREGARD THAT EVIDENCE OR -- OR THAT

10   ISSUE.

11          AND I -- I BELIEVE THAT WAS -- I BELIEVE THAT WAS

12   WHERE EVERYTHING CAME OUT ON IT.  BUT THE COURT'S

13   INSTRUCTION WAS EFFECTIVELY SOMETHING TO THE EXTENT OF WE'RE

14   GOING TO REVISIT THIS.  AND -- AND BECAUSE IT WAS A LITTLE

15   LESS THAN CLEAR, I WOULD SUGGEST AN INSTRUCTION ON IT WOULD

16   BE APPROPRIATE NOW.

17          THE COURT:  OKAY.  WITH RESPECT FINALLY TO THE

18   PROPOSED INSTRUCTION BY MGA ON COMPETITOR PRODUCTS.

19          MR. PROCTOR:  I DON'T HAVE MUCH TO ADD TO -- TO

20   OUR OBJECTIONS ON THAT.  THEIR -- THEIR PROPOSED INSTRUCTION

21   STRIKES ME AS OVER-EMPHASIZING THE ISSUE.  I DON'T THINK

22   THAT'S NECESSARY.  I THINK A -- YOU KNOW, A SINGLE SENTENCE

23   OR TWO CAN CAPTURE IT.  AND WE'VE -- WE'VE LODGED A PROPOSED

24   COUNTER-INSTRUCTION, WHICH -- WHICH I THINK CAPTURES THE

25   POINT WITHOUT OVER-EMPHASIZING THE ISSUES.

```
1            THE COURT:  ALL RIGHT.  VERY GOOD.
2            I'LL NOW HEAR FROM MGA ON ANY OBJECTIONS MADE BY
3    MATTEL AND THEN ANY OBJECTIONS THAT THEY HAVE.  AND LET'S
4    BEGIN WITH THE JURY INSTRUCTIONS THAT THE COURT PROPOSED,
5    AND THEN WE'LL MOVE TO THE SUPPLEMENTAL ONES THAT HAVE BEEN
6    SUBMITTED.
7            MR. NOLAN:  LET ME MAKE SURE I'VE GOT . . .
8            MR. PROCTOR:  YOUR HONOR, JUST FOR THE RECORD, THE
9    GARAMENDI CITE.
10           THE COURT:  I'M SORRY?
11           MR. PROCTOR:  THE GARAMENDI CITE, I CAN PROVIDE.
12           THE COURT:  ONE MORE TIME?
13           MR. PROCTOR:  THE GARAMENDI CASE, I CAN PROVIDE.
14           THE COURT:  SURE.  OH, YES.  THANK YOU.  THE
15   GARAMENDI CASE.  YES.
16           MR. PROCTOR:  I CAN PROVIDE A COPY OF THE CASE IF
17   THE COURT WOULD LIKE.
18           THE COURT:  THAT WOULD BE GREAT.
19           MR. NOLAN:  I WAS TRYING TO TURN TO THE ONES THAT
20   MR. PROCTOR ADDRESSED EARLY ON, JUST SOME CLEAN-UP ONES.  I
21   DIDN'T HAVE MUCH COMMENT ON THAT.  I'M JUST TRYING TO SEE
22   WHERE I MADE MY NOTES ON THE COURT'S PROPOSED JURY
23   INSTRUCTIONS.  HOLD ON.
24           OBVIOUSLY, WE DON'T OBJECT TO REFERRING TO IT AS
25   THE FIRST PHASE, STRIKING 1-A.  THAT'S -- THAT'S NOT AN
                                                    7900
```

1    ISSUE FOR US.

2              THE COURT:   THAT'S FINE WITH MGA?

3              MR. NOLAN:   YES, YOUR HONOR.

4              THE COURT:   ALL RIGHT.

5              MR. NOLAN:   ALSO, ON PAGE 11, I HAD CAUGHT THE

6    SAME LINES, 8 THROUGH 9 --

7              THE COURT:   OKAY.

8              MR. NOLAN:   -- WHICH DIDN'T SEEM TO MAKE SENSE IN

9    THE CONTEXT NOW OF REDOING IT.

10             THE OTHER COMMENT WAS ON PAGE 20 WHERE YOU --

11   WHERE WE CHANGED, AT LINE 6, TO JUST HAVE, I GUESS, PHASE 1.

12   NO OBJECTION THERE.

13             THE COURT:   OKAY.

14             MR. NOLAN:   THE FIRST ONE, THEN, YOUR HONOR, THAT

15   I'D LIKE TO DEAL WITH IS THE -- LET'S SEE.   ON PAGE -- THE

16   DERIVATIVE WORK INSTRUCTION, WHICH I BELIEVE -- WHAT I'M

17   TRYING TO DO IS -- IS CROSS-REFERENCE, YOUR HONOR, TO YOUR

18   PAGES.   I APOLOGIZE.

19             THE COURT:   ALL RIGHT.

20             MS AGUIAR:   AT PAGE 24.

21             THE COURT:   AT PAGE 24?

22             MR. NOLAN:   PAGE 24, THANK YOU.   THANK YOU, YOUR

23   HONOR.   THANK YOU, LAUREN.

24             YOUR HONOR, MUCH HAS BEEN SAID ALREADY ON THIS

25   PARTICULAR INSTRUCTION.   I THINK ONE OF THE PROBLEMS WITH

                                                        7901

```
 1    THE COURT'S INSTRUCTION, WHICH I THINK RELIED ON MATTEL'S,

 2    IS MORE THE SWEEPING NATURE OF THE ANALYSIS OF THE

 3    DERIVATIVE WORK WHICH, AS THE COURT KNOWS, HAS BEEN THE

 4    SUBJECT OF MUCH QUESTION DURING THE COURSE OF THE TRIAL WITH

 5    RESPECT TO WHAT IS THE APPROACH OR STRATEGY THAT MATTEL

 6    IS -- IS TAKING IN THE PRESENTATION OF THIS DERIVATIVE

 7    CLAIM.

 8              WE WOULD PROPOSE, YOUR HONOR, THAT THE INSTRUCTION

 9    PROVIDE THAT -- LET ME JUST READ IT AS -- AS YOU HAVE IT:

10    "A COPYRIGHT OWNER IS ENTITLED TO EXCLUDE OTHERS FROM

11    CREATING DERIVATIVE WORKS BASED UPON THE OWNER'S COPYRIGHTED

12    WORK" --

13              THE COURT:  SLOW -- SLOW DOWN FOR THE

14    COURT REPORTER, COUNSEL.

15              MR. NOLAN:  I'M SORRY.  "THE COPYRIGHT OWNER IS

16    ENTITLED TO EXCLUDE OTHERS FROM CREATING DERIVATIVE WORKS

17    BASED UPON THE OWNER'S COPYRIGHTED WORK.  THE TERM

18    'DERIVATIVE WORK' REFERS TO WORK BASED ON ONE OR MORE

19    EXISTING WORKS."

20              WE WOULD REQUEST, YOUR HONOR, INSERTING THE

21    SENTENCE, STARTING AT LINE 6, THAT WOULD READ:  "HOWEVER, IN

22    ORDER TO CONSTITUTE AN INFRINGEMENT, A DERIVATIVE WORK MUST

23    BE SUBSTANTIALLY SIMILAR TO A COPYRIGHTED WORK."

24              THE COURT:  HOLD ON.  I'M EVEN SLOWER THAN THE

25    COURT REPORTER.
```

```
 1              MR. NOLAN:  I APOLOGIZE, YOUR HONOR.

 2              THE COURT:  ONE SECOND.  "HOWEVER, IN ORDER TO

 3    CONSTITUTE AN INFRINGEMENT, THE" --

 4              MR. NOLAN:  A DERIVATIVE WORK --

 5              THE COURT:  -- "A DERIVATIVE WORK MUST BE

 6    SUBSTANTIALLY SIMILAR" --

 7              MR. NOLAN:  "MUST BE SUBSTANTIALLY SIMILAR TO A

 8    COPYRIGHTED WORK."

 9              THE COURT:  -- "MUST BE SUBSTANTIALLY SIMILAR TO

10    A" --

11              MR. NOLAN:  AND THEN IT WOULD CONTINUE TO READ AS

12    YOU HAVE IT IN YOUR TEXT:  "ACCORDINGLY, MATTEL IS ENTITLED

13    TO EXCLUDE OTHERS FROM RECASTING, TRANSFORMING, OR

14    ADAPTING."

15              WE WOULD SUGGEST STRIKING "WITHOUT MATTEL'S

16    PERMISSION" BECAUSE, IN A PREVIOUS SENTENCE, YOU -- YOU SAY

17    THAT THEY ARE ENTITLED TO EXCLUDE, SO WE DON'T THINK THAT

18    CLAUSE IS NECESSARY.

19              AND THEN IT WOULD READ AS FOLLOWS:  "THE

20    COPYRIGHTED WORKS YOU FOUND WERE CREATED BY CARTER BRYANT

21    ALONE OR JOINTLY WITH OTHERS WHILE HE WAS EMPLOYED BY

22    MATTEL."

23              NO CHANGE.  BUT WE WOULD ADD, COMMA, "IF EACH OF

24    THE NEW WORKS IS SUBSTANTIALLY SIMILAR TO THOSE CREATED BY

25    CARTER BRYANT."
```

7903

1   AND WE THINK THOSE CHANGES EMPHASIZE THE NEED FOR

2   THE JURY TO CONTINUE WITH THE EVALUATION IN THE PROCESS OF

3   EACH OF THE PRODUCTS, WHICH WE THINK IS THE CORRECT

4   APPLICATION OF THE --

5           THE COURT:  VERY GOOD.

6           MR. NOLAN:  -- DERIVATIVE ISSUES.

7           THE COURT:  OKAY.

8           MR. NOLAN:  AND THE NEXT ONE, YOUR HONOR, IS TO

9   YOUR PAGE 26.

10          THE COURT:  ALL RIGHT.  I'M THERE.

11          MR. NOLAN:  AND THE CHANGE THAT WE WOULD

12  REQUEST -- AND I HAVE THESE IN LINE EXTRACTIONS, YOUR HONOR,

13  THAT I COULD HAND UP LATER.  IF I COULD JUST READ IT, IT

14  MIGHT BE EASIER.  THIS ONE PARAGRAPH THAT WE WOULD REQUEST

15  ADDING WOULD BE ADDED AT THE END.  AND IF I COULD JUST READ

16  IT, AND THEN, IF THE COURT WISHES TO WRITE IT DOWN, I COULD

17  EITHER HAND IT UP OR OTHERWISE.

18          IT IS -- MS. AGUIAR REMINDS ME THAT IT'S THE

19  ONE -- THE INSTRUCTION OR THE LANGUAGE FROM THE INSTRUCTION

20  THAT WE SUBMITTED AT THE END OF THE DAY ON FRIDAY AFTER THE

21  COURT ISSUED ITS ORDERS WITH RESPECT TO THE INVERSE RATIO

22  RULE.

23          THE COURT:  RIGHT.

24          MR. NOLAN:  AND I THINK THAT THE WAY THIS WOULD BE

25  PLAY OUT BECAUSE -- YOU KNOW, AS THE POINT HAS BEEN MADE

                                                        7904

1    BEFORE AND CAME UP IN THE DISCUSSIONS ON FRIDAY, WHERE AND

2    HOW THE JURY APPLIES THIS INVERSE RATIO RULE HAS A POTENTIAL

3    FOR CONFUSING IT, WE BELIEVE, AT LEAST.  AND I'M NOT GOING

4    TO RE-ARGUE IT --

5           THE COURT:  IT'S A DIFFICULT -- IT'S A DIFFICULT

6    RULE TO INSTRUCT THE JURY ON, I AGREE --

7           MR. NOLAN:  IT IS.  AND SO THIS IS JUST OUR IDEA

8    OF MAYBE HOW WE COULD FRAME THIS IN A WAY THAT IT WILL NOT

9    BE AS CONFUSING TO THE JURY, ALTHOUGH WE STAND ON ALL OF OUR

10   EARLIER OBJECTIONS.

11          THE COURT:  I KNOW.

12          MR. NOLAN:  SO -- SO STARTING AT LINE 12 -- LINE

13   12 OF THIS INSTRUCTION, INSERTING THE FOLLOWING PARAGRAPH:

14   "IN DETERMINING WHETHER THE DEFENDANTS COPIED ORIGINAL

15   ELEMENTS FROM MATTEL'S COPYRIGHTED WORKS, THE DEGREE OF

16   SIMILARITY REQUIRED TO SUPPORT A FINDING OF SUBSTANTIAL

17   SIMILARITY MAY BE AFFECTED BY THE DEGREE OF ACCESS THAT THE

18   DEFENDANT HAD TO MATTEL'S COPYRIGHTED WORKS.  IF MATTEL

19   SHOWS THAT THE DEFENDANTS HAD ACCESS TO MATTEL'S COPYRIGHTED

20   WORKS, YOU MAY DETERMINE THAT THE THRESHOLD FOR FINDING

21   SUBSTANTIAL" -- "SUBSTANTIAL SIMILARITY IS LOWERED.

22   HOWEVER, IN ORDER TO FIND COPYRIGHT INFRINGEMENT, YOU ARE

23   STILL REQUIRED TO APPLY BOTH THE EXTRINSIC AND INTRINSIC

24   TEST OF SUBSTANTIAL SIMILARITY WHICH I WILL INSTRUCT YOU ON.

25   FURTHER, THE BURDEN OF PROVING SUBSTANTIAL SIMILARITY BY A

                                                      7905

1    PREPONDERANCE OF THE EVIDENCE ALWAYS REMAINS WITH MATTEL."

2              THE COURT:  I'M SORRY.  YOU SAID PAGE 26.  IS THIS

3    PAGE 26 OR PAGE 30 THAT YOU WANT TO INSERT THIS?  WHAT --

4    WHERE ARE YOU PROPOSING THAT WE INSERT THIS PARAGRAPH?

5              MR. NOLAN:  BUT I WOULD -- HOLD ON.  LET ME JUST

6    DOUBLE-CHECK MY OWN.

7              THE COURT:  BECAUSE LINE 12 OF PAGE 26 IS KIND OF

8    IN THE MIDDLE OF A SENTENCE.

9              MR. NOLAN:  WE WOULD ADD, YOUR HONOR -- YES, IT

10   WOULD BE ON PAGE 26, AND WE WOULD INSERT WHAT I JUST --

11             THE COURT:  RIGHT.

12             MR. NOLAN:  -- READ PROBABLY AT LINE 17.

13             THE COURT:  WELL, HOW DOES THIS INTERPLAY WITH THE

14   INSTRUCTION THAT'S GIVEN ON 30?  BECAUSE A LOT OF THOSE

15   ELEMENTS THAT YOU JUST READ ARE INCLUDED IN 30, ON THE

16   INSTRUCTION ON PAGE 30.

17             MR. NOLAN:  YOUR HONOR, WE BELIEVE THAT, BY

18   PUTTING IT INTO THIS INSTRUCTION, IT MORE OR LESS SETS IT

19   FORTH IN MORE OF A COHESIVE AND --

20             THE COURT:  SO -- SO YOU'D BE -- ESSENTIALLY, WE

21   STRIKE THE INSTRUCTION ON PAGE 30, THEN, IN LIEU OF THIS --

22             MR. NOLAN:  YES, YOUR HONOR.

23             THE COURT:  -- IS THAT --

24             MR. NOLAN:  YES.

25             THE COURT:  OKAY.  VERY GOOD.

1          MR. NOLAN:  YOU'RE LOOKING AT THE SAME PEOPLE I AM

2    FOR A CONFIRMATION ON THAT.

3          ALL RIGHT.  AND THEN THE NEXT INSTRUCTION WOULD BE

4    ON THE SUBSTANTIAL SIMILARITY TEST ITSELF.

5          THE COURT:  ALL RIGHT.  THAT'S ON PAGE 27.

6          MR. NOLAN:  THANK YOU.

7          THE COURT:  BY THE WAY, I -- I DO WANT YOU TO HAND

8    FORTH THAT LANGUAGE THAT YOU JUST READ, SO --

9          MR. NOLAN:  I WILL, YOUR HONOR.

10         THE COURT:  PERHAPS SOMEBODY COULD DO THAT FOR

11   YOU.

12         MR. NOLAN:  SURE.

13         NOW, ON -- THE SAME WAY WITH THIS, YOUR HONOR.  I

14   CAN HAND UP THE EDITED VERSION AS WE GO ALONG HERE.

15         FIRST, AFTER THE FIRST PARAGRAPH, AFTER IT SAYS,

16   "MATTEL MUST SATISFY BOTH OF THESE TESTS," WE WOULD INSERT:

17   "FIRST YOU MUST APPLY THE EXTRINSIC TEST."

