```
 1              THE COURT:  FAIR ENOUGH.  AND -- AND JUST SO THAT
 2   YOU KNOW -- EVERYBODY KNOWS FOR THEIR PLANNING, I'M GOING TO
 3   SET THE CONTINGENT HEARING THIS AFTERNOON AT 4 O'CLOCK, BUT
 4   IT WILL ACTUALLY TAKE PLACE AS SOON AS I'M DONE WITH MY
 5   CRIMINAL CALENDAR.
 6              MR. NOLAN:  AND, YOUR HONOR, I'LL -- I'LL BE
 7   BRIEF.
 8              WITH RESPECT TO MR. ZELLER'S COMEBACK TO MY
 9   ARGUMENT ABOUT MITIGATION --
10              THE COURT:  YES.
11              MR. NOLAN:  -- RESPECTFULLY, I JUST DON'T THINK
12   THEY CAN HAVE IT BOTH WAYS.  THEY CANNOT FRAME THE ISSUE FOR
13   THE JURY ABOUT THE BRATZ NAME AND IT BEING PROPRIETARY FOR
14   PURPOSES OF THE CONVERSION CLAIM AND THE INTENTIONAL
15   INTERFERENCE CLAIM WITHOUT PUTTING ANY LIMITATIONS UNDER THE
16   STATE TORT CLAIMS AS TO WHAT THE PROPERTY WAS THAT THEY WERE
17   TAKING, WHICH WAS CONVERTED.
18              I MEAN, YOU'LL REMEMBER THAT JURY INSTRUCTION
19   NO. 29 TALKED ABOUT PROPRIETARY AND CONFIDENTIAL
20   INFORMATION, INCLUDING BRYANT'S DRAWINGS BUT NOT LIMITED TO
21   BRYANT'S DRAWING.
22              AND OUR ONLY POINT IS, YOUR HONOR, HAVING MADE THE
23   DEAL ABOUT THE NAME BRATZ, WE SHOULD BE ALLOWED TO ARGUE, IN
24   FACT, WHAT THE JURY -- WHAT MATTEL SHOULD HAVE DONE AND
25   COULD HAVE DONE WAS TO SEND A LETTER SIMILAR TO THE ONES
```

```
 1   THAT THEY SENT US IN FEBRUARY.
 2           AND I THINK, WHEN I WAS TALKING BEFORE, I -- I
 3   MENTIONED THE NAME OF A LETTER THAT THEY INTRODUCED.  IT'S A
 4   TRIAL EXHIBIT 10036, AND IT'S OUR CEASE-AND-DESIST LETTER TO
 5   ONE OF OUR FORMER EMPLOYEES, CAMMI GILMORE, WHERE WE WERE
 6   ENFORCING OR REMINDING HER OF HER DUTY TO REMAIN -- TO KEEP
 7   CONFIDENTIAL VARIOUS MATERIALS.
 8           SO THE BRATZ NAME, I JUST -- YOU KNOW, THEY CAN'T
 9   HAVE THEIR CAKE AND EAT IT TOO.
10           ONE -- ONE OTHER POINT, YOUR HONOR, IS THAT I DO
11   NOT BELIEVE THAT WE OBJECTED TO, AND I WANT TO FORMALLY
12   OBJECT TO THEIR SPECIAL INSTRUCTION COVERING OTHER
13   INVESTIGATIONS.
14           WE'RE NOT ARGUING THIS IN A COPYRIGHT SENSE.  THIS
15   IS THE ONE THAT TALKED ABOUT DIVA STARZ AND TOON TEENZ, AND
16   THAT THEY -- YOU KNOW, BASED ON THAT, THEY SHOULD HAVE KNOWN
17   THAT THERE WAS A COPYRIGHT VIOLATION.
18           WE'RE NOT ARGUING COPYRIGHT VIOLATION.  WE LOST
19   THAT ISSUE A LONG TIME AGO, YOUR HONOR.  BUT -- BUT THIS
20   GOES TO THOSE BUILDING BLOCKS THAT YOU TALKED ABOUT AT
21   SIDEBAR A COUPLE OF TIMES.
22           IN FACT, I THINK, ON THURSDAY, THAT YOU -- IT WAS
23   INTERESTING, AS A FORMER TRIAL LAWYER, YOU WERE ALSO MAKING
24   THE POINT THIS IS ONE OF THOSE CLASSICAL FACTUAL CASES THAT
25   WILL BE INTERESTING TO SEE HOW THE JURY BUILDS THOSE
```

```
 1   BUILDING BLOCKS.
 2           FOR MATTEL TO NOW SUGGEST THAT FOR NO PURPOSES
 3   SHOULD THEY CONSIDER ANY EVIDENCE OF SIMILARITIES BETWEEN
 4   THE BRATZ DOLLS AND THE TOON TEENZ OR DIVA STARZ PROJECTS AT
 5   MATTEL, ANY SUCH SIMILARITIES THAT ARE IRRELEVANT TO THE
 6   QUESTION OF WHEN MATTEL BECAME AWARE OF SUCH FACTS THAT
 7   EITHER DID OR COULD HAVE LED TO DISCOVERY THAT CARTER BRYANT
 8   CREATED BRATZ WORKS WHILE EMPLOYED BY MATTEL.
 9           THIS IS ON THEIR SPECIAL INSTRUCTION.
10           I THINK IT -- I THINK IT CONFUSES THE ISSUES
11   TERRIBLY WITH RESPECT TO CONCEALMENT, MY ARGUMENT WITH
12   RESPECT TO MITIGATION.  I DON'T -- I DON'T THINK THAT THE
13   JURY SHOULD BE TOLD --
14           THE COURT:  YOU'RE NOT GOING TO BE RELYING ON
15   EVIDENCE THAT THE COURT EXCLUDED.
16           MR. NOLAN:  NOT AT ALL, YOUR HONOR.
17           THE COURT:  ALL RIGHT.
18           MR. NOLAN:  AND THE EVIDENCE, AS I UNDERSTAND WHAT
19   THE COURT STRUCK WAS THE EVIDENCE MAKING THE SIMILARITIES
20   BETWEEN, YOU KNOW, THE CHARACTER ART THAT WAS ON THE BOARD.
21   BUT JILL NORDQUIST TESTIFIED AS TO HER EARLY KNOWLEDGE WHEN
22   SHE -- WHEN SHE FIRST LEARNED ABOUT IT AND WHAT SHE THOUGHT
23   WAS FAMILIAR, YOU KNOW, BIG HEAD, BIG FEET.  THAT WAS IT.
24           BUT WE'RE NOT GOING TO GO AT ALL TO THE
25   INFORMATION THAT WAS STRUCK.
```

```
 1              THE COURT:  ON -- ON DIVA STARZ.

 2              MR. NOLAN:  ON DIVA STARZ OR ANYTHING ELSE.

 3              THE COURT:  ALL RIGHT.

 4              MR. NOLAN:  BUT THIS INSTRUCTION WOULD JUST

 5    CONFUSE IT.

 6              THE COURT:  THAT ARGUMENT, IF MADE IN CLOSING

 7    ARGUMENT, WILL INVITE THAT INSTRUCTION IN THE MIDDLE OF

 8    CLOSING ARGUMENT.  SO JUST THAT YOU -- YOU'RE AWARE, I'M --

 9    I'M NOT PLANNING TO GIVE IT AS PART OF THE INSTRUCTIONS

10    RIGHT NOW.

11              MR. NOLAN:  OKAY.

12              THE COURT:  BUT UNDERSTAND THAT YOU COULD INVITE

13    THAT INSTRUCTION IF YOU MAKE THAT ARGUMENT.

14              MR. NOLAN:  IF I TRY TO MAKE THE ARGUMENT THAT

15    THEY WERE SUBSTANTIALLY SIMILAR TO BRATZ.

16              THE COURT:  WELL, YEAH.  I MEAN, IF YOU MAKE -- IF

17    YOU RELY ON THE EVIDENCE THAT THE COURT EXCLUDED AND

18    INSTRUCTED THE JURY ON, YOU WILL TRIGGER AN INSTRUCTION FROM

19    THE COURT.

20              MR. NOLAN:  CORRECT.  AND -- BUT THE EVIDENCE THAT

21    IS IN THE RECORD, OF COURSE, IS MS. NORDQUIST'S TESTIMONY

22    ABOUT WHAT --

23              THE COURT:  WHAT MS. NORDQUIST SAID, YOU CAN RELY

24    ON.

25              MR. NOLAN:  RIGHT.  THANK YOU.
```

```
 1        THE LAST POINT, YOUR HONOR, HAS TO DO WITH THE
 2   POINT THAT I RAISED, AND THAT WAS THE PROTECTABILITY OF -- I
 3   THINK I -- I REFERRED TO IT AS STYLE.  WE -- WE COULD CITE
 4   ADDITIONAL CASES, BUT, YOUR HONOR, I WOULD JUST SITE TO
 5   MATTEL, INC., VS. THE GOLDBERGER CASE.  WE COULD SUBMIT,
 6   BEFORE THE FOUR O'CLOCK HEARING, A COUPLE OF OTHER CASES ON
 7   THIS --
 8        THE COURT:  ON WHAT?  I'M SORRY.
 9        MR. NOLAN:  I'M SORRY.  ON OUR -- OUR OBJECTION TO
10   THE USE OF THE UNIQUE STYLE, A DISTINCT LOOK OR --
11        THE COURT:  RIGHT.
12        MR. NOLAN:  -- ATTITUDE.
13        AND WHAT I MIGHT DO, YOUR HONOR, WITH --
14        THE COURT:  I'LL TRY -- I'M VERY FAMILIAR WITH
15   THOSE CASES.  IN FACT, I -- I USED THOSE CASES IN TRYING TO
16   STYLE THE INSTRUCTION OR THE ELEMENTS AS I CAME UP WITH
17   THEM.  I'M -- I'M INCORPORATING THE -- THE DIRECTION FROM
18   THOSE CASES INTO THE WAY THAT I CHARACTERIZE STYLE, LOOK.
19        WHAT I'M RELUCTANT TO DO FOR EITHER SIDE IS SIMPLY
20   HAVE STYLE AND LOOK OUT THERE UNADORNED.  IT'S A
21   PARTICULARIZED EXPRESSION OF A STYLE THAT IS PROTECTABLE,
22   AND -- AND THAT IS WHAT I HAVE GONE TO SOME LENGTH TO TRY TO
23   EXPLAIN TO THE JURY IN THE CONTEXT OF THAT INSTRUCTION.
24        TO HAVE SOMETHING ELSE OUT THERE WHICH SAYS, YOU
25   KNOW, GENERIC STYLE OR JUST STYLE IS NOT PROTECTABLE, I -- I
```
                                                        7970

```
 1   THINK IS -- IS -- IS NOT PROPER AND -- AND VERY CONFUSING
 2   WHEN I JUST GOT DONE SAYING A PARTICULARIZED EXPRESSION OF A
 3   STYLE IS PROTECTABLE.  TO THEN TURN AROUND AND SAY STYLE IS
 4   NOT PROTECTABLE OR A LOOK IS NOT PROTECTABLE, THAT -- THAT
 5   LENDS TO CONFUSION.
 6          MR. NOLAN:  I UNDERSTAND.  I THINK WHAT WE'RE
 7   LOOKING AT IS WHERE YOU LOOKED AT AND YOU DESCRIBED IT AS A
 8   PARTICULARIZED LOOK.
 9          THE COURT:  EXPRESSION OF A -- OF A LOOK OR STYLE.
10          MR. NOLAN:  OF A -- RIGHT.  THEN THE OPPOSITE
11   WOULD BE, HOWEVER, A GENERAL LOOK OR ATTITUDE WOULD NOT BE
12   PROTECTABLE.  THAT'S THE BALANCING THAT WE WOULD LOOK TO,
13   YOUR HONOR.
14          THAT'S THE -- THAT'S THE POINT THAT WE WERE TRYING
15   TO MAKE ON THAT.  I THINK THEY COME UP A LOT IN THE
16   TRADEMARK TRADE DRESS CASES IN THAT REGARD.
17          THE COURT:  ALL RIGHT.  LET ME HEAR BRIEFLY ON
18   THE --
19          I'M SORRY, MR. ROTH?
20          MR. ROTH:  YES.  ONE NARROW POINT ON THE -- THE
21   AIDING AND ABETTING LIMITING DAMAGES TO --
22          THE COURT:  YES.
23          MR. ROTH:  -- MR. BRYANT'S PROFITS.
24          THE COURT:  I'M GOING TO TAKE A LOOK AT THESE
25   CASES IN TERMS OF WHETHER OR NOT IT'S TALKING ABOUT AIDING
```

```
 1   AND ABETTING -- WHETHER THE AIDER AND ABETTOR COULD BE HELD
 2   FOR ANY DAMAGES THAT -- THAT -- THAT HE -- OR ANY -- ANY
 3   PROFITS THAT HE OBTAINS, OR IS HE LIMITED TO THE PROFITS OF
 4   THE PERSON WITH WHOM HE DID THE AIDING AND ABETTING?  I KNOW
 5   THAT YOU TAKE THE LATTER POSITION.
 6         MR. ROTH:  YES.  AND JUST -- AND JUST TO ASSIST
 7   YOU IN THAT PROCESS --
 8         THE COURT:  PLEASE.
 9         MR. ROTH:  -- PEOPLE VS. BESTLINE, 61 CAL.APP 3D
10   879.
11         THE COURT:  ONE SECOND; 56 CAL.APP 3D?
12         MR. ROTH:  SORRY.  EXCUSE ME.  61 CAL.APP 3D.
13         THE COURT:  61 CAL.APP 3D.
14         MR. ROTH:  879 IS --
15         THE COURT:  879.
16         MR. ROTH:  -- 879 IS THE PAGE WHERE THE CASE
17   STARTS, PIN CITE 919.
18         AND THEN THE HIRSCH CASE, 107 CAL.APP 4TH 708, AND
19   THE PAGE 74 --
20         THE COURT:  CAL.APP 4TH -- WHAT WAS IT?
21         MR. ROTH:  CAL.APP 4TH 708.
22         THE COURT:  ALL RIGHT.
23         MR. ROTH:  AND THE PEN CITE IS 719.
24         AND I'D INVITE YOUR HONOR, ALTHOUGH I'M SURE
25   YOU'VE GOT PLENTY TO DO, TO ACTUALLY LOOK AT -- AT MATTEL'S
```

```
 1   AUTHORITIES.

 2            WHAT YOU'LL FIND THERE OVER AND OVER AGAIN IS THAT

 3   THE -- THAT THE DAMAGE ACTUALLY AWARDED IS THE -- THE

 4   PROFITS MADE BY THE FIDUCIARY, NOT THE AIDER AND ABETTOR.

 5            THE COURT:  ALL RIGHT.  ANYTHING ELSE, COUNSEL?

 6            MR. ROTH:  NO, THAT'S IT.  WOULD YOU LIKE MY

 7   COPIES OF -- OF THE TWO CASES THAT --

 8            THE COURT:  THAT WOULD BE GREAT.

 9            MR. ROTH:  GREAT.

10            THE COURT:  AND DOES MATTEL HAVE ANYTHING THAT

11   THEY COULD POINT TO ON THIS ISSUE?

12            THANK YOU, MR. PROCTOR.

13            MR. ROTH:  YOUR HONOR, YOU'LL -- YOU'LL EXCUSE MY

14   HIGHLIGHTING THE CASES.

15            MR. PROCTOR:  THIS ISSUE IS BRIEFED, YOUR HONOR,

16   IN THE JURY INSTRUCTIONS.  IT'S ON APPROXIMATELY -- STARTS

17   ON PAGE 135, APPROXIMATELY --

18            THE COURT:  RIGHT.  I -- I KNOW THE PARENTHETICALS

19   ARE THERE, BUT DO WE HAVE --

20            MR. PROCTOR:  THE -- THE CASES THAT I'D REFER THE

21   COURT TO ARE -- ASIDE FROM THE RESTATEMENT, WHICH IS

22   PLAINTIFF'S CAN BE -- I'D REFER THE COURT TO THE COUNTY OF

23   SAN BERNARDINO VS. WALSH CASE.

24            THE COURT:  RIGHT.

25            MR. PROCTOR:  158 CAL.APP 4TH --
```

```
1              THE COURT:  158 --

2              MR. PROCTOR:  -- CAL.APP 4TH 533 AT --

3              THE COURT:  THAT'S COUNTY OF SAN BERNARDINO?

4              MR. PROCTOR:  CORRECT, YEAH.

5              THE COURT:  OKAY.

6              MR. PROCTOR:  AND THAT'S AT ABOUT PAGES 540 TO

7     543.

8              AND THE HICKSON VS. GRAY CASE.

9              THE COURT:  NIXON?

10             MR. PROCTOR:  HICKSON, H-I-C-K-S-O-N, 91 CAL.APP

11    2D 684 AT 686.

12             THE COURT:  I'M SORRY AGAIN, COUNSEL?

13             MR. PROCTOR:  I APOLOGIZE.  91 CAL.APP 2D 684, AT

14    686 TO 87.

15             NIELSON ALSO SUPPORTS THE PROPOSITION.  THAT'S

16    290 --

17             THE COURT:  WELL, LET ME JUST TAKE YOUR TWO BEST,

18    COUNSEL.

19             MR. PROCTOR:  THE -- I MEAN, VERY BRIEFLY ON IT.

20    MGA CITES A VARIETY OF CASES IN ITS OBJECTIONS, AND THIS IS

21    LAID OUT IN THE PAPERS, A VARIETY OF CASES AWARDING THE

22    FIDUCIARY'S PROFITS AGAINST THE AIDER AND ABETTOR.  THOSE

23    CASES DON'T SAY YOU CAN'T GET THE AIDER AND ABETTOR'S

24    PROFITS, AND THE CASES WE'VE CITED SUPPORT THE PROPOSITION

25    THAT YOU CAN.
```

1           THE COURT:  I'LL TAKE A LOOK.  ALL RIGHT.

2           MR. KENNEDY.

3           MR. KENNEDY:  WITH THE COURT'S INDULGENCE, ON THE

4    PUNITIVE DAMAGES, I DIDN'T HAVE A CASE WHEN I WAS HERE

5    BEFORE, BUT THE RESEARCH FACTORY HAS BEEN IN OPERATION.

6    AGAIN, I HAVE A COPY FOR THE COURT.  IT'S GRASSILLI --

7    G-R-A -- AGAIN, SPELLED THE REGULAR WAY, G-R-A-S-S-I-L-L-I

8    VS. BARR, B-A-R-R.  IT'S AN ABUSE OF POWER BY THE CALIFORNIA

9    HIGHWAY PATROL.

10          AND THE COURT THERE SAYS THAT ABUSE OF AUTHORITY

11   BY A LAW ENFORCEMENT OFFICER IS REPREHENSIBLE.  HOWEVER,

12   IT'S THE DEGREE OF REPREHENSIBILITY, NOT ITS EXISTENCE IN AN

13   ABSOLUTE SENSE, THAT'S THE CRITICAL FACTOR, CITING CAMPBELL.

14   AND THEN GO ON TO POINT OUT THAT, ALTHOUGH THE MOTORIST WAS

15   HARASSED, HE WAS NEVER PHYSICALLY ASSAULTED, IMPRISONED, OR

16   OTHERWISE PHYSICALLY MISTREATED OR ABUSED.  THE HARM HE

17   SUFFERED WAS FAR LESS SERIOUS THAN SUFFERING BY DEFENDANTS

18   IN OTHER CIVIL RIGHTS CASES IN WHICH COURTS HAVE FOUND

19   AWARDS TO BE CONSTITUTIONALLY EXCESSIVE.

20          NOW, AGAIN, THIS IS A COURT REVIEWING A PUNITIVE

21   DAMAGE AWARD.  I DON'T WANT TO OVERSTATE THE HOLDING, BUT I

22   SUBMIT THAT, CONSISTENT WITH CACI, THE CALIFORNIA DRAFTERS

23   BELIEVE THE JURY OUGHT TO HAVE THAT CONTINUUM OF FACTORS

24   BEFORE THEM --

25          THE COURT:  THANK YOU, COUNSEL.

7975

```
 1                   MR. KENNEDY:  AND I CAN --

 2                   THE COURT:  VERY WELL.

 3                   MR. KENNEDY:  DOES THE COURT DESIRE THE CASE

 4      OR . . .

 5                   THE COURT:  THAT'S ALL RIGHT.  I GOT -- I GOT IT.

 6                   MR. KENNEDY:  THANK YOU.

 7                   THE COURT:  I DON'T NOW.  I THINK I'LL DECIDE ON

 8      HOW I WANT TO HANDLE THIS.

 9                   I'LL HEAR BRIEFLY ON THE VERDICT FORM ISSUE, JUST

10      NOT IN TERMS OF SPECIFICS -- I THINK I CAN HANDLE SPECIFIC

11      QUESTIONS -- BUT JUST MORE IN TERMS OF THIS OVERALL

12      FORMATTING POSITION.

13                   MR. ZELLER:  IF -- IF I COULD JUST ADDRESS VERY

14      BRIEFLY SO THAT MAYBE THE COURT'S EXPECTATIONS AREN'T --

15      AREN'T UPSET WHEN IF IT GETS TO THIS POINT ABOUT THE

16      ARGUMENT ABOUT DIVA STARZ, INCLUDING THE BIG HEAD, BIG FEET

17      KIND OF ASPECT.  BECAUSE THAT -- THAT WAS PART OF WHAT I WAS

18      ALLUDING TO EARLIER WHEN I WAS TALKING ABOUT, YOU KNOW, THAT

19      THERE WAS TESTIMONY ELICITED, YOU KNOW, ABOUT DIVA STARZ,

20      AND I THINK THERE MAY HAVE BEEN SOME OTHERS AS WELL.

21                   BUT -- BUT FUNDAMENTALLY, MY -- MY CONCERN IS THAT

22      WHAT MR. NOLAN IS SUGGESTING, WHICH IS TO TAKE THAT EVIDENCE

23      AND SAY, BECAUSE MATTEL COULD HAVE SENT A C. AND D. OR COULD

24      HAVE SUED ON THAT, THAT IS EXACTLY THE SAME PROBLEM THAT --

25      THAT HAS BEEN LITIGATED, YOU KNOW, EXTENSIVELY IN CONNECTION
```

