UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

---

**HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING**

---

| | |
|---|---|
| MATTEL, INC., | : PAGES 8285 - 8298 |
|     PLAINTIFF, | : |
|   VS. | : NO. ED CV04-09049-SGL |
| | : [CONSOLIDATED WITH |
| MGA ENTERTAINMENT, INC., ET AL., | : CV04-9059 & CV05-2727] |
|     DEFENDANTS. | : |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

RIVERSIDE, CALIFORNIA

FRIDAY, AUGUST 22, 2008

JURY DELIBERATIONS - DAY 3

CERTIFIED COPY

MARK SCHWEITZER, CSR, RPR, CRR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
181-H ROYBAL FEDERAL BUILDING
255 EAST TEMPLE STREET
LOS ANGELES, CALIFORNIA 90012
(213) 663-3494

```
 1  Appearances of Counsel:

 2


 3  On Behalf of Mattel:

 4      Quinn, Emmanuel, Urquhart, Oliver & Hedges, LLP
        By John B. Quinn, Esq.
 5         B. Dylan Proctor, Esq.
           Michael T. Zeller, Esq.
 6         Harry Olivar, Esq.
           John Corey, Esq.
 7         Diane Hutnyan, Esq.
           William Price, Esq.
 8      855 South Figueroa Street
        10th Floor
 9      Los Angeles, CA 90017
        (213) 624-7707
10

11

12  On Behalf of MGA Entertainment:

13      Skadden, Arps, Slate, Meagher & Flom LLP
        By Thomas J. Nolan, Esq.
14         Carl Alan Roth, Esq.
           Jason Russell, Esq.
15         Lauren Aguiar, Esq.
           David Hansen, Esq.
16         Matthew Sloan, Esq.
           Robert Herrington, Esq.
17      300 South Grand Avenue
        Los Angeles, CA 90071-3144
18      (213) 687-5000

19

20

21

22

23

24

25
```

# I N D E X

MATTER:   JURY DELIBERATIONS DAY 3, JURY NOTE

```
 1              Riverside, California; Friday, August 22, 2008
 2                             3:06 P.M.
 3          THE COURT:  Good afternoon, Counsel.  The Court has
 4   received the following note.  Note No. 4 from the jury in
 5   Mattel versus MGA.  It's a two-part question.  The first
 6   question reads as follows:  "Can we find that the first
 7   generation dolls violate the copyright of Mattel but that
 8   subsequent generations of dolls do not violate the
 9   copyright?"
10          The second question, which I'll preface by saying
11   is not understandable or understood by the Court, reads as
12   follows:  "Our dilemma, colon, appropriation of first
13   generation, $4 million profit."
14          Mr. Holmes will provide each of you a copy of this
15   note.
16          Counsel?  Just so you know, my thoughts start off
17   the answer to the first question is easy enough.  It's simply
18   a yes.  The second one I'd be inclined to indicate that the
19   court does not understand what -- it's not even clear it is a
20   question, I guess, because there's no question mark.  It's
21   just a statement.
22          MR. ROTH:  Okay.  Agreed, your Honor.  I believe
23   that the answer to the first question is yes.  I think the
24   second question may have resulted from the nature of our
25   damages presentation where we offered a -- a chart that had a
```

