QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>       Plaintiff,<br><br>    vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>       Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Honorable Stephen G. Larson<br><br>**MATTEL'S OPPOSITION TO MGA'S MOTION TO STRIKE THE DECLARATIONS OF B. DYLAN PROCTOR, FRANK KEISER AND KENNETH HOLLANDER**<br><br>Hearing Date: November 10, 2008<br>Time:      1:00 p.m.<br>Place:     Courtroom 1<br><br>**Phase 1(a):**<br>Trial Date:  May 27, 2008<br><br>**Phase 1(b):**<br>Trial Date:  July 23, 2008 |

00505.07209/2679949.2

Case No. CV 04-9049 SGL (RNBx)
MATTEL'S OPPOSITION TO MGA'S MOTION TO STRIKE THE DECLARATIONS OF B. DYLAN PROCTOR, FRANK KEISER AND KENNETH HOLLANDER

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT................................................................................1

ARGUMENT ............................................................................................................2

I.  THERE IS NO LEGAL OR FACTUAL IMPEDIMENT TO PRESENTING EVIDENCE THAT WAS NOT PRESENTED AT THE JURY TRIAL ........................................................................................................2

II. THERE IS NO BASIS TO STRIKE THE PROCTOR DECLARATION, WHICH MERELY PRESENTS FACTS FOR THE COURT'S CONSIDERATION............................................................................6

    A.  MGA's Request Is Overbroad Because Even Under MGA's Analysis, Most Of The Proctor Declaration Is Unchallenged, Highly Probative Evidence ............................................................6

    B.  The Proctor Declaration Does Not Argue or Characterize Evidence, But Invites The Court To Make Its Own Comparison .........7

    C.  Mr. Loetz' Opinions Are Consistent With (But Do Not Replace) The Proctor Declaration..................................................................11

III. THE KEISER DECLARATION IS ADMISSIBLE AND PROBATIVE......12

    A.  Mr. Keiser's Six Scans Are Probative, Admissible Evidence As To The Infringing Shape Of Bratz Doll Heads..................................12

    B.  That Keiser's Earlier Submitted Expert Reports Have Been Fully Vetted Cuts Against, Not For, MGA ................................................13

    C.  Contrary To MGA's Argument, There Has Been No "Manipulation" ....................................................................................15

IV. THE HOLLANDER DECLARATION IS PROBATIVE, ADMISSIBLE EVIDENCE RELEVANT TO THE INTRINSIC TEST.......17

    A.  MGA's Pending Motion In Limine, To The Extent Its Issues Are Still Pertinent Or Live, Is Something The Court Can Resolve Without Further Ado ..................................................................17

    B.  Mr. Hollander's Expert Report Has Been Sworn And Affirmed By Declaration And Is Admissible ......................................................20

CONCLUSION ......................................................................................................21

# TABLE OF AUTHORITIES

**Page**

## Cases

*A&M Records, Inc. v. Napster,*
2000 WL 1170106 (C.D. Cal. 2000), rev'd in part on other grounds,
293 F.3d 1004 (9th Cir. 2001) ............................................................. 18, 19

*Anti-Monopoly, Inc. v. General Mills Fun Group, Inc.,*
684 F.2d 1316 (9th Cir. 1982), cert. denied, 459 U.S. 1227 (1983).................... 18

*Black & Decker, Inc. v. Robert Bosch Tool Corp.,*
2006 WL 3446144 (N.D. Ill. 2006).......................................................... 3

*Burton v. Armontrout,*
975 F.2d 543 (8th Cir. 1992) ............................................................... 3

*Charles Jacquin et Cie, Inc. v. Destileria Serralles, Inc.,*
921 F.2d 467 (3rd Cir. 1990) .............................................................. 3

*Clicks Billiards Inc. v. Six Shooters, Inc.,*
251 F.3d 1252 (9th Cir. 2001) ............................................................ 19

*Dothard v. Rawlinson*
433 U.S. 321 (1977) ......................................................................... 5

*Floyd v. Hefner,*
556 F. Supp. 2d 617 (S.D. Tex. 2008) .................................................... 20

*Level 3 Communications v. City of St. Louis,*
2007 WL 2860171 (E.D. Mo. 2007) ...................................................... 5

*Lott v. Westinghouse Savannah River Co., Inc.,*
200 F.R.D. 539 (D.S.C. 2000) ..................................................... 6, 8, 10

*Maytag Corp. v. Electrolux Home Products, Inc.,*
448 F. Supp. 2d 1034 (N.D. Iowa 2006) ............................................... 20

*Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.,*
585 F.2d 821 (7th Cir. 1978) .............................................................. 3

*Page v. U.S. District Court for Northern Dist. of California,*
2006 U.S. Dist. LEXIS 68269 (N.D. Cal. 2006) ................................... 6, 10

*Prudential Insurance Co. v. Gibralter Financial Corp.,*
694 F.2d 1150 (9th Cir. 1982) ........................................................ 18, 19

*Southland Sod Farms v. Stover Seed Co.,*
108 F.3d 1134 (9th Cir. 1997) ........................................................... 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Spivey v. United States,*
912 F.2d 80 (4th Cir. 1990) ................................................................. 10

*State Indus., Inc. v. Mor-Flo Indus., Inc.,*
948 F.2d 1573 (Fed. Cir. 1991)................................................................ 5

*Stuhlbarg International Sales Co. v. John D. Brush and Co.,*
240 F.3d 832 (9th Cir. 2001) ............................................................... 18

*Syntex (U.S.A.) LLC v. Apotex Inc.,*
2005 WL 6042726 (N.D. Cal. 2005)........................................................ 5

*United States v. Garvin,*
2004 WL 376873 (3rd Cir. 2004) .................................................... 12, 16

*United States v. Myers,*
972 F.2d 1566 (11th Cir. 1992) ............................................................ 16

*United States v. Virginia,*
88 F.R.D. 656 (E.D. Va. 1980) ............................................................... 5

