QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No.    CV 04-09059<br>Case No.    CV 05-2727<br><br>**MATTEL, INC.'S [PUBLIC REDACTED] OPPOSITION TO MGA'S MOTION TO STRIKE AND OBJECTIONS TO EXHIBITS ATTACHED TO THE DECLARATION OF DIANE C. HUTNYAN IN SUPPORT OF MATTEL INC.'S MOTION FOR A PERMANENT INJUNCTION**<br><br>Date: Nov. 10, 2008<br>Time: 1:00 p.m.<br>Place: Courtroom 1<br><br>**Phase 1(a):**<br>Trial Date:   May 27, 2008<br><br>**Phase 1(b):**<br>Trial Date:   July 23, 2008 |

07209/2681401.1

Case No. CV 04-9049 SGL (RNBx)
MATTEL, INC.'S OPPOSITION TO MGA'S MOTION TO STRIKE

**Preliminary Statement**

In Phase 1(a), when Mattel's market share was not relevant to any issue before the Court, MGA repeatedly argued Mattel's loss of market share. For example, at the beginning of Phase 1(a), MGA used Mattel's loss of market share in arguing its motions for summary judgment.[1] During Phase 1(a) trial, MGA elicited testimony from Ivy Ross regarding Barbie's loss of market share to Bratz.[2] And at the Phase 1(a) trial, MGA returned to Mattel's loss of market share in its closing arguments.[3]

Now, with Phase 1(a) behind the parties and market share actually relevant, MGA claims there is "no evidence that [Mattel] actually lost market share."[4] What's more, MGA seeks to exclude evidence of the same fact it so frequently referred to in Phase 1(a) – that Mattel has lost market share to Bratz. MGA even attempts to exclude evidence previously admitted at trial.[5]

MGA should not be permitted to reverse course now that its repeated arguments to the Court and the jury pose a threat to its case. For the reasons set forth below, Mattel respectfully requests that all of MGA's objections be overruled so the Court may fully consider the issue of irreparable harm to Mattel.

---

[1] Declaration of Curran Walker In Support of Mattel's Opposition to MGA's Motion To Strike and Objections To Exhibits Attached To The Declaration Of Diane C. Hutnyan In Support of Mattel's Motion For A Permanent Injunction (hereinafter, "Walker Decl.") Exh. A, Trial Tr. 120:2-3, 116:12-15.
[2] Id., Exh. A, Trial Tr. 405:12-20.
[3] Id., Exh. A, Trial Tr. 4902:6-8, 4964:3-13, 4964:5-15.
[4] MGA Parties' Opposition to Mattel's Motion for Permanent Injunction, Dkt. 4364, at 10.
[5] Exhibit 62 to the Hutnyan Decl. was admitted at trial on August 6, 2008. At that time MGA claimed that it had no objections to the exhibit. Walker Decl. Exh. A, Trial Tr. 6105:22-25. Though MGA has thus waived its right to object to Exhibit 62, its Motion nonetheless asserts that the "entire document...is inadmissible." Motion at 3.

## Argument

### I. MGA HAS CONCEDED MATTEL'S LOSS OF MARKET SHARE, AND MADE IT A CENTERPIECE OF ITS CASE

From its April 2005 complaint to its closing arguments at Phase 1(a) trial, MGA has relied time and again on a now-familiar argument – Mattel's loss of market share to Bratz. MGA begins only eight paragraphs into its complaint: "[Bratz] is the first fashion doll that has been able to seriously challenge 'Barbie' for market share, and begin to loosen Mattel's 50-year iron-fisted grip on the fashion doll market."[6] "[W]ith 'BRATZ,' MGA was able to chip away at Mattel's stranglehold on the fashion doll market, gaining shelf space and market share as 'Barbie' sales remained flat or, at times, declined...Mr. Eckert's 'leaner' Mattel was not enough to battle more potential erosion in 'Barbie's' market share."[7]

MGA began compiling testimony about Mattel's market share even before it filed its complaint. In the deposition of Cassidy Park, MGA's counsel asked Ms. Park, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[8] Ms. Park responded that Mattel has lost ▮▮▮▮▮▮ market share.[9] MGA subsequently questioned numerous Mattel witnesses on this subject, including Julia Jenson ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮),[10] Tim Kilpin (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮),[11] Milton Zablow (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[6] April 13, 2005 Complaint, CV05-02727 Dkt.1, at ¶ 8.
[7] April 13, 2005 Complaint, CV05-02727 Dkt. 1, at ¶¶ 29, 30.
[8] Walker Decl. Exh. B, Park Dep. Tr. at 154:25-155:1.
[9] Id., Exh. B at 155:24.
[10] Id., Exh. C, Jenson Dep. Tr. at 180:15-17.
[11] Id., Exh. D, Kilpin Dep. Tr. at 165:14-15.

