# EXHIBIT A

4890

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3               EASTERN DIVISION

4

5     HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6

7  MATTEL, INC.,                    )
                                    )
8                 PLAINTIFF,        )
                                    )
9          VS.                      )   NO. CV 04-09049
                                    )
10 MGA ENTERTAINMENT, INC., ET. AL.,)   TRIAL DAY 23
                                    )   AFTERNOON SESSION
11                DEFENDANTS.       )   PAGES 4890-5014
                                    )
12 AND CONSOLIDATED ACTIONS,        )
   _____ )
13

14

15     REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16              RIVERSIDE, CALIFORNIA

17            THURSDAY, JULY 10, 2008

18                  1:30 P.M.

19

20

21

22

23          THERESA A. LANZA, RPR, CSR
        FEDERAL OFFICIAL COURT REPORTER
24          3470 12TH STREET, RM. 134
         RIVERSIDE, CALIFORNIA  92501
25              951-274-0844
             WWW.THERESALANZA.COM

**CERTIFIED COPY**

EXHIBIT ___A___
PAGE ___3___

4891

```
1    APPEARANCES:

2

3    ON BEHALF OF MATTEL, INC.:

4                    QUINN EMANUEL
                     BY:  JOHN QUINN
5                         JON COREY
                          MICHAEL T. ZELLER
6                         HARRY OLIVAR
                          TIMOTHY ALGER
7                         WILLIAM PRICE
                     865 S. FIGUEROA STREET,
8                    10TH FLOOR
                     LOS ANGELES, CALIFORNIA  90017
9                    213-624-7707

10

11   ON BEHALF OF MGA ENTERTAINMENT:

12                   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                     BY:  THOMAS J. NOLAN
13                        JASON RUSSELL
                          RAOUL KENNEDY
14                        LAUREN AGUIAR
                          CARL ROTH
15                   300 SOUTH GRAND AVENUE
                     LOS ANGELES, CALIFORNIA  90071-3144
16                   213-687-5000

17

18

19

20

21

22

23

24

25
```

EXHIBIT A
PAGE 4

THURSDAY, JULY 10, 2008                    TRIAL DAY 23, AFTERNOON SESSION

4901

1   ISAAC LARIAN, VERONICA MARLOW HAD QUIT, BECAUSE MEL WOODS AND

2   PAULA GARCIA WERE DEMANDING TO KNOW THE IDENTITY OF WHO THEY

3   WERE USING AS THIRD-PARTY VENDORS.

4          THAT'S THE REST OF THE STORY.  DO NOT DECIDE THIS

5   CASE, LADIES AND GENTLEMEN, ON INNUENDO.

6          MR. QUINN SAYS THAT WE STOLE IDEAS AND DRAWINGS FROM

7   MATTEL.  THE ONLY THEFT THAT WILL OCCUR IN THIS CASE IS IF --

8   AND I DON'T BELIEVE THIS IS GOING TO HAPPEN -- IF YOU ALLOW

9   MATTEL TO TAKE IDEAS AND DRAWINGS THAT THEY DID NOT CONCEIVE

10  OF, THAT THEY DID NOT DRAW, AND DOLLS THAT THEY DID NOT MAKE.

11         THAT'S WHAT THIS CASE IS ABOUT.

12         THE CENTRAL ISSUE IN THIS CASE IS, WHEN DID

13  CARTER BRYANT FIRST CONCEIVE OF THE BRATZ CHARACTERS AND REDUCE

14  HIS IDEA TO A DRAWING?

15         MATTEL WILL DO EVERYTHING, AND DID EVERYTHING, TO

16  DISTRACT YOU FROM THAT MAIN POINT.

17         IN LATE AUGUST OF 1998, CARTER BRYANT DESCRIBED THE

18  FOUR BRATZ CHARACTERS IN HIS HANDWRITTEN NOTES.  YOU HAVE IT IN

19  EVIDENCE.  IT'S TRIAL EXHIBIT 709.

20         COULD I HAVE SLIDE 27 UP.

21         THIS IS THE DOCUMENT, "MEET THE BRATZ."

22         THE NAME "BRATZ" IS MENTIONED RIGHT THERE.

23  CARTER BRYANT TESTIFIED THAT THIS WAS HIS CONCEPT FOR WHAT THE

24  BRATZ WOULD BE.  IT TURNS OUT THAT IT BECAME THE INITIAL

25  INSPIRATION FOR A DOLL LINE THAT WAS FABULOUSLY SUCCESSFUL,

EXHIBIT A
PAGE 5

01:45
01:45
01:46
01:4
01:4

4902

1   THAT MR. QUINN EVEN ADMITTED WAS HUGELY SUCCESSFUL AROUND THE

2   WORLD.   AND THAT, LADIES AND GENTLEMEN, IS COMPETITION.   AND

3   THAT IS REALLY WHAT IS GOING ON AS A SUBTEXT IN THIS CASE.

4           YES, IT'S ABOUT DOLLS; BUT, YES, IT IS SO MUCH MORE

5   IMPORTANT THAN THAT.

6           MATTEL AND MGA COMPETE IN THE MARKETPLACE.   AND YOU

7   NOW KNOW THAT FOR 40 YEARS, BARBIE WAS THE ONLY DOLL IN TOWN,

8   AND BRATZ CAME IN AND KNOCKED HER OFF HER PEDESTAL.   AND MATTEL

9   HAS AGGRESSIVELY ACCUSED ALL OF US IN A CONSPIRACY TO STEAL AN

10  IDEA THAT THEY NEVER HAD, THEY NEVER MADE.

11          BRATZ WAS BORN ON AN AUGUST EVENING IN KIMBERLING

12  CITY.   THE BEST EVIDENCE OF IT IS THE TESTIMONY OF

13  JANET BRYANT.   MOTHERS DON'T LIE.   MR. QUINN EVEN ADMITTED

14  THAT.   THEY MAY BE MISTAKEN.   AND SHE CERTAINLY MADE MISTAKES

15  WITH RESPECT TO WHAT DRAWINGS SHE MAY HAVE SEEN.   BUT HER

16  DEPOSITION WAS TAKEN NINE YEARS AFTER SHE SAW THE DRAWINGS.

17  BUT IF THERE WAS A CONSPIRACY, YOU WOULD HAVE EXPECTED HER TO

18  NAIL IT; 'OH, I SAW THAT ONE; I SAW THIS ONE; I SAW THAT ONE; I

19  DIDN'T SEE THIS; OH, NO, I DIDN'T SEE THIS ONE.'

20          SHE'S HONEST.

21          COULD WE ALL, EVEN AFTER SEVEN WEEKS --

22          I MEAN, I'M SITTING AROUND IN A CONFERENCE ROOM,

23  GOING, 'IS THIS IN EVIDENCE?   DID WE INTRODUCE THIS IN

24  EVIDENCE?   DID I ASK QUESTIONS ABOUT THIS ONE?'

25          THERE'S A LOT OF DRAWINGS HERE.   THE FAILURE TO

EXHIBIT ___A___

PAGE ___ن___

4903

1  IDENTIFY WITH SPECIFICITY A PARTICULAR DOCUMENT, I SUBMIT TO

2  YOU, LADIES AND GENTLEMEN, IS A TESTAMENT TO HER TRUTH, BECAUSE

3  SHE WASN'T COLORING HER TESTIMONY.

4          AARON, CAN YOU PLAY THE TESTIMONY FROM MRS. BRYANT.

5          (EXCERPT PLAYED AS FOLLOWS.)                              01:4

6          QUESTION:  "PLEASE TELL US WHAT YOU CAN RECALL ABOUT

7  THE OCCASION IN WHICH CARTER FIRST SHOWED YOU ANY BRATZ

8  DRAWINGS OF ANY KIND."

9          ANSWER:  "HE KNOCKED ON MY BEDROOM DOOR, SAID, 'MOM,

10  I WANT TO SHOW YOU SOMETHING.  WHAT DO YOU THINK OF THIS IDEA?   01:5

11  WHAT DO YOU THINK OF THESE?'"

12          (END OF EXCERPT PLAYED.)

