THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
(laguiar@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, CA 90071-3144
Tel.: (213) 687-5000 / Fax: (213) 687-5600

RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
DAVID W. HANSEN (Bar No. 196958)
(dhansen@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, 38th Floor
San Francisco, CA 94111-5974
Tel.: (415) 984-6400 / Fax: (415) 984-2698

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| v. | **MGA PARTIES' OPPOSITION TO MATTEL, INC.'S MOTION TO STRIKE DECLARATION OF PAUL K. MEYER FILED IN SUPPORT OF THE MGA PARTIES' OPPOSITION TO MATTEL'S MOTION FOR PERMANENT INJUNCTION** |
| MATTEL, INC., a Delaware corporation, | |
| Defendant. | |
| AND CONSOLIDATED ACTIONS. | |

Honorable Stephen G. Larson

**Phase 1(c)**
Hearing Date:     Nov. 10, 2008
Time:                  1:00 p.m.

# <u>TABLE OF CONTENTS</u>

**PAGE**

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT ......................................................................................................... 2

I.   SHOULD THE COURT DETERMINE THAT MATTEL IS ENTITLED TO ANY EQUITABLE RELIEF, AN ONGOING ROYALTY IS THE ONLY APPROPRIATE EQUITABLE REMEDY ....................................................................................... 2

II.  MEYER'S APPROACH TO CALCULATING AN ONGOING ROYALTY RATE IS ADMISSIBLE UNDER THE FEDERAL RULES OF EVIDENCE AND *DAUBERT* ........................................... 4

   A.   Meyer's Analysis Is Based On Facts Determined By The Jury, Which Bind The Court Sitting In Equity .......................... 5

   B.   Meyer Has Reliably Applied Facts Determined By The Jury To Calculate An Ongoing Royalty Rate ........................... 8

   C.   No "Generally Accepted Standards" Exist To Calculate Ongoing Royalties ................................................................. 11

   D.   Meyer Has An Appropriate Foundation To Offer His Analysis ............................................................................... 13

III. MEYER'S TESTIMONY REGARDING MGA'S ABILITY TO PAY AN ONGOING ROYALTY IS ADMISSIBLE ....................... 14

CONCLUSION .................................................................................................... 15

1

## **TABLE OF AUTHORITIES**

2
3
<div align="right">**Page**</div>

## **Cases**

4

5  Abend v. MCA, Inc.,
    863 F.2d 1465 (9th Cir. 1988), aff'd, 495 U.S. 207 (1990) ................................. 3

6  Bose Corp v. JBL, Inc.,
7    112 F. Supp. 2d 138 (D. Mass. 2000), aff'd 274 F.3d 1354 (Fed Cir. 2001).... 11

8  Boston Scientific Corp. v. Johnson & Johnson,
    550 F. Supp. 2d 1102 (N.D. Cal. 2008)................................................. 3

9  Broadcom Corp. v. Qualcomm Inc.,
    Case No. SACV 05-467 JVS (RNBx), 2007 U.S. Dist. LEXIS 97647, (C.D.
10   Cal. Dec. 31, 2007)................................................................ 4,7

11 Business Trends Analysts, Inc. v. Freedonia Group, Inc.,
    887 F.2d 399 (2d Cir. N.Y. 1989) ................................................... 9
12

13 Christopher Phelps & Associates, LLC v. Galloway,
    492 F.3d 532 (4th Cir. 2007)....................................................... 10

14 Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc.,
    528 F.3d 1001 (8th Cir. 2008) ..................................................... 14
15

16 Daubert v. Merrell Dow Pharmaceuticals, Inc.,
    509 U.S. 579 (1993)........................................................... 4, 8, 15

17 Dun v. Lumbermen's Credit Association,
    209 U.S. 20 (1908)................................................................. 3
18

19 eBay, Inc. v. MercExchange, L.L.C.,
    547 U.S. 388 (2006)............................................................... 3

20 Finisar Corp. v. DirecTV Group, Inc.,
    Civ. Action No. 1:05-CV-264, 2006 U.S. Dist. LEXIS 76380 (E.D. Tex.
21   July 7, 2006), aff'd in part, rev'd in part, 523 F.3d 1328 (Fed. Cir. 2008)......... 4

22 Floyd v. Laws,
    929 F.2d 1390 (9th Cir. 1991) ..................................................... 6
23

24 Fonar Corp. v. General Electric Co.,
    107 F.3d 1543 (Fed. Cir. 1997) .................................................... 9

25 Frank Music Corp. v. Metropolitan-Goldwyn-Mayer, Inc.,
    886 F.2d 1545 (9th Cir. 1989) ..................................................... 9
26

27 Funky Films, Inc. v. Time Warner Entertainment Co., L.P.,
    462 F.3d 1072 (9th Cir. 2006) ..................................................... 8

28

Georgia-Pacific Corp. v. United States Plywood Corp.,
318 F. Supp. 1116 (S.D.N.Y. 1970)
modified on other grounds, 446 F. 2d 295 (2d Cir. 1971)..................6, 12, 13

Metro-Goldwyn Mayer Studios, Inc. v. Grokster,
518 F. Supp. 2d 1197 (C.D. Cal. 2007)........................................ 15

Kumho Tire Co. v. Carmichael,
526 U.S. 137 (1999)............................................................... 4

Los Angeles Police Protective League v. Gates,
995 F.2d 1469 (9th Cir. 1993)............................................ 5, 7, 8, 13

MicroChemical, Inc. v. Lextron, Inc.,
317 F.3d 1387 (Fed. Cir. 2003) ............................................ 11

Miller v. Fairchild Industries, Inc.,
885 F.2d 498 (9th Cir. 1989)................................................ 5, 7, 8

