QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. CV 04-09059 and Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| Defendant. | MATTEL, INC.'S REPLY IN SUPPORT OF MOTION TO  STRIKE DECLARATION OF PAUL K. MEYER FILED IN SUPPORT OF MGA PARTIES' OPPOSITION TO MATTEL'S MOTION FOR PERMANENT INJUNCTION |
| AND CONSOLIDATED ACTIONS. | Date:      November 10, 2008 Time:      1:00 p.m. Place:     Courtroom 1 |

07209/2687220.6

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ........................................................................................... 1

I.     AN INJUNCTION, NOT A ROYALTY, IS THE PROPER REMEDY ......... 1

II.    MEYER'S ROYALTY OPINIONS ARE INADMISSIBLE ........................... 4

    A.    The Jury Did Not Make Factual Findings Which Bind The Court to Deny An Injunction Or Adopt A Compulsory Royalty ..................... 4

    B.    Meyer's Royalty Is Not Properly "Informed By" The Verdict .............. 6

    C.    Meyer's Royalty Opinions Are Unreliable ................................................ 8

    D.    Meyer's Royalty Opinions Lacks Foundation ...................................... 11

III.   MEYER'S ABILITY TO PAY OPINION IS INADMISSIBLE ................... 12

# TABLE OF AUTHORITIES

**Page**

## Cases

A&M Records, Inc. v. Napster, Inc.,
  239 F.3d 1004 (9th Cir. 2001) .................................................................. 2

Abend v. MCA, Inc.,
  863 F.2d 1465 (9th Cir. 1988) ........................................................ 1, 2, 3, 4

Amado v. Microsoft Corp.,
  517 F.3d 1353 (Fed. Cir. 2008) ............................................................... 7

Bains LLC v. Arco Prods. Co., Div. of Atl. Richfield Co.,
  405 F.3d 764 (9th Cir. 2005) .................................................................. 8

Bose Corp. v. JBL, Inc.,
  112 F. Supp. 2d 138 (D. Mass. 2000) ......................................................... 8

Broadcom Corp. v. Qualcomm, Inc.,
  2007 U.S. Dist. LEXIS 97647 (C.D. Cal.  2007) ......................................... 6, 7, 9

Burton v. Armontrout,
  975 F.2d 543 (8th Cir. 1992) .................................................................. 4

Business Trends Analysts, Inc. v. Freedonia Group, Inc.,
  887 F.2d 399 (2d Cir. 1989) ................................................................. 11

Cadence Design Sys. v. Avant! Corp.,
  125 F.3d 824 (9th Cir. 1997) .................................................................. 2

Daubert v. Merrell Dow Pharms., Inc.,
  43 F.3d 1311 (9th Cir. 1995) ............................................................... 8, 10

Daubert v. Merrell Dow Pharms., Inc.,
  509 U.S. 579 (1993) ...................................................................... 8, 10, 11

Dun v. Lumberman's Credit Ass'n,
  209 U.S. 20 (1908) ........................................................................... 3

eBay, Inc., v. MercExchange, LLC,
  547 U.S. 388 (2006) ...................................................................... 1, 2, 4

Fonar Corp. v. Gen. Elec. Co.,
  107 F.3d 1543 (Fed. Cir. 1997) .............................................................. 10

Georgia-Pacific Corp. v. United States Plywood Corp.,
  318 F. Supp. 1116 (S.D.N.Y. 1970), modified and aff'd, 446 F.2d 295 (2d Cir.
  1971) ................................................................................... 6, 9, 10

Los Angeles Police Protective League v. Gates,
   995 F.2d 1469 (9th Cir. 1993) ................................................................. 5

McGlinchy v. Shell Chem. Oil,
   845 F.2d 802 (9th Cir. 1988) ............................................................... 11

Micro Chemical, Inc. v. Lextron, Inc.,
   317 F.3d 1387 (Fed. Cir. 2003) ............................................................ 9

Newton v. Diamond,
   204 F. Supp. 2d 1244 (C.D. Cal. 2002) ............................................... 6

Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.,
   585 F.2d 821 (7th Cir. 1978) ................................................................ 5

Paice v. Toyota,
   504 F.3d 1293 (Fed. Cir. 2007) ............................................................ 7

Practice Mgmt. Info. Corp. v. Am. Med. Ass'n,
   121 F.3d 516 (9th Cir. 1997) ................................................................ 3

Richard Feiner & Co. v. Turner Entm't,
   926 F. Supp. 40 (S.D.N.Y. 1996) ......................................................... 4

