1      UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA

3       EASTERN DIVISION

4       - - -

5   HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6       - - -

7 MATTEL, INC.,      )

8    PLAINTIFF,   )

9    VS.      ) NO. ED CV 04-09049

10 MGA ENTERTAINMENT, INC., )
  ET. AL.,      )

11          )
     DEFENDANTS.  ) CONFERENCE

12 _____)
  AND CONSOLIDATED ACTIONS, )

13 _____)

14

15    REPORTER'S TRANSCRIPT OF PROCEEDINGS

16     RIVERSIDE, CALIFORNIA

17    MONDAY, AUGUST 18, 2008

18      9:02 A.M.

19

20      COPY

21

22

23   KYUNG LEE-GREEN, CSR NO. 12655
    FEDERAL CONTRACT COURT REPORTER

24    3470 12TH STREET, RM. 134
    RIVERSIDE, CALIFORNIA 92501

25     (951)274-0844

7874

```
1    APPEARANCES:

2

3    ON BEHALF OF MATTEL:

4                         QUINN EMANUEL
                          BY:  MIKE ZELLER, ESQ.
5                              DYLAN PROCTOR, ESQ.
                          865 SOUTH FIGUEROA STREET
6                         10TH FLOOR
                          LOS ANGELES, CALIFORNIA 90017
7                         (213)624-7707

8

9    ON BEHALF OF MGA ENTERTAINMENT AND ISAAC LARIAN:

10                        SKADDEN, ARPS, SLATE, MEAGHER &
                          FLOM, LLP
11                        BY:  THOMAS NOLAN, ESQ.
                               CARL ROTH, ESQ.
12                             LAUREN AGUIAR, ESQ.
                               RAOUL KENNEDY, ESQ.
13                        300 SOUTH GRAND AVENUE
                          LOS ANGELES, CALIFORNIA 90071-3144
14                        (213)687-5000

15

16

17

18

19

20

21

22

23

24

25
                                                        7875
```

```
 1                        I N D E X
 2                                            PAGE
 3   MOTION                                   7877
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1      RIVERSIDE, CALIFORNIA; MONDAY, AUGUST 18, 2008; 9:02 A.M.

 2                              -000-

 3            THE COURT:  THE FIRST MATTER ON THE CALENDAR WAS

 4      TO BE THE MGA ENTERTAINMENT VS. HARTFORD INSURANCE GROUP AND

 5      MGA ENTERTAINMENT VS. CRUM & FORSTER SPECIALTY INSURANCE,

 6      BUT I UNDERSTAND COUNSEL -- ONE OF -- ONE OF THE ATTORNEYS

 7      IS -- THERE WAS SOME MISCOMMUNICATION AND WON'T BE HERE

 8      UNTIL TEN O'CLOCK.  SO WE'RE GOING TO PUT THAT MATTER OVER

 9      UNTIL TEN O'CLOCK.

10            IN THE INTERIM, WE'LL CALL THE UNDERLYING MATTEL

11      VS. MGA CASE.

12            MR. BIDART:  THANK YOU.

13            THANK YOU, MR. BIDART.

14            THE CLERK:  CALLING NO. 6, IN THE MATTER OF

15      MATTEL, INCORPORATED, VS. MGA ENTERTAINMENT, INCORPORATED,

16      CASE NO. CV 04-9049.

17            MAY WE HAVE COUNSEL IN THAT MATTER PLEASE STATE

18      YOUR APPEARANCES FOR THE RECORD.

19            MR. ZELLER:  GOOD MORNING, YOUR HONOR.

20      MIKE ZELLER AND DYLAN PROCTOR FOR MATTEL.

21            THE COURT:  COUNSEL.

22            MR. NOLAN:  GOOD MORNING, YOUR HONOR.  TOM NOLAN,

23      LAUREN AGUIAR, AND CARL ROTH.  AND RAOUL KENNEDY WILL BE

24      HERE SHORTLY ON BEHALF OF MGA AND ISAAC LARIAN.

25            THE COURT:  GOOD MORNING, COUNSEL.
```

```
1         THE COURT, ON FRIDAY, PROVIDED YOU A DRAFT SET OF

2    JURY INSTRUCTIONS.  I CERTAINLY WANT TO HEAR FROM THE

3    PARTIES ON THAT.

4         I ALSO WANT TO HEAR FROM THE PARTIES ON THE

5    VERDICT FORM.

6         WHAT -- ONE OF THE FUNDAMENTAL ISSUES THAT WE NEED

7    TO ADDRESS IS THE DIVERGENCE IN THE PARTIES' PROPOSED

8    VERDICT FORM BETWEEN MATTEL'S APPROACH TO THE COPYRIGHT

9    INFRINGEMENT AND MGA'S APPROACH TO THE COPYRIGHT

10   INFRINGEMENT.

11        MATTEL SIMPLY ASKS A QUESTION OR TWO CONCERNING

12   WHETHER OR NOT INFRINGEMENT HAS TAKEN PLACE, WHEREAS MGA

13   SEEKS THE JURY, AS WE DID IN PHASE 1-A, TO -- TO GO THROUGH

14   AND ANSWER A SERIES OF INTERROGATORIES RELATED TO SPECIFIC

15   PRODUCTS.

16        I THINK THAT'S PROBABLY OF THE MOST FUNDAMENTAL

17   DIFFERENCE BETWEEN THE TWO PROPOSED VERDICTS FORMS.  OF

18   COURSE, THERE'S OTHERS AS WELL IN TERMS OF WORDING OF

19   QUESTIONS.  BUT THAT'S -- THAT'S ONE THAT I'M ANXIOUS TO --

20   TO TAKE UP SOONER AS OPPOSED TO LATER.

21        WHY DON'T WE BEGIN WITH THE JURY INSTRUCTIONS,

22   THOUGH.  I'D LIKE TO HEAR ON THOSE.  AND ONCE WE HAVE THAT

23   MORE OR LESS SETTLED, I THINK THEN THE VERDICT FORM CAN

24   BE -- CAN PROCEED.

25        AND I'VE ALSO RECEIVED NOW MATTEL'S OBJECTIONS TO
                                                           7878
```

```
 1   THE MGA'S PARTY'S INSTRUCTION REGARDING COMPETITOR'S PRODUCT

 2   AND PROPOSED COUNTER-INSTRUCTION, AS WELL AS SUPPLEMENTAL

 3   INSTRUCTIONS BY MATTEL.

 4        BUT BEFORE WE TAKE UP ANY OF THOSE, LET'S -- LET'S

 5   FOCUS ON WHAT WE -- WE DO HAVE, AND THEN WE'LL GO TO THOSE.

 6        SO WHOEVER WISHES TO PROCEED FIRST, ADDRESSING THE

 7   COURT'S PROPOSED INSTRUCTIONS, MAY DO SO.

 8        MR. PROCTOR:  THANK YOU, YOUR HONOR.

 9        BEFORE -- BEFORE I FORGET, IF I CAN ASK

10   TWO NON-JURY INSTRUCTION QUESTIONS THAT -- THAT I'VE BEEN

11   ASKED.

12        FIRST, IS THERE GOING TO BE A TIME LIMIT ON

13   CLOSINGS, AND WHAT WOULD THAT BE?

14        THE COURT:  WELL, I WANT TO TAKE THAT UP WITH

15   COUNSEL.  AS -- YOU KNOW, I -- I'VE SET ASIDE WEDNESDAY FOR

16   CLOSING ARGUMENTS.  AND AS LONG AS WE CAN GET THROUGH

17   INSTRUCTIONS AND THE CLOSINGS BY THE END OF THE DAY ON -- ON

18   WEDNESDAY WITH ADEQUATE BREAKS AND LUNCH, I'M -- I'M

19   FLEXIBLE.  I -- I DON'T -- I -- I ASSUME IT'S GOING TO BE

20   MORE OR LESS THE SAME AS BEFORE, THE TWO HOURS ON -- ON EACH

21   SIDE, BUT THAT SEEMED TO WORK.  WE SEEMED TO GET THROUGH

22   THAT.

23        BECAUSE IT'S GOING TO TAKE THE COURT A GOOD HOUR,

24   MAYBE EVEN A LITTLE EVEN LONGER WITH THIS SET OF

25   INSTRUCTIONS, TO READ THE INSTRUCTIONS.
```

1    WE START AT 9:00. THAT WILL GO TO, SAY, 10:00 OR

2    10:30. WE'LL TAKE A BREAK AT THAT POINT IN TIME. WE'LL

3    HAVE MATTEL'S OPENING CLOSING, AND THAT WILL TAKE US TO

4    LUNCH.

5        THEN AFTER LUNCH WE'LL HAVE MR. NOLAN AND

6    MR. KENNEDY'S CLOSING. AND THEN WE'LL HAVE THE -- A BREAK.

7    AND THEN WE'LL HAVE MATTEL'S CLOSING REBUTTAL.

8        AND SO I -- I DON'T THINK WE'RE GOING TO HAVE MORE

9    THAN PROBABLY TWO HOURS ON EACH SIDE.

10        MR. PROCTOR: OKAY.

11        THE COURT: BUT WE'LL -- WE'LL HAVE THAT SPELLED

12    OUT IN ADVANCE. BUT THAT'S -- THAT'S APPROXIMATELY.

13        I'D LIKE TO HEAR FROM -- AND MR. KENNEDY'S NOT

14    HERE YET. MR. QUINN AND MR. PRICE ARE NOT HERE YET. UNLESS

15    YOU CAN MAKE REPRESENTATIONS ON THEIR BEHALF, I'M --

16    I'M . . .

17        MR. PROCTOR: PERHAPS THE BEST THING IS -- IS

18    MR. NOLAN AND -- AND MR. QUINN CAN CONFER ABOUT IT AND SEE

19    IF THAT'S --

20        THE COURT: YEAH. I'D LIKE A PROPOSED --

21    PROPOSED -- AS LONG AS IT'S REASONABLE, I'LL ACCEPT WHATEVER

22    PROPOSAL YOU HAVE.

23        MR. NOLAN: DOING THE MATH LAST NIGHT AND TRYING

24    TO COMPARE IT TO OUR EXPERIENCE IN THE FIRST PHASE, THERE WE

25    HAD A LITTLE BIT OF A HICCUP IN THE MORNING BECAUSE OF -- WE

7880

```
 1   HAD -- WE HAD A WITNESS WHO ACTUALLY TESTIFIED, ALBEIT

 2   BRIEF, BUT WE HAD SOME SIDEBARS AND STUFF LIKE THAT.

 3           AND RECOGNIZING THAT WE ARE GETTING IN ABOUT AN

 4   AVERAGE OF, YOU KNOW, FIVE HOURS, I WAS THINKING ABOUT

 5   TWO HOURS TO TWO AND A HALF.  BUT I COULD CONFIRM THAT WITH

 6   MR. QUINN.

 7           THE CONCERN THAT I THINK ALL OF US HAVE IS JUST

 8   MAKING CERTAIN THAT WE ALL GET IT IN.  THAT -- THAT'S THE

 9   BIGGEST DIFFICULTY.

10           AND THEN ALSO, FRANKLY, HOW THE -- HOW THE

11   ARGUMENTS BREAK IN TERMS OF THE MORNING, THE AFTERNOON.  AND

12   I THINK, IF -- IF YOU'VE ARTICULATED IT -- IF IT PLAYS OUT

13   THE WAY THAT YOU HAVE ARTICULATED IT AND THAT WE START IN

14   THE AFTERNOON, THAT'S THE EASIEST WAY.  BECAUSE MY FEAR

15   WOULD BE THAT, IF I HAD 15 MINUTES AND THEN ALL OF SUDDEN WE

16   TOOK AN HOUR-AND-A-HALF LUNCH BREAK.

17           THE COURT:  WELL --

18           MR. NOLAN:  THAT WOULD BE DIFFICULT.

19           THE COURT:  -- THAT WOULDN'T BE FAIR.  SO, NO, I

20   THINK -- I THINK -- LET'S -- LET'S GO WITH THE TWO HOURS

21   THEN BECAUSE I THINK THAT -- AS MUCH AS I'D LIKE TO THINK

22   THAT THERE'S NOT GOING BE TO ANY OBJECTIONS OR SIDEBARS ON

23   WEDNESDAY, THERE PROBABLY WILL BE, AND -- ON BOTH SIDES.

24   AND IT'S GOING TO TAKE A GOOD HOUR AND A HALF, I THINK, TO

25   GET THROUGH THESE INSTRUCTIONS.
```

```
 1            SO IF WE START AT -- ASSUMING THAT WE CAN START
 2     RIGHT AT 9:00, WHICH THERE'S NO REASON THAT WE SHOULDN'T,
 3     THE COURT'S FINISHED WITH ITS INSTRUCTIONS AT 10:30.  10:45,
 4     WE START WITH MR. QUINN OR MR. PRICE, WHOEVER'S STARTING,
 5     AND GO FROM 10:45, 11:45, SAY TO 12:15, AN HOUR AND A HALF
 6     OR HOUR AND 15 MINUTES, WHATEVER THEY'RE GOING TO TAKE.
 7            WE'LL HAVE OUR LUNCH BREAK.
 8            MR. NOLAN, I DON'T KNOW WHETHER YOU OR
 9     MR. KENNEDY'S GOING TO GO FIRST, AND WE'LL START AT, SAY,
10     1:30 TO 2:30.  WE'LL TAKE A LITTLE BREAK THEN.  MR. KENNEDY
11     CAN THEN FINISH UP FROM 2:30 TO 3:30.
12            MR. NOLAN:  RIGHT.
13            THE COURT:  WE'LL TAKE AN AFTERNOON BREAK FOR
14     15 MINUTES OR SO.  AND THEN, FROM A QUARTER OF 4:00 TO 4:15,
15     4:30, MR. PRICE OR MR. QUINN FINISHES UP.
16            ADD IN ANOTHER HALF HOUR FOR DISCUSSIONS THAT WE
17     DON'T ANTICIPATE, AND THAT GETS US TO FIVE O'CLOCK.
18            MR. PROCTOR:  RIGHT.
19            THE COURT:  SOMETHING ALONG THOSE LINES.
20            SO PLAN FOR TWO HOURS BETWEEN YOU AND MR. KENNEDY.
21            LET MR. QUINN KNOW THAT, BETWEEN HIM AND
22     MR. PRICE, ANOTHER TWO HOURS, AND -- AND I'LL JUST LIMIT IT
23     AT TWO HOURS EACH.
24            MR. PROCTOR:  OKAY.  THANK YOU.
25            THE SECOND QUESTION IS WE DISCUSSED, I THINK, BOTH
                                                        7882
```

```
 1   SIDES ARE FILING JMOL'S LATER TODAY, AND WE DIDN'T DISCUSS A

 2   PAGE LIMIT.

 3           I KNOW IN THE PAST THE COURT LIMITED US TO

 4   FIVE PAGES.  I THINK MORE THAN FIVE PAGES IS PROBABLY

 5   APPROPRIATE FOR THE ISSUES THAT ARE BEING RAISED.  I DON'T

 6   KNOW IF THE COURT -- IF THE COURT WANTS TO IMPOSE --

 7           THE COURT:  WHY DON'T -- WHY DON'T WE SAY

 8   10 PAGES.  I MEAN, JUST -- I MEAN, IF YOU NEED AN EXTRA

 9   PAGE, I'M NOT GOING TO STRIKE A JMOL AT THIS POINT BECAUSE

10   IT'S 11 PAGES OR WHATEVER.  JUST BE REASONABLE.  DON'T -- WE

11   ALL UNDERSTAND THE ISSUES OF THIS TRIAL FAIRLY WELL AT THIS

12   POINT, AND THERE'S NOT A LOT OF REASON TO REGURGITATE THINGS

13   THAT WE'VE ALREADY -- THAT EVERYONE ALREADY UNDERSTANDS.

14           MR. PROCTOR:  OKAY.  AND THAT APPLIES FOR BOTH

15   MOTIONS AND OPPOSITIONS?

16           THE COURT:  YES.

17           MR. PROCTOR:  OKAY.  THANK YOU.

18           ALL RIGHT.  TURNING TO THE JURY INSTRUCTIONS, THE

19   FIRST COMMENT I HAVE IS ON PAGE 11, YOUR HONOR.

20           THE COURT:  OKAY.

21           MR. PROCTOR:  JUST THE SECOND PARAGRAPH THERE

22   APPEARS TO APPLY TO A PRELIMINARY PRETRIAL INSTRUCTION.

23           THE COURT:  YES.  I'LL STRIKE LINES 6 AND 7.

24           MR. NOLAN:  I'M SORRY.  LET ME JUST CATCH UP, YOUR

25   HONOR.
```

1        THE COURT:  YEAH, IT'S PAGES -- PAGE 11.  IT

2   STATES THAT, "ANY TIME YOU CANNOT HEAR OR SEE THE TESTIMONY,

3   EVIDENCE, QUESTIONS, OR ARGUMENTS, LET ME KNOW."

4        MR. PROCTOR:  THEN THE NEXT ONE I HAVE IS ON

5   PAGE 20.

6        THE COURT:  ALL RIGHT.

7        MR. PROCTOR:  ON LINE 6, WE REFER TO IT AS

8   PHASE 1-A.  AND I THINK THE COURT CORRECTLY REFERRED TO IT

9   ON THE COVER AS JUST PHASE.  B, AND PROBABLY WE SHOULD TAKE

10  OUT THE NUMBER 1, LEST -- LEST THE JURY THINK THIS -- THIS

11  IS NOT THE LAST PHRASE.

12        THE COURT:  I THINK I MADE THAT CLEAR TO THEM, BUT

13  I DON'T WANT TO CAUSE PANIC FOR ANYBODY.  SO I'LL HEAR FROM

14  MGA ON THAT, BUT IT'S PHASE A AND PHASE B.

15        MR. PROCTOR:  AND THERE'S -- THERE'S ANOTHER ONE

16  THAT HAS THE SAME ISSUE.

17        THE COURT:  RIGHT.

18        MR. PROCTOR:  PAGE 27 IS MY -- IS MY NEXT ONE,

19  YOUR HONOR.  AND THIS IS THE -- THE EXTRINSIC/INTRINSIC ONE.

20        THE COURT:  RIGHT.

21        MR. PROCTOR:  I -- I HAVE A COUPLE FAIRLY MINOR

22  COMMENTS, I THINK.

23        ON -- ON PAGE 27, LINE 24, YOU WRITE, "THE

24  PARTICULARIZED NONFUNCTIONAL DOLL CLOTHES."

25        "NONFUNCTIONAL" STRIKES ME JUST AS A TERM OF ART

                                                    7884

```
 1    THAT MAY NOT BE CLEAR TO THE JURY, AND I'M NOT SURE IT'S
 2    NECESSARY.  I -- I WOULD SUGGEST JUST TAKING OUT THE WORD
 3    "NONFUNCTIONAL."
 4             THE COURT:  I SEE.  YOUR ARGUMENT IS THAT THE IT'S
 5    NONFUNCTION -- THE FACT THAT THEY'RE NONFUNCTIONAL IS WHY
 6    THE COURT IS PERMITTING THIS TO GO FORWARD.  IT'S NOT A
 7    NECESSARY --
 8             MR. PROCTOR:  CORRECT.
 9             THE COURT:  OKAY.  I'LL HERE FROM MGA ON THAT.  I
10    UNDERSTAND YOUR ARGUMENT.
11             MR. PROCTOR:  NEXT PAGE, PAGE 28, LINE 7, THE LAST
12    CLAUSE OF WHAT YOU'RE LISTING AS NON-PROTECTABLE, "DEPICT
13    COMMON OR STANDARD TREATMENT OF THE SUBJECT MATTER."
14             I DON'T THINK THAT INSTRUCTION IS APPROPRIATE
15    HERE.  IT'S -- IT'S WHAT I UNDERSTAND TO BE, YOU KNOW,
16    THE -- BASICALLY, THE SENSE OF FAIR INSTRUCTION.  AND I -- I
17    DON'T THINK IT'S APPROPRIATE BECAUSE THE JURY HAS NO BASIS
18    TO REACH A CONCLUSION ABOUT THAT.
19             I MEAN, SENSE OF FAIR IS A LIMITING DOCTRINE JUST
20    LIKE ORIGINALITY IS AND, YOU KNOW, MERGER, WHATEVER OTHER
21    LIMITING DOCTRINES ARE OUT THERE.  THE COURT HAS TAKEN THOSE
22    DOCTRINES AND APPLIED THEM.  SO THIS IS PROTECTABLE, THIS IS
23    NOT.
24             AND THERE'S NO TESTIMONY, NO EVIDENCE BEFORE THE
25    JURY OF WHAT'S A COMMON OR STANDARD TREATMENT OF THE SUBJECT
```

7885

1    MATTER.  AND SO THEY'RE GOING TO READ THIS AND BE LEFT TO

2    SPECULATE, WELL, WHAT'S A -- WHAT'S A COMMON OR STANDARD

3    TREATMENT OF THE SUBJECT MATTER?  I HAVE NO IDEA.  WHAT ARE

4    WE SUPPOSED TO DO WITH THIS?

5            SO I -- YOU KNOW, THE -- THE COURT HAS APPLIED

6    THESE DOCTRINES IN REACHING THE CONCLUSIONS IT REACHED.  I

7    DON'T THINK IT MAKES SENSE TO LIST THE DOCTRINE, WHICH IS

8    EFFECTIVELY WHAT THAT CLAUSE DOES.

9            THE COURT:  OKAY.  I'LL HEAR FROM MGA ON THAT.

10           MR. PROCTOR:  NEXT PARAGRAPH, LINE 13, YOU'RE

11   MISSING THE "T" IN BRYANT.

12           THE COURT:  THANK YOU.

13           MR. PROCTOR:  LINE 14, BETWEEN THE WORDS "THOSE"

14   AND "ALLEGEDLY," WE SHOULD ADD "IN THE."

15           "AS COMPARED TO THOSE IN THE ALLEGEDLY INFRINGING

16   BRATZ RELATED WORKS."

17           THE COURT:  THANK YOU.

18           THE REPORTER:  COULD YOU REPEAT THE --

19           MR. PROCTOR:  IT'S LINE 14, BETWEEN THE WORDS

20   "THOSE" AND "ALLEGEDLY," WE SHOULD ADD THE WORDS "IN THE."

21           NEXT ONE IS LINE 21.  AND WE SAY -- YOUR HONOR

22   SAYS IN THIS THAT THE AUDIENCE IS GIRLS BETWEEN THE AGES OF

23   6 AND 12.  I GUESS I HAVE TWO COMMENTS ON THAT.

24           THE COURT:  WELL, ACTUALLY I HAVE 8 AND 12 WRITTEN

25   RIGHT HERE.

                                                    7886

```
 1              MR. PROCTOR:  I WAS LOOKING AT MY NOTES.  YOU HAVE
 2    8 TO 12.
 3              THE COURT:  RIGHT.
 4              MR. PROCTOR:  MY SUGGESTION IS THAT, ACTUALLY, I
 5    BELIEVE THE DOLLS ARE MARKETED -- NUMBER ONE, I THINK WE
 6    SHOULD ADD "PRIMARILY" BECAUSE IT'S NOT THE EXCLUSIVE
 7    AUDIENCE.  AND NUMBER TWO, TECHNICAL -- BUT NUMBER TWO, I'M
 8    NOT SURE IT STARTS AT 8.  I THINK, IF WE LOOK AT THE
 9    PACKAGING -- AND I MEANT TO CONFIRM THIS AND HAVEN'T HAD A
10    CHANCE TO DO IT.
11              BUT I THINK, IF WE LOOK AT THE PACKAGING, IT SAYS
12    AGES 4 AND UP.  AND SO I'M NOT SURE 8 TO 12 IS -- IS
13    ACTUALLY THE CORRECT RANGE.
14              YEAH, IT DOES.  IT SAYS AGES 4 AND UP ON THE
15    PACKAGING.
16              THE COURT:  HMM.  WELL, I RAISED THIS ISSUE AT
17    SIDEBAR BECAUSE I KNOW IN THE -- OVER IN ENGLAND, IT'S 7 TO
18    12.  AND I KNOW THERE WAS A 6 TO 12 AND THERE WAS 8 TO 12,
19    AND NOW THERE'S 4-PLUS.  IT'S --
20              MR. NOLAN:  YOUR HONOR.
21              THE COURT:  SURE.
22              MR. NOLAN:  I APOLOGIZE.  ON -- ON THIS PARTICULAR
23    ONE, MY -- MY BELIEF IS THAT THE REASON WHY, IN THE
24    UNITED STATES, IT MAY BE 4 IS SIMPLY AN ISSUE OF --
25              THE COURT:  SAFETY?
```

7887

```
 1              MR. NOLAN:  PARDON ME?

 2              THE COURT:  SAFETY?

 3              MR. NOLAN:  IT'S A SAFETY BECAUSE OF SMALL PARTS.

 4   WHERE THE MARKET -- I THINK THE EVIDE -- OVERWHELMING AMOUNT

 5   OF EVIDENCE HAS ALWAYS BEEN THAT IT WAS DIRECTED TO THE

 6   TWEENS MARKET, WHICH IS FAIRLY PRIMARILY 8 THROUGH 12.

 7              THE COURT:  VERY WELL.

 8              MR. NOLAN, I WANT TO GET THROUGH ALL OF THESE --

 9              MR. NOLAN:  SORRY.

10              THE COURT:  -- AND THEN I'M GOING TO GIVE YOU AN

11   UNFETTERED CHANCE TO RESPOND.  SO --

12              BUT YOUR -- YOU POSITION IS . . .

13              MR. PROCTOR:  I SUPPOSE 4 TO 12, IF NOT -- YOU

14   KNOW, IF NOT, SOME -- SOMEWHERE LOWER THAN 8.  I MEAN,

15   CERTAINLY, THE DOLLS ARE MARKETED TO, YOU KNOW -- ARE --

16   ARE -- CERTAINLY OLDER GIRLS LIKE THE BRATZ DOLLS A LOT, BUT

17   ALSO YOUNGER GIRLS BUY THESE DOLLS.  THERE'S -- I MEAN

18   THERE'S -- IN THE INDUSTRY, I DON'T THINK THERE'S REALLY ANY

19   QUESTION ABOUT THAT.

20              THE COURT:  OKAY.  I UNDERSTAND YOUR ARGUMENT.

21              MR. PROCTOR:  NEXT ONE IS PAGE 30, THE -- THE

22   INVERSE RATIO INSTRUCTION.  WE'RE JUST MISSING MGA

23   HONG KONG, WHICH WE LIST MGA AND -- AND LARIAN BUT NOT

24   HONG KONG.

25              IT'S A NAME YOU -- YOU WILL BECOME FAMILIAR WITH.
```

```
 1                    THE COURT:  ALL RIGHT.

 2                    MR. PROCTOR:  THE NEXT ONE IS ON PAGE 38, YOUR

 3       HONOR, LINE 14.  AND I -- I UNDERSTAND AND AM WILLING TO

 4       SUBMIT ON THE COURT'S REJECTION OF -- OF OUR POSITION THAT,

 5       YOU KNOW, THE TIMING OF DISCOVERY HAS BEEN DECIDED ALREADY.

 6       BUT THE RECITATION OF THE STANDARD WE WOULD TAKE ISSUE WITH.

 7                    WHAT -- WHAT THE COURT WRITES IS, "MATTEL WAS NOT

 8       AWARE OF SUCH FACTS THAT EITHER DID OR COULD HAVE LED TO

 9       MATTEL TO DISCOVER."  AND IF -- IF YOU LOOK AT THE GARAMENDI

10       CASE, WHICH IS A CENTRAL DISTRICT CASE, IN THE CONTEXT OF

11       FRAUDULENT CONCEALMENT, THE STANDARDS FOR DISCOVERY ARE

12       ACTUALLY GREATER THAN INQUIRY AND NOTICE STANDARDS.  IT'S

13       SOMETHING -- IT'S -- ACCORDING TO THE GARAMENDI COURT, IT'S

14       SOMETHING CLOSER TO ACTUAL NOTICE.

15                    AND SO I THINK TAKING OUT THE WORDS "COULD HAVE

16       LED" WOULD BE APPROPRIATE.  INSTEAD WHAT SHOULD BE LISTED IS

17       SIMPLY "DISCOVERY OF FACTS THAT" --

18                    THE COURT:  LED MATTEL.

19                    MR. PROCTOR:  -- "LED MATTEL", CORRECT.

20                    PAGE 40, IT'S JUST THE 1-A VERSUS "A" COMMENT

21       AGAIN.

22                    THE COURT:  WOULD YOU DO ME A FAVOR, COUNSEL?  I

23       KNOW I REMEMBER THE CENTRAL DISTRICT GARAMENDI CASE IS CITED

24       SOMEPLACE.  COULD YOU JUST GIVE ME THE CITE TO THAT?

25                    MR. PROCTOR:  YES.  LET ME -- LET ME GRAB IT IN
```

1    MINUTE, IF THAT'S OKAY. I DON'T HAVE IT RIGHT NOW.

2              THE COURT: THANK YOU.

3              MR. PROCTOR: PAGE 40, IT'S ON -- ON THE

4    FIRST LINE. IT'S THE PHASE 1-A VERSUS PHASE A.

5              THE COURT: THANK YOU.

6              MR. PROCTOR: PAGE 41 IS THE SAME THING.

7              PAGE 44, THIS IS -- I THINK THIS IS THE STANDARD

8    INSTRUCTION. WE LIST -- OR THE COURT LISTS, "MATTEL IS

9    ENTITLED TO RECOVER THE ACTUAL DAMAGES SUFFERED," AND THEN

10   IT SAYS, "IN ADDITION, WE'RE ENTITLED TO RECOVER THE

11   PROFITS."

12             WE'RE NOT SEEKING ACTUAL DAMAGES, WE'RE SEEKING

13   DISGORGEMENT. YOU KNOW, THAT'S -- THAT'S OUR DAMAGES

14   THEORY. SO I THINK PROBABLY TAKING OUT THE CLAUSE ABOUT THE

15   ACTUAL DAMAGES SUFFERED AS A RESULT OF THE INFRINGEMENT

16   WOULD MAKE SENSE.

17             THE COURT: OKAY. YOU HAD -- YOU HAD INCLUDED

18   THAT IN YOUR INITIAL SUBMISSION.

19             MR. PROCTOR: WE VERY WELL MAY HAVE, AND IT IS A

20   STANDARD MODEL INSTRUCTION. IT'S JUST -- IT -- I'M

21   CONCERNED IT WOULD POTENTIALLY CONFUSE THE JURY.

22             THE COURT: SO YOU'RE PROPOSING THAT WE JUST HAVE

23   IT READ -- THE SECOND SENTENCE WOULD BE, "MATTEL IS ENTITLED

24   TO RECOVERED ANY PROFITS OF THE DEFENDANTS ATTRIBUTABLE TO

25   THE INFRINGEMENT."

                                                         7890

```
 1            MR. PROCTOR:  CORRECT.

 2            THE COURT:  OKAY.

 3            MR. PROCTOR:  PAGE 48, THIS IS THE MITIGATION

 4   INSTRUCTION.  I WOULD -- I WOULD AGAIN SUBMIT, AND -- AND I

 5   HAVE AN AUTHORITY I CAN OFFER, IF THE COURT WOULD LIKE, IN

 6   THE DISGORGEMENT CONTEXT.

 7            IT JUST DOESN'T MAKE SENSE.  I MEAN, THERE --

 8   THERE -- EITHER -- EITHER IN THE DISGORGEMENT CONTEXT

 9   GENERALLY A MITIGATION INSTRUCTION DOESN'T MAKE SENSE, OR IN

10   THE ALTERNATIVE, IN THIS PARTICULAR CASE, IT DOESN'T MAKE

11   SENSE BECAUSE THERE'S NO EVIDENCE OF WHAT WE SHOULD HAVE

12   DONE TO MITIGATE.  I MEAN, THERE'S -- THERE'S JUST NOTHING

13   IN THE RECORD ABOUT THIS.

14            AND SO THE JURY IS GOING TO BE LEFT TO SPECULATE,

15   YOU KNOW, WHAT -- WHAT DOES THIS MEAN?  AND I'M CONCERNED

16   ABOUT THE RISK OF JURY CONFUSION ON THIS.

17            AND THE NEXT ONE I HAVE IS ON PAGE 50.  IN THE

18   DEFINITION OF "MALICE," WE WOULD -- IT SAYS -- THIS IS A

19   STANDARD INSTRUCTION, I BELIEVE, BUT IT SAYS, "DESPICABLE

20   AND WAS DONE WITH A WILLFUL AND KNOWING DISREGARD OF THE

21   RIGHTS OR SAFETY OF ANOTHER."

22            I DON'T THINK THE "OR SAFETY" LANGUAGE IS

23   NECESSARY IN THIS CASE.  I SUGGEST THAT WE CHANGE IT TO

24   SIMPLY "DISREGARD OF THE RIGHTS OF ANOTHER."  THERE'S NO

25   ALLEGATION THAT ANYTHING WAS DONE WITH MALICE TOWARDS
```

```
1    MATTEL'S SAFETY.
2              AND THE LAST ONE, I THINK IT -- ON MY COPY THERE'S
3    A RED-LINED-OUT BEGINNING OF THE PARAGRAPH, SINCE THE
4    FOREPERSON HAS ALREADY BEEN SELECTED, AND SO WE JUST NEED
5    SOME --
6              THE COURT:  ALL RIGHT.  I'M SORRY.  ON PAGE 50 --
7    WHAT WAS THAT?
8              MR. PROCTOR:  I APOLOGIZE.  PAGE 52.
9              THE COURT:  RIGHT.  I -- THAT WAS -- THAT WAS
10   CROSSED OUT --
11             MR. PROCTOR:  SO WE JUST NEED --
12             THE COURT:  -- AND SO THAT HAS TO BE PHYSICALLY
13   CROSSED OUT.  RIGHT.
14             MR. PROCTOR:  RIGHT.  AND WE JUST NEED TO ADD SOME
15   LANGUAGE, SOMETHING -- YOU KNOW, SOMETHING LIKE, "WHEN YOU
16   BEGIN YOUR DELIBERATIONS, YOU WILL DISCUSS THE CASE WITH
17   YOUR FELLOW JURORS."
18             AND THEN WE DID SUBMIT --
19             THE COURT:  WELL, WHAT I'LL DO IS THIS:  "WHEN YOU
20   BEGIN YOUR DELIBERATIONS, YOUR FOREPERSON WILL SPEAK FOR YOU
21   HERE IN COURT, WILL PRESIDE OVER" -- "THE FOREPERSON WILL
22   PRESIDE OVER THE DELIBERATIONS AND SPEAK FOR YOU HERE IN
23   COURT."
24             OKAY.
25             MR. PROCTOR:  THE LAST ONE, I DON'T KNOW IF THE
                                                          7892
```

1    COURT WANTS US TO ADDRESS THE SUPPLEMENTAL INSTRUCTIONS WE

2    SUBMITTED LAST NIGHT.

3              THE COURT:  WHY DON'T WE GO -- LET'S SEE.  WHAT DO

4    WE HAVE HERE?  WE HAVE . . .

5              I HAVE THREE SUBMITTED BY MGA:  COMPETITOR

6    PRODUCTS; SUPPLEMENTAL INSTRUCTION ON WILLFUL INFRINGEMENT,

7    WHICH THE COURT HAS INCLUDED A WILLFUL INFRINGEMENT -- I --

8    I THINK THAT MAY HAVE BEEN JUST PASSED IN THE NIGHT -- AND

9    THEN THE 17.15 COPYING ACCESS TO SUBSTANTIAL SIMILARITY, THE

10   INVERSE RATIO RULE.  BUT WHICH -- THE COURT HAS SUBMITTED

11   ONE AS WELL, BUT -- SO THE ONE THAT WOULD BE NEW FROM MGA

12   WOULD BE THE COMPETITIVE PRODUCTS ONE.

13             AND I KNOW YOU SUBMITTED AN OPPOSITION TO THAT.

14             YOU HAVE ALSO SUBMITTED, THAT I'VE JUST RECEIVED

15   NOW, MULTIPLE CLAIMS, OTHER INVESTIGATIONS, AND INJUNCTIVE

16   RELIEF.

17             LET ME HEAR BRIEFLY ON -- ON THAT.

18             MR. PROCTOR:  OKAY.  I SUPPOSE, STARTING WITH THE

19   ONES THAT WE SUBMITTED LAST NIGHT, MULTIPLE CLAIMS IS -- IS

20   THE FLIP SIDE OF AN INSTRUCTION THAT MGA HAD PROPOSED,

21   WHICH -- WHICH I BELIEVED THE COURT REJECTED, WHICH SAID --

22   YOU KNOW, INVITED THE JURY TO SET OFF ITS AWARDS BASED ON

23   AMOUNTS AWARDED AS TO OTHER CLAIMS.

24             I -- I THINK THE COURT CORRECTLY REJECTED THAT

25   INSTRUCTION.  BUT I DO THINK -- I DO THINK THERE IS A RISK

1   THAT THE JURY, WITHOUT ANY INSTRUCTION, IS GOING TO SIMPLY

2   NOT KNOW WHAT THEY'RE SUPPOSED TO DO.

3            AM I SUPPOSED TO AWARD -- YOU KNOW, IF I AWARD "X"

4   AMOUNT ONCE AND AWARD "X" AMOUNT AGAIN AND THEN AWARD "X"

5   AMOUNT AGAIN BECAUSE THERE'S SEVERAL LEGAL THEORIES HERE, OR

6   AWARD "X" AMOUNT AGAINST MGA AND "X" AMOUNT ALSO AGAINST

7   MR. LARIAN BECAUSE THERE'S SEVERAL DEFENDANTS, ARE THESE ALL

8   GOING TO BE ADDED UP?  IS MATTEL GOING TO GET MORE THAN WHAT

9   I INTEND?  AM I SUPPOSED TO DIVIDE IT UP?

10           AND -- AND WHAT I BELIEVE THE COURT INTENDS IS

11   THAT IT'S GOING TO -- WHAT I BELIEVE THE COURT INTENDS IS

12   THAT THE JURY SHOULD AWARD THE FULL AMOUNT AS TO EACH CLAIM

13   AS TO EACH DEFENDANT, AND THEN THE COURT WILL MAKE SURE THAT

14   WE DON'T GET A DOUBLE RECOVERY AFTERWARDS.

15           THE COURT:  AND -- AND TO BE CLEAR, MATTEL

16   RECOGNIZES THE COURT'S -- AND ACCEPTS THE COURT'S AUTHORITY

17   TO SO ADJUST ANY AWARD RETURNED BY THE VERDICT TO ELIMINATE

18   ANY DUPLICATIVE AWARD FOR COMPENSATION; CORRECT?

19           MR. ZELLER:  THAT'S CORRECT, YOUR HONOR.

20           THE -- THE COURT WILL RECALL THAT A FEW DAYS AGO

21   YOU AND I HAD THAT DISCUSSION, THAT WE THOUGHT THAT THAT WAS

22   THE CORRECT APPROACH.  AND WE ABSOLUTELY ACCEPT THE COURT'S

23   AUTHORITY AND THINK THAT THAT'S REALLY THE ONLY PRACTICAL

24   WAY OF DOING IT UNDER THESE CIRCUMSTANCES.  OTHERWISE,

25   THERE'S JUST GOING TO BE A REAL SERIOUS POTENTIAL FOR JURY

7894

```
 1    CONFUSION THAT COULD -- THAT COULD REALLY CREATE ALL MANNER

 2    OF PROBLEMS AND INTERPRETATION OF THE VERDICT.  AND WHOSE OX

 3    GETS GORED ON THIS IS VERY HARD TO SAY.

 4                 SO -- I MEAN, WE -- WE CERTAINLY THINK THAT THAT'S

 5    THE -- THAT'S THE ROLE OF THE COURT.

 6                 THE COURT:  ALL RIGHT.

 7                 MR. PROCTOR:  SO -- SO THAT INSTRUCTION MAKES THAT

 8    CLEAR TO THE JURY, THAT ITS -- ITS AWARD SHOULD BE -- EACH

 9    AWARD AS TO -- YOU KNOW, ITS AWARD AS TO EACH CLAIM AS TO

10    EACH DEFENDANT SHOULD BE COMPLETE UNTO ITSELF, AND THE COURT

11    WILL FIX THINGS LATER.

12                 THE COURT:  WHAT'S YOUR ARGUMENT ON OTHER

13    INVESTIGATIONS?

14                 MR. PROCTOR:  OTHER INVESTIGATIONS IS -- IS

15    FAIRLY --

16                 THE COURT:  IT RELATES TO FRAUDULENT CONCEALMENT?

17                 MR. PROCTOR:  IT DOES.  AND I THINK -- I THINK

18    PROBABLY THIS MAKES THE MOST SENSE AS -- AS A PARAGRAPH THAT

19    WOULD BE INCLUDED IN THE FRAUDULENT CONCEALMENT INSTRUCTION.

20                 YOU KNOW, THERE IS, I THINK, A RISK OF JUROR

21    CONFUSION ABOUT WHAT ALL THIS STUFF ABOUT TOON TEENZ AND --

22    AND THE STUFF ABOUT DIVA STARZ THAT CAME IN WAS ABOUT.

23                 YOU KNOW, AS A MATTER OF LAW, THE TOON TEENZ AND

24    DIVA STARZ SIMILARITIES DON'T SHOW THE ACTUAL NOTICE OR --

25    OR -- OR COULD HAVE -- COULD HAVE BEEN NOTICE.  INQUIRY
```

7895

1   NOTICE IS LISTED IN THE INSTRUCTION RIGHT NOW ON FRAUDULENT

2   CONCEALMENT.

3            I MEAN, THERE'S -- YOU KNOW, THAT THE COURT HAS

4   REPEATEDLY REJECTED MGA'S ARGUMENTS THAT TOON TEENZ --

5            THE COURT:  WELL, BUT THE COURT HAS ALREADY

6   INSTRUCTED THE JURY WITH RESPECT TO DISREGARDING THAT

7   PARTICULAR EVIDENCE.

8            MR. ZELLER:  I'M SORRY TO INTERRUPT AGAIN BECAUSE

9   MR. DYLAN'S -- OR DYLAN PROCTOR IS OBVIOUSLY DOING A GOOD

10  JOB, BUT HE WASN'T PRESENT FOR THE SIDEBAR WHERE WE -- WE

11  HAD TALKED ABOUT MR. SLOAN'S EXAMINATION IN PARTICULAR.

12           AND IT'S TRUE THAT THE COURT STRUCK ALL OF THAT

13  TESTIMONY WHICH DEALT WITH, REALLY, THE COMPARISON OF THE

14  PARTICULAR ARTWORK ON THE PACKAGES.

15           BUT THE COURT WILL ALSO RECALL THAT THERE HAS

16  BEEN, YOU KNOW, INTERJECTED INTO THE TESTIMONY PRIOR TO THAT

17  TIME, AND THEN THERE -- IT WAS SOMEWHAT REITERATED THROUGH

18  THE DESIGNATION OF LILY MARTINEZ, REALLY, THIS IDEA OF -- OF

19  TOON TEENZ.

20           AND -- AND I HAD EXPRESSED A CONCERN AT THE

21  SIDEBAR, YOU KNOW, NOT ONLY THE ISSUE ABOUT DIVA STARZ BEING

22  INTERJECTED IN THIS WAY, BUT ALSO JUST EVEN WITH TOON TEENZ.

23           AND, YOU KNOW, WE ARE CONCERNED THAT THERE WILL BE

24  THE ARGUMENT OR THE SUGGESTION OR THE IMPLICATIONS TO THE

25  JURY THAT SOMEHOW, WELL, MATTEL COULD HAVE SUED ON OTHER

7896

```
 1   CLAIMS SUCH AS COPYRIGHT INFRINGEMENT OF TOON TEENZ.
 2            THE COURT:  I CAN'T BELIEVE MR. NOLAN OR
 3   MR. KENNEDY ARE NOT GOING TO RELY ON EVIDENCE THAT I'VE
 4   STRICKEN IN THEIR CLOSING ARGUMENT.  I MEAN, THEY -- IF THEY
 5   DO THAT, PERHAPS THIS MIGHT BE SOMETHING TO REVISIT.  I
 6   JUST --
 7            MR. ZELLER:  I'M NOT -- I'M NOT TRYING TO -- I'M
 8   NOT MAKING SOME ACCUSATION AGAINST THEM, YOUR HONOR.
 9            THE COURT:  RIGHT.
10            MR. ZELLER:  WHAT I'M -- WHAT I'M SAYING THERE IS
11   THAT THERE -- THERE IS EVIDENCE IN THE RECORD THAT HAS NOT
12   BEEN STRUCK PERTAINING TO, NUMBER ONE, DIVA STARZ, AND
13   NUMBER TWO, TOON TEENZ.
14            THE COURT WILL RECALL THAT, WHEN -- I KNOW THAT
15   THERE WAS SOME TESTIMONY THAT WAS ELICITED, AND I -- I
16   APOLOGIZE.  I CAN'T RECALL EXACTLY WHO THE WITNESS WAS.  I
17   THINK IT WAS OTHER THAN JILL NORDQUIST, HOWEVER, WHICH WAS
18   THE WITNESS'S TESTIMONY TO HAVE STRUCK ON THIS SUBJECT.  BUT
19   I'M PRETTY SURE THAT EARLIER ON -- AND I CAN POTENTIALLY
20   FIND THE CITATION -- THERE WERE DISCUSSIONS ABOUT DID YOU
21   THINK THAT BRATZ LOOKED LIKE ANYTHING ELSE?
22            AND THIS MAY HAVE BEEN IVY ROSS.  THIS IS GOING
23   BACK A LITTLE WAYS.
24            BUT -- BUT EVEN MORE IMPORTANTLY, FROM MY
25   PERSPECTIVE, IS THAT THERE IS EVIDENCE -- THERE IS EVIDENCE
```

7897

```
 1    THAT WAS ELICITED ABOUT TOON TEENZ THAT HAS CERTAINLY NOT
 2    BEEN STRUCK.  THAT'S REALLY WHAT THIS IS --
 3             THE COURT:  I SUPPOSE PART OF MY PROBLEM WAS,
 4    PRECISELY BECAUSE I FIND IT SO IRRELEVANT TO THE ISSUE
 5    THAT'S BEFORE THE JURY ON FRAUDULENT CONCEALMENT, IT'S HARD
 6    TO UNDERSTAND HOW THAT EVIDENCE, SOME OF WHICH HAS BEEN
 7    INTRODUCED BY MATTEL IN TERMS OF TOON TEENZ AND THE
 8    RELATIONSHIP BETWEEN TOON TEENZ AND BRATZ FOR ENTIRELY
 9    SEPARATE PURPOSES, AND THEN WITH TIMING COULD POSSIBLY
10    SUPPORT AN ARGUMENT THAT MATTEL WAS AWARE THAT CARTER BRYANT
11    DID THESE DRAWINGS WHILE, IN FACT, HE WAS WORKING FOR
12    MATTEL, OR THAT, YOU KNOW, HE ENTERED INTO A -- THIS
13    CONTRACT WHILE HE WAS -- WHILE HE WAS WORKING FOR MATTEL.
14             I JUST -- IT'S PRECISELY BECAUSE IT IS SO
15    IRRELEVANT THAT THAT -- AND I'M ALWAYS RELUCTANT TO INSTRUCT
16    THE JURY HOW TO VIEW -- WHAT TO DO WITH PARTICULAR PIECES OF
17    EVIDENCE.
18             AGAIN, I COULD SEE IF -- IF SOMEHOW ARGUMENT IS
19    MADE ON THIS DURING CLOSING THAT RUNS AFOUL OF THE COURT'S
20    PREVIOUS RULING ON THIS, THEN -- THEN PERHAPS SOMETHING LIKE
21    THIS MIGHT BE APPROPRIATE.
22             I'LL -- I'LL THINK ABOUT IT COUNSEL.  I -- I THINK
23    I UNDERSTAND YOUR ARGUMENT.
24             MR. ZELLER:  THANK YOU.
25             MR. PROCTOR:  ALL RIGHT.  AND THE LAST ONE WE --
```

1   WE PROPOSED IS -- IS ABOUT INJUNCTIVE RELIEF.  WE WENT BACK

2   AND CHECKED THE -- THE TRANSCRIPT BECAUSE THERE WAS A --

3   THERE WAS A -- A FAIRLY LENGTHY SIDEBAR DISCUSSION ABOUT THE

4   PROSPECT OF INJUNCTIVE RELIEF AND HOW THAT PLAYS INTO

5   VALUATIONS FOR THE PURPOSES OF ASSESSING DAMAGES AGAINST

6   MR. LARIAN.

7          AND -- AND THE -- THE INSTRUCTION THE COURT GAVE,

8   THE COURT INSTRUCTED -- THE COURT DID NOT EXPRESSLY INSTRUCT

9   THE JURY TO -- TO DISREGARD THAT EVIDENCE OR -- OR THAT

10  ISSUE.

11         AND I -- I BELIEVE THAT WAS -- I BELIEVE THAT WAS

12  WHERE EVERYTHING CAME OUT ON IT.  BUT THE COURT'S

13  INSTRUCTION WAS EFFECTIVELY SOMETHING TO THE EXTENT OF WE'RE

14  GOING TO REVISIT THIS.  AND -- AND BECAUSE IT WAS A LITTLE

15  LESS THAN CLEAR, I WOULD SUGGEST AN INSTRUCTION ON IT WOULD

16  BE APPROPRIATE NOW.

17         THE COURT:  OKAY.  WITH RESPECT FINALLY TO THE

18  PROPOSED INSTRUCTION BY MGA ON COMPETITOR PRODUCTS.

19         MR. PROCTOR:  I DON'T HAVE MUCH TO ADD TO -- TO

20  OUR OBJECTIONS ON THAT.  THEIR -- THEIR PROPOSED INSTRUCTION

21  STRIKES ME AS OVER-EMPHASIZING THE ISSUE.  I DON'T THINK

22  THAT'S NECESSARY.  I THINK A -- YOU KNOW, A SINGLE SENTENCE

23  OR TWO CAN CAPTURE IT.  AND WE'VE -- WE'VE LODGED A PROPOSED

24  COUNTER-INSTRUCTION, WHICH -- WHICH I THINK CAPTURES THE

25  POINT WITHOUT OVER-EMPHASIZING THE ISSUES.

```
 1              THE COURT:  ALL RIGHT.  VERY GOOD.

 2              I'LL NOW HEAR FROM MGA ON ANY OBJECTIONS MADE BY

 3    MATTEL AND THEN ANY OBJECTIONS THAT THEY HAVE.  AND LET'S

 4    BEGIN WITH THE JURY INSTRUCTIONS THAT THE COURT PROPOSED,

 5    AND THEN WE'LL MOVE TO THE SUPPLEMENTAL ONES THAT HAVE BEEN

 6    SUBMITTED.

 7              MR. NOLAN:  LET ME MAKE SURE I'VE GOT . . .

 8              MR. PROCTOR:  YOUR HONOR, JUST FOR THE RECORD, THE

 9    GARAMENDI CITE.

10              THE COURT:  I'M SORRY?

11              MR. PROCTOR:  THE GARAMENDI CITE, I CAN PROVIDE.

12              THE COURT:  ONE MORE TIME?

13              MR. PROCTOR:  THE GARAMENDI CASE, I CAN PROVIDE.

14              THE COURT:  SURE.  OH, YES.  THANK YOU.  THE

15    GARAMENDI CASE.  YES.

16              MR. PROCTOR:  I CAN PROVIDE A COPY OF THE CASE IF

17    THE COURT WOULD LIKE.

18              THE COURT:  THAT WOULD BE GREAT.

19              MR. NOLAN:  I WAS TRYING TO TURN TO THE ONES THAT

20    MR. PROCTOR ADDRESSED EARLY ON, JUST SOME CLEAN-UP ONES.  I

21    DIDN'T HAVE MUCH COMMENT ON THAT.  I'M JUST TRYING TO SEE

22    WHERE I MADE MY NOTES ON THE COURT'S PROPOSED JURY

23    INSTRUCTIONS.  HOLD ON.

24              OBVIOUSLY, WE DON'T OBJECT TO REFERRING TO IT AS

25    THE FIRST PHASE, STRIKING 1-A.  THAT'S -- THAT'S NOT AN
```

7900

```
1   ISSUE FOR US.

2           THE COURT:  THAT'S FINE WITH MGA?

3           MR. NOLAN:  YES, YOUR HONOR.

4           THE COURT:  ALL RIGHT.

5           MR. NOLAN:  ALSO, ON PAGE 11, I HAD CAUGHT THE

6   SAME LINES, 8 THROUGH 9 --

7           THE COURT:  OKAY.

8           MR. NOLAN:  -- WHICH DIDN'T SEEM TO MAKE SENSE IN

9   THE CONTEXT NOW OF REDOING IT.

10           THE OTHER COMMENT WAS ON PAGE 20 WHERE YOU --

11  WHERE WE CHANGED, AT LINE 6, TO JUST HAVE, I GUESS, PHASE 1.

12  NO OBJECTION THERE.

13           THE COURT:  OKAY.

14           MR. NOLAN:  THE FIRST ONE, THEN, YOUR HONOR, THAT

15  I'D LIKE TO DEAL WITH IS THE -- LET'S SEE.  ON PAGE -- THE

16  DERIVATIVE WORK INSTRUCTION, WHICH I BELIEVE -- WHAT I'M

17  TRYING TO DO IS -- IS CROSS-REFERENCE, YOUR HONOR, TO YOUR

18  PAGES.  I APOLOGIZE.

19           THE COURT:  ALL RIGHT.

20           MS AGUIAR:  AT PAGE 24.

21           THE COURT:  AT PAGE 24?

22           MR. NOLAN:  PAGE 24, THANK YOU.  THANK YOU, YOUR

23  HONOR.  THANK YOU, LAUREN.

24           YOUR HONOR, MUCH HAS BEEN SAID ALREADY ON THIS

25  PARTICULAR INSTRUCTION.  I THINK ONE OF THE PROBLEMS WITH
```

7901

```
 1    THE COURT'S INSTRUCTION, WHICH I THINK RELIED ON MATTEL'S,

 2    IS MORE THE SWEEPING NATURE OF THE ANALYSIS OF THE

 3    DERIVATIVE WORK WHICH, AS THE COURT KNOWS, HAS BEEN THE

 4    SUBJECT OF MUCH QUESTION DURING THE COURSE OF THE TRIAL WITH

 5    RESPECT TO WHAT IS THE APPROACH OR STRATEGY THAT MATTEL

 6    IS -- IS TAKING IN THE PRESENTATION OF THIS DERIVATIVE

 7    CLAIM.

 8            WE WOULD PROPOSE, YOUR HONOR, THAT THE INSTRUCTION

 9    PROVIDE THAT -- LET ME JUST READ IT AS -- AS YOU HAVE IT:

10    "A COPYRIGHT OWNER IS ENTITLED TO EXCLUDE OTHERS FROM

11    CREATING DERIVATIVE WORKS BASED UPON THE OWNER'S COPYRIGHTED

12    WORK" --

13            THE COURT:  SLOW -- SLOW DOWN FOR THE

14    COURT REPORTER, COUNSEL.

15            MR. NOLAN:  I'M SORRY.  "THE COPYRIGHT OWNER IS

16    ENTITLED TO EXCLUDE OTHERS FROM CREATING DERIVATIVE WORKS

17    BASED UPON THE OWNER'S COPYRIGHTED WORK.  THE TERM

18    'DERIVATIVE WORK' REFERS TO WORK BASED ON ONE OR MORE

19    EXISTING WORKS."

20            WE WOULD REQUEST, YOUR HONOR, INSERTING THE

21    SENTENCE, STARTING AT LINE 6, THAT WOULD READ:  "HOWEVER, IN

22    ORDER TO CONSTITUTE AN INFRINGEMENT, A DERIVATIVE WORK MUST

23    BE SUBSTANTIALLY SIMILAR TO A COPYRIGHTED WORK."

24            THE COURT:  HOLD ON.  I'M EVEN SLOWER THAN THE

25    COURT REPORTER.
```

```
1              MR. NOLAN:  I APOLOGIZE, YOUR HONOR.
2              THE COURT:  ONE SECOND.  "HOWEVER, IN ORDER TO
3    CONSTITUTE AN INFRINGEMENT, THE" --
4              MR. NOLAN:  A DERIVATIVE WORK --
5              THE COURT:  -- "A DERIVATIVE WORK MUST BE
6    SUBSTANTIALLY SIMILAR" --
7              MR. NOLAN:  "MUST BE SUBSTANTIALLY SIMILAR TO A
8    COPYRIGHTED WORK."
9              THE COURT:  -- "MUST BE SUBSTANTIALLY SIMILAR TO
10   A" --
11             MR. NOLAN:  AND THEN IT WOULD CONTINUE TO READ AS
12   YOU HAVE IT IN YOUR TEXT:  "ACCORDINGLY, MATTEL IS ENTITLED
13   TO EXCLUDE OTHERS FROM RECASTING, TRANSFORMING, OR
14   ADAPTING."
15             WE WOULD SUGGEST STRIKING "WITHOUT MATTEL'S
16   PERMISSION" BECAUSE, IN A PREVIOUS SENTENCE, YOU -- YOU SAY
17   THAT THEY ARE ENTITLED TO EXCLUDE, SO WE DON'T THINK THAT
18   CLAUSE IS NECESSARY.
19             AND THEN IT WOULD READ AS FOLLOWS:  "THE
20   COPYRIGHTED WORKS YOU FOUND WERE CREATED BY CARTER BRYANT
21   ALONE OR JOINTLY WITH OTHERS WHILE HE WAS EMPLOYED BY
22   MATTEL."
23             NO CHANGE.  BUT WE WOULD ADD, COMMA, "IF EACH OF
24   THE NEW WORKS IS SUBSTANTIALLY SIMILAR TO THOSE CREATED BY
25   CARTER BRYANT."
```

7903

```
1              AND WE THINK THOSE CHANGES EMPHASIZE THE NEED FOR

2    THE JURY TO CONTINUE WITH THE EVALUATION IN THE PROCESS OF

3    EACH OF THE PRODUCTS, WHICH WE THINK IS THE CORRECT

4    APPLICATION OF THE --

5              THE COURT:  VERY GOOD.

6              MR. NOLAN:  -- DERIVATIVE ISSUES.

7              THE COURT:  OKAY.

8              MR. NOLAN:  AND THE NEXT ONE, YOUR HONOR, IS TO

9    YOUR PAGE 26.

10             THE COURT:  ALL RIGHT.  I'M THERE.

11             MR. NOLAN:  AND THE CHANGE THAT WE WOULD

12   REQUEST -- AND I HAVE THESE IN LINE EXTRACTIONS, YOUR HONOR,

13   THAT I COULD HAND UP LATER.  IF I COULD JUST READ IT, IT

14   MIGHT BE EASIER.  THIS ONE PARAGRAPH THAT WE WOULD REQUEST

15   ADDING WOULD BE ADDED AT THE END.  AND IF I COULD JUST READ

16   IT, AND THEN, IF THE COURT WISHES TO WRITE IT DOWN, I COULD

17   EITHER HAND IT UP OR OTHERWISE.

18             IT IS -- MS. AGUIAR REMINDS ME THAT IT'S THE

19   ONE -- THE INSTRUCTION OR THE LANGUAGE FROM THE INSTRUCTION

20   THAT WE SUBMITTED AT THE END OF THE DAY ON FRIDAY AFTER THE

21   COURT ISSUED ITS ORDERS WITH RESPECT TO THE INVERSE RATIO

22   RULE.

23             THE COURT:  RIGHT.

24             MR. NOLAN:  AND I THINK THAT THE WAY THIS WOULD BE

25   PLAY OUT BECAUSE -- YOU KNOW, AS THE POINT HAS BEEN MADE
```

7904

1    BEFORE AND CAME UP IN THE DISCUSSIONS ON FRIDAY, WHERE AND

2    HOW THE JURY APPLIES THIS INVERSE RATIO RULE HAS A POTENTIAL

3    FOR CONFUSING IT, WE BELIEVE, AT LEAST.  AND I'M NOT GOING

4    TO RE-ARGUE IT --

5             THE COURT:  IT'S A DIFFICULT -- IT'S A DIFFICULT

6    RULE TO INSTRUCT THE JURY ON, I AGREE --

7             MR. NOLAN:  IT IS.  AND SO THIS IS JUST OUR IDEA

8    OF MAYBE HOW WE COULD FRAME THIS IN A WAY THAT IT WILL NOT

9    BE AS CONFUSING TO THE JURY, ALTHOUGH WE STAND ON ALL OF OUR

10   EARLIER OBJECTIONS.

11            THE COURT:  I KNOW.

12            MR. NOLAN:  SO -- SO STARTING AT LINE 12 -- LINE

13   12 OF THIS INSTRUCTION, INSERTING THE FOLLOWING PARAGRAPH:

14   "IN DETERMINING WHETHER THE DEFENDANTS COPIED ORIGINAL

15   ELEMENTS FROM MATTEL'S COPYRIGHTED WORKS, THE DEGREE OF

16   SIMILARITY REQUIRED TO SUPPORT A FINDING OF SUBSTANTIAL

17   SIMILARITY MAY BE AFFECTED BY THE DEGREE OF ACCESS THAT THE

18   DEFENDANT HAD TO MATTEL'S COPYRIGHTED WORKS.  IF MATTEL

19   SHOWS THAT THE DEFENDANTS HAD ACCESS TO MATTEL'S COPYRIGHTED

20   WORKS, YOU MAY DETERMINE THAT THE THRESHOLD FOR FINDING

21   SUBSTANTIAL" -- "SUBSTANTIAL SIMILARITY IS LOWERED.

22   HOWEVER, IN ORDER TO FIND COPYRIGHT INFRINGEMENT, YOU ARE

23   STILL REQUIRED TO APPLY BOTH THE EXTRINSIC AND INTRINSIC

24   TEST OF SUBSTANTIAL SIMILARITY WHICH I WILL INSTRUCT YOU ON.

25   FURTHER, THE BURDEN OF PROVING SUBSTANTIAL SIMILARITY BY A

7905

```
 1   PREPONDERANCE OF THE EVIDENCE ALWAYS REMAINS WITH MATTEL."

 2            THE COURT:  I'M SORRY.  YOU SAID PAGE 26.  IS THIS

 3   PAGE 26 OR PAGE 30 THAT YOU WANT TO INSERT THIS?  WHAT --

 4   WHERE ARE YOU PROPOSING THAT WE INSERT THIS PARAGRAPH?

 5            MR. NOLAN:  BUT I WOULD -- HOLD ON.  LET ME JUST

 6   DOUBLE-CHECK MY OWN.

 7            THE COURT:  BECAUSE LINE 12 OF PAGE 26 IS KIND OF

 8   IN THE MIDDLE OF A SENTENCE.

 9            MR. NOLAN:  WE WOULD ADD, YOUR HONOR -- YES, IT

10   WOULD BE ON PAGE 26, AND WE WOULD INSERT WHAT I JUST --

11            THE COURT:  RIGHT.

12            MR. NOLAN:  -- READ PROBABLY AT LINE 17.

13            THE COURT:  WELL, HOW DOES THIS INTERPLAY WITH THE

14   INSTRUCTION THAT'S GIVEN ON 30?  BECAUSE A LOT OF THOSE

15   ELEMENTS THAT YOU JUST READ ARE INCLUDED IN 30, ON THE

16   INSTRUCTION ON PAGE 30.

17            MR. NOLAN:  YOUR HONOR, WE BELIEVE THAT, BY

18   PUTTING IT INTO THIS INSTRUCTION, IT MORE OR LESS SETS IT

19   FORTH IN MORE OF A COHESIVE AND --

20            THE COURT:  SO -- SO YOU'D BE -- ESSENTIALLY, WE

21   STRIKE THE INSTRUCTION ON PAGE 30, THEN, IN LIEU OF THIS --

22            MR. NOLAN:  YES, YOUR HONOR.

23            THE COURT:  -- IS THAT --

24            MR. NOLAN:  YES.

25            THE COURT:  OKAY.  VERY GOOD.
```

```
 1              MR. NOLAN:  YOU'RE LOOKING AT THE SAME PEOPLE I AM
 2    FOR A CONFIRMATION ON THAT.
 3              ALL RIGHT.  AND THEN THE NEXT INSTRUCTION WOULD BE
 4    ON THE SUBSTANTIAL SIMILARITY TEST ITSELF.
 5              THE COURT:  ALL RIGHT.  THAT'S ON PAGE 27.
 6              MR. NOLAN:  THANK YOU.
 7              THE COURT:  BY THE WAY, I -- I DO WANT YOU TO HAND
 8    FORTH THAT LANGUAGE THAT YOU JUST READ, SO --
 9              MR. NOLAN:  I WILL, YOUR HONOR.
10              THE COURT:  PERHAPS SOMEBODY COULD DO THAT FOR
11    YOU.
12              MR. NOLAN:  SURE.
13              NOW, ON -- THE SAME WAY WITH THIS, YOUR HONOR.  I
14    CAN HAND UP THE EDITED VERSION AS WE GO ALONG HERE.
15              FIRST, AFTER THE FIRST PARAGRAPH, AFTER IT SAYS,
16    "MATTEL MUST SATISFY BOTH OF THESE TESTS," WE WOULD INSERT:
17    "FIRST YOU MUST APPLY THE EXTRINSIC TEST."
18              AND THEN IT SAYS, "UNDER THE EXTRINSIC TEST" AND
19    WE WOULD KEEP THAT PARAGRAPH INTACT.
20              THEN --
21              THE COURT:  SO YOU WANT ME TO JUST PUT THAT -- TO
22    MAKE IT CLEAR THAT THEY'RE APPLYING THE EXTRINSIC TEST
23    FIRST?
24              MR. NOLAN:  I THINK IT HELPS THEM IN TERMS OF
25    STEPPING DOWN -- YOU KNOW, STEPPING THROUGH THE PROCESS.
```

```
 1              THE COURT:   "FIRST" --

 2              MR. NOLAN:   "FIRST," COMMA, "YOU MUST APPLY THE

 3    EXTRINSIC TEST."

 4              THE COURT:   I SEE.

 5              MR. NOLAN:   AND THEN, IN THE SENTENCE THAT STARTS

 6    ON LINE 13, WHERE YOU SAY, "THE COURT HAS DETERMINED," WE

 7    WOULD SUGGEST IT READ AS FOLLOWS:   "THE COURT HAS DETERMINED

 8    WHAT ELEMENTS OF THE WORKS," AND THEN I WOULD ADD, "THAT YOU

 9    FOUND" -- AND THEN, "YOU FOUND WERE."   AND THEN WE GO ON

10    WITH YOUR TEXT, "CREATED BY CARTER BRYANT."

11              THE COURT:   SO THAT THE COURT IS NOT GIVING ITS

12    IMPRIMATUR TO THOSE FINDINGS.   I UNDERSTAND.

13              MR. NOLAN:   THAT -- THAT'S THE CONCERN THAT WE

14    HAVE.

15              AND THEN INSERTING, "SOLELY OR JOINTLY WHILE

16    WORKING AT MATTEL."

17              AGAIN, THE SAME ISSUE BECAUSE IT TRACKS WHAT THEY

18    FOUND.

19              SO JUST AFTER "CARTER BRYANT," "SOLELY OR JOINTLY

20    WHILE WORKING AT MATTEL," COMMA.

21              THE COURT:   ALL RIGHT.

22              MR. NOLAN:   AND THEN IT WOULD CONTINUE ON WITH

23    YOUR TEXT, "ARE PROTECTABLE UNDER COPYRIGHT LAW.   THESE ARE

24    THE" -- WE WOULD INSERT THE WORD "ONLY" -- "ELEMENTS THAT

25    YOU SHOULD CONSIDER FOR THE PURPOSE OF YOUR COMPARISONS."
```

```
 1              AND THEN WE WOULD ADD, "TO EACH OF THE ALLEGEDLY
 2    INFRINGING MGA PRODUCTS UNDER THE EXTRINSIC TEST."
 3              AND THIS IS TO CONFORM, WE THINK, WHAT THE JURY'S
 4    FINDINGS WERE.  BUT MORE IMPORTANTLY, TO HAVE THEM FOCUS ON
 5    THESE ARE THE ONLY ELEMENTS, AND THAT THOSE SHOULD BE
 6    APPLIED TO EACH OF THE ALLEGEDLY INFRINGING MGA PRODUCTS.
 7              THE COURT:  OKAY.
 8              MR. NOLAN:  IN LINE 13, FIRST LINE IS -- IS THE
 9    SAME.  "FIRST, THE PARTICULARIZED SYNERGISTIC EXPRESSION OF
10    THE HUMAN FORM AND ANATOMY," THAT WE WOULD SAY -- WE WOULD
11    ADD THE LANGUAGE, "IS EXPRESSLY" -- I'M SORRY -- "IS
12    EXPRESSED UNIQUELY IN THE CARTER BRYANT WORKS."
13              AND THEN WE WOULD STRIKE "EXPRESSES A UNIQUE STYLE
14    AND CONVEYS A DISTINCT LOOK OR ATTITUDE."
15              THE COURT:  ALL RIGHT.
16              MR. NOLAN:  BECAUSE, AGAIN, IN THAT SENTENCE, WE
17    BELIEVE THAT IT MAY BE COMMENTING ON THE EVIDENCE FROM THE
18    COURT'S VIEW.
19              ANYWAY, ON LINE 16, THEN IT WOULD BE, "SECOND, THE
20    PARTICULARIZED EXPRESSION" -- I WOULD STRIKE "OF THE DOLLS"
21    BECAUSE OF THE DISTINCTION BETWEEN DRAWINGS AND DOLLS.
22              IT SHOULD BE, "THE PARTICULARIZED EXPRESSION
23    IN" -- "IN BRYANT'S" -- "OR CARTER BRYANT'S DRAWINGS OF THE
24    HEADS" -- "OF THE HEAD, LIPS, EYEBROWS, EYE FEATURES, NOSE,
25    CHIN, HAIRSTYLE, AND BREAST, INCLUDING THE SPECIFIC FORM
```

```
 1   OF" -- SO WE WOULD ASK THAT THE COURT INSERT THE WORDS --
 2   THE WORDS "SPECIFIC FORM OF" IN FRONT OF "ACCENTUATION OR
 3   EXAGGERATION."
 4            AND THEN READING ALONG, "OF CERTAIN ANATOMICAL
 5   FEATURES RELATIVE TO OTHERS," AND WE WOULD STRIKE "DOLL."
 6            THE COURT:  YEAH, I SEE.  BUT THE POINT OF MY
 7   INSERTING THE WORD "DOLL" THERE WAS IN THE GENERIC SENSE,
 8   NOT IN THE PARTICULARIZED SENSE IN THIS CASE.  IT'S -- THERE
 9   ARE CLEARLY BOTH THE DRAWING AND THE DOLL ARE MEANT TO
10   CONVEY A DOLL LIP AS OPPOSED TO A HUMAN LIP.
11            AND THIS GETS BACK TO THE WHOLE JELLYFISH MOTION,
12   WHICH I DON'T WANT TO TANGLE WITH.  THAT'S -- THAT'S --
13   THAT'S THE POINT IS THAT WE'RE TALKING ABOUT DOLL LIPS HERE.
14   WE'RE NOT TALKING ABOUT HUMAN LIPS.
15            AND DOLL LIPS HAVE A DIFFERENT -- ARE DIFFERENT,
16   THE COURT HAS FOUND, THAN -- THAN A MERE ATTEMPT -- AND EVEN
17   THE DRAWINGS THEMSELVES, THEY'RE NOT -- I UNDERSTAND THEY'RE
18   NOT DOLLS IN THE THREE-DIMENSIONAL SENSE.  BUT THEY'RE
19   CERTAINLY, BASED ON THE UNDISPUTED EVIDENCE, WERE SENT --
20   WERE -- WERE DRAWN TO EXPRESS A DOLL LIP IN -- IN A
21   TWO-DIMENSIONAL FORM.
22            I -- I UNDERSTAND YOUR CONCERN HERE.  I'M TRYING
23   TO THINK HOW TO -- HOW TO ADDRESS THIS, BUT I DO --
24            MR. NOLAN:  I DON'T THINK THAT, IN ANY WAY, WE TRY
25   TO IGNORE THE FACT.
```

7910

```
 1            THE COURT:  AND MAYBE THE WAY TO CHANGE IT IS TO
 2   CHANGE THE "THE" TO "A."
 3            "THE PARTICULARIZED EXPRESSION OF A DOLL'S HEAD,
 4   LIPS, EYES, EYEBROWS."
 5            I'M NOT REFERRING TO "THE" BRATZ DOLLS.  I'M JUST
 6   REFERRING TO --
 7            MR. NOLAN:  "A."
 8            THE COURT:  -- A PARTICULARIZED EXPRESSION OF A
 9   DOLL HEAD OR A DOLL LIP OR A DOLL NOSE.
10            MAYBE THAT'S THE WAY TO ADDRESS THAT.
11            MR. NOLAN:  I THINK THE CONCERN THAT WE HAVE,
12   THOUGH, YOUR HONOR, IS MAKING CERTAIN THAT WE'RE MAKING IT
13   TO THE "IN HIS DRAWINGS."
14            YOU KNOW, THE FIRST --
15            THE COURT:  WELL, IT'S CLEAR THAT THERE --
16   PARTICULARLY, IF I INCORPORATE THE LANGUAGE THAT YOU ASKED
17   ME TO INCORPORATE ABOVE, IT'S -- IT'S CLEAR THAT THEY'RE
18   COMPARING THE DRAWINGS TO THE --
19            MR. NOLAN:  RIGHT.
20            THE COURT:  -- AND THEN THESE ARE JUST THE
21   ELEMENTS.
22            MR. NOLAN:  RIGHT.  AND THAT WAS -- THAT'S THE KEY
23   DISTINCTION FOR US IN THAT REGARD, YOUR HONOR.
24            AND THEN JUST, IF I MIGHT, ON THE THIRD PARAGRAPH,
25   IF YOU'VE MADE THE OTHER CHANGES, WE'LL STAND ON THEM, THE
```

```
 1    OBJECTION REGARDING DOLL, BECAUSE I HAD -- I HAD THE
 2    SUGGESTION JUST TO STRIKE DOLL -- DOLL -- DOLL ACCESSORIES.
 3              THE COURT:  VERY WELL.
 4              MR. NOLAN:  BUT HERE'S THE KICKER.
 5              UNDER -- AFTER "ACCESSORIES DEPICTED IN THE CARTER
 6    BRYANT WORKS."
 7              THE COURT:  ALL RIGHT.
 8              MR. NOLAN:  AND THEN, IF YOU CONTINUE ON TO THE
 9    NEXT PAGE, YOUR HONOR.
10              THE COURT:  I'M THERE.
11              MR. NOLAN:  ALL RIGHT.  IF I COULD JUST START ON
12    LINE 3, WHICH I THINK STARTS WITH THE WORD "PHYSIOLOGY."
13    IT'S ON LINE 7 ON YOUR DRAFT.
14              THE COURT:  ALL RIGHT.
15              MR. NOLAN:  WE WOULD SAY "PHYSIOLOGY," INSTEAD OF
16    "HAVE" -- "WEAR" -- W-E-A-R -- HUMAN CLOTHES.
17              THE COURT:  WEAR?
18              MR. NOLAN:  YEAH, INSTEAD OF "HAVE."
19              AND THEN, ON NUMBER -- THE NEXT LINE DOWN AFTER
20    "ETHNICITY," WE WOULD SAY --
21              THE COURT:  I'M GOING TO PUT PROBABLY "WEAR OR
22    HAVE" BECAUSE ACCESSORIES, YOU MAY OR MAY NOT ACTUALLY WEAR.
23    YOU MAY HAVE THE ACCESSORY.
24              MR. NOLAN:  OKAY.
25              THE COURT:  BUT T -- WEAR OR HAVE.
```

1           MR. NOLAN:  RIGHT.

2           AND THEN -- OKAY, ETHNICITY.

3           THE COURT:  YES.

4           MR. NOLAN:  THEN STRIKE "OR URBAN OR RURAL," AND

5     THEN JUST SAY, "HAVE AN," QUOTE, "URBAN APPEARANCE."

6           THE COURT:  OR "HAVE A URBAN OR RURAL APPEARANCE."

7           MR. NOLAN:  RIGHT.  YOUR HONOR, RURAL IS ONE THAT

8     WE THINK THE EMPHASIS IN THIS CASE HAS BEEN MORE ON THE

9     URBAN SIDE OF IT.  AND WE WERE KIND OF THINKING LAST NIGHT

10    ABOUT THE WORD "RURAL," AND --

11          THE COURT:  FAIR ENOUGH.  I WAS TRYING TO USE A

12    CONTRA-DISTINCTION, BUT YES.

13          MR. NOLAN:  AND THEN, IF YOU CONTINUE DOWN,

14    "ANATOMICAL FEATURES RELATIVE TO OTHERS."

15          DO YOU SEE WHERE I'M AT?

16          THE COURT:  YES.

17          MR. NOLAN:  WE WOULD JUST PUT IN THERE, "OR DEPICT

18    COMMON OR STANDARD TREATMENT OF," AND THEN INSERT "FASHION

19    DOLLS," COMMA, "WHICH WOULD INCLUDE CHANGEABLE FASHIONS AND

20    MANIPULABLE HAIR.  OTHER ELEMENTS THAT ARE NOT PROTECTED ARE

21    NAMES AND/OR SHORT PHRASES AND FEATURES WHICH YOU MAY FIND

22    THAT CARTER BRYANT USED FROM OTHER PREEXISTING MATERIALS."

23          THE COURT:  OKAY.  THE COURT HAS ALREADY ADDRESSED

24    THE -- THE NAMES INSTRUCTIONS.  I -- I UNDERSTAND YOUR

25    REQUEST.

                                                   7913

1          MR. NOLAN:  OKAY.  AND THEN WE WOULD -- WE WOULD

2    SUGGEST STRIKING THE TERM "THE SUBJECT MATTER" AND THE

3    SENTENCE THAT STARTS:  "NEVERTHELESS, PARTICULARLY

4    COMPILATIONS OR COMBINATIONS OF THESE OTHERWISE

5    NON-PROTECTABLE ELEMENTS IN THE WORKS WHICH EXPRESS A

6    PARTICULAR STYLE OR CONVEY A DISTINCT LOOK OR ATTITUDE ARE

7    PROTECTABLE."

8          THE COURT:  AND -- AND WHY WOULD WE STRIKE THAT?

9    BECAUSE I --

10          MR. NOLAN:  YOUR HONOR, THAT POINT HAS ALREADY

11   BEEN MADE EARLIER.  AND IT SEEMS -- IT JUST SEEMED TO US

12   THAT IT ALMOST BECAME A LITTLE BIT ARGUMENTATIVE, WITH DUE

13   RESPECT, BECAUSE YOU -- I THOUGHT YOU HAD THAT IN THE FIRST

14   PART.  AND NOW, WHEN YOU'RE TALKING ABOUT WHAT'S

15   UNPROTECTABLE, YOU'RE REMINDING THEM OF --

16          THE COURT:  WELL, I SET OUT -- I SET OUT THE THREE

17   ELEMENTS OF WHAT IS PROTECTABLE.  ONE APPROACH WILL BE TO

18   LEAVE IT ALONE AT THAT.  WHAT I DO IS I GO ON TO INCLUDE A

19   PARAGRAPH THAT INCLUDES THINGS THAT AREN'T PROTECTABLE,

20   THINGS THAT ARE PROTECTABLE.

21          MR. NOLAN:  RIGHT.

22          THE COURT:  I TRY -- I TRY TO HAVE A BALANCED

23   PARAGRAPH AFTER THAT.

24          I MEAN, ONE APPROACH WOULD SIMPLY BE TO STRIKE

25   THAT ENTIRE PARAGRAPH FROM "IN CONTRAST" TO -- YOU KNOW,

7914

1    FROM LINE 26 ON PAGE 27 THROUGH LINE 11 ON PAGE 28.  BUT I

2    THINK, ONCE I GO DOWN THAT ROAD OF IDENTIFYING THINGS THAT

3    ARE NOT PROTECTABLE, I THINK I NEED TO BALANCE THAT WITH

4    WHAT IS PROTECTABLE.

5                MR. NOLAN:  OKAY.

6                THE COURT:  I'LL -- I'LL TAKE A LOOK AT THAT WHOLE

7    PARAGRAPH.

8                MR. NOLAN:  I UNDERSTAND ALREADY, YOUR HONOR.

9    WE -- WE DO NOT WANT TO, BY RAISING THIS, LOSE THE LANGUAGE

10   THAT YOU HAVE HERE TO CONTRAST IT.

11               THE WITNESS:  I -- I WOULD EXPECT SO.

12               MR. NOLAN:  RIGHT.  IT WAS JUST THAT --

13               THE COURT:  I UNDERSTAND.  I UNDERSTAND YOUR

14   POSITION.  I'LL -- I'LL TAKE A LOOK AT IT IN THE CONTEXT OF

15   THE ELEMENTS THAT I SPECIFIED ABOVE.

16               MR. NOLAN:  OKAY.  AND THEN THE NEXT PARAGRAPH, IT

17   SHOULD SAY, "YOU SHOULD CONSIDER," WE WOULD INSERT THE WORD

18   "ONLY THE ELEMENTS I HAVE JUST LISTED AS," QUOTE,

19   "PROTECTABLE," CLOSE QUOTE, "FOR THE PURPOSES OF THE

20   EXTRINSIC TEST."

21               THEN READING ALONG, IT SAYS, "FOCUSING ON THE

22   PROTECTABLE ELEMENTS OF THE WORKS BY CARTER BRYANT AS

23   COMPARED TO" -- AND THEN WE WOULD ASSERT -- INSERT, RATHER,

24   "ELEMENTS IN THE," AND THEN IT WOULD CONTINUE TO READ,

25   "ALLEGEDLY INFRINGING BRATZ-RELATED WORKS."

                                                      7915

1         AND THEN, IN MOVING DOWN TO LINE 17.

2         THE COURT:  ALL RIGHT.

3         MR. NOLAN:  IT'S MY LINE 17.  IT'S THE INTRINSIC

4    TEST PARAGRAPH --

5         THE COURT:  YES.

6         MR. NOLAN:  LOOKS LIKE THE OVERALL SIMILARITY OF

7    IDEAS AND EXPRESSION IN THE WORKS.

8         THE COURT:  ALL RIGHT.  I'M THERE.

9         MR. NOLAN:  RIGHT.

10        THE COURT:  WHAT AGE DO YOU PROPOSE?

11        MR. NOLAN:  8 TO 12, YOUR HONOR.  I THINK THAT'S

12   THE -- THAT'S THE EVIDENCE --

13        THE COURT:  AGE 12, JUST AGE 12?

14        MR. NOLAN:  OH, NO; 8 TO 12.

15        THE COURT:  OH, 8 TO 12.  GOT IT.

16        MR. NOLAN:  AND THEN THE 4, YOUR HONOR, I'LL JUST

17   MAKE A PROFFER THAT IT HAS TO DO WITH REGULATIONS THAT HAVE

18   TO DEAL WITH SMALL ACCESSORIES, SMALL PARTS.  BUT THE

19   OVERWHELMING EVIDENCE IN THE CASE HAS ALWAYS BEEN, IN FACT,

20   MATTEL EVEN MONITORED THE PENETRATION BRATZ WAS HAVING IN

21   THIS OLDER GENERATION OF GIRLS IT'S HARD -- HARD TO IMAGINE

22   IT'S AN OLDER GENERATION OF GIRLS, BUT NEVERTHELESS

23   THAT'S -- THAT'S -- THAT'S THE TWEENS MARKET THAT WAS

24   IDENTIFIED BY MR. LARIAN.  SO WE WOULD ASK TO STAND ON THAT.

25        THE COURT:  WELL, IT WAS INDICATED.  I'VE SEEN

                                                        7916

```
 1   EVIDENCE -- THE COURT HAS SEEN EVIDENCE INDICATING 4, 6, 7,
 2   AND 8 AS THE BOTTOM RANGE.  AND THEN 12 SEEMS TO BE AT LEAST
 3   AGREED UPON AS THE HIGH END.
 4          I'LL -- I'LL CONSIDER THAT.
 5          MR. NOLAN:  AND THEN, IF YOU CONTINUE ON AFTER 8
 6   AND 12, WOULD -- WE WOULD STRIKE, "RECOGNIZE THE DEFENDANT'S
 7   PRODUCTS AS REFLECTING."
 8          WE WOULD INSERT THAT IT WOULD BE MORE CLEAR TO
 9   SAY -- AND I'LL READ THIS NOW IN THE CONTEXT, "IN THIS CASE,
10   GIRLS BETWEEN THE AGES OF 8 AND 12 WOULD DETERMINE THAT" --
11   AND THEN IT WOULD READ ON -- "THE TOTAL CONCEPT AND FEEL."
12          AND THEN WE WOULD -- AND THEN WE WOULD GO ON, YOUR
13   HONOR, TO SUGGEST THAT, AFTER "TOTAL CONCEPT AND FEEL," THE
14   POINT, "OR AS A PICTURIZATION," BECAUSE I DON'T -- I DON'T
15   THINK --
16          THE COURT:  YOU'VE ALREADY MADE THOSE ARGUMENTS
17   ABOUT PICTURIZATION.  LET'S GO ON -- NOW, WE'RE GETTING --
18          MR. NOLAN:  I'M SORRY, YOUR HONOR.
19          OF THE BRATZ -- OKAY.  AND THEN "OF THE," AND I
20   WOULD STRIKE "THE BRATZ-RELATED WORKS" AND JUST SAY, "WORKS
21   THAT YOU HAVE FOUND THAT" -- AND WE WOULD STRIKE "MATTEL
22   OWNS."
23          AGAIN, ALONG THE SAME POINTS THAT I MADE EARLIER,
24   AND THEN JUST TRACK REALLY WHAT HAPPENED HERE THAT
25   "CARTER BRYANT CREATED ALONE OR JOINTLY WITH OTHERS DURING
```

7917

```
 1   HIS MATTEL EMPLOYMENT IS SUBSTANTIALLY SIMILAR TO THE TOTAL

 2   CONCEPT AND FEEL IN THE ALLEGEDLY INFRINGING WORKS."

 3            THE COURT:  ALL RIGHT.

 4            MR. NOLAN:  AND THEN THE NEXT PARAGRAPH, I WOULD

 5   PROPOSE STRIKE THE FIRST SENTENCE AND THE FIRST WORD IN THE

 6   SECOND SENTENCE, "HOWEVER."  I WOULD STRIKE THAT.  AND THEN

 7   ADD, "TO SUMMARIZE, MATTEL" -- STRIKE "DOES NEED."  JUST

 8   SAY, "MATTEL MUST ESTABLISH THAT," AND THEN IT -- AND IT

 9   READS THE WAY IT'S CONSISTENT NOW.

10            THE COURT:  VERY WELL.

11            MR. NOLAN:  THE NEXT COMMENT THAT WE HAVE -- YOU

12   KNOW, I'M SORRY.  I DID GET A NOTE HANDED UP TO ME.

13            ON THE PRIOR PAGE, WE NEED TO SPECIFICALLY STATE

14   THAT STYLE, LOOK, AND ATTITUDE ARE NOT COPYRIGHTABLE.

15            I'M JUST READING A NOTE.

16            ON THAT SAME INSTRUCTION, YOUR HONOR, IF YOU GO

17   BACK TO THE BEGINNING.  WE WOULD ASK THAT -- THAT THERE BE

18   AN AFFIRMATIVE STATEMENT WHICH SAYS, "WE NEED" -- "THAT

19   STYLE, LOOK, AND ATTITUDE ARE NOT COPYRIGHTABLE."

20            AND YOU HAVE THAT AT LINE 18, WHERE YOU SAY:  "THE

21   PARTICULARIZED SYNERGISTIC COMPILATION AND EXPRESSION OF THE

22   HUMAN FORM ANATOMY; THAT IS, EXPRESSES A UNIQUE STYLE AND

23   CONVEYS A DISTINCT LOOK OR ATTITUDE."

24            WE'VE MADE THIS POINT BEFORE, YOUR HONOR, IN OUR

25   OBJECTIONS.  AND WE JUST WANTED TO MAKE CERTAIN THAT THAT
```

```
 1   HAD BEEN FLAGGED BECAUSE WE DO NOT BELIEVE THAT STYLE OR

 2   DISTINCT LOOK OR ATTITUDE WOULD BE PROTECTABLE UNDER THE

 3   COPYRIGHT ACT.

 4          AND I THINK THAT THERE WAS TESTIMONY FROM EITHER

 5   MR. LIND OR MR. LUTZ TO THE NOTION THAT YOU COULD SEE THIS

 6   TYPE OF STYLE, LOOK, AND ATTITUDE OUTSIDE THE STAPLES CENTER

 7   IN LOS ANGELES.

 8          THE COURT:  VERY GOOD.  IS THAT ALL YOU HAVE ON

 9   THAT INSTRUCTION, COUNSEL?

10          MR. NOLAN:  YES, IT IS.

11          THE COURT:  ALL RIGHT.  I'M GOING TO STOP YOU

12   HERE.  THE COURT HAS -- WE'VE GOT A LOT OF -- A LOT OF OTHER

13   ATTORNEYS WAITING PATIENTLY HERE IN THE COURTROOM.  WE HAVE

14   TWO QUICK SCHEDULING MATTERS TO TAKE UP, TWO QUICK MATTERS

15   AT TEN O'CLOCK.

16          WHAT I'D LIKE TO DO IS TAKE A BREAK FROM THIS.

17   THIS IS TAKING A LITTLE LONGER THAN I THOUGHT.

18          MR. NOLAN:  YES.

19          THE COURT:  LET'S TAKE UP THAT ALONG WITH THE MGA

20   STATUS CONFERENCE, AND THEN WE'LL GO BACK TO THIS BECAUSE I

21   REALLY DON'T HAVE MUCH OF AN ELEVEN O'CLOCK CALENDAR.

22          MR. NOLAN:  THANK YOU.

23          THE COURT:  AND I KNOW YOU GUYS ARE GOING TO BE

24   AROUND FOR THE DAY ANYWAYS SO . . .

25          MR. ZELLER:  AND -- AND, YOUR HONOR, JUST AS A
                                                       7919
```

```
 1    REMINDER, I -- I DO HAVE TO LEAVE AT SOME POINT FOR MY
 2    SCHEDULING CONFERENCE --
 3              THE COURT:  THAT'S RIGHT.  YOU HAVE THE -- THE
 4    CONFERENCE WITH -- WITH JUDGE --
 5              MR. ZELLER:  JUDGE MATZ.
 6              THE COURT:  -- MATZ.
 7              WHAT TIME DO YOU NEED TO LEAVE, COUNSEL?
 8              MR. ZELLER:  I -- I WOULD SAY, TO BE SAFE, NO
 9    LATER THAN 11:00.  IT'S -- IT'S AT 1:30.
10              THE COURT:  OKAY.  VERY GOOD.  AND IF FOR SOME
11    REASON I HOLD YOU LONGER, I'LL BE SURE TO CALL JUDGE MATZ.
12              MR. ZELLER:  OKAY.  THANK YOU.
13              THE COURT:  THANK YOU, COUNSEL.
14              (OTHER UNRELATED PROCEEDINGS.)
15              THE COURT:  OKAY.  MR. NOLAN, I'M SORRY THAT I
16    INTERRUPTED YOU.  WE'RE BACK ON THE RECORD.  BUT I
17    THOUGHT --
18              MR. NOLAN:  NOT AT ALL.
19              THE COURT:  -- WE SHOULD JUST ADDRESS THOSE PEOPLE
20    THAT WERE WAITING AROUND.
21              MR. NOLAN:  NO, NOT AT ALL.  IN FACT, I'LL -- I'LL
22    TRY TO -- I ALSO TOOK IT AS A HINT TO KIND OF SPEED IT UP,
23    SO --
24              THE COURT:  VERY GOOD.
25              WE -- WE LEFT OFF AT PAGE 29.  I THINK WE'RE ON
```

7920

1    PAGE 30.

2              MR. NOLAN:   WITH RESPECT TO THE COPYRIGHT

3    INSTRUCTIONS, YOUR HONOR, THOSE ARE THE ONLY COMMENTS THAT I

4    WOULD MAKE -- OH, EXCEPT ON PAGE 33.

5              THE COURT:   ALL RIGHT.   I'M THERE.   THE 2D-3D

6    INSTRUCTION.

7              MR. NOLAN:   RIGHT, RIGHT.

8              AND AT THE END OF LINE 5, WHERE IT SAYS, "WHEN THE

9    WORKS ARE SUBSTANTIALLY SIMILAR," WE WOULD ADD, "UNDER THE

10   EXTRINSIC AND INTRINSIC TEST," PERIOD.

11             THEN WE'RE GOING TO DO A TAG TEAM THAT --

12             THE COURT:   HOLD ON ONE SECOND.

13             OKAY.

14             MR. NOLAN:   THE LAST ONE THAT I WANT TO RAISE,

15   YOUR HONOR, AND THEN MR. ROTH WILL ADDRESS JUST A COUPLE, IF

16   YOU DON'T MIND, WE'LL JUST GO TO FRAUDULENT CONCEALMENT.

17   AND THE FRAUDULENT CONCEALMENT DISCUSSION IS --

18             THE COURT:   THAT'S PAGE 38.

19             MR. NOLAN:   YES.   AND WE BELIEVE, YOUR HONOR, THAT

20   THE COURT HAS A RIGHT -- AND WE CITED IN THE PAPERS THAT WE

21   HANDED UP TO YOU FRIDAY THE RECENT NINTH CIRCUIT DECISION

22   THAT IS IN THE CLEMENS V. DAIMLER-CHRYSLER CORPORATION CASE,

23   WHICH WAS DECIDED APRIL 11TH, 2008.

24             I'M SORRY.   IT WAS FILED -- AMENDED JULY 24TH,

25   2008.   AND THAT WAS CITED TO AND SUBMITTED, WHERE THEY DID

                                                          7921

```
 1   NOT ADOPT THE ACTUAL NOTICE.  IN FACT, THEY REFERRED TO IT
 2   AS THE PRESUMPTIVE KNOWLEDGE.
 3           THE COURT:  I DO RECALL THESE CASES, COUNSEL.  LET
 4   ME ASK YOU THE SAME QUESTION I ASKED MATTEL, DO YOU HAVE THE
 5   CITE ON THAT, BY CHANCE?
 6           MR. NOLAN:  YES.  I HAVE IT, IF YOU DON'T MIND THE
 7   HAND --
 8           THE COURT:  PERFECT.  JUST HAND IT FORWARD, AND
 9   I'LL TAKE A LOOK AT THE TWO CASES AND . . .
10           ANYTHING ELSE ON THE --
11           MR. NOLAN:  YES, YOUR HONOR.  I WANT TO GO JUST --
12   I WANTED TO GO BACK ONE POINT TO THE INTERMEDIARY WORK
13   INSTRUCTIONS.
14           JUST TO GO BACK IN TIME, YOUR HONOR.  I APOLOGIZE.
15   THIS WILL BE THE LAST ONE WE BRING UP IN THE COPYRIGHT
16   CONTEXT.
17           PAGE 34.
18           THE COURT:  PAGE 34.  ALL RIGHT, I'M THERE.  THIS
19   IS THE INTERMEDIATE OR PREPARATORY WORK INSTRUCTION.
20           MR. NOLAN:  RIGHT.  I THINK THAT IT'S CONFUSING TO
21   THE JURY.  THERE'S BEEN NO EVIDENCE AT ALL OF LIKE AN
22   INTERMEDIARY STEP.  IN A WAY IT SUGGESTS THAT
23   ONE INTERPRETATION HERE COULD BE THAT THE JURY COULD FIND
24   THAT NONE OF THE LATER PRODUCTS INFRINGE, BUT PERHAPS THE
25   PROTOTYPE DOLLS THAT WERE DISPLAYED IN THE NEW YORK AND
                                                      7922
```

```
 1    HONG KONG TOY FAIRS WERE INTERMEDIARY, AND THEY INFRINGE THE

 2    DRAWINGS.  BUT THERE'S NO PROOF OF ANY PROFITS DERIVED FROM

 3    ANY OF THAT.

 4              I -- I THINK THAT THIS COMES UP MORE IN

 5    COMPUTER -- COMPUTER TYPE OF CASES WHERE YOU'VE GOT

 6    ITERATIONS OF PROGRAMS THAT YOU'RE WORKING ON.  BUT I

 7    DON'T -- I, RESPECTFULLY, DO NOT BELIEVE THAT THIS HAS ANY

 8    BEARING IN THIS CASE AND COULD PROVE TO BE CONFUSING.

 9              THE COURT:  BUT DON'T WE HAVE ITERATIONS OF DOLLS,

10    BASICALLY, IN THIS CASE?

11              MR. NOLAN:   YOUR HONOR, RESPECTFULLY, OUR VIEW IS

12    THAT DOLL IS A DOLL, AND THAT THE ITERATION --

13              THE COURT:  WELL, I DON'T IF THAT'S BEEN YOUR

14    VIEW -- THINK ABOUT THAT STATEMENT, COUNSEL.

15              MR. NOLAN:  A DOLL --

16              THE COURT:  YOUR -- YOUR POSITION IS CERTAINLY --

17    AND -- AND I'M ACTUALLY SOMEWHAT -- TENTATIVELY, I -- I SIDE

18    WITH MGA ON THE VERDICT FORM THAT PRECISELY BECAUSE A DOLL

19    IS NOT JUST A DOLL, THAT -- THAT WE NEED TO BREAK OUT THE --

20    THE VARIOUS PRODUCTS THAT MATTEL CLAIMS ARE INFRINGING TO

21    FIND OUT WHAT THE JURY IS AND IS NOT FINDING.  AND IT'S

22    PRECISELY THAT A DOLL IS NOT A DOLL IS NOT A DOLL.  IT'S --

23    IT'S ONE CAN BE --

24              MR. NOLAN:  WELL --

25              THE COURT:  I -- I COULD SEE, THEORETICALLY, FOR
                                                          7923
```

```
 1    EXAMPLE, THE JURY COMING BACK AND SAYING THAT THE FIRST

 2    GENERATION ARE SUBSTANTIALLY SIMILAR TO THE DRAWINGS, BUT

 3    PERHAPS THE FIFTH GENERATION IS NOT.

 4            MR. NOLAN:  I -- I SEE WHAT YOU'RE SAYING.  IN --

 5    IN FACT, YOUR HONOR, WE WERE ACTUALLY SAYING THE SAME

 6    THING --

 7            THE COURT:  OKAY.

 8            MR. NOLAN:  -- WHEN I SAID THAT -- I MEAN, I -- I

 9    AGREE WITH THAT.

10            IF THAT'S THE INTERPRETATION THAT WAS BEING

11    APPLIED HERE, IF THIS IS ONE OF -- OF BREAKING THROUGH

12    GENERATIONS, THEN THAT ADDS SOME CLARITY TO US.

13            WE WERE JUST SITTING IN THE CONFERENCE ROOM . . .

14            THE COURT:  WELL, I'LL TAKE --

15            MR. NOLAN:  SO --

16            THE COURT:  -- I'LL TAKE A LOOK AT THIS AGAIN.

17            MR. NOLAN:  I DO -- I ALREADY COVERED EVERYTHING.

18    BUT I -- I CERTAINLY WASN'T INTENDING TO NOT ADOPT THE

19    COURT'S EARLIER VERSION THAT -- WE'RE NOT SAYING THAT EVERY

20    DOLL IS SIMILAR.

21            THE COURT:  OKAY.

22            MR. NOLAN:  THAT'S -- THAT'S NOT THE POINT THAT

23    I -- WHAT I WAS TRYING TO DRAW THE -- THE DISTINCTION IS

24    BETWEEN THE INTERMEDIATE -- THE PROTOTYPE FORM OF THE

25    DOLL --
```

1              THE COURT:  VERY WELL.

2              MR. NOLAN:  -- VERSUS THE ACTUAL DOLL.

3              THE COURT:  LET ME HEAR FROM MR. KENNEDY ON THE

4    DAMAGES, THEN.  DAMAGE INSTRUCTION.

5              MR. ROTH:  I'M AFRAID I'M A POOR SUBSTITUTE FOR

6    MR. KENNEDY.

7              THE COURT:  NOT AT ALL, MR. ROTH.  YOU'VE HANDLED

8    YOURSELF VERY WELL IN THIS CASE.

9              MR. ROTH:  AND MR. KENNEDY WILL ADDRESS THE

10   PUNITIVE DAMAGES ISSUES AT THE END.

11             THE COURT:  OKAY.

12             MR. ROTH:  I APOLOGIZE FOR THE VARIETY OF FOLKS.

13             STARTING THEN WHERE MR. NOLAN LEFT OFF --

14             THE COURT:  YES, PAGE 39.

15             MR. ROTH:  PAGE 39, NO PROBLEM.  PAGE 40, NO

16   ISSUE, AS -- AS MR. NOLAN INDICATED, WITH DROPPING OF THE 1

17   FROM THE PHASE.  THAT -- THAT CERTAINLY UNDERSTANDS -- IS

18   UNDERSTANDABLE.

19             WE DO -- AND WE'VE ARTICULATED THIS TO THE COURT A

20   NUMBER OF TIMES -- HAVE AN ISSUE WITH RESPECT TO VIRTUALLY

21   ALL OF THESE INSTRUCTIONS RELATED TO STATE LAW CLAIMS IN

22   TERMS OF WHAT THEY SPECIFY IS THE APPROPRIATE SPECIFIC ITEM

23   OF DAMAGE.  AND THERE'S JUST A WHOLE VARIETY OF ISSUES HERE.

24             WITH RESPECT TO THE INTERFERENCE CLAIM -- NOW I'M

25   ON PAGE 40.

                                                        7925

```
 1          THE COURT:  YES.

 2          MR. ROTH:  -- WE THINK THAT A -- A SENTENCE SHOULD

 3   BE ADDED TO THE SECOND PARAGRAPH AT THE END WHICH REFLECTS

 4   THE COURT'S DECISION IN ITS MOTION FOR SUMMARY JUDGMENT THAT

 5   THE INTERFERENCE CLAIM CANNOT BE BASED ON MATTEL'S RIGHTS TO

 6   BRATZ.

 7          SO IT WOULD READ SOMETHING LIKE, "ANY SUCH DAMAGES

 8   MAY NOT BE BASED ON MATTEL'S RIGHTS TO BRATZ."  THAT'S A

 9   VERY CLOSE PARAPHRASE OF THE COURT'S ORDER.

10          THE COURT:  ADDRESS THE CONFUSING, HOW THAT --

11   THE -- THE ARGUMENTS THAT ARE MADE.  THIS WAS LITIGATED

12   BETWEEN THE TWO PARTIES IN THEIR BRIEFS SO YOU -- YOU NEED

13   TO GO BEYOND SAYING -- I KNOW YOU THINK I SHOULD INCLUDE

14   THAT, BUT THERE'S -- THERE'S REASONS OFFERED IN OPPOSITION

15   TO THAT AS TO WHY THE COURT SHOULD NOT.  WHY DON'T YOU

16   ADDRESS THOSE REASONS.

17          MR. ROTH:  YOUR HONOR, IT'S DIFFICULT TO -- TO

18   ADDRESS THAT WITHOUT ENGAGING ONCE AGAIN IN THE PREEMPTION

19   DISCUSSION THAT WE'VE HAD.

20          WE BELIEVE THAT THE -- THE COURT, IN THE CONTEXT

21   OF THE INTENTIONAL INTERFERENCE CLAIM, MADE THE RIGHT

22   DISTINCTION.  AND THAT IS TO SAY, CLAIMS THAT INVOLVE AN

23   ADDITIONAL ELEMENT, THE CLAIMS ITSELF ARE NOT NECESSARILY

24   PREEMPTED, BUT THE REQUEST FOR -- FOR DAMAGES THAT ARE

25   NOTHING MORE THAN A -- THAN A REPLICATION OF A REQUEST FOR
```

1  DAMAGES ARISING UNDER THE COPYRIGHT ACT SHOULD NOT BE

2  PERMITTED.

3       SO THERE -- THERE ARE -- WHEN WE SAW LOTS OF

4  EVIDENCE IN THIS CASE ABOUT HARM THAT COULD GIVE RISE TO A

5  DAMAGE THEORY.

6       THE COURT:  I UNDERSTAND HOW THIS LEADS TO

7  DUPLICATIVE DAMAGES, WHICH THE COURT WAS GOING TO ADDRESS

8  IF -- IF IT'S CALLED UPON TO DO SO.  BUT -- AND I KNOW IT --

9  THERE'S -- THERE'S A CERTAIN LACK OF APPEAL, PARTICULARLY

10 FROM THE DEFENDANT'S PERSPECTIVE -- OF -- OF MAKING THIS

11 THEORETICAL DISTINCTION BETWEEN CLAIMS THAT END UP HAVING

12 THE SAME DAMAGES.  BUT THEY'RE PREDICATED ON -- ON TWO

13 DIFFERENT INSTRUCTIONS.

14      ONE IS PREDICATED ON A COPYRIGHT INTRINSIC CLAIM,

15 ONE IS PREDICATED ON STATE TORT LAW CLAIM.  THE TWO ARE,

16 UNDER THE LAW, SEPARATE AND DISTINCT EVEN THOUGH THEY RESULT

17 IN -- OR THEY TRIGGER SIMILAR REMEDIES OR SIMILAR DAMAGES.

18      AND THE -- THE COURT IS FINDING -- LET ME MAKE

19 THIS EXPLICIT IF IT HAS NOT BEEN CLEAR FROM THE IMPLICIT

20 INCLUSION OF THESE -- THAT THE MERE FACT THAT THE REMEDIES

21 ARE THE SAME DOES NOT RESULT IN THE PREEMPTION.

22      MR. ROTH:  UNDERSTOOD, YOUR HONOR.  OBVIOUSLY, WE

23 RESPECTFULLY DISAGREE.

24      THE COURT:  I UNDERSTAND -- I UNDERSTAND THAT.

25      MR. ROTH:  AND I WOULD REFER THE COURT TO

```
 1    JUDGE POSNER'S DECISION IN THE BUCKBU (PHONETIC) CASE, WHICH
 2    WE THINK IS --
 3              THE COURT:  WHICH YOU QUOTE FROM IN YOUR -- IN
 4    YOUR -- IN YOUR PAPERS.  I MEAN, THE COURT CERTAINLY
 5    RESPECTS JUDGE POSNER, BUT I --
 6              MR. ROTH:  OKAY.
 7              THE COURT:  VERY WELL.
 8              MR. ROTH:  AND OBVIOUSLY, THAT -- THAT IS OUR
 9    POSITION.
10              IN ADDITION, WE HAVE MADE, THROUGHOUT THE JURY
11    INSTRUCTIONS AND IN THE PAPERS THAT WE FILED WITH THIS
12    COURT, WE'VE POINTED TO A VARIETY OF CASES WHICH INDICATE
13    THAT, IN THE AIDING AND ABETTING CONTEXT, THE -- THE PROFITS
14    THAT MAY BE SOUGHT ARE THE PROFITS OF THE -- THE PARTY WITH
15    THE UNDERLYING FIDUCIARY OR RELATIONSHIP WITH THE -- WITH
16    THE PLAINTIFF, THAT WOULD MR. BRYANT.  SO IT WOULD BE
17    MR. BRYANT'S PROFITS ARE THE PROFITS AT ISSUE HERE.
18              IT'S TRUE THAT THERE ARE CASES THAT PROVIDE THAT
19    AN AIDER AND ABETTOR MAY BE JOINTLY LIABLE FOR THE SAME
20    PROFITS, THAT IS TO SAY, THE PROFITS OF THE UNDERLYING
21    WRONGDOER.
22              WE BELIEVE THAT, IN LIGHT OF THAT CASE LAW, AS
23    WE'VE CITED TO YOUR HONOR REPEATEDLY THROUGH THESE
24    INSTRUCTIONS, THERE SHOULD BE A LIMITATION ON DAMAGES IN THE
25    AIDING AND ABETTING CONTEXT TO MR. BRYANT'S PROFITS.
```

7928

1          IN ADDITION, WE HAVE MADE ARGUMENTS THROUGHOUT

2     THE -- THE PAPERS WITH RESPECT TO PREJUDGMENT INTEREST.

3     PREJUDGMENT INTEREST IS -- IS A CONCEPT PREMISED UPON MAKING

4     THE DEFENDANT WHOLE HERE.

5          AGAIN, THERE ARE THEORIES UNDER -- AS RELATES TO

6     THE STATE LAW CLAIMS WHERE MATTEL COULD BE SEEKING

7     RECOMPENSE FOR HARM, BUT THEY HAVEN'T PRESSED THOSE.  WHAT

8     THEY ARE SEEKING IS -- IS THE DISGORGEMENT OF MGA'S PROFITS.

9          IN THAT CONTEXT, WE THINK THAT, AS ASSOCIATED WITH

10    THOSE CLAIMS, THAT PREJUDGMENT INTEREST IS NOT -- IS NOT

11    APPROPRIATE BECAUSE IT'S NOT ABOUT MATTEL'S HARM.  IT'S

12    ABOUT MGA'S -- MGA'S ILL-GOTTEN GAINS.

13         THE COURT:  OKAY.

14         MR. ROTH:  AND TO THE EXTENT THE -- THE -- IT'S --

15    IT'S WHY THERE'S SORT OF ATTENTION IN -- IN A NUMBER OF

16    THESE INSTRUCTIONS BECAUSE THEY TALK -- FOR INSTANCE, PAGE

17    40 AND PAGE 41, THEY TALK IN TERMS OF HARM AND THEN LAY OUT

18    A DAMAGE THEORY AT THE BOTTOM THAT'S PREMISED UPON

19    DISGORGEMENT, WHICH IS NOT ABOUT HARM.

20         THE REASON THAT IT'S A BIT COMPLEX FROM OUR

21    PERSPECTIVE IS, GIVEN THE FACTS AS THEY'VE BEEN -- THIS CASE

22    HAS BEEN TRIED, THERE IS A THEORY OF HARM UNDER THESE --

23    UNDER THESE CLAIMS.  NOT THE DISGORGEMENT OF OUR PROFITS,

24    BUT THERE IS A THEORY OF HARM.

25         THERE'S -- YOU KNOW, CARTER BRYANT WORKED FOR TWO

```
 1    COMPANIES AT ONE TIME.  MAYBE THERE'S A THEORY OF HARM
 2    ASSOCIATED WITH THAT SALARY --
 3              THE COURT:  WELL, THEY'RE NOT -- THEY'RE NOT
 4    PURSUING THAT.  THEY'RE -- THEY'RE LOOKING AT A DIFFERENT
 5    HARM.
 6              MR. ROTH:  THEY'RE NOT -- THEY'RE NOT -- THEY'RE
 7    NOT PURSUING THAT.  THEN THEIR THEORY ISN'T BASED ON HARM.
 8    THEIR THEORY IS PREMISED UPON OUR ILL-GOTTEN GAINS.
 9              IT'S NOT DAMAGE.  IT'S NOT COMPENSATORY DAMAGE
10    THEY'RE SEEKING.  IT'S PREMISED UPON OUR ILL-GOTTEN GAINS.
11              HARM COULD HAVE BEEN -- THERE COULD HAVE BEEN SOME
12    THEORY EVEN BASED UPON OUR EXPECTATION OF THE BRATZ
13    INTELLECTUAL PROPERTY BASED UPON HOW IT MIGHT HAVE AFFECTED
14    MATTEL'S MARKET SHARE.
15              THE COURT:  YOU'RE -- YOU'RE NOT DISPUTING THAT
16    DISGORGEMENT OF PROFITS IS APPROPRIATE UNDER THESE THEORIES?
17              WELL, I -- I GUESS YOU ARE WITH RESPECT TO THE
18    AIDING AND ABETTING.  BUT WITH RESPECT -- OR ACTUALLY, IT'S
19    WHOSE PROFITS UNDER THAT.
20              MR. ROTH:  YES.
21              THE COURT:  YOU'RE SUGGESTING THAT IT'S JUST
22    CARTER.
23              BUT YOU'RE STILL NOT SUGGESTING THAT DISGORGEMENT
24    OF PROFITS IS AN APPROPRIATE THEORY.
25              MR. ROTH:  NO, I'M NOT SAYING --
```

7930

```
 1                THE COURT:  IN FACT, YOU SUBMITTED AN INSTRUCTION
 2   TO THAT EFFECT.
 3                MR. ROTH:  I AM NOT -- WE ARE NOT SAYING, AS A
 4   THEORETICAL MATTER, THE DISGORGEMENT OF PROFITS IS NOT
 5   INAPPROPRIATE AS -- AS A REMEDY.  IF THAT IS THE REMEDY,
 6   THERE ARE CERTAIN LIMITATIONS.  AND IT'S NOT -- IT'S NOT
 7   HARM.  IT'S ILL-GOTTEN GAINS.
 8                THE COURT:  SO YOU OBJECT TO THE USE OF THE WORD
 9   "HARM" IN THESE INSTRUCTIONS?
10                MR. ROTH:  WE DO.  WE DO TO THE EXTENT THAT IS THE
11   BASIS.
12                THE COURT:  YOU MUST NOW DECIDE HOW MUCH MONEY --
13   SHALL WE SIMPLY SAY "SHOULD BE AWARDED -- "HOW MUCH MONEY,
14   IF ANY" --
15                MR. ROTH:  YES.
16                THE COURT:  -- "SHOULD BE AWARDED AS DAMAGES"?
17                I MEAN, YOU CERTAINLY AGREE THAT THEY'RE CALLED
18   DAMAGES?
19                MR. ROTH:  YES, YOUR HONOR.
20                THE COURT:  OKAY.
21                MR. ROTH:  I MEAN, I COULD MAKE THE OPPOSITE
22   ARGUMENT THAT --
23                THE COURT:  I UNDERSTAND.
24                MR. ROTH:  BUT WE -- WE'VE -- AT SOME POINT, WE'VE
25   GOT TO COME UP WITH WORDS.
```

```
 1            THE COURT:   "SHOULD BE AWARDED AS DAMAGES."
 2       ALL RIGHT.   YOUR NEXT ARGUMENT.
 3            MR. ROTH:   YEAH.   LET'S JUST -- PRESSING FORWARD.
 4            PAGE 42.   THERE IS A CONCERN THAT WE HAVE, TO THE
 5  EXTENT THAT THE -- THE COURT ACCEPTS, AS IT MAY, THAT THE --
 6  ALL OF -- OF MGA'S PROFITS ARE ON THE TABLE AS A RESULT OF
 7  THE DISGORGEMENT THEORIES UNDER THE STATE LAW CLAIMS.
 8            WHAT ISN'T CLEAR FROM THE INSTRUCTIONS, AS -- AS I
 9  READ THEM, IS THE REQUIREMENT THAT MATTEL DRAW -- SORT OF
10  TRACE OR DRAW A CAUSAL LINK BETWEEN THE ALLEGED WRONGDOING
11  AND THE PROFITS.   BECAUSE WHAT WE'VE GOT IS WRONGDOING AND A
12  POOL OF PROFITS.   AND THAT IT IS -- IT IS -- IT IS IN A
13  SENSE, THE INVERSE OF THE APPORTIONMENT ANALYSIS UNDER THE
14  COPYRIGHT ITEM.   THE APPORTIONMENT IS JUST A FANCY WAY OF
15  THE COPYRIGHT LAWS WORKING OUT THE CAUSATION ARGUMENT.
16            SO WHAT WE WOULD PROPOSE WITH RESPECT TO THE
17  INSTRUCTION ON PAGE 42, LINE 7 READS "PROFITS OR
18  ADVANTAGES," AND WE WOULD INSERT "PROXIMATELY CAUSED BY
19  THESE SPECIFIC WRONGFUL ACTS."
20            THE COURT:   "PROXIMATELY CAUSED" --
21            MR. ROTH:   -- "BY THESE SPECIFIC WRONGFUL ACTS."
22            THE COURT:   -- "BY THESE SPECIFIC WRONGFUL ACTS."
23            THE USE OF THE WORD "PROXIMATELY" IS AS A LEGAL
24  TERM.   DO WE REALLY NEED THAT ADVERB IN THERE?
25            MR. ROTH:   WE WOULD ACCEPT "CAUSED BY THE SPECIFIC
                                                      7932
```

```
 1   WRONGFUL ACTS."
 2            THE COURT:  I THINK THE PHRASE THAT WE USED IN
 3   PHASE A WAS "SUBSTANTIALLY CAUSED."
 4            MR. ROTH:  YEAH, THERE --
 5            THE COURT:  ACTUALLY, NO, THAT -- THAT MIXES
 6   RIGHT -- NO.
 7            MR. ROTH:  YEAH.
 8            THE COURT:  "CAUSED BY THESE WRONGFUL ACTS."
 9   OKAY.
10            MR. ROTH:  AND I JUST WANTED TO ADD THE WORD
11   "SPECIFIC" BECAUSE WE -- WE WANT TO MAKE AN ARGUMENT ABOUT
12   THE FAILURE TO ADDUCE APPROPRIATE CAUSATION EVIDENCE AS
13   RESPECTS THE STATE LAW CLAIMS.
14            THE COURT:  HASN'T THAT ALREADY BEEN DECIDED,
15   COUNSEL?  CAUSATION HAS BEEN DECIDED IN PHASE A.
16            MR. ROTH:  WELL, THAT THE -- IT'S -- CAUSATION
17   IS -- IS A --
18            THE COURT:  I MEAN, I UNDERSTAND YOUR ARGUMENT
19   WHERE YOU WANT TO LINK UP THE CAUSATION BETWEEN THE HARM --
20   NOT THE HARM -- THE -- THE -- THE TORT AND THE DAMAGES.  BUT
21   IN TERMS OF THE CAUSATION, I -- I DON'T WANT TO CONFLATE --
22   I DON'T WANT THE JURY RECONSIDERING THE ISSUE OF WHETHER OR
23   NOT THE ACTIONS BY MR. LARIAN AND MGA AND MGA HONG KONG
24   CAUSED --
25            MR. ROTH:  AS -- AS -- FROM A LIABILITY
```

```
 1   PERSPECTIVE, CAUSED HARM.  UNDERSTOOD THAT THAT'S BEEN

 2   RESOLVED, BUT THERE -- THERE STILL NEEDS TO A -- A LINKAGE

 3   MADE BETWEEN THE ACTS --

 4             THE COURT:  BETWEEN THE PROFITS OR ADVANTAGES

 5   AND -- AND FROM THE TORT.

 6             MR. ROTH:  YES.

 7             THE COURT:  THEN I UNDERSTAND YOUR ARGUMENT.

 8   THANK YOU.

 9             MR. ROTH:  MOVING ON TO PAGE 43.

10             THE COURT:  WELL, WAIT.  DON'T WE HAVE THAT,

11   "BECAUSE OF THEIR WRONGFUL ACTS"?  I MEAN, THE LANGUAGE IS

12   ALREADY THERE.  I WAS JUST -- I WAS INSERTING IT IN BETWEEN

13   "ADVANTAGES" AND "BECAUSE," BUT THE "BECAUSE," THAT'S --

14   THAT'S THE CAUSAL CONNECTION, "BECAUSE OF THESE WRONGFUL

15   ACTS."

16             "ACCORDINGLY, IF YOU FIND THAT MGA AND/OR ISAAC

17   LARIAN OBTAINED PROFITS OR ADVANTAGES BECAUSE OF THESE

18   WRONGFUL ACTS, THOSE PROFITS AND ADVANTAGES SHOULD BE

19   AWARDED TO MATTEL."

20             I THINK YOU ALREADY HAVE THE BASIS TO MAKE THE

21   ARGUMENT WHAT YOU WANT TO MAKE.

22             MR. ROTH:  WELL, WE'D LIKE TO THEN, AT THE VERY

23   LEAST, ADD THE WORD "SPECIFIC."

24             THE COURT:  BETWEEN "THESE" AND "WRONGFUL."

25             MR. ROTH:  YES.
```
                                                        7934

```
1              THE COURT:  OKAY.

2              MR. ROTH:  PAGE 43, YOUR HONOR.  LINES 19 AND 20,

3   "REASONABLE COMPENSATION FOR THE TIME AND MONEY SPENT BY

4   MATTEL IN ATTEMPTING TO RECOVER THIS PROPERTY."

5              THERE'S BEEN NO EVIDENCE SUBMITTED IN THIS CASE

6   ABOUT WHAT THAT MIGHT BE.  I THINK IT'S JUST GOING TO LEAD

7   TO CONFUSION, SO WE'D STRIKE THAT.

8              PAGE 44, I THINK WE'RE IN ACCORD.  I JUST WANT TO

9   MAKE IT CLEAR.  MR. PROCTOR SUGGESTED THAT THE

10  SECOND SENTENCE BE STRUCK.

11             THE COURT:  RIGHT.

12             MR. ROTH:  AND I THINK THE WORD "IN ADDITION"

13  NEEDS TO GO AS WELL.

14             THE COURT:  YES.

15             MR. ROTH:  RIGHT.

16             THE COURT:  AND -- AND THE WORD "ALSO."

17             MR. ROTH:  RIGHT.

18             NEXT, PAGE 46.

19             THE COURT:  OKAY.

20             MR. ROTH:  AND I THINK THAT THIS -- WHAT YOU HAVE

21  IS FAIRLY CLOSE TO OUR DISCUSSION OF LAST WEEK.  I THINK THE

22  LAST SENTENCE READS:  "WHEN THE COPYRIGHTED PORTIONS ARE SO

23  INTERMINGLED WITH THE REST OF THE INFRINGING WORK THAT THEY

24  CANNOT WELL BE DISTINGUISHED FROM IT, THE ENTIRE PROFITS

25  REALIZED BY THE DEFENDANTS ARE TO BE GIVEN TO THE
```

```
 1   PLAINTIFF."

 2           WE THINK THAT, IN TERMS OF JUST BALANCING OUT THAT

 3   LANGUAGE, THAT AN ADDITIONAL SENTENCE FROM THE SAME SECTION

 4   IN PATTRY, SECTION 22-147, SHOULD BE ADDED, WHICH WOULD

 5   READ, "MGA DOES NOT NEED TO DEMONSTRATE THAT PROFITS NOT

 6   ATTRIBUTABLE TO" --

 7           THE COURT:  HOLD -- HOLD ON A SECOND.

 8           MR. ROTH:  SORRY.

 9           THE COURT:  "DOES NOT NEED TO" --

10           MR. ROTH:  -- "DEMONSTRATE THAT PROFITS NOT

11   ATTRIBUTABLE TO THE INFRINGEMENT ARE," QUOTE, "COMPLETELY

12   FREE," CLOSE QUOTE, "OF INFRINGING MATERIAL."

13           THE COURT:  -- "NOT ATTRIBUTABLE TO INFRINGEMENT

14   ARE COMPLETELY FREE OF INFRINGING MATERIAL."

15           MR. ROTH:  RIGHT, JUST TO GIVE BALANCE TO THE

16   PRIOR SENTENCE.

17           THE COURT:  ALL RIGHT.

18           MR. PROCTOR:  IF I MAY INQUIRE, YOUR HONOR, I'M --

19   I'M JUST NOT SURE WHAT -- IS THIS A PROPOSAL THAT THIS BE

20   INSERTED OR IS THIS A -- AN ADDITIONAL LINE?

21           MR. ROTH:  IT'S AN ADDITIONAL LINE AT THE END OF

22   THAT PARAGRAPH.

23           THE COURT:  THAT'S THE SUGGESTION OF COUNSEL.

24           MR. ROTH:  YES.

25           OKAY.  NEXT, PAGE 47.  AND HERE'S WHERE WE MAY
```

```
 1   NEED TO HAVE A LITTLE BROADER CONVERSATION.
 2            THE COURT IS AWARE THAT WE SUBMITTED A WILLFUL
 3   INFRINGEMENT INSTRUCTION.
 4            THE COURT:  RIGHT.
 5            MR. ROTH:  THAT I THINK, IN THE CONTEXT OF WILLFUL
 6   INFRINGEMENT, THERE ARE TWO ISSUES.
 7            THE COURT:  HOLD ON A SECOND.  LET ME FIND THAT
 8   INSTRUCTION.
 9            MR. ROTH:  SURE.
10            THE COURT:  LITERALLY, I DIDN'T HAVE THIS IN FRONT
11   OF ME WHEN I -- OKAY.
12            ALL RIGHT.  I GUESS I DID.  THIS IS PRETTY CLOSE.
13            ALL RIGHT.  WHAT -- WHAT ARE WE MISSING HERE
14   FROM --
15            MR. ROTH:  THERE -- THERE ARE TWO ISSUES, YOUR
16   HONOR, I THINK THAT NEED TO BE ADDRESSED.  THE FIRST IS WHAT
17   DOES "WILLFUL INFRINGEMENT" MEAN?  AND THE SECOND IS IF
18   THERE'S A FINDING OF WILLFUL INFRINGEMENT, WHAT'S THE
19   CONSEQUENCE?
20            THE COURT:  RIGHT.
21            MR. ROTH:  WITH RESPECT TO THE FIRST POINT, THEY
22   BORROWED FROM -- FROM THE STATUTORY DAMAGES SECTION 8A, A
23   JURY INSTRUCTION ABOUT WHAT WILLFUL INFRINGEMENT MEANS.
24   THE -- THE CASE LAW -- AND THIS INSTRUCTIONS COMES ENTIRELY
25   FROM THE CASE LAWS.  THERE IS NO WILLFUL INFRINGEMENT
```

```
 1   PORTION OF THE STATUTE UNDER THE PROFIT SECTION UNDER WHICH
 2   THEY'RE PROCEEDING.
 3           THAT THE -- THE ONLY CASES THAT REALLY DEFINE WHAT
 4   WILLFUL INFRINGEMENT MEANS TALK IN TERMS OF THE LANGUAGE
 5   THAT WE USE, WHICH IS THE DEFENDANT DELIBERATELY INTENDED TO
 6   PLAGIARIZE THE PLAINTIFF'S COPYRIGHT.  THAT'S -- THAT'S THE
 7   LANGUAGE USED WHEN DEFINING WHAT -- WHAT IT MEANS TO
 8   WILLFULLY.
 9           SECONDLY, AND THIS IS FRANKLY WHERE THERE'S --
10   THERE'S JUST A DIFFICULT QUESTION THAT HAS TO BE RECONCILED
11   AMONG THE CASES.  THERE DOES APPEAR TO BE FAIRLY GENERAL
12   AGREEMENT ABOUT THE EFFECT OF THAT VIS-A-VIS TAXES.  AND
13   YOU'LL RECALL THAT -- THAT WE'VE HAVE DISCUSSION ABOUT THAT.
14
15           THERE IS NOT AGREEMENT AT ALL ABOUT THE EFFECT OF
16   A FINDING OF WILLFUL INFRINGEMENT ON THE OVERHEAD ANALYSIS.
17           MATTEL IS RELYING ON SOME -- I BELIEVE AN EIGHTH
18   CIRCUIT CASE OUT OF CIRCUIT AUTHORITY FOR THE PROPOSITION
19   THAT THE -- YOU KNOW, THE OVERHEAD IS STRUCK.
20           THERE HAS NEVER BEEN SUCH A HOLDING IN THE NINTH
21   CIRCUIT.  THE NINTH CIRCUIT HAS NEVER DETERMINED THAT.  THE
22   SECOND CIRCUIT HAS MADE IT FAIRLY CLEAR THAT, IN THE CONTEXT
23   OF A FINDING OF WILLFUL INFRINGEMENT, THE RESULT IS THAT, IN
24   A SENSE, A HIGHER BURDEN IS PLACED UPON THE DEFENDANT TO
25   DRAW A CONNECTION BETWEEN THE OVERHEAD BEING CLAIMED AND THE
```

1    INFRINGING PRODUCTS.

2            SO, YOU KNOW, THAT IS WHAT WE SUGGEST -- I MEAN,

3    RECOGNIZING THAT IT'S NOT A CLEAR, BRIGHT-LINE RULE, THE

4    FACT OF THE MATTER IS THERE IS NO CLEAR, BRIGHT-LINE RULE

5    THAT OVERHEAD IS AUTOMATICALLY IGNORED IN THE CONTEXT OF A

6    FINDING OF WILLFUL INFRINGEMENT.

7            THE COURT:  ALL RIGHT.

8            MR. ROTH:  SO, I MEAN, WE -- WE WOULD, YOU KNOW --

9

10           THE COURT:  VERY WELL.

11           MR. ROTH:  FOR INSTANCE, IN THE SHELDON CASE,

12   WHICH IS THE SEMINAL CASE IN THIS CONTEXT, GENERAL OVERHEAD

13   WAS PERMITTED IN THE -- IT WAS INDICATED IN THAT CONTEXT,

14   THAT GENERAL OVERHEAD WOULD BE PERMITTED, EVEN THE FINDING

15   OF WILLFUL INFRINGEMENT.

16           THE COURT:  I SEE IT.  ALL RIGHT.  I'LL TAKE A

17   LOOK AT THAT, COUNSEL.

18           MR. ROTH:  SO -- OKAY.

19           MR. KENNEDY IS GOING TALK ABOUT PUNITIVE DAMAGES.

20   I THINK THAT THERE WERE --

21           THE COURT:  WHY DON'T YOU RESPOND TO MR. PROCTOR'S

22   ARGUMENTS ON MITIGATION.

23           MR. ROTH:  I -- I DON'T DISAGREE WITH HIS -- I

24   THINK, AGAIN, I DON'T DISAGREE WITH HIS VIEW THAT --

25           THE COURT:  THAT IT COMES OUT.

                                                    7939

1          MR. ROTH:  YEAH.

2          THE COURT:  I WILL ALSO MODIFY THE LANGUAGE ON THE

3    PREPONDERANCE OF THE EVIDENCE INSTRUCTION BECAUSE NOW

4    THERE'S NO AFFIRMATIVE DEFENSE LEFT, SO I WILL JUST TALK

5    ABOUT CLAIMS.

6          MR. ROTH:  THEN, IN TERMS OF THEIR SUPPLEMENTAL

7    PROPOSED INSTRUCTIONS, THERE'S A COUPLE OF -- OF ISSUES.

8          THE COURT:  GIVE ME ONE SECOND, COUNSEL.

9          MR. ROTH:  I'M SORRY.

10          THE COURT:  OKAY.  VERY GOOD.

11          SUPPLEMENTAL INSTRUCTIONS.  I HAVE COMPETITOR

12    PRODUCTS, MULTIPLE CLAIMS, OTHER INVESTIGATIONS, AND --

13          MR. ROTH:  INJUNCTIVE RELIEF.

14          THE COURT:  YEAH.  AND THERE'S ONE MORE.  AND

15    INJUNCTIVE RELIEF.

16          MR. ROTH:  YEAH.  I CAN DEAL WITH A FEW OF THESE,

17    YOUR HONOR.

18          WITH RESPECT TO THE DUPLICATIVE DAMAGES, THE

19    PROB -- IT SORT OF DEPENDS ON -- ON WHERE WE END UP WITH THE

20    VERDICT FORM.  THE VERDICT FORM THAT MATTEL IS -- IS

21    SUGGESTING, I THINK, WOULD -- WOULD BASICALLY PRECLUDE YOUR

22    HONOR FROM BEING ABLE TO MAKE THE KIND OF ADJUSTMENTS THAT

23    MATTEL IS SUGGESTING BE MADE AFTER A VERDICT.

24          IF -- THERE WELL COULD BE -- WHAT IT SIMPLY ASKS

25    FOR ARE DAMAGES ASSOCIATED WITH EACH OF THE CLAIMS.  AND

7940

```
 1   THERE -- I DON'T KNOW HOW, IF YOU WERE TO ACCEPT THAT
 2   VERDICT FORM, YOU WOULD HAVE A -- A BASIS TO -- TO DECIDE
 3   WHETHER DAMAGES WERE DUPLICATIVE OR NOT.
 4            I MEAN, IT IS CERTAINLY CONCEIVABLE THAT THERE
 5   COULD BE NUMBERS ASSOCIATED WITH THE STATE LAW CLAIMS THAT
 6   ARE DIFFERENT THAN THE COPYRIGHT CLAIM, AND UNLESS WE KNOW
 7   WHAT THE BASIS FOR THAT IS, UNLESS WE -- UNLESS WE HAVE SOME
 8   INDICATION THAT THERE'S AN UNDERSTANDING ON THE PART OF THE
 9   JURY THAT THERE --
10            THE COURT:  I DEFINITELY AGREE WITH YOU, MR. ROTH.
11   THERE IS A CONNECTION BETWEEN THIS INSTRUCTION AND THE
12   EXTENT TO WHICH THE -- THE JURY FORM PERMITS THE JURY TO
13   SPELL OUT THOSE MULTIPLE DAMAGES.
14            MR. ROTH:  SO I THINK -- I THINK THAT IF WE CAN
15   WORK OUT THE -- THE VERDICT FORM THAT WE MAY NOT HAVE SO
16   MUCH OF A PROBLEM WITH THE INSTRUCTION.
17            THE COURT:  VERY GOOD.
18            MR. ROTH:  WITH RESPECT TO THE INJUNCTION --
19            THE COURT:  IT HAS COME UP, PARTICULARLY WITH
20   THE -- THE EXPERTS ON THE DAMAGES ASKING THEORETICALLY WHAT
21   HAPPENS IF THE COURT DOES SOMETHING OR THE COURT DOESN'T DO
22   SOMETHING.  I REALLY DON'T WANT THE JURY THINKING ABOUT THAT
23   WHEN THEY DECIDE ON DAMAGES, WHETHER THE COPYRIGHT'S GOING
24   TO BE WITH MATTEL OR MGA OR WHAT HAVE YOU.
25            MR. ROTH:  YOUR HONOR -- AND THIS REVISITS A
```

7941

1   DISCUSSION THAT WE HAD -- WE HAD A COUPLE WEEKS BACK --

2   THE -- THE FACT OF THE MATTER IS THAT -- THAT -- THAT MATTEL

3   HAS PROFFERED A DAMAGE THEORY WHICH IS PREMISED UPON FUTURE

4   EVENTS.  THEY -- THEY HAVE SUGGESTED TO THE JURY A SET OF

5   CIRCUMSTANCES THAT THEY BELIEVE WILL INURE IN THE FUTURE.

6          THEY HAVE ALSO SUGGESTED IN -- IN THEIR OPENING

7   STATEMENT THAT THEY BELIEVE THAT MGA SHOULD HAVE NO PROFITS

8   ASSOCIATED WITH BRATZ.

9          HAVING -- HAVING DONE THAT, HAVING -- HAVING

10  PROFFERED A THEORY, A DAMAGE THEORY BASED UPON WHAT THEY

11  BELIEVE WILL HAPPEN IN THE FUTURE, GIVEN THEIR ASSUMPTIONS

12  ABOUT THE FUTURE, WE BELIEVE THAT WE ARE PERMITTED TO -- TO

13  SUGGEST THAT THERE IS A POTENTIAL LIKELIHOOD OF A DIFFERENT

14  SET OF CIRCUMSTANCES WHICH RENDERS --

15         THE COURT:  HOW WOULD THE JURY WEIGH THAT?  I

16  MEAN, THIS IS -- THIS IS CONTINGENT UPON WHAT THE COURT DOES

17  AFTER IT'S CONSIDERED EQUITABLE DEFENSES, AFTER IT'S

18  CONSIDERED A VARIETY OF THINGS THAT ARE NOT BEFORE THIS

19  JURY, COULD NOT BE BEFORE THIS JURY.

20         MR. ROTH:  THE JURY --

21         THE COURT:  HOW WOULD THE JURY INTELLIGENTLY GO

22  ABOUT FACTORING THAT IN?

23         MR. ROTH:  WELL, THE JURY -- THE WAY WE BELIEVE IT

24  SHOULD BE FACTORED IN IS TO THE EXTENT TO WHICH THE DAMAGE

25  THEORY IS SUFFICIENTLY CERTAIN OR NOT.  THE DAMAGE THEORY

7942

```
 1   THAT THEY PROFFERED BASED UPON FUTURE EVENTS SUGGESTS

 2   THAT -- THAT IT IS NOT SPECULATIVE THAT THERE WILL BE A

 3   CERTAIN STREAM OF PROFITS INTO THE FUTURE.

 4              HAVING INTERJECTED THAT INTO THE CASE AND HAVING

 5   SUGGESTED -- HAVING TOLD THE JURY THAT THERE SHOULD BE NO

 6   FUTURE PROFITS, THEY'VE NOW BASICALLY OPENED THE DOOR TO

 7   A -- A -- YOU KNOW, FACTS WHICH SUGGEST THAT THAT IS NOT

 8   NECESSARILY GOING TO BE THE CASE.

 9              THE COURT:  ALL RIGHT.  I UNDERSTAND YOUR

10   ARGUMENT.  I'LL HEAR FROM MATTEL ON THIS.

11              IS THERE ANYTHING ELSE, COUNSEL?

12              MR. NOLAN:   YOUR HONOR, I'M -- I'M SORRY, I JUST

13   -- MAY I GO BACK TO THE MITIGATION INSTRUCTION?  I JUST WANT

14   TO TAKE --

15              THE COURT:  IS IT BACK IN?

16              MR. NOLAN:  I RESPECTFULLY WOULD SUBMIT IT SHOULD

17   BE UNDER THE FOLLOWING NOTION.

18              YOUR HONOR, I THINK THERE IS EVIDENCE IN THIS

19   CASE, AND I'VE ALWAYS BEEN FOCUSED ON THE NAME BRATZ AND THE

20   USE OF THE NAME BRATZ.  AND OUR ARGUMENT WOULD BE TO COMBINE

21   A COUPLE OF EVENTS THAT THEY'VE INTRODUCED INTO THE RECORD,

22   AND SO HAVE WE.  AND THAT IS THAT, ONCE THEY SAW THE NAME

23   BRATZ WAS BEING USED, REGARDLESS OF WHETHER OR NOT IT GAVE

24   THEM NOTICE THAT THE DRAWINGS WERE DONE WHILE AT MATTEL, IT

25   GAVE NOTICE THAT A TERM THAT THEY CONTEND TO BE CONFIDENTIAL
```

1   AND PROPRIETARY TO MATTEL, THAT IS, THE NAME "BRATZ" TIED TO

2   A FASHION DOLL, THAT THEY COULD HAVE, MUCH LIKE THEY SENT A

3   CEASE-AND-DESIST LETTER WITH RESPECT TO THE USE OF CERTAIN

4   PROPRIETARY DATA ON THE WEBSITE, THE FAN WEBSITE, THE YAHOO

5   WEBSITE --

6          THE COURT:  WHAT DOES -- WHAT DOES THE EVIDENCE

7   SHOW IN TERMS OF WHEN MATTEL KNEW THAT BRATZ WAS THEIR

8   PROPRIETARY INFORMATION?

9          MR. NOLAN:   YOUR HONOR, THEY CONTEND THAT THEY

10  KNEW THAT BRATZ WAS BEING CONSIDERED AS THE NAME FOR DIVA

11  STARZ.  THEY INTRODUCED INFORMATION -- THERE'S AN OUTSIDE

12  VENDER, LINKER, STEVE LINKER, WHO GAVE THEM A LIST FOR DOLL

13  NAMES.  AND ONE OF THEM WAS BRATZ.

14         AND THEIR ARGUMENT, IN PHASE 1-A, WAS THAT THAT

15  ALSO TIED IT TO THE 1999-2000 EMPLOYMENT TIME PERIOD.

16         AND SO, YOUR HONOR, THAT'S THE POINT.  AND WE

17  SOMETIMES BUILD A CAMEL ON THIS CASE BECAUSE WE -- YOU KNOW,

18  WE WERE WORKING ON THE COPYRIGHT OVER THE WEEKEND.  I DIDN'T

19  GET A CHANCE TO TALK TO MR. ROTH THIS MORNING.  BUT I

20  CLEARLY THINK THAT THAT WOULD GO INTO MITIGATION --

21  MEDIATION -- I'M SORRY -- MITIGATION, BECAUSE IT'S

22  INTERESTING WHAT WE DID.

23         THERE IS ALSO EVIDENCE THAT MGA, WHEN ONE OF ITS

24  EMPLOYEES LEFT AND WE HAD REASON TO SUSPECT THAT THEY WERE

25  USING PROPRIETARY INFORMATION, MATTEL INTRODUCED A LETTER

                                                        7944

```
 1    FROM MGA TO THAT EMPLOYEE MAKING CLAIMS AND ASKING HIM TO
 2    CEASE AND DESIST USING PROPRIETARY INFORMATION.
 3              ONCE THEY SAW IT AT THE NEW YORK TOY FAIR OR THE
 4    HONG KONG TOY FAIR AND THEY TOOK THE PHOTOGRAPHS AND THE
 5    PICTURES WERE THERE, WE THINK THAT'S WHEN THE MITIGATION
 6    COULD HAVE STARTED.  THEY COULD HAVE SIMPLY SAID -- SENT A
 7    LETTER TO US ON THE CEASE-AND-DESIST NATURE, OR EXPLORING IT
 8    WITH CARTER BRYANT OR EVEN WRITING A LETTER TO CARTER BRYANT
 9    SAYING, "AS A FORMER EMPLOYEE, WE NOW REALIZE THAT YOU'RE
10    AFFILIATED WITH BRATZ."  THAT GOES DIRECTLY TO MITIGATION.
11              NOT ON THE DRAWINGS.  I'M NOT TRYING TO REARGUE
12    STATUTE OF LIMITATIONS, RESPECTFULLY, YOUR HONOR.
13              THE COURT:  I UNDERSTAND.
14              MR. NOLAN:  THIS BRATZ NAME IS A REAL CRITICAL
15    ISSUE, AND THEY GET SOME BENEFIT FROM IT.  BUT I ALSO THINK,
16    BY PUTTING THAT INTO THE MIX, THEY ALSO GET SOME DOWNSIDE
17    POTENTIAL WITH THIS JURY.  THEY SHOULD HAVE KNOWN.
18              THE COURT:  OKAY.  ALL RIGHT.  THAT'S ALL I --
19              OH, NO.  MR. KENNEDY.  I'M SORRY.  PUNITIVE --
20    PUNITIVE DAMAGES.
21              MR. KENNEDY:  YOUR HONOR, I APPRECIATE THE COURT
22    LETTING US DIVIDE IT UP THIS WAY.
23              THE PUNITIVE DAMAGE INSTRUCTION STARTS AT PAGE 49.
24
25              THE COURT:  I'M THERE.
```

1          MR. KENNEDY:  MY COMMENTS ARE RESTRICTED SOLELY TO

2     PAGE 51, STARTING AT LINE 3, WITH SECTION A.  AND MY PLEA IS

3     THAT SECTION A BE GIVEN THE WAY IT APPEARS IN CACI.

4          AS YOUR HONOR WILL RECALL, THERE ARE FIVE FACTORS

5     UNDER A THAT APPEAR IN CACI, AS IT WAS DRAFTED.  AND MATTEL

6     HAS SIMPLY TAKEN OUT THREE OF THOSE.

7          THE FIRST THREE, AS YOUR HONOR MAY RECALL, ARE

8     WHETHER THE CONDUCT CAUSED PHYSICAL HARM, WHETHER THE

9     DEFENDANT DISREGARDED THE HEALTH AND SAFETY OF OTHERS, AND

10    WHETHER THE PLAINTIFF WAS EMOTIONALLY OR ECONOMICALLY

11    VULNERABLE.

12         AND MATTEL HAS SAID, "WELL, THIS ISN'T A CASE

13    INVOLVING PERSONAL INJURY OR WRONGFUL DEATH, SO WHAT'S THAT

14    HAVE TO DO WITH THE MIX?"

15         I BELIEVE THIS HAS ALL BEEN BRIEFED BEFORE, SO I

16    WILL NOT BE OFFENDED IF YOUR HONOR SAYS, "I KNOW ALL THAT,

17    MR. KENNEDY," BUT THOSE FIVE FACTORS ARE LIFTED ALMOST

18    VERBATIM OUT OF CAMPBELL VS. STATE FARM, WHICH WAS NOT A

19    PERSONAL INJURY OR WRONGFUL DEATH CASE.

20         AND IT'S AT PAGE 418 WHERE THE COURT SAYS,

21    "REPREHENSIBILITY IS THE SOLE MOST IMPORTANT FACTOR IN

22    AWARDING PUNITIVE DAMAGES."  AND THEN SAYS, "HERE ARE THE

23    FIVE FACTORS THAT COURTS SHOULD CONSIDER IN DETERMINING

24    REPREHENSIBILITY."

25         NOW, IF THINGS HAD STOPPED THERE, I COULD SEE YOUR

7946

1    HONOR SAYING, "WELL, THIS IS FOR ME TO USE IN REVIEWING

2    AFTER THE VERDICT."

3          THE COURT:  NO, NO.  WE'RE ASKING THE JURY TO DO

4    THIS.  BUT WHAT THE COURT SEEMED TO BE DOING IN THAT CASE IS

5    SETTING FORTH A COMPREHENSIVE LIST OF THE FACTORS THAT ARE

6    CONSIDERED.

7          THERE ARE MANY INSTANCES WHERE JURY INSTRUCTIONS

8    ARE FASHIONED IN SUCH A WAY THAT THEY WILL HAVE

9    COMPREHENSIVE LIST, AND THEN IT IS UP TO THE COURT TO ONLY

10   INSTRUCT ON THOSE FACTORS WHICH ARE RELEVANT, OR ONCE THERE

11   IS CONCEIVABLY EVIDENCE IN -- IN THIS -- IN A PARTICULAR

12   CASE.

13         I MEAN, THE DANGER, I THINK, OF LISTING ALL OF

14   THESE FACTORS IS SUGGESTING THAT BECAUSE THERE'S NOT

15   PHYSICAL HARM, THEREFORE THERE SHOULD BE NO PUNITIVE

16   DAMAGES.  BECAUSE THERE IS NO HEALTH AND SAFETY PROBLEM,

17   THERE SHOULD NOT BE PUNITIVE DAMAGES.  BECAUSE THERE'S NO

18   PARTICULARLY VULNERABLE -- EMOTIONALLY VULNERABLE PLAINTIFF,

19   THERE SHOULD BE NO PUNITIVE DAMAGE.  BUT THAT'S -- THERE --

20   THERE -- IN THE NATURE OF THIS CASE, THERE -- THERE COULDN'T

21   OR WOULDN'T BE.

22         MR. KENNEDY:  AND THAT'S WHY THIS LANGUAGE IS SO

23   CRUCIAL IN THIS CASE IN THAT MR. LARIAN'S REPREHENSIBILITY

24   NEEDS TO BE JUDGED ON THE TOTAL CONTINUUM OF WHAT'S INVOLVED

25   AND --

7947

```
1          THE COURT:  I AGREE OF WHAT'S INVOLVED, BUT THAT'S
2   NOT INVOLVED HERE.
3          MR. KENNEDY:  NO, OF WHAT'S INVOLVED IN TERMS OF
4   WHAT IS REPREHENSIBLE.
5          AND I THINK, AT A MINIMUM, WE'RE CERTAINLY
6   ENTITLED TO ARGUE THE THINGS THAT DIDN'T HAPPEN IN THIS CASE
7   IN TERMS OF WHAT WOULD MATTEL BE SEEKING IN PUNITIVE DAMAGES
8   IF --
9          THE COURT:  HOW ABOUT LIKE IN A CRIMINAL CASE?
10  THIS AFTERNOON I HAVE A SENTENCING.  SOMEBODY'S STANDING UP
11  AND SAYING, "OKAY, WELL LET ME LIST ALL THE THINGS THAT THIS
12  DEFENDANT DIDN'T DO.  HE DIDN'T MURDER SOMEBODY.  HE DIDN'T
13  ROB THE BANK ACROSS THE STREET.  HE DIDN'T ROB THE LIQUOR
14  STORE DOWN THE STREET.  HE JUST ROBBED THE BANK IN
15  QUESTION."
16         MR. KENNEDY:  OKAY.
17         THE COURT:  CERTAINLY, WHEN YOU TALK ABOUT
18  SENTENCING FACTORS, THE COURT CAN CONSIDER NOT ONLY THE
19  RELEVANT CONDUCT BUT ANY OTHER FACTORS THAT BEAR ON THE
20  DEFENDANT'S CULPABILITY.  BUT TO LIST OUT THINGS AND THEN TO
21  ARGUE THINGS THAT A DEFENDANT DID NOT DO SEEMS TO BE NOT
22  ONLY IRRELEVANT BUT POTENTIALLY PREJUDICIAL.
23         MR. KENNEDY:  JUST THE OPPOSITE, YOUR HONOR.  THAT
24  THIS IS NOT JUST A LIST OF THE BANKS JOHN DILLINGER DIDN'T
25  ROB THIS IS WHERE, IN THE ORDER OF WRONGDOING -- WHERE IN
```

7948

1   THE OVERALL PATTERN OF REPREHENSIBILITY, DOES MR. LARIAN'S
2   CONDUCT FALL?
3          AND AS WE KNOW, THE SUPREME COURT HAS TOLD US IN
4   RECENT TIMES THAT, WHEN YOU'RE DEALING WITH ECONOMIC HARM
5   ONLY, NOBODY GOT HURT OR KILLED, A ONE-TO-ONE RATIO MAY BE
6   THE OUTERMOST LIMITS, AND THAT CLEARLY ECONOMIC HARM ONLY IS
7   LESS REPREHENSIBLE THAN PHYSICAL HARM AND DAMAGE.
8          THE SUPREME COURT HAS SAID THAT.  AND MORE
9   IMPORTANTLY, CALIFORNIA HAS SAID JURIES SHOULD BE TOLD THAT.
10  THERE ARE NO DIRECTIONS FOR USE THAT SAY YOU USE ONLY SOME
11  OF THE FACTORS IN SOME CASES AND NOT IN OTHERS.
12         THE COURT:  WHAT IS -- WHAT IS YOUR BEST CASE ON
13  THAT POINT THAT JURIES SHOULD BE TOLD ABOUT PHYSICAL HARM OR
14  EMOTIONAL DISTRESS OR ANY OF THESE OTHER FACTORS?  WHAT'S
15  YOUR BEST AUTHORITY?
16         THE WITNESS:  I DON'T BELIEVE THERE IS A CASE ONE
17  WAY OR ANOTHER.  MY BEST --
18         THE COURT:  THEN I MISUNDERSTOOD YOU.  I THOUGHT
19  YOU JUST TOLD ME THAT THERE ARE CALIFORNIA CASES THAT SAY
20  THAT JURORS MUST BE TOLD THIS.
21         MR. KENNEDY:  NO, I SAID, CACI, THE JURY
22  INSTRUCTION HAS TOLD US, AND THERE'S --
23         THE COURT:  I -- I UNDERSTAND WHAT CACI DOES.  I
24  KEEP -- I KEEP PRONOUNCING IT CACI, AND I'VE GOT TO
25  APOLOGIZE.  I DO THAT BECAUSE, WHEN I WAS IN THE

7949

```
 1    O.C. ATTORNEY'S OFFICE, I PROSECUTED VINCENT DOMINIC CACI,

 2    C-A-C-I.   IT WAS ONE OF THE LARGER LCN FIGURES THAT I -- I

 3    PROSECUTED.   AND I'VE ALWAYS PRONOUNCED CACI "CACI."   SO I

 4    APOLOGIZE.

 5            MR. KENNEDY:   ACTUALLY, AS I UNDERSTAND IT, YOUR

 6    HONOR, IT'S A NORTH AND SOUTH OF TEHACHAPI'S RULE.   I THINK

 7    MOST PEOPLE IN SOUTHERN CALIFORNIA -- I'M THE ONE THAT'S

 8    GIVING IT THE NORTHERN CALIFORNIA PRONUNCIATION.

 9            THE COURT:   FAIR ENOUGH.

10            MR. KENNEDY:   FALL BACK, YOUR HONOR.   AT A

11    MINIMUM, IF YOU'RE NOT GOING TO GIVE THE FIRST THREE, I'D

12    URGE THAT THE LAST TWO SHOULDN'T BE GIVEN EITHER BECAUSE THE

13    COURT IS THEN SUGGESTING --

14            THE COURT:   I SEE.

15            MR. KENNEDY:   -- THAT THOSE TWO SOMEHOW ARE

16    RELEVANT, AND YOU THINK THEY ARE A PART OF THIS CASE.

17            SO IF WE'RE GOING TO GO WITHOUT SPECIFIC EXAMPLE,

18    CAN WE JUST MAKE IT HOW REPREHENSIBLE WAS IT?

19            THE COURT:   FAIR ENOUGH.   THANK YOU, COUNSEL.

20            MR. KENNEDY:   AND -- AND IF I COULD JUST -- I JUST

21    WANT TO MAKE SURE I DON'T STEP OVER THE LINE IN ARGUING --

22            THE COURT:   STEP OVER --

23            MR. KENNEDY:   -- BECAUSE MY PATTERN -- PUNITIVE

24    DAMAGE ARGUMENT, I REPRESENT PEOPLE GENERALLY WHO'VE DONE

25    ECONOMIC THINGS AND DO TALK ABOUT THE THINGS THAT DIDN'T
```

1    HAPPEN IN THIS CASE.

2           NOW, MAYBE IT WON'T BE FOUND PERSUASIVE, BUT I

3    WANT TO MAKE SURE IT ISN'T FOUND TO BE IN CONTEMPT OR A

4    VIOLATION OF A COURT ORDER.

5           THE COURT:  I'M SORRY?

6           MR. KENNEDY:  I WANT TO MAKE SURE, IF I GET UP AND

7    SAY, IN EVALUATING MR. LARIAN'S REPREHENSIBILITY, IT'S

8    IMPORTANT TO THINK ABOUT WHAT REPREHENSIBILITY MEANS, IT'S

9    ALL THE WAY FROM RAPE AND MURDER AT ONE END TO JAYWALKING

10   AND NOT STEPPING TO THE REAR OF THE ELEVATOR IN ANOTHER.

11   AND WHERE DOES THIS FIT?

12          THE COURT:  YOU CAN -- YOU CAN MAKE THESE

13   ARGUMENTS.  THAT'S -- THAT' SOUNDS FAIR.

14          MR. KENNEDY:  OKAY.  WELL, I WOULD URGE, THEN, IF

15   WE'RE NOT GOING TO USE THE WHOLE LIST, WE DON'T USE ANY OF

16   THE LIST, AND JUST USE REPREHENSIBILITY, YOUR HONOR.

17          THE COURT:  VERY GOOD.  ALL RIGHT.

18          MR. KENNEDY:  THANK YOU VERY MUCH.

19          THE COURT:  THANK YOU, COUNSEL.

20          I WILL GIVE MATTEL A CHANCE TO REPLY NOW TO -- TO

21   ANY OF THESE OBJECTIONS THAT WERE MADE.  AND I DO WANT TO

22   BRIEFLY TAKE UP THE VERDICT FORM BEFORE WE RELEASE

23   MR. ZELLER.

24          MR. ZELLER:  THANK YOU, YOUR HONOR.

25          I WON'T GO THROUGH ALL OF THEM.  I THINK,

                                                        7951

```
 1    OBVIOUSLY, A NUMBER OF THESE ISSUES WE'VE DISCUSSED BEFORE.

 2    SO, CERTAINLY, AS I'M GOING THROUGH THIS LIST, IF THERE'S

 3    ANYTHING THAT IS OF CONCERN TO THE COURT, I'D BE HAPPY TO

 4    ADDRESS THAT --

 5              THE COURT:  VERY WELL.

 6              MR. ZELLER:  -- OBVIOUSLY, SPECIFICALLY.

 7              WITH RESPECT TO THE DERIVATIVE WORKS

 8    INSTRUCTION --

 9              THE COURT:  JUST -- JUST GIVE ME A PAGE NUMBER, IF

10    YOU WOULD.  HELP ME OUT.

11              MR. ZELLER:  UNFORTUNATELY, I HAVE THE SAME

12    PROBLEM THAT MR. NOLAN HAD, WHICH IS THAT MY NUMBERS --

13    PAGE 24.

14              THE COURT:  THANK YOU.

15              ALL RIGHT.  I'M THERE.

16              MR. ZELLER:  AND WHAT MGA WAS PROPOSING IS IS

17    THAT, BASICALLY, ADDITIONAL LANGUAGE BE BUILT IN TO

18    BASICALLY TALK ABOUT THE INFRINGEMENT TEST.  AND I -- I

19    THINK THAT CONFUSES THE MATTER.  THIS IS JUST A DEFINITION

20    OF WHAT IT IS.

21              OBVIOUSLY, THERE IS A SUBSTANTIAL SIMILARITY

22    INSTRUCTION.  I MEAN, TO THE EXTENT THAT ANYTHING IS SAID

23    ALONG THOSE LINES, I THINK IT LOGICALLY GOES INTO

24    SUBSTANTIAL SIMILARITY, NOT -- NOT THIS, BECAUSE THEN IT'S

25    JUST SIMPLY CONFUSING THE TWO DIFFERENT CONCEPTS OF WHAT I
                                                           7952
```

1    THINK THAT INSTRUCTION IS.

2              THE COURT:  SO, AT A MINIMUM, YOU AGREE WITH

3    MR. NOLAN'S SUGGESTION THAT WE SHOULD ADD SOMETHING TO THE

4    EFFECT THAT, IF EACH OF THE NEW WORKS ARE SUBSTANTIALLY

5    SIMILAR TO THE WORKS CREATED BY CARTER BRYANT.

6              MR. ZELLER:  WELL, I -- I DON'T HAVE AN ISSUE,

7    THEORETICALLY, IN BUILDING IN TO THE SUBSTANTIAL SIMILARITY

8    INSTRUCTION, SAYING THAT THIS IS A TEST THAT HAS TO BE MET

9    FOR INFRINGEMENT OF ANY OF THE RIGHTS THAT ARE AT ISSUE IN

10   THIS CASE, ANY OF THE EXCLUSIVE COPYRIGHT RIGHTS THAT ARE AT

11   ISSUE IN THIS CASE, WHETHER IT'S REPRODUCTION, WHETHER IT IS

12   DERIVATIVE WORKS.

13             THE COURT:  AND THEY BASICALLY DO THAT.

14             MR. ZELLER:  YEAH.

15             THE COURT:  I MEAN, THAT THE CONCERN IS HERE WE'RE

16   TAKING ONE OF THOSE RIGHTS AND -- AND AMPLIFYING IT, WE'RE

17   GIVING IT A DEFINITION.  AND MR. NOLAN IS SUGGESTING THAT TO

18   THE EXTENT THAT WE DO THAT, THAT WE NEED TO MAKE SURE THAT

19   IT'S UNDERSTOOD THAT THAT RIGHT ONLY ARISES UNDER A FINDING

20   OF SUBSTANTIAL SIMILARITY.

21             MR. ZELLER:  WELL, THE RIGHT EXISTS INDEPENDENT OF

22   WHETHER IT'S SUBSTANTIALLY SIMILAR.  I MEAN -- BUT -- BUT

23   THIS IS A DEFINITIONAL ISSUE IF ONLY BECAUSE IT'S JUST NOT A

24   FAMILIAR TERM TO A JURY.  I MEAN, THAT -- THIS IS -- THIS NO

25   MORE EMPHASIZES THE DEFINITION OF DERIVATIVE WORKS THAN IT

                                                      7953

```
 1    WOULD FOR ANY OTHER TERM THAT IS UNFAMILIAR TO THE JURY.

 2    AND IT -- THE WORD NECESSARILY HAS TO BE -- HAS TO BE

 3    AMPLIFIED.

 4            I'M JUST CONCERNED THAT IF WE START CONFLATING THE

 5    TWO CONCEPTS IN THE DEFINITIONAL INSTRUCTION, THAT THEN

 6    IT'S -- IT MAY CREATE SOME CONFUSION OR AMBIGUITY WHEN

 7    IT'S -- HOW IT INTERACTS WITH THE SUBSTANTIAL SIMILARITY

 8    INSTRUCTION.

 9            SO THAT'S WHY I WOULD SUGGEST THAT, TO THE EXTENT

10    THERE'S ANY CLARIFICATION NEEDED -- AND I'M NOT SUGGESTING

11    THAT THERE NECESSARILY IS -- BUT I'M -- I'M NOT -- BUT WHERE

12    I THINK IT WOULD LOGICALLY GO IS IN THE SUBSTANTIAL

13    SIMILARITY INSTRUCTION.  THAT -- THAT WOULD BE MY PITCH,

14    YOUR HONOR.

15            I -- I THINK -- I THINK TALKING ABOUT -- AND

16    PARTICULARLY BUILDING ALL THIS ADDITIONAL LANGUAGE IN THERE

17    ABOUT NEW WORKS AND EVERYTHING ELSE, I THINK THOSE CARRY

18    THAT CONFUSION OR THAT DANGER OF CONFUSION.

19            THE COURT:  I UNDERSTAND YOUR ARGUMENT.  THANK

20    YOU.

21            MR. ZELLER:  THE INVERSE RATIO INSTRUCTION, THE

22    COUNTERPROPOSAL, I, FRANKLY -- I JUST THINK IT'S TOO

23    VERBOSE, AND IT -- IT KIND OF PILES ONTO THE CONCEPT.  I

24    THINK THE -- THE INSTRUCTION THAT THE COURT HAS NOW IS -- IS

25    MUCH MORE STRAIGHTFORWARD AND -- AND -- AND MUCH CLEARER.
```

1    THERE ARE A NUMBER OF POINTS THAT WERE MADE WITH

2    RESPECT TO THE SUBSTANTIAL SIMILARITY INSTRUCTION.  AND,

3    AGAIN, I DON'T PLAN ON COVERING ALL OF THEM, JUST PERHAPS A

4    FEW.  BUT IF THE COURT HAS ANY QUESTIONS ON THIS.

5    NUMBER ONE, I THINK BUILDING IN THIS IDEA ABOUT A

6    SENTENCE TO THE EFFECT THAT STYLE, THE LOOK, AND THE

7    ATTITUDE ARE NOT COPYRIGHTABLE, NUMBER ONE, I THINK THAT'S

8    JUST WRONG.  I MEAN, PARTICULARLY WHEN YOU TALK ABOUT THE

9    LOOK, THAT'S CLEARLY SOMETHING THAT COPYRIGHT PROTECTS.

10    THE COURT:  WELL, A PARTICULARIZED LOOK.

11    MR. ZELLER:  YES.

12    THE COURT:  NOT A GENERIC LOOK.

13    MR. ZELLER:  SURE.  BUT THAT -- THAT ISN'T THE

14    LANGUAGE THAT WAS BEING PROPOSED.

15    NUMBER TWO, THIS AGAIN GETS BACK EXACTLY TO THE

16    POINT OF WHY WE WERE CONCERNED ABOUT KIND OF THE MORE

17    GENERAL STATEMENTS ABOUT WHAT IS AND IS NOT PROTECTABLE.  IF

18    YOU'RE TALKING ABOUT, SAY, FOR EXAMPLE, SCENES-A-FAIRE,

19    BECAUSE THIS -- WITHOUT IT BEING DEFINED, IT JUST SIMPLY

20    LEAVES THE JURY TO SPECULATE.

21    AND -- AND I THINK THAT THAT'S -- THAT'S THE SAME

22    PROBLEM WHEN -- THE KIND OF LANGUAGE THAT MR. NOLAN IS

23    PREPARE -- YOU KNOW, PROPOSING CONCERNING, YOU KNOW, DON'T

24    INCLUDE ANYTHING THAT'S SORT OF A STOCK ELEMENT FOR FASHION

25    DOLLS.

7955

```
 1          I MEAN, THIS -- THIS JUST LEAVES THE JURY TO
 2   SPECULATE ABOUT WHAT IS AND IS NOT PROTECTABLE.  AND I -- I
 3   THINK THE COURT'S INSTRUCTION, AS -- AS IT'S CURRENTLY
 4   ARTICULATED, GETS THAT ACROSS.
 5          I MEAN, TO THE EXTENT THAT WE START TRYING TO
 6   BUILD IN MORE GENERAL CONCEPTS, LEAVING IT AGAIN FOR THE
 7   JURY TO GUESS OR SPECULATE ABOUT WHAT SHOULD NOT BE
 8   PROTECTED.  I THINK THAT WHOLE PARAGRAPH JUST COMES OUT, AND
 9   THE COURT WOULD JUST INSTRUCT AND SAY, "HERE'S WHAT" --
10   "HERE'S WHAT IS PROTECTABLE."  THAT SEEMS FAR PREFERABLE
11   THAN INSTRUCTING THEM WHAT'S PROTECTABLE, THEN TELLING THEM
12   THAT THERE ARE ELEMENTS THAT ARE UNPROTECTABLE, BUT NOT
13   TELLING THEM WHAT THEY ARE EXACTLY.
14          AND I -- I THINK IT'S QUITE CLEAR.  AND CERTAINLY,
15   WHERE WE ARE IN THE TERMS OF THE -- THE CASE HERE IS IS THAT
16   THAT DETERMINATION IS TO BE MADE BY THE COURT.
17          AND -- AND LEAVING THE JURY TO SPECULATE ON IT --
18          THE COURT:  THE DETERMINATION OF WHAT IS
19   PROTECTABLE AND NOT PROTECTABLE IS TO BE MADE BY THE COURT.
20   I DO BELIEVE THAT THE JURY NEEDS TO BE INFORMED AS TO
21   BOTH --
22          MR. KENNEDY:  SURE.
23          THE COURT:  -- WHEN CONDUCTING THEIR INTRINSIC AND
24   EXTRINSIC ANALYSIS --
25          MR. ZELLER:  SURE.  AND -- AND THAT'S -- TO MY
                                                          7956
```

```
 1    POINT IS THAT I THINK THE COURT'S INSTRUCTION, YOU KNOW,

 2    DOES -- DOES STRIKE THAT BALANCE.  BUT THEN, YOU KNOW, TO

 3    HAVE SORT OF THOSE MORE GENERAL ELEMENTS INCLUDED, I -- I

 4    THINK CREATES EXACTLY THE KIND OF RISK --

 5              THE COURT:  I -- I UNDERSTAND YOUR ARGUMENT,

 6    COUNSEL.

 7              MR. ZELLER:  THANK YOU.

 8              THE COURT:  WHAT ABOUT THE INTERMEDIATE

 9    PREPARATORY WORK INSTRUCTION?

10              MR. ZELLER:  WELL, I -- I THOUGHT THAT THE

11    CONCLUSION OF THAT DISCUSSION, I THOUGHT, ACTUALLY MADE IT

12    ALL THE CLEARER WHY IT NEEDS TO BE IN THERE.

13              I MEAN, THE -- THE FACT IS IS THAT WE STILL WOULD

14    BE ABLE TO OBTAIN INDIRECT PROFITS EVEN IF THE FINAL PRODUCT

15    ISN'T INFRINGING.  AND -- AND THE JURY WOULD BE ENTITLED

16    TO -- TO SO FIND.  SO I -- I MEAN, I -- I THOUGHT, ACTUALLY,

17    SORT OF THIS NOTION OF, YOU KNOW -- I MEAN, I GUESS, IF WE

18    START WITH THE PREMISE A DOLL IS A DOLL, THEN THINGS BECOME

19    A LOT EASIER.

20              BUT -- BUT I DON'T THINK THAT'S -- THAT'S WHERE

21    MGA ENDS UP.  AND I -- I -- I FRANKLY DIDN'T THINK THAT

22    THERE WAS MUCH OF A RATIONALE TO REALLY EXPLAIN WHY WE

23    WOULDN'T PUT THIS IN.

24              I MEAN, WE DO ALL -- WE -- WE HAVE EVIDENCE OF

25    INTERMEDIATE WORKS POTENTIAL, AT LEAST BY MGA'S ACCOUNT.
```

1    THE MARGARET LEAHY SCULPT WOULD BE AN EXAMPLE.  I MEAN, WE

2    OBVIOUSLY SAW THAT PRESENTATION THAT WAS MADE OF HERE WAS --

3    HERE WAS, YOU KNOW, 1136A, THE SCULPT THAT THE JURY FOUND IS

4    OWNED BY MATTEL.

5         THEN 1141, AND THEN ANOTHER ONE.  AND THEY WENT

6    THROUGH THESE VARIATIONS.  AND --

7         THE COURT:  WELL --

8         MR. ZELLER:  -- YOU KNOW, SO I -- I THINK THERE IS

9    EVIDENCE, AT LEAST JUST EVEN THERE, AS TO WHY IT GOES IN.

10        THE COURT:  TURN TO DAMAGES, COUNSEL, AND ADDRESS

11   MR. ROTH'S POINT, FIRST THE LIMITATION REQUEST ON AIDING AND

12   ABETTING TO MR. BRYANT'S ACTUAL PROFITS AS TO OPPOSED TO THE

13   LARGER ISSUE OF PROFITS.

14        MR. ZELLER:  WELL, I -- I HONESTLY DON'T KNOW WHAT

15   THE AUTHORITY, THE LEGAL BASIS IS FOR THAT KIND OF ARGUMENT.

16   I MEAN, THE RESTATEMENT APPROACH, AND -- AND ADOPTED IN

17   MULTIPLE CASES, MAKES VERY CLEAR THAT AN AIDER AND ABETTOR

18   OF A BREACH OF FIDUCIARY DUTY IS LIABLE TO DISGORGE THE

19   BENEFITS THAT HE OR IT OBTAINS.  I MEAN, IT'S NOT LIMITED

20   JUST SIMPLY --

21        THE COURT:  NOT -- NOT JUST -- NOT JUST THE

22   BENEFITS THAT WERE OBTAINED BY THE PERSON THAT THEY ARE

23   AIDING AND ABETTING.

24        MR. ZELLER:  CORRECT.  EXACTLY.  AND SO IT'S THEIR

25   BENEFITS AS WELL.

7958

1       AND THAT -- THAT IS MADE CRYSTAL CLEAR BY -- BY

2  THAT AUTHORITY THAT I KNOW WE'VE -- WE'VE DISCUSSED IN THE

3  PAST.

4       THE COURT:  THIS ISSUE OF PREJUDGMENT INTEREST, I

5  HAD MADE A NOTE TO MYSELF NEXT TO -- ABOUT IT EVEN BEFORE I

6  HEARD MR. ROTH ABOUT THERE'S NO EVIDENCE OF PREJUDGMENT

7  INTEREST IN THIS CASE, IF I RECALL CORRECTLY.

8       MR. ZELLER:  I -- I CAN DOUBLE-CHECK, YOUR HONOR.

9  MY MEMORY IS -- IS DIFFERENT.  I THOUGHT THAT IT HAD BEEN

10 PUT IN.  I KNOW WE CERTAINLY INTENDED TO.  BUT -- BUT I HAD

11 THOUGHT THAT IT CAME IN IN SOME FORM.  BUT -- BUT OBVIOUSLY

12 WE WOULD AGREE THAT, IF THERE'S NO EVIDENCE OF IT, THEN --

13 THEN IT'S NOT -- WOULDN'T BE APPROPRIATELY --

14      THE COURT:  SUBMIT THAT TO THE COURT.  I'D LIKE TO

15 SEE THE TRANSCRIPT ON THAT.  I JUST DON'T RECALL THAT --

16      MR. ZELLER:  YES.  WE -- WE WILL DO THAT,

17 YOUR HONOR.  WE'LL -- WE'LL GET YOU THE EXACT CITE FOR THAT.

18      THE COURT:  AND THE SAME WITH RESPECT TO TIME AND

19 MONEY SPENT BY MATTEL IN ATTEMPTING TO RECOVER THE PROPERTY.

20 I KNOW THERE'S SOME EVIDENCE OF -- THERE REALLY ISN'T MUCH

21 EVIDENCE AT ALL, IS THERE?

22      THE INTERPRETER:  YOU'RE TALKING ABOUT THE -- THE

23 CONVERSION MEASURE OF DAMAGES?

24      THE COURT:  YES.

25      MR. ZELLER:  YES.  WE WILL DO THAT AS WELL.  WE

                                                        7959

1    WILL PROVIDE SPECIFIC CITATIONS TO EVIDENCE --

2              THE COURT:  GET THOSE TO -- RIGHT.  RIGHT.

3              IS THERE ANYTHING ELSE SPECIFICALLY YOU WANT TO

4    ADDRESS?  I --

5              MR. ZELLER:  I THINK THAT THE MAIN --

6              THE COURT:  -- I UNDERSTAND YOUR ARGUMENTS AT

7    LEAST WITH RESPECT TO THE REST.

8              MR. ZELLER:  WELL --

9              THE COURT:  AS TO THE MITIGATION, FAILURE TO

10   MITIGATE, MR. NOLAN'S ARGUMENT HERE.

11             MR. ZELLER:  YES.  THAT WAS ACTUALLY ONE THAT I --

12   I DID WANT TO ADDRESS.  AND -- AND THIS -- IT DOES CAUSE ME

13   SERIOUS CONCERN, PARTICULARLY GIVEN WHAT I ASSUME IS A

14   PROFFER AS TO HOW THIS WOULD BE PRESENTED TO THE JURY.

15             IT -- FIRST OF ALL, THE REASON WHY THE EVIDENCE

16   ABOUT THE NAME BRATZ BEING CONSIDERED AS PART OF DIVA STARZ

17   IN LATE 1999, EARLY 2000 WAS PUT INTO EVIDENCE WAS THE SAME

18   REASON WHY TOON TEENZ WAS PUT INTO EVIDENCE.  IT'S SOMETHING

19   THAT HELPS FRAME THE TIME WHEN CARTER BRYANT WAS WORKING ON

20   BRATZ.

21             IN OTHER WORDS, WHEN DID HE CREATE IT?  WHEN DID

22   HE CONCEIVE OF IT?  I MEAN, PART OF THE ARGUMENT WAS IT'S

23   OBVIOUSLY MORE THAN A COINCIDENCE THAT WE HAD THESE ELEMENTS

24   GOING ON WITHIN MATTEL PROJECTS THAT -- THAT THEN END UP

25   BEING INCORPORATED INTO, INSPIRED BY, WHATEVER ONE WANTS TO

                                                    7960

```
1   USE THE TERMINOLOGY, BUT IT HELPS FRAME THE TIME PERIOD.
2           CARTER BRYANT DIDN'T CONCEIVE OF THE NAME BRATZ
3   FOR THIS PROJECT UNTIL SOMETIME AFTER HE OR OTHER PEOPLE HE
4   WAS WORKING WITH WERE EXPOSED TO THE NAME AS A POTENTIAL
5   NAME IN DIVA STARZ.
6           WE HAVE -- WE HAVE NOT SUED THEM, HOWEVER, FOR --
7   FOR MISAPPROPRIATION OF THE NAME OUT OF DIVA STARZ.  THAT'S
8   JUST NOT OUR CLAIM.  OUR CLAIM IS, IS THAT THERE WAS A
9   BUNDLE OF PROPRIETARY INFORMATION THAT CARTER BRYANT PUT
10  TOGETHER, WHICH IS THE BRATZ DOLL PROJECT, CONSISTING OF
11  DRAWINGS, CONSISTING OF THE NAME, CONSISTING OF CERTAIN
12  CHARACTERS, CONSISTING OF OTHER IDEAS AND THAT SORT OF
13  MATTER.
14          THE COURT:  YOU WOULD SUGGEST THIS WOULD BE
15  SIMILAR TO A MITIGATION ARGUMENT THAT SAYS BECAUSE YOU COULD
16  HAVE SUED ON AN INFRINGEMENT OF TOON TEENZ EARLIER AND YOU
17  DIDN'T DO THAT, YOU SHOULD BE BARRED FROM -- FROM PROFITS
18  THAT WERE OBTAINED AFTER THE DATE THAT YOU COULD HAVE SUED
19  ON TOON TEENZ?
20          MR. ZELLER:  RIGHT.  AND -- AND THIS IS AN
21  EXACT -- THIS IS JUST A RECASTING OF THAT EXACT ARGUMENT.
22  NOW IT'S JUST USING THE BRATZ NAME.
23          AND -- AND WHAT MR. NOLAN IS -- IS -- IS CLEARLY
24  SUGGESTING IN THE ARGUMENT -- ALTHOUGH, AGAIN, SORT OF
25  ASSUMING IT'S A PROFFER, BUT -- BUT HE'S -- WHILE
```

7961

1    DISCLAIMING ANY IDEA THAT THIS BEARS ON STATUTE OF

2    LIMITATIONS OR LATCHES, THAT'S CLEARLY THE IMPLICATION OF

3    THIS POINT.  MATTEL COULD HAVE SUED EARLIER.

4            THE MITIGATION IS BASICALLY BEING PRESENTED AS,

5    WELL, YOU COULD HAVE SUED EARLIER.  YOU COULD HAVE SENT A

6    CEASE-AND-DESIST LETTER EARLIER AND, THEREFORE, WOULD HAVE

7    DISCOVERED THE WRONGDOING.

8            SO, I MEAN, THIS IS ACTUALLY OF TREMENDOUS CONCERN

9    BECAUSE IT IS GOING TO BASICALLY BE PUTTING IN FRONT OF THE

10   JURY A STATUTE OF LIMITATIONS/LATCHES TYPE DEFENSE.

11           MATTEL SHOULD HAVE ACTED MORE EXPEDITIOUSLY

12   WITHOUT REALLY ANY APPROPRIATE LEGAL STANDARDS BEING

13   ARTICULATED ALONG WITH IT.  AND TO THE CONTRARY, IS TRYING

14   TO SHOEHORN IT INTO THIS IDEA, THIS -- THIS INSTRUCTION

15   ABOUT MITIGATION.

16           I -- I THINK MR. ROTH WAS ABSOLUTELY RIGHT.  THERE

17   IS -- AND TO MR. -- MR. PROCTOR'S POINT, TOO, THERE IS JUST

18   SIMPLY NO EVIDENCE THAT -- THAT THERE IS MITIGATION THAT --

19   THAT COULD HAVE BEEN HAD IN THESE CIRCUMSTANCES.  AND THE

20   ONLY THING THAT WAS BEING ARTICULATED BY MR. NOLAN REALLY

21   JUST GOES BACK TO LATCHES AND STATUTE OF LIMITATIONS DELAY.

22   BUT BASICALLY, IT SUGGESTS TO THE JURY IT'S, WELL, MATTEL

23   SHOULD HAVE JUST ACTED MORE QUICKLY.

24           THE COURT:  WHAT ABOUT MR. KENNEDY'S POINT THAT IT

25   SHOULD BE ALL OR NOTHING ON THE FACTORS ON PUNITIVE DAMAGES?

                                                          7962

```
 1              MR. ZELLER:  WELL, YOU KNOW, WE -- WE DISCUSSED
 2    THAT A LITTLE BIT THE LAST TIME.  AND I -- I WOULD JUST
 3    SIMPLY ECHO WHAT THE COURT HAS SAID.  I MEAN, THIS IS --
 4    THIS DOES GET INTO THE DANGER OF THEM JUST BASICALLY
 5    SAYING -- TURNING THESE FACTORS INTO REQUIREMENTS.  I MEAN,
 6    THAT'S REALLY THE BOTTOM LINE.  IT'S BASICALLY SAYING,
 7    "WELL, IF I DIDN'T ENDANGER SOMEONE'S SAFETY, DON'T AWARD
 8    PUNITIVE DAMAGES."
 9              THE COURT:  YEAH.  BUT THEIR RESPONSE TO THAT IS,
10    NO, IT -- WELL, WHAT IT DOES, IT GIVES THE JURY A SENSE OF
11    HOW SERIOUS THE REPREHENSIBILITY NEEDS TO BE.  THESE ARE THE
12    TYPES OF THINGS THAT MAKE IT REPREHENSIBLE.  AND IT'S NOT
13    THAT WE ARE REQUIRING THAT IT WOULD BE PRESENT IN THIS CASE,
14    BUT JUST -- IT GIVES -- IT GIVES KIND OF PARAMETERS AS TO
15    WHAT IS REPREHENSIBLE.
16              MR. ZELLER:  I MEAN, I SUPPOSE THAT'S -- THAT'S A
17    THEORETICALLY SOUND KIND OF ARGUMENT THAT ONE WANTS TO MAKE.
18    BUT -- BUT YOU COULD DO THAT WITH A BUNCH OF OTHER
19    CONSTRUCTS TOO.  YOU COULD SAY, WELL, HE DIDN'T ACTUALLY
20    KILL SOMEBODY.  YOU KNOW, HE DIDN'T ACTUALLY, YOU KNOW,
21    STEAL FROM TEN OTHER COMPANIES, AT LEAST THAT WE KNOW OF.
22              I MEAN, ONE COULD SPIN OUT ANY NUMBER OF OTHER
23    COMPARATIVE KIND OF FACTORS AND -- AND ALWAYS SAY, "WELL,
24    WHAT I DID WASN'T AS BAD AS WHAT SOMEONE ELSE DID."
25              HONESTLY, I THINK THAT'S ACTUALLY DOES CREATE
```

7963

```
 1    EXACTLY THE KIND OF PREJUDICE THAT -- THAT THE COURT WAS
 2    ALLUDING TO IN -- IN ITS QUESTIONING OF MR. KENNEDY.  AND
 3    I -- I THINK THAT THIS IDEA THAT YOU HAVE TO BE THE WORST --
 4    THE WORST APPLE IN THE WHOLE BARREL BEFORE PUNITIVE DAMAGES
 5    CAN BE AWARDED AGAINST YOU, I THINK, IS PREJUDICIAL, AND I
 6    THINK IT'S WRONG.  I DON'T THINK THE LAW SUPPORTS THAT AT
 7    ALL.
 8              I MEAN, THE -- THE COURT OBVIOUSLY IS FAMILIAR
 9    WITH THE OTHER -- THE EXPLICATION THAT'S GIVEN TO THE OTHER
10    FACTORS.  AND THEY -- AND THEY MAKE IT VERY CLEAR THAT YOU
11    DON'T HAVE TO BE THE WORST OF THE WORST TO HAVE PUNITIVE
12    DAMAGES IMPOSED.
13              I MEAN, IT'S UP TO, OBVIOUSLY, THE JUDGMENT OF THE
14    JURY AS TO WHETHER OR NOT THIS BALANCE OF -- YOU KNOW, OF
15    WHETHER THE KIND OF DEFINITION, THE PURPOSE OF PUNITIVE
16    DAMAGES IS SATISFIED.
17              SO I -- I ACTUALLY THINK THERE IS A TREMENDOUS
18    DANGER OF TURNING THESE INTO REQUIREMENTS AND HAVING THE
19    JURY SAY, "WELL, HE DIDN'T -- HE DIDN'T ENDANGER SOMEONE
20    AND, THEREFORE, JUST FOR THAT REASON ALONE, WE SHOULD NOT
21    AWARD PUNITIVE DAMAGES.
22              THE COURT:  VERY WELL.
23              MR. ZELLER:  THANK YOU.
24              THE COURT:  ALL RIGHT.  I AM GOING TO GIVE MGA A
25    CHANCE TO RESPOND.
```

```
 1              MR. ZELLER, IF YOU FEEL THAT YOU NEED, AT THIS
 2    TIME, IT'S -- YOUR HEARING IS AT 1:30?
 3              MR. ZELLER:  YES, IT IS, YOUR HONOR.
 4              THE COURT:  YOU SHOULD BE ABLE TO MAKE IT IN AN
 5    HOUR AND A HALF.  I MEAN, THE COURT -- I HAVE MANY TIMES, AT
 6    THIS TIME OF DAY, LEFT RIVERSIDE AT 11:00 TO MAKE A 12:00,
 7    12:15 COURT MEETING.  AND I'VE NEVER NOT MADE IT.  SO I
 8    THINK -- I THINK YOU'RE GOING TO BE FINE.
 9              BUT IF YOU WISH TO LEAVE, I'LL LET YOU -- I DO
10    WANT TO GIVE MGA A CHANCE TO RESPOND.  AND THEN I'M GOING TO
11    TAKE UP THE ISSUE VERY BRIEFLY OF VERDICT FORMS.
12              BUT I JUST WANT TO HEAR INITIAL ARGUMENTS ON THAT.
13              WHAT I'M GOING TO DO IS RECONVENE LATER THIS
14    AFTERNOON, AFTER MY CRIMINAL CALENDAR, TO MAKE FINAL
15    DECISIONS ON THE VERDICT FORM, AND HOPEFULLY HAVE THE JURY
16    INSTRUCTIONS COMPLETED AT THAT TIME.
17              YOU'RE WELCOME TO RETURN FOR THAT.  BUT I KNOW
18    IT'S A -- HAVING DONE IT, I KNOW IT'S A LOT TO GO BACK AND
19    FORTH.  BUT THAT'S -- THAT'S UP TO YOU.
20              MR. ZELLER:  I'M HAPPY TO.
21              THE COURT:  ALL RIGHT.
22              MR. ZELLER:  WHAT I'LL DO -- WHAT I PROPOSE DOING,
23    IF IT'S OKAY WITH THE COURT, IS -- IS STAY A FEW MORE
24    MINUTES.  WE'LL SEE HOW MUCH WE HAVE LEFT, AND AT SOME POINT
25    I WILL -- I'LL HAVE TO GO.
```

```
 1              THE COURT:  FAIR ENOUGH.  AND -- AND JUST SO THAT
 2     YOU KNOW -- EVERYBODY KNOWS FOR THEIR PLANNING, I'M GOING TO
 3     SET THE CONTINGENT HEARING THIS AFTERNOON AT 4 O'CLOCK, BUT
 4     IT WILL ACTUALLY TAKE PLACE AS SOON AS I'M DONE WITH MY
 5     CRIMINAL CALENDAR.
 6              MR. NOLAN:  AND, YOUR HONOR, I'LL -- I'LL BE
 7     BRIEF.
 8              WITH RESPECT TO MR. ZELLER'S COMEBACK TO MY
 9     ARGUMENT ABOUT MITIGATION --
10              THE COURT:  YES.
11              MR. NOLAN:  -- RESPECTFULLY, I JUST DON'T THINK
12     THEY CAN HAVE IT BOTH WAYS.  THEY CANNOT FRAME THE ISSUE FOR
13     THE JURY ABOUT THE BRATZ NAME AND IT BEING PROPRIETARY FOR
14     PURPOSES OF THE CONVERSION CLAIM AND THE INTENTIONAL
15     INTERFERENCE CLAIM WITHOUT PUTTING ANY LIMITATIONS UNDER THE
16     STATE TORT CLAIMS AS TO WHAT THE PROPERTY WAS THAT THEY WERE
17     TAKING, WHICH WAS CONVERTED.
18              I MEAN, YOU'LL REMEMBER THAT JURY INSTRUCTION
19     NO. 29 TALKED ABOUT PROPRIETARY AND CONFIDENTIAL
20     INFORMATION, INCLUDING BRYANT'S DRAWINGS BUT NOT LIMITED TO
21     BRYANT'S DRAWING.
22              AND OUR ONLY POINT IS, YOUR HONOR, HAVING MADE THE
23     DEAL ABOUT THE NAME BRATZ, WE SHOULD BE ALLOWED TO ARGUE, IN
24     FACT, WHAT THE JURY -- WHAT MATTEL SHOULD HAVE DONE AND
25     COULD HAVE DONE WAS TO SEND A LETTER SIMILAR TO THE ONES
```

```
 1   THAT THEY SENT US IN FEBRUARY.

 2            AND I THINK, WHEN I WAS TALKING BEFORE, I -- I

 3   MENTIONED THE NAME OF A LETTER THAT THEY INTRODUCED.  IT'S A

 4   TRIAL EXHIBIT 10036, AND IT'S OUR CEASE-AND-DESIST LETTER TO

 5   ONE OF OUR FORMER EMPLOYEES, CAMMI GILMORE, WHERE WE WERE

 6   ENFORCING OR REMINDING HER OF HER DUTY TO REMAIN -- TO KEEP

 7   CONFIDENTIAL VARIOUS MATERIALS.

 8            SO THE BRATZ NAME, I JUST -- YOU KNOW, THEY CAN'T

 9   HAVE THEIR CAKE AND EAT IT TOO.

10            ONE -- ONE OTHER POINT, YOUR HONOR, IS THAT I DO

11   NOT BELIEVE THAT WE OBJECTED TO, AND I WANT TO FORMALLY

12   OBJECT TO THEIR SPECIAL INSTRUCTION COVERING OTHER

13   INVESTIGATIONS.

14            WE'RE NOT ARGUING THIS IN A COPYRIGHT SENSE.  THIS

15   IS THE ONE THAT TALKED ABOUT DIVA STARZ AND TOON TEENZ, AND

16   THAT THEY -- YOU KNOW, BASED ON THAT, THEY SHOULD HAVE KNOWN

17   THAT THERE WAS A COPYRIGHT VIOLATION.

18            WE'RE NOT ARGUING COPYRIGHT VIOLATION.  WE LOST

19   THAT ISSUE A LONG TIME AGO, YOUR HONOR.  BUT -- BUT THIS

20   GOES TO THOSE BUILDING BLOCKS THAT YOU TALKED ABOUT AT

21   SIDEBAR A COUPLE OF TIMES.

22            IN FACT, I THINK, ON THURSDAY, THAT YOU -- IT WAS

23   INTERESTING, AS A FORMER TRIAL LAWYER, YOU WERE ALSO MAKING

24   THE POINT THIS IS ONE OF THOSE CLASSICAL FACTUAL CASES THAT

25   WILL BE INTERESTING TO SEE HOW THE JURY BUILDS THOSE
```

1   BUILDING BLOCKS.

2           FOR MATTEL TO NOW SUGGEST THAT FOR NO PURPOSES

3   SHOULD THEY CONSIDER ANY EVIDENCE OF SIMILARITIES BETWEEN

4   THE BRATZ DOLLS AND THE TOON TEENZ OR DIVA STARZ PROJECTS AT

5   MATTEL, ANY SUCH SIMILARITIES THAT ARE IRRELEVANT TO THE

6   QUESTION OF WHEN MATTEL BECAME AWARE OF SUCH FACTS THAT

7   EITHER DID OR COULD HAVE LED TO DISCOVERY THAT CARTER BRYANT

8   CREATED BRATZ WORKS WHILE EMPLOYED BY MATTEL.

9           THIS IS ON THEIR SPECIAL INSTRUCTION.

10          I THINK IT -- I THINK IT CONFUSES THE ISSUES

11  TERRIBLY WITH RESPECT TO CONCEALMENT, MY ARGUMENT WITH

12  RESPECT TO MITIGATION.  I DON'T -- I DON'T THINK THAT THE

13  JURY SHOULD BE TOLD --

14          THE COURT:  YOU'RE NOT GOING TO BE RELYING ON

15  EVIDENCE THAT THE COURT EXCLUDED.

16          MR. NOLAN:  NOT AT ALL, YOUR HONOR.

17          THE COURT:  ALL RIGHT.

18          MR. NOLAN:  AND THE EVIDENCE, AS I UNDERSTAND WHAT

19  THE COURT STRUCK WAS THE EVIDENCE MAKING THE SIMILARITIES

20  BETWEEN, YOU KNOW, THE CHARACTER ART THAT WAS ON THE BOARD.

21  BUT JILL NORDQUIST TESTIFIED AS TO HER EARLY KNOWLEDGE WHEN

22  SHE -- WHEN SHE FIRST LEARNED ABOUT IT AND WHAT SHE THOUGHT

23  WAS FAMILIAR, YOU KNOW, BIG HEAD, BIG FEET.  THAT WAS IT.

24          BUT WE'RE NOT GOING TO GO AT ALL TO THE

25  INFORMATION THAT WAS STRUCK.

                                                    7968

```
 1              THE COURT:  ON -- ON DIVA STARZ.
 2              MR. NOLAN:  ON DIVA STARZ OR ANYTHING ELSE.
 3              THE COURT:  ALL RIGHT.
 4              MR. NOLAN:  BUT THIS INSTRUCTION WOULD JUST
 5   CONFUSE IT.
 6              THE COURT:  THAT ARGUMENT, IF MADE IN CLOSING
 7   ARGUMENT, WILL INVITE THAT INSTRUCTION IN THE MIDDLE OF
 8   CLOSING ARGUMENT.  SO JUST THAT YOU -- YOU'RE AWARE, I'M --
 9   I'M NOT PLANNING TO GIVE IT AS PART OF THE INSTRUCTIONS
10   RIGHT NOW.
11              MR. NOLAN:  OKAY.
12              THE COURT:  BUT UNDERSTAND THAT YOU COULD INVITE
13   THAT INSTRUCTION IF YOU MAKE THAT ARGUMENT.
14              MR. NOLAN:  IF I TRY TO MAKE THE ARGUMENT THAT
15   THEY WERE SUBSTANTIALLY SIMILAR TO BRATZ.
16              THE COURT:  WELL, YEAH.  I MEAN, IF YOU MAKE -- IF
17   YOU RELY ON THE EVIDENCE THAT THE COURT EXCLUDED AND
18   INSTRUCTED THE JURY ON, YOU WILL TRIGGER AN INSTRUCTION FROM
19   THE COURT.
20              MR. NOLAN:  CORRECT.  AND -- BUT THE EVIDENCE THAT
21   IS IN THE RECORD, OF COURSE, IS MS. NORDQUIST'S TESTIMONY
22   ABOUT WHAT --
23              THE COURT:  WHAT MS. NORDQUIST SAID, YOU CAN RELY
24   ON.
25              MR. NOLAN:  RIGHT.  THANK YOU.
```

```
 1          THE LAST POINT, YOUR HONOR, HAS TO DO WITH THE

 2   POINT THAT I RAISED, AND THAT WAS THE PROTECTABILITY OF -- I

 3   THINK I -- I REFERRED TO IT AS STYLE.  WE -- WE COULD CITE

 4   ADDITIONAL CASES, BUT, YOUR HONOR, I WOULD JUST SITE TO

 5   MATTEL, INC., VS. THE GOLDBERGER CASE.  WE COULD SUBMIT,

 6   BEFORE THE FOUR O'CLOCK HEARING, A COUPLE OF OTHER CASES ON

 7   THIS --

 8          THE COURT:  ON WHAT?  I'M SORRY.

 9          MR. NOLAN:  I'M SORRY.  ON OUR -- OUR OBJECTION TO

10   THE USE OF THE UNIQUE STYLE, A DISTINCT LOOK OR --

11          THE COURT:  RIGHT.

12          MR. NOLAN:  -- ATTITUDE.

13          AND WHAT I MIGHT DO, YOUR HONOR, WITH --

14          THE COURT:  I'LL TRY -- I'M VERY FAMILIAR WITH

15   THOSE CASES.  IN FACT, I -- I USED THOSE CASES IN TRYING TO

16   STYLE THE INSTRUCTION OR THE ELEMENTS AS I CAME UP WITH

17   THEM.  I'M -- I'M INCORPORATING THE -- THE DIRECTION FROM

18   THOSE CASES INTO THE WAY THAT I CHARACTERIZE STYLE, LOOK.

19          WHAT I'M RELUCTANT TO DO FOR EITHER SIDE IS SIMPLY

20   HAVE STYLE AND LOOK OUT THERE UNADORNED.  IT'S A

21   PARTICULARIZED EXPRESSION OF A STYLE THAT IS PROTECTABLE,

22   AND -- AND THAT IS WHAT I HAVE GONE TO SOME LENGTH TO TRY TO

23   EXPLAIN TO THE JURY IN THE CONTEXT OF THAT INSTRUCTION.

24          TO HAVE SOMETHING ELSE OUT THERE WHICH SAYS, YOU

25   KNOW, GENERIC STYLE OR JUST STYLE IS NOT PROTECTABLE, I -- I
```

```
 1    THINK IS -- IS -- IS NOT PROPER AND -- AND VERY CONFUSING
 2    WHEN I JUST GOT DONE SAYING A PARTICULARIZED EXPRESSION OF A
 3    STYLE IS PROTECTABLE.  TO THEN TURN AROUND AND SAY STYLE IS
 4    NOT PROTECTABLE OR A LOOK IS NOT PROTECTABLE, THAT -- THAT
 5    LENDS TO CONFUSION.
 6              MR. NOLAN:  I UNDERSTAND.  I THINK WHAT WE'RE
 7    LOOKING AT IS WHERE YOU LOOKED AT AND YOU DESCRIBED IT AS A
 8    PARTICULARIZED LOOK.
 9              THE COURT:  EXPRESSION OF A -- OF A LOOK OR STYLE.
10              MR. NOLAN:  OF A -- RIGHT.  THEN THE OPPOSITE
11    WOULD BE, HOWEVER, A GENERAL LOOK OR ATTITUDE WOULD NOT BE
12    PROTECTABLE.  THAT'S THE BALANCING THAT WE WOULD LOOK TO,
13    YOUR HONOR.
14              THAT'S THE -- THAT'S THE POINT THAT WE WERE TRYING
15    TO MAKE ON THAT.  I THINK THEY COME UP A LOT IN THE
16    TRADEMARK TRADE DRESS CASES IN THAT REGARD.
17              THE COURT:  ALL RIGHT.  LET ME HEAR BRIEFLY ON
18    THE --
19              I'M SORRY, MR. ROTH?
20              MR. ROTH:  YES.  ONE NARROW POINT ON THE -- THE
21    AIDING AND ABETTING LIMITING DAMAGES TO --
22              THE COURT:  YES.
23              MR. ROTH:  -- MR. BRYANT'S PROFITS.
24              THE COURT:  I'M GOING TO TAKE A LOOK AT THESE
25    CASES IN TERMS OF WHETHER OR NOT IT'S TALKING ABOUT AIDING
```

1    AND ABETTING -- WHETHER THE AIDER AND ABETTOR COULD BE HELD

2    FOR ANY DAMAGES THAT -- THAT -- THAT HE -- OR ANY -- ANY

3    PROFITS THAT HE OBTAINS, OR IS HE LIMITED TO THE PROFITS OF

4    THE PERSON WITH WHOM HE DID THE AIDING AND ABETTING?  I KNOW

5    THAT YOU TAKE THE LATTER POSITION.

6             MR. ROTH:  YES.  AND JUST -- AND JUST TO ASSIST

7    YOU IN THAT PROCESS --

8             THE COURT:  PLEASE.

9             MR. ROTH:  -- PEOPLE VS. BESTLINE, 61 CAL.APP 3D

10   879.

11            THE COURT:  ONE SECOND; 56 CAL.APP 3D?

12            MR. ROTH:  SORRY.  EXCUSE ME.  61 CAL.APP 3D.

13            THE COURT:  61 CAL.APP 3D.

14            MR. ROTH:  879 IS --

15            THE COURT:  879.

16            MR. ROTH:  -- 879 IS THE PAGE WHERE THE CASE

17   STARTS, PIN CITE 919.

18            AND THEN THE HIRSCH CASE, 107 CAL.APP 4TH 708, AND

19   THE PAGE 74 --

20            THE COURT:  CAL.APP 4TH -- WHAT WAS IT?

21            MR. ROTH:  CAL.APP 4TH 708.

22            THE COURT:  ALL RIGHT.

23            MR. ROTH:  AND THE PEN CITE IS 719.

24            AND I'D INVITE YOUR HONOR, ALTHOUGH I'M SURE

25   YOU'VE GOT PLENTY TO DO, TO ACTUALLY LOOK AT -- AT MATTEL'S

                                                      7972

1    AUTHORITIES.

2              WHAT YOU'LL FIND THERE OVER AND OVER AGAIN IS THAT

3    THE -- THAT THE DAMAGE ACTUALLY AWARDED IS THE -- THE

4    PROFITS MADE BY THE FIDUCIARY, NOT THE AIDER AND ABETTOR.

5              THE COURT:  ALL RIGHT.  ANYTHING ELSE, COUNSEL?

6              MR. ROTH:  NO, THAT'S IT.  WOULD YOU LIKE MY

7    COPIES OF -- OF THE TWO CASES THAT --

8              THE COURT:  THAT WOULD BE GREAT.

9              MR. ROTH:  GREAT.

10             THE COURT:  AND DOES MATTEL HAVE ANYTHING THAT

11   THEY COULD POINT TO ON THIS ISSUE?

12             THANK YOU, MR. PROCTOR.

13             MR. ROTH:  YOUR HONOR, YOU'LL -- YOU'LL EXCUSE MY

14   HIGHLIGHTING THE CASES.

15             MR. PROCTOR:  THIS ISSUE IS BRIEFED, YOUR HONOR,

16   IN THE JURY INSTRUCTIONS.  IT'S ON APPROXIMATELY -- STARTS

17   ON PAGE 135, APPROXIMATELY --

18             THE COURT:  RIGHT.  I -- I KNOW THE PARENTHETICALS

19   ARE THERE, BUT DO WE HAVE --

20             MR. PROCTOR:  THE -- THE CASES THAT I'D REFER THE

21   COURT TO ARE -- ASIDE FROM THE RESTATEMENT, WHICH IS

22   PLAINTIFF'S CAN BE -- I'D REFER THE COURT TO THE COUNTY OF

23   SAN BERNARDINO VS. WALSH CASE.

24             THE COURT:  RIGHT.

25             MR. PROCTOR:  158 CAL.APP 4TH --

                                                         7973

```
 1              THE COURT:  158 --
 2              MR. PROCTOR:  -- CAL.APP 4TH 533 AT --
 3              THE COURT:  THAT'S COUNTY OF SAN BERNARDINO?
 4              MR. PROCTOR:  CORRECT, YEAH.
 5              THE COURT:  OKAY.
 6              MR. PROCTOR:  AND THAT'S AT ABOUT PAGES 540 TO
 7    543.
 8              AND THE HICKSON VS. GRAY CASE.
 9              THE COURT:  NIXON?
10              MR. PROCTOR:  HICKSON, H-I-C-K-S-O-N, 91 CAL.APP
11    2D 684 AT 686.
12              THE COURT:  I'M SORRY AGAIN, COUNSEL?
13              MR. PROCTOR:  I APOLOGIZE.  91 CAL.APP 2D 684, AT
14    686 TO 87.
15              NIELSON ALSO SUPPORTS THE PROPOSITION.  THAT'S
16    290 --
17              THE COURT:  WELL, LET ME JUST TAKE YOUR TWO BEST,
18    COUNSEL.
19              MR. PROCTOR:  THE -- I MEAN, VERY BRIEFLY ON IT.
20    MGA CITES A VARIETY OF CASES IN ITS OBJECTIONS, AND THIS IS
21    LAID OUT IN THE PAPERS, A VARIETY OF CASES AWARDING THE
22    FIDUCIARY'S PROFITS AGAINST THE AIDER AND ABETTOR.  THOSE
23    CASES DON'T SAY YOU CAN'T GET THE AIDER AND ABETTOR'S
24    PROFITS, AND THE CASES WE'VE CITED SUPPORT THE PROPOSITION
25    THAT YOU CAN.
```

7974

```
 1              THE COURT:  I'LL TAKE A LOOK.  ALL RIGHT.

 2         MR. KENNEDY.

 3         MR. KENNEDY:  WITH THE COURT'S INDULGENCE, ON THE

 4    PUNITIVE DAMAGES, I DIDN'T HAVE A CASE WHEN I WAS HERE

 5    BEFORE, BUT THE RESEARCH FACTORY HAS BEEN IN OPERATION.

 6    AGAIN, I HAVE A COPY FOR THE COURT.  IT'S GRASSILLI --

 7    G-R-A -- AGAIN, SPELLED THE REGULAR WAY, G-R-A-S-S-I-L-L-I

 8    VS. BARR, B-A-R-R.  IT'S AN ABUSE OF POWER BY THE CALIFORNIA

 9    HIGHWAY PATROL.

10              AND THE COURT THERE SAYS THAT ABUSE OF AUTHORITY

11    BY A LAW ENFORCEMENT OFFICER IS REPREHENSIBLE.  HOWEVER,

12    IT'S THE DEGREE OF REPREHENSIBILITY, NOT ITS EXISTENCE IN AN

13    ABSOLUTE SENSE, THAT'S THE CRITICAL FACTOR, CITING CAMPBELL.

14    AND THEN GO ON TO POINT OUT THAT, ALTHOUGH THE MOTORIST WAS

15    HARASSED, HE WAS NEVER PHYSICALLY ASSAULTED, IMPRISONED, OR

16    OTHERWISE PHYSICALLY MISTREATED OR ABUSED.  THE HARM HE

17    SUFFERED WAS FAR LESS SERIOUS THAN SUFFERING BY DEFENDANTS

18    IN OTHER CIVIL RIGHTS CASES IN WHICH COURTS HAVE FOUND

19    AWARDS TO BE CONSTITUTIONALLY EXCESSIVE.

20              NOW, AGAIN, THIS IS A COURT REVIEWING A PUNITIVE

21    DAMAGE AWARD.  I DON'T WANT TO OVERSTATE THE HOLDING, BUT I

22    SUBMIT THAT, CONSISTENT WITH CACI, THE CALIFORNIA DRAFTERS

23    BELIEVE THE JURY OUGHT TO HAVE THAT CONTINUUM OF FACTORS

24    BEFORE THEM --

25              THE COURT:  THANK YOU, COUNSEL.
```

```
1              MR. KENNEDY:  AND I CAN --

2              THE COURT:  VERY WELL.

3              MR. KENNEDY:  DOES THE COURT DESIRE THE CASE

4    OR . . .

5              THE COURT:  THAT'S ALL RIGHT.  I GOT -- I GOT IT.

6              MR. KENNEDY:  THANK YOU.

7              THE COURT:  I DON'T NOW.  I THINK I'LL DECIDE ON

8    HOW I WANT TO HANDLE THIS.

9              I'LL HEAR BRIEFLY ON THE VERDICT FORM ISSUE, JUST

10   NOT IN TERMS OF SPECIFICS -- I THINK I CAN HANDLE SPECIFIC

11   QUESTIONS -- BUT JUST MORE IN TERMS OF THIS OVERALL

12   FORMATTING POSITION.

13             MR. ZELLER:  IF -- IF I COULD JUST ADDRESS VERY

14   BRIEFLY SO THAT MAYBE THE COURT'S EXPECTATIONS AREN'T --

15   AREN'T UPSET WHEN IF IT GETS TO THIS POINT ABOUT THE

16   ARGUMENT ABOUT DIVA STARZ, INCLUDING THE BIG HEAD, BIG FEET

17   KIND OF ASPECT.  BECAUSE THAT -- THAT WAS PART OF WHAT I WAS

18   ALLUDING TO EARLIER WHEN I WAS TALKING ABOUT, YOU KNOW, THAT

19   THERE WAS TESTIMONY ELICITED, YOU KNOW, ABOUT DIVA STARZ,

20   AND I THINK THERE MAY HAVE BEEN SOME OTHERS AS WELL.

21             BUT -- BUT FUNDAMENTALLY, MY -- MY CONCERN IS THAT

22   WHAT MR. NOLAN IS SUGGESTING, WHICH IS TO TAKE THAT EVIDENCE

23   AND SAY, BECAUSE MATTEL COULD HAVE SENT A C. AND D. OR COULD

24   HAVE SUED ON THAT, THAT IS EXACTLY THE SAME PROBLEM THAT --

25   THAT HAS BEEN LITIGATED, YOU KNOW, EXTENSIVELY IN CONNECTION
```

```
1   WITH TOON TEENZ, WHICH IS THAT WOULD BE A DIFFERENT CLAIM.
2               AND I'M -- I'M VERY CONCERNED ABOUT THE PROSPECT
3   FOR JURY CONFUSION, IF THAT'S COMING OUT.  I MEAN, THE COURT
4   OBVIOUSLY FOREWARNED MR. NOLAN, THAT THERE WOULD BE AN
5   INSTRUCTION IF HE WERE TO RELY UPON THE STRUCK TESTIMONY.
6               HOWEVER, I STILL THINK THAT -- AND -- AND PART OF
7   WHAT I'D WANT TO DO IS SIMPLY MAKE SURE IS CLEAR IT UP, IS
8   THAT, IN THE EVENT THAT MGA STARTS TRYING TO SAY THAT
9   SOMEHOW THAT SHOULD HAVE PUT MATTEL ON NOTICE, IN OTHER
10  WORDS, THAT IT HAD ANOTHER CLAIM, THAT THAT IS SOMETHING
11  THAT THAT'S EXACTLY WHY WE HAVE SUGGESTED THIS OTHER JURY
12  INSTRUCTION, TO MAKE IT PERFECTLY CLEAR TO THE JURY THAT
13  THEY CAN'T RELY ON THAT.
14              IF WE COULD HAVE BROUGHT ANOTHER CLAIM, THAT IS
15  IRRELEVANT TO STATUTE OF LIMITATIONS.
16              THE COURT:  I'LL SPEAK TO THIS AT FOUR O'CLOCK TO
17  TRY TO MAKE IT CLEAR.  I WANT TO THINK ABOUT THIS MYSELF.
18              MR. ZELLER:  THANK YOU.
19              THE COURT:  MR. PROCTOR, IF YOU WOULD, THE VERDICT
20  FORM.
21              MR. PROCTOR:  THANK YOU, JUDGE.
22              THE COURT:  AND AS YOU HEARD, I -- I TENTATIVELY
23  AGREE WITH MGA'S APPROACH THAT THERE NEEDS TO BE -- I HAVE
24  KIND OF A TWO-EXTREME APPROACH AS ONE IS BREAKING DOWN ALL
25  THE VARIOUS PRODUCTS.  THE OTHER IS A ONE-LINE QUESTION:
```

```
 1    HAS THERE BEEN AN INFRINGEMENT?

 2              I'M CONCERNED THAT -- WITH THAT KIND OF SIMPLISTIC

 3    APPROACH.

 4              MR. PROCTOR:  RIGHT.

 5              THE COURT:  I COULD VERY WELL SEE A JURY FINDING

 6    SUBSTANTIAL SIMILARITY WITH RESPECT TO CERTAIN DOLLS OR

 7    CLASSES OF DOLLS AND -- AND NOT FINDING IT WITH RESPECT TO

 8    OTHERS.

 9              MR. PROCTOR:  SURE, BUT THEIR -- THEIR DAMAGES

10    AWARD WILL REFLECT THAT.  I MEAN, THERE ARE -- THIS

11    FUNDAMENTAL ISSUE, THERE -- YOU KNOW, I HAVE SMALLER

12    COMMENTS ON OTHER ASPECTS OF THE -- THE FORM, BUT THIS IS

13    THE MAJOR ISSUE, I THINK.

14              THE COURT:  AND I UNDERSTAND THAT RESPONSE.  BUT

15    WHY -- WHAT IS THE DOWNSIDE OF HAVING THE JURY ALSO IDENTIFY

16    EXACTLY WHAT IT IS THAT THEY'VE HAVE FOUND?  I MEAN, THAT'S

17    GOING TO BE VERY HELPFUL TO THE COURT WITH RESPECT TO

18    TAILORING INJUNCTIVE RELIEF.

19              MR. PROCTOR:  THERE ARE -- THERE ARE TWO MAJOR

20    PROBLEMS THAT I -- THAT I SEE.  THE FIRST ONE IS NOT EVERY

21    INFRINGING PRODUCT IS IN EVIDENCE.  YOU KNOW, WE'VE GOT --

22    WE'VE GOT THE TOY STORE UPSTAIRS, YOU KNOW, AND THE JURY WAS

23    TAKEN TO SEE THE STUFF, BUT ---

24              THE COURT:  AND THAT'S ALL IN EVIDENCE.

25              MR. PROCTOR:  THAT'S -- THAT'S ALL IN EVIDENCE,
```

```
 1    BUT THAT IS -- AND THIS IS A ROUGH APPROXIMATION.  I DON'T
 2    KNOW.
 3           IT -- IT -- LESS THAN HALF OF THE ALLEGEDLY
 4    INFRINGING PRODUCTS ARE IN EVIDENCE.  AND YOU WILL RECALL --
 5    OR YOU MAY RECALL, THERE IS A STIPULATION WHICH WAS REACHED.
 6    WE TRIED TO GET ALL THE PRODUCTS IN DISCOVERY.  MGA SAID NO.
 7    AND ONE THING THAT MGA SAID WAS WE WILL GIVE YOU A
 8    REPRESENTATIVE SAMPLE.
 9           AND BASED ON THAT, THERE IS A STIPULATION WHICH
10    WAS REACHED, WHICH WAS READ INTO THE RECORD ABOUT TWO WEEKS
11    AGO, WHICH SAID THE PRODUCTS THAT ARE THERE ARE
12    REPRESENTATIVE OF THE OTHER PRODUCTS, BUT NOT ALL THE
13    PRODUCTS ARE IN EVIDENCE.  AND SO LISTING PRODUCTS IS --
14           THE COURT:  AND -- AND THE COURT WILL CERTAINLY
15    ACCEPT THAT FOR PURPOSES OF HAVING IT TAILORED, IF IT IS
16    CALLED UPON TO DO SO IN THE INJUNCTIVE RELIEF.  I STILL
17    WONDER WHY IS IT NOT A GOOD IDEA TO DO EXACTLY WHAT WE DID
18    IN THE FIRST PHASE AND HAVE THEM TELL US WHAT IS AND WHAT IS
19    NOT, OF THIS REPRESENTATIVE SAMPLE, INFRINGING?
20           MR. PROCTOR:  THE -- THE SECOND MAIN PROBLEM WITH
21    IT IS -- I MEAN, NUMBER ONE, LISTING ALL THE PRODUCTS THAT
22    ARE UP THERE WOULD BE -- I MEAN, YOU'RE TALKING ABOUT A LIST
23    THAT IS FAR GREATER THAN WHAT'S LISTED HERE.
24           THE COURT:  I THINK -- I THINK THE -- THE -- MGA
25    TOOK A REASONABLE STAB, AND I WOULD CERTAINLY BE WILLING TO
```

1   ENTERTAIN ANY RESPONSES OR CLARIFICATIONS OF -- OF GROUPING

2   CERTAIN TYPES OF PRODUCTS TOGETHER.

3          I MEAN, I -- I AGREE, HAVING 900-AND-SOME

4   QUESTIONS IS PROBABLY A LITTLE OVER -- OVERBROAD.  BUT --

5   BUT WE HAVE A -- YOU KNOW, A REASONABLE ATTEMPT AT MAKING IT

6   A MANAGEABLE AMOUNT BASED ON THE SUBMISSION FROM MGA.

7          MR. PROCTOR:  RIGHT.

8          WELL, I MEAN, THE -- WHAT -- WHAT I'VE ADDRESSED

9   THUS FAR IS WHAT I WOULD REFER TO AS, YOU KNOW, SORT OF A

10  PRAGMATIC PROBLEM.  THERE IS A -- THERE IS A THEORETICAL

11  PROBLEM WITH -- WITH THIS APPROACH AS WELL, AND THAT IS

12  INDIRECT PROFITS.

13         OUR CLAIM IS -- WE HAVE -- WE HAVE -- WE HAVE TWO

14  CLAIMS, IN EFFECT, TWO CLAIMS FOR DAMAGES.  WE CLAIM

15  DAMAGES, YOU KNOW, DIRECT PROFITS FROM THE INFRINGING WORKS.

16  AND WE CLAIM INDIRECT PROFITS FROM WORKS WHICH ARE NOT

17  INFRINGING.  THOSE ARE DISTINCT AND SEPARATE, BUT THEY ALSO

18  OVERLAP.

19         SOME WORKS, FOR EXAMPLE, ARE DIRECTLY INFRINGING

20  BECAUSE THEY HAVE ON THE PACKAGING IMAGES WHICH WE CLAIM ARE

21  INFRINGING BECAUSE -- YOU KNOW, FOR EXAMPLE, THE HERO POSE,

22  THEY REPLICATE THE HERO POSE.

23         BUT ALSO WE ARE SEEKING INDIRECT PROFITS FOR THE

24  PROFITS FROM THOSE WORKS WHETHER OR NOT THE -- YOU KNOW,

25  WE'RE NOT CONTENDING THE HELMET LOOKS LIKE THE DOLL.  AND WE

7980

1    MAY CONTEND THAT THE HELMET IS INFRINGING IF IT HAS AN IMAGE

2    ON IT, DIRECTLY INFRINGING.  BUT EVEN IF IT'S NOT DIRECTLY

3    INFRINGING, WE'RE ENTITLED TO INDIRECT PROFITS FROM IT.

4              THE COURT:  AND THAT CAN BE ADDRESSED IN THE

5    DAMAGES QUESTIONS.  NO QUESTION ABOUT THAT.

6              MR. PROCTOR:  I MEAN, IT'S NOT ADDRESSED AT ALL IN

7    MGA'S FORMS.  INDIRECT PROFITS IS --

8              THE COURT:  I -- I UNDERSTAND.  INDIRECT PROFITS

9    ARE GOING TO BE ADDRESSED.  BUT -- BUT THAT'S EASIER TO

10   ADDRESS WITH AN INDIRECT PROFITS QUESTION, AND WE CAN STILL

11   HAVE THE JURY MAKE THE FINDINGS ON WHAT'S INFRINGING.

12             MR. PROCTOR:  I SUPPOSE THERE COULD BE SOME WAY TO

13   GROUP -- COME UP WITH SOME CATEGORIES, NOT SPECIFIC

14   PRODUCTS, BUT CATEGORIES OF PRODUCTS TO MAKE A DETERMINATION

15   ABOUT EXACTLY WHAT IS DIRECTLY INFRINGING AND WHAT IS NOT.

16             I DON'T REALLY SEE THE FRUITFULNESS OF IT IN THE

17   SENSE THAT IT'S NOT GOING TO AFFECT DAMAGES BECAUSE YOU'VE

18   GOT THE INDIRECT PROFITS THEORIES AS TO THE SAME WORKS,

19   WHICH ARE ALSO ALLEGEDLY DIRECTLY INFRINGING.  AND SO YOU

20   HAVE THIS OVERLAP, WHICH IS NOT EASY TO SEPARATE OUT IN ANY

21   WAY.

22             AND THE DAMAGES NUMBER IS GOING TO REFLECT THE

23   OVERALL AWARD ONE WAY OR THE OTHER.  YOU'RE GOING TO BE ABLE

24   TO DISCERN FROM THE DAMAGES AWARD WHAT THE JURY FINDS.  SO

25   THE JURY WILL MAKE A FINDING AND MAKE A DAMAGES AWARD BASED

1    ON THAT.

2              THE ONLY FINDING THAT'S LEGALLY REQUIRED IS THE

3    FINDING OF COPYRIGHT INFRINGEMENT.  MAYBE THERE'S SOME WAY

4    TO DO IT WITH SOME GROUPED CATEGORIES.  BUT GIVEN THE

5    PROBLEMS OF THE -- THE INDIRECT DAMAGES INTERPLAY WITH WORKS

6    WHICH ARE ALSO DIRECTLY INFRINGING, AND THE PROBLEMS OF

7    HAVING ONLY -- BECAUSE THE SAME WORK IS DIRECTLY INFRINGING

8    IN PART BECAUSE, IF FOR EXAMPLE, THE IMAGE ON IT, BUT

9    ALSO -- BUT ALSO WE'RE SEEKING INDIRECT PROFITS ON IT --

10   WE'RE SEEKING INDIRECT PROFITS ON A -- ON A INDIRECT PROFITS

11   THEORY, A CAUSATION THEORY.  AND COUPLED WITH THE PROBLEMS

12   OF THE LACK OF EVIDENCE IN THE SENSE THAT NOT ALL THE

13   ALLEGEDLY INFRINGING PRODUCTS HAVE BEEN SEEN BY THE JURY.

14             THEN, WHEN YOU START GROUPING IT OUT, THAT

15   SOMEHOW, SOMEWHERE ALONG THE LINE, THE JURY IS GOING TO HAVE

16   TO -- I MEAN, SAY YOU HAVE A CATEGORY AND YOU GET FINDINGS

17   YEA AS TO SOME CATEGORIES, NAY AS TO OTHER CATEGORIES.  THE

18   STIPULATION WHICH WAS READ SIMPLY SAID THE PRODUCTS THAT ARE

19   IN EVIDENCE ARE REPRESENTATIVE.

20             I THINK SEPARATING IT OUT IN THAT WAY COULD CREATE

21   ALL SORTS OF PROBLEMS DEPENDING ON WHAT COMES DOWN.

22             THE COURT:  WELL, THE WAY IT'S BEEN SEPARATED OUT

23   BY MGA IS YOU HAVE THE FIRST GENERATION OF BRATZ FASHION

24   DOLLS, THE LATER FASHION BRATZ DOLLS, AND THEN OTHER

25   PRODUCTS LINES.  SO THERE'S THREE BROAD CATEGORIES.

```
 1          WE HAVE REPRESENTATIVE PRODUCTS WITHIN EACH -- I'M
 2   NOT GOING TO DO THE SUGGESTION OF THEN -- YOU KNOW, HAVE THE
 3   DAMAGE FOLLOW IMMEDIATELY UNDER FOR, YOU KNOW, WHAT IS THE
 4   INFRINGEMENT DAMAGE BECAUSE THAT DOES VITIATE THE INDIRECT
 5   PROFITS.  DAMAGES WILL BE DEALT WITH SEPARATELY, AND WE CAN
 6   CERTAINLY ADDRESS THE INDIRECT PROFIT LINE OF ANALYSIS.
 7          BUT IT GIVES THE COURT A CERTAIN DEGREE OF
 8   CONFIDENCE THAT THE JURY IS DOING WHAT THE JURY SHOULD DO IN
 9   TERMS OF THE EXTRINSIC/INTRINSIC TEST BY THEM MAKING
10   PARTICULAR FINDINGS THAT AT LEAST THESE PARTICULAR LINES
11   ARE -- ARE -- AND THEY'VE ACTUALLY CONSIDERED THE ACTUAL
12   PRODUCTS.
13          AND PART OF THIS IS ALSO JUST A -- I -- I DON'T
14   JUST WANT TO THROW IT IN THE BLACK BOX AND HAVE A RESULT
15   COME OUT.  I WANT TO KNOW AND I WANT TO HAVE CONFIDENCE THAT
16   THE JURY IS DOING -- I MEAN, THESE ARE COMPLICATED
17   INSTRUCTIONS ABOUT EXTRINSIC AND INTRINSIC TESTS AND LOOKING
18   AT THE ELEMENTS.  AND WHILE I HAVE EVERY CONFIDENCE THAT --
19   AND I'M TRYING TO SET THIS UP SO THAT THEY HAVE ACCESS TO
20   THE PRODUCTS, I -- I REALLY WANT THEM TO ENGAGE IN THESE
21   TESTS AND ACTUALLY LOOK AT THE PRODUCTS.
22          AND, TO A CERTAIN EXTENT, THIS IS A WAY TO KIND OF
23   FORCE THE JURY TO DO JUST THAT, WHERE THEY HAVE TO CHECK YES
24   OR NO.
25          AND -- AND YOU'RE CORRECT, AT THE END OF THE DAY,
                                                         7983
```

```
 1    GIVEN THE COURT'S INSTRUCTIONS ON DERIVATIVE WORKS, GIVEN
 2    THE COURT'S INSTRUCTIONS ON INTERMEDIATE WORKS, GIVEN THE
 3    COURT'S INSTRUCTIONS ON INDIRECT PROFITS, THAT JUST BECAUSE
 4    THE JURY STRIKES NO TO A PARTICULAR PRODUCT AND SAYS THERE'S
 5    NOT A DIRECT INFRINGEMENT THERE, THAT THEY MAY OR MAY NOT
 6    INCLUDE THAT IN THE DAMAGES, AND THEY MAY OR MAY NOT BE
 7    ENTITLED TO INCLUDE THAT IN THE DAMAGES.
 8              BUT -- THAT THEY CAN DO, BUT AT LEAST I WILL KNOW
 9    THAT THEY CONSIDERED ALL OF THESE PRODUCTS.
10              MR. PROCTOR:  SURE.
11              THE COURT:  AND THERE'S A VALUE IN THAT.
12              MR. PROCTOR:  I -- I THINK I UNDERSTAND --
13    UNDERSTAND THE COURT'S CONCERNS.  I THINK THERE IS A -- A
14    GRAVE RISK OF JUROR CONFUSION IN ASKING THEM TO COME OUT AND
15    LINE UP WITH EXACTLY WHAT THEY'RE FINDING IS DIRECTLY
16    INFRINGING AND THEN HAVE SOME SEPARATE DETERMINATION AS TO
17    INDIRECT PROFITS WHICH THEY HAVE TO WALK THROUGH ON THE
18    VERDICT FORM.
19              THERE'S A RISK OF JUROR CONFUSION, AND THERE'S
20    POTENTIALLY -- AND I DON'T -- I'M -- I'M NOT PRETENDING TO
21    KNOW EXACTLY WHAT IT IS OR TO BE ABLE TO -- TO PREDICT
22    EXACTLY WHAT IT IS, BUT I THINK THERE IS A RISK OF A VERDICT
23    WHICH WOULD POTENTIALLY BE -- BE ATTACKABLE AS INCONSISTENT
24    IF -- IF DONE THIS WAY BECAUSE YOU'RE GOING TO GET -- YOU
25    KNOW, WE DON'T KNOW WHAT WE'RE GOING TO GET BACK, AND YOU
```

7984

```
 1    COULD GET BACK SOMETHING WHICH -- SAY WE GET BACK A -- A
 2    FINDING OF -- OF DIRECT INFRINGEMENT AS TO SOME AND NO
 3    DIRECT INFRINGEMENT AS TO SOME.  WHAT EXACTLY DOES THAT TELL
 4    YOU ABOUT WHAT THE JURY IS FINDING AS TO THE OTHER WORKS NOT
 5    IN EVIDENCE WHICH THESE ARE REPRESENTATIVE OF?  IT'S NOT
 6    EXACTLY CLEAR.
 7              THEN YOU HAVE A SEPARATE NUMBER BASED ON INDIRECT
 8    PROFITS WHICH ISN'T GOING TO BE, PRESUMABLY, SPECIFIED AS
 9    INDIRECT PROFITS.  THE DAMAGES NUMBERS IS JUST GOING TO BE
10    THE DAMAGES NUMBER --
11              THE COURT:  SO -- SO YOU DON'T EVEN WANT THE
12    SPLITTING UP OF DIRECT AND INDIRECT PROFITS?
13              MR. PROCTOR:  ABSOLUTELY NOT.  I MEAN, OUR DAMAGES
14    PRESENTATION -- I THINK BOTH SIDES' DAMAGES PRESENTATION HAS
15    BEEN NOT SPLIT UP IN THAT WAY.
16              IT'S -- YOU KNOW, IT'S PROFITS, AND THEN THERE'S
17    APPORTIONMENT DISCUSSION.  BUT IT'S NOT -- THERE'S NO
18    SEPARATION IN THE PRESENTATION OF EVIDENCE BETWEEN DIRECT
19    PROFITS AND INDIRECT PROFITS.
20              IN A CASE OF LIKE THIS WHERE YOU HAVE THIS MANY
21    PRODUCTS AND SOMEWHERE IN THE RANGE OF A THIRD OF THEM ARE
22    IN EVIDENCE THAT THE JURY CAN SEE, SEPARATING IT OUT IN THIS
23    WAY IS -- IS CONFUSING AND, I THINK, POTENTIALLY DANGEROUS
24    AFTER THE FACT.
25              THE COURT:  I'LL HEAR FROM MGA ON THIS ISSUE.
```

7985

1      MS. AGUIAR:   YOUR HONOR, I'VE BEEN AFFECTIONATELY

2 CALLING THEM COPYRIGHT CLAIM, BASED ON THEIR VERDICT FORM, A

3 DRIVE-BY COPYRIGHT CLAIM.   I THINK WE ARE ENTITLED TO KNOW,

4 THE JURY IS ENTITLED TO TELL THE COURT AND TELL THE PARTIES

5 WHAT PRODUCTS ARE INFRINGING.

6      THIS ISSUE CAME UP AT A HEARING, A TELEPHONIC

7 HEARING IN LATE JULY PRIOR TO THE 1-B PHASE.   AND THE ISSUE

8 WAS RAISED OF WHAT TO DO ABOUT ALL THESE TANGIBLE ITEMS.

9 AND I MENTIONED SOMETHING TO THE EFFECT OF, WHEN YOU SEEK

10 HUNDREDS OF MILLIONS OF DOLLARS, YOU CAN'T MAKE -- YOU CAN'T

11 TAKE SHORTCUTS.

12      AND THAT IS EXACTLY WHY WE PRODUCED, COLLECTED,

13 TAGGED WITH TRIAL EXHIBIT NUMBERS AND PUT IN THAT ROOM ALL

14 OF THOSE PRODUCTS.   AND THAT IS HOW THE EVIDENCE HAS COME IN

15 IN THIS PHASE.

16      THE JURY HAS HEARD ABOUT DIFFERENT PRODUCTS.   THEY

17 HAVE HEARD ABOUT THE FIRST GENERATION DOLLS.   THEY'VE HEARD

18 ABOUT THE LATER GENERATION DOLLS.   THERE'S BEEN A LOT OF

19 TESTIMONY ABOUT THE SUB-BRANDS.   THERE'S BEEN TESTIMONY

20 ABOUT THE MERCHANDISE.

21      SO IF YOU WANT TO TALK ABOUT JURY CONFUSION, I

22 DON'T REALLY UNDERSTAND HOW IT'S CONFUSING TO THE JURY TO

23 ACTUALLY GIVE THEM REASONABLE, LOGICAL CATEGORIES TO -- TO

24 MAKE THE INFRINGEMENT DETERMINATION.

25      I ALSO WANT TO POINT OUT A COUPLE OTHER THINGS.

1    IN THE -- THIS WAS PRIOR TO SKADDEN'S INVOLVEMENT, BUT I

2    WENT BACK AND LOOKED AT MATTEL'S MEMORANDUM REGARDING TRIAL

3    STRUCTURE, AND THAT WAS FILED BACK IN JUNE OF 2007.  AND AT

4    THAT POINT THEY WERE ARGUING THAT THIS TYPE OF ANALYSIS

5    SHOULD BE DONE IN A SEPARATE PHASE, SPECIFICALLY TO

6    POTENTIALLY AVOID THE, QUOTE, BURDENSOME ASSESSMENT OF, AT

7    THAT POINT THEY WERE CALLING IT -- WE WERE -- THE PARTIES

8    WERE CALLING IT 200 PRODUCTS.

9            BUT IF YOU LOOK BACK AT THAT DOCUMENT, ONE OF THE

10   RATIONALES FOR PHASING THE CASE IN THE WAY THAT YOUR HONOR

11   DID WAS SO THAT, DEPENDING ON THE OUTCOME OF 1-A, WE MAY NOT

12   HAVE A 1-B, WHERE BOTH PARTIES AT THAT POINT WERE -- WERE

13   COMPLETELY IN ACCORD.

14           IN FACT, MATTEL SAYS, AT THE BOTTOM OF PAGE 3 OF

15   THEIR PHASING MEMORANDUM, MATTEL SUBMITS THAT DEFENDANT'S

16   STATED CONCERN AND THAT THE STATED CONCERN IS ABOUT

17   ASSESSING COUNTLESS BRATZ -- BRATZ PRODUCTS.

18           AND THEN, IN YOUR PHASING ORDER FROM JULY OF '07,

19   YOU ACTUALLY -- YOU SPECIFICALLY MENTION THAT.  YOU SAY,

20   "WHILE PHASE 1-B WOULD ADDRESS APPROXIMATELY 200 BRATZ

21   PRODUCTS THAT ARE POTENTIALLY DERIVATIVE OF THE ORIGINAL

22   DRAWINGS."

23           SO I DO THINK THAT THIS WAS SOMETHING THAT WAS

24   ALWAYS CONTEMPLATED.  THAT'S HOW WE BROUGHT THE TANGIBLE

25   EVIDENCE IN.  THAT'S HOW THE EVIDENCE WAS PRESENTED TO THE

7987

```
1   JURY.
2           REGARDING MR. PROCTOR'S CONCERN, STATED CONCERN,
3   ABOUT THE STIPULATION REGARDING REPRESENTATIVE SAMPLE, I
4   DON'T REALLY GET HOW THAT'S A PROBLEM.  I MEAN, FRANKLY, IT
5   WAS UNWORKABLE TO COLLECT AND PRODUCE AND TAG EVERY SINGLE
6   PRODUCT.  SO WHAT THE PARTIES SAID WAS, OKAY, WE'RE GOING TO
7   DO AS MANY AS WE POSSIBLY CAN, AND THAT'S A REPRESENTATIVE
8   SAMPLE.
9           SO ON THE LIST THAT I DREW UP, FOR EXAMPLE, WE
10  DON'T PUT EVERY SINGLE WINTER WONDERLAND CHARACTER.  WE JUST
11  PUT THE THEME.  BECAUSE, WHEN IT CAME TO LATER GENERATIONS,
12  I DIDN'T THINK IT WAS PARTICULARLY WORKABLE TO GO INTO EVERY
13  SINGLE CHARACTER, EVERY SINGLE THEME.  SO RATHER THAN HAVE
14  HUNDREDS OF CATEGORIES, WE DID IT IN THE WAY, AGAIN, THAT I
15  THINK THE EVIDENCE LOGICALLY CAME IN FOR THE JURY, WHICH IS
16  THAT, FROM MATTEL'S EXPERT, THEIR DAMAGE EXPERT, AND --
17  AND -- AND OTHER OF THEIR WITNESSES THAT --
18          THE COURT:  THOSE ARE THE ONES WHERE YOU PUT, FOR
19  EXAMPLE --
20          MS. AGUIAR:  EXACTLY.  AND SO WE -- AND -- AND I
21  WAS TAKING THAT INTO ACCOUNT BECAUSE THE STIPULATION DOES
22  SAY IT'S A REPRESENTATIVE SAMPLE.  AND SO THAT'S WHY IT
23  SAYS, E.G., TRIAL EXHIBIT NO. BLANK, SO THAT THEY CAN
24  UNDERSTAND THAT THAT'S JUST AN EXAMPLE OF WHAT WE'RE TALKING
25  ABOUT.
```

```
 1              SO I -- I ACTUALLY, WHEN I WAS CONTEMPLATING THIS
 2    OVER -- YOU KNOW, LAST WEEK, I -- I THOUGHT OF WAYS THAT THE
 3    LISTS WERE EVEN LONGER.  I MEAN, HONESTLY, IF YOU GO TO THE
 4    SUB-BRANDS, THERE'S ONLY -- I DON'T KNOW -- MAYBE 17 LINES,
 5    AND THAT'S -- THAT'S SUPPORTED BY THE TESTIMONY OF AN MGA
 6    EMPLOYEE WHO ACTUALLY PUT INTO EVIDENCE EVERY SINGLE ONE OF
 7    THE DIFFERENT SCULPTS.
 8              AND THEN, IF YOU LOOK ON THE BOTTOM OF PAGE 6, TOP
 9    OF PAGE 7, WITH REGARD TO THE MERCHANDISE -- AND THERE'S
10    REALLY HUNDREDS OF DIFFERENT TYPES OF MERCHANDISE -- BUT
11    AGAIN, TRY TO PUT IT INTO CATEGORIES.  SO --
12              THE COURT:  I WANT TO MAKE SURE THAT MY THINKING
13    IS CORRECT ON THIS, AND SO IF YOU'D -- IF YOU'D ADDRESS
14    THE -- THE PRIMARY CONCERN THAT MR. PROCTOR SUBMITS IS
15    THAT -- I'M ASSUMING -- I NEVER WANT TO PUT ANYTHING INTO A
16    VERDICT FORM THAT'S NOT NEEDED.  BUT I DON'T WANT TO EXCLUDE
17    ANYTHING THAT IS NEEDED.  I MEAN, I DO BELIEVE LESS IS MORE
18    ON A VERDICT FORM.
19              MY THINKING IS THAT THIS -- HAVING THESE FINDINGS
20    WILL BE HELPFUL WHEN AND IF THE COURT IS CALLED UPON TO
21    FASHION INJUNCTIVE RELIEF IN THIS CASE.
22              MS. AGUIAR:  I THINK THAT'S --
23              THE COURT:  AM I CORRECT ON THAT?  AND IF I AM
24    CORRECT ON THAT, IS THERE SOMETHING THAT THIS WILL BE --
25    WHAT -- SET FORTH FOR ME WHAT IT IS -- WHY THIS IS HELPFUL.
                                                         7989
```

```
 1    HELP ME OUT HERE, COUNSEL.  WHY IS IT NECESSARY?  WHY IS IT
 2    HELPFUL?  HOW WILL IT BE HELPFUL?
 3                IN ADDITION TO THE ONE REASON THAT I'VE STATED, TO
 4    KIND OF MAKE SURE THE JURY'S DOING ITS JOB --
 5                MS. AGUIAR:  RIGHT.
 6                THE COURT:  -- WHICH I'M BEING FORCED TO PRESUME,
 7    BUT I -- I DO LIKE THE IDEA OF THEM HAVING TO ACTUALLY GO
 8    THROUGH AND -- AND GRAPPLE WITH THE PRODUCT THEMSELVES.
 9                BUT PUTTING THAT ISSUE ASIDE, TELL ME WHY IT IS
10    THAT THIS IS NECESSARY AND -- AND TO HAVE THIS IN THE
11    VERDICT FORM.
12                MS. AGUIAR:  WELL, I THINK THAT IT'S NOT JUST THAT
13    WE'RE TRYING TO SO-CALL BABYSIT THE JURY AND MAKE SURE
14    THEY'RE DOING THEIR JOB.
15                THE COURT:  RIGHT.
16                MS. AGUIAR:  I THINK IT'S A QUESTION OF A VERDICT
17    FORM HAVING THE ULTIMATE GOAL OF -- OF ASSISTING THE JURY
18    IN -- IN DOING WHAT THEY NEED TO DO.  AND AGAIN, NOT -- NOT
19    MAKING SURE THAT THEY'RE -- THAT THEY'RE TAKING A SHORTCUT,
20    BUT TO HELP THEM UNDERSTAND HOW THEY CAN WORK THROUGH THIS.
21                AND I THINK THIS SETS UP A LOGICAL RUBRIC FOR THEM
22    TO SAY, OKAY, THERE'S BEEN A LOT OF TESTIMONY, AND THE
23    PARTIES HAVE SPECIFICALLY FOCUSED, FOR EXAMPLE, ON THE FIRST
24    GENERATION DOLLS.  SO LET'S LOOK AT THOSE.
25                AND THEN THE WAY THAT THE EVIDENCE HAS COME IN IS
                                                            7990
```

```
 1    THAT EVERY GENERATION OR EVERY LINE AFTER THAT, FOR EXAMPLE,
 2    AS YOUR HONOR MENTIONED ONE DAY UP ON THE BENCH, WHEN YOU
 3    LOOKED AT ONE OF THE LATER DOLLS, YOU SAID, "YEAH, AS YOU
 4    GET FURTHER AWAY, THERE ARE DIFFERENT CONSIDERATIONS.  THERE
 5    ARE DIFFERENT PACKAGING, DIFFERENT ACCESSORIES, DIFFERENT
 6    FASHIONS."  AND THAT'S SOMETHING THAT THEY -- THAT THEY NEED
 7    TO LOOK AT.
 8             SO I THINK, IF OUR GOAL HERE IS TO GIVE THE JURY A
 9    DOCUMENT THAT ASSISTS THEM IN -- IN DOING THEIR JOB, NOT
10    JUST MAKING SURE THEY'RE DOING IT, BUT HELPS THEM DO IT, I
11    THINK THAT'S ONE THING.
12             THE COURT:  IN ADDITION TO THAT --
13             MS. AGUIAR:  I ALSO THINK THAT WE ARE ENTITLED
14    TO -- WE, MGA, ARE ENTITLED TO KNOW BEYOND JUST COPYRIGHT
15    INFRINGEMENT, WHAT -- WHAT ARE WE, AS THE PARTIES, AND WHAT
16    DO YOU, AS THE COURT, WHAT DO YOU DO WITH THAT?
17             YES, IT'S INFRINGING.  OKAY.  NOW, THEY COULD
18    MEAN -- AND I UNDERSTAND THAT BY BREAKING IT DOWN THIS
19    WAY -- SOMEONE EARLIER TODAY SAID A PHRASE LIKE WHOSE OX
20    GETS GORED.  BUT I MEAN, I'M NOT SURE IF THIS IS GOING TO
21    INURE TO OUR BENEFIT OR TO OUR DETRIMENT IN THE END, BUT I
22    THINK IT'S THE WAY TO GO.
23             WE -- WE COULD BE -- WE, MGA, COULD, IN THE END,
24    DEPENDING ON HOW THIS JURY COMES OUT, WE COULD GET A VERDICT
25    THAT SAYS, YOU KNOW, DOES THIS INFRINGE?  WE COULD GET LOTS
```

1  OF YES CHECKMARKS.

2        THE COURT:  IT COULD LOOK LIKE THAT FIRST VERDICT,

3  OR IT COULD LOOK THE OTHER WAY.

4        MS. AGUIAR:  YES.  SO I DON'T REALLY KNOW WHICH

5  WAY THIS IS GOING TO GO.  I KNOW HOW I WISH IT WILL GO, BUT

6  I -- I --

7        THE COURT:  TAKE -- TAKE IT TO THE NEXT STEP.

8  WHAT SIGNIFICANCE DOES THAT HAVE BESIDES RAISING MR. NOLAN'S

9  BLOOD PRESSURE?

10        MS. AGUIAR:  RIGHT.  AND I -- I AGREE WITH YOU

11  REGARDING INJUNCTIVE RELIEF, AND I -- I THINK THAT IT WOULD

12  GENERALLY ASSIST IN -- IN DETERMINING HOW WE NEED TO MOVE

13  FORWARD.

14        THE COURT:  OKAY.

15        MS. AGUIAR:  AND -- AND I ACTUALLY DON'T THINK

16  THAT ANY OF THE PURPORTED -- I -- I DON'T UNDERSTAND THE --

17  THE PURPORTED DOWNSIDES.  I DON'T THINK THEY ACTUALLY ARE

18  DOWNSIDES.

19        MR. NOLAN:  COULD I ADD ONE MORE THING, YOUR

20  HONOR?

21        MS. AGUIAR:  AND -- AND HE WANTS TO ADD ANOTHER

22  BENEFIT THAT, WHEN HE WAS WHISPERING, FRANKLY, I COULDN'T

23  UNDERSTAND HIM.

24        THE COURT:  OKAY.

25        MR. NOLAN:  I'M NOT TAKING ANYTHING WAY.

1       THE OTHER THING IS THAT I THINK THAT, AFTER THE

2  VERDICT, KNOWING EXACTLY WHAT THEY FOUND, WHICH COULD SET UP

3  THE INJUNCTIVE RELIEF HEARINGS AND ADDITIONAL HEARINGS THAT

4  WE'RE GOING TO HAVE ON THE EFFECT OF THIS VERDICT, INCLUDING

5  POSSIBLY AN ANALYSIS OF WHETHER OR NOT AN INJUNCTIVE

6  APPROACH IS -- IS THE RIGHT WAY OR A ROYALTY RATE, AS

7  SUGGESTED UNDER THE E-BAY CASE.  BUT FRANKLY, YOUR HONOR, I

8  THINK IT WOULD ALSO INFORM THE PARTIES BECAUSE I'M SURE THE

9  COURT IS GOING TO DIRECT BOTH SIDES TO VISIT THE

10 COURT-APPOINTED MEDIATOR IN THE CASE.  AND UNDERSTANDING THE

11 BREADTH AND SCOPE OF WHAT WE COULD BE LOOKING AT GOING

12 FORWARD COULD ALSO BE OF ENORMOUS HELP AND ASSISTANCE IN

13 THAT REGARD.

14       THE COURT:  VERY WELL.

15       MR. PROCTOR.

16       MR. PROCTOR:  THE -- I THINK I UNDERSTAND THE

17 COURT'S PROFFERED POTENTIAL UPSIDE TO THIS, YOU KNOW,

18 HELPING -- HELPING WHEN IT COMES TO INJUNCTIVE RELIEF.  I

19 THINK -- I THINK I SEE WHERE THE COURT'S GOING WITH THAT.  I

20 DIDN'T HEAR ANOTHER ARTICULATED BENEFIT, SET -- ON HELPING

21 WITH SETTLEMENT POTENTIALLY.

22       THESE ARE WHAT I WOULD PHRASE, I SUPPOSE,

23 COLLATERAL BENEFITS.  THEY'RE NOT IN THE -- I MEAN, THE

24 COURT'S PHRASE WAS YOU DON'T WANT TO PUT ANYTHING IN A

25 VERDICT FORM THAT THE JURY DOESN'T NEED TO DECIDE.  AND TO

                                                    7993

```
 1    DECIDE THIS CASE, TO DECIDE WHAT'S BEFORE THE JURY, THE JURY
 2    DOESN'T NEED TO DO ANY OF THIS.  IT DOESN'T NEED TO DECIDE
 3    IT.
 4            AND I DO HAVE SERIOUS CONCERNS ABOUT THE POTENTIAL
 5    CONFUSION TO THE JURY OF HAVING IT WALK THROUGH A LIST OF --
 6    OF A HUNDRED BOXES OR WHATEVER THE NUMBER ENDS UP BEING, AND
 7    THEN START TO CHANGE ITS MINDSET, THE JURY'S COLLECTIVE
 8    MINDSET, FROM THE REALM OF, YOU KNOW, DIRECT PROFITS TO
 9    INDIRECT PROFITS IN THIS SEPARATE SORT OF -- SEPARATE
10    ANALYSIS, WHICH -- WHICH HAS NOT REALLY BEEN SEPARATED IN
11    TERMS OF THE PRESENTATION OF THE EVIDENCE THROUGH THE
12    EXPERTS, AT LEAST.
13            YOU KNOW, THE DAMAGES EVIDENCE, THE NUMBERS THAT
14    THE JURY HAS BEEN WRITING DOWN WHEN THE EXPERTS ARE
15    TESTIFYING, THE NUMBERS THAT ARE GOING TO GO UP IN CLOSING,
16    PRESUMABLY, HAVE BEEN -- HAVE BEEN MERGING THESE THINGS.
17            AND SO THE -- THE SUBMISSION THAT I WOULD MAKE IS,
18    YOU KNOW, LET'S HAVE WHAT THE JURY NEEDS TO DECIDE, NEEDS TO
19    DO.  YOU KNOW, THERE'S THE PRESUMPTION THE JURY'S GOING
20    FOLLOW THE INSTRUCTIONS, OBVIOUSLY.  LET'S HAVE THE JURY DO
21    WHAT IT NEEDS TO DO, WHICH I THINK OUR FORM CAPTURES.
22            AND THEN, IF -- IF THE COURT WANTS, EFFECTIVELY,
23    FINDINGS OF FACT AS GUIDANCE FOR WHEN IT COMES TIME TO
24    DECIDE ABOUT INJUNCTIVE RELIEF, THAT'S SOMETHING THAT COULD
25    BE DONE IN A SEPARATE SECTION OF THE FORM, PERHAPS NEAR THE
                                                      7994
```

1   END OF IT, AFTER THE JURY HAS MADE ITS ANALYSIS OF WHETHER

2   THERE'S INFRINGEMENT AND WHAT THE DAMAGES ARE ARISING FROM

3   THAT INFRINGEMENT AS TO EACH OF THE PARTICULAR -- EACH OF

4   THE PARTICULAR PARTIES.

5          AND IN OUR FORM, WE -- YOU KNOW, WE SEPARATE THAT

6   OUT IN THE -- IN THE DEGREE OF SPECIFICITY THAT THE JURY

7   NEEDS TO FOLLOW IN ORDER TO REACH -- REACH LEGALLY

8   SUSTAINABLE CONCLUSIONS BASED ON THE EVIDENCE.

9          THE COURT:  WE -- WE DO, I THINK, VERY CLEARLY

10  SPELL THIS OUT IN THE JURY INSTRUCTION ON INDIRECT PROFITS.

11  I MEAN, YOU KNOW, MATTEL WILL CERTAINLY ARGUE, AND MGA

12  REALLY CANNOT ARGUE THAT SOMEHOW THE INDIRECT PROFITS DO NOT

13  APPLY, THAT EVEN IF THERE IS -- I MEAN, IT IS WHAT IT IS.

14         MR. PROCTOR:  THAT'S ABSOLUTELY TRUE.  MY -- MY

15  CONCERN IS SIMPLY THAT, GOING THROUGH THIS -- HAVING THE

16  JURY WALK THROUGH THIS ANALYSIS AS TO, YOU KNOW, AS TO

17  WHETHER MERCHANDISE IS DIRECTLY INFRINGING, OTHER PRODUCT

18  LINES DIRECTLY INFRINGING, DOING ALL THAT, THEN LEADING UP

19  TO A DAMAGES QUESTION, I FEAR -- I FEAR IS GOING TO LEAD TO

20  CONFUSION ABOUT THIS -- THIS DISTINCTION, WHICH IS -- AND

21  NOT A PARTICULARLY CLEAR DIS -- I MEAN, LOOK AT THE

22  INTERPLAY BETWEEN --

23         THE COURT:  I UNDERSTAND -- I UNDERSTAND YOUR

24  ARGUMENT, I UNDERSTAND MGA'S ARGUMENT.  I'LL THINK ABOUT

25  THIS THIS AFTERNOON.

```
 1          WHAT I WOULD LIKE IS A DISK OF EACH OF THE VERDICT
 2   FORMS GIVEN TO MR. HOLMES, IF YOU CAN.  I DON'T KNOW IF YOU
 3   HAVE THAT NOW.  IF NOT, LET'S GET IT WITHIN THE NEXT HALF
 4   HOUR.
 5          AND I'LL TRY TO HAVE BOTH THE JURY INSTRUCTION
 6   FORMS AND THE VERDICT FORM BY FOUR O'CLOCK THIS AFTERNOON OR
 7   WHENEVER MY CRIMINAL CALENDAR ENDS.
 8          MS. AGUIAR:  CAN WE E-MAIL THOSE?  BECAUSE THEY'RE
 9   QUITE SHORT.
10          THE COURT:  E-MAIL IS JUST FINE.
11          MS. AGUIAR:  OKAY.
12          THE COURT:  THANK YOU.
13          ALL RIGHT.  TO ADDING ONE MORE -- I'M SORRY?
14          MR. PROCTOR:  SHOULD WE SEND THEM BY E-MAIL TO
15   MR. HOLMES?
16          THE COURT:  THAT'S -- THAT'S FINE.  SEND THEM BY
17   E-MAIL TO MR. HOLMES.
18          WE HAVE ONE MORE MATTER TO TAKE UP.
19          (PROCEEDINGS CONTINUED TO 4:42 P.M.)
20          THE CLERK:  RECALLING NUMBER 6, IN THE MATTER OF
21   MATTEL, INC., VS. MGA, CASE NO. CV 04-9049.
22          THE COURT:  COUNSEL, WHY DON'T YOU JUST MAKE YOUR
23   APPEARANCES FOR THE RECORD, FOR THIS AFTERNOON'S SESSION.
24          MR. PROCTOR:  DYLAN PROCTOR FOR MATTEL.
25          MS. AGUIAR:  LAUREN AGUIAR AND CARL ROTH FOR MGA.
```

```
 1              MR. ROTH:  GOOD AFTERNOON.

 2              THE COURT:  GOOD AFTERNOON.

 3              T HOPE THAT JUDGE MATZ DIDN'T ABDUCT MR. ZELLER.

 4              MR. PROCTOR:  HE -- HE DETAINED HIM AND

 5   INCARCERATED.

 6              THE COURT:  ALL RIGHT.

 7              MR. PROCTOR:  HE'S IN ROUTE HERE, YOUR HONOR.

 8              THE COURT:  OKAY.  LET ME FOLLOW UP ON SOME JURY

 9   INSTRUCTION ISSUES.

10              THE -- THERE WERE -- THERE WERE TWO MATTERS THAT

11   I'D ASKED COUNSEL FOR MATTEL TO SEE IF -- TO PROVIDE THE

12   COURT WITH -- WITH TRANSCRIPT REFERENCES TO, AND THIS THE

13   ISSUE OF WHETHER THERE WAS ANY EVIDENCE CONCERNING

14   PREJUDGMENT INTEREST AND WHETHER THERE WAS ANY EVIDENCE

15   CONCERNING TIME AND MONEY SPENT BY MATTEL IN ATTEMPTING TO

16   RECOVER THE PROPERTY THAT IS THE SUBJECT MATTER OF THE

17   CONVERSION CLAIM.

18              MR. PROCTOR:  AND WE -- WE DO HAVE THEM, YOUR

19   HONOR.  IF I COULD HAND IT UP.

20              THE COURT:  PLEASE.

21              MR. PROCTOR:  WE'VE ALSO INCLUDED A THIRD IN HERE,

22   YOUR HONOR, WHICH IS THE TESTIMONY IN THE RECORD ABOUT THE

23   AGE OF THE CONSUMER OF THE DOLL.

24              THE COURT:  VERY GOOD.

25              ALL RIGHT.  THAT WAS MY FIRST QUESTION.
```

7997

```
 1              SECOND QUESTION RELATES TO -- WELL, IT'S NOT SO
 2   MUCH A QUESTION.  IT'S -- IT'S -- WELL, IT'S NOT REALLY A
 3   QUESTION.
 4              WELL, I -- I GUESS I COULD ASK, IS THERE ANYTHING
 5   FURTHER ON ANY OF THE ISSUES THAT WE DISCUSSED THIS MORNING
 6   THAT YOU WANT TO READDRESS?  I MEAN, THE COURT HAS TAKEN A
 7   LOOK AT THE VARIOUS AUTHORITIES THAT WERE SUBMITTED BY BOTH
 8   SIDES, AND I'M PREPARED TO RULE BASED ON THOSE AUTHORITIES.
 9   BUT IF THERE'S ANY FURTHER -- ANYTHING ELSE THAT YOU CAME UP
10   WITH IN THE COURSE OF THE AFTERNOON, I'D BE HAPPY TO HEAR
11   FROM YOU.
12              MR. ROTH:  YOUR HONOR, CARL ROTH.
13              MR. KENNEDY WAS ADDRESSING WITH YOU EARLIER THE
14   QUESTION OF PUNITIVE DAMAGES IN THE --
15              THE COURT:  THAT'S RIGHT.
16              MR. ROTH:  IN THE -- HE WAS ABLE TO FIND, THROUGH
17   THE HELP OF OUR TEAM, A CASE, DURING THE COURSE OF THE
18   HEARING, THAT ADDRESSES THE -- THE PROPRIETY OF THE VARIOUS
19   FIVE FACTORS.  WE HAVE SINCE FOUND AN ADDITIONAL CASE,
20   BULLOCK V. PHILIP MORRIS USA, 15 CAL.APP 4TH 655.  I BELIEVE
21   IT'S 690 IS THE PAGE CITE, WHICH READS, IN PART:
22              "WE HAVE INSTRUCTED COURTS TO DETERMINE THE
23   REPREHENSIBILITY OF A DEFENDANT BY CONSIDERING WHETHER THE
24   HARM CAUSED WAS PHYSICAL AS OPPOSED TO ECONOMIC, THE
25   TORTIOUS CONDUCT EVINCED AN INDIFFERENCE TO OR A RECKLESS
```

1    DISREGARD OF THE HEALTH OR SAFETY OF OTHERS, THE TARGET OF
2    THE CONDUCT HAD FINANCIAL VULNERABILITY, THE CONDUCT
3    INVOLVED REPEATED ACTIONS OR WAS AN ISOLATED INCIDENT, AND
4    THE HARM WAS THE RESULT OF INTENTIONAL MALICE, TRICKERY, OR
5    DECEIT OR MERE ACCIDENT."

6           REALLY THE SAME LIST THAT WAS REFERRED TO EARLIER.
7    I'D BE HAPPY TO HAND THIS UP TO YOUR HONOR, IF YOU WOULD
8    LIKE TO LOOK AT IT.

9           THE COURT:  BUT -- AND -- AND THE COURT ITSELF HAS
10   FOUND SOME ADDITIONAL CASES WHICH MAKE REFERENCE TO ALL FIVE
11   FACTORS.  BUT WHAT I'M NOT FINDING, MR. ROTH, IS A CASE
12   WHICH SUGGESTS THAT, IN THE ABSENCE OF ANY EVIDENCE RELATING
13   TO ONE OF THE FACTORS, THAT IT'S STILL REQUIRED OR NECESSARY
14   TO GIVE THAT FACTOR.

15          I MEAN, THAT'S -- AND PHILIP MORRIS, OF COURSE,
16   THAT WAS ONE -- THAT'S THE BIG TOBACCO CASE IN CALIFORNIA.
17   THERE WAS CERTAINLY EVIDENCE OF HARM, PHYSICAL HARM,
18   PHYSICAL INJURY TO THE INDIVIDUAL PLAINTIFFS.

19          THE QUESTION THAT I'M HAVING IS IN A PURELY
20   ECONOMIC CASE, WHERE THERE'S NO ALLEGATION WHATSOEVER OF
21   PHYSICAL INJURY OR PHYSICAL HARM, HAS -- HAVE THE CALIFORNIA
22   COURTS EVER REQUIRED APPARENTLY NON OR IRRELEVANT FACTORS TO
23   BE GIVEN AS KIND OF A MEASURE OF THE REPREHENSIBILITY?

24          MR. ROTH:  THE ONLY AUTHORITY I'M AWARE OF THAT,
25   AT THIS POINT, IS THE CAMPBELL CASE ITSELF, U.S. SUPREME

                                                        7999

```
 1   COURT, WHICH AGAIN WAS AN ECONOMIC HARM CASE AND LAID OUT,

 2   AGAIN, THE VERY -- VERY SAME FACTORS FROM WHICH WE POINT --

 3             THE COURT:  RIGHT.  AND IT MENTIONED THOSE

 4   FACTORS -- RIGHT.  ALL RIGHT.  FAIR ENOUGH.

 5             ANYTHING FURTHER FROM MGA ON THE JURY

 6   INSTRUCTIONS?

 7             MR. ROTH:  NO, YOUR HONOR, UNLESS . . .

 8             MS. AGUIAR:  JUST TWO THINGS, YOUR HONOR.

 9             THE PARTIES HAD SUBMITTED COMPETING INSTRUCTIONS

10   ON THE COMPETITIVE PRODUCTS ISSUE.

11             THE COURT:  THAT'S RIGHT.

12             MS. AGUIAR:  AND I SORT OF LOOKED AT BOTH OF THEM,

13   AND MAYBE YOU'VE ALREADY DONE THIS, BUT I WAS GOING TO

14   PROPOSE A COMPROMISE SENTENCE.  OR IF YOU'VE ALREADY DONE

15   IT, THEN I --

16             THE COURT:  NO, I THINK I'VE ALREADY DONE THAT.

17             MS. AGUIAR:  OKAY.

18             THE COURT:  I THINK.

19             MS. AGUIAR:  OKAY.

20             THE COURT:  THE COMPETITIVE PRODUCTS ARGUMENT IS

21   THE -- YEAH, BUYING OTHER PEOPLE'S PRODUCTS -- I'VE ALREADY

22   DONE THAT.

23             MS. AGUIAR:  YEAH.  OKAY.  SORRY.

24             THE COURT:  I'VE TAKEN ONE SENTENCE FROM ONE AND

25   ONE SENTENCE FROM THE OTHER.
```

```
 1        MS. AGUIAR:  OKAY.  THAT'S SORT OF WHAT I DID, SO
 2   I'M -- SORRY I DIDN'T GET TO THAT SOONER.
 3        THE COURT:  WE'RE PROBABLY -- PROBABLY ON THE SAME
 4   WAVELENGTH.
 5        MS. AGUIAR:  OKAY.  AND -- AND THEN, WHEN WE WERE
 6   ARGUING THE VERDICT FORM, SOMETHING DID OCCUR TO ME THAT I
 7   THINK IS NEEDED IN ORDER TO COMPLETE ONE OF THE
 8   INSTRUCTIONS.  AND THAT'S ON PAGE 32 --
 9        THE COURT:  OKAY.  HOLD ON.
10        MS. AGUIAR:  -- OF YOUR --
11        THE COURT:  32.  THAT'S THE INSTRUCTION ON ACCESS.
12   OKAY.
13        MS. AGUIAR:  RIGHT.  SO -- AND -- AND BEFORE I
14   READ IT --
15        THE COURT:  INDEPENDENT CREATION.  I'M SORRY.
16        MS. AGUIAR:  YEAH.  AND -- AND BEFORE I READ IT,
17   THE ACTUAL WORDS THAT I WOULD PROPOSE PUTTING IN, THE REASON
18   THAT I'M BRINGING THIS UP IS -- IS THAT I THINK IT DOESN'T
19   REFLECT ALL OF THE PRODUCTS THAT -- THAT ARE AT ISSUE.
20        SO IN OTHER WORDS, WHAT I WOULD LOOK AT --
21        THE COURT:  I SEE.
22        MS. AGUIAR:  -- LINE -- WHAT LOOKS LIKE LINE 6 ON
23   MY COPY, WHICH IS THE THIRD LINE OF THE INSTRUCTION.  IT
24   ENDS, "DEFENDANTS CONTEND THAT THE BRATZ DOLLS."  AND WHAT I
25   WOULD JUST INSERT THERE ARE THE OTHER --
```

8001

1           THE COURT:  ARE OTHER WORKS?

2           MS. AGUIAR:  "AND OTHER ALLEGEDLY INFRINGING" -- I

3   WOULD SAY "PRODUCT LINES AND MERCHANDISE," OR SOMETHING LIKE

4   THAT, BECAUSE I JUST THINK WE DO HAVE TO ADDRESS THE

5   UNIVERSE --

6           THE COURT:  GO BEYOND DOLLS.

7           MR. AKROTIRIANAKIS:  AND -- RIGHT.

8           AND THEN, ON LINE 9, INSTEAD OF SAYING, "THEY

9   CREATED THE BRATZ DOLLS," MAYBE JUST, "THEY CREATED THESE

10  PRODUCTS."

11          THE COURT:  THAT WAS A GOOD CATCH.

12          MS. AGUIAR:  OKAY.  ALL RIGHT.  THANK YOU.

13          THE COURT:  THAT'S A GOOD CATCH.

14          ALL RIGHT.  AND I UNDERSTAND THAT -- THAT MATTEL

15  OBJECTS TO THE INDEPENDENT CREATION CONSTRUCTION IN ITS

16  ENTIRETY, BUT I DO BELIEVE IT'S APPROPRIATE.

17          ALL RIGHT.  ANYTHING ELSE FROM MGA ON THE

18  INSTRUCTIONS?

19          MS. AGUIAR:  NO, YOUR HONOR.

20          THE COURT:  ANYTHING ELSE FROM MATTEL ON THE

21  INSTRUCTIONS?

22          MR. PROCTOR:  I WAS GOING TO MAKE ONE -- I WAS

23  GOING TO MAKE COMMENT ON THE VERDICT FORM.

24          THE COURT:  VERY WELL.

25          MR. PROCTOR:  AND THIS IS -- THIS IS REALLY JUST

                                                        8002

```
 1   AN ATTEMPT, PERHAPS, TO PUT A FINER POINT ON -- ON SOMETHING
 2   I WAS -- WAS SAYING EARLIER.
 3          IF YOU LOOK, FOR EXAMPLE, AT THE LIST OF LATER
 4   GENERATION DOLLS AND IN TERMS OF, YOU KNOW, RISK OF
 5   INCONSISTENT VERDICT OR -- OR LACK OF CLARITY, ONE POSSIBLE
 6   OUTCOME WOULD BE THE JURY WOULD FIND THAT SOME OF THE LATER
 7   GENERATION DOLLS WERE DIRECTLY INFRINGING AND SOME WERE NOT.
 8   AND GIVEN -- GIVEN THE STATE OF PLAY WHERE WE HAVE THIS
 9   STIPULATION THAT THE PRODUCTS ARE REPRESENTATIVE --
10          THE COURT:  YOU'RE GETTING INTO THE VERDICT RIGHT
11   NOW -- FORM.
12          MR. PROCTOR:  OH, THAT'S --
13          THE COURT:  I'M JUST ASKING ABOUT THE
14   JURY INSTRUCTIONS.  I'LL --
15          MR. PROCTOR:  OH, CORRECT.
16          THE COURT:  -- GET TO THE VERDICT FORM IN A
17   SECOND.
18          MR. PROCTOR:  OH, NO, I -- THEN I MISUNDERSTOOD.
19          THE COURT:  OKAY.
20          SO ANY OTHER -- ANY OTHER ISSUES ON THE
21   INSTRUCTIONS?
22          MR. PROCTOR:  WE'LL SUBMIT.
23          THE COURT:  ALL RIGHT.  VERY WELL.
24          THE -- THE ONE THING I'M STILL GRAPPLING WITH, THE
25   COURT WAS ABLE TO FIND A NINTH CIRCUIT CASE.  AND I'LL JUST
                                                        8003
```

1    CITE IT FOR -- FOR COUNSEL BECAUSE I DIDN'T SEE IT

2    REFERENCED.   IT MAY HAVE BEEN, AND I MISSED IT.

3         ON THIS ISSUE OF WILLFUL INFRINGEMENT AND THE

4    CONSEQUENCES THEREOF FOR -- FOR DAMAGES, IT'S CLEAR THAT THE

5    TAXES ARE OUT IF THERE'S WILLFUL INFRINGEMENT.   THE QUESTION

6    IS ON THE OVERHEAD.   AND -- AND THE SECOND CIRCUIT HAS THIS

7    RATHER ELABORATE NEXUS TEST THAT IS EXTRAORDINARILY

8    DIFFICULT TO TRANSLATE INTO A JURY INSTRUCTION.

9         INTERESTINGLY, IN THE CASES ON THE SECOND CIRCUIT

10   THEY -- AND THAT'S WHERE THE COURT FOUND THE CASE -- WAS

11   THEY MADE REFERENCE TO A NINTH CIRCUIT CASE CALLED FRANK

12   MUSIC CORPORATION VS. MGM, 772 F.2D 505.   THE PIN CITE'S AT

13   515, WHERE THE COURT SEEMED TO EMBRACE THE NOTION THAT, WITH

14   WILLFUL INFRINGEMENT, THAT AN INFRINGER'S OVERHEAD MAY NOT

15   BE DEDUCTED.   THEY DID IT IN A ROUNDABOUT WAY, BASICALLY

16   UPHOLDING THE DEDUCTIONS WHERE THERE WAS A FINDING OF THE

17   INFRINGEMENT NOT BEING WILLFUL AND IMPLYING THAT, IF IT WERE

18   WILLFUL, THAT THE -- THE DEDUCTION WOULD NOT HAVE BEEN

19   UPHELD.

20        BUT THAT'S THE CLOSEST THAT I'VE BEEN ABLE TO FIND

21   TO A NINTH CIRCUIT CASE, BUT I'M GOING TO CONTINUE TO

22   GRAPPLE WITH THAT ISSUE INTO THE EVENING.

23        MR. ROTH:   YOUR -- YOUR HONOR, I -- I APOLOGIZE.

24        THE COURT:   I SAW -- YOU SAID THERE WAS NOTHING

25   MORE, COUNSEL.   1 ASKED A COUPLE -- OKAY.   THIS IS IT,

                                                    8004

```
 1    THOUGH.

 2              MR. ROTH:  UNDERSTOOD.  UNDERSTOOD.

 3              THE COURT:  THIS IS YOUR LAST -- THIS IS YOUR LAST

 4    STATEMENT ON JURY INSTRUCTIONS.

 5              MR. ROTH:  I APOLOGIZE.

 6              JUST ON THAT EXACT POINT, THERE -- THERE WAS IN

 7    THE CASE, ZZ TOP CASE, THAT ACTUALLY GRAPPLES WITH EXACTLY

 8    THE LANGUAGE IN FRANK MUSIC THAT YOUR -- YOUR HONOR HAS

 9    POINTED TO.  AND IF THAT'S AT ALL HELPFUL, I CAN GIVE YOU

10    THAT CITE.

11              THE COURT:  IT'S A NINTH CIRCUIT CASE?

12              MR. ROTH:  IT'S NOT.  IT'S A DISTRICT -- IT'S A

13    WESTERN DISTRICT CASE, AND IT TALKS ABOUT THAT LANGUAGE

14    IN --

15              THE COURT:  WESTERN DISTRICT OF --

16              MR. ROTH:  OF WASHINGTON.

17              THE COURT:  WHAT'S THE CITE?

18              MR. ROTH:  70 F.SUPP 2D 1167.

19              THE COURT:  1167?

20              MR. ROTH:  1167.  AND IT'S REALLY 1168 AND 1169

21    WHERE IT DISCUSSES THAT EXACT LANGUAGE IN FRANK MUSIC.

22    YOU -- YOU MIGHT FIND IT HELPFUL.

23              THE COURT:  VERY WELL.

24              MR. ROTH:  I APOLOGIZE FOR INTERRUPTING.

25              THE COURT:  COUNSEL?
```

```
 1              MR. PROCTOR:  IF -- IF I MAY RESPOND TO
 2    TWO POINTS.  THERE'S -- THERE'S ACTUALLY ANOTHER CASES WHICH
 3    ALSO ADDRESSES THE LANGUAGE OF THE FRANK MUSIC CASE.  THAT'S
 4    THE SAXON CASE, WHICH IS THE EIGHTH CIRCUIT, WHICH WE CITED
 5    IN OUR PAPERS.  I CAN PROVIDE THE CITE IF THE COURT WOULD
 6    LIKE.
 7              THAT CASE HOLDS APPLYING OR INTERPRETING
 8    FRANK MUSIC THAT OVERHEAD IS NOT DEDUCTIBLE.  PER SE, NOT
 9    DEDUCTIBLE IN CASES OF WILLFUL INFRINGEMENT.
10              SO THAT'S THAT COURT'S INTERPRETATION OF -- OF THE
11    LANGUAGE IN FRANK MUSIC, WHICH --
12              THE COURT:  I -- I MUST HAVE JUST MISSED YOUR
13    REFERENCE TO FRANK MUSIC, THEN.
14              MR. PROCTOR:  YOU KNOW, FRANKLY, I THINK YOU DID
15    NOT.  I THINK WE -- WE CITED THE SAXON CASE, WHICH CITES
16    FRANK MUSIC, BUT WE -- WE LEFT OUT THE CITE TO FRANK MUSIC.
17              THE COURT:  VERY GOOD.
18              MR. PROCTOR:  THE OTHER POINT THAT I WOULD MAKE ON
19    THIS, BECAUSE THIS IS -- THIS IS AN ISSUE WHICH IS JUST
20    COMING TO THE FOREFRONT RIGHT NOW, WE HAVE -- WE HAVE
21    SERIOUS CONCERNS WITH MGA'S DELAY IN RAISING THESE ISSUES.
22              WE FIRST PROPOSED THE WILLFULNESS INSTRUCTION THAT
23    WE PROPOSED IN OUR FIRST SET OF JURY INSTRUCTIONS BACK IN
24    EARLY MAY, SOME THREE AND A HALF MONTHS AGO.
25              MGA NEVER OBJECTED THAT WHAT WE WERE SAYING THE
```

1    LAW WAS, WHAT WE UNDERSTAND THE LAW TO BE, IS NOT THE LAW.

2    THEY NEVER SAID THAT.  THE PARTIES REVISED THEIR JURY

3    INSTRUCTIONS THREE, FOUR TIMES AFTER THAT.  THEY NEVER

4    OBJECTED.

5            AND DURING THE TRIAL -- THE COURT MAY REMEMBER

6    THIS -- WE PUT ON EVIDENCE THROUGH OUR DAMAGES EXPERT THAT,

7    WHERE YOU HAVE WILLFULNESS, YOU DON'T DEDUCT G. AND A.  WE

8    HAVE CHARTS IN EVIDENCE INDICATING THAT, WHERE YOU HAVE

9    WILFULNESS, YOU DON'T DEDUCT G. AND A.  AND OUR DAMAGES

10   EXPERT EFFECTIVELY OPINED ON THAT.

11           AND THEN THE FIRST TIME MGA EVER SAID ANYTHING

12   ABOUT -- ABOUT, YOU KNOW, INTERPRETING THE LAW DIFFERENTLY

13   OR SUGGESTING THAT THE LAW IS CONTRARY TO THAT WAS 5:30 P.M.

14   ON FRIDAY, AFTER THE CLOSE OF EVIDENCE.

15           SO WE HAVE -- I CAN PROVIDE RECORD CITES IF THE

16   COURT WOULD LIKE.  THERE ARE CHARTS SHOWING HOW YOU DON'T

17   DEDUCT G. AND A. IN CASES OF WILLFULNESS, WHICH OUR DAMAGES

18   EXPERT PUT ON.

19           IF MGA WERE PERMITTED NOW TO CHALLENGE THAT, WHAT

20   I FEAR WE'RE GOING TO SEE IN CLOSING IS A FULL FRONTAL

21   ATTACK ON MR. WAGNER, SAYING, "OH, YOU KNOW, LOOK" -- "LOOK

22   WHAT HE TOLD YOU FOLKS.  HERE'S THE CHART HE PUT UP.  HERE

23   THE" -- "HERE'S WHAT" -- "HERE'S HIS TESTIMONY, BUT HERE'S

24   WHAT YOUR HONOR IS SAYING."

25           AND I DON'T THINK THAT'S APPROPRIATE.  THREE AND A

8007

1    HALF MONTHS AGO WAS THE TIME TO MAKE THE OBJECTION.

2              THE COURT:  I'LL CONSIDER YOUR WAIVER ARGUMENT AS

3    PART OF THIS WHOLE THING.  I DO WANT TO -- I WILL LOOK AT

4    THESE CASES AS WELL, AND I'LL -- I'LL TRY TO COME UP WITH

5    WHAT -- WHAT -- IT WOULD HAVE BEEN GREAT OBVIOUSLY TO HAVE A

6    CLEAR NINTH CIRCUIT STATEMENT ON THIS.  BUT LACKING THAT,

7    WE'LL DO THE BEST WE CAN.

8              ALL RIGHT.  SO THAT IS IT FOR JURY INSTRUCTIONS.

9              TURNING NOW TO THE VERDICT FORM.  LET'S GO BACK TO

10   THE SPECIFIC EXHIBIT FINDINGS ISSUE LAST 'CAUSE I THINK

11   THAT'S THE MOST DIFFICULT ONE, I THINK, TO ADDRESS.  LET ME

12   TRY TO DEAL WITH SOME OTHER ONES THAT I THINK ARE -- ARE

13   EASIER.

14             I MEAN, THE COURT HAS A KIND OF PARTICULAR FORMAT

15   THAT IT USES ON THESE, WHICH IS A LITTLE DIFFERENT THAN

16   EITHER PARTY SUBMITTED.  BUT I THINK WE'RE BASICALLY IN

17   ACCORD ON THE QUESTIONS CONCERNING DAMAGES FOR -- FOR

18   EXAMPLE, THE TORT CLAIMS, WHETHER THERE'S BEEN COPYRIGHT

19   INFRINGEMENT AND WHETHER IT'S WILLFUL, GROUPING THEM

20   SLIGHTLY DIFFERENT THAN THE PARTIES DID.

21             THE AMOUNT OF DAMAGES TO BE OBTAINED, THE PUNITIVE

22   DAMAGE QUESTION, BOTH THE TRIGGERING QUESTION AS WELL AS THE

23   AMOUNT QUESTION, I DON'T THINK THERE'S MUCH OF A DISPUTE

24   THERE.

25             AGAIN, THE COURT IS TWEAKING SOMEWHAT WITH WHAT

8008

```
 1    BOTH PARTIES SUBMITTED, BUT LET ME GO TO A COUPLE AREAS
 2    WHERE I -- I DO HAVE SOME QUESTIONS, AND LET ME BEGIN WITH
 3    MATTEL.
 4            ON YOUR PROPOSED DAMAGES TO COPYRIGHT, AS OPPOSED
 5    TO MGA'S, WHICH SIMPLY CALLS FOR THE AMOUNT FOR THE VARIOUS
 6    CATEGORIES, YOU BREAK IT DOWN BY DEFENDANT, COPYRIGHT
 7    INFRINGEMENT BY MGA, BY ISAAC LARIAN, AND BY MGA HONG KONG.
 8            WITH RESPECT TO ISAAC LARIAN, YOU'VE SPECIFIED THE
 9    DISTRIBUTIONS MR. LARIAN RECEIVED FROM MGA AND THE VALUE OF
10    MR. LARIAN'S OWNERSHIP PERCENTAGE OF BRATZ.
11            I PRESUME THAT IS THERE TO AFFORD THE COURT THE
12    OPPORTUNITY TO AVOID THE DOUBLE-COUNTING.
13            MR. PROCTOR:  THAT'S -- THAT'S -- IT'S -- THAT'S
14    EXACTLY -- WELL, LET ME -- LET ME PUT, PERHAPS, A FINER
15    POINT ON IT.
16            THAT IS THERE IN LIGHT OF THE PROSPECT OF AN
17    INJUNCTION.  AS TO -- AS TO MR. LARIAN, THERE ARE THE
18    TWO MEASURES OF POTENTIAL DAMAGES.  ONE OF THEM IS THE
19    INCREASE IN VALUE OF, EFFECTIVELY, THE BRATZ FRANCHISE OR
20    THE BRATZ BRAND AS ASSOCIATED WITH HIM.  AND THERE IS THIS
21    ISSUE WHICH IS, YOU KNOW, LOOMING SLIGHTLY SOMEWHAT EVEN IN
22    EVIDENCE ABOUT, WELL, WHAT IF THE COURT IMPOSES AN
23    INJUNCTION AND THAT VALUE DISSIPATES?
24            AND IN ORDER TO PERMIT THE COURT, AFTER THE FACT,
25    TO ADDRESS -- IN ORDER TO -- IN ORDER TO HAVE A FORM WHICH
```

8009

1    MAKES CLEAR WHAT THE JURY IS AWARDING AS PAST DAMAGES AND

2    FUTURE DAMAGES, THAT IS THE REASON FOR SEPARATE QUESTIONS AS

3    TO MR. LARIAN.

4            MGA, EVERYTHING WE'VE SOUGHT ARE EFFECTIVELY PAST

5    DAMAGES, AND SO THERE'S NO NEED FOR SEPARATE QUESTIONS.

6            THE COURT:  ALL RIGHT.  DOES MGA HAVE A PARTICULAR

7    STRONG FEELING ABOUT THAT ONE WAY OR THE OTHER?

8            MR. ROTH:  JUST A MINOR POINT BEFORE I GET TO THAT

9    SUBJECT.

10           I THINK THERE'S -- ON THEIR QUESTION 11 IS A

11   SLIGHT MISSTATEMENT OF THEIR DAMAGE THEORY.  AS MEASURED BY

12   THE VALUE OF MR. LARIAN'S OWNERSHIP INTEREST IN MGA, IT'S

13   ACTUALLY MR. LARIAN'S OWNERSHIP IN THE BRATZ FRANCHISES.

14   THAT'S -- THAT'S THE THEORY THAT'S BEEN ARTICULATED BY

15   MR. WAGNER.

16           THE COURT:  WELL, YEAH, BUT HE'S -- THE WAY

17   THAT -- THE VALUE OF MR. LARIAN'S OWNERSHIP PERCENTAGE OF

18   MGA --

19           MR. ROTH:  NO, I THINK --

20           THE COURT:  -- OF BRATZ.

21           MR. ROTH:  NO.  I THINK THE WAY -- THE THEORY

22   ESPOUSED BY MR. WAGNER IS MR. LARIAN'S INTEREST IN WHAT HE

23   CALLS THE BRATZ FRANCHISE.  THAT'S THE DAMAGE THERE. IT'S

24   NOT --

25           THE COURT:  RIGHT.

                                                          8010

```
 1              MR. ROTH:  IT'S NOT -- IT'S NOT MR. LARIAN'S
 2    INTEREST IN MGA.  SO I --
 3              THE COURT:  I THINK THAT'S CORRECT.
 4              MR. ROTH:  I THINK THAT -- THAT QUESTION 11 IS
 5    ACTUALLY MISSTATES -- MISSTATES --
 6              THE COURT:  I'LL REWORD IT SINCE I DON'T HAVE WHAT
 7    THE ORIGINAL MGA -- MATTEL SUBMISSION WAS.  BUT THERE'S THE
 8    DISTRIBUTIONS MR. LARIAN RECEIVED FROM MGA RELATED TO BRATZ.
 9    THEN ORIGINALLY, HOW YOU SUBMITTED IT, COUNSEL, WAS JUST
10    DISTRIBUTIONS RECEIVED FROM MGA, AND THAT'S NOT -- THAT'S
11    NOT IT.  IT'S -- IT'S MGA DISTRIBUTIONS RELATED TO THE BRATZ
12    LINE.
13              MR. PROCTOR:  CORRECT.  THAT'S MISSTATED.
14              THE COURT:  AND THEN THE VALUE OF MR. LARIAN'S
15    OWNERSHIP IN THE BRATZ PORTION OF MGA.
16              MR. ROTH:  THAT IS A CORRECT.  THAT IS HOW IT
17    SHOULD --
18              THE COURT:  WITH THAT, RIGHT.  RIGHT.
19              MR. ROTH:  YES.  AND I -- AND I UNDERSTAND THAT --
20    THAT -- THAT THEY'RE ATTEMPTING TO DO THAT TO AVOID --
21    AVOID -- WELL, TO PROVIDE THE COURT INFORMATION TO MAKE THE
22    CORRECTIONS NECESSARY IF IT IS VIEWED THAT THOSE DAMAGE
23    AWARDS ARE -- ARE DUPLICATIVE.
24              SO I THINK THE QUESTION -- I UNDERSTAND
25    MR. PROCTOR'S STATEMENT IS THAT QUESTION 11 IS A FUTURE
```

8011

```
 1   DAMAGES CONCEPT.  I MEAN, THAT IS THE WAY IT WAS ARTICULATED

 2   BY-- BY MATTEL WHEN WE WERE DEALING WITH THE INJUNCTION

 3   ISSUE TWO WEEKS AGO.

 4           SO I ASSUME THAT'S YOUR POINT AS TO WHY IT'S

 5   SEPARATE?

 6           THE COURT:  WHAT IS SEPARATE?  THE VALUE OF THE --

 7           MR. ROTH:  WHY THEY'RE SEPARATING OUT FROM

 8   MR. LARIAN.  THAT IS A SEPARATE QUESTION BECAUSE THAT'S A

 9   FUTURE DAMAGES CONCEPT.

10           THE COURT:  WELL, THE DISTRIBUTIONS CLEARLY ARE

11   PAST.  THE VALUE IS -- I DON'T KNOW IF IT'S SO MUCH FUTURE

12   AS IT IS PRESENT.

13           MR. ROTH:  I -- I BELIEVE THAT THEY STATED ON THE

14   RECORD THAT THAT IS A FUTURE DAMAGES --

15           THE COURT:  LET'S HEAR FROM MR. PROCTOR ON THAT.

16           MR. PROCTOR:  IT IS A MEASURE OF -- IT IS A

17   PRESENT VALUE BUT AN UNREALIZED VALUE.

18           AND SO -- YOU KNOW, MR. LARIAN HAS NOT SOLD MGA,

19   SO HIS PERCENTAGE OWNERSHIP HAS NOT BEEN REALIZED DEPENDING

20   ON WHAT HAPPENS AFTER THE JURY VERDICT COMES DOWN.  AND

21   AFTER THE COURT, YOU KNOW, EITHER DOES OR DOES NOT ISSUE AN

22   INJUNCTION.  IF THE COURT ISSUES AN INJUNCTION, THAT PRESENT

23   VALUE COULD BE CHANGED.  BUT IT -- IT IS A PRESENT VALUE.

24   IT'S NOT A FUTURE VALUE, BUT IT IS UNREALIZED.

25           THE COURT:  ALL RIGHT.  OKAY.
```

```
 1            AND THEN THE LAST ISSUE NOW IS THE -- IS THE --
 2   THE EXHIBITS.
 3            WHAT THE JURY IS GOING TO BE CONSIDERING PURSUANT
 4   TO THE INSTRUCTIONS ARE THE -- WHAT THEY DETERMINE TO BE THE
 5   COPYRIGHTED WORKS OWNED BY MATTEL.  AND THAT OWNERSHIP IS
 6   PREDICATED ON AT LEAST TWO PIECES OF EVIDENCE OR
 7   TWO FINDINGS.
 8            ONE, THEIR FINDINGS RELATED TO THE TIMING OF THE
 9   WORKS IN QUESTION, WHICH WAS IDENTIFIED IN PHASE 1-A OR
10   PHASE A, AS WE'RE CALLING IT NOW, COMBINED WITH THE
11   COPYRIGHT REGISTRATIONS THAT WERE SUBMITTED INTO EVIDENCE IN
12   BOTH PHASE A AND B.  THAT IS THE -- THE BASIS, AS I
13   UNDERSTAND IT, UPON WHICH THE JURY CAN FIND THAT MATTEL HAS
14   A COPYRIGHT INTEREST, SOMETHING TO INFRINGE OR TO HAVE BEEN
15   INFRINGED BY MGA.
16            IS THAT YOUR UNDERSTANDING, MR. PROCTOR?
17            MR. PROCTOR:  THAT'S CORRECT.
18            THE COURT:  IS THAT MGA'S UNDERSTANDING?
19            MS. AGUIAR:  SUBJECT TO THE DISCUSSION THAT WE HAD
20   ON THE RECORD THE OTHER DAY REGARDING WHAT THE COPYRIGHTED
21   DRAWINGS ARE.  I MEAN --
22            THE COURT:  RIGHT.
23            MS. AGUIAR:  -- WE HAD THAT BACK AND FORTH THE
24   OTHER DAY REGARDING --
25            THE COURT:  EXACTLY.  AND -- AND WHERE THE COURT
```

1    COMES OUT ON THAT, FRANKLY, IS THAT THAT ANYTHING THAT'S

2    BEEN SUBMITTED, THE REGISTRATIONS THAT HAVE BEEN SUBMITTED

3    INTO EVIDENCE ARE THE REGISTRATIONS, AND THAT GOES BEYOND

4    THE ORIGINAL 16.  AND I UNDERSTAND THAT.

5         AND I UNDERSTAND YOUR ARGUMENTS, AND I UNDERSTAND

6    MATTEL'S ARGUMENT.  BUT, YES, SUBJECT TO THAT OBJECTION,

7    WHICH YOU PRESERVE FOR THE RECORD, THAT -- THAT'S THE BASIS

8    UPON WHICH THE JURY IS GOING TO BE EVALUATING THE COPYRIGHT

9    INFRINGE.

10        MS. AGUIAR:  THAT IS MY UNDERSTANDING, SUBJECT TO

11   OUR OBJECTIONS, YES.

12        THE COURT:  VERY WELL.

13        OKAY.  SO NOW THE QUESTION IS WHAT PRODUCT ARE

14   THEY COMPARING THAT TO?  IN AN IDEAL WORLD, WE WOULD HAVE

15   ALL OF THE PRODUCT BEFORE THE JURY.  WE DON'T.  AND THE

16   RECORD EXPLAINS WHY WE DON'T.  WHAT WE HAVE IS, DEPENDING ON

17   WHOSE ESTIMATE IS USED, HALF, THREE-QUARTERS, SEVEN-EIGHTH,

18   WHATEVER OF THE PRODUCT AND A STIPULATION THAT ALL THE

19   PRODUCT THAT'S NOT BEFORE THE JURY IS REPRESENTATIVE -- OR

20   REPRESENTED BY WHAT WE DO HAVE BEFORE THE JURY.

21        AND IT'S ON THAT PRODUCT THAT THE JURY IS TO BE --

22   IS BEING INSTRUCTED AS TO WHETHER OR NOT THERE IS A

23   SUBSTANTIAL SIMILARITY, USING THE EXTRINSIC TEST INITIALLY

24   AND THEN THE INTRINSIC TEST, TO DETERMINE WHETHER OR NOT A

25   COPYRIGHT INFRINGEMENT HAS BEEN -- HAS TAKEN PLACE.

8014

1           AND THEN, BASED ON A COPYRIGHT INFRINGEMENT, IF

2  THEY FIND A COPYRIGHT INFRINGEMENT HAS TAKEN PLACE WITH

3  RESPECT TO SOME, MOST, OR ALL OF THAT PRODUCT, THEY WILL

4  THEN CONDUCT A DAMAGES ANALYSIS TO DETERMINE WHAT AMOUNT OF

5  DAMAGES COMPENSATES MATTEL FOR BOTH THE DIRECT INFRINGEMENT

6  AND THE INDIRECT INFRINGEMENT OF THOSE COPYRIGHTS HELD BY

7  MATTEL.  AND THEN THAT IS THE CALCULUS THAT THEY ARE TO

8  PERFORM.  THAT'S MY UNDERSTANDING OF HOW THIS PLAYS OUT.

9           SO GETTING BACK TO THE QUESTION OF THE EXHIBITS,

10  TO PUT THE LIST OF EXHIBITS OR NOT TO PUT THE LIST OF

11  EXHIBITS.  IN FAVOR OF PUTTING THE LIST WAS, AS THE COURT

12  PERHAPS INARTFULLY EXPRESSED THIS MORNING, IS THIS KIND OF

13  ASSURANCE THAT THE JURY IS KIND OF DOING WHAT WE WANT THEM

14  TO DO, THAT THEY'RE ACTUALLY LOOKING AT THE INDIVIDUAL

15  PRODUCTS AND DOING THE SUBSTANTIVE SIMILARITY TEST.

16           I ALSO POSITED, BUT I'M HAVING TROUBLE --

17  INCREASINGLY TROUBLE ARTICULATING WHY IT IS THAT THIS WOULD

18  BE HELPFUL TO THE COURT TAILORING AN INJUNCTIVE REMEDY.  I

19  COULD SEE THAT IF I HAD ALL THE PRODUCT BEFORE ME.  BUT AT

20  THE END OF DAY, I KIND OF CAME TO THE REALIZATION THIS

21  AFTERNOON, WHICH WAS DISTURBING, IS THAT I'M GOING TO HAVE

22  TO RE-EVALUATE ALL THE PRODUCTS MYSELF BEFORE I CAN MAKE THE

23  INJUNCTIVE FINDINGS OR GRANT THE INJUNCTIVE RELIEF.  I AM

24  NOT GOING TO BE ABLE TO RELY UPON A JURY VERDICT OR A JURY

25  QUESTIONING WHICH SIMPLY ANSWERS THE QUESTION WITH RESPECT

```
 1   TO SOME BUT NOT ALL.
 2            I CERTAINLY WOULDN'T BE SATISFIED REPRESENT --
 3   RELYING ON A STIPULATION BY THE PARTIES THAT THESE ARE
 4   REPRESENTATIVE OF THE -- I MEAN, I'M GOING TO HAVE TO DO
 5   THAT MYSELF.  SO IT'S NOW NOT -- AND THEN WHAT -- WHAT
 6   HAPPENS IF I -- FOR EXAMPLE, IF THE JURY FINDS SUBSTANTIAL
 7   SIMILARITY, BUT I, BASED ON THE EVIDENCE, DON'T FIND
 8   SUBSTANTIAL SIMILARITY, THEN WHAT DO I DO?
 9            MS. AGUIAR:  WELL, I -- MAY I JUST CLARIFY THAT --
10            THE COURT:  PLEASE.
11            MS. AGUIAR:  -- WHEN -- WHEN MR. PROCTOR SAID THAT
12   THE PRODUCTS ARE NOT -- YOU DON'T HAVE ALL OF THE PRODUCTS.
13   LET ME TRY TO CLARIFY --
14            THE COURT:  PLEASE.
15            MS. AGUIAR:  -- TO THE EXTENT THAT I AM --
16            THE COURT:  MAYBE I MISUNDERSTOOD THAT.
17            MS. AGUIAR:  NO, NO, NO.  I'M NOT SAYING THAT YOU
18   MISUNDERSTOOD.  I JUST WANT TO MAKE SURE THAT I MAKE IT AS
19   CLEAR AS POSSIBLE.
20            WITH REGARD TO THE FIRST GENERATION DOLLS --
21            THE COURT:  THAT ARE THERE.
22            MS. AGUIAR:  -- THAT'S STRAIGHTFORWARD.
23            THE COURT:  WE GOT IT.
24            MS. AGUIAR:  WE KNOW THAT THERE ARE FOUR, WE KNOW
25   WHAT THEIR NAMES ARE.
```

```
 1            THE COURT:  RIGHT.

 2            MS. AGUIAR:  WITH REGARD TO THE LATER GENERATION

 3    DOLLS, YOU HAVE, TO THE BEST OF OUR KNOWLEDGE, BASED ON THE

 4    COMPANY'S RECORDS, YOU HAVE THE IDENTITY OF ALL OF THE

 5    THEMES OF LATER GENERATION DOLLS STARTING FROM, LET'S SAY,

 6    SPRING OF 2002, WHICH I BELIEVE IS WHEN THE NEXT GENERATION

 7    CAME OUT --

 8            THE COURT:  OKAY.

 9            MS. AGUIAR:  -- THROUGH TILL -- TILL THE PRESENT,

10    I BELIEVE.

11            SO WHAT -- SO -- SO IT WOULD BE -- IT WOULD BE

12    DISINGENUOUS TO SAY, WITH REGARD TO THAT CATEGORY, THAT

13    YOU -- YOU WOULDN'T HAVE DIRECTION FROM THE JURY IF THEY

14    CHECKED YES OR NO WITH REGARD TO THOSE THEMES BECAUSE THOSE

15    REPRESENT THE -- THE UNIVERSE, AS WE UNDERSTAND IT, OF,

16    QUOTE, LATER GENERATION DOLLS.

17            AND SO, WHEN WE SAY -- WHEN THERE'S A THEME, "BACK

18    TO SCHOOL," LET'S SAY, AND THE EXAMPLE WE GAVE IS TRIAL

19    EXHIBIT 17517, WHAT THAT MEANS IS THAT, FOR THAT THEME OF

20    DOLL FOR THAT YEAR, THAT TRIAL EXHIBIT MAY REPRESENT ONE

21    CHARACTER OF THAT THEME.  BUT THAT THEME HAS THE SAME

22    PACKAGING, AND -- AND THE CHARACTERS ARE GENERALLY WEARING

23    THE SAME GENRE OF CLOTHING WITHIN THAT THEME.

24            SO --

25            THE COURT:  IS THAT A PREDICATE FOR ME TO, LET'S
```

```
 1   SAY DOING THE INJUNCTIVE RELIEF, MAKE A FINDING THAT,

 2   BECAUSE THE PARTIES HAVE STIPULATED THAT IT'S

 3   REPRESENTATIVE, IF THE COURT FINDS THAT IT EITHER IS OR IS

 4   NOT SUBSTANTIALLY SIMILAR, THE ONE EXAMPLE, IF I CONCUR,

 5   LET'S SAY, FOR EXAMPLE, WITH THE -- WITH THE JURY'S FINDING,

 6   THAT IPSO FACTO THE OTHER THREE, FOUR, FIVE CHARACTERS, HOW

 7   MANY THERE ARE IN THAT SERIES, ARE ALSO SUBSTANTIALLY

 8   SIMILAR?

 9            MS. AGUIAR:  I THINK THAT'S RIGHT, YES.

10            SO -- SO THIS IS WHY I'M SAYING, YOU KNOW, WHEN

11   MR. PROCTOR SUGGESTED, "WELL, IT'S A PROBLEM BECAUSE WE

12   DON'T HAVE ALL THE PRODUCT," THAT WAS THE REASON WHY WE DID

13   THE STIPULATION AS WE DID.

14            SO, FOR EXAMPLE, I'M NOT GOING TO STAND UP HERE

15   AND SAY, "WELL, YOUR HONOR, THEY CHECKED YES FOR" --

16            THE COURT:  I -- I SHOULDN'T TAKE ANYTHING BY THE

17   FACT THAT YOU USED THE WORD "REPRESENTATIVE" AND NOT

18   "SUBSTANTIALLY SIMILAR" IN YOUR -- IN YOUR STIPULATION?

19            MS. AGUIAR:  I THINK THEY'RE TWO -- THEY'RE TRYING

20   TO REPRESENT TWO DIFFERENT IDEAS.

21            WHEN -- WHEN WE'RE SAYING THEY'RE REPRESENTATIVE,

22   IT JUST MEANS THAT WE MAY NOT HAVE BROUGHT IN EACH PACKAGE

23   WITH EACH CHARACTER WITHIN EACH THEME.

24            THE COURT:  OKAY.  BUT DO YOU -- DO YOU UNDERSTAND

25   THE POINT OF THE COURT'S QUESTION?  I MEAN --
```

8018

1           MS. AGUIAR:  I DO.

2           THE COURT:  IF YOU HAD -- IF YOU HAD SAID THAT

3    THEY'RE SUBSTANTIALLY SIMILAR AND -- AND YOU HAD STIPULATED

4    TO THAT AND ALL THE PARTIES STIPULATED TO THAT, THEN I COULD

5    ACCEPT THAT AS TRUE, AND THEN THEY WOULD BE OF NO MOMENT.

6           I MEAN, IF YOU COULD TAKE -- YOU COULD TAKE HUGE

7    SWATCHES OF THESE PRODUCTS OUT OF THE COURT'S CONCERN IF

8    THERE'S SIMPLY A STIPULATION THAT THEY'RE ALL SUBSTANTIALLY

9    SIMILAR BECAUSE THEN, IF I FIND ONE IS SUBSTANTIALLY

10   SIMILAR, THEN THE OTHERS -- AND THEN IF ONE OR MORE IS NOT

11   SUBSTANTIALLY SIMILAR, AND THE OTHERS ARE SUBSTANTIALLY

12   SIMILAR, I SUPPOSE REASON WOULD DICTATE THAT THE OTHERS ARE

13   NOT SUBSTANTIALLY SIMILAR.

14          MS. AGUIAR:  RIGHT.  AND SO, WHEN WE'RE SAYING

15   THAT THEY'RE REPRESENTATIVE, IT'S JUST SAYING, LOOK, IF YOU

16   LOOK AT THIS ONE CAMPFIRE BRATZ FROM WHATEVER YEAR, THE

17   STIPULATION WASN'T INTENDED TO SAY ALL THE OTHER DOLLS THAT

18   HAVE THE THEME CAMPFIRE BRATZ ARE SUBSTANTIALLY SIMILAR TO

19   THE ONE WE SHOWED YOU.  IT'S MEANT TO SAY, LOOK, IN LIEU OF

20   BRINGING IN -- WHATEVER THE NUMBER IS -- THOUSANDS, WE

21   BROUGHT IN 800 TANGIBLE ITEMS TO MAKE IT MORE WORKABLE.

22          SO I ACTUALLY THINK IT -- IT'S INCORRECT TO SAY

23   THAT THE WAY THAT THIS IS BROKEN OUT DOESN'T ULTIMATELY HELP

24   YOU BECAUSE YOU'LL HAVE TO LOOK AT THE PRODUCTS.  I THINK

25   THAT'S WRONG.  I -- I THINK THAT THE WAY THAT WE'VE

8019

```
1    PRESENTED IT -- AND I'M JUST TAKING THAT -- THAT
2    ONE CATEGORY FOR NOW.
3              THE COURT:  SO YOU'RE SAYING I WON'T HAVE TO
4    ULTIMATELY LOOK AT THE PRODUCTS.
5              MS. AGUIAR:  RIGHT.  ABSO -- YES, THAT IS WHAT I'M
6    SAYING.
7              THE COURT:  OKAY.
8              MS. AGUIAR:  AND NOW THAT WOULD BE FOR THE LATER
9    GENERATION DOLLS.  LET'S MOVE -- AND THEN, IF WE MOVE ON
10   TO --
11             THE COURT:  THE PRODUCTS OF --
12             MS. AGUIAR:  -- THE OTHER PRODUCT LINES, BOYS, FOR
13   EXAMPLE.  THEY'RE GOING TO -- THEY'RE GOING TO FIND THAT THE
14   BOYS PRODUCT LINE EITHER DOES OR DOES NOT INFRINGE.  AND I
15   DO NOT FORESEE US COMING IN AND SAYING TO YOU, "WELL, NOW WE
16   WANT TO ARGUE TO YOU THAT DYLAN BOY MAY INFRINGE, BUT
17   CAMERON BOY DOES NOT."  THAT I DON'T FORESEE BEING AN
18   ARGUMENT THAT WE MAKE.
19             AND -- AND SO WE HAVE BROKEN THESE DOWN BY LINE,
20   BY PRODUCT LINE, SO THAT IF THEY FIND THAT A PRODUCT LINE
21   INFRINGES, MY UNDERSTANDING IS THAT THAT'S A FINDING THAT
22   THE PRODUCTS -- THAT ALL OF PRODUCTS WITHIN THAT LINE WOULD
23   INFRINGE.
24             THE COURT:  OKAY.
25             MS. AGUIAR:  SO -- SO I THINK THAT MAYBE WE DIDN'T
```

```
 1   MAKE IT CLEAR ENOUGH WHAT THIS -- WHAT THIS REPRESENTS.  SO
 2   MAYBE THAT'S A BAD WORD TO USE.  BUT WHAT -- WHAT YOU HAVE
 3   HERE, I ACTUALLY THINK YOU HAVE HERE A VERY -- A PRETTY --
 4   PRETTY SPECIFIC BREAKDOWN OF ALL THE PRODUCTS SO THAT THE
 5   JURY CAN SAY, BASED ON X OR Y FACTOR --
 6            THE COURT:  THIS IS SPECIFICALLY THE WHOLE
 7   FOUNTAIN OF EXPERIENCE.
 8            MS. AGUIAR:  EXACTLY.
 9            AND YOUR HONOR ASKED ME EARLIER, AND MAYBE THIS
10   WAS THE MOST OBVIOUS ANSWER.  YOU SAID, "WHY DOES THE JURY
11   HAVE TO DO THIS?"
12            THE COURT:  RIGHT.
13            MS. AGUIAR:  THEY DIDN'T BRING A CLAIM THAT JUST
14   ONE PRODUCT INFRINGED THE DRAWINGS.  I MEAN, THIS IS -- THIS
15   IS A CASE THAT HAS MULTIPLE COPYRIGHT CLAIMS BUILT INTO IT.
16            THE COURT:  WELL, LET ME JUST THROW THIS OUT --
17            MS. AGUIAR:  AND --
18            THE COURT:  -- I MEAN, THESE ARE ALL KIND OF
19   HYPOTHETICAL THINGS, BUT LET'S SAY THE JURY FINDS NOTHING
20   MORE THAN THE FIRST FOUR -- THE FIRST GENERATION TO ACTUALLY
21   DIRECTLY INFRINGE THE COPYRIGHT.
22            MS. AGUIAR:  OKAY.
23            THE COURT:  BUT, TO MATTEL'S BENEFIT, THEY FIND
24   THAT EVERYTHING ELSE INDIRECTLY -- THAT THERE'S AN INDIRECT
25   DAMAGE OR INDIRECT -- A SUFFICIENT CAUSATION BETWEEN THE --
```

```
1    THE DRAWINGS OR THE COPYRIGHTED MATERIALS AND THE -- AND
2    EVERYTHING ELSE, THAT THE INDIRECT PROFITS FROM EVERYTHING
3    ELSE GOES TO MATTEL'S -- MATTEL'S WAY.
4         CONVERSELY, THEY COULD FIND, AGAIN, IF THIS WERE
5    TO MATTEL'S BENEFIT, FIND THAT EVERYTHING DIRECTLY
6    INFRINGED.  THE END RESULT OF EITHER, IN TERMS OF DAMAGES,
7    WOULD ESSENTIALLY BE THE SAME, WHATEVER IT IS, BECAUSE THE
8    DIRECT OR THE INDIRECT, ASSUMING THAT THEY FOUND THAT, IT'S
9    PURELY HYPOTHETICAL.
10        MS. AGUIAR:  RIGHT.
11        THE COURT:  THEY COULD ALSO FIND, CONVERSELY,
12   THAT -- THAT THE FIRST GENERATION INFRINGES, BUT NONE OF THE
13   REST DOES, AND NONE OF THE REST IS PROPERLY ATTRIBUTED TO
14   MATTEL FOR INDIRECT PROFITS.
15        MS. AGUIAR:  RIGHT.  I -- I GUESS MY REACTION TO
16   THAT IS WHY WOULDN'T WE WANT MORE INFORMATION FROM THIS JURY
17   RATHER THAN LESS --
18        THE COURT:  WELL, I'M NOT SURE -- YOU TOOK THE
19   WORDS OUT OF MY MOUTH.  WHAT DOES HAVING THEM CHECK ALL
20   THOSE BOXES DO TO EITHER RESULT?
21        MS. AGUIAR:  BUT I THINK --
22        THE COURT:  DOES IT CHANGE EITHER RESULT?
23        MS. AGUIAR:  WELL, I THINK THAT THEY -- I THINK
24   THE -- THE ANSWER IS THAT THEY HAVE -- THIS VERDICT FORM IS
25   ADDRESSING THE LEGAL CLAIMS THAT HAVE BEEN BROUGHT BY
```

8022

```
 1   MATTEL.  AND THEY HAVE BROUGHT A COPYRIGHT CLAIM.  AND THEY
 2   ARE ALLEGING THAT A NUMBER OF DIFFERENT PRODUCTS INFRINGE
 3   THE SAME DRAWINGS.
 4           THE COURT:  EITHER DIRECTLY OR INDIRECTLY, EITHER
 5   DIRECTLY OR AS A DERIVATIVE PRODUCT --
 6           MS. AGUIAR:  RIGHT.  BUT WHY WOULD WE NOT WANT THE
 7   INFORMATION FROM THE JURY ON THE COPYRIGHT CLAIM ITSELF, ON
 8   THE LEGAL CLAIM OF COPYRIGHT?
 9           THE COURT:  BUT WHY DO WE -- WHY ARE WE DRAWING
10   THE LINE JUST ONE DIRECT INFRINGEMENT?  THEN SHOULD WE NOT
11   ALSO ASK WHETHER THIS IS -- DO YOU FIND THIS IS DERIVATIVE
12   OR NOT DERIVATIVE, WHETHER THIS IS INDIRECT OR NOT DIRECT?
13   WHY ARE WE DRAWING THIS LINE IN THE SAND ABOUT DIRECT
14   INFRINGEMENT?
15           AND THE WAY YOU WANT TO -- THE WAY MGA WANTS TO
16   STRUCTURE THE -- THE VERDICT FORM WAS, I THINK, IS -- IS NOT
17   REALLY AS MISLEADING BY SIMPLY HAVING THEM ANSWER "YES" OR
18   "NO" ON DIRECT INFRINGEMENT AND THEN HAVING THEM DO A --
19   WHAT -- WHAT IS THE INFRINGEMENT WORTH?  BECAUSE THAT REALLY
20   SUGGESTS THAT, IF THERE'S NOTHING THAT'S DIRECTLY
21   INFRINGING, THEN IT'S WORTH -- WORTH ZERO.
22           I'M GOING TO SEPARATE THE DAMAGES FROM THIS DIRECT
23   INFRINGEMENT QUESTIONS IF I INCLUDE THE DIRECT INFRINGEMENT
24   QUESTIONS.  BUT IF WE'RE GOING TO INCLUDE THE ISSUE OF
25   DIRECT INFRINGEMENT, WHY -- WHY AREN'T WE ASKING THEN:
```

8023

```
 1   WELL, DO YOU FIND IT'S DERIVATIVE OR DO YOU FIND IT'S
 2   INDIRECT?
 3          MS. AGUIAR:  WELL, BECAUSE I THINK THEY'RE
 4   DIFFERENT QUESTIONS.  I MEAN HERE, IN THE COPYRIGHT
 5   ANALYSIS, THE JURY ACTUALLY DOES HAVE TO DETERMINE, FOR EACH
 6   INFRINGING PRODUCT:  OKAY, I'M LOOKING AT THE FIRST
 7   GENERATION DOLL, AND I'M LOOKING BACK AT THE DRAWING.  DOES
 8   THAT INFRINGE?  I'M LOOKING AT A -- A THEME FROM 2005, AND I
 9   NEED TO LOOK BACK AT THE DRAWING TO DETERMINE WHETHER
10   THAT --
11          THE COURT:  BUT THAT'S NOT ALL.  THAT'S NOT THE
12   END OF THEIR ANALYSIS.  I MEAN, THEY MAY FIND THAT, NO, IT
13   DOES NOT DIRECTLY INFRINGE, BUT IT'S DERIVATIVE; RIGHT?
14          MS. AGUIAR:  I SUPPOSE THEY COULD -- YES, THEY
15   COULD FIND THAT.
16          THE COURT:  I CERTAINLY HOPE SO BECAUSE THEY'RE
17   GOING TO BE INSTRUCTED --
18          MS. AGUIAR:  RIGHT.
19          THE COURT:  -- TO ANSWER IT ONE WAY OR THE OTHER.
20          MS. AGUIAR:  RIGHT.
21          THE COURT:  I MEAN, I DON'T CARE HOW THEY FIND,
22   BUT, I MEAN, I HOPE THEY LISTEN TO ALL THE COURT'S
23   INSTRUCTIONS.
24          MS. AGUIAR:  I HAVE NO REASON TO BELIEVE THEY --
25   THEY WON'T.  I MEAN --
```

8024

```
 1            THE COURT:  WE ALMOST ASSUME THAT THEY WILL.
 2            MS. AGUIAR:  UP -- UP UNTIL NOW, BOTH PARTIES,
 3    INCLUDING MATTEL, HAVE -- HAVE TAKEN THE TACK -- AND I --
 4    AND I -- AND I UNDERSTAND MAYBE WHY NOW THEY DON'T WANT THIS
 5    BECAUSE THEY JUST WANT TO SAY WAS THERE INFRINGEMENT?  AND
 6    WE'LL NEVER KNOW.  WAS IT THE FIRST GENERATION?  WAS IT ALL
 7    OF THE FASHION DOLLS?  WAS IT -- WAS IT WAS THE NET CAST
 8    EVEN WIDER?
 9            THE COURT:  I AGREE WITH YOU, COUNSEL.  I'M WITH
10    YOU ON -- ON HAVING -- WHEN I FIRST APPROACHED THIS, WHEN I
11    FIRST LOOKED AT THIS -- AND PERHAPS I DIDN'T LOOK AT IT AS
12    CAREFULLY AS I SHOULD -- I ASSUMED THAT WE HAD -- AND I -- I
13    DON'T KNOW WHY I DIDN'T PICK UP ON THAT STIPULATION.
14            I ASSUMED WE HAD ALL THE PRODUCTS.  I THOUGHT
15    EVERYTHING WAS OUT THERE, UP ON THE FOURTH FLOOR.  BUT I
16    GUESS NOW I UNDERSTAND WHERE THAT STIPULATION FITS IN, AND
17    IT WASN'T.
18            SO I INITIALLY THOUGHT, YES, LET'S HAVE ALL THE
19    PRODUCTS, AND LET'S HAVE THE COURT -- HAVE THE JURY ENGAGE
20    IN THE FULL QUESTIONING.  BUT WE'RE LEAVING A LOT OF
21    QUESTIONS UNANSWERED.  AND I CAN SEE -- YOU KNOW, IT GETS
22    BACK TO THIS -- I DON'T KNOW WHO IT WAS THAT TALKS ABOUT IT,
23    WHOSE -- WHOSE OX IS GETTING GORED, AND YOU SAID YOU DON'T
24    KNOW WHICH WAY IT GOES.
25            BUT IT'S STARTING TO BECOME APPARENT THAT SOME
```

8025

1   QUESTIONS CERTAINLY FAVOR MGA.   SOME QUESTIONS CERTAINLY

2   FAVOR MATTEL IN TERMS OF WHAT THE JURY ANSWERS.

3           I MEAN, I -- I CAN SEE WHY MGA DOESN'T WANT TO

4   HAVE A DERIVATIVE QUESTION, JUST LIKE I CAN SEE WHY MATTEL

5   DOESN'T WANT TO HAVE A DIRECT INFRINGEMENT QUESTION, BECAUSE

6   THEIR THEORY ENCOMPASSES MORE THAN DIRECT INFRINGEMENT,

7   AND -- AND YOUR TAKE, BASICALLY, IS TRYING TO HOLD THE LINE

8   AT DIRECT INFRINGEMENT.

9           I MEAN, I -- I SEE WHAT BOTH SIDES ARE TRYING TO

10  ACCOMPLISH THROUGH THIS.   AND I'M TRYING TO DO A VERDICT

11  FORM THAT DOESN'T FAVOR EITHER SIDE.   AND THAT'S NOT AN EASY

12  THING TO DO.

13          MS. AGUIAR:   WELL, I APPRECIATE THAT.   BUT -- BUT

14  WHEN MR. PROCTOR WAS TRYING TO ARTICULATE WHY WE SHOULD NOT

15  ACTUALLY HAVE THE PRODUCTS LISTED ON THE VERDICT FORM, HE

16  SAID, YOU KNOW, I'M -- SOMETHING TO THE EFFECT OF, "WELL, IF

17  THEY START CHECKING NO FOR SOME OF THE BOXES, AND THEN THEY

18  GET TO OUR INDIRECT PROFITS CLAIM, WELL, MAYBE THEY'LL THINK

19  WE'RE NOT ENTITLED TO PROFITS ON THAT."

20          WELL, I APPRECIATE THAT.   HE'S SAYING HE HAS A

21  CONCERN BECAUSE MATTEL MIGHT NOT GET -- GET AS MANY

22  PROFITS -- MAY NOT GET AS MANY DAMAGES.   AND I --

23          THE COURT:   AND I -- AND I REJECTED THAT BECAUSE I

24  THINK, IF THE -- IF ALL THE -- IF EVERYTHING WAS THERE AND

25  THE -- MY PROBLEM WAS HAVING THE QUESTION RIGHT AFTER

                                                          8026

1    THAT -- I MEAN, WHERE YOU WERE INSERTING THE DAMAGE QUESTION

2    INTO THAT, ALMOST IMPLYING THAT YOU ANSWER THESE QUESTIONS,

3    ERGO, HOW MANY DAMAGES ARE LEFT?

4         BECAUSE, AS I STATED THIS MORNING, THE DAMAGES IS

5    A KIND OF -- IT'S NOT ENTIRELY SEPARATE FROM COPYRIGHT

6    INFRINGEMENT, BUT IT ENCOMPASSES MUCH MORE THAN SIMPLY

7    WHETHER OR NOT THERE WAS A DIRECT INFRINGEMENT.  THERE'S

8    OTHER QUESTIONS THAT NEED TO BE ASKED AND ANSWERED.

9         AND I GUESS MY POINT NOW IS WHY AREN'T WE ASKING

10   THOSE -- IF WE'RE GOING TO ASK SOME OF THE SPECIFIC

11   QUESTIONS, WHY AREN'T WE ASKING ALL OF THE SPECIFIC

12   QUESTIONS?

13        AND IF THE ANSWER IS -- OR IF THERE ISN'T AN

14   ANSWER, THEN I KIND OF FALL BACK TO MY GENERAL APPROACH TO

15   THESE THINGS, THAT LESS IS MORE.  I MEAN, I -- I DON'T WANT

16   TO GO HALFWAY DOWN THE ROAD OF -- OF SPECIFIC VERDICT FORM

17   IF WE'RE NOT GOING TO GO ALL THE WAY DOWN THE ROAD.

18        MS. AGUIAR:  WELL, I MEAN, BUT THE BASIC QUESTION

19   IS ARE THESE PRODUCTS INFRINGING?  I MEAN, THEY'VE BROUGHT A

20   COPYRIGHT CLAIM.  AND SO THE BASIC QUESTION THE JURY HAS TO

21   ANSWER, THAT'S -- THAT'S THE ELEMENT OF THE CLAIM.

22        THE COURT:  THAT QUESTION NEEDS TO BE THERE.

23        MS. AGUIAR:  SO -- SO, TO ME, THAT'S -- THAT'S A

24   DIFFERENT NATURE OF QUESTION THAN AND IS IT DERIVATIVE AND

25   IS IT THIS AND IS IT THAT AND ARE THERE INDIRECT PROFITS?  I

1    MEAN, THE ELEMENTS OF THE COPYRIGHT CLAIM ARE DID YOU HAVE

2    ACCESS AND IS IT SUBSTANTIALLY SIMILAR?

3         SO THAT IS THE BASIC LEGAL QUESTION IN THE

4    COPYRIGHT CLAIM.  AND THIS IS NOT LIKE, FOR EXAMPLE, THE

5    SPONGEBOB CASE THAT, YOU KNOW, WAS JUST UP IN

6    NORTHERN CALIFORNIA, WHERE YOU HAD ONE ALLEGEDLY INFRINGING

7    PRODUCT.  DID SPONGEBOB OR WHATEVER HIS NAME WAS --

8         THE COURT:  I'LL LOOK FORWARD TO ONE OF THOSE

9    COPYRIGHTER KIND OF CASES, WHERE THERE'S ONE PRODUCT.

10        MS. AGUIAR:  JUST ONE PRODUCT.

11        BUT WE DON'T HAVE JUST ONE PRODUCT HERE.  SO WHEN

12   YOU ASK WHY DO THEY -- WHY DO THEY REALLY NEED TO DO THIS?

13   WELL, I CAN UNDERSTAND PERHAPS WHY THERE'S AN ATTRACTION OF

14   JUST, YOU KNOW, GETTING THAT YES ANSWER, BUT YES TO WHAT?

15        SO I DO THINK THAT THERE'S -- THESE CATEGORIES ARE

16   REASONABLE, AND I DON'T THINK THAT THE -- THAT THE FACTS

17   THAT NOT EVERY SINGLE SAMPLE OF EVERY CHARACTER AND EVERY

18   LINE IS HERE POSES AN ISSUE BECAUSE THE STIPULATION SAYS

19   THAT THE PARTIES -- IF YOU LOOK AT THE OTHER PART OF

20   STIPULATION, IT SAYS THAT WE BASICALLY ARE NOT GOING TO SAY

21   THAT ANYBODY HAS FAILED TO MEET THEIR BURDEN BECAUSE THOSE

22   OTHER DOLLS WITHIN THAT LINE ARE NOT HERE.

23        AND SO THAT WAS -- THAT WAS REALLY AN ATTEMPT TO

24   COME TO A COMPROMISE.  AND ACTUALLY YOU -- YOU DO HAVE A

25   SAMPLE OF EVERY ONE OF THE PRODUCT LINES.

1            YOU HAVE -- THE JURY WILL BE ABLE TO SEE KIDS AND

2    PETS AND BOYS AND EACH ONE OF THE -- OF THE PRODUCT LINES.

3            THE COURT:  ALL RIGHT.  THANK YOU, COUNSEL.

4            MS. AGUIAR:  AND WE WON'T BE ARGUING THAT, "OH,

5    WELL, YOU KNOW, THERE'S THIS OTHER LITTLE ANGELS LINE THAT

6    WE CAME OUT WITH ONE YEAR THAT LOOKED A LITTLE BIT DIFFERENT

7    THAN THAT."  OUR REPRESENTATION IS THAT LITTLE ANGELS

8    PRODUCT IS REPRESENTATIVE OF THE REST OF THE LINE.  SO I

9    DON'T THINK THAT THAT SHOULD BE A HESITATION.

10            THE COURT:  THANK YOU, COUNSEL.

11            MR. PROCTOR?

12            MR. PROCTOR:  I THINK THE COURT HAS CERTAINLY

13    IDENTIFIED -- IDENTIFIED THE MATTERS AT PLAY AND THE ISSUES.

14            THE COURT:  BUT IT GETS BACK TO COUNSEL'S QUESTION

15    THERE AT THE END.  WHY -- YOU KNOW, THIS IS -- WHY SHOULDN'T

16    WE HAVE A SPECIFIC ANSWER TO THIS QUESTION THAT STARTED THIS

17    WHOLE CASE?

18            MR. PROCTOR:  SURE.  I MEAN, THE -- THE

19    FIRST THING I WOULD SAY IS -- IS THE BASIC QUESTION -- THE

20    BASIC QUESTION AS TO CERTAINLY SOME OF THESE PRODUCTS, SOME

21    OF THESE CATEGORIES, IS REALLY NOT THE DIRECT INFRINGEMENT

22    QUESTION.  YOU KNOW, AS TO MERCHANDISE, FOR EXAMPLE, IT MAY

23    BE THAT MERCHANDISE IS DIRECTLY INFRINGING BECAUSE IT

24    CONTAINS A IMAGE OF THE BRATZ CHARACTERS ON THEM.

25            THE COURT:  BUT YOU KNOW THAT'S A STRETCH.

                                                          8029

```
 1              MR. PROCTOR:  I KNOW THAT -- I KNOW THAT OUR
 2    PRIMARY THEORY IS INDIRECT PROFITS.  AND ASKING THE JURY
 3    A -- YOU KNOW, IDENTIFYING THIS AS THE QUOTE/UNQUOTE BASIC
 4    QUESTION FOR THE JURY, "DOES THE HELMET LOOK LIKE THE
 5    DOLLS," IS PREJUDICIAL FOR EXACTLY THE REASONS THE COURT HAS
 6    IDENTIFIED.
 7              THAT'S NOT REALLY OUR THEORY FOR WHY WE GET THE
 8    PROFITS FROM THE HELMET.  OUR THEORY FOR THAT IS INDIRECT
 9    PROFITS, WHICH IS THE BASIC QUESTION AS TO THAT PRODUCT.
10              NOW, AS TO THE FIRST GENERATION OF DOLLS, THAT MAY
11    BE A DIFFERENT STORY.  WE CERTAINLY DO, YOU KNOW, MAINTAIN A
12    VERY STRONG INFRINGEMENT, DIRECT INFRINGEMENT CLAIM AS TO
13    THE FIRST GENERATION OF DOLLS.  WE THINK THEY'RE INFRINGING.
14    THAT IS A FUNDAMENTAL QUESTION AS TO THOSE.
15              IF THE COURT WANTED --
16              THE COURT:  WOULD YOU AGREE THAT IT WOULD BE -- SO
17    YOU AGREE WITH THE POSITION THAT, IF WE WERE TO ASK
18    ONE QUESTION, WE'D HAVE TO ASK ALL THE QUESTIONS THAT ARE
19    RELATED TO THAT?
20              MR. PROCTOR:  YOU KNOW, IT -- IT'S HARD FOR ME TO
21    ANSWER THAT WITHOUT KNOWING WHAT ALL THE QUESTIONS ARE.  I
22    MEAN, I COULD --
23              THE COURT:  WHAT ARE ALL THE QUESTIONS?  YOU TELL
24    ME --
25              MR. PROCTOR:  IT'S A FAIR QUESTION.  I MEAN, IN --
```

```
 1   IN A -- IF WE WANTED TO DO A PURE SPECIAL --
 2            THE COURT:  WHAT ARE THE QUESTIONS BESIDE THE
 3   PRIMARY QUESTION THAT MGA HAS SUBMITTED?  WHAT ARE THE
 4   QUESTIONS?
 5            MR. PROCTOR:  THE -- THE CATEGORIES, FOR EXAMPLE.
 6   I MEAN, THE CATEGORIES COULD BE EXPANDED OUT GREATLY, AND
 7   THIS -- THIS GETS BACK TO SOMETHING THE COURT --
 8            THE COURT:  GIVE ME A COUPLE.  GIVE ME THREE.
 9            MR. PROCTOR:  WELL, I MEAN, FOR EXAMPLE, THE --
10   THE COURT WAS ASKING WHAT GUIDANCE IS THIS GOING TO PROVIDE?
11   ONE OF THE CATEGORIES THAT'S LISTED HERE IS GAMES.  YOU
12   KNOW, MGA HAS PUT DOWN GAMES AND THEN LISTED A TRIAL EXHIBIT
13   NUMBER.
14            OUR UNDERSTANDING OF THAT STIPULATION, WE
15   CERTAINLY HAVE NOT STIPULATED THAT A FINDING THAT -- THAT
16   THIS GAME, EXHIBIT 18802, WHATEVER THAT IS EXACTLY -- I
17   DON'T KNOW AS I STAND HERE RIGHT NOW -- IF THAT'S NOT
18   INFRINGING, NO OTHER GAME COULD BE INFRINGING.
19            YOU KNOW, THE -- THE EXHIBITS ARE HAND-SELECTED BY
20   MGA, PRESUMABLY WITH SOME TACTICAL PURPOSE.
21            THE COURT:  WELL, LET'S NOT PRESUME THAT.  I -- I
22   GET THE SENSE THAT MS. AGUIAR PROBABLY SPENT A LOT TIME
23   PICKING A FAIR REPRESENTATION OF -- OF THE CATEGORIES.
24            MR. PROCTOR:  I THINK BOTH SIDES IN THIS CASE TRY
25   TO BE FAIR, AND BOTH SIDES IN THE CASE ALSO TRY TO, YOU
                                                         8031
```

```
 1   KNOW --

 2            THE COURT:  BUT ANSWER MY QUESTION.  WHAT OTHER

 3   QUESTIONS, YOU KNOW, BESIDE INFRINGEMENT OF COPYRIGHT?  I

 4   THREW OUT ONE:  IS THIS DERIVATIVE?  ARE THERE ANY OTHER

 5   QUESTIONS THAT I'M MISSING?

 6            MR. PROCTOR:  INDIRECT PROFITS, POTENTIALLY.  I

 7   MEAN, INDIRECT PROFITS.  AND, YOU KNOW, SPEAKING OFF THE TOP

 8   OF MY HEAD HERE SOME, A QUESTION ALONG THE LINES OF:  DO YOU

 9   FIND THAT MGA HAS MADE PROFITS AT LEAST PARTIALLY BECAUSE OF

10   THE INFRINGING -- THE INFRINGEMENT?  YOU KNOW, PROFITS

11   FROM -- WE'LL HAVE TO WORDSMITH THIS THING -- PROFITS FROM

12   OTHER SALES AT LEAST PARTIALLY CAUSED BY THE INFRINGEMENT?

13            YOU KNOW, SOME QUESTION -- SOME QUESTION LIKE THAT

14   TO INDICATE THAT DIRECT INFRINGEMENT IS NOT ALL THIS CASE IS

15   ABOUT.  MGA, I MEAN, LET'S -- LET'S BE HONEST.  MGA HAS A

16   STRONG TACTICAL ADVANTAGE -- AND AS THE COURT HAS

17   IDENTIFIED -- A STRONG TACTICAL ADVANTAGE IN BRINGING DIRECT

18   INFRINGEMENT OF MERCHANDISE TO THE FOREFRONT AS THE ISSUE

19   FOR THE JURY TO DECIDE WHEN IT REALLY IS NOT THE ISSUE FOR

20   THE JURY TO DECIDE.

21            AND IN TERMS OF WHAT THESE QUESTIONS WILL GIVE THE

22   COURT FOR PURPOSES OF INJUNCTIVE RELIEF, IT'S -- IT'S SIMPLY

23   NOT THE CASE.  I MEAN, THE STIPULATION -- MS. AGUIAR

24   ACTUALLY CHARACTERIZED IT, I THINK, QUITE CORRECTLY.  THE

25   STIPULATION WAS EFFECTIVELY MGA IS NOT GOING TO URGE THAT WE
```

8032

```
 1   HAVE NOT MET OUR BURDEN BY NOT GETTING EVERY PRODUCT INTO
 2   EVIDENCE BECAUSE THEY WEREN'T MADE AVAILABLE TO US IN
 3   DISCOVERY.
 4            WE CERTAINLY HAVE NEVER STIPULATED THAT A FINDING
 5   THAT WHATEVER -- WHATEVER VEHICLE IS LISTED HERE, A FINDING
 6   BY THE JURY AS TO THAT IS DISPOSITIVE AS TO INJUNCTIVE
 7   RELIEF AS TO ALL OTHER --
 8            THE COURT:  LET ME SEE IF I UNDERSTAND YOU COUNSEL
 9   'CAUSE I THINK I UNDERSTAND YOUR ARGUMENT HERE.
10            ON A FRAUDULENT CONCEALMENT, IT SEEMS TO MAKE
11   SENSE -- WELL -- WELL, YOU DON'T HAVE A DATE ON THAT.  AND
12   YOU LEAVE IT AS AN OPEN-ENDED QUESTION AS OPPOSED TO MGA'S
13   APPROACH, WHICH SAYS, YOU KNOW, DID MGA FRAUDULENTLY
14   CONCEAL, YOU KNOW, WHATEVER THE TORT WAS UNTIL A CERTAIN
15   DATE?
16            MR. PROCTOR:  I THINK THAT'S -- I THINK THE COURT
17   HAS REJECTED OUR POSITION ON THAT, UNLESS I'VE
18   MISUNDERSTOOD.  YOU KNOW, OUR -- OUR VIEW -- MY VIEW WAS
19   THAT WE DIDN'T NEED A DATE BECAUSE THE QUESTION FOR THE JURY
20   WAS HAS THERE BEEN CONCEALMENT?  AND THE COURT HAS ALREADY
21   DECIDED WHEN WE LEARNED OR COULD HAVE LEARNED OF THE TRUE
22   FACTS AS A MATTER OF LAW.  AND BECAUSE OF THAT, THERE WAS NO
23   NEED FOR A DATE.
24            THIS IS THE ISSUE WHICH WAS -- WHICH WAS RAISED IN
25   THOSE INITIAL PORTIONS OF THE JURY INSTRUCTIONS.  YOU KNOW,
```

8033

```
 1   EFFECTIVELY THE ARGUMENT BEING THE COURT HAS DECIDED, YOU
 2   KNOW, FRAUDULENT CONCEALMENT --
 3              THE COURT:  I'LL SET UP A DATE IN 2003,
 4   ESSENTIALLY.
 5              MR. PROCTOR:  CORRECT.  AND IF IT'S 2003, IT'S
 6   TIMELY.
 7              THE COURT:  RIGHT, BECAUSE -- AND THEN USING THAT
 8   DATE, YOU CAN BACKDATE A YEAR OR TWO YEARS, DEPENDING ON THE
 9   CLAIM.
10              MR. PROCTOR:  RIGHT.  I MEAN, IF IT'S 2003, THE
11   FRAUDULENT CONCEALMENT ONLY HAD TO LAST THROUGH EITHER 2001
12   OR 2002 --
13              THE COURT:  IT DOESN'T -- DOESN'T THUS FAR.  YOU
14   KNOW, APRIL OF 2002 AND APRIL OF 2001 --
15              MR. PROCTOR:  RIGHT.
16              THE COURT:  -- WHICH IS EVEN A SHORTER TIME
17   PERIOD.
18              MR. PROCTOR:  CORRECT.  AND OUR PERSPECTIVE WAS
19   SIMPLY -- I MEAN, THE FRAUDULENT CONCEALMENT HAS TO LAST
20   UNTIL, YOU KNOW, THREE YEARS OR TWO YEARS PRIOR TO THE DATE
21   OF FILING, AS THE CASE MAY BE --
22              THE COURT:  RIGHT.
23              MR. PROCTOR:  OUR VIEW WAS THE COURT HAS MADE
24   CLEAR -- THE COURT HAS FOUND AS A MATTER OF LAW THAT, IF
25   THERE WAS FRAUDULENT CONCEALMENT, IT LASTED THROUGH
```

8034

```
 1   JULY 2003 BECAUSE WE DIDN'T LEARN THE TRUE FACTS BEFORE

 2   THEN.   IF THE COURT --

 3            THE COURT:   I SEE WHAT YOU'RE SAYING.

 4            MR. PROCTOR:   IF THE COURT HAS REJECTED THAT

 5   POSITION, WHICH -- WHICH I UNDERSTOOD THE COURT HAD, THEN --

 6   THEN I THINK WE DO NEED A DATE AS MGA HAS.   IF THE COURT

 7   HASN'T, THEN WE DON'T.

 8            THE COURT:   I UNDERSTAND YOUR ARGUMENT.   OKAY.

 9            MR. PROCTOR:   THE -- THE ONE OTHER POINT, I WOULD

10   SAY, JUST -- JUST FOR -- FOR THE SAKE OF RESPONDING, I MEAN,

11   IN TERMS OF CATEGORIES, I -- I CERTAINLY -- I CAN SEE SOME

12   BENEFITS IN HAVING THE FIRST GENERATION OF DOLLS LISTED.   IT

13   IS NOT MY UNDERSTANDING -- AND PERHAPS WE SIMPLY NEED TO

14   MEET AND CONFER ABOUT THIS.   IT'S NOT MY UNDERSTANDING THAT

15   EVEN EVERY THEME OF THE LATER GENERATION DOLLS IS LISTED

16   HERE, LET ALONE EVERY DOLL.

17            THE COURT:   SO NOT -- NOW YOU'RE SUGGESTING THAT

18   I -- I LIST THE FIRST GENERATION OF DOLLS BUT NOT THE REST?

19            MR. PROCTOR:   MY SUGGESTION IS THAT WE ASK A

20   SINGLE QUESTION.   I -- I THINK THAT'S THE RIGHT WAY TO DO IT

21   IN THIS CASE.   I THINK THAT GETTING INTO THESE TYPES OF

22   ISSUE DOES PRESENT A RISK OF INCONSISTENT VERDICTS AND A

23   LACK OF CLARITY AND I HAVE -- I HAVE SERIOUS CONCERNS ABOUT

24   THAT.

25            IF WE ARE GOING TO LIST IT -- I MEAN, MGA'S
```

```
 1    PREMISE WAS, WELL, YOU KNOW, WHAT'S THE BASIC QUESTION?  THE
 2    BASIC QUESTION IS DIRECT INFRINGEMENT.
 3            CERTAINLY, WE DO HAVE A BASIC QUESTION AS TO
 4    DIRECT INFRINGEMENT OF THE FIRST GENERATION OF DOLLS.  AFTER
 5    THAT, HIGHLIGHTING THIS -- THIS DIRECT INFRINGEMENT ISSUE IN
 6    THE ALTERNATIVE -- YOU KNOW, INSTEAD OF INDIRECT PROFITS
 7    IS -- IS PREJUDICIAL, AND I DON'T THINK EVERYTHING IS
 8    CAPTURED.
 9            I'D BE HAPPY TO MEET AND CONFER WITH MGA, IF THE
10    COURT WANTS, ON THAT.  BUT, YOU KNOW, IF THE JURY COMES BACK
11    WITH A VERDICT THAT SAYS HALF OF THESE LATER GENERATION
12    DOLLS INFRINGE AND HALF DO NOT, I DON'T THINK THAT'S GOING
13    TO PROVIDE THE COURT MUCH GUIDANCE AS TO AN INJUNCTION.
14            AND -- AND FRANKLY, YOU KNOW, WITHIN THE THEMES,
15    NOT -- WE THINK THEY'RE ALL SUBSTANTIALLY SIMILAR, BUT IT
16    MAY BE THE CASE THAT A CHLOE OF -- YOU KNOW, GIRLS-NIGHT-OUT
17    CHLOE LOOKS MORE LIKE THE ORIGINAL CHLOE DRAWING AND DOLL
18    THAN THE YASMIN GIRLS NIGHT OUT.
19            SO I -- I DON'T THINK IT'S GOING TO PROVIDE USEFUL
20    GUIDANCE, AND I THINK IT'S CONFUSING.
21            THE COURT:  ANYTHING FURTHER ON THE VERDICT FORM?
22            MS. AGUIAR:  JUST TO CLOSE THIS OUT, YOUR HONOR.
23            TO ANSWER YOUR QUESTION ABOUT WHETHER THERE SHOULD
24    BE THE ADDITIONAL QUESTION OF, FOR EXAMPLE, IS THIS
25    DERIVATIVE?  ARE THESE DERIVATIVE?  I'M NOT A COPYRIGHT
```

8036

```
1    SPECIALIST, BUT MY UNDERSTANDING OF A DERIVATIVE WORK IS
2    THAT YOU STILL NEED SUBSTANTIAL SIMILARITY.
3              SO IT GOES BACK TO THE SAME BASIC QUESTION:  DID
4    YOU HAVE ACCESS AND ARE THESE DOLLS SUBSTANTIALLY SIMILAR?
5    BECAUSE IT CAN'T BE DERIVATIVE UNLESS THE STUFF THAT YOU'VE
6    ADDED TO IT IS SUBSTANTIALLY SIMILAR.  THAT'S SORT OF THE
7    BASELINE.
8              SO I -- I GUESS IT JUST SUPPORTS MY ARGUMENT THAT
9    THE BASIC QUESTION IS ARE THESE PRODUCTS SUBSTANTIALLY
10   SIMILAR TO THE DRAWINGS?
11             AND -- AND I GET THAT MR. PROCTOR IS NOW SAYING
12   THAT, WELL, OUR MAIN CLAIM, FOR EXAMPLE, ON THE MERCHANDISE,
13   IS NOT REALLY DIRECT INFRINGEMENT.
14             WELL, AT A HEARING PRIOR TO 1-B, MR. COREY
15   ARTICULATED.  HE SAID, "WE HAVE TWO THEORIES OF INFRINGEMENT
16   ON MERCHANDISE, FOR EXAMPLE.  ONE IS DIRECT INFRINGEMENT AND
17   THE OTHER IS INDIRECT PROFITS."
18             HE DIDN'T SAY, "WE'RE NOT REALLY PURSUING ONE OF
19   THEM, AND THE MAIN CLAIM IS THIS."  ALL THE WAY THROUGH THIS
20   VERY LONG LITIGATION, THEY HAVE PURSUED TWO THEORIES --
21             THE COURT:  THEY HAVE.
22             MS. AGUIAR:  -- WITH REGARD TO THESE PRODUCTS.
23   AND -- AND NOW WE'RE JUST SAYING, "LOOK, DO THEY DIRECTLY
24   INFRINGE?"  AND THEN, WHEN YOU WANT IT -- THE JURY
25   INSTRUCTIONS, AFTER MANY GO-ROUNDS, I THINK ARE NOW CLEAR.
                                                           8037
```

```
 1   THE JURY IS GOING TO BE INSTRUCTED AS TO WHAT -- HOW TO
 2   APPROACH THE VERDICT FORM WHEN IT COMES TO THE DAMAGES
 3   QUESTIONS AND THE INDIRECT PROFITS.
 4           THE COURT:  I HOPE THEY'RE CLEAR.
 5           MS. AGUIAR:  I THINK WE'RE --
 6           THE COURT:  I HOPE THEY'RE CLEAR.  I DON'T KNOW.
 7   I HOPE SO.  I HOPE SO.
 8           WELL, THANK YOU VERY MUCH.  I APPRECIATE THIS.
 9   I'LL WORK ON THIS TONIGHT.
10           AND I KNOW I WANTED TO HAVE A FINAL VERSION IN
11   YOUR HANDS THIS EVENING, BUT IT WON'T BE UNTIL TOMORROW
12   MORNING.  BUT YOU'LL HAVE ALL DAY TOMORROW, THEN, IN ADVANCE
13   OF THE CLOSING ARGUMENT.
14           I'M GOING TO BE TIED UP WITH THIS OTHER JURY
15   TOMORROW, SO I'M REALLY NOT GOING TO BE AVAILABLE TO
16   CONSIDER MATTEL AT ALL.  BUT I WILL MAKE MYSELF AVAILABLE AT
17   THE END OF THE DAY IF THERE'S SOMETHING THAT -- I WOULD
18   RATHER DEAL WITH SOMETHING AT THE END OF THE DAY TOMORROW
19   THAN FIRST THING WEDNESDAY -- WEDNESDAY MORNING, IN ADVANCE
20   OF THE CLOSING ARGUMENTS.
21           SO, IF THERE'S SOMETHING WHICH HAS COME UP WITH
22   MR. NOLAN, MR. KENNEDY'S PREPARATION, OR MR. QUINN'S
23   MR. PRICE'S PREPARATION THAT YOU SEE AS BEING A BIG ISSUE,
24   COME SEE THE COURT AT THE END OF THE DAY TOMORROW AND LET'S
25   TAKE IT UP THEN AS OPPOSED TO WEDNESDAY MORNING.
```

8038

```
 1              MR. PROCTOR:  WHAT TIME WOULD THAT BE, YOUR HONOR?

 2              THE COURT:  I'M AVAILABLE AS SOON AS I PICK THIS

 3    JURY.  I'M HOPING TO HAVE THIS JURY PICKED BY MIDAFTERNOON,

 4    BUT IT MAY BE LATER IN THE AFTERNOON.  I -- I REALLY CAN'T

 5    GIVE YOU A DEFINITE HOUR.

 6              MR. PROCTOR:  OKAY.

 7              THE COURT:  MY -- MY FIRST PRIORITY TOMORROW IS TO

 8    PICK THIS CRIMINAL JURY.  AND -- AND -- BUT IF YOU COULD GET

 9    THE WORD CIRCULATED THAT I'D REALLY LIKE TO TAKE UP ANY

10    ISSUES WHENEVER THAT IS, MR. HOLMES SHOULD BE ABLE TO GIVE

11    YOU A SENSE DURING THE AFTERNOON HOW WE'RE DOING, HOW CLOSE

12    WE ARE.

13              MS. AGUIAR:  OKAY.  THERE ARE A COUPLE OF EXHIBITS

14    WE JUST NEED TO MEET AND CONFER ON THAT WE NEED TO

15    OFFICIALLY MOVE INTO EVIDENCE --

16              THE COURT:  OKAY.

17              MS. AGUIAR:  -- THAT I THINK BOTH PARTIES THOUGHT

18    HAD BEEN.  SO I'LL TALK WITH MR. PROCTOR ABOUT THAT, AND

19    WE'LL DO THAT --

20              THE COURT:  LET'S -- LET'S DO THAT TOMORROW AT THE

21    END OF THE DAY AS WELL.

22              MS. AGUIAR:  SURE.

23              THE COURT:  LET'S HAVE THAT --

24              MS. AGUIAR:  OKAY.

25              THE COURT:  -- READY TO GO.
```

```
1              MS. AGUIAR:  THANK YOU.

2              MR. PROCTOR:  AND -- AND MY -- I -- I WONDER IF

3    THE COURT WOULD SET A TIME OR THINKS THAT WE SHOULD DO THAT,

4    BECAUSE WHAT WE -- AND WHAT'S -- WHAT THE COURT HAS ALWAYS

5    AFFORDED THE PARTIES, WHICH HAS BEEN VERY HELPFUL, I THINK,

6    TO BOTH FOR US, IS -- IS THE COURT PROVIDES THE TENTATIVE,

7    FINAL DRAFT OF THINGS LIKE THE VERDICT FORM, AND THEN IS --

8    IS RECEPTIVE TO ANY -- ANY COMMENTS ON MINOR POINTS.

9              I THINK PROBABLY BOTH PARTIES WOULD APPRECIATE THE

10   OPPORTUNITY TO PROVIDE THOSE.

11             THE COURT:  WELL, I WILL -- I WILL SET A HEARING

12   FOR AFTERNOON AT FOUR O'CLOCK.  UNDERSTAND THAT IT MIGHT GET

13   PUSHED.  AND THEN LET'S HAVE ALL THIS DONE BY FOUR O'CLOCK.

14             AND I'LL HEAR FINAL OBJECTIONS TO THE VERDICT

15   FORM, FINAL OBJECTIONS TO THE JURY INSTRUCTIONS, ANY FINAL

16   OBJECTIONS TO THE ADMISSION OR ISSUES CONCERNING THE

17   ADMISSION OF ANY EXHIBITS, AND ANY OBJECTIONS CONCERNING

18   CLOSING ARGUMENTS THAT ARE KNOWN IN ADVANCE.  AND I'LL DEAL

19   WITH THOSE TOMORROW AFTERNOON.

20             AND -- AND LET ME -- LET'S HAVE MR. NOLAN AND

21   MR. QUINN -- LET'S HAVE THE PEOPLE WHO ARE PARTICIPATING IN

22   THE CLOSING ARGUMENTS PRESENT TOMORROW AFTERNOON.

23             MS. AGUIAR:  SURE.  FINE.  NO PROBLEM.

24             THE COURT:  I -- I THINK THAT'S -- I -- I -- NOT

25   THAT -- NOT THAT COUNSEL HERE IS NOT MORE THAN ABLE --
                                                        8040
```

```
 1    PERHAPS, IN SOME INSTANCES, I SUSPECT MORE -- MORE THAN ABLE
 2    TO REPRESENT THE PRINCIPALS.  BUT JUST -- JUST SO THAT, TO
 3    THE EXTENT THAT I'M GIVING ANY INSTRUCTIONS, I'M SPEAKING
 4    DIRECTLY TO THE PEOPLE WHO ARE GOING TO BE GIVING THE
 5    CLOSING ARGUMENTS.  LET ME ORDER THE FOUR OF THEM TO BE
 6    PRESENT TOMORROW AT FOUR O'CLOCK.
 7              AND CALL MR. HOLMES TO GET GUIDANCE IN TERMS OF
 8    WHETHER THAT'S GOING TO GET MOVED SLIGHTLY ONE WAY OR THE
 9    OTHER.
10              MS. AGUIAR:  THANK YOU.
11              THE COURT:  ALL RIGHT.  AND WE'LL HAVE THE
12    INSTRUCTIONS OUT FOR YOU FIRST THING IN THE MORNING.
13              MS. AGUIAR:  THANK YOU, YOUR HONOR.
14              MR. PROCTOR:  THANK YOU.
15              THE COURT:  GOOD EVENING.
16              THE CLERK:  THE COURT STANDS ADJOURNED.
17              (PROCEEDINGS ADJOURNED.)
18
19
20
21
22
23
24
25
                                                           8041
```

```
 1

 2                    C E R T I F I C A T I O N

 3          I HEREBY CERTIFY THAT I AM A DULY APPOINTED,
      QUALIFIED AND ACTING CONTRACT COURT REPORTER FOR THE
 4    UNITED STATES DISTRICT COURT; THAT THE FOREGOING IS A TRUE
      AND CORRECT TRANSCRIPT OF THE PROCEEDINGS TAKEN IN THE
 5    AFOREMENTIONED CAUSE ON AUGUST 18, 2008; THAT SAID
      TRANSCRIPT IS A TRUE AND CORRECT TRANSCRIPTION OF MY
 6    STENOGRAPHIC NOTES; AND THAT THE FORMAT USED HEREIN COMPLIES
      WITH THE RULES AND REQUIREMENTS OF THE UNITED STATES
 7    JUDICIAL CONFERENCE.

 8

 9          DATED AUGUST 19, 2008, AT RIVERSIDE, CALIFORNIA.

10

11

12                    _____
                      KYUNG LEE-GREEN, CSR NO. 12655
13                    FEDERAL CONTRACT REPORTER

14

15

16

17

18

19

20

21

22

23

24

25
                                                          8042
```