1  THOMAS J. NOLAN (Bar No. 66992)
   (tnolan@skadden.com)
2  JASON D. RUSSELL (Bar No. 169219)
   (jrussell@skadden.com)
3  LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
   (laguiar@skadden.com)
4  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue, Suite 3400
5  Los Angeles, CA  90071-3144
   Tel.: (213) 687-5000 / Fax: (213) 687-5600
6
   RAOUL D. KENNEDY (Bar No. 40892)
7  (rkennedy@skadden.com)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
8  4 Embarcadero Center, 38th Floor
   San Francisco, CA  94111-5974
9  Tel.: (415) 984-6400 / Fax: (415) 984-2698

10 Attorneys for The MGA Parties

11                 UNITED STATES DISTRICT COURT

12                 CENTRAL DISTRICT OF CALIFORNIA

13

14
   CARTER BRYANT, an individual,        )  CASE NO. CV 04-9049 SGL (RNBx)
15                                       )
                   Plaintiff,            )  Consolidated with Case No. 04-9059
16                                       )  and Case No. 05-2727
         v.                              )
17                                       )
   MATTEL, INC., a Delaware              )  MGA'S REPLY IN SUPPORT OF
18 corporation,                          )  ITS MOTION TO STRIKE THE
                                         )  DECLARATIONS OF B. DYLAN
19                 Defendant.            )  PROCTOR, FRANK KEISER AND
                                         )  KENNETH HOLLANDER
20 ─────────────────────────────        )
   AND CONSOLIDATED ACTIONS.            )
21                                       )  Hearing Date: November 10, 2008
                                         )  Time:          1:00 PM
22
23
24
25
26
27
28

─────────────────────────────────────────────────────
MGA's Reply in Support of its Motion to Strike The Declarations of Proctor, Keiser, and Hollander
Case No. CV 04-9049 SGL (RNBx)

# <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................... iii

PRELIMINARY STATEMENT ............................................................. 1

ARGUMENT ........................................................................................ 2

I.     THE COURT SHOULD NOT CONSIDER NEW EVIDENCE POST TRIAL ON THE ISSUE OF SUBSTANTIAL SIMILARITY ................................................................................ 2

     A.    Mattel's Legal Authorities Are Inapposite ..................................... 4

     B.    Contrary to Mattel's Suggestion, MGA Has Not Submitted New Evidence On An Issue that Was Decided By the Jury ......... 6

II.    THE PROCTOR DECLARATION SHOULD BE STRICKEN ............ 7

     A.    MGA's Motion To Strike The Proctor Declaration Is Not Overbroad .......................................................................... 7

     B.    Mr. Proctor's Comparisons Are Improper ..................................... 8

     C.    Mattel Could Have Used, But Did Not Use, Lee Loetz To Make These Comparisons ............................................................ 9

III.    THE KEISER DECLARATION SHOULD BE STRICKEN ............... 10

     A.    MGA's Objections To Mr. Keiser's Comparisons Are Still Relevant and Applicable ............................................................ 10

     B.    Mr. Keiser's Renderings Are Not Probative Or Admissible ....... 12

     C.    The Renderings Do Not "Fairly And Accurately" Compare the Objects ................................................................................ 14

IV.    THE HOLLANDER DECLARATION SHOULD BE STRICKEN ................................................................................ 15

     A.    The Hollander Declaration is Irrelevant to the Permanent Injunction Motion ..................................................................... 15

     B.    The Hollander Declaration Should Be Excluded For the Reasons Set Forth in MGA's Motion in Limine No. 8 .............. 16

     C.    At A Minimum, MGA Would Be Entitled to a Daubert Hearing And An Opportunity To Submit Rebuttal Reports ....... 17

     D.    Mr. Hollander's Sworn Expert Report Is Improper Evidence ................................................................................... 18

i

1

CONCLUSION ................................................................................................. 19

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

## CASES

Apple Computer, Inc. v. Microsoft Corp.,
   35 F.3d 1435 (9th Cir. 1994).................................................................. 3

Bell Telegraph Laboratories v. Hughes Aircraft Co.,
   73 F.R.D. 16 (D. Del. 1976)................................................................... 3

Burton v. Armontrout,
   975 F.2d 543 (8th Cir. 1992)............................................................... 4, 5

Charles Jacquin et Cie, Inc. v. Destileria Serralles, Inc.,
   921 F.2d 467 (3d Cir. 1990)................................................................... 5

Danjaq LLC v. Sony Corp.,
   263 F.3d 942 (9th Cir. 2001)................................................................. 3

Floyd v. Hefner,
   556 F. Supp. 2d 617 (S.D. Tex. 2008) ............................................... 18

Friends of Coral Bay v. Reliance Housing Foundation, Inc.,
   2008 U.S. Dist. LEXIS 8182 (D. V.I. Feb. 1, 2008)............................. 4

Funky Films, Inc. v. Time Warner Entertainment Co. L.P.,
   462 F.3d 1072 (9th Cir. 2006).............................................................. 17

Idema v. Dreamworks, Inc.,
   162 F. Supp. 2d 1129 (C.D. Cal. 2001) ................................................ 3

Jones v. City of St. Clair,
   804 F.2d 478 (8th Cir. 1986).................................................................. 3

Laremont-Lopez v. Southeastern Tidewater Opportunity Project,
   1998 U.S. Dist. LEXIS 22329 (E.D. Va. July 7, 1998) ....................... 4

Marchel Design, Inc. v. Best Master Enterprises, Inc.,
   2008 WL 4723113 (C.D. Cal. 2008)..................................................... 17

Maytag Corp. v. Electrolux Home Products, Inc,
   448 F. Supp. 2d 1034, 1064 (N.D. Iowa 2006)................................... 18

Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.,
   585 F.2d 821 (7th Cir. 1978)................................................................. 5

Page v. Children's Council,
   2006 U.S. Dist. LEXIS 68269 (N.D. Cal. Sept. 11, 2006) ................... 8

Rancho Santa Fe Associate v. United States,
   1984 U.S. Dist. LEXIS 17652 (S.D. Cal. Apr. 12, 1984)..................... 4

iii

United States v. Garvin,
  88 F.App'x. 542, 544 (3rd Cir. 2004) ................................................................. 14

U.S. Philips Corp. v. KXD Tech., Inc.,
  2007 U.S. Dist. LEXIS 96605 (C.D. Cal. July 27, 2007) ................................... 8

Williams v. General Motors,
  656 F.2d 120 (5th Cir. 1981) ................................................................................. 5

**STATUTES**

Fed. R. Civ. P. 49(a) ................................................................................................. 5

iv

MGA's Reply in Support of its Motion to Strike The Declarations of Proctor, Keiser, and Hollander
Case No. CV 04-9049 SGL (RNBx)

## PRELIMINARY STATEMENT

The glaring omission and fatal flaw in Mattel's opposition brief is that it completely ignores the central premise of MGA's Motion to Strike the Declarations of B. Dylan Proctor, Frank Keiser, and Kenneth Hollander.  Apparently unsatisfied with the jury's verdict on copyright infringement, Mattel now wants to re-litigate the infringement question under the guise of its request for equitable relief.  It would be improper for the Court to consider these declarations because they attempt to introduce evidence that was not presented to the jury on the issue of whether Bratz dolls are substantially similar to the Carter Bryant drawings.  MGA has a constitutional right to have the jury decide the issue of "substantial similarity" — which the jury did on August 26, 2008.  Because Mattel's declarations seek to introduce new evidence regarding this purely *legal claim* — evidence that was fully available to Mattel at trial — they are inadmissible as new, post-trial additions to the record.[1]  Mattel does not address this fundamental argument; instead, it mischaracterizes MGA's position as asserting that a party cannot present *any* new evidence post-trial.[2]

---

[1]     See MGA's Motion to Strike at 1 ("And Mattel also fails to provide any reason ... for belatedly introducing new evidence related to substantial similarity in the post-trial stage"); id. ("Mattel's time to present *this* evidence was at trial") (emphasis added); id. at 2 ("the question of whether the Bryant drawings and the Bratz dolls are 'substantially similar' was the subject of extensive pre-trial discovery"); id. ("to the extent this evidence is offered on the issue of copyright infringement, MGA has a Seventh Amendment right to have that issue decided by the jury"); id. at 3 ("Mattel's copyright infringement claims are classic 'legal claims' on which the jury's 'implicit and explicit' findings bind the Court").

[2]     See Opp'n at 1 ("MGA argues that evidence may not be presented in support of injunctive relief after trial if it was not presented at trial"); id. ("such 'new' evidence is routinely admitted in connection with post-trial requests for equitable relief"); id. at 2 ("there is no legal or factual impediment to presenting evidence that was not presented at the jury trial"); id. at 3 ("submitting new evidence beyond that admitted at trial is standard operating practice in a post-jury trial proceeding").

---

1   What Mattel <u>cannot</u> offer is evidence that conflicts with the jury's finding that

2   MGA's infringement profits are $10 million, at most.[3]   In short, the jury rejected all

3   but a miniscule portion of Mattel's claim that MGA's infringement profits were

4   $777.9 million.  The Proctor, Keiser and Hollander declarations seek to establish that

5   MGA's infringement is really much greater than what the jury determined.  In short,

6   Mattel is using these declarations to try to establish – for injunction purposes – far

7   more extensive infringement than what was found by the jury.  Mattel's attempt to do

8   any end run around the verdict should be rejected and the declarations should be

9   stricken.

**ARGUMENT**

**I.   THE COURT SHOULD NOT CONSIDER NEW EVIDENCE POST TRIAL ON THE ISSUE OF SUBSTANTIAL SIMILARITY**

13   Mattel's primary argument is that this additional evidence is necessary "for the

14   Court to consider in determining the propriety and scope of the injunctive relief

15   sought." Opp'n at 1.   The propriety of an injunction is a question for the Court, and

16   any evidence that bears on the scope of any injunction (i.e., substantial similarity)

17   should have been presented at trial and considered by the jury.  In fact, Mattel does

18   not even dispute that the declarations are an attempt to re-litigate copyright

19   infringement, conceding that the Proctor Declaration "provides the Court with a

20   way … to directly compare Bratz drawings and products;" the Keiser Declaration

21   "allow[s] the Court to isolate and compare the shape of Mattel's copyright sculpt

22   with the shape of a recent Bratz doll" (the extrinsic test); and the Hollander

---

26   [3]    Six million against MGA, $3 million against MGA Hong Kong, and $1
27   million against Isaac Larian.  MGA submits the latter two numbers are duplicative of the former and that the total number is really $6 million.

