# EXHIBIT A

1              UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                EASTERN DIVISION

4                  - - -

5     HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                  - - -

7  MATTEL, INC.,                )
                            )

8               Plaintiff,   )
                            )

9        vs.                )  No. CV 04-09049
                            )

10  MGA ENTERTAINMENT, inc., et. Al.,  )
                            )

11             Defendants.  )
    ———————————————————————— )  MOTION HEARING

12  AND CONSOLIDATED ACTIONS,       )
                            )

13

14

15         REPORTER'S TRANSCRIPT OF PROCEEDINGS

16             Riverside, California

17           Monday, November 10, 2008

18                1:05 P.M.

19

20

21

22

23          THERESA A. LANZA, RPR, CSR
          Federal Official Court Reporter

24          3470 12th Street, Rm. 134
          Riverside, California  92501

25              951-274-0844
           WWW.THERESALANZA.COM

1    APPEARANCES:

2

     On behalf of Mattel, Inc.:

3

                         QUINN EMANUEL

4                        By:   JOHN QUINN
                               MICHAEL T. ZELLER

5                        865 S. FIGUEROA STREET,
                         10TH FLOOR

6                        LOS ANGELES, California   90017
                         213-624-7707

7

8

9    On behalf of MGA Entertainment:

10                       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                         BY:   THOMAS J. NOLAN

11                             JASON RUSSELL
                               LAUREN AGUIAR

12                             RAOUL KENNEDY
                         300 SOUTH GRAND AVENUE

13                       LOS ANGELES, CALIFORNIA   90071-3144
                         213-687-5000

14

15

16

17

18

19

20

21

22

23

24

25

1   that it does.  And I don't think that there's any way that it

2   can, for many of the reasons that we showed in our papers, not

3   the least of which is that they have repeatedly eschewed much

4   of the relief that they seek now.

5         In fact, as we lay out in our constructive trust

6   brief, they told this Court and told MGA to their detriment

7   that they were not seeking ownership over trademarks and the

8   like, weren't seeking rights, proprietary rights, over the name

9   "Bratz."  And so I don't think there can be much question but

10  that there was a conscious delay, mindful of the effect that it

11  would have on MGA.  And I think equally obvious -- -

12        THE COURT:  Not seeking a trademark is not the same

13  as not seeking a constructive trust over the name or the

14  benefits derived from the name.

15        MR. RUSSELL:  I think the difficulty is that there is

16  no right separate and apart, in our view, from the trademark.

17  You can't protect a copyright -- there's no copyright in a

18  name.  And so the only protection that one can have -- what

19  right that one can have over the name "Bratz" is if there's a

20  trademark.  And as we cite, and I believe that Your Honor's

21  decision in Conversive makes clear, the value in a trademark is

22  by virtue of use.  It doesn't matter who invented it.  It

23  doesn't matter -- anything else.  It's simply, who puts the

24  value into it here?

25        The evidence, I think, would be undisputed that if

1  there was any value in Bratz, and certainly there is, that was

2  all created by MGA at the time that Mr. Bryant came up with the

3  name "Bratz" -- and there's a parenthetical there -- but at the

4  time he came up with the name "Bratz," it had no value to

5  anyone.  Indeed, the only person who might argue it had value

6  was Lovins, for whom MGA purchased rights to utilize the

7  trademark name.

8          THE COURT:  We can take this up, of course, when we

9  get into the constructive trust motion itself.  That kind of

10  begs the question of whether or not, assuming, as the Court

11  does, frankly, at this point, that Bryant did come up with the

12  name "Bratz" while he was at Mattel, and that Mattel,

13  therefore, owns that name.

14          And I'm also accepting the fact that the value to

15  Bratz was certainly developed while MGA used and marketed

16  Bratz.  That fits somewhat well into this constructive trust

17  theory, that the benefit that was developed is held in trust

18  for Mattel.

19          MR. RUSSELL:  The problem we have with that is that

20  there was no value at the time.  It would be one thing --

21          THE COURT:  Why is that a prerequisite?

22          MR. RUSSELL:  Because to the extent that there were

23  damages associated with the taking of any trade secrets and the

24  like, any value in trade secrets, that was covered by the

25  damages award by the jury.  That's already been dealt with.  So

1   now we're talking about the right to use the name "Bratz," and

2   more importantly, to exclude others from using the name

3   "Bratz."

4           THE COURT:  Exactly.

5           MR. RUSSELL:  Here, at the time that the name was

6   developed -- and, again, we can quarrel.  Even though the jury

7   found Mr. Bryant came up with the name "Bratz" while at Mattel,

8   the evidence in the record is undisputed that that name "Bratz"

9   was already in the public domain, because Lovins was using it

10  many, many years before Mr. Bryant ever even went to Mattel.

