1  THOMAS J. NOLAN (Bar No. 66992)
   (tnolan@skadden.com)
2  JASON D. RUSSELL (Bar No. 169219)
   (jrussell@skadden.com)
3  LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
   (laguiar@skadden.com)
4  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue, Suite 3400
5  Los Angeles, CA  90071-3144
   Tel.: (213) 687-5000
6  Fax: (213) 687-5600

7  Attorneys for The MGA Parties

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

11  CARTER BRYANT, an individual,      )  CASE NO. CV 04-9049 SGL (RNBx)
                                       )
12             Plaintiff,              )  Consolidated with Case No. 04-9059
                                       )  and Case No. 05-2727
13        v.                           )  Honorable Stephen G. Larson
                                       )
14  MATTEL, INC., a Delaware corporation, )
                                       )
15             Defendant.              )  MGA PARTIES' *EX PARTE*
                                       )  APPLICATION AND MOTION FOR
16 ─────────────────────────────────── )  STAY PENDING APPEAL; and
                                       )  MEMORANDUM OF POINTS AND
17  AND CONSOLIDATED ACTIONS.          )  AUTHORITIES IN SUPPORT THEREOF;
                                       )
18                                     )  **FILED UNDER SEPARATE COVER:**
                                       )  (1)    DECLARATION OF JASON D.
19                                        RUSSELL IN SUPPORT THEREOF;
                                          (2)    DECLARATION OF RAOUL D.
20  **CONFIDENTIAL – ATTORNEY'S**          KENNEDY IN SUPPORT THEREOF;
    **EYES ONLY –**                        (3)    DECLARATION OF BRIAN WING
21                                         IN SUPPORT THEREOF [under seal];
                                          (4)    COMPENDIUM OF THIRD-
22  **FILED UNDER SEAL PURSUANT**          PARTY DECLARATIONS IN SUPPORT
    **TO PROTECTIVE ORDER**                THEREOF [under seal]; and
23                                         (5)    [PROPOSED] ORDERS [lodged
                                          under separate cover].
24

25

26                                         Hearing Date: TBD
                                           Time: TBD
27

28

─────────────────────────────────────────────────────────────────────────
MGA Parties' *Ex Parte* Application And Motion To Stay Pending Appeal - Case No. CV 04-9049 SGL (RNBx)

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to Local Rule 7-19, counter-defendants MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and Isaac Larian (collectively, the "MGA Parties"), respectfully submit this *ex parte* application seeking relief from the five-day requirement of Local Rule 7-3 and an expedited hearing on the MGA Parties' Motion For Stay Pending Appeal, and hereby move for entry by no later than December 31, 2008 of a stay pending appeal of this Court's December 3, 2008 orders (the Order Granting Mattel, Inc.'s Motion for Permanent Injunction, the Order Granting Mattel, Inc.'s Motion for Declaratory Judgment; and the Order Granting Mattel, Inc.'s Motion for Constructive Trust and For Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Prof. Code § 17200) pursuant to Federal Rule of Civil Procedure 62(c).

The MGA Parties seek immediate consideration of their request for immediate entry of a stay of the orders issued by this Court on December 3, 2008 pending appeal, on the grounds that the MGA Parties will suffer irreparable harm if a stay pending appeal is not put in place before December 31, 2008, and because a stay is appropriate under Federal Rule of Civil Procedure 62(c) in light of the irreparable harm to the MGA Parties absent a stay and the substantial legal questions implicated by the Orders. The urgency of this request is unavoidable in light of the scope of the injunctive relief granted. Thus, the MGA Parties respectfully request that this matter be heard as soon as possible.

This Application and Motion is based on this notice, the accompanying memorandum of points and authorities, the concurrently filed declarations, and all other pleadings and papers on file with the Court in this action.

## Statement of Compliance with Local Rule 7-19

Counsel for Mattel, Inc. include Michael Zeller, Jon Corey, and B. Dylan Proctor of Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP (telephone: 213-443-3000; address: 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90017).

Pursuant to Local Rule 7-19.1, counsel for the MGA Parties gave notice of this Application to counsel for Mattel by leaving a telephone message for counsel for Mattel, Inc.

on December 8, 2008.  (<u>See</u> Declaration of Jason D. Russell dated December 11, 2008 ¶ 2.) Counsel for the MGA Parties followed up this call with a detailed conversation with counsel for Mattel, which occurred on December 10, 2008.  (<u>Id.</u> ¶ 3.)  Counsel for Mattel indicated that Mattel would oppose the Application.  (<u>Id.</u>)

DATED:  December 11 , 2008          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                                    By:  _____ /s/ Thomas J. Nolan _____
                                                      Thomas J. Nolan
                                                Attorneys for the MGA Parties

# TABLE OF CONTENTS

**PAGE:**

TABLE OF AUTHORITIES ........................................................................... iii

PRELIMINARY STATEMENT........................................................................ 1

ARGUMENT ................................................................................................ 2

I.     STANDARDS FOR GRANTING A STAY PENDING APPEAL ................... 2

II.    THE EQUITIES WEIGH OVERWHELMINGLY IN SUPPORT OF STAYING THE COURT'S DECEMBER 3 ORDERS PENDING APPEAL ................................................................................................ 4

     A.      [REDACTED]
................................................................................................. 4

     B.     Mattel Cannot Show It Will Be Equally Harmed By A Stay ................. 7

III.   THE PUBLIC INTEREST FAVORS A STAY ......................................... 8

IV.   MGA'S APPEAL RAISES SUBSTANTIAL QUESTIONS OF LAW .......... 10

     A.     Substantial Legal Issues Arise From The Permanent Injunction Order........................................................................................... 11

         1.    The Court's Decision To Set Aside The Jury's Findings To Enjoin MGA's Sale Of Bratz Dolls Presents A Substantial Legal Question ...................................................................... 11

         2.    The Irreparable Injury Finding Presents A Substantial Legal Issue ..................................................................................... 13

         3.    Rejecting An Ongoing Royalty Presents A Substantial Legal Issue .............................................................................. 14

         4.    The Breadth Of The Order Raises Substantial Issues ................. 15

         5.    Consideration Of Mattel's New Evidence In Post-Trial Submissions While Fashioning Injunctive Relief Presents A Serious Legal Issue .............................................................. 16

     B.     Substantial Legal Issues Arise From The Constructive Trust Order ...... 16

     C.     Substantial Legal Issues Arise From The Declaratory Relief Order ...... 19

     D.     Substantial Legal Issues Arise From The Court's Underlying Rulings ......................................................................................... 19

         1.    The Court's Substantive Pretrial Rulings Are Implicated By The Orders And Present Substantial Questions Of Law ............. 19

         2.    The Court's Rulings During Trial Are Implicated By The Orders And Present Substantial Questions Of Law .................... 23

i

1

CONCLUSION ................................................................................................. 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA Parties' *Ex Parte* Application And Motion To Stay Pending Appeal - Case No. CV 04-9049 SGL (RNBx)

# TABLE OF AUTHORITIES

Aalmuhammed v. Lee,
202 F.3d 1227, 1232 (9th Cir. 2000) ........................................................ 24

A.G. Design & Associates, LLC v. Trainman Lantern Co.,
NO. C07-5158BHS
2007 WL 2273676 (W.D. Wash. Aug. 7, 2007)........................................ 3

Abend v. MCA, Inc.
863 F.2d 1465 (9th Cir. 1988), aff'd, 495 U.S. 207 (1990) ........................ 14

Advanced Medical Optics, Inc. v. Alcon Laboratories, Inc.,
NO. CIV. A. 03-1095-KAJ
2005 WL 3454283 (D. Del. Dec. 16, 2005) ........................................ 3, 7

Aliotti v. R. Dakin & Co.,
831 F.2d 898 (9th Cir. 1987) ................................................................ 22

Arvelo v. American International Insurance Co.,
875 F. Supp. 95 (D.P.R. 1995) ............................................................ 17

Azurin v. Von Raab,
792 F.2d 914 (9th Cir. 1986) ................................................................ 10

BR Associates, Inc. v. LaFramboise,
NO. 06-11870-BC,
2007 WL 1840031 (E.D. Mich. June 26, 2007) ...................................... 9

Bancroft-Whitney Co. v. Glen,
64 Cal. 2d 327, 411 P. 2d 921 (1966) .................................................... 21

Barbara A v. John G.,
145 Cal. App. 3d 369, 383 (1983) ........................................................ 21

Bennigan's Franchising Co., L.P. v. Swigonski,
NO. CIVA 3: 06CV2300G,
2007 WL 603370 (N.D. Tex. Feb. 27, 2007) .......................................... 9

Bertram Music Co. v. Yeager Holdings of California, Inc.,
NO. CIV S07-1766 LEW OOH
2008 WL 2055480 (E.D. Cal. 2008) ...................................................... 14

Bristow v. Lycoming Engines,
NO. CIVS061947LKKGGH
2008 WL 2561105 (E.D. Cal. June 24, 2008) .......................................... 3

Brookfield Communications, Inc. v. West Coast Entertainment Corp.,
174 F.3d 1036 (9th Cir. 1999) .............................................................. 16

Buckland v. Threshold Enterprises, Ltd.,
155 Cal. App. 4th 798, 66 Cal. Reporter 3d 543 (2007) .......................... 17

Cadence Design Systems, Inc. v. Avant! Corp.,
125 F.3d 824 (9th Cir. 1997) ............................................................ 7, 8

iii

Cargill, Inc. v. Sears Petroleum & Transport Corp.,
    NO. 5:03CV 0530 (DEP)
    2004 WL 3507329 (N.D.N.Y. Aug. 27, 2004) ............................................. 4

Christopher Phelps & Associates, LLC v. Galloway,
    492 F.3d 532 (4th Cir. 2007) ................................................................. 13

