# EXHIBIT A

Case 2:04-cv-09049-DOC-RNB Document 4459-3 Filed 12/11/08 Page 2 of 40 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4443 Filed 12/03/2008 Page 1 of 39
#:128364

O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) Consolidated with Case Nos. CV 04-09059 & CV 05-2727 |
| Plaintiff, | |
| vs. | ORDER GRANTING MATTEL, INC.'S MOTION FOR PERMANENT INJUNCTION |
| MATTEL, INC., a Delaware corporation, | |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |

## ORDER

Having considered Mattel, Inc.'s Motion for Permanent Injunction (the "Motion"), the opposition thereto, and all other papers, evidence and arguments submitted in connection therewith, as well as the evidence admitted at trial and the jury's verdicts in the Phase 1 trial, the Court hereby GRANTS Mattel's Motion against MGA Entertainment Inc. ("MGA"), MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), and Isaac Larian ("Larian") (MGA, MGA Hong Kong, and Larian are, collectively, "Defendants"), and hereby ORDERS as follows:

1.      MGA, MGA Hong Kong, and Larian, along with their respective officers, directors, principals, agents, representatives, servants, employees, affiliates, successors or assigns, and any person or entity acting on their behalf or in concert or participation with them, are hereby PERMANENTLY ENJOINED from manufacturing, procuring the manufacture of, making, producing, reproducing, copying, distributing, transferring, displaying, marketing, advertising, shipping, importing, exporting, licensing, offering to license, selling or offering to sell:

    (a)    Any doll, product or other item that embodies or depicts in whole or in part, or incorporates or uses in any manner, the head and/or body sculpt shown in Exhibit 1 (sometimes known as the "core Bratz fashion doll production sculpt"), which is incorporated herein by this reference.

    (b)    Any doll, product or other item that embodies or depicts in whole or in part, or incorporates or uses in any manner, the head and/or body sculpt shown in Exhibit 2 (sometimes known as the "Bratz Movie sculpt"), which is incorporated herein by this reference.

    (c)    Any doll shown in Exhibits 3 to 4, inclusive, which are incorporated herein by this reference, except Cloe's younger sister depicted at Exhibit 3, page 277; the younger version of Yasmin depicted at Exhibit 3, page 278; and the younger Alicia

1  depicted at Exhibit 4, page 379, if those dolls are packaged

2  separately from a doll that includes a doll incorporating the core

3  Bratz fashion doll production sculpt or Bratz Movie sculpt

4  (Exhibits 1 and 2).

5  (d)  Any doll or portion of a doll shown in Exhibits 5 to 6, inclusive,

6  which are incorporated herein by this reference, except the dolls

7  depicted at Exhibit 5, pages 551 through 555, inclusive, and the

8  dolls depicted at Exhibit 6, pages 556, 557, 558, and 565.

9  (e)  Any product, packaging or other item that embodies or depicts in

10  whole or in part, or incorporates or uses in any manner, the

11  artwork shown on the packaging set forth in Exhibit 7, which is

12  incorporated herein by this reference.

13  (f)  Any doll, product, packaging or other item that embodies or

14  depicts in whole or in part, or incorporates or uses in any

15  manner, any of the Jade, Cloe, Yasmin and Sasha Bratz

16  characters, including without limitation the items shown in

17  Exhibits 3 and 5, which are incorporated herein by this reference.

18  (g)  Any marketing or advertising materials that embody or depict in

19  whole or in part, or incorporate or use in any manner, any of the

20  dolls, products, items or other matter described in paragraphs (a)

21  through (f) above, including without limitation the marketing or

22  advertising materials shown in Exhibits 8 (screen captures from

23  television commercials) to 9 (print advertisements depicting any

24  dolls incorporating the core Bratz fashion doll production sculpt

25  or Bratz Movie sculpt (Exhibits 1 and 2), inclusive, which are

26  incorporated herein by this reference.

27  (h)  Any doll, product, packaging, advertising or other item or

28  materials that counterfeits, copies or is substantially similar to

Mattel's copyright protected head and/or body sculpt shown in Exhibit 10, which is incorporated herein by this reference, including without limitation the Bratz fashion dolls known as Cloe, Yasmin, Sasha, Jade, Ciara, Dana, Diona, Felicia, Fianna, Katia, Kiana, Krysta, Kumi, Lana, Leah, Lela, Liliana, Lilee, Lina, Maribel, May Lin, Meygan, Nevra, Nevaeh, Nona, Nora, Oriana, Peyton, Phoebe, Rina, Roxxi, Sharidan, Sierrna, Sorya, Sunya, Tess, Tiana, Trinity, Vinessa, and Valentina, and any and all other dolls employing a sculpt which is substantially similar to Exhibit 10.

(i) Any doll, product, packaging, advertising or other item or materials that embodies or depicts in whole or in part, or incorporates or uses in any manner, any of the Jade, Cloe, Yasmin and Sasha Bratz characters depicted or described in Exhibit 11, which is incorporated herein by this reference; and

(j) Any doll, product, packaging, advertising or other item or materials that counterfeit, copy or are substantially similar to Mattel's Bratz-related copyrighted works, including without limitation such works in Exhibits 11 and 12, inclusive, which are incorporated herein by this reference.

2. MGA, MGA Hong Kong, and Larian, along with their respective officers, directors, principals, agents, representatives, servants, employees, affiliates, successors or assigns, and any person or entity acting on their behalf or in concert or participation with them, are further hereby PERMANENTLY ENJOINED from engaging in any of the following acts:

(a) Copying, imitating, selling, offering to sell, marketing, distributing, importing, displaying or making any use of the

Case 2:04-cv-09049-DOC-RNB Document 4458-3 Filed 12/11/08 Page 6 of 40 Page ID
#:128368
Case 2:04-cv-09049-SGL-RNB Document 4443 Filed 12/03/2008 Page 5 of 39

copyrighted works shown in Exhibits 10 to 12, inclusive, which
works are owned by Mattel.

(b)     Engaging in any and all further acts of infringement of the
copyrighted works shown in Exhibits 10 to 12, inclusive, which
works are owned by Mattel.

(c)     Asserting any ownership of rights or any right, title or interest in
the copyrighted works shown in Exhibits 10 to 12, inclusive,
which works are owned by Mattel.

(d)     Transferring, disposing of, destroying, spoliating or secreting any
documents, records, recordings or materials, whether in
electronic or non-electronic form, that evidence, relate to or
pertain to any aspect of the dolls, products, packaging, items or
other materials referred to in paragraphs 1(a) through 1(k) above,
inclusive, including without limitation any and all agreements,
contracts, correspondence, communications, invoices, purchase
orders, sales orders, manufacturing records, import or export
records, sales records, ledgers, inventory records and shipping
records relating thereto.

(e)     Transferring, disposing of, destroying, spoliating or secreting any
documents, records, recordings or material, whether in electronic
or non-electronic form, that in any manner evidence, relate to or
pertain to any products, services or activities using or displaying
any simulation, counterfeit, reproduction or copy of, or are
derived from, Mattel's copyrighted works shown in Exhibits 10
to 12, inclusive, which are incorporated herein by this reference.

(f)     Transferring, disposing of, destroying, spoliating, secreting or
exporting any products, product packaging, labels, signs, prints,
dies, wrappers, receptacles, advertisements or any other tangible

-5-

items (including without limitation computer files) that in any manner utilize, contain, evidence, reproduce, display, or relate to any simulation, counterfeit, reproduction or copy of, or are derived from, (i) the dolls, products, packaging, items or other materials referred to in paragraphs 1(a) through 1(k) above, inclusive, or (ii) Mattel's copyrighted works shown in Exhibits 10 to 12, inclusive, which are incorporated herein by this reference.

(g) Transferring, disposing of, destroying, spoliating, secreting or exporting any plates, molds, matrices, and other means of making or manufacturing (i) the dolls, products, packaging, items or other materials referred to in paragraphs 1(a) through 1(k) above, inclusive, or (ii) any reproduction, counterfeit, copy, substantially similar likeness, or derivative of Mattel's copyrighted works shown in Exhibits 10 to 12, inclusive.

