# EXHIBIT E

*P·Send*

ENTERED
CLERK, U.S. DISTRICT COURT

JAN 1 2 2006

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION          BY DEPUTY

FILED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(D).

| | |
|---|---|
| CARTER BRYANT, | ) |
|           Plaintiff, | ) CASE NO. CV-04-9049-SGL |
| | ) (Consolidated with cases CV-04-9059 and |
| v. | ) CV-05-2727) |
| MATTEL, INC., | ) ORDER REGARDING MATTEL'S |
|           Defendant. | ) MOTION FOR LEAVE TO AMEND |
| and related actions. | ) |

This case has, increasingly, become one of the proverbial tail wagging the proverbial dog.

Back in April, 2004, Mattel, Inc., ("Mattel") filed a complaint in Los Angeles County Superior Court against its former employee and the reputed creator of the BRATZ dolls, Carter Bryant. The complaint pressed five separate state-law theories relating to certain agreements Bryant signed while an employee with Mattel, namely, an Employee Confidential Information and Inventions Agreement ("Inventions Agreement") and a Conflict of Interest Questionnaire ("COI Questionnaire"). Although couched in state law terms and ostensibly pled as a simple employment action, lurking beneath the allegations in the complaint was whether Bryant had either misappropriated Mattel's intellectual property or

1   resources in creating and/or developing the BRATZ dolls or whether he continued

2   to develop his BRATZ design while still working in Mattel's employ.  In either event,

3   the rights to the BRATZ dolls could become the property of Mattel, either through

4   infringement or through operation of the agreements noted above.  The case was

5   later removed to this Court and was assigned the case number CV-04-9059.  MGA

6   Entertainment, Inc. ("MGA"), the maker of the BRATZ doll line, then intervened "to

7   protect its rights to Bratz dolls" that were at stake in the action.  Mattel, Inc. v.

8   Bryant, 446 F.3d 1011, 1012 (9th Cir. 2006); see also id. at 1013 ("Mattel argues, 'a

9   significant risk of prejudice' to MGA [exists] if the ownership of rights to intellectual

10   property, i.e., the Bratz creations, were decided in the absence of MGA").

11        In the interim, Bryant filed a declaratory judgment action in this Court,

12   seeking for the Court to declare that his BRATZ doll creations did not infringe

13   Mattel's copyright in its Toon Teens products.  See Court's July 18, 2006, Order at

14   3 (noting that, although "Bryant's complaint . . . makes reference to 'other Mattel

15   products,' . . . the substance of his allegations all address the product 'Toon

16   Teens'").  The declaratory judgment action was assigned the case number CV-04-

17   9049.

18        MGA then filed an action against Mattel in this Court broadening the scope

19   of the controversy beyond that concerned with the ownership rights to the BRATZ

20   doll line.  MGA's complaint asserted various Lanham Act claims and their California

21   state law equivalent arising out of Mattel's alleged "habitual and unfair tactics of

22   competition-by-intimidation and serial copycatting of MGA's products."  (Compl.

23   ¶ 7).  In essence, although the prior actions were concerned with ownership in the

24   rights to the BRATZ doll line, the allegations in 05-2727 concerned whether there

25   had been unlawful efforts to block the marketing of those rights in the BRATZ dolls.

26   MGA's complaint did make mention of other products that were affected by Mattel's

27   alleged predatory business practices, but by far the largest portion of its complaint

28   concerned Mattel's conduct in undermining (or seeking to undermine) MGA's rival

line of BRATZ dolls.[1]

By Order dated June 19, 2006, the Court consolidated all three cases "for all purposes" as they "involve[d] a number of common issues of law and fact." As the Court later noted in its August 10, 2006, Order: "At its heart, this case asks the question: Who owns the rights to the Bratz dolls?" Resolution of this question lies at the heart of or, at the very least, affects many of the other claims set forth in each of the three respective cases. For instance, even though the allegations in 05-2727 concern Mattel's alleged efforts at defeating the marketing of the BRATZ dolls, resolution of who owned the rights to the BRATZ dolls could serve to moot many of those allegations. It is hard to imagine how it is unlawful for a company to thwart or otherwise undermine the marketing of a product it owns. Thus, if Mattel owned the rights to the BRATZ dolls, many of the allegations in the 05-2727 complaint would become moot. That said, such consolidation did not do away with the distinctions that do exist between the three cases. As the Court highlighted in its consolidation order, when either party files a pleading in the case, "the first paragraph of [that] document . . . shall inform the Court to which case(s) the document relates."

On July 18, 2006, the Court dismissed Bryant's declaratory judgment action, 04-9049, finding there existed no reasonable apprehension of an imminent copyright infringement claim being filed against him by Mattel based on Mattel's Toon Teen intellectual property. See Court's July 18, 2006, Order at 4. The Court's Order was predicated entirely upon counsel for Mattel's representation during oral argument that it "will not maintain that Bratz infringes the copyright in Toon Teens." Owing to this representation, the Court, in dismissing the declaratory judgment action, made clear that any future "claim by Mattel of copyright

---

[1] That the marketing of the BRATZ dolls lies at the heart of the issues between the rival doll makers in the 05-2727 case is best illustrated by the Court's discussion of those allegations in its August 26, 2005, Order, Granting in Part and Denying Part Mattel's Motion to Strike portions of MGA's complaint.

1   infringement based on the Toon Teens product is barred by counsel's

2   representation." July 18, 2006, Order at 4.

3          Presently before the Court is Mattel's request for leave to file an amended

4   complaint in the 04-9059 action.  The complaint broadens considerably the nature

5   of the action from its genesis in state court.  Whereas before the complaint simply

6   sought to litigate alleged contractual and fiduciary breaches by Bryant while in the

7   employ of Mattel (no doubt geared toward procuring a legal basis for Mattel to lay

8   claim to the BRATZ doll line), the amended complaint adds five more defendants

9   and nine new legal claims, alleging a wide range of commercial disputes between

10  the rival doll makers that spans three countries.  For instance, the amended

11  complaint now contains RICO claims, a misappropriation of trade secrets claim,

12  and various aiding and abetting claims all stemming from allegations that MGA

13  cherry-picked certain high-ranking Mattel executives in foreign markets (many also

14  named as defendants in the amended complaint) or designers (namely, Bryant),

15  and then enticed or encouraged those same individuals to steal various trade and

16  proprietary secrets (be it sales plans, sales projections, customer profiles, or

17  intellectual property) from Mattel and hand them over to MGA before going to work

18  at MGA.

19         Moreover, the amended complaint expands upon the existing breaches of

20  contract and fiduciary duty claims in the original complaint by expanding the

21  universe of former employees (namely, the cherry-picked executives) to whom

22  those claims now apply.

23         Finally, Mattel now makes plain what was always lurking in its original

24  complaint — a copyright claim, but one directed not only to Bryant but also to MGA,

25  MGA's Hong Kong subsidiary, and MGA's President and CEO Isaac Larian.

26  Moreover, Mattel characterizes its copyright claim somewhat differently from that at

27  issue in Bryant's declaratory relief action: "The Amended Complaint does not

28  include a claim for infringement of copyrights in Toon Teens, but rather

4

infringement of copyrights in Bratz." (Reply to MGA Opp. at 11).  Toward that end,

Mattel has recently filed copyright registrations with the U.S. Copyright Office

claiming ownership in various BRATZ doll design drawings penned by Bryant.

A.    ANALYSIS

       Federal Rule of Civil Procedure 15(a) provides that, once a responsive

pleading has been served, "a party may amend the party's pleading only by leave of

court or by written consent of the adverse party; and leave shall be freely given

when justice so requires."  With no consent to Mattel's proposed filing proffered by

MGA and Bryant, determining whether to grant Mattel leave to file an amended

complaint is gauged by looking to the familiar formulation of factors set forth by the

Supreme Court in <u>Forman v. Davis</u>:

>       In the absence of any apparent or declared
>       reason—such as undue delay, bad faith or dilatory
>       motive on the part of the movant, repeated failure to
>       cure deficiencies by amendments previously allowed,
>       undue prejudice to the opposing party by virtue of
>       allowance of the amendment, futility of amendment,
>       etc.—the leave sought should, as the rules require, be
>       'freely given.' Of course, the grant or denial of an
>       opportunity to amend is within the discretion of the
>       District Court, but outright refusal to grant the leave
>       without any justifying reason appearing for the denial is
>       not an exercise of discretion; it is merely abuse of that
>       discretion and inconsistent with the spirit of the Federal
>       Rules.

