# EXHIBIT G

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)           Date:  May 21, 2008
Title:       CARTER BRYANT -*v*- MATTEL, INC.

<u>Consolidated With Related Actions</u>:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.,  v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
========================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

              Jim Holmes                    Theresa Lanza
              Courtroom Deputy Clerk         Mark Schweitzer
                                              Court Reporters

<u>ATTORNEYS PRESENT FOR CARTER BRYANT</u>:   <u>ATTORNEYS PRESENT FOR MATTEL</u>:

Christa M. Anderson                    John B. Quinn
Matthew M. Werdegar               Michael T. Zeller
                                                Jon D. Corey

<u>ATTORNEYS PRESENT FOR MGA</u> <u>AND
ISAAC LARIAN</u>:

Thomas J. Nolan
Jason D. Russell

**PROCEEDINGS:**    **ORDER RE MOTION FOR RECONSIDERATION**

                             **ORDER RE THE PARTIES' MOTIONS FOR PARTIAL SUMMARY
                             JUDGMENT**

Case 2:04-cv-09049-DOC-RNB   Document 4459   Filed 12/11/08   Page 3 of 26   Page ID
#:128440
Case 2:04-cv-09049-SGL-RNB   Document 3758   Filed 05/21/2008   Page 2 of 30

This matter is before the Court on the parties' motions for partial summary judgment and Carter Bryant's and MGA's motion for reconsideration.[1]  The motions were heard on April 22, 2008, and again on May 19, 2008.  On April 25, 2008, the Court issued an order granting in part, denying in part, and deferring in part the motions for partial summary judgment.

The Court now issues the following further rulings regarding the motions for partial summary judgment and the motion for reconsideration.

## MOTION FOR RECONSIDERATION

The motion for reconsideration is based on the new California Supreme Court case of <u>City of Hope Nat'l Medical Center v. Genentech, Inc.</u>, 43 Cal. 4th 375 (2008).  After fulling considering <u>City of Hope</u>, however, the Court finds that the case has little applicability to the present case and does not compel a conclusion regarding the existence of a fiduciary duty contrary to that reached by the Court.

<u>City of Hope</u> addresses whether a fiduciary duty can arise (or fail to arise) by <u>operation of law</u> due to the existence of confidential contractual relationship.  At issue in this case is whether the parties' agreement itself created a fiduciary duty.  Under California, these two situations that may give rise to a fiduciary duty -- operation of law or agreement -- are distinct, and California courts have long distinguished between the two.  Despite this clear distinction, Carter Bryant's partial summary judgment papers conflated these principles, as does the motion for reconsideration.

Related to these distinct legal concepts, there is a crucial factual difference between the present case and <u>City of Hope</u>.  The contract at issue in <u>City of Hope</u> did not contain any language that even arguably gave rise to a fiduciary duty.  In contrast, the contract at issue here, for the reasons set forth in the Court's April 25, 2008, Order, sets forth language that does give rise to such a duty.

MGA contends that this Court committed reversible error by holding that the language set forth in ¶ 1(a) of the Inventions Agreement created a fiduciary duty.  <u>City of Hope</u>, MGA contends, held that "the entrusting of secret or confidential information to another 'does not compel the imposition of fiduciary duties by operation of law.'"  Motion at 6 (quoting <u>City of Hope</u>).  As alluded to above, this argument, as well as the other two raised by MGA in the motion, overlooks both the differing contractual language in <u>City of Hope</u> and the present case, as well as the related legal distinction regarding the creation of fiduciary relationships.  Factually, the Inventions Agreement

---

[1]  At the hearing, upon representation of settlement between Mattel and Carter Bryant, and pursuant to the stipulation between Mattel and Carter Bryant, the motion is moot as to Carter Bryant.  However, the Court considers the motion because MGA has joined in the motion on the issue of fiduciary duty.  As set forth on the record, because the claims against Carter Bryant have been dismissed, the Court treats MGA as the moving party.

Case 2:04-cv-09049-DOC-RNB Document 4459-8 Filed 12/11/08 Page 4 of 26 Page ID
#:128441
Case 2:04-cv-09049-SGL-RNB Document 3758 Filed 05/21/2008 Page 3 of 30

did more than merely entrust Bryant with confidential information; rather, as noted in the Court's first summary judgment Order, the Inventions Agreement explicitly conferred upon Bryant, and Bryant explicitly agreed to accept, a "position of trust" vis-à-vis that confidential information. No such explicit undertaking is found in the agreement at issue in <u>City of Hope</u>, the relevant portions of which are set forth in the California Supreme Court opinion.

On that note, the portion of <u>City of Hope</u> upon which MGA relies to support its argument addresses when a fiduciary relationship arises <u>by operation of law</u>. This argument is merely a continuation of Bryant's conflation, first appearing in Bryant's moving and opposition summary judgment papers, of fiduciary relationships that are created by contract and those that arise as a matter of law. The Court's summary judgment holding clearly rests on the former; the arguments raised on reconsideration are premised on the latter. <u>Compare</u> <u>City Solutions, Inc. v. Clear Channel Communications, Inc.</u>, 201 F.Supp.2d 1048, 1050-51 (N.D. Cal. 2002) (cited by the Court and noting that a confidential relationship that gives rise to a fiduciary duty is created "where a confidence is reposed by one person in the integrity of another, and . . . the party in whom the confidence is reposed . . . voluntarily accepts or assumes to accept the confidence . . . .") with <u>City of Hope</u>, 43 Cal.4th 375, __, 75 Cal. Rptr.3d 333, 347 (relied on by Bryant for the proposition that the entrusting of confidential information "does not compel the imposition of fiduciary duties by *operation of law*") (emphasis added).

Although the majority of the motion for reconsideration is unmeritorious, it raises important issues, which the Court must address, regarding the scope of the fiduciary duty created, as well as the breach thereof.

Although the parties argued at length as to <u>whether</u> the Inventions Agreement gave rise to a fiduciary duty, they did not focus on the <u>scope</u> of the fiduciary duty that was created. As noted in the Court's April 25, 2008, Order, the Court held Bryant had undertaken such a duty:

> Bryant . . . owed a fiduciary duty to Mattel by virtue of the language set forth in ¶ 1(a) of the Inventions Agreement. <u>Id.</u> ("The value of the Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.").

April 25, 2008, Order at 5.

The Court also concluded that Bryant had breached that duty:

> [T]he undisputed facts establish that Bryant breached his fiduciary duty to communicate his inventions to Mattel when, rather than doing so, he secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products.

Id. at 6.

Upon re-examination of the Inventions Agreement, however, although the Court can conclude that, as a matter of law, Carter Bryant agreed to undertake a fiduciary duty vis-à-vis Mattel's confidential information, the Court cannot make the same conclusion -- as a matter of law -- regarding whether the fiduciary duty extends beyond Mattel's confidential information.

