# EXHIBIT J

FILED
CLERK, U.S. DISTRICT COURT

JUL 10 2008

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION                    BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MATTEL, INC., | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| vs. | Hon. Stephen G. Larson |
| MGA ENTERTAINMENT, INC., | |
| Defendant. | **FINAL JURY INSTRUCTIONS AS GIVEN** |
| AND CONSOLIDATED ACTIONS | |

# JURY INSTRUCTION NO. 1

Members of the Jury:  Now that you have heard all of the evidence and will soon hear the arguments of the attorneys, it is my duty to instruct you as to the law of the case.

A copy of these instructions will be sent with you to the jury room when you deliberate.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

# JURY INSTRUCTION NO. 2

When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

In criminal trials, the prosecution must prove that the defendant is guilty beyond a reasonable doubt. But in civil trials, such as this one, the party who is required to prove something by a preponderance of the evidence need prove only that it is more likely to be true than not true.

**JURY INSTRUCTION NO. 3**

The law defines cause in its own particular way. A cause of injury, damage, loss or harm is something that is a substantial factor in bringing about an injury, damage, loss or harm.

A "substantial factor" is something which is more than a slight, trivial, negligible, or theoretical factor in producing a particular result.

Exhibit J, p. 98

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

1

2
## JURY INSTRUCTION NO. 4

3

4        You should decide the case as to each defendant separately.  Unless

5   otherwise stated, the instructions apply to all parties.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit J, p. 99

# JURY INSTRUCTION NO. 5

The evidence you are to consider in deciding what the facts are consists of:

(1)  The sworn testimony of any witness;

(2)  The exhibits which are received into evidence; and

(3)  Any facts to which the lawyers have agreed.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit J, p. 100

## JURY INSTRUCTION NO. 6

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you.

(1)    Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)    Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)    Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4)    Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit J, p. 101

**JURY INSTRUCTION NO. 7**

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit J, p. 102

1
2  ## JURY INSTRUCTION NO. 8
3
4      Evidence may be direct or circumstantial. Direct evidence is direct proof of
5  a fact, such as testimony by a witness about what that witness personally saw or
6  heard or did. Circumstantial evidence is proof of one or more facts from which
7  you could find another fact. You should consider both kinds of evidence. The law
8  makes no distinction between the weight to be given to either direct or
9  circumstantial evidence. It is for you to decide how much weight to give to any
10  evidence.

Exhibit J, p. 103

# JURY INSTRUCTION NO. 9

    If weaker and less satisfactory evidence is offered by a party, when it was within that party's ability to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust.

-9-

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit J, p. 104

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 12 of 141 Page ID
#:128475
Case 2:04-cv-09049-SGL-RNB Document 4415 Filed 07/10/2008 Page 11 of 30

# JURY INSTRUCTION NO. 10

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

     (1)    the opportunity and ability of the witness to see or hear or know the things testified to;

     (2)    the witness's memory;

     (3)    the witness's manner while testifying;

     (4)    the witness's interest in the outcome of the case and any bias or prejudice;

     (5)    whether other evidence contradicted the witness's testimony;

     (6)    the reasonableness of the witness's testimony in light of all the evidence; and

     (7)    any other factors that bear on believability.

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 13 of 141 Page ID
#:128476
Case 2:04-cv-09049-SGL-RNB Document 4415 Filed 07/10/2008 Page 12 of 92

1    The weight of the evidence as to a fact does not necessarily depend on the

2  number of witnesses who testify about it.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit J, p. 106

## JURY INSTRUCTION NO. 11

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury was present in the courtroom, or by calling a recess. Please understand that while you were waiting, we were working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we have done what we could to keep the number and length of these conferences to a minimum. I did not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/14/08 Page 15 of 141 Page ID
#:128478
Case 2:04-cv-09049-SGL-RNB Document 4115 Filed 07/10/2008 Page 14 of 30

## JURY INSTRUCTION NO. 12

The parties have agreed to certain facts to be placed in evidence. You should therefore treat these facts as having been proved.

Exhibit J, p. 108

Case 2:04-cv-09049-DOC-RNB Document 4459-15 Filed 12/14/08 Page 16 of 141 Page ID
#:128479
Case 2:04-cv-09049-SGL-RNB Document 4415 Filed 07/10/2008 Page 15 of 92

# JURY INSTRUCTION NO. 13

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The depositions of a number of witnesses were taken in this case. You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

-14-

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit J, p. 109

# JURY INSTRUCTION NO. 14

The evidence that a witness has lied under oath on a prior occasion or given inconsistent testimony under oath may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

1

2 ## JURY INSTRUCTION NO. 15

3

4     Evidence has been presented to you in the form of answers of one of the

5 parties to written interrogatories submitted by the other side. These answers have

6 been given in writing and under oath, before the actual trial, in response to

7 questions that were submitted in writing under established court procedures. You

8 should consider the answers, insofar as possible, in the same way as if they were

9 made from the witness stand by the party that responded to the written

10 interrogatories.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit J, p. 111

## JURY INSTRUCTION NO. 16

     Evidence has been presented to you in the form of admissions of one of the parties to written requests submitted by the other side. These answers have been given in writing and under oath, before the actual trial, in response to requests that were submitted in writing under established court procedures. The matters admitted are deemed conclusively established as to the party that made the admission.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit J, p. 112

## <u>JURY INSTRUCTION NO. 17</u>

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

Exhibit J, p. 113

1

## <u>JURY INSTRUCTION NO. 18</u>

2

3

4        Certain charts and summaries not received in evidence have been shown to

5   you in order to help explain the contents of books, records, documents, or other

6   evidence in the case.  They are not themselves evidence or proof of any facts.  If

7   they do not correctly reflect the facts or figures shown by the evidence in the case,

8   you should disregard these charts and summaries and determine the facts from the

9   underlying evidence.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit J, p. 114

1
2
## JURY INSTRUCTION NO. 19
3

4      Certain charts and summaries have been received into evidence to illustrate
5 information brought out in the trial. Charts and summaries are only as good as the
6 underlying evidence that supports them. You should, therefore, give them only
7 such weight as you think the underlying evidence deserves.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Exhibit J, p. 115

# JURY INSTRUCTION NO. 20

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

-21-

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 24 of 141 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4 P15 Filed 07/10/2008 Page 23 of 32 Page ID
#:128487

# JURY INSTRUCTION NO. 21

In its first claim, Mattel contends that it has certain rights to all Bratz-related ideas, concepts, drawings, designs, and other works "conceived or reduced to practice," that is, created, by Carter Bryant, alone or jointly with others, while he was employed by Mattel, including Bratz drawings and the idea for the name "Bratz."

MGA and Isaac Larian deny Mattel's contention.

Mattel's claim is based on a contract between Carter Bryant and Mattel called the "Employee Confidential Information and Inventions Agreement" or simply the "Inventions Agreement." As a matter of law, the Inventions Agreement is a valid and enforceable agreement.

Section 2(a) of the Inventions Agreement provides:

"I agree to communicate to the Company as promptly and fully as practicable all inventions [as defined below] conceived or reduced to practice by me (alone or jointly [with] others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title

and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents, and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings."


The Inventions Agreement defines the term "inventions" as follows:

"[T]he term 'inventions' includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable."

To prevail on its first claim, Mattel must show, by the preponderance of the evidence, that any particular Bratz-related idea, concept, drawing, design or work was "conceived or reduced to practice," that is, created, by Mr. Bryant, alone or jointly with others, while employed by Mattel.

It is for you to decide what, if any, Bratz-related works were created by Mr. Bryant, alone or jointly with others, while he was employed by Mattel.

Exhibit J, p. 118

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Case 2:04-cv-09049-DOC-RNB   Document 4459-5   Filed 12/14/08   Page 26 of 141   Page ID
#:128489
Case 2:04-cv-09049-SGL-RNB   Document 4115   Filed 07/10/2008   Page 25 of 30

# JURY INSTRUCTION NO. 22

In its second claim, Mattel contends that that MGA and Isaac Larian intentionally interfered with the Inventions Agreement between Mattel and Carter Bryant. To establish this claim, Mattel must prove the following by a preponderance of the evidence:

1.    That there was a contract or contracts between Mattel and Carter Bryant;

2.    That MGA and/or Mr. Larian knew of the contract;

3.    That MGA and/or Mr. Larian intended to disrupt the performance of this contract;

4.    That the conduct of MGA and/or Mr. Larian prevented performance or made performance more difficult;

5.    That Mattel was harmed in some way; and

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit J, p. 119

1      6.     That the conduct of MGA and/or Mr. Larian was a substantial factor

2 in causing Mattel's harm.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit J, p. 120

# JURY INSTRUCTION NO. 23

As a matter of law, there was a valid contract between Mattel and Mr. Bryant, namely the Inventions Agreement.

As a matter of law, Mr. Bryant directly competed with Mattel by entering into a contract with MGA, Mattel's competitor, to produce a competing product while he was still employed by Mattel. Whether the remaining requirements of Mattel's claim for intentional interference with contractual relations have been satisfied or not is for you to decide.

It is also a matter of law that MGA and/or Isaac Larian's mere offering of employment to Carter Bryant would not be sufficient, by itself, to establish an intentional interference with the contract between Mattel and Mr. Bryant.

# JURY INSTRUCTION NO. 24

In deciding whether MGA or Isaac Larian acted intentionally, you may consider whether they knew that a disruption in the performance of a contract or contracts was substantially certain to result from their conduct.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit J, p. 122

# JURY INSTRUCTION NO. 25

In its third and fourth claims, Mattel contends that MGA and Isaac Larian aided and abetted Carter Bryant's breaches of (1) his fiduciary duty to Mattel and (2) his duty of loyalty to Mattel. To establish that MGA and/or Mr. Larian are liable for aiding and abetting breaches of fiduciary duty or breach of the duty of loyalty, Mattel must prove the following by a preponderance of the evidence:

    1.    Mr. Bryant's conduct constituted a breach of such duty or duties;

    2.    MGA and/or Mr. Larian knew that Mr. Bryant's conduct constituted a breach of duty or duties; and

    3.    MGA and/or Mr. Larian gave substantial assistance or encouragement to Mr. Bryant to breach his duty or duties.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit J, p. 123

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/14/08 Page 31 of 141 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4515 Filed 07/10/2008 Page 30 of 39
#:128494

# JURY INSTRUCTION NO. 26

To establish that Mr. Bryant breached his fiduciary duty to Mattel, Mattel
must prove the following by a preponderance of the evidence:

1.     That Mr. Bryant owed a fiduciary duty to Mattel;

2.     That Mr. Bryant breached his fiduciary duty to Mattel;

3.     That Mattel did not give informed consent to Mr. Bryant's conduct;

4.     That Mattel was harmed in some way; and

5.     That Mr. Bryant's conduct was a substantial factor in causing Mattel's
harm.

Once a party assumes a fiduciary duty to another, that party is obligated to
act on behalf of the other party, to hold the interest of the other paramount over his
own interests, and to take no action that would further his interests over the  other
person's interest.

-29-

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

# JURY INSTRUCTION NO. 27

To establish that Mr. Bryant breached his duty of loyalty to Mattel, Mattel must prove the following by a preponderance of the evidence:

1.    That Mr. Bryant was Mattel's employee;

2.    That Mr. Bryant knowingly acted against Mattel's interests while he was employed by Mattel;

3.    That Mattel did not give informed consent to Mr. Bryant's conduct;

4.    That Mattel was harmed in some way; and

5.    That Mr. Bryant's conduct was a substantial factor in causing Mattel's harm.

An employee owes his or her employer a duty of loyalty. The scope of the employee's duty varies with the nature of the employee's relationship with his employer.

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/14/08 Page 33 of 141 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4415 Filed 07/10/2008 Page 32 of 90
#:128496

## JURY INSTRUCTION NO. 28

As a matter of law, Carter Bryant owed both a fiduciary duty and duty of loyalty to Mattel.

Mr. Bryant's fiduciary duty to Mattel is predicated upon paragraph 1(a) of the Inventions Agreement and is related to Mr. Bryant's obligation to keep Proprietary Information confidential.

Section 1(a) of the Inventions Agreement provides:

"I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust."

The Inventions Agreement defines the term "Proprietary Information" as follows:

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit J, p. 126

1   "'Proprietary Information' means any information (including formula,

2   pattern, compilation, device, method, technique or process) that derives

3   independent economic value, actual or potential, from not being generally known

4   to the public or to other persons who can obtain economic value from its disclosure

5   or use, and includes information on the Company, its customers, suppliers, joint

6   ventures, licensors, licensees, distributors, and other persons and entities with

7   whom the Company does business."

8

9

10

11      As a matter of law, Mr. Bryant breached his duty of loyalty to Mattel when

12  he entered into a contract with MGA, Mattel's competitor, while still employed by

13  Mattel, to produce a line of fashion dolls to be marketed in direct competition with

14  Mattel's products.

15

16

17

18      At the same time, merely seeking employment from a competitor, and a

19  failure to notify an employer of a decision to seek new employment until a

20  decision is final, does not constitute a breach of duty of loyalty.

