THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA  90071-3144
Tel.: (213) 687-5000
Fax: (213) 687-5600

Attorneys for The MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| v. | Honorable Stephen G. Larson |
| MATTEL, INC., a Delaware corporation, | (1)   MGA PARTIES' NOTICE OF MOTION AND MOTION FOR REMITTITUR; |
| Defendant. | (2)   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; |
| AND CONSOLIDATED ACTIONS. | **FILED UNDER SEPARATE COVER**: |
| | (3)   DECLARATION OF JASON D. RUSSELL IN SUPPORT THEREOF [under seal]; and |
| | (4)   [PROPOSED] ORDER |
| | Hearing Date:   February 11, 2009 Time:   10:00 AM |

**PUBLIC REDACTED**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to the Court's orders of August 15, and December 3, 2008,  Defendants MGA Entertainment, Inc. ("MGA"), MGA Entertainment (HK) Limited ("MGA HK"), and Isaac Larian ("Larian"), will and hereby do move pursuant to Federal Rule of Civil Procedure 59 for remittitur of damages to $10 million as to MGA, $0 as to MGA (HK), and $10 million as to Isaac Larian on the following grounds:

<u>First</u>, the damage awards against MGA and Larian for copyright infringement and on the state law causes of action (intentional interference with contract, aiding and abetting breach of fiduciary duty, and aiding and abetting breach of duty of loyalty) are duplicative in that they constitute double recovery for a single wrong under the same damages theory;

<u>Second</u>, the damage awards against Larian are duplicative of the awards against MGA because Larian's profits are derivative of MGA's;

<u>Third</u>, the damage awards against MGA HK are duplicative of the awards against MGA because MGA HK's profits are subsumed within MGA's; and

<u>Fourth</u>, the damages award against Larian on intentional interference with contractual relations is barred by the statute of limitations.

<u>Fifth</u>, the damages awarded against MGA on the conversion claim constitute a double recovery as the Court has ordered MGA to turn over to Mattel the original drawings and the damages represent the value of those drawings as if Mattel did not recover the originals.

This Motion is based upon this Notice of Motion and accompanying Memorandum of Points and Authorities, the records and files of this Court, and any other matter of which the Court may take judicial notice.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on December 16, 2008.

DATED:  December 22, 2008          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____/s/ Thomas J. Nolan_____

Thomas J. Nolan
Attorneys for the MGA Parties

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT .............................................................................................................. 3

I.   REMITTITUR IS THE APPROPRIATE REMEDY WHEN A JURY RETURNS DUPLICATIVE DAMAGES AWARDS ......................................... 3

II.  AT MATTEL'S REQUEST, THE JURY WAS INSTRUCTED THAT THE COURT WOULD CORRECT DUPLICATIVE DAMAGES .................. 4

III. THE AWARDS FOR MATTEL'S STATE LAW AND COPYRIGHT INFRINGEMENT CLAIMS ARE DUPLICATIVE ......................................... 6

    A.   Mattel's State Law Claims Are Duplicative Of Each Other .................... 6

        1.   Mattel's State Law Claims Seek Recovery For The Same Wrong ..................................................................................... 6

        2.   Mattel Sought The Same Damages For All Of Its State Law Claims .................................................................................... 9

        3.   The Jury's Verdict Demonstrates The Jury's Understanding Of The Duplicative Damages Instructions As To The State Law Claims ................................................................. 10

    B.   Mattel's Copyright Claim Is Duplicative Of Its State Law Claims ........ 11

        1.   The Copyright Claim Also Sought The Same Recovery Using The Same Damages Theory ................................................. 11

        2.   The Lesser Award For Copyright Infringement Further Proves The Jury Understood The Court's Instructions And Mattel's Theory ........................................................................ 13

IV.  THE AWARDS FOR MATTEL'S CLAIMS AGAINST ISAAC LARIAN  AND MGA ARE DUPLICATIVE ...................................................... 15

V.   THE COPYRIGHT AWARD AGAINST MGA HK IS DUPLICATIVE ....... 19

    A.   Mattel Put Forward No Evidence Supporting A Separate Copyright Damages Award Against MGA Hong Kong ......................... 19

    B.   Any Profits Earned By MGA Hong Kong Are Duplicative Of Profits Earned By MGA ....................................................................... 20

VI.  DAMAGES AGAINST LARIAN FOR INTENTIONAL INTERFERENCE ARE BARRED BY THE STATUTE OF LIMITATIONS ............................................................................................ 20

i

1

VII.   MATTEL IS NOT ENTITLED TO BOTH POSSESION OF THE DRAWINGS AND DAMAGES EQUAL TO THE VALUE OF THOSE DRAWINGS ........................................................................... 21

CONCLUSION ..................................................................................................... 21

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA Parties' Motion for Remittitur
Case No. CV 04-9049 SGL (RNBx)

<u>**TABLE OF AUTHORITIES**</u>

<u>**CASES**</u>                                                                                                          **Page(s)**

<u>Abdala v. Aziz,</u>
    3 Cal. App. 4th 369 (1992) ................................................................. 3

<u>Arica Institute Inc. v. Palmer,</u>
    970 F.2d 1067 (2d Cir. 1992) ............................................................ 15

<u>Bird v. Parsons,</u>
    289 F.3d 865 (6th Cir. 2002) ............................................................. 14

<u>Bowers v. Baystate Technologies, Inc.,</u>
    320 F.3d 1317 (Fed. Cir. 2003) ........................................................... 3

<u>CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.,</u>
    97 F.3d 1504 (1st Cir. 1996)............................................................... 14

<u>Caudle v. Bristow Optical Co.,</u>
    224 F.3d 1014 (9th Cir. 2000) ......................................................... 5-6

<u>Conversive, Inc. v. Conversagent, Inc.,</u>
    433 F. Supp. 2d 1079, 1089 (C.D. Cal. 2006) .................................... 15

<u>Image Technological Services v. Eastman Kodak Co.,</u>
    125 F.3d 1195 (9th Cir. 1997) ............................................................. 6

<u>Julian-Ocampo v. Air Ambulance Network, Inc.,</u>
    Case No.
    2001 WL. 34039480 (D. Or. Dec. 13, 2001) ..................................... 4

<u>Los Angeles Memorial Coliseum Commission v. NFL,</u>
    791 F.2d 1356 (9th Cir. 1986) ...................................................... 16, 19

<u>Masimo Corp. v. Tyco Health Care Group, L.P.,</u>
    Case No. CV 02-4770 MRP,
    2006 WL. 1236666 (C.D.Cal. Mar 22, 2006)................................. 16-17

<u>Peake v. Chevron Shipping Co.,</u>
    Case No. C 00-4228 MHP,
    2004 WL 1781008 (N.D. Cal. Aug. 10, 2004) .............................. 3, 4

<u>Pershing Park Villas Homeowners Association v. United Pac. Insurance Co.,</u>
    219 F.3d 895 (9th Cir. 2000) ............................................................. 4

<u>Polar Bear Products, Inc. v. Timex Corp.,</u>
    384 F.3d 700 (9th Cir. 2004) ............................................................ 19

<u>Rice v. Fox Broadcasting Co.,</u>
    330 F.3d 1170 (9th Cir. 2003) .......................................................... 15

