THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA  90071-3144
Tel.: (213) 687-5000
Fax: (213) 687-5600

Attorneys for The MGA Parties

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| v. | Honorable Stephen G. Larson |
| MATTEL, INC., a Delaware corporation, | (1)  MGA PARTIES' NOTICE OF MOTION AND MOTION FOR PARTIAL JUDGMENT AS A MATTER OF LAW FOR PHASES 1A and 1B; |
| Defendant. | |
| _____ | |
| AND CONSOLIDATED ACTIONS. | (2)  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; |
| | **FILED UNDER SEPARATE COVER**: |
| | (3)  [PROPOSED] ORDER |
| | Hearing Date:    February 11, 2009<br>Time:              10:00 AM |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to the Court's order on July 2, 2008, Defendants MGA Entertainment, Inc. ("MGA"), MGA Entertainment (HK) Limited ("MGA HK" or "MGA Hong Kong"), and Isaac Larian ("Larian") (collectively, the "MGA Parties"), will and hereby do renew their motion pursuant to Federal Rule of Evidence 50(b) for a partial judgment as a matter of law on the following grounds:

First, Mattel's claims for aiding and abetting breach of fiduciary duty and breach of duty of loyalty are preempted under the Copyright Act to the extent they are based on Mattel's rights to Bratz;

Second, the damages awarded on Mattel's claims for aiding and abetting breach of fiduciary duty and breach of duty of loyalty and intentional interference with contractual relations are barred by copyright preemption;

Third, Mattel's claims for aiding and abetting breach of fiduciary duty and breach of duty of loyalty, intentional inference with contractual relations, and unfair competition are preempted by the California Uniform Trade Secrets Act ("CUTSA");

Fourth, Mattel failed to present any evidence of permissible damages for any of its state law claims;

Fifth, no reasonable jury could find that Mattel proved an essential element of its claims for aiding and abetting breach of fiduciary duty – MGA's or Larian's actual knowledge of the duty or its breach;

Sixth, Mattel failed to present any evidence that would support its unfair competition claim against MGA HK;

Seventh, Mattel's claims against the MGA Parties cannot arise out of its purported rights to the idea for the name "Bratz" as a matter of law, as no such rights are awarded by statutory or common law;

Eighth, Mattel failed to present any evidence to support copyright infringement beyond the first generation of Bratz dolls; and

Ninth, Bryant is not an author of Trial Exhibit 1136A as a matter of law.

1      This Motion is based upon this Notice of Motion and accompanying Memorandum of

2 Points and Authorities, the records and files of this Court, and any other matter of which the

3 Court may take judicial notice.

4      This motion is made following the conference of counsel pursuant to L.R. 7-3 which

5 took place on December 16, 2008.

6 DATED:  December 22, 2008   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

7        By:  _____ /s/ Thomas J. Nolan _____

8             Thomas J. Nolan

9           Attorneys for the MGA Parties

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.   PREEMPTION BARS MATTEL'S STATE LAW CLAIMS ........................... 2

    A.   Mattel's Aiding And Abetting Breaches Of Fiduciary Duty And
Duty Of Loyalty Claims Are Preempted By The Copyright Act To
The Extent They Are Based On Mattel's Purported Rights To
Bratz ............................................................................................................. 2

    B.   Copyright Preemption Bars Recovery Of MGA's Bratz Profits For
State Law Claims ........................................................................................ 4

    C.   Mattel's State Law Claims Are Preempted By The California
Uniform Trade Secrets Act ...................................................................... 7

II.   MATTEL DID NOT PROVE DAMAGES FOR ITS STATE LAW
CLAIMS .................................................................................................................. 8

III.   MATTEL FAILED TO PROVE THAT MGA OR LARIAN HAD
ACTUAL KNOWLEDGE OF BRYANT'S FIDUCIARY DUTY OR
BREACH THEREOF .......................................................................................... 10

IV.   MATTEL PRESENTED NO EVIDENCE THAT WOULD ALLOW A
REASONABLE JURY TO CONCLUDE THAT MGA HK IS LIABLE
FOR UNFAIR COMPETITION ...................................................................... 18

V.   MATTEL IS NOT ENTITLED TO BASE ANY CLAIMS ON ITS
"OWNERSHIP" OF THE NAME "BRATZ" ................................................. 18

VI.   MATTEL DID NOT PROVE COPYRIGHT INFRINGEMENT BY
LATER GENERATION BRATZ DOLLS, OTHER PRODUCT LINES,
OR BRANDED MERCHANDISE ................................................................... 21

VII.   BRYANT IS NOT AN AUTHOR OF THE 1136A PRELIMINARY
SCULPT AS A MATTER OF LAW ................................................................ 21

CONCLUSION ................................................................................................................. 24

i

# TABLE OF AUTHORITIES

## CASES

Page(s)

Accuimage Diagnostics Corp. v. Terarecon, Inc.,
  260 F. Supp. 2d 941 (N.D. Cal. 2003) .................................................. 7

Adams v. Herman,
  106 Cal. App. 2d 92 (1951) ...................................................... 9

Aalmuhammed v. Lee,
  202 F.3d 1227 (9th Cir. 2000) ................................................ 21-22

Anderson v. Thacher,
  76 Cal. App. 2d 50 (1946) ....................................................... 9

Avina v. Spurlock,
  28 Cal. App. 3d 1086 (1972) ................................................... 10

Bird v. Parsons,
  289 F.3d 865 (6th Cir. 2002) .................................................... 6

Blaustein v. Burton,
  9 Cal. App. 3d 161 (1970) ...................................................... 20

Bucklew v. Hawkins, Ash, Baptie & Co., LLP.,
  329 F.3d 923 (7th Cir. 2003) .................................................... 4

Carpenter Foundation v. Oakes,
  26 Cal. App. 3d 784 (1972) ..................................................... 8

Casey v. U.S. Bank National Association,
  127 Cal. App. 4th 1138 (2005) ................................................. 17

Chandler v. Roach,
  156 Cal. App. 2d 435 (1957) ................................................... 20

Convolve, Inc. v. Compaq Computer Corp.,
  2006 WL 839022 (S.D.N.Y. Mar. 31, 2006) .................................... 7

County of San Bernardino v. Walsh,
  158 Cal. App. 4th 533 (2007) ................................................... 9

Del Madera Properties v. Rhodes & Gardner, Inc.,
  820 F.2d 973 (9th Cir. 1987),
  overruled on other grounds,
  Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994) ............................... 3-4

Desny v. Wilder,
  46 Cal. 2d 715 (1956) .......................................................... 20

Digital Envoy, Inc. v. Google, Inc.,
  370 F. Supp. 2d 1025 (N.D. Cal. 2005) ........................................ 7

Easton Sports, Inc. v. Warrior Lacrosse, Inc.,
    Case No. 05-CV-72031,
    2005 WL 2234559 (E.D. Mich. Sept. 14, 2005) ............................................. 7

Eckard Brandes, Inc. v. Riley,
    338 F.3d 1082 (9th Cir. 2003) ............................................................................ 9

Enreach Tech., Inc. v. Embedded Internet Solutions, Inc.,
    403 F. Supp. 2d 968 (N.D. Cal. 2005) ............................................................... 7

Entous v. Viacom International Inc.,
    151 F. Supp. 2d 1150 (C.D. Cal. 2001) ............................................................. 3

Ernest Paper Products Inc. v. Mobil Chemical Co. Inc.,
    Case No. CV95-7918 LGB(AJWX),
    1997 WL 33483520 (C.D. Cal. Dec. 2, 1997) ................................................... 7

Feist Publications v. Rural Telephone Service Co.,
    499 U.S. 340 (1991) ........................................................................................ 23

Gerard v. Ross,
    204 Cal. App. 3d 968 (1988) ........................................................................... 11

Gilbert v. City of Los Angeles,
    249 Cal. App. 2d 1006 (1967) ..................................................................... 16-17

Hashimoto v. Clark,
    264 B.R. 585 (D. Ariz. 2001) .......................................................................... 11

Heckmann v. Ahmanson,
    168 Cal. App. 3d 119 (1985) ............................................................................. 9

Johnson v. Arista Holding, Inc.,
    Case No. 05 Civ. 9645(LBS),
    2006 WL 3511894 (S.D.N.Y. Dec. 5, 2006) ..................................................... 4

Jonathan Browning, Inc. v. Venetian Casino Resort,
    Case No. C 07-3983 JSW,
    2007 WL 4532214 (N.D. Cal. Dec. 19. 2007) ................................................. 20

Lamps Plus, Inc. v. Seattle Lighting Fixture Co.,
    345 F.3d 1140 (9th Cir. 2003) ......................................................................... 23

Lueter v. California,
    94 Cal. App. 4th 1285 (2002) ............................................................................ 9

MJT Securities, LLC v. Toronto-Dominion Bank,
    Case No. C 03-3815 CW,
    2007 WL 1725421 (N.D. Cal. June 14, 2007) ................................................. 10

