

EX 1136-0003

M 0920552

EX 13900-0006

EXHIBIT __43__



EX 1136-0004

M 0920553

EX 13900-0007

EXHIBIT ___43___
PAGE ___243___



43
244

EX 1126-0005

M 0920554

EX 13900-0008

# EXHIBIT 44

1
2
3
4
5
6
7
8
9      UNITED STATES DISTRICT COURT
10      CENTRAL DISTRICT OF CALIFORNIA
11      EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **COURT'S FINAL PRE-TRIAL CONFERENCE ORDER FOR PHASE 1 TRIAL** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |

EXHIBIT ___44___

PAGE ___245___

07209/2474226.14

1    Following pretrial proceedings, pursuant to Federal Rule of Civil
2 Procedure 16 and Local Rule 16-1 et seq., and in accordance with the Court's
3 Scheduling Order entered February 22, 2007, IT IS ORDERED:

4

5                                    **I.**

6                                **PARTIES**

7    For purposes of this Phase 1 trial, the parties are:

8    (a)    Plaintiff and Counter-Defendant Mattel, Inc. ("Mattel");

9    (b)    Defendant and Counter-Defendant MGA Entertainment, Inc.
10 ("MGA");

11    (c)    Defendant and Counter-Defendant Isaac Larian;

12    (d)    Defendant and Counter-Defendant MGA Entertainment (HK)
13 Limited ("MGA HK").

14    Each of these parties has been served and has appeared.  For purposes
15 of this Phase 1 trial, and the claims and defenses to be tried therein, no party other
16 than those identified above has asserted a claim, been served, or asserted any
17 defense.  Because the Court has bifurcated these consolidated cases, the Court will
18 not at this point dismiss any other party, including any Doe defendants.

19    In addition, as a result of the confidential settlement between Mattel
20 and Carter Bryant, Carter Bryant is no longer a party to this case, although Carter
21 Bryant remains bound by all past Orders of this Court and will be bound by any
22 injunctive, declaratory or other non-monetary relief relating to Bratz that the Court
23 enters in the future against the MGA parties.

24    The pleadings that raise the issues in Phase 1 are:

25    (a)    Complaint filed by Mattel, Inc. (Case No. BC314398) on April
26 27, 2004 in the Superior Court of the State of California for the County of Los
27 Angeles (the "Bryant Case");

28

07209/2474226.14

1                                    Case No. CV 04-9049 SGL (RNBx)
                                     FINAL PRE TRIAL CONFERENCE ORDER

EXHIBIT _____ 44

PAGE    246

1   (b) Answer to Plaintiff's Unverified Complaint filed by Carter

2 Bryant on May 14, 2004;

3   (c) Defendant/Cross-Complainant Carter Bryant's Cross-Complaint

4 for (1) Unfair Competition; (2) Rescission; (3) Declaratory Relief; and (4) Fraud,

5 filed by Bryant on September 8, 2004 in the Superior Court of the State of

6 California for the County of Los Angeles;

7   (d) Notice to Federal Court of Removal of Civil Action from State

8 Court Pursuant to 28 U.S.C. Section 1332(a)(1) and 1331, filed by defendant Carter

9 Bryant on November 2, 2004.  That notice removed the case to federal court on

10 November 2, 2004, where it was assigned Case No. 04-9059;

11   (e) Stipulation Permitting MGA to Intervene as a Party to This

12 Action and Order, dated December 7, 2004, and MGA's Answer in Intervention;

13   (f) Complaint filed by MGA Entertainment, Inc. (Case No. CV 05-

14 2727 SGL (RNBx)) on April 13, 2005 in the District Court of the Central District of

15 California (the "MGA Case"), as limited by the Court's Order dated August 25,

16 2005, striking allegations regarding the Brawer litigation;

17   (g) Second Amended Answer and Counterclaims filed by Mattel,

18 Case No. CV 04-9059 SGL (RNBx) on July 12, 2007 in the District Court of the

19 Central District of California;

20   (h) Amended Answer and Affirmative Defenses of MGA

21 Entertainment Inc., MGA Entertainment (HK) Limited and MGAE de Mexico

22 S.R.L. de C.V. to Mattel, Inc.'s Second Amended Answer and Counterclaims filed

23 by defendants MGA, MGA HK, and MGA Mexico (collectively, the "MGA

24 Defendants") on September 19, 2007 in the District Court of the Central District of

25 California;

26   (i) Isaac Larian's Amended Answer and Affirmative Defenses to

27 Mattel, Inc.'s Second Amended Answer and Counterclaims filed by Larian on

28 November 8, 2007 in the District Court of the Central District of California.

07209/2474226.14

-2-

Case No. CV 04-9049 SGL (RNBx)
FINAL PRE TRIAL CONFERENCE ORDER

EXHIBIT ___44___

PAGE ___247___

1   By Order dated June 19, 2006, the Court consolidated the <u>Bryant</u> case
2   and the <u>MGA</u> case with <u>Bryant v. Mattel, Inc.</u>, Case No. 04-9049. The matter shall
3   hereafter be referred to as <u>Mattel, Inc., v. MGA Entertainment, Inc., et al.</u>, Case No.
4   04-9049-SGL(RNBx).

5   The MGA Parties may file a motion seeking a determination of good
6   faith settlement pursuant to CCP § 877.6. To the extent that Mattel continues to list
7   pleadings that address claims asserted by or against Bryant – and fail to exclude
8   them specifically from the list – the MGA Parties object to Mattel's list of pleadings.
9   Mattel's claims against the MGA parties have been modified by the terms of the
10  Court's Orders re the parties' motions for partial summary judgment dated April 25,
11  2008, May 22, 2008, May 27, 2008, and June 2, 2008.

12

13                                      **II.**

14          **ABANDONED CLAIMS, COUNTERCLAIMS AND DEFENSES**

15  The following claims, counter-claims, or defenses have been dismissed
16  or abandoned:

17  By Order dated July 17, 2006, the Court dismissed Defendant/Cross-
18  Complainant Carter Bryant's Cross-Complaint for (1) Unfair Competition; (2)
19  Rescission; (3) Declaratory Relief; and (4) Fraud; and Bryant's Complaint for
20  Declaratory Relief of Copyright Non-Infringement. Bryant was given leave to
21  amend his Complaint and Cross-Complaint, but elected not to do so and the
22  dismissal became final.

23  Bryant's Ninth Affirmative Defense: Failure of Contract was withdrawn
24  by Bryant, by stipulation on October 5, 2007;

25  Bryant's Tenth Affirmative Defense: Duress/Unconscionability was
26  withdrawn by Bryant, by stipulation on October 5, 2007;

27  Bryant's Eleventh Affirmative Defense: Alleged Duties Contrary to
28  Law was withdrawn by Bryant, by stipulation on October 5, 2007;

1          MGA Defendants' Sixteenth Affirmative Defense: Innocent Intent was

2  withdrawn by MGA Entertainment, Inc., by stipulation on September 5, 2007;

3          Larian's Sixteenth Affirmative Defense: Innocent Intent was

4  withdrawn by MGA Entertainment, Inc., by stipulation on September 5, 2007;

5          MGA Defendants' Ninth Affirmative Defense: Res Judicata was

6  withdrawn by MGA Entertainment, Inc., by stipulation on September 5, 2007;

7          Larian's Ninth Affirmative Defense: Res Judicata was withdrawn by

8  MGA Entertainment, Inc., by stipulation on September 5, 2007;

9          MGA Defendants' Twelfth Affirmative Defense: Lack of Ownership

10  was withdrawn by MGA Entertainment, Inc., by stipulation on September 5, 2007;

11          Unclean Hands Affirmative Defense was withdrawn with respect to

12  Phase 1 claims by the MGA Defendants by Notice on February 15, 2008;

13          Unclean Hands Affirmative Defense was limited by Carter Bryant as to

14  Phase 1 issues by letter dated February 27, 2008.

15          By Order dated April 25, 2008, the Court granted partial summary

16  judgment in favor of Mattel. In particular, the Court ruled that the Employee

17  Confidential Information and Inventions Agreement that Carter Bryant entered into

18  as a Mattel designer is a valid and enforceable contract. It further ruled that, under

19  the Inventions Agreement, Mattel owns "any Bratz-related 'inventions' (including

20  any designs, improvements, ideas, concepts and copyrightable subject matter)" that

21  Carter Bryant "created during the period of his employment with Mattel." The

22  Court found that it was irrelevant whether Bryant performed such work on Bratz

23  during his own time.

24          In its Order granting Mattel partial summary judgment, the Court

25  further ruled that Carter Bryant owed Mattel a duty of loyalty and that Bryant

26  "breached this duty by entering into a contract with Mattel's competitor, while still

27  employed by Mattel, to produce a line of fashion dolls to be marketed in direct

28

-4-

EXHIBIT _____ 44

PAGE _____ 249

1  competition with Mattel's products." The Court rejected defendants' claim that such
2  activities were mere "preparations to compete" with Mattel.

3         By virtue of its April 25, 2008, and May 21, 2008, Orders granting
4  Mattel partial summary judgment, the Court ruled that Carter Bryant owed a
5  fiduciary duty to Mattel, but held that there is a triable issue of fact as to Bryant's
6  breach of that duty.

7         Also by Order dated April 25, 2008, the Court granted partial summary
8  judgment in favor of Bryant and the MGA Defendants on Mattel's claims for (1)
9  tortious interference with contractual relations, but only "to the extent that it is based
10  on Mattel's rights to Bratz," such that it remains in the case "as to Mattel's claims for
11  breach of fiduciary duty" (Order at 2); (2) conversion, but only to the extent it is
12  based on conversion of ideas, such that it remains in the case "to the extent it seeks
13  the return of tangible things" (*id.* at 3); (3) common law unfair competition (*id.* at 7);
14  and (4) unjust enrichment (*id.*).

15         By virtue of its Orders dated April 25, 2008, May 22, 2008, and its
16  clarification on May 23, 2008, the Court further ruled that the MGA parties were
17  entitled to partial summary judgment on Mattel's statutory unfair competition
18  claims, except that Mattel's statutory unfair competition claim presented triable
19  issues of fact relating to "whether MGA tortiously interfered with Bryant and
20  Mattel's contractual relationship and whether MGA engaged in commercial
21  bribery."

22         In its orders regarding the statute of limitations affirmative defense,
23  dated May 27, 2008, and June 2, 2008, the Court made rulings regarding the accrual
24  dates of various claims asserted by Mattel. As to defendant MGA only, the Court
25  ruled that Mattel's state-law claims other than tortious interference with contractual
26  relations claim and the conversion claim accrued no earlier than July 18, 2003, and
27  no later than November 23, 2003, but that triable issues of fact precluded a
28  determination as to the exact accrual date.

1    As to defendants Isaac Larian and MGA HK, the Court ruled that these
2    state-law claims arose no earlier than the date of Carter Bryant's deposition,
3    November 4, 2004.

4    In these orders, regarding the tortious interference with contractual
5    relations claim and the conversion claim as to all defendants, the Court ruled that the
6    discovery rule was inapplicable to these claims, and that they were therefore time
7    barred unless Mattel establishes a period of fraudulent concealment of sufficient
8    duration.

9    Additionally, the Court ruled that the copyright claim arose no earlier
10   than November 23, 2003.

11   Finally, the Court ruled that the new claims asserted on November 20,
12   2006, the Court ruled that all claims (except the copyright claim, upon which the
13   Court found it unnecessary to rule) related back to the filing of Mattel's complaint
14   against Carter Bryant in April, 2004.

15   Finally, pursuant to the confidential settlement between Mattel and
16   Carter Bryant and pursuant to the Stipulation entered as part of that settlement, all
17   claims, counterclaims and defenses as between Mattel and Carter Bryant have been
18   dismissed, although Carter Bryant remains bound by all past Orders of this Court
19   and will be bound by any injunctive, declaratory or other non-monetary relief
20   relating to Bratz that the Court enters in the future against the MGA parties.

21
22
23                                  **III.**

24                      **JURISDICTION AND VENUE**

25   Federal jurisdiction and venue are invoked upon the following grounds:

26   This Court has diversity jurisdiction over the claims asserted in Mattel
27   v. Bryant pursuant to 28 U.S.C. § 1332, as determined by the Ninth Circuit in Mattel

28

                                                   Case No. CV 04-9049 SGL (RNBx)
                                                   FINAL PRE TRIAL CONFERENCE ORDER

EXHIBIT 44
PAGE 251

1   <u>v. Bryant, Inc.</u>, 446 F.3d 1011, 1013 (9th Cir. 2006). This Court has supplemental

2   jurisdiction over Mattel's state law claims in that case pursuant to 28 U.S.C. § 1367.

3          This Court has federal question jurisdiction over MGA's claims in

4   <u>MGA Entertainment, Inc. v. Mattel, Inc.</u> pursuant to 15 U.S.C. §§ 1116 and §1121,

5   28 U.S.C. §§ 1331, 1338(a), and supplemental subject matter jurisdiction over

6   MGA's state law claims pursuant to 28 U.S.C. § 1367.

7          This Court has federal question jurisdiction over Mattel's counterclaims

8   in <u>MGA Entertainment, Inc. v. Mattel, Inc.</u> pursuant to 28 U.S.C. §§ 1331, 1338(a),

9   17 U.S.C. §§ 101 et seq., and 18 U.S.C. § 1964(c). This court has supplemental

10   jurisdiction over Mattel's state law counterclaims pursuant to 28 U.S.C. § 1367.

