# EXHIBIT 1

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                      Date: December 3, 2008
Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

         James Holmes                           None Present
         Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                           None Present

PROCEEDINGS:

**ORDER FINDING IN FAVOR OF MATTEL AS TO THE MGA PARTIES' AFFIRMATIVE DEFENSES**

**ORDER GRANTING MATTEL'S MOTION FOR DECLARATORY JUDGMENT (DOCKET #4303)**

**ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND § 17200 INJUNCTIVE RELIEF (DOCKET #4305)**

**ORDER GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION (DOCKET #4306)**

**ORDER DENYING AS MOOT MOTION TO STRIKE PORTIONS OF HUTNYAN DECLARATIONS AND EXHIBITS THERETO (DOCKET #4351)**

**ORDER DENYING MOTION TO STRIKE THE PROCTOR, KEISER, AND HOLLANDER DECLARATIONS (DOCKET #4352)**

**ORDER DENYING AS MOOT MOTION TO STRIKE MEYER DECLARATION (DOCKET #4377)**

**ORDER STAYING COURT'S ORDER PENDING CONSIDERATION OF THE PARTIES' POST-**

EXHIBIT ___1___
PAGE ___8___

**TRIAL MOTIONS**

**ORDER SETTING FORTH FURTHER BRIEFING SCHEDULE**

**ORDER REGARDING DISCOVERY MASTER PROPOSALS FOR PHASE 2**

**ORDER REGARDING JOINTLY LODGED LAPTOP COMPUTER**

**ORDER REGARDING SERVICE OF PERMANENT INJUNCTION**

**FILED CONCURRENTLY HEREWITH:**

**(1) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING DECLARATORY JUDGMENT**

**(2) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING LIABILITY AND INJUNCTIVE RELIEF PURSUANT TO CAL. BUS. & PROF. CODE § 17200**

**(3) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION**

These matters were heard on November 10, 2008, after extensive briefing by the parties. After a two-phase jury trial, the Court considers certain equitable issues (referred to as Phase 1C of the trial) and enters the following Order. Filed concurrently herewith are: (1) Mattel's Proposed Order (as modified by the Court) Granting Declaratory Judgment; (2) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Constructive Trust and for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Prof. Code § 17200; and (3) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Permanent Injunction.

In reaching the rulings set forth herein, the Court has considered the parties' briefs and exhibits submitted during Phase 1C of the trial, the arguments of counsel, as well as the entire record (including the evidence properly submitted in Phase 1A and Phase 1B of the trial) and its previous Orders.

The Court refers collectively to all defendants herein, including MGA CEO Isaac Larian ("Larian"), as "the MGA parties". MGA Entertainment, Inc., is referred to as "MGAE".

The Court has carefully and deliberately considered the parties' well-presented legal and equitable arguments, authorities, and evidence concerning the motions identified above. In its final analysis, the Court finds, as did the jury, that the preponderance of evidence establishes that Carter Bryant ("Bryant") created and developed the name, the concept, and, together with Margaret Leahy, the prototypical sculpt for the hugely-successful Bratz brand of female fashion

EXHIBIT ___1___
PAGE ___9___

dolls while working as an employee of Mattel and while bound by the terms of an Inventions Agreement, which provided that all rights to such property, and the property itself, belong to Mattel. Moreover, the Court further finds, as did the jury, that the preponderance of the evidence establishes that Isaac Larian and MGAE intentionally interfered with Bryant's contractual relations with Mattel, aided and abetted Bryant's breach of fiduciary duty to Mattel, aided and abetted Bryant's breach of his duty of loyalty to Mattel, and unlawfully converted certain property of Mattel. Finally, the Court finds, as did the jury, that the preponderance of the evidence establishes that the MGA parties, in further developing, producing, and marketing its Bratz brand of female fashion dolls, are liable to Mattel for copyright infringement.

## I. The MGA Parties' Affirmative Defenses

Through its "Statement of Position Regarding Phase 1C Issues" (docket #4308), the MGA parties seek the Court's verdict in their favor as to their affirmative defenses of laches, estoppel, and waiver. As set forth below, the Court rules in favor of Mattel, and against the MGA parties as to these three remaining affirmative defenses.[1]

### A. Laches

Laches is an equitable defense that may bar a claim where a defendant establishes "(1) lack of diligence by the plaintiff, and (2) prejudice to the defendant." Grand Canyon Trust v. Tucson Elec. Power Co., 391 F.3d 979, 987 (9th Cir. 2004). The MGA parties establish neither element.

Because the Court has already found that all the claims asserted against the MGA parties were filed within the applicable limitations periods, the Court starts with the presumption that laches is inapplicable. Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002).

Mattel has not delayed in bringing its claims against the MGA parties. The Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed approximately a year later on November 4, 2004. MGAE intervened in Mattel's suit against Bryant approximately one month later on December 7, 2004. See Dec. 7, 2004, Stip. & Order (04-9059 docket #36) ("MGA[] believes . . . that it has a significantly protectable interest relating to the subject matter of the action, . . . and that MGA's interest is not adequately represented by the existing parties."). Thereafter, the parties briefed Mattel's motion to remand (filed on December 1, 2004, and denied on March 4, 2005), before a stay was entered in the case on May 20, 2005, pending the Ninth Circuit's consideration of an

---

[1] By advancing only the affirmative defenses of laches, estoppel, and waiver in their Phase 1C brief, the MGA parties have implicitly waived the right to pursue any other affirmative defenses that they have not already expressly waived.

EXHIBIT ___1___
PAGE ___10___

interlocutory appeal.  After MGAE's intervention and before the stay was entered, the parties, including MGAE, engaged in discovery, and the Court considered certain discovery motions, including a motion to compel the deposition of Isaac Larian filed on March 17, 2005.  The stay remained in place until after the Ninth Circuit affirmed the Court's denial of the motion to remand; it was lifted on May 16, 2006.  Six months later, on November 17, 2006, Mattel sought leave to file its claims against the MGA parties.  On this record, the Court finds no lack of diligence by Mattel.

Nor have the MGA parties shown they suffered resulting prejudice.  MGAE was permitted to intervene in the lawsuit filed by Mattel against Carter Bryant only one month after it became evident that its rights could potentially be affected, and it did so with the express purpose of protecting its own rights.  The other MGA parties have not shown that they suffered any prejudice unique to them or that the intervention by MGAE was not designed to protect their rights.

Moreover, the record does not support the evidentiary prejudice claimed by the MGA parties, and the record is devoid of any expectation-based prejudice (i.e., evidence of what MGA would have done differently had the claims against them been asserted sooner).  Indeed, to the contrary, the record reveals that the MGA entities have continued to promote (and profit from) the Bratz brand during the entire pendency of the current litigation.

Because of the presumption that laches will not bar timely claims, and because the Court finds that the MGA parties have failed to establish either element of laches, the Court finds in favor of Mattel as to the affirmative defense of laches.

## B.    Estoppel

For equitable estoppel to preclude Mattel's claims here, the MGA parties must establish four elements:

> (1) [T]he party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

Strong v. County of Santa Cruz, 15 Cal.3d 720, 725 (1975).

The MGA parties cannot establish the first element because, as noted above, the Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed almost a year later.

The MGA parties have produced no evidence that Mattel intended them to act upon any apparent intention to refrain from asserting any claims against them.  To the contrary, MGAE quickly intervened in Mattel's suit against Bryant to protect its interests.

EXHIBIT ___1___
PAGE ___11___

Moreover, the MGA parties had no basis upon which to rely on Mattel's conduct. As found by the jury, they had superior knowledge regarding Bryant's creation of the Bratz drawings (and the timing of that creation).

Because the Court finds that the MGA parties cannot establish all the elements of estoppel, the Court finds in favor of Mattel as to the affirmative defense of estoppel.

### C.    Waiver

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." United States v. King Features Entertainment, Inc., 843 F.2d 394, 399 (1988).

Here, the MGA parties contend that Mattel's tolerance of its employees' "moonlighting" for its competitors was so widespread as to constitute such a relinquishment. Although such implied waivers may be found where a plaintiff's conduct "is so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished," Medico-Dental etc. Co. v. Horton & Converse, 21 Cal.2d 411, 432 (1942), no such conduct is present here.

No evidence of record suggests that Mattel tolerated the type of conduct in which Bryant engaged. The Court has previously addressed, and will not belabor here, the distinctions to be made between the limited evidence regarding "moonlighting" in the record and the conduct in which Bryant engaged. The evidence establishes, and the jury found, that while employed by Mattel as a fashion designer, Bryant preliminarily developed designs for and pitched a line of fashion dolls to Mattel's direct competitor. There is no evidence that Mattel has ever tolerated this type of conduct. Instead, several witness testified to their belief that such conduct would result in immediate termination of the offending employees. Indeed, the record is replete with details of the steps taken by Bryant, the MGA parties, and MGA employees to conceal the extent of Bryant's involvement in the Bratz project while he was employed by Mattel.

The Court finds in favor of Mattel as to the affirmative defense of waiver.

### II.  Declaratory Relief Motion (docket #4303)

In its motion for declaratory judgment, Mattel seeks, pursuant to its thirteenth cause of action, a declaration of its rights (and the MGA parties' lack of rights) regarding the Bratz-related works, including certain drawings, sculpts, and ideas.[2] Mattel also seeks imposition of a

---

[2]  The parties and the Court are all equally aware that ideas are not copyrightable. However, they are, as set forth in the Court's summary judgment order, assignable under California state law. As noted in the Court's summary judgment order, such an assignment was made by Bryant to Mattel.

MINUTES FORM 90                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                        5

EXHIBIT ___1___
PAGE ___12___

constructive trust as to MGA's copyright registrations in certain Bratz drawings.  As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Declaratory Judgment (docket #4303).

In opposition, the MGA parties contend that the relief sought by Mattel should not be granted because it is preempted by the Copyright Act.  The Court rejects this argument.  The Court's ruling regarding preemption is set forth in the Court's summary judgment order, which the Court does not here modify.

Declaratory relief is generally granted "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  Bilbrey by Bilbrey v. Brown, 738 F.2d 1462, 1470 (1984).

Here, considering this legal standard and based on the relationship among the parties, the jury's verdicts, the Court's previous Orders, and the entire record, the Court finds that the declaratory relief sought by Mattel is appropriate.[3]  Concurrently herewith, the Court has entered, as modified, Mattel's proposed order for declaratory relief.

