

EXHIBIT
1136

EX 1136-0001

EXHIBIT   43
PAGE   240

M 0920550

EX 13900-0004



EX 1126 0002

M 0920551

EX 13900-0005

EXHIBIT  43
PAGE  241



EXHIBIT   43
PAGE   242

EX 1136-0003

M 0920552

EX 13900-0006



EX 1136-0004

M 0920553

EXHIBIT __43__
PAGE __243__



EX 1126 0005

M 0920554

EX 13900-0008

EXHIBIT   43
PAGE   244

# EXHIBIT 44

1
2
3
4
5
6
7
8
9           UNITED STATES DISTRICT COURT

10         CENTRAL DISTRICT OF CALIFORNIA

11              EASTERN DIVISION

12   CARTER BRYANT, an individual,       CASE NO. CV 04-9049 SGL (RNBx)

13            Plaintiff,                 Consolidated with
                                         Case No. CV 04-09059
14        vs.                            Case No. CV 05-02727

15   MATTEL, INC., a Delaware            **COURT'S FINAL PRE-TRIAL**
     corporation,                        **CONFERENCE ORDER FOR**
16                                       **PHASE 1 TRIAL**
              Defendant.
17

18   AND CONSOLIDATED ACTIONS

19
20
21
22
23
24
25
26                          EXHIBIT ___44___
27                          PAGE ___245___
28

07209/2474226.14

1       Following pretrial proceedings, pursuant to Federal Rule of Civil

2   Procedure 16 and Local Rule 16-1 et seq., and in accordance with the Court's

3   Scheduling Order entered February 22, 2007, IT IS ORDERED:

4

5                                    **I.**

6                                **PARTIES**

7       For purposes of this Phase 1 trial, the parties are:

8           (a)     Plaintiff and Counter-Defendant Mattel, Inc. ("Mattel");

9           (b)     Defendant and Counter-Defendant MGA Entertainment, Inc.

10  ("MGA");

11          (c)     Defendant and Counter-Defendant Isaac Larian;

12          (d)     Defendant and Counter-Defendant MGA Entertainment (HK)

13  Limited ("MGA HK").

14          Each of these parties has been served and has appeared.  For purposes

15  of this Phase 1 trial, and the claims and defenses to be tried therein, no party other

16  than those identified above has asserted a claim, been served, or asserted any

17  defense.  Because the Court has bifurcated these consolidated cases, the Court will

18  not at this point dismiss any other party, including any Doe defendants.

19          In addition, as a result of the confidential settlement between Mattel

20  and Carter Bryant, Carter Bryant is no longer a party to this case, although Carter

21  Bryant remains bound by all past Orders of this Court and will be bound by any

22  injunctive, declaratory or other non-monetary relief relating to Bratz that the Court

23  enters in the future against the MGA parties.

24          The pleadings that raise the issues in Phase 1 are:

25          (a)     Complaint filed by Mattel, Inc. (Case No. BC314398) on April

26  27, 2004 in the Superior Court of the State of California for the County of Los

27  Angeles (the "Bryant Case");

28

07209/2474226.14

1                           Case No. CV 04-9049 SGL (RNBx)
                            FINAL PRE TRIAL CONFERENCE ORDER

EXHIBIT _____44_____

PAGE _____246_____

1         (b)    Answer to Plaintiff's Unverified Complaint filed by Carter

2 Bryant on May 14, 2004;

3         (c)    Defendant/Cross-Complainant Carter Bryant's Cross-Complaint

4 for (1) Unfair Competition; (2) Rescission; (3) Declaratory Relief; and (4) Fraud,

5 filed by Bryant on September 8, 2004 in the Superior Court of the State of

6 California for the County of Los Angeles;

7         (d)    Notice to Federal Court of Removal of Civil Action from State

8 Court Pursuant to 28 U.S.C. Section 1332(a)(1) and 1331, filed by defendant Carter

9 Bryant on November 2, 2004.  That notice removed the case to federal court on

10 November 2, 2004, where it was assigned Case No. 04-9059;

11         (e)    Stipulation Permitting MGA to Intervene as a Party to This

12 Action and Order, dated December 7, 2004, and MGA's Answer in Intervention;

13         (f)    Complaint filed by MGA Entertainment, Inc. (Case No. CV 05-

14 2727 SGL (RNBx)) on April 13, 2005 in the District Court of the Central District of

15 California (the "MGA Case"), as limited by the Court's Order dated August 25,

16 2005, striking allegations regarding the Brawer litigation;

17         (g)    Second Amended Answer and Counterclaims filed by Mattel,

18 Case No. CV 04-9059 SGL (RNBx) on July 12, 2007 in the District Court of the

19 Central District of California;

20         (h)    Amended Answer and Affirmative Defenses of MGA

21 Entertainment Inc., MGA Entertainment (HK) Limited and MGAE de Mexico

22 S.R.L. de C.V. to Mattel, Inc.'s Second Amended Answer and Counterclaims filed

23 by defendants MGA, MGA HK, and MGA Mexico (collectively, the "MGA

24 Defendants") on September 19, 2007 in the District Court of the Central District of

25 California;

26         (i)    Isaac Larian's Amended Answer and Affirmative Defenses to

27 Mattel, Inc.'s Second Amended Answer and Counterclaims filed by Larian on

28 November 8, 2007 in the District Court of the Central District of California.

EXHIBIT _____ 44

PAGE _____ 247

1    By Order dated June 19, 2006, the Court consolidated the <u>Bryant</u> case

2  and the <u>MGA</u> case with <u>Bryant v. Mattel, Inc.</u>, Case No. 04-9049.  The matter shall

3  hereafter be referred to as <u>Mattel, Inc., v. MGA Entertainment, Inc., et al.</u>, Case No.

4  04-9049-SGL(RNBx).

5    The MGA Parties may file a motion seeking a determination of good

6  faith settlement pursuant to CCP § 877.6.  To the extent that Mattel continues to list

7  pleadings that address claims asserted by or against Bryant – and fail to exclude

8  them specifically from the list – the MGA Parties object to Mattel's list of pleadings.

9  Mattel's claims against the MGA parties have been modified by the terms of the

10  Court's Orders re the parties' motions for partial summary judgment dated April 25,

11  2008, May 22, 2008, May 27, 2008, and June 2, 2008.

12

13    **II.**

14    <u>**ABANDONED CLAIMS, COUNTERCLAIMS AND DEFENSES**</u>

15    The following claims, counter-claims, or defenses have been dismissed

16  or abandoned:

17    By Order dated July 17, 2006, the Court dismissed Defendant/Cross-

18  Complainant Carter Bryant's Cross-Complaint for (1) Unfair Competition; (2)

19  Rescission; (3) Declaratory Relief; and (4) Fraud; and Bryant's Complaint for

20  Declaratory Relief of Copyright Non-Infringement.  Bryant was given leave to

21  amend his Complaint and Cross-Complaint, but elected not to do so and the

22  dismissal became final.

23    Bryant's Ninth Affirmative Defense: Failure of Contract was withdrawn

24  by Bryant, by stipulation on October 5, 2007;

25    Bryant's Tenth Affirmative Defense: Duress/Unconscionability was

26  withdrawn by Bryant, by stipulation on October 5, 2007;

27    Bryant's Eleventh Affirmative Defense: Alleged Duties Contrary to

28  Law was withdrawn by Bryant, by stipulation on October 5, 2007;

1    MGA Defendants' Sixteenth Affirmative Defense:  Innocent Intent was

2  withdrawn by MGA Entertainment, Inc., by stipulation on September 5, 2007;

3    Larian's Sixteenth Affirmative Defense:  Innocent Intent was

4  withdrawn by MGA Entertainment, Inc., by stipulation on September 5, 2007;

5    MGA Defendants' Ninth Affirmative Defense:  Res Judicata was

6  withdrawn by MGA Entertainment, Inc., by stipulation on September 5, 2007;

7    Larian's Ninth Affirmative Defense:  Res Judicata was withdrawn by

8  MGA Entertainment, Inc., by stipulation on September 5, 2007;

9    MGA Defendants' Twelfth Affirmative Defense:  Lack of Ownership

10  was withdrawn by MGA Entertainment, Inc., by stipulation on September 5, 2007;

11    Unclean Hands Affirmative Defense was withdrawn with respect to

12  Phase 1 claims by the MGA Defendants by Notice on February 15, 2008;

13    Unclean Hands Affirmative Defense was limited by Carter Bryant as to

14  Phase 1 issues by letter dated February 27, 2008.

15    By Order dated April 25, 2008, the Court granted partial summary

16  judgment in favor of Mattel.  In particular, the Court ruled that the Employee

17  Confidential Information and Inventions Agreement that Carter Bryant entered into

18  as a Mattel designer is a valid and enforceable contract.  It further ruled that, under

19  the Inventions Agreement, Mattel owns "any Bratz-related 'inventions' (including

20  any designs, improvements, ideas, concepts and copyrightable subject matter)" that

21  Carter Bryant "created during the period of his employment with Mattel."  The

22  Court found that it was irrelevant whether Bryant performed such work on Bratz

23  during his own time.

24    In its Order granting Mattel partial summary judgment, the Court

25  further ruled that Carter Bryant owed Mattel a duty of loyalty and that Bryant

26  "breached this duty by entering into a contract with Mattel's competitor, while still

27  employed by Mattel, to produce a line of fashion dolls to be marketed in direct

28

1   competition with Mattel's products." The Court rejected defendants' claim that such

2   activities were mere "preparations to compete" with Mattel.

3           By virtue of its April 25, 2008, and May 21, 2008, Orders granting

4   Mattel partial summary judgment, the Court ruled that Carter Bryant owed a

5   fiduciary duty to Mattel, but held that there is a triable issue of fact as to Bryant's

6   breach of that duty.

