QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **[PUBLIC REDACTED]<br>MATTEL, INC.'S OPPOSITION TO<br>MGA ENTERTAINMENT, INC.'S<br>*EX PARTE* APPLICATION FOR<br>STAY OF INJUNCTION PENDING<br>APPEAL** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |
| | Hearing Date: December 30, 2008<br>Time: 10:00 a.m.<br>Place: Courtroom 1 |
| | **Phase 1C** |

7209/2742528.1

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT ................................................................................................................. 2

I.   MGA HAS THE ONLY STAY THAT COULD BE PROPER AT THIS POINT ................................................................................................................. 2

II.  MGA'S REQUEST IS NOT RIPE AND SEEKS AN ADVISORY OPINION ............................................................................................................. 3

III. MGA IS NOT LIKELY TO SUCCEED ON THE MERITS ................................. 6

    A.   The Copyright Injunction Ruling Raises No Serious Issues ......................... 7

    B.   No Serious Issues Arise From the Constructive Trust Order .................... 10

    C.   No Serious Issues Arise From The Declaratory Judgment ....................... 11

    D.   No Serious Issues Arise From The Underlying Rulings ............................ 12

IV.  MGA CANNOT SHOW IRREPARABLE HARM ............................................. 16

V.   THE PUBLIC INTEREST DOES NOT SUPPORT A STAY ............................. 20

VI.  A STAY WOULD CAUSE IRREPARABLE HARM TO MATTEL ................. 20

VII. THE COURT SHOULD CONDITION ANY STAY ON AN ESCROW AND APPOINTMENT OF A RECEIVER .......................................................... 22

# TABLE OF AUTHORITIES

**Page**

## Cases

A&M Records, Inc. v. Napster, Inc.,
239 F.3d 1004 (9th Cir. 2001) ........................................................................9

Abend v. MCA, Inc.,
863 F.2d 1465 (9th Cir. 1988) ........................................................................9

Advanced Medical Optics, Inc. v. Alcon Laboratories, Inc.,
2005 WL 3454283 (D. Del. 2005)................................................................21

Agric. Svcs. of Am. v. Nielsen,
231 F.3d 726 (10th Cir. 2000) ........................................................................7

Ali v. Fasteners for Retail, Inc.,
544 F. Supp. 2d 1064 (E.D. Cal. 2008) .......................................................10

Aliotti v. R. Dakin & Co.,
831 F.2d 898 (9th Cir. 1987) ........................................................................15

United States v. An Article of Drug,
661 F.2d 742 (9th Cir. 1981) ........................................................................10

Apple Computer Inc. v. Franklin Computer Corp.,
714 F.2d 1240 (3d Cir. 1983) .......................................................................20

Arthrocare Corp v. Smith & Nephew, Inc.,
315 F. Supp. 2d 615 (D. Del. 2004)
vac't in part on other grounds, 406 F.3d 1365 ............................................16

Autoskill Inc. v. Natl. Educ. Support Sys., Inc.,
994 F.2d 1476 (10th Cir. 1993) ....................................................................20

Becton Dickinson and Co. v. Tyco Healthcare Group LP,
2008 WL 4745882 (D. Del. 2008)................................................................21

Belcher v. Birmingham Trust Natl. Bank,
395 F.2d 685 (5th. Cir. 1968) .......................................................................20

Cadence Design Sys. v. Avant! Corp.,
125 F.3d 824 (9th Cir. 1997) ...............................................................9, 16, 21

Carson v. Am. Brands, Inc.,
450 U.S. 79 (1981)...........................................................................................2

Christopher Phelps & Assocs., LLC v. Galloway,
492 F.3d 532 (4th Cir. 2007) ..........................................................................8

City of Hope v. Genentech, Inc.,
43 Cal. 4th 375 (2008).............................................................................7, 14

Classic Media, Inc. v. Mewborn,
   532 F.3d 978 (9th Cir. 2008) ...................................................................... 12

Clinton v. Acequia, Inc.,
   94 F.3d 568 (9th Cir. 1996) ......................................................................... 4

Continental Airlines, Inc. v. Intra Brokers, Inc.,
   24 F.3d 1099 (9th Cir. 1994) ....................................................................... 8

Corning Glass Works v. Sumitomo Elec. Research Triangle, Inc.,
   674 F. Supp. 1074 (S.D.N.Y. 1987) .......................................................... 16

Crucible, Inc. v. Stora Kopparbergs Bergslags AB,
   1985 WL 2872 (W.D. Pa. 1985) ................................................................ 21

Cunningham v. Gates,
   229 F.3d 1271 (9th Cir. 2000) .................................................................... 12

Davila v. County of San Joaquin,
   2008 WL 4426669 (E.D. Cal. September 26, 2008) ..................................... 6

Desny v. Wilder,
   46 Cal. 2d 715 (1956) ................................................................................. 14

Digital Filing Sys., Inc. v. Aditya Int'l,
   2005 WL 2372662 (E.D. Mich. Sept. 27, 2005) ........................................ 16

Dolch v. United Cal. Bank,
   702 F.2d 178 (9th Cir. 1983) ...................................................................... 12

eBay, Inc. v. Bidder's Edge, Inc.,
   100 F. Supp. 2d 1058 (N.D. Cal. 2000) ...................................................... 21

eBay, Inc. v. MercExchange, L.L.C.,
   547 U.S. 388 (2006) ...................................................................................... 8

El-Tabech v. Gunter,
   992 F.2d 183 (8th Cir. 1993) ........................................................................ 3

Empresa Cubana del Tabaco v. Culbro Corp.,
   2004 WL 925615 (S.D.N.Y. April 30, 2004) ............................................. 16

Fox v. Ethicon Endo-Surgery, Inc.,
   35 Cal. 4th 797 (Cal. 2005) ........................................................................ 14

Fresenius Medical Care Holdings, Inc. v. Baxter Int'l, Inc.,
   2008 WL 928496 (N.D. Cal. April 4, 2008) ............................................... 19

GTE Prods. Corp. v. Kennametal, Inc.,
   772 F. Supp. 907 (W.D. Va. 1991) ............................................................ 23

Goldie's Bookstore v. Superior Court,
   739 F.2d 466 (9th Cir. 1984) ...................................................................... 17

Hard v. Burlington N.R. Co.,
  870 F.2d 1454 (9th Cir. 1989) .................................................................. 15

Hasel v. Pulpdent Corp.,
  2004 WL 1196971 (D. Minn. Jan. 7, 2004) ............................................ 16

Haskell Engineering & Supply Co.,
  78 Cal. App. 3d 371 (Cal. Ct. App. 1976) .............................................. 10

Hendricks v. Bank of Am.,
  408 F.3d 1127 (9th Cir. 2005) .................................................................. 12

In re Heritage Bond Litigation,
  2005 WL 2401111 (C.D. Cal. 2005) ......................................................... 3

Hilton v. Braunskill,
  481 U.S. 770 (1987) ..................................................................................... 6

Humane Soc. of U.S. v. Cavel Int'l, Inc.,
  2007 WL 4723381 (D.C. Cir. 2007) ....................................................... 17

Irvin v. Dowd,
  366 U.S. 717 (1961) .................................................................................. 15

Jane Russell Designs, Inc. v. Mendelson & Assoc., Inc.,
  114 F. Supp. 2d 856 (D. Minn. 2000) ..................................................... 20

Kittel v. First  Union Mortgage Corp.,
  303 F.3d 1193 (10th Cir. 2002) ................................................................. 4

Klitzner Indus., Inc. v. H. K. James & Co., Inc.,
  535 F. Supp. 1249 (E.D. Penn. 1982) ..................................................... 20

Lopez v. Heckler,
  713 F.2d 1432 (9th Cir. 1983) ..................................................... 6, 16, 20

Los Angeles Police Protective League v. Gates,
  995 F.2d 1469 (9th Cir. 1993) ................................................................... 7

MAI Sys. Corp. v. Peak Computer, Inc.,
  991 F.2d 511 (9th Cir. 1993) ..................................................................... 8

MGM Studios, Inc. v. Grokster,
  518 F. Supp. 2d 1197 (C.D. Cal. 2007) ................................................ 8, 22

Magnesystems, Inc. v. Nikken, Inc.,
  1994 WL 808421 (C.D. Cal. Aug. 8, 1994) ......................... 16, 17, 20, 21

McCulloch v. Albert E. Price, Inc.,
  823 F.2d 316 (9th Cir. 1987) ................................................................... 15

Meredith v. Oregon,
  321 F.3d 807 (9th Cir. 2003) .............................................................. 12, 13

*Mission Power Engineering Co. v. Continental Casualty Co.,*
883 F. Supp. 488 (C.D. Cal. 1995) ................................................................6

*Multistate Tax Commission v. U.S. Steel Corp.,*
659 F.2d 931 (9th Cir. 1981) ......................................................................23

*Nat'l Park Hospitality Ass'n. v. Dept. of Interior,*
538 U.S. 803 (2003).....................................................................................4

*Natural Resources Defense Council, Inc. v. Southwest Marine Inc.,*
242 F.3d 163 (9th Cir. 2001) .......................................................................3

*New Hampshire v. Maine,*
532 U.S. 742 (2001).....................................................................................19

*New York Life Ins. Co. v. Watt West Inv. Corp.,*
755 F. Supp. 287 (E.D. Cal. 1991) .........................................................24, 25

*Philips Electronics North American Corp. v. Contec Corp.,*
2004 WL 2009370 (D. Del. 2004)........................................................16, 17, 21

*Pittway v. Black  & Decker,*
667 F. Supp. 585 (N.D. Ill. 1987)...............................................................21

*Processed Plastic Co. v. Warner Communications, Inc.,*
675 F.2d 852 (7th Cir. 1982) ......................................................................22

*Protect Our Water v. Flowers,*
377 F. Supp. 2d 882 (E.D. Cal. 2004) .........................................................6

*Ramirez v. Galaza,*
334 F.3d 850 (9th Cir. 2003) .......................................................................9

*Resolution Trust Corp.  v. Bayside Developers,*
43 F.3d 1230 (9th Cir. 1995) ......................................................................23

*Rice v. Fox Broad. Co.,*
330 F.3d 1170 (9th Cir. 2003) .....................................................................9

*Rokos v. Peck,*
182 Cal. App. 3d 604 (1986) .......................................................................14

*Saldate v. Adams,*
573 F. Supp. 1303 (E.D. Cal. 2008) ...........................................................17

*Satava v. Lowry,*
323 F.3d 805 (9th Cir. 2003) .......................................................................14

*Standard Havens Prods. Inc. v Gencor Indus., Inc.,*
897 F.2d 511 (Fed. Cir. 1990) ...........................................................5, 16, 17

*State of Cal., on Behalf of Cal. Dept. of Toxic Substances Control v. Campbell,*
138 F.3d 772 (9th Cir. 1998) .......................................................................13

Stop Youth Addiction, Inc. v. Lucky Stores, Inc.,
  17 Cal. 4th 553 (1998) .............................................................................. 11

