# EXHIBIT 1

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

| | |
|---|---|
| 11  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12      Plaintiff, | Consolidated with |
| 13      vs. | Case No.  CV 04-09059<br>Case No.  CV 05-2727 |
| 14  MATTEL, INC., a Delaware corporation, | **MATTEL INC.'S *EX PARTE* APPLICATION FOR AN EXPEDITED HEARING ON MATTEL'S MOTION FOR A PERMANENT INJUNCTION** |
| 15      Defendant. | |
| 16 | |
| 17  AND CONSOLIDATED ACTIONS | [Declaration of Kathleen Simpson Taylor and Proposed Order filed concurrently herewith] |
| 18 | |
| 19 | **Phase 1(a)**<br>Trial Date:  May 27, 2008 |
| 20 | |
| 21 | **Phase 1(b)**<br>Trial Date:  July 23, 2008 |
| 22 | |

23

24

25

26

27

28          EXHIBIT __1__ PAGE 5A

Case 2:04-cv-09049-DOC-RNB   Document 4513-4   Filed 12/23/08   Page 3 of 69   Page ID
#:131175
Case 2:04-cv-09049-SGL-RNB      Document 4310      Filed 09/29/2008      Page 2 of 6

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 |     PLEASE TAKE NOTICE that, pursuant to Local Rule 7-19, Mattel,

3 | Inc. ("Mattel") hereby applies to the above-entitled Court *ex parte* for an expedited

4 | hearing on Mattel's Motion for a Permanent Injunction ("Motion"), currently

5 | scheduled for hearing on November 10, 2008.  For the reasons set forth in this

6 | Application, and the accompanying Memorandum of Points and Authorities, Mattel

7 | respectfully requests that the Court set hearing on Mattel's Motion for October 27,

8 | 2008.

9 |     Mattel makes this Application on the grounds that the sale of infringing

10 | Bratz products during the holiday season poses an enormous, but largely

11 | unquantifiable, threat to Mattel's holiday sales.  The months of September, October,

12 | November, and December are the most important months of the year for Mattel.

13 | Mattel ships thousands upon thousands of toys to retailers during these four months,

14 | garnering the majority of its annual revenues in the process.  The continued presence

15 | of infringing Bratz products on the market poses a significant threat of irreparable

16 | harm to Mattel's sales during this crucial time of year.

17 |     Pursuant to Local Rule 7-19, on September 29, 2008, Mattel provided

18 | telephonic notice of this *ex parte* Application to Jason Russell, Esq., of Skadden,

19 | Arps, Slate, Meagher & Flom LLP, counsel for the MGA Parties, 300 South Grand

20 | Avenue, Suite 3400, telephone (213) 687-5000.  Counsel for defendants confirmed

21 | that they oppose the application and wish to be heard.

22 |

23 |

24 |

25 |

26 |

27 |

28 |

# EXHIBIT _1_ PAGE _6_

1

2          This Application is based on this Notice of Application, the

3   accompanying Memorandum of Points and Authorities in Support thereof, the

4   Declaration of Kathleen Simpson Taylor filed concurrently herewith, the records

5   and files of this Court, and all other matters of which the Court may take judicial

6   notice.

7

8   DATED:  September 29, 2008          QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
9

10                                      By/s/ Michael T. Zeller
11                                        Michael T. Zeller
                                          Attorneys for Mattel, Inc.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                    EXHIBIT __1__ PAGE __1__

1

2

## **Memorandum of Points and Authorities**

3  **I.     THE THREAT OF UNQUANTIFIABLE DAMAGE TO MATTEL'S**

4  **HOLIDAY SALES WARRANTS AN EXPEDITED HEARING**

5          For Mattel, the holiday season is a critical time of year, extensively

6  influencing overall financial performance for the preceding year and expectations

7  for the following year.  Months of preparation and heavy investment in advertising

8  are required for a successful holiday season.  A threat to sales during the holiday

9  season is almost inevitably a threat of irreparable harm.

10          Greater than 50% of all shipments for the year occur during the holiday

11  season, generating over 50% of overall receivables for the year.  Declaration of

12  Kathleen Simpson Taylor ("Taylor Decl.") at ¶ 4.  The particular revenue segments

13  threatened by infringing Bratz products are concentrated in the final months of the

14  year.  Mattel typically earns over 70% of its fashion doll revenue in the second half

15  of the year, with a heavy concentration in the final months of the year.  Id. at ¶ 6.

16  Therefore, the risk to Mattel during the holiday season posed by infringing Bratz

17  products is substantial.

18          Mattel's heavy concentration of sales in the final months of the year is

19  supported by high and increasing levels of advertising expenditures in the second

20  half of the year.  Mattel allocates the bulk of its advertising budget to the second

21  half of the year to align advertising with seasonal shipping activities.  Id. at ¶ 5.

22  Thus, the majority of Mattel's annual advertising spending on BARBIE for 2008 is

23  about to occur (id.), and as the holiday season progresses, Mattel becomes more and

24  more heavily invested in the success of its holiday toy lines.  Consequently, damage

25  stemming from infringing Bratz products poses an ever increasing risk to Mattel in

26  November and through the end of December.

27          Although it may not be possible to estimate the full extent of the

28  damage infringing Bratz products will inflict, it is likely to be substantial.  The

EXHIBIT __1__ PAGE __9__

1   greatest demographic overlap between Mattel products and infringing Bratz

2   products falls within the 3-8 age group.  Id. at ¶ 7.  This age group is associated with

3   70% of Mattel's retail dollars from dolls, which is in the range of hundreds of

4   millions of dollars.  Id.

5            More difficult to predict and measure is the potential damage to

6   intangibles, such as Mattel's reputation with retailers.  For example, should

7   infringing Bratz products remain on shelves, reducing sales of Mattel products,

8   retailers may become less eager to purchase Mattel products for the 2009 holiday

9   season.  Unless Mattel's motion is heard on an expedited basis, Mattel will be

10  exposed to these irreparable harms for well over half of the holiday season.  On the

11  other hand, expediting the hearing on the motion will help minimize these harms.

12  **II.    MATTEL DID NOT CREATE THE SITUATION REQUIRING *EX***

13  ***PARTE* RELIEF**

14           Mattel's need for *ex parte* relief stems from the timing and importance

15  of the holiday season.  In light of that timing, the current briefing schedule will

16  cause harm to Mattel -- harm which was not caused through Mattel's fault.  Mission

17  Power Eng'g Co. v. Continental Cas. Co., 883 F. Supp. 488, 492 (C.D. Cal. 1995)

18  (*ex parte* application may be granted where delay from regular noticed-motion

19  procedures causes irreparable harm).  That harm should be avoided.

20           Moreover, Mattel seeks only to advance the date for hearing the Motion

21  to October 27, 2008, 28-days' notice, which more than satisfies the 21-day notice

22  requirement of Local Rule 6-1.  In compliance with Local Rule 7-9 and to account

23  for Columbus Day on October 13, 2008, Mattel requests that the Court set a due

24  date of October 10, 2008 for MGA's opposition brief and October 20, 2008 for

25  Mattel's reply brief.

26

27

28

EXHIBIT __1__ PAGE __9__

Case 2:04-cv-09049-DOC-RNB   Document 4513-4   Filed 12/23/08   Page 7 of 69   Page ID
#:131179
Case 2:04-cv-09049-SGL-RNB      Document 4310      Filed 09/29/2008      Page 6 of 6

1

## Conclusion

2          For the foregoing reasons, Mattel respectfully requests that the Court

3  order an expedited hearing of Mattel's Motion for a Permanent Injunction on

4  October 27, 2008.

5

6  DATED: September 29, 2008          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
7

8                                      By/s/ Michael T. Zeller
9                                        Michael T. Zeller
                                         Attorneys for Mattel, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2649858.1

EXHIBIT 1 PAGE 10

# EXHIBIT 2

Case 2:04-cv-09049-DOC-RNB   Document 4513-4   Filed 12/23/08   Page 9 of 69   Page ID
#:131181
Case 2:04-cv-09049-SGL-RNB   Document 4329   Filed 10/01/2008   Page 1 of 9

1  THOMAS J. NOLAN (Bar No. 66992)
   (tnolan@skadden.com)
2  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue
3  Los Angeles, CA  90071-3144
   Tel.: (213) 687-5000 / Fax: (213) 687-5600
4
   RAOUL D. KENNEDY (Bar No. 40892)
5  (rkennedy@skadden.com)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  4 Embarcadero Center, 38th Floor
   San Francisco, CA  94111-5974
7  Tel.: (415) 984-6400 / Fax: (415) 984-2698

8  Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
   MGAE de Mexico, S.R.L. de C.V., and Isaac Larian
9

10

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13

14  CARTER BRYANT, an individual,          )  CASE NO. CV 04-9049 SGL (RNBx)
                                           )
15              Plaintiff,                 )  Consolidated with Case No. 04-9059
                                           )  and Case No. 05-2727
16     v.                                  )
                                           )
17  MATTEL, INC., a Delaware               )  MGA'S OPPOSITION TO MATTEL,
    corporation,                           )  INC.'S *EX PARTE* APPLICATION
18                                         )  FOR AN EXPEDITED HEARING
                Defendant.                 )  ON MATTEL'S MOTION FOR A
19                                         )  PERMANENT INJUNCTION
                                           )
20  AND CONSOLIDATED ACTIONS.             )
                                           )  **Phase 1(a)**
21                                         )  Trial Date:        May 27, 2008
                                           )
22                                            **Phase 1(b)**
                                              Trial Date:        July 23, 2008
23
                                              **Phase 1(c)**
24                                            Hearing Date:      Nov. 10, 2008

25

26

27

28

EXHIBIT 2 PAGE 11

Case 2:04-cv-09049-DOC-RNB   Document 4513-4   Filed 12/23/08   Page 10 of 69   Page ID
#:131182
Case 2:04-cv-09049-SGL-RNB   Document 4329   Filed 10/01/2008   Page 2 of 9

1

## I.   PRELIMINARY STATEMENT

2      On September 2, 2008, the Court issued its "Order Setting Various Briefing
3   Schedules," which set the hearing on Mattel's Motion for Permanent Injunction for
4   November 10, 2008.  Mattel, which had opposed that schedule, was apparently
5   unhappy with the Court's Order but decided not to seek a modification to the
6   scheduling Order pursuant to Federal Rule of Civil Procedure 16(b)(4).  Instead, on
7   the day when its papers were due, and the clock began ticking for MGA's response,
8   Mattel filed an ex parte application seeking to alter the schedule by slashing the time
9   for MGA's opposition to 11 days, *enlarging the time for Mattel's reply by three days*,
10   and cutting by two weeks the Court's time to consider the papers on what could be
11   the most important motion in the case.  Mattel's request, outrageous on its face,
12   should be summarily rejected.

13      First, there is no need for emergency ex parte relief.  If Mattel really needed to
14   have the hearing and briefing schedule changed, it could have moved the Court for
15   such a change immediately after the Court issued its Phase 1(c) scheduling Order on
16   September 2.  Instead, Mattel sat on its hands, demonstrating by its inaction that it
17   does not believe the requested relief is required.  Accordingly, Mattel's ex parte
18   Application runs afoul of this Court's Standing Order, pursuant to which Mattel must
19   demonstrate: (1) why the requested relief could not have been sought in the usual
20   manner; and (2) that it was without fault in creating whatever it is that it perceives as
21   a crisis condition.  See Standing Order ¶ 6 (citing Mission Power Engineering Co. v.
22   Continental Casualty Co., 883 F. Supp. 488 (C.D. Cal. 1995) (setting forth the
23   showing necessary to justify ex parte relief)).

24      Second, Mattel has failed to establish that it will suffer any harm if the
25   schedule set by the Court is maintained.  Mattel claims that it does much of its
26   business during the holiday season and that permitting Bratz dolls and related
27   products to remain on store shelves will somehow reduce that business.  But Mattel

28

EXHIBIT 2 PAGE 12

1 | has failed to submit a single shred of evidence in support of its ex parte Application
2 | that any Mattel sale – during a holiday season or otherwise – has been or will be lost
3 | as a result of the presence of Bratz products in the marketplace.  The paucity of such
4 | evidence is not surprising since Mattel vociferously opposed any attempt by MGA to
5 | take discovery or submit evidence on this point.  For example, Mattel previously
6 | confirmed for the Court that "in Phase 1, it would not attempt to quantify the amount
7 | of sales of Mattel products it has lost because of Bratz as a form of damages,"[1] and
8 | argued that experts' "views regarding competition between MGA and Mattel and the
9 | winner of that competition at any given time is irrelevant."[2]

10 |     For these reasons, as more fully set forth below, Mattel's ex parte Application
11 | should be denied in its entirety.

12 | ## II.    ARGUMENT

13 |
14 | ### A.    The Application Is Untimely And Inappropriate Because Mattel Intentionally And Inexcusably Delayed Its Scheduling Request

15 |     Many courts in this district have recognized the misuse of ex parte
16 | applications.  This Court is one of them.  As this Court's "Standing Order" states:

17 |
18 | > **Ex Parte Applications:** Counsel are reminded that
> ex parte applications are solely for extraordinary relief.
19 | > See Mission Power Engineering Co. v. Continental
> Casualty Co., 883 F. Supp. 488 (C.D. Cal. 1995).[3]
20 |

21 |     In Mission Power, the court outlined the appropriate standards for filing and
22 | granting ex parte motions and discussed the problems they cause to the adversary
23 | system and to the administration of justice.  *The court then denied an ex parte*
24 | *motion to shorten time to hear a motion.*  Id. at 493.  The same result is in order here.

25 | ------
    [1]  Mattel's Motion in Limine No. 8 at 3-4; Docket No. 3160.
26 |     [2]  Mattel's Motion in Limine No. 9 at 11, 12; Docket No. 3161.
27 |     [3]  Standing Order ¶ 6.
28 |

EXHIBIT 2 PAGE 13

Case 2:04-cv-09049-DOC-RNB   Document 4513-4   Filed 12/23/08   Page 12 of 69   Page ID
#:131184
Case 2:04-cv-09049-SGL-RNB      Document 4329      Filed 10/01/2008      Page 4 of 9

1    Like the <u>Mission Power</u> plaintiff, Mattel failed to demonstrate why the
2  requested relief could not have been sought in the usual manner, *i.e.*, by way of a
3  regularly noticed motion seeking modification of the Phase 1(c) scheduling order
4  pursuant to Federal Rule of Civil Procedure 16(b)(4). <u>See id.</u> at 492.  On September
5  2, 2008, the Court issued its "Order Setting Various Briefing Schedules" for Phase
6  1(c).  Immediately after the Order was issued, Mattel could have commenced regular
7  motion procedures to seek a revision of the schedule.  Mattel instead did nothing for
8  27 days; it made no objection to the schedule and filed no motion to amend the Order.
9  Rather, Mattel exhausted the briefing time afforded to it under the September 2
10 Order and then on September 29, the day it filed its motion for injunctive relief,
11 simultaneously sought an <u>ex parte</u> alteration of the schedule regarding that motion –
12 one that shortens MGA's time to respond while lengthening Mattel's time to reply.

13    Mattel has provided no explanation for its inexcusable delay.  Accordingly,
14 Mattel's <u>ex parte</u> Application should be denied.  <u>See In re Real Estate Assocs. Ltd.</u>
15 <u>P'ship Litig.</u>, Case No. CV 98-7035 DDP (AJWx), 2002 U.S. Dist. LEXIS 18048, at
16 *5 (C.D. Cal. Aug. 28, 2002) (denying plaintiffs' <u>ex parte</u> application where plaintiffs
17 failed to explain why they waited over three weeks before attempting to strike the
18 contested declaration).

19    Likewise, Mattel has also failed to "establish that it was without fault in
20 creating whatever it is that it perceives as a crisis condition."  <u>Mission Power</u>, 883 F.
21 Supp. at 493.  The purported foundation for the <u>ex parte</u> relief requested is that sales
22 of Bratz-related products will reduce sales of Mattel products during the holiday
23 season if the hearing is held on November 10 instead of October 27.  But Christmas
24 was not invented this year.  Mattel knew *on September 2* that it should seek an
25 adjustment to the Phase 1(c) schedule.  But Mattel did nothing and has no one to
26 blame but itself for its inaction.  Indeed, at least four holiday seasons have passed
27 since Mattel discovered the alleged infringing activity, but Mattel never moved for
28

EXHIBIT 2 PAGE 14

Case 2:04-cv-09049-DOC-RNB   Document 4513-4   Filed 12/23/08   Page 13 of 69   Page ID
#:131185
Case 2:04-cv-09049-SGL-RNB   Document 4329   Filed 10/01/2008   Page 5 of 9

1 | injunctive relief. Accordingly, any last-minute urgency was caused by Mattel and
2 | thus the ex parte Application should be denied. See In re Intermagnetics Am., Inc.,
3 | 101 B.R. 191, 193 (Bankr. C.D. Cal. 1989) (ex parte "applications are not intended
4 | to save the day for parties who have failed to present requests when they should
5 | have"); Love v. The Mail on Sunday, Case No. CV 05-7798 ABC (PJWx), 2006 U.S.
6 | Dist. LEXIS 95454, at **3-4 (C.D. Cal. July 17, 2006) (denying ex parte relief
7 | where it was plaintiff's "own neglect that gave rise to the circumstance prompting his
8 | ex parte application").

9
10

**B.    The Application Is A Tactical Maneuver Advanced Without Regard
For The Court's Time**

11 | Mattel has advanced no reason for the delay because the ex parte Application
12 | is merely a tactical ploy. After using the full allotment of time to comfortably draft
13 | its Motion for Permanent Injunction, Mattel decided to try to "jam" MGA by moving
14 | to shorten MGA's allotted response time, by requiring MGA to take on the additional
15 | work of answering this improvident ex parte application and, in an astonishingly
16 | unfair move, actually seeking to *increase* Mattel's time to reply. This type of
17 | gamesmanship is the exact kind that the Mission Power court warned was often the
18 | improper aim of ex parte motions: "The goal often appears to surprise opposing
19 | counsel or at least to force him or her to drop all other work to respond on short
20 | notice." Id. at 490. Mattel should not be rewarded for such gamesmanship.

