Case 2:04-cv-09049-DOC-RNB   Document 4513-5   Filed 12/23/08   Page 1 of 74   Page ID
#:131242
Case 2:04-cv-09049-SGL-RNB   Document 4269   Filed 08/20/2008   Page 16 of 16

1   Teenz]," a doll that MGA claimed infringed its purported copyright in Bratz.[29]
2   Carter Bryant testified that "all the Bratz dolls have an overall similar appearance."[30]
3   And Debora Middleton, MGA's character art director, testified that the character art
4   MGA created for its Bratz branded merchandise is similar to the Bratz dolls.[31]
5   MGA's style guides -- the registrations for which list the Bratz designs created by
6   Bryant as the works on which they were based -- mandated that licensed products
7   look like their designs.[32]   In short, not only is the jury capable of determining
8   substantial similarity through its own examination, but defendants' own admissions
9   support such a finding with respect to every Bratz product that bears an image of the
10  Bratz characters.  MGA's motion should be denied.

11

12  DATED:  August 20, 2008            QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
13

.14                                    By /s/ John B. Quinn
                                          John B. Quinn
15                                        Attorneys for Mattel, Inc.

16

17

18

19

20

21

22

23

24

25  allegedly infringing works and original elements of Mattel's works.  Cole Dec. Ex.
    D (Court's Phase B Jury Instructions as Given), at 27 (Jury Instruction No. 25).
26  [29]  Cole Dec. Ex. B (August 6, 2008 Tr.), at 6159:13-18.
    [30]  Cole Dec. Ex. B (August 8, 2008 Tr.), at 6669:19-23.
27  [31]  Cole Dec. Ex. B (August 13, 2008 Tr.), at 7200:3-6.
    [32]  Cole Dec. Ex. B (August 8, 2008 Tr.), at 6653:21-6658:22; id. at Exs. Q-Y
28  (Trial Exs. 513, 567-574).

EXHIBIT V  PAGE 68

# EXHIBIT 7



Case 2:04-cv-09049-DOC-RNB Document 4513-5 Filed 12/23/08 Page 3 of 74 Page ID
#:131244
Case 2:04-cv-09049-SGL-RNB Document 63 Filed 07/2006 Page 1 of 18

FILED

1
2
3

ENTERED

2006 JUL 18 AM 10: 16

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
RIVERSIDE

4
5
6
7

JUL 18 2006

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION
DEPUTY

Priority ✓
Send ✓
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10  CARTER BRYANT,

11              Plaintiff,                CASE NO. CV 04-09049 SGL (RNBx)

12  v.                                    (Consolidated with cases CV 04-09059
                                          and CV 05-02727)
13  MATTEL, INC.,
                                          ORDER GRANTING MOTIONS TO
14              Defendant,                DISMISS

15  and related actions.

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(D).

## I. Introduction

This consolidated action involves the individual cases of Bryant v. Mattel, Inc.,

CV 04-09049; Mattel, Inc. v. Bryant, CV 04-09059; and MGA Entertainment, Inc. v.

Mattel, Inc., CV 05-02727. This Order rules on Motions to Dismiss previously

docketed in cases 04-09049 and 04-9059.

22      The factual background underlying this consolidated action is complex. The

23  Court sets forth the factual background only to the extent that it is necessary to

24  discuss its ruling on two pending motions to dismiss. A hearing regarding these

25  motions was held on June 26, 2006. For the reasons and in the manner set forth

26  below, the Court grants both motions.

DOCKETED ON CM

JUL 18 2006

27
28

EXHIBIT 1 PAGE 69

Case 2:04-cv-09049-DOC-RNB  Document 4513-5  Filed 12/23/08  Page 4 of 74  Page ID
#:131245
Case 2:04-cv-0904  L-RNB  Document 63  Filed 0  /2006  Page 2 of 18

1         **II. Motion to Dismiss (04-09049)**

2  **A.   Factual Background**

3       Carter Bryant is a designer to whom creation of MGA's "Bratz" line of dolls has

4 been attributed. Compl. ¶ 6. Mattel has sued him under a variety of state-law theories

5 relating to certain agreements Bryant signed while an employee with Mattel. See

6 generally Compl. filed in 04-09059. Although Mattel has not sued him for copyright

7 infringement of any Mattel product, Bryant nevertheless claims that he is reasonably

8 apprehensive regarding being sued for copyright infringement. Specifically, Bryant

9 makes the following allegations in his complaint seeking declaratory relief:

10       First, Bryant claims that an article published in the Wall Street Journal in July,

11 2003, attributed to Mattel sources a belief that "the Bratz borrow liberally from a Mattel

12 project that was scrapped at the testing stage in 1998." Compl. Ex. A; Compl. ¶ 54.

13 The scrapped Mattel project is alleged to be the project referred to by Mattel as "Toon

14 Teens." Compl. ¶ 56.

15       Second, Bryant alleges that he suggested, as a way to resolve a discovery

16 dispute, that Mattel stipulate that it would not sue based on "Toon Teens." Compl.

17 ¶ 55. Mattel refused to do so. Id. However, since that initial refusal, Mattel has

18 represented to the Court that it "will not maintain that Bratz infringes the copyright in

19 Toon Teens." June 26, 2006, Tr. at 64 (statement of Mattel counsel John B. Quinn).

20 Mattel has reiterated this position in a post-hearing brief, filed on July 5, 2006.

21       Third, Mattel cooperated with a Hong Kong toy company that MGA sued for

22 copyright infringement. Compl. ¶ 56. MGA's claims involved the Bratz dolls. Id.

23 Mattel's cooperation consisted of providing the Hong Kong toy company with

24 documents and photographs of the Toon Teens products, ostensibly to help prove that

25 Bratz was not an original design and that Bryant had copied and infringed Toon

26 Teens. Compl. ¶ 57.

27       Finally, Bryant notes that Mattel did not seek copyright registration until

28 November, 2003, which is the same time Mattel claims it first learned of Bryant's

EXHIBIT 1 PAGE 10

Case 2:04-cv-09049-DOC-RNB   Document 4513-5   Filed 12/23/08   Page 5 of 74   Page ID
Case 2:04-cv-09049   BL-RNB   Document 63   Filed 0   /2006   Page 3 of 18
#:131246

1   contract with MGA. Compl. ¶¶ 59-60. Bryant alleges that registration of a copyright is
2   a necessary step to be taken prior to filing a copyright infringement action. Compl.
3   ¶ 60.

4   **B.   Standing to Seek Declaratory Relief**

5           The purpose of the Declaratory Judgment Act is "to relieve potential defendants
6   from the Damoclean threat of impending litigation which a harassing adversary might
7   brandish, while initiating suit at his leisure — or never." Societe de Conditionnement
8   v. Hunter Engineering Co., 655 F.2d 938, 943 (9th Cir.1981). However, a party
9   seeking declaratory relief must still satisfy the "case or controversy" requirement found
10  in 28 U.S.C. § 2201(a). Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896
11  F.2d 1542,1555 (9th Cir. 1990). This requirement must be satisfied at the time the
12  suit is filed and must continue throughout the term of the suit. Id. at 1556 (citing
13  International Harvester Co. v. Deere & Co., 623 F.2d 1207, 1210 (7th Cir.1980)).

14          To meet this requirement, a party seeking declaratory relief must show that,
15  based on his reasonable perceptions, under all the circumstances of the case, there is
16  a substantial controversy between parties having adverse legal interests that causes
17  in the plaintiff a real and reasonable apprehension that he will be subject to liability,
18  and the controversy is of sufficient immediacy and reality to warrant declaratory relief.
19  Hal Roach, 896 F.2d at 1555. The apprehension must have been caused by the
20  defendant's actions. Id. (citing International Harvester, 623 F.2d at 1211).

21          Viewing Bryant's allegations in light of this standard, and in light of recent
22  developments, the Court must conclude that Bryant, although having a reasonable
23  apprehension of suit prior to counsel's representations regarding the intent to sue
24  based on Toon Teens, no longer has a reasonable apprehension that he will be
25  subject to liability. Bryant's Complaint, of course, makes reference to "other Mattel
26  products;" however, the substance of his allegations all address the product "Toon
27  Teens." The Wall Street Journal article is alleged to have involved Toon Teens.
28  Mattel's cooperation with the Hong Kong toy company allegedly involved Toon Teens.

EXHIBIT 1 PAGE 11

Case 2:04-cv-09049-DOC-RNB  Document 4513-5  Filed 12/23/08  Page 6 of 74  Page ID
Case 2:04-cv-0904( )GL-RNB  Document 63  Filed 0( )/2006  Page 4 of 18
#:131247

1  The copyright registration referenced in the Complaint relates to Toon Teens. No

2  other allegations are made that might tend to raise a real and reasonable

3  apprehension that Bryant could be subject to liability for copyright infringement based

4  on any other Mattel product. Accordingly, Bryant has not met the standard for

5  asserting a claim for declaratory relief.

6  **C.  Ruling on Motion to Dismiss**

7  Accordingly, the Court **GRANTS** the Motion to Dismiss and dismisses without

8  prejudice Bryant's claim for declaratory relief. Should Bryant, through discovery or

9  otherwise, acquire a real and reasonable apprehension of being subject to liability on

10  the basis of another identifiable Mattel product, Bryant may file a declaratory relief

11  claim. A claim by Mattel of copyright infringement based on the Toon Teens product

12  is barred by counsel's representation; therefore, Bryant may not seek declaratory relief

13  regarding this issue.

14  **III. Motion to Dismiss (04-9059)**

15  **A.  Factual Background**

16  The parties make the following factual allegations and assert the following

17  claims and counterclaims.

18  Bryant was employed by Mattel from September, 1995, to April, 1998, and

19  again beginning in January, 1999, and ending in October, 2000. Compl. ¶ 9. In

20  January, 1999, Bryant signed documents entitled "Employee Confidential Information

21  and Inventions Agreement" ("Employee Agreement") and "Conflict of Interest

22  Questionnaire" ("COI Questionnaire"). The Employee Agreement provides:

23  This Agreement is designed to make clear that: (I) I will maintain the

24  confidentiality of the Company's trade secrets; (ii) I will use those trade

25  secrets for the exclusive benefit of the Company; (iii) inventions that I

26  create will be owned by the Company; (iv) my prior and continuing

27  activities separate from the Company will not conflict with the Company's

28  development of its proprietary rights; and (v) when and if my employment

EXHIBIT 1 PAGE 12

Case 2:04-cv-09049-DOC-RNB   Document 4513-5   Filed 12/23/08   Page 7 of 74   Page ID
Case 2:04-cv-0904   BL-RNB   Document 63   Filed 0   /2006   Page 5 of 18
#:131248

1   with the Company terminates I will not use my prior position with the

2   Company to the detriment of the Company.

3       **1.**    Provisions Related to Trade Secrets

4   . . . .

5       (b) As used in the Agreement, "Proprietary Information" means

6   any information (including formula, pattern, compilation, device, method,

7   technique or process) that derives independent economic value, actual

8   or potential, from not being generally known to the public or to other

9   persons who can obtain economic value from its disclosure or use, and

10  includes information on the Company, its customers, suppliers, joint

11  ventures, licensors, licensees, distributors and other persons and entities

12  with whom the Company does Business.

13      (c) I will not disclose or use at any time either during or after my

14  employment with the Company, any Proprietary Information except for

15  the exclusive benefit of the Company as required by my duties for the

16  Company, or as the Company expressly may consent to in writing, I will

17  cooperate with the Company and use my best efforts to prevent the

18  unauthorized disclosure, use or reproduction of all Proprietary

19  Information.

20  . . . .

21      2.    Ownership of Inventions

22      (a) I agree to communicate to the Company as promptly and fully

23  as practicable all inventions [as defined below] conceived or reduced to

24  practice to me (alone or jointly by others) at any time during my

25  employment by the Company, I hereby assign to the Company and/or its

26  nominees all my right, title and interest in such inventions, and all my

27  right, title and interest in any patents, copyrights, patent applications or

28  copyright applications based thereon. . . .

EXHIBIT __1__ PAGE __13__

Case 2:04-cv-09049-DOC-RNB   Document 4513-5   Filed 12/23/08   Page 8 of 74   Page ID
#:131249
Case 2:04-cv-0904(   )BL-RNB   Document 63   Filed 0(   )/2006   Page 6 of 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this Agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

. . . .

3.     Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

4.     Miscellaneous

. . . .

EXHIBIT 6 PAGE 74

1    (f) This agreement will be governed by and interpreted in

2    accordance with the laws of the State of California.

3    . . . .

4    CAUTION: THIS AGREEMENT CREATES IMPORTANT

5    OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS

6    TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER

7    EMPLOYMENT.

8    Employment Agreement, attached to the Compl. as Ex. A.[1]

9    **B.   The Parties' Claims**

10    Mattel brings a number of claims based on these documents, including breach

11   of contract, breach of fiduciary duty, breach of the duty of loyalty, unjust enrichment,

12   and conversion.

13    Bryant brings a number of counterclaims based on these documents.

14   Specifically, Bryant makes the following challenges to the Employment Agreement:

15    In his first counterclaim, Bryant claims that the Employment Agreement violates

16   Cal. Bus. & Prof. Code §§ 17200 (unfair competition law) because (a) it is an unfair

17   restraint of trade (restricting job mobility and use of publicly available information) in

18   violation of Cal. Bus. & Prof. Code § 16600; (b) it violates Cal. Labor Code §§ 96(k),

19   98.6, and 2699; (c) it violates Cal. Labor Code § 2870; and (d) it is procedurally and

20   substantively unconscionable.  See Bryant's Counterclaims ¶¶ 33-47.

21    In his second counterclaim, Bryant claims that the Employment Agreement

22   should be rescinded because it was procured due to mistake, duress, menace and/or

23

24    ───────────

25    [1] Bryant objects to the Court's consideration of the Agreement and the COI
Questionnaire. Bryant purports to dispute the authenticity of these documents.

26   However, examining the substance of Bryant's objections, it becomes clear that Bryant
objects not to the content of these documents, but to the validity and legal effect of

27   these documents. Accordingly, the Court's consideration of these documents in
connection with the present Motion to Dismiss is proper. See Parrino v. FHP, Inc., 146

28   F.3d 699, 706 (9th Cir. 1998) (the Court may consider documents whose authenticity is
not questioned and upon which the complaint necessarily relies).

7

EXHIBIT 1  PAGE 15

1    fraud. See Bryant's Counterclaims ¶¶ 48-54.

2        In his third counterclaim, Bryant alleges that the Employment Agreement was
3    procured by fraud in that Mattel "fail[ed] to disclose to Bryant the true meaning of the
4    terms and the purported legal effect of the [Employment] Agreement." See Bryant's
5    Counterclaims ¶¶ 55-60.

6        Finally, in his fourth counterclaim, Bryant seeks declaratory judgment that
7    Mattel's conduct in requiring Bryant and other employees to execute the Employment
8    Agreement constitutes unfair competition and unfair business practices in violation of
9    Cal. Bus. & Prof. Code §§ 17200 and 16600. Bryant also seeks a declaration that the
10   Employment Agreement is unlawful and unenforceable as to him and as to other
11   current and former employees of Mattel. See Bryant's Counterclaims ¶¶ 61-65.

12   **C.    Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

13       The present Motion to Dismiss requires the Court to determine whether the
14   counterclaims state any claim upon which relief may be granted. See Fed R. Civ. P.
15   12(b)(6). The Court will not dismiss the claims for relief unless Bryant cannot prove
16   any set of facts in support of the claims that would entitle him to relief. See Steckman
17   v. Hart Brewing, Inc., 143 F.3d 1293, 1295 (9th Cir. 1998). In limiting its inquiry to the
18   content of the counterclaims, the Court must take the allegations of material fact as
19   true and construe them in the light most favorable to Bryant. See Western Reserve
20   Oil & Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir. 1985). Additionally, the Court "is
21   not required to accept legal conclusions cast in the form of factual allegations if those
22   conclusions cannot be reasonably drawn from the facts alleged." Clegg v. Cult
23   Awareness Network, 18 F.3d 752, 755 (9th Cir. 1994).

24   **D.    § 17200 Claim**

25       **1.    Generally**

26       "California's unfair competition law (UCL) (17200 et seq.) defines 'unfair
27   competition' to mean and include any unlawful, unfair or fraudulent business act or
28   practice. . . ." Kasky v. Nike, Inc., 27 Cal.4th 939, 949, 119 Cal.Rptr.2d 296 (2002)

EXHIBIT 1 PAGE 1 8

Case 2:04-cv-09049-DOC-RNB  Document 4513-5  Filed 12/23/08  Page 11 of 74  Page ID
#:131253
Case 2:04-cv-0904  L-RNB  Document 83  Filed 0  /2006  Page 9 of 18

1   (internal quotation marks and citation omitted). Because "section 17200 is written in

2   the disjunctive, it establishes three varieties of unfair competition--acts or practices

3   which are unlawful, unfair, or fraudulent." Cel-Tech Communications v. Los Angeles

4   Cellular Telephone Co., 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548 (1999) (emphasis

5   added). "Unlawful" practices are those practices that are prohibited by law, whether

6   "civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made."

