### 3.    Royalty

The MGA parties argue that the more appropriate remedy to be imposed here is for the Court to order a royalty instead of an injunction. The difficulty in this proposal is that it is premised on the idea that the ongoing infringement, if any, is minute. See Opp. at 29-32 (suggesting a royalty of .3% would be appropriate). As noted above, the Court has rejected this premise. Moreover, although the Court has been hopeful that an out-of-court resolution involving such a remedy may have been obtained, and has gone to great lengths to encourage both sides to pursue such a resolution in good faith, their failure so far to do so underscores the Court's present view, which is based on the evidence and argument of record, that the hostility between these parties is such that this form of remedy is unworkable.

### 4.    Appointment of a Special Master

Mattel suggests that the Court appoint a special master to "monitor implementation of the relief granted by the Court." Motion at 28. The MGA parties have not indicated their position on this issue. The appointment of a special master to monitor implementation of the permanent injunction is warranted; this task could easily overwhelm the Court's resources. Subject to the Court's consideration of any in camera objections submitted to the Court by the parties, the Court will select a Special Master from the list submitted below.

### V. Motion to Strike Portions of Hutnyan Declarations and Exhibits Thereto (docket #4351)

The MGA parties move to strike certain evidence offered by Mattel on the issue of harm suffered by Mattel, contending the evidence is inadmissible. This motion is **DENIED AS MOOT.** Although Mattel has offered additional evidence of harm, the Court has found the evidence of harm to Mattel offered during Phases 1A and 1B sufficient to resolve the issues presented in the current motions.

### VI. Motion to Strike the Proctor, Keiser, and Hollander Declarations (docket #4352)

The motion is **DENIED** as to the Proctor declaration. The declaration is a helpful presentation of appropriate argument and/or observations of counsel for the Court's consideration.

The motion is **DENIED** as to the Keiser declaration. The Keiser declaration authenticates two-dimensional depictions of three-dimensional models he scanned using a sophisticated scanning machine.

The motion is **DENIED** as to the Hollander declaration. This declaration was the subject of extensive briefing in MGA's motion in limine 8, which the Court has reviewed. Hollander's declaration, which presents survey evidence of the target market, is relevant to application of the

MINUTES FORM 90
CIVIL -- GEN

15

Initials of Deputy Clerk: jh

EXHIBIT 28
PAGE 257

intrinsic test. The Court, in fact, instructed the jury to consider how girls 7 to 12 would view the Bratz dolls. Hollander's survey attempts to determine just that. The Court has considered the methodological flaws pointed out by MGA in weighing the evidence Hollander presents.

## VII. Motion to Strike Meyer Declaration (docket #4377)

Mattel moves to strike the Meyer declaration. This motion is **DENIED AS MOOT.** This declaration sets forth a calculation justifying the proposed .3% royalty. The Court has rejected the proposal that a royalty be imposed.

## VIII. Stay of this Order

This Order, and the three concurrently filed orders, are stayed pending the Court's consideration of the parties' post-trial motions. This stay shall remain in place until lifted by further Order of this Court.

## IX. Briefing Schedule for Post-Trial Motions

Notwithstanding the Court's earlier order, the motions referred to in ¶ 3 of the Court's September 2, 2008, Order may be filed no later than December 22, 2008. Response briefs may be filed no later than January 12, 2009. Replies may be filed no later than January 19, 2009. A hearing on this matter is set for Wednesday, February 11, 2009, at 10:00 a.m., in Courtroom One of the above-referenced Court.

## X. Discovery Master Proposals for Phase 2

The Court previously stated that it would submit for counsel's consideration the names of potential Discovery Masters for Phase 2 that possess both the resources to handle the scope of the anticipated discovery disputes as well as the personal confidence of this Court. The Discovery Master would serve pursuant to the same terms and conditions of the Phase 1 Discovery Master. In addition, as noted above, the Court also intends to appoint a Special Master to oversee implementation of the permanent injunction. The Court provides for counsels' consideration the following individuals who meet the Court's requirements, and have indicated to the Court a willingness and an ability to serve in one or both of these roles. Counsel are directed to file any objections to any or all of the proposed Masters on or before December 22, 2008. Any such objections are to be submitted in camera and under seal with the Court. After considering any objections, as well as any preferences expressed by the parties, the Court will make an appointment at the appropriate time.

EXHIBIT 28
PAGE 258

Patrick A. Fraioli, Jr.
Moldo Davidson et al LLP
2029 Century Park East, 21st Fl.
Los Angeles, CA  90067
310-551-3100
pfraioli@mdfslaw.com

Jan L. Handzlik
Howrey LLP
550 S. Hope Street, Suite 1100
Los Angeles, CA  90071
213-892-1802
handzlikj@howrey.com

Kendall H. MacVey
Best Best & Krieger LLP
P.O. Box 1028
Riverside, CA  92502-1028
951-686-1450

David G. Moore
Reid & Hellyer
P.O. Box 1300
Riverside, CA  92502
951-682-1771
dmoore@rhlaw.com

Robert C. O' Brien
Arent Fox LLP
555 W. 5th Street, 48th fl.
Los Angeles, CA  90013
213-629-7400
obrien.robert@arentfox.com

C. Michael Zweiback
Alston & Bird LLP
333 S. Hope Street, 16th Fl.
Los Angeles, CA  90071
213-576-1000
michael.zweiback@alston.com

## XI. Jointly Lodged Laptop Computer

The Court is in possession of a jointly lodged laptop computer used to access the Phases 1A and 1B trial transcripts maintained by the parties. The Court will retain possession of the laptop computer until after its ruling on the motions referred to in section IX, above, and the parties are directed to follow the procedure outlined in the Court's September 9, 2008, Order regarding the e-filing of excerpts of transcripts cited in their anticipated motions.

