1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                          EASTERN DIVISION

12 | CARTER BRYANT, an individual,      | CASE NO. CV 04-9049 SGL (RNBx)
   |                                    |
13 |              Plaintiff,            | Consolidated with
   |                                    | Case No. CV 04-09039
14 | vs.                                | Case No. CV 05-02727
   |                                    |
15 | MATTEL, INC., a Delaware corporation, | [PUBLIC REDACTED] MATTEL,
   |                                    | INC.'S *EX PARTE* APPLICATION
16 |              Defendant.            | TO STRIKE THE WING,
   |                                    | KENNEDY, AND THIRD-PARTY
17 |                                    | DECLARATIONS IN SUPPORT OF
   | AND CONSOLIDATED ACTIONS           | THE MGA PARTIES' REQUEST
18 |                                    | FOR STAY; AND
   |                                    |
19 |                                    | MEMORANDUM OF POINTS AND
   |                                    | AUTHORITIES
20 |                                    |
21 |                                    |
   |                                    | Hearing Date:   December 30, 2008
22 |                                    | Time:           10:00 a.m.
   |                                    | Place:          Courtroom 1
23 |                                    |
   |                                    | **Phase 1(c)**
24

25

26

27

28

1    Pursuant to <u>Local Rule</u> 7-19, Mattel, Inc. ("Mattel") hereby respectfully
2    applies *ex parte*, pursuant to <u>Local Rule</u> 7-19, to strike the Declaration of Brian
3    Wing (hereinafter, the "Wing Declaration"), the Declaration of Raoul D. Kennedy
4    (hereinafter, the "Kennedy Declaration") and the Compendium of Third-Party
5    Declarations (hereinafter "Third-Party Declarations")[1] that were filed in support of
6    the MGA Parties' *Ex Parte* Application and Motion for Stay Pending Appeal.

7    Mattel makes this Application on the grounds that the evidence is
8    inadmissible.

9    Good cause exists to seek this relief on an *ex parte* basis. MGA submitted
10   these declarations in support of its *Ex Parte* Application and Motion for a Stay
11   Pending Appeal. Because this evidence relates to MGA's request for expedited
12   relief, it properly should be considered on an expedited basis along with that
13   Application.

14   Pursuant to <u>Local Rule</u> 7-19, on December 18, 2008, Mattel's counsel sought
15   to resolve the issues set forth this in Application with counsel for the MGA Parties
16   and subsequently gave notice of this Application and the relief being sought to
17   counsel for MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and Isaac
18   Larian (collectively, "the MGA Parties"), Robert Herrington of Skadden, Arps,
19   Slate, Meagher & Flom LLP (telephone: 213-687-5000; address: 300 South Grand
20   Avenue, Suite 3400, Los Angeles, California 90071). Counsel for the MGA Parties
21   received notice of the basis of this motion on December 18, December 19, and
22   December 22, 2008, but has not indicated whether MGA will oppose this
23   Application.

24
25
26
27   [1]   Each of the thirteen declarations in the compendium is identified herein by its
     Tab number.
28

-1-              Case No. CV 04-9049 SGL (RNBx)

1       This Application is based on this Application, the accompanying
2   Memorandum of Points and Authorities, the declarations filed concurrently
3   herewith, the papers filed in connection with Mattel's opposition to MGA's Ex Parte
4   Stay Application, the records and files of this Court, and all other matters of which
5   the Court may take judicial notice.

6

7   DATED:  December 23, 2008      QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
8

9                               By /s/ Diane C. Hutnyan
10                                  Diane C. Hutnyan
                                Attorneys for Mattel, Inc.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

ARGUMENT ..................................................................................................... 3

I.    THE EVIDENCE SUBMITTED BY MGA ON ITS MOTION TO
      STAY WAS AVAILABLE TO MGA IN BRIEFING THE MOTION
      FOR INJUNCTION AND CANNOT BE CONSIDERED NOW .................... 3

II.   THE EX PARTE DECLARATIONS LACK FOUNDATION AND
      ARE TOO SPECULATIVE AND CONCLUSORY TO ESTABLISH
      IRREPARABLE HARM TO MGA OR THIRD PARTIES ............................. 6

III.  THE EX PARTE DECLARATIONS CONTAIN INADMISSIBLE,
      UNRELIABLE HEARSAY ........................................................................... 15

      A.    The Declarations Feature Hearsay, Double Hearsay And/Or
            Triple Hearsay ................................................................................. 15

      B.    MGA's Ex Parte Declarations -- Based As They Are On
            Boilerplate And Even On Undisclosed Relationships With MGA
            -- Renders Them Particularly Unreliable ......................................... 17

CONCLUSION ................................................................................................. 19

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

American Family Mut. Ins. Co. v. Roth,
2007 WL 63983 (N.D. Ill. 2007) .............................................................. 3

Avery Dennison Corp. v. Acco Brands, Inc.,
1999 WL 33117262 (C.D. Cal. 1999) ..................................................... 18

Baliza v. I.N.S.,
709 F.2d 1231 (9th Cir. 1983) ................................................................. 15

Beyene v. Coleman,
854 F.2d 1179 (9th Cir. 1988) ................................................................. 15

Bortell v. Eli Lilly and Co.,
406 F. Supp. 2d 1 (D.D.C. 2005) ............................................................ 18

Fierberg v. Hyundai Motor Am.,
1997 WL 715457, 44 U.S.P.Q. 1305 (C.D. Cal. 1997) ................... 13, 16

