QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **[PUBLIC REDACTED] MATTEL, INC.'S REPLY IN SUPPORT OF *EX PARTE* APPLICATION TO STRIKE THE WING, KENNEDY, AND THIRD-PARTY DECLARATIONS IN SUPPORT OF THE MGA PARTIES' REQUEST FOR STAY** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |

Hearing Date:    December 30, 2008
Time:            10:00 a.m.
Place:           Courtroom 1

**Phase 1(c)**

1

# <u>TABLE OF CONTENTS</u>

2
<u>Page</u>

3

4
PRELIMINARY STATEMENT ...................................................................1

5
ARGUMENT.... .........................................................................................2

6
**I.**     MGA'S RULE 62(C) ARGUMENTS ARE UNAVAILING ........................2

7
**II.**    COMPETENT OR NOT, THE EX PARTE DECLARANTS DO NOT
       PROVIDE SUFFICIENT FOUNDATION FOR THEIR STATEMENTS... ..4

8

**III.**   THE DECLARANTS' STATEMENTS ARE OFFERED FOR THE
9      TRUTH AND INADMISSIBLE... ......................................................7

10
**IV.**    MATTEL'S EX PARTE APPLICATION WAS PROPER UNDER THE
       EXPEDITED SCHEDULE DEMANDED BY MGA ..................................10

11
CONCLUSION. ......................................................................................11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## Cases

Compare eBay, Inc. v. MercExchange, LLC,
   547 U.S. 388 (2006) ...................................................................................... 2

Far Out Prods.,  Inc. v. Oskar,
   247 F.3d 986 (9th Cir. 2001) ........................................................................ 4

Flynt Distributing Co., Inc. v. Harvey,
   734 F.2d 1389 (9th Cir. 1984) ...................................................................... 3

In re Haverhill Technology Group,
   310 B.R. 478 (Bkrtcy. D. Mass. 2004) ........................................................ 2

Hilton v. Braunskill,
   481 U.S. 770 (1987) ...................................................................................... 2

Ideal Toy Corp. v. Sayco Doll Corp.,
   302 F.2d 623 (2nd Cir. 1962) ....................................................................... 4

McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, et al.,
   686 F.2d 731 (9th Cir.1982) ......................................................................... 3

Natural Res. Defense Council Inc. v. Southwest Marine Inc.,
   242 F.3d 1163 (9th Cir. 2001) ...................................................................... 3

Robb Container Corp. v. Sho-Me Co.,
   566 F. Supp. 1143 (N.D. Ill. 1983) .............................................................. 4

State of N. Y. v. Nuclear Regulatory Commission,
   550 F.2d 745 (2d Cir. 1977) (emphasis added) ............................................ 4

Stuart v. Unum Life Ins. Co. of Am.,
   217 F.3d 1145 (9th Cir. 2000) .................................................................. 7, 8

Travelers Cas. & Sur. Co. of Am. v. Telstar Const. Co., Inc.,
   252 F. Supp. 2d 917 (D. Ariz. 2003) ........................................................... 5

U.S. v. Dieter,
   429 U.S. 6 (1976) .......................................................................................... 2

U.S. v. Jones,
   608 F.2d 386 (9th Cir. 1979) ........................................................................ 2

United Parcel Service, Inc. v. U.S. Postal Service,
   475 F. Supp. 1158 (E.D. Pa. 1979) .............................................................. 4

United States v. Montana,
   199 F.3d 947 (7th Cir. 1999) ............................................................. 7, 8, 10

United States v. Meza-Avila,
   44 Fed.Appx. 131, 137 (9th Cir. 2002) ........................................................ 5

United States v. Pang,
    362 F.3d 1187 (9th Cir. 2004) .............................................................. 7, 8

Walker v. Hoffman,
    583 F.2d 1073 (9th Cir. 1978) ................................................................ 5

**Statutes**

28 U.S.C. § 1292(a) ....................................................................................... 3

Fed. R. App. P. 4(a) ....................................................................................... 3

Fed R. Civ. P. 36 .......................................................................................... 2

Fed. R. Civ. P. 62(c) ............................................................................... 1, 3, 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

MGA's opposition brief fails to establish the admissibility of MGA's declarations and reads much like the declarations at issue: long on argument, speculation and conclusory statements, and short on foundation and relevance. There are three main points in Mattel's *ex parte,* none of which is meaningfully opposed by MGA.

