# Exhibit 1

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Ann Jones, Paralegal (404) 881-7563

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

CT Corporation System
2295 Gateway Oaks Drive
Ste 185
Sacramento CA 95833

**06-7090317861**
**10/30/2006  16:46**

**FILED**
CALIFORNIA
SECRETARY OF STATE
SOS

102148 10002     UCC 1 FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| MGA Entertainment (Mexico), Inc. | | | | |

| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 16380 Roscoe Blvd., Suite 200 | Van Nuys | CA | 91406 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| 20-0998523 | | Corporation | California | CA C2643976 | ☐NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Wachovia Bank, National Association, as Agent | | | | |

| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| One South Broad Street, PA 4830 | Philadelphia | PA | 19107 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All of the Debtor's right, title and interest in the following, whether now owned or hereafter acquired: (a) subject to the limitation set forth in Exhibit A attached hereto, equity interests in MGAE de Mexico SRL de CV, (b) related assets and (c) proceeds thereof, all as more particularly described on Exhibit A attached hereto.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐LESSEE/LESSOR | ☐CONSIGNEE/CONSIGNOR | ☐BAILEE/BAILOR | ☐SELLER/BUYER | ☐AG. LIEN | ☐NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | ☐All Debtors | ☐Debtor 1 | ☐Debtor 2 |

**8. OPTIONAL FILER REFERENCE DATA**
File with California Secretary of State          MN1076 88845-1

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

Gardner 19513/315438

EXHIBIT 1
PAGE 6

## Exhibit A

**Debtor:**
MGA Entertainment (Mexico), Inc.
16380 Roscoe Blvd., Suite 200
Van Nuys, California 91406

**Secured Party:**
Wachovia Bank, National Association, as Agent
One South Broad Street, PA 4830
Philadelphia, Pennsylvania 19107

All of Debtor's right, title and interest in, to and under the following (collectively, the "Collateral"):

(a) all Equity Interests now or hereafter acquired or held by Debtor in the issuer (the "Issuer") described in Schedule 1 attached hereto;

(b) all payments due or to become due to Debtor in respect of any of the foregoing;

(d) all of Debtor's claims, rights, powers, privileges, authority, puts, calls, options, security interests, liens and remedies, if any, in respect of any of the foregoing;

(e) all of Debtor's rights to exercise and enforce any and every right, power, remedy, authority, option and privilege of Debtor relating to any of the foregoing including, without limitation, any power to (i) terminate, cancel or modify any agreement, (ii) execute any instruments and to take any and all other action on behalf of and in the name of Debtor in respect of any of the foregoing and the applicable Issuer thereof, (iii) exercise voting rights or make determinations, (iv) exercise any election (including, but not limited to, election of remedies), (v) exercise any "put", right of first offer or first refusal, or other option, (vi) exercise any right of redemption or repurchase, (vii) give or receive any notice, consent, amendment, waiver or approval, (viii) demand, receive, enforce, collect or receipt for any of the foregoing, (ix) enforce or execute any checks, or other instruments or orders, and (x) file any claims and to take any action in connection with any of the foregoing;

(f) all certificates and instruments representing or evidencing any of the foregoing;

(g) all other rights, titles, interests, powers, privileges and preferences pertaining to any of the foregoing; and

(h) all Proceeds of any of the foregoing.

Notwithstanding the foregoing, Debtor has only granted a security interest in (x) 65% (or such greater percentage that, due to a change in an applicable law after October 27, 2006, (A) could not reasonably be expected to cause the undistributed earnings of the Issuer as determined for United States federal income tax purposes to be treated as a deemed dividend to the Issuer's United States parent and (B) could not reasonably be expected to cause any material adverse tax consequences) of the issued and outstanding Equity Interest of the Issuer entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) and (y) 100% of the issued and outstanding Equity Interest of the Issuer not entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)).

As used herein:

"Equity Interest" means, with respect to any Person, any share of capital stock of (or other ownership interests in) such Person, any warrant, option or other right for the purchase or other

A-1

EXHIBIT 1
PAGE 4

acquisition from such Person of any share of capital stock of (or other ownership interests in) such Person, any security convertible into or exchangeable for any share of capital stock of (or other ownership interests in) such Person or warrant, right or option for the purchase or other acquisition from such Person of such shares (or such other ownership interests), and any other ownership interest in such Person (including, without limitation, partnership, member or trust interests therein), whether voting or nonvoting, and whether or not such share, warrant, option, right or other interest is authorized or otherwise existing on any date of determination.

"Person" means an individual, corporation, partnership, limited liability company, association, trust or unincorporated organization, or a government or any agency or political subdivision thereof.

"Proceeds" means all proceeds (including proceeds of proceeds) of any of the Collateral including all: (a) rights, benefits, distributions, premiums, profits, dividends, interest, cash, instruments, documents of title, accounts, contract rights, inventory, equipment, general intangibles, payment intangibles, deposit accounts, chattel paper, and other property from time to time received, receivable, or otherwise distributed in respect of or in exchange for, or as a replacement of or a substitution for, any of the Collateral, or proceeds thereof (including any cash, Equity Interests, or other instruments issued after any recapitalization, readjustment, reclassification, merger or consolidation with respect to the Issuers and any security entitlements, as defined in Section 8-102(a)(17) of the UCC, with respect thereto); (b) "proceeds," as such term is defined in Section 9-102(a)(64) of the UCC; (c) proceeds of any insurance, indemnity, warranty, or guaranty (including guaranties of delivery) payable from time to time with respect to any of the Collateral, or proceeds thereof; and (d) payments (in any form whatsoever) made or due and payable to Debtor from time to time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the Collateral, or proceeds thereof.

EXHIBIT 1
PAGE 1

## SCHEDULE 1

### MGA Entertainment (Mexico), Inc.
Pledged Equity Interests

| Issuer | Jurisdiction of Formation | Class of Equity Interest | Certificate Number (if any) | Percentage of Ownership |
|---|---|---|---|---|
| MGAE de Mexico SRL de CV | Mexico | Shares Parte Social | N/A | 65% |

EXHIBIT __1__

PAGE __2__

| FILING OFFICER STATEMENT | |
|---|---|
| **INTERNAL USE ONLY** | |
| 1.Identification of the Record to which this **FILING OFFICER STATEMENT** relates. | |
| 1a. INITIAL FINANCING STATEMENT #: 067090317861 | **DOCUMENT NUMBER:** 10268190001<br>**FILING NUMBER:** 0670908369<br>**FILE DATE/TIME:** 11/3/2006 1:34:00 PM |
| 1b. RECORD TO WHICH THIS STATEMENT RELATES: | THE ABOVE SPACE IS FOR THE CA FILING OFFICE USE ONLY |

2. Describe the inaccuracy or mistake on the part of the file office:

☒ Debtor      ☐ Secured Party
☐ Name and Address not indexed.
☒ Name Indexed Incorrectly
☐ Address indexed Incorrectly

☐ File Date entered incorrectly
☐ Wrong Action type entered
☐ Wrong Filing Type entered
☐ Filed In Error
☐ Other

3. Describe filing office administrative action taken as a result of inaccuracy or mistake (including date of each action).

☐ Added Name:
☐ Address:
☒ Corrected Name from: MGA EMTERTAINMENT (MEXICO), INC.
☒ To: MGA ENTERTAINMENT (MEXICO), INC.
☐ Corrected Address from:
☐ To:
☐ Corrected File Date from          to
☐ Re-entered the UCC3          as a
☐ Changed the Filing Type from          to
☐ Document Deleted
☐ Other:

4. Additional Explanation (if applicable):

11/03/2006 13:34                                                                                    1

EXHIBIT ___1___
PAGE ___9___

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Ann Jones, Paralegal (404) 881-7563

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

> UCC Direct Services
> 1232 Q St
> Sacramento CA 95814
> Account 100I0537
> CDD

**07-71137422**

**05/14/2007 11:35**

**FILED**
CALIFORNIA
SECRETARY OF STATE

SOS

12649650003   UCC 2 FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| 06-7090317861 filed 10/30/06 | |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.    ☐ DELETE name: Give record name to be deleted in item 6a or 6b.    ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. **CURRENT RECORD INFORMATION:**

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **OR** 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

7. **CHANGED (NEW) OR ADDED INFORMATION:**

| 7a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| **OR** 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 7c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | ☐ NONE |

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☒ restated collateral description, or describe collateral ☐ assigned.

All of the Debtor's right, title and interest in the following, whether now owned or hereafter acquired: (a) subject to the limitation set forth in Exhibit A attached hereto, equity interests in MGAE de Mexico SRL de CV, (b) related assets and (c) proceeds thereof, all as more particularly described on Exhibit A attached hereto.

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Wachovia Bank, National Association, as Agent | | | |
| **OR** 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA
File with California Secretary of State; Debtor Name: MGA Entertainment (Mexico), Inc.   0926A88 SO
JBM

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)
Gardner 19513/315438

EXHIBIT    1
PAGE    10

## Exhibit A

**Debtor:**
MGA Entertainment (Mexico), Inc.
16380 Roscoe Blvd., Suite 200
Van Nuys, California 91406

**Secured Party:**
Wachovia Bank, National Association, as Agent
One South Broad Street, PA 4830
Philadelphia, Pennsylvania 19107

All of Debtor's right, title and interest in, to and under the following (collectively, the "Collateral"):

(a)    all Equity Interests now or hereafter acquired or held by Debtor in issuer (the "Issuer") described in Schedule 1 attached hereto;

(b)    all payments due or to become due to Debtor in respect of any of the foregoing;

(c)    all of Debtor's claims, rights, powers, privileges, authority, puts, calls, options, security interests, liens and remedies, if any, in respect of any of the foregoing;

(d)    all of Debtor's rights to exercise and enforce any and every right, power, remedy, authority, option and privilege of Debtor relating to any of the foregoing including, without limitation, any power to (i) terminate, cancel or modify any agreement, (ii) execute any instruments and to take any and all other action on behalf of and in the name of Debtor in respect of any of the foregoing and the applicable Issuer thereof, (iii) exercise voting rights or make determinations, (iv) exercise any election (including, but not limited to, election of remedies), (v) exercise any "put", right of first offer or first refusal, or other option, (vi) exercise any right of redemption or repurchase, (vii) give or receive any notice, consent, amendment, waiver or approval, (viii) demand, receive, enforce, collect or receipt for any of the foregoing, (ix) enforce or execute any checks, or other instruments or orders, and (x) file any claims and to take any action in connection with any of the foregoing;

(e)    all certificates and instruments representing or evidencing any of the foregoing;

(f)    all other rights, titles, interests, powers, privileges and preferences pertaining to any of the foregoing; and

(g)    all Proceeds of any of the foregoing.

Notwithstanding the foregoing, (x) in no event shall the Debtor be required to subject to the Lien of the Pledge Agreement or any other loan document more than 65% (or such greater percentage that, due to a change in an Applicable Law after October 27, 2006, (A) could not reasonably be expected to cause the undistributed earnings of such Foreign Subsidiary as determined for United States federal income tax purposes to be treated as a deemed dividend to such Foreign Subsidiary's United States parent and (B) could not reasonably be expected to cause any material adverse tax consequences) of the issued and outstanding Equity Interest of a Foreign Subsidiary entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) determined on a collective basis, but (y) the Debtor shall be required to subject to the Lien of the Pledge Agreement 100% of the issued and outstanding Equity Interest of a Foreign Subsidiary not entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)).

EXHIBIT ___1___
PAGE ___11___

As used herein:

"Equity Interest" means, with respect to any Person, any share of capital stock of (or other ownership interests in) such Person, any warrant, option or other right for the purchase or other acquisition from such Person of any share of capital stock of (or other ownership interests in) such Person, any security convertible into or exchangeable for any share of capital stock of (or other ownership interests in) such Person or warrant, right or option for the purchase or other acquisition from such Person of such shares (or such other ownership interests), and any other ownership interest in such Person (including, without limitation, partnership, member or trust interests therein), whether voting or nonvoting, and whether or not such share, warrant, option, right or other interest is authorized or otherwise existing on any date of determination.

