THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Tel.: (213) 687-5000
Fax: (213) 687-5600

Attorneys for The MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

v.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS.

**PUBLIC REDACTED**

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with Case No. 04-9059 and Case No. 05-2727

Honorable Stephen G. Larson

(1) MGA PARTIES' REPLY IN FURTHER SUPPORT OF THEIR *EX PARTE* APPLICATION AND MOTION FOR STAY PENDING APPEAL; and

**FILED UNDER SEPARATE COVER:**

(2)     DECLARATION OF JASON D. RUSSELL IN SUPPORT THEREOF [under seal];

(3)     DECLARATION OF LARRY FALCON IN SUPPORT THEREOF [under seal]; and

(4)     COMPENDIUM OF THIRD-PARTY REPLY DECLARATIONS IN SUPPORT THEREOF [under seal].

Hearing Date: December 30, 2008
Time: 10:00 a.m.

# TABLE OF CONTENTS

**PAGE:**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT .......................................................................... 1

ARGUMENT ........................................................................................................ 1

    I.    MGA'S APPEAL IS PROPER AND ITS REQUEST FOR STAY IS RIPE ........................................................................................................... 1

    II.   STANDARDS FOR GRANTING A STAY PENDING APPEAL ............ 3

    III.  MGA HAS SHOWN IMMINENT AND IRREPARABLE HARM ........... 3

    IV.  THE PUBLIC INTEREST FAVORS A STAY ........................................ 7

    V.   MATTEL WILL NOT BE IRREPARABLY HARMED BY A STAY ..... 7

    VI.  MGA'S APPEAL RAISES SUBSTANTIAL QUESTIONS OF LAW ..... 9

    VII. MATTEL'S PROPOSED SECURITY FOR THE STAY IS UNREASONABLE ................................................................................. 11

CONCLUSION ................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES** **Page(s)**

Advanced Medical Optics, Inc. v. Alcon Laboratories, Inc.,
    NO. CIV. A 03-1095-KAJ,
    2005 WL 3454283 (D. Del. Dec. 16, 2005) ................................................ 11

Angotti v. Rexam, Inc.,
    NO. C 05-5264 CW,
    2006 WL 1646135 (N.D. Cal. June 14, 2006) ............................................. 4

Arthrocare Corp. v. Smith & Nephew, Inc.,
    315 F. Supp. 2d 615 (D. Del. 2004)
    aff'd in part, 406 F.3d 1365 (Fed. Cir. 2005) ............................................. 4

Ashker v. California Department of Corrections,
    350 F.3d 917 (9th Cir. 2003) ....................................................................... 1

Becton Dickinson & Co. v. Tyco Healthcare Group LP,
    No. CIV A 02-1694 GMS,
    2008 WL 4745882 (D. Del. Oct. 29, 2008) ................................................. 8

Belcher v. Birmingham National Trust Bank,
    395 F.2d 685 (5th Cir. 1968) ....................................................................... 7

Cadence Design Systems, Inc. v. Avant! Corp.,
    125 F.3d 824 (9th Cir. 1997) ....................................................................... 3

California ex. rel. California Department of Toxic Substances Control v. Campbell,
    138 F.3d 772 (9th Cir. 1998) ..................................................................... 11

Cargill Inc. v. Sears Petroleum and Transport Company,
    No. 5:03 CV 0530(DEP),
    2004 WL 3507329 (N.D.N.Y. Aug. 27, 2004) ........................................... 11

Corning Glass Works v. Sumitomo Electric U.S.A., Inc.,
    674 F. Supp. 1074 (S.D.N.Y. 1987) ............................................................. 3

Cunningham v. Gates,
    229 F.3d 1271 (9th Cir. 2000)
    aff'd in part, rev'd in part, 312 F.3d 1148 (9th Cir. 2002) ....................... 11

Danjaq LLC v. Sony Corp.,
    263 F.3d 942 (9th Cir. 2001) ..................................................................... 10

Davila v. County of San Joaquin,
    No. Civ. S06-2691 LKK/EFB
    2008 WL 4426669 (E.D. Cal. Sept. 26, 2008) .................................................. 3, 11

De Boer Structures, Inc. v. Shaffer Tent & Awning Co.,
    187 F. Supp. 2d 910 (S.D. Ohio 2001) .......................................................... 12

Digital Filing System, L.L.C. v. Aditya International,
    No. 03-70437, 2005 WL 2372662 (E.D. Mich. Sept. 27, 2005) .................... 4

eBay, Inc. v. Bidder's Edge, Inc.,
    100 F. Supp. 2d 1058 (N.D. Cal. 2000) .......................................................... 8

eBay, Inc v. MercExchange, LLC.,
    547 U.S. 388 (2006) ..................................................................................... 10

Ecee, Inc. v. Federal Energy Regulatory Commission,
    611 F.2d 554 (5th Cir. 1980) ......................................................................... 2

Empresa Cubana del Tabaco v. Culbro Corp.,
    NO. 97 CIV. 8399 (RWS),
    2004 WL 925615 (S.D.N.Y. Apr. 30, 2004) .................................................. 4

F.D.I.C. v. Garner,
    125 F.3d 1272 (9th Cir. 1997) ....................................................................... 4

