QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

**[PUBLIC REDACTED] REPLY IN SUPPORT OF MATTEL, INC.'S *EX PARTE* APPLICATION FOR APPOINTMENT OF A RECEIVER OR FOR ALTERNATIVE RELIEF**

Hearing Date: January 5, 2009
Time: 10:00 a.m.
Place: Courtroom 1

**Phase 1C**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..... 1
ARGUMENT ..... 2
I. A RECEIVER IS NECESSARY TO PROTECT MATTEL'S PROPERTY ..... 2
A. Mattel's Interests Warrant The Appointment Of A Receiver ..... 2
B. The Untrustworthiness Of MGA's Statements Regarding Its Financial Condition Warrant The Appointment Of A Receiver ..... 4
C. The Benefit of Receivership Outweighs Any Purported Harm to MGA ..... 8
II. MATTEL'S APPLICATION IS NOT PROCEDURALLY IMPROPER ..... 10
III. AN "INDEPENDENT AUDIT" IS NOT A SUBSTITUTE ..... 11
CONCLUSION ..... 12

## TABLE OF AUTHORITIES

Page

### Cases


Brill & Harrington Investments v. Vernon Sav. and Loan Ass'n, 787 F. Supp. 250 (D.D.C. 1992) ..... 8

De Boer Structures (U.S.A.), Inc. v. Shaffer Tent and Awning Co., 187 F. Supp. 2d 910 (S.D. Ohio 2001) ..... 9, 10

Liberte Capital Group v. Capwill, 462 F.3d 543 (6th Cir. 2006) ..... 3, 9

Little Earth of United Tribes, Inc. v. U.S. Dept. of Hous. & Urban Dev., 584 F. Supp. 1301 (D.C. Minn. 1983) ..... 3

Meyer Jewelry Co. v. Meyer Holdings, Inc., 906 F. Supp. 428 (E.D. Mich. 1995) ..... 10

Mintzer v. Arthur L. Wright & Co., 263 F.2d 823 (3d Cir. 1959) ..... 9, 10

Motion Dynamics, Inc. v. Nu-Best Franchising, Inc., 2006 WL 1050639 (M.D. Fla. 2006) ..... 8

National Partnership Investment Corp. v. National Housing Dev. Corp., 153 F.3d 1289 (11th Cir. 1998) ..... 3, 9

New York Life Ins. Co. v. Watt West Inv. Corp., 755 F. Supp. 287 (E.D. Cal. 1991) ..... 3, 8

New York v. Fin. Serv. Network, 930 F. Supp. 865 (W.D.N.Y. 1996) ..... 3

Piambino v. Bailey, 757 F.2d 1112 (11th Cir. 1985) ..... 2, 3

Processed Plastic Co. v. Warner Communications, Inc., 675 F.2d 852 (7th Cir. 1982) ..... 9

Republic of the Philippines v. Marcos, 653 F. Supp. 494 (S.D.N.Y. 1987) ..... 3

Rumbaugh v. Beck, 491 F. Supp. 511 (E.D. Pa. 1980) ..... 10

Saluck v. Rosner, 1999 WL 46620 (E.D. Pa. 1999) ..... 10

Tanzer v. Huffines, 408 F.2d 42 (3d Cir. 1969) ..... 3, 8

Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958 (8th Cir. 2005) ........ 9

Tevis v. Beigel, 174 Cal. App. 2d 90 (Cal. Ct. App. 1959) ........ 7

United States v. Ianniello, 824 F.2d 203 (2d Cir. 1987) ........ 2

View Crest Garden Apartments v. United States, 281 F.2d 844 (9th Cir. 1960) ........ 3, 8, 9

World Fuel Serv. Corp. v. Moorehead, 229 F. Supp. 2d 584 (N.D. Tex. 2002) ........ 3, 8

