QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>            Plaintiff,<br><br>       vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>            Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DECLARATION OF MICHAEL T. ZELLER IN SUPPORT OF MATTEL, INC.'S *EX PARTE* APPLICATION FOR APPOINTMENT OF A RECEIVER FOR MGA OR FOR ALTERNATIVE RELIEF**<br><br>Hearing Date:   January 5, 2009<br>Time:                10:00 a.m.<br>Place:               Courtroom 1<br><br>**Phase 1C** |

## DECLARATION OF MICHAEL T. ZELLER

I, Michael T. Zeller, declare as follows:

1. I am a member of the bars of the States of California, New York and Illinois and a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for plaintiff and counter-defendant, Mattel, Inc. ("Mattel"). I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2. Attached as Exhibit 1 is a true and correct copy of the Statement of Decision of the Los Angeles Superior Court in In re Uzyel Irrevocable Trust, dated October 24, 2006, No. BP 058 898. In this action, Neil Kadisha was found liable for taking millions of dollars as part of a 12-year-long pattern of fraudulent conduct that included perjury, fabrication of financial records, sham transactions, preparation of back-dated documents, fraudulent accountings, acts of looting, embezzlement and other misappropriations of funds, breaches of fiduciary duty, conflicts of interest and illegal self-dealing. Thus, for example, the Los Angeles Superior Court found:

- "Kadisha was heavily involved in two corporations (Omninet Corporation and Qualcomm) that were in dire need of millions of dollars to stave off impending bankruptcies. He took and used trust assets for his own financial interests (much of which was tied to the two failing corporations)..." In re Uzyel Irrevocable Trust, October 24, 2006, at 2:13-16.
- "Kadisha prepared accountings to cover up, mislead and deceive..." Id. at 2:22-23.
- "Kadisha believed it to be prudent strategy to commit perjury..." Id. at 4:17-18.
- "Kadisha was no more than a common thief in his monumental takings of ... money for his own use and benefit." Id. at 13:19-20.

- "Kadisha's first act as Trustee was to misappropriate $500,000..." Id. at 14:13-14.
- "At this time, Kadisha had stripped Trust 2 of virtually all of its cash..." Id. at 38:27-28.
- "In discovery, under penalty of perjury, Kadisha gave six different and untrue accounts of what he did with the Namco Loan proceeds." Id. at 41:23-24.
- "The creation of the Rahban 'loans' was simply part of Kadisha's pattern of creating phony transactions..." Id. at 50-51 n.12.
- "Kadisha created a phony, backdated sale to conceal..." Id. at 62:24-25.
- "Kadisha's Trust Accountings Were Fraudulent, Misleading, and Inaccurate and Concealed his Wrongdoings." Id. at 71:7-8.
- Kadisha "misappropriat[ed]" loan proceeds, trust property and trust funds.  Id. at 102:1-20.
- "The court finds beyond any doubt that the acquisition of the subject 30,000 shares of Qualcomm was enable by Kadisha embezzlement of practically all the subject Namco loan proceeds." Id. at 111:24-27.
- "[T]he trust agreements are the product of fraud by the respondent [Kadisha]." Id. at 112:12-23.
- "The loan was a conflicted transaction that breached [Kadisha's] fiduciary duties..." Id. at 117:19.
- "[P]ractically everything Kadisha did in so-called management of the Trusts was done by embezzlement of trust money for his own interests and without regard to any of his obligations as trustee..." Id. at 118:22-24.
- "Kadisha, being guilty of perjury among other misdeeds..." Id. at 120:1-2.

- "Kadisha was self-dealing" and "concocted a phony loan of $1,400,000..." Id. at 121:14-18.
- "Kadisha's misappropriation of millions of dollars of trust money from 1988 to 1996 were not loans made at an adequate interest rate or with adequate security, as Kadisha contends.  Kadisha embezzled the funds in flagrant violation of his fiduciary duties." Id. at 126:16-18.
- Kadisha "intentionally retailiat[ed]" against petitioners "for suing him." Id. at 141:27-28.
- "In considering Kadisha's conduct, the total pattern of Kadisha's conduct comes into play.  His malice, fraud, recidivism, and reprehensibility may be singular.  The evidence of his overall conduct over the 12 years of his trusteeship establishes by clear and convincing evidence that none of his acts were innocent or an accident..." Id. at 152:17-20.
- "Kadisha misappropriated substantially all of the Trust's assets for his own use to bolster his shaky finances and the shaky finances of businesses in which he was heavily invested, including Omninet and Qualcomm." Id. at 153:2-6.
- "Kadisha did not engage in an isolated act of misconduct -- he repeatedly, systematically and intentionally engaged in conduct that he knew was prohibited to him as a trustee." Id. at 155:13-14.
- "He [Kadisha] intentionally and consistently violated his fiduciary duties.  He looted the Trusts. ...  He concealed his wrongdoings with fraudulent accountings, backdated promissory notes and phony transactions." Id. at 156:1-5.
- "[A]s another example of his fraud, Kadisha stole money from the Trusts under the guise of making loans to David Rahban, whom the Court has found to be a non-existent person in the claimed loan transaction." Id. at 156:8-11.

