QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>              Plaintiff,<br><br>        vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>              Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**[PUBLIC REDACTED] SUPPLEMENTAL DECLARATION OF MICHAEL T. ZELLER IN SUPPORT OF MATTEL, INC.'S *EX PARTE* APPLICATION FOR APPOINTMENT OF A RECEIVER FOR MGA OR FOR ALTERNATIVE RELIEF AND IN OPPOSITION TO MGA's *EX PARTE* APPLICATION FOR A STAY PENDING APPEAL** |

**DECLARATION OF MICHAEL T. ZELLER**

I, Michael T. Zeller, declare as follows:

1. I am a member of the bars of the States of California, New York and Illinois and a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for plaintiff Mattel, Inc. ("Mattel"). I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2. I submit this declaration in light of new evidence obtained by Mattel since Monday's hearing regarding MGA's apparent financial condition and questionable MGA practices that relate to issues pending before the Court. The new evidence, as well as other evidence that places the new evidence in context, provides further support for Mattel's position that substantial conditions, including without limitation the escrowing of revenues, the posting of a bond and/or the appointment of a receiver, should be imposed on any further stay of any injunctive orders (or any modification of any further stay) in order to protect Mattel's interests, including its interest in Bratz revenues generated since the Phase 1 trial and thereafter. The new evidence, as well as other evidence that places the new evidence in context, further demonstrates why the royalty condition proposed by MGA would be inadequate and confirms the need for, at a minimum, a forensic accountant authorized to investigate MGA's finances and business arrangements to assess the true state of MGA's finances.

3. Attached as Exhibit 1 is a true and correct copy of the Summons and Complaint in <u>Marvel Entertainment, Inc. f/k/a Marvel Enterprises, Inc., and Marvel Characters, Inc. v. MGA Entertainment, Inc.</u>, dated January 2, 2009, No. 09600003 ("Marvel Complaint"), which Mattel first learned of on January 6, 2009. In the attached Complaint, Marvel states that MGA breached its license agreements with Marvel for certain merchandising rights in the Marvel characters and owes

Marvel at least $1,504,796 under the terms of the agreements. Specifically, Marvel alleges that:

- An audit of MGA revealed that "MGA sold additional articles including 'Marvel Insane Darts' and 'Spider-Man Web Crawl' that were not licensed to MGA." See Marvel Complaint at ¶¶ 11-12, 18.

- The audit revealed that "MGA sold a 'Ghost Rider Walkie Talkie Combo' product even though MGA was not licensed to exploit the Ghost Rider character in connection with a 'Walkie Talkie' product." Id. at ¶ 23.

- The audit revealed that "MGA failed to report to Marvel all sales of Marvel licensed product as required by the License Agreements between Marvel and MGA." Id. at ¶ 27.

- Pursuant to the License Agreements, "Marvel allowed MGA to deduct certain standard trade discounts actually given by MGA and actual returns for damaged goods in determining MGA's net sales under the license agreements. As found in the Audit Report, however, MGA claimed certain deductions for discounts and returns but was unable to provide support for those discounts and returns." Id. at ¶¶ 30-31.

- "MGA has not paid any of the sums identified in the Marvel Audit Report as due and owing to Marvel." Id. at ¶¶ 12-13.

4. Attached as Exhibit 2 is a true and correct copy of the Summons and Complaint in Spider-Man Merchandising, L.P. v. MGA Entertainment, Inc., dated January 2, 2009, No. 09600002 ("Spider-Man Complaint"), which Mattel first learned of on January 6, 2009. In the attached Complaint, Spider-Man Merchandising (a joint venture between Sony Pictures Entertainment, Inc. and Marvel Characters, Inc.) alleges that MGA breached its license agreements for merchandising rights in the Spider-Man character and owes Spider-Man

Merchandising $3,331,398 under the terms of the agreements. Among other things, the Complaint states that:

- "MGA made unlicensed sales of at least 17,617 units of the Spider-Man 3 Dart Slinger Game." See Spider-Man Complaint at ¶ 17.
- "MGA sold merchandise prior to March 4, 2007," the earliest date on which the licensed merchandise was to be made available in stores pursuant to the parties' license agreements. Id. at ¶¶ 21-22, 24.
- "MGA failed to report sales of Licensed Articles in a net sales amount of at least $681,017." Id. at ¶ 30.

5. According to the complaints, MGA is liable to these plaintiffs in an amount approaching at least $5 million for its failures to pay and its violations of the licensing agreements, including by MGA's sales of unauthorized product, its manufacture of products in excess of allowed units, its sales of product during time periods prohibited by the licensing agreements and its failures to properly account for sales under the licenses. According to the complaints, and also pertinent to MGA's financial condition on a going forward basis, Marvel states that it has terminated its licensing agreement with MGA (see Exh. 1 at ¶ 15), and the last licensing agreement between MGA and Spider-Man Merchandising, L.P. expired on December 31, 2008 (see Exh. 2 at ¶ 7). Despite lacking apparent rights to sell such products, MGA still lists Marvel and Spider-Man products on MGA's web page. Attached as Exhibit 3 are true and correct copies of pages found on MGA Entertainment, Inc.'s website at http://www.mgae.com as of January 6, 2009.

6. Evidence of other licensing misconduct by MGA has been adduced in this case as well. For example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ See Koch Depo. at 255:25-259:14. Mr. Koch further testified ▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████

██████████ Id. at 259:15-260:16.  Attached as Exhibit 4 is a true and correct copy of relevant excerpts of the Deposition of Andreas Koch, dated March 28, 2008.

7. MGA unlawful conduct in its licensing arrangements has been proven in other cases as well.  For example, attached as Exhibit 5 is a true and correct copy of the Arbitration Award in <u>Fun 4 All Corporation and Scott Bachrach v. ABC International Traders, Inc.</u>, dated June 30, 2002 ("Award").  In <u>Fun 4 All</u>, the arbitrator, Hon. Layne Philips, ruled that MGA had breached its license agreement with Fun 4 All by "revoking its approval of Fun 4 All's right to manufacture" Bratz plush doll products and that "MGA breached . . . the covenant of good faith and fair dealing . . . by interfering with or frustrating Fun 4 All's reasonable expectations as a licensee under the License Agreement."  <u>See</u> Award at 12:24-27, 13:12-27.  The arbitrator based his decision, in part, on his finding that the testimony of MGA's executives was not credible:

> "The post-February 10 evidence of MGA's pretextual, contrived, or dishonest dissatisfaction with F4A's work derives from a number of sources, including but not limited to . . . Ms. Treantafellas' testimony concerning F4A's 'shippable and sellable product' which stood in stark contrast to that of Ms. O'Connor and MGA's expert.  Moreover, it was not lost on the arbitrator that prior to February 27, Mr. Larian . . . had a number of favorable impressions and/or comments regarding F4A's product quality, in stark contrast to their virtually one-sided post litigation views.  All of this conduct, of course, must be placed against the backdrop that MGA was interested in

developing its own line of 'Bratz' plush dolls at the same time it was 'working with' F4A." Id. at 5:23-6:9.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 6th day of January, 2009, at Los Angeles, California.

_____
Michael T. Zeller