QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | MATTEL, INC.'S OPPOSITION TO THE MGA PARTIES' RENEWED MOTION FOR PARTIAL JUDGMENT AS A MATTER OF LAW FOR PHASES 1A AND 1B |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | Date: February 11, 2009<br>Time: 10:00 A.M.<br>Place: Courtroom 1 |
| | **Phase 1(c)** |

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................ 1

I. MATTEL'S STATE LAW CLAIMS ARE NOT PREEMPTED ..................... 1

    A. Mattel's Aiding And Abetting Breaches Of Fiduciary Duty And Duty Of Loyalty Claims Are Not Preempted ........................................... 1

    B. Mattel's Recovery of MGA's Profits Is Not Preempted .......................... 4

    C. Mattel's State Law Claims are Not Preempted by CUTSA ..................... 7

        1. MGA Waived Any Argument Regarding CUTSA Preemption .................................................................................. 7

        2. Mattel's Claims Are Not Based On An "Identical Nucleus" Of Facts As A CUTSA Claim ...................................... 8

II. MATTEL HAS PROVED DAMAGES FOR ITS STATE LAW CLAIMS .................................................................................................... 11

    A. The Jury and the Court Have Already Found Harm or Damage .......... 11

    B. Damages Are Not Limited To Bryant's Profits ..................................... 12

    C. A Reasonable Jury Could Find Damages for Conversion .................... 13

III. MGA AND LARIAN HAD KNOWLEDGE OF BRYANT'S FIDUCIARY DUTY AND BREACH THEREOF ......................................... 13

IV. A REASONABLE JURY COULD FIND MGA HK LIABLE ...................... 16

V. MATTEL'S INTEREST IN THE "BRATZ" NAME IS ENTITLED TO PROTECTION .......................................................................................... 17

    A. MGA's Newly Raised Arguments Are Waived ..................................... 17

    B. Mattel Has A Protectable Interest In The "Bratz" Name ...................... 18

    C. The "Bratz" Name Was One Of The Benefits MGA Obtained From Its Wrongful Conduct ................................................................. 19

VI. INFRINGEMENT WAS NOT LIMITED TO THE FIRST WAVE DOLLS ........................................................................................................ 21

VII. BRYANT IS THE AUTHOR OF TX 1136A AS A MATTER OF LAW ............................................................................................................ 21

    A. MGA Waived Its Authorship Argument ................................................ 21

1

B.    The Jury Properly Found That Bryant Was The Author Of TX
      1136 ...................................................................................................22

C.    Leahy Was Not A Joint Author Of TX 1136A ....................................24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## Cases

Aalmuhammed v. Lee,
202 F.3d 1227 (9th Cir. 1999) .................................................................. 24

Accuimage Diagnostics Corp. v. Terarecon, Inc.,
260 F. Supp. 2d 941 (N.D. Cal. 2003) ...................................................... 10

Ali v. Fasteners for Retail, Inc.,
544 F. Supp. 2d 1064 (E.D. Cal. 2008) ............................................... 8, 10

Altera Corp. v. Clear Logic, Inc.,
424 F.3d 1079 (9th Cir. 2005) ...................................................... 3, 4, 5, 6

Anderson v. Stallone,
1989 WL 206431 (C.D. Cal. 1989) ........................................................... 25

Anderson v. Thacher,
76 Cal. App. 2d 50 (1946) ......................................................................... 12

Balboa Ins. Co. v. Trans Global Equities,
218 Cal. App. 3d 1327 (1990) ..................................................................... 4

Bourns, Inc. v. Raychem Corp.,
331 F.3d 704 (9th Cir. 2003) ....................................................................... 9

Brackett v. Hilton Hotels Corp.,
2008 WL 2632675 (N.D. Cal. 2008) ........................................................... 4

Briarpatch Ltd. v. Phoenix Pictures, Inc.,
373 F.3d 296 (2d Cir. 2004) .................................................................... 2, 5

Brown v. Tr. of Boston Univ.,
891 F.2d 337 (1st Cir. 1989) ........................................................................ 8

Bucklew v. Hawkins, Ash, Baptie & Co., LLP,
329 F.3d 923 (7th Cir. 2003) ....................................................................... 5

Burlesci v. Petersen,
68 Cal. App. 4th 1062 (1998) .................................................................... 20

Butler v. Continental Airlines, Inc.,
2001 WL 1509545 (S.D. Tex. 2001) ........................................................... 5

Chandler v. Roach,
156 Cal. App. 2d 435 (1957) ..................................................................... 19

Convolve, Inc. v. Compaq Comp. Corp.,
2006 WL 839022 (S.D.N.Y. 2006) ........................................................... 10

County of San Bernardino v. Walsh,
158 Cal. App. 4th 533 (2007) .............................................................. 12, 19

Case No. CV 04-9049 SGL (RNBx)
MATTEL, INC.'S OPPOSITION TO THE MGA PARTIES' RENEWED JMOL MOTION

DIRECTV, Inc. v. Barrett,
  311 F. Supp. 2d 1143 (D. Kan. 2004)........................................................................7

Daboub v. Gibbons,
  42 F.3d 285 (5th Cir. 1995) ........................................................................................2

Dealertrack, Inc. v. Huber,
  460 F. Supp. 2d 1177 (C.D. Cal. 2006)....................................................................8

Del Madera Props. v. Rhodes & Gardner, Inc.,
  820 F.2d 973 (9th Cir. 1987) ..............................................................................3, 4

Desny v. Wilder,
  46 Cal. 2d 715 (1956) ...........................................................................................5, 19

Digital Envoy Inc., v. Google, Inc.,
  370 F. Supp. 2d 1025 (N.D. Cal. 2005)..................................................................10

Dorsey v. Money Mack Music, Inc.,
  304 F. Supp. 2d 858 (E.D. La. 2003).......................................................................5

Downing v. Abercrombie & Fitch,
  265 F.3d 994 (9th Cir. 2001) ....................................................................................4

Dyna Med., Inc. v. Fair Employment & Housing Comm'n,
  43 Cal. 3d 1379 (1987)............................................................................................18

Easton Sports v. Warrior Lacrosse, Inc.,
  2005 WL 2234559 (E.D. Mich. 2005).....................................................................10

Enreach v. Embedded Internet Solutions, Inc.,
  403 F. Supp. 2d 968 (N.D. Cal. 2005).....................................................................10

Entm't Research Group, Inc. v. Genesis Creative Group, Inc.,
  122 F.3d 1211 (9th Cir. 1997) ..................................................................................23

Ernest Paper Prods., Inc. v. Mobil Chem. Co., Inc.,
  1997 WL 33483520 (C.D. Cal. 1997) ..................................................................9, 10

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.,
  499 U.S. 340 (1991)..................................................................................................24

In re First Alliance Mortgage Co.,
  471 F.3d 977 (9th Cir. 2006).....................................................................................16

Fisher v. Klein,
  16 U.S.P.Q. 2d 1795 (S.D.N.Y. 1990) .....................................................................22

GHK Assocs. v. Mayer Group, Inc.,
  224 Cal. App. 3d 856 (1990)....................................................................................20

Gilchrist v. Jim Slemons Imports, Inc.,
  803 F.2d 1488 (9th Cir. 1986)....................................................................................7

Goldberg v. Cameron,
  482 F. Supp. 2d 1136 (N.D. Cal. 2007).....................................................................5

Goldstein v. Calif.,
412 U.S. 546 (1973)......................................................................................22

Gonzales v. Lloyds TSB Bank, PLC,
532 F. Supp. 2d 1200 (C.D. Cal. 2006).........................................................16

Grosso v. Miramax Film Corp.,
383 F.3d 965 (9th Cir. 2004)..................................................................3, 5, 6

Groubert v. Spyglass Entm't,
2002 WL 2031271 (C.D. Cal. 2002) ...............................................................2

Guidiville Band of Pomo Indians v. NGV Gaming,
531 F.3d 767 (9th Cir. 2008)...........................................................................9

Harrell v. City and County of Honolulu,
283 Fed. Appx. 509 (9th Cir. 2008) .........................................................7, 21

Heckmann v. Ahmanson,
168 Cal. App. 3d 119 (1985)..........................................................................20

Henry v. Nat'l Geographic Soc'y,
147 F. Supp. 2d 16 (D. Mass. 2001)................................................................5

Jan Marini Skin Research, Inc. v. Allure Cosmetic USA, Inc.,
2007 WL 1508686 (Cal. App. 2007)...............................................................9

Johns v. Autonation USA Corp.,
246 F.R.D. 608 (D. Ariz. 2006)......................................................................7

Johnson v. Arista Holding, Inc.,
2006 WL 3511894 (S.D.N.Y. 2006) ...............................................................5

L. Batlin & Son, Inc. v. Snyder,
536 F.2d 486 (2d Cir. 1976) ..........................................................................23

Lueter v. Cal.,
94 Cal. App. 4th 1285 (2002)........................................................................13

MAI Sys. Corp. v. Peak Computer, Inc.,
1992 WL 159803 (C.D. Cal. 1992)..................................................................9

Martone v. Burgess,
2008 WL 3916022 (N.D. Cal. 2008)................................................................9

Metrano v. Fox Broad. Co.,
2000 WL 979664 (C.D. Cal. 2000) .................................................................2

Neilson v. Union Bank of Calif., N.A.,
290 F. Supp. 2d 1101 (C.D. Cal. 2003)...................................................10, 14

Oddo v. Ries,
743 F.2d 630 (9th Cir. 1984)........................................................................2, 6

People v. Bestline Prods., Inc.,
61 Cal. App. 3d 879 (1976) ...........................................................................12

Perfect 10, Inc. v. Google, Inc.,
2008 WL 4217837 (C.D. Cal. 2008) ........................................................................ 8

Pickett v. Prince,
207 F.3d 402 (7th Cir. 2000) .................................................................................. 25

Postx Corp. Secure Data In Motion, Inc.,
2004 WL 2663518 (N.D. Cal. 2004) ..................................................................... 8, 9

Rand-Whitney Containerboard Ltd. P'ship v. Town of Montville,
2004 WL 2472277 (D. Conn. 2004) .......................................................................... 7

Resolution Trust Corp. v. Rowe,
1993 WL 183512 (N.D. Cal. 1993) ......................................................................... 14

Rosenthal v. Gould,
273 Cal. App. 2d 239 (1969) .................................................................................. 12

Scarff v. Wells Fargo Bank, N.A.,
2005 WL 3454136 (N.D. Cal. 2005) ....................................................................... 16

Sebastian Int'l Inc. v. Russolillo,
162 F. Supp. 2d 1198 (C.D. Cal. 2001) .................................................................. 14

Sharp Structural, Inc. v. Franklin Mfg., Inc.,
283 Fed. Appx. 585 (9th Cir. 2008) ................................................................. 17, 21

Silicon Image, Inc. v. Analogix Semiconductor, Inc.,
2007 WL 1455903 (N.D. Cal. 2007) ................................................................ 8, 9, 14

Standard Oil Co. of Cal. v. Moore,
251 F.2d 188 (9th Cir. 1958) .................................................................................. 13

Stewart Title of California, Inc. v. Fidelity Nat. Title Co.,
279 Fed. Appx. 473 (9th Cir. 2008) .......................................................................... 4

TVT Records v. Island Def Jam Music Group,
279 F. Supp. 2d 366 (S.D.N.Y. 2003) ...................................................................... 7

Travelers Cas. and Sur. Co. of Am. v. Ernst & Young LLP,
542 F.3d 475 (5th Cir. 2008) .................................................................................. 13

United States v. First Nat'l Bank of Circle,
652 F.2d 882 (9th Cir. 1981) ............................................................................. 7, 21

Universal Pictures Co. v. Harold Lloyd, Corp.,
162 F.2d 354 (9th Cir. 1947) .................................................................................. 13

Village of DuePue III v. Exxon Mobil Corp.,
537 F.3d 775 (7th Cir. 2008) .................................................................................... 8

Warren v. Merrill,
143 Cal. App. 4th 96 (2006) ................................................................................... 20

Wolf v. Reliance Standard Life Ins. Co., ,
71 F.3d 444 (1st Cir. 1995) .................................................................................. 6, 8

_Worth v. Universal Pictures, Inc.,_
    5 Supp. 2d 816 (C.D. Cal. 1997) ........................................................ 4, 5, 6

_Wyatt v. Union Mortgage Co.,_
    24 Cal. 3d 773 (1979) ........................................................................... 14

_Zhang v. Am. Gem Seafoods, Inc.,_
    339 F.3d 1020 (9th Cir. 2003) ........................................................ 17, 21

## Statutes

17 U.S.C. § 101 ..................................................................................... 24

17 U.S.C. § 106(2) ................................................................................ 25

17 U.S.C. § 504(b) .................................................................................. 6

Cal. Civ. Code § 3426.1(d) ..................................................................... 9

Cal. Civ. Code § 3426.7(b) ................................................................... 8, 9

Cal. Lab. Code § 2863 ............................................................................. 2

Fed. R. Civ. P. 16 .................................................................................. 21

## Miscellaneous

Nimmer on Copyright § 1 (2008) ....................................................... 4, 22

Patry on Copyright, § 18 (2007) ......................................................... 2, 6

Restatement of Restitution, § 201 (2008) .......................................... 12, 19

D. Dobbs, LAW OF REMEDIES § 4.3(2) (2d ed. 1993) ............................... 20

### Introduction

MGA's renewed JMOL motion raises three arguments that were not preserved and therefore cannot be considered now: CUTSA preemption; application of the Inventions Agreement to the "Bratz" name; and authorship of the sculpt. Even if not waived, each of these claims fails on its merits. MGA's remaining claims have previously been rejected by the Court, and MGA offers no basis for reconsideration. Mattel's state law claims are not preempted by copyright: each contains the required "extra element," and Mattel's pursuit of a singular remedy does not control the preemption question. There was overwhelming evidence, only a small portion of it recounted here, from which a jury could find, as it did, that MGA's wrongful conduct caused harm or damage to Mattel and that MGA and Larian had actual knowledge of Bryant's duties to Mattel and his breach of those duties. The argument that only the first wave dolls infringed has already been rejected as well. Finally, there was ample evidence to support MGA HK's liability.

### Argument

### I.  MATTEL'S STATE LAW CLAIMS ARE NOT PREEMPTED

#### A. Mattel's Aiding And Abetting Breaches Of Fiduciary Duty And Duty Of Loyalty Claims Are Not Preempted

MGA urges that Mattel's aiding and abetting claims were "constructed on the premise that Mattel owns the rights to Bratz" and are preempted as "based on Mattel's rights to Bratz." (Mtn. at 4.) But Mattel showed -- and had to show -- much more than mere ownership and copying to support these claims. They are not preempted.[1]

---

[1] Recognizing the argument was meritless, MGA did not even seek summary judgment as to Mattel's aiding and abetting claims on preemption grounds. See MGA's Motion for Partial Summary Judgment, Declaration of B. Dylan Proctor ("Proctor Dec."), Exh. 1. While MGA now purports to rely on the Court's ruling that Mattel's interference and unfair competition claims are preempted to the extent they are premised on Mattel's copyrights in Bratz (Mtn. at 2), MGA ignores the Court's ruling that the interference claim "is *not* preempted as to Mattel's claims for breach of fiduciary duty." Order re: Partial Summary Judgment, dated Apr. 25, 2008, at 2 (emphasis added), Proctor Dec., Exh. 2.

1    As numerous courts have recognized in similar cases, Mattel's state law claims
2  contain extra elements, requiring proof of additional and different facts from its
3  copyright claim.  See e.g., Oddo v. Ries, 743 F.2d 630, 635 (9th Cir. 1984) (breach of
4  fiduciary duty claim "is quite different from the interests protected by copyright," and
5  not preempted); Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 307 (2d Cir.
6  2004) (aiding/abetting breach of fiduciary duty claim not preempted because "the
7  underlying right they seek to vindicate is the right to redress violations of the duty owed
8  to a partnership by those who control it").[2]  In fact, Congress deliberately carved out
9  fiduciary duty claims from the Copyright Act's preemption provision.  See Patry on
10  Copyright, § 18:22 (2007) (discussing legislative history).  Mattel's aiding/abetting
11  breach of duty of loyalty claim is even more divergent from a copyright claim, turning
12  not on copyright principles of ownership and copying but on the statutory duty of
13  loyalty.  Cal. Lab. Code § 2863.

14    Mattel's aiding and abetting claims required proof that Bryant owed duties to
15  Mattel, that he breached those duties, that the MGA parties knew of the breach, and
16  that they rendered substantial assistance or encouragement.[3]  As to fiduciary duty,
17  Mattel was required to show that Bryant entered into a position of trust with Mattel
18  whereby he agreed not to disclose Mattel's proprietary information; as to the loyalty
19  claim, proof that Bryant was a Mattel employee who owed Mattel his loyalty was
20  required.[4]  Mattel's evidence included proof that Bryant undertook a fiduciary duty in
21  the Inventions Agreement;[5] breached his duties to Mattel when he entered into an

22

---

23    [2]  See also Daboub v. Gibbons, 42 F.3d 285, 289-90 (5th Cir. 1995) (claims preempted
24  only because they failed to allege "any element, such as ... breach of fiduciary duty, which
     render [their claims] different in kind from copyright infringement"); Groubert v. Spyglass
     Entm't, 2002 WL 2031271, at *5 (C.D. Cal. 2002) ("Plaintiff's breach of confidence claim ...
25  contains an extra element, namely, the confidential relationship."); Metrano v. Fox Broad. Co.,
     2000 WL 979664, at *7 (C.D. Cal. 2000) ("This agreement of confidentiality constitutes an
26  extra element that brings plaintiff's breach of confidentiality claim outside the realm of
     copyright protection.").
27    [3]  Final Phase 1(a) Jury Instructions, Instruction No. 25, Proctor Dec. Exh. 3.
      [4]  Order re: Partial Summary Judgment, dated Apr. 25, 2008, at 5-6, Proctor Dec. Exh. 2.
28    [5]  See TX 25, Proctor Dec. Exh. 4.

1  agreement assigning his loyalty to MGA[6] and used Mattel employees and resources for
2  MGA's advantage;[7] that MGA knew of the duties as shown by its own contracts, its
3  executives' knowledge of their own prior agreements with Mattel and its substantial
4  efforts to keep secret Bryant's dual employment;[8] and that MGA substantially assisted
5  Bryant's breaches, including by paying him for his disloyal activities while still
6  employed by Mattel.[9]  These claims clearly contain extra elements that defeat
7  preemption. Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1089-90 (9th Cir. 2005)
8  ("If a state law claim includes an 'extra element' that makes the right asserted
9  qualitatively different from those protected under the Copyright Act, the state law claim
10  is not preempted by the Copyright Act.").

11      MGA urges that Mattel's claims are preempted "*to the extent* they are based on
12  Mattel's rights to Bratz" (Mtn. at 4 (italics added)), suggesting that extra elements and
13  additional proof are not enough if copyright interests are implicated.  As the Court
14  previously recognized, the authority MGA cites, Del Madera Props. v. Rhodes &
15  Gardner, Inc., 820 F.2d 973 (9th Cir. 1987), does not so hold.  That case involved a
16  claim of unfair competition that was in fact indistinguishable from copyright
17  infringement: the claim was that defendant had misappropriated the plaintiff's "time
18  and effort" in creating copyrighted works (maps and documents). Id. at 977. Mattel's
19  aiding and abetting claims are not based on the "time and effort" involved in creating
20  Bratz but on MGA's complicity in Bryant's breaches of the statutory duty of loyalty and
21  the fiduciary obligations created by his Mattel contract, including his disclosure of
22  Mattel's proprietary information and activities benefiting a competitor. Such claims are
23  not indistinguishable from copyright claims and are not governed by Del Madera. See,
24  e.g., Grosso v. Miramax Film Corp., 383 F.3d 965, 968 (9th Cir. 2004) (distinguishing

---

[6]  See TX 15, Proctor Dec. Exh. 5.
[7]  Trial Tr. 2495:16-24; Trial Tr. at 2496:19-2497:5; Trial Tr. at 2502:9-14.
[8]  See, e.g., Trial Tr. at 541:2-544:13, Trial Tr. at 545:9-546:4; Trial Tr. at 1024:11-1026:2; Trial Tr. at 1624:15-1626:14; see also TX 1117, Proctor Dec. Exh. 6; TX 13532, Proctor Dec. Exh. 7; TX 13620, Proctor Dec. Exh. 8, TX 1116, Proctor Dec. Exh. 9.
[9]  See, e.g., TX 593 Proctor Dec. Ex. 10.

1   Del Madera; even implied contractual obligations avoid preemption); <u>Balboa Ins. Co. v.</u>

2   <u>Trans Global Equities</u>, 218 Cal. App. 3d 1327, 1352 (1990) (<u>Del Madera</u> does not apply

3   where there are "broader allegations of breach" beyond creation of a copyright).[10]

4   Indeed, even a claim that exclusively involves works that *are* protected by copyright is

5   wholly *non*-preempted if it includes the requisite "extra element." <u>See, e.g., Altera</u>, 424

6   F.3d at 1089-90 (claims based on "use" of information protected by copyright in

7   violation of contractual obligations are *not* preempted).[11]

8   ### B.   Mattel's Recovery of MGA's Profits Is Not Preempted

9        This Court has ruled that "the mere fact that the remedies are the same does not

10   result in preemption."[12]  Defendants offer no basis to reconsider this holding.

11        Ninth Circuit law establishes a two-pronged preemption test: "First, the content

12   of the protected right must fall within the subject matter of copyright .... Second, *the*

13   *right asserted* under state law must be equivalent to the exclusive rights contained in

14   section 106 of the Copyright Act." <u>Downing v. Abercrombie & Fitch</u>, 265 F.3d 994,

15   1003 (9th Cir. 2001) (emphasis added).  Under the second prong, "[i]f a state law claim

16   includes an 'extra element' that makes *the right asserted* qualitatively different from

17
    _____
[10]    The Court has already recognized this.  Trial Tr. 5464:18-21 ("[F]rankly, the
18   preemption on the fiduciary duty, the <u>del Madera</u> case I don't think blocks the claim at this
    point").  <u>See also</u> <u>Nimmer on Copyright</u> § 1.01[B], at p. 1-12 ("[I]f under state law the act of'
19   reproduction, performance, distribution or display . . . will *in itself* infringe the state created
    right, then such right is preempted. But if qualitatively other elements are required, instead of,
20   or in addition to, the acts of reproduction, performance, distribution or display, in order to
    constitute a state-created cause of action, then the right does not lie 'within the general scope
21   of copyright,' and there is no preemption.") (emphasis added).
        [11]    See also <u>Stewart Title of California, Inc. v. Fidelity Nat. Title Co.</u>, 279 Fed. Appx. 473,
22   475-76 (9th Cir. 2008) (reversing dismissal on preemption grounds where state law claim
    "encompasses protection against improper *use*, thereby making the rights protected
23   qualitatively different from those afforded in the Copyright Act.") (italics in original).  This is
    particularly true where the rights at issue arise out of a contract. <u>See, e.g., Brackett v. Hilton</u>
24   <u>Hotels Corp.</u>, 2008 WL 2632675, *9 (N.D. Cal. 2008) ("In cases in which a third-party
    contractual relationship is alleged to have been disrupted by a defendant's infringement of a
25   copyright, '[m]ost courts have held that the Copyright Act does not preempt the enforcement
    of contractual rights.'") (quoting <u>Altera</u>).  <u>Worth v. Universal Pictures, Inc.</u>, 5 Supp. 2d 816,
26   822 (C.D. Cal. 1997), which MGA cites, says only that an element of "awareness or intent"
    may not save a claim from preemption. Mattel's aiding/abetting claims contain the elements
27   of fiduciary duty and duty of loyalty, which courts consistently hold satisfy the "extra
    element" requirement, particularly when arising out of a contract.
28      [12]    Trial Tr., at 7927:20-21.

1   those protected under the Copyright Act, the state law claim is not preempted by the
2   Copyright Act." Altera, 424 F.3d at 1089 (emphasis added).

3       Because MGA cannot establish the equivalence required by the second prong, it
4   now seeks to add a ***third*** element -- that the remedies sought must be completely
5   distinct from those available under copyright law. That is not the law. The focus of the
6   extra element/equivalent rights test is on the elements of the claim and right at issue,
7   not the remedies. For that reason, courts addressing the issue find that overlapping
8   remedies are immaterial.[13]   Still more courts find no preemption without even
9   considering the remedies sought by the plaintiff.[14]   Because the rights at issue are
10  distinct, Mattel's state and federal claims are legally distinct even if both involve
11  disgorgement; as the Court has observed, "one is predicated on a copyright claim, one
12  is predicated on state tort law claim. The two are, under the law, separate and distinct
13  even though they result in – or they trigger similar remedies or similar damages."[15]

14      MGA cites Bucklew v. Hawkins, Ash, Baptie & Co., LLP, 329 F.3d 923, 925,
15  934 (7th Cir. 2003), Johnson v. Arista Holding, Inc., 2006 WL 3511894, *7 (S.D.N.Y.
16  2006), and Worth, 5 F. Supp. 2d at 822. These cases involved state law claims for
17  which the ***rights*** were equivalent to those protected by copyright; the "claims were
18  merely duplicative of the ***rights*** ... assert[ed] under the Copyright Act." Johnson, 2006
19

20      [13]  See, e.g., Goldberg v. Cameron, 482 F. Supp. 2d 1136, 1151 (N.D. Cal. 2007) ("The
    remedy ... does not inform the court's decision, only whether the state law right includes an
21  extra element."); Henry v. Nat'l Geographic Soc'y, 147 F. Supp. 2d 16, 23 (D. Mass. 2001)
    ("court focuses on what plaintiff seeks to protect," not remedies available, when considering if
22  state law claim is preempted).
        [14]  See, e.g., Altera, 424 F.3d at 1089; Grosso, 383 F.3d at 968 (reversing preemption
23  ruling where implied contract provided extra element: "The dispositive preemption issue in
    this case is whether the ***rights*** protected by a Desny claim are equivalent to the rights
24  protected by copyright.") (emphasis added); Briarpatch, 373 F.3d at 307 (rejecting argument
    that aiding/abetting breach of fiduciary duty claim was preempted without considering
25  remedy); Dorsey v. Money Mack Music, Inc. 304 F. Supp. 2d 858, 865 (E.D. La. 2003)
    (finding no preemption, without considering relief sought, because the "core of plaintiff's
26  claims arise from breaches of contractual and fiduciary duties among the parties"); Butler v.
    Continental Airlines, Inc., 2001 WL 1509545, at *3 (S.D. Tex. 2001) (breach of fiduciary duty
27  and contract claims arising out of Inventions Agreement held not preempted without
    considering remedies).
28      [15]  August 18, 2008 Tr., at 7927:14-17.

1  WL 3511894 at *7 ("Plaintiff's state law claims are preempted because they do  no
2  more than seek to vindicate the *same rights* as plaintiff's copyright claims.") (emphasis
3  added); see Bucklew, 329 F.3d at 934 ("the statute's preemption clause forbids states to
4  add sanctions for a wrongful act *that is identical to a violation of the statute*")
5  (emphasis added); Worth, 5 F. Supp. 2d at 822 (conversion claim was based on rights
6  equivalent to those protected by copyright -- "unauthorized reproduction and
7  distribution" -- and was therefore "subsumed within federal copyright law"). Because
8  the rights at issue in these cases were equivalent to those protected by copyright, they
9  do not support MGA's position that claims *not* based on equivalent rights still are
10 preempted if the remedies overlap.[16]

11      MGA's argument also proves too much. The Copyright Act permits awards of
12 both actual damages and disgorgement. 17 U.S.C. § 504(b). A wide variety of state
13 law claims permit comparable remedies. If, as MGA urges, mere overlapping remedies
14 were sufficient for preemption even when the rights at issue are qualitatively different,
15 the scope of copyright preemption would be unbounded. Rather, claims are preempted
16 only where there is no "'extra element' that makes the right asserted qualitatively
17 different from those protected under the Copyright Act." Altera, 424 F.3d at 1089-90.
18 MGA's discussion of the profits Mattel was allegedly awarded based on "non-
19 copyrightable intellectual property" (Mtn. at 5-6) is irrelevant. State law damages are
20 permitted even when they involve *copyrightable* property (let alone non-copyrightable
21 property), if an extra element makes the right qualitatively different. See, e.g., Altera,
22 424 F.3d at 1089; Grosso, 383 F.3d at 968; Oddo, 743 F.2d at 635.[17]

23

24

25  [16] MGA also relies on Patry, but that treatise recognizes that "Buckle[w] should not be
    read as holding that damages flowing from an *otherwise non-preempted* fraud claim are
26  necessarily preempted." Patry on Copyright § 18:21 (emphasis added).
    [17]  Even MGA appears to recognize that, if valid, its argument would not defeat Mattel's
27  *claims*, but only impact the jury's damages awards. (Mtn. at 6) ("any *damages* awarded by the
    jury based on the name and characters are preempted") (italics added). That is significant
28  because Mattel's state law claims also support the "Bratz" constructive trust order.

## C.   Mattel's State Law Claims are Not Preempted by CUTSA

### 1.   MGA Waived Any Argument Regarding CUTSA Preemption

MGA waived its CUTSA preemption argument.  Preemption is an affirmative defense that must be pleaded in advance of trial and raised in a party's answer; otherwise, it is waived.  See Wolf v. Reliance Standard Life Ins. Co., 71 F.3d 444, 449 (1st Cir. 1995) ("[W]e hold that ERISA preemption in a benefits-due action is an affirmative defense and, as such, it is subject to waiver if not timely pleaded."); Gilchrist v. Jim Slemons Imports, Inc., 803 F.2d 1488, 1497 (9th Cir. 1986) (preemption is affirmative defense that is waived if not timely raised); DIRECTV, Inc. v. Barrett, 311 F. Supp. 2d 1143, 1147 (D. Kan. 2004) ("The court holds that preemption is an 'avoidance or affirmative defense' that must be pleaded pursuant to Fed. R. Civ. P. 8(c).").  MGA's pleadings contain no mention of CUTSA preemption, and it never sought to amend its pleadings to add the defense.

MGA further waived the argument by failing to raise it in the Final Pre-Trial Conference Orders.  United States v. First Nat'l Bank of Circle, 652 F.2d 882, 886 (9th Cir. 1981) (a party may not "offer evidence or advance theories at the trial which are not included in the [final pre-trial conference] order"); Johns v. Autonation USA Corp., 246 F.R.D. 608, 609-10 (D. Ariz. 2006) (prohibiting party from raising preemption defense after final pre-trial conference order).

And MGA waived it for a third time when it failed to raise it in a timely JMOL. MGA's CUTSA defense purports to undermine the merits of Mattel's state law causes of action, tried in Phase 1(a).  It therefore had to be raised in a JMOL motion in Phase 1(a).[18]  MGA first argued CUTSA preemption in Phase 1(b).[19]  By waiting until

---

[18]   See, e.g., TVT Records v. Island Def Jam Music Group, 279 F. Supp. 2d 366, 379 (S.D.N.Y. 2003) rev'd on other grounds 412 F.3d 82 (2d Cir. 2005) ("Initially, the Court notes that Cohen raised this argument for the first time in his Rule 50(a) motion presented during the damages phase of this litigation.  As the matter at hand relates to the sufficiency of the evidence concerning liability and not damages, the matter was improperly raised during the damages phase and instead should have been raised as part of his Rule 50(a) motion presented during the liability phase.  As grounds for judgment as a matter of law under Rule 50(b) must have been properly asserted pursuant to a motion under Rule 50(a), this argument must be (footnote continued)

1  liability had been established to assert this liability defense, MGA waived it.[20]

2    **2.  Mattel's Claims Are Not Based On An "Identical Nucleus" Of**
3    **Facts As A CUTSA Claim**

4    Nor is there any merit to MGA's belated assertion of CUTSA preemption.
5  CUTSA does not affect civil remedies that "are not based upon misappropriation of a
6  trade secret," Cal. Civ. Code § 3426.7(b), and only preempts claims that are based on
7  an "'identical nucleus' of facts as a trade secret claim." Silicon Image, Inc. v. Analogix
8  Semiconductor, Inc., 2007 WL 1455903, at *9 (N.D. Cal. 2007). Where state law tort
9  claims are "based on a much broader spectrum of misconduct than simply
10  misappropriating trade secrets," CUTSA does not preempt the claims. Ali v. Fasteners
11  for Retail, Inc., 544 F. Supp. 2d 1064, 1070 (E.D. Cal. 2008) (claim for breach of
12  fiduciary duty not preempted by CUTSA where based, in part, on defendant's
13  development of a competing product with stolen information); see Postx Corp. Secure
14  Data In Motion, Inc., 2004 WL 2663518, at *3 (N.D. Cal. 2004) (unfair competition
15  claim not preempted by CUTSA where based on "an alternative theory of liability as
16  well as new facts").

17    The claims Mattel brought to trial in Phase 1 did not rest on an "identical

18

19  dismissed on this basis."); Rand-Whitney Containerboard Ltd. P'ship v. Town of Montville,
20  2004 WL 2472277, *4 (D. Conn. 2004) (JMOL challenging liability is properly raised prior to damages trial); see generally Harrell v. City and County of Honolulu, 283 Fed. Appx. 509, 513 (9th Cir. 2008) ("litigant is procedurally barred from moving for JMOL after a jury
21  verdict unless he has first moved for JMOL at the conclusion of evidence and before submission to the jury").
22    [19] See MGA Parties' Motion for Partial Judgment as a Matter of Law for Phase 1(b), Proctor Dec. Exh. 11, at 5 n.4.
23    [20] MGA has suggested that Rule 12(h)(2)(C) permits it to raise preemption as a 12(b)(6) defense any time before the jury reaches its verdict. This is not so -- "preemption . . . is an
24  affirmative defense that is not proper to raise in a Rule 12(b)(6) motion." Perfect 10, Inc. v. Google, Inc., 2008 WL 4217837 at *8 (C.D. Cal. 2008); see also Wolf, 71 F.3d at 450 (general
25  non-specific "'failure to state a claim' defense does not preserve the affirmative defense of ERISA preemption when raised "five days before trial"). Village of DuePue III v. Exxon
26  Mobil Corp., 537 F.3d 775, 781 (7th Cir. 2008), which MGA cites, says nothing about whether preemption is an affirmative defense or when it must be raised to avoid waiver.
27  Brown v. Tr. of Boston Univ., 891 F.2d 337, 357 (1st Cir. 1989), which MGA also cites, holds that a party may *not* bring a Rule 12 motion post-verdict. In any case, the defense here was
28  first raised well *after* the jury had already found liability -- too late by any account.

1 | nucleus" of facts as a CUTSA claim. A CUTSA claim has only two elements: "(1) the
2 | existence of a trade secret, and (2) misappropriation of the trade secret." <u>Dealertrack,</u>
3 | <u>Inc. v. Huber</u>, 460 F. Supp. 2d 1177, 1183-84 (C.D. Cal. 2006). CUTSA does not
4 | preempt claims that are not based on trade secrets; and none of the claims at issue here
5 | depended on proof that the Bratz inventions are trade secrets. <u>See Martone v. Burgess</u>,
6 | 2008 WL 3916022, at *3 (N.D. Cal. 2008) (CUTSA does not preempt claims arising
7 | from breach of confidentiality agreement which encompasses proprietary information
8 | rather than trade secrets); <u>Ernest Paper Prods., Inc. v. Mobil Chem. Co., Inc.</u>, 1997 WL
9 | 33483520, at *9 (C.D. Cal. 1997) (intentional interference and unfair competition
10 | claims not preempted where they "do not depend upon the information in question
11 | qualifying as trade secrets").[21] Moreover, CUTSA's preemption clause expressly states
12 | that there is no preemption of claims based on contractual rights, such as Mattel's
13 | fiduciary duty and intentional interference claims, even where they are based on
14 | misappropriation of trade secrets. <u>See Cal. Civ. Code</u> § 3426.7(b) ("This title does not
15 | affect (1) contractual remedies, *whether or not based upon misappropriation of a trade*
16 | *secret . . ."*) (emphasis added).[22]

17 | Each of Mattel's state law claims also required it to establish additional and
18 | independent facts irrelevant to a CUTSA claim. The intentional interference claim
19 | required Mattel to establish (1) a contract between Bryant and Mattel, (2) MGA's
20 | knowledge of that contract, (3) intentional acts to induce a disruption of that contractual
21 | relationship and (4) damages.[23] These elements—utterly distinct from a CUTSA
22 |

23 | [21] MGA's argument that because Mattel viewed the information as "confidential" it must
24 | have been a trade secret is besides the point. A trade secret under CUTSA requires that
specific statutory elements are met. <u>See Cal. Civ. Code</u> § 3426.1(d). Mattel's claims at the
Phase 1 trial did not require the jury to make any findings concerning any such requirements,
25 | nor was the jury instructed on those requirements.
[22] <u>See MAI Sys. Corp. v. Peak Computer, Inc.</u>, 1992 WL 159803, at *15 (C.D. Cal.
26 | 1992), *aff'd in part, rev'd in part* 991 F.2d 511 (9th Cir. 1993) ("The UTSA defines and
governs duties imposed by law to protect trade secret information, but the parties (as here)
27 | may voluntarily assume other duties through express or implied in fact contracts. Thus, MAI
is free to pursue its contractual remedies in addition to those provided by the UTSA.").
28 | [23] <u>See Guidiville Band of Pomo Indians v. NGV Gaming</u>, 531 F.3d 767 (9th Cir. 2008).

1 claim—defeat preemption. See Bourns, Inc. v. Raychem Corp., 331 F.3d 704, 709 (9th

2 Cir. 2003) (the "tort of interference with the employees' contracts is distinct from

3 Bourns' violation of the statutory trade secrets act"); Silicon Image, 2007 WL 1455903,

4 at *9 (UCL claim based on interference with contract not preempted).[24] Likewise,

5 Mattel's aiding and abetting claims required that Mattel establish Bryant's distinct

6 duties (fiduciary and loyalty, respectively), his breach of those duties, MGA's

7 knowledge of the breach and assistance or encouragement of it.[25] These claims are

8 unaffected by CUTSA. See Ali, 544 F. Supp. 2d at 1070. Nor was it just the legal

9 elements that diverge. Rather, Mattel proved a different set of facts than might be at

10 issue in a CUTSA claim. Mattel showed, for example, that MGA worked with Bryant

11 for months before he left Mattel, that MGA induced him to use Mattel resources and

12 personnel to help MGA turn Bratz into a marketable product more speedily and that

13 MGA entered into an agreement with Bryant while still employed by Mattel that

14 conflicted with his obligations to Mattel.[26] Mattel's Phase 1 state law claims are not

15 based on misappropriation of trade secrets; they involve different legal theories and

16 required different elements of proof. They are not preempted.[27]

17

---

18 [24] See also Jan Marini Skin Research, Inc. v. Allure Cosmetic USA, Inc., 2007 WL 1508686, at *26 (Cal. App. 2007) ("claim for interference with prospective economic advantage is not preempted by the UTSA if it depends on factual allegations in addition to those that form the basis of the misappropriation claim."); Postx Corp., 2004 WL 2663518, at *3 (UCL claim not preempted by CUTSA where based on "an alternative theory of liability as well as new facts").

21 [25] See Neilson v. Union Bank of Calif., N.A., 290 F. Supp. 2d 1101, 1118 (C.D. Cal. 2003). Mattel was also required to prove a number of totally distinct sub-elements, see Final Phase 1(a) Jury Instructions, Proctor Dec. Exh. 2, at Instruction Nos. 25-27.

22 [26] See Trial Tr. 2769:10-24, 3048:10-22, 2501:13-2504:8, TX 15, Proctor Dec. Exh. 5; TX 593, Proctor Dec. Exh. 10.

23 [27] MGA's suggestion that Mattel's argument would mean that CUTSA would never preempt *any* state law remedies is meritless. CUTSA preempts—as was intended—common law misappropriation of trade secrets. Notably, in the decisions cited by MGA only claims that relied on *exactly* the same facts as a CUTSA claim were held preempted. See, e.g., Digital Envoy Inc. v. Google, Inc., 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005) (claim based on "identical facts" held preempted); Convolve, Inc. v. Compaq Comp. Corp., 2006 WL 839022, at *7 (S.D.N.Y. 2006) (unpublished) (preempted claim "indistinguishable" from trade secret claim); Enreach v. Embedded Internet Solutions, Inc., 403 F. Supp. 2d 968, 978 (N.D. Cal. 2005) (dismissing claim for "misappropriation of trade secrets" as time-barred, and noting in dicta that claim would likely be preempted under CUTSA). Even MGA's authorities show that, where claims involve misuse of information that does not require proof of trade

(footnote continued)

## II.   MATTEL HAS PROVED DAMAGES FOR ITS STATE LAW CLAIMS

### A.   The Jury and the Court Have Already Found Harm or Damage

MGA argues that Mattel has "fail[ed] to present any evidence in support of permissible damages" and seeks dismissal of the state law claims. (Mtn. at 10.)   This argument is both untimely and incorrect.

First, harm was an element of Mattel's state law claims decided in Phase *1(a)* -- the jury was instructed that it must find harm and causation to hold defendants liable, and it did.[28]   MGA challenged those findings only after the conclusion of Phase 1(a), during the post-trial motions for Phase 1(b);[29] by that time, the only issue was the amount of damages, not the fact of harm.   MGA's Rule 50(b) motion is not supported by a timely Rule 50(a) one, which alone defeats MGA's motion.[30]

Second, there was substantial evidence of harm.   As the Court recognized in discussing the Phase 1(a) trial evidence, "the harm [here] is manifest."[31]   The Court found harm as a matter of law on Mattel's claim for intentional interference with

---

secret status or claims requiring different proof, CUTSA does not preempt. See Easton Sports v. Warrior Lacrosse, Inc., 2005 WL 2234559, at *4 (E.D. Mich. 2005) (court stated that CUSTA could preempt claims based on the "same nucleus of facts" but *denied* a motion to dismiss because plaintiffs could still "prove specific 'wrongful acts' other than the misappropriation of trade secrets."); Accuimage Diagnostics Corp. v. Terarecon, Inc., 260 F. Supp. 2d 941, 950-957 (N.D. Cal. 2003) (common law claim for misappropriation of trade secrets held preempted but claims for breach of fiduciary duty, intentional interference and unfair competition held not); Ernest Paper Prods., 1997 WL 33483520 at *2, *9 (preemption of claims "based solely" on misappropriation, but not of claims that "do not depend upon the information in question qualifying as trade secrets").

[28]   See Final Phase 1(a) Jury Instructions as Given, Proctor Dec. Exh. 3, at Instruction Nos. 22, 25-27, 29.

[29]   See MGA's Motion for Judgment as a Matter of Law, dated July 3, 2008, Proctor Dec. Exh. 26; MGA's Motion for Judgment as Matter of Law for Phase 1(b), dated August 18, 2008, Proctor Dec. Exh. 11, at 1-2.

[30]   See supra note 18.

[31]   Trial Tr. at 4710:20-4711:2 (regarding intentional interference: "How could you possibly not have harm, at some measure, the measure of which is damages, and we'll reserve that for 1-B."); Trial Tr. at 4713:5-16 ("I don't think there's anyone in this room that would suggest that to the extent that an invention or a design or a drawing or conception is in fact induced or aided and abetted in violation of the inventions agreement, is induced or aided and abetted by MGA, that there would not be a manifest showing of harm"); July 9, 2008 Hearing Tr. at 23:23-25 (regarding conversion: "The element of harm, assuming that they find that property was taken, seems pretty self-evident to the Court, given the nature of the property.").

1   contract.[32] The Court also found that Bryant breached his duty of loyalty by secretly

2   entering into a contract with Mattel's competitor "to produce a line of fashion dolls to

3   be marketed in direct competition with Mattel's products,"[33] which caused substantial

4   harm to Mattel, including loss of market share.[34] Bratz products directly compete with

5   Mattel's products; defendants harmed Mattel by competing against it with Mattel's own

6   property, which defendants stole, using Mattel's own employee. There can be no

7   question that Mattel has proven harm, including the deprivation of its property.

8

### B.   Damages Are Not Limited To Bryant's Profits

9      This Court has repeatedly rejected MGA's argument that Mattel's damages for

10   MGA's aiding and abetting are limited to Bryant's profits, and should do so again. As

11   set forth in the Phase 1(b) jury instructions, Mattel is entitled to recover all profits and

12   advantages that MGA and Larian obtained as a result of their aiding and abetting

13   Bryant's breaches of his duties.[35] This instruction conforms both to MGA's own

14   proposal,[36] and to controlling law which holds that "[a]ctive participants in the breach

15   of fiduciary duty by another are accountable for *all advantages they gained* thereby."

16   County of San Bernardino v. Walsh, 158 Cal. App. 4th 533, 543 (2007) (emphasis

17   added).[37] MGA has never cited any authority holding that an aider/abettor is entitled to

18

---

[32]  Order re: Partial Summary Judgment, dated Apr. 25, 2008, at 6, Proctor Dec. Exh. 2.

19  [33]  Id., at 5. See also Final Phase 1(a) Jury Instructions, Proctor Dec. Exh. 3, at Instruction No. 28. In order for a breach of the duty of loyalty to be found, harm must be proven. See id.

20  at Instruction No. 27.

[34]  See, e.g., Trial Tr. at 405:12-20 (testimony of I. Ross that Mattel lost market share to

21  Bratz); Trial Tr. at 3855:24-25 (testimony of R. Eckert that MGA competes with Mattel and that Mattel lost market share to Bratz); Trial Tr. at 7277:16-25 (testimony of T. Kilpin that

22  Bratz competes with Barbie); Trial Tr. at 7677:18-7678:13 (testimony of I. Larian that MGA competes with Mattel in the marketplace). See also Order Granting Constructive Trust and

23  §17200 Injunctive Relief, dated Dec. 3, 2008, Proctor Dec. Exh. 31, at 7.

[35]  See Phase 1(b) Jury Instructions, Proctor Dec. Exh. 13, at Instruction No. 39 ("if you

24  find that MGA and/or Isaac Larian obtained profits or advantages because of these specific wrongful acts, those profits and advantages should be awarded to Mattel").

25  [36]  See MGA Parties' Supplemental [Proposed] Phase 1(b) Jury Instructions, Proctor Dec. Exh. 14 at 1 ("Mattel is entitled to obtain disgorgement of profits that MGA and Isaac Larian

26  obtained by engaging in the wrongful acts of aiding and abetting breach of fiduciary duty and duty of loyalty that you have found.").

27  [37]  "[L]iability extends both to the holder of the fiduciary duty and to others who are active participants in a breach of such duty." 158 Cal. App. 4th at 543-44 (upholding disgorgement

28  by non-fiduciaries of their gains from the breach). See also Restatement of Restitution, § 201 (footnote continued)

1    keep his ill-gotten gains. Its authorities confirm that defendants can *also* be held liable

2    for Bryant's profits (Mtn. at 8-9),[38] not that they cannot be held liable for their own.

3        **C.    A Reasonable Jury Could Find Damages for Conversion**

4        MGA claims that Mattel offered no evidence of the value of the stolen drawings.

5    (Mtn. at 10.) The evidence at trial established that the stolen drawings were valuable

6    when Bryant presented them to MGA[39] and that MGA offered Bryant a consulting

7    contract to obtain them.[40]  Mattel need only present evidence from which the jury can

8    approximate damages, which it has done.[41] Indeed, MGA itself recognized at trial that

9    damages for conversion were quantifiable based on MGA's own contract with Bryant.[42]

10   **III.   MGA AND LARIAN HAD KNOWLEDGE OF BRYANT'S FIDUCIARY**

11   **        DUTY AND BREACH THEREOF**

12       Mattel presented sufficient evidence to establish that MGA and Larian had actual

13   knowledge of Bryant's fiduciary duty and breach thereof. (Mtn. at 10-11).  The Court

14

15

16   _____

17   (2008) ("Where a fiduciary in violation of his duty to the beneficiary communicates
     confidential information to a third person, the third person, if he had notice of the violation of
     duty, holds upon a constructive trust for the beneficiary any profit which he makes through the

18   use of such information.").
         [38]  Neither People v. Bestline Prods., Inc., 61 Cal. App. 3d 879, 919 (1976) ("[o]ne who

19   knowingly aids and abets a fiduciary to make secret profits may be held liable jointly with the
     fiduciary for such secret profits"), nor Anderson v. Thacher, 76 Cal. App. 2d 50, 72 (1946)

20   (same), nor Rosenthal v. Gould, 273 Cal. App. 2d 239, 243 (1969) (finding liability co-
     extensive) hold that an aider/abettor is immune from liability for gains not shared with the

21   fiduciary.
         [39]  See Trial Tr. at 563:22-24, 994:20-995:1 (testimony of P. Garcia stating she thought

22   they "were incredible" and "shrieked" and said she loved them when she first saw them).
         [40]  See Trial Tr. at 2167:9-2168:1.

23       [41]  See, e.g., Universal Pictures Co. v. Harold Lloyd, Corp., 162 F. 2d 354, 369 (9th Cir.
     1947) ("it will be enough if the evidence shows the extent of the damages as a matter of just

24   and reasonable inference, although the result be only approximate"). See also Phase 1(b) Jury
     Instructions, Proctor Dec. Exh. 13, at Instruction 40 ("Mattel does not have to prove the exact

25   amount of damages..."); Lueter v. Cal., 94 Cal. App. 4th 1285, 1303 (2002) (relied upon by
     MGA (Mtn. at 9)) ("When the fact of proximately caused injury is proven sufficiently, the

26   measure of damages to be awarded need only be shown with the degree of certainty that the
     circumstances of the case permit.").

27       [42]  Trial Tr. at 8236:23-8237:19.

28

1  instructed the jury that it must find such actual knowledge to find liability.[43] The jury

2  found it, and that finding is well supported by the evidence.[44]

3  　　　MGA faults Mattel for lacking a smoking gun -- lacking evidence that "someone

4  who saw Bryant's contract actually disclosed the contractual provision imposing a

5  fiduciary duty on Bryant to someone at MGA." (Mtn. at 14.) But actual knowledge

6  and scienter may be established through circumstantial evidence. See, e.g., Wyatt v.

7  Union Mortgage Co., 24 Cal. 3d 773, 785 (1979) ("the requisite concurrence and

8  knowledge may be inferred from the nature of the acts done, the relation of the parties,

9  the interests of the alleged conspirators, and other circumstances").[45] MGA presents no

10  contrary authority, and the cases it cites confirm this rule. See, e.g., Neilson v. Union

11  Bank of Calif., N.A., 290 F. Supp. 2d 1101, 1118-21 (C.D. Cal. 2003) (circumstantial

12  evidence held sufficient to meet "knowledge" element of claim for aiding and abetting

13  breach of fiduciary duty); Resolution Trust Corp. v. Rowe, 1993 WL 183512, at *5

14  (N.D. Cal. 1993) (actual knowledge may be proved *solely* by "circumstantial evidence,"

15  so long as "the inferences arising therefrom [are] sufficient to sustain a verdict").

16  　　　Here, Mattel presented abundant evidence to support the conclusion that MGA

17  and Larian had actual knowledge of Bryant's fiduciary duty and breach, including (1) it

18  was industry practice for employees to sign inventions and confidentiality

19  agreements;[46] (2) MGA's own employment contracts contained such provisions;[47] (3)

---

[43]  Phase 1(a) Jury Instructions, Proctor Dec. Exh. 3, at Instruction No. 25 ("MGA and/or Mr. Larian knew that Mr. Bryant's conduct constituted a breach of duty or duties").

[44]  Travelers Cas. and Sur. Co. of Am. v. Ernst & Young LLP, 542 F.3d 475, 481-82 (5th Cir. 2008) ("After a case has been tried to a jury, a motion under Rule 50 is a challenge to the legal sufficiency of the evidence. Because we are wary of upsetting jury verdicts, a jury verdict must be upheld unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did. We draw all reasonable inferences and resolve all credibility determinations in the light most favorable to the nonmoving party."); Standard Oil Co. of Cal. v. Moore, 251 F.2d 188, 198 (9th Cir. 1958) (similar).

[45]  See also, e.g., Silicon Image, WL 1455903 at *4 (use of agreements which are "common in the industry" permitted inference that defendant "knew that sale of its product to Silicon Image customers violated Software License Agreement"); Sebastian Int'l Inc. v. Russolillo, 162 F. Supp. 2d 1198, 1203-04 (C.D. Cal. 2001) (intent to interfere can be inferred even if defendant "does not know the specific identity of the contractual party").

[46]  See, e.g., Trial Tr. at 296:25-298:25; Trial Tr. at 541:2-544:13. That Larian at one point testified to the contrary (Mtn. at 12, n.11) is of no moment. The jury was free to (footnote continued)

MGA executive Paula Garcia herself had previously signed an Inventions Agreement with Mattel and knew that all Mattel employees were required to sign such agreements;[48] (4) Bryant sent a fax to MGA's attorney informing MGA that he had an "agreement of confidentiality" with Mattel;[49] and (5) Bryant sent his Mattel offer letter, which explicitly stated that the Mattel job was contingent upon his signing a Confidential Information and Inventions Agreement, to MGA's attorney.[50]

The evidence also established MGA's and Larian's guilty knowledge that Bryant's actions violated his duties to Mattel. Larian instructed Victoria O'Connor to redact the Mattel fax header and date sent from Bryant's MGA contract before forwarding it to MGA's attorney.[51] Paula Garcia told Rachel Harris in October 2000 that they were to conceal Bryant's attendance at a Bryant/MGA meeting because he was still employed by Mattel.[52] Larian told MGA employees not to mention Bryant's involvement "outside of MGA"[53] and that, if asked, he planned to falsely say either that he came up with Bratz or that the inspiration came from his daughter.[54] Larian instructed MGA employees in an email that "[t]here must be no mention" of Bryant

---

disregard Larian's self-serving denials. See Phase 1(a) Jury Instructions, Proctor Dec. Exh. 3, at Instruction No. 10 ("You may believe everything a witness says, or part of it, or none of it....you may take into account . . the witness's interest in the outcome of the case and any bias or prejudice; whether other evidence contradicted the witness's testimony").

[47] See Trial Tr. at 545:9-546:4; Trial Tr. at 1024:11-1026:2; Trial Tr. at 1624:15-1626:14; see also TX 1117, Proctor Dec. Exh. 6; TX 13532, Proctor Dec. Exh. 7; TX 13620, Proctor Dec. Exh. 8. MGA's claim that Mattel was required to produce evidence of what MGA's employees understood the confidentiality duty to mean is misguided. (Mtn. at 15.) Larian himself testified that he required employees to sign such agreements to "keep things confidential." Trial Tr. at 1624:20-25.

[48] See Trial Tr. at 541:2-544:13; see also TX 1116, Proctor Dec. Exh. 9.

[49] See TX 2201, Proctor Dec. Exh. 15, at 2.

[50] See TX 2201, Proctor Dec. Exh. 15, at 4.

[51] See Trial Tr. 1326:13-1330:12; TX 13383, Proctor Dec. Exh. 16; TX 15, Proctor Dec. Exh. 5. This was the only time during her employment at MGA that she was instructed to white-out information. See Trial Tr. 1333:12-14.

[52] Trial Tr. 2375:22-25, 2377:7-24. Harris testified that Mercedeh Ward, who was in charge of engineering for Bratz at MGA, also told her (Harris) that she should not say anything about Bryant's involvement with Bratz "outside of MGA." Trial Tr. 2378:12-2379:16, 2381:17-2382:4.

[53] Trial Tr. 2382:13-2383:9.

[54] Trial Tr. 2388:15-2389:6.

1   outside MGA,[55] and MGA employee Dee Dee Valencia wrote to Larian, without
2   contradiction by him, that "I know we want to keep Carter under wraps."[56] An internal
3   list of MGA personnel who came from Mattel listed Bryant's dates at MGA as "????-
4   PRESENT" and his Mattel dates as "DON'T ASK."[57]

5        There was more than sufficient evidence that MGA and Larian had actual
6   knowledge of Bryant's fiduciary duty to Mattel and his breach of that duty.  MGA
7   concedes it knew of Bryant's contract with Mattel (Mtn. at 12), which was the source of
8   his fiduciary duty.  Especially in light of the overwhelming evidence of guilty
9   knowledge, Mattel was not required to prove, through direct evidence, that MGA knew
10  the agreement's precise terms (and it proved that in any case since Garcia herself had
11  agreed to them).  Courts find circumstantial evidence far more attenuated than that
12  presented by Mattel sufficient to establish actual knowledge.  See, e.g., In re First
13  Alliance Mortgage Co., 471 F.3d 977, 993 (9th Cir. 2006) (applying California law)
14  (affirming verdict where evidence could reasonably be interpreted to support finding of
15  actual knowledge); Gonzales v. Lloyds TSB Bank, PLC, 532 F. Supp. 2d 1200, 1207
16  (C.D. Cal. 2006) (actual knowledge of a Ponzi scheme found based on evidence of
17  exceptional returns for clients and the commingling of funds); Scarff v. Wells Fargo
18  Bank, N.A., 2005 WL 3454136 at *6 (N.D. Cal. 2005) (circumstantial evidence of
19  minor inconsistencies in testimony and an admission by an employee of defendant that
20  she falsely witnessed a key document held sufficient to establish actual knowledge).

21  **IV.   A REASONABLE JURY COULD FIND MGA HK LIABLE**

22       Mattel presented sufficient evidence to support its unfair competition claim
23  against MGA HK.  MGA and MGA HK worked hand-in-hand to produce and
24  manufacture Bratz.[58]  MGA HK was actively involved with Bratz in October 2000,
25  when Bryant was employed by Mattel and bound by his contractual obligations to

26

---

27  [55]  TX 4507-0001, Proctor Dec. Exh. 17.
    [56]  TX 4942-0001, Proctor Dec. Exh. 18.
    [57]  TX 1932, Proctor Dec. Exh. 19, at MGA 1134726-20.
28  [58]  Trial Tr. (Garcia) 574:6-19; Trial Tr. (Garcia) 846:18-847:7.

1  Mattel.[59]  MGA HK knew that Bryant designed Bratz and was working with MGA on

2  its development, engineering, manufacture and marketing while he was still employed

3  by Mattel.[60]  From this, a reasonable jury could find that MGA HK tortiously interfered

4  with Mattel and Bryant's contract and unfairly competed with Mattel in so doing.  A

5  reasonable jury could also find MGA HK liable for unfair competition based on

6  Larian's conduct as an agent of MGA HK as well as of MGA, given the evidence that

7  Larian exercised complete control over nearly every aspect of MGA HK's operations.[61]

8  **V.    MATTEL'S INTEREST IN THE "BRATZ" NAME IS ENTITLED TO**

9  **PROTECTION**

10  **A.    MGA's Newly Raised Arguments Are Waived**

11  Having repeatedly failed in its arguments that Mattel's rights to the "Bratz" name

12  are preempted, MGA now raises two additional arguments for the first time: that the

13  Inventions Agreement did not give Mattel any protectable rights to the "Bratz" name,

14  and that MGA cannot be restrained from using the name because it was not a party to

15  the Inventions Agreement.  Neither argument was raised in either of MGA's pre-verdict

16  motions for judgment as a matter of law.[62]  Both are therefore waived.[63]

17

---

18  [59]   See TX 18 (9/27/00 email from MGA to MGA HK regarding Bratz development), Proctor Dec. Exh. 20; Trial Tr. (Garcia) 635:21-637:20 (on 9/27/00, MGA sent MGA HK
19  Bryant's Bratz drawings, physical samples of a Bratz body, Bratz clothing, and shoes to begin costing Bratz); TX 1105 (10/15/00 e-mail from MGA HK confirming that it had received a
20  clay Bratz body), Proctor Dec. Exh. 21; TX 923 (10/16/00 Bratz product development form sent from MGA to MGA HK)), Proctor Dec. Exh. 22; Trial Tr. (Garcia) 666:16-667:10 (MGA
21  discussed with MGA HK that there would be four Bratz dolls as of 10/16/00).
    [60]   TX 923, Proctor Dec. Exh. 22; Trial Tr. (Garcia) 667:23-669:24 (discussing TX 923,
22  which informed MGA HK that Bryant would receive a 3% royalty on Bratz); TX 1765 (10/18/00 email exchange between MGA and MGA HK informing MGA HK that Bryant, the
23  Bratz designer, has already picked a hair vendor)), Proctor Dec. Exh. 23; Trial Tr. (Garcia) 626:19-628:3 (discussing TX 1765).
24  [61]   Indeed, Larian's control over MGA HK was so complete that he directed MGA HK executives on matters as minor as the performance of lower level MGA HK employees.  TX
25  11277 (10/31/00 email from Larian to Samuel Wong and Franki Tsang in which Larian writes: "I need someone with DOLL DEVELOPMENT EXPERIENCE on this product. . . . I need to
26  see a change there in HK in R&D people quickly.  I want experienced people hired and replace the ones who don't have experience."), Proctor Dec. Exh. 24; Trial Tr. (Larian)
27  2268:4-22 (discussing TX 11277).
    [62]   See MGA Parties' Notice of Motion and Motion for Partial Judgment as a Matter of
28  Law, dated July 3, 2008 (Docket No. 4080), Proctor Dec. Exh. 25, at 1-7; MGA Parties'
    (footnote continued)

## B.   Mattel Has A Protectable Interest In The "Bratz" Name

MGA's new arguments lack merit in any case.  On summary judgment, MGA unsuccessfully argued that the Inventions Agreement was limited to patentable inventions.[64]  The Court correctly held that Agreement applied to "any Bratz-related 'inventions' (including any designs, improvements, ideas, concepts, and copyrightable subject matter)."[65]  Shifting course, MGA now contends it was limited to inventions that are patentable *or* copyrightable, and that the name "Bratz" is neither.

The Inventions Agreement contains none of the limitations MGA has tried to import into the term "inventions."  Paragraph 2 of the Agreement contains a broad assignment of "all inventions . . . *conceived* or reduced to practice by [Bryant] (alone or jointly by others) at any time during [Bryant's] employment by the Company," where the term "inventions" "includes, *but is not limited to*, all *discoveries*, improvements, processes, *developments*, *designs*, *know-how*, data computer programs and formulae, whether or not patentable."[66]  There is no limitation to only patentable matters or copyrightable expressions.  (Mtn. at 19.)   Nor is there any limitation that only "discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae" are covered.  (<u>Id.</u>)  The word "conceived"--meaning to "form a notion or idea of" or "cause to begin" or "take into one's mind"[67]--includes

---

Notice of Motion and Motion For Partial Judgment as a Matter of Law for Phase 1(b), dated August 18, 2008 (Docket No. 4264), Proctor Dec. Exh. 11, at 8-9.

[63]  <u>See</u> Sharp Structural, Inc. v. Franklin Mfg., Inc., 283 Fed. Appx. 585, 588 (9th Cir. 2008) ("[R]aising an issue in a motion for summary judgment is not sufficient to preserve it for review in a Rule 50(b) motion unless the argument is also reiterated in a Rule 50(a) motion.  Franklin, however, did not raise this issue in its oral or written Rule 50(a) motion. The result is a complete waiver, precluding our consideration of the merits of the issue."); Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1029 (9th Cir. 2003) ("This Court strictly applies the rule that Rule 50 allows complete waiver if an objection is not properly made [in a JMOL prior to the return of the verdict].").

[64]  Order re: Partial Summary Judgment, dated Apr. 25, 2008, Proctor Dec. Exh. 2, at 4-5.
[65]  Id. at 5; TX 25, Proctor Dec. Exh. 4, at ¶ 2.
[66]  TX 25, Proctor Dec. Exh. 4, at ¶ 2 (emphasis added).  Bryant's counsel acknowledged that the Inventions Agreement "is a broad based assignment of all inventions during their employment; all things that were conceived and practiced."  Transcript of Hearing on Mattel's Motion to Dismiss Bryant's Counter-claims, June 26, 2006, Proctor Dec. Exh. 26 at 12:23-25.
[67]  See MERRIAM-WEBSTER ONLINE, definition of "conceived" (retrieved Dec. 25, 2008, http://www.merriam-webster.com/dictionary/conceive); DICTIONARY.COM, definition of
(footnote continued)

the conception of an idea. The listed examples make clear that the term was to be interpreted broadly; and the phrase "includes, but is not limited to" enlarges the meaning of "inventions" even beyond the listed examples. See Dyna Med., Inc. v. Fair Employment & Housing Comm'n, 43 Cal. 3d 1379, 1389 (1987). A new, cutting-edge doll name conceived by a doll designer is both a discovery and a development. The name was also a "design" that was among the materials the jury found Bryant created while a Mattel employee.[68] The plain language of the Agreement encompassed Bryant's new line of dolls he purported to sell to MGA, including the idea and design for the name "Bratz."[69] And under paragraph 1 of the Inventions Agreement, Bryant had a fiduciary duty not to disclose it to MGA.[70] Mattel's interest in maintaining the proprietary and confidential nature of the "Bratz" name and Bryant's obligation to so maintain it provide ample basis for the tort law claims against MGA.

### C. The "Bratz" Name Was One Of The Benefits MGA Obtained From Its Wrongful Conduct

MGA argues that because the "Bratz" name is not subject to copyright protection, "any contractual rights Mattel may have had cannot form the basis of any claim against anyone other than Bryant." (Mtn. at 18-19.) This argument ignores established principles of tort law. The jury found MGA liable for conversion, aiding and abetting breach of fiduciary duty, aiding and abetting breach of the duty of loyalty and intentional interference with contract.[71] As a matter of state tort law, Mattel is entitled to all benefits and property MGA obtained as a result of that wrongful conduct,

---

"conceived," http://www.dictionary.reference.com/browse/conceived); OXFORD ENGLISH DICTIONARY, 2D ED., definition of "conceive" ("To take into, or form, in the mind.").

[68] TX 302, Proctor Dec. Exh. 27.

[69] This conclusion is further corroborated by the "Proprietary Information Check Out" which confirms that the Inventions Agreement covered "any and all inventions, improvements and *ideas* (whether or not patentable) which I have made or *conceived* . . . during the period of my employment with the Company." TX 27 (emphasis added), Proctor Dec. Exh. 28.

[70] TX 25, Proctor Dec. Exh. 4, at ¶ 1(a). See also Order re: Partial Summary Judgment, dated Apr. 25, 2008, Proctor Dec. Exh. 2, at 5-6; see also Order re: Motion for Reconsideration, dated May 21, 2008, Proctor Dec. Exh. 29, at 4 ("as a matter of law, Carter Bryant agreed to undertake a fiduciary duty vis-a-vis Mattel's confidential information").

[71] Phase 1(a) Final Verdict Form as given, Proctor Dec. Exh. 12, at Nos. 7-15.

1  including the "Bratz" name. County of San Bernardino, 158 Cal. App. 4th at 543

2  ("Active participants in the breach of fiduciary duty by another are accountable for all

3  advantages they gained thereby."); Restatement of Restitution, § 201 (2008) ("Where a

4  fiduciary in violation of his duty to the beneficiary communicates confidential

5  information to a third person, the third person, if he had notice of the violation of duty,

6  holds upon a constructive trust for the beneficiary any profit which he makes through

7  the use of such information.").[72]

8      MGA argues that Mattel's only claim under the Inventions Agreement "would be

9  for Bryant's failure to disclose the name to Mattel" and that the only remedy for such a

10 claim "would be damages for failure to disclose, not ownership (by constructive trust or

11 otherwise) over the underlying intellectual property or idea." (Mtn. at 20-21.) MGA is

12 wrong on both counts. Bryant had a duty under the Agreement not only to disclose the

13 name to Mattel, but also to *not* disclose it to others for their benefit. And one of the

14 benefits MGA obtained from aiding and abetting Bryant's breach of his duties was the

15 wrongful acquisition and use of the "Bratz" name.[73]  A constructive trust is the

16 appropriate remedy in these circumstances.[74]  MGA has not shown any basis for the

17

18    [72] None of the cases cited by MGA involved the sort of tort claims for which MGA was
found liable.  What those cases show, however, is that property rights in ideas can be created
19 by contract.  See, e.g., Desny v. Wilder, 46 Cal. 2d 715, 731-35 (1956) ("The policy that
precludes protection of an abstract idea by copyright does not prevent its protection by
20 contract."); Chandler v. Roach, 156 Cal. App. 2d 435, 441 (1957) (same).
   [73] As the Court correctly noted, "Here, the jury found that the MGA parties wrongfully
21 acquired the idea for the name 'Bratz' along with the idea and preliminary drawings for a line
of fashion dolls."  Order re: Constr. Trust, dated Dec. 3, 2008, Proctor Dec. Exh. 30, at 7.
22    [74] See, e.g., Burlesci v. Petersen, 68 Cal. App. 4th 1062, 1067 (1998) ("The essence of the
theory of constructive trust is to prevent unjust enrichment and to prevent a person from taking
23 advantage of his or her wrongdoing."); Warren v. Merrill, 143 Cal. App. 4th 96, 113 (2006)
("A constructive trust may be imposed when a party has acquired property to which he is not
24 justly entitled, if it was obtained by actual fraud, mistake or the like, or by constructive fraud
through the violation of some fiduciary or confidential relationship."); GHK Assocs. v. Mayer
25 Group, Inc., 224 Cal. App. 3d 856, 878 (1990) (imposing constructive trust to remedy
intentional interference with contract where "appellants had conspired to deprive GHK of its
26 rights under the agreements and its profit interest in the Project"); Heckmann v. Ahmanson,
168 Cal. App. 3d 119, 135 (1985) (constructive trust appropriate remedy for aiding and
27 abetting breach of fiduciary duty); D. Dobbs, LAW OF REMEDIES § 4.3(2) (2d ed. 1993) at 589-
90 ("The constructive trust might be imposed on any identifiable kind of property or
28 entitlement in the defendant's hands if, in equity and conscience, it belongs to the plaintiff.").

1  Court to revisit its ruling that Mattel's interests in the "Bratz" name are entitled to
2  protection, and that MGA cannot benefit from its use.

3  **VI.  INFRINGEMENT WAS NOT LIMITED TO THE FIRST WAVE DOLLS**

4  MGA argues the jury "did not find any infringement beyond the first generation."
5  (Mtn. at 21.) The Court addressed this argument decisively in the December 3 orders,
6  recognizing that the damages awarded by the jury did not in fact reflect first generation
7  profits and that the "jury made no express finding on this issue."[75] Alternatively, MGA
8  claims Mattel failed to present any evidence that would allow a reasonable jury to "find
9  infringement beyond the first generation of Bratz dolls." (Mtn. at 21.) In its own
10  JMOL, Mattel details the overwhelming evidence introduced at trial establishing that
11  all the Bratz dolls infringe Mattel's works as a matter of law; to avoid repeating those
12  points, Mattel respectfully refers the Court to the briefing on that motion.[76]

13  **VII.  BRYANT IS THE AUTHOR OF TX 1136A AS A MATTER OF LAW**

14  **A.  MGA Waived Its Authorship Argument**

15  MGA belatedly argues that Margaret Leahy, not Carter Bryant, was the sole
16  author of the Bratz sculpt, TX 1136A. (Mtn. at 21.) MGA has waived this claim since
17  it was not disclosed in pretrial conference order.[77] Nor was it raised in either of MGA's
18  Fed. R. Civ. P. 50(a) JMOL motions, another waiver.[78]

19  The only issue raised at trial was joint authorship, and MGA did not raise even
20  that issue in the Final Pre-Trial Conference Order or its JMOLs.[79] Rather, MGA's

21

22  [75] Order re: Permanent Injunction, Dec. 3, 2008, Proctor Dec. Exh. 30, at 9.
   [76] See Mattel's Motion for Judgment as a Matter of Law and Conditional Renewed Motion
23  for Judgment as a Matter of Law, dated Dec. 22, 2008, Proctor Dec. Exh. 31.
   [77] See Final Pre-Trial Conference Order for Phase 1 Trial, dated June 4, 2008, Proctor
24  Dec., Exh. 32, at 11:23-12:8. See Fed. R. Civ. P. 16; United States v. First Nat'l Bank of
   Circle, 652 F.2d 882, 886-87 (9th Cir. 1981) (theory barred if not included in pretrial order).
25  [78] See MGA's Motion for Judgment as a Matter of Law, dated July 3, 2008, Proctor Dec.
   Exh. 26; MGA's Motion for Judgment as Matter of Law for Phase 1(b), dated August 18,
26  2008, Proctor Dec. Exh. 11. See Zhang, 339 F.3d at 1029; Sharp Structural, 283 Fed. Appx. at
   588; Harrell, 283 Fed. Appx. at 513.
27  [79] In fact, when MGA sought a Jury Instruction on joint authorship in Phase 1(b), the
   Court rejected it: "it is abundantly clear that is an affirmative defense that needs to be raised
28  in advance." Trial Tr. at 8075:8-10.

1 counsel announced MGA's intention to argue joint authorship for the first time just days
2 before the close of Phase 1(b),[80] admitting it had not been raised "in the pretrial
3 conference order, prior to trial, during summary judgment or during the entirety of
4 Phase 1a," but claiming that authorship only came up "as a result of the 1a Verdict."[81]
5 Authorship did not come up as a result of Phase 1(a); it was decided by it. The
6 Inventions Agreement assigned Mattel ownership of all designs created by Bryant alone
7 or jointly with others,[82] and the jury in Phase 1(a) found that TX 1136A was
8 "'conceived or reduced to practice' -- that is *created* -- by Carter Bryant, alone or
9 jointly with others" while Bryant was employed by Mattel.[83] The only question
10 remaining after Phase 1(a) was whether or not the Bratz products infringed TX 1136A.
11 MGA's claim here, made post-trial for the first time, that Bryant was not an author of
12 TX 1136A as a matter of law is contrary to the Phase 1(a) verdict and has been waived.

13 **B. The Jury Properly Found That Bryant Was The Author Of TX 1136A**

14 The authorship argument fails on the merits as well. "[O]riginality is the essence
15 of authorship; accordingly, the originator, rather than the fixer, should be deemed the
16 'author.'" Nimmer on Copyright § 1.06 (2008); see Goldstein v. Calif., 412 U.S. 546,
17 561 (1973) (author "in its constitutional sense, has been construed to mean an
18 'originator;' 'he to whom anything owes its origin.'"); Fisher v. Klein, 16 U.S.P.Q. 2d
19 1795, 1796 (S.D.N.Y. 1990) ("authorship, even with respect to sculptors, need not be in
20 the form of the manipulation of the material"). TX 1136A owes its origin to Bryant.

21 _____

22 [80] Trial Tr. at 6877:22-6878:10. The Court stated, "[T]his is a surprise to the Court in the sense that joint authorship never saw the light of day that I can recall in summary judgment
23 practice. This never saw the light of day in the pretrial conference order. This is an entirely new one to the Court. This takes me entirely aback." Id.
24 [81] Trial Tr. at 6880:21-6881:6.
[82] TX 25, Proctor Dec. Exh. 4, at ¶ 2(a).
[83] Phase 1(a) Verdict Form, Proctor Dec. Exh. 12, at 5:1-10 (emphasis added). The Phase
25 1(a) verdict form's use of the phrase "alone or jointly with others" did not permit MGA to belatedly raise Leahy's alleged joint authorship during Phase 1(b) for the first time (or Bryant's
26 alleged lack of authorship for the first time now). The language was included because it tracked Mattel's Inventions Agreement, not because it somehow conferred rights on third
27 parties working secretly and illegally with Mattel employees. The inclusion of this language on the verdict form did not authorize MGA to make already-waived arguments belatedly, as it
28 sought in Phase 1(b) and now again seeks to do.

1  TX 1136A was created at his direction to be a three-dimensional realization of his two-
2  dimensional drawings. Even Paula Garcia conceded at trial that "the exercise was to
3  create a 3D version of those 2D drawings."[84] Leahy also admitted that Bryant gave her
4  his drawings when he asked her to work on the sculpt;[85] that she was not trying to
5  sculpt Bratz prior to receiving his drawings;[86] and that prior to the Bratz sculpt, she had
6  never sculpted a doll body from start to finish.[87] Her notebook from September 2000
7  additionally shows the creative comments she received from Bryant on the sculpt,[88] and
8  she testified that she incorporated these revisions into the sculpt.[89] Bryant himself
9  testified that the "best way" for him to communicate his input was "through drawing,"[90]
10 and that "[a] drawing is a tool to communicate to the other people that need to do their
11 part to create a doll."[91] The features of TX 1136A are immediately identifiable as being
12 three-dimensional versions of the protectable features in Bryant's drawings,[92] including
13 "the particularized, synergistic compilation and expression of the human form and
14 anatomy that expresses a unique style and conveys a distinct look or attitude."[93]

15     In contrast to Bryant's creative role, Leahy conceded her job was primarily to
16 turn the concept drawing into a manufacturable sculpt, such as by making the ankles
17 larger so they would not break.[94] Such minimal or functional contributions do not meet
18 the standards for copyright protection. See, e.g., L. Batlin & Son, Inc. v. Snyder, 536
19 F.2d 486, 490-92 (2d Cir. 1976) (en banc) (transforming antique Uncle Sam bank into
20 medium of molded plastic replica contained insufficient originality to merit copyright
21 protection); Entm't Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d

22

[84] Trial Tr. at 800:14-15.
[85] See, e.g., Trial Tr. at 6839:11-17.
[86] Trial Tr. at 6839:18-22.
[87] Trial Tr. at 6839:23-6840:7.
[88] See TX 1137-0014, Proctor Dec. Exh. 32.
[89] Trial Tr. at 4362:17-4363:10.
[90] Trial Tr. at 6666:11-6667:11.
[91] Trial Tr. at 6667:16-18.
[92] Compare TX 1136A, Proctor Dec. Exh. 33 with TX 5-0088 and 5-0089, Proctor Dec. Exh. 34; 62-0001, Proctor Dec., Exh. 35.
[93] See Phase 1(b) Final Jury Instructions, Proctor Dec. Exh. 13, at Instruction No. 26.
[94] Trial Tr. at 4262:16-24; 4159:8-15; 4365:5-11.

1    1211, 1222-23 (9th Cir. 1997) (differences in form, texture, and proportionality

2    between three-dimensional inflatable costumes and two-dimensional cartoon characters

3    upon which they were based stemmed from unprotectable functional considerations).

4    MGA cites to various instances when Leahy denied the sculpt was a three-dimensional

5    depiction of Bryant's two-dimensional drawings, but the jury was entitled to reject that

6    testimony, especially given the substantial evidence contradicting it. The evidence

7    must be construed in the light most favorable to the verdict winner, Mattel. Bryant, not

8    Leahy, was the author of TX 1136A.

9              **C.    Leahy Was Not A Joint Author Of TX 1136A**

10        Leahy's contributions to TX 1136A are insufficient to make her even a joint

11   author of TX 1136A. The Copyright Act defines a "joint work" as one "prepared by

12   two or more authors with the intention that their contributions be merged into

13   inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. "Joint

14   author" is defined by the courts. In the Ninth Circuit, a multifactor test is applied in the

15   absence of a contract: (1) whether the putative author superintended the work by

16   exercising control; (2) whether the putative coauthors made objective manifestations of

17   a shared intent to be coauthors; and (3) whether the audience appeal of the work turns

18   on the contributions of all of the putative coauthors and "the share of each in its success

19   cannot be appraised." Aalmuhammed v. Lee, 202 F.3d 1227, 1234 (9th Cir. 1999)

20   (consultant on film, *Malcolm X*, held not to be coauthor of film). "A 'joint work' in this

21   circuit 'requires each author to make an independently copyrightable contribution' to the

22   disputed work." Id. at 1231 (citations omitted).

23        MGA introduced no evidence in Phase 1(a) that Leahy had control over the

24   sculpt's creation. To the contrary, the evidence showed that Bryant, not Leahy,

25   superintended and exercised control over the creation of TX 1136A.[95]    As

26

27   [95] Furthermore, and confirming his unfettered control, Bryant was not bound to accept
     any of Leahy's contributions (creative or otherwise), and all were subject to his approval.
28   Trial Tr. at 4362:17-4363:10.

1   Aalmuhammed stated, "[c]ontrol in many cases will be the most important factor" and
2   the "absence of control is strong evidence of the absence of co-authorship." 202 F.3d at
3   1234-35. MGA also introduced no evidence that Bryant ever made objective
4   manifestations of intent to be a co-author with Leahy. Nobody -- including Leahy --
5   made any indication that at the time of creation of the sculpt, Leahy was intended to be
6   a co-author. Nor did MGA introduce any evidence that the audience appeal of TX
7   1136A turned on any contribution of Leahy. Leahy herself testified that her job was
8   primarily to turn the sculpt drawing into a manufacturable sculpt.[96] MGA can point to
9   no evidence the jury was not free to disregard that Leahy's contribution to the sculpt
10  was sufficiently original to merit copyright protection, which is both a requisite of joint
11  authorship and a constitutional requirement of authorship. See Feist Publ'ns, Inc. v.
12  Rural Tel. Serv. Co., Inc., 499 U.S. 340, 346 (1991) ("Originality is a constitutional
13  requirement."). As a non-author, Leahy had no rights in TX 1136 to convey to MGA.[97]

14

15  DATED: January 12, 2009         QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
16

17                                  By
                                       John B. Quinn
18                                     Attorneys for Mattel, Inc.

19

20

21

---

22  [96] Trial Tr. at 4365:5-11.
    [97] Even if Leahy's efforts on TX 1136A met the standards for authorship -- and they do
23  not -- MGA's ownership claim would fail. A copyright owner has the exclusive right "to
    prepare derivative works based on the copyrighted work." 17 U.S.C. § 106(2). A derivative
24  work created without the owner's authorization is infringement, and courts therefore deny
    copyright protection to the preparer(s) of unauthorized derivative works. See Pickett v.
25  Prince, 207 F.3d 402, 406 (7th Cir. 2000) (creator of unauthorized guitar had no claim to
    copyright); Anderson v. Stallone, 1989 WL 206431, at *5-11 (C.D. Cal. 1989) (denying any
26  copyright protection to creator of unauthorized treatment based on Rocky movie franchise).
    Here, the only entity that could have granted authority to prepare derivative works based on
27  Bryant's drawings was Mattel, and Mattel never granted such permission to Leahy or MGA.
    Because Leahy's actions constituted at best the preparation of an unauthorized derivative,
28  neither she nor MGA could acquire any rights in it.