v. Davies, 66 Cal. 2d 435, 437 (1967); Knoell v. Petrovich, 76 Cal. App. 4th 164, 168 (1999); Trembath v. Digardi, 43 Cal. App. 3d 834, 836 (1974).  A cause of action for intentional interference with a contract accrues no later than the date of the contract's breach.  See Forcier v. Microsoft Corp., 123 F. Supp. 2d 520, 530 (N.D. Cal. 2000); Charles Lowe Co. v. Xomox Corp., 1999 WL 1293362, at *9 (N.D. Cal. Dec. 27, 1999); Menefee v. Ostawari, 228 Cal. App. 3d 239, 245 (1991), and 3 B.E. Witkin, Cal. Procedure: Actions, § 575, at 728 (4th ed. 1996).  Here, Mattel alleges that Bryant breached the contracts at issue sometime before his October 2000 departure from Mattel by developing the BRATZ line of dolls for MGA while still employed by Mattel and taking his creation to MGA upon his departure.  (SAA ¶¶ 117, 119.)  Mattel suspected when Bryant left that he was going to a competitor to design dolls.  (UF ¶¶ 27-30.)  Consequently, Mattel's Sixth Counterclaim expired by October 2002, *a year and a half before* Mattel filed its earliest action to date in April 2004.[25]  Therefore, there is no pleading that could allow Mattel to save its Sixth Counterclaim via the "relation-back" rules, even if these rules applied here.  Consequently, the Sixth Counterclaim against MGA and Larian is time-barred.

**(b)   Mattel's Aiding and Abetting claims are time-barred**

Mattel's Eighth and Tenth Counterclaims are for aiding and abetting Bryant's breach of fiduciary duty and duty of loyalty under California law, respectively.  (SAA ¶¶ 136, 141.)  These claims are governed by a two-year statute of limitations.  See Rambus Inc. v. Samsung Elecs. Co., Ltd., 2007 WL 39374, at *3 n.4 (N.D. Cal. Jan. 4, 2007) ("The statute of limitations applicable to the claim[] of aiding and abetting breach of fiduciary duty … is two years."), citing Cal. Civ. Proc. Code § 339. Section 339 of the California Code of Civil Procedure mandates a two-year limitations period for actions "upon a contract, obligation or liability not founded upon an instrument of writing". Id.

Mattel's underlying claim for breach of duty of loyalty against Bryant is not pled as contractually based.  (SAA ¶ 143 (alleging that duty of loyalty arose out of the

---

[25]   If the Court applied the discovery rule to determine when Mattel's Sixth Counterclaim accrued, the result is the same.  Mattel was on notice of MGA and Larian's alleged role in Bryant's departure from Mattel and his development of the BRATZ line of dolls by no later than March 2002.  (UF ¶¶ 27-30, 52-54.)  Thus, even under the discovery rule, Mattel's claim would expire by March 2004 – i.e., prior to Mattel's filing of the '04 Complaint in April 2004.

EXHIBIT __1__
PAGE __40__

1  employment relationship between Mattel and Bryant).)  And, to the extent a duty exists,

2  it arises without regard to the existence of a contract because all employees owe such a

3  duty to their employer.  As for Mattel's claim against Bryant for breach of fiduciary

4  duty, although Mattel attempted to plead around the statute of limitations by alleging the

5  claim as arising from Mr. Bryant's employment contracts, these contracts did not

6  impose on him a position of trust, such that a fiduciary duty was created.[26]

7      Because, as shown above, Mattel was on notice of the facts underlying its adding

8  and abetting claims, such as MGA and Larian's role in Bryant's departure from Mattel

9  and his development of the BRATZ line of dolls, by no later than March 2002 (supra

10  Section I.A.), Mattel's Eighth and Tenth Counterclaims expired by March 2004. Since

11  these claims were already time-barred by the time Mattel filed its earliest pleading in

12  this action, which is Mattel's complaint dated April 2004, the "relation-back" rules

13  cannot revive Mattel's aiding and abetting claims. Therefore, the Eighth and Tenth

14  Counterclaims asserted against MGA and Larian must be dismissed.[27]

[26]  See Bryant Br. at A.2.  Even if either of the aiding and abetting claims is found to be contractual in nature, they would still be time-barred.  Contractual claims are governed by a four-year statute of limitations, see Cal. Civ. Proc. Code § 337(1). Because Mattel was on notice of the claims as early as February 2001, (UF ¶¶ 32-36), Mattel's aiding and abetting claims would then have expired no later than March 2005 – i.e., before MGA filed its '05 Action in April 2005. This means that the claims could be revived only by relating back to the '04 Complaint; as shown below, they do not. (See infra Section I.C.) Alternatively, even if the Court were to find that the claims accrued as late as March 2002 (UF ¶¶ 57-64), they would have expired no later than March 2006 – i.e., more than half a year before Mattel's claims were asserted on November 20, 2006. In that case, Mattel's aiding and abetting claims as asserted against Larian would still fail because, as shown below (see infra Sections I.C.-D.), they cannot relate back to either the '04 Complaint or the '05 Answer.

[27]  Mattel's aiding and abetting claims could also be viewed as based on allegations of fraud. (See, e.g., SAA ¶¶ 141(stating that for purposes of the aiding and abetting breach of fiduciary duty claim, MGA and Larian "acted with malice, fraud and oppression"), 154 (same for purposes of the aiding and abetting breach of duty of loyalty claim).) California courts adhere to the rule that the "gravamen" of a cause of action is what determines the applicable statute of limitations for that cause of action.  See, e.g., City of Vista v. Robert Thomas Sec., Inc., 84 Cal. App. 4th 882, 889 (2000) ("The statute of limitations that applies to an action is governed by the gravamen of the complaint, not the cause of action pled."). Thus, depending on the genesis of the underlying allegations, the governing limitations for the same claim could be different from case to case.  Compare Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Assocs., 115 Cal. App. 4th 1145, 1153-59 (2004) (the gravamen of claims for, inter alia, breach of fiduciary duty and breach of contract was negligence, and thus, the two-year statute of limitations applied); with City of Vista, 84 Cal. App. 4th at 889 (gravamen of complaint was fraud; thus three-year statute of limitations applied to breach of fiduciary duty claim); but see F.D.I.C. v. McSweeney, 976 F.2d 532 (9th Cir. 1992) (applying a four-year "catch-all" statute of limitations to claims for breach of fiduciary duty by corporate directors; noting that at the time, there was no persuasive California authorities that would compel the court to apply a

EXHIBIT ___1___
PAGE ___41___

2. **Mattel's First, Eleventh, and Thirteenth Counterclaims,
as well as a portion of its Twelfth Counterclaim, are time-
barred by their respective three-year statutes of limitations**

(a) **Mattel's claim for copyright "infringement" is time-barred**

Mattel's First Counterclaim asserts a claim for copyright infringement under the Copyright Act, 17. U.S.C. §§ 101, *et seq.* (SAA ¶¶ 82-87.) This claim is governed by a three-year statute of limitations. 17 U.S.C. § 507(b); see also Roley, 19 F.3d at 481. Because Mattel was on notice of its copyright claim as early as February 2001 (UF ¶¶ 32-36), its copyright claim expired by February 2004 and was time-barred before Mattel filed the '04 Complaint in April 2004, the earliest pleading in this litigation. See Polar Bear Prod., 384 F.3d at 707 (attendance at a trade show is sufficient "discovery" to start the statute of limitations on a claim of copyright infringement); cf. Watermark Publrs. v. High Tech. Sys., Inc., 1997 WL 717677, 44 U.S.P.Q.2d 1578, 1582-83 (S.D. Cal. 1997) (copyright statute of limitations started running once plaintiff's sole proprietor saw the allegedly infringing map and made a mental note that the map infringed plaintiff's copyright).

Mattel has represented to the Court that the statute of limitations on its copyright infringement claim is not an absolute bar, but rather a "rolling statute" that allows recovery for infringing acts occurring within three years of filing suit "even if a plaintiff knew of the infringement more than three years before suit was filed." (Reply of Plaintiff Mattel, Inc. to Opposition of MGA to Motion for Leave to File Amended Complaint, dated December 28, 2006, at 10.) However, the "rolling" statute concept is inapplicable for infringement claims that, at their core, are actually claims for copyright ownership, as "[a] claim for copyright ownership is barred three years from the 'plain

different statute of limitations). If fraud-based, Mattel's aiding and abetting claims would be governed by a three-year statute of limitations and thus expire no later than March 2005, before MGA filed its '05 Action. Civ. Proc. Code § 338; see also (UF ¶¶ 27-30, 52-64) (collecting evidence demonstrating that Mattel was on notice of MGA and Larian's actions vis-à-vis Bryant and his creation of BRATZ no later than March 2002). Thus, Mattel's aiding and abetting claims could be saved only by "relation-back" to the '04 Complaint, which, as shown below, is not available to Mattel here. (Infra Section I.C.) Moreover, Mattel's notice of its potential claims could date back as early as February 2001 (UF ¶¶ 32-36); in that case, its aiding and abetting claims would have expired by February 2004, and none of the pleadings filed in this litigation could then revive them via the "relation-back" rules.

EXHIBIT ___1___
PAGE ___42___

and express repudiation' of copyright ownership" by another. <u>Welles v. Turner Enter. Co.</u>, 503 F.3d 728, 734 (9th Cir. 2007).

"[I]t has been established that the statute of limitations cannot be defeated by portraying an action as one for infringement when copyright ownership rights are the true matter at issue." <u>Minder Music Ltd. v. Mellow Smoke Music Co.</u>, 1999 WL 820575, 52 U.S.P.Q. 2d 1700, 1701 (S.D.N.Y. 1999) (rejecting "plaintiff['s] attempts to portray its [ownership] claim as one for an ongoing infringement"), <u>citing</u> <u>Netzer v. Continuity Graphic Assocs., Inc.</u>, 963 F. Supp. 1308, 1315 (S.D.N.Y. 1997). The principle underlying this rule is the fact that where the gravamen of a claim is the creation and ownership, rather than the defendant's use of the disputed property, then the ownership claim accrues when defendant repudiates plaintiff's ownership rights, rather than accruing repeatedly with each of defendant's uses. <u>See</u> <u>Zuill v. Shanahan</u>, 80 F.3d 1366, 1371 (9th Cir. 1996).

Here, as the central issue is whether Bryant's creation of the BRATZ dolls belongs to Mattel – as opposed to MGA, Mattel's claim for copyright infringement is simply a claim for copyright ownership in a not-so-clever disguise.[28] To wit, should MGA prove to be the rightful owner of the copyright in question, Mattel's infringement claim would disappear. <u>See</u> <u>Weissmann v. Freeman</u>, 868 F.2d 1313, 1318 (2d Cir. 1989). Indeed, even where a plaintiff pleads his claim as one for infringement, where, as here, the plaintiff would have to "unseat" the defendant from its position as apparent owner of the copyright, the courts recognize that the gravamen of such a claim is really ownership, and not infringement, and apply the statute of limitations to bar and not just limit the claim. <u>See, e.g.</u>, <u>Minder Music</u>, 1999 WL 820575, 52 U.S.P.Q. 2d at 1702-3; <u>Barksdale v. Robinson</u>, 211 F.R.D. 240, 245-46 (S.D.N.Y. 2002). Notably, Mattel's claims here are substantively similar to the claims asserted in <u>Big East Entm't, Inc. v. Zomba Enters., Inc.</u>, 453 F. Supp. 2d 788 (S.D.N.Y. 2006), wherein plaintiff argued that it owned rights to certain musical compositions, which were allegedly created under a broad "Artist

---

[28]    Even if Mattel is viewed as asserting <u>both</u> a copyright ownership claim and a copyright infringement claim, the timeliness of the infringement claim is dependent on the timeliness of the ownership claim: "When claims for both infringement and ownership are alleged, the infringement claim is timely only if the corresponding ownership claim is also timely." <u>Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC</u>, 477 F.3d 383, 389-90 (6th Cir. 2007).

EXHIBIT    1
PAGE    43

1 | Agreement" between the plaintiff's predecessor and the compositions' authors; at the
2 | same time, defendant claimed that it received the rights from the authors themselves.
3 | The <u>Big East</u> court held that the infringement claim before it was nothing but a claim for
4 | sole ownership and dismissed it as time-barred, since it was brought more than three
5 | years after defendant's assertion of the sole ownership in the compositions at issue. <u>See</u>
6 | <u>id.</u> at 795-96. Since the core of this action is Mattel's claim for ownership of BRATZ,
7 | the "rolling" statute theory cannot apply.

8 | Additionally, aside from the reasons for non-application of the "relation-back"
9 | rules set forth below (<u>infra</u> Sections I.C.-D.), Mattel's First Counterclaim is unique in
10 | that it may not relate back to any pleading filed prior to October 30, 2006, when Mattel
11 | obtained registrations of its alleged copyright in BRATZ.  (UF ¶ 80.)  This is because a
12 | copyright registration is a jurisdictional prerequisite for Mattel to maintain its copyright
13 | claims, and "relation-back" rules cannot supplant jurisdictional standing.  <u>See Miguel v.</u>
14 | <u>Country Funding Corp.</u>, 309 F.3d 1161, 1165 (9th Cir. 2002) (rules governing "relation-
15 | back" of claims "may not be used to extend federal jurisdiction").[29]  Because Mattel's
16 | copyright infringement claim thus may not relate back to any pleadings filed in either of
17 | the '04 or the '05 Actions, it must be dismissed as time-barred.  <u>Cf. Brewer-Giorgio v.</u>
18 | <u>Producers Video, Inc.</u>, 216 F.3d 1281, 1285 (11th Cir. 2000) (plaintiff cannot amend its
19 | complaint to add copyright claims where plaintiff failed to register its copyrights prior
20 | to filing of the original complaint, and the statute of limitation expired before the
21 | registration); <u>Country Road Music, Inc. v. MP3.com, Inc.</u>, 279 F. Supp. 2d 325, 332-33

22 |

---

23 | [29]    Cf. <u>In re Literary Works in Elec. Databases Copyright Litig.</u>, 509 F.3d 116, 125 n.5
24 | (2nd Cir. 2007) ("a copyright claim does not exist absent registration or preregistration-and the
   | law is clear that courts lack subject matter jurisdiction over claims that Congress has specified
25 | do not yet exist"). <u>See also Loree Rodkin Mgmt. Corp. v. Ross-Simons, Inc.</u>, 315 F. Supp. 2d
   | 1053, 1055 (C.D. Cal. 2004) (there is no federal jurisdiction for a copyright claim prior to
26 | registration), <u>citing, inter alia, Ryan v. Carl Corp.</u>, 1998 WL 320817, at *2 (N.D. Cal. Jun. 15,
   | 1998); <u>Brush Creek Media, Inc. v. Boujaklian</u>, 2002 WL 1906620, at *4 (N.D. Cal. Aug. 19,
27 | 2002); <u>Ashlar Inc. v. Structural Dynamics Research Corp.</u>, 1995 WL 639599, 36 U.S.P.Q.2d
   | 1402, 1405-06 (N.D. Cal. 1995) (defendant's counterclaim for copyright infringement must be
28 | dismissed, since registration of copyright was not effected before counterclaim's filing), <u>citing</u>
   | <u>Int'l Trade Mgmt., Inc. v. United States</u>, 553 F. Supp. 402, 402-03 (Cl. Ct. 1982) (Kozinski, J.)

EXHIBIT _____1_____
PAGE _____44_____

(S.D.N.Y. 2003) (copyright infringement claim does not relate back to original complaint where plaintiff failed to register copyright within the limitations period).

### (b)    Mattel's claim for conversion is time-barred and cannot be saved by any "relation-back" rules

Mattel's Eleventh Counterclaim asserts a cause of action for conversion under California law. (SAA ¶¶ 155-162.) This claim is governed by a three-year statute of limitations. Cal. Civ. Proc. Code § 338(c); AmerUS Life Ins. Co. v. Bank of Am., N.A., 143 Cal. App. 4th 631, 639 (2006); Strasberg v. Odyssey Group, Inc., 51 Cal. App. 4th 906, 916 (1996). The California discovery rule does <u>not</u> apply to a claim for conversion; rather, "the statute of limitations for conversion is triggered by the act of wrongfully taking property." AmerUS Life, 143 Cal. App. 4th at 639, quoting Bono v. Clark, 103 Cal. App. 4th 1409, 1433 (2002). Here, the statute of limitations for the portion of Mattel's conversion claim to be adjudicated in Phase I – i.e., Mattel's conversion claim based on Bryant's purported theft of Mattel's proprietary drawings – was thus triggered no later than October 2000, when Bryant left Mattel.    (Bryant Br. at II.C.) [30] Consequently, Mattel's conversion claim expired no later than October 2003, six months before Mattel's filing of the '04 Complaint. Since there is no pleading filed within the limitations period that could revive Mattel's conversion claim via "relation-back" rules, Mattel's conversion claim is time-barred.

### (c)    Mattel's common law unfair competition claim is time-barred

Mattel's Twelfth Counterclaim asserts two different causes of action: a claim for

---

[30]    While Mattel may argue that the facts of conversion were fraudulently concealed from it and, therefore, the statute of limitations could not start until it was on notice of these facts, cf. AmerUS Life, 143 Cal. App. 4th at 639, this would not help Mattel, since, as shown above, Mattel was on notice of the facts at issue as early as February 2001. (UF ¶¶ 32-36); see also StreamCast, Mem. Op. at 18 (the fraudulent concealment doctrine does not apply to plaintiff's claim for conversion where plaintiff was on notice of its potential claim), citing Snapp & Assocs. Ins. Servs., Inc. v. Robertson, 96 Cal. App. 4th 884, 891 (2002). Under this scenario then, the claim expired as early as February 2004 – before Mattel filed its '04 Complaint in April 2004; therefore, "relation-back" rules would not revive Mattel's claim, even if these rules applied here (and, as shown below, they do not, see infra Sections I.C.-D.). Alternatively, even if Mattel was on notice of the claim as late as March 2002, the conversion claim would have expired no later than March 2005 – before MGA filed its '05 Action. Then, Mattel's conversion claim could be saved only by "relation-back" to the '04 Complaint, which, as shown below, is not available to Mattel here. (See infra Section I.C.)

PAGE    45

common law unfair competition under California law and a claim for statutory unfair competition under Cal. Bus. & Prof. Code § 17200, *et seq.* (SAA ¶ 165.) Mattel's claim for common law unfair competition is a tort that sounds in fraud. See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 192-93 (1999) (Kennard, J., concurring in part and dissenting in part), citing, inter alia, Weinstock, Lubin & Co. v. Marks, 109 Cal. 529, 541 (1895) (principles of unfair competition "apply to all cases where fraud is practiced by one in securing the trade of a rival dealer; and these ways are as many and as various as the ingenuity of the dishonest schemer can invent"); see also Trovan, Ltd. v. Pfizer, Inc., 2000 WL 709149, at *6 (C.D. Cal. May 24, 2000) ("At present, 'the common law tort of unfair competition is generally thought to be synonymous with the act of passing off one's goods as those of another.'"), citing Bank of the West v. Sup. Ct., 2 Cal. 4th 1254, 1263 (1992).

Claims sounding in fraud are governed by a three-year limitations period. See Cal. Civ. Proc. Code § 338(d). Since, as shown above, Mattel was on notice of the facts underlying its common law unfair competition claim to the extent it relates to the issue of ownership of BRATZ as early as February 2001,[31] this claim expired by February 2004 – before Mattel filed its '04 Complaint in April 2004, which makes any revival by "relation-back" rules simply impossible. Alternatively, even if the claim accrued as late as March 2002, it would have expired by March 2005 – before MGA initiated its '05 Action in April 2005. In this case, the claim could only be revived by "relation-back" to the '04 Complaint, which, as shown below, does not apply here. (See infra Section I.C.) Therefore, Mattel's common law unfair competition claim is time-barred.[32]

---

[31] (UF ¶¶ 32-36.) The only alleged link between Mattel's unfair competition claim and Phase I is Mattel's allegations concerning MGA's commercial bribery of Bryant, which arises from MGA's role in Bryant's departure from Mattel and his development of BRATZ. It is, however, unclear whether there are any unfair competition claims in Phase I as against Larian. (See SAA ¶ 165 (asserting "MGA's commercial bribery of Bryant" as the only ownership-related issue underlying its unfair competition claims) (emphasis added).)

[32] Even if the Court were to apply the same statute of limitations here as is applicable to a claim for statutory unfair competition, Cal. Bus. & Prof. Code § 17208, which is a four-year statute, its common law unfair competition claim would still be time-barred. Assuming "discovery" rule would apply (it does not apply to claims for statutory unfair competition, as shown below), Mattel was on notice of its claims as early as February 2001, (UF ¶¶ 32-36); therefore, its common law unfair competition claim would then have expired as early as February 2005 – i.e., before MGA initiated the '05 Action in April 2005. This claim could thus be saved only by "relation back" to the '04 Complaint, which, as shown below, does not apply

EXHIBIT __1__

PAGE __40__

### 3.   Mattel's remaining portion of its Twelfth Counterclaim for statutory unfair competition is time-barred by a four-year statute of limitation

Mattel's remaining portion of the Twelfth Counterclaim is for statutory unfair competition under California Business and Professions Code Section 17200, *et seq.* (SAA ¶¶ 163-66), and is governed by a four-year statute of limitations. Cal. Bus. & Prof. Code § 17208; Cortez v. Purolator Air Filtration Prods. Co., 23 Cal. 4th 163, 178-79 (2000). The discovery rule does <u>not</u> apply to this claim; therefore, the statute begins to run when the cause of action accrues.[33]  Since the crux of the underlying violations alleged in support of Mattel's statutory unfair competition claims occurred by October 2000, when Bryant left Mattel's employ and took the BRATZ concept to MGA, Mattel's statutory competition claim expired no later than October 2004 – <u>i.e.</u>, half a year <u>before</u> MGA filed its '05 Action. Thus, this claim is also time-barred and subject to dismissal, unless it relates back to the '04 Complaint (which it does not[34]).

### 4.   Mattel's claim for declaratory relief is time-barred

Mattel's Thirteenth Counterclaim is for declaratory relief. (SAA ¶¶ 167-170.) By

here. (See <u>infra</u> Section I.C.) Alternatively, even if the Court were to find that the claim accrued no later than March 2002 (UF ¶¶ 57-64), Mattel's unfair competition claim against Larian (to the extent asserted in Phase I, <u>see</u> <u>supra</u> n.31) would still be subject to dismissal, as it would have expired no later than March 2006 – <u>i.e.</u>, more than half a year before it was asserted on November 20, 2006. Because, as shown below (<u>see</u> <u>infra</u> Sections I.C.-D.), Mattel's claims against Larian cannot relate back to either the '04 Complaint or the '05 Answer, its common law unfair competition claim would thus be time-barred.

[33]   See In re Conseco Ins. Co. Annuity Marketing & Sales Practices Litig., 2007 WL 486367, at *6 (N.D. Cal. Feb. 12, 2007) ("The 'discovery rule,' which delays accrual of certain causes of action until the plaintiff has actual or constructive knowledge of facts giving rise to the claim, does not apply to unfair competition actions."), <u>citing</u> Snapp & Assocs., 96 Cal. App. 4th at 891 (discovery rule does not apply to unfair competition claims); Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd., 909 F. Supp. 1353, 1363 (C.D. Cal. 1995) ("[T]he 'discovery rule' ... is inapplicable on this count [for statutory unfair competition]; thus, the statute begins to run when cause of action accrues, irrespective of whether plaintiff knew of its accrual"), aff'd, 113 F.3d 1258 (Fed. Cir. 1997).

[34]   See infra Section I.C. Should the Court apply the "discovery" rule here, such application would result in either of the following two scenarios: (1) if Mattel was on notice of its claim by February 2001 (UF ¶¶ 32-36), then the claim would have expired by February 2005; in that case, the claim could be saved only by "relation-back" to the '04 Complaint, which, as shown below (see infra Section I.C.), does not apply here; or (2) if the accrual date was no later than March 2002 (UF ¶¶ 57-64), then Mattel's statutory unfair competition claim as asserted against Larian, to the extent such is asserted in Phase I, see supra n.31, would still fail, because it would have accrued no later than March 2006 and, as shown below, would not be saved by relating back to either the '04 Complaint or the '05 Answer (see infra Sections I.C.-D.).

EXHIBIT ___I___
PAGE ___47___

1   this claim, Mattel seeks a declaration that MGA and Larian have no valid ownership

2   rights in BRATZ, that Mattel is the true owner of the same, and any agreements between

3   Bryant and MGA assigning the rights in BRATZ are void. (Id. ¶¶ 169-170.)

4       "[D]eclaratory relief is available as a remedy in cases involving various rights and

5   obligations, and the governing statute will be the one applicable to an ordinary legal or

6   equitable action based on the same claim." Engstrom v. Kallins, 49 Cal. App. 4th 773,

7   784 (1996), citing 3 B.E. Witkin, California Procedure: Actions § 475, pp. 506-507 (3d

8   ed. 1985).   See also Booth v. Quantum3D, Inc., No. C. 04-5376 EMC, 2005 WL

9   1512138, at *9 (N.D. Cal. June 15, 2005) (on declaratory judgment action, "suit is time-

10  barred if the applicable limitations period has run on a direct claim to obtain such

11  relief."); accord Levald, Inc. v. City of Palm Desert, 998 F.2d 680, 688 (9th Cir. 1993).

    The time of accrual similarly coincides: "If a breach has occurred, and the appropriate

12  statute has begun to run on an ordinary suit for 'coercive relief' either in contract or tort,

13  or legal or equitable, the same statute begins to run at the same time on the declaratory

14  remedy, and both causes of action are extinguished at the same time." 3 B.E. Witkin,

15  California Procedure: Actions, § 625, at 804 (4th ed. 1996). Here, Mattel essentially

16  seeks a declaration along the lines of its copyright infringement and conversion claims.

17  As shown above, these claims are time-barred. Thus, Mattel's declaratory relief claim is

18  also time-barred.

19      **C.    As MGA And Larian Are New Parties In The '04**
            **Action, And Were Not Omitted by "Mistake",**
20          **The '04 Complaint Cannot Save Mattel's Claims**

21      As Mattel's claims are time-barred, they survive only if they relate back to the '04

22  Complaint.[35] See generally Percy v. San Francisco Gen. Hosp., 841 F.2d 975, 979 (9th

23  ────────────────────────
    [35]     As shown above, all of Mattel's claims against MGA and Larian expired prior to the
    filing of the '05 Action; therefore, the '04 Complaint is the only pleading that could
24  conceivably revive Mattel's claims. (See supra Section I.B.) Consequently, even though MGA
    was not a new party to the '05 Action, Mattel's claims against it are still subject to dismissal as
25  time-barred. See Papenthien v. Papenthien, 16 F. Supp. 2d 1235, 1240-41 (S.D. Cal. 1998)
    (amended complaint did not relate back to filing of original complaint, where the original
26  complaint was "dead on arrival" because it was untimely); see also Henderson v. Bolanda, 253
    F. 3d 928, 932 (7th Cir. 2001) ("[E]ven though it was based on the same conduct as that set
27  forth in the original complaint, ... [plaintiff]'s amended complaint may not relate back to the
    date the original complaint was filed. The prior complaint, having been itself filed after the
28  expiration of the one-year statute of limitations for the claims which it contained, was a nullity.
    That complaint cannot then act as a life-line for a later complaint."). Moreover, as for Larian,

────────────────────────

EXHIBIT ___1___

PAGE ___48___

1  Cir. 1988); Davaloo v. State Farm Ins. Co., 135 Cal. App. 4th 409, 415 (2005). At the

2  same time, the '04 Complaint could provide no relief for Mattel's claims governed by

3  their respective two- or three-year statutes of limitations, since, as shown above, these

4  claims had expired before Mattel filed the '04 Complaint in April 2004. (Supra at pp.

5  20-27, 28-29.) Mattel's copyright infringement claim similarly expired before the '04

6  Complaint was filed and, in any event, cannot relate back to any pleading filed before

7  Mattel registered its copyrights in October 2006. (UF ¶ 80.) Therefore, only Mattel's

8  claims governed by a four-year statute of limitations and accrued under the delayed

9  "discovery" rule, if any, conceivably could be saved by the '04 Complaint.

10  As the procedural summary set forth above demonstrates (supra at pp. 13-15),

11  neither MGA nor Larian were named as defendants in the '04 Complaint. See Union

12  Pacific R.R. Co. v. Nevada Power Co., 950 F.2d 1429, 1432 (9th Cir. 1991) (for

13  purposes of the "relation-back" doctrine, "[w]e differentiate between pleadings

14  attempting to amend *claims* from those seeking to amend *parties*. Amendments seeking

15  to add claims are to be granted more freely than amendments adding parties."). Thus, for

16  Mattel's time-barred claims to survive, they must satisfy the "relation-back" rules for

17  new or additional parties – i.e., the requirements of Rule 15(c) of the Federal Rules of

18  Civil Procedure for Mattel's copyright claim and the "Doe" defendant procedure under

19  California law for Mattel's state law claims. See Kilkenny v. Arco Marine Inc., 800 F.2d

20  853, 856 (9th Cir. 1986) ("Because the statute of limitations period expired prior to

21  [plaintiff]'s filing of the amended complaint, rule 15(c), Fed.R.Civ.P., is the only

22  procedural avenue by which [plaintiff]'s original complaint may be amended to add

23  additional parties.") (emphasis added); McGee St. Prods. v. Workers' Comp. Appeals

24  Bd., 108 Cal. App. 4th 717, 724-25 (2003) ("[T]he amendment here involves new party

25  defendants. ... [W]e refer to the familiar rule that under the Code of Civil Procedure, a

26  complaint may not be amended to add a new defendant after the statute of limitations

27  has run. The only exception to this rule is when the original complaint states a cause of

28

---

as shown below, the '05 Action is of no help to Mattel for yet another reason: Larian was not a plaintiff in that action at the time Mattel asserted its counterclaims against him. (See infra Section I.D.)

EXHIBIT ___1___
PAGE ___49___

1  action against a Doe defendant and the plaintiff is unaware of the true identity of that

2  party at the inception of the suit.") (emphasis added).[36]

3       Under Rule 15(c) of the Federal Rules of Civil Procedure, an amendment adding

4  claims against a new defendant may not relate back to an earlier pleading unless that

5  defendant "should have known that, but for a mistake concerning identity, the action

6  would have been brought against it." In re Syntex Corp. Sec. Litig., 855 F. Supp. 1086,

7  1099 (N.D. Cal. 1994) ("[s]ince Plaintiffs do not contend that they made a mistake

8  concerning [defendants]'s identity, they are not entitled to take advantage of Rule

9  15(c)"), citing Louisiana-Pacific Corp. v. ASARCO, Inc., 5 F.3d 431, 434 (9th Cir. 1993)

10  (denial of "relation-back" was proper where plaintiff "knew perfectly well" the identity

11  of the potential defendant and "[t]here was no mistake of identity, but rather a conscious

12  choice of whom to sue"). The relevant inquiry focuses on when the plaintiff first had

13  notice of defendant's correct identity, not on when the plaintiff first had notice of the

14  defendant's culpability. See Syntex Corp., 855 F. Supp. at 1099; see also In re Network

15  Assocs., Inc. II Sec. Litig., 2003 WL 24051280, at *8 (N.D. Cal. Mar. 25, 2003)

16  ("Relation back is only allowed for a mistake in identity, not liability."), citing

17  Louisiana-Pacific Corp., 5 F.3d at 434. Furthermore, plaintiff's "lack of knowledge

18  regarding the identity of a proper party does not constitute mistake" for purposes of

19  "relation-back" under Rule 15(c). Butler v. Robar Enterprises, Inc., 208 F.R.D. 621, 623

20  (C.D. Cal. 2002) (collecting authority).

21       Consequently, where a plaintiff is aware of the potential defendant's identity at

22  the time the original complaint is filed but is uncertain whether the potential defendant

23  may be found liable, the amendment to add that defendant – i.e., the defendant that

24  plaintiff had known of from the outset – is never allowed. See Gilmore v. State of Cal.,

25  1995 WL 492625, at *2 (N.D. Cal. Aug. 10, 1995); see also Brink v. First Credit

26  Resources, 57 F. Supp. 2d 848, 856 (D. Ariz. 1999); cf. Pembroke, By and Through

---

[36]  The necessity of utilizing the "Doe" defendant procedure under California law is further
underscored by the fact that California generally does not allow "relation-back" of claims
against new defendants. See Barrington v. A.H. Robins Co., 39 Cal. 3d 146, 150 (1985) (under
California law, for an amended complaint to "relate back" to the original complaint, it must,
inter alia, "[s]eek recovery against the same defendants"), receded from on other grounds by,
Norgart v. Upjohn Co., 21 Cal. 4th 383 (1999).

EXHIBIT ___1___

PAGE ___50___

1  Pembroke v. City of San Rafael, 1994 WL 443683, at *3 (N.D. Cal. Aug. 2, 1994) (no

2  "relation-back" of claims asserted against new defendants where the defendants'

3  identities were publicly available before plaintiff filed her original complaint).

4      Similarly, where plaintiff is unaware of a potential defendant or its identity at the

5  time the complaint is filed, learns of the potential defendant within the time established

6  in the statute of limitations, but seeks to add that defendant only after the statute of

7  limitations has expired, relation back also fails. See Kilkenny, 800 F.2d at 857 (plaintiff

8  was not allowed to amend after the statute of limitations had run when she was notified

9  of potential defendants in the named defendant's answer to the complaint and the answer

10 was filed within the limitations period). As the Ninth Circuit explains, Rule 15(c) is not

11 served by allowing the plaintiff to amend the complaint in these situations, explaining:

> Rule 15(c) was intended to protect a plaintiff who <u>mistakenly names</u> a
> party and then discovers, after the relevant statute of limitations has run,
> the identity of the proper party. Rule 15(c) was <u>never intended</u> to assist a
> plaintiff who <u>ignores or fails to respond in a reasonable fashion to notice of
> a potential party</u>, nor was it intended to permit a plaintiff to engage in
> piecemeal litigation.

15 Id. at 857-8 (emphasis added). In other words, Rule 15(c) gives no relief to a plaintiff

16 who tactically decides to omit a party from the original pleading – the same party that

17 plaintiff later seeks to add by amendment. See Brink, 57 F. Supp. 2d at 856.

18      California procedure for "relation-back" of claims against parties substituted as

19 "Doe" defendants is similar in that it precludes such a substitution where plaintiff was

20 aware of the proposed "Doe" defendant identity and was on notice of the facts

21 underlying his alleged liability at the time the original pleading was filed. See Scherer v.

22 Mark, 64 Cal. App. 3d 834, 840-841 (1976) (when it appears that plaintiff knew both the

23 person's identity and the facts giving rise to liability when the complaint was filed, but

24 did not name him, that person cannot be served as a "Doe" defendant after the statute of

25 limitations has run); see also McGee St. Prods., 108 Cal. App. 4th at 725-26; cf. Dover v.

26 Sadowinski, 147 Cal. App. 3d 113 (1983) (no "relation-back" where plaintiff knew all

27 along that the defendant in question was involved in the underlying controversy, albeit

28 he did not know "how deeply" the defendant was involved). Plaintiff cannot feign

ignorance to avail itself of the "Doe" procedure: where the information concerning the

additional defendants is readily available to plaintiff, "there [is] no good faith, bona fide

EXHIBIT _____/_____

PAGE _____51_____

ignorance as required" underlying plaintiff's failure to name the defendants. Woo v. Superior Court, 75 Cal. App. 4th 169, 180 (1999).

Here, there was no mistake in identity of either MGA or Larian at the time Mattel filed its '04 Complaint nor was there lack of notice as to their involvement in the development of the BRATZ, starting with their retention of Bryant in October 2000. Indeed, Mattel freely admits that it had specific knowledge of Bryant's October 2000 agreement *half a year* before it filed the '04 Complaint and thus was well aware of the key facts underlying its current claims. (SAA ¶ 36 (admitting that as of November 24, 2003, Mattel had in its possession "a copy of Bryant's agreement with MGA which showed that the date of Bryant's agreement with MGA predated Bryant's departure from Mattel").) Thus, Mattel knew only too well about MGA and its involvement with Bryant months before it filed the '04 Action. Even aside from Mattel's November 2003 receipt of Bryant's agreement with MGA, the success of MGA's BRATZ concept and Larian's role as the leading man behind that success was so widely publicized ever since the BRATZ came out in the summer of 2001 that Mattel could escape that knowledge only if it turned a deaf ear and a blind eye to all that press. (UF ¶¶ 33, 35-36, 40 & 45-46.)

In any event, Mattel was on notice of MGA and Larian's involvement with Bryant and their role in Bryant's development of BRATZ by March 2002 – i.e., *more than two years* prior to Mattel's filing of the '04 Action.[37] This also proves that Mattel was not in any way "mistaken" in MGA or Larian's identity or lacked sufficient facts to suspect them of the alleged wrongdoings that now form the basis for Mattel's claims. Rather, for the reasons known only to Mattel, it made a strategic choice to omit these defendants from the '04 Complaint. Therefore, to the extent "relation-back" to the '04 Complaint could save Mattel's time-barred claims, it cannot apply.

**D.    The '05 Action Cannot Revive Mattel's Claims Against Larian**

As shown above, all of Mattel's claims expired by the time the '05 Action was

---

[37]    Supra Section I.A. Notably, the Incident Report that started the March 15, 2002 investigation mentions Larian by name. (Ex. 29 (reciting information received, including that "a person known as Isaac … has recently hired a number of former Matel [sic] employees and is manufacturing products that appear to be Mattel designs").)

EXHIBIT ____ 1

PAGE ___ 52

1  filed (supra Section I.B.), and thus relation back to Mattel's '05 Answer is irrelevant.

2  For the sake of argument, however, if any of the claims asserted by Mattel could be

3  saved if they related back to the '05 Answer, all of the claims against Larian still would

4  fail because Larian was not a party to that action at the time Mattel asserted

5  counterclaims against him. (See MGA's Complaint in the '05 Action (MGA is the sole

6  plaintiff).)

7    Since, for purposes of Mattel's counterclaims as maintained against Larian in the

8  '05 Action, Larian is an entirely new party, the claims against him cannot stand because

9  they are improper under federal law and do not relate back under California law.  Under

10  Rule 13 of the Federal Rules of Civil Procedure, a counterclaim "must be against an

11  'opposing party.'"  In re Adbox, Inc., 488 F.3d 836, 840 (9th Cir. 2007), citing

12  Fed.R.Civ.P. 13(a) & (b).  A stranger to litigation is not an opposing party under Rule 13.

13  See, e.g., Charter Oak Fire Ins. Co. v. Bokharian Jewish Cmty. Ctrs., Inc., 2002 WL

14  59420, at *3 (S.D.N.Y. Jan. 16, 2002) (counterclaims asserted against a third party "are

15  not against an opposing party as required by Rule 13.... Simply put, [the third party at

16  issue] is not a party to this action and, therefore, cannot possibly be an opposing party.").

17  In turn, California law precludes "relation-back" of counterclaims filed against a new

18  party. See Boyer v. Jensen, 129 Cal. App. 4th 62, 70 (2005); 3 B.E. Witkin, California

19  Procedure: Actions § 421, 529-31 (4th ed. 1996) ("where the cross-complaint is

20  against ... new parties, the statute is not tolled by the commencement of the plaintiff's

   action").[38] As one California court explained,

21      The principle underlying the rule that a statute of limitations is suspended
        by the filing of the original complaint is that the plaintiff has thereby
        waived the claim and permitted the defendant to make all proper defenses
22      to the cause of action pleaded. But, where the controversy is limited to
        cross-defendants [which are equivalent to counter-defendants in federal
23      court], none of whom has done any act in the nature of a waiver the reason
        for the rule does not exist.

24  Trindade v. Super. Ct., 29 Cal. App. 3d 857, 859-60 (1973).

25    Therefore, because Larian is not a plaintiff in the '05 Action, Mattel's time-barred

26  ─────────────
    [38]    The rule is the same as applied to "relation-back" to Mattel's original answer, as
27  opposed to MGA's original complaint. Cf. 3 B.E. Witkin, California Procedure: Actions, § 426
    at 535 (4th ed. 1996) ("The relation back doctrine should apply to an amended compulsory
28  cross-complaint in the same manner as to an initial cross-complaint."), discussing Sidney v.
    Super. Court, 198 Cal. App. 3d 710 (1988).

EXHIBIT ___1___

PAGE ___53___

counterclaims against him cannot be revived by relating back to that action.

## II.    MATTEL'S CONVERSION, INTENTIONAL INTERFERENCE WITH CONTRACT, AND UNFAIR COMPETITION CLAIMS ARE PREEMPTED BY THE COPYRIGHT ACT

Mattel's conversion, intentional interference with Bryant's contract with Mattel, and unfair competition with respect to MGA and Larian's alleged infringement of copyrightable material claims against MGA and Larian are preempted by the Copyright Act. Section 301 of the Copyright Act establishes a two-part test for preemption. First, the subject work must fall within the subject matter of copyright, as defined in Sections 102 and 103 of the Copyright Act. 17 U.S.C. § 301(a). Second, the rights granted under state law must be "equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 [of the Copyright Act]." Id.; see generally Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 792 (2003) (reciting preemption test); 1 M. Nimmer & D. Nimmer, Nimmer on Copyright § 1.01[B][1] (2007) (hereafter, "Nimmer"). Mattel's conversion, intentional interference with contract, and unfair competition claims against MGA and Larian implicate material within and rights equivalent to the Copyright Act's exclusive protective grasp.

### A.    The BRATZ concept falls within Copyright Act's scope

The expressions of the BRATZ concept, in both its drawn and sculptural forms, falls within the Copyright Act's exclusive purview. Section 102 of the Copyright Act provides protection for "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102. This includes "pictorial, graphic and sculptural works," such as "two-dimensional works of fine, graphics, and applied art ... technical drawings, diagrams, [and] models." 17 U.S.C. § 101. It is the effort expended to create drawings – tangible works of authorship – that is within the scope of copyright protection. See Del Madera Props. v. Rhodes & Gardner, Inc., 820 F.2d 973, 976-77 (9th Cir. 1987), overruled on other grounds by, Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994); Universal City Studios, Inc. v. J.A.R. Sales, Inc., 1982 WL 1279, 216 U.S.P.Q. 679, 680 (C.D. Cal

EXHIBIT ___
PAGE ___ 54

1982) ("dolls are protected both as derivative works and as copyrightable subject matter in their own right"). Ownership of Bryant's original works of authorship (i.e., the BRATZ drawings) is at the heart of Mattel's counterclaims and, therefore, such claims clearly implicate subject matter within the Copyright Act's protective scope.

**B.**  **Mattel's conversion, intentional interference with contract, and unfair competition claims fail to meet the "extra element" test**

State law claims that contain different elements from their copyright counterparts are preempted unless they contain an "extra element" that is qualitatively different from a copyright infringement claim, and that changes not just the scope of the right, but its nature as well. See Motown Record Corp. v. Hormel & Co., 657 F. Supp. 1236, 1240 (C.D. Cal. 1987). As the gravamen of Mattel's suit is the alleged infringement of copyrightable material, Mattel's claims for conversion, intentional interference with contract, and unfair competition are preempted by the Copyright Act.

**1.**  **Mattel's conversion claim**

California courts consistently hold that conversion claims are preempted by the Copyright Act when they arise from the reproduction, copying and misuse of material falling within the general subject matter scope of the Act. See, e.g., Melchior, 106 Cal. App. 4th at 794 ("The tort of conversion does not apply to ideas."). For instance, in Meridian Project Sys., Inc. v. Hardin Constr. Co., 2006 WL 1062070, 79 U.S.P.Q.2d 1691, 1693 (E.D. Cal. Apr. 21, 2006), plaintiff asserted a claim for conversion of the non-copyrightable aspects of its project management software. In granting defendant's motion to dismiss the conversion claim as preempted, the court reasoned that, as the subject matter of copyright is broader than the scope of copyright protection, plaintiff's conversion claim sought to enforce rights equivalent to those asserted in plaintiff's copyright claim. Id. at 1694.

This rule applies whether the conversion claim is based on the deprivation of an idea itself or the tangible medium in which it is expressed. In Dielsi v. Falk, 916 F. Supp. 985, 992 (C.D. Cal. 1996), plaintiff's conversion claim was based on the use and

EXHIBIT ___1___
PAGE ___55___

distribution of ideas expressed in a manuscript which plaintiff had given to defendant. In finding plaintiff's conversion claim was preempted, the court held that the conversion allegation "d[id] not add any additional element to the essential claim that Plaintiff's ideas were misappropriated by Defendants ... [because s]uch a claim is 'part and parcel' of a copyright claim." Id.

Although Mattel casts its conversion claim as seeking recovery of "tangible materials" (SAA ¶ 157 and at 76 ¶ 5), the focus of its claim is on the disgorgement of profits resulting from the alleged infringement of its copyrights (id. at 76-77). Plaintiff's semantic masquerade cannot save its claim – this action is not about tangible items Bryant allegedly converted[39] from Mattel, but about the BRATZ concept. Indeed, in Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1192-93 (C.D. Cal. 2001), the court held that, although plaintiffs alleged that there had been a conversion of tangible documents by defendants, "[p]laintiffs claim[ed] that Defendants somehow profited from information in those documents, and/or that this information was instrumental in the [alleged infringement]. It is therefore not the documents *themselves* which Plaintiffs claim as their 'property' which was wrongfully converted, but the *information* contained therein."

Mattel cannot save a claim for conversion of copyrightable material with language indicating that it instead seeks the restoration of the documents containing the genesis of the copyrightable concept. Where (1) the "crucial" allegation in the complaint involves the use and distribution of copyrighted work, as opposed to the deprivation of its tangible embodiment (Dielsi, 916 F. Supp. at 992; Harper & Row Publrs. v. Nation Enters., 723 F.2d 195, 201 (2d Cir. 1983) ("If unauthorized publication is the gravamen

---

[39]   Indeed, the items Bryant is alleged to have used in assembling the early BRATZ sculpts had been discarded by Mattel. Ex. 1 (Bryant) at 235:9-10 ("A. I think I remember it being placed in a hallway with a sign over it that said [basura]. Q. So you thought it was garbage? A. Yeah.")). Discarded material cannot be the subject of a conversion claim. Ananda Church of Self-Realization v. Mass. Bay Ins. Co., 95 Cal. App. 4th 1273, 1282 (2002) ("no claim for conversion or other interference with personal property rights may be based on the taking of documents placed in a trash can").

EXHIBIT ____1____
PAGE ____58____

of their claim, then it is clear that the right they seek to protect is coextensive with an exclusive right already safeguarded by the [Copyright] Act"), rev'd on other grounds by 471 U.S. 539 (1985)), and (2) the primary measure of damages is disgorgement of profits from the unauthorized use, reproduction or distribution of copyrighted works, the allegation is equivalent to a copyright claim. See Worth v. Universal Pictures, Inc., 5 F. Supp. 2d 816, 822 (C.D. Cal. 1997). As Mattel's "crucial" claim seeks the disgorgement of profits of MGA and Larian's use and reproduction of the BRATZ concept, Mattel's conversion claim is equivalent to its copyright infringement claim and is preempted.[40]

### 2.    Mattel's intentional interference with contract claim

The elements of awareness and intent in a claim of intentional interference with contract only alter the action's scope, not its nature, and, therefore, any such claims are preempted by the Copyright Act. See Harper, 723 F.2d at 201. In claims alleging intentional interference with a contract involving copyright, the enjoyment of the allegedly infringing use is "so intimately bound up with the right itself that it could not possibly be deemed a separate element." Id. Although Mattel pled an element resembling awareness, intent, or inducement apart from its copyright infringement claim, this "additional" element "goes merely to the scope of the right; it does not establish qualitatively different conduct on the part of the [allegedly] infringing party, nor a fundamental nonequivalence between the state and federal rights implicated." Id.

Mattel's Sixth Counterclaim for Intentional Interference with Contract offers all the same flavor as its copyright infringement claim in that it alleges (1) "MGA, Larian … knew that Bryant had assigned to Mattel, and was obligated to disclose to

---

[40]    Mattel may argue that because Judge Manella refused to find preemption of its conversion claims in connection with the briefing on remand, this Court should likewise reject MGA's preemption arguments. However, Judge Manella rejected defendant's conversion preemption argument because that complaint was "vague and generalized ... never mention[ed] what items or works Bryant allegedly converted." Mattel, Inc. v. Bryant, 441 F. Supp. 2d at 1093. Here, Mattel's Counterclaims specifically allege that Bryant converted "such proper[ty] [sic] and materials that were created by Bryant while he was a Mattel product designer." (See SAA ¶ 157.) Furthermore, Mattel's lynchpin counterclaim is for copyright infringement against MGA, Larian and Bryant. (See id. ¶¶ 82-87.) Thus, this Court's consideration of MGA and Larian's preemption argument would be based on entirely new allegations.

EXHIBIT ___1___
PAGE ___51___

Mattel all inventions, including designs and other works, created, conceived, or reduced to practice during their employment with Mattel," and that (2) "[d]espite such knowledge, Counter-defendants MGA, Larian … intentionally and without justification solicited, induced and encouraged the Mattel employees to breach their contracts with Mattel." (SAA ¶¶ 124-125.) This allegation does not add anything to Mattel's copyright claim, which similarly seeks to place liability on MGA and Larian for MGA's role in the alleged infringement. The addition of "elements such as awareness or intent may alter the scope of the action but not its nature." Motown Record, 657 F. Supp. at 1240 (intentional interference claim preempted by Copyright Act); see also Idema, 162 F. Supp. 2d at 1193; cf. Gemcraft Homes, Inc. v. Sumurdy, 688 F. Supp. 289, 295-6 (E.D. Tex. 1988) (claim for interference with contract preempted on allegations that defendants used copyrightable material).[41] As Mattel's lawsuit revolves around issues of infringement, its claim for intentional interference with contract is preempted.

### 3.   Mattel's unfair competition claims

Mattel's unfair competition claims are preempted because, to the extent they are not qualitatively different from a copyright claim, they are subsumed by federal copyright law. See Lanard Toys, Ltd. v. Novelty, Inc., 511 F. Supp. 1020, 1030-31 (C.D. Cal. 2007), citing Fisher v. Dees, 794 F.2d 432 (9th Cir. 1986).[42] This principle applies whether Mattel's claim under the Copyright Act ultimately fails. See Selby v. New Line Cinema Corp., 96 F. Supp. 2d 1053, 1058 (C.D. Cal. 2000) ("[T]he shadow actually cast by the Act's preemption is notably broader than the wing of its protection"). Thus, an unfair competition argument constructed upon the premises that copyrightable

---

[41]   Although Motown Record and Idema deal with interference with economic relations, they apply here as such claims undergo the same preemption analysis – focusing on the elements of intent and awareness – as interference with contract. See Kasparian v. County of Los Angeles, 38 Cal. App. 4th 242, 260 (1995) (interference with contract has been referred to as a species of the broader tort of interference with prospective economic relations); accord Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 381-391 (1995).

[42]   Mattel's common law unfair competition claim also is preempted. See Sony Pictures Ent. Inc. v. Fireworks Ent. Group, Inc., 156 F. Supp. 2d 1148, 1164 (C.D. Cal. 2001) (statutory and common law unfair competition claims treated the same for copyright preemption analysis).

EXHIBIT __1__
PAGE __58__

material was (1) owned by plaintiff, and (2) was misappropriated defendants, will be considered "part and parcel of the copyright claim." Del Madera, 820 F.2d at 977.

A recent decision of this District, Lanard Toys, Ltd. v. Novelty, Inc., 511 F. Supp. 2d at 1030-31, which involved a defendant supplier's allegedly infringing "knock-off" toys, granted defendants' summary judgment motion, holding that "plaintiffs may not allege a claim for unfair competition based on defendants' alleged infringement of its copyright." Furthermore, where a plaintiff specifically incorporates allegations made earlier in its complaint, such repetition is a sufficient basis for preemption. For instance, in Kodadek v. MTV Networks, Inc., the Ninth Circuit preempted plaintiff's unfair competition claim on the ground that its complaint "expressly base[d] his unfair competition claim on rights granted by the Copyright Act," because "the unfair competition claim incorporates by reference paragraphs from the copyright infringement claim." 152 F.3d 1209, 1212-13 (9th Cir. 1998) (emphasis added); see also Watermark Publrs., 1997 WL 717677, 44 U.S.P.Q.2d at 1582 (statutory unfair competition claim predicated on "the conduct alleged above" preempted).

Mattel also incorporated its infringement allegations into its unfair competition claim. Mattel's unfair competition claim specifically "repeats and realleges each and every allegation set forth in paragraphs 1 through 162, above, as though fully set forth at length." (SAA ¶ 163.) Furthermore, Mattel bases its unfair competition claim on MGA's "foregoing conduct." (Id. ¶ 165.) Naturally, this includes allegations of Bryant's purported copyright infringement (id. ¶¶ 21-36), which precede Mattel's unfair competition allegations. Claims of unfair competition predicated on ownership, misappropriation, and infringement of a copyright add no "extra element" to distinguish it from a copyright infringement claim. Del Madera, 820 F.2d at 977 ("[Plaintiff's] ownership of the material, and the alleged misappropriation by the defendants, are part and parcel of the copyright claim"). As the essence of Mattel's complaint is derived from MGA, Larian and Bryant's alleged unauthorized use of a copyrighted work, Mattel's unfair competition claim is preempted. See Motown Record, 657 F. Supp. at

EXHIBIT __l__
PAGE __59__

1240 (statutory unfair competition claim preempted by Copyright Act).

## III.   MATTEL'S UNFAIR COMPETITION CLAIMS FAIL

Mattel's statutory and common law unfair competition claims fail as to MGA and Larian because, as a matter of law, MGA and Larian: (1) did not engage in anticompetitive practice that would justify a finding of unfairness, (2) did not engage in any deceptive practices that would justify a finding of fraudulent conduct; and (3) did not commit "commercial bribery" that would support a finding of unlawful conduct.

### A.   MGA's and Larian's Conduct Was Not Unfair

Mattel's claim that MGA and Larian engaged in unfair conduct is inadequately pled and fails as a matter of law.   In California, when a party sues an ostensible competitor, a defendant's business practice is only "unfair" to the extent it implicates:

> conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.

Cel-Tech Commc'ns, 20 Cal. 4th at 186-87. As between direct competitors, like Mattel and MGA, "unfairness" must be "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." Id. at 186. "Unfairness" cannot be established where a plaintiff alleges harm to *commercial interests*, as opposed to *competition*. See Watson Labs. Inc. v. Rhone-Poulenc Rorer, Inc., 178 F. Supp. 2d 1099, 1118-19 (C.D. Cal. 2001) (no "unfairness" where no impact on competition shown).

Mattel alleges no harm to competition, relying instead on allegations pertaining to its alleged ownership of Bryant's drawings throughout its Second Amended Answer. (SAA ¶ 21-36, 82-87). Indeed, Mattel's claim, if accepted, actually reduces competition because Mattel indisputably had a monopoly position and is seeking to eliminate a competitor from the market. Furthermore, Mattel's claim also fails because mere allegations of copyright ownership are not sufficient to sustain a claim of unfairness under section 17200. See Sybersound Records, Inc. v. UAV Corp., __ F.3d __, 2008 WL 509245, at *13 (9th Cir. Feb. 27, 2008) (in action brought under Lanham and Copyright Acts, plaintiff's failure to plead that "unfair" act would be an "incipient violation of antitrust law" defeats its claim unfair competition claim).

EXHIBIT ___1___

PAGE ___60___

### B.   MGA and Larian's Conduct Was Not Fraudulent

Mattel did not make any allegations of conduct constituting fraud or deception, basing its entire claim of "fraudulent" conduct under section 17200 on "the foregoing conduct"   and "misrepresentations as alleged above" – i.e., claims of copyright ownership and infringement.  (SAA ¶ 165.)  As demonstrated above, because Mattel's unfair competition claim is based entirely on conduct pertaining to the ownership of Bryant's drawings, the claim is preempted by the Copyright Act.  (Supra at pp. 24-25.)

Mattel's claim that MGA and Larian's conduct was fraudulent also fails because Mattel has not alleged that the public was deceived in any manner.  A business practice is "fraudulent" if "members of the public are likely deceived." Nat'l Rural Telecommc'ns Co-op. v. DIRECTV, Inc., 319 F. Supp. 2d 1059, 1078 (C.D. Cal. 2003) (granting defendant summary judgment on, inter alia, "fraudulent" prong of unfair competition claim).  Fairly read, Mattel's allegations show more concern for MGA and Larian's alleged misrepresentations to Mattel concerning Bryant's involvement with BRATZ.  However, Mattel may not sustain a claim for "fraudulent" conduct when the only allegedly "deceived" party is itself.  See, e.g., Watson Labs., 178 F. Supp. 2d at 1117 ("it is necessary under the fraudulent prong [of the UCL] to show deception to some members of the public, or harm to the public interest, and not merely to the direct competitor or other non-consumer party to a contract").

### C.   MGA's and Larian's Conduct Was Not Unlawful

"Commercial bribery" is the only express predicate in Phase One that would support the "unlawful" prong of Mattel's unfair competition claims.[43]  Specifically, Mattel argues that MGA and Larian engaged in "commercial bribery" in violation of California Penal Code section 641.3(a), which punishes individuals who:

---

[43]   Mattel's citation to the Economic Espionage Act of 1996, 18 U.S.C. §§ 1831, et seq., in its counterclaims implicates issues to be decided in Phase Two.  See Mattel's Memorandum Regarding Trial Structure, dated June 20, 2007, at 8-9, adopted by the Order dated July 2, 2007. Although not alleged, and thus not properly a basis for the claim, Mattel might argue that its claims under the Copyright Act form the basis for the unlawful prong.  If permitted, such a claim still would fail because, as discussed above, the crux of Mattel's claim is for copyright ownership based on an alleged contractual right, not infringement.  (Supra at pp. 24-25.)  A dispute over copyright ownership in not an "unlawful" practice "prohibited by law, whether 'civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.'"  Smith & Hawken, Ltd. v. Gardendance, Inc., 2004 WL 2496163, at **6-7 (N.D. Cal. Nov. 5, 2004).

EXHIBIT     1
PAGE     61

Solicit[], accept[], or agree[] to accept money or any thing of value from a person other than his or her employer, other than in trust for the employer, <u>corruptly</u> and without the knowledge or consent of the employer, <u>in return for using or agreeing to use his or her position for the benefit of that other person</u>, and any person who offers or gives an employee money or any thing of value under those circumstances, is guilty of commercial bribery.

Cal. Penal Code § 641.3(a) (emphasis added).  As a matter of law, Mattel cannot establish a violation of Section 641.3 for several reasons.

<u>First</u>, there is no evidence that Bryant had the specific intent to injure or defraud Mattel.  "Corruptly," as defined in section 641.3, requires the employee to evince a "specific" intent to injure or defraud his employer. <u>Id.</u> § 641.3(c)(3).  "Specific intent" requires more than the performance of the proscribed act – it requires the intent to do some further or achieve a particular consequence. <u>People v. Hood</u>, 1 Cal. 3d 444, 456-57 (1969) ("When the definition [of a crime] refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent"); <u>see also</u> <u>Black's Law Dictionary</u> 1399 (6th ed. 1997) ("[t]he subjective desire or knowledge that the prohibited result will occur.").  When Bryant contracted with MGA he knew that he had created the BRATZ concept in August 1998, before entering Mattel's employ, and he subjectively believed that Mattel could lay no claim to his drawings. (UF ¶ 15.)  Indeed, Bryant, expressly represented to MGA, and his patent attorney confirmed, that Bryant owned the BRATZ concept. (UF ¶¶ 20-22.)

<u>Second,</u> Mattel cannot establish that MGA "asked" Bryant to use his position with Mattel for MGA's benefit. To the contrary, MGA and Larian asked for and received a warranty from Bryant and his attorney that his contract with MGA did <u>not</u> breach any existing contract with Mattel. (UF ¶ 23.) Moreover, MGA and Larian expected and instructed Bryant to resign from Mattel immediately upon entering a contract with MGA, and believed that he had done so. (UF ¶¶ 24-26.)  Bryant's offer from MGA was thus not elicited by a demand for payment from MGA for his drawings, but was presented to him by MGA based on his merit as an artist after receiving a warranty from Bryant that his drawings were not covered by his Mattel agreement. <u>See</u> <u>CrossTalk Prods. v. Jacobson</u>, 65 Cal. App. 4th 631, 644 (1998) (affirming dismissal of commercial bribery claim where facts failed to alleged that a contract that was the subject to the alleged bribery was obtained improperly). Far from wanting Bryant to

EXHIBIT __1__
PAGE __02__

misuse his position at Mattel or otherwise obtain his employment by improper means, MGA wanted to insure that Bryant did <u>not</u> do any such thing.[44] Were Mattel's theory of commercial bribery to prevail, nearly all job offers under similar circumstances would constitute commercial bribery.

<u>Lastly</u>, there is no evidence that Bryant actually "used" his position with Mattel to benefit MGA. Mattel does not allege, nor is there any evidence to prove, that Bryant used his position at Mattel to benefit MGA. Rather, the allegation is that Bryant assigned to MGA rights that he had previously assigned to Mattel under the Inventions Agreement. On its face, this allegation has nothing to do with Bryant's position at Mattel or using information at Mattel to benefit MGA. Indeed, it is undisputed that Bryant's creation of the BRATZ concept was something that was <u>not</u> done during the normal course and scope of his employment at Mattel or at the direction of Mattel.

### D. Mattel's Common Law Unfair Competition Claims Also Fail

"The common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another." Bank of the W., 2 Cal. 4th at 1263. Here, Mattel's claim does not allege a claim resembling one for "passing off." Mattel never alleges that MGA or Larian sold Mattel's products as their own. Mattel's claims also fail to satisfy the basic elements of such a claim, which requires that: "(1) the [counterclaimant] has invested substantial time and money in development of its ... 'property'; (2) the [counterclaim] defendant has appropriated the [property] at little or no cost; and (3) the [counterclaimant] has been injured by the [counterclaim] defendant's conduct." Smith & Hawken, Ltd. v. Gardendance, Inc., 2004 WL 2496163, at **6-7 (N.D. Cal. Nov. 5, 2004).

First, Mattel does not allege that it invested "substantial time and money in development of its property." Mattel seeks to destroy BRATZ, not take possession of it, indicating that Mattel does not value the BRATZ because of some prior effort or pecuniary investment. (Ex. 21 (Brawer) at 232:19-233:22 and SAA p. 76, ¶ 4 (Mattel

---

[44]    MGA and Larian wanted nothing to do with any work that would be subject to a Mattel claim of ownership. (Ex. 5 (Larian) at 78:22-24 ("I didn't think I want to have something that was done at Mattel for me. If it was a Mattel product, we had no interest"), 78:13-18 ("I wasn't interested in getting something that was done at Mattel. Because I didn't want to have a lawsuit. And Mattel sues everybody.").)

EXHIBIT ___|___
PAGE ___63___

seeks an order impounding BRATZ).)  Moreover, it is undisputed that Mattel neither knew about nor put effort into developing BRATZ on its own.  Furthermore, MGA and Larian have not appropriated the drawings, let alone "at little or not cost."  Smith & Hawken, 2004 WL 2496163, at **6-7.  MGA and Larian were repeatedly assured that Bryant's title to his drawings was free and clear of Mattel's grasp, and indeed MGA poured literally millions of dollars into developing BRATZ in reliance on Bryant's representations. (UF ¶¶ 15, 20-23.)

## IV.  MATTEL CANNOT ESTABLISH THAT LARIAN AND MGA INTENTIONALLY INTERFERED WITH BRYANT'S AT-WILL CONTRACT WITH MATTEL

In its Sixth Counterclaim, Mattel alleges that Larian and MGA intentionally "encouraged, aided and financed Bryant to develop BRATZ, knowing full well that Bryant was still employed by Mattel" in order to "obtain[] a valuable fashion doll line" even though in developing the line for MGA, Bryant would be in breach of his contractual obligations to Mattel.  (SAA ¶ 33.)  While it is unclear which "contract" Mattel is referring to, Larian and MGA assume for this motion that Mattel is referring to the Inventions Agreement Bryant signed with Mattel in January 1999.  (Id. ¶ 22.)  Here, Bryant's offer letter from Mattel states "your employment is at-will[.]"  (UF ¶ 1.)

To establish a claim for intentional interference with contractual relations, Mattel must show: (1) a valid contract between Mattel and Carter Bryant; (2) MGA and Larian's knowledge of the contract; (3) MGA and Larian's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.  See Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 461 F. Supp. 2d 1188, 1193 (C.D. Cal. 2006) (summary judgment granted where plaintiff failed to show defendant induced breach).  Even if Mattel could establish breach or disruption of a contract, it must also prove that MGA and Larian caused that disruption. See id. As shown below, Mattel cannot establish any of these elements on the undisputed record.

"California courts have consistently declared ... an expression of public policy to ensure that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice."  Metro Traffic Control, Inc. v. Shadow Traffic Network, 22

EXHIBIT ___I___
PAGE ___104___

Cal. App. 4th 853, 859 (1994). This policy dictates that "[t]he interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers[.]" <u>Diodes, Inc. v. Franzen</u>, 260 Cal. App. 2d 244, 255 (1968).[45] Thus, California "public policy generally supports a competitor's right to offer more pay or better terms to another's employee, so long as the employee is free to leave.... [I]f the law were to the contrary, the result 'would be intolerable, both to such employers as could use the employe[e] more effectively and to such employe[e]s as might receive added pay. It would put an end to any kind of competition.'" <u>Reeves</u>, 33 Cal. 4th at 1151 (<u>quoting</u> Judge Learned Hand in <u>Triangle Film Corp. v. Artcraft Pictures Corp.</u>, 250 F. 981, 982 (2d Cir. 1918)).

These policy concerns spawned the principle that where, as here, the contract at issue is an at-will employment contract, "no actionable wrong is committed by a competitor who solicits his competitor's employees or who hires away one or more of his competitor's employees who are not under contract, so long as the inducement to leave is not accompanied by unlawful action." <u>Diodes</u>, 260 Cal. App. 2d at 255. Later courts interpreted "the qualification of <u>Diodes</u> regarding 'employees who are not under contract' to mean an employment contract other than employment at will." <u>Metro Traffic</u>, 22 Cal. App. 4th at 860; <u>Reeves</u>, 33 Cal. 4th at 1145 ("defendant is not subject to liability for intentional interference if the interference consists merely of extending a job offer that induces an employee to terminate his or her at-will employment").[46]

---

[45]    <u>See also</u> <u>VL Sys., Inc. v. Unisen, Inc.</u>, 152 Cal. App. 4th 708, 713, 715 (2007) (<u>quoting</u> <u>Diodes</u>, finding no unlawful solicitation of employee where the employee initiated the new agreement with the defendant and "chose to seek the job with" the defendant); <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140, 1145 (2004) (requiring a demonstration of an unlawful act on the part of the competitor employer "will promote the public policies supporting the right of at-will employees to pursue opportunities for economic betterment and the right of employers to compete for talented workers"); <u>Continental Car-Na-Var Corp. v. Moseley</u>, 24 Cal. 2d 104, 110 (1944) ("A former employee has the right to engage in a competitive business for himself and to enter into competition with his former employer, even for the business of ... his former employer, provided such competition is fairly and legally conducted."); <u>accord</u> <u>Interloc Solutions, Inc. v. Technology Assocs. Int'l Corp.</u> 2007 WL 2429715, at *2 (E.D. Cal. Aug. 24, 2007) ("employees are not precluded from seeking new employment on their own initiative").

[46]    The California Supreme Court refined this standard, holding that "to recover for a defendant's interference with an at-will employment relation, a plaintiff must plead and prove that the defendant engaged in an independently wrongful act – <u>i.e.</u>, an act 'proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard' that induced an at-will employee to leave the plaintiff." <u>Reeves</u>, 33 Cal. 4th at 1152-53.

EXHIBIT ____1
PAGE ____65

**A.   Bryant did not breach or disrupt his contract with Mattel**

As shown in Bryant's summary judgment brief, Bryant did not breach his Employment Agreement with Mattel because any BRATZ-related drawings or models allegedly created by Bryant before his departure from Mattel do not fall within the scope of the Inventions Agreement.  (Bryant Br. at III.B.)

**B.   MGA and Larian lacked the intent to induce Bryant to breach his contract**

To prove that MGA and Larian intended to interfere with Bryant's Employment Agreement by contracting with Bryant for the ownership rights to the BRATZ concept and drawings, Mattel must show that MGA and Larian knew that "the interference is certain or substantially certain to occur as a result of his action. The rule applies, in other words, to an interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action." Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist., 106 Cal. App. 4th 1219, 1239 (2003) (emphasis added).  There is no intent to interfere where the defendant knows or believes its agreement with a third party will not infringe the rights of the plaintiff.

1-800 Contacts, Inc. v. Steinberg, 107 Cal. App. 4th 568 (2003), although arising in an anti-SLAPP motion, is instructive.  The court found plaintiff (a discount contact lens seller) would be unlikely to prevail on its intentional interference with contract claims against defendant (a representative of optometrist associations) where plaintiff's former legal counsel contacted defendant and offered his services to groups of optometrists, which were direct competitors of plaintiff's as contact lens sellers and were seeking laws regulating the activities of businesses like plaintiff's. Id. at 573. Because the former employee repeatedly reiterated to defendant that he would not disclose confidential information learned from his previous employer, "stated and restated his contractual obligation not to work for a defined class of competitors, and obtained assurances that neither [defendant] Steinberg nor the optometric associations were within that class[,]" the court concluded that, regardless of whether the former employee actually breached the contract, "the evidence did not show or substantiate that Steinberg – either in agreeing to work with [the former employee] on a subject of mutual concern or in inviting or arranging for others interested to meet with them –

EXHIBIT ___
PAGE ___

acted with knowledge that any such breach would thereby be caused." <u>Id.</u> at 586 (emphasis added). The undisputed facts here show that Larian and MGA took steps to verify that by contracting with Bryant for the ownership of BRATZ, they would not infringe any potential rights of Mattel, and thus the intent element cannot be met.

MGA and Larian indisputably did not know the specific requirements of Bryant's Employment Agreement; Bryant was unable to provide a copy at their request, because he did not have one in his possession. (UF ¶ 19.) MGA and Larian specifically sought assurances from Bryant and his patent attorney that Bryant's developing of the BRATZ concept fell outside the scope of Bryant's employment with Mattel (UF ¶¶ 14, 20), and were told by Bryant and his attorney that he "had created the doll at a time period separate from his employment and that it was his own separate creation." (UF ¶¶ 15, 21.) MGA and Larian had no reason to doubt these assurances, especially as a patent attorney familiar with the precise ownership issues in question represented that she was "satisfied" the Employment Agreement was not implicated. (UF ¶¶ 20-22.)

Finally, and most importantly, MGA and Larian asked for and received a warranty from Bryant that, <u>inter alia</u>, his signing of the agreement with MGA did not breach any existing contract with a third party, that the BRATZ concept and drawings were "original" and were the exclusive property of MGA, and indemnifying MGA from third party claims to ownership of the BRATZ concept or drawings. (UF ¶ 23.) Given this evidence, there is no question that MGA and Larian were far from "certain" that any interference with Mattel's rights was likely to occur—indeed, the opposite is true, as the undisputed facts show that, as a result of repeated inquiries by MGA and Larian and assurances from Bryant and his attorney, MGA and Larian were rightfully secure in the knowledge that they were <u>not</u> interfering with <u>any</u> party's contractual rights. Thus, there is no triable issue of fact as to MGA and Larian's lack of intent to interfere with Bryant's Employment Agreement.

## C. MGA and Larian did not induce Bryant to leave Mattel and therefore could not be the cause of his alleged breach

It is settled that a contracting party is not liable for intentional interference with contract where the breaching party initiates the contact with him.

One does not induce another to commit a breach of contract with a third

---

EXHIBIT ____|____

PAGE ___67___

person under the rule stated in this Section **when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person.** .... For instance, B is under contract to sell certain goods to C. He offers to sell them to A, who knows of the contract. A accepts the offer and receives the goods. **A has not induced the breach and is not subject to liability** under the rule stated in this Section.

Restatement (Second) of Torts § 766, cmt. n (2007).   See also DeVoto v. Pacific Fidelity Life Ins. Co., 618 F.2d 1340, 1348 (9th Cir. 1980) (noting that "where a contract has been abrogated, competitors may thereafter offer to deal with the party who repudiated the contract without incurring liability in tort: there is no act of inducement, and once the contract is abrogated there is no advantage to appropriate") (citing Restatement (Second) of Torts § 766, cmt. n); Bauer v. Interpublic Group of Companies Inc., 255 F. Supp. 2d 1086, 1093, 1095 (N.D. Cal. 2003).[47]

Assuming Bryant somehow breached his Employment Agreement with Mattel in selling the BRATZ concept to MGA, the undisputed evidence shows that there was no inducement on the part of MGA and Larian for him to do so.  Here, the record is undisputed that Bryant was the one searching for a company to develop his BRATZ line and he was the initiating party.[48]  It is undisputed that Bryant had no contact with MGA until he arrived at MGA headquarters for his first pitch meeting – arranged by Marlow,

---

[47]    1-800 Contacts, Inc., 107 Cal. App. 4th at 586 (where breaching party approached defendant, defendant agreed to work with and set up meetings for others to work with breaching party not enough to show inducement); American Mortg. Network v. LoanCity.com, 2006 WL 3199291, at *17 (Cal. Ct. App. Nov. 7, 2006) (judgment notwithstanding a verdict granted where "dissatisfied" employee "putting himself on the market" contacted and was hired by competitor after receiving competitor's name as recommendation from third party); Xtracash ATM, Inc. v. Karsh, 2002 WL 31053855, at *9 (Cal. Ct. App. Sept. 16, 2002) (granting summary judgment on intentional interference with contract claims against provider of ATM services, finding no inducement where "very dissatisfied" merchants contacted and contracted with defendant to provide alternate service and undisputed facts showed defendant "did not approach merchants to change their service and did not induce them to breach their contracts with [plaintiff]"); Fogel v. UNUM Corp., 2001 WL 1359112, at *4 (Cal. Ct. App. Nov. 6, 2001) (no inducement where, inter alia, alleged inducing party did not approach breaching party but instead was solicited by breaching party).

[48]    UF ¶ 5; Ex. 1 (Bryant) at 8:15-9:4, 157:19-158:2 ("Q. Can you tell us the context in which Ms. Marlow first spoke to you about MGA in July of 2000? A. I spoke with her.  I told her that I had a project that I was interested in possibly doing something with, and I spoke to her and asked her if she could possibly – or if she had any leads or if she could possibly help me pitch this idea.  Q. So you contacted her?  A. Yes.  Q.  And in response to that query what did she say?  A. She told me that she had been working for a company called MGA and that they, in fact, were looking for new doll projects.  Q. And is it true that you had never heard of MGA before?  A. I had not.").

EXHIBIT ___|___
PAGE ___68___

who was not an MGA employee – in August of 2000.  (UF ¶¶ 3, 7-10.)  Mattel has no evidence to suggest that MGA approached or solicited Bryant to leave his position at Mattel.  Given these undisputed facts, MGA and Larian did not intentionally induce or cause Bryant to breach his Employment Agreement.

## V.   AS BRYANT DID NOT OWE A FIDUCIARY DUTY TO MATTEL, THERE CAN BE NO AIDING AND ABETTING LIABILITY

Mattel's 8th Counterclaim alleges that MGA and Larian are liable for aiding and abetting Bryant's breach of fiduciary duty owed to Mattel because they "encouraged, aided and financed Bryant to develop BRATZ," knowing Bryant was employed by Mattel and that Mattel is the "true owner of BRATZ designs and works." (SAA ¶¶ 33, 34; see also id. ¶¶ 26-27, 136-37, 139-41.) Bryant's concurrently filed summary judgment motion, in which MGA and Larian join, demonstrates that, as a matter of law, Bryant did not owe a fiduciary duty. (Bryant Br. at III.A.)  Absent such a duty, a claim for aiding and abetting necessarily fails. See Richard B. LeVine, Inc. v. Higashi, 131 Cal. App. 4th 566, 574 (2005) (granting summary judgment on aiding and abetting breach of fiduciary duty where plaintiff failed to establish breach); see also MJT Securities v. Toronto Dominion Bank, 2007 WL 1725421, at **7-8 (N.D. Cal. June 14, 2007). As Bryant owed no fiduciary duty to Mattel, Mattel's claim against MGA and Larian likewise fails as a matter of law.

## CONCLUSION

For the foregoing reasons, MGA and Isaac Larian respectfully request an order granting partial summary judgment and dismissing Mattel's Phase I claims against them.

DATED: March 7, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: _____
        Thomas J. Nolan
Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE de Mexico, S.R.L. de C.V., and Isaac Larian

---

MGA Parties' Motion for Partial Summary Judgment - Case No. CV 04-9049 SGL (RNBx)

50

505549.10-Los Angeles Server 2A - MSW

EXHIBIT ___1___
PAGE ___69___

CALENDARED

RECEIVED

MAR 07 2008

1 | THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
2 | JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
3 | MARINA V. BOGORAD (Bar No. 217524)
(mbogorad@skadden.com)
4 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
5 | Los Angeles, CA 90071-3144
Telephone: (213) 687-5000
6 | Facsimile: (213) 687-5600

7 | KENNETH PLEVAN (admitted *pro hac vice*)
(kplevan@skadden.com)
8 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
9 | New York, NY 10046
Tel.: (212) 735-3000 / Fax: (212) 735-2000

10 | Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
11 | MGAE de Mexico, S.R.L. DE C.V., and Isaac Larian

12

### UNITED STATES DISTRICT COURT

13

### CENTRAL DISTRICT OF CALIFORNIA

14

### EASTERN DIVISION

15

| | |
|---|---|
| 16  CARTER BRYANT, an individual | CASE NO. CV 04-9049 SGL (RNBx) |
| 17          Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| 18      v. | |
| 19  MATTEL, INC., a Delaware corporation | Honorable Stephen G. Larson |
| 20          Defendant. | **PROOF OF SERVICE** |
| 21 | |
| 22  AND CONSOLIDATED ACTIONS | |

23

24

25

26

27

28

EXHIBIT ___1___
PAGE ___70___

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 300 South Grand Avenue, 34ᵗʰ Floor, Los Angeles, CA 90071.

On **March 7, 2008**, I served the foregoing documents described as:

## SEE ATTACHED DOCUMENT LIST

on the interested parties in this action addressed as follows:

## SEE ATTACHED SERVICE LIST

(x)    (BY PERSONAL SERVICE)    ( )    By personally delivering copies to the person served. (FEDERAL)

(x)    I caused such document to be hand delivered to the above addressees. (FEDERAL)

(X)    (BY FEDERAL EXPRESS)

( )    (BY ELECTRONIC MAIL)

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Executed on **March 7, 2008**, in Los Angeles, California.

Matthew T. Bowman
PRINT NAME                    SIGNATURE

2
PROOF OF SERVICE
NO. CV 04-9049 SGL (RNBx)

EXHIBIT ___1___
PAGE ___71___

1

<u>DOCUMENT LIST</u>

2

**MGA PARTIES' NOTICE OF MOTION AND MOTION FOR PARTIAL**
3 **SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND**
**AUTHORITIES IN SUPPORT THEREOF**

4

**MGA PARTIES' STATEMENT OF UNCONTROVERTED FACTS AND**
5 **CONCLUSIONS OF LAW IN SUPPORT OF THEIR MOTION FOR**
**PARTIAL SUMMARY JUDGMENT**

6

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT THEREOF**
7

**DECLARATION OF JASON RUSSELL IN SUPPORT THEREOF**
8

**DECLARATION OF ISAAC LARIAN IN SUPPORT THEREOF**
9

**[PROPOSED] ORDER GRANTING MGA PARTIES' MOTION FOR**
10 **PARTIAL SUMMARY JUDGMENT**

11 **PROOF OF SERVICE**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE
NO. CV 04-9049 SGL (RNBx)

EXHIBIT ___1___
PAGE ___72___

## SERVICE LIST

**VIA PERSONAL SERVICE**

John B. Quinn, Esq.
Michael T. Zeller, Esq.
Jon D. Corey, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000
(213) 443-3100 (Fax)

Attorneys for Mattel, Inc.


**VIA FEDERAL EXPRESS**

Mark E. Overland, Esq.
Alexander H. Cote, Esq.
David S. Scheper, Esq.
Overland Borenstein Scheper & Kim
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071
Telephone: (213) 613-4655
Facsimile: 9213) 613-4656

Attorneys for Carlos Gustavo Machado
Gomez

**VIA FEDERAL EXPRESS**

John W. Keker, Esq.
Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400
(415) 397-7188 (Fax)

Attorneys for Carter Bryant

*EXHIBIT* 1
*PAGE* 73