18         AND THEN IT SAYS, "UNDER THE EXTRINSIC TEST" AND

19   WE WOULD KEEP THAT PARAGRAPH INTACT.

20         THEN --

21         THE COURT:  SO YOU WANT ME TO JUST PUT THAT -- TO

22   MAKE IT CLEAR THAT THEY'RE APPLYING THE EXTRINSIC TEST

23   FIRST?

24         MR. NOLAN:  I THINK IT HELPS THEM IN TERMS OF

25   STEPPING DOWN -- YOU KNOW, STEPPING THROUGH THE PROCESS.

7907

```
 1              THE COURT:  "FIRST" --

 2              MR. NOLAN:  "FIRST," COMMA, "YOU MUST APPLY THE

 3    EXTRINSIC TEST."

 4              THE COURT:  I SEE.

 5              MR. NOLAN:  AND THEN, IN THE SENTENCE THAT STARTS

 6    ON LINE 13, WHERE YOU SAY, "THE COURT HAS DETERMINED," WE

 7    WOULD SUGGEST IT READ AS FOLLOWS:  "THE COURT HAS DETERMINED

 8    WHAT ELEMENTS OF THE WORKS," AND THEN I WOULD ADD, "THAT YOU

 9    FOUND" -- AND THEN, "YOU FOUND WERE."  AND THEN WE GO ON

10    WITH YOUR TEXT, "CREATED BY CARTER BRYANT."

11              THE COURT:  SO THAT THE COURT IS NOT GIVING ITS

12    IMPRIMATUR TO THOSE FINDINGS.  I UNDERSTAND.

13              MR. NOLAN:  THAT -- THAT'S THE CONCERN THAT WE

14    HAVE.

15              AND THEN INSERTING, "SOLELY OR JOINTLY WHILE

16    WORKING AT MATTEL."

17              AGAIN, THE SAME ISSUE BECAUSE IT TRACKS WHAT THEY

18    FOUND.

19              SO JUST AFTER "CARTER BRYANT," "SOLELY OR JOINTLY

20    WHILE WORKING AT MATTEL," COMMA.

21              THE COURT:  ALL RIGHT.

22              MR. NOLAN:  AND THEN IT WOULD CONTINUE ON WITH

23    YOUR TEXT, "ARE PROTECTABLE UNDER COPYRIGHT LAW.  THESE ARE

24    THE" -- WE WOULD INSERT THE WORD "ONLY" -- "ELEMENTS THAT

25    YOU SHOULD CONSIDER FOR THE PURPOSE OF YOUR COMPARISONS."
```

1     AND THEN WE WOULD ADD, "TO EACH OF THE ALLEGEDLY

2  INFRINGING MGA PRODUCTS UNDER THE EXTRINSIC TEST."

3     AND THIS IS TO CONFORM, WE THINK, WHAT THE JURY'S

4  FINDINGS WERE.  BUT MORE IMPORTANTLY, TO HAVE THEM FOCUS ON

5  THESE ARE THE ONLY ELEMENTS, AND THAT THOSE SHOULD BE

6  APPLIED TO EACH OF THE ALLEGEDLY INFRINGING MGA PRODUCTS.

7     THE COURT:  OKAY.

8     MR. NOLAN:  IN LINE 13, FIRST LINE IS -- IS THE

9  SAME.  "FIRST, THE PARTICULARIZED SYNERGISTIC EXPRESSION OF

10 THE HUMAN FORM AND ANATOMY," THAT WE WOULD SAY -- WE WOULD

11 ADD THE LANGUAGE, "IS EXPRESSLY" -- I'M SORRY -- "IS

12 EXPRESSED UNIQUELY IN THE CARTER BRYANT WORKS."

13     AND THEN WE WOULD STRIKE "EXPRESSES A UNIQUE STYLE

14 AND CONVEYS A DISTINCT LOOK OR ATTITUDE."

15     THE COURT:  ALL RIGHT.

16     MR. NOLAN:  BECAUSE, AGAIN, IN THAT SENTENCE, WE

17 BELIEVE THAT IT MAY BE COMMENTING ON THE EVIDENCE FROM THE

18 COURT'S VIEW.

19     ANYWAY, ON LINE 16, THEN IT WOULD BE, "SECOND, THE

20 PARTICULARIZED EXPRESSION" -- I WOULD STRIKE "OF THE DOLLS"

21 BECAUSE OF THE DISTINCTION BETWEEN DRAWINGS AND DOLLS.

22     IT SHOULD BE, "THE PARTICULARIZED EXPRESSION

23 IN" -- "IN BRYANT'S" -- "OR CARTER BRYANT'S DRAWINGS OF THE

24 HEADS" -- "OF THE HEAD, LIPS, EYEBROWS, EYE FEATURES, NOSE,

25 CHIN, HAIRSTYLE, AND BREAST, INCLUDING THE SPECIFIC FORM

1    OF" -- SO WE WOULD ASK THAT THE COURT INSERT THE WORDS --

2    THE WORDS "SPECIFIC FORM OF" IN FRONT OF "ACCENTUATION OR

3    EXAGGERATION."

4           AND THEN READING ALONG, "OF CERTAIN ANATOMICAL

5    FEATURES RELATIVE TO OTHERS," AND WE WOULD STRIKE "DOLL."

6           THE COURT: YEAH, I SEE. BUT THE POINT OF MY

7    INSERTING THE WORD "DOLL" THERE WAS IN THE GENERIC SENSE,

8    NOT IN THE PARTICULARIZED SENSE IN THIS CASE. IT'S -- THERE

9    ARE CLEARLY BOTH THE DRAWING AND THE DOLL ARE MEANT TO

10   CONVEY A DOLL LIP AS OPPOSED TO A HUMAN LIP.

11          AND THIS GETS BACK TO THE WHOLE JELLYFISH MOTION,

12   WHICH I DON'T WANT TO TANGLE WITH. THAT'S -- THAT'S --

13   THAT'S THE POINT IS THAT WE'RE TALKING ABOUT DOLL LIPS HERE.

14   WE'RE NOT TALKING ABOUT HUMAN LIPS.

15          AND DOLL LIPS HAVE A DIFFERENT -- ARE DIFFERENT,

16   THE COURT HAS FOUND, THAN -- THAN A MERE ATTEMPT -- AND EVEN

17   THE DRAWINGS THEMSELVES, THEY'RE NOT -- I UNDERSTAND THEY'RE

18   NOT DOLLS IN THE THREE-DIMENSIONAL SENSE. BUT THEY'RE

19   CERTAINLY, BASED ON THE UNDISPUTED EVIDENCE, WERE SENT --

20   WERE -- WERE DRAWN TO EXPRESS A DOLL LIP IN -- IN A

21   TWO-DIMENSIONAL FORM.

22          I -- I UNDERSTAND YOUR CONCERN HERE. I'M TRYING

23   TO THINK HOW TO -- HOW TO ADDRESS THIS, BUT I DO --

24          MR. NOLAN: I DON'T THINK THAT, IN ANY WAY, WE TRY

25   TO IGNORE THE FACT.

7910

```
1              THE COURT:  AND MAYBE THE WAY TO CHANGE IT IS TO

2   CHANGE THE "THE" TO "A."

3              "THE PARTICULARIZED EXPRESSION OF A DOLL'S HEAD,

4   LIPS, EYES, EYEBROWS."

5              I'M NOT REFERRING TO "THE" BRATZ DOLLS.  I'M JUST

6   REFERRING TO --

7              MR. NOLAN:  "A."

8              THE COURT:  -- A PARTICULARIZED EXPRESSION OF A

9   DOLL HEAD OR A DOLL LIP OR A DOLL NOSE.

10             MAYBE THAT'S THE WAY TO ADDRESS THAT.

11             MR. NOLAN:  I THINK THE CONCERN THAT WE HAVE,

12  THOUGH, YOUR HONOR, IS MAKING CERTAIN THAT WE'RE MAKING IT

13  TO THE "IN HIS DRAWINGS."

14             YOU KNOW, THE FIRST --

15             THE COURT:  WELL, IT'S CLEAR THAT THERE --

16  PARTICULARLY, IF I INCORPORATE THE LANGUAGE THAT YOU ASKED

17  ME TO INCORPORATE ABOVE, IT'S -- IT'S CLEAR THAT THEY'RE

18  COMPARING THE DRAWINGS TO THE --

19             MR. NOLAN:  RIGHT.

20             THE COURT:  -- AND THEN THESE ARE JUST THE

21  ELEMENTS.

22             MR. NOLAN:  RIGHT.  AND THAT WAS -- THAT'S THE KEY

23  DISTINCTION FOR US IN THAT REGARD, YOUR HONOR.

24             AND THEN JUST, IF I MIGHT, ON THE THIRD PARAGRAPH,

25  IF YOU'VE MADE THE OTHER CHANGES, WE'LL STAND ON THEM, THE
```

```
 1   OBJECTION REGARDING DOLL, BECAUSE I HAD -- I HAD THE

 2   SUGGESTION JUST TO STRIKE DOLL -- DOLL -- DOLL ACCESSORIES.

 3              THE COURT:  VERY WELL.

 4              MR. NOLAN:  BUT HERE'S THE KICKER.

 5              UNDER -- AFTER "ACCESSORIES DEPICTED IN THE CARTER

 6   BRYANT WORKS."

 7              THE COURT:  ALL RIGHT.

 8              MR. NOLAN:  AND THEN, IF YOU CONTINUE ON TO THE

 9   NEXT PAGE, YOUR HONOR.

10              THE COURT:  I'M THERE.

11              MR. NOLAN:  ALL RIGHT.  IF I COULD JUST START ON

12   LINE 3, WHICH I THINK STARTS WITH THE WORD "PHYSIOLOGY."

13   IT'S ON LINE 7 ON YOUR DRAFT.

14              THE COURT:  ALL RIGHT.

15              MR. NOLAN:  WE WOULD SAY "PHYSIOLOGY," INSTEAD OF

16   "HAVE" -- "WEAR" -- W-E-A-R -- HUMAN CLOTHES.

17              THE COURT:  WEAR?

18              MR. NOLAN:  YEAH, INSTEAD OF "HAVE."

19              AND THEN, ON NUMBER -- THE NEXT LINE DOWN AFTER

20   "ETHNICITY," WE WOULD SAY --

21              THE COURT:  I'M GOING TO PUT PROBABLY "WEAR OR

22   HAVE" BECAUSE ACCESSORIES, YOU MAY OR MAY NOT ACTUALLY WEAR.

23   YOU MAY HAVE THE ACCESSORY.

24              MR. NOLAN:  OKAY.

25              THE COURT:  BUT I -- WEAR OR HAVE.
```

```
 1              MR. NOLAN:   RIGHT.

 2              AND THEN -- OKAY, ETHNICITY.

 3              THE COURT:   YES.

 4              MR. NOLAN:   THEN STRIKE "OR URBAN OR RURAL," AND

 5     THEN JUST SAY, "HAVE AN," QUOTE, "URBAN APPEARANCE."

 6              THE COURT:   OR "HAVE A URBAN OR RURAL APPEARANCE."

 7              MR. NOLAN:   RIGHT.   YOUR HONOR, RURAL IS ONE THAT

 8     WE THINK THE EMPHASIS IN THIS CASE HAS BEEN MORE ON THE

 9     URBAN SIDE OF IT.  AND WE WERE KIND OF THINKING LAST NIGHT

10     ABOUT THE WORD "RURAL," AND --

11              THE COURT:   FAIR ENOUGH.  I WAS TRYING TO USE A

12     CONTRA-DISTINCTION, BUT YES.

13              MR. NOLAN:   AND THEN, IF YOU CONTINUE DOWN,

14     "ANATOMICAL FEATURES RELATIVE TO OTHERS."

15              DO YOU SEE WHERE I'M AT?

16              THE COURT:   YES.

17              MR. NOLAN:   WE WOULD JUST PUT IN THERE, "OR DEPICT

18     COMMON OR STANDARD TREATMENT OF," AND THEN INSERT "FASHION

19     DOLLS," COMMA, "WHICH WOULD INCLUDE CHANGEABLE FASHIONS AND

20     MANIPULABLE HAIR.  OTHER ELEMENTS THAT ARE NOT PROTECTED ARE

21     NAMES AND/OR SHORT PHRASES AND FEATURES WHICH YOU MAY FIND

22     THAT CARTER BRYANT USED FROM OTHER PREEXISTING MATERIALS."

23              THE COURT:   OKAY.   THE COURT HAS ALREADY ADDRESSED

24     THE -- THE NAMES INSTRUCTIONS.  I -- I UNDERSTAND YOUR

25     REQUEST.
```

7913

```
 1          MR. NOLAN:  OKAY.  AND THEN WE WOULD -- WE WOULD
 2   SUGGEST STRIKING THE TERM "THE SUBJECT MATTER" AND THE
 3   SENTENCE THAT STARTS:  "NEVERTHELESS, PARTICULARLY
 4   COMPILATIONS OR COMBINATIONS OF THESE OTHERWISE
 5   NON-PROTECTABLE ELEMENTS IN THE WORKS WHICH EXPRESS A
 6   PARTICULAR STYLE OR CONVEY A DISTINCT LOOK OR ATTITUDE ARE
 7   PROTECTABLE."
 8          THE COURT:  AND -- AND WHY WOULD WE STRIKE THAT?
 9   BECAUSE I --
10          MR. NOLAN:  YOUR HONOR, THAT POINT HAS ALREADY
11   BEEN MADE EARLIER.  AND IT SEEMS -- IT JUST SEEMED TO US
12   THAT IT ALMOST BECAME A LITTLE BIT ARGUMENTATIVE, WITH DUE
13   RESPECT, BECAUSE YOU -- I THOUGHT YOU HAD THAT IN THE FIRST
14   PART.  AND NOW, WHEN YOU'RE TALKING ABOUT WHAT'S
15   UNPROTECTABLE, YOU'RE REMINDING THEM OF --
16          THE COURT:  WELL, I SET OUT -- I SET OUT THE THREE
17   ELEMENTS OF WHAT IS PROTECTABLE.  ONE APPROACH WILL BE TO
18   LEAVE IT ALONE AT THAT.  WHAT I DO IS I GO ON TO INCLUDE A
19   PARAGRAPH THAT INCLUDES THINGS THAT AREN'T PROTECTABLE,
20   THINGS THAT ARE PROTECTABLE.
21          MR. NOLAN:  RIGHT.
22          THE COURT:  I TRY -- I TRY TO HAVE A BALANCED
23   PARAGRAPH AFTER THAT.
24          I MEAN, ONE APPROACH WOULD SIMPLY BE TO STRIKE
25   THAT ENTIRE PARAGRAPH FROM "IN CONTRAST" TO -- YOU KNOW,
```

```
 1    FROM LINE 26 ON PAGE 27 THROUGH LINE 11 ON PAGE 28.  BUT I

 2    THINK, ONCE I GO DOWN THAT ROAD OF IDENTIFYING THINGS THAT

 3    ARE NOT PROTECTABLE, I THINK I NEED TO BALANCE THAT WITH

 4    WHAT IS PROTECTABLE.

 5              MR. NOLAN:  OKAY.

 6              THE COURT:  I'LL -- I'LL TAKE A LOOK AT THAT WHOLE

 7    PARAGRAPH.

 8              MR. NOLAN:  I UNDERSTAND ALREADY, YOUR HONOR.

 9    WE -- WE DO NOT WANT TO, BY RAISING THIS, LOSE THE LANGUAGE

10    THAT YOU HAVE HERE TO CONTRAST IT.

11              THE WITNESS:  I -- I WOULD EXPECT SO.

12              MR. NOLAN:  RIGHT.  IT WAS JUST THAT --

13              THE COURT:  I UNDERSTAND.  I UNDERSTAND YOUR

14    POSITION.  I'LL -- I'LL TAKE A LOOK AT IT IN THE CONTEXT OF

15    THE ELEMENTS THAT I SPECIFIED ABOVE.

16              MR. NOLAN:  OKAY.  AND THEN THE NEXT PARAGRAPH, IT

17    SHOULD SAY, "YOU SHOULD CONSIDER," WE WOULD INSERT THE WORD

18    "ONLY THE ELEMENTS I HAVE JUST LISTED AS," QUOTE,

19    "PROTECTABLE," CLOSE QUOTE, "FOR THE PURPOSES OF THE

20    EXTRINSIC TEST."

21              THEN READING ALONG, IT SAYS, "FOCUSING ON THE

22    PROTECTABLE ELEMENTS OF THE WORKS BY CARTER BRYANT AS

23    COMPARED TO" -- AND THEN WE WOULD ASSERT -- INSERT, RATHER,

24    "ELEMENTS IN THE," AND THEN IT WOULD CONTINUE TO READ,

25    "ALLEGEDLY INFRINGING BRATZ-RELATED WORKS."
```

7915

```
 1                AND THEN, IN MOVING DOWN TO LINE 17.

 2                THE COURT:  ALL RIGHT.

 3                MR. NOLAN:  IT'S MY LINE 17.  IT'S THE INTRINSIC

 4   TEST PARAGRAPH --

 5                THE COURT:  YES.

 6                MR. NOLAN:  LOOKS LIKE THE OVERALL SIMILARITY OF

 7   IDEAS AND EXPRESSION IN THE WORKS.

 8                THE COURT:  ALL RIGHT.  I'M THERE.

 9                MR. NOLAN:  RIGHT.

10                THE COURT:  WHAT AGE DO YOU PROPOSE?

11                MR. NOLAN:  8 TO 12, YOUR HONOR.  I THINK THAT'S

12   THE -- THAT'S THE EVIDENCE --

13                THE COURT:  AGE 12, JUST AGE 12?

14                MR. NOLAN:  OH, NO; 8 TO 12.

15                THE COURT:  OH, 8 TO 12.  GOT IT.

16                MR. NOLAN:  AND THEN THE 4, YOUR HONOR, I'LL JUST

17   MAKE A PROFFER THAT IT HAS TO DO WITH REGULATIONS THAT HAVE

18   TO DEAL WITH SMALL ACCESSORIES, SMALL PARTS.  BUT THE

19   OVERWHELMING EVIDENCE IN THE CASE HAS ALWAYS BEEN, IN FACT,

20   MATTEL EVEN MONITORED THE PENETRATION BRATZ WAS HAVING IN

21   THIS OLDER GENERATION OF GIRLS IT'S HARD -- HARD TO IMAGINE

22   IT'S AN OLDER GENERATION OF GIRLS, BUT NEVERTHELESS

23   THAT'S -- THAT'S -- THAT'S THE TWEENS MARKET THAT WAS

24   IDENTIFIED BY MR. LARIAN.  SO WE WOULD ASK TO STAND ON THAT.

25                THE COURT:  WELL, IT WAS INDICATED.  I'VE SEEN
                                                          7916
```

1   EVIDENCE -- THE COURT HAS SEEN EVIDENCE INDICATING 4, 6, 7,

2   AND 8 AS THE BOTTOM RANGE.  AND THEN 12 SEEMS TO BE AT LEAST

3   AGREED UPON AS THE HIGH END.

4            I'LL -- I'LL CONSIDER THAT.

5            MR. NOLAN:  AND THEN, IF YOU CONTINUE ON AFTER 8

6   AND 12, WOULD -- WE WOULD STRIKE, "RECOGNIZE THE DEFENDANT'S

7   PRODUCTS AS REFLECTING."

8            WE WOULD INSERT THAT IT WOULD BE MORE CLEAR TO

9   SAY -- AND I'LL READ THIS NOW IN THE CONTEXT, "IN THIS CASE,

10  GIRLS BETWEEN THE AGES OF 8 AND 12 WOULD DETERMINE THAT" --

11  AND THEN IT WOULD READ ON -- "THE TOTAL CONCEPT AND FEEL."

12           AND THEN WE WOULD -- AND THEN WE WOULD GO ON, YOUR

13  HONOR, TO SUGGEST THAT, AFTER "TOTAL CONCEPT AND FEEL," THE

14  POINT, "OR AS A PICTURIZATION," BECAUSE I DON'T -- I DON'T

15  THINK --

16           THE COURT:  YOU'VE ALREADY MADE THOSE ARGUMENTS

17  ABOUT PICTURIZATION.  LET'S GO ON -- NOW, WE'RE GETTING --

18           MR. NOLAN:  I'M SORRY, YOUR HONOR.

19           OF THE BRATZ -- OKAY.  AND THEN "OF THE," AND I

20  WOULD STRIKE "THE BRATZ-RELATED WORKS" AND JUST SAY, "WORKS

21  THAT YOU HAVE FOUND THAT" -- AND WE WOULD STRIKE "MATTEL

22  OWNS."

23           AGAIN, ALONG THE SAME POINTS THAT I MADE EARLIER,

24  AND THEN JUST TRACK REALLY WHAT HAPPENED HERE THAT

25  "CARTER BRYANT CREATED ALONE OR JOINTLY WITH OTHERS DURING

                                            7917

```
 1   HIS MATTEL EMPLOYMENT IS SUBSTANTIALLY SIMILAR TO THE TOTAL
 2   CONCEPT AND FEEL IN THE ALLEGEDLY INFRINGING WORKS."
 3            THE COURT:  ALL RIGHT.
 4            MR. NOLAN:  AND THEN THE NEXT PARAGRAPH, I WOULD
 5   PROPOSE STRIKE THE FIRST SENTENCE AND THE FIRST WORD IN THE
 6   SECOND SENTENCE, "HOWEVER."  I WOULD STRIKE THAT.  AND THEN
 7   ADD, "TO SUMMARIZE, MATTEL" -- STRIKE "DOES NEED."  JUST
 8   SAY, "MATTEL MUST ESTABLISH THAT," AND THEN IT -- AND IT
 9   READS THE WAY IT'S CONSISTENT NOW.
10            THE COURT:  VERY WELL.
11            MR. NOLAN:  THE NEXT COMMENT THAT WE HAVE -- YOU
12   KNOW, I'M SORRY.  I DID GET A NOTE HANDED UP TO ME.
13            ON THE PRIOR PAGE, WE NEED TO SPECIFICALLY STATE
14   THAT STYLE, LOOK, AND ATTITUDE ARE NOT COPYRIGHTABLE.
15            I'M JUST READING A NOTE.
16            ON THAT SAME INSTRUCTION, YOUR HONOR, IF YOU GO
17   BACK TO THE BEGINNING.  WE WOULD ASK THAT -- THAT THERE BE
18   AN AFFIRMATIVE STATEMENT WHICH SAYS, "WE NEED" -- "THAT
19   STYLE, LOOK, AND ATTITUDE ARE NOT COPYRIGHTABLE."
20            AND YOU HAVE THAT AT LINE 18, WHERE YOU SAY:  "THE
21   PARTICULARIZED SYNERGISTIC COMPILATION AND EXPRESSION OF THE
22   HUMAN FORM ANATOMY; THAT IS, EXPRESSES A UNIQUE STYLE AND
23   CONVEYS A DISTINCT LOOK OR ATTITUDE."
24            WE'VE MADE THIS POINT BEFORE, YOUR HONOR, IN OUR
25   OBJECTIONS.  AND WE JUST WANTED TO MAKE CERTAIN THAT THAT
```

7918

1    HAD BEEN FLAGGED BECAUSE WE DO NOT BELIEVE THAT STYLE OR

2    DISTINCT LOOK OR ATTITUDE WOULD BE PROTECTABLE UNDER THE

3    COPYRIGHT ACT.

4            AND I THINK THAT THERE WAS TESTIMONY FROM EITHER

5    MR. LIND OR MR. LUTZ TO THE NOTION THAT YOU COULD SEE THIS

6    TYPE OF STYLE, LOOK, AND ATTITUDE OUTSIDE THE STAPLES CENTER

7    IN LOS ANGELES.

8            THE COURT:  VERY GOOD.  IS THAT ALL YOU HAVE ON

9    THAT INSTRUCTION, COUNSEL?

10           MR. NOLAN:  YES, IT IS.

11           THE COURT:  ALL RIGHT.  I'M GOING TO STOP YOU

12   HERE.  THE COURT HAS -- WE'VE GOT A LOT OF -- A LOT OF OTHER

13   ATTORNEYS WAITING PATIENTLY HERE IN THE COURTROOM.  WE HAVE

14   TWO QUICK SCHEDULING MATTERS TO TAKE UP, TWO QUICK MATTERS

15   AT TEN O'CLOCK.

16           WHAT I'D LIKE TO DO IS TAKE A BREAK FROM THIS.

17   THIS IS TAKING A LITTLE LONGER THAN I THOUGHT.

18           MR. NOLAN:  YES.

19           THE COURT:  LET'S TAKE UP THAT ALONG WITH THE MGA

20   STATUS CONFERENCE, AND THEN WE'LL GO BACK TO THIS BECAUSE I

21   REALLY DON'T HAVE MUCH OF AN ELEVEN O'CLOCK CALENDAR.

22           MR. NOLAN:  THANK YOU.

23           THE COURT:  AND I KNOW YOU GUYS ARE GOING TO BE

24   AROUND FOR THE DAY ANYWAYS SO . . .

25           MR. ZELLER:  AND -- AND, YOUR HONOR, JUST AS A

                                                      7919

1    REMINDER, I -- I DO HAVE TO LEAVE AT SOME POINT FOR MY

2    SCHEDULING CONFERENCE --

3              THE COURT:  THAT'S RIGHT.  YOU HAVE THE -- THE

4    CONFERENCE WITH -- WITH JUDGE --

5              MR. ZELLER:  JUDGE MATZ.

6              THE COURT:  -- MATZ.

7              WHAT TIME DO YOU NEED TO LEAVE, COUNSEL?

8              MR. ZELLER:  I -- I WOULD SAY, TO BE SAFE, NO

9    LATER THAN 11:00.  IT'S -- IT'S AT 1:30.

10             THE COURT:  OKAY.  VERY GOOD.  AND IF FOR SOME

11   REASON I HOLD YOU LONGER, I'LL BE SURE TO CALL JUDGE MATZ.

12             MR. ZELLER:  OKAY.  THANK YOU.

13             THE COURT:  THANK YOU, COUNSEL.

14             (OTHER UNRELATED PROCEEDINGS.)

15             THE COURT:  OKAY.  MR. NOLAN, I'M SORRY THAT I

16   INTERRUPTED YOU.  WE'RE BACK ON THE RECORD.  BUT I

17   THOUGHT --

18             MR. NOLAN:  NOT AT ALL.

19             THE COURT:  -- WE SHOULD JUST ADDRESS THOSE PEOPLE

20   THAT WERE WAITING AROUND.

21             MR. NOLAN:  NO, NOT AT ALL.  IN FACT, I'LL -- I'LL

22   TRY TO -- I ALSO TOOK IT AS A HINT TO KIND OF SPEED IT UP,

23   SO --

24             THE COURT:  VERY GOOD.

25             WE -- WE LEFT OFF AT PAGE 29.  I THINK WE'RE ON

                                                        7920

1    PAGE 30.

2            MR. NOLAN:  WITH RESPECT TO THE COPYRIGHT

3    INSTRUCTIONS, YOUR HONOR, THOSE ARE THE ONLY COMMENTS THAT I

4    WOULD MAKE -- OH, EXCEPT ON PAGE 33.

5            THE COURT:  ALL RIGHT.  I'M THERE.  THE 2D-3D

6    INSTRUCTION.

7            MR. NOLAN:  RIGHT, RIGHT.

8            AND AT THE END OF LINE 5, WHERE IT SAYS, "WHEN THE

9    WORKS ARE SUBSTANTIALLY SIMILAR," WE WOULD ADD, "UNDER THE

10   EXTRINSIC AND INTRINSIC TEST," PERIOD.

11           THEN WE'RE GOING TO DO A TAG TEAM THAT --

12           THE COURT:  HOLD ON ONE SECOND.

13           OKAY.

14           MR. NOLAN:  THE LAST ONE THAT I WANT TO RAISE,

15   YOUR HONOR, AND THEN MR. ROTH WILL ADDRESS JUST A COUPLE, IF

16   YOU DON'T MIND, WE'LL JUST GO TO FRAUDULENT CONCEALMENT.

17   AND THE FRAUDULENT CONCEALMENT DISCUSSION IS --

18           THE COURT:  THAT'S PAGE 38.

19           MR. NOLAN:  YES.  AND WE BELIEVE, YOUR HONOR, THAT

20   THE COURT HAS A RIGHT -- AND WE CITED IN THE PAPERS THAT WE

21   HANDED UP TO YOU FRIDAY THE RECENT NINTH CIRCUIT DECISION

22   THAT IS IN THE CLEMENS V. DAIMLER-CHRYSLER CORPORATION CASE,

23   WHICH WAS DECIDED APRIL 11TH, 2008.

24           I'M SORRY.  IT WAS FILED -- AMENDED JULY 24TH,

25   2008.  AND THAT WAS CITED TO AND SUBMITTED, WHERE THEY DID

                                                    7921

```
 1   NOT ADOPT THE ACTUAL NOTICE.  IN FACT, THEY REFERRED TO IT
 2   AS THE PRESUMPTIVE KNOWLEDGE.
 3            THE COURT:  I DO RECALL THESE CASES, COUNSEL.  LET
 4   ME ASK YOU THE SAME QUESTION I ASKED MATTEL, DO YOU HAVE THE
 5   CITE ON THAT, BY CHANCE?
 6            MR. NOLAN:  YES.  I HAVE IT, IF YOU DON'T MIND THE
 7   HAND --
 8            THE COURT:  PERFECT.  JUST HAND IT FORWARD, AND
 9   I'LL TAKE A LOOK AT THE TWO CASES AND . . .
10            ANYTHING ELSE ON THE --
11            MR. NOLAN:  YES, YOUR HONOR.  I WANT TO GO JUST --
12   I WANTED TO GO BACK ONE POINT TO THE INTERMEDIARY WORK
13   INSTRUCTIONS.
14            JUST TO GO BACK IN TIME, YOUR HONOR.  I APOLOGIZE.
15   THIS WILL BE THE LAST ONE WE BRING UP IN THE COPYRIGHT
16   CONTEXT.
17            PAGE 34.
18            THE COURT:  PAGE 34.  ALL RIGHT, I'M THERE.  THIS
19   IS THE INTERMEDIATE OR PREPARATORY WORK INSTRUCTION.
20            MR. NOLAN:  RIGHT.  I THINK THAT IT'S CONFUSING TO
21   THE JURY.  THERE'S BEEN NO EVIDENCE AT ALL OF LIKE AN
22   INTERMEDIARY STEP.  IN A WAY IT SUGGESTS THAT
23   ONE INTERPRETATION HERE COULD BE THAT THE JURY COULD FIND
24   THAT NONE OF THE LATER PRODUCTS INFRINGE, BUT PERHAPS THE
25   PROTOTYPE DOLLS THAT WERE DISPLAYED IN THE NEW YORK AND
```

```
1    HONG KONG TOY FAIRS WERE INTERMEDIARY, AND THEY INFRINGE THE

2    DRAWINGS.  BUT THERE'S NO PROOF OF ANY PROFITS DERIVED FROM

3    ANY OF THAT.

4            I -- I THINK THAT THIS COMES UP MORE IN

5    COMPUTER -- COMPUTER TYPE OF CASES WHERE YOU'VE GOT

6    ITERATIONS OF PROGRAMS THAT YOU'RE WORKING ON.  BUT I

7    DON'T -- I, RESPECTFULLY, DO NOT BELIEVE THAT THIS HAS ANY

8    BEARING IN THIS CASE AND COULD PROVE TO BE CONFUSING.

9            THE COURT:  BUT DON'T WE HAVE ITERATIONS OF DOLLS,

10   BASICALLY, IN THIS CASE?

11           MR. NOLAN:  YOUR HONOR, RESPECTFULLY, OUR VIEW IS

12   THAT DOLL IS A DOLL, AND THAT THE ITERATION --

13           THE COURT:  WELL, I DON'T IF THAT'S BEEN YOUR

14   VIEW -- THINK ABOUT THAT STATEMENT, COUNSEL.

15           MR. NOLAN:  A DOLL --

16           THE COURT:  YOUR -- YOUR POSITION IS CERTAINLY --

17   AND -- AND I'M ACTUALLY SOMEWHAT -- TENTATIVELY, I -- I SIDE

18   WITH MGA ON THE VERDICT FORM THAT PRECISELY BECAUSE A DOLL

19   IS NOT JUST A DOLL, THAT -- THAT WE NEED TO BREAK OUT THE --

20   THE VARIOUS PRODUCTS THAT MATTEL CLAIMS ARE INFRINGING TO

21   FIND OUT WHAT THE JURY IS AND IS NOT FINDING.  AND IT'S

22   PRECISELY THAT A DOLL IS NOT A DOLL IS NOT A DOLL.  IT'S --

23   IT'S ONE CAN BE --

24           MR. NOLAN:  WELL --

25           THE COURT:  I -- I COULD SEE, THEORETICALLY, FOR
```

```
 1   EXAMPLE, THE JURY COMING BACK AND SAYING THAT THE FIRST
 2   GENERATION ARE SUBSTANTIALLY SIMILAR TO THE DRAWINGS, BUT
 3   PERHAPS THE FIFTH GENERATION IS NOT.
 4            MR. NOLAN:  I -- I SEE WHAT YOU'RE SAYING.  IN --
 5   IN FACT, YOUR HONOR, WE WERE ACTUALLY SAYING THE SAME
 6   THING --
 7            THE COURT:  OKAY.
 8            MR. NOLAN:  -- WHEN I SAID THAT -- I MEAN, I -- I
 9   AGREE WITH THAT.
10            IF THAT'S THE INTERPRETATION THAT WAS BEING
11   APPLIED HERE, IF THIS IS ONE OF -- OF BREAKING THROUGH
12   GENERATIONS, THEN THAT ADDS SOME CLARITY TO US.
13            WE WERE JUST SITTING IN THE CONFERENCE ROOM . . .
14            THE COURT:  WELL, I'LL TAKE --
15            MR. NOLAN:  SO --
16            THE COURT:  -- I'LL TAKE A LOOK AT THIS AGAIN.
17            MR. NOLAN:  I DO -- I ALREADY COVERED EVERYTHING.
18   BUT I -- I CERTAINLY WASN'T INTENDING TO NOT ADOPT THE
19   COURT'S EARLIER VERSION THAT -- WE'RE NOT SAYING THAT EVERY
20   DOLL IS SIMILAR.
21            THE COURT:  OKAY.
22            MR. NOLAN:  THAT'S -- THAT'S NOT THE POINT THAT
23   I -- WHAT I WAS TRYING TO DRAW THE -- THE DISTINCTION IS
24   BETWEEN THE INTERMEDIATE -- THE PROTOTYPE FORM OF THE
25   DOLL --
```

```
 1              THE COURT:  VERY WELL.

 2              MR. NOLAN:   -- VERSUS THE ACTUAL DOLL.

 3              THE COURT:  LET ME HEAR FROM MR. KENNEDY ON THE

 4    DAMAGES, THEN.  DAMAGE INSTRUCTION.

 5              MR. ROTH:  I'M AFRAID I'M A POOR SUBSTITUTE FOR

 6    MR. KENNEDY.

 7              THE COURT:  NOT AT ALL, MR. ROTH.  YOU'VE HANDLED

 8    YOURSELF VERY WELL IN THIS CASE.

 9              MR. ROTH:  AND MR. KENNEDY WILL ADDRESS THE

10    PUNITIVE DAMAGES ISSUES AT THE END.

11              THE COURT:  OKAY.

12              MR. ROTH:  I APOLOGIZE FOR THE VARIETY OF FOLKS.

13              STARTING THEN WHERE MR. NOLAN LEFT OFF --

14              THE COURT:  YES, PAGE 39.

15              MR. ROTH:  PAGE 39, NO PROBLEM.  PAGE 40, NO

16    ISSUE, AS -- AS MR. NOLAN INDICATED, WITH DROPPING OF THE 1

17    FROM THE PHASE.  THAT -- THAT CERTAINLY UNDERSTANDS -- IS

18    UNDERSTANDABLE.

19              WE DO -- AND WE'VE ARTICULATED THIS TO THE COURT A

20    NUMBER OF TIMES -- HAVE AN ISSUE WITH RESPECT TO VIRTUALLY

21    ALL OF THESE INSTRUCTIONS RELATED TO STATE LAW CLAIMS IN

22    TERMS OF WHAT THEY SPECIFY IS THE APPROPRIATE SPECIFIC ITEM

23    OF DAMAGE.  AND THERE'S JUST A WHOLE VARIETY OF ISSUES HERE.

24              WITH RESPECT TO THE INTERFERENCE CLAIM -- NOW I'M

25    ON PAGE 40.
```

```
 1              THE COURT:  YES.
 2              MR. ROTH:  -- WE THINK THAT A -- A SENTENCE SHOULD
 3   BE ADDED TO THE SECOND PARAGRAPH AT THE END WHICH REFLECTS
 4   THE COURT'S DECISION IN ITS MOTION FOR SUMMARY JUDGMENT THAT
 5   THE INTERFERENCE CLAIM CANNOT BE BASED ON MATTEL'S RIGHTS TO
 6   BRATZ.
 7              SO IT WOULD READ SOMETHING LIKE, "ANY SUCH DAMAGES
 8   MAY NOT BE BASED ON MATTEL'S RIGHTS TO BRATZ."  THAT'S A
 9   VERY CLOSE PARAPHRASE OF THE COURT'S ORDER.
10              THE COURT:  ADDRESS THE CONFUSING, HOW THAT --
11   THE -- THE ARGUMENTS THAT ARE MADE.  THIS WAS LITIGATED
12   BETWEEN THE TWO PARTIES IN THEIR BRIEFS SO YOU -- YOU NEED
13   TO GO BEYOND SAYING -- I KNOW YOU THINK I SHOULD INCLUDE
14   THAT, BUT THERE'S -- THERE'S REASONS OFFERED IN OPPOSITION
15   TO THAT AS TO WHY THE COURT SHOULD NOT.  WHY DON'T YOU
16   ADDRESS THOSE REASONS.
17              MR. ROTH:  YOUR HONOR, IT'S DIFFICULT TO -- TO
18   ADDRESS THAT WITHOUT ENGAGING ONCE AGAIN IN THE PREEMPTION
19   DISCUSSION THAT WE'VE HAD.
20              WE BELIEVE THAT THE -- THE COURT, IN THE CONTEXT
21   OF THE INTENTIONAL INTERFERENCE CLAIM, MADE THE RIGHT
22   DISTINCTION.  AND THAT IS TO SAY, CLAIMS THAT INVOLVE AN
23   ADDITIONAL ELEMENT, THE CLAIMS ITSELF ARE NOT NECESSARILY
24   PREEMPTED, BUT THE REQUEST FOR -- FOR DAMAGES THAT ARE
25   NOTHING MORE THAN A -- THAN A REPLICATION OF A REQUEST FOR
```

1    DAMAGES ARISING UNDER THE COPYRIGHT ACT SHOULD NOT BE

2    PERMITTED.

3          SO THERE -- THERE ARE -- WHEN WE SAW LOTS OF

4    EVIDENCE IN THIS CASE ABOUT HARM THAT COULD GIVE RISE TO A

5    DAMAGE THEORY.

6          THE COURT:  I UNDERSTAND HOW THIS LEADS TO

7    DUPLICATIVE DAMAGES, WHICH THE COURT WAS GOING TO ADDRESS

8    IF -- IF IT'S CALLED UPON TO DO SO.  BUT -- AND I KNOW IT --

9    THERE'S -- THERE'S A CERTAIN LACK OF APPEAL, PARTICULARLY

10   FROM THE DEFENDANT'S PERSPECTIVE -- OF -- OF MAKING THIS

11   THEORETICAL DISTINCTION BETWEEN CLAIMS THAT END UP HAVING

12   THE SAME DAMAGES.  BUT THEY'RE PREDICATED ON -- ON TWO

13   DIFFERENT INSTRUCTIONS.

14         ONE IS PREDICATED ON A COPYRIGHT INTRINSIC CLAIM,

15   ONE IS PREDICATED ON STATE TORT LAW CLAIM.  THE TWO ARE,

16   UNDER THE LAW, SEPARATE AND DISTINCT EVEN THOUGH THEY RESULT

17   IN -- OR THEY TRIGGER SIMILAR REMEDIES OR SIMILAR DAMAGES.

18         AND THE -- THE COURT IS FINDING -- LET ME MAKE

19   THIS EXPLICIT IF IT HAS NOT BEEN CLEAR FROM THE IMPLICIT

20   INCLUSION OF THESE -- THAT THE MERE FACT THAT THE REMEDIES

21   ARE THE SAME DOES NOT RESULT IN THE PREEMPTION.

22         MR. ROTH:  UNDERSTOOD, YOUR HONOR.  OBVIOUSLY, WE

23   RESPECTFULLY DISAGREE.

24         THE COURT:  I UNDERSTAND -- I UNDERSTAND THAT.

25         MR. ROTH:  AND I WOULD REFER THE COURT TO

7927

```
 1   JUDGE POSNER'S DECISION IN THE BUCKBU (PHONETIC) CASE, WHICH
 2   WE THINK IS --
 3              THE COURT:  WHICH YOU QUOTE FROM IN YOUR -- IN
 4   YOUR -- IN YOUR PAPERS.  I MEAN, THE COURT CERTAINLY
 5   RESPECTS JUDGE POSNER, BUT I --
 6              MR. ROTH:  OKAY.
 7              THE COURT:  VERY WELL.
 8              MR. ROTH:  AND OBVIOUSLY, THAT -- THAT IS OUR
 9   POSITION.
10              IN ADDITION, WE HAVE MADE, THROUGHOUT THE JURY
11   INSTRUCTIONS AND IN THE PAPERS THAT WE FILED WITH THIS
12   COURT, WE'VE POINTED TO A VARIETY OF CASES WHICH INDICATE
13   THAT, IN THE AIDING AND ABETTING CONTEXT, THE -- THE PROFITS
14   THAT MAY BE SOUGHT ARE THE PROFITS OF THE -- THE PARTY WITH
15   THE UNDERLYING FIDUCIARY OR RELATIONSHIP WITH THE -- WITH
16   THE PLAINTIFF, THAT WOULD MR. BRYANT.  SO IT WOULD BE
17   MR. BRYANT'S PROFITS ARE THE PROFITS AT ISSUE HERE.
18              IT'S TRUE THAT THERE ARE CASES THAT PROVIDE THAT
19   AN AIDER AND ABETTOR MAY BE JOINTLY LIABLE FOR THE SAME
20   PROFITS, THAT IS TO SAY, THE PROFITS OF THE UNDERLYING
21   WRONGDOER.
22              WE BELIEVE THAT, IN LIGHT OF THAT CASE LAW, AS
23   WE'VE CITED TO YOUR HONOR REPEATEDLY THROUGH THESE
24   INSTRUCTIONS, THERE SHOULD BE A LIMITATION ON DAMAGES IN THE
25   AIDING AND ABETTING CONTEXT TO MR. BRYANT'S PROFITS.
```

7928

```
 1             IN ADDITION, WE HAVE MADE ARGUMENTS THROUGHOUT
 2    THE -- THE PAPERS WITH RESPECT TO PREJUDGMENT INTEREST.
 3    PREJUDGMENT INTEREST IS -- IS A CONCEPT PREMISED UPON MAKING
 4    THE DEFENDANT WHOLE HERE.
 5             AGAIN, THERE ARE THEORIES UNDER -- AS RELATES TO
 6    THE STATE LAW CLAIMS WHERE MATTEL COULD BE SEEKING
 7    RECOMPENSE FOR HARM, BUT THEY HAVEN'T PRESSED THOSE.  WHAT
 8    THEY ARE SEEKING IS -- IS THE DISGORGEMENT OF MGA'S PROFITS.
 9             IN THAT CONTEXT, WE THINK THAT, AS ASSOCIATED WITH
10    THOSE CLAIMS, THAT PREJUDGMENT INTEREST IS NOT -- IS NOT
11    APPROPRIATE BECAUSE IT'S NOT ABOUT MATTEL'S HARM.  IT'S
12    ABOUT MGA'S -- MGA'S ILL-GOTTEN GAINS.
13             THE COURT:  OKAY.
14             MR. ROTH:  AND TO THE EXTENT THE -- THE -- IT'S --
15    IT'S WHY THERE'S SORT OF ATTENTION IN -- IN A NUMBER OF
16    THESE INSTRUCTIONS BECAUSE THEY TALK -- FOR INSTANCE, PAGE
17    40 AND PAGE 41, THEY TALK IN TERMS OF HARM AND THEN LAY OUT
18    A DAMAGE THEORY AT THE BOTTOM THAT'S PREMISED UPON
19    DISGORGEMENT, WHICH IS NOT ABOUT HARM.
20             THE REASON THAT IT'S A BIT COMPLEX FROM OUR
21    PERSPECTIVE IS, GIVEN THE FACTS AS THEY'VE BEEN -- THIS CASE
22    HAS BEEN TRIED, THERE IS A THEORY OF HARM UNDER THESE --
23    UNDER THESE CLAIMS.  NOT THE DISGORGEMENT OF OUR PROFITS,
24    BUT THERE IS A THEORY OF HARM.
25             THERE'S -- YOU KNOW, CARTER BRYANT WORKED FOR TWO
```

```
 1    COMPANIES AT ONE TIME.  MAYBE THERE'S A THEORY OF HARM
 2    ASSOCIATED WITH THAT SALARY --
 3             THE COURT:  WELL, THEY'RE NOT -- THEY'RE NOT
 4    PURSUING THAT.  THEY'RE -- THEY'RE LOOKING AT A DIFFERENT
 5    HARM.
 6             MR. ROTH:  THEY'RE NOT -- THEY'RE NOT -- THEY'RE
 7    NOT PURSUING THAT.  THEN THEIR THEORY ISN'T BASED ON HARM.
 8    THEIR THEORY IS PREMISED UPON OUR ILL-GOTTEN GAINS.
 9             IT'S NOT DAMAGE.  IT'S NOT COMPENSATORY DAMAGE
10    THEY'RE SEEKING.  IT'S PREMISED UPON OUR ILL-GOTTEN GAINS.
11             HARM COULD HAVE BEEN -- THERE COULD HAVE BEEN SOME
12    THEORY EVEN BASED UPON OUR EXPECTATION OF THE BRATZ
13    INTELLECTUAL PROPERTY BASED UPON HOW IT MIGHT HAVE AFFECTED
14    MATTEL'S MARKET SHARE.
15             THE COURT:  YOU'RE -- YOU'RE NOT DISPUTING THAT
16    DISGORGEMENT OF PROFITS IS APPROPRIATE UNDER THESE THEORIES?
17             WELL, I -- I GUESS YOU ARE WITH RESPECT TO THE
18    AIDING AND ABETTING.  BUT WITH RESPECT -- OR ACTUALLY, IT'S
19    WHOSE PROFITS UNDER THAT.
20             MR. ROTH:  YES.
21             THE COURT:  YOU'RE SUGGESTING THAT IT'S JUST
22    CARTER.
23             BUT YOU'RE STILL NOT SUGGESTING THAT DISGORGEMENT
24    OF PROFITS IS AN APPROPRIATE THEORY.
25             MR. ROTH:  NO, I'M NOT SAYING --
```

7930

```
 1              THE COURT:  IN FACT, YOU SUBMITTED AN INSTRUCTION
 2    TO THAT EFFECT.
 3              MR. ROTH:  I AM NOT -- WE ARE NOT SAYING, AS A
 4    THEORETICAL MATTER, THE DISGORGEMENT OF PROFITS IS NOT
 5    INAPPROPRIATE AS -- AS A REMEDY.  IF THAT IS THE REMEDY,
 6    THERE ARE CERTAIN LIMITATIONS.  AND IT'S NOT -- IT'S NOT
 7    HARM.  IT'S ILL-GOTTEN GAINS.
 8              THE COURT:  SO YOU OBJECT TO THE USE OF THE WORD
 9    "HARM" IN THESE INSTRUCTIONS?
10              MR. ROTH:  WE DO.  WE DO TO THE EXTENT THAT IS THE
11    BASIS.
12              THE COURT:  YOU MUST NOW DECIDE HOW MUCH MONEY --
13    SHALL WE SIMPLY SAY "SHOULD BE AWARDED -- "HOW MUCH MONEY,
14    IF ANY" --
15              MR. ROTH:  YES.
16              THE COURT:  -- "SHOULD BE AWARDED AS DAMAGES"?
17              I MEAN, YOU CERTAINLY AGREE THAT THEY'RE CALLED
18    DAMAGES?
19              MR. ROTH:  YES, YOUR HONOR.
20              THE COURT:  OKAY.
21              MR. ROTH:  I MEAN, I COULD MAKE THE OPPOSITE
22    ARGUMENT THAT --
23              THE COURT:  I UNDERSTAND.
24              MR. ROTH:  BUT WE -- WE'VE -- AT SOME POINT, WE'VE
25    GOT TO COME UP WITH WORDS.
```

```
 1              THE COURT:  "SHOULD BE AWARDED AS DAMAGES."

 2         ALL RIGHT.  YOUR NEXT ARGUMENT.

 3              MR. ROTH:  YEAH.  LET'S JUST -- PRESSING FORWARD.

 4              PAGE 42.  THERE IS A CONCERN THAT WE HAVE, TO THE

 5    EXTENT THAT THE -- THE COURT ACCEPTS, AS IT MAY, THAT THE --

 6    ALL OF -- OF MGA'S PROFITS ARE ON THE TABLE AS A RESULT OF

 7    THE DISGORGEMENT THEORIES UNDER THE STATE LAW CLAIMS.

 8              WHAT ISN'T CLEAR FROM THE INSTRUCTIONS, AS -- AS I

 9    READ THEM, IS THE REQUIREMENT THAT MATTEL DRAW -- SORT OF

10    TRACE OR DRAW A CAUSAL LINK BETWEEN THE ALLEGED WRONGDOING

11    AND THE PROFITS.  BECAUSE WHAT WE'VE GOT IS WRONGDOING AND A

12    POOL OF PROFITS.  AND THAT IT IS -- IT IS -- IT IS IN A

13    SENSE, THE INVERSE OF THE APPORTIONMENT ANALYSIS UNDER THE

14    COPYRIGHT ITEM.  THE APPORTIONMENT IS JUST A FANCY WAY OF

15    THE COPYRIGHT LAWS WORKING OUT THE CAUSATION ARGUMENT.

16              SO WHAT WE WOULD PROPOSE WITH RESPECT TO THE

17    INSTRUCTION ON PAGE 42, LINE 7 READS "PROFITS OR

18    ADVANTAGES," AND WE WOULD INSERT "PROXIMATELY CAUSED BY

19    THESE SPECIFIC WRONGFUL ACTS."

20              THE COURT:  "PROXIMATELY CAUSED" --

21              MR. ROTH:  -- "BY THESE SPECIFIC WRONGFUL ACTS."

22              THE COURT:  -- "BY THESE SPECIFIC WRONGFUL ACTS."

23              THE USE OF THE WORD "PROXIMATELY" IS AS A LEGAL

24    TERM.  DO WE REALLY NEED THAT ADVERB IN THERE?

25              MR. ROTH:  WE WOULD ACCEPT "CAUSED BY THE SPECIFIC
                                                         7932
```

```
 1   WRONGFUL ACTS."
 2            THE COURT:  I THINK THE PHRASE THAT WE USED IN
 3   PHASE A WAS "SUBSTANTIALLY CAUSED."
 4            MR. ROTH:  YEAH, THERE --
 5            THE COURT:  ACTUALLY, NO, THAT -- THAT MIXES
 6   RIGHT -- NO.
 7            MR. ROTH:  YEAH.
 8            THE COURT:  "CAUSED BY THESE WRONGFUL ACTS."
 9   OKAY.
10            MR. ROTH:  AND I JUST WANTED TO ADD THE WORD
11   "SPECIFIC" BECAUSE WE -- WE WANT TO MAKE AN ARGUMENT ABOUT
12   THE FAILURE TO ADDUCE APPROPRIATE CAUSATION EVIDENCE AS
13   RESPECTS THE STATE LAW CLAIMS.
14            THE COURT:  HASN'T THAT ALREADY BEEN DECIDED,
15   COUNSEL?  CAUSATION HAS BEEN DECIDED IN PHASE A.
16            MR. ROTH:  WELL, THAT THE -- IT'S -- CAUSATION
17   IS -- IS A --
18            THE COURT:  I MEAN, I UNDERSTAND YOUR ARGUMENT
19   WHERE YOU WANT TO LINK UP THE CAUSATION BETWEEN THE HARM --
20   NOT THE HARM -- THE -- THE -- THE TORT AND THE DAMAGES.  BUT
21   IN TERMS OF THE CAUSATION, I -- I DON'T WANT TO CONFLATE --
22   I DON'T WANT THE JURY RECONSIDERING THE ISSUE OF WHETHER OR
23   NOT THE ACTIONS BY MR. LARIAN AND MGA AND MGA HONG KONG
24   CAUSED --
25            MR. ROTH:  AS -- AS -- FROM A LIABILITY
```

7933

1   PERSPECTIVE, CAUSED HARM.  UNDERSTOOD THAT THAT'S BEEN

2   RESOLVED, BUT THERE -- THERE STILL NEEDS TO A -- A LINKAGE

3   MADE BETWEEN THE ACTS --

4            THE COURT:  BETWEEN THE PROFITS OR ADVANTAGES

5   AND -- AND FROM THE TORT.

6            MR. ROTH:  YES.

7            THE COURT:  THEN I UNDERSTAND YOUR ARGUMENT.

8   THANK YOU.

9            MR. ROTH:  MOVING ON TO PAGE 43.

10           THE COURT:  WELL, WAIT.  DON'T WE HAVE THAT,

11  "BECAUSE OF THEIR WRONGFUL ACTS"?  I MEAN, THE LANGUAGE IS

12  ALREADY THERE.  I WAS JUST -- I WAS INSERTING IT IN BETWEEN

13  "ADVANTAGES" AND "BECAUSE," BUT THE "BECAUSE," THAT'S --

14  THAT'S THE CAUSAL CONNECTION, "BECAUSE OF THESE WRONGFUL

15  ACTS."

16           "ACCORDINGLY, IF YOU FIND THAT MGA AND/OR ISAAC

17  LARIAN OBTAINED PROFITS OR ADVANTAGES BECAUSE OF THESE

18  WRONGFUL ACTS, THOSE PROFITS AND ADVANTAGES SHOULD BE

19  AWARDED TO MATTEL."

20           I THINK YOU ALREADY HAVE THE BASIS TO MAKE THE

21  ARGUMENT WHAT YOU WANT TO MAKE.

22           MR. ROTH:  WELL, WE'D LIKE TO THEN, AT THE VERY

23  LEAST, ADD THE WORD "SPECIFIC."

24           THE COURT:  BETWEEN "THESE" AND "WRONGFUL."

25           MR. ROTH:  YES.

                                              7934

1              THE COURT:  OKAY.

2              MR. ROTH:  PAGE 43, YOUR HONOR.  LINES 19 AND 20,

3      "REASONABLE COMPENSATION FOR THE TIME AND MONEY SPENT BY

4      MATTEL IN ATTEMPTING TO RECOVER THIS PROPERTY."

5              THERE'S BEEN NO EVIDENCE SUBMITTED IN THIS CASE

6      ABOUT WHAT THAT MIGHT BE.  I THINK IT'S JUST GOING TO LEAD

7      TO CONFUSION, SO WE'D STRIKE THAT.

8              PAGE 44, I THINK WE'RE IN ACCORD.  I JUST WANT TO

9      MAKE IT CLEAR.  MR. PROCTOR SUGGESTED THAT THE

10     SECOND SENTENCE BE STRUCK.

11             THE COURT:  RIGHT.

12             MR. ROTH:  AND I THINK THE WORD "IN ADDITION"

13     NEEDS TO GO AS WELL.

14             THE COURT:  YES.

15             MR. ROTH:  RIGHT.

16             THE COURT:  AND -- AND THE WORD "ALSO."

17             MR. ROTH:  RIGHT.

18             NEXT, PAGE 46.

19             THE COURT:  OKAY.

20             MR. ROTH:  AND I THINK THAT THIS -- WHAT YOU HAVE

21     IS FAIRLY CLOSE TO OUR DISCUSSION OF LAST WEEK.  I THINK THE

22     LAST SENTENCE READS:  "WHEN THE COPYRIGHTED PORTIONS ARE SO

23     INTERMINGLED WITH THE REST OF THE INFRINGING WORK THAT THEY

24     CANNOT WELL BE DISTINGUISHED FROM IT, THE ENTIRE PROFITS

25     REALIZED BY THE DEFENDANTS ARE TO BE GIVEN TO THE

                                                        7935

1    PLAINTIFF."

2              WE THINK THAT, IN TERMS OF JUST BALANCING OUT THAT

3    LANGUAGE, THAT AN ADDITIONAL SENTENCE FROM THE SAME SECTION

4    IN PATTRY, SECTION 22-147, SHOULD BE ADDED, WHICH WOULD

5    READ, "MGA DOES NOT NEED TO DEMONSTRATE THAT PROFITS NOT

6    ATTRIBUTABLE TO" --

7              THE COURT:  HOLD -- HOLD ON A SECOND.

8              MR. ROTH:  SORRY.

9              THE COURT:  "DOES NOT NEED TO" --

10             MR. ROTH:  -- "DEMONSTRATE THAT PROFITS NOT

11   ATTRIBUTABLE TO THE INFRINGEMENT ARE," QUOTE, "COMPLETELY

12   FREE," CLOSE QUOTE, "OF INFRINGING MATERIAL."

13             THE COURT:  -- "NOT ATTRIBUTABLE TO INFRINGEMENT

14   ARE COMPLETELY FREE OF INFRINGING MATERIAL."

15             MR. ROTH:  RIGHT, JUST TO GIVE BALANCE TO THE

16   PRIOR SENTENCE.

17             THE COURT:  ALL RIGHT.

18             MR. PROCTOR:  IF I MAY INQUIRE, YOUR HONOR, I'M --

19   I'M JUST NOT SURE WHAT -- IS THIS A PROPOSAL THAT THIS BE

20   INSERTED OR IS THIS A -- AN ADDITIONAL LINE?

21             MR. ROTH:  IT'S AN ADDITIONAL LINE AT THE END OF

22   THAT PARAGRAPH.

23             THE COURT:  THAT'S THE SUGGESTION OF COUNSEL.

24             MR. ROTH:  YES.

25             OKAY.  NEXT, PAGE 47.  AND HERE'S WHERE WE MAY

7936

```
 1   NEED TO HAVE A LITTLE BROADER CONVERSATION.

 2            THE COURT IS AWARE THAT WE SUBMITTED A WILLFUL

 3   INFRINGEMENT INSTRUCTION.

 4            THE COURT:  RIGHT.

 5            MR. ROTH:  THAT I THINK, IN THE CONTEXT OF WILLFUL

 6   INFRINGEMENT, THERE ARE TWO ISSUES.

 7            THE COURT:  HOLD ON A SECOND.  LET ME FIND THAT

 8   INSTRUCTION.

 9            MR. ROTH:  SURE.

10            THE COURT:  LITERALLY, I DIDN'T HAVE THIS IN FRONT

11   OF ME WHEN I -- OKAY.

12            ALL RIGHT.  I GUESS I DID.  THIS IS PRETTY CLOSE.

13            ALL RIGHT.  WHAT -- WHAT ARE WE MISSING HERE

14   FROM --

15            MR. ROTH:  THERE -- THERE ARE TWO ISSUES, YOUR

16   HONOR, I THINK THAT NEED TO BE ADDRESSED.  THE FIRST IS WHAT

17   DOES "WILLFUL INFRINGEMENT" MEAN?  AND THE SECOND IS IF

18   THERE'S A FINDING OF WILLFUL INFRINGEMENT, WHAT'S THE

19   CONSEQUENCE?

20            THE COURT:  RIGHT.

21            MR. ROTH:  WITH RESPECT TO THE FIRST POINT, THEY

22   BORROWED FROM -- FROM THE STATUTORY DAMAGES SECTION 8A, A

23   JURY INSTRUCTION ABOUT WHAT WILLFUL INFRINGEMENT MEANS.

24   THE -- THE CASE LAW -- AND THIS INSTRUCTIONS COMES ENTIRELY

25   FROM THE CASE LAWS.  THERE IS NO WILLFUL INFRINGEMENT
```

1    PORTION OF THE STATUTE UNDER THE PROFIT SECTION UNDER WHICH

2    THEY'RE PROCEEDING.

3           THAT THE -- THE ONLY CASES THAT REALLY DEFINE WHAT

4    WILLFUL INFRINGEMENT MEANS TALK IN TERMS OF THE LANGUAGE

5    THAT WE USE, WHICH IS THE DEFENDANT DELIBERATELY INTENDED TO

6    PLAGIARIZE THE PLAINTIFF'S COPYRIGHT.  THAT'S -- THAT'S THE

7    LANGUAGE USED WHEN DEFINING WHAT -- WHAT IT MEANS TO

8    WILLFULLY.

9           SECONDLY, AND THIS IS FRANKLY WHERE THERE'S --

10   THERE'S JUST A DIFFICULT QUESTION THAT HAS TO BE RECONCILED

11   AMONG THE CASES.  THERE DOES APPEAR TO BE FAIRLY GENERAL

12   AGREEMENT ABOUT THE EFFECT OF THAT VIS-A-VIS TAXES.  AND

13   YOU'LL RECALL THAT -- THAT WE'VE HAVE DISCUSSION ABOUT THAT.

14

15          THERE IS NOT AGREEMENT AT ALL ABOUT THE EFFECT OF

16   A FINDING OF WILLFUL INFRINGEMENT ON THE OVERHEAD ANALYSIS.

17          MATTEL IS RELYING ON SOME -- I BELIEVE AN EIGHTH

18   CIRCUIT CASE OUT OF CIRCUIT AUTHORITY FOR THE PROPOSITION

19   THAT THE -- YOU KNOW, THE OVERHEAD IS STRUCK.

20          THERE HAS NEVER BEEN SUCH A HOLDING IN THE NINTH

21   CIRCUIT.  THE NINTH CIRCUIT HAS NEVER DETERMINED THAT.  THE

22   SECOND CIRCUIT HAS MADE IT FAIRLY CLEAR THAT, IN THE CONTEXT

23   OF A FINDING OF WILLFUL INFRINGEMENT, THE RESULT IS THAT, IN

24   A SENSE, A HIGHER BURDEN IS PLACED UPON THE DEFENDANT TO

25   DRAW A CONNECTION BETWEEN THE OVERHEAD BEING CLAIMED AND THE

7938

1   INFRINGING PRODUCTS.

2           SO, YOU KNOW, THAT IS WHAT WE SUGGEST -- I MEAN,

3   RECOGNIZING THAT IT'S NOT A CLEAR, BRIGHT-LINE RULE, THE

4   FACT OF THE MATTER IS THERE IS NO CLEAR, BRIGHT-LINE RULE

5   THAT OVERHEAD IS AUTOMATICALLY IGNORED IN THE CONTEXT OF A

6   FINDING OF WILLFUL INFRINGEMENT.

7           THE COURT:  ALL RIGHT.

8           MR. ROTH:  SO, I MEAN, WE -- WE WOULD, YOU KNOW --

9

10          THE COURT:  VERY WELL.

11          MR. ROTH:  FOR INSTANCE, IN THE SHELDON CASE,

12  WHICH IS THE SEMINAL CASE IN THIS CONTEXT, GENERAL OVERHEAD

13  WAS PERMITTED IN THE -- IT WAS INDICATED IN THAT CONTEXT,

14  THAT GENERAL OVERHEAD WOULD BE PERMITTED, EVEN THE FINDING

15  OF WILLFUL INFRINGEMENT.

16          THE COURT:  I SEE IT.  ALL RIGHT.  I'LL TAKE A

17  LOOK AT THAT, COUNSEL.

18          MR. ROTH:  SO -- OKAY.

19          MR. KENNEDY IS GOING TALK ABOUT PUNITIVE DAMAGES.

20  I THINK THAT THERE WERE --

21          THE COURT:  WHY DON'T YOU RESPOND TO MR. PROCTOR'S

22  ARGUMENTS ON MITIGATION.

23          MR. ROTH:  I -- I DON'T DISAGREE WITH HIS -- I

24  THINK, AGAIN, I DON'T DISAGREE WITH HIS VIEW THAT --

25          THE COURT:  THAT IT COMES OUT.

1              MR. ROTH:  YEAH.

2              THE COURT:  I WILL ALSO MODIFY THE LANGUAGE ON THE

3    PREPONDERANCE OF THE EVIDENCE INSTRUCTION BECAUSE NOW

4    THERE'S NO AFFIRMATIVE DEFENSE LEFT, SO I WILL JUST TALK

5    ABOUT CLAIMS.

6              MR. ROTH:  THEN, IN TERMS OF THEIR SUPPLEMENTAL

7    PROPOSED INSTRUCTIONS, THERE'S A COUPLE OF -- OF ISSUES.

8              THE COURT:  GIVE ME ONE SECOND, COUNSEL.

9              MR. ROTH:  I'M SORRY.

10             THE COURT:  OKAY.  VERY GOOD.

11             SUPPLEMENTAL INSTRUCTIONS.  I HAVE COMPETITOR

12   PRODUCTS, MULTIPLE CLAIMS, OTHER INVESTIGATIONS, AND --

13             MR. ROTH:  INJUNCTIVE RELIEF.

14             THE COURT:  YEAH.  AND THERE'S ONE MORE.  AND

15   INJUNCTIVE RELIEF.

16             MR. ROTH:  YEAH.  I CAN DEAL WITH A FEW OF THESE,

17   YOUR HONOR.

18             WITH RESPECT TO THE DUPLICATIVE DAMAGES, THE

19   PROB -- IT SORT OF DEPENDS ON -- ON WHERE WE END UP WITH THE

20   VERDICT FORM.  THE VERDICT FORM THAT MATTEL IS -- IS

21   SUGGESTING, I THINK, WOULD -- WOULD BASICALLY PRECLUDE YOUR

22   HONOR FROM BEING ABLE TO MAKE THE KIND OF ADJUSTMENTS THAT

23   MATTEL IS SUGGESTING BE MADE AFTER A VERDICT.

24             IF -- THERE WELL COULD BE -- WHAT IT SIMPLY ASKS

25   FOR ARE DAMAGES ASSOCIATED WITH EACH OF THE CLAIMS.  AND

                                                        7940

1    THERE -- I DON'T KNOW HOW, IF YOU WERE TO ACCEPT THAT

2    VERDICT FORM, YOU WOULD HAVE A -- A BASIS TO -- TO DECIDE

3    WHETHER DAMAGES WERE DUPLICATIVE OR NOT.

4            I MEAN, IT IS CERTAINLY CONCEIVABLE THAT THERE

5    COULD BE NUMBERS ASSOCIATED WITH THE STATE LAW CLAIMS THAT

6    ARE DIFFERENT THAN THE COPYRIGHT CLAIM, AND UNLESS WE KNOW

7    WHAT THE BASIS FOR THAT IS, UNLESS WE -- UNLESS WE HAVE SOME

8    INDICATION THAT THERE'S AN UNDERSTANDING ON THE PART OF THE

9    JURY THAT THERE --

10           THE COURT:  I DEFINITELY AGREE WITH YOU, MR. ROTH.

11   THERE IS A CONNECTION BETWEEN THIS INSTRUCTION AND THE

12   EXTENT TO WHICH THE -- THE JURY FORM PERMITS THE JURY TO

13   SPELL OUT THOSE MULTIPLE DAMAGES.

14           MR. ROTH:  SO I THINK -- I THINK THAT IF WE CAN

15   WORK OUT THE -- THE VERDICT FORM THAT WE MAY NOT HAVE SO

16   MUCH OF A PROBLEM WITH THE INSTRUCTION.

17           THE COURT:  VERY GOOD.

18           MR. ROTH:  WITH RESPECT TO THE INJUNCTION --

19           THE COURT:  IT HAS COME UP, PARTICULARLY WITH

20   THE -- THE EXPERTS ON THE DAMAGES ASKING THEORETICALLY WHAT

21   HAPPENS IF THE COURT DOES SOMETHING OR THE COURT DOESN'T DO

22   SOMETHING.  I REALLY DON'T WANT THE JURY THINKING ABOUT THAT

23   WHEN THEY DECIDE ON DAMAGES, WHETHER THE COPYRIGHT'S GOING

24   TO BE WITH MATTEL OR MGA OR WHAT HAVE YOU.

25           MR. ROTH:  YOUR HONOR -- AND THIS REVISITS A

                                                        7941

1    DISCUSSION THAT WE HAD -- WE HAD A COUPLE WEEKS BACK --

2    THE -- THE FACT OF THE MATTER IS THAT -- THAT -- THAT MATTEL

3    HAS PROFFERED A DAMAGE THEORY WHICH IS PREMISED UPON FUTURE

4    EVENTS.   THEY -- THEY HAVE SUGGESTED TO THE JURY A SET OF

5    CIRCUMSTANCES THAT THEY BELIEVE WILL INURE IN THE FUTURE.

6              THEY HAVE ALSO SUGGESTED IN -- IN THEIR OPENING

7    STATEMENT THAT THEY BELIEVE THAT MGA SHOULD HAVE NO PROFITS

8    ASSOCIATED WITH BRATZ.

9              HAVING -- HAVING DONE THAT, HAVING -- HAVING

10   PROFFERED A THEORY, A DAMAGE THEORY BASED UPON WHAT THEY

11   BELIEVE WILL HAPPEN IN THE FUTURE, GIVEN THEIR ASSUMPTIONS

12   ABOUT THE FUTURE, WE BELIEVE THAT WE ARE PERMITTED TO -- TO

13   SUGGEST THAT THERE IS A POTENTIAL LIKELIHOOD OF A DIFFERENT

14   SET OF CIRCUMSTANCES WHICH RENDERS --

15             THE COURT:  HOW WOULD THE JURY WEIGH THAT?  I

16   MEAN, THIS IS -- THIS IS CONTINGENT UPON WHAT THE COURT DOES

17   AFTER IT'S CONSIDERED EQUITABLE DEFENSES, AFTER IT'S

18   CONSIDERED A VARIETY OF THINGS THAT ARE NOT BEFORE THIS

19   JURY, COULD NOT BE BEFORE THIS JURY.

20             MR. ROTH:  THE JURY --

21             THE COURT:  HOW WOULD THE JURY INTELLIGENTLY GO

22   ABOUT FACTORING THAT IN?

23             MR. ROTH:  WELL, THE JURY -- THE WAY WE BELIEVE IT

24   SHOULD BE FACTORED IN IS TO THE EXTENT TO WHICH THE DAMAGE

25   THEORY IS SUFFICIENTLY CERTAIN OR NOT.  THE DAMAGE THEORY

7942

```
 1   THAT THEY PROFFERED BASED UPON FUTURE EVENTS SUGGESTS

 2   THAT -- THAT IT IS NOT SPECULATIVE THAT THERE WILL BE A

 3   CERTAIN STREAM OF PROFITS INTO THE FUTURE.

 4             HAVING INTERJECTED THAT INTO THE CASE AND HAVING

 5   SUGGESTED -- HAVING TOLD THE JURY THAT THERE SHOULD BE NO

 6   FUTURE PROFITS, THEY'VE NOW BASICALLY OPENED THE DOOR TO

 7   A -- A -- YOU KNOW, FACTS WHICH SUGGEST THAT THAT IS NOT

 8   NECESSARILY GOING TO BE THE CASE.

 9             THE COURT:  ALL RIGHT.  I UNDERSTAND YOUR

10   ARGUMENT.  I'LL HEAR FROM MATTEL ON THIS.

11             IS THERE ANYTHING ELSE, COUNSEL?

12             MR. NOLAN:   YOUR HONOR, I'M -- I'M SORRY, I JUST

13   -- MAY I GO BACK TO THE MITIGATION INSTRUCTION?  I JUST WANT

14   TO TAKE --

15             THE COURT:  IS IT BACK IN?

16             MR. NOLAN:  I RESPECTFULLY WOULD SUBMIT IT SHOULD

17   BE UNDER THE FOLLOWING NOTION.

18             YOUR HONOR, I THINK THERE IS EVIDENCE IN THIS

19   CASE, AND I'VE ALWAYS BEEN FOCUSED ON THE NAME BRATZ AND THE

20   USE OF THE NAME BRATZ.  AND OUR ARGUMENT WOULD BE TO COMBINE

21   A COUPLE OF EVENTS THAT THEY'VE INTRODUCED INTO THE RECORD,

22   AND SO HAVE WE.  AND THAT IS THAT, ONCE THEY SAW THE NAME

23   BRATZ WAS BEING USED, REGARDLESS OF WHETHER OR NOT IT GAVE

24   THEM NOTICE THAT THE DRAWINGS WERE DONE WHILE AT MATTEL, IT

25   GAVE NOTICE THAT A TERM THAT THEY CONTEND TO BE CONFIDENTIAL
```

7943

```
 1    AND PROPRIETARY TO MATTEL, THAT IS, THE NAME "BRATZ" TIED TO
 2    A FASHION DOLL, THAT THEY COULD HAVE, MUCH LIKE THEY SENT A
 3    CEASE-AND-DESIST LETTER WITH RESPECT TO THE USE OF CERTAIN
 4    PROPRIETARY DATA ON THE WEBSITE, THE FAN WEBSITE, THE YAHOO
 5    WEBSITE --
 6              THE COURT:  WHAT DOES -- WHAT DOES THE EVIDENCE
 7    SHOW IN TERMS OF WHEN MATTEL KNEW THAT BRATZ WAS THEIR
 8    PROPRIETARY INFORMATION?
 9              MR. NOLAN:   YOUR HONOR, THEY CONTEND THAT THEY
10    KNEW THAT BRATZ WAS BEING CONSIDERED AS THE NAME FOR DIVA
11    STARZ.  THEY INTRODUCED INFORMATION -- THERE'S AN OUTSIDE
12    VENDER, LINKER, STEVE LINKER, WHO GAVE THEM A LIST FOR DOLL
13    NAMES.  AND ONE OF THEM WAS BRATZ.
14              AND THEIR ARGUMENT, IN PHASE 1-A, WAS THAT THAT
15    ALSO TIED IT TO THE 1999-2000 EMPLOYMENT TIME PERIOD.
16              AND SO, YOUR HONOR, THAT'S THE POINT.  AND WE
17    SOMETIMES BUILD A CAMEL ON THIS CASE BECAUSE WE -- YOU KNOW,
18    WE WERE WORKING ON THE COPYRIGHT OVER THE WEEKEND.  I DIDN'T
19    GET A CHANCE TO TALK TO MR. ROTH THIS MORNING.  BUT I
20    CLEARLY THINK THAT THAT WOULD GO INTO MITIGATION --
21    MEDIATION -- I'M SORRY -- MITIGATION, BECAUSE IT'S
22    INTERESTING WHAT WE DID.
23              THERE IS ALSO EVIDENCE THAT MGA, WHEN ONE OF ITS
24    EMPLOYEES LEFT AND WE HAD REASON TO SUSPECT THAT THEY WERE
25    USING PROPRIETARY INFORMATION, MATTEL INTRODUCED A LETTER
                                                         7944
```

1   FROM MGA TO THAT EMPLOYEE MAKING CLAIMS AND ASKING HIM TO

2   CEASE AND DESIST USING PROPRIETARY INFORMATION.

3           ONCE THEY SAW IT AT THE NEW YORK TOY FAIR OR THE

4   HONG KONG TOY FAIR AND THEY TOOK THE PHOTOGRAPHS AND THE

5   PICTURES WERE THERE, WE THINK THAT'S WHEN THE MITIGATION

6   COULD HAVE STARTED.  THEY COULD HAVE SIMPLY SAID -- SENT A

7   LETTER TO US ON THE CEASE-AND-DESIST NATURE, OR EXPLORING IT

8   WITH CARTER BRYANT OR EVEN WRITING A LETTER TO CARTER BRYANT

9   SAYING, "AS A FORMER EMPLOYEE, WE NOW REALIZE THAT YOU'RE

10  AFFILIATED WITH BRATZ."  THAT GOES DIRECTLY TO MITIGATION.

11          NOT ON THE DRAWINGS.  I'M NOT TRYING TO REARGUE

12  STATUTE OF LIMITATIONS, RESPECTFULLY, YOUR HONOR.

13          THE COURT:  I UNDERSTAND.

14          MR. NOLAN:  THIS BRATZ NAME IS A REAL CRITICAL

15  ISSUE, AND THEY GET SOME BENEFIT FROM IT.  BUT I ALSO THINK,

16  BY PUTTING THAT INTO THE MIX, THEY ALSO GET SOME DOWNSIDE

17  POTENTIAL WITH THIS JURY.  THEY SHOULD HAVE KNOWN.

18          THE COURT:  OKAY.  ALL RIGHT.  THAT'S ALL I --

19          OH, NO.  MR. KENNEDY.  I'M SORRY.  PUNITIVE --

20  PUNITIVE DAMAGES.

21          MR. KENNEDY:  YOUR HONOR, I APPRECIATE THE COURT

22  LETTING US DIVIDE IT UP THIS WAY.

23          THE PUNITIVE DAMAGE INSTRUCTION STARTS AT PAGE 49.

24

25          THE COURT:  I'M THERE.

                                                      7945

1      MR. KENNEDY:  MY COMMENTS ARE RESTRICTED SOLELY TO

2 PAGE 51, STARTING AT LINE 3, WITH SECTION A.  AND MY PLEA IS

3 THAT SECTION A BE GIVEN THE WAY IT APPEARS IN CACI.

4      AS YOUR HONOR WILL RECALL, THERE ARE FIVE FACTORS

5 UNDER A THAT APPEAR IN CACI, AS IT WAS DRAFTED.  AND MATTEL

6 HAS SIMPLY TAKEN OUT THREE OF THOSE.

7      THE FIRST THREE, AS YOUR HONOR MAY RECALL, ARE

8 WHETHER THE CONDUCT CAUSED PHYSICAL HARM, WHETHER THE

9 DEFENDANT DISREGARDED THE HEALTH AND SAFETY OF OTHERS, AND

10 WHETHER THE PLAINTIFF WAS EMOTIONALLY OR ECONOMICALLY

11 VULNERABLE.

12      AND MATTEL HAS SAID, "WELL, THIS ISN'T A CASE

13 INVOLVING PERSONAL INJURY OR WRONGFUL DEATH, SO WHAT'S THAT

14 HAVE TO DO WITH THE MIX?"

15      I BELIEVE THIS HAS ALL BEEN BRIEFED BEFORE, SO I

16 WILL NOT BE OFFENDED IF YOUR HONOR SAYS, "I KNOW ALL THAT,

17 MR. KENNEDY," BUT THOSE FIVE FACTORS ARE LIFTED ALMOST

18 VERBATIM OUT OF CAMPBELL VS. STATE FARM, WHICH WAS NOT A

19 PERSONAL INJURY OR WRONGFUL DEATH CASE.

20      AND IT'S AT PAGE 418 WHERE THE COURT SAYS,

21 "REPREHENSIBILITY IS THE SOLE MOST IMPORTANT FACTOR IN

22 AWARDING PUNITIVE DAMAGES."  AND THEN SAYS, "HERE ARE THE

23 FIVE FACTORS THAT COURTS SHOULD CONSIDER IN DETERMINING

24 REPREHENSIBILITY."

25      NOW, IF THINGS HAD STOPPED THERE, I COULD SEE YOUR

7946

1    HONOR SAYING, "WELL, THIS IS FOR ME TO USE IN REVIEWING

2    AFTER THE VERDICT."

3           THE COURT:  NO, NO.  WE'RE ASKING THE JURY TO DO

4    THIS.  BUT WHAT THE COURT SEEMED TO BE DOING IN THAT CASE IS

5    SETTING FORTH A COMPREHENSIVE LIST OF THE FACTORS THAT ARE

6    CONSIDERED.

7           THERE ARE MANY INSTANCES WHERE JURY INSTRUCTIONS

8    ARE FASHIONED IN SUCH A WAY THAT THEY WILL HAVE

9    COMPREHENSIVE LIST, AND THEN IT IS UP TO THE COURT TO ONLY

10   INSTRUCT ON THOSE FACTORS WHICH ARE RELEVANT, OR ONCE THERE

11   IS CONCEIVABLY EVIDENCE IN -- IN THIS -- IN A PARTICULAR

12   CASE.

13          I MEAN, THE DANGER, I THINK, OF LISTING ALL OF

14   THESE FACTORS IS SUGGESTING THAT BECAUSE THERE'S NOT

15   PHYSICAL HARM, THEREFORE THERE SHOULD BE NO PUNITIVE

16   DAMAGES.  BECAUSE THERE IS NO HEALTH AND SAFETY PROBLEM,

17   THERE SHOULD NOT BE PUNITIVE DAMAGES.  BECAUSE THERE'S NO

18   PARTICULARLY VULNERABLE -- EMOTIONALLY VULNERABLE PLAINTIFF,

19   THERE SHOULD BE NO PUNITIVE DAMAGE.  BUT THAT'S -- THERE --

20   THERE -- IN THE NATURE OF THIS CASE, THERE -- THERE COULDN'T

21   OR WOULDN'T BE.

22          MR. KENNEDY:  AND THAT'S WHY THIS LANGUAGE IS SO

23   CRUCIAL IN THIS CASE IN THAT MR. LARIAN'S REPREHENSIBILITY

24   NEEDS TO BE JUDGED ON THE TOTAL CONTINUUM OF WHAT'S INVOLVED

25   AND --

1          THE COURT:  I AGREE OF WHAT'S INVOLVED, BUT THAT'S

2    NOT INVOLVED HERE.

3          MR. KENNEDY:  NO, OF WHAT'S INVOLVED IN TERMS OF

4    WHAT IS REPREHENSIBLE.

5          AND I THINK, AT A MINIMUM, WE'RE CERTAINLY

6    ENTITLED TO ARGUE THE THINGS THAT DIDN'T HAPPEN IN THIS CASE

7    IN TERMS OF WHAT WOULD MATTEL BE SEEKING IN PUNITIVE DAMAGES

8    IF --

9          THE COURT:  HOW ABOUT LIKE IN A CRIMINAL CASE?

10   THIS AFTERNOON I HAVE A SENTENCING.  SOMEBODY'S STANDING UP

11   AND SAYING, "OKAY, WELL LET ME LIST ALL THE THINGS THAT THIS

12   DEFENDANT DIDN'T DO.  HE DIDN'T MURDER SOMEBODY.  HE DIDN'T

13   ROB THE BANK ACROSS THE STREET.  HE DIDN'T ROB THE LIQUOR

14   STORE DOWN THE STREET.  HE JUST ROBBED THE BANK IN

15   QUESTION."

16         MR. KENNEDY:  OKAY.

17         THE COURT:  CERTAINLY, WHEN YOU TALK ABOUT

18   SENTENCING FACTORS, THE COURT CAN CONSIDER NOT ONLY THE

19   RELEVANT CONDUCT BUT ANY OTHER FACTORS THAT BEAR ON THE

20   DEFENDANT'S CULPABILITY.  BUT TO LIST OUT THINGS AND THEN TO

21   ARGUE THINGS THAT A DEFENDANT DID NOT DO SEEMS TO BE NOT

22   ONLY IRRELEVANT BUT POTENTIALLY PREJUDICIAL.

23         MR. KENNEDY:  JUST THE OPPOSITE, YOUR HONOR.  THAT

24   THIS IS NOT JUST A LIST OF THE BANKS JOHN DILLINGER DIDN'T

25   ROB THIS IS WHERE, IN THE ORDER OF WRONGDOING -- WHERE IN

                                                          7948

```
 1   THE OVERALL PATTERN OF REPREHENSIBILITY, DOES MR. LARIAN'S

 2   CONDUCT FALL?

 3           AND AS WE KNOW, THE SUPREME COURT HAS TOLD US IN

 4   RECENT TIMES THAT, WHEN YOU'RE DEALING WITH ECONOMIC HARM

 5   ONLY, NOBODY GOT HURT OR KILLED, A ONE-TO-ONE RATIO MAY BE

 6   THE OUTERMOST LIMITS, AND THAT CLEARLY ECONOMIC HARM ONLY IS

 7   LESS REPREHENSIBLE THAN PHYSICAL HARM AND DAMAGE.

 8           THE SUPREME COURT HAS SAID THAT.  AND MORE

 9   IMPORTANTLY, CALIFORNIA HAS SAID JURIES SHOULD BE TOLD THAT.

10   THERE ARE NO DIRECTIONS FOR USE THAT SAY YOU USE ONLY SOME

11   OF THE FACTORS IN SOME CASES AND NOT IN OTHERS.

12           THE COURT:  WHAT IS -- WHAT IS YOUR BEST CASE ON

13   THAT POINT THAT JURIES SHOULD BE TOLD ABOUT PHYSICAL HARM OR

14   EMOTIONAL DISTRESS OR ANY OF THESE OTHER FACTORS?  WHAT'S

15   YOUR BEST AUTHORITY?

16           THE WITNESS:  I DON'T BELIEVE THERE IS A CASE ONE

17   WAY OR ANOTHER.  MY BEST --

18           THE COURT:  THEN I MISUNDERSTOOD YOU.  I THOUGHT

19   YOU JUST TOLD ME THAT THERE ARE CALIFORNIA CASES THAT SAY

20   THAT JURORS MUST BE TOLD THIS.

21           MR. KENNEDY:  NO, I SAID, CACI, THE JURY

22   INSTRUCTION HAS TOLD US, AND THERE'S --

23           THE COURT:  I -- I UNDERSTAND WHAT CACI DOES.  I

24   KEEP -- I KEEP PRONOUNCING IT CACI, AND I'VE GOT TO

25   APOLOGIZE.  I DO THAT BECAUSE, WHEN I WAS IN THE
```

```
 1   O.C. ATTORNEY'S OFFICE, I PROSECUTED VINCENT DOMINIC CACI,

 2   C-A-C-I.  IT WAS ONE OF THE LARGER LCN FIGURES THAT I -- I

 3   PROSECUTED.  AND I'VE ALWAYS PRONOUNCED CACI "CACI."  SO I

 4   APOLOGIZE.

 5           MR. KENNEDY:  ACTUALLY, AS I UNDERSTAND IT, YOUR

 6   HONOR, IT'S A NORTH AND SOUTH OF TEHACHAPI'S RULE.  I THINK

 7   MOST PEOPLE IN SOUTHERN CALIFORNIA -- I'M THE ONE THAT'S

 8   GIVING IT THE NORTHERN CALIFORNIA PRONUNCIATION.

 9           THE COURT:  FAIR ENOUGH.

10           MR. KENNEDY:  FALL BACK, YOUR HONOR.  AT A

11   MINIMUM, IF YOU'RE NOT GOING TO GIVE THE FIRST THREE, I'D

12   URGE THAT THE LAST TWO SHOULDN'T BE GIVEN EITHER BECAUSE THE

13   COURT IS THEN SUGGESTING --

14           THE COURT:  I SEE.

15           MR. KENNEDY:  -- THAT THOSE TWO SOMEHOW ARE

16   RELEVANT, AND YOU THINK THEY ARE A PART OF THIS CASE.

17           SO IF WE'RE GOING TO GO WITHOUT SPECIFIC EXAMPLE,

18   CAN WE JUST MAKE IT HOW REPREHENSIBLE WAS IT?

19           THE COURT:  FAIR ENOUGH.  THANK YOU, COUNSEL.

20           MR. KENNEDY:  AND -- AND IF I COULD JUST -- I JUST

21   WANT TO MAKE SURE I DON'T STEP OVER THE LINE IN ARGUING --

22           THE COURT:  STEP OVER --

23           MR. KENNEDY:  -- BECAUSE MY PATTERN -- PUNITIVE

24   DAMAGE ARGUMENT, I REPRESENT PEOPLE GENERALLY WHO'VE DONE

25   ECONOMIC THINGS AND DO TALK ABOUT THE THINGS THAT DIDN'T
```

1    HAPPEN IN THIS CASE.

2              NOW, MAYBE IT WON'T BE FOUND PERSUASIVE, BUT I

3    WANT TO MAKE SURE IT ISN'T FOUND TO BE IN CONTEMPT OR A

4    VIOLATION OF A COURT ORDER.

5              THE COURT:  I'M SORRY?

6              MR. KENNEDY:  I WANT TO MAKE SURE, IF I GET UP AND

7    SAY, IN EVALUATING MR. LARIAN'S REPREHENSIBILITY, IT'S

8    IMPORTANT TO THINK ABOUT WHAT REPREHENSIBILITY MEANS, IT'S

9    ALL THE WAY FROM RAPE AND MURDER AT ONE END TO JAYWALKING

10   AND NOT STEPPING TO THE REAR OF THE ELEVATOR IN ANOTHER.

11   AND WHERE DOES THIS FIT?

12             THE COURT:  YOU CAN -- YOU CAN MAKE THESE

13   ARGUMENTS.  THAT'S -- THAT' SOUNDS FAIR.

14             MR. KENNEDY:  OKAY.  WELL, I WOULD URGE, THEN, IF

15   WE'RE NOT GOING TO USE THE WHOLE LIST, WE DON'T USE ANY OF

16   THE LIST, AND JUST USE REPREHENSIBILITY, YOUR HONOR.

17             THE COURT:  VERY GOOD.  ALL RIGHT.

18             MR. KENNEDY:  THANK YOU VERY MUCH.

19             THE COURT:  THANK YOU, COUNSEL.

20             I WILL GIVE MATTEL A CHANCE TO REPLY NOW TO -- TO

21   ANY OF THESE OBJECTIONS THAT WERE MADE.  AND I DO WANT TO

22   BRIEFLY TAKE UP THE VERDICT FORM BEFORE WE RELEASE

23   MR. ZELLER.

24             MR. ZELLER:  THANK YOU, YOUR HONOR.

25             I WON'T GO THROUGH ALL OF THEM.  I THINK,

                                                    7951

```
 1    OBVIOUSLY, A NUMBER OF THESE ISSUES WE'VE DISCUSSED BEFORE.
 2    SO, CERTAINLY, AS I'M GOING THROUGH THIS LIST, IF THERE'S
 3    ANYTHING THAT IS OF CONCERN TO THE COURT, I'D BE HAPPY TO
 4    ADDRESS THAT --
 5              THE COURT:  VERY WELL.
 6              MR. ZELLER:  -- OBVIOUSLY, SPECIFICALLY.
 7              WITH RESPECT TO THE DERIVATIVE WORKS
 8    INSTRUCTION --
 9              THE COURT:  JUST -- JUST GIVE ME A PAGE NUMBER, IF
10    YOU WOULD.  HELP ME OUT.
11              MR. ZELLER:  UNFORTUNATELY, I HAVE THE SAME
12    PROBLEM THAT MR. NOLAN HAD, WHICH IS THAT MY NUMBERS --
13    PAGE 24.
14              THE COURT:  THANK YOU.
15              ALL RIGHT.  I'M THERE.
16              MR. ZELLER:  AND WHAT MGA WAS PROPOSING IS IS
17    THAT, BASICALLY, ADDITIONAL LANGUAGE BE BUILT IN TO
18    BASICALLY TALK ABOUT THE INFRINGEMENT TEST.  AND I -- I
19    THINK THAT CONFUSES THE MATTER.  THIS IS JUST A DEFINITION
20    OF WHAT IT IS.
21              OBVIOUSLY, THERE IS A SUBSTANTIAL SIMILARITY
22    INSTRUCTION.  I MEAN, TO THE EXTENT THAT ANYTHING IS SAID
23    ALONG THOSE LINES, I THINK IT LOGICALLY GOES INTO
24    SUBSTANTIAL SIMILARITY, NOT -- NOT THIS, BECAUSE THEN IT'S
25    JUST SIMPLY CONFUSING THE TWO DIFFERENT CONCEPTS OF WHAT I
```

1    THINK THAT INSTRUCTION IS.

2            THE COURT:  SO, AT A MINIMUM, YOU AGREE WITH

3    MR. NOLAN'S SUGGESTION THAT WE SHOULD ADD SOMETHING TO THE

4    EFFECT THAT, IF EACH OF THE NEW WORKS ARE SUBSTANTIALLY

5    SIMILAR TO THE WORKS CREATED BY CARTER BRYANT.

6            MR. ZELLER:  WELL, I -- I DON'T HAVE AN ISSUE,

7    THEORETICALLY, IN BUILDING IN TO THE SUBSTANTIAL SIMILARITY

8    INSTRUCTION, SAYING THAT THIS IS A TEST THAT HAS TO BE MET

9    FOR INFRINGEMENT OF ANY OF THE RIGHTS THAT ARE AT ISSUE IN

10   THIS CASE, ANY OF THE EXCLUSIVE COPYRIGHT RIGHTS THAT ARE AT

11   ISSUE IN THIS CASE, WHETHER IT'S REPRODUCTION, WHETHER IT IS

12   DERIVATIVE WORKS.

13           THE COURT:  AND THEY BASICALLY DO THAT.

14           MR. ZELLER:  YEAH.

15           THE COURT:  I MEAN, THAT THE CONCERN IS HERE WE'RE

16   TAKING ONE OF THOSE RIGHTS AND -- AND AMPLIFYING IT, WE'RE

17   GIVING IT A DEFINITION.  AND MR. NOLAN IS SUGGESTING THAT TO

18   THE EXTENT THAT WE DO THAT, THAT WE NEED TO MAKE SURE THAT

19   IT'S UNDERSTOOD THAT THAT RIGHT ONLY ARISES UNDER A FINDING

20   OF SUBSTANTIAL SIMILARITY.

21           MR. ZELLER:  WELL, THE RIGHT EXISTS INDEPENDENT OF

22   WHETHER IT'S SUBSTANTIALLY SIMILAR.  I MEAN -- BUT -- BUT

23   THIS IS A DEFINITIONAL ISSUE IF ONLY BECAUSE IT'S JUST NOT A

24   FAMILIAR TERM TO A JURY.  I MEAN, THAT -- THIS IS -- THIS NO

25   MORE EMPHASIZES THE DEFINITION OF DERIVATIVE WORKS THAN IT

                                                        7953

1    WOULD FOR ANY OTHER TERM THAT IS UNFAMILIAR TO THE JURY.

2    AND IT -- THE WORD NECESSARILY HAS TO BE -- HAS TO BE

3    AMPLIFIED.

4           I'M JUST CONCERNED THAT IF WE START CONFLATING THE

5    TWO CONCEPTS IN THE DEFINITIONAL INSTRUCTION, THAT THEN

6    IT'S -- IT MAY CREATE SOME CONFUSION OR AMBIGUITY WHEN

7    IT'S -- HOW IT INTERACTS WITH THE SUBSTANTIAL SIMILARITY

8    INSTRUCTION.

9           SO THAT'S WHY I WOULD SUGGEST THAT, TO THE EXTENT

10   THERE'S ANY CLARIFICATION NEEDED -- AND I'M NOT SUGGESTING

11   THAT THERE NECESSARILY IS -- BUT I'M -- I'M NOT -- BUT WHERE

12   I THINK IT WOULD LOGICALLY GO IS IN THE SUBSTANTIAL

13   SIMILARITY INSTRUCTION.  THAT -- THAT WOULD BE MY PITCH,

14   YOUR HONOR.

15          I -- I THINK -- I THINK TALKING ABOUT -- AND

16   PARTICULARLY BUILDING ALL THIS ADDITIONAL LANGUAGE IN THERE

17   ABOUT NEW WORKS AND EVERYTHING ELSE, I THINK THOSE CARRY

18   THAT CONFUSION OR THAT DANGER OF CONFUSION.

19          THE COURT:  I UNDERSTAND YOUR ARGUMENT.  THANK

20   YOU.

21          MR. ZELLER:  THE INVERSE RATIO INSTRUCTION, THE

22   COUNTERPROPOSAL, I, FRANKLY -- I JUST THINK IT'S TOO

23   VERBOSE, AND IT -- IT KIND OF PILES ONTO THE CONCEPT.  I

24   THINK THE -- THE INSTRUCTION THAT THE COURT HAS NOW IS -- IS

25   MUCH MORE STRAIGHTFORWARD AND -- AND -- AND MUCH CLEARER.

```
 1            THERE ARE A NUMBER OF POINTS THAT WERE MADE WITH
 2    RESPECT TO THE SUBSTANTIAL SIMILARITY INSTRUCTION.  AND,
 3    AGAIN, I DON'T PLAN ON COVERING ALL OF THEM, JUST PERHAPS A
 4    FEW.  BUT IF THE COURT HAS ANY QUESTIONS ON THIS.
 5            NUMBER ONE, I THINK BUILDING IN THIS IDEA ABOUT A
 6    SENTENCE TO THE EFFECT THAT STYLE, THE LOOK, AND THE
 7    ATTITUDE ARE NOT COPYRIGHTABLE, NUMBER ONE, I THINK THAT'S
 8    JUST WRONG.  I MEAN, PARTICULARLY WHEN YOU TALK ABOUT THE
 9    LOOK, THAT'S CLEARLY SOMETHING THAT COPYRIGHT PROTECTS.
10            THE COURT:  WELL, A PARTICULARIZED LOOK.
11            MR. ZELLER:  YES.
12            THE COURT:  NOT A GENERIC LOOK.
13            MR. ZELLER:  SURE.  BUT THAT -- THAT ISN'T THE
14    LANGUAGE THAT WAS BEING PROPOSED.
15            NUMBER TWO, THIS AGAIN GETS BACK EXACTLY TO THE
16    POINT OF WHY WE WERE CONCERNED ABOUT KIND OF THE MORE
17    GENERAL STATEMENTS ABOUT WHAT IS AND IS NOT PROTECTABLE.  IF
18    YOU'RE TALKING ABOUT, SAY, FOR EXAMPLE, SCENES-A-FAIRE,
19    BECAUSE THIS -- WITHOUT IT BEING DEFINED, IT JUST SIMPLY
20    LEAVES THE JURY TO SPECULATE.
21            AND -- AND I THINK THAT THAT'S -- THAT'S THE SAME
22    PROBLEM WHEN -- THE KIND OF LANGUAGE THAT MR. NOLAN IS
23    PREPARE -- YOU KNOW, PROPOSING CONCERNING, YOU KNOW, DON'T
24    INCLUDE ANYTHING THAT'S SORT OF A STOCK ELEMENT FOR FASHION
25    DOLLS.
```

```
 1            I MEAN, THIS -- THIS JUST LEAVES THE JURY TO
 2   SPECULATE ABOUT WHAT IS AND IS NOT PROTECTABLE.  AND I -- I
 3   THINK THE COURT'S INSTRUCTION, AS -- AS IT'S CURRENTLY
 4   ARTICULATED, GETS THAT ACROSS.
 5            I MEAN, TO THE EXTENT THAT WE START TRYING TO
 6   BUILD IN MORE GENERAL CONCEPTS, LEAVING IT AGAIN FOR THE
 7   JURY TO GUESS OR SPECULATE ABOUT WHAT SHOULD NOT BE
 8   PROTECTED.  I THINK THAT WHOLE PARAGRAPH JUST COMES OUT, AND
 9   THE COURT WOULD JUST INSTRUCT AND SAY, "HERE'S WHAT" --
10   "HERE'S WHAT IS PROTECTABLE."  THAT SEEMS FAR PREFERABLE
11   THAN INSTRUCTING THEM WHAT'S PROTECTABLE, THEN TELLING THEM
12   THAT THERE ARE ELEMENTS THAT ARE UNPROTECTABLE, BUT NOT
13   TELLING THEM WHAT THEY ARE EXACTLY.
14            AND I -- I THINK IT'S QUITE CLEAR.  AND CERTAINLY,
15   WHERE WE ARE IN THE TERMS OF THE -- THE CASE HERE IS IS THAT
16   THAT DETERMINATION IS TO BE MADE BY THE COURT.
17            AND -- AND LEAVING THE JURY TO SPECULATE ON IT --
18            THE COURT:  THE DETERMINATION OF WHAT IS
19   PROTECTABLE AND NOT PROTECTABLE IS TO BE MADE BY THE COURT.
20   I DO BELIEVE THAT THE JURY NEEDS TO BE INFORMED AS TO
21   BOTH --
22            MR. KENNEDY:  SURE.
23            THE COURT:  -- WHEN CONDUCTING THEIR INTRINSIC AND
24   EXTRINSIC ANALYSIS --
25            MR. ZELLER:  SURE.  AND -- AND THAT'S -- TO MY
```

```
 1   POINT IS THAT I THINK THE COURT'S INSTRUCTION, YOU KNOW,

 2   DOES -- DOES STRIKE THAT BALANCE.  BUT THEN, YOU KNOW, TO

 3   HAVE SORT OF THOSE MORE GENERAL ELEMENTS INCLUDED, I -- I

 4   THINK CREATES EXACTLY THE KIND OF RISK --

 5            THE COURT:  I -- I UNDERSTAND YOUR ARGUMENT,

 6   COUNSEL.

 7            MR. ZELLER:  THANK YOU.

 8            THE COURT:  WHAT ABOUT THE INTERMEDIATE

 9   PREPARATORY WORK INSTRUCTION?

10            MR. ZELLER:  WELL, I -- I THOUGHT THAT THE

11   CONCLUSION OF THAT DISCUSSION, I THOUGHT, ACTUALLY MADE IT

12   ALL THE CLEARER WHY IT NEEDS TO BE IN THERE.

13            I MEAN, THE -- THE FACT IS IS THAT WE STILL WOULD

14   BE ABLE TO OBTAIN INDIRECT PROFITS EVEN IF THE FINAL PRODUCT

15   ISN'T INFRINGING.  AND -- AND THE JURY WOULD BE ENTITLED

16   TO -- TO SO FIND.  SO I -- I MEAN, I -- I THOUGHT, ACTUALLY,

17   SORT OF THIS NOTION OF, YOU KNOW -- I MEAN, I GUESS, IF WE

18   START WITH THE PREMISE A DOLL IS A DOLL, THEN THINGS BECOME

19   A LOT EASIER.

20            BUT -- BUT I DON'T THINK THAT'S -- THAT'S WHERE

21   MGA ENDS UP.  AND I -- I -- I FRANKLY DIDN'T THINK THAT

22   THERE WAS MUCH OF A RATIONALE TO REALLY EXPLAIN WHY WE

23   WOULDN'T PUT THIS IN.

24            I MEAN, WE DO ALL -- WE -- WE HAVE EVIDENCE OF

25   INTERMEDIATE WORKS POTENTIAL, AT LEAST BY MGA'S ACCOUNT.
```

7957

```
 1    THE MARGARET LEAHY SCULPT WOULD BE AN EXAMPLE.  I MEAN, WE
 2    OBVIOUSLY SAW THAT PRESENTATION THAT WAS MADE OF HERE WAS --
 3    HERE WAS, YOU KNOW, 1136A, THE SCULPT THAT THE JURY FOUND IS
 4    OWNED BY MATTEL.
 5         THEN 1141, AND THEN ANOTHER ONE.  AND THEY WENT
 6    THROUGH THESE VARIATIONS.  AND --
 7         THE COURT:  WELL --
 8         MR. ZELLER:  -- YOU KNOW, SO I -- I THINK THERE IS
 9    EVIDENCE, AT LEAST JUST EVEN THERE, AS TO WHY IT GOES IN.
10         THE COURT:  TURN TO DAMAGES, COUNSEL, AND ADDRESS
11    MR. ROTH'S POINT, FIRST THE LIMITATION REQUEST ON AIDING AND
12    ABETTING TO MR. BRYANT'S ACTUAL PROFITS AS TO OPPOSED TO THE
13    LARGER ISSUE OF PROFITS.
14         MR. ZELLER:  WELL, I -- I HONESTLY DON'T KNOW WHAT
15    THE AUTHORITY, THE LEGAL BASIS IS FOR THAT KIND OF ARGUMENT.
16    I MEAN, THE RESTATEMENT APPROACH, AND -- AND ADOPTED IN
17    MULTIPLE CASES, MAKES VERY CLEAR THAT AN AIDER AND ABETTOR
18    OF A BREACH OF FIDUCIARY DUTY IS LIABLE TO DISGORGE THE
19    BENEFITS THAT HE OR IT OBTAINS.  I MEAN, IT'S NOT LIMITED
20    JUST SIMPLY --
21         THE COURT:  NOT -- NOT JUST -- NOT JUST THE
22    BENEFITS THAT WERE OBTAINED BY THE PERSON THAT THEY ARE
23    AIDING AND ABETTING.
24         MR. ZELLER:  CORRECT.  EXACTLY.  AND SO IT'S THEIR
25    BENEFITS AS WELL.
```

7958

```
 1              AND THAT -- THAT IS MADE CRYSTAL CLEAR BY -- BY

 2    THAT AUTHORITY THAT I KNOW WE'VE -- WE'VE DISCUSSED IN THE

 3    PAST.

 4              THE COURT:  THIS ISSUE OF PREJUDGMENT INTEREST, I

 5    HAD MADE A NOTE TO MYSELF NEXT TO -- ABOUT IT EVEN BEFORE I

 6    HEARD MR. ROTH ABOUT THERE'S NO EVIDENCE OF PREJUDGMENT

 7    INTEREST IN THIS CASE, IF I RECALL CORRECTLY.

 8              MR. ZELLER:  I -- I CAN DOUBLE-CHECK, YOUR HONOR.

 9    MY MEMORY IS -- IS DIFFERENT.  I THOUGHT THAT IT HAD BEEN

10    PUT IN.  I KNOW WE CERTAINLY INTENDED TO.  BUT -- BUT I HAD

11    THOUGHT THAT IT CAME IN IN SOME FORM.  BUT -- BUT OBVIOUSLY

12    WE WOULD AGREE THAT, IF THERE'S NO EVIDENCE OF IT, THEN --

13    THEN IT'S NOT -- WOULDN'T BE APPROPRIATELY --

14              THE COURT:  SUBMIT THAT TO THE COURT.  I'D LIKE TO

15    SEE THE TRANSCRIPT ON THAT.  I JUST DON'T RECALL THAT --

16              MR. ZELLER:  YES.  WE -- WE WILL DO THAT,

17    YOUR HONOR.  WE'LL -- WE'LL GET YOU THE EXACT CITE FOR THAT.

18              THE COURT:  AND THE SAME WITH RESPECT TO TIME AND

19    MONEY SPENT BY MATTEL IN ATTEMPTING TO RECOVER THE PROPERTY.

20    I KNOW THERE'S SOME EVIDENCE OF -- THERE REALLY ISN'T MUCH

21    EVIDENCE AT ALL, IS THERE?

22              THE INTERPRETER:  YOU'RE TALKING ABOUT THE -- THE

23    CONVERSION MEASURE OF DAMAGES?

24              THE COURT:  YES.

25              MR. ZELLER:  YES.  WE WILL DO THAT AS WELL.  WE
```

7959

```
 1    WILL PROVIDE SPECIFIC CITATIONS TO EVIDENCE --

 2              THE COURT:  GET THOSE TO -- RIGHT.  RIGHT.

 3              IS THERE ANYTHING ELSE SPECIFICALLY YOU WANT TO

 4    ADDRESS?  I --

 5              MR. ZELLER:  I THINK THAT THE MAIN --

 6              THE COURT:  -- I UNDERSTAND YOUR ARGUMENTS AT

 7    LEAST WITH RESPECT TO THE REST.

 8              MR. ZELLER:  WELL --

 9              THE COURT:  AS TO THE MITIGATION, FAILURE TO

10    MITIGATE, MR. NOLAN'S ARGUMENT HERE.

11              MR. ZELLER:  YES.  THAT WAS ACTUALLY ONE THAT I --

12    I DID WANT TO ADDRESS.  AND -- AND THIS -- IT DOES CAUSE ME

13    SERIOUS CONCERN, PARTICULARLY GIVEN WHAT I ASSUME IS A

14    PROFFER AS TO HOW THIS WOULD BE PRESENTED TO THE JURY.

15              IT -- FIRST OF ALL, THE REASON WHY THE EVIDENCE

16    ABOUT THE NAME BRATZ BEING CONSIDERED AS PART OF DIVA STARZ

17    IN LATE 1999, EARLY 2000 WAS PUT INTO EVIDENCE WAS THE SAME

18    REASON WHY TOON TEENZ WAS PUT INTO EVIDENCE.  IT'S SOMETHING

19    THAT HELPS FRAME THE TIME WHEN CARTER BRYANT WAS WORKING ON

20    BRATZ.

21              IN OTHER WORDS, WHEN DID HE CREATE IT?  WHEN DID

22    HE CONCEIVE OF IT?  I MEAN, PART OF THE ARGUMENT WAS IT'S

23    OBVIOUSLY MORE THAN A COINCIDENCE THAT WE HAD THESE ELEMENTS

24    GOING ON WITHIN MATTEL PROJECTS THAT -- THAT THEN END UP

25    BEING INCORPORATED INTO, INSPIRED BY, WHATEVER ONE WANTS TO
```

1    USE THE TERMINOLOGY, BUT IT HELPS FRAME THE TIME PERIOD.

2              CARTER BRYANT DIDN'T CONCEIVE OF THE NAME BRATZ

3    FOR THIS PROJECT UNTIL SOMETIME AFTER HE OR OTHER PEOPLE HE

4    WAS WORKING WITH WERE EXPOSED TO THE NAME AS A POTENTIAL

5    NAME IN DIVA STARZ.

6              WE HAVE -- WE HAVE NOT SUED THEM, HOWEVER, FOR --

7    FOR MISAPPROPRIATION OF THE NAME OUT OF DIVA STARZ.  THAT'S

8    JUST NOT OUR CLAIM.  OUR CLAIM IS, IS THAT THERE WAS A

9    BUNDLE OF PROPRIETARY INFORMATION THAT CARTER BRYANT PUT

10   TOGETHER, WHICH IS THE BRATZ DOLL PROJECT, CONSISTING OF

11   DRAWINGS, CONSISTING OF THE NAME, CONSISTING OF CERTAIN

12   CHARACTERS, CONSISTING OF OTHER IDEAS AND THAT SORT OF

13   MATTER.

14             THE COURT:  YOU WOULD SUGGEST THIS WOULD BE

15   SIMILAR TO A MITIGATION ARGUMENT THAT SAYS BECAUSE YOU COULD

16   HAVE SUED ON AN INFRINGEMENT OF TOON TEENZ EARLIER AND YOU

17   DIDN'T DO THAT, YOU SHOULD BE BARRED FROM -- FROM PROFITS

18   THAT WERE OBTAINED AFTER THE DATE THAT YOU COULD HAVE SUED

19   ON TOON TEENZ?

20             MR. ZELLER:  RIGHT.  AND -- AND THIS IS AN

21   EXACT -- THIS IS JUST A RECASTING OF THAT EXACT ARGUMENT.

22   NOW IT'S JUST USING THE BRATZ NAME.

23             AND -- AND WHAT MR. NOLAN IS -- IS -- IS CLEARLY

24   SUGGESTING IN THE ARGUMENT -- ALTHOUGH, AGAIN, SORT OF

25   ASSUMING IT'S A PROFFER, BUT -- BUT HE'S -- WHILE

                                              7961

1    DISCLAIMING ANY IDEA THAT THIS BEARS ON STATUTE OF

2    LIMITATIONS OR LATCHES, THAT'S CLEARLY THE IMPLICATION OF

3    THIS POINT.  MATTEL COULD HAVE SUED EARLIER.

4          THE MITIGATION IS BASICALLY BEING PRESENTED AS,

5    WELL, YOU COULD HAVE SUED EARLIER.  YOU COULD HAVE SENT A

6    CEASE-AND-DESIST LETTER EARLIER AND, THEREFORE, WOULD HAVE

7    DISCOVERED THE WRONGDOING.

8          SO, I MEAN, THIS IS ACTUALLY OF TREMENDOUS CONCERN

9    BECAUSE IT IS GOING TO BASICALLY BE PUTTING IN FRONT OF THE

10   JURY A STATUTE OF LIMITATIONS/LATCHES TYPE DEFENSE.

11         MATTEL SHOULD HAVE ACTED MORE EXPEDITIOUSLY

12   WITHOUT REALLY ANY APPROPRIATE LEGAL STANDARDS BEING

13   ARTICULATED ALONG WITH IT.  AND TO THE CONTRARY, IS TRYING

14   TO SHOEHORN IT INTO THIS IDEA, THIS -- THIS INSTRUCTION

15   ABOUT MITIGATION.

16         I -- I THINK MR. ROTH WAS ABSOLUTELY RIGHT.  THERE

17   IS -- AND TO MR. -- MR. PROCTOR'S POINT, TOO, THERE IS JUST

18   SIMPLY NO EVIDENCE THAT -- THAT THERE IS MITIGATION THAT --

19   THAT COULD HAVE BEEN HAD IN THESE CIRCUMSTANCES.  AND THE

20   ONLY THING THAT WAS BEING ARTICULATED BY MR. NOLAN REALLY

21   JUST GOES BACK TO LATCHES AND STATUTE OF LIMITATIONS DELAY.

22   BUT BASICALLY, IT SUGGESTS TO THE JURY IT'S, WELL, MATTEL

23   SHOULD HAVE JUST ACTED MORE QUICKLY.

24         THE COURT:  WHAT ABOUT MR. KENNEDY'S POINT THAT IT

25   SHOULD BE ALL OR NOTHING ON THE FACTORS ON PUNITIVE DAMAGES?

1              MR. ZELLER:  WELL, YOU KNOW, WE -- WE DISCUSSED

2    THAT A LITTLE BIT THE LAST TIME.  AND I -- I WOULD JUST

3    SIMPLY ECHO WHAT THE COURT HAS SAID.  I MEAN, THIS IS --

4    THIS DOES GET INTO THE DANGER OF THEM JUST BASICALLY

5    SAYING -- TURNING THESE FACTORS INTO REQUIREMENTS.  I MEAN,

6    THAT'S REALLY THE BOTTOM LINE.  IT'S BASICALLY SAYING,

7    "WELL, IF I DIDN'T ENDANGER SOMEONE'S SAFETY, DON'T AWARD

8    PUNITIVE DAMAGES."

9              THE COURT:  YEAH.  BUT THEIR RESPONSE TO THAT IS,

10   NO, IT -- WELL, WHAT IT DOES, IT GIVES THE JURY A SENSE OF

11   HOW SERIOUS THE REPREHENSIBILITY NEEDS TO BE.  THESE ARE THE

12   TYPES OF THINGS THAT MAKE IT REPREHENSIBLE.  AND IT'S NOT

13   THAT WE ARE REQUIRING THAT IT WOULD BE PRESENT IN THIS CASE,

14   BUT JUST -- IT GIVES -- IT GIVES KIND OF PARAMETERS AS TO

15   WHAT IS REPREHENSIBLE.

16             MR. ZELLER:  I MEAN, I SUPPOSE THAT'S -- THAT'S A

17   THEORETICALLY SOUND KIND OF ARGUMENT THAT ONE WANTS TO MAKE.

18   BUT -- BUT YOU COULD DO THAT WITH A BUNCH OF OTHER

19   CONSTRUCTS TOO.  YOU COULD SAY, WELL, HE DIDN'T ACTUALLY

20   KILL SOMEBODY.  YOU KNOW, HE DIDN'T ACTUALLY, YOU KNOW,

21   STEAL FROM TEN OTHER COMPANIES, AT LEAST THAT WE KNOW OF.

22             I MEAN, ONE COULD SPIN OUT ANY NUMBER OF OTHER

23   COMPARATIVE KIND OF FACTORS AND -- AND ALWAYS SAY, "WELL,

24   WHAT I DID WASN'T AS BAD AS WHAT SOMEONE ELSE DID."

25             HONESTLY, I THINK THAT'S ACTUALLY DOES CREATE

                                                        7963

1    EXACTLY THE KIND OF PREJUDICE THAT -- THAT THE COURT WAS

2    ALLUDING TO IN -- IN ITS QUESTIONING OF MR. KENNEDY.  AND

3    I -- I THINK THAT THIS IDEA THAT YOU HAVE TO BE THE WORST --

4    THE WORST APPLE IN THE WHOLE BARREL BEFORE PUNITIVE DAMAGES

5    CAN BE AWARDED AGAINST YOU, I THINK, IS PREJUDICIAL, AND I

6    THINK IT'S WRONG.  I DON'T THINK THE LAW SUPPORTS THAT AT

7    ALL.

8             I MEAN, THE -- THE COURT OBVIOUSLY IS FAMILIAR

9    WITH THE OTHER -- THE EXPLICATION THAT'S GIVEN TO THE OTHER

10   FACTORS.  AND THEY -- AND THEY MAKE IT VERY CLEAR THAT YOU

11   DON'T HAVE TO BE THE WORST OF THE WORST TO HAVE PUNITIVE

12   DAMAGES IMPOSED.

13            I MEAN, IT'S UP TO, OBVIOUSLY, THE JUDGMENT OF THE

14   JURY AS TO WHETHER OR NOT THIS BALANCE OF -- YOU KNOW, OF

15   WHETHER THE KIND OF DEFINITION, THE PURPOSE OF PUNITIVE

16   DAMAGES IS SATISFIED.

17            SO I -- I ACTUALLY THINK THERE IS A TREMENDOUS

18   DANGER OF TURNING THESE INTO REQUIREMENTS AND HAVING THE

19   JURY SAY, "WELL, HE DIDN'T -- HE DIDN'T ENDANGER SOMEONE

20   AND, THEREFORE, JUST FOR THAT REASON ALONE, WE SHOULD NOT

21   AWARD PUNITIVE DAMAGES.

22            THE COURT:  VERY WELL.

23            MR. ZELLER:  THANK YOU.

24            THE COURT:  ALL RIGHT.  I AM GOING TO GIVE MGA A

25   CHANCE TO RESPOND.

7964

```
 1              MR. ZELLER, IF YOU FEEL THAT YOU NEED, AT THIS
 2   TIME, IT'S -- YOUR HEARING IS AT 1:30?
 3              MR. ZELLER:  YES, IT IS, YOUR HONOR.
 4              THE COURT:  YOU SHOULD BE ABLE TO MAKE IT IN AN
 5   HOUR AND A HALF.  I MEAN, THE COURT -- I HAVE MANY TIMES, AT
 6   THIS TIME OF DAY, LEFT RIVERSIDE AT 11:00 TO MAKE A 12:00,
 7   12:15 COURT MEETING.  AND I'VE NEVER NOT MADE IT.  SO I
 8   THINK -- I THINK YOU'RE GOING TO BE FINE.
 9              BUT IF YOU WISH TO LEAVE, I'LL LET YOU -- I DO
10   WANT TO GIVE MGA A CHANCE TO RESPOND.  AND THEN I'M GOING TO
11   TAKE UP THE ISSUE VERY BRIEFLY OF VERDICT FORMS.
12              BUT I JUST WANT TO HEAR INITIAL ARGUMENTS ON THAT.
13              WHAT I'M GOING TO DO IS RECONVENE LATER THIS
14   AFTERNOON, AFTER MY CRIMINAL CALENDAR, TO MAKE FINAL
15   DECISIONS ON THE VERDICT FORM, AND HOPEFULLY HAVE THE JURY
16   INSTRUCTIONS COMPLETED AT THAT TIME.
17              YOU'RE WELCOME TO RETURN FOR THAT.  BUT I KNOW
18   IT'S A -- HAVING DONE IT, I KNOW IT'S A LOT TO GO BACK AND
19   FORTH.  BUT THAT'S -- THAT'S UP TO YOU.
20              MR. ZELLER:  I'M HAPPY TO.
21              THE COURT:  ALL RIGHT.
22              MR. ZELLER:  WHAT I'LL DO -- WHAT I PROPOSE DOING,
23   IF IT'S OKAY WITH THE COURT, IS -- IS STAY A FEW MORE
24   MINUTES.  WE'LL SEE HOW MUCH WE HAVE LEFT, AND AT SOME POINT
25   I WILL -- I'LL HAVE TO GO.
```