1    WITH TOON TEENZ, WHICH IS THAT WOULD BE A DIFFERENT CLAIM.

2            AND I'M -- I'M VERY CONCERNED ABOUT THE PROSPECT

3    FOR JURY CONFUSION, IF THAT'S COMING OUT.  I MEAN, THE COURT

4    OBVIOUSLY FOREWARNED MR. NOLAN, THAT THERE WOULD BE AN

5    INSTRUCTION IF HE WERE TO RELY UPON THE STRUCK TESTIMONY.

6            HOWEVER, I STILL THINK THAT -- AND -- AND PART OF

7    WHAT I'D WANT TO DO IS SIMPLY MAKE SURE IS CLEAR IT UP, IS

8    THAT, IN THE EVENT THAT MGA STARTS TRYING TO SAY THAT

9    SOMEHOW THAT SHOULD HAVE PUT MATTEL ON NOTICE, IN OTHER

10   WORDS, THAT IT HAD ANOTHER CLAIM, THAT THAT IS SOMETHING

11   THAT THAT'S EXACTLY WHY WE HAVE SUGGESTED THIS OTHER JURY

12   INSTRUCTION, TO MAKE IT PERFECTLY CLEAR TO THE JURY THAT

13   THEY CAN'T RELY ON THAT.

14           IF WE COULD HAVE BROUGHT ANOTHER CLAIM, THAT IS

15   IRRELEVANT TO STATUTE OF LIMITATIONS.

16           THE COURT:  I'LL SPEAK TO THIS AT FOUR O'CLOCK TO

17   TRY TO MAKE IT CLEAR.  I WANT TO THINK ABOUT THIS MYSELF.

18           MR. ZELLER:  THANK YOU.

19           THE COURT:  MR. PROCTOR, IF YOU WOULD, THE VERDICT

20   FORM.

21           MR. PROCTOR:  THANK YOU, JUDGE.

22           THE COURT:  AND AS YOU HEARD, I -- I TENTATIVELY

23   AGREE WITH MGA'S APPROACH THAT THERE NEEDS TO BE -- I HAVE

24   KIND OF A TWO-EXTREME APPROACH AS ONE IS BREAKING DOWN ALL

25   THE VARIOUS PRODUCTS.  THE OTHER IS A ONE-LINE QUESTION:

                                                        7977

```
 1    HAS THERE BEEN AN INFRINGEMENT?

 2             I'M CONCERNED THAT -- WITH THAT KIND OF SIMPLISTIC

 3    APPROACH.

 4             MR. PROCTOR:  RIGHT.

 5             THE COURT:  I COULD VERY WELL SEE A JURY FINDING

 6    SUBSTANTIAL SIMILARITY WITH RESPECT TO CERTAIN DOLLS OR

 7    CLASSES OF DOLLS AND -- AND NOT FINDING IT WITH RESPECT TO

 8    OTHERS.

 9             MR. PROCTOR:  SURE, BUT THEIR -- THEIR DAMAGES

10    AWARD WILL REFLECT THAT.  I MEAN, THERE ARE -- THIS

11    FUNDAMENTAL ISSUE, THERE -- YOU KNOW, I HAVE SMALLER

12    COMMENTS ON OTHER ASPECTS OF THE -- THE FORM, BUT THIS IS

13    THE MAJOR ISSUE, I THINK.

14             THE COURT:  AND I UNDERSTAND THAT RESPONSE.  BUT

15    WHY -- WHAT IS THE DOWNSIDE OF HAVING THE JURY ALSO IDENTIFY

16    EXACTLY WHAT IT IS THAT THEY'VE HAVE FOUND?  I MEAN, THAT'S

17    GOING TO BE VERY HELPFUL TO THE COURT WITH RESPECT TO

18    TAILORING INJUNCTIVE RELIEF.

19             MR. PROCTOR:  THERE ARE -- THERE ARE TWO MAJOR

20    PROBLEMS THAT I -- THAT I SEE.  THE FIRST ONE IS NOT EVERY

21    INFRINGING PRODUCT IS IN EVIDENCE.  YOU KNOW, WE'VE GOT --

22    WE'VE GOT THE TOY STORE UPSTAIRS, YOU KNOW, AND THE JURY WAS

23    TAKEN TO SEE THE STUFF, BUT ---

24             THE COURT:  AND THAT'S ALL IN EVIDENCE.

25             MR. PROCTOR:  THAT'S -- THAT'S ALL IN EVIDENCE,
                                                          7978
```

 1    BUT THAT IS -- AND THIS IS A ROUGH APPROXIMATION.  I DON'T
 2    KNOW.
 3         IT -- IT -- LESS THAN HALF OF THE ALLEGEDLY
 4    INFRINGING PRODUCTS ARE IN EVIDENCE.  AND YOU WILL RECALL --
 5    OR YOU MAY RECALL, THERE IS A STIPULATION WHICH WAS REACHED.
 6    WE TRIED TO GET ALL THE PRODUCTS IN DISCOVERY.  MGA SAID NO.
 7    AND ONE THING THAT MGA SAID WAS WE WILL GIVE YOU A
 8    REPRESENTATIVE SAMPLE.
 9         AND BASED ON THAT, THERE IS A STIPULATION WHICH
10    WAS REACHED, WHICH WAS READ INTO THE RECORD ABOUT TWO WEEKS
11    AGO, WHICH SAID THE PRODUCTS THAT ARE THERE ARE
12    REPRESENTATIVE OF THE OTHER PRODUCTS, BUT NOT ALL THE
13    PRODUCTS ARE IN EVIDENCE.  AND SO LISTING PRODUCTS IS --
14         THE COURT:  AND -- AND THE COURT WILL CERTAINLY
15    ACCEPT THAT FOR PURPOSES OF HAVING IT TAILORED, IF IT IS
16    CALLED UPON TO DO SO IN THE INJUNCTIVE RELIEF.  I STILL
17    WONDER WHY IS IT NOT A GOOD IDEA TO DO EXACTLY WHAT WE DID
18    IN THE FIRST PHASE AND HAVE THEM TELL US WHAT IS AND WHAT IS
19    NOT, OF THIS REPRESENTATIVE SAMPLE, INFRINGING?
20         MR. PROCTOR:  THE -- THE SECOND MAIN PROBLEM WITH
21    IT IS -- I MEAN, NUMBER ONE, LISTING ALL THE PRODUCTS THAT
22    ARE UP THERE WOULD BE -- I MEAN, YOU'RE TALKING ABOUT A LIST
23    THAT IS FAR GREATER THAN WHAT'S LISTED HERE.
24         THE COURT:  I THINK -- I THINK THE -- THE -- MGA
25    TOOK A REASONABLE STAB, AND I WOULD CERTAINLY BE WILLING TO

1    ENTERTAIN ANY RESPONSES OR CLARIFICATIONS OF -- OF GROUPING

2    CERTAIN TYPES OF PRODUCTS TOGETHER.

3              I MEAN, I -- I AGREE, HAVING 900-AND-SOME

4    QUESTIONS IS PROBABLY A LITTLE OVER -- OVERBROAD.  BUT --

5    BUT WE HAVE A -- YOU KNOW, A REASONABLE ATTEMPT AT MAKING IT

6    A MANAGEABLE AMOUNT BASED ON THE SUBMISSION FROM MGA.

7              MR. PROCTOR:  RIGHT.

8              WELL, I MEAN, THE -- WHAT -- WHAT I'VE ADDRESSED

9    THUS FAR IS WHAT I WOULD REFER TO AS, YOU KNOW, SORT OF A

10   PRAGMATIC PROBLEM.  THERE IS A -- THERE IS A THEORETICAL

11   PROBLEM WITH -- WITH THIS APPROACH AS WELL, AND THAT IS

12   INDIRECT PROFITS.

13             OUR CLAIM IS -- WE HAVE -- WE HAVE -- WE HAVE TWO

14   CLAIMS, IN EFFECT, TWO CLAIMS FOR DAMAGES.  WE CLAIM

15   DAMAGES, YOU KNOW, DIRECT PROFITS FROM THE INFRINGING WORKS.

16   AND WE CLAIM INDIRECT PROFITS FROM WORKS WHICH ARE NOT

17   INFRINGING.  THOSE ARE DISTINCT AND SEPARATE, BUT THEY ALSO

18   OVERLAP.

19             SOME WORKS, FOR EXAMPLE, ARE DIRECTLY INFRINGING

20   BECAUSE THEY HAVE ON THE PACKAGING IMAGES WHICH WE CLAIM ARE

21   INFRINGING BECAUSE -- YOU KNOW, FOR EXAMPLE, THE HERO POSE,

22   THEY REPLICATE THE HERO POSE.

23             BUT ALSO WE ARE SEEKING INDIRECT PROFITS FOR THE

24   PROFITS FROM THOSE WORKS WHETHER OR NOT THE -- YOU KNOW,

25   WE'RE NOT CONTENDING THE HELMET LOOKS LIKE THE DOLL.  AND WE

7980

 1   MAY CONTEND THAT THE HELMET IS INFRINGING IF IT HAS AN IMAGE
 2   ON IT, DIRECTLY INFRINGING.  BUT EVEN IF IT'S NOT DIRECTLY
 3   INFRINGING, WE'RE ENTITLED TO INDIRECT PROFITS FROM IT.
 4           THE COURT:  AND THAT CAN BE ADDRESSED IN THE
 5   DAMAGES QUESTIONS.  NO QUESTION ABOUT THAT.
 6           MR. PROCTOR:  I MEAN, IT'S NOT ADDRESSED AT ALL IN
 7   MGA'S FORMS.  INDIRECT PROFITS IS --
 8           THE COURT:  I -- I UNDERSTAND.  INDIRECT PROFITS
 9   ARE GOING TO BE ADDRESSED.  BUT -- BUT THAT'S EASIER TO
10   ADDRESS WITH AN INDIRECT PROFITS QUESTION, AND WE CAN STILL
11   HAVE THE JURY MAKE THE FINDINGS ON WHAT'S INFRINGING.
12           MR. PROCTOR:  I SUPPOSE THERE COULD BE SOME WAY TO
13   GROUP -- COME UP WITH SOME CATEGORIES, NOT SPECIFIC
14   PRODUCTS, BUT CATEGORIES OF PRODUCTS TO MAKE A DETERMINATION
15   ABOUT EXACTLY WHAT IS DIRECTLY INFRINGING AND WHAT IS NOT.
16           I DON'T REALLY SEE THE FRUITFULNESS OF IT IN THE
17   SENSE THAT IT'S NOT GOING TO AFFECT DAMAGES BECAUSE YOU'VE
18   GOT THE INDIRECT PROFITS THEORIES AS TO THE SAME WORKS,
19   WHICH ARE ALSO ALLEGEDLY DIRECTLY INFRINGING.  AND SO YOU
20   HAVE THIS OVERLAP, WHICH IS NOT EASY TO SEPARATE OUT IN ANY
21   WAY.
22           AND THE DAMAGES NUMBER IS GOING TO REFLECT THE
23   OVERALL AWARD ONE WAY OR THE OTHER.  YOU'RE GOING TO BE ABLE
24   TO DISCERN FROM THE DAMAGES AWARD WHAT THE JURY FINDS.  SO
25   THE JURY WILL MAKE A FINDING AND MAKE A DAMAGES AWARD BASED
                                                        7981

```
 1   ON THAT.
 2            THE ONLY FINDING THAT'S LEGALLY REQUIRED IS THE
 3   FINDING OF COPYRIGHT INFRINGEMENT.  MAYBE THERE'S SOME WAY
 4   TO DO IT WITH SOME GROUPED CATEGORIES.  BUT GIVEN THE
 5   PROBLEMS OF THE -- THE INDIRECT DAMAGES INTERPLAY WITH WORKS
 6   WHICH ARE ALSO DIRECTLY INFRINGING, AND THE PROBLEMS OF
 7   HAVING ONLY -- BECAUSE THE SAME WORK IS DIRECTLY INFRINGING
 8   IN PART BECAUSE, IF FOR EXAMPLE, THE IMAGE ON IT, BUT
 9   ALSO -- BUT ALSO WE'RE SEEKING INDIRECT PROFITS ON IT --
10   WE'RE SEEKING INDIRECT PROFITS ON A -- ON A INDIRECT PROFITS
11   THEORY, A CAUSATION THEORY.  AND COUPLED WITH THE PROBLEMS
12   OF THE LACK OF EVIDENCE IN THE SENSE THAT NOT ALL THE
13   ALLEGEDLY INFRINGING PRODUCTS HAVE BEEN SEEN BY THE JURY.
14            THEN, WHEN YOU START GROUPING IT OUT, THAT
15   SOMEHOW, SOMEWHERE ALONG THE LINE, THE JURY IS GOING TO HAVE
16   TO -- I MEAN, SAY YOU HAVE A CATEGORY AND YOU GET FINDINGS
17   YEA AS TO SOME CATEGORIES, NAY AS TO OTHER CATEGORIES.  THE
18   STIPULATION WHICH WAS READ SIMPLY SAID THE PRODUCTS THAT ARE
19   IN EVIDENCE ARE REPRESENTATIVE.
20            I THINK SEPARATING IT OUT IN THAT WAY COULD CREATE
21   ALL SORTS OF PROBLEMS DEPENDING ON WHAT COMES DOWN.
22            THE COURT:  WELL, THE WAY IT'S BEEN SEPARATED OUT
23   BY MGA IS YOU HAVE THE FIRST GENERATION OF BRATZ FASHION
24   DOLLS, THE LATER FASHION BRATZ DOLLS, AND THEN OTHER
25   PRODUCTS LINES.  SO THERE'S THREE BROAD CATEGORIES.
```

7982

1    WE HAVE REPRESENTATIVE PRODUCTS WITHIN EACH -- I'M

2  NOT GOING TO DO THE SUGGESTION OF THEN -- YOU KNOW, HAVE THE

3  DAMAGE FOLLOW IMMEDIATELY UNDER FOR, YOU KNOW, WHAT IS THE

4  INFRINGEMENT DAMAGE BECAUSE THAT DOES VITIATE THE INDIRECT

5  PROFITS.  DAMAGES WILL BE DEALT WITH SEPARATELY, AND WE CAN

6  CERTAINLY ADDRESS THE INDIRECT PROFIT LINE OF ANALYSIS.

7    BUT IT GIVES THE COURT A CERTAIN DEGREE OF

8  CONFIDENCE THAT THE JURY IS DOING WHAT THE JURY SHOULD DO IN

9  TERMS OF THE EXTRINSIC/INTRINSIC TEST BY THEM MAKING

10  PARTICULAR FINDINGS THAT AT LEAST THESE PARTICULAR LINES

11  ARE -- ARE -- AND THEY'VE ACTUALLY CONSIDERED THE ACTUAL

12  PRODUCTS.

13    AND PART OF THIS IS ALSO JUST A -- I -- I DON'T

14  JUST WANT TO THROW IT IN THE BLACK BOX AND HAVE A RESULT

15  COME OUT.  I WANT TO KNOW AND I WANT TO HAVE CONFIDENCE THAT

16  THE JURY IS DOING -- I MEAN, THESE ARE COMPLICATED

17  INSTRUCTIONS ABOUT EXTRINSIC AND INTRINSIC TESTS AND LOOKING

18  AT THE ELEMENTS.  AND WHILE I HAVE EVERY CONFIDENCE THAT --

19  AND I'M TRYING TO SET THIS UP SO THAT THEY HAVE ACCESS TO

20  THE PRODUCTS, I -- I REALLY WANT THEM TO ENGAGE IN THESE

21  TESTS AND ACTUALLY LOOK AT THE PRODUCTS.

22    AND, TO A CERTAIN EXTENT, THIS IS A WAY TO KIND OF

23  FORCE THE JURY TO DO JUST THAT, WHERE THEY HAVE TO CHECK YES

24  OR NO.

25    AND -- AND YOU'RE CORRECT, AT THE END OF THE DAY,

7983

```
 1    GIVEN THE COURT'S INSTRUCTIONS ON DERIVATIVE WORKS, GIVEN
 2    THE COURT'S INSTRUCTIONS ON INTERMEDIATE WORKS, GIVEN THE
 3    COURT'S INSTRUCTIONS ON INDIRECT PROFITS, THAT JUST BECAUSE
 4    THE JURY STRIKES NO TO A PARTICULAR PRODUCT AND SAYS THERE'S
 5    NOT A DIRECT INFRINGEMENT THERE, THAT THEY MAY OR MAY NOT
 6    INCLUDE THAT IN THE DAMAGES, AND THEY MAY OR MAY NOT BE
 7    ENTITLED TO INCLUDE THAT IN THE DAMAGES.
 8            BUT -- THAT THEY CAN DO, BUT AT LEAST I WILL KNOW
 9    THAT THEY CONSIDERED ALL OF THESE PRODUCTS.
10            MR. PROCTOR:  SURE.
11            THE COURT:  AND THERE'S A VALUE IN THAT.
12            MR. PROCTOR:  I -- I THINK I UNDERSTAND --
13    UNDERSTAND THE COURT'S CONCERNS.  I THINK THERE IS A -- A
14    GRAVE RISK OF JUROR CONFUSION IN ASKING THEM TO COME OUT AND
15    LINE UP WITH EXACTLY WHAT THEY'RE FINDING IS DIRECTLY
16    INFRINGING AND THEN HAVE SOME SEPARATE DETERMINATION AS TO
17    INDIRECT PROFITS WHICH THEY HAVE TO WALK THROUGH ON THE
18    VERDICT FORM.
19            THERE'S A RISK OF JUROR CONFUSION, AND THERE'S
20    POTENTIALLY -- AND I DON'T -- I'M -- I'M NOT PRETENDING TO
21    KNOW EXACTLY WHAT IT IS OR TO BE ABLE TO -- TO PREDICT
22    EXACTLY WHAT IT IS, BUT I THINK THERE IS A RISK OF A VERDICT
23    WHICH WOULD POTENTIALLY BE -- BE ATTACKABLE AS INCONSISTENT
24    IF -- IF DONE THIS WAY BECAUSE YOU'RE GOING TO GET -- YOU
25    KNOW, WE DON'T KNOW WHAT WE'RE GOING TO GET BACK, AND YOU
```

```
 1    COULD GET BACK SOMETHING WHICH -- SAY WE GET BACK A -- A

 2    FINDING OF -- OF DIRECT INFRINGEMENT AS TO SOME AND NO

 3    DIRECT INFRINGEMENT AS TO SOME.  WHAT EXACTLY DOES THAT TELL

 4    YOU ABOUT WHAT THE JURY IS FINDING AS TO THE OTHER WORKS NOT

 5    IN EVIDENCE WHICH THESE ARE REPRESENTATIVE OF?  IT'S NOT

 6    EXACTLY CLEAR.

 7              THEN YOU HAVE A SEPARATE NUMBER BASED ON INDIRECT

 8    PROFITS WHICH ISN'T GOING TO BE, PRESUMABLY, SPECIFIED AS

 9    INDIRECT PROFITS.  THE DAMAGES NUMBERS IS JUST GOING TO BE

10    THE DAMAGES NUMBER --

11              THE COURT:  SO -- SO YOU DON'T EVEN WANT THE

12    SPLITTING UP OF DIRECT AND INDIRECT PROFITS?

13              MR. PROCTOR:  ABSOLUTELY NOT.  I MEAN, OUR DAMAGES

14    PRESENTATION -- I THINK BOTH SIDES' DAMAGES PRESENTATION HAS

15    BEEN NOT SPLIT UP IN THAT WAY.

16              IT'S -- YOU KNOW, IT'S PROFITS, AND THEN THERE'S

17    APPORTIONMENT DISCUSSION.  BUT IT'S NOT -- THERE'S NO

18    SEPARATION IN THE PRESENTATION OF EVIDENCE BETWEEN DIRECT

19    PROFITS AND INDIRECT PROFITS.

20              IN A CASE OF LIKE THIS WHERE YOU HAVE THIS MANY

21    PRODUCTS AND SOMEWHERE IN THE RANGE OF A THIRD OF THEM ARE

22    IN EVIDENCE THAT THE JURY CAN SEE, SEPARATING IT OUT IN THIS

23    WAY IS -- IS CONFUSING AND, I THINK, POTENTIALLY DANGEROUS

24    AFTER THE FACT.

25              THE COURT:  I'LL HEAR FROM MGA ON THIS ISSUE.
```

1       MS. AGUIAR:   YOUR HONOR, I'VE BEEN AFFECTIONATELY

2   CALLING THEM COPYRIGHT CLAIM, BASED ON THEIR VERDICT FORM, A

3   DRIVE-BY COPYRIGHT CLAIM.   I THINK WE ARE ENTITLED TO KNOW,

4   THE JURY IS ENTITLED TO TELL THE COURT AND TELL THE PARTIES

5   WHAT PRODUCTS ARE INFRINGING.

6       THIS ISSUE CAME UP AT A HEARING, A TELEPHONIC

7   HEARING IN LATE JULY PRIOR TO THE 1-B PHASE.   AND THE ISSUE

8   WAS RAISED OF WHAT TO DO ABOUT ALL THESE TANGIBLE ITEMS.

9   AND I MENTIONED SOMETHING TO THE EFFECT OF, WHEN YOU SEEK

10   HUNDREDS OF MILLIONS OF DOLLARS, YOU CAN'T MAKE -- YOU CAN'T

11   TAKE SHORTCUTS.

12       AND THAT IS EXACTLY WHY WE PRODUCED, COLLECTED,

13   TAGGED WITH TRIAL EXHIBIT NUMBERS AND PUT IN THAT ROOM ALL

14   OF THOSE PRODUCTS.   AND THAT IS HOW THE EVIDENCE HAS COME IN

15   IN THIS PHASE.

16       THE JURY HAS HEARD ABOUT DIFFERENT PRODUCTS.   THEY

17   HAVE HEARD ABOUT THE FIRST GENERATION DOLLS.   THEY'VE HEARD

18   ABOUT THE LATER GENERATION DOLLS.   THERE'S BEEN A LOT OF

19   TESTIMONY ABOUT THE SUB-BRANDS.   THERE'S BEEN TESTIMONY

20   ABOUT THE MERCHANDISE.

21       SO IF YOU WANT TO TALK ABOUT JURY CONFUSION, I

22   DON'T REALLY UNDERSTAND HOW IT'S CONFUSING TO THE JURY TO

23   ACTUALLY GIVE THEM REASONABLE, LOGICAL CATEGORIES TO -- TO

24   MAKE THE INFRINGEMENT DETERMINATION.

25       I ALSO WANT TO POINT OUT A COUPLE OTHER THINGS.

```
 1   IN THE -- THIS WAS PRIOR TO SKADDEN'S INVOLVEMENT, BUT I
 2   WENT BACK AND LOOKED AT MATTEL'S MEMORANDUM REGARDING TRIAL
 3   STRUCTURE, AND THAT WAS FILED BACK IN JUNE OF 2007.  AND AT
 4   THAT POINT THEY WERE ARGUING THAT THIS TYPE OF ANALYSIS
 5   SHOULD BE DONE IN A SEPARATE PHASE, SPECIFICALLY TO
 6   POTENTIALLY AVOID THE, QUOTE, BURDENSOME ASSESSMENT OF, AT
 7   THAT POINT THEY WERE CALLING IT -- WE WERE -- THE PARTIES
 8   WERE CALLING IT 200 PRODUCTS.
 9            BUT IF YOU LOOK BACK AT THAT DOCUMENT, ONE OF THE
10   RATIONALES FOR PHASING THE CASE IN THE WAY THAT YOUR HONOR
11   DID WAS SO THAT, DEPENDING ON THE OUTCOME OF 1-A, WE MAY NOT
12   HAVE A 1-B, WHERE BOTH PARTIES AT THAT POINT WERE -- WERE
13   COMPLETELY IN ACCORD.
14            IN FACT, MATTEL SAYS, AT THE BOTTOM OF PAGE 3 OF
15   THEIR PHASING MEMORANDUM, MATTEL SUBMITS THAT DEFENDANT'S
16   STATED CONCERN AND THAT THE STATED CONCERN IS ABOUT
17   ASSESSING COUNTLESS BRATZ -- BRATZ PRODUCTS.
18            AND THEN, IN YOUR PHASING ORDER FROM JULY OF '07,
19   YOU ACTUALLY -- YOU SPECIFICALLY MENTION THAT.  YOU SAY,
20   "WHILE PHASE 1-B WOULD ADDRESS APPROXIMATELY 200 BRATZ
21   PRODUCTS THAT ARE POTENTIALLY DERIVATIVE OF THE ORIGINAL
22   DRAWINGS."
23            SO I DO THINK THAT THIS WAS SOMETHING THAT WAS
24   ALWAYS CONTEMPLATED.  THAT'S HOW WE BROUGHT THE TANGIBLE
25   EVIDENCE IN.  THAT'S HOW THE EVIDENCE WAS PRESENTED TO THE
```

```
 1   JURY.
 2              REGARDING MR. PROCTOR'S CONCERN, STATED CONCERN,
 3   ABOUT THE STIPULATION REGARDING REPRESENTATIVE SAMPLE, I
 4   DON'T REALLY GET HOW THAT'S A PROBLEM.  I MEAN, FRANKLY, IT
 5   WAS UNWORKABLE TO COLLECT AND PRODUCE AND TAG EVERY SINGLE
 6   PRODUCT.  SO WHAT THE PARTIES SAID WAS, OKAY, WE'RE GOING TO
 7   DO AS MANY AS WE POSSIBLY CAN, AND THAT'S A REPRESENTATIVE
 8   SAMPLE.
 9              SO ON THE LIST THAT I DREW UP, FOR EXAMPLE, WE
10   DON'T PUT EVERY SINGLE WINTER WONDERLAND CHARACTER.  WE JUST
11   PUT THE THEME.  BECAUSE, WHEN IT CAME TO LATER GENERATIONS,
12   I DIDN'T THINK IT WAS PARTICULARLY WORKABLE TO GO INTO EVERY
13   SINGLE CHARACTER, EVERY SINGLE THEME.  SO RATHER THAN HAVE
14   HUNDREDS OF CATEGORIES, WE DID IT IN THE WAY, AGAIN, THAT I
15   THINK THE EVIDENCE LOGICALLY CAME IN FOR THE JURY, WHICH IS
16   THAT, FROM MATTEL'S EXPERT, THEIR DAMAGE EXPERT, AND --
17   AND -- AND OTHER OF THEIR WITNESSES THAT --
18              THE COURT:  THOSE ARE THE ONES WHERE YOU PUT, FOR
19   EXAMPLE --
20              MS. AGUIAR:  EXACTLY.  AND SO WE -- AND -- AND I
21   WAS TAKING THAT INTO ACCOUNT BECAUSE THE STIPULATION DOES
22   SAY IT'S A REPRESENTATIVE SAMPLE.  AND SO THAT'S WHY IT
23   SAYS, E.G., TRIAL EXHIBIT NO. BLANK, SO THAT THEY CAN
24   UNDERSTAND THAT THAT'S JUST AN EXAMPLE OF WHAT WE'RE TALKING
25   ABOUT.
```

```
 1              SO I -- I ACTUALLY, WHEN I WAS CONTEMPLATING THIS
 2    OVER -- YOU KNOW, LAST WEEK, I -- I THOUGHT OF WAYS THAT THE
 3    LISTS WERE EVEN LONGER.  I MEAN, HONESTLY, IF YOU GO TO THE
 4    SUB-BRANDS, THERE'S ONLY -- I DON'T KNOW -- MAYBE 17 LINES,
 5    AND THAT'S -- THAT'S SUPPORTED BY THE TESTIMONY OF AN MGA
 6    EMPLOYEE WHO ACTUALLY PUT INTO EVIDENCE EVERY SINGLE ONE OF
 7    THE DIFFERENT SCULPTS.
 8              AND THEN, IF YOU LOOK ON THE BOTTOM OF PAGE 6, TOP
 9    OF PAGE 7, WITH REGARD TO THE MERCHANDISE -- AND THERE'S
10    REALLY HUNDREDS OF DIFFERENT TYPES OF MERCHANDISE -- BUT
11    AGAIN, TRY TO PUT IT INTO CATEGORIES.  SO --
12              THE COURT:  I WANT TO MAKE SURE THAT MY THINKING
13    IS CORRECT ON THIS, AND SO IF YOU'D -- IF YOU'D ADDRESS
14    THE -- THE PRIMARY CONCERN THAT MR. PROCTOR SUBMITS IS
15    THAT -- I'M ASSUMING -- I NEVER WANT TO PUT ANYTHING INTO A
16    VERDICT FORM THAT'S NOT NEEDED.  BUT I DON'T WANT TO EXCLUDE
17    ANYTHING THAT IS NEEDED.  I MEAN, I DO BELIEVE LESS IS MORE
18    ON A VERDICT FORM.
19              MY THINKING IS THAT THIS -- HAVING THESE FINDINGS
20    WILL BE HELPFUL WHEN AND IF THE COURT IS CALLED UPON TO
21    FASHION INJUNCTIVE RELIEF IN THIS CASE.
22              MS. AGUIAR:  I THINK THAT'S --
23              THE COURT:  AM I CORRECT ON THAT?  AND IF I AM
24    CORRECT ON THAT, IS THERE SOMETHING THAT THIS WILL BE --
25    WHAT -- SET FORTH FOR ME WHAT IT IS -- WHY THIS IS HELPFUL.
```

1  HELP ME OUT HERE, COUNSEL. WHY IS IT NECESSARY? WHY IS IT

2  HELPFUL? HOW WILL IT BE HELPFUL?

3  IN ADDITION TO THE ONE REASON THAT I'VE STATED, TO

4  KIND OF MAKE SURE THE JURY'S DOING ITS JOB --

5  MS. AGUIAR: RIGHT.

6  THE COURT: -- WHICH I'M BEING FORCED TO PRESUME,

7  BUT I -- I DO LIKE THE IDEA OF THEM HAVING TO ACTUALLY GO

8  THROUGH AND -- AND GRAPPLE WITH THE PRODUCT THEMSELVES.

9  BUT PUTTING THAT ISSUE ASIDE, TELL ME WHY IT IS

10  THAT THIS IS NECESSARY AND -- AND TO HAVE THIS IN THE

11  VERDICT FORM.

12  MS. AGUIAR: WELL, I THINK THAT IT'S NOT JUST THAT

13  WE'RE TRYING TO SO-CALL BABYSIT THE JURY AND MAKE SURE

14  THEY'RE DOING THEIR JOB.

15  THE COURT: RIGHT.

16  MS. AGUIAR: I THINK IT'S A QUESTION OF A VERDICT

17  FORM HAVING THE ULTIMATE GOAL OF -- OF ASSISTING THE JURY

18  IN -- IN DOING WHAT THEY NEED TO DO. AND AGAIN, NOT -- NOT

19  MAKING SURE THAT THEY'RE -- THAT THEY'RE TAKING A SHORTCUT,

20  BUT TO HELP THEM UNDERSTAND HOW THEY CAN WORK THROUGH THIS.

21  AND I THINK THIS SETS UP A LOGICAL RUBRIC FOR THEM

22  TO SAY, OKAY, THERE'S BEEN A LOT OF TESTIMONY, AND THE

23  PARTIES HAVE SPECIFICALLY FOCUSED, FOR EXAMPLE, ON THE FIRST

24  GENERATION DOLLS. SO LET'S LOOK AT THOSE.

25  AND THEN THE WAY THAT THE EVIDENCE HAS COME IN IS

7990

1    THAT EVERY GENERATION OR EVERY LINE AFTER THAT, FOR EXAMPLE,

2    AS YOUR HONOR MENTIONED ONE DAY UP ON THE BENCH, WHEN YOU

3    LOOKED AT ONE OF THE LATER DOLLS, YOU SAID, "YEAH, AS YOU

4    GET FURTHER AWAY, THERE ARE DIFFERENT CONSIDERATIONS.  THERE

5    ARE DIFFERENT PACKAGING, DIFFERENT ACCESSORIES, DIFFERENT

6    FASHIONS."  AND THAT'S SOMETHING THAT THEY -- THAT THEY NEED

7    TO LOOK AT.

8          SO I THINK, IF OUR GOAL HERE IS TO GIVE THE JURY A

9    DOCUMENT THAT ASSISTS THEM IN -- IN DOING THEIR JOB, NOT

10   JUST MAKING SURE THEY'RE DOING IT, BUT HELPS THEM DO IT, I

11   THINK THAT'S ONE THING.

12         THE COURT:  IN ADDITION TO THAT --

13         MS. AGUIAR:  I ALSO THINK THAT WE ARE ENTITLED

14   TO -- WE, MGA, ARE ENTITLED TO KNOW BEYOND JUST COPYRIGHT

15   INFRINGEMENT, WHAT -- WHAT ARE WE, AS THE PARTIES, AND WHAT

16   DO YOU, AS THE COURT, WHAT DO YOU DO WITH THAT?

17         YES, IT'S INFRINGING.  OKAY.  NOW, THEY COULD

18   MEAN -- AND I UNDERSTAND THAT BY BREAKING IT DOWN THIS

19   WAY -- SOMEONE EARLIER TODAY SAID A PHRASE LIKE WHOSE OX

20   GETS GORED.  BUT I MEAN, I'M NOT SURE IF THIS IS GOING TO

21   INURE TO OUR BENEFIT OR TO OUR DETRIMENT IN THE END, BUT I

22   THINK IT'S THE WAY TO GO.

23         WE -- WE COULD BE -- WE, MGA, COULD, IN THE END,

24   DEPENDING ON HOW THIS JURY COMES OUT, WE COULD GET A VERDICT

25   THAT SAYS, YOU KNOW, DOES THIS INFRINGE?  WE COULD GET LOTS

```
 1   OF YES CHECKMARKS.
 2              THE COURT:   IT COULD LOOK LIKE THAT FIRST VERDICT,
 3   OR IT COULD LOOK THE OTHER WAY.
 4              MS. AGUIAR:   YES.   SO I DON'T REALLY KNOW WHICH
 5   WAY THIS IS GOING TO GO.   I KNOW HOW I WISH IT WILL GO, BUT
 6   I -- I --
 7              THE COURT:   TAKE -- TAKE IT TO THE NEXT STEP.
 8   WHAT SIGNIFICANCE DOES THAT HAVE BESIDES RAISING MR. NOLAN'S
 9   BLOOD PRESSURE?
10              MS. AGUIAR:   RIGHT.   AND I -- I AGREE WITH YOU
11   REGARDING INJUNCTIVE RELIEF, AND I -- I THINK THAT IT WOULD
12   GENERALLY ASSIST IN -- IN DETERMINING HOW WE NEED TO MOVE
13   FORWARD.
14              THE COURT:   OKAY.
15              MS. AGUIAR:   AND -- AND I ACTUALLY DON'T THINK
16   THAT ANY OF THE PURPORTED -- I -- I DON'T UNDERSTAND THE --
17   THE PURPORTED DOWNSIDES.   I DON'T THINK THEY ACTUALLY ARE
18   DOWNSIDES.
19              MR. NOLAN:   COULD I ADD ONE MORE THING, YOUR
20   HONOR?
21              MS. AGUIAR:   AND -- AND HE WANTS TO ADD ANOTHER
22   BENEFIT THAT, WHEN HE WAS WHISPERING, FRANKLY, I COULDN'T
23   UNDERSTAND HIM.
24              THE COURT:   OKAY.
25              MR. NOLAN:   I'M NOT TAKING ANYTHING WAY.
```

```
 1            THE OTHER THING IS THAT I THINK THAT, AFTER THE
 2   VERDICT, KNOWING EXACTLY WHAT THEY FOUND, WHICH COULD SET UP
 3   THE INJUNCTIVE RELIEF HEARINGS AND ADDITIONAL HEARINGS THAT
 4   WE'RE GOING TO HAVE ON THE EFFECT OF THIS VERDICT, INCLUDING
 5   POSSIBLY AN ANALYSIS OF WHETHER OR NOT AN INJUNCTIVE
 6   APPROACH IS -- IS THE RIGHT WAY OR A ROYALTY RATE, AS
 7   SUGGESTED UNDER THE E-BAY CASE.  BUT FRANKLY, YOUR HONOR, I
 8   THINK IT WOULD ALSO INFORM THE PARTIES BECAUSE I'M SURE THE
 9   COURT IS GOING TO DIRECT BOTH SIDES TO VISIT THE
10   COURT-APPOINTED MEDIATOR IN THE CASE.  AND UNDERSTANDING THE
11   BREADTH AND SCOPE OF WHAT WE COULD BE LOOKING AT GOING
12   FORWARD COULD ALSO BE OF ENORMOUS HELP AND ASSISTANCE IN
13   THAT REGARD.
14            THE COURT:  VERY WELL.
15            MR. PROCTOR.
16            MR. PROCTOR:  THE -- I THINK I UNDERSTAND THE
17   COURT'S PROFFERED POTENTIAL UPSIDE TO THIS, YOU KNOW,
18   HELPING -- HELPING WHEN IT COMES TO INJUNCTIVE RELIEF.  I
19   THINK -- I THINK I SEE WHERE THE COURT'S GOING WITH THAT.  I
20   DIDN'T HEAR ANOTHER ARTICULATED BENEFIT, SET -- ON HELPING
21   WITH SETTLEMENT POTENTIALLY.
22            THESE ARE WHAT I WOULD PHRASE, I SUPPOSE,
23   COLLATERAL BENEFITS.  THEY'RE NOT IN THE -- I MEAN, THE
24   COURT'S PHRASE WAS YOU DON'T WANT TO PUT ANYTHING IN A
25   VERDICT FORM THAT THE JURY DOESN'T NEED TO DECIDE.  AND TO
```

```
 1   DECIDE THIS CASE, TO DECIDE WHAT'S BEFORE THE JURY, THE JURY
 2   DOESN'T NEED TO DO ANY OF THIS.  IT DOESN'T NEED TO DECIDE
 3   IT.
 4          AND I DO HAVE SERIOUS CONCERNS ABOUT THE POTENTIAL
 5   CONFUSION TO THE JURY OF HAVING IT WALK THROUGH A LIST OF --
 6   OF A HUNDRED BOXES OR WHATEVER THE NUMBER ENDS UP BEING, AND
 7   THEN START TO CHANGE ITS MINDSET, THE JURY'S COLLECTIVE
 8   MINDSET, FROM THE REALM OF, YOU KNOW, DIRECT PROFITS TO
 9   INDIRECT PROFITS IN THIS SEPARATE SORT OF -- SEPARATE
10   ANALYSIS, WHICH -- WHICH HAS NOT REALLY BEEN SEPARATED IN
11   TERMS OF THE PRESENTATION OF THE EVIDENCE THROUGH THE
12   EXPERTS, AT LEAST.
13          YOU KNOW, THE DAMAGES EVIDENCE, THE NUMBERS THAT
14   THE JURY HAS BEEN WRITING DOWN WHEN THE EXPERTS ARE
15   TESTIFYING, THE NUMBERS THAT ARE GOING TO GO UP IN CLOSING,
16   PRESUMABLY, HAVE BEEN -- HAVE BEEN MERGING THESE THINGS.
17          AND SO THE -- THE SUBMISSION THAT I WOULD MAKE IS,
18   YOU KNOW, LET'S HAVE WHAT THE JURY NEEDS TO DECIDE, NEEDS TO
19   DO.  YOU KNOW, THERE'S THE PRESUMPTION THE JURY'S GOING
20   FOLLOW THE INSTRUCTIONS, OBVIOUSLY.  LET'S HAVE THE JURY DO
21   WHAT IT NEEDS TO DO, WHICH I THINK OUR FORM CAPTURES.
22          AND THEN, IF -- IF THE COURT WANTS, EFFECTIVELY,
23   FINDINGS OF FACT AS GUIDANCE FOR WHEN IT COMES TIME TO
24   DECIDE ABOUT INJUNCTIVE RELIEF, THAT'S SOMETHING THAT COULD
25   BE DONE IN A SEPARATE SECTION OF THE FORM, PERHAPS NEAR THE
```
7994

1    END OF IT, AFTER THE JURY HAS MADE ITS ANALYSIS OF WHETHER

2    THERE'S INFRINGEMENT AND WHAT THE DAMAGES ARE ARISING FROM

3    THAT INFRINGEMENT AS TO EACH OF THE PARTICULAR -- EACH OF

4    THE PARTICULAR PARTIES.

5              AND IN OUR FORM, WE -- YOU KNOW, WE SEPARATE THAT

6    OUT IN THE -- IN THE DEGREE OF SPECIFICITY THAT THE JURY

7    NEEDS TO FOLLOW IN ORDER TO REACH -- REACH LEGALLY

8    SUSTAINABLE CONCLUSIONS BASED ON THE EVIDENCE.

9              THE COURT:  WE -- WE DO, I THINK, VERY CLEARLY

10   SPELL THIS OUT IN THE JURY INSTRUCTION ON INDIRECT PROFITS.

11   I MEAN, YOU KNOW, MATTEL WILL CERTAINLY ARGUE, AND MGA

12   REALLY CANNOT ARGUE THAT SOMEHOW THE INDIRECT PROFITS DO NOT

13   APPLY, THAT EVEN IF THERE IS -- I MEAN, IT IS WHAT IT IS.

14             MR. PROCTOR:  THAT'S ABSOLUTELY TRUE.  MY -- MY

15   CONCERN IS SIMPLY THAT, GOING THROUGH THIS -- HAVING THE

16   JURY WALK THROUGH THIS ANALYSIS AS TO, YOU KNOW, AS TO

17   WHETHER MERCHANDISE IS DIRECTLY INFRINGING, OTHER PRODUCT

18   LINES DIRECTLY INFRINGING, DOING ALL THAT, THEN LEADING UP

19   TO A DAMAGES QUESTION, I FEAR -- I FEAR IS GOING TO LEAD TO

20   CONFUSION ABOUT THIS -- THIS DISTINCTION, WHICH IS -- AND

21   NOT A PARTICULARLY CLEAR DIS -- I MEAN, LOOK AT THE

22   INTERPLAY BETWEEN --

23             THE COURT:  I UNDERSTAND -- I UNDERSTAND YOUR

24   ARGUMENT, I UNDERSTAND MGA'S ARGUMENT.  I'LL THINK ABOUT

25   THIS THIS AFTERNOON.

                                                      7995

```
 1            WHAT I WOULD LIKE IS A DISK OF EACH OF THE VERDICT
 2   FORMS GIVEN TO MR. HOLMES, IF YOU CAN.  I DON'T KNOW IF YOU
 3   HAVE THAT NOW.  IF NOT, LET'S GET IT WITHIN THE NEXT HALF
 4   HOUR.
 5            AND I'LL TRY TO HAVE BOTH THE JURY INSTRUCTION
 6   FORMS AND THE VERDICT FORM BY FOUR O'CLOCK THIS AFTERNOON OR
 7   WHENEVER MY CRIMINAL CALENDAR ENDS.
 8            MS. AGUIAR:  CAN WE E-MAIL THOSE?  BECAUSE THEY'RE
 9   QUITE SHORT.
10            THE COURT:  E-MAIL IS JUST FINE.
11            MS. AGUIAR:  OKAY.
12            THE COURT:  THANK YOU.
13            ALL RIGHT.  TO ADDING ONE MORE -- I'M SORRY?
14            MR. PROCTOR:  SHOULD WE SEND THEM BY E-MAIL TO
15   MR. HOLMES?
16            THE COURT:  THAT'S -- THAT'S FINE.  SEND THEM BY
17   E-MAIL TO MR. HOLMES.
18            WE HAVE ONE MORE MATTER TO TAKE UP.
19            (PROCEEDINGS CONTINUED TO 4:42 P.M.)
20            THE CLERK:  RECALLING NUMBER 6, IN THE MATTER OF
21   MATTEL, INC., VS. MGA, CASE NO. CV 04-9049.
22            THE COURT:  COUNSEL, WHY DON'T YOU JUST MAKE YOUR
23   APPEARANCES FOR THE RECORD, FOR THIS AFTERNOON'S SESSION.
24            MR. PROCTOR:  DYLAN PROCTOR FOR MATTEL.
25            MS. AGUIAR:  LAUREN AGUIAR AND CARL ROTH FOR MGA.
```

7996

1          MR. ROTH:  GOOD AFTERNOON.

2          THE COURT:  GOOD AFTERNOON.

3          I HOPE THAT JUDGE MATZ DIDN'T ABDUCT MR. ZELLER.

4          MR. PROCTOR:  HE -- HE DETAINED HIM AND

5     INCARCERATED.

6          THE COURT:  ALL RIGHT.

7          MR. PROCTOR:  HE'S IN ROUTE HERE, YOUR HONOR.

8          THE COURT:  OKAY.  LET ME FOLLOW UP ON SOME JURY

9     INSTRUCTION ISSUES.

10         THE -- THERE WERE -- THERE WERE TWO MATTERS THAT

11    I'D ASKED COUNSEL FOR MATTEL TO SEE IF -- TO PROVIDE THE

12    COURT WITH -- WITH TRANSCRIPT REFERENCES TO, AND THIS THE

13    ISSUE OF WHETHER THERE WAS ANY EVIDENCE CONCERNING

14    PREJUDGMENT INTEREST AND WHETHER THERE WAS ANY EVIDENCE

15    CONCERNING TIME AND MONEY SPENT BY MATTEL IN ATTEMPTING TO

16    RECOVER THE PROPERTY THAT IS THE SUBJECT MATTER OF THE

17    CONVERSION CLAIM.

18         MR. PROCTOR:  AND WE -- WE DO HAVE THEM, YOUR

19    HONOR.  IF I COULD HAND IT UP.

20         THE COURT:  PLEASE.

21         MR. PROCTOR:  WE'VE ALSO INCLUDED A THIRD IN HERE,

22    YOUR HONOR, WHICH IS THE TESTIMONY IN THE RECORD ABOUT THE

23    AGE OF THE CONSUMER OF THE DOLL.

24         THE COURT:  VERY GOOD.

25         ALL RIGHT.  THAT WAS MY FIRST QUESTION.

```
 1              SECOND QUESTION RELATES TO -- WELL, IT'S NOT SO
 2   MUCH A QUESTION.  IT'S -- IT'S -- WELL, IT'S NOT REALLY A
 3   QUESTION.
 4              WELL, I -- I GUESS I COULD ASK, IS THERE ANYTHING
 5   FURTHER ON ANY OF THE ISSUES THAT WE DISCUSSED THIS MORNING
 6   THAT YOU WANT TO READDRESS?  I MEAN, THE COURT HAS TAKEN A
 7   LOOK AT THE VARIOUS AUTHORITIES THAT WERE SUBMITTED BY BOTH
 8   SIDES, AND I'M PREPARED TO RULE BASED ON THOSE AUTHORITIES.
 9   BUT IF THERE'S ANY FURTHER -- ANYTHING ELSE THAT YOU CAME UP
10   WITH IN THE COURSE OF THE AFTERNOON, I'D BE HAPPY TO HEAR
11   FROM YOU.
12              MR. ROTH:  YOUR HONOR, CARL ROTH.
13              MR. KENNEDY WAS ADDRESSING WITH YOU EARLIER THE
14   QUESTION OF PUNITIVE DAMAGES IN THE --
15              THE COURT:  THAT'S RIGHT.
16              MR. ROTH:  IN THE -- HE WAS ABLE TO FIND, THROUGH
17   THE HELP OF OUR TEAM, A CASE, DURING THE COURSE OF THE
18   HEARING, THAT ADDRESSES THE -- THE PROPRIETY OF THE VARIOUS
19   FIVE FACTORS.  WE HAVE SINCE FOUND AN ADDITIONAL CASE,
20   BULLOCK V. PHILIP MORRIS USA, 15 CAL.APP 4TH 655.  I BELIEVE
21   IT'S 690 IS THE PAGE CITE, WHICH READS, IN PART:
22              "WE HAVE INSTRUCTED COURTS TO DETERMINE THE
23   REPREHENSIBILITY OF A DEFENDANT BY CONSIDERING WHETHER THE
24   HARM CAUSED WAS PHYSICAL AS OPPOSED TO ECONOMIC, THE
25   TORTIOUS CONDUCT EVINCED AN INDIFFERENCE TO OR A RECKLESS
```

7998

1    DISREGARD OF THE HEALTH OR SAFETY OF OTHERS, THE TARGET OF

2    THE CONDUCT HAD FINANCIAL VULNERABILITY, THE CONDUCT

3    INVOLVED REPEATED ACTIONS OR WAS AN ISOLATED INCIDENT, AND

4    THE HARM WAS THE RESULT OF INTENTIONAL MALICE, TRICKERY, OR

5    DECEIT OR MERE ACCIDENT."

6            REALLY THE SAME LIST THAT WAS REFERRED TO EARLIER.

7    I'D BE HAPPY TO HAND THIS UP TO YOUR HONOR, IF YOU WOULD

8    LIKE TO LOOK AT IT.

9            THE COURT:  BUT -- AND -- AND THE COURT ITSELF HAS

10   FOUND SOME ADDITIONAL CASES WHICH MAKE REFERENCE TO ALL FIVE

11   FACTORS.  BUT WHAT I'M NOT FINDING, MR. ROTH, IS A CASE

12   WHICH SUGGESTS THAT, IN THE ABSENCE OF ANY EVIDENCE RELATING

13   TO ONE OF THE FACTORS, THAT IT'S STILL REQUIRED OR NECESSARY

14   TO GIVE THAT FACTOR.

15           I MEAN, THAT'S -- AND PHILIP MORRIS, OF COURSE,

16   THAT WAS ONE -- THAT'S THE BIG TOBACCO CASE IN CALIFORNIA.

17   THERE WAS CERTAINLY EVIDENCE OF HARM, PHYSICAL HARM,

18   PHYSICAL INJURY TO THE INDIVIDUAL PLAINTIFFS.

19           THE QUESTION THAT I'M HAVING IS IN A PURELY

20   ECONOMIC CASE, WHERE THERE'S NO ALLEGATION WHATSOEVER OF

21   PHYSICAL INJURY OR PHYSICAL HARM, HAS -- HAVE THE CALIFORNIA

22   COURTS EVER REQUIRED APPARENTLY NON OR IRRELEVANT FACTORS TO

23   BE GIVEN AS KIND OF A MEASURE OF THE REPREHENSIBILITY?

24           MR. ROTH:  THE ONLY AUTHORITY I'M AWARE OF THAT,

25   AT THIS POINT, IS THE CAMPBELL CASE ITSELF, U.S. SUPREME

```
 1    COURT, WHICH AGAIN WAS AN ECONOMIC HARM CASE AND LAID OUT,
 2    AGAIN, THE VERY -- VERY SAME FACTORS FROM WHICH WE POINT --
 3            THE COURT:  RIGHT.  AND IT MENTIONED THOSE
 4    FACTORS -- RIGHT.  ALL RIGHT.  FAIR ENOUGH.
 5            ANYTHING FURTHER FROM MGA ON THE JURY
 6    INSTRUCTIONS?
 7            MR. ROTH:  NO, YOUR HONOR, UNLESS . . .
 8            MS. AGUIAR:  JUST TWO THINGS, YOUR HONOR.
 9            THE PARTIES HAD SUBMITTED COMPETING INSTRUCTIONS
10    ON THE COMPETITIVE PRODUCTS ISSUE.
11            THE COURT:  THAT'S RIGHT.
12            MS. AGUIAR:  AND I SORT OF LOOKED AT BOTH OF THEM,
13    AND MAYBE YOU'VE ALREADY DONE THIS, BUT I WAS GOING TO
14    PROPOSE A COMPROMISE SENTENCE.  OR IF YOU'VE ALREADY DONE
15    IT, THEN I --
16            THE COURT:  NO, I THINK I'VE ALREADY DONE THAT.
17            MS. AGUIAR:  OKAY.
18            THE COURT:  I THINK.
19            MS. AGUIAR:  OKAY.
20            THE COURT:  THE COMPETITIVE PRODUCTS ARGUMENT IS
21    THE -- YEAH, BUYING OTHER PEOPLE'S PRODUCTS -- I'VE ALREADY
22    DONE THAT.
23            MS. AGUIAR:  YEAH.  OKAY.  SORRY.
24            THE COURT:  I'VE TAKEN ONE SENTENCE FROM ONE AND
25    ONE SENTENCE FROM THE OTHER.
```

8000

```
 1        MS. AGUIAR:  OKAY.  THAT'S SORT OF WHAT I DID, SO
 2   I'M -- SORRY I DIDN'T GET TO THAT SOONER.
 3        THE COURT:  WE'RE PROBABLY -- PROBABLY ON THE SAME
 4   WAVELENGTH.
 5        MS. AGUIAR:  OKAY.  AND -- AND THEN, WHEN WE WERE
 6   ARGUING THE VERDICT FORM, SOMETHING DID OCCUR TO ME THAT I
 7   THINK IS NEEDED IN ORDER TO COMPLETE ONE OF THE
 8   INSTRUCTIONS.  AND THAT'S ON PAGE 32 --
 9        THE COURT:  OKAY.  HOLD ON.
10        MS. AGUIAR:  -- OF YOUR --
11        THE COURT:  32.  THAT'S THE INSTRUCTION ON ACCESS.
12   OKAY.
13        MS. AGUIAR:  RIGHT.  SO -- AND -- AND BEFORE I
14   READ IT --
15        THE COURT:  INDEPENDENT CREATION.  I'M SORRY.
16        MS. AGUIAR:  YEAH.  AND -- AND BEFORE I READ IT,
17   THE ACTUAL WORDS THAT I WOULD PROPOSE PUTTING IN, THE REASON
18   THAT I'M BRINGING THIS UP IS -- IS THAT I THINK IT DOESN'T
19   REFLECT ALL OF THE PRODUCTS THAT -- THAT ARE AT ISSUE.
20        SO IN OTHER WORDS, WHAT I WOULD LOOK AT --
21        THE COURT:  I SEE.
22        MS. AGUIAR:  -- LINE -- WHAT LOOKS LIKE LINE 6 ON
23   MY COPY, WHICH IS THE THIRD LINE OF THE INSTRUCTION.  IT
24   ENDS, "DEFENDANTS CONTEND THAT THE BRATZ DOLLS."  AND WHAT I
25   WOULD JUST INSERT THERE ARE THE OTHER --
```

1          THE COURT:  ARE OTHER WORKS?

2          MS. AGUIAR:  "AND OTHER ALLEGEDLY INFRINGING" -- I

3    WOULD SAY "PRODUCT LINES AND MERCHANDISE," OR SOMETHING LIKE

4    THAT, BECAUSE I JUST THINK WE DO HAVE TO ADDRESS THE

5    UNIVERSE --

6          THE COURT:  GO BEYOND DOLLS.

7          MR. AKROTIRIANAKIS:  AND -- RIGHT.

8          AND THEN, ON LINE 9, INSTEAD OF SAYING, "THEY

9    CREATED THE BRATZ DOLLS," MAYBE JUST, "THEY CREATED THESE

10   PRODUCTS."

11         THE COURT:  THAT WAS A GOOD CATCH.

12         MS. AGUIAR:  OKAY.  ALL RIGHT.  THANK YOU.

13         THE COURT:  THAT'S A GOOD CATCH.

14         ALL RIGHT.  AND I UNDERSTAND THAT -- THAT MATTEL

15   OBJECTS TO THE INDEPENDENT CREATION CONSTRUCTION IN ITS

16   ENTIRETY, BUT I DO BELIEVE IT'S APPROPRIATE.

17         ALL RIGHT.  ANYTHING ELSE FROM MGA ON THE

18   INSTRUCTIONS?

19         MS. AGUIAR:  NO, YOUR HONOR.

20         THE COURT:  ANYTHING ELSE FROM MATTEL ON THE

21   INSTRUCTIONS?

22         MR. PROCTOR:  I WAS GOING TO MAKE ONE -- I WAS

23   GOING TO MAKE COMMENT ON THE VERDICT FORM.

24         THE COURT:  VERY WELL.

25         MR. PROCTOR:  AND THIS IS -- THIS IS REALLY JUST

                                                    8002

```
 1    AN ATTEMPT, PERHAPS, TO PUT A FINER POINT ON -- ON SOMETHING

 2    I WAS -- WAS SAYING EARLIER.

 3         IF YOU LOOK, FOR EXAMPLE, AT THE LIST OF LATER

 4    GENERATION DOLLS AND IN TERMS OF, YOU KNOW, RISK OF

 5    INCONSISTENT VERDICT OR -- OR LACK OF CLARITY, ONE POSSIBLE

 6    OUTCOME WOULD BE THE JURY WOULD FIND THAT SOME OF THE LATER

 7    GENERATION DOLLS WERE DIRECTLY INFRINGING AND SOME WERE NOT.

 8    AND GIVEN -- GIVEN THE STATE OF PLAY WHERE WE HAVE THIS

 9    STIPULATION THAT THE PRODUCTS ARE REPRESENTATIVE --

10         THE COURT:  YOU'RE GETTING INTO THE VERDICT RIGHT

11    NOW -- FORM.

12         MR. PROCTOR:  OH, THAT'S --

13         THE COURT:  I'M JUST ASKING ABOUT THE

14    JURY INSTRUCTIONS.  I'LL --

15         MR. PROCTOR:  OH, CORRECT.

16         THE COURT:  -- GET TO THE VERDICT FORM IN A

17    SECOND.

18         MR. PROCTOR:  OH, NO, I -- THEN I MISUNDERSTOOD.

19         THE COURT:  OKAY.

20         SO ANY OTHER -- ANY OTHER ISSUES ON THE

21    INSTRUCTIONS?

22         MR. PROCTOR:  WE'LL SUBMIT.

23         THE COURT:  ALL RIGHT.  VERY WELL.

24         THE -- THE ONE THING I'M STILL GRAPPLING WITH, THE

25    COURT WAS ABLE TO FIND A NINTH CIRCUIT CASE.  AND I'LL JUST
```

8003

1    CITE IT FOR -- FOR COUNSEL BECAUSE I DIDN'T SEE IT

2    REFERENCED.  IT MAY HAVE BEEN, AND I MISSED IT.

3           ON THIS ISSUE OF WILLFUL INFRINGEMENT AND THE

4    CONSEQUENCES THEREOF FOR -- FOR DAMAGES, IT'S CLEAR THAT THE

5    TAXES ARE OUT IF THERE'S WILLFUL INFRINGEMENT.  THE QUESTION

6    IS ON THE OVERHEAD.  AND -- AND THE SECOND CIRCUIT HAS THIS

7    RATHER ELABORATE NEXUS TEST THAT IS EXTRAORDINARILY

8    DIFFICULT TO TRANSLATE INTO A JURY INSTRUCTION.

9           INTERESTINGLY, IN THE CASES ON THE SECOND CIRCUIT

10   THEY -- AND THAT'S WHERE THE COURT FOUND THE CASE -- WAS

11   THEY MADE REFERENCE TO A NINTH CIRCUIT CASE CALLED FRANK

12   MUSIC CORPORATION VS. MGM, 772 F.2D 505.  THE PIN CITE'S AT

13   515, WHERE THE COURT SEEMED TO EMBRACE THE NOTION THAT, WITH

14   WILLFUL INFRINGEMENT, THAT AN INFRINGER'S OVERHEAD MAY NOT

15   BE DEDUCTED.  THEY DID IT IN A ROUNDABOUT WAY, BASICALLY

16   UPHOLDING THE DEDUCTIONS WHERE THERE WAS A FINDING OF THE

17   INFRINGEMENT NOT BEING WILLFUL AND IMPLYING THAT, IF IT WERE

18   WILLFUL, THAT THE -- THE DEDUCTION WOULD NOT HAVE BEEN

19   UPHELD.

20          BUT THAT'S THE CLOSEST THAT I'VE BEEN ABLE TO FIND

21   TO A NINTH CIRCUIT CASE, BUT I'M GOING TO CONTINUE TO

22   GRAPPLE WITH THAT ISSUE INTO THE EVENING.

23          MR. ROTH:  YOUR -- YOUR HONOR, I -- I APOLOGIZE.

24          THE COURT:  I SAW -- YOU SAID THERE WAS NOTHING

25   MORE, COUNSEL.  I ASKED A COUPLE -- OKAY.  THIS IS IT,

8004

```
 1    THOUGH.
 2              MR. ROTH:  UNDERSTOOD.  UNDERSTOOD.
 3              THE COURT:  THIS IS YOUR LAST -- THIS IS YOUR LAST
 4    STATEMENT ON JURY INSTRUCTIONS.
 5              MR. ROTH:  I APOLOGIZE.
 6              JUST ON THAT EXACT POINT, THERE -- THERE WAS IN
 7    THE CASE, ZZ TOP CASE, THAT ACTUALLY GRAPPLES WITH EXACTLY
 8    THE LANGUAGE IN FRANK MUSIC THAT YOUR -- YOUR HONOR HAS
 9    POINTED TO.  AND IF THAT'S AT ALL HELPFUL, I CAN GIVE YOU
10    THAT CITE.
11              THE COURT:  IT'S A NINTH CIRCUIT CASE?
12              MR. ROTH:  IT'S NOT.  IT'S A DISTRICT -- IT'S A
13    WESTERN DISTRICT CASE, AND IT TALKS ABOUT THAT LANGUAGE
14    IN --
15              THE COURT:  WESTERN DISTRICT OF --
16              MR. ROTH:  OF WASHINGTON.
17              THE COURT:  WHAT'S THE CITE?
18              MR. ROTH:  70 F.SUPP 2D 1167.
19              THE COURT:  1167?
20              MR. ROTH:  1167.  AND IT'S REALLY 1168 AND 1169
21    WHERE IT DISCUSSES THAT EXACT LANGUAGE IN FRANK MUSIC.
22    YOU -- YOU MIGHT FIND IT HELPFUL.
23              THE COURT:  VERY WELL.
24              MR. ROTH:  I APOLOGIZE FOR INTERRUPTING.
25              THE COURT:  COUNSEL?
```

1           MR. PROCTOR:   IF -- IF I MAY RESPOND TO

2   TWO POINTS.   THERE'S -- THERE'S ACTUALLY ANOTHER CASES WHICH

3   ALSO ADDRESSES THE LANGUAGE OF THE FRANK MUSIC CASE.   THAT'S

4   THE SAXON CASE, WHICH IS THE EIGHTH CIRCUIT, WHICH WE CITED

5   IN OUR PAPERS.   I CAN PROVIDE THE CITE IF THE COURT WOULD

6   LIKE.

7           THAT CASE HOLDS APPLYING OR INTERPRETING

8   FRANK MUSIC THAT OVERHEAD IS NOT DEDUCTIBLE.   PER SE, NOT

9   DEDUCTIBLE IN CASES OF WILLFUL INFRINGEMENT.

10          SO THAT'S THAT COURT'S INTERPRETATION OF -- OF THE

11  LANGUAGE IN FRANK MUSIC, WHICH --

12          THE COURT:   I -- I MUST HAVE JUST MISSED YOUR

13  REFERENCE TO FRANK MUSIC, THEN.

14          MR. PROCTOR:   YOU KNOW, FRANKLY, I THINK YOU DID

15  NOT.   I THINK WE -- WE CITED THE SAXON CASE, WHICH CITES

16  FRANK MUSIC, BUT WE -- WE LEFT OUT THE CITE TO FRANK MUSIC.

17          THE COURT:   VERY GOOD.

18          MR. PROCTOR:   THE OTHER POINT THAT I WOULD MAKE ON

19  THIS, BECAUSE THIS IS -- THIS IS AN ISSUE WHICH IS JUST

20  COMING TO THE FOREFRONT RIGHT NOW, WE HAVE -- WE HAVE

21  SERIOUS CONCERNS WITH MGA'S DELAY IN RAISING THESE ISSUES.

22          WE FIRST PROPOSED THE WILLFULNESS INSTRUCTION THAT

23  WE PROPOSED IN OUR FIRST SET OF JURY INSTRUCTIONS BACK IN

24  EARLY MAY, SOME THREE AND A HALF MONTHS AGO.

25          MGA NEVER OBJECTED THAT WHAT WE WERE SAYING THE

                                                      8006

1    LAW WAS, WHAT WE UNDERSTAND THE LAW TO BE, IS NOT THE LAW.

2    THEY NEVER SAID THAT.  THE PARTIES REVISED THEIR JURY

3    INSTRUCTIONS THREE, FOUR TIMES AFTER THAT.  THEY NEVER

4    OBJECTED.

5            AND DURING THE TRIAL -- THE COURT MAY REMEMBER

6    THIS -- WE PUT ON EVIDENCE THROUGH OUR DAMAGES EXPERT THAT,

7    WHERE YOU HAVE WILLFULNESS, YOU DON'T DEDUCT G. AND A.  WE

8    HAVE CHARTS IN EVIDENCE INDICATING THAT, WHERE YOU HAVE

9    WILFULNESS, YOU DON'T DEDUCT G. AND A.  AND OUR DAMAGES

10   EXPERT EFFECTIVELY OPINED ON THAT.

11           AND THEN THE FIRST TIME MGA EVER SAID ANYTHING

12   ABOUT -- ABOUT, YOU KNOW, INTERPRETING THE LAW DIFFERENTLY

13   OR SUGGESTING THAT THE LAW IS CONTRARY TO THAT WAS 5:30 P.M.

14   ON FRIDAY, AFTER THE CLOSE OF EVIDENCE.

15           SO WE HAVE -- I CAN PROVIDE RECORD CITES IF THE

16   COURT WOULD LIKE.  THERE ARE CHARTS SHOWING HOW YOU DON'T

17   DEDUCT G. AND A. IN CASES OF WILLFULNESS, WHICH OUR DAMAGES

18   EXPERT PUT ON.

19           IF MGA WERE PERMITTED NOW TO CHALLENGE THAT, WHAT

20   I FEAR WE'RE GOING TO SEE IN CLOSING IS A FULL FRONTAL

21   ATTACK ON MR. WAGNER, SAYING, "OH, YOU KNOW, LOOK" -- "LOOK

22   WHAT HE TOLD YOU FOLKS.  HERE'S THE CHART HE PUT UP.  HERE

23   THE" -- "HERE'S WHAT" -- "HERE'S HIS TESTIMONY, BUT HERE'S

24   WHAT YOUR HONOR IS SAYING."

25           AND I DON'T THINK THAT'S APPROPRIATE.  THREE AND A

```
 1   HALF MONTHS AGO WAS THE TIME TO MAKE THE OBJECTION.

 2           THE COURT:  I'LL CONSIDER YOUR WAIVER ARGUMENT AS

 3   PART OF THIS WHOLE THING.  I DO WANT TO -- I WILL LOOK AT

 4   THESE CASES AS WELL, AND I'LL -- I'LL TRY TO COME UP WITH

 5   WHAT -- WHAT -- IT WOULD HAVE BEEN GREAT OBVIOUSLY TO HAVE A

 6   CLEAR NINTH CIRCUIT STATEMENT ON THIS.  BUT LACKING THAT,

 7   WE'LL DO THE BEST WE CAN.

 8           ALL RIGHT.  SO THAT IS IT FOR JURY INSTRUCTIONS.

 9           TURNING NOW TO THE VERDICT FORM.  LET'S GO BACK TO

10   THE SPECIFIC EXHIBIT FINDINGS ISSUE LAST 'CAUSE I THINK

11   THAT'S THE MOST DIFFICULT ONE, I THINK, TO ADDRESS.  LET ME

12   TRY TO DEAL WITH SOME OTHER ONES THAT I THINK ARE -- ARE

13   EASIER.

14           I MEAN, THE COURT HAS A KIND OF PARTICULAR FORMAT

15   THAT IT USES ON THESE, WHICH IS A LITTLE DIFFERENT THAN

16   EITHER PARTY SUBMITTED.  BUT I THINK WE'RE BASICALLY IN

17   ACCORD ON THE QUESTIONS CONCERNING DAMAGES FOR -- FOR

18   EXAMPLE, THE TORT CLAIMS, WHETHER THERE'S BEEN COPYRIGHT

19   INFRINGEMENT AND WHETHER IT'S WILLFUL, GROUPING THEM

20   SLIGHTLY DIFFERENT THAN THE PARTIES DID.

21           THE AMOUNT OF DAMAGES TO BE OBTAINED, THE PUNITIVE

22   DAMAGE QUESTION, BOTH THE TRIGGERING QUESTION AS WELL AS THE

23   AMOUNT QUESTION, I DON'T THINK THERE'S MUCH OF A DISPUTE

24   THERE.

25           AGAIN, THE COURT IS TWEAKING SOMEWHAT WITH WHAT
```

```
 1    BOTH PARTIES SUBMITTED, BUT LET ME GO TO A COUPLE AREAS
 2    WHERE I -- I DO HAVE SOME QUESTIONS, AND LET ME BEGIN WITH
 3    MATTEL.
 4            ON YOUR PROPOSED DAMAGES TO COPYRIGHT, AS OPPOSED
 5    TO MGA'S, WHICH SIMPLY CALLS FOR THE AMOUNT FOR THE VARIOUS
 6    CATEGORIES, YOU BREAK IT DOWN BY DEFENDANT, COPYRIGHT
 7    INFRINGEMENT BY MGA, BY ISAAC LARIAN, AND BY MGA HONG KONG.
 8            WITH RESPECT TO ISAAC LARIAN, YOU'VE SPECIFIED THE
 9    DISTRIBUTIONS MR. LARIAN RECEIVED FROM MGA AND THE VALUE OF
10    MR. LARIAN'S OWNERSHIP PERCENTAGE OF BRATZ.
11            I PRESUME THAT IS THERE TO AFFORD THE COURT THE
12    OPPORTUNITY TO AVOID THE DOUBLE-COUNTING.
13            MR. PROCTOR:  THAT'S -- THAT'S -- IT'S -- THAT'S
14    EXACTLY -- WELL, LET ME -- LET ME PUT, PERHAPS, A FINER
15    POINT ON IT.
16            THAT IS THERE IN LIGHT OF THE PROSPECT OF AN
17    INJUNCTION.  AS TO -- AS TO MR. LARIAN, THERE ARE THE
18    TWO MEASURES OF POTENTIAL DAMAGES.  ONE OF THEM IS THE
19    INCREASE IN VALUE OF, EFFECTIVELY, THE BRATZ FRANCHISE OR
20    THE BRATZ BRAND AS ASSOCIATED WITH HIM.  AND THERE IS THIS
21    ISSUE WHICH IS, YOU KNOW, LOOMING SLIGHTLY SOMEWHAT EVEN IN
22    EVIDENCE ABOUT, WELL, WHAT IF THE COURT IMPOSES AN
23    INJUNCTION AND THAT VALUE DISSIPATES?
24            AND IN ORDER TO PERMIT THE COURT, AFTER THE FACT,
25    TO ADDRESS -- IN ORDER TO -- IN ORDER TO HAVE A FORM WHICH
```

8009

```
 1   MAKES CLEAR WHAT THE JURY IS AWARDING AS PAST DAMAGES AND
 2   FUTURE DAMAGES, THAT IS THE REASON FOR SEPARATE QUESTIONS AS
 3   TO MR. LARIAN.
 4           MGA, EVERYTHING WE'VE SOUGHT ARE EFFECTIVELY PAST
 5   DAMAGES, AND SO THERE'S NO NEED FOR SEPARATE QUESTIONS.
 6           THE COURT:  ALL RIGHT.  DOES MGA HAVE A PARTICULAR
 7   STRONG FEELING ABOUT THAT ONE WAY OR THE OTHER?
 8           MR. ROTH:  JUST A MINOR POINT BEFORE I GET TO THAT
 9   SUBJECT.
10           I THINK THERE'S -- ON THEIR QUESTION 11 IS A
11   SLIGHT MISSTATEMENT OF THEIR DAMAGE THEORY.  AS MEASURED BY
12   THE VALUE OF MR. LARIAN'S OWNERSHIP INTEREST IN MGA, IT'S
13   ACTUALLY MR. LARIAN'S OWNERSHIP IN THE BRATZ FRANCHISES.
14   THAT'S -- THAT'S THE THEORY THAT'S BEEN ARTICULATED BY
15   MR. WAGNER.
16           THE COURT:  WELL, YEAH, BUT HE'S -- THE WAY
17   THAT -- THE VALUE OF MR. LARIAN'S OWNERSHIP PERCENTAGE OF
18   MGA --
19           MR. ROTH:  NO, I THINK --
20           THE COURT:  -- OF BRATZ.
21           MR. ROTH:  NO.  I THINK THE WAY -- THE THEORY
22   ESPOUSED BY MR. WAGNER IS MR. LARIAN'S INTEREST IN WHAT HE
23   CALLS THE BRATZ FRANCHISE.  THAT'S THE DAMAGE THERE.  IT'S
24   NOT --
25           THE COURT:  RIGHT.
```

8010

```
 1              MR. ROTH:  IT'S NOT -- IT'S NOT MR. LARIAN'S
 2    INTEREST IN MGA.  SO I --
 3              THE COURT:  I THINK THAT'S CORRECT.
 4              MR. ROTH:  I THINK THAT -- THAT QUESTION 11 IS
 5    ACTUALLY MISSTATES -- MISSTATES --
 6              THE COURT:  I'LL REWORD IT SINCE I DON'T HAVE WHAT
 7    THE ORIGINAL MGA -- MATTEL SUBMISSION WAS.  BUT THERE'S THE
 8    DISTRIBUTIONS MR. LARIAN RECEIVED FROM MGA RELATED TO BRATZ.
 9    THEN ORIGINALLY, HOW YOU SUBMITTED IT, COUNSEL, WAS JUST
10    DISTRIBUTIONS RECEIVED FROM MGA, AND THAT'S NOT -- THAT'S
11    NOT IT.  IT'S -- IT'S MGA DISTRIBUTIONS RELATED TO THE BRATZ
12    LINE.
13              MR. PROCTOR:  CORRECT.  THAT'S MISSTATED.
14              THE COURT:  AND THEN THE VALUE OF MR. LARIAN'S
15    OWNERSHIP IN THE BRATZ PORTION OF MGA.
16              MR. ROTH:  THAT IS A CORRECT.  THAT IS HOW IT
17    SHOULD --
18              THE COURT:  WITH THAT, RIGHT.  RIGHT.
19              MR. ROTH:  YES.  AND I -- AND I UNDERSTAND THAT --
20    THAT -- THAT THEY'RE ATTEMPTING TO DO THAT TO AVOID --
21    AVOID -- WELL, TO PROVIDE THE COURT INFORMATION TO MAKE THE
22    CORRECTIONS NECESSARY IF IT IS VIEWED THAT THOSE DAMAGE
23    AWARDS ARE -- ARE DUPLICATIVE.
24              SO I THINK THE QUESTION -- I UNDERSTAND
25    MR. PROCTOR'S STATEMENT IS THAT QUESTION 11 IS A FUTURE
```

```
 1   DAMAGES CONCEPT.  I MEAN, THAT IS THE WAY IT WAS ARTICULATED
 2   BY-- BY MATTEL WHEN WE WERE DEALING WITH THE INJUNCTION
 3   ISSUE TWO WEEKS AGO.
 4             SO I ASSUME THAT'S YOUR POINT AS TO WHY IT'S
 5   SEPARATE?
 6             THE COURT:  WHAT IS SEPARATE?  THE VALUE OF THE --
 7             MR. ROTH:  WHY THEY'RE SEPARATING OUT FROM
 8   MR. LARIAN.  THAT IS A SEPARATE QUESTION BECAUSE THAT'S A
 9   FUTURE DAMAGES CONCEPT.
10             THE COURT:  WELL, THE DISTRIBUTIONS CLEARLY ARE
11   PAST.  THE VALUE IS -- I DON'T KNOW IF IT'S SO MUCH FUTURE
12   AS IT IS PRESENT.
13             MR. ROTH:  I -- I BELIEVE THAT THEY STATED ON THE
14   RECORD THAT THAT IS A FUTURE DAMAGES --
15             THE COURT:  LET'S HEAR FROM MR. PROCTOR ON THAT.
16             MR. PROCTOR:  IT IS A MEASURE OF -- IT IS A
17   PRESENT VALUE BUT AN UNREALIZED VALUE.
18             AND SO -- YOU KNOW, MR. LARIAN HAS NOT SOLD MGA,
19   SO HIS PERCENTAGE OWNERSHIP HAS NOT BEEN REALIZED DEPENDING
20   ON WHAT HAPPENS AFTER THE JURY VERDICT COMES DOWN.  AND
21   AFTER THE COURT, YOU KNOW, EITHER DOES OR DOES NOT ISSUE AN
22   INJUNCTION.  IF THE COURT ISSUES AN INJUNCTION, THAT PRESENT
23   VALUE COULD BE CHANGED.  BUT IT -- IT IS A PRESENT VALUE.
24   IT'S NOT A FUTURE VALUE, BUT IT IS UNREALIZED.
25             THE COURT:  ALL RIGHT.  OKAY.
```

1           AND THEN THE LAST ISSUE NOW IS THE -- IS THE --

2    THE EXHIBITS.

3           WHAT THE JURY IS GOING TO BE CONSIDERING PURSUANT

4    TO THE INSTRUCTIONS ARE THE -- WHAT THEY DETERMINE TO BE THE

5    COPYRIGHTED WORKS OWNED BY MATTEL.  AND THAT OWNERSHIP IS

6    PREDICATED ON AT LEAST TWO PIECES OF EVIDENCE OR

7    TWO FINDINGS.

8           ONE, THEIR FINDINGS RELATED TO THE TIMING OF THE

9    WORKS IN QUESTION, WHICH WAS IDENTIFIED IN PHASE 1-A OR

10   PHASE A, AS WE'RE CALLING IT NOW, COMBINED WITH THE

11   COPYRIGHT REGISTRATIONS THAT WERE SUBMITTED INTO EVIDENCE IN

12   BOTH PHASE A AND B.  THAT IS THE -- THE BASIS, AS I

13   UNDERSTAND IT, UPON WHICH THE JURY CAN FIND THAT MATTEL HAS

14   A COPYRIGHT INTEREST, SOMETHING TO INFRINGE OR TO HAVE BEEN

15   INFRINGED BY MGA.

16          IS THAT YOUR UNDERSTANDING, MR. PROCTOR?

17          MR. PROCTOR:  THAT'S CORRECT.

18          THE COURT:  IS THAT MGA'S UNDERSTANDING?

19          MS. AGUIAR:  SUBJECT TO THE DISCUSSION THAT WE HAD

20   ON THE RECORD THE OTHER DAY REGARDING WHAT THE COPYRIGHTED

21   DRAWINGS ARE.  I MEAN --

22          THE COURT:  RIGHT.

23          MS. AGUIAR:  -- WE HAD THAT BACK AND FORTH THE

24   OTHER DAY REGARDING --

25          THE COURT:  EXACTLY.  AND -- AND WHERE THE COURT

                                                            8013

1    COMES OUT ON THAT, FRANKLY, IS THAT THAT ANYTHING THAT'S

2    BEEN SUBMITTED, THE REGISTRATIONS THAT HAVE BEEN SUBMITTED

3    INTO EVIDENCE ARE THE REGISTRATIONS, AND THAT GOES BEYOND

4    THE ORIGINAL 16.  AND I UNDERSTAND THAT.

5            AND I UNDERSTAND YOUR ARGUMENTS, AND I UNDERSTAND

6    MATTEL'S ARGUMENT.  BUT, YES, SUBJECT TO THAT OBJECTION,

7    WHICH YOU PRESERVE FOR THE RECORD, THAT -- THAT'S THE BASIS

8    UPON WHICH THE JURY IS GOING TO BE EVALUATING THE COPYRIGHT

9    INFRINGE.

10           MS. AGUIAR:  THAT IS MY UNDERSTANDING, SUBJECT TO

11   OUR OBJECTIONS, YES.

12           THE COURT:  VERY WELL.

13           OKAY.  SO NOW THE QUESTION IS WHAT PRODUCT ARE

14   THEY COMPARING THAT TO?  IN AN IDEAL WORLD, WE WOULD HAVE

15   ALL OF THE PRODUCT BEFORE THE JURY.  WE DON'T.  AND THE

16   RECORD EXPLAINS WHY WE DON'T.  WHAT WE HAVE IS, DEPENDING ON

17   WHOSE ESTIMATE IS USED, HALF, THREE-QUARTERS, SEVEN-EIGHTH,

18   WHATEVER OF THE PRODUCT AND A STIPULATION THAT ALL THE

19   PRODUCT THAT'S NOT BEFORE THE JURY IS REPRESENTATIVE -- OR

20   REPRESENTED BY WHAT WE DO HAVE BEFORE THE JURY.

21           AND IT'S ON THAT PRODUCT THAT THE JURY IS TO BE --

22   IS BEING INSTRUCTED AS TO WHETHER OR NOT THERE IS A

23   SUBSTANTIAL SIMILARITY, USING THE EXTRINSIC TEST INITIALLY

24   AND THEN THE INTRINSIC TEST, TO DETERMINE WHETHER OR NOT A

25   COPYRIGHT INFRINGEMENT HAS BEEN -- HAS TAKEN PLACE.

                                                      8014

```
 1              AND THEN, BASED ON A COPYRIGHT INFRINGEMENT, IF
 2    THEY FIND A COPYRIGHT INFRINGEMENT HAS TAKEN PLACE WITH
 3    RESPECT TO SOME, MOST, OR ALL OF THAT PRODUCT, THEY WILL
 4    THEN CONDUCT A DAMAGES ANALYSIS TO DETERMINE WHAT AMOUNT OF
 5    DAMAGES COMPENSATES MATTEL FOR BOTH THE DIRECT INFRINGEMENT
 6    AND THE INDIRECT INFRINGEMENT OF THOSE COPYRIGHTS HELD BY
 7    MATTEL.  AND THEN THAT IS THE CALCULUS THAT THEY ARE TO
 8    PERFORM.  THAT'S MY UNDERSTANDING OF HOW THIS PLAYS OUT.
 9              SO GETTING BACK TO THE QUESTION OF THE EXHIBITS,
10    TO PUT THE LIST OF EXHIBITS OR NOT TO PUT THE LIST OF
11    EXHIBITS.  IN FAVOR OF PUTTING THE LIST WAS, AS THE COURT
12    PERHAPS INARTFULLY EXPRESSED THIS MORNING, IS THIS KIND OF
13    ASSURANCE THAT THE JURY IS KIND OF DOING WHAT WE WANT THEM
14    TO DO, THAT THEY'RE ACTUALLY LOOKING AT THE INDIVIDUAL
15    PRODUCTS AND DOING THE SUBSTANTIVE SIMILARITY TEST.
16              I ALSO POSITED, BUT I'M HAVING TROUBLE --
17    INCREASINGLY TROUBLE ARTICULATING WHY IT IS THAT THIS WOULD
18    BE HELPFUL TO THE COURT TAILORING AN INJUNCTIVE REMEDY.  I
19    COULD SEE THAT IF I HAD ALL THE PRODUCT BEFORE ME.  BUT AT
20    THE END OF DAY, I KIND OF CAME TO THE REALIZATION THIS
21    AFTERNOON, WHICH WAS DISTURBING, IS THAT I'M GOING TO HAVE
22    TO RE-EVALUATE ALL THE PRODUCTS MYSELF BEFORE I CAN MAKE THE
23    INJUNCTIVE FINDINGS OR GRANT THE INJUNCTIVE RELIEF.  I AM
24    NOT GOING TO BE ABLE TO RELY UPON A JURY VERDICT OR A JURY
25    QUESTIONING WHICH SIMPLY ANSWERS THE QUESTION WITH RESPECT
```

```
 1    TO SOME BUT NOT ALL.
 2              I CERTAINLY WOULDN'T BE SATISFIED REPRESENT --
 3    RELYING ON A STIPULATION BY THE PARTIES THAT THESE ARE
 4    REPRESENTATIVE OF THE -- I MEAN, I'M GOING TO HAVE TO DO
 5    THAT MYSELF.  SO IT'S NOW NOT -- AND THEN WHAT -- WHAT
 6    HAPPENS IF I -- FOR EXAMPLE, IF THE JURY FINDS SUBSTANTIAL
 7    SIMILARITY, BUT I, BASED ON THE EVIDENCE, DON'T FIND
 8    SUBSTANTIAL SIMILARITY, THEN WHAT DO I DO?
 9              MS. AGUIAR:  WELL, I -- MAY I JUST CLARIFY THAT --
10              THE COURT:  PLEASE.
11              MS. AGUIAR:  -- WHEN -- WHEN MR. PROCTOR SAID THAT
12    THE PRODUCTS ARE NOT -- YOU DON'T HAVE ALL OF THE PRODUCTS.
13    LET ME TRY TO CLARIFY --
14              THE COURT:  PLEASE.
15              MS. AGUIAR:  -- TO THE EXTENT THAT I AM --
16              THE COURT:  MAYBE I MISUNDERSTOOD THAT.
17              MS. AGUIAR:  NO, NO, NO.  I'M NOT SAYING THAT YOU
18    MISUNDERSTOOD.  I JUST WANT TO MAKE SURE THAT I MAKE IT AS
19    CLEAR AS POSSIBLE.
20              WITH REGARD TO THE FIRST GENERATION DOLLS --
21              THE COURT:  THAT ARE THERE.
22              MS. AGUIAR:  -- THAT'S STRAIGHTFORWARD.
23              THE COURT:  WE GOT IT.
24              MS. AGUIAR:  WE KNOW THAT THERE ARE FOUR, WE KNOW
25    WHAT THEIR NAMES ARE.
```

```
 1              THE COURT:  RIGHT.

 2              MS. AGUIAR:  WITH REGARD TO THE LATER GENERATION

 3   DOLLS, YOU HAVE, TO THE BEST OF OUR KNOWLEDGE, BASED ON THE

 4   COMPANY'S RECORDS, YOU HAVE THE IDENTITY OF ALL OF THE

 5   THEMES OF LATER GENERATION DOLLS STARTING FROM, LET'S SAY,

 6   SPRING OF 2002, WHICH I BELIEVE IS WHEN THE NEXT GENERATION

 7   CAME OUT --

 8              THE COURT:  OKAY.

 9              MS. AGUIAR:  -- THROUGH TILL -- TILL THE PRESENT,

10   I BELIEVE.

11              SO WHAT -- SO -- SO IT WOULD BE -- IT WOULD BE

12   DISINGENUOUS TO SAY, WITH REGARD TO THAT CATEGORY, THAT

13   YOU -- YOU WOULDN'T HAVE DIRECTION FROM THE JURY IF THEY

14   CHECKED YES OR NO WITH REGARD TO THOSE THEMES BECAUSE THOSE

15   REPRESENT THE -- THE UNIVERSE, AS WE UNDERSTAND IT, OF,

16   QUOTE, LATER GENERATION DOLLS.

17              AND SO, WHEN WE SAY -- WHEN THERE'S A THEME, "BACK

18   TO SCHOOL," LET'S SAY, AND THE EXAMPLE WE GAVE IS TRIAL

19   EXHIBIT 17517, WHAT THAT MEANS IS THAT, FOR THAT THEME OF

20   DOLL FOR THAT YEAR, THAT TRIAL EXHIBIT MAY REPRESENT ONE

21   CHARACTER OF THAT THEME.  BUT THAT THEME HAS THE SAME

22   PACKAGING, AND -- AND THE CHARACTERS ARE GENERALLY WEARING

23   THE SAME GENRE OF CLOTHING WITHIN THAT THEME.

24              SO --

25              THE COURT:  IS THAT A PREDICATE FOR ME TO, LET'S

                                                        8017
```

1   SAY DOING THE INJUNCTIVE RELIEF, MAKE A FINDING THAT,

2   BECAUSE THE PARTIES HAVE STIPULATED THAT IT'S

3   REPRESENTATIVE, IF THE COURT FINDS THAT IT EITHER IS OR IS

4   NOT SUBSTANTIALLY SIMILAR, THE ONE EXAMPLE, IF I CONCUR,

5   LET'S SAY, FOR EXAMPLE, WITH THE -- WITH THE JURY'S FINDING,

6   THAT IPSO FACTO THE OTHER THREE, FOUR, FIVE CHARACTERS, HOW

7   MANY THERE ARE IN THAT SERIES, ARE ALSO SUBSTANTIALLY

8   SIMILAR?

9           MS. AGUIAR:  I THINK THAT'S RIGHT, YES.

10          SO -- SO THIS IS WHY I'M SAYING, YOU KNOW, WHEN

11  MR. PROCTOR SUGGESTED, "WELL, IT'S A PROBLEM BECAUSE WE

12  DON'T HAVE ALL THE PRODUCT," THAT WAS THE REASON WHY WE DID

13  THE STIPULATION AS WE DID.

14          SO, FOR EXAMPLE, I'M NOT GOING TO STAND UP HERE

15  AND SAY, "WELL, YOUR HONOR, THEY CHECKED YES FOR" --

16          THE COURT:  I -- I SHOULDN'T TAKE ANYTHING BY THE

17  FACT THAT YOU USED THE WORD "REPRESENTATIVE" AND NOT

18  "SUBSTANTIALLY SIMILAR" IN YOUR -- IN YOUR STIPULATION?

19          MS. AGUIAR:  I THINK THEY'RE TWO -- THEY'RE TRYING

20  TO REPRESENT TWO DIFFERENT IDEAS.

21          WHEN -- WHEN WE'RE SAYING THEY'RE REPRESENTATIVE,

22  IT JUST MEANS THAT WE MAY NOT HAVE BROUGHT IN EACH PACKAGE

23  WITH EACH CHARACTER WITHIN EACH THEME.

24          THE COURT:  OKAY.  BUT DO YOU -- DO YOU UNDERSTAND

25  THE POINT OF THE COURT'S QUESTION?  I MEAN --

1             MS. AGUIAR:  I DO.

2             THE COURT:  IF YOU HAD -- IF YOU HAD SAID THAT

3    THEY'RE SUBSTANTIALLY SIMILAR AND -- AND YOU HAD STIPULATED

4    TO THAT AND ALL THE PARTIES STIPULATED TO THAT, THEN I COULD

5    ACCEPT THAT AS TRUE, AND THEN THEY WOULD BE OF NO MOMENT.

6             I MEAN, IF YOU COULD TAKE -- YOU COULD TAKE HUGE

7    SWATCHES OF THESE PRODUCTS OUT OF THE COURT'S CONCERN IF

8    THERE'S SIMPLY A STIPULATION THAT THEY'RE ALL SUBSTANTIALLY

9    SIMILAR BECAUSE THEN, IF I FIND ONE IS SUBSTANTIALLY

10   SIMILAR, THEN THE OTHERS -- AND THEN IF ONE OR MORE IS NOT

11   SUBSTANTIALLY SIMILAR, AND THE OTHERS ARE SUBSTANTIALLY

12   SIMILAR, I SUPPOSE REASON WOULD DICTATE THAT THE OTHERS ARE

13   NOT SUBSTANTIALLY SIMILAR.

14            MS. AGUIAR:  RIGHT.  AND SO, WHEN WE'RE SAYING

15   THAT THEY'RE REPRESENTATIVE, IT'S JUST SAYING, LOOK, IF YOU

16   LOOK AT THIS ONE CAMPFIRE BRATZ FROM WHATEVER YEAR, THE

17   STIPULATION WASN'T INTENDED TO SAY ALL THE OTHER DOLLS THAT

18   HAVE THE THEME CAMPFIRE BRATZ ARE SUBSTANTIALLY SIMILAR TO

19   THE ONE WE SHOWED YOU.  IT'S MEANT TO SAY, LOOK, IN LIEU OF

20   BRINGING IN -- WHATEVER THE NUMBER IS -- THOUSANDS, WE

21   BROUGHT IN 800 TANGIBLE ITEMS TO MAKE IT MORE WORKABLE.

22            SO I ACTUALLY THINK IT -- IT'S INCORRECT TO SAY

23   THAT THE WAY THAT THIS IS BROKEN OUT DOESN'T ULTIMATELY HELP

24   YOU BECAUSE YOU'LL HAVE TO LOOK AT THE PRODUCTS.  I THINK

25   THAT'S WRONG.  I -- I THINK THAT THE WAY THAT WE'VE

1   PRESENTED IT -- AND I'M JUST TAKING THAT -- THAT

2   ONE CATEGORY FOR NOW.

3           THE COURT:  SO YOU'RE SAYING I WON'T HAVE TO

4   ULTIMATELY LOOK AT THE PRODUCTS.

5           MS. AGUIAR:  RIGHT.  ABSO -- YES, THAT IS WHAT I'M

6   SAYING.

7           THE COURT:  OKAY.

8           MS. AGUIAR:  AND NOW THAT WOULD BE FOR THE LATER

9   GENERATION DOLLS.  LET'S MOVE -- AND THEN, IF WE MOVE ON

10  TO --

11          THE COURT:  THE PRODUCTS OF --

12          MS. AGUIAR:  -- THE OTHER PRODUCT LINES, BOYS, FOR

13  EXAMPLE.  THEY'RE GOING TO -- THEY'RE GOING TO FIND THAT THE

14  BOYS PRODUCT LINE EITHER DOES OR DOES NOT INFRINGE.  AND I

15  DO NOT FORESEE US COMING IN AND SAYING TO YOU, "WELL, NOW WE

16  WANT TO ARGUE TO YOU THAT DYLAN BOY MAY INFRINGE, BUT

17  CAMERON BOY DOES NOT."  THAT I DON'T FORESEE BEING AN

18  ARGUMENT THAT WE MAKE.

19          AND -- AND SO WE HAVE BROKEN THESE DOWN BY LINE,

20  BY PRODUCT LINE, SO THAT IF THEY FIND THAT A PRODUCT LINE

21  INFRINGES, MY UNDERSTANDING IS THAT THAT'S A FINDING THAT

22  THE PRODUCTS -- THAT ALL OF PRODUCTS WITHIN THAT LINE WOULD

23  INFRINGE.

24          THE COURT:  OKAY.

25          MS. AGUIAR:  SO -- SO I THINK THAT MAYBE WE DIDN'T

8020

```
 1    MAKE IT CLEAR ENOUGH WHAT THIS -- WHAT THIS REPRESENTS.  SO
 2    MAYBE THAT'S A BAD WORD TO USE.  BUT WHAT -- WHAT YOU HAVE
 3    HERE, I ACTUALLY THINK YOU HAVE HERE A VERY -- A PRETTY --
 4    PRETTY SPECIFIC BREAKDOWN OF ALL THE PRODUCTS SO THAT THE
 5    JURY CAN SAY, BASED ON X OR Y FACTOR --
 6              THE COURT:  THIS IS SPECIFICALLY THE WHOLE
 7    FOUNTAIN OF EXPERIENCE.
 8              MS. AGUIAR:  EXACTLY.
 9              AND YOUR HONOR ASKED ME EARLIER, AND MAYBE THIS
10    WAS THE MOST OBVIOUS ANSWER.  YOU SAID, "WHY DOES THE JURY
11    HAVE TO DO THIS?"
12              THE COURT:  RIGHT.
13              MS. AGUIAR:  THEY DIDN'T BRING A CLAIM THAT JUST
14    ONE PRODUCT INFRINGED THE DRAWINGS.  I MEAN, THIS IS -- THIS
15    IS A CASE THAT HAS MULTIPLE COPYRIGHT CLAIMS BUILT INTO IT.
16              THE COURT:  WELL, LET ME JUST THROW THIS OUT --
17              MS. AGUIAR:  AND --
18              THE COURT:  -- I MEAN, THESE ARE ALL KIND OF
19    HYPOTHETICAL THINGS, BUT LET'S SAY THE JURY FINDS NOTHING
20    MORE THAN THE FIRST FOUR -- THE FIRST GENERATION TO ACTUALLY
21    DIRECTLY INFRINGE THE COPYRIGHT.
22              MS. AGUIAR:  OKAY.
23              THE COURT:  BUT, TO MATTEL'S BENEFIT, THEY FIND
24    THAT EVERYTHING ELSE INDIRECTLY -- THAT THERE'S AN INDIRECT
25    DAMAGE OR INDIRECT -- A SUFFICIENT CAUSATION BETWEEN THE --
```

```
 1    THE DRAWINGS OR THE COPYRIGHTED MATERIALS AND THE -- AND
 2    EVERYTHING ELSE, THAT THE INDIRECT PROFITS FROM EVERYTHING
 3    ELSE GOES TO MATTEL'S -- MATTEL'S WAY.
 4            CONVERSELY, THEY COULD FIND, AGAIN, IF THIS WERE
 5    TO MATTEL'S BENEFIT, FIND THAT EVERYTHING DIRECTLY
 6    INFRINGED.  THE END RESULT OF EITHER, IN TERMS OF DAMAGES,
 7    WOULD ESSENTIALLY BE THE SAME, WHATEVER IT IS, BECAUSE THE
 8    DIRECT OR THE INDIRECT, ASSUMING THAT THEY FOUND THAT, IT'S
 9    PURELY HYPOTHETICAL.
10            MS. AGUIAR:  RIGHT.
11            THE COURT:  THEY COULD ALSO FIND, CONVERSELY,
12    THAT -- THAT THE FIRST GENERATION INFRINGES, BUT NONE OF THE
13    REST DOES, AND NONE OF THE REST IS PROPERLY ATTRIBUTED TO
14    MATTEL FOR INDIRECT PROFITS.
15            MS. AGUIAR:  RIGHT.  I -- I GUESS MY REACTION TO
16    THAT IS WHY WOULDN'T WE WANT MORE INFORMATION FROM THIS JURY
17    RATHER THAN LESS --
18            THE COURT:  WELL, I'M NOT SURE -- YOU TOOK THE
19    WORDS OUT OF MY MOUTH.  WHAT DOES HAVING THEM CHECK ALL
20    THOSE BOXES DO TO EITHER RESULT?
21            MS. AGUIAR:  BUT I THINK --
22            THE COURT:  DOES IT CHANGE EITHER RESULT?
23            MS. AGUIAR:  WELL, I THINK THAT THEY -- I THINK
24    THE -- THE ANSWER IS THAT THEY HAVE -- THIS VERDICT FORM IS
25    ADDRESSING THE LEGAL CLAIMS THAT HAVE BEEN BROUGHT BY
```

```
 1   MATTEL.  AND THEY HAVE BROUGHT A COPYRIGHT CLAIM.  AND THEY
 2   ARE ALLEGING THAT A NUMBER OF DIFFERENT PRODUCTS INFRINGE
 3   THE SAME DRAWINGS.
 4         THE COURT:  EITHER DIRECTLY OR INDIRECTLY, EITHER
 5   DIRECTLY OR AS A DERIVATIVE PRODUCT --
 6         MS. AGUIAR:  RIGHT.  BUT WHY WOULD WE NOT WANT THE
 7   INFORMATION FROM THE JURY ON THE COPYRIGHT CLAIM ITSELF, ON
 8   THE LEGAL CLAIM OF COPYRIGHT?
 9         THE COURT:  BUT WHY DO WE -- WHY ARE WE DRAWING
10   THE LINE JUST ONE DIRECT INFRINGEMENT?  THEN SHOULD WE NOT
11   ALSO ASK WHETHER THIS IS -- DO YOU FIND THIS IS DERIVATIVE
12   OR NOT DERIVATIVE, WHETHER THIS IS INDIRECT OR NOT DIRECT?
13   WHY ARE WE DRAWING THIS LINE IN THE SAND ABOUT DIRECT
14   INFRINGEMENT?
15         AND THE WAY YOU WANT TO -- THE WAY MGA WANTS TO
16   STRUCTURE THE -- THE VERDICT FORM WAS, I THINK, IS -- IS NOT
17   REALLY AS MISLEADING BY SIMPLY HAVING THEM ANSWER "YES" OR
18   "NO" ON DIRECT INFRINGEMENT AND THEN HAVING THEM DO A --
19   WHAT -- WHAT IS THE INFRINGEMENT WORTH?  BECAUSE THAT REALLY
20   SUGGESTS THAT, IF THERE'S NOTHING THAT'S DIRECTLY
21   INFRINGING, THEN IT'S WORTH -- WORTH ZERO.
22         I'M GOING TO SEPARATE THE DAMAGES FROM THIS DIRECT
23   INFRINGEMENT QUESTIONS IF I INCLUDE THE DIRECT INFRINGEMENT
24   QUESTIONS.  BUT IF WE'RE GOING TO INCLUDE THE ISSUE OF
25   DIRECT INFRINGEMENT, WHY -- WHY AREN'T WE ASKING THEN:
```

8023

1    WELL, DO YOU FIND IT'S DERIVATIVE OR DO YOU FIND IT'S

2    INDIRECT?

3            MS. AGUIAR:  WELL, BECAUSE I THINK THEY'RE

4    DIFFERENT QUESTIONS.  I MEAN HERE, IN THE COPYRIGHT

5    ANALYSIS, THE JURY ACTUALLY DOES HAVE TO DETERMINE, FOR EACH

6    INFRINGING PRODUCT:  OKAY, I'M LOOKING AT THE FIRST

7    GENERATION DOLL, AND I'M LOOKING BACK AT THE DRAWING.  DOES

8    THAT INFRINGE?  I'M LOOKING AT A -- A THEME FROM 2005, AND I

9    NEED TO LOOK BACK AT THE DRAWING TO DETERMINE WHETHER

10   THAT --

11           THE COURT:  BUT THAT'S NOT ALL.  THAT'S NOT THE

12   END OF THEIR ANALYSIS.  I MEAN, THEY MAY FIND THAT, NO, IT

13   DOES NOT DIRECTLY INFRINGE, BUT IT'S DERIVATIVE; RIGHT?

14           MS. AGUIAR:  I SUPPOSE THEY COULD -- YES, THEY

15   COULD FIND THAT.

16           THE COURT:  I CERTAINLY HOPE SO BECAUSE THEY'RE

17   GOING TO BE INSTRUCTED --

18           MS. AGUIAR:  RIGHT.

19           THE COURT:  -- TO ANSWER IT ONE WAY OR THE OTHER.

20           MS. AGUIAR:  RIGHT.

21           THE COURT:  I MEAN, I DON'T CARE HOW THEY FIND,

22   BUT, I MEAN, I HOPE THEY LISTEN TO ALL THE COURT'S

23   INSTRUCTIONS.

24           MS. AGUIAR:  I HAVE NO REASON TO BELIEVE THEY --

25   THEY WON'T.  I MEAN --

                                                   8024

1            THE COURT:  WE ALMOST ASSUME THAT THEY WILL.

2            MS. AGUIAR:  UP -- UP UNTIL NOW, BOTH PARTIES,

3  INCLUDING MATTEL, HAVE -- HAVE TAKEN THE TACK -- AND I --

4  AND I -- AND I UNDERSTAND MAYBE WHY NOW THEY DON'T WANT THIS

5  BECAUSE THEY JUST WANT TO SAY WAS THERE INFRINGEMENT?  AND

6  WE'LL NEVER KNOW.  WAS IT THE FIRST GENERATION?  WAS IT ALL

7  OF THE FASHION DOLLS?  WAS IT -- WAS IT WAS THE NET CAST

8  EVEN WIDER?

9            THE COURT:  I AGREE WITH YOU, COUNSEL.  I'M WITH

10  YOU ON -- ON HAVING -- WHEN I FIRST APPROACHED THIS, WHEN I

11  FIRST LOOKED AT THIS -- AND PERHAPS I DIDN'T LOOK AT IT AS

12  CAREFULLY AS I SHOULD -- I ASSUMED THAT WE HAD -- AND I -- I

13  DON'T KNOW WHY I DIDN'T PICK UP ON THAT STIPULATION.

14            I ASSUMED WE HAD ALL THE PRODUCTS.  I THOUGHT

15  EVERYTHING WAS OUT THERE, UP ON THE FOURTH FLOOR.  BUT I

16  GUESS NOW I UNDERSTAND WHERE THAT STIPULATION FITS IN, AND

17  IT WASN'T.

18            SO I INITIALLY THOUGHT, YES, LET'S HAVE ALL THE

19  PRODUCTS, AND LET'S HAVE THE COURT -- HAVE THE JURY ENGAGE

20  IN THE FULL QUESTIONING.  BUT WE'RE LEAVING A LOT OF

21  QUESTIONS UNANSWERED.  AND I CAN SEE -- YOU KNOW, IT GETS

22  BACK TO THIS -- I DON'T KNOW WHO IT WAS THAT TALKS ABOUT IT,

23  WHOSE -- WHOSE OX IS GETTING GORED, AND YOU SAID YOU DON'T

24  KNOW WHICH WAY IT GOES.

25            BUT IT'S STARTING TO BECOME APPARENT THAT SOME

```
 1    QUESTIONS CERTAINLY FAVOR MGA.  SOME QUESTIONS CERTAINLY
 2    FAVOR MATTEL IN TERMS OF WHAT THE JURY ANSWERS.
 3              I MEAN, I -- I CAN SEE WHY MGA DOESN'T WANT TO
 4    HAVE A DERIVATIVE QUESTION, JUST LIKE I CAN SEE WHY MATTEL
 5    DOESN'T WANT TO HAVE A DIRECT INFRINGEMENT QUESTION, BECAUSE
 6    THEIR THEORY ENCOMPASSES MORE THAN DIRECT INFRINGEMENT,
 7    AND -- AND YOUR TAKE, BASICALLY, IS TRYING TO HOLD THE LINE
 8    AT DIRECT INFRINGEMENT.
 9              I MEAN, I -- I SEE WHAT BOTH SIDES ARE TRYING TO
10    ACCOMPLISH THROUGH THIS.  AND I'M TRYING TO DO A VERDICT
11    FORM THAT DOESN'T FAVOR EITHER SIDE.  AND THAT'S NOT AN EASY
12    THING TO DO.
13              MS. AGUIAR:  WELL, I APPRECIATE THAT.  BUT -- BUT
14    WHEN MR. PROCTOR WAS TRYING TO ARTICULATE WHY WE SHOULD NOT
15    ACTUALLY HAVE THE PRODUCTS LISTED ON THE VERDICT FORM, HE
16    SAID, YOU KNOW, I'M -- SOMETHING TO THE EFFECT OF, "WELL, IF
17    THEY START CHECKING NO FOR SOME OF THE BOXES, AND THEN THEY
18    GET TO OUR INDIRECT PROFITS CLAIM, WELL, MAYBE THEY'LL THINK
19    WE'RE NOT ENTITLED TO PROFITS ON THAT."
20              WELL, I APPRECIATE THAT.  HE'S SAYING HE HAS A
21    CONCERN BECAUSE MATTEL MIGHT NOT GET -- GET AS MANY
22    PROFITS -- MAY NOT GET AS MANY DAMAGES.  AND I --
23              THE COURT:  AND I -- AND I REJECTED THAT BECAUSE I
24    THINK, IF THE -- IF ALL THE -- IF EVERYTHING WAS THERE AND
25    THE -- MY PROBLEM WAS HAVING THE QUESTION RIGHT AFTER
```

```
 1   THAT -- I MEAN, WHERE YOU WERE INSERTING THE DAMAGE QUESTION
 2   INTO THAT, ALMOST IMPLYING THAT YOU ANSWER THESE QUESTIONS,
 3   ERGO, HOW MANY DAMAGES ARE LEFT?
 4           BECAUSE, AS I STATED THIS MORNING, THE DAMAGES IS
 5   A KIND OF -- IT'S NOT ENTIRELY SEPARATE FROM COPYRIGHT
 6   INFRINGEMENT, BUT IT ENCOMPASSES MUCH MORE THAN SIMPLY
 7   WHETHER OR NOT THERE WAS A DIRECT INFRINGEMENT.  THERE'S
 8   OTHER QUESTIONS THAT NEED TO BE ASKED AND ANSWERED.
 9           AND I GUESS MY POINT NOW IS WHY AREN'T WE ASKING
10   THOSE -- IF WE'RE GOING TO ASK SOME OF THE SPECIFIC
11   QUESTIONS, WHY AREN'T WE ASKING ALL OF THE SPECIFIC
12   QUESTIONS?
13           AND IF THE ANSWER IS -- OR IF THERE ISN'T AN
14   ANSWER, THEN I KIND OF FALL BACK TO MY GENERAL APPROACH TO
15   THESE THINGS, THAT LESS IS MORE.  I MEAN, I -- I DON'T WANT
16   TO GO HALFWAY DOWN THE ROAD OF -- OF SPECIFIC VERDICT FORM
17   IF WE'RE NOT GOING TO GO ALL THE WAY DOWN THE ROAD.
18           MS. AGUIAR:  WELL, I MEAN, BUT THE BASIC QUESTION
19   IS ARE THESE PRODUCTS INFRINGING?  I MEAN, THEY'VE BROUGHT A
20   COPYRIGHT CLAIM.  AND SO THE BASIC QUESTION THE JURY HAS TO
21   ANSWER, THAT'S -- THAT'S THE ELEMENT OF THE CLAIM.
22           THE COURT:  THAT QUESTION NEEDS TO BE THERE.
23           MS. AGUIAR:  SO -- SO, TO ME, THAT'S -- THAT'S A
24   DIFFERENT NATURE OF QUESTION THAN AND IS IT DERIVATIVE AND
25   IS IT THIS AND IS IT THAT AND ARE THERE INDIRECT PROFITS?  I
```

1    MEAN, THE ELEMENTS OF THE COPYRIGHT CLAIM ARE DID YOU HAVE

2    ACCESS AND IS IT SUBSTANTIALLY SIMILAR?

3          SO THAT IS THE BASIC LEGAL QUESTION IN THE

4    COPYRIGHT CLAIM.  AND THIS IS NOT LIKE, FOR EXAMPLE, THE

5    SPONGEBOB CASE THAT, YOU KNOW, WAS JUST UP IN

6    NORTHERN CALIFORNIA, WHERE YOU HAD ONE ALLEGEDLY INFRINGING

7    PRODUCT.  DID SPONGEBOB OR WHATEVER HIS NAME WAS --

8          THE COURT:  I'LL LOOK FORWARD TO ONE OF THOSE

9    COPYRIGHTER KIND OF CASES, WHERE THERE'S ONE PRODUCT.

10          MS. AGUIAR:  JUST ONE PRODUCT.

11          BUT WE DON'T HAVE JUST ONE PRODUCT HERE.  SO WHEN

12   YOU ASK WHY DO THEY -- WHY DO THEY REALLY NEED TO DO THIS?

13   WELL, I CAN UNDERSTAND PERHAPS WHY THERE'S AN ATTRACTION OF

14   JUST, YOU KNOW, GETTING THAT YES ANSWER, BUT YES TO WHAT?

15          SO I DO THINK THAT THERE'S -- THESE CATEGORIES ARE

16   REASONABLE, AND I DON'T THINK THAT THE -- THAT THE FACTS

17   THAT NOT EVERY SINGLE SAMPLE OF EVERY CHARACTER AND EVERY

18   LINE IS HERE POSES AN ISSUE BECAUSE THE STIPULATION SAYS

19   THAT THE PARTIES -- IF YOU LOOK AT THE OTHER PART OF

20   STIPULATION, IT SAYS THAT WE BASICALLY ARE NOT GOING TO SAY

21   THAT ANYBODY HAS FAILED TO MEET THEIR BURDEN BECAUSE THOSE

22   OTHER DOLLS WITHIN THAT LINE ARE NOT HERE.

23          AND SO THAT WAS -- THAT WAS REALLY AN ATTEMPT TO

24   COME TO A COMPROMISE.  AND ACTUALLY YOU -- YOU DO HAVE A

25   SAMPLE OF EVERY ONE OF THE PRODUCT LINES.

```
 1          YOU HAVE -- THE JURY WILL BE ABLE TO SEE KIDS AND
 2  PETS AND BOYS AND EACH ONE OF THE -- OF THE PRODUCT LINES.
 3          THE COURT:  ALL RIGHT.  THANK YOU, COUNSEL.
 4          MS. AGUIAR:  AND WE WON'T BE ARGUING THAT, "OH,
 5  WELL, YOU KNOW, THERE'S THIS OTHER LITTLE ANGELS LINE THAT
 6  WE CAME OUT WITH ONE YEAR THAT LOOKED A LITTLE BIT DIFFERENT
 7  THAN THAT."  OUR REPRESENTATION IS THAT LITTLE ANGELS
 8  PRODUCT IS REPRESENTATIVE OF THE REST OF THE LINE.  SO I
 9  DON'T THINK THAT THAT SHOULD BE A HESITATION.
10          THE COURT:  THANK YOU, COUNSEL.
11          MR. PROCTOR?
12          MR. PROCTOR:  I THINK THE COURT HAS CERTAINLY
13  IDENTIFIED -- IDENTIFIED THE MATTERS AT PLAY AND THE ISSUES.
14          THE COURT:  BUT IT GETS BACK TO COUNSEL'S QUESTION
15  THERE AT THE END.  WHY -- YOU KNOW, THIS IS -- WHY SHOULDN'T
16  WE HAVE A SPECIFIC ANSWER TO THIS QUESTION THAT STARTED THIS
17  WHOLE CASE?
18          MR. PROCTOR:  SURE.  I MEAN, THE -- THE
19  FIRST THING I WOULD SAY IS -- IS THE BASIC QUESTION -- THE
20  BASIC QUESTION AS TO CERTAINLY SOME OF THESE PRODUCTS, SOME
21  OF THESE CATEGORIES, IS REALLY NOT THE DIRECT INFRINGEMENT
22  QUESTION.  YOU KNOW, AS TO MERCHANDISE, FOR EXAMPLE, IT MAY
23  BE THAT MERCHANDISE IS DIRECTLY INFRINGING BECAUSE IT
24  CONTAINS A IMAGE OF THE BRATZ CHARACTERS ON THEM.
25          THE COURT:  BUT YOU KNOW THAT'S A STRETCH.
```

8029

1          MR. PROCTOR:  I KNOW THAT -- I KNOW THAT OUR

2     PRIMARY THEORY IS INDIRECT PROFITS.  AND ASKING THE JURY

3     A -- YOU KNOW, IDENTIFYING THIS AS THE QUOTE/UNQUOTE BASIC

4     QUESTION FOR THE JURY, "DOES THE HELMET LOOK LIKE THE

5     DOLLS," IS PREJUDICIAL FOR EXACTLY THE REASONS THE COURT HAS

6     IDENTIFIED.

7          THAT'S NOT REALLY OUR THEORY FOR WHY WE GET THE

8     PROFITS FROM THE HELMET.  OUR THEORY FOR THAT IS INDIRECT

9     PROFITS, WHICH IS THE BASIC QUESTION AS TO THAT PRODUCT.

10          NOW, AS TO THE FIRST GENERATION OF DOLLS, THAT MAY

11    BE A DIFFERENT STORY.  WE CERTAINLY DO, YOU KNOW, MAINTAIN A

12    VERY STRONG INFRINGEMENT, DIRECT INFRINGEMENT CLAIM AS TO

13    THE FIRST GENERATION OF DOLLS.  WE THINK THEY'RE INFRINGING.

14    THAT IS A FUNDAMENTAL QUESTION AS TO THOSE.

15          IF THE COURT WANTED --

16          THE COURT:  WOULD YOU AGREE THAT IT WOULD BE -- SO

17    YOU AGREE WITH THE POSITION THAT, IF WE WERE TO ASK

18    ONE QUESTION, WE'D HAVE TO ASK ALL THE QUESTIONS THAT ARE

19    RELATED TO THAT?

20          MR. PROCTOR:  YOU KNOW, IT -- IT'S HARD FOR ME TO

21    ANSWER THAT WITHOUT KNOWING WHAT ALL THE QUESTIONS ARE.  I

22    MEAN, I COULD --

23          THE COURT:  WHAT ARE ALL THE QUESTIONS?  YOU TELL

24    ME --

25          MR. PROCTOR:  IT'S A FAIR QUESTION.  I MEAN, IN --

```
 1    IN A -- IF WE WANTED TO DO A PURE SPECIAL --
 2              THE COURT:  WHAT ARE THE QUESTIONS BESIDE THE
 3    PRIMARY QUESTION THAT MGA HAS SUBMITTED?  WHAT ARE THE
 4    QUESTIONS?
 5              MR. PROCTOR:  THE -- THE CATEGORIES, FOR EXAMPLE.
 6    I MEAN, THE CATEGORIES COULD BE EXPANDED OUT GREATLY, AND
 7    THIS -- THIS GETS BACK TO SOMETHING THE COURT --
 8              THE COURT:  GIVE ME A COUPLE.  GIVE ME THREE.
 9              MR. PROCTOR:  WELL, I MEAN, FOR EXAMPLE, THE --
10    THE COURT WAS ASKING WHAT GUIDANCE IS THIS GOING TO PROVIDE?
11    ONE OF THE CATEGORIES THAT'S LISTED HERE IS GAMES.  YOU
12    KNOW, MGA HAS PUT DOWN GAMES AND THEN LISTED A TRIAL EXHIBIT
13    NUMBER.
14              OUR UNDERSTANDING OF THAT STIPULATION, WE
15    CERTAINLY HAVE NOT STIPULATED THAT A FINDING THAT -- THAT
16    THIS GAME, EXHIBIT 18802, WHATEVER THAT IS EXACTLY -- I
17    DON'T KNOW AS I STAND HERE RIGHT NOW -- IF THAT'S NOT
18    INFRINGING, NO OTHER GAME COULD BE INFRINGING.
19              YOU KNOW, THE -- THE EXHIBITS ARE HAND-SELECTED BY
20    MGA, PRESUMABLY WITH SOME TACTICAL PURPOSE.
21              THE COURT:  WELL, LET'S NOT PRESUME THAT.  I -- I
22    GET THE SENSE THAT MS. AGUIAR PROBABLY SPENT A LOT TIME
23    PICKING A FAIR REPRESENTATION OF -- OF THE CATEGORIES.
24              MR. PROCTOR:  I THINK BOTH SIDES IN THIS CASE TRY
25    TO BE FAIR, AND BOTH SIDES IN THE CASE ALSO TRY TO, YOU
```

```
 1    KNOW --
 2              THE COURT:  BUT ANSWER MY QUESTION.  WHAT OTHER
 3    QUESTIONS, YOU KNOW, BESIDE INFRINGEMENT OF COPYRIGHT?  I
 4    THREW OUT ONE:  IS THIS DERIVATIVE?  ARE THERE ANY OTHER
 5    QUESTIONS THAT I'M MISSING?
 6              MR. PROCTOR:  INDIRECT PROFITS, POTENTIALLY.  I
 7    MEAN, INDIRECT PROFITS.  AND, YOU KNOW, SPEAKING OFF THE TOP
 8    OF MY HEAD HERE SOME, A QUESTION ALONG THE LINES OF:  DO YOU
 9    FIND THAT MGA HAS MADE PROFITS AT LEAST PARTIALLY BECAUSE OF
10    THE INFRINGING -- THE INFRINGEMENT?  YOU KNOW, PROFITS
11    FROM -- WE'LL HAVE TO WORDSMITH THIS THING -- PROFITS FROM
12    OTHER SALES AT LEAST PARTIALLY CAUSED BY THE INFRINGEMENT?
13              YOU KNOW, SOME QUESTION -- SOME QUESTION LIKE THAT
14    TO INDICATE THAT DIRECT INFRINGEMENT IS NOT ALL THIS CASE IS
15    ABOUT.  MGA, I MEAN, LET'S -- LET'S BE HONEST.  MGA HAS A
16    STRONG TACTICAL ADVANTAGE -- AND AS THE COURT HAS
17    IDENTIFIED -- A STRONG TACTICAL ADVANTAGE IN BRINGING DIRECT
18    INFRINGEMENT OF MERCHANDISE TO THE FOREFRONT AS THE ISSUE
19    FOR THE JURY TO DECIDE WHEN IT REALLY IS NOT THE ISSUE FOR
20    THE JURY TO DECIDE.
21              AND IN TERMS OF WHAT THESE QUESTIONS WILL GIVE THE
22    COURT FOR PURPOSES OF INJUNCTIVE RELIEF, IT'S -- IT'S SIMPLY
23    NOT THE CASE.  I MEAN, THE STIPULATION -- MS. AGUIAR
24    ACTUALLY CHARACTERIZED IT, I THINK, QUITE CORRECTLY.  THE
25    STIPULATION WAS EFFECTIVELY MGA IS NOT GOING TO URGE THAT WE
```

```
 1    HAVE NOT MET OUR BURDEN BY NOT GETTING EVERY PRODUCT INTO
 2    EVIDENCE BECAUSE THEY WEREN'T MADE AVAILABLE TO US IN
 3    DISCOVERY.
 4         WE CERTAINLY HAVE NEVER STIPULATED THAT A FINDING
 5    THAT WHATEVER -- WHATEVER VEHICLE IS LISTED HERE, A FINDING
 6    BY THE JURY AS TO THAT IS DISPOSITIVE AS TO INJUNCTIVE
 7    RELIEF AS TO ALL OTHER --
 8         THE COURT:  LET ME SEE IF I UNDERSTAND YOU COUNSEL
 9    'CAUSE I THINK I UNDERSTAND YOUR ARGUMENT HERE.
10         ON A FRAUDULENT CONCEALMENT, IT SEEMS TO MAKE
11    SENSE -- WELL -- WELL, YOU DON'T HAVE A DATE ON THAT.  AND
12    YOU LEAVE IT AS AN OPEN-ENDED QUESTION AS OPPOSED TO MGA'S
13    APPROACH, WHICH SAYS, YOU KNOW, DID MGA FRAUDULENTLY
14    CONCEAL, YOU KNOW, WHATEVER THE TORT WAS UNTIL A CERTAIN
15    DATE?
16         MR. PROCTOR:  I THINK THAT'S -- I THINK THE COURT
17    HAS REJECTED OUR POSITION ON THAT, UNLESS I'VE
18    MISUNDERSTOOD.  YOU KNOW, OUR -- OUR VIEW -- MY VIEW WAS
19    THAT WE DIDN'T NEED A DATE BECAUSE THE QUESTION FOR THE JURY
20    WAS HAS THERE BEEN CONCEALMENT?  AND THE COURT HAS ALREADY
21    DECIDED WHEN WE LEARNED OR COULD HAVE LEARNED OF THE TRUE
22    FACTS AS A MATTER OF LAW.  AND BECAUSE OF THAT, THERE WAS NO
23    NEED FOR A DATE.
24         THIS IS THE ISSUE WHICH WAS -- WHICH WAS RAISED IN
25    THOSE INITIAL PORTIONS OF THE JURY INSTRUCTIONS.  YOU KNOW,
```

```
 1    EFFECTIVELY THE ARGUMENT BEING THE COURT HAS DECIDED, YOU
 2    KNOW, FRAUDULENT CONCEALMENT --
 3            THE COURT:  I'LL SET UP A DATE IN 2003,
 4    ESSENTIALLY.
 5            MR. PROCTOR:  CORRECT.  AND IF IT'S 2003, IT'S
 6    TIMELY.
 7            THE COURT:  RIGHT, BECAUSE -- AND THEN USING THAT
 8    DATE, YOU CAN BACKDATE A YEAR OR TWO YEARS, DEPENDING ON THE
 9    CLAIM.
10            MR. PROCTOR:  RIGHT.  I MEAN, IF IT'S 2003, THE
11    FRAUDULENT CONCEALMENT ONLY HAD TO LAST THROUGH EITHER 2001
12    OR 2002 --
13            THE COURT:  IT DOESN'T -- DOESN'T THUS FAR.  YOU
14    KNOW, APRIL OF 2002 AND APRIL OF 2001 --
15            MR. PROCTOR:  RIGHT.
16            THE COURT:  -- WHICH IS EVEN A SHORTER TIME
17    PERIOD.
18            MR. PROCTOR:  CORRECT.  AND OUR PERSPECTIVE WAS
19    SIMPLY -- I MEAN, THE FRAUDULENT CONCEALMENT HAS TO LAST
20    UNTIL, YOU KNOW, THREE YEARS OR TWO YEARS PRIOR TO THE DATE
21    OF FILING, AS THE CASE MAY BE --
22            THE COURT:  RIGHT.
23            MR. PROCTOR:  OUR VIEW WAS THE COURT HAS MADE
24    CLEAR -- THE COURT HAS FOUND AS A MATTER OF LAW THAT, IF
25    THERE WAS FRAUDULENT CONCEALMENT, IT LASTED THROUGH
```

```
 1    JULY 2003 BECAUSE WE DIDN'T LEARN THE TRUE FACTS BEFORE
 2    THEN.   IF THE COURT --
 3            THE COURT:  I SEE WHAT YOU'RE SAYING.
 4            MR. PROCTOR:  IF THE COURT HAS REJECTED THAT
 5    POSITION, WHICH -- WHICH I UNDERSTOOD THE COURT HAD, THEN --
 6    THEN I THINK WE DO NEED A DATE AS MGA HAS.  IF THE COURT
 7    HASN'T, THEN WE DON'T.
 8            THE COURT:  I UNDERSTAND YOUR ARGUMENT.  OKAY.
 9            MR. PROCTOR:  THE -- THE ONE OTHER POINT, I WOULD
10    SAY, JUST -- JUST FOR -- FOR THE SAKE OF RESPONDING, I MEAN,
11    IN TERMS OF CATEGORIES, I -- I CERTAINLY -- I CAN SEE SOME
12    BENEFITS IN HAVING THE FIRST GENERATION OF DOLLS LISTED.  IT
13    IS NOT MY UNDERSTANDING -- AND PERHAPS WE SIMPLY NEED TO
14    MEET AND CONFER ABOUT THIS.  IT'S NOT MY UNDERSTANDING THAT
15    EVEN EVERY THEME OF THE LATER GENERATION DOLLS IS LISTED
16    HERE, LET ALONE EVERY DOLL.
17            THE COURT:  SO NOT -- NOW YOU'RE SUGGESTING THAT
18    I -- I LIST THE FIRST GENERATION OF DOLLS BUT NOT THE REST?
19            MR. PROCTOR:  MY SUGGESTION IS THAT WE ASK A
20    SINGLE QUESTION.  I -- I THINK THAT'S THE RIGHT WAY TO DO IT
21    IN THIS CASE.  I THINK THAT GETTING INTO THESE TYPES OF
22    ISSUE DOES PRESENT A RISK OF INCONSISTENT VERDICTS AND A
23    LACK OF CLARITY AND I HAVE -- I HAVE SERIOUS CONCERNS ABOUT
24    THAT.
25            IF WE ARE GOING TO LIST IT -- I MEAN, MGA'S
```

```
 1    PREMISE WAS, WELL, YOU KNOW, WHAT'S THE BASIC QUESTION?  THE
 2    BASIC QUESTION IS DIRECT INFRINGEMENT.
 3              CERTAINLY, WE DO HAVE A BASIC QUESTION AS TO
 4    DIRECT INFRINGEMENT OF THE FIRST GENERATION OF DOLLS.  AFTER
 5    THAT, HIGHLIGHTING THIS -- THIS DIRECT INFRINGEMENT ISSUE IN
 6    THE ALTERNATIVE -- YOU KNOW, INSTEAD OF INDIRECT PROFITS
 7    IS -- IS PREJUDICIAL, AND I DON'T THINK EVERYTHING IS
 8    CAPTURED.
 9              I'D BE HAPPY TO MEET AND CONFER WITH MGA, IF THE
10    COURT WANTS, ON THAT.  BUT, YOU KNOW, IF THE JURY COMES BACK
11    WITH A VERDICT THAT SAYS HALF OF THESE LATER GENERATION
12    DOLLS INFRINGE AND HALF DO NOT, I DON'T THINK THAT'S GOING
13    TO PROVIDE THE COURT MUCH GUIDANCE AS TO AN INJUNCTION.
14              AND -- AND FRANKLY, YOU KNOW, WITHIN THE THEMES,
15    NOT -- WE THINK THEY'RE ALL SUBSTANTIALLY SIMILAR, BUT IT
16    MAY BE THE CASE THAT A CHLOE OF -- YOU KNOW, GIRLS-NIGHT-OUT
17    CHLOE LOOKS MORE LIKE THE ORIGINAL CHLOE DRAWING AND DOLL
18    THAN THE YASMIN GIRLS NIGHT OUT.
19              SO I -- I DON'T THINK IT'S GOING TO PROVIDE USEFUL
20    GUIDANCE, AND I THINK IT'S CONFUSING.
21              THE COURT:  ANYTHING FURTHER ON THE VERDICT FORM?
22              MS. AGUIAR:  JUST TO CLOSE THIS OUT, YOUR HONOR.
23              TO ANSWER YOUR QUESTION ABOUT WHETHER THERE SHOULD
24    BE THE ADDITIONAL QUESTION OF, FOR EXAMPLE, IS THIS
25    DERIVATIVE?  ARE THESE DERIVATIVE?  I'M NOT A COPYRIGHT
```

1   SPECIALIST, BUT MY UNDERSTANDING OF A DERIVATIVE WORK IS

2   THAT YOU STILL NEED SUBSTANTIAL SIMILARITY.

3           SO IT GOES BACK TO THE SAME BASIC QUESTION:  DID

4   YOU HAVE ACCESS AND ARE THESE DOLLS SUBSTANTIALLY SIMILAR?

5   BECAUSE IT CAN'T BE DERIVATIVE UNLESS THE STUFF THAT YOU'VE

6   ADDED TO IT IS SUBSTANTIALLY SIMILAR.  THAT'S SORT OF THE

7   BASELINE.

8           SO I -- I GUESS IT JUST SUPPORTS MY ARGUMENT THAT

9   THE BASIC QUESTION IS ARE THESE PRODUCTS SUBSTANTIALLY

10  SIMILAR TO THE DRAWINGS?

11          AND -- AND I GET THAT MR. PROCTOR IS NOW SAYING

12  THAT, WELL, OUR MAIN CLAIM, FOR EXAMPLE, ON THE MERCHANDISE,

13  IS NOT REALLY DIRECT INFRINGEMENT.

14          WELL, AT A HEARING PRIOR TO 1-B, MR. COREY

15  ARTICULATED.  HE SAID, "WE HAVE TWO THEORIES OF INFRINGEMENT

16  ON MERCHANDISE, FOR EXAMPLE.  ONE IS DIRECT INFRINGEMENT AND

17  THE OTHER IS INDIRECT PROFITS."

18          HE DIDN'T SAY, "WE'RE NOT REALLY PURSUING ONE OF

19  THEM, AND THE MAIN CLAIM IS THIS."  ALL THE WAY THROUGH THIS

20  VERY LONG LITIGATION, THEY HAVE PURSUED TWO THEORIES --

21          THE COURT:  THEY HAVE.

22          MS. AGUIAR:  -- WITH REGARD TO THESE PRODUCTS.

23  AND -- AND NOW WE'RE JUST SAYING, "LOOK, DO THEY DIRECTLY

24  INFRINGE?"  AND THEN, WHEN YOU WANT IT -- THE JURY

25  INSTRUCTIONS, AFTER MANY GO-ROUNDS, I THINK ARE NOW CLEAR.

                                                        8037

```
 1   THE JURY IS GOING TO BE INSTRUCTED AS TO WHAT -- HOW TO
 2   APPROACH THE VERDICT FORM WHEN IT COMES TO THE DAMAGES
 3   QUESTIONS AND THE INDIRECT PROFITS.
 4        THE COURT:  I HOPE THEY'RE CLEAR.
 5        MS. AGUIAR:  I THINK WE'RE --
 6        THE COURT:  I HOPE THEY'RE CLEAR.  I DON'T KNOW.
 7   I HOPE SO.  I HOPE SO.
 8        WELL, THANK YOU VERY MUCH.  I APPRECIATE THIS.
 9   I'LL WORK ON THIS TONIGHT.
10        AND I KNOW I WANTED TO HAVE A FINAL VERSION IN
11   YOUR HANDS THIS EVENING, BUT IT WON'T BE UNTIL TOMORROW
12   MORNING.  BUT YOU'LL HAVE ALL DAY TOMORROW, THEN, IN ADVANCE
13   OF THE CLOSING ARGUMENT.
14        I'M GOING TO BE TIED UP WITH THIS OTHER JURY
15   TOMORROW, SO I'M REALLY NOT GOING TO BE AVAILABLE TO
16   CONSIDER MATTEL AT ALL.  BUT I WILL MAKE MYSELF AVAILABLE AT
17   THE END OF THE DAY IF THERE'S SOMETHING THAT -- I WOULD
18   RATHER DEAL WITH SOMETHING AT THE END OF THE DAY TOMORROW
19   THAN FIRST THING WEDNESDAY -- WEDNESDAY MORNING, IN ADVANCE
20   OF THE CLOSING ARGUMENTS.
21        SO, IF THERE'S SOMETHING WHICH HAS COME UP WITH
22   MR. NOLAN, MR. KENNEDY'S PREPARATION, OR MR. QUINN'S
23   MR. PRICE'S PREPARATION THAT YOU SEE AS BEING A BIG ISSUE,
24   COME SEE THE COURT AT THE END OF THE DAY TOMORROW AND LET'S
25   TAKE IT UP THEN AS OPPOSED TO WEDNESDAY MORNING.
```

8038

```
 1              MR. PROCTOR:  WHAT TIME WOULD THAT BE, YOUR HONOR?
 2              THE COURT:  I'M AVAILABLE AS SOON AS I PICK THIS
 3    JURY.  I'M HOPING TO HAVE THIS JURY PICKED BY MIDAFTERNOON,
 4    BUT IT MAY BE LATER IN THE AFTERNOON.  I -- I REALLY CAN'T
 5    GIVE YOU A DEFINITE HOUR.
 6              MR. PROCTOR:  OKAY.
 7              THE COURT:  MY -- MY FIRST PRIORITY TOMORROW IS TO
 8    PICK THIS CRIMINAL JURY.  AND -- AND -- BUT IF YOU COULD GET
 9    THE WORD CIRCULATED THAT I'D REALLY LIKE TO TAKE UP ANY
10    ISSUES WHENEVER THAT IS, MR. HOLMES SHOULD BE ABLE TO GIVE
11    YOU A SENSE DURING THE AFTERNOON HOW WE'RE DOING, HOW CLOSE
12    WE ARE.
13              MS. AGUIAR:  OKAY.  THERE ARE A COUPLE OF EXHIBITS
14    WE JUST NEED TO MEET AND CONFER ON THAT WE NEED TO
15    OFFICIALLY MOVE INTO EVIDENCE --
16              THE COURT:  OKAY.
17              MS. AGUIAR:  -- THAT I THINK BOTH PARTIES THOUGHT
18    HAD BEEN.  SO I'LL TALK WITH MR. PROCTOR ABOUT THAT, AND
19    WE'LL DO THAT --
20              THE COURT:  LET'S -- LET'S DO THAT TOMORROW AT THE
21    END OF THE DAY AS WELL.
22              MS. AGUIAR:  SURE.
23              THE COURT:  LET'S HAVE THAT --
24              MS. AGUIAR:  OKAY.
25              THE COURT:  -- READY TO GO.
```

8039

```
 1            MS. AGUIAR:   THANK YOU.
 2            MR. PROCTOR:   AND -- AND MY -- I -- I WONDER IF
 3  THE COURT WOULD SET A TIME OR THINKS THAT WE SHOULD DO THAT,
 4  BECAUSE WHAT WE -- AND WHAT'S -- WHAT THE COURT HAS ALWAYS
 5  AFFORDED THE PARTIES, WHICH HAS BEEN VERY HELPFUL, I THINK,
 6  TO BOTH FOR US, IS -- IS THE COURT PROVIDES THE TENTATIVE,
 7  FINAL DRAFT OF THINGS LIKE THE VERDICT FORM, AND THEN IS --
 8  IS RECEPTIVE TO ANY -- ANY COMMENTS ON MINOR POINTS.
 9            I THINK PROBABLY BOTH PARTIES WOULD APPRECIATE THE
10  OPPORTUNITY TO PROVIDE THOSE.
11            THE COURT:   WELL, I WILL -- I WILL SET A HEARING
12  FOR AFTERNOON AT FOUR O'CLOCK.   UNDERSTAND THAT IT MIGHT GET
13  PUSHED.   AND THEN LET'S HAVE ALL THIS DONE BY FOUR O'CLOCK.
14            AND I'LL HEAR FINAL OBJECTIONS TO THE VERDICT
15  FORM, FINAL OBJECTIONS TO THE JURY INSTRUCTIONS, ANY FINAL
16  OBJECTIONS TO THE ADMISSION OR ISSUES CONCERNING THE
17  ADMISSION OF ANY EXHIBITS, AND ANY OBJECTIONS CONCERNING
18  CLOSING ARGUMENTS THAT ARE KNOWN IN ADVANCE.   AND I'LL DEAL
19  WITH THOSE TOMORROW AFTERNOON.
20            AND -- AND LET ME -- LET'S HAVE MR. NOLAN AND
21  MR. QUINN -- LET'S HAVE THE PEOPLE WHO ARE PARTICIPATING IN
22  THE CLOSING ARGUMENTS PRESENT TOMORROW AFTERNOON.
23            MS. AGUIAR:   SURE.   FINE.   NO PROBLEM.
24            THE COURT:   I -- I THINK THAT'S -- I -- I -- NOT
25  THAT -- NOT THAT COUNSEL HERE IS NOT MORE THAN ABLE --
                                                        8040
```

```
 1    PERHAPS, IN SOME INSTANCES, I SUSPECT MORE -- MORE THAN ABLE
 2    TO REPRESENT THE PRINCIPALS.  BUT JUST -- JUST SO THAT, TO
 3    THE EXTENT THAT I'M GIVING ANY INSTRUCTIONS, I'M SPEAKING
 4    DIRECTLY TO THE PEOPLE WHO ARE GOING TO BE GIVING THE
 5    CLOSING ARGUMENTS.  LET ME ORDER THE FOUR OF THEM TO BE
 6    PRESENT TOMORROW AT FOUR O'CLOCK.
 7              AND CALL MR. HOLMES TO GET GUIDANCE IN TERMS OF
 8    WHETHER THAT'S GOING TO GET MOVED SLIGHTLY ONE WAY OR THE
 9    OTHER.
10              MS. AGUIAR:  THANK YOU.
11              THE COURT:  ALL RIGHT.  AND WE'LL HAVE THE
12    INSTRUCTIONS OUT FOR YOU FIRST THING IN THE MORNING.
13              MS. AGUIAR:  THANK YOU, YOUR HONOR.
14              MR. PROCTOR:  THANK YOU.
15              THE COURT:  GOOD EVENING.
16              THE CLERK:  THE COURT STANDS ADJOURNED.
17              (PROCEEDINGS ADJOURNED.)
18
19
20
21
22
23
24
25
```

1

2                    C E R T I F I C A T I O N

3              I HEREBY CERTIFY THAT I AM A DULY APPOINTED,
     QUALIFIED AND ACTING CONTRACT COURT REPORTER FOR THE
4    UNITED STATES DISTRICT COURT; THAT THE FOREGOING IS A TRUE
     AND CORRECT TRANSCRIPT OF THE PROCEEDINGS TAKEN IN THE
5    AFOREMENTIONED CAUSE ON AUGUST 18, 2008; THAT SAID
     TRANSCRIPT IS A TRUE AND CORRECT TRANSCRIPTION OF MY
6    STENOGRAPHIC NOTES; AND THAT THE FORMAT USED HEREIN COMPLIES
     WITH THE RULES AND REQUIREMENTS OF THE UNITED STATES
7    JUDICIAL CONFERENCE.

8

9              DATED AUGUST 19, 2008, AT RIVERSIDE, CALIFORNIA.

10

11

12              _____
                KYUNG LEE-GREEN, CSR NO. 12655
13              FEDERAL CONTRACT REPORTER

14

15

16

17

18

19

20

21

22

23

24

25

                                                        8042