1  number of columns.
2       And that chart did not offer up apportionment
3  percentage for the first generation of dolls. And that may
4  be where the jury is at.
5       THE COURT: And you think that instead of the word
6  "appropriation," that they meant "apportionment"?
7       MR. ROTH: That's what I'm assuming, obviously
8  without knowing.
9       THE COURT: Okay. What about the Court's proposal,
10 that I answer the first question yes, and as to the second
11 question, the Court does not understand the question.
12      MR. ROTH: Perhaps we could ask if they meant
13 apportionment.
14      THE COURT: But even if they meant apportionment, I
15 still don't understand the question. Let's say we substitute
16 the word apportionment for appropriation. What I have is
17 two, our dilemma, colon, apportionment of first generation,
18 $4 million profit. What does that mean?
19      MR. ROTH: Granted, your Honor, it doesn't appear
20 to be a question as opposed to a statement of a situation.
21 Again, our view would be that -- our assumption is that they
22 are talking about whether or not the apportionment concept
23 applies to the first generation. That may go back to our
24 damages presentation, which did not offer an apportionment
25 percentage for that.

```
 1              THE COURT:  So what would you suggest the Court do?
 2   If you disagree, I need some clear answers here.  Do you
 3   disagree with the Court's approach to say the Court does not
 4   understand your second question, and if so, what alternative
 5   language would you propose me sending to the jury?
 6              MR. ROTH:  I disagree with that and wonder if the
 7   Court respectfully would ask if there's a question regarding
 8   apportionment.  Are you -- the question could be is the jury
 9   wondering whether or not apportionment is appropriate for the
10   first generation of dolls.
11              THE COURT:  Okay.  Mr. Price?
12              MR. PRICE:  I think the answer to the first
13   question is yes, obviously.  The second question, I don't
14   think we should be trying to guess or speculate as to what
15   they are getting at.  I think the Court should say we
16   don't -- I don't understand, we don't understand the second
17   question, if indeed it's a question.  Or it might be just
18   saying that's why we're asking the first question.
19   Respectfully.
20              THE COURT:  I do think that that is -- that was the
21   Court's initial inclination, and I think that's the better
22   way to go.  First response, number one, I'm going to write
23   yes.
24              Number two, I'm going to say I do not understand
25   the question.
```

```
 1              Instead of me guessing and trying to ask them is
 2   this what you meant and have them come back with a yes or a
 3   no and still be left not really to know what they are asking,
 4   I think it's better to have them rephrase their question.
 5              MR. KENNEDY:  That's what I was going to suggest.
 6   Perhaps something a little less harsh than I don't know what
 7   you're talking about.  The Court needs further clarification
 8   or expansion.  Something other than get lost.
 9              THE COURT:  I don't want to do the get lost
10   approach.  That's helpful.  The Court needs further
11   clarification regarding your second question.
12              MR. PRICE:  And the only problem is I'm not sure
13   it's a question.
14              THE COURT:  I'm not sure either.  But it's supposed
15   to be a question.
16              MR. PRICE:  How about further clarification
17   regarding number two.
18              THE COURT:  Okay.  So the way I've written it is
19   one, yes, two, the Court needs clarification regarding number
20   two.
21              That's what I'll send back to the jury.
22              Mr. Holmes, if you would provide that to the
23   marshal.  And that concludes the matter with Mattel versus
24   MGA.
25              Jury Note 5.
```

```
 1              The Court received a fifth note.  I received it
 2    before four o'clock, and I was going to take a break at that
 3    time, but then I received word that the jury had already left
 4    for the weekend.  So there was no point in doing so.  So I
 5    appreciate your patience.  I did actually provide Mr. Holmes
 6    a copy of the note to provide to you, which I trust you
 7    received.  Just for the record, I will read it into the
 8    record.
 9              "In attempting to come up with a damages award
10    regarding our verdict in Phase 1-A, what are options
11    regarding a starting point, if any, as per the jury
12    instructions to not rely on guesswork, conjecture,
13    et cetera?"
14              Then next part is crossed out.  And it goes on to
15    say:  "In reference to question 1, we are struggling with
16    this point."
17              The Court will certainly want to hear from both
18    counsel.  My thought at this point is to simply respond as
19    follows:  "Carefully review and consider all of the Court's
20    instructions regarding damages Instructions Nos. 36 through
21    46, inclusive."
22              I'll hear from counsel, though, if they have any
23    thoughts, countersuggestions or edits, et cetera.
24              MR. ROTH:  Your Honor, Carl Roth on behalf of the
25    MGA parties.  Given that the question appears to be focused
```

```
 1   on question No. 1, we think that particular attention should
 2   be made --
 3            THE COURT:  You said on question No. 1?
 4            MR. ROTH:  I think the -- it's the fourth question,
 5   but if you look at the sixth line down --
 6            THE COURT:  I see the reference to question 1.
 7            MR. ROTH:  Exactly.  We think, and that deals with
 8   the intentional interference claims.
 9            THE COURT:  Mr. Holmes, the verdict form, please.
10            MR. ROTH:  We believe that particular focus should
11   be on the third paragraph of Jury Instruction 37, beginning
12   with Mattel must prove the amount of damages.  And then in
13   addition to that, the overall instruction regarding damages,
14   which is Jury Instruction No. 36, it looks like the word
15   guesswork comes from that instruction on line 7.  So our --
16            THE COURT:  I'm very reluctant ever to highlight or
17   point out a particular paragraph in an instruction, Counsel.
18   I'm really reluctant to emphasize a particular paragraph of
19   an instruction.  I'm more comfortable with referencing an
20   entire instruction, but the way the instructions are
21   carefully worded, I think a particular paragraph is
22   problematic.
23            MR. ROTH:  Understood.  It's just that it appeared
24   to us that the question would come directly from those
25   portions of the instructions.
```

```
 1          THE COURT:  What does the third paragraph tell
 2   them?  Mattel must prove the amount of damages.  Mattel does
 3   not have to prove the exact amount of damages.  They must not
 4   speculate.  They got that part.  They just don't know where
 5   to go from there.
 6          MR. ROTH:  We believe the starting point is that
 7   Mattel has the burden to prove the amount of damages.  And
 8   they must provide evidence such that the jury is not required
 9   to speculate or guess in awarding damages.
10          THE COURT:  Right.  So you're not asking the Court
11   to give any additional instruction.  You agree that we should
12   just refer to the instructions as given.  You're asking the
13   Court, though, to have them focus just on that one paragraph.
14          MR. ROTH:  That's correct, your Honor.
15          THE COURT:  Let me hear from Mattel.
16          MR. PRICE:  Well, your Honor, if we're going to
17   refer them to an instruction, I think they should get the
18   entire instruction.  And we were thinking that
19   instructions -- most of the testimony in this obviously was
20   through the experts.  And there are charts that are in
21   evidence that were provided by both experts.
22          So I think it would be fair to say that your
23   starting point is the evidence you heard, including expert
24   testimony and the charts of the experts which are in evidence
25   from both sides, and we would actually not object to listing
```

1  those charts from both sides.  And then referring them to the
2  instructions themselves, which would include, I think, 15
3  through 17 about experts and charts.
4          THE COURT:  Well, the concern I have here is
5  slightly a different take on the concern I have with
6  Mr. Roth's proposal.  I don't want to focus on a particular
7  paragraph of an instruction, and I certainly don't want to
8  focus on a particular type of evidence or piece of evidence.
9  The Court must be very careful in dealing with the jury not
10 to suggest that either damages are or are not appropriate or
11 that a particular piece of evidence is particularly important
12 or helpful in resolving that question.
13         So I'm very concerned actually with both
14 suggestions.  I understand where they are coming from.  But I
15 don't want, on the one hand, to overemphasize that.  I don't
16 want to overemphasize anything.  I just want the jury to read
17 the instructions and follow them.
18         MR. PRICE:  Well, they are obviously struggling in
19 doing that.  But I do think it's appropriate to tell them to
20 refer to the Court's instructions.  I think Instruction 37 is
21 what they are looking at.
22         THE COURT:  Mr. Roth is definitely right.  They are
23 focusing on question No. 1 at this point.  It doesn't sound
24 like they have gone too far in their deliberations.
25         MR. PRICE:  So I would say that they refer to Jury

```
 1   Instruction 37 and that their starting point is the evidence
 2   they have heard, including the evidence in both Phase 1-A and
 3   1-B.
 4              THE COURT:  You know, I don't know what to make of
 5   this.  There's this line that's crossed out.  Can the amounts
 6   be differing.  And then they crossed that out.
 7              MR. PRICE:  I actually think, your Honor, that
 8   would be complete, it should be Instruction 37 and
 9   Instruction 39, which then talks about defining that this is
10   disgorgement profits as opposed to -- well --
11              THE COURT:  Anything further from MGA?
12              MR. ROTH:  Just a quick question on -- point on
13   Instruction 39.  It doesn't seem to be a question about the
14   concept of disgorgement, which is the subject of Jury
15   Instruction 39.  We've been directed to the specific part of
16   the instruction that the jury is struggling with.  We would
17   simply read back or highlight that section of the
18   instruction, which is in our view the third paragraph of
19   Instruction 37.
20              THE COURT:  Okay.  The Court has a new proposal.
21   Simply to tell the jury to carefully review and consider the
22   applicable instructions provided by the Court.  I know that
23   doesn't give them a lot other than to say that to the extent
24   there's an answer, the answer is in the jury instructions.
25   And I'm not telling them what I think is more applicable to
```

```
 1   their particular question.  It's not a particularly well
 2   written question.  I am not inclined to highlight particular
 3   paragraphs or particular instructions that have been
 4   submitted by either side.
 5            I want their focus to go back to the instructions.
 6   If they can articulate a more particular concern or question,
 7   they know how to do that, and they have done that before in
 8   phase A, where they came out with particular questions.  This
 9   is very broad based.  The question itself, the question part
10   is what are options regarding a starting point, if any?  And
11   I think the answer to what are options considered at starting
12   point would be to carefully review the instructions provided
13   by the Court and leave it at that.
14            MR. KENNEDY:  MGA is agreeable to that.
15            THE COURT:  Is there any objection to that?  I
16   understand that you both have preferences more specific in
17   nature, but is there any legal objection?
18            MR. PRICE:  No legal objection.
19            THE COURT:  From MGA?
20            MR. KENNEDY:  No, your Honor.
21            THE COURT:  Hopefully, they will go home this
22   weekend and have some rest, relaxation, recreation, come back
23   and read the instructions again and be able to move forward
24   one way or another.
25            Was there something further, Mr. Price, that you
```

```
 1  going to say?
 2            MR. PRICE:  No, your Honor.
 3            THE COURT:  All right.  That will be what the Court
 4  will write, then.  Carefully review the instructions provided
 5  by the Court -- carefully review and consider the applicable
 6  instructions provided by the Court.
 7            Very well.  I know this is an anxious time for
 8  everybody.  Try to have as good a weekend as you can.  And
 9  I'll see you here Tuesday.  The jury will resume
10  deliberations at 9:00 A.M.  See you then.  Take care,
11  Counsel.
12
13            (Proceedings concluded at 4:45 P.M.)
14
15                   C E R T I F I C A T E
16
17       I hereby certify that pursuant to Title 28,
18  Section 753 United States Code, the foregoing is a true and
19  correct transcript of the stenographically reported
20  proceedings in the above matter.
21       Certified on Friday, August 22, 2008.
22
23                         _____
24                         MARK SCHWEITZER, CSR, RPR, CRR
                           Official Court Reporter
25                         License No. 10514
```