*U.S. Philips Corp. v. KXD Technology, Inc.,*
2007 U.S. Dist. LEXIS 96605 (C.D. Cal. 2007) ............................... 10

*Williams v. General Motors Corp.,*
656 F.2d 120 (5th Cir. 1981) ................................................................. 3

**Statutes**

Fed. R. Civ. P. 26, Advisory Committee Notes.................................... 14

Fed. R. Evid. 901(a) ............................................................................ 12

**Preliminary Statement**

In support of its Motion for Permanent Injunction, Mattel has provided evidence for the Court to consider in determining the propriety and scope of the injunctive relief sought.   The Proctor Declaration provides the Court with a convenient, sensible way to view and directly compare Bratz drawings and products and their relevant features.   The Keiser Declaration authenticates six digital scans that allow the Court to isolate and compare the shape of Mattel's copyrighted sculpt with the shape of a recent Bratz doll.   And the  Hollander Declaration shows that more than 91% of young girls -- the relevant audience for the intrinsic test -- overwhelmingly recognize Bryant's drawings as the Bratz dolls, even when the Bratz dolls are not next to them.

The complete lack of merit of MGA's objections is a measure of the persuasiveness of this evidence.   For example, MGA argues that evidence may not be presented in support of injunctive relief after trial if it was not presented at trial. But MGA presents no authority for this position and ignores that such "new" evidence is routinely admitted in connection with post-trial requests for equitable relief.   Nor does it even attempt to reconcile its position with the Court's repeated statements that it would consider such evidence, or with its own submission of new evidence in connection with its requests for equitable relief.

MGA seeks to exclude the entire Proctor declaration, along with its admissible doll and sculpt images, on the basis that it contains improper argument and pseudo-expert testimony.   But there is no analysis, no characterization and no comment anywhere in the Proctor Declaration.   Mr. Proctor merely set forth the images, stated that they were there "for comparison," and noted portions of them where "similarities" could be viewed.   *All* determinations with regard to the evidence are clearly left to the Court.

MATTEL'S OPPOSITION TO MGA'S MOTION TO STRIKE THE DECLARATIONS OF B. DYLAN PROCTOR, FRANK KEISER AND KENNETH HOLLANDER

The Keiser Declaration is more than enough to provide foundation for the six images attached and, even though MGA has deposed Mr. Keiser, it can mount no meaningful challenge to the scans' authenticity, admissibility or accuracy. MGA thus instead raises two arguments. First, it argues that the images are untimely additions to Mr. Keiser's expert reports. But they are not, and need not be, part of Mr. Keiser's expert reports in the first place. Expert reports are designed to disclose an expert's planned testimony so as to prevent the possibility of unfair surprise at trial. Here there is no impending trial and MGA's receipt of his three earlier expert reports months ago eliminates any possibility of unfair surprise. Second, MGA argues -- with only innuendo and without evidence -- that Mr. Keiser has "manipulated" the images or is operating outside of his area of expertise. Neither is true, but even more importantly, Mr. Keiser is merely an operator of the scanning equipment, and everything he did to produce the images is in his declaration, which the Court can review and weigh itself.

MGA has also deposed Mr. Hollander. Its arguments about the Hollander Declaration have no more weight than the others. MGA's argument about the inadmissibility of expert reports at trial has no relevance to the Hollander Declaration, which affirms the report and renders it admissible in support of Mattel's motion. And any supposed methodological flaws go to weight, not admissibility.

## **<u>Argument</u>**

## I. <u>THERE IS NO LEGAL OR FACTUAL IMPEDIMENT TO PRESENTING EVIDENCE THAT WAS NOT PRESENTED AT THE JURY TRIAL</u>

MGA seeks to strike all three declarations on the basis that they contain material not presented during the jury portion of the trial. But there is no reason why evidence not presented to the jury at trial cannot be presented in support of Mattel's post-trial motion for permanent injunction. The presentation of evidence

1 not presented at trial is particularly appropriate and necessary here for a proper
2 determination of Mattel's motion.

3      Submitting new evidence beyond that admitted at trial is standard operating
4 practice in a post-jury trial proceeding in which the Court is considering equitable
5 relief.  "In ordering [injunctive] relief, the court may [also] rely on evidence not
6 presented to the jury when the jury's factual findings are incomplete or
7 inconclusive."  S*ee Burton v. Armontrout,* 975 F.2d 543, 545 (8th Cir. 1992); *see*
8 *also Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.,* 585 F.2d 821, 844 (7th Cir. 1978)
9 (proper for district court to "consider evidence adduced both at the jury trial and at
10 the equitable relief hearing" in determining equitable relief); *Charles Jacquin et*
11 *Cie, Inc. v. Destileria Serralles, Inc.,* 921 F.2d 467, 471 (3rd Cir. 1990) (proper for
12 district court to fact-find based on market penetration evidence that was submitted in
13 post-trial briefing and not at trial); *Williams v. General Motors Corp.,* 656 F.2d 120,
14 124 (5th Cir. 1981) (acknowledging plaintiffs' prerogative to introduce new
15 evidence or rest on trial record in connection with request for injunctive relief).

16      Submitting new evidence is all the more appropriate where issues before the
17 Court in determining equitable relief are not identical to those before the jury, such
18 as where the jury determines past liability but the Court must fashion injunctive
19 relief based on continuing and likely future activities.  *See Burton v. Armontrout,*
20 975 F.2d at 545 (recognizing proper admission of evidence of defendant's post-trial
21 conduct in connection with request for permanent injunction); *Black &*
22 *Decker, Inc. v. Robert Bosch Tool Corp.,* 2006 WL 3446144, at *1 and *4 (N.D. Ill.
23 2006) (admitting evidence of continuing infringement in support of permanent
24 injunction after verdict).  Much of the evidence that was submitted in connection
25 with Mattel's request for injunctive relief, and that was not previously admitted, is of

26
27
28

- 3 -

new dolls currently on the market.[1]  This evidence is uniquely relevant to Mattel's motion for permanent injunction, but far less relevant, if at all, to the determination of damages for prior sales.

Of course, as the Court will recall, one reason why Mattel is now presenting dolls that were not admitted at trial is because MGA did not produce an example of all the dolls in discovery as had been requested, and as MGA had agreed.[2]  Mattel has now acquired many of the missing dolls that are currently on the market, and seeks to put them before the Court so that the Court can make a proper determination as to the scope of the injunction.

MGA also fails to acknowledge that the Court has already welcomed new evidence in connection with the parties' requests for equitable relief.  The Court first addressed this early in the trial, assuring the parties that they would be allowed to present all the evidence they thought necessary to prove up their equitable claims.[3]  Mattel relied on this in presenting its case.  Then, after Phase 1(b) trial was over, the Court explicitly told the parties it would consider such evidence:  "if counsel on either side would seek leave to introduce additional evidence, as I think I indicated during the trial, the Court would consider that evidence."[4]  Although MGA has itself

---

[1]   *See* Declaration of B. Dylan Proctor In Support of Mattel, Inc.'s Motion For A Permanent Injunction ("Proctor Decl."), Dkt. 4307 (placing evidence of recent dolls before the Court); Declaration of Frank Keiser In Support of Mattel, Inc.'s Motion For A Permanent Injunction ("Keiser Decl."), Dkt. 4306 (same).

[2]  Hutnyan Decl. ¶2 and Exh. A, MGA's Supplemental Response to 1st Set of Requests for Production of Documents, dated Sept. 17, 2007, at 4.

[3]  *Id.,* Exh. B, Trial Tr. 5272:11-14 ("I want to make sure that MGA has the ability to bring in . . . all of the evidence they think is necessary to prove up any of their affirmative defenses"); *id.,* Trial Tr. 5305:7-13 ("[T]o ensure that MGA has an opportunity to present any evidence . . . I'll give leave at the end of the trial to introduce such evidence to the Court itself"); *see also Id.,* Exh. C, Order dated September 2, 2008, at 1 (setting four-hour hearing on Phase 1(c) issues).

[4]  *Id.,* Exh. B, Trial Tr. 8345:22-25.

MATTEL'S OPPOSITION TO MGA'S MOTION TO STRIKE THE DECLARATIONS OF B. DYLAN PROCTOR, FRANK KEISER AND KENNETH HOLLANDER

certainly taken advantage of this, submitting more than 35 exhibits that had never been admitted at trial in support of its Statement of Position Regarding 1(c) Issues, it begrudges Mattel the same right.

The cases presented by MGA do not apply here.   *Syntex, Level 3 Communications,* and *United States v. Virginia* all involved situations where the appellate court had remanded issues for further consideration by the district court, and the question was whether new evidence could be introduced in connection with those later proceedings.  *Syntex (U.S.A.) LLC v. Apotex Inc.,* 2005 WL 6042726, at *3 (N.D. Cal. 2005); *Level 3 Communications v. City of St. Louis,* 2007 WL 2860171, *3-7 (E.D. Mo. 2007); *Virginia,* 88 F.R.D. 656, 658 (E.D. Va. 1980).[5] *Dothard v. Rawlinson,* cited in *Virginia* and in MGA's motion, has no bearing here either, as it addressed (in *dicta*) the issue of when evidence rebutting a claim of discrimination in a Title VII suit should be presented.   433 U.S. 321, 338-339 (1977).

Finally, MGA argues that new evidence may not be presented because the jury's findings on the issue of copyright infringement bind the Court, and any further

---

[5]   Notably, even in that situation, the trial court has discretion to entertain new evidence where appropriate.  *Virginia,* 88 F.R.D. 656, 662 (E.D. Va. 1980) ("in the absence of error affecting the introduction of evidence at trial, the decision whether to reopen the evidence at a later stage of the proceedings rests with the trial judge"); *Level 3 Communications v. City of St. Louis,* 2007 WL 2860171, *3 (E.D. Mo. 2007) ("the Eighth Circuit remanded 'for further proceedings not inconsistent with its opinion. . . .   As a result, this Court has the discretion to determine whether Level 3's motion to reopen discovery should be granted"); *Syntex (U.S.A.) LLC v. Apotex Inc.,* 2005 WL 6042726, at *3 (N.D. Cal. Oct. 26, 2005) ("'absent contrary instructions, a remand for reconsideration leaves the precise manner of reconsideration - whether on the existing record or with additional testimony or other evidence to the sound discretion of the trial court'"), *quoting State Indus., Inc. v. Mor-Flo Indus., Inc.,* 948 F.2d 1573, 1577 (Fed. Cir. 1991).

Case No. CV 04-9049 SGL (RNBx)

1  determination as to infringement is usurping the jury's role.  For the reasons set forth
2  in Mattel's Reply to its Motion for Permanent Injunction, that is simply incorrect.

3

4  **II.    THERE IS NO BASIS TO STRIKE THE PROCTOR DECLARATION,**
5  **WHICH MERELY PRESENTS FACTS FOR THE COURT'S**
6  **CONSIDERATION**

7  **A.    MGA's Request Is Overbroad Because Even Under MGA's**
8  **Analysis, Most Of The Proctor Declaration Is Unchallenged,**
9  **Highly Probative Evidence**

10  Even crediting MGA's criticisms, striking the entire Proctor Declaration
11 would throw the proverbial baby out with the bath water.  The declaration contains
12 and attaches more than 360 properly-identified images of evidence in this case,
13 which have been identified and set forth in one place to allow the Court a
14 convenient way to view many dolls and drawings and draw its own comparisons
15 about their similarity.   In addition, it identifies and attaches the copyright
16 registrations for the drawings displayed, and references for the Court's convenience
17 pertinent trial testimony laying the foundation for the creation of some of Mattel's
18 copyrighted works.  On the last page, the declaration explains and lays the proper
19 foundation for the infringing dolls and other MGA products that were found to be
20 currently on the market and which are depicted in images attached to the
21 declaration.  MGA does not dispute the accuracy of any of this information.  None
22 of it is subject to any objection by MGA; none of it is even arguably improper; and
23 it should under no circumstances be stricken.  *See Lott v. Westinghouse Savannah*
24 *River Co., Inc.,* 200 F.R.D. 539, 547 (D.S.C. 2000) (cited by MGA) (denying
25 motion to strike as to unchallenged portions of a declaration); *Page v. U.S. District*
26 *Court for Northern Dist. of California,* 2006 U.S. Dist. LEXIS 68269, at *15 (N.D.
27 Cal. 2006) (cited by MGA) (denying motion to strike as to portions of declaration).

28

00505.07209/2679949.2

- 6 -                                    Case No. CV 04-9049 SGL (RNBx)
MATTEL'S OPPOSITION TO MGA'S MOTION TO STRIKE THE DECLARATIONS OF B. DYLAN PROCTOR,
FRANK KEISER AND KENNETH HOLLANDER

**B.** **The Proctor Declaration Does Not Argue or Characterize Evidence, But Invites The Court To Make Its Own Comparison**

MGA objects to just two types of statements. The first is where items are identified as being "for comparison." MGA argues such statements are comparisons themselves.[6] But Mr. Proctor did not use this term to draw comparisons at all; in every case, he used it to call the Court's attention to the images set forth immediately thereafter and to enable the Court to make its own comparison of the evidence. *See, e.g.,* Proctor Decl. ¶¶ 9, 11, 22, 24, 27 ("Lines have been superimposed to allow for easy assessment and comparison of features"); 34, 39, 44, 49, and 54 ("Below are photographs of Exhibits [] through [] next to each other (left to right) for comparison"). There is nothing argumentative about this phraseology; presented with a convenient way to compare, the Court can ascertain whatever similarities and whatever differences the evidence shows.

Paragraph 18, which is called out by MGA on page 7 of its motion, is a perfect example. MGA argues that Mr. Proctor "sponsor[s] and interpret[s]" the images shown in paragraph 18. But Mr. Proctor's statement is actually limited to the uncontroversial proposition that the renderings "allow comparison of" and "demonstrate the relationship between" various features of the images. Mr. Proctor does not opine about the results of such a comparison, or attest to what the relationships might be; all that is left up to the Court. As for "display[ing] a newly-found knowledge of anatomy," MGA sells Mr. Proctor short. Even a young child can readily detect the presence of such features as eyes, nose, lips, ears and cheekbones and there is nothing preventing Mr. Proctor from doing so as well, particularly since the images are in the same paragraph for the Court's direct consideration.

---

[6]   Motion at 6.

The other term MGA takes issue with is "similarity" (or "similar" in a few cases).  Representative examples of its use in the declaration include:

- "This view is a straight on view showing the similarity of proportions and anatomical landmarks, including crown, chin, shoulders, chest, waist, crotch, knees and ankles."[7]

- "This view likewise shows the similarities of both the specific features of the drawing and doll and the proportions and relationship of each feature to others."[8]

- "This view shows the similar expression of features and the similar proportions and relationship between features, including the contours of the character's jawline, cheekbone and forehead, and the distance between the eyes."[9]

As before, in every single case, the sentence is followed by the images referenced.

In each case, this introductory language is there to draw the Court's attention to the proportions and features of the items depicted below that may bear similarities.   No characterization is made by Mr. Proctor beyond the readily observable fact that similarities may be viewed in those areas.   No art degree or anatomy class is needed to make such an observation.   As *Lott* (cited by MGA in its motion to strike) establishes, such basic factual statements, on matters of which the declarant has personal knowledge, are admissible.   *Lott,* 200 F.R.D. at 547 (paralegal affidavit admissible where it contained simple arithmetical calculations she performed).   Still, if there is any concern at all, the words "similarity" or "similar" can be replaced with "comparison" or "compared" in each instance, and

---

[7]  Proctor Decl. at ¶ 9.
[8]  *Id.* at ¶ 24.
[9]  *Id.* at ¶ 27.

1   the Court can compare for itself the features and proportions identified as it makes

2   its determination.

3       Certainly, had MGA thought it fruitful to debate that there were similarities to

4   be found among these features, it would have found space in its 50 pages of briefing

5   to do so.  In its Motion to Strike, MGA even stated that it "could equally argue that

6   the features Mr. Proctor compares are not similar."[10]  But one can find no such an

7   argument in MGA's 15-page Motion to Strike or in its 35-page Opposition to

8   Mattel's Motion for Permanent Injunction.[11]   Perhaps that is because MGA has

9   previously admitted, over and over, that the Bratz dolls were inspired by, were

10  created from, have the distinctive features of, and in fact are three-dimensional

11  depictions of Carter Bryant's drawings.[12]

12      Thus it seems MGA's indignation is far more a measure of the importance

13  MGA attaches to removing the Proctor Declaration and its hundreds of

14  unobjectionable and probative images from the Court's consideration than any

15  concern that the Court will be misled by Mr. Proctor stating that there are

16  "similarities" among the images shown.   Nor will the Court be misled by

17  Mr. Proctor failing to note the obvious fact that there are some differences between

18  the items depicted.  *See* Motion at 7-8.  As MGA pointed out, "Every adult on the

19  jury can understand the similarities and differences between the works here without

20

21      [10] Motion at 7.

22      [11] Instead, MGA has pointed to the self-serving testimony of MGA witnesses as
23  to changes they allegedly made during the development of the dolls from the
    drawings. Motion at 23, 24 and n.40.  Such testimony is irrelevant:  even if changes
24  were made along the way, what matters is that the dolls are substantially similar to
    the drawings.  Also, several of these MGA witnesses testified about the timing of
25  Carter Bryant's drawings in Phase 1-A and were found by the jury to be incredible.

26      [12] The record is filled with these admissions.  *See* Declaration of Diane C.
27  Hutnyan In Support of Mattel, Inc.'s Motion For A Permanent Injunction, Dkt.
    4320-4327,  ¶¶ 25-95 and exhibits referenced therein.

28

MATTEL'S OPPOSITION TO MGA'S MOTION TO STRIKE THE DECLARATIONS OF B. DYLAN PROCTOR,
FRANK KEISER AND KENNETH HOLLANDER

1   expert interpretation; no one would be 'ignorant of the relevant differences and
2   similarities.'"[13]   There is no reason the Court cannot do the same.

3         The authority cited by MGA does not support striking the statements at issue.
4   The portions of the declarations at issue in those cases were problematic because
5   they were legal argument;[14] untestable substantive testimony;[15] summary and
6   characterization of the evidence, along with facts not within the lawyer's personal
7   knowledge;[16] and generalized and factually unsupported attacks on opposing
8   counsel.[17]   The Proctor Declaration suffers from none of these defects.   There is
9   nothing wrong with placing objects next to each other "for comparison" and noting,

10   _____

11      [13]   Hutnyan Decl. Exh. D, MGA Parties' Reply Memorandum of Law In Further
12   Support Of Their Motion In Limine No. 8 To Strike Expert Report Of Kenneth
    Hollander and Sections of Expert Rebuttal Reports of Heather McComb, Denise
13   Van Patten, and Nicholas Mirzoeff, dated May 8, 2008, at 5.

14      [14]   *Page v. U.S. District Court for Northern Dist. of California,* 2006 U.S. Dist.
    LEXIS 68269, at *14-15 ("Much of the declaration simply repeats portions of the
15   Plaintiffs [sic] memo in support of her Motion to Remand. . . .   Paragraph 17 clearly
    contains argument.   It states that Children's counsel was not entitled to participate in
16   the litigation as of May 17, 2006, so the Court lacks subject matter jurisdiction and
17   should remand to state court").

       [15]   *Spivey v. United States,* 912 F.2d 80, 84-85 (4th Cir. 1990) ("The affidavit
18   was offered and weighed as substantive evidence that the extent of Mrs. Spivey's
19   disability was not reasonably discoverable at the time the administrative claim was
20   amended"; the Court also noted that it had several instances of double hearsay).

21      [16]   *Lott,* 200 F.R.D. at 548 (declaration contained "summary of much of the
    evidence," characterized and "attempt[ed] to explain [expert] report[s]," and was
22   "really legal argument"; declaration also attested to the reaction of the defendants'
    managers).

23      [17]   *U.S. Philips Corp. v. KXD Technology, Inc.,* 2007 U.S. Dist. LEXIS 96605, at
24   *5 (C.D. Cal. 2007) (declaration was "filled with argument and hyperbole, alleging
    for example that Plaintiff has 'participated in a concerted effort to sandbag and
25   stonewall the Defendants and their counsel.'   Such statements are unhelpful to the
26   Court because they are generalized statements and have no evidentiary support. . . .
    Mr. Handal alleges no facts in support of his arguments, instead making generalized
27   allegations that Plaintiff's counsel is equally responsible").

28

- 10 -      Case No. CV 04-9049 SGL (RNBx)
MATTEL'S OPPOSITION TO MGA'S MOTION TO STRIKE THE DECLARATIONS OF B. DYLAN PROCTOR, FRANK KEISER AND KENNETH HOLLANDER

1   without characterization, the undeniable fact that there are similarities among the
2   objects.

3   **C.   Mr. Loetz' Opinions Are Consistent With (But Do Not Replace)**
4   **The Proctor Declaration**

5   As part of its argument that Mattel is barred from presenting any evidence on
6   its Motion for Preliminary Injunction that it did not admit at trial, MGA contends
7   that the Proctor Declaration is an improper attempt to recycle expert testimony from
8   Mr. Loetz that Mattel supposedly deemed unreliable for presentation at trial.

9   First, as noted above, there is nothing preventing Mattel from using evidence
10  in this equitable relief phase that it did not use at trial.

11  Second, not only is MGA wrong in speculating that Mattel considered Mr.
12  Loetz unreliable, but MGA's argument misses the mark.   Mr. Loetz' expert
13  testimony was quite different from the subject matter of the Proctor Declaration.
14  Unlike Mr. Proctor, Mr. Loetz, a toy designer with more than a decade of
15  experience, compared and analyzed the dolls and drawings himself using his
16  expertise as an artist and designer; identified, commented on, and characterized
17  dozens of specific similarities; and opined that such close similarities could only be
18  the result of the dolls being modeled after Carter Bryant's drawings.  *See, e.g.,* Loetz
19  Expert Report at 3 ("body proportions of Carter Bryant's drawings are virtually
20  identical to the dolls"); 4 ("final dolls match to a remarkable degree the poses in . . .
21  sketches" and "dolls match the attitude and look of the concept drawings"); 6
22  ("eyes . . . share the almond shape"; "eyebrows of both share the same distance from
23  the eye"; "eye makeup style and design . . . is exceptional in correlation from
24  drawing to the doll"); 7 ("shapes of the lips are alike"; "All of the parallels between
25  the drawings and doll faces are not coincidental, but the result of executing the
26  drawings in the dolls").

27

28

00505.07209/2679949.2

- 11 -                                          Case No. CV 04-9049 SGL (RNBx)
MATTEL'S OPPOSITION TO MGA'S MOTION TO STRIKE THE DECLARATIONS OF B. DYLAN PROCTOR,
FRANK KEISER AND KENNETH HOLLANDER

MGA's motion in limine was denied with respect to Mr. Loetz' testimony[18] and Mattel believes his comparisons and observations remain instructive.   Still, however, Mattel believes the Court can make its own determination based directly on the images of the drawings and dolls identified in the Proctor Declaration.

## III.   THE KEISER DECLARATION IS ADMISSIBLE AND PROBATIVE

### A.   Mr. Keiser's Six Scans Are Probative, Admissible Evidence As To The Infringing Shape Of Bratz Doll Heads

Color photographs are two-dimensional representations of a three-dimensional object.  While they display color, and shape in two dimensions, they are limited in that they cannot show an object in three dimensions.  Still, they are useful as a means of examining certain features of three-dimensional evidence, and they are routinely admitted into evidence for that purpose upon testimony that they fairly and accurately portray the scene depicted.  *See United States v. Garvin,* 2004 WL 376873, at *2 (3rd Cir. 2004) (photo admissible where fairly and accurately depicts scene); *see also* Fed. R. Evid. 901(a) ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims").

Similarly, the three-dimensional scans presented in Mr. Keiser's Declaration (and again in Mr. Proctor's Declaration) are useful for examining certain features of three-dimensional evidence.  3D scans provide a computerized model of the shape of the object, but do not display the object's original color.  Like a photograph, the size of the image may be larger or smaller than the original object.

---

[18]   Hutnyan Decl. Exh. B, Trial Tr. at 5259:1-8 ("I'm going to deny the motion to preclude Mr. Loetz. . . .   I think Mr. Loetz is on firm ground on his analysis, subject, of course, to the objections that MGA is making"); 5262:20-22 ("That is denied with respect to Mr. Loetz.  He goes forward").

Mr. Keiser is an expert at operating scanning devices. His declaration explains in detail how the attached scans were created -- that's all. Although MGA deposed Mr. Keiser, it has been unable to raise any challenge to the accuracy of the scans as depictions of the objects they depict. By isolating the shape of the objects without regard to their other features, such as color or size, the Keiser scans allow the Court to directly compare that particular feature between objects, which is useful in demonstrating how the Bratz dolls infringe Mattel's copyrighted sculpt. Also, as MGA has pointed out in its Motion (at 10), the scans of the 2008 Bratz doll displayed in the Keiser Declaration are "essentially the same" as scans that were done of earlier generations of Bratz dolls, providing further evidence that the basic Bratz production sculpt has not changed over time.

## B.   That Keiser's Earlier Submitted Expert Reports Have Been Fully Vetted Cuts Against, Not For, MGA

Mr. Keiser's three expert reports[19] -- the last of which was served in April with MGA's stipulation[20] -- included on disks three-dimensional computer scans of Exh. 1135 and other objects, as well as a detailed description of the equipment used to create the scans and of the scanning process. MGA had the opportunity to review those reports, cross-examine Mr. Keiser at deposition, and create its own renderings of the three-dimensional scans (which it did, and presented to him as a deposition exhibit).[21] Thus, MGA has had every opportunity to vet Keiser's equipment, procedures, and experience, with the exception of the 2008 doll whose scan appears

---

[19]   Hutnyan Decl. Exhs. E-G, Expert Reports of Keiser dated February 11, April 3, and April 22, 2008 (without exhibits).

[20]   *Id.*, Exh. H, Stipulation re Supplemental Reports of Frank Keiser, dated May 7, 2008.

[21]   *Id.*, Exh. I, Keiser Dep. Tr. at 63:13-14 (identifying Exh. 5213 as "images where we took the data off of this CD and used software to render images").

1   in Mr. Keiser's current declaration and which MGA admits is "essentially the same"

2   as previous scans.[22]

3        Meanwhile, MGA's suggestion that mention of Mr. Keiser's earlier reports

4   was excluded from Mr. Keiser's current declaration is puzzling.  Expert reports are

5   designed to eliminate unfair surprise to the opposing party.  By providing early

6   notice of an expert's opinions that he will testify about at trial, expert reports allow

7   the other party to arrange for expert testimony from other witnesses and prepare for

8   effective cross examination at trial. <u>Fed</u>. <u>R</u>. <u>Civ</u>. <u>P</u>. 26, Advisory Committee Notes.

9   The concerns expert reports are meant to address are not present here, where there is

10  no planned trial testimony to counter, and where MGA received expert reports

11  several months ago that eliminated any possibility of unfair surprise.

12       Instead, the Keiser declaration provides the information needed to establish

13  the authenticity and admissibility of the attached scans, all it needs to do here.

14  Similarly, on page 12 of its Motion, MGA also argues that Keiser's current exhibits

15  are "outside the scope of [his] three reports" -- again, without showing why they

16  needed to be within that scope to authenticate six images.  There is no such

17  requirement.

18  _____

19  [22]   The supposed differences MGA has identified between the reports and the

20  declaration (Motion at 12:7-14) are so misleading as to compel a response.  MGA
    claims that Mr. Keiser did not include renderings in his reports, but he included all

21  possible renderings by producing the scans in their entirety.  (This is like producing

22  the tangible item, rather than just a photograph of it; not usually a complaint.)  This
    allowed MGA to see and print out every possible rendering, as evidenced by Depo.

23  Exh. 5213 (Hutnyan Decl. Exh. J).  While he did not specifically place images next

24  to each other in the reports, MGA cannot reasonably suggest that this copyright
    infringement action did not put it on notice that the shapes of the doll sculpts and of

25  the Bratz production dolls might be compared.  Further, the renderings that were

26  produced on July 22, 2008 contained exactly such comparisons.  Finally, in neither
    his reports nor his declaration did Mr. Keiser engage in any "manipulation," as

27  explained in further detail below.

28

1   **C.   Contrary To MGA's Argument, There Has Been No**
2      **"Manipulation"**

3      The data collected by Mr. Keiser represents the polygonalized file of the
4   surface geometry of the original object.[23]   It remains unchanged:  "We capture the
5   as-is, the as-built surface and we don't have the ability to change the surfaces."[24]
6   However, using the data, Mr. Keiser can create renderings that appear in different
7   sizes, in different colors, or at different angles.[25]   Those different views allow for
8   examination of different details.   For example, applying a particular color to a
9   rendering allows the eye to perceive nuances of shape that another color may not
10  display as well.  Sizing the rendering up or down allows comparison of the contours
11  of two objects without regard to size.   Angling the model up allows a view of the
12  bottom of the object.   All of these processes are within the realm of "data
13  acquisition":  acquiring the data and rendering it in various ways; something that
14  Mr. Keiser does every time he takes a scan and it appears on his computer screen.

15     His clients sometimes go beyond that.   They take the data and engage in
16  downstream processes such as "texture mapping," whereby a separate file image
17  (like a face) is superimposed onto the three-dimensional rendering.[26]   This has

18
19  _____

20  [23]  *Id.,* Exh. I, Keiser Dep. Tr. at 61:7-13 (Q.   "Would you agree with the
    statement that .stl files describe only the surface geometry of a three-dimensional
21  object without any representation of color, texture or common CAD model
    attributes?"  A.   "Stl refers to the polygonalized file of that surface").
22
    [24]  *Id.,* Exh. I, Keiser Dep. Tr. at 49:24-50:1.
23  [25]  *Id.,* Exh. I, Keiser Dep. Tr. at 50:2-11 (Q.   "And are you familiar with the
    term "rendering"?  A.  "Uh-huh."  Q.  "And what does that term mean to you?"  A.
24  "Rendering is basically how we are going to display it in the file size or whatever."
    Q.  "So how you would display it after you've captured the data on a computer
25  screen?"  A.  "Yes, and the customer usually determines what size files they want
    how we render it").
26
    [26]  *Id.,* Exh. I, Keiser Dep. Tr. at 49:14-50:1.
27

28

nothing to do with the simple colors that Mr. Keiser can place onto the object.[27]  As he testified during his deposition, Mr. Keiser does not engage in any such manipulation activities, and has not here.[28]

With regard to the exhibits of the Keiser Declaration, Mr. Keiser set forth, under oath, exactly what he did with those renderings.  He created the renderings, assigned them identification colors, and slightly scaled down the renderings of one of the sculpts "to facilitate an accurate comparison of the shapes, features and proportions of the sculpts."[29]  When a photographer prints out an image in a particular size or hue, that does not change the admissibility of the image so long as it remains a fair and accurate depiction.  *See Garvin,* 2004 WL 376873, at *2 (admitting photograph of the crime scene though it was taken during the day, when the crimes were committed at night); *United States v. Myers,* 972 F.2d 1566, 1579 (11th Cir. 1992) (admitting photograph of a bunk that was not the bunk at issue but "fairly and accurately" depicted it).  Here, too -- and specifically because Mr. Keiser controlled for size and color -- Mr. Keiser's exhibits are a particularly fair and

---

[27] *Id.,* Exh. I, Keiser Dep. Tr. at 61:14-17 ("You can assign a color to the whole file").  See also Keiser Deposition at 51:5-13 (Q.  "The way you understand the term 'texture mapping,' does it include color information of the item?"  A.  "Yes, yes, but that's done through a digital photograph in another process."  Q.  "Okay.  But if I use the phrase 'texture mapping' in asking questions to you you'll understand that I'm talking about color information?"  A.  "Yeah, but it doesn't apply to what we did").  The colors Mr. Keiser applies are placed on the renderings in a manner similar to changing the color of a font in Microsoft Word:  highlighting the object to be colored and selecting a color.  Similarly, while the colors themselves are not located on the data file (the .stl file of the scan), they are part of the rendering software.  Keiser Deposition at 61:7-18.

[28] *Id.,* Exh. I, Keiser Dep. Tr. at 49:14-50:1; 68:25-69:2; *see also* 69:12-15 (Q.  "Does texture mapping have anything to do with what you were doing for purposes of your expert work in this case?"  A.  "No").

[29] Keiser Decl., ¶¶ 10-12.

accurate depiction of the *shapes* of these objects and should be considered by the Court in connection with Mattel's motion for permanent injunction.

## IV. THE HOLLANDER DECLARATION IS PROBATIVE, ADMISSIBLE EVIDENCE RELEVANT TO THE INTRINSIC TEST

In moving to strike the Hollander declaration, MGA seeks to eliminate another highly probative, admissible piece of evidence that would be useful to the Court in its determination of the scope of defendants' infringement.  Mr. Hollander's expert report, including his survey and survey results, shows that a net of more than 91% of young girls -- the intended audience for the Bratz dolls and the specialized audience the Court has found relevant to the intrinsic test -- recognized Bryant's drawings as the Bratz dolls, even when the dolls were not before them.

### A. MGA's Pending Motion In Limine, To The Extent Its Issues Are Still Pertinent Or Live, Is Something The Court Can Resolve Without Further Ado[30]

There is no need for a hearing on MGA's pending motion in limine, or a *Daubert* hearing.  First, MGA's argument that Mr. Hollander's testimony was not proper rebuttal testimony was not only resolved by the Court ("This is clearly a rebuttal expert designated as such by Mattel"),[31] but has no pertinence in the current posture of this proceeding.

MGA's next argument, that Mr. Hollander's survey is not relevant to the issue of copyright infringement, has also been resolved.  As MGA points out on page 14 of its Motion, the jury was properly instructed that:

---

[30]   Mattel has already responded to MGA's arguments that (1) it cannot submit evidence on a post-trial motion that it did not present at trial, and (2) in providing evidence useful to the factfinder, Mattel is somehow usurping the role of the fact finder, above (see Section I, *supra*) and thus will not reiterate those responses here.

[31]   Hutnyan Decl. Exh. B, Trial Tr. 5236:6-7.

"You should ask yourself whether the ordinary, reasonable audience, in this case girls between the ages of 7 and 12, would determine or recognize the defendants' products as reflecting the total concept and feel, or as a picturization, of the Bratz-related works that you have found Carter Bryant created, alone or jointly with others, while employed by Mattel."[32]

MGA's final argument, that supposed methodological flaws made the survey inappropriate for presentation to a jury, is not relevant here, as the evidence is not being presented to a jury.   Moreover, even if the survey had suffered from methodological flaws, that would not be a basis for excluding it.   The claimed methodological flaws would go to weight, not admissibility.   See Prudential Insurance Co. v. Gibralter Financial Corp., 694 F.2d 1150, 1156 (9th Cir. 1982) ("technical unreliability goes to weight accorded a survey, not its admissibility"); Stuhlbarg International Sales Co. v. John D. Brush and Co., 240 F.3d 832, 840 (9th Cir. 2001) (survey that failed to explain its design, questions or methodology admitted);   Anti-Monopoly, Inc.   v.   General   Mills   Fun   Group,   Inc., 684 F.2d 1316, 1325 (9th Cir. 1982), cert. denied, 459 U.S. 1227 (1983) (district court's exclusion of survey because it was "overwhelming prone to errors of subjective grading and other methodological deficiencies abound" overturned); A&M Records, Inc. v. Napster, 2000 WL 1170106 at 7-8, (C.D. Cal. 2000), rev'd in part on other grounds, 293 F.3d 1004 (9th Cir. 2001) (refusing to exclude survey that was of "dubious reliability and value" and explaining that "the Ninth Circuit has

---

[32]   Id., Exh. B, Trial Tr. 8097:13-21.   The law establishing this specialized audience as the proper "ordinary observer" for the intrinsic test in this case is set forth in Hutnyan Decl. Exh. K, Mattel, Inc.'s Opposition to the MGA Parties' Motion In Limine No. 8 To Strike Expert Report of Kenneth Hollander and Sections Of Expert Rebuttal Reports of Heather McComb, Denise Van Patten, and Nicholas Mirzoeff ("Opposition to MIL No. 8"), dated April 28, 2008, at 3-6 and is incorporated herein by reference.

- 18 -

1  expressed confidence in a jury's ability to decide whether asserted technical

2  deficiencies undermine the probative value of non scientific expert studies");

3  <u>Southland Sod Farms v. Stover Seed Co.</u>, 108 F.3d 1134, 1143 (9th Cir. 1997)

4  (survey with methodological flaws such as leading questions admitted); <u>Clicks

5  Billiards Inc. v. Six Shooters, Inc.</u>, 251 F.3d 1252, 1262-1264 (9th Cir. 2001)

6  ("[s]uch surveys while often subject to criticism and varying interpretations, are a

7  routine and well established feature of trade mark practice" and that "'[t]echnical

8  unreliability'" as well as "issues of methodology, survey design, reliability, the

9  experience and reputation of the expert, critique of conclusions, and the like" all are

10  factors that "go to the weight of the survey rather than its admissibility") (quoting

11  <u>Prudential</u>, 694 F.2d 1150, 1156).

12      The Ninth Circuit has specifically rejected attempts to introduce different

13  rules regarding survey evidence from other circuits for nearly 20 years.   In

14  <u>Prudential Ins. Co. of Am.</u>, 694 F.2d at 1156, the court explicitly rejected a contrary

15  rule from the Second Circuit.   The defendants in <u>A&M Records v. Napster</u>, like

16  defendants here, argued that alleged technical flaws should result in exclusion of a

17  survey.  The court held that this "misreads Ninth Circuit case law on the impact of

18  <u>Daubert</u> on methodological flaws in surveys."   The court reiterated the Ninth

19  Circuit's holding that challenges to methodology go to weight, not admissibility.

20  <u>See</u> <u>A & M Records</u>, 2000 WL 1170106 at *3.

21      Here, MGA has already cross-examined Mr. Hollander at deposition about his

22  report and survey, and all the alleged methodological flaws MGA was able to come

23  up with should have been in its motion in limine.  There is no need for a further

24

25

26

27

28

1   hearing.   The Court can review the survey and determine whether the supposed

2   methodological flaws[33] affect the weight to be accorded it, and to what extent.

3       **B.**     **Mr. Hollander's Expert Report Has Been Sworn And Affirmed By**

4               **Declaration And Is Admissible**

5       The two cases cited by MGA establish that <u>Rule</u> 26 expert reports are

6   typically not admissible at trial without the testimony of the witnesses but do not

7   render the Hollander Declaration and survey inadmissible in this proceeding, where

8   Mr. Hollander's expert report can be affirmed by affidavit or declaration.

9       Here all the facts relevant to the Court in admitting Mr. Hollander's report are

10  provided in his Declaration.   Under oath and penalty of perjury, based on his

11  "personal and firsthand knowledge," Mr. Hollander attests that the expert report is a

12  true, accurate and correct copy of the report that set forth his opinions in this case.

13  That is all that is required.   *See Maytag Corp. v. Electrolux Home Products, Inc.,*

14  448 F. Supp. 2d 1034, 1064 (N.D. Iowa 2006) (affidavit reiterating or reaffirming

15  the opinions in an unsworn expert report render report admissible); *Floyd v. Hefner,*

16  556 F. Supp. 2d 617, 635 (S.D. Tex. 2008) (unsworn expert report admissible when

17  attached to expert's declaration authenticating the report and incorporating it by

18  reference).

19  \\

20  \\

21  \\

22  \\

23  \\

24  \\

25  

---

26  [33]   Mattel has addressed each of the supposed flaws identified by MGA in its

27  motion in limine in its written opposition to that motion and incorporates that

    discussion by reference herein. *See Id.,* Exh. K, Opposition to MIL No. 8, at 12-14.

28  

MATTEL'S OPPOSITION TO MGA'S MOTION TO STRIKE THE DECLARATIONS OF B. DYLAN PROCTOR, FRANK KEISER AND KENNETH HOLLANDER

1

## **Conclusion**

2      For the foregoing reasons, MGA's motion to strike the Proctor, Keiser, and

3   Hollander Declarations should be denied.

4

5   DATED:  October 27, 2008      QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

6                                    By /s/ John Quinn

7                                    John B. Quinn
                                     Attorneys for Mattel, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00505.07209/2679949.2

- 21 -      Case No. CV 04-9049 SGL (RNBx)
MATTEL'S OPPOSITION TO MGA'S MOTION TO STRIKE THE DECLARATIONS OF B. DYLAN PROCTOR,
FRANK KEISER AND KENNETH HOLLANDER