1 ███████████████████████████████████████████████),[12] and

2 Matthew Bousquette (████████████████████████████████████

3 ████████████████████████████████████████████████████████

4 ████████).[13] MGA asked Mattel's CEO, Robert Eckert, at deposition about market share more than 80 times over 33 pages of transcript.[14]

MGA also has frequently touted at hearings its argument that Mattel has lost market share to Bratz. During the April 22, 2008 hearing on the parties' motions for summary judgment, for example, MGA used Mattel's loss of market share to support its affirmative defenses. "[O]nce they started to lose market share, they had no choice but to commence litigation."[15] "[I]t was only after the dolls were losing market share at Mattel, . . . that there was a decision made internally at Mattel to litigate MGA to death."[16] In another hearing, MGA specifically defended the extrajudicial statements it had made about "the scope of the market share it enjoyed, and its market position relating to Mattel," arguing that any suggestion that it had made misstatements on these subjects was "false."[17]

By the close of Phase 1(a) trial, Mattel's loss of market share had become a familiar theme, one to which MGA returned in its closing arguments: "Mattel and MGA compete in the marketplace. And you now know that for 40 years, Barbie was the only doll in town and Bratz came in and knocked her off her pedestal."[18] To drive the point home, Mr. Nolan read the jury Ms. Ross's trial

---

[12] Id., Exh. E, Zablow Dep. Tr. at 72:18-21.
[13] Id., Exh. F, Bousquette Dep. Tr. at 80:12-15.
[14] Id., Exh. G, Eckert Dep. Tr. at 60-93, *passim*.
[15] Id., Exh. J, April 22, 2008 Hearing Tr. 120:2-3.
[16] Id., Exh. J, April 22, 2008 Hearing Tr. 116:12-15.
[17] Id., Exh. H, Dec. 3, 2007 Hearing Tr. 16:13-21.
[18] Id., Exh. A, Trial Tr. 4902:6-8.

testimony regarding lost market share.[19] "This case," he urged, "is about competition."[20]

## II. MGA'S RELEVANCE OBJECTIONS MISCONSTRUE THE DEFINITION OF RELEVANCE

Fed. R. Evid. 401 does not limit relevance to that evidence which states directly the proposition to be proven. Rather, Rule 401 brings indirect and circumstantial evidence within the broad sweep of relevance: "'relevant evidence' means evidence having *any tendency* to make the existence of [a material fact] more probable or less probable than it would be without the evidence." (emphasis supplied).

Mr. Larian's admission that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[21] has a tendency to make it more probable that Mattel has in fact lost market share. MGA's Emergency Motion in the Ninth Circuit -- which includes the judicial admissions that the introduction of Bratz in 2001 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[22] -- has a strong tendency to make it more probable that Mattel has lost market share.

---

[19] Id., Exh. A, Trial Tr. 4964:3-13.
[20] Id., Exh. A, Trial Tr. 4964:5-15.
[21] Declaration of Diane C. Hutnyan In Support of Mattel, Inc.'s Motion For Permanent Injunction ("Hutnyan Decl."), Dkt. 4320-4327, Exh. 62.
[22] Hutnyan Decl. Exh. 86. MGA objects that the cited portion of Exhibit 86 is irrelevant because it pertains to 2001 and thus has no bearing on whether Mattel continued to lose market share to Bratz. But Exhibit 86 states that Bratz "began eroding" Mattel's market share, indicating that erosion continued after 2001. Furthermore, the other exhibits to which MGA objects demonstrate that Mattel did in fact continue to lose market share (Hutnyan Decl. Exh. 92), 2003 (TX 630, Hutnyan Decl. Exh. 62), 2004 (Hutnyan Decl. Exh. 128), 2005 (Hutnyan Decl. Exh. 93), and through 2006, when Mr. Larian told ABC Nightline that Bratz had gained a 40% market share and that it was time for "Barbie" to retire (Hutnyan Decl. Exh. 90.). Accordingly, MGA's relevance objections to Exhibit 86 should be overruled.

Exhibits 90, 92, 93, 94, and 128 all have a similar tendency. It is of no consequence that some of these exhibits do not state explicitly that Mattel has lost market share to MGA. They are relevant because they have a tendency to prove the likelihood that Mattel has lost and will lose market share to MGA. MGA's relevance objections should accordingly be overruled.

### III. MGA'S COMPETENCE OBJECTIONS ASSUME THAT INFORMATION ABOUT MATTEL'S MARKET SHARE IS AVAILABLE ONLY TO MATTEL

MGA objects to Exhibits 62 and 128 on the grounds that "only Mattel and its executives have personal knowledge of Mattel's market-share performance ... And certainly no evidence was introduced at trial that Mr. Larian had personal knowledge of Mattel's market share." In fact, Mr. Larian testified at trial that he has been monitoring Mattel's market share consistently since 2001. "Since 2001, Barbie had over 90 percent market share; so I monitored that in 2001. And I monitored it ever since."[23] He explained that MGA has subscribed to NPD reports – reports showing the market share and sales of different brands[24] – for the past 10-15 years.[25] Mr. Larian had a basis for his admissions.

MGA similarly objects that Dave Malacrida, MGA's director of public relations, does not have personal knowledge of Mattel's market share. However, like Mr. Larian, Mr. Malacrida routinely reviewed market share information contained in NPD reports. As he testified at his deposition, Mr. Malacrida frequently reviewed NPD market share information in the course of verifying the accuracy of MGA's press releases.[26] It is simply not the case that Mattel is the sole

---

[23] Walker Decl. Exh. A, Trial Tr. (Larian) 6276:7-9.
[24] Id., Exh. A, Trial Tr. (Larian) 6276:7-9.
[25] Id., Exh. A, Trial Tr. (Larian) 6275:9-15.
[26] Id., Exh. I, Malacrida Dep. Tr. at 329:13-330:3.

possessor of information about market share. There is adequate foundation for MGA's admissions and MGA's objections should be overruled.

MGA also recants the representation its own lawyers made to the Ninth Circuit, arguing that the statements were incompetent. It is remarkable that MGA would now assert that its own lawyers engaged in misrepresentation. But the statement at issue was hardly made from whole cloth by MGA's appellate lawyers; it corroborates the claims MGA has made elsewhere regarding the loss of market share by Mattel, i.e., statements which it seeks to exclude elsewhere in the motion as "irrelevant" without claiming they are untrue.

Moreover, the statement in the Ninth Circuit pleadings was a factual position taken to induce that Court to grant interlocutory relief. Not only is the statement admissible, but MGA made the statement in a "statement of facts" and can hardly claim now that it was other than a true, factual representation.

Finally, MGA claims that the statements made by the journalists in Exhibits 90 and 92 are not competent. But these statements simply recount interviews with Mr. Larian and Mr. Malacrida. There can be no question that these journalists have personal knowledge of their own interviews. Their statements are competent.

IV. <u>STATEMENTS MADE BY MR. LARIAN AND MR. MALACRIDA ARE ADMISSIBLE NON-HEARSAY</u>

Exhibits 90 and 92 contain statements made to the media by Mr. Larian and Dave Malacrida, MGA's director of public relations. MGA has characterized both of these exhibits as double hearsay.

But Mr. Larian's and Mr. Malacrida's statements regarding market share are party admissions, not hearsay. Though MGA offers no explanation of how Mr. Larian's statements regarding market share are hearsay, MGA does argue that

Mr. Malacrida's role is "public relations," and thus statements regarding "business strategy" are not within the scope of Mr. Malacrida's employment.[27] As director of public relations, however, Mr. Malacrida's job is not to tell the press about MGA's public relations. His job is to tell the press about MGA's operations. This includes statements regarding the target market for MGA's products. The statement is admissible non-hearsay.

To the extent that Exhibits 90 and 92 contain statements made by journalists and not by Mr. Larian or Mr. Malacrida, the exhibits are non-hearsay adoptive admissions under Fed. R. Evid. 801(d)(2)(B). Exhibit 90 is a December 2006 transcript of ABC Nightline in which MGA's CEO appeared on prime-time television and announced that "[i]t's time for [Barbie] to retire. She's been around too long...I would help her retire."[28] Mr. Larian then pledged that "[MGA is] gonna become number one. I promise you that."[29] MGA was undoubtedly aware of the interview as-aired, and if it believed that Mr. Larian's statements, or those of the journalists, were in error, MGA could easily have issued a public correction through its public relations personnel. It did not. See New England Mutual Life. Ins. Co. v. Anderson, 888 F.2d 646, 650 (10th Cir. 1989) (admission by failure to respond to newspaper article requires foundational showing that defendant read newspaper article, was in a position to respond, and it would have been reasonable to respond). After such a high-profile interview, MGA's silence speaks volumes.

Exhibit 92 is a 2002 Reuters article for which MGA's director of public relations was interviewed. Mr. Malacrida was thus undoubtedly aware of this article, and MGA could have, and almost certainly would have, issued a public correction if it believed that MGA's director of public relations had been misquoted.

---

[27] Motion at 4.
[28] Hutnyan Decl. Exh. 90 at Bates Nos. M0062149-M0062150.
[29] Id., Exh. 90 at Bates Nos. M0062151 and M0062152.

It did not. In fact, Mr. Malacrida subsequently testified that he has not made any comment on the article since its publication aside from a phone call to the reporter.[30] MGA's hearsay objections should be overruled.

### Conclusion

MGA has spent the last three and half years taking discovery on Mattel's lost market share and arguing the importance of Mattel's lost market share. Now that Mattel seeks to bring the importance of lost market share to the attention of the Court, MGA claims that its officers, employees, and counsel are not competent to comment on market share, and that their statements about market share are irrelevant. For the foregoing reasons, MGA's motion to strike exhibits to the Hutnyan Declaration should be denied.

DATED: October 27, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Michael T. Zeller
   Michael T. Zeller
   Attorneys for Mattel, Inc.

---

[30] Walker Decl. Exh. I, Malacrida Dep. Tr. at 137:21-140:6.