13          **MR. NOLAN:**  MR. BRYANT, AT THE TIME, WAS WORKING AT

14  OLD NAVY.

15          AND, AGAIN, IF YOU CAN'T CONFRONT THE EVIDENCE AND       01:5

16  YOU CAN'T DEAL WITH IT ON A TRUTHFUL BASIS, THEN RIDICULE IT.

17  I SUBMIT, RESPECTFULLY, THAT'S HOW MATTEL HANDLED THIS.

18          IN THE OPENING STATEMENT, SO MUCH TIME AND EFFORT WAS

19  SPENT ON KICKAPOO HIGH SCHOOL AND THE ROUTE THAT WAS DRAWN.

20  YOU'LL RECALL -- DO YOU HAVE THE SLIDE THAT WAS USED IN OPENING  01:5

21  STATEMENT, AARON -- OF COURSE, THIS IS THE ROUTE THAT WAS

22  PRESENTED TO YOU BY MATTEL, WHERE IT SHOWS OLD NAVY AND A

23  CIRCUITOUS ROUTE AROUND THE AREA OF THE HIGH SCHOOL, AND THEN

24  THE ROUTE HOME TO THE PARENTS' HOUSE.

25          THAT'S WHAT MATTEL WANTED YOU TO BELIEVE WAS THE         01:5

EXHIBIT ___A___

PAGE ___7___

4963

BUSINESS REVIEW.

1

2          "LIKE ANY NEW CEO WHO WALKS INTO A STRUGGLING

3     COMPANY, I WAS FACING UNREALISTIC EXPECTATIONS FROM ALL KINDS

4     OF PEOPLE WHO HAD NEVER MET ME.  NOT JUST WALL STREET ANALYSTS

5     AND CUSTOMERS, BUT ALSO MATTEL EMPLOYEES AROUND THE WORLD.'          03:45

6          "THAT'S HOW YOU FELT WHEN YOU TOOK THIS JOB; RIGHT?"

7          ANSWER:  "YES."

8          NEXT SLIDE, PLEASE.

9          QUESTION:  "SO IT'S TRUE THAT WHEN YOU CAME TO

10    MATTEL, YOU KNEW AND FOUND THAT YOU NEEDED TO FOCUS ON              03:45

11    CREATIVITY AT MATTEL; CORRECT?"

12         ANSWER:  "YES."

13         NEXT SLIDE.

14         QUESTION:  "MATTEL HAD LOST ITS FOCUS.  IT WAS LOSING

15    UP TO $1 MILLION A DAY ON THE LEARNING COMPANY, A SOFTWARE FIRM     03:46

16    ACQUIRED DURING MY PREDECESSOR'S REIGN.  MATTEL WAS BORROWING

17    MONEY TO STAY AFLOAT.  MORALE WAS AT AN ALL-TIME LOW, AND THE

18    STOCK PRICE WASN'T FAR BEHIND.  MATTEL NO LONGER KNEW WHAT IT

19    WAS OR WHAT IT STOOD FOR.  IT WAS TIME TO REFOCUS.  THAT'S HOW

20    YOU FELT WHEN YOU TOOK THIS JOB; RIGHT?"                            03:46

21         ANSWER:  "YES."

22         NEXT SLIDE.

23         QUESTION:  "YOU SAID THAT YOU WOULDN'T AGREE WITH MY

24    TERM 'STRUGGLE.'  USE YOUR OWN WORDS TO DESCRIBE BARBIE BRAND

25    IN 2000, 2001, WHEN YOU GOT THERE."     EXHIBIT  A                  03:46

                                            PAGE ___8___

THURSDAY, JULY 10, 2008
                              TRIAL DAY 23, AFTERNOON SESSION

4964

1      ANSWER:  "I BELIEVE THAT BARBIE SALES WERE DECLINING

2   IN THE U.S. IN 2000 AND 2001."

3      MR. NOLAN:  LET'S GO TO IVY ROSS, FIRST WITNESS,

4   FORMER HEAD OF THE GIRLS' DIVISION AT MATTEL.

5      QUESTION:  "MS. ROSS, BY THE TIME YOU LEFT BARBIE                    03:47

6   TOWARD THE END OF 2003, IT'S TRUE THAT BARBIE HAD LOST

7   SIGNIFICANT MARKET SHARE TO BRATZ; CORRECT?"

8      ANSWER:  "I DON'T KNOW IF I WOULD USE THE WORD

9   'SIGNIFICANT.'  IT DEFINITELY LOST SOME MARKET SHARE TO BRATZ."

10     QUESTION:  "WAS IT A CONCERN WITHIN MATTEL?"                        03:47

11     ANSWER:  "IT WAS SOMETHING WE WERE ALL AWARE OF, LIKE

12  WE WERE AWARE OF THE COMPETING ISSUES, FIGHTING FOR MARKET

13  SHARE, SO WE WERE CONCERNED, YES."

14     MR. NOLAN:  THIS CASE, LADIES AND GENTLEMEN, IS ABOUT

15  COMPETITION.                                                          03:47

16     BUT THE LAST SERIES OF CHARTS -- WE TALKED ABOUT

17  MOTHERS AND WHETHER OR NOT THEY WOULD LIE, AND WE TALKED ABOUT

18  JANET BRYANT.  SHE WAS ACCURATE AND HONEST.  I DID DRAW FROM A

19  COMMENT THAT I USED TO BE TOLD GROWING UP BY MY OWN MOTHER:

20  PEOPLE WHO LIVE IN GLASS HOUSES SHOULDN'T THROW ROCKS.               03:4

21     MATTEL HAS NO RIGHT, NO BUSINESS, IN THIS COURTROOM,

22  TO DISPARAGE THE ASPIRATIONS OF THE EMPLOYEES OF MGA AND MAKE

23  IT APPEAR TO YOU THAT THEY COULD NOT SHOOT STRAIGHT AND THEY

24  COULD NOT DESIGN A DOLL ON ITS OWN.  IT WAS HARD WORK.  IT TOOK

25  A LOT OF DEDICATION.  AND THEY DID IT.   EXHIBIT  A                   03:4
                                          PAGE    9

4965

1      THE LAST POINT I WANT TO GO TO, VERY LAST POINT,

2  BECAUSE I HAVE -- I THINK I HAVE ABOUT TEN MINUTES, YOUR HONOR.

3           **THE COURT:**  YOU HAVE 20 MINUTES, COUNSEL.

4           **MR. NOLAN:**  CAN YOU PUT UP THE TIMELINE ON THE

5  CONCEALMENT SOURCE.                                                03:48

6      SPENT A LOT OF TIME ON NEWSPAPER ARTICLES.  WE WERE

7  SUPPOSED TO HAVE CONCEALED CARTER BRYANT'S INVOLVEMENT.  NOT

8  TRUE, LADIES AND GENTLEMEN.  THE LARGEST DISTRIBUTION BUSINESS

9  MAGAZINE, NEWSPAPER ARTICLE, WALL STREET JOURNAL, WE DISCLOSED

10  CARTER BRYANT'S IDEA.                                             03:48

11      BUT YOU KNOW WHAT'S INTERESTING?  THEY WENT

12  AFTERWARDS -- I DON'T KNOW IF YOU NOTICED THIS; YOU'LL SEE IT

13  IN THE EVIDENCE -- AFTER WE DISCLOSED IN THE WALL STREET

14  JOURNAL ARTICLE CARTER BRYANT'S NAME, THEY ARE STILL CITING TO

15  YOU EVIDENCE IN THE BUSINESSWEEK, CHICAGO SUN-TIMES,            03:49

16  SAN FERNANDO VALLEY BUSINESS JOURNAL, MISSTATEMENTS, MISQUOTES,

17  TYPOGRAPHICAL ERRORS AS ALLEGATIONS OF CONCEALMENT.

18      GIVE ME A BREAK.  IT DOESN'T EXIST.

19      LET'S GO TO THE VERDICT FORM.

20      I'D LIKE TO GO TO QUESTION ONE.                              03:49

21      ONE LAST PIECE ON THE CONCEALMENT ISSUE.

22      CAN I ASK FOR EXHIBIT 2006 FOR A MOMENT.

23      WHEN YOU'RE TALKING ABOUT THE QUALITY OF EVIDENCE AND

24  THE PROOF OF THE CONCEALMENT -- AND MR. QUINN EVEN DID THIS IN

25  HIS ARGUMENT TODAY -- THIS IS THE DOCUMENT, INTERNAL TO MGA,    03:50

5014

1                              CERTIFICATE

2

3    I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
4    THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
     ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
5    CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

6

7

8    THERESA A. LANZA, RPR, CSR          7-14-08
     OFFICIAL COURT REPORTER                DATE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25                                   EXHIBIT  A
                                     PAGE     11

THURSDAY, JULY 10, 2008          TRIAL DAY 23, AFTERNOON SESSION

6191

1              UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                  EASTERN DIVISION

4                     - - -

5     HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                     - - -

7    MATTEL, INC.,                    )
                                      )     **CERTIFIED**
8                   PLAINTIFF,        )     **COPY**
                                      )
9        VS.                          )   NO. CV 04-09049
                                      )
10   MGA ENTERTAINMENT, INC., ET. AL.,)
                                      )
11                  DEFENDANTS.       )   TRIAL DAY 31
     _____)   MORNING SESSION
12   AND CONSOLIDATED ACTIONS,        )   PAGES 6191-6350
     _____)
13

14

15      REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16               RIVERSIDE, CALIFORNIA

17             THURSDAY, AUGUST 7, 2008

18                   8:13 A.M.

19

20

21

22

23           THERESA A. LANZA, RPR, CSR
          FEDERAL OFFICIAL COURT REPORTER
24          3470 12TH STREET, RM. 134
          RIVERSIDE, CALIFORNIA  92501
25             951-274-0844                **EXHIBIT** __A__
          WWW.THERESALANZA.COM             **PAGE** __12__

6192

```
 1    APPEARANCES:

 2

 3    ON BEHALF OF MATTEL, INC.:

 4                         QUINN EMANUEL
                      BY:  JOHN QUINN
 5                         JON COREY
                           MICHAEL T. ZELLER
 6                         HARRY OLIVAR
                           TIMOTHY ALGER
 7                    865 S. FIGUEROA STREET,
                      10TH FLOOR
 8                    LOS ANGELES, CALIFORNIA  90017

 9

10    ON BEHALF OF MGA ENTERTAINMENT:

11                         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                      BY:  THOMAS J. NOLAN
12                         JASON RUSSELL
                           RAOUL KENNEDY
13                         LAUREN AGUIAR
                           CARL ROTH
14                    300 SOUTH GRAND AVENUE
                      LOS ANGELES, CALIFORNIA  90071-3144
15                    213-687-5000

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT ___A___
PAGE ___13___

THURSDAY, AUGUST 7, 2008

TRIAL DAY 31, MORNING SESSION

6274

1   A     I CAN JUST RECALL ONE IN LOS ANGELES AGAINST A COMPANY

2   CALLED MULTITOY.   THAT'S THE ONE I CAN RECALL.

3   Q     AND IN THAT CASE, DO YOU KNOW WHETHER MGA EVER TOOK THE

4   POSITION THAT CARTER BRYANT'S DRAWINGS WEREN'T PROTECTED BY

5   COPYRIGHT?

6   A     I DON'T KNOW.   I'M NOT A LAWYER.   I JUST HAND THIS OVER TO

7   THE LAWYERS TO HANDLE.

8   Q     BY THE WAY, TALKING ABOUT NOT BEING A LAWYER, YOU WERE

9   ASKED QUESTIONS BY MR. NOLAN ABOUT THE FINANCIAL SITUATION OF

10  MGA AND BRATZ SINCE YOUR LAST AUDITED FINANCIAL STATEMENT OF

11  2006.

12          DO YOU RECALL THOSE QUESTIONS?

13  A     YES.

14  Q     AND DO YOU RECALL I WAS ASKING YOU QUESTIONS ABOUT THE

15  AUDITED FINANCIAL STATEMENTS, AND YOU SAID THAT YOU WERE A

16  CREATIVE GUY, NOT REALLY A FINANCIAL GUY; IS THAT RIGHT?

17  A     NO.   YOUR QUESTION WAS DIFFERENT.   YOU WERE ASKING ME

18  ABOUT AUDITED FINANCIAL STATEMENTS.   MR. NOLAN WAS ASKING ME

19  QUESTIONS ABOUT THE FINANCIAL STATUS AND SALES AND

20  PROFITABILITY OF BRATZ.   I DO FOLLOW AND MONITOR THE SALES AND

21  PROFITABILITY AND CREATIVITY OF BRATZ ON A REGULAR, ALMOST

22  DAILY, BASIS.   I DO NOT MONITOR THE WHOLE COMPANY -- OVERALL

23  FINANCES OF THE COMPANY.   SO THEY WERE TWO DIFFERENT QUESTIONS,

24  MR. PRICE.

25  Q     WHEN YOU WERE TELLING THE JURY ABOUT THE INDUSTRY

THURSDAY, AUGUST 7, 2008   EXHIBIT  A   TRIAL DAY 31, MORNING SESSION

6275

1    TRENDS -- WHEN DID YOU BECOME AWARE OF THOSE TRENDS?   ABOUT

2    WHAT TIME FRAME?

3    A    I'M SORRY?

4    Q    YOU WERE TALKING ABOUT THE TRENDS AND THE REASONS FOR

5    TRENDS.

6            WHEN DID YOU FIRST FIGURE THAT OUT AND BECOME AWARE

7    OF THAT?

8    A    SINCE WE BECAME A FORCE IN THE TOY BUSINESS, SOMETIME

9    SINCE 1993.  WE TALKED ABOUT IT YESTERDAY, THAT THERE IS A

10   SERVICE THAT WE USE CALLED THRIFT TOY DATA SALES DATA, THAT

11   SHOWS THE MARKET SHARE OF SALES OF DIFFERENT BRANDS, DIFFERENT

12   PRODUCTS.  WE HAVE BEEN A SUBSCRIBER TO -- AND THE NAME OF THE

13   COMPANY WHO SELLS THAT -- IT'S CALLED NPD.  AND WE HAVE BEEN A

14   SUBSCRIBER TO THAT SERVICE FOR MANY, MANY YEARS, MORE THAN 10,

15   15 YEARS.  THAT'S ONE OF THE WAYS THAT I MONITORED THE TREND.

16   Q    MY QUESTION WASN'T CLEAR.  I APOLOGIZE.

17           YOU GAVE SPECIFIC CONCLUSIONS TO THE JURY ABOUT THE

18   MARKET DOWNTURNING, ABOUT FASHION DOLLS NOT HAVING AS MUCH

19   IMPACT IN THE MARKET.

20           MY QUESTION IS, CAN YOU GIVE ME A TIME FRAME WHEN YOU

21   FIRST CAME TO THAT CONCLUSION?

22   A    WELL, AGAIN, I HAVE BEEN MONITORING THE TOY BUSINESS, THE

23   FASHION DOLL, FOR MANY YEARS.  FOR EXAMPLE, IN --

24       **MR. PRICE:**  MOVE TO STRIKE AS NONRESPONSIVE.

25       **THE COURT:**  THE FIRST PART WAS.

EXHIBIT A
PAGE 15

THURSDAY, AUGUST 7, 2008              TRIAL DAY 31, MORNING SESSION

6276

1   BY MR. PRICE:

2   Q    I'M NOT ASKING ABOUT 2000.  I JUST WANT A DATE.  YOU TOLD

3   HIM YOU CAME TO THESE CONCLUSIONS ABOUT THERE'S REASONS WHY THE

4   FASHION MARKET IS DECREASING.

5           DO YOU HAVE A DATE WHERE YOU FIRST FIGURED THAT OUT?

6   2004?  2005?

7   A    EVERY YEAR I'VE BEEN MONITORING IT.  SINCE 2001, BARBIE

8   HAD OVER 90 PERCENT MARKET SHARE; SO I MONITORED THAT IN 2001.

9   AND I MONITORED IT EVER SINCE.  BARBIE HAD THE MONOPOLY.

10          MR. PRICE:  YOUR HONOR, MOVE TO STRIKE.

11          THE COURT:  IT'S STRICKEN.

12  BY MR. PRICE:

13  Q    MR. LARIAN, YOU TOLD THE JURY THAT THE FASHION DOLL MARKET

14  WAS DECREASING BECAUSE OF HANNAH MONTANA, BECAUSE OF ALL OF

15  THESE THINGS.  I'M TRYING TO FIND OUT WHEN YOU FIGURED THAT

16  OUT.  JUST GIVE ME DATE.

17  A    I'M TRYING TO GIVE YOU -- THAT HANNAH MONTANA, IT

18  SPECIFICALLY STARTED --

19  Q    MR. NOLAN ASKED YOU ABOUT THESE FACTORS, AND YOU SAID YOU

20  FIGURED OUT A BUNCH OF FACTORS THAT RESULTED IN MGA NOT MAKING

21  AS MUCH AS IT HAD.  I'M TRYING TO ASK WHEN YOU FIGURED THAT

22  OUT.

23  A    MR. NOLAN, TO THE BEST OF MY RECOLLECTION, ASKED IN 2007

24  WHAT WERE THE REASONS FOR THE DECLINE IN BRATZ, IF I UNDERSTOOD

25  HIS QUESTIONS CORRECTLY.  AND MY ANSWER WAS, IN 2007 OTHER

EXHIBIT A
PAGE 16

6277

1    COMPETITIVE PRODUCTS BECAME SUCCESSFUL IN THE U.S.A. THAT TOOK

2    AWAY FROM BRATZ.  HANNAH MONTANA DOLL WAS ONE.  HIGH SCHOOL

3    MUSICAL WAS ANOTHER ONE.  WEBKINZ, WHO --

4          MR. PRICE:  YOUR HONOR, BEYOND THE SCOPE OF THE

5    QUESTION, WHICH WAS A DATE.

6          THE COURT:  LISTEN CAREFULLY TO THE QUESTION.  LET'S

7    NOT ADD ADDITIONAL INFORMATION.

8          THE WITNESS:  I THINK I DID SAY 2007.

9          THE COURT:  THANK YOU.

10   BY MR. PRICE:

11   Q    NOW THAT WE'VE GOT THE DATE, I'D LIKE YOU TO LOOK AT

12   EXHIBIT 4947.

13   A    YES.

14   Q    AND IF WE TURN TO THE LAST PAGE OF THIS, 4947, PAGE 4,

15   THIS WAS INFORMATION THAT WAS CREATED ON OCTOBER 25TH OF 2007;

16   CORRECT?

17   A    THAT'S THE DATE OF THAT DOCUMENT, YES.

18   Q    AND THIS WAS CREATED BY SOMEONE AT MGA AT YOUR REQUEST SO

19   MGA COULD RESPOND TO MATTEL AND GIVE US ALL DOCUMENTS RELATING

20   TO YOUR NET WORTH; CORRECT?

21   A    I KNOW THAT AT MY DEPOSITION, MR. ZELLER ASKED ME THAT

22   QUESTION.  I THOUGHT THAT WAS PREPARED IN REGARDS TO THIS

23   LITIGATION.  I SUBSEQUENTLY FOUND OUT THAT WAS NOT THE CASE,

24   AND I ALSO SUBSEQUENTLY FOUND OUT THAT SOME OF THIS INFORMATION

25   IN THIS PAPER IS INACCURATE AND RELATES BACK TO YEARS BEFORE.

EXHIBIT A
PAGE 17

6350

1

2  I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
   STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
3  THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
   ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
4  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
   THE UNITED STATES.

5

6

7  THERESA A. LANZA, CSR, RPR                        DATE
   FEDERAL OFFICIAL COURT REPORTER

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25                                          EXHIBIT A
                                            PAGE 18

THURSDAY, AUGUST 7, 2008              TRIAL DAY 31, MORNING SESSION

**EXHIBIT B**

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT C**

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT D

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

# EXHIBIT E

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

# EXHIBIT F

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

# EXHIBIT G

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT H

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

- - -

HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

- - -

CARTER BRYANT, ET. AL.,           )
                                  )
                   PLAINTIFFS,    )
                                  )
          VS.                     )   NO. ED CV 04-09049
                                  )   (LEAD LOW NUMBER)
MATTEL, INC., ET. AL.,            )
                                  )
                   DEFENDANTS.    )   MOTIONS
                                  )
AND CONSOLIDATED ACTIONS,         )
                                  )

CERTIFIED COPY

REPORTER'S TRANSCRIPT OF PROCEEDINGS

RIVERSIDE, CALIFORNIA

MONDAY, DECEMBER 3, 2007

10:06 A.M.

THERESA A. LANZA, RPR, CSR
FEDERAL OFFICIAL COURT REPORTER
3470 12TH STREET, RM. 134
RIVERSIDE, CALIFORNIA  92501
951-274-0844
CSR11457@SBCGLOBAL.NET

EXHIBIT H
PAGE 100

DECEMBER 3, 2007                          BRYANT V MATTEL

2

1  APPEARANCES:

2  ON BEHALF OF CARTER BRYANT:

3                          KEKER & VAN NEST
                           BY:  MATTHEW M. WERDEGAR
4                          710 SANSOME STREET
                           SAN FRANCISCO, CALIFORNIA   94111-1704
5                          415-391-5400

6
   ON BEHALF OF MATTEL:
7
                           QUINN EMANUEL
8                          BY:  JON COREY
                           BY:  MICHAEL T. ZELLER
9                          BY:  B. DYLAN PROCTOR
                           865 S. FIGUEROA STREET,
10                         10TH FLOOR
                           LOS ANGELES, CALIFORNIA   90017
11                         213-624-7707

12
   ON BEHALF OF MGA ENTERTAINMENT (INCOMING):
13
                           SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
14                         BY:  THOMAS J. NOLAN
                           BY:  CRAIG HOLDEN (IN-HOUSE)
15                         300 SOUTH GRAND AVENUE
                           LOS ANGELES, CALIFORNIA   90071-3144
16                         213-687-5000

17
   ON BEHALF OF GUSTAVO MACHADO:
18
                           OVERLAND BORENSTEIN COTE & KIM
19                         BY:  ALEXANDER H. COTE
                           300 SOUTH GRAND AVENUE
20                         SUITE 2750
                           LOS ANGELES, CALIFORNIA   90071
21                         213-613-4660

22

23

24

25                                      EXHIBIT  H
                                         PAGE  101

DECEMBER 3. 2007                              BRYANT V MATTEL

1   UNCLEAN BY MATTEL?

2        **MR. ROTH:**  OUR ALLEGATIONS ARE THAT MATTEL MADE

3   DISPARAGING REMARKS REGARDING MR. BRYANT, MGA, AND THE BRATZ

4   PRODUCTS FOLLOWING THE COMMERCIAL EXPLOITATION OF THAT

5   INTELLECTUAL PROPERTY BY MGA.

6        NOW, THAT, WE THINK, IS RELEVANT TO PHASE ONE OF THE

7   CASE.  IT'S PRIMARILY RELEVANT, WE ACKNOWLEDGE, TO PHASE TWO OF

8   THE CASE.

9        IN ADDITION, WITH RESPECT TO PHASE 1-A AND THE

10  INFRINGEMENT ISSUES THAT ARISE IN CONNECTION WITH PHASE 1-A,

11  THIS COURT MAY BE ASKED, IF LIABILITY IS DETERMINED AT SOME

12  POINT, TO ISSUE AN INJUNCTION IN THIS CASE.  IN THE CONTEXT OF

13  A PROCEEDING BEFORE THIS COURT REGARDING WHETHER OR NOT AN

14  INJUNCTION SHOULD BE ISSUED, ALL OF THE ALLEGATIONS REGARDING

15  INEQUITABLE CONDUCT WILL BE RELEVANT TO THIS COURT.

16       **THE COURT:**  GO BACK TO THESE NEGATIVE COMMENTS.

17       ARE THESE -- AND I DON'T MEAN TO MAKE TOO FINE A

18  POINT ON THIS -- ARE THESE NEGATIVE STATEMENTS ABOUT BRATZ, OR

19  ARE THESE ABSOLUTELY FALSE DISPARAGING COMMENTS?

20       WHAT IS YOUR ALLEGATION?

21       **MR. ROTH:**  THEY ARE FALSE DISPARAGING COMMENTS

22  REGARDING BRATZ AND MGA.

23       **THE COURT:**  DIRECTED TO CARTER BRYANT, OR DIRECTED TO

24  MGA?

25       **MR. ROTH:**  DIRECTED TO MGA.

EXHIBIT __H__
PAGE __102__

DECEMBER 3, 2007

BRYANT V MATTEL

16

1        THE COURT:  SUCH AS?

2        MR. ROTH:   COMMENTS REGARDING THE CHARACTERISTICS OF

3   THE PRODUCTS AND SO FORTH.

4        THE COURT:  BUT GIVE ME AN EXAMPLE OF A COMMENT THAT

5   WAS MADE.

6        MR. ROTH:  YOUR HONOR, I CAN'T GO --

7        THE COURT:  YOU CAN'T GIVE ME ONE EXAMPLE?

8        MR. ROTH:  NO, I CAN'T.

9        THE COURT:  CAN ANYBODY FROM MGA GIVE ME ONE EXAMPLE

10  OF ONE DISPARAGING FALSE STATEMENT MADE BY MATTEL TOWARDS MGA?

11       MR. NOLAN:  YOUR HONOR, I THINK IT GOES --

12       IF I COULD. .

13       THE CONTENTION WILL BE THAT MATTEL ENGAGED IN A

14  SERIES OF FALSE STATEMENTS TO THE PRESS WITH RESPECT TO THE

15  NATURE OF THE BUSINESS PRACTICES OF MGA, AND, IN PARTICULAR,

16  HOW IT RELATES TO THE MARKETING OF BRATZ.  THERE'S A CONTENTION

17  THAT BRATZ -- MGA WAS MISSTATING IN THE MARKETPLACE THE BREADTH

18  OF ITS SUCCESS, THE ORIGINALITY OF ITS DESIGN, THE SCOPE OF THE

19  MARKET SHARE THAT IT ENJOYED, AND ITS MARKET POSITION RELATING

20  TO MATTEL AT VARIOUS POINTS; ALL OF WHICH, WE BELIEVE, WERE

21  FALSE AND WERE INTENDED TO INJURE THE BRATZ LINE.

22       AND NOW YOU'RE GOING TO ASK, 'WELL, WHAT RELEVANCE

23  DOES THAT HAVE TO POSSIBLY' --

24       THE COURT:  THAT'S NOT GOING TO BE MY QUESTION.  MY

25  QUESTION GOES BACK TO -- YOU REFER TO A SERIES OF STATEMENTS,

1   AND I'M ASKING FOR ONE EXAMPLE OF ONE STATEMENT.

2             I SENSE, AND I'M GETTING AN APPRECIATION FOR, THE

3   FRUSTRATION THAT THE PLAINTIFF HAS IN ADDRESSING THIS

4   AFFIRMATIVE DEFENSE WITHOUT, AT THIS LATE DATE, HAVING

5   SPECIFICS.  FOR THE COURT TO BE ABLE TO DETERMINE WHETHER OR

6   NOT THIS IS LEGALLY A SUFFICIENT BASIS TO BRING THE UNCLEAN

7   HANDS DEFENSE, SPECIFICALLY IN THIS FIRST PHASE WHERE IT'S MORE

8   LIMITED AND THE NEXUS NEEDS TO BE MUCH MORE TIGHTER IN THE

9   CONTEXT OF THIS COPYRIGHT CLAIM FOR IT TO BE A COLORABLE

10  DEFENSE, IT WOULD BE EXTRAORDINARY HELPFUL TO KNOW EXACTLY WHAT

11  STATEMENTS WE'RE TALKING ABOUT.

12            MR. NOLAN:  I CAN APPRECIATE THAT, YOUR HONOR, AND I

13  APOLOGIZE FOR NOT BEING ABLE TO GIVE YOU THE DATE AND THE

14  SPECIFIC COMMENTS.  I CAN ONLY TALK ABOUT GENERALITIES.  BUT,

15  FRANKLY, THE POSITION THAT WE UNDERSTOOD --

16            THE COURT:  WHEN ARE WE GOING TO MOVE ON FROM THE

17  POINT WHERE WE CAN ONLY SPEAK ABOUT GENERALITIES?

18            MR. NOLAN:  YOUR HONOR, I THINK PART OF IT IS GOING

19  TO BE TRYING TO RESOLVE THE ISSUE OF THE INTERROGATORY RESPONSE

20  AND OUR COMING FORWARD AND GIVING EXAMPLES AS TO WHAT EVIDENCE

21  WE WILL BE RELYING ON, YOUR HONOR.

22            THE COURT:  BUT I TRUST YOU HAD THE EVIDENCE THAT

23  YOU'RE GOING TO RELY ON BEFORE YOU MADE THE DEFENSE.  YOU DON'T

24  MAKE THE DEFENSE AND THEN COME UP WITH THE EVIDENCE YOU'RE

25  GOING TO RELY ON.

1   HEARING, PARTICULARLY IN THE CONTEXT OF PHASE ONE, WHICH IS A

2   SLIGHTLY DIFFERENT STANDARD WITH RESPECT TO, AT LEAST, THE

3   UNCLEAN HANDS DEFENSE IN PHASE ONE.  BUT I'LL TAKE A LOOK AT

4   THAT, AND I'LL ISSUE SOMETHING IN WRITING SOON.

5          I DON'T WANT TO HOLD UP THE DISCOVERY PROCESS AT ALL,

6   SO LET'S GO AHEAD AND GET THIS INTERROGATORY SERVED.  LET'S

7   MEET AND CONFER ABOUT FURTHER INTERROGATORIES THAT MGA MIGHT

8   NEED, THAT CARTER BRYANT MIGHT NEED, WITH RESPECT TO THESE

9   AFFIRMATIVE DEFENSES, AND LET'S START SHOWING WHAT WE HAVE AND

10  MOVE THIS THING ALONG.  AS MR. NOLAN HAS REMINDED US ALL, WE

11  HAVE 57 DAYS UNTIL DISCOVERY ENDS.

12          THANK YOU, COUNSEL.

13

14

15

16

17

18                        CERTIFICATE

19

20  I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
    STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
21  THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
    ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
22  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
    THE UNITED STATES.

23

24  _____         12-10-07
    THERESA A. LANZA, CSR, RPR          DATE
25  FEDERAL OFFICIAL COURT REPORTER

DECEMBER 3. 2007        EXHIBIT __H__        BRYANT V MATTEL

# EXHIBIT I

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

**EXHIBIT J**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

- - -

HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

- - -

CARTER BRYANT, ET. AL.,          )
                                 )
            PLAINTIFFS,          )
                                 )
     VS.                         )   NO. ED CV 04-09049
                                 )   (LEAD LOW NUMBER)
MATTEL, INC., ET. AL.,           )
                                 )
            DEFENDANTS.          )   MOTIONS FOR PARTIAL
                                 )   SUMMARY JUDGEMENT
AND CONSOLIDATED ACTIONS,        )
                                 )

**CERTIFIED COPY**

REPORTER'S TRANSCRIPT OF PROCEEDINGS

RIVERSIDE, CALIFORNIA

TUESDAY, APRIL 22, 2008

10:07 A.M.

VOLUME I
PAGES 1-213

THERESA A. LANZA, RPR, CSR
FEDERAL OFFICIAL COURT REPORTER
3470 12TH STREET, RM. 134
RIVERSIDE, CALIFORNIA  92501
951-274-0844
WWW.THERESALANZA.COM

EXHIBIT  J

120

2

```
 1   APPEARANCES:

 2   ON BEHALF OF CARTER BRYANT:

 3                         KEKER & VAN NEST
                          BY:   CHRISTA M. ANDERSON
 4                         BY:   MATTHEW M. WERDEGAR
                          710 SANSOME STREET
 5                         SAN FRANCISCO, CALIFORNIA  94111-1704
                          415-391-5400
 6

 7   ON BEHALF OF MATTEL:

 8                         QUINN EMANUEL
                          BY:   JOHN B. QUINN
 9                         BY:   B. DYLAN PROCTOR
                          BY:   MICHAEL T. ZELLER
10                         865 S. FIGUEROA STREET,
                          10TH FLOOR
11                         LOS ANGELES, CALIFORNIA  90017
                          213-624-7707
12

13   ON BEHALF OF MGA ENTERTAINMENT:

14                         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                          BY:   THOMAS J. NOLAN
15                         BY:   CARL ALAN ROTH
                          BY:   JASON RUSSELL
16                         300 SOUTH GRAND AVENUE
                          LOS ANGELES, CALIFORNIA  90071-3144
17                         213-687-5000

18
     ALSO PRESENT:         AMBASSADOR ROBERT-PIERRE PROSPER,
19                         DAVID BRISTOW, ESQ.

20

21

22

23

24                                    EXHIBIT    J
25                                    PAGE       121
```

3

1

2

## I N D E X

PAGE

MOTIONS.................................................  5

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT   J
PAGE   122

APRIL 22, 2008

BRYANT V MATTEL, VOLUME I

115

1    BEAR IN MIND, MGA REGISTERED THESE THINGS IN 2003, DESPITE THE

2    FACT -- AND THIS IS UNDISPUTED -- MATTEL HAD THE CONTRACT FOR

3    OVER THREE YEARS AND DIDN'T REGISTER ITS ALLEGED COPYRIGHT

4    INTEREST IN THE BRATZ DRAWINGS, WHEN IT ADMITS IT WAS ON NOTICE

5    AS OF NOVEMBER OF 2003.  AND THAT'S WHEN MGA WAS REGISTERING               02:3:

6    THE COPYRIGHT.  THAT'S WHEN MGA TURNED OVER TO MATTEL,

7    VOLUNTARILY, THE CONTRACT BETWEEN MGA AND MR. BRYANT.

8            SO WHY SHOULD THE JURY NOT HEAR AND DECIDE FOR ITSELF

9    IF MGA TOOK IN GOOD FAITH AS A BONA FIDE PURCHASER FOR VALUE?

10           IT SEEMS REASONABLE UNDER THOSE CIRCUMSTANCES.                      02:3:

11           WE WEREN'T AWARE OF ANY CASE THAT DEALT WITH THIS.

12   AS I SAY, AS A TECHNICAL MATTER, WE DON'T MEET THE RECORDATION

13   STANDARDS, BUT AS A MATTER OF CONSTRUCTIVE KNOWLEDGE -- AND WE

14   THINK NIMMER CAN BE READ TO SUPPORT US -- CERTAINLY,

15   CONSTRUCTIVELY, THERE CAN BE NO ARGUMENT BUT THAT MATTEL, IN              02:3:

16   FACT, KNEW ABOUT THE TRANSFER AND HOW IT CAME TO BE AT THE TIME

17   OF THE REGISTRATION.

18           SO THAT'S OUR ARGUMENT.

19           THE COURT:  VERY WELL, COUNSEL.

20           A NUMBER OF THESE DEFENSES -- AND THEY REALLY ARE, TO             02:3

21   MY THINKING, EQUITABLE DEFENSES -- THE COURT WILL CONSIDER, AS

22   YOU URGE, AFTER THE COURT HEARS THE TRIAL EVIDENCE.

23           PUTTING ASIDE THE STATUTE OF LIMITATIONS, ARE THERE

24   ANY OF THESE OTHER DEFENSES THAT YOU WISH TO ADDRESS AT THIS

25   TIME?                                                                     02:3

EXHIBIT J
PAGE 123

APRIL 22, 2008

BRYANT V MATTEL, VOLUME I

116

1          MR. RUSSELL:  WELL, YOUR HONOR, FIRST, I THINK YOU

2    MADE MENTION TO THE UNCLEAN HANDS DEFENSE AND THE THEORY THAT

3    WAS ARTICULATED.  I THINK THE MGA PARTIES RETAINED THE LATCHES

4    DEFENSE, AND IT'S THROUGH THAT VEHICLE THAT THE MGA PARTIES

5    WILL PUT FORTH BEFORE YOUR HONOR THE EXACT SAME THEORY THAT THE     02:3?

6    UNCLEAN HANDS DEFENSE WOULD PUT BEFORE YOU.  THAT IS TO SAY,

7    MATTEL SAT THERE LYING IN WAIT, SPECULATING ON THE SUCCESS OF

8    THE BRATZ DOLLS, KNOWING FULL WELL THESE THINGS TOOK ENORMOUS

9    INVESTMENT, AND THEY WAITED UNTIL IT WAS SUCCESSFUL, AND THAT'S

10   WHEN THEY CHOSE TO SUE.                                            02:3:

11          AND WE PUT FORTH BEFORE THE COURT THE QUOTATIONS FROM

12   MR. BRAUR INDICATING THAT IT WAS ONLY AFTER THE DOLLS WERE

13   LOSING MARKET SHARE AT MATTEL, THE HOUSE WAS ON FIRE, ET

14   CETERA, THAT THERE WAS A DECISION MADE INTERNALLY AT MATTEL TO

15   LITIGATE MGA TO DEATH.  AND IT'S OUR POSITION THAT WAS AN          02:3:

16   UNREASONABLE DELAY BY MATTEL AND THAT IT CAUSED PREJUDICE TO

17   THE MGA PARTIES.

18          SO CERTAINLY, AS TO THE LATCHES DEFENSE, THAT

19   CERTAINLY IS AN ISSUE THAT WE THINK NOT ONLY SHOULD SURVIVE,

20   BUT ALSO THAT SHOULD GO TO THE JURY.  WE CITE YOUR HONOR TO THE    02:3:

21   LEO H. FEIST CASE, WHICH IS A 1916 CASE BY JUDGE LEARNED HAND,

22   WHICH ESTABLISHES THAT THIS IS A PROPER LEGAL DEFENSE TO A

23   COPYRIGHT CLAIM.

24          SO WE DON'T THINK THIS IS AN ISSUE THAT YOU SHOULD

25   DECIDE.  WE THINK THIS IS AN ISSUE THAT THE JURY SHOULD DECIDE,    02:3:

EXHIBIT  J
PAGE  124

1   TO THE EXTENT THAT YOUR HONOR OR THE JURY REJECTS THE STATUTE

2   OF LIMITATIONS ARGUMENT.  AND I DON'T WANT TO BELABOR THE

3   STATUTE OF LIMITATIONS ARGUMENTS; THAT WILL BE SOMETHING

4   MR. NOLAN WILL EXPOUND ON.

5              SUFFICE IT TO SAY, THE LATCHES DEFENSE CAN BE            02:34

6   MAINTAINED, EVEN IF YOU FIND THE STATUTE OF LIMITATIONS DEFENSE

7   DOESN'T WORK.

8              THE COURT:  GENERALLY, THAT'S ONLY THE CASE IF

9   THERE'S REALLY SOMETHING EXTRAORDINARY.

10             MR. RUSSELL:  CORRECT.  AND WE THINK THERE IS HERE,      02:34

11  YOUR HONOR.  WE THINK THAT THIS IS THE MOST EXTRAORDINARY CASE

12  YOU CAN EVER HAVE.  MATTEL SAT THERE, KNOWINGLY.  THERE'S NO

13  DISPUTE THEY KNEW IN 2003.  THEY ADMIT THEY KNEW IN 2003 ALL OF

14  THE FACTS THEY NEEDED TO ASSERT A CLAIM; AND THEY DID NOT

15  ASSERT A COPYRIGHT CLAIM FOR THREE YEARS.  WE CAN ARGUE ABOUT      02:34

16  RELATION BACK; WE CAN ARGUE ABOUT TOLLING; BUT WHAT WE CAN'T

17  ARGUE ABOUT IS, FOR THREE YEARS MATTEL SPECULATED AT THE

18  EXPENSE OF THE MGA PARTIES.

19             THAT'S SOMETHING THE JURY SHOULD HEAR.

20             NOW, DID THAT CAUSE PREJUDICE?  ABSOLUTELY.  WE KNOW     02:34

21  FOR A FACT, BECAUSE MATTEL LOST PHONE RECORDS, INCLUDING THE

22  CRITICAL MONTH OF OCTOBER OF 2000.  WE KNOW THAT THEY DID NOT

23  MAINTAIN THEIR E-MAILS, BECAUSE OF THIS PURPORTED AUTO-DELETE

24  FUNCTION; SO WE HAVE NO IDEA WHAT THE INTERNAL COMMUNICATIONS

25  ARE.  WE KNOW THAT THERE ARE WITNESSES, INCLUDING MR. DE ANDA,     02:35

EXHIBIT  J
PAGE  125

1        MR. RUSSELL:  WELL, I THINK THAT THE ARGUMENT COULD

2   BE, CERTAINLY ONCE MR. BRYANT CAME OVER, THEY WERE AWARE OF

3   MOONLIGHTING, AND THEY RELIED ON THE FACT -- IN INVESTING MONEY

4   INTO THE PRODUCT, MARKETING, PACKAGING, ET CETERA -- THE FACT

5   THAT MATTEL ISN'T SUING.  EVERYTHING THEY'RE DOING IS

6   CONSISTENT WITH AND REINFORCING THE NOTION THAT EVEN IF THEY

7   THOUGHT THEY OWNED IT, THEY'RE INTENTIONALLY NOT PROCEEDING.

8        SO THERE'S AT LEAST A DISPUTED ISSUE OF FACT, BECAUSE

9   CERTAINLY, WE CAN ARGUE WE KNEW THE MOONLIGHTING POLICIES AFTER

10  MR. BRYANT CAME OVER.  AND WE'RE ENTITLED TO RELY UPON THOSE,

11  JUST AS WE'RE ENTITLED TO RELY UPON THE ABSENCE OF A SUIT BY

12  MATTEL.

13        WE'RE TALKING ABOUT, AFTER ALL, THE NUMBER ONE

14  INFRINGEMENT PLAINTIFF IN THE TOY INDUSTRY.  AND WE CITED YOUR

15  HONOR TO THE CASES WHERE COURTS HAVE NOTED, 'IF YOU ENTER THE

16  FASHION LINE MARKET, YOU MIGHT AS WELL PAINT A TARGET ON YOUR

17  BACK, BECAUSE THAT'S WHAT THEY DO.  YOU ENTER THE MARKET; IF

18  YOU HAVE ANY POWER AT ALL IN THE MARKET, THEY SUE YOU.'

19        WELL, THEY DIDN'T SUE; AND THEY DIDN'T SUE FOR NEARLY

20  FIVE YEARS, FIVE AND A HALF YEARS.  CERTAINLY, THAT CREATES A

21  QUESTION FOR THE JURY AS TO WHETHER OR NOT THAT WAS AN

22  INTENTIONAL DECISION.

23        AND AS MR. NOLAN IS GOING TO POINT OUT IN A FEW

24  MOMENTS, WE THINK WE HAVE COMPELLING EVIDENCE TO SHOW THAT THIS

25  WAS, INDEED, AN INTENTIONAL DECISION, WITH FULL KNOWLEDGE BY

02:36
02:36
02:36
02:37
02:37

EXHIBIT   J
PAGE   126

120

1  MATTEL; THAT THEY KNEW THEIR AGREEMENTS DIDN'T COVER IT, BUT

2  ONCE THEY STARTED TO LOSE MARKET SHARE, THEY HAD NO CHOICE BUT

3  TO COMMENCE LITIGATION.  SO, ACCORDINGLY, THERE ARE DISPUTED

4  ISSUES THERE TOO.  THOSE FACTUAL PREDICATES, YOUR HONOR, WE

5  SUBMIT, WOULD JUSTIFY RETAINING ALL OF OUR AFFIRMATIVE

6  DEFENSES.

7          AND, AGAIN, I DO NOT SUBMIT THAT THOSE ARE EQUITABLE.

8  WE'D LIKE TO ARGUE THAT ON THE MOTION *IN LIMINE*; BUT AT A

9  MINIMUM, THEY SHOULD SURVIVE SUMMARY JUDGMENT, PARTICULARLY

10 GIVEN WHAT WE THINK IS THE FLIMSY ARGUMENT MADE -- WITH

11 RESPECT, THE ARGUMENTS THAT WERE MADE BY MATTEL WERE BASICALLY

12 A PARAGRAPH PER DEFENSE.  IT WAS AT THE END OF THE MOTION;

13 NOBODY HAD A LOT OF TIME.

14         THE COURT:  I AM NEVER GOING TO CRITICIZE BREVITY,

15 COUNSEL.

16         MR. RUSSELL:  SINCE I WROTE MOST OF IT, I GUESS I

17 TAKE THE BLAME AS WELL.  BUT IN ANY EVENT, WE'LL STAND ON THAT.

18         THE COURT:  THANK YOU, COUNSEL.

19         MS. ANDERSON:  BRIEFLY, YOUR HONOR?

20         THE COURT:  ABSOLUTELY.

21         MS. ANDERSON:  I'M NOT GOING TO REHASH ANY ARGUMENTS.

22 I'D JUST LIKE TO TOUCH ON ONE OF THE DEFENSES, BECAUSE IT'S THE

23 DEFENSE OF UNCLEAN HANDS; THAT MR. BRYANT DOES HAVE AND THE MGA

24 DEFENDANTS HAVE NOT ASSERTED FOR THIS PHASE.

25         AS THE COURT IS AWARE, THIS DEFENSE CAN BE

02:37
02:37
02:36
02:36
02:36

APRIL 22, 2008                    BRYANT V MATTEL, VOLUME I

1   ESTABLISHED BY SHOWING UNCONSCIENTIOUS CONDUCT BY THE PLAINTIFF

2   CONNECTED TO THE CONTROVERSY.

3          AS YOUR HONOR HAS OBSERVED, WE HAVE IDENTIFIED FACTS,

4   PUT THEM IN THE RECORD, TO SUPPORT OUR CONTENTION THAT MATTEL'S

5   HANDS WERE UNCLEAN; THAT THEY SAT ON THEIR HANDS, WATCHING AND

6   LETTING MGA DEVELOP AND SELL THIS DOLL FOR YEARS; THAT ALONE

7   WILL ESTABLISH THE UNCLEAN HANDS DEFENSE.

8          BUT MR. BRYANT IS IN A SPECIAL POSITION, BECAUSE IN

9   ADDITION TO THAT, MR. BRYANT ASSERTS THAT MATTEL WAITED BEFORE

10  SUING MR. BRYANT BECAUSE MATTEL WANTED TO HAVE MR. BRYANT'S

11  COOPERATION IN ANOTHER LAWSUIT, WHICH IS YET ANOTHER FACT IN

12  SUPPORT OF THIS CLAIM.

13         ADDITIONALLY, ALTHOUGH MATTEL DOESN'T RELY ON THE

14  CHECKOUT FORM THAT MR. BRYANT WAS REQUIRED TO SIGN WHEN HE

15  DEPARTED MATTEL AS A BASIS FOR THEIR CONTRACT CLAIM, THEY DO

16  POINT TO IT AS SUPPORT FOR THEIR ARGUMENT THAT THE AGREEMENT

17  THAT MR. BRYANT SIGNED COVERED EVERY SINGLE THING HE EVER

18  THOUGHT OF.  AND BY POINTING TO THAT CHECKOUT FORM, THEY ARE

19  POINTING TO A DOCUMENT THAT WE CONTEND IS ENTIRELY DECEPTIVE

20  AND IS INTENDED TO COERCE EMPLOYEES WHO ARE LEAVING TO SIGN THE

21  DOCUMENT THAT SAYS THEY AGREED TO SOMETHING THEY NEVER AGREED

22  TO.

23         ALL OF THESE FACTS ARE FACTS THE JURY NEEDS TO HEAR.

24  NONE OF THE FACTS THAT HAVE BEEN OFFERED IN SUPPORT OF MATTEL'S

25  MOTION ON THIS PARTICULAR AFFIRMATIVE DEFENSE ARE UNDISPUTED.

02:38
02:39
02:39
02:39
02:39
02:4

1

                                    CERTIFICATE

2

3      I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
       STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
4      THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
       ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
5      CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
       THE UNITED STATES.

6

7                                                    4-28-08

8      THERESA A. LANZA, CSR, RPR                      DATE
       FEDERAL OFFICIAL COURT REPORTER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24                                          EXHIBIT ___J___

25                                          PAGE ___129___

APRIL 22, 2008                          BRYANT V MATTEL, VOLUME I