Natural Resources Defense Council, Inc. v. Winter,
508 F.3d 885 (9th Cir. 2007) ................................................ 10

Paice LLC v. Toyota Motor Corp.,
504 F.3d 1293 (Fed. Cir. 2007) ............................................ 3, 12

Practice Management Information Corp. v. America Medical Association,
121 F.3d 516 (9th Cir. 1997), amended at 133 F.3d 1140 (9th Cir. 1998) ......... 3

Richard Feiner & Co. v. Turner Entertainment,
926 F. Supp. 40 (S.D.N.Y.), rev'd in part on other grounds, 98 F.3d 33 (2d
Cir. 1996)............................................................................. 3

Riles v. Shell Exploration & Production Co.,
298 F.3d 1302 (Fed. Cir. 2002) ............................................ 11

Rogers v. Koons,
960 F.2d 301 (2d Cir. 1992) ................................................ 9

Sands, Taylor & Wood v. Quaker Oats Co.,
34 F.3d 1340 (7th Cir. 1994) ................................................ 11

Shatterproof Glass Corp. v. Libbey-Owens Ford Co.,
758 F.2d 613 (Fed. Cir. 1985) ............................................ 4, 7

Silverstein v. Penguin Putnam, Inc.,
368 F.3d 77 (2d Cir. 2004) ................................................ 3

Sony Corp. v. Universal Studios,
464 U.S. 417 (1984)........................................................... 3

Standard Manufacturing Co. v. United States,
42 Fed. Cl. 748 (1999)........................................................ 9

Stryker Corp. v. Davol, Inc.,

75 F. Supp. 2d 746 (W.D. Mich. 1999) ................................................ 7

TWM Manufacturing Co. v. Dura Corp,
   789 F.2d 895 (Fed. Cir. 1986) ................................................ 11, 12

Thomas v. Newton International Enterprises,
   42 F.3d 1266 (9th Cir. 1994) ................................................ 13

United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi,
   80 F.3d 1074 (5th Cir. 1996) ................................................ 4,8

Universal City Studios v. Sony Corp.,
   659 F.2d 963 (9th Cir. 1981), rev'd on other grounds, 464 U.S. 417 (1984) ...... 3

Vermont Microsystems, Inc. v. Autodesk, Inc.,
   88 F.3d 142 (2d Cir. 1996) ................................................ 11

Woods v. Universal City Studios, Inc.,
   920 F. Supp. 62 (S.D.N.Y. 1996) ................................................ 3

## Statutes

Fed. R. Evid. 702 ................................................ 4, 8, 13, 14

17 U.S.C. § 504(b) ................................................ 9

35 U.S.C. § 284 ................................................ 11

## Other Authorities

Weil, Wagner & Frank, Litigation Services Handbook: The Role of the
   Financial Expert, 22:6 (4th ed. 2007) ................................................ 6

4 Weinstein's Federal Evidence, § 702.04[1][a], at 702-50 ................................................ 14

1
2

## PRELIMINARY STATEMENT

3      All or nothing.  Having failed to destroy the Bratz brand and with it MGA,
4  Mattel now resorts to an "all-or-nothing" wager in its request for post-verdict
5  equitable relief: it wants to enjoin the sale of any and all products remotely
6  connected to first-generation Bratz fashion dolls.  But MGA has shown in its
7  opposition to Mattel's motion for a permanent injunction that *no* prospective relief is
8  warranted here at all; and, even if such relief were somehow appropriate, an
9  injunction clearly is not the proper form of equitable relief – rather, it would be a
10 royalty commensurate with the jury's infringement findings.

11      Apparently, Mattel has decided that a royalty consistent with the jury's finding
12 (at best) of limited ongoing infringement would be an insufficient prize for Mattel.
13 Mattel thus presents an "all-or-nothing" choice for the Court: (1) an overreaching
14 injunction that will shut down Bratz and effectively wipe MGA and its 1,600
15 employees off the competitive map, or (2) nothing.  Because Mattel recognizes that
16 the jury's findings foreclose injunctive relief as an equitable remedy, it is engaging in
17 a campaign to erase the jury's findings from the Court's consideration.  Given this
18 approach, it is hardly surprising that Mattel has failed in its Reply to advance *any*
19 method of determining a reasonable royalty in the event that the Court determines
20 that non-injunctive equitable relief is warranted.  Nor is it surprising that Mattel
21 seeks to remove from the record, in the form of a motion to strike the expert
22 declaration of Paul K. Meyer, MGA's attempt to define a royalty that is consistent
23 with the jury's finding of *de minimis* infringement.

24      The motion to strike Mr. Meyer's declaration is simply another Mattel effort to
25 distance the jury's findings of limited infringement from its "all or nothing" gamble.
26 Mattel's tactical Motion to Strike is baseless, however, and should thus be denied in
27 its entirety.

28

## ARGUMENT

**I.     SHOULD THE COURT DETERMINE THAT MATTEL IS ENTITLED TO ANY EQUITABLE RELIEF, AN ONGOING ROYALTY IS THE ONLY APPROPRIATE EQUITABLE REMEDY**

As MGA showed in its Opposition to the Motion for Permanent Injunction, Mattel is not entitled to equitable relief of any kind for at least three reasons: (1) Mattel waived the right to such relief when it elected to pursue a future damages theory, and the jury found that it was entitled to no relief for future infringement; (2) Mattel failed to satisfy the four-factor eBay test for injunctions; and (3) the only reasonable reading of the jury's verdict is that there is no ongoing infringement. (See Opp'n to Mot. for Perm. Inj. at 1-29.)

In addition, MGA demonstrated that even if the Court were to conclude that equitable relief was proper, an ongoing royalty, rather than an injunction, was the appropriate remedy. In both its Motion to Strike and its papers in support of its underlying Motion for Permanent Injunction, Mattel does not dispute that an ongoing royalty would be an available remedy; indeed, Mattel earlier confirmed for the Court that case law supports the notion of a royalty.[1]

MGA further explained that, in the event the Court does not deny Mattel's motion outright, and to the extent the Court deems equitable relief appropriate at all, an ongoing royalty is more appropriate than an injunction where, as here, the success of the allegedly infringing work resulted from the "collaborative efforts of many talented individuals"; where the success "resulted in large part from factors completely unrelated to infringement"; and where "defendants invested substantial money, effort, and talent creating the infringing work." (See Opp'n to Mot. for Perm.

---

[1]     See Tr. 6422:21-6423:1 (Mr. Quinn: "[T]he question of whether this Court will enter an injunction or whether, for example, the Court will in the alternative decide to impose a royalty, which there's some case law now under the eBay decision . . . there is simply no way to assess that.").

1  Inj. at 31 (citing <u>Abend v. MCA, Inc.</u>, 863 F.2d 1465, 1478-79 (9th Cir. 1988), <u>aff'd</u>,

2  495 U.S. 207 (1990).)[2]

3        Under such circumstances, the Supreme Court has long recognized the

4  injustice of imposing an injunction. <u>Dun v. Lumbermen's Credit Ass'n</u>, 209 U.S. 20,

5  23-24 (1908) (recognizing that when the extent of infringement is small, an

6  injunction would be "unconscionable"); <u>see also</u> <u>eBay, Inc. v. MercExchange, L.L.C.</u>,

7  547 U.S. 388, 396-97 (2006) ("When the patented invention is but a small

8  component of the product the companies seek to produce . . . an injunction may not

9  serve the public interest") (Kennedy, J., concurring).  Accordingly, courts have long

10 recognized the use of ongoing royalties in lieu of injunctions in copyright and patent

11 cases.[3]

12 [2]     In its Reply in support of its Motion for Permanent Injunction, Mattel
13 illogically compares the particular facts of <u>Abend</u> to the present case in order to
   suggest that a royalty is inappropriate here.  (Reply at 20-21.) Mattel's analysis is
14 misplaced in that regard as the <u>Abend</u> "special circumstances" test does *not* stand for
   the proposition that a royalty is permitted only under the exact same facts that
15 existed in <u>Abend</u>.  Thus, Mattel failed to establish that a royalty would not be legally
   available here.  Moreover, Mattel did not (as it could not) disturb the fact that <u>Abend</u>
16 and its progeny stand for the affirmative proposition that a royalty is an appropriate
   form of prospective equitable relief in copyright cases. <u>Abend</u>, 863 F.2d at 1479.  To
17 the contrary, Mattel in its Reply effectively conceded – as it must – that a royalty is
   legally permissible here.

18 [3]     E.g., <u>Abend v. MCA</u>, 863 F.2d 1465, 1479 (9th Cir. 1988), <u>aff'd</u>, 495 U.S. 207
   (1990) ("[C]ourts might … award damages or a continuing royalty instead of an
19 injunction in special circumstances") (internal quotes omitted; alteration in original);
   <u>Universal City Studios v. Sony Corp.</u>, 659 F.2d 963, 976 (9th Cir. 1981), <u>rev'd on</u>
20 <u>other grounds</u>, 464 U.S. 417 (1984) (finding that a continuing royalty "may very well
   be an acceptable resolution in this context"); <u>Practice Mgmt. Info. Corp. v. Am. Med.</u>
21 <u>Ass'n</u>, 121 F.3d 516, 519 (9th Cir. 1997) ("Other remedies would also be available,
   including . . . mandatory licensing at a reasonable royalty…."); <u>accord</u> <u>Silverstein v.</u>
22 <u>Penguin Putnam, Inc.</u>, 368 F.3d 77, 84-85 (2d Cir. 2004) (finding injunctive relief
   improper and advising the district court to consider a continuing royalty); <u>Richard</u>
23 <u>Feiner & Co. v. Turner Entm't</u>, 926 F. Supp 40, 43-44 (S.D.N.Y.), <u>rev'd in part on</u>
   <u>other grounds</u>, 98 F.3d 33 (2d Cir. 1996) (considering the award of a "continuing
24 royalty" in lieu of a preliminary injunction).  Justice Blackmun also expressed
   approval of the device. <u>Sony Corp. v. Universal Studios</u>, 464 U.S. 417, 499 (1984)
25 (agreeing with the Ninth Circuit that an award of "continuing royalties . . . may well
   be an appropriate means of balancing the equities in this case") (Blackmun, J.,
26 dissenting).  Likewise, courts have awarded ongoing royalties as a form of equitable
   relief in patent cases. <u>See, e.g.</u>, <u>Paice LLC v. Toyota Motor Corp.</u>, 504 F.3d 1293,
27 1314 (Fed. Cir. 2007) (noting that "[u]nder some circumstances, awarding an
   ongoing royalty for patent infringement in lieu of an injunction may be appropriate")
28                                                                  *(cont'd)*

## II.   MR. MEYER'S APPROACH TO CALCULATING AN ONGOING ROYALTY RATE IS ADMISSIBLE UNDER THE FEDERAL RULES OF EVIDENCE AND *DAUBERT*

Under the Federal Rules of Evidence, expert testimony is admissible so long as (1) the testimony is "based on sufficient data or facts," (2) the testimony is "the product of reliable principles and methods," and (3) the expert witness "has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702; see also Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 594-97 (1993) (recognizing "flexible" gatekeeping inquiry based on Fed. R. Evid. 702).[4]

While Daubert articulated possible indicia of reliability, the Supreme Court has emphasized that none are absolutely necessary or dispositive.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150-151 (1999) (holding that the presence or absence of any particular Daubert factor does not necessarily indicate reliability or "fit") (citing Daubert, 509 U.S. at 594).  Instead, the gatekeeping inquiry is case-specific; as the Supreme Court explained, "[t]oo much depends upon the particular circumstances of the particular case at issue."  Kumho Tire, 526 U.S. at 150.

_(cont'd from previous page)_
(citing Shatterproof Glass Corp. v. Libbey-Owens Ford Co., 758 F.2d 613, 628 (Fed. Cir 1985)); Broadcom Corp. v. Qualcomm Inc., Case No. SACV 05-467 JVS (RNBx), 2007 U.S. Dist. LEXIS 97647, at *8 (C.D. Cal. Dec. 31, 2007) ("In fashioning injunctive relief, the Court has the power under appropriate circumstances to permit continued infringement upon on-going payment of a mandatory royalty"); Boston Scientific Corp. v. Johnson & Johnson, 550 F. Supp. 2d 1102, 1122 (N.D. Cal. 2008) (holding that the court may award the patent-holder equitable relief in the form of an ongoing royalty for future infringement of its patent); Finisar Corp. v. DirecTV Group, Inc., Civ. Action No. 1:05-CV-264, 2006 U.S. Dist. LEXIS 76380, at *4-5 (E.D. Tex. July 7, 2006), (ordering infringer to pay an ongoing royalty), aff'd in part, rev'd in part, 523 F.3d 1328 (Fed. Cir. 2008).

[4]    Even after Daubert, "rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, 2000 Comm. Notes.  This is because "Daubert did not work a 'seachange over federal evidence law' and 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" Id. (quoting United States v. 14.38 Acres of Land Situated in Leflore County, Miss., 80 F.3d 1074, 1078 (5th Cir. 1996)).  Accordingly, the proper focus of a Daubert inquiry is "solely on principles and methodology, not on the conclusions they generate." Daubert, 509 U.S. at 595.

**A.**   **Mr. Meyer's Analysis Is Based On Facts Determined By The Jury, Which Bind The Court Sitting In Equity**

Given the particular circumstances of this case, in which the jury has already spoken on a central issue, Mr. Meyer's testimony is both admissible and appropriate. As his declaration makes clear, Mr. Meyer bases his ongoing-royalty calculation on facts already determined by the jury. (Meyer Decl. ¶ 15.) And because these facts bind the Court sitting in equity, they would be essential to the Court's determination of ongoing royalty rate, should the Court deem equitable relief appropriate. See, e.g., Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) ("where legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, in deciding the equitable claims the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations" (internal quotation marks omitted) (citing Miller v. Fairchild Indus., Inc., 885 F.2d 498, 507 (9th Cir. 1989)).

After a three-month trial, the Court instructed the jury to determine the portion of Bratz profits "attributable to factors other than use of the copyrighted work." (Jury Instr. No 42., Dkt. 5267.)  The jury did so.  It first heard testimony from both sides that revenues from Bratz products totaled $3.1 billion. (See TX 13960; TX 18923-002.)  Of that $3.1 billion, Mattel's expert testified that MGA earned $777.9 million in Bratz profits; Mr. Meyer testified to a lower amount. (Id.)  Ultimately, the jury found that no more that $10 million in Bratz profits were attributable to infringement of the copyrighted work.[5] (See Phase B Verdict Form, Questions 11(a)-(c).)  Thus,

---

[5]   In its Reply in support of its Motion for Permanent Injunction, Mattel repeatedly asserts that the jury awarded $100 million in damages – including even the disingenuous insinuation that the jury spread out the $100 million to avoid double counting.  (See Reply at 4 n.6 & 21 n.66.)  First, Mattel's motion for permanent injunction is based on its copyright infringement claim.  It is unambiguous that the jury returned a verdict of no more than $10 million in damages for copyright infringement.  The other damages were *not* for copyright infringement. Second, after Mattel specifically counseled the jury during closing (numerous times)
*(cont'd)*

1  as Mr. Meyer observes, no matter which party's profit figure the jury accepted, "the

2  profits that the jury found were attributable to Mattel's copyrights represent less than

3  3%" of total Bratz profits.  (Meyer Decl. ¶11.)  And as a percentage of revenue,

4  profits attributable to infringement were 0.3% or less.  (Id. ¶ 10.)

5        Using the jury's findings, Mr. Meyer calculated an ongoing royalty rate.  He

6  did so by dividing (a) the amount of profits the jury found attributable to the

7  infringement by (b) the undisputed amount of Bratz sales.  (Meyer Decl. ¶ 15.)  The

8  result is "a running royalty rate to apply to [alleged] future infringing net revenues."[6]

9  (Id. ¶ 16.)  Because this rate derives from the jury's findings, it reflects the jury's

10  allocation between profits attributable to infringement versus other non-infringing

11  contributions.  (Meyer Decl ¶ 17.)  The rate is therefore appropriate, should the Court

12  determine that Mattel is entitled to equitable relief.  (Id.)

13        Indeed, the Constitution mandates that any equitable remedy fashioned by the

14  Court run parallel to the jury's profit allocation.  The Seventh Amendment provides

15  that "no fact tried by a jury shall be otherwise re-examined in any Court of the

16  United States, than according to the rules of the common law."  U.S. Const., Am. VII.

17  As such, "it would be a violation of the seventh amendment right to jury trial for the

18  court to disregard a jury's finding of fact."  Floyd v. Laws, 929 F.2d 1390, 1397 (9th

19

20  ───────────────
   *(cont'd from previous page)*
   not to worry about double counting, the Court instructed the jury not to concern itself

21  with double counting.  Mattel cannot run from that reality now.

   [6]     Strangely, Mattel takes issue with an ongoing royalty expressed as a

22  percentage of net revenues, referring to it as an "apples to oranges" comparison.
   (Mattel's Motion to Strike ("Mot.") at 3.)  But expressing royalties as a percentage of

23  the licensee's revenues is the industry norm, as Mattel's own licensing agreements
   confirm.  The cases Mattel cites are to the same effect.  See, e.g., Georgia-Pacific

24  Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1143 (S.D.N.Y. 1970) (awarding
   patentee a portion of revenue from each infringing product sold).  Of course, the

25  royalty rate could be expressed as a percentage of profit.  That rate would apply to
   MGA's profits rather than to its revenues, but Mattel's share remains the same.

26  Mattel's expert agrees.  See Weil, Wagner & Frank, Litigation Services Handbook:
   The Role of the Financial Expert, 22:6, at 22.37, n.35 (4th ed. 2007)(noting that an

27  expert may "convert one rate/base to another" while keeping the royalty amount
   identical).  Mattel's objection, therefore, is a red herring.

28

───────────────

Cir. 1991). So in cases like this one, "where legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are 'based on the same facts,' in deciding the equitable claims 'the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations.'" <u>Gates</u>, 995 F.2d at 1473 (citing <u>Miller</u>, 885 F.2d at 507). Thus, a court sitting in equity must follow the jury's "implicit or explicit" factual findings.

Consequently, the jury's findings here not only represent a sufficient basis for Mr. Meyer's analysis, they inform any equitable relief this Court might award. <u>See</u> <u>Gates</u>, 995 F.2d at 1473-75 (reversing district court's order regarding equitable relief because it was contrary to the jury's implicit findings); <u>Miller</u>, 885 F.2d at 506-07 (reversing district court's judgment on equitable discrimination claim because it was inconsistent with jury's finding on legal claim). Accordingly, cases awarding royalties have given substantial weight to the jury's explicit and implicit determinations. <u>See, e.g.</u>, <u>Shatterproof Glass Corp. v. Libbey-Owens Ford Co.</u>, 758 F.2d 613, 628 (Fed. Cir. 1985) (awarding an ongoing royalty rate equal to the retrospective royalty rate determined by the jury); <u>Broadcom Corp. v. Qualcomm Inc.</u>, Case No. SACV 05-467 JVS (RNBx), 2007 U.S. Dist. LEXIS 97647, at *8 (C.D. Cal. Dec. 31, 2007) (concluding that "the starting point" for determining ongoing royalty rate was "the reasonable royalty rate which the jury implicitly accepted in calculating its damage awards"); <u>Stryker Corp. v. Davol, Inc.</u>, 75 F. Supp. 2d 746, 747-48 (W.D. Mich. 1999) (applying the jury's royalty rate on past sales to "continuing infringing activities"). Mr. Meyer's analysis therefore rests on an appropriate and sufficient factual basis.

Mattel argues in its Reply brief that the Court is bound only by specific findings of the jury and that the size of a damages award is relevant to the availability of equitable relief only where the amount of the verdict "makes it a mathematical certainty" that the jury made certain findings. (Reply at 1-3.) This is

1   wrong.   As an initial matter, Mattel's reliance on <u>Gates</u> for that proposition is
2   misplaced. (Reply at 2.)  In fact, the Ninth Circuit in <u>Gates</u> held exactly the opposite:
3   "In sum, the district court erred in engaging in fact-finding contrary to the *implicit*
4   findings of the jury verdict." <u>Gates</u>, 995 F.2d at 1475 (emphasis added).

5       More fundamentally, Mattel ignores the fact that MGA had and exercised its
6   Seventh Amendment right to have a jury determine infringement. <u>E.g.</u>, <u>Funky Films,</u>
7   <u>Inc. v. Time Warner Entm't Co., L.P.</u>, 462 F.3d 1072, 1077 (9th Cir. 2006).  Mattel
8   cannot, as a matter of law or common sense, circumvent MGA's constitutional right
9   to a jury trial based on a verdict form that it proposed because it now conveniently
10  maintains the form is ambiguous, and thus requires the Court to determine
11  infringement *de novo*.  Where a court sitting in equity fails to adhere to a jury's
12  findings – whether explicit or implicit – it abuses its discretion. <u>Gates</u>, 995 F.2d at
13  1473-75; <u>Miller,</u> 885 F.2d at 507.

14      **B.**   **<u>Mr. Meyer Has Reliably Applied Facts Determined By The Jury To</u>**
15          **<u>Calculate An Ongoing Royalty Rate</u>**

16      Mattel also argues that Mr. Meyer's approach is "not reliable" because Mattel
17  disagrees with his reasonable inferences from the jury's verdict.  (Mot. at 9-10, 12.)
18  Yet these arguments take aim not at Mr. Meyer's methodology, but at his conclusions.
19  Notably, Mattel nowhere contends that it is improper to derive a royalty rate from a
20  jury's verdict.  As such, Mattel's arguments, even if valid, do not justify exclusion
21  under <u>Daubert</u>.  <u>See</u> <u>Daubert</u>, 509 U.S. at 596 (noting that focus of the inquiry, "of
22  course, must be solely on principles and methodology, not on the conclusions they
23  generate").

24      Mattel could have attempted to address Mr. Meyer's inferences with contrary
25  evidence in the existing record or the jury's verdict.  <u>Id.</u> at 596; Fed R. Evid. 702,
26  2000 Comm. Notes ("[T]he trial court's role as gatekeeper is not intended to serve as
27
28

1 a replacement for the adversary system.") (quoting 14.38 Acres, 80 F.3d at 1078).

2 But Mattel did not attempt to do so, consistent with its "all-or-nothing" approach.

3       In any event, Mattel's attacks on Mr. Meyer's conclusions are ill-founded.

4 Mattel first disagrees with the profit figure in Mr. Meyer's calculation, arguing that

5 the jury did not determine the "value of the copyrights," but rather the profits MGA

6 derived from their use. (Mot. at 9-10.)  This argument is pure semantics.  Of course,

7 an accepted measure of a copyright's value is the profit it produces.[7]  See Bus.

8 Trends Analysts, Inc. v. Freedonia Group, Inc., 887 F.2d 399, 407 (2d Cir. 1989)

9 (equating infringing profits with "value created by the infringing material"); Standard

10 Mfg. Co. v. United States, 42 Fed. Cl. 748, 766 (1999) (computing a retrospective

11 royalty by dividing infringing profits by revenue); Fonar Corp. v. Gen. Elec. Co.,

12 107 F.3d 1543, 1552 (Fed. Cir. 1997) (same).  Tellingly, Mattel does not indicate

13 how, if it all, the "value of the copyrights" differs from the profits MGA derived

14 therefrom.  Nor does Mattel explain how this difference could (or should) affect the

15 computation of an ongoing royalty.  As such, this argument should be rejected.

16       Next, Mattel quibbles with Mr. Meyer's revenue figure, and specifically with

17 Mr. Meyer's decision to divide MGA's infringing profits by revenues from all Bratz

18 products. (Mot. at 10.)  Mattel suggests that the revenue figure may be less than $3.1

19 billion because, as it claims, not all Bratz products were accused of infringement. (Id.)

20 But this is not what Mattel argued to the jury.  From the beginning, Mattel claimed

21 that "virtually all of the Bratz merchandise (doll and non-doll) infringe either

22 Mattel's right to reproduce a copyrighted work or to prepare derivative works."

23 (Opp'n to MGA's Mot. In Limine No. 10, at 2, 8-9, Dkt. 3316.) ("MGA has created

24 _____

[7]   The jury's profit apportionment is effectively a determination of the

25 copyright's value.  See 17 U.S.C. § 504(b) ("In establishing the infringer's profits . . . the infringer is required to prove . . . the elements of profit attributable to factors

26 other than the copyrighted work"); see also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 886 F.2d 1545, 1549 (9th Cir. 1989) (finding that apportionment seeks

27 to measure the "relative contribution[ ]" of the copyrighted work to the overall profitability of the infringing work).

28

1   hundreds of Bratz products, virtually all of which constitute . . . direct

2   infringements").)    Accordingly, at trial, Mattel made no attempt to distinguish

3   between MGA's infringing and non-infringing Bratz profits.    Instead, Mattel

4   presented a unitary profit number as its "copyright damages."  (See TX 13966

5   (referring to $777.9 million in Bratz profits as "Copyright Damages -- MGA"); TX

6   13965 (referring to the same number simply as "damages").)

7          Mattel later insisted on a jury instruction that would permit the jury to find that

8   all Bratz products infringe, either because they infringe Mattel's right of reproduction

9   or its right to produce derivative works. (See Jury Instr. No 23, Dkt. 4267.)[8]

10  Consistent with its trial presentation, Mattel's motion for permanent injunction

11  claims that "each and every Bratz doll is infringing" and that everything from Bratz

12  "toothpaste to clothes to Halloween costumes" also infringes. (Mot. for Perm. Inj. at

13  2, 14.)  Thus, Mattel has consistently made no distinction between infringing and

14  non-infringing Bratz profits.  Tellingly, its motion to strike fails to identify any Bratz

15  products for which Mattel does not allege infringement.  Mr. Meyer's use of revenues

16  from all Bratz products is therefore justified.

17         Mattel also contends that Mr. Meyer's revenue figure is over-inclusive because

18  it "is based on products whose sale or license Mattel does not seek to enjoin." (Mot.

19  at 10.)  This argument is absurd.  Mattel's proposed injunction does little to narrow

20  the scope of Bratz products at issue.  In fact, the injunction is breathtaking in scope,

21  reaching even beyond the bounds of copyright law.[9]  For example, Mattel proposes

---

22  [8]     Mattel likewise insisted that the verdict form make no distinction between
23  direct and indirect profits. (Tr. 7985:11-13 (The Court:  "So you don't even want
     splitting up of direct and indirect profits?"; Mattel's counsel: "Absolutely not.")
24  [9]     As MGA previously noted, Mattel's proposed injunction order is overbroad
     and therefore improper. (MGA's Opp'n to Mattel's Mot. for Perm. Inj. at 17-18.)
25  "Injunctive relief must be tailored to remedy the specific harm alleged," and an
     overbroad injunction is an "abuse of discretion." Natural Res. Def. Council, Inc. v.
26  Winter, 508 F.3d 885, 886 (9th Cir. 2007) (citing Lamb-Weston, Inc. v. McCain
     Foods, Ltd., 941 F.2d 970, 974 (9th Cir. 1991).)  Accordingly, appellate courts have
27  vacated overbroad permanent-injunction orders. See, e.g., Christopher Phelps &
     Assocs., LLC v. Galloway, 492 F.3d 532, 545 (4th Cir. 2007) (vacating district
     (cont'd)

28

1 an injunction that would enjoin "any product, packaging or other item that embodies
2 or depicts in whole or in part, or <u>incorporates or uses in any manner</u>" the copyrighted
3 works.  (Proposed Order at 3 (emphasis added).)  Here again, Mattel fails to identify
4 a single Bratz product that lies beyond the injunction's overreaching grasp.  Mr.
5 Meyer's conclusion that all Bratz revenues should serve as the denominator in his
6 royalty rate calculation is therefore reasonable, as is the entirety of his analysis.

7    C.    <u>No "Generally Accepted Standards" Exist To Calculate Ongoing</u>
8          <u>Royalties</u>

9       Mattel also complains that Mr. Meyer did not first "consider" or "discuss" a
10 "standard, recognized methodology" for determining an ongoing or prospective
11 royalty rate.  (Mot. at 9.)  But none of Mattel's cases relate to ongoing or prospective
12 royalties; involve equitable relief of any kind; or pertain to copyright.  Rather, all
13 cases cited by Mattel involve an award of <u>retrospective</u> royalties as a measure of
14 <u>legal</u> <u>damages</u> under the Patent Act, the Lanham Act, or California trade secret law.[10]
15 By contrast, the majority of Mattel's cases are decided under patent law, which
16 provides for "damages" that are "no less than a reasonable royalty" to compensate
17 past patent infringements.  35 U.S.C. § 284 (providing that a court shall award patent
18 holder "<u>damages</u> . . . in no event less than a reasonable royalty for the use made of
19 the invention by the infringer") (emphasis added); <u>see</u> <u>Riles</u>, 298 F.3d at 1313 ("The

20

21 <i>(cont'd from previous page)</i>
   court's order of permanent injunction where the injunction "would encumber a great
22 deal of property unrelated to the infringement.").

23 [10]   <u>See</u> <u>Bose Corp v. JBL, Inc.</u>, 112 F. Supp. 2d 138, 164 (D. Mass 2000)
   (determining retrospective royalty in patent infringement case under 35 U.S.C. §
24 284); <u>Riles v. Shell Exploration & Prod. Co.</u>, 298 F.3d 1302, 1311 (Fed. Cir. 2002)
   (same); <u>TWM Mfg. Co. v. Dura Corp</u>, 789 F.2d 895, 898-899 (Fed. Cir. 1986)
25 (same); <u>MicroChemical, Inc. v. Lextron, Inc.</u>, 317 F.3d 1387, 1393 (Fed. Cir. 2003)
   (same); <u>Sands, Taylor & Wood v. Quaker Oats Co.</u>, 34 F.3d 1340, 1352 (7th Cir.
26 1994) (applying reasonable royalty as a means of awarding past profits in trademark
   case) <u>Vt. Microsystems, Inc. v. Autodesk, Inc.</u>, 88 F.3d 142, 147, 151-52 (2d Cir.
27 1996) (reversing reasonable royalty award for past conduct under California law of
   trade secret misappropriation).

28

1   [Patent Act] promises the patentee, as a minimum, a reasonable royalty as
2   compensation for infringement.").

3        An ongoing royalty, on the other hand, is a form of prospective, equitable
4   relief committed to the Court's equitable discretion.   See Paice v. Toyota Motor
5   Corp., 504 F.3d 1293, 1315-1316 (Fed. Cir. 2007) (holding that an "ongoing royalty"
6   constitutes a form of equitable relief rather than legal damages).   The jury in this
7   case has already determined compensatory damages; the Court must now determine
8   whether equitable relief is appropriate and, if so, what form that relief should take.
9   Mattel's cases do not provide any "methodology" for formulating an ongoing royalty
10  rate consistent with a jury's factual determinations.   Thus, far from establishing a
11  "standard, recognized" approach, Mattel's cases are inapposite.[11]

12       Moreover, many of the factors Mattel lifts from patent cases are inapplicable
13  on their face.[12]   Mattel has blocked discovery related to other factors.   For example,
14  Mattel refuses to remove the redactions from its licensing agreements, which may
15  bear upon the fourth factor Mattel cites. (Mot. at 7.)   Still other factors have already
16  been addressed through the jury's verdict.   (See id. at 8 (identifying as a factor "[t]he
17  portion of the realizable profit that should be credited to the invention as
18  distinguished from non-patented elements …[.]").   Thus, even if these factors were
19  applicable here, any royalty would need to account for the jury's findings regarding
20  "the portion of the realizable profit that should be credited to the invention." See

21

22  [11]    Even in the patent context, no "standard" analytical approach governs the
        calculation retrospective royalties, as Mattel's own cases show.   See TWM Mfg.,
23  789 F.2d at 899 ("Dura has cited nothing which would limit the district court's
        discretion in choosing the analytical approach to determine a reasonable royalty.");
24  see also Georgia-Pacific Corp., 318 F. Supp. at 1121 (noting that the willing buyer-
        willing seller rule "is more of a statement of approach than a tool of analysis").

25  [12]    See Mot. at 7-8 (citing such factors as "[t]he royalties received … proving or
        tending to prove an established royalty; "[t]he duration of the patent and the term of
26  the license" ;"the utility and advantages of the patent property over old modes or
        devices"; "[t]he nature and scope of the license, as exclusive or non-exclusive, or as
27  restricted or non-restricted.…").

28

1  Georgia-Pacific Corp, 318 F. Supp. at  1120. The analysis proffered by Mr. Meyer

2  does so, and is therefore appropriate.

3        **D.**   **Mr. Meyer Has An Appropriate Foundation To Offer His Analysis**

4       Mr. Meyer makes clear that his analysis is rooted in facts determined by the

5  jury. (Meyer Decl. ¶ 15.)  And, as explained above, these facts are binding on the

6  Court sitting in equity.  Mattel does not contend otherwise. (See Mattel's Mot. for

7  Decl. J. at 6-7 ("The jury's findings are controlling here.") (citing Gates, 995 F.2d at

8  1473).)  Nevertheless, and despite Mr. Meyer having already testified, without

9  objection, to MGA's revenues and profits, Mattel argues that Mr. Meyer's analysis

10  "lacks foundation." (Mot. at 11-13.)  In making this argument, however, Mattel cites

11  to authority applicable only where an expert bases his opinions "solely or primarily

12  on experience." See Fed. R. Evid. 702, 2000 Comm. Notes ("If the witness is relying

13  solely or primarily on experience, then the witness must explain how that experience

14  leads to the conclusion reached").   Yet Mr. Meyer does not rely "primarily on

15  experience," but rather on his analysis of MGA's revenues, profits, and the jury's

16  verdict. (Meyer Decl. ¶¶ 6, 8, 9-13.)  Mattel's argument is misplaced.

17       Mr. Meyer is more than qualified to offer the analysis.  He has analyzed

18  numerous claims for reasonable royalties in matters involving infringement of

19  intellectual-property rights. (Meyer Decl. ¶ 5.)  He has also "analyzed hundreds of

20  agreements relating to the licensing of intellectual property" and "determined

21  reasonable royalty rates for the use of intellectual property." (Id.)  Details of Mr.

22  Meyer's experience, including his work related to royalties, were repeatedly

23  disclosed to Mattel, consistent with MGA's Rule 26 obligations.  Moreover, many of

24  Mr. Meyer's opinions are now matters of public record; Mattel's brief even cites to

25  one example.  (See Mot. at 9.)  And, while Mattel contends that Mr. Meyer lacks

26  experience in doll "manufactur[ing]" and "sale[s]," it does not explain why such

27  additional experience is necessary here, much less grounds for disqualification. See

28

1 Thomas v. Newton Int'l Enters., Inc., 42 F.3d 1266, 1269 (9th Cir. 1994) (Federal

2 Rule of Evidence 702 ... contemplates a broad conception of expert qualifications.");

3 see also 4 Weinstein's Federal Evidence, § 702.04[1][a], at 702-50 ("The standard for

4 qualifying witnesses is liberal."). Thus, Mattel's claim that Mr. Meyer's opinions

5 lack foundation, or that the foundation was insufficiently disclosed, should be

6 rejected.

## III.   MR. MEYER'S TESTIMONY REGARDING MGA'S ABILITY TO PAY AN ONGOING ROYALTY IS ADMISSIBLE

9         In his declaration, Mr. Meyer notes that Mattel itself projected profits

10 sufficient to satisfy any past or future damage award.   (Meyer Decl. ¶ 18.)

11 Remarkably, in disagreeing with Mr. Meyer's conclusion, Mattel attempts to

12 undercut the analysis of its own expert. (Mot. at 13.)  Specifically, it claims that Mr.

13 Wagner's projections were based, in part, on historical financial data through June 30,

14 2008, and therefore are outdated.  But just two months ago, Mattel believed that Mr.

15 Wagner's projections were more than sufficient to support its claim for an additional

16 $310 million in future damages.   (See TX 13961 (claiming $310.8 million,

17 purportedly equal to the value of Mr. Larian's Bratz-related stock "as of 6/08").)

18 Mattel provides no rational basis for its sudden abandonment of Mr. Wagner's

19 analysis.

20         Likewise, Mattel's citation to MGA's Ninth Circuit writ takes liberties with the

21 factual chronology.  At the time the writ was filed, MGA faced the threat of a $2.2

22 billion damages claim, sufficient to decimate the company.  That threat was later

23 removed by the jury's Phase 1(b) verdict.[13]  In any event, it is Mattel, not MGA, that

---

24 [13]      Mattel's motion also fails to consider the MGA Parties' ability to satisfy a

25 reduced money judgment once the Court eliminates duplicative awards in the remittitur phase.  Such corrections for potential "double recovery" are commonplace.

26 See, e.g., Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1021 (8th Cir. 2008) (reforming the jury's verdict of three separate awards of $125,000 for

27 plaintiff's state law claims to one single award of $125,000 where each was premised on the same "single indivisible injury" and allowing each to stand would create an

28                                                                        (cont'd)

1  bears the burden of proving potential insolvency under the injunction standard.  See

2  Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, 518 F. Supp. 2d 1197, 1217 (C.D.

3  Cal. 1997) ("[M]erely alleging an opponent's inability to pay damages does not

4  constitute irreparable harm.") (citation omitted).  Mattel has failed to do so.  And,

5  here again, because Mattel attacks Mr. Meyer's conclusions, rather than underlying

6  principles or methodology, Mattel's argument does not constitute a Daubert

7  challenge.  It should therefore be rejected.

8  <center>**CONCLUSION**</center>

9  For the foregoing reasons, Mattel, Inc.'s Motion to Strike the Declaration of

10  Paul K. Meyer should be denied.

11
12  DATED:  October 27, 2008          Respectfully submitted,

13                                    SKADDEN, ARPS, SLATE, MEAGHER &
                                      FLOM LLP

14
15                                    By: /s/ Thomas J. Nolan
                                          Thomas J. Nolan
16                                        Attorneys for MGA Parties

17
18
19
20
21
22
23
24  _____
    *(cont'd from previous page)*
25  "impermissible double recovery").  Moreover, contrary to Mattel's assertion, MGA's
    purported inability to pay non-copyright damages does not support issuance of an
26  injunction for alleged copyright infringement; unsurprisingly, Mattel offers no
    authority to support its proposition.  Finally, Mattel's arguments have little to do with
27  MGA's ability to pay an ongoing royalty.  That is because a royalty would come "off
    the top" of any revenues MGA earns.
28