Richart Feiner & Co. v. Turner Entm't,
   1997 WL 603447 (S.D.N.Y. Sept. 30, 1997) ....................................... 4

Roberts v. Coll. of the Desert,
   870 F.2d 1411 (9th Cir. 1988) ......................................................... 4, 5

Sands, Taylor & Wood v. The Quaker Oats Co.,
   34 F.3d 1340 (7th Cir. 1994) ................................................................ 9

Snider v. Consol. Coal Co.,
   973 F.2d 555 (7th Cir. 1992) ................................................................ 6

Stryker Corp. v. Davol, Inc.,
   75 F. Supp. 2d 746 (W.D. Mich. 1999) ............................................... 6

Universal City Studios v. Sony Corp,
   659 F.2d 963 (9th Cir. 1981) ................................................................ 3

Vermont Microsystems, Inc. v. Autodesk, Inc.,
   88 F.3d 142 (2d Cir. 1996) ................................................................... 8

Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,
   259 F.3d 1101 (9th Cir. 2001) .............................................................. 8

## Statutes

42 U.S.C. § 1981 .................................................................................... 8

1

**<u>Miscellaneous</u>**

6 <u>Patry on Copyright</u> § 22:101 ........................................................................5

Weil, Wagner & Frank, <u>Litigation Services Handbook: The Role of the Financial Expert</u>, 22:6 at 22.16-30 (4th Ed. 2007)................................................9

**Preliminary Statement**

MGA all but ignores the Daubert tests and the fatal failings of Mr. Meyer's methodology, and instead treats its "opposition" as an unauthorized surreply to Mattel's injunction motion.  The effort is both improper and unpersuasive.  MGA's argument that the Court is bound by the jury's damages award in shaping equitable relief is wrong.  Its argument that a royalty is preferable to an injunction continues to misgauge the equities and miscite precedent.  And its argument that the jury implicitly adopted a prospective royalty rate—or that Meyer can glean such a rate from its verdict—is a misleading revisionist history.  The jury did not determine any royalty rate, let alone a prospective one, and was not asked to.  Meyer's simplistic, incongruous arithmetic is based on jury findings that were not made.  His unreliable opinion should be stricken.

As to ability to pay, Meyer ignores MGA's repeated complaints about its dire financial problems and instead relies solely on projections by a Mattel expert based on months-old data which Meyer himself disputed.  Meyer has access to MGA's *current* financial information (which Mattel lacks).  His parroting of outdated projections, in lieu of actual analysis of MGA's current finances, is not proper expert testimony.

**Argument**

**I.    AN INJUNCTION, NOT A ROYALTY, IS THE PROPER REMEDY**

MGA mischaracterizes the law in arguing that a royalty payment is the preferred remedy for continuing copyright infringement.  Its effort to analogize this case to Abend v. MCA, Inc., 863 F.2d 1465 (9th Cir. 1988), is no more successful now than in its injunction opposition, and its deceptive misquote of Justice Kennedy's concurrence in eBay (noted in Mattel's reply to that opposition) cannot be dismissed as a simple mistake now that it has been repeated.  Most tellingly, MGA continues to ignore the only two post-Abend cases where the Ninth Circuit has addressed requests for royalties in lieu of copyright injunctions, each of which rejected the royalty request.

Abend, as Mattel has shown, involved what the Ninth Circuit has described as "special circumstances" in which *the defendant had done nothing wrong* but lost the

rights to a story on a "technicality;" an injunction would have prohibited the defendant from distributing a motion picture it lawfully created ("Rear Window"), and the public would have been denied the chance to view a classic film.  Since <u>Abend</u> the Ninth Circuit has rejected royalty arguments in the only two published cases in which they were sought, specifically emphasizing the "special circumstances" in <u>Abend</u> that MGA seeks to dismiss as irrelevant.  <u>Compare</u> <u>Cadence Design Sys. v. Avant! Corp.</u>, 125 F.3d 824, 829 (9th Cir. 1997) (Abend involved "special circumstances") <u>with</u> MGA Opp. at 3 n.2 (attacking Mattel for treating <u>Abend</u> as a "special circumstances" case); <u>see also</u> <u>A&M Records, Inc. v. Napster, Inc.</u>, 239 F.3d 1004 (9th Cir. 2001).

Instead of addressing these cases (much less explaining how MGA, which at no time had the right to produce products based on Bryant's designs, can analogize its situation to Paramount's loss of rights to a film based on a technicality a dozen years after it was lawfully made), MGA relies on what appears, the second time around, to be an intentional effort to mislead.  According to MGA, Justice Kennedy stated in his <u>eBay</u> concurrence: "When the patented invention is but a small component of the product the companies seek to produce . . . an injunction may not serve the public interest."  MGA Opp. at 3, citing <u>eBay, Inc., v. MercExchange, LLC</u>, 547 U.S. 388, 396-97 (2006) (Kennedy, J., concurring).  But—as Mattel previously pointed out when MGA used the same language in its injunction opposition—the language omitted by MGA's ellipsis entirely changes the meaning of Justice Kennedy's statement: "When the patented invention is but a small component of the product the companies seek to produce ***and the threat of an injunction is employed simply for undue leverage in negotiations, legal damages may well be sufficient to compensate for the infringement and*** an injunction may not serve the public interest." <u>Id.</u> (emphasized language omitted from MGA's citation).  This is not a case in which "the threat of an injunction is employed simply for leverage in negotiations," nor will legal damages be sufficient as Mattel has shown.[1]

---

[1]  MGA also continues to ignore the three other concurring Justices in <u>eBay</u>: "From at least the early 19th century, courts have granted injunctive relief upon a finding of infringement in the (footnote continued)

1    MGA's only other authority for what it wrongly describes as the Supreme Court's
2    "long recongni[tion]" of "the injustice of imposing an injunction" under "such
3    circumstances," Opp. at 3, is no more persuasive.  In Dun v. Lumberman's Credit Ass'n,
4    209 U.S. 20, 23-24 (1908), the Supreme Court affirmed the denial of an injunction
5    because at most "a few names" from the plaintiff's book may have been used by an agent
6    of the defendants among the tens of thousands included in the challenged directory.  But
7    no royalty was awarded either.  The Court held no equitable relief was appropriate.

8    Indeed, in *none* of the copyright cases cited by MGA did the court actually impose
9    a royalty.  Universal City Studios v. Sony Corp,  659 F.2d 963, 976 (9th Cir. 1981), cited
10   Nimmer for the proposition that "when great public injury would result from an
11   injunction, a court could award damages or a continuing royalty," but actually *reversed*
12   the rejection of an injunction and reaffirmed the "general rule" that a copyright plaintiff
13   is entitled to a permanent injunction when liability and a threat of continued violations
14   have been established.  MGA's reliance on Practice Mgmt Info. Corp. v. Am. Med.
15   Ass'n, 121 F.3d 516, 519 (9th Cir. 1997), is even more misplaced.  A publisher who
16   resold medical reference works in which the AMA held the copyright sued in that case to
17   declare the copyright invalid, claiming the AMA's right to limit publication posed a
18   threat to public access.  The Ninth Circuit rejected the argument, finding the AMA had
19   no incentive to limit publication and that other remedies would be available if it did so,
20   "including 'fair use' and due process defenses for infringers and perhaps, most relevantly,
21   mandatory licensing at a reasonable royalty could be required in light on the great public
22   injury that would result if adequate access to the [copyrighted work] were denied."  Far
23   from supporting MGA's claim that Abend had nothing to do with special circumstances,
24   the dicta in these cases establishes just the opposite.  No "great public injury would
25   result" if MGA were restricted to using sculpts and designs of its own, nor would MGA

26   ───────────────────────
27   vast majority of patent cases.  This 'long tradition of equity practice' is not surprising, given the
     difficulty of protecting a right to *exclude* through monetary remedies that allow an infringer to
     *use* an invention against the patentee's wishes -- a difficulty that often implicates the first two
28   (footnote continued)

be deprived of profits it can lawfully obtain from exploiting its own designs; as MGA trumpeted during trial, it is capable of creating non-infringing designs.[2]  MGA's other cases are even less persuasive.[3]  The proper remedy is an injunction, not a royalty.

## II.     MEYER'S ROYALTY OPINIONS ARE INADMISSIBLE

MGA argued in its opposition to Mattel's injunction motion that "the only reasonable reading of the jury's verdict is that there is *no* ongoing infringement,"[4] and claimed that purported finding binds the Court to deny prospective equitable relief. MGA now concedes the jury may have found at least "*limited* ongoing infringement," Opp. at 1 (emphasis added), and claims this interpretation justifies Meyer's royalty opinions.  The jury did not find facts that provide a basis for a royalty calculation (nor, as MGA now concedes, did it find no ongoing infringement).  Meyer's opinion, which is based solely on alleged "facts already determined by the jury," thus lacks foundation.

### A.     The Jury Did Not Make Factual Findings Which Bind The Court to Deny An Injunction Or Adopt A Compulsory Royalty

A court sitting in equity generally must find the pertinent facts for itself.  The Court recognized this pre-verdict:  "I'm going to have to re-evaluate all the products myself before I can make the injunctive findings or grant the injunctive relief."[5]  MGA correctly asserts that an equity court must "adhere to a jury's findings," both explicit and implicit (Opp. at 8), but a court is only bound as to findings "necessarily and *actually* decided by the jury." Roberts v. Coll. of the Desert, 870 F.2d 1411, 1418 (9th Cir. 1988) (italics in original) (internal citations omitted); see Burton v. Armontrout, 975 F.2d 543, 545 (8th Cir. 1992) (general verdict of no liability does not preclude injunction based on

---

factors of the traditional four-factor test."  eBay, 547 U.S. at 395 (Roberts, C.J., Scalia & Ginsburg, JJ., concurring) (italics in original).

[2]   See, e.g., Trial Tr. at 6172:13-21 (Larian testifying that MGA would have "found something else" absent Bryant's designs).

[3]   For example, Richard Feiner & Co. v. Turner Entm't, 926 F. Supp. 40, 43-44 (S.D.N.Y. 1996) does "consider" awarding a continuing royalty in lieu of an injunction, MGA Opp. at 3 n.3, but MGA fails to acknowledge, as Mattel showed before, that the court *refused* a royalty and instead issued an injunction, finding Abend inapplicable. Id. at 44; see also Richart Feiner & Co. v. Turner Entm't, 1997 WL 603447, at *3 (S.D.N.Y. Sept. 30, 1997) (issuing injunction and finding Abend inapplicable).

[4]   MGA Opp. to Mot. for Perm. Inj. at 29 (emphasis added).

[5]   Trial Tr. at 8015:19-23.

same claim). Because the standard is one of *necessary* implication, a court is bound by a general damages verdict when adjudicating equitable claims only if that verdict "makes it a mathematical certainty" that the jury found facts that are controlling. <u>Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.</u>, 585 F.2d 821, 844 (7th Cir. 1978). Absent that degree of certainty, there is no way to tell what the jury "necessarily and *actually* decided," and an equity court must find the facts for itself. <u>Roberts</u>, 870 F.2d at 1418.

MGA claims Mattel is "wrong" in saying "the Court is bound only by specific findings of the jury and that the size of a damages award is relevant to the availability of equitable relief only where the amount of the verdict 'makes it a mathematical certainty' that the jury made certain findings." (Opp. at 7-8.) Yet the only authority MGA cites— <u>Los Angeles Police Protective League v. Gates</u>, 995 F.2d 1469, 1473 (9th Cir. 1993)— supports Mattel's position, not MGA's. The Ninth Circuit reversed a denial of equitable relief in that case because the trial court's key factual finding contradicted a finding the jury "necessarily" made. <u>Id.</u> at 1473-74. The jury found for the plaintiff and awarded damages which, in light of the jury instructions, *necessarily* implied a finding that plaintiff "would not have been discharged except for his refusal to be illegally searched." <u>Id.</u> at 1474. The trial court nonetheless denied injunctive relief because of its view that plaintiff "would have been fired in any event." <u>Id.</u> at 1472. The district court's rejection of a finding the jury had necessarily made was held improper. <u>Id.</u> at 1475.

Unlike <u>Gates</u>, the jury here was not even asked to make findings regarding the scope of MGA's ongoing infringement and appropriate remedies for that infringement, and it made no such findings either expressly or by necessary implication. Mattel sought an award of damages from the jury for *past* infringement; awards of "future" copyright damages are not available. <u>See</u> 6 <u>Patry on Copyright</u> § 22:101 ("Future damages are not awardable"); <u>id.</u> § 22:116 (same, regarding "future[] profits"). An injunction (or, theoretically, a prospective royalty) is designed to redress future harm. <u>Id.</u> § 22:78 ("May the court award a permanent injunction if monetary damages have already been awarded by the trier of fact? The answer is clearly yes: monetary damages are awarded

for past harm, while injunctive relief is intended to prevent future harm.").  The jury had no occasion to address the issues now before the Court:  the scope of ongoing infringement; the extent to which that infringement will injure Mattel; and the appropriate remedy for those injuries.  Mattel did not seek to prove its future injuries at trial, including market share losses, because the issue was not before the jury.[6]  That alone precludes any estoppel.  See, e.g., Snider v. Consol. Coal Co., 973 F.2d 555, 559 (7th Cir. 1992) (court not bound by jury finding where all relevant evidence was not introduced before jury).[7]

### B.    Meyer's Royalty Is Not Properly "Informed By" The Verdict

MGA claims that courts awarding royalties give "substantial weight to the jury's explicit and implicit determinations," and argues Meyer's opinions therefore "rest[] on an appropriate and sufficient factual basis."  (Opp. at 7.)  Yet MGA does not cite a single case in which any court or any expert extracted a prospective royalty rate from a past damages verdict where neither party put royalty evidence before the jury.  In Stryker, although the jury *expressly* found a 20% royalty rate for past patent infringement the court still entered a permanent injunction and also doubled that royalty rate when awarding damages for infringements occurring between the dates of the jury's verdict and entry of the permanent injunction.  Stryker Corp. v. Davol, Inc., 75 F. Supp. 2d 746, 747-48 (W.D. Mich. 1999).  In Broadcom, the jury adopted a royalty rate expressly introduced into evidence at trial as to two patents; the court still entered a permanent injunction and also trebled that royalty rate as to infringements between the dates of the verdict and injunction (after finding the rate consistent with Georgia-Pacific factors).  Broadcom Corp. v. Qualcomm, Inc., 2007 U.S. Dist. Lexis 97647, *28-30 (C.D. Cal.

---

[6]   Even MGA claims only that Mattel sought to prove *MGA's* future profits, not that Mattel sought to prove the amount of its own future injuries.
[7]   MGA's assertion that the jury found *"de minimis* infringement" is mistaken.  By definition, *de minimis* infringement is not actionable, whereas here the jury found for Mattel on liability.  Newton v. Diamond, 204 F. Supp. 2d 1244, 1256-57 (C.D. Cal. 2002) ("To establish that the infringement of a copyright is *de minimis*, **and therefore not actionable**," the alleged infringer must demonstrate that the copying of the protected material is so trivial 'as to fall below the (footnote continued)

1   2007).[8]  Courts that conclude a prospective royalty is appropriate may modify even past

2   royalty rates *expressly* adopted by juries.  See Amado v. Microsoft Corp., 517 F.3d 1353,

3   1361 (Fed. Cir. 2008) ("Microsoft argues that the district court was entitled to award

4   Amado no more than $0.04 per infringing unit, the amount the jury found to be a

5   reasonable royalty. We easily dispose of this argument as well. The jury's award of $0.04

6   per unit was based on Microsoft's infringing conduct that took place prior to the verdict.

7   There is a fundamental difference, however, between a reasonable royalty for pre-verdict

8   infringement and damages for post-verdict infringement."); Paice v. Toyota, 504 F.3d

9   1293, 1317 (Fed. Cir. 2007) (cited by MGA) ("[P]re-suit and post-judgment acts of

10  infringement are distinct, and may warrant different royalty rates given the change in the

11  parties' legal relationship and other factors.").  But Mattel is aware of no court that has

12  done what MGA now asks the Court to do—use a past damages verdict where royalty

13  evidence was not even before the jury to "inform" a prospective royalty rate.

14          This case should not be the first.  Meyer purports to extrapolate from the jury's

15  verdict but acknowledges no one knows what the jury's actual findings were, postulating

16  various alternatives.[9]  Nor are those that Meyer mentions the universe of possible

17  "interpretations" of the verdict.  MGA invited the jury to reduce its award based on

18  MGA's dire financial straits (though it now seeks to disavow its assertions).  Meyer and

19  MGA also ignore the evidence showing that MGA's after tax profits from sales of core

20  Bratz dolls totaled approximately $200 million[10]—double the jury's total award of $100

---

quantitative threshold of substantial similarity, which is always a required element of actionable copying.'") (internal citation omitted, emphasis added).

[8]  As to a third patent, the court ordered negotiations to determine the hypothetical value of a license and, were that to fail, briefing to determine a royalty rate for pre-injunction infringements because—as in our case—"the trial record encompass[es] no evidence of a reasonably royalty on infringing products." Id. at *22.

[10]  Meyer Declaration, ¶¶ 12 and 13.

[10]  As Trial Exhibit 13931 shows, MGA's gross revenue from all core Bratz fashion dolls for the period 2001 through June 2008, totaled $1,323,614,853.  See Trial Exhibit 13931-0004, 0009, 0014, 0019, 0024, 0029, 0034, 0038, 0043, Proctor Decl. Exh. 1.  According to the Exhibit, MGA incurred costs related to the core Bratz fashion dolls of $1,023,784,633 during the same period.  Id.  The resulting pre-tax profits are $299,830,220.  Subtracting taxes paid by MGA as a company ($19,164,538) and those paid by shareholders ($80,162,946), id., shows that, according to the Exhibit, MGA's total income from all core Bratz fashion dolls, after taxes, for the period 2001 through June 2008 was $200,502,737.

1    million.[11]  Those numbers hardly support MGA's claim that the jury found only limited

2    wrongdoing.  The scope of what the jury actually found infringing and its apportionment

3    findings are unknown; speculating about them is not a proper expert methodology.

4    **C.    Meyer's Royalty Opinions Are Unreliable**

5        MGA all but concedes that Meyer's opinion fails to satisfy <u>Daubert</u> or <u>Kumho

6    Tire</u>.  There is no dispute that (i) Meyer's methodology has not been tested; (ii) it has not

7    been subjected to peer review or publication; (iii) there is no known or potential error

8    rate; (iv) there are no standards controlling the methodology's operation; and (v) "general

9    acceptance" (or any acceptance) of the methodology has not been established.  <u>Daubert

10   v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 593-94 (1993).  There is also no "objective

11   source" such as a treatise, study or article supporting the methodology.  <u>Daubert v.

12   Merrell Dow Pharms., Inc.</u>, 43 F.3d 1311, 1317-19 (9th Cir. 1995).  MGA claims the

13   "presence or absence of any particular <u>Daubert</u> factor does not necessarily indicate

14   reliability" (Opp. at 4), but Meyer's declaration satisfies *none* of the factors.  MGA has

15   not met its burden of demonstrating that Meyer's methodology is reliable.

16       Meyer did not employ any generally accepted rules for determining royalty rates.

17   When no established royalty rate exists, for example, courts construct hypothetical

18   negotiations to determine the royalty rates upon which the parties would agree.  <u>See</u>, <u>e.g.</u>,

19   <u>Vermont Microsystems, Inc. v. Autodesk, Inc.</u>, 88 F.3d 142, 151 (2d Cir. 1996); <u>Bose

20   Corp. v. JBL, Inc.</u>, 112 F. Supp. 2d 138, 165 (D. Mass. 2000).  One often accepted

---

21   [11]   MGA argues the jury's full damages award of $100 million must be ignored because its
22   copyright verdict was $10 million (Opp. at 5 n.5), but ignores the controlling Ninth Circuit
     authority cited by Mattel.  <u>Bains LLC v. Arco Prods. Co., Div. of Atl. Richfield Co.</u>, 405 F.3d
23   764, 771-72 (9th Cir. 2005) (award of $1 for 42 U.S.C. § 1981 violation did not show no
     economic harm because jury awarded $50,000 for breach of contract and jury may have thought
24   "putting the same $50,000 under both the § 1981 and the breach of contract causes of action
     would be double counting).  MGA also argues the $100 million verdict is "duplicative" (Opp.
25   at 14 n.13), but that unproven contention is both speculative and waived.  <u>Yeti by Molly, Ltd. v.
     Deckers Outdoor Corp.</u>, 259 F.3d 1101, 1110 (9th Cir. 2001) ("The verdict form required the
26   jury to assign a separate damages figure for each cause of action.  Deckers waived the argument
     that the jury double-counted by returning five damages figures (one for each cause of action)
27   for each plaintiff.  By failing to raise this argument until after the jury was discharged, the
     district court had no chance to develop a record of how the jury apportioned damages.  Without
     this record, we decline to speculate and allow the verdicts to stand.").  And, as MGA knows, its
28   (footnote continued)

methodology to analyze a hypothetical negotiation is application of the <u>Georgia-Pacific</u> factors. <u>Georgia-Pacific Corp. v. United States Plywood Corp.</u>, 318 F. Supp. 1116 (S.D.N.Y. 1970), <u>modified and aff'd</u>, 446 F.2d 295 (2d Cir. 1971); <u>see also</u> <u>Micro Chemical, Inc. v. Lextron, Inc.</u>, 317 F.3d 1387, 1393 (Fed. Cir. 2003); <u>Sands, Taylor & Wood v. The Quaker Oats Co.</u>, 34 F.3d 1340, 1352 (7th Cir. 1994).

Cases relied upon by MGA use this analysis. In <u>Standard Mfg. Co.</u>, for example, the court based its royalty rate on a "hypothetical negotiation" between the parties and engaged in an eight page discussion of the <u>Georgia-Pacific</u> factors to multiply a "baseline royalty rate" by a factor of four to arrive at a royalty rate of 16.31%. 42 Fed. Cl. 748, 767-75 (1999). In <u>Broadcom</u> the court required an actual negotiation to determine the rate that would be agreed upon post-verdict. 2007 U.S. Dist. LEXIS 97647, at *22. MGA cites Weil, Wagner & Frank, but ignores its instruction that experts "should make explicit use of the 15 <u>Georgia-Pacific</u> factors." Weil, Wagner & Frank, <u>Litigation Services Handbook: The Role of the Financial Expert</u>, 22:6 at 22.16-30 (4th Ed. 2007).

MGA concedes that Meyer has failed to consider a hypothetical negotiation or any of the <u>Georgia-Pacific</u> factors. While MGA claims some of the <u>Georgia-Pacific</u> factors do not apply in this case, MGA cannot explain why Meyer should not have considered the many that do, including (i) royalties received in the past by Mattel or MGA; (ii) the rates paid for the use of comparable intellectual property; (iii) the nature and scope of the hypothetical license, as exclusive or non-exclusive, or as restricted or non-restricted; (iv) Mattel's policies and marketing programs regarding licensing to third parties or granting licenses under special conditions; (v) the commercial relationship between Mattel and MGA, including that they are competitors in the same territory in the same line of business; (vi) the effect of selling the products at issue on sales of other products; (vii) the term of the imposed license; (viii) the profitability of the products and their current popularity; (ix) the competitive advantages of the products; (x) the portion of the profit

_____

claim is factually false. <u>See</u> Trial Tr. at 8356:13-8357:9 (the Court quoting juror's email: "For the record, the jury intended that Mattel receive the full award amount when added up.").

or of the selling price that may be customary in the doll business or in comparable businesses; or (xi) the opinions of other experts or persons knowledgeable about the industry.  MGA offers no excuse for Meyer's failure to take these factors into account.[12]

MGA offers no support other than Meyer's word that his methodology is reliable. MGA claims two cases, Standard Mfg. and Fonar Corp. v. Gen. Elec. Co., 107 F.3d 1543, 1552, 1556  (Fed. Cir. 1997), "comput[ed] a retrospective royalty by dividing infringing profits by revenue" (Opp. at 9), but neither court did so.  In Standard Mfg., the court computed the royalty rate for patent infringement by determining a baseline rate and adjusting it in light of the Georgia-Pacific factors; it did not divide profits by revenues.  42 Fed. Cl. at 766-76.  See also Fonar Corp., 107 F.3d at 1552 (no division of revenues by profits).  Moreover, MGA does not even claim to have cited a single case that extrapolates a prospective royalty rate by speculating about what a jury not presented with royalty evidence may have found, which is Meyer's only methodology.

Even if Meyer's "methodology" met Daubert standards, which it does not, Meyer cannot explain how it properly can be applied to the facts of this case.  Daubert, 509 U.S. at 592-93.  Meyer uses the revenues from the past sale and licensing of all Bratz-related products, but admits he does not know which products the jury found infringing.[13]  He ignores that the set of products Mattel seeks to enjoin is a different set of products than that used to derive the revenue figure.[14]  He further ignores that not all Bratz dolls, much less all Bratz-related products, were introduced into evidence.  Meyer cannot say how the jury calculated profits or what apportionment percentage it used.  He cannot validly

---

[12]  MGA argues the cases Mattel cited involve awards of retrospective rather than prospective royalties, but fails to articulate why the hypothetical negotiation and the Georgia-Pacific factors should not apply to prospective royalties.  MGA also claims Mattel contests only Meyer's conclusions and not his methodology, but Meyer's failure to apply a recognized methodology or consider applicable factors is clearly a methodological flaw.

[13]  Meyer Declaration, ¶ 12 (emphasis added).

[14]  MGA claims Mattel has not identified any Bratz product included in the $3.1 billion revenue figure but not included in the scope of the proposed injunction.  As explained in Mattel's opening brief, the revenue figure included all Bratz-related products while the injunction concerns only those products that embody or depict the copyrighted works.  Thus, the proposed copyright injunction does not include products that do not have a Bratz image on them or their packaging or their marketing materials; the revenue figures did include such matters.

1    compare MGA's revenues to the jury's verdict, even if that were a proper methodology.[15]

## D.    Meyer's Royalty Opinions Lacks Foundation

The Court not only must determine that an expert's methodology is scientifically valid, but also must ensure that the expert has sufficient foundation to render the opinion. Daubert, 509 U.S. at 592-593.  Meyer's opinion lacks foundation for three reasons:  He has to speculate as to what the jury found; he has no experience to support his methodology; and he does not base his opinion on any real world licensing information.

First, MGA claims that Meyer's analysis is based on "facts" determined by the jury.  But his opinion is based on conjecture as to what the jury found; not even Meyer calls them facts:  "The relatively small size of the copyright infringement award *may* indicate certain findings by the jury;" "the jury *may* have found that the number of infringing products was quite small;" [a]lternatively, the jury *may* have concluded that the contribution of the copyrights to MGA's Bratz profits associated with the infringing sales was quite low."[16]  Meyer's opinions are expressly based on his speculative "possible interpretations" of the verdict.[17]  Expert opinions based on  speculative assumptions are inadmissible.  See McGlinchy v. Shell Chem. Oil, 845 F.2d 802, 807 (9th Cir. 1988).

Second, MGA concedes Meyer has no experience with fashion dolls or toys, and it offers no argument that royalty rates are calculated in the same manner for different forms of intellectual property in different industries.  If Meyer had ever before calculated a royalty rate using the proffered methodology, or had any experience relevant to a royalty rate for the products at issue, MGA would have introduced evidence of it. MGA's citation to Meyer's unspecified work on unspecified royalty claims does not meet the basic foundational requirements for admitting Meyer's opinion.

---

[15]   Meyer's opinion is also flawed because he assumes the numbers in the jury verdict equal the "value of the copyrights."  The case MGA cites for this point (Opp. at 9), Business Trends Analysts, Inc. v. Freedonia Group, Inc., 887 F.2d 399, 407 (2d Cir. 1989), does not say that at all.  The value of a copyright is based not only on past profits for the years considered by the jury but also on other factors such as past, present and future market conditions.  Moreover, Meyer's and MGA's theory overlooks that the jury assessed *MGA's* profits, not Mattel's.
[16]   Meyer Declaration, ¶¶ 12 and 13.
[17]   Meyer Declaration, ¶ 10.

1  Finally, although Meyer claims he reviewed licensing information produced by

2  Mattel and MGA, MGA does not identify that information or indicate how it relates to

3  his royalty rate.  MGA does not offer evidence that Meyer reviewed any real world

4  licensing information relating to his analysis.  His opinion lacks foundation.

5  **III.   MEYER'S ABILITY TO PAY OPINION IS INADMISSIBLE**

6  MGA misses the point as to ability to pay.  The question is whether MGA can

7  likely pay the amount of the judgment and future damage awards.  Meyer offers no

8  opinion that MGA has assets sufficient to do so.  Instead, Meyer parrots projections

9  Wagner made based on MGA's profit and loss information through June 30, 2008 and

10  MGA's own future projections.[18]  But those projections were contingent on MGA's

11  ability to pay for the products it projected to sell, and the circumstances have changed—

12  Larian declared on August 7, 2008 that MGA lost its line of credit and was rapidly

13  depleting cash reserves.[19]  Meyer has not contradicted Larian's declaration, nor opined

14  that MGA has the required access to cash or credit, nor opined that the prior projections

15  are still valid.  It is no answer to the ability to pay question to refer to prior projections

16  based on dated MGA information.  Meyer, unlike Mattel, has access to MGA's current

17  cash and asset information.  The exclusive reliance on another expert's opinion based on

18  outdated information, by someone who should have the ability to provide his own

19  opinion based on current financial information, flatly fails under <u>Daubert</u>.[20]

20  DATED:  November 3, 2008          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

21

22

23                                          By   /s/ John B. Quinn

24                                               John B. Quinn
                                                 Attorneys for Mattel, Inc.

25  [18]  Trial Exhibit 13932-1 to -6, Decl. of Stephen M. Hauss ISO Mattel, Inc.'s Reply in Support of Motion for Permanent Injunction, Exh. 5; Trial Tr. at 6398:10-13, 6448:21-6449:5.

26  [19]  Decl. of Isaac Larian in support of MGA's Petition for a Writ of Mandamus, dated August 7, 2008, ¶ 3, attached as Exhibit 84 to the Decl. of Diane C. Hutnyan dated September 29, 2008.

27  [20]  MGA protests that its "purported inability to pay <u>non-copyright</u> damages does not support issuance of an injunction for alleged <u>copyright</u> infringement," Opp. at 15 n.13 (underline in original), but that too misses the point.  The question is not *why* MGA cannot satisfy future

28  damage awards, but whether it likely can do so.  The available evidence shows it cannot.