28

1    Declaration supposedly addresses the "relevant audience for the intrinsic test."

2    Opp'n at 1.[4]

3         Mattel cannot — and does not — challenge the basic fact that copyright

4    infringement in this case was a *legal* claim for which MGA has a Seventh

5    Amendment right to a trial by jury.  See, e.g., Danjaq LLC v. Sony Corp., 263 F.3d

6    942, 962 (9th Cir. 2001) ("McClory has a constitutional right to a jury trial on his

7    copyright infringement claims ....") (citing Feltner v. Columbia Pictures TV, 523

8    U.S. 340, 355 (1998); 3 Nimmer §12.10[A], at 12-145 (May 2000) (noting that "a

9    defendant who faces monetary sanctions may insist on jury trial").  "It is settled law

10   that when the same case involves both legal and equitable claims, the legal claims

11   are tried to the jury and the equitable claims are tried to the court."  Jones v. City of

12   St. Clair, 804 F.2d 478, 481 (8th Cir. 1986), citing Dairy Queen Inc. v. Wood, 369

13   U.S. 469, 479 (1962).

14        Despite this crucial distinction between legal and equitable claims, Mattel

15   responds by citing generally to its Reply in Support of its Motion for a Permanent

16   injunction.  Opp'n at 6.  But that Motion only argued (incorrectly) that the jury's

17   general verdict "does not bind a court in determining the proper scope of injunctive

18   relief."  Mattel's Reply at 2.[5]  Mattel has not addressed why it is entitled to present

19   previously available evidence on an issue reserved for the jury.  The reason is simple:

20   there is no legitimate basis for its admission.[6]

21   _____

22        [4]    See Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1443 (9th
     Cir. 1994) (describing the Ninth Circuit's two-part copyright infringement test);
23   Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176-77 (C.D. Cal. 2001) (same).

24        [5]    MGA has rebutted this argument in its Opposition to Mattel's Motion
     for a Permanent Injunction.  MGA Opposition at 26-29.

25        [6]    Furthermore, it is instructive that federal courts are generally reluctant
26   to reopen the evidentiary record when evidence was readily available at trial.  See,
     e.g., Bell Tel. Labs. v. Hughes Aircraft Co., 73 F.R.D. 16, 23 (D. Del. 1976) (noting
27   that generally "a party will not be permitted to reopen a case for the purpose of
     introducing evidence to meet the issue raised at trial, when that evidence was

28                                                                    *(cont'd)*

## A.    Mattel's Legal Authorities Are Inapposite

Mattel cites out-of-Circuit authority to suggest that submitting additional evidence post-trial is "standard operating practice." Opp'n at 3. The lynchpin of that argument is that "the court may [also] rely on evidence not presented to the jury when the jury's factual findings are incomplete or inconclusive." Id., citing Burton v. Armontrout, 975 F.2d 543, 545 (8th Cir. 1992) (emphasis added). But Mattel has not even suggested — let alone demonstrated — that the jury's verdict is "incomplete or inconclusive." At Mattel's insistence, the jury was presented with a general verdict form. Based on all of the evidence — including a "doll room" with the full spectrum of Bratz products (all generations of Bratz fashion dolls, other product lines, and merchandise) — the jury returned a finding of copyright infringement, with damages of $6 million against MGA, $3 million against MGA Hong Kong, and $1 million against Isaac Larian -- a small fraction of the $1 billion-plus in copyright damages sought by Mattel. Now, as the court in Burton recognized, the "district court must grant equitable relief that is 'consistent with the facts as found by the jury.'" 975 F.2d at 544-45, quoting Peery v. Brakke, 826 F.2d 740, 746 (8th Cir. 1987).

Mattel's cases stand for the rather unremarkable proposition that new evidence may sometimes be admitted post-trial in certain circumstances; those cases do not

(cont'd from previous page)
available and known to the party at the time of trial" and "a party cannot request relief from the court for its own errors in judgment, when the strategy of litigation was based on conscious and informed choices") (citations omitted); Rancho Santa Fe Assoc. v. United States, 1984 U.S. Dist. LEXIS 17652 at *4 (S.D. Cal. Apr. 12, 1984) ("whether Rancho Santa Fe was a 'community' was fully dealt with at the initial hearing and a request for rehearing will not lie to relitigate old matters") (citations omitted); Friends of Coral Bay v. Reliance Hous. Found., Inc., 2008 U.S. Dist. LEXIS 8182 at *11 (D. V.I. Feb. 1, 2008) (refusing to reopen the case and let Plaintiffs "have two bites of the apples when they are entitled to only one" because evidence was "available to [Plaintiff] at trial" and it "would also disrupt the need for the prompt and efficient handling of litigation in federal courts"). Cf. Laremont-Lopez v. Se. Tidewater Opportunity Project, 1998 U.S. Dist. LEXIS 22329 at *7 (E.D. Va. July 7, 1998) ("Nor does the Court find that a new trial should be granted to allow Plaintiff to submit further evidence when it is clear from the record that all of the evidence Plaintiff now seeks to introduce was available at the time of trial").

MGA's Reply in Support of its Motion to Strike The Declarations of Proctor, Keiser, and Hollander
Case No. CV 04-9049 SGL (RNBx)

deal with a situation where, as here, a party seeks to re-litigate a legal claim after it has been determined by a jury.  For example, in <u>Charles Jacquin et Cie, Inc. v. Destileria Serralles, Inc.</u>, 921 F.2d 467, 471 (3d Cir. 1990), the court permitted post-verdict evidence, but "the only claim remaining when the case went to the jury was for equitable relief."[7]  Similarly, in <u>Williams v. General Motors</u>, 656 F.2d 120, 124 (5th Cir. 1981), although the court acknowledged that "rather than introduce new evidence [at a post-trial injunction hearing], plaintiffs relied on all evidence actually admitted in the earlier jury trial," the only evidence submitted by either side at that hearing related to an item that "had nothing to do with the [conduct] at issue before the jury."[8]

Mattel also argues that "much of the evidence that was submitted in connection with Mattel's request for injunctive relief" deals with issues "not identical to those before the jury."  Opp'n at 3.  As Mattel concedes, this argument applies here <u>only</u> to "future activities" or "post-trial conduct".  The bulk of the Proctor and Keiser declarations do not pertain to post-trial conduct, nor does <u>any</u> of the Hollander declaration.  At best, Mattel's only example of such post-trial conduct are "new dolls currently on the market."  Opp'n at 4.  But again failing to meet its burden,

---

[7]       The relevance of this case is further circumscribed because it involved a special verdict form which did not direct the jury to consider the issue involved in the injunction determination.  The court thus found that under Fed. R. Civ. P. 49(a), "if the district court [in a special verdict case] fails to charge the jury on a fact issue raised by the pleadings or evidence, the parties waive their right to a jury trial on that issue unless they object."  <u>Id.</u> at 472.

[8]       Even under Mattel's interpretation of the law, MGA would at a minimum be entitled to a full hearing on any remaining factual issues, to permit MGA to cross-examine Mattel's declarants as well as put forth its own experts and additional evidence.  <u>See</u>, <u>e.g.</u>, <u>Burton</u>, 975 F.2d at 545 ("Prior to making supplemental findings, the court heard additional testimony ...."); <u>Williams</u>, 656 F.2d at 124 (discussing the permanent injunction "hearing" which included witness testimony); <u>Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.</u>, 585 F.2d 821, 843-44 (7th Cir. 1978) ("the district court took additional evidence in hearings on equitable relief ....").  Unlike the situations in these cases, however, MGA has a constitutional right to have the issue of copyright infringement determined by the jury, not the Court.

1  Mattel does not specifically identify a single doll that was not available to it as of the

2  commencement of jury deliberations on August 21, 2008.  Up to that point, Mattel

3  was free to add items to the doll evidence room for the jury's consideration, and did

4  in fact do so until the eve of deliberations in Phase 1(b).

**B.    Contrary to Mattel's Suggestion, MGA Has Not Submitted New Evidence On An Issue that Was Decided By the Jury**

7      Mattel alleges that MGA is operating under a double standard because "the

8  Court has already welcomed new evidence in connection with the parties' requests

9  for equitable relief," including "more than 35 exhibits [from MGA] that had never

10  been admitted at trial in support of its Statement of Position Regarding 1(c) issues".

11  Opp'n at 4-5.  This is apples and oranges.  The exhibits proffered by MGA did not

12  deal with issues that already were determined by the jury; MGA's affirmative

13  defenses were specifically reserved for the Court post-verdict.

14      Mattel goes so far as to wrench the Court's statements out of their proper

15  context in order to suggest that the Court contemplated the introduction, willy-nilly,

16  of any and all evidence post-trial.  Mattel quotes the Court as saying "I want to make

17  sure that MGA has the ability to bring in … all of the evidence they think is

18  necessary to prove up any of their affirmative defenses."  Opp' at 4 n.3 (citing Tr.

19  5272:11-14).  There, the Court was addressing the introduction of evidence *during*

20  *Phase 1(b)* relating to MGA's affirmative defenses.  See Tr. 5272:1-5 ("I'm going to

21  set clear parameters for what types of evidence will come in on the affirmative

22  defenses before this jury in Phase 1-B.").  Similarly, when the Court mentioned

23  giving "leave at the end of the trial to introduce such evidence to the court itself"

24  Opp'n at 3 n.4 (citing Tr. 5305:7-13), it was only discussing "to what extent

25  additional evidence <u>relevant to the remaining affirmative defenses</u> may be presented

26  to the Court."  Tr. 5304:20-21 (emphasis added).  There is no reasonable basis for

27  Mattel to have "relied" on these statements and intentionally held back from the jury

28

6

1  allegedly "relevant" and "persuasive" evidence pertaining to the issue of substantial

2  similarity – which it knew full well was being determined by the jury.[9]

3
4  **II.    THE PROCTOR DECLARATION SHOULD BE STRICKEN**

5      **A.    MGA's Motion To Strike The Proctor Declaration Is Not Overbroad**

6
7       Poor Mr. Proctor.  In an attempt to salvage his declaration, Mattel now

8  denigrates the declaration to the point of claiming that it does nothing more than

9  make simple observations detectable by a "young child," and claiming that the sole

10 purpose of the declaration is to transmit pieces of paper — "to allow the Court a

11 convenient way to view many dolls and drawings and draw its own comparisons

12 about their similarity." Opp'n at 6.  However, this clearly is not the true purpose of

13 Mr. Proctor's declaration, which is rife with suggestive comparisons and

14 argumentative commentary.  It is patently obvious that this declaration, along with

15 the declarations of Messrs. Keiser and Hollander, is part of Mattel's attempt to

16 inappropriately retry the issue of substantial similarity by "mak[ing] its own

17 comparisons," Opp'n at 7, in violation of MGA's Seventh Amendment rights.  See

18 Motion at 1-3.  Whether Mr. Proctor's declaration is really a belated expert report in

19 disguise, or a vehicle for making comparisons that could be drawn even by a young

20 child – it is inappropriate.  The time for experts has long passed and the jury drew its

21 own comparisons to render its verdict (on a verdict form strongly advocated by

22 Mattel).

23      Finally, Mattel tries to justify the admissibility of the Proctor declaration by

24 stating that certain portions of it relate to "dolls … currently on the market."  Opp'n

25
26     [9]    Mattel also quotes the Court's post-verdict statement that it would consider additional evidence (Opp'n at 4, Tr. 8345:22-25).  Once again, Mattel failed

27 to put this in context.  The Court was referring to "MGA and Isaac Larian's equitable defenses."  Tr. 8345:6-20.

28

1    at 6.  However, most if not all of these dolls were available before or during the trial,

2    and Mattel could have presented evidence related these dolls at trial.  While some of

3    the exhibits included in Mr. Proctor's declaration may have been admitted at trial, the

4    comparisons and opinions related to those dolls were not.  Mattel chose not to make

5    these comparisons for the jury, when it was the appropriate time to do so.

6           **B.**     **Mr. Proctor's Comparisons Are Improper**

7         In many instances in his declaration, Mr. Proctor places two images next to

8    each other (often with lines drawn across the images in suggestive locations), and

9    then expresses his opinion as to the similarities between the drawing and the doll.

10    See Proctor Decl. at ¶¶ 5, 9, 11, 22, 24, 27, 29, 56, 57, 59, 62, 64, 67, 68, 71, 73, 75,

11    78, 80, 82-86, and 88) (e.g., "the comparison also shows the similarity of horizontal

12    landmarks like the elbows and knees" (Proctor Decl. at ¶ 9)); "[t]his view shows the

13    similarity of curves and proportions both vertically and horizontally, as well as the in

14    common angular waist, knock-knees, pigeon toes, and hands upturned at the waist"

15    (Proctor Decl. at ¶ 5)).  Since these statements go beyond "factual, evidentiary

16    matter" they are in violation of Central District of California Local Rule 7-7 and

17    should be stricken.  See Motion at 7; U.S. Philips Corp. v. KXD Tech., Inc., 2007

18    U.S. Dist. LEXIS 96605 at *4-5 (C.D. Cal. July 27, 2007); Page v. Children's

19    Council, 2006 U.S. Dist. LEXIS 68269 at *14-15 (N.D. Cal. Sept. 11, 2006).

20         Because of statements such as these, Mattel now makes the remarkable claim

21    that Mr. Proctor did not use the word "comparison" in order to "draw comparisons at

22    all," Opp'n at 7, and that the Court should re-write Mr. Proctor's declaration for him

23    by replacing the words "similarity" and "similar" with entirely different words.

24    Opp'n at 8.  It hardly would be appropriate for the Court to go so far as to re-draft

25    Mattel's own declaration so that the new evidence on substantial similarity can come

26    into the post-trial record.

27

28

1   Mattel also claims that the Proctor declaration merely points out "the readily

2   observable fact that similarities may be viewed" between the drawings and dolls.

3   Opp'n at 8.  If this was so readily obvious, what have the parties been litigating?  The

4   parties spent years (and millions of dollars) on expert discovery and motion practice

5   — not to mention a time consuming jury trial — on the issue of whether and to what

6   extent there are similarities between the Bryant drawings and various Bratz products.

7   If there really was no need for the jury to make these decisions, Mattel would have

8   moved for summary judgment on *all* Bratz products long ago.

9   Although not one difference is pointed out by Mr. Proctor in his argumentative

10  declaration, Mattel now admits that there are obvious "differences between the items

11  depicted."  Opp'n at 9.  Apparently we are all left to wonder what those differences

12  are, because Mr. Proctor only saw fit to highlight what he perceives to be similarities.

13  And then Mattel faults MGA for not pointing out differences between the drawings

14  and dolls and for not engaging in the same inappropriate "let's retry substantial

15  similarity" game.  See Opp'n at 9.  The reason for this is simple:  evidence on

16  substantial similarity was presented at trial and the jury rendered its verdict, flatly

17  rejecting Mattel's broad infringement arguments.[10]

18   **C.   Mattel Could Have Used, But Did Not Use, Lee Loetz To Make These Comparisons**

19

20   Mr. Proctor's adoption of sections from Mr. Loetz report proves that the

21  declaration goes beyond Mr. Proctor's personal knowledge.  See Motion at 6

22  (comparing Mr. Proctor's Decl. ¶ 9 to Mr. Loetz' report).  The plagiarism is

23  undeniable.  Nevertheless, Mattel argues that Mr. Loetz's testimony was "quite

24  _____

[10]   If the Court engages in its own post-trial analysis of substantial

25  similarity with Mattel's new evidence, then MGA seeks leave to submit, among other things, additional exhibits, the expert reports of Messrs. Vilppu and Menell,

26  testimony from Mattel's experts Loetz and Lind (who offered significant deposition testimony favorable to MGA on these issues), and visual analysis highlighting the

27  differences between the drawings and dolls.

28

1  different from the subject matter of the Proctor Declaration." Opp'n at 11.  While Mr.

2  Loetz expressed additional opinions that were not adopted by Mr. Proctor, this does

3  not change the fact that the subject matter is the same.  Mr. Proctor also expresses

4  opinions that Mr. Loetz was unable to express.  As explained in MGA's opening

5  brief, Mr. Loetz was not able to offer an opinion regarding certain images when

6  shown similar face line-ups; yet, Mr. Proctor opines on similar images in this

7  declaration.  See Motion at 6.  When the Court denied MGA's motion in limine, it

8  did not state that Mr. Loetz could express an opinion on the face line-ups.  Indeed,

9  the Court stated that it "assume[d] that [Mr. Loetz' testimony would] play out the

10  same way in the trial as it did in the deposition."  July 21, 2008 Bench Conf. Tr.

11  5260:1-6.  If the Court's assumption was right, at trial, Mr. Loetz would not have

12  been able to opine on many of the comparisons presented in Mr. Proctor's declaration.

13  See Proctor Decl. at ¶¶ 34, 39, 44, 49, and 54, and Motion at 6.

14  **III.   THE KEISER DECLARATION SHOULD BE STRICKEN**

15         **A.     MGA's Objections To Mr. Keiser's Comparisons Are Still Relevant
16                 and Applicable**

17         Had Mattel actually attempted to call Mr. Keiser as a witness at trial, MGA

18  would have pursued its motion to preclude these types of comparison exhibits from

19  being introduced.[11]  See Tr. 5674:13-16.  One basis for MGA's motion to preclude

20  was that the comparisons are outside the scope of Mr. Keiser's expert reports.  Mattel

21  argues that even though it prevented MGA from having the opportunity to cross

22  examine Mr. Keiser at trial, Mr. Keiser should now be free to opine on issues outside

23  the scope of his expert report because there is no unfair surprise.  See Opp'n at 14.

24  There is still an obvious risk of unfairness and prejudice to MGA; it clearly would be

25

26         [11] As mentioned in MGA's motion, if the Court is considering whether to
27  accept Mr. Keiser's declaration, then MGA requests the opportunity to officially
   renew its motion as to Mr. Keiser's exhibits.

28                                            10

1   unfair and prejudicial for the Court to allow Mattel to withdraw Mr. Keiser from its

2   trial witness list (thereby avoiding the motion challenging his exhibits and precluding

3   cross examination by MGA), only to consider evidence outside the scope of Mr.

4   Keiser's expert reports on the same issue that could have been addressed during trial.

5       MGA's second basis for its motion to preclude the Keiser exhibits was that the

6   renderings were produced late.  Mattel argues that MGA cannot object to the actual

7   renderings being produced late because Mattel previously had produced the data,

8   which Mattel claims is like "producing a tangible item" that allowed MGA to "print

9   out every possible rendering" of the data.  See Opp'n 15.  Mattel's analogy is

10  misleading.  As Mattel admits, the data can be visually "render[ed] in various ways"

11  by changing the color, size, and angle of the displayed data.  Opp'n at 15.  Producing

12  data that can be displayed in a nearly infinite number of ways is simply not

13  comparable to producing a tangible object.  See id.  Although Mattel produced the

14  data in connection with Mr. Keiser's expert reports, it did not produce the particular

15  renderings until it was ordered to do so by the Court on July 21, 2008.  See July 21

16  2008 Hearing Tr. 5320:5-5321:12.

17      As discussed above, Mr. Keiser manipulated this data.  That data manipulation

18  was beyond the scope of Mr. Keiser's expertise, which was the third ground for

19  MGA's motion to preclude.  Mr. Keiser conceded that his expertise is strictly limited

20  to data acquisition.  See Motion at 11.  Mattel now tries to expand the definition of

21  "data acquisition" to include "acquiring the data and rendering it various ways."

22  Opp'n at 15.  Mr. Keiser was clear in his deposition that "all" he does is data

23  acquisition.  See Motion at 11.  He has never claimed to have any expertise related to

24  selecting the size, color, lighting or angle of objects to "allow[] the eye to perceive

25  nuances of shape."  See Opp'n at 15.  Further, Mr. Keiser has not claimed any

26  expertise related to scaling down objects for comparison purposes.

27

28

MGA's Reply in Support of its Motion to Strike The Declarations of Proctor, Keiser, and Hollander
Case No. CV 04-9049 SGL (RNBx)

**B.    Mr. Keiser's Renderings Are Not Probative Or Admissible**

1

2    As discussed in MGA's opening brief, Mattel made the strategic decision not

3 to offer testimony at trial from Mr. Keiser that it now belatedly tries to introduce.  If,

4 as Mattel asserts, Mr. Keiser's renderings are probative "as to the infringing shape of

5 the Bratz Doll Heads," Opp'n at 12, then Mattel should have presented this evidence

6 to the jury; but Mattel did not offer <u>any</u> evidence to the jury of the sort that is being

7 submitted now (i.e., directly comparing pieces of a rough sculpt to "blank" pieces of

8 the manufactured Bratz doll).

9    Even if the Court were to allow Mattel a re-do on the issue of infringement —

10 which is clearly improper and violative of MGA's constitutional rights — the Keiser

11 renderings would not be useful to the Court in determining substantial similarity.  As

12 the Court explained in its jury instructions, a determination of substantial similarity

13 is made according to a "two-step process, which includes application of the extrinsic

14 test and intrinsic test."  Tr. 8095:9-11.  Mattel argues that these images are probative

15 because "[b]y isolating the shape of the objects without regard to their other features,

16 such as color or size, the Keiser scans allow the Court to directly compare that

17 particular feature between objects, which is useful in demonstrating how the Bratz

18 dolls infringe Mattel's copyrighted sculpt."  Opp'n at 13.  In setting forth the three-

19 part extrinsic test, the Court instructed the jury to do the opposite of "isolating"

20 features.  Applying the first part of the extrinsic test, the jury was instructed to

21 compare "the particularized synergistic compilation and expression of the human

22 form and anatomy that expresses a unique style and conveys a distinct look or

23 attitude."  Tr. 8095:25-8096:2.  The Court used the word "synergistic" because "it

24 implies the working together of the elements … it's a working together of these

25 different elements in a particularized way…."  Tr. 6213:22-6214:6.  Thus the

26 isolation of the shape of facial elements, without regard to size, color, face paint, hair,

27 or body features, is not useful in applying the first element of the extrinsic test.

28

12

Similarly, the second element of the extrinsic test involved comparing "the particularized expression of a doll's head, lips, eye features, nose, chin, hairstyle, and breasts, including the accentuation or exaggeration of certain anatomical features relative to others (doll lips, eyes, eyebrows, and eye features) and deemphasis of certain anatomical features relative to others (doll nose and thin, small doll bodies)." Tr. 8096:3-9.  In explaining the "particularized expression" element for facial features, the Court stated that the face painting is an important factor for making this assessment:

> clearly, what we're talking about here, when we're talking about these particularized expressions of the doll facial features ... We've heard testimony offered from witnesses from both sides that explain just how important face painting and getting that right stroke is.  Anna Rhee, a few others, have explained it in convincing detail; that it's really a particularized expression that can capture the imagination of that eight, nine, ten-year-old little girl or boy.  And something which may look to us adults as just another doll doesn't quite do it.  Tr.  6201:4-17.

Since Mr. Keiser's blank renderings of the heads alone do not allow for a comparison of the particularized expression of a specific doll, they are not useful in applying this element of the extrinsic test.[12]

The renderings also are not useful for the intrinsic test because the isolation of the shapes of facial features (without face paint, hair, body, clothes, or size) does not allow for a comparison of the "overall similarity of ideas and expression in the works from the perspective of an ordinary observer." Tr. 8097:13-15.  It is impossible to compare the "total concept and feel" of a work simply by looking at a blank facial feature.  Presumably for these reasons, among others, Mattel did not make this argument to the jury.

_____

[12]   The third element of the extrinsic test compared clothes, shoes, and accessories, all of which are excluded from the Keiser renderings, which makes Mr. Keiser's exhibits irrelevant on this score.  See Tr. 8096:10-12.

13

**C.    The Renderings Do Not "Fairly And Accurately" Compare the Objects**

Mattel argues that Mr. Keiser's renderings should be admitted because they are similar to photographs, which are admissible if they "fairly and accurately" depict a scene. See Opp'n at 16.  The case on which Mattel relies for this proposition is a decision in which a photo taken of a crime scene during the day was admitted even though the crime occurred at night.  See United States v. Garvin, 88 F.App'x 542, 544 (3rd Cir. 2004) (cited in Opp'n at 12 & 16).  This case is inapplicable here because three-dimensional renderings are not photographs.  As explained by Mr. Keiser, renderings are a way of displaying the computer generated "three-dimensional polygon mesh composite of the object's surface."  Keiser Decl. at ¶ 5.  A photograph of the early sculpt next to the manufactured doll's head would obviously look much different from these renderings.  Mattel offers no support for the proposition that three-dimensional renderings of objects are routinely admitted.

Even if the Court considers the renderings to be similar to a photograph, these renderings should not come into evidence.  An analogy would be if a party was offering into evidence a digital photograph of two objects, where software had been used to reduce the size of one object by an unspecified percentage in order to highlight features that were not obviously similar.  It is unlikely that the manipulated photo would be considered a "fair and accurate" depiction of those objects.  Likewise, Mr. Keiser's scaling down of the early sculpt-in-progress to make it appear more similar to the manufactured doll head is not a fair or accurate portrayal of those objects.  See Keiser Decl. ¶ 11.  Mattel claims that the scaling down of the sculpt is inconsequential because the purpose of the comparison is limited to an evaluation of the "shapes" of the objects.  Even if it is only the "shapes" that are being compared, a true "fair and accurate" comparison of the shapes would not involve intentional unequal sizing of the objects.

14

## IV.   THE HOLLANDER DECLARATION SHOULD BE STRICKEN

### A.   The Hollander Declaration is Irrelevant to the Permanent Injunction Motion

Merely stating that a piece of evidence is "highly probative" and "admissible" does not make it so. Mattel claims that Mr. Hollander's survey "would be useful to the Court in its determination of the <u>scope</u> of defendants' infringement." Opp'n at 17 (emphasis added). Mattel has not — and can not — justify that statement. Even if the report is accepted wholesale as indicative of copyright infringement, the Hollander survey summarily concludes that "a net nine out of ten [of 8-13 year old girls] identified the Bryant drawings as Bratz dolls." Hollander Decl. at ¶ 8. Mr. Hollander's report did not purport to provide any indication of <u>which</u> Bratz dolls (first generation, later generation, etc.) or other Bratz-related product lines were being compared or identified. Accordingly, the Hollander survey sheds absolutely no light on the <u>scope</u> of any injunction.

Mattel apparently would have this Court conclude that the survey respondents' ambiguous mental associations prove that <u>all Bratz dolls</u> must infringe the Bryant drawings.[13] But the results of the Hollander survey are not probative of this conclusion, or any other conclusion regarding which Bratz products infringed the Bryant drawings. In fact, MGA could just as easily argue that because the Hollander survey presented the respondents with Bryant's drawings and asked "what do these look like?", the respondents only had in mind the first generation Bratz dolls, a position far more consistent with the jury's verdict. <u>See</u> Opposition to Mattel's Motion for a Permanent Injunction.

---

[13]   MGA has previously explained how the Hollander survey's usage of the phrase "looks like," as well as other flaws in the survey, belie any probative value Mattel may assert. <u>See</u> MGA's Reply in Support of its Motion in Limine No. 8 at 7-9.

15

1   In short, the Hollander survey does not bear in any way on the issue of "scope

2   of infringement."  Mattel simply wants to thrust the "91.1%" figure in front of the

3   Court one more time, even after intentionally deciding <u>not</u> to call Mr. Hollander as a

4   trial witness and subjecting him to a *Daubert* hearing or the jury's credibility meter.

5   **B.      The Hollander Declaration Should Be Excluded For
          the Reasons Set Forth in MGA's Motion in Limine No. 8**

6

7   Mattel apparently has decided that it should be free to submit evidence from

8   its dubious expert in the post-trial setting without any scrutiny whatsoever.  Opp'n at

9   17 ("There is no need for a hearing on MGA's pending motion in limine, or a

10   *Daubert* hearing").

11   MGA has already articulated the reasons why the Hollander survey is

12   inadmissible, and it continues to stand on those arguments, including that surveys are

13   essentially unheard of in copyright cases.  <u>See</u> MGA's Motion in Limine No. 8 Briefs.

14   Nevertheless, MGA will briefly respond to the claims made by Mattel in its

15   opposition papers.

16   First, Mattel's assertion that the Court already has "resolved" that Mr.

17   Hollander's testimony is "proper rebuttal testimony" is flatly incorrect.  Opp'n at 17.

18   Once again, Mattel distorts the record.  When the Court stated that "[t]his is clearly a

19   rebuttal expert designated as such by Mattel," the Court was commenting that since

20   Mr. Hollander was purportedly rebutting MGA's experts, and those experts were no

21   longer on the witness list, his testimony was not appropriate for Mattel's case-in-

22   chief.  Tr. 5235:5-5236:12.  The Court provided its "tentative thoughts" on the

23   motion in limine, but never resolved the merits of those motions, beyond excluding

24   Mr. Hollander from Mattel's case-in-chief.  Tr. 5236:23-5237:2.  It is noteworthy that,

25   even today, Mattel cannot state what Mr. Hollander's report is rebutting.

26   Second, Mattel argues that since the Court instructed the jury on the intrinsic

27   test of copyright infringement ("total concept and feel"), the Hollander report must

28

16

1   be admissible.  Opp'n at 17-18.  MGA asserts that the so-called "specialized

2   audience" argument is baseless and inapplicable to the admission of expert testimony,

3   see MIL No. 8 Reply brief at 4-6, but even if the Court were to accept Mattel's theory

4   of admissibility on this basis, the intrinsic test of copyright infringement remains a

5   question for the jury alone.  Funky Films, Inc. v. Time Warner Entm't Co. L.P., 462

6   F.3d 1072, 1077 (9th Cir. 2006); Marchel Design, Inc. v. Best Master Enters., Inc. at

7   *2, 2008 WL 4723113 (C.D. Cal. 2008) ("Because the intrinsic test is subjective, it is

8   left to the jury").  Mattel has not explained why the Court is entitled to usurp the

9   jury's role by unilaterally resolving the intrinsic analysis.

10       **C.**    **At A Minimum, MGA Would Be Entitled to a Daubert Hearing And An Opportunity To Submit Rebuttal Reports**

11       When the Court rejected Mr. Hollander as a witness for Mattel's case-in-chief,

12   it explicitly provided that the parties would be heard again on this issue if Mr.

13   Hollander was called during Mattel's rebuttal case.  Tr. 5236:24-5237:2 ("I give you

14   the Court's tentative thoughts … but I'll certainly give both sides an opportunity to

15   argue before Mr. Hollander will be called as part of the Rebuttal case").  More

16   generally, the Court has stated that it "will give leave to Mattel — as I will to MGA,

17   to both parties – with respect to any of the experts herein, to the extent that they want

18   to conduct a voir dire … have your expert here, coordinate with the other side,

19   and … we'll allow that voir dire to go on outside the presence of the jury."  Tr.

20   5357:3-10.  Mattel cannot escape the importance of this process in keeping

21   unreliable "evidence" out of the record simply by putting forth its expert in a post-

22   trial declaration.

23       Mattel argues that MGA is not entitled to such a hearing because it already

24   had an opportunity to depose Mr. Hollander.  Opp'n at 19-20.  But, to state the

25   obvious, a deposition is not a replacement for cross-examination at trial, and Mattel's

26   suggestion would obviate the need for live testimony of experts in every trial.

27

28

17

1    MGA has expressed serious concerns about Mr. Hollander and his survey.

2    Among other things, MGA pointed out that Mr. Hollander has admitted that he has

3    no experience with copyright, and that Mattel's outside counsel played an

4    inappropriately major role in creating the survey.  <u>See</u> MGA's Reply in Support of

5    MIL-8 at 9-11.  Indeed, Mr. Hollander described his survey as a "likelihood of

6    confusion" study on his own website, a term only relevant to trademark and Lanham

7    Act actions.  <u>Id.</u> at 8.  Given these serious concerns, whatever dispute the parties may

8    have regarding the admissibility of Mr. Hollander's survey as a methodologically

9    flawed survey, Opp'n at 17-19, certainly MGA should be permitted to challenge his

10   expertise in court, as was the practice throughout trial.

11       **D.    <u>Mr. Hollander's Sworn Expert Report Is Improper Evidence</u>**

12       Mattel asserts that "all that is required" for the Hollander report to be

13   admissible on its own, without live accompanying testimony, is that it is sworn under

14   oath and penalty of perjury.  Opp'n at 20.  But Mattel's two cited cases are in the

15   summary judgment context, and do not discuss the admissibility of expert reports

16   (which were intentionally not presented during trial) after a jury verdict.  In <u>Maytag</u>

17   <u>Corp. v. Electrolux Home Prods., Inc.</u>, the Court permitted consideration of

18   "subsequent verification … of an unsworn expert's report" on summary judgment

19   only "because such a procedure is consistent with [Federal Rule of Civil Procedure]

20   56(e), which allows a party opposing summary judgment to rely on affidavits."  448

21   F. Supp. 2d 1034, 1064 (N.D. Iowa 2006).  Similarly, in <u>Floyd v. Hefner</u>, the court

22   also noted that an unsworn expert report was not "competent summary judgment

23   evidence," and only determined that the attaching of such a report to an authenticated

24   declaration created admissibility under Rule 56. 556 F. Supp. 2d 617, 635 (S.D. Tex.

25   2008).  Mattel cannot claim safe-harbor under Rule 56, because this case has already

26   been tried before a jury.

27

28
                                    18

## CONCLUSION

For the foregoing reasons, and those stated in MGA's opening brief, the Court should grant MGA's Motion to Strike the Declarations of B. Dylan Proctor, Frank Keiser and Kenneth Hollander.

DATED:  November 3, 2008     Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  _____/s/ Thomas J. Nolan_____
        Thomas J. Nolan
        Attorneys for the MGA Parties

MGA's Reply in Support of its Motion to Strike The Declarations of Proctor, Keiser, and Hollander
Case No. CV 04-9049 SGL (RNBx)