11          THE COURT:  In a different context, though; correct?

12          MR. RUSSELL:  He was using it for children's

13  clothing.

14          THE COURT:  As opposed to dolls, right.

15          MR. RUSSELL:  Now, there's additional evidence that

16  we could put forth for your Honor that internationally, the

17  name was also used and MGA purchased it for international

18  purposes from preexisting rights holders.

19          But for purposes of the analysis of the constructive

20  trust, the key fact is -- and you have to look at the cases

21  that talk about this -- because there was no value and because

22  the only way that you can have value in a name is by transfer

23  of the trademark, you have to look at the use.  And since it's

24  true that based on the jury's findings, Mattel could have, at

25  that time, put into use the name "Bratz," the evidence actually

Exhibit A / Page 5

1  shows that they considered it and decided affirmatively not to

2  use it, for whatever reason.

3          THE COURT:  And I understand how that's detrimental

4  from a trademark perspective, not necessarily from a

5  constructive trust perspective.

6          MR. RUSSELL:  If what you're saying is, they have the

7  right to name "Bratz," that doesn't answer any questions, I

8  think, as far as all of the parties are concerned.  Having the

9  name "Bratz" without any rights to exploit it, or to prevent

10  MGA from exploiting it, doesn't answer any questions.

11          And that's why Mattel, in its papers, is asking for a

12  constructive trust, not of just the name "Bratz," but more

13  importantly, of the trademarks to the name "Bratz."

14          THE COURT:  Let me get you back to your argument on

15  the affirmative defenses, though, vis-à-vis the constructive

16  trust.  You got a little off course, but this is important, and

17  I'm sure we'll revisit it.

18          MR. RUSSELL:  Because that is the starting point,

19  your Honor.  The constructive trust is, I believe, most

20  susceptible to the laches argument.  So I've laid out for you

21  the delay.  And we are presumptively in the land where there is

22  inexcusable delay, because we are more than the limitations

23  period for the constructive trust claim.

24          I would say you are many years more, but taking the

25  most pessimistic view, the date that Carter Bryant was deposed,

1    jury awarded whatever it is that they attributed a value to

2    using the name.  But Mattel has specifically and repeatedly

3    said, We are not seeking to have proprietary -- that's

4    Mr. Zeller's word -- proprietary right to the name "Bratz."

5           THE COURT:  But go back to my question.

6           You concede, I trust, that much earlier than May of

7    2008, going back to the initial complaint, that the relief

8    sought is broad enough to encompass this notion of constructive

9    trust.

10          MR. RUSSELL:  It would be broad enough to capture the

11   notion of the right to the name "Bratz," but not the right to

12   exclude others from the name "Bratz."

13          I would argue, your Honor, that if they had wanted to

14   exclude MGA from using the name "Bratz," or to take the value

15   of the trademark -- and that is what we are talking about --

16   they were obligated to file a trademark claim.

17          You don't get to take someone's trademark --

18   your Honor wrote in Conversive -- and I think Brookline also

19   had the same language -- it doesn't matter who invented a name;

20   that's not relevant at all.  So I will give them that

21   Mr. Bryant invented it, for want of a better term, while at

22   Mattel.  But in the language of trademark, so what?  The facts

23   are, it is use and the value that is created through that use

24   that is at issue now.

25          THE COURT:  So it's not relevant who invented the

1    name.

2         MR. RUSSELL:  It's not relevant to excluding others

3    from the right to the name "Bratz."

4         THE COURT:  That's assuming that there's not an

5    intervening contract which awards proprietaryship ownership.

6    That's a distinguishing feature, Counsel.

7         MR. RUSSELL:  Even if it were the case -- and I don't

8    think it is the case -- but even if it were the case that one

9    could argue, they have the name, they have it, they could have

10   developed it, they didn't.  There are many cases out there

11   where someone takes a name invented by someone else and puts

12   value to it and then the original inventor comes forth and

13   says, I'd like the name, please; and the courts say "no."

14        THE COURT:  Right.  But, again, what you just

15   described there is different than the situation that we have

16   here, because Mattel's argument, the critical difference is, is

17   that there was that employment inventorship agreement which

18   gave the rights to Mattel.

19        MR. RUSSELL:  I don't actually think that's a

20   distinction with any difference, because as the cases cite --

21   and I think Brookline deals with this issue, though I'm not

22   100% sure -- but the cases talk about the fact, you can't

23   assign a right to a name unless there's value in the name.

24   That is to say, there is no value in the word "Bratz," because

25   you can't copyright it, you can't protect it; it has no

1   protectable value until it's put into use.

2          So even if we assume that the fact that Mr. Bryant

3   invented it while at Mattel had some relevance, okay, they

4   would have had the right at the time to exploit it.  By virtue

5   of the fact that they did not, they gave up the right to

6   exclude others from it, because Mr. Bryant has no right to

7   assign to them a valueless asset under trademark law.  And I

8   would argue this would also be true with respect to the state

9   law constructive trust theories.  It's valueless.

10         I mean, your Honor dealt with the Disney case.  We

11   talked about that awhile ago.  California does give a

12   contractual right to protect things.  That is true.  But it can

13   be given up.  And here, it was given up explicitly.  They chose

14   not to use it, and they chose at every turn not to seek the

15   monetary value of the name "Bratz."

16         They certainly know how to seek trademarks.  They're

17   doing it now.  Where were they for all of these years?  It's

18   not like they woke up yesterday and discovered there's this new

19   thing called a trademark.  They knew what a trademark was.

20   They knew what a copyright was.  They certainly knew in 2004

21   that Bratz was developed while he was at Mattel.  That's why

22   they say they filed.  It's more than two years ago.  I think

23   I'm in good shape there.  Again, we're talking about laches for

24   the current purposes.

25         THE COURT:  Thank you, Counsel.

1      Is there anything further?

2      MR. RUSSELL: That's really the point. I just wanted

3   to make one other point, which is, they say that we didn't put

4   forth for you any nexus between our prejudice and the delay;

5   and I think that is really a tough argument for them to make.

6      The fact is, your Honor heard ample evidence from

7   Mr. Larian and others that MGA was keenly concerned about

8   Mattel filing suit against them and pursuing them. And when

9   they intervened, what did Mattel do for an additional two and a

10  half years? Nothing. They didn't file any affirmative claims

11  against MGA.

12     THE COURT: But Mr. Zeller's point is, what did MGA

13  do? And I think the evidence indicates, actually --

14     MR. RUSSELL: Danjaq, which is the leading Black's

15  case in the Ninth Circuit, says that's okay. In fact, Danjaq

16  was the case where they got sued on the rights, and they

17  continued to pour money into the James Bond franchise, even

18  after being sued; and the court looked at that very prejudice

19  and said that's good enough.

20     Here, we're in a stronger position. We intervened,

21  expecting, Okay, we've said we have the right. The natural

22  reaction is, Mattel is going to come back and say, We're going

23  to sue you; we own it. They certainly knew all of the facts

24  they know now. They didn't. They waited two and a half years

25  with no explanation whatsoever.

1    is standing for them to bring this?

2             MR. RUSSELL:  Correct.  And we've already cited

3    your Honor -- this is -- yes, Prop 64 in California -- I mean,

4    this is not an idle issue.  17200, California courts, in

5    particular -- and that is the Madrid v. Perot Systems case.

6    It's not enough, as Madrid says, to talk about ill-gotten gain.

7    You've got to talk about harm to the plaintiff.  And they have

8    said there was none.  So we don't even need to get to the fine

9    distinctions that Mr. Zeller was trying to get to.  They can't

10   come to grips with their own admissions.  There's no standing,

11   so the UCL claim should just go right out the window.

12            But even if that weren't the case -- and this is why

13   I think -- tied up with the arguments in Footnote 11 -- the

14   facts are, they can't show a nexus for purposes of unfair

15   competition.

16            THE COURT:  The theory in Footnote 11, am I right in

17   reading more into that?

18            MR. RUSSELL:  Yes.

19            THE COURT:  I thought that just kind of jumped out at

20   me as being a little bit more than Footnote 11.

21            MR. RUSSELL:  Sometimes there are space constraints

22   and the like.  But I think the point to be made is that they

23   have to show a nexus between the unlawful conduct and the

24   remedy.  And they can't do that.  It's not simply enough to

25   say, Mr. Bryant conceived the name while at Mattel; and,

1   therefore, we have rights.  Because under your Honor's decision

2   in Conversive, Mr. Bryant had no right to transfer to the name

3   "Bratz" at that time.  There was no valuable property.  A

4   constructive trust cannot exist in a vacuum.  Property must

5   have value.  It didn't.  And Mr. Zeller stood here, in response

6   to your question, and basically conceded that there was no

7   value at the time.  It's farcical to suggest otherwise.

8           THE COURT:  Prospective value.

9           MR. RUSSELL:  Correct.  If Mattel had been told,

10  Would you like $5 for the name "Bratz" back in 2000, I think

11  they would have said, I'll take the $5.

12          THE COURT:  They probably would have asked you, What

13  are you going to do with the name "Bratz"?

14          MR. RUSSELL:  That's probably true.  But in any

15  event, there is little question that there wasn't much going

16  on.

17          THE COURT:  That conversation may have avoided this

18  whole thing.

19          MR. RUSSELL:  Perhaps.  But in any event, there was

20  no value, certainly none that can be quantified by Mattel; so

21  there was no rest for a constructive trust to even exist over.

22  The only time value was created was through lawful activities.

23  Mr. Zeller conceded that.  There's no argument -- value in the

24  name "Bratz" was created through lawful activity.  That's one

25  of the reasons why the cases we're talking about in that

1    footnote are so critical.  Most of the time, you're enjoining

2    the unlawful conduct.  Here, what they want to enjoin is

3    something that happened that's irrelevant.

4              Mr. Bryant invented the name.  Again, we dispute

5    that.  The name "Bratz" was in the public domain.  I don't

6    think they have any rights, protectable rights, at all.  I

7    think to the extent they argue that there's some --

8              THE COURT:  Address the argument that Mr. Zeller

9    makes.  When something has -- it's kind of like the fruit of

10   the poisonous tree, as it were.  I mean, this was a house.  The

11   house of Bratz, so the argument goes, was built on a foundation

12   that a jury has found was unlawful.

13             MR. RUSSELL:  It's more like we came across a tree,

14   cut it down, made it into boards and built a house, and now

15   they want my house.  That's, I think, more analogous.  We're

16   not talking about something where there was a house and now I

17   want to paint it -- I painted it blue, and I want the value.

18   That's the problem they have here, is you can't divorce the

19   name "Bratz" from its value right now.  That's one of the

20   reasons we cited your Honor to the Tillamook case.

21             Tillamook Country Smoker is a Ninth Circuit case that

22   talks about how inequitable it is for a plaintiff -- it's 311

23   F.Supp.2d 1023 -- it talks about the fact that it would be

24   inequitable to divest a defendant of a trademark name after

25   years of investment.  And that really, I think, bottom line,

1    sort of implicates the policy we're talking about.

2           And that's where your Honor's decision in Conversive

3    really dovetails.  If there had been value at the time and they

4    had pursued it, this would be a different case.  There was no

5    value, so there was nothing that could be transferred, and,

6    hence, nothing over which a constructive trust at that time

7    could have been rendered.

8           Now the only thing that has value is the trademark,

9    and they're precluded either because they needed to seek a

10   trademark claim, or if they are contending that the name

11   "Bratz" had some proprietary value, something Mr. Zeller

12   specifically said they're not seeking, then they should have

13   gone for a trade secret claim on that.  So it would be

14   preempted as a matter of trade secret preemption; and we

15   briefed that as well.

16          The problem here is, the value was created lawfully.

17   There was no value when it was taken.  The value was all

18   created by MGA.  And it would certainly -- since this is an

19   equitable remedy, I think you have to look at the equity.  What

20   would the equity be when they were certainly aware of this name

21   very early on and sat on their hands forever, to letting them

22   speculate on MGA's investment?

23          MGA should have the right to exclude them.  It

24   developed the "Bratz" name.  It developed the marks.  It's the

25   one that spent the money.  They knew as early as 2001 that the

1    "Bratz" name was out there.  They certainly knew by 2004, when

2    they deposed Mr. Bryant, everything; and yet, here we are four

3    years later, for the first time, hearing, Give us the

4    trademarks.

5           And that's exactly the reason why the UCL claim is

6    limited to unlawful activity.  If we were talking about the

7    unlawful expansion of the mark -- it's hard to imagine that

8    would happen, but if that were the case, this might be

9    different.  But every single thing done by MGA since it got the

10   name is lawful.  There's no dispute about that.  And that's

11   what distinguishes all of their cases.

12          THE COURT:  Very well.

13          Anything further, Mr. Zeller?

14          MR. ZELLER:  Yes.

15          Mr. Russell continues to basically mix together

16   different concepts, but in particular, one thing that he said

17   to the Court just now was that MGA developed the name "Bratz."

18   That is just demonstratively inconsistent.

19          THE COURT:  What I understand him to mean by that is,

20   there's no question that Carter Bryant came up with the idea

21   for the name "Bratz" while he was at Mattel; and, therefore, it

22   is owned by Mattel.

23          What Mr. Russell is saying is, starting with that

24   which Mr. Russell puts no value on, MGA took that name and gave

25   it value.  It cut down the tree, to use his analogy, and ran it

1    certainly we tried to do that in front of the jury.  But that

2    was because it's an equitable issue.  It goes to equitable

3    issues here.  But that has nothing to do with whether or not

4    this Court should consider this evidence.  And there is, in

5    fact, at a bare minimum, a judicial admission of it in MGA's

6    own brief.

7              THE COURT:  Very well.

8              I'm going to hear briefly from Mr. Russell, and then

9    we're going to take a 15-minute break.

10             MR. RUSSELL:  Thank you, your Honor.

11             It's difficult to know where to start with that

12   lengthy list with him, but I guess what I would say is, if we

13   took ourselves back to the question -- he's saying to return

14   ourselves to where we were.  There can be no denial that the

15   jury was asked to assess sort of the measure of the

16   wrongfulness.  This is an argument that Mr. Kennedy is going to

17   make at --

18             THE COURT:  I know that we're going to be hearing

19   this --

20             MR. RUSSELL:  I don't want to take his math from him,

21   but I'm going to do it for a second.  The jury found, under

22   claim damages, that they were going to award less than one

23   percent to wrongful conduct.  I'll let him explain how that

24   comes down.  But the fact is, the jury's findings are

25   completely consonant with what I'm asking you to do today.

1    That is to say, the equities are all in MGA's favor, especially

2    with respect to the name.  There's no argument that the name

3    was built up by MGA.  They didn't have any rights at the time.

4    I've said to you that they had no copyright in a name; there

5    was no trademark in the name.

6           THE COURT:  You mean that it wasn't built up by

7    Mattel.

8           MR. RUSSELL:  Yes.  Because if there's no value in

9    the name, there's no rest.  Mr. Zeller cannot respond with any

10   value, other than to say there is, without pointing to

11   anything.  There was no value.  There was nothing for

12   Mr. Bryant to transfer to Mattel at the time he came up with

13   that name.  MGA lawfully and appropriately built up the name

14   "Bratz," and everything it did from the time it took possession

15   of that name forward was lawful and was a result of its hard

16   work, its investment, and its business acumen.  And it would be

17   completely unfair, in the grossest possible sense, and I

18   believe unprecedented, if your Honor were to hold that MGA

19   could be stripped of that trademark and all of the value that

20   was created in it, simply because the jury awarded less than

21   one half of one percent.  That's what it's finding was of the

22   claim damages.  That's the wrongfulness here.  This miniscule

23   vanishing puff in the area on the copyright claim, it's

24   nothing.  And what they're asking you to do is to take away

25   marks and brand rights that are worth billions of dollars.

1    They had their day in court on a billion-dollar claim.  They

2    lost it.

3            The facts are, under straightforward law, MGA

4    developed this mark, developed the value; and now, having sat

5    back on their rights, they want to take it.  They ask, What

6    could they have done?  It's such a simple answer.

7            The day that they deposed Carter Bryant, they should

8    have run into court, slapped an injunction motion in front of

9    your Honor, or whoever the court was, and said, Stop using our

10   property.

11           Did they do that?  No.

12           Why?  Because they recognized they had no right in

13   the value to the name "Bratz."  Instead, they sat back, and

14   even after they filed affirmative claims for the dolls and the

15   drawings, they sat back and let that brand continue to grow,

16   continue to become more valuable, every day.  They even

17   eschewed the rights to the name "Bratz" before trial, during

18   trial, and after trial.

19           As we point out in our briefs, even on the judgments

20   as a matter of law, we challenged them and said, Are you taking

21   the position you're seeking the rights to the value in the name

22   "Bratz"?  And they have no answer.

23           So what could they have done?

24           They could have done a lot.  But they didn't do

25   anything.  And to say that for them to have the equities, with

1   nothing that is going to happen with respect to this between

2   now and that January hearing; that any order the Court issues

3   in the next week or two will go into effect come January, after

4   the holiday season has been completed.

5          That is all I have for right now.

6          Are there any questions on how we're proceeding at

7   this point?  From Mattel?

8          MR. QUINN:  No, your Honor.

9          THE COURT:  From MGA?

10         MR. NOLAN:  No, your Honor.

11         THE COURT:  Very well.  Court is in recess.

12

13

14

15

16                         CERTIFICATE

17

18   I hereby certify that pursuant to section 753, title 28, United
     States Code, the foregoing is a true and correct transcript of

19   the stenographically recorded proceedings held in the above-
     entitled matter and that the transcript page format is in

20   conformance with the regulations of the Judicial Conference of
     the United States.

21

22   _____                    _____
                                                           Date
     THERESA A. LANZA, CSR, RPR

23   Federal Official Court Reporter

24

25