City of Hope National Medical Center. v. Genentech, Inc.,
    43 Cal. 4th 375, 181 P. 3d 142 (2008) ........................................ 12, 20, 21

Conversive, Inc. v. Conversagent, Inc.,
    433 F. Supp. 2d 1079 (C.D. Cal. 2006) ................................................. 16

Convolve, Inc. v. Compaq Computer Corp.,
    2006 WL 839022 (S.D.N.Y. Mar. 31, 2006) ........................................... 18

Cortez v. Purolator Air Filtration Products Co.,
    23 Cal. 4th 163, 999 P. 2d 706 (2000) ................................................. 17

Cosmos Jewelry v. Po Sun Hon Co.,
    470 F. Supp. 2d 1072 (C.D. Cal. 2006) ................................................. 23

Costco Wholesale Corp. v. Hoen,
    NO. C04-360P
    2006 WL 2645183 (W.D. Wash. Sept. 14, 2006) ................................... 10

Danjaq LLC v. Sony Corp.,
    263 F.3d 942 (9th Cir. 2001) ................................................................. 16

Daro v. Superior Court,
    151 Cal. App. 4th 1079, 61 Cal. Reporter 3d 716 (2007) ........................ 18

Davila v. County of San Joaquin,
    NO. CIV S06-2691LKK/EFB
    2008 WL 4426669 (E.D. Cal. Sept. 26, 2008) ..................................... 3, 10

Designer Skin, LLC v. S&L Vitamins, Inc.,
    2008 WL 4174882 (D. Ariz. Sept. 5, 2008) ........................................... 14

Digital Envoy, Inc. v. Google, Inc.,
    370 F. Supp. 2d 1025 (N.D. Cal. 2005) ................................................. 18

Dyer v. Napier,
    No. CV 04-0408-PHX-SMM,
    2006 U.S. Dist. LEXIS 68990 (D. Ariz. Sept. 25, 2006) .......................... 23

E.I. Du Pont de Nemours & Co v. Phillips Petroleum Co.,
    835 F.2d 277 (Fed. Cir. 1987) ................................................................ 8

eBay, Inc. v. MercExchange, L.L.C.,
    547 U.S. 388, 126 S. Ct. 1837, 164 L. Ed 2d 641 (2006) ................... 13, 14

Ernest Paper Products Inc. v. Mobil Chemical Co. Inc.,
    1997 WL 33483520 (C.D. Cal. Dec. 2, 1997) ......................................... 18

iv

Feltner v. Columbia Pictures Television, Inc.
    523 U.S. 340, 118 S. Ct. 1279, 140 L. Ed. 2d 438 (1998) .......................................... 16

Floyd v. Laws,
    929 F.2d 1390 (9th Cir. 1991) .............................................................................. 13

Friends of Yosemite Valley v. Kempthorne,
    NO. CVF 00-6191 AWI DLB,
    2007 WL 896154 (E.D. Cal. Mar. 22, 2007) ................................................ 2, 10, 11

GTE Products Corp. v. Kennametal, Inc.,
    772 F. Supp. 907 (W.D. Va. 1991) .......................................................................... 7, 8

Georgia-Pacific Corp. v. U.S. Plywood Corp.,
    318 F. Supp. 1116 (1970) .......................................................................................... 15

Goldberg v. Cameron,
    482 F. Supp. 2d 1136 (N.D. Cal. 2007) ..................................................................... 22

Golden Gate Restaurant Association v. City & County of San Francisco,
    512 F.3d 1112 (9th Cir. 2008) ............................................................................... 2, 4

Gordon Bennett & Associates, Inc. v. Volkswagen of America, Inc.,
    186 U.S.P.Q. 271 (N.D. Cal. 1975) .......................................................................... 17

In re Hayes Microcomputer Products, Inc. Patent Litigation,
    766 F. Supp. 818 (N.D. Cal. 1991) aff'd. 982 F. 2d 1527 (Fed. Cir. 1992) ...... 1, 3, 4, 8

Hilton v. Braunskill,
    481 U.S. 770 (1987) ................................................................................................... 2, 3

Himebaugh v. Smith,
    476 F. Supp. 502 (C.D. Cal. 1978) ............................................................................ 11

Jazzabi v. Allstate Insurance Co.,
    278 F.3d 979 (9th Cir. 2002) ..................................................................................... 25

Los Angeles Police Protective League v. Gates,
    995 F.2d 1469 (9th Cir. 1993) ............................................................................. 11, 12

Lucky Break Wishbone Corp. v. Sears, Roebuck, & Co.,
    528 F. Supp. 2d 1106 (W.D. Wash. 2007) ................................................................ 22

Madrid v. Perot Systems Corp.,
    130 Cal. App. 4th 440 (2005) .................................................................................... 17

MercExchange, L.L.C. v. eBay, Inc.,
    500 F. Supp. 2d 556 (E.D.Va. 2007) ......................................................................... 14

Metro Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.
    518 F. Supp. 2d 1197 (C.D. Cal 2007) ...................................................................... 14

Microsoft Corp. v. Nop,
    549 F. Supp. 2d 1233 (E.D. Cal. 2008) ..................................................................... 14

National Instruments Corp. v. Mathworks, Inc.,
NO. CIV. A. 2:01-CV-11-TJW
2003 WL 24049230 (E.D. Tex. June 23, 2003),
aff'd, 113 Fed Appx 895 (Fed. Cir. 2004) .................................................. 4

Novartis Pharmaceuticals Corp. v. Teva Pharmaceuticals. USA, Inc.,
NO. CIVA 05-CV-1887 DMC,
2007 WL 2669338 (D.N.J. Sept. 6, 2007) .................................................. 14

Panduit Corp. v. Stahlin Brothers Fibre Works, Inc.,
575 F.2d 1152 (6th Cir. 1978) .................................................................. 15

Pass & Seymour, Inc. v. Hubbell, Inc.,
532 F. Supp. 2d 418 (N.D.N.Y. 2007) ....................................................... 10

Persson v. Smart Inventions, Inc.,
125 Cal. App. 4th 1141 (2005) .................................................................. 20

Platt Electrical Supply, Inc. v. EOFF Electric, Inc.,
522 F.3d 1049 (9th Cir. 2008) .................................................................. 22

Rice v. Fox Broadcasting Co.,
330 F.3d 1170 (9th Cir. Cal. 2003) ............................................................ 15

Richelle L. v. Roman Catholic Archbishop of San Francisco,
106 Cal. App. 4th 257 (2003) .................................................................... 21

Satava v. Lowry,
323 F.3d 805 (9th Cir. 2003) ............................................................... 22, 23

Sengoku Works Ltd. v. RMC International, Ltd.,
96 F.3d 1217 (9th Cir. 1996) as modified, 97 F. 3d 1460 (9th Cir. 1996) .......... 16

Service & Training, Inc. v. Data General Corp.,
737 F. Supp. 334 (D. Md. 1990), aff'd, 963 F. 2d 680 (4th Cir. 1992) ............. 17

Soliman v. Philip Morris Inc.,
311 F.3d 966 (9th Cir. 2002) .................................................................... 22

Standard Havens Products, Inc. v. Gencor Industrial, Inc.,
897 F.2d 511 (Fed. Cir. 1990) ........................................................... passim

Stanislawski v. Jordan,
337 F. Supp. 2d 1103 (E.D. Wis. 2004) ...................................................... 23

Star-Kist Foods, Inc. v. P.J. Rhodes & Co.,
769 F.3d 1393 (9th Cir. 1985) .................................................................. 15

Subafilms, Ltd. V. MGA-Pathe Communications Co.,
24 F.3d 1088 (9th Cir. 1994) .................................................................... 15

Tyler v. Children's Home Society,
29 Cal. App. 4th 511, 549 (1994) ............................................................... 21

MGA Parties' *Ex Parte* Application And Motion To Stay Pending Appeal - Case No. CV 04-9049 SGL (RNBx)

UMG Recordings, Inc. v. Higareda,
    NO. 1:08CV00112-AWI-SMS
    2008 WL 3836074 (E.D. Cal. Aug. 14, 2008)........................................ 14

United States v. 1020 Electric Gambling Machines,
    38 F. Supp. 2d 1219 (E.D. Wash. 1999)................................................ 9

United States v. Henley,
    238 F.3d 1111 (9th Cir. 2001) ............................................................ 25

Wang Laboratories. Inc. v. Toshiba Corp.,
    NO. CIV. A 90-1477-A,
    1991 WL 333701 (E.D. Va. Aug. 23, 1991) ......................................... 8

Warner Brothers Entertainment, Inc. v. Carsagno,
    NO. 06CV 2676NG (RLM)
    2007 WL 1655666 (E.D.N.Y. June 4, 2007)...................................... 14

Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,
    559 F.2d 841 (D.C. Cir. 1977)............................................................. 4

## STATUTES

Cal. Bus. & Prof. Code § 16600 ............................................................ 19

Cal. Bus. & Prof. Code § 17200 ............................................................ 18

Cal. Bus. & Prof. Code § 17204 ............................................................ 17

Cal. Labor Code § 96(k), 98.6, 2699 & 2870 ........................................ 19

Fed. R. Civ. P. 62(c)............................................................................... 2

## OTHER AUTHORITIES

2 Dan B. Dobbs, Law of Remedies § 6.3(5) (2d ed. 1993) ..................... 8

3 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 18:2 (4th
    ed. 2008) .......................................................................................... 16

3 Melvin B. Nimmer, Nimmer on Copyright § 12.10 [A], at 12-14 (May 2000) ............... 16

2 William F. Patry, Patry on Copyright § 5:7 (2008) ........................... 24

## PRELIMINARY STATEMENT

MGA has appealed this Court's orders granting Mattel's motions for permanent injunction, declaratory relief, and constructive trust (the "December 3 Orders").  However, if the December 3 Orders are not stayed pending appeal, the consequences for MGA will be catastrophic. Although this Court stayed the December 3 Orders until February 2009, that interim stay is not sufficient to stave off the irreparable harm to MGA from the threat that the December 3 Orders will be enforced shortly.

REDACTED

(See Compendium of Declarations.)

Analyzing the relative hardships, the scale strongly tips in MGA's favor.

REDACTED

This type of harm has routinely been recognized as sufficient to warrant a stay pending appeal.  (See Section II.A, infra, citing, inter alia Standard Havens Prods., Inc. v. Gencor Indus., Inc., 897 F.2d 511, 516 (Fed. Cir. 1990) (granting stay of permanent injunction where a "substantial legal question exists," the harm to defendant absent a stay "would be both catastrophic and irreparable," and "[w]ithout a stay, [defendant] may well cease to exist"); In re Hayes Microcomputer Prods., Inc. Patent Litig., 766 F. Supp. 818, 823 (N.D. Cal. 1991) (granting stay pending appeal where permanent injunction was essentially "a corporate death penalty").)  In stark contrast, Mattel will suffer no harm if the December 3 Orders are not

1

1  stayed as Mattel has already waited years before even seeking an injunction. (<u>See</u> Section

2  II.B, <u>infra</u>.)  Further favoring a stay, the Court's December 3 Orders will have a lasting and

3  irrevocable impact on the public, permanently altering the market place.  (Section III, <u>infra</u>.)

4       MGA need not establish that it will prevail on appeal – although MGA believes that it

5  will – only that there are "serious legal questions" and that the balance of hardships tips

6  strongly in its favor.  (<u>See</u> Sections I and IV, <u>infra</u>, citing <u>Golden Gate Rest. Ass'n v. City &</u>

7  <u>County of San Francisco</u>, 512 F.3d 1112, 1115 (9th Cir. 2008).)  While MGA respectfully

8  disagrees with the Court's rulings, on one point there can be no real dispute: as the Court

9  itself has noted in various rulings, this Court's December 3 Orders address a host of serious

10  and in many instances novel questions that should be considered by the Ninth Circuit

11  because of the impact of these rulings not only on MGA, but on future parties in copyright

12  actions.  If a stay pending appeal is not afforded to MGA, these serious and novel questions

13  may never be addressed before the Ninth Circuit       REDACTED

14

15  **ARGUMENT**

16  **I.   STANDARDS FOR GRANTING A STAY PENDING APPEAL**

17       This Court may grant a stay "[w]hile an appeal is pending from an interlocutory order

18  or final judgment that grants, dissolves, or denies an injunction[.]"  Fed. R. Civ. P. 62(c).

19  According to the Supreme Court, "the factors regulating the issuance of a stay" are: "(1)

20  whether the stay applicant has made a strong showing that he is likely to succeed on the

21  merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether

22  issuance of the stay will substantially injure the other parties interested in the proceeding;

23  and (4) where the public interest lies."  <u>Hilton v. Braunskill</u>, 481 U.S. 770, 776 (1987).

24  Courts in the Ninth Circuit follow this standard.  <u>Golden Gate</u>, 512 F.3d at 1115; <u>Friends of</u>

25  <u>Yosemite Valley v. Kempthorne</u>, 2007 WL 896154, at *1 (E.D. Cal. Mar. 22, 2007).

26       In ruling on a motion for a stay pending appeal, the Ninth Circuit employs "'two

27  interrelated legal tests' that 'represent the outer reaches of a single continuum.'"  <u>Golden</u>

28  <u>Gate</u>, 512 F.3d at 1115.  The "irreparably injured" and "likelihood of success" factors are

considered on "a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Id. at 1116. If the party seeking the stay shows a strong likelihood of success, the mere possibility of irreparable injury absent relief warrants granting a stay. Id. Alternatively, if that party shows that "the balance of hardships tips sharply in its favor," relief is warranted if there are "serious legal questions" on appeal. Id.

In Standard Havens, a leading case on stays pending appeal, the Federal Circuit applied Hilton's four-factor test to a request for stay of a permanent injunction pending appeal in a patent infringement case. 897 F.2d at 512. In granting the stay, the court adopted a "sliding scale approach," holding when "harm to applicant is great enough, a court will not require 'a strong showing' that applicant is 'likely to succeed on the merits.'" Id. at 513."Each factor ... need not be given equal weight" and "likelihood of success in the appeal is not a rigid concept." Id. The court granted the stay as "substantial legal question exists," the harm to defendant absent a stay "would be both catastrophic and irreparable," and "[w]ithout a stay, [defendant] may well cease to exist." Id. at 516.

Courts routinely apply Standard Havens to consider stays of injunctions pending appeal in infringement cases. E.g., In re Hayes, 766 F. Supp. at 822-824 (stay of permanent injunction pending appeal of verdict in willful patent infringement case where, although "doubtful as to the strength of defendants' showing of likely success on appeal," court concluded that likelihood defendants would be "put out of business" posed a "serious risk" of irreparable injury); A.G. Design & Assocs., LLC v. Trainman Lantern Co., 2007 WL 2273676, at *1 (W.D. Wash. Aug. 7, 2007) (stay pending appeal where "substantial legal question" shown); Adv. Med. Optics, Inc. v. Alcon Labs., Inc., 2005 WL 3454283, at **10-12 (D. Del. Dec. 16, 2005) (staying permanent injunction pending appeal; while defendant "has not made a strong showing of likelihood of success on appeal, it has shown that it has a substantial case" and lost sales and market impact constituted irreparable injury).[1]

---

[1]   Accord Bristow v. Lycoming Engines, 2008 WL 2561105, at *2 (E.D. Cal. June 24, 2008) (where "balance of hardships tip[ped] sharply in [the movant party's] favor," even though court could not "conclude that it [was] probable that [the movants] [would] succeed on the merits of their appeal" staying warranted because "serious legal question" presented); Davila v. County of San Joaquin, 2008 WL 4426669, at *2 (E.D. Cal. Sept. 26, 2008) (granting motion for stay where "the
*(cont'd)*

**II.    THE EQUITIES WEIGH OVERWHELMINGLY IN SUPPORT OF STAYING THE COURT'S DECEMBER 3 ORDERS PENDING APPEAL**

**A.**    [REDACTED]

Because the balance of the hardships tips decidedly in MGA's favor, the December 3 Orders should be stayed pending appeal – even if the Court felt that MGA is not likely to prevail on appeal – because in weighing the relevant hardships, courts favor maintaining the status quo pending appeal. Golden Gate, 512 F.3d at 1119 ("if the balance of hardships tips sharply in favor of the party seeking the stay," even a small showing of a likelihood of success on appeal justifies a stay); Cargill, Inc. v. Sears Petroleum & Transp. Corp., 2004 WL 3507329, at *12 (N.D.N.Y. Aug. 27, 2004) ("Taking the second and third factors together, I am required to evaluate the relative harm to the parties of either allowing the injunction to be implemented or, instead, granting a stay. This analysis is made against the backdrop of an acknowledged preference for maintaining the status quo pending appeal.").

This principle has particular force where, as here, the injunction threatens to [REDACTED]    See, e.g., Standard Havens, 897 F.2d at 515 (stay granted where company was "likely to suffer irreparable harm in the form of employee layoffs, immediate insolvency, and, possibly, extinction"); In re Hayes, 766 F. Supp. at 823 (stay granted where permanent injunction was essentially "a corporate death penalty"); Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 599 F.2d 841, 843 (D.C. Cir. 1977) (stay pending appeal granted as "harm to [defendant] in the absence of a stay would be its destruction in its current form as a provider of bus tours"). Nat'l Instrums. Corp. v. Mathworks, Inc., 2003 WL 24049230, at *6 (E.D. Tex. June 23, 2003) (stay pending appeal given "financial impact and loss of employees that defendant would suffer should a stay not be granted").

Here, the balance of the hardships overwhelmingly indicates a stay is appropriate to ensure that    [REDACTED]    a well-loved line of toys are not destroyed before the Ninth Circuit has an opportunity to review the issues.

---

*(cont'd from previous page)*
defendants ha[d] met their burden" by demonstrating that their appeal "present[ed] at least 'serious legal questions'" in their appeal instead of meeting the higher "probability of success" standard).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REDACTED

MGA Parties' *Ex Parte* Application And Motion To Stay Pending Appeal - Case No. CV 04-9049 SGL (RNBx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14        REDACTED
15
16
17
18
19
20
21
22
23
24
25
26
27
28

6

REDACTED

**B.     Mattel Cannot Show It Will Be Equally Harmed By A Stay**

In contrast       REDACTED                          Mattel will suffer no "irreparable" harm from a stay. MGA acknowledges the Court's conclusion that Mattel will suffer harm based on "past infringement and the high probability of continued acts of infringement."   (12/3 Order (Dkt 4439) at 13.)   But this "harm" is no different from the inability to exclude others from using the intellectual property, a factor given little weight in the stay context. <u>Advanced Med.</u>, 2005 WL 3454283, at *11 ("While [plaintiff] will lose its right to exclusivity pending appeal and may suffer some injury to its reputation as a company that enforces its patent rights, a temporary stay [pending appeal] is not likely to

1  cause irreparable harm."); GTE Prods., 772 F. Supp. at 920-21 ("the inability to exclude
2  others causes injury in and of itself, however, I find that such injury is not substantial under
3  the present circumstances."). Especially when Mattel waited years to seek an injunction.

4  Furthermore, Mattel does not make any products that utilize the "Bratz" name or the
5  copyrighted works – a fact that weighs heavily against the notion that Mattel will suffer
6  "irreparable" harm while the case is on appeal. See Wang Labs., Inv. v. Toshiba Corp.,
7  1991 WL 333701, at *1 (E.D. Va. Aug. 23, 1991) (citing E.I. Du Pont de Nemours & Co v.
8  Phillips Petroleum Co., 835 F.2d 277, 278 (Fed. Cir. 1987) ("In particular, the Court notes
9  that [plaintiff] does not manufacture the patented invention itself and has not represented
10 that it has attempted to exclude others from manufacturing it. Hence, any harm to [plaintiff]
11 from staying the injunction is less and of a different nature than harm to a patentee who is
12 practicing its invention and fully excluding others.")); cf. Cadence Design, 125 F.3d at 828
13 (noting authorities holding that presumption of harm to plaintiff based on copyright
14 infringement is rebutted where the "plaintiff's copyrighted item is no longer on the market").

15 If, notwithstanding Mattel's lack of use of the intellectual property at issue, the Court
16 believes it is appropriate to protect Mattel while the case is on appeal, the appropriate
17 procedure is to require MGA to pay a reasonable royalty into escrow. E.g., In re Hayes, 766
18 F. Supp. at 823 (where injunction threatened to destroy company, stay pending appeal
19 issued and defendant required to pay reasonable royalty into escrow); Standard Havens, 897
20 F.2d at 516. MGA's experts have provided a reasonable royalty analysis (see Meyer Decl.
21 ISO Opp'n to Mattel's Mot. for Perm. Inj. (Dkt 4348) at 2-5), and, if a stay through appeal
22 is issued immediately, the royalty amount can be addressed on February 11, 2009.

23 **III.   THE PUBLIC INTEREST FAVORS A STAY**

24 As this Court noted, "[t]here is a strong economic interest, especially in these
25 troubled economic times, in maintaining a profitable enterprise as a going concern." (12/3
26 Order at 14.)[2] Although the Court decided that public interest concerns did not justify

---

27 [2]   2 Dan B. Dobbs, Law of Remedies § 6.3(5) (2d ed. 1993) (if "destruction or even an
28 injunction against distribution will prevent exploitation of economically viable materials, problem
is one of economic waste, certainly if the economic value of the plaintiff's copyright is less than
*(cont'd)*

1 denying a permanent injunction, such concerns amply support an interim stay of the

2 December 3 Orders pending appeal. Given current economic conditions, the public interest

3 weighs against [REDACTED] stripping already struggling

4 state and local governments of tax revenue and exacerbating the strain on public resources

5 [REDACTED] U.S. v. 1020 Elec. Gambling Mach., 38 F. Supp. 2d 1219,

6 1225 (E.D. Wash. 1999) (public interest favored allowing casino employees to retain jobs

7 and "avoid dependence upon government-provided benefits," even though certain casino

8 operations were illegal and provided unfair edge over competitors); Bennigan's Franchising

9 Co. v. Swigonski, 2007 WL 603370, at *5 (N.D. Tex. Feb. 27, 2007).

10     Moreover, as this Court noted in imposing the temporary stay now in place, removing

11 Bratz products from the marketplace also affects businesses other than MGA – such as

12 retailers who face their own financial troubles. (11/10 Tr. 123:22-124:4.) Denying a stay

13 will have global repercussions, given the irreparable harm to MGA's international

14 distributors and licensees.

15

16

17                              [REDACTED]

18

19

20

21                     the public interest in promoting competition in the

22

23 _(cont'd from previous page)_
   the economic costs entailed in the destruction or injunction"); BR Assocs. v. LaFramboise, 2007
24 WL 1840031, at *10 (E.D. Mich. June 26, 2007) (denying injunction which would cause waste).
   [3]

25

26

27                              [REDACTED]

28

MGA Parties' _Ex Parte_ Application And Motion To Stay Pending Appeal - Case No. CV 04-9049 SGL (RNBx)

1 | toy and doll industries that militated against entering an injunction, <u>Pass & Seymour, Inc. v.</u>
2 | <u>Hubbell, Inc.</u>, 532 F. Supp. 2d 418, 434 (N.D.N.Y. 2007) (denying injunction due to "anti-
3 | competitive nature"), also favors a stay. Finally, eliminating Bratz from the marketplace
4 | before the appeal will deprive children of a well-loved product.  An Illinois mother recently
5 | wrote to MGA and Mattel expressing anger and frustration that the injunctions will "pull
6 | playmates from the shelves, hearts and imaginations" of "millions of young children in this
7 | world" and force her to explain to her heartbroken seven-year-old daughter that "Bratz have
8 | to go away and we can't buy them anymore." (Kennedy Decl. Ex. A.) She complains that
9 | Mattel is "out of touch with its own consumers" in seeking to eliminate Bratz "at the
10 | expense of our children": "I find i[t] very disheartening especially since you will be hurting
11 | the very people that Barbie professes to be trying to give a great, imaginative, memorable
12 | childhood to[]." (<u>Id.</u>) She sums up the terrible impact of the orders on the Bratz consumer in
13 | compelling her daughter to "let[] go of what our children find most precious - their toys,
14 | their friends, their playmates" as follows: "taking these items away from our youngest most
15 | venerable (sic) consumers is not only heartless[,] it is greedy and unfair." (<u>Id.</u>)

16 | **IV.   MGA'S APPEAL RAISES SUBSTANTIAL QUESTIONS OF LAW**

17 |      "When the request for a stay is made to a district court, common sense dictates that
18 | the moving party need not persuade the court that it is likely to be reversed on appeal."
19 | <u>Costco Wholesale Corp. v. Hoen</u>, 2006 WL 2645183, at *2 (W.D. Wash. Sept. 14, 2006).
20 | The Court need not reject its findings to grant a motion to stay and can grant a stay even if it
21 | still "believes [its] ruling was correct." <u>Davila</u>, 2008 WL 4426669, at *2. So long as
22 | substantial legal questions exist on the appeal, a stay of an injunction pending appeal is
23 | proper.   <u>Azurin v. Von Raab</u>, 792 F.2d 914, 915 (9th Cir. 1986) (granting stay pending
24 | appeal where "issues presented on appeal [were] substantial and of public importance").

25 |      MGA carries its burden here by showing the Court "ruled on an admittedly difficult
26 | legal question." <u>Pac. Merch. Shipping Ass'n v. Cackette</u>, 2007 WL 2914961, at **1-2 (E.D.
27 | Cal. Oct. 5, 2007) (finding "questions of law [were] sufficiently difficult so that the court
28 | [needed to] undertake an analysis of the other factors"); <u>Yosemite Valley</u>, 2007 WL 896154,

10

1   at *2 (party seeking stay need show only that there are "serious and difficult questions of

2   law in an area where the law is somewhat unclear"). Where the legal issues raise "difficult

3   questions of law and policy" or "there [is] no Ninth Circuit authority directly on point," a

4   stay is proper. <u>Himebaugh v. Smith</u>, 476 F. Supp. 502, 510 (C.D. Cal. 1978) (sufficient

5   legal question existed to warrant granting a stay but ultimately denying stay because "other

6   factors…[did] not weigh in favor of a stay"); <u>Yosemite Valley</u>, 2007 WL 896154, at *2

7   (standard can be met by showing "scarcity of case law regarding" legal question).

**A.   <u>Substantial Legal Issues Arise From The Permanent Injunction Order</u>**

8

9   **1.   <u>The Court's Decision To Set Aside The Jury's Findings To Enjoin MGA's Sale Of Bratz Dolls Presents A Substantial Legal Question</u>**

10          MGA respectfully submits that the Court's decision to enjoin the sale of all Bratz-

11   related products presents several substantial legal questions, beginning with the Court's

12   decision to set aside the jury's verdict as to Mattel's copyright claim. The Seventh

13   Amendment provides "no fact tried by a jury shall be otherwise re-examined in any Court of

14   the United States, than according to the rules of the common law." U.S. Const. amend. VII.

15   This admonition has been interpreted by the Ninth Circuit as requiring a Court sitting in

16   equity to follow "the jury's implicit or explicit factual determinations." <u>Los Angeles Police</u>

17   <u>Protective League v. Gates</u>, 995 F.2d 1469, 1473 (9th Cir. 1993). Indeed, as the Tenth

18   Circuit explained, if it is clear that "certain views of the evidence were not taken by the jury

19   as they could not have rationally supported the result," the judge is bound by that negative

20   inference in evaluating equitable relief.  <u>Ag Servs. of Am. v. Nielsen</u>, 231 F.3d 726 (10th

21   Cir. 2000) (7th Amendment precluded court from making equitable findings against

22   defendant that were  inconsistent with logical inferences from jury's findings of no liability).

23   The Court recognized this limitation declaring that "[t]he jury was asked specific questions,

24   and the dollar amounts they came up with were reflected – they essentially answered those

25   questions in dollars and cents. And, certainly, the Court is bound by whatever explicit or

26   implicit logical conclusions are to be reached by those answers."  (11/10 Tr. 72:10-15.)

27   MGA respectfully submits that the Court did not follow the "implicit logical conclusions"

28   that flowed from the jury's findings; rather it crafted a wholly new test: holding that the

11

1 verdict did not limit its discretion at all as the jury's award was not tied to a "specific piece

2 of evidence." (12/3 Order at 10.)  MGA respectfully submits that no case law supports this

3 new test, making it the sort of question that justifies a stay given the absence of authority.[4]

4      The "level of damages" awarded by the jury conflicts with the holding underlying the

5 injunction order.  The jury was instructed to find the portion of Bratz profits "attributable to

6 factors other than use of the copyrighted work." (Phase 1b Jury Inst. (Dkt 5267) No 42.)  In

7 awarding the "level of damages" that it did – a fraction of overall Bratz profits – the

8 "implicit logical conclusion" is that the jury found either that a small portion of Bratz

9 products infringed, or that many products infringed, but those profits derived primarily from

10 factors other than Bryant's drawings.[5]  While the choice between those alternatives cannot

11 be ascertained with certainty,[6] given the damages award, the jury certainly <u>could not have</u>

12 <u>found what the Court did in its injunction order</u>: **both** that (1) all products infringe, and (2)

13 a substantial portion of the value of the products was attributable to infringement.

14      The "implicit logical conclusion" from the jury's findings, which bind the Court, is

15 that all products infringe <u>only if</u> Bratz' value derived overwhelmingly from other sources,

16 including MGA's own ingenuity.  Indeed, the Court already so noted: "the measurable value

17

18 [4]    The leading Ninth Circuit authority does not so hold. <u>Gates</u>, 995 F.2d at 1474-75 (inferring

19 jury findings based on the "level of damages" as viewed against the jury instructions, not from link between jury's damage award and a specific piece of evidence).  Nothing in <u>Gates</u> suggests that the

20 damages "level" flowed directly from a number offered by the plaintiffs' damages expert.  Rather, <u>Gates</u> concluded that the jury "could not have awarded the level of damages it awarded without

21 finding that" the plaintiff "would not have been discharged except for his refusal to be illegally searched." <u>Gates</u>, 995 F.2d at 1474.  The reverse is true here: the jury could not have arrived at the

22 "level of damages" that it found without concluding that (1) a minute portion of products infringed, or (2) all products infringed but the infringing elements were a tiny fraction of the overall value.

23 [5]    Because the verdict's ambiguity as to which of these alternative interpretations correctly reflects the jury's actual findings as to the extent of infringement is due to Mattel's objection to a

24 special verdict form and insistence on a general form as respects the scope of infringement (compare Mattel's Am. Proposed 1B Verdict Form (Dkt. 4161), with MGA Parties' 2d Rev.

25 Proposed Phase 1b Verdict Form (Dkt. 4250)), the Court should have resolved that ambiguity by interpreting the verdict against the party responsible for causing that uncertainty.  <u>See</u> <u>City of Hope</u>

26 <u>v. Genentech, Inc.</u>, 43 Cal. 4th 375, 397-98 (2008); Cal. Civ. Code §1654.

27 [6]    Mattel created this uncertainty when it insisted on using a general verdict form rather than a specific verdict form – which would have identified with specificity the products the jury found

28 infringing. (<u>Compare</u> Mattel's Am. Proposed 1B Verdict Form (Dkt. 4161), <u>with</u> MGA Parties' 2d Rev. Proposed Phase 1b Verdict Form (Dkt. 4250).)

of Bratz, the brand Bratz, the doll Bratz, and everything that comes with it, is so much a function of what Isaac Larian and his team put into it." (11/10 Tr. 60:23-61:2.) By failing to apply this "implicit logical conclusion" from the jury's findings, the Court created a substantial legal question as to whether the jury's findings were ignored and defendants' Seventh Amendment right violated. <u>Floyd v. Laws</u>, 929 F.2d 1390, 1397 (9th Cir. 1991).[7]

## 2. **The Irreparable Injury Finding Presents A Substantial Legal Issue**

The Court's irreparable harm finding is based on the misconduct attendant to Bryant's delivery of intellectual property to MGA. (12/3 Order at 13.)[8] However, the Phase 1b verdict already recompensed Mattel for any such harm. The Court found there must be irreparable injury here because MGA intends to "produce their infringing products." MGA submits that this finding overlooks that the jury concluded, in the Court's words, that "the measurable value of Bratz, the brand Bratz, the doll Bratz, and everything that comes with it, is so much a function of what Isaac Larian and his team put into it." (11/10 Tr. 60:23-61:2.)

The Court's ruling is not based on specific facts supporting a finding of irreparable injury, but rather on the "categorical rule" that a finding of infringement plus the likelihood of future infringement always constitutes irreparable injury. MGA respectfully submits that this conflicts with <u>eBay</u>, which emphasized that injunctions should issue through the "equitable discretion of the district courts...consistent with traditional principles of equity" rather than according to "categorical rule[s]." <u>eBay Inc.</u>, 547 U.S. at 393-94; <u>see also</u> <u>Christopher Phelps & Assocs., LLC v. Galloway</u>, 492 F.3d 532, 543 (4th Cir. 2007)

---

[7] Indeed, if, despite the MGA Parties' contrary contention, the jury verdict did not preclude the Court from making its own factual findings on the injunction issue, that was only because the verdict failed to specify with sufficient clarity the jury's findings on what products were infringed. As this Court acknowledged, using a special verdict form <u>would</u> have provided the necessary clarity to narrowly-tailor the injunction. (Tr. 7978: 14-18 ("But why – what is the downside of having the jury also identify exactly what it is that they've have found? I mean, that's going to be very helpful to the court with respect to tailoring injunctive relief.").) Failing to do so, in this circumstance, was a fundamental error because it eviscerated MGA's right to have the scope of infringement determined by the jury and empowered the Court to "redetermine" facts that necessarily must have been found by the jury in connection with its award of monetary relief.

[8] The Court's ruling overlooks that the jury found that MGA had not "engaged in acts that infringed [Mattel's] copyright" while "kn[owing] those acts infringed [Mattel's] copyright." (Jury Instr. No 43 (Dkt. 4267); Phase B Verdict Form Nos. 6, 8, 10.)

1  (applying eBay and rejecting plaintiff's assertion that "when copyright infringement has

2  been proved and there is a threat of continuing infringement, the copyright holder is

3  'entitled to an injunction'"); Novartis Pharms. Corp. v. Teva Pharms. USA, Inc., 2007 WL

4  2669338 at *13 (D.N.J. Sept. 6, 2007) ("This court relies upon eBay's broader holding that,

5  on motions for injunctions, courts should not apply categorical rules and presumptions").

6  Indeed, MGM Studios, Inc. v. Grokster expressly rejected the "categorical rule" that this

7  Court now adopts. 518 F. Supp 2d 1197, 1209 (C.D. Cal. 2007).[9]

8              **3.    Rejecting An Ongoing Royalty Presents A Substantial Legal Issue**

9        A royalty, not an injunction, is the appropriate remedy where, as here, the success of

10  the allegedly infringing work resulted from the "collaborative efforts of many talented

11  individuals"; the success "resulted in large part from factors completely unrelated to

12  infringement"; and "defendants invested substantial money, effort, and talent creating the

13  infringing work." Abend v. MCA, Inc., 863 F.2d 1465, 1479 (9th Cir. 1988). The Court

14  found widespread, ongoing infringement (12/3 Order at 15), which can be reconciled with

15  the jury's verdict only if Bratz' success derived largely from factors other than infringement

16  – the predicate that led Abend to deem an injunction "inappropriate." 863 F.2d at 1478.

17        The Court rejected the royalty because of the parties' inability to negotiate a royalty,

18  which evidenced the parties' "hostility" to one another.  (12/3 Order at 15.)  Once again,

19  this presents a substantial question.  In the copyright context, a judicial mechanism exists to

20  ───────────────
[9]    The Court relies on Designer Skin, LLC v. S&L Vitamins, Inc., 2008 WL 4174882 (D. Ariz.
21  Sept. 5, 2008) (12/3 Order at 12-13), which predicates injunctive relief on the "high probability of
continued acts of infringement" where, unlike here, plaintiff has commercialized the underlying
22  intellectual property. While injury to the copyright holder may be inevitable where its product has
to compete with the infringing product, this logic does not apply where plaintiff has not marketed,
23  developed, or sold the copyrighted work and has not introduced evidence that it will.
MercExchange, L.L.C. v. eBay, Inc., 500 F. Supp. 2d 556, 570 (E.D. Va. 2007).  Mattel offered
24  only evidence that it will not license its copyrighted works.  (Decl. of Judy Willis (Dkt. 4382-2).)
Mattel cited five cases to support its argument that "past infringement coupled with an ongoing
25  threat to the holder's exclusive rights" creates a presumption of irreparable harm.  As with
Designer Skins, in each of these cases the plaintiff was actively involved in commercially
26  exploiting the copyrighted work.  See Bertram Music Co. v. Yeager Holdings of Cal., Inc., 2008
WL 2055480 (E.D. Cal. 2008); UMG Recordings, Inc. v. Higareda, 2008 WL 3836074 (E.D. Cal.
27  2008); Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233 (E.D. Cal. 2008); Warner Bros. Entm't, Inc.
v. Carsagno, 2007 WL 1655666 (E.D.N.Y. 2007).  Moreover, the latter four cases involved default
28  judgments where it is questionable whether the viability of the presumption was litigated.

1  impose a royalty, notwithstanding hostilities or failed attempts at settlement.  See Georgia-

2  Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (1970) (a royalty calculation

3  assumes a negotiation "as if both [parties] had been reasonably and voluntarily trying to

4  reach an agreement"); Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152,

5  1159 (6th Cir. 1978) ("Determination of a 'reasonable royalty' after infringement, like

6  many devices in the law, rests on a legal fiction....There is, of course, no actual willingness

7  on either side").  The Court's reasoning effectively renders the remedy unavailable in any

8  case: all litigations involve some hostility between parties, and courts must rule only where

9  the parties have failed to agree. The Court's reasoning raises substantial issues.[10]

10  ### 4.  The Breadth Of The Order Raises Substantial Issues

11      The Court's Order could be read to require MGA to take steps outside of the U.S.

12  based on principles of U.S. copyright law.  (See generally 12/3 Injunction Order.)  Yet U.S.

13  copyright laws do not apply outside the U.S. and an order purporting to enjoin a party from

14  taking or refraining from actions outside the U.S. in reliance on such laws would be

15  inappropriate. See, e.g., Subafilms, Ltd. v. MGM-Pathe Commc'ns Co., 24 F.3d 1088, 1095

16  (9th Cir. 1994) (refusing to overturn "eighty years of consistent jurisprudence" stating that

17  "the United States' copyright laws have no application to extraterritorial infringement").[11]

18      It also is settled that "characters are ordinarily not afforded copyright protection."

19  Rice v. Fox Broad. Co., 330 F.3d 1170, 1175 (9th Cir. Cal. 2003).  Although "especially

20  distinctive" characters may be protected "apart from the copyrighted work," id., the

21  attributes and "personality" of Bryant's "characters" were minimally defined (MGA Obj. to

22  Mattel Jury Inst. (Dkt 4168) at 34-38.)  While the Court did not find that the characters were

23  copyrightable (12/3 Order at 10-11), its injunction extends to products depicting "any of the

24  _____

[10]  Although the Court lamented the parties' failure to successfully resolve this matter through

25  settlement (12/3 Order at 15), in fact, Mattel generally resisted face to face meetings with MGA to discuss settlement, and refused to meet after the Phase 1b verdict (in contravention of the Court's

26  orders).  MGA, of course, was and remains interested in settlement.  The breadth of the Court's December 3 Orders has effectively removed any incentive for Mattel even to discuss the issue.

27  [11]  The same is true of the Court's order granting a Constructive Trust over foreign trademarks.

28  (See 12/3 Constructive Trust Order ¶ 1; Star-Kist Foods, Inc. v. P.J. Rhodes & Co., 769 F.2d 1393, 1396 (9th Cir. 1985) (limiting trademark injunction to infringement within the U.S.).

1  Jade, Cloe, Yasmin and Sasha Bratz characters." (12/3 Injunction Order ¶¶ 1(f) & 1(i).)

2  ### 5.   Consideration Of Mattel's New Evidence In Post-Trial Submissions While Fashioning Injunctive Relief Presents A Serious Legal Issue

3  The Court's admission of Mattel's new evidence following the 1b verdict, including

4  new arguments presented by its outside counsel, and new expert reports presents a

5  substantial legal issue. These declarations dealt with copyright infringement and its scope –

6  issues that Mattel did not present to the jury. Permitting Mattel to submit new post-trial

7  "evidence" for its permanent injunction motion, infringed MGA's constitutional right to

8  have infringement determined by the jury. Danjaq LLC v. Sony Corp., 263 F.3d 942, 962

9  (9th Cir. 2001); Feltner v. Columbia Pictures TV, 523 U.S. 340, 355 (1998)); 3 Nimmer on

10  Copyright §12.10, at 12-14 (May 2000). Moreover, all three declarations were inadmissible

11  as an evidentiary matter. (MGA's 11/3/08 Reply ISO Motion to Strike (Dkt 4403).)

12  ### B.   Substantial Legal Issues Arise From The Constructive Trust Order

13  The Constructive Trust Order charts new territory in intellectual property law,

14  creating substantial legal questions for examination on appeal. In awarding a constructive

15  trust over the Bratz and various other trademarks, the Constructive Trust Order granted

16  trademark rights in a situation that would not otherwise confer them. A person who invents

17  a potential trademark has no exclusive rights to its use. Brookfield Commc'ns, Inc. v. W.

18  Coast Entm't Corp., 174 F.3d 1036, 1046 (9th Cir. 1999); Sengoku Works Ltd. v. RMC

19  Int'l, Ltd., 96 F.3d 1217, 1219, as modified, 97 F.3d 1460 (9th Cir. 1996). Even substantial

20  preparations showing a clear intent to use a mark are not enough to confer exclusive rights –

21  neither registering the mark as an internet domain name, nor using it in correspondence with

22  customers, nor "putting one's mark on 'a business office door sign, letterheads, architectural

23  drawings, etc.'" is sufficient. Brookfield, 174 F.3d at 1052. Only actual use in commerce

24  creates a property right. Id.[12] This Court's ruling circumvents that standard, and finds that

25

26  [12]   This Court has held that an assignment of a trademark that is not in use is void as "no rights can be transferred apart from the business with which the mark has been associated" and "law is

27  well settled that there are no rights in a trademark alone." Conversive, Inc v. Conversagent, Inc., 433 F. Supp. 2d 1079, 1090 (C.D. Cal. 2006). A leading treatise concluded that "where a

28  designation has never been used as a mark, there is nothing to assign." 3 McCarthy on Trademarks & Unfair Competition § 18:2 (4th ed. 2008).

while a person who invents a potential trademark has no exclusive rights to its use, he may assign his right to another, and that act creates a protectible interest in an unused trademark, vis-à-vis any other users who acquire it from the same inventor.[13] This novel ruling is based upon the problematic interaction between federal trademark law and California contract law. This interaction has not been explored in federal courts, but MGA submits it **does not** provide a basis for the constructive trust granted here. (MGA's Opp'n to Mot. for Const. Trust & UCL (Dkt 4349).) Given the novel nature, it presents a substantial legal question.

Mattel's satisfaction of the "injury in fact" standing requirement under Cal. Bus. & Prof. Code § 17204, also raise substantial legal questions. Mattel failed to show that it "lost money or property" as a result of the conduct in question, mostly because the marks that Mattel claimed entitlement to were never Mattel's property in the first place.[14] The Court gave no weight to Mattel's admissions that Mattel's claimed harm is limited to MGA's purportedly "ill-gotten" gains – a harm that is not cognizable under the UCL, Madrid v. Perot Sys. Corp., 130 Cal. App. 4th 440, 455 (2005). The Court found that Mattel satisfied the injury requirement because it "lost market share." (12/3 Order at 7.) But as UCL recognizes an injury only when plaintiff suffers a loss of property that he had a "vested" interest in (MGA 1c Stmt. (Dkt 4308) at 21 n.16 (collecting cases)), loss of market share cannot qualify. Cf. Serv. & Training, Inc. v. Data Gen. Corp., 737 F. Supp. 334, 343 (D. Md. 1990) ("companies … have no vested interest in an existing market structure").

The Court's further findings that the UCL "injury in fact" standing requirement was satisfied by the jury's implicit findings of "harm" as part and parcel of the verdict on state

---

[13]    This is despite the fact that the inventor could not have prevented others from using the mark. See Arvelo v. Am. Int'l Ins. Co., 875 F. Supp. 95, 101-102 (D.P.R. 1995) (plaintiff did not have any rights to trademark despite inventing it and presenting it to defendant; rather defendant who eventually used name held trademark rights); Gordon Bennett & Assocs., Inc. v. Volkswagen of Am., Inc., 186 U.S.P.Q. 271, 272 (N.D. Cal. 1975) (soliciting advertising service business from financial institutions by suggesting use of trademark did not establish rights to trademark).

[14]    Compare Cortez v. Purolator Air Filtration Prods. Co., 23 Cal. 4th 163, 177-78 (2000) (limiting availability of restitution under the UCL to "money that once had been in the possession of the person to whom it [is] to be restored"; "the remedy we approved was literally restoration of money, the return of money acquired from an individual to that individual"), with Buckland v. Threshold Enters., Ltd., 155 Cal. App. 4th 798, 817-818 (2007) (UCL standing is limited to individuals who are eligible for restitution).

1   law claims (12/3 Order at 7-8) effectively obliterate the UCL "injury" standing requirement
2   whenever the underlying predicate is based on a common law claim, as elements of
3   common law claims typically include a finding of "harm."   The MGA Parties respectfully
4   submit that this cannot be what California voters intended when they passed Prop. 64 to
5   impose an **additional** requirement of "lost money or property" for UCL claims, knowing
6   that underlying violations would typically satisfy the broader "harm" requirement. See Prop.
7   64, § 1, subd. (e); Daro v. Super. Ct., 151 Cal. App. 4th 1079, 1097 (2007) ("After
8   Proposition 64, a private person has standing to sue under the UCL only if that person has
9   suffered injury *and* lost money or property '*as a result* of such unfair competition.'").

10          The Court held that copyright preemption bars Mattel's interference claim "to the
11   extent that it is based on Mattel's rights to Bratz" (4/25/08 Order at 2), and MGA sought
12   judgment as a matter of law declaring this limitation on Mattel's aiding and abetting claims.
13   (MGA's Phase 1a JMOL (Dkt 4080).)   The California Uniform Trade Secrets Act
14   ("CUTSA") also displaces any common law tort claim that involves conduct that could
15   support a claim for misappropriation of trade secrets.  See Digital Envoy, Inc. v. Google,
16   Inc., 370 F. Supp. 2d 1025, 1032-35 (N.D. Cal. 2005); Convolve, Inc. v. Compaq Computer
17   Corp., 2006 WL 839022, at *7 (S.D.N.Y. Mar. 31, 2006) (California law); Ernest Paper
18   Prods. Inc. v. Mobil Chem. Co. Inc., 1997 WL 33483520, at *9 (C.D. Cal. Dec. 2, 1997)
19   (preemption of claims based on misappropriation of customer lists).  Mattel's claims for
20   interference and for aiding and abetting breach of fiduciary duty rest on the jury's finding
21   that Bryant improperly disclosed proprietary information to MGA.  The aiding and abetting
22   claim was based on Bryant's disclosure of proprietary information to MGA while he was an
23   employee of Mattel, and therefore is displaced by CUTSA.  Likewise, the interference claim
24   was displaced as the predicate of that claim was aiding and abetting liability.  (4/25/08
25   Order at 2.)  To the extent the aiding and abetting of the breach of Bryant's duty of loyalty
26   was based on more than merely signing the employment contract – that is, was based on
27   disclosure of proprietary information – it is likewise preempted.  Finally, CUTSA displaced
28   the Section 17200 claim because the predicate wrongful act was tortious interference.

C.      **Substantial Legal Issues Arise From The Declaratory Relief Order**

The Declaratory Relief Order also raises substantial questions regarding California contract law concerning rights to ideas, and the interplay of that law with federal intellectual property law – specifically, copyright.  In light of the potential conflict between these two areas of law, it is difficult to assess what the Declaratory Relief Order actually declares.  A claim purporting to assign ownership of material subject to copyright laws is necessarily preempted by the Copyright Act. (MGA's Opp'n to Mot. for Decl. Judg. (Dkt 4350).) As the order assigned ownership of works of art <u>and</u> "ideas" for the Bratz name and characters without reference to copyright law, it is unclear what property rights are being declared, or the effect of that declaration.  Indeed, at the hearing even Mattel's counsel was unable to articulate the precise relief it was seeking. (11/10 Tr. 37:4-40:24.) The Declaratory Relief Order turns on a novel and difficult reconciliation of state and federal law.

D.      **Substantial Legal Issues Arise From The Court's Underlying Rulings**

   1.      **The Court's Substantive Pretrial Rulings Are Implicated By The Orders And Present Substantial Questions Of Law**

Many of the Court's pretrial rulings create additional substantial legal questions.  The non-exhaustive list includes the Court's determination on issues of the enforceability of the Inventions Agreement, which Carter Bryant challenged as unconscionable and unlawful under Cal. Bus. & Prof. Code § 16600 and Cal. Labor Code §§ 96(k), 98.6, 2699 & 2870. (<u>See</u> 7/17/06 Order Granting Mot. to Dismiss (Dkt 63) at 10-14; 4/25/08 Order at 4-5.) Another substantial legal question is presented by the Court's ruling on the scope of the Inventions Agreement as encompassing Bryant's tangible drawings and intangible ideas for Bratz created (or, as the Inventions Agreement itself states, "conceived or reduced to practice") during the period of his employment at Mattel.  (<u>Id.</u> at 5.)  Despite the adhesive nature of the contract, the Court ruled that Mattel's interpretation of the Inventions Agreement was within Bryant's reasonable expectations, and that the contract was neither substantively unconscionable nor ambiguous with respect to the assignment of copyrightable (as opposed to patentable) subject matter.  (<u>Id.</u> at 4-5.)  The Court held that the contract was unambiguous despite Mattel's admission that Bryant's interpretation of the

1  terms at issue also was reasonable. (4/22 Tr. 40:10-41:18)  The Court's ruling not only
2  rejected the contract's use of purely patent-related terms of art (i.e., "inventions,"
3  "discoveries," "improvements," "formulae," "conceived or reduced to practice," etc.), but
4  also Mattel's subsequent revisions of its standard invention agreements to include the very
5  copyright language missing from the Inventions Agreement, confirming the lack of clarity.

6        The Court's interpretation of the scope of the Inventions Agreement as extending
7  beyond copyrightable material to Bryant's intangible "ideas," a term that is never used to
8  define "inventions" in the Agreement itself, also presents a substantial legal issue. (4/25/08
9  Order at 5.)  The Court's interpretation incorporates its finding that ideas are subject to
10 contractual protection and can thus be the basis for various state law claims and, ultimately,
11 claims for declaratory relief and a constructive trust.  The Court itself acknowledged the
12 novelty of the issue.  (Id. at 3, citing Desny v. Wilder, 46 Cal. 2d 715 (1956).)[15]

13       The Court's rulings as to Bryant's owing Mattel both a fiduciary duty and duty of
14 loyalty and his breach thereof also created substantial legal issues.  The Court instructed the
15 jury that Bryant owed, and had breached, a fiduciary duty.  Bryant was not in one of the
16 categories of  relationship that, as a matter of law, are fiduciary.  City Of Hope Nat. Med.
17 Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 386 (2008). However, the Court concluded that
18 Bryant was in a "confidential relationship" as he possessed confidential information
19 entrusted to him by Mattel. (4/25/08 Order at 5.)  While "confidential relationships" may
20 impose fiduciary duties, more is required than possession of confidential information. There
21 are "significant differences" between a categorical fiduciary duty and a confidential
22 relationship. Persson v. Smart Inventions, Inc., 125 Cal. App. 4th 1141, 1160 (2005).  The
23 "absolutely essential" predicate for a confidential relationship is vulnerability. Persson, 125
24 Cal. App. 4th at 1161.  This vulnerability must be more than a mere dependence upon the
25 specialized knowledge of another, arising from "advanced age, youth, lack of education,

26 ────────────
   [15]    Desny's interpretation is debatable, it addressed whether disclosure of an idea constituted
27 consideration under a contact, maintaining that "an idea is not property subject to exclusive
   ownership." 46 Cal. 2d at 733. Ideas are not protected under copyright. (MGA MSJ Opp'n (Dkt
28 2784) at 13; see also Desny, 46 Cal. 2d at 732-33 ("Only in the 'expression' of a copyrighted work
   does any monopoly inhere; the 'theme,' the 'plot,' the 'ideas' may always be freely borrowed.").)

1 weakness of mind, grief, sickness, or some other incapacity." <u>Richelle L. v. Roman</u>
2 <u>Catholic Archbishop of San Francisco</u>, 106 Cal. App. 4th 257, 273 (2003). As a matter of
3 law, Mattel could not establish a "confidential relationship" that imposed a fiduciary duty.
4 Unlike a fiduciary relationship, the existence of a confidential relationship is a question of
5 fact. <u>Tyler v. Children's Home Soc'y</u>, 29 Cal. App. 4th 511, 549 (1994); <u>Barbara A v. John</u>
6 <u>G.</u>, 145 Cal. App. 3d 369, 383 (1983). It was error to instruct that as a matter of law Bryant
7 owed Mattel a fiduciary duty. Due to that error, the finding that MGA induced a breach of
8 fiduciary duty fails.[16]  Moreover, given the sizeable authority on the issue supporting
9 MGA's arguments, there is also a substantial legal issue on the Court's determination that
10 Bryant's actions went beyond the line separating permissible preparations to compete from
11 actual competition. <u>See, e.g.</u>, <u>Bancroft-Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 346 (1966).

12      Another substantial legal issue is the MGA Parties' statute of limitations defense,
13 which required <u>three</u> separate orders of this Court to resolve. (<u>See</u> Orders of 1/12/07,
14 5/27/08, and 6/2/08.) The Court's holding that Mattel's claims against the MGA Parties
15 added years after the case began, may benefit from the "relation-back" doctrine, presents a
16 serious legal question[17] given that Mattel introduced no evidence establishing that it made a
17 "mistake" concerning the MGA Parties' identities as required by FRCP Rule 15(c) or that it
18 was unaware of the MGA Parties' involvement in the matter as required by California
19 procedure for substitution of "Doe" defendants. (MGA MSJ Reply (Dkt 2934) at 14-16.)[18]

[16]      The Court's 4/25/08 Order found a fiduciary duty because Bryant possessed confidential information (his own inventions) and was in a position to disclose that confidential information to MGA. If that were all that is required to create a fiduciary duty, every possessor of a confidence would owe a fiduciary duty. The California Supreme Court has definitively rejected that proposition.  <u>See, e.g.</u>, <u>City of Hope</u>, 43 Cal. 4th at 389 ("[A] fiduciary relationship is not necessarily created when one part . . . entrusts a secret invention to another party . . .").
[17]      Mattel's stale claims cannot be rescued by a post-hoc determination that its 2006 claims against the MGA Parties relate back to MGA's procedural intervention as a defendant in December 2004. Further, even if MGA joined the action for all purposes in 2004, Mr. Larian indisputably did not become involved until Mattel sued him in 2006.
[18]      The Court's determination with respect to inquiry notice, which the Court acknowledged was "not so clear cut" (5/27/07 Order at 5), also raises substantial legal issues. Despite the evidence of Mattel's awareness of Bryant's creation of Bratz as early as summer of 2001 and no later than March of 2002, the Court held that Mattel's duty to inquire into the facts underlying its claims did not arise until Mattel came to acquire <i>actual knowledge</i> of the facts. (6/2/08 Order at 2.) The Court did not apply the standard inquiry notice in California, which gets triggered "when…
<i>(cont'd)</i>

MGA Parties' <i>Ex Parte</i> Application And Motion To Stay Pending Appeal - Case No. CV 04-9049 SGL (RNBx)

1   Finally, substantial legal issues are raised by the Court's ruling in its July 24, 2008

2   Order (as clarified by its August 15, 2008 Order) that Bryant's drawings were subject to an

3   infringement standard of "substantial similarity," rather than "virtual identity." (7/24/08

4   Order (Dkt 4154) at 3-5.) MGA submits that this Court's decision to apply the "substantial

5   similarity" standard misapplied Ninth Circuit precedent. After acknowledging that Satava v.

6   Lowry, 323 F.3d 805 (9th Cir. 2003), which held that the glass-in-glass jellyfish sculpture at

7   issue was entitled to merely "thin" protection, was controlling, the Court distinguished the

8   Satava finding that the sculptures "were unprotected to the extent the physiology of jellyfish

9   drove the presentation of the sculptures." (Id. at 4.) However, the Court rejected analogy of

10  these sculptures to Bryant's depictions of the human form on the grounds that "[j]elly fish

11  anatomy is much simpler than human anatomy" and "there are far more variations in

12  humans (at least that we humans discern)." (Id.) In fact, neither party presented any

13  evidence on this issue or even presented it as a basis for distinguishing Satava. Moreover,

14  Satava has been applied by courts to a variety of natural forms.[19] Whether human anatomy

15

16  (cont'd from previous page)
    [the plaintiff] at least 'suspect[ed] ... that someone ha[d] done something wrong' to ...[it]."
17  Soliman v. Philip Morris Inc., 311 F.3d 966, 971-72 (9th Cir. 2002) (emphasis added). Relatedly,
    allowing Mattel to preclude discovery of its internal investigation while simultaneously relying on
18  that investigation's supposed conclusions raises a substantial legal issue. (5/27/08 Order at 7). The
    Court's distinction of that investigation as pertaining only to Diva Starz and Toon Teens in MGA's
19  view conflicted with Ninth Circuit precedent. Platt Elec. Supply, Inc. v. EOFF Elec., Inc., 522 F.3d
    1049, 1057 (9th Cir. 2008) (inquiry notice is interpreted "'to mean not when the plaintiff became
20  aware of the specific wrong alleged, but when the plaintiff suspected or should have suspected that
    an injury was caused by wrongdoing.... A plaintiff need not be aware of the specific facts
21  necessary to establish a claim since they can be developed in pretrial discovery.'"). In addition,
    that distinction was undermined by Mattel's subsequent reliance on evidence relating to Diva Starz
22  and Toon Teens to prove its case throughout the trial. Indeed, the Court's rulings in connection
    with the inquiry notice issue were sufficiently subject to debate that the Court sought the parties'
23  assistance in drawing conclusions from its own findings (5/27/08 Order at 9) and vacated a portion
    of those findings when it turned out that the Court's earlier determination as to the accrual date of
24  Mattel's copyright claim doomed its timeliness (6/2/08 Order at 3-4 & n.2). The Court's
    misinterpretation of inquiry notice also led it erroneously to conclude that, as a matter of law,
25  Mattel's claim for copyright infringement against the MGA Parties did not accrue until November
    23, 2003 and therefore was timely filed on November 20, 2006. (6/2/08 Order at 4.) Because the
26  "inquiry [into whether or when a plaintiff should have reasonably discovered infringement] is a
    question of fact[,]" this issue should have been submitted to the jury. Goldberg v. Cameron, 482 F.
27  Supp. 2d 1136, 1148 (N.D. Cal. 2007). Thus, the copyright infringement verdict cannot stand.
28  [19]   See, e.g., Aliotti, 831 F.2d at 901 (dinosaurs); Lucky Break Wishbone Corp. v. Sears,
                                                                                          (cont'd)

22

is more complex than a jellyfish, standard elements of human anatomy in Bryant's drawings are relevant to the determination of the protection to be afforded to the drawings. Human anatomy is "expressed by nature" and "common heritage of human kind," and "no artist may use copyright law to prevent others from depicting" it. Id. at 813.

### 2. The Court's Rulings During Trial Are Implicated By The Orders And Present Substantial Questions Of Law

Another substantial legal question is the Court's apparent conflation of two related, but distinct, types of ownership of a copyrighted work under the Copyright Act: (a) ownership of the tangible work itself, and (b) ownership of the copyright in such work. 17 U.S.C. §202 ("[o]wnership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied"). During the Phase 1a trial, the Court repeatedly noted that the Phase 1a verdict would solely be directed to issues of timing of the creation of the Bryant works (whether they were "created" during Bryant's tenure at Mattel), and that all issues of copyright ownership of such works, as the basis for any infringement claims, were reserved for Phase 1b.[20] Consistent with this dichotomy between timing and ownership, the Court specifically conformed the verdict form to the language in Bryant's employment agreement in asking whether works at issue were "'conceived or reduced to practice' — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by

_(cont'd from previous page)_
Roebuck, & Co., 528 F. Supp. 2d 1106, 1123-24 (W.D. Wash. 2007) (turkey wishbone); Dyer v. Napier, 2006 WL 2730747, at ** 7-9 (D. Ariz. Sept. 25, 2006) (mountain lion); Cosmos Jewelry v. Po Sun Hon Co., 470 F. Supp. 2d 1072, 1082 (C.D. Cal. 2006) (Plumeria flower); Stanislawski v. Jordan, 337 F. Supp. 2d 1103, 1116 (E.D. Wis. 2004) (oak leaf and shape of horse). The Court addressed these cases at trial by stating: "The series of cases that MGA cites in addition to Satava ... are distinct for the same reason that the Court distinguished Satava. All of these are animal physiological and nature-based physiological and structural cases, and they just don't apply to the context of dolls." (Tr. 6203:8-15.) But the Court's reasoning presents a substantial legal issue because it blurs the natural physiology being depicted with the tangible item depicting it.

[20] See, e.g., 7/7/08 Tr. 107:5-8 ("The issue for the jury is what was done and when ... the Court will ultimately have the issue of ownership to decide based on findings in Phase 1-A and, if necessary, findings in Phase 1-B"); Tr. 4727:24 -28:8 ("All we're trying to decide in 1-A is what was conceived or reduced to practice during the particular time period. And 1-B will decide whether or not these were – there was elements of originality or elements of copyrightability such that this was actually the ownership ... All we're deciding is the factual predicate of when these things came into existence") (emphasis added). Mattel concurred. (7/7/08 Tr. 102:25-103:3.)

1 | Mattel." (Phase 1a Verdict Form (Dkt 4125) No. 1 (emphasis added).)

2 | However, in Phase 1b, the Court appeared to abandon the dichotomy, instead finding
3 | that the <u>copyrights</u> in all of Bryant's works were owned by Mattel. (Phase 1b Jury Inst. No.
4 | 22 ("On Mattel's copyright infringement claim, Mattel has the burden of proving both of the
5 | following by a preponderance of the evidence ... (1) Mattel is the owner of a valid
6 | copyright;.... <u>As a matter of law</u>, the first element is satisfied because Mattel is the owner of
7 | each of the <u>items</u> you found were created by Carter Bryant, alone or jointly with others,
8 | while employed by Mattel ...") (emphasis added).)  In doing so, MGA respectfully suggests
9 | that the Court erred in assigning sole copyright ownership of any works which were
10 | authored "jointly" by Bryant and others.  17 U.S.C. §201(a).  For jointly authored works,
11 | each author is entitled to copyright ownership. <u>Patry on Copyright</u> §5:7.[21]

12 | Likewise, many of the Court's evidentiary rulings provide sufficiently substantial
13 | legal questions that tip the balance in favor of the stay here.  For instance, the Court
14 | excluded any testimony or evidence regarding non-privileged communications from MGA
15 | attorney David Rosenbaum to MGA establishing that Bryant's attorney, Anne Wang, told
16 | MGA that Bryant created the concept for Bratz at a time he was not working for Mattel (the
17 | "Rosenbaum Evidence").  While conceding that "it's a close case", the Court refused to
18 | allow the introduction of the Rosenbaum Evidence absent a waiver of MGA's attorney-
19 | client privilege in its entirety.  (Tr. 7656:10-7658:4 and Tr. 4066:13-17.)  MGA repeatedly
20 | argued that an attorney's communication of facts to a client is not privileged, especially a
21 | communication confirming facts that MGA and Larian had already learned independently,

---

22 | [21]    During the Phase 1b trial, MGA addressed the issue of joint authorship as to several items,
23 | including Exhibit 1136A, a preliminary sculpt of the Bratz created for MGA by Margaret Leahy.
Under authorship standards, Bryant was, <u>at best</u>, a <u>joint</u> author of the preliminary sculpt. <u>See</u>
24 | <u>Aalmuhammed v. Lee</u>, 202 F.3d 1227, 1232 (9th Cir. 2000).  Indeed, Leahy was arguably the sole
author. (<u>See, e.g.</u>, Tr. 4144:7-15, 23-24)  Thus, the issue of authorship of Exhibit 1136A was "a
25 | question of fact for the jury." <u>See</u> Comment, 9th Cir. Manual of Model Jury Insts. – Civil, No. 17.6
"Copyright Interests – Authorship."  MGA was not given the opportunity to have its arguments on
26 | joint authorship decided on the merits because the Court found that MGA had waived this issue by
failing to present it in the pretrial conference order, summary judgment papers, or during Phase 1a.
27 | (Tr. 6907:24-6909:7.)  The MGA Parties dispute this decision, as they included an instruction on
joint authorship in their proposed instructions following the Phase 1a verdict, once this issue
28 | became apparent. (<u>See</u> MGA Prop. Disp. Phase 1b Jury Inst. (Dkt 4164) at 39.)

1 and thus MGA would not waive its privilege or implicate the advice of counsel defense by
2 introducing testimony from Rosenbaum or Wang or the emails themselves. (See MGA
3 Opp'n To Mot. For Order Compelling Prod. Of Commc'ns (Dkt. 4067) at 11-24 (describing
4 procedural history, collecting cases); MGA MIL Opp'n No. 7 (Dkt 3387) at 2-14 (same).)
5 The Rosenbaum Evidence excluded by the Court may well have convinced the jury that
6 MGA and Larian verified Bryant's ownership of Bratz at the time of the contract
7 negotiations, negating the showing of intent or wrongfulness required by Mattel's state law
8 claims, as well as by this Court's award of constructive trusts. Given that the Court noted
9 that this issue presents a "close" call, it presents a substantial legal question on appeal.

10     Finally, substantial legal issues exist as to the validity of the Phase 1a verdict, upon
11 which all of Mattel's injunctive relief relies.  As this Court is well-aware, MGA sought a
12 mistrial at the end of Phase 1a in light of evidence of juror bias.  In its opinion, the Court,
13 while recognizing Ninth Circuit precedent in the Sixth Amendment context, declined to
14 apply the doctrine that the presence of even a single biased juror undermines the validity of
15 a verdict in the civil context.  (See Order Denying Mot. for Mistrial (Dkt 4238) at 8-10.)
16 The MGA Parties posit that, in light of the fact that they are entitled to a unanimous verdict
17 on liability, see Jazzabi v. Allstate Ins. Co., 278 F.3d 979, 984-85 (9th Cir. 2002), a single
18 biased juror is of no less concern under the Seventh Amendment.  A question of such
19 Constitutional magnitude, combined with the accompanying questions regarding the scope
20 of a court's permissible inquiry into juror bias (which in this Circuit have been addressed
21 thus far only in United States v. Henley, 238 F.3d 1111, 1119-20 (9th Cir. 2001)), certainly
22 merits consideration on appeal and raises the possibility of a different result.

23 **CONCLUSION**

24     For the foregoing reasons, the MGA Parties respectfully request that enforcement of
25 the December 3 Orders be stayed pending appeal.

26 DATED: December 9, 2008       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

27          By: _____/s/ Thomas J. Nolan_____

28                 Thomas J. Nolan
                Attorneys for the MGA Parties