(h) Assisting, aiding or abetting any other entity or person in engaging in or performing any of the activities referred to in paragraphs 1(a) through 1(k), inclusive, and/or in paragraphs 2(a) through 2(h), inclusive.

3. At Defendants' expense, Defendants shall deliver to Mattel's counsel for impoundment, at such location in the Central District of California as Mattel's counsel may direct, all dolls, products, product packaging, labels, signs, prints, dies, wrappers, receptacles and advertisements, in the direct or indirect possession, custody or control of Defendants, their officers, directors, principals, agents, servants, employees, successors or assigns, or any person or entity acting on their behalf or in concert or participation with them, that are referred to in paragraphs 1(a) through 1(k), inclusive, and/or in paragraphs 2(a) through 2(h),

Case 2:04-cv-09049-DOC-RNB Document 4458-3 Filed 12/11/08 Page 8 of 40 Page ID
#:128370
Case 2:04-cv-09049-SGL-RNB Document 4443 Filed 12/03/2008 Page 7 of 39

1  inclusive, together with all plates, molds, matrices and other means of making the

2  same. Mattel's counsel is hereby appointed substitute custodian for all such items.

3      4.    Defendants are hereby ORDERED to procure the return, and to

4  withdraw and recall, from any and all channels of trade and distribution, including

5  without limitation from retail shelves and from on-line retailers, all of the dolls and

6  doll products that are referred to in paragraphs 1(a) through 1(k), inclusive, and/or in

7  paragraphs 2(a) through 2(h), inclusive. As to each entity or person returning such

8  dolls and doll products, Defendants shall refund all monies paid by each entity or

9  person in connection with such dolls and doll products and shall reimburse each

10  such entity or person for all associated shipping charges.

11      5.    Defendants shall hand serve upon Mattel's counsel a declaration,

12  made under oath, that sets forth fully and completely the following information: (a)

13  the identity of each and every doll, product, package or other item manufactured,

14  marketed, displayed, distributed, imported, exported, sold or offered for sale by or

15  for Defendants that are referred to in paragraphs 1(a) through 1(k), inclusive, and/or

16  in paragraphs 2(a) through 2(h), inclusive; (b) for each such doll, product, package

17  or other item, the number of units manufactured, marketed, displayed, distributed,

18  shipped, imported, exported, sold or offered for sale by or for Defendants; (c) for

19  each unit of each such doll, product, package or other item, the purchaser, transferee

20  or recipient of each such unit(s), the quantities acquired by such purchaser,

21  transferee or recipient and complete contact information (including limitation the

22  address, telephone number, fax number and email address where known) for each

23  such purchaser, transferee or recipient; (d) for each unit of such doll, product,

24  package or other item, the current or last known location of each such unit,

25  including without limitation the location of all such dolls, products, package or other

26  items in Defendant's inventory; and (v) for each person or entity to whom or which

27  Defendants have promoted, advertised, marketed or offered to sell any doll, product,

28  package or other item that is the subject of this Order, the identity of, and complete

Case 2:04-cv-09049-DOC-RNB Document 4459-3 Filed 12/11/08 Page 9 of 40 Page ID
#:128371
Case 2:04-cv-09049-SGL-RNB Document 4443 Filed 12/03/2008 Page 8 of 91

1  contact information for (including limitation the address, telephone number, fax

2  number and email address where known), each such person or entity.

3         6.    At Defendants' expense, Defendants shall make written contact

4  (either through fax or electronic mail) with (i) each retailer, distributor, wholesaler,

5  importer, exporter, customer, licensee or any other person and entity to or through

6  whom Defendants have shipped, transferred, imported, exported or sold any doll,

7  product or other item that is the subject of this Order; and (ii) each retailer,

8  distributor, wholesaler, licensee, potential licensee, customer, potential customer or

9  any other person and entity who Defendants have contacted (whether by mail,

10  electronic mail, orally or otherwise) within the past ninety (90) days in marketing,

11  promoting or advertising any doll, product or other item that is the subject of this

12  Order, and shall provide each such person and entity with a copy of this Order and

13  with a verbatim copy of the following notice, in legible and conspicuous print, in its

14  entirety (hereinafter, the "Notice"):

15  <u>NOTICE PUBLISHED PURSUANT TO</u>

16  <u>ORDER OF THE UNITED STATES DISTRICT COURT</u>

17  YOU ARE HEREBY ADVISED as follows:

18
19  Recently you may have bought, seen, or been contacted regarding, the
     sale of Bratz dolls or other Bratz products.

20
21  Pursuant to the rulings of the United States District Court, Mattel is the
     owner of Bratz-related copyrights that are infringed by Bratz dolls,
22  products and packaging manufactured by or for MGA.

23  The Court has ordered MGA to immediately cease any further
24  manufacture, sale, promotion, shipment or distribution of Bratz dolls,
     products and packaging.
25
26  In addition, the Court has ordered that Bratz dolls must be returned
     immediately to the following address: MGA Entertainment, Inc., Attn:
27  Customer Service, 163000 Roscoe Blvd., Suite 150, Van Nuys, CA
     91406.
28

MGA will refund to you all monies paid by you for these dolls and reimburse you for all associated shipping charges.

7.    At Defendants' expense, Defendants shall post in legible and conspicuous print a verbatim copy of the entire Notice set forth in Paragraph 6, above, upon the home page of MGA's web site at www.mgae.com beginning within twenty-four hours of receipt of notice of this Order and continuing for a period of no less than one hundred and twenty (120) days.

8.    Defendants, and any person or entity acting on their behalf or in concert or participation with Defendants, shall fully comply with Paragraphs 1 and 2 of this Order immediately, shall fully comply with Paragraph 6 of this Order within two (2) calendar days of the date of this Order, shall fully comply with Paragraph 5 of this Order within seven (7) calendar days of the date of this Order and shall fully comply with Paragraphs 3 and 4 of this Order within thirty (30) days of this Order. In the event that any additional doll, product or item that is the subject of this Order subsequently is delivered to or comes within the direct or indirect possession, custody or control of Defendants, Defendants shall deliver such additional doll, product or item to Mattel's counsel within two (2) calendar days in accordance with the terms of Paragraph 3, above.

9.    Within forty (40) calendar days of the date of this Order, Defendants shall file with the Court, and personally serve on counsel for Mattel, a report in writing under oath setting forth the actions taken to comply with the terms herein pursuant to 15 U.S.C. § 1116(a).  Such Report shall have appended to it complete, true and accurate copies of each communication ordered to be sent pursuant to Paragraph 6 of this Order.

10.    Pursuant to Federal Rule of Civil Procedure 53, the Court hereby appoints a special master to supervise implementation of the requirements of this Order (the "Special Master").

11.    Any and all disputes arising out of this Order and/or motions or applications seeking to enforce the terms of this Order shall be presented to the Special Master for resolution in the first instance, once the Special Master is appointed.  The Special Master shall have the authority to set the time, place and manner of hearings and other proceedings he or she will conduct; to preside over hearings, whether telephonic or in person; to take evidence in connection with disputes before the Special Master; to make inspections in connection with the requirements of this Order, including inspections of Defendants' facilities and warehouses; to issue orders resolving motions, applications and matters arising out of this Order and/or seeking to enforce the terms of this Order; to issue orders awarding non-contempt sanctions, including, without limitation, the award of attorney's fees; and to issue reports and recommendations on matters for which the Special Master lacks jurisdiction to issue an order, including, without limitation, reports and recommendations regarding contempt sanctions.  In addition to any other filing procedures the Special Master may permit, the Special Master shall permit the filing of *ex parte* applications to enforce the terms of this Order, which must be heard and adjudicated within ten (10) calendar days of filing.  A party may bring an *ex parte* application for relief pursuant to this provision only upon certifying, as an officer of the Court, that such expedited adjudication is required and could not be avoided in due course.  The parties shall file with this Court, contemporaneously, the original of all submissions made to the Special Master such that the Court's Docket shall be complete and include all pertinent submissions.  Third parties shall be bound by the Special Master's orders to the same extent as Orders of this Court.

12.    The Special Master's orders, reports and recommendations shall be treated as rulings made by a Magistrate Judge of this Court and may be reviewed in the same manner and pursuant to the same procedures as this Court reviews such orders, reports and recommendations of a Magistrate Judge.  A court reporter shall

transcribe all hearings and proceedings held before the Special Master.  The Special

Master's fees, and other costs incurred in connection with proceedings before the

Special Master, including the fees of court reporters, shall be paid one-half by

Mattel, Inc. and one-half by MGA Entertainment, Inc. unless, consistent with the

Federal Rules of Civil Procedure, the Special Master orders otherwise.  The Special

Master shall not have *ex parte* communications with a party or counsel.

13.	The Special Master shall be authorized to receive information

designated "CONFIDENTIAL" and "CONFIDENTIAL--ATTORNEY'S EYES

ONLY" pursuant to the protective order dated January 4, 2005.

14.	This Court shall have jurisdiction to interpret and enforce the

terms of this Permanent Injunction and to determine any issues which may arise

concerning this Permanent Injunction.

**IT IS SO ORDERED**.

DATED:  December 03, 2008

_____
Hon. Stephen G. Larson
United States District Judge

# EXHIBIT B

Case 2:04-cv-09049-DOC-RNB Document 4450-2 Filed 12/11/08 Page 14 of 40 Page ID
#:128376
Case 2:04-cv-09049-SGL-RNB Document 4442 Filed 12/03/2008 Page 1 of 8

O

1

2

3

4

5

6

7

8                UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                     EASTERN DIVISION

| | |
|---|---|
| 11   CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
| 12          Plaintiff, | Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727 |
| 13      vs. | |
| 14   MATTEL, INC., a Delaware | ORDER GRANTING DECLARATORY<br>JUDGMENT |
| 15   corporation, | |
| 16         Defendant. | |
| 17   AND CONSOLIDATED ACTIONS | |

18

19

20

21

22

23

24

25

26

27

28

ORDER

1. The Court hereby DECLARES that Mattel owns all right, title and interest, including any and all copyright rights, in and to the Bratz-related works, ideas, and concepts that Carter Bryant conceived or created while employed by Mattel, as found by the jury in this case, including the idea for the name "Bratz" and the idea for the "Bratz" characters, which are protectible property interests as a matter of California state law, and the following works (identified by Trial Exhibit (TX) numbers):

| |
|---|
| TX 5-52, 62-1, 624, 5-74, 62-11, 10537, 15180, 5-75, 62-12, 10538, 15181, 5-111, 708, 5-112, 62-13, 5-113, 5-114, 62-14, 62-15, 1152-1, 1152-2, 10613, 1328, 10033-3, 10033-4 |
| TX 5-88, 35-1, 35-3, 5-101, 1327, 10153-3, 10153-4 |
| TX 5-35, 757 |
| TX 5-36, 701, 702 |
| TX 5-37, 703 |
| TX 5-38, 762 |
| TX 5-43, 709 |
| TX 5-46, 710 |
| TX 5-49, 704 |
| TX 5-50, 705 |
| TX 5-53, 1152-5, 1152-6, 10534, 15175 |
| TX 5-54, 62-2, 620, 774, 775 |
| TX 5-55, 62-3, 785, 1152-9 |
| TX 5-56, 764, 15176 |
| TX 5-57, 776, 777 |
| TX 5-58, 765, 15177 |
| TX 5-59, 739, 740 |
| TX 5-60, 761 |
| TX 5-61, 62-4, 782, 796-1, 1748 |

07209/2641997.3

-2-

[PROPOSED] ORDER

Case 2:04-cv-09049-DOC-RNB Document 4450-2 Filed 12/11/08 Page 16 of 40 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4442 Filed 12/03/2008 Page 3 of 5
#:128378

| |
|---|
| TX 5-62, 62-5, 621, 767, 768, 5-71, 62-10, 770, 1752-1 |
| TX 5-63, 758, 759, 760 |
| TX 5-64, 62-6, 795, 1152-14, 1750 |
| TX 5-65, 1152-7, 1152-8, 11789 |
| TX 5-66, 794, 1152-13 |
| TX 5-67, 62-7, 784, 1152-11, 1152-12, 10535 |
| TX 5-68, 62-8, 781, 786, 790, 1751-4 |
| TX 5-69, 11788, 5-70, 62-9, 623, 783 |
| TX 5-72, 1152-15, 1152-16, 10536, 15179 |
| TX 5-73, 741, 742 |
| TX 5-76, 706 |
| TX 5-77, 707 |
| TX 5-78, 10539, 18501 |
| TX 5-136, 711 |
| TX 10579, 18281 |
| TX 15172 |
| TX 3-1, 779, 780, 1-1, 2-1, 778 |
| TX 3-2, 726, 727, 728, 1-4, 2-5 |
| TX 3-3, 1152-19, 1152-20, 11838, 15182, 1-6, 2-10, 5-104, 10544 |
| TX 3-5, 791, 1-8, 2-2 |
| TX 3-6, 11837, 15184, 1-7, 2-8, 743, 744, 5-107, 1152-17, 1152-18, 10547 |
| TX 3-8, 789, 1-11, 2-9, 734, 5-106, 10546 |
| TX 3-9, 788, 1-10, 2-6, 746, 5-103, 10543 |
| TX 3-10, 735, 736 |
| TX 3-12, 792, 1-3, 2-7, 5-102, 10542 |
| TX 3-13, 793, 1-5, 2-3, 10-3 |
| TX 5-79, 1-9, 2-4, 737, 10545, 5-105 |
| TX 1-2 |
| TX 3-11, |

| | |
|---|---|
| 1 | TX 5-26, 712 |
| 2 | TX 5-27, 713 |
| 3 | TX 5-81, 720 |
| 4 | TX 5-82, 715 |
| 5 | TX 5-83, 723 |
| 6 | TX 3-4, 5-84, 716, 717 |
| 7 | TX 3-7, 5-85, 718, 719, 10-2, 63-1 |
| 8 | TX 5-80, 721, 722, 5-86 |
| 9 | TX 5-87, 5-108, 724, 725 |
| 10 | TX 5-34 |
| 11 | TX 5-89, 35-2, 323-32, 323-33 |
| 12 | TX 1107, 10638 |
| 13 | TX 1108, 10639 |
| 14 | TX 1109, 771 |
| 15 | TX 1110, 773 |
| 16 | TX 5-14, 10515 |
| 17 | TX 5-18, 10518 |
| 18 | TX 5-19, 10519 |
| 19 | TX 5-28, 10526 |
| 20 | TX 5-30 |
| 21 | TX 5-95 |
| 22 | TX 5-96 |
| 23 | TX 5-99 |
| 24 | TX 323-18 |
| 25 | TX 323-19 |
| 26 | TX 323-26 |
| 27 | TX 1136 |
| 28 | The Three Dimensional Item Presented at the Meeting where Mr. Bryant Pitched Bratz to MGA Entertainment, Inc. |

1      2.     The Court further hereby DECLARES that MGA Entertainment Inc.

2 ("MGA"), MGA Entertainment (HK) Ltd. ("MGA Hong Kong") and Isaac Larian do

3 not have any right, title or interest in or to the works, ideas and/or concepts listed

4 above. Any purported assignment from Carter Bryant to MGA of the rights to the

5 works, ideas or concepts listed above, including any purported assignment of such

6 rights in the agreement between MGA and Mr. Bryant dated "as of" September 18,

7 2000, was invalid, ineffectual and void ab initio.

8      3.     In addition, the Court hereby ORDERS that all copyright registrations

9 MGA has obtained in and for the Bratz works listed above, including Registration

10 Nos. VA 1-218-487 (Trial Exhibit 505), VA 1-218-488 (Trial Exhibit 507), VA 1-

11 218-489 (Trial Exhibit 513), VA 1-218-490 (Trial Exhibit 509), VA 1-218-491

12 (Trial Exhibit 511), are subject to a constructive trust in favor of Mattel and have

13 been held by MGA for Mattel's benefit. Mattel is the beneficial owner of such

14 registrations.

15      4.     The Court further hereby ORDERS that all Bratz-related works listed

16 in Paragraph 1 above are subject to a constructive trust in favor of Mattel and that

17 Defendants shall deliver the originals of such works to Mattel forthwith.

18      IT IS SO ORDERED.

19

20

21 DATED: December 3, 2008

22                     _____

Hon. Stephen G. Larson
United States District Judge

23

24

25

26

27

28

[PROPOSED] ORDER

# EXHIBIT C

O

1

2

3

4

5

6

7

8 UNITED STATES DISTRICT COURT

9 CENTRAL DISTRICT OF CALIFORNIA

10 EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) Consolidated with Case Nos. CV 04-09059 & CV 05-2727 |
| Plaintiff, | |
| vs. | **ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING LIABILITY AND INJUNCTIVE RELIEF PURSUANT TO CAL. BUS. & PROF CODE § 17200** |
| MATTEL, INC., a Delaware corporation, | |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |

## ORDER

Having considered Mattel, Inc.'s ("Mattel") Motion for Constructive Trust and for a Finding of Liability and Injunctive Relief Pursuant to <u>California Business & Professional Code</u> § 17200, and all other papers and arguments submitted in connection therewith, as well as the evidence admitted at trial and the jury's verdicts in the Phase 1 trial, the Court hereby GRANTS the Motion against MGA Entertainment Inc. ("MGA"), MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), and Isaac Larian ("Larian") (collectively the "MGA Defendants"):

1.    A constructive trust in favor of Mattel on all rights to trademarks, service marks and domain names held by MGA or Larian, or any person or entity acting on their behalf or for their benefit, anywhere in the world that include the terms "Bratz" or "Jade," including all such trademark registrations and trademark applications (including, without limitation, United States Trademark Registrations identified by Registration Nos. 3206114, 3327385, 3150045, 3087710, 3055465, 3072141, 3127890, 3024713, 2989052, 2911097, 3080450, 2921772, 3071614, 2803235, 2848386, 2795675, 2776558, 2848281, 2751890, 2671473, 2787942, 2789216 and 2836780 and United States Trademark Applications identified by Serial Nos. 78530196, 78571028, 78706504, 78706502, 78819868, 78857100, 78490324, 77443372 and 77575881), and the good will inhering therein, as well as all such domain name registrations, is HEREBY ORDERED and all rights therein are ORDERED transferred to Mattel.

2.    MGA and Larian are HEREBY ORDERED to (a) identify all trademark registrations and applications held by them, or any person or entity acting on their behalf or for their benefit, anywhere in the world that include the terms "Bratz" or "Jade," (b) identify all marks that include the terms "Bratz" or "Jade" in which they, or any person or entity acting on their behalf or for their benefit, claim to own trademark rights, whether or not such marks are subject to existing trademark registrations or pending trademark applications, (c) identify all domain

Case 2:04-cv-09049-DOC-RNB Document 4450-2 Filed 12/11/08 Page 22 of 40 Page ID
#:128384
Case 2:04-cv-09049-SGL-RNB Document 4441 Filed 12/03/2008 Page 3 of 9

1   names and domain name registrations held by them, or any person or entity acting
2   on their behalf or for their benefit, anywhere in the world that include the terms
3   "Bratz" or "Jade," and (d) execute any and all documents necessary to effect the
4   transfer and/or assignment of such marks and domain names and associated
5   applications and registrations to Mattel.  MGA shall fully comply with (a), (b) and
6   (c) of this paragraph within fourteen (14) calendar days of the date of this Order.

7          3.     The Court HEREBY FINDS that the MGA Defendants violated
8   <u>California Business and Professions Code</u> § 17200 and are liable to Mattel on its
9   twelfth claim for relief for unfair competition.

10         4.     The MGA Defendants, along with their respective officers,
11  directors, principals, agents, representatives, servants, employees, affiliates,
12  successors or assigns, and any person or entity acting on their behalf or in concert or
13  participation with them, are HEREBY PERMANENTLY ENJOINED from (a)
14  using the terms "Bratz" or "Jade," either alone or in combination and whether as a
15  trademark, domain name or otherwise, in connection with the manufacture,
16  promotion, advertising, distribution, offering for sale or sale of any goods or
17  services anywhere in the world and (b) taking any action to preclude Mattel from
18  using the terms "Bratz" or "Jade" in any such manner, including without limitation
19  as a mark in connection with goods and services.

20        **IT IS SO ORDERED.**

22  DATED:  December 3, 2008

                                        _____
Hon. Stephen G. Larson
United States District Judge

# EXHIBIT D

Case 2:04-cv-09049-DOC-RNB Document 4459-23 Filed 12/11/08 Page 24 of 40 Page ID
#:128386
Case 2:04-cv-09049-SGL-RNB Document 4439 Filed 12/03/2008 Page 1 of 9

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                          Date: December 3, 2008
Title:      MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
=======================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

      James Holmes                              None Present
      Courtroom Deputy Clerk                    Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:    ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                         None Present

PROCEEDINGS:

**ORDER FINDING IN FAVOR OF MATTEL AS TO THE MGA PARTIES' AFFIRMATIVE
DEFENSES**

**ORDER GRANTING MATTEL'S MOTION FOR DECLARATORY JUDGMENT (DOCKET #4303)**

**ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND § 17200
INJUNCTIVE RELIEF (DOCKET #4305)**

**ORDER GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION (DOCKET #4306)**

**ORDER DENYING AS MOOT MOTION TO STRIKE PORTIONS OF HUTNYAN DECLARATIONS
AND EXHIBITS THERETO (DOCKET #4351)**

**ORDER DENYING MOTION TO STRIKE THE PROCTOR, KEISER, AND HOLLANDER
DECLARATIONS (DOCKET #4352)**

**ORDER DENYING AS MOOT MOTION TO STRIKE MEYER DECLARATION (DOCKET #4377)**

**ORDER STAYING COURT'S ORDER PENDING CONSIDERATION OF THE PARTIES' POST-**

**TRIAL MOTIONS**

**ORDER SETTING FORTH FURTHER BRIEFING SCHEDULE**

**ORDER REGARDING DISCOVERY MASTER PROPOSALS FOR PHASE 2**

**ORDER REGARDING JOINTLY LODGED LAPTOP COMPUTER**

**ORDER REGARDING SERVICE OF PERMANENT INJUNCTION**

**FILED CONCURRENTLY HEREWITH:**

**(1) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING DECLARATORY JUDGMENT**

**(2) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING LIABILITY AND INJUNCTIVE RELIEF PURSUANT TO CAL. BUS. & PROF. CODE § 17200**

**(3) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION**

These matters were heard on November 10, 2008, after extensive briefing by the parties. After a two-phase jury trial, the Court considers certain equitable issues (referred to as Phase 1C of the trial) and enters the following Order. Filed concurrently herewith are: (1) Mattel's Proposed Order (as modified by the Court) Granting Declaratory Judgment; (2) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Constructive Trust and for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Prof. Code § 17200; and (3) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Permanent Injunction.

In reaching the rulings set forth herein, the Court has considered the parties' briefs and exhibits submitted during Phase 1C of the trial, the arguments of counsel, as well as the entire record (including the evidence properly submitted in Phase 1A and Phase 1B of the trial) and its previous Orders.

The Court refers collectively to all defendants herein, including MGA CEO Isaac Larian ("Larian"), as "the MGA parties". MGA Entertainment, Inc., is referred to as "MGAE".

The Court has carefully and deliberately considered the parties' well-presented legal and equitable arguments, authorities, and evidence concerning the motions identified above. In its final analysis, the Court finds, as did the jury, that the preponderance of evidence establishes that Carter Bryant ("Bryant") created and developed the name, the concept, and, together with Margaret Leahy, the prototypical sculpt for the hugely-successful Bratz brand of female fashion

MINUTES FORM 90
CIVIL -- GEN

2

Initials of Deputy Clerk: jh

dolls while working as an employee of Mattel and while bound by the terms of an Inventions Agreement, which provided that all rights to such property, and the property itself, belong to Mattel. Moreover, the Court further finds, as did the jury, that the preponderance of the evidence establishes that Isaac Larian and MGAE intentionally interfered with Bryant's contractual relations with Mattel, aided and abetted Bryant's breach of fiduciary duty to Mattel, aided and abetted Bryant's breach of his duty of loyalty to Mattel, and unlawfully converted certain property of Mattel. Finally, the Court finds, as did the jury, that the preponderance of the evidence establishes that the MGA parties, in further developing, producing, and marketing its Bratz brand of female fashion dolls, are liable to Mattel for copyright infringement.

### I. The MGA Parties' Affirmative Defenses

Through its "Statement of Position Regarding Phase 1C Issues" (docket #4308), the MGA parties seek the Court's verdict in their favor as to their affirmative defenses of laches, estoppel, and waiver. As set forth below, the Court rules in favor of Mattel, and against the MGA parties as to these three remaining affirmative defenses.[1]

### A. Laches

Laches is an equitable defense that may bar a claim where a defendant establishes "(1) lack of diligence by the plaintiff, and (2) prejudice to the defendant." Grand Canyon Trust v. Tucson Elec. Power Co., 391 F.3d 979, 987 (9th Cir. 2004). The MGA parties establish neither element.

Because the Court has already found that all the claims asserted against the MGA parties were filed within the applicable limitations periods, the Court starts with the presumption that laches is inapplicable. Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002).

Mattel has not delayed in bringing its claims against the MGA parties. The Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed approximately a year later on November 4, 2004. MGAE intervened in Mattel's suit against Bryant approximately one month later on December 7, 2004. See Dec. 7, 2004, Stip. & Order (04-9059 docket #36) ("MGA[] believes . . . that it has a significantly protectable interest relating to the subject matter of the action, . . . and that MGA's interest is not adequately represented by the existing parties."). Thereafter, the parties briefed Mattel's motion to remand (filed on December 1, 2004, and denied on March 4, 2005), before a stay was entered in the case on May 20, 2005, pending the Ninth Circuit's consideration of an

---

[1] By advancing only the affirmative defenses of laches, estoppel, and waiver in their Phase 1C brief, the MGA parties have implicitly waived the right to pursue any other affirmative defenses that they have not already expressly waived.

interlocutory appeal. After MGAE's intervention and before the stay was entered, the parties, including MGAE, engaged in discovery, and the Court considered certain discovery motions, including a motion to compel the deposition of Isaac Larian filed on March 17, 2005. The stay remained in place until after the Ninth Circuit affirmed the Court's denial of the motion to remand; it was lifted on May 16, 2006. Six months later, on November 17, 2006, Mattel sought leave to file its claims against the MGA parties. On this record, the Court finds no lack of diligence by Mattel.

Nor have the MGA parties shown they suffered resulting prejudice. MGAE was permitted to intervene in the lawsuit filed by Mattel against Carter Bryant only one month after it became evident that its rights could potentially be affected, and it did so with the express purpose of protecting its own rights. The other MGA parties have not shown that they suffered any prejudice unique to them or that the intervention by MGAE was not designed to protect their rights.

Moreover, the record does not support the evidentiary prejudice claimed by the MGA parties, and the record is devoid of any expectation-based prejudice (i.e., evidence of what MGA would have done differently had the claims against them been asserted sooner). Indeed, to the contrary, the record reveals that the MGA entities have continued to promote (and profit from) the Bratz brand during the entire pendency of the current litigation.

Because of the presumption that laches will not bar timely claims, and because the Court finds that the MGA parties have failed to establish either element of laches, the Court finds in favor of Mattel as to the affirmative defense of laches.

## B.    Estoppel

For equitable estoppel to preclude Mattel's claims here, the MGA parties must establish four elements:

> (1) [T]he party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

Strong v. County of Santa Cruz, 15 Cal.3d 720, 725 (1975).

The MGA parties cannot establish the first element because, as noted above, the Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed almost a year later.

The MGA parties have produced no evidence that Mattel intended them to act upon any apparent intention to refrain from asserting any claims against them. To the contrary, MGAE quickly intervened in Mattel's suit against Bryant to protect its interests.

MINUTES FORM 90
CIVIL -- GEN

4

Initials of Deputy Clerk: jh

Moreover, the MGA parties had no basis upon which to rely on Mattel's conduct. As found by the jury, they had superior knowledge regarding Bryant's creation of the Bratz drawings (and the timing of that creation).

Because the Court finds that the MGA parties cannot establish all the elements of estoppel, the Court finds in favor of Mattel as to the affirmative defense of estoppel.

## C.    Waiver

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." United States v. King Features Entertainment, Inc., 843 F.2d 394, 399 (1988).

Here, the MGA parties contend that Mattel's tolerance of its employees' "moonlighting" for its competitors was so widespread as to constitute such a relinquishment. Although such implied waivers may be found where a plaintiff's conduct "is so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished," Medico-Dental etc. Co. v. Horton & Converse, 21 Cal.2d 411, 432 (1942), no such conduct is present here.

No evidence of record suggests that Mattel tolerated the type of conduct in which Bryant engaged. The Court has previously addressed, and will not belabor here, the distinctions to be made between the limited evidence regarding "moonlighting" in the record and the conduct in which Bryant engaged. The evidence establishes, and the jury found, that while employed by Mattel as a fashion designer, Bryant preliminarily developed designs for and pitched a line of fashion dolls to Mattel's direct competitor. There is no evidence that Mattel has ever tolerated this type of conduct. Instead, several witness testified to their belief that such conduct would result in immediate termination of the offending employees. Indeed, the record is replete with details of the steps taken by Bryant, the MGA parties, and MGA employees to conceal the extent of Bryant's involvement in the Bratz project while he was employed by Mattel.

The Court finds in favor of Mattel as to the affirmative defense of waiver.

## II.  Declaratory Relief Motion (docket #4303)

In its motion for declaratory judgment, Mattel seeks, pursuant to its thirteenth cause of action, a declaration of its rights (and the MGA parties' lack of rights) regarding the Bratz-related works, including certain drawings, sculpts, and ideas.[2] Mattel also seeks imposition of a

---

[2] The parties and the Court are all equally aware that ideas are not copyrightable. However, they are, as set forth in the Court's summary judgment order, assignable under California state law. As noted in the Court's summary judgment order, such an assignment was made by Bryant to Mattel.

constructive trust as to MGA's copyright registrations in certain Bratz drawings. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Declaratory Judgment (docket #4303).

In opposition, the MGA parties contend that the relief sought by Mattel should not be granted because it is preempted by the Copyright Act. The Court rejects this argument. The Court's ruling regarding preemption is set forth in the Court's summary judgment order, which the Court does not here modify.

Declaratory relief is generally granted "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Bilbrey by Bilbrey v. Brown, 738 F.2d 1462, 1470 (1984).

Here, considering this legal standard and based on the relationship among the parties, the jury's verdicts, the Court's previous Orders, and the entire record, the Court finds that the declaratory relief sought by Mattel is appropriate.[3] Concurrently herewith, the Court has entered, as modified, Mattel's proposed order for declaratory relief.

### III. Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4505)

As set forth more fully in its Motion, Mattel seeks, pursuant to California state law, imposition of a constructive trust over the trademarks "Bratz" and "Jade." Mattel also seeks, pursuant to its twelfth cause of action, a finding that the MGA parties violated Cal. Bus. & Prof. Code § 17200 on the basis of the jury's findings that the MGA parties converted Mattel's property, tortiously interfered by Mattel's contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty. Pursuant to this finding, and in addition to imposition of a constructive trust as to the Bratz and Jade marks, Mattel seeks an injunction prohibiting the MGA parties from using these marks. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4305).

### A. Constructive Trust

Cal. Civ. Code § 2223 provides that "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Cal. Civ. Code § 2224 explicitly addresses things gained by wrongful acts: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." The parties agree on the resulting elements, which may be stated as

---

[3] The appropriateness of the constructive trust remedy is discussed below, in a separate section, but applies equally here.

MINUTES FORM 90
CIVIL -- GEN

6

Initials of Deputy Clerk: jh

follows: "(1) the existence of a *res* (property or some interest in property); (2) the right of a complaining party to that *res*; and (3) some wrongful acquisition or detention of the *res* by another party who is not entitled to it. Communist Party v. 522 Valencia, Inc., 35 Cal.App.4th 980, 990 (1995).

Significantly, because the purpose of a constructive trust is to prevent unjust enrichment, enhancement of value is given to the beneficiary of the constructive trust. Haskel Engineering & Supply Co. v. Hartford Acc. & Indem. Co., 78 Cal.App.3d 371, 375 (1978)

Here, the jury found that the MGA parties wrongfully acquired the idea for the name "Bratz" along with the idea and preliminary drawings for a line of fashion dolls. The same is true for the one Bratz character who retained the name given her by Carter Bryant: "Jade."[4]  In addition to wrongfully acquiring them, the MGA parties continue to wrongfully retain them. The MGA parties enhanced the value of the names by acquiring trademark rights to them. California law requires, in this instance, that a constructive trust be imposed as to these marks. Mattel is the beneficiary of the constructive trust and MGA's trademarks in "Bratz" and "Jade" inure to Mattel's benefit.

In making this conclusion, the Court has considered, and rejected, the MGA parties' argument that Mattel has disavowed an intention to seek this remedy or waited too long to seek it. Mattel has conceded that it is not asserting a trademark infringement claim. It cannot, because it has not used the relevant marks in commerce, and one must do so to acquire trademark rights. Conversive, Inc. v. Conversagent, Inc., 433 F.Supp.2d 1079, 1089 (C.D. Cal. 2006) (citing Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 (9th Cir. 1999)). However, Mattel has not disavowed its intent to seek a constructive trust over the marks that were created by Bryant, with rights thereto acquired by the MGA parties through registration and use in commerce. This remedy is well within the scope of relief that is sought in Mattel's second amended answer and counterclaims, see SAAC at 73 ¶ 9 (Prayer for Relief) (seeking "imposition of a constructive trust over Bratz, including without limitations registrations and applications for registrations relating thereto made or filed by [the MGA parties] and third parties, and all profits, monies, royalties and any other benefits derived or obtained from [the MGA parties'] exercise of ownership, use, sale, distribution and licensing of Bratz"), and the Court has rejected all timeliness challenges to Mattel's claims.

## B.    § 17200 Violation

The record reveals sufficient evidence of injury-in-fact to Mattel to confer standing upon it to assert its § 17200 claim. Specifically, as testified to by Mattel officers (and acknowledged by MGAE officers and attorneys), Mattel has suffered lost market share as a result of the sales of the Bratz dolls. Moreover, the jury was instructed that "harm" to Mattel was a necessary element of a number of state law claims. See Final Jury Instructions as Given [Phase 1A], docket #4115, at

---

[4]  Bryant's other characters were re-named before they were marketed:  Zoe became the now-familiar Cloe, Hallidae became Sasha, and Lupe became Yasmin.

MINUTES FORM 90
CIVIL -- GEN                                  7                      Initials of Deputy Clerk: jh

Instruction Nos. 22, 25-27, and 29 (intentional interference with contractual relations, aiding and abetting breaches of fiduciary duty and the duty of loyalty, and conversion). The jury's finding in favor of Mattel as to those claims necessarily implies a factual finding by the jury as to the specified element of harm to Mattel and, as explained in more detail below, the Court is bound by that implicit factual finding. Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (finding that by awarding damages on a specific claim, the jury implicitly found that the plaintiff had proven one particular element of that claim).

As set forth in a previous Order, this claim is only partially preempted by the Copyright Act. The preempted portion of Mattel's § 17200 claim did not survive summary judgment and is not at issue here.

Based on the jury's findings that the MGA parties converted Mattel's property, tortiously interfered with its contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty, the Court finds that the MGA parties also violated Cal. Bus. & Prof. Code § 17200.

## C.  § 17200 Injunctive Relief

Where a Court finds violation of § 17200, it has broad powers to shape appropriate injunctive relief:

> Any person who . . . has engaged . . . in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, . . . as may be necessary to prevent the use or employment by any person of any practice which [either] constitutes unfair competition, . . . or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

Cal. Bus. & Prof. § 17203.

The injunction sought by Mattel's proposed order (as modified by the Court) is necessary to restore to Mattel the property acquired as a result of the MGA parties' unfair competition.

For the reasons set forth above, concurrently herewith, the Court has entered, as modified, Mattel's proposed order for constructive trust and § 17200 injunctive relief.

### IV. Motion for Permanent Injunction (docket #4306)

## A.  Facts Supporting Injunctive Relief

The present motions, to varying degrees, implicate the question of to what extent a Court trying equitable claims is bound by a jury's factual findings related to the same underlying conduct.

MINUTES FORM 90
CIVIL -- GEN

8

Initials of Deputy Clerk: jh

The question comes into sharpest focus in Mattel's Motion for Permanent Injunction.

"[W]here legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations." Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (internal quotation marks and citation omitted). In the absence of an express finding, a court must determine whether implicit factual determinations by the jury can be inferred, and should consult the jury's verdict and the jury instructions to make this determination. Id. (finding, based on an examination of the jury instructions and the jury's verdict awarding damages as to a specific claim, that the jury implicitly found that plaintiff had proven one particular element of that claim).

The Court is certainly aware that the jury returned an award of damages that was far less than that sought by Mattel. Moreover, the Court is aware that a controversy exists as to the actual amount of the jury's verdict. See Mattel's Submission Regarding Email from Juror No. 7 and Request to Recall the Jury, docket #4288 (denied by Order dated September 3, 2008, docket #4295).

MGA has argued that the jury has found that only the so-called "first generation" Bratz dolls were infringing. The jury made no express finding on this issue; the general verdict form they were provided did not request such a detailed finding. Thus, in accordance with Gates, the Court looks to the jury instructions to determine any implicit findings.

The jury was instructed that "Mattel is entitled to recover any profits attributed to the infringement." MGA attempts to equate the $10 million figure awarded by the jury for copyright infringement to the amount of profits related to the first generation Bratz dolls. The difficulty with this "equation" is that it is woefully unbalanced. To be sure, MGA's damages expert presented evidence that the first generation Bratz dolls netted approximately $4 million in profits; had the jury awarded this amount as copyright damages, then the Court might be persuaded that the jury implicitly found that the infringement was limited to the first generation Bratz dolls. But that is not the case. The factual finding advanced by MGA cannot be inferred from the jury award.

In making this ruling, the Court is mindful of the jury's note that queried whether they could find infringement as to the first generation dolls and no other dolls. The Court, without objection from counsel, answered that question affirmatively. Although this note reveals that the jury considered limiting their finding of infringement to the first generation, it does not reveal that they ultimately chose that conclusion. Again, had the jury awarded an amount equal to the amount of profits generated by the first generation Bratz dolls, the Court would find, based on the award and the jury's note, that the jury implicitly found infringement as to the first generation Bratz dolls only.

Alternatively, counsel posited at oral argument, that the jury found that a large portion of the

Bratz dolls infringed Mattel's copyrights, but only in very minute ways.[5]  Counsel likened the jury's damage award to a rug that, no matter which way one moved it, simply would not cover the floor. See Nov. 10, 2008, Tr. at 100-101.  Counsel explained that the jury's findings led to one conclusion or the other and, regardless of which conclusion was chosen, the jury's finding did not support an injunction:

> The rug is too small for an injunction, regardless of how you allocate that money.  You either come up with a vanishingly small subset of infringing products, or you come up with a vanishingly small percentage of infringement by all of the products.  And the jury has put that cap for us.

Id.  Although colorful, counsel's metaphor is not helpful.  Assuming that the Court would be bound by a jury's factual finding in a case where only two possible inferences -- both of which would lead the Court to the same conclusion -- were possible, this is not that case.

Where a jury returns a monetary award based on a particular piece of evidence such as an expert report, the Court will infer the factual findings that necessarily flow from it.  But where, as here, the Court and the parties are left to hazard various guesses as to the jury's intentions, the Court can make no principled inferences and must therefore engage in its own fact-finding.[6]

The Court has carefully examined each of the exhibits attached to the proposed preliminary injunction, as well as the actual exhibits being stored in Courtroom Four of the U.S. Courthouse in Riverside, and finds that the dolls depicted in Exs. 3 and 4, and the products depicted in Exs. 5 and 6, are, pursuant to the standard set forth in the Court's Orders dated July 24, 2008, and August 15, 2008, substantially similar to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2.  In doing so, the Court has first examined the specific expressive elements of the works at issue and has compared them to those found in the exhibits referenced

---

[5]  This argument was not raised in the opposition papers filed by the MGA parties, and is rejected for that reason as well.  See Opp. at 21 ("Here, the circumstances clearly show that the only reasonable conclusion to draw is that the jury's infringement finding was limited to a small universe of products, specifically the first generation Bratz dolls as clothed and packaged.") (emphasis added).

[6]  The MGA parties hazard such a guess in their opposition, wherein they attempt to explain how, in the jury's mind, $4 million in first-generation profits could equate to $10 million total copyright infringement award:  "The jury's decision to award $6 million against MGA[E] (and $10 million total) rather than simply the $4 million] argued by MGA as profits for the first generation may be due to the jury believing that MGA's proffer of $4 million in profits on nearly $80 million revenue was a bit low."  Opp. at 21 n.30.  This guessing game illustrates why no factual findings can be inferred from the jury's copyright infringement award and why the Court is obligated to make its own factual findings.

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

above, and the Court has then further examined the overall similarity of the expression in various works from the perspective of the ordinary observer. Although the Court recognizes that there are differences between the works, the Court ultimately finds that those dolls and products set forth in the above-referenced exhibits are **substantially similar** to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2. Especially important to the Court's conclusion is the consistency of the particularized expression of the dolls' heads, lips, eyes, eyebrows, eye features, noses, as well as the particularized expression of certain anatomical features relative to others (most notably the doll lips, doll eyes, doll eyebrows, and certain other doll eye features) and de-emphasis of certain anatomical features (most notably the minimalized doll nose and thin, small doll bodies). Also important to the Court is the particularized, synergistic compilation and expression of the human form and anatomy that quite clearly expresses a unique style and conveys a distinct look or attitude, especially as perceived by the intended consumer market (7-12 year old girls). The evidence on this latter point is particularly compelling, supported by both analytical and market analysis. Together, these features clearly give each of the dolls the particularized expression to which the Court referred in its July 24, 2008, and August 15, 2008, Orders.

## B.    Standard for Awarding Permanent Injunctive Relief

The Supreme Court recently announced the standard for granting a permanent injunction:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

### 1.    Irreparable Injury

The Court begins, then, by looking to whether Mattel has established that it will suffer irreparable injury if an injunction is not granted.

Prior to the eBay decision, where a plaintiff sought a preliminary injunction, irreparable injury was presumed in intellectual property cases; in light of the eBay decision, some doubt has been cast on whether courts should continue to apply that presumption. See Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683, 702 (Fed. Cir. 2008) (noting that the continuing viability of the presumption is "an open question").

Mattel has established its exclusive rights to the Bratz drawings, and the Court has found

MINUTES FORM 90
CIVIL -- GEN

11

Initials of Deputy Clerk: jh

that hundreds of the MGA parties' products -- including all the currently available core female fashion dolls Mattel was able to locate in the marketplace -- infringe those rights. The MGA parties have evinced an intention to continue marketing those dolls. This represents a wholesale inability on the part of Mattel to enforce its exclusive rights under the Copyright Act, amounting to irreparable harm. Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005).

MGA criticizes Mattel's reliance on Taylor, citing Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F.Supp.2d 1197, 1211 n.13 (C.D. Cal. 2007) (Wilson, J.). The Grokster case holds that, in copyright permanent injunction cases, a presumption of irreparable injury is not permitted in light of eBay. In Grokster, the court rejected the rationale of Taylor, stating:

> [T]his Court is not persuaded by the Eighth Circuit's pre-eBay conclusion in Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005), that because "[a plaintiff] certainly has the right to control the use of its copyrighted materials, . . . irreparable harm inescapably flows from the denial of that right." In substance, such language is nothing more than a disguised presumption, particularly with the use of the word "inescapably." After eBay, Plaintiffs cannot rely on the pure fact of infringement in order to establish irreparable harm.

Grokster, 518 F. Supp.2d at 1211 n.13. Judge Wilson's point is well-taken. Although the Taylor court did not purport to apply a presumption of irreparable harm, its use of the word "inescapably" in this phrase certainly could indicate that it was merely presuming irreparable harm. However, a review of the Taylor case makes clear that the Eighth Circuit considered the implications of allowing an infringer to continue to infringe: "[I]n copyright infringement actions, the denial of a request for injunctive relief could otherwise "amount to a forced license to use the creative work of another." Taylor Corp., 403 F.3d at 967-68. This rationale removes Taylor further from the application of a "disguised presumption" of irreparable harm and closer to an actual finding of irreparable harm.

At least one district court within the Ninth Circuit is in accord with the Court's decision today, as it has decided, post-eBay, that a plaintiff who establishes past infringement and the threat of future infringement amounts to irreparable harm. Designer Skin, LLC v. S & L Vitamins, Inc., 2008 WL 4174882 at *5 (D. Ariz. 2008) (Teilborg, J.). Judge Teilborg's rationale is well articulated:

> Whatever else might be said against the propriety of a rule that holds that past infringement plus the threat of future infringement equals irreparable harm, it seems clear to this Court that such a rule would not run afoul of eBay's directives. First of all, the eBay Court did not address the showing necessary to establish "irreparable harm." It merely held that the plaintiff has the burden of proving it. Second, this two-part test does not resurrect the presumption of irreparable harm impliedly laid to rest by the eBay court. It simply recognizes that a

MINUTES FORM 90                                                              Initials of Deputy Clerk: jh
CIVIL -- GEN                                     12

> plaintiff meets the burden of proving irreparable harm by making this
> two-part showing. And finally, the two-part test does not represent a
> rule [prohibited by eBay] that an injunction automatically follows a
> determination that a copyright has been infringed. . . . In exercising
> their equitable discretion, courts would still have the freedom to deny
> injunctive relief when the public interest or the balance of hardships
> weighs against such relief.

Designer Skin, 2008 WL 4174882 at *5 (citation omitted).

Indeed, this is not so complex an issue as applied to the facts of this particular case. The statutory directive to the Court is clear: "Any court having jurisdiction of a civil action arising under this title may, . . . grant temporary and final injunctions on such terms as it may deem reasonable *to prevent or restrain infringement of a copyright*." 17 U.S.C. § 502 (emphasis added). The Court can envision no case more appropriate for a finding of irreparable harm. Here, as the record shows and as the jury found, an employee bound by contract and fiduciary duty to communicate to his employer (and keep confidential from all others) all copyrightable works he creates during the term of his employment, not only fails to so communicate but actually secretly purports to convey the rights thereto to a direct competitor of his employer. The rights to those works are actively concealed from their true owner (by both the employee and the competitor) for years while the competitor exploits the works, reaping profits therefrom totaling hundreds of millions of dollars. After millions of pages of discovery are produced, thousands of filings are submitted, scores and scores of motions are decided by the Court, and after months of trial and two jury verdicts in favor of the plaintiff, defendants remain steadfast in their intention to continue to produce their infringing products. Viewed in this light, Mattel has established irreparable injury on the basis of the MGA parties' past infringement and the high probability of continued acts of infringement.

### 2.    Inadequate Legal Remedies

Unless MGA is enjoined, Mattel would be forced to sue each retailer and distributor to stop the sale and distribution of the infringing dolls; therefore, the legal remedies are inadequate. See Continental Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1105 (9th Cir. 1994).

### 3.    Balance of Equities

Factually, the hardship on MGA weighs very heavily upon the Court. The Court has expressed its concerns in this regard on the record. The evidence at trial showed that, at least historically, Bratz is the brand that has made MGA profitable. And the proposed injunction addresses the core of that brand -- most notably, the female fashion dolls.

However, where, as here, the only hardship that will be suffered is lost profits from the cessation of its infringing activities, the Court, in the final analysis, must afford this very little -- if any -- weight. Triad Systems Corp. v. Southeastern Exp. Co., 64 F.3d 1330, 1338 (9th Cir. 1995) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has

MINUTES FORM 90
CIVIL -- GEN                                 13                    Initials of Deputy Clerk: jh

been shown likely to be infringing, such an argument in defense merits little equitable consideration . . . .") (internal quotation marks and citations omitted), accord, Cadence Design Systems, Inc. v. Avant! Corp., 125 F.3d 824, 829-30 (9th Cir. 1997) (collecting cases). The balance of equities favor Mattel.

### 4. Public Interest

There is a strong economic interest, especially in these troubled economic times, in maintaining a profitable enterprise as a going concern. However, there is also a strong public interest in enforcing copyright laws in a uniform manner. Indeed, nothing is more essential to long-term economic prosperity than the stability provided by the rule of law. Although the MGA parties raise excellent points in their opposition, in the end, the public interest is served by precluding defendants from engaging in copyright infringement. The injunction issued by the Court does no more than that.

### C. Scope of Injunction

The scope of the permanent injunction is set forth in a separate order. Four issues raised in the parties' papers warrant the brief discussion that follows.

### 1. Impoundment and Destruction

As set forth more fully in its motion, Mattel seeks impoundment of Bratz dolls and destruction of the specialized plates, molds, and matrices used to make them. Impoundment of existing infringing products and the destruction of the means to make those products are clearly remedies contemplated by the Copyright Act. See 17 U.S.C. § 503(a). The MGA parties argue that these remedies are inappropriate because there is no ongoing infringement or, at the very least, its products infringe very little. In its findings supporting the issuance of a permanent injunction, the Court has rejected this premise, and the Court finds that the requested impoundment and destruction is an appropriate remedy.[7]

### 2. Recall

In light of the scope of infringement found by the Court, and in light of the fact that the injunction addresses products that directly compete with Mattel's products, the Court has ordered the recall of infringing products from retailers. See CyberMedia, Inc. v. Symantec Corp., 19 F.Supp.2d 1070, 1079 (N.D. Cal.1998); Patry on Copyright, § 22:81.

---

[7] No party shall destroy any of the implements used to make the Bratz dolls that are the subject of the permanent injunction absent a specific order of this Court authorizing such destruction.

MINUTES FORM 90
CIVIL -- GEN                          14                    Initials of Deputy Clerk: jh

### 3. Royalty

The MGA parties argue that the more appropriate remedy to be imposed here is for the Court to order a royalty instead of an injunction. The difficulty in this proposal is that it is premised on the idea that the ongoing infringement, if any, is minute. See Opp. at 29-32 (suggesting a royalty of .3% would be appropriate). As noted above, the Court has rejected this premise. Moreover, although the Court has been hopeful that an out-of-court resolution involving such a remedy may have been obtained, and has gone to great lengths to encourage both sides to pursue such a resolution in good faith, their failure so far to do so underscores the Court's present view, which is based on the evidence and argument of record, that the hostility between these parties is such that this form of remedy is unworkable.

### 4. Appointment of a Special Master

Mattel suggests that the Court appoint a special master to "monitor implementation of the relief granted by the Court." Motion at 28. The MGA parties have not indicated their position on this issue. The appointment of a special master to monitor implementation of the permanent injunction is warranted; this task could easily overwhelm the Court's resources. Subject to the Court's consideration of any in camera objections submitted to the Court by the parties, the Court will select a Special Master from the list submitted below.

### V. Motion to Strike Portions of Hutnyan Declarations and Exhibits Thereto
### (docket #4351)

The MGA parties move to strike certain evidence offered by Mattel on the issue of harm suffered by Mattel, contending the evidence is inadmissible. This motion is **DENIED AS MOOT.** Although Mattel has offered additional evidence of harm, the Court has found the evidence of harm to Mattel offered during Phases 1A and 1B sufficient to resolve the issues presented in the current motions.

### VI. Motion to Strike the Proctor, Keiser, and Hollander Declarations
### (docket #4352)

The motion is **DENIED** as to the Proctor declaration. The declaration is a helpful presentation of appropriate argument and/or observations of counsel for the Court's consideration.

The motion is **DENIED** as to the Keiser declaration. The Keiser declaration authenticates two-dimensional depictions of three-dimensional models he scanned using a sophisticated scanning machine.

The motion is **DENIED** as to the Hollander declaration. This declaration was the subject of extensive briefing in MGA's motion in limine 8, which the Court has reviewed. Hollander's declaration, which presents survey evidence of the target market, is relevant to application of the

intrinsic test.  The Court, in fact, instructed the jury to consider how girls 7 to 12 would view the Bratz dolls.  Hollander's survey attempts to determine just that.  The Court has considered the methodological flaws pointed out by MGA in weighing the evidence Hollander presents.

## VII. Motion to Strike Meyer Declaration (docket #4377)

Mattel moves to strike the Meyer declaration.  This motion is **DENIED AS MOOT.**  This declaration sets forth a calculation justifying the proposed .3% royalty.  The Court has rejected the proposal that a royalty be imposed.

## VIII. Stay of this Order

This Order, and the three concurrently filed orders, are stayed pending the Court's consideration of the parties' post-trial motions.  This stay shall remain in place until lifted by further Order of this Court.

## IX. Briefing Schedule for Post-Trial Motions

Notwithstanding the Court's earlier order, the motions referred to in ¶ 3 of the Court's September 2, 2008, Order may be filed no later than December 22, 2008.  Response briefs may be filed no later than January 12, 2009.  Replies may be filed no later than January 19, 2009.  A hearing on this matter is set for Wednesday, February 11, 2009, at 10:00 a.m., in Courtroom One of the above-referenced Court.

## X. Discovery Master Proposals for Phase 2

The Court previously stated that it would submit for counsel's consideration the names of potential Discovery Masters for Phase 2 that possess both the resources to handle the scope of the anticipated discovery disputes as well as the personal confidence of this Court.  The Discovery Master would serve pursuant to the same terms and conditions of the Phase 1 Discovery Master.  In addition, as noted above, the Court also intends to appoint a Special Master to oversee implementation of the permanent injunction.  The Court provides for counsels' consideration the following individuals who meet the Court's requirements, and have indicated to the Court a willingness and an ability to serve in one or both of these roles.  Counsel are directed to file any objections to any or all of the proposed Masters on or before December 22, 2008.  Any such objections are to be submitted *in camera* and under seal with the Court.  After considering any objections, as well as any preferences expressed by the parties, the Court will make an appointment at the appropriate time.

MINUTES FORM 90
CIVIL -- GEN

16

Initials of Deputy Clerk: jh

Patrick A. Fraioli, Jr.
Moldo Davidson et al LLP
2029 Century Park East, 21st Fl.
Los Angeles, CA 90067
310-551-3100
pfraioli@mdfslaw.com

Jan L. Handzlik
Howrey LLP
550 S. Hope Street, Suite 1100
Los Angeles, CA 90071
213-892-1802
handzlikj@howrey.com

Kendall H. MacVey
Best Best & Krieger LLP
P.O. Box 1028
Riverside, CA 92502-1028
951-686-1450

David G. Moore
Reid & Hellyer
P.O. Box 1300
Riverside, CA 92502
951-682-1771
dmoore@rhlaw.com

Robert C. O' Brien
Arent Fox LLP
555 W. 5th Street, 48th fl.
Los Angeles, CA 90013
213-629-7400
obrien.robert@arentfox.com

C. Michael Zweiback
Alston & Bird LLP
333 S. Hope Street, 16th Fl.
Los Angeles, CA 90071
213-576-1000
michael.zweiback@alston.com

## XI. Jointly Lodged Laptop Computer

The Court is in possession of a jointly lodged laptop computer used to access the Phases 1A and 1B trial transcripts maintained by the parties. The Court will retain possession of the laptop computer until after its ruling on the motions referred to in section IX, above, and the parties are directed to follow the procedure outlined in the Court's September 9, 2008, Order regarding the e-filing of excerpts of transcripts cited in their anticipated motions.

## XII. Service of Permanent Injunction

The service of Mattel's proposed permanent injunction by the Clerk presents challenges given the limited resources of the Court. The permanent injunction, for reasons explained by Mattel on the record, attaches to it approximately 900 color copies. Accordingly, although the Court directs the Clerk to serve on all parties a copy of the permanent injunction, the Court directs Mattel, no later than ten days after the entry of this Order, to serve a copy of the permanent injunction, together with the color exhibits, on all parties.

**IT IS SO ORDERED.**