371 U.S. 178, 182 (1962).

       MGA and Bryant offer the following reasons for denying Mattel leave to

amend:  (1) Mattel has long known of the factual predicates underlying its copyright

and intentional interference claims but delayed in asserting them; (2) the proposed

amendment to add the copyright claim and the intentional interference claims

(against the new defendants) are futile because they are barred by the applicable

statute of limitations; (3) the copyright claim had been brought in bad faith by Mattel

because of its prior public disavowal of an intent to assert such a claim; and (4)

MGA and Bryant would incur undue prejudice were the copyright claim added to the

1 suit because of alleged spoliation of evidence issues involving Mattel's ZEUS

2 computer system used by doll designers at Mattel and its e-mail system.  None of

3 these arguments are persuasive.

4       1.    Awareness of Factual Predicate for Copyright and Intentional

5            Interference Claims

6       MGA argues that Mattel has long known about the factual predicate for its

7 recently added copyright claim, observing that, "[o]ver four years ago, in August

8 2002, Mattel CEO Bob Eckert received an anonymous letter stating that Bryant

9 created the project that became the 'Bratz' dolls — and worked with MGA to 'steal'

10 that project — while still employed at Mattel." (MGA Opp. at 9).  Similarly, MGA

11 argues that Mattel has long known of the factual predicate for its intentional

12 interference claim with respect to Bryant's contract given that, "[b]y Mattel's own

13 admission, it learned in November 2003 — more than three years ago — that

14 Bryant had signed a contract with MGA 'dated as of' a month prior to his final day at

15 Mattel." (MGA Opp. at 11-12).

16       At the outset it must be observed that "[m]ere delay in proffering an

17 amendment does not justify denying leave to amend." Sierra Club v. Union Oil Co.

18 of California, 813 F.2d 1480, 1493 (9th Cir. 1987), vacated on other grounds by,

19 485 U.S. 931 (1988), and reinstated by, 853 F.2d 667 (9th Cir. 1988).  Seizing upon

20 this point of law, Mattel argues that "only in . . . cases" when "granting leave would

21 require discovery to be reopened after summary judgment motions have been filed"

22 has the Ninth Circuit found the denial of leave "justified" based on the passage of

23 time alone. (Reply to MGA Opp. at 3).  That is incorrect.  There is a line of cases

24 from the Ninth Circuit finding that, if a "party seeking amendment knows or should

25 know of the facts underlying the amendment when the original complaint is filed,

26 the motion to amend may be denied." Sierra Club, 813 F.2d at 1493 (citing Jordan

27 v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982)).  And, recently, the

28 Ninth Circuit upheld the denial of leave to amend based on the passage of time

even though the requested leave to amend was tendered <u>before</u> the time, as set forth in a Rule 16(b) pre-trial scheduling order, for amending pleadings had expired. <u>See</u> <u>AmerisourceBergen Corp. v. Dialysist West, Inc.</u>, 465 F.3d 946 (9th Cir. 2006). The Ninth Circuit observed that, even when a request for leave to amend is timely under a Rule 16(b) schedule for pretrial motions, the district court may nonetheless still deny the request based on any of the <u>Forman</u> factors. <u>Id</u>. at 951-52. The Ninth Circuit then noted that the issue of untimeliness (regardless of whether the amendment is tendered "within the period of time allotted by the district court in a Rule 16 scheduling order") in seeking to amend can constitute a justification for denying leave to amend if "the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." <u>Id</u>. at 953. Toward that end, the Ninth Circuit observed that "an eight month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable." <u>Id</u>. In this regard, the Ninth Circuit in <u>Dialysist</u> was unpersuaded by the fact that, even though the moving party had known of the facts prompting the amendment for a long period of time, there still remained eight more months of discovery for the parties to marshal facts against the allegations raised by the amended pleading: "Even though eight months of discovery remained, requiring the parties to scramble and attempt to ascertain whether the Procrit purchased by AmerisourceBergen was tainted, would have unfairly imposed potentially high, additional litigation costs on Dialysist West that could have easily been avoided had AmerisourceBergen pursued its 'tainted product' theory in its original complaint or reply." <u>Id</u>. Thus, absent "a satisfactory explanation" for the delay in amending the complaint, the Court is well within its rights to deny leave to amend. <u>Id</u>.

Mattel proffers the following reasons for taking the time that it did before presenting its amended complaint: (1) Acting out of an abundance of caution to its obligations under Rule 11 to present "factual contentions [that] have evidentiary support," Mattel waited until its claims were better supported by evidence

7

1   uncovered in discovery; and (2) the delay in the proceedings caused by "the year-

2   long stay and the parties' prior jurisdictional disputes" have left the case still in its

3   "nascent stage." (Reply to MGA Opp. at 2, 4).

4        The first reason is not well-founded. Rule 11 specifically allows parties to

5   aver factual allegations that "are likely to have evidentiary support after a

6   reasonable opportunity for further investigation or discovery" so long as the party

7   makes clear in its pleading that its factual contentions on those points are with the

8   caveat that they are based on a good faith belief that further discovery would

9   unearth evidence to support them. See FED. R. CIV. P. 11(b)(3). Simply put, Rule

10  11 did not stand in the way of Mattel averring the factual contentions it now claims it

11  "merely suspected" as being the case based on the limited information before it.

12  Mattel could have gone ahead and made such suspected factual allegations so

13  long as it caveated those claims with the declaration that it reasonably believed that

14  those allegations would be borne out by further discovery. Perhaps the time by

15  which Mattel could have reasonably believed such allegations would be borne out

16  by further discovery occurred after the dates noted by MGA, but it is hard to fathom

17  that such materialization took three or four years to occur.

18       The second reason would have some merit to it but for the fact that the

19  information that alerted (or should have alerted) Mattel to the existence of its now

20  asserted copyright and intentional interference claims was brought to Mattel's

21  attention well before the case was stayed on May 20, 2005. The stay, therefore,

22  did not operate as an obstacle to Mattel asserting its claims; nor even if it did, the

23  stay does not explain why Mattel waited nearly six months after the stay was lifted

24  on May 16, 2006, to present those claims now.

25       All of that being said, the one thing that gives the Court pause in denying

26  leave based on the tardiness in Mattel's presentation is the lack of any evidence

27  that MGA or Bryant have been prejudiced by the delay.  Delay unconnected to

28  some showing of prejudice, be it prejudice to the parties or disruption in judicial

8

1   management of the case, does not suffice to deny granting leave to amend.  The

2   Ninth Circuit has noted that, "where a defendant is on notice of the facts contained

3   in an amendment to a complaint, there is no serious prejudice to defendant in

4   allowing the amendment" even if it is made tardily.  Sierra Club, 813 F.2d at 1493.

5   Indeed, the denial of leave was proper in the Dialysist case not simply because of

6   the length of the delay, but because the delay itself was "detrimental" in that it

7   would entail the opposing party to have "unfairly" incurred "potentially high,

8   additional litigation costs" that could have been avoided if the moving party had

9   made clear its intentions earlier.  465 F.3d at 953.

10          Here, as well demonstrated in Mattel's papers, it is readily apparent from the

11   pleadings filed by MGA and Bryant in this case that both have been aware for some

12   time of the factual predicates now underlying Mattel's copyright claim and

13   intentional interference claim.  (See MGA Opp. at 5 ("As Bryant and MGA

14   suspected at the time of filing — and Mattel now concedes by conduct — those

15   deceptively-pled state-law claims [in 04-9059] were copyright infringement claims all

16   along")(emphasis added)).  The parties have engaged in meaningful discovery

17   regarding many of the facts touched upon by these new claims, be it tracking down

18   experts in various forensic fields or taking depositions of various of the key players

19   to those claims.   In point of fact, in their papers filed with this Court before this

20   present motion, both Bryant and MGA have made it abundantly clear that they have

21   long suspected that a copyright infringement claim was in the offing as evidenced

22   by Bryant's filing of the declaratory judgment action and MGA's intervention in the

23   05-9059 matter to protect its rights to the BRATZ dolls.  Similarly, MGA and Bryant

24   have been on notice to the facts comprising the interference claim concerning

25   Bryant's contract as evidenced by the identity of the individuals who have been

26   deposed by Mattel, as well as the nature of the questions posed and the testimony

27   proffered at those depositions.  MGA's argument that, with the amendments, it

28   faces the prospect of defending "against stale claims" owing to faded memories and

1   loss of documents caused by the great passage of time, (see MGA Opp. at 3, 13),

2   is diminished by the fact that (no doubt owing to the sophistication of all counsel

3   involved) discovery on these very issues have been proceeding apace by both

4   sides long before Mattel filed its proposed amendments.  This is simply not a case

5   where "additional litigation costs" will be "unfairly" visited upon Bryant and MGA by

6   allowing the proposed amendments; much of those costs have already been borne

7   by the parties for some time.

8          2.     Spoliation of Evidence

9          MGA next argues that Mattel's delay in bringing the amended complaint has

10  caused it prejudice as, in the interim, critical pieces of evidence have been or are

11  suspected of having become lost.  For instance, MGA asserts that Mattel's Rule

12  30(b)(6) witness concerning its Zeus computer system, Julia Marine, testified that,

13  "although Mattel identified and segregated its most relevant backup tapes available

14  for Zeus, Mattel allowed its tape backup system to expire the database for those

15  backup tapes, thereby eliminating all information about what was actually stored on

16  those backup tapes."  (MGA Opp. at 9-10).  Information on the Zeus computer

17  system is critical because of Mattel's assertion that part of its copyright claim rests

18  on Bryant's exposure to Mattel development programs.  (First Am. Compl. ¶ 26(a)).

19  As explained by MGA: "[C]oncept data and drawings created by [Mattel] design

20  center personnel are stored on Zeus.  Thus, the electronic documents stored on

21  Zeus – which should include the metadata showing who created, edited and

22  accessed Mattel's concept drawings and designs – during the time Bryant worked

23  in the design center at Mattel is vitally important to defending against Mattel's

24  claims."  (MGA Opp. at 14).  MGA's argument is neither an accurate

25  characterization of Ms. Marine's testimony nor of the nature of Mattel's exposure

26  claim.

27         Ms. Marine did not testify that the information on the backup tapes (some

28  fifty in total) was lost, but rather that Mattel no longer carried the type of hardware

1   that could restore the information still found on those tapes:

2       Q.    So if you wanted to restore that 2002 backup
    tape[s] then, how would you go about doing that?

3

    . . . .

4       A.    You need the hardware so if we don't have the
5       hardware — if [the technology used by the tape
    is] DLT we don't have the hardware and you've
6       got to buy it and – well, first you have to find a
    place to put it with adequate power which we
7       don't have in the design center.  You need to
    have a tape library.  You need to have the tape
8       drives that carried those tapes.  You need a
    server that has the capability to – that's big
9       enough to handle all of the hardware.  You need
    the software – the license for the backup
10      software[, Net Backup].  You need the disk space
    to restore it to and then you have to start reading
11      in all those tapes.

12      Q.    You said that you don't have that in the design
    center.  Do you have that hardware anywhere
13      else in the company?

14      A.    DLT?  No, no.

15      Q.    At what point did you get rid of the hardware?

16      A.    Once the last backups — DLT backups expired
    so it would have been a couple years ago
17      probably.

18  (Decl. Diana Torres, Ex. K at 118-119).

19          The above testimony clearly denotes the difficulty in restoring what was on

20  Mattel's Zeus computer system during the relevant time frame, but it certainly does

21  not demonstrate that the information on those backup tapes has been "eliminated"

22  or forever lost.  Undoubtedly it will be a costly endeavor to recover that information

23  (not to mention to later search and sort through it); but to argue, as MGA does, that

24  the information is "unavailable" or "lost", (MGA Opp. at 9, 14), exaggerates its

25  plight.  Indeed, Ms. Marine's testimony indicates that the difficulty in retrieving the

26  information on the Zeus backup tapes has been present for some time (maybe

27  since 2004 or perhaps even earlier).  This is important because it undermines

28  MGA's claim that Mattel's undue delay in bringing its amended complaint will cause

it to suffer prejudice it otherwise would not have faced if the amendments were brought sooner.  Such prejudice has been present for years, and Mattel's failure to bring its amended complaint sooner would not have changed this situation.

Similarly, MGA's point that access to what was on the Zeus computer system is vital in demonstrating that Bryant was not exposed to or otherwise did not hack the system to steal other designers work is diminished to some extent by the fact that Bryant himself testified that he did not use the Zeus computer system and was "pretty much computer illiterate" while employed at Mattel.  Admittedly, the ability to point to information on the Zeus system backup tapes to prove that Bryant did not access other designers drawings or to prove the date those drawings were created by those other designers would be useful evidence to negate Mattel's factual claims.  Nonetheless, such evidence still would not discount other avenues outside of the Zeus computer system by which Mattel could seek to prove that Bryant was exposed to its copyrighted works, e.g., witness testimony that Bryant saw drawings of the same posted on other designers' cubicles.

MGA next surmises that Mattel's e-mail records have disappeared, not because it has any proof on that point, but simply because Mattel has postponed the deposition of the individual most knowledgeable of Mattel's e-mail records until after the hearing on Mattel's motion for leave to amend.  (MGA Opp. at 10). Speculation of spoilation does not suffice.  That MGA's argumentation on this point is nothing more than speculation is best exhibited by the evidence it has proffered in support of its argument:  "[I]f the sole retained backup for Zeus is no longer available, it is not hard to imagine that Mattel's electronic mail archives are similarly out of reach." (MGA Opp. at 15 (emphasis added)).  MGA then makes much of a deposition from a Mattel executive, Alan Kaye, who testified that e-mails in his inbox would be automatically deleted if they had remained there for more than a certain time period. (Decl. Diana Torres, Ex. H at 292-93).  MGA takes from this acknowledgment that Mattel has an "automatic email deletion system" that has

1   compromised Mattel's "duty to preserve documents." (MGA's Opp. at 14).

2   Noticeably absent from MGA's argument is any evidence that the e-mails so

3   deleted from a Mattel employee's inbox are forever lost or, as is far more likely,

4   whether such information remains or is otherwise archived on some backup file on

5   Mattel's computer system.  Absent concrete proof that spoilation has occurred,

6   nothing in MGA's argument forms a basis for denying Mattel its requested leave to

7   amend.

8        3.    <u>Statute of Limitations</u>

9        MGA next argues that Mattel's copyright and intentional interference claims

10   are futile as both are barred by the applicable statute of limitations.  This argument

11   was pressed emphatically at oral argument.  With respect to the copyright claim,

12   MGA argues that the applicable statute of limitations is three years, with the

13   limitations period accruing from when a party has knowledge of a violation or when

14   a reasonably diligent person would have been put on inquiry of the infringement.

15   (MGA Opp. at 16 (citing <u>Roley v. New World Pictures</u>, 19 F.3d 479, 481 (9th Cir.

16   1994)).  MGA argues that Mattel was put on notice about its copyright claim in

17   August, 2002, upon the receipt of the anonymous letter to Mattel's CEO that Bryant

18   had stolen the idea for BRATZ while working at Mattel.  Thus, according to MGA,

19   the limitations period on Mattel's claim expired in August, 2005, rendering Mattel's

20   current copyright claim stale.

21        The problem with MGA's analysis is it fails to take into account the relations-

22   back principles found in Rule 15(c), which provides that "[a]n amendment of a

23   pleading relates back to the date of the original pleading when "the claim . . . in the

24   amended pleading arose out of the conduct, transaction, or occurrence set forth . . .

25   in the original pleading," or if such relation back is otherwise permissible by the

26   state "law that provides the statute of limitations applicable to the action."  By

27   MGA's own admission Mattel's copyright claim arises out of the same conduct or

28   transaction contained in the original complaint filed in April, 2004, well within the

applicable limitations period.[2] (MGA Opp. at 12 ("These very same allegations [contained in the original complaint] underlie the copyright infringement and intentional interference contract claims Mattel now seeks to allege against MGA, Mr. Larian and Bryant")).

MGA's statute of limitations argument with respect to the intentional interference claims fares no better. According to MGA, the applicable statute of limitations is two years for an intentional interference with contract claim and Mattel was aware of the facts alerting it to this claim (insofar as Bryant's contract is concerned) on November 24, 2003, when it learned "that Bryant worked with MGA to develop the 'Bratz' dolls prior to his last day of employment by Mattel and, hence, prior to the expiration of his contractual relationship with Mattel."[3] (MGA Opp. at 18 (citing Knoell v. Petrovich, 76 Cal. App.4th 164, 168 (1999)). Such a time line would, according to MGA, mean that the applicable limitations period expired on Mattel's interference with Bryant's contract claim on November 24, 2005, well before Mattel sought leave to file its amended complaint. (Id). The problem again with MGA's argument is that it ignores that through Rule 15(c) Mattel's intentional interference claim would relate back to when it filed its original complaint in April,

---

[2] The same would appear to be true — that the amendments would be timely — if the amendments related back to Mattel's answer (filed on May 13, 2005) to MGA's complaint in the 05-2727 case.

[3] With respect to Mattel's interference with contract claim as to one of its former executives, Ron Brawer, MGA claims Mattel was put on notice of that claim on September 17, 2004, when Brawer informed Mattel that he leaving to go to work for MGA. (MGA Opp. at 19-20). The problem with this argument is that nothing from that simple event — Brawer's declaration of his intent to leave — in any way would apprise Mattel that MGA had encouraged Brawer to engage in nefarious conduct (the stealing of proprietary information) causing Brawer to breach his contract with Mattel that he would not do anything to help a competitor while working for them. MGA's contention that Mattel must have known of those misdeeds in mid-September is nothing more than speculation. Futility cannot be founded on what might or might not be the case; either a claim is futile to bring or it is not.

1   2004, well before the limitations period expired.[4]

2         Accordingly, MGA's futility argument is not well-founded.

3   4.   Prior Disavowals of Asserting a Copyright Claim

4         Finally, MGA takes umbrage with the cageyness to which Mattel has taken in

5   this case as to whether or not it is asserting a copyright infringement claim against

6   it.  To MGA, such ducking and weaving on Mattel's part renders its effort to now

7   bring such a copyright claim as one done in bad faith.  No doubt the Court itself has

8   been subjected to Mattel's overly vague statements on this point, but in the end

9   nothing in those statements has ever foreclosed the possibility that such a claim

10  may be in the offing.  Indeed, during the oral argument on Mattel's motion to

11  dismiss Bryant's declaratory judgment action, the Court pressed Mattel's counsel as

12  to whether it would assert such a copyright claim against Bryant as it is currently

13  seeking to do.  The most that Mattel's counsel would proffer was that Mattel would

14  not assert a copyright claim against Bryant based on Mattel's copyright rights in

15  TOON TEENS.  At that point, the Court directed the parties to engage in a meet

16  and confer based on counsel for Mattel's representation and to provide a report to

17  the Court based on those discussions.  The report submitted to the Court made

18  clear that, although Mattel was willing to accede that it would not bring a copyright

19  claim based on TOON TEENS, it refused to accede to Bryant's broader request

20  that "Bryant 'never copied anything' and that no Mattel product has any 'relevance'

21  to any claim that Mattel has or ever will assert against Bryant."  This by itself should

22  have dispelled any illusion either Bryant or MGA was operating under that Mattel's

23  prior statements had foreclosed any potential copyright claim against them.[5]

24

25         [4] Again the relations-back principle would also seem to render its claim timely
26  if it were filed as an amended answer (the original having been filed in May, 2005) in
    the 05-2727 case.

27         [5] MGA also argues that Mattel's effort to substitute MGA and its CEO, Isaac
28  Larian, for the "Doe" defendants listed in its original complaint is improper because
    Mattel knew of their identity when it filed the original complaint.  The argument is

That said, Mattel's allegation in the amended complaint as to how it is seeking to lay claim to the copyright in BRATZ is disconcerting.  Paragraph 26, subsection a, in the amended complaint alleges that Bryant "misappropriated and misused Mattel property" by "using his exposure to Mattel development programs to create the concept, design and name of Bratz." (First Am. Compl. ¶ 26(a)).  Such "exposure" could include Bryant misappropriating the Mattel design concept in TOON TEENS in drawing his inspiration for the BRATZ doll.  Were Mattel's copyright claim so predicated it would be barred by this Court's July, 2006, Order, dismissing Bryant's declaratory judgment action.  Mattel was pressed on this point during oral argument and conceded that such "exposure" to Mattel "development programs" did not include TOON TEENS.  With this representation, nothing in Mattel's proposed copyright claim is barred under the rubric of bad faith.

     5.    Judicial Economy Considerations

In his opposition, Bryant adds an additional reason for denying leave beyond those contained in MGA's papers — the amendment would muddy the waters in the 04-9059 by adding "tangential" issues that would only serve to delay resolution of the key issue lying at the heart of the complaint:  Who owns the rights to the BRATZ line of dolls. (Bryant Opp. at 2 ).  Bryant notes that the case has proceeded apace in moving toward resolving that issue, and the amendment would "transform

misplaced.  As made clear by Mattel, California law allows a plaintiff to substitute in a defendant for a "Doe" if the plaintiff was ignorant of that defendant's identity or ignorant of the basis for liability at the time the complaint was filed.  See Miller v. Thomas, 121 Cal.App.3d 440 (1981).  MGA does not dispute this legal contention but at oral argument disputed that Mattel did not know the basis for liability against itself or Mr. Larian due to the "uncanny" similarity between the allegations averred in the original complaint and those now proffered against the two in the amended complaint.  Specifically, MGA notes that the original complaint spoke of Bryant working for one of Mattel's competitiors and of that employee's theft of Mattel's intellectual property before leaving to work for that competitior.  At most, all this shows is that Mattel knew that Bryant went to work for MGA, not that MGA or Mr. Larian encouraged Bryant's alleged unlawful behavior recited in the original complaint.

what Mattel has always claimed was a straightforward employment action against an individual defendant into a global commercial dispute against Mattel's primary competitor, MGA," that "will last years" thereby "delay[ing]" resolution of who owns BRATZ.[6] (Bryant Opp. at 2). Mattel argues that "the law does not deny leave to amend because claims are 'tangential'" and then reiterates its point that some showing of prejudice, namely, seeking leave after expiration of discovery, is necessary. (Reply to Bryant Opp. at 3). That is not entirely correct.

As noted previously, the Ninth Circuit recently upheld a denial for leave to amend because the amendment would have "drastically changed" the litigation, even though the leave request was tendered <u>before</u> the time, as set forth in a Rule 16(b) pre-trial scheduling order, for filing a motion to amend had expired and well before the discovery cut-off. See <u>AmerisourceBergen Corp. v. Dialysist West, Inc.</u>, 465 F.3d 946, 953 (9th Cir. 2006). In justifying its reasoning the Ninth Circuit cited approvingly to the following statement from a well-respected treatise: "If an amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial." <u>Id.</u> at 953 n.2 (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2nd ed. 1990)). Thus, <u>Dialysist</u> recognized that the introduction of "different legal theories" and/or proof of materially different facts well into the litigation can itself be a basis for finding prejudice regardless of whether the period for discovery has expired (or is even close to expiring) or the parties have already filed summary judgment motions. <u>Id.</u> at 953-54.

Although the parties can safely be said to be at this point well into the

---

[6] Bryant also brings intricate legal arguments about the sufficiency of the allegations Mattel has averred in building its RICO claims against him. Such considerations are best left to be resolved on a properly filed motion to dismiss.

litigation in this consolidated action (as evidenced by the protracted discovery disputes contained in the docket sheet that the parties have had before the magistrate judge and now the special master, and the litigation of motions to dismiss in both the 04-9049 and 04-9059 cases), the fact remains that, as Mattel has made painfully clear in its papers, no scheduling order has been entered in this case.[7]  This takes away somewhat from the prejudice <u>Dialysist</u> found to exist when a "drastic change [in a party's] litigation theory" takes place mid-stream in the litigation process.  <u>Id</u>. at 953.  Simply put, without a schedule for the filing of pre-trial motions and other matters (<u>e.g.</u>, discovery cutoff), the parties have been given free reign in how to conduct the litigation in this case.

That the delay in bringing the proposed amendments and the relative length of time into the litigation when those amendments were brought may not neatly fold into <u>Dialysist</u>'s reasoning does not mean that leave must nonetheless be granted. The 04-9059 action, as it is presently constituted, is not a complex one.  It asks a rather narrow and straightforward question — Did anything from Bryant's employment at Mattel during the 1999-2000 period give Mattel ownership rights to the BRATZ doll line?  The proposed amendments would radically alter the litigation in that case to include far ranging disputes involving multiple parties and concerning events not connected with the BRATZ ownership issue.  That the original action was a relatively simple and straight-forward matter raises another point beyond the change in the action's litigation posture — whether entangling the rival doll makers' other commercial disputes into this particular case would serve to muddy the waters and make the matter that much more difficult to manage from the Court's perspective.

---

[7]  Mattel's repeated refrain that the matter is in its nascent stage as evidenced by the fact that the parties only just recently exchanged in initial disclosures is misleading.  The exchange of initial disclosures referred to by Mattel is in the 05-2727 case.  With respect to the 04-9059 case it appears that such initial disclosures were completed long ago as evidenced by the fact that discovery disputes appeared in that case as far back as January, 2005.

1   As has long been recognized, equally important in determining whether to

2   grant such leave is what impact such amendments would have on the court's ability

3   to manage the case.  See 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE

4   § 15.15[1] at 15-42.1 to 15-43 (3rd ed. 2006)("A court should also consider judicial

5   economy and its ability to manage the case. . . .  The court should also temper the

6   policy favoring freely granting leave to amend with consideration of the ability of the

7   district court to manage the case adequately if amendment is allowed").  As Judge

8   Clark for the Fifth Circuit once observed: "In keeping with the purposes of the rule,

9   the court should consider judicial economy and whether the amendments would

10  lead to expeditious disposition of the merits of the litigation.  Finally, the court

11  should consider whether the amendment adds substance to the original allegations,

12  and whether it is germane to the original case of action." Chitimacha Tribe of

13  Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982); see also

14  Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1493 (9th Cir.

15  1987)("General considerations of judicial economy also justify allowing the

16  amendments. The violations included in the proposed amendment relate to the

17  same subject matter as the original complaint.  Allowing the amendment will further

18  the federal policy of 'wrapping in one bundle all matters concerning the same

19  subject matter.'").

20  Mattel's amendments do not add substance to the claims contained in its

21  original complaint.  Rather, they would expand the universe of claims and

22  defendants stretching well-beyond the questions raised in the original complaint

23  over whether Bryant's conduct while in the employ of Mattel subjected his later

24  attributed creation of the BRATZ dolls to the provisions in Mattel's Inventions

25  Agreement or otherwise rendered his creation subject to an infringement action.

26  Nowhere does Mattel seek to reconcile the breadth of its present amendments with

27  the narrowness of the allegations contained in its original complaint.  In fact, the

28  precise opposite is true.  Mattel acknowledges that its proposed amendments bear

19

more congruity to the allegations leveled against it in MGA's Lanham Act case than to those in the action to which it seeks to add them:

> [M]any of the matters raised by Mattel's proposed Amended Complaint are and will remain at issue because of MGA's Complaint, whether or not leave to amend is granted. MGA's claims allege that a broad array of purported Mattel conduct across the globe, starting at least as early as 1999, has violated the Lanham Act and unfair competition law. This includes Mattel's alleged infringement of Bratz and other MGA products. As a result, issues in the proposed Amended Complaint are already part and parcel of Mattel's defenses to MGA's unfair competition claims, including because they show that MGA and Bryant, and not Mattel, are ones who stole the products and other properties involved.

(Reply to Bryant Opp. at 7 (emphasis added)).  Mattel apparently finds this discongruity unimportant because "all of these matters have been consolidated with the Bryant case." (Id. at 7).  As noted earlier, the fact that the cases have been consolidated does not mean that the parties can ignore the distinctions that still exist between them.  If, as Mattel acknowledges, the present amendments are nothing more than re-formulated defenses and counterclaims it presently has to MGA's complaint against it in the 05-2727 case, then such amendments should be brought in the form of an amended answer and counterclaim in that case.

Consideration of the distinctions between the two cases is wise as it serves as a useful tool in providing the Court a better means to manage the cases now that they have been consolidated.  The proverbial dog (ownership in BRATZ) should be wagging the proverbial tail (the remaining commercial disputes), not the other way around.  Admittedly, the dog's tail has grown in size both by MGA's filing of its complaint in the 05-2727 action and Mattel's response thereto through its proposed amendments.  Nonetheless, it is readily apparent to the Court that the crown jewel in this action still remains the ownership rights to the BRATZ dolls.  The parties have engaged in extensive and undoubtedly expensive discovery on this very issue (from hiring world-renowned experts to test the age of Bryant's design

1   drawings to technically complex discovery of what is on each other's computers).

2        Indeed the separateness of the two matters is reflected in how the cases are

3   currently structured, namely, the narrowness of the issue involved in 04-9059 and

4   the expansiveness of the facts at issue in 05-2727.  In light of this fact, the Court

5   believes a two-track scheduling order wherein the 04-9059 matter's discovery cut

6   off and trial date are set well-ahead of those in 05-2727 makes the most sense.  As

7   noted earlier, many of the legal claims being pressed in 05-2727 will be affected by

8   the result of the litigation in 04-9059.  If, for instance, Mattel does own the rights to

9   the BRATZ dolls (either owing to Bryant's stealing his idea from one of Mattel's

10  "development programs" or by way of the Inventions Agreement because he

11  continued to work on his designs while at Mattel), then large portions of MGA's

12  Lanham Act infringement claims may become moot.  By the same token, if Mattel

13  does not own rights to BRATZ, then some of the defenses and counterclaims set

14  forth as independent claims in the present amended complaint may become moot,

15  including Mattel's copyright infringement claim as well as portions of its remaining

16  RICO, misappropriation, and aiding and abetting claims.  If, however, the Court

17  were to allow the amended complaint to be filed in the 04-9059 action, such case

18  management would be difficult, if not impossible as many of the issues being

19  litigated in the 05-2727 case would have been poured into the 04-9059 case by the

20  amendment.  Due to this substantial overlap in claims and facts, a two-track

21  scheduling order utilizing the case number distinctions would be impossible to craft.

22  When pressed by the Court at oral argument as to which of its proposed claims it

23  believed would <u>not</u> undermine the BRATZ ownership posture of the 04-9059 case,

24  Mattel cited to its copyright and RICO claims.  However, upon further questioning

25  by the Court, counsel for Mattel acknowledged that much of those claims were, like

26  the claims at issue in 05-2727, dependent upon resolution of the ownership issue.

27        In light of the burden allowing Mattel's amendment to proceed would have on

28  this Court's ability to efficiently manage these consolidated matters denial of

1   Mattel's request to amend its complaint in the 04-9059 matter is justified.  See

2   Perrian v. O'Grady, 958 F.2d 192, 195 (7th Cir. 1992)("The burden to the judicial

3   system can justify a denial of a motion to amend 'even if the amendment would

4   cause no hardship at all to the opposing party'").  Buttressing the Court's decision is

5   the fact that, even with such a denial, Mattel may file (and the Court provides leave

6   to Mattel to so file) an amended answer and counterclaim in the 05-2727 case

7   raising all the new claims and defendants presently sought to be achieved through

8   amendment of its complaint in the 04-9059 action.  None of the substantive

9   concerns raised by MGA and Bryant to the present amended complaint, e.g.,

10  statutes of limitations, would appear to be affected if the new claims and

11  defendants were brought as defenses and counterclaims in the 05-2727 case as

12  opposed to the 04-9059 one.

13      Accordingly, the Court GRANTS Mattel's motion for leave to file its proposed

14  amendments, but only insofar as they are pled in the form of an amended answer

15  and counterclaim in the 05-2727 case.

16      Finally, the lack of a scheduling order in this case is problematic; one should

17  have been entered long ago.  See Fed. R. Civ. P. 16(b)(noting that a scheduling

18  "order shall issue as soon as practicable but in any event within 90 days after the

19  appearance of a defendant and within 120 days after the complaint has been

20  served on a defendant").  In light of the fact that entry of a scheduling order is

21  woefully overdue in this case, the Court hereby ORDERS that a Rule 16(b)

22  scheduling conference be held in this consolidated matter on February 12, 2007, at

23  1:30 p.m. in Courtroom One.  The parties are directed to file a Joint Rule 26(f)

24  report with the Court by February 5, 2007.

25      IT IS SO ORDERED.

26  DATE: _/- //- o7_

27

28                          STEPHEN G. LARSON
                            UNITED STATES DISTRICT JUDGE

22

# EXHIBIT F

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, | **CASE NUMBER** |
| PLAINTIFF(S), | CV 04-09049 SGL (RNBx) |
| v. | |
| MATTEL, INC., et al., | |
| DEFENDANT(S), | **NOTICE OF CLERICAL ERROR** |

TO:  U. S. District Judge(s)
U. S. Magistrate Judge(s)
Counsel of Record

You are hereby notified that due to a clerical error ☐ documents associated with the filing of the new action ☐ the following scanned document ☑ docket entry  have/has been corrected as indicated below.

Title of Scanned Document: ___Minute Order of 4-25-08, Granting in part, Denying in part, and Deferring in Part the Parties' MSJ___

Filed Date: _4-25-08_     Document Number: _3285_

☐ Incorrect case number _____ was assigned to this ☐ action ☐ document.

☐ Case number has been corrected. The correct case number is _____

☐ Incorrect judge's initials were indicated on this ☐ action ☐ document. The correct judge's initials are _____

☐ Incorrect magistrate judge's initials were indicated on this ☐ action ☐ document. The correct  magistrate judge's initials are _____.

☐ Case has been reassigned from ☐ Judge ☑ Magistrate Judge _____ to

☐ Judge ☐ Magistrate Judge _____. The initials of the new judge(s) are _____

☐ Case was assigned  to ☐ Western ☐ Southern ☐ Eastern division. Pursuant to General Order ☐ 349, ☐ 98-3 ☐ 02-06, the case has been reassigned to the ☐ Western ☐ Southern ☐ Eastern division. The former case number _____ has been reassigned to new case number _____

☐ Subsequent documents must be filed at the ☐ Western ☐ Southern ☐ Eastern division. Failure to file at the proper location will result in your documents being returned to you.

☐ Case title is corrected from _____ to _____

☐ Document has been re-numbered as document number _____

☐ Incorrect ☐ Filed Date ☐ Date of Document ☐ ENTERED Date ☐ DATE ENTERED ON CM/ICMS was stamped on document. The correct date is _____

☑ Document is missing page number(s): _7 and 8_

☐ To ensure proper routing of documents, all documents filed  with the court must reflect the following case number and judge's initials: _____

☑ Other: a complete copy with missing pages are re-scanned for service on the parties.

CLERK, U.S. DISTRICT COURT

Date _4-25-08_     By: _____ Jim Holmes, CRD _____
Deputy Clerk

*cc: Intake Supervisor / Deputy In Charge*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES – GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                      Date:  April 25, 2008
Title:       CARTER BRYANT -*v*- MATTEL, INC.

<u>Consolidated With Related Actions:</u>
CASE NO. 04-09059 SGL(RNBx):  MATTEL, INC.,  v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
=========================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes
          Courtroom Deputy Clerk

<u>ATTORNEYS PRESENT FOR CARTER BRYANT:</u>       <u>ATTORNEYS PRESENT FOR MATTEL</u>:

None Present                                    None Present


<u>ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:</u>

None Present

**PROCEEDINGS:     ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN
                    PART THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT
                    (IN CHAMBERS)**

     This matter is before the Court on the parties' motions for partial summary judgment.  The
motions were heard on April 22, 2008, and the Court has set the motions for further hearing on
May 19, 2008, at 1:30 p.m.  As set forth below, the Court rules on a number of issues presented
by the motions for partial summary judgment and reserves ruling on other issues until after further
hearing on the motions for partial summary judgment and, in the case of MGA's affirmative
defenses, until after the Phase 1 trial.

     The parties have made hundreds of objections to evidence offered in support of and in
opposition to the motions for partial summary judgment.  Although counsel for Bryant requested

explicit rulings on the objections raised by Bryant, the Court declines to do so.  To the extent that this Order necessarily relies on evidence subject to any party's objections, the objections are implicitly overruled.

## PREEMPTION

MGA and Bryant seek summary judgment in their favor as to Mattel's claims for intentional interference with contractual relations, conversion, and unfair competition, arguing that these claims are preempted by the Copyright Act.  They are partially correct.

A state law is preempted by the Copyright Act where (1) the work at issue comes within the subject matter of copyright, and (2) the state law rights are "equivalent to rights within the general scope of copyright[.]"  Del Madera Properties v. Rhodes and Gardner, Inc., 820 F.2d 973, 977 (9th Cir.1987).  "If a state law claim includes an 'extra element' that makes the right asserted qualitatively different from those protected under the Copyright Act, the state law claim is not preempted by the Copyright Act."  Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1089 (9th Cir. 2005).  Generally the Copyright Act does not preempt the enforcement of contractual rights.  Id.

As to the first element, the intentional interference with contractual relations claim addresses generally an issue within the subject matter of copyright -- the underlying wrong upon which the claim is premised is Mattel's deprivation of rights to intellectual property.

As to the second element, it is clear that the tort of intentional interference with contractual relations is neither categorically preempted or categorically saved from preemption; rather, the Court must engage in a determination of whether the substance of the tort claim differs qualitatively from the copyright claim at issue.  Compare Altera, 424 F.3d at 1089 (holding that a intentional interference claim was not preempted because it was based not on copyrights but on a contractual provision) with Laws v. Sony Music Entertainment, Inc., 448 F.3d 1134, 1144 (9th Cir. 2006) (holding preempted a singer's voice misappropriation claim was not qualitatively different from her copyright claim).

Here, to the extent that the tortious interference is premised upon MGA's alleged interference with any copyrights that Mattel may have under the Inventions Agreement, it is preempted.  Such a claim is not qualitatively different from Mattel's copyright claim.  However, to the extent that the claim is based on MGA's acts that may be found to have aided and abetted the breach or induced the breach of Bryant's fiduciary duty, the claim is not preempted.  That claim is qualitatively different from Mattel's copyright claim.

Therefore, the tortious interference with contractual relations is preempted to the extent that it is based on Mattel's rights to Bratz.  It is not preempted as to Mattel's claims for breach of fiduciary duty.

The parties' arguments regarding the conversion claim address two distinct issues: Conversion of ideas and conversion of tangible things.  The Court addresses each in turn.

MINUTES FORM 90                                                                Initials of Deputy Clerk:  jh

CIVIL -- GEN                                          Page 2

Both sides acknowledge, as this Court certainly agrees, that one cannot copyright an idea. Thus, it would seem, a claim for conversion of ideas is not subject to preemption because it is not "within the subject matter of copyright." Del Madera, 820 F.2d at 977. MGA argues that ideas are not subject to a claim of conversion, to which Mattel responds that such rights in ideas may be created by contract. Mattel relies on Desny v. Wilder, 46 Cal.2d 715, 733 (1956) which, remarkably, so holds. However, that case does not support the proposition that a breach of such rights may be remedied by the tort claim of conversion rather than a breach of contract claim. The law in California regarding the tort of conversion's applicability to ideas remains the same today as in 1956: "The tort of conversion does not apply to ideas." Melchior v. New Line Productions, Inc., 106 Cal.App.4th 779 (2003). Therefore, although this claim is not preempted, it is not actionable as a tort claim. Accordingly, summary judgment in favor of MGA and Bryant is granted as to this particular claim.

Mattel also argues that its conversion claim is not preempted to the extent that it seeks the return of tangible things, most notably the original Bratz drawings. This claim is "within the subject matter of copyright," but the state rights go beyond the rights protected by the Copyright Act by allowing for the return of property.

At oral argument, counsel for MGA argued that Mattel seeks the rights that the drawings represent, not the "paper and ink" of which those drawings are comprised. Mattel disagreed with that interpretation, noting that it seeks the return of the original drawings and certain sculpts to which it may have rights under the Inventions Agreement.

The items to which Mattel lays claim are not like the manuscript at issue in Dielsi v. Falk, 916 F.Supp. 985, 992 (C.D. Cal. 1996), or the government documents at issue in Idema v. Dreamworks, Inc., 162 F.Supp.2d 1129, 1192-93 (C.D. Cal. 2001), both of which had value merely for their ability to hold and convey their contents. Rather, the materials Mattel seeks are works of art that may have value apart from the copyrights they represent or the "paper and ink" and other materials of which they are comprised. Given the role of the drawings and sculpts in developing a new, commercially successful line of fashion dolls, and given the role of these items in the present litigation, the Court discerns a possible inherent value to the materials themselves.

MGA and Bryant also pressed at oral argument that Mattel had not advanced such a claim for return of tangible items. The Court disagrees. Citing to its Complaint at ¶ 157, Mattel contends it has long sought the return of tangible items.[1] An examination of Mattel's claim for conversion reveals that it encompasses such a claim. Therefore, the conversion claim seeking the return of tangible items is not preempted. MGA and Bryant's motions for summary judgment on this issue are therefore denied.

To the extent that Mattel's statutory unfair competition claim, discussed more fully below, is

---

[1] From a review of the record, it is clear to the Court that Mattel intended to cite ¶ 157 of its Amended Answer and Counterclaims, not its Complaint.

Case 2:04-cv-09049-DOC-RNB    Document 4459-3    Filed 12/11/08    Page 29 of 35    Page ID
#:128431
Case 2:04-cv-09049-SGL-RNB    Document 3286    Filed 04/25/2008    Page 5 of 11

based on copyright infringement, it is preempted, and the Court grants summary judgment in favor of MGA on this issue.

## STATUTE OF LIMITATIONS

The Court heard argument at length on the statute of limitations issue.  Although it is not entirely clear, it appears to the Court from the hearing and from MGA's Rule 56(f) affidavit, that there remain outstanding discovery matters that may have the potential, if resolved in MGA's favor, to factor into the inquiry into the determination of the date of the accrual of any claims against Bryant and/or MGA.  Accordingly, the Court defers ruling on the issue of statute of limitations at this time.

## INVENTIONS AGREEMENT

The Court addressed many issues of the enforceability of the Employee Confidentiality and Inventions Agreement in its July 17, 2006, Order.  The Court finds no good reason to revisit or revise that Order.

Bryant argues that the Inventions Agreement is ambiguous on the issue of whether it covered anything other than "inventions" as that term is used in patent law. Here, Bryant was a fashion designer.  He signed an agreement that assigned his "inventions" to Mattel.  "Inventions" is defined by the agreement to include "designs," which was undeniably the focus of Bryant's employment with Mattel.  In addition to assigning all rights to Bryant's "inventions" (i.e., "designs") to Mattel, the agreement also assigned to Mattel "all [Bryant's] right, title, and interest in any . . . copyrights . . . and copyright applications based [on those inventions]".

In order to conclude that the Inventions Agreement is ambiguous on the issue of whether it would include any copyrightable drawings or doll designs developed by an employee, the Court would have to read out of the agreement explicit terms assigning to the employer the rights to "designs," "copyrights," and "copyright applications."  The Court is required to read the contract as a whole and, where possible, give effect to all its terms. Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.").  To accept the interpretation advanced by Bryant, the Court would have to disregard this bedrock principle of contract construction by ignoring an explicit assignment by the employee to the employer of copyrights.  The interpretation advanced by Bryant is therefore not reasonable, and the Court finds that the Inventions Agreement is not ambiguous on the issue of its scope with respect to copyrightable materials.

The Inventions Agreement explicitly conveys to Mattel an employee's interest in any copyrights or copyright applications.  Assuming copyrightability and the resolution of certain (as yet unresolved) issues of timing of creation and/or alteration in Mattel's favor, the original Bratz drawings clearly fall within the scope of the Inventions Agreement.

Moreover, the Inventions Agreement incorporates, and therefore does not violate, Cal.

Labor Code § 2870. Pursuant to that statute (and its incorporation in the Inventions Agreement), because the subject matter at issue -- the Bratz dolls -- relate to Mattel's business of marketing fashion dolls, the factual question of whether Bryant worked on them on his own time, rather during his working hours at Mattel, is not relevant.

MGA argues that contracts of adhesion are unenforceable if they are either outside the scope of the parties' expectations or they are substantively unconscionable. The Court previously determined that the Inventions Agreement was not substantively unconscionable, and now determines that it is not outside the scope of the parties' expectations. As noted above, Bryant was a designer, and the plain language of the Inventions Agreement assigns his "designs" to his employer. Objectively, therefore, it would not be surprising that Mattel would lay claim to Bryant's rights to any doll or doll fashions he designed during the period of his employment with Mattel. Moreover, undisputed evidence establishes that Bryant's subjective understanding of the contract was that it transferred at least some of his rights to Mattel.

Bryant also argues that his actions went no further than lawful preparations to compete with his employer. The undisputed facts, however, tell a different story: Bryant directly competed with Mattel by entering into a contract with its competitor to produce a competing product while still employed by Mattel.

The Court grants summary judgment in favor of Mattel on the issue of the enforceability of the Inventions Agreement and the issue of applicability of the Inventions Agreement to any Bratz-related "inventions" (including any designs, improvements, ideas, concepts, and copyrightable subject matter) that he is found to have created during the period of his employment with Mattel.

## DUTY OF LOYALTY AND FIDUCIARY DUTY

Carter Bryant, like all other California employees, owed a duty of loyalty to Mattel while employed there. See Cal. Labor Code § 2863. The undisputed facts establish that he breached this duty by entering into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products. See Huong Que, Inc. v. Luu, 150 Cal.App.4th 400, 414 (2007) ("The duty of loyalty is breached, and the breach may give rise to a cause of action in the employer, when the employee takes action which is inimical to the best interests of the employer.") (internal quotation marks and citation omitted).

Bryant also owed a fiduciary duty to Mattel by virtue of the language set forth in ¶ 1(a) of the Inventions Agreement. Id. ("The value of the Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust."). Under California law, a confidential relationship that gives rise to a fiduciary duty is created "where a confidence is reposed by one person in the integrity of another, and . . . the party in whom the confidence is reposed . . . voluntarily accepts or assumes to accept the confidence . . . ." City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1050-51 (N.D. Cal. 2002). The Inventions Agreement imposed such a duty on Bryant.

Case 2:04-cv-09049-DOC-RNB   Document 4459-3   Filed 12/11/08   Page 31 of 35   Page ID
#:128433
Case 2:04-cv-09049-SGL-RNB   Document 3286   Filed 04/25/2008   Page 7 of 11

At the hearing on this matter, counsel contended that a required element for imposing a fiduciary duty -- that the party with the duty be in a superior position to the party to whom the duty is owed -- was missing.  That element is described as follows:  "[T]he essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1050 (N.D. Cal. 2002) (internal quotation marks and citation omitted).  The "superior position" to which California courts refer in this context is not superior bargaining power -- a position on which Mattel would apparently have the edge -- but rather it refers to a superior position vis-à-vis the duty imposed.  Here, because the duty imposed upon Bryant was essentially to police his own actions by maintaining Mattel's confidentiality and communicating his own "inventions" to Mattel, Bryant was "in a superior position to exert unique influence over" Mattel because he was in the best position, arguably the only one in a position, to know of and police his actions.

As with the duty of loyalty, the undisputed facts establish that Bryant breached his fiduciary duty to communicate his inventions to Mattel when, rather than doing so, he secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products.

Accordingly, the Court grants Mattel's motion for summary judgment on the issues of the existence and breach of the duty of loyalty.  The Court grants Mattel's motion for summary judgment and denies Bryant's motion for summary judgment on the issue of the existence and breach of a fiduciary duty.

In its motion, MGA argued that there can be no liability for aiding and abetting a breach of fiduciary duty in the absence of a fiduciary duty.  Because the Court has rejected this argument, the Court denies MGA's motion for summary judgment on this issue.

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

MGA moved for summary judgment as to Mattel's claim for intentional interference with contractual relations.

The elements of a claim for intentional interference with contractual relations are stated as (1) a valid contract between a plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. Family Home & Finance Center, Inc. v. Federal Home Loan Mortg. Corp., 461 F.Supp.2d 1188, 1193 (C.D. Cal. 2006) (citing Pac. Gas & Elec. Co. v. Bear Stearns Co., 50 Cal.3d 1118, 1126 (1990)).

The undisputed facts show that the first, third, and fifth elements are met.  Mattel has raised a triable issue of fact as to the second.  The fourth element may be resolved after the

Court's further hearing on the motions for partial summary judgment. The Court therefore defers ruling on this issue.

## UNFAIR COMPETITION

MGA and Bryant's motions are granted in part and denied in part as to Mattel's unfair competition claims.

Mattel's statutory unfair competition claim, brought pursuant to Cal. Bus. & Profs. Code § 17200, survives summary judgment because Mattel has raised a triable issue of fact as to whether MGA tortiously interfered with Bryant and Mattel's contractual relationship and whether MGA engaged in commercial bribery.

However, two bases for this claim are foreclosed at this time. To the extent that the § 17200 claim is based on copyright infringement, it is preempted. To the extent that it is based on unfair conduct, summary judgment in favor of MGA is granted because the articulated unfair conduct does not approximate an antitrust violation that threatens competition. See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 186-87 (1999).

As to Mattel's common law unfair competition claim, summary judgment in favor of MGA and Bryant is granted. This claim is not, as it must be, based on the act of passing off another's goods as one's own. See Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1153 (9th Cir. 2008) (citing Bank of the W. v. Superior Court, 2 Cal.4th 1254 (1992)).

## UNJUST ENRICHMENT

Because Mattel failed to oppose this portion of Bryant's motion, the Court grants Bryant's motion for partial summary judgment on the issue of unjust enrichment.

## AFFIRMATIVE DEFENSES

Mattel seeks summary judgment as to many of the affirmative defenses asserted by the MGA entities and Carter Bryant. Most of these defenses are essentially equitable in nature, and therefore the Court **DEFERS RULING** on them until after trial. Specifically, the Court **DEFERS RULING** on the affirmative defenses of abandonment, acts and omissions of others, acquiescence, consent, estoppel, failure to mitigate, laches, unclean hands, and waiver until after trial.

For the reason set forth above in a separate section, the Court defers ruling on Mattel's motion as to the statute of limitations defense.

The final affirmative defense is based on 17 U.S.C. § 205(d). With this affirmative defense, MGA essentially contends that it is a bona fide purchaser for value of the Bratz copyrights which

took the rights in good faith and without notice of any prior transfer of the rights therein to Mattel. As the issue is argued by the parties, the Court would be required to determine the legal issue of whether MGA's registration of the copyrights as an "assignment" constitutes "constructive notice" in the manner required to give MGA the protection of 17 U.S.C. § 205(d). In the Court's view, this is a complex legal issue that is not thoroughly addressed by the parties' briefs. Moreover, the Court notes that a trial on the merits is likely to resolve the less complex factual issue of whether MGA acted in good faith and without notice of an earlier assignment of rights. Accordingly, the Court **DEFERS RULING** on this issue until after the Phase 1 trial.

* * * *

The Court will consider a number of remaining issues at the further hearing on these motions, set for May 19, 2008. Specifically, referencing the parties' Notices of Motion, the Court will consider the following issues:

Mattel's motion: Issue (2)(c), whether there is a factual dispute regarding the timing of certain drawings and a dummy model; issue (3), whether the first-generation Bratz dolls are substantially similar to seventeen drawings and a doll sculpt drawing or blueprint created by Bryant and whether those are original, protectable works of expression; issue (5), whether MGA and Larian are liable for aiding and abetting Bryant's breaches of the duty of loyalty and fiduciary duty; and issue (6)(a) whether Mattel is entitled to summary judgment as to the affirmative defense of statute of limitations.

Bryant's motion: Whether Bryant is entitled to summary judgment as to Mattel's claim for copyright infringement; whether Bryant is entitled to summary judgment as to Mattel's breach of contract claim; and whether Bryant is entitled to summary judgment on any portion of his claim for declaratory relief.

MGA's motion: Whether Mattel's claims are time barred; and whether the fourth element of intentional interference with contractual relations -- actual breach or disruption of the contractual relationship -- can be resolved on summary judgment.

Except for any updates from any party regarding the outstanding discovery matters that may be relevant to the statute of limitations, these issues are considered by the Court to be fully briefed. Any supplemental briefs by the parties on any issue other than the statute of limitations will be stricken by the Court. Any supplemental filings regarding the statute of limitations issue shall be limited to addressing the status of outstanding discovery issues and/or recently produced evidence.

**IT IS SO ORDERED.**

# NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)    **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**  Minute Order of April 25, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So  Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service -  Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✓ | **ADD NEW NOTICE PARTY** (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Ambassador Pierre-Richard Prosper

Firm:

Address *(include suite or floor)*:  P.O. Box 581103

Salt Lake City,  UT   84158

*E-mail:  Prosper.Pierre@Arentfox.com

*Fax No.:

\* For CIVIL cases only

| *JUDGE / MAGISTRATE JUDGE (list below):* |
|---|
| |
| |
| |

**Initials of Deputy Clerk**  jh

Case 2:04-cv-09049-DOC-RNB    Document 4459-3    Filed 12/11/08    Page 35 of 35    Page ID
#:126437
Case 2:04-cv-09049-SGL-RNB    Document 3286    Filed 04/25/2008    Page 11 of 11

# NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)    **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**  Minute Order of April 25, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So  Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service -  Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✓ | ***ADD NEW NOTICE PARTY*** **(if sending by fax, mailing address must also be provided)** |
|---|---|

Name: Hon. Edward A. Infante (Ret.)

Firm:

Address (*include suite or floor*):  Two Embarcadero
Center, Suite 1500, San Francisco,  CA  94111

*E-mail:

*Fax No.:

\* For CIVIL cases only

| ***JUDGE / MAGISTRATE JUDGE (list below):*** |
|---|
| |
| |
| |

**Initials of Deputy Clerk** jh