The language creating the fiduciary relationship appears in the section of the Inventions Agreement related to "Trade Secrets" and "Proprietary Information," and is preceded by language (in the same sentence) that Mattel depends upon employees to "maintain that confidentiality." Just above the signature line of the Inventions Agreement, reference is made again to "IMPORTANT OBLIGATIONS OF TRUST," but that language is clearly meant not to create new obligations, but rather to alert the employee that those obligations are created elsewhere within the agreement.

The question of whether an agreement creates a fiduciary duty is generally a question of fact, although a Court may resolve the question as a matter of law where the relevant facts are uncontroverted. See City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1051 (N.D. Cal. 2002); GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc., 83 Cal.App.4th 409, 417 (2000). Here, although the Court concludes as a matter of law that the Inventions Agreement imposed a fiduciary duty as to Mattel's confidential information, it cannot reach a similar conclusion regarding any broader duty based on the undisputed facts.

Accordingly, the Court **VACATES** the above-quoted language from its April 25 Order finding that Bryant breached his fiduciary duty and leaves the determination of whether Bryant's fiduciary duty beyond Mattel's confidential information as an issue for trial.[2]

One more point raised in the motion for reconsideration is worthy of note. Although Carter Bryant has been dismissed from the case, he raised at least one issue in his motion, in which MGA has not joined, that should not pass without comment by this Court.[3] Clearly, and perhaps understandably, counsel for Carter Bryant were disappointed by the Court's rulings as set forth in the first summary judgment order.[4]

---

[2] The Court also notes that its previous holding necessarily rested on a finding that the materials provided to MGA were indisputably Mattel's property. As set forth in section I, relating to the summary judgment breach of contract issue, that conclusion cannot be drawn as a matter of law on the undisputed facts, and thus summary judgment may not appropriately be granted.

[3] Upon the Court's expression of concern regarding this issue at the hearing on this matter, counsel for MGA explicitly disavowed any joinder in this part of Bryant's motion.

[4] The Court addresses this part of the Order to counsel because counsel are officers of the Court and authors of the comment at issue. The Court also references "counsel" in the plural rather than the singular because all counsel -- author, editor, and signatory -- who were involved in this comment bear responsibility therefor.

However, in addressing what they saw as the deficiencies in the Court's Order, counsel painted with far too broad a brush. Rather than focus the Court's attention on a discrete issue -- or even a number of discrete issues -- counsel resorted to broad language incorporating every argument raised in their summary judgment papers and, without articulated foundation, impugns the integrity of this Court's deliberative process. Nowhere is this more clear than in footnote 7 of the motion for reconsideration; accordingly, the Court's discussion focuses on that portion of the motion, which reads as follows:[5]

> In deciding Mattel's motion for summary judgment, the Court should have applied this standard in Bryant's and MGA's favor. On this issue, and many others, the Court has failed to do so, instead accept Mattel's views of disputed facts and ignoring material factual disputes. Indeed, the Court declined to address objections to evidence, apparently and summarily sustaining all Mattel's objections while denying all Bryant's. Bryant will not reiterate here all of the disputed facts and issues precluding summary judgment in Mattel's favor, which already appear in his (and MGA's) summary judgment briefing and supporting papers.

Motion at 11 n.7.

With this footnote, counsel first takes issue with the Court's application of the summary judgment standard, of which counsel and the Court are well aware. This standard requires the Court to view the evidence in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of the doubt of both any disputes of fact and all reasonable inferences to be drawn from the evidence. Nevertheless, the Court's focus is on ***material*** facts, and the determination of what constitutes a material fact is shaped by legal rulings made by the Court. Some facts that seem material to the parties under their legal theories become immaterial in light of the Court's rulings that reject those theories.

In footnote 7, counsel misrepresents the Court's treatment of the evidence offered in support of and in opposition to the three motions for partial summary judgment. Bryant states that the Court "apparently summarily sustain[ed] all Mattel's objections [and] den[ied] all Bryant's [evidentiary objections]." Id. However, the Court merely noted that, where a ruling necessarily relied upon evidence to which parties had made objections, the objections thereto were implicitly overruled:

---

[5] Footnote 7, however, is not the only offending portion of the motion for reconsideration. See e.g., Motion at 2 n.1 (referring to "the Order's other errors, including misapplication of the summary judgment standard," stating that those errors "will also require correction," but noting that the motion "does not discuss those flaws in detail"); motion at 9 n.5 (incorporating unspecified portions of his summary judgment briefing).

MINUTES FORM 90

CIVIL -- GEN

Initials of Deputy Clerk: jh

Time: 2/52

> The parties have made hundreds of objections to evidence
> offered in support of and in opposition to the motions for partial
> summary judgment. Although counsel for Bryant requested explicit
> rulings on the objections raised by Bryant, the Court declines to do so.
> To the extent that this Order necessarily relies on evidence subject to
> any party's objection, the objections are implicitly overruled.

April 25, 2008, Order at 1-2. This is a vastly different statement than that made by counsel. Counsel's characterization of the Court's ruling implies that the Court, without inquiry into the merits of Bryant's objections, arbitrarily denied them all. The Court's Order merely recognizes that, by operation of law, to the extent a court relies upon objected-to evidence, and where, as where, the evidence must be admissible to be relied upon for such ruling, any objections raised thereto are implicitly overruled.

In addition to mounting an overly broad -- and baseless -- attack on the integrity of the Court's deliberative process on a grand scale, counsel fail to support the more narrow point they appear to be making in footnote 7. Footnote 7 is appended to text that takes issue with the Court's conclusion that Bryant did nothing more than merely "prepare to compete" with his employer and, thus, in Bryant's view, did not breach his duty of loyalty or fiduciary duty. See Motion at 10.

Although the footnote does not alert the Court to any particular material facts -- disputed or undisputed -- which counsel contend were overlooked by the Court, the text to which the footnote is appended provides valuable clues on this issue. From this text, the Court's attention is directed to Bryant's Opposition at 23-24. The Court notes that the pages of that document refer to no factual contentions; rather, those pages are devoted to legal arguments and conclusions. However, reading further in the opposition, at page 29, the Court finally encounters a citation to the facts upon which counsel rely. They reference "SGI 151" and SGI "154-156".

Although obvious to counsel who practice in this district, and certainly to counsel of record here, to guide the uninitiated, the Court notes that in a summary judgment opposition filed in this Court, "SGI" clearly refers to the "Statement of Genuine Issues" filed by a party opposing a summary judgment motion. See Local Rule 56-2. Referring to that document, found at docket # 2778, one finds that material facts are numbered sequentially, and that "SGI 151" refers to the fact numbered "151." The subsequently cited facts, "154-156," not surprisingly, are found on the page that follows.

Having thus traversed this far to ascertain the material facts upon which counsel relies for its sweeping criticism of the Court's deliberative process, the Court notes those facts below.

Bryant signed the MGA contract on October 4, 2008, and gave notice of his resignation to Mattel the same day. SGI 151. Before Bryant left Mattel, he told various Mattel employees, including managerial employees, that he was going to start his own business as a freelance designer, working on his own doll line as an independent contractor. SGI 154. Mattel's exit interview form for Bryant reflects that during his exit interview, he told Mattel's HR representative,

Sandy Yonemoto, that he was leaving for a new job as a "business owner" in "illustration/product design" because an "[o]pportunity arose -- had to take it."  SGI 155.  Bryant did not tell anyone at Mattel that he was leaving Mattel to work with a non-competitor, nor did Mattel inquire.  SGI 156.

In accordance with the summary judgment standard, the Court viewed these facts in the light most favorable to Bryant.  However, on the "preparations to compete" point, these facts are not material.  They relate to the circumstances of his departure; essentially, Bryant's point is that he did not lie to Mattel when he left.  Although this may well be true, the circumstances surrounding the announcement of his resignation and the last days of his employment with Mattel tell only part of the story.

Even assuming Bryant gave notice of his resignation to Mattel the same day he signed his contract, it is uncontroverted that he continued working for Mattel after that date; so Bryant's fact, which tends to imply that he made a clean break with Mattel the moment he established a contractual relationship with MGA, becomes immaterial when viewed in connection with the uncontroverted fact that he continued working for Mattel after he signed his MGA contract, as the latter fact neutralizes the implication presented by the former fact when it stood alone.  Additionally, notwithstanding the fact that Bryant gave notice of his resignation the same day he signed his contract, the substance of his contract remains the same, including Bryant's agreement to begin working for MGA on a "top priority" basis, as does the undisputed fact that he entered into a contract with Mattel's competitor to produce a competing product while he was still employed by Mattel.

Moreover, the fact that he gave Mattel various descriptions of what he intended to do professionally *in the future*, any one of which might imply that he was leaving to pursue independent interests that would compete with or had a tendency to compete with Mattel, similarly does not detract from his past and/or then-present actions, or the fact that he was already under contract to compete with Mattel.

Thus, counsel's criticism of the Court's deliberative process is both overly broad and unfounded.  Perhaps footnote 7 should come as no surprise to the Court.  The parties in this action are engaged in what they themselves have described as high-stakes "corporate warfare."  However, whatever the rules of engagement may be for such warfare, those rules are decidedly **not** representative of the standard of conduct which the parties -- and their counsel -- should look to for guidance as to how they should conduct themselves in or before this Court.

Counsel for Carter Bryant, and indeed, all counsel in this case and who practice before this Court, are strongly urged to concisely and precisely articulate their requests for relief in a manner that refrains from the unintentional impugning of the integrity of the Court's deliberative process.  Counsel for all parties are reminded that this Court has extended to all counsel and all parties a similar professional courtesy.

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** the motion for

Case 2:04-cv-09049-DOC-RNB Document 4459-8 Filed 12/11/08 Page 9 of 26 Page ID
#:128446
Case 2:04-cv-09049-SGL-RNB Document 3758 Filed 05/21/2008 Page 8 of 10

reconsideration.  The Court **VACATES** that portion of its April 25, 2008, order that found, as a matter of law, that Bryant breached his fiduciary duty.

**MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

### I. BREACH OF CONTRACT

Mattel seeks summary judgment on its breach of contract claim.  Resolution of the breach of contract issue is largely an issue of timing.

There are undisputed facts regarding the timing of the creation of three categories of materials, but there are factors regarding each of these three categories that preclude a grant of summary judgment at this time.

Specifically, it is uncontroverted that four drawings (each with a color and a black-and-white version) of dolls in evening wear, were created by Bryant during the period of his employment with Mattel.  However, the scope of the rights that may be assigned to Mattel under the Inventions Agreement is unclear in light of the larger disputed factual issue regarding the remaining Bratz drawings.

It is also undisputed that, during the period of his employment, Bryant created a dummy doll, anticipating it would used in his pitch of Bratz to MGA.  However, this dummy is apparently no longer in existence, and therefore the scope of any rights owned by Mattel cannot be ascertained from the undisputed facts.

Finally, it is undisputed that a drawing by Bryant, from which the sculpt of the Bratz doll was made, was created during the period of Bryant's employment with Mattel.  However, the record also reflects that this drawing was made on the basis of an earlier sculpt, and the record is not entirely clear as to who had input into that sculpt, nor is it clear what, if any, legal conclusions the Court could draw from a clear record on this issue.

Additionally, the larger timing issue regarding the remaining Bratz drawings, as admitted by the parties, involve triable issues of fact.

Accordingly, the Court **DENIES** Mattel's motion for summary judgment as to its claim for breach of contract.

### II.  COPYRIGHT INFRINGEMENT

In order to establish copyright infringement, a plaintiff must establish three elements: (1) ownership of a valid copyright, (2) the defendant's access to the original, and (3) substantial similarity between the copyrighted work and the allegedly infringing work.  <u>Lamps Plus, Inc. v. Seattle Lighting Fixture Co.</u>, 345 F.3d 1140, 1144 (9th Cir. 2003).

Case 2:04-cv-09049-DOC-RNB Document 4459-75 Filed 12/11/08 Page 10 of 26 Page ID
Case 2:04-cv-09049-SGL-RNB Document 3758 Filed 05/21/2008 Page 9 of 10
#:128447

Here, Mattel asks the Court to undertake the fact-specific determination involved in the third element, aided in large part by expert testimony, when the first element is clearly in dispute. Although often summary adjudication of one element of a claim is appropriate, such is not the case here. In order to undertake the substantial similarity analysis, the Court must compare a copyrighted work with an allegedly infringing work. The Court may not perform a meaningful substantial similarity analysis without the copyrighted work that is the foundation of that analysis.

Accordingly, the Court **DENIES** Mattel's motion for summary judgment on this issue.

### III.  AIDING AND ABETTING

MGA and Larian are accused of aiding and abetting Bryant's breach of the duty of loyalty and breach of fiduciary duty.

For reasons ably set forth by counsel for MGA at the hearing, the Court finds that there are triable issues of fact as to the issue of aiding and abetting any breaches of the duty of loyalty and fiduciary duty by Carter Bryant and therefore **DENIES** Mattel's motion for summary judgment on this issue.

### IV. INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

MGA moved for summary judgment as to Mattel's claim for intentional interference with contractual relations. The Court previously denied MGA's motion, noting however, that the first, third, and fifth elements were met, and that Mattel has raised a triable issue of fact as to the second element.[6]

However, upon reflection, and in light of the Court's ruling regarding the aiding and abetting claims, the Court now concludes that, although Mattel has raised a triable issue of fact regarding the third element, the Court may not at this point conclude that the undisputed facts establish the third element. The Court leaves undisturbed its ruling that Mattel has raised a triable issue of fact as to the second element.

As set forth above, Mattel has also raised triable issues of fact regarding its claim for breach of contract, the fourth element.

Despite these minor changes in the Court's previous ruling, the disposition of this portion of

---

[6] The elements of a claim for intentional interference with contractual relations are stated as (1) a valid contract between a plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. Family Home & Finance Center, Inc. v. Federal Home Loan Mortg. Corp., 461 F.Supp.2d 1188, 1193 (C.D. Cal. 2006) (citing Pac. Gas & Elec. Co. v. Bear Stearns Co., 50 Cal.3d 1118, 1126 (1990)).

Case 2:04-cv-09049-DOC-RNB Document 4459-8 Filed 12/11/08 Page 11 of 26 Page ID
#:128448
Case 2:04-cv-09049-SGL-RNB Document 3758 Filed 05/29/2008 Page 10 of 10

MGA's motion remains unchanged: MGA's motion is **DENIED** to the extent it seeks summary judgment on Mattel's claim for intentional interference with contractual relations.

## V. UNFAIR COMPETITION

As noted by counsel for MGA at the May 19, 2008, hearing, the Court's first summary judgment left unaddressed Mattel's statutory unfair competition claim to the extent that is based on fraudulent conduct. Mattel did not contend in opposition to MGA's motion for partial summary judgment that this claim was based on any fraudulent conduct.

In its first summary judgment order, the Court eliminated two bases for Mattel's statutory unfair competition. See April 25, 2008, Order (referring to the unfair competition claim to the extent it is based on copyright infringement and to the extent it is based on unfair conduct). The Court now holds that this third basis can also be eliminated at this time.

## VI. STATUTE OF LIMITATIONS

At the second hearing on the motions for partial summary judgment, for the first time, counsel for MGA referenced evidence in support of its statute of limitations argument, attached to a declaration that had not been served on opposing counsel and that had been filed earlier the same afternoon. Counsel thereafter made legal arguments regarding the conclusions to be drawn from this evidence.

Mattel had little opportunity to respond to MGA's arguments, as it was not entirely clear at the hearing to what evidence MGA referred in making its arguments. Accordingly, the Court has afforded Mattel the opportunity to respond to this argument and therefore **DEFERS** ruling on the statute of limitations issue until the Court has had the opportunity to review Mattel's response.

**IT IS SO ORDERED.**

# EXHIBIT H

Case 2:04-cv-09049-DOC-RNB   Document 4459-4   Filed 12/11/08   Page 13 of 26   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 3640   Filed 05/27/2008   Page 1 of 9
#:128450

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES – GENERAL

Case No.   CV 04-09049 SGL(RNBx)                              Date:  May 27, 2008
Title:        CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.,  v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
============================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

                    Gina Guzman
                    Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:        ATTORNEYS PRESENT FOR MATTEL:

None Present                                                 None Present


ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

PROCEEDINGS:   **ORDER RE STATUTE OF LIMITATIONS DEFENSE**

        Each of the remaining parties to this action, Mattel and MGA, seek summary judgment on
the issue of statute of limitations.  Crucial to resolution of this issue, is application of California's
"discovery rule," which can delay the accrual of a claim.  Both parties have offered evidence in
support of their positions.[1]  For its part, Mattel contends that its claims against Carter Bryant arose
on November 24, 2003, and that its claims against the MGA entities, including MGA CEO Isaac
Larian, arose on November 4, 2004, the date of Carter Bryant's deposition, at which he testified
regarding MGA and Larian's involvement in his actions.

_____

        [1]  Although he is no longer a party, the Court discusses at length the timeliness of the
claims asserted against Carter Bryant because it is relevant to the Court's relation-back analysis of
the claims asserted against MGA.

MINUTES FORM 90                                                      Initials of Deputy Clerk: gg
CIVIL -- GEN                              Page 1                     Time:  0/00

At oral argument and in its briefs, MGA argues at length that Mattel's claims against Bryant accrued some time shortly after Bryant left Mattel's employ in October, 2000. In support of this argument, MGA offered evidence that Mattel has always believed that it took nine months to bring a doll through the stages of development and to market. From that knowledge, in MGA's view, the sudden appearance of the Bratz dolls at a toy fair in Tokyo in January, 2001, should have aroused their suspicions.

MGA cites to the deposition of Bryant's co-worker, who had suspicions at the time Bryant resigned that Bryant was going to work for a competitor based on her subjective belief that Bryant would not pursue any other vocation other than doll designer.

MGA contends that Mattel could have looked at Bryant's phone records and determined that he had called MGA a number of times during the month pre-dating his resignation.

There is evidence that one of Bryant's co-workers believed it was "common knowledge," sometime in 2001, that Bryant probably designed Bratz.

The undisputed facts establish that in August, 2002, an anonymous letter was sent to Mattel's CEO stating that Bryant had designed Bratz. This letter is the first indication that Bryant may have worked on Bratz during the period of his employment with Mattel. See Zeller Decl. Ex. 63 ("While he was working with Mattel and working to create these dolls he worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls and the fact that they are rightly Mattel dolls.").

The undisputed facts also establish that on July 18, 2003, the Wall Street Journal published an article entitled "Dolled Up: To Lure Older Girls, Mattel Brings In Hip-Hop Crowd." In that article, MGA's CEO Isaac Larian is attributed with a statement that Carter Bryant was the creator of Bratz. The article states:

> Isaac Larian, chief executive of MGA, says he had never heard
> of a project similar to the Bratz at Mattel. He says he chose Mr.
> Bryant's idea for Bryant over several others after holding a sort of
> fashion-doll design contest in late 1999.

Zeller Decl. Ex. 118.

At the close of the second hearing, held on May 19, 2008, MGA offered, for the first time, evidence in the form of a time line that showed that a "claim" from a lawsuit filed in Hong Kong by MGA was received by Mattel on September 23, 2003. See Bogorad Supp. Decl. Ex. 145. A copy of court documents from that litigation shows that MGA claimed ownership of Bratz fashion dolls and that, more specifically, at issue were "17 design drawings of various fashion dolls between the years 1998 and 2000." Id. at Ex. 143. Exhibit 143 is a ten-page document captioned as "STATEMENT OF CLAIM" and appears to the Court to be, under Hong Kong law, the equivalent of a complaint. MGA's ownership to the 17 drawings referenced in the "STATEMENT OF CLAIM"

was based on Bryant's creation of the design drawings during a time period that includes his employment at Mattel. Id.

Also at this time, MGA offered a letter, dated October 17, 2003, from Mattel's Hong Kong counsel to Mattel, that discusses the propriety of providing to Mattel certain documents relating to the City World litigation. Within this letter, certain key details of the "STATEMENT OF CLAIM" were referenced. See Supp. Bogorad Ex. 146 ("One of the exhibits referred to in such Affirmation was a set of coloured drawings described as '17 initial concept and design drawings of the Bratz dolls made by Mr. Carter Bryant in the year 2000.'").

After being given an opportunity to respond to this last-minute evidence, Mattel offered as evidence the documents it received on September 23, 2003, and that evidence did not include the document marked as Ex. 143. See Supp. Moore Decl. Ex. A. The documents Mattel received do not include any reference to Carter Bryant or the dates of creation of the 17 drawings. See id. Instead, it consists of a copy of a "writ of summons" in that same litigation.

In responding to this evidence, counsel for MGA first incorrectly contended that the declaration of in-house counsel, Michael Moore, did not deny receiving a copy of the City World claim setting forth this key language. Compare Reply at 1 ("**Mr. Moore, the only witness offered by Mattel, does *not* deny that Mattel took possession of a copy of the City World claim on or about September 23, 2003**.") (emphasis in the original) with Supp. Moore Decl. ¶ 3 (attaching as Exhibit A all documents received from Mattel's Hong Kong counsel on September 23, 2003; noting that public access to court files in Hong Kong is limited; and verifying that the materials attached as Exhibit A (which does not include the key language regarding Carter Bryant's creation of Bratz drawings) "were the only ones relating to MGA's litigation that Mattel's Hong Kong counsel were allowed to obtain from the Hong Kong court files").

More disturbingly, however, counsel for MGA next lobbed unsubstantiated assaults on Mr. Moore's truthfulness. Counsel states that the documents "appear to have been doctored or manipulated in some fashion." Reply at 2. Counsel does so because the fax itself has an anomalous pagination in the fax header line wherein the first ten pages are numbered "01, 02 . . . 10," and the numbers thereafter are numbered "11/46, 12/46 . . . 46/46." Supp. Moore Ex. A.

This Court has indicated on a number of occasions, most strikingly in connection with its consideration of Mattel's motion to disqualify counsel for MGA, that it will not countenance unsubstantiated dispersions cast upon opposing counsel. Where there is *evidence* of unethical behavior, the Court expects to be made aware of that evidence; where, however, there is mere *speculation* of such behavior, no legitimate purpose is served by its airing.

Nevertheless, focusing on the additional evidence offered by MGA on May 19, 2008, the time line produced in connection with the Simpson-Taylor deposition makes reference to a City World "claim" that was received by Mattel on September 23, 2003. Although this time line stops short of acknowledging that the document entitled "STATEMENT OF CLAIM" was received in

Case 2:04-cv-09049-DOC-RNB   Document 4459-4   Filed 12/11/08   Page 16 of 26   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 3483   Filed 05/27/2008   Page 4 of 9
#:123458

September, it is nevertheless sufficient to controvert Moore's declaration regarding whether the
"STATEMENT OF CLAIM" was in fact received on this date.  Moreover, the October 17, 2003,
letter raises an inference regarding the full scope of Mattel's pre-November 23, 2003, knowledge
of the contents of the "STATEMENT OF CLAIM."

It is uncontroverted that Mattel first received a copy of the Bryant-MGA contract, the
effective date of which pre-dated the effective date of Bryant's resignation from Mattel, on
November 24, 2003.

Where a plaintiff advances a state-law claim under California law, federal courts apply the
California "discovery rule" to determine whether the state-law claim is time-barred.  See, e.g.,
Orkin v. Taylor, 487 F.3d 734, 741 (9th Cir. 2007).

The Court's analysis begins with the unremarkable proposition that "[a] plaintiff must bring a
claim within the limitations period after accrual of the cause of action."  Fox v. Ethicon
Endo-Surgery, Inc., 35 Cal.4th 797, 806 (Cal. 2005) (citation omitted).  To apply this unremarkable
proposition, however, the Court must determine what the California Supreme Court means by
"accrual of the cause of action."

In that regard, the California Supreme Court has stated that, "[g]enerally speaking, a cause
of action accrues at the time when the cause of action *is complete with all of its elements*," id.
at 807 (emphasis added) (citation omitted), a phrase which itself must be expounded upon further
to ascertain its meaning.  When applying the discovery rule, those "elements" are not "specific
legal element[s] of a particular cause of action"; rather, they are the "'generic' elements of
wrongdoing, causation, and harm."  Id. (citation omitted).

The definition of those terms gives a more comprehensive understanding to the California
Supreme Court's statement that "the 'discovery rule' . . . postpones accrual of a cause of action
until the plaintiff discovers, or has reason to discover, the cause of action."  Id. (citation omitted).
In turn, "[a] plaintiff has reason to discover a cause of action when he or she has reason at least to
suspect a factual basis for its elements."  Id. (internal quotation marks and citation omitted).
Further refined, where a plaintiff has *knowledge* of at least one of the three generic elements, and
*suspicion* of the remaining generic elements, the claim has accrued and the limitations period has
begun to run.  Id. (citation omitted).

This rule is designed to require plaintiffs to diligently investigate their potential claims.  See
id. at 808.  To that end, in the context of a personal injury action, the California Supreme Court has
stated that "plaintiffs are required to conduct a reasonable investigation after becoming aware of
an injury, and are charged with knowledge of the information that would have been revealed by
such an investigation."  Id.  Of course, this statement must itself be viewed with the definition of
"injury" the California Supreme Court considered:  "At common law, the term 'injury,' as used in
determining the date of accrual of a cause of action, means both a person's physical condition and
its negligent cause. . . .  Thus, physical injury alone is often insufficient to trigger the statute of
limitations."  Id. at 808 n.2 (internal quotation marks and citation omitted).

This requirement of diligence, stated otherwise, prohibits California plaintiffs from passively waiting for the facts supporting their claim to find them and places on them an affirmative requirement to investigate:

> Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.

Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1111 (Cal.1988).

The Jolly court discussed two examples in explaining this standard. First, it cited to Miller v. Bechtel Corp., 33 Cal.3d 868, 874 (Cal.1983), which held time barred the fraud claim of a plaintiff who had suspicions that the value of her husband's stock was understated at the time of their dissolution agreement, but who failed to assert her claim until years later when the stock was sold. Id. In that case, the plaintiff's lawyer sought information, both before the dissolution and within a few months thereafter, regarding the method by which the stock was valued. Id. at 875. When the response was not forthcoming, the lawyer chose not to pursue this inquiry further, and thus plaintiff was charged with knowledge of the facts the investigation would have uncovered – that the stock was valued by the price attributed to it in the shareholders' agreement rather than by any objective valuation. Id.

Second, the Jolly court cited to Gray v. Reeves, 76 Cal.App.3d 567 (Cal. App.1977), which held that a plaintiff's claim based on his use of a prescription drug arose when the plaintiff understood the nature of his injury (deterioration of the hip socket) and the probable cause thereof (the use of the prescription drug prednisone) as well as the identity of the prescribing doctor and the drug's manufacturer.

Although the discovery rule has been largely developed in tort cases, the rule has also been applied in cases involving contract claims. See e.g., April Enterprises, Inc. v. KTTV, 147 Cal.App.3d 805, 832 (1983) ("Specifically, we hold the discovery rule may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time."); Intermedics, Inc. v. Ventritex, Inc., 775 F.Supp. 1258, 1266-67 (N.D. Cal. 1991).

Thus, California's discovery rule is easily understood in the abstract; moreover, it is often easily applied in particular factual situations. Here, however, this Court's application of the rule in this case is not so clear cut, and the Court must consider the premises underlying the parties' respective analysis of this issue.

In substance, MGA contends that Mattel was on notice as early as February, 2001, of a potential claim that Carter Bryant breached the confidentiality provision of his contract by borrowing from or plagiarizing certain non-public Mattel projects. This date coincides with the display of the Bratz dolls at a New York Toy Fair and "speculation in the media started about

Case 2:04-cv-09049-DOC-RNB   Document 4459-4   Filed 12/11/08   Page 18 of 26   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 3848   Filed 05/27/2008   Page 6 of 9
#:128435

alleged similarities between the BRATZ and Mattel's internal projects." MGA Motion at 18. Alternatively, MGA posits March 15, 2002, the beginning date of an internal Mattel investigation into MGA and Larian's involvement in Bryant's creation and development of Bratz, as the date Mattel's current claims accrued.

Mattel, on the other hand, contends that MGA is essentially arguing that a claim Mattel chose not to bring – that Bratz infringed on the Mattel projects of Toon Teens and Diva Starz – is time barred. Mattel points out that it has previously disavowed, and that it continues to disavow, any intent to assert such a claim. Rather, Mattel contends that it is bringing a different claim, a claim that Mattel has rights to Bratz pursuant to the Inventions Agreement based on Bryant's actions during the period of his employment with Mattel.

In determining, under California law, which of the parties' diametrically opposed positions represent the better approach, the Court is guided by the California Supreme Court case cited above, Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 806 (Cal. 2005). In that case, a plaintiff, suffering from complications following gastric bypass surgery, sued for medical malpractice. Id. at 802. During the course of discovery, she learned, through the testimony provided at the deposition of her surgeon, that she had a potential claim against the manufacturer of a surgical stapler. Id. at 804. Specifically, the plaintiff's surgeon testified that he had found on previous occasions that the particular stapler had caused post-surgery leaks. Id. When the plaintiff amended the complaint to assert a products liability claim, the trial court, on statute of limitations grounds, sustained a demmurrer without leave to amend, reasoning that "when a plaintiff sues based on knowledge or suspicion of negligence, . . . the statute of limitations begins to run as to all defendants, including manufacturers possibly liable under products liability theories." Id.

The Court of Appeal reversed, and the California Supreme Court affirmed the reversal. Id. at 812, 816. In doing so, the California Supreme Court rejected, as inconsistent with its precedent, the so-called "the Bristol-Myers Squibb rule that all claims arising from an injury accrue simultaneously, even if based upon distinct types of wrongdoing, is inconsistent with the generic elements approach . . . ." Id. at 815.

From this discussion, a parallel begins to emerge that MGA's position is like that of the demurring defendant who seeks to dismiss a products liability claim on the basis of plaintiff's discovery of a different claim of medical malpractice, and Mattel's position is like that of the plaintiff who seeks to assert the that products liability claim. In a sense, however, this analogy goes nowhere, as MGA's position is that the claim Mattel asserts in the current action is not different from the potential claim for which it was on notice of in 2001. After all, both would be based on breach of contract and/or copyright claims, both would involve the same defendants, and both would result in the same type of injury.

However, the Fox Court's elaboration on the rule it enunciates convinces the Court that Mattel's position is the stronger one. After discussing the application of its rule in the more narrow situation presented by the overlap of medical malpractice and products liability claims at issue in the case before it, the Fox Court explained:

Initials of Deputy Clerk: gg
Time:  0/00

Case 2:04-cv-09049-DOC-RNB   Document 4459-4   Filed 12/11/08   Page 19 of 26   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 3824   Filed 05/27/2008   Page 7 of 9
#:128486

> More broadly stated, if a plaintiff's reasonable and diligent investigation
> discloses only one kind of wrongdoing when the injury was actually
> caused by tortious conduct of a wholly different sort, the discovery rule
> postpones accrual of the statute of limitations on the newly discovered
> claim.

Id. at 813. In analyzing the discovery rule, the term "wrongdoing" is used not in a technical or legal sense, but in its everyday meaning. Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1111 (1988) ("In this context, 'wrong,' 'wrongdoing,' and 'wrongful' are used in their lay understanding.").

Here, on one hand, we have a breach of contract claim or copyright infringement claim based on alleged copying or "borrowing" of Mattel's undisputed rights in Toon Teens and/or Diva Starz to create Bratz that perhaps Mattel was on notice of as early as 2001, and which Mattel admittedly investigated as early as 2002, but upon which Mattel ultimately chose not to file suit. On the other hand, we have the claims asserted here, for breach of contract and copyright infringement, based on Mattel's (disputed) ownership rights to the Bratz drawings pursuant to Bryant's employment agreement with Mattel and in light of the (disputed) fact that Carter Bryant created these works during the period of his employment with Mattel. Applied to the present case, in the Court's view, the question the Court must ask is whether the first type of claim is based on qualitatively different type of "wrongdoing" – as that term might be understood by lay persons – than that which gives rise to the present claims.

Thus framed, the Court considers the two claims:  Although they are similar in that they both include the wrongdoing of the failure to keep one's promise to maintain confidentiality, they are qualitatively different, however, in that the former situation involves the alleged taking of rights known to Mattel while the latter involves the alleged concealment of certain creations that belong to Mattel in the first instance in order to facilitate the taking of rights unknown to Mattel.  This fundamental difference leads the Court to the conclusion that the latter claims, those asserted here, involve a different element of "wrongdoing" than do the unasserted claims based on Toon Teens and/or Diva Starz.

The burden of proof on the discovery rule issue is on Mattel.[2]  Examining the claim Mattel asserts, rather than the claim Mattel chose not to assert, the Court must determine whether Mattel had knowledge of any one of the three generic elements of wrongdoing, causation, or damages, coupled with suspicion of the remaining generic elements.  This determination cannot be made on the undisputed record before the Court.

Rather, MGA has raised triable issues of fact precluding summary judgment on the statute of limitations issue.  Any of the following could be the date upon which MGA claims against Carter

---

[2]  See Fox, 35 Cal.4th at 803 (imposing upon a plaintiff that seeks to take advantage of the discovery rule a requirement that it "plead[] and prove[] that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action).

Case 2:04-cv-09049-DOC-RNB   Document 4459-4   Filed 12/11/08   Page 20 of 26   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 3845   Filed 05/27/2008   Page 8 of 9
#:128457

Bryant accrued:  The July 18, 2003, <u>Wall Street Journal</u> article; the September 23, 2003, date of receipt of the City World "claim"; the October 17, 2003, date of counsel's letter to Mattel regarding the City World litigation; or the November 24, 2003, date of receipt of the MGA-Bryant agreement that pre-dated Bryant's resignation of his employment.[3]

   The accrual of a copyright claim, as the parties recognize, approximates the state-law standard discussed herein.  <u>See</u> <u>Polar Bear Productions, Inc. v. Timex Corp.</u>, 384 F.3d 700, 706 (9th Cir. 2004) ("Thus, . . . the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances.").  Accordingly, the Court makes the same conclusion regarding the accrual date of Mattel's copyright claim against Carter Bryant as it does regarding the accrual date of Bryant's state-law claims.

   As stated earlier, although Bryant is no longer a party to this action, the parties recognize, as does the Court, that the timeliness of the claims asserted against Carter Bryant is relevant because of the potential that Mattel's claims against the MGA entities and Isaac Larian may, pursuant to Fed. R. Civ. P. 15(c), relate back to those claims.  Mattel embraces the concept of relation back; MGA rejects it.

   Although such distinction has not been particularly important at other points in this litigation, the Court has referred to the MGA entities and Isaac Larian collectively as MGA.  More specifically, as to Phase 1, there are two separate MGA entities:  MGA Entertainment, Inc. and MGA Entertainment HK Limited.  There is also MGA's CEO, Isaac Larian.  This distinction is important to the Court's analysis of relation back.

   MGA Entertainment, Inc., but <u>not</u> Isaac Larian or the other MGA entity, intervened in this action on December 7, 2004.  Therefore, based on the status of MGA Entertainment, Inc., as a party, the standard for whether the claims relate back differs from that governing the relation back of claims against MGA Entertainment HK Limited.  <u>See</u> <u>infra</u>.  As this Court has noted before, the Phase 1 claims against MGA sought to be asserted by Mattel on November 20, 2006, which arise out of the same factual allegations as do the claims asserted by Mattel against Carter Bryant on April 27, 2004, relate back to the date that complaint was filed.  <u>See</u> Court's Jan. 12, 2007, Order at 13-15.  The Court does not revisit that issue now.

   MGA argues that "some courts have dis-allowed 'relation back' of claims against intervening *defendants*." MGA Opp. at 25 n.21 (emphasis in original).  However, in support of this argument, MGA cites a two-page Texas appellate court decision which does not cite to or interpret Fed. R. Civ. P. 15(c), <u>Davis v. Outdoor Equip. Co.</u>, 551 S.W.3d 72, 73 (Tex. Ct. App. 1977), which the Court finds unpersuasive.

   As to the new parties sought to be added on November 20, 2006 (MGA Entertainment HK

_____

   [3]   The analysis is slightly different for the conversion claim.  <u>See</u> <u>infra</u> at 9-10.

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: gg
Time:  0/00

Case 2:04-cv-09049-DOC-RNB   Document 4459-4   Filed 12/11/08   Page 21 of 26   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 3658   Filed 05/27/2008   Page 9 of 9
#:128458

Limited and Isaac Larian), MGA challenges the timeliness of the amendment to add these parties
based on whether their identities were known to Mattel at an earlier date.  The Court has already
held that the claims against them relate back to the April, 2004, complaint.  See Court's Jan. 12,
2007, Order at 15-16 n.5.  The Court will not revisit that issue either.

     The Court rejects the proposition, however, that the claims against both MGA entities did
not arise until the date of Carter Bryant's deposition.  Whatever the date on which the claims
against Carter Bryant arose is ultimately found to be, the August 2002 anonymous letter should
have given Mattel a suspicion of that MGA Entertainment, Inc., participated in any wrongdoing by
Carter Bryant.  See Zeller Decl. Ex. 63 (alleging that Carter Bryant "worked out a deal with MGA
that let him collect a large sum of money each year from MGA in exchange for his secrecy about
the dolls").

     The same is not true as to MGA Entertainment HK Limited and as to Isaac Larian, whom
the anonymous letter did not implicate.  Therefore, the claims against these defendants arose no
earlier than November 4, 2004.

     Intentional interference with contractual relations is subject to a two-year statute of
limitations.  MGA contends that the claim accrues upon the breach of contract, and therefore
argues that the claim was untimely before it was asserted against Carter Bryant.  They make a
similar argument regarding Mattel's conversion claim, which carries with it a three-year statute of
limitations.

     However, the statute of limitations for breach of contract is tolled during a period of
fraudulent concealment.  Gryczman v. 4550 Pico Partners, Ltd., 107 Cal.App.4th 1, 5 (2003).  The
rationale for such tolling easily extends to intentional interference with contractual relations claim,
which includes the element of a breach of a contract.  The limitations period is likewise tolled
during a period of fraudulent concealment as to a conversion claim.  AmerUS Life Ins. Co. v. Bank
of America, 143 Cal.App.4th 631, 639 (2006) ("To the extent our courts have recognized a
'discovery rule' exception to toll the statute, it has only been when the defendant in a conversion
action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts
in violation of his or her fiduciary duty to the plaintiff.")  Mattel has raised a triable issue of fact as to
whether the evidence of the breach and the tortious interference thereof was fraudulently
concealed from them before the July 18, 2003, Wall Street Journal article.

     The Court will permit further briefing from the parties on the limited issue of what further
conclusions regarding the timeliness of each claim should be drawn as a result of this Order.  The
parties' simultaneous briefs shall be limited to seven pages in length, and shall not re-argue any
point upon which the Court has ruled in this Order or its previous two summary judgment Orders.
The briefs shall be e-filed no later than 8:30 a.m., Thursday, May 29, 2008, and a courtesy copy
must be provided to chambers at the same time.  The parties shall also file, as exhibits thereto,
their revised proposed special interrogatories on the issue of statute of limitations.

    **IT IS SO ORDERED.**

# EXHIBIT I

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                          Date:  June 2, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.  v. CARTER BRYANT
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC. v. MATTEL, INC.
================================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Jim Holmes
            Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:     ATTORNEYS PRESENT FOR MATTEL:

None Present                              None Present


ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

PROCEEDINGS:   **FURTHER AND FINAL ORDER RE STATUTE OF LIMITATIONS DEFENSE
               (IN CHAMBERS)**

        In an order dated May 27, 2008, the Court made several rulings regarding the timeliness of
Mattel's claims ("SOL Order").  At that time, the Court invited further, limited briefing from the
parties regarding "what further conclusions regarding the timeliness of each claim should be
drawn" in light of the Court's rulings.  The parties filed further briefing in conformity with the Court's
Order, which the Court has reviewed.

        As a result of the briefing, the Court discusses the following issues:  (1) Clarification of the
Court's Ruling Regarding the August 2002 Anonymous Letter; (2) Clarification of the Court's
Ruling Regarding Fraudulent Concealment and Mattel's Claims for Intentional Interference with
Contractual Relations and Conversion; and (3) Accrual of Mattel's Copyright Claim.

MINUTES FORM 90                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                          1

Case 2:04-cv-09049-DOC-RNB   Document 4459-4   Filed 12/11/08   Page 24 of 26   Page ID
#:128461
Case 2:04-cv-09049-SGL-RNB   Document 3902   Filed 06/02/2008   Page 2 of 4

## I. Clarification of the Court's Ruling Regarding the August 2002 Anonymous Letter

The parties differ on their interpretation of the Court's holding as to the earliest accrual date of Mattel's claims. Although the Court's SOL Order, read as a whole, is most reasonably interpreted as clarified herein, MGA, quite understandably, interprets the Court's Order in a manner more favorable to its position regarding the statute of limitations defense. Accordingly, the Court clarifies its Order as set forth below.

In a key paragraph of the SOL Order, the Court articulates the four possible accrual dates of those state-law claims, asserted by Mattel against Carter Bryant, that are subject to the discovery rule:[1]

MGA has raised triable issues of fact precluding summary judgment on the statute of limitations issue. Any of the following could be the date upon which MGA claims against Carter Bryant accrued: The July 18, 2003, Wall Street Journal article; the September 23, 2003, date of receipt of the City World "claim"; the October 17, 2003, date of counsel's letter to Mattel regarding the City World litigation; or the November 24, 2003, date of receipt of the MGA-Bryant agreement that pre-dated Bryant's resignation of his employment.

SOL Order at 7-8. This portion of the Court's Order implicitly rejects MGA's contention that the August, 2002, letter could give rise to Mattel's claims against Bryant.

As set forth in the SOL Order, a claim accrues where a plaintiff has **_knowledge_** of at least one of the three generic elements of wrongdoing, causation, and harm. Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 807 (Cal. 2005) (citation omitted). The SOL Order did not explicitly state, as the Court does now, that there is no evidence that Mattel had any **_knowledge_** of any one of the three generic elements of its claims, and thus no claim accrued, prior to the earliest date identified by the Court, which is July 18, 2003.

MGA's argument that Mattel's claims against Carter Bryant could have accrued in August 2002, is based on a statement made by the Court's regarding when the claims against MGA Entertainment, Inc., accrued:

The Court rejects the proposition, however, that the claims against both MGA entities did not arise until the date of Carter Bryant's deposition. Whatever the date on which the claims against Carter Bryant arose is ultimately found to be, the August 2002 anonymous letter should have given Mattel a suspicion of that MGA Entertainment, Inc., participated in any wrongdoing by Carter Bryant. See Zeller Decl. Ex. 63

---

[1]    This portion of the Court's Order does not apply to Mattel's claims for intentional interference with contractual relations and conversion, which are addressed infra, in Section II.

Initials of Deputy Clerk: jh

Case 2:04-cv-09049-DOC-RNB   Document 4459-4   Filed 12/11/08   Page 25 of 26   Page ID
#:128462
Case 2:04-cv-09049-SGL-RNB   Document 3902   Filed 06/02/2008   Page 3 of 4

(alleging that Carter Bryant "worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls").

SOL Order at 9. Mattel's understanding of this part of the SOL Order, that the claims against MGA Entertainment, Inc., accrued on the same date as did the claims against Carter Bryant, is correct. See Mattel Supp. Brief at 6 n.4.

## II. Clarification of the Court's Ruling Regarding Fraudulent Concealment and Mattel's Claims for Intentional Interference with Contractual Relations and Conversion

The Court's statute of limitations analysis regarding Mattel's claims for intentional interference with contractual relations and conversion was rather inartfully articulated. The Court's ruling was meant to convey that although the remainder of the state-law claims asserted by Mattel are subject to the discovery rule, these two claims are not. Therefore, the conclusions drawn by the Court regarding the possible accrual dates for the remaining state-law claims do not apply to Mattel's claims for intentional interference with contractual relations and conversion. Instead, these claims, having arisen around the time Bryant resigned from Mattel, are time-barred unless the relevant limitations periods have been extended by a period of fraudulent concealment.

Whether a period of fraudulent concealment exists, as well as the duration of any such period, cannot be determined on the undisputed record and are therefore questions of fact for the jury.

## III. Accrual of Copyright Claim

The supplemental briefing brings into focus an issue not addressed by the SOL Order: The accrual date of Mattel's copyright claim.

MGA refers to two arguments it made in its partial summary judgment papers regarding the statute of limitations and Mattel's copyright claim. First, MGA argues that the date Mattel registered its copyrights impacts upon the Court's application of the relation-back doctrine; second, MGA argues that the "rolling" statute of limitations regarding copyright claims is inapplicable when the gravamen of the claim is a claim of ownership rather than infringement.

Mattel did not address this issue in its supplemental briefing, which was filed concurrently with MGA's supplemental briefing. In its partial summary judgment papers, however, Mattel had responded to these arguments.

In reviewing the supplemental briefs, as well as the relevant portions of the partial summary judgment papers, and reflecting upon the hearings held on this matter, the Court concludes that it need not resolve MGA's two arguments.

In the SOL Order, the Court's analysis equated the accrual of Mattel's copyright claim with

Case 2:04-cv-09049-DOC-RNB   Document 4459-4   Filed 12/11/08   Page 26 of 26   Page ID
#:128463
Case 2:04-cv-09049-SGL-RNB   Document 3862   Filed 06/02/2008   Page 4 of 4

the accrual with certain of Mattel's state-law claims; as explained below, this analysis overlooks important concepts of copyright law.

As noted by the Court in its order regarding summary judgment, in order to establish copyright infringement, a plaintiff must establish three elements: (1) ownership of a valid copyright, (2) the defendant's access to the original, and (3) substantial similarity between the copyrighted work and the allegedly infringing work.  Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1144 (9th Cir. 2003).  Here, although the date Mattel received details regarding the City World litigation is in dispute, it is uncontroverted that Mattel did not receive copies of the Bratz drawings prior to November 23, 2003.  Without the drawings, Mattel could not assess the substantial similarity factor to determine whether it could assert a claim that the Bratz dolls infringed Mattel's rights to them.  Accordingly, on the undisputed record, the Court concludes that Mattel's copyright claim did not accrue prior to November 23, 2003.

Therefore, when first asserted on November 20, 2006, Mattel's copyright claim was timely in its own right, and the Court need not resolve MGA's two arguments regarding relation back and the rolling statute of limitations.[2]

**IT IS SO ORDERED.**

---

[2] In accordance with the foregoing, the Court VACATES the following language from the SOL Order:

> The accrual of a copyright claim, as the parties recognize, approximates the state-law standard discussed herein. See Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004) ("Thus, . . . the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances.").  Accordingly, the Court makes the same conclusion regarding the accrual date of Mattel's copyright claim against Carter Bryant as it does regarding the accrual date of Bryant's state-law claims.

SOL Order at 8.

MINUTES FORM 90                                                        Initials of Deputy Clerk:  jh
CIVIL -- GEN                                    4