21

22

23

24

25

26

27

28

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit J, p. 127

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 35 of 141 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4115 Filed 07/10/2008 Page 34 of 82
#:128498

# JURY INSTRUCTION NO. 29

In its final claim, Mattel contends that MGA, MGA Entertainment (HK) Limited, and Isaac Larian wrongfully exercised control over Mattel's property, including tangible Bratz-related works such as Mr. Bryant's drawings. To establish this claim for conversion, Mattel must prove the following by a preponderance of the evidence:

1.     That tangible property was "conceived or reduced to practice" --- that is, created --- by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000);

2.     That any of the defendants intentionally took possession of such property for a significant period of time;

3.     That Mattel did not consent;

4.     That Mattel was harmed; and

5.     That any one of the defendant's conduct was a substantial factor in causing Mattel's harm.

-33-

1
2
3

## JURY INSTRUCTION NO. 30

4
5
6        When you begin your deliberations, you should elect one member of the jury
7   as your presiding juror.  That person will preside over the deliberations and speak
8   for you here in court.
9
10        You will then discuss the case with your fellow jurors to reach agreement if
11   you can do so.  Your verdict must be unanimous.
12
13        Each of you must decide the case for yourself, but you should do so only
14   after you have considered all of the evidence, discussed it fully with the other
15   jurors, and listened to the views of your fellow jurors.
16
17        Do not hesitate to change your opinion if the discussion persuades you that
18   you should.  Do not come to a decision simply because other jurors think it is right.
19
20        It is important that you attempt to reach a unanimous verdict but, of course,
21   only if each of you can do so after having made your own conscientious decision.
22   Do not change an honest belief about the weight and effect of the evidence simply
23   to reach a verdict.
24
25
26
27
28

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit J, p. 129

# JURY INSTRUCTION NO. 31

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

Case No. Case No. CV 04-9049 SGL (RNBx)
Exhibit J, p. 130
JOINT PROPOSED JURY INSTRUCTIONS

# JURY INSTRUCTION NO. 32

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

# EXHIBIT K

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 40 of 141 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4125 Filed 07/17/2008 Page 1 of 3
#:128503

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MATTEL, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MGA ENTERTAINMENT, <br><br> Defendant. | CASE NO. CV 04-9049 SGL (RNBx) <br><br> Consolidated with <br> Case No. CV 04-09059 <br> Case No. CV 05-02727 <br><br> Hon. Stephen G. Larson <br><br> **FINAL VERDICT FORM AS GIVEN** |
| AND CONSOLIDATED ACTIONS | |

# VERDICT FORM

We answer the questions submitted to us as follows:

## Timing of Tangible Items

1.    For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
|---|---|---|
| ☒ | ☐ | TX 5-52, 62-1, 624/5-74, 62-11, 10537, 15180/5-75, 62-12, 10538, 15181/5-111, 708/5-112, 62-13/5-113/5-114/62-14/62-15, 1152-1, 1152-2, 10613/1328/10033-3/10033-4 |
| ☒ | ☐ | TX 5-88, 35-1, 35-3, 5-101, 1327, 10153-3, 10153-4 |
| ☒ | ☐ | TX 5-35, 757 |
| ☒ | ☐ | TX 5-36, 701, 702 |
| ☒ | ☐ | TX 5-37, 703 |
| ☒ | ☐ | TX 5-38, 762 |
| ☐ | ☐ | TX 5-39, 523, 752 |
| ☐ | ☐ | TX 5-40, 753, 754, 13583 |
| ☐ | ☐ | TX 751-2, 751-3, 5-41, 755 |
| ☐ | ☐ | TX 5-42, 756 |
| ☒ | ☐ | TX 5-43, 709 |
| ☒ | ☐ | TX 5-46, 710 |
| ☒ | ☐ | TX 5-49, 704 |
| ☒ | ☐ | TX 5-50, 705 |

___ Exhibit K, p. 133

-1-

Case No. CV 04-9049 SGL (RNBx)
FINAL PROPOSED VERDICT FORM FOR PHASE 1A

| Yes | No | |
|-----|-----|---|
| ☒ | ☐ | TX 5-53, 1152-5, 1152-6, 10534, 15175 |
| ☒ | ☐ | TX 5-54, 62-2, 620, 774, 775 |
| ☒ | ☐ | TX 5-55, 62-3, 785, 1152-9 |
| ☒ | ☐ | TX 5-56, 764, 15176 |
| ☒ | ☐ | TX 5-57, 776, 777 |
| ☒ | ☐ | TX 5-58, 765, 15177 |
| ☒ | ☐ | TX 5-59, 739, 740 |
| ☒ | ☐ | TX 5-60, 761 |
| ☒ | ☐ | TX 5-61, 62-4, 782, 796-1, 1748 |
| ☒ | ☐ | TX 5-62, 62-5, 621, 767, 768, 5-71, 62-10, 770, 1752-1 |
| ☒ | ☐ | TX 5-63, 758, 759, 760 |
| ☒ | ☐ | TX 5-64, 62-6, 795, 1152-14, 1750 |
| ☒ | ☐ | TX 5-65, 1152-7, 1152-8, 11789 |
| ☒ | ☐ | TX 5-66, 794, 1152-13 |
| ☒ | ☐ | TX 5-67, 62-7, 784, 1152-11, 1152-12, 10535 |
| ☒ | ☐ | TX 5-68, 62-8, 781, 786, 790, 1751-4 |
| ☒ | ☐ | TX 5-69, 11788, 5-70, 62-9, 623, 783 |
| ☒ | ☐ | TX 5-72, 1152-15, 1152-16, 10536, 15179 |
| ☒ | ☐ | TX 5-73, 741, 742 |
| ☒ | ☐ | TX 5-76, 706 |
| ☒ | ☐ | TX 5-77, 707 |
| ☒ | ☐ | TX 5-78, 10539, 18501 |
| ☒ | ☐ | TX 5-136, 711 |
| ☒ | ☐ | TX 10579, 18281 |
| ☒ | ☐ | TX 15172 |

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 43 of 141 Page ID
#:128506
Case 2:04-cv-09049-SGL-RNB Document 5125 Filed 04/17/2008 Page 4 of 8

2. For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
|-----|-----|---|
| [X] | [ ] | TX 3-1, 779, 780, 1-1, 2-1, 778 |
| [X] | [ ] | TX 3-2, 726, 727, 728, 1-4, 2-5 |
| [X] | [ ] | TX 3-3, 1152-19, 1152-20, 11838, 15182, 1-6, 2-10, 5-104, 10544 |
| [X] | [ ] | TX 3-5, 791, 1-8, 2-2 |
| [X] | [ ] | TX 3-6, 11837, 15184, 1-7, 2-8, 743, 744, 5-107, 1152-17, 1152-18, 10547 |
| [X] | [ ] | TX 3-8, 789, 1-11, 2-9, 734, 5-106, 10546 |
| [X] | [ ] | TX 3-9, 788, 1-10, 2-6, 746, 5-103, 10543 |
| [X] | [ ] | TX 3-10, 735, 736 |
| [X] | [ ] | TX 3-12, 792, 1-3, 2-7, 5-102, 10542 |
| [X] | [ ] | TX 3-13, 793, 1-5, 2-3, 10-3 |
| [X] | [ ] | TX 5-79, 1-9, 2-4, 737, 10545, 5-105 |
| [X] | [ ] | TX 1-2 |
| [X] | [ ] | TX 3-11 |
| [X] | [ ] | TX 5-26, 712 |
| [X] | [ ] | TX 5-27, 713 |
| [X] | [ ] | TX 5-81, 720 |
| [X] | [ ] | TX 5-82, 715 |
| [X] | [ ] | TX 5-83, 723 |
| [X] | [ ] | TX 3-4, 5-84, 716, 717 |
| [X] | [ ] | TX 3-7, 5-85, 718, 719, 10-2, 63-1 |
| [X] | [ ] | TX 5-80, 721, 722, 5-86 |
| [X] | [ ] | TX 5-87, 5-108, 724, 725 |
| [X] | [ ] | TX 5-34 |

07209/2554627.7

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 44 of 141 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4125 Filed 07/17/2008 Page 5 of 8
#:128507

3. For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
|---|---|---|
| ☒ | ☐ | TX 5-89, 35-2, 323-32, 323-33 |
| ☒ | ☐ | TX 1107, 10638 |
| ☒ | ☐ | TX 1108, 10639 |
| ☒ | ☐ | TX 1109, 771 |
| ☒ | ☐ | TX 1110, 773 |
| ☒ | ☐ | TX 5-14, 10515 |
| ☒ | ☐ | TX 5-18, 10518 |
| ☒ | ☐ | TX 5-19, 10519 |
| ☒ | ☐ | TX 5-28, 10526 |
| ☒ | ☐ | TX 5-30 |
| ☒ | ☐ | TX 5-95 |
| ☒ | ☐ | TX 5-96 |
| ☒ | ☐ | TX 5-99 |
| ☒ | ☐ | TX 323-18 |
| ☒ | ☐ | TX 323-19 |
| ☒ | ☐ | TX 323-26 |

4.      For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| **Trial Exhibit No.** | YES | NO |
|---|---|---|
| The Three Dimensional Item Presented at Pitch Meeting | X | ____ |
| Trial Exhibit 1136 | X | ____ |

## **Timing of Ideas**

5.      Has Mattel proven by a preponderance of the evidence that Carter Bryant conceived the "Bratz" characters while employed by Mattel?

Yes   X

No    ____

6.      Has Mattel proven by a preponderance of the evidence that Carter Bryant conceived the name "Bratz" while employed by Mattel?

Yes   X

No    ____

1 **Intentional Interference with Contractual Relations**

2   7.   Is MGA Entertainment, Inc. ("MGA") liable to Mattel for intentional

3 interference with contractual relations?

4        Yes   _X_

5        No    ___

6

7   8.   Is Isaac Larian liable to Mattel for intentional interference with

8 contractual relations?

9        Yes   _X_

10       No    ___

11

12 **Aiding and Abetting Breach of Fiduciary Duty**

13   9.   Is MGA liable to Mattel for aiding and abetting breach of fiduciary

14 duty?

15       Yes   _X_

16       No    ___

17

18   10.  Is Isaac Larian liable to Mattel for aiding and abetting breach of

19 fiduciary duty?

20       Yes   _X_

21       No    ___

22

23 **Aiding and Abetting Breach of the Duty of Loyalty**

24   11.  Is MGA liable to Mattel for aiding and abetting breach of the duty of

25 loyalty?

26       Yes   _X_

27       No    ___

28

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 47 of 141 Page ID
#:128510
Case 2:04-cv-09049-SGL-RNB Document 4125 Filed 07/17/2008 Page 8 of 8

1      12.     Is Isaac Larian liable to Mattel for aiding and abetting breach of the

2 duty of loyalty?

3              Yes    $X$

4              No     _____

5

6                             **Conversion**

7      13.     Is MGA liable to Mattel for conversion?

8              Yes    $X$

9              No     _____

10

11      14.     Is Isaac Larian liable to Mattel for conversion?

12              Yes    $X$

13              No     _____

14

15      15.     Is MGA Entertainment (HK) Limited liable to Mattel for conversion?

16              Yes    $X$

17              No     _____

18

19

20        Once this verdict form is completed, the foreperson of the jury should sign

21 and date on the lines below.

22 DATED: _July 17_____ , 2008

23

24

25                                  Presiding Juror

26

27

28

# EXHIBIT L

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                                    Date: August 8, 2008

Title:      CARTER BRYANT -*v*- MATTEL, INC.
            AND CONSOLIDATED ACTIONS
==========================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

           Jim Holmes                                   None Present
           Courtroom Deputy Clerk                       Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:          ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                               None Present


PROCEEDINGS:   **ORDER DENYING MOTION FOR MISTRIAL**

     This matter is before the Court on MGA's motion for a mistrial.[1]  The matter was heard on August 4, 2008, at which time the Court announced its ruling.  This Order reiterates that ruling and sets forth the rationale for the Court's ruling.

## I. BACKGROUND

     After the verdict in Phase 1(a) had been rendered, on July 25, 2008, and the day after opening arguments in Phase 1(b) trial, Juror No. 6 delivered to the Court a note, stating:

     HEY, JUDGE LARSON, THERE IS AN ISSUE THAT CONCERNS
     ME THAT I'D LIKE TO TALK TO YOU ABOUT.  THE THING IS, I DON'T FEEL

---

     [1] Herein, the Court refers collectively to the MGA entities defendants and Isaac Larian as "MGA."

MINUTES FORM 90                                          Initials of Deputy Clerk:  jh
CIVIL -- GEN

Exhibit L, p. 140

Case 2:04-cv-09049-DOC-RNB   Document 4450   Filed 12/11/08   Page 50 of 141   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 4238   Filed 08/08/2008   Page 2 of 12
#:128513

COMFORTABLE TALKING ABOUT IT IN FULL COURT.  COULD I SPEAK WITH
YOU AT SIDE-BAR WITH THE LAWYERS AND COURT REPORTER PRESENT?
OTHERWISE, I'LL KEEP THIS TO MYSELF.  THANKS, [JUROR] NUMBER 6.

July 25, 2008, Unsealed Tr. at 4.  After a preliminary interview with Juror No. 6 in the presence of
counsel, counsel agreed that the Court should interview Juror No. 6 in camera, outside the
presence of counsel.  Unsealed Tr. at 12-13.

The Court's interview with Juror No. 6 revealed that Juror  No. 8 made inappropriate
remarks regarding defendant Isaac Larian's ethnicity.  As a result of this interview, the Court
determined that interviews of additional jurors was necessary; counsel consented to the additional
interviews.  Thereafter, the Court interviewed in chambers each juror individually.

The transcripts of the juror interviews shall remain in camera and under seal; nevertheless,
those interviews may be summarized as follows:  All ten jurors were interviewed, including Juror
No. 8.  All jurors except one, Juror No. 2, were able to confirm that comments regarding the
ethnicity and/or national origin of Isaac Larian were made in the jury room.  Juror No. 8 herself
confirmed that she made comments regarding Mr. Larian's ethnicity and/or national origin.  Of
those nine jurors, six (including Juror No. 8 herself) recounted that the remarks at issue were
attributed by Juror No. 8 to her attorney-husband and that the remarks represented his
assessment of individuals of Persian ethnicity and/or Iranian national origin.[2]  Of the remaining nine
jurors, four of those independently recalled that Juror No. 8 used the word "stubborn" in recounting
her husband's assessment of Persians and/or Iranians.  One juror specifically recalled a remark
to the effect that Persians and/or Iranians "stole ideas."  Another juror recalled the adjective "stingy"
being used; yet another recalled the adjective "rude"; and finally, another recalled the verb "lie"
being used.  Juror No. 8's account differed:  She explained her remark was about immigrants and
the potential for a language barrier problem.

As a result of those interviews, the Court made certain factual findings, which were set forth

---

[2]  Although the distinction is not of any particular relevance to the Court's current inquiry, and is one that neither
the Court nor the parties have focused upon thus far, for the sake of precision, the Court must take note of the exact
nature of the improper remarks.  Notably, it is unclear from the record whether the remarks were directed toward what
the Court understands to be Mr. Larian's ethnicity (Persian) or his national origin (Iranian), or both.  It appears to the
Court that either they were directed toward both or that the speaker was unaware of any distinction to be made.
Regardless, this point does not bear on the Court's analysis and these remarks were inappropriate in any event.
Having taken note as to what the remarks were directed, the Court also takes note of to what the remarks were not
directed:  Clearly, from the record, the remarks were not directly reflective of a broader group of ethnicities and/or
national origins generically described as those from "the Middle East," although it is clear that Persians and/or Iranians
fall into this broader category.  Compare Tr. at 317 (MGA and Mr. Larian's counsel's reference to Mr. Larian having left
"the Middle East" at an early age).  Similarly, the remarks were not directed toward Mr. Larian's race (Caucasian) rather
than his ethnicity and national origin, as suggested by MGA.  See Motion at 25 (referring to Juror No. 8's "racial bias").
Finally, it is also clear from the record (and no party has suggested otherwise), that although Mr. Larian revealed his
religion during his testimony (Jewish), the remarks were not directed toward his religion.

in detail in the Court's July 25, 2008, Order.[3]  The Court found that specific inappropriate comments based on Mr. Larian's ethnicity were made during jury deliberations; that the jury foreperson and other jurors immediately admonished Juror No. 8 that there was no room in the deliberation process for such remarks; that the remarks were made toward the end of the deliberation process while the jury was attempting to reach a unanimous verdict on four specific drawings that were the subject of dispute among the jurors;[4] that the remarks did not influence the jury's verdict in Phase 1(a); that some jurors believed that Juror No. 8 should be removed from the jury; and that all jurors indicated that the remarks would have no effect on any deliberations or decision to be made in Phase 1(b) of this trial.  See docket # 4155 at ¶¶ 1-7.

After interviewing the jurors, the Court met with counsel, who agreed with the Court's assessment that Juror No. 8 should be excused.  Thereafter, the Court met with Juror No. 8 in chambers with counsel present.  The Court explained to Juror No. 8 that she would be excused from further service in this case based on the statements she had made and ordered her to refrain from speaking about this case until the conclusion of Phase 1(b) of this trial.

In a letter to the Court dated July 29, 2008, Juror No. 8 reiterated her denial of wrongdoing and, in her view, the "neutral context" in which she posited certain statements relating to Isaac Larian's ethnicity and/or national origin.  The letter also delves into Juror No. 8's subjective beliefs regarding the responsible approach she believes she took in the jury's deliberations.  She also conveyed her personal negative reaction to the Court's factual findings and decision to dismiss her from the jury.

Based on the Court's findings, MGA made an oral motion for a mistrial on July 25, 2008.  The Court granted leave to MGA to file its motion in written form and set an expedited briefing schedule for that motion.  It is MGA's written motion that is presently before the Court.

## II.  AMENDMENT TO COURT'S JULY 25, 2008, ORDER

### A.    Improper Remarks

Upon review of the transcript of the juror interviews, the Court finds that it must amend the factual findings set forth in its July 25, 2008, Order.  Specifically, the Court previously found, in ¶ 1 of that Order, that Juror No. 8 remarked to the other jurors that her husband has told her about a "client or clients who are Iranian and who are stubborn, rude, stingy, are thieves, and have stolen other person's ideas."  Id.

---

[3] Upon a more deliberated and comprehensive review of the transcript of the juror interviews, the Court finds that it must make a slight amendment the factual findings set forth in its July 25, 2008, Order.  That amendment, and the reasons therefor, are set forth infra, section II.

[4] The jury was ultimately unable to reach a verdict on these four drawings.

MINUTES FORM 90                                                           Initials of Deputy Clerk:  jh
CIVIL -- GEN

Exhibit L, p. 142

Case 2:04-cv-09049-DOC-RNB Document 4450 Filed 12/11/08 Page 52 of 141 Page ID
#:128515
Case 2:04-cv-09049-SGL-RNB Document 4238 Filed 08/08/2008 Page 4 of 12

Although only one juror specifically recounted the remark regarding stealing another's ideas, the Court finds that the remark was made.  It does so based on the fact that the juror recounting this fact was the same juror who brought this incident to the Court's attention, and who therefore had ample time to reflect upon his recollection before reporting it.  Moreover, the content of this juror's interview and his demeanor throughout leads the Court to conclude that he not only recalled the details of this incident but that he also understood at the time the remarks were made that the notion of the theft of ideas was an important issue in Phase 1(a) of the trial.  Finally, his recollection is supported by another juror's recollection that the term "lie" was used.

Relatedly, however, although the Court previously found that the term "thieves" was used, a review of the transcript of the interviews reveals that no juror recounted the use of that term.

The Court finds that Juror No. 8 used the term "stubborn" because it was specifically recalled, without prompting by the Court, by four of the eight jurors who heard the remarks.

The Court does not find that the adjective "stingy" was used.  Only one juror recalled use of that term and, by her own admission, her recollection was not clear on this issue.  In fact, the juror stated that she didn't remember the term Juror No. 8 used, but stated that she thought it was "stingy or something" or "[s]omething on that order."

The Court finds that Juror No. 8 used the term "rude" as recounted by one juror.  Based on her statements during the Court's interview and her demeanor during the interview, the Court finds that the juror who recounted the use of the term "rude" was not equivocal in her recollection of the use of that term.  The juror who recounted the use of the term "rude" was also personally involved in the immediate admonishment given to Juror No. 8 that there was no room in the deliberation process for such remarks and thus was, in the Court's view, fully engaged in this incident.

Accordingly, the Court **AMENDS** the factual findings set forth in the July 25, 2008, Order, by **VACATING** the second sentence of ¶ 1 and **SUBSTITUTING** the following sentence:  "Specifically, Juror No. 8 indicated that her husband, an attorney, has told her about a client or clients who are Persian and/or Iranian and who are stubborn, rude, and who have stolen other people's ideas."

## B.    Effect of Remarks on Jury

The Court does not find it necessary to amend its factual findings regarding the effect of the remark on the other jurors, set forth at ¶ 5 of the Court's July 25, 2008, Order.  Specifically, the Court found that "the remarks did not, in any way, effect or influence the decision made by the jury."

At the time of the juror interviews, the Court inquired of a number of the remaining jurors (and all jurors asked responded in the negative) whether Juror No. 8's comments affected their deliberations.  The Court previously expounded upon the finding of fact set forth in ¶ 5 by noting

Exhibit L, p. 143

Case 2:04-cv-09049-DOC-RNB Document 4450-5 Filed 12/11/08 Page 53 of 141   Page ID
#:128516
Case 2:04-cv-09049-SGL-RNB   Document 4238   Filed 08/08/2008   Page 5 of 12

that "[a]ll the jurors clearly indicated, by both their verbal and non-verbal response to the Court's questioning, that the remarks had no impact on their decision in Phase 1(a)."

As acknowledged by both parties in connection with the present motion, Rule 606(b) of the Federal Rules of Evidence bars consideration of the jury's mental processes.[5]  Therefore, the Court finds it appropriate to more fully articulate the basis for its finding of fact that the remarks had no impact on the jury's decision in Phase 1(a).  The Court has re-examined the transcript of its juror interviews and reconsidered whether this factual finding should be made if the Court does not consider any juror's answer that may have been based on his or her mental processes.  Excising such evidence, the Court reaffirms the finding set forth in ¶ 5 on an alternative, independent basis. Specifically, the Court finds that the improper remarks had no effect on the jury's decision based on the reaction of the individual jurors to the remarks and based on the timing of the remarks.

### III. FED. R. EVID. 606(b)

Both sides take positions on the Court's interviews of the jurors and how the fruits thereof may be considered.  Mattel contends that the information obtained from the juror interviews may not, consistent with Fed. R. Evid. 606(b), be considered at all in connection with the current motion.  MGA, for its part, contends that although information may be used to establish the existence of bias, the Court's inquiry must end there and a mistrial must be declared based on that limited inquiry.  In the Court's view, neither side is correct about how the Court must apply Rule 606(b) and, in any event, both sides consented to the Court's interviews of the jurors without any limitation on how the results thereof could be used, thereby waiving the objections they now raise.

The Court's analysis begins with the language of the relevant Federal Rule of Evidence:

(b) Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

Fed. R. Evid. 606(b).

---

[5] See Motion at 18; Opp. at 3; Sea Hawk Seafoods, Inc. v. Alyeska Pipeline Service Co., 206 F.3d 900, 908 (9th Cir. 2000) (citing Rushen v. Spain, 464 U.S. 114, 120 n.5 (1983)).

Exhibit L, p. 144

Case 2:04-cv-09049-DOC-RNB Document 4450 Filed 12/11/08 Page 54 of 141 Page ID
#:128517
Case 2:04-cv-09049-SGL-RNB Document 4238 Filed 08/08/2008 Page 6 of 12

At issue here are Juror No. 8's recounting of statements made by her attorney-husband. These statements clearly were not part of the evidence submitted to the jury. Therefore, the Court concludes that the statements constituted "extraneous prejudicial information" into which the Court may inquire.

In cases in which extraneous information has been received by the jury, the Ninth Circuit directs the trial court to consider the following factors to determine whether a new trial is warranted:

> (1) [W]hether the material was actually received, and if so, how; (2) the length of time it was available to the jury; (3) the extent to which the juror discussed and considered it; (4) whether the material was introduced before a verdict was reached, and if so at what point in the deliberations; and (5) any other matters which may bear on the issue of the reasonable possibility of whether the extrinsic material affected the verdict.

Estrada v. Scribner, 512 F.3d 1227, 1238 (9th Cir. 2008).

As to the first factor, it is clear that the material was actually received in the jury room.

As to the second and fourth factors, the Court found, as set forth in the July 25, 2008, Order, that the remarks were made toward the end of the deliberation and after the jury had reached agreement on the Verdict Form questions that were ultimately returned unanimously. All remaining jurors who heard the remark were in agreement that the remarks came very near the end of their deliberations, and four of them specifically recalled that the remarks were made after agreement had been reached on all subjects upon which the jury ultimately reached a verdict.

As to the third factor, the Court notes that all remaining jurors who heard the remark were either involved in or witnessed an immediate admonishment of Juror No. 8 that a jury room was no place to express such remarks. By all accounts, there was no discussion or consideration of the substance of Juror No. 8's remarks.

As to the fifth factor, the Court can discern no other issues that suggest in any way that the extrinsic material affected the verdict. In fact, the Court is very confident, based on both the verbal and, even more importantly, non-verbal responses to the Court's questioning that the extrinsic material had no effect on the verdict.

Thus, application of the Estrada factors clearly compel the conclusion that MGA's motion for mistrial be denied.

In any event, prior to the Court's interview of the jurors, both sides consented thereto without limitation, and thereby have waived any objection to the Court's inquiry or use of the

MINUTES FORM 90                                                                                    Initials of Deputy Clerk:  jh
CIVIL -- GEN

Exhibit L, p. 145

Case 2:04-cv-09049-DOC-RNB  Document 4450-5  Filed 12/11/08  Page 55 of 141  Page ID
#:128518
Case 2:04-cv-09049-SGL-RNB  Document 4238  Filed 08/08/2008  Page 7 of 12

information from those interviews.

## IV. VOIR DIRE OF JUROR NO. 8

MGA also argues that the motion for mistrial should be granted because Juror No. 8 was dishonest in her responses – or more accurately, in her failure to respond -- to certain questions during voir dire.  Claims of this type of juror misconduct are evaluated in accordance with McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984).  The Ninth Circuit has articulated the relevant inquiry as follows:  "(1) [W]hether 'a juror failed to answer honestly a material question on voir dire;' and (2) whether  'a correct answer would have provided a valid basis for a challenge for cause.'" Price v. Kramer, 200 F.3d 1237, 1254 (9th Cir. 2000) (quoting McDonough Power Equip.)).

At the outset, the Court must again note its factual finding is not that Juror No. 8 was biased in the legal sense, see section VI, infra, or even that she herself held certain preconceptions regarding Persians and/or Iranians.  Rather, the Court found that "Juror No. 8 indicated that her husband, an attorney, has told her about a client or clients who are Persian and/or Iranian and who are stubborn, rude, and who have stolen other people's ideas."  MGA's argument regarding dishonesty in voir dire is based on an unsound premise -- that the Court has found Juror No. 8 held the views expressed by her statements.  See e.g., Motion at 21 ("Where a potential juror does not truthfully disclose biases or prejudices that would render them unable to be impartial and then participates in the verdict, a civil litigant has a right to a mistrial.").

Nevertheless, the Court is mindful of the Ninth's Circuit's suggestion that those who use racial slurs – and thus, by extension, statements regarding ethnocentric bias – generally subscribe to the views that the use of such terms imply.  See e.g., United States v. Henley, 238 F.3d 1111, 1121 (9th Cir. 2001).  Assuming, however, that the Court were to make the factual finding upon which MGA's argument is premised, MGA's argument would still be unpersuasive.

Counsel for MGA and Mr. Larian did not, in voir dire, ask any specific questions about Mr. Larian's ethnicity and/or national origin.  The closest reference in voir dire related to Mr. Larian's experience as an "immigrant" from the "Middle East" and disclosure that the claims at issue involved allegations of dishonesty on his part.  Motion at 24.  Counsel for MGA and Mr. Larian failed to ask questions designed to ferret out preconceptions regarding Persians and/or Iranians (or even Middle Easterners in general), nor did he ask any questions regarding the jury panel's personal experiences or business dealings – or those of their family or friends – with other individuals who share Mr. Larian's ethnicity and/or national origin.  MGA simply cannot fault a juror for failing to answer a question during voir dire that it did not ask.  See e.g., Sanders v. Lamarque, 357 F.3d 943, 949 (9th Cir. 2004) (no juror dishonesty in failure to disclose past gang-related issues where questions were posed to jury panel in present tense); Hard v. Burlington Northern R. Co., 870 F.2d 1454, 1460 (9th Cir. 1989) (no duty to disclose past employment where juror was questioned regarding present but not past employment); U.S. v. Aguon,  851 F.2d 1158, 1170 (9th

Cir. 1988) (no duty to disclose juror was under investigation for crime similar to the one at issue in the case in which he served as a juror).

The question wasn't asked; therefore, there was no answer to all, let alone a dishonest answer. Therefore the first part of the <u>McDonough Power Equip.</u> test has not been met. Moreover, in the absence of an answer, the Court cannot consider whether that answer would have provided a basis for a challenge for cause. The second part of the <u>McDonough Power Equip.</u> test has not been met.

The Court accordingly rejects MGA's contention that Juror No. 8 was dishonest in her voir dire answers.

## V. APPLICABILITY OF SIXTH AMENDMENT PRECEDENT TO CIVIL TRIALS

The Sixth Amendment to the United States Constitution guarantees an accused the right to a fair trial. <u>See</u> U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."). Pursuant to the Sixth Amendment, the Ninth Circuit has held that "[t]he bias . . . of even a single juror would violate [an accused's] right to a fair trial." <u>Estrada v. Scribner,</u> 512 F.3d 1227, 1239 (9th Cir. 2008) (internal quotation marks and citation omitted). MGA contends that this principle should be applied to the current civil trial because a fair trial by jury is also guaranteed to civil litigants by virtue of the Seventh Amendment. <u>See</u> U.S. Const. amend. VII ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.").

MGA argues because both the Sixth and Seventh Amendments guarantee the right to a fair trial, "the standards governing the Sixth and Seventh Amendment rights to a fair and impartial jury are the same." Motion at 12 n.4. It makes this contention in support of its overarching argument that the presence of one biased juror violates this right and, therefore, the Court should declare a mistrial without further inquiry. <u>Id.</u> at 12-13. However, this argument is unpersuasive both on the facts as found by the Court and on the authority cited by MGA in support of its argument.

As a factual matter, the Court has not found, and there is not evidence before the Court to support a finding, that Juror No. 8 was biased in the <u>legal</u> sense of that term. <u>See</u> section VI, <u>infra</u>.

Moreover, in support of its argument, MGA cites authority that does not support the broad proposition it advances. Specifically, MGA cites <u>Sea Hawk Seafoods v. Alyeska Pipeline Service</u>

Co., 206 F.3d 900, 906 n.4 (9th Cir. 2000); Rinker v. County of Napa, 724 F.2d 1352, 1354 (9th Cir. 1983); and Caterpillar, Inc. v. Sturman Indus., Inc., 387 F.3d 1358, 1371 n.2 (Fed. Cir. 2004) .

A reading of the relied-upon footnote in the Sea Hawk case, as well as the text to which it is appended, reveals only the Ninth Circuit applies precedent on a specific Rule 606(b) issue developed in criminal cases (which implicate the Sixth Amendment) to civil cases (which implicate the Seventh Amendment). 206 F.3d at 906 ("Our precedents distinguish between introduction of 'extraneous evidence' to the jury, and ex parte contacts with a juror that do not include the imparting of any information that might bear on the case. Our precedents are mostly in criminal cases, but we have applied the same rules in civil cases."). Absent from this case is any articulation of the wholesale incorporation of Sixth Amendment principles in cases implicating the Seventh Amendment.

In Rinker, the Ninth Circuit considered the issue of an unauthorized communication between a party and a juror regarding the jury's ongoing deliberations. 724 F.2d at 1353. It appears that MGA cites this case for the unremarkable proposition that "the integrity of the jury system is no less to be desired in civil cases." Id. (internal quotation marks and citation omitted). This proposition, like that stated in Sea Hawk, stops well short of the wholesale incorporation of Sixth Amendment principles to cases implicating the Seventh Amendment that MGA advances.

However, MGA's position is supported, at least up to a point, by the Ninth Circuit's reliance in Rinker, on a criminal case that sets up a rebuttable presumption of prejudice in cases in which a jury is presented with an outside influence such as a party's unauthorized communication with a juror. 724 F.2d at 1354 (citing United States v. Armstrong, 654 F.2d 1328, 1332 (9th Cir. 1981)). Nevertheless, this case severely undercuts MGA's overarching argument that the presence of one biased juror violates this right and therefore the Court should declare a mistrial without further inquiry. In Rinker, the Ninth Circuit specifically noted that the district court failed to undertake an extensive enough investigation into the jury incident. Rinker, 724 F.2d at 1354 ("Given the added fact that in questions about jury incidents, we are ultimately not so concerned with their nature as with the prejudice they may have worked on the fairness of the defendant's trial, we conclude that the question of prejudicial effect deserved more consideration.") (internal quotation marks, alteration mark, and citations omitted).

Finally, the cited-to portion of Caterpillar, when read in conjunction with the authority upon which it relies, Skaggs v. Otis Elevator Co., 164 F.3d 511, 514 (10th Cir. 1998), again stands only for the unremarkable proposition that both the Sixth and the Seventh Amendments guarantee the right to a fair trial, and that, therefore, juror issues arising in criminal cases are "germane" to civil cases. The Caterpillar case, like Sea Hawk and Rinker, does not suggest that there has been a wholesale incorporation of Sixth Amendment principles to cases implicating the Seventh Amendment.

None of the cases cited by MGA support the contention that the mere presence of a juror

MINUTES FORM 90                                                    Initials of Deputy Clerk: jh
CIVIL -- GEN

Exhibit L, p. 148

Case 2:04-cv-09049-DOC-RNB Document 4459-3 Filed 12/14/08 Page 58 of 141 Page ID
#:128521
Case 2:04-cv-09049-SGL-RNB Document 4238 Filed 08/06/2008 Page 40 of 42

who makes improper remarks based on a party's ethnicity compels the Court to grant a mistrial without further inquiry. Therefore, as set forth in section III, <u>supra</u>, the Court has applied the test set forth in <u>Estrada</u> and denied the motion.

Related to MGA's argument discussed in this section is its argument that it is entitled to the unanimous verdict of all ten jurors. Implicit in this argument is that because Juror No. 8 was biased, her verdict should be treated as having been, more or less, excised from the jury's verdict, and thus MGA is left with a unanimous verdict of nine jurors although ten jurors deliberated. For support, MGA relies upon <u>Parker v. Gladden</u>, 385 U.S. 363 (1966).

In <u>Parker</u>, an accused was convicted of second-degree murder in a state-court proceeding. <u>Id.</u> at 363. During the jury's sequestration, a bailiff made statements on two occasions to two different jurors regarding his opinion of defendant's guilt, as well as his opinion that if the defendant was not guilty, the Supreme Court, through the appeal process, would "correct" the verdict. <u>Id.</u> The Supreme Court rejected the argument that, although a jury of twelve deliberated, the verdict could stand on the untainted verdict of the remaining ten jurors, as a jury of ten was permissible under the laws of the state in which the defendants was convicted. <u>Id.</u> at 365. The Supreme Court's decision was influenced, however, by a number of concerns not at issue here.

First, the Court was concerned with the weight of authority statements of the bailiff, as "an officer of the State" carried. Second, the Court was also concerned with the defendant's right to cross-examination. Neither of those issues are implicated here. The statements in the instant case were made not by any authority figure but by a peer. Certainly, there is no indication here that the other jurors accorded any additional weight to her statements because they were attributed to her attorney-husband. To the contrary, the record is clear that the other jurors gave <u>no</u> weight to her statements and, beginning with the foreperson, other jurors strongly rebuked Juror No. 8 for making the remarks. Accordingly, the concern of the lack of the opportunity to cross examine Juror No. 8 regarding her statements is of no moment because the remaining jurors could not have given any less weight to her statements.

In addition to the concerns regarding the appearance of official imprimatur on and lack of the right of cross-examination as to the remarks at issue in <u>Parker</u>, the Court was also concerned with the defendant's Confrontation Clause rights. That right is not implicated here. <u>Austin v. United States</u>, 509 U.S. 602, 608 n.4 (1993) (Confrontation Clause does not apply in civil cases).

Accordingly, the Court does not read <u>Parker</u> as requiring the Court to grant MGA's motion.

## VI. PRECONCEPTIONS AND PARTIALITY

In the events that gave rise to the present motion and in the proceedings that followed on the heels of those events, the term "bias" has been used, sometimes by the Court, without regard to the term's specific legal meaning in this particular context. When the Court and the parties use

Exhibit L, p. 149

Case 2:04-cv-09049-DOC-RNB Document 4459-38 Filed 12/14/08 Page 59 of 141 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4238 Filed 08/08/2008 Page 11 of 12
#:128522

the term "bias," what is implicated is a juror's impartiality – or more precisely, lack thereof. Cases decided under the Sixth Amendment jury trial right in a criminal case, cited by MGA, indeed conclude that the right is violated where just one biased juror participates in a verdict. See Motion at 3 (citing, e.g., United States v. Henley, 238 F.3d 1111, 1120 (9th Cir. 2001)). However, this rule invites the inquiry of what is meant by the term "bias."

Supreme Court precedent establishes what is not required of jurors. Courts do not require that jurors who are called upon to serve be without preconceived notions. Irvin v. Dowd, 366 U.S. 717, 723 (1961). Specifically, in the cited case, the Court did not require that the jurors be without preconceived notions of the guilt or innocence of a criminal defendant, which was the ultimate issue in the case. Id. ("To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.") (citation omitted). In a human system, we cannot expect perfection. Truly, perfect justice is not of this world. Our legal system and precedent take into account our inherent imperfections. Indeed, as has been observed before, and this Court today concurs, if a standard of perfection on jury verdicts were to be imposed, "[i]t is doubtful whether more than one in a hundred verdicts would stand such a test." Jorgensen v. York Ice, 160 F.2d 432, 435 (2d Cir.1947) (Hand, J.).

MGA contends that "'[d]oubts regarding bias must be resolved against the juror.'" United States v. Gonzalez, 214 F.3d 1109, 1114 (9th Cir. 2000) (quoting Burton v. Johnson, 948 F.2d 1150, 1158 (10th Cir. 1991)). The case upon which MGA relies was decided at the voir dire stage when the question at issue was whether a juror who was unable to state on the record that she was able to serve fairly and impartially. See id. ("When a juror is unable to state that she will serve fairly and impartially despite being asked repeatedly for such assurances, we can have no confidence that the juror will 'lay aside' her biases or her prejudicial personal experiences and render a fair and impartial verdict."). Juror No. 8 had no such difficulty here. This Court repeatedly asked the venire, including Juror No. 8, whether each could be fair and impartial, and Juror No. 8 responded affirmatively. Notwithstanding MGA's protestations to the contrary, prospective jurors are presumed to be impartial. See Irvin, 366 U.S. at 723.

With this standard in mind, the Court cannot, and reiterates that it has not, found that Juror No. 8 is biased -- i.e., not impartial -- in the legal sense. Instead, as more fully set forth elsewhere, the Court has found only that Juror No. 8 introduced into the jury inappropriate comments attributed to her attorney-husband.

As explained at length herein, the jury's verdict in Phase 1(a) need not be set aside on the basis of a juror's bias.

Exhibit L, p. 150

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/14/08 Page 60 of 141 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4238 Filed 08/06/2008 Page 12 of 12
#:128523

## VII. CONCLUSION

Nothing is more important to this Court than providing a fair trial to all parties. The right to trial by jury is certainly among the greatest contributions to the rule of law in the last millennium; nevertheless, this human system, as recognized by the Supreme Court, it is not a perfect system, nor could it survive if such was the standard. See e.g., Tanner v. United States, 483 U.S. 107, 120 (1987) (O'Connor, J.) ("There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it.").

The Court deeply regrets that Juror No. 8 introduced remarks into the jury room that have no place in any courthouse, as evidenced by Juror No. 8's dismissal from the jury. At the same time, the Court is encouraged, and deeply so, by the swift and decisive response of the foreperson and other jurors who heard the extraneous remarks, a response that demonstrates that this jury fully shares the Court's commitment to fairness and justice for all of the parties.[6] This jury reacted to extraneous, potentially prejudicial information exactly as a just society would have them react. They are to be commended, not disbanded.

After careful and deliberate consideration of the circumstances present, the Court finds that a mistrial is not required.

The motion for mistrial is **DENIED**.

**IT IS SO ORDERED.**

---

[6] Defendants complain that the jury failed to report the incident to the Court in a timely manner. However, it is clear from the record that the jurors acted very promptly. Immediately after the remarks were made, the foreperson and several other jurors immediately admonished Juror No. 8. Juror No. 10 submitted a note to the Court on the same day of the remarks indicating her discomfort with jury service (which she subsequently revealed to the Court was prompted by her disgust with Juror No. 8's remarks.) Juror No. 6 submitted his note to the Court, quoted in the opening paragraph of this Order, the second trial day after the remarks were made. His delay was due in part to his mistaken assumption that Juror No. 10's note reported the remark to the Court. His delay was also due to, and the foreperson's failure to report the remark was due to, the Court's own jury instruction on July 10, 2008. See docket # 4115 at 35. As such, the limited delay in bringing the matter to the Court's attention does not strike the Court as in any way indicating the jurors' acquiescence to the remarks; to the contrary, the jurors were rightfully outraged. Rather, their delay was due to the uncertainty about the propriety of submitting such information to the Court. This sentiment is borne out in Juror No. 6's remark.

MINUTES FORM 90                                                          Initials of Deputy Clerk:  jh
CIVIL -- GEN

Exhibit L, p. 151

# EXHIBIT M

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                          Date: July 24, 2008

Title:    CARTER BRYANT -*v*- MATTEL, INC.
          AND CONSOLIDATED ACTIONS
========================================================================
=
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes                            None Present
          Courtroom Deputy Clerk                Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:    ATTORNEYS PRESENT FOR DEFENDANTS:

John B. Quinn                        Thomas J. Nolan
B. Dylan Proctor                     Carl Alan Roth
Michael T. Zeller                    Jason Russell
Jon Corey                            Lauren Aguiar
William Price                        David Hansen
Scott B. Kidman


PROCEEDINGS:    **POST-PHASE 1A ORDER RE MOTION FOR PARTIAL SUMMARY
                JUDGMENT ON THE ISSUE OF SUBSTANTIAL SIMILARITY;**

                **ORDER RE PROCEEDINGS REGARDING LACHES AND OTHER
                EQUITABLE DEFENSES**

                **ORDER RE FRAUDULENT CONCEALMENT JURY ISSUE**

        These matters were heard on Friday, July 18, 2008, and again on Monday, July 21, 2008, at
which time the Court announced its rulings.  This Order sets forth those rulings and the rationale
therefor.


MINUTES FORM 90                                      Initials of Deputy Clerk:  jh
CIVIL -- GEN
                                  1
Exhibit M, p. 152

## I. SUBSTANTIAL SIMILARITY AND SCOPE OF PROTECTABILITY

At a post-Phase 1A hearing on remaining legal issues to be addressed prior to commencement of the Phase 1B trial, counsel for MGA raised an issue regarding the scope of the protection to be given to the copyrighted drawings. This issue, in turn, implicates the arguments raised by the parties in the motions for partial summary judgment regarding originality and protectability (raised by MGA) and substantial similarity (an element of copyright infringement upon which Mattel seeks summary judgment).

To address these issues, the Court begins its analysis with a recitation of the elements of copyright infringement, which are (1) ownership of a valid copyright, (2) access by the defendant to the original, and (3) substantial similarity of the original and allegedly infringing works. North Coast Industries v. Jason Maxwell, Inc., 972 F.2d 1031, 1033 (9th Cir. 1992).

The first element, although not amenable to resolution on summary judgment, was decided by the jury's verdict in Phase 1A. The second element was not contested by MGA, and in any event, was also decided by virtue of the jury verdict. Thus, although the Court previously deferred the issue of substantial similarity, it is now appropriate to consider whether the record on summary judgment allows the Court to adjudicate the final element of copyright infringement in favor of Mattel.

To determine substantial similarity, the Court must apply both the extrinsic test and the intrinsic test.

To apply the extrinsic test, the Court must first examine the specific expressive elements of the works at issue and compare them to those found in the allegedly infringing work. Dr. Seuss Enterprises v. Penguin Books, Inc., 109 F.3d 1394, 1398 (9th Cir. 1997). This involves analytically dissecting works into their components in order to determine whether some – or all – similarities are attributable to unprotected elements, which must be filtered out of the analysis before a conclusion regarding substantial similarity is reached. Id. To apply the extrinsic test to visual works, such as the drawings at issue here, "[t]he basic mode of analysis for comparison of the literary elements applies . . . [, and] unprotect[a]ble elements should not be considered when applying the extrinsic test to art work." Cavalier v. Random House, Inc., 297 F.3d 815, 825-26 (2002). However, "[t]he precise factors evaluated for literary works do not readily apply to art works. Rather, a court looks to the similarity of the objective details in appearance." Id. at 826.

To apply the intrinsic test, the Court examines the overall similarity of expression in the two works from the perspective of the ordinary observer. Olson v. National Broadcasting Co., 855 F.2d 1446, 1448-49 (9th 1988).

In applying both the extrinsic and intrinsic tests, the Court must be mindful of the so-called "inverse ratio rule" which states that where, as here, a high degree of access to the original works

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 64 of 141 Page ID
#:128527
Case 2:04-cv-09049-SGL-RNB Document 2154 Filed 07/24/2008 Page 3 of 9

is shown, the burden to show substantial similarity is reduced.  <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 485 (9th Cir.2000).

In applying these principles, the Court cannot conclude that Mattel has shown that it is entitled to summary judgment on the issue of substantial similarity.  On summary judgment, MGA offered evidence from its doll design expert pointing out a number of differences between the Bratz dolls and the registered drawings.  Additionally, it offered the evidence of Paula Garcia regarding the changes that MGA wished to make in the process of creating the dolls from the drawings to make them less "edgy" and to better appeal to the "tween" market.  MGA also offered evidence that its sculptor was given a certain amount of artistic freedom in creating the sculpt.  All these combine to create a triable issue of fact regarding whether the dolls are substantially similar to the drawings.

Related to this issue is the one raised by MGA at Friday's hearing:  What is the scope of the protectability of the copyrighted drawings?  The Court cannot conclude that the scope is, as MGA contends, limited to the "thin" protection that would prohibit little more than virtual copying.

The Court's analysis begins with a presumption of protectability conferred by the registration of the drawings.  Where, as here, the relevant works have registered copyrights, registration is prima facie evidence of the validity of a copyright.  <u>See</u> 17 U.S.C. § 410(c). This presumption can be rebutted by the defendant's showing that the plaintiff's work is not original, that is, that it is unworthy of copyright protection.  <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 489 (9th Cir. 2000) (citation omitted). "Originality in this context means little more than a prohibition of actual copying."  <u>Id.</u>  (internal quotation marks and citation omitted).

In this vein, the Supreme Court described the low threshold for copyrightability:

The sine qua non of copyright is originality. To qualify for copyright protection, a work must be original to the author. . . . Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.

<u>Feist Publications, Inc. v. Rural Telephone Service Co., Inc.</u>, 499 U.S. 340, 345 (1991).  The Court elaborated:  The "requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be."  <u>Id.</u> (internal quotation marks omitted).

Based on the record before the Court, it does not appear that MGA has contended that the registered drawings are unworthy of <u>any</u> protection; rather, it contends that it is worthy only of "thin" protection.  The Court is guided on this point by the case of <u>Satava v. Lowry</u>, 323 F.3d 805 (9th Cir. 2003).

In that case, an artist (Satava) began making glass-in-glass jellyfish sculptures.  Id. at 807.  When a second artist (Lowry) began making extremely similar sculptures, Satava sued for copyright infringement.  Id. at 808-09.   The idea to do such a sculpture was held to be beyond copyright protection.  Id. at 810.  Also outside the scope of copyright protection were the "elements of expression that naturally follow from the idea."  Id.  Thus, the Ninth Circuit held that Satava's sculptures were unprotected to the extent the physiology of jellyfish drove the presentation of the sculptures.  Id.  Relatedly, to the extent that traditional methods of glass-in-glass sculpture also influenced the presentation, the sculptures were also unprotected.  Id.

Certain features did warrant protection, however.  For instance, although the Court found unprotectable depiction of jellyfish swimming vertically, with bright colors, or with tendril-like tentacles attached to rounded bells, the Court found protectable Satava "distinctive curls of particular tendrils; the arrangement of certain hues [of color]; [and] the unique shape of the jellyfishes' bells."  Id. at 811-12.

After this analysis, the Ninth Circuit did not place a high qualitative value on Satava's copyright.  The Court stated it this way:

> Satava's copyright on these original elements (or their combination) is "thin," however, comprising no more than his original contribution to ideas already in the public domain. Stated another way, Satava may prevent others from copying the original features he contributed, but he may not prevent others from copying elements of expression that nature displays for all observers, or that the glass-in-glass medium suggests to all sculptors. Satava possesses a thin copyright that protects against only virtually identical copying.

Id. at 812.

The drawings at issue here, however, are not like Satava's jellyfish sculptures.  Jellyfish anatomy is much simpler than human anatomy.  Correspondingly, in general, there are far more variations in humans (at least that we humans discern).  For instance, we regularly take notice of a vast number of particularized differences in facial features, ethnicity, size, shape, proportions, hair color, and hair texture and, of course, various particularized combinations and permutations thereof.  Specifically, in the context of the content of the copyrighted drawings at issue, we can also observe the many details of the clothing which adorn the depicted figures.[1]  Moreover, an

---

[1]  As noted by the Court at Monday's conference, the Court rejects the argument raised by MGA, stated elsewhere in the record, that the protectability of doll clothing is limited in the same manner as is human clothing. Briefly stated, "[a]s a general rule, items of clothing are not entitled to copyright protection. . . . This is because items of clothing are generally considered useful articles, and useful articles are not entitled to protection under the Copyright Act."  Express, LLC v. Fetish Group, Inc., 424 F.Supp.2d 1211, 1224 (C.D. Cal. 2006) (citations omitted).  This general rule is tempered by a limited protection extended to "pictorial, graphic, or sculptural features" even when incorporated into useful articles.  17 U.S.C. § 101.  The doll clothing at issue here -- as well as the clothing depicted in the

MINUTES FORM 90                                                                                    Initials of Deputy Clerk:  jh
CIVIL -- GEN

Exhibit M, p. 155

artistic expression based on a drawing is much less limited than a glass-in-glass sculpture.

Accordingly, although the Court has denied the motion for summary judgment on the substantial similarity issue, the Court cannot go so far as to find that the registered drawings are subject to only the "thin" protection  -- the protection against copying -- referred to in Satava.  The relevant test to be employed on this issue in this case -- and upon which the jury will ultimately be instructed -- is the test regarding the extrinsic and intrinsic analyses set forth above.

## II. LACHES AND OTHER EQUITABLE DEFENSES

At the hearing on Friday, July 18, 2008, three separate issues regarding the affirmative defense of laches were raised:  (1) Whether there is, as MGA contends, a presumption that laches applies when, as here, a copyright claim would be time-barred but for the relation-back doctrine;[2] (2) whether the Court should grant Mattel's summary judgment motion as to MGA's laches defense; and (3) whether the defense is legal (and must be presented to a jury) or equitable (and therefore should be decided by the Court, perhaps outside the presence of the jury).  In the ensuing discussion, the Court addresses each of these issues in turn.

The Court first considers whether there is, as MGA contends, a presumption that laches applies where, as here, a copyright claim would be time-barred but for the relation-back doctrine.

This argument is clearly based on the Jarrow Formulas case, cited at footnote 27 of MGA's opposition to Mattel's motion for partial summary judgment, which MGA relies upon to argue that, notwithstanding any contention that Mattel's copyright claim is timely based on the relation-back doctrine, there is a presumption that claims filed outside the limitations period are time barred.  MGA reads Jarrow Formulas far too broadly.  That case did not consider how laches should apply when a claim that was otherwise outside the limitations period was saved by the relations-back doctrine.  Therefore, its discussion regarding a "reversal" of the presumption of nonapplicability of laches is of little relevance here.[3]

---

copyrighted drawings – are not useful articles.  The clothing is part of a toy, and the proposition that toys are unprotectable because they are "useful articles" as that term is used in copyright law has been rejected by courts.  See, e.g., Gay Toys, Inc. v. Buddy L Corp., 703 F.2d 970, 974 (6th Cir. 1983); Spinmaster, Ltd. v. Overbreak LLC, 404 F.Supp.2d 1097, 1103 (N.D. Ill. 2005).

[2]  The Court previously held that Mattel's copyright claim was timely as to MGA Entertainment because it was brought within the relevant statute of limitations.  As to the remaining defendants, the claim was timely in light of the relation-back doctrine.

[3]  The court's discussion regarding this issue states:

In sum, we presume that laches is not a bar to suit if the plaintiff files within the limitations period for the analogous state action; the presumption is reversed if the plaintiff files suit after the analogous limitations period has expired. For purposes of laches, the limitations period may expire even though

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 67 of 141 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4154 Filed 07/24/2008 Page 6 of 9
#:128530

The Court, in its own research, has been unable to locate any authority that suggests that a related-back claim would be especially vulnerable to the defense of laches.  To the contrary, to the extent that such authority is found, it suggests the contrary.  See e.g., In re Prempro Products Liability Litigation, 417 F.Supp.2d 1058, 1061 (E.D. Ark. 2006) (dismissing certain plaintiffs from a case, allowing them to re-file their claims in a separate complaint, and clarifying that "for application of . . . laches . . . the filing date of [the new complaint] will be deemed to relate back to the date [of the dismissed complaint]"); Bush v. Sumitomo Bank and Trust Co., Ltd., 513 F.Supp. 1051, 1054 (D.C.Tex., 1981) (noting that the court would consider the related-back date of an amended claim to assess the merits of a laches defense); E.I. duPont de Nemours & Co. v. Phillips Petroleum Co., 621 F.Supp. 310, 313 (D.C. Del.,1985) (noting that the applicability of laches did not need to be addressed in light of the fact that the proposed complaint related back to the original pleading pursuant to Fed. R. Civ. P. 15(c)).

The language of the rule allowing relation-back is in accord because it suggests that an amendment that relates back should be treated as if it was filed on the date of the original pleading.  See Fed. R. Civ. P. 15(c) ("[a]n amendment to a pleading relates back to the date of the original pleading").

Therefore, in the absence of persuasive authority, the Court is unwilling to apply the "reversed" presumption suggested by MGA.  Instead, the Court will continue to be guided by the touchstones of the doctrine of laches:  Unreasonable delay and resulting prejudice.

The Court next considers whether the Court should grant Mattel's summary judgment motion as to MGA's laches defense.  The Court previously deferred, as it does now, the motion for summary judgment on the remaining affirmative defenses.  The Court will consider those at the close of Phase B of the trial as set forth below.

Finally, the Court considers whether the defense of laches is legal (and must be presented to a jury rather than the Court) or equitable (and therefore should be decided by the Court, perhaps outside the presence of the jury).

At Friday's hearing, counsel for MGA stated that MGA had argued in written briefs before the Court that laches, at least insofar as it is applied to a claim of copyright infringement, is a legal defense that must be submitted to the jury. Tr. at 96. When questioned as to the source of the authority, counsel eventually identified the case of Haas v. Leo Feist, 234 F. 105 (S.D.N.Y. 1916). Tr. 102, 106. Referring to this case, counsel contended that "most courts agree that was the first time that laches was applied as a legal defense to copyright." Tr. at 102.  However, this case does not address the defense of laches.  It does not address what, if any, affirmative defenses to a

---

part of the defendant's conduct occurred within the limitations period.

Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 838 (9th Cir. 2002).

MINUTES FORM 90                                                      Initials of Deputy Clerk:  jh
CIVIL -- GEN

Exhibit M, p. 157

copyright claim should be presented to a jury. The case does not even involve a trial by jury. This case was cited in MGA's opposition to Mattel's motion for partial summary judgment, but for an entirely different proposition, relating to the merits of the laches defense.

At Monday's hearing, the Court articulated its ruling on this issue on the record in much the same form that it appears herein. The Court referred specifically to the representations of counsel set forth above, noting that the <u>Haas</u> case did not involve a trial by jury and further did not address the defense of laches. Tr. at 5303.

<u>After</u> the Court articulated its ruling, counsel for MGA revealed that perhaps he "wasn't as clear as [he] should have been" regarding this argument, explaining that <u>Haas</u> was "the case from which most courts agree the doctrine of laches could apply to a copyright case." Tr. at 5306. This contention was clear from counsel's argument the previous Friday. What was not clear, however, and what ultimately became clear during Monday's hearing <u>after</u> the Court articulated its ruling, was the source of MGA's briefing on this issue, which was MGA's opposition to Mattel's motion in limine #4 and not MGA's summary judgment papers (which the Court had reviewed at length and in vain in its attempt to locate counsel's argument on this issue). Tr. at 5306.

Although the Court informed counsel that the briefing to which he referred was not included in the materials that the Court instructed the parties to prepare in advance of the Friday hearing, counsel nevertheless asked that the Court to "take another look" at its opposition to the motion in limine, citing specifically the cases of <u>Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc.</u>, 106 F.3d 894, 896 (9th Cir. 1997), and <u>United States Fidelity & Guar. Co. v. Lee Investments LLC</u>, 551 F.Supp.2d 1114, 1128 (E.D. Cal. 2008).[4] Both these cases, as well as a third case cited in MGA's opposition to Mattel's motion in limine #4, <u>San Francisco Bay Area Rapid Transit Dist. v. Spencer</u>, No. C-04-04632 SI, 2007 WL 1450350 at *10 (N.D.Cal., May 14, 2007), merely represent <u>examples</u> of cases in which trial courts submitted resolution of certain equitable affirmative defenses to the jury. These cases do <u>not</u> stand for the proposition that a Court <u>must</u> submit for the jury's consideration the ultimate conclusion regarding equitable affirmative defenses.[5]

The defense of laches to a copyright claim is clearly an equitable defense. <u>See</u>, <u>e.g.</u>, <u>Kling v. Hallmark Cards Inc.</u>, 225 F.3d 1030, 1036 (9th Cir. 2000) (beginning its analysis of whether

---

[4] Despite counsel's contention that his argument is based on authority derived from the <u>Haas</u> case, that case is not cited in MGA's opposition to Mattel's motion in limine #4.

[5] MGA's other concern, that the jury's role as factfinder not be usurped, is a valid one. Notwithstanding Mattel's contention that there are no facts that are relevant to both the legal claims and the equitable affirmative defenses, <u>see</u> Mattel's reply to motion in limine #4 at 7-9, the Court will consider MGA's timely proposal for any special interrogatories it deems appropriate to address this concern. As previously indicated by the Court, the parties' proposed jury instructions (which should include any proposed special interrogatories) and verdict forms must be filed no later than July 24, 2008, with indexed and tabbed courtesy copies (in a three-ring binder) provided to the Court.

MINUTES FORM 90                                                                 Initials of Deputy Clerk:  jh
CIVIL -- GEN

Exhibit M, p. 158

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 69 of 141 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4154 Filed 07/24/2008 Page 8 of 9
#:128532

laches applied to a copyright claim by noting that laches is an "equitable defense"); <u>Zuill v. Shanahan</u>, 80 F.3d 1366, 1370 (9th Cir. 1996) (distinguishing the defense of statute of limitations as "legal" defense from the defense of laches an "equitable" defense).  As such, it will be tried to the Court.  <u>See</u> <u>e.g.</u>, <u>Danjaq LLC v. Sony Corp.</u>, 263 F.3d 942, 962 (9th Cir. 2001) (noting that although the plaintiff had a jury trial right as to his copyright infringement claims, he did not have a right to a jury on the equitable defense of laches); <u>accord</u> <u>Granite State Ins. Co. v. Smart Modular Techs., Inc.</u>, 76 F.3d 1023, 1027 (9th Cir.1996) ("A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature.").

The Court previously suggested that it was inclined to seek an advisory jury verdict on the affirmative defenses; however, the Court is now disinclined to do so based on the risk of jury confusion.  The Court is of the opinion that this jury's attention should be focused on the narrow range of issues it is being asked to decide in Phase B.

Therefore, the Court will have the parties present to the jury evidence relevant only to the remaining claims, the issue of fraudulent concealment (as discussed below), and any legal defenses to the remaining claims.

### III. FRAUDULENT CONCEALMENT JURY ISSUE

Also discussed at Friday and Monday's hearing was the issue of fraudulent concealment and its relationship with the previously-adjudicated statute of limitations issue.  From the Court's perspective, two issues need to be resolved.

First is the jury's role with respect to a finding of fraudulent concealment.  Both parties agree that the issue of whether Mattel has established a period of fraudulent concealment should be submitted to the jury.  However, at Friday's hearing, Mattel suggested that the Court's findings as a matter of law on summary judgment regarding the statute of limitations places limitations on the time period during which the jury may find fraudulent concealment. Tr. at 100.  Specifically, Mattel attempted to link the Court's findings regarding the earliest possible accrual date of Mattel's claims -- other than conversion and intentional inference with contractual relations -- with the period of fraudulent concealment to be determined by the jury regarding these two claims.

The Court's conclusion regarding the narrow range of possible accrual dates for Mattel's state-law claims, other than the conversion and intentional interference with contractual relations claims, was linked to a specific test relating to California's so-called "discovery rule," which the Court will not repeat here.  <u>See</u> May 27, 2008, Order re Statute of Limitations Defense at 4 - 8.  In the Court's June 2, 2008, Further and Final Order Re Statute of Limitations Defense, the Court noted that, because the claims for conversion and intentional interference with contractual relations are not subject to the discovery rule, "the conclusions drawn by the Court regarding the possible accrual dates for the remaining state-law claims do not apply to" these claims.  <u>Id.</u> at 3.  As noted by the Court in that Order, "[w]hether a period of fraudulent concealment exists, as well as the

Case 2:04-cv-09049-DOC-RNB   Document 4459-5   Filed 12/11/08   Page 70 of 141   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 4154   Filed 07/24/2008   Page 9 of 9
#:128533

duration of any such period, . . . are . . . questions of fact for the jury." Id.  If Mattel believes that
this approach is erroneous, then it may file, in an introductory statement to its proposed jury
instructions, a short statement of legal argument in support of its position, to which, of course,
MGA may respond.

      Second is the scope of the relevant evidence regarding fraudulent concealment.  As
articulated by the Court at Monday's hearing (and before that, in its statute of limitations summary
judgment orders cited above), the relevant issues -- or, stated otherwise, the ultimate facts -- are
whether and for what time period the MGA defendants fraudulently concealed from Mattel the fact
that Carter Bryant worked on the Bratz drawings during his period of employment with Mattel.  See
Tr. at 5317-19.  The relevant evidence, of course, may extend beyond that boundary.  See Fed. R.
Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any
fact that is of consequence to the determination of the action more probable or less probable than
it would be without the evidence.") (emphasis added).  For instance, evidence of Mattel's
knowledge of (and evidence regarding MGA's concealment of) the fact that Carter Bryant was
involved at some point with the Bratz project in general is relevant to --  but by no means
dispositive of -- the ultimate facts of whether and for what time period the MGA defendants
fraudulently concealed from Mattel the fact that Carter Bryant worked on the Bratz drawings during
his period of employment with Mattel.

      This distinction is in accord with that made by the Court yesterday regarding the admission
of "Phase 2 evidence" in Phase 1B.  Although the relevant issues have been, more or less, neatly
dissected into various phases to facilitate efficient adjudication, the relevant evidence is not as
conducive to any surgical cuts and has thus far managed to allude such neat dissection.
Therefore, although counsel should conduct themselves in accordance with the general principles
articulated herein and elsewhere on the record, relevancy, and other limits thereon placed on
admissibility of evidence, most notably Fed. R. Evid. 403, will continue to be determined by the
Court as objections are raised at trial.

      **IT IS SO ORDERED.**

MINUTES FORM 90                                                              Initials of Deputy Clerk:  jh
CIVIL -- GEN

9

Exhibit M, p. 160

# EXHIBIT N

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                              Date:  August 15, 2008
Title:      CARTER BRYANT -*v*- MATTEL, INC.
            AND CONSOLIDATED ACTIONS
========================================================================
=
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes                                   None Present
        Courtroom Deputy Clerk                       Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                            None Present


PROCEEDINGS:    **ORDER RE MGA'S MOTION FOR CLARIFICATION/RECONSIDERATION**

        The Court has received and reviewed defendant MGA's motion for
clarification/reconsideration and plaintiff Mattel's response thereto.

        As clearly set forth in the case law and previously agreed to by both plaintiff and defendants,
the scope of copyright protection is for the Court to decide.  <u>See</u> <u>Apple Computer, Inc. v. Microsoft</u>
<u>Corp.</u>, 35 F.3d 1435, 1443 (9th 1994).  The Court shall determine the appropriate dissection and
filtration of the copyrighted drawing and, through that process, determine the protectable elements
of the copyrighted materials.  <u>Id.</u>  Because this process is a question of law, there is no need, and
it would be unduly confusing, to instruct the jury on how to do the filtration and dissection; rather,
the jury will be instructed as to the protectable elements of the copyrighted materials as well as the
extrinsic and intrinsic test and asked to consider whether the copyright-protectable elements
(extrinsic) of Carter Bryant's drawings and copyright-protected Carter Bryant's drawings as a whole
(intrinsic) are substantially similar to the allegedly infringing Bratz dolls and Bratz products.

        Based on all of the evidence submitted to date, the Court is able to tentatively identify the
following protectable and non-protectable elements of the copyrighted Carter Bryan drawings:

MINUTES FORM 90                                              Initials of Deputy Clerk: cls for jh
CIVIL -- GEN
                                    1
        Exhibit N, p. 161

| Protectable elements of the copyrighted CB drawings | Non-protectable elements of the copyrighted CB drawings |
|---|---|
| 1.      Particularized, synergistic compilation and expression of the human form and anatomy that expresses a unique style and conveys a distinct look or attitude.<br><br>2.      Particularized expression of the doll's head, lips, eyes, eyebrows, eye features, nose, chin, hair style and breasts, including the accentuation or exaggeration of certain anatomical features relative to others (doll lips, eyes, eyebrows, and eye features) and de-emphasis of certain anatomical features relative to others (doll nose and thin, small doll bodies).<br><br>3.      Particularized, non-functional doll clothes, doll shoes, and doll accessories that express aggressive, contemporary, youthful style. | 1.      The resemblance or similarity to human form and human physiology.<br><br>2.      The mere presence of hair, heads, two eyes, eyebrows, lips, nose, chin, mouth, and other features that track human anatomy and physiology.<br><br>3.      Human clothes, shoes, and accessories.<br><br>4.      Age, race, ethnicity, and "urban" or "rural" appearances.<br><br>5.      Common or standard anatomical features relative to others (doll nose and relatively thin, small bodies).<br><br>6.      Scenes a faire, or common or standard treatments of the subject matter. |

It is well-established that particularized expressions of human forms and human features as well as non-functional clothing are protectable.  Mattel v. Goldberger Doll, 365 F.3d 133, 136 (2d Cir. 2004) ("One artist's version of a doll face with upturned nose, bow lips, and widely spaced eyes will be irresistible to an eight-year-old collector.  Another artist's version, which to a grownup may look very like the first, will be a dud to the eight-year-old. . . .  We can surmise that in the highly competitive, billion-dollar industry, getting the doll's face and expression exactly right is crucial to success."); Mattel, Inc. v. Azrak-Hamway Intern., Inc., 724 F.2d 357, 360 (2d Cir. 1983) ("[t]he rendering of such an idea [of a muscleman crouching] is not in itself protectable; only the particularized expression of that idea, for example, the particular form created by the decision to accentuate certain muscle groups relative to others, can be protected.").  Having considered the very wide range (almost limitless) of possible expressions for the particularized expressions of the protectable elements, the Court finds that they are to be afforded broad protection.  McCulloch v. Albert E. Price, Inc., 823 F.2d 316, 321 (9th Cir. 1987) ("Works that are not factual receive much broader protection under the copyright laws because of the endless variations of expression available to the artist.").

The Court has already found that the "virtual identity" standard does not apply; rather, the standard to be applied to the protectable elements is the extrinsic/intrinsic substantial similarity test of the Ninth Circuit.  <u>See</u> July 24, 2008, Order at 2.

**IT IS SO ORDERED.**

Exhibit N, p. 163

# EXHIBIT O

Case 2:04-cv-09049-DOC-RNB Document 4459-56 Filed 12/11/08 Page 76 of 141 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4267 Filed 08/20/2008 Page 1 of 86
#:128539

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MATTEL, INC., | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | |
| | Consolidated with |
| vs. | CASE NO. CV 04-9059 SGL (RNBx) |
| | CASE NO. CV 05-2727 SGL (RNBx) |
| MGA ENTERTAINMENT, INC., et al., | Hon. Stephen G. Larson |
| Defendants. | |
| AND CONSOLIDATED ACTIONS | **COURT'S PHASE B JURY INSTRUCTIONS AS GIVEN** |

# JURY INSTRUCTION NO. 1

Members of the Jury:

Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case.

A copy of these instructions will be sent with you to the jury room when you deliberate.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

Exhibit O, p. 165

**JURY INSTRUCTION NO. 2**

You should decide the case as to each party separately. Unless otherwise stated, the instructions apply to all parties.

**JURY INSTRUCTION NO. 3**

Whether or not you have taken notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

Case 2:04-cv-09049-SGL-RNB Document 4426 Filed 08/20/2008 Page 5 of 88
Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 80 of 141 Page ID
#:128543

**JURY INSTRUCTION NO. 4**

The evidence you are to consider in deciding what the facts are consists of:

1.     the sworn testimony of any witness;

2.     the exhibits which are received into evidence; and

3.     any facts to which the lawyers have agreed or stipulated.

# JURY INSTRUCTION NO. 5

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)   Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)   Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)   Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4)   Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

# JURY INSTRUCTION NO. 6

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

## JURY INSTRUCTION NO. 7

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I have ordered that evidence be stricken from the record. That means that when you are deciding the case, you must not consider that evidence.

Case 2:04-cv-09049-DOC-RNB Document 4426 Filed 08/20/2008 Page 9 of 88
Case 2:04-cv-09049-SGL-RNB Document 4450 Filed 12/11/08 Page 84 of 141 Page ID
#:128547

## JURY INSTRUCTION NO. 8

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

# JURY INSTRUCTION NO. 9

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including members of your family, people involved in the trial, or anyone else; this includes discussing the case in internet chat rooms or through internet "blogs," internet bulletin boards or e-mails. Nor are you allowed to permit others to discuss the case with you. If anyone approaches you and tries to talk to you about the case, please let me know about it immediately;

Second, do not read or listen to any news stories, articles, radio, television, or online reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me simply give a signed note to the bailiff to give to me; and

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

Finally, until this case is given to you for your deliberation and verdict, you are not to discuss the case with your fellow jurors.

Exhibit O, p. 173

10

1

2

## JURY INSTRUCTION NO. 10

During deliberations, you will have to make your decision based on what you recall of the evidence. You will not have a transcript of the trial.

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 87 of 141 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4267 Filed 08/20/2008 Page 12 of 86
#:128550

**JURY INSTRUCTION NO. 11**

You must not make any assumptions about a witness based solely upon the use of an interpreter to assist that witness.

## JURY INSTRUCTION NO. 12

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury was present in the courtroom, or by calling a recess. Please understand that while you were waiting, we were working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we have done what we could to keep the number and length of these conferences to a minimum. I did not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 89 of 141 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4267 Filed 08/20/2008 Page 14 of 86
#:128552

**JURY INSTRUCTION NO. 13**

The parties have agreed to certain facts. You should therefore treat these facts as having been proved.

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 90 of 141 Page ID
#:128553
Case 2:04-cv-09049-SGL-RNB Document 4267 Filed 08/20/2008 Page 15 of 36

**JURY INSTRUCTION NO. 14**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person, including a videotaped deposition, may be used at the trial.

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 91 of 141 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4267 Filed 08/20/2008 Page 16 of 56
#:128554

# JURY INSTRUCTION NO. 15

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**JURY INSTRUCTION NO. 16**

  Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

**JURY INSTRUCTION NO. 17**

Other charts and summaries have been received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**JURY INSTRUCTION NO. 18**

You have heard evidence that both Mattel and MGA purchased and evaluated each other's existing products and had those products in their respective facilities. In this trial, there is no allegation that it is illegal or improper for a company or person to purchase, possess, or evaluate the publicly available product of a competitor.

Exhibit O, p. 182

**JURY INSTRUCTION NO. 19**

When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

## JURY INSTRUCTION NO. 20

Mattel claims that the defendants, MGA Entertainment, Inc. ("MGA"), Isaac Larian and MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), engaged in copyright infringement of certain items that you found in Phase A of this trial were created by Carter Bryant when he worked at Mattel. The defendants deny that claim.

Copyright is the exclusive right to copy.

This right to copy includes the exclusive rights to:

(1)   Authorize, or make additional copies, or otherwise reproduce the copyrighted work;

(2)   Recast, transform, or adopt the work, that is, to prepare derivative works based upon the copyrighted work;

(3)   Distribute copies of the copyrighted work to the public by sale or other transfer of ownership; and

(4)   Display publicly a copyrighted work.

It is the owner of a copyright who may exercise these exclusive rights to copy.

As a matter of law, Mattel is the owner, by assignment, of the Bratz-related items that you found were created by Carter Bryant, alone or jointly with others, while employed by Mattel, which items have been registered by Mattel at the U.S. Copyright Office. In general, copyright law protects against production, adaptation and distribution of substantially similar copies of the owner's copyrighted work without the owner's permission. An owner may enforce these rights to exclude others in an action for copyright infringement.

Exhibit O, p. 184

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 97 of 141 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4267 Filed 06/20/2008 Page 22 of 86
#:128560

You must consider each defendant's acts separately to determine whether that defendant has engaged in an act that is an infringement of Mattel's copyright.

# JURY INSTRUCTION NO. 21

Copyright law allows the author of an original work to prevent others from copying the way or form the author used to express the ideas in the author's work. Only the particular way of expressing an idea can be copyrighted. Copyright law does not give the author the right to prevent others from copying or using the underlying ideas contained in the work, such as any procedures, processes, systems, methods of operation, concepts, principles or discoveries.

The right to exclude others from copying extends only to how the author expressed the ideas in the copyrighted work. The copyright is not violated when someone uses an idea from a copyrighted work, as long as the particular way of expressing that idea in the work is not copied.

## JURY INSTRUCTION NO. 22

Anyone who copies original elements of a copyrighted work without the owner's permission infringes the copyright.

Mattel claims that the defendants have infringed copyrights for the Bratz-related items described above. On Mattel's copyright infringement claim, Mattel has the burden of proving both of the following by a preponderance of the evidence:

1.  Mattel is the owner of a valid copyright; and

2.  The defendants copied original elements from the copyrighted work.

If you find that Mattel has proved both of these elements, your verdict should be for Mattel.

If, on the other hand, Mattel has failed to prove either of these elements, your verdict should be for the defendants.

As a matter of law, the first element is satisfied because Mattel is the owner of each of the items you found were created by Carter Bryant, alone or jointly with others, while employed by Mattel and which Mattel has registered with the U.S. Copyright Office.

Whether or not the second element is satisfied is for you to decide.

# JURY INSTRUCTION NO. 23

A copyright owner is entitled to exclude others from creating derivative works based upon the owner's copyrighted work. The term derivative work refers to a work based on one or more pre-existing works. Accordingly, Mattel is entitled to exclude others from recasting, transforming, or adapting, without Mattel's permission, the copyrighted works you found were created by Carter Bryant, alone or jointly with others, while he was employed by Mattel.

Exhibit O, p. 188

**JURY INSTRUCTION NO. 24**

An owner is entitled to copyright protection of a compilation. A compilation is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.

The owner of a compilation may enforce the right to exclude others in an action for copyright infringement.

Exhibit O, p. 189

26

# JURY INSTRUCTION NO. 25

As explained above, Mattel has the burden of proving that the defendants copied original elements from Mattel's copyrighted work. There are two ways in which Mattel may meet that burden.

First, Mattel may show the defendants copied from the work by showing by a preponderance of the evidence that the defendants actually copied a significant amount of protectable expression from the work.

Second, in the alternative, Mattel may also show the defendants copied from the work by showing by a preponderance of the evidence that the defendants had access to Mattel's copyrighted works and that there are substantial similarities between the defendants' works and original elements of Mattel's works.

It is undisputed in this case that defendants had access to Mattel's copyrighted works. Whether there are substantial similarities between the defendants' works and original elements of Mattel's works is for you to decide.

# JURY INSTRUCTION NO. 26

You are to make a determination regarding substantial similarity according to a two-step process, which includes application of the "extrinsic test" and the "intrinsic test." To prevail on its claims for copyright infringement, Mattel must satisfy both of these tests.

First, you must apply the extrinsic test. Under the extrinsic test, Mattel must establish that specific ideas and expressive elements of the works Mattel owns and the Bratz-related products that Mattel claims are infringing are substantially similar.

The Court has determined what elements of the works that you found were created by Carter Bryant, solely or jointly while working at Mattel, are protectable under copyright law. These are the elements that you should consider for the purpose of your comparisons to each of the allegedly infringing products under the extrinsic test:

First, the particularized, synergistic compilation and expression of the human form and anatomy that expresses a unique style and conveys a distinct look or attitude;

Second, the particularized expression of a doll's head, lips, eyes, eyebrows, eye features, nose, chin, hair style and breasts, including the accentuation or exaggeration of certain anatomical features relative to others (doll lips, eyes, eyebrows, and eye features) and de-emphasis of certain anatomical features relative to others (doll nose and thin, small doll bodies); and

Third, the particularized doll clothes, doll shoes, and doll accessories that express aggressive, contemporary, youthful style.

In contrast, certain basic elements of Carter Bryant's works are not protectable. Specifically, copying of protected expression or ideas cannot be established by the mere

fact that both Carter Bryant's works and the allegedly infringing designs bear a

resemblance or similarity to human form and human physiology; have hair, heads, two

eyes, eyebrows, lips, nose, chin, mouth, and other features that track human anatomy and

physiology; wear or have human clothes, shoes, and accessories; depict a certain age,

race, ethnicity, or have an "urban" appearance; possess common or standard anatomical

features relative to others or depict common or standard treatment of fashion doll subject

matter. Nevertheless, particular compilations or combinations of these otherwise non-

protectable elements in the works which express a particular style or convey a distinct

look or attitude, are protectable.

You should consider only the elements I have just listed for purposes of the

extrinsic test. Focusing on the protectable elements of the works by Carter Bryant as

compared to those elements in the allegedly infringing Bratz-related works, you must

determine whether Mattel has proven by the preponderance of the evidence that the works

are substantially similar. If you so find, you must next consider the intrinsic test. If you

do not so find, you must find for the defendants.

The intrinsic test looks at the overall similarity of ideas and expression in the

works from the perspective of an ordinary observer. You should ask yourself whether the

ordinary, reasonable audience, in this case girls between the ages of 7 and 12, would

determine or recognize the defendants' products as reflecting the total concept and feel, or

as a "picturization," of the Bratz-related works that you have found Carter Bryant created

alone or jointly with others while employed by Mattel.

Mattel does not need to establish that the works it alleges are infringing are

identical or virtually identical to the works it owns, nor that the allegedly infringing

works do not contain any non-infringing material. However, Mattel does need to establish that, focusing on the protectable elements of Carter Bryant's designs which I have identified under the extrinsic test, and the overall look and feel of the works under the intrinsic test, there are substantial similarities between the copyright-protected works and the allegedly infringing works.

Exhibit O, p. 193

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 106 of 141 Page ID
#:128569
Case 2:04-cv-09049-SGL-RNB Document 4267 Filed 08/20/2008 Page 31 of 36

**JURY INSTRUCTION NO. 27**

The degree of similarity required to support a finding of substantial similarity is affected by the degree of access MGA, Isaac Larian and MGA Hong Kong had to Carter Bryant's works. The greater the level of access, the lower the showing of similarity required to support a finding of substantial similarity. However, the burden of proving substantial similarity by a preponderance of the evidence always remains with Mattel.

**JURY INSTRUCTION NO. 28**

Copyright law protects distinctive characters. Defendants' works infringe Mattel's copyrights if they copy recognizable and distinctive traits, attributes, and elements of the personalities of the characters portrayed in Carter Bryant's works.

# JURY INSTRUCTION NO. 29

If you find that defendants had access to the copyrighted works and substantial similarity between the copyrighted works and allegedly infringing works, you must find that defendants infringed Mattel's copyrights. Defendants contend that certain Bratz-related works were created independently, that is, that defendants did not actually copy or prepare derivative works from Carter Bryant's works when they created these Bratz-related works, notwithstanding their admitted access to these works. A claim of independent creation applies where a defendant can prove that he or she created the allegedly infringing work without copying or adapting or preparing derivative works from the original to which he or she had access.

Defendants bear the burden of proof on the issue of independent creation.

If you find that Mattel has shown the elements of infringement and defendants have not established independent creation by a preponderance of the evidence, then you must find for Mattel on its claim of copyright infringement.

**JURY INSTRUCTION NO. 30**

A two-dimensional work, such as a drawing, can be infringed by a three-dimensional work, such as a doll. A doll, which consists of different materials or includes aspects that are not visible in a copyrighted drawing, nevertheless will infringe the drawing when the works are substantially similar in their appearance under the extrinsic and intrinsic tests. A three-dimensional work is not an independent creation merely because it includes or is a result of artistic or non-artistic work not included in the copyrighted work. Rather, the question is whether the three-dimensional work is substantially similar to the two-dimensional work as a whole using the extrinsic/intrinsic test described above.

Exhibit O, p. 197

34

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 110 of 141 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4267 Filed 08/20/2008 Page 35 of 86
#:128573

**JURY INSTRUCTION NO. 31**

A copyright can be infringed by intermediate or preparatory works, including works prepared in the product development or marketing stage, that are substantially similar to a copyrighted work, regardless of whether the end product of the copying also infringes the copyright.

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 111 of 141 Page ID
#:128574
Case 2:04-cv-09049-SGL-RNB Document 4267 Filed 08/20/2008 Page 36 of 86 Page ID

# JURY INSTRUCTION NO. 32

Mattel has presented evidence concerning certain copyright infringement lawsuits brought by MGA in Hong Kong pursuant to Hong Kong law.

The Court has excluded, and you may not consider, any reference to any legal arguments or legal conclusions associated with those lawsuits.

You may, however, consider any factual statements or factual representations that MGA made in those lawsuits.

It is for you to decide how much weight, if any, to give to those factual statements or factual representations.

**JURY INSTRUCTION NO. 33**

If you find that MGA infringed Mattel's copyright in the Bratz works, you may consider Mattel's claim that Isaac Larian vicariously infringed that copyright. Mattel has the burden of proving each of the following by a preponderance of the evidence:

      1.    Isaac Larian profited directly from the infringing activity of MGA;

      2.    Isaac Larian had the right and ability to supervise/control the infringing activity of MGA; and

      3.    Isaac Larian failed to exercise that right and ability.

If you find that Mattel proved each of these elements, your verdict should be for Mattel if you also find that MGA infringed Mattel's copyright. If, on the other hand, Mattel has failed to prove any of these elements, your verdict should be for Isaac Larian on Mattel's claim for copyright infringement, unless you find that Isaac Larian is liable for contributory infringement under the instruction that follows.

## JURY INSTRUCTION NO. 34

A defendant may be liable for copyright infringement engaged in by another if he/it knew or had reason to know of the infringing activity and intentionally materially contributes to that infringing activity.

If you find that MGA infringed Mattel's copyright in Bratz works, but that MGA Hong Kong and/or Isaac Larian did not directly or vicariously engage in acts of infringement, you should proceed to consider Mattel's claim that MGA Hong Kong and Isaac Larian contributorily infringed that copyright. To prove contributory copyright infringement, Mattel must prove both of the following elements by a preponderance of the evidence:

1.    Isaac Larian and/or MGA Hong Kong knew or had reason to know of the infringing activity of MGA; and

2.    Isaac Larian and/or MGA Hong Kong intentionally materially contributed to MGA's infringing activity.

If you find that MGA infringed Mattel's copyright and you also find that Mattel has proved both of these elements, your verdict should be for Mattel. If, on the other hand, Mattel has failed to prove either or both of these elements as against MGA Hong Kong and/or Isaac Larian, and also failed to prove direct or vicarious infringement by MGA Hong Kong and/or Isaac Larian, your verdict should be for those defendants.

# JURY INSTRUCTION NO. 35

Mattel claims that defendants fraudulently concealed the facts underlying Mattel's claims of intentional interference with contract and conversion. Defendants deny these allegations.

To prove fraudulent concealment, Mattel must show the following by a preponderance of the evidence

    (1)    the defendants took affirmative steps to conceal the facts that could have led Mattel to discover that Carter Bryant created Bratz-related works while employed by Mattel or that Carter Bryant entered into a contract with and worked with MGA while he was still employed by Mattel; and

    (2)    Mattel was not aware of such facts that either did or would have, with diligence, led Mattel to discover that Carter Bryant created Bratz works while employed by Mattel or that Carter Bryant entered into a contract with and worked with MGA while he was still employed by Mattel.

If you so find by the preponderance of the evidence, you should find for Mattel on its allegations of fraudulent concealment. If not, you should find for defendants on the allegations of fraudulent concealment.

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 115 of 141 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4267 Filed 08/20/2008 Page 40 of 86
#:128578

### JURY INSTRUCTION NO. 36

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

Exhibit O, p. 203

**JURY INSTRUCTION NO. 37**

In Phase A, you determined that Mattel had proved its claim for intentional interference with contractual relations against the defendants MGA and Isaac Larian. You must now decide how much money, if any, should be awarded as damages.

The amount of damages must include an award for each item of harm that was caused by MGA's and Isaac Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel must prove the amount of damages. However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)    Compensatory and general damages, including disgorgement of profits earned by MGA and Isaac Larian as a result of their wrongful conduct;

(2)    Prejudgment interest at the maximum rate, which is 7%, calculated from the date Mattel's claim arose;

(3)    Punitive damages.

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 117 of 141 Page ID
#:128580
Case 2:04-cv-09049-SGL-RNB Document 4267 Filed 08/20/2008 Page 42 of 86

# JURY INSTRUCTION NO. 38

In Phase A, you determined that Mattel had proved its claims against the defendants MGA and Isaac Larian for aiding and abetting Carter Bryant's breach of fiduciary duty and breach of the duty of loyalty. You must now decide how much money, if any, should be awarded as damages.

The amount of damages must include an award for each item of harm that was caused by MGA's and Isaac Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel must prove the amount of its damages. However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)  Compensatory and general damages, including disgorgement of profits earned by MGA and Isaac Larian as a result of their wrongful conduct;

(2)  Prejudgment interest at the maximum rate, which is 7%, calculated from the date Mattel's claim arose;

(3)  Punitive damages.

Exhibit O, p. 205

**JURY INSTRUCTION NO. 39**

Mattel is entitled to obtain disgorgement of profits as an element of its damages for the wrongful acts of aiding and abetting breach of fiduciary duty and duty of loyalty that you have found. Accordingly, if you find that MGA and/or Isaac Larian obtained profits or advantages because of these specific wrongful acts, those profits and advantages should be awarded to Mattel.

Exhibit O, p. 206

## JURY INSTRUCTION NO. 40

In Phase A of this trial, you found that Mattel had proved its claims for conversion of tangible property against MGA, Isaac Larian and MGA Hong Kong. You must now decide how much money will reasonably compensate Mattel for the harm. This compensation is called damages.

Mattel must prove the amount of its damages. However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)   The fair market value of the tangible Bratz works created by Carter Bryant while he was employed by Mattel; and

(2)   Prejudgment interest at the maximum rate, which is 7%, calculated from the date Mattel's property was converted;

(3)   Punitive damages.

Fair market value is measured as of the time the tangible item was converted. Fair market value is the highest price that a willing buyer would have paid to a willing seller assuming that there is no pressure on either one to buy or sell, and that the buyer and seller know all the uses and purposes for which the tangible items are reasonably capable of being used.

Exhibit O, p. 207

44

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 120 of 141 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4267 Filed 08/20/2008 Page 45 of 86 Page ID
#:128583

# JURY INSTRUCTION NO. 41

If you find for the plaintiff, Mattel, on any of its copyright infringement claims against the defendants, you must determine Mattel's damages.  Mattel is entitled to recover any profits of the defendants attributable to the infringement.  Mattel must prove damages by a preponderance of the evidence.

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 12 of 14 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4526 Filed 08/20/2008 Page 46 of 86
#:128584

# JURY INSTRUCTION NO. 42

You may make an award of the defendants' profits only if you find that the plaintiff showed a causal relationship between the infringement and the defendants' gross revenue.

The defendants' profit is determined by deducting expenses from the defendants' gross revenue.

The defendants' gross revenue is all of the defendants' receipts from sale of a product containing or using the copyrighted work or associated with the infringement. Mattel has the burden of proving the defendants' gross revenue by a preponderance of the evidence.

Expenses are all operating costs and production costs incurred in producing the defendants' gross revenue. The defendants have the burden of proving the defendants' expenses by a preponderance of the evidence.

Indirect profits are the defendants' profits with a less direct connection or link to the infringement. A plaintiff such as Mattel may be entitled to indirect profits in addition to direct profits. To recover indirect profits, Mattel must establish a causal relationship between the infringement and the profits generated indirectly from such infringement.

In other words, Mattel must offer some evidence that the infringement at least partially caused the profits that the infringer generated as a result of the infringement.

Unless you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement. The defendants have the

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 122 of 141 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4267 Filed 09/20/2008 Page 47 of 86
#:128585

burden of proving the portion of the profit, if any, attributable to factors other than infringing the copyrighted work.

Defendants are not required to prove with precision the percentage of its profits attributable to factors other than infringement, so long as the apportionment is reasonable and just. However, in determining what portion of the defendants' profits are attributable to copyright infringement, the benefit of the doubt should be given to Mattel and not defendants.

If the copyrighted portions are so intermingled with the rest of the infringing work that they cannot well be distinguished from it, the entire profits realized by the defendants are to be given to the plaintiff. At the same time, defendants do not need to demonstrate that the profits not attributable to infringement are completely free of infringing material.

Case 2:04-cv-09049-DOC-RNB  Document 4459-5  Filed 12/11/08  Page 123 of 141  Page ID
#:128586
Case 2:04-cv-09049-SGL-RNB  Document 4267  Filed 06/20/2008  Page 48 of 86

## JURY INSTRUCTION NO. 43

Mattel also claims that defendants engaged in willful infringement of Mattel's copyrights. An infringement is considered willful when the plaintiff has proved both of the following elements by a preponderance of the evidence:

1. The defendants engaged in acts that infringed the copyright; and

2. The defendants knew that those acts infringed the copyright.

A defendant cannot deduct overhead expenses, operating expenses, or taxes from his/its gross revenue when the copyright infringement is willful.

## JURY INSTRUCTION NO. 44

Mattel seeks damages under more than one legal claim or theory and as to three defendants.  In awarding damages as to any particular claim or defendant, you should not consider or discount your award based on amounts, if any, that you award as to any other claim or defendant.  That is, you should award the full amount of damages you find appropriate, if any, as to each separate claim against each defendant.  The Court will ensure, once your verdict has been reached, that the plaintiff does not obtain duplicative damages.

Exhibit O, p. 212

49

# JURY INSTRUCTION NO. 45

If you decide that Isaac Larian's, MGA's or MGA Hong Kong's conduct caused Mattel harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against Isaac Larian only if Mattel proves by clear and convincing evidence that Isaac Larian engaged in that conduct with malice, oppression, or fraud.

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable. This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

You may award punitive damages against MGA or MGA Hong Kong only if Mattel proves that MGA or MGA Hong Kong acted with malice, oppression, or fraud. To do this, Mattel must prove one of the following by clear and convincing evidence:

1. That the malice, oppression, or fraud was conduct of one or more officers, directors, or managing agents of MGA or MGA Hong Kong, who acted on behalf of MGA or MGA Hong Kong; or

2. That an officer, a director, or a managing agent of MGA or MGA Hong Kong had advance knowledge of the unfitness of another officer, director, or managing

Exhibit O, p. 213

50

agent of MGA or MGA Hong Kong and employed that person with a knowing disregard of the rights or safety of others; or

3. That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of MGA or MGA Hong Kong; or

4. That one or more officers, directors, or managing agents of MGA or MGA Hong Kong knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it had occurred.

"Malice" means that a defendant acted with intent to cause injury or that a defendant's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A defendant acts with knowing disregard when the defendant is aware of the probable dangerous consequences of his or its conduct and deliberately fails to avoid those consequences.

"Oppression" means that a defendant's conduct was despicable and subjected Mattel to cruel and unjust hardship in knowing disregard of its rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that a defendant intentionally misrepresented or concealed a material fact and did so intending to harm Mattel.

An employee is a "managing agent" if he or she exercises substantial independent authority and judgment in his or her corporate decision making such that his or her decisions ultimately determine corporate policy.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive

damages, you should consider all of the following separately for each defendant in determining the amount:

    a.    How reprehensible was that defendant's conduct?

    b.    Is there a reasonable relationship between the amount of punitive damages and Mattel's harm or between the amount of punitive damages and potential harm to Mattel that the defendant knew was likely to occur because of his or its conduct? Punitive damages may not be used to punish a defendant for the impact of its alleged misconduct on persons other than Mattel.

    c.    In view of that defendant's financial condition, what amount is necessary to punish him or it and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because a defendant has substantial financial resources. Any award you impose may not exceed that defendant's ability to pay.

Exhibit O, p. 215

**JURY INSTRUCTION NO. 46**

You have heard testimony regarding the prospect of an injunction being issued in this case. It is for the Court to decide what, if any, injunctive relief to order.

Exhibit O, p. 216

1 **JURY INSTRUCTION NO. 47**

2     When you begin your deliberations, your foreperson will preside over the

3 deliberations and will speak for you here in Court.

4     You will then discuss the case with your fellow jurors to reach agreement if you

5 can do so. Your verdict must be unanimous.

6

7     Each of you must decide the case for yourself, but you should do so only after

8 you have considered all of the evidence, discussed it fully with the other jurors, and

9 listened to the views of your fellow jurors.

10    Do not hesitate to change your opinion if the discussion persuades you that you

11 should. Do not come to a decision simply because other jurors think it is right.

12

13    It is important that you attempt to reach a unanimous verdict but, of course, only

14 if each of you can do so after having made your own conscientious decision. Do not

15 change an honest belief about the weight and effect of the evidence simply to reach a

16 verdict.

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit O, p. 217                    54

## JURY INSTRUCTION NO. 48

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

Case 2:04-cv-09049-DOC-RNB Document 4459-5 Filed 12/11/08 Page 131 of 141 Page ID
Case 2:04-cv-09049-SGL-RNB Document 4267 Filed 08/20/2008 Page 56 of 66
#:128594

**JURY INSTRUCTION NO. 49**

     A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

# EXHIBIT P

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

11

| | |
|---|---|
| 12  MATTEL, INC., | CASE NO. CV 04-9049 SGL (RNBx) |
| 13          Plaintiff, | Consolidated with |
| 14       vs. | Case No. CV 04-09059 SGL (RNBx)<br>Case No. CV 05-02727 SGL (RNBx) |
| 15  MGA ENTERTAINMENT, INC., et al., | Honorable Stephen G. Larson |
| 16          Defendant. | **PHASE B VERDICT FORM AS GIVEN** |
| 17  AND CONSOLIDATED ACTIONS | |
| 18 | |

19

20

21

22

23

24

25

26

27

28

# VERDICT FORM - PHASE B

We answer the questions submitted to us as follows:

## I. Damages for Phase A Claims

(Answer all four questions in this section.)

### Intentional Interference With Contractual Relations

1.    In Phase A of this trial, you found that MGA Entertainment, Inc. ("MGA") and Isaac Larian are liable to Mattel for intentional interference with contractual relations. What amount of damages, if any, should be awarded to Mattel?

As to MGA:    $ _20 MILLION_

As to Mr. Larian:    $ _10 MILLION_

### Aiding and Abetting Breach of Fiduciary Duty

2.    In Phase A of this trial, you found that MGA and Isaac Larian are liable to Mattel for aiding and abetting Carter Bryant's breach of fiduciary duty. What amount of damages, if any, should be awarded to Mattel?

As to MGA:    $ _20 MILLION_

As to Mr. Larian:    $ _10 MILLION_

### Aiding and Abetting Breach of the Duty of Loyalty

3.    In Phase A of this trial, you found that MGA and Isaac Larian are liable to Mattel for aiding and abetting Carter Bryant's breach of the duty of loyalty. What amount of damages, if any, should be awarded to Mattel?

As to MGA:    $ _20 MILLION_

As to Mr. Larian:    $ _10 MILLION_

## **Conversion**

4.    In Phase A of this trial, you found that MGA, Isaac Larian and MGA Entertainment (HK) Limited ("MGA Hong Kong") are liable to Mattel for conversion.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:                 $ _31,500 PLUS 7% INTEREST_

As to Mr. Larian:          $ _0_     CALCULATED FROM

As to MGA Hong Kong: $ _0_     THE DATE MATTEL'S

PROPERTY WAS

CONVERTED.

## II.  Copyright Infringement

5.     Has Mattel proven by a preponderance of the evidence that MGA is liable to Mattel for copyright infringement?

       Yes      __X__

       No      _____

If your answer is "yes," then answer Question 6.

If your answer is "no," then answer Question 7.

6.     Was MGA's copyright infringement willful?

       Yes      _____

       No      __X__

Answer Question 7.

7.     Has Mattel proven by a preponderance of the evidence that Isaac Larian is liable to Mattel for copyright infringement?

       Yes   __X__

       No   _____

If your answer is "yes," then answer Question 8.

If your answer is "no," then answer Question 9.

8.     Was Mr. Larian's copyright infringement willful?

       Yes   _____

       No   __X__

Answer Question 9.

9.     Has Mattel proven by a preponderance of the evidence that MGA Hong Kong is liable to Mattel for copyright infringement?

       Yes   __X__

07209/2609529.2608584.2

PHASE B VERDICT FORM AS GIVEN

1        No    ____

2     If your answer is "yes," then answer Question 10.

3     If your answer is "no," then answer Question 11.

4

5     10.    Was MGA Hong Kong's copyright infringement willful?

6         Yes   ____

7         No    _X_

8     Answer Question 11.

9

10    11.    What amount of damages, if any, should be awarded to Mattel for the

11   defendants' copyright infringement?

12       (a)    Copyright Infringement by MGA

13         $____ 6 Million____

14       (b)    Copyright Infringement by Isaac Larian

15         Distributions Mr. Larian received from MGA attributable to Bratz-

16         related works:

17         $____ 3 Million____

18         Value of Mr. Larian's ownership percentage of MGA attributable to

19         Bratz-related works:

20         $_____0_____

21       (c)    Copyright Infringement by MGA Hong Kong:

22         $____ 1 Million____

23

24

25

26

27

28

### III.   Punitive Damages

12.   Has Mattel proven by clear and convincing evidence that MGA acted with malice, oppression, or fraud?

Yes  ____

No   _X_

If your answer is "yes," then answer Question 13.

If your answer is "no," then answer Question 14.

13.   What amount of punitive damages, if any, should be awarded against MGA?

$ _____

Answer Question 14.

14.   Has Mattel proven by clear and convincing evidence that Isaac Larian acted with malice, oppression, or fraud?

Yes  ____

No   _X_

If your answer is "yes," then answer Question 15.

If your answer is "no," then answer Question 16.

15.   What amount of punitive damages, if any, should be awarded against Mr. Larian?

$ _____

Answer Question 16.

16.   Has Mattel proven by clear and convincing evidence that MGA Hong Kong acted with malice, oppression, or fraud?

Yes  ____

No   X

If your answer is "yes," then answer Question 17.

If your answer is "no," then answer Question 18.

17.    What amount of punitive damages, if any, should be awarded against MGA Hong Kong?

$_____  Ø_____

Answer Question 18.

## IV. Fraudulent Concealment

(Answer all five questions in this section.)

18. Has Mattel proven by a preponderance of the evidence that MGA fraudulently concealed the bases for Mattel's claim of intentional interference with contract against it until at least April 27, 2002?

Yes    _X_

No    _____

19. Has Mattel proven by a preponderance of the evidence that Isaac Larian fraudulently concealed the bases for Mattel's claim of intentional interference with contract against him until at least April 27, 2002?

Yes    _____

No    _X_

20. Has Mattel proven by a preponderance of the evidence that MGA fraudulently concealed the bases for Mattel's claim of conversion against it until at least April 27, 2001?

Yes    _X_

No    _____

21. Has Mattel proven by a preponderance of the evidence that Mr. Larian fraudulently concealed the bases for Mattel's claim of conversion against him until at least April 27, 2001?

Yes    _____

No    _X_

1   22.   Has Mattel proven by a preponderance of the evidence that MGA Hong

2   Kong fraudulently concealed the bases for Mattel's claim of conversion against it

3   until at least April 27, 2001?

4       Yes  _____

5       No   ✗

6

7       Once this verdict form is completed, the foreperson of the jury should sign

8   and date on the lines below.

9

10  DATED: *August 26, 2008*                    /s/

                                    Jury Foreperson

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    PHASE B VERDICT FORM AS GIVEN