<u>Sengoku Works Ltd. v. RMC International, Ltd.,</u>
    96 F.3d 1217 (9th Cir. 1996) ............................................................ 15

iii

Seymour v. Summa Vista Cinema, Inc.,
  809 F.2d 1385 (9th Cir. 1987) ................................................................ 4

Snyder v. Freight, Construction, Geneneral Drivers, Warehousemen & Helpers,
  Local No. 287,
  175 F.3d 680, 689 (9th Cir. 1999) ......................................................... 4

Sparaco v. Lawler, Matusky, Skelly Engineers LLP,
  313 F. Supp. 2d 247 (S.D.N.Y. 2004) ............................................... 3, 11

United States v. Alston,
  974 F.2d 1206 (9th Cir. 1992) ............................................................... 6

Waffer International Corp. v. Khorsandi,
  69 Cal. App. 4th 1261 (1999) ................................................................ 3

X-It Products, LLC v. Walter Kidde Portable Equipment, Inc.,
  227 F. Supp. 2d 494 (E.D. Va. 2002) .................................................... 4

## STATUTES

Fed. R. Civ. Proc. 59 ................................................................................ 1

37 C.F.R. § 202.1 ................................................................................... 15

MGA Parties' Motion for Remittitur
Case No. CV 04-9049 SGL (RNBx)

## **PRELIMINARY STATEMENT**

Given the legal theories and manner in which Mattel presented its case during the Phase 1B trial, as well as the instructions given to the jury, there can be no doubt that the jury awarded duplicative damages.  Although duplicative damages are impermissible, the Court instructed the jury that it should award such damages, and made clear that the Court (rather than the jury) would eliminate any duplication after trial:

> Mattel seeks damages under more than one legal claim or theory and as to three defendants. In awarding damages as to any particular claim or defendant, you should not consider or discount your award based on amounts, if any, that you award as to any other claim or defendant.  That is, you should award the full amount of damages you find appropriate, if any, as to each separate claim against each defendant.  <u>The Court will ensure, once your verdict has been reached, that the plaintiff does not obtain duplicative damages.</u>

(Tr. 8108:11-19 (emphasis added); Court's Phase B Jury Instructions as Given ("Phase 1B Inst.") (Dkt 4267), Instruction 44.)  The last sentence of this instruction is consistent with Rule 59 of the Federal Rules of Civil Procedure, which vests this Court with the authority to issue a remittitur to avoid any duplication of damages.  The Court should exercise that authority here for many reasons and reduce the judgment to a total of $20 million – $10 million against MGA, $0 against MGA HK, and $10 million against Isaac Larian.

<u>First</u>, Mattel's evidence and argument established that the three state law claims arose from <u>identical</u> allegedly wrongful conduct – Bryant's violation of his Inventions Agreement with Mattel in providing Mattel's intellectual property to competitor (and conspirator) MGA. It is settled that the same wrongful conduct cannot be compensated for more than once. Thus, each $30 million award duplicates the others.  (<u>See</u> Section III.A.1, <u>infra</u>.)

<u>Second</u>, by its own admission, Mattel sought the exact same measure of recovery – disgorgement of defendants' profits – for its state law claims for intentional interference with contractual relations, aiding and abetting breach of fiduciary duty, and aiding and abetting duty of loyalty as it did for its federal claim for copyright infringement. As the

1

verdict form itself makes clear, the jury awarded the same (<u>i.e.</u>, duplicative) damages for these claims. Thus, the $6 million awarded against MGA for copyright infringement is duplicative of $20 million award against MGA on the state law claims, and the $3 million awarded against Larian for copyright infringement on the state law claims is duplicative of the $10 million awarded against Larian. (<u>See</u> Section III.B, <u>infra</u>.)

<u>Third</u>, Mattel encouraged the jury to award Mattel the $777.9 in MGA profits <u>and</u> Isaac Larian's profits of more than $300 million in distributions from MGA, even while ordering the jury to ignore the fact that Larian's distributions <u>were included</u> in the $777.9 million number– a result that even Mattel's expert Michael Wagner repeatedly acknowledged was impermissible and unfair double-counting. (The jury refused to award Mattel even a penny of the equity value Larian built in the company.) (<u>See</u> Section IV, <u>infra</u>.) Thus, the $10 million total award against Larian (which includes both the state law and copyright claims) is duplicative of the $20 million total award against MGA and the total damages awarded against MGA should be reduced to $10 million.

<u>Fourth</u>, the damages awarded against MGA HK on the copyright claim are duplicative and should be stricken because MGA HK has no profits separate and apart from MGA and the damages awarded were based (by Mattel's own admission), solely on the profits generated by MGA from its sales of Bratz-related materials. (<u>See</u> Section V, <u>infra</u>.)

<u>Fifth</u>, the jury's findings that Isaac Larian did not fraudulently conceal claims against him requires the award on the intentional interference with contract claim against him be stricken as time-barred. (<u>See</u> Section VI, <u>infra</u>.)

<u>Finally</u>, the damages awarded on the conversion claim ($31,500) should be remitted to zero because these damages represent the jury's assessment of the fair market value of the original Bryant drawings at the time of the alleged conversion and Mattel has elected instead to receive actual possession of the original drawings. Mattel may not collect both the value of the drawings and the drawings themselves. (<u>See</u> Section VII, <u>infra</u>.)

Despite (or perhaps because of) the obvious peril of duplicative damages being awarded on its state law and copyright claims, Mattel tenaciously fought any instruction to

2

eliminate the potential error in advance of the verdict. As justification for allowing it to try and bamboozle the jury with an admittedly inflated (and double-counting) damages figure, Mattel consistently cajoled the jury and this Court with the promise that should "double damages" be awarded, the Court could and would step in and correct the error <u>after</u> the verdict was rendered.  Although the jury rejected almost entirely Mattel's damages case, the miniscule fraction that the jury did award plainly contains duplicative damages. Consequently, it is time for the Court to take Mattel at its word and "fix" the jury's verdict and eliminate the duplicative damages awarded to Mattel, by, <u>inter alia</u>, remitting the jury's awards on Mattel's copyright infringement and four state law claims.

## ARGUMENT

### I.   REMITTITUR IS THE APPROPRIATE REMEDY WHEN A JURY RETURNS DUPLICATIVE DAMAGES AWARDS

"For years, California's courts have reiterated the 'undeniable proposition' that a plaintiff is 'not entitled to a double recovery.'"  <u>Peake v. Chevron Shipping Co.</u>, 2004 WL 1781008, at *3 (N.D. Cal. Aug. 10, 2004) (quoting <u>Waffer Int'l Corp. v. Khorsandi</u>, 69 Cal. App. 4th 1261, 1280-81 (1999); citing <u>Abdala v. Aziz</u>, 3 Cal. App. 4th 369, 376-77 (1992) ("Duplicate recovery of damages is barred, and neither double recovery of the same item of loss nor double liability for the same item of injury is permitted").)  Nor are plaintiffs permitted to recoup duplicative damages where they bring both state law and copyright claims.  <u>See, e.g.</u>, <u>Bowers v. Baystate Techs., Inc.</u>, 320 F.3d 1317, 1328 (Fed. Cir. 2003) (district court properly omitted copyright damages from final award where the "breach of contract damages arose from the same copying and included the same lost sales that form the basis for the copyright damages"); <u>Sparaco v. Lawler, Matusky, Skelly Eng'rs LLP</u>, 313 F. Supp. 2d 247, 255 (S.D.N.Y. 2004) ("[Defendants] breached his contract by, <u>inter alia</u>, copying his drawings.  The Copyright Act prohibits copying.  The contract between Sparaco and NFM prohibits copying.  The harm being compensated by the settlement is the harm from copying.  Therefore, the damages are duplicative.").

Damages are deemed duplicative, and should be reduced, where they constitute

1    multiple recoveries for a single wrong.   See, e.g., Julian-Ocampo v. Air Ambulance

2    Network, Inc., 2001 WL 34039480, at *4 (D. Or. Dec. 13, 2001) (reducing award where

3    "economic damages awarded for the fraud claim, the breach of contract claim, and the

4    actual damages for the Washington CPA claim represent multiple recoveries" for the same

5    injury).   The same is true where multiple damages awards are made based on a single theory

6    of damages.   See, e.g., X-It Prods., LLC v. Walter Kidde Portable Equip., Inc., 227 F. Supp.

7    2d 494, 500, 542-43 (E.D. Va. 2002) (where plaintiff presented "the same theory of

8    damages" – based on misappropriation of patent – on claims of under the Lanham Act,

9    various state trade secrets acts, various state unfair competition law, and breach of contract,

10   plaintiff was obliged to make an election of remedies so as not to recover duplicative

11   damages).

12        An excessive or duplicative jury award may be challenged on a motion for remittitur

13   under Federal Rule of Civil Procedure 59.   Snyder v. Freight, Const., Gen. Drivers,

14   Warehousemen & Helpers, Local No. 287, 175 F.3d 680, 689 (9th Cir. 1999).   While

15   ostensibly a motion for new trial, remittitur, rather than a new trial, must be granted if the

16   excessiveness is based on the jury's method of calculation, rather than passion or prejudice.

17   Id.   Thus, where duplicative damages are awarded, "courts have opted to remit (i.e., to

18   reduce) jury awards, recalculating damage amounts based on the scope of the plaintiff's

19   claims and the evidence adduced at trial." Peake, 2004 WL 1781008 at *3 (citing Pershing

20   Park Villas Homeowners Ass'n v. United Pac. Ins. Co., 219 F.3d 895, 905 (9th Cir. 2000),

21   Seymour v. Summa Vista Cinema, Inc., 809 F.2d 1385, 1387 (9th Cir. 1987).)   The

22   damages awarded here were plainly duplicative, and a remittitur is therefore appropriate.

23   **II.    AT MATTEL'S REQUEST, THE JURY WAS INSTRUCTED THAT
24           THE COURT WOULD CORRECT DUPLICATIVE DAMAGES**

25        Sweeping aside MGA's concerns about the obvious potential for duplicative damages,

26   and denigrating the need for an instruction admonishing the jury against awarding

27   duplicative damages, Mattel suggested the Court's future intervention instead.   Mattel

28   repeatedly and vehemently assured the Court that it was "not seeking double damages" but

1  demanded the jury be allowed to duplicate its awards because "if they are duplicative, the

2  Court will fix it later." (Tr. 7477:10-19 ("THE COURT: Duplicative damages, your

3  argument is essentially that this is something the Court can do?  MR. PROCTOR: … If an

4  instruction were given and the jury actually followed the instruction, they would put down a

5  damages number, whatever it is on the first claim, and write zero on every other claim,

6  which is not an appropriate thing for a whole variety of reasons.  We're entitled to get a jury

7  finding as to damages to each claim.  We're not seeking double damages. The Court can

8  figure out what's double afterwards.") (emphasis added)); Tr. 7480:23-7482:8 ("MGA's

9  benefits from the infringing activity are measured separately from Isaac Larian's benefits….

10  To the extent they are duplicative, we won't recover both. Again, we are not seeking double

11  damages. We've never been seeking double damages, but … I mean, we certainly can't

12  instruct the jury to disregard duplicative damages and only put it once. … I suggest the jury

13  be permitted to make its award based on the profit it sees Larian as having received and

14  MGA as having received, and if they are duplicative, the Court will fix it later.") (emphasis

15  added).)

16          This is exactly what occurred.  The Court affirmatively instructed the jury that they

17  could and should award duplicative damages and the Court could and would correct any

18  double-counting issues after the verdict. Reading Jury Instruction Number 44, the Court

19  instructed the jury that "Mattel seeks damages under more than one legal claim or theory,

20  and as to three defendants.  In awarding damages as to any particular claim or defendant,

21  you should not consider or discount your award based on amounts, if any, that you award as

22  to any other claim or defendant.  That is, you should award the full amount of damages you

23  find appropriate, if any, as to each separate claim against each defendant.  **The Court will**

24  **ensure, once your verdict has been reached, that the plaintiff does not obtain**

25  **duplicative damages.**" (Tr. 8108:11-19 (emphasis added); Phase 1B Inst. 44.)  Given the

26  Court's clear instruction to the jury regarding duplicative damages, it is presumed that the

27  jury deliberately ignored the implications of a double recovery in making their awards.  See

28  Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1023 (9th Cir. 2000) (given that "the

1   law presumes that jurors carefully follow the instructions given to them," reduction of

2   duplicative damages award was proper where jurors were instructed to award full amount of

3   lost earnings on both state and federal claims); <u>United States v. Alston</u>, 974 F.2d 1206, 1210

4   (9th Cir. 1992) ("A jury is presumed to follow the instructions given by the court").[1]   As

5   such, the various duplicative recoveries should be rectified now.

6   **III.   THE AWARDS FOR MATTEL'S STATE LAW AND COPYRIGHT INFRINGEMENT CLAIMS ARE DUPLICATIVE**

7           **A.   Mattel's State Law Claims Are Duplicative Of Each Other**

8                   **1.   Mattel's State Law Claims Seek Recovery For The Same Wrong**

9           Mattel's state law claims all sought recompense for the same, single wrong:  Carter

10  Bryant's defection to Mattel competitor MGA with Mattel's property in hand.  Mattel's own

11  arguments in support of its claims demonstrate this – indeed, this was the theme of Mattel's

12  closing argument at the end of Phase 1A.   (<u>See, e.g.</u>, Tr. 4823:13-17 ("In general, I said the

13  evidence would show that Carter Bryant created Bratz while he was working at Mattel, that

14  Mattel owns the Bratz drawings, and that MGA <u>– that with MGA's assistance, Mr. Bryant</u>

15  <u>violated legal duties that he owed to Mattel</u>."); Tr. 4824:21-4825:10 ("MGA and Mr. Isaac

16  Larian used Carter Bryant, persuaded Carter Bryant, induced Carter Bryant to work for

17  MGA while he was employed at Mattel. Now, MGA's own internal documents and e-mails

18  show <u>how deep Mr. Bryant's betrayal ran and how MGA was with him every step of the</u>

19  <u>way</u>."); Tr. 4834:12-18 (explaining Garcia testimony disavowing knowledge of Bryant's

20  employment at Mattel "[b]ecause if she, as a senior executive of MGA, knew that Carter

21  Bryant was a Mattel employee in September and October of 2000, <u>when she was working</u>

22  <u>with him hand in hand to develop a new doll line</u>, then MGA was knowingly interfering

23

---

24  [1]       In fact, the Ninth Circuit has rejected attempts to rebut this presumption by introducing

25  arguments by counsel that ostensibly contradicted the jury instructions.  <u>Image Tech. Servs. v. Eastman Kodak Co.</u>, 125 F.3d 1195 (9th Cir. 1997).  In <u>Image Tech</u>, defendant claimed error in

26  that opposing counsel asked the jury to weigh what were otherwise impermissible concerns.  <u>Id.</u> at 1213.  The court rejected defendant's argument because the jury instructions expressly directed the

27  jury to ignore these considerations and defendant's argument necessarily required the court to conclude that the jury "violat[ed] the jury instructions,"  which the Circuit was unwilling to do.  <u>Id.</u>

28

1  with Mr. Bryant's contract with Mattel and aiding and abetting Mr. Bryant in breaching his

2  duties of loyalty and his fiduciary duties to Mattel."); Tr. 4843:2-6 ("Mr. Bryant was an

3  integral part of a rush project to create a new doll line, new fashion doll line for MGA, and

4  MGA was helping Carter Bryant breach his duties to Mattel so that MGA would be in a

5  position to compete with Mattel as soon as possible."); Tr. 4846:2-5 ("Mr. Bryant and MGA

6  worked together, worked hand in glove. MGA helped Carter Bryant as Carter Bryant helped

7  MGA. <u>Together they created a competing doll line called Bratz, in violation of Mr.</u>

8  <u>Bryant's contractual duties to Mattel.</u>"); Tr. 4979:3-20 (describing Garcia and Bryant

9  "working together" in September and October, "[t]hey cannot, with a straight face, deny

10 that they were encouraging Carter… <u>He's helping them compete with Mattel while he's still</u>

11 <u>a Mattel employee. And MGA knew it.</u>"); Tr. 5001:24-5002:3 ("<u>MGA recognized what it</u>

12 <u>was doing and inducing a Mattel employee who created Mattel designes [sic] to bring his</u>

13 <u>designs to MGA. They didn't give a hoot whether they were done at Mattel or not.</u> But

14 they wanted him to make sure they could compete as quickly as possible with Mattel.")

15 (emphasis added).)

16      And MGA's supposed inducement of Bryant and receipt of BRATZ was the "crime"

17 Mattel told the jury they must rectify in Phase 1B. (<u>See, e.g.,</u> Tr. 5410:7-9 ("I guess the key

18 question in this part of the case that you're going to be deciding is sort of a variance of that

19 question: <u>does crime pay</u>?"); Tr. 5413:14 (referring to MGA's "having gotten BRATZ

20 wrongfully"); Tr. 5414:16-18 ("All of their profits in this time frame, all of their profits, <u>is</u>

21 <u>from exploiting the wrongdoing which you have found that they engaged in.</u>"); Tr. 5418:6-

22 12 ("What we'll be asking you to do in this phase is to say you can't benefit from the

23 wrongdoing that you, the jurors, have found they committed in getting the BRATZ concepts,

24 the confidential information about BRATZ, the BRATZ characters, the BRATZ drawings.

25 <u>They cannot profit from that, or else crime pays. That's one of the big issues in this phase.</u>"

26 (emphasis added)); Tr. 8120:1-4 ("What caused this dramatic increase? It was caused by the

27 theft that you found in this case. And the law provides that MGA and Mr. Larian must give

28 up those ill-gotten gains."); Tr. 8122:5-12 ("Isaac Larian did not steal the Bratz drawings

7

1    just to admire them in the privacy of his office.  He stole them to sell them to the public…

2    All of these things that MGA points to as evidence of  their contributions are simply what it

3    did to exploit the stolen property.  <u>They aren't something separate from the theft; they are</u>

4    <u>the  means  by  which  MGA  profited  from  the  theft</u>."); Tr. 8124:10-12 ("Mr. Larian is

5    planning all of this right at the very beginning, <u>based just on receiving Mattel's confidential</u>

6    <u>designs</u>."); Tr. 8126:15-18 ("<u>Whether applied to the breach of fiduciary duty and the other</u>

7    <u>wrongdoing you found in the first phase of the trial or the copyright claims, the concept is</u>

8    <u>the same:  Crime doesn't pay, directly or indirectly</u>." (emphasis added).))

9         This Court's ruling on summary judgment and the jury instructions given to the jury

10   likewise demonstrate that the wrong at issue is the same.  For example, this Court's ruling

11   on summary judgment established that Mattel's intentional interference claim and its claim

12   for aiding and abetting breach of fiduciary duty are inextricably linked.   In ruling on

13   preemption, this Court determined that the intentional interference claim was not preempted

14   and could be pursued "to the extent that the claim is based on MGA's acts that may be

15   found to have aided and abetted the breach or induced the breach of Bryant's fiduciary

16   duty."  (4/25/08 Order Granting In Part, Denying In Part, and Deferring In Part the Parties'

17   Motions for Partial Summary Judgment ("4/25/08 Order") (Dkt 3286) at 2; <u>see also</u> Court's

18   Final Pre-Trial Conf. Order for Phase 1 Trial ("PTCO") (Dkt 3917) at 6.)   As Mattel's

19   counsel has explained, this analysis was the basis for Mattel's damages theory on its

20   intentional interference claim:  "[Mr. Proctor:]  The issue on this is the Court's rulings said

21   the intentional interference claim is preempted as to Bratz but not as to fiduciary duty.  So

22   the intentional interference claim is viable as to – and alive as to breach of fiduciary duty,

23   insofar as it's predicated on breach of fiduciary duty.  That's the language of the Court's

24   order.  <u>Breach of fiduciary duty is exactly what gives rise to disgorgement in this case.</u>"  (Tr.

25   7466:19-7467:1 (emphasis added).)

26        At the same time, the jury instructions for intentional interference and aiding and

27   abetting breach of the duty of loyalty demonstrate that the wrong at issue in those two

28   claims was also identical.  On intentional interference, the jury was instructed:  "As a matter

1 of law, Mr. Bryant directly competed with Mattel by entering into a contract with MGA,
2 Mattel's competitor, to produce a competing product while he was still employed by
3 Mattel." (Final Jury Instructions As Given ("Phase 1A Inst.") (Dkt 4115), Inst. 23.)  On the
4 duty of loyalty, virtually the same instruction was given:  "As a matter of law, Mr. Bryant
5 breached his duty of loyalty to Mattel when he entered into a contract with MGA, Mattel's
6 competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed
7 in direct competition with Mattel's products."  (Phase 1A Inst. 28.)  Given that, Mattel's
8 intentional interference claim is inextricable from both its fiduciary duty claim and its duty
9 of loyalty claim, it is impossible to avoid the conclusion that all three seek redress for the
10 very same wrong.

11 **2.    Mattel Sought The Same Damages For All Of Its State Law Claims**

12 Consistent with their overlap, Mattel put forth a single theory of damages during
13 Phase 1B for all three state law claims.  (See Tr. 7476:15-17 ("We have one damages theory
14 as to the state law claims, as to the aiding and abetting claim, as to the intentional
15 interference claim.").)  Mattel's damages theory was disgorgement – and on all three claims,
16 Mattel sought the same recovery: "all benefits that MGA ever received from Bratz."  (Tr.
17 5366:4-8 ("We have made very clear that our perspective is that under the state law claims,
18 and particularly the aiding and abetting of breach of fiduciary duty, we are entitled to
19 disgorgement of all benefits that MGA ever received from Bratz.").)  Mattel did not contend
20 that some benefits were derived from intentional interference, while others arose from
21 Bryant's breach of his fiduciary duty, and still others were the result of his breach of the
22 duty of loyalty.  It presented a single theory to the jury: that Mattel was entitled to all of
23 defendants' profits derived from Bratz. (Tr. 6286:15-6287:21 ("Q. Mr. Wagner, you're
24 aware that the jury has made certain determinations regarding liability for certain claims in
25 this case.  You're aware of that? A.  I am.  Q.  And you're aware that determinations have
26 been made about aiding and abetting breach of duty of loyalty, aiding and abetting breach of
27 fiduciary duty conversion, and intentional interference with contract. You're aware of that?
28 A. Yes. … [Q.]  What conclusion have you reached about the benefit to which Mattel is

1  entitled to recover on these initial claims that we're going to be speaking about?  A.  I have

2  determined that as far as MGA is concerned, MGA has earned profits before tax of $777.9

3  million between 2000 and June 30, 2008 in their sale of Bratz products.").)

4       The jury instructions mirrored this approach.  At the close of Phase 1B, the jury was

5  instructed to award "compensatory and general damages, including disgorgement of profits

6  earned by MGA and Isaac Larian as a result of their wrongful conduct" for all three state

7  law claims.  (Tr. 8103:9-8105:4; Phase 1B Insts. 37-38.)  During closing argument, Mattel

8  reiterated to the jury that there were not three sets of benefits to weigh and appraise, but

9  rather only one.  (See Tr. 8259:14-17 ("So that's going to be the same thing with respect to

10  the rest of the causes of action, too, aiding and abetting, breach of fiduciary duty, and

11  breach of loyalty.  The same numbers.") (emphasis added);  Tr. 8251:25-8252:2 ("And it's

12  going  to  be  you  found  MGA  Entertainment  liable  for  intentional  interference  with

13  contractual  relations,  and the numbers are going to be the same.") (emphasis added).

14  Pursuant to Mattel's theory, had the jury been instructed to avoid duplicative damages, it

15  could have awarded the entire amount of MGA's benefit on any one of the state law claims.

16  Instead, they were instructed the entire amount on each claim.  (Phase 1B Inst. 44.)

17           **3.      The Jury's Verdict Demonstrates The Jury's Understanding Of The
               Duplicative Damages Instructions As To The State Law Claims**

18

19       The jury did exactly what Mattel asked.  As explained above, the jury was expressly

20  instructed to "award the full amount of damages [it] find[s] appropriate, if any, as to each

21  separate claim" and that "[t]he Court will ensure, once [its] verdict has been reached, that

22  the plaintiff does not obtain duplicative damages."  (Tr. 8108:11-19; Phase 1B Inst. 44.)  In

23  deciding the damages for the three state law claims at issue here, Mattel asked the jury to

24  identify and award the amount of profits enjoyed by MGA and Mr. Larian as a result of

25  their wrongful conduct.  (Phase 1B Insts. 37-39.)  But the only "wrongful conduct" Mattel

26  endeavored to prove at trial, and the only wrongful conduct referenced in the jury

27  instructions,  was  Bryant's  contract  with  Mattel's  competitor,  by  which  he  allegedly

28  disclosed  Mattel's  confidential  and  proprietary  information.   (Supra, Section III.A.1.)

1  Mattel also asked the jury to measure the wrongfully obtained benefits against an identical

2  backdrop of MGA and Isaac Larian's profits.

3       Given that there was no evidence at trial or in the jury instructions distinguishing the

4  underlying wrongful conduct for each separate claim, and that Mattel was asking,

5  essentially, three identical questions about the profits MGA and Larian enjoyed, there is no

6  rational basis to conclude that the jury awarded a separate $30 million for each claim

7  (consisting of $20 million as to MGA and $10 million as to Isaac Larian).   The three

8  identical $30 million awards confirm that the jury did exactly what it was asked to do:

9  award duplicative damages for the same wrong.   Consequently, the Court should issue a

10  remittitur making it clear that Mattel is entitled to only one recovery on the tort claims of

11  $20 million as to MGA and $10 million as to Isaac Larian.   (In Section IV below we show

12  that even this amount on the tort claims after remittitur is duplicative, because the $20

13  million awarded against MGA includes $10 million in duplicative damages that also were

14  awarded against Larian, requiring that the award against MGA be reduced to $10 million.)

15       **B.**  **Mattel's Copyright Claim Is Duplicative Of Its State Law Claims**

16            **1.**  **The Copyright Claim Also Sought The Same Recovery Using The Same Damages Theory**

17            Mattel's copyright claim is also duplicative of its state law claims, in that it seeks the

18  same recovery based on the same theory of damages.[2]  Just as with its state law claims,

19  Mattel sought disgorgement of profits on its copyright claims   (Tr. 5474:20-24 ("THE

20  COURT:  And just to be clear … <u>you are seeking disgorgement of profits and revenues with

21  respect to the state tort claims as well as the copyright claims</u>? MR. PRICE:  <u>Absolutely</u>.")

22  (emphasis added)); Tr. 7480:15-17 ("[A]s is clearly the case, we're seeking disgorgement of

23

24  _____

[2]       The fact that the Court has not held these claims to be preempted does not preclude it from
25  finding the damages are duplicative.  <u>Sparaco</u>, 313 F. Supp. 2d at 252-53 ("The fact that the breach
   of contract claim was not preempted does not in any way mean that the measure of damages for the
26  two wrongs might not turn out to be exactly the same.").  Indeed, in considering the preemption
   issue, this Court noted that the same damages were being sought on both the copyright and state
27  law claims.  (Tr. 7472:17-7473:15 (characterizing Mattel's damages on its state law claims as
   seeking "copyright-like damages").)
28

1   benefits for the copyright claim as well as the tort claims"); Tr. 7477:2-3 (same); Tr.

2   7768:5-19 (same); Tr. 5267:9-14 ("THE COURT: I just want to make sure I understood it

3   right – that the disgorgement of profits and revenues is the damages that you're seeking

4   with respect to all claims, not just the claim for copyright infringement. Is that correct? MR.

5   ZELLER: That's correct, Your Honor.") (emphasis added); see also Mattel's Reply ISO

6   Mtn. Objecting to Portions of Discovery Master's 4-11-08 Order re: 30(b)(6) Witness, dated

7   May 6, 2008, (Dkt 3485) at 11 (stating that Mattel's damages "are not at issue in Phase 1B,

8   because Mattel's damages arise only from MGA's profits from its infringement"); 5/22/08

9   PM Tr. 53:6-7 ("[T]he damages we're seeking are pure disgorgement in this case"); 7/18/08

10  Tr. 61:1-2 ("THE COURT: Your theory of damages is disgorgement. MR. ZELLER:

11  Correct. Exactly.").) As with the state law claims, the jury was instructed that a finding of

12  copyright infringement would mean "Mattel is entitled to recover any profits of the

13  defendants attributable to the infringement." (Tr. 8106:3-7; Phase 1B Inst. 41 (emphasis

14  added).)[3]

15          Indeed, the jury heard only one amount in connection with disgorgement – the same,

16  single number it heard in conjunction with the state law claims:  MGA's Bratz profits. The

17  only difference was that the jurors were told that some additional deductions should be

18  made in the context of the copyright claim in the form of apportionment.  (Tr. 6312:23-

19  6313:17 (Wagner testimony that "under the claim for copyright, under certain

20  circumstances, it may be appropriate to apportion the profits earned by MGA on the sale of

21  Bratz products between the alleged infringing activity and other factors or other value that

22  _____

23  [3]      Obviously, Mattel could have sought actual damages for its copyright infringement claim; it
    did not.  (See, e.g., Tr. 7890:12-14 ("We're not seeking actual damages, we're seeking
24  disgorgement.  You know, that's – that's our damages theory.").)  It could have proffered a lost
    profits model for its interference claim; it did not.  (See, e.g., 7/18/08 Tr. 94:17-20 ("We're seeking
25  disgorgement. …we're not seeking our lost profits.").)  Mattel could have sought the disgorgement
    of Carter Bryant's "secret profits" under its aiding and abetting breach of fiduciary duty claim; it
26  did not.  It could have sought its costs in finding a replacement for Carter Bryant under its aiding
    and abetting breach of the duty of loyalty claim; it did not.  (See, e.g., Tr. 5267:16-19 (court noting
27  Mattel is not "seeking traditional damages").)  Instead, Mattel explained to the Court and the jury
    repeatedly its single theory of recovery for all four claims – pure disgorgement.

28

MGA brought to the sale of that product, and likewise for Mr. Larian's distributions.  Q. What do you mean by apportion? A. That instead of awarding 100 percent of the profits earned on Bratz, that you divide that up between the copyright, the value generated by the copyright infringement, versus other things.").)   The jurors made these deductions, as instructed, and once again awarded the same recovery for the same injury.

### 2.   The Lesser Award For Copyright Infringement Further Proves The Jury Understood The Court's Instructions And Mattel's Theory

As discussed above, Mattel's theory for copyright damages was the same as its state law claims, *i.e.*, disgorgement of MGA and Isaac Larian's profits.  The fact that the jury only awarded $10 million in copyright infringement damages, a third of what the jury gave Mattel for each state law claim at issue here, establishes that the jury understood and obeyed the Court's (and Mattel's) instructions on the infringement claim as well, for several reasons.

<u>First</u>, Mattel argued at trial that the doctrine of apportionment did not apply to the disgorgement theories advanced under its state law claims.  (<u>See</u> Tr. 8247:15-17, 20-23 ("That [evidence of apportionment] has nothing to do with the damages that you are to award based on the wrongful conduct you have found.").)  Thus, while Jury Instruction 42 permitted the jury to discount "portion[s] of the profit … attributable to factors other than use of the copyrighted work" from MGA and Mr. Larian's profits, the jury instructions on Mattel's state law claims did not.  (<u>See</u> Phase 1B Insts. 37-39, 42.) Mattel repeatedly told the jury not apportion the state law claims.  (<u>See</u> Tr. 8250:10-12, 16-17 ("That's what created all of these profits.  You don't apportion those, you don't let them say where they are now or even part…. You're not allowed to keep that.  You have to disgorge it.  <u>It has nothing to do with apportionment</u>."), Tr. 8252:23-25 ("So those profits, those revenues, the 3.1 billion should not be apportioned at all.  Because all of that started with looking at that confidential information.").)  Mattel drove its point home when it displayed Instruction 39 to the jury and admonished them that in "Instruction 39, there's nothing about apportionment." (Tr. 8247:17-19.)  Given Mattel's consistent position at trial, one would expect the jury's copyright damages to be less than its unapportioned state law damages.

1    In fact, considering the testimony the jury heard on the role of apportionment in its

2   decision, the smaller amount of the jury's infringement award was both predictable and

3   reasonable.  During trial, MGA expert Professor Joachimsthaler testified that MGA's

4   branding efforts could be responsible for between 50% - 70% of Bratz-related profits.  (See

5   Tr. 7378:1-8.)  MGA argued during its closing argument that these figures should be used to

6   apportion wrongfully obtained profits for purposes of calculating copyright damages.  (See,

7   e.g., Tr. 8219:23-8220:13 (review of Joachimsthaler's approach and concluding that "even

8   if you're being conservative, I take it whatever you find the profits to be and knocking off

9   50 to 70 percent in your discretion").)  Under the claims where apportionment was not

10  available, the jury found Mattel was due $30 million in wrongfully obtained profits on each

11  claim.  Under the infringement claim, where apportionment was available, the jury awarded

12  Mattel $10 million, or 33% of the unapportioned awards.  Against the backdrop of

13  Joachimsthaler's testimony, the jury's copyright infringement award is easily recognized as

14  a narrower but overlapping subset of the unapportioned state law claim awards.

15       Second, as Mattel argued at trial, the scope of recoverable profits under its state law

16  disgorgement theory was much larger than the scope available under its copyright claim.

17  Under the latter theory, Mattel was only entitled to recover profits attributable to the

18  copyright infringement.  (See Phase 1B Inst. 41-42.)  Therefore, the "BRATZ" name  as

19  well as the concept of four edgy hip fashion dolls could not serve as the predicate for

20  copyright damages, as neither are copyrightable to begin with.  There is no question that a

21  single word – such as "BRATZ" – is not subject to copyright protection.  Bird v. Parsons,

22  289 F.3d 865, 881 (6th Cir. 2002) ("Courts that have addressed this issue have concluded

23  that taking a single word, or even a phrase, from a copyrighted work generally does not

24  violate the rights that copyright law provides to the owner of that work."); CMM Cable Rep,

25  Inc. v. Ocean Coast Props., Inc., 97 F.3d 1504, 1519-20 (1st Cir. 1996) ("It is axiomatic that

26  copyright law denies protection to fragmentary words and phrases and to forms of

27  expression dictated solely a[s] functional considerations on the grounds that these materials

28  do not exhibit the minimal level of creativity necessary to warrant copyright protection.");

1   Arica Inst. Inc. v. Palmer, 970 F.2d 1067, 1072-73 (2d Cir. 1992) (words that the defendant

2   copied did "not exhibit the minimal creativity required for copyright protection"): see also

3   37 C.F.R. § 202.1 ("words and short phrases such as names, titles and slogans" are not

4   subject to copyright protection).[4]

5       Moreover, the figures illustrated in Carter Bryant's sketches fall far short of the

6   standard for copyrightability as "characters."   As the Ninth Circuit has explained,

7   "characters are ordinarily not afforded copyright protection" apart from the copyrighted

8   work, unless they are "especially distinctive" or comprise "the story being told."  Rice v.

9   Fox Broadcasting Co., 330 F.3d 1170, 1175 (9th Cir. 2003).  Thus, "[c]haracters that have

10  received copyright protection have displayed consistent, widely identifiable traits."  Id.

11  (emphasis added).  That test cannot be satisfied here, given that Bryant's sketches were

12  simply vague renderings of figures that, as of September and October 2000, had not been

13  transformed into marketable items, much less actually distributed publicly. The Bryant

14  sketch figures could not possibly have displayed "consistent, widely identifiable traits" and

15  were therefore not subject to copyright protection.   Thus, unlike the state law recovery

16  options available to Mattel, the copyright infringement claims were necessarily limited  to

17  the copyrightable material, and the reduced amount of the award presents no mystery.

18                    *                    *                    *

19      Thus, the Copyright damages awarded by the jury are entirely duplicative of the

20  damages awarded by the jury under the various state law theories and should be stricken.

21  **IV.  THE AWARDS FOR MATTEL'S CLAIMS AGAINST ISAAC LARIAN
22       AND MGA ARE DUPLICATIVE**

23      As discussed at length above, Mattel sought only disgorgement of profits under both

24  _____
    [4]    Nor is the Bratz name subject to trademark protection, because Mattel never used it. "It is
25  axiomatic in trademark law that the standard test of ownership is priority of use.  To acquire
    ownership of a trademark it is not enough to have invented the mark first or even to have registered
26  it first; the party claiming ownership must have been the first to actually use the mark in the sale of
    goods or services."  Conversive, Inc. v. Conversagent, Inc., 433 F. Supp. 2d 1079, 1089 (C.D. Cal.
27  2006); see also Sengoku Works Ltd. v. RMC Intern., Ltd., 96 F.3d 1217, 1219 (9th Cir. 1996), as
    modified, 97 F.3d 1460 (9th Cir. 1996) (same).

28

1   its state law and copyright claims against both Larian and MGA – recovery of any and all

2   benefit gained attributable to the purportedly wrongful conduct.  (See supra Section III.)  At

3   trial, the jury heard that, rather than receive a royalty from Bratz revenues or a percentage of

4   profits when Bratz products are sold, Larian's benefits are derivative of MGA's; that is,

5   Mattel's expert Michael Wagner testified that Larian has only "two types of financial

6   benefits", defined as "distributions, checks written to him by MGA" and "the value that

7   [Larian] has in his stock ownership of MGA in the proportion of MGA that is considered to

8   be the BRATZ product line."  (Tr. 6288:2-7; TX 4552MW (Wagner Expert Report dated

9   February 11, 2008) at 12 ("Isaac Larian's benefit from sales of Bratz Products is determined

10  to be Mr. Larian's percentage of the value of Bratz plus MGA's distributions to Mr. Larian

11  in excess of his tax obligations associated with his proportion of MGA's income.").

12  Wagner calculated Larian's total benefits at $696 million. (Tr. 6288:7-8.)   To calculate the

13  increase in Larian's equity in MGA, Wagner "determined the fair value of MGA stock

14  attributable to the Bratz products."  (See TX 4552MW at 11-12.)  Wagner determined the

15  enterprise value of Bratz as $379,800,000 and concluded 81.82% of that value reflected

16  Larian's ownership interest in the franchise, or $310,800, 000.  (Id.; Tr. 6302:19-6303:10.)

17  Wagner also found that Larian received $385,220,741 of wrongful benefit in the form of

18  distributions paid by MGA to its shareholders.  (Tr. 6296:2-6.)

19          Throughout the litigation, Mattel presented no other means of calculating Larian's

20  benefits derived from his alleged wrongdoing except the distributions and his Bratz-related

21  MGA equity.  (See Tr. 5415:11-22 (Mattel opening statement describing "two components"

22  to Larian financial benefits); Tr. 8130:8-8132:17 (Mattel closing statement describing the

23  two benefits to Larian); Tr. 8257:5-8259:8 (describing the "two elements" of Larian's

24  benefit).)  Thus, any award returned by the jury against Larian must be based on (1) the

25  increase in his ownership interest in the Bratz franchise or (2) distributions paid by MGA.[5]

26  _____
    [5]       The jury's damages award is necessarily constrained by the damages evidence introduced at
27  trial.  See Los Angeles Mem'l Coliseum Comm'n v. NFL, 791 F.2d 1356, 1360 (9th Cir. 1986)
    (damages must be supported by "substantial evidence" presented at trial); Masimo Corp. v. Tyco
28  Health Care Group, L.P., 2006 WL 1236666, at *15 (C.D.Cal. Mar 22, 2006) (ordering new trial
                                                                                              (cont'd)

The verdict form required the jury to enter damages against Larian under each of its separate state law claims, but the form did not reflect what portion of the $10 million contribution by Larian on each of the three claims was to come from Larian's distributions and/or the increase in his equity value.  (See Phase B Verdict Form (Dkt 4279), Questions 1-3.)  But no crystal ball is required to discern the jury's intent – the jury's copyright damages award illustrates exactly how these figures should be disaggregated.  In the same verdict form, addressing Mattel's copyright infringement claim, the jury was asked to return damages separately reflecting "Distributions Mr. Larian received from MGA attributable to Bratz-related works" and "Value of Mr. Larian's ownership percentage of MGA attributable to Bratz-related works."  (See Phase B Verdict Form, Question 11(b).)  The jury returned damages in the amounts of "$3 million" and "0," respectively.  (Id.)

Because the jury expressly found that none of the value in Larian's ownership interest attributable to Bratz-related works should be assessed as damages, the jury's state law damages must exclusively and entirely consist of MGA's distributions to Larian – because when given the option, the jury rejected damages premised on Larian's ownership interest.[6] The same is true of the copyright damages awarded against Larian, as the jury expressly indicated in awarding damages only from Larian's distributions.  These distributions were paid out of MGA's total profits.  As Wagner conceded at trial, "MGA first has to make a profit off of Bratz before there's anything to distribute."  (See Tr. 6413:11-13.)  Wagner opined that the total amount of MGA's Bratz-related profits was $777.9 million, and that Larian's distributions were valued at $385.2 million.  (See Tr. 6412:25-6413:3, 14-16;

_____

*(cont'd from previous page)*
on damages where the jury awarded $40 million more than plaintiff's damages expert's model supported because the jury's award fell outside the "range" sustainable by the damages theories and evidence presented at trial).

[6]    This construction of the verdict is supported by the internal consistency of the jury's awards.  Under its copyright claim, after apportioning wrongfully obtained profits, the jury assessed $6 million in damages against MGA.  The jury then assessed $3 million in damages against Larian, to be drawn entirely from his distributions.  The jury's award of unapportioned profits under Mattel's state law claims reflects this same proportion: under each, the jury awarded $20 million in damages against MGA and $10 million against Larian.

1  6296:2-6.)  These distributions were paid out of the $777.9 million in profits.  At trial,
2  Wagner admitted that "there is overlap between those two numbers."  (See Tr. 6413:6;
3  accord Tr. 6414:10-13 ("You'll agree with me, as you said in your deposition, an element of
4  duplication between MGA's profits and what was distributed to Mr. Larian? A.  I've said it
5  then, and I've already said it today.").)  In other words, as Wagner testified, the accurate
6  depiction of MGA's total retained profits would be measured by the profits less the
7  distributions to Larian. (Tr. 6413:23-6414:1).

8      Thus, any damage award based on MGA's total profits of $777.9 million and
9  Larian's distributions would be duplicative, since the $385.2 million dollars in distributions
10 were the same exact dollars included in MGA's total profits,

11
12
13                                    [REDACTED]
14
15

16      Mattel was wholly cognizant of that overlap and their inability to recover both the
17 Larian distribution and the MGA profits, and yet still informed the jury that they were
18 obligated to consider MGA's total profits of $777.9 million without subtracting Larian's
19 distributions because the Court would fix any double recovery: "[i]ncluded in MGA's
20 $777.9 million in profits is money that went to Isaac Larian. You might be concerned that
21 Mattel is trying to double-count by asking for it to be awarded against both Mr. Larian and
22 MGA.  Rest assured, as the Court has already indicated, the Court will not let that happen.
23 Mattel does not seek to recover twice, and Mattel will not be allowed to recover twice." (Tr.
24 8136:8-14 (emphasis added).)

25      This Court demonstrated that it was well aware that duplicative damages would be an
26 issue in this context and that modification of the award would be required when it required
27 the verdict forms to reflect what portion of the award for each claim was attributable to
28 MGA and Isaac Larian "to avoid the double-counting" (Tr. 8072:12-20, 8073:17-19),

                                    18

1   stating that "for example, on Question 11, we did the breakdown on the copyright

2   infringement to make sure that we had MGA, Isaac Larian, and MGA Hong Kong; <u>and then</u>

3   <u>to the extent that MGA and Isaac Larian's distributions of profit duplicate each other, I can</u>

4   <u>cut it</u>.  <u>Without having these in here, I'm not going to be able do that</u>." (Tr. 8073:24-8074:4

5   (emphasis added).)    Likewise, at the close of trial, the Court reassured the jury in its

6   instructions that "[t]he Court [would] ensure, once [the] verdict has been reached, that the

7   plaintiff [will] not obtain duplicative damages," and instructed the jury to award the full

8   amount of damages [it] find[s] appropriate, if any, as to…each defendant…" (Phase 1B Inst.

9   44.)   The jury clearly followed these instructions, and because Larian's distributions were

10  derivative of, rather than in addition to, MGA's profits, they are duplicative and should be

11  removed to eliminate that duplication.    Consequently, the award against MGA of $20

12  million should be reduced by the $10 million awarded against Isaac Larian, for a final

13  award of $10 million against MGA and $10 million against Larian.[7]

## V.    THE COPYRIGHT AWARD AGAINST MGA HK IS DUPLICATIVE

### A.    Mattel Put Forward No Evidence Supporting A Separate Copyright Damages Award Against MGA Hong Kong

Courts should reject jury findings concerning the amount of damages where the amount is "clearly not supported by the evidence, or 'only based on speculation or guesswork.'" <u>Los Angeles Mem'l Coliseum Comm'n</u>, 791 F.2d at 1360 (reversing jury's award of damages where damages were not supported by "substantial evidence"); <u>see also</u> <u>Polar Bear Prods., Inc. v. Timex Corp.</u>, 384 F.3d 700, 710 (9th Cir. 2004) (remitting copyright damages award where one element of the award was "hypothetically possible" but was not supported by sufficient evidence).   The jury was never presented with a basis for awarding Mattel any profits from MGA HK separate and apart from MGA's profits. Instead, Mattel's theory of MGA Hong Kong's profits was entirely derivative of its theory

---

[7]      Notably, because the Larian awards are duplicative of MGA awards, and because, as argued in Section V, infra, the award against MGA HK should be stricken as completely derivative of the award against MGA, even if the copyright awards are not found to be duplicative of the state law awards, the total copyright award is still $6 million, not $10 million.

---

19

of MGA's profits.  During closing argument, Mattel admitted that the profits sought from MGA HK were the same as those sought against MGA.  (See Tr. 8268:10-13 ("1.213 million because willful means you don't subtract any costs of – overhead costs at all.  And nonwillful 777.9 million.  Mr. Larian, 385.2.  And 310.8, and then <u>MGA Hong Kong would be the same as MGA.</u>") (emphasis added).)  As the jury determined what portion of these profits was attributable to the allegedly infringing activity in rendering a decision against MGA, all damages awarded against MGA Hong Kong from this same pool of profits are duplicative.

**B.     <u>Any Profits Earned By MGA Hong Kong Are Duplicative Of Profits Earned By MGA</u>**

Mattel did not present a separate theory of damages against MGA Hong Kong because it could not present such a theory.  In addition to this evidentiary defect, the jury's award against MGA HK suffers from a legal defect as well.  MGA HK is a consolidated entity for financial reporting purposes.  (See, e.g., TX 656 (Consolidated Financial Statements, Year ended December 31, 2003) at 6 ("The accompanying consolidated financial statements include MGA Entertainment, Inc. (MGA or the Company) and its wholly owned subsidiaries, MGA Entertainment (Mauritius) Limited (Mauritius) and MGA Entertainment (H.K.) Ltd. (Hong Kong).").)  MGA HK is one of several of MGA's consolidated entities – each of which are incorporated into MGA's profit and loss statements.  Thus, Wagner's computation of MGA's total profits <u>already</u> reflects any and all profit earned by MGA HK.  To the extent there are any in the first instance, all of MGA HK's profits are included within the total amount of MGA's profits.  MGA HK has no profits separate and apart from MGA.  Consequently, even if Mattel proffered a separate model for measuring MGA HK's profits, each and every dollar would be duplicative and, therefore, should be remitted.

**VI.     DAMAGES AGAINST LARIAN FOR INTENTIONAL INTERFERENCE ARE BARRED BY THE STATUTE OF LIMITATIONS**

The jury found that Isaac Larian did not fraudulently conceal the facts underlying Mattel's intentional interference claim.  (Phase 1B Verdict Form, Question 19.)  Thus, per

20

this Court's ruling on summary judgment, that claim is time-barred.  (See 6/2/08 Order at 3; PTCO at 6.)  Thus, the $10 million award on this claim should be stricken.

## VII.  MATTEL IS NOT ENTITLED TO BOTH POSSESION OF THE DRAWINGS AND DAMAGES EQUAL TO THE VALUE OF THOSE DRAWINGS

With respect to its conversion claim, Mattel presently will be able to have its cake and eat it too.  The jury awarded Mattel $31,500 on its conversion claim, which represented the jury's assessment of the fair market value of Bryant's original drawings at the time of the alleged conversion.[8]  (See Phase 1B Inst. 40 (permissible damages on conversion are the fair market value of the item converted plus seven percent interest); Phase 1B Verdict Form No. 4 (awarding $31,500 "plus 7% interest calculated from the date Mattel's property was converted").)  With full knowledge of the jury's verdict and damages award, Mattel nonetheless elected to pursue the remedy of recovering the original drawings themselves in lieu of receiving the damages awarded on the conversion claim.  In accordance with Mattel's request, in its December 3, 2008 order granting Mattel's motion for declaratory relief, this Court ordered the MGA Parties to return all of Bryant's drawings to Mattel.  (See 12/3/2008 Order Granting Dec. Judg. (Dkt 4442) ¶ 4.)

As Mattel will now have custody of the original drawings themselves, compelling the MGA Parties to pay their fair market value as well would give Mattel a double recovery. Mattel has elected its remedy by seeking the return of the drawings.  Thus, the jury award of damages should be stricken as an impermissible double recovery.

## CONCLUSION

For the foregoing reasons, the MGA Parties respectfully request that their Motion for Remittitur be granted in its entirety and that the Court reduce the judgment to $10 million

---

[8]  Although a claim for conversion may give rise to additional components of damages (e.g., the costs to recover possession of the converted item), here Mattel chose not to pursue such components and MGA received summary judgment on the conversion claim other than to the extent that Mattel was permitted to recover the fair market value at the time of the alleged conversion of the original drawings, such that this claim would not support, for example, any damages for loss of the use or right to exploit the value of the drawings.  (See 4/25/08 Order at 2-3.)

1  against MGA, $0 against MGA HK, and $10 million against Isaac Larian.

2  DATED:  December 22, 2008          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

3                                      By:  _____/s/ Thomas J. Nolan_____

4                                               Thomas J. Nolan
                                        Attorneys for the MGA Parties

MGA Parties' Motion for Remittitur
Case No. CV 04-9049 SGL (RNBx)