Melchior v. New Line Products, Inc.,
    106 Cal. App. 4th 779 (2003) ............................................................................ 9

<u>Memry Corp. v. Kentucky Oil Technologies, N.V.</u>,
    Case No. C-04-03843 RMW,
    2005 WL 1656877 (N.D. Cal. July 14, 2005) ......................................................... 7

<u>Moore v. Local Union 569 of International Brotherhood of Electric Workers</u>,
    989 F.2d 1534 (9th Cir. 1993) ..................................................................... 10

<u>Neilson v. Union Bank of California, N.A.</u>,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) ......................................................9, 10-11

<u>People v. Bestline Products, Inc.</u>,
    61 Cal. App. 3d 879 (1976) ......................................................................8-9

<u>Resolution Trust Corp. v. Rowe</u>,
    Case No. C 90-20114 BAC,
    1993 WL 183512 (N.D. Cal. Feb. 8, 1993) ................................................... 11

<u>Rice v. Fox Broadcasting Co.</u>,
    330 F.3d 1170 (9th Cir. 2003) ...................................................................... 6

<u>Rickards v. Canine Eye Registration Foundation, Inc.</u>,
    704 F.2d 1449 (9th Cir. 1983) .................................................................... 10

<u>Rokos v. Peck</u>,
    182 Cal. App. 3d 604 (1986) ...................................................................... 20

<u>Rosenthal v. Gould</u>,
    273 Cal. App. 2d 239 (1969) ........................................................................ 9

<u>Silicon Image, Inc. v. Analogix Semiconductor, Inc.</u>,
    Case No. C-07-0635 JCS,
    2007 WL 1455903 (N.D. Cal.  May 16, 2007)......................................15-16

<u>S.O.S., Inc. v. Payday, Inc.</u>,
    886 F.2d 1081 (9th Cir. 1989) .................................................................... 22

<u>Spates v. Dameron Hospital Association</u>,
    114 Cal. App. 4th 208 (2003) ....................................................................... 9

<u>Thrifty-Telegraph, Inc. v. Bezenek</u>,
    46 Cal. App. 4th 1559 (1996) ....................................................................... 8

<u>Worth v. University Pictures, Inc.</u>,
    5 F. Supp. 2d 816 (C.D. Cal. 1997) .....................................................3, 4-5

<u>Xum Speegle, Inc. v. Fields</u>,
    216 Cal. App. 2d 546 (1963) ....................................................................... 9

## <u>STATUTES</u>

17 U.S.C. § 102(a).............................................................................................. 6

Cal. Civ. Code § 336 ......................................................................................... 9

**MISCELLANEOUS**

House Report No. 94-1476 (1976), reprinted in 1976 U.S.C.C.A.N. 5659............................. 6

Ninth Circuit Model Civil Jury Instructions, Civil No. 17.5, Comment .............................. 23

5, William F. Patry, Patry on Copyright § 18:21 (2008) ........................................... 4

## PRELIMINARY STATEMENT

Pursuant to this Court's Orders of September 2 and December 3, 2008, the MGA Parties renew their motions seeking a partial judgment as a matter of law as to Mattel's state law claims for aiding and abetting breach of fiduciary duty and the duty of loyalty, intentional interference with contractual relations, conversion, and unfair competition, and its federal copyright claim for infringement beyond the first generation dolls.  For a variety of reasons, set forth in the MGA Parties Phase 1a and Phase 1b JMOLs previously filed with the Court, these claims are legally flawed and factually unsupported.

Mattel's aiding and abetting claims and intentional interference claims are preempted by both the Copyright Act and the California Uniform Trade Secrets Act ("CUTSA").  This Court has already found preemption of the intentional interference claims to the extent they are based on Mattel's rights to Bratz, and applying preemption to each of Mattel's aiding and abetting claims merely brings those claims in line with the Court's prior rulings. Barring Mattel's attempt to recover what are essentially copyright damages on its state law claims is necessary to give the preemption rulings meaning.  If the jury's award of Bratz profits is permitted to stand, Mattel will succeed in doing exactly what the Copyright Act seeks to prevent: using common law claims to expand the scope of copyright protection and the remedies for copyright infringement.  Indeed, at trial, Mattel's lawyers attempted to do precisely that, arguing that the apportionment limitations built into the Copyright Act did not apply to the state law claims, even though those claims sought exactly the same relief and challenged exactly the same misconduct, *i.e.*, use of Mattel's intellectual property.  Nor is this an idle notion as the jury applied the apportionment analysis in the Copyright claim and awarded a third of what it did on the state law claims.  (See Section I, infra.)

Even absent preemption, the damages award is largely untenable.  Mattel's damages for its aiding and abetting claims should be limited to Bryant's profits from Bratz, not MGA's or Larian's.  Mattel did not present any evidence of Bryant's Bratz profits on which the jury could have based an award.  Mattel likewise failed to present evidence to support an award of damages for conversion, which are limited to the fair market value of Bryant's

1

1   drawings at the time they were converted.  When preemption is added to this calculation,

2   none of the jury's damages awards for the state law claims survive.  (See Section II, infra.)

3        Mattel failed to meet its evidentiary burden on liability as well as damages.  In

4   particular, Mattel failed to show that MGA or Larian had actual knowledge of either

5   Bryant's fiduciary duty to Mattel or his breach thereof.  Without actual knowledge, MGA

6   and Larian cannot be found liable for aiding and abetting that breach.  (See Section III,

7   infra.)  Likewise, Mattel failed to present any evidence which would support an unfair

8   competition claim against MGA Hong Kong, and thus – as Mattel conceded in refusing to

9   oppose MGA's Phase 1a JMOL on this issue – Mattel's unfair competition claim against

10  MGA Hong Kong fails.  (See Section IV, infra.)

11       Finally, the MGA Parties are entitled to a judgment as a matter of law that (1) Mattel

12  may not base any of its claims on its "ownership" of the name "Bratz" under California

13  contract law, (2) Mattel did not prove copyright infringement beyond the first generation of

14  Bratz dolls, and (3) Bryant is not the author of preliminary sculpt marked Trial Exhibit

15  1136A (See Sections V – VII, infra.)

16                                      **ARGUMENT**

17  **I.   PREEMPTION BARS MATTEL'S STATE LAW CLAIMS**

18       **A.   Mattel's Aiding And Abetting Breaches Of Fiduciary Duty And Duty
                Of Loyalty Claims Are Preempted By The Copyright Act To The**

19              **Extent They Are Based On Mattel's Purported Rights To Bratz**

20       In granting the MGA Parties' motion for partial summary judgment, this Court held

21  that Mattel's intentional interference and unfair competition claims are preempted by the

22  Copyright Act "to the extent that [they are] based on Mattel's rights to Bratz."  (4/25/08

23  Order (Dkt 3286) at 2, 4.)  As the MGA Parties argued in their Phase 1a JMOL, the same

24  restriction logically applies to Mattel's claims for aiding and abetting breach of fiduciary

25  duty and breach of duty of loyalty.  Mattel should not be permitted to use these claims to

26  replicate a copyright claim and seek recovery based on any rights to Bratz.

27       State law claims are preempted to the extent that "(1) the work at issue comes within

28  the subject matter of copyright, and (2) the state law rights are 'equivalent to rights within

2

the general scope of copyright.'" (4/25/08 Order at 2 (quoting <u>Del Madera Props. v. Rhodes & Gardner, Inc.</u>, 820 F.2d 973, 977 (9th Cir. 1987), <u>overruled on other grounds</u>, <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517 (1994)).)   The first prong of this test is met to the extent that Mattel's claims are premised upon "Mattel's deprivation of rights to intellectual property." (<u>Id.</u>)  This intellectual property includes not just copyrightable material, but also any ideas – like the ideas for the Bratz name and characters – which do not rise to the level of copyrightability.  <u>See, e.g.</u>, <u>Entous v. Viacom Int'l. Inc.</u>, 151 F. Supp. 2d 1150, 1159 (C.D. Cal. 2001) ("While 'ideas' do not enjoy copyright protection, courts have consistently held that they fall within the 'subject matter of copyright' for the purposes of preemption analysis.").  As for the second prong, the Ninth Circuit in <u>Del Madera</u> explained that "[t]o survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights" and "must have an 'extra element' which changes the nature of the action." 820 F.2d at 977.  A state law claim that has an additional element that effects only the scope of its protection – creating liability only where there is intent, for example – is still preempted.  <u>See, e.g.</u>, <u>Worth v. Univ. Pictures, Inc.</u>, 5 F. Supp. 2d 816, 822 (C.D. Cal. 1997) (claim preempted despite need to allege "intentional acts by Defendant that were designed to disrupt the business relationship with the third party").

   <u>Del Madera</u> is directly on point – the plaintiffs brought an unfair competition claim based upon a third party's breach of fiduciary duty and the defendants' role in that breach – a claim that is indistinguishable from the unfair competition and fiduciary duty claims asserted by Mattel.  820 F.2d at 977.  The plaintiffs asserted that their former joint venturer had breached a fiduciary duty by absconding with certain intellectual property and giving it to the defendants.  <u>Id.</u> at 975, 977.  The plaintiffs claimed that the breach of fiduciary duty, and the defendants' inducement thereof, provided the necessary "extra element" to save their claim.  <u>Id.</u> at 977.  The Ninth Circuit rejected plaintiff's argument, finding that neither the breach nor the inducement constituted an extra element under the circumstances:

   This argument … does not add any "extra element" which changes the nature of the action.  <u>The argument is constructed upon the premise that the documents and</u>

**1**  information McCart furnished to the defendants belonged to Del Madera and

**2**  were misappropriated by the defendants.   Del Madera's ownership of this

**3**  material, and the alleged misappropriation by the defendants, are part and parcel

**4**  of the copyright claim.

**5**  Id. (emphasis added).

**6**  Mattel's claims have likewise been constructed on the premise that Mattel owns the

**7**  rights to Bratz and that Bryant's assignment of those rights to MGA and Larian was a

**8**  breach of his duties to Mattel.   (See, e.g., Tr. 5001:24-5002:3 ([Mattel Phase 1a closing

**9**  argument:] "MGA recognized what it was doing and inducing a Mattel employee who

**10**  created Mattel designes [sic] to bring his designs to MGA.").)   This assertion is "part and

**11**  parcel" of its copyright claims.   Thus, like Mattel's intentional interference claim, Mattel's

**12**  aiding and abetting claims should be preempted to the extent that they are based on Mattel's

**13**  rights to Bratz.

**14**  **B.**   **Copyright Preemption Bars Recovery Of MGA's Bratz Profits For State Law Claims**

**15**

**16**  The "preemption clause forbids states to add sanctions for a wrongful act that is

**17**  identical to a violation of the [Copyright Act]."   Bucklew v. Hawkins, Ash, Baptie & Co.,

**18**  LLP., 329 F.3d 923, 934 (7th Cir. 2003) (finding preemption appropriate where "[t]he

**19**  compensatory damages" that a plaintiff seeks for state law claims "are identical to the

**20**  damages that it seeks for copyright infringement").   Thus, "a state claim for profits from use

**21**  of a copyrighted work or the reasonable value of the work cannot survive preemption."  5,

**22**  William F. Patry, Patry on Copyright § 18:21 (2008) ("Section 301(b)(1) expressly

**23**  preempts equivalent rights or remedies. Section 504 of the Copyright Act grants a

**24**  successful plaintiff the right to the defendant's infringing profits.").[1]   Here, Mattel has

**25**  ---

**25**  [1]   See also Johnson v. Arista Holding, Inc., 2006 WL 3511894, at *7 (S.D.N.Y. Dec. 5, 2006)

**26**  ("Common law causes of action are generally preempted when they seek damages that are identical to those sought for copyright infringement"); Worth v. Universal Pictures, Inc., 5 F. Supp. 2d 816,

**27**  822-23 (C.D. Cal. 1997) (finding conversion claim preempted based on damages sought, noting "Plaintiffs do not bring their conversion action for retrieval of these items, but rather for the profits

**28**  from the movie's reproduction and distribution. … The profits created from the movie 'Daylight'

*(cont'd)*

1  sought to recover copyright damages on its state law claims, but without the limitations on

2  recovery that copyright law requires. Mattel's attempt to expand its remedies under

3  copyright law is barred by preemption.

4      In the form of its state law claims, Mattel has sought (and received) the very same

5  damages it sought on its copyright claims – profits from Bratz (see, e.g., Tr. 5474:20-24

6  ("THE COURT: And just to be clear … you are seeking disgorgement of profits and

7  revenues with respect to the state tort claims as well as the copyright claims?  MR. PRICE:

8  Absolutely.")).   However, on its state law claims, these profits were awarded without

9  applying the apportionment analysis that reduced its recovery on its copyright claims and

10  excluded certain items from its copyright recovery.  (See Tr. 6312:23-6313:17 (Wagner

11  testimony that "under the claim for copyright, under certain circumstances, it may be

12  appropriate to apportion the profits earned by MGA on the sale of Bratz products between

13  the alleged infringing activity and other factors or other value that MGA brought to the sale

14  of that product, and likewise for Mr. Larian's distributions.  Q. What do you mean by

15  apportion?  A.  That instead of awarding 100 percent of the profits earned on Bratz, that you

16  divide that up between the copyright, the value generated by the copyright infringement,

17  versus other things.").)

18      Indeed, while Jury Instruction 42 permitted the jury to discount "portion[s] of the

19  profit … attributable to factors other than use of the copyrighted work" from MGA's and

20  Larian's profits, the jury instructions on Mattel's state law claims did not.  (See Phase 1B

21  Insts. 37-39, 42.)  Mattel ensured that this point was not lost on the jury, admonishing them

22  that in the instructions on the state law claims, "there's nothing about apportionment" and

23  urging them to award larger damages on the state law claims because they had no

24  limitations.  (Tr. 8247:17-19.)   As a result, while Mattel was awarded $10 million in

25  disgorgement on its copyright claims, it was awarded $30 million in disgorgement on each

26

27  _____
   *(cont'd from previous page)*
   are the damages sought from the movie's unauthorized reproduction and distribution and are
28  subsumed within federal copyright law.").

1  of its state law claims.  These added sanctions should be preempted. [2]

2      Significantly, the unapportioned profits awarded as damages for the state law claims

3  presumably included profits based on non-copyrightable intellectual property that Mattel

4  claims was misappropriated: the Bratz name and characters.  The name and the minimally

5  defined characters, while the subject matter of copyright law, do not display the requisite

6  creativity and originality to merit copyright protection and provide the basis for a claim for

7  copyright infringement.  See 17 U.S.C. § 102(a) (subject matter of copyright is "works of

8  authorship fixed in any tangible medium of expression" including "literary works" and

9  "pictorial, graphic, and sculptural works"); Bird v. Parsons, 289 F.3d 865, 881 (6th Cir.

10  2002) (a single word does not exhibit the minimal level of creativity necessary to warrant

11  copyright protection); Rice v. Fox Broad. Co., 330 F.3d 1170, 1175 (9th Cir. 2003)

12  ("characters are ordinarily not afforded copyright protection," unless they are "especially

13  distinctive" or comprise "the story being told" and "display[] consistent, widely identifiable

14  traits").  Nonetheless, as noted above, these ideas are subject to preemption.  The Copyright

15  Act's legislative history is unambiguous:

16      As long as a work fits within one of the general subject matter categories of

17      sections 102 and 103, the bill prevents the States from protecting it even if it fails

18      to achieve Federal statutory copyright because it is too minimal or lacking in

19      originality to qualify, or because it has fallen into the public domain.

20  H. Rep. No. 94-1476, at 131 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5747 (emphasis

21  added).  To use a different rule would be to allow the states to extend the bounds of

22  copyright protection and impose sanctions beyond those awarded under the Copyright Act –

23  precisely what the states are not permitted to do.  Thus, any damages awarded by the jury

24  based on the name and characters are preempted.[3]

25  _____

26  [2]      Mattel's contention that there is no limitation on its recovery for its state law claims relies on the fact there is no authority suggesting such an apportionment is proper.  (See Tr. 6313:18-20.)

27  However, the absence of any authority is not surprising, as any claim for which apportionment would be applicable would also necessarily be preempted.

28  [3]      Even if the Court decided not to find preemption of the aiding and abetting claims, if the

_(cont'd)_

## C.   **Mattel's State Law Claims Are Preempted By The California Uniform Trade Secrets Act**

The California Uniform Trade Secrets Act ("CUTSA") preempts all of Mattel's state law claims, as all involve conduct that could support a claim for misappropriation of trade secrets.  See Digital Envoy, Inc. v. Google, Inc., 370 F. Supp. 2d 1025, 1032-35 (N.D. Cal. 2005). [4] Mattel's claims rest on the jury's finding that Bryant improperly disclosed confidential proprietary information to MGA.[5] This Court found that Bryant had a fiduciary duty not to disclose confidential proprietary information to MGA while he was an employee of Mattel, and it was only this duty that was presented to the jury.  (5/21/08 Order (Dkt 3758) at 4 (finding that Bryant owed a fiduciary duty to Mattel arising out of Paragraph 1(a) of the Inventions Agreement to protect Mattel's confidential information); see also Phase 1a

_____

(cont'd from previous page)

Court's prior determination on summary judgment that the intentional interference claim is preempted is to have any meaning whatsoever, then Mattel must be barred from recovery under copyright-like theories for this claim.  (See 4/25/08 Order at 2.)

[4]   See also Convolve, Inc. v. Compaq Computer Corp., 2006 WL 839022, at *7 (S.D.N.Y. Mar. 31, 2006) (applying California law, finding preemption of "all common law claims that are based on the same conduct which could support a UTSA cause of action"); Enreach Tech., Inc. v. Embedded Internet Solutions, Inc., 403 F. Supp. 2d 968, 978 (N.D. Cal. 2005) (common law unfair competition claim based on allegations of trade secret misappropriation held precluded); Easton Sports, Inc. v. Warrior Lacrosse, Inc., 2005 WL 2234559, at *2 (E.D. Mich. Sept. 14, 2005) (CUTSA precludes claims for tortious interference with business relations "to the extent the tort claims rely upon the misappropriation of [plaintiff's alleged] trade secrets and confidential information"); Memry Corp. v. Ken'y Oil Tech., N.V., 2005 WL 1656877, at *1 (N.D. Cal. July 14, 2005) (CUTSA precludes common law unfair competition and unjust enrichment claims "to the extent that they allege that [defendant] misused confidential information"); Accuimage Diagnostics Corp. v. Terarecon, Inc., 260 F. Supp. 2d 941, 953-54 (N.D. Cal. 2003) (common law misappropriation claim precluded); Ernest Paper Prods. Inc. v. Mobil Chem. Co. Inc., 1997 WL 33483520, at *9 (C.D. Cal. Dec. 2, 1997) (finding preemption of all claims based on misappropriation of customer lists).

[5]   Mattel made clear throughout trial that they viewed the materials turned over by Bryant to MGA to be "confidential proprietary information.  See, e.g., Tr. at 6085:21-24 (in questioning Larian, characterizing the Bratz drawings as "Mattel's confidential information"); Tr. at 8119:9-14 (in Mattel's Phase 1b closing, "Carter Bryant delivered to Isaac Larian and to MGA Mattel's **confidential proprietary information**: The idea for a unique, ground-breaking line of dolls, the fundamental design for those dolls.  MGA used that information, Mattel's confidential information, to create the Bratz line, a Bratz brand, and profited in the hundreds of millions of dollars") (emphasis added); Tr. at 5418:5-10 (Mattel's Phase 1b opening, "We were talking about MGA profits and Mr. Larian's financial benefit.  What we'll be asking you to do in this phase is to say you can't benefit from the wrongdoing that you, the jurors, have found they committed in getting the Bratz concepts, the confidential information about Bratz, the Bratz characters, the Bratz drawings").

1   Jury Inst. (Dkt 4115) No. 28.)  Mattel's intentional interference claim survived summary

2   judgment only to the extent it was based on Bryant's breach of fiduciary duty.  (4/25/08

3   Order at 2.)   Mattel's unfair competition claim, in turn, survived summary judgment to the

4   extent it was based on intentional interference.  (Id. at 3-4, 7.)  Mattel's duty of loyalty

5   claim was not explicitly based on the disclosure of proprietary information, just as it was

6   not explicitly based on the subject matter of copyright.   However, as discussed above,

7   Mattel's approach to both liability and damages demonstrated that it viewed the duty of

8   loyalty claim as arising from the very same wrongdoing as each of its other claims.[6]

9       Because all of these state law claims turned on the disclosure of confidential

10  proprietary information, they are preempted by CUTSA.

11  ## II.   MATTEL DID NOT PROVE DAMAGES FOR ITS STATE LAW CLAIMS

12      Mattel must prove damages as an element of each of its state law claims.  See

13  Carpenter Found. v. Oakes, 26 Cal. App. 3d 784, 799-800 (1972) ("It is elementary that a

14  party claiming damage must prove that he has suffered damage and prove the elements

15  thereof with reasonable certainty."); Thrifty-Tel, Inc. v. Bezenek, 46 Cal. App. 4th 1559,

16  1570 (1996) (trial court erred in not requiring proof of actual damages).  As discussed above,

17  the damages theory Mattel used – disgorgement of Bratz profits – is subject to preemption.

18  Mattel's damages theory is flawed for other reasons as well.

19      With respect to Mattel's aiding and abetting claims, even if disgorgement of Bratz

20  profits were not preempted, it is Bryant's profits from Bratz, not Larian's or MGA's, that

21  would be the appropriate measure.  It is well-established that the aiding and abetting party

22  may be held jointly liable with the fiduciary for the fiduciary's profits, not the abettor's own

23  profits.  See People v. Bestline Prods., Inc., 61 Cal. App. 3d 879, 919 (1976) ("One who

24  _____

25  [6]   See Tr. 6286:15-6287:21 ("Q.  And you're aware that determinations have been made about aiding and abetting breach of duty of loyalty, aiding and abetting breach of fiduciary duty,

26  conversion, and intentional interference with contract.  You're aware of that?  A.  Yes. … [Q.]  What conclusion have you reached about the benefit to which Mattel is entitled to recover on these initial

27  claims that we're going to be speaking about?  A.  I have determined that as far as MGA is concerned, MGA has earned profits before tax of $777.9 million between 2000 and June 30, 2008

28  in their sale of Bratz products.").

knowingly aids and abets a fiduciary to make secret profits may be held liable jointly with the fiduciary for such secret profits"); <u>Rosenthal v. Gould</u>, 273 Cal. App. 2d 239, 243 (1969) ("it is equally clear that their liability is co-extensive with Gould's if, as determined by the trier of the fact, they conspired with Gould and aided and abetted him in the breach of his fiduciary obligations"); <u>Anderson v. Thacher</u>, 76 Cal. App. 2d 50, 72 (1946) ("And where, after the violation of a fiduciary obligation, an amount is found to be due from the agent, judgment for the same amount may also be rendered against those proven to have fraudulently aided in the attempt of the fiduciary to obtain secret profits, although they themselves are not fiduciaries, and even though they receive no share of the profits").[7] Mattel offered no evidence of Bryant's profits.  Thus, the jury awarded the same $30 million in Bratz profits that it awarded on Mattel's intentional interference claim.

Likewise, with respect to its conversion claim, Mattel was obliged to prove: 1) the fair market value of the items converted as of the time that they were converted, and 2) the expenses it incurred in attempting to recover the property.  <u>See</u> Cal. Civ. Code §3336; <u>Spates v. Dameron Hosp. Assn.</u>, 114 Cal. App. 4th 208, 221 (2003); <u>Melchior v. New Line Prods., Inc.</u>, 106 Cal. App. 4th 779, 791-94 (2003); <u>Lueter v. Cal.</u>, 94 Cal. App. 4th 1285, 1302 (2002).[8]  Pursuant to this Court's order, Mattel's claim is limited to the value of the

---

[7]   Indeed, despite Mattel's efforts to support its jury instruction on damages for aiding and abetting, Mattel failed to point to a single case authorizing disgorgement of the aider/abettor's profits connected to a fiduciary's breach of duty.  (<u>See</u> Mattel's 3d Am. Prop. Jury Inst. – Disgorgement of Profits and Objection thereto (Docket 4163) at 129-137) (citing <u>County of San Bernardino v. Walsh</u>, 158 Cal. App. 4th 533, 537 (2007) (awarding damages in the amount of the benefit conferred upon fiduciary and actual damages suffered by County); <u>Neilson v. Union Bank of Cal., N.A.</u>, 290 F. Supp. 2d 1101, 1127-29 (C.D. Cal. 2003) (making no reference to any profits by defendants, denying defendants' motion to dismiss and explaining that personal financial gain was not a prerequisite to liability); <u>Heckmann v. Ahmanson</u>, 168 Cal. App. 3d 119, 123 (1985) (addressing direct liability, not aiding and abetting); <u>Xum Speegle, Inc. v. Fields</u>, 216 Cal. App. 2d 546, 551-52 (1963) (addressing direct liability, not aiding and abetting); <u>Adams v. Herman</u>, 106 Cal. App. 2d 92 (1951) (addressing direct liability, not aiding and abetting); <u>Eckard Brandes, Inc. v. Riley</u>, 338 F.3d 1082, 1085 (9th Cir. 2003) (addressing direct liability, not aiding and abetting)).)

[8]   Mattel's counsel conceded that its conversion claim was subject to these limitations and could not be established through pursuit of defendants' profits.  (Tr. 7476:14-19 ("MR. PROCTOR: Thank you, Judge. Alternative methods doesn't fit the case.  We have one damages theory as to the state law claims, as to the aiding and abetting claim, as to the intentional interference claim. <u>Conversion permits a different remedy.</u>  So that's a different claim, but there's going to be a *(cont'd)*

9

drawings themselves as pieces of art, and Mattel is precluded from seeking recovery for any value that exists from the exploitation of the rights to these drawings (i.e., copyright-like theories of recovery).  (See 4/25/08 Order at 2 accord Phase 1b Jury Inst. (Dkt 4267) No. 40 (permissible damages on conversion are the fair market value of the item converted plus seven percent interest).)   Notwithstanding these limitations, Mattel did not offer any evidence of the value of the converted drawings at the time of conversion or the expenses it incurred in seeking to recover them.  The jury was left to its own devices in determining the appropriate damages, awarding $31,500 "plus 7% interest calculated from the date Mattel's property was converted."  (See Phase 1b Verdict Form (Dkt 4279) No. 4.)

In light of Mattel's failure to present any evidence in support of permissible damages, Mattel's state law claims should be dismissed.  Moore v. Local Union 569 of Int'l B'hd. of Elec. Workers, 989 F.2d 1534, 1542 (9th Cir. 1993) (affirming directed verdict in favor of defendant where plaintiff did not prove damages); Rickards v. Canine Eye Registration Found., Inc., 704 F.2d 1449, 1457 (9th Cir. 1983) (same).[9]

## III.   MATTEL FAILED TO PROVE THAT MGA OR LARIAN HAD ACTUAL KNOWLEDGE OF BRYANT'S FIDUCIARY DUTY OR BREACH THEREOF

To establish its claims for aiding and abetting Bryant's breach of fiduciary duty, Mattel was required to introduce testimony and evidence demonstrating, inter alia, Larian and MGA's "actual knowledge" of the specific wrong they substantially assisted Bryant in committing. MJT Sec., LLC v. Toronto-Dominion Bank, 2007 WL 1725421, at **7-8  (N.D. Cal. June 14, 2007); Neilson, 290 F. Supp. 2d at 1119-1120 (to prevail on an aiding and abetting claim under California law, a plaintiff must show "actual knowledge of the primary

_____

*(cont'd from previous page)*
different damages instruction on that claim.") (emphasis added).)

[9]    Mattel's past assertion that harm was found as a necessary component of liability does not save its claims.  (Mattel Opp'n to MGA Phase 1b JMOL (Dkt 4269) at 1-2.)  Absent a showing of the **damages** arising as a consequence of the specific harm which underlies its claim, Mattel is entitled to nominal damages at most.  Avina v. Spurlock, 28 Cal. App. 3d 1086, 1089 (1972) ("The rule rests upon the elemental concept that an award of damages, as in other findings, must rest upon substantial legal evidence; to award other than a token or trifling sum in the absence of such evidence is a judgment not supported by the evidence.").  However, Mattel resisted an instruction including any reference to nominal damages and so dismissal is the only option remaining.

violation") (citing, inter alia, Gerard v. Ross, 204 Cal. App. 3d 968, 983 (1988) ("A defendant can be held liable as a cotortfeasor on the basis of acting in concert only if he or she knew that a tort had been, or was to be, committed, and acted with the intent of facilitating the commission of that tort"); Resolution Trust Corp. v. Rowe, 1993 WL 183512, * 5 (N.D. Cal. Feb. 8, 1993) ("Under California law, actual knowledge and intent are required to impose aiding and abetting liability") (citing Gerard, 204 Cal. App. 3d at 983); Hashimoto v. Clark, 264 B.R. 585, 598 (D. Ariz. 2001) (under California law, "[t]he requisite degree of knowledge for an aiding and abetting claim is actual knowledge. This means Trustee must come forward with evidence to show that Safrabank knew Clark was breaching a duty owed Sheffield").)[10]

Ignoring the numerous cases requiring "actual knowledge", Mattel countered in its opposition to the MGA Parties' Phase 1A JMOL that "[w]illful blindness is sufficient." (Mattel Phase 1A JMOL Opp'n (Dkt 4092) at 4.)  At the jury charging conference, MGA pointed out that its cases made the actual knowledge standard clear, and that Mattel could not point to any authority in support of its position.  (7/7/08 PM Tr. 60:14-20.)  In response, Mattel was forced to admit that it could find no cases equating willful blindness with actual knowledge under California law in the context of Mattel's state law claims and invited the Court to "step into the breach."  (7/7/08 PM Tr. 62:10-18.)  But counsel for MGA offered a more rationale explanation for the dearth of authority: "[T]he reason that there aren't any California cases addressing this is I think that actual knowledge on its face coupled with

---

[10]   Here, the specific wrong is Bryant's breach of his fiduciary duty to Mattel.  This Court found that Bryant owed a fiduciary duty to Mattel arising out of Paragraph 1(a) of the Inventions Agreement to protect Mattel's confidential information.  (5/21/08 Order at 4.)  According to the Court's ruling, a fiduciary duty exists "where a confidence is reposed by one person in the integrity of another, and … the party in whom the confidence is reposed … voluntarily accepts or assumes to accept the confidence." (4/25/08 Order at 5.) Applying this principle, this Court held that Paragraph 1(a) of the Inventions Agreement contained both crucial elements: 1) a confidence (the Proprietary Information), and 2) voluntary acceptance thereof (in the words "I accept the position of trust").  (Id.; 5/21/08 Order at 3-4.)  Thus, to have knowledge of the specific wrong, MGA and Larian must have known that Bryant had been entrusted with confidential information and had agreed under the terms of the Inventions Agreement to accept a fiduciary duty to keep it confidential.

scienter leaves no room for willful blindness. And the cases that we cited to your Honor make it clear. It's true recklessness is, I guess, slightly below willful blindness, but it is not actual knowledge. It is a basis to impute actual knowledge." (7/7/08 PM Tr. 62:20-63:1; see also 7/7/08 PM Tr. 60:24-61:6 ("MR. RUSSELL: But it requires scienter, which requires real knowledge. We're not talking about imputed knowledge. We're not talking about constructive knowledge. And that's what willful blindness is, it's a substitute for actual knowledge. Since it's their case and their burden, it only seems reasonable that that we shouldn't allow them to dispense what we think is a critical element. THE COURT:  That's a good point.").

In ruling on Jury Instruction No. 25, the Court rejected Mattel's willful blindness request and, while refusing to insert the word "actual," stated that "I'm not giving the willful blindness that Mattel has asked" but that the inclusion of "'[k]new' [in the jury instruction] captures" the actual knowledge requirement. (Tr. 4678:5-8.) Mattel thus needed to, but did not, show the jury evidence of actual knowledge on the part of Larian and MGA.

In its Opposition to the MGA 1a JMOL, Mattel outlined evidence that Larian and MGA "knew" of Bryant's contractual obligations because "toy industry practice" dictated employees sign "inventions and confidentiality agreements"[11] – a policy also followed by MGA – and that "Paula Garcia herself signed an Inventions Agreement with Mattel and knew that all Mattel employees were required to sign such agreements" and, finally, that

---

[11]    This evidence is flatly contradicted by Isaac Larian, who testified that there is "no such standard" in the toy industry and the practice of one's employer owning an employee's ideas varied from company to company; indeed, that he could name "many companies" that did not require their employees to assign their ideas to their employers.  (See Tr. 1628: 17-1629:8 ("Q. So having been in the toy company business for 13 years at this time, you didn't have an expectation that your competitor would have in a contract, such as the one you have  with your employees, where you tell them that if you come up with a design that relates to my business, it belongs to me?  A.   They could have.  But you said it's a standard.  I know many companies.  I can name many companies that don't have it.").)   Mattel did not pursue the subject further.   Crucially, although Mattel suggested that the practice of having employees contract that their ideas belonged to their employers was a standard industry practice, Mattel offered no evidence that having employees contractually agree to undertake a fiduciary duty was also industry standard.  In fact, as the MGA Parties have repeatedly asserted, if allowed to stand, the fiduciary duty imposed here will be the first of its kind as California courts have heretofore rejected imposition of a fiduciary duty on a low-level employee to his or her employer.

1   Bryant informed MGA that he had an Inventions Agreement with Mattel (but never actually

2   showed that contract to MGA).  (Mattel 1a JMOL Opp'n at 5.)

3       In fact, the jury heard undisputed evidence that MGA and Larian did not see the

4   Bryant agreement with Mattel, nor did they have any knowledge of the provisions of

5   Mattel's agreement with Bryant.  (See Proctor Decl. ISO Mattel 1a JMOL Opp'n, Ex. 17

6   (letter from Bryant to MGA counsel noting his inability to obtain a copy of his contract or

7   forward it to MGA); see also Tr. 1628: 23-25 ("Q.  So, for example, you thought that Mattel

8   wouldn't have such an agreement with its employees? A. I have no idea what Mattel had or

9   not.  I wouldn't know."); 1629:23-24 ("I had no expectation one way or the other. I didn't

10  know what Mattel had or not had at the time."); Tr. 2165:2-4 ("Q. Did you even know what

11  the terms of Carter Bryant's contract was at Mattel?  A. I did not."); accord Tr. 1059:14-20

12  (Maurus testimony that she has "no idea" of the provisions in Carter Bryant's contract with

13  Mattel).)[12]  The jury never heard any evidence that MGA and Larian knew what Bryant's

14  contractual obligations to Mattel were; in fact, the opposite is true.

15      Undaunted, based on this "knowledge" – that Bryant had a contract with Mattel and

16  Paula Garcia "knew" what her Mattel contract said – Mattel insists that the MGA Parties

17  actually knew Bryant had fiduciary duties to Mattel and that Bryant's conduct breached

18  such duties.  (Id.)   Mattel's evidence does not support this logical leap.  As neither Larian

19  nor anyone at MGA ever saw Bryant's contract before this action commenced, and that

---

[12]     The MGA Parties recognize that this Court rejected their contention that Mattel need show MGA and Larian actually knew the "material terms" of that agreement (Tr. 4678:10-14; 7/7/08 Tr. 55:23-56:25) but that rejection was in the context of the intentional interference instruction, where the court determined, over MGA's objection, that "if you know that someone has a contract, even if you don't know any of the actual terms, and you're intending to interfere in that contract, … that's enough" (7/7/08 Tr. 56:11-15).  The MGA Parties respectfully submit that where, as here, the law requires "actual knowledge" of a specific contractual duty, not just the existence of a contract, Mattel must provide the jury with evidence that MGA and Larian actually knew the terms of Bryant's contract with Mattel. In drawing this distinction, however, the MGA Parties do not concede their objection to the Court's rejection of the MGA Parties' argument that Mattel must show knowledge of the material terms of Bryant's Mattel agreement to prove MGA and Larian intentionally interfered with that contract; MGA Parties continue to preserve that issue for appeal. This is particularly true in light of the Court's finding that the intentional interference claim survived summary judgment only to the extent it was based upon Bryant's breach of fiduciary duty. (4/25/08 Order at 2.)

1    contract is the <u>sole</u> basis on which to find the existence of a fiduciary duty, and as Mattel

2    offered no evidence whatsoever to show that Ms. Garcia's contract at Mattel was the same

3    or substantially the same as Bryant's Inventions Agreement (and, pre-trial motions proved

4    that Mattel's forms of its Inventions Agreement varied over time), Mattel had to show that

5    someone who saw Bryant's contract actually disclosed the contractual provision imposing a

6    fiduciary duty on Bryant to someone at MGA.  That never occurred.

7         Reviewing Mattel's evidence makes clear that there is no basis to find <u>actual</u>

8    knowledge, particularly given Mattel's novel contractual imposition of a fiduciary duty –

9    something that Mattel offered no evidence to suggest was followed by anyone else in the

10   toy industry. Mattel's evidence in its Opposition to the MGA 1a JMOL hinges on the

11   testimony of MGA's Paula Garcia, formerly a Mattel employee.  But not only was Garcia

12   unable to recall any of the details of her reading and signing her agreement with Mattel in

13   1997, only its "gist" (Tr. 541:23-542:10), the jury heard only Garcia's understanding of

14   Mattel's ownership of employee ideas and the duty of loyalty Garcia owed Mattel not to

15   work for competitors, <u>not</u> any contractually imposed fiduciary duty to protect Mattel's

16   confidential information. (<u>See, e.g.</u>, Tr. 544:8-13 ("Q. It was your understanding that other

17   Mattel employees had to sign this same type of agreement, saying that if they invented

18   something while at Mattel, it belonged to Mattel and they weren't supposed to work for

19   competitors while they were being paid for Mattel.  A. Yes.")  Mattel made no effort to

20   explore Garcia's understanding of the breadth of her duties to Mattel under the agreement –

21   and thus Mattel failed to show the jury that Garcia "knew" she or any Mattel employees

22   owed a fiduciary duty to Mattel.[13]  Moreover, Mattel offered no evidence to prove that

23

24

25   [13]    Mattel likewise failed to introduce evidence that other Mattel employees understood they

26   owed a fiduciary duty to preserve Mattel's confidences.  The Ivy Ross testimony Mattel cites also only goes to issues of ownership of ideas, not whether she owed Mattel a duty to protect those

27   ideas as confidential—and doesn't address what duties <u>Bryant</u> owed at all.  (<u>See</u> Tr. 298:11-25 ("Q. And what was it that you understood you were agreeing to? A. That while I was employed by

28   Mattel, any of the ideas… anything that was within Mattel's range, that they owned that idea.").)

1  Garcia's contract was the same with respect to the imposition of a fiduciary duty and that

2  Ms. Garcia would have reason to know that the Inventions Agreement had not changed.

3  Unable to demonstrate that Mattel's employees understood they owed a fiduciary

4  duty to Mattel, Mattel obfuscated the issue at trial by focusing on MGA's own employee

5  contracts. Mattel relies on Larian's testimony that he required his employees to sign a

6  confidentiality and inventions agreement "for them to keep things confidential" (Tr.

7  1624:20-25). But the jury heard no testimony that MGA employees understood they owed a

8  fiduciary duty to preserve the confidentiality of her employer's information. (See Tr. 546:1-

9  5 ("Q. And you understood that basically this was saying the same thing that your Mattel

10  agreement said, which is that if you invent something while you're at MGA that pertains to

11  MGA's business, that would belong to MGA; correct? A. Yes.") (Garcia); Tr. 1024:15- 21

12  ("Q. And what was your understanding of what those inventions agreements meant?...

13  [Maurus]: It meant that anything we developed or created while we worked at MGA

14  belonged to MGA."). Indeed, Mattel did not establish that MGA's employees even owe a

15  fiduciary duty at all, such that there would be no reason for MGA to suspect that a

16  competitor imposed a higher duty on their employees than MGA did on its own. Moreover,

17  the connection between employee understanding of MGA contracts and MGA's knowledge

18  of Bryant's contractual obligations to Mattel is tenuous at best, and in fairness, there really

19  is no connection at all.

20  Recognizing the extremely attenuated nature of its evidence, Mattel contended in its

21  Opposition to the MGA Parties Phase 1a JMOL that circumstantial evidence suffices to

22  establish actual knowledge (Mattel 1a JMOL Opp'n at 4, n.9), but bases this proposition

23  entirely on two inapposite non-aiding-and-abetting cases. The court in Silicon Image, Inc. v.

24  Analogix Semiconductor, Inc., 2007 WL 1455903, at *4 (N.D. Cal. May 16, 2007) was

25  determining whether allegations of knowledge of the existence of a licensing agreement,

26  assumed to be true, survived a motion to dismiss an intentional interference with contract

27  claim. In addition to its disparate procedural context, the Silicon Image court did not apply

28  the "actual knowledge" standard required of aiding and abetting claims, finding that the fact

that licensing agreements were common in the software industry meant "one could reasonably infer that [defendant] knew that sale of its product to Silicon Image customers violated" such agreements. Id. (emphasis added). Thus, even read broadly, the Silicon Image court's decision suggests that a competitor should know a licensing agreement exists, not the specific provisions of that agreement. Here, the question is not whether MGA and Larian "actually knew" Bryant had a contract with Mattel; instead, Mattel had to prove that MGA and Larian "actually knew" that in contracting with them for the sale of Bratz, Bryant was violating a contractual fiduciary duty to Mattel. Thus, Mattel's reliance on Silicon Image is unavailing.

Mattel's other authority, Gilbert v. City of Los Angeles, 249 Cal.App.2d 1006, 1010-11 (1967), is even less relevant. In Gilbert, the court addressed the knowledge requirement concerning "the existence of a dangerous and defective condition" in connection with an "assumption of risk" defense in a trip and fall case. The issue there was whether the plaintiff knew the sidewalk she tripped on was uneven, and the court, rejecting constructive notice as insufficient to show knowledge, overturned a verdict for the defendant where the lower court had erroneously allowed the jury to hear testimony that the plaintiff had refused to tell a police officer whether she already knew the condition of the sidewalk when she tripped over it. Id.

The Gilbert court noted that the jury did not need "to conclude as a matter of law that plaintiff knew of the defect and danger" but that "[i]t is sufficient if there are facts to support such a finding." Id. (The evidence that the Gilbert jury was considering included that "1) plaintiff had been over the area some half-dozen times previously; (2) plaintiff lived approximately one-half block from the area of the accident; (3) the area was well lighted, open and obvious; (4) there were no distractions at the time." Id. at 1010.) Setting aside the entirely different procedural context and sheer age of Gilbert, it is ludicrous to equate the evidence showing the Gilbert plaintiff was previously aware of a crack in the sidewalk before she fell over it with Mattel's "proof" of MGA Parties' actual knowledge of Bryant's contractual fiduciary duty; to extend the metaphor, at most all Mattel has shown here is that

16

MGA and Larian were pedestrians aware that sidewalks sometimes fall into disrepair – there is no evidence at all that they were familiar with this particular sidewalk (let alone the cracks). Thus, in addition to lacking any factual basis, Mattel's proposition that it can prove MGA's actual knowledge via "circumstantial evidence" is unsupported by any authority.

The decision in <u>Casey v. U.S. Bank National Ass'n,</u> 127 Cal. App. 4th 1138 (2005) is illuminating on this issue, despite being raised in the more forgiving context of a motion to dismiss.  There, affirming the demurrer below, the court explained that under California law an aiding and abetting plaintiff must show the "defendant's actual knowledge of the <u>specific breach of fiduciary duty for which it seeks to hold the defendant liable.</u>" <u>Id.</u> at 1152.  Thus, allegations that the defendant had knowledge of the fiduciary's "wrongful or illegal conduct" were insufficient to demonstrate "actual knowledge" of the specific breach of fiduciary duty and the aiding and abetting claim was properly dismissed.  <u>Id.</u> at 1152-53.  Indeed, the <u>Casey</u> court even rejected plaintiff's specific assertions that the aiding and abetting defendant banks "knew" the fiduciaries made unauthorized cash withdrawals and were laundering money in breach of their fiduciary duties to the plaintiff bankruptcy estate, where the complaint did not assert the banks had "knowledge those funds had been stolen from [the estate]." <u>Id.</u> at 1153.  Mattel's evidence does not meet the <u>Casey</u> standard.

Setting aside the fact that Mattel did not show that MGA and Larian "actually knew" Bryant owed to Mattel a fiduciary duty imposed under the Inventions Agreement, there is no evidence that MGA and Larian knew that Bryant was breaching such duties in assigning the Bratz concept to MGA.  Larian and Bryant both testified that Bryant assured MGA and Larian that "he did [the drawings] in 1998, when he was in Missouri, on nights and weekends." (Tr. 1675:20-1676:3; Tr. 2084:6-13; <u>see also</u> Tr. 2514:7-13 (Bryant testimony that Larian, on learning of his employment at Mattel "asked me maybe something about, you know, are these something that you came up with on your own and, you know, on your own time.  And you know, I told him that yes, they were.").  Larian testified repeatedly that he told Bryant that "if this was something that was done at Mattel, I was – I had no interest in it." (Tr. 1677:7-8; <u>accord</u> Tr. 2081:4-17.)  Moreover, Larian testified that he asked MGA

17

1   employee Victoria O'Connor to verify that Bryant had created the drawings in 1998, and

2   that he received such verification, and thus "there was no question that those belonged to

3   him and he could do whatever he wanted to do with them." (See Tr. 1682:1-24, 1685:1-13;

4   Tr. 1689:17-1690:10; 1692:6-14, 2081:4-17). Needless to say, Larian's assumption that

5   overly litigious Mattel would lay claim to a then-employee's ideas is not evidence that he

6   "actually knew" Mattel had rights to the Bratz concept. Moreover, the jury heard no

7   evidence Bryant ever discussed what he was working on at Mattel with MGA or showed

8   MGA any Mattel product lines. (See Tr. 2410:9-16 (Harris testimony).)

9       Thus, there is no evidence for a reasonable jury to conclude that MGA and Larian had

10  actual knowledge Bryant had a fiduciary duty or breached that duty to Mattel.

11  **IV.  MATTEL PRESENTED NO EVIDENCE THAT WOULD ALLOW A
        REASONABLE JURY TO CONCLUDE THAT MGA HK IS LIABLE**

12  **FOR UNFAIR COMPETITION**

13      Mattel's claim for unfair competition against MGA HK fails as the record is devoid

14  of any evidence that would allow a reasonable jury to find that MGA HK could be liable for

15  any alleged acts of unfair competition in this case. In the Final Pretrial Order, MGA HK is

16  listed among the defendants named in Mattel's unfair competition claim. (See 6/4/08 Final

17  Pre-Trial Conference Order at 11.) There are only two predicates remaining for the unfair

18  competition claim: intentional interference and commercial bribery. (Id. at 5.) MGA HK is

19  not a defendant on the interference claim (id. at 11) and there is no evidence that MGA HK

20  bribed Bryant, or even had contact with him. As such, MGA HK is entitled to judgment as

21  a matter of law on unfair competition. Mattel did not oppose MGA HK's motion on this

22  claim in Phase 1a. (See Mattel Opp'n to MGA 1a JMOL (Dkt 4092) at 5 n.15.)

23  **V.  MATTEL IS NOT ENTITLED TO BASE ANY CLAIMS ON ITS
        "OWNERSHIP" OF THE NAME "BRATZ"**

24

25      As Mattel has effectively conceded, the name "Bratz" is not subject to copyright

    protection. (See MGA Phase 1b JMOL at 8-9; Mattel Opp'n to MGA Phase 1b JMOL at 9-

26  10.) Absent such protection, Mattel cannot base its claims on its purported ownership of the

27  name "Bratz." In Phase 1a, the jury found that Bryant thought of the name "Bratz" while he

28

was employed by Mattel and thus Mattel claimed ownership of the name as a matter of contract under its Inventions Agreement with Bryant. (Phase 1a Verdict Form (Dkt 4125) No. 6.) In fact, that contract did <u>not</u> give Mattel any rights to the idea for the name. Moreover, without copyright protection, any contractual rights Mattel may have had cannot form the basis of any claim against anyone other than Bryant.[14]

Although this Court added the term "ideas" in its general description of the subject-matter covered by the Inventions Agreement, the Inventions Agreement itself never makes use of that term.  (TX 25 (Inventions Agreement); 4/25/08 Order at 5.)  Rather, the Inventions Agreement purports to have Bryant assign to Mattel, "my right, title and interest in [] inventions [conceived or reduced to practice by me], and all my rights, title and interest in any patents, copyrights, patent applications or copyright applications based thereon."  (<u>Id.</u> § 2(a).)  This language, on its face does not cover "names" or ideas leading to trademarks, only to copyrights (as to which a name cannot qualify) and patents (which has no bearing here). Applying a plain meaning interpretation to the term "Inventions" as defined in Paragraph 2(b) of the Inventions Agreement, a name does not constitute "discoveries, improvements, processes, developments, designs, know-how, [or] data computer programs and formulae, whether patentable or unpatentable." (<u>Id.</u>)  Indeed, in its analysis of the scope of the Inventions Agreement, the Court did not reference abstract, uncopyrightable ideas either.  Rather, the Court found that "**[a]ssuming copyrightability** and the resolution of certain (as yet unresolved) issues of timing of creation and/or alteration in Mattel's favor, **the original Bratz drawings** clearly fall within the scope of the Inventions Agreement." (<u>Id.</u> at 4 (emphasis added).)  As the idea for the name is not copyrightable, Mattel was not entitled to ownership of the name under the Inventions Agreement.[15]

---

[14]     As already discussed at length in the context of the motion for a constructive trust and as conceded by Mattel, the name was not subject to trademark protection until it was put into use by MGA – long after Bryant had left Mattel.  (12/3/08 Order (Dkt 4439) at 7.)
[15]     The MGA Parties dispute that any of the Bratz works are subject to the Inventions Agreement, as they and Bryant argued on summary judgment, but even assuming ownership of the drawings was awarded, the name Bratz clearly falls outside the scope of the Inventions Agreement.

**1**   Moreover, even if an idea like the name "Bratz" fell within the scope of the

**2**   Inventions Agreement, Mattel still is not entitled to bring claims against the MGA Parties

**3**   based on its "ownership" of the name.  While California contract law permits parties to base

**4**   contracts on the <u>disclosure</u> of ideas, those contracts do not create any <u>property right over the</u>

**5**   <u>underlying idea</u> with respect to third parties.  <u>Desny v. Wilder</u>, 46 Cal. 2d 715, 731-35

**6**   (1956); <u>Jonathan Browning Inc. v. Venetian Casino Resort</u>, 2007 WL 4532214, at *7-8

**7**   (N.D. Cal. Dec. 19, 2007); <u>Rokos v. Peck</u>, 182 Cal. App. 3d 604, 614 (1986); <u>Blaustein v.</u>

**8**   <u>Burton</u>, 9 Cal. App. 3d 161, 176-78 (1970); <u>Chandler v. Roach</u>, 156 Cal. App. 2d 435, 441

**9**   (1957). "[A] contract is 'effective only between the contracting parties; it does not withdraw

**10**   the idea from general circulation.'" <u>Browning</u>, 2007 WL 4532214, at *8 (quoting <u>Rokos</u>,

**11**   182 Cal. App. 3d at 614).

**12**   What this sort of contract provides are rights concerning the act of disclosure itself; it

**13**   does not convey any rights to the particular idea disclosed.  <u>Desny</u>, 46 Cal. 2d at 733 (noting

**14**   that "[e]ven though an idea is not property subject to exclusive ownership, its <u>disclosure</u>

**15**   may be of substantial benefit to the person to whom it is disclosed" (emphasis added)); <u>see</u>

**16**   <u>also</u> <u>Blaustein</u>, 9 Cal. App. 3d at 178. Thus, the general principle remains true: "Only in the

**17**   expression of a copyrighted work does any monopoly inhere; the theme, the plot, <u>the ideas</u>

**18**   <u>may always be freely borrowed</u>." <u>Desny</u>, 46 Cal. 2d at 732-33. "Unlike a copyright, a

**19**   contract creates no monopoly … **<u>Any person not a party to the contract is free to use the</u>**

**20**   **<u>idea without restriction.</u>**" <u>Chandler</u>, 156 Cal. App. 2d at 441 (emphasis added).

**21**   Because the MGA Parties were not parties to the contract between Bryant and Mattel,

**22**   their use of the idea for the name "Bratz" is not restrained by that contract.  As such, the

**23**   name cannot serve as a basis for Mattel's claims. Stated differently, Bryant's transfer of

**24**   rights to the name "Bratz" to MGA was not actionable under the Inventions Agreement

**25**   because that contract conveyed no rights over the name to Mattel to exclude others from

**26**   using it.  The only actionable right that Mattel had under the Inventions Agreement would

**27**   be for Bryant's failure to disclose the name to Mattel, but that claim would be preempted to

**28**

1  the extent it was predicated on a tort theory against third-parties (like MGA and Larian).[16]

2  And, even were it not preempted, all that such a claim could provide would be damages for

3  the failure to disclose, <u>not</u> ownership (by constructive trust or otherwise) over the

4  underlying intellectual property or idea.

## VI.  MATTEL DID NOT PROVE COPYRIGHT INFRINGEMENT BY LATER GENERATION BRATZ DOLLS, OTHER PRODUCT LINES, OR BRANDED MERCHANDISE

7      As the MGA Parties argued in their Phase 1b JMOL, Mattel failed to present any

8  evidence that would allow a reasonable jury to find infringement beyond the first generation

9  of Bratz dolls.  (<u>See</u> Phase 1b JMOL (Dkt 4264) at 9-11.)  And, as the MGA Parties argued

10  in their Opposition to Mattel's Motion for Permanent Injunction, the jury did not find any

11  infringement beyond the first generation.  (<u>See</u> P.I. Opp'n (Dkt 4348) at 19-26.)  The MGA

12  Parties maintain that their interpretation of the jury's findings is the correct one, and as such,

13  it is the MGA Parties' view that a renewed JMOL on this issue is unnecessary.  However,

14  the MGA Parties do not intend to waive any argument that the jury only found infringement

15  as to the first generation, nor that, as a matter of law, this was all they could have found

16  based on the evidence presented to them.  If this Court interprets the jury verdict differently,

17  the MGA Parties renew their request for judgment as a matter of law on this issue.

## VII.  BRYANT IS NOT AN AUTHOR OF THE 1136A PRELIMINARY SCULPT AS A MATTER OF LAW

20      Under the Ninth Circuit standards for authorship, Margaret Leahy, not Carter Bryant,

21  was the author of the preliminary Bratz sculpt (TX 1136A).   "[C]ontribution of

22  independently copyrightable material to a work intended to be an inseparable whole will <u>not</u>

23  suffice to establish authorship of a joint work."  <u>Aalmuhammed v. Lee</u>, 202 F.3d 1227,

24  1233 (9th Cir. 2000) (emphasis added).  An author is defined as the "person to whom the

25  work owes its origin and who superintended the whole work, the 'master mind.'"  <u>Id.</u>  "A

26  person who merely describes to an author what the commissioned work should do or look

---

[16]      As discussed above, to the extent Mattel attempts to base its claims on Bryant's <u>disclosure</u> of the name to MGA, its claims are simply trade secret claims and thus are preempted by CUTSA.

1   like is not a joint author for purposes of the Copyright Act." S.O.S., Inc. v. Payday, Inc.,

2   886 F.2d 1081, 1087 (9th Cir. 1989).  This is particularly true where the recipient of such

3   direction is not bound to accept it.  Aalmuhammed, 202 F.3d at 1235 ("absence of control is

4   strong evidence of the absence of co-authorship").  Leahy's testimony established that, in

5   creating her preliminary sculpt, she was the "master mind" who exercised control over the

6   sculpt, while Bryant's contribution amounted to no more than a general vision and a few

7   suggestions she was not bound to follow.  Thus, she, not Bryant, was its sole author.[17]

8   Although Bryant gave Leahy his "pitch book drawings," Leahy testified that she

9   "couldn't really use [the drawings] to come up with something in the three-dimensional

10  world."  (Tr. 4144:7-24.)  Because Bryant's "concept drawings were really basic and not

11  very practical" from a "sculpting standpoint," she "went more by the Steve Madden ad

12  because it … was a little easier to come up with something from."  (Tr. 4144:7-15.)  Leahy

13  testified Bryant in fact expressly ceded control over the creation of the sculpts to her, telling

14  her:  "Here's my idea.  Just take it and run with it.  Let me know when you've sculpted

15  something."  (Tr. 4131:7-10; see also Tr. 4130:13-18 ("Q.  What did Mr. Bryant ask you to

16

---

[17]     A finding as a matter of law on this issue would not undermine the jury's Phase 1a finding that Bryant "created" this sculpt "solely or jointly" during his period of employment with Mattel. During the Phase 1a trial, the Court repeatedly noted that the Phase 1a verdict would solely be directed to issues of timing of the creation of the Bryant works, and that all issues of copyright ownership of such works, as the basis for any infringement claims, were reserved for Phase 1b. During the Phase 1a trial, the Court repeatedly noted that the Phase 1a verdict would solely be directed to issues of timing, and that all issues of copyright ownership of such works, as the basis for any infringement claims, were reserved for Phase 1b.  (See, e.g., 7/7/08 Tr. 107:5-8 ("The issue for the jury is what was done and when … the Court will ultimately have the issue of ownership to decide based on findings in Phase 1-A and, if necessary, findings in Phase 1-B"); Tr. 4727:24 -28:8 ("All we're trying to decide in 1-A is what was conceived or reduced to practice during the particular time period.  And 1-B will decide whether or not these were – there was elements of originality or elements of copyrightability such that this was actually the ownership …  All we're deciding is the factual predicate of when these things came into existence") (emphasis added).)  Mattel concurred.  (7/7/08 Tr. 102:25-103:3.)  Consistent with this dichotomy between timing and ownership, the Court specifically conformed the verdict form to the language in Bryant's employment agreement in asking whether works at issue were "'conceived or reduced to practice' — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel."  (Phase 1a Verdict Form (Dkt 4125) No. 1 (emphasis added).)  The jury was not instructed on authorship as a matter of copyright law, and did not make any decision as to whether, under copyright law, Bryant was the sculpt's author or even a joint author.  All that they found is that he had some role in its creation, not that his role rose to the level of authorship.

1  do at that meeting, if anything?  A. Well, he came over, showed me his concept and showed

2  me the Steve Madden ad, and said this is the basic trend we're going for, and he asked me to

3  just come up with a model of what I thought it would be." (emphasis added).); 4146:20-24

4  ("Q.  By Mr. Nolan:  What instructions, if any, did Carter Bryant give you with respect to

5  why he was giving you this particular tear sheet?  A. Well, he didn't necessarily give me

6  any instructions. He just said, 'Here's some inspiration.'" (emphasis added)).)   Bryant

7  confirmed this account, noting that while he assumed she "tried" to incorporate his

8  suggestions, "I had told her, you know, 'I'm not a sculptor; here's the drawing, you know;

9  just, you know, put your own spin on it.'"  (Tr. 2566:21- 2567:7.)  Bryant did not supervise

10  Leahy's work on the sculpt, she did not ask for his guidance, he did not provide Ms. Leahy

11  with "any specifics," and he was not even present while she worked on the sculpt.  (Tr.

12  4136:12-21; 4148:16-25.)  Beyond providing the initial "vision," the only suggestion Bryant

13  made that Leahy could recall was to make the ankles thinner, but she chose not to follow

14  this suggestion.  (Tr. 4151:21-4152:5; 4159:8-18.)  Mattel offered no evidence whatsoever

15  to show that Bryant was even a joint author of the sculpt, much less that he was the sole

16  author.  As such, Bryant's contributions to the sculpt's creation do not rise to the level of

17  authorship.  Leahy, not Bryant, was its author.[18]

18

19

---

20  [18]      The MGA Parties respectfully submit that contrary to this Court's evidentiary ruling, the

21  issue of authorship was not waived.  To begin with, **it was Mattel's burden to prove ownership,
   not the MGA Parties' burden to prove the lack thereof.**  See Feist Pubs. v. Rural Tel. Serv. Co.,

22  499 U.S. 340, 361 (1991) (two elements that must be proved by the plaintiff to establish
   infringement are: "(1) ownership of a valid copyright, and (2) copying of constituent elements of

23  the work that are original."); see also Comment - Ninth Circuit Model Civil Jury Instructions –
   Civil No. 17.5 Copyright Infringement —Ownership Of Valid Copyright — Definition (17 U.S.C.

24  §§ 201–205) ("Under the Copyright Act, the party charging infringement must show ownership.
   See Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1144 (9th Cir. 2003)

25  ("Ownership of the copyright is ... always a threshold question.")" (emphasis added)).  Moreover,
   the MGA Parties requested a jury instruction on authorship early in Phase 1b, after the MGA

26  Parties were put on notice of Mattel's claim to the sculpt when Mattel sought a ruling on the timing
   of its creation on the Phase 1a verdict form.  (See MGA Prop. Disp. Phase 1b Jury Inst. (Dkt 4164)

27  at 39.)  As such, the issue of authorship should have been either decided by the Court as a matter of
   law in Phase 1b, as the MGA Parties now request, or submitted to the jury.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

For the foregoing reasons, the MGA Parties respectfully request that their Motion for Partial Judgment as a Matter of Law be granted in its entirety.

DATED:  December 22 , 2008          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  _____/s/ Thomas J. Nolan_____
                         Thomas J. Nolan
                  Attorneys for the MGA Parties

MGA Parties' Renewed Motion for Partial Judgment as a Matter of Law
Case No. CV 04-9049 SGL (RNBx)