11          Venue in this Court for <u>MGA Entertainment, Inc. v. Mattel, Inc.</u> is

12   alleged to be proper pursuant to 28 U.S.C. §§ 1391(b) - (d), 1391(f) and 1400(a) and

13   18 U.S.C. § 1965.

14                          **IV.**

15                 **TRIAL ESTIMATE**

16          The parties understand that the Court has directed each side to complete

17   the presentation of evidence in Phase 1, including the examination and cross-

18   examination of witnesses, in 60 hours. The parties further understand that the 60

19   hours shall not apply to argument, jury selection, opening statements, or closing

20   arguments.

21          Consistent with the express language of the Court's April 7, 2008 Order

22   [Docket No. 2998], the 60-hour limit may be enlarged "if extraordinary

23   circumstances warrant such relief." Apr. 7, 2008 Order, at 2.

24

25                          **V.**

26                 **TYPE OF TRIAL**

27          The trial is to be a jury trial, except for issues which are not properly

28   tried to jury. Pursuant to the Court's Scheduling Order, the parties have already

EXHIBIT _____ 44

PAGE _____ 252

1   delivered to the Court (a) a set of Joint Proposed Jury Instructions and (b) a set of

2   disputed Jury Instructions, along with reasons supporting and opposing each

3   disputed instruction, and (c) at the Pre-Trial Conference brief proposed voir dire

4   questions for the jury. The parties shall revise and supplement the jury instructions

5   and verdict forms on or before June 6, 2008, in light of the Court's May 22 and May

6   23 Orders relating to the parties' respective motions for partial summary judgment

7   and motions *in limine*, as well as the Court's May 22, 2008 Order on the MGA

8   Parties' motion for reconsideration.

9           The Court intends to rule upon the MGA parties' equitable affirmative

10  defenses at the close of the Phase 1 trial, but will allow evidence as to these defenses

11  to be presented to the jury. The Court may have the jury answer special

12  interrogatories as to certain of these equitable defenses so as to establish the

13  requisite factual findings for the Court to rule upon such defenses.

14

15                                          **VI.**

16                              **STIPULATED FACTS**

17          1.      The following facts have been stipulated, and shall be deemed

18  established:[1]

19                                      **Parties**

20          1.      Mattel, Inc. is a corporation formed under the laws of the State of

21                  Delaware with its headquarters in El Segundo, California.

22

---

23      [1]   The parties to this action do not understand the rules to require the recitation

24  of admissions in the Pre-Trial Conference Order for those admissions to be
    introduced at trial. Therefore, admissions are not included herein.

25          The parties' lists of facts herein are not exhaustive. The parties reserve the right

26  to introduce additional evidence in support of their claims — or in opposition to

27  affirmative defenses — at trial. In addition, the parties intend to introduce expert
    evidence not listed below in support of its claims.

28

-8-

EXHIBIT _____  44

253

1     2.    MGA Entertainment, Inc. is a privately held California
2           corporation.
3     3.    MGA Entertainment (HK) Limited, a Hong Kong company, and
4           MGAE de Mexico, S.R.L. de C.V., a Mexico corporation, are
5           wholly owned subsidiaries of MGA Entertainment, Inc.
6     4.    Isaac Larian, an individual, is the CEO and majority shareholder
7           of MGA Entertainment, Inc. and is a resident of California.

8           **Bryant's Employment at Mattel**

9     5.    Carter Bryant first worked for Mattel in the mainline Barbie
10         group from September 1995 to April 1998.
11    6.    Bryant signed a document titled "Employee Confidential
12         Information and Inventions Agreement," dated November 6,
13         1995.
14    7.    Bryant signed a document titled "Conflict of Interest
15         Questionnaire," dated November 6, 1995.
16    8.    Bryant left California in December 1997 and moved to Missouri
17         to live with his parents, where he continued to do work for
18         Mattel until April 1998.
19    9.    In late December 1998, Mattel offered Bryant a position in the
20         Barbie Collectibles group.
21    10.   Bryant accepted Mattel's offer, moved back to California, and
22         started work at Mattel on January 4, 1999.
23    11.   Bryant signed a document titled "Employee Confidential
24         Information and Inventions Agreement" dated January 4, 1999.
25    12.   Bryant signed a document titled "Conflict of Interest
26         Questionnaire," incorrectly dated January 4, 1998, instead of
27         1999.
28

EXHIBIT _____44_____

PAGE _____251_____

1        13.    Before Bryant left Mattel, he was asked to and did participate in

2              an exit interview.

3        14.    During his exit interview, Bryant signed a document titled

4              "Proprietary Information Checkout," dated October 19, 2000.

5        15.    Carter Bryant, an individual, is a resident of Missouri.

6

7                                 **VII.**

8                           **CLAIMS**

9

10     A.    **MATTEL INC.'S CLAIMS AND COUNTERCLAIMS**

11           Except to the extent already adjudicated in its favor by the Court's

12  Orders re Summary Judgment, and pursuant to the Court's July 5, 2007 Phasing

13  Order, Mattel, Inc. plans to pursue the following claims and counterclaims against

14  the defendants in Phase 1 trial as indicated[2]:

15

16

17

18

19

20

21

22

23     [2]   Mattel has claims for misappropriation of trade secrets that are being reserved
for Phase II of this litigation.  To the extent defendants seek to raise the issue of

24  trade secrets during Phase I, either as a claim or as an affirmative defense, Mattel

25  reserves its right to argue its misappropriation of trade secrets claim in Phase I.
The MGA parties note that the Court gave specific guidance on this issue and

26  expressly limited the type of evidence that Mattel may introduce that falls outside of

27  the scope of Phase I of the trial in ruling on the MGA parties' motion *in limine*
number 6.

28

EXHIBIT _____ 44

PAGE _____ 255

1       **Claim 1:  Intentional Interference with Contract (Against Larian**
2  **and MGA).**

3       **Claim 2:  Aiding and Abetting Breach of Fiduciary Duty (Against**
4  **Larian and MGA).**

5       **Claim 3:  Aiding and Abetting Breach of Duty of Loyalty (Against**
6  **Larian and MGA).**

7       **Claim 4:  Conversion (Against MGA, MGA HK and Larian).**

8       **Claim 5:  Statutory Unfair Competition (Against Larian, MGA,**
9  **and MGA HK).**

10       **Claim 6:  Declaratory Relief  (Against Larian, MGA, and MGA**
11  **HK) (ownership of original Bratz works and associated copyrights allegedly**
12  **created by Bryant while employed by Mattel)**

13       **Claim 7: Copyright Infringement (Against Larian, MGA, and**
14  **MGA HK)**

15       The parties stipulated, and the Court agreed, that contentions of law and
16  fact, were not necessary and would not be productive, in light of the parties'
17  exhaustive briefing of the same issues in their cross-motions for partial summary
18  judgment and the fact that the Court has not yet ruled on certain of those cross-
19  motions.

20

21             **VIII.**

22       **DEFENDANTS' AFFIRMATIVE DEFENSES**

23       Relevant to Phase 1 of the Trial, Defendants assert the following
24  affirmative defenses:

25       Affirmative Defense 3:  Laches

26       Affirmative Defense 4:  Statute of Limitations

27       Affirmative Defense 5 and 6:  205(d)/Bona Fide Purchaser for Value

28       Affirmative Defense 9:  Estoppel

EXHIBIT 44

1    Affirmative Defense 10: Acquiescence

2    Affirmative Defense 11: Mitigation

3    Affirmative Defense 13: Waiver

4    Affirmative Defense 14: Abandonment

5    Affirmative Defense 15: *De Minimus* Use

6    Affirmative Defense 17: Privilege/Justification

7    Affirmative Defense 18: Good Faith

8    Affirmative Defense 21: Consent

9    **MGA PARTIES' AFFIRMATIVE DEFENSE TO COPYRIGHT DAMAGES**

10   MGA, MGA (HK), and/or Larian must prove:

11       1.    Expenses deductible from gross revenues causally connected to the

12             alleged infringement;

13       2.    Elements of defendants' profit attributable to factors other than the

14             copyrighted work.

15

16                                   **IX.**

17                              **DISCOVERY**

18   Phase 1 Discovery is not complete, but will be within two weeks.

19   Counsel have waived any prejudice from commencing trial without completing

20   discovery. Phase 2 discovery has been stayed. Many Phase 1 discovery motions

21   remain to be heard. The parties are working to complete them as expeditiously as

22   possible.

23

24                                    **X.**

25                              **EXHIBITS**

26   All disclosures under F.R.Civ. P. 26(a)(3) have been made. The joint

27   exhibit list of the parties has been filed.

28

EXHIBIT _____ 44

PAGE _____ 257

## XI.

## WITNESSES

All disclosures under F.R.Civ.P. 26(a)(3) have been made. Witness lists of the parties have been filed with the Court pursuant to the schedule approved by the Court. Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7. For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1: William Ackerman (Art Attacks), Bryant Joseph Armstrong, Nana Ashong, Schuyler Bacon, Ronald Brawer, Kerry Brode, Charnayne Brooks, Carter Bryant, Carter Bryant (Art Attacks), Carter Bryant (Gunther-Wahl), Janet Bryant, Thomas Bryant, Ana Cabrera, Mei Wah (Sarah) Chui, Elise Cloonan, Nick Contreras, Daniel Cooney, Wendy Feinberg, Jeanne Galvano, Paula Garcia, Paula Garcia (Art Attacks), Brooke Gilbert, Kami Gillmour, Daphne Gronich, Sarah Halpern, Esther Han, Rachel Harris, Rebecca Harris (Art Attacks), Amy Hyland, Richard Irmen, Mitchell Kamarck, Samir Khare, Andreas Koch, Susana Kuemmerle, Robert Kullman, Farhad Larian, Isaac Larian, Isaac Larian (Art Attacks), Isaac Larian (Larian v. Larian), Isaac Larian (Ubisoft), Margaret Leahy, Edmond Lee, Steven Linker, Kenneth Lockhart, Jennifer Lynn Maurus (Larian v. Larian), Albert Lyter, David Malacrida, Peter Marlow, Veronica Marlow, Karl Meyer, Beatriz Morales, Amy Myers, Joyce Ng, Victoria O'Connor, Sarah D. Odom, Denise O'Neal, Jacqueline Prince, Jessie Ramirez, Anna Rhee, David Rosenbaum, Lon Ross (Fun4All), Maria Salazar, Shirin Salemnia, Joe Tiongco, Maureen Tkacik, Lisa Tonnu, Anne Wang, Jeffrey Neil Weiss, Spencer Woodman, Mel Woods, and MGA's 30(b)(6) witness regarding Larian v. Larian.

Additional depositions to be lodged: Ronald Brawer, Richard DeAnda, Ann Driskill, Robert Eckert, Kevin Farr, Lissa Freed, Jeanne Galvano, Hoi Hoffman-Briggs, Brian Hooks, Julia Jensen, Alan Kaye, Fred Kawashima, Tim Kilpin, Liliana Martinez, Heather McComb, Ginger McRae, Nicholas Mirzoeff,

EXHIBIT ___44___

1 Teresa Newcomb, Jill Nordquist, Ralph Oman, Rodney Palmer, Joni Pratte,

2 Jacqueline Prince, Kathleen Simpson-Taylor, Maureen Tafoya, and Sandra

3 Yonemoto.

4   Furthermore, certain depositions have been recently taken or remain to

5 be taken. The parties will advise the Court of such transcripts to be lodged as they

6 become available and relevant.

7   Pursuant to ¶ 97 of the Court's Scheduling Order, the parties identify

8 the following expert witnesses to be called:

9   Mattel: Valery Aginsky, John Alex, Lloyd Cunningham, William

10 Flynn, Frank Keiser, Lee Loetz, Mark Menz, Nicholas Mirzoeff, Ralph Oman,

11 Walter Rantanen, Carol Scott, Bryce Stein, Michael Wagner, Robert Lind, Angel

12 Gomez, Heather McComb, Ginger McRae, Denise Van Patten, and Kenneth

13 Hollander.

14   Defendants: Mary Bergstein, D. Jan Duffy, Thomas S. Gruca, Erich

15 Joachimstaler, Robert D. Kullman, Albert H. Lyter, Peter Menell, Paul Meyer,

16 Debora Middleton, Robert Tonner, Glenn Vilppu, Douglas Kidder, and Gary Funck.

17   The following law and motion matters and motions in limine have been

18 decided:

19   Mattel has filed the following motions *in limine*:

20   1. MIL No. 1 to exclude: (1) evidence or argument that Bryant's

21 invention assignment agreements are unfair or unconscionable; (2) evidence of other

22 versions of Mattel's inventions agreements; and (3) expert testimony of D. Jan

23 Duffy;

24   Granted.

25   2. MIL No. 2 to exclude evidence, argument or reference to

26 Mattel's alleged motive in filing suit or re consequences thereof ;

27   Denied as written. Will allow late evidence with proper foundation.

28 Consequences of lawsuit to MGA may not be admitted.

-14-

EXHIBIT ____ 44

PAGE 259

1         3.     MIL No. 3 to exclude Phase 1(B) evidence in the Phase 1(A)

2 trial and Phase 2 evidence in the Phase 1 trials or, in the alternative, to permit

3 expedited Phase 2 discovery;

4            Granted insofar as apportionment and responsive evidence is limited to

5            1B; deferred on rest.

6         4.     MIL No. 4 to preclude introduction to jury of evidence and

7 testimony relating to equitable defenses to be tried by court ;

8            Denied.

9         5.     MIL No. 5 to exclude evidence of or argument concerning other

10 lawsuits and other purported bad acts and dismissed defenses;

11            Granted as to Nos. 1-4 and 10; Denied without prejudice to specific

12            objections as to Nos. 5-9.

13         6.     MIL No. 6 to exclude evidence or argument concerning actions

14 taken by or against Mattel employees other than Carter Bryant;

15            Granted in part and denied in part; Evidence is admissible only if such

16            other employees are analogous to Bryant.

17         7.     MIL No. 7 to preclude the MGA Defendants from asserting or

18 relying on an advice of counsel defense;

19            Granted. However, the MGA Parties can introduce Rosenbaum's

20            testimony relaying his factual conversations not as reliance on any legal

21            advice he gave but as to the fact that he undertook certain actions and had

22            certain conversations, provided otherwise admissible.

23         8.     MIL No. 8 to exclude evidence relating to whether Mattel would

24 have marketed Bratz;

25            Granted as to 1A; Deferred as to 1B.

26         9.     MIL No. 9 to exclude argument, evidence, or expert testimony

27 regarding Barbie and other Mattel dolls;

28            Daubert hearing to be held one day prior to testifying.

1         10.    MIL No. 10 to exclude testimony by Glenn V. Vilppu;

2        Daubert hearing to be held one day prior to testifying.

3         11.    MIL No. 11 to preclude Defendants from offering improperly

4  disclosed evidence;

5        Granted as to test project. Deferred on apportionment issues otherwise

6        denied.

7         12.    MIL No. 12 to exclude the testimony of Peter S. Menell;

8        Daubert hearing to be held one day prior to testifying.

9         13.    MIL No. 13 to exclude expert testimony of Mary Bergstein,

10  Robert Tonner, and Debora Middleton;

11        Daubert hearing to be held one day prior to testifying.

12         14.    MIL No. 14 to exclude evidence and argument related to certain

13  discovery matters;

14        Granted.

15         15.    MIL No. 15 for a preclusion order regarding MGA's disqualified

16  expert Christina Tomiyama.

17        Taken under submission. Deferred ruling until Phase 1(b).

18        Defendants filed the following motions in limine:

19         1.    MGA Parties' Notice of Motion and Motion in Limine Number 1

20  to Exclude All Evidence Relating to Litigation or Other Proceedings Between Isaac

21  and Farhad Larian;

22        Denied.

23         2.    MGA Parties' Notice of Motion and Motion in Limine Number 2

24  to Exclude All Evidence Relating to Isaac Larian's Wealth and Assets;

25        Granted in part, denied in part. General evidence regarding Mr. Larian's

26  wealth is inadmissible. Any gain to Larian from Bratz may be introduced only in Phase

27  1b. In Phase 1a, Mattel only may submit evidence of what Larian stood to gain **at the**

28  **time** of any alleged breach, not subsequent gain.

EXHIBIT ____44____

1          3.     MGA Parties' Notice of Motion and Motion in Limine Number 3
2    to Exclude Reference to and Use of Evidence of Other Legal Proceedings;
3          Granted insofar as findings of foreign courts are excluded unless they
4    are the only evidence of MGA's prior positions.
5          4.     MGA Parties' Notice of Motion and Motion in Limine Number 4
6    to Exclude Reference to and Use of MGA's Employment Agreements With its
7    Employees;
8          Denied.
9          5.     MGA Parties' Notice of Motion and Motion in Limine Number 5
10   to Exclude References to Prior Legal Representation;
11         Granted.
12         6.     MGA Parties' Notice of Motion and Motion in Limine Number 6
13   to Exclude Reference to and Use of Phase Two Evidence;
14         Denied as to Nos. 1, 2, and 5. Based on stipulation of counsel, moot as
15   to Nos. 4 and 6. Granted as to No. 3 in 1A but door may be opened in 1B.
16         7.     MGA Parties' Notice of Motion and Motion in Limine Number 7
17   to Exclude All References to and Use of Certain "Expert" Testimony Proffered by
18   Mattel Witness Michael J. Wagner;
19         Daubert hearing to be held one day prior to testifying.
20         8.     MGA Parties' Notice of Motion and Motion in Limine Number 8
21   to Strike Expert Rebuttal Report of Kenneth Hollander and Sections of Expert
22   Rebuttal Reports of Heather McComb, Denise Van Patten, and Nicholas Mirzoeff;
23         Daubert hearing to be held one day prior to testifying.
24         9.     MGA Parties' Notice of Motion and Motion in Limine Number 9
25   to Strike the Expert Report and Testimony of Ralph Oman and John Alex;
26         Daubert hearing to be held one day prior to testifying.
27
28

-17-                 Case No. CV 04-9049 SGL (RNBx)
                                                               FINAL PRE TRIAL CONFERENCE ORDER

EXHIBIT ____ 44

1         10.    MGA Parties' Notice of Motion and Motion in Limine Number

2   10 to Exclude All References to and Use of Certain "Expert" Testimony Proffered

3   by Mattel Witness Carol A. Scott;

4         Daubert hearing to be held one day prior to testifying.

5         11.    MGA Parties' Notice of Motion and Motion in Limine Number

6   11 to Strike the Expert Rebuttal Report of Robert C. Lind;

7         Daubert hearing to be held one day prior to testifying.

8         12.    MGA Parties' Notice of Motion and Motion in Limine Number

9   12 to Strike Portion of the Expert Report of Lee Loetz;

10        Daubert hearing to be held one day prior to testifying.

11        13.    Motion in Limine Number 13:  To exclude evidence and

12  argument regarding alleged spoliation by Bryant;

13        Hearing to be held one day prior to Bryant testifying; hearing to include

14  Bryant and experts; excluded from opening statement.

15        14.    Motion in Limine Number 14:  To exclude evidence and

16  argument regarding Bryant's alleged "borrowing" of ideas or concepts from

17  preexisting Mattel projects, including Toon Teens, Diva Starz, the "Swan" line, and

18  Skipper.

19        Denied.

20        The Court ruled upon or otherwise addressed the remaining motions

21  during recent hearings.

22        Bifurcation of the claims and counterclaims was ordered pursuant to

23  the Court's Order of July 2, 2007.  The claims and counterclaims to be tried in Phase

24  1 trial are set forth herein.  The claims remaining for trial in Phase 2 are set forth on

25  pages 8-9 in Mattel's Memorandum of Trial Structure, filed June 20, 2007, as

26  adopted in the July 2, 2007 Order.  At the hearing on May 22, 2008, the Court

27  provided guidance to the parties as to the issues that may be tried as part of Phase 1a

28  versus Phase 1b.

EXHIBIT ___44___

PAGE ___2 o 3___

1          The foregoing admissions having been made by the parties, and the

2  parties having specified the foregoing issues of fact and law remaining to be

3  litigated, this Pretrial Conference Order shall supersede the pleadings as they relate

4  to claims or defenses to be tried in Phase 1 and govern the course of the trial of the

5  Phase 1 claims and defense, unless modified to prevent manifest injustice.

6  DATED:  June 04, 2008

7

8

9  Approved as to form by:

10  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

11

12  By /s/ John B. Quinn
      John B. Quinn, Esq.
13    Attorneys for Mattel, Inc.

14

15  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

16

17

18  By /s/ Thomas J. Nolan, Esq.
      Thomas J. Nolan, Esq.
19    Attorneys for MGA Entertainment, Inc.

20

21

22

23

24

25

26

27

28

07209/2474226.14

-19-

Case No. CV 04-9049 SGL (RNBx)
FINAL PRE TRIAL CONFERENCE ORDER

EXHIBIT _____ 44

PAGE _____ 264

# EXHIBIT 45

Aug 11 03 05:08p    Carter                    4177257936                    p.1



**PATENT**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | Isaac Larian | Examiner: | Ali Abdelwahed |
| Serial No. | 10/373,602 | Group Art Unit: | 3712 |
| Filed: | February 24, 2003 | Docket No. | 15904-142 |
| Title: | DOLL WITH AESTHETIC CHANGEABLE FOOTGEAR | | |

CERTIFICATE UNDER 37 CFR 1.8
I hereby certify that this correspondence and identified enclosures are being deposited with the United States Postal Service, as first class mail, postage prepaid, under 37 C.F.R. 1.8 on the date indicated, and is addressed to the Mail Stop Non-Fee Amendment, Commissioner for Patents, P.O. Box 1450, Alexandria, VA  22313-1450 on August 12, 2003.

Justina S. Townsend

Mail Stop NON-FEE AMENDMENT
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

### DECLARATION OF CARTER BRYANT

I, CARTER BRYANT, hereby declare as follows:

1.   I am the president of Carter Bryant Enterprises, 634 West Mt. Vernon, Suite 264, Nixa, MO, 65714; and I have been in the freelance design field for about eight (8) years.

2.   I am familiar with the Bratz doll projects of MGA Entertainment and I have worked with Isaac Larian president of MGA Entertainment on the Bratz doll project.

3.   I am familiar with the doll designs as shown in the attached drawings from the above-identified patent application. These dolls have strap type shoes, and the dolls have a snap on feature at about the ankle of the dolls so that different footgear may be mounted on the doll. Regarding the strap type shoes, as disclosed in the patent application, the coloring of the skin tone on the exposed areas of the feet are matched to the coloring of the lower legs of the dolls.

PAGE  2/ 3                   FAX:13103188508                   RX TIME  08/11 '03 15:07                    FILE No.106 08/11 '03 14:59   ID:OPPENHEIMER

EXHIBIT  45
PAGE  247

MGA 0825457

EX 502-0001

Serial No. 09/647,752

4.      I was actively involved with the release of the Bratz dolls of the configuration as
set forth in paragraph 3 above, and this release did not occur until the fall of the year 2002.

I hereby declare that all statements made herein of my own knowledge are true, and that
all statements made on information and belief are believed to be true; and further that these
statements were made with the knowledge that willful false statements the like so made are
punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States
Code, and that such willful false statements may jeopardize the validity of the application or any
patent application issuing thereon.

Respectfully submitted,

Carter Bryant

Attached:
        2 Sheets Drawings

- 2 -

PAGE  3/ 3       8089618E0ID1:XAF            OPPENHEIMER:ID  65:51 E0, 11/80 901°ON BLIA
LOCATION:4177257936                          RX TIME   08/11 '03 15:07

EXHIBIT     45
PAGE       248

MGA 0825458

EX 502-0002

1/2



FIG. 1

FIG. 2

EXHIBIT   45
PAGE   249

MGA 0825459

EX 502-0003

2/2



FIG. 3

FIG. 4

FIG. 5

EXHIBIT __45__

PAGE __250__

MGA 0825460

EX 502-0004

# EXHIBIT 46

| From: | Isaac Larian |
| --- | --- |
| To: | Victoria O'Connor; Dave Malacrida; Aileen Storer; Paula Treantafelles; Margo Chazen; Dianna Eisenberg |
| CC: | Abe Mirza; Julie Mote; Beth Cahill |
| BCC: | |
| Sent Date: | 2002-03-12 12:17:42:953 |
| Received Date: | 2002-03-12 12:17:42:953 |
| Subject: | FW: Hi |
| Attachments: | |

Victoria, Dave: Who gave David Dees info and what he does for us to this Yahoo lady and why?

This Yahoo lady is giving us too much legal grief even though she does not mean it.

Please DO NOT send any information or reply to her e mails unless you have cleared it with me.

Julie/Beth/ Abe:                                    There must be no mention about Mattel or any of their properties, Carter , any MGA Bratz arts ,etc.


-----Original Message-----
From: Paula Treantafelles
Sent: Monday, March 11, 2002 5:55 PM
To: Isaac Larian; Abe Mirza; Beth Cahill
Subject: FW: Hi

-----Original Message-----
From: David Dees [mailto:davodees@hotmail.com]
Sent: Saturday, March 09, 2002 12:37 PM
To: bryant598@cs.com
Subject: Hi

Hi Carter,

I thought you would enjoy this letter i wrote to the Bratzworld club on Yahoo. It starts off with the club leader introducing it. Dees.

Hello!

I'm posting a wonderful letter from David Dees- the guy who does the awesome art we love to look at on the Bratz website and on posters and wherever Bratz girls are. I just want to post it to its own message so I can save that as a text file in the David Dees folder in files so you can read it anytime you like. We've



EXHIBIT
4507

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA 3801819

EXHIBIT ___46___
PAGE     251

4507 - 1

EX 4507 0001

always liked it that MGA communicates with the Bratz fans and
this takes it even further into VERY COOL land.

Make sure you also check out his portfolio for all the other stuff
he does- you've probably seen lots of it- he's extremely talented!

Okay enough from me- I'll post his letter right after this
:)
snowflakebebe

>Hello my name is Christian (I'm a girl!) and I do a fan list for the Bratz
>dolls and I was wondering if you could post and maybe share some of your
>other Bratz art that we may not have seen (we have lots of it in the files
>section) - or talk about your experience working on the illustrations of
>the
>Bratz. I am in contact with MGA and they have endorsed this "fan club" so
>if
>I need to get permission from them for anything I can ask- but I hope
>you'll
>share some art if you can. We have the link to your portfolio up in our
>files and bookmark section. Come visit sometime :) We love your art. Its
>a
>big part of the fun of the Bratz :)

Hi Christian,

Thanks so much for your letter and interest in the world of Bratz. I talked
to the art director at MGA , and she said that of course i am not the one to
be releasing any Bratz art ahead of time, so i will check and see if i can
post some of that older airbrush art for you. She also said MGA is in the
process of building a new website that is going to be packed to the hilt
with cool art of all the new fashions, and believe me, they are wild and
colorful as i just finished about thirty new pieces of art that will amaze
you.

I work freelance as an illustrator and have my own studio at home where i
paint at my leisure, but if a job comes in you can be sure that it is
usually being rushed. My immediate live-in family consists of two furry
felines. A crosseyed siamese mix named Buddy, and a female red striped tabby
named Goose.

I am swamped right now with colorizing lots of the new wacky funk styles,
and there are new hats and boas and tops that I got a kick out of. However I
can't take credit for creating the Bratz Dolls, or even the first Bratz
illustrations, for that honor would go to a fellow named Carter Bryant*, who
is truly a genius of fashion and the soul and only person who first drew
those great pouty lips and that extreme look that only our heros share. I
have never met him personally, but on the phone and emails he is certainly
the nicest sincere fellow ever, and very optimistic and complementary about
my art in his approach. It felt good early on when he would tell me i was
doing a good job bringing them to life. Can you tell I am a fan of his as

CONFIDENTIAL – ATTORNEYS' EYES ONLY

MGA 3801820

EXHIBIT ___46___
PAGE ___252___

EX 4507-0002

well?

Let me tell you about MGA. It is located in North Hills, California, at the west end of the beautiful San Fernando Valley, where i lived for many years, but now i live in Salt Lake, where the Olympics just were. Anyway, when you walk into the big, high ceiling lobby there is a real pretty receptionist with reddish brown hair (and that sometimes wears leopard prints), and if you look to the left you will see the stairs wind up to the second floor where all the cool stuff happens. And as you start up them there is, to the right, a little rock garden with plants, and it always has some of the new toys, like robot dogs, insectobots, or baby dolls sitting in there as if they are playing. As you get to the top of the stairs, that is if you can get permission to come up to this top secret place, the first thing you notice to your right is two big doors opening into a spacious office with a fancy glass desk, usually covered with toys, and sitting there working busily away is a great fellow named Isaac, who is the owner, president, and creator of most of the MGA toys. He always seems to leave his doors open and when i stop by to pick up a job i glance in and wave if he happens to look up.

The first big area past there has lots of low partitioned cubicles with all the business people who keep the finances working, but then the next rows are the package and advertising designers, which is sort of the front line of the creativity, and as you continue up the steps there is a silly sign hanging that says Design Farm, and that is the beginning of the art studios. It always freaks me out to go in there because it is a busy beehive of toy ideas and designers flying around like a tornado. It is a big open room with black walls and bright lights shining down spotlighting the work areas, and colorful toys and wacky new ideas and drawings lining the walls. The middle area has a long table work table covered with new toy packages being assembled for the first time, with most of the mocked up packages being created by cutting and pasting by hand, and only after the idea is shown through many approval lines is it mass produced. Sometimes a whole new line of Bratz accessories will be displayed, and i am amazed at the details of the clothes at such a small scale. When i pop in I am usually asked for my opinion about the new toys, such as if i think they will be popular or how to promote them, and i am always happy to put in my two cents. There are about a dozen or so design areas with computers that surround the work table, and at each station is someone with more talent than you can imagine all corraled into one group. That is why they come up with such great stuff. There is also a window on one wall and whenever i look out of it, it is stunning to look down into the warehouse which quite a large expanse of big boxes and lifts carrying them around. I guess that is the tour.

About working on the illustrations, well they are all colored on the computer. The best thing i can say is that i finally figured out a great way to paint their hair that flows great, and looks sort of real. But that is in the last group of art i just finished and it will available to you soon i suppose. If you have any suggestions about any of the art I always welcome your viewpoint.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

MGA 3801821

EXHIBIT __46__
PAGE __253__

EX 4507-0003

Anyway that is about it. I will send in anything that I am allowed to release to you guys, or check my website for new art that i am putting up all the time. Feel free to download any art that you like off my site. See ya. david.

(* You can do a google.com search under Carter Bryant and you can see some things he has done.

-snowflakebebe)

WOW what a cool letter... i have to say again that everyone so far involved with the Bratz company is so cool, and responds personally and actually takes some time.... as for Carter Bryant i searched and searched and came up with nothing. so if any one find his website, can you post the URL.. ;) many thanks...

Pink Glitter
>>Vayne<<
xxx

Get your FREE download of MSN Explorer at http://explorer.msn.com/intl.asp.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA 3801822

EXHIBIT __46__
PAGE __254__

EX 4507-0004

# EXHIBIT 47

**From:**          Isaac Larian
**To:**            Dee Dee Valencia
**CC:**
**BCC:**
**Sent Date:**     2003-02-06 20:05:14:687
**Received Date:** 2003-02-06 20:05:14:687
**Subject:**       RE: Bratz
**Attachments:**

Good ideas.

Lets share with the team after NY and execute.

-----Original Message-----
From: Dee Dee Valencia
Sent: Thursday, February 06, 2003 11:59 AM
To: Isaac Larian
Subject: RE: Bratz

Okay ... I am jotting down my first thought .... I'll think more. Had experience in past lives in collectible market....

Limited Edition Collectible # of pcs low low low - build for the future

SELLING - DISTRIBUTION
-Go for 2 partners; 1 TV (QVC) and other Hallmark sold in Collectibles Section (next would be ornaments with Hallmark)
-Offer the first 1,000 to our fan club members - 1st come first serve - build frenzy then you can advertise that the remaining # is going to be on QVC and in Hallmark only for a limited time.
-This strategy would also help, 'literally presell' the program to QVC & Hallmark. Built in demand, advertised, slam dunk!
-After market sales - will boom - ebay.... keep track of it .. powerful ...

FEATURES:
-Signed by....???? - I know we want to keep Carter under wraps ...

-Custom / Original art of girls as the certificate of authenticity - framed for room and showing off to friends

-The box is JUST AS IMPORTANT as THE PRODUCT in the collectible market. So packaging needs to be authentic and out of this world.

Product Ideas:
-Porcelain real hair, real fabrics as accents - high high detail
-Tie to well known hip fashion designer that designed clothing for extra equity
-Set of 4 dolls 6"-8"high (size smaller than mass market dolls - these are display only pcs)
-They need to be sold in a showcase cool environment - funky - this is part of the display in their room
-Something exclusive for the girl herself ... exclusive fashion bag is my first thought.

I'll think more.... we should absolutely utilize the Bratz Fan Club more. They 'expect' to be the first ones to know what is up and coming for Bratz. This is a built in base for exclusive or allocated or presold sell of goods.

DD



CONFIDENTIAL - ATTORNEYS' EYES ONLY      EXHIBIT __47__
PAGE __255__

MGA 3801558
EX 4942-0001

# EXHIBIT 48

Claimant
Isaac Larian
First
Exhibits IL 1 and ILA-D
/ ⌐/.05.04

IN THE HIGH COURT OF JUSTICE

CHANCERY DIVISION

INTELLECTUAL PROPERTY

B E T W E E N:

MGA ENTERTAINMENT, INC.

Claimant

- and -

THOMAS CHRISTOPHER JOSEPH METSON

Defendant

AFFIDAVIT OF ISAAC LARIAN

I, **ISAAC LARIAN,** of 16730 Schoenborn Street, North Hills, California, CA 91343, USA MAKE OATH and say as follows:

Introduction

1.  I am the Chief Executive Officer of the Claimant. I make this statement in support of the Claimant's applications for a disclosure order under CPR Part 25.1(1)(h), CPR Part 31 and the Court's equitable jurisdiction, and an interim injunction to restrain the Defendant from dealing in unlawful BRATZ trading cards under CPR 25.1(a) (set out in the Application Notice issued in these proceedings.

2.  Save where otherwise stated, I make this statement from facts within my own knowledge. Where I state facts which are not within my own knowledge, the source of my information is identified. I am duly authorised to make this Affidavit on behalf of the Claimant. 2 9 5

M17447.115/LT:327391.2/easl

(53 pgs)

Exhibit no. 947
Date: 10/9/07
Woodman  P. Pyburn

Confidential - Attorney's Eyes Only

EXHIBIT _____ 48

PAGE _____ 257

MGA 0868039

EX 947-0001

3.      I have been the Chief Executive Officer of the Claimant since the Claimant was founded in 1979.

4.      There is now produced and shown to me marked **Exhibit "IL 1"** a bundle of copy documents to which I shall refer in this affidavit by reference to the relevant page numbers.

**The Claimant**

5.      The Claimant was founded as a consumer electronics business in 1979.  It entered the toy business in 1987 when it obtained an exclusive licence to sell Nintendo hand-held games in the US.  The Claimant subsequently obtained licences for other toy products including HELLO KITTY and POWER RANGERS and then developed its own branded toys such as BRATZ dolls.

6.      The Claimant has offices in Los Angeles, Hong Kong, Mexico and Canada and has over 450 employees. The Claimant sells its products around the world including in the US and Europe.

7.      Today, the Claimant has achieved earnings in excess of US$600 million in 2003 and its earnings are projected to be US$1 billion in 2004.  About 65-70% of the Claimant's business relates to BRATZ dolls and related merchandise (see below).

8.      I established the Claimant and was the inspiration behind the BRATZ dolls.  I have been the main driving force behind the success of the Claimant.

**The BRATZ Dolls**

9.      The Claimant started promoting and selling the BRATZ dolls in the US in June 2001.  The first four characters were "Cloe", "Sasha", "Jade" and "Yasmin".

10.     The BRATZ dolls have distinctive oversized heads decorated with exaggerated eyes and

296

M17447.115/LT:327391.2/labd                    2

Confidential - Attorney's Eyes Only

EXHIBIT _____ **48** _____

PAGE _____ **258** _____

MGA 0868040

EX 947-0002

211.   In the circumstances, I respectfully request that this Honourable Court should grant the injunction and disclosure order sought by the Claimant in this action.

Sworn at   14736 schoENBoRN ST.        )
           NoRTh Hills, CA. 91343       )
                                        )

           may 14, 2004

           Before me

JOSEPH DAVID NEWCOMB
Commission # 1466241
Notary Public - California
Los Angeles County
My Comm. Expires Jan 27, 2008

346

M17447.115/LT:327391.2/labd                    52

Confidential - Attorney's Eyes Only

EXHIBIT ___ 48

PAGE ___ 259

MGA 0868090

EX 947-0052

Claimant
Isaac Larian
First
Exhibits IL 1 and ILA-D
/ 4 .05.04

IN THE HIGH COURT OF JUSTICE

CHANCERY DIVISION

INTELLECTUAL PROPERTY

B E T W E E N:

MGA ENTERTAINMENT, INC.

Claimant

- and -

THOMAS CHRISTOPHER JOSEPH
METSON

Defendant

---

### AFFIDAVIT OF ISAAC LARIAN

---

SJ Berwin
222 Gray's Inn Road
London  WC1X 8XF

Tel:  020 7533 2222

Ref:  M17447.115/LT:327391.2/eaal

347

Confidential - Attorney's Eyes Only

EXHIBIT   48

PAGE   260

MGA 0868091

EX 947-0053

# EXHIBIT 49



ANNUAL RETIREMENT GUIDE

The McGraw·Hill Companies

# BusinessWeek

JULY 28, 2003

www.businessweek.com

## CITI'S NEXT ACT

STOCK VS. OPTIONS
THE NEW EXEC COMP GAME

STRATEGIES
►YAHOO!
►GENERAL MILLS
►MATTEL

GE:
MEET CHARLENE BEGLEY, A RISING STAR

INVESTING
HOW OUR WALL STREET COLUMN PERFORMED

CHUCK PRINCE: Sandy Weill's top troubleshooter is the unlikely choice to become CEO. Does he have the right stuff to lead the world's most important bank? PAGE 30

NBXBBGOO KAMER LOT 0016A*C033
#JLIZ1Z1G091 08300116      BX003676
Illullluulllluulludlulludlluudlluululululdul
071994
MAR 22 04  0975
T099
DARY JOLICOPUR
2121 GATES AVE B
REDONDO BEACH  CA  90278-2007

Exhibit no. 631
Date: 8/30/07
Mabcide Pyburn


M 0074054

631.1

EXHIBIT    49
PAGE    261

EX 631-0001



COMMENTARY
By Christopher Palmeri

M 0074055

EXHIBIT __49__
PAGE __262__

631.2

EX 631-0002



-:Mattel won't live or die on every
new toy it develops. But it can't just
rely on Barbies, either. "Like they say
in business school—no risk, no re-
ward," says Isaac Larian, CEO of pri-
vately held MGA. He should know. He
got the idea for Bratz after seeing his
own kids run around in navel-baring
tops and hip-huggers. As Eckert is
finding out, sometimes the best ideas
are right in front of you.

—Palmer, *scuer fogb, rons*
—*Los Angeles*

M 0074056

63.3

EX 631-0003

EXHIBIT __49__
PAGE __263__

# EXHIBIT 50

Immigrant's Creative Company Shakes Up Toy Industry

By JEFF WEISS; Contributing Reporter

1,098 words

29 March 2004

San Fernando Valley Business Journal

English

2004 San Fernando Valley Business Journal. All rights reserved.



EXHIBIT ___50___
PAGE ___264___

**M 0101133**

EX 12058-0001

"My oldest son, 17-year-old Jason, is very creative and a music writer. He has come up with some of our popular toys," Larian said. "He came up with Commandobot—a robot that was the first ever robot toy to work on voice recognition. It was a fantastic seller that was featured in Wired magazine. It was Jason's idea for Bratz."

"Yasmin, my 15-year-old daughter, is involved in the business as well. She's particularly interested in fashion and focus groups. One of the Bratz is named after her," Larian said. "My 10-year-old son, Cameron, is also the namesake for one of the boy Bratz. Cameron comes up with different product ideas. One of our best ideas was a winter wonderland Bratz line. We were on a family ski vacation and he said 'Dad, you should do a Bratz winter break.' So we did it and it sold wonderfully."

EXHIBIT __50__
PAGE __265__

M 0101134

EX 12058-0002

EXHIBIT __50__
PAGE __266__

M 0101135

EX 12058-0003

# EXHIBIT 51

02/24/03  11:03am  P. 002

FROM OPPENHEIMER - L. A.                    (THU) 2. 13' 03 16:46/81. .6:42/NO. 4860067645 P 14

Docket No. 15994-142

## DECLARATION, POWER OF ATTORNEY AND PETITION

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled DOLL WITH AESTHETIC CHANGEABLE FOOTGEAR the specification of which is attached hereto.

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with 37 C.F.R. § 1.56(a).

I hereby declare: All statements of my own knowledge are true, and I believe that all statements made on information and belief are true. I make these statements with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001 and that such willful false statements may jeopardize the validity of the application or any patent issued on the application.

## POWER OF ATTORNEY

I appoint the following as my attorneys with full power of substitution and revocation, to prosecute said application and to transact in connection therewith all business in the Patent and Trademark Office and before competent International Authorities:

| | | | |
|---|---|---|---|
| Berman, C., Reg. 29,349 | Darrow, C., Reg. 30,166 | Hilberg, C.R., Reg. P48,740 | McRoss, L., Reg. 40,427 |
| Bobya, M.P., Reg. 45,287 | Diepenbrock III, A.B., Reg. 39,960 | Inskeep, J.W., Reg. 33,910 | Merton, C.A., Reg. 44,954 |
| Burworth, M.K., Reg. 28,186 | Edwards, W.O., Reg. 44,426 | Kennedy, B., Reg. 33,407 | Nader, R., Reg. P47,260 |
| Bovasso, L.J., Reg. 24,075 | Farber, M., Reg. 32,612 | Khan, T., Reg. 46,273 | Rose, A. C., Reg. 17,047 |
| Boyce, J., Reg. 40,920 | Colburn, C.A., Reg. 41,032 | Kudla, A.P., Reg. P47,724 | Rosenberg, C., Reg. 31,464 |
| Brown, M.E., Reg. 28,390 | Hamfield, C.A.S., Reg. 22,586 | Larson, D.N., Reg. 29,401 | Sherry, E., Reg. 43,915 |
| Burton, D.L., Reg. 45,323 | Human, S.R., Reg. 38,486 | Lazaris, S.J., Reg. 45,981 | Smith, G.P., Reg. 20,142 |
| Canter, B., Reg. 34,792 | Harris, M.D., Reg. 26,690 | Lervick, C.J., Reg. 35,244 | Swiston, S., Reg. 49,030 |
| Chen, A., Reg. P48,508 | Hayden, R.D., Reg. 42,645 | Linsko, S.C. Reg. 47,740 | Valencia, R.A., Reg. 43,216 |
| Chou, C., Reg. 41,072 | Haynieck, M., Reg. 44,763 | MacLean, K.A., Reg. 31,118 | Wood, G.B., Reg. 28,133 |
| Coleman, B.R., Reg. 39,145 | Hickman, F.L., Reg. 28,516 | Maddux, M.M., Reg. 30,962 | Wrigley, B.A., Reg. 34,950 |
| Collman, L.C., Reg. 30,645 | | McKinley, D., Reg. 42,857 | |

whose address is:

# OPPENHEIMER

OPPENHEIMER WOLFF & DONNELLY LLP
2029 Century Park East, Suite 3800
Los Angeles, California 90067
(310) 788-5000 • Fax (310) 788-5100



Exhibit 1701

1 / 08
Jane Stegers, CSR 10644

CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT 51
PAGE 267

MGA 3765285

EX 1701-0001

FROM OPPENHEIMER - L. A.

(THU) 2. 13' 03 16:47/St. 16:42/NO. 4860087645 P 15

Docket No. 11904-142

Address all communications and telephone calls to Alan C. Rose of the below-listed firm at (310) 788-5030 and at e-mail address arose@oppenheimer.com.

Wherefore I pray that Letters Patent be granted to me for the invention or discovery described and claimed in the foregoing specification and claims, and I hereby subscribe my name to the foregoing specification and claims, declaration, power of attorney, and this petition.

Full name of sole or first inventor ISAAC LARIAN

Inventor's signature _____ Date 2 - 24 - 2003

Residence:      237 Carolwood, Los Angeles, California 90077
Citizenship     United States of American
Post Office Address   237 Carolwood, Los Angeles, California 90077 USA

- 2 -

LA: 333337 v01 02/13/2003

CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT 51
PAGE 268

MGA 3765286

EX 1701-0002

# EXHIBIT 52

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES – GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                          Date: May 27, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.

<u>Consolidated With Related Actions:</u>
CASE NO. CV 04-09059 SGL(RNBx): MATTEL, INC., v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Gina Guzman
            Courtroom Deputy Clerk

<u>ATTORNEYS PRESENT FOR CARTER BRYANT:</u>       <u>ATTORNEYS PRESENT FOR MATTEL:</u>

None Present                                    None Present

<u>ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:</u>

None Present

PROCEEDINGS:   **ORDER RE STATUTE OF LIMITATIONS DEFENSE**

        Each of the remaining parties to this action, Mattel and MGA, seek summary judgment on the issue of statute of limitations. Crucial to resolution of this issue, is application of California's "discovery rule," which can delay the accrual of a claim. Both parties have offered evidence in support of their positions.[1] For its part, Mattel contends that its claims against Carter Bryant arose on November 24, 2003, and that its claims against the MGA entities, including MGA CEO Isaac Larian, arose on November 4, 2004, the date of Carter Bryant's deposition, at which he testified regarding MGA and Larian's involvement in his actions.

_____

        [1] Although he is no longer a party, the Court discusses at length the timeliness of the claims asserted against Carter Bryant because it is relevant to the Court's relation-back analysis of the claims asserted against MGA.

5/27                    EXHIBIT   52
                        PAGE      269

At oral argument and in its briefs, MGA argues at length that Mattel's claims against Bryant accrued some time shortly after Bryant left Mattel's employ in October, 2000. In support of this argument, MGA offered evidence that Mattel has always believed that it took nine months to bring a doll through the stages of development and to market. From that knowledge, in MGA's view, the sudden appearance of the Bratz dolls at a toy fair in Tokyo in January, 2001, should have aroused their suspicions.

MGA cites to the deposition of Bryant's co-worker, who had suspicions at the time Bryant resigned that Bryant was going to work for a competitor based on her subjective belief that Bryant would not pursue any other vocation other than doll designer.

MGA contends that Mattel could have looked at Bryant's phone records and determined that he had called MGA a number of times during the month pre-dating his resignation.

There is evidence that one of Bryant's co-workers believed it was "common knowledge," sometime in 2001, that Bryant probably designed Bratz.

The undisputed facts establish that in August, 2002, an anonymous letter was sent to Mattel's CEO stating that Bryant had designed Bratz. This letter is the first indication that Bryant may have worked on Bratz during the period of his employment with Mattel. See Zeller Decl. Ex. 63 ("While he was working with Mattel and working to create these dolls he worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls and the fact that they are rightly Mattel dolls.").

The undisputed facts also establish that on July 18, 2003, the Wall Street Journal published an article entitled "Dolled Up: To Lure Older Girls, Mattel Brings In Hip-Hop Crowd." In that article, MGA's CEO Isaac Larian is attributed with a statement that Carter Bryant was the creator of Bratz. The article states:

> Isaac Larian, chief executive of MGA, says he had never heard
> of a project similar to the Bratz at Mattel. He says he chose Mr.
> Bryant's idea for Bryant over several others after holding a sort of
> fashion-doll design contest in late 1999.

Zeller Decl. Ex. 118.

At the close of the second hearing, held on May 19, 2008, MGA offered, for the first time, evidence in the form of a time line that showed that a "claim" from a lawsuit filed in Hong Kong by MGA was received by Mattel on September 23, 2003. See Bogorad Supp. Decl. Ex. 145. A copy of court documents from that litigation shows that MGA claimed ownership of Bratz fashion dolls and that, more specifically, at issue were "17 design drawings of various fashion dolls between the years 1998 and 2000." Id. at Ex. 143. Exhibit 143 is a ten-page document captioned as "STATEMENT OF CLAIM" and appears to the Court to be, under Hong Kong law, the equivalent of a complaint. MGA's ownership to the 17 drawings referenced in the "STATEMENT OF CLAIM"

EXHIBIT ___52___

PAGE ___270___

was based on Bryant's creation of the design drawings during a time period that includes his employment at Mattel. Id.

Also at this time, MGA offered a letter, dated October 17, 2003, from Mattel's Hong Kong counsel to Mattel, that discusses the propriety of providing to Mattel certain documents relating to the City World litigation. Within this letter, certain key details of the "STATEMENT OF CLAIM" were referenced. See Supp. Bogorad Ex. 146 ("One of the exhibits referred to in such Affirmation was a set of coloured drawings described as '17 initial concept and design drawings of the Bratz dolls made by Mr. Carter Bryant in the year 2000.'").

After being given an opportunity to respond to this last-minute evidence, Mattel offered as evidence the documents it received on September 23, 2003, and that evidence did not include the document marked as Ex. 143. See Supp. Moore Decl. Ex. A. The documents Mattel received do not include any reference to Carter Bryant or the dates of creation of the 17 drawings. See id. Instead, it consists of a copy of a "writ of summons" in that same litigation.

In responding to this evidence, counsel for MGA first incorrectly contended that the declaration of in-house counsel, Michael Moore, did not deny receiving a copy of the City World claim setting forth this key language. Compare Reply at 1 ("**Mr. Moore, the only witness offered by Mattel, does _not_ deny that Mattel took possession of a copy of the City World claim on or about September 23, 2003.**") (emphasis in the original) with Supp. Moore Decl. ¶ 3 (attaching as Exhibit A all documents received from Mattel's Hong Kong counsel on September 23, 2003; noting that public access to court files in Hong Kong is limited; and verifying that the materials attached as Exhibit A (which does not include the key language regarding Carter Bryant's creation of Bratz drawings) "were the only ones relating to MGA's litigation that Mattel's Hong Kong counsel were allowed to obtain from the Hong Kong court files").

More disturbingly, however, counsel for MGA next lobbed unsubstantiated assaults on Mr. Moore's truthfulness. Counsel states that the documents "appear to have been doctored or manipulated in some fashion." Reply at 2. Counsel does so because the fax itself has an anomalous pagination in the fax header line wherein the first ten pages are numbered "01, 02 . . . 10," and the numbers thereafter are numbered "11/46, 12/46 . . . 46/46." Supp. Moore Ex. A.

This Court has indicated on a number of occasions, most strikingly in connection with its consideration of Mattel's motion to disqualify counsel for MGA, that it will not countenance unsubstantiated dispersions cast upon opposing counsel. Where there is **evidence** of unethical behavior, the Court expects to be made aware of that evidence; where, however, there is mere **speculation** of such behavior, no legitimate purpose is served by its airing.

Nevertheless, focusing on the additional evidence offered by MGA on May 19, 2008, the time line produced in connection with the Simpson-Taylor deposition makes reference to a City World "claim" that was received by Mattel on September 23, 2003. Although this time line stops short of acknowledging that the document entitled "STATEMENT OF CLAIM" was received in

EXHIBIT **52**
PAGE **271**

September, it is nevertheless sufficient to controvert Moore's declaration regarding whether the "STATEMENT OF CLAIM" was in fact received on this date. Moreover, the October 17, 2003, letter raises an inference regarding the full scope of Mattel's pre-November 23, 2003, knowledge of the contents of the "STATEMENT OF CLAIM."

It is uncontroverted that Mattel first received a copy of the Bryant-MGA contract, the effective date of which pre-dated the effective date of Bryant's resignation from Mattel, on November 24, 2003.

Where a plaintiff advances a state-law claim under California law, federal courts apply the California "discovery rule" to determine whether the state-law claim is time-barred. See, e.g., Orkin v. Taylor, 487 F.3d 734, 741 (9th Cir. 2007).

The Court's analysis begins with the unremarkable proposition that "[a] plaintiff must bring a claim within the limitations period after accrual of the cause of action." Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 806 (Cal. 2005) (citation omitted). To apply this unremarkable proposition, however, the Court must determine what the California Supreme Court means by "accrual of the cause of action."

In that regard, the California Supreme Court has stated that, "[g]enerally speaking, a cause of action accrues at the time when the cause of action *is complete with all of its elements*," id. at 807 (emphasis added) (citation omitted), a phrase which itself must be expounded upon further to ascertain its meaning. When applying the discovery rule, those "elements" are not "specific legal element[s] of a particular cause of action"; rather, they are the "'generic' elements of wrongdoing, causation, and harm." Id. (citation omitted).

The definition of those terms gives a more comprehensive understanding to the California Supreme Court's statement that "the 'discovery rule' . . . postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." Id. (citation omitted). In turn, "[a] plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements." Id. (internal quotation marks and citation omitted). Further refined, where a plaintiff has *knowledge* of at least one of the three generic elements, and *suspicion* of the remaining generic elements, the claim has accrued and the limitations period has begun to run. Id. (citation omitted).

This rule is designed to require plaintiffs to diligently investigate their potential claims. See id. at 808. To that end, in the context of a personal injury action, the California Supreme Court has stated that "plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." Id. Of course, this statement must itself be viewed with the definition of "injury" the California Supreme Court considered: "At common law, the term 'injury,' as used in determining the date of accrual of a cause of action, means both a person's physical condition and its negligent cause. . . . Thus, physical injury alone is often insufficient to trigger the statute of limitations." Id. at 808 n.2 (internal quotation marks and citation omitted).

EXHIBIT        52
PAGE          272

This requirement of diligence, stated otherwise, prohibits California plaintiffs from passively waiting for the facts supporting their claim to find them and places on them an affirmative requirement to investigate:

> Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.

Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1111 (Cal.1988).

The Jolly court discussed two examples in explaining this standard. First, it cited to Miller v. Bechtel Corp., 33 Cal.3d 868, 874 (Cal.1983), which held time barred the fraud claim of a plaintiff who had suspicions that the value of her husband's stock was understated at the time of their dissolution agreement, but who failed to assert her claim until years later when the stock was sold. Id. In that case, the plaintiff's lawyer sought information, both before the dissolution and within a few months thereafter, regarding the method by which the stock was valued. Id. at 875. When the response was not forthcoming, the lawyer chose not to pursue this inquiry further, and thus plaintiff was charged with knowledge of the facts the investigation would have uncovered – that the stock was valued by the price attributed to it in the shareholders' agreement rather than by any objective valuation. Id.

Second, the Jolly court cited to Gray v. Reeves, 76 Cal.App.3d 567 (Cal. App.1977), which held that a plaintiff's claim based on his use of a prescription drug arose when the plaintiff understood the nature of his injury (deterioration of the hip socket) and the probable cause thereof (the use of the prescription drug prednisone) as well as the identity of the prescribing doctor and the drug's manufacturer.

Although the discovery rule has been largely developed in tort cases, the rule has also been applied in cases involving contract claims. See e.g., April Enterprises, Inc. v. KTTV, 147 Cal.App.3d 805, 832 (1983) ("Specifically, we hold the discovery rule may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time."); Intermedics, Inc. v. Ventritex, Inc., 775 F.Supp. 1258, 1266-67 (N.D. Cal. 1991).

Thus, California's discovery rule is easily understood in the abstract; moreover, it is often easily applied in particular factual situations. Here, however, this Court's application of the rule in this case is not so clear cut, and the Court must consider the premises underlying the parties' respective analysis of this issue.

In substance, MGA contends that Mattel was on notice as early as February, 2001, of a potential claim that Carter Bryant breached the confidentiality provision of his contract by borrowing from or plagiarizing certain non-public Mattel projects. This date coincides with the display of the Bratz dolls at a New York Toy Fair and "speculation in the media started about

alleged similarities between the BRATZ and Mattel's internal projects." MGA Motion at 18.
Alternatively, MGA posits March 15, 2002, the beginning date of an internal Mattel investigation
into MGA and Larian's involvement in Bryant's creation and development of Bratz, as the date
Mattel's current claims accrued.

Mattel, on the other hand, contends that MGA is essentially arguing that a claim Mattel
chose not to bring – that Bratz infringed on the Mattel projects of Toon Teens and Diva Starz – is
time barred. Mattel points out that it has previously disavowed, and that it continues to disavow,
any intent to assert such a claim. Rather, Mattel contends that it is bringing a different claim, a
claim that Mattel has rights to Bratz pursuant to the Inventions Agreement based on Bryant's
actions during the period of his employment with Mattel.

In determining, under California law, which of the parties' diametrically opposed positions
represent the better approach, the Court is guided by the California Supreme Court case cited
above, Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 806 (Cal. 2005). In that case, a plaintiff,
suffering from complications following gastric bypass surgery, sued for medical malpractice. Id. at
802. During the course of discovery, she learned, through the testimony provided at the
deposition of her surgeon, that she had a potential claim against the manufacturer of a surgical
stapler. Id. at 804. Specifically, the plaintiff's surgeon testified that he had found on previous
occasions that the particular stapler had caused post-surgery leaks. Id. When the plaintiff
amended the complaint to assert a products liability claim, the trial court, on statute of limitations
grounds, sustained a demmurrer without leave to amend, reasoning that "when a plaintiff sues
based on knowledge or suspicion of negligence, . . . the statute of limitations begins to run as to all
defendants, including manufacturers possibly liable under products liability theories." Id.

The Court of Appeal reversed, and the California Supreme Court affirmed the reversal. Id.
at 812, 816. In doing so, the California Supreme Court rejected, as inconsistent with its precedent,
the so-called "the Bristol-Myers Squibb rule that all claims arising from an injury accrue
simultaneously, even if based upon distinct types of wrongdoing, is inconsistent with the generic
elements approach . . . . " Id. at 815.

From this discussion, a parallel begins to emerge that MGA's position is like that of the
demurring defendant who seeks to dismiss a products liability claim on the basis of plaintiff's
discovery of a different claim of medical malpractice, and Mattel's position is like that of the plaintiff
who seeks to assert the that products liability claim. In a sense, however, this analogy goes
nowhere, as MGA's position is that the claim Mattel asserts in the current action is not different
from the potential claim for which it was on notice of in 2001. After all, both would be based on
breach of contract and/or copyright claims, both would involve the same defendants, and both
would result in the same type of injury.

However, the Fox Court's elaboration on the rule it enunciates convinces the Court that
Mattel's position is the stronger one. After discussing the application of its rule in the more narrow
situation presented by the overlap of medical malpractice and products liability claims at issue in
the case before it, the Fox Court explained:

52

274

> More broadly stated, if a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim.

Id. at 813. In analyzing the discovery rule, the term "wrongdoing" is used not in a technical or legal sense, but in its everyday meaning. Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1111 (1988) ("In this context, 'wrong,' 'wrongdoing,' and 'wrongful' are used in their lay understanding.").

Here, on one hand, we have a breach of contract claim or copyright infringement claim based on alleged copying or "borrowing" of Mattel's undisputed rights in Toon Teens and/or Diva Starz to create Bratz that perhaps Mattel was on notice of as early as 2001, and which Mattel admittedly investigated as early as 2002, but upon which Mattel ultimately chose not to file suit. On the other hand, we have the claims asserted here, for breach of contract and copyright infringement, based on Mattel's (disputed) ownership rights to the Bratz drawings pursuant to Bryant's employment agreement with Mattel and in light of the (disputed) fact that Carter Bryant created these works during the period of his employment with Mattel. Applied to the present case, in the Court's view, the question the Court must ask is whether the first type of claim is based on qualitatively different type of "wrongdoing" – as that term might be understood by lay persons – than that which gives rise to the present claims.

Thus framed, the Court considers the two claims: Although they are similar in that they both include the wrongdoing of the failure to keep one's promise to maintain confidentiality, they are qualitatively different, however, in that the former situation involves the alleged taking of rights known to Mattel while the latter involves the alleged concealment of certain creations that belong to Mattel in the first instance in order to facilitate the taking of rights unknown to Mattel. This fundamental difference leads the Court to the conclusion that the latter claims, those asserted here, involve a different element of "wrongdoing" than do the unasserted claims based on Toon Teens and/or Diva Starz.

The burden of proof on the discovery rule issue is on Mattel.[2] Examining the claim Mattel asserts, rather than the claim Mattel chose not to assert, the Court must determine whether Mattel had knowledge of any one of the three generic elements of wrongdoing, causation, or damages, coupled with suspicion of the remaining generic elements. This determination cannot be made on the undisputed record before the Court.

Rather, MGA has raised triable issues of fact precluding summary judgment on the statute of limitations issue. Any of the following could be the date upon which MGA claims against Carter

---

[2] See Fox, 35 Cal.4th at 803 (imposing upon a plaintiff that seeks to take advantage of the discovery rule a requirement that it "plead[] and prove[] that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action).

EXHIBIT ___52___
PAGE ___275___

Bryant accrued: The July 18, 2003, Wall Street Journal article; the September 23, 2003, date of receipt of the City World "claim"; the October 17, 2003, date of counsel's letter to Mattel regarding the City World litigation; or the November 24, 2003, date of receipt of the MGA-Bryant agreement that pre-dated Bryant's resignation of his employment.[3]

The accrual of a copyright claim, as the parties recognize, approximates the state-law standard discussed herein. See Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004) ("Thus, . . . the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances."). Accordingly, the Court makes the same conclusion regarding the accrual date of Mattel's copyright claim against Carter Bryant as it does regarding the accrual date of Bryant's state-law claims.

As stated earlier, although Bryant is no longer a party to this action, the parties recognize, as does the Court, that the timeliness of the claims asserted against Carter Bryant is relevant because of the potential that Mattel's claims against the MGA entities and Isaac Larian may, pursuant to Fed. R. Civ. P. 15(c), relate back to those claims. Mattel embraces the concept of relation back; MGA rejects it.

Although such distinction has not been particularly important at other points in this litigation, the Court has referred to the MGA entities and Isaac Larian collectively as MGA. More specifically, as to Phase 1, there are two separate MGA entities: MGA Entertainment, Inc. and MGA Entertainment HK Limited. There is also MGA's CEO, Isaac Larian. This distinction is important to the Court's analysis of relation back.

MGA Entertainment, Inc., but not Isaac Larian or the other MGA entity, intervened in this action on December 7, 2004. Therefore, based on the status of MGA Entertainment, Inc., as a party, the standard for whether the claims relate back differs from that governing the relation back of claims against MGA Entertainment HK Limited. See infra. As this Court has noted before, the Phase 1 claims against MGA sought to be asserted by Mattel on November 20, 2006, which arise out of the same factual allegations as do the claims asserted by Mattel against Carter Bryant on April 27, 2004, relate back to the date that complaint was filed. See Court's Jan. 12, 2007, Order at 13-15. The Court does not revisit that issue now.

MGA argues that "some courts have dis-allowed 'relation back' of claims against intervening defendants." MGA Opp. at 25 n.21 (emphasis in the original). However, in support of this argument, MGA cites a two-page Texas appellate court decision which does not cite to or interpret Fed. R. Civ. P. 15(c), Davis v. Outdoor Equip. Co., 551 S.W.3d 72, 73 (Tex. Ct. App. 1977), which the Court finds unpersuasive.

As to the new parties sought to be added on November 20, 2006 (MGA Entertainment HK

---

[3]  The analysis is slightly different for the conversion claim. See infra at 9-10.

52
276

Limited and Isaac Larian), MGA challenges the timeliness of the amendment to add these parties based on whether their identities were known to Mattel at an earlier date. The Court has already held that the claims against them relate back to the April, 2004, complaint. See Court's Jan. 12, 2007, Order at 15-16 n.5. The Court will not revisit that issue either.

The Court rejects the proposition, however, that the claims against both MGA entities did not arise until the date of Carter Bryant's deposition. Whatever the date on which the claims against Carter Bryant arose is ultimately found to be, the August 2002 anonymous letter should have given Mattel a suspicion of that MGA Entertainment, Inc., participated in any wrongdoing by Carter Bryant. See Zeller Decl. Ex. 63 (alleging that Carter Bryant "worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls").

The same is not true as to MGA Entertainment HK Limited and as to Isaac Larian, whom the anonymous letter did not implicate. Therefore, the claims against these defendants arose no earlier than November 4, 2004.

Intentional interference with contractual relations is subject to a two-year statute of limitations. MGA contends that the claim accrues upon the breach of contract, and therefore argues that the claim was untimely before it was asserted against Carter Bryant. They make a similar argument regarding Mattel's conversion claim, which carries with it a three-year statute of limitations.

However, the statute of limitations for breach of contract is tolled during a period of fraudulent concealment. Gryczman v. 4550 Pico Partners, Ltd., 107 Cal.App.4th 1, 5 (2003). The rationale for such tolling easily extends to intentional interference with contractual relations claim, which includes the element of a breach of a contract. The limitations period is likewise tolled during a period of fraudulent concealment as to a conversion claim. AmerUS Life Ins. Co. v. Bank of America, 143 Cal.App.4th 631, 639 (2006) ("To the extent our courts have recognized a 'discovery rule' exception to toll the statute, it has only been when the defendant in a conversion action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in violation of his or her fiduciary duty to the plaintiff.") Mattel has raised a triable issue of fact as to whether the evidence of the breach and the tortious interference thereof was fraudulently concealed from them before the July 18, 2003, Wall Street Journal article.

The Court will permit further briefing from the parties on the limited issue of what further conclusions regarding the timeliness of each claim should be drawn as a result of this Order. The parties' simultaneous briefs shall be limited to seven pages in length, and shall not re-argue any point upon which the Court has ruled in this Order or its previous two summary judgment Orders. The briefs shall be e-filed no later than 8:30 a.m., Thursday, May 29, 2008, and a courtesy copy must be provided to chambers at the same time. The parties shall also file, as exhibits thereto, their revised proposed special interrogatories on the issue of statute of limitations.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN

Page 9

Initials of Deputy Clerk: gg
Time: 0/00

EXHIBIT _____52_____

PAGE _____277_____

# EXHIBIT 53

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                          Date:  June 2, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx): MATTEL, INC. v. CARTER BRYANT
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC. v. MATTEL, INC.
===================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes
          Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:     ATTORNEYS PRESENT FOR MATTEL:

None Present                             None Present


ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

PROCEEDINGS:   **FURTHER AND FINAL ORDER RE STATUTE OF LIMITATIONS DEFENSE
               (IN CHAMBERS)**

        In an order dated May 27, 2008, the Court made several rulings regarding the timeliness of
Mattel's claims ("SOL Order"). At that time, the Court invited further, limited briefing from the
parties regarding "what further conclusions regarding the timeliness of each claim should be
drawn" in light of the Court's rulings.  The parties filed further briefing in conformity with the Court's
Order, which the Court has reviewed.

        As a result of the briefing, the Court discusses the following issues: (1) Clarification of the
Court's Ruling Regarding the August 2002 Anonymous Letter; (2) Clarification of the Court's
Ruling Regarding Fraudulent Concealment and Mattel's Claims for Intentional Interference with
Contractual Relations and Conversion; and (3) Accrual of Mattel's Copyright Claim.

MINUTES FORM 90                                              Initials of Deputy Clerk: jh
CIVIL -- GEN                          1

EXHIBIT     53

PAGE     278

### I. Clarification of the Court's Ruling Regarding the August 2002 Anonymous Letter

The parties differ on their interpretation of the Court's holding as to the earliest accrual date of Mattel's claims. Although the Court's SOL Order, read as a whole, is most reasonably interpreted as clarified herein, MGA, quite understandably, interprets the Court's Order in a manner more favorable to its position regarding the statute of limitations defense. Accordingly, the Court clarifies its Order as set forth below.

In a key paragraph of the SOL Order, the Court articulates the four possible accrual dates of those state-law claims, asserted by Mattel against Carter Bryant, that are subject to the discovery rule:[1]

> MGA has raised triable issues of fact precluding summary judgment on the statute of limitations issue. Any of the following could be the date upon which MGA claims against Carter Bryant accrued: The July 18, 2003, Wall Street Journal article; the September 23, 2003, date of receipt of the City World "claim"; the October 17, 2003, date of counsel's letter to Mattel regarding the City World litigation; or the November 24, 2003, date of receipt of the MGA-Bryant agreement that pre-dated Bryant's resignation of his employment.

SOL Order at 7-8. This portion of the Court's Order implicitly rejects MGA's contention that the August, 2002, letter could give rise to Mattel's claims against Bryant.

As set forth in the SOL Order, a claim accrues where a plaintiff has **_knowledge_** of at least one of the three generic elements of wrongdoing, causation, and harm. Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 807 (Cal. 2005) (citation omitted). The SOL Order did not explicitly state, as the Court does now, that there is no evidence that Mattel had any **_knowledge_** of any one of the three generic elements of its claims, and thus no claim accrued, prior to the earliest date identified by the Court, which is July 18, 2003.

MGA's argument that Mattel's claims against Carter Bryant could have accrued in August 2002, is based on a statement made by the Court's regarding when the claims against MGA Entertainment, Inc., accrued:

> The Court rejects the proposition, however, that the claims against both MGA entities did not arise until the date of Carter Bryant's deposition. Whatever the date on which the claims against Carter Bryant arose is ultimately found to be, the August 2002 anonymous letter should have given Mattel a suspicion of that MGA

Entertainment, Inc., participated in any wrongdoing by Carter Bryant. See Zeller Decl. Ex. 63

---

[1]  This portion of the Court's Order does not apply to Mattel's claims for intentional interference with contractual relations and conversion, which are addressed infra, in Section II.

Initials of Deputy Clerk: jh

EXHIBIT ........ **53** ......

PAGE ........ **279** ........

# EXHIBIT 54

$6-18-3$

HCA No. 1883/2003

IN THE HIGH COURT OF THE

HONG KONG SPECIAL ADMINISTRATIVE REGION

COURT OF FIRST INSTANCE

CIVIL ACTION NO. 1883 OF 2003

***************

BETWEEN

MGA ENTERTAINMENT INC.                    1st Plaintiff

MGA ENTERTAINMENT (H.K.) LIMITED          2nd Plaintiff

And

DOUBLE GRAND CORPORATION LIMITED    Defendant

************************

**AFFIRMATION OF LEE SHIU CHEUNG**

************************

1.   I am the Managing Director of MGA (H.K.) Entertainment Limited

1

Confidential - Attorney's Eyes Only

EXHIBIT    54

PAGE    280

MGA 0883920
EX 13691-0001



**Copyright Works**

3

Confidential - Attorney's Eyes Only

EXHIBIT __54__
PAGE __281__

MGA 0883922
EX 13691-0003



9. Now produced and shown to me marked "LSC-3 " are copies of 17 initial concept drawings of the first 4 BRATZ dolls designed by Mr. Bryant pursuant to the Bryant Agreement. Now produced and shown to me marked "LSC-4" is a copy of a sheet of paper setting out the initial concept and idea of the BRATZ dolls by Mr. Bryant. The girls represent best friends in high school who love to trade clothes, shoes and hairdos. Since these accessories are interchangeable, the dolls can look different every day. The success of the BRATZ dolls ensured a lucrative business of supplying accessories to the owners of BRATZ dolls creating a steady stream of revenue.

4

Confidential - Attorney's Eyes Only

EXHIBIT __54__
PAGE __282__

MGA 0883923
EX 13691-0004



11. After making the design drawings exhibited as "LSC-3", wax models of the sculpting of the head, body parts and shoes of the BRATZ dolls were made by Margaret Leheay who is a freelance sculptor in or about winter 2000-2001. These wax models were created by Margaret Leheay using her own independent skill, labour and judgement. Margaret Leheay was commissioned by MGA US to make the said wax models for valuable consideration. At all material times, Margaret Leheay was a resident of and domiciled in the United States of America. It was the understanding and agreement between Margaret Leheay and MGA US that all intellectual property rights including copyright subsisting in the wax models shall belong to MGA US. Now produced and shown to me marked exhibit "LSC-5" being a copy assignment of copyright executed by Margaret Leheay in favour of MGA US.

12. The wax models were then used to make silicon rubber moulds of the head, body parts and shoes of the BRATZ dolls. The silicon rubber moulds were made under commission by Jessie Ramirez under valuable consideration in or about winter 2000-2001. These silicon rubber moulds were created by Jessie Ramirez using her own independent skill, labour and judgement. At all material times, Jessie Ramirez is a resident of and domiciled in the United States of America. It was the understanding and agreement between Jessie Ramirez and MGA US that all intellectual property rights including copyright subsisting in the silicon rubber moulds shall belong to MGA

5

Confidential – Attorney's Eyes Only

EXHIBIT __54__
PAGE __283__

MGA 0883924
EX 13691-0005

US.  During the process of making the silicon rubber moulds the wax models were destroyed.



6

Confidential - Attorney's Eyes Only

EXHIBIT   54
PAGE   284

MGA 0883925
EX 13691-0006



16. Based on and originated from the initial concept drawings of Mr. Bryant, Anna Rhee drew some decoration directions for the facial decorations for different series of dolls. She then created the original deco masters which are hand-painted facial decorations on a rubber head sculpt of a doll.   With the input of Mr. Bryant, Ms. Rhee revised the deco masters a number of times until they are perfected being the final version that were used to serve as the benchmark and template from which the original four different Bratz dolls' individual facial decorations are mass produced by spray masking.   Now produced and shown to me marked "LSC-8" is the pile of decoration directions (inclusive those on the 2001 Fall series), "LSC-9a to d" are the deco masters for the 2001 Fall Series and "LSC-10" is a bundle of documents setting out the various changes during the design process made by Anna Rhee from the initial concept drawings of Mr. Bryant.



Confidential – Attorney's Eyes Only

EXHIBIT __54
PAGE __284

MGA 0883926
EX 13691-0007



20. Insofar as this action is concerned, the Defendant has copied the facial decoration of

8

Confidential – Attorney's Eyes Only

EXHIBIT __54__
PAGE __285__

MGA 0883927
EX 13691-0008

the full and mini versions of Cloe and the head, body parts and shoes of the mini version of Cloe. I crave leave to refer to "LSC-11a" and "LSC-12".



9

EXHIBIT 54
PAGE 286

MGA 0883928
EX 13691-0009



25. Another major source of revenue generated by the BRATZ dolls is income derived from merchandising rights by granting non-exclusive licenses to other companies worldwide. So far, 120 merchandise licence agreements have been granted in respect of a wide range of products including paper napkins, girls clothing, jewelry, bedding, home furnishing, stationery, toiletries, video games, footwear and electrical appliances etc. Pursuant to these licenses, Bratz branded goods are sold in Spain, Portugal, Australia, New Zealand, Finland, Germany, Austria, Switzerland, France, Belgium, Luxembourg, Mexico, Italy, UK, Ireland, Eire, Greece, Norway, Channel Islands, Brazil, Columbia, Greece, Cyprus, Denmark, Iceland, Sweden, Columbia, Venezuela, Turkey, Peru, Israel, all Central America countries, all Carribean Island countries, Dominican Republic, Ecuador, Venezuela, Bolivia, Paraguay, Chile, UAE, Saudi Arabia, Kuwait, Iran, Lebanon, Syria, Jordan, Egypt, Qatar, Oman, Behrain, Yemen and Hong Kong. MGA projects annual licensing revenue of $12 million per year by year-end 2004.



10

Confidential – Attorney's Eyes Only

EXHIBIT **54**
PAGE **287**

MGA 0883929
EX 13691-0010

# WILLIAM W. L. FAN & CO.

**SOLICITORS, AGENTS FOR TRADEMARKS & PATENTS**

Room 507, 5th Floor, Hang Seng Building,
77 Des Voeux Road Central, Hong Kong.
Tel: (852) 2110 2128
Fax: (852) 2111 9336, (852) 2111 9537
E-mail: law@wlfan.com.hk

Partners:
William W. L. FAN A.C.I.S.                                  范偉廉律師
China-Appointed Attesting Officer 中國委托公證人
Tony C. K. CHAU LL.M. LL.B, A.C.I.S, A.C.I.Arb, A.T.I.H.K.   周港祺律師

Consultant:
Bernard S.C. WONG LL.B.                                     黃守智律師

Assistant Solicitors:
Miki Y. Y. LEE LL.B.                                        李琬儀律師
Regina W.L. CHAN LL.B.                                      陳慧齡律師

Our Ref:                    Your Ref:

范偉廉律師事務所

Date:

WF-1921-RC                                    6th May 2003

Double Grand Corporation Limited
Room 501A, Energy Plaza,
92 Granville Road,
Tsimshatsui East, Kowloon.

### BY REGISTERED
### AND CERTIFICATED POSTING

Dear Sirs,

### Re: Copyright Infringement - Bratz Dolls

We act for MGA Entertainment Inc. (formerly known as ABC International Traders, Inc. trading as MGA Entertainment) of 16730 Schoenborn Street, North Hills, CA 91343, USA (hereinafter called "MGA") and its affiliate MGA Entertainment (HK) Limited, a company incorporated in Hong Kong (hereinafter called "MGA HK").

MGA is a US based manufacturer, distributor, seller and licensor of toys and game products. MGA HK acts as MGA's licensee and service provider in Hong Kong, Mainland China and elsewhere in the Far East assisting MGA in designing, producing, manufacturing, licensing and exporting toys and game products in and from the said regions and as MGA's manufacturing licensee.

MGA is the owner of the copyright subsisting in the designs and drawings of its fashion dolls and their accessories under the name of "Bratz" (hereinafter called "Bratz Dolls") and in the packaging design of Bratz Dolls (hereinafter collectively called "the Works").

C:\C-MY DOCUMENTS\Litigation\WF-1921-MGA\Cease & Desist-Double Grand.doc

In association with Ho Wong & Wong, Solicitors & Notaries

Confidential - Attorney's Eyes Only

EXHIBIT __54__
PAGE __288__

MGA 0884060
EX 13691-0141

# WILLIAM W. L. FAN & CO.

SOLICITORS, AGENTS FOR TRADEMARKS & PATENTS

Room 507, 5th Floor, Hang Seng Building,
77 Des Voeux Road Central, Hong Kong.
Tel: (852) 2110 2128
Fax: (852) 2111 9336, (852) 2111 9337
E-mail: law@wlfan.com.hk

Partners:
William W. L. FAN A.C.I.S.                                    范偉廉律師
   Chief-Appointed Attesting Officer 中國委托公証人
Tony C. K. CHAU LL.M. (LB. A.C.I.S. A.C.I.Arb. A.T.I.H.L.      周滋祖律師

Consultant:
Bernard S.C. WONG LL.B.                                       黃守智律師

Assistant Solicitors:
Miki Y. Y. LEE LL.B.                                          李婉儀律師
Rejina W.L. CHAN LL.B.                                        陳慧齡律師

Our Ref:                          Your Ref:                          Date:

WF-1921-RC                                                      6th May 2003

- 2 -

It has come to our clients' attention that you have been manufacturing, offering for sale, selling, advertising and / or otherwise dealing with series of dolls called "Trendy Teenz Dolls", "Mini Trendy Teenz Dolls", "Rocker Headz Fashion Doll Bobble Pen" and "Rocker Headz Bobblehead Fashion Dolls" (collectively "the Infringing Articles"), the design of which are substantially similar to MGA's Bratz Dolls and infringing MGA's copyright in the designs and drawings of the Bratz Dolls. A picture on each of the Infringing Articles is enclosed herewith and marked "A".

Your aforesaid acts and dealings with the Infringing Articles which are identical reproduction or reproduction of a substantial part of our clients' Bratz Dolls and their accessories clearly amounts to blatant infringement of the copyright of the Works owned by our clients.

We believe it has already come to your knowledge that our client has successfully obtained from Toy Depot Limited, Mr. Alan Brown and Mr. Connolly, also dealers of the Infringing Articles, the purchase orders, invoices, packing lists and bills of lading evidencing their dealings and your dealings in the Trendy Teenz and Mini Trendy Teenz Dolls. We also have in hand evidence of your offer for sale of the Infringing Articles.

We have advised our clients that they are entitled to seek a High Court injunction, delivery up, discovery, damages and costs against you by way of legal action pursuant to the aforesaid evidence as they successfully did against the manufacturers and distributors of the infringing products in Hong Kong, the UK and other parts of Europe.

In the premises, we are instructed to give you notice and demand, which we hereby do, that unless you shall confirm in writing within seven (7) days from the date hereof, by signing and returning to us a copy of the enclosed letter of undertaking, legal proceedings in respect thereof will definitely be initiated against you, without further notice.

C:\C-MY DOCUMENTS\Litigation\WF-1921-MGA\Cease & Desist-Double Grand.doc

In association with Ho Wong & Wong, Solicitors & Notaries

Confidential - Attorney's Eyes Only

EXHIBIT 54
PAGE 289

MGA 0884061
EX 13691-0142

# WILLIAM W. L. FAN & CO.

**SOLICITORS, AGENTS FOR TRADEMARKS & PATENTS**

Room 507, 5th Floor, Hang Seng Building.
77 Des Voeux Road Central, Hong Kong.
Tel: (852) 2110 2128
Fax: (852) 2111 9336, (852) 2111 9337
E-mail: law@wlfan.com.hk

Partners:
William W. L. FAN A.C.I.S.                            范偉廉律師
Court-Appointed Attesting Officer 十國委任公証人
Tony C.K. CHAU LL.M, LL.B, A.C.I.S, A.C.I.Arb, A.T.I.H.K.   周進根律師

Consultant:
Bernard S.C. WONG LL.B.                           黃守智律師

Assistant Solicitors:
Miki Y. Y. LEE LL.B.                               李婉儀律師
Rejina W.L. CHAN LL.B.                            陳惠玲律師
Our Ref:                 Your Ref:                          Date:

WF-1921-RC                                          6ᵗʰ May 2003

- 3 -

Please also be informed that Mr. Alan Brown, Mr. Connolly, Mr. YU
Yiu Tong and SHIU Chi Kong have already agreed to enter into similar
undertaking in favour of our clients in personal capacities. Our clients are
further given to understand from Mr. Connolly that you have, upon seeking
legal advice, indicated to him that you would give an undertaking to ours. In
the premises, we hope you would co-operate with our clients and accede to
our clients' demand herein and entering into the requested undertaking to
avoid any unnecessary litigation.

Yours faithfully,

William W. L. Fan & Co.

WF/RC
Encl.
c.c. client

C:\C-MY DOCUMENTS\Litigation\WF-1921-MGA\Cease & Desist-Double Grand.doc

In association with Ho Wong & Wong, Solicitors & Notaries

Confidential - Attorney's Eyes Only

EXHIBIT ___54___
PAGE ___290___

MGA 0884062
EX 13691-0143

7.



Confidential - Attorney's Eyes Only

EXHIBIT   54
PAGE   291

MGA 0884063
EX 13691-0144



Confidential - Attorney's Eyes Only

EXHIBIT __54__
292

MGA 0884064
EX 13691-0145

# EXHIBIT 55

6·13·03

PUBLIC NOTARIES
TRANSLATIONS OF LANGUAGES

ALBERT BUILDINGS
49 QUEEN VICTORIA STREET
LONDON      EC4N 4SA

Telephone
(020) · 7329 2020/7329 2022

International
(+44) · 20 · 7329 2020/7329 2022

Facsimile
(020) · 7329 0025

International
(+44) · 20 · 7329 0025

E-Mail: jsbarrington.email@BTinternet.com
BARRINGTON W. HOOKE, LL.D.
Notary Public

Mobile
(07803) · 47 16 48

TO ALL TO WHOM  THESE  PRESENTS  SHALL COME, I,
BARRINGTON  WILLIAM  HOOKE  , NOTARY PUBLIC of the
CITY of LONDON, by Royal Authority duly admitted and sworn
practising in the said City, Do  Hereby Certify that on the day of the date
hereof before me personally came and appeared, RAYMOND DAVID
BLACK, the Deponent named and described in the Affidavit hereunto
annexed, who by solemn Oath which the said Deponent then made
before me in due form of law, did depose testify and declare to be true
the several matters and things mentioned and contained in the said
annexed Affidavit.

and have caused the said Affidavit to be hereunto annexed together
with exhibits "RDB1" to "RDB13".

DATED in LONDON the thirteenth day of June in the Year of Our
Lord, Two thousand and three.



NOTARY PUBLIC. LONDON.
MY COMMISSION IS FOR LIFE.

Confidential - Attorney's Eyes Only

EXHIBIT ___55___
PAGE ___293___

MGA 0885135

EX 13561-0001

HCA No. 1883/2003

IN THE HIGH COURT OF THE

HONG KONG SPECIAL ADMINISTRATIVE REGION

COURT OF FIRST INSTANCE

CIVIL ACTION NO. 1883 OF 2003

**\*\*\*\*\*\*\*\*\*\*\*\*\*\***

BETWEEN

MGA ENTERTAINMENT INC.                    1st Plaintiff

MGA ENTERTAINMENT (HK) LIMITED            2nd Plaintiff

                    And

DOUBLE GRAND CORPORATION LIMITED   Defendant

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**AFFIDAVIT OF RAYMOND DAVID BLACK**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***



1.  I am a partner and Head of the Contentious Intellectual Property Group of SJ Berwin, the solicitors for MGA Entertainment Inc.

292271.1                                    1

Confidential - Attorney's Eyes Only

EXHIBIT ___55___
PAGE ___294___

MGA 0885136

EX 13561-0002

IN THE HIGH COURT OF THE

HONG KONG SPECIAL ADMINISTRATIVE REGION

COURT OF FIRST INSTANCE

CIVIL ACTION NO. 1883 OF 2003

∗∗∗∗∗∗∗∗∗∗∗∗∗

BETWEEN

MGA ENTERTAINMENT INC.                          1st Plaintiff

MGA ENTERTAINMENT (HK) LIMITED                  2nd Plaintiff

And

DOUBLE GRAND CORPORATION LIMITED        Defendant

∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗

This is the marked exhibit referred to in the Affidavit of Raymond David Black dated the 13 day of June 2003.

| Exhibit Ref | Date | Description | Page No. |
|---|---|---|---|
| RDB2 | 7 March 2003 | Copy of cease and desist letter sent by SJ Berwin to Toy Depot | 2 |

Before me,

M17447.49/LT:292261.1/aaad

Confidential - Attorney's Eyes Only

EXHIBIT ___55___
PAGE ___295___

MGA 0885155

EX 13561-0021

| | | | |
|---|---|---|---|
| Date | 7 March 2003 | | By Registered Post |
| Our ref | 245/245/A17447.1 | | |
| Your ref | . | | |
| Partner | Ray Black | | |
| Email | ray.black@sjberwin.com | | |

Dear Sirs

**"BRATZ" dolls and "MINI TRENDY TEENZ" dolls**

We have been instructed by MGA Entertainment, Inc. ("MGA"). MGA is the worldwide licensor of the "BRATZ" range of dolls, and has designated a licensee of such dolls in the United Kingdom. The "BRATZ" range of dolls includes the mini "BRATZ" doll and a representation of this doll is enclosed.

Our client's licensee has recently purchased a doll called MINI TRENDY TEENZ from Fareham Toys, 79 West St, Fareham, PO16 0AP. A coloured representation of this doll marked TD 1 is enclosed together with a copy of the receipt. We note that on the back of the box there is a statement that this doll is "Exclusive to: Toy Depot Ltd 52 Yester Road, BR7 5HR". Our client therefore assumes that you are either the manufacturer and/or importer of this particular product.

Our client is the proprietor of registered designs, nos. 2103577, 2103578, 2103579 and 2103580 (the "Registered Designs"), copies of which are enclosed. Our client therefore enjoys exclusive rights over the shape, configuration, pattern and ornament of the Registered Designs and can prevent third parties from using a design with the same overall impression on the informed user. We consider that the MINI TRENDY TEENZ dolls infringe such rights, due to their overwhelming similarity to the Designs, (and consequently any offer, exposure for sale or distribution of these MINI TRENDY TEENZ dolls by you would constitute an infringement of our client's registered design rights). In particular, we draw your attention to the following, which are identical or extremely similar in both the Registered Designs and MINI TRENDY TEENZ dolls:

(a)     The shape of each doll's head;

(b)     The size of each doll's head in comparison with the remainder of the doll;

(c)     The shape and size of the nose;

(d)     the shape of the eyes;

(e)     the shape of the lips; and

(f)     the unusual size of each doll's feet in comparison with the remainder of the doll.

We also consider that the MINI TRENDY TEENZ dolls infringe our client's copyright in the surface decoration of the BRATZ dolls. We enclose coloured copies of the original drawings and would draw your attention in particular to:

222 Gray's Inn Road
London WC1X 8XF
T +44 (0)20 7533 2222
F +44 (0)20 7533 2000
E info@sjberwin.com
www.sjberwin.com
DX 255 London

SJ Berwin is regulated by the Law Society. A list of names of partners and their professional qualifications is open to inspection at the above office. The partners are either solicitors or registered foreign lawyers.

LT:281034.1/paac

| Berlin | Brussels | Frankfurt | London | Madrid | Munich | Paris |
|---|---|---|---|---|---|---|

Confidential - Attorney's Eyes Only

EXHIBIT   55
PAGE   296

MGA 0885156

EX 13561-0022

(a)   the eyelashes of both BRATZ and MINI TRENDY TEENZ dolls, in particular the three distinct lashes above the eye;

(b)   the two-tone eye shadow used on both BRATZ and MINI TRENDY TEENZ dolls, both in style, shape and colour;

(c)   the shape of the eyes after being "made up" with mascara and eye shadow, of BRATZ and MINI TRENDY TEENZ dolls; and

(d)   the shape of the lips when painted with "lipstick" of BRATZ and MINI TRENDY TEENZ dolls, and the use of a lipliner (slightly darker in colour than the colour used on the lips) on both dolls;

Any issuing to the public of the MINI TRENDY TEENZ dolls by you constitutes an infringement of our client's copyright in the surface decoration under s16(2) of the Copyright Designs and Patents Act 1988.



We should point out that our client is willing to take whatever action is necessary to protect its rights. Our client has already taken action against other manufacturers and distributors which have infringed their rights in the Bratz dolls. For instance, our client has obtained an interim injunction against the manufacturer of a similar doll called Funky Tweenz in Hong Kong (a copy of the order is enclosed). Following the interim injunction the manufacturer agreed to change the design of its product. Our client has also taken action against two distributors in the UK, being LB Group Limited and David Halsall International Limited, who agreed to settle our client's claims and have paid significant amounts to our client by way of damages and a contribution to the legal costs.

In light of the information contained in this letter, we are instructed to demand that you enter into the undertakings enclosed in this letter **by close of business on Friday 14 March 2003.** Should the undertakings not be provided within the requisite time frame, our client reserves the right to initiate proceedings to prevent any dealings by you in the MINI TRENDY TEENZ dolls, and to seek all appropriate relief, including injunctive relief, damages and legal costs. In the meantime, our client expressly reserves its rights.

Confidential - Attorney's Eyes Only

EXHIBIT     55
PAGE       297

MGA 0885157

EX 13561-0023



Confidential - Attorney's Eyes Only

EXHIBIT ___55___
PAGE ___298___

MGA 0885258

EX 13561-0124



Confidential - Attorney's Eyes Only

EXHIBIT ___55___
PAGE ___299___

MGA 0885328

EX 13561-0194