### III.  Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4505)

As set forth more fully in its Motion, Mattel seeks, pursuant to California state law, imposition of a constructive trust over the trademarks "Bratz" and "Jade."  Mattel also seeks, pursuant to its twelfth cause of action, a finding that the MGA parties violated Cal. Bus. & Prof. Code § 17200 on the basis of the jury's findings that the MGA parties converted Mattel's property, tortiously interfered by Mattel's contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty.  Pursuant to this finding, and in addition to imposition of a constructive trust as to the Bratz and Jade marks, Mattel seeks an injunction prohibiting the MGA parties from using these marks.  As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4305).

### A.    Constructive Trust

Cal. Civ. Code § 2223 provides that "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner."  Cal. Civ. Code § 2224 explicitly addresses things gained by wrongful acts:  "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."  The parties agree on the resulting elements, which may be stated as

---

[3]  The appropriateness of the constructive trust remedy is discussed below, in a separate section, but applies equally here.

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

EXHIBIT     1
PAGE        13

follows: "(1) the existence of a *res* (property or some interest in property); (2) the right of a complaining party to that *res*; and (3) some wrongful acquisition or detention of the *res* by another party who is not entitled to it. <u>Communist Party v. 522 Valencia, Inc.</u>, 35 Cal.App.4th 980, 990 (1995).

Significantly, because the purpose of a constructive trust is to prevent unjust enrichment, enhancement of value is given to the beneficiary of the constructive trust. <u>Haskel Engineering & Supply Co. v. Hartford Acc. & Indem. Co.</u>, 78 Cal.App.3d 371, 375 (1978)

Here, the jury found that the MGA parties wrongfully acquired the idea for the name "Bratz" along with the idea and preliminary drawings for a line of fashion dolls. The same is true for the one Bratz character who retained the name given her by Carter Bryant: "Jade."[4] In addition to wrongfully acquiring them, the MGA parties continue to wrongfully retain them. The MGA parties enhanced the value of the names by acquiring trademark rights to them. California law requires, in this instance, that a constructive trust be imposed as to these marks. Mattel is the beneficiary of the constructive trust and MGA's trademarks in "Bratz" and "Jade" inure to Mattel's benefit.

In making this conclusion, the Court has considered, and rejected, the MGA parties' argument that Mattel has disavowed an intention to seek this remedy or waited too long to seek it. Mattel has conceded that it is not asserting a trademark infringement claim. It cannot, because it has not used the relevant marks in commerce, and one must do so to acquire trademark rights. <u>Conversive, Inc. v. Conversagent, Inc.</u>, 433 F.Supp.2d 1079, 1089 (C.D. Cal. 2006) (citing <u>Brookfield Communications, Inc. v. West Coast Entertainment Corp.</u>, 174 F.3d 1036, 1046 (9th Cir. 1999)). However, Mattel has not disavowed its intent to seek a constructive trust over the marks that were created by Bryant, with rights thereto acquired by the MGA parties through registration and use in commerce. This remedy is well within the scope of relief that is sought in Mattel's second amended answer and counterclaims, <u>see</u> SAAC at 73 ¶ 9 (Prayer for Relief) (seeking "imposition of a constructive trust over Bratz, including without limitations registrations and applications for registrations relating thereto made or filed by [the MGA parties] and third parties, and all profits, monies, royalties and any other benefits derived or obtained from [the MGA parties'] exercise of ownership, use, sale, distribution and licensing of Bratz"), and the Court has rejected all timeliness challenges to Mattel's claims.

## B.   § 17200 Violation

The record reveals sufficient evidence of injury-in-fact to Mattel to confer standing upon it to assert its § 17200 claim. Specifically, as testified to by Mattel officers (and acknowledged by MGAE officers and attorneys), Mattel has suffered lost market share as a result of the sales of the Bratz dolls. Moreover, the jury was instructed that "harm" to Mattel was a necessary element of a number of state law claims. <u>See</u> Final Jury Instructions as Given [Phase 1A], docket #4115, at

---

[4]   Bryant's other characters were re-named before they were marketed:  Zoe became the now-familiar Cloe, Hallidae became Sasha, and Lupe became Yasmin.

EXHIBIT ___1___
PAGE ___14___

Instruction Nos. 22, 25-27, and 29 (intentional interference with contractual relations, aiding and abetting breaches of fiduciary duty and the duty of loyalty, and conversion). The jury's finding in favor of Mattel as to those claims necessarily implies a factual finding by the jury as to the specified element of harm to Mattel and, as explained in more detail below, the Court is bound by that implicit factual finding. Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (finding that by awarding damages on a specific claim, the jury implicitly found that the plaintiff had proven one particular element of that claim).

As set forth in a previous Order, this claim is only partially preempted by the Copyright Act. The preempted portion of Mattel's § 17200 claim did not survive summary judgment and is not at issue here.

Based on the jury's findings that the MGA parties converted Mattel's property, tortiously interfered with its contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty, the Court finds that the MGA parties also violated Cal. Bus. & Prof. Code § 17200.

### C.    § 17200 Injunctive Relief

Where a Court finds violation of § 17200, it has broad powers to shape appropriate injunctive relief:

> Any person who . . . has engaged . . . in unfair competition may be enjoined in any court of competent jurisdiction.  The court may make such orders or judgments, . . . as may be necessary to prevent the use or employment by any person of any practice which [either] constitutes unfair competition, . . . or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

Cal. Bus. & Prof. § 17203.

The injunction sought by Mattel's proposed order (as modified by the Court) is necessary to restore to Mattel the property acquired as a result of the MGA parties' unfair competition.

For the reasons set forth above, concurrently herewith, the Court has entered, as modified, Mattel's proposed order for constructive trust and § 17200 injunctive relief.

### IV.  Motion for Permanent Injunction (docket #4306)

### A.    Facts Supporting Injunctive Relief

The present motions, to varying degrees, implicate the question of to what extent a Court trying equitable claims is bound by a jury's factual findings related to the same underlying conduct.

EXHIBIT ___1___
PAGE ___15___

The question comes into sharpest focus in Mattel's Motion for Permanent Injunction.

"[W]here legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations." Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (internal quotation marks and citation omitted). In the absence of an express finding, a court must determine whether implicit factual determinations by the jury can be inferred, and should consult the jury's verdict and the jury instructions to make this determination. Id. (finding, based on an examination of the jury instructions and the jury's verdict awarding damages as to a specific claim, that the jury implicitly found that plaintiff had proven one particular element of that claim).

The Court is certainly aware that the jury returned an award of damages that was far less than that sought by Mattel. Moreover, the Court is aware that a controversy exists as to the actual amount of the jury's verdict. See Mattel's Submission Regarding Email from Juror No. 7 and Request to Recall the Jury, docket #4288 (denied by Order dated September 3, 2008, docket #4295).

MGA has argued that the jury has found that only the so-called "first generation" Bratz dolls were infringing. The jury made no express finding on this issue; the general verdict form they were provided did not request such a detailed finding. Thus, in accordance with Gates, the Court looks to the jury instructions to determine any implicit findings.

The jury was instructed that "Mattel is entitled to recover any profits attributed to the infringement." MGA attempts to equate the $10 million figure awarded by the jury for copyright infringement to the amount of profits related to the first generation Bratz dolls. The difficulty with this "equation" is that it is woefully unbalanced. To be sure, MGA's damages expert presented evidence that the first generation Bratz dolls netted approximately $4 million in profits; had the jury awarded this amount as copyright damages, then the Court might be persuaded that the jury implicitly found that the infringement was limited to the first generation Bratz dolls. But that is not the case. The factual finding advanced by MGA cannot be inferred from the jury award.

In making this ruling, the Court is mindful of the jury's note that queried whether they could find infringement as to the first generation dolls and no other dolls. The Court, without objection from counsel, answered that question affirmatively. Although this note reveals that the jury considered limiting their finding of infringement to the first generation, it does not reveal that they ultimately chose that conclusion. Again, had the jury awarded an amount equal to the amount of profits generated by the first generation Bratz dolls, the Court would find, based on the award and the jury's note, that the jury implicitly found infringement as to the first generation Bratz dolls only.

Alternatively, counsel posited at oral argument, that the jury found that a large portion of the

Initials of Deputy Clerk: jh

EXHIBIT ___1___
PAGE ___16___

Bratz dolls infringed Mattel's copyrights, but only in very minute ways.[5]  Counsel likened the jury's damage award to a rug that, no matter which way one moved it, simply would not cover the floor.  See Nov. 10, 2008, Tr. at 100-101.  Counsel explained that the jury's findings led to one conclusion or the other and, regardless of which conclusion was chosen, the jury's finding did not support an injunction:

> The rug is too small for an injunction, regardless of how you allocate that money.  You either come up with a vanishingly small subset of infringing products, or you come up with a vanishingly small percentage of infringement by all of the products.  And the jury has put that cap for us.

Id.  Although colorful, counsel's metaphor is not helpful.  Assuming that the Court would be bound by a jury's factual finding in a case where only two possible inferences -- both of which would lead the Court to the same conclusion -- were possible, this is not that case.

Where a jury returns a monetary award based on a particular piece of evidence such as an expert report, the Court will infer the factual findings that necessarily flow from it.  But where, as here, the Court and the parties are left to hazard various guesses as to the jury's intentions, the Court can make no principled inferences and must therefore engage in its own fact-finding.[6]

The Court has carefully examined each of the exhibits attached to the proposed preliminary injunction, as well as the actual exhibits being stored in Courtroom Four of the U.S. Courthouse in Riverside, and finds that the dolls depicted in Exs. 3 and 4, and the products depicted in Exs. 5 and 6, are, pursuant to the standard set forth in the Court's Orders dated July 24, 2008, and August 15, 2008, substantially similar to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2.  In doing so, the Court has first examined the specific expressive elements of the works at issue and has compared them to those found in the exhibits referenced

---

[5]  This argument was not raised in the opposition papers filed by the MGA parties, and is rejected for that reason as well.  See Opp. at 21 ("Here, the circumstances clearly show that the only reasonable conclusion to draw is that the jury's infringement finding was limited to a small universe of products, specifically the first generation Bratz dolls as clothed and packaged.") (emphasis added).

[6]  The MGA parties hazard such a guess in their opposition, wherein they attempt to explain how, in the jury's mind, $4 million in first-generation profits could equate to $10 million total copyright infringement award:  "The jury's decision to award $6 million against MGA[E] (and $10 million total) rather than simply the $4 million] argued by MGA as profits for the first generation may be due to the jury believing that MGA's proffer of $4 million in profits on nearly $80 million revenue was a bit low."  Opp. at 21 n.30.  This guessing game illustrates why no factual findings can be inferred from the jury's copyright infringement award and why the Court is obligated to make its own factual findings.

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

EXHIBIT ___1___
PAGE ___17___

above, and the Court has then further examined the overall similarity of the expression in various works from the perspective of the ordinary observer.  Although the Court recognizes that there are differences between the works, the Court ultimately finds that those dolls and products set forth in the above-referenced exhibits are **substantially similar** to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2.  Especially important to the Court's conclusion is the consistency of the particularized expression of the dolls' heads, lips, eyes, eyebrows, eye features, noses, as well as the particularized expression of certain anatomical features relative to others (most notably the doll lips, doll eyes, doll eyebrows, and certain other doll eye features) and de-emphasis of certain anatomical features (most notably the minimalized doll nose and thin, small doll bodies).  Also important to the Court is the particularized, synergistic compilation and expression of the human form and anatomy that quite clearly expresses a unique style and conveys a distinct look or attitude, especially as perceived by the intended consumer market (7-12 year old girls).  The evidence on this latter point is particularly compelling, supported by both analytical and market analysis.  Together, these features clearly give each of the dolls the particularized expression to which the Court referred in its July 24, 2008, and August 15, 2008, Orders.

**B.     Standard for Awarding Permanent Injunctive Relief**

The Supreme Court recently announced the standard for granting a permanent injunction:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

**1.     Irreparable Injury**

The Court begins, then, by looking to whether Mattel has established that it will suffer irreparable injury if an injunction is not granted.

Prior to the eBay decision, where a plaintiff sought a preliminary injunction, irreparable injury was presumed in intellectual property cases; in light of the eBay decision, some doubt has been cast on whether courts should continue to apply that presumption.  See Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683, 702 (Fed. Cir. 2008) (noting that the continuing viability of the presumption is "an open question").

Mattel has established its exclusive rights to the Bratz drawings, and the Court has found

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

EXHIBIT ____1____
PAGE ____18____

that hundreds of the MGA parties' products -- including all the currently available core female fashion dolls Mattel was able to locate in the marketplace -- infringe those rights. The MGA parties have evinced an intention to continue marketing those dolls. This represents a wholesale inability on the part of Mattel to enforce its exclusive rights under the Copyright Act, amounting to irreparable harm. Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005).

MGA criticizes Mattel's reliance on Taylor, citing Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F.Supp.2d 1197, 1211 n.13 (C.D. Cal. 2007) (Wilson, J.). The Grokster case holds that, in copyright permanent injunction cases, a presumption of irreparable injury is not permitted in light of eBay. In Grokster, the court rejected the rationale of Taylor, stating:

> [T]his Court is not persuaded by the Eighth Circuit's pre-eBay conclusion in Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005), that because "[a plaintiff] certainly has the right to control the use of its copyrighted materials, . . . irreparable harm inescapably flows from the denial of that right." In substance, such language is nothing more than a disguised presumption, particularly with the use of the word "inescapably." After eBay, Plaintiffs cannot rely on the pure fact of infringement in order to establish irreparable harm.

Grokster, 518 F. Supp.2d at 1211 n.13. Judge Wilson's point is well-taken. Although the Taylor court did not purport to apply a presumption of irreparable harm, its use of the word "inescapably" in this phrase certainly could indicate that it was merely presuming irreparable harm. However, a review of the Taylor case makes clear that the Eighth Circuit considered the implications of allowing an infringer to continue to infringe: "[I]n copyright infringement actions, the denial of a request for injunctive relief could otherwise "amount to a forced license to use the creative work of another." Taylor Corp., 403 F.3d at 967-68. This rationale removes Taylor further from the application of a "disguised presumption" of irreparable harm and closer to an actual finding of irreparable harm.

At least one district court within the Ninth Circuit is in accord with the Court's decision today, as it has decided, post-eBay, that a plaintiff who establishes past infringement and the threat of future infringement amounts to irreparable harm. Designer Skin, LLC v. S & L Vitamins, Inc., 2008 WL 4174882 at *5 (D. Ariz. 2008) (Teilborg, J.). Judge Teilborg's rationale is well articulated:

> Whatever else might be said against the propriety of a rule that holds that past infringement plus the threat of future infringement equals irreparable harm, it seems clear to this Court that such a rule would not run afoul of eBay's directives. First of all, the eBay Court did not address the showing necessary to establish "irreparable harm." It merely held that the plaintiff has the burden of proving it. Second, this two-part test does not resurrect the presumption of irreparable harm impliedly laid to rest by the eBay court. It simply recognizes that a

EXHIBIT ___1___
PAGE ___19___

plaintiff meets the burden of proving irreparable harm by making this two-part showing. And finally, the two-part test does not represent a rule [prohibited by eBay] that an injunction automatically follows a determination that a copyright has been infringed. . . . In exercising their equitable discretion, courts would still have the freedom to deny injunctive relief when the public interest or the balance of hardships weighs against such relief.

Designer Skin, 2008 WL 4174882 at *5 (citation omitted).

Indeed, this is not so complex an issue as applied to the facts of this particular case. The statutory directive to the Court is clear: "Any court having jurisdiction of a civil action arising under this title may, . . . grant temporary and final injunctions on such terms as it may deem reasonable *to prevent or restrain infringement of a copyright*." 17 U.S.C. § 502 (emphasis added). The Court can envision no case more appropriate for a finding of irreparable harm. Here, as the record shows and as the jury found, an employee bound by contract and fiduciary duty to communicate to his employer (and keep confidential from all others) all copyrightable works he creates during the term of his employment, not only fails to so communicate but actually secretly purports to convey the rights thereto to a direct competitor of his employer. The rights to those works are actively concealed from their true owner (by both the employee and the competitor) for years while the competitor exploits the works, reaping profits therefrom totaling hundreds of millions of dollars. After millions of pages of discovery are produced, thousands of filings are submitted, scores and scores of motions are decided by the Court, and after months of trial and two jury verdicts in favor of the plaintiff, defendants remain steadfast in their intention to continue to produce their infringing products. Viewed in this light, Mattel has established irreparable injury on the basis of the MGA parties' past infringement and the high probability of continued acts of infringement.

## 2.      Inadequate Legal Remedies

Unless MGA is enjoined, Mattel would be forced to sue each retailer and distributor to stop the sale and distribution of the infringing dolls; therefore, the legal remedies are inadequate. See Continental Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1105 (9th Cir. 1994).

## 3.      Balance of Equities

Factually, the hardship on MGA weighs very heavily upon the Court. The Court has expressed its concerns in this regard on the record. The evidence at trial showed that, at least historically, Bratz is the brand that has made MGA profitable. And the proposed injunction addresses the core of that brand -- most notably, the female fashion dolls.

However, where, as here, the only hardship that will be suffered is lost profits from the cessation of its infringing activities, the Court, in the final analysis, must afford this very little -- if any -- weight. Triad Systems Corp. v. Southeastern Exp. Co., 64 F.3d 1330, 1338 (9th Cir. 1995) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has

EXHIBIT ___I___
PAGE ___20___

been shown likely to be infringing, such an argument in defense merits little equitable consideration
. . . .") (internal quotation marks and citations omitted), accord, Cadence Design Systems, Inc. v.
Avant! Corp., 125 F.3d 824, 829-30 (9th Cir. 1997) (collecting cases).  The balance of equities
favor Mattel.

### 4.  Public Interest

There is a strong economic interest, especially in these troubled economic times, in
maintaining a profitable enterprise as a going concern.  However, there is also a strong public
interest in enforcing copyright laws in a uniform manner.  Indeed, nothing is more essential to long-
term economic prosperity than the stability provided by the rule of law.  Although the MGA parties
raise excellent points in their opposition, in the end, the public interest is served by precluding
defendants from engaging in copyright infringement.  The injunction issued by the Court does no
more than that.

### C.  Scope of Injunction

The scope of the permanent injunction is set forth in a separate order.  Four issues raised in
the parties' papers warrant the brief discussion that follows.

### 1.  Impoundment and Destruction

As set forth more fully in its motion, Mattel seeks impoundment of Bratz dolls and
destruction of the specialized plates, molds, and matrices used to make them.  Impoundment of
existing infringing products and the destruction of the means to make those products are clearly
remedies contemplated by the Copyright Act.  See 17 U.S.C. § 503(a).  The MGA parties argue
that these remedies are inappropriate because there is no ongoing infringement or, at the very
least, its products infringe very little.  In its findings supporting the issuance of a permanent
injunction, the Court has rejected this premise, and the Court finds that the requested
impoundment and destruction is an appropriate remedy.[7]

### 2.  Recall

In light of the scope of infringement found by the Court, and in light of the fact that the
injunction addresses products that directly compete with Mattel's products, the Court has ordered
the recall of infringing products from retailers.  See CyberMedia, Inc. v. Symantec Corp., 19
F.Supp.2d 1070, 1079 (N.D. Cal.1998); Patry on Copyright, § 22:81.

---

[7]  No party shall destroy any of the implements used to make the Bratz dolls that are the
subject of the permanent injunction absent a specific order of this Court authorizing such
destruction.

MINUTES FORM 90                                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                            14

EXHIBIT ___1___
PAGE ___21___

### 3.    Royalty

The MGA parties argue that the more appropriate remedy to be imposed here is for the Court to order a royalty instead of an injunction. The difficulty in this proposal is that it is premised on the idea that the ongoing infringement, if any, is minute. See Opp. at 29-32 (suggesting a royalty of .3% would be appropriate). As noted above, the Court has rejected this premise. Moreover, although the Court has been hopeful that an out-of-court resolution involving such a remedy may have been obtained, and has gone to great lengths to encourage both sides to pursue such a resolution in good faith, their failure so far to do so underscores the Court's present view, which is based on the evidence and argument of record, that the hostility between these parties is such that this form of remedy is unworkable.

### 4.    Appointment of a Special Master

Mattel suggests that the Court appoint a special master to "monitor implementation of the relief granted by the Court." Motion at 28. The MGA parties have not indicated their position on this issue. The appointment of a special master to monitor implementation of the permanent injunction is warranted; this task could easily overwhelm the Court's resources. Subject to the Court's consideration of any in camera objections submitted to the Court by the parties, the Court will select a Special Master from the list submitted below.

### V. Motion to Strike Portions of Hutnyan Declarations and Exhibits Thereto (docket #4351)

The MGA parties move to strike certain evidence offered by Mattel on the issue of harm suffered by Mattel, contending the evidence is inadmissible. This motion is **DENIED AS MOOT.** Although Mattel has offered additional evidence of harm, the Court has found the evidence of harm to Mattel offered during Phases 1A and 1B sufficient to resolve the issues presented in the current motions.

### VI. Motion to Strike the Proctor, Keiser, and Hollander Declarations (docket #4352)

The motion is **DENIED** as to the Proctor declaration. The declaration is a helpful presentation of appropriate argument and/or observations of counsel for the Court's consideration.

The motion is **DENIED** as to the Keiser declaration. The Keiser declaration authenticates two-dimensional depictions of three-dimensional models he scanned using a sophisticated scanning machine.

The motion is **DENIED** as to the Hollander declaration. This declaration was the subject of extensive briefing in MGA's motion in limine 8, which the Court has reviewed. Hollander's declaration, which presents survey evidence of the target market, is relevant to application of the

EXHIBIT _____1_____
PAGE _____22_____

intrinsic test. The Court, in fact, instructed the jury to consider how girls 7 to 12 would view the Bratz dolls. Hollander's survey attempts to determine just that. The Court has considered the methodological flaws pointed out by MGA in weighing the evidence Hollander presents.

### VII. Motion to Strike Meyer Declaration (docket #4377)

Mattel moves to strike the Meyer declaration. This motion is **DENIED AS MOOT**. This declaration sets forth a calculation justifying the proposed .3% royalty. The Court has rejected the proposal that a royalty be imposed.

### VIII. Stay of this Order

This Order, and the three concurrently filed orders, are stayed pending the Court's consideration of the parties' post-trial motions. This stay shall remain in place until lifted by further Order of this Court.

### IX. Briefing Schedule for Post-Trial Motions

Notwithstanding the Court's earlier order, the motions referred to in ¶ 3 of the Court's September 2, 2008, Order may be filed no later than December 22, 2008. Response briefs may be filed no later than January 12, 2009. Replies may be filed no later than January 19, 2009. A hearing on this matter is set for Wednesday, February 11, 2009, at 10:00 a.m., in Courtroom One of the above-referenced Court.

### X. Discovery Master Proposals for Phase 2

The Court previously stated that it would submit for counsel's consideration the names of potential Discovery Masters for Phase 2 that possess both the resources to handle the scope of the anticipated discovery disputes as well as the personal confidence of this Court. The Discovery Master would serve pursuant to the same terms and conditions of the Phase 1 Discovery Master. In addition, as noted above, the Court also intends to appoint a Special Master to oversee implementation of the permanent injunction. The Court provides for counsels' consideration the following individuals who meet the Court's requirements, and have indicated to the Court a willingness and an ability to serve in one or both of these roles. Counsel are directed to file any objections to any or all of the proposed Masters on or before December 22, 2008. Any such objections are to be submitted *in camera* and under seal with the Court. After considering any objections, as well as any preferences expressed by the parties, the Court will make an appointment at the appropriate time.

EXHIBIT ___1___
PAGE ___23___

Patrick A. Fraioli, Jr.
Moldo Davidson et al LLP
2029 Century Park East, 21st Fl.
Los Angeles, CA  90067
310-551-3100
pfraioli@mdfslaw.com

Jan L. Handzlik
Howrey LLP
550 S. Hope Street, Suite 1100
Los Angeles, CA  90071
213-892-1802
handzlikj@howrey.com

Kendall H. MacVey
Best Best & Krieger LLP
P.O. Box 1028
Riverside, CA  92502-1028
951-686-1450

David G. Moore
Reid & Hellyer
P.O. Box 1300
Riverside, CA  92502
951-682-1771
dmoore@rhlaw.com

Robert C. O' Brien
Arent Fox LLP
555 W. 5th Street, 48th fl.
Los Angeles, CA  90013
213-629-7400
obrien.robert@arentfox.com

C. Michael Zweiback
Alston & Bird LLP
333 S. Hope Street, 16th Fl.
Los Angeles, CA  90071
213-576-1000
michael.zweiback@alston.com

## XI. Jointly Lodged Laptop Computer

The Court is in possession of a jointly lodged laptop computer used to access the Phases 1A and 1B trial transcripts maintained by the parties.  The Court will retain possession of the laptop computer until after its ruling on the motions referred to in section IX, above, and the parties are directed to follow the procedure outlined in the Court's September 9, 2008, Order regarding the e-filing of excerpts of transcripts cited in their anticipated motions.

## XII. Service of Permanent Injunction

The service of Mattel's proposed permanent injunction by the Clerk presents challenges given the limited resources of the Court.  The permanent injunction, for reasons explained by Mattel on the record, attaches to it approximately 900 color copies.  Accordingly, although the Court directs the Clerk to serve on all parties a copy of the permanent injunction, the Court directs Mattel, no later than ten days after the entry of this Order, to serve a copy of the permanent injunction, together with the color exhibits, on all parties.

**IT IS SO ORDERED.**

EXHIBIT ___1___
PAGE ___24___

# EXHIBIT 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MATTEL, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MGA ENTERTAINMENT, INC., et al., <br><br> Defendant. <br><br> AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx) <br><br> Consolidated with <br> Case No. CV 04-09059 SGL (RNBx) <br> Case No. CV 05-02727 SGL (RNBx) <br><br> Honorable Stephen G. Larson <br><br> **PHASE B VERDICT FORM AS GIVEN** |

07209/2609529.2209/260
584.2

PHASE B VERDICT FORM AS GIVEN

EXHIBIT ___2___

PAGE ___25___

# VERDICT FORM - PHASE B

We answer the questions submitted to us as follows:

## I. Damages for Phase A Claims

(Answer all four questions in this section.)

### Intentional Interference With Contractual Relations

1.    In Phase A of this trial, you found that MGA Entertainment, Inc. ("MGA") and Isaac Larian are liable to Mattel for intentional interference with contractual relations.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:        $ _____20 MILLION_____

As to Mr. Larian: $ _____10 MILLION_____

### Aiding and Abetting Breach of Fiduciary Duty

2.    In Phase A of this trial, you found that MGA and Isaac Larian are liable to Mattel for aiding and abetting Carter Bryant's breach of fiduciary duty.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:        $ _____20 MILLION_____

As to Mr. Larian: $ _____10 MILLION_____

### Aiding and Abetting Breach of the Duty of Loyalty

3.    In Phase A of this trial, you found that MGA and Isaac Larian are liable to Mattel for aiding and abetting Carter Bryant's breach of the duty of loyalty.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:        $ _____20 MILLION_____

As to Mr. Larian: $ _____10 MILLION_____

-2-

PHASE B VERDICT FORM AS GIVEN

07209/2609529.2608584.2

EXHIBIT _____2_____

PAGE _____26_____

### Conversion

4.      In Phase A of this trial, you found that MGA, Isaac Larian and MGA Entertainment (HK) Limited ("MGA Hong Kong") are liable to Mattel for conversion.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:                          $ _31,500 PLUS 7% INTEREST_

As to Mr. Larian:                  $ _0_     CALCULATED FROM

As to MGA Hong Kong: $ _0_      THE DATE MATTEL'S
                                                PROPERTY WAS
                                                CONVERTED.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PHASE B VERDICT FORM AS GIVEN

EXHIBIT _____ 2

PAGE _____ 27

## II. Copyright Infringement

5.    Has Mattel proven by a preponderance of the evidence that MGA is liable to Mattel for copyright infringement?

        Yes      __X__

        No      ____

If your answer is "yes," then answer Question 6.

If your answer is "no," then answer Question 7.

6.    Was MGA's copyright infringement willful?

        Yes      ____

        No      __X__

Answer Question 7.

7.    Has Mattel proven by a preponderance of the evidence that Isaac Larian is liable to Mattel for copyright infringement?

        Yes      __X__

        No      ____

If your answer is "yes," then answer Question 8.

If your answer is "no," then answer Question 9.

8.    Was Mr. Larian's copyright infringement willful?

        Yes      ____

        No      __X__

Answer Question 9.

9.    Has Mattel proven by a preponderance of the evidence that MGA Hong Kong is liable to Mattel for copyright infringement?

        Yes      __X__

PHASE B VERDICT FORM AS GIVEN

EXHIBIT ____2____

PAGE ____28____

1        No  \_\_\_\_

2      If your answer is "yes," then answer Question 10.

3      If your answer is "no," then answer Question 11.

4

5      10.    Was MGA Hong Kong's copyright infringement willful?

6        Yes  \_\_\_\_

7        No    X

8      Answer Question 11.

9

10      11.    What amount of damages, if any, should be awarded to Mattel for the

11 defendants' copyright infringement?

12       (a)     Copyright Infringement by MGA

13        $    6 Million

14       (b)     Copyright Infringement by Isaac Larian

15        Distributions Mr. Larian received from MGA attributable to Bratz-

16        related works:

17        $    3 Million

18        Value of Mr. Larian's ownership percentage of MGA attributable to

19        Bratz-related works:

20        $    0

21       (c)     Copyright Infringement by MGA Hong Kong:

22        $    1 Million

23

24

25

26

27

28

07209/2609529.26085842

-5-

PHASE B VERDICT FORM AS GIVEN

EXHIBIT _____ 2

PAGE _____ 29

### III. Punitive Damages

1
2      12.    Has Mattel proven by clear and convincing evidence that MGA acted
3  with malice, oppression, or fraud?
4            Yes  ____
5            No   _X_
6      If your answer is "yes," then answer Question 13.
7      If your answer is "no," then answer Question 14.
8
9      13.    What amount of punitive damages, if any, should be awarded against
10 MGA?
11           $_____∅_____
12     Answer Question 14.
13
14     14.    Has Mattel proven by clear and convincing evidence that Isaac Larian
15 acted with malice, oppression, or fraud?
16           Yes  ____
17           No   _X_
18     If your answer is "yes," then answer Question 15.
19     If your answer is "no," then answer Question 16.
20
21     15.    What amount of punitive damages, if any, should be awarded against
22 Mr. Larian?
23           $_____∅_____
24     Answer Question 16.
25
26     16.    Has Mattel proven by clear and convincing evidence that MGA Hong
27 Kong acted with malice, oppression, or fraud?
28           Yes  ____

PHASE B VERDICT FORM AS GIVEN

EXHIBIT _____2_____

PAGE _____30_____

1        No     X

2        If your answer is "yes," then answer Question 17.

3        If your answer is "no," then answer Question 18.

4

5        17.    What amount of punitive damages, if any, should be awarded against

6    MGA Hong Kong?

7               $_____0_____

8        Answer Question 18.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2609529.2608584/2

-7-

PHASE B VERDICT FORM AS GIVEN

EXHIBIT _____ 2

PAGE _____ 31

### IV. Fraudulent Concealment

(Answer all five questions in this section.)

18.   Has Mattel proven by a preponderance of the evidence that MGA fraudulently concealed the bases for Mattel's claim of intentional interference with contract against it until at least April 27, 2002?

      Yes   _X_

      No   ____

19.   Has Mattel proven by a preponderance of the evidence that Isaac Larian fraudulently concealed the bases for Mattel's claim of intentional interference with contract against him until at least April 27, 2002?

      Yes   ____

      No   _X_

20.   Has Mattel proven by a preponderance of the evidence that MGA fraudulently concealed the bases for Mattel's claim of conversion against it until at least April 27, 2001?

      Yes   _X_

      No   ____

21.   Has Mattel proven by a preponderance of the evidence that Mr. Larian fraudulently concealed the bases for Mattel's claim of conversion against him until at least April 27, 2001?

      Yes   ____

      No   _X_

07209/2609529.2608584 2

PHASE B VERDICT FORM AS GIVEN

EXHIBIT _____2_____

PAGE _____32_____

1       22.   Has Mattel proven by a preponderance of the evidence that MGA Hong

2    Kong fraudulently concealed the bases for Mattel's claim of conversion against it

3    until at least April 27, 2001?

4               Yes  _____

5               No    __X__

6

7       Once this verdict form is completed, the foreperson of the jury should sign

8    and date on the lines below.

9

10   DATED: *August 26, 2008*             /s/

                                    Jury Foreperson

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-9-

PHASE B VERDICT FORM AS GIVEN

EXHIBIT      2

PAGE      33

# EXHIBIT 3

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                              Date:  July 24, 2008

Title:    CARTER BRYANT -v- MATTEL, INC.
          AND CONSOLIDATED ACTIONS

========================================================================
=

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes                              None Present
        Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

John B. Quinn                            Thomas J. Nolan
B. Dylan Proctor                         Carl Alan Roth
Michael T. Zeller                        Jason Russell
Jon Corey                                Lauren Aguiar
William Price                            David Hansen
Scott B. Kidman

PROCEEDINGS:    **POST-PHASE1A ORDER RE MOTION FOR PARTIAL SUMMARY**
                **JUDGMENT ON THE ISSUE OF SUBSTANTIAL SIMILARITY;**

                **ORDER RE PROCEEDINGS REGARDING LACHES AND OTHER**
                **EQUITABLE DEFENSES**

                **ORDER RE FRAUDULENT CONCEALMENT JURY ISSUE**

     These matters were heard on Friday, July 18, 2008, and again on Monday, July 21, 2008, at which time the Court announced its rulings.  This Order sets forth those rulings and the rationale therefor.

MINUTES FORM 90                                    Initials of Deputy Clerk:  jh
CIVIL -- GEN
                              1

EXHIBIT _____3_____

PAGE _____34_____

## I. SUBSTANTIAL SIMILARITY AND SCOPE OF PROTECTABILITY

At a post-Phase 1A hearing on remaining legal issues to be addressed prior to commencement of the Phase 1B trial, counsel for MGA raised an issue regarding the scope of the protection to be given to the copyrighted drawings. This issue, in turn, implicates the arguments raised by the parties in the motions for partial summary judgment regarding originality and protectability (raised by MGA) and substantial similarity (an element of copyright infringement upon which Mattel seeks summary judgment).

To address these issues, the Court begins its analysis with a recitation of the elements of copyright infringement, which are (1) ownership of a valid copyright, (2) access by the defendant to the original, and (3) substantial similarity of the original and allegedly infringing works. North Coast Industries v. Jason Maxwell, Inc., 972 F.2d 1031, 1033 (9th Cir. 1992).

The first element, although not amenable to resolution on summary judgment, was decided by the jury's verdict in Phase 1A. The second element was not contested by MGA, and in any event, was also decided by virtue of the jury verdict. Thus, although the Court previously deferred the issue of substantial similarity, it is now appropriate to consider whether the record on summary judgment allows the Court to adjudicate the final element of copyright infringement in favor of Mattel.

To determine substantial similarity, the Court must apply both the extrinsic test and the intrinsic test.

To apply the extrinsic test, the Court must first examine the specific expressive elements of the works at issue and compare them to those found in the allegedly infringing work. Dr. Seuss Enterprises v. Penguin Books, Inc., 109 F.3d 1394, 1398 (9th Cir. 1997). This involves analytically dissecting works into their components in order to determine whether some – or all – similarities are attributable to unprotected elements, which must be filtered out of the analysis before a conclusion regarding substantial similarity is reached. Id. To apply the extrinsic test to visual works, such as the drawings at issue here, "[t]he basic mode of analysis for comparison of the literary elements applies . . . [, and] unprotect[a]ble elements should not be considered when applying the extrinsic test to art work." Cavalier v. Random House, Inc., 297 F.3d 815, 825-26 (2002). However, "[t]he precise factors evaluated for literary works do not readily apply to art works. Rather, a court looks to the similarity of the objective details in appearance." Id. at 826.

To apply the intrinsic test, the Court examines the overall similarity of expression in the two works from the perspective of the ordinary observer. Olson v. National Broadcasting Co., 855 F.2d 1446, 1448-49 (9th Cir. 1988).

In applying both the extrinsic and intrinsic tests, the Court must be mindful of the so-called "inverse ratio rule" which states that where, as here, a high degree of access to the original works

MINUTES FORM 90                                    Initials of Deputy Clerk: jh
CIVIL -- GEN

2

EXHIBIT _____

PAGE _____ 35

is shown, the burden to show substantial similarity is reduced.  <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 485 (9th Cir.2000).

In applying these principles, the Court cannot conclude that Mattel has shown that it is entitled to summary judgment on the issue of substantial similarity.  On summary judgment, MGA offered evidence from its doll design expert pointing out a number of differences between the Bratz dolls and the registered drawings.  Additionally, it offered the evidence of Paula Garcia regarding the changes that MGA wished to make in the process of creating the dolls from the drawings to make them less "edgy" and to better appeal to the "tween" market.  MGA also offered evidence that its sculptor was given a certain amount of artistic freedom in creating the sculpt.  All these combine to create a triable issue of fact regarding whether the dolls are substantially similar to the drawings.

Related to this issue is the one raised by MGA at Friday's hearing:  What is the scope of the protectability of the copyrighted drawings?  The Court cannot conclude that the scope is, as MGA contends, limited to the "thin" protection that would prohibit little more than virtual copying.

The Court's analysis begins with a presumption of protectability conferred by the registration of the drawings.  Where, as here, the relevant works have registered copyrights, registration is prima facie evidence of the validity of a copyright.  <u>See</u> 17 U.S.C. § 410(c).  This presumption can be rebutted by the defendant's showing that the plaintiff's work is not original, that is, that it is unworthy of copyright protection.  <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 489 (9th Cir. 2000) (citation omitted).  "Originality in this context means little more than a prohibition of actual copying."  <u>Id.</u> (internal quotation marks and citation omitted).

In this vein, the Supreme Court described the low threshold for copyrightability:

The sine qua non of copyright is originality. To qualify for copyright protection, a work must be original to the author. . . . Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.

<u>Feist Publications, Inc. v. Rural Telephone Service Co., Inc.</u>, 499 U.S. 340, 345 (1991).  The Court elaborated:  The "requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be."  <u>Id.</u> (internal quotation marks omitted).

Based on the record before the Court, it does not appear that MGA has contended that the registered drawings are unworthy of <u>any</u> protection; rather, it contends that it is worthy only of "thin" protection.  The Court is guided on this point by the case of <u>Satava v. Lowry</u>, 323 F.3d 805 (9th Cir. 2003).

EXHIBIT _____ 3

PAGE _____ 36

In that case, an artist (Satava) began making glass-in-glass jellyfish sculptures. Id. at 807. When a second artist (Lowry) began making extremely similar sculptures, Satava sued for copyright infringement. Id. at 808-09.  The idea to do such a sculpture was held to be beyond copyright protection. Id. at 810.  Also outside the scope of copyright protection were the "elements of expression that naturally follow from the idea." Id.  Thus, the Ninth Circuit held that Satava's sculptures were unprotected to the extent the physiology of jellyfish drove the presentation of the sculptures. Id.  Relatedly, to the extent that traditional methods of glass-in-glass sculpture also influenced the presentation, the sculptures were also unprotected. Id.

Certain features did warrant protection, however.  For instance, although the Court found unprotectable depiction of jellyfish swimming vertically, with bright colors, or with tendril-like tentacles attached to rounded bells, the Court found protectable Satava "distinctive curls of particular tendrils; the arrangement of certain hues [of color]; [and] the unique shape of the jellyfishes' bells." Id. at 811-12.

After this analysis, the Ninth Circuit did not place a high qualitative value on Satava's copyright.  The Court stated it this way:

> Satava's copyright on these original elements (or their combination) is "thin," however, comprising no more than his original contribution to ideas already in the public domain. Stated another way, Satava may prevent others from copying the original features he contributed, but he may not prevent others from copying elements of expression that nature displays for all observers, or that the glass-in-glass medium suggests to all sculptors. Satava possesses a thin copyright that protects against only virtually identical copying.

Id. at 812.

The drawings at issue here, however, are not like Satava's jellyfish sculptures.  Jellyfish anatomy is much simpler than human anatomy.  Correspondingly, in general, there are far more variations in humans (at least that we humans discern).  For instance, we regularly take notice of a vast number of particularized differences in facial features, ethnicity, size, shape, proportions, hair color, and hair texture and, of course, various particularized combinations and permutations thereof.  Specifically, in the context of the content of the copyrighted drawings at issue, we can also observe the many details of the clothing which adorn the depicted figures.[1]  Moreover, an

---

[1] As noted by the Court at Monday's conference, the Court rejects the argument raised by MGA, stated elsewhere in the record, that the protectability of doll clothing is limited in the same manner as is human clothing. Briefly stated, "[a]s a general rule, items of clothing are not entitled to copyright protection. . . . This is because items of clothing are generally considered useful articles, and useful articles are not entitled to protection under the Copyright Act." Express, LLC v. Fetish Group, Inc., 424 F.Supp.2d 1211, 1224 (C.D. Cal. 2006) (citations omitted).  This general rule is tempered by a limited protection extended to "pictorial, graphic, or sculptural features" even when incorporated into useful articles.  17 U.S.C. § 101.  The doll clothing at issue here -- as well as the clothing depicted in the

MINUTES FORM 90                                             Initials of Deputy Clerk:  jh
CIVIL -- GEN

EXHIBIT _____3_____

PAGE _____37_____

artistic expression based on a drawing is much less limited than a glass-in-glass sculpture.

Accordingly, although the Court has denied the motion for summary judgment on the substantial similarity issue, the Court cannot go so far as to find that the registered drawings are subject to only the "thin" protection -- the protection against copying -- referred to in Satava.  The relevant test to be employed on this issue in this case -- and upon which the jury will ultimately be instructed -- is the test regarding the extrinsic and intrinsic analyses set forth above.

## II. LACHES AND OTHER EQUITABLE DEFENSES

At the hearing on Friday, July 18, 2008, three separate issues regarding the affirmative defense of laches were raised:  (1) Whether there is, as MGA contends, a presumption that laches applies when, as here, a copyright claim would be time-barred but for the relation-back doctrine;[2] (2) whether the Court should grant Mattel's summary judgment motion as to MGA's laches defense; and (3) whether the defense is legal (and must be presented to a jury) or equitable (and therefore should be decided by the Court, perhaps outside the presence of the jury).  In the ensuing discussion, the Court addresses each of these issues in turn.

The Court first considers whether there is, as MGA contends, a presumption that laches applies where, as here, a copyright claim would be time-barred but for the relation-back doctrine.

This argument is clearly based on the Jarrow Formulas case, cited at footnote 27 of MGA's opposition to Mattel's motion for partial summary judgment, which MGA relies upon to argue that, notwithstanding any contention that Mattel's copyright claim is timely based on the relation-back doctrine, there is a presumption that claims filed outside the limitations period are time barred.  MGA reads Jarrow Formulas far too broadly.  That case did not consider how laches should apply when a claim that was otherwise outside the limitations period was saved by the relations-back doctrine.  Therefore, its discussion regarding a "reversal" of the presumption of nonapplicability of laches is of little relevance here.[3]

_____

copyrighted drawings – are not useful articles.  The clothing is part of a toy, and the proposition that toys are unprotectable because they are "useful articles" as that term is used in copyright law has been rejected by courts.  See, e.g., Gay Toys, Inc. v. Buddy L Corp., 703 F.2d 970, 974 (6th Cir. 1983); Spinmaster, Ltd. v. Overbreak LLC, 404 F.Supp.2d 1097, 1103 (N.D. Ill. 2005).

[2]  The Court previously held that Mattel's copyright claim was timely as to MGA Entertainment because it was brought within the relevant statute of limitations.  As to the remaining defendants, the claim was timely in light of the relation-back doctrine.

[3]  The court's discussion regarding this issue states:

In sum, we presume that laches is not a bar to suit if the plaintiff files within the limitations period for the analogous state action; the presumption is reversed if the plaintiff files suit after the analogous limitations period has expired.  For purposes of laches, the limitations period may expire even though

MINUTES FORM 90                                                    Initials of Deputy Clerk:  jh
CIVIL -- GEN

EXHIBIT _____ 3
PAGE _____ 38

The Court, in its own research, has been unable to locate any authority that suggests that a related-back claim would be especially vulnerable to the defense of laches. To the contrary, to the extent that such authority is found, it suggests the contrary. See e.g., In re Prempro Products Liability Litigation, 417 F.Supp.2d 1058, 1061 (E.D. Ark. 2006) (dismissing certain plaintiffs from a case, allowing them to re-file their claims in a separate complaint, and clarifying that "for application of . . . laches . . . the filing date of [the new complaint] will be deemed to relate back to the date [of the dismissed complaint]"); Bush v. Sumitomo Bank and Trust Co., Ltd., 513 F.Supp. 1051, 1054 (D.C.Tex., 1981) (noting that the court would consider the related-back date of an amended claim to assess the merits of a laches defense); E.I. duPont de Nemours & Co. v. Phillips Petroleum Co., 621 F.Supp. 310, 313 (D.C. Del.,1985) (noting that the applicability of laches did not need to be addressed in light of the fact that the proposed complaint related back to the original pleading pursuant to Fed. R. Civ. P. 15(c)).

The language of the rule allowing relation-back is in accord because it suggests that an amendment that relates back should be treated as if it was filed on the date of the original pleading. See Fed. R. Civ. P. 15(c) ("[a]n amendment to a pleading relates back to the date of the original pleading").

Therefore, in the absence of persuasive authority, the Court is unwilling to apply the "reversed" presumption suggested by MGA. Instead, the Court will continue to be guided by the touchstones of the doctrine of laches: Unreasonable delay and resulting prejudice.

The Court next considers whether the Court should grant Mattel's summary judgment motion as to MGA's laches defense. The Court previously deferred, as it does now, the motion for summary judgment on the remaining affirmative defenses. The Court will consider those at the close of Phase B of the trial as set forth below.

Finally, the Court considers whether the defense of laches is legal (and must be presented to a jury rather than the Court) or equitable (and therefore should be decided by the Court, perhaps outside the presence of the jury).

At Friday's hearing, counsel for MGA stated that MGA had argued in written briefs before the Court that laches, at least insofar as it is applied to a claim of copyright infringement, is a legal defense that must be submitted to the jury. Tr. at 96. When questioned as to the source of the authority, counsel eventually identified the case of Haas v. Leo Feist, 234 F. 105 (S.D.N.Y. 1916). Tr. 102, 106. Referring to this case, counsel contended that "most courts agree that was the first time that laches was applied as a legal defense to copyright." Tr. at 102. However, this case does not address the defense of laches. It does not address what, if any, affirmative defenses to a

---

part of the defendant's conduct occurred within the limitations period.

Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 838 (9th Cir. 2002).

MINUTES FORM 90                                                   Initials of Deputy Clerk:  jh
CIVIL -- GEN

EXHIBIT _____3_____

PAGE _____39_____

copyright claim should be presented to a jury. The case does not even involve a trial by jury. This case was cited in MGA's opposition to Mattel's motion for partial summary judgment, but for an entirely different proposition, relating to the merits of the laches defense.

At Monday's hearing, the Court articulated its ruling on this issue on the record in much the same form that it appears herein. The Court referred specifically to the representations of counsel set forth above, noting that the Haas case did not involve a trial by jury and further did not address the defense of laches. Tr. at 5303.

After the Court articulated its ruling, counsel for MGA revealed that perhaps he "wasn't as clear as [he] should have been" regarding this argument, explaining that Haas was "the case from which most courts agree the doctrine of laches could apply to a copyright case." Tr. at 5306. This contention was clear from counsel's argument the previous Friday. What was not clear, however, and what ultimately became clear during Monday's hearing after the Court articulated its ruling, was the source of MGA's briefing on this issue, which was MGA's opposition to Mattel's motion in limine #4 and not MGA's summary judgment papers (which the Court had reviewed at length and in vain in its attempt to locate counsel's argument on this issue). Tr. at 5306.

Although the Court informed counsel that the briefing to which he referred was not included in the materials that the Court instructed the parties to prepare in advance of the Friday hearing, counsel nevertheless asked that the Court to "take another look" at its opposition to the motion in limine, citing specifically the cases of Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc., 106 F.3d 894, 896 (9th Cir. 1997), and United States Fidelity & Guar. Co. v. Lee Investments LLC, 551 F.Supp.2d 1114, 1128 (E.D. Cal. 2008).[4] Both these cases, as well as a third case cited in MGA's opposition to Mattel's motion in limine #4, San Francisco Bay Area Rapid Transit Dist. v. Spencer, No. C-04-04632 SI, 2007 WL 1450350 at *10 (N.D.Cal., May 14, 2007), merely represent examples of cases in which trial courts submitted resolution of certain equitable affirmative defenses to the jury. These cases do not stand for the proposition that a Court must submit for the jury's consideration the ultimate conclusion regarding equitable affirmative defenses.[5]

The defense of laches to a copyright claim is clearly an equitable defense. See, e.g., Kling v. Hallmark Cards Inc., 225 F.3d 1030, 1036 (9th Cir. 2000) (beginning its analysis of whether

---

[4] Despite counsel's contention that his argument is based on authority derived from the Haas case, that case is not cited in MGA's opposition to Mattel's motion in limine #4.

[5] MGA's other concern, that the jury's role as factfinder not be usurped, is a valid one. Notwithstanding Mattel's contention that there are no facts that are relevant to both the legal claims and the equitable affirmative defenses, see Mattel's reply to motion in limine #4 at 7-9, the Court will consider MGA's timely proposal for any special interrogatories it deems appropriate to address this concern. As previously indicated by the Court, the parties' proposed jury instructions (which should include any proposed special interrogatories) and verdict forms must be filed no later than July 24, 2008, with indexed and tabbed courtesy copies (in a three-ring binder) provided to the Court.

MINUTES FORM 90                                              Initials of Deputy Clerk: jh
CIVIL -- GEN

EXHIBIT ___3___

PAGE ___40___

laches applied to a copyright claim by noting that laches is an "equitable defense"); Zuill v. Shanahan, 80 F.3d 1366, 1370 (9th Cir. 1996) (distinguishing the defense of statute of limitations as "legal" defense from the defense of laches an "equitable" defense). As such, it will be tried to the Court. See e.g., Danjaq LLC v. Sony Corp., 263 F.3d 942, 962 (9th Cir. 2001) (noting that although the plaintiff had a jury trial right as to his copyright infringement claims, he did not have a right to a jury on the equitable defense of laches); accord Granite State Ins. Co. v. Smart Modular Techs., Inc., 76 F.3d 1023, 1027 (9th Cir.1996) ("A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature.").

The Court previously suggested that it was inclined to seek an advisory jury verdict on the affirmative defenses; however, the Court is now disinclined to do so based on the risk of jury confusion. The Court is of the opinion that this jury's attention should be focused on the narrow range of issues it is being asked to decide in Phase B.

Therefore, the Court will have the parties present to the jury evidence relevant only to the remaining claims, the issue of fraudulent concealment (as discussed below), and any legal defenses to the remaining claims.

## III. FRAUDULENT CONCEALMENT JURY ISSUE

Also discussed at Friday and Monday's hearing was the issue of fraudulent concealment and its relationship with the previously-adjudicated statute of limitations issue. From the Court's perspective, two issues need to be resolved.

First is the jury's role with respect to a finding of fraudulent concealment. Both parties agree that the issue of whether Mattel has established a period of fraudulent concealment should be submitted to the jury. However, at Friday's hearing, Mattel suggested that the Court's findings as a matter of law on summary judgment regarding the statute of limitations places limitations on the time period during which the jury may find fraudulent concealment. Tr. at 100. Specifically, Mattel attempted to link the Court's findings regarding the earliest possible accrual date of Mattel's claims -- other than conversion and intentional inference with contractual relations -- with the period of fraudulent concealment to be determined by the jury regarding these two claims.

The Court's conclusion regarding the narrow range of possible accrual dates for Mattel's state-law claims, other than the conversion and intentional interference with contractual relations claims, was linked to a specific test relating to California's so-called "discovery rule," which the Court will not repeat here. See May 27, 2008, Order re Statute of Limitations Defense at 4 - 8. In the Court's June 2, 2008, Further and Final Order Re Statute of Limitations Defense, the Court noted that, because the claims for conversion and intentional interference with contractual relations are not subject to the discovery rule, "the conclusions drawn by the Court regarding the possible accrual dates for the remaining state-law claims do not apply to" these claims. Id. at 3. As noted by the Court in that Order, "[w]hether a period of fraudulent concealment exists, as well as the

EXHIBIT _____ 3

PAGE _____ 41

duration of any such period, . . . are . . . questions of fact for the jury." Id. If Mattel believes that this approach is erroneous, then it may file, in an introductory statement to its proposed jury instructions, a short statement of legal argument in support of its position, to which, of course, MGA may respond.

Second is the scope of the relevant evidence regarding fraudulent concealment. As articulated by the Court at Monday's hearing (and before that, in its statute of limitations summary judgment orders cited above), the relevant issues -- or, stated otherwise, the ultimate facts -- are whether and for what time period the MGA defendants fraudulently concealed from Mattel the fact that Carter Bryant worked on the Bratz drawings during his period of employment with Mattel. See Tr. at 5317-19. The relevant evidence, of course, may extend beyond that boundary. See Fed. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.") (emphasis added). For instance, evidence of Mattel's knowledge of (and evidence regarding MGA's concealment of) the fact that Carter Bryant was involved at some point with the Bratz project in general is relevant to -- but by no means dispositive of -- the ultimate facts of whether and for what time period the MGA defendants fraudulently concealed from Mattel the fact that Carter Bryant worked on the Bratz drawings during his period of employment with Mattel.

This distinction is in accord with that made by the Court yesterday regarding the admission of "Phase 2 evidence" in Phase 1B. Although the relevant issues have been, more or less, neatly dissected into various phases to facilitate efficient adjudication, the relevant evidence is not as conducive to any surgical cuts and has thus far managed to allude such neat dissection. Therefore, although counsel should conduct themselves in accordance with the general principles articulated herein and elsewhere on the record, relevancy, and other limits thereon placed on admissibility of evidence, most notably Fed. R. Evid. 403, will continue to be determined by the Court as objections are raised at trial.

**IT IS SO ORDERED.**

EXHIBIT _____ 3 _____

PAGE _____ 42 _____

# EXHIBIT 4

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11   MATTEL, INC.,                    | CASE NO. CV 04-9049 SGL (RNBx)

12            Plaintiff,

13                                    | Consolidated with

14        vs.                        | CASE NO. CV 04-9059 SGL (RNBx)

15                                   | CASE NO. CV 05-2727 SGL (RNBx)

16   MGA ENTERTAINMENT, INC., et al., | Hon. Stephen G. Larson

17

18   Defendants.

19                                   | **COURT'S PHASE B JURY**

     AND CONSOLIDATED ACTIONS

20                                   | **INSTRUCTIONS AS GIVEN**

21

22

23

24

25

26

27

28

EXHIBIT _____4_____

PAGE _____43_____

1

## JURY INSTRUCTION NO. 26

2    You are to make a determination regarding substantial similarity according to a

3    two-step process, which includes application of the "extrinsic test" and the "intrinsic test."

4    To prevail on its claims for copyright infringement, Mattel must satisfy both of these

5    tests.

6

7    First, you must apply the extrinsic test.  Under the extrinsic test, Mattel must

8    establish that specific ideas and expressive elements of the works Mattel owns and the

9    Bratz-related products that Mattel claims are infringing are substantially similar.

10    The Court has determined what elements of the works that you found were

11    created by Carter Bryant, solely or jointly while working at Mattel, are protectable under

12    copyright law.  These are the elements that you should consider for the purpose of your

13    comparisons to each of the allegedly infringing products under the extrinsic test:

14

15    First, the particularized, synergistic compilation and expression of the human

16    form and anatomy that expresses a unique style and conveys a distinct look or attitude;

17    Second, the particularized expression of a doll's head, lips, eyes, eyebrows, eye

18    features, nose, chin, hair style and breasts, including the accentuation or exaggeration of

19    certain anatomical features relative to others (doll lips, eyes, eyebrows, and eye features)

20    and de-emphasis of certain anatomical features relative to others (doll nose and thin,

21    small doll bodies); and

22

23    Third, the particularized doll clothes, doll shoes, and doll accessories that express

24    aggressive, contemporary, youthful style.

25    In contrast, certain basic elements of Carter Bryant's works are not protectable.

26    Specifically, copying of protected expression or ideas cannot be established by the mere

27

28

28

EXHIBIT          4

PAGE          44

1   fact that both Carter Bryant's works and the allegedly infringing designs bear a

2   resemblance or similarity to human form and human physiology; have hair, heads, two

3   eyes, eyebrows, lips, nose, chin, mouth, and other features that track human anatomy and

4   physiology; wear or have human clothes, shoes, and accessories; depict a certain age,

5   race, ethnicity, or have an "urban" appearance; possess common or standard anatomical

6   features relative to others or depict common or standard treatment of fashion doll  subject

7   matter.  Nevertheless, particular compilations or combinations of these otherwise non-

8   protectable elements in the works which express a particular style or convey a distinct

9   look or attitude, are protectable.

10

11          You should consider only the elements I have just listed for purposes of the

12   extrinsic test.  Focusing on the protectable elements of the works by Carter Bryant as

13   compared to those elements in the allegedly infringing Bratz-related works, you must

14   determine whether Mattel has proven by the preponderance of the evidence that the works

15   are substantially similar.  If you so find, you must next consider the intrinsic test.  If you

16   do not so find, you must find for the defendants.

17          The intrinsic test looks at the overall similarity of ideas and expression in the

18   works from the perspective of an ordinary observer.  You should ask yourself whether the

19   ordinary, reasonable audience, in this case girls between the ages of 7 and 12, would

20   determine or recognize the defendants' products as reflecting the total concept and feel, or

21   as a "picturization," of the Bratz-related works that you have found Carter Bryant created

22   alone or jointly with others while employed by Mattel.

23          Mattel does not need to establish that the works it alleges are infringing are

24   identical or virtually identical to the works it owns, nor that the allegedly infringing

25

26

27

28

29

EXHIBIT ____ 4

PAGE ____ 45

1  works do not contain any non-infringing material.  However, Mattel does need to

2  establish that, focusing on the protectable elements of Carter Bryant's designs which I

3  have identified under the extrinsic test, and the overall look and feel of the works under

4  the intrinsic test, there are substantial similarities between the copyright-protected works

5

6  and the allegedly infringing works.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT   4
PAGE ___46___

**JURY INSTRUCTION NO. 35**

Mattel claims that defendants fraudulently concealed the facts underlying Mattel's claims of intentional interference with contract and conversion. Defendants deny these allegations.

To prove fraudulent concealment, Mattel must show the following by a preponderance of the evidence

> (1)    the defendants took affirmative steps to conceal the facts that could have led Mattel to discover that Carter Bryant created Bratz-related works while employed by Mattel or that Carter Bryant entered into a contract with and worked with MGA while he was still employed by Mattel; and

> (2)    Mattel was not aware of such facts that either did or would have, with diligence, led Mattel to discover that Carter Bryant created Bratz works while employed by Mattel or that Carter Bryant entered into a contract with and worked with MGA while he was still employed by Mattel.

If you so find by the preponderance of the evidence, you should find for Mattel on its allegations of fraudulent concealment. If not, you should find for defendants on the allegations of fraudulent concealment.

EXHIBIT 4

PAGE 47

# EXHIBIT 5

EXHIBIT ___5___
PAGE ___48___

# EXHIBIT 6



LIBRARY OF CONGRESS

*Copyright Office*
*of the United States*

WASHINGTON, D.C.

**THIS IS TO CERTIFY** that the attached additional certificate is a claim of copyright for **BODY DRAWING** registered under number **VAu 715-270.** This work was registered in accordance with provisions of the United States Copyright Law. (Title 17 United States Code)

**THIS IS TO CERTIFY ALSO**, that the attached photocopies are a true representation of the work entitled **BODY DRAWING** deposited in the Copyright Office on October 30, 2006 with claim of copyright registered under number **VAu 715-270.**

**THIS IS TO CERTIFY FURTHER,** that beginning October 1, 2006 the Office discontinued the practice of stamping incoming deposits with accession stamp dates. Incoming deposits are now identified with barcode labels.

**IN WITNESS WHEREOF**, the seal of this Office is affixed hereto on August 1, 2008.

Marybeth Peters
Register of Copyrights

Rosemary J. Kelly
Head
Records Research and
Certification Section
Information and Records
Division

Use of this material is governed by the U. S. Copyright law 17 U.S.C. 101 et seq.

EXHIBIT _____ 6 _____

PAGE _____ 49 _____

M 0920260

EX 13886-0001



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America



**Form VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

REC   **VAu 715 − 270**



EFFECTIVE DATE OF REGISTRATION

**OCT 3 0 2006**
Month   Day   Year

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**1**

Title of This Work ▼

body drawing

NATURE OF THIS WORK ▼ See instructions

drawing

Previous or Alternative Titles ▼

Publication as a Contribution If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

**2**

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**a**   NAME OF AUTHOR ▼

Carter Bryant

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

1968

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of __USA__
     Domiciled in _____

Was This Author's Contribution to the Work
Anonymous?    ☐ Yes   ☑ No
Pseudonymous?  ☐ Yes   ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

Nature of Authorship Check appropriate box(es). See Instructions
☐ 3-Dimensional sculpture   ☐ Map   ☐ Technical drawing
☑ 2-Dimensional artwork   ☐ Photograph   ☐ Text
☐ Reproduction of work of art   ☐ Jewelry design   ☐ Architectural work

**b**   Name of Author ▼

Dates of Birth and Death
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of _____
     Domiciled in _____

Was This Author's Contribution to the Work
Anonymous?    ☐ Yes   ☐ No
Pseudonymous?  ☐ Yes   ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

Nature of Authorship Check appropriate box(es). See Instructions
☐ 3-Dimensional sculpture   ☐ Map   ☐ Technical drawing
☐ 2-Dimensional artwork   ☐ Photograph   ☐ Text
☐ Reproduction of work of art   ☐ Jewelry design   ☐ Architectural work

**3**

**a**   Year in Which Creation of This Work Was Completed

2000

This information must be given Year in all cases.

**b**   Date and Nation of First Publication of This Particular Work
Complete this information ONLY if this work has been published.

Month _____ Day _____ Year _____

Nation

**4**

See instructions before completing this space.

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Mattel, Inc.
333 Continental Blvd.
El Segundo, CA 90245 - 5012

APPLICATION RECEIVED
**OCT 3 0 2006**

ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
**OCT 3 0 2006**

FUNDS RECEIVED

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

Assignment

---

MORE ON BACK ▶   • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.   • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ____ pages

07209/1985444.1

EXHIBIT ____ 6

PAGE ____ 50

M 0920261

EX 13886-0002

| EXAMINED BY  S71 | FORM VA |
| CHECKED BY | |
| ☑ CORRESPONDENCE Yes | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes   ☑ No   If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

**a.** ☐ This is the first published edition of a work previously registered in unpublished form.

**b.** ☐ This is the first application submitted by this author as copyright claimant.

**c.** ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼           **Year of Registration** ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

**a. Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

**b. Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**6**

a

b

See instructions before completing this space.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

**Name** ▼           **Account Number** ▼

**7**

a

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip ▼

Robert D. Walsh
Mattel, Inc. MI-1220
333 Continental Blvd.
El Segundo, CA 90245 - 5012

b

Area code and daytime telephone number   ( 310 ) 252-6650          Fax number   ( 310 ) 252-4991

Email

**CERTIFICATION\*** I, the undersigned, hereby certify that I am the

check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of   Mattel, Inc.
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

**8**

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Robert D. Walsh          Date   October 27, 2006

Handwritten signature (X) ▼

X   Robert D. Walsh

**9**

Certificate will be mailed in window envelope to this address:

Name ▼
Robert D. Walsh  Mattel, Inc.  MI -1220

Number/Street/Apt ▼
333 Continental Blvd.

City/State/ZIP ▼
El Segundo, CA 90245 -5012

• Complete all necessary spaces
• Sign your application in space 8

1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material

Library of Congress
Copyright Office
101 Independence Avenue SE
Washington, DC 20559-6000

\*17 USC §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

07209/1984447.1
Form VA   Rev: 07/2006   Print: 07/2006—30,000   Printed on recycled paper          U.S. Government Printing Office: 2004-320-956 / 60,125

EXHIBIT ___ 6 ___

PAGE ___ 51 ___

M 0920262

EX 13886-0003

VAu 715-270

body drawing

OCT 30 2006

EXHIBIT ___6___

PAGE ___52___

M 0920263

EX 13886-0004

BODY



JOINTED NECK, @ SHOULDERS

POSSIBLE
TWIST
WAIST,
BELOW
BELLY
BUTTON

JOINTED @
HIPS

SCULPTED
FINGERNAILS

BASIC SHOE
SCULPT

NOT ACTUAL
SIZE

ACTUAL DOLL
HEIGHT (WITH HEAD)
APPX. 9½" - 10"

EXHIBIT _____ 6

PAGE _____ 53

M 0920264

EX 13886-0005

# EXHIBIT 7

Copyright Office fees are subject to change.
For current fees, check the Copyright Office website at www.copyright.gov, write the Copyright Office, or call (502) 707-3000.



**Form CA**
For Supplementary Registration
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

| TX | TXU | PA | PAU | VA | VAU | SR | SRU | RE |
|----|-----|----|-----|----|-----|----|----|----|

EFFECTIVE DATE OF SUPPLEMENTARY REGISTRATION

Month    Day    Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**A**

Title of Work ▼
BRATZ THE MOVIE DOLL SCULPT

Registration Number of the Basic Registration ▼
VAu 738-464

Year of Basic Registration ▼
2007

Name(s) of Author(s) ▼
MGA Entertainment, Inc.

Name(s) of Copyright Claimant(s) ▼
MGA Entertainment, Inc.

**B**

Location and Nature of Incorrect Information in Basic Registration ▼
Line Number  1                    Line Heading or Description  Title of This Work

Incorrect Information as It Appears in Basic Registration ▼
BRATZ THE MOVIE DOLL SCULPT

Corrected Information ▼
ARTICULATED BRATZ DOLL SCULPT

Explanation of Correction ▼
Clerical error.

**C**

Location and Nature of Information in Basic Registration to be Amplified ▼
Line Number  5                    Line Heading or Description  Previous Registration

Amplified Information and Explanation of Information ▼
"Yes" Box should be checked, 5 c. Box should be checked.

This basic registration VAu 738-464 is derivative of VA 1-301-537 and VA 1-148-305.

MORE ON BACK ▶ • Complete all applicable spaces (D–G) on the reverse side of this page.
                • See detailed instructions.  • Sign the form at Space F.

DO NOT WRITE HERE
Page 1 of _____ pages

Δ π EXHIBIT 5717
Deponent Armstrong
Date 8/1/07  Rptr. AC
WWW.DEPOBOOK.COM

**MGA 0842218**

EXHIBIT  7
PAGE  54

EX 577-0001

| | |
|---|---|
| FORM CA RECEIVED | FORM CA |
| FUNDS RECEIVED DATE | |
| EXAMINED BY | FOR COPYRIGHT OFFICE USE ONLY |
| CORRESPONDENCE ❑ | |
| REFERENCE TO THIS REGISTRATION ADDED TO BASIC REGISTRATION   ❑ YES ☑ NO | |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

Continuation of: ❑ Part B or ❑ Part C

Correspondence: Give name and address to which correspondence about this application should be sent.

Sam Khare, MGA Entertainment, Inc.

Phone ( 818 ) 894-2525          Fax ( 818 ) 895-0771          Email

Deposit Account: If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name - MGA Entertainment, Inc.

Account Number  DA 92613

Certification* I, the undersigned, hereby certify that I am the: (Check only one)
❑ author
❑ other copyright claimant
❑ owner of exclusive right(s)
☑ duly authorized agent of

Name of author or other copyright claimant, or owner of exclusive right(s) ▲
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name ▼  SAM KHARE          Date ▼ 7/7/07

Handwritten signature (X) ▼

| | |
|---|---|
| Certificate will be mailed in window envelope to this address: | **Name** ▼  IP Department, MGA Entertainment, Inc. |
| | **Number/Street/Apt** ▼  16380 Roscoe Boulevard |
| | **City/State/ZIP** ▼  Van Nuys, CA 91406 |

YOU MUST:
• Complete all necessary spaces
• Sign your application in Space F
SEND ALL ELEMENTS IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
MAIL TO:
Library of Congress
Copyright Office
101 Independence Avenue SE
Washington, DC 20559-6000

*17 USC §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Form CA—Full   Rev: 07/2006   Print: 07/2006— ".000   Printed on recycled paper          U.S. Government Printing Office: 2006-------/-..-.

577-2

**MGA 0842219**

EXHIBIT  7
PAGE  55

EX 577-0002

# EXHIBIT 8



LIBRARY OF CONGRESS

Copyright Office
of the United States

WASHINGTON, D.C.

**THIS IS TO CERTIFY** that the attached additional certificate is a claim of copyright for the work entitled **BRATZ DOLL SCULPTURE (FEMALE)** registered under number **VA 1-148-305.**

**THIS IS TO CERTIFY ALSO** that the attached photocopies are a true representation of the work entitled **BRATZ DOLL SCULPTURE (FEMALE)** deposited in the Copyright Office on July 24, 2002 registered under number **VA 1-148-305.**

**IN WITNESS WHEREOF**, the seal of this Office is affixed hereto on May 17, 2004.

Marybeth Peters
Register of Copyrights

By: Tracie M. Coleman
Head
Certifications and Documents
Section
Information and Reference
Division

Use of this material is governed by the U. S. copyright law 17 U.S.C. 101 et seq.

Δ π EXHIBIT 505
Deponent Armstrong
Date 5/1/07 Rptr. AC
WWW.DEPOBOOK.COM

**M 0110174**

EXHIBIT 8
PAGE 56

**Additional Certificate (17 U.S.C. 706)**
Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**FORM VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

VA 1-148-305

EFFECTIVE DATE OF REGISTRATION

MAR 25 2002

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**TITLE OF THIS WORK ▼**

Bratz Doll Sculpture (Female)

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**NATURE OF THIS WORK ▼** See instructions

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. **Title of Collective Work ▼**

If published in a periodical or serial give: **Volume ▼**   **Number ▼**   **Issue Date ▼**   **On Pages ▼**

**NAME OF AUTHOR ▼**

ABC International Traders, Inc. d/b/a MGA Entertainment

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?  ☒ Yes  ☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of ▶
     { Domiciled in ▶ California, USA

**Was This Author's Contribution to the Work**
Anonymous?  ☐ Yes  ☒ No
Pseudonymous?  ☐ Yes  ☒ No

**NATURE OF AUTHORSHIP** Check appropriate box(es). See instructions
☒ 3-Dimensional sculpture   ☐ Map   ☐ Technical drawing
☐ 2-Dimensional artwork   ☐ Photograph   ☐ Text
☐ Reproduction of work of art   ☐ Jewelry design   ☐ Architectural work

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?  ☐ Yes  ☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of ▶
     { Domiciled in ▶

**Was This Author's Contribution to the Work**
Anonymous?  ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No

**NATURE OF AUTHORSHIP** Check appropriate box(es). See instructions
☐ 3-Dimensional sculpture   ☐ Map   ☐ Technical drawing
☐ 2-Dimensional artwork   ☐ Photograph   ☐ Text
☐ Reproduction of work of art   ☐ Jewelry design   ☐ Architectural work

**Year in Which Creation of This Work Was Completed**   2000   This information must be given in all cases.

**Date and Nation of First Publication of This Particular Work**   Complete this information ONLY if this work has been published.   Month ▶ February   Day ▶ 12   Year ▶ 2001   ◀ Nation
United States of America

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼
ABC International Traders, Inc. d/b/a MGA Entertainment
16730 Schoenborn Street
North Hills, CA  91343

APPLICATION RECEIVED
MARCH 25 2002

ONE DEPOSIT RECEIVED
MARCH 25 2002

TWO DEPOSITS RECEIVED

FUNDS RECEIVED

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

**MORE ON BACK ▶**   • Complete all applicable spaces (numbers 5-11) on the reverse side of this page.   • See detailed instructions.   • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ___ 2 ___ pages

EXHIBIT ___8___
PAGE ___57___

M 0110175

565-2

EX 565-0002