7           Also by Order dated April 25, 2008, the Court granted partial summary

8   judgment in favor of Bryant and the MGA Defendants on Mattel's claims for (1)

9   tortious interference with contractual relations, but only "to the extent that it is based

10  on Mattel's rights to Bratz," such that it remains in the case "as to Mattel's claims for

11  breach of fiduciary duty" (Order at 2); (2) conversion, but only to the extent it is

12  based on conversion of ideas, such that it remains in the case "to the extent it seeks

13  the return of tangible things" (*id.* at 3); (3) common law unfair competition (*id.* at 7);

14  and (4) unjust enrichment (*id.*).

15          By virtue of its Orders dated April 25, 2008, May 22, 2008, and its

16  clarification on May 23, 2008, the Court further ruled that the MGA parties were

17  entitled to partial summary judgment on Mattel's statutory unfair competition

18  claims, except that Mattel's statutory unfair competition claim presented triable

19  issues of fact relating to "whether MGA tortiously interfered with Bryant and

20  Mattel's contractual relationship and whether MGA engaged in commercial

21  bribery."

22          In its orders regarding the statute of limitations affirmative defense,

23  dated May 27, 2008, and June 2, 2008, the Court made rulings regarding the accrual

24  dates of various claims asserted by Mattel. As to defendant MGA only, the Court

25  ruled that Mattel's state-law claims other than tortious interference with contractual

26  relations claim and the conversion claim accrued no earlier than July 18, 2003, and

27  no later than November 23, 2003, but that triable issues of fact precluded a

28  determination as to the exact accrual date.

EXHIBIT _____44_____

PAGE _____250_____

1      As to defendants Isaac Larian and MGA HK, the Court ruled that these

2  state-law claims arose no earlier than the date of Carter Bryant's deposition,

3  November 4, 2004.

4      In these orders, regarding the tortious interference with contractual

5  relations claim and the conversion claim as to all defendants, the Court ruled that the

6  discovery rule was inapplicable to these claims, and that they were therefore time

7  barred unless Mattel establishes a period of fraudulent concealment of sufficient

8  duration.

9      Additionally, the Court ruled that the copyright claim arose no earlier

10  than November 23, 2003.

11      Finally, the Court ruled that the new claims asserted on November 20,

12  2006, the Court ruled that all claims (except the copyright claim, upon which the

13  Court found it unnecessary to rule) related back to the filing of Mattel's complaint

14  against Carter Bryant in April, 2004.

15      Finally, pursuant to the confidential settlement between Mattel and

16  Carter Bryant and pursuant to the Stipulation entered as part of that settlement, all

17  claims, counterclaims and defenses as between Mattel and Carter Bryant have been

18  dismissed, although Carter Bryant remains bound by all past Orders of this Court

19  and will be bound by any injunctive, declaratory or other non-monetary relief

20  relating to Bratz that the Court enters in the future against the MGA parties.

21

22

23                      **III.**

            **JURISDICTION AND VENUE**

24      Federal jurisdiction and venue are invoked upon the following grounds:

25      This Court has diversity jurisdiction over the claims asserted in <u>Mattel</u>

26  <u>v. Bryant</u> pursuant to 28 U.S.C. § 1332, as determined by the Ninth Circuit in <u>Mattel</u>

27

28

1   v. Bryant, Inc., 446 F.3d 1011, 1013 (9th Cir. 2006).  This Court has supplemental

2   jurisdiction over Mattel's state law claims in that case pursuant to 28 U.S.C. § 1367.

3           This Court has federal question jurisdiction over MGA's claims in

4   MGA Entertainment, Inc. v. Mattel, Inc. pursuant to 15 U.S.C. §§ 1116 and §1121,

5   28 U.S.C. §§ 1331, 1338(a), and supplemental subject matter jurisdiction over

6   MGA's state law claims pursuant to 28 U.S.C. § 1367.

7           This Court has federal question jurisdiction over Mattel's counterclaims

8   in MGA Entertainment, Inc. v. Mattel, Inc. pursuant to 28 U.S.C. §§ 1331, 1338(a),

9   17 U.S.C. §§ 101 et seq., and 18 U.S.C. § 1964(c).  This court has supplemental

10  jurisdiction over Mattel's state law counterclaims pursuant to 28 U.S.C. § 1367.

11          Venue in this Court for MGA Entertainment, Inc. v. Mattel, Inc. is

12  alleged to be proper pursuant to 28 U.S.C. §§ 1391(b) - (d), 1391(f) and 1400(a) and

13  18 U.S.C. § 1965.

14                                    **IV.**

15                              **TRIAL ESTIMATE**

16          The parties understand that the Court has directed each side to complete

17  the presentation of evidence in Phase 1, including the examination and cross-

18  examination of witnesses, in 60 hours.  The parties further understand that the 60

19  hours shall not apply to argument, jury selection, opening statements, or closing

20  arguments.

21          Consistent with the express language of the Court's April 7, 2008 Order

22  [Docket No. 2998], the 60-hour limit may be enlarged "if extraordinary

23  circumstances warrant such relief."  Apr. 7, 2008 Order, at 2.

24

25                                    **V.**

26                              **TYPE OF TRIAL**

27          The trial is to be a jury trial, except for issues which are not properly

28  tried to jury.  Pursuant to the Court's Scheduling Order, the parties have already

EXHIBIT _____ 44

PAGE _____ 252

1  delivered to the Court (a) a set of Joint Proposed Jury Instructions and (b) a set of

2  disputed Jury Instructions, along with reasons supporting and opposing each

3  disputed instruction, and (c) at the Pre-Trial Conference brief proposed voir dire

4  questions for the jury.  The parties shall revise and supplement the jury instructions

5  and verdict forms on or before June 6, 2008, in light of the Court's May 22 and May

6  23 Orders relating to the parties' respective motions for partial summary judgment

7  and motions *in limine*, as well as the Court's May 22, 2008 Order on the MGA

8  Parties' motion for reconsideration.

9          The Court intends to rule upon the MGA parties' equitable affirmative

10  defenses at the close of the Phase 1 trial, but will allow evidence as to these defenses

11  to be presented to the jury.  The Court may have the jury answer special

12  interrogatories as to certain of these equitable defenses so as to establish the

13  requisite factual findings for the Court to rule upon such defenses.

14

15                              **VI.**

16                    **STIPULATED FACTS**

17          1.      The following facts have been stipulated, and shall be deemed

18  established:[1]

19                          **Parties**

20          1.      Mattel, Inc. is a corporation formed under the laws of the State of

21                  Delaware with its headquarters in El Segundo, California.

22  _____

23  [1]  The parties to this action do not understand the rules to require the recitation

24  of admissions in the Pre-Trial Conference Order for those admissions to be
    introduced at trial.  Therefore, admissions are not included herein.

25      The parties' lists of facts herein are not exhaustive.  The parties reserve the right

26  to introduce additional evidence in support of their claims — or in opposition to

27  affirmative defenses — at trial.  In addition, the parties intend to introduce expert
    evidence not listed below in support of its claims.

28

EXHIBIT _____44____

PAGE _____253____

2.     MGA Entertainment, Inc. is a privately held California corporation.

3.     MGA Entertainment (HK) Limited, a Hong Kong company, and MGAE de Mexico, S.R.L. de C.V., a Mexico corporation, are wholly owned subsidiaries of MGA Entertainment, Inc.

4.     Isaac Larian, an individual, is the CEO and majority shareholder of MGA Entertainment, Inc. and is a resident of California.

**Bryant's Employment at Mattel**

5.     Carter Bryant first worked for Mattel in the mainline Barbie group from September 1995 to April 1998.

6.     Bryant signed a document titled "Employee Confidential Information and Inventions Agreement," dated November 6, 1995.

7.     Bryant signed a document titled "Conflict of Interest Questionnaire," dated November 6, 1995.

8.     Bryant left California in December 1997 and moved to Missouri to live with his parents, where he continued to do work for Mattel until April 1998.

9.     In late December 1998, Mattel offered Bryant a position in the Barbie Collectibles group.

10.     Bryant accepted Mattel's offer, moved back to California, and started work at Mattel on January 4, 1999.

11.     Bryant signed a document titled "Employee Confidential Information and Inventions Agreement" dated January 4, 1999.

12.     Bryant signed a document titled "Conflict of Interest Questionnaire," incorrectly dated January 4, 1998, instead of 1999.

EXHIBIT ___44___

PAGE ___254___

13.   Before Bryant left Mattel, he was asked to and did participate in an exit interview.

14.   During his exit interview, Bryant signed a document titled "Proprietary Information Checkout," dated October 19, 2000.

15.   Carter Bryant, an individual, is a resident of Missouri.

## VII.
## CLAIMS

### A.   MATTEL INC.'S CLAIMS AND COUNTERCLAIMS

Except to the extent already adjudicated in its favor by the Court's Orders re Summary Judgment, and pursuant to the Court's July 5, 2007 Phasing Order, Mattel, Inc. plans to pursue the following claims and counterclaims against the defendants in Phase 1 trial as indicated[2]:

---

[2]   Mattel has claims for misappropriation of trade secrets that are being reserved for Phase II of this litigation.  To the extent defendants seek to raise the issue of trade secrets during Phase I, either as a claim or as an affirmative defense, Mattel reserves its right to argue its misappropriation of trade secrets claim in Phase I. The MGA parties note that the Court gave specific guidance on this issue and expressly limited the type of evidence that Mattel may introduce that falls outside of the scope of Phase I of the trial in ruling on the MGA parties' motion *in limine* number 6.

EXHIBIT ____44____

PAGE ____255____

1      **Claim 1: Intentional Interference with Contract (Against Larian**
2  **and MGA).**
3      **Claim 2: Aiding and Abetting Breach of Fiduciary Duty (Against**
4  **Larian and MGA).**
5      **Claim 3: Aiding and Abetting Breach of Duty of Loyalty (Against**
6  **Larian and MGA).**
7      **Claim 4: Conversion (Against MGA, MGA HK and Larian).**
8      **Claim 5: Statutory Unfair Competition (Against Larian, MGA,**
9  **and MGA HK).**
10      **Claim 6: Declaratory Relief (Against Larian, MGA, and MGA**
11  **HK) (ownership of original Bratz works and associated copyrights allegedly**
12  **created by Bryant while employed by Mattel)**
13      **Claim 7: Copyright Infringement (Against Larian, MGA, and**
14  **MGA HK)**
15      The parties stipulated, and the Court agreed, that contentions of law and
16  fact, were not necessary and would not be productive, in light of the parties'
17  exhaustive briefing of the same issues in their cross-motions for partial summary
18  judgment and the fact that the Court has not yet ruled on certain of those cross-
19  motions.
20
21                          **VIII.**
22              <u>**DEFENDANTS' AFFIRMATIVE DEFENSES**</u>
23      Relevant to Phase 1 of the Trial, Defendants assert the following
24  affirmative defenses:
25      Affirmative Defense 3: Laches
26      Affirmative Defense 4: Statute of Limitations
27      Affirmative Defense 5 and 6: 205(d)/Bona Fide Purchaser for Value
28      Affirmative Defense 9: Estoppel

EXHIBIT _____ 44

PAGE _____ 256

1   Affirmative Defense 10:  Acquiescence

2   Affirmative Defense 11:  Mitigation

3   Affirmative Defense 13:  Waiver

4   Affirmative Defense 14: Abandonment

5   Affirmative Defense 15: *De Minimus* Use

6   Affirmative Defense 17: Privilege/Justification

7   Affirmative Defense 18: Good Faith

8   Affirmative Defense 21: Consent

9   **MGA PARTIES' AFFIRMATIVE DEFENSE TO COPYRIGHT DAMAGES**

10  MGA, MGA (HK), and/or Larian must prove:

11     1.    Expenses deductible from gross revenues causally connected to the

12           alleged infringement;

13     2.    Elements of defendants' profit attributable to factors other than the

14           copyrighted work.

15

16                    **IX.**

17              **DISCOVERY**

18      Phase 1 Discovery is not complete, but will be within two weeks.

19  Counsel have waived any prejudice from commencing trial without completing

20  discovery.  Phase 2 discovery has been stayed.  Many Phase 1 discovery motions

21  remain to be heard.  The parties are working to complete them as expeditiously as

22  possible.

23

24                    **X.**

25              **EXHIBITS**

26      All disclosures under F.R.Civ. P. 26(a)(3) have been made.  The joint

27  exhibit list of the parties has been filed.

28

EXHIBIT _____ 44

PAGE _____ 257

## XI.

## WITNESSES

All disclosures under F.R.Civ.P. 26(a)(3) have been made.  Witness lists of the parties have been filed with the Court pursuant to the schedule approved by the Court.  Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7.  For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1:  William Ackerman (Art Attacks), Bryant Joseph Armstrong, Nana Ashong, Schuyler Bacon, Ronald Brawer, Kerry Brode, Charnayne Brooks, Carter Bryant, Carter Bryant (Art Attacks), Carter Bryant (Gunther-Wahl), Janet Bryant, Thomas Bryant, Ana Cabrera, Mei Wah (Sarah) Chui, Elise Cloonan, Nick Contreras, Daniel Cooney, Wendy Feinberg, Jeanne Galvano, Paula Garcia, Paula Garcia (Art Attacks), Brooke Gilbert, Kami Gillmour, Daphne Gronich, Sarah Halpern, Esther Han, Rachel Harris, Rebecca Harris (Art Attacks), Amy Hyland, Richard Irmen, Mitchell Kamarck, Samir Khare, Andreas Koch, Susana Kuemmerle, Robert Kullman, Farhad Larian, Isaac Larian, Isaac Larian (Art Attacks), Isaac Larian (Larian v. Larian), Isaac Larian (Ubisoft), Margaret Leahy, Edmond Lee, Steven Linker, Kenneth Lockhart, Jennifer Lynn Maurus (Larian v. Larian), Albert Lyter, David Malacrida, Peter Marlow, Veronica Marlow, Karl Meyer, Beatriz Morales, Amy Myers, Joyce Ng, Victoria O'Connor, Sarah D. Odom, Denise O'Neal, Jacqueline Prince, Jessie Ramirez, Anna Rhee, David Rosenbaum, Lon Ross (Fun4All), Maria Salazar, Shirin Salemnia, Joe Tiongco, Maureen Tkacik, Lisa Tonnu, Anne Wang, Jeffrey Neil Weiss, Spencer Woodman, Mel Woods, and MGA's 30(b)(6) witness regarding Larian v. Larian.

Additional depositions to be lodged: Ronald Brawer, Richard DeAnda, Ann Driskill, Robert Eckert, Kevin Farr, Lissa Freed, Jeanne Galvano, Hoi Hoffman-Briggs, Brian Hooks, Julia Jensen, Alan Kaye, Fred Kawashima, Tim Kilpin, Liliana Martinez, Heather McComb, Ginger McRae, Nicholas Mirzoeff,

EXHIBIT ____44____

PAGE ____258____

1  Teresa Newcomb, Jill Nordquist, Ralph Oman, Rodney Palmer, Joni Pratte,

2  Jacqueline Prince, Kathleen Simpson-Taylor, Maureen Tafoya, and Sandra

3  Yonemoto.

4         Furthermore, certain depositions have been recently taken or remain to

5  be taken.  The parties will advise the Court of such transcripts to be lodged as they

6  become available and relevant.

7         Pursuant to ¶ 97 of the Court's Scheduling Order, the parties identify

8  the following expert witnesses to be called:

9         Mattel: Valery Aginsky, John Alex, Lloyd Cunningham, William

10  Flynn, Frank Keiser, Lee Loetz, Mark Menz, Nicholas Mirzoeff, Ralph Oman,

11  Walter Rantanen, Carol Scott, Bryce Stein, Michael Wagner, Robert Lind, Angel

12  Gomez, Heather McComb, Ginger McRae, Denise Van Patten, and Kenneth

13  Hollander.

14         Defendants:  Mary Bergstein, D. Jan Duffy, Thomas S. Gruca, Erich

15  Joachimstaler, Robert D. Kullman, Albert H. Lyter, Peter Menell, Paul Meyer,

16  Debora Middleton, Robert Tonner, Glenn Vilppu, Douglas Kidder, and Gary Funck.

17         The following law and motion matters and motions in limine have been

18  decided:

19         Mattel has filed the following motions *in limine*:

20         1.    MIL No. 1 to exclude: (1) evidence or argument that Bryant's

21  invention assignment agreements are unfair or unconscionable; (2) evidence of other

22  versions of Mattel's inventions agreements; and (3) expert testimony of D. Jan

23  Duffy;

24         Granted.

25         2.    MIL No. 2 to exclude evidence, argument or reference to

26  Mattel's alleged motive in filing suit or re consequences thereof ;

27         Denied as written.  Will allow late evidence with proper foundation.

28  Consequences of lawsuit to MGA may not be admitted.

EXHIBIT _____ 44

PAGE _____ 259

1    3.  MIL No. 3 to exclude Phase 1(B) evidence in the Phase 1(A)

2 trial and Phase 2 evidence in the Phase 1 trials or, in the alternative, to permit

3 expedited Phase 2 discovery;

4     Granted insofar as apportionment and responsive evidence is limited to

5     1B; deferred on rest.

6    4.  MIL No. 4 to preclude introduction to jury of evidence and

7 testimony relating to equitable defenses to be tried by court ;

8     Denied.

9    5.  MIL No. 5 to exclude evidence of or argument concerning other

10 lawsuits and other purported bad acts and dismissed defenses;

11     Granted as to Nos. 1-4 and 10; Denied without prejudice to specific

12     objections as to Nos. 5-9.

13    6.  MIL No. 6 to exclude evidence or argument concerning actions

14 taken by or against Mattel employees other than Carter Bryant;

15     Granted in part and denied in part; Evidence is admissible only if such

16     other employees are analogous to Bryant.

17    7.  MIL No. 7 to preclude the MGA Defendants from asserting or

18 relying on an advice of counsel defense;

19     Granted.  However, the MGA Parties can introduce Rosenbaum's

20     testimony relaying his factual conversations not as reliance on any legal

21     advice he gave but as to the fact that he undertook certain actions and had

22     certain conversations, provided otherwise admissible.

23    8.  MIL No. 8 to exclude evidence relating to whether Mattel would

24 have marketed Bratz;

25     Granted as to 1A; Deferred as to 1B.

26    9.  MIL No. 9 to exclude argument, evidence, or expert testimony

27 regarding Barbie and other Mattel dolls;

28     Daubert hearing to be held one day prior to testifying.

EXHIBIT _____ 44

PAGE _____ 260

1        10.    MIL No. 10 to exclude testimony by Glenn V. Vilppu;

2        Daubert hearing to be held one day prior to testifying.

3        11.    MIL No. 11 to preclude Defendants from offering improperly

4   disclosed evidence;

5        Granted as to test project.  Deferred on apportionment issues otherwise

6        denied.

7        12.    MIL No. 12 to exclude the testimony of Peter S. Menell;

8        Daubert hearing to be held one day prior to testifying.

9        13.    MIL No. 13 to exclude expert testimony of Mary Bergstein,

10  Robert Tonner, and Debora Middleton;

11        Daubert hearing to be held one day prior to testifying.

12        14.    MIL No. 14 to exclude evidence and argument related to certain

13  discovery matters;

14        Granted.

15        15.    MIL No. 15 for a preclusion order regarding MGA's disqualified

16  expert Christina Tomiyama.

17        Taken under submission.  Deferred ruling until Phase 1(b).

18        Defendants filed the following motions in limine:

19        1.    MGA Parties' Notice of Motion and Motion in Limine Number 1

20  to  Exclude All Evidence Relating to Litigation or Other Proceedings Between Isaac

21  and Farhad Larian;

22        Denied.

23        2.    MGA Parties' Notice of Motion and Motion in Limine Number 2

24  to  Exclude All Evidence Relating to Isaac Larian's Wealth and Assets;

25        Granted in part, denied in part. General evidence regarding Mr. Larian's

26  wealth is inadmissible.  Any gain to Larian from Bratz may be introduced only in Phase

27  1b.  In Phase 1a, Mattel only may submit evidence of what Larian stood to gain **at the**

28  **time** of any alleged breach, not subsequent gain.

EXHIBIT _____ 44

PAGE _____ 261

1            3.     MGA Parties' Notice of Motion and Motion in Limine Number 3

2 to Exclude Reference to and Use of Evidence of Other Legal Proceedings;

3            Granted insofar as findings of foreign courts are excluded unless they

4 are the only evidence of MGA's prior positions.

5            4.     MGA Parties' Notice of Motion and Motion in Limine Number 4

6 to Exclude Reference to and Use of MGA's Employment Agreements With its

7 Employees;

8            Denied.

9            5.     MGA Parties' Notice of Motion and Motion in Limine Number 5

10 to Exclude References to Prior Legal Representation;

11           Granted.

12           6.     MGA Parties' Notice of Motion and Motion in Limine Number 6

13 to Exclude Reference to and Use of Phase Two Evidence;

14           Denied as to Nos. 1, 2, and 5. Based on stipulation of counsel, moot as

15 to Nos. 4 and 6. Granted as to No. 3 in 1A but door may be opened in 1B.

16           7.     MGA Parties' Notice of Motion and Motion in Limine Number 7

17 to Exclude All References to and Use of Certain "Expert" Testimony Proffered by

18 Mattel Witness Michael J. Wagner;

19           Daubert hearing to be held one day prior to testifying.

20           8.     MGA Parties' Notice of Motion and Motion in Limine Number 8

21 to Strike Expert Rebuttal Report of Kenneth Hollander and Sections of Expert

22 Rebuttal Reports of Heather McComb, Denise Van Patten, and Nicholas Mirzoeff;

23           Daubert hearing to be held one day prior to testifying.

24           9.     MGA Parties' Notice of Motion and Motion in Limine Number 9

25 to Strike the Expert Report and Testimony of Ralph Oman and John Alex;

26           Daubert hearing to be held one day prior to testifying.

27

28

-17-           Case No. CV 04-9049 SGL (RNBx)

FINAL PRE TRIAL CONFERENCE ORDER

EXHIBIT _____44_____

PAGE _____262_____

1       10.     MGA Parties' Notice of Motion and Motion in Limine Number

2  10 to Exclude All References to and Use of Certain "Expert" Testimony Proffered

3  by Mattel Witness Carol A. Scott;

4       Daubert hearing to be held one day prior to testifying.

5       11.     MGA Parties' Notice of Motion and Motion in Limine Number

6  11 to Strike the Expert Rebuttal Report of Robert C. Lind;

7       Daubert hearing to be held one day prior to testifying.

8       12.     MGA Parties' Notice of Motion and Motion in Limine Number

9  12 to Strike Portion of the Expert Report of Lee Loetz;

10       Daubert hearing to be held one day prior to testifying.

11       13.     Motion in Limine Number 13:  To exclude evidence and

12  argument regarding alleged spoliation by Bryant;

13       Hearing to be held one day prior to Bryant testifying; hearing to include

14  Bryant and experts; excluded from opening statement.

15       14.     Motion in Limine Number 14:  To exclude evidence and

16  argument regarding Bryant's alleged "borrowing" of ideas or concepts from

17  preexisting Mattel projects, including Toon Teens, Diva Starz, the "Swan" line, and

18  Skipper.

19       Denied.

20       The Court ruled upon or otherwise addressed the remaining motions

21  during recent hearings.

22       Bifurcation of the claims and counterclaims was ordered pursuant to

23  the Court's Order of July 2, 2007.  The claims and counterclaims to be tried in Phase

24  1 trial are set forth herein.  The claims remaining for trial in Phase 2 are set forth on

25  pages 8-9 in Mattel's Memorandum of Trial Structure, filed June 20, 2007, as

26  adopted in the July 2, 2007 Order.  At the hearing on May 22, 2008, the Court

27  provided guidance to the parties as to the issues that may be tried as part of Phase 1a

28  versus Phase 1b.

EXHIBIT ____44____

PAGE ____263____

1    The foregoing admissions having been made by the parties, and the

2  parties having specified the foregoing issues of fact and law remaining to be

3  litigated, this Pretrial Conference Order shall supersede the pleadings as they relate

4  to claims or defenses to be tried in Phase 1 and govern the course of the trial of the

5  Phase 1 claims and defense, unless modified to prevent manifest injustice.

6  DATED:  June 04. 2008

7

8

9  Approved as to form by:

10  QUINN EMANUEL URQUHART OLIVER &
    HEDGES, LLP

11

12   By /s/ John B. Quinn
         John B. Quinn, Esq.
13         Attorneys for Mattel, Inc.

14

15  SKADDEN, ARPS, SLATE, MEAGHER &
    FLOM LLP
16

17

18   By /s/ Thomas J. Nolan, Esq.
         Thomas J. Nolan, Esq.
19         Attorneys for MGA Entertainment, Inc.

20

21

22

23

24

25

26

27

28

EXHIBIT _____ 44

PAGE _____ 264

# EXHIBIT 45

Aug 11 03 05:08p        Carter                    4177257936                    p.1



**PATENT**

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | Isaac Larian | Examiner: | Ali Abdelwahed |
| Serial No. | 10/373,602 | Group Art Unit: | 3712 |
| Filed: | February 24, 2003 | Docket No. | 15904-142 |
| Title: | DOLL WITH AESTHETIC CHANGEABLE FOOTGEAR | | |

CERTIFICATE UNDER 37 CFR 1.8
I hereby certify that this correspondence and identified enclosures are being deposited with the United States Postal Service, as first class mail, postage prepaid, under 37 C.F.R. 1.8 on the date indicated, and is addressed to the Mail Stop Non-Fee Amendment, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on August 12, 2003.

Justina S. Townsend

Mail Stop NON-FEE AMENDMENT
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### DECLARATION OF CARTER BRYANT

I, CARTER BRYANT, hereby declare as follows:

1. I am the president of Carter Bryant Enterprises, 634 West Mt. Vernon, Suite 264, Nixa, MO, 65714; and I have been in the freelance design field for about eight (8) years.

2. I am familiar with the Bratz doll projects of MGA Entertainment and I have worked with Isaac Larian president of MGA Entertainment on the Bratz doll project.

3. I am familiar with the doll designs as shown in the attached drawings from the above-identified patent application. These dolls have strap type shoes, and the dolls have a snap on feature at about the ankle of the dolls so that different footgear may be mounted on the doll. Regarding the strap type shoes, as disclosed in the patent application, the coloring of the skin tone on the exposed areas of the feet are matched to the coloring of the lower legs of the dolls.

EXHIBIT    45
PAGE       247

MGA 0825457

EX 502-0001

Aug 11 03 05:08p    Carter                    4177257936                    p.2

Serial No. 09/647,752

4.    I was actively involved with the release of the Bratz dolls of the configuration as set forth in paragraph 3 above, and this release did not occur until the fall of the year 2002.

I hereby declare that all statements made herein of my own knowledge are true, and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patent application issuing thereon.

Respectfully submitted,

Carter Bryant

Attached:
    2 Sheets Drawings

- 2 -

FAX:1310318 3508           PAGE  3/ 3
LOCATION:4177257936
FILE No.106 08/11 '03 14:59  ID:OPPENHEIMER
RX TIME   08/11 '03 15:07

EXHIBIT  45
PAGE  248

MGA 0825458

EX 502-0002

1/2



FIG. 1

FIG. 2

EXHIBIT   45
PAGE   249

MGA 0825459

EX 502-0003



2/2

FIG. 3

FIG. 4

FIG. 5

EXHIBIT 45
PAGE 250

MGA 0825460

EX 502-0004

# EXHIBIT 46

| From: | Isaac Larian |
|---|---|
| To: | Victoria O'Connor; Dave Malacrida; Aileen Storer; Paula Treantafelles; Margo Chazen; Dianna Eisenberg |
| CC: | Abe Mirza; Julie Mote; Beth Cahill |
| BCC: | |
| Sent Date: | 2002-03-12 12:17:42:953 |
| Received Date: | 2002-03-12 12:17:42:953 |
| Subject: | FW: Hi |
| Attachments: | |

Victoria, Dave: Who gave David Dees info and what he does for us to this Yahoo lady and why?

This Yahoo lady is giving us too much legal grief even though she does not mean it.

Please DO NOT send any information or reply to her e mails unless you have cleared it with me.

Julie/Beth/ Abe:                                  There must be no mention about Mattel or any of their properties, Carter , any MGA Bratz arts ,etc.


-----Original Message-----
From: Paula Treantafelles
Sent: Monday, March 11, 2002 5:55 PM
To: Isaac Larian; Abe Mirza; Beth Cahill
Subject: FW: Hi

-----Original Message-----
From: David Dees [mailto:davodees@hotmail.com]
Sent: Saturday, March 09, 2002 12:37 PM
To: bryant598@cs.com
Subject: Hi

Hi Carter,

I thought you would enjoy this letter i wrote to the Bratzworld club on Yahoo. It starts off with the club leader introducing it. Dees.

Hello!

I'm posting a wonderful letter from David Dees- the guy who does the awesome art we love to look at on the Bratz website and on posters and wherever Bratz girls are. I just want to post it to its own message so I can save that as a text file in the David Dees folder in files so you can read it anytime you like. We've



EXHIBIT
4507

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA 3801819

EXHIBIT   46
PAGE   251

4507 - 1

EX 4507-0001

always liked it that MGA communicates with the Bratz fans and this takes it even further into VERY COOL land.

Make sure you also check out his portfolio for all the other stuff he does- you've probably seen lots of it- he's extremely talented!

Okay enough from me- I'll post his letter right after this
:)
snowflakebebe

>Hello my name is Christian (I'm a girl!) and I do a fan list for the Bratz
>dolls and I was wondering if you could post and maybe share some of your
>other Bratz art that we may not have seen (we have lots of it in the files
>section) - or talk about your experience working on the illustrations of
>the
>Bratz. I am in contact with MGA and they have endorsed this "fan club" so
>if
>I need to get permission from them for anything I can ask- but I hope
>you'll
>share some art if you can. We have the link to your portfolio up in our
>files and bookmark section. Come visit sometime :) We love your art. Its
>a
>big part of the fun of the Bratz :)

Hi Christian,

Thanks so much for your letter and interest in the world of Bratz. I talked to the art director at MGA , and she said that of course i am not the one to be releasing any Bratz art ahead of time, so i will check and see if i can post some of that older airbrush art for you. She also said MGA is in the process of building a new website that is going to be packed to the hilt with cool art of all the new fashions, and believe me, they are wild and colorful as i just finished about thirty new pieces of art that will amaze you.

I work freelance as an illustrator and have my own studio at home where i paint at my leisure, but if a job comes in you can be sure that it is usually being rushed. My immediate live-in family consists of two furry felines. A crosseyed siamese mix named Buddy, and a female red striped tabby named Goose.

I am swamped right now with colorizing lots of the new wacky funk styles, and there are new hats and boas and tops that I got a kick out of. However I can't take credit for creating the Bratz Dolls, or even the first Bratz illustrations, for that honor would go to a fellow named Carter Bryant*, who is truly a genius of fashion and the soul and only person who first drew those great pouty lips and that extreme look that only our heros share. I have never met him personally, but on the phone and emails he is certainly the nicest sincere fellow ever, and very optimistic and complementary about my art in his approach. It felt good early on when he would tell me i was doing a good job bringing them to life. Can you tell I am a fan of his as

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA 3801820

EXHIBIT __46__
PAGE __252__

EX 4507-0002

well?

Let me tell you about MGA. It is located in North Hills, California, at the west end of the beautiful San Fernando Valley, where i lived for many years, but now i live in Salt Lake, where the Olympics just were. Anyway, when you walk into the big, high ceiling lobby there is a real pretty receptionist with reddish brown hair (and that sometimes wears leopard prints), and if you look to the left you will see the stairs wind up to the second floor where all the cool stuff happens. And as you start up them there is, to the right, a little rock garden with plants, and it always has some of the new toys, like robot dogs, insectobots, or baby dolls sitting in there as if they are playing. As you get to the top of the stairs, that is if you can get permission to come up to this top secret place, the first thing you notice to your right is two big doors opening into a spacious office with a fancy glass desk, usually covered with toys, and sitting there working busily away is a great fellow named Isaac, who is the owner, president, and creator of most of the MGA toys. He always seems to leave his doors open and when i stop by to pick up a job i glance in and wave if he happens to look up.

The first big area past there has lots of low partitioned cubicles with all the business people who keep the finances working, but then the next rows are the package and advertising designers, which is sort of the front line of the creativity, and as you continue up the steps there is a silly sign hanging that says Design Farm, and that is the beginning of the art studios. It always freaks me out to go in there because it is a busy beehive of toy ideas and designers flying around like a tornado. It is a big open room with black walls and bright lights shining down spotlighting the work areas, and colorful toys and wacky new ideas and drawings lining the walls. The middle area has a long table work table covered with new toy packages being assembled for the first time, with most of the mocked up packages being created by cutting and pasting by hand, and only after the idea is shown through many approval lines is it mass produced. Sometimes a whole new line of Bratz accessories will be displayed, and i am amazed at the details of the clothes at such a small scale. When i pop in i am usually asked for my opinion about the new toys, such as if i think they will be popular or how to promote them, and i am always happy to put in my two cents. There are about a dozen or so design areas with computers that surround the work table, and at each station is someone with more talent than you can imagine all corraled into one group. That is why they come up with such great stuff. There is also a window on one wall and whenever i look out of it, it is stunning to look down into the warehouse which quite a large expanse of big boxes and lifts carrying them around. I guess that is the tour.

About working on the illustrations, well they are all colored on the computer. The best thing i can say is that i finally figured out a great way to paint their hair that flows great, and looks sort of real. But that is in the last group of art i just finished and it will available to you soon i suppose. If you have any suggestions about any of the art I always welcome your viewpoint.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

MGA 3801821

EXHIBIT ___46___
PAGE ___253___

EX 4507-0003

Anyway that is about it. I will send in anything that i am allowed to release to you guys, or check my website for new art that i am putting up all the time. Feel free to download any art that you like off my site. See ya, david.

(* You can do a google.com search under Carter Bryant and you can see some things he has done.

-snowflakebebe)

WOW what a cool letter... i have to say again that everyone so far involved with the Bratz company is so cool, and responds personally and actually takes some time.... as for Carter Bryant i searched and searched and came up with nothing. so if any one find his website, can you post the URL... ;) many thanks...

Pink Glitter
>>Vayne<<
xxx

Get your FREE download of MSN Explorer at http://explorer.msn.com/intl.asp.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA 3801822

EXHIBIT _46_
PAGE _254_

EX 4507-0004

# EXHIBIT 47

| From: | Isaac Larian |
|---|---|
| To: | Dee Dee Valencia |
| CC: | |
| BCC: | |
| Sent Date: | 2003-02-06 20:05:14:687 |
| Received Date: | 2003-02-06 20:05:14:687 |
| Subject: | RE: Bratz |
| Attachments: | |

Good ideas.

Lets share with the team after NY and execute.

-----Original Message-----
**From:** Dee Dee Valencia
**Sent:** Thursday, February 06, 2003 11:59 AM
**To:** Isaac Larian
**Subject:** RE: Bratz

Okay ... I am jotting down my first thought .... I'll think more. Had experience in past lives in collectible market....

Limited Edition Collectible # of pcs low low low – build for the future

SELLING - DISTRIBUTION
-Go for 2 partners; 1 TV (QVC) and other Hallmark sold in Collectibles Section (next would be ornaments with Hallmark)
-Offer the first 1,000 to our fan club members - 1st come first serve - build frenzy then you can advertise that the remaining # is going to be on QVC and in Hallmark only for a limited time.
-This strategy would also help, 'literally presell' the program to QVC & Hallmark. Built in demand, advertised, slam dunk!
-After market sales - will boom - ebay.... keep track of it .. powerful ...

FEATURES:
-Signed by....???? - I know we want to keep Carter under wraps ...

-Custom / Original art of girls as the certificate of authenticity - framed for room and showing off to friends

-The box is JUST AS IMPORTANT as THE PRODUCT in the collectible market. So packaging needs to be authentic and out of this world.

Product Ideas:
-Porcelain real hair, real fabrics as accents - high high detail
-Tie to well known hip fashion designer that designed clothing for extra equity
-Set of 4 dolls 6"-8"high (size smaller than mass market dolls - these are display only pcs)
-They need to be sold in a showcase cool environment - funky - this is part of the display in their room
-Something exclusive for the girl herself ... exclusive fashion bag is my first thought ...

I'll think more.... we should absolutely utilize the Bratz Fan Club more. They 'expect' to be the first ones to know what is up and coming for Bratz. This is a built in base for exclusive or allocated or presold sell of goods.

DD

(2 pgs)
Exhibit no. 4942
Date: 3/26/08
Larian, I. P.Pybum

MGA 3801558
EX 4942-0001

-----Original Message-----
**From:** Isaac Larian
**Sent:** Wednesday, February 05, 2003 8:13 PM
**To:** Summer Wells; Paula Treantafelles; Dee Dee Valencia; Shawn Brower; Randi Kagan
**Subject:** Bratz

What do you think about the idea of developing a high end ,really cute, older, collectable plush to sell only in Specialty and gift? For dolls, may be we do a plastic head?

Let me know what do you think?

Isaac Larian
CEO
MGA ENTERTAINMENT
*A Consumer Entertainment Product Company*
16730 Schoenborn Street
North Hills, California, 91343-6122
Tel: 818-894-3150
Fax:818-894-1267
llarian@mgae.com
www.MGAE.COM
Meet the girls with Passion for Fashion
www.Bratzpack.com

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT  47
PAGE  256

MGA 3801559
EX 4942-0002

# EXHIBIT 48

Claimant
Isaac Larian
First
Exhibits IL 1 and ILA-D
/4.05.04

IN THE HIGH COURT OF JUSTICE

CHANCERY DIVISION

INTELLECTUAL PROPERTY

B E T W E E N :

MGA ENTERTAINMENT, INC.

Claimant

- and -

THOMAS CHRISTOPHER JOSEPH METSON

Defendant

## AFFIDAVIT OF ISAAC LARIAN

I, **ISAAC LARIAN**, of 16730 Schoenborn Street, North Hills, California, CA 91343, USA MAKE OATH and say as follows:

**Introduction**

1.  I am the Chief Executive Officer of the Claimant. I make this statement in support of the Claimant's applications for a disclosure order under CPR Part 25.1(1)(h), CPR Part 31 and the Court's equitable jurisdiction, and an interim injunction to restrain the Defendant from dealing in unlawful BRATZ trading cards under CPR 25.1(a) (set out in the Application Notice issued in these proceedings.

2.  Save where otherwise stated, I make this statement from facts within my own knowledge. Where I state facts which are not within my own knowledge, the source of my information is identified. I am duly authorised to make this Affidavit on behalf of the Claimant.   295

(53 pgs)

Exhibit no. 947
Date: 10/9/07
Woodman  P. Pyburn

M17447.115/LT:327391.2/eeal

Confidential - Attorney's Eyes Only

EXHIBIT ___48___

PAGE ___257___

MGA 0868039

EX 947-0001

3.    I have been the Chief Executive Officer of the Claimant since the Claimant was founded in 1979.

4.    There is now produced and shown to me marked **Exhibit "IL 1"** a bundle of copy documents to which I shall refer in this affidavit by reference to the relevant page numbers.

**The Claimant**

5.    The Claimant was founded as a consumer electronics business in 1979.  It entered the toy business in 1987 when it obtained an exclusive licence to sell Nintendo hand-held games in the US.  The Claimant subsequently obtained licences for other toy products including HELLO KITTY and POWER RANGERS and then developed its own branded toys such as BRATZ dolls.

6.    The Claimant has offices in Los Angeles, Hong Kong, Mexico and Canada and has over 450 employees. The Claimant sells its products around the world including in the US and Europe.

7.    Today, the Claimant has achieved earnings in excess of US$600 million in 2003 and its earnings are projected to be US$1 billion in 2004.  About 65-70% of the Claimant's business relates to BRATZ dolls and related merchandise (see below).

8.    I established the Claimant and was the inspiration behind the BRATZ dolls.  I have been the main driving force behind the success of the Claimant.

**The BRATZ Dolls**

9.    The Claimant started promoting and selling the BRATZ dolls in the US in June 2001.  The first four characters were "Cloe", "Sasha", "Jade" and "Yasmin".

10.    The BRATZ dolls have distinctive oversized heads decorated with exaggerated eyes and

296

EXHIBIT _____ 48

Confidential - Attorney's Eyes Only

PAGE _____ 258

MGA 0868040

EX 947-0002

211.    In the circumstances, I respectfully request that this Honourable Court should grant the
        injunction and disclosure order sought by the Claimant in this action.

Sworn at  14730 SchoeNBoRN St.
          NoRth Hills, CA. 91343

          MOY 14, 2004

          Before me    _Jacob David Newcomb_

          JOSEPH DAVID NEWCOMB
          Commission # 1466241
          Notary Public - California
          Los Angeles County
          My Comm. Expires Jan 27, 2008

                                                    346

EXHIBIT _____ 48

PAGE _____ 259

Confidential - Attorney's Eyes Only                    MGA 0868090

EX 947-0052

Claimant
Isaac Larian
First
Exhibits IL 1 and ILA-D
/ 4 .05.04

IN THE HIGH COURT OF JUSTICE

CHANCERY DIVISION

INTELLECTUAL PROPERTY

B E T W E E N:

MGA ENTERTAINMENT, INC.

Claimant

- and -

THOMAS CHRISTOPHER JOSEPH METSON

Defendant

---

**AFFIDAVIT OF ISAAC LARIAN**

---

SJ Berwin
222 Gray's Inn Road
London   WC1X 8XF

Tel:  020 7533 2222

Ref:  M17447.115/LT:327391.2/eaal

347

M17447.115/LT:327391.2/eaal

Confidential - Attorney's Eyes Only

EXHIBIT     48

PAGE     260

MGA 0868091

EX 947-0053

# EXHIBIT 49



# ANNUAL RETIREMENT GUIDE

The McGraw-Hill Companies

# BusinessWeek

JULY 28, 2003

www.businessweek.com

## CITI'S NEXT ACT

**STOCK VS. OPTIONS**
THE NEW EXEC COMP GAME

**STRATEGIES**
- YAHOO!
- GENERAL MILLS
- MATTEL

**GE**
MEET CHARLENE BEGLEY, A RISING STAR

**INVESTING**
HOW OUR WALL STREET COLUMN PERFORMED

**CHUCK PRINCE**, Sandy Weill's top troubleshooter, is the unlikely choice to become CEO. Does he have the right stuff to lead the world's most important bank? PAGE 30

HHXHHGOD RRRCR LOT 0016A*C033
HJLIZI2IG09I 0#300116     BX003676
||||||||||||||||||||||||||||||||||||||
                              071994
GARY JOLICOEUR         MAR 22 04  0975
2121 GATES AVE B          T099
REDONDO BEACH  CA  90278-2007



Exhibit no. 631
Date: 8/30/07
Mabride     Pyburn

M 0074054

EXHIBIT 49
PAGE 261

631.1

EX 631-0001

**COMMENTARY**
By Christopher Palmeri

M 0074055

EXHIBIT ___49___
PAGE ___262___

6 31. 2

EX 631-0002



Mattel won't live or die on every new toy it develops. But it can't just rely on Barbies, either. "Like they say in business school—no risk, no reward," says Isaac Larian, CEO of privately held MGA. He should know. He got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers. As Eckert is finding out, sometimes the best ideas are right in front of you.

*Palmer covers toys from Los Angeles.*

M 0074056

EXHIBIT    49
PAGE    263

631.3
EX 631-0003

# EXHIBIT 50

**Immigrant's Creative Company Shakes Up Toy Industry**

By JEFF WEISS; Contributing Reporter

1,098 words

29 March 2004

San Fernando Valley Business Journal

English

2004 San Fernando Valley Business Journal.  All rights reserved.

EXHIBIT 50

PAGE 264

**M 0101133**

EX 12058-0001

"My oldest son, 17-year-old Jason, is very creative and a music writer. He has come up with some of our popular toys," Larian said. "He came up with Commandobot—a robot that was the first ever robot toy to work on voice recognition. It was a fantastic seller that was featured in Wired magazine. It was Jason's idea for Bratz."

"Yasmin, my 15-year-old daughter, is involved in the business as well. She's particularly interested in fashion and focus groups. One of the Bratz is named after her," Larian said. "My 10-year-old son, Cameron, is also the namesake for one of the boy Bratz. Cameron comes up with different product ideas. One of our best ideas was a winter wonderland Bratz line. We were on a family ski vacation and he said 'Dad, you should do a Bratz winter break.' So we did it and it sold wonderfully."

EXHIBIT ___50___
PAGE ___265___

M 0101134

EX 12058-0002

EXHIBIT ___50___
PAGE ___266___

M 0101135

EX 12058-0003

# EXHIBIT 51

02/24/08   11:08am   P. 002

FROM OPPENHEIMER - L.A.                    (THU) 2.13'03 16:46/ST. :0:42/NO. 4860087645 P 14

Docket No. 15994-142

### DECLARATION, POWER OF ATTORNEY AND PETITION

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled DOLL WITH AESTHETIC CHANGEABLE FOOTGEAR the specification of which is attached hereto.

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with 37 C.F.R. § 1.56(a).

I hereby declare: All statements of my own knowledge are true, and I believe that all statements made on information and belief are true. I make these statements with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001 and that such willful false statements may jeopardize the validity of the application or any patent issued on the application.

### POWER OF ATTORNEY

I appoint the following as my attorneys with full power of substitution and revocation, to prosecute said application and to transact in connection therewith all business in the Patent and Trademark Office and before competent International Authorities:

Berman, C., Reg. 29,249
Bubya, M.P., Reg. 45,267
Burworth, M.K., Reg. 28,186
Bovasso, L.J., Reg. 24,075
Boyce, J., Reg. 40,920
Brown, M.E., Reg. 28,590
Burton, D.L., Reg. 45,323
Canter, B., Reg. 54,792
Chen, A., Reg. P48,508
Chou, C., Reg. 41,072
Coleman, B.R., Reg. 39,143
Collman, L.C., Reg. 59,645

Darrow, C., Reg. 30,166
Diepenbrock III, A.B., Reg. 39,960
Edwards, W.Q., Reg. 44,426
Farber, M., Reg. 32,612
Gelfound, C.A., Reg. 41,032
Hamrick, C.A.S., Reg. 22,586
Hansen, S.R., Reg. 38,486
Harris, M.D., Reg. 26,690
Hayden, R.D., Reg. 42,645
Heyninck, M., Reg. 44,763
Hickman, P.L., Reg. 28,516

Hilberg, C.R., Reg. P48,740
Inskeep, J.W., Reg. 33,910
Kennedy, B., Reg. 33,407
Khan, T., Reg. 46,273
Kudla, J.P., Reg. P47,724
Larson, D.N., Reg. 29,401
Lazarik, S.J., Reg. 45,981
Lorvick, C.J., Reg. 35,264
Litako, S.C. Reg. 47,740
MacLean, K.A., Reg. 31,113
Maddux, M.M., Reg. 50,962
McKinley, D., Reg. 42,867

McRost, L., Reg. 40,427
Morton, C.A., Reg. 44,954
Nader, R., Reg. P47,259
Rose, A. C., Reg. 17,047
Rosenberg, C., Reg. 31,464
Sherry, L., Reg. 43,918
Smith, G.P., Reg. 20,142
Swienton, B., Reg. 49,030
Valencia, R.A., Reg. 43,216
Wood, G.B., Reg. 28,133
Wrigley, B.A., Reg. 34,950

whose address is:

## OPPENHEIMER

OPPENHEIMER WOLFF & DONNELLY LLP
2029 Century Park East, Suite 3800
Los Angeles, California 90067
(310) 788-5000 • Fax (310) 788-5100


Exhibit 1701
____/____/08        ____
Jane Stegers, CSR 10848

CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT 51
PAGE 267

MGA 3765285

EX 1701-0001

FROM OPPENHEIMER – L. A.                    (THU) 2.13'03 16:47/St. 16:42/NO. 4860087645 P 15

Docket No. 15904-142

Address all communications and telephone calls to Alan C. Rose of the below-listed firm at (310) 788-5030 and at e-mail address arose@oppenheimer.com.

Wherefore I pray that Letters Patent be granted to me for the invention or discovery described and claimed in the foregoing specification and claims, and I hereby subscribe my name to the foregoing specification and claims, declaration, power of attorney, and this petition.

Full name of sole or first inventor ISAAC LARIAN

Inventor's signature _____ Date 2 - 24 - 2003
Residence:        237 Carolwood, Los Angeles, California 90077
Citizenship       United States of American
Post Office Address   237 Carolwood, Los Angeles, California 90077 USA

– 2 –

LA: 333337 v01 02/13/2003

CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT   51
PAGE   268

MGA 3765286

EX 1701-0002

# EXHIBIT 52

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES – GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                          Date:  May 27, 2008
Title:       CARTER BRYANT -v- MATTEL, INC.

<u>Consolidated With Related Actions</u>:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.,  v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
==========================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Gina Guzman
          Courtroom Deputy Clerk

<u>ATTORNEYS PRESENT FOR CARTER BRYANT</u>:     <u>ATTORNEYS PRESENT FOR MATTEL</u>:

None Present                                  None Present


<u>ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN</u>:

None Present

PROCEEDINGS:    **ORDER RE STATUTE OF LIMITATIONS DEFENSE**

        Each of the remaining parties to this action, Mattel and MGA, seek summary judgment on the issue of statute of limitations.  Crucial to resolution of this issue, is application of California's "discovery rule," which can delay the accrual of a claim.  Both parties have offered evidence in support of their positions.[1]  For its part, Mattel contends that its claims against Carter Bryant arose on November 24, 2003, and that its claims against the MGA entities, including MGA CEO Isaac Larian, arose on November 4, 2004, the date of Carter Bryant's deposition, at which he testified regarding MGA and Larian's involvement in his actions.

_____

        [1] Although he is no longer a party, the Court discusses at length the timeliness of the claims asserted against Carter Bryant because it is relevant to the Court's relation-back analysis of the claims asserted against MGA.

MINUTES FORM 90                                          Initials of Deputy Clerk: gg
CIVIL -- GEN                        Page 1                Time:  0/00


5/27                    EXHIBIT    52

                       PAGE      269

At oral argument and in its briefs, MGA argues at length that Mattel's claims against Bryant accrued some time shortly after Bryant left Mattel's employ in October, 2000.  In support of this argument, MGA offered evidence that Mattel has always believed that it took nine months to bring a doll through the stages of development and to market.  From that knowledge, in MGA's view, the sudden appearance of the Bratz dolls at a toy fair in Tokyo in January, 2001, should have aroused their suspicions.

MGA cites to the deposition of Bryant's co-worker, who had suspicions at the time Bryant resigned that Bryant was going to work for a competitor based on her subjective belief that Bryant would not pursue any other vocation other than doll designer.

MGA contends that Mattel could have looked at Bryant's phone records and determined that he had called MGA a number of times during the month pre-dating his resignation.

There is evidence that one of Bryant's co-workers believed it was "common knowledge," sometime in 2001, that Bryant probably designed Bratz.

The undisputed facts establish that in August, 2002, an anonymous letter was sent to Mattel's CEO stating that Bryant had designed Bratz.  This letter is the first indication that Bryant may have worked on Bratz during the period of his employment with Mattel.  See Zeller Decl. Ex. 63 ("While he was working with Mattel and working to create these dolls he worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls and the fact that they are rightly Mattel dolls.").

The undisputed facts also establish that on July 18, 2003, the Wall Street Journal published an article entitled "Dolled Up:  To Lure Older Girls, Mattel Brings In Hip-Hop Crowd."  In that article, MGA's CEO Isaac Larian is attributed with a statement that Carter Bryant was the creator of Bratz.  The article states:

> Isaac Larian, chief executive of MGA, says he had never heard of a project similar to the Bratz at Mattel.  He says he chose Mr. Bryant's idea for Bryant over several others after holding a sort of fashion-doll design contest in late 1999.

Zeller Decl. Ex. 118.

At the close of the second hearing, held on May 19, 2008, MGA offered, for the first time, evidence in the form of a time line that showed that a "claim" from a lawsuit filed in Hong Kong by MGA was received by Mattel on September 23, 2003.  See Bogorad Supp. Decl. Ex. 145.  A copy of court documents from that litigation shows that MGA claimed ownership of Bratz fashion dolls and that, more specifically, at issue were "17 design drawings of various fashion dolls between the years 1998 and 2000."  Id. at Ex. 143.  Exhibit 143 is a ten-page document captioned as "STATEMENT OF CLAIM" and appears to the Court to be, under Hong Kong law, the equivalent of a complaint.  MGA's ownership to the 17 drawings referenced in the "STATEMENT OF CLAIM"

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: gg
Time:  0/00

EXHIBIT      52

PAGE         270

was based on Bryant's creation of the design drawings during a time period that includes his employment at Mattel. Id.

Also at this time, MGA offered a letter, dated October 17, 2003, from Mattel's Hong Kong counsel to Mattel, that discusses the propriety of providing to Mattel certain documents relating to the City World litigation. Within this letter, certain key details of the "STATEMENT OF CLAIM" were referenced. See Supp. Bogorad Ex. 146 ("One of the exhibits referred to in such Affirmation was a set of coloured drawings described as '17 initial concept and design drawings of the Bratz dolls made by Mr. Carter Bryant in the year 2000.'").

After being given an opportunity to respond to this last-minute evidence, Mattel offered as evidence the documents it received on September 23, 2003, and that evidence did not include the document marked as Ex. 143. See Supp. Moore Decl. Ex. A. The documents Mattel received do not include any reference to Carter Bryant or the dates of creation of the 17 drawings. See id. Instead, it consists of a copy of a "writ of summons" in that same litigation.

In responding to this evidence, counsel for MGA first incorrectly contended that the declaration of in-house counsel, Michael Moore, did not deny receiving a copy of the City World claim setting forth this key language. Compare Reply at 1 ("**Mr. Moore, the only witness offered by Mattel, does _not_ deny that Mattel took possession of a copy of the City World claim on or about September 23, 2003**.") (emphasis in the original) with Supp. Moore Decl. ¶ 3 (attaching as Exhibit A all documents received from Mattel's Hong Kong counsel on September 23, 2003; noting that public access to court files in Hong Kong is limited; and verifying that the materials attached as Exhibit A (which does not include the key language regarding Carter Bryant's creation of Bratz drawings) "were the only ones relating to MGA's litigation that Mattel's Hong Kong counsel were allowed to obtain from the Hong Kong court files").

More disturbingly, however, counsel for MGA next lobbed unsubstantiated assaults on Mr. Moore's truthfulness. Counsel states that the documents "appear to have been doctored or manipulated in some fashion." Reply at 2. Counsel does so because the fax itself has an anomalous pagination in the fax header line wherein the first ten pages are numbered "01, 02 . . . 10," and the numbers thereafter are numbered "11/46, 12/46 . . . 46/46." Supp. Moore Ex. A.

This Court has indicated on a number of occasions, most strikingly in connection with its consideration of Mattel's motion to disqualify counsel for MGA, that it will not countenance unsubstantiated dispersions cast upon opposing counsel. Where there is *evidence* of unethical behavior, the Court expects to be made aware of that evidence; where, however, there is mere *speculation* of such behavior, no legitimate purpose is served by its airing.

Nevertheless, focusing on the additional evidence offered by MGA on May 19, 2008, the time line produced in connection with the Simpson-Taylor deposition makes reference to a City World "claim" that was received by Mattel on September 23, 2003. Although this time line stops short of acknowledging that the document entitled "STATEMENT OF CLAIM" was received in

EXHIBIT _____ 52
PAGE _____ 271

September, it is nevertheless sufficient to controvert Moore's declaration regarding whether the "STATEMENT OF CLAIM" was in fact received on this date.  Moreover, the October 17, 2003, letter raises an inference regarding the full scope of Mattel's pre-November 23, 2003, knowledge of the contents of the "STATEMENT OF CLAIM."

It is uncontroverted that Mattel first received a copy of the Bryant-MGA contract, the effective date of which pre-dated the effective date of Bryant's resignation from Mattel, on November 24, 2003.

Where a plaintiff advances a state-law claim under California law, federal courts apply the California "discovery rule" to determine whether the state-law claim is time-barred.  See, e.g., Orkin v. Taylor, 487 F.3d 734, 741 (9th Cir. 2007).

The Court's analysis begins with the unremarkable proposition that "[a] plaintiff must bring a claim within the limitations period after accrual of the cause of action."  Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 806 (Cal. 2005) (citation omitted).  To apply this unremarkable proposition, however, the Court must determine what the California Supreme Court means by "accrual of the cause of action."

In that regard, the California Supreme Court has stated that, "[g]enerally speaking, a cause of action accrues at the time when the cause of action *is complete with all of its elements*," id. at 807 (emphasis added) (citation omitted), a phrase which itself must be expounded upon further to ascertain its meaning.  When applying the discovery rule, those "elements" are not "specific legal element[s] of a particular cause of action"; rather, they are the "'generic' elements of wrongdoing, causation, and harm."  Id. (citation omitted).

The definition of those terms gives a more comprehensive understanding to the California Supreme Court's statement that "the 'discovery rule' . . . postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."  Id. (citation omitted).  In turn, "[a] plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements."  Id. (internal quotation marks and citation omitted).  Further refined, where a plaintiff has *knowledge* of at least one of the three generic elements, and *suspicion* of the remaining generic elements, the claim has accrued and the limitations period has begun to run.  Id. (citation omitted).

This rule is designed to require plaintiffs to diligently investigate their potential claims.  See id. at 808.  To that end, in the context of a personal injury action, the California Supreme Court has stated that "plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation."  Id.  Of course, this statement must itself be viewed with the definition of "injury" the California Supreme Court considered:  "At common law, the term 'injury,' as used in determining the date of accrual of a cause of action, means both a person's physical condition and its negligent cause. . . . Thus, physical injury alone is often insufficient to trigger the statute of limitations."  Id. at 808 n.2 (internal quotation marks and citation omitted).

EXHIBIT       52

PAGE         272

This requirement of diligence, stated otherwise, prohibits California plaintiffs from passively waiting for the facts supporting their claim to find them and places on them an affirmative requirement to investigate:

> Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.

Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1111 (Cal.1988).

The Jolly court discussed two examples in explaining this standard. First, it cited to Miller v. Bechtel Corp., 33 Cal.3d 868, 874 (Cal.1983), which held time barred the fraud claim of a plaintiff who had suspicions that the value of her husband's stock was understated at the time of their dissolution agreement, but who failed to assert her claim until years later when the stock was sold. Id. In that case, the plaintiff's lawyer sought information, both before the dissolution and within a few months thereafter, regarding the method by which the stock was valued. Id. at 875. When the response was not forthcoming, the lawyer chose not to pursue this inquiry further, and thus plaintiff was charged with knowledge of the facts the investigation would have uncovered – that the stock was valued by the price attributed to it in the shareholders' agreement rather than by any objective valuation. Id.

Second, the Jolly court cited to Gray v. Reeves, 76 Cal.App.3d 567 (Cal. App.1977), which held that a plaintiff's claim based on his use of a prescription drug arose when the plaintiff understood the nature of his injury (deterioration of the hip socket) and the probable cause thereof (the use of the prescription drug prednisone) as well as the identity of the prescribing doctor and the drug's manufacturer.

Although the discovery rule has been largely developed in tort cases, the rule has also been applied in cases involving contract claims. See e.g., April Enterprises, Inc. v. KTTV, 147 Cal.App.3d 805, 832 (1983) ("Specifically, we hold the discovery rule may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time."); Intermedics, Inc. v. Ventritex, Inc., 775 F.Supp. 1258, 1266-67 (N.D. Cal. 1991).

Thus, California's discovery rule is easily understood in the abstract; moreover, it is often easily applied in particular factual situations. Here, however, this Court's application of the rule in this case is not so clear cut, and the Court must consider the premises underlying the parties' respective analysis of this issue.

In substance, MGA contends that Mattel was on notice as early as February, 2001, of a potential claim that Carter Bryant breached the confidentiality provision of his contract by borrowing from or plagiarizing certain non-public Mattel projects. This date coincides with the display of the Bratz dolls at a New York Toy Fair and "speculation in the media started about

EXHIBIT    52
PAGE    273

alleged similarities between the BRATZ and Mattel's internal projects." MGA Motion at 18. Alternatively, MGA posits March 15, 2002, the beginning date of an internal Mattel investigation into MGA and Larian's involvement in Bryant's creation and development of Bratz, as the date Mattel's current claims accrued.

Mattel, on the other hand, contends that MGA is essentially arguing that a claim Mattel chose not to bring – that Bratz infringed on the Mattel projects of Toon Teens and Diva Starz – is time barred. Mattel points out that it has previously disavowed, and that it continues to disavow, any intent to assert such a claim. Rather, Mattel contends that it is bringing a different claim, a claim that Mattel has rights to Bratz pursuant to the Inventions Agreement based on Bryant's actions during the period of his employment with Mattel.

In determining, under California law, which of the parties' diametrically opposed positions represent the better approach, the Court is guided by the California Supreme Court case cited above, Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 806 (Cal. 2005). In that case, a plaintiff, suffering from complications following gastric bypass surgery, sued for medical malpractice. Id. at 802. During the course of discovery, she learned, through the testimony provided at the deposition of her surgeon, that she had a potential claim against the manufacturer of a surgical stapler. Id. at 804. Specifically, the plaintiff's surgeon testified that he had found on previous occasions that the particular stapler had caused post-surgery leaks. Id. When the plaintiff amended the complaint to assert a products liability claim, the trial court, on statute of limitations grounds, sustained a demurrer without leave to amend, reasoning that "when a plaintiff sues based on knowledge or suspicion of negligence, . . . the statute of limitations begins to run as to all defendants, including manufacturers possibly liable under products liability theories." Id.

The Court of Appeal reversed, and the California Supreme Court affirmed the reversal. Id. at 812, 816. In doing so, the California Supreme Court rejected, as inconsistent with its precedent, the so-called "the Bristol-Myers Squibb rule that all claims arising from an injury accrue simultaneously, even if based upon distinct types of wrongdoing, is inconsistent with the generic elements approach . . . ." Id. at 815.

From this discussion, a parallel begins to emerge that MGA's position is like that of the demurring defendant who seeks to dismiss a products liability claim on the basis of plaintiff's discovery of a different claim of medical malpractice, and Mattel's position is like that of the plaintiff who seeks to assert the that products liability claim. In a sense, however, this analogy goes nowhere, as MGA's position is that the claim Mattel asserts in the current action is not different from the potential claim for which it was on notice of in 2001. After all, both would be based on breach of contract and/or copyright claims, both would involve the same defendants, and both would result in the same type of injury.

However, the Fox Court's elaboration on the rule it enunciates convinces the Court that Mattel's position is the stronger one. After discussing the application of its rule in the more narrow situation presented by the overlap of medical malpractice and products liability claims at issue in the case before it, the Fox Court explained:

EXHIBIT _____ 52 _____

PAGE _____ 274 _____

> More broadly stated, if a plaintiff's reasonable and diligent investigation
> discloses only one kind of wrongdoing when the injury was actually
> caused by tortious conduct of a wholly different sort, the discovery rule
> postpones accrual of the statute of limitations on the newly discovered
> claim.

Id. at 813.  In analyzing the discovery rule, the term "wrongdoing" is used not in a technical or legal sense, but in its everyday meaning. Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1111 (1988) ("In this context, 'wrong,' 'wrongdoing,' and 'wrongful' are used in their lay understanding.").

Here, on one hand, we have a breach of contract claim or copyright infringement claim based on alleged copying or "borrowing" of Mattel's undisputed rights in Toon Teens and/or Diva Starz to create Bratz that perhaps Mattel was on notice of as early as 2001, and which Mattel admittedly investigated as early as 2002, but upon which Mattel ultimately chose not to file suit. On the other hand, we have the claims asserted here, for breach of contract and copyright infringement, based on Mattel's (disputed) ownership rights to the Bratz drawings pursuant to Bryant's employment agreement with Mattel and in light of the (disputed) fact that Carter Bryant created these works during the period of his employment with Mattel. Applied to the present case, in the Court's view, the question the Court must ask is whether the first type of claim is based on qualitatively different type of "wrongdoing" – as that term might be understood by lay persons – than that which gives rise to the present claims.

Thus framed, the Court considers the two claims:  Although they are similar in that they both include the wrongdoing of the failure to keep one's promise to maintain confidentiality, they are qualitatively different, however, in that the former situation involves the alleged taking of rights known to Mattel while the latter involves the alleged concealment of certain creations that belong to Mattel in the first instance in order to facilitate the taking of rights unknown to Mattel. This fundamental difference leads the Court to the conclusion that the latter claims, those asserted here, involve a different element of "wrongdoing" than do the unasserted claims based on Toon Teens and/or Diva Starz.

The burden of proof on the discovery rule issue is on Mattel.[2]  Examining the claim Mattel asserts, rather than the claim Mattel chose not to assert, the Court must determine whether Mattel had knowledge of any one of the three generic elements of wrongdoing, causation, or damages, coupled with suspicion of the remaining generic elements.  This determination cannot be made on the undisputed record before the Court.

Rather, MGA has raised triable issues of fact precluding summary judgment on the statute of limitations issue.  Any of the following could be the date upon which MGA claims against Carter

---

[2]  See Fox, 35 Cal.4th at 803 (imposing upon a plaintiff that seeks to take advantage of the discovery rule a requirement that it "plead[] and prove[] that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action).

EXHIBIT _____ 52

PAGE _____ 275

Bryant accrued:  The July 18, 2003, <u>Wall Street Journal</u> article; the September 23, 2003, date of receipt of the City World "claim"; the October 17, 2003, date of counsel's letter to Mattel regarding the City World litigation; or the November 24, 2003, date of receipt of the MGA-Bryant agreement that pre-dated Bryant's resignation of his employment.[3]

The accrual of a copyright claim, as the parties recognize, approximates the state-law standard discussed herein.  <u>See</u> <u>Polar Bear Productions, Inc. v. Timex Corp.</u>, 384 F.3d 700, 706 (9th Cir. 2004) ("Thus, . . . the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances.").  Accordingly, the Court makes the same conclusion regarding the accrual date of Mattel's copyright claim against Carter Bryant as it does regarding the accrual date of Bryant's state-law claims.

As stated earlier, although Bryant is no longer a party to this action, the parties recognize, as does the Court, that the timeliness of the claims asserted against Carter Bryant is relevant because of the potential that Mattel's claims against the MGA entities and Isaac Larian may, pursuant to Fed. R. Civ. P. 15(c), relate back to those claims.  Mattel embraces the concept of relation back; MGA rejects it.

Although such distinction has not been particularly important at other points in this litigation, the Court has referred to the MGA entities and Isaac Larian collectively as MGA.  More specifically, as to Phase 1, there are two separate MGA entities:  MGA Entertainment, Inc. and MGA Entertainment HK Limited.  There is also MGA's CEO, Isaac Larian.  This distinction is important to the Court's analysis of relation back.

MGA Entertainment, Inc., but <u>not</u> Isaac Larian or the other MGA entity, intervened in this action on December 7, 2004.  Therefore, based on the status of MGA Entertainment, Inc., as a party, the standard for whether the claims relate back differs from that governing the relation back of claims against MGA Entertainment HK Limited.  <u>See</u> <u>infra</u>.  As this Court has noted before, the Phase 1 claims against MGA sought to be asserted by Mattel on November 20, 2006, which arise out of the same factual allegations as do the claims asserted by Mattel against Carter Bryant on April 27, 2004, relate back to the date that complaint was filed.  <u>See</u> Court's Jan. 12, 2007, Order at 13-15.  The Court does not revisit that issue now.

MGA argues that "some courts have dis-allowed 'relation back' of claims against intervening <i>defendants</i>." MGA Opp. at 25 n.21 (emphasis in the original).  However, in support of this argument, MGA cites a two-page Texas appellate court decision which does not cite to or interpret Fed. R. Civ. P. 15(c), <u>Davis v. Outdoor Equip. Co.</u>, 551 S.W.2d 72, 73 (Tex. Ct. App. 1977), which the Court finds unpersuasive.

As to the new parties sought to be added on November 20, 2006 (MGA Entertainment HK

---

[3]   The analysis is slightly different for the conversion claim.  <u>See</u> <u>infra</u> at 9-10.

EXHIBIT _____ 52

PAGE _____ 276