Subafilms, Ltd. v. MGM-Pathe,
  24 F.3d 1088 (9th Cir. 1994) ........................................................................ 9

Swint v. Chambers County Comm.,
  514 U.S. 35 (1995) ...................................................................................... 12

Taylor Corp. v. Four Seasons Greetings, LLC,
  403 F.3d 958 (8th Cir. 2005) ................................................................. 7, 10

Teleflex Indus. Products, Inc. v. Brunswick Corp.,
  294 F. Supp. 256 (E.D. Pa. 1968) .............................................................. 18

Thomas v. Union Carbide Agric. Prods. Co.,
  473 U.S. 568 (1985) ...................................................................................... 4

Triad Sys. Corp. v. Se. Express Co.,
  64 F.3d 1330 (9th Cir. 1995) ...................................................................... 16

United States v. First National Bank of Circle,
  652 F.2d 882 (9th Cir. 1981) ...................................................................... 15

United States v. Rowe,
  96 F.3d 1294 (9th Cir. 1996) ...................................................................... 15

View Crest Garden Apartments v. United States,
  281 F.2d 844 (9th Cir. 1960) ...................................................................... 23

Walt Disney Prod. v. Air Pirates,
  581 F.2d 751 (9th Cir. 1978) ........................................................................ 9

Warehouse Rest., Inc. v Customs House Rest., Inc.,
  726 F.2d 480 (9th Cir. 1981) .................................................................... 2, 3

Wasau Underwriters Ins. Vo. v. Continental Cas. Co.,
  2008 WL 793618 (E.D. Wash. 2008) ........................................................... 5

Weil v. Inv./Indicators, Research & Mgmt., Inc.,
  647 F.2d 18 (9th Cir. 1981) ........................................................................ 15

World Fuel Services Corp. v. Moorehead,
  229 F. Supp. 2d 584 (N.D. Tex. 2002) ....................................................... 25

Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,
  259 F.3d 1101 (9th Cir. 2001) .................................................................... 10

Zucker v. Maxicare Health Plans Inc.,
  14 F.3d 477 (9th Cir. 1994) ...................................................................... 2, 3

**Statutes**

15 U.S.C. § 1058 ............................................................................................... 22

7209/2742528.1

Cal. Civ. Code § 1654 ....................................................................................... 7

Cal. Civ. Proc. Code § 564(b) .................................................................... 23, 24

Fed. R. Civ. P. 16(e) ...................................................................................... 15

Fed. R. Civ. P. 62(c) .................................................................................. 3, 23

## Other Authorities

19 James W. Moore et al., Moore's Federal Practice § 203.10[2][c],
    at 203-16 (3d ed. 2008) ............................................................................... 3

Cal. Practice Guide, Federal Ninth Circuit Civil Appellate Practice, at 7:54 ............... 12

Renewal of registration, (2003) Cap. 559A, Rule 32 (H.K.) ......................................... 22

Trade Marks Act, 1994, c.26, §§ 42-43 (U.K.) ..................................................... 22

William L. Stern, Bus. & Prof. C. § 17200 Practice at ¶ 7:32.1 ..................................... 11

## **Preliminary Statement**

MGA has turned a hypothetical question into an emergency request for an advisory opinion. It has petitioned this Court for *ex parte* relief and the Court of Appeals for an emergency stay of orders that are already subject to an indefinite stay. The hypothetical question MGA asks the Court to answer is, *if* this Court does not grant MGA's motion for JMOL set for hearing in February, and *if* the Court then decides to lift the indefinite stay— at which point its injunction orders may *then* be appealable—whether the Court will grant a stay pending appeal. MGA claims it needs to know the answer to this hypothetical question now or ███████████████████████████████████ But federal courts cannot issue advisory opinions in order to eliminate the uncertainties inherent in litigation.

Even if they could, MGA has failed to prove facts establishing a right to such an opinion here. The declarations it submits from those who are supposedly "████ ███████████████████████████████"[1] fail to show any need for an immediate decision by December 31 as to whether a stay pending appeal will be granted in the future. The *only* declaration even remotely referencing a December 31 deadline claims that █████████████████████████████████████████████ ████████████, but it is only an MGA employee ████████████████ ████████████, making the assertion.[2] Double hearsay as to the possibility that MGA, which sold almost $1 billion in toys in 2007, may ████████████ based on a metaphysical difference between stay orders is not enough to require this Court to ignore the rules of finality and ripeness and set aside the requirements for *ex parte* review. Quite the contrary, the fact that MGA is claiming ████████████ out of one side of its mouth—yet again[3]—while at the very same time telling the Court of Appeals that it is

---

[1]  Emergency Motion under Circuit Rule 27-3, at 24 n.6.

[2]  See Wing Dec. ¶ 5. MGA also claims that ███████████████████████ ████████. Id.; Cameron Dec. ¶¶ 3-5; Severson Dec. ¶¶ 3-5. After MGA filed its *ex parte*, however, Wal-Mart told the press that it is "business as usual" when it comes to selling Bratz— not that it is holding, canceling or threatening to cancel orders. Aarthi Sivaraman, *Bratz Ban May Make Dolls Hard To Find In Stores* (Reuters December 19, 2008), Corey Dec. Ex. 27.

[3]  MGA also swore ███████████████████████ last summer in its emergency stay application to the Court of Appeals. Then, when Mattel referred to those claims in arguing that (footnote continued)

1  worth hundreds of millions of dollars[4] is one more reason, if more were needed, to regard

2  its conclusory financial claims with skepticism, and to recognize that it is Mattel that needs

3  protection from the harm that an untrustworthy and unreliable infringer could do to its

4  valuable intellectual property rights during the pendency of any future appeal.

5  <u>**Argument**</u>

6  **I.    MGA HAS THE ONLY STAY THAT COULD BE PROPER AT THIS POINT**

7        MGA filed a notice of appeal pursuant to 28 U.S.C. § 1292(a)(1),[5] which permits an

8  immediate appeal of injunctions. But no injunction has been issued in this case. Rather,

9  the Court indefinitely stayed its December 3, 2008 orders "until lifted by further Order of

10 this Court."[6]  The Court's entry of an indefinite stay, to remain in place until the Court

11 orders otherwise, precludes appellate jurisdiction over the December 3 orders, as does the

12 filing of a motion for JMOL by MGA just yesterday.

13        Controlling Ninth Circuit law establishes this, and requires denial of MGA's motion

14 for stay pending appeal as premature.[7]  Appellate jurisdiction under § 1292(a) is

15 "narrowly" construed. <u>Carson v. Am. Brands, Inc.</u>, 450 U.S. 79, 84 (1981). In <u>Zucker v.</u>

16 <u>Maxicare Health Plans Inc.</u>, 14 F.3d 477, 481-83 (9th Cir. 1994), the district court

17 permanently enjoined certain defendants from seeking indemnity against other parties, but

18 stated its order would not become final until the parties filed a notice that a related state

19 court action had concluded. The Ninth Circuit dismissed defendants' appeal. "Because

20 [the judgment] remains subject to an unfulfilled condition, it is not yet an enforceable

21 injunction, and Appellants are not yet bound by it. The Court therefore lacks jurisdiction

22

23

24 MGA might be unable to pay damages awards as part of its showing irreparable injury to Mattel,
   MGA summarily dismissed its own prior representations out of hand. <u>See</u> MGA Parties' Opp. to
   Mattel's Mtn. for Perm. Inj., at 13, Proctor Dec., Ex. 34.

25     [4]  MGA's Motion to Exceed Page Limitation On Motion For Stay Pending Appeal, filed in the
   Ninth Circuit on December 19, 2008, at 3, Proctor Dec., Ex. 30.

26     [5]  <u>See</u> MGA's Notice of Appeal to the Ninth Circuit, dated December 11, 2008, at 2..
       [6]  Civil Minutes, dated December 3, 2008 (the "Order") at 16, Proctor Dec., Ex. 28.

27     [7]  Mattel shows why MGA's notice of appeal is defective at further length in a motion to
   dismiss concurrently-filed in the Ninth Circuit, which Mattel respectfully incorporates by

28 reference and lodges herewith. Notice of Lodging, Ex. 1.

1 | under 28 U.S.C. § 1292(a)." Similarly, in <u>Warehouse Rest., Inc. v Customs House Rest.,</u>

2 | <u>Inc.</u>, 726 F.2d 480, 481 (9th Cir. 1981), liability for an injunction was found but the

3 | injunction was held in abeyance "awaiting future events." The Ninth Circuit "dismiss[ed]

4 | for lack of jurisdiction because the district court's deferral of the . . . injunction makes its

5 | judgment non-final and thus not within this court's purely statutory jurisdiction." <u>Id</u>.[8]

6 |      The December 3 Orders, like those in <u>Zucker</u> and <u>Warehouse</u>, "await future events"

7 | and will not take effect absent "further Order of this Court." (Order at 16.) There is no

8 | final, appealable order.[9] And since there is presently no basis for appeal, any decision as

9 | to a stay pending appeal is by definition, and by Rule, premature.[10] The likelihood of

10 | success on a defective appeal, where the issues remain in dispute in the district court and

11 | cannot yet be weighed for their seriousness, is by definition zero.

12 | ## II.   MGA'S REQUEST IS NOT RIPE AND SEEKS AN ADVISORY OPINION

13 |      MGA's motion would be premature even if its appeal were proper. MGA already

14 | has an indefinite stay; what it wants is an advisory opinion that *if* the Court denies its

15 | JMOL motion and decides to lift the current stay, it will grant a further one pending

16 |

[8] Notably, the <u>Warehouse</u> court suggested that given the deferral the *movant* might have
sought interlocutory review for what amounted to a "denial" of the injunction, but *not* that the
party to be enjoined could appeal on any ground. <u>Id</u>. <u>See also</u> <u>El-Tabech v. Gunter</u>, 992 F.2d 183,
185 (8th Cir. 1993) (dismissing § 1292(a)(1) appeal where the court "said [] that it has entered
judgment on plaintiffs' claim for injunctive relief" but actually "was merely indicating an
intention to issue an injunction in the future"; "[w]e doubt, for instance, that the present state of
the record presents a shape sufficient to support a finding against defendants if the plaintiffs were
to assert that they were in contempt of the court's order. If that is so, we find it impossible to say
that an injunction has been entered."); <u>In re Heritage Bond Litigation</u>, 2005 WL 2401111, *8
(C.D. Cal. 2005) ("The controlling law in this circuit holds that bar orders that are not final cannot
form the basis of an appealable interlocutory order."); 19 James W. Moore et al., <u>Moore's Federal</u>
<u>Practice</u> § 203.10[2][c], at 203-16 to 203-17 (3d ed. 2008) ("an injunction that is not enforceable
by its terms is not appealable").
[9] The Court's scheduling order, which permitted post-trial motions to be filed on December
22, 2008, more than ten days after the December 3 injunction orders (Order at 16), also confirms
the lack of finality of the injunctions. <u>See</u> Mtn. to Dismiss at 10-11. Moreover, both MGA and
Mattel have also now filed renewed JMOL motions, and MGA's challenge the claims and verdicts
that it asserts were the injunctions' support; that further undermines any appellate jurisdiction. <u>Id</u>.
[10] <u>See</u> Fed. R. Civ. P. 62(c) ("***While an appeal is pending*** from an interlocutory order or final
judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore,
or grant an injunction on terms for bond or other terms that secure the opposing party's rights.")
(emphasis added); <u>Natural Resources Defense Council, Inc. v. Southwest Marine Inc.</u>, 242 F.3d
163, 1166 (9th Cir. 2001) (<u>Rule</u> 62(c) "codified" the rule that "district court retains jurisdiction
***during the pendency of an appeal*** to act to preserve the status quo") (emphasis added).

appeal. MGA's claim for relief is based on "a contingent future event[] that may not occur as anticipated, or indeed may not occur at all." <u>Thomas v. Union Carbide Agric. Prods. Co.</u>, 473 U.S. 568, 580-581 (1985). It seeks legal protection against restrictions that do not now exist and may never exist. A question that may never be presented is not ripe.[11]

MGA seeks to avoid this obvious and fatal obstacle by claiming the existing indefinite stay does not protect it from the present costs of an uncertain future. True, MGA has a stay now. True, the injunctions might never go into effect if MGA succeeds in its JMOL motion. True, any harm that might befall it in the future if an injunction were enforced is purely speculative. But, MGA claims (relying on declarations that lack foundation and are replete with hearsay),[12]                                        if its customers and licensees do not know *now* what the Court plans to do if and when its orders become final. MGA's claim of imminent disaster based on the uncertain future is unsupportable, both legally and factually.

First, uncertainty as to the future course of litigation may have consequences for a litigant, but that is not a legitimate basis for anticipatory decision-making. The uncertainty facing MGA about whether it will lose its JMOL motion and whether the presently stayed orders will then go into effect is no different in kind from the uncertainty MGA faced when Mattel first sued, or won favorable verdicts, or filed motions for injunctive relief. It is no different in kind from the uncertainty every litigant faces upon losing important rounds in a lawsuit. A court is not allowed, much less required, to foretell decisions it may never have to make in order to protect a litigant from judgments made in the marketplace as to its possible future. MGA's motion is an impermissible request for an advisory opinion about a hypothetical future decision that the Court cannot make now and may not

---

[11]   <u>Nat'l Park Hospitality Ass'n. v. Dept. of Interior</u>, 538 U.S. 803, 807 (2003) ("Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements"); <u>Clinton v. Acequia, Inc.</u>, 94 F.3d 568, 572 (9th Cir. 1996) ("[A] case is not ripe where the existence of the dispute itself hangs on future contingencies that may or may not occur.").
[12]   <u>See</u> Mattel's *Ex Parte* App. to Strike the Wing, Kennedy, and Third-Party Decls. and Mattel's accompanying Evidentiary Objections, filed concurrently herewith.

-4-

1   be called upon to make in the future.  See, e.g., Kittel v. First Union Mortgage Corp., 303

2   F.3d 1193, 1194 (10th Cir. 2002) ("any opinion" regarding possible *res judicata* dismissal

3   "may end up akin to a prohibited advisory opinion" where future rulings could vacate the

4   judgment and undermine the basis for *res judicata*); Wasau Underwriters Ins. Vo. v.

5   Continental Cas. Co., 2008 WL 793618 at * 3 (E.D. Wash. 2008) (complaint for damages

6   "in the event" Court were to rule a particular way "ask[ed] the Court to issue an

7   advisory opinion based on a hypothetical scenario").[13]

8        Second, MGA has failed to establish, even by its dubious theory that future

9   uncertainty can cause current irreparable harm, anything approaching the sort of immediate

10  injury about which it complains.  MGA claims ▮▮▮▮▮▮▮▮▮▮▮▮▮, even as it

11  tells the Court of Appeals it is worth hundreds of millions of dollars.[14]  It flatly claims ▮

12  ▮▮▮▮▮▮▮▮, yet MGA fails to disclose that even since the verdict in Phase

13  1B ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14  ▮▮▮.[15]  MGA has not provided any information about what it owes to whom or terms

15  of debts to its creditors, much less shown that the promise of a future stay would allow it to

16  avoid ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[16]  Nor has it quantified expected order

17  cancellations absent a December 31 stay-pending-appeal order, much less established that

18  those cancellations will spell the difference between ▮▮▮▮▮▮▮▮▮ by that

19  time.[17]  Not one retailer claims that it places Fall 2009 orders before March 2009.  MGA

20

---

21      [13]  MGA cites no case where a court preemptively granted a stay pending appeal before an
    injunction was even scheduled to take effect; in every case it cites, the harm considered by the
22  court was that which would be occasioned by the injunction, not uncertainty as to its possible
    future enforcement.  See, e.g., Standard Havens Prods. Inc. v Gencor Indus., Inc., 897 F.2d 511,
23  512 (Fed. Cir. 1990) (assessing irreparable injury "absent a stay").  Here, by contrast, a stay will
    remain in place *regardless* of the resolution of this motion.
24      [14]  Appellants' Motion to Exceed Page Limitation on Motion for Stay Pending Appeal at 3,
    Proctor Dec. Ex. 30  ("[T]he current Orders from which Appellants seek to appeal would likely
25  *force a company worth hundreds of missions of dollars out of business* . . . .") (emphasis added).
    At trial, MGA expert Paul Meyer testified that no value could be put on the company.  See Trial
26  Tr. at 7760:15-17 (Meyer) ("It would be my opinion with all those issues and uncertainties, you
    could not place a value on MGA at this point in time.").
27      [15]  See Corey Dec. ¶ 2, Ex. 1.
        [16]  Wagner Dec. ¶¶ 4-8.
28      [17]  Id.

1 claims that ██████████████, [18] even while Wal-Mart publicly affirms it is

2 "business as usual" with Bratz sales. [19] The only remotely urgent consequent MGA points

3 to is its double hearsay claim that ██████████████████

4 ██, [20] but MGA offers no declaration from that company. And MGA ignores both that

5 this amount is inconsequential for a company with ██████████████, [21] and

6 that Larian himself has ██████████████ in cash, securities and assets he can

7 use to fund MGA--money that MGA does not deny exists. [22] The affidavits MGA fought

8 so hard to shield from scrutiny—even at the cost of delaying these proceedings—attest to

9 no more than the vague desires of third parties to "████████" whether an extended stay

10 will eventually be granted. That hardly justifies preemptive and premature relief. [23]

11 ## III.   MGA IS NOT LIKELY TO SUCCEED ON THE MERITS

12 To obtain a stay pending appeal, MGA must either: (1) make a "strong showing that

13 [it] is likely to succeed on the merits" and show the possibility of irreparable injury, or (2)

14 show "that serious legal questions are raised and that the balance of hardships tips sharply

15 in its favor." Davila v. County of San Joaquin, 2008 WL 4426669, *1 (E.D. Cal.

16 September 26, 2008) (citing Hilton v. Braunskill, 481 U.S. 770, 776 (1987); Lopez v.

17

18 [18] Wing Dec. ¶ 5.
[19] Wing Dec. ¶ 5; Cameron Dec. ¶¶ 3-5; Severson Dec. ¶¶ 3-5. Aarthi Sivaraman, *Bratz Ban*

19 *May Make Dolls Hard To Find In Stores* (Reuters December 19, 2008), Corey Dec. Ex. 27.
[20] Wing Dec. ¶ 5.
[21] Wagner Dec. Ex. C.

20 [22] See Corey Dec. ¶ 3, Exs. 2-3; Wagner Dec. ¶ 14. Larian's undisputed wealth also
undermines any claim that he himself will be irreparably injured absent a stay. Indeed, Larian has

21 present *no* evidence at all of irreparable injury to him.
[23] For similar reasons, MGA is not entitled to *ex parte* relief. Just as MGA cannot show it

22 will be irreparably harmed if required to seek a stay after the Court's injunction orders are
finalized, it cannot justify proceeding via *ex parte* application. Mission Power Engineering Co. v.

23 Continental Casualty Co., 883 F. Supp. 488, 490 (C.D. Cal. 1995) (moving party must show it
"will be irreparably prejudiced if the underlying motion is heard according to regular noticed

24 motion procedures"). Moreover, any urgency is of MGA's making. Nearly three months ago,
Mattel moved for an expedited schedule on its injunction request, citing the impending holiday

25 season and its significance to retailers. *Ex parte* App. dated September 29, 2008, at 4-5, Proctor
Dec., Ex. 1. MGA successfully opposed that application, claiming expedited action was

26 unnecessary though it knew that delaying the ruling would bring it closer to the holiday season
and next season's purchasing period. MGA made no argument that a November schedule would

27 create any unique problems. MGA cannot prove that the urgency it now alleges arose "through
no fault" of its own, especially given that many of the orders that MGA asserts will be cancelled

28 were made *after* Mattel filed its injunction motion. Mission Power, 883 F. Supp. at 491.

1  Heckler, 713 F.2d 1432, 1435 (9th Cir. 1983)) (cited by MGA).  Serious questions exist

2  when "the trial court is charting a new and unexplored ground and the court determines

3  that a novel interpretation of the law may succumb to appellate review."  Protect Our

4  Water v. Flowers, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004).  MGA has met neither test.

5      **A.**    **The Copyright Injunction Ruling Raises No Serious Issues**

6      The Court Properly Engaged In Independent Fact Finding.  MGA's repeated

7  assertion that the Court violated the Seventh Amendment by making its own findings is

8  simply wrong.  There is no jury right as to a claim for a copyright injunction.  See, e.g.,

9  Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 969 (8th Cir. 2005).  The

10  only requirement is that the Court not make findings inconsistent with "the jury's implicit

11  or explicit factual determinations."  Los Angeles Police Protective League v. Gates, 995

12  F.2d 1469, 1473 (9th Cir. 1993).  The Court rightly concluded that it could not determine

13  the scope of infringement from the damages award.[24]  Contrary to MGA argument, the

14  damages award does not inexorably lead to a finding that *either* only first-generation Bratz

15  products infringed *or* many products infringed but in limited ways (Motion at 11-12).  As

16  to the first, MGA still can only "hazard a guess" as to how "$4 million in first-generation

17  profits could equate to [the] $10 million total copyright infringement award."  (Order at 10,

18  n.6.)  As to the second,  MGA waived this argument (Order at 10, n.5), and it is flatly

19

20     [24]  MGA claims the Court applied a "wholly new" test requiring the jury's award to be "tied to a 'specific piece of evidence.'" (Motion at 12.)  That is incorrect; the Court properly examined the

21  amount of the jury verdict in consideration of the evidence presented at trial and the jury instructions.  See Gates, 995 F.2d at 1473-74 (inferring jury finding based on examination of jury

22  instructions and amount of jury verdict).  Agric. Svcs. of Am. v. Nielsen, 231 F.3d 726, 731 (10th Cir. 2000), which MGA cites for the first time, agrees that courts are bound to follow only those

23  "findings [that] are explicit or necessarily implied by the verdict."  MGA also cites non-federal authorities (again for the first time) to argue that any ambiguity in the meaning of the verdict

24  should be resolved in its favor.  (Motion at 12, n. 5 & 6.)  These authorities pertain to contract interpretation and have no bearing here.  See City of Hope v. Genentech, Inc., 43 Cal. 4th 375,

25  397 (2008) (discussing "rules governing contract interpretation"); Cal. Civ. Code § 1654 (statutory rules of construction as to "uncertain" contracts).  Last, MGA argues that the general

26  verdict deprived it of its "right to have the scope of infringement determined by the jury" (Motion at 13, n. 7), but MGA waived that argument by not raising it previously and in any event, there is

27  no ban on general verdicts in copyright infringement cases.  Also, MGA's violations of the Court's orders to produce all of its accused dolls destroyed any possibility of a more particularized verdict

28  form, as discussed further below.

7209/2742528.1

1  inconsistent with MGA's own apportionment assertions at trial that its profits resulted from

2  factors *unrelated to the dolls*, such as advertisement, packaging, fashions, etc.;[25] a damage

3  award based on such an apportionment says *nothing* about the scope of the dolls'

4  infringement.[26] Finally, MGA's arguments cannot even apply to dolls that were not before

5  the jury as a result of MGA's violations of Court orders to produce them.[27]

6  The Court's Irreparable Injury Finding Was Correct.   The notion that past injury

7  plus the threat of future infringement justifies a finding of irreparable harm is not novel.

8  This has long been accepted, see MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511,

9  520 (9th Cir. 1993), and nothing in eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391

10  (2006), alters it. (Order at 12-13.)[28] The Court did not apply a categorical rule in any case,

11  basing its decision on MGA's violations of Mattel's rights: "The Court can envision no case

12  more appropriate for a finding of irreparable harm." (Id. at 13.)[29]

13  Mattel also showed additional forms of irreparable harm.  MGA has never disputed

14  that the absence of a stay would encourage third-party copying, requiring multiple

15

16  [25] MGA claimed its profits principally derived from marketing and advertising, the Be-Bratz

17  website, and Bratz media.  See, e.g., Trial Tr. at 5514:3-9, 5524:18-5525:3, 5787:24-5788:6, 6264:21-6265:5, 6265:25-6266:11, 7074:1-19, 7370:22-7371:12, 7378:5-9.  See infra Section IV,B.

18  [26] MGA also offered other arguments in its effort to reduce damages without regard to the

19  scope of infringement: the jury could have based its award on MGA's proclamations of its dire financial straits or its insinuations about injunctive relief and the impact such relief would have on

20  MGA's finances, and MGA also ignores the entirety of the jury's damages award.  See Mattel's Reply ISO Mtn for Perm. Inj. ("Injunction Reply"), at 4, Proctor Dec., Ex. 3.

21  [27] MGA was ordered to produce a sample of every MGA product that it claimed was at issue, see 8/13/07 Order at 7:18-20, 8:24-25, Corey Dec., Ex. 26, which includes "[a]ll 'Bratz' female

22  fashion dolls."  See MGA's Supp. Resp. to Interrogatory No. 2 of Mattel's First Set of Interrogatories re Claims of Unfair Comp. at 4:22-27, 5:10-13, Corey Dec., Ex. 25.

[28] Far from undercutting the Court's ruling, the new case MGA cites, Christopher Phelps &

23  Assocs., LLC v. Galloway, 492 F.3d 532 (4th Cir. 2007), supports it.  The court there determined that plaintiff *had* shown irreparable injury caused by violations of his exclusive rights.  Id. at 544

24  ("Irreparable injury often derives from the nature of copyright violations, which deprive the copyright holder of intangible exclusive rights.").

25  [29] MGA's cited authority shows that interference with exclusive rights is irreparable harm when it has the "actual effect of irreparably harming a plaintiff's right to control the use of his/her

26  copyrighted material."  MGM Studios, Inc. v. Grokster, 518 F. Supp.2d 1197, 1216-17 (C.D. Cal. 2007).  MGA protests that Mattel has not exploited the copyrighted works (Motion at 14 n.9), but

27  cites no authority that a defendant who so successfully violates a copyright owner's rights that the owner *does not even know* it has the right can thereby *continue* to infringe once the scheme is

28  proven.  That cannot be the law.

7209/2742528.1

lawsuits.[30]   MGA's own assertions also establish its inability to pay past and future damages; that MGA now trumpets its precarious financial situation is more proof of this undisputed form of irreparable harm.[31]   And the prospect of lost market share, as found by the Court (Order at 7), further shows irreparable harm.[32]

The Court Properly Rejected MGA's Proposed 0.3% Royalty. While MGA again invokes dicta in Abend v. MCA, Inc., 863 F.2d 1465 (9th Cir. 1988), it still does not dispute that neither the Ninth Circuit nor any other court has ever relied on Abend to adopt a royalty in lieu of an injunction in a copyright infringement action.[33]   This Court's unwillingness to be the first to do so does not present a substantial issue, particularly where the "special circumstances" in Abend do not apply here.[34]   The Court's rejection of a royalty is also well supported by the finding of prohibitive hostility between the parties.[35]

The Court's Order Is Properly Tailored.   Copyright law protects distinctive characters,[36] and the injunction properly prohibits MGA from exploiting those that the jury explicitly found are Mattel's. MGA waived any claim that the Bratz characters are not distinctive by not asserting that in its injunction opposition,[37] and in any case Mattel

---

[30]   See Order at 13 (citing Continental Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1105 (9th Cir. 1994)); Grokster, 518 F. Supp. 2d at 1219 ("[T]he very need to file multiple lawsuits . . . is itself supportive of an irreparable harm finding.").

[31]   Injunction Mtn. at 21-22, Corey Dec., Ex. 21; Injunction Reply at 11, Proctor Dec., Ex. 3; Wing Decl. at ¶ 4 ("MGA may not survive"); ¶ 10 (citing potential for involuntary bankruptcy); ¶ 14 ("We are in a precarious financial situation due to many factors").

[32]   See Inj. Mtn. at 22-24, Corey Dec., Ex. 21; Injunction Reply at 12-14, Proctor Dec., Ex. 3.

[33]   See Injunction Reply at 20, Proctor Dec., Ex. 3; see also A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1028 (9th Cir. 2001); Cadence Design Sys. v. Avant! Corp., 125 F.3d 824, 829 (9th Cir. 1997).

[34]   Injunction Reply at 20-21, Proctor Dec., Ex. 3.

[35]   Contrary to MGA's suggestion, Motion at 14 & 15 n.10, the Court did not predicate its finding of hostility solely on the breakdown of settlement discussions (much other evidence shows this, including Larian's trial testimony). See, e.g., Trial Tr. at 7677:25-7678:5 (Larian wanted to "kick Mattel's ass"); 7680:13-18 (MGA's website asks "is Mattel racist"). Nor did the Court reject MGA's proposed royalty solely because of the "hostility" but for other reasons as well, including that the infringement was not "minute." Order at 15. Mattel rejects the false insinuation that it failed to engage in settlement talks in good faith, but will not compound MGA's violations of the rules governing confidentiality and inadmissibility of settlement discussions by further disclosing their content. Mattel has made every reasonable effort to settle.

[36]   See, e.g., Rice v. Fox Broad. Co., 330 F.3d 1170, 1175 (9th Cir. 2003).

[37]   See, e.g., Ramirez v. Galaza, 334 F.3d 850, 859 n.6 (9th Cir. 2003) ("We have consistently held that a party may not raise new issues of fact on appeal after declining to present those facts before the trial court.").

1    showed the distinctiveness of the characters on its motion.[38]

2        <u>The Court's Admission Of Additional Evidence Was Proper</u>.   Though it now

3    submits more than a dozen new declarations with its stay motion, MGA contests the

4    Court's consideration of evidence not presented at trial.   This ironic challenge again

5    ignores that there is no jury right on a claim for an injunction, <u>Taylor</u>, 403 F.3d at 969, and

6    that a court may find the facts itself when assessing equitable issues, <u>see, e.g.</u>, <u>United</u>

7    <u>States v. An Article of Drug</u>, 661 F.2d 742, 746 (9th Cir. 1981).   Nothing prohibits the

8    consideration of additional evidence in doing so, particularly where issues before the

9    Court, such as future infringement and irreparable harm, were not even before the jury.[39]

10       **B.    No Serious Issues Arise From the Constructive Trust Order**

11       <u>The Constructive Trust</u>.   MGA claims the constructive trust order "charts new

12   territory" regarding the manner in which trademark rights are conferred.   It does not.   The

13   Court's Order does not hold that domestic trademark rights can be conferred other than

14   through use in commerce.   Rather, it is a straightforward application of well-established

15   principles of tort and constructive trust law.   MGA's wrongful acquisition and use of the

16   names "Bratz" and "Jade" entitle Mattel to a constructive trust over all benefits MGA

17   obtained thereby.   Because the purpose of a constructive trust is to prevent unjust

18   enrichment, the trust covers enhancement in value of the wrongfully acquired property

19   (<u>Haskell Engineering & Supply Co.</u>, 78 Cal. App. 3d 371, 376 (1976)), in this case the

20

21

22   [38]  <u>See</u> Injunction Mtn. at 12-13, Corey Dec., Ex. 21.  Visual depictions of characters readily
     satisfy protectability requirements. <u>Walt Disney Prod. v. Air Pirates</u>, 581 F.2d 751, 755 (9th Cir.
23   1978) ("[I]t is difficult to delineate distinctively a literary character . . . When the author can add a
     visual image, however, the difficulty is reduced").
24      MGA objects for the first time to the "extraterritorial" application of the Court's Order, but
     fails to explain how it will have any extraterritorial application or why that would be improper.
25   <u>Subafilms, Ltd. v. MGM-Pathe</u>, 24 F.3d 1088 (9th Cir. 1994), the only authority MGA cites,
     provides that the "mere authorization of acts of infringement . . . that occur entirely outside of the
26   United States does not state a claim for infringement under the Copyright Act." <u>Id.</u> at 1099.  The
     designs for MGA's infringing products are created <i>within</i> the United States. <u>See, e.g.</u>, Trial Tr.
27   5782:1-25 (Pembleton) (testifying that design work for Bratz occurs in the U.S.).
     [39]  Mattel's Opp. to MGA's Motion to Strike the Declarations of B. Dylan Proctor, Frank
28   Keiser and Kenneth Hollander, dated October 27, 2008, at 2-6, Proctor Dec., Ex. 5.

MATTEL'S OPPOSITION TO <i>EX PARTE</i> APPLICATION FOR STAY PENDING APPEAL

1   trademark rights resulting from MGA's use of the names in commerce. (Order at 7.)[40]

2       The UCL Injunction. Nor are there substantial issues with respect to the "injury in

3   fact" standing requirement under California's UCL. MGA's assertion that Mattel failed to

4   show it "lost money or property" ignores the record. The Court's finding that "Mattel lost

5   market share as a result of the sales of the Bratz dolls" (Order at 7) more than satisfies

6   standing requirements, as do the findings of harm necessarily made by the jury in returning

7   verdicts in Mattel's favor on its tort claims.[41]   Mattel also has and had a protectible

8   property interest in the names "Bratz" and "Jade" and the tangible Bratz property as a

9   matter of state law; MGA wrongfully acquired and retained that property. (Order at 7.)[42]

10   **C.   No Serious Issues Arise From The Declaratory Judgment**

11       MGA argues the declaratory relief Order "is unclear [about] what property rights are

12   being declared" because "the order assigned ownership of works of art and 'ideas' for the

13   Bratz name and characters without reference to copyright law." (Motion at 19.) The Order

---

[40]   MGA contends that the California Uniform Trade Secrets Act ("CUTSA") preempts Mattel's state law claims for tortious interference with contract and aiding and abetting breach of fiduciary duty. MGA waived this defense by failing to timely raise it. See Mattel's Opp. to the MGA's Motion for Judgment as a Matter of Law ("JMOL Opp.") (Docket No. 4269), at 4-5 & n. 10, Proctor Dec, Ex. 6; Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1111 (9th Cir. 2001) ("By waiting until post-trial motions to raise this argument, Deckers waived the right to appeal."). It has no merit in any event. JMOL Opp. at 4-5 & n.11; Ali v. Fasteners for Retail, Inc., 544 F. Supp. 2d 1064, 1070 (E.D. Cal. 2008) (claim for breach of fiduciary duty not preempted by CUTSA). MGA notes that it also argued previously that copyright preemption barred Mattel's aiding and abetting claims, but MGA does not even suggest that this argument raises substantial legal issues.

[41]   MGA argues that harm as an element of an underlying common law claim "cannot be what the voters intended when they passed Prop. 64." (Motion at 18.) In fact, that was precisely the intent. Prior to the passage of Prop. 64, a plaintiff could state a UCL claim without alleging any harm at all. Stop Youth Addiction, Inc. v. Lucky Stores, Inc., 17 Cal. 4th 553, 561 (1998) (prior to Prop. 64, "pursuant to section 17200 as construed by this court and the Courts of Appeal, 'a private plaintiff who has himself suffered no injury at all may sue to obtain relief for others.'") (citations omitted). Prop. 64 was enacted "to prohibit private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact under the standing requirements of the United States Constitution.'" William L. Stern, BUS. & PROF. C. § 17200 PRACTICE, at ¶ 7:32.1 (The Rutter Guide 2008). While lost money or property may be necessary to seek restitution under the UCL, it is not needed for standing to seek an injunction.

[42]   By enjoining use of the names, the UCL injunction also merely "restored to Mattel property acquired as a result of the MGA parties' unfair competition." (Order at 8.) MGA claims Mattel failed to show lost money or property "because the marks that Mattel claimed entitlement to were never Mattel's property in the first place." Motion at 17. Not only is that wrong, but the injunction prevents MGA from using the names *whether as trademarks or otherwise*, and the names clearly were Mattel's in the first place.

is clear on its face, providing that Mattel "owns <u>all</u> rights, title and interest, <u>including any and all copyright rights</u>, in and to the Bratz-related works, ideas, and concepts," and that the ideas for the Bratz name and characters are "protectible property interests as a matter of California state law." (Dec. Judg. Order at ¶ 1 (emphasis added).)  MGA's assertion that the order is unclear is mistaken and does not set forth a basis for reversal in any event.[43] MGA's argument is also inconsistent with its past claims that declaratory relief was unnecessary because there supposedly was no dispute about Mattel's rights.

### D.    No Serious Issues Arise From The Underlying Rulings

MGA purports to identify "serious questions" about certain of the Court's "underlying rulings."  (Motion at 19-25.)  Because the Court has not entered final judgment, any such serious questions (and there are none) could be pertinent to this motion only if they are "inextricably intertwined" with the injunctions.  While final injunctions are appealable, MGA may appeal other interlocutory orders only pursuant to "pendent appellate jurisdiction."  The exercise of pendent appellate jurisdiction is limited to rulings (1) "inextricably intertwined with" or (2) "necessary to ensure meaningful review of" the appealable order.  <u>Swint v. Chambers County Comm.</u>, 514 U.S. 35, 51 (1995); <u>see</u> <u>Hendricks v. Bank of Am.</u>, 408 F.3d 1127, 1134 (9th Cir. 2005) (applying <u>Swint</u>).[44]

The Ninth Circuit has "consistently interpreted 'inextricably intertwined' very narrowly."[45]  <u>Cunningham v. Gates</u>, 229 F.3d 1271, 1284 (9th Cir. 2000).  An appellate court may not exercise pendent jurisdiction simply "in the interests of judicial economy."

---

[43]    MGA is incorrect in its argument, properly rejected by the Court, that the Copyright Act preempts a declaration of ownership.  Order at 6; <u>Classic Media, Inc. v. Mewborn</u>, 532 F.3d 978, 990 (9th Cir. 2008) (granting declaratory judgment of copyright ownership under assignment agreement); <u>Dolch v. United Cal. Bank</u>, 702 F.2d 178, 180 (9th Cir. 1983) (determining copyright ownership under contract).

[44]    To the extent cases prior to <u>Swint</u> may appear to apply a broader standard of pendent appellate jurisdiction, those cases "should be relied on with circumspection." Rutter Group, <u>Cal. Practice Guide, Federal Ninth Circuit Civil Appellate Practice</u>, at 7:54.

[45]    The "necessary to ensure meaningful review" basis for jurisdiction is inapplicable because none of the challenged underlying orders "call[s] into question the district court's 'authority to rule'" on the injunction orders or "implicate[s] 'the very power the district court used to issue'" those orders, as could underlying rulings on subject matter jurisdiction.  <u>Hendricks v. Bank of America, N.A.</u>, 408 F.3d 1127, 1134-35 (9th Cir. 2005) (quoting <u>Meredith v. Oregon</u>, 321 F.3d 807, 816 (9th Cir. 2003)).

1    <u>Swint</u>, 514 U.S. at 45. Orders are "inextricably intertwined" only when "the legal theories

2    on which the issues advance [are] . . . so intertwined that [the appellate court] must decide

3    the pendent issue in order to review the claims properly raised on interlocutory appeal, or .

4    . . resolution of the issue properly raised on interlocutory appeal necessarily resolves the

5    pendent issue." <u>Meredith</u>, 321 F.3d at 814. "Two issues are not 'inextricably intertwined'

6    if [the court] must apply different legal standards to each issue." <u>Id.</u> A close connection is

7    not enough.   <u>State of Cal., on Behalf of Cal. Dept. of Toxic Substances Control v.</u>

8    <u>Campbell</u>, 138 F.3d 772, 778 (9th Cir. 1998) (order requiring defendant to pay costs of

9    clean-up not "inextricably intertwined" with injunction ordering clean-up).

10       Certain of the Court's interlocutory orders identified by MGA--including, at a

11   minimum, the Orders Regarding Motion for Leave to Amend (January 12, 2007, Proctor

12   Dec., Ex. 11); Regarding Statute of Limitations Defense (May 27, 2008 and June 2, 2008,

13   Proctor Dec., Exs. 12-13); and Denying Motion for Mistrial (August 8, 2008, Proctor Dec.,

14   Ex. 17)--are not subject to appellate review under these standards.  These orders do not

15   provide the legal authority for the injunction orders; they turn on different and independent

16   legal standards; these issues need not be decided to review the injunction orders; and the

17   resolution of the appeal of the injunction orders would not "necessarily resolve" the

18   underlying issues. Since there is no basis for appellate review of these orders, any "serious

19   questions" they supposedly present--and there are none--are irrelevant to this motion.

20       <u>None of the Pretrial Rulings Raises Serious Issues</u>.  The Court correctly held the

21   Inventions Agreement to be enforceable.   The Agreement lawfully required Bryant's

22   undivided loyalty during his Mattel employment and specifically incorporates statutory

23   language to ensure that its assignment provision complies with the law.[46]  The Court also

24   correctly ruled that the Agreement covered Bryant's Bratz designs; the Agreement defines

25   the term "inventions" to include "designs," and Bryant expressly assigned the "copyrights"

26   in his creations.[47]   Nor does the Court's ruling that Bryant assigned Bratz "ideas" raise a

27

28

---

[46]  7/17/06 Order at 10-13; 4/25/08 Order at 4-5, Proctor Dec., Exs. 7, 9.
[47]  4/25/08 Order at 4-5, Proctor Dec., Ex. 9.

1   serious issue; ideas are not copyrightable, but are assignable under state law.[48]

2       The Court's ruling that Bryant owed a fiduciary duty presents no serious legal issues.

3   MGA continues to rely on <u>City of Hope Nat'l Med Ctr. v. Genentech, Inc.</u>, 43 Cal. 4th 375

4   (2008), but this Court correctly recognized that <u>City of Hope</u>'s analysis of when a fiduciary

5   duty arises by operation of law does not apply where the duty is created by contract.[49]

6       Neither the Court's application of the relation-back doctrine nor its rejection of

7   MGA's statute of limitations defense supports a stay.  Mattel was not required to present

8   evidence that it made a "mistake" regarding MGA's identity under <u>Rule</u> 15(c), and its

9   substitution of the MGA Parties as "Doe" defendants was proper because it did not know

10   they encouraged Bryant's unlawful behavior at the time of the original complaint.[50]  The

11   Court also did not hold, as MGA claims, that Mattel had no duty to inquire into the facts

12   underlying its claims until it had actual knowledge of all the facts.  (Motion at 21).  The

13   Court correctly recognized that a claim accrues when the plaintiff "has ***knowledge*** of at

14   least one of the three generic elements, and ***suspicion*** of the remaining generic

15   elements."[51]  MGA's fraudulent concealment further supports the finding of timeliness.

16       The Court correctly held that the "substantial similarity" test should be applied to

17   Bryant's Bratz drawings.  MGA cites a variety of cases applying the "virtual identity"

18   standard of <u>Satava v. Lowry</u>, 323 F.3d 805 (9th Cir. 2003), but each case, like <u>Satava</u>'s

19   jellyfish, involved realistic representations of objects in nature, not fanciful representations

20

21      [48]  Order at 5 n.2; <u>see</u> <u>Desny v. Wilder</u>, 46 Cal.2d 715, 733 (1956) ("the policy that precludes

22   protection of an abstract idea by copyright does not prevent its protection by contract"); <u>Rokos v. Peck</u>, 182 Cal.App.3d 604, 614 (1986) ("By the early 1950's, the principle that 'ideas' could be

23   protected by contract became firmly embedded in the laws of this state.").  MGA cites no contrary authority.

24      [49]  5/21/08 Order at 2; 4/25/08 Order at 5, Proctor Dec., Exs. 10, 9.  MGA also complains that the Court's rulings regarding Bryant's duty of loyalty and his breach thereof create a substantial

25   legal issue, but provides no supporting analysis.  MGA states that the Court instructed the jury that Bryant owed ***and*** breached his fiduciary duty to Mattel.  (Motion at 20.)  But the Court's

26   instructions only stated that Bryant owed such a duty, and left to the jury whether he breached it. Jury Instructions Phase 1(A) as Given, No. 28, at 31-32, Proctor Dec., Ex. 8.

27      [50]  5/27/08 Order at 8, Proctor Dec., Ex. 12; 1/12/07 Order at 15 n.5, Proctor Dec., Ex. 11.
   [51]  5/27/08 Order at 4, Proctor Dec., Ex. 12 (citing <u>Fox v. Ethicon Endo-Surgery, Inc.</u>, 35 Cal.

28   4th 797, 806 (Cal. 2005)).

1   of human anatomy that permit limitless expressive possibilities like Bryant's designs.[52]

2      <u>None Of The Trial Rulings Raises Serious Issues</u>.  The Court did not err in rejecting

3   MGA's "joint authorship" defense.  MGA did not disclose in the FPCO (or even in Phase

4   1A)--and thus waived--its belated contention that the Bratz works were jointly authored.[53]

5      The Court did not err in prohibiting MGA from presenting privileged MGA-

6   Rosenbaum communications produced mid-trial absent a privilege waiver.  Although facts

7   themselves are not privileged, *communications* of facts by attorneys can be.  <u>United States</u>

8   <u>v. Rowe</u>, 96 F.3d 1294, 1296-97 (9th Cir. 1996) (rejecting contention that attorney

9   communications of facts were not privileged).  MGA could not intentionally reveal

10  communications made in the context of providing legal services without waiving.[54]

11     Finally, the Court's denial of MGA's motion for mistrial does not present a serious

12  legal issue (and is not currently appealable in any case).  Along with many other grounds

13  supporting the ruling, the Court's findings that Juror No. 8 was not legally biased and that

14  any preconceived notions did not affect the verdict were based on the Court's extensive

15  interviews with the jurors, as was the finding that the remaining jurors rejected her

16  remarks.[55]  The finding of no actual bias refutes MGA's effort to portray this case as

17

18  [52]  7/25/08 Order at 4-5, Proctor Dec., Ex. 14.  <u>See</u> <u>McCulloch v. Albert E. Price, Inc.</u>, 823
F.2d 316, 321 (9th Cir. 1987) ("works that are not factual receive much broader protection under
19  the copyright laws because of the endless variations of expression available to the artist").  MGA
misreads <u>Aliotti v. R. Dakin & Co.</u>, 831 F.2d 898 (9th Cir. 1987), which actually applied a
20  *substantial similarity* test for infringement.  <u>Id.</u> at 900-901.
[53]  Fed. R. Civ. P. 16(e); <u>United States v. First National Bank of Circle</u>, 652 F.2d 882, 886-887
21  (9th Cir. 1981) (theory barred if not included in pretrial order); Trial Tr. at 6907:24-6909:7 ("At
no time that I can find anywhere in this case has MGA taken the position that the sculpt . . . or
22  anything else was a product of joint authorship . . . .").  The defense also fails on the merits.  <u>See</u>
Trial Brief re Joint Authorship and Ownership of Exhibit No. 1136, at 1-4, Proctor Dec., Ex. 15.
23  [54]  <u>See</u> <u>Weil v. Inv./Indicators, Research & Mgmt., Inc.</u>, 647 F.2d 18, 25 n.13 (9th Cir. 1981)
("Indeed, when, as here, the privileged communication is voluntarily disclosed without objection
24  by the asserting party's counsel and in the absence of surprise or deception by the opposing
counsel, it may be unnecessary to look beyond the objective fact of disclosure in ruling on the
25  question of waiver").  MGA's decision to withhold the emails in the face of orders compelling
production and to use privilege to block discovery into the matter pretrial also supported
26  preclusion at trial.
[55]  Order Denying Motion for Mistrial at 10; Order Regarding Juror No. 8, Finding of Fact
27  Nos. 1, 3, Proctor Dec., Exs. 17, 16.  <u>See also</u> Mattel's Opp. to Defs.' Motion for Mistrial, dated
July 31, 2008 at 9-12 (citing <u>Irvin v. Dowd</u>, 366 U.S. 717, 723 (1961)), Proctor Dec., Ex. 18;
28  <u>Hard v. Burlington N.R. Co.</u>, 870 F.2d 1454 (9th Cir. 1989).

7209/2742528.1

1   raising novel legal issues. Any taint could also have been cured by redeliberation, but

2   MGA rejected the Court's offer of Phase 1A redeliberation.

3   **IV.   MGA CANNOT SHOW IRREPARABLE HARM**

4        MGA's Claim of Irreparable Harm Is Not Cognizable. MGA also fails to establish

5   irreparable injury. Where a plaintiff claiming infringement "has made a strong showing of

6   likely success on the merits," a defendant's assertion that an injunction would jeopardize

7   its survival "cannot be accorded significant—if any—weight." Cadence, 125 F.3d at 830

8   (granting preliminary injunction).[56] The same principle applies here. Lopez, 713 F.2d at

9   1435 (preliminary injunctions and stays pending appeal are evaluated under similar

10   standards). Given Mattel's overwhelming showing of infringement—including based on

11   MGA's own admissions—MGA's claims of injury from an injunction are unavailing. See,

12   e.g., Digital Filing Sys., Inc. v. Aditya Int'l, 2005 WL 2372662, at *3 (E.D. Mich. Sept.

13   27. 2005) ("[W]here the entire business consists of [products] created in violation of the

14   Plaintiff's copyright," loss of that business is not substantial factor in assessing stay

15   pending appeal); Magnesystems, Inc. v. Nikken, Inc., 1994 WL 808421, at *5 (C.D. Cal.

16   Aug. 8, 1994) (defendant is "in no position to complain that its entire business may be

17   destroyed by entry of an injunction if it has built that entire business on an infringing

18   product").[57]

19        MGA urges the Court to ignore the Ninth Circuit's decision in Cadence and instead

20   ───────────────

[56] See also Triad Sys. Corp. v. Se. Express Co., 64 F.3d 1330, 1338 (9th Cir. 1995) (business

21   that infringes upon another's intellectual property rights "cannot complain of the harm that will befall it when properly forced to desist from its infringing activities").

22   [57]  See also Philips Elecs. N. Am. Corp. v. Contec Corp., 2004 WL 2009370, at *2 (D. Del.
Aug. 24, 2004) ("[T]he loss of customers or business built upon the sale and use of infringing

23   products does not amount . . . to irreparable harm from which the defendant should be shielded.");
Empresa Cubana del Tabaco v. Culbro Corp., 2004 WL 925615, at *2-3 (S.D.N.Y. April 30,

24   2004) (no irreparable injury because "[o]ne who elects to build a business on a product found to
infringe cannot be heard to complain if an injunction against continuing infringement destroys

25   the business so elected"); Arthrocare Corp v. Smith & Nephew, Inc., 315 F. Supp. 2d 615, 621
(D. Del. 2004), vac't in part on other grounds, 406 F.3d 1365 (same); Hasel v. Pulpdent Corp.,

26   2004 WL 1196971, at *3 (D. Minn. Jan. 7, 2004) (refusing to find irreparable injury from harm to
business that "results only from the inability to continue infringing"); Corning Glass Works v.

27   Sumitomo Elec. Research Triangle, Inc., 674 F. Supp. 1074, 1078 (S.D.N.Y. 1987) ("One who
elects to build a business on a product found to infringe cannot be heard to complain if an

28   injunction against continuing infringement destroys the business so elected.").

7209/2742528.1

MATTEL'S OPPOSITION TO *EX PARTE* APPLICATION FOR STAY PENDING APPEAL

1   follow that of the Federal Circuit in Standard Havens Prods. v. Gencor Indus., Inc., 897

2   F.2d 511 (Fed. Cir. 1990).  This Court is bound to follow Ninth Circuit precedent.  In any

3   case, Standard Havens does not reject the principle that a party who builds a business on

4   infringing products cannot complain when it is enjoined from further infringement; it

5   simply rejects its "mechanical" application to a defendant who actually demonstrated a

6   "substantial" likelihood of success on the merits of his appeal.  Id. at 515 (movant had

7   shown a "'substantial case'" on several grounds).   When no such likelihood is

8   demonstrated, Standard Havens does not require courts to postpone the relief to which

9   plaintiff is entitled.  Magnesystems, 1994 WL 808421, at *5 (applying Standard Havens

10  but rejecting claim that inability to continue infringement would cause irreparable injury);

11  Philips Elecs., 2004 WL 2009370, at *1-2; Itron, 2003 WL 22037710, at *12.

12       MGA's Evidence of Irreparable Harm Is Speculative.  In evaluating MGA's claims

13  of irreparable injury, the Court must consider "the likelihood of its occurrence" and "the

14  adequacy of the proof provided."  Saldate v. Adams, 573 F. Supp. 1303, 1315 (E.D. Cal.

15  2008).  MGA has not met these standards.[58]  Because "[s]peculative injury does not

16  constitute irreparable injury," MGA's conjecture about ███████████████████

17  ██████████████████████ are unavailing.  Goldie's Bookstore v. Superior Court, 739

18  F.2d 466, 472 (9th Cir. 1984).  MGA's declarant, Mr. Wing, avers that a stay denial will

19  be a "mortal wound" that MGA "may not survive," but his conclusory diagnosis is wholly

20  speculative, reflecting predictions about what "*could* result" or "will *likely* result" or "*may*"

21  happen absent a stay (and listing complaints common to consumer products companies in

22  today's economic climate).[59]  Such speculation is insufficient.  See, e.g., Humane Soc. of

23  U.S. v. Cavel Int'l, Inc., 2007 WL 4723381 at *3 (D.C. Cir. 2007) ("conclusory statements

24

25       [58]   Larian, in addition to MGA, also seeks a stay pending appeal (Notice at 1), but offers no evidence that he will suffer irreparable injury absent one.  The financial information that Larian

26  produced during trial shows he has well over $100 million dollars in cash and marketable securities, as well as other assets; there is no contrary evidence, and no evidence regarding the

27  impact of an injunction on him.  See TX 4947-0001-04; TX 13909 (Isaac and Angela Larian's "List of Assets" from 2005-2008), Corey Dec., Exs. 2 & 3.

28       [59]   Wing Dec. ¶¶ 8-13 (italics added).

1 [in officer's declaration] amount to no more than an articulation of a *potential*, rather than

2 a certain, great, and irreparable economic harm that will necessarily result from the

3 facilities shutdown during the pendency of the appeal.").[60]  If MGA wished to prove that

4 ████████████████████████████████████, there are ways to do so

5 (assuming that were true).[61]  But it did not attempt such a showing, undoubtedly because

6 any MGA financial troubles are not of the injunction's making.[62]

7      The Injunction Order Does Not Preclude MGA From Successfully Marketing Other

8 Dolls.  The injunction orders do not preclude MGA from selling non-infringing dolls that

9 have the non-infringing packaging, accessories, themes or maneuverability of the Bratz

10 dolls.  According to MGA, it is factors such as those, *not* the doll, that generate its profits,

11 making any lost Bratz revenues readily replaceable through sales of other products.[63]

12 MGA witnesses testified, and MGA's counsel represented to the Court, that MGA's profits

13 derived almost entirely from factors other than the doll itself and that the success of its

14 products was unrelated to the appearance of the doll.[64]  MGA now claims, inconsistently,

---

15    [60]  See also Teleflex Indus. Products, Inc. v. Brunswick Corp., 294 F. Supp. 256, 258 (E.D.

16 Pa. 1968) ("The equitable relief of a stay pending appeal will not be entertained 'against something merely feared as liable to occur at some indefinite time in the future").

17    [61]  MGA would first submit an audited balance sheet proving that it was solvent (assets exceeded liabilities) before the orders issued.  (The last audited balance sheet MGA produced was

18 for fiscal year 2006. See Wagner Dec. ¶ 7 & Ex. B) MGA would then quantify the ██████████

19 ████████████████████.  MGA has these records, but has not supplied them. Id. ¶¶ 4-7.

20    [62]  According to MGA itself, MGA's financial troubles are the result of declining Bratz sales, distributions of money to Larian and excess debt. See Trial Tr. at 6248:11-21, 6257:17-6258:11;

21 Pet. for Mandamus at 34, Corey Dec., Ex. 7; Wagner Dec., ¶ 8, 14. For years Larian siphoned MGA's profits out of the company; he received at least ████████████████████

22 ████████████. Id. MGA also apparently ██████████████████████████████████████████████

23 ██████████████████████████████. Corey Dec., Exs. 22-24 (7/12/08 Letters from Wachovia Securities to MGA).

24    [63]  Trial Tr. at 5518:18-5519:22; Trial Tr. at 7675:10-19; Trial Tr. at 6566:4-6.

25    [64]  Trial Tr. at 6932:6-6933:11 (Garcia) (testifying that mechanical movement is "very, very important"); Trial Tr. at 6996:1-21 (Garcia) (testifying that it is through themes that "we can reinvent ourselves" and keep girls "interested" and "can reach them emotionally"); Trial Tr. at

26 7012:22-7013:12 (Garcia) (testifying that fashion "encourages the reason for another purchase of the doll"); Trial Tr. at 7015:20-7016:18 (Garcia) (accessories); Trial Tr. at 7033:24-7036:4

27 (Garcia) (testifying that girls collected Bratz packaging); Trial Tr. at 7074:1-19 (Garcia) (Be-Bratz website drove sales); Trial Tr. at 7715:16-7716:17 (Meyer) (themes were a factor in Bratz success); Trial Tr. at 7740:17-7743:11 (Mattel's intellectual property responsible for only 11.9%

28 of success of Bratz); Trial Tr. at 5514:3-9 (MGA argument) ("B-Bratz websites. . .have driven the (footnote continued)

MATTEL'S OPPOSITION TO *EX PARTE* APPLICATION FOR STAY PENDING APPEAL

1   that ▮▮▮▮▮▮▮▮ turns on the ability to continue to produce the infringing dolls that

2   MGA claimed at trial were not the driving force behind its product sales.  Having benefited

3   from its apportionment arguments to the jury, MGA cannot now make contrary ones to

4   obtain a stay.  See Fresenius Medical Care Holdings, Inc. v. Baxter Int'l, Inc., 2008 WL

5   928496 *5-6 (N.D. Cal. April 4, 2008) (rejecting claim of infringer, who argued at trial

6   that infringing aspect of dialysis machine was trivial, that "its business will be destroyed

7   and tens of thousands of hemodialysis patients will suffer" if it were enjoined; infringer

8   could not contradict trial arguments that it could substitute an alternative and produce non-

9   infringing products).[65]  MGA can avoid the harms it claims an injunction will cause by

10  producing products using the non-infringing elements MGA told the jury were responsible

11  for its success.[66]

12          Contrary to Its Claim, MGA ▮▮▮▮▮▮▮▮.  MGA claims ▮▮▮▮▮▮▮▮

13  ▮▮▮▮▮▮.  Even though MGA stymied any real discovery into its finances, this is

14  demonstrably false.  Since the Phase 1B verdicts, ▮▮▮▮▮▮▮▮

15  ▮▮▮▮▮▮▮▮▮▮, which confirms that MGA is not being candid

16  to the Court about the funding it has received, or its funding sources.[67]  Moreover, if he

17  was honest in his testimony about MGA's strengths (or if he believes in the merits of

18  MGA's appeal), Larian can be expected to invest some of the ▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮▮▮▮ to sustain it once an injunction goes into effect.

20

21  brand to the success that it has"); Trial Tr. at 5524:10-5525:4 (MGA argument) ("It's the appeal. It's the package."); see also Trial Tr. at 6172:13-21 (Larian) ("We would have found something

22  else."); Trial Tr. at 5781:11-21 (Pembleton) ("I think that a fashion doll line could have spawned itself at MGA at any time.").

23  [65]  See New Hampshire v. Maine, 532 US 742, 749 (2001) ("a party should not be allowed to gain an advantage by litigation on one theory, and then seek inconsistent advantage by pursuing

24  an incompatible theory").
    [66]  Larian and other MGA employees testified that MGA took Bratz from concept to sales in

25  weeks, and from sale to retailer shelves in months.  See Trial Tr. 1647:16-1649:2 (Larian) ("Born September 2000.  Nine months to develop like a baby."); see also Trial Tr. 1797:19-23 (Larian)

26  ("The drawings were presented to retailers in November [2000]").  That development timeline would permit MGA to sell and manufacture a new doll to avoid any significant financial injury

27  from the loss of Bratz.  In fact, even before trial MGA launched a new fashion doll, the "America's Next Top Model" dolls.  See 2/12/08 MGA Press Release, Proctor Dec., Ex. 20.

28  [67]  See Corey Dec. ¶ 2, Ex. 1.

1        <u>MGA's Statements As to Its Finances Are Not Trustworthy</u>. MGA's latest, untested

2 claims of potential hardship should be given little weight given its history of revising its

3 financial portrait to suit its litigation needs. MGA and Larian have repeatedly and

4 drastically changed their statements of their own net worths.[68] MGA has also made

5 fluctuating claims about ████████████████████████████ to attempt to avoid

6 the Phase 1B trial only to renounce that claim when faced with an injunction.[69] MGA's

7 latest, conclusory predictions of financial doom, and the causes of that doom, should not

8 be credited, especially given its failure to provide supporting financial information.

9 **V.**    **THE PUBLIC INTEREST DOES NOT SUPPORT A FURTHER STAY**

10      The enforcement of Mattel's copyrights is in the public interest, far outweighing any

11 purported "public" interest asserted by MGA.[70] It is "virtually axiomatic that the public

12 interest can only be served by upholding copyright protections" (<u>Klitzner Indus., Inc. v. H.</u>

13 <u>K. James & Co., Inc.</u>, 535 F. Supp. 1249, 1259-1260 (E.D. Penn. 1982)), and this principle

14 applies with equal force to stays pending appeal. <u>Lopez</u>, 713 .F.2d at 1435.[71] MGA

15 argues, without authority, that the potential loss of jobs in foreign countries warrants an

16 additional stay (Motion at 9), but its foreign licensees and distributors can substitute other

17 products for the infringing dolls, as their declarations confirm.[72]

18 **VI.**    **A STAY WOULD CAUSE IRREPARABLE HARM TO MATTEL**

19      In the preliminary injunction context—before *any* finding of liability has been

20     [68]  <u>See</u> Corey Dec. ¶¶ 3-5, Exs. 2-6.

21     [69]  <u>See</u> Corey Dec. ¶ 6, Exs. 7-8.
    [70]  <u>See</u> Belcher v. Birmingham Trust Natl. Bank, 395 F.2d 685, 686 (5th. Cir. 1968) ("the

22 employees' desire for job security during the time of appeal cannot be equated with a public interest that must be considered in arriving at a stay determination."); <u>Magnesystems</u>, 1994 WL

23 808421, at *5 (C.D. Cal. Aug. 8, 1994).
    [71]  <u>See also</u> Autoskill Inc. v. Natl. Educ. Support Sys., Inc., 994 F.2d 1476 (10th Cir. 1993);

24 Apple Computer Inc. v. Franklin Computer Corp., 714 F.2d 1240 (3d Cir. 1983) (agreeing with Klitzner); Jane Russell Designs, Inc. v. Mendelson & Assoc., Inc., 114 F. Supp. 2d 856, 863 (D.

25 Minn. 2000) ("the public interest is always served by upholding copyrights and thereby encouraging individual effort and creativity.").

26     [72]  E.g., Cameron Dec., ¶ 5; Connors Dec., ¶ 4 ("████████████████████████
████████████████████"). As for children who will supposedly suffer disappointment, many

27 non-infringing alternatives are available. Mattel, Inc.'s Reply In Support Of Motion For Permanent Injunction, dated October 22, 2008, at 19, Proctor Dec., Ex. 3; Declaration of

28 Stephanie Cota, Proctor Dec., Ex. 4.

1 | made—courts in this Circuit have repeatedly recognized that the irreparable nature of harm
2 | from continued copyright infringement justifies immediate relief.  See, e.g., Cadence, 125
3 | F.3d at 828 (reversing denial of preliminary injunction; by allowing continued use "the
4 | court has, in essence made the plaintiff an involuntary licensor of the copyrighted
5 | material."); Ebay, Inc. v. Bidder's Edge, Inc., 100 F. Supp. 2d 1058, 1067 (N.D. Cal. 2000)
6 | ("BE's ongoing violation of eBay's fundamental property right to exclude others from its
7 | computer system potentially causes sufficient irreparable harm to support a preliminary
8 | injunction.").  The case for immediate relief is far stronger where liability has been proven.
9 | Hence, the weight of authority also recognizes that irreparable harm from an ongoing loss
10 | of exclusive rights is sufficient to justify the denial of a stay.  See, e.g., Becton Dickinson
11 | and Co. v. Tyco Healthcare Group LP, 2008 WL 4745882, *4 (D. Del. 2008) (denying stay
12 | where parties "are head-to-head competitors . . . and [plaintiff] has a right to exclude its
13 | rival from using its proprietary technology"); Philips Electronics North American Corp. v.
14 | Contec Corp., 2004 WL 2009370, *2 (D. Del. 2004) ("Staying . . . the appeals process
15 | would essentially allow the defendant to continue to infringe, thereby further usurping the
16 | exclusivity that the plaintiff is entitled to enjoy as a result of its patent."); Crucible, Inc. v.
17 | Stora Kopparbergs Bergslags AB, 1985 WL 2872, *5 (W.D. Pa. 1985) (denying stay to
18 | avoid irreparable harm to plaintiff from infringement).[73]

19 | Moreover, the injury to Mattel is not limited to the loss of its exclusive rights.
20 | Permitting MGA to continue to infringe during an appeal will cause Mattel harm, such as
21 | lost goodwill and market share, that is difficult to quantify and therefore irreparable.[74]
22 | Magnesystems, 1994 WL 808421, at *6 (denying stay pending appeal where plaintiff
23 | would lose market share).  A stay would signal other manufacturers producing Bratz
24 | products without permission that they may continue to infringe to Mattel's detriment,

25 |
26 | [73] Advanced Medical Optics, Inc. v. Alcon Laboratories, Inc., 2005 WL 3454283 *11 (D. Del. 2005), relied upon by MGA, is distinguishable.  The court there found that the public interest strongly weighed in favor of a stay because surgeons and patients otherwise would be left without
27 | important medical equipment, and there was no risk the plaintiff would lose market share.
28 | [74] See Injunction Motion at 23 & n. 98, n. 99, Corey Dec., Ex. 21; Injunction Reply at 12-14, Proctor Dec., Ex. 3.

7209/2742528.1

MATTEL'S OPPOSITION TO *EX PARTE* APPLICATION FOR STAY PENDING APPEAL

1  requiring more lawsuits and causing further irreparable injury. <u>Pittway v. Black & Decker</u>,

2  667 F. Supp. 585, 592 (N.D. Ill. 1987) (permitting continued infringement "will encourage

3  others to copy [plaintiff's] invention and flood the market with infringing products without

4  fear of being stopped by a prompt injunction"). MGA could not likely ever compensate

5  Mattel even for ongoing harms which *are* compensable in dollars.[75]

6         If anything, the harms to Mattel's exclusive rights are an even greater concern with a

7  permanent injunction looming. If MGA's claims of ███████████████████

8  ██████ are to be credited, the quality of the Bratz products embodying Mattel's

9  intellectual property may suffer; bringing inferior products to market would damage the

10  value of Bratz and thus cause irreparable harm.[76] MGA also has little incentive—and may

11  lack the financial resources—to prevent third parties from infringing, diluting, tarnishing

12  or otherwise irreparably damaging the value of Mattel's intellectual property during any

13  appeal. It may be tempted by transactions that maximize short-term gain but damage

14  Mattel's property in the long term. Knowing that it is likely to lose control of Bratz rights,

15  MGA does not have the incentives it once had to maintain these properties for Mattel's

16  benefit or to prevent third parties from damaging their value.[77]

17  **VII.  THE COURT SHOULD CONDITION ANY STAY ON AN ESCROW AND
       APPOINTMENT OF A RECEIVER**

18

19         MGA argues it should be granted a stay in exchange for "paying a reasonable

20  royalty into escrow." (Motion at 8.) The royalty it suggests is far from reasonable. It is

21
   _____

22  [75] <u>Grokster</u>, 518 F. Supp. 2d at 1217 ("Because it is extremely unlikely that [defendant] will
   be able to compensate Plaintiffs monetarily for the infringements it has induced in the past, or the
   infringements it could induce in the future . . . Plaintiffs have and will continue to suffer

23  irreparable harm").
   [76]    <u>See</u> <u>Processed Plastic Co. v. Warner Communications, Inc.</u>, 675 F.2d 852, 858 (7th Cir.

24  1982) ("The most corrosive and irreparable harm attributable to trademark infringement is the
   inability of the victim to control the nature and quality of the defendant's goods. Even if the

25  infringer's products are of high quality, the plaintiff can properly insist that its reputation should
   not be imperiled by the acts of another.").

26  [77]    For example, the United States and other countries require that a trademark registrant
   periodically submit affidavits of continued use and pay renewal fees to maintain trademark

27  registrations. <u>See, e.g.</u>, 15 U.S.C. § 1058; Renewal of registration, (2003) Cap. 559A, Rule 32
   (H.K.), Proctor Dec., Ex. 21; Trade Marks Act, 1994, c.26, §§ 42-43 (U.K.), Proctor Dec., Ex. 22.

28  MGA could fail to comply with these requirements and thereby forfeit Mattel's rights.

1 | the same "minute" royalty (between 0.2% and 0.3%), lacking basis,[78] that the Court

2 | previously rejected. (Order at 15.) It is also completely at odds with MGA's current claim

3 | that its continued ability to use Mattel's intellectual property is essential to its survival.

4 | MGA is not entitled to a stay, but if one is granted it should at a minimum include

5 | conditions. See Fed. R. Civ. P. 62(c) (stay pending appeal may be conditioned on "terms

6 | that secure the opposing parties rights").[79] First, any further stay should be conditioned on

7 | MGA's posting a bond to pay the past damages award and on placing in escrow all

8 | revenues from the sale and licensing of infringing Bratz products. GTE Prods. Corp. v.

9 | Kennametal, Inc., 772 F. Supp. 907, 920 & n.7 (W.D. Va. 1991) (conditioning appeal stay

10 | on bond equal to the estimated profits on sale of infringing products). Second, to ensure

11 | that MGA deposits the proper amounts into escrow and otherwise acts to protect Mattel's

12 | intellectual property interests, the Court should also condition any stay on the appointment

13 | of a receiver. The receiver's use of revenues from infringing sales made during the stay

14 | period should be limited to reasonable costs and expenses necessary to run the Bratz

15 | business (to avoid the calamities MGA predicts).

16 | "Receivership is an equitable remedy and a receiver will be appointed when the

17 | most speedy and perfect administration of justice and the rights of the parties interested in

18 | the property will be best secured by such action." View Crest Garden Apartments v.

19 | United States, 281 F.2d 844, 849 (9th Cir. 1960) (internal cites omitted). A receiver is

20 | appropriate under Rule 62(c), which expressly conditions the stay of an injunction pending

21 | appeal on "terms for bond or other terms that secure the opposing parties rights."

22 | California statutes also specifically authorize the appointment of a receiver "to preserve

23 | [property] during the pendency of an appeal" and in "all other cases where necessary to

24 | property or rights of another party." Cal. Civ. Proc. Code § 564(b); Resolution Trust Corp.

25 |

26 | [78] MGA's proposed royalty rate is based on the flawed, inadmissible analysis of its expert, Paul Meyer. Mattel detailed the many flaws in Meyer's analysis in its motion to strike his

27 | declaration. Docket Nos. 4377, 4401, Proctor Dec., Exs. 23 & 24. [79] See Multistate Tax Comm. v. U.S. Steel Corp., 659 F.2d 931, 932 (9th Cir. 1981) (district

28 | court properly conditioned stay pending appeal on 60-day waiver of statute of limitations).

1  v. Bayside Developers, 43 F.3d 1230, 1242 (9th Cir. 1995) (affirming appointment of

2  receiver under Civ. Proc. Code §564(b)).

3      In appointing receivers, federal courts consider the following factors:

4      (1) fraudulent conduct on defendant's part; (2) imminent danger of the
   property being lost, concealed, injured, diminished in value, or squandered;

5  (3) inadequacy of legal remedies; (4) probability that harm to plaintiff by
   denial of appointment would outweigh injury to parties opposing

6  appointment; (5) plaintiff's probable success in the action and the possibility
   of irreparable injury to plaintiff's interest in the property; (6) whether

7  plaintiff's interests sought to be protected will in fact be well-served by
   receivership.

8  New York Life Ins. Co. v. Watt West Inv. Corp., 755 F. Supp. 287, 292 (E.D. Cal. 1991).

9  Each of these factors favors appointment of a receiver here.

10      Fraudulent Conduct on Defendant's Part. Absent the appointment of a receiver,

11  Mattel will have no assurance that any amounts, let alone the proper amounts, will be

12  deposited into escrow. Because MGA is privately held, the revenues actually generated

13  from the sale of infringing Bratz products are difficult to discern externally, and MGA has

14  provided no audited financials since 2006.[80] In addition, revenues and costs could be

15  allocated in ways that would mask the true profits from sales: MGA could strike deals

16  giving retailers steep discounts on Bratz products in return for terms more favorable to

17  MGA on other product lines, or could allocate disproportionate amounts for labor and

18  overhead to Bratz in order to reduce Bratz profits and increase the profits from other toy

19  lines.[81] Absent a receiver, Mattel would have no control over (or knowledge of) amounts

20  paid to Larian and his family members as distributions, compensation, bonuses or never-

21  to-be-repaid loans; many of Larian's family members already have received large

22  payments from MGA without meaningful explanation.[82] Entrusting MGA with the task of

23  identifying the revenues and profits attributable to Bratz is as unworkable as the royalty

24  remedy previously rejected by the Court (Order at 15). The evidence is more than

25  

---

26  [80]  Wagner Dec. ¶ 7.
   [81]  At trial, for example, Mattel maintained that MGA received $800 million in profits from

27  the sale of Bratz products. MGA, on the other hand, claimed that it had made only $400 million.
   Differences in cost allocation accounted for a significant portion of this discrepancy.

28  [82]  Corey Dec. ¶¶ 7-11, Exs. 9-19.

1  sufficient to allow the Court to infer the prospect of fraudulent conduct on MGA's part.[83]

2       **Danger To Mattel's Property.**  MGA's claimed dire financial condition increases the

3  risk that profits from infringing Bratz sales made during the stay period will be concealed

4  or dissipated.  See New York Life Ins. Co., 755 F. Supp. at 292 (receivership appropriate

5  where defendant was experiencing financial difficulty and adequacy of security was

6  doubtful); World Fuel Services Corp., 229 F. Supp. 2d at 589 (that defendant's "financial

7  condition since entry of judgment has dramatically deteriorated" favored receivership).

8  Absent the appointment of a receiver, there is also a very real danger that Mattel's

9  intellectual property would be damaged or impaired because MGA may have neither the

10  incentives nor resources to maintain it.  For example, MGA could fail to renew

11  registrations, allow blatant infringement of Mattel's rights by others, or attempt to

12  encumber Mattel's rights through transactions with third parties.

13       **Other Factors.**  Mattel has already succeeded on the merits.  While the potential

14  harms to Mattel absent a receiver are irreparable, the only harm to MGA will be to limit its

15  otherwise unfettered ability to take wrongful actions detrimental to Mattel's interests.  A

16  receiver will be able to monitor MGA's compliance with the escrow order, ensure that

17  MGA does not dissipate or conceal Bratz profits and ensure that necessary steps are taken

18  to maintain Mattel's intellectual property rights.  Only a receivership can serve these

19  salutary goals.

20  DATED:  December 23, 2008     QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

21

22       By /s/ John B. Quinn_____

23       John B. Quinn
     Attorneys for Mattel, Inc.

24

25  _____

26  [83]  Cf. World Fuel Services Corp. v. Moorehead, 229 F. Supp. 2d 584, 589 (N.D. Tex. 2002) (inferring possibility of fraudulent conduct based on questionable business transactions with friends and associates).  The Court can also infer fraudulent conduct from the jury's verdict of

27  fraudulent concealment and from MGA's granting of a security interest in its assets immediately following the Phase 1B verdict to an entity whose ownership has been concealed through a

28  complex series of transactions.  See supra Section IV.B.