21 | This is particularly true where Mattel has shown little regard for the Court's
22 | time as well. While seeking to shorten by three days the time for MGA to respond to
23 | the Motion for Permanent Injunction (from October 13 to October 10) and the time
24 | between the reply brief and the hearing for the Court to study the papers (from
25 | November 10 to October 27), Mattel proposes no change to the deadline for its reply
26 | brief (from October 20 to October 20). In fact, Mattel would actually *gain* three

27
28

EXHIBIT 2 PAGE 15

Case 2:04-cv-09049-DOC-RNB   Document 4513-4   Filed 12/23/08   Page 14 of 69   Page ID
#:131186
Case 2:04-cv-09049-SGL-RNB   Document 4329   Filed 10/01/2008   Page 6 of 9

1  extra days to file its reply brief as a result of MGA's brief being due on October 10

2  instead of October 13.

3       Mattel's improper use of the ex parte procedure for its last-minute, tactical

4  scheduling request also puts an unnecessary burden on the Court. As the Mission

5  Power court explained:

6                    When an ex parte motion is filed, it is hand-
7            delivered immediately from the clerk's office to the judge.
             The judge drops everything except other urgent matters to
8            study the papers. It is assumed that the tomatoes are about
9            to spoil or the yacht is about to leave the jurisdiction and
             that all will be lost unless immediate action is taken.
10           Other litigants are relegated to a secondary priority. The
11           judge stops processing other motions. Even hearings or
             trials—where a courtroom of deserving users of the court
12           are waiting—are often interrupted or delayed.
13

14                   It is rare that a lawyer's credibility is more on the
             line, more vulnerable, than when he or she has created this
15           kind of interruption. Lawyers must understand that filing
16           an ex part motion, whether of the pure or hybrid type, is
             the forensic equivalent of standing in a crowded theater
17           and shouting, "Fire!" There had better be a fire.

18
     Id. at 491-92.
19
          There is clearly no fire here. Mattel knew all of the points it makes in support
20
     of its ex parte Application before the Phase 1(c) schedule was issued and could have
21
     raised them then. It did not do so, however. Moreover, it raised no objection to the
22
     scheduling Order after its issuance on September 2. Now, only after conveniently
23
     exhausting the entirety of the 27 days it was allotted to draft its motion papers,
24
     Mattel screams "fire," seeking to shorten the Court's and MGA's time to prepare
25
     while simultaneously increasing its own time to reply. Again, there is no fire and
26
     Mattel should not be rewarded for its gamesmanship.
27

28

EXHIBIT 2 PAGE 16

**C.   Mattel's Lack Of Diligence Prevents It From Establishing The Good Cause Necessary To Modify The Schedule**

In truth, what Mattel seeks is a tardy modification of the Phase 1(c) scheduling order issued on September 2. "A schedule may be modified only for good cause." Fed. R. Civ. P. 16(b)(4). "[T]he 'good cause' standard set forth in Rule 16 primarily focuses upon the diligence of the party requesting the amendment." Schwerdt v. Int'l Fid. Ins. Co., 28 Fed. Appx. 715, 719 (9th Cir. 2002). "'If that party was not diligent, the inquiry should end.'" Id. (quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992), and Schwerdt, 28 F. Appx. at 719). If the matters allegedly necessitating an amendment to the schedule were reasonably foreseeable, or the party did not seek relief once it became apparent that it an amendment was needed, then the party was not diligent. E.g., Jackson v. Laureate, Inc., 186 F.R.D. 605, 608 (E.D. Cal. 1999). In inexcusably waiting four weeks after the scheduling Order was issued and until after the briefing under the Order had commenced, Mattel was not diligent in seeking an amendment to the scheduling Order.[4]

**D.   Mattel Failed To Establish That Any Irreparable Harm Will Result If The Court Does Not Change Its Hearing Schedule And Force MGA To File Its Opposition Brief Earlier**

Finally, Mattel also failed to establish – and could not establish – that it will be irreparably harmed if its Motion for Permanent Injunction is heard on November 10 as opposed to October 27. Mission Power, 883 F. Supp. at 492 ("the evidence must show that moving party's cause will be irreparably prejudiced if heard according to the regular noticed motion procedures"). In support of its ex parte Application, Mattel asserts that during the holiday season it invests heavily in advertising, ships much of its product, earns much of its revenue for its Barbie fashion dolls, and that

---

[4]    Notably, this Court requires applications to extend scheduling deadlines to be filed in advance of the due date. See Standing Order ¶ 7. It reasonably follows from this standing requirement that applications to shorten an opposing party's deadline should be filed before the opposing party's clock starts ticking.

EXHIBIT 2 PAGE 17

1  sales of Bratz products will reduce the sales of Mattel products. These blanket,

2  unsubstantiated assertions do not constitute or connect to *any* cognizable harm to

3  Mattel, much less any irreparable harm, as either a matter of fact or law.

4  Moreover, there is not a single piece of evidence cited by Mattel that such

5  sales have in fact been lost or will be lost. Mattel's evidentiary failure is not

6  surprising: information which Mattel now attempts to create and buoy in support of a

7  requested schedule change is the same information that it has blocked from being

8  developed or introduced during Phase 1 in the first instance. As Mattel has

9  previously argued to the Court, "Mattel long ago confirmed to MGA that, in Phase 1,

10  it would not attempt to quantify the amount of sales of Mattel products it has lost

11  because of Bratz as a form of damages."[5]  Similarly, Mattel argued that "Barbie's

12  popularity in the face of competition is irrelevant in this case," that experts "should

13  be prevented from testifying about the comparative success of Bratz and Barbie,"

14  and that experts' "views regarding competition between MGA and Mattel and the

15  winner of that competition at any given time is irrelevant."[6]

16  Where Mattel has repeatedly fought the discovery, development and

17  introduction of information pertaining to the success or failure of Barbie and other

18  Mattel products because of alleged Bratz infringement, Mattel cannot now be

19  permitted to create, produce and use such previously withheld information as a

20  sword to execute an unfair tactical advantage.

21

22

23

24

25

26  [5]   Mattel's Motion in Limine No. 8 at 3-4; Docket No. 3160.

27  [6]   Mattel's Motion in Limine No. 9 at 11, 12; Docket No. 3161.

28

EXHIBIT 2 PAGE 18

Case 2:04-cv-09049-DOC-RNB    Document 4513-4    Filed 12/23/08    Page 17 of 69    Page ID
#:131189
Case 2:04-cv-09049-SGL-RNB      Document 4329      Filed 10/01/2008      Page 9 of 9

III.    **CONCLUSION**

For the reasons set forth above, Mattel's ex parte Application should be denied in its entirety.

DATED:  October 1, 2008

                        SKADDEN, ARPS, SLATE, MEAGHER &
                        FLOM, LLP


                        By: /s/ Thomas J. Nolan
                            Thomas J. Nolan
                            Attorneys for MGA Entertainment, Inc.,
                            MGA Entertainment (HK) Limited,
                            MGAE de Mexico, S.R.L. de C.V., and Isaac
                            Larian

---

EXHIBIT 2 PAGE 19

# EXHIBIT 3

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3    michaelzeller@quinnemanuel.com
   Jon D. Corey (Bar No. 185066)
4    joncorey@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9                UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                    EASTERN DIVISION

12  | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
    | --- | --- |
13  | Plaintiff, | Consolidated with: |
14  | vs. | CV 04-09059 |
    | | CV 05-2727 |
15  | MATTEL, INC., a Delaware corporation, | **MATTEL, INC.'S REPLY IN** |
16  | Defendant. | **SUPPORT OF MOTION FOR** |
    | | **PERMANENT INJUNCTION** |
17  | | [Declarations Of Stephen M. Hauss, |
18  | AND CONSOLIDATED ACTIONS | Judy A. Willis And Stephanie Cota |
    | | **Filed Concurrently**] |
19  | | Date:  November 10, 2008 |
20  | | Time:  1:00 p.m. |
    | | Place:  Courtroom 1 |
21  | | **Phase 1(a):** |
22  | | Trial Date:  May 27, 2008 |
23  | | **Phase 1(b):** |
    | | Trial Date:  July 23, 2008 |
24
25
26
27
28

07209/2675259.3

EXHIBIT 3 PAGE 20

Case 2:04-cv-09049-DOC-RNB   Document 4513-4   Filed 12/23/08   Page 20 of 69   Page ID
#:131192
Case 2:04-cv-09049-SGL-RNB   Document 4384   Filed 12/22/2008   Page 2 of 33

1

# TABLE OF CONTENTS

2

Page

3
4
PRELIMINARY STATEMENT ............................................................................... 1

5
ARGUMENT ............................................................................................................ 1

6  I.   THE COURT HAS AUTHORITY TO GRANT MATTEL THE
7       INJUNCTIVE RELIEF IT SEEKS .................................................................. 1

8       A.   Only Specific and Unambiguous Jury Findings Bind the Court.............. 1

9       B.   The Jury Did Not Find That Only First Generation Dolls Infringe ......... 3

10      C.   The Jury Verdict as to the Current Value of Isaac Larian's Stock is
11           Irrelevant to the Court's Authority to Grant Injunctive Relief................ 6

12 II.  THE COURT SHOULD ENJOIN DEFENDANTS' INFRINGEMENT ......... 9

13      A.   MGA Is Engaged In Ongoing Acts of Infringement................................. 9

14      B.   The Prospect That MGA Will Not Be Able To Fully Compensate
15           Mattel For Its Ongoing Infringement Shows Irreparable Harm ............ 11

16      C.   Mattel's Marketplace Losses Constitute Irreparable Harm .................... 12

17      D.   Even If It Could and Would Be Compensated, Mattel Will Still
18           Suffer Irreparable Harm Absent An Injunction ..................................... 14

19      E.   The Balance of Hardships and the Public Interest Favor an
20           Injunction............................................................................................... 17

21 III. MATTEL'S PROPOSED INJUNCTION AND RELATED REMEDIES
22      ARE APPROPRIATE AND SHOULD BE ORDERED ................................ 20

23      A.   An Injunction Is The Appropriate Remedy............................................ 20

24      B.   The Injunction is Not Overbroad .......................................................... 22

25      C.   The Court Should Order Recall, Destruction and Impoundment........... 23

26
27
28

## **TABLE OF AUTHORITIES**

<u>**Page**</u>

### <u>Cases</u>

3M Co. v. Pribyl,
  259 F.3d 587 (7th Cir. 2001) ........................................................... 8

A&M Records, Inc. v. Napster, Inc.,
  239 F.3d 1004 (9th Cir. 2001) ....................................................... 20

Abend v. MCA, Inc.,
  863 F.2d 1465 (9th Cir. 1988) ............................................. 18, 20, 21

Anza v. Ideal Steel Supply Corp.,
  547 U.S. 451 (2006)....................................................................... 13

Applied Innovations, Inc. v. Regents of the Univ. of Minn.,
  876 F.2d 626 (8th Cir. 1989) ......................................................... 24

Arista Records LLC v. Furia Sonidera, Inc.,
  2007 WL 922406 (E.D.N.Y. 2007) ................................................. 9

BR Assoc., Inc. v. LaFramboise,
  2007 WL 1840031 (E.D. Mich. June 26, 2007) ............................. 19

BUC Int'l Corp. v. Int'l Yacht Council Ltd.,
  2002 WL 31399604 (S.D. Fla. July 5, 2002)................................. 19

Bains LLC v. Arco Prods. Co., Div. of Atl. Richfield Co.,
  405 F.3d 764 (9th Cir. 2005) ................................................. 4, 8, 21

Beacon Theatres, Inc. v. Westover,
  359 U.S. 500 (1959)......................................................................... 1

Bertram Music Co. v. Yeager Holdings of Cal., Inc.,
  2008 WL 2055480 (E.D. Cal. 2008).......................................... 9, 15

Beverage Distrib., Inc. v. Olympia Brewing Co.,
  440 F.2d 21 (9th Cir. 1971) ............................................................ 6

Blake v. Hall,
  668 F.2d 52 (1st Cir. 1981).............................................................. 2

Bridgeport Music, Inc. v. Justin Combs Pub.,
  507 F.3d 470 (6th Cir. 2007) .......................................................... 5

Burton v. Armontrout,
  975 F.2d 543 (8th Cir. 1992) .......................................................... 2

Bus. Trends Analysts, Inc. v. Freedonia Group, Inc.,
  887 F.2d 399 (2d Cir. 1989) .......................................................... 13

Cadence Design Sys. v. Avant! Corp.,
  125 F.3d 824 (9th Cir. 1997) ........................................ 13, 14, 20, 21, 22

7209/2675259.3

EXHIBIT 3  PAGE 22

Case 2:04-cv-09049-DOC-RNB    Document 4513-4    Filed 12/23/08    Page 22 of 69    Page ID
#:131194
Case 2:04-cv-09049-SGL-RNB        Document 4384        Filed 1../22/2008        Page 4 of 33

*Chere Amie, Inc. v. Windstar Apparel, Corp.,*
    175 F. Supp. 2d 562 (S.D.N.Y. 2001) ...................................................................... 25

*CoxCom, Inc. v. Chaffee,*
    536 F.3d 101 (1st Cir. 2008) ................................................................................... 11

*CyberMedia, Inc. v. Symantec Corp.,*
    19 F. Supp. 2d 1070 (N.D. Cal. 1998) .................................................................... 18

*Data Gen. Corp. v. Grumman Sys. Support Corp.,*
    36 F.3d 1147 (1st Cir. 1994) ................................................................................... 12

*Designer Skin, LLC v. S&L Vitamins, Inc.,*
    2008 WL 4174882 (D. Ariz. Sept. 5, 2008) ........................................................... 15

*Disney Enters., Inc. v. Merchant,*
    2007 WL 1101110 (N.D.N.Y. 2007) ......................................................................... 9

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.,*
    109 F.3d 1394 (9th Cir. 1997) ................................................................................. 22

*Dun v. Lumbermen's Credit Ass'n,*
    209 U.S. 20 (1908) .......................................................................................... 18, 21

*eBay, Inc. v. MercExch., LLC,*
    547 U.S. 388 (2006) ................................................................................ 15, 21, 22

*E.F. Johnson Co. v. Uniden Corp. of Am.,*
    623 F. Supp. 1485 (D. Minn. 1985) ....................................................................... 19

*Eisai Co., Ltd. v. Teva Pharms. USA, Inc.,*
    2008 WL 1722098 (D.N.J. Mar. 28, 2008) ............................................................. 14

*Elantech Devices Corp. v. Synaptics, Inc.,*
    2008 WL 1734748 (N.D. Cal. Apr. 14, 2008) ........................................................ 14

*Elvis Presley Enters. v. Passport Video,*
    349 F.3d 622 (9th Cir. 2003) ................................................................................... 18

*Emory Univ. v. Nova Biogenetics, Inc.,*
    2008 WL 2945476 (N.D. Ga. July 25, 2008) .......................................................... 14

*Fisher-Price, Inc. v. Safety 1st, Inc.,*
    279 F. Supp. 2d 526 (D. Del. 2003) ........................................................................ 14

*Fisher-Price Toys v. My-Toy Co., Inc.,*
    385 F. Supp. 218 (S.D.N.Y. 1974) ......................................................................... 24

*Foreign Car Parts, Inc. of New England v. Auto World, Inc.,*
    366 F. Supp. 977 (M.D. Pa. 1973) .......................................................................... 24

*Granville v. Suckafree Records, Inc.,*
    2006 WL 2520909 (S.D. Tex. June 28, 2006) ........................................................ 25

*Gund, Inc. v. Golden Bear Co., Ltd.,*
    1992 WL 392602 (S.D.N.Y. Dec. 10, 1992) ........................................................... 25

MATTEL, INC.'S REPLY IN SUPPORT OF MOTION FOR A PERMANENT INJUNCTION

EXHIBIT 3 PAGE 23

1   Gund, Inc. v. Swank,
       673 F. Supp. 1233 (S.D.N.Y. 1987) ........................................................... 25
2
     Harper & Row Publishers v. Nation Enters.,
3       471 U.S. 539 (1985) ................................................................................... 10

4    Iconix, Inc. v. Tokuda,
       457 F. Supp. 2d 969 (N.D. Cal. 2006) ..................................................... 22
5
     In re Grain Land Coop,
6       978 F. Supp. 1267 (D. Minn. 1997) ............................................................. 7

7    In re Indep. Serv. Orgs. Antitrust Litig.,
       910 F. Supp. 1537 (D. Kan. 1995) ............................................................ 19
8
     Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,
9       596 F.2d 70 (2d Cir. 1979) ......................................................................... 11

10   Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. De C.V.,
       369 F. Supp. 2d 1075 (S.D. Iowa 2005) ................................................. 2, 3
11
     Kikumura v. Hurley,
12      242 F.3d 950 (10th Cir. 2001) ................................................................... 16

13   Lamb-Weston, Inc. v. McCain Foods, Ltd.,
       941 F.2d 970 (9th Cir. 1991) ..................................................................... 22
14
     Latman v. Burdette,
15      366 F.3d 774 (9th Cir. 2004) ....................................................................... 7

16   Lennon v. Premise Media Corp.,
       556 F. Supp. 2d 310 (S.D.N.Y. 2008) ...................................................... 14
17
     Los Angeles Police Protective League v. Gates,
18      995 F.2d 1469 (9th Cir. 1993) .................................................................. 1, 2

19   MAI Sys. Corp. v. Peak Computer, Inc.,
       991 F.2d 511 (9th Cir. 1993) ....................................................................... 9
20
     Melendez v. Illinois Bell Tel. Co.,
21      79 F.3d 661 (7th Cir. 1996) ......................................................................... 5

22   Merit Diamond Corp. v. Frederick Goldman, Inc.,
       376 F. Supp. 2d 517 (S.D.N.Y. 2005) ...................................................... 24
23
     Metro Golden Mayer Studios, Inc. v. Grokster, Ltd.,
24      518 F. Supp. 2d 1197 (C.D. Cal. 2007) ..................................... 14, 15, 16, 22

25   Microsoft Corp. v. Atek 3000 Computer Inc.,
       2008 WL 2884761 (E.D.N.Y. July 23, 2008) .......................................... 17
26
     Microsoft Corp. v. Nop,
27      549 F. Supp. 2d 1233 (E.D. Cal. 2008) .................................................... 15

28   Miles v. Lavender,
       10 F.2d 450 (9th Cir. 1926) ......................................................................... 8

1  Mortgage Mkt. Guide, LLC v. Freedman Report, LLC,
2      2008 WL 2991570 (D.N.J. July 28, 2008) ....................................................... 18, 19

3  Natural Resources Defense Council, Inc. v. Winter,
       508 F.3d 885 (9th Cir. 2007) ............................................................................ 22

4  Newton v. Diamond,
5      204 F. Supp. 2d 1244 (C.D. Cal. 2002) ........................................................... 18

6  Nutrition 21 v. United States,
       930 F.2d 867 (Fed. Cir. 1991) .......................................................................... 14

7  Oakland Tribune, Inc. v. Chronicle Publ'g Co.,
8      762 F.2d 1374 (9th Cir. 1985) .......................................................................... 14

9  Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.,
       585 F.2d 821 (7th Cir. 1978) ......................................................................... 2, 5

10  Paice, LLC v. Toyota Motor Corp.,
11     504 F.3d 1293 (Fed. Cir. 2007) ........................................................................ 21

12  Pass & Seymour, Inc. v. Hubbell, Inc.,
       532 F. Supp. 2d 418 (N.D.N.Y. 2007)............................................................... 19

13  Perfect Fit Indus. v. Acme Quilting Co., Inc.,
14     646 F.2d 800 (2d Cir. 1981) ............................................................................. 24

15  Perkins Marine Lamp  & Hardware Co. v. Goodwin Stanley Co.,
       86 F. Supp. 630 (E.D.N.Y. 1949) ..................................................................... 23

16  Polar Bear Prods., Inc. v. Timex Corp.,
17     384 F.3d 700 (9th Cir. 2004) ...................................................................... 12, 13

18  Price v. City of Stockton,
       390 F.3d 1105 (9th Cir. 2004) .......................................................................... 22

19  Rebis v. Universal Cad Consultants, Inc.,
20     1999 WL 1000435 (N.D. Cal. Oct. 27, 1999) ................................................... 23

21  Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.,
       944 F.2d 597 (9th Cir. 1991) ............................................................................ 14

22  Richard Feiner & Co. v. Turner Entm't Co.,
23     926 F. Supp. 40 (S.D.N.Y. 1996) ..................................................................... 21

24  Riss & Co. v. Ass'n of Am. R.R.,
       170 F. Supp. 354 (D.D.C. 1959)........................................................................ 21

25  Roberts v. Coll. of the Desert,
26     870 F.2d 1411 (9th Cir. 1988) ............................................................................ 2

27  Rogers v. Koons,
       960 F.2d 301 (2d Cir. 1992) ............................................................................. 23

28  Sears, Roebuck & Co. v. Metro. Engravers,
       245 F.2d 67 (9th Cir. 1957) ................................................................................ 8

EXHIBIT 3 PAGE 25

1    Sharpe v. F.D.I.C.,
         126 F.3d 1147 (9th Cir. 1997) ............................................................. 7
2
     Silverstein v. Penguin Putnam, Inc.,
3        368 F.3d 77 (2d Cir. 2004) ................................................................ 21

4    Singh v. Gonzales,
         491 F.3d 1019 (9th Cir. 2007) ........................................................... 12
5
     Smith & Nephew, Inc., v. Synthes,
6        466 F. Supp. 2d 978 (W.D. Tenn. 2006) ............................................ 14

7    Societe Civile Succession Richard Guino v. Int'l Found. for Anticancer
         Drug Discovery,
8        460 F. Supp. 2d 1105 (D. Ariz. 2006) ............................................... 24

9    Span-Deck, Inc. v. Fab-Con, Inc.,
         677 F.2d 1237 (9th Cir. 1982) ............................................................. 5
10
     Starter Corp. v. Converse, Inc.,
11       170 F.3d 286 (2d Cir. 1999) .............................................................. 22

12   Sunset Lamp Corp. v. Alsy Corp.,
         749 F. Supp. 520 (S.D.N.Y. 1990) ..................................................... 12
13
     Sweetheart Cup Co., Inc. v. Buchberg Inv. Holdings, Inc.,
14       2005 WL 1515405 (S.D.N.Y. June 23, 2005) .................................... 22

15   TVT Records v. Island Def Jam Music Group,
         279 F. Supp. 2d 366 (S.D.N.Y. 2003) ................................................ 23
16
     Taylor v. Burlington Northern R. Co.,
17       787 F.2d 1309 (9th Cir. 1986) ............................................................. 6

18   Tri-State Gen. and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.,
         874 F.2d 1346 (10th Cir. 1989) ......................................................... 16
19
     Triad Sys. Corp. v. Se. Express Co.,
20       64 F.3d 1330 (9th Cir. 1995) ............................................................. 17

21   UMG Recordings, Inc. v. Blake,
         2007 WL 1853956 (E.D.N.C. 2007) ............................................. 9, 14
22
     UMG Recordings, Inc. v. Higareda,
23       2008 WL 3836074 (E.D. Cal. Aug. 14, 2008) ................................... 15

24   U.S. v. An Article of Drug,
         661 F.2d 742 (9th Cir. 1981) ............................................................... 2
25
     Universal City Studios, Inc. v. Sony Corp.,
26       659 F.2d 963 (9th Cir. 1981), rev'd on other grounds, 464 U.S. 417 (1984) ........ 18

27   Vaughan v. Ricketts,
         950 F.2d 1464 (9th Cir. 1991) ............................................................. 5
28

7209/2675259.3

EXHIBIT 3 PAGE 26

1   Velo-Bind, Inc. v. Minnesota Min. & Mfg. Co.,
2       647 F.2d 965 (9th Cir. 1981) ............................................................................... 12

3   Waldman Publ'g Corp. v. Landoll, Inc.,
        43 F.3d 775 (2d Cir. 1994) .................................................................................. 22

4   Warner Bros. Entm't. Inc. v. Carsagno,
5       2007 WL 1655666 (E.D.N.Y. June 4, 2007) ............................................ 14, 15, 17

6   Warner Bros. Entm't. Inc. v. RDR Books,
        2008 WL 4126736 (same) ............................................................................ 14, 17

7   Williams Elec., Inc. v. Artic Int'l., Inc.,
8       685 F.2d 870 (3d Cir. 1982) ................................................................................ 18

9   Williams v. First Gov't Mortgage and Inv. Corp.,
        225 F.3d 738 (D.C. Cir. 2000) ............................................................................... 5

10  Windsurfing Int'l, Inc. v. AMF, Inc.,
11      782 F.2d 995 (Fed. Cir. 1986) ............................................................................. 18

12  Woods v. Universal City Studios,
        920 F. Supp. 62 (S.D.N.Y. 1996) ........................................................................ 20

13  Yurman Design Inc. v. Chaindom Enters., Inc.,
14      1999 WL 1075942 (S.D.N.Y. Nov. 29, 1999) ...................................................... 25

15  z4 Techs. v. Microsoft Corp.,
        434 F. Supp. 2d 437 (E.D. Tex. 2006) .................................................................. 18

16
                                          **Statutes**
17
18  17 U.S.C. § 502(a) ................................................................................................. 6

19  17 U.S.C. § 503(b) ............................................................................................... 23

20  17 U.S.C. § 504(b) ........................................................................................... 6, 12

21  17 U.S.C. § 504(c)(1) ............................................................................................. 7

22
                                     **Other Authorities**
23  H.R. Rep. No. 94-1476, at 160 (1976) ............................................................... 23

24

25

26

27

28

EXHIBIT 3 PAGE 21

1                                 **Preliminary Statement**

2              What is most striking about defendants' opposition is what is missing. Defendants

3    all but ignore the detailed facts that are the basis of Mattel's motion: they do not contest

4    that *all* Bratz fashion dolls are based on the same sculpt; they do not challenge Mattel's

5    proof that the sculpt is based on Bryant designs owned by Mattel, incorporates the

6    specific elements this Court held were protectable and infringes. They do not deny that

7    absent an injunction they will continue to produce Bratz dolls based on the infringing

8    sculpt. And they do not address Mattel's ownership of the four original Bratz characters,

9    nor challenge Mattel's showing that they continue to copy them. Instead, defendants

10   speculate that the jury's award of infringement damages implied a finding that only the

11   first generation dolls infringe, and insist the Court is bound by their speculative, and

12   unsupported, interpretation of the verdict. MGA is engaged in massive, ongoing

13   infringement. It should be enjoined.

14                                       **Argument**

15   **I.    THE COURT HAS AUTHORITY TO GRANT MATTEL THE**

16          **INJUNCTIVE RELIEF IT SEEKS**

17             Defendants argue the Court lacks authority to award injunctive relief because (1)

18   it is bound by the jury's damage award which purportedly limits their copyright

19   infringement to the first generation Bratz dolls; and (2) Mattel's election to seek future

20   damages at trial against Larian precludes it from now seeking an injunction against the

21   defendants. These assertions are wrong on both the facts and law.

22          **A.    Only Specific and Unambiguous Jury Findings Bind the Court**

23             Where a plaintiff seeks both legal and equitable relief, the Seventh Amendment

24   requires the legal claims to be tried first to a jury. See Beacon Theatres, Inc. v.

25   Westover, 359 U.S. 500, 508-09 (1959). A judge then deciding equitable claims "based

26   on the same facts" is bound by traditional principles of issue preclusion to follow the

27   jury's factual determinations. Los Angeles Police Protective League v. Gates, 995 F.2d

28   1469, 1473 (9th Cir. 1993). "Any actual issues *necessarily and actually decided by the*

Case 2:04-cv-09049-DOC-RNB   Document 4513-4   Filed 12/23/08   Page 28 of 69   Page ID
#:131200
Case 2:04-cv-09049-SUL-RNB   Document 4384   Filed 1u.22/2008   Page 10 of 33

1  *jury* are foreclosed under settled principles of collateral estoppel from subsequent
2  reconsideration by the district court." Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc., 585
3  F.2d 821, 844 (7th Cir. 1978) (emphasis added).

4       A general verdict that lacks specific factual findings as to the scope of liability
5  does not bind a court in determining the proper scope of injunctive relief. See Roberts v.
6  Coll. of the Desert, 870 F.2d 1411, 1418 (9th Cir. 1988) (district court not bound by
7  general verdict where "it is impossible to say upon which theory . . . the jury imposed
8  liability."). Where "it is impossible to tell from [a] general verdict" the specific factual
9  findings the jury made, the court may award injunctive relief "based upon [its own] view
10 of the facts established by the evidence." U.S. v. An Article of Drug, 661 F.2d 742, 746-
11 47 (9th Cir. 1981); see Burton v. Armontrout, 975 F.2d 543, 545 (8th Cir. 1992)
12 (affirming injunction despite jury verdict of *no* liability: where "general verdict
13 directive did not allow the jury to make specific factual findings upon which the district
14 court could rely when crafting or denying the injunction," it was "proper for the court to
15 supply its own factual findings to supplement the jury's verdict"); Blake v. Hall, 668
16 F.2d 52, 54 (1st Cir. 1981) (trial judge not bound in equity despite jury verdict of *no*
17 liability where issues decided by jury in general verdict could not be determined).

18      The size of a damages award is relevant to the availability of equitable relief only
19 where the amount of the verdict "*makes it a mathematical certainty*" that the jury found
20 the specific facts that control the scope of such relief. Ohio-Sealy, 585 F.2d at 844
21 (emphasis added); see Los Angeles Police, 995 F.2d at 1474 (the jury "could *not* have
22 awarded the level of damages it awarded without finding that [plaintiff] would not have
23 been discharged except for his refusal to be illegally searched.") (italics in original).
24 Liability, not damages, controls the appropriate scope of injunctive relief. See Roberts,
25 870 F.2d at 1418 (examining which theory of *liability* the jury accepted); An Article of
26 Drug, 661 F.2d at 746-47 (same). Injunctions frequently issue even where the damages
27 awarded are less than what plaintiffs sought. See, e.g., Kemin Foods, L.C. v. Pigmentos
28 Vegetales Del Centro S.A. De C.V., 369 F. Supp. 2d 1075, 1083 (S.D. Iowa 2005)

2

Case 2:04-cv-09049-DOC-RNB   Document 4513-4   Filed 12/23/08   Page 29 of 69   Page ID
#:131201
Case 2:04-cv-09049-SGL-RNB     Document 4384     Filed 10/22/2008     Page 11 of 33

1 (rejecting claim that "the amount of the jury awarded somehow indicates the jury did not
2 find the modified process infringing").

3        **B.**    **The Jury Did Not Find That Only First Generation Dolls Infringe**

4       At the 1(b) charging conference, the Court recognized it would ultimately be
5 required to determine the scope of infringement itself for purposes of equitable relief
6 because of limitations on the evidence: "[A]t the end of the day...I'm going to have to
7 re-evaluate all the products myself before I can make the injunction findings or grant the
8 injunctive relief. *I am not going to be able to rely upon a jury verdict or a jury*
9 *questioning* which simply answers the question with respect to some but not all [of the
10 products]."[1]  MGA argued against the verdict form ultimately adopted by the Court
11 precisely because it would not produce specific findings as to the scope of infringement:
12 "They just want to say was there infringement? *And we'll never know, was it the first*
13 *generation? Was it all of the fashion dolls? ... Was the net cast even wider?*"[2]  As MGA
14 points out, the Court recognized this as well. (Opp. at 19) (quoting the Court: "we will
15 not know specifically what the jury found to be direct infringement and what they found
16 to be derivative of indirect damage").  In part because the more detailed form requested
17 by MGA would not have alleviated the burden on the Court to determine for itself the
18 scope of infringement,[3] the Court proceeded with a general verdict form.[4]

19       MGA argues the size of the damages award demonstrates the jury found that only
20 the first generation Bratz dolls infringe. But MGA cannot explain the jury award on this

21
22     [1] Trial Tr. at 8015:20-8016:1 (emphasis added).
    [2] Trial Tr. at 8025:2-8 (emphasis added).
23     [3] Trial Tr. at 8014:14-20.
    [4] MGA claims injunctive relief should be denied because Mattel, in advocating a general
24 verdict form, "should not be able to profit by its own failed litigation tactic." Opp. at 19. The
assertion is baseless. MGA proposed a detailed verdict form but limited the questions to
25 direct infringement and excluded questions regarding indirect infringement. Mattel opposed
this selective framing of the questions, which ignored a large component of its case. The
26 Court expressed concerns with MGA's selective framework as well. Trial Tr. at 8023:14
("Why are we drawing this line in the sand about direct infringement?"); Trial Tr. at 8023:9-
27 13 ("should we not also ask ...do you find this is derivative or not derivative, whether this is
indirect or not direct?"). Mattel's opposition to this inappropriate form has no bearing on its
28 entitlement to relief. Kemin Foods, 369 F. Supp. 2d at 1084 (rejecting argument that plaintiff
cannot "benefit from opposing ... specific questions" in favor of general verdict form).

Case 2:04-cv-09049-DOC-RNB   Document 4513-4   Filed 12/23/08   Page 30 of 69   Page ID
#:131202
Case 2:04-cv-09049-SGL-RNB     Document 4384     Filed 10/22/2008     Page 12 of 33

1  basis. Its own damages expert, Paul Meyer, testified that MGA's total profits for sales of
2  first generation dolls were $4 million, and that the share of those profits attributable to
3  Bryant's designs was zero.[5] MGA cites the August 22, 2008 jury note addressed to the
4  "dilemma" of "appropriation" (likely meaning "apportionment") of "1st generation $4
5  million profit" to support its interpretation of the jury verdict, but the note does just the
6  opposite. Had the jury actually found that only the first generation dolls infringed, it
7  would necessarily have awarded damages *under* $4 million. In fact, it awarded two-and-
8  a-half times that in copyright damages.[6]  MGA has no explanation for this, suggesting
9  only the jury might have thought "that MGA's proffer of $4 million in profits on nearly
10  $80 million revenue was a bit low."[7]  One can also speculate the jury may have based its
11  award on MGA's assertion that it was in dire financial straits as a result of the verdict in
12  Phase 1(a).[8]  Or they may have taken into account the evidence introduced by MGA and
13  later ruled inadmissible by the Court as to the likelihood of injunctive relief, and the
14  impact such relief would have on MGA's ability to satisfy an award.[9]  For the Court to
15  be bound, MGA must prove the *only* possible explanation of the verdict--to a
16  mathematical certainty--is that the jury decided MGA's infringement was limited to the
17  first four Bratz dolls.  That MGA is reduced to speculation about what the jury
18  "apparently agreed" to in its verdict (Opp. at 25) proves it cannot meet this standard.[10]
19
20

21   [5]  Trial Tr. at 7778:2-7779:6; 7784:1-9.
     [6]  MGA also improperly ignores the entirety of the jury's damages award--$100 million.
22  See Bains LLC v. Arco Prods. Co., Div. of Atl. Richfield Co., 405 F.3d 764, 771-72 (9th Cir.
    2005) (cited by MGA) (award of $1 for 42 U.S.C. § 1981 violation did not show no economic
23  harm because jury awarded $50,000 for breach of contract and jury may have thought
    "putting the same $50,000 under both the § 1981 and the breach of contract causes of action
24  would be double counting").
     [7]  Opp. at 21 n.30.
25   [8]  Trial Tr. at 6392:9-6393:7; 6395:1-6396:24; 6398:16-6399:16; 7760:1-17.
     [9]  Trial Tr. at 6385:17-6386:14.
26   [10]  See also Meyer Decl., dated October 13, 2008, at ¶¶ 12, 13 (speculating about
    alternative findings jury "may have" made). MGA's contention that the evidence introduced
27  at trial was "consistent with" a finding that only the first dolls infringed (Opp. at 22-25) is
    irrelevant under the applicable rules. The question is not whether evidence "consistent with"
28  a putative jury finding was introduced, but whether the putative finding necessarily was made.

4

MATTEL, INC.'S REPLY IN SUPPORT OF MOTION FOR A PERMANENT INJUNCTION

EXHIBIT 3  PAGE 31

1    The case law is uniform that in these circumstances there is "no reason to pluck
2   from the verdict speculative findings not necessarily reached by the jury." Melendez v.
3   Illinois Bell Tel. Co., 79 F.3d 661, 670 (7th Cir. 1996); accord Bridgeport Music, Inc. v.
4   Justin Combs Pub., 507 F.3d 470, 484 (6th Cir. 2007) ("Because the jury simply
5   returned a numerical amount for damages, and did not specify how it calculated
6   damages, there is no way of knowing the jury's reasons for rejecting defendants'
7   arguments."). Where "nobody can say what the jury found the facts to be," the "jury's
8   verdict can . . . have no binding effect on the district court's subsequent factfinding."
9   Williams v. First Gov't Mortgage and Inv. Corp., 225 F.3d 738, 748 (D.C. Cir. 2000)
10   (citations omitted). MGA does not cite a single contrary case.[11]

11    Ignoring these precedents MGA urges the Court to "harmonize the jury's
12   findings," Opp. at 20, by equating the damages award with a finding of limited
13   infringement. But the cases cited by MGA deal with a court's duty to harmonize
14   verdicts that might be considered inconsistent, not with the binding effect of jury
15   factfinding. "[W]here inconsistent verdicts are alleged, the test is not whether there was
16   substantial evidence for the jury's conclusion, but whether it is possible to reconcile the
17   verdicts." Vaughan v. Ricketts, 950 F.2d 1464, 1470 (9th Cir. 1991). The duty to
18   harmonize requires a court to do precisely what the doctrine of issue preclusion
19   prohibits: to ask what the jury "could have found," id., rather than what it "necessarily
20   and actually decided." Ohio-Sealy, 585 F.2d at 844. These authorities have no
21   application here. MGA offers no basis to conclude that the jury actually and necessarily
22   made specific findings that preclude the injunctive relief Mattel seeks.[12]

23

24   _____

[11] MGA makes much of the fact that counsel for Mattel at one point suggested the jury's
damage award might enable the Court to discern the scope of infringement. Opp. at 28-29. It
25   was certainly possible that the jury would agree to an award of damages that so clearly and
unequivocally matched one or more of the expert's calculations that it would have established
26   the scope of infringement to "a mathematical certainty." But as MGA's labored efforts to
explain the damages actually awarded make clear, that did not happen. The Court, as it
predicted, must make the necessary factual findings as to the scope of infringement.
27   [12] To the extent the jury's verdict permits any presumption, it is a presumption that
*everything* Mattel put at issue infringes given the jury's general verdict of infringement.
28   Span-Deck, Inc. v. Fab-Con, Inc., 677 F.2d 1237, 1241 n.5 (9th Cir. 1982) ("A general
(footnote continued)

Case 2:04-cv-09049-DOC-RNB   Document 4513-4   Filed 12/23/08   Page 32 of 69   Page ID
#:131204
Case 2:04-cv-09049-SGL-RNB    Document 4384    Filed 10/22/2008    Page 14 of 33

1    **C.    The Jury Verdict as to the Current Value of Isaac Larian's Stock is**
2         **Irrelevant to the Court's Authority to Grant Injunctive Relief**

3         Defendants argue that because Mattel used future Bratz profits as one of three
4   ways to determine Larian's *current* benefit from his infringement of Mattel's copyrights,
5   17 U.S.C. § 504(b), Mattel elected never to seek to enjoin MGA, MGA Hong Kong and
6   Larian from selling infringing products. The argument is wrong on the facts and law.

7         First, even according to defendants, Mattel never sought future damages from
8   MGA or MGA Hong Kong. Thus, Mattel may seek to enjoin those defendants.

9         Second, Mattel never sought future damages from Larian, nor could it. The
10  Copyright Act permits a plaintiff to obtain both damages, which redress past
11  infringement, and a permanent injunction. 17 U.S.C. §§ 502(a), 504; see 6 Patry on
12  Copyright § 22:78 ("May the court award a permanent injunction if monetary damages
13  have already been awarded by the trier of fact? The answer is clearly yes: monetary
14  damages are awarded for past harm, while injunctive relief is intended to prevent future
15  harm."). "Future damages are not awardable," id. § 22:101, nor are "future[] profits."
16  Id. § 22:116 (citing Sheldon v. MGM Pictures Corp., 309 U.S. 390, 400 (1940) ("The
17  infringer is liable for actual, not for possible, gains.")). Mattel never sought an award of
18  damages for future sales; the only issue was how much of the *current* value of Larian's
19  interest in MGA was attributable to infringement.[13]   "The doctrine of election of
20  remedies is no longer strictly enforced in the federal courts," Taylor v. Burlington
21  Northern R. Co., 787 F.2d 1309, 1317 (9th Cir. 1986), and does not apply here.

22

23

_____

24  verdict, without more, will of course give rise to the presumption that material fact issues
    have been resolved in favor of the prevailing party."); Beverage Distrib., Inc. v. Olympia
25  Brewing Co., 440 F.2d 21, 25 n.4 (9th Cir. 1971) (by issuing a general verdict, jury resolved
    all material issues in plaintiff's favor).
26      [13]    Mattel's expert used three generally accepted measurements (income approach,
    comparable companies approach, comparable transactions approach) to place a *current* value
27  on Larian's MGA stock. See Trial Ex. 13932, Hauss Decl. Ex. 5; Trial Tr. at 6299:25-
    6304:14. MGA conceded that none of these approaches actually addresses future damages.
28  Trial Tr. at 6434:19-6435:7.

6

Case 2:04-cv-09049-DOC-RNB   Document 4513-4   Filed 12/23/08   Page 33 of 69   Page ID
#:131205
Case 2:04-cv-09049-SGL-RNB     Document 4384     Filed 10/22/2008     Page 15 of 33

1        Third, the Copyright Act permits the election of remedies "at any time before final

2  judgment is rendered." 17 U.S.C. § 504(c)(1) (election between statutory and actual

3  damages). In response to MGA's Motion in Limine No. 7 the Court advised Mattel that

4  it would have to elect its remedies if the Court enjoined MGA at a later date. But any

5  earlier election would be "entirely premature":

6        Certainly, at the end of the day, if the Court, for example, imposes an
         injunction, assuming that a copyright infringement were to be found or if
7        the damages being returned clearly do play out to be double counting,
         Mattel will have to exercise a choice of remedies, and some of that
8        damage, or entire portions of that damage, may have to be set aside. But at
         this point, I think it would be entirely premature to force Mattel to choose
9        between, for example, profits obtained by MGA versus profits obtained by
         Isaac Larian.[14]

10

11  To permit an election later, the Court required the parties to "spell out on the verdict

    form these various permutations and these various categories of damages so that if
12
    damages are returned against MGA or Isaac Larian, we would be in a position post-trial
13
    to make the appropriate rulings."[15]  The parties acknowledged that any potential
14
    duplication between damages and injunctive relief would be resolved with the verdict
15
    form.[16] And it was. The Court ruled, properly,[17] that Mattel could go forward with its
16
    damages claims and also seek an injunction; MGA's "gotcha" suggestion that Mattel is
17
    nevertheless barred from seeking such relief fails. See Latman v. Burdette, 366 F.3d
18
    774, 781-82 (9th Cir. 2004) (cited by MGA) (no election of remedies where party has
19

20
       [14]  Trial Tr. at 5230:2-5231:25 (denying MGA Motion in Limine No. 7).
21     [15]  Id.
       [16]  Trial Tr. at 6430:10-12 (Mr. Quinn: "We're not going to get--I think this is something
22  that's going to be solved by the verdict form."); Trial Tr. at 6431:10-11 (Mr. Kennedy: "I
    suggest this is something that perhaps can be taken care of by the verdict."); Trial Tr. at
23  8012:18-25 (Mattel acknowledging, with the Court's agreement, that the purpose of the two
    questions about Mr. Larian's copyright liability was "if the Court issues an injunction, that
24  present value [of Mr. Larian's stock attributable to Bratz] could be changed."); see generally
    Trial Tr. at 8011:19-8012:25.
25     [17]  Courts require parties to elect a remedy prior to trial only if a defendant can show
    "substantial prejudice." See, e.g., Sharpe v. F.D.I.C., 126 F.3d 1147, 1153 (9th Cir. 1997)
26  ("only if the plaintiffs' actions cause substantial prejudice to the defendant are the plaintiffs
    required to make a binding election of remedies prior to judgment"); In re Grain Land Coop,
27  978 F. Supp. 1267, 1278 (D. Minn. 1997) (refusing to force plaintiff to choose between
    alternative remedies prior to judgment because defendants "have not been substantially
28  prejudiced and there is little chance of double recovery").

Case 2:04-cv-09049-DOC-RNB   Document 4513-4   Filed 12/23/08   Page 34 of 69   Page ID
#:131206
Case 2:04-cv-09049-SGL-RNB   Document 4384   Filed 12/22/2008   Page 16 of 33

1  not "affirmatively chosen[] or elected" one remedy over another); Miles v. Lavender, 10
2  F.2d 450, 454 (9th Cir. 1926) (party must take "decisive act" that reflects "full
3  knowledge" that remedies are inconsistent for there to be an election of remedies).[18]

4        Finally, the jury did not find, by awarding zero damages for Larian's stock value,
5  that there would be no future infringement. The verdict form said nothing about
6  damages for sales of Bratz works in the future; the relevant question merely asked for
7  the "Value of Mr. Larian's ownership percentage of MGA attributable to Bratz-related
8  works."[19] The jury instructions did not address future damages either.[20] MGA contends
9  the jury understood the nuances of Wagner's valuation of Larian's stock using a
10 comparable companies analysis, a comparable transactions analysis, and an income
11 analysis; disregarded the first two as a basis for the valuation analysis; relied solely on
12 the discounted present value analysis; and then rejected that analysis since it found no
13 future infringement.[21] But MGA ignores the opinion Meyer rendered (over Mattel's
14 objection) relating to the value of Larian's stock: that as a result of the jury's verdict in
15 Phase 1A and other uncertainties "you could not place a value on Mr. Larian's interest at
16 this point in time. *You just could not do that.*"[22] It is far more plausible that the jury
17 concluded, as MGA itself urged, that it could not value Larian's stock at that moment
18 than that it performed the sophisticated sorting of Wagner's methods that MGA now
19 plucks from the verdict.[23] If both readings are possible, the Court is bound by neither.

20

21  [18] MGA's cases are off point. See, e.g., Sears, Roebuck & Co. v. Metro. Engravers, 245
    F.2d 67, 69-70 (9th Cir. 1957) (relying on "one recovery" doctrine where plaintiffs levied a
22  writ of attachment in a prior state case based on the same facts); 3M Co. v. Pribyl, 259 F.3d
    587, 608 (7th Cir. 2001) (agreeing with plaintiffs' assertion that "payment of monetary
23  damages should have *no* impact on the court's decision to grant a permanent injunction
    against use," and upholding partial permanent injunction).
       [19] Phase 1(b) Verdict Form As Given at ¶ 11(b), Hutnyan Decl. Ex. 3.
24     [20] Jury Instruct. Nos. 41-42 (silent as to profits from future sales), Hutnyan Decl. Ex. 4.
       [21] See TX 13932, Hauss Decl. Ex. 5; Trial Tr. at 6300:10-17.
25     [22] Trial Tr. at 7757:25-7760:12 (emphasis added).
       [23] Cf. Bains, 405 F.3d at 771 (award of $1 for § 1981 violation did not show lack of
26  economic harm because jury may have found that "even though lost profits were proved, the
    'amount' of lost profits could not be established 'with reasonable certainty'"). Contrary to
27  MGA's claim (Opp. at 5:3-4), the jury's denial of damages for the current value of Larian's
    stock actually shows the election of remedies doctrine does not apply; the thrust of the
28  doctrine is to prevent double recovery, and there is no double recovery threat in this case.

8

Case 2:04-cv-09049-DOC-RNB   Document 4513-4   Filed 12/23/08   Page 35 of 69   Page ID
#:131207
Case 2:04-cv-09049-SGL-RNB   Document 4384   Filed 10/22/2008   Page 17 of 33

1   **II.     THE COURT SHOULD ENJOIN DEFENDANTS' INFRINGEMENT**

2          It has long been the law that a finding of past infringement coupled with a threat

3   of future infringement warrants an injunction. <u>E.g.</u>, <u>MAI Sys. Corp. v. Peak Computer,</u>

4   <u>Inc.</u>, 991 F.2d 511, 520 (9th Cir. 1993) ("As a general rule, a permanent injunction will

5   be granted when liability has been established and there is a threat of continuing

6   violations."). Post-<u>eBay</u>, as before, the issuance of an injunction upon a showing of

7   copyright infringement is the norm, not "extraordinary" as MGA insists (Opp. at 13).[24]

8          **A.     MGA Is Engaged In Ongoing Acts of Infringement**

9          MGA is engaged in widespread, ongoing infringement. Claiming only that the

10  jury found otherwise, MGA does not seriously attempt to answer the proof in Mattel's

11  motion.   It does not seek to explain away its admissions showing its ongoing

12  infringement.[25]  It does not dispute the evidence of its infringement of Mattel's

13  characters, except to speculate the jury found otherwise.[26] It does not deny that the

14  original four dolls and all later dolls are based on the same sculpt.[27]

15         MGA suggests the jury "could have found" that only "the first generation clothing

16  and packaging" -- and not the sculpt -- are infringing. (Opp. at 23.) MGA points out

17  that Leahy claimed not to use Bryant's "drawings" to create "her sculpt,"[28] but does not

18  acknowledge the jury's contrary finding that *Mattel owns* that sculpt (or Leahy's

19  admissions that Bryant gave her his drawings so she could do the sculpt).[29]  MGA

20  suggests it jointly owns the sculpt, but does not acknowledge the Court's rejection of that

21  ─────────────────────

22  [24] See, e.g., Bertram Music Co. v. Yeager Holdings of Cal., Inc., 2008 WL 2055480, at *2
     (E.D. Cal. 2008) ("Generally, a showing of copyright infringement liability and the threat of

23  future violations is sufficient to warrant a permanent injunction."); Arista Records LLC v.
     Furia Sonidera, Inc., 2007 WL 922406, at *4 (E.D.N.Y. 2007) (same); UMG Recordings, Inc.

24  v. Blake, 2007 WL 1853956, at *2 (E.D.N.C. 2007) (same); Disney Enters., Inc. v. Merchant,
     2007 WL 1101110, at *6 (N.D.N.Y. 2007) ("Permanent injunctions are routinely awarded in

25  favor of copyright owners whose protected works have been misappropriated in order to serve
     the public's interest in upholding copyright protections.").

     [25] Mot. at 8-12.

26   [26] Mot. at 12-13; Opp. at 27 n.42.
     [27] Mot. at 3-7.

27   [28] Opp. at 23.
     [29] Phase 1(a) Final Verdict Form As Given at ¶ 4, Hutnyan Decl. Ex. 1; Trial Tr. at

28   4311:15-4312:15, 6839:18-22.

                                                          9

EXHIBIT 3   PAGE 36

1  contention.[30]  MGA says Leahy testified to "dozens of changes" between sculpts, but
2  ignores her admissions that those changes were done to make the doll "feasible" and
3  "producible," and generally did not involve changes to the elements the Court found
4  protectible.[31]  Garcia admits she "asked Margaret to create a sculpt to match what she
5  understood to be the drawings in Carter's portfolio" and that "the exercise was to create a
6  3D version of those 2D drawings."[32]  Bryant admits that "the final sculpt" was created
7  from drawings owned by Mattel.[33]  Garcia "tried to stay true" to Bryant's vision.[34]

8          MGA's unfettered access to Mattel's works is undisputed, and a visual comparison
9  shows substantial similarity.[35]  MGA admitted "the look" of the first generation dolls
10  was "similar" to Mattel's works,[36] yet there is no basis to distinguish between the first
11  generation Bratz dolls and all others; they all are the same doll, all based on and
12  developed from Mattel's sculpt and drawings.  Any minor changes or additions MGA
13  made were just that: minor adjustments that did not eliminate the underlying substantial
14  similarity.[37]  The entire line of core Bratz fashion dolls is infringing, as is MGA's

15
16
17
_____
18  [30]  Opp. at 23 n. 34.  See Trial Tr. at 6907:24-6909:7 ("Moreover, the jury's finding with respect to conversion in particular, but as well as the other torts, seem to completely vitiate any basis to argue joint ownership at this point -- or joint authorship at this point.  But that
19  aside, this is -- this was clearly waived.").  MGA's claim that Mattel did not argue in its closing argument that this sculpt was a basis for an infringement claim, Opp. at 23 n.34, is mistaken.
20  See Trial Tr. at 8143:23-8144:23; 8153:21-8154:1; 8154:14-18.
    [31]  Trial Tr. at 4160:11-19; 4364:15-4365:15; 4366:16-19 (the changes Leahy made were
21  to make the doll "producible"); 6794:6-11 ("overall effect" of the changes was to make it "producible"); 6847:22- 6848:1 ("the factors that MGA say are unique to the dolls" are in
22  Bryant's drawings).
    [32]  Trial Tr. 642:7-25; 644:25-645:6, 651:14-652:7; 800:6-17.
23  [33]  Trial Tr. 6665:8-6667:11.
    [34]  TX 10001, Hutnyan Decl. Ex. 15.
24  [35]  See generally Proctor Dec. ¶¶ 3-88, Exhs 1-55.  MGA's suggestion that Mattel conceded its infringement case "focused" on the first generation dolls, Opp. at 24 n.37, is
25  erroneous.  See Trial Tr. at 8029:18-8030:14 (arguing that even merchandise is directly infringing where it has "an image of the Bratz characters" on it, but primary damages theory
26  as to merchandise like "helmets" was indirect profits).
    [36]  Trial Tr. at 5530:24-5531:9, 5509:18-5510:1.
27  [37]  See Harper & Row Publishers v. Nation Enters., 471 U.S. 539, 565 (1985) ("'no plagiarist can excuse the wrong by showing how much of his work he did not pirate.'"
28  (quoting Hand, J).

7209/2675259.3

Case 2:04-cv-09049-DOC-RNB   Document 4513-4   Filed 12/23/08   Page 37 of 69   Page ID
#:131209
Case 2:04-cv-09049-SGL-RNB      Document 4384      Filed 12/22/2008      Page 19 of 33

1  continued depictions of the original characters, its advertising and packaging that utilize
2  images of infringing dolls, and the licensing program for Bratz-related products.[38]

3  **B.    The Prospect That MGA Will Not Be Able To Fully Compensate**
4  **Mattel For Its Ongoing Infringement Shows Irreparable Harm**

5  Regardless of what presumptions are applied, it is universally recognized that the
6  prospect of uncompensated harm is irreparable injury.[39]  MGA does not dispute that
7  potential inability to pay damages constitutes irreparable harm, but claims that Mattel
8  "has not provided a sufficient evidentiary showing" of inability to pay. (Opp. at 13.)

9  MGA rests its own case on a single paragraph in the declaration of its expert, Paul
10  Meyer: "According to Mattel's expert Mr. Wagner (based on data through June 30,
11  2008), the present value of MGA's projected future income or profit from Bratz is
12  $283.7 million. This amount should be more than sufficient to satisfy any past or future
13  damage award."[40]  But nowhere in his declaration does Meyer himself state that MGA
14  will be able to satisfy a damage award, and at trial MGA and Meyer urged the jury to
15  reject Wagner's valuation (and the jury did not award damages based on that
16  valuation).[41]  Moreover, the $283.7 million figure Wagner calculated was based on data
17  through June 2008; it was months later that MGA trumpeted its financial woes as a
18  result of the 1(a) verdict to this Court and the Ninth Circuit.[42]  MGA faults Mattel for not
19  submitting evidence that post-dates the 1B verdict (Opp. at 13:10-18), but Mattel has not

20
21  [38]  As discussed above, the Court is not bound by any jury finding of no ongoing
infringement because there was no such finding. But even if there were the Court would not
22  be bound. A jury finding of no ongoing infringement, were there one, would appropriately be
set aside in light of the overwhelming evidence that the entire Bratz line of dolls, all of which
23  are based on the same infringing sculpt, is infringing. See Mattel's Mot. for Judgment as a
Matter of Law dated, August 18, 2008, Decl. of Stephen M. Hauss ("Hauss Decl.") Ex. 1.
[39]  See, e.g., CoxCom, Inc. v. Chaffee, 536 F.3d 101, 112 (1st Cir. 2008) (irreparable harm
24  exists when there is "'substantial injury that is not accurately measurable or adequately
compensable by money damages'") (citation omitted); Jackson Dairy, Inc. v. H.P. Hood &
25  Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979) ("For it has always been true that irreparable injury
means injury for which a monetary award cannot be adequate compensation").
26  [40]  Meyer Decl. at ¶ 18.
[41]  Trial Tr. at 7693:19-25; 7699:11-7702:1; 7757:3-7758:8; 7760:1-17; 8226:12-8228:23;
27  8235:7-8236:7.
[42]  Decl. of Isaac Larian in Support of MGA's Pet. for a Writ of Mandamus dated August
28  7, 2008, Hutnyan Decl. Ex. 84 at ¶¶ 3-5; Hutnyan Decl. Exs. 87-89.

Case 2:04-cv-09049-DOC-RNB   Document 4513-4   Filed 12/23/08   Page 38 of 69   Page ID
#:131210
Case 2:04-cv-09049-SGL-RNB   Document 4384   Filed 10/22/2008   Page 20 of 33

1   had been able to obtain financial discovery since then. Only MGA could provide such
2   evidence. Tellingly, it did not. See Singh v. Gonzales, 491 F.3d 1019, 1024 (9th Cir.
3   2007) ("'When a party has relevant evidence in his control which he fails to produce, that
4   failure gives rise to an inference that the evidence is unfavorable to him.'").

## C.   Mattel's Marketplace Losses Constitute Irreparable Harm

6   MGA's continued production of infringing Bratz dolls will cause Mattel market
7   losses that cannot be precisely measured. That too is irreparable harm.

8   MGA argues that any loss in market share is irrelevant because Mattel's losses to
9   date have been in sales of non-Bratz products, and the injury was not "to the infringed
10  materials."[43] "[I]nfringed materials" do not suffer injuries -- plaintiffs do. As a plaintiff,
11  Mattel is entitled to protection from *all* injuries it suffers as a proximate result of MGA's
12  ongoing and future infringement; there is no restriction to "infringed materials"
13  damages. See 17 U.S.C. § 504(b) ("The copyright owner is entitled to recover the actual
14  damages suffered by him or her as a result of the infringement."); Polar Bear Prods., Inc.
15  v. Timex Corp., 384 F.3d 700, 708 (9th Cir. 2004) (awards of copyright damages are
16  governed by traditional tort principles of causation and damages).[44]

17

18  [43] Opp. at 11 (underline in original).
    [44] In Polar Bear, the plaintiff sought to recover as copyright damages "the company's
    losses during the period of Timex's infringement [which] totaled $200,000." 384 F.3d at 709.
19  The Ninth Circuit rejected this theory, but only because it was speculative on the particular
    facts. Id. at 710 ("It is too speculative to say that Timex's failure to pay a modest license fee
20  was the cause of Polar Bear's business failure."). Nowhere did the court suggest that the
    plaintiff's theory of damages was inherently flawed because general business losses are not
21  available for copyright infringement where a plaintiff can show proximate causation. See also
    Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1171 (1st Cir. 1994)
22  (affirming $27 million award in general business losses caused by infringement: "A plaintiff
    may seek compensation for both direct and 'indirect' losses, as long as the losses claimed are
23  not unduly speculative."); Sunset Lamp Corp. v. Alsy Corp., 749 F. Supp. 520, 523-25
    (S.D.N.Y. 1990) (permitting plaintiff to seek copyright damages measured by lost sales on
24  non-infringed items); 4 Nimmer on Copyright, §14.03[B][2][a] at 14-46.2, 14-47 ("As long
    as proximate causation is demonstrated, it would seem that profits 'attributable to
25  infringement' could include even those attributable only indirectly," although "claims for
    indirect profits are more frequently unsuccessful" because such damages can be speculative).
26  In any case, now that Mattel can produce dolls based on its own designs, the prospect of
    future market losses in the "infringed works" is real.
27      Velo-Bind, Inc. v. Minnesota Min. & Mfg. Co., 647 F.2d 965, 972-73 (9th Cir. 1981), on
    which MGA relies, is off point. The court did not permit recovery of lost profits in other
28  products there because the plaintiff's theory "comes close to asking the court to give de facto
    (footnote continued)

12

Case 2:04-cv-09049-DOC-RNB   Document 4513-4   Filed 12/23/08   Page 39 of 69   Page ID
#:131211
Case 2:04-cv-09049-SGL-RNB   Document 4384   Filed 10/22/2008   Page 21 of 33

1    MGA also absurdly claims that Mattel "failed to <u>factually</u> establish" that it lost

2  market share to Bratz.[45]  Yet MGA does not deny that its core business model is for

3  Bratz to take Mattel's market share, nor its touting of its success in doing so.[46]  MGA

4  asserts that Mattel's CFO "testified that Mattel's market share had **not** been affected by

5  Bratz," (Opp. at 11) (emphasis in original), but in fact he acknowledged that Bratz *has*

6  taken Mattel's market share.[47]  Other Mattel witnesses acknowledged the same.[48]  Even

7  in its opposition to this motion MGA claims it is "Mattel's chief competitor in the doll

8  industry."[49]  It is beyond plausible dispute that Mattel has suffered market share loss

9  because of MGA's infringement, and will continue to do so absent an injunction.

10    MGA urges this loss "can be recompensed through legal damages."[50]  But courts

11  often deny monetary relief on market loss theories precisely because these losses are

12  difficult to calculate.  See, e.g., Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 458-59

13  (2006) (calculating loss of market share would be speculative); Polar Bear, 384 F.3d at

14  709-10.  Market losses also give rise to other losses that are even harder to quantify.

15  Bus. Trends Analysts, Inc. v. Freedonia Group, Inc., 887 F.2d 399, 404 (2d Cir. 1989)

16  (copyright holder may recover for effects of infringement on "good will and market

17  recognition," but quantifying such effects "may be difficult").  The prospect of these

18  losses justifies an injunction.  See, e.g., Cadence Design Sys. v. Avant! Corp., 125 F.3d

19  824, 828 n.6 (9th Cir. 1997) (reversing finding of no irreparable harm: "[O]ne wonders

---

21  recognition in a tieing relationship which would be illegal," and based on a patent rule that
   "[i]ndirect consequential damages" are not available, which is contrary to copyright law.
   [45]  Opp. at 10 (underlining in original).
22  [46]  See Mot. at 23 & n.98, n.99; see also Trial Tr. at 7680:10 - 12 ("Q: Mr. Larian, do you
23  compete with Mattel in the marketplace? A: Yes, fiercely. Q: For how long? A: For the
   past seven years. Q: Do you want to kick their ass in the marketplace? A: Yes, I do.").
24  [47]  Farr Tr. at 17:12-21 ("I think Bratz has affected it."), 200:1-16 ("we did have
   competitive incursions . . . . I think we had a competitor, MGA, gained market share. It
25  actually increased the market in fashion dolls and gained market share."), Roth Decl. Ex. B.
   [48]  See, e.g., Trial Tr. at 405:15 - 20 ("A: [Mattel] definitely lost some market share to
26  Bratz"); Cassidy Park Depo Tr. at 155:7–11, 155:21-24 (similar), Hauss Decl. Ex. 2; Robert
   Eckert Depo. Tr. at 43:8-11 (similar), Hauss Decl. Ex. 3.
27  [49]  Opp. at 15. Similarly, MGA's counsel argued in closing, "Mattel and MGA compete
   in the marketplace. And you now know that for 40 years, Barbie was the only doll in town,
28  and Bratz came in and knocked her off her pedestal." Trial Tr. at 4902:6-8.

Case 2:04-cv-09049-DOC-RNB  Document 4513-4  Filed 12/23/08  Page 40 of 69  Page ID
#:131212
Case 2:04-cv-09049-SGL-RNB    Document 4384    Filed 10/22/2008    Page 22 of 33

1  how [plaintiff] could prove how many sales it lost because of the presence of

2  [defendant's] infringing software"); Elantech Devices Corp. v. Synaptics, Inc., 2008 WL

3  1734748, at *10 (N.D. Cal. Apr. 14, 2008) (granting injunction because "lost market

4  share may be difficult to calculate and compensate with money damages").[51]

5      **D.**   **Even If It Could and Would Be Compensated, Mattel Will Still**

6          **Suffer Irreparable Harm Absent An Injunction**

7      MGA's extraordinary interference with Mattel's exclusive rights also constitutes

8  irreparable harm. MGA argues Mattel "cannot rely on the pure fact of infringement" to

9  show irreparable harm after eBay, (Opp. at 12) (quoting Metro Golden Mayer Studios,

10  Inc. v. Grokster. Ltd., 518 F. Supp. 2d 1197, 1211 n.3 (C.D. Cal. 2007)), and suggests its

11  infringement of Mattel's exclusive rights is therefore inconsequential.[52] But post-eBay

12

13     [50]  Opp. at 6.
   [51]  See also, e.g., Emory Univ. v. Nova Biogenetics, Inc., 2008 WL 2945476, at *5 (N.D.
14  Ga. July 25, 2008) (granting injunction because the negative effects of injuries such as lost
market share "would be difficult to quantify solely through monetary damages"); Smith &
15  Nephew, Inc., v. Synthes, 466 F. Supp. 2d 978, 983 (W.D. Tenn. 2006) (loss of market share
and the resulting lost profits and loss of brand name recognition "constitute injuries that are
16  both incalculable and irreparable"); Fisher-Price, Inc. v. Safety 1st, Inc., 279 F. Supp. 2d 526,
528 (D. Del. 2003) ("[A] legal remedy is inadequate to redress the loss in market share . . .").
17     [52]  The cases on which MGA relies are either wholly inapposite or merely show that market
share losses may be compensable in cases with different facts. See, e.g., Rent-A-Center, Inc.
18  v. Canyon Television and Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991) (making
no mention of lost market share but finding that loss of goodwill *is* irreparable harm and
19  upholding preliminary injunction); Oakland Tribune. Inc. v. Chronicle Publ'g Co., 762 F.2d
1374, 1376 (9th Cir. 1985) (non-copyright case where plaintiff did not dispute lost sales were
20  compensable with monetary damages); Nutrition 21 v. United States, 930 F.2d 867, 872 (Fed.
Cir. 1991) (rejecting claim of irreparable harm that was without "an adequate supporting
21  record" in preliminary injunction context where patent may not have been valid).
   [52]  The presumption of harm is a longstanding feature of copyright law. Cadence, 125
22  F.3d at 827 n.4. As several courts have recognized, eBay does not reject this presumption by
its terms, and instead rejects only the Federal Circuit's presumption of an injunction. Warner
23  Bros. Entm't. Inc. v. RDR Books, -- F. Supp. 2d --, 2008 WL 4126736, at *34 (S.D.N.Y.
Sept. 8, 2008); Eisai Co., Ltd. v. Teva Pharms. USA, Inc., 2008 WL 1722098, at *10 (D.N.J.
24  Mar. 28, 2008); Lennon v. Premise Media Corp., 556 F. Supp. 2d 310, 320 n.1 (S.D.N.Y.
2008). MGA suggests the rule may be different for preliminary and permanent injunctions,
25  but if anything the distinction favors the issuance of an injunction here; once liability has been
established, there is no longer any danger that injunctive relief will turn out to be unjustified
26  by a finding of wrongdoing. Moreover, MGA is mistaken in its assertion that courts continue
to apply the presumption post-eBay only in the preliminary injunction context. See, e.g.,
27  UMG Recordings, Inc. v. Blake, 2007 WL 1853956, *3 (E.D.N.C. 2007) (granting permanent
injunction: "Irreparable injury is presumed when a plaintiff succeeds on the merits."); Warner
28  Bros. Entm't. Inc. v. RDR Books, 2008 WL 4126736, at *34 (same).

Case 2:04-cv-09049-DOC-RNB   Document 4513-4   Filed 12/23/08   Page 41 of 69   Page ID
#:131213
Case 2:04-cv-09049-SGL-RNB   Document 4384   Filed 10/22/2008   Page 23 of 33

1 cases continue to hold that a showing of past infringement *coupled with* an ongoing
2 threat to the holder's exclusive rights supports a finding of irreparable harm. See, e.g.,
3 Bertram Music, 2008 WL 2055480, at *2 (granting permanent injunction based on
4 showing of past and threat of future infringement); Microsoft Corp. v. Nop, 549 F. Supp.
5 2d 1233, 1239 (E.D. Cal. 2008) (same); UMG Recordings, Inc. v. Higareda, 2008 WL
6 3836074 at *5 (E.D. Cal. Aug. 14, 2008) (same); Warner Bros. Entm't, Inc. v. Carsagno,
7 2007 WL 1655666, *5 (E.D.N.Y. June 4, 2007) (same).  Even post-eBay cases that
8 reject any presumption of harm are in accord on this. See, e.g., Designer Skin, LLC v.
9 S&L Vitamins, Inc., 2008 WL 4174882, at *4-5 (D. Ariz. Sept. 5, 2008) (granting
10 permanent injunction to avoid "rendering [plaintiff's] right to exclude others from using
11 its images illusory"; a plaintiff "meets the burden of *proving* irreparable harm" under
12 eBay by showing both past and threat of future infringement).

13 Grokster, on which MGA principally relies, itself makes clear that where
14 interference with exclusive rights has the "actual effect of irreparably harming a
15 plaintiff's right to control the use of his/her copyrighted material," irreparable harm
16 exists. Grokster, 518 F. Supp. 2d at 1216-17; see also eBay, Inc. v. MercExch., LLC,
17 547 U.S. 388, 395 (2006) (Roberts, C.J., Scalia & Ginsburg, JJ., concurring) ("From at
18 least the early 19th century, courts have granted injunctive relief upon a finding of
19 infringement in the vast majority of patent cases. This 'long tradition of equity practice'
20 is not surprising, given the difficulty of protecting a right to *exclude* through monetary
21 remedies that allow an infringer to *use* an invention against the patentee's wishes - a
22 difficulty that often implicates the first two factors of the traditional four-factor test.").
23 If ever there were a case of irreparable harm to the right to exclude, it is here. For years,
24 MGA concealed from Mattel the fact that Mattel even *had* any rights in Bratz.[53]  MGA
25 is actually *suing Mattel* for making dolls (MY SCENE) that it claims look too much like
26
27
28  [53]  Phase 1(b) Verdict Form As Given at ¶¶ 18, 20, Hutnyan Decl. Ex. 3.

7209/2675259.3

15
MATTEL, INC.'S REPLY IN SUPPORT OF MOTION FOR A PERMANENT INJUNCTION

EXHIBIT 3 PAGE 42

Case 2:04-cv-09049-DOC-RNB   Document 4513-4   Filed 12/23/08   Page 42 of 69   Page ID
#:131214
Case 2:04-cv-09049-SGL-RNB     Document 4384     Filed 10/22/2008     Page 24 of 33

1   Bratz.[54]   MGA does not deny its plans to continue to infringe Mattel's copyrights.[55]

2   MGA's interference with Mattel's Bratz copyrights has been pervasive and egregious.

3   MGA also does not address, and thus concedes, that permitting MGA to infringe

4   further will encourage third party copying which will require Mattel to bring a

5   multiplicity of new lawsuits.[56]   Unless MGA is enjoined, third-party manufacturers who

6   currently make or sell infringing Bratz products will continue to infringe Mattel's

7   copyrights, confident they can do so with impunity. MGA's own authority shows this is

8   irreparable harm. Grokster, 518 F. Supp. 2d at 1219 ("[T]he very need to file multiple

9   lawsuits . . . is itself supportive of an irreparable harm finding.").

10   MGA's only answer to the clear inadequacy of legal remedies is that Mattel

11   "conceded that monetary damages are adequate" by proffering a theory of "future"

12   damages in Phase 1(b).[57]   But a theory the jury never accepted, and that MGA itself

13   contested as speculative, in no way establishes that legal remedies are adequate to

14   address MGA's ongoing infringement. If anything this shows the opposite. See, e.g.,

15   Kikumura v. Hurley, 242 F.3d 950, 963 (10th Cir. 2001) (reversing finding of no

16   irreparable harm because "[a] plaintiff suffers irreparable injury when the court would be

17   unable to grant an effective monetary remedy after a full trial because such damages

18   would be inadequate or difficult to ascertain"); Tri-State Gen. and Transmission Ass'n,

19   Inc. v. Shoshone River Power, Inc., 874 F.2d 1346, 1363 (10th Cir. 1989) (vacating

20   denial of permanent injunction: "evidence concerning [plaintiffs] future damages is

21   obviously intertwined with and directly affects the determination of whether injunctive

22   relief should be granted. . . . The jury may indicate that it cannot calculate [plaintiff's]

23   future damages with any reasonable degree of accuracy. . . . Such an indication will

24

25

26   [54]   See MGA Compl. for False Designation of Origin, Association or Sponsorship; Unfair
Competition; Dilution; and Unjust Enrichment, dated April 13, 2005, Hauss Decl. Ex. 4.
27   [55]   See Hutnyan Decl. ¶ 149.
[56]   Mot. at 20-21.
28   [57]   Opp. at 6. See, supra part I.C.

EXHIBIT 3 PAGE 43

1   certainly affect our review on a subsequent appeal if the district court again determines
2   that damages are calculable and consequently denies injunctive relief.").

3       **E.    The Balance of Hardships and the Public Interest Favor an**
4           **Injunction**

5       MGA's balancing of hardships has the scales backwards. On the Mattel side,
6   MGA fails to credit the significant harm MGA's ongoing infringement will cause Mattel.
7   On its own side, MGA's assertion that an injunction would amount to "[s]hutting down
8   MGA" (Opp. at 14) is a red herring. Mattel does not seek to "shut down" MGA; it seeks
9   to prevent more infringement of its rights. Larian himself has claimed that had Bryant
10  never brought Bratz to MGA, he and his team "would have found something else."[58] He
11  remains free to do so. But building a business on infringing products is no reason to
12  allow MGA to continue infringing.

13      Under the law, MGA has *no* legally cognizable interest in continuing to infringe
14  Mattel's copyrights. See, e.g., Triad Sys. Corp. v. Se. Express Co., 64 F.3d 1330, 1338
15  (9th Cir. 1995) ("Where the only hardship that the defendant will suffer is lost profits
16  from an activity which has been shown likely to be infringing, such an argument in
17  defense merits little equitable consideration."); Warner Bros., 2008 WL 4126736, at *35
18  ("The only possible harm to Defendant is the loss of the chance to sell an infringing
19  book, but the law does not protect this type of hardship") (citations omitted); Microsoft
20  Corp. v. Atek 3000 Computer Inc., 2008 WL 2884761, at *5 (E.D.N.Y. July 23, 2008)
21  (balance of hardships "favors granting a permanent injunction because such an
22  injunction only serves to require defendant to comply with the Copyright and Lanham
23  Acts and plaintiff stands to lose goodwill and sales if an injunction is not granted").
24  That is so even if MGA needs to continue to infringe to remain in business. "One who
25  elects to build a business on a product found to infringe cannot be heard to complain if
26  an injunction against continuing infringement destroys the business so elected."
27

28      [58]   See, e.g., Trial Tr. at 6172:13-21.

1  Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986); see
2  Universal City Studios, Inc. v. Sony Corp., 659 F.2d 963, 976 (9th Cir. 1981) ("A
3  defendant has no right to expect a return on investment from activities which violate the
4  copyright laws.  Once a determination has been made that an infringement is involved,
5  the continued profitability of [the defendant's] business is of secondary concern."), rev'd
6  on other grounds, 464 U.S. 417 (1984).  And that MGA will have to "shut down" has
7  not been shown in any event.  "[Defendants] can continue to compete against [plaintiff],
8  except not with the [products] that were created by [plaintiff]."  Mortgage Mkt. Guide,
9  LLC v. Freedman Report, LLC, 2008 WL 2991570, at *44 (D.N.J. July 28, 2008).[59]

10     As for the public interest, the injunction Mattel seeks would simply bar the further
11  manufacture of infringing toys MGA never had the right to make in the first place.  This
12  is not a case like Abend v. MCA, Inc., 863 F.2d 1465 (9th Cir. 1988), where an
13  injunction would have deprived the public of a classic Hitchcock film created under a
14  valid assignment from the author of the copyrighted work.[60]  Id. at 1479.  Nor is this
15  case analogous to z4 Techs. v. Microsoft Corp., where an injunction would have
16  required a retrofit to the computers of millions of users of Microsoft software.  434 F.
17  Supp. 2d 437, 443-44 (E.D. Tex. 2006).[61]

18     [59] MGA contends an injunction would impose a hardship because the jury found its
19  infringement was de minimis.  But the jury made no such finding; in fact, its verdict of
   infringement shows MGA's infringement is not de minimis -- truly de minimis infringement is
20  not actionable.  Newton v. Diamond, 204 F. Supp. 2d 1244, 1256-57 (C.D. Cal. 2002) ("To
   establish that the infringement of a copyright is de minimis, and therefore not actionable, the
21  alleged infringer must demonstrate that the copying of the protected material is so trivial 'as to
   fall below the quantitative threshold of substantial similarity, which is always a required
22  element of actionable copying.'") (internal citation omitted).  Dun v. Lumbermen's Credit
   Ass'n, 209 U.S. 20 (1908), is therefore distinguishable--the directory at issue used an
23  "insignificant" number of names from plaintiff's directory.
      MGA also contends its lack of willfulness "militates against an injunction," (Opp. at 14),
24  but cites no authority that only willful infringers may be enjoined; that is not the case.
   Williams Elec., Inc. v. Artic Int'l., Inc., 685 F.2d 870, 878 (3d Cir. 1982) ("[I]njunctions may
25  be issued without a showing of willful or deliberate infringement"); CyberMedia, Inc. v.
   Symantec Corp., 19 F. Supp. 2d 1070, 1079 (N.D. Cal. 1998) (same).
26     [60] We address Abend more fully in Section III.A, below.
      [61] MGA's reliance on the Elvis Presley case, Elvis Presley Enters. v. Passport Video, is
27  curious as the majority in fact affirmed the entry of a preliminary injunction barring release of
   an Elvis documentary (see 349 F.3d 622, 631 (9th Cir. 2003)); the "holding" cited by MGA
28  was Judge Noonan's amended dissent.

1    Nor are MGA's "monopoly" concerns valid, factually or legally. Enjoining
2  MGA's infringing dolls will not, as MGA urges, leave only one of two competitors
3  standing; even Larian agrees the market consists of far more than just BARBIE and
4  Bratz,[62] and it was Larian who bragged that MGA could have come up with its own
5  competitive fashion doll apart from Bryant's Bratz designs.[63] Moreover, a copyright is
6  by definition a right to *exclusive* control of a particular work--it is by definition
7  monopolistic. See, e.g., In re Indep. Serv. Orgs. Antitrust Litig., 910 F. Supp. 1537,
8  1542 (D. Kan. 1995) ("In essence, a copyright provides the copyright holder with a legal
9  monopoly."). The monopolistic nature of a copyright does not preclude injunctive relief;
10  it supports it. See Mortgage Mkt. Guide, 2008 WL 2991570, at *44-45 (rejecting
11  monopoly argument because defendant and other competitors will continue to be able to
12  compete with non-infringing tools); BUC Int'l Corp. v. Int'l Yacht Council Ltd., 2002
13  WL 31399604, at *4 (S.D. Fla. July 5, 2002) ("[T]he breaking of a monopoly cannot be
14  accomplished by copyright infringement."); E.F. Johnson Co. v. Uniden Corp. of Am.,
15  623 F. Supp. 1485, 1504 (D. Minn. 1985) (rejecting monopoly argument).[64]

16
17
18
19
---
[62] See, e.g., Trial Tr. at 6252:19-6253:15 (listing Hannah Montana, High School Musical,
20  Webkinz and Littlest Pet Shop as "very successful" fashion dolls and products that have taken
business from Bratz and BARBIE). See also Declaration of Stephanie Cota, filed herewith.
21    [63] Trial Tr. 6172:13-21.
[64] Even the case cited by MGA, Pass & Seymour, Inc. v. Hubbell, Inc., 532 F. Supp. 2d
22  418 (N.D.N.Y. 2007), recognized "there is an interest served in promoting innovation by
protecting the monopoly conferred by statute, and indeed under the United States
23  Constitution, to inventors under the patent laws." Id. at 434. The court denied a preliminary
injunction in part because the defendant's product "may well be . . . non-infringing." Id.
24  MGA's purported "waste" concerns are equally misplaced. An injunction will not "prevent
exploitation of economically viable materials" (Opp. at 15); it will prevent their *unlawful*
25  exploitation by MGA, and permit their exclusive exploitation by Mattel. MGA's only case
support is off point. See BR Assoc., Inc. v. LaFramboise, 2007 WL 1840031, at *10 (E.D.
26  Mich. June 26, 2007) (economic waste would result if building *already completed* before a
claim was made were ordered destroyed as remedy for breach of contract). MGA also twists
27  an exchange in which the Court noted, in the context of settlement, that it would be in the
parties' economic interest to maintain Bratz as a profitable product. (Opp. at 15) What might
28  be in the parties' economic interest as a matter of settlement is irrelevant.

## III. MATTEL'S PROPOSED INJUNCTION AND RELATED REMEDIES ARE APPROPRIATE AND SHOULD BE ORDERED

### A. An Injunction Is The Appropriate Remedy

Relying principally on Abend, 863 F.2d 1465, MGA argues that even if Mattel is entitled to relief against continuing infringement, a royalty is the appropriate remedy. Neither the Ninth Circuit nor any other court has relied on Abend to reject an injunction request in the face of a finding of copyright infringement, nor should this Court.

In Abend, Paramount Pictures produced the Hitchcock film *Rear Window* in 1954 based on a story by Cornell Woolrich, with lawful rights to the story. Woolrich died in 1968 and the renewal term rights to his story reverted to his heirs under the Copyright Act of 1909. The heirs assigned the rights to Abend, who sued Paramount claiming it no longer had the right to exploit the film without the renewal rights. Id. at 1467-68. The Ninth Circuit found that "special circumstances" justified a monetary award in place of an injunction. Id. at 1478-79. As the Ninth Circuit explained later, "the defendant had done nothing improper but had simply lost the right to the short story on a 'technicality' existing under the Copyright Act of 1909; an injunction would have prohibited the defendant from enjoying profits from its own creative efforts (i.e., creating the motion picture from the short story); and the public would be denied the opportunity to view a classic film." Cadence, 125 F.3d at 829.

Since Abend, the Ninth Circuit has rejected royalty arguments in the two published cases where they were sought, finding Abend not to control. See A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1028 (9th Cir. 2001); Cadence, 125 F.3d at 829. Other courts have done the same, even where the scope of infringement was limited. See, e.g., Woods v. Universal City Studios, 920 F. Supp. 62, 65 (S.D.N.Y. 1996) (although copyrighted drawings appeared only in one small portion of film *12 Monkeys*, "Universal has not demonstrated that this is a case of 'special circumstances' justifying an award of damages or a continuing royalty instead of an injunction, or that 'great public injury' would result from an injunction").

Case 2:04-cv-09049-DOC-RNB   Document 4513-4   Filed 12/23/08   Page 47 of 69   Page ID
#:131219
Case 2:04-cv-09049-SVL-RNB      Document 4384      Filed 12/22/2008      Page 29 of 33

1    The facts here in no way mirror the "special circumstances" in Abend. Unlike the

2  defendants in Abend, MGA at no time had the right to create works based on Bryant's

3  designs and was not stripped of its exploitation rights based on a legal technicality. A

4  classic work will not be lost forever through an injunction here; MGA will simply lose

5  the right to exploit designs that it never rightly owned. And MGA will not be

6  "prohibited . . . from enjoying profits from its own creative efforts," Cadence, 125 F.3d

7  at 829, as Paramount would have been in Abend; MGA can apply its creative fashion

8  designs, marketing and the like to help sell non-infringing products.[65]

9    MGA suggests the jury's "findings provide a basis for calculating a reasonable

10  royalty," Opp. at 32, but then proposes a manifestly unreasonable royalty. Its reading of

11  the jury verdict is pure speculation, and its proposed royalty would be inappropriate

12  even if a royalty were the proper remedy.[66] An injunction should issue.[67]

13

14  [65] MGA's other authorities are inapposite. See, e.g., eBay, 547 U.S. at 396-97 (Kennedy, J., concurring) ("When the patented invention is but a small component of the product the companies seek to produce *and the threat of an injunction is employed simply for undue leverage in negotiations, legal damages may well be sufficient to compensate for the infringement and* an injunction may not serve the public interest") (emphasized language omitted from MGA's citation); Silverstein v. Penguin Putnam, Inc., 368 F.3d 77, 84 (2d Cir. 2004) (reversing summary judgment for plaintiff because there were questions about whether poetry compilation at issue was protectible, and then stating in dicta that "any protectible interest [plaintiff] may have would be so slight that it cannot be enforced by a preliminary or permanent injunction"); Sony, 659 F.2d at 967 (court stated in dicta that royalty may be an acceptable resolution but did not make any determination on the issue and noted general rule that copyright plaintiff is entitled to an injunction once past and threat of future infringement is established); Sony, 464 U.S. at 499-500 (Blackmun, J. dissenting) (expressing agreement with Ninth Circuit's dicta *in dissent*); Dun, 209 U.S. at 23-24 (not adopting royalty); Paice, LLC v. Toyota Motor Corp., 504 F.3d 1293, 1313-15 (Fed. Cir. 2007) (reversing royalty order); Richard Feiner & Co. v. Turner Entm't Co., 926 F. Supp. 40, 43-44 (S.D.N.Y. 1996) (refusing to apply Abend and issuing injunction in later decision, see 1997 WL 603447, at *3 (S.D.N.Y. 1997)). Mattel of course also never "conceded that a royalty may be an appropriate alternative to an injunction here." Opp. at 29 n.44. Rather, Mattel merely argued that MGA should not be permitted to question Wagner regarding the impact of a possible injunction on MGA's valuation given that an injunction was not a foregone conclusion, with a royalty being another possible remedy (and one MGA had already said it would propose).

[66] See Mot. to Strike Meyer Decl.; Declaration of Judy A. Willis, filed herewith. In addition to the other flaws in Meyer's analysis, MGA and Meyer also improperly ignore the entirety of the damages award--$100 million. Bains, 405 F.3d at 771-72 (award of nominal damages for § 1981 cause of action did not show finding of no economic harm because jury awarded $50,000 for breach of contract and may have thought "putting the same $50,000 under both the § 1981 and the breach of contract causes of action would be double counting").

[67] MGA faults Mattel for not seeking a preliminary injunction, but "[n]othing in the law requires that a party seeking a permanent injunction also seek a preliminary injunction."
(footnote continued)

Case 2:04-cv-09049-DOC-RNB   Document 4513-4   Filed 12/23/08   Page 48 of 69   Page ID
#:131220
Case 2:04-cv-09049-SGL-RNB   Document 4384   Filed 10/22/2008   Page 30 of 33

1

## B.   The Injunction is Not Overbroad

2       MGA string-cites cases for the proposition that injunctions should be narrowly

3  tailored and reasonably related to the infringement, (Opp. at 17:4-24), but fails to point

4  out that in almost all these cases the court *did* enjoin distribution of the challenged

5  goods.[68] MGA's generalized descriptions of the outer boundaries of remedial relief shed

6  no light on the propriety of the injunction Mattel seeks.

7       In fact, the Ninth Circuit has consistently affirmed injunctions similar in scope to

8  the one requested by Mattel. E.g., Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.,

9  109 F.3d 1394, 1406 (9th Cir. 1997) (affirming injunction that prohibited distributing

10  entire book even though only back cover art and image of hat were infringing); Cadence,

11  189 F.3d 472 (affirming injunction that prohibited selling software even though only a

12  portion infringed). MGA's own cases recognize that an injunction must be sufficiently

13  broad to provide the plaintiff full relief. E.g., Lamb-Weston, Inc. v. McCain Foods,

14  Ltd., 941 F.2d 970, 973-74 (9th Cir. 1991) (affirming worldwide injunction prohibiting

15  sale based on trade secret misappropriation); Iconix, 457 F. Supp. 2d at 1000 ("It is not

16  unusual for courts to prohibit infringement--including infringement pertaining to

17  derivative works . . . in preliminary injunctions for alleged copyright infringement.").

18  MGA states no valid objection to the form of Mattel's proposed injunction.[69]

19

20

21  Sweetheart Cup Co., Inc. v. Buchberg Inv. Holdings, Inc., 2005 WL 1515405, at *5 (S.D.N.Y.
June 23, 2005); see Riss & Co. v. Ass'n. of Am. R.R., 170 F. Supp. 354, 368 (D.D.C. 1959)
("no inference adverse to plaintiff can be made based on its failure to seek an injunction
22  before the trial"). MGA's authority agrees that a decision not to seek a preliminary injunction
is "plainly not dispositive" and "numerous factors can impact a plaintiff's decision to forgo
23  seeking a preliminary injunction and such injunction has different prerequisites and serves
different purposes than a permanent injunction." MercExchange, 500 F. Supp. 2d at 573.
24  [68]  See Starter Corp. v. Converse, Inc., 170 F.3d 286, 300 (2d Cir. 1999) (remanding to
impose permanent injunctive relief); Iconix, Inc. v. Tokuda, 457 F. Supp. 2d 969, 1003-1004
25  (N.D. Cal. 2006) (enjoining defendants from infringing plaintiff's copyright ); Grokster, 518
F. Supp. 2d at 1241 (enjoining defendant from inducing copyright infringement).
26  [69]  Nearly all MGA's authorities involved preliminary injunctions, where courts
understandably exercise more restraint because violations of law have not been established.
27  See, e.g., Iconix, 457 F. Supp. 2d at 999-1002; Natural Resources Defense Council, Inc. v.
Winter, 508 F.3d 885 (9th Cir. 2007); Lamb-Weston, 941 F.2d at 970; Price v. City of
28  Stockton, 390 F.3d 1105 (9th Cir. 2004); Waldman Publ'g Corp. v. Landoll, Inc., 43 F.3d 775
(footnote continued)

Case 2:04-cv-09049-DOC-RNB   Document 4513-4   Filed 12/23/08   Page 49 of 69   Page ID
#:131221
Case 2:04-cv-09049-SGL-RNB   Document 4384   Filed 10/22/2008   Page 31 of 33

1    **C.    The Court Should Order Recall, Destruction and Impoundment**

2          MGA does not dispute that final judgments under the Copyright Act routinely

3    include recall and destruction orders. MGA does not dispute that absent such an order,

4    millions of infringing Bratz dolls would continue to be offered on retail shelves next to

5    Mattel-marketed products. Recall, destruction and impoundment should be ordered.[70]

6          MGA contends that recalls should not deprive the public of "substantial non-

7    infringing elements," (Opp. at 33), citing TVT Records v. Island Def Jam Music

8    Group, 279 F. Supp. 2d 366, 407-09 (S.D.N.Y. 2003). That case provides no support for

9    MGA. The defendant in TVT Records produced a music CD and DVD that featured

10   songs by numerous artists, only two of which were infringing (just minutes out of hours

11   of content). The court denied a recall (though it did enjoin further use of the infringing

12   songs and ordered defendants to return the master recordings) because the remaining

13   songs were non-infringing works contributed by innocent third-party artists who might

14   be adversely affected by a recall. Here, however, where the contributors of any non-

15   infringing elements were employed by MGA, the concern about fairness to innocent

16   third parties is completely absent. Moreover, the plaintiff in TVT Records had obtained

17   damages at trial based on the total number of CDs and DVDs manufactured, not sold, so

18   it had already been compensated for the unsold works it sought to have recalled.

19         Courts sometimes issue remedies narrower than a recall where the non-infringing

20   aspect of a product can be severed from infringing elements. See Perkins Marine Lamp

21   _____

22   (2d Cir. 1994). Infringement has been established here. A permanent injunction thus favors
     protection of Mattel's rights without the concerns present at the preliminary injunction stage.
23        [70] MGA speciously argues Mattel's request for impoundment should be denied because
     impoundment is "generally associated with preliminary injunctions, not permanent
24   injunctions." (Opp. at 32 n.46.) Whether termed impoundment under § 503(a) or "other
     reasonable disposition" under § 503(b), MGA can and should be ordered to turn over the
25   infringing goods. See Rogers v. Koons, 960 F.2d 301, 313 (2d Cir. 1992) (affirming turn-
     over order as "equitable remedy issued under the broad powers vested in a trial judge under
26   17 U.S.C. 503(b)"); Rebis v. Universal Cad Consultants, Inc., 1999 WL 1000435, *2 (N.D.
     Cal. Oct. 27, 1999) (entering judgment calling for infringing software to be "impounded or
27   destroyed, pursuant to 17 U.S.C. § 503(b)"); see also H.R. Rep. No. 94-1476, at 160 (1976),
     reprinted in 1976 U.S.C.C.A.N. 5659, 5776 ("*as part of its final judgment or decree*, the court
28   (footnote continued)

Case 2:04-cv-09049-DOC-RNB   Document 4513-4   Filed 12/23/08   Page 50 of 69   Page ID
#:131222
Case 2:04-cv-09049-SGL-RNB     Document 4384     Filed 10/22/2008     Page 32 of 33

1    & Hardware Co. v. Goodwin Stanley Co., 86 F. Supp. 630, 632 (E.D.N.Y. 1949)
2    (requiring defendant to block out infringing material rather than order destruction where
3    21 of 137 items in catalog were infringing); Foreign Car Parts, Inc. of New England v.
4    Auto World, Inc., 366 F. Supp. 977, 981 (M.D. Pa. 1973) (ordering defendant to block
5    out the small amount of infringing material from catalogs). The issue is not whether the
6    product contains "substantial non-infringing elements," as MGA contends (Opp. at 33),
7    but whether an adequate lesser remedy can be imposed. No such lesser remedy is
8    available here because the infringing elements include the non-separable core of the
9    MGA dolls, their sculpt. No remedy short of recall would be adequate.
10       Nor does MGA show that a recall, destruction and impoundment order would
11   impose an undue burden.  See Perfect Fit Indus. v. Acme Quilting Co., Inc., 646 F.2d
12   800, 807 (2d Cir. 1981) (ordering recall where defendant failed to show that cost would
13   be unwarranted). There is nothing inherently onerous about the requirement that a
14   defendant simply "writ[e] its customers requesting a return of the [products] and pa[y]
15   the cost of the return." Id. Recall orders frequently extend to a defendant's distributors
16   and retailers,[71] regardless of any purported burden. See, e.g., Merit Diamond Corp. v.
17   Frederick Goldman, Inc., 376 F. Supp. 2d 517, 526-27 (S.D.N.Y. 2005) (cited by MGA)
18   (ordering recall from defendant's national retailers and other wholesale customers as
19   these "large corporate entities . . . are capable of managing the process of recalling
20   products from store shelves"); Fisher-Price Toys v. My-Toy Co., Inc., 385 F. Supp. 218,
21   223 (S.D.N.Y. 1974) (ordering injunction, destruction of infringing dolls and all molds
22   and other means of their manufacture, and the recall and destruction of infringing dolls

24   could order the infringing articles sold, delivered to the plaintiff, or disposed of in some other
     way that would avoid needless waste and best serve the ends of justice.") (emphasis added).
25         [71] MGA argues in a footnote that a recall order cannot appropriately extend to "innocent"
     non-parties. (Opp. at 33 n.47.) The cases MGA cites, however, involved consumers, not
26   wholesale or retail business intermediaries. See, e.g., Societe Civile Succession Richard
     Guino v. Int'l Found. for Anticancer Drug Discovery, 460 F. Supp. 2d 1105, 1111-12 (D.
27   Ariz. 2006) (distinguishing business entity recalls from those aimed at end-user consumers);
     Applied Innovations, Inc. v. Regents of the Univ. of Minn., 876 F.2d 626, 637-38 (8th Cir.
28       (footnote continued)

Case 2:04-cv-09049-DOC-RNB  Document 4513-4  Filed 12/23/08  Page 51 of 69  Page ID
#:131223
Case 2:04-cv-09049-SGL-RNB  Document 4384  Filed 10/22/2008  Page 33 of 33

1  already distributed).[72]  MGA attempts to distinguish Gund, Inc. v. Golden Bear Co.,

2  Ltd., 1992 WL 392602 (S.D.N.Y. Dec. 10, 1992), as purportedly involving just "*one*

3  store," Opp. at 34:11-15, but the infringing toy in that case had actually been "widely

4  distributed" to *2400* K-Mart stores; the court ordered a recall anyway. Id. at *1, *4-5.[73]

5       MGA's claim that, absent a recall, "the only 'burden' to Mattel is facing

6  competition," Opp. at 34, is telling.  MGA's infringing Bratz products are indeed

7  "competition" and will certainly cause losses for Mattel. That is precisely why Mattel is

8  entitled to injunctive relief and a recall order. The holiday season is a critical time for

9  Mattel.[74]  Mattel should not have to face competition from products based on its own

10  designs, especially during this critical time. Mattel's motion should be granted.

11  DATED:  October 22, 2008        QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
12

13

14                                  By
15                                       John B. Quinn
                                         Attorneys for Mattel, Inc.
16

17

18

19

20  1989). Indeed, Societe Civile cites numerous cases holding that recall orders are appropriate
    where items can be "reasonably obtained by the defendants." Id. at 1111.
21      [72]  See also Chere Amie, Inc. v. Windstar Apparel, Corp., 175 F. Supp. 2d 562, 563-64,
    566 (S.D.N.Y. 2001) (imposing contempt sanction based on failure to comply with injunction
22  requiring defendant to "recall from all distributors, wholesalers, jobbers, dealers, and retailers
    and deliver to [plaintiff] any originals, copies, facsimiles, or duplicates of any products
23  employing the 'Girl Zone' trademark and [copyrighted designs]"); Yurman Design Inc. v.
    Chaindom Enters., Inc., 1999 WL 1075942, *8 (S.D.N.Y. Nov. 29, 1999) (ordering recall of
24  existing stock of infringing bracelets from jewelry businesses).
        [73]  The ongoing nature of MGA's infringement distinguishes this case from those MGA
25  cites in opposition. See, e.g., Gund, Inc. v. Swank, 673 F. Supp. 1233, 1237 (S.D.N.Y. 1987)
    (infringing products had been distributed as part of a "one-time" promotion); Granville v.
26  Suckafree Records, Inc., 2006 WL 2520909, *7 (S.D. Tex. June 28, 2006) (no evidence
    additional copies of limited edition compilation CD (which contained an infringing "beat" in a
27  single song) would be produced).
        [74]  Decl. of Kathleen Simpson-Taylor in support of Mattel's Ex Parte App. for an
28  Expedited Hearing, dated Sept. 29, 2008, at ¶ 4.

EXHIBIT 3 PAGE 52

# EXHIBIT 4



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>  Plaintiff,<br><br>  vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>  Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>DECLARATION OF STEPHANIE COTA<br><br>Date:   November 10, 2008<br>Time:   1 p.m.<br>Place:  Courtroom 1<br><br>**Phase 1(a)**<br>Trial Date:        May 27, 2008<br><br>**Phase 1(b)**<br>Trial Date:        July 23, 2008 |

11/22

07209/2676523.1

Case No. CV 04-9049 SGL (RNBx)
DECLARATION OF STEPHANIE COTA

EXHIBIT 4 PAGE 53

1    **DECLARATION OF STEPHANIE COTA**

2

3    I, Stephanie Cota, declare as follows:

4    1.    I make this declaration of personal, firsthand knowledge and, if

5    called and sworn as a witness, I could and would testify competently thereto.

6    2.    I am Senior Vice President of Marketing for the Barbie Brand, at

7    Mattel, Inc. ("Mattel") in El Segundo, California.  My responsibilities in that

8    position include overseeing global strategic direction for the Barbie brand.  I have

9    been employed by Mattel since October 1999.

10    3.    There are many dolls in the U.S. marketplace that are alternatives

11    to and compete with Barbie and Bratz dolls.  These include, for example, the

12    following exhibits reflecting a sample of non-Mattel dolls and doll alternatives that

13    feature core doll play patterns that are currently being sold in retail stores or through

14    retail web sites in the United States:

15    (a)    The "Hannah Montana" dolls, produced by Play Along, a true

16    and correct copy of an image of which is attached as Exhibit A;

17    (b)    The "America's Next Top Model" dolls, produced by MGA, a

18    true and correct copy of an image of which is attached as Exhibit B;

19    (c)    The "Cheetah Girls" dolls, produced by PlayAlong, a true and

20    correct copy of an image of which is attached as Exhibit C;

21    (d)    The "Camp Rock" dolls, produced by PlayAlong, a true and

22    correct copy of an image of which is attached as Exhibit D;

23    (e)    The "Groovy Girls" dolls, produced by Manhattan Toy, a true

24    and correct copy of an image of which is attached as Exhibit E;

25    (f)    The "Karito Kids" dolls, produced by KidsGive, a true and

26    correct copy of an image of which is attached as Exhibit F;

27    (g)    The "Travel Charmers" dolls, produced by KidsGive, a true and

28    correct copy of an image of which is attached as Exhibit G;

-2-                    Case No. CV 04-9049 SGL (RNBx)
                       DECLARATION OF STEPHANIE COTA

EXHIBIT **9** PAGE 54

1          (h)    The "Aly and AJ" dolls, produced by Huckleberry, a true and

2 correct copy of an image of which is attached as Exhibit H;

3          (i)    The "Strawberry Shortcake" doll, produced by Playmates, a true

4 and correct copy of an image of which is attached as Exhibit I;

5          (j)    The "Juku Couture" dolls, produced by JAKKS Pacific, a true

6 and correct copy of an image of which is attached as Exhibit J;

7          (k)    The "Taylor Swift" dolls, produced by JAKKS Pacific, a true and

8 correct copy of an image of which is attached as Exhibit K;

9          (l)    The "Disney Fairies" dolls, produced by Playmates, a true and

10 correct copy of an image of which is attached as Exhibit L;

11          (m)    The "Friends Forever Girl" dolls, produced by the company of

12 the same name, a true and correct copy of an image of which is attached as Exhibit

13 M;

14          (n)    The "Fancy Nancy" dolls, produced by Madame Alexander, a

15 true and correct copy of an image of which is attached as Exhibit N;

16          (o)    The "Lateenaz" dolls, produced by Hip-spanic Inc., a true and

17 correct copy of an image of which is attached as Exhibit O;

18          (p)    The "Only Hearts Club" dolls, produced by OHC Group, a true

19 and correct copy of an image of which is attached as Exhibit P;

20          (q)    The "Eco-Dolls," produced by E-Innovative Ideas, a true and

21 correct copy of an image of which is attached as Exhibit Q;

22          (r)    The "Our Family Bunch" dolls, distributed by KL Hobbies, a

23 true and correct copy of an image of which is attached as Exhibit R;

24          (s)    The "Hi Glam Fashion" dolls, produced by MGA, a true and

25 correct copy of an image of which is attached as Exhibit S;

26          (t)    The "Betty Spaghetty" dolls, produced by Ohio Art Co., a true

27 and correct copy of an image of which is attached as Exhibit T;

28

-3-         Case No. CV 04-9049 SGL (RNBx)
DECLARATION OF STEPHANIE COTA

EXHIBIT 4 PAGE 55

1        (u)    The "Girlz" dolls, produced by Ty, a true and correct copy of an
2    image of which is attached as Exhibit U;

3        (v)    The "Ashley Tisdale" dolls, produced by Huckleberry, a true and
4    correct copy of an image of which is attached as Exhibit V;

5        (w)    The "Hairspray" dolls, produced by PlayAlong, a true and correct
6    copy of an image of which is attached as Exhibit W;

7        (x)    The "Faith & Friends" dolls, produced by Mission City Press, a
8    true and correct copy of an image of which is attached as Exhibit X.

9        4.    In addition, many major retailers have "private label" dolls
10   manufactured for them. Such retailers include Rite-Aid, K-Mart, and Target. For
11   example, Rite-Aid sells fashion dolls under its "Kids Stuff" label, which includes
12   "Click Chicks" and "Fashion Corner Fairies." Attached as Exhibit Y are true and
13   correct copies of photographs of the dolls. Additionally, K-Mart sells a line of
14   fashion dolls called "Just Girlz." Attached as Exhibit Z are true and correct copies
15   of photographs of the dolls.

16       5.    Although not necessarily traditional dolls, there are two
17   additional products on the market that feature core play patterns and that compete
18   with fashion dolls such as Barbie and Bratz dolls. One of these products are
19   "Webkinz," which are plush characters with an interactive web site that are
20   manufactured by Ganz. The other is Hasbro's "Littlest Pet Shop," which are a range
21   of toys that include interactive pet figures, plush characters, digital pets and
22   accessories. Both of these products have been highly successful with consumers
23   and are widely sold. True and correct copies of images of examples of "Webkinz"
24   and "Littlest Pet Shop" products are attached hereto as Exhibits AA and BB,
25   respectively.

26       6.    Not only do substantial toy companies such as Hasbro currently
27   sell products with core play patterns that compete with Barbie and Bratz, but new
28   dolls are constantly being introduced into the marketplace. For example, Hasbro is

1  expected in the near future to relaunch "Jem," which was a popular fashion doll line

2  for Hasbro in the past and that directly competed with Mattel's Barbie dolls.

3  Finally, in the past, MGA itself has sold additional fashion doll lines in addition to

4  the Bratz, America's Next Top Model and Hi Glam fashion dolls that are currently

5  available. These include, for example, "Shrek Princesses" dolls, "Storytime

6  Princess" dolls, "Yummi-Land Ice Cream Pop Girls," "Yummi-Land Ice Cream

7  Girls" and "Yummi-licious" dolls.

8

9        I declare under penalty of perjury under the laws of the United States of

10  America that the foregoing is true and correct.

11        Executed on October 22, 2008, at  El Segundo , California.

12

13

14           Stephanie Cota

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-5-

EXHIBIT 4 PAGE 57

# EXHIBIT 5

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
5    Los Angeles, California 90017-2543
     Telephone: (213) 443-3000
6    Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                   EASTERN DIVISION

12 | CARTER BRYANT, an individual,      | CASE NO. CV 04-9049 SGL (RNBx)
13 |        Plaintiff,                   | Consolidated with
14 |   vs.                              | Case No. CV 04-09059
                                          Case No. CV 05-02727
15 | MATTEL, INC., a Delaware           | Honorable Stephen G. Larson
   | corporation,
16 |        Defendant.                   | **MATTEL'S OPPOSITION TO MGA'S MOTION TO STRIKE THE
17 |                                     | DECLARATIONS OF B. DYLAN PROCTOR, FRANK KEISER AND
18 | AND CONSOLIDATED ACTIONS           | KENNETH HOLLANDER**
19
20                                        Hearing Date: November 10, 2008
                                          Time:    1:00 p.m.
21                                        Place:   Courtroom 1
22                                        **Phase 1(a):**
                                          Trial Date:  May 27, 2008
23                                        **Phase 1(b):**
24                                        Trial Date:  July 23, 2008
25
26
27
28
00505.07209/2679949.2                     Case No. CV 04-9049 SGL (RNBx)
MATTEL'S OPPOSITION TO MGA'S MOTION TO STRIKE THE DECLARATIONS OF B. DYLAN PROCTOR, FRANK KEISER AND KENNETH HOLLANDER

EXHIBIT 5 PAGE 58

1    The Keiser Declaration is more than enough to provide foundation for the six
2  images attached and, even though MGA has deposed Mr. Keiser, it can mount no
3  meaningful challenge to the scans' authenticity, admissibility or accuracy.   MGA
4  thus instead raises two arguments.  First, it argues that the images are untimely
5  additions to Mr. Keiser's expert reports.  But they are not, and need not be, part of
6  Mr. Keiser's expert reports in the first place.  Expert reports are designed to disclose
7  an expert's planned testimony so as to prevent the possibility of unfair surprise at
8  trial.  Here there is no impending trial and MGA's receipt of his three earlier expert
9  reports months ago eliminates any possibility of unfair surprise.   Second, MGA
10 argues -- with only innuendo and without evidence -- that Mr. Keiser has
11 "manipulated" the images or is operating outside of his area of expertise.  Neither is
12 true, but even more importantly, Mr. Keiser is merely an operator of the scanning
13 equipment, and everything he did to produce the images is in his declaration, which
14 the Court can review and weigh itself.

15    MGA has also deposed Mr. Hollander.  Its arguments about the Hollander
16 Declaration have no more weight than the others.  MGA's argument about the
17 inadmissibility of expert reports at trial has no relevance to the Hollander
18 Declaration, which affirms the report and renders it admissible in support of Mattel's
19 motion.  And any supposed methodological flaws go to weight, not admissibility.

20                              **Argument**

21 I.    **THERE  IS  NO  LEGAL  OR  FACTUAL  IMPEDIMENT  TO**
22       **PRESENTING EVIDENCE THAT WAS NOT PRESENTED AT THE**
23       **JURY TRIAL**

24    MGA seeks to strike all three declarations on the basis that they contain
25 material not presented during the jury portion of the trial.  But there is no reason
26 why evidence not presented to the jury at trial cannot be presented in support of
27 Mattel's post-trial motion for permanent injunction.  The presentation of evidence

28

00505.07209/2679949.2

- 2 -

Case No. CV 04-9049 SGL (RNBx)

EXHIBIT 5 PAGE 59

1  not presented at trial is particularly appropriate and necessary here for a proper
2  determination of Mattel's motion.

3       Submitting new evidence beyond that admitted at trial is standard operating
4  practice in a post-jury trial proceeding in which the Court is considering equitable
5  relief. "In ordering [injunctive] relief, the court may [also] rely on evidence not
6  presented to the jury when the jury's factual findings are incomplete or
7  inconclusive." See *Burton v. Armontrout*, 975 F.2d 543, 545 (8th Cir. 1992); *see*
8  *also Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821, 844 (7th Cir. 1978)
9  (proper for district court to "consider evidence adduced both at the jury trial and at
10  the equitable relief hearing" in determining equitable relief); *Charles Jacquin et*
11  *Cie, Inc. v. Destileria Serralles, Inc.*, 921 F.2d 467, 471 (3rd Cir. 1990) (proper for
12  district court to fact-find based on market penetration evidence that was submitted in
13  post-trial briefing and not at trial); *Williams v. General Motors Corp.*, 656 F.2d 120,
14  124 (5th Cir. 1981) (acknowledging plaintiffs' prerogative to introduce new
15  evidence or rest on trial record in connection with request for injunctive relief).

16       Submitting new evidence is all the more appropriate where issues before the
17  Court in determining equitable relief are not identical to those before the jury, such
18  as where the jury determines past liability but the Court must fashion injunctive
19  relief based on continuing and likely future activities. *See Burton v. Armontrout*,
20  975 F.2d at 545 (recognizing proper admission of evidence of defendant's post-trial
21  conduct in connection with request for permanent injunction); *Black &*
22  *Decker, Inc. v. Robert Bosch Tool Corp.*, 2006 WL 3446144, at *1 and *4 (N.D. Ill.
23  2006) (admitting evidence of continuing infringement in support of permanent
24  injunction after verdict). Much of the evidence that was submitted in connection
25  with Mattel's request for injunctive relief, and that was not previously admitted, is of

26
27
28

00505.07209/2679949.2

- 3 -                                      Case No. CV 04-9049 SGL (RNBx)
MATTEL'S OPPOSITION TO MGA'S MOTION TO STRIKE THE DECLARATIONS OF B. DYLAN PROCTOR,
                          FRANK KEISER AND KENNETH HOLLANDER

EXHIBIT 5 PAGE 60

1 | new dolls currently on the market.[1]  This evidence is uniquely relevant to Mattel's
2 | motion for permanent injunction, but far less relevant, if at all, to the determination
3 | of damages for prior sales.

4 | Of course, as the Court will recall, one reason why Mattel is now presenting
5 | dolls that were not admitted at trial is because MGA did not produce an example of
6 | all the dolls in discovery as had been requested, and as MGA had agreed.[2]  Mattel
7 | has now acquired many of the missing dolls that are currently on the market, and
8 | seeks to put them before the Court so that the Court can make a proper
9 | determination as to the scope of the injunction.

10 | MGA also fails to acknowledge that the Court has already welcomed new
11 | evidence in connection with the parties' requests for equitable relief.  The Court first
12 | addressed this early in the trial, assuring the parties that they would be allowed to
13 | present all the evidence they thought necessary to prove up their equitable claims.[3]
14 | Mattel relied on this in presenting its case.  Then, after Phase 1(b) trial was over, the
15 | Court explicitly told the parties it would consider such evidence:  "if counsel on
16 | either side would seek leave to introduce additional evidence, as I think I indicated
17 | during the trial, the Court would consider that evidence."[4]  Although MGA has itself

18 |

19 | [1]  *See* Declaration of B. Dylan Proctor In Support of Mattel, Inc.'s Motion For A
20 | Permanent Injunction ("Proctor Decl."), Dkt. 4307 (placing evidence of recent dolls
before the Court); Declaration of Frank Keiser In Support of Mattel, Inc.'s Motion
21 | For A Permanent Injunction ("Keiser Decl."), Dkt. 4306 (same).
22 | [2]  Hutnyan Decl. ¶2 and Exh. A, MGA's Supplemental Response to 1st Set of
Requests for Production of Documents, dated Sept. 17, 2007, at 4.
23 | [3]  *Id.*, Exh. B, Trial Tr. 5272:11-14 ("I want to make sure that MGA has the
24 | ability to bring in . . . all of the evidence they think is necessary to prove up any of
their affirmative defenses"); *id.*, Trial Tr. 5305:7-13 ("[T]o ensure that MGA has an
25 | opportunity to present any evidence . . . I'll give leave at the end of the trial to
26 | introduce such evidence to the Court itself"); *see also Id.*, Exh. C, Order dated
September 2, 2008, at 1 (setting four-hour hearing on Phase 1(c) issues).
27 | [4]  *Id.*, Exh. B, Trial Tr. 8345:22-25.
28 |

00505.07209/2679049.2

- 4 -                                    Case No. CV 04-9049 SGL (RNBx)
MATTEL'S OPPOSITION TO MGA'S MOTION TO STRIKE THE DECLARATIONS OF B. DYLAN PROCTOR,
FRANK KEISER AND KENNETH HOLLANDER

EXHIBIT 5  PAGE 61

1 certainly taken advantage of this, submitting more than 35 exhibits that had never
2 been admitted at trial in support of its Statement of Position Regarding 1(c) Issues, it
3 begrudges Mattel the same right.

4        The cases presented by MGA do not apply here.  *Syntex, Level 3*
5 *Communications,* and *United States v. Virginia* all involved situations where the
6 appellate court had remanded issues for further consideration by the district court,
7 and the question was whether new evidence could be introduced in connection with
8 those later proceedings. *Syntex (U.S.A.) LLC v. Apotex Inc.,* 2005 WL 6042726, at
9 *3 (N.D. Cal. 2005); *Level 3 Communications v. City of St. Louis,* 2007 WL
10 2860171, *3-7 (E.D. Mo. 2007); *Virginia,* 88 F.R.D. 656, 658 (E.D. Va. 1980).[5]
11 *Dothard v. Rawlinson,* cited in *Virginia* and in MGA's motion, has no bearing here
12 either, as it addressed (in *dicta*) the issue of when evidence rebutting a claim of
13 discrimination in a Title VII suit should be presented.  433 U.S. 321, 338-339
14 (1977).

15        Finally, MGA argues that new evidence may not be presented because the
16 jury's findings on the issue of copyright infringement bind the Court, and any further

17

18        [5]   Notably, even in that situation, the trial court has discretion to entertain new
19 evidence where appropriate. *Virginia,* 88 F.R.D. 656, 662 (E.D. Va. 1980) ("in the
20 absence of error affecting the introduction of evidence at trial, the decision whether
to reopen the evidence at a later stage of the proceedings rests with the trial judge");
21 *Level 3 Communications v. City of St. Louis,* 2007 WL 2860171, *3 (E.D. Mo.
22 2007) ("the Eighth Circuit remanded 'for further proceedings not inconsistent with
its opinion. . . .   As a result, this Court has the discretion to determine whether
23 Level 3's motion to reopen discovery should be granted"); *Syntex (U.S.A.) LLC v.
24 Apotex Inc.,* 2005 WL 6042726, at *3 (N.D. Cal. Oct. 26, 2005) ("'absent contrary
instructions, a remand for reconsideration leaves the precise manner of
25 reconsideration - whether on the existing record or with additional testimony or
26 other evidence to the sound discretion of the trial court'"), *quoting State
Indus., Inc. v. Mor-Flo Indus., Inc.,* 948 F.2d 1573, 1577 (Fed. Cir. 1991).
27

28

EXHIBIT 5  PAGE 62

1   determination as to infringement is usurping the jury's role. For the reasons set forth
2   in Mattel's Reply to its Motion for Permanent Injunction, that is simply incorrect.

3

4   **II.**   **THERE IS NO BASIS TO STRIKE THE PROCTOR DECLARATION,**
5   **WHICH   MERELY   PRESENTS   FACTS   FOR   THE   COURT'S**
6   **CONSIDERATION**
7   **A.**   **MGA's  Request  Is  Overbroad  Because  Even  Under  MGA's**
8   **Analysis, Most Of The Proctor Declaration Is Unchallenged,**
9   **Highly Probative Evidence**
10   Even crediting MGA's criticisms, striking the entire Proctor Declaration
11   would throw the proverbial baby out with the bath water. The declaration contains
12   and attaches more than 360 properly-identified images of evidence in this case,
13   which have been identified and set forth in one place to allow the Court a
14   convenient way to view many dolls and drawings and draw its own comparisons
15   about their similarity.   In addition, it identifies and attaches the copyright
16   registrations for the drawings displayed, and references for the Court's convenience
17   pertinent trial testimony laying the foundation for the creation of some of Mattel's
18   copyrighted works. On the last page, the declaration explains and lays the proper
19   foundation for the infringing dolls and other MGA products that were found to be
20   currently on the market and which are depicted in images attached to the
21   declaration. MGA does not dispute the accuracy of any of this information. None
22   of it is subject to any objection by MGA; none of it is even arguably improper; and
23   it should under no circumstances be stricken. *See Lott v. Westinghouse Savannah*
24   *River Co., Inc.,* 200 F.R.D. 539, 547 (D.S.C. 2000) (cited by MGA) (denying
25   motion to strike as to unchallenged portions of a declaration); *Page v. U.S. District*
26   *Court for Northern Dist. of California,* 2006 U.S. Dist. LEXIS 68269, at *15 (N.D.
27   Cal. 2006) (cited by MGA) (denying motion to strike as to portions of declaration).

28

MATTEL'S OPPOSITION TO MGA'S MOTION TO STRIKE THE DECLARATIONS OF B. DYLAN PROCTOR,
FRANK KEISER AND KENNETH HOLLANDER

EXHIBIT 5  PAGE 63

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Conclusion

For the foregoing reasons, MGA's motion to strike the Proctor, Keiser, and Hollander Declarations should be denied.

DATED:  October 27, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ John Quinn
      John B. Quinn
      Attorneys for Mattel, Inc.

- 21 -                     Case No. CV 04-9049 SGL (RNBx)

MATTEL'S OPPOSITION TO MGA'S MOTION TO STRIKE THE DECLARATIONS OF B. DYLAN PROCTOR, FRANK KEISER AND KENNETH HOLLANDER

EXHIBIT 5 PAGE 64

# EXHIBIT 6

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9               UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

12  | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
    |---|---|
13  | Plaintiff, | Consolidated with |
    | | Case No. CV 04-09059 |
14  | vs. | Case No. CV 05-02727 |
15  | MATTEL, INC., a Delaware | Honorable Stephen G. Larson |
    | corporation, | |
16  | | **MATTEL, INC.'S OPPOSITION TO** |
    | Defendant. | **THE MGA PARTIES' MOTION** |
17  | | **FOR JUDGMENT AS A MATTER** |
    | | **OF LAW** |
18  | AND CONSOLIDATED ACTIONS | |
19  | | Hearing Date: August 21, 2008 |
    | | Place:       Courtroom 1 |
20  | | Time:        10:00 a.m. |
21  | | **Phase 1B:** |
22  | | Trial Date:      July 23, 2008 |

23

24

25

26

27

28

07209/2609633

EXHIBIT _6_ PAGE _65_

1  F. Supp. 2d 892, 897 (E.D. Tenn. 2008) ("the test [for preemption] is not whether
2  [remedies] overlap but whether there is an extra element that changes the nature of
3  the action so it is qualitatively different"); <u>Dorsey v. Money Mack Music, Inc.</u> 304
4  F. Supp. 2d 858, 865 (E.D. La. 2003) (where the "core of plaintiff's claims arise
5  from breaches of contractual and fiduciary duties among the parties," claims not
6  preempted even if relief is coextensive with copyright relief); <u>see also</u> NIMMER, at §
7  1.01[B][1], at 1-12 (courts look at the rights being enforced, not remedies, when
8  applying the preemption test).

9       Mattel's state and federal remedies are thus legally distinct, even if both
10 involve disgorgement. As the Court has observed, "one is predicated on a copyright
11 [infringement] claim, one is predicated on state tort law claim. The two are, under
12 the law, separate and distinct even though they result in – or they trigger similar
13 remedies or similar damages."[8]  The Court's skepticism regarding the applicability
14 of <u>Bucklew v. Hawkins, Ash, Baptie & Co., LLP,</u> 329 F.3d 923, 925, 934 (7th Cir.
15 2003), is well founded.  Both <u>Bucklew</u> and <u>Johnson v. Arista Holding, Inc.,</u> 2006
16 WL 3511894, *7 (S.D.N.Y. 2006), involved state law claims for which the rights
17 were equivalent to those protected by copyright; the "claims were merely
18 duplicative of the rights ... assert[ed] under the Copyright Act."  Because in both
19 cases the rights at issue were deemed to be equivalent, they have no applicability to
20 the claims here, which the Court has held are not based on equivalent rights.[9]

21       Last, in a footnote MGA contends for the first time that the CUTSA preempts
22 Mattel's aiding and abetting claims.  This fails for a variety of reasons.  MGA

23
   [8] Cole Dec. Ex. B (August 18, 2008 Tr.), at 7927:14-17.
24 [9] MGA's reliance on Patry also fails.  First, Patry's primary authority is <u>Bucklew</u>.
   Second, Patry too recognizes that it is the elements of liability, not the remedy, that
25 controls preemption analysis. William F. Patry, Patry on Copyright § 18:21 (2008)
   (lauding one court for not focusing on remedies in a preemption analysis). <u>Worth v.</u>
26 <u>Universal Pictures, Inc.,</u> 5 F. Supp. 2d 816, 822 (C.D. Cal. 1997), is also unavailing
   because it says only that an extra element of "awareness or intent" may not save a
27 claim from preemption.  That has no bearing on Mattel's aiding and abetting claims,
        (footnote continued)
28

1  waived this claim by failing to raise the issue before now,[10] and it is, in any event,

2  without merit.[11]

3      **C.   Damages Are Not Limited to Bryant's Profits.**

4      This Court has repeatedly rejected MGA's argument that Mattel's damages for

5  MGA's aiding and abetting are limited to Bryant's profits, and should do so again.

6  As set forth in the Court's Phase 1B jury instructions, Mattel is entitled to recover all

7  profits and advantages that MGA and Larian obtained as a result of their aiding and

8  abetting Bryant's breaches of his duties.   Cole Dec. Ex. D (Court's Phase B Jury

9  Instructions as Given), at 43 (Jury Instruction No. 39);[12] see Restatement of

10

11  which arise from breach of a contract and a fiduciary relationship and involve the
    "extra elements" needed to survive preemption.

12      MGA failed to include this issue in the Final Pre-Trial Conference Orders
    ("FPTCO") on May 16, 2008 and May 23, 2008.  The FPTCO supersedes the

13  parties' pleadings and controls the subsequent course of the suit. See United States v.
    First Nat'l Bank of Circle, 652 F.2d 882, 886 (9th Cir. 1981) (a party may not "offer"

14  evidence or advance theories at the trial which are not included in the order or which
    contradicts its terms.").

15  [11] CUTSA's preemption clause expressly excludes contractual rights and
    remedies. Cal. Civ. Code § 3426.7(b); Accuimage Diagnostics Corp. v. Terarecon,

16  Inc., 260 F. Supp. 2d 941, 953 (N.D. Cal. 2003) (CUTSA does not affect contractual
    remedies).  As the Court recognized, Mattel's claims arise from a contractual

17  relationship and therefore fall outside CUTSA.  Moreover, CUTSA does not affect
    civil remedies that "are not based upon misappropriation of a trade secret." Cal.

18  Civ. Code § 3426.7(a); see, e.g., Silicon Image, Inc. v. Analogix Semiconductor,
    Inc., 2007 WL 1455903 at *9 (N.D. Cal. May 16, 2007) (false advertising/tortious

19  interference claims not preempted by CUTSA because they were based on facts that
    went beyond an alleged misappropriation of trade secrets); Jan Marini Skin

20  Research, Inc. v. Allure Cosmetic USA, Inc., 2007 WL 1508686 at *26 (Cal. App.
    2007) ("claim for interference with prospective economic advantage is not

21  preempted by the UTSA if it depends on factual allegations in addition to those that
    form the basis of the misappropriation claim.").  MGA's authority is inapt: in each of

22  its cases, the claims were held preempted because they were based on an identical set
    of facts as the trade secret claim. See Digital Envoy Inc., v. Google, Inc., 370 F. Supp.

23  2d 1025, 1035 (N.D. Cal. 2005) ("identical facts"); Convolve, Inc. v. Compaq
    Computer Corp., 2006 WL 839022 at *7 (S.D.N.Y. Mar. 31, 2006) (alleged facts

24  "indistinguishable"); Ernest Paper Prods., Inc. v. Mobil Chemical Co., Inc., 1997 WL
    33483520 at *9 (C.D. Cal. Dec. 2, 1997) (preemption turns on "information in question

25  qualifying as trade secrets").  Mattel's claims that MGA aided and abetted Bryant's
    breaches of duty, however, arise out of the confidential and fiduciary relationship

26  between Bryant and Mattel. Moreover, the claims in those cases did not arise from a
    contractual relationship.

27  [12] Notably, this conforms to a jury instruction MGA itself proposed just last
    week, which confirmed that "Mattel is entitled to obtain disgorgement of profits that

28  MGA and Isaac Larian obtained by engaging in the wrongful acts of aiding and
        (footnote continued)

07209/2609633
                                    -5-                    Case No. CV 04-9049 SGL (RNBx)
    MATTEL'S OPPOSITION TO MGA PARTIES' MOTION FOR JUDGMENT AS A MATTER OF LAW

EXHIBIT 6   PAGE 69