7   Saunders v. Superior Court, 27 Cal.App.4th 832, 839 (citing People v. McKale, 25

8   Cal.3d 626, 632 (1979)). The prohibition against "unfair" conduct is not as broad as it

9   would seem. In Cel-Tech, the California Supreme Court announced that the test of

10  "unfairness" for commercial cases: "Unfair" means "conduct that threatens an

11  incipient violation of an antitrust law, or violates the policy or spirit of one of those laws

12  because its effects are comparable to or the same as a violation of the law, or

13  otherwise significantly threatens or harms competition." Cel-Tech, 20 Cal.4th at 187.

14      **2.   Standing**

15      Bryant claims to be bringing the § 17200 "on his own behalf, on behalf of all

16  current and former employees of Mattel employees . . . and on behalf of the general

17  public." See Counterclaims ¶ 10. The parties disagree as to whether he may bring

18  such a claim on behalf of anyone other than himself and argue this point on state-law

19  grounds. However, it is clear under established Ninth Circuit authority that Bryant's

20  purported claims on behalf of others suffer from a federal constitutional deficiency:

21  Bryant must satisfy the case-or-controversy requirement of Article III for any claim that

22  he brings under § 17200. Bryant has not alleged facts that establish that he has

23  standing to bring his claims on behalf of anyone other than himself.[2] See Lee v.

24  American Nat. Ins. Co., 260 F.3d 997, 1001 (9th Cir. 2001) (rejecting, on

25  constitutional grounds, a plaintiff's attempt to assert a § 17200 claim on behalf of

26  others noting that "Article III of the Constitution . . . limits the jurisdiction of the federal

27

28

[2] As stated below, Bryant has failed to state a claim on his own behalf as well.

9

EXHIBIT 1  PAGE 11

Case 2:04-cv-09049-DOC-RNB · Document 4513-5 · Filed 12/23/08 · Page 12 of 74 · Page ID
#:131253
Case 2:04-cv-0904( )L-RNB    Document 63    Filed 0( )/2006    Page 10 of 18

1  courts to 'cases and controversies,' a restriction that has been held to require a

2  plaintiff to show, *inter alia*, that he has actually been injured by the defendant's

3  challenged conduct.") (citing <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.</u>,

4  528 U.S. 167, 180, 120 S.Ct. 693 (2000)).

5      Absent class-action type allegations (and a successful motion to certify a class

6  pursuant to Fed. R. Civ. P. 23), it appears to the Court that Bryant cannot assert

7  claims challenging the Employee Agreement or the COI Questionnaire on behalf of

8  anyone other than himself. Therefore, the Court considers only whether Bryant has

9  stated a claim pursuant to § 17200 on his own behalf.

10      **3.   Cal. Bus. & Prof. Code § 16600**

11      Bryant argues that the Agreement is "unlawful" because it violates Cal. Bus. &

12  Prof. Code § 16600, which provides: "Except as provided in this chapter, every

13  contract by which anyone is restrained from engaging in a lawful profession, trade, or

14  business of any kind is to that extent void." <u>Id.</u> Specifically, Bryant argues (without

15  further elaboration) that "the [Employment] Agreement unlawfully impair[s] Bryant's

16  right to prepare to compete with Mattel." Opp. at 7.

17      California law permits an employee to seek other employment and even to

18  make some "preparations to compete" before resigning. See <u>Bancroft-Whitney Co. v.</u>

19  <u>Glen</u>, 64 Cal.2d 327, 346 (1966) ("The mere fact that the officer makes preparations

20  to compete before he resigns his office is not sufficient to constitute a breach of duty.

21  It is the nature of his preparations which is significant.") However, "an employee may

22  not transfer his loyalty to a competitor." <u>Stokes v. Dole Nut Co.</u>, 41 Cal.App.4th 285,

23  295 (1995). "During the term of employment, an employer is entitled to its employees'

24  undivided loyalty." <u>Id.</u> (internal citations and quotation marks omitted).

25      Mattel alleges in the Complaint that Bryant entered into an agreement with

26  MGA to provide MGA design services on a "top priority" basis while he was still

27  employed with by Mattel. Compl. ¶ 13. Bryant also makes similar allegations in the

28  related case, <u>Bryant v. Mattel, Inc.</u>, 04-09049: "MGA ultimately offered Bryant a

Case 2:04-cv-09049-DOC-RNB  Document 4513-5  Filed 12/23/08  Page 13 of 74  Page ID
#:131254
Case 2:04-cv-0904( )L-RNB   Document 63   Filed 0( )2006   Page 11 of 18

1   consulting arrangement. His agreement with MGA was signed on or about October 4,

2   2000. Bryant resigned from Mattel immediately, giving two weeks notice, but stayed at

3   the company until October 20 to finish up and transition the projects on which he had

4   been working." Compl. ¶ 38.

5         The parties' arguments assume that the Employment Agreement would prohibit

6   such conduct;[3] therefore, the Court considers whether an agreement prohibiting an

7   employee from entering into a contract with a competitor *during the course of his*

8   *employment* constitutes an unfair restraint of trade in violation of § 16600. The Court

9   concludes that it does not. Such an agreement is more akin to ensuring the employer

10   has the "employee's undivided loyalty" than it is to an agreement that restricts an

11   employee from "prepar[ing] to compete." For this reason, Plaintiff cannot state a

12   § 17200 claim on this basis.

13       **4.**     **Cal. Labor Code §§ 96(k), 98.6 and 2699**

14         Bryant also argues that the Agreement is "unlawful" because it violates a

15   number of provisions of the California Labor Code. Specifically, Bryant alleges that

16   the Agreement is "unlawful" because it violates § 96(k), which provides:

17           The Labor Commissioner and his or her deputies and

18         representatives authorized by him or her in writing shall, upon the filing

19         of a claim therefor by an employee, or an employee representative

20         authorized in writing by an employee, with the Labor Commissioner, take

21         assignments of: . . . (k) Claims for loss of wages as the result of

22         demotion, suspension, or discharge from employment for lawful conduct

23         occurring during nonworking hours away from the employer's premises.

24   Cal. Labor Code § 96(k).

25         Section 98.6 prohibits discrimination or retaliation against an employee who

26   engages in conduct described in §96(k). Section 2699 authorizes a private right of

27

28

        [3] The Court does not mean to imply that Bryant has conceded this point.

11

EXHIBIT **1** PAGE **19**

Case 2:04-cv-09049-DOC-RNB   Document 4513-5   Filed 12/23/08   Page 14 of 74   Page ID
#:131255
Case 2:04-cv-09049-DOC-RNB   Document 63   Filed 07/2006   Page 12 of 18

1  action for certain violations of the Labor Code.

2      Assuming that § 96(k) would otherwise support a § 17200 claim, Bryant has still

3  failed to allege any "loss of wages" or "demotion, suspension or discharge" based on

4  lawful off-duty conduct. Therefore, Bryant has not alleged facts sufficient to support a

5  violation of § 96(k) that would, in turn, support his § 17200 claim.

6      Despite Mattel's arguments against § 98.6 and § 2699 as a proper basis for

7  Bryant's § 17200 claim, Bryant did not defend such claims in his opposition; therefore,

8  the Court treats these claims as abandoned.

9      **5.    Cal. Labor Code § 2870**

10      Bryant also argues that the Agreement is "unlawful" because it violates Cal.

11  Labor Code § 2870. That provision states:

12          (a) Any provision in an employment agreement which provides

13      that an employee shall assign, or offer to assign, any of his or her rights

14      in an invention to his or her employer shall not apply to an invention that

15      the employee developed entirely on his or her own time without using the

16      employer's equipment, supplies, facilities, or trade secret information

17      except for those inventions that either:

18          (1) Relate at the time of conception or reduction to practice of the

19      invention to the employer's business, or actual or demonstrably

20      anticipated research or development of the employer; or

21          (2) Result from any work performed by the employee for the

22      employer.

23          (b) To the extent a provision in an employment agreement

24      purports to require an employee to assign an invention otherwise

25      excluded from being required to be assigned under subdivision (a), the

26      provision is against the public policy of this state and is unenforceable.

27  Cal. Labor Code § 2870.

28      The Employment Agreement assigns the rights to certain inventions by the

12

EXHIBIT __1__ PAGE __80__

Case 2:04-cv-09049-DOC-RNB   Document 4513-5   Filed 12/23/08   Page 15 of 74   Page ID
#:131256
Case 2:04-cv-0904   L-RNB   Document 63   Filed 0   2006   Page 13 of 18

1   employee to the Company.  The Agreement limits the scope of this assignment to the

2   extent required by § 2870 by specifically incorporating and quoting § 2870.  The

3   Agreement also informs the employee that he bears the burden of proving that the

4   invention falls within the scope of § 2870.  This is consistent with California law.  See

5   Cal. Labor Code § 2872 ("In any suit or action arising thereunder, the burden of proof

6   shall be on the employee claiming the benefits of its provisions.").

7          Therefore, Bryant cannot maintain a § 17200 claim based on § 2870.

8          **6.     Unconscionability**

9          Unconscionability has both procedural and substantive elements.  Armendariz

10   v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83, 99 (2000).  Both must

11   be present for a court to invalidate a contract or one of the contract's provisions.  Id. at

12   114.  However, "[t]he more substantively oppressive the contract term, the less

13   evidence of procedural unconscionability is required to come to the conclusion that the

14   term is unenforceable, and vice versa."  Id.

15          Procedural unconscionability focuses on the elements of oppression and

16   surprise.  Discover Bank v. Superior Court, 36 Cal.4th 148, 160 (2005).  "Oppression

17   arises from an inequality of bargaining power which results in no real negotiation and

18   an absence of meaningful choice . . . . Surprise involves the extent to which the terms

19   of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior

20   bargaining position."  Crippen v. Central Valley RV Outlet, 124 Cal.App.4th 1159, 1165

21   (2004).

22          Substantive unconscionability focuses on the actual terms of the agreement

23   and evaluates whether they create "overly harsh" or "one-sided results."  Armendariz,

24   24 Cal.4th at 114.  To be substantively unconscionable, a contractual provision must

25   shock the conscience.  California Grocers Assn. v. Bank of America, 22 Cal.App.4th

26   205, 214 (1994).

27          Here, Bryant alleges that the Employee Agreement is a contract of adhesion.

28   Counterclaims ¶ 26.  For purposes of the present analysis, the Court assumes that the

EXHIBIT 1 PAGE 91
13

Case 2:04-cv-09049-DOC-RNB  Document 4513-5  Filed 12/23/08  Page 16 of 74  Page ID
#:131257
Case 2:04-cv-09049-DL-RNB    Document 63    Filed 07/2006    Page 14 of 18

1    Employment Agreement is procedurally unconscionable. See Discover Bank v.

2    Superior Court, 36 Cal.4th 148, 160 (2005) ("The procedural element of an

3    unconscionable contract generally takes the form of a contract of adhesion, which,

4    imposed and drafted by the party of superior bargaining strength, relegates to the

5    subscribing party only the opportunity to adhere to the contract or reject it.") (internal

6    quotation marks and citation omitted). However, upon examination of the terms of the

7    Employment Agreement, the Court is unable to conclude that the element of

8    substantive unconscionability has been met. It is not surprising or overly harsh that

9    Mattel would expect its trade secrets and proprietary information to be kept

10    confidential; the same is true regarding Mattel's expectation that the works of its

11    design staff — created by Mattel's employees, using Mattel's resources, during time

12    for which Mattel paid the employee — be considered its property. Therefore, Bryant

13    cannot state a claim based on unconscionability.

14          **7.**    **Cal. Labor Code §§ 232 and 232.5**

15         Although not pleaded in the Counterclaims, Bryant argues that his § 17200

16    claim is supported by an alleged violation of §§ 232 and 232.5. These provisions

17    prohibit limitations on an employee's ability to disclose the amount of his or her wages

18    or information about his or her working conditions. Bryant's arguments fail to address

19    how the Employment Agreement (which prohibits the disclosure of "trade secrets" and

20    "proprietary information") prevented him from disclosing the amount of his wages or

21    information about his working conditions. Bryant has failed to state a § 17200 claim

22    based on §§ 232 and 232.5.

23          **8.**    **Unfairness**

24         As noted above, there is only a limited basis on which a plaintiff may challenge

25    conduct as an "unfair" business practice. See Cel-Tech Communications, 20 Cal.4th

26    at 187 ("unfair" conduct that may be challenged pursuant to § 17200 is conduct that is,

27    or is similar to, conduct that constitutes a violation of antitrust laws). Bryant's

28    allegations do not state a claim for an "unfair" business practice in violation of

EXHIBIT 1 PAGE 82

Case 2:04-cv-09049-DOC-RNB Document 4513-5 Filed 12/23/08 Page 17 of 74 Page ID
#:131258
Case 2:04-cv-09049 L-RNB Document 63 Filed 07 2006 Page 15 of 18

1  § 17200.

2      **9.    "Fraudulent" Conduct**

3          Bryant also argues that the same conduct complained of in connection with his

4  fraud claim also supports a § 17200 claim based on the prohibition against

5  "fraudulent" conduct. This claim is not cognizable. Bryant's fraud claim, explored

6  more fully in the following section, is based upon Mattel's alleged failure to explain to

7  him the terms of the Employment Agreement. However, to allege a "fraudulent

8  business practice" under § 17200, a plaintiff must allege that "members of the public

9  are likely to be deceived." Comm. on Children's Television, Inc. v. Gen. Foods Corp.,

10  35 Cal.3d 197, 211 (1983). Bryant has not alleged facts that would tend to establish

11  that the public might be deceived by Mattel's conduct regarding its employment

12  practices.

13  **E.    Fraud Claim**

14          The parties agree that Bryant's fraud claim is one for fraudulent concealment,

15  and that Bryant must allege all the elements set forth in Marketing West, Inc. v. Sanyo

16  Fisher Corp., 6 Cal.App.4th 603, 612-13 (1992): (1) Mattel must have concealed or

17  suppressed a material fact; (2) Mattel must have been under a duty to disclose the

18  fact to Bryant; (3) Mattel must have intentionally concealed or suppressed the fact with

19  the intent to defraud Bryant; (4) Bryant must have been unaware of the fact and would

20  not have acted as he did if he had known of the concealed or suppressed fact; and (5)

21  as a result of the concealment or suppression of the fact, Bryant must have sustained

22  damage. Bryant alleges that "Mattel required [him] to execute the [Employment]

23  Agreement without disclosing to him its true import and terms." Counterclaims ¶ 56.

24  Bryant's claim is, in essence, that Mattel failed to inform him of the potential legal

25  effect the Agreement might have; in other words, Bryant claims that Mattel failed to

26  fully explain the Agreement to him. This does not support a fraudulent concealment

27  claim.

28          Bryant argues, based on Marketing West, that because Mattel chose to

15

EXHIBIT 1 PAGE 83

Case 2:04-cv-09049-DOC-RNB   Document 4513-5   Filed 12/23/08   Page 18 of 74   Page ID
#:131259
Case 2:04-cv-09049-JJL-RNB   Document 63   Filed 07/__/2006   Page 16 of 18

1    respond to his inquiries, Mattel was under a duty to disclose material facts. Under

2    Marketing West, where a party is "under no duty to speak" but nevertheless

3    "undertakes to do so, either voluntarily or in response to inquiries, he is bound not only

4    to state truly what he tells but also not to suppress or conceal any facts within his

5    knowledge which materially qualify those stated." Marketing West, 6 Cal.App.4th at

6    613 (citing Rogers v. Warden, 20 Cal.2d 286, 289 (1942)) (internal quotation marks

7    omitted). In other words, one who speaks "must make a full and fair disclosure." Id.

8          Bryant makes no allegations that suggest that anyone at Mattel falls into this

9    category. He alleges that he was "presented with the form Agreement by Mattel," and

10   that "he was told that his execution of the Agreement was a condition of his

11   employment." Counterclaims ¶ 26. He then alleges that "[t]he terms of the Agreement

12   were not explained to him." Id. This is not the situation discussed in Marketing West

13   which, not surprisingly, prohibits a party from disclosing only that part of the truth that

14   favors it. Here, Bryant's allegations complain that Mattel did not disclose anything

15   regarding the Employment Agreement.

16   **F.   Rescission**

17          Bryant asserts that rescission is proper because (1) the Agreement was

18   obtained through fraud; (2) Mattel required Bryant to execute the document as a

19   condition of employment, which resulted in duress; and (3) Mattel did not explain the

20   terms of the Agreement to Bryant, did not give him sufficient time to review it, and did

21   not permit or encourage him to seek legal counsel regarding the Agreement.

22          Bryant failed to state a fraud claim; therefore, rescission based on his fraud

23   claim would be improper.

24          Bryant's allegations do not meet the standard for duress, and Mattel's failure to

25   encourage him to seek legal counsel also does not require rescission of the

26   Employment Agreement. See Robison v. City of Manteca, 78 Cal.App.4th 452, 457

27   (2000). Additionally, although Bryant argues that he was not "given a meaningful

28   opportunity to review the Agreement at the time he executed it," he does not allege

EXHIBIT 7   PAGE 94

Case 2:04-cv-09049-DOC-RNB    Document 4513-5    Filed 12/23/08    Page 19 of 74    Page ID
#:131260
Case 2:04-cv-09049-DL-RNB    Document 83    Filed 01/2006    Page 17 of 18

1 │ that he asked for, and was refused, sufficient time to actually read the Agreement with

2 │ which he was presented.

3 │ **G.   Declaratory Relief**

4 │       Finally, in his fourth counterclaim, Bryant seeks declaratory judgment that

5 │ Mattel's conduct in requiring Bryant and other employees to execute the Employment

6 │ Agreement constitutes unfair competition and unfair business practices in violation of

7 │ Cal. Bus. & Prof. Code §§ 17200 and 16600.  This claim for declaratory relief fails

8 │ because the underlying § 17200 fails.

9 │       Bryant also seeks a declaration that the Employment Agreement is unlawful

10 │ and unenforceable as to him and as to other current and former employees of Mattel.

11 │ See Bryant's Counterclaims ¶¶ 61-65. As discussed previously, Bryant has no

12 │ standing to assert claims on behalf of anyone other than himself.  As discussed

13 │ throughout this Order, Bryant has not sufficiently alleged that the Employment

14 │ Agreement is unlawful or unenforceable as to him.

15 │ **H.   Ruling on Motion to Dismiss (04-09059)**

16 │       The Motion to Dismiss is **GRANTED** in its entirety.  Bryant requested in his

17 │ Opposition for an opportunity to amend his counterclaims.  Therefore, the Court

18 │ dismisses Bryant's counterclaims without prejudice.  Bryant may file Amended

19 │ Counterclaims that conform with this Order within ten days of the entry of this Order.

20 │ **IV. Conclusion**

21 │       For the reasons set forth above, the Court **GRANTS** the Motion to Dismiss in

22 │ 04-09049 and **DISMISSES WITHOUT PREJUDICE** Bryant's action for declaratory

23 │ relief.  The Court also **GRANTS** the Motion to Dismiss in 04-09059, and **DISMISSES**

24 │ **WITHOUT PREJUDICE** Bryant's counterclaims.  Bryant is granted ten days' leave to

25 │ amend the counterclaims in conformity with this Order.

26 │

27 │

28 │

EXHIBIT 7 PAGE 95

Case 2:04-cv-09049-DOC-RNB   Document 4513-5   Filed 12/23/08   Page 20 of 74   Page ID
#:131261
Case 2:04-cv-0904    )L-RNB   Document 63   Filed 0    /2006   Page 18 of 18

1        Although this Order dismisses the Complaint in 04-09049, any future filings in

2   the consolidated action shall continue to be filed under 04-09049 in conformity with

3   the Court's consolidation order.

4        IT IS SO ORDERED.

5   DATE:   7 - 17 - 06

6

7                                          STEPHEN G. LARSON
                                           UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 8



FILED
CLERK, U.S. DISTRICT COURT

JUL 10 2008

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION          BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MATTEL, INC.,<br><br>     Plaintiff,<br><br>  vs.<br><br>MGA ENTERTAINMENT, INC.,<br><br>     Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>**FINAL JURY INSTRUCTIONS AS GIVEN** |

EXHIBIT 8 PAGE 51

## JURY INSTRUCTION NO. 28

As a matter of law, Carter Bryant owed both a fiduciary duty and duty of loyalty to Mattel.

Mr. Bryant's fiduciary duty to Mattel is predicated upon paragraph 1(a) of the Inventions Agreement and is related to Mr. Bryant's obligation to keep Proprietary Information confidential.

Section 1(a) of the Inventions Agreement provides:

"I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust."

The Inventions Agreement defines the term "Proprietary Information" as follows:

EXHIBIT 8 PAGE 88

1    "'Proprietary Information' means any information (including formula,

2    pattern, compilation, device, method, technique or process) that derives

3    independent economic value, actual or potential, from not being generally known

4

5    to the public or to other persons who can obtain economic value from its disclosure

6    or use, and includes information on the Company, its customers, suppliers, joint

7    ventures, licensors, licensees, distributors, and other persons and entities with

8    whom the Company does business."

9

10

11   As a matter of law, Mr. Bryant breached his duty of loyalty to Mattel when

12   he entered into a contract with MGA, Mattel's competitor, while still employed by

13

14   Mattel, to produce a line of fashion dolls to be marketed in direct competition with

15   Mattel's products.

16

17

18   At the same time, merely seeking employment from a competitor, and a

19   failure to notify an employer of a decision to seek new employment until a

20   decision is final, does not constitute a breach of duty of loyalty.

21

22

23

24

25

26

27

28

-32-                   Case No. Case No. CV 04-9049 SGL (RNBx)
                       JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT 8 PAGE 69

# EXHIBIT 9

Case 2:04-cv-09049-DOC-RNB Document 4513-5 Filed 12/23/08 Page 26 of 74 Page ID
#:131267
Case 2:04-cv-09049-SGL-RNB Document 3285 Filed 04/25/2008 Page 1 of 8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                          Date: April 25, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC., v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
========================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Jim Holmes
            Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:     ATTORNEYS PRESENT FOR MATTEL:

None Present                             None Present


ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

**PROCEEDINGS:   ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN
                 PART THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT
                 (IN CHAMBERS)**

    This matter is before the Court on the parties' motions for partial summary judgment.  The
motions were heard on April 22, 2008, and the Court has set the motions for further hearing on
May 19, 2008, at 1:30 p.m.  As set forth below, the Court rules on a number of issues presented
by the motions for partial summary judgment and reserves ruling on other issues until after further
hearing on the motions for partial summary judgment and, in the case of MGA's affirmative
defenses, until after the Phase 1 trial.

    The parties have made hundreds of objections to evidence offered in support of and in
opposition to the motions for partial summary judgment.  Although counsel for Bryant requested

MINUTES FORM 90                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                            Page 1

EXHIBIT **9** PAGE **90**

explicit rulings on the objections raised by Bryant, the Court declines to do so. To the extent that
this Order necessarily relies on evidence subject to any party's objections, the objections are
implicitly overruled.

**PREEMPTION**

MGA and Bryant seek summary judgment in their favor as to Mattel's claims for intentional
interference with contractual relations, conversion, and unfair competition, arguing that these
claims are preempted by the Copyright Act. They are partially correct.

A state law is preempted by the Copyright Act where (1) the work at issue comes within the
subject matter of copyright, and (2) the state law rights are "equivalent to rights within the general
scope of copyright[.]" Del Madera Properties v. Rhodes and Gardner, Inc., 820 F.2d 973, 977 (9th
Cir.1987). "If a state law claim includes an 'extra element' that makes the right asserted
qualitatively different from those protected under the Copyright Act, the state law claim is not
preempted by the Copyright Act." Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1089 (9th Cir.
2005). Generally the Copyright Act does not preempt the enforcement of contractual rights. Id.

As to the first element, the intentional interference with contractual relations claim
addresses generally an issue within the subject matter of copyright -- the underlying wrong upon
which the claim is premised is Mattel's deprivation of rights to intellectual property.

As to the second element, it is clear that the tort of intentional interference with contractual
relations is neither categorically preempted or categorically saved from preemption; rather, the
Court must engage in a determination of whether the substance of the tort claim differs
qualitatively from the copyright claim at issue. Compare Altera, 424 F.3d at 1089 (holding that a
intentional interference claim was not preempted because it was based not on copyrights but on a
contractual provision) with Laws v. Sony Music Entertainment, Inc., 448 F.3d 1134, 1144 (9th Cir.
2006) (holding preempted a singer's voice misappropriation claim was not qualitatively different
from her copyright claim).

Here, to the extent that the tortious interference is premised upon MGA's alleged
interference with any copyrights that Mattel may have under the Inventions Agreement, it is
preempted. Such a claim is not qualitatively different from Mattel's copyright claim. However, to
the extent that the claim is based on MGA's acts that may be found to have aided and abetted the
breach or induced the breach of Bryant's fiduciary duty, the claim is not preempted. That claim is
qualitatively different from Mattel's copyright claim.

Therefore, the tortious interference with contractual relations is preempted to the extent
that it is based on Mattel's rights to Bratz. It is not preempted as to Mattel's claims for breach of
fiduciary duty.

The parties' arguments regarding the conversion claim address two distinct issues:
Conversion of ideas and conversion of tangible things. The Court addresses each in turn.

EXHIBIT __9__ PAGE __91__

Case 2:04-cv-09049-DOC-RNB   Document 4513-5   Filed 12/23/08   Page 28 of 74   Page ID
#:131269
Case 2:04-cv-09049-SuL-RNB   Document 3285    Filed ⌐√/25/2008   Page 3 of 8

Both sides acknowledge, as this Court certainly agrees, that one cannot copyright an idea. Thus, it would seem, a claim for conversion of ideas is not subject to preemption because it is not "within the subject matter of copyright." Del Madera, 820 F.2d at 977. MGA argues that ideas are not subject to a claim of conversion, to which Mattel responds that such rights in ideas may be created by contract. Mattel relies on Desny v. Wilder, 46 Cal.2d 715, 733 (1956) which, remarkably, so holds. However, that case does not support the proposition that a breach of such rights may be remedied by the tort claim of conversion rather than a breach of contract claim. The law in California regarding the tort of conversion's applicability to ideas remains the same today as in 1956: "The tort of conversion does not apply to ideas." Melchior v. New Line Productions, Inc., 106 Cal.App.4th 779 (2003). Therefore, although this claim is not preempted, it is not actionable as a tort claim. Accordingly, summary judgment in favor of MGA and Bryant is granted as to this particular claim.

Mattel also argues that its conversion claim is not preempted to the extent that it seeks the return of tangible things, most notably the original Bratz drawings. This claim is "within the subject matter of copyright," but the state rights go beyond the rights protected by the Copyright Act by allowing for the return of property.

At oral argument, counsel for MGA argued that Mattel seeks the rights that the drawings represent, not the "paper and ink" of which those drawings are comprised. Mattel disagreed with that interpretation, noting that it seeks the return of the original drawings and certain sculpts to which it may have rights under the Inventions Agreement.

The items to which Mattel lays claim are not like the manuscript at issue in Dielsi v. Falk, 916 F.Supp. 985, 992 (C.D. Cal. 1996), or the government documents at issue in Idema v. Dreamworks, Inc., 162 F.Supp.2d 1129, 1192-93 (C.D. Cal. 2001), both of which had value merely for their ability to hold and convey their contents. Rather, the materials Mattel seeks are works of art that may have value apart from the copyrights they represent or the "paper and ink" and other materials of which they are comprised. Given the role of the drawings and sculpts in developing a new, commercially successful line of fashion dolls, and given the role of these items in the present litigation, the Court discerns a possible inherent value to the materials themselves.

MGA and Bryant also pressed at oral argument that Mattel had not advanced such a claim for return of tangible items. The Court disagrees. Citing to its Complaint at ¶ 157, Mattel contends it has long sought the return of tangible items.[1] An examination of Mattel's claim for conversion reveals that it encompasses such a claim. Therefore, the conversion claim seeking the return of tangible items is not preempted. MGA and Bryant's motions for summary judgment on this issue are therefore denied.

To the extent that Mattel's statutory unfair competition claim, discussed more fully below, is

_____

[1] From a review of the record, it is clear to the Court that Mattel intended to cite ¶ 157 of its Amended Answer and Counterclaims, not its Complaint.

Initials of Deputy Clerk: jh

EXHIBIT 9 PAGE 92

Case 2:04-cv-09049-DOC-RNB Document 4513-5 Filed 12/23/08 Page 29 of 74 Page ID
#:131270
Case 2:04-cv-09049-SuL-RNB    Document 3285    Filed ./25/2008    Page 4 of 8

based on copyright infringement, it is preempted, and the Court grants summary judgment in favor of MGA on this issue.

## STATUTE OF LIMITATIONS

The Court heard argument at length on the statute of limitations issue. Although it is not entirely clear, it appears to the Court from the hearing and from MGA's Rule 56(f) affidavit, that there remain outstanding discovery matters that may have the potential, if resolved in MGA's favor, to factor into the inquiry into the determination of the date of the accrual of any claims against Bryant and/or MGA. Accordingly, the Court defers ruling on the issue of statute of limitations at this time.

## INVENTIONS AGREEMENT

The Court addressed many issues of the enforceability of the Employee Confidentiality and Inventions Agreement in its July 17, 2006, Order. The Court finds no good reason to revisit or revise that Order.

Bryant argues that the Inventions Agreement is ambiguous on the issue of whether it covered anything other than "inventions" as that term is used in patent law. Here, Bryant was a fashion designer. He signed an agreement that assigned his "inventions" to Mattel. "Inventions" is defined by the agreement to include "designs," which was undeniably the focus of Bryant's employment with Mattel. In addition to assigning all rights to Bryant's "inventions" (i.e., "designs") to Mattel, the agreement also assigned to Mattel "all [Bryant's] right, title, and interest in any . . . copyrights . . . and copyright applications based [on those inventions]".

In order to conclude that the Inventions Agreement is ambiguous on the issue of whether it would include any copyrightable drawings or doll designs developed by an employee, the Court would have to read out of the agreement explicit terms assigning to the employer the rights to "designs," "copyrights," and "copyright applications." The Court is required to read the contract as a whole and, where possible, give effect to all its terms. Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."). To accept the interpretation advanced by Bryant, the Court would have to disregard this bedrock principle of contract construction by ignoring an explicit assignment by the employee to the employer of copyrights. The interpretation advanced by Bryant is therefore not reasonable, and the Court finds that the Inventions Agreement is not ambiguous on the issue of its scope with respect to copyrightable materials.

The Inventions Agreement explicitly conveys to Mattel an employee's interest in any copyrights or copyright applications. Assuming copyrightability and the resolution of certain (as yet unresolved) issues of timing of creation and/or alteration in Mattel's favor, the original Bratz drawings clearly fall within the scope of the Inventions Agreement.

Moreover, the Inventions Agreement incorporates, and therefore does not violate, Cal.

Initials of Deputy Clerk: jh

EXHIBIT 9 PAGE 93

Labor Code § 2870. Pursuant to that statute (and its incorporation in the Inventions Agreement), because the subject matter at issue -- the Bratz dolls -- relate to Mattel's business of marketing fashion dolls, the factual question of whether Bryant worked on them on his own time, rather during his working hours at Mattel, is not relevant.

MGA argues that contracts of adhesion are unenforceable if they are either outside the scope of the parties' expectations or they are substantively unconscionable. The Court previously determined that the Inventions Agreement was not substantively unconscionable, and now determines that it is not outside the scope of the parties' expectations. As noted above, Bryant was a designer, and the plain language of the Inventions Agreement assigns his "designs" to his employer. Objectively, therefore, it would not be surprising that Mattel would lay claim to Bryant's rights to any doll or doll fashions he designed during the period of his employment with Mattel. Moreover, undisputed evidence establishes that Bryant's subjective understanding of the contract was that it transferred at least some of his rights to Mattel.

Bryant also argues that his actions went no further than lawful preparations to compete with his employer. The undisputed facts, however, tell a different story: Bryant directly competed with Mattel by entering into a contract with its competitor to produce a competing product while still employed by Mattel.

The Court grants summary judgment in favor of Mattel on the issue of the enforceability of the Inventions Agreement and the issue of applicability of the Inventions Agreement to any Bratz-related "inventions" (including any designs, improvements, ideas, concepts, and copyrightable subject matter) that he is found to have created during the period of his employment with Mattel.

## DUTY OF LOYALTY AND FIDUCIARY DUTY

Carter Bryant, like all other California employees, owed a duty of loyalty to Mattel while employed there. See Cal. Labor Code § 2863. The undisputed facts establish that he breached this duty by entering into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products. See Huong Que, Inc. v. Luu, 150 Cal.App.4th 400, 414 (2007) ("The duty of loyalty is breached, and the breach may give rise to a cause of action in the employer, when the employee takes action which is inimical to the best interests of the employer.") (internal quotation marks and citation omitted).

Bryant also owed a fiduciary duty to Mattel by virtue of the language set forth in ¶ 1(a) of the Inventions Agreement. Id. ("The value of the Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust."). Under California law, a confidential relationship that gives rise to a fiduciary duty is created "where a confidence is reposed by one person in the integrity of another, and . . . the party in whom the confidence is reposed . . . voluntarily accepts or assumes to accept the confidence . . . ." City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1050-51 (N.D. Cal. 2002). The Inventions Agreement imposed such a duty on Bryant.

Initials of Deputy Clerk: jh

EXHIBIT 9 PAGE 94

Case 2:04-cv-09049-DOC-RNB  Document 4513-5  Filed 12/23/08  Page 31 of 74  Page ID
#:131272
Case 2:04-cv-09049-DUL-RNB    Document 3285    Filed 4/25/2008    Page 6 of 8

At the hearing on this matter, counsel contended that a required element for imposing a
fiduciary duty -- that the party with the duty be in a superior position to the party to whom the duty
is owed -- was missing. That element is described as follows: "[T]he essence of a fiduciary or
confidential relationship is that the parties do not deal on equal terms, because the person in
whom trust and confidence is reposed and who accepts that trust and confidence is in a superior
position to exert unique influence over the dependent party." City Solutions, Inc. v. Clear Channel
Communications, Inc., 201 F.Supp.2d 1048, 1050 (N.D. Cal. 2002) (internal quotation marks and
citation omitted).  The "superior position" to which California courts refer in this context is not
superior bargaining power -- a position on which Mattel would apparently have the edge -- but
rather it refers to a superior position vis-à-vis the duty imposed. Here, because the duty imposed
upon Bryant was essentially to police his own actions by maintaining Mattel's confidentiality and
communicating his own "inventions" to Mattel, Bryant was "in a superior position to exert unique
influence over" Mattel because he was in the best position, arguably the only one in a position, to
know of and police his actions.

As with the duty of loyalty, the undisputed facts establish that Bryant breached his fiduciary
duty to communicate his inventions to Mattel when, rather than doing so, he secretly entered into
a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion
dolls to be marketed in direct competition with Mattel's products.

Accordingly, the Court grants Mattel's motion for summary judgment on the issues of the
existence and breach of the duty of loyalty.  The Court grants Mattel's motion for summary
judgment and denies Bryant's motion for summary judgment on the issue of the existence and
breach of a fiduciary duty.

In its motion, MGA argued that there can be no liability for aiding and abetting a breach of
fiduciary duty in the absence of a fiduciary duty.  Because the Court has rejected this argument,
the Court denies MGA's motion for summary judgment on this issue.

### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

MGA moved for summary judgment as to Mattel's claim for intentional interference with
contractual relations.

The elements of a claim for intentional interference with contractual relations are stated as
(1) a valid contract between a plaintiff and a third party; (2) the defendant's knowledge of the
contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the
contractual relationship; (4) actual breach or disruption of the contractual relationship; and
(5) resulting damage. Family Home & Finance Center, Inc. v. Federal Home Loan Mortg. Corp.,
461 F.Supp.2d 1188, 1193 (C.D. Cal. 2006) (citing Pac. Gas & Elec. Co. v. Bear Stearns Co., 50
Cal.3d 1118, 1126 (1990)).

The undisputed facts show that the first, third, and fifth elements are met.  Mattel has
raised a triable issue of fact as to the second.  The fourth element may be resolved after the

Initials of Deputy Clerk: jh

EXHIBIT 9 PAGE 95

# NOTICE PARTY SERVICE LIST

**Case No.**   CV 04-09049 SGL(RNBx)   **Case Title**   Carter Bryant v. Mattel, Inc.

**Title of Document**   Minute Order of April 25, 2008

|   | |
|---|---|
|   | Atty Sttlmnt Officer Panel Coordinator |
|   | BAP (Bankruptcy Appellate Panel) |
|   | Beck, Michael J (Clerk, MDL Panel) |
|   | BOP (Bureau of Prisons) |
|   | CA St Pub Defender (Calif. State PD) |
|   | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
|   | Case Asgmt Admin (Case Assignment Administrator) |
|   | Catterson, Cathy (9th Circuit Court of Appeal) |
|   | Chief Deputy Admin |
|   | Chief Deputy Ops |
|   | Clerk of Court |
|   | Death Penalty H/C (Law Clerks) |
|   | Dep In Chg E Div |
|   | Dep In Chg So Div |
|   | Federal Public Defender |
|   | Fiscal Section |
|   | Intake Section, Criminal LA |
|   | Intake Section, Criminal SA |
|   | Intake Supervisor, Civil |
|   | PIA Clerk - Los Angeles (PIALA) |
|   | PIA Clerk - Riverside (PIAED) |
|   | PIA Clerk - Santa Ana (PIASA) |
|   | PSA - Los Angeles (PSALA) |
|   | PSA - Riverside (PSAED) |
|   | PSA - Santa Ana (PSASA) |
|   | Schnack, Randall (CJA Supervising Attorney) |
|   | Statistics Clerk |

|   | |
|---|---|
|   | US Attorneys Office - Civil Division -L.A. |
|   | US Attorneys Office - Civil Division - S.A. |
|   | US Attorneys Office - Criminal Division -L.A. |
|   | US Attorneys Office - Criminal Division -S.A. |
|   | US Bankruptcy Court |
|   | US Marshal Service - Los Angeles (USMLA) |
|   | US Marshal Service - Riverside (USMED) |
|   | US Marshal Service -Santa Ana (USMSA) |
|   | US Probation Office (USPO) |
|   | US Trustee's Office |
|   | Warden, San Quentin State Prison, CA |

| ✓ | **ADD NEW NOTICE PARTY** (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Ambassador Pierre-Richard Prosper

Firm:

Address (include suite or floor):  P.O. Box 581103

Salt Lake City,  UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

* For CIVIL cases only

| *JUDGE / MAGISTRATE JUDGE (list below):* |
|---|
| |
| |
| |
| |

Initials of Deputy Clerk jh

EXHIBIT 9 PAGE 96

# NOTICE PARTY SERVICE LIST

Case No.   CV 04-09049 SGL(RNBx)   Case Title   Carter Bryant v. Mattel, Inc.

Title of Document   Minute Order of April 25, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service -  Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✓ | ***ADD NEW NOTICE PARTY*** (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Hon. Edward A. Infante (Ret.)

Firm:

Address *(include suite or floor)*: Two Embarcadero

Center, Suite 1500, San Francisco,  CA  94111

*E-mail:

*Fax No.:

* For CIVIL cases only

| ***JUDGE / MAGISTRATE JUDGE (list below):*** |
|---|
| |
| |
| |
| |

Initials of Deputy Clerk jh

EXHIBIT 9 PAGE 97

# EXHIBIT 10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                          Date: May 21, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx): MATTEL, INC., v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
========================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes                          Theresa Lanza
          Courtroom Deputy Clerk              Mark Schweitzer
                                              Court Reporters

ATTORNEYS PRESENT FOR CARTER BRYANT:    ATTORNEYS PRESENT FOR MATTEL:

Christa M. Anderson                     John B. Quinn
Matthew M. Werdegar                     Michael T. Zeller
                                        Jon D. Corey

ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

Thomas J. Nolan
Jason D. Russell

PROCEEDINGS:   ORDER RE MOTION FOR RECONSIDERATION

               ORDER RE THE PARTIES' MOTIONS FOR PARTIAL SUMMARY
               JUDGMENT

MINUTES FORM 90
CIVIL -- GEN                        Page 1

Initials of Deputy Clerk: jh
Time:  2/52

EXHIBIT 10 PAGE 98

This matter is before the Court on the parties' motions for partial summary judgment and Carter Bryant's and MGA's motion for reconsideration.[1] The motions were heard on April 22, 2008, and again on May 19, 2008. On April 25, 2008, the Court issued an order granting in part, denying in part, and deferring in part the motions for partial summary judgment.

The Court now issues the following further rulings regarding the motions for partial summary judgment and the motion for reconsideration.

## MOTION FOR RECONSIDERATION

The motion for reconsideration is based on the new California Supreme Court case of City of Hope Nat'l Medical Center v. Genentech, Inc., 43 Cal. 4th 375 (2008). After fulling considering City of Hope, however, the Court finds that the case has little applicability to the present case and does not compel a conclusion regarding the existence of a fiduciary duty contrary to that reached by the Court.

City of Hope addresses whether a fiduciary duty can arise (or fail to arise) by operation of law due to the existence of confidential contractual relationship. At issue in this case is whether the parties' agreement itself created a fiduciary duty. Under California, these two situations that may give rise to a fiduciary duty -- operation of law or agreement -- are distinct, and California courts have long distinguished between the two. Despite this clear distinction, Carter Bryant's partial summary judgment papers conflated these principles, as does the motion for reconsideration.

Related to these distinct legal concepts, there is a crucial factual difference between the present case and City of Hope. The contract at issue in City of Hope did not contain any language that even arguably gave rise to a fiduciary duty. In contrast, the contract at issue here, for the reasons set forth in the Court's April 25, 2008, Order, sets forth language that does give rise to such a duty.

MGA contends that this Court committed reversible error by holding that the language set forth in ¶ 1(a) of the Inventions Agreement created a fiduciary duty. City of Hope, MGA contends, held that "the entrusting of secret or confidential information to another 'does not compel the imposition of fiduciary duties by operation of law.'" Motion at 6 (quoting City of Hope). As alluded to above, this argument, as well as the other two raised by MGA in the motion, overlooks both the differing contractual language in City of Hope and the present case, as well as the related legal distinction regarding the creation of fiduciary relationships. Factually, the Inventions Agreement

---

[1] At the hearing, upon representation of settlement between Mattel and Carter Bryant, and pursuant to the stipulation between Mattel and Carter Bryant, the motion is moot as to Carter Bryant. However, the Court considers the motion because MGA has joined in the motion on the issue of fiduciary duty. As set forth on the record, because the claims against Carter Bryant have been dismissed, the Court treats MGA as the moving party.

EXHIBIT 10  PAGE 99

did more than merely entrust Bryant with confidential information; rather, as noted in the Court's first summary judgment Order, the Inventions Agreement explicitly conferred upon Bryant, and Bryant explicitly agreed to accept, a "position of trust" vis-à-vis that confidential information. No such explicit undertaking is found in the agreement at issue in City of Hope, the relevant portions of which are set forth in the California Supreme Court opinion.

On that note, the portion of City of Hope upon which MGA relies to support its argument addresses when a fiduciary relationship arises by operation of law. This argument is merely a continuation of Bryant's conflation, first appearing in Bryant's moving and opposition summary judgment papers, of fiduciary relationships that are created by contract and those that arise as a matter of law. The Court's summary judgment holding clearly rests on the former; the arguments raised on reconsideration are premised on the latter. Compare City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1050-51 (N.D. Cal. 2002) (cited by the Court and noting that a confidential relationship that gives rise to a fiduciary duty is created "where a confidence is reposed by one person in the integrity of another, and . . . the party in whom the confidence is reposed . . . voluntarily accepts or assumes to accept the confidence . . . .") with City of Hope, 43 Cal.4th 375, ___, 75 Cal. Rptr.3d 333, 347 (relied on by Bryant for the proposition that the entrusting of confidential information "does not compel the imposition of fiduciary duties by *operation of law*") (emphasis added).

Although the majority of the motion for reconsideration is unmeritorious, it raises important issues, which the Court must address, regarding the scope of the fiduciary duty created, as well as the breach thereof.

Although the parties argued at length as to whether the Inventions Agreement gave rise to a fiduciary duty, they did not focus on the scope of the fiduciary duty that was created. As noted in the Court's April 25, 2008, Order, the Court held Bryant had undertaken such a duty:

> Bryant . . . owed a fiduciary duty to Mattel by virtue of the language set forth in ¶ 1(a) of the Inventions Agreement. Id. ("The value of the Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.").

April 25, 2008, Order at 5.

The Court also concluded that Bryant had breached that duty:

> [T]he undisputed facts establish that Bryant breached his fiduciary duty to communicate his inventions to Mattel when, rather than doing so, he secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products.

EXHIBIT 10  PAGE 100

Id. at 6.

Upon re-examination of the Inventions Agreement, however, although the Court can conclude that, as a matter of law, Carter Bryant agreed to undertake a fiduciary duty vis-à-vis Mattel's confidential information, the Court cannot make the same conclusion -- as a matter of law -- regarding whether the fiduciary duty extends beyond Mattel's confidential information.

The language creating the fiduciary relationship appears in the section of the Inventions Agreement related to "Trade Secrets" and "Proprietary Information," and is preceded by language (in the same sentence) that Mattel depends upon employees to "maintain that confidentiality." Just above the signature line of the Inventions Agreement, reference is made again to "IMPORTANT OBLIGATIONS OF TRUST," but that language is clearly meant not to create new obligations, but rather to alert the employee that those obligations are created elsewhere within the agreement.

The question of whether an agreement creates a fiduciary duty is generally a question of fact, although a Court may resolve the question as a matter of law where the relevant facts are uncontroverted. See City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1051 (N.D. Cal. 2002); GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc., 83 Cal.App.4th 409, 417 (2000). Here, although the Court concludes as a matter of law that the Inventions Agreement imposed a fiduciary duty as to Mattel's confidential information, it cannot reach a similar conclusion regarding any broader duty based on the undisputed facts.

Accordingly, the Court **VACATES** the above-quoted language from its April 25 Order finding that Bryant breached his fiduciary duty and leaves the determination of whether Bryant's fiduciary duty beyond Mattel's confidential information as an issue for trial.[2]

·One more point raised in the motion for reconsideration is worthy of note. Although Carter Bryant has been dismissed from the case, he raised at least one issue in his motion, in which MGA has not joined, that should not pass without comment by this Court.[3] Clearly, and perhaps understandably, counsel for Carter Bryant were disappointed by the Court's rulings as set forth in the first summary judgment order.[4]

---

[2] The Court also notes that its previous holding necessarily rested on a finding that the materials provided to MGA were indisputably Mattel's property. As set forth in section I, relating to the summary judgment breach of contract issue, that conclusion cannot be drawn as a matter of law on the undisputed facts, and thus summary judgment may not appropriately be granted.

[3] Upon the Court's expression of concern regarding this issue at the hearing on this matter, counsel for MGA explicitly disavowed any joinder in this part of Bryant's motion.

[4] The Court addresses this part of the Order to counsel because counsel are officers of the Court and authors of the comment at issue. The Court also references "counsel" in the plural rather than the singular because all counsel -- author, editor, and signatory -- who were involved in this comment bear responsibility therefor.

EXHIBIT 10 PAGE 101

However, in addressing what they saw as the deficiencies in the Court's Order, counsel painted with far too broad a brush. Rather than focus the Court's attention on a discrete issue -- or even a number of discrete issues -- counsel resorted to broad language incorporating every argument raised in their summary judgment papers and, without articulated foundation, impugns the integrity of this Court's deliberative process. Nowhere is this more clear than in footnote 7 of the motion for reconsideration; accordingly, the Court's discussion focuses on that portion of the motion, which reads as follows:[5]

> In deciding Mattel's motion for summary judgment, the Court should have applied this standard in Bryant's and MGA's favor.  On this issue, and many others, the Court has failed to do so, instead accept Mattel's views of disputed facts and ignoring material factual disputes. Indeed, the Court declined to address objections to evidence, apparently and summarily sustaining all Mattel's objections while denying all Bryant's.  Bryant will not reiterate here all of the disputed facts and issues precluding summary judgment in Mattel's favor, which already appear in his (and MGA's) summary judgment briefing and supporting papers.

Motion at 11 n.7.

With this footnote, counsel first takes issue with the Court's application of the summary judgment standard, of which counsel and the Court are well aware.  This standard requires the Court to view the evidence in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of the doubt of both any disputes of fact and all reasonable inferences to be drawn from the evidence.  Nevertheless, the Court's focus is on **material** facts, and the determination of what constitutes a material fact is shaped by legal rulings made by the Court. Some facts that seem material to the parties under their legal theories become immaterial in light of the Court's rulings that reject those theories.

In footnote 7, counsel misrepresents the Court's treatment of the evidence offered in support of and in opposition to the three motions for partial summary judgment.  Bryant states that the Court "apparently summarily sustain[ed] all Mattel's objections [and] den[ied] all Bryant's [evidentiary objections]." Id.  However, the Court merely noted that, where a ruling necessarily relied upon evidence to which parties had made objections, the objections thereto were implicitly overruled:

---

[5] Footnote 7, however, is not the only offending portion of the motion for reconsideration. See e.g., Motion at 2 n.1 (referring to "the Order's other errors, including misapplication of the summary judgment standard," stating that those errors "will also require correction," but noting that the motion "does not discuss those flaws in detail"); motion at 9 n.5 (incorporating unspecified portions of his summary judgment briefing).

Initials of Deputy Clerk:  jh
Time:  2/52

EXHIBIT 10 PAGE 102

> The parties have made hundreds of objections to evidence offered in support of and in opposition to the motions for partial summary judgment. Although counsel for Bryant requested explicit rulings on the objections raised by Bryant, the Court declines to do so. To the extent that this Order necessarily relies on evidence subject to any party's objection, the objections are implicitly overruled.

April 25, 2008, Order at 1-2. This is a vastly different statement than that made by counsel. Counsel's characterization of the Court's ruling implies that the Court, without inquiry into the merits of Bryant's objections, arbitrarily denied them all. The Court's Order merely recognizes that, by operation of law, to the extent a court relies upon objected-to evidence, and where, as where, the evidence must be admissible to be relied upon for such ruling, any objections raised thereto are implicitly overruled.

In addition to mounting an overly broad -- and baseless -- attack on the integrity of the Court's deliberative process on a grand scale, counsel fail to support the more narrow point they appear to be making in footnote 7. Footnote 7 is appended to text that takes issue with the Court's conclusion that Bryant did nothing more than merely "prepare to compete" with his employer and, thus, in Bryant's view, did not breach his duty of loyalty or fiduciary duty. See Motion at 10.

Although the footnote does not alert the Court to any particular material facts -- disputed or undisputed -- which counsel contend were overlooked by the Court, the text to which the footnote is appended provides valuable clues on this issue. From this text, the Court's attention is directed to Bryant's Opposition at 23-24. The Court notes that the pages of that document refer to no factual contentions; rather, those pages are devoted to legal arguments and conclusions. However, reading further in the opposition, at page 29, the Court finally encounters a citation to the facts upon which counsel rely. They reference "SGI 151" and SGI "154-156".

Although obvious to counsel who practice in this district, and certainly to counsel of record here, to guide the uninitiated, the Court notes that in a summary judgment opposition filed in this Court, "SGI" clearly refers to the "Statement of Genuine Issues" filed by a party opposing a summary judgment motion. See Local Rule 56-2. Referring to that document, found at docket # 2778, one finds that material facts are numbered sequentially, and that "SGI 151" refers to the fact numbered "151." The subsequently cited facts, "154-156," not surprisingly, are found on the page that follows.

Having thus traversed this far to ascertain the material facts upon which counsel relies for its sweeping criticism of the Court's deliberative process, the Court notes those facts below.

Bryant signed the MGA contract on October 4, 2008, and gave notice of his resignation to Mattel the same day. SGI 151. Before Bryant left Mattel, he told various Mattel employees, including managerial employees, that he was going to start his own business as a freelance designer, working on his own doll line as an independent contractor. SGI 154. Mattel's exit interview form for Bryant reflects that during his exit interview, he told Mattel's HR representative,

MINUTES FORM 90
CIVIL -- GEN                                    Page 6                        Initials of Deputy Clerk: jh
                                                                              Time: 2/52

EXHIBIT 10 PAGE 103

Sandy Yonemoto, that he was leaving for a new job as a "business owner" in "illustration/product design" because an "[o]pportunity arose – had to take it." SGI 155.  Bryant did not tell anyone at Mattel that he was leaving Mattel to work with a non-competitor, nor did Mattel inquire.  SGI 156.

In accordance with the summary judgment standard, the Court viewed these facts in the light most favorable to Bryant.  However, on the "preparations to compete" point, these facts are not material.  They relate to the circumstances of his departure; essentially, Bryant's point is that he did not lie to Mattel when he left.  Although this may well be true, the circumstances surrounding the announcement of his resignation and the last days of his employment with Mattel tell only part of the story.

Even assuming Bryant gave notice of his resignation to Mattel the same day he signed his contract, it is uncontroverted that he continued working for Mattel after that date; so Bryant's fact, which tends to imply that he made a clean break with Mattel the moment he established a contractual relationship with MGA, becomes immaterial when viewed in connection with the uncontroverted fact that he continued working for Mattel after he signed his MGA contract, as the latter fact neutralizes the implication presented by the former fact when it stood alone. Additionally, notwithstanding the fact that Bryant gave notice of his resignation the same day he signed his contract, the substance of his contract remains the same, including Bryant's agreement to begin working for MGA on a "top priority" basis, as does the undisputed fact that he entered into a contract with Mattel's competitor to produce a competing product while he was still employed by Mattel.

Moreover, the fact that he gave Mattel various descriptions of what he intended to do professionally *in the future*, any one of which might imply that he was leaving to pursue independent interests that would compete with or had a tendency to compete with Mattel, similarly does not detract from his past and/or then-present actions, or the fact that he was already under contract to compete with Mattel.

Thus, counsel's criticism of the Court's deliberative process is both overly broad and unfounded.  Perhaps footnote 7 should come as no surprise to the Court.  The parties in this action are engaged in what they themselves have described as high-stakes "corporate warfare." However, whatever the rules of engagement may be for such warfare, those rules are decidedly **not** representative of the standard of conduct which the parties -- and their counsel -- should look to for guidance as to how they should conduct themselves in or before this Court.

Counsel for Carter Bryant, and indeed, all counsel in this case and who practice before this Court, are strongly urged to concisely and precisely articulate their requests for relief in a manner that refrains from the unintentional impugning of the integrity of the Court's deliberative process. Counsel for all parties are reminded that this Court has extended to all counsel and all parties a similar professional courtesy.

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** the motion for

EXHIBIT 10 PAGE 104

reconsideration. The Court **VACATES** that portion of its April 25, 2008, order that found, as a matter of law, that Bryant breached his fiduciary duty.

## MOTIONS FOR PARTIAL SUMMARY JUDGMENT

### I. BREACH OF CONTRACT

Mattel seeks summary judgment on its breach of contract claim. Resolution of the breach of contract issue is largely an issue of timing.

There are undisputed facts regarding the timing of the creation of three categories of materials, but there are factors regarding each of these three categories that preclude a grant of summary judgment at this time.

Specifically, it is uncontroverted that four drawings (each with a color and a black-and-white version) of dolls in evening wear, were created by Bryant during the period of his employment with Mattel. However, the scope of the rights that may be assigned to Mattel under the Inventions Agreement is unclear in light of the larger disputed factual issue regarding the remaining Bratz drawings.

It is also undisputed that, during the period of his employment, Bryant created a dummy doll, anticipating it would used in his pitch of Bratz to MGA. However, this dummy is apparently no longer in existence, and therefore the scope of any rights owned by Mattel cannot be ascertained from the undisputed facts.

Finally, it is undisputed that a drawing by Bryant, from which the sculpt of the Bratz doll was made, was created during the period of Bryant's employment with Mattel. However, the record also reflects that this drawing was made on the basis of an earlier sculpt, and the record is not entirely clear as to who had input into that sculpt, nor is it clear what, if any, legal conclusions the Court could draw from a clear record on this issue.

Additionally, the larger timing issue regarding the remaining Bratz drawings, as admitted by the parties, involve triable issues of fact.

Accordingly, the Court **DENIES** Mattel's motion for summary judgment as to its claim for breach of contract.

### II. COPYRIGHT INFRINGEMENT

In order to establish copyright infringement, a plaintiff must establish three elements: (1) ownership of a valid copyright, (2) the defendant's access to the original, and (3) substantial similarity between the copyrighted work and the allegedly infringing work. Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1144 (9th Cir. 2003).

EXHIBIT 10 PAGE 105

Here, Mattel asks the Court to undertake the fact-specific determination involved in the third element, aided in large part by expert testimony, when the first element is clearly in dispute. Although often summary adjudication of one element of a claim is appropriate, such is not the case here. In order to undertake the substantial similarity analysis, the Court must compare a copyrighted work with an allegedly infringing work. The Court may not perform a meaningful substantial similarity analysis without the copyrighted work that is the foundation of that analysis.

Accordingly, the Court **DENIES** Mattel's motion for summary judgment on this issue.

### III. AIDING AND ABETTING

MGA and Larian are accused of aiding and abetting Bryant's breach of the duty of loyalty and breach of fiduciary duty.

For reasons ably set forth by counsel for MGA at the hearing, the Court finds that there are triable issues of fact as to the issue of aiding and abetting any breaches of the duty of loyalty and fiduciary duty by Carter Bryant and therefore **DENIES** Mattel's motion for summary judgment on this issue.

### IV. INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

MGA moved for summary judgment as to Mattel's claim for intentional interference with contractual relations. The Court previously denied MGA's motion, noting however, that the first, third, and fifth elements were met, and that Mattel has raised a triable issue of fact as to the second element.[6]

However, upon reflection, and in light of the Court's ruling regarding the aiding and abetting claims, the Court now concludes that, although Mattel has raised a triable issue of fact regarding the third element, the Court may not at this point conclude that the undisputed facts establish the third element. The Court leaves undisturbed its ruling that Mattel has raised a triable issue of fact as to the second element.

As set forth above, Mattel has also raised triable issues of fact regarding its claim for breach of contract, the fourth element.

Despite these minor changes in the Court's previous ruling, the disposition of this portion of

---

[6] The elements of a claim for intentional interference with contractual relations are stated as (1) a valid contract between a plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. Family Home & Finance Center, Inc. v. Federal Home Loan Mortg. Corp., 461 F.Supp.2d 1188, 1193 (C.D. Cal. 2006) (citing Pac. Gas & Elec. Co. v. Bear Stearns Co., 50 Cal.3d 1118, 1126 (1990)).

**EXHIBIT 10  PAGE 106**

MGA's motion remains unchanged: MGA's motion is **DENIED** to the extent it seeks summary judgment on Mattel's claim for intentional interference with contractual relations.

## V. UNFAIR COMPETITION

As noted by counsel for MGA at the May 19, 2008, hearing, the Court's first summary judgment left unaddressed Mattel's statutory unfair competition claim to the extent that is based on fraudulent conduct. Mattel did not contend in opposition to MGA's motion for partial summary judgment that this claim was based on any fraudulent conduct.

In its first summary judgment order, the Court eliminated two bases for Mattel's statutory unfair competition. See April 25, 2008, Order (referring to the unfair competition claim to the extent it is based on copyright infringement and to the extent it is based on unfair conduct). The Court now holds that this third basis can also be eliminated at this time.

## VI. STATUTE OF LIMITATIONS

At the second hearing on the motions for partial summary judgment, for the first time, counsel for MGA referenced evidence in support of its statute of limitations argument, attached to a declaration that had not been served on opposing counsel and that had been filed earlier the same afternoon. Counsel thereafter made legal arguments regarding the conclusions to be drawn from this evidence.

Mattel had little opportunity to respond to MGA's arguments, as it was not entirely clear at the hearing to what evidence MGA referred in making its arguments. Accordingly, the Court has afforded Mattel the opportunity to respond to this argument and therefore **DEFERS** ruling on the statute of limitations issue until the Court has had the opportunity to review Mattel's response.

**IT IS SO ORDERED.**

EXHIBIT 10 PAGE 167

# EXHIBIT 11

CALENDARED

ENTERED
CLERK, U.S. DISTRICT COURT

JAN 1 2 2006

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION        BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT,

                        Plaintiff,

v.

MATTEL, INC.,

                        Defendant.

and related actions.

CASE NO. CV-04-9049-SGL

(Consolidated with cases CV-04-9059 and CV-05-2727)

ORDER REGARDING MATTEL'S MOTION FOR LEAVE TO AMEND

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(D).

This case has, increasingly, become one of the proverbial tail wagging the proverbial dog.

Back in April, 2004, Mattel, Inc., ("Mattel") filed a complaint in Los Angeles County Superior Court against its former employee and the reputed creator of the BRATZ dolls, Carter Bryant.  The complaint pressed five separate state-law theories relating to certain agreements Bryant signed while an employee with Mattel, namely, an Employee Confidential Information and Inventions Agreement ("Inventions Agreement") and a Conflict of Interest Questionnaire ("COI Questionnaire").  Although couched in state law terms and ostensibly pled as a simple employment action, lurking beneath the allegations in the complaint was whether Bryant had either misappropriated Mattel's intellectual property or

EXHIBIT \_\_ PAGE \_\_

1   resources in creating and/or developing the BRATZ dolls or whether he continued
2   to develop his BRATZ design while still working in Mattel's employ. In either event,
3   the rights to the BRATZ dolls could become the property of Mattel, either through
4   infringement or through operation of the agreements noted above. The case was
5   later removed to this Court and was assigned the case number CV-04-9059. MGA
6   Entertainment, Inc. ("MGA"), the maker of the BRATZ doll line, then intervened "to
7   protect its rights to Bratz dolls" that were at stake in the action. Mattel, Inc. v.
8   Bryant, 446 F.3d 1011, 1012 (9th Cir. 2006); see also id. at 1013 ("Mattel argues, 'a
9   significant risk of prejudice' to MGA [exists] if the ownership of rights to intellectual
10   property, i.e., the Bratz creations, were decided in the absence of MGA").

11       In the interim, Bryant filed a declaratory judgment action in this Court,
12   seeking for the Court to declare that his BRATZ doll creations did not infringe
13   Mattel's copyright in its Toon Teens products. See Court's July 18, 2006, Order at
14   3 (noting that, although "Bryant's complaint . . . makes reference to 'other Mattel
15   products,' . . . the substance of his allegations all address the product 'Toon
16   Teens'"). The declaratory judgment action was assigned the case number CV-04-
17   9049.

18       MGA then filed an action against Mattel in this Court broadening the scope
19   of the controversy beyond that concerned with the ownership rights to the BRATZ
20   doll line. MGA's complaint asserted various Lanham Act claims and their California
21   state law equivalent arising out of Mattel's alleged "habitual and unfair tactics of
22   competition-by-intimidation and serial copycatting of MGA's products." (Compl.
23   ¶ 7). In essence, although the prior actions were concerned with ownership in the
24   rights to the BRATZ doll line, the allegations in 05-2727 concerned whether there
25   had been unlawful efforts to block the marketing of those rights in the BRATZ dolls.
26   MGA's complaint did make mention of other products that were affected by Mattel's
27   alleged predatory business practices, but by far the largest portion of its complaint
28   concerned Mattel's conduct in undermining (or seeking to undermine) MGA's rival

2

EXHIBIT 11 PAGE 109

1  line of BRATZ dolls.[1]

2  By Order dated June 19, 2006, the Court consolidated all three cases "for all
3  purposes" as they "involve[d] a number of common issues of law and fact." As the
4  Court later noted in its August 10, 2006, Order: "At its heart, this case asks the
5  question: Who owns the rights to the Bratz dolls?" Resolution of this question lies
6  at the heart of or, at the very least, affects many of the other claims set forth in
7  each of the three respective cases. For instance, even though the allegations in
8  05-2727 concern Mattel's alleged efforts at defeating the marketing of the BRATZ
9  dolls, resolution of who owned the rights to the BRATZ dolls could serve to moot
10 many of those allegations. It is hard to imagine how it is unlawful for a company to
11 thwart or otherwise undermine the marketing of a product it owns. Thus, if Mattel
12 owned the rights to the BRATZ dolls, many of the allegations in the 05-2727
13 complaint would become moot. That said, such consolidation did not do away with
14 the distinctions that do exist between the three cases. As the Court highlighted in
15 its consolidation order, when either party files a pleading in the case, "the first
16 paragraph of [that] document . . . shall inform the Court to which case(s) the
17 document relates."

18 On July 18, 2006, the Court dismissed Bryant's declaratory judgment action,
19 04-9049, finding there existed no reasonable apprehension of an imminent
20 copyright infringement claim being filed against him by Mattel based on Mattel's
21 Toon Teen intellectual property. See Court's July 18, 2006, Order at 4. The
22 Court's Order was predicated entirely upon counsel for Mattel's representation
23 during oral argument that it "will not maintain that Bratz infringes the copyright in
24 Toon Teens." Owing to this representation, the Court, in dismissing the declaratory
25 judgment action, made clear that any future "claim by Mattel of copyright

26

27  [1] That the marketing of the BRATZ dolls lies at the heart of the issues
    between the rival doll makers in the 05-2727 case is best illustrated by the Court's
28  discussion of those allegations in its August 26, 2005, Order, Granting in Part and
    Denying Part Mattel's Motion to Strike portions of MGA's complaint.

3

EXHIBIT 11 PAGE 110

1   infringement based on the Toon Teens product is barred by counsel's

2   representation." July 18, 2006, Order at 4.

3      Presently before the Court is Mattel's request for leave to file an amended

4   complaint in the 04-9059 action. The complaint broadens considerably the nature

5   of the action from its genesis in state court. Whereas before the complaint simply

6   sought to litigate alleged contractual and fiduciary breaches by Bryant while in the

7   employ of Mattel (no doubt geared toward procuring a legal basis for Mattel to lay

8   claim to the BRATZ doll line), the amended complaint adds five more defendants

9   and nine new legal claims, alleging a wide range of commercial disputes between

10  the rival doll makers that spans three countries. For instance, the amended

11  complaint now contains RICO claims, a misappropriation of trade secrets claim,

12  and various aiding and abetting claims all stemming from allegations that MGA

13  cherry-picked certain high-ranking Mattel executives in foreign markets (many also

14  named as defendants in the amended complaint) or designers (namely, Bryant),

15  and then enticed or encouraged those same individuals to steal various trade and

16  proprietary secrets (be it sales plans, sales projections, customer profiles, or

17  intellectual property) from Mattel and hand them over to MGA before going to work

18  at MGA.

19     Moreover, the amended complaint expands upon the existing breaches of

20  contract and fiduciary duty claims in the original complaint by expanding the

21  universe of former employees (namely, the cherry-picked executives) to whom

22  those claims now apply.

23     Finally, Mattel now makes plain what was always lurking in its original

24  complaint — a copyright claim, but one directed not only to Bryant but also to MGA,

25  MGA's Hong Kong subsidiary, and MGA's President and CEO Isaac Larian.

26  Moreover, Mattel characterizes its copyright claim somewhat differently from that at

27  issue in Bryant's declaratory relief action: "The Amended Complaint does not

28  include a claim for infringement of copyrights in Toon Teens, but rather

4

EXHIBIT \\ PAGE \\\

1 infringement of copyrights in Bratz." (Reply to MGA Opp. at 11). Toward that end,

2 Mattel has recently filed copyright registrations with the U.S. Copyright Office

3 claiming ownership in various BRATZ doll design drawings penned by Bryant.

4 A. ANALYSIS

5 Federal Rule of Civil Procedure 15(a) provides that, once a responsive

6 pleading has been served, "a party may amend the party's pleading only by leave of

7 court or by written consent of the adverse party; and leave shall be freely given

8 when justice so requires." With no consent to Mattel's proposed filing proffered by

9 MGA and Bryant, determining whether to grant Mattel leave to file an amended

10 complaint is gauged by looking to the familiar formulation of factors set forth by the

11 Supreme Court in Forman v. Davis:

> In the absence of any apparent or declared
> reason—such as undue delay, bad faith or dilatory
> motive on the part of the movant, repeated failure to
> cure deficiencies by amendments previously allowed,
> undue prejudice to the opposing party by virtue of
> allowance of the amendment, futility of amendment,
> etc.—the leave sought should, as the rules require, be
> 'freely given.' Of course, the grant or denial of an
> opportunity to amend is within the discretion of the
> District Court, but outright refusal to grant the leave
> without any justifying reason appearing for the denial is
> not an exercise of discretion; it is merely abuse of that
> discretion and inconsistent with the spirit of the Federal
> Rules.

20 371 U.S. 178, 182 (1962).

21 MGA and Bryant offer the following reasons for denying Mattel leave to

22 amend: (1) Mattel has long known of the factual predicates underlying its copyright

23 and intentional interference claims but delayed in asserting them; (2) the proposed

24 amendment to add the copyright claim and the intentional interference claims

25 (against the new defendants) are futile because they are barred by the applicable

26 statute of limitations; (3) the copyright claim had been brought in bad faith by Mattel

27 because of its prior public disavowal of an intent to assert such a claim; and (4)

28 MGA and Bryant would incur undue prejudice were the copyright claim added to the

5

1 suit because of alleged spoilation of evidence issues involving Mattel's ZEUS
2 computer system used by doll designers at Mattel and its e-mail system. None of
3 these arguments are persuasive.

4     1.     Awareness of Factual Predicate for Copyright and Intentional
5           Interference Claims

6     MGA argues that Mattel has long known about the factual predicate for its
7 recently added copyright claim, observing that, "[o]ver four years ago, in August
8 2002, Mattel CEO Bob Eckert received an anonymous letter stating that Bryant
9 created the project that became the 'Bratz' dolls — and worked with MGA to 'steal'
10 that project — while still employed at Mattel." (MGA Opp. at 9). Similarly, MGA
11 argues that Mattel has long known of the factual predicate for its intentional
12 interference claim with respect to Bryant's contract given that, "[b]y Mattel's own
13 admission, it learned in November 2003 — more than three years ago — that
14 Bryant had signed a contract with MGA 'dated as of' a month prior to his final day at
15 Mattel." (MGA Opp. at 11-12).

16     At the outset it must be observed that "[m]ere delay in proffering an
17 amendment does not justify denying leave to amend." Sierra Club v. Union Oil Co.
18 of California, 813 F.2d 1480, 1493 (9th Cir. 1987), vacated on other grounds by,
19 485 U.S. 931 (1988), and reinstated by, 853 F.2d 667 (9th Cir. 1988). Seizing upon
20 this point of law, Mattel argues that "only in . . . cases" when "granting leave would
21 require discovery to be reopened after summary judgment motions have been filed"
22 has the Ninth Circuit found the denial of leave "justified" based on the passage of
23 time alone. (Reply to MGA Opp. at 3). That is incorrect. There is a line of cases
24 from the Ninth Circuit finding that, if a "party seeking amendment knows or should
25 know of the facts underlying the amendment when the original complaint is filed,
26 the motion to amend may be denied." Sierra Club, 813 F.2d at 1493 (citing Jordan
27 v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982)). And, recently, the
28 Ninth Circuit upheld the denial of leave to amend based on the passage of time

6

EXHIBIT 11 PAGE 113

1  even though the requested leave to amend was tendered before the time, as set
2  forth in a Rule 16(b) pre-trial scheduling order, for amending pleadings had expired.
3  See AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946 (9th Cir. 2006).
4  The Ninth Circuit observed that, even when a request for leave to amend is timely
5  under a Rule 16(b) schedule for pretrial motions, the district court may nonetheless
6  still deny the request based on any of the Forman factors. Id. at 951-52. The Ninth
7  Circuit then noted that the issue of untimeliness (regardless of whether the
8  amendment is tendered "within the period of time allotted by the district court in a
9  Rule 16 scheduling order") in seeking to amend can constitute a justification for
10  denying leave to amend if "the moving party knew or should have known the facts
11  and theories raised by the amendment in the original pleading." Id. at 953.
12  Toward that end, the Ninth Circuit observed that "an eight month delay between the
13  time of obtaining a relevant fact and seeking a leave to amend is unreasonable."
14  Id. In this regard, the Ninth Circuit in Dialysist was unpersuaded by the fact that,
15  even though the moving party had known of the facts prompting the amendment for
16  a long period of time, there still remained eight more months of discovery for the
17  parties to marshal facts against the allegations raised by the amended pleading:
18  "Even though eight months of discovery remained, requiring the parties to scramble
19  and attempt to ascertain whether the Procrit purchased by AmerisourceBergen was
20  tainted, would have unfairly imposed potentially high, additional litigation costs on
21  Dialysist West that could have easily been avoided had AmerisourceBergen
22  pursued its 'tainted product' theory in its original complaint or reply." Id. Thus,
23  absent "a satisfactory explanation" for the delay in amending the complaint, the
24  Court is well within its rights to deny leave to amend. Id.

25      Mattel proffers the following reasons for taking the time that it did before
26  presenting its amended complaint: (1) Acting out of an abundance of caution to its
27  obligations under Rule 11 to present "factual contentions [that] have evidentiary
28  support," Mattel waited until its claims were better supported by evidence

7

EXHIBIT 11 PAGE 114

1    uncovered in discovery; and (2) the delay in the proceedings caused by "the year-

2    long stay and the parties' prior jurisdictional disputes" have left the case still in its

3    "nascent stage." (Reply to MGA Opp. at 2, 4).

4           The first reason is not well-founded. Rule 11 specifically allows parties to

5    aver factual allegations that "are likely to have evidentiary support after a

6    reasonable opportunity for further investigation or discovery" so long as the party

7    makes clear in its pleading that its factual contentions on those points are with the

8    caveat that they are based on a good faith belief that further discovery would

9    unearth evidence to support them. See FED. R. CIV. P. 11(b)(3). Simply put, Rule

10   11 did not stand in the way of Mattel averring the factual contentions it now claims it

11   "merely suspected" as being the case based on the limited information before it.

12   Mattel could have gone ahead and made such suspected factual allegations so

13   long as it caveated those claims with the declaration that it reasonably believed that

14   those allegations would be borne out by further discovery. Perhaps the time by

15   which Mattel could have reasonably believed such allegations would be borne out

16   by further discovery occurred after the dates noted by MGA, but it is hard to fathom

17   that such materialization took three or four years to occur.

18           The second reason would have some merit to it but for the fact that the

19   information that alerted (or should have alerted) Mattel to the existence of its now

20   asserted copyright and intentional interference claims was brought to Mattel's

21   attention well before the case was stayed on May 20, 2005. The stay, therefore,

22   did not operate as an obstacle to Mattel asserting its claims; nor even if it did, the

23   stay does not explain why Mattel waited nearly six months after the stay was lifted

24   on May 16, 2006, to present those claims now.

25           All of that being said, the one thing that gives the Court pause in denying

26   leave based on the tardiness in Mattel's presentation is the lack of any evidence

27   that MGA or Bryant have been prejudiced by the delay. Delay unconnected to

28   some showing of prejudice, be it prejudice to the parties or disruption in judicial

8

EXHIBIT 11 PAGE 115

●                                         ●

1 management of the case, does not suffice to deny granting leave to amend. The

2 Ninth Circuit has noted that, "where a defendant is on notice of the facts contained

3 in an amendment to a complaint, there is no serious prejudice to defendant in

4 allowing the amendment" even if it is made tardily. Sierra Club, 813 F.2d at 1493.

5 Indeed, the denial of leave was proper in the Dialysist case not simply because of

6 the length of the delay, but because the delay itself was "detrimental" in that it

7 would entail the opposing party to have "unfairly" incurred "potentially high,

8 additional litigation costs" that could have been avoided if the moving party had

9 made clear its intentions earlier. 465 F.3d at 953.

10        Here, as well demonstrated in Mattel's papers, it is readily apparent from the

11 pleadings filed by MGA and Bryant in this case that both have been aware for some

12 time of the factual predicates now underlying Mattel's copyright claim and

13 intentional interference claim. (See MGA Opp. at 5 ("As Bryant and MGA

14 suspected at the time of filing — and Mattel now concedes by conduct — those

15 deceptively-pled state-law claims [in 04-9059] were copyright infringement claims all

16 along")(emphasis added)). The parties have engaged in meaningful discovery

17 regarding many of the facts touched upon by these new claims, be it tracking down

18 experts in various forensic fields or taking depositions of various of the key players

19 to those claims. In point of fact, in their papers filed with this Court before this

20 present motion, both Bryant and MGA have made it abundantly clear that they have

21 long suspected that a copyright infringement claim was in the offing as evidenced

22 by Bryant's filing of the declaratory judgment action and MGA's intervention in the

23 05-9059 matter to protect its rights to the BRATZ dolls. Similarly, MGA and Bryant

24 have been on notice to the facts comprising the interference claim concerning

25 Bryant's contract as evidenced by the identity of the individuals who have been

26 deposed by Mattel, as well as the nature of the questions posed and the testimony

27 proffered at those depositions. MGA's argument that, with the amendments, it

28 faces the prospect of defending "against stale claims" owing to faded memories and

9

EXHIBIT __11__ PAGE __116__

1  loss of documents caused by the great passage of time, (see MGA Opp. at 3, 13),
2  is diminished by the fact that (no doubt owing to the sophistication of all counsel
3  involved) discovery on these very issues have been proceeding apace by both
4  sides long before Mattel filed its proposed amendments. This is simply not a case
5  where "additional litigation costs" will be "unfairly" visited upon Bryant and MGA by
6  allowing the proposed amendments; much of those costs have already been borne
7  by the parties for some time.

8      2.    Spoilation of Evidence

9      MGA next argues that Mattel's delay in bringing the amended complaint has
10  caused it prejudice as, in the interim, critical pieces of evidence have been or are
11  suspected of having become lost. For instance, MGA asserts that Mattel's Rule
12  30(b)(6) witness concerning its Zeus computer system, Julia Marine, testified that,
13  "although Mattel identified and segregated its most relevant backup tapes available
14  for Zeus, Mattel allowed its tape backup system to expire the database for those
15  backup tapes, thereby eliminating all information about what was actually stored on
16  those backup tapes." (MGA Opp. at 9-10). Information on the Zeus computer
17  system is critical because of Mattel's assertion that part of its copyright claim rests
18  on Bryant's exposure to Mattel development programs. (First Am. Compl. ¶ 26(a)).
19  As explained by MGA: "[C]oncept data and drawings created by [Mattel] design
20  center personnel are stored on Zeus. Thus, the electronic documents stored on
21  Zeus – which should include the metadata showing who created, edited and
22  accessed Mattel's concept drawings and designs – during the time Bryant worked
23  in the design center at Mattel is vitally important to defending against Mattel's
24  claims." (MGA Opp. at 14). MGA's argument is neither an accurate
25  characterization of Ms. Marine's testimony nor of the nature of Mattel's exposure
26  claim.

27      Ms. Marine did not testify that the information on the backup tapes (some
28  fifty in total) was lost, but rather that Mattel no longer carried the type of hardware

10

EXHIBIT 11 PAGE 117

1     that could restore the information still found on those tapes:

2            Q.    So if you wanted to restore that 2002 backup tape[s] then, how would you go about doing that?

3

                     . . . .

4            A.    You need the hardware so if we don't have the

5                      hardware — if [the technology used by the tape is] DLT we don't have the hardware and you've

6                      got to buy it and – well, first you have to find a place to put it with adequate power which we

7                      don't have in the design center. You need to have a tape library. You need to have the tape

8                      drives that carried those tapes. You need a server that has the capability to – that's big

9                      enough to handle all of the hardware. You need the software – the license for the backup

10                     software[, Net Backup]. You need the disk space to restore it to and then you have to start reading

11                     in all those tapes.

12            Q.    You said that you don't have that in the design center. Do you have that hardware anywhere

13                     else in the company?

14            A.    DLT? No, no.

15            Q.    At what point did you get rid of the hardware?

16            A.    Once the last backups — DLT backups expired so it would have been a couple years ago

17                     probably.

18     (Decl. Diana Torres, Ex. K at 118-119).

19        The above testimony clearly denotes the difficulty in restoring what was on

20     Mattel's Zeus computer system during the relevant time frame, but it certainly does

21     not demonstrate that the information on those backup tapes has been "eliminated"

22     or forever lost. Undoubtedly it will be a costly endeavor to recover that information

23     (not to mention to later search and sort through it); but to argue, as MGA does, that

24     the information is "unavailable" or "lost", (MGA Opp. at 9, 14), exaggerates its

25     plight. Indeed, Ms. Marine's testimony indicates that the difficulty in retrieving the

26     information on the Zeus backup tapes has been present for some time (maybe

27     since 2004 or perhaps even earlier). This is important because it undermines

28     MGA's claim that Mattel's undue delay in bringing its amended complaint will cause

11

EXHIBIT 11 PAGE 116

1  it to suffer prejudice it otherwise would not have faced if the amendments were
2  brought sooner. Such prejudice has been present for years, and Mattel's failure to
3  bring its amended complaint sooner would not have changed this situation.

4       Similarly, MGA's point that access to what was on the Zeus computer
5  system is vital in demonstrating that Bryant was not exposed to or otherwise did not
6  hack the system to steal other designers work is diminshed to some extent by the
7  fact that Bryant himself testified that he did not use the Zeus computer system and
8  was "pretty much computer illiterate" while employed at Mattel. Admittedly, the
9  ability to point to information on the Zeus system backup tapes to prove that Bryant
10  did not access other designers drawings or to prove the date those drawings were
11  created by those other designers would be useful evidence to negate Mattel's
12  factual claims. Nonetheless, such evidence still would not discount other avenues
13  outside of the Zeus computer system by which Mattel could seek to prove that
14  Bryant was exposed to its copyrighted works, e.g., witness testimony that Bryant
15  saw drawings of the same posted on other designers' cubicles.

16       MGA next surmises that Mattel's e-mail records have disappeared, not
17  because it has any proof on that point, but simply because Mattel has postponed
18  the deposition of the individual most knowledgeable of Mattel's e-mail records until
19  after the hearing on Mattel's motion for leave to amend. (MGA Opp. at 10).
20  Speculation of spoilation does not suffice. That MGA's argumentation on this point
21  is nothing more than speculation is best exhibited by the evidence it has proffered
22  in support of its argument: "[I]f the sole retained backup for Zeus is no longer
23  available, it is not hard to imagine that Mattel's electronic mail archives are similarly
24  out of reach." (MGA Opp. at 15 (emphasis added)). MGA then makes much of a
25  deposition from a Mattel executive, Alan Kaye, who testified that e-mails in his
26  inbox would be automatically deleted if they had remained there for more than a
27  certain time period. (Decl. Diana Torres, Ex. H at 292-93). MGA takes from this
28  acknowledgment that Mattel has an "automatic email deletion system" that has

12

EXHIBIT __11__ PAGE __119__

1    compromised Mattel's "duty to preserve documents." (MGA's Opp. at 14).
2    Noticeably absent from MGA's argument is any evidence that the e-mails so
3    deleted from a Mattel employee's inbox are forever lost or, as is far more likely,
4    whether such information remains or is otherwise archived on some backup file on
5    Mattel's computer system. Absent concrete proof that spoilation has occurred,
6    nothing in MGA's argument forms a basis for denying Mattel its requested leave to
7    amend.

8    3.    Statute of Limitations

9    MGA next argues that Mattel's copyright and intentional interference claims
10    are futile as both are barred by the applicable statute of limitations. This argument
11    was pressed emphatically at oral argument. With respect to the copyright claim,
12    MGA argues that the applicable statute of limitations is three years, with the
13    limitations period accruing from when a party has knowledge of a violation or when
14    a reasonably diligent person would have been put on inquiry of the infringement.
15    (MGA Opp. at 16 (citing Roley v. New World Pictures, 19 F.3d 479, 481 (9th Cir.
16    1994)). MGA argues that Mattel was put on notice about its copyright claim in
17    August, 2002, upon the receipt of the anonymous letter to Mattel's CEO that Bryant
18    had stolen the idea for BRATZ while working at Mattel. Thus, according to MGA,
19    the limitations period on Mattel's claim expired in August, 2005, rendering Mattel's
20    current copyright claim stale.

21    The problem with MGA's analysis is it fails to take into account the relations-
22    back principles found in Rule 15(c), which provides that "[a]n amendment of a
23    pleading relates back to the date of the original pleading when "the claim . . . in the
24    amended pleading arose out of the conduct, transaction, or occurrence set forth . . .
25    in the original pleading," or if such relation back is otherwise permissible by the
26    state "law that provides the statute of limitations applicable to the action." By
27    MGA's own admission Mattel's copyright claim arises out of the same conduct or
28    transaction contained in the original complaint filed in April, 2004, well within the

13

EXHIBIT _11_ PAGE _120_

1 applicable limitations period.[2] (MGA Opp. at 12 ("These very same allegations

2 [contained in the original complaint] underlie the copyright infringement and

3 intentional interference contract claims Mattel now seeks to allege against MGA,

4 Mr. Larian and Bryant")).

5     MGA's statute of limitations argument with respect to the intentional

6 interference claims fares no better. According to MGA, the applicable statute of

7 limitations is two years for an intentional interference with contract claim and Mattel

8 was aware of the facts alerting it to this claim (insofar as Bryant's contract is

9 concerned) on November 24, 2003, when it learned "that Bryant worked with MGA

10 to develop the 'Bratz' dolls prior to his last day of employment by Mattel and, hence,

11 prior to the expiration of his contractual relationship with Mattel."[3] (MGA Opp. at 18

12 (citing Knoell v. Petrovich, 76 Cal. App.4th 164, 168 (1999)) . Such a time line

13 would, according to MGA, mean that the applicable limitations period expired on

14 Mattel's interference with Bryant's contract claim on November 24, 2005, well

15 before Mattel sought leave to file its amended complaint. (Id). The problem again

16 with MGA's argument is that it ignores that through Rule 15(c) Mattel's intentional

17 interference claim would relate back to when it filed its original complaint in April,

18

19

20     [2] The same would appear to be true — that the amendments would be timely

21 — if the amendments related back to Mattel's answer (filed on May 13, 2005) to
MGA's complaint in the 05-2727 case.

22

23     [3] With respect to Mattel's interference with contract claim as to one of its
former executives, Ron Brawer, MGA claims Mattel was put on notice of that claim

24 on September 17, 2004, when Brawer informed Mattel that he leaving to go to work
for MGA. (MGA Opp. at 19-20). The problem with this argument is that nothing from

25 that simple event — Brawer's declaration of his intent to leave — in any way would
apprise Mattel that MGA had encouraged Brawer to engage in nefarious conduct

26 (the stealing of proprietary information) causing Brawer to breach his contract with
Mattel that he would not do anything to help a competitor while working for them.

27 MGA's contention that Mattel must have known of those misdeeds in mid-September

28 is nothing more than speculation. Futility cannot be founded on what might or might
not be the case; either a claim is futile to bring or it is not.

14

EXHIBIT 11 PAGE 121

1  2004, well before the limitations period expired.[4]

2       Accordingly, MGA's futility argument is not well-founded.

3       4.    Prior Disavowals of Asserting a Copyright Claim

4       Finally, MGA takes umbrage with the cageyness to which Mattel has taken in

5  this case as to whether or not it is asserting a copyright infringement claim against

6  it. To MGA, such ducking and weaving on Mattel's part renders its effort to now

7  bring such a copyright claim as one done in bad faith. No doubt the Court itself has

8  been subjected to Mattel's overly vague statements on this point, but in the end

9  nothing in those statements has ever foreclosed the possibility that such a claim

10  may be in the offing. Indeed, during the oral argument on Mattel's motion to

11  dismiss Bryant's declaratory judgment action, the Court pressed Mattel's counsel as

12  to whether it would assert such a copyright claim against Bryant as it is currently

13  seeking to do. The most that Mattel's counsel would proffer was that Mattel would

14  not assert a copyright claim against Bryant based on Mattel's copyright rights in

15  TOON TEENS. At that point, the Court directed the parties to engage in a meet

16  and confer based on counsel for Mattel's representation and to provide a report to

17  the Court based on those discussions. The report submitted to the Court made

18  clear that, although Mattel was willing to accede that it would not bring a copyright

19  claim based on TOON TEENS, it refused to accede to Bryant's broader request

20  that "Bryant 'never copied anything' and that no Mattel product has any 'relevance'

21  to any claim that Mattel has or ever will assert against Bryant." This by itself should

22  have dispelled any illusion either Bryant or MGA was operating under that Mattel's

23  prior statements had foreclosed any potential copyright claim against them.[5]

24

25       [4] Again the relations-back principle would also seem to render its claim timely
26  if it were filed as an amended answer (the original having been filed in May, 2005) in
   the 05-2727 case.

27       [5] MGA also argues that Mattel's effort to substitute MGA and its CEO, Isaac
28  Larian, for the "Doe" defendants listed in its original complaint is improper because
   Mattel knew of their identity when it filed the original complaint. The argument is

15

EXHIBIT 11 PAGE 122

1    That said, Mattel's allegation in the amended complaint as to how it is

2  seeking to lay claim to the copyright in BRATZ is disconcerting. Paragraph 26,

3  subsection a, in the amended complaint alleges that Bryant "misappropriated and

4  misused Mattel property" by "using his exposure to Mattel development programs to

5  create the concept, design and name of Bratz." (First Am. Compl. ¶ 26(a)). Such

6  "exposure" could include Bryant misappropriating the Mattel design concept in

7  TOON TEENS in drawing his inspiration for the BRATZ doll. Were Mattel's

8  copyright claim so predicated it would be barred by this Court's July, 2006, Order,

9  dismissing Bryant's declaratory judgment action. Mattel was pressed on this point

10  during oral argument and conceded that such "exposure" to Mattel "development

11  programs" did not include TOON TEENS. With this representation, nothing in

12  Mattel's proposed copyright claim is barred under the rubric of bad faith.

13    5.    Judicial Economy Considerations

14    In his opposition, Bryant adds an additional reason for denying leave beyond

15  those contained in MGA's papers — the amendment would muddy the waters in the

16  04-9059 by adding "tangential" issues that would only serve to delay resolution of

17  the key issue lying at the heart of the complaint: Who owns the rights to the

18  BRATZ line of dolls. (Bryant Opp. at 2 ). Bryant notes that the case has proceeded

19  apace in moving toward resolving that issue, and the amendment would "transform

20

21  misplaced. As made clear by Mattel, California law allows a plaintiff to substitute in a

22  defendant for a "Doe" if the plaintiff was ignorant of that defendant's identity or

23  ignorant of the basis for liability at the time the complaint was filed. See Miller v.
Thomas, 121 Cal.App.3d 440 (1981). MGA does not dispute this legal contention

24  but at oral argument disputed that Mattel did not know the basis for liability against
itself or Mr. Larian due to the "uncanny" similarity between the allegations averred in

25  the original complaint and those now proffered against the two in the amended
complaint. Specifically, MGA notes that the original complaint spoke of Bryant

26  working for one of Mattel's competitiors and of that employee's theft of Mattel's
intellectual property before leaving to work for that competitior. At most, all this

27  shows is that Mattel knew that Bryant went to work for MGA, not that MGA or Mr.

28  Larian encouraged Bryant's alleged unlawful behavior recited in the original
complaint.

EXHIBIT 11 PAGE 123

1  what Mattel has always claimed was a straightforward employment action against

2  an individual defendant into a global commercial dispute against Mattel's primary

3  competitor, MGA," that "will last years" thereby "delay[ing]" resolution of who owns

4  BRATZ.[6] (Bryant Opp. at 2). Mattel argues that "the law does not deny leave to

5  amend because claims are 'tangential'" and then reiterates its point that some

6  showing of prejudice, namely, seeking leave after expiration of discovery, is

7  necessary. (Reply to Bryant Opp. at 3). That is not entirely correct.

8       As noted previously, the Ninth Circuit recently upheld a denial for leave to

9  amend because the amendment would have "drastically changed" the litigation,

10  even though the leave request was tendered before the time, as set forth in a Rule

11  16(b) pre-trial scheduling order, for filing a motion to amend had expired and well

12  before the discovery cut-off. See AmerisourceBergen Corp. v. Dialysist West, Inc.,

13  465 F.3d 946, 953 (9th Cir. 2006). In justifying its reasoning the Ninth Circuit cited

14  approvingly to the following statement from a well-respected treatise: "If an

15  amendment substantially changes the theory on which the case has been

16  proceeding and is proposed late enough so that the opponent would be required to

17  engage in significant new preparation, the court may deem it prejudical." Id. at 953

18  n.2 (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE,

19  FEDERAL PRACTICE AND PROCEDURE § 1487 (2nd ed. 1990)). Thus, Dialysist

20  recognized that the introduction of "different legal theories" and/or proof of

21  materially different facts well into the litigation can itself be a basis for finding

22  prejudice regardless of whether the period for discovery has expired (or is even

23  close to expiring) or the parties have already filed summary judgment motions. Id.

24  at 953-54.

25       Although the parties can safely be said to be at this point well into the

26

27       ⁶ Bryant also brings intricate legal arguments about the sufficiency of the

28  allegations Mattel has averred in building its RICO claims against him. Such
    considerations are best left to be resolved on a properly filed motion to dismiss.

17

EXHIBIT __11__ PAGE _124_

1   litigation in this consolidated action (as evidenced by the protracted discovery
2   disputes contained in the docket sheet that the parties have had before the
3   magistrate judge and now the special master, and the litigation of motions to
4   dismiss in both the 04-9049 and 04-9059 cases), the fact remains that, as Mattel
5   has made painfully clear in its papers, no scheduling order has been entered in this
6   case.[7] This takes away somewhat from the prejudice Dialysist found to exist when
7   a "drastic change [in a party's] litigation theory" takes place mid-stream in the
8   litigation process. Id. at 953. Simply put, without a schedule for the filing of pre-trial
9   motions and other matters (e.g., discovery cutoff), the parties have been given free
10   reign in how to conduct the litigation in this case.

11        That the delay in bringing the proposed amendments and the relative length
12   of time into the litigation when those amendments were brought may not neatly fold
13   into Dialysist's reasoning does not mean that leave must nonetheless be granted.
14   The 04-9059 action, as it is presently constituted, is not a complex one. It asks a
15   rather narrow and straightforward question — Did anything from Bryant's
16   employment at Mattel during the 1999-2000 period give Mattel ownership rights to
17   the BRATZ doll line? The proposed amendments would radically alter the litigation
18   in that case to include far ranging disputes involving multiple parties and concerning
19   events not connected with the BRATZ ownership issue. That the original action
20   was a relatively simple and straight-forward matter raises another point beyond the
21   change in the action's litigation posture — whether entangling the rival doll makers'
22   other commercial disputes into this particular case would serve to muddy the waters
23   and make the matter that much more difficult to manage from the Court's
24   perspective.

25

26      [7] Mattel's repeated refrain that the matter is in its nascent stage as evidenced
by the fact that the parties only just recently exchanged in initial disclosures is
27   misleading. The exchange of initial disclosures referred to by Mattel is in the 05-
2727 case. With respect to the 04-9059 case it appears that such initial disclosures
28   were completed long ago as evidenced by the fact that discovery disputes appeared
in that case as far back as January, 2005.

18

EXHIBIT 11 PAGE 125

1    As has long been recognized, equally important in determining whether to
2  grant such leave is what impact such amendments would have on the court's ability
3  to manage the case. See 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE
4  § 15.15[1] at 15-42.1 to 15-43 (3rd ed. 2006)("A court should also consider judicial
5  economy and its ability to manage the case. . . . The court should also temper the
6  policy favoring freely granting leave to amend with consideration of the ability of the
7  district court to manage the case adequately if amendment is allowed"). As Judge
8  Clark for the Fifth Circuit once observed: "In keeping with the purposes of the rule,
9  the court should consider judicial economy and whether the amendments would
10  lead to expeditious disposition of the merits of the litigation. Finally, the court
11  should consider whether the amendment adds substance to the original allegations,
12  and whether it is germane to the original case of action." Chitimacha Tribe of
13  Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982); see also
14  Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1493 (9th Cir.
15  1987)("General considerations of judicial economy also justify allowing the
16  amendments. The violations included in the proposed amendment relate to the
17  same subject matter as the original complaint. Allowing the amendment will further
18  the federal policy of 'wrapping in one bundle all matters concerning the same
19  subject matter.'").

20    Mattel's amendments do not add substance to the claims contained in its
21  original complaint. Rather, they would expand the universe of claims and
22  defendants stretching well-beyond the questions raised in the original complaint
23  over whether Bryant's conduct while in the employ of Mattel subjected his later
24  attributed creation of the BRATZ dolls to the provisions in Mattel's Inventions
25  Agreement or otherwise rendered his creation subject to an infringement action.
26  Nowhere does Mattel seek to reconcile the breadth of its present amendments with
27  the narrowness of the allegations contained in its original complaint. In fact, the
28  precise opposite is true. Mattel acknowledges that its proposed amendments bear

19

EXHIBIT \\ PAGE 126

1    more congruity to the allegations leveled against it in MGA's Lanham Act case than

2    to those in the action to which it seeks to add them:

> [M]any of the matters raised by Mattel's proposed
> Amended Complaint are and will remain at issue
> because of MGA's Complaint, whether or not leave to
> amend is granted. MGA's claims allege that a broad
> array of purported Mattel conduct across the globe,
> starting at least as early as 1999, has violated the
> Lanham Act and unfair competition law. This includes
> Mattel's alleged infringement of Bratz and other MGA
> products. As a result, issues in the proposed Amended
> Complaint are already part and parcel of Mattel's
> defenses to MGA's unfair competition claims, including
> because they show that MGA and Bryant, and not
> Mattel, are ones who stole the products and other
> properties involved.

11   (Reply to Bryant Opp. at 7 (emphasis added)). Mattel apparently finds this

12   discongruity unimportant because "all of these matters have been consolidated with

13   the Bryant case." (Id. at 7). As noted earlier, the fact that the cases have been

14   consolidated does not mean that the parties can ignore the distinctions that still

15   exist between them. If, as Mattel acknowledges, the present amendments are

16   nothing more than re-formulated defenses and counterclaims it presently has to

17   MGA's complaint against it in the 05-2727 case, then such amendments should be

18   brought in the form of an amended answer and counterclaim in that case.

19       Consideration of the distinctions between the two cases is wise as it serves

20   as a useful tool in providing the Court a better means to manage the cases now

21   that they have been consolidated. The proverbial dog (ownership in BRATZ)

22   should be wagging the proverbial tail (the remaining commercial disputes), not the

23   other way around. Admittedly, the dog's tail has grown in size both by MGA's filing

24   of its complaint in the 05-2727 action and Mattel's response thereto through its

25   proposed amendments. Nonetheless, it is readily apparent to the Court that the

26   crown jewel in this action still remains the ownership rights to the BRATZ dolls. The

27   parties have engaged in extensive and undoubtedly expensive discovery on this

28   very issue (from hiring world-renowned experts to test the age of Bryant's design

20

EXHIBIT 11 PAGE 127

1   drawings to technically complex discovery of what is on each other's computers).

2        Indeed the separateness of the two matters is reflected in how the cases are

3   currently structured, namely, the narrowness of the issue involved in 04-9059 and

4   the expansiveness of the facts at issue in 05-2727. In light of this fact, the Court

5   believes a two-track scheduling order wherein the 04-9059 matter's discovery cut

6   off and trial date are set well-ahead of those in 05-2727 makes the most sense. As

7   noted earlier, many of the legal claims being pressed in 05-2727 will be affected by

8   the result of the litigation in 04-9059. If, for instance, Mattel does own the rights to

9   the BRATZ dolls (either owing to Bryant's stealing his idea from one of Mattel's

10   "development programs" or by way of the Inventions Agreement because he

11   continued to work on his designs while at Mattel), then large portions of MGA's

12   Lanham Act infringement claims may become moot. By the same token, if Mattel

13   does not own rights to BRATZ, then some of the defenses and counterclaims set

14   forth as independent claims in the present amended complaint may become moot,

15   including Mattel's copyright infringement claim as well as portions of its remaining

16   RICO, misappropriation, and aiding and abetting claims. If, however, the Court

17   were to allow the amended complaint to be filed in the 04-9059 action, such case

18   management would be difficult, if not impossible as many of the issues being

19   litigated in the 05-2727 case would have been poured into the 04-9059 case by the

20   amendment. Due to this substantial overlap in claims and facts, a two-track

21   scheduling order utilizing the case number distinctions would be impossible to craft.

22   When pressed by the Court at oral argument as to which of its proposed claims it

23   believed would not undermine the BRATZ ownership posture of the 04-9059 case,

24   Mattel cited to its copyright and RICO claims. However, upon further questioning

25   by the Court, counsel for Mattel acknowledged that much of those claims were, like

26   the claims at issue in 05-2727, dependent upon resolution of the ownership issue.

27        In light of the burden allowing Mattel's amendment to proceed would have on

28   this Court's ability to efficiently manage these consolidated matters denial of

21

EXHIBIT 11 PAGE 128

1   Mattel's request to amend its complaint in the 04-9059 matter is justified. See
2   Perrian v. O'Grady, 958 F.2d 192, 195 (7th Cir. 1992)("The burden to the judicial
3   system can justify a denial of a motion to amend 'even if the amendment would
4   cause no hardship at all to the opposing party'"). Buttressing the Court's decision is
5   the fact that, even with such a denial, Mattel may file (and the Court provides leave
6   to Mattel to so file) an amended answer and counterclaim in the 05-2727 case
7   raising all the new claims and defendants presently sought to be achieved through
8   amendment of its complaint in the 04-9059 action. None of the substantive
9   concerns raised by MGA and Bryant to the present amended complaint, e.g.,
10  statutes of limitations, would appear to be affected if the new claims and
11  defendants were brought as defenses and counterclaims in the 05-2727 case as
12  opposed to the 04-9059 one.

13      Accordingly, the Court GRANTS Mattel's motion for leave to file its proposed
14  amendments, but only insofar as they are pled in the form of an amended answer
15  and counterclaim in the 05-2727 case.

16      Finally, the lack of a scheduling order in this case is problematic; one should
17  have been entered long ago. See Fed. R. Civ. P. 16(b)(noting that a scheduling
18  "order shall issue as soon as practicable but in any event within 90 days after the
19  appearance of a defendant and within 120 days after the complaint has been
20  served on a defendant"). In light of the fact that entry of a scheduling order is
21  woefully overdue in this case, the Court hereby ORDERS that a Rule 16(b)
22  scheduling conference be held in this consolidated matter on February 12, 2007, at
23  1:30 p.m. in Courtroom One. The parties are directed to file a Joint Rule 26(f)
24  report with the Court by February 5, 2007.

25      IT IS SO ORDERED.

26  DATE: _/- //- o ꞁ_

27

28                          STEPHEN G. LARSON
                            UNITED STATES DISTRICT JUDGE

22

EXHIBIT \\ PAGE 129

# EXHIBIT 12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                                    Date:  May 27, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC., v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
=================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Gina Guzman
          Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:      ATTORNEYS PRESENT FOR MATTEL:

None Present                              None Present

ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

PROCEEDINGS:    ORDER RE STATUTE OF LIMITATIONS DEFENSE

        Each of the remaining parties to this action, Mattel and MGA, seek summary judgment on
the issue of statute of limitations.  Crucial to resolution of this issue, is application of California's
"discovery rule," which can delay the accrual of a claim.  Both parties have offered evidence in
support of their positions.[1]  For its part, Mattel contends that its claims against Carter Bryant arose
on November 24, 2003, and that its claims against the MGA entities, including MGA CEO Isaac
Larian, arose on November 4, 2004, the date of Carter Bryant's deposition, at which he testified
regarding MGA and Larian's involvement in his actions.

_____

    [1]  Although he is no longer a party, the Court discusses at length the timeliness of the
claims asserted against Carter Bryant because it is relevant to the Court's relation-back analysis of
the claims asserted against MGA.

5/27
EXHIBIT 12 PAGE 130

At oral argument and in its briefs, MGA argues at length that Mattel's claims against Bryant accrued some time shortly after Bryant left Mattel's employ in October, 2000. In support of this argument, MGA offered evidence that Mattel has always believed that it took nine months to bring a doll through the stages of development and to market. From that knowledge, in MGA's view, the sudden appearance of the Bratz dolls at a toy fair in Tokyo in January, 2001, should have aroused their suspicions.

MGA cites to the deposition of Bryant's co-worker, who had suspicions at the time Bryant resigned that Bryant was going to work for a competitor based on her subjective belief that Bryant would not pursue any other vocation other than doll designer.

MGA contends that Mattel could have looked at Bryant's phone records and determined that he had called MGA a number of times during the month pre-dating his resignation.

There is evidence that one of Bryant's co-workers believed it was "common knowledge," sometime in 2001, that Bryant probably designed Bratz.

The undisputed facts establish that in August, 2002, an anonymous letter was sent to Mattel's CEO stating that Bryant had designed Bratz. This letter is the first indication that Bryant may have worked on Bratz during the period of his employment with Mattel. See Zeller Decl. Ex. 63 ("While he was working with Mattel and working to create these dolls he worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls and the fact that they are rightly Mattel dolls.").

The undisputed facts also establish that on July 18, 2003, the Wall Street Journal published an article entitled "Dolled Up: To Lure Older Girls, Mattel Brings In Hip-Hop Crowd." In that article, MGA's CEO Isaac Larian is attributed with a statement that Carter Bryant was the creator of Bratz. The article states:

> Isaac Larian, chief executive of MGA, says he had never heard
> of a project similar to the Bratz at Mattel. He says he chose Mr.
> Bryant's idea for Bryant over several others after holding a sort of
> fashion-doll design contest in late 1999.

Zeller Decl. Ex. 118.

At the close of the second hearing, held on May 19, 2008, MGA offered, for the first time, evidence in the form of a time line that showed that a "claim" from a lawsuit filed in Hong Kong by MGA was received by Mattel on September 23, 2003. See Bogorad Supp. Decl. Ex. 145. A copy of court documents from that litigation shows that MGA claimed ownership of Bratz fashion dolls and that, more specifically, at issue were "17 design drawings of various fashion dolls between the years 1998 and 2000." Id. at Ex. 143. Exhibit 143 is a ten-page document captioned as "STATEMENT OF CLAIM" and appears to the Court to be, under Hong Kong law, the equivalent of a complaint. MGA's ownership to the 17 drawings referenced in the "STATEMENT OF CLAIM"

EXHIBIT 11 PAGE 131

was based on Bryant's creation of the design drawings during a time period that includes his employment at Mattel.  Id.

Also at this time, MGA offered a letter, dated October 17, 2003, from Mattel's Hong Kong counsel to Mattel, that discusses the propriety of providing to Mattel certain documents relating to the City World litigation. Within this letter, certain key details of the "STATEMENT OF CLAIM" were referenced. See Supp. Bogorad Ex. 146 ("One of the exhibits referred to in such Affirmation was a set of coloured drawings described as '17 initial concept and design drawings of the Bratz dolls made by Mr. Carter Bryant in the year 2000.'").

After being given an opportunity to respond to this last-minute evidence, Mattel offered as evidence the documents it received on September 23, 2003, and that evidence did not include the document marked as Ex. 143.  See Supp. Moore Decl. Ex. A.  The documents Mattel received do not include any reference to Carter Bryant or the dates of creation of the 17 drawings.  See id.  Instead, it consists of a copy of a "writ of summons" in that same litigation.

In responding to this evidence, counsel for MGA first incorrectly contended that the declaration of in-house counsel, Michael Moore, did not deny receiving a copy of the City World claim setting forth this key language.  Compare Reply at 1 ("**Mr. Moore, the only witness offered by Mattel, does _not_ deny that Mattel took possession of a copy of the City World claim on or about September 23, 2003.**") (emphasis in the original) with Supp. Moore Decl. ¶ 3 (attaching as Exhibit A all documents received from Mattel's Hong Kong counsel on September 23, 2003; noting that public access to court files in Hong Kong is limited; and verifying that the materials attached as Exhibit A (which does not include the key language regarding Carter Bryant's creation of Bratz drawings) "were the only ones relating to MGA's litigation that Mattel's Hong Kong counsel were allowed to obtain from the Hong Kong court files").

More disturbingly, however, counsel for MGA next lobbed unsubstantiated assaults on Mr. Moore's truthfulness.  Counsel states that the documents "appear to have been doctored or manipulated in some fashion." Reply at 2. Counsel does so because the fax itself has an anomalous pagination in the fax header line wherein the first ten pages are numbered "01, 02 . . . 10," and the numbers thereafter are numbered "11/46, 12/46 . . . 46/46." Supp. Moore Ex. A.

This Court has indicated on a number of occasions, most strikingly in connection with its consideration of Mattel's motion to disqualify counsel for MGA, that it will not countenance unsubstantiated dispersions cast upon opposing counsel.  Where there is **evidence** of unethical behavior, the Court expects to be made aware of that evidence; where, however, there is mere **speculation** of such behavior, no legitimate purpose is served by its airing.

Nevertheless, focusing on the additional evidence offered by MGA on May 19, 2008, the time line produced in connection with the Simpson-Taylor deposition makes reference to a City World "claim" that was received by Mattel on September 23, 2003.  Although this time line stops short of acknowledging that the document entitled "STATEMENT OF CLAIM" was received in

EXHIBIT 12 PAGE 132

September, it is nevertheless sufficient to controvert Moore's declaration regarding whether the
"STATEMENT OF CLAIM" was in fact received on this date. Moreover, the October 17, 2003,
letter raises an inference regarding the full scope of Mattel's pre-November 23, 2003, knowledge
of the contents of the "STATEMENT OF CLAIM."

It is uncontroverted that Mattel first received a copy of the Bryant-MGA contract, the
effective date of which pre-dated the effective date of Bryant's resignation from Mattel, on
November 24, 2003.

Where a plaintiff advances a state-law claim under California law, federal courts apply the
California "discovery rule" to determine whether the state-law claim is time-barred. See, e.g.,
Orkin v. Taylor, 487 F.3d 734, 741 (9th Cir. 2007).

The Court's analysis begins with the unremarkable proposition that "[a] plaintiff must bring a
claim within the limitations period after accrual of the cause of action." Fox v. Ethicon
Endo-Surgery, Inc., 35 Cal.4th 797, 806 (Cal. 2005) (citation omitted).  To apply this unremarkable
proposition, however, the Court must determine what the California Supreme Court means by
"accrual of the cause of action."

In that regard, the California Supreme Court has stated that, "[g]enerally speaking, a cause
of action accrues at the time when the cause of action *is complete with all of its elements*," id.
at 807 (emphasis added) (citation omitted), a phrase which itself must be expounded upon further
to ascertain its meaning. When applying the discovery rule, those "elements" are not "specific
legal element[s] of a particular cause of action"; rather, they are the "'generic' elements of
wrongdoing, causation, and harm." Id. (citation omitted).

The definition of those terms gives a more comprehensive understanding to the California
Supreme Court's statement that "the 'discovery rule' . . . postpones accrual of a cause of action
until the plaintiff discovers, or has reason to discover, the cause of action." Id. (citation omitted).
In turn, "[a] plaintiff has reason to discover a cause of action when he or she has reason at least to
suspect a factual basis for its elements." Id. (internal quotation marks and citation omitted).
Further refined, where a plaintiff has *knowledge* of at least one of the three generic elements, and
*suspicion* of the remaining generic elements, the claim has accrued and the limitations period has
begun to run. Id. (citation omitted).

This rule is designed to require plaintiffs to diligently investigate their potential claims. See
id. at 808. To that end, in the context of a personal injury action, the California Supreme Court has
stated that "plaintiffs are required to conduct a reasonable investigation after becoming aware of
an injury, and are charged with knowledge of the information that would have been revealed by
such an investigation." Id. Of course, this statement must itself be viewed with the definition of
"injury" the California Supreme Court considered: "At common law, the term 'injury,' as used in
determining the date of accrual of a cause of action, means both a person's physical condition and
its negligent cause. . . . Thus, physical injury alone is often insufficient to trigger the statute of
limitations." Id. at 808 n.2 (internal quotation marks and citation omitted).

MINUTES FORM 90
CIVIL -- GEN

Page 4

Initials of Deputy Clerk: gg
Time: 0/00

EXHIBIT Ⅴ PAGE 133

This requirement of diligence, stated otherwise, prohibits California plaintiffs from passively waiting for the facts supporting their claim to find them and places on them an affirmative requirement to investigate:

> Once the plaintiff has a suspicion of wrongdoing, and therefore an
> incentive to sue, she must decide whether to file suit or sit on her
> rights. So long as a suspicion exists, it is clear that the plaintiff must go
> find the facts; she cannot wait for the facts to find her.

Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1111 (Cal.1988).

The Jolly court discussed two examples in explaining this standard. First, it cited to Miller v. Bechtel Corp., 33 Cal.3d 868, 874 (Cal.1983), which held time barred the fraud claim of a plaintiff who had suspicions that the value of her husband's stock was understated at the time of their dissolution agreement, but who failed to assert her claim until years later when the stock was sold. Id. In that case, the plaintiff's lawyer sought information, both before the dissolution and within a few months thereafter, regarding the method by which the stock was valued. Id. at 875. When the response was not forthcoming, the lawyer chose not to pursue this inquiry further, and thus plaintiff was charged with knowledge of the facts the investigation would have uncovered – that the stock was valued by the price attributed to it in the shareholders' agreement rather than by any objective valuation. Id.

Second, the Jolly court cited to Gray v. Reeves, 76 Cal.App.3d 567 (Cal. App.1977), which held that a plaintiff's claim based on his use of a prescription drug arose when the plaintiff understood the nature of his injury (deterioration of the hip socket) and the probable cause thereof (the use of the prescription drug prednisone) as well as the identity of the prescribing doctor and the drug's manufacturer.

Although the discovery rule has been largely developed in tort cases, the rule has also been applied in cases involving contract claims. See e.g., April Enterprises, Inc. v. KTTV, 147 Cal.App.3d 805, 832 (1983) ("Specifically, we hold the discovery rule may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time."); Intermedics, Inc. v. Ventritex, Inc., 775 F.Supp. 1258, 1266-67 (N.D. Cal. 1991).

Thus, California's discovery rule is easily understood in the abstract; moreover, it is often easily applied in particular factual situations. Here, however, this Court's application of the rule in this case is not so clear cut, and the Court must consider the premises underlying the parties' respective analysis of this issue.

In substance, MGA contends that Mattel was on notice as early as February, 2001, of a potential claim that Carter Bryant breached the confidentiality provision of his contract by borrowing from or plagiarizing certain non-public Mattel projects. This date coincides with the display of the Bratz dolls at a New York Toy Fair and "speculation in the media started about

EXHIBIT 12 PAGE 134

alleged similarities between the BRATZ and Mattel's internal projects." MGA Motion at 18.
Alternatively, MGA posits March 15, 2002, the beginning date of an internal Mattel investigation
into MGA and Larian's involvement in Bryant's creation and development of Bratz, as the date
Mattel's current claims accrued.

Mattel, on the other hand, contends that MGA is essentially arguing that a claim Mattel
chose not to bring – that Bratz infringed on the Mattel projects of Toon Teens and Diva Starz – is
time barred. Mattel points out that it has previously disavowed, and that it continues to disavow,
any intent to assert such a claim. Rather, Mattel contends that it is bringing a different claim, a
claim that Mattel has rights to Bratz pursuant to the Inventions Agreement based on Bryant's
actions during the period of his employment with Mattel.

In determining, under California law, which of the parties' diametrically opposed positions
represent the better approach, the Court is guided by the California Supreme Court case cited
above, Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 806 (Cal. 2005). In that case, a plaintiff,
suffering from complications following gastric bypass surgery, sued for medical malpractice. Id. at
802. During the course of discovery, she learned, through the testimony provided at the
deposition of her surgeon, that she had a potential claim against the manufacturer of a surgical
stapler. Id. at 804. Specifically, the plaintiff's surgeon testified that he had found on previous
occasions that the particular stapler had caused post-surgery leaks. Id. When the plaintiff
amended the complaint to assert a products liability claim, the trial court, on statute of limitations
grounds, sustained a demurrer without leave to amend, reasoning that "when a plaintiff sues
based on knowledge or suspicion of negligence, . . . the statute of limitations begins to run as to all
defendants, including manufacturers possibly liable under products liability theories." Id.

The Court of Appeal reversed, and the California Supreme Court affirmed the reversal. Id.
at 812, 816. In doing so, the California Supreme Court rejected, as inconsistent with its precedent,
the so-called "the Bristol-Myers Squibb rule that all claims arising from an injury accrue
simultaneously, even if based upon distinct types of wrongdoing, is inconsistent with the generic
elements approach . . . . " Id. at 815.

From this discussion, a parallel begins to emerge that MGA's position is like that of the
demurring defendant who seeks to dismiss a products liability claim on the basis of plaintiff's
discovery of a different claim of medical malpractice, and Mattel's position is like that of the plaintiff
who seeks to assert the that products liability claim. In a sense, however, this analogy goes
nowhere, as MGA's position is that the claim Mattel asserts in the current action is not different
from the potential claim for which it was on notice of in 2001. After all, both would be based on
breach of contract and/or copyright claims, both would involve the same defendants, and both
would result in the same type of injury.

However, the Fox Court's elaboration on the rule it enunciates convinces the Court that
Mattel's position is the stronger one. After discussing the application of its rule in the more narrow
situation presented by the overlap of medical malpractice and products liability claims at issue in
the case before it, the Fox Court explained:

EXHIBIT 12 PAGE 135