## XII. Service of Permanent Injunction

The service of Mattel's proposed permanent injunction by the Clerk presents challenges given the limited resources of the Court. The permanent injunction, for reasons explained by Mattel on the record, attaches to it approximately 900 color copies. Accordingly, although the Court directs the Clerk to serve on all parties a copy of the permanent injunction, the Court directs Mattel, no later than ten days after the entry of this Order, to serve a copy of the permanent injunction, together with the color exhibits, on all parties.

IT IS SO ORDERED.

EXHIBIT 28
PAGE 259

# EXHIBIT 29

1  THOMAS J. NOLAN (Bar No. 66992)
   (tnolan@skadden.com)
2  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue
3  Los Angeles, CA 90071-3144
   Tel.: (213) 687-5000 / Fax: (213) 687-5600
4
   RAOUL D. KENNEDY (Bar No. 40892)
5  (rkennedy@skadden.com)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  4 Embarcadero Center, 38th Floor
   San Francisco, CA 94111-5974
7  Tel.: (415) 984-6400 / Fax: (415) 984-2698

8  Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
   MGAE de Mexico, S.R.L. DE C.V., and Isaac Larian
9

10                     UNITED STATES DISTRICT COURT

11                    CENTRAL DISTRICT OF CALIFORNIA

12
   CARTER BRYANT, an individual,          )  CASE NO. CV 04-9049 SGL (RNBx)
13                                         )
                        Plaintiff,         )  Consolidated with Case No. 04-9059
14                                         )  and Case No. 05-2727
              v.                           )
15                                         )  ORDER GRANTING MGA
   MATTEL, INC., a Delaware               )  DEFENDANTS' *EX PARTE*
16  corporation,                          )  APPLICATION TO EXTEND PAGE
                                           )  LIMIT FOR OPPOSITION TO
17                      Defendant.         )  MATTEL'S MOTION FOR
                                           )  PERMANENT INJUNCTION BY
18                                         )  FIVE PAGES
   AND CONSOLIDATED ACTIONS.             )
19                                         )  Honorable Stephen G. Larson

20

21

22

23        NOTE: CHANGES MADE BY THE COURT

24

25

26

27

28

EXHIBIT 29
PAGE 260

## ORDER

Based on the Application filed with the Court, and good cause appearing for the entry thereof, IT IS HEREBY ORDERED that:

1.     The *Ex Parte* Application To Extend Page Limit For Opposition To Mattel's Motion For Permanent Injunction By Five Pages is granted.

2.     MGA's Opposition to Mattel's Motion for Permanent Injunction may not exceed 35 pages.

3.     Mattel's Reply may not exceed 25 pages.

4.     The deadline for the filing of Mattel's Reply is extended by two days.

IT IS SO ORDERED.

DATED:  October 10, 2008

_____
Hon. Stephen G. Larson
United States District Court Judge

EXHIBIT 29
PAGE 201

# EXHIBIT 30

CA No. 08-57015
DC No. CV 04-9049 SGL (RNBx)

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT
HK, LTD., and ISAAC LARIAN,
*Appellants,*

v.

MATTEL, INC., a Delaware corporation,
*Appellee.*

---

On Appeal From Judgment Of The United States District Court
For The Central District Of California
(Hon. Stephen G. Larson, Presiding)

### APPELLANTS' MOTION TO EXCEED
### PAGE LIMITATION ON MOTION FOR
### STAY PENDING APPEAL

JEROME B. FALK, JR. (No. 39087)
STEVEN L. MAYER (No. 62030)
DOUGLAS A. WINTHROP (No. 183532)
SHAUDY DANAYE-ELMI (No. 242083)
REBECCA M. KAHAN (No. 244423)
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
Telephone: 415/434-1600
Facsimile: 415/217-5910

THOMAS J. NOLAN (No. 66992)
RAOUL D. KENNEDY (No. 40892)
JASON D. RUSSELL (No. 169219)
SKADDEN, ARPS, SLATE, MEAGHER &
    FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone: 213/687-5000
Facsimile: 213/687-5600

RUSSELL J. FRACKMAN (No. 49087)
MITCHELL, SILBERBERG & KNUPP LLP
11377 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310/312-2000
Facsimile: 310/312-3100

*Attorneys for Appellants MGA Entertainment, Inc., MGA
Entertainment HK, Ltd., and Isaac Larian*

EXHIBIT 30
PAGE 262

## APPELLANTS' MOTION TO EXCEED PAGE LIMITATION ON MOTIONS FOR STAY PENDING APPEAL

Pursuant to Federal Rule of Appellate Procedure 27(d)(2) and Circuit Rule 27-1(1)(c), Appellants MGA Entertainment, Inc., MGA Entertainment HK, Ltd. and Isaac Larian hereby move this Court for permission to file motion for stay pending appeal consisting of 50 pages, which exceeds the page limitation set forth in Rule 27(d)(2) of the Federal Rules of Appellate Procedure.

The grounds for this Motion are set forth in detail in the accompanying Declaration of Jerome B. Falk, Jr.

DATED: December 19, 2008.

Respectfully,

JEROME B. FALK, JR.
STEVEN L. MAYER
DOUGLAS A. WINTHROP
SHAUDY DANAYE-ELMI
REBECCA M. KAHAN
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
A Professional Corporation

THOMAS J. NOLAN
JASON D. RUSSELL
LAUREN E. AGUIAR
SKADDEN, ARPS, SLATE, MEAGHER &
    FLOM LLP

By _____
            JEROME B. FALK, JR.

*Attorneys for Appellants MGA Entertainment, Inc., MGA Entertainment HK, Ltd. and Isaac Larian*

-1-

EXHIBIT 30
PAGE 263

## DECLARATION OF JEROME B. FALK, JR. IN SUPPORT OF APPELLANTS' MOTION TO EXCEED PAGE LIMITATION

I, Jerome B. Falk, Jr. declare as follows:

(1)   I am a member of the State Bar of California, a Director of the law firm of Howard Rice Nemerovski Canady Falk & Rabkin, A Professional Corporation ("Howard Rice"), and am admitted to practice in this Court.

(2)   Howard Rice represents Appellants MGA Entertainment, Inc., MGA Entertainment HK, Ltd. and Isaac Larian (the "MGA Parties") in the above captioned matter.

(3)   This declaration is submitted in support of Appellants' Motion to Exceed Page Limitation on Motion for Stay Pending Appeal ("Motion"), which seeks permission to file a Motion for Stay Pending Appeal ("Motion") consisting of 50 pages, which exceeds the page limitation set forth in Rule 27(d)(2) of the Federal Rules of Appellate Procedure.

(4)   A copy of Appellants' proposed Motion is being lodged with the Court concurrently with the filing of this Motion.

(5)   Appellants seek a stay pending their appeal of certain Orders granting injunctive relief, declaratory relief, and a constructive trust, entered on December 3, 2008 by the United States District Court for the Central District of California, Hon. Stephen G. Larson, Presiding.

(6)   Appellants filed a Notice of Appeal on December 11, 2008.



EXHIBIT 30
PAGE 204

(7)   Appellants respectfully request permission to exceed the page limit set out in Rule 27(d)(2) of the Federal Rules of Appellate Procedure based on the following grounds:

(a)   The Motion presents several important issues for this Court's consideration, including—most critically—issues implicating the constitutionally protected right to a fair trial by an impartial jury and the Seventh Amendment prohibition against judicial reexamination of facts determined by the jury.  Moreover, the stakes in this case are enormous: the current Orders from which Appellants seek to appeal would likely force a company worth hundreds of millions of dollars out of business and require layoffs of hundreds of its employees—to the detriment of MGA's suppliers, licensees and retailers (and their respective employees) as well as creditors and the consuming public.

(b)   Counsel for Appellants is duty bound to ensure that all relevant information regarding this Motion is presented to this Court.  This stay application requires both a demonstration on each of the equitable factors (including, most particularly, irreparable injury) *and* a showing that serious legal issues will be presented in the appeal.  Moreover, the underlying proceedings were complex, involving extensive pretrial procedures, numerous critical pretrial rulings (including several summary judgment orders), two phases of a jury trial, with a trial record in excess of 8,000 pages and numerous exhibits.

-3-



EXHIBIT 30
PAGE 205

(8)   Appellants have made every effort in the time available to shorten the Motion without weakening their arguments or depriving the Court of the necessary arguments and references to the record.  Our initial complete draft of the Motion was in excess of 92 pages, and we struggled to reduce it to its present length.  Under the extreme time pressures caused by the circumstances, it is not possible to condense the brief further without impairing its coherence and readability.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on December 19, 2008, at San Francisco, California.

JEROME B. FALK, JR.

W03 121908-158460006/Y12/1541502/v1

-4-



EXHIBIT 30
PAGE 206

## PROOF OF SERVICE

I, Alaina Austin, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is Three Embarcadero Center, 7th Floor, San Francisco, California 94111-4024. On December 19, 2008, I served the following document(s) described as:

**APPELLANTS' MOTION TO EXCEED PAGE LIMITATION ON MOTION FOR STAY PENDING APPEAL;**

**APPELLANTS' MOTION TO FILE PORTIONS OF MOTION FOR STAY PENDING APPEAL UNDER SEAL;**

**NOTIFICATION AS TO THE NECESSITY TO SEAL;**

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 - MOTION FOR STAY PENDING APPEAL [FILED UNDER SEAL];**

**EXHIBITS IN SUPPORT OF APPELLANTS' EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 – MOTION FOR STAY PENDING APPEAL [FILED UNDER SEAL], VOLS. 1 AND 2;**

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 - MOTION FOR STAY PENDING APPEAL [REDACTED FOR PUBLIC FILE]; AND**

**EXHIBITS IN SUPPORT OF APPELLANTS' EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 - MOTION FOR STAY PENDING APPEAL, VOLS. 1 AND 2**

**X**     by placing the document(s) listed above in a <u>sealed Federal Express envelope</u> and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for delivery to the address(es) set forth below.

John B. Quinn, Esq.
Michael T. Zeller, Esq.
Jon D. Corey, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

*Attorneys for Appellee Mattel, Inc.*

Honorable Stephen G. Larson
United States District Judge
U.S.D.C., Central District of California, Eastern Division
3470 12th Street
Riverside, CA 92501
**(Emergency Motion [Filed Under Seal] and Emergency Motion [Redacted for Public File] Only)**

EXHIBIT 30
PAGE 207

I am readily familiar with the practice for collection and processing of documents for delivery by overnight service by Federal Express of Howard Rice Nemerovski Canady Falk & Rabkin, A Professional Corporation, and that practice is that the document(s) are deposited with a regularly maintained Federal Express facility in an envelope or package designated by Federal Express fully prepaid the same day as the day of collection in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct. Executed at San Francisco, California on December 19, 2008.

Alaina Austin

2

EXHIBIT **30**
PAGE **268**

# EXHIBIT 31



Dave Malacrida / Sandra Ravan
MGA Entertainment, Inc
16300 Roscoe Blvd.
Van Nuys, CA 91406
(818) 894-2525 exts. 6590, 6592
Dmalacrida@mgae.com, Sravan@mgae.com

**For Immediate Release**                                    **September 29, 2008**

**Statement from MGA Entertainment**
**Re: Mattel's Motion for Injunctive Relief**

Faced with an aging Barbie and a string of failed attempts at competing with Bratz, Mattel has been trying to find a way to somehow eliminate the doll brand or take control of it for years. Now, after being rebuffed by the jury in 4 years and 3 months of contentious litigation, they are seeking an end run in the court. We are confident that justice will prevail here and their efforts will fail.

During deliberations, Jury Note #4 read: "can we find that the first generation dolls infringe the copyright of Mattel but that the subsequent generation of dolls do not violate the copyright?"

Both the court and Mattel's lawyers answered yes, and the jury's verdict was clear.

"I am disappointed but not surprised at Mattel's actions here," said Isaac Larian, CEO of MGA Entertainment. "Not only am I disappointed by the fact that they are taking this action on one of the two holiest days of the year for Jews – Rosh Hashanah -- but by the fact that their board of directors, led by Bob Eckert, have decided not to stop wasting their shareholders' money and their time, as well as ours, on more useless and baseless litigation. I am happy to compete with them in the marketplace. I had hoped they would take the challenge and do the same."

###

EXHIBIT 31
PAGE 269

# EXHIBIT 32




 Click to Print

SAVE THIS | EMAIL THIS | Close

# Questions follow Mattel's $100M Bratz verdict

**By Gillian Flaccus, Associated Press Writer**

RIVERSIDE, Calif. — A three-month trial that pitted Mattel Inc. against Bratz-maker MGA Entertainment Inc. brought a $100 million jury award for the house of Barbie, but the legal battle is far from over.

Still at question is whether MGA can continue to make and market its saucy, urban-influenced dolls – and if it can, whether it will have to pay Mattel royalties for those rights.

Mattel attorneys said after Tuesday's verdict that they intend to seek an injunction as soon as next month to stop MGA from making more Bratz dolls.

"The jury found that at some point the dolls infringed, but the question is, was it the earlier dolls or the later dolls or all of them?" said Oren Warshavsky, an intellectual property attorney who has followed the case closely. "Without a special verdict form, it's difficult to see how an injunction would be styled."

The federal panel found MGA, Chief Executive Isaac Larian and subsidiary MGA Hong Kong liable for copyright infringement and awarded a total of $10 million in damages in that category. They also awarded about $90 million for three causes of action related to breach of contract.

However, the panel was not asked to specify which Bratz dolls they found were in violation of Mattel's copyright. If Mattel moves for an injunction, U.S. District Court Judge Stephen Larson would have to discern the jury's intent on that question.

At the heart of the issue are the initial sketches done by designer Carter Bryant while conceiving the Bratz concept. In an earlier phase of the trial, the same jury found that Bryant worked at Mattel under an exclusivity deal when the drawings were made and all but four belonged to Mattel.

Larian, however, said the jury's relatively small award for copyright infringement -- roughly 10 percent of the total -- showed the panel felt only the earliest dolls were based on Bryant's initial sketches and that later dolls belonged to MGA.

His attorneys will argue against the injunction for all but the first dolls, Larian said.

"The main Bratz brand will always remain with MGA and we are going full blast forward and nothing will stop us," Larian said.

Mattel attorney Michael Zeller said the toy giant will ask the judge to consider an injunction when court resumes in September. He said since the jury did not pinpoint which dolls were in violation of Mattel's copyright, the judge will have the latitude to make that decision.

If the judge finds for a blanket ban of Bratz dolls, that ruling could devastate MGA, said Jack Lerner, an intellectual property professor at the University of Southern California.

"The jury made a determination about damages, but it didn't make a determination about the connection between the drawings and the damages," he said. "The stakes still remain very, very high for MGA. They're not out of the woods yet at all."

Larson could also allow MGA to continue marketing at least some of the dolls but require the company to pay royalties to Mattel. That, however, would be unusual and would be something that both companies are likely to resist, said Aaron Moss, an attorney who's represented Mattel in several other copyright infringement cases.

"The real prize is going to be, can Mattel convince the judge to grant an injunction that would prevent MGA from ever producing another Bratz product?" he said.

During the trial, Mattel attorneys said MGA made nearly $779 million on the Bratz line since it was introduced in 2001. The company has since expanded Bratz with lucrative additions such as Bratz Boyz, Bratz Petz and Bratz Babyz and introduced new, edgy dolls each year.

The highly stylized fashion dolls have oversized feet, heads and hands, curling lashes and huge, almond-shaped eyes daubed with


EXHIBIT 32
PAGE 210

exotic-colored eyeshadow.

Meanwhile, sales of Barbie -- a near rite-of-passage in American girlhood -- have slid since Bratz's Yasmin, Cloe, Jade and Sasha came on the scene.

Analysts said Tuesday's jury award was neutral or slightly disappointing for Mattel, which had asked for nearly $2 billion in damages based on MGA and Larian's profits from the Bratz sales.

Shares of Mattel fell 59 cents, or 2.9 percent, to $19.65 in trading Wednesday. The stock has traded between $16.42 and $24.50 during the past 52 weeks.

Meanwhile, litigation continues between the two companies.

MGA has said it will file paperwork with the court arguing that Tuesday's awards for contract-related damages are overlapping, and the total verdict amount should be reduced to as little as $20 million.

Mattel also has a trade secrets lawsuit pending against MGA, and MGA has a lawsuit pending against Mattel over the toy giant's My Scene dolls, alleging unfair competition, among other things.

---

Associated Press Writer Mae Anderson in New York contributed to this story.

---

*Copyright 2008 The Associated Press. All rights reserved. This material may not be published, broadcast, rewritten or redistributed.*

**Find this article at:**
http://www.usatoday.com/money/economy/2008-08-27-3121810073_x.htm

🖨 Click to Print |

SAVE THIS | EMAIL THIS | Close

Check the box to include the list of links referenced in the article.

Copyright 2008 USA TODAY, a division of Gannett Co. Inc.

EXHIBIT 32
PAGE 271

# EXHIBIT 33

1 | THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
2 | JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
3 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
4 | Los Angeles, CA 90071-3144
5 | Tel.: (213) 687-5000
Fax: (213) 687-5600
6

7 | JEROME B. FALK, JR. (Bar No. 39087)
(jfalk@howardrice.com)
8 | DOUGLAS A. WINTHROP (Bar No. 183532)
(dwinthrop@howardrice.com)
9 | HOWARD RICE NEMEROVSKI CANADY
FALK & RABKIN, A Professional Corporation
10 | Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
11 | Tel: (415) 434-1600
12 | Fax: (415) 217-5910

13 | Attorneys for MGA Entertainment, Inc., MGA
14 | Entertainment (HK) Limited, and Isaac Larian

15 | UNITED STATES DISTRICT COURT
16 | CENTRAL DISTRICT OF CALIFORNIA
17 | EASTERN DIVISION

18
19 | CARTER BRYANT, an individual,        | CASE NO. CV 04-9049 SGL (RNBx)
20 |                  Plaintiff,          | Consolidated with Case No. 04-9059 and Case No. 05-2727
21 |        vs.                           | Honorable Stephen G. Larson
22 | MATTEL, INC., a Delaware corporation,| NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
23 |                  Defendant.
24
25
26 | AND CONSOLIDATED ACTIONS.           | PERMANENT INJUNCTION APPEAL
27
28

EXHIBIT 33
PAGE 272

1    Defendants/Appellants MGA Entertainment, Inc., MGA Entertainment (HK)
2  Limited, and Isaac Larian (the "MGA Parties") appeal to the United States Court of
3  Appeals for the Ninth Circuit from the following Orders dated December 3, 2008 by
4  the United States District Court for the Central District of California (collectively,
5  the "December 3 Orders"):

6        (1)    Order Granting Mattel, Inc.'s Motion for Permanent Injunction;

7        (2)    Order Granting Mattel, Inc.'s Motion for Declaratory Judgment;

8        (3)    Order Granting Mattel, Inc.'s Motion for Constructive Trust and For
9               Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Prof.
10              Code § 17200; and

11       (4)    Order Finding In Favor Of Mattel As To The MGA Parties' Affirmative
12              Defenses; Order Granting Mattel's Motion For Declaratory Judgment;
13              Order Granting Mattel's Motion For Constructive Trust And § 17200
14              Injunctive Relief; Order Granting Mattel's Motion For Permanent
15              Injunction; Order Denying As Moot Motion To Strike Portions Of
16              Hutnyan Declarations And Exhibits Thereto; Order Denying Motion To
17              Strike The Proctor, Keiser, And Hollander Declarations.

18  Copies of these orders are attached as Exhibits A, B, C, and D, respectively.

19       In addition, the MGA Parties appeal any prior interlocutory order to the extent
20  it gave rise to, or decides issues inextricably linked with, the Court's December 3
21  Orders, including, but not limited to, the following orders:

22       (1)    Order Regarding Mattel's Motion For Leave To Amend, Dated January
23              12, 2007;

24       (2)    Order Granting In Part, Denying In Part, And Deferring In Part The
25              Parties' Motions For Partial Summary Judgment, Dated April 25, 2008;

26       (3)    Order re Motion For Reconsideration; Order re The Parties' Motions
27              For Partial Summary Judgment, Dated May 21, 2008;

28       (4)    Order re Statute Of Limitations Defense, Dated May 27, 2008;

1

EXHIBIT 32
PAGE 273

1  (5)  Further And Final Order re Statute Of Limitations Defense, Dated June
2       2, 2008;
3  (6)  Final Jury Instructions As Given, Dated July 10, 2008;
4  (7)  Final Verdict Form As Given, Dated July 17, 2008;
5  (8)  Order Denying Motion For Mistrial, Dated August 8, 2008;
6  (9)  Post-Phase 1A Order re Motion For Partial Summary Judgment On The
7       Issue Of Substantial Similarity, Dated July 24, 2008;
8  (10) Order re MGA's Motion For Clarification/Reconsideration, Dated
9       August 15, 2008;
10 (11) Court's Phase B Jury Instructions As Given, Dated August 20, 2008;
11      and
12 (12) Phase B Verdict Form As Given, Dated August 26, 2008.
13 Copies of these orders are attached as Exhibits E through P.
14      The United States Court of Appeals for the Ninth Circuit has jurisdiction over
15 this appeal under 28 U.S.C. § 1292(a)(1) because the Orders are injunctive in nature
16 and/or inextricably bound up with injunctive orders from which the appeal is taken.

17

18 DATED: December 11, 2008

         SKADDEN, ARPS, SLATE, MEAGHER &
19       FLOM, LLP

20       HOWARD RICE NEMEROVSKI CANADY
         FALK & RABKIN, A Professional Corporation
21

22       By:  _____/s/ Thomas J. Nolan_____
                      Thomas J. Nolan
23             Attorneys for the MGA Parties

24

25

26

27

28

                                    2

EXHIBIT 33
PAGE 274

# EXHIBIT 34

THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
(laguiar@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, CA 90071-3144
Tel.: (213) 687-5000 / Fax: (213) 687-5600

RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
DAVID W. HANSEN (Bar No. 196958)
(dhansen@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, 38th Floor
San Francisco, CA 94111-5974
Tel.: (415) 984-6400 / Fax: (415) 984-2698

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Plaintiff,<br><br>          v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                    Defendant.<br><br>AND CONSOLIDATED ACTIONS.<br><br><br>**PUBLIC REDACTED** | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>Honorable Stephen G. Larson<br><br>(1) MGA PARTIES' OPPOSITION TO MATTEL'S MOTION FOR PERMANENT INJUNCTION<br><br>**FILED UNDER SEPARATE COVER:**<br><br>(2) DECLARATION OF CARL ALAN ROTH (**UNDER SEAL**); and<br><br>(3) DECLARATION OF PAUL MEYER<br><br>Hearing Date:     November 10, 2008<br>Time:                  1:00 PM |

1  Dist. LEXIS 96487, at *37, held that construction of irreparable harm like that asserted here
2  by Mattel clearly conflicts with "the Supreme Court's reasoning that the right to exclude
3  does not automatically justify the issuance of injunction."[21]

4          **3.    A Phase 1(b) Money Judgment Could Be Collected**

5          Mattel argues that irreparable injury exists due to an "apparent inability to pay."  But
6  a plaintiff must provide concrete evidence of potential insolvency.  "'[M]erely alleging an
7  opponent's inability to pay damages does not constitute irreparable harm.'"  Grokster, 518 F.
8  Supp. 2d at 1217 (quoting Rosewood Apartments Corp. v. Perpignano, 200 F. Supp. 2d 269,
9  278 (S.D.N.Y. 2002)).  Mattel has not provided a sufficient evidentiary showing.

10         For past damages, Mattel relies on MGA declarations submitted at a point in this
11 litigation when MGA was facing a request for monetary damages of over $2 billion.  Those
12 MGA statements, however, preceded the Phase 1(b) verdict.  Mattel submitted no evidence
13 – because it could not – that MGA cannot satisfy the money judgment that follows from the
14 Phase 1(b) verdict. For future damages, any potential infringing activity by MGA is directly
15 tied to revenue production, i.e., Bratz sales and profits.  Therefore, it is virtually impossible
16 for any potential future damage award to be so enormous that it would "far outstrip the
17 amount of revenue" MGA would earn concurrently. Id.[22] This is particularly true where the
18 jury has apportioned such a substantial portion of profit to non-infringing activity.[23]

19         **D.    The Balance Of Hardships Does Not Warrant Injunctive Relief**

20         To justify the extraordinary remedy of injunctive relief, Mattel also must demonstrate
21 that the balance of hardships weighs in its favor. eBay, 547 U.S. at 391.  For its part, Mattel

22 ─────────────────────
23 [21]    See also MercExchange, 500 F. Supp. at 577 ("the Supreme Court rejected the Federal
    Circuit's contention that the 'statutory right to exclude alone justifies [a] general rule in favor of
24 permanent injunctive relief'") (quoting eBay, 126 S. Ct. at 1840); IMX, 469 F. Supp. at 224-25
    (finding interference with "exclusive rights" under patent to be insufficient to constitute irreparable
25 harm); Paice, 2006 WL 2385139, at *14 ("Infringing one's right to exclude alone, however, is
    insufficient to warrant injunctive relief"); z4 Techs., 434 F. Supp. 2d at 440 ("suggestion that the
26 right to exclude creates a presumption of irreparable harm" inconsistent with eBay).
    [22]    See also z4 Techs., Inc., 434 F. Supp. 2d at 442 ("Furthermore, it is not a legitimate concern
27 that Microsoft would be unable to pay damages incurred by z4 through any future infringement").
    [23]    In reality, it is far more likely that an injunction could create an inability to satisfy a Phase
28 1(b) money judgment, by undercutting the revenue stream that largely sustains MGA.

─────────────────────
-13-

1  merely repeated its claim that it will be irreparably harmed.  Thus, even accepting its market
2  loss theory of irreparable harm, Mattel has not even speculated as to what <u>hardship</u> it will
3  incur in the absence of a permanent injunction.  MGA, on the other hand, would suffer
4  substantial hardship if it is enjoined from manufacturing any Bratz fashion dolls.  See <u>Dun v.</u>
5  <u>Lumbermen's Credit Ass'n</u>, 209 U.S. 20, 23-24 (1908) (enjoining entire operation based on
6  partial infringement would be "unconscionable").

7       In balancing the equities, it is important to consider the jury's finding that neither
8  MGA nor Larian willfully infringed Mattel's copyrights.  In <u>eBay</u> on remand, "[t]he jury's
9  finding of willfulness plainly weigh[ed] against eBay in the equitable calculus." <u>eBay</u>, 500
10 F. Supp. 2d at 584 n.25.  Thus, that MGA and Larian did not commit willful infringement
11 militates against an injunction here.  An injunction halting MGA's production of all Bratz
12 dolls would impose a severe hardship on MGA because, as the jury found by way of its
13 apportionment assignable to Mattel's property, the infringement is a <u>de minimis</u> part of the
14 entire Bratz franchise.  Of the $400-800 million in Bratz-related profits, the jury attributed
15 only $6-10 million to infringement. Shutting down MGA due to a potential infringement
16 that might contribute approximately 1% of the Bratz product value would impose the
17 ultimate hardship on MGA that far outweighs any purported hardship to Mattel.[24]

18     **E.**    **The Public Interest Would Not Be Served By An Injunction**

19      Injunctive relief is inappropriate where it would run counter to the public interest.
20 <u>eBay</u>, 547 U.S. at 391.  The goals of copyright law are not always served by granting
21 injunctive relief. <u>Campbell</u>, 510 U.S. at 578 n.10.

22

---

[24]    An injunction would result in lethal consequences to the future of MGA as a going-concern,
23 as it has invested heavily in the Bratz franchise and Bratz-related products comprise a significant
   portion of MGA revenue.  Such a result does not weigh in favor of injunctive relief, particularly
24 where Mattel merely seeks to lock the Bratz franchise in a drawer forever.  See <u>Foster v. Am.</u>
   <u>Mach. & Foundry Co.</u>, 492 F.2d 1317, 1324 (2d Cir. 1974) (the relative equities counsel against
25 injunction that will "impose irreparable hardship on the infringer by injunction, without any
   concomitant benefit to the patentee").  Likewise, a substantial portion of MGA's workforce
26 (including hundreds of employees in California) is devoted to the Bratz franchise.  An injunction
   would unquestionably impose a substantial hardship, namely unemployment, on those MGA
27 employees and their families.  Equity requires the assessment of harm to non-parties. <u>Ward v.</u>
   <u>Walsh</u>, 1 F.3d 873, 878-79 (9th Cir. 1993).
28

---

1    The public interest would not be served by an injunction shutting down Bratz
2 operations. As this Court and Mattel have already recognized:

3       THE COURT: The one thing that is clear is that we have a product that is a
4       profitable product; and regardless of how it plays out, I presume it is in the
5       economic interest of everyone to maintain it as a profitable product.

6       MR. QUINN: Yes, Your Honor. No one could quarrel with what the Court has
7       said.

8 (Tr. 8331:17-22.)

9    If the Bratz franchise were to be enjoined, a litany of public interests would be
10 negatively impacted. Consumers will be denied products in the new market created by
11 Bratz, seriously curtailing competition in the toy and doll industries. See Abend v. MCA,
12 Inc., 863 F.2d 1465, 1479 (9th Cir. 1988) (injunction inappropriate where public would be
13 denied opportunity to enjoy creative film expression). An injunction would only serve to
14 effectively eliminate Mattel's chief competitor in the doll industry, resulting in a monopoly.
15 See Pass & Seymour, Inc. v. Hubbell, Inc., 532 F. Supp. 2d 418, 434 (N.D.N.Y. 2007)
16 (denying an injunction where public interest would not have been served due to the "anti-
17 competitive nature of such an injunction").[25] And an injunction would chill competition
18 generally in the toy industry by discouraging others from competing against Mattel.

19    Further, an injunction would cause significant economic waste by removing a valued,
20 successful commodity occupying its own position in the market and millions of dollars that
21 have been invested in developing the successful Bratz line. See 2 Dan B. Dobbs, Law of
22 Remedies § 6.3(5) (2d ed. 1993) ("To the extent that destruction or even an injunction
23 against distribution will prevent exploitation of economically viable materials, the problem
24 is one of economic waste, certainly if the economic value of the plaintiff's copyright is less

25 [25]    The wholesale elimination of a billion dollar enterprise also strips the government of
26 significant tax revenue. The insolvency of a major Southern California employer coupled with the
unemployment of hundreds of employees in a troubled economy would only exacerbate the strain
27 on public resources as a result of an injunction. See Bennigan's Franchising Co., L.P. v. Swigonski,
2007 WL 603370, at *5 (N.D. Tex. Feb. 27, 2007); Gen. Power Prods., LLC v. MTD Prods., 2006
28 WL 3692953, at **5-6 (S.D. Ohio Dec. 13, 2006).

-15-

EXHIBIT _____ 34

PAGE _____ 278

1  than the economic costs entailed in the destruction or injunction"); see also BR Assocs., Inc.
2  v. LaFramboise, 2007 WL 1840031, at *10 (E.D. Mich. June 26, 2007) (denying injunction
3  where it would result in economic waste).

4      In addition, the goals of copyright are to promote creativity and competition;
5  rewarding the author is merely a secondary by-product.   See Sony Corp. v. Universal
6  Studios, 464 U.S. 417, 499-500 (1984).   As one leading commentator has said, "copyright
7  doctrine should . . . conform to the general constitutional rule which restricts use of the
8  injunctive remedy against conduct which is consonant with first amendment rights, once
9  again with the qualification that those rights encompass the public's right to receive
10  information and knowledge."  James L. Oakes, Copyrights and Copyremedies: Unfair Use
11  and Injunctions, 18 Hofstra L. Rev. 983, 997 (1990).

12      Finally, consumer interest in Bratz weighs against an injunction.  See, e.g., Abend,
13  863 F.2d at 1479 (finding an injunction inappropriate where it "would cause public injury
14  by denying the public the opportunity to view a classic film).[26]  The public's interest in
15  Bratz has spanned nearly a decade.  For most of its existence, Bratz has been the top selling
16  fashion doll in the United States.  Since 2001, children and their parents have purchased
17  more than $3.1 billion in Bratz dolls and merchandise worldwide and during that time, the
18  Bratz franchise has garnered countless awards from industry groups for its packaging,
19  themes, and other innovations.

20                                                                    Should
21  the Court determine that equitable relief is appropriate, the widespread use and popularity of
22  Bratz, particularly where its success is derived from factors other than infringement,
23  militates against an injunction.  Id.

24
25

26  [26]   See also Elvis Presley Enters. v. Passport Video, 357 F. 3d 896, 888-90 (9th Cir. 2003)
    (holding that injunction was a "miscarriage of justice" because the public's interest in Elvis
27  Presley's life weighed against enjoining "The Definitive Elvis" documentary); z4 Techs., 434 F.
    Supp. 2d at 442-45 (awarding continuing royalty because Microsoft Windows products are "the
28  most popular software products in the world" and an injunction would therefore harm the public).

EXHIBIT ____34____

PAGE ____279____

1 | evidence of a loss of market share, and therefore its recall demands fail.

2 | ### CONCLUSION

3 | For the foregoing reasons, Mattel's motion for permanent injunction should be denied.

4 | DATED:  October 13, 2008          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

5 |

6 |                                          By:  _____ /s/ Thomas J. Nolan _____
                                                           Thomas J. Nolan
                                                    Attorneys for the MGA Parties

7 |

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

MGA's Opposition to Mattel's Motion For Permanent Injunction - Case No. CV 04-9049 SGL (RNBx)

EXHIBIT _____ 34

PAGE _____ 280