Florists' Transworld Delivery, Inc. v. Khan,
2001 WL 34045759 (D. Or. 2001) .......................................................... 15

Frazier v. Continental Oil Co.,
568 F.2d 378 (5th Cir. 1978) ................................................................... 17

Futuredontics, Inc. v. Applied Anagramics, Inc.,
1999 WL 34840612 (C.D. Cal. 1999) ....................................................... 3

Green v. Baca,
226 F.R.D. 624 (C.D. Cal. 2005) .............................................................. 7

King Jewelry, Inc. v. Fed. Exp. Corp.,
166 F. Supp. 2d 1280 (C.D. Cal. 2001) .................................................... 6

Kona Enterprises, Inc. v. Estate of Bishop,
229 F.3d 877 (9th. Cir. 2005) .................................................................... 6

Mercexchange, L.L.C. v. eBay, Inc.,
467 F. Supp. 2d 608 (E.D. Va. 2006) ....................................................... 5

Multnomah Legal Services Workers Union v. Legal Services Corp.,
936 F.2d 1547 (9th Cir. 1991) ................................................................. 17

Nationwide Transp. Fin. v. Cass Info. Sys., Inc.,
2006 WL 5242377 (D. Nev. 2006) ............................................................ 6

Northwest Bypass Group v. U.S. Army Corps of Engineers,
490 F. Supp. 2d 184 (D.N.H. 2007) .......................................................... 3

Schmidt v. Allstate Ins. Co.,
2008 WL 3287133 (D. Haw. 2008) ........................................................... 6

07209/2742523.1

Severin Montres Ltd. v. Yidah Watch Co.,
   997 F. Supp. 1262 (C.D. Cal. 1997) ................................................................. 3

United States v. Durham,
   464 F.3d 976 (9th Cir. 2006) ............................................................................ 9

United States v. Skeet,
   665 F.2d 983 (9th Cir. 1982) ............................................................................ 9

## **Statutes**

Fed. R. Civ. P. 37(c) ................................................................................................ 7

Fed. R. Evid. 602 ..................................................................................................... 6

Fed. R. Evid. 701 ..................................................................................................... 6

Fed. R. Evid. 801(c) .............................................................................................. 15

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

In opposition to Mattel's motion for permanent injunction, MGA argued that the balance of hardships and the public interest tip against an injunction. The issues were fully litigated, with the Court receiving and considering evidence on these questions and rendering factual findings. Having lost that motion, MGA now presents fifteen new declarations that seek to revisit exactly those same issues. The purported evidence in and attached to these new declarations was available to MGA by October, when it submitted its Opposition, and certainly by the hearing in November, but was not presented to the Court at that time. The Court should reject MGA's attempt to relitigate these issues.

In addition, this new evidence is inadmissible for several reasons. Many of the statements made in these declarations lack foundation and show on their face that they consist of speculation. The declarants draw sweeping financial conclusions about their businesses and other unnamed businesses, and they predict whole chains of future events without any supporting facts. Such ipse dixit is not admissible evidence.

Moreover, most of these statements are so conclusory as to be of almost no use at all for the propositions MGA hopes to support. This Court has already held its relevant orders in abeyance until disposition of post-trial motions and until further order of the Court. Nevertheless, according to MGA, █████████ ████████████████████████████████████████ as opposed to the open-ended, indefinite stay that is currently in place. Not only is it dubious that such a metaphysical distinction would have the real-world significance MGA proclaims, but the declarations do not support it. While the declarations do claim that a stay pending appeal is needed, they do not reflect any recognition that the declarants know that that the orders are currently stayed, let alone explain how or even whether the hypothetical difference between the stays will matter. Nor do the

1  declarations contain or provide the quantitative support or information necessary to
2  allow the Court to make the jump between certain retailers canceling certain orders
3  and MGA failing as a business.

4     According to these declarations, the <u>only</u> specific, quantifiable event that may
5  occur ███████████████████████████████████████████
6  ██████████████████████.[2]  Yet, this conclusory evidence -- set forth
7  only in the Declaration of a current MGA employee -- lacks foundation and is
8  inadmissible hearsay.  Nor is it supported by any documentation.  Besides, even if
9  this evidence were admissible, and the order were canceled, such a loss could not
10 plausibly ███████████████████████ -- a company that MGA
11 represented to the Ninth Circuit just four days ago was "worth hundreds of millions
12 of dollars".[3]

13     On those occasions when the declarants do attempt to provide a substantiating
14 explanation for a particular proposition, the declarations avowedly resort to or rely
15 on alleged statements by o ther, and often unnamed, persons or companies that
16 constitute inadmissible hearsay.  And the very dangers of concealed bias and
17 unexamined conclusions on the part of these declarants that animate the hearsay rule
18 are present in these declarations.  For example, Mattel has learned even without the

20 _____

21  [2]  Wing Decl., ¶5.
22  [3]  In its Motion to Exceed Page Limitation On Motion For Stay Pending Appeal,
    filed in the Ninth Circuit on December 19, 2008, MGA's attorney swore under
23  penalty of perjury that MGA was "a company worth hundreds of millions of
24  dollars." Proctor Decl., Exh. 30.  Of course, as the Court will recall, this is not the
    first occasion on which MGA made multiple, conflicting claims about its financial
25  status. ████████████████████████████████████████
26  ████████████████████ but when it opposed Mattel's injunction motion, MGA
27  attempted to repudiate its prior sworn claims to the Ninth Circuit about its financial
28  condition.

1   opportunity for discovery[4] that at least two of the declarants' companies act as

2   distributors to a European company ███████████████████████████

3   ██████████████████████." Not only do MGA's and the declarants' failures

4   to reveal this fact raise troubling questions about their candor with the Court on the

5   *ex parte*, but they confirm that it is particularly inappropriate for such hearsay

6   evidence to be accepted here.

7       MGA's declarations should be stricken.

8                               **Argument**

9   **I.   THE EVIDENCE SUBMITTED BY MGA ON ITS MOTION TO STAY**

10      **WAS AVAILABLE TO MGA IN BRIEFING THE MOTION FOR**

11      **INJUNCTION AND CANNOT BE CONSIDERED NOW**

12      It is well established that parties cannot use new but previously available

13  evidence to relitigate the same issues. See, e.g., Futuredontics, Inc. v. Applied

14  Anagramics, Inc., 1999 WL 34840612, at *3 (C.D. Cal. 1999) (refusing to modify

15  injunction on a motion for reconsideration because the allegedly new evidence

16  presented by plaintiff was in plaintiff's possession but was not presented as part of

17  the original injunction briefing); Severin Montres Ltd. v. Yidah Watch Co., 997 F.

18  Supp. 1262, 1267-68 (C.D. Cal. 1997) (same); Northwest Bypass Group v. U.S.

19  Army Corps of Engineers, 490 F. Supp. 2d 184, 186 (D.N.H. 2007) (denying

20  "Plaintiffs' motion for reconsideration of [the] Order denying their motion for

21  preliminary injunction because they have failed to demonstrate that there is new

22  evidence not previously available"); American Family Mut. Ins. Co. v. Roth, 2007

23  WL 63983, (N.D. Ill. 2007) (rejecting motion to modify injunction, in part, because

24

25

26

27  [4]   Because the declarants (including Wing) were not identified as Phase 1
     witnesses in MGA's disclosures and did not otherwise testify, Mattel has never had
28  an opportunity to examine or depose them.

1 | plaintiff's new evidence and arguments should "have been advanced months earlier
2 | in the extensive briefings that preceded the current Motions").

3 |     Here, the balance of equities and public interest were already fully litigated on
4 | Mattel's Motion for Permanent Injunction. The parties extensively briefed these
5 | issues, and MGA specifically argued in its opposition that "The Balance of
6 | Hardships Does Not Warrant Injunctive Relief" and "The Public Interest Would Not
7 | Be Served By An Injunction."[5]  MGA claimed that "an injunction would result in
8 | lethal consequences to the future of MGA as a going-concern"[6] and "would
9 | unquestionably impose a substantial hardship, namely unemployment, on [MGA]
10 | employees and their families."[7]  The Court considered this and other evidence, and
11 | issued a decision with specific factual findings.[8]

12 |     MGA's Wing and Third-Party Declarations, and the letter attached to the
13 | Kennedy Declaration (hereinafter collectively referred to as the "Ex Parte
14 | Declarations"), have all been submitted to argue these same issues again.  MGA
15 | uses this evidence in just two sections of its Application:  Section II, "The Equities
16 | Weigh Overwhelmingly In Support of Staying The Court's December 3 Orders
17 | Pending Appeal" and Section III, "The Public Interest Favors a Stay."[9]  Again,
18 | MGA argues that the balance of hardships lies in its favor and against the injunction

---

[5] MGA Parties' Opposition to Mattel's Motion for Permanent Injunction (Dkt. 4353) ("MGA Opposition"), at pp. 13-16 (discussing balance of hardships and public interest factors), Declaration of B. Dylan Proctor in Support of Mattel, Inc.'s Opposition To MGA Entertainment, Inc.'s Ex Parte Application For Stay of Injunction Pending Appeal and Mattel, Inc.'s Ex Parte Application To Strike The Wing, Kennedy and Third-Party Declarations ("Proctor Decl."), Ex. 34.
[6] MGA Opposition at 14:11-14; 14, n.24.
[7] MGA Opposition at 14, n. 24.
[8] Order Granting Mattel's Motion For Permanent Injunction (Dkt. 4439), at 11-14, Proctor Decl., Ex. 28.
[9] MGA Parties' Ex Parte Application and Motion for Stay Pending Appeal (Dkt. 4458) ("Stay Application"), at pp. 4-7, 8-10 (discussing irreparable harm, public interest, and equities factors).

1  taking effect, " ███████████████████████████████
2  ███████"[10] and that the injunction order would result in the " ██████████████
3  ██"[11]

4      MGA and its suppliers, retailers and licensees were all on notice that an
5  injunction could issue and of the scope and timing of the potential injunction since
6  Mattel filed its Motion for a Permanent Injunction in September,[12] and had every
7  opportunity to submit this evidence in opposition to that Motion.[13]  That, once the
8  injunction takes effect, MGA's retailers and licensees may have to ███████████
9  ███████████████████████████████████████████████████
10 ███████, is not new matter that MGA could not have introduced prior to the
11 injunction hearing.  All of these potential outcomes were argued, or could have been
12 argued, the first time around; and there is no reason why MGA could not have
13 assembled the same declarations and evidence in support of those arguments.[14]

14     MGA should not get two bites at the same apple and should not be allowed to
15 "backfill" the record at this late stage.  See Mercexchange, L.L.C. v. eBay, Inc.,
16 467 F. Supp. 2d 608, 613 (E.D. Va. 2006) (refusing to "permit the parties to backfill

17

18 _____

   [10]  Stay Application at 4:24-25.
19 [11]  Wing Declaration, ¶ 8.
   [12]  MGA issued press releases, spoke to newspaper reporters and posted
20 information on its website regarding the injunctive relief that Mattel sought.  Proctor
21 Decl., Exs. 31-32.
   [13]  In fact, the Court permitted MGA additional pages of briefing for its
22 Opposition.  See Order Granting MGA Defendants' Ex Parte Application to Extend
23 Page Limits for Opposition (Dkt. 4358), dated October 10, 2008, Proctor Decl., Ex.
24 29.
   [14]  Although the Third-Party Declarations and the consumer letter attached as
25 Exhibit A to the Kennedy Declaration appear to have been created after the Court's
26 December 3, 2008 Orders, their contents and the purported evidence in them
   certainly existed and was known and available to MGA in October 2008.  If parties
27 could generate "new" evidence by creating after a Court's decision, litigants could
28 endlessly generate "new" evidence for the Court to reconsider.

1 the record by presenting evidence that was previously available yet not advanced . . .

2 in support of [plaintiff's] initial motion for an injunction"); Kona Enterprises, Inc. v.

3 Estate of Bishop, 229 F.3d 877, 890-891 (9th. Cir. 2005) (affirming denial of motion

4 for reconsideration raising arguments that could have been originally raised).[15]   The

5 Ex Parte Declarations should be stricken for this reason alone.

6 **II.     THE EX PARTE DECLARATIONS LACK FOUNDATION AND ARE**

7 **TOO     SPECULATIVE     AND     CONCLUSORY     TO     ESTABLISH**

8 **IRREPARABLE HARM TO MGA OR THIRD PARTIES**

9        "A witness may not testify to a matter unless evidence is introduced sufficient

10 to support a finding that the witness has personal knowledge of the matter." Fed. R.

11 Evid. 602; see also King Jewelry, Inc. v. Fed. Exp. Corp., 166 F. Supp. 2d 1280,

12 1282 (C.D. Cal. 2001) (opinions and conclusions lacking foundation are

13 inadmissible under Federal Rule of Evidence 701).  Without the proper foundation,

14 a witness' testimony -- and particularly in this case, where the declarants are

15 attesting to alleged prospective financial or business losses -- is inadmissible.[16]

16 ─────────────────

17  [15]   MGA's submission of this evidence also contradicts its own asserted position
18 that it is "improper" to rely on any evidence "that was not offered or admitted at
   trial." MGA Opposition at 28:16-20. Even now, MGA ironically calls such reliance
19 an error that raises serious appellate issues. MGA's Ex Parte at 16:3-11. While
20 there was no support for its position with respect to new evidence presented on the
   initial Motion for Permanent Injunction, new but previously available evidence on
21 what amounts to an attempt to reconsider that motion is prohibited and should be
22 stricken.
   [16]   See Schmidt v. Allstate Ins. Co., 2008 WL 3287133, at *2 (D. Haw. 2008)
23 ("Plaintiff, however, did not lay a foundation or otherwise explain how he arrived at
24 his estimate or how he had personal knowledge that the amount he estimated was
   accurate and not speculation. Although lay opinion testimony on the valuation of
25 items is appropriate under Rule 701 of the Federal Rules of Evidence, all testimony
26 must be based upon personal knowledge. Without any basis to understand or
   explain Plaintiff's opinion as to the valuation of his property, the jury would be left
27 to speculation and wild guessing as to the amount of loss Plaintiff suffered");
28 Nationwide Transp. Fin. v. Cass Info. Sys., Inc., 2006 WL 5242377, at *7 (D. Nev.
        (footnote continued)

1        The Wing and Third-Party Declarations and the letter attached as Exhibit A to

2    the Kennedy Declaration include many sweeping conclusions without proper or

3    disclosed foundation.[17]  For example, Mr. Wing -- who was never been listed in any

4    of the MGA Parties' initial or amended disclosures or interrogatory responses as an

5    individual knowledgeable about MGA's financial position[18] -- sweepingly ████████

6    ████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████

11

12   _____

13   2006) ("The Court finds that Plaintiff has not established an adequate foundation to allow Carney to testify to Plaintiff's projected revenue losses under Rule 701.  Rule

14   701 requires that the opinion be rationally based on the perception of the witness.  In the damages context, an owner must show how his personal knowledge of the

15   operating history of the business is sufficient to support his proffered testimony

16   regarding projected lost profits.  A Rule 701 witness cannot simply assert conclusions, but must provide an adequate foundation").

17     [17]  Many of these conclusions are expressly or implicitly based on the December

18   3, 2008 Orders and their purported legal effect.  Yet only one of the declarants claims to have even read these orders, and none established competence to offer

19   legal conclusions.

20     [18]  This fact is an independent basis to strike Mr. Wing's Declaration.  Fed. R. Civ. P. 37(c) ("[i]f a party fails to . . . identify a witness as required by Rule 26(a) or

21   (e), the party is not allowed to use that . . . witness to supply evidence on a motion,

22   at a hearing or at a trial . . . ."; see also Green v. Baca, 226 F.R.D. 624, 656 (C.D. Cal. 2005) (granting defendant's motion to exclude testimony of newly identified

23   witnesses because plaintiffs did not identify the witnesses, and defendant was not

24   able to propound discovery on the new witnesses "to determine his view of [the witness's] relevance or what he may seek to elicit from her as a witness").

25     [19]  Wing Decl. ¶ 6.

26     [20]  Wing Decl. ¶¶ 4, 9, 14 and 15.

27     [21]  Wing Decl. ¶ 14.
       [22]  Wing Decl. ¶ 12.

28     [23]  Wing Decl. ¶ 15.

1 ██████████████████.[24]   Mr. Wing furnishes no factual basis for his personal

2 knowledge of any of these statements, which alone renders them inadmissible.

3 Indeed, many of his bald assertions are not even demonstrably related to his stated

4 area of knowledge, MGA's finances.

5        The author of the letter that is attached as Exhibit A to the Kennedy

6 Declaration offers unsupported, argumentative statements as to what entire

7 populations of unnamed children value; the degree of similarity between BARBIE

8 dolls and Bratz dolls; Mattel's supposed motivations in requesting the injunction;

9 and a host of other issues.[25]   The author provides no basis or foundation for her

10 broad-brush opinions and contentions.

11        The Third-Party Declarations are filled with conclusory speculation as well.

12 For example, several of them state that ████████████████████████████████

13 ████████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████████████

21

22

---

[24]  Wing Decl. ¶ 16.

[25]  Kennedy Decl. Exh. A, at ¶¶ 3-5.

[26]  See, Declaration #3, ¶3; Declaration #13, ¶ 3; Declaration #7, ¶ 3; Declaration #8, ¶ 3; Declaration #11, ¶ 3; Declaration #9, ¶ 4; see also Declaration #10, ¶ 3 ("████████████████████████████████████████████ ████████████████████████████████████████████████").

[27]  Declaration #3, ¶ 5; Declaration #6, ¶ 5; Declaration #7, ¶ 5; Declaration #8, ¶ 5; Declaration #9, ¶ 5; Declaration #10, ¶ 6; Declaration #11, ¶ 5; and Declaration #13, ¶ 5.  See also, Declaration #10, ¶ 3 ("████████████████████████████

(footnote continued)

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ████████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 ████████████████████████[28]   None of the declarants establishes personal knowledge of

6 facts that would support these opinions, rendering them inadmissible.  <u>See</u> <u>United</u>

7 <u>States v. Durham</u>, 464 F.3d 976, 982 (9th Cir. 2006) (opinion testimony of lay

8 witnesses "must be predicated upon concrete facts within their own observation and

9 recollection − that is facts perceived from their own senses, as distinguished from

10 their opinions or conclusions drawn from such facts"); <u>United States v. Skeet</u>, 665

11 F.2d 983, 985 (9th Cir. 1982) (same).

12   Moreover, the Ex Parte Declarations lack facts or support sufficient to

13 connect the dots between the purported facts that are related and a finding of

14 irreparable harm to MGA or anyone else.  For this reason, they also lack foundation

15 and are inadmissible for the purpose for which MGA has offered them.

16   For example, the Wing Declaration does not demonstrate that ███████

17 ████████████████ or will otherwise suffer irreparable harm.  .It refers to

18 ████████████████████████████████████████████████.

19 The declaration provides no specifics or documentation on these subjects.  Wing

20 vaguely states that an unspecified "number████████████████████████

21 ████████████████████████████████████████████████

22

23 _____

24 ████████████████████████████████████████████

25 ").
   [28]   Declaration #8, ¶ 2.  Of course, this is not consistent with Larian's sworn

26 testimony to the jury and the Court at trial that Bratz sales were contracting.  <u>See</u>,

27 <u>e.g.</u>, Trial Tr. 6249:20-6250:8; 6252:19-23 and 6276:13-6277:3 (referencing a past
   and current decline in overall Bratz sales).

28   [29]   Wing Decl., ¶ 10.

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████.[32]  But

3 Wing does not name a single entity, provide a figure for ████████████

4 ███████████████████████████, or furnish supporting documentation for

5 any of it.

6       The details are crucial to MGA's request for emergency relief.  Without them,

7 the information does not support (a) ████████████████████████████████

8 ████████████████████████████████████████████████████████

9 ██████ as opposed to the open-ended, indefinite stay that it now has, or (b) ████

10 ████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████

23 █████████████████████████████  Such indefiniteness alone confirms the sheer

24

25    [30]  Wing Decl., ¶ 5 (emphasis added).

26    [31]  Wing Decl., ¶ 10.

27    [32]  Wing Decl., ¶ 11.
   [33]  Wing Decl., ¶6.

28    [34]  Wing Decl., ¶7.

1  conjecture of Wing's declaration.  And nowhere does Mr. Wing state that MGA's

2  largest shareholder, ██████████████████████████████

3  ██████████████████████████████████████, has been asked

4  and refused to provide a capital infusion to prevent ████████████

5  ████.[35]

6       While claiming that absent an extension of the current stay, ████████████

7  ████████████████████, MGA presents no evidence ████████████

8  ████.  No declaration suggests an event on or days after December 31 that will

9  ████████████████████████████████████████████

10  ████████████.  To the contrary, according to the evidence presented by MGA,

11  the only specific, quantifiable event that may occur within days of December 31 is

12  that ████████████████████████████████████████

13  ████.[36]  This alleged evidence, however, is not even admissible.  First, Mr. Wing's

14  declaration offers no factual support for this statement and attaches no

15  documentation.  Nor do any of the other declarations.  Although MGA presents

16  thirteen third-party declarations, there is no declaration from ████████.  Instead,

17  MGA presents the information as double (or even triple) hearsay, reporting through

18  Mr. Wing that unidentified ████████████████████████

19  ████████████████████████████████.  And it is conclusory:  there is no

20  indication that ████████ was aware the injunction has already been stayed, that it

21  attaches any significance to MGA's metaphysical distinction between stays, or that it

22  would not cancel its order if there were a stay pending appeal instead of the

23  indefinite stay now in place.

24

25

26  [35]  Declaration of Michael J. Wagner Submitted in Support of Mattel, Inc.'s

27  Opposition to the MGA Parties' Ex Parte Application and Motion to Stay Pending
   Appeal, filed concurrently ("Wagner Decl."), ¶14.

28  [36]  Wing Decl., ¶5.

1    But even if the evidence were admissible, and even if the order were
2  canceled, this relatively small loss cannot plausibly drive a company that sold
3  almost $1 billion in toys in 2007,[37] and that MGA told the Ninth Circuit just four
4  days ago was "worth hundreds of millions of dollars,"[38] ██████████████████.
5  The same is true even if ████████████████████████████████████████████████
6  ████████████████████████████████████████████████████████████████████████
7  ████████████████████████████████████.[39]

8    Most glaring of all, Wing fails to establish that a stay pending appeal, as
9  opposed to the stay MGA already has, will make any difference.  To establish its
10 entitlement to relief, MGA must offer evidence, that, if it existed, would be
11 unquestionably available to MGA and Mr. Wing, proving (a) ████████████████
12 ████████████████████████████████████████████████████████████████████
13 █████████████████; (b) ████████████████ depends on the mere difference in the
14 type of stay MGA demands as opposed to the stay it already has; (c) that difference
15 in stay will be manifested by the arbitrary December 31 deadline it insists on; and
16 (d) the stay it seeks will ████████████████████████ before December 31,
17 2008.  But MGA provides no such evidence, or even any basis for drawing the
18 conclusions it asserts from the evidence it does submit.  MGA has not stated what
19 percentage of its orders have been cancelled or will be cancelled.  MGA has not
20 provided current company balance sheets ████████████████████████. MGA
21 has merely stated that i██████████████████████████████████████████████████

23  [37]  Wagner Decl., Exh. C.
24  [38]  In its Motion to Exceed Page Limitation On Motion For Stay Pending
     Appeal, filed in the Ninth Circuit on December 19, 2008, MGA's attorney swore
25  under penalty of perjury that MGA was "a company worth hundreds of millions of
26  dollars." Proctor Decl., Exh. 30.
    [39]  Neither Mr. Wing nor Wal-Mart Declarants #1 and #12 indicated a particular
27  date by which ████████████████████████████████████████████████████████
28  ██████████████.

1 ████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████.

3 Furthermore, the relevant question here is irreparable harm, not the cancellation of

4 orders; and because Mr. Wing's conclusory statements do not establish the requisite

5 connection between the two, they lack foundation and are inadmissible.

6        Likewise, the third-party declarants merely say that a stay pending appeal is

7 needed, but fail to acknowledge that they are even aware that a stay already is in

8 place and certainly do not explain why any supposed difference between the current

9 stay and a stay pending appeal will matter.  Indeed, the broadly-worded Third-Party

10 Declarations are too conclusory to demonstrate irreparable harm to MGA or to

11 anyone else.  Many of the declarations from retailers refer broadly to ████████

12 ████████████████████████████████████████████████████████████

13 ████████████████████████.[41]  Yet, not one declaration provides quantifiable data,

14 dates, costs, or any tangible evidence of the existing or proposed transactions.  Many

15 of the declarations refer to ████████████████████████████████

16 ████████████████████████████.[42]  However, none of these declarations

17 ever explains the value, if any, of ████████████████████████████████

18 ████████████████ -- which in turn makes it impossible for a retail professional to

19 conclude whether there will be any impact, let alone a material impact, from the

20 injunction, the timing of any stay or the nature of any stay.[43]

21

22

23

_____

24   [40]  Declaration #1, ¶ 3; Declaration #2, ¶ 3; Declaration #4, ¶ 3; Declaration #5,
      ¶ 3; Declaration #9, ¶ 4; Declaration #11, ¶ 3; Declaration #12, ¶ 3.

25   [41]  Declaration #1, ¶ 4; Declaration #4, ¶ 4; Declaration #5, ¶ 4; Declaration #7,

26   ¶ 3; Declaration #12, ¶ 4.

   [42]  Declaration #1, ¶ 3; Declaration #2, ¶ 2; Declaration #4, ¶ 3; Declaration #11,

27   ¶ 3; Declaration #12, ¶ 3; Declaration #6, ¶ 3.

28   [43]  Declaration of Robert Weinberg, submitted concurrently herewith, ¶ 4.

1    The declarations from ████████████████████████████

2    ████████████████████[44] -- or much else in the way of supporting facts.

3    The declarants state that ████████████████████████████████

4    ████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████

6    ████████████.[49]  Such speculation lacks any demonstrated foundation.

7         These declarations also present insufficient facts to form a connection

8    between injunctive relief and these speculative claims of potential hardships to

9    MGA and other parties that it seeks to establish.  Canceling current or future orders

10   with MGA for Bratz products does not imply that retailers or licensees themselves

11   suffer harm (since they can substitute for other products, for example),[50] or that they

12   cannot recoup any losses they may have from MGA, the company with which they

13   have presumably entered into a contract and which by Court Order will be required

14   to reimburse third parties for the recall of MGA's infringing products.

15        Finally, the letter attached as Exhibit A to the Kennedy Declaration is too

16   conclusory and attenuated to establish that the public interest lies in favor of staying

17   the injunction pending appeal.   The letter involves one consumer expressing her

18

19

---

20   [44]   Declaration #3, ¶ 2; Declaration #10, ¶ 4; Declaration #13, ¶¶ 2, 3.

21   [45]   Declaration #3, ¶ 3; Declaration #7, ¶ 3; Declaration #10, ¶ 4; Declaration

22   #13, ¶ 3.
     [46]   Declaration #1, ¶ 5; Declaration #2, ¶ 4; Declaration #4, ¶ 5; Declaration #5,

23   ¶ 5; Declaration #9, ¶ 6; Declaration #11, ¶ 4; Declaration #12, ¶ 5; Declaration #6,

24   ¶ 4; Declaration #7, ¶ 4.
     [47]   Declaration #3, ¶ 4; Declaration #10, ¶ 5; Declaration #13, ¶ 4.

25   [48]   Declaration #3, ¶ 4; Declaration #10, ¶ 5; Declaration #13, ¶ 4.
     [49]   Declaration #3, ¶ 4; Declaration #7, ¶ 5; Declaration #13, ¶ 4.

26
     [50]   Notably, not a single declarant states that substitute products will necessarily

27   be non-MGA products.  The harm to MGA by removal of Bratz products, if Bratz

28   products are replaced with other MGA products, is marginal, not irreparable.

1  unsubstantiated, and often argumentative, opinion about the lawsuit and its effects.[51]

2  The writer's concern additionally seems to be based on her assumption that her

3  daughter must relinquish her Bratz dolls,[52] which is demonstrably mistaken and

4  therefore renders her opinions baseless for this further reason.

5  **III.   THE EX PARTE DECLARATIONS CONTAIN INADMISSIBLE,**

6  **UNRELIABLE HEARSAY**

7       Even when the declarants attempt to lay some foundation for their surmises

8  and claims, in many instances they make clear that they are offering nothing more

9  than inadmissible hearsay.  The declarations should be excluded on this basis as

10  well.

11       **A.   The Declarations Feature Hearsay, Double Hearsay And/Or Triple**

12       **Hearsay**

13       MGA offers the Wing and Third-Party Declarations, and the unsworn

14  consumer letter attached as Exhibit A to the Kennedy Declaration, to prove the

15  alleged truth of the matters asserted.  They are, however, replete with inadmissible

16  hearsay.  Fed. R. Evid. 801(c); Baliza v. I.N.S., 709 F.2d 1231, 1234 (9th Cir. 1983)

17  (reversal based on erroneous admission of affidavit offering evidence on material

18  issues); Florists' Transworld Delivery, Inc. v. Khan, 2001 WL 34045759 at 6 (D. Or.

19  2001) ("[O]ut-of-court memoranda exchanged among third parties and offered for

20  their truth are not cured of their hearsay characteristics by attaching them to an

21  affidavit or declaration and referring to them as 'true copies'"), citing Beyene v.

22  Coleman, 854 F.2d 1179, 1182-83, n. 3 (9th Cir. 1988) (finding declaration of

23  party's attorney attaching a letter from an aggrieved customer inadmissible hearsay).

24       Out-of-court statements made by third parties relating out-of-court

25  communications with other third parties are hearsay within hearsay, or double

26

27  [51]  Kennedy Decl., Exh. A.

28  [52]  Kennedy Decl., Exh. A, ¶ 3.

1   hearsay, and are inadmissible as well.  See, e.g.,  Fierberg v. Hyundai Motor Am.,
2   1997 WL 715457, 44 U.S.P.Q. 1305, 1306 (C.D. Cal. 1997) (letters from sponsors
3   discussing claimed confusion of third parties inadmissible as double hearsay).

4       Several of MGA's Ex Parte Declarations relate or heavily rely on hearsay or
5   even double or triple hearsay.  For example, Paragraphs 4 and 5 of Third-Party
6   Declaration #10 state that ██████████████████████████████
7   ████████████████████████████████████████
8   ████████████████████████████████, as well as the declarant's
9   statements based upon them, are hearsay, lack proper foundation, and are
10  inadmissible.

11      Declaration #3 contains several statements about the declarant's company's
12  licensees that also appear to be based on statements by those licensees.  For
13  example, Declarant #3 testifies about the ██████████████████████
14  ████████████████████████████████████████
15  ████████████████████████████████████████
16  ███████████████); id., ¶ 4 ("█████████████████
17  ████████████████████████████████████████
18  █████████████████████████").  Declaration #13 makes
19  the same statements and others that are inadmissible for this same reason.[53]   All
20  these statements that purportedly rely on or imply out-of-court, hearsay statements
21  by licensees, are inadmissible.

22      The Wing Declaration is filled with double and triple hearsay as well.  One
23  example of this is Mr. Wing's statement -- central to MGA's entire motion -- that
24  "████████████████████████████████████████

25
26  ───────────────
     [53]  Declaration #13, ¶¶ 3, 4.  See also id., ¶ 3 ("████████████
27  ████████████████████████████████████████
28  ██████████").

1    ████████████████████████████████████ ▪[54] ██████  statements to

2    the sales department is one layer of hearsay; the sales departments' statements to

3    Mr. Wing is a second layer of hearsay; and Mr. Wing's statements relating all of this

4    in his declaration is a third layer of hearsay.

5        Throughout his declaration, Mr. Wing summarizes purported statements made

6    by various third parties to MGA.  (See Wing Decl., ¶ 7 ("████████████████

7    █████████ . . ."); ¶10 ("███████████████████████████ . .

8    ."); ¶11 ("█████████████████████████████████████

9    ██████"); ¶ 13 ("█████████████████████████").  Mr. Wing does not say

10   whether he was present when these purported statements were made.  To the extent

11   he was present, his statements relating them are double hearsay; to the extent he was

12   not, they are at least triple hearsay.  Either way, they are inadmissible.

13       Finally, the unsworn consumer letter is itself hearsay and further contains

14   double hearsay in relating statements made to, and by, the purported author's

15   daughter.  Kennedy Dec. Exh. A at 1.  That the letter is not under oath renders it all

16   the more improper as evidence.  Multnomah Legal Services Workers Union v. Legal

17   Services Corp., 936 F.2d 1547, 1557 (9th Cir. 1991) (criticizing district court's

18   reliance on unsworn out-of-court statements as improper consideration of unreliable

19   hearsay).  It should be stricken.

20   **B.   MGA's Ex Parte Declarations -- Based As They Are On Boilerplate**

21   **And Even On Undisclosed Relationships With MGA -- Renders**

22   **Them Particularly Unreliable**

23       A primary reason for excluding hearsay evidence is the lack of opportunity to

24   test the truth or trustworthiness of such evidence through cross-examination.

25   Frazier v. Continental Oil Co., 568 F.2d 378 (5th Cir. 1978).  The hearsay rule thus

26   protects against non-specific or unsubstantiated claims that cannot be addressed

27

28   [54]  Wing Decl. ¶ 5.

1    through inquiry or cross-examination.  See, e.g., Avery Dennison Corp. v. Acco

2    Brands, Inc., 1999 WL 33117262 (C.D. Cal. 1999) (declarations of third parties

3    regarding phone calls and confusion were inadmissible hearsay due to lack of

4    identification of individuals or link between action and harm).

5         As noted above, many of MGA's Ex Parte Declarations relate purported

6    statements by multiple, unidentified others.  Neither the Court nor Mattel has had

7    any opportunity to cross-examine any of these individuals in order to assess the

8    sincerity, accuracy, completeness or materiality of their statements.

9         MGA's Third-Party Declarations appear particularly unreliable in that they all

10   contain the same or virtually identical boilerplate language.  Indeed, several of them

11   contain even the same typographical errors (such as the phrase "▮▮▮▮▮▮▮▮▮▮") or

12   contain the same hyperbole that lacks any foundation (like the hearsay claim about

13   ▮▮▮▮▮▮▮▮▮▮).[55]  Declaration # 11 and #12 still contain vestiges of the

14   "▮▮▮▮▮▮▮▮" notation in the signature block, and Declaration #2 even

15   contains a marking from Microsoft Word's "track changes" feature suggesting that

16   this declaration was revised by someone other than the declarant.[56]  These facts

17   render them suspect.  See Bortell v. Eli Lilly and Co., 406 F. Supp. 2d 1, 9 (D.D.C.

18   2005) (affidavits considered unreliable where affiants were presented with pre-typed

19   form and it was clear that much of the form had not been written by them).  Mattel

20   has no way of verifying the truth of these declarations, ascertaining the

21   circumstances under which they were generated, or exploring any alleged bases for

22   their unnamed hearsay sources and unexplained, sweeping assertions.

23        Perhaps more troubling, ▮▮▮▮▮▮▮▮▮▮▮▮▮ that employs

24   Third-Party Declarant #8, and ▮▮▮▮▮, Declarant #7's company, are both

25

26   ───────────────

27   [55]  Declaration #2, ¶ 4; Declaration #3, ¶¶ 3, 4; Declaration #6, ¶ 4; Declaration
     #7, ¶¶ 3, 4; Declaration #8, ¶¶ 3, 4; Declaration #11, ¶ 4; Declaration #13, ¶ 3.

28   [56]  Declaration #2, ¶¶ 1-2.

1 │ distributors to a European company ████████████████████████████

2 │ ████████████████████████."[57]   Neither the declarants nor MGA disclosed

3 │ these facts to the Court or Mattel.  Mattel uncovered them only by its own research

4 │ after the ex parte was filed.  Even apart from the serious questions this omission

5 │ raises about the candor of MGA's ex parte submission, such undisclosed

6 │ relationships with MGA or its executives reveal that the dangers of reliance on the

7 │ proffered hearsay is both acute and real.

8 │      The hearsay in the declarations is inadmissible and should be stricken.

9 │ **<u>Conclusion</u>**

10 │      For all of the foregoing reasons, Mattel respectfully requests that the the Ex

11 │ Parte Declarations be stricken.

12 │

13 │ DATED:  December 23, 2008     QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

14 │

15 │      By /s/ Diane C. Hutnyan

16 │      Diane C. Hutnyan
   │      Attorneys for Mattel, Inc.

17 │

18 │

19 │

20 │

21 │

22 │

23 │

24 │

25 │

26 │

27 │ ────────────────

28 │ [57] ███████████████████████████

MATTEL'S EX PARTE TO STRIKE DECLARATIONS IN SUPPORT OF MGA'S REQUEST FOR STAY