First, MGA argues that it is not seeking reconsideration but for a stay under <u>Rule</u> 62(c). But even if that were true, MGA still loses because an injunction order may be altered under <u>Rule</u> 62(c) "only on the basis of evidence that was before the trial judge at the time he rendered the ruling under appeal."

Second, MGA fails to address the declarations' lack of foundation and relevance. Instead, it raises a straw man about competence and, effectively conceding lack of foundation, seeks to excuse this fatal defect by invoking exigency. But nothing in the law transmogrifies inadmissible declarations into admissible evidence based on a party's self-serving claims of extenuating circumstances. In fact, the proposition is circular. MGA is claiming an emergency before December 31, but the only proffered evidence of the purported emergency is inadmissible. In fact, if the declarants are as competent, and MGA's situation as dire, as MGA claims, MGA had all the more reason to provide appropriately detailed, well-founded, admissible declarations that addressed irreparable harm to MGA before December 31, 2008. Certainly, it could have submitted supporting financial records -- records that MGA undeniably has in its possession. And MGA had sufficient time to submit admissible evidence if had chosen. It took over a week to file its allegedly urgent motion and then afterward had ample time to produce multiple filings in this Court and in the Ninth Circuit. The lack of foundation in the declarations alone necessitates their exclusion.

Finally, MGA claims that statements related or relied upon by the declarants to establish the alleged facts that orders will be canceled, that credit terms will be revoked, that licensees will be harmed and the like -- in short, *the statements MGA offers for*

*their truth* -- are verbal acts of nonhearsay.  This contention is belied by a plain reading of MGA's own papers and the authorities cited by MGA.[1]

The declarations should be stricken as inadmissible.

## **Argument**

## I.   **MGA'S RULE 62(C) ARGUMENTS ARE UNAVAILING**

MGA claims it is not relitigating the same issues because the legal standards for an injunction versus a stay pending an appeal are different.  This is a distinction without a difference.  MGA is correct to the extent that there are two tests for an injunction and a stay pending an appeal, each of which consists of four factors for a court to consider.  Compare eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006) (injunction standard) with Hilton v. Braunskill, 481 U.S. 770, 776 (1987) (standard for a stay pending appeal).  MGA overlooks, however, that the two tests employ the same balancing test, weighing the hardships that the parties would face if the relief is or is not granted.  See eBay, 547 U.S. at 391 (for injunction, movant must demonstrate "(3) that considering the *balance of hardships between the plaintiff and defendant*, a remedy in equity is warranted") (emphasis added); Hilton, 481 U.S. at 776 ("the factors regulating the issuance of a stay are … (2) *whether the applicant will be irreparably injured absent a stay*; (3) *whether issuance of the stay will substantially injure the other parties interested in the proceeding*").  It is MGA, not Mattel, that is "wrong on the law"—and MGA's arguments against the injunction, which were  made in accordance with the overlapping four-factor tests set forth in eBay and Hilton, confirms the point.[2]

---

[1]   MGA spends almost half its brief on vitriol over Mattel's request for *ex parte* relief. It was MGA that called the emergency and insisted upon a ruling by the Court by December 31.  The schedule MGA insisted on, coupled with MGA's delays in filing its stay application in the first instance, its inappropriate AEO designations of the declarations and its decision to initiate duplicative proceedings in the Ninth Circuit, made it impracticable for this motion to be heard on normal notice.  Indeed, given this motion's central relatedness to the issues on MGA's *ex parte*, it is only logically resolved with that *ex parte*.

[2]   That MGA's motion was not styled a "motion for reconsideration" is immaterial. Courts often encounter parties seeking reconsideration under the guise of another motion and treat them based on their function, not their label.  See, e.g., U.S. v. Jones, 608 F.2d 386, 389-390 (9th Cir. 1979) (Fed R. Civ. P. 36 motion properly construed as (footnote continued)

Arguing that limitations on new but previously available evidence are "inapplicable," MGA insists that its stay motion is made pursuant to <u>Fed. R. Civ. P.</u> 62(c), and therefore its new evidence is allowed.  The contention fails.  First, because the Ninth Circuit has yet to accept jurisdiction of MGA's appeal, <u>Rule</u> 62(c) is inapplicable.  Second, even if <u>Rule</u> 62(c) were to apply, new but previously available evidence may not be used to modify the injunction.  Either way, MGA loses.

Rule 62(c) only applies when an appeal is made, as its singular purpose is to carve out a narrow exception from the general rule that an appeal "divests the district court of jurisdiction over the matters appealed."  <u>McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, et al.,</u> 686 F.2d 731, 734 (9th Cir. 1982); <u>see Flynt Distributing Co., Inc. v. Harvey,</u> 734 F.2d 1389, 1392, n. 1 (9th Cir. 1984) (same). Specifically, <u>Rule</u> 62(c) permits a district court to modify or stay an injunction pending appeal to preserve the status quo where appropriate.  <u>See</u> <u>McClatchy Newspapers</u>, 686 F.2d at 734; <u>see also Natural Res. Defense Council Inc. v. Southwest Marine Inc.</u>, 242 F.3d 1163, 1166 (9th Cir. 2001) (same).  In short, if there is no appeal, then there can be no exception under <u>Rule</u> 62(c)—and MGA's argument fails.

Right now, MGA does not have a proper appeal pending.  Although MGA has filed a notice of appeal of this Court's December 3, 2008 "Order Granting Permanent Injunction" (and related orders issued the same day), Mattel has moved the Ninth Circuit to dismiss that notice for lack of appellate jurisdiction.[3]  As the plain text of those orders makes clear, this Court not yet entered an enforceable injunction appealable under 28 U.S.C. § 1292(a).  Further, even if (contrary to law) jurisdiction had once been transferred to the Ninth Circuit, that jurisdiction was divested under Fed. R. App. P. 4(a) when the parties filed their post-trial motions  in this Court, including

a motion for reconsideration based on the motion's "its practical purpose and effect … rather than the way it was captioned"); U.S. v. Dieter, 429 U.S. 6, 8-9 (1976) (post-dismissal motion properly construed as motion for reconsideration based on substance of motion even though not captioned as such); In re Haverhill Technology Group, 310 B.R. 478, 480 (Bkrtcy. D. Mass. 2004) ("placing substance over form," Fed. R. Bank. P. 9033 objection properly construed as motion for reconsideration and denied).
[3]   <u>See</u> Mattel's Motion to Dismiss Appeal, previously lodged with the Court.

1  MGA's motion for judgment as a matter of law.  Without an appeal pending, on its

2  face, Rule 62(c) does not apply and cannot permit MGA's new evidence.

3        Independently, MGA's reliance on Rule 62(c) is misplaced because it does not

4  permit MGA to submit new evidence.  An injunction may be altered (including by a

5  stay request) under <u>Fed. R. Civ. P.</u> 62(c) "*only on the basis of evidence that was before*

6  *the trial judge at the time he rendered the ruling under appeal*."  <u>State of N. Y. v.</u>

7  <u>Nuclear Regulatory Commission</u>, 550 F.2d 745, 758-759 (2d Cir. 1977) (superseded on

8  other grounds) (affirming district court's refusal to consider new evidence submitted in

9  support of motion for preliminary injunction because such new evidence related to

10  issues on appeal) (emphasis added).  None of the declarations proffered by MGA had

11  ever been submitted to this Court before, and certainly not before it issued the

12  December 3 Order that MGA is now seeking to appeal.  Therefore, even assuming,

13  *arguendo*, that MGA has an actual appeal pending before the Ninth Circuit, MGA

14  would still be prohibited from submitting new evidence under <u>Rule</u> 62(c).  <u>See Ideal</u>

15  <u>Toy Corp. v. Sayco Doll Corp.</u>, 302 F.2d 623, 625 (2nd Cir. 1962) (district court did

16  not have discretion to examine new evidence on motion to vacate injunction, because

17  such new evidence related to issues on appeal); <u>United Parcel Service, Inc. v. U.S.</u>

18  <u>Postal Service</u>, 475 F. Supp. 1158, 1163-64 (E.D. Pa. 1979) (refusing to consider new

19  evidence on motion to vacate injunction because acting on such new evidence would

20  alter the "status quo" pending appeal of the injunction order); <u>Robb Container Corp. v.</u>

21  <u>Sho-Me Co.</u>, 566 F. Supp. 1143, 1158 (N.D. Ill. 1983) (holding that district courts "lack

22  jurisdiction to consider new evidence" after notice of appeal had been filed).

23  **II.**   **<u>COMPETENT OR NOT, THE EX PARTE DECLARANTS DO NOT</u>**

24  **<u>PROVIDE SUFFICIENT FOUNDATION FOR THEIR STATEMENTS</u>**

25        MGA's three-page argument that a witness need only have personal knowledge

26  to be competent is beside the point.  Generally competent or not, a declarant cannot

27  simply make conclusory statements; he or she still must lay sufficient foundation and

28  provide factual support in order for the statements to be admissible.  <u>Far Out Prods.,</u>

1   Inc. v. Oskar, 247 F.3d 986, 997 (9th Cir. 2001) (rejecting conclusory affidavits

2   because they failed to either set forth specific facts or identify evidence with reasonable

3   particularity); Travelers Cas. & Sur. Co. of Am. v. Telstar Const. Co., Inc., 252 F.

4   Supp. 2d 917, 924 (D. Ariz. 2003) ("In the Ninth Circuit, regardless of the source of

5   evidence, proper foundation must be laid.   A plaintiffs' belief without evidence

6   supporting that belief, is no more than speculation or unfounded accusation") (emphasis

7   in original); see also United States v. Meza-Avila, 44 Fed.Appx. 131, 137 (9th Cir.

8   2002) ("[t]he district court abused its discretion by adopting unreliable and conclusory

9   statements in the PSR"); Walker v. Hoffman, 583 F.2d 1073, 1075 (9th Cir. 1978)

10  (holding plaintiff's declaration that he was "harassed" amounts to "nothing more than

11  an unsupported conclusory allegation").   MGA's unsupported suggestion that a lack of

12  foundation goes to weight, not admissibility, is not the law.

13       Even if it were enough (and it is not), that a declarant can be qualified to testify

14  about his or her own business does not reach the issue here either, because none of the

15  third-party declarants confines their testimony to their own companies.   Nearly all of

16  them make sweeping assertions about the Bratz brand in general, without providing any

17  facts supporting such alleged knowledge.[4]   Several declarants also testify as to the

18  financial position of other companies, without establishing any foundation to so do.[5]

19       MGA does not even defend the consumer letter, merely calling Mattel's objection

20  "absurd[]."[6]   Having presented no case law or argument to establish the letter's

21  admissibility, MGA concedes it should be stricken.

22

23  _____

    [4]   Decl. #3, ¶ 5 ("

24

25                                                                      "); see also Tab

26  #6, ¶ 5 (same), Tab #7, ¶ 5 (same), Tab #8, ¶ 5 (same), Tab #9, ¶ 5 (same), Tab #10, ¶ 6
    (same), Tab #11, ¶ 5 (same), and Tab #13, ¶ 5 (same).

27  [5]   Decl. #10, ¶ 4 ("
                           "); Decl. #3, ¶ 3 ("

28  [6]   Opp. at 12 n.4.

1    As for the Wing Declaration, MGA resorts to argumentative, conclusory

2 statements -- "Mattel's objections border on frivolous" -- and engaging in strawman

3 arguments by suggesting that Mr. Wing would need to be a "fortune-teller" or

4                                        satisfy Mattel's objections.[7]  Such misdirected

5 arguments fail to establish that Mr. Wing's claims have proper foundation.  MGA never

6 shows how Mr. Wing's testimony does.  Nor does MGA explain how Mr. Wing's

7 conclusory assertions provide admissible support for the proposition that absent a stay

8 pending appeal -- as opposed to the pending stay -- MGA will suffer irreparable harm

9 by December 31, 2008.  Not one word is said about how the double hearsay claim that

10

11

12                                        could threaten MGA's viability in the next five days.

13    MGA's argument that the declarations' fatal flaws are excused by exigency

14 carries no weight.  MGA cites no case to support this proposition.  Nor has there been

15 any well-founded claim of exigency.  In fact, MGA's argument is wholly circular

16 because its entire claim of urgency is based on inadmissible statements in declarations

17 that MGA asserts show urgency.  But even apart from the lack of legal merit to MGA's

18 argument, it is unpersuasive.  MGA had ample time to submit solid, admissible

19 evidence of its financial condition, including by introduction of financial statements

20 that are indisputably available to it.  Not only did MGA have weeks to oppose Mattel's

21 injunction motion in the first place, but MGA brought its present *ex parte* a full eight

22 days after the Court's December 3 rulings.  It is implausible to suggest, as MGA does,

23 that the at least four large law firms it employs in this case were unable in that time to

24 prepare and submit a single, detailed and well-founded declaration containing

25 admissible evidence showing that                                        will

26 occur by December 31.  MGA's failure to provide such evidence, together with its

27

28 
_____
[7]   Opp. at 12.

1  repeated revisions of                                                    , is not due to

2  exigency, but more suggestive that there is no basis in fact to its claimed emergency.

3  **III.   THE DECLARANTS' STATEMENTS ARE OFFERED FOR THE**

4  **TRUTH AND INADMISSIBLE**

5  MGA argues that the out-of-court statements of others that are related by or

6  relied upon by the declarants are verbal acts.  As MGA's own authority notes, however,

7  this exception applies only when "no issue is raised as to the truth of anything asserted."

8  Stuart v. Unum Life Ins. Co. of Am., 217 F.3d 1145, 1154 (9th Cir. 2000); see also

9  United States v. Montana, 199 F.3d 947, 950 (7th Cir. 1999) ("[p]erformative

10 utterances are not within the scope of the hearsay rule, because they do not make any

11 truth claims").  MGA makes evident in its own submissions that MGA relies on the

12 truth of these statements --

13                                                        . For example, on page 5

14 of its *ex parte*, MGA argues that

15

16

17

18

19                                              ."  MGA's *ex parte* makes quite

20 clear that MGA is relying -- and relying centrally -- on the truth of these hearsay

21 statements by unidentified third parties.

22 Moreover, MGA's authority concedes that the exception for verbal acts applies

23 only to statements that have legal significance or commit the speaker to a binding

24 action.  MGA's cited case law recognizes that the Advisory Committee to the Federal

25 Rules of Evidence on hearsay noted that verbal acts and verbal parts of acts are

26 categories of statements where "the statement itself affects the legal rights of the parties

27 or is a circumstance bearing on conduct affecting their rights."  Stuart, 217 F.3d at

28 1154; United States v. Pang, 362 F.3d 1187, 1192 (9th Cir. 2004) ("[O]ut-of-court

1   statements that are offered as evidence of legally operative verbal conduct are not

2   hearsay").  In <u>Stuart</u>, the court admitted the operative insurance policy.  <u>Id.</u> ("[t]he

3   Policy is . . . excluded from the definition of hearsay and is admissible evidence

4   because it is a legally operative document that defines the rights and liabilities of the

5   parties in this case").  Similarly, in <u>Pang</u>, the court admitted cancelled checks, since

6   they were legally operative documents.  <u>Pang</u>, 362 F.3d at 1192[8] ("[c]hecks fall

7   squarely in this category of legally-operative verbal acts that are not barred by the

8   hearsay rule.")  This is quite different from, and significantly more reliable than, the

9   unverified, undocumented out-of-court statements by unidentified third-parties that

10  MGA offers.

11      Similarly, another of MGA's cases notes that performative acts can be relied

12  upon not for their truth, but for the course of action the statements commit the speakers

13  to.  <u>Montana</u>, 199 F.3d at 950 ("the former-illustrated by a promise, offer, or demand-

14  commit the speaker to a course of action.").[9]  Here, MGA provides absolutely no

15  argument or explanation of what, if any, legal significance the

16                                                                        .  This is because the

17  statements have no legal significance whatsoever and do not commit the          to

18  any courses of action.  MGA relies upon these statements only for their truth.[10]

19      As for Mattel's "speculation" about the circumstances under which the Third-

20  Party Declarations were created, MGA misses the point.  It is not about whether the

---

[8]   The <u>Pang</u> court further noted that the checks were reliable, since they were self-authenticating legal documents.  362 F.3d at 1192 ("As a negotiable instrument, a check is a species of commercial paper, and therefore self-authenticating.").  The hearsay licensee statements that MGA submits  have no such guarantees of reliability.

[9]   In <u>Montana</u>, the admissible statement was an offer of $10,000 for favorable testimony, a contractual offer.  The court there noted that if the statement had been different, along the lines of the licensee's statements, that rely on the truth of the statement, it would have been hearsay.  199 F.3d at 950 ("Had the marshal overheard Dodd tell Montana, "your father has promised me $10,000," Dodd's overheard statement would have been hearsay, because its value as evidence would have depended on its being truthful, that is, on such a promise having actually been made.").

[10]  MGA's opposition fails to offer any explanation for why the consumer's hearsay statements are admissible, choosing instead to berate Mattel for raising the objection.  Opp. at 12 n.4 and 13 n.5.  Since MGA has conceded the point, the statements should be stricken.

1    declarations are authentic; it is about the credibility, trustworthiness and undisclosed

2    biases of the evidence provided by the declarants, something that neither the Courts nor

3    Mattel was not afforded an opportunity to explore.  What is known is that -- assuming

4    that                                    as MGA contends -- rather than asking these

5    ostensibly highly competent witnesses to provide detailed foundational evidence

6    supported by corroborating documentation, MGA admits it provided a basic form for

7    them to work from -- a form containing a series of conclusory and in many cases

8    hearsay statements.  The declarations were conclusory because the dangers of hearsay

9    were, and remain, present.[11]

10          MGA also sidesteps the bias issue, complaining that Mattel has not sufficiently

11   identified the specific motivations of these declarants.  But that is the point:  Neither

12   Mattel, nor this Court, is in a position to do so, and that was *MGA's choice.*  MGA

13   specifically chose fourteen declarants that were never listed in MGA's initial or

14   amended disclosures, in responses to interrogatories seeking the identify of witnesses to

15                                   , or in any other pre-trial disclosures for Phase 1, and

16   presented their conclusory testimony on an *ex parte* application, concealed by an

17   inapplicable confidentiality designation.  Indeed, it is known, even without discovery

18   or candid disclosure by MGA, that at least two declarants have undisclosed business

19   ties to MGA executives, and another (Declarant #1) appears to have a personal

20   relationship with Isaac Larian.[12]  At bottom, and as MGA cannot dispute, the additional

21   dangers of hidden bias that animate the hearsay rule exist here.

22

23

24

25

26   _____
     [11]    That the typographical errors remain is more probative of the fact that the drafter of
27   the form declarations, MGA, had control of the final declarations, than otherwise.
     [12]    Trial Exhibit 942, Hutnyan Decl. Ex. C ("
28                                                    ") (emphasis added).

## IV.  MATTEL'S EX PARTE APPLICATION WAS PROPER UNDER THE EXPEDITED SCHEDULE DEMANDED BY MGA

Lacking substantial arguments against the substance of Mattel's motion, MGA devotes much of brief to MGA's conjecture that Mattel's *ex parte* filings are part of some sort of insidious plan to prejudice MGA and its counsel.  In particular, MGA speculates that Mattel's counsel purposefully waited to file its motion to strike on an *ex parte* basis, forcing MGA and its counsel to work up to Christmas Eve in order to file its opposition.  MGA's rhetoric is misplaced.

Because of MGA's choices, Mattel had no alternative but to file its responses on an *ex parte* basis.  It was MGA, and MGA alone, that is responsible for the untold number of judges, lawyers, clerks, secretaries and staff (on both sides and in two courts) who had to sacrifice  their holidays because of MGA's claimed emergency.  MGA claimed imminent extinction if the Court's already-stayed permanent injunction is not immediately stayed; it filed hundreds of pages of briefing and purported evidence with the Court; demanded a full hearing on an expedited basis by December 31, 2008; and it insisted that all briefing be submitted by December 30, 2008.  If Mattel had filed its motion to strike and accompanying objections on the "regular schedule" that MGA insists should have been followed, Mattel's motion could not have been heard until after MGA's expedited request for a stay was resolved.  Indeed, even if Mattel had filed its motion the day after MGA's ex parte, the motion still wouldn't have been heard by the December 30 hearing.  This amply justified proceeding *ex parte* here.

Mattel also filed its *ex parte* promptly after the parties and the Court had resolved the briefing schedule (and indeed consistent with the most recent scheduling stipulation that MGA itself agreed to).[13]  MGA overlooks that the *ex parte* goes directly and

---

[13]  This was fully communicated to MGA's counsel.  See Declaration of Rachael L. McCracken, dated December 25, 2008, ¶ 5.  The idea that Mattel's plan was to make MGA's counsel work on Christmas Day does not make coherent sense.  Nor did any such thing even happen.  By bringing its *ex parte* motion to strike on Tuesday (consistent with the stipulated schedule), MGA's response was due the day before Christmas (not a Court or business holiday).  Further, in advance Mattel's counsel (footnote continued)

1  entirely to MGA's declarations -- declarations that Mattel's counsel needed to discuss

2  with Mattel in order to fairly respond, but which Mattel's counsel could not do because

3  of MGA's AEO designations.  Those delays too were attributable to MGA, for its

4  participation in the improper designation at the outset and subsequently as a result of

5  MGA's delays in responding to Mattel's *ex parte* to re-designate the declarations.

6                                      **Conclusion**

7          For all of the foregoing reasons, Mattel respectfully requests that the Ex Parte

8  Declarations be stricken.

9

10  DATED:  December 26, 2008          QUINN EMANUEL URQUHART OLIVER & HEDGES. LLP

11

12                                      By */s/ Diane C. Hutnyan*
                                           Diane C. Hutnyan
13                                         Attorneys for Mattel, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27  ──────────────────

28  repeatedly discussed with MGA's counsel the nature of Mattel's contemplated *ex parte*, listing each of the grounds for that motion.  Id., ¶¶3-5.  Finally, MGA's implication that Mattel failed to serve any papers that it filed (Opp. at 2, 6) is incorrect.  See id., ¶ 8.