"Person" means an individual, corporation, partnership, limited liability company, association, trust or unincorporated organization, or a government or any agency or political subdivision thereof.

"Proceeds" means all proceeds (including proceeds of proceeds) of any of the Collateral including all: (a) rights, benefits, distributions, premiums, profits, dividends, interest, cash, instruments, documents of title, accounts, contract rights, inventory, equipment, general intangibles, payment intangibles, deposit accounts, chattel paper, and other property from time to time received, receivable, or otherwise distributed in respect of or in exchange for, or as a replacement of or a substitution for, any of the Collateral, or proceeds thereof (including any cash, Equity Interests, or other instruments issued after any recapitalization, readjustment, reclassification, merger or consolidation with respect to the Issuers and any security entitlements, as defined in Section 8-102(a)(17) of the UCC, with respect thereto); (b) "proceeds," as such term is defined in Section 9-102(a)(64) of the UCC; (c) proceeds of any insurance, indemnity, warranty, or guaranty (including guaranties of delivery) payable from time to time with respect to any of the Collateral, or proceeds thereof; and (d) payments (in any form whatsoever) made or due and payable to Debtor from time to time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the Collateral, or proceeds thereof.

A - 2


EXHIBIT 1
PAGE 12

12549654003

SCHEDULE 1

MGA Entertainment (Mexico), Inc.
Pledged Equity Interests

| Issuer | Jurisdiction of Formation | Class of Equity Interest | Certificate Number (if any) | Percentage of Ownership |
|---|---|---|---|---|
| MGAE de Mexico SRL de CV | Mexico | Shares Parte Social | N/A | 100% |

LEGAL02/30237046v2

EXHIBIT ___1___
PAGE ___13___

**08-71714107**
**09/09/2008 16:03**

**FILED**
CALIFORNIA
SECRETARY OF STATE

**SOS**

18335690005   UCC 3 FILING

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

P6-0000-058-2

**CL@S**
INFORMATION SERVICES
WWW.CLASINFO.COM
2020 HURLEY WAY, SUITE 350
SACRAMENTO, CA 95825
916-921-2881 / 916.921.2695
916-921.5621/916.921.2800

account number  1036 AM (RW)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE #** 06-7090317661    10/30/06

**1b.** This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the ☐ REAL ESTATE RECORDS.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**3.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☒ **ASSIGNMENT (full):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.   ☐ DELETE name: Give record name to be deleted in item 6a or 6b.   ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

**6. CURRENT RECORD INFORMATION:**

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | | | |
| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| 7a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR OMNI 808 Investors LLC, as Agent | | | | |
| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| | | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 9420 Wilshire Blvd., Suite 400 | Beverly Hills | CA | 90212 | USA |

| 7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION Limited Liability Company | 7f. JURISDICTION OF ORGANIZATION California | 7g. ORGANIZATIONAL ID #, if any ☐ NONE |
|---|---|---|---|---|

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ delete ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR Wachovia Bank, National Association, as Agent | | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

**10. OPTIONAL FILER REFERENCE DATA**
Debtor: MGA Entertainment (Mexico), Inc.                    **CA-SOS**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC 3) (REV. 07/29/98)

A/72646923.1/3001762-0000308275

EXHIBIT ___1___
PAGE ___14___

# Exhibit 2

# State of California
## Secretary of State

### CERTIFICATE OF STATUS

**ENTITY NAME:**   OMNI 808 INVESTORS LLC

**FILE NUMBER:**          200822610026
**FORMATION DATE:**    08/12/2008
**TYPE:**                       DOMESTIC LIMITED LIABILITY COMPANY
**JURISDICTION:**         CALIFORNIA
**STATUS:**                   ACTIVE (GOOD STANDING)

I, DEBRA BOWEN, Secretary of State of the State of California, hereby certify:

The records of this office indicate the entity is authorized to exercise all of its powers, rights and privileges in the State of California.

No information is available from this office regarding the financial condition, business activities or practices of the entity.



**IN WITNESS WHEREOF,** I execute this certificate and affix the Great Seal of the State of California this day of December 13, 2008.

**DEBRA BOWEN**
**Secretary of State**

EXHIBIT 2
PAGE 15

MMS
OSP 06 99731

## State of California
### Secretary of State



    I, DEBRA BOWEN, Secretary of State of the State of California, hereby certify:

    That the attached transcript of _____ page(s) was prepared by and in this office from the record on file, of which it purports to be a copy, and that it is full, true and correct.



**IN WITNESS WHEREOF,** I execute this certificate and affix the Great Seal of the State of California this day of

DEC 1 3 2008
_____

*Debra Bowen*

DEBRA BOWEN
Secretary of State

Sec/State Form CE 108 (REV 1/2007)

EXHIBIT __2__
PAGE __16__

OSP 06 99733

2 0 0 8 2 2 6 1 0 0 2 6

| LLC-1 | File # _____ |

## State of California
## Secretary of State

**FILED**
In the office of the Secretary of State
of the State of California

AUG 1 2 2008

## LIMITED LIABILITY COMPANY
## ARTICLES OF ORGANIZATION

**A $70.00 filing fee must accompany this form.**

**IMPORTANT – Read instructions before completing this form.**

This Space For Filing Use Only

---

**ENTITY NAME** (End the name with the words "Limited Liability Company," or the abbreviations "LLC" or "L.L.C." The words "Limited" and "Company" may be abbreviated to "Ltd." and "Co.," respectively.)

1.  NAME OF LIMITED LIABILITY COMPANY

OMNI 808 Investors LLC

---

**PURPOSE** (The following statement is required by statute and should not be altered.)

2.  THE PURPOSE OF THE LIMITED LIABILITY COMPANY IS TO ENGAGE IN ANY LAWFUL ACT OR ACTIVITY FOR WHICH A LIMITED LIABILITY COMPANY MAY BE ORGANIZED UNDER THE BEVERLY-KILLEA LIMITED LIABILITY COMPANY ACT.

---

**INITIAL AGENT FOR SERVICE OF PROCESS** (If the agent is an individual, the agent must reside in California and both Items 3 and 4 must be completed. If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 3 must be completed (leave Item 4 blank).)

3.  NAME OF INITIAL AGENT FOR SERVICE OF PROCESS

Corporation Service Company which will do business in California as CSC-Lawyers Incorporating Service

4.  IF AN INDIVIDUAL, ADDRESS OF INITIAL AGENT FOR SERVICE OF PROCESS IN CALIFORNIA    CITY    STATE    ZIP CODE

CA

---

**MANAGEMENT** (Check only one)

5.  THE LIMITED LIABILITY COMPANY WILL BE MANAGED BY:

[ ] ONE MANAGER

[✓] MORE THAN ONE MANAGER

[ ] ALL LIMITED LIABILITY COMPANY MEMBER(S)

---

**ADDITIONAL INFORMATION**

6.  ADDITIONAL INFORMATION SET FORTH ON THE ATTACHED PAGES, IF ANY, IS INCORPORATED HEREIN BY THIS REFERENCE AND MADE A PART OF THIS CERTIFICATE.

---

**EXECUTION**

7.  I DECLARE I AM THE PERSON WHO EXECUTED THIS INSTRUMENT, WHICH EXECUTION IS MY ACT AND DEED.

August 12, 2008
DATE

_(signature)_
SIGNATURE OF ORGANIZER

Tricia A. Church
TYPE OR PRINT NAME OF ORGANIZER

OFFICE OF THE SECRETARY OF STATE

---

LLC-1 (REV 04/2007)                                        APPROVED BY SECRETARY OF STATE

EXHIBIT 2
PAGE 17

# Exhibit 3

# Delaware

*PAGE   1*

## The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT COPIES OF ALL DOCUMENTS ON FILE OF "VISION CAPITAL, LLC" AS RECEIVED AND FILED IN THIS OFFICE.

THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:

CERTIFICATE OF FORMATION, FILED THE NINETEENTH DAY OF AUGUST, A.D. 2008, AT 12:36 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID CERTIFICATES ARE THE ONLY CERTIFICATES ON RECORD OF THE AFORESAID LIMITED LIABILITY COMPANY, "VISION CAPITAL, LLC".

4589295   8100H

081207227

You may verify this certificate online
at corp.delaware.gov/authver.shtml

*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 7032931

DATE: 12-17-08

EXHIBIT 3
PAGE 18

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 12:41 PM 08/19/2008*
*FILED 12:36 PM 08/19/2008*
*SRV 080883130 - 4589295 FILE*

## CERTIFICATE OF FORMATION

### OF

### VISION CAPITAL, LLC

This Certificate of Formation of **VISION CAPITAL, LLC** the ("Company"), is being executed by the undersigned for the purpose of forming a limited liability company pursuant to the Delaware Limited Liability Company Act.

1. The name of the Company is **VISION CAPITAL, LLC**.

2. The address of the registered office of the Company in Delaware is 800 Delaware Avenue, City of Wilmington, New Castle County, 19801. The Company's registered agent at that address is Delaware Corporations LLC.

**IN WITNESS WHEREOF**, the undersigned, an authorized person, has caused this Certificate of Formation to be duly executed as of the 19th day of August, 2008.

DELAWARE CORPORATIONS LLC,
Authorized Person

By: _____

Robin G. Brooks, Vice President

EXHIBIT ___3___
PAGE ___19___

# Exhibit 4

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
FRED MASHIAN
3102747601

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

```
FRED MASHIAN
9255 SUNSET BOULEVARD
SUITE 630
LOS ANGELES, CA 90069
USA
```

DOCUMENT NUMBER: 18230630002
FILING NUMBER: 08-717041D100
FILING DATE: 08/28/2008 14:33
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| | | | | |
|---|---|---|---|---|
| **1a. ORGANIZATION'S NAME** VISION CAPITAL, LLC, A DELAWARE LIMITED LIABILITY COMPANY | | | | |
| OR | **1b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
| **1c. MAILING ADDRESS** 1525 SOUTH BROADWAY | **CITY** LOS ANGELES | **STATE** CA | **POSTAL CODE** 90015 | **COUNTRY** USA |
| **1d. SEE INSTRUCTIONS** | **ADD'L DEBTOR INFO** | **1e. TYPE OF ORGANIZATION** LLC | **1f. JURISDICTION OF ORGANIZATION** DE | **1g. ORGANIZATIONAL ID#, if any** 4589295  ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| | | | | |
|---|---|---|---|---|
| **2a. ORGANIZATION'S NAME** | | | | |
| OR | **2b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
| **2c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| **2d. SEE INSTRUCTIONS** | **ADD'L DEBTOR INFO** | **2e. TYPE OF ORGANIZATION** | **2f. JURISDICTION OF ORGANIZATION** | **2g. ORGANIZATIONAL ID#, if any**  ☐ NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| | | | | |
|---|---|---|---|---|
| **3a. ORGANIZATION'S NAME** LEXINGTON FINANCIAL LIMITED, A NBVIS COMPANY | | | | |
| OR | **3b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
| **3c. MAILING ADDRESS** 33-35 DAWS LANE | **CITY** LONDON | **STATE** | **POSTAL CODE** NW7 4SD | **COUNTRY** UK |

**4. This FINANCING STATEMENT covers the following collateral:**
ALL OF DEBTOR'S RIGHT, TITLE AND INTEREST IN MEMBERSHIP INTERESTS OF OMNI 808 INVESTORS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY,
SECRETARY OF STATE FILING #200822610026.

**5. ALT DESIGNATION:** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

| | |
|---|---|
| ☐ **6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS** Attach Addendum [if applicable] | **7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)** [ADDITIONAL FEE]   [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2 |

**8. OPTIONAL FILER REFERENCE DATA**

FILING OFFICE COPY

EXHIBIT ___4___
PAGE ___20___

# Exhibit 5



# NEVIS ISLAND ADMINISTRATION

*Ministry of Finance, Statistics & Economic Planning*
*REGULATION AND SUPERVISION DEPARTMENT*

December, 12th 2008

Austin Lescott
Clay Ghaut
St. John's Parish
Nevis

Dear Sir

## RE: INFORMATION REQUESTED ON 12th December, 2008

In connection with the above, we advise as follows:

| | |
|---|---|
| **Exact Company Name:** | LEXINGTON FINANCIAL LIMITED |
| **Date of Incorporation:** | 03rd March, 2006 |
| **Company Number:** | C 29848 |
| **Registered Agent & Address:** | Trust Services Nevis Limited
Springates Building
Government Road, Charlestown, Nevis
Telephone Number:  1 (869) 469-7270/1
Fax Number:  1 (869) 469-7272 |
| **Shares:** | **100,000 shares with par value USD$1.00** |
| **Status (standing, etc.):** | The Company is in Good Standing |

**Public Record Documents (Art. Of Inc./Org., Amendments, etc):** *FILED*

There are no charges, liens, mortgages or encumbrances filed for or on behalf of the company and/or its shareholders. Also note that information on directors, shareholders, officers, beneficial owners, annual returns and financial statements are not required to be filed by law. Consequently, such information is not available.

Should you require any further information, please do not hesitate to contact us.

Yours sincerely,

Clevelan Williams (Mr.)
REGISTRAR

NEVIS FINANCIAL
SERVICES DEPARTMENT

**P. O. Box 689, Main Street, Charlestown, Nevis, West Indies**
**Tel: 1(869) 469-1469 ♦ 1(869) 469-5521 Ext. 2150 ♦ Fax: 1(869) 469-7739**
**Website: www.nevisfinance.com ♦ Email: nevfin@sisterisles.kn**

EXHIBIT ___5___

PAGE ___21___

# Exhibit 6




Home | About Us | Fee Schedule | Order | Contact Us



17 December, 2008

- En Español
- Home
- About Us
- Why Offshore?
- Contact Us
- Fee Schedule
- Order Online
- Why Panama?
- Panama as a Tax Haven
- Panama Foundation
- Panama Corporation
- Corporation / Foundation Combined
- Panama Charitable Foundation
- Panama Real Estate
- Real Estate Title / Escrow Services
- Offshore Banking
- Why Belize?
- Belize IBC
- Costa Rica Corporation
- Why Nevis?
- Nevis IBC
- Nevis LLC
- Why Seychelles?
- Seychelles IBC
- Offshore Trust
- Management Services
- International Fiduciary Structure
- Account Signatory Services
- Offshore Debit Card
- E-Commerce Solutions
- Offshore Web Hosting
- Internet Banking Software
- Offshore Bank Formations
- Swedish Credit Union
- NZ Offshore Finance Co.
- Uruguay SAFI
- Panama Financial Company
- Captive Insurance
- Offshore FAQ's
- Mail Forwarding
- Virtual Office Services
- Re-Invoicing Services
- Relocation Services
- Panama Immigration/ Panama Passport
- Ship / Yacht Registration Services
- Investments
- Reseller Program
- Panama Links



Member of The
NETCHECK
Commerce Bureau
Member Since 10/03
CLICK TO VERIFY

## OFFSHORE-BASED LIMITED LIABILITY COMPANY (LLC)





**DEFINITION:** If your primary goal is not legal tax efficiency but simply access to a low cost way of sheltering assets and providing privacy, a standalone Nevis Limited Liability Company may be ideal. A Limited Liability Company (or LLC) is a form of company or corporation that enjoys some distinctions from "normal" companies. At the most simple level, think of an LLC as a sleek cross between a company and a partnership, with all of the benefits of both.

The general advantages of LLCs are enhanced by the jurisdictional advantage of Nevis, the first offshore financial centre anywhere to enact a Limited Liability Ordinance.

### EXCELLENT PRIVACY:

- Since the beneficial owners and/or managers are not registered anywhere an LLC provides complete anonymity.
- Nevis has strict privacy oriented laws that forbid any registering, recording, or disclosure of directors and shareholders of exempt companies incorporated there. This means that no annual or other reports by members need to be filed in the public records of Nevis; therefore, there is complete anonymity and their identities are not accessible by any outside party.
- The company's records may be located anywhere in the world

### EXCELLENT ASSET PROTECTION FEATURES:

- A Nevis LLC enables you to protect your assets and funds from government agencies, creditors, and lawsuits.
- As an owner, you are not exposed to personal liability.
- As an owner, you can participate in management without becoming personally liable for the company's debts.
- A Nevis LLC is particularly advantageous for asset protection purposes since there are no shares that can be attached by a court of law.
- Members are not liable for obligations of the company.

**OTHER LLC BENEFITS:** LLCs provide these additional advantages:

- LLCs provide a mechanism by which managers can limit the authority of non-managing members.
- LLCs have no limitation on the number of members.
- There are no limitations on ownership of an LLC.
- No corporate tax, income tax, withholding tax, stamp tax, asset tax, exchange controls or other fees or taxes are levied in Nevis on assets or income originating outside of Nevis.
- Members of Nevis LLCs may be individuals or business entities of any nationality or domicile.
- Nevis LLCs may amend their Articles of Organisation, merge, or consolidate with other domestic or

EXHIBIT 6 PAGE 22


PAN**AMCHAM
Proud Member**

foreign LLCs or other business entities.
- Members of Nevis LLCs may assign their interests to other parties unless restricted otherwise.
- Nevis permits sole member LLCs.
- Management of LLCs may be accomplished by the members or by managers designated by the members.
- Nevis LLCs face no stock limitations and can issue preferred interests analogous to preferred stock of corporations.
- A Nevis LLC is an excellent vehicle if used by a group of investors for a joint venture investment. In this respect it functions as if it were a Limited Partnership, but with all the added features and advantages mentioned above of an LLC that Limited Partnerships for the most part do not have.
- A Nevis LLC can be set up within 24 hours and has low initial cost and low annual fees.

**Deeper Understanding on the efficacy of LLC's**

**LLC vs. a "Normal" Corporation:**

The primary distinction between an LLC and a "normal" company such as a "C" corporation (USA) or a PLC (United Kingdom), is that the LLC is a tax-neutral vehicle because it is taxed as a partnership, rather than as a corporation. Thus, using an LLC eliminates tax at the corporate level. In this regard, it is somewhat like a U.S. "S" corporation or a German GmbH but without all the restrictions and disadvantages. So if the LLC itself has no tax payment obligation - then who does? The obligation for any taxes that would otherwise be owed by the LLC bypasses the LLC itself and attaches directly to the members of the LLC. Members are to LLCs what shareholders are to normal companies. Other companies, as well as individuals and trusts, can be members of an LLC. There are no limits on the number of members or the classes of members that an LLC may have. The important thing to remember is that each member is responsible for his, her or its own pro-rata part of any overall tax obligation of the LLC and that the LLC itself has no tax obligations.

**LLC as Trust Alternative:**

Because of the flexibility available in LLC management structuring and because of the favorable way in which the laws of Nevis are drafted, LLCs can also be used as alternatives to a trust. The manager of the LLC is akin to the trustee of a trust and the members are akin to the beneficiaries of a trust. Sovereign Management & Legal can act as a manager of an LLC on behalf of a client who desires to take advantage of our corporate management services. Substituting an LLC for a trust can change the reporting requirements of taxpayers in onshore jurisdictions. Many providers have abandoned the trust as an offshore planning vehicle because trusts have become a target on onshore legislation and unfavourable court decisions (especially in the U.S.). Hence many are instead recommending either an LLC or a Foundation depending on what the client requirements are. The income or capital gain of an LLC is not reportable as trust income or gain or as corporate income or gain but is treated as personal income or gain.

**Multi-National Joint Ventures:**

LLCs are excellent vehicles for structuring joint venture arrangements between project participants from different countries. This is so because the venture can enjoy all of the benefits of incorporation, but each member is liable for his own taxation in his own country. Moreover, the membership flexibility allows different joint ventures to have different levels of ownership and reward based upon the value that each constituent member brings to the project. The only drawback is that prior to forming LLCs for multi-national joint ventures, the parties must check to see that this hybrid entity is granted the requisite corporate and pass through (partnership) status in the jurisdictions in which the joint ventures are located. Advice from a local onshore lawyer should be sought.

**Tax Free:**

All LLCs are free from all forms of Nevisian taxation. There are no Nevisian taxes on dividends, income, capital distribution, or wages whatsoever. Moreover, unlike many onshore jurisdictions, Nevis does not tax an LLC for accumulated (but undistributed) earnings

EXHIBIT 23
PAGE 6

**Privacy:**

All of the affairs of the LLC are private and cannot be disclosed except under truly exceptional circumstances such as links to international terrorism. The only document that needs to be filed with the government is the annual corporate license and this contains minimal information. There is no annual report or annual financial return that needs to be made to the government. There is no public inspection of your LLCs' records. Confidentiality is further enhanced if the LLC appoints our company as manager and we perform the minimal corporate duties required under Nevisian law.

**Enhanced Confidentiality:**

Nevisian LLC laws contain many requirements related to confidentiality including strict financial secrecy laws. Strict legal requirements, known as fiduciary duties, would also govern Sovereign Manager Services behavior as a manager of an LLC. These fiduciary duties are imposed on managers by both the equivalent of the LLCs bylaws and by the proper law of the LLC (usually the law of the country where the manager is located, i.e. Panama). Many of these fiduciary requirements relate to secrecy and accounting obligations by which the manager must abide. Nevisian LLC and Panamanian law prevent our company from discussing your LLC business with anyone you have not instructed us to talk to.

Other governments' agencies such as the Internal Revenue Service in the United States, Revenue Canada, or the Inland Revenue in the United Kingdom cannot force us to discuss your business with them unless they obtain a court order against you or us or both ordering us to make disclosure. But a court order from their respective jurisdiction is useless in Nevis or Panama. In accordance with strong Nevisian law, a judgement from outside of Nevis will not be recognised by Nevisian courts. This means an onshore judgement creditor who won a lawsuit against you or your LLC in, for example, the U.S. or Germany cannot take that U.S. or German judgement and require a Nevisian court to enforce it.

In addition to not recognizing the judgements of other countries, Nevisian law and Nevisian courts do not favor the granting of court orders against LLCs except under truly exceptional circumstances. Nevisian law favors upholding the independence and application of its own law over the enforcement of foreign, onshore laws.

To view pricing, the components of our special offshore packages and to order click here.

Top

Home | About Us | Why Offshore? | Contact Us | Fee Schedule | Order Online | Why Panama?
Panama as a Tax Haven | Panama Foundation | Panama Corporation | Panama Charitable Foundation
Panama Real Estate | Why Belize? | Belize IBC | Belize LLP | Belize PCC | Costa Rica Corporation
Why Nevis? | Nevis LLC | Nevis IBC | Why Seychelles? | Seychelles IBC | Offshore Trust | IBC/Foundation Combined
Offshore Banking | Management Services | Account Signatory Services | Re-Invoicing Services
E-Commerce Solutions | Offshore Debit Card | Offshore Web Hosting | Offshore Bank Formations | Swedish Credit Union
NZ Offshore Finance Company | Uruguay SAFI | Panama Financial Company | Internet Banking Software
Captive Insurance | Offshore FAQ's | Mail Forwarding | Virtual Office Services
Ship / Yacht Registration Services | Relocation Services in Panama | Panama Passport Programs
Investments | Reseller Program | Panama Links | Sitemap

For optimal viewing and navigation, please enable javascript.



EXHIBIT __V__
PAGE __24__

# Exhibit 7



HOME
OUR SERVICES
WHO CAN BENEFIT
WHY USE US?
OUR PRICES
OBTAIN A QUOTE
ORDER ONLINE
CASE STUDIES
ARTICLES
NEWS
TESTIMONIALS
POST & FAX SERVICE
F.A.Q
HEAR OUR
OPERATORS
PARTNERS

**Subscribe to our Newsletter**

**Become an Affiliate**

**Write articles for Officefront**

**Become a Referral Agent**

Home

## A TOTAL VIRTUAL OFFICE OR TELEPHONE ANSWERING SERVICE

### IDEAL FOR SOLE TRADERS/PROFESSIONALS, MEDIUM/LARGE COMPANIES FO COMPANIES WISHING A UK PRESENCE

### IMAGE - TIME - EFFICIENCY ...we do more for you than just answer phones

NO GIMMICKS - NO HIDDEN CHARGES - NO SETUP FEE - NO REGISTRATION TO GET A QUO

JUST AN EASY TO UNDERSTAND AND FULLY TRANSPARENT SERVICE THAT DELIVERS EVEI

TELEPHONE LINES - LOW COST INTERNATIONAL CALLS - INTERNATIONAL TELEPHONE NUMBERS - FAX TO EMAIL

SMALL/MEDIUM SIZE BUSINESS?

* Superb IMAGE for your company
* We ANSWER your inbound calls
* Your clients talk to a REAL receptionist!
* Friendly, PROFESSIONAL manner
* LOW, clear pricing
* Bespoke FLEXIBLE service

LARGER BUSINESS?

* Up to 70% direct cost savings over direct employment
* Redirect your staff to revenue generation
* Comprehensive switchboard facilities
* Friendly, Professional manner
* No need for Holiday/Sick Cover/Cost
* No HR Cost

Excellent Value
Services from as little as £10 per month + CALLS
You can be operational TODAY or order for later activation
Present a professional image to your clients

### Call NOW for a NO OBLIGATION quote
### FREEFONE ..08000 19 15 39

**OUR CREDIT-CRUN BUSTER**
SPECIAL OFFERS & DISC
TO HELP WITH CURR
ECONOMIC SITUATI
LET'S WORK TOGETHER
THROUGH IT





Thanks for calling

How May I Help You?



Carter Backer Winter
CHARTERED ACCOUNTANTS & BUSINESS ADVISERS



JORDANS

EXHIBIT **7**
PAGE **95**

12/28/2008

OfficeFront Ltd | 33-35 Daws Lane | London NW7 4SD
Tel +44 20 8906 6666 | Fax +44 20 8906 6611 | Email sales@officefront.co.uk
Copyright © 2008 Officefront Limited. Registered in England & Wales Company number 04752787.

Sitemap



EXHIBIT ___7___
PAGE ___2H___

# Exhibit 8



# OMNINET™

| Home | Private Equity | Real Estate | Venture Capital | About Us |

## Contact

"Service is never an accident; it is the result of high intentions, sincere effort, intelligent direction, & skillful execution"
– Robert Huebner

▸ About Us

▸ Team

▸ News

● Contact

▸ Site Map

## About Us

**Omninet Capital**
9420 Wilshire Boulevard, 4th Floor
Beverly Hills, CA 90212

Tel: 310.300.4100
Fax: 310.300.4101

Email: info@omninet.com

MapQuest Link

**Directions**
We are located at 9420 Wilshire Blvd. in the Rolex Building, which is located between Beverly Drive and Canon Drive in Beverly Hills, California.

There is a free private parking lot available on the Canon Drive side of our building on the south side of Wilshire Blvd. We are located on the 4th floor of the Rolex Building. If you have any questions, please call 310-300-4100.



Site Map | Contact | Copyright (c) 2007 OMNINET Capital

EXHIBIT 8
PAGE 27



# Exhibit 9



# OMNINET™

| Home | Private Equity | Real Estate | Venture Capital | About Us |

## Team

» "Courage is what it takes to stand up and speak, courage is also what it takes to sit down and listen"
— Sir Winston Churchill

- » About Us
- » Team
- » News
- » Contact
- » Site Map

## About Us

**Neil Kadisha - Managing Partner**
Neil Kadisha is primarily responsible for providing management expertise and strategic planning for Omninet companies. He is also involved in seeking synergistic investment opportunities and offering industry insights for the evaluation of potential investments. Prior to Omninet, Neil founded and served as the CEO of numerous high-tech manufacturing companies. For over 15 years, Neil served on the Board of Directors of Qualcomm. He also serves on the Boards of various privately held companies. Neil's academic background is in Industrial Management and Economics.

**Benjamin Nazarian - Managing Partner**
Benjamin Nazarian is primarily responsible for Omninet's overall investment strategy, with an operational emphasis on the private equity portfolio. Benjamin currently serves as CEO and member of the Board of Directors of Stadco, a supplier of high precision parts and components for the defense and aerospace industry. He also serves on the Board of Directors of Altra, Paramount Scaffold, Plymouth Health, PWP Industries, and Texolini. Benjamin serves on the Board of Councilors of the Law Center at the University of Southern California and is a member of the Young Presidents Organization (YPO). He received his Juris Doctorate from the Law Center at the University of Southern California and holds a Bachelor of Science degree in Accounting, Cum Laude, from the University of Southern California.

**Parviz Nazarian - Managing Partner**
Parviz Nazarian offers his technical and industry vision for the evaluation of potential investments. He provides strategic guidance with the operation and management of Omninet's portfolio. Prior to Omninet, Parviz spent his career managing numerous companies in various industries including construction equipment, aerospace, and plastic equipment. Parviz is a member of the International Board of Governors of the Technion Institute of Technology and Tel Aviv University. Parviz served as a member of the Board of Directors of Qualcomm until 1994. He currently serves on the Board of Directors of privately-held Plymouth Health, PWP Industries and Stadco.

**Michael Daniel - Senior Vice President & General Counsel**
Michael Daniel is responsible for the evaluation and negotiation of investment opportunities, including all legal matters related to potential investments. Michael focuses his efforts on the acquisition and development of commercial and residential real estate projects for Omninet. Before joining Omninet, Michael practiced law with the firms of Brobeck, Phleger & Harrison and Buchalter, Nemer, Fields & Younger, specializing in finance, mergers & acquisitions, real estate transactions and general corporate representation of high-growth companies. Michael received his Jurist Doctorate degree from the University of California, Berkeley, Boalt Hall School of Law. Michael holds a Bachelor of Arts degree in Economics, Magna Cum Laude, from the University of California, Los Angeles.

**Kevin P. Tanna - Vice President of Development**
Kevin is responsible for the origination and development of real estate investments throughout California, Nevada and Arizona. His efforts focus on the acquisition, design, and construction of commercial and multifamily residential projects and his diverse experience includes work in a real estate law firm providing transactional support for the acquisition, construction, management, sales and leasing of commercial properties. Kevin is the founder of several entrepreneurial ventures, including an international trade company, and he has spent nearly a decade working alongside building contractors and developers. Kevin earned his Jurist Doctorate degree from Hofstra University, School of Law and a Bachelor of Science degree in Finance, Cum Laude, from the Hawaii Pacific University.

**Andrea Costantini - Senior Associate**

EXHIBIT 9
PAGE 29

Andea  is responsible for assessing investment opportunities and increasing the value of Omninet's portfolio companies. Andrea focuses on the strategic and financial assessment of new investments and supports portfolio companies in achieving distinctive growth and performance through operational improvements and strategic planning. Before joining Omninet, Andrea was an Engagement Manager at McKinsey and Company where he spent 5 years assisting Fortune 500 companies as strategic advisor in the media, tech and real estate industries across the U.S., Europe and Asia. Andrea holds a Master in Business Administration from the University of California, Los Angeles and a Master of Science in Aerospace Engineering Summa Cum Laude from Politecnico di Torino, Italy.

**Daphna Salimpour - Head of Design Development**
Daphna is responsible for the design and project management of Omninet's real estate developments.  Before joining Omninet, Daphna was the owner of a design firm specializing in the design of residential projects and medical offices in Los Angeles.  She was also an architect at Levin & Associates, a firm specializing in the preservation and rehabilitation of historical landmarks.  Daphna has a Bachelor of Architecture degree from the University of Southern California.  She also attended the Syracuse Architecture Program in Florence, Italy.

**Dave Johnson - Construction Manager**
David is responsible for advising Omninet on building logistics, feasibility, engineering and permitting issues for various construction projects.  He has over 40 years of experience in the construction industry including work as a project manager, field supervisor, superintendent and corporate consultant for commercial as well as estate home builders.  David relocated to Los Angeles in 2000 from Seattle, WA where he was co-owner of a successful construction company. He has a Bachelor of Science in Construction Management from the University of Washington.

**Michael Halimi - Acquisitions**
Michael is responsible for sourcing opportunities to acquire commercial real estate and debt instruments. His responsibilities include interfacing with brokers, financial institutions and real estate investors. Prior to joining Omninet, Michael worked in commercial and residential real estate finance and has assisted and negotiated deals on behalf of investors for deal syndications. Michael has a bachelor degree in Law and Society from the University of California, Santa Barbara.



EXHIBIT _9_
PAGE _90_

# Exhibit 10



1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10         EASTERN DIVISION

11

12   MATTEL, INC.,                        CASE NO. CV 04-9049 SGL (RNBx)

13          Plaintiff,                    Consolidated with
                                          Case No. CV 04-09059 SGL (RNBx)
14   vs.                                  Case No. CV 05-02727 SGL (RNBx)

15   MGA ENTERTAINMENT, INC., et al.,     Honorable Stephen G. Larson

16          Defendant.                    **PHASE B VERDICT FORM AS GIVEN**

17   AND CONSOLIDATED ACTIONS

18

19

20

21

22

23

24

25

26

27

28

07209/2609529.2209/260
584.2

EXHIBIT __10__
PAGE __31__

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VERDICT FORM – PHASE B

We answer the questions submitted to us as follows:

### I.  Damages for Phase A Claims

(Answer all four questions in this section.)

### Intentional Interference With Contractual Relations

1.      In Phase A of this trial, you found that MGA Entertainment, Inc. ("MGA") and Isaac Larian are liable to Mattel for intentional interference with contractual relations.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:          $ _____ 20   MILLION _____
As to Mr. Larian: $ _____ 10   MILLION _____

### Aiding and Abetting Breach of Fiduciary Duty

2.      In Phase A of this trial, you found that MGA and Isaac Larian are liable to Mattel for aiding and abetting Carter Bryant's breach of fiduciary duty.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:          $ _____ 20 MILLION _____
As to Mr. Larian: $ _____ 10  MILLION _____

### Aiding and Abetting Breach of the Duty of Loyalty

3.      In Phase A of this trial, you found that MGA and Isaac Larian are liable to Mattel for aiding and abetting Carter Bryant's breach of the duty of loyalty.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:          $ _____ 20 MILLION _____
As to Mr. Larian: $ _____ 10  MILLION _____

-2-

PHASE B VERDICT FORM AS GIVEN

EXHIBIT ___10___
PAGE ___32___

1

## Conversion

2    4.    In Phase A of this trial, you found that MGA, Isaac Larian and MGA

3 Entertainment (HK) Limited ("MGA Hong Kong") are liable to Mattel for

4 conversion. What amount of damages, if any, should be awarded to Mattel?

5            As to MGA:              $    31,500  PLUS 7% INTEREST

6            As to Mr. Larian:       $      0     CALCULATED FROM

7            As to MGA Hong Kong: $      0       THE DATE MATTEL'S

8                                              PROPERTY WAS

9                                              CONVERTED.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PHASE B VERDICT FORM AS GIVEN
EXHIBIT  10
PAGE  33

## II.  Copyright Infringement

5.   Has Mattel proven by a preponderance of the evidence that MGA is liable to Mattel for copyright infringement?

        Yes      *X*

        No      _____

If your answer is "yes," then answer Question 6.

If your answer is "no," then answer Question 7.

6.   Was MGA's copyright infringement willful?

        Yes      _____

        No    *X*

Answer Question 7.

7.   Has Mattel proven by a preponderance of the evidence that Isaac Larian is liable to Mattel for copyright infringement?

        Yes  *X*

        No    _____

If your answer is "yes," then answer Question 8.

If your answer is "no," then answer Question 9.

8.   Was Mr. Larian's copyright infringement willful?

        Yes    _____

        No   *X*

Answer Question 9.

9.   Has Mattel proven by a preponderance of the evidence that MGA Hong Kong is liable to Mattel for copyright infringement?

        Yes  *X*

07209/2609529.2608584

PHASE 1 VERDICT FORM AS GIVEN

EXHIBIT ___10___

PAGE ___94___

1   No ____

2  If your answer is "yes," then answer Question 10.

3  If your answer is "no," then answer Question 11.

4

5  10. Was MGA Hong Kong's copyright infringement willful?

6    Yes ____

7    No __X__

8  Answer Question 11.

9

10  11. What amount of damages, if any, should be awarded to Mattel for the

11 defendants' copyright infringement?

12  (a) Copyright Infringement by MGA

13    $ __6 Million__

14  (b) Copyright Infringement by Isaac Larian

15    Distributions Mr. Larian received from MGA attributable to Bratz-

16    related works:

17    $ __3 Million__

18    Value of Mr. Larian's ownership percentage of MGA attributable to

19    Bratz-related works:

20    $ __0__

21  (c) Copyright Infringement by MGA Hong Kong:

22    $ __1 Million__

23

24

25

26

27

28

-5-

PHASE B VERDICT FORM — GIVEN

EXHIBIT __10__

PAGE __25__

### III.  Punitive Damages

12.    Has Mattel proven by clear and convincing evidence that MGA acted with malice, oppression, or fraud?

       Yes _____

       No _X_

If your answer is "yes," then answer Question 13.

If your answer is "no," then answer Question 14.

13.    What amount of punitive damages, if any, should be awarded against MGA?

       $ _____ Ø _____

Answer Question 14.

14.    Has Mattel proven by clear and convincing evidence that Isaac Larian acted with malice, oppression, or fraud?

       Yes _____

       No _X_

If your answer is "yes," then answer Question 15.

If your answer is "no," then answer Question 16.

15.    What amount of punitive damages, if any, should be awarded against Mr. Larian?

       $ _____ Ø _____

Answer Question 16.

16.    Has Mattel proven by clear and convincing evidence that MGA Hong Kong acted with malice, oppression, or fraud?

       Yes _____

PHASE B VERDICT FORM AS GIVEN

EXHIBIT __10__

PAGE __36__

1          No     X

2          If your answer is "yes," then answer Question 17.

3          If your answer is "no," then answer Question 18.

4

5          17.    What amount of punitive damages, if any, should be awarded against

6    MGA Hong Kong?

7                 $_____

8          Answer Question 18.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2609529.26085845

PHASE B VERDICT FORM AS GIVEN

EXHIBIT   10
PAGE      37

## IV.  Fraudulent Concealment

(Answer all five questions in this section.)

18.   Has Mattel proven by a preponderance of the evidence that MGA fraudulently concealed the bases for Mattel's claim of intentional interference with contract against it until at least April 27, 2002?

       Yes   _X_

       No   ____

19.   Has Mattel proven by a preponderance of the evidence that Isaac Larian fraudulently concealed the bases for Mattel's claim of intentional interference with contract against him until at least April 27, 2002?

       Yes   ____

       No   _X_

20.   Has Mattel proven by a preponderance of the evidence that MGA fraudulently concealed the bases for Mattel's claim of conversion against it until at least April 27, 2001?

       Yes   _X_

       No   ____

21.   Has Mattel proven by a preponderance of the evidence that Mr. Larian fraudulently concealed the bases for Mattel's claim of conversion against him until at least April 27, 2001?.

       Yes   ____

       No   _X_

07209/2609529.2608584

PHASE B VERDICT FORM AS GIVEN
EXHIBIT __10__
PAGE __70__

1    22.    Has Mattel proven by a preponderance of the evidence that MGA Hong

2  Kong fraudulently concealed the bases for Mattel's claim of conversion against it

3  until at least April 27, 2001?

4            Yes  ____

5            No   _X_

6

7    Once this verdict form is completed, the foreperson of the jury should sign

8  and date on the lines below.

9

10  DATED: _August 26, 2008_        _/s/_

                                    Jury Foreperson

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2609529.2608584.2

-9-

PHASE B VERDICT FORM AS GIVEN

EXHIBIT ___10___

PAGE ___39___

# Exhibit 11

# California Business Portal

**Secretary of State DEBRA BOWEN**

**DISCLAIMER:** The information displayed here is current as of Dec 26, 2008 and is updated weekly. It is not a complete or certified record of the Limited Partnership or Limited Liability Company.

| LP/LLC | | |
|---|---|---|
| IGWT GROUP, LLC | | |
| **Number:** 200817910004 | **Date Filed:** 6/26/2008 | **Status:** active |
| **Jurisdiction:** CALIFORNIA | | |
| **Address** | | |
| 237 NORTH CAROLWOOD DRIVE | | |
| LOS ANGELES, CA 90077 | | |
| **Agent for Service of Process** | | |
| NATIONAL CORPORATE RESEARCH, LTD. (C2003899) | | |

Blank fields indicate the information is not contained in the computer file.

If the agent for service of process is a corporation, the address of the agent may be requested by ordering a status report. Fees and instructions for ordering a status report are included on the Business Entities Records Order Form.

EXHIBIT __11__
PAGE __40__

**Exhibit 12**

1   KEKER & VAN NEST, LLP
    JOHN W. KEKER - #49092
2   jkeker@kvn.com
    MICHAEL H. PAGE - #154913
3   mpage@kvn.com
    CHRISTA M. ANDERSON - #184325
4   canderson@kvn.com
    710 Sansome Street
5   San Francisco, CA 94111-1704
    Telephone: (415) 391-5400
6   Facsimile: (415) 397-7188

7   Attorneys for Plaintiff
    CARTER BRYANT
8

9
                    UNITED STATES DISTRICT COURT
10
                  CENTRAL DISTRICT OF CALIFORNIA
11
                        EASTERN DIVISION
12

13
    CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)
14                                        (consolidated with CV 04-9059 & 05-
                      Plaintiff,          2727
15
         v.                              **CARTER BRYANT'S RESPONSES
16                                       TO MATTEL, INC'S FIFTH SET
    MATTEL, INC. a Delaware              OF REQUESTS FOR ADMISSION
17  Corporation,                         TO CARTER BRYANT**

18                    Defendant.

19  ┌─────────────────────────────────┐
    │CONSOLIDATED WITH MATTEL,        │
20  │INC., v. BRYANT and MGA          │
    │ENTERTAINMENT, INC. v.           │
21  │MATTEL, INC.                     │
22  └─────────────────────────────────┘

23  PROPOUNDING PARTY:        Defendant MATTEL, INC. ("Defendant")

24  RESPONDING PARTY:         Plaintiff CARTER BRYANT ("Plaintiff")

25  SET NUMBER:               FIFTH (5)
26

27

28

EXHIBIT  12
PAGE  41

1        Carter Bryant ("Defendant" or "Bryant") hereby objects and responds to

2  Mattel, Inc.'s ("Plaintiff" or "Mattel") Fifth Set of Requests for Admission.

3        Bryant's responses and objections are made solely for the purpose of this

4  action.

5        Bryant points out that discovery is still pending, that he has not concluded

6  his investigation of the facts relating to this case, has not completed his own

7  discovery in this case, and has not completed preparation for trial. In light of the

8  foregoing, the following Responses are given without prejudice to Bryant's right to

9  stand on his objections, to continue his investigation and discovery, to rely on

10  subsequently discovered facts, and to utilize subsequently discovered or

11  subsequently identified evidence or documents.

12        The following Responses reflect the current status of Bryant's knowledge

13  and belief respecting the matters about which inquiry is made. Discovery will

14  continue as long as permitted by statute or stipulation of the parties, and

15  investigation by Bryant, his attorneys and agents will continue up to and

16  throughout the trial of this action. Bryant specifically reserves the right to

17  introduce at the time of trial any evidence from any source, including documents

18  and testimony from any witnesses which may hereafter be discovered.

19        If any information has been unintentionally omitted from these Responses,

20  Bryant hereby reserves the right to amend these Responses to include the omitted

21  information. Bryant also reserves the right to change, amend or supplement any or

22  all of the matters contained in these responses as additional facts are ascertained,

23  analyses are made, and research is completed. These introductory paragraphs

24  apply to each and every Response herein and shall be incorporated as though fully

25  set forth in each and every Response.

26        All of Bryant's responses are based upon information and documentation

27  that is currently available and specifically known to Bryant. The responses are

28  made in a good-faith effort to provide information now known to Bryant which is

1

CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S
FIFTH SET OF REQUESTS FOR ADMISSION TO CARTER BRYANT
CASE NO. CV 04-09049 SGL (RNBx)

398501.01

EXHIBIT 12

PAGE 42

1  conclusions, opinions and/or legal theories of Bryant's attorneys. Bryant also

2  specifically objects to this request on the grounds that it calls for disclosure of

3  information protected by the attorney-client privilege, the work product doctrine,

4  the joint defense privilege, and any other applicable privileges. Bryant also

5  specifically objects to this request on the grounds that it is oppressively repetitive

6  and unnecessary in combination with Mattel's other requests.

7       Subject to and without waiving the foregoing general and specific

8  objections, Bryant responds to this request as follows: Bryant denies that he

9  believed entering into the BRYANT/MGA AGREEMENT infringed any rights of

10  Mattel.

11  **REQUEST FOR ADMISSION NO. 25:**

12       Admit that YOU CONTEND that no one told YOU when or before YOU

13  entered into the BRYANT/MGA AGREEMENT that entering into the

14  BRYANT/MGA AGREEMENT could or might subject YOU to legal liability.

15  **RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

16       Bryant incorporates by reference the above-stated general objections as if

17  fully set forth herein. Bryant also specifically objects to this request on the

18  grounds that it is compound. Bryant also specifically objects to this request on the

19  ground that it calls for information that is beyond the scope of this litigation.

20  Bryant also specifically objects to this request on the grounds that it calls for

21  disclosure of information protected by the attorney-client privilege, the work

22  product doctrine, the joint defense privilege, and any other applicable privileges.

23  Bryant also specifically objects to this request on the grounds that it is oppressively

24  repetitive and unnecessary in combination with Mattel's other requests.

25       Subject to and without waiving the foregoing general and specific

26  objections, Bryant responds to this request as follows: Bryant admits this request.

27  **REQUEST FOR ADMISSION NO. 26:**

28       Admit that at least one person told YOU when or before YOU entered into

23

398501.01

EXHIBIT  12

PAGE  43

1 | the BRYANT/MGA AGREEMENT that entering into the BRYANT/MGA

2 | AGREEMENT could or might subject YOU to legal liability.

3 | **RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

4 |     Bryant incorporates by reference the above-stated general objections as if

5 | fully set forth herein. Bryant also specifically objects to this request on the

6 | grounds that it is compound. Bryant also specifically objects to this request on the

7 | ground that it calls for information that is beyond the scope of this litigation.

8 | Bryant also specifically objects to this request on the grounds that it calls for

9 | disclosure of information protected by the attorney-client privilege, the work

10 | product doctrine, the joint defense privilege, and any other applicable privileges.

11 | Bryant also specifically objects to this request on the grounds that it is oppressively

12 | repetitive and unnecessary in combination with Mattel's other requests.

13 |     Subject to and without waiving the foregoing general and specific

14 | objections, Bryant responds to this request as follows: Bryant denies that anyone

15 | told him the BRYANT/MGA AGREEMENT could or might subject him to legal

16 | liability to Mattel.

17 | **REQUEST FOR ADMISSION NO. 27:**

18 |     Admit that YOU CREATED OR IMPROVED at least one of THE BRATZ

19 | PITCH MATERIALS while employed by MATTEL.

20 | **RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

21 |     Bryant incorporates by reference the above-stated general objections as if

22 | fully set forth herein. Bryant also specifically objects to this request on the

23 | grounds that it is compound. Bryant also specifically objects to this request on the

24 | grounds that it calls for legal conclusions as to what constitutes "CREATED OR

25 | IMPROVED" and "employed." Bryant also specifically objects to this request

26 | because "while employed at Mattel" is vague and ambiguous; without waiving or

27 | intending to waive, but rather preserving and intending to preserve, his contention

28 | that anything Bryant did on weekends, evenings ,vacation and any other time

24

398501.01

EXHIBIT __12__

PAGE __44__

1  outside ordinary business hours was not done while he was working for Mattel,

2  Bryant responds to this request based on his interpretation that "while employed"

3  refers only to the dates of Bryant's employment, and not to whether Bryant's

4  specific acts at specific times were part of his employment at Mattel. Bryant's

5  response, based on that interpretation, is not an admission that the information

6  provided in his response in any way reflects or evidences work performed by

7  Bryant while he was working for Mattel or that Bryant adopts or agrees with any

8  fact or legal conclusion assumed, presumed or contained in Mattel's request. To

9  the extent this request asks Bryant to provide information concerning the legal

10 basis of his defense of this matter, Bryant also specifically objects on the grounds

11 that the request impermissibly calls for mental impressions, conclusions, opinions

12 and/or legal theories of Bryant's attorneys. Bryant also specifically objects to this

13 request on the grounds that it calls for disclosure of information protected by the

14 attorney-client privilege, the work product doctrine, the joint defense privilege, and

15 any other applicable privileges. Bryant also specifically objects to this request on

16 the grounds that it is oppressively repetitive and unnecessary in combination with

17 Mattel's other requests.

18     Subject to and without waiving the foregoing general and specific

19 objections, Bryant responds to this request as follows: Bryant admits that he traced

20 his 1998 drawings and colored such tracings in the spring or summer of 1999, a

21 period in which he was employed by Mattel, and that he traced his 1998 drawings,

22 colored such tracings, and drew a few outfits of formal wear between January 1,

23 2000 and October 20, 2000, a period in which he was employed by Mattel. Bryant

24 accordingly admits this request to the extent that this tracing, coloring such

25 tracings, and drawing formal wear outfits constitutes CREAT[ING] OR

26 IMPROV[ING] BRATZ PITCH MATERIALS while employed at Mattel, as

27 Bryant interprets those terms.

28

398501.01

EXHIBIT    12

PAGE    45

1 **REQUEST FOR ADMISSION NO. 28:**

2     Admit that YOU CREATED OR IMPROVED more than one of THE

3 BRATZ PITCH MATERIALS while employed by MATTEL.

4 **RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

5     Bryant incorporates by reference the above-stated general objections as if

6 fully set forth herein. Bryant also specifically objects to this request on the

7 grounds that it is compound. Bryant also specifically objects to this request on the

8 grounds that it calls for legal conclusions as to what constitutes "CREATED OR

9 IMPROVED" and "employed." Bryant also specifically objects to this request

10 because "while employed at Mattel" is vague and ambiguous; without waiving or

11 intending to waive, but rather preserving and intending to preserve, his contention

12 that anything Bryant did on weekends, evenings ,vacation and any other time

13 outside ordinary business hours was not done while he was working for Mattel,

14 Bryant responds to this request based on his interpretation that "while employed"

15 refers only to the dates of Bryant's employment, and not to whether Bryant's

16 specific acts at specific times were part of his employment at Mattel. Bryant's

17 response, based on that interpretation, is not an admission that the information

18 provided in his response in any way reflects or evidences work performed by

19 Bryant while he was working for Mattel or that Bryant adopts or agrees with any

20 fact or legal conclusion assumed, presumed or contained in Mattel's request. To

21 the extent this request asks Bryant to provide information concerning the legal

22 basis of his defense of this matter, Bryant also specifically objects on the grounds

23 that the request impermissibly calls for mental impressions, conclusions, opinions

24 and/or legal theories of Bryant's attorneys. Bryant also specifically objects to this

25 request on the grounds that it calls for disclosure of information protected by the

26 attorney-client privilege, the work product doctrine, the joint defense privilege, and

27 any other applicable privileges. Bryant also specifically objects to this request on

28 the grounds that it is oppressively repetitive and unnecessary in combination with

398501.01

EXHIBIT __12__

PAGE __46__

1   Mattel's other requests.

2       Subject to and without waiving the foregoing general and specific

3   objections, Bryant responds to this request as follows: Bryant admits that he traced

4   his 1998 drawings and colored such tracings in the spring or summer of 1999, a

5   period in which he was employed by Mattel, and that he traced his 1998 drawings,

6   colored such tracings, and drew a few outfits of formal wear between January 1,

7   2000 and October 20, 2000, a period in which he was employed by Mattel. Bryant

8   accordingly admits this request to the extent that this tracing, coloring such

9   tracings, and drawing formal wear outfits constitutes CREAT[ING] OR

10  IMPROV[ING] BRATZ PITCH MATERIALS while employed at Mattel, as

11  Bryant interprets those terms.

12  **REQUEST FOR ADMISSION NO. 29:**

13      Admit that YOU CREATED OR IMPROVED all of THE BRATZ PITCH

14  MATERIALS while employed by MATTEL.

15  **RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

16      Bryant incorporates by reference the above-stated general objections as if

17  fully set forth herein. Bryant also specifically objects to this request on the

18  grounds that it is compound. Bryant also specifically objects to this request on the

19  grounds that it calls for legal conclusions as to what constitutes "CREATED OR

20  IMPROVED" and "employed." Bryant also specifically objects to this request

21  because "while employed at Mattel" is vague and ambiguous; without waiving or

22  intending to waive, but rather preserving and intending to preserve, his contention

23  that anything Bryant did on weekends, evenings ,vacation and any other time

24  outside ordinary business hours was not done while he was working for Mattel,

25  Bryant responds to this request based on his interpretation that "while employed"

26  refers only to the dates of Bryant's employment, and not to whether Bryant's

27  specific acts at specific times were part of his employment at Mattel. Bryant's

28  response, based on that interpretation, is not an admission that the information

27
CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S
FIFTH SET OF REQUESTS FOR ADMISSION TO CARTER BRYANT
CASE NO. CV 04-09049 SGL (RNBx)

398501.01

EXHIBIT __12__
PAGE __41__

1   provided in his response in any way reflects or evidences work performed by

2   Bryant while he was working for Mattel or that Bryant adopts or agrees with any

3   fact or legal conclusion assumed, presumed or contained in Mattel's request. To

4   the extent this request asks Bryant to provide information concerning the legal

5   basis of his defense of this matter, Bryant also specifically objects on the grounds

6   that the request impermissibly calls for mental impressions, conclusions, opinions

7   and/or legal theories of Bryant's attorneys. Bryant also specifically objects to this

8   request on the grounds that it calls for disclosure of information protected by the

9   attorney-client privilege, the work product doctrine, the joint defense privilege, and

10   any other applicable privileges. Bryant also specifically objects to this request on

11   the grounds that it is oppressively repetitive and unnecessary in combination with

12   Mattel's other requests.

13       Subject to and without waiving the foregoing general and specific

14   objections, Bryant responds to this request as follows: Bryant admits that he traced

15   his 1998 drawings and colored such tracings in the spring or summer of 1999, a

16   period in which he was employed by Mattel, and that he traced his 1998 drawings,

17   colored such tracings, and drew a few outfits of formal wear between January 1,

18   2000 and October 20, 2000, a period in which he was employed by Mattel. Bryant

19   accordingly admits this request to the extent that this tracing, coloring such

20   tracings, and drawing formal wear outfits constitutes CREAT[ING] OR

21   IMPROV[ING] BRATZ PITCH MATERIALS while employed at Mattel, as

22   Bryant interprets those terms.

23   **REQUEST FOR ADMISSION NO. 30:**

24       Admit that YOU deny YOU willfully infringed any copyrights in BRATZ

25   WORKS.

26   **RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

27       Bryant incorporates by reference the above-stated general objections as if

28   fully set forth herein. Bryant also specifically objects to this request on the

28
CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S
FIFTH SET OF REQUESTS FOR ADMISSION TO CARTER BRYANT
CASE NO. CV 04-09049 SGL (RNBx)

398501.01

EXHIBIT 12
PAGE 48

1   grounds that it calls for legal conclusions as to what constitutes willful

2   infringement. To the extent this request asks Bryant to provide information

3   concerning the legal basis of his defense of this matter, Bryant also specifically

4   objects on the grounds that the request impermissibly calls for mental impressions,

5   conclusions, opinions and/or legal theories of Bryant's attorneys. Bryant also

6   specifically objects to this request on the grounds that it calls for disclosure of

7   information protected by the attorney-client privilege, the work product doctrine,

8   the joint defense privilege, and any other applicable privileges. Bryant also

9   specifically objects to this request on the grounds that it is oppressively repetitive

10   and unnecessary in combination with Mattel's other requests.

11         Bryant responds to this request as follows: Bryant admits that Bryant

12   disputes Mattel's contentions that Bryant willfully infringed any alleged rights of

13   Mattel.

14   **REQUEST FOR ADMISSION NO. 31:**

15         Admit that YOU deny YOU willfully infringed any copyrights MATTEL

16   claims it owns in BRATZ WORKS.

17   **RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

18         Bryant incorporates by reference the above-stated general objections as if

19   fully set forth herein. Bryant also specifically objects to this request on the

20   grounds that it calls for legal conclusions as to what constitutes willful

21   infringement. To the extent this request asks Bryant to provide information

22   concerning the legal basis of his defense of this matter, Bryant also specifically

23   objects on the grounds that the request impermissibly calls for mental impressions,

24   conclusions, opinions and/or legal theories of Bryant's attorneys. Bryant also

25   specifically objects to this request on the grounds that it calls for disclosure of

26   information protected by the attorney-client privilege, the work product doctrine,

27   the joint defense privilege, and any other applicable privileges. Bryant also

28   specifically objects to this request on the grounds that it is oppressively repetitive

EXHIBIT __12__

PAGE __49__

1  objections, Bryant responds to this request as follows: Bryant denies this request.

2  **REQUEST FOR ADMISSION NO. 51:**

3      Admit that, while YOU were employed by MATTEL in 1999 and 2000,

4  YOU were not MATTEL's fiduciary.

5  **RESPONSE TO REQUEST FOR ADMISSION NO. 51:**

6      Bryant incorporates by reference the above-stated general objections as if

7  fully set forth herein.  Bryant also specifically objects to this request on the

8  grounds that it is compound.  Bryant also specifically objects to this request on the

9  grounds that it calls for legal conclusions as to what constitutes a fiduciary.  Bryant

10  also specifically objects to this request because "while . . . employed by Mattel" is

11  vague and ambiguous, as it could either refer only to the dates of Bryant's

12  employment, as Bryant interprets it to do, or could refer to whether Bryant's

13  specific acts at specific times were part of his employment at Mattel.  To the extent

14  this request asks Bryant to provide information concerning the legal basis of his

15  defense of this matter, Bryant also specifically objects on the grounds that the

16  request impermissibly calls for mental impressions, conclusions, opinions and/or

17  legal theories of Bryant's attorneys.  Bryant also specifically objects to this request

18  on the grounds that it calls for disclosure of information protected by the attorney–

19  client privilege, the work product doctrine, the joint defense privilege, and any

20  other applicable privileges.  Bryant also specifically objects to this request on the

21  grounds that it is oppressively repetitive and unnecessary in combination with

22  Mattel's other requests.

23      Subject to and without waiving the foregoing general and specific

24  objections, Bryant responds to this request as follows: Bryant admits this request.

25

26

27

28

398501.01

EXHIBIT __12__

PAGE __50__

1    Dated:  July 9, 2007                          KEKER & VAN NEST, LLP

2

3                                          By:   _____

4                                                MICHAEL H. PAGE
                                                 Attorneys for Plaintiff
5                                                CARTER BRYANT

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S
FIFTH SET OF REQUESTS FOR ADMISSION TO CARTER BRYANT
CASE NO. CV 04-09049 SGL (RNBx)

398501.01

EXHIBIT   12
PAGE   51

PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On July 9, 2007, I served the following document(s):

## CARTER BRYANT'S RESPONSES TO MATTEL, INC'S FIFTH SET OF REQUESTS FOR ADMISSION TO CARTER BRYANT

by **FEDERAL EXPRESS**, by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for correspondence for delivery by FedEx Corporation. According to that practice, items are retrieved daily by a FedEx Corporation employee for overnight delivery; AND

by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

John B. Quinn
Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Tel:    213/443-3000
Fax:    213/443-3100
Email: johnquinn@quinnemanuel.com
Email: michaelzeller@quinnemanuel.com

Diana M. Torres
O'Melveny & Myers, LLP
400 S. Hope Street
Los Angeles, CA 90071
Tel:    213/430-6000
Fax:    213/430-6407
Email: dtorres@omm.com

Patricia L. Glaser
Christensen Glaser Fink Jacobs Weil & Shapiro
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
Tel:    310/553-3000
Fax:    310/556-2920
Email: pglaser@chrisglase.com

Executed on July 9, 2007, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Julie Selby
JULIE A. SELBY

PROOF OF SERVICE
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 12
PAGE 52

# Exhibit 13

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL,　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　PLAINTIFF,　)
　　　　　　　　　　　　　　　　　)　CASE NO.
　　　　　　V.　　　　　　　　　　)　CV 04-9040 SGL (RNBX)
　　　　　　　　　　　　　　　　　)
MATTEL, INC., A DELAWARE　　　　)　CONSOLIDATED WITH
CORPORATION,　　　　　　　　　　)　CASE NO. 04-9059
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　DEFENDANTS.　)　CASE NO.　05-2727
_____)
　　　　　　　　　　　　　　　　　)
AND CONSOLIDATED ACTION (S).　　)
_____)


# C O N F I D E N T I A L

### (ATTORNEYS' EYES ONLY)

## DEPOSITION OF FARHAD LARIAN

## VOLUME I

## FEBRUARY 4, 2008



REPORTED BY:
PAULA PYBURN
CSR NO. 7304
JOB NO. 08AE084-PP

COURT REPORTERS
515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT __13__
PAGE __53__

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, AN          )
INDIVIDUAL,                )
                           )  CASE NO.
     PLAINTIFF,            )  CV 04-9049 SGL(RNBX)
                           )
V.                         )  CONSOLIDATED WITH
                           )  CASE NO. 04-9059
MATTEL, INC., A DELAWARE   )            AND
CORPORATION,               )  CASE NO. 05-2727
                           )
     DEFENDANT.            )
_____)
                           )
AND CONSOLIDATED ACTION(S) )
_____)


        CONFIDENTIAL ATTORNEYS' EYES ONLY
        VIDEOTAPED DEPOSITION OF FARHAD
        LARIAN, VOLUME I, TAKEN ON BEHALF OF
        MATTEL, INC., AT 10250 CONSTELLATION
        BOULEVARD, 20TH FLOOR, LOS ANGELES,
        CALIFORNIA, COMMENCING AT 9:39 A.M.,
        MONDAY, FEBRUARY 4, 2008, BEFORE
        PAULA A. PYBURN, C.S.R. 7304,
        R.P.R., C.L.R.

1

EXHIBIT 13
PAGE 54

```
 1    WHAT?

 2    BY MR. ZELLER:

 3        Q.   TO YOUR UNDERSTANDING THAT MATTEL SAW

 4    EVERYTHING THAT YOUR ATTORNEY HAD?

 5        A.   I'M AWARE THAT THEY WERE SURPRISED.  I'M          10:33:53

 6    AWARE THAT I HADN'T APPROVED IT.  I'M AWARE THAT I

 7    RECEIVED A LETTER FROM YOU.  I AM AWARE THAT I

 8    DIDN'T TRUST MATTEL.  AND I'M AWARE YOU SPENT AT

 9    LEAST A DAY THERE.

10        Q.   I'M SORRY, WHAT WAS THE LAST PART?              10:34:29

11        A.   THAT YOU SPENT AT LEAST ONE DAY AT MY

12    ATTORNEY'S OFFICE.

13             (MS. GLASER JOINS THE DEPOSITION;

14             MR. SCHREIR LEAVES THE DEPOSITION.)

15    BY MR. ZELLER:                                           10:34:40

16        Q.   ANY OTHER FACTS?

17        A.   THOSE ARE WHAT I REMEMBER RIGHT NOW.

18        Q.   AND SO IT'S FAIR TO SAY THAT IT'S YOUR

19    UNDERSTANDING AS OF THAT TIME THAT EVERYTHING THAT

20    YOUR ATTORNEY HAD, ALL THE DOCUMENTS YOUR ATTORNEY      10:34:54

21    HAD FROM YOU COULD BE REVIEWED IN A DAY?

22        A.   ONE MORE TIME, PLEASE.

23        Q.   SO IT WAS YOUR UNDERSTANDING AS OF THAT

24    TIME WHEN MATTEL LOOKED AT THE DOCUMENTS THAT

25    EVERYTHING YOU HAD GIVEN YOUR ATTORNEY COULD BE          10:35:06
```

52

EXHIBIT  13
PAGE  57

```
 1    REVIEWED IN A DAY?

 2                MS. MORGENTHALER LEVER:  OBJECTION; VAGUE

 3    AND AMBIGUOUS, ASSUMES FACTS NOT IN EVIDENCE, LACK

 4    OF FOUNDATION.

 5                MR. ALLEN:  JOIN.                            10:35:14

 6                THE WITNESS:  IT DEPENDS ON THE PERSON, IT

 7    DEPENDS HOW MANY PEOPLE, IT DEPENDS -- YEAH, IT

 8    COULD HAVE BEEN REVIEWED IN ONE DAY.

 9    BY MR. ZELLER:

10         Q.   AND WHAT WAS THE QUANTITY OF WHAT YOU HAD    10:35:21

11    GIVEN YOUR ATTORNEY BY THAT TIME?

12         A.   SOME BOXES.

13         Q.   HOW MANY?

14         A.   DON'T REMEMBER.

15         Q.   MORE THAN ONE?                                10:35:32

16         A.   YEAH, MORE THAN ONE.  PROBABLY 10 TO 12.

17         Q.   ISN'T IT TRUE THAT BY THAT TIME YOU HAD

18    GIVEN YOUR ATTORNEY A U.S.B. DEVICE THAT CONTAINED

19    EMAILS?

20                MS. MORGENTHALER LEVER:  OBJECTION.          10:35:44

21                THE WITNESS:  YES, I HAD.

22    BY MR. ZELLER:

23         Q.   DO YOU KNOW WHERE THAT U.S.B. DEVICE IS

24    TODAY?

25         A.   PROBABLY AT MY HOME.                          10:35:52
```

53

EXHIBIT __13__
PAGE __54__

1        Q.   AND THOSE -- THAT U.S.B. DEVICE HAD STORED

2   ON IT EMAILS FROM M.G.A.; CORRECT?

3        A.   YES.

4        Q.   AND THAT INCLUDED EMAILS FROM THE 2000-2001

5   TIME PERIOD?                                              10:36:18

6             MS. MORGENTHALER LEVER:   OBJECTION; CALLS

7   FOR SPECULATION, LACK OF FOUNDATION.

8             THE WITNESS:   IT PROBABLY DID.

9   BY MR. ZELLER:

10        Q.   THAT'S YOUR -- YOUR RECOLLECTION?               10:36:23

11        A.   YES.

12        Q.   SOME OF THOSE EMAILS PERTAINED TO BRATZ;

13   CORRECT?

14             MR. ALLEN:   OBJECTION.

15             MS. MORGENTHALER LEVER:   OBJECTION; CALLS      10:36:30

16   FOR SPECULATION, LACK OF FOUNDATION.

17             THE WITNESS:   I BELIEVE IT DID, YES.

18   BY MR. ZELLER:

19        Q.   AND I TAKE IT AT SOME POINT THAT U.S.B.

20   DEVICE THAT YOU GAVE TO YOUR ATTORNEY -- I ASSUME IT      10:36:43

21   WAS BOB WILSON WHO YOU GAVE THE U.S.B. DEVICE --

22        A.   I DON'T REMEMBER IF IT WAS BOB OR THE OTHER

23   ATTORNEY.

24        Q.   IT WAS SOMEONE AT HIS FIRM?

25        A.   THERE WERE TWO FIRMS INVOLVED, SO -- COULD      10:36:54

                                                              54

EXHIBIT __13__
PAGE __51__

```
 1    HAVE BEEN RICHARD KELLNER.
 2         Q.   OH, THEY WERE INVOLVED AT THE SAME TIME?
 3         A.   YES.
 4         Q.   SO THERE WAS BOB --
 5         A.   NO, NO, NO.  AT ONE POINT BOB QUIT, SO --      10:37:01
 6    SO IT WASN'T EXACTLY THE SAME TIME.
 7         Q.   WELL, LET ME ASK IT THIS WAY:  YOU SAID
 8    THAT TODAY THAT U.S.B. DEVICE IS AT YOUR HOME.  DID
 9    YOU GET IT BACK FROM ONE OR MORE OF YOUR ATTORNEYS
10    AT SOME POINT?                                           10:37:17
11         A.   YES, I DID.
12         Q.   AND ABOUT WHEN DID YOU DO THAT?
13         A.   AFTER I DROPPED THE LAWSUIT.  OR NO, MAYBE
14    NOT.  SOMETIME PROBABLY IN 2005.
15         Q.   I'M SORRY, I'M GOING TO HAVE TO MAKE SURE I    10:37:30
16    UNDERSTAND YOUR LAST ANSWER.
17              DID YOU GET THE U.S.B. DEVICE BACK FROM
18    YOUR ATTORNEYS BEFORE OR AFTER YOU HAD YOUR
19    ARBITRATION HEARING WITH ISAAC LARIAN IN 2005?
20              MS. MORGENTHALER LEVER:  ASKED AND             10:37:47
21    ANSWERED.
22              THE WITNESS:  I DON'T REMEMBER IF IT WAS
23    BEFORE OR AFTER, BUT IT WAS IN 2005.
24    BY MR. ZELLER:
25         Q.   AND WAS THERE JUST ONE U.S.B. DEVICE WITH      10:37:58
```

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

EXHIBIT 13
PAGE 58

1   THESE EMAILS ON IT OR MORE THAN ONE?

2       A.   ONE.

3       Q.   SO AT SOME POINT IN 2005 YOU GOT IT BACK

4   FROM YOUR ATTORNEYS.  AND YOU'VE BEEN IN POSSESSION

5   OF IT SINCE THEN?                                10:38:13

6       A.   THE U.S.B. DRIVE, YES.

7       Q.   HAVE ANY COPIES OF IT BEEN MADE?

8       A.   NO.

9       Q.   IN CONNECTION WITH THIS LAWSUIT WITH MATTEL

10  DID YOU GIVE THE U.S.B. DEVICE TO YOUR ATTORNEYS?   10:38:26

11      A.   NO.

12      Q.   DID YOU PRINT OFF ANY EMAILS FROM THAT

13  U.S.B. DEVICE AND GIVE THEM TO YOUR ATTORNEYS?

14      A.   THERE ARE NO EMAILS ON THAT U.S.B. DRIVE.

15      Q.   I'M SORRY?                              10:38:37

16      A.   THERE ARE NO EMAILS ON THAT DRIVE ANYMORE.

17      Q.   WHAT HAPPENED TO THEM?

18      A.   I ERASED THEM.

19      Q.   WHEN DID YOU DO THAT?

20      A.   SOON AFTER I DROPPED THE LAWSUIT -- OR THE   10:38:43

21  ARBITRATION.

22      Q.   AND WHY DID YOU ERASE THEM?

23      A.   I HAD DROPPED MY ARBITRATION, I WANTED TO

24  MOVE ON, I WAS CONCERNED THAT MY ATTORNEY HAD --

25  THAT YOU HAD SEEN DOCUMENTS THAT MAY HAVE BEEN      10:39:02

56

EXHIBIT __13__
PAGE __59__

| | |
|---|---|
| 1 | PRIVILEGED OR CONFIDENTIAL, AND I SIMPLY DID NOT |
| 2 | WANT TO BE DEPOSED. |
| 3 | Q. AND WERE YOU THE ONE WHO PERSONALLY ERASED |
| 4 | THE EMAILS FROM THE U.S.B. DRIVE? |
| 5 | A. YES, I AM. 10:39:24 |
| 6 | Q. DID ANYONE ELSE HELP YOU WITH THAT? |
| 7 | A. NO. |
| 8 | Q. IS THAT SOMETHING YOU DISCUSSED WITH ANYONE |
| 9 | AT M.G.A. -- |
| 10 | A. NO. 10:39:32 |
| 11 | Q. -- AT ANY TIME? |
| 12 | A. NO. |
| 13 | Q. AT ANY TIME? |
| 14 | A. NEVER. |
| 15 | Q. YOU DID -- YOU ERASED THE EMAILS THAT WE'VE 10:39:34 |
| 16 | BEEN TALKING ABOUT FROM THE U.S.B. DRIVE AFTER YOU |
| 17 | RECEIVED THE LETTERS FROM MY LAW FIRM THAT WE TALKED |
| 18 | ABOUT EARLIER ASKING YOU TO PRESERVE DOCUMENTS; |
| 19 | RIGHT? |
| 20 | MS. MORGENTHALER LEVER: OBJECTION -- 10:39:52 |
| 21 | THE WITNESS: THAT'S NOT WHAT I SAID. |
| 22 | MS. MORGENTHALER LEVER: OBJECTION; ASSUMES |
| 23 | FACTS NOT IN EVIDENCE, LACK OF FOUNDATION. |
| 24 | MR. ALLEN: JOIN. |
| 25 | /// 10:39:57 |

57

EXHIBIT __13__
PAGE __60__

```
 1    BY MR. ZELLER:

 2         Q.    ISN'T IT TRUE THAT THAT HAPPENED?

 3         A.    THAT'S NOT WHAT I SAID, NO.

 4         Q.    I'M NOT ASKING YOU WHAT YOU SAID.

 5         A.    NO, IT'S NOT TRUE.                          10:40:04

 6         Q.    IT'S NOT TRUE.  AND WHY DO YOU SAY IT'S NOT

 7    TRUE?

 8         A.    BECAUSE I DID IT SHORTLY AFTER I DROPPED

 9    THE ARBITRATION.

10         Q.    HOW LONG?                                   10:40:10

11         A.    WITHIN A COUPLE OF DAYS.

12         Q.    HAVE YOU PUT ANYTHING ON THAT U.S.B. DRIVE

13    SINCE THE TIME YOU ERASED IT?

14         A.    YES.

15         Q.    WHAT HAVE YOU PUT ON IT?                    10:40:20

16              MS. MORGENTHALER LEVER:  OBJECTION; CALLS

17    FOR -- LACK -- INVADES THE WITNESS'S PRIVACY.

18              THE WITNESS:  PICTURES, MUSIC, FILES

19    RELATED TO MAYBE TAX RETURNS.  MAYBE MOVIES.  MY

20    DAUGHTER'S HOMEWORK.                                   10:40:55

21    BY MR. ZELLER:

22         Q.    DO YOU KNOW IF THERE ARE ANY DELETED FILES

23    THAT ARE STILL ON THAT U.S.B. DEVICE?

24              MS. MORGENTHALER LEVER:  OBJECTION; VAGUE

25    AND AMBIGUOUS.                                         10:41:12
```

58

EXHIBIT __13__
PAGE __61__

```
 1    RECORD AT 10:46 A.M.

 2    BY MR. ZELLER:

 3         Q.   PROBABLY THE THING TO DO IS IS MAKE SURE WE

 4    HAVE A COMPLETE ANSWER TO MY LAST QUESTION, MAKE

 5    SURE YOU GOT EVERYTHING OUT THAT YOU INTENDED TO.          10:47:00

 6              IF WE CAN READ THE LAST QUESTION BACK AND

 7    HIS ANSWER.

 8              AND IF THERE'S ANYTHING ELSE MORE THAT YOU

 9    NEED TO ADD TO -- TO YOUR LAST ANSWER, I WOULD

10    APPRECIATE --                                             10:47:10

11         A.   GO AHEAD, PLEASE.

12              (THE RECORD WAS READ BY THE COURT

13              REPORTER AS FOLLOWS:

14              "Q.   AND SOME OF THESE CATEGORIES

15              OF MATERIALS THAT YOU JUST DESCRIBED

16              RELATED TO BRATZ; CORRECT?"

17              THERE WAS AN OBJECTION.

18              "A.   THERE MAY HAVE BEEN EMAILS

19              ABOUT SHIPPING THAT RELATED TO

20              BRATZ; THERE MAY HAVE BEEN EMAILS

21              ABOUT TRADEMARKS THAT RELATED TO

22              BRATZ, MY LAWSUITS, SOME THAT

23              RELATED TO BRATZ; SO IN THOSE

24              SENSES --")

25              THE WITNESS:  SO THOSE -- THAT -- THOSE         10:47:44
```

64

EXHIBIT __13__
PAGE __62__

```
 1    WOULD HAVE BEEN SOME OF THE CATEGORIES THAT RELATED
 2    TO BRATZ.
 3             I THINK I ALSO HAD THE PLEADING -- SOME OF
 4    THE PLEADINGS FROM MATTEL VERSUS M.G.A. OR CARTER
 5    BRYANT, THAT WHOLE CASE, AND ALSO THE ART ATTACKS      10:48:01
 6    CASE.
 7    BY MR. ZELLER:
 8       Q.   WERE THERE OTHER CATEGORIES RELATING TO
 9    BRATZ THAT WAS ON THE U.S.B. DEVICE?
10       A.   I HAD DONE SOME TRADEMARK SEARCHES, SO -- I    10:48:18
11    MENTIONED THE TRADEMARKS, I THINK.  NOT THAT I
12    RECALL.
13       Q.   DO YOU THINK THAT THERE WERE OTHER
14    CATEGORIES, YOU JUST CAN'T REMEMBER WHAT THEY ARE?
15             MS. MORGENTHALER LEVER:   OBJECTION --        10:48:32
16             THE WITNESS:   IF I DON'T RECALL, I DON'T
17    RECALL.
18             MS. MORGENTHALER LEVER:   -- MISSTATES THE
19    WITNESS'S TESTIMONY.
20             MR. ZELLER:   WHAT EXHIBIT ARE WE ON?         10:48:43
21       Q.   OTHER THAN THE U.S.B. DEVICE, AT ANY TIME
22    SINCE 2000 HAVE YOU DISCARDED OR GOTTEN RID OF ANY
23    INFORMATION ABOUT BRATZ?
24       A.   YES.
25       Q.   WHAT ELSE HAVE YOU GOTTEN RID OF?              10:49:22
```

65

EXHIBIT __13__
PAGE __63__

| | | |
|---|---|---|
| 1 | A.   SOME OF THE BOXES THAT I RECEIVED BACK FROM | |
| 2 | MY ATTORNEY. | |
| 3 | Q.   WHICH ATTORNEYS? | |
| 4 | A.   RICHARD KELLNER AND ROB SMITH -- BOB SMITH. | |
| 5 | Q.   AND DID YOU GET THOSE BOXES BACK FROM YOUR | 10:49:48 |
| 6 | ATTORNEYS AFTER YOU HAD DISMISSED YOUR -- YOUR | |
| 7 | ARBITRATION PROCEEDING AGAINST -- | |
| 8 | A.   YES. | |
| 9 | Q.   -- ISAAC? | |
| 10 | A.   YES. | 10:49:58 |
| 11 | Q.   AND WHEN DID YOU GET RID OF THOSE BOXES? | |
| 12 | A.   WITHIN A FEW DAYS OF GETTING THEM BACK FROM | |
| 13 | MY ATTORNEY. | |
| 14 | Q.   WAS THIS ABOUT THE SAME TIME WHEN YOU | |
| 15 | ERASED THE INFORMATION FROM THE U.S.B. DEVICE? | 10:50:15 |
| 16 | A.   YES. | |
| 17 | Q.   AND HOW DID YOU DISCARD THE -- THE BOXES? | |
| 18 | A.   I THREW THEM IN THE TRASH. | |
| 19 | Q.   WAS THAT AT HOME OR SOMEWHERE ELSE? | |
| 20 | A.   HOME. | 10:50:26 |
| 21 | Q.   WAS THAT THE 10 TO 12 BOXES THAT YOU | |
| 22 | MENTIONED EARLIER OR A DIFFERENT SET OF BOXES? | |
| 23 | MS. MORGENTHALER LEVER:   OBJECTION; | |
| 24 | MISSTATES THE WITNESS'S TESTIMONY, LACK OF | |
| 25 | FOUNDATION. | 10:50:40 |

66

EXHIBIT __13__
PAGE __64__

```
 1              THE WITNESS:  IT WAS SOME OF THOSE 10 -- 10

 2    TO 12 BOXES.

 3    BY MR. ZELLER:

 4        Q.   WHAT WAS IN THE BOXES THAT YOU GOT RID OF?

 5        A.   I DON'T REMEMBER EXACTLY.  THE EMAILS I      10:50:55

 6    THINK WERE SOME OF THEM.

 7        Q.   THE EMAILS THAT YOU DESCRIBED EARLIER THAT

 8    PERTAINED TO BRATZ?

 9        A.   NOT ONLY TO BRATZ.  LUCASFILM MATTER,

10    WHATEVER I HAD.  IT WASN'T JUST BRATZ.             10:51:21

11        Q.   BUT IT INCLUDED BRATZ?

12        A.   IT INCLUDED BRATZ, YES.

13        Q.   AND DID ANYONE ASSIST YOU IN DISCARDING

14    THOSE BOXES THAT -- OF THOSE MATERIALS THAT WE'VE

15    BEEN TALKING ABOUT?                               10:51:41

16        A.   PROBABLY OUR HOUSEKEEPER.

17        Q.   ANYONE ELSE?

18        A.   I'M NOT SURE IF MY WIFE HELPED ME OR NOT.

19        Q.   ANYONE ELSE?

20        A.   NO.                                      10:51:52

21        Q.   AND DID YOU MAKE THE DECISION TO ERASE THE

22    INFORMATION FROM THE U.S.B. DEVICE AT THE SAME TIME

23    YOU DECIDED TO DISCARD THE BOXES?

24        A.   YES.

25        Q.   NOW, OTHER THAN, AS WE'VE TALKED ABOUT,   10:52:07
```

67

EXHIBIT ___13___
PAGE ___05___

```
 1    YOUR ERASING OF THE U.S.B. DEVICE AND THOSE BOXES

 2    THAT YOU -- THAT YOU DISCARDED THAT YOU GOT FROM

 3    YOUR ATTORNEYS, AFTER YOU DISMISSED YOUR -- YOUR

 4    ARBITRATION PROCEEDING AGAINST ISAAC, IS THERE ANY

 5    OTHER DOCUMENT, ANY OTHER INFORMATION PERTAINING TO      10:52:31

 6    BRATZ THAT YOU HAVE DISCARDED SINCE 2000?

 7         MS. MORGENTHALER LEVER:   ASKED AND

 8    ANSWERED, VAGUE AND AMBIGUOUS.

 9         THE WITNESS:  NO.

10    BY MR. ZELLER:                                          10:52:41

11      Q.   WHEN IS IT THAT YOU OBTAINED THE U.S.B.

12    DEVICE THAT HAD THOSE EMAILS ON THEM?

13         MS. MORGENTHALER LEVER:   OBJECTION; VAGUE

14    AND AMBIGUOUS.

15         YOU CAN ANSWER.                                    10:53:01

16         THE WITNESS:  WHEN DID I BUY THE U.S.B.

17    DRIVE; IS THAT YOUR QUESTION?

18    BY MR. ZELLER:

19      Q.   WELL, LET'S BREAK IT DOWN THAT WAY I GUESS.

20         YOU ACTUALLY BOUGHT THE U.S.B. DEVICE?           10:53:11

21      A.   YES.

22         I'M SORRY, THIS IS MY SISTER AGAIN.

23         OKAY, THANK YOU.

24         MS. MORGENTHALER LEVER:   OFF THE RECORD.

25         THE WITNESS:  IT'S DONE.                          10:53:19
```

68

EXHIBIT ___13___
PAGE ___66___

```
 1              DECLARATION OF WITNESS

 2

 3     I CERTIFY UNDER PENALTY OF PERJURY UNDER THE LAWS

 4    OF THE STATE OF CALIFORNIA THAT THE FOREGOING IS

 5    TRUE AND CORRECT.

 6

 7

 8    EXECUTED AT   ,              , ON                   ,
                   (PLACE)              (DATE)

 9

10

11            (SIGNATURE OF WITNESS)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

329

EXHIBIT __13__
PAGE __67__