GTE Products Corp. v. Kennametal, Inc.,
    772 F. Supp. 907 (W.D. Va. 1991) .............................................................. 11

Goldie's Bookstore, Inc. v. Superior Court,
    739 F.2d 466 (9th Cir. 1984) ......................................................................... 4

Golden Gate Restaurant Association v. City & County of San Francisco,
    512 F.3d 1112 (9th Cir. 2008) ....................................................................... 3

Halo Management, LLC v. Interland, Inc.,
    308 F. Supp. 2d 1019 (N.D. Cal. 2003) ......................................................... 3

Hasel v. Pulpdent Corp.,
    NO. 01-2008, DSD/FLN,
    2004 WL 1196971 (D. Minn. Jan. 7, 2004) .................................................. 4

In re Hayes Microcomputer Products Inc., Patent Litigation,
    766 F. Supp. 818 (N.D. Cal. 1991)
    aff'd 982 F.2d 1527 (fed Cir. 1992) ........................................................ 3, 11

Hendricks v. Bank of America, N.A.,
    408 F.3d 1127 (9th Cir. 2005) ..................................................................... 11

Humane Society of United States v. Cavel International, Inc.,
    No. 07-5120, 2007 WL 4723381 (D.C. Cir. May 1, 2007) ................................ 5

Itron, Inc. v. Benghiat,
    No. CIV 99-50 (JRT/FLN),
    2003 WL 22037710 (D. Minn. Aug. 29, 2003) .......................................... 3, 4

Los Angeles Police Protective League v. Gates,
    995 F.2d 1469 (9th Cir. 1993) ......................................................... 9

LaVine v. Blaine School District,
    257 F.3d 981 (9th Cir. 2001) .......................................................... 10

Le Sportsac, Inc. v. Dockside Research, Inc.,
    478 F. Supp. 602 (S.D.N.Y. 1979) ...................................................... 8

Marathon Oil Co. v. United States,
    807 F.2d 759 (9th Cir. 1986) .......................................................... 2

Metro-Goldwyn-Mayer Studios, Inc. v. Grokster,
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) ................................................. 8

Magnesystems, Inc. v. Nikken, Inc.,
    No. CV 94-0715-ABC (EEX),
    1994 WL 808421 (C.D. Cal. Aug. 8, 1994) ............................................ 4, 7

Manago v. Williams,
    No. CIV S 072290 LKKKJMP,
    2008 WL 2388652 (E.D. Cal. June 5, 2008) ............................................. 4

MercExchange, L.L.C. v. eBay, Inc.,
    500 F. Supp. 2d 556 (E.D. Va. 2007) ............................................... 7, 10

New York v. Finance Services Network,
    930 F. Supp. 865 (W.D.N.Y. 1996) ..................................................... 12

New York Life Insurance Co. v. Watt West Investment Corp.,
    755 F. Supp. 287 (E.D. Cal. 1991) .................................................... 12

National Instruments Corp. v. Mathworks, Inc.,
    2003 WL 24049230 (E.D. Tex. June 23, 2003)
    aff'd 113 Fed. Appx. 895 (Fed. Cir. 2004) ......................................... 5, 11

Paice, LLC v. Toyota Motor Corp.,
    2006 WL 2385139 (E.D. Tex. Aug. 16, 2006),
    aff'd in part, vacated in part, 504 F.3d 1293 (Fed. Cir. 2007),
    cert. denied, 128 S. Ct. 2430 (2008) ................................................. 9

Playboy Enterprises, Inc. v. Netscape Communications Corp.,
    55 F. Supp. 2d 1070 (C.D. Cal. 1999) .................................................................. 8

Protect Our Water v. Flowers,
    377 F. Supp. 2d 882 (E.D. Cal. 2004) .................................................................. 3

Resolution Trust Corp. v. Bayside Developers,
    43 F.3d 1230 (9th Cir. 1995) .............................................................................. 12

Sea-Land Service Inc. v. International Longshoremen's & Warehouseman's Union (ILWU),
    939 F.2d 866 (9th Cir. 1991) ............................................................................ 2, 4

Silverstein v. Penguin Putnam, Inc.,
    368 F.3d 77 (2d Cir. 2004) ................................................................................... 9

Smith v. Arthur Andersen LLP,
    421 F.3d 989 (9th Cir. 2005) .............................................................................. 10

Standard Havens Products, Inc. v. Gencor Industries Inc.,
    897 F.2d 511 (Fed. Cir. 1990) .......................................................................... 4, 11

Swint v. Chambers County Commission,
    514 U.S. 35, 115 S. Ct. 1203, 131 L.Ed. 2d 60 (1995) ..................................... 11

Taylor Corp v. Four Seasons Greetings, LLC,
    403 F.3d 958 (8th Cir. 2005) .............................................................................. 10

Teleflex Industrial Products, Inc. v. Brunswick Corp.,
    294 F. Supp. 256 (E.D. Pa. 1968) ........................................................................ 5

Triad System Corp. v. Southeastern Express Co.,
    64 F.3d 1330 (9th Cir. 1995) ............................................................................ 3, 4

Tweedle v. State Farm Fire & Casualty Co.,
    527 F.3d 664 (8th Cir. 2008) ................................................................................ 1

United States v. An Article of Drug,
    661 F.2d 742 (9th Cir. 1981) .............................................................................. 10

Waag v. Hamm,
    10 F. Supp. 2d 1191 (D. Colo. 1998) ................................................................. 12

Warehouse Restaurant, Inc. v. Customs House Restaurant, Inc.,
    726 F.2d 480 (9th Cir. 1984) ................................................................................ 2

Whittier College v. America Bar Association,
    No. CV 07-1817 PA,
    2007 WL 1624100 (C.D. Cal. May 7, 2007)...................................................................8

Zucker v. Maxicare Health Plans Inc.,
    14 F.3d 477, 480 (9th Cir. 1994) ...................................................................................2

**STATUTES**

28 U.S.C. § 1291 ..................................................................................................................2

**MISCELLANEOUS**

C. Wright, A. Miller & E. Cooper, 16 Fed. Practice & Proc. § 3924 n.8.............................2

**PRELIMINARY STATEMENT**

If one credited Mattel's opposition, a party faced with an injunction could never obtain a stay of that injunction pending appeal if there were *any* issues to be addressed in the District Court. Mattel is simply wrong. (See Section I, infra.)

Mattel's opposition offers no substantive challenge to MGA's harm. Instead, Mattel seeks to exclude all evidence of this harm through baseless objections, a tortured view of the urgent circumstances presented here, and a nonsensical argument that any harm is speculative as the Court has yet to rule on MGA's renewed JMOL motion.

(Section III, infra.) Measured against this irreparable harm, Mattel's opposition confirms that the public interest strongly favors a stay (Section IV, infra) and that Mattel will suffer no harm from a stay (Section V, infra).

MGA also established that, at a minimum, there are "substantial legal questions" on a host of issues underlying the Court's December 3rd Orders, many of which resolve novel or complex issues that have not been addressed in this Circuit. Mattel's opposition predictably highlights that the Court decided in Mattel's favor on these issues, but cannot and does not override the low standard required to show a substantial legal question. (Section VI, infra.)

**ARGUMENT**

**I.     MGA'S APPEAL IS PROPER AND ITS REQUEST FOR STAY IS RIPE**

Mattel's jurisdictional arguments are not properly before this Court and ignore that MGA's appeal is **interlocutory**.[1] Ashker v. Cal. Dept. of Corr., 350 F.3d 917, 920 n.1 (9th

---

[1]     Tweedle v. State Farm Fire & Cas. Co., 527 F.3d 664, 668 (8th Cir. 2008) (appellate jurisdiction is an issue for the appellate court). Mattel filed a Motion to Dismiss the Appeal in the 9th Circuit, which it improperly incorporated into its opposition here. Only to rebut any suggestion
*(cont'd)*

Cir. 2003) ("if a final judgment ... has not been entered, the injunction remains 'interlocutory' and thus appealable under § 1292(a)(1)"). 28 U.S.C. § 1292(a)(1) confers appellate jurisdiction regardless of the finality of the injunction or the issues remaining here and cannot be eviscerated by this Court's staying enforcement of its injunctive orders. Triad Sys. Corp. v. S.E. Express Co., 64 F.3d 1330, 1334 (9th Cir. 1995). Reviewing Mattel's authority shows why Mattel's jurisdictional arguments fail. In Zucker v. Maxicare Health Plans Inc., the express precondition for the judgment had fallen through, and the injunctive order was not sufficiently severable from the rest of the non-final judgment to stand on its own for jurisdictional purposes. 14 F.3d 477, 480-83 (9th Cir. 1994).[2]

    Mattel's ripeness argument (Opp'n at 3-6) is specious. MGA need not wait until it suffers irreversible damage to obtain relief.[3] As the Fifth Circuit explained, "the imminent threat of future injury is itself enough to make this case ripe for review. 'One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending that is enough.'" Ecee, Inc. v. Fed. Energy Reg. Comm'n, 611 F.2d 554, 557 n.7 (5th Cir. 1980). Accord Sea-Land Serv. Inc. v. ILWU, 939 F.2d 866, 871 (9th Cir. 1991).

---

(cont'd from previous page)
that it did not respond, MGA incorporates its 9th Circuit opposition. (Russell Decl. Ex. A.)
[2] Warehouse Rest., Inc. v. Customs House Rest., Inc., 726 F.2d 480, 481 (9th Cir. 1984) is inapposite as "no interlocutory appeal was taken," it has been criticized as wrongly decided (C. Wright, A. Miller & E. Cooper, 16 Fed. Practice & Proc. § 3924 n.8 (West 2008)), and it is no longer good law as the Ninth Circuit construed it as dealing with appeals from final judgments under 28 U.S.C. § 1291, while at the same time concluding that a permanent injunction "is an interlocutory order appealable under section 1292(a)(1)," even where a district court retained jurisdiction to conduct an accounting. Marathon Oil Co. v. U.S., 807 F.2d 759, 764 (9th Cir. 1986).
[3] Mattel argues that any urgency is of MGA's own making due to MGA's opposition to expedited briefing on the injunction. (Opp'n at 6 n.23.) Not true. The injunction originally was to be heard after post-trial briefing and Mattel is responsible for the current timing. (Tr. 8346:11-18.)

## II. STANDARDS FOR GRANTING A STAY PENDING APPEAL

MGA cited <u>Golden Gate</u>, which holds that the "irreparably injured" and "likelihood of success" factors on a motion for stay pending appeal are on "<u>a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases</u>" and thus MGA can show a strong likelihood of success and <u>mere possibility</u> of irreparable injury absent relief, or that "the balance of hardships tips sharply in its favor" and there are "serious legal questions" on appeal – or <u>anything in between</u>. 512 F.3d 1112, 1116 (9th Cir. 2008). Mattel ignores <u>Golden Gate</u>, wrongly claiming the tests are an "either/or" proposition. <u>Halo Mgmt., LLC v. Interland, Inc.</u>, 308 F.Supp.2d 1019, 1026 (N.D. Cal. 2003) ("two-part test's phrasing – viz., 'either ... or' – implies that the test is a disjunctive one …, however, the two prongs of this test … represent two poles of a sliding scale[.]"). MGA also showed that it "need not persuade the court that it is likely to be reversed on appeal," only that a substantial legal question exists. (Mot. at 10-11.) Mattel cites no contrary case.[4]

## III. MGA HAS SHOWN IMMINENT AND IRREPARABLE HARM

MGA showed that a stay should be granted when a company's very existence is at stake. (Mot. at 4-7.) Mattel offers two responses. (Opp'n at 16-17). <u>First</u>, Mattel argues that because MGA was found to be infringing Mattel property, MGA cannot complain that its business is threatened, but offers no supporting authority. Mattel ignores <u>In re Hayes Microcomputer Prods.</u>, which stayed a permanent injunction pending appeal despite a jury's <u>willful</u> infringement finding,[5] noting that while it "is not unsympathetic to [the] argument

---

[4] Mattel's cases are in accord. <u>Davila v. County of San Joaquin</u>, 2008 WL 4426669, *2 (E.D. Cal. Sept. 26, 2008) (granting stay on showing of "at least 'serious legal questions'" on appeal"); <u>Protect Our Water v. Flowers</u>, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004) ("district courts properly 'stay their own orders when they have ruled on an admittedly difficult legal question …'").

[5] The jury <u>rejected</u> willful infringement here. Thus Mattel's reliance on <u>Cadence Design Systems, Inc. v. Avant! Corp.</u>, 125 F.3d 824 (9th Cir. 1997), a preliminary injunction case not addressing the equities of a stay pending appeal, is misplaced. <u>Cadence</u> carefully noted that defendant <u>willfully infringed</u> plaintiff's work, and thus "a defendant who <u>knowingly infringes</u> another's copyright 'cannot complain of the harm that will befall it when properly forced to desist from its infringing activities.'" <u>Id.</u> at 829. Most of Mattel's cases arise from willful infringement findings and are thus distinguishable. E.g., <u>Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.</u>, 674 F. Supp. 1074, 1078 (S.D.N.Y. 1987) ("The arguments for enforcing the injunction pending appeal are particularly strong where, as here, the infringement has been found to be deliberate and willful."); <u>Itron, Inc. v. Benghiat</u>, 2003 WL 22037710, *12 (D. Minn. Aug. 29, 2003) (same).

that ... willful infringers should be made to pay a stiff penalty" and while patents should be protected, such considerations were trumped by the "serious risk" that "when and if the injunction is finally enforced, [defendants] will be forced out of business." 766 F. Supp. 818, 823 (N.D. Cal. 1991).; See also Standard Havens Prods. Inc. v. Gencor Indus. Inc., 897 F.2d 511, 515-16 (Fed. Cir. 1990) (rejecting argument made by Mattel as "misplaced" as such a rule "does not overcome the equities of a case" and defendant's financial straits warranted stay). The defendants in Mattel's cases offered no evidence of the dire scenario here.[6]

Second, Mattel urges that MGA's evidence is impermissibly speculative, but points to no authority or evidence to support that contention. Mattel cites Goldie's Bookstore, Inc. v. Sup. Ct., for the proposition that "[s]peculative injury does not constitute irreparable injury," but the court overturned a preliminary injunction based on the loss of "goodwill and 'untold' customers" because that harm was "not based on any factual allegations." 739 F.2d 466, 472 (9th Cir. 1984). Mattel's assertion that

is wrong. MGA need not show actual injury, imminent threatened harm suffices. Sea-Land, 939 F.2d at 871; F.D.I.C. v. Garner, 125 F.3d 1272, 1280 (9th Cir. 1997) ("possibility" of dissipation of assets); Manago v. Williams, 2008 WL 2388652, at *1 (E.D. Cal. June 5, 2008) ("existing actual threat must be shown, although the injury need not be certain to occur").

Courts routinely find irreparable harm based on evidence far more general than MGA's. See, e.g., Angotti v. Rexam, Inc., 2006 WL 1646135, *15-16 (N.D. Cal. June 14,

---

[6] Triad Sys., 64 F.3d at 1334, 1338 (injunction was stayed pending appeal); Magnesystems, Inc. v. Nikken, Inc., 1994 WL 808421, at *5 (C.D. Cal. 1994) (defendant showed "speculative" evidence of irreparable harm as "virtually 100% of its sales and profits" stemmed from infringing product; court unfavorably compared defendant to Standard Havens defendant's showing "that without a stay it was likely to suffer irreparable harm in the form of employee layoffs, immediate insolvency, and, possibly, extinction"); Arthrocare Corp. v. Smith & Nephew, Inc., 315 F.Supp.2d 615, 621 (D. Del. 2004) (company "failed to show that any of its employees will lose their jobs"); Empresa Cubana del Tabaco v. Culbro Corp., 2004 WL 925615, *2 (S.D.N.Y. Apr. 30, 2004) (no showing of threatened loss of business); Itron, 2003 WL 22037710 at *12 (defendant "has not suggested that an injunction would destroy its business, but merely that it would lose some market share and suffer other harm"). Mattel's other cases did not analyze the irreparable harm to defendant. Digital Filing Sys., L.L.C. v. Aditya Int'l., 2005 WL 2372662, at *2-3 (E.D. Mich. Sept. 27, 2005) (appeal from default judgment, no discussion of irreparable harm); Hasel v. Pulpdent Corp., 2004 WL 1196971, at *3 (D. Minn. Jan. 7, 2004) (no analysis of harm).

2006) (irreparable harm shown from potentially denied benefits even when plaintiffs did not "disclos[e] their liquid assets or… specify[] the amount of Social Security they receive" in declarations); Nat'l Instrums. Corp. v. Mathworks, Inc., 2003 WL 24049230, at *6 (E.D. Tex. June 23, 2003) (two affidavits addressing financial impact, employee loss and "likely" loss of goodwill held sufficient evidence of irreparable harm to stay injunction).

Mattel's lone authority for its claim that MGA's declarations are "insufficient" is **the dissent** in Humane Soc'y of U.S. v. Cavel Int'l, Inc., 2007 WL 4723381, at *1 (D.C. Cir. May 1, 2007). The majority **granted** a stay pending appeal, over the dissent's complaints that "two sparsely-substantiated declarations" of the company's officers showed only that "it would be 'extremely difficult' to regain customers lost if it is unable to restart production" after a temporary shutdown, and "the facility is 'too small' to adapt… [r]ather than discuss or explore alternatives to a total shutdown of operations[.]" Id. at *2-3. Despite the evidentiary flaws outlined in the dissent, the court still found irreparable injury, as the company "will go out of business absent a stay, because it will be unable to operate during the pendency of this appeal as a result of the district court's order." Id. at *1.[7]

---

[7] Mattel also cites Teleflex Indus. Prods., Inc. v. Brunswick Corp., which did not stay an order requiring defendant "promulgate minimum acceptable standards and specifications for all instruments and instrument panels" because the only harm pled was potential "confusion" from boat builders but did stay its order requiring the defendant to recall certain of its instrument panels "pending resolution of the appeal." 294 F. Supp. 256, 257-58 (E.D. Pa. 1968).

(cont'd)

1    Mattel does not – and cannot – deny that these losses will occur.[10] Indeed, the Court already found that "[t]he evidence at trial showed that, at least historically, Bratz is the brand that has made MGA profitable. And the proposed injunction addresses the core of that brand." (12/3 Order.) Mattel's own damages expert opined that Bratz often represented MGA's only profitable product line and that Bratz products accounted for nearly 80% of MGA's revenues between 2001 and 2007. (TX 13956; TX 13957). Mattel's counsel later emphasized to the jury that "What kind of company would [MGA] be now if [Bratz] had not happened? Well, you saw the evidence. You saw how well their other products had done. You saw how every product since then has lost money overall." (Tr. 8250:4-7.)

Mattel's argument that MGA is not irreparably harmed because a number of non-infringing factors have contributed to the success of the Bratz dolls, and thus that MGA could make "any lost Bratz revenues readily replaceable through sales of other products,"[12]

---

*(cont'd from previous page)*

[12]   Mattel's speculation that MGA can counteract losing a brand that once constituted 80% of its revenue simply by "successfully marketing other dolls" (Opp'n at 18) is belied by Mattel's own expert's admission that even Bratz made scant profits in its first year. (TX 13931-001).

ignores market realities. (Opp'n at 18.)

Although the success of Bratz derived from factors other than the doll design, and MGA's creativity in packaging and marketing helped to drive product sales, a sweeping injunction barring further production and use of the widely-known Bratz name itself is devastating. MGA's efforts imbued the "Bratz" mark with substantial value, and its inability to take advantage of this goodwill is

Mattel's theory assumes away

## IV.   THE PUBLIC INTEREST FAVORS A STAY

MGA established that Bratz customers,                                  will be adversely impacted by a stay, that destroying a competitor in a market is anti-competitive, and that the issues in this case are of tremendous public importance to future litigants but might not be litigated absent a stay. (Mot. at 8-10.) Mattel counters with cases where collateral job loss was a speculative and remote possibility[13] and pre-eBay cases emphasizing the vindication of property rights, which post-eBay cases reject because "while preserving the integrity of the patent system will always be a consideration in the public interest analysis, it cannot be allowed to dominate such analysis lest a presumption results." MercExchange, L.L.C. v. eBay, Inc., 500 F.Supp.2d 556, 586 (E.D. Va. 2007). The public interest favors a stay.

## V.   MATTEL WILL NOT BE IRREPARABLY HARMED BY A STAY

MGA showed that Mattel cannot show irreparable harm because its inability to exclude others from using its intellectual property is given little weight on a stay, it makes no products using the copyrighted works or "Bratz" name, and it waited years to seek an

---

[13]   Mattel misstates its cases. Belcher v. Birm. Nat'l Trust Bank, 395 F.2d 685 (5th Cir. 1968), did not to treat the "employees' desire for job security during the time of appeal" as a "public interest" as it found that the possibility of "adversely affect[ing]" these employees was a "remote and future consequence." And in Magnesystems, 1994 WL 808421 at *5-6), defendant did not describe potential harm to employees.

injunction. (Mot. at 7-8.) Mattel responds with preliminary injunction cases, arguing that its inability to exclude presumes irreparable harm. (Opp'n at 21.) Mattel's cases pre-date MGM Studios, Inc. v. Grokster, 518 F. Supp. 2d 1197, 1211 n.13 (C.D. Cal. 2007) ("after eBay, Plaintiffs cannot rely on the pure fact of infringement to establish irreparable harm"); see also MGA's Opp'n to P.I. Mot. at 12-13. Mattel's reliance on preliminary injunction cases is also misplaced given its five year delay in seeking an injunction as "[d]elay ... undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." Le Sportsac, Inc. v. Dockside Research, Inc., 478 F. Supp. 602, 609 (S.D.N.Y. 1979) (denying preliminary injunction).[14]

Mattel's cases belie that "irreparable harm from an ongoing loss of exclusive rights is sufficient." (Opp'n at 21). The defendant in Becton Dickinson and Co. v. Tyco Healthcare Group LP, 2008 WL 4745882, at *4-5 (D. Del. Oct. 29, 2008), only "mention[ed] a stay of the injunction in passing," and failed to "argue[] or put forth any evidence that it will suffer irreparable harm absent a stay or that a stay will not injure [plaintiff]." Mattel asserts it would not receive compensation for "ongoing harms" during the stay, but ignores that the proper remedy is a royalty (Mot. at 8).[15] Mattel claims without support it will lose market share during a stay, and that a stay would "encourage others to copy [plaintiff's] invention and flood the market with infringing products without fear of being stopped by a prompt injunction." (Opp'n at 21-22.) Given MGA's zealous efforts to preserve the Bratz brand, this argument defies credulity. Equally absurd is Mattel's claim that MGA will be "tempted by transactions" maximizing short-term gains at the expense of long-term value or fail to protect Bratz. (Opp'n at 22.) Mattel offered no evidence that it intends to commercialize Bratz or profit from the use of its copyrights. Mattel's inchoate "harms" do not

---

[14] Accord Whittier Coll. v. Am. Bar Ass'n, 2007 WL 1624100, at *9 (C.D. Cal. May 7, 2007) (18-month delay "rebuts any contention of irreparable injury"); Playboy Enters. v. Netscape Commc'ns Corp., 55 F.Supp.2d 1070, 1090 (C.D. Cal. 1999) (delay of 60 days); eBay, Inc. v. Bidder's Edge, Inc., 100 F. Supp. 2d 1058, 1068 (N.D. Cal. 2000) (cited by Mattel) ("delay of two years would certainly raise serious doubts as the irreparability of any alleged harm").

[15] "[M]erely alleging an opponent's inability to pay damages does not constitute irreparable harm." Grokster, 518 F. Supp. 2d at 1217. By definition, MGA would have the ability to satisfy a royalty because any payments would be withdrawn from MGA's revenues after they are earned.

counterbalance MGA confronts absent a stay.[16]

## VI. MGA'S APPEAL RAISES SUBSTANTIAL QUESTIONS OF LAW

Mattel's opposition confirms that the decision to enjoin the sale of all Bratz-related product presents many substantial legal questions. MGA showed such a question as to whether the Court failed to follow the only "implicit logical conclusion" of the verdict, *i.e.*, that the jury found either that a small portion of Bratz products infringed, or that many products infringed, but the products' profits derived primarily from factors other than Bryant's drawings.[17] Mattel argues that the Court's requirement that the jury award be "tied to a specific piece of evidence" is not "wholly new." (Opp'n at 7 n.24.) It is. Mattel's cases, principally L.A. Police Prot. League v. Gates, do not so hold, showing a substantial issue.

MGA also showed a substantial legal question on the royalty issue. Mattel contends there are no cases where a court ordered a royalty instead of an injunction where the value of the infringing products comes largely from factors unrelated to infringing intellectual property. (Opp'n at 9.) Since eBay, there are several. See, e.g., Paice, LLC v. Toyota Motor Corp., 2006 WL 2385139, at *5-6 (E.D. Tex. Aug. 16, 2006) (denying injunction and ordering ongoing royalty), aff'd, 504 F.3d 1293, 1314 (Fed. Cir. 2007).[18] Mattel argues that rejecting a royalty was justified by the "hostility between the parties" (Opp'n at 9) but does not dispute that a judicial mechanism exists to impose a royalty nonetheless. (Mot. at 15.)

Mattel's opposition also confirms the existence of a substantial legal question on the Court's use of a presumption to establish irreparable harm after eBay by arguing (based on

---

[16] Mattel's expert conceded that the value of MGA's Bratz franchise fell by $205 million in 2007 to $740 million (Tr. 6390:21-6391:19), and further conceded that Bratz' declined another $420 million to $310 million the first six months of 2008. (TX 13961; Tr. 6446:3-11). In effect, according to Mattel's own expert, the value of the Bratz franchise dropped 67% in 18 months and will fall more given the injunction. Because, as proven at trial, Larian's net worth derives largely from Bratz, Larian's net worth has been similarly volatile and plummeting.

[17] Mattel argues that MGA waived this argument (Opp'n at 7) even though it was made at the hearing (which the Court notes) and in the briefs (see, e.g., MGA's Opp'n to P.I. Mot. at 2, 14).

[18] Even pre-eBay, courts recognized that injunctions were unnecessary and inappropriate if the the infringement was relatively minor and the consequences of future infringement were minimal or compensable through damages. E.g., Silverstein v. Penguin Putnam, 368 F.3d 77 (2d Cir. 2004).

1  pre-eBay cases) that the rule "is not novel."[19] eBay Inc v. MercExchange, LLC., 547 U.S. 388, 393-94 (2006), eliminated this "categorical rule." Grokster expressly rejected the "categorical rule" this Court adopts, establishing the issue is novel. 518 F. Supp 2d at 1209.

Mattel's opposition confirms a substantial legal question on the Bratz characters and the failure to present the question to the jury. Mattel claims MGA "waived any claim that the Bratz characters are not distinctive by not asserting that in its injunction opposition" (Opp'n at 9) but MGA did assert it (MGA's Opp'n to P.I. Mot. at 27 n.42) and Mattel cannot overcome MGA's entitlement to a jury trial on the scope of infringement.[20]

Mattel asserts that the Constructive Trust Order is "a straightforward application of well-established principles of tort and constructive trust law." (Opp'n at 10-11.) Its brief proves otherwise, struggling to explain how unsettled California common law trumps federal distinctions between unprotectible ideas and protectible property that have not been addressed in this Circuit. Mattel's brief also confirms the Decl. Relief Order implicates novel state and federal IP law. While Mattel asserts the UCL standing requirement is met by its lost market share (id.), Mattel did not show a vested ownership interest in that share.

Mattel argues that the Court cannot consider various rulings underlying the Dec. 3 Orders. As Mattel concedes, the Ninth Circuit may review any rulings that are "inextricably intertwined" with or "necessary to ensure meaningful review of" the injunctions (Smith v. Arthur Andersen LLP, 421 F.3d 989, 998 (9th Cir. 2005)), including rulings providing the legal authority for the injunction orders, such as the interpretation of Bryant's contract (LaVine v. Blaine Sch. Dist., 257 F.3d 981, 987 (9th Cir. 2001)), and any order that "implicate[s] the very power the district court used to issue the rulings then under

---

[19]   As MGA showed, while injury to the copyright holder may be inevitable where its product has to compete with the infringing product, this logic does not apply where plaintiff has not marketed, developed, or sold the copyrighted work and has not introduced evidence that it will. MercExchange, L.L.C., 500 F. Supp. 2d at 570. Mattel does not dispute that it failed to offer any evidence that it ever intends to market Bratz products.

[20]   Danjaq LLC v. Sony Corp., 263 F.3d 942, 962 (9th Cir. 2001). Mattel's cases agree. Taylor Corp v. Four Seasons Greetings, LLC, 403 F.3d 958, 969 (8th Cir. 2005) (copyright defendant "was not entitled to a jury trial on [plaintiff's] action seeking only a permanent injunction," a "purely equitable remedy"); U.S. v. An Article of Drug, 661 F.2d 742 (9th Cir. 1981).

consideration" (Hendricks v. Bank of Am., 408 F.3d 1127, 1134-35 (9th Cir. 2005)) like the statute of limitations and mistrial rulings.[21] Mattel's main argument is the Court's rulings were correct. (Opp'n at 13-16.) MGA need not persuade the Court it was wrong, just that there are substantial legal issues (Davila, 2008 WL 4426669, at *2), which Mattel confirms.

## VII. MATTEL'S PROPOSED SECURITY FOR THE STAY IS UNREASONABLE

Mattel's request that MGA post a bond equal to the damages award <u>and</u> escrow <u>all</u> <u>revenues</u> from sales and licensing of Bratz products is unprecedented and unsupported.[22] (Opp'n at 23, citing GTE Prods. Corp. v. Kennemetal, Inc., 772 F. Supp. 907, 920 (W.D. Va. 1991) (bond only).) If a bond is ordered, no escrow account is warranted, and vice versa. In re Hayes, 766 F. Supp. at 823 (escrow only); Standard Havens, 897 F.2d at 516 (same).

As to the amount of the bond or escrow, the proper sum is a reasonable royalty, <u>not</u> all Bratz <u>revenues</u>. In re Hayes, 766 F. Supp. at 823; Standard Havens, 897 F.2d at 516; Adv. Med. Optics, Inc. v. Alcon Labs., Inc., 2005 WL 3454283, at *12 (D. Del. Dec. 16, 2005); Cargill Inc. v Sears Petrol. & Transp. Corp., 2004 WL 3507329, at *13 (N.D.N.Y. Aug. 27, 2004). MGA offered a reasonable royalty analysis (Meyer Decl. (Dkt 4348) at 2-5). Alternatively, the damages award may provide a guide. E.g., Nat'l Inst., 2003 WL 24049230, at *6; Adv. Med., 2005 WL 3454283, at *12 n.8 (bond equal to one year's damages). As shown in MGA's remittitur, the non-duplicative damages are $20 million over Bratz' 7 year life. Assuming a one year stay, $2.86 million (1/7th of the award) would be a proper bond amount.[23] Even if the Court denied the remittitur entirely, 1/7th of the

---

[21] Mattel's cases are inapposite. Cal. ex rel. Dep't of Toxic Subs. Ctrl. v. Campbell, 138 F.3d 772, 775, 778 (9th Cir. 1998) (no to review independent federal claim where appeal of injunction was premised solely on state law claims); Swint v. Chambers County Comm'n, 514 U.S. 35, 51 (1995), (qualified immunity decision was appealable, but unrelated state law claims were not); Cunningham v. Gates, 229 F.3d 1271 (9th Cir. 2000) (jurisdiction as to denial summary judgment, but no jurisdiction to review decision on defendants' qualified immunity as it had no impact on the summary judgment). Here, the rulings on the mistrial, statute of limitations defense, and existence of a fiduciary duty, if reversed, would negate the injunction orders altogether.

[22] Any bond on past damages is inappropriate until a final judgment and the award is appealed. The amount of damages is not final because MGA filed a remittitur motion. (Dkt 4494/4495.)

[23] This figure comports with the evidence at trial, which showed that MGA's Bratz profits for Jan. – Jun. 2008 were $3.3 million (TX 13936-1) and over half those profits were from non-infringing activities. But Mattel certainly should not receive <u>all</u> of MGA's profits for the period. In Mattel's lone case, GTE Prods., the court ordered defendant to post a bond equal to one years'
*(cont'd)*

duplicative award would be $14.3 million, which would represent an excessive bond.

Violating L.R. 66-4, which requires a noticed OSC, Mattel also requests a receiver to "ensure that MGA deposits the proper amounts into escrow and otherwise acts to protect Mattel's intellectual property interests." (Opp'n at 23.) Mattel fails to meet the requirements for this extraordinary remedy.[24] A party seeking a receiver "must have a legal or equitable substantive right in the property he wishes to seize." Waag v. Hamm, 10 F. Supp. 2d 1191, 1193 (D. Colo. 1998). Mattel has no rights to MGA's assets beyond those addressed in the appealed orders, cannot prove there is any danger to its property interest (if a stay is entered, MGA will have the motivation and resources to protect Bratz), and offers no evidence that MGA will be unable to pay a not-yet-final damages claim of–after remittitur–only $20 million. Mattel's charge that MGA lied about its financial condition is false, as discussed above. Thus, the request for receiver should be denied. E.g., DeBoer Struct., Inc. v. Shaffer Tent & Awning Co., 187 F. Supp. 2d 910, 925 (S.D. Ohio 2001) (no receiver where entity was solvent and productive); New York v. Fin. Serv. Ntwk., 930 F. Supp. 865, 872 (W.D.N.Y. 1996) (no receiver given no evidence defendant would not pay judgment).[25]

## CONCLUSION

The MGA Parties' motion for stay pending appeal should be granted.

DATED: December 29, 2008            SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____/s/ Thomas J. Nolan_____
Thomas J. Nolan
Attorneys for the MGA Parties

---

(cont'd from previous page)
profits, reasoning that, once defendant's product was enjoined, all of the defendant's market share would be transferred to plaintiff, the only manufacturer of a comparable product. 772 F. Supp. at 920 & n.7. Here, would-be Bratz purchasers can choose from many other dolls besides Barbie.

[24] In appointing a receiver, federal courts consider: (1) fraudulent conduct by defendant; (2) imminent danger to the property; (3) lack of legal remedies; (4) whether harm to plaintiff would outweigh harm to defendant; (5) plaintiff's success and possibility of irreparable injury to plaintiff's interest; and (6) whether plaintiff's interests will be well-served by receivership. (Opp'n at 24, citing N.Y. Life Ins. Co. v. Watt W. Inv. Corp., 755 F. Supp. 287, 292 (E.D. Cal. 1991).) Mattel meets none of these factors. Mattel also cites Res. Trust Corp. v. Bayside Devs., 43 F.3d 1230, 1242 (9th Cir. 1995), which reviewed a state court decision arising under state law, which as N.Y. Life notes, is inapplicable for a federal court appointing a receiver. 755 F. Supp at 289-90.

[25] Given Mattel's stated concerns, if a receiver is appointed, its powers should be limited to (i) updating registrations, (ii) bringing infringement actions, and (iii) accounting for Bratz revenues.