**Rules**

Rule 30(B)(6) ........ 6

## Preliminary Statement

After years of litigation and months of trial, MGA's finances remain a mystery because it has succeeded in keeping both the Court and Mattel utterly in the dark about them. MGA does not dispute that it has obstructed Mattel's efforts to obtain information on its financial condition in violation of Court orders, and even now offers virtually no evidence or documentation of its financial condition. The statements it has made support a receiver. In a sworn statement to the Ninth Circuit during trial, Larian claimed [REDACTED] [REDACTED]. Months later, MGA officials swore that [REDACTED] absent a stay which it did not get. Just two days ago, MGA's counsel, misinformed by their own client, falsely denied that MGA had received an infusion of credit from a new source, Omni 808—a source on which MGA appears to depend and whose CEO and principal has a history of fraud, perjury and fabrication of documents. The terms and ultimate source of this alleged credit to MGA remain concealed through a veil of off-shore, non-operating entities. MGA suggests that Omni 808 is a reputable company, but this unsupported claim is belied by troubling court findings to the contrary about its principal.

Despite all this, MGA presumes to argue that Mattel should have to entrust its valuable property to [REDACTED] [REDACTED]. Even now, all MGA offers—[REDACTED]—is what any responsible company does as a matter of course. It would be inadequate under the circumstances here. Serious questions exist about insider transactions, fraud on creditors (including Mattel) and [REDACTED]. No [REDACTED]—especially one undertaken by MGA's longstanding accountants, who put their own credibility on the line by naming Larian "Entrepreneur of the Year"—could address or answer any of these or the many other open questions. Mattel is entitled to adequate and immediate protection in the form of a receiver. At a minimum, the Court should order MGA again to produce all of its overdue financial discovery and allow Mattel expedited discovery on MGA's finances.

## Argument

### I. A RECEIVER IS NECESSARY TO PROTECT MATTEL'S PROPERTY

#### A. Mattel's Interests Warrant The Appointment Of A Receiver

MGA asserts that Mattel's request for a receiver is " [REDACTED] " (Opp. at 13.) As a result of the Phase 1 verdicts and this Court's orders, Mattel owns the Bratz copyrights and trademarks. Mattel, not MGA, is entitled to future revenues generated by the ongoing exploitation of rights. Mattel also is owed upwards of $100 million awarded by the jury. After urgently complaining to two courts that [REDACTED], MGA cannot credibly maintain that Mattel's interests are too "limited" to warrant the appointment of a receiver.[1]

MGA argues against a receivership because the Court has not yet entered a final judgment. A final judgment is not required. The case MGA cites holds only that a party seeking a receiver must have "more than a mere claim." See Piambino v. Bailey, 757 F.2d 1112, 1132 n.46 (11th Cir. 1985) ("As a general rule, receivers may only be appointed when the party seeking receivership has some 'legally recognized right . . . that amounts to more than a mere claim against defendant.'") (quoting 12 C. Wright & A. Miller, Federal Practice and Procedure, §§ 2983). Here, both parties agree that one factor a court must consider in appointing a receiver is the "plaintiff's ***probable*** success in the action." (Opp. at 4 (emphasis added).) This factor would be meaningless if a court could appoint a receiver only after final judgment. In fact, numerous courts have appointed pre-judgment receivers, and have done so even before a verdict issued. E.g., National Partnership Investment Corp. v. National Housing Dev. Corp., 153 F.3d 1289, 1292 (11th Cir. 1998) (affirming appointment pre-judgment and pre-verdict); Tanzer v.

---

[1] In any event, the scope of Mattel's rights bears on the scope of the receivership, not whether one is warranted. See United States v. Ianniello, 824 F.2d 203, (2d Cir. 1987) (affirming district (footnote continued)

Huffines, 408 F.2d 42, 46 (3d Cir. 1969) (same); View Crest Garden Apartments v. United States, 281 F.2d 844, 849 (9th Cir. 1960) (same); New York Life Ins. Co. v. Watt West Inv. Corp., 755 F. Supp. 287, 292 (E.D. Cal. 1991).

The jury's verdicts and the Court's orders endow Mattel with much more than a "mere claim." Liability has been established. MGA has made clear its plans for—actually, its claimed life-or-death dependence on—future infringement. Mattel's interest in protecting its rights while they remain under the control of an infringing competitor—a competitor which incurs additional damages liability daily—is more than sufficient to support the appointment of a receiver. See, e.g., View Crest Garden Apartments, 281 F.2d at 849 (affirming appointment to manage and collect rents from property in which plaintiff had an interest); Republic of the Philippines v. Marcos, 653 F. Supp. 494, 496 n. 2 (S.D.N.Y. 1987) (standing to seek receiver "not an issue" where plaintiff sought constructive trust and preliminary injunction had been granted).[2] MGA's lack of transparency, its violations of Court Orders requiring financial disclosures, the dubiousness of its statements about its financial condition and its own claims of imminent insolvency all demonstrate a need for a receiver to ensure the protection of Mattel's property rights and oversee the collection and disposition of Bratz revenues.[3]

---

court's decision to appoint receiver to control business and ensure accurate tax collection, but limit receiver's firing powers and not give receiver title to property).

[2] See also Little Earth of United Tribes, Inc. v. U.S. Dept. of Hous. & Urban Dev., 584 F. Supp. 1301 (D.C. Minn. 1983) ("There can be no doubt that a court of equity has power to appoint a receiver when the appointment is ancillary to some form of final relief which is appropriate for equity to give.") (citations and quotations omitted).

[3] In Piambino v. Bailey, 757 F.2d 1112 (11th Cir. 1985), relied on by MGA, the court declined to appoint a receiver in an action for money damages, but the plaintiff in that case, unlike Mattel, had not yet won a verdict establishing liability. Id. at 1132. The case for a receiver is clearly stronger where a plaintiff, such as Mattel, has prevailed on liability and, as the Court also found, faces the sort of irreparable injury that supports injunctive relief. Moreover, a receivership properly may be imposed even where only money damages are at issue. E.g., Liberte Capital Group v. Capwill, 462 F.3d 543, 547 (6th Cir. 2006) (noting appointment of receiver to protect money paid to defendants). The other two cases MGA cites are off point. World Fuel Serv. Corp. v. Moorehead, 229 F. Supp. 2d 584, 596-597 (N.D. Tex. 2002) (court granted receivership; no statement that reduction to judgment was required); New York v. Fin. Serv. Network, 930 F. Supp. 865, 872 (W.D.N.Y. 1996) (receivership denied because requirement that defendant place bond for expected damages negated showing of harm).



### B. The Untrustworthiness Of MGA's Statements Regarding Its Financial Condition Warrants The Appointment Of A Receiver

MGA seeks to downplay the threat to Mattel's interests, claiming "[redacted]" if a stay issued. (Opp. at 13, 15.) Stay or no stay, if MGA's claims about its financial condition are true then the company is in dire straits, facing [redacted]. Larian admitted at trial that the Bratz brand was doing poorly.[4] In its first stay application to the Ninth Circuit, MGA claimed [redacted] based on the Phase 1A verdict alone.[5] MGA expanded on those claims in its *ex parte* application for a stay, again asserting financial troubles that were unrelated to the December 3 injunctive Orders.[6] MGA also introduced a letter that references [redacted][7] Even MGA's opposition here includes numerous references to [redacted] even prior to the December 3 Orders.[8] What the opposition

---

[4] Trial Tr. at 6252:18-6253:19.

[5] Pet. for Writ of Mandamus, dated August 7, 2008, at 34, attached as Exh. 7 to the Dec. of Jon D. Corey in Support of Mattel's Opp. to MGA's Ex Parte Application to Stay Pending Appeal, dated December 23, 2008 ("Corey Dec.") ("[redacted]"); Declaration of Isaac Larian, dated August 7, 2008, ¶ 3 ("[redacted]." (emphasis added)).

[6] See Dec. of Brian Wing in Support of the MGA Parties' Request for a Stay, dated December 11, 2008, at ¶ 9 (noting that "[redacted]"); id., ¶ 16 ("[redacted]...").

[7] Dec. of Brian Wing, dated December 31, 2008, Exh. B (at subparas. (a), (b), (c) and (d)).

[8] MGA states that "[redacted] (Opp. at 7.) MGA admits that [redacted] (Opp. at 10.) It also admits that following the Phase 1A verdict [redacted]
(footnote continued)

indisputably has not done—what MGA does not even attempt to do—is *demonstrate,* with financial statements or any meaningful analysis, that it is solvent now, or with a stay pending appeal would continue to be a solvent, going concern that can meet its anticipated obligations to all its creditors, including Mattel.

As the Court has said, "the finances of MGA, []at this point, quite frankly, are a mystery to the Court."[9] The mystery exists because of MGA's efforts to conceal and because its opaque, unsupported financial representations have been inconsistent. Mattel has repeatedly challenged MGA to prove up its (varying) financial representations by submitting its financial statements. When MGA moved for a stay, Mattel pointed out MGA's lack of evidence regarding its finances; MGA still offered no proof of its financial condition.[10] When Mattel moved for an injunction, it pointed to MGA's own prior statements that MGA likely would not be able to satisfy damage awards for future infringement. Rather than submit evidence of its own (then pre-December 3) financial condition, MGA's only response was to cite statements by *Mattel's* expert that predated the trial and that MGA had claimed at trial were inaccurate because of subsequent events.[11] MGA's counsel told the Ninth Circuit within the past two weeks that MGA is worth hundreds of millions of dollars, even though MGA's expert claimed at trial that MGA's value was speculative.[12] MGA has repeatedly obstructed Mattel's efforts to

---

[REDACTED] (Opp. at 9.)

[9] 12/30/08 Hearing Tr. at 57:11-18.

[10] See Mattel, Inc.'s Opposition to MGA Entertainment, Inc.'s Ex Parte Application for Stay of Injunction Pending Appeal, dated December 23, 2008, at 17-18; MGA Parties' Reply in Further Support of Their Ex Parte Application and Motion for Stay Pending Appeal, dated December 29, 2008, at 3-7.

[11] Mattel, Inc.'s Motion For a Permanent Injunction, dated September 29, 2008, at 21-22; Declaration of Paul K. Meyer, dated October 13, 2008 (Docket No. 4348), at ¶ 18.

[12] MGA attempts to reconcile these conflicting statements solely by citing to the report of its expert, Meyer, *pre-trial*. As the Court will recall, Mr. Meyer subsequently disavowed any valuation of MGA at trial and claimed that the Phase 1A verdict and other factors rendered any valuation of speculative Trial Tr. 7760:1-17 ("It would be my opinion with all those issues and uncertainties, you could not place a value on MGA at this point in time.").

obtain information on its financial condition in violation of Court orders.[13] MGA's financial condition is mysterious because MGA has made it so.

That mystery deepened with the "correction" MGA filed two days ago, admitting that its prior representations—factual assertions on which it relied to oppose a receiver—were false and that [REDACTED][14] MGA's still-undisclosed relationship with Omni 808 raises serious questions, and not only because MGA has been extended funding and misrepresented that funding to the Court.[15] In a 2006 Los Angeles Superior Court decision, MGA's new business partner, Neil Kadisha, the CEO and principal of Omni 808, was found to be "no more than a common thief" for his embezzlement of millions (including for Omninet), his fabrication of financial records and his perjury.[16] MGA's

---

[13] For example, when it suited their purposes, MGA and Larian improperly produced 2007 financial documents mid-trial—documents which the Court found were ordered produced much earlier. Trial Tr. 5958:1-3. Though compelled to produce documents regarding its financial condition in May 2007, MGA has not produced an audited balance sheet for any fiscal year since 2006. See Ex Parte App. at 4:17-20; see also Mattel, Inc.'s First Set of Requests For Documents and Things Re Claims of Unfair Competition to MGA Entertainment, Inc., dated December 18, 2006, at Request Nos. 157, 158, Zeller Dec., Exh. 5; Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents by MGA, dated August 13, 2007, at 9, Zeller Dec., Exh. 6. Before trial, MGA committed "egregious" and "flagrant" violations of the Court's orders to provide discovery, see Order Granting in Part Mattel's Motion to Enforce the Court's Order of May 16, 2007, to Compel MGA to Produce Witnesses For Deposition Pursuant To Rule 30(B)(6), And Granting Request For Sanctions, at 9:15-22, Zeller Dec., Exh. 10, and repeatedly violated and was sanctioned for its failures to produce compelled documents. See, e.g., Order Regarding Mattel, Inc.'s Motion to Enforce the Court's Order of May 15, 2007, dated December 19, 2007 (imposing sanctions), Zeller Dec., Exh. 7; Order Re Mattel, Inc.'s Motion to Enforce the Court's Order of May 15, 2007 to Compel MGA to Produce Compelled Documents in Unredacted Form and For Sanctions, dated December 19, 2007 (imposing sanctions), Zeller Dec., Exh. 8; Order Re Mattel, Inc.'s Motion To Compel Production of Documents Withheld As Privileged, dated December 19, 2008 (finding that MGA "violated the May 15 Order"), Zeller Dec., Exh. 9.

[14] MGA Parties Corrections to the Opposition to Mattel, Inc.'s Ex Parte Application for Appointment of a Receiver or for Alternative Relief, dated December 31, 2008, at 1-2.

[15] As Mattel has noted, it is a common tactic to secretly extend credit to enable a principal like Larian to infuse funds needed for operations and unlawfully seek priority over the company's legitimate creditors, like Mattel.

[16] In re Uzyel Irrevocable Trust, No. BP 058 898 (Los Angeles Sup. Ct. October 24, 2006), attached as Exhibit 1 to the Declaration of Michael T. Zeller, filed concurrently herewith, at 13:19. In that decision, the Los Angeles Superior Court found Kadisha liable for stealing millions of dollars as part of a decade-long pattern of fraudulent conduct that included perjury, fabrication of financial records, sham transactions, preparation of back-dated documents, fraudulent accountings, acts of looting, embezzlement and other misappropriations of funds, (footnote continued)

own corrections, and Mr. Kadisha's troubling history, show that MGA is plainly wrong in comparing Omni 808 to an ordinary mortgage lender. (Opp. at n.3.) MGA has never disclosed how much control Kadisha's enterprise has over MGA; at a minimum, MGA's financial situation is dependent on that of a dubious enterprise. Nor does MGA, even now, provide meaningful information about the source of the funding provided to it by Omni 808 or the shell companies behind it, which were all formed mid-trial. Mattel should not be forced to stand by unprotected while its valuable property is entrusted to a company that does not tell the truth about its finances -- or to the equally questionable companies that MGA evidently is beholden to.[17]

MGA argues that a receiver cannot be appointed because courts do not appoint receivers to manage solvent companies. MGA's own claims raise the specter of insolvency,[18] with or without a stay; MGA certainly has not shown solvency, even

---

breaches of fiduciary duty, conflicts of interest and illegal self-dealing. E.g., id., at 2:13-25, 4:13-18, 26:3-11; 31:22-24, 34:6-7, 41:23-24, 45:25-27, 48:25-28, 50-51 n. 12, 62:24-63:2, 71:7-9, 72:15-16, 102:1-20, 111:24-27, 112:10-13, 117:17-23, 118:23, 120:1-2, 121:1, 125:12-27, 126:16, 141:27-28, 152:17-22, 153:1-6, 155:13-14, 156:1-157:24, 158:23-28, 166:11-22, 168:1-5, 175:10-13, 181:13, 183:11-21.

[17] MGA's transactions with IGWT are also, at a minimum, suspect. MGA admits [REDACTED] t. Naim Dec., ¶ 2. MGA states that [REDACTED] Even if that were true, which has not been shown ([REDACTED]), Larian's self-dealing remains a violation of his fiduciary duties to MGA. See, e.g., Tevis v. Beigel, 174 Cal. App. 2d 90, 96 (Cal. Ct. App. 1959) ("Such officer will not be allowed to contract with the corporation, directly or indirectly, or to *sell property* to it, or *purchase property* from it, where they act both for the corporation and for themselves.") (quotations omitted; emphasis in original); 9 Witkin, Summary 10th (2005) Corp, § 90, p. 863 ("[Directors] cannot obtain any personal profit from their activities and must account to the corporation if they do."). MGA argues that evidence of improper payments to Larian's family members should also be disregarded because Mattel has not shown they were made after 2006. The reason for this is simple: MGA has not produced W-2 records for any period after 2006. Naim Dec., ¶ 3. MGA refers to records purporting to show 2007 payments (Opp. at 12), but those unaudited records were created by MGA specifically for this litigation; they prove nothing. See Deposition of Lisa Tonnu at 785:4-786:18; 787:13-16; 852:15-20.

[18] See Declaration of Michael J. Wagner Submitted in Support of Mattel, Inc.'s Opposition to the MGA Parties' Ex Parte Application and Motion to Stay Pending Appeal, dated December 17, 2008, at ¶ 8. Mattel challenged MGA to demonstrate its solvency, and that the December 3 orders would cause its insolvency, in its Opposition to the Motion to Stay. See Mattel, Inc.'s Opposition to the MGA Parties' Ex Parte Application and Motion to Stay Pending Appeal, dated December 23, 2008, at 18 n. 61. MGA did not even attempt to do so.

though it has unlimited access to its own financial records. Nor, in any event, is insolvency a requirement for the appointment of a receiver. "Receivership is an equitable remedy and a receiver will be appointed when the most speedy and perfect administration of justice and the rights of the parties interested in the property will be best secured by such action." View Crest Garden Apartments, Inc., 281 F.2d at 849. The appointment of a receiver is entrusted to the courts' discretion, not restricted to cases of insolvent companies.[19] Neither insolvency nor proof of actual fraud is required to support a court's discretionary decision to appoint a receiver. MGA's inconsistent statements about its financial condition, its own repeated trumpeting of its financial woes, its questionable financial dealings with questionable entities and its refusal to produce documents showing its financial condition are more than sufficient.

**C. The Benefits of Receivership Outweigh Any Purported Harm to MGA**

Defendants urge that the appointment of a receiver to manage MGA would be unduly disruptive. (Opp. at 15-17.) Mattel does not seek a receivership over all of MGA, but only one with the limited charge of managing the Bratz business or, at a minimum, its finances and operations. The receiver would have no control over any of MGA's other product lines, such as Rescue Pets or Little Tikes, future offerings or any other aspect of the company. The only "disruption" would be to MGA's business of infringement.

Mattel's need for a receiver is clear; legal remedies will be inadequate. Mattel faces harms—loss of exclusive control, loss of market share, loss of goodwill—which

[19] See, e.g., Tanzer, 408 F.2d at 43 (affirming appointment with no showing of insolvency); Motion Dynamics, Inc. v. Nu-Best Franchising, Inc., 2006 WL 1050639, *6-7 (M.D. Fla. 2006) (no showing of insolvency); World Fuel Services Corp. v. Moorehead, 229 F. Supp. 2d 584, 589 (N.D. Tex. 2002) (that defendant's "financial condition since entry of judgment has dramatically deteriorated" favored receivership); Brill & Harrington Investments v. Vernon Sav. and Loan Ass'n, 787 F. Supp. 250, 254 (D.D.C. 1992) (appointing receiver where defendants' "financial condition, if not precarious, is at least suspect" and "it is likely that they are in no financial position to give assurance that they are now and will remain fully able to reply the amounts owed"); New York Life Ins., 755 F. Supp. at 292 (showing that "the financial strength of the defendants is at least doubtful" is sufficient for appointment of receiver).

are by definition irreparable.[20] Absent a receiver Mattel will likely never receive the damages for past infringements awarded by the jury or revenues from future infringing sales.

MGA, on the other hand, offers no evidence that it will be harmed by the limited receivership Mattel seeks. MGA claims a receiver would signal financial distress to the marketplace, but MGA's own public statements have already done far more than that. The declarations MGA has obtained, including from retailers, licensees and distributors, show that MGA's financial problems are no secret in the industry. MGA also claims that a receiver would not be able to make quick and decisive decisions, but offers no proof a receiver with toy industry experience would be incompetent. Limiting the scope of the receivership to the Bratz business addresses any legitimate concern MGA may have regarding undue interference with the legitimate operations of the company. See, e.g., National Partnership Inv. Corp. v. National Housing Development Corp., 153 F.3d 1289, 1292 (11th Cir. 1998) (affirming appointment of receiver over limited aspects of business related to property at issue); View Crest Garden Apartments, Inc., 281 F.2d at 849 (same); Liberte Capital, 462 F.3d at 547 (same).

This is not a case, like those cited by MGA, where the plaintiff (often a minority shareholder) attempts to seize control of an entire corporation that is running smoothly or becoming more successful under defendant's leadership. See Mintzer v. Arthur L. Wright & Co., 263 F.2d 823, 826 (3d Cir. 1959) (no threat of insolvency); De Boer Structures (U.S.A.), Inc. v. Shaffer Tent and Awning Co., 187 F. Supp. 2d 910, 925 (S.D. Ohio 2001) ("Shaffer has been solvent and productive under Pappas' oversight"); Saluck v. Rosner, 1999 WL 46620, at *1 (E.D. Pa. 1999) (receiver not appropriate where

[20] See, e.g., December 3, 2008 Order at 11-13; Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 967-68 (8th Cir. 2005) ("Taylor certainly has the right to control the use of its copyrighted materials, and irreparable harm inescapably flows from the denial of that right.") (internal citations omitted); Processed Plastic Co. v. Warner Communications, Inc., 675 F.2d 852, 858 (7th Cir. 1982) ("The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's (footnote continued)

plaintiff did not show that defendants were taking actions that could lead to dissolution of the corporation); Meyer Jewelry Co. v. Meyer Holdings, Inc., 906 F. Supp. 428, 434 (E.D. Mich. 1995) ("The facts indicate that Meyer Jewelry is a viable business and that it has been reducing its overall losses in the past years"); Rumbaugh v. Beck, 491 F. Supp. 511, 520-521 (E.D. Pa. 1980) ("The defendant Beck has continued the operation of the company in an apparently successful manner.").[21] Courts found that a receiver would provide no benefits in those cases, making the costs unnecessary.[22] Mattel seeks a limited receivership over only the infringing aspects of MGA's business (Bratz) in the face of clear evidence of serious financial difficulties and possible fraud.[23] It is well within the Court's discretion to grant such relief. The Court should do so.

## II. MATTEL'S APPLICATION IS NOT PROCEDURALLY IMPROPER

MGA argues that Mattel's motion is "procedurally improper" because it seeks a permanent receiver when the Local Rules only permit a temporary one. The rules do not preclude a permanent receiver; they merely require notice to parties and creditors of the Court's intent to appoint a permanent receiver (and such notice is still subject to revision by the Court). See L.R. 66-4, 66-4.1. MGA has not proven a single creditor who has an interest in the Bratz brand -- which is all the receivership would cover -- and thus could be entitled to notice under the Local Rules.[24] The Court's Order setting a hearing for this motion for January 5, 2009 has given notice to the parties. Nothing more is required. In fact, MGA's claim that only a temporary receiver can be appointed is specifically

---

goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another.").

[21] Three of these cases also rely on Pennsylvania law, which applies a stricter standard. Mintzer, 263 F.2d at 825; Saluck, 1999 WL 46620, at *2 n.1; Rumbaugh, 491 F. Supp. at 520.

[22] The receiver in De Boer was also rejected because the court issued an effective injunction limiting the transactions the business could make. De Boer, 187 F. Supp. 2d at 926.

[23] To the extent that MGA attempts to suggest that [redacted] (attached as Exhibit B to the Wing Dec.) is proof that Omni 808 -- MGA's purported creditor -- will seek to accelerate debt or take other adverse action against MGA if a receiver is appointed, the Court should reject that suggestion out-of-hand based on Mr. Kadisha's wholesale lack of credibility and Court-determined perjury.

[24] Cf. UCC Financing Statements (showing Wachovia and Omni owning interests in MGA subsidiaries and inventory, but not intellectual property rights in Bratz), Corey Dec., Exh. 19.

rejected by the Rules. L.R. 66-5 (requiring defendant to file schedule of creditors if a permanent receiver is appointed where no temporary receiver has been appointed).[25]

## III. AN "INDEPENDENT AUDIT" IS NOT A SUBSTITUTE

Forced to admit that even its own lawyers do not know the truth about the company's finances, MGA now argues in its "correction" that instead of appointing a receiver the Court should order an independent auditor to report on MGA's financial status. If more information as to MGA's finances is required, it should be obtained through appropriate discovery, not an inadequate, belated audit that reputable businesses perform as a matter of course.

First, the nature and scope of the "audit" MGA proposes is nowhere specified. Second, questions of solvency can require interpretations of data, and an auditor could not answer any of the other questions that are on the table concerning MGA's finances. These include questions about its present cash flow and ability to raise further capital, and past insider transactions and transactions to defraud creditors. Such questions would not be addressed by any "audit," at least in the conventional sense of that term. Absent Court supervision, and cross-examination and follow-up, an audit would likely entail a black-box investigation influenced and managed by Larian and MGA—especially if it is conducted by MGA's current auditor, Ernst & Young, as MGA proposes.[26]

---

[25] Even if MGA were to identify creditors with an interest in Bratz, which it has not done, their existence would not limit the relief Mattel may seek. The Rules make clear that an OSC may be issued simultaneously with the appointment of a temporary receiver. See L.R. 66-3. Under MGA's approach, no court could ever issue both simultaneously, but would instead be required to appoint a temporary receiver and wait for a subsequent motion to seek a permanent receiver.

[26] In November of 2007, E&Y named Isaac Larian "Ernst & Young Entrepreneur Of The Year," purporting to declare him as among "leaders and visionaries who demonstrate innovation, financial success and personal commitment as they create and build world-class businesses." See Zeller Dec., Exh. 2. E&Y has personally credited Mr. Larian's management style as the source of the company's success. Id. ("Brainstorming is a big part of the company's culture and Larian maintains an open-door policy. He credits MGA's 500 employees and product designers as the source for many of the company's bestselling ideas"). E&Y takes credit for the selection process of this award as a means to promote its position as a "global leader in . . . advisory services" (id.) and widely publicizes the award and its role in selecting the winner. Id.; see also Zeller Dec., Exhs. 3 and 4. Having championed Larian to the public, and publicly and repeatedly aligned its own evaluative skills with Larian's character and (footnote continued)

MGA and Larian should be ordered to disclose the basic information concerning MGA's finances, including financial statements, current orders for MGA products, documents related to current financing and debt, and information about transactions between MGA and Larian or his family, or entities controlled by them. There should be no hardship in providing these documents: MGA was ordered to produce many of them already, but never did.[27] MGA and Larian prepare financial statements in the ordinary course; those documents already exist. Such discovery has the added benefit of allowing Mattel's own experts and forensic accountants (whose role is far different from that of an auditor) to review the information and ask questions that an auditor might never consider. Mattel will provide the Court with a list of the limited categories of discovery it seeks at the hearing on this application.[28]

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court appoint a receiver. If further factual development is required, the Court should grant Mattel expedited discovery into MGA's and Larian's finances.

DATED: January 2, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Michael T. Zeller
Michael T. Zeller
Attorneys for Mattel, Inc.

---

management skills, it would be challenging for E&Y to provide the candid, frank assessments of the company's current financial condition and management that would be required.

27 See, e.g., Trial Tr. at 5957:22-5958:20.

28 MGA also offers to limit distributions to Larian in the interim. That is a meaningless offer that shows how illusory MGA's belated concessions are. The terms of MGA's deals with Wachovia (which is still a creditor as well) already bar Larian from receiving most distributions. See Credit Agreement, dated October 27, 2006, at [redacted], Naim Dec., Ex. 1. Furthermore, given MGA's current financial state, it is evident that such a restriction has done little or nothing to improve it and therefore offers Mattel no serious protection.