- "Kadisha's malice and/or fraud also includes ... his intentional self-dealing with trust assets, ... his backdating of promissory notes and creating backdated, phony transactions; his misappropriations of over $10 million of the Trusts' cash without adequate security or even the most minimal documentation". Id. at 156:16-157:1.
- "Kadisha set the course of his entire trusteeship on the impermissible taking of Trust assets, false accountings, back-dating of notes and the many other intentional breaches of trust hereinbefore set forth." Id. at 157:14-17.
- "While it may be repetitive, Kadisha didn't borrow Trust funds -- he embezzled them, millions of dollars of them. ... He backdated notes in an effort to cover up his wrongful takings. He intentionally and carelessly caused accountings to be prepared that were deliberately designed to deceive and did deceive". Id. at 158:23-28.
- "He [Kadisha] backdated promissory notes prepared after he repaid the misappropriations and knew that he had to conceal the fact that they were backdated, as demonstrated by his untruthful testimony at his deposition about the preparation and execution of the notes." Id. at 166:18-20.
- "He [Kadisha] intentionally designed his accountings to conceal his misappropriations." Id. at 166:22.
- "But one of the most important things that Kadisha knew, which relates to his opposition to each of Petitioners' claims as well as his affirmative defenses, is that he would have to give false testimony and suborn perjury to prevent his wrongdoings from being discovered by the Court." Id. at 168:1-5.
- "Kadisha perjured and suborned perjury at trial." Id. at 169:22.

3. Attached as Exhibit 2 is a true and correct copy of a press release found on the Ernst & Young website at http://www.ey.com/global/Content.nsf/US/Media_-_Release_-_11-17-07GDC.

4. Attached as Exhibit 3 is a true and correct copy of a press release found on the Ernst & Young website at http://www.ey.com/global/Content.nsf/US/EGCS_-_EOY_-_Regional_Programs_-_SEA_-_Overview.

5. Attached as Exhibit 4 is a true and correct copy of a press release found on the Ernst & Young website at http://www.ey.com/global/Content.nsf/US/SGM_-_Strategic_Growth_Forum_-_EOY.

6. Attached as Exhibit 5 is a true and correct copy of excerpts of Mattel, Inc.'s First Set of Requests For Documents and Things Re Claims of Unfair Competition to MGA Entertainment, Inc., dated December 18, 2006.

7. Attached as Exhibit 6 is a true and correct copy of the Discovery Master's Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents by MGA, dated August 13, 2007.

8. Attached as Exhibit 7 is a true and correct copy of the Discovery Master's Order Regarding Mattel, Inc.'s Motion to Enforce the Court's Order of May 15, 2007, dated December 19, 2007.

9. Attached as Exhibit 8 is a true and correct copy of the Discovery Master's Order Re Mattel, Inc.'s Motion to Enforce the Court's Order of May 15, 2007 to Compel MGA to Produce Compelled Documents in Unredacted Form and For Sanctions, dated December 19, 2007.

10. Attached as Exhibit 9 is a true and correct copy of the Discovery Master's Order Re Mattel, Inc.'s Motion To Compel Production of Documents Withheld As Privileged, dated December 19, 2008.

11. Attached as Exhibit 10 is a true and correct copy of the Discovery Master's Order Granting in Part Mattel's Motion to Enforce the Court's

1  Order of May 16, 2007, to Compel MGA to Produce Witnesses For Deposition
2  Pursuant To Rule 30(B)(6), And Granting Request For Sanctions.
3
4        I declare under penalty of perjury under the laws of the United States of
5  America that the foregoing is true and correct, and this declaration was executed this
6  2nd day of January, 2008, at Los Angeles, California.
7
8                                      /s/ Michael T. Zeller
                                    Michael T. Zeller