# EXHIBIT 2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES – GENERAL

Case No.    CV 04-09049 SGL(RNBx)                            Date: April 25, 2008
Title:        CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.,  v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
=========================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

             Jim Holmes
             Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:      ATTORNEYS PRESENT FOR MATTEL:

None Present                               None Present

ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

PROCEEDINGS:     ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN
                 PART THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT
                 (IN CHAMBERS)

        This matter is before the Court on the parties' motions for partial summary judgment.  The
motions were heard on April 22, 2008, and the Court has set the motions for further hearing on
May 19, 2008, at 1:30 p.m.  As set forth below, the Court rules on a number of issues presented
by the motions for partial summary judgment and reserves ruling on other issues until after further
hearing on the motions for partial summary judgment and, in the case of MGA's affirmative
defenses, until after the Phase 1 trial.

        The parties have made hundreds of objections to evidence offered in support of and in
opposition to the motions for partial summary judgment.  Although counsel for Bryant requested

MINUTES FORM 90                                              Initials of Deputy Clerk:  jh
CIVIL – GEN                          Page 1

EXHIBIT _2_
PAGE _74_

explicit rulings on the objections raised by Bryant, the Court declines to do so. To the extent that this Order necessarily relies on evidence subject to any party's objections, the objections are implicitly overruled.

## PREEMPTION

MGA and Bryant seek summary judgment in their favor as to Mattel's claims for intentional interference with contractual relations, conversion, and unfair competition, arguing that these claims are preempted by the Copyright Act. They are partially correct.

A state law is preempted by the Copyright Act where (1) the work at issue comes within the subject matter of copyright, and (2) the state law rights are "equivalent to rights within the general scope of copyright[.]" Del Madera Properties v. Rhodes and Gardner, Inc., 820 F.2d 973, 977 (9th Cir.1987). "If a state law claim includes an 'extra element' that makes the right asserted qualitatively different from those protected under the Copyright Act, the state law claim is not preempted by the Copyright Act." Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1089 (9th Cir. 2005). Generally the Copyright Act does not preempt the enforcement of contractual rights. Id.

As to the first element, the intentional interference with contractual relations claim addresses generally an issue within the subject matter of copyright -- the underlying wrong upon which the claim is premised is Mattel's deprivation of rights to intellectual property.

As to the second element, it is clear that the tort of intentional interference with contractual relations is neither categorically preempted or categorically saved from preemption; rather, the Court must engage in a determination of whether the substance of the tort claim differs qualitatively from the copyright claim at issue. Compare Altera, 424 F.3d at 1089 (holding that a intentional interference claim was not preempted because it was based not on copyrights but on a contractual provision) with Laws v. Sony Music Entertainment, Inc., 448 F.3d 1134, 1144 (9th Cir. 2006) (holding preempted a singer's voice misappropriation claim was not qualitatively different from her copyright claim).

Here, to the extent that the tortious interference is premised upon MGA's alleged interference with any copyrights that Mattel may have under the Inventions Agreement, it is preempted. Such a claim is not qualitatively different from Mattel's copyright claim. However, to the extent that the claim is based on MGA's acts that may be found to have aided and abetted the breach or induced the breach of Bryant's fiduciary duty, the claim is not preempted. That claim is qualitatively different from Mattel's copyright claim.

Therefore, the tortious interference with contractual relations is preempted to the extent that it is based on Mattel's rights to Bratz. It is not preempted as to Mattel's claims for breach of fiduciary duty.

The parties' arguments regarding the conversion claim address two distinct issues: Conversion of ideas and conversion of tangible things. The Court addresses each in turn.

MINUTES FORM 90                                                     Initials of Deputy Clerk: jh
CIVIL -- GEN                              Page 2

EXHIBIT ___2___
PAGE ___75___

Both sides acknowledge, as this Court certainly agrees, that one cannot copyright an idea. Thus, it would seem, a claim for conversion of ideas is not subject to preemption because it is not "within the subject matter of copyright." Del Madera, 820 F.2d at 977. MGA argues that ideas are not subject to a claim of conversion, to which Mattel responds that such rights in ideas may be created by contract. Mattel relies on Desny v. Wilder, 46 Cal.2d 715, 733 (1956) which, remarkably, so holds. However, that case does not support the proposition that a breach of such rights may be remedied by the tort claim of conversion rather than a breach of contract claim. The law in California regarding the tort of conversion's applicability to ideas remains the same today as in 1956: "The tort of conversion does not apply to ideas." Melchior v. New Line Productions, Inc., 106 Cal.App.4th 779 (2003). Therefore, although this claim is not preempted, it is not actionable as a tort claim. Accordingly, summary judgment in favor of MGA and Bryant is granted as to this particular claim.

Mattel also argues that its conversion claim is not preempted to the extent that it seeks the return of tangible things, most notably the original Bratz drawings. This claim is "within the subject matter of copyright," but the state rights go beyond the rights protected by the Copyright Act by allowing for the return of property.

At oral argument, counsel for MGA argued that Mattel seeks the rights that the drawings represent, not the "paper and ink" of which those drawings are comprised. Mattel disagreed with that interpretation, noting that it seeks the return of the original drawings and certain sculpts to which it may have rights under the Inventions Agreement.

The items to which Mattel lays claim are not like the manuscript at issue in Dielsi v. Falk, 916 F.Supp. 985, 992 (C.D. Cal. 1996), or the government documents at issue in Idema v. Dreamworks, Inc., 162 F.Supp.2d 1129, 1192-93 (C.D. Cal. 2001), both of which had value merely for their ability to hold and convey their contents. Rather, the materials Mattel seeks are works of art that may have value apart from the copyrights they represent or the "paper and ink" and other materials of which they are comprised. Given the role of the drawings and sculpts in developing a new, commercially successful line of fashion dolls, and given the role of these items in the present litigation, the Court discerns a possible inherent value to the materials themselves.

MGA and Bryant also pressed at oral argument that Mattel had not advanced such a claim for return of tangible items. The Court disagrees. Citing to its Complaint at ¶ 157, Mattel contends it has long sought the return of tangible items.[1] An examination of Mattel's claim for conversion reveals that it encompasses such a claim. Therefore, the conversion claim seeking the return of tangible items is not preempted. MGA and Bryant's motions for summary judgment on this issue are therefore denied.

To the extent that Mattel's statutory unfair competition claim, discussed more fully below, is

---

[1]   From a review of the record, it is clear to the Court that Mattel intended to cite ¶ 157 of its Amended Answer and Counterclaims, not its Complaint.

EXHIBIT 2
PAGE 74

based on copyright infringement, it is preempted, and the Court grants summary judgment in favor of MGA on this issue.

## STATUTE OF LIMITATIONS

The Court heard argument at length on the statute of limitations issue. Although it is not entirely clear, it appears to the Court from the hearing and from MGA's Rule 56(f) affidavit, that there remain outstanding discovery matters that may have the potential, if resolved in MGA's favor, to factor into the inquiry into the determination of the date of the accrual of any claims against Bryant and/or MGA. Accordingly, the Court defers ruling on the issue of statute of limitations at this time.

## INVENTIONS AGREEMENT

The Court addressed many issues of the enforceability of the Employee Confidentiality and Inventions Agreement in its July 17, 2006, Order. The Court finds no good reason to revisit or revise that Order.

Bryant argues that the Inventions Agreement is ambiguous on the issue of whether it covered anything other than "inventions" as that term is used in patent law. Here, Bryant was a fashion designer. He signed an agreement that assigned his "inventions" to Mattel. "Inventions" is defined by the agreement to include "designs," which was undeniably the focus of Bryant's employment with Mattel. In addition to assigning all rights to Bryant's "inventions" (i.e., "designs") to Mattel, the agreement also assigned to Mattel "all [Bryant's] right, title, and interest in any . . . copyrights . . . and copyright applications based [on those inventions]".

In order to conclude that the Inventions Agreement is ambiguous on the issue of whether it would include any copyrightable drawings or doll designs developed by an employee, the Court would have to read out of the agreement explicit terms assigning to the employer the rights to "designs," "copyrights," and "copyright applications." The Court is required to read the contract as a whole and, where possible, give effect to all its terms. Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."). To accept the interpretation advanced by Bryant, the Court would have to disregard this bedrock principle of contract construction by ignoring an explicit assignment by the employee to the employer of copyrights. The interpretation advanced by Bryant is therefore not reasonable, and the Court finds that the Inventions Agreement is not ambiguous on the issue of its scope with respect to copyrightable materials.

The Inventions Agreement explicitly conveys to Mattel an employee's interest in any copyrights or copyright applications. Assuming copyrightability and the resolution of certain (as yet unresolved) issues of timing of creation and/or alteration in Mattel's favor, the original Bratz drawings clearly fall within the scope of the Inventions Agreement.

Moreover, the Inventions Agreement incorporates, and therefore does not violate, Cal.

MINUTES FORM 90
CIVIL -- GEN                                    Page 4                    Initials of Deputy Clerk: jh

EXHIBIT __2__
PAGE __77__

Labor Code § 2870. Pursuant to that statute (and its incorporation in the Inventions Agreement), because the subject matter at issue -- the Bratz dolls -- relate to Mattel's business of marketing fashion dolls, the factual question of whether Bryant worked on them on his own time, rather during his working hours at Mattel, is not relevant.

MGA argues that contracts of adhesion are unenforceable if they are either outside the scope of the parties' expectations or they are substantively unconscionable. The Court previously determined that the Inventions Agreement was not substantively unconscionable, and now determines that it is not outside the scope of the parties' expectations. As noted above, Bryant was a designer, and the plain language of the Inventions Agreement assigns his "designs" to his employer. Objectively, therefore, it would not be surprising that Mattel would lay claim to Bryant's rights to any doll or doll fashions he designed during the period of his employment with Mattel. Moreover, undisputed evidence establishes that Bryant's subjective understanding of the contract was that it transferred at least some of his rights to Mattel.

Bryant also argues that his actions went no further than lawful preparations to compete with his employer. The undisputed facts, however, tell a different story: Bryant directly competed with Mattel by entering into a contract with its competitor to produce a competing product while still employed by Mattel.

The Court grants summary judgment in favor of Mattel on the issue of the enforceability of the Inventions Agreement and the issue of applicability of the Inventions Agreement to any Bratz-related "inventions" (including any designs, improvements, ideas, concepts, and copyrightable subject matter) that he is found to have created during the period of his employment with Mattel.

### DUTY OF LOYALTY AND FIDUCIARY DUTY

Carter Bryant, like all other California employees, owed a duty of loyalty to Mattel while employed there. See Cal. Labor Code § 2863. The undisputed facts establish that he breached this duty by entering into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products. See Huong Que, Inc. v. Luu, 150 Cal.App.4th 400, 414 (2007) ("The duty of loyalty is breached, and the breach may give rise to a cause of action in the employer, when the employee takes action which is inimical to the best interests of the employer.") (internal quotation marks and citation omitted).

Bryant also owed a fiduciary duty to Mattel by virtue of the language set forth in ¶ 1(a) of the Inventions Agreement. Id. ("The value of the Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust."). Under California law, a confidential relationship that gives rise to a fiduciary duty is created "where a confidence is reposed by one person in the integrity of another, and . . . the party in whom the confidence is reposed . . . voluntarily accepts or assumes to accept the confidence . . . ." City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1050-51 (N.D. Cal. 2002). The Inventions Agreement imposed such a duty on Bryant.

EXHIBIT ___2___
PAGE ___78___

At the hearing on this matter, counsel contended that a required element for imposing a fiduciary duty -- that the party with the duty be in a superior position to the party to whom the duty is owed -- was missing. That element is described as follows: "[T]he essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1050 (N.D. Cal. 2002) (internal quotation marks and citation omitted). The "superior position" to which California courts refer in this context is not superior bargaining power -- a position on which Mattel would apparently have the edge -- but rather it refers to a superior position vis-à-vis the duty imposed. Here, because the duty imposed upon Bryant was essentially to police his own actions by maintaining Mattel's confidentiality and communicating his own "inventions" to Mattel, Bryant was "in a superior position to exert unique influence over" Mattel because he was in the best position, arguably the only one in a position, to know of and police his actions.

As with the duty of loyalty, the undisputed facts establish that Bryant breached his fiduciary duty to communicate his inventions to Mattel when, rather than doing so, he secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products.

Accordingly, the Court grants Mattel's motion for summary judgment on the issues of the existence and breach of the duty of loyalty. The Court grants Mattel's motion for summary judgment and denies Bryant's motion for summary judgment on the issue of the existence and breach of a fiduciary duty.

In its motion, MGA argued that there can be no liability for aiding and abetting a breach of fiduciary duty in the absence of a fiduciary duty. Because the Court has rejected this argument, the Court denies MGA's motion for summary judgment on this issue.

### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

MGA moved for summary judgment as to Mattel's claim for intentional interference with contractual relations.

The elements of a claim for intentional interference with contractual relations are stated as (1) a valid contract between a plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. Family Home & Finance Center, Inc. v. Federal Home Loan Mortg. Corp., 461 F.Supp.2d 1188, 1193 (C.D. Cal. 2006) (citing Pac. Gas & Elec. Co. v. Bear Stearns Co., 50 Cal.3d 1118, 1126 (1990)).

The undisputed facts show that the first, third, and fifth elements are met. Mattel has raised a triable issue of fact as to the second. The fourth element may be resolved after the

EXHIBIT ___2___
PAGE ___79___

Court's further hearing on the motions for partial summary judgment. The Court therefore defers ruling on this issue.

## UNFAIR COMPETITION

MGA and Bryant's motions are granted in part and denied in part as to Mattel's unfair competition claims.

Mattel's statutory unfair competition claim, brought pursuant to Cal. Bus. & Profs. Code § 17200, survives summary judgment because Mattel has raised a triable issue of fact as to whether MGA tortiously interfered with Bryant and Mattel's contractual relationship and whether MGA engaged in commercial bribery.

However, two bases for this claim are foreclosed at this time. To the extent that the § 17200 claim is based on copyright infringement, it is preempted. To the extent that it is based on unfair conduct, summary judgment in favor of MGA is granted because the articulated unfair conduct does not approximate an antitrust violation that threatens competition. See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 186-87 (1999).

As to Mattel's common law unfair competition claim, summary judgment in favor of MGA and Bryant is granted. This claim is not, as it must be, based on the act of passing off another's goods as one's own. See Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1153 (9th Cir. 2008) (citing Bank of the W. v. Superior Court, 2 Cal.4th 1254 (1992)).

## UNJUST ENRICHMENT

Because Mattel failed to oppose this portion of Bryant's motion, the Court grants Bryant's motion for partial summary judgment on the issue of unjust enrichment.

## AFFIRMATIVE DEFENSES

Mattel seeks summary judgment as to many of the affirmative defenses asserted by the MGA entities and Carter Bryant. Most of these defenses are essentially equitable in nature, and therefore the Court **DEFERS RULING** on them until after trial. Specifically, the Court **DEFERS RULING** on the affirmative defenses of abandonment, acts and omissions of others, acquiescence, consent, estoppel, failure to mitigate, laches, unclean hands, and waiver until after trial.

For the reason set forth above in a separate section, the Court defers ruling on Mattel's motion as to the statute of limitations defense.

The final affirmative defense is based on 17 U.S.C. § 205(d). With this affirmative defense, MGA essentially contends that it is a bona fide purchaser for value of the Bratz copyrights which

EXHIBIT __2__
PAGE __80__

took the rights in good faith and without notice of any prior transfer of the rights therein to Mattel. As the issue is argued by the parties, the Court would be required to determine the legal issue of whether MGA's registration of the copyrights as an "assignment" constitutes "constructive notice" in the manner required to give MGA the protection of 17 U.S.C. § 205(d). In the Court's view, this is a complex legal issue that is not thoroughly addressed by the parties' briefs. Moreover, the Court notes that a trial on the merits is likely to resolve the less complex factual issue of whether MGA acted in good faith and without notice of an earlier assignment of rights. Accordingly, the Court **DEFERS RULING** on this issue until after the Phase 1 trial.

* * * *

The Court will consider a number of remaining issues at the further hearing on these motions, set for May 19, 2008. Specifically, referencing the parties' Notices of Motion, the Court will consider the following issues:

Mattel's motion:  Issue (2)(c), whether there is a factual dispute regarding the timing of certain drawings and a dummy model; Issue (3), whether the first-generation Bratz dolls are substantially similar to seventeen drawings and a doll sculpt drawing or blueprint created by Bryant and whether those are original, protectable works of expression; Issue (5), whether MGA and Larian are liable for aiding and abetting Bryant's breaches of the duty of loyalty and fiduciary duty; and Issue (6)(a) whether Mattel is entitled to summary judgment as to the affirmative defense of statute of limitations.

Bryant's motion:  Whether Bryant is entitled to summary judgment as to Mattel's claim for copyright infringement; whether Bryant is entitled to summary judgment as to Mattel's breach of contract claim; and whether Bryant is entitled to summary judgment on any portion of his claim for declaratory relief.

MGA's motion:  Whether Mattel's claims are time barred; and whether the fourth element of intentional interference with contractual relations -- actual breach or disruption of the contractual relationship -- can be resolved on summary judgment.

Except for any updates from any party regarding the outstanding discovery matters that may be relevant to the statute of limitations, these issues are considered by the Court to be fully briefed. Any supplemental briefs by the parties on any issue other than the statute of limitations will be stricken by the Court. Any supplemental filings regarding the statute of limitations issue shall be limited to addressing the status of outstanding discovery issues and/or recently produced evidence.

**IT IS SO ORDERED.**

EXHIBIT _2_
PAGE _81_

# NOTICE PARTY SERVICE LIST

**Case No.**   CV 04-09049 SGL(RNBx)     **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**   Minute Order of April 25, 2008

| |
|---|
| Atty Sttlmnt Officer Panel Coordinator |
| BAP (Bankruptcy Appellate Panel) |
| Beck, Michael J (Clerk, MDL Panel) |
| BOP (Bureau of Prisons) |
| CA St Pub Defender (Calif. State PD) |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| Case Asgmt Admin (Case Assignment Administrator) |
| Catterson, Cathy (9th Circuit Court of Appeal) |
| Chief Deputy Admin |
| Chief Deputy Ops |
| Clerk of Court |
| Death Penalty H/C (Law Clerks) |
| Dep In Chg E Div |
| Dep In Chg So Div |
| Federal Public Defender |
| Fiscal Section |
| Intake Section, Criminal LA |
| Intake Section, Criminal SA |
| Intake Supervisor, Civil |
| PIA Clerk - Los Angeles (PIALA) |
| PIA Clerk - Riverside (PIAED) |
| PIA Clerk - Santa Ana (PIASA) |
| PSA - Los Angeles (PSALA) |
| PSA - Riverside (PSAED) |
| PSA - Santa Ana (PSASA) |
| Schnack, Randall (CJA Supervising Attorney) |
| Statistics Clerk |

| |
|---|
| US Attorneys Office - Civil Division -L.A. |
| US Attorneys Office - Civil Division - S.A. |
| US Attorneys Office - Criminal Division -L.A. |
| US Attorneys Office - Criminal Division -S.A. |
| US Bankruptcy Court |
| US Marshal Service - Los Angeles (USMLA) |
| US Marshal Service -  Riverside (USMED) |
| US Marshal Service -Santa Ana (USMSA) |
| US Probation Office (USPO) |
| US Trustee's Office |
| Warden, San Quentin State Prison, CA |

✓ ***ADD NEW NOTICE PARTY***
***(If sending by fax, mailing address must also be provided)***

Name: Ambassador Pierre-Richard Prosper

Firm:

Address *(include suite or floor)*: P.O. Box 581103

Salt Lake City, UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

\* For CIVIL cases only

***JUDGE / MAGISTRATE JUDGE (list below):***

Initials of Deputy Clerk  jh

EXHIBIT  2
PAGE  82

# NOTICE PARTY SERVICE LIST

**Case No.** ___CV 04-09049 SGL(RNBx)___   **Case Title** ___Carter Bryant v. Mattel, Inc.___

**Title of Document** ___Minute Order of April 25, 2008___

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So  Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service -  Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✓ | **ADD NEW NOTICE PARTY** (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Hon. Edward A. Infante (Ret.)

Firm:

Address *(include suite or floor)*: Two Embarcadero

Center, Suite 1500, San Francisco, CA  94111

*E-mail:

*Fax No.:

* For CIVIL cases only

| *JUDGE / MAGISTRATE JUDGE (list below):* |
|---|
| |
| |
| |
| |

**Initials of Deputy Clerk** _jh_

EXHIBIT ___2___
PAGE ___83___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CARTER BRYANT, | CASE NUMBER |
|---|---|
| PLAINTIFF(S), | CV 04-09049 SGL (RNBx) |
| v. | |
| MATTEL, INC., et al., | NOTICE OF CLERICAL ERROR |
| DEFENDANT(S), | |

TO:     U. S. District Judge(s)
        U. S. Magistrate Judge(s)
        Counsel of Record

You are hereby notified that due to a clerical error ☐ documents associated with the filing of the new action ☐ the following scanned document ☑ docket entry  have/has been corrected as indicated below.

Title of Scanned Document:  Minute Order of 4-25-08, Granting in part, Denying in part, and Deferring in Part the Parties' MSJ

Filed Date:  4-25-08 _____ Document Number:  3285 _____

☐  Incorrect case number _____ was assigned to this ☐ action ☐ document.

☐  Case number has been corrected. The correct case number is _____

☐  Incorrect judge's initials were indicated on this ☐ action ☐ document. The correct judge's initials are _____

☐  Incorrect magistrate judge's initials were indicated on this ☐ action ☐ document. The correct magistrate judge's initials are _____.

☐  Case has been reassigned from ☐ Judge ☐ Magistrate Judge _____ to

        ☐ Judge ☐ Magistrate Judge _____. The initials of the new judge(s) are _____

☐  Case was assigned to ☐ Western ☐ Southern ☐ Eastern division. Pursuant to General Order ☐ 349, ☐ 98-3 ☐ 02-06,

        the case has been reassigned to the ☐ Western ☐ Southern ☐ Eastern division. The former case number _____
        has been reassigned to new case number _____

☐  Subsequent documents must be filed at the ☐ Western ☐ Southern ☐ Eastern division. Failure to file at the proper location
        will result in your documents being returned to you.

☐  Case title is corrected from _____ to _____

☐  Document has been re-numbered as document number _____

☐  Incorrect ☐ Filed Date ☐ Date of Document ☐ ENTERED Date ☐ DATE ENTERED ON CM/ICMS was stamped on
        document. The correct date is _____

☑  Document is missing page number(s):  7 and 8 _____

☐  To ensure proper routing of documents, all documents filed with the court must reflect the following case number and judge's
        initials: _____

☑  Other: a complete copy with missing pages are re-scanned for service on the parties.

CLERK, U.S. DISTRICT COURT

Date  4-25-08 _____            By: _____ Jim Holmes, CRD _____
                                                      Deputy Clerk

cc: Intake Supervisor / Deputy In Charge

G-11 (06/05)                            NOTICE OF CLERICAL ERROR

EXHIBIT   2
PAGE   84

# EXHIBIT 3



FILED
CLERK, U.S. DISTRICT COURT

JUL 10 2008

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION          BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MATTEL, INC.,<br><br>       Plaintiff,<br><br>  vs.<br><br>MGA ENTERTAINMENT, INC.,<br><br>       Defendant. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>**FINAL JURY INSTRUCTIONS AS GIVEN** |
| AND CONSOLIDATED ACTIONS | |

EXHIBIT    3
PAGE    85

Case 2:04-cv-09049-DOC-RNB   Document 4683-5   Filed 01/12/09   Page 15 of 90   Page ID
#:133760
Case 2:04-cv-09049-SGL-RNB   Document 4115   Filed 07/10/2008   Page 2 of 37

# JURY INSTRUCTION NO. 1

1

2

3      Members of the Jury:  Now that you have heard all of the evidence and will

4  soon hear the arguments of the attorneys, it is my duty to instruct you as to the law

5  of the case.

6

7      A copy of these instructions will be sent with you to the jury room when you

8  deliberate.

9

10      You must not infer from these instructions or from anything I may say or do

11  as indicating that I have an opinion regarding the evidence or what your verdict

12  should be.

13

14      It is your duty to find the facts from all the evidence in the case.  To those

15  facts you will apply the law as I give it to you.  You must follow the law as I give

16  it to you whether you agree with it or not.  And you must not be influenced by any

17  personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you

18  must decide the case solely on the evidence before you.  You will recall that you

19  took an oath to do so.

20

21      In following my instructions, you must follow all of them and not single out

22  some and ignore others; they are all important.

23

24

25

26

27

28

-1-

EXHIBIT __3__
PAGE __66__

Case 2:04-cv-09049-DOC-RNB   Document 4683-5   Filed 0/12/09   Page 16 of 90   Page ID
#:133761
Case 2:04-cv-09049-SGL-RNB   Document 4115   Filed 07/10/2008   Page 3 of 37

1

2    ## JURY INSTRUCTION NO. 2

3

4        When a party has the burden of proof on any claim by a preponderance of

5    the evidence, it means you must be persuaded by the evidence that the claim is

6    more probably true than not true.

7

8        You should base your decision on all of the evidence, regardless of which

9    party presented it.

10

11       In criminal trials, the prosecution must prove that the defendant is guilty

12   beyond a reasonable doubt.  But in civil trials, such as this one, the party who is

13   required to prove something by a preponderance of the evidence need prove only

14   that it is more likely to be true than not true.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-                Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT ___3___
PAGE ___81___

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURY INSTRUCTION NO. 3

The law defines cause in its own particular way.  A cause of injury, damage, loss or harm is something that is a substantial factor in bringing about an injury, damage, loss or harm.

A "substantial factor" is something which is more than a slight, trivial, negligible, or theoretical factor in producing a particular result.

-3-

EXHIBIT 3
PAGE 88

1

2                    ## JURY INSTRUCTION NO. 4

3

4          You should decide the case as to each defendant separately.  Unless

5  otherwise stated, the instructions apply to all parties.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. Case No. CV 04-9049 SGL (RNBx)
                                          JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT _3_
PAGE _89_

## JURY INSTRUCTION NO. 5

The evidence you are to consider in deciding what the facts are consists of:

(1)  The sworn testimony of any witness;

(2)  The exhibits which are received into evidence; and

(3)  Any facts to which the lawyers have agreed.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT ___3___
PAGE ___90___

Case 2:04-cv-09049-DOC-RNB  Document 4683-5  Filed 01/13/09  Page 20 of 90  Page ID
#:133765
Case 2:04-cv-09049-SGL-RNB  Document 3765  Filed 07/10/2008  Page 7 of 37

1
2
### JURY INSTRUCTION NO. 6
3

4      In reaching your verdict, you may consider only the testimony and exhibits
5  received into evidence.  Certain things are not evidence, and you may not consider
6  them in deciding what the facts are.  I will list them for you.
7

8      (1)    Arguments and statements by lawyers are not evidence.  The lawyers
9      are not witnesses.  What they have said in their opening statements, closing
10     arguments, and at other times is intended to help you interpret the evidence,
11     but it is not evidence.  If the facts as you remember them differ from the way
12     the lawyers have stated them, your memory of them controls.
13

14     (2)    Questions and objections by lawyers are not evidence.  Attorneys
15     have a duty to their clients to object when they believe a question is
16     improper under the rules of evidence.  You should not be influenced by the
17     objection or by the court's ruling on it.
18

19     (3)    Testimony that has been excluded or stricken, or that you have been
20     instructed to disregard, is not evidence and must not be considered.  In
21     addition sometimes testimony and exhibits are received only for a limited
22     purpose; when I have given a limiting instruction, you must follow it.
23

24     (4)    Anything you may have seen or heard when the court was not in
25     session is not evidence.  You are to decide the case solely on the evidence
26     received at the trial.
27
28

-6-                    Case No. Case No. CV 04-9049 SGL (RNBx)

EXHIBIT 3
PAGE 91

Case 2:04-cv-09049-DOC-RNB   Document 4683-5   Filed 00/12/09   Page 21 of 90   Page ID
#:133766
Case 2:04-cv-09049-SGL-RNB   Document 4115   Filed 07/10/2008   Page 8 of 37

1

2

## JURY INSTRUCTION NO. 7

3

4        Some evidence may be admitted for a limited purpose only.

5

6        When I instruct you that an item of evidence has been admitted for a limited

7   purpose, you must consider it only for that limited purpose and for no other.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-7-                Case No. Case No. CV 04-9049 SGL (RNBx)

EXHIBIT 3
PAGE 92

1

## JURY INSTRUCTION NO. 8

2

3

4      Evidence may be direct or circumstantial.  Direct evidence is direct proof of

5 a fact, such as testimony by a witness about what that witness personally saw or

6 heard or did.  Circumstantial evidence is proof of one or more facts from which

7 you could find another fact.  You should consider both kinds of evidence.  The law

8 makes no distinction between the weight to be given to either direct or

9 circumstantial evidence.  It is for you to decide how much weight to give to any

10 evidence.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT __3__
PAGE __93__

Case 2:04-cv-09049-DOC-RNB    Document 4683-5    Filed 00/11/09    Page 23 of 90    Page ID
#:133768
Case 2:04-cv-09049-SGL-RNB    Document 4115    Filed 07/10/2008    Page 10 of 37

1

## JURY INSTRUCTION NO. 9

2

3

4        If weaker and less satisfactory evidence is offered by a party, when it was

5  within that party's ability to produce stronger and more satisfactory evidence, the

6  evidence offered should be viewed with distrust.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT 3
PAGE 94

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURY INSTRUCTION NO. 10

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1)   the opportunity and ability of the witness to see or hear or know the things testified to;

(2)   the witness's memory;

(3)   the witness's manner while testifying;

(4)   the witness's interest in the outcome of the case and any bias or prejudice;

(5)   whether other evidence contradicted the witness's testimony;

(6)   the reasonableness of the witness's testimony in light of all the evidence; and

(7)   any other factors that bear on believability.

-10-      Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT    3
PAGE    95

Case 2:04-cv-09049-DOC-RNB   Document 4683-5   Filed 02/13/09   Page 25 of 90   Page ID
#:133770
Case 2:04-cv-09049-SGL-RNB   Document 4115   Filed 07/10/2008   Page 12 of 37

1    The weight of the evidence as to a fact does not necessarily depend on the

2    number of witnesses who testify about it.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT  3
PAGE  96

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# JURY INSTRUCTION NO. 11

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury was present in the courtroom, or by calling a recess. Please understand that while you were waiting, we were working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we have done what we could to keep the number and length of these conferences to a minimum. I did not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT __3__
PAGE __97__

1

## JURY INSTRUCTION NO. 12

2

3           The parties have agreed to certain facts to be placed in evidence.  You

4      should therefore treat these facts as having been proved.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT  3
PAGE  98

# JURY INSTRUCTION NO. 13

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The depositions of a number of witnesses were taken in this case. You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

-14-    Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT    3
PAGE    99

# JURY INSTRUCTION NO. 14

The evidence that a witness has lied under oath on a prior occasion or given inconsistent testimony under oath may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT 3
PAGE 100

Case 2:04-cv-09049-DOC-RNB   Document 4683-5   Filed 01/12/09   Page 30 of 90   Page ID
#:133755
Case 2:04-cv-09049-SGL-RNB   Document 4315   Filed 07/10/2008   Page 17 of 37

1

## JURY INSTRUCTION NO. 15

2

3

4        Evidence has been presented to you in the form of answers of one of the

5    parties to written interrogatories submitted by the other side.  These answers have

6    been given in writing and under oath, before the actual trial, in response to

7    questions that were submitted in writing under established court procedures.  You

8    should consider the answers, insofar as possible, in the same way as if they were

9    made from the witness stand by the party that responded to the written

10   interrogatories.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-16-    Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT ___3___
PAGE ___101___

Case 2:04-cv-09049-DOC-RNB   Document 4683-5   Filed 0?/1?/09   Page 31 of 90   Page ID
#:133776
Case 2:04-cv-09049-SGL-RNB   Document 4115   Filed 07/10/2008   Page 18 of 37

## JURY INSTRUCTION NO. 16

Evidence has been presented to you in the form of admissions of one of the parties to written requests submitted by the other side. These answers have been given in writing and under oath, before the actual trial, in response to requests that were submitted in writing under established court procedures. The matters admitted are deemed conclusively established as to the party that made the admission.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT   3
PAGE   102

## JURY INSTRUCTION NO. 17

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

-18-

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT __3__
PAGE __103__

Case 2:04-cv-09049-DOC-RNB    Document 4683-5    Filed 01/14/09    Page 33 of 90    Page ID
#:133778
Case 2:04-cv-09049-SGL-RNB    Document 4115    Filed 07/10/2008    Page 20 of 37

1

## JURY INSTRUCTION NO. 18

2

3

4    Certain charts and summaries not received in evidence have been shown to

5 you in order to help explain the contents of books, records, documents, or other

6 evidence in the case.  They are not themselves evidence or proof of any facts.  If

7 they do not correctly reflect the facts or figures shown by the evidence in the case,

8 you should disregard these charts and summaries and determine the facts from the

9 underlying evidence.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT   3
PAGE   104

1

## JURY INSTRUCTION NO. 19

2

3

4      Certain charts and summaries have been received into evidence to illustrate

5   information brought out in the trial.  Charts and summaries are only as good as the

6   underlying evidence that supports them.  You should, therefore, give them only

7   such weight as you think the underlying evidence deserves.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT ___3___
PAGE ___105___

## JURY INSTRUCTION NO. 20

1

2

3        All parties are equal before the law and a corporation is entitled to the same

4   fair and conscientious consideration by you as any party.

5

6        Under the law, a corporation is considered to be a person.  It can only act

7   through its employees, agents, directors, or officers.  Therefore, a corporation is

8   responsible for the acts of its employees, agents, directors, and officers performed

9   within the scope of authority.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. Case No. CV 04-9049 SGL (RNBx)
                                      JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT  3
PAGE  106

## JURY INSTRUCTION NO. 21

In its first claim, Mattel contends that it has certain rights to all Bratz-related ideas, concepts, drawings, designs, and other works "conceived or reduced to practice," that is, created, by Carter Bryant, alone or jointly with others, while he was employed by Mattel, including Bratz drawings and the idea for the name "Bratz."

MGA and Isaac Larian deny Mattel's contention.

Mattel's claim is based on a contract between Carter Bryant and Mattel called the "Employee Confidential Information and Inventions Agreement" or simply the "Inventions Agreement." As a matter of law, the Inventions Agreement is a valid and enforceable agreement.

Section 2(a) of the Inventions Agreement provides:

"I agree to communicate to the Company as promptly and fully as practicable all inventions [as defined below] conceived or reduced to practice by me (alone or jointly [with] others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title

-22-

EXHIBIT 3
PAGE 107

and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents, and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings."


The Inventions Agreement defines the term "inventions" as follows:


"[T]he term 'inventions' includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable."


To prevail on its first claim, Mattel must show, by the preponderance of the evidence, that any particular Bratz-related idea, concept, drawing, design or work was "conceived or reduced to practice," that is, created, by Mr. Bryant, alone or jointly with others, while employed by Mattel.


It is for you to decide what, if any, Bratz-related works were created by Mr. Bryant, alone or jointly with others, while he was employed by Mattel.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT ___3___
PAGE ___108___

## JURY INSTRUCTION NO. 22

In its second claim, Mattel contends that that MGA and Isaac Larian intentionally interfered with the Inventions Agreement between Mattel and Carter Bryant. To establish this claim, Mattel must prove the following by a preponderance of the evidence:

1.      That there was a contract or contracts between Mattel and Carter Bryant;

2.      That MGA and/or Mr. Larian knew of the contract;

3.      That MGA and/or Mr. Larian intended to disrupt the performance of this contract;

4.      That the conduct of MGA and/or Mr. Larian prevented performance or made performance more difficult;

5.      That Mattel was harmed in some way; and

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT 3
PAGE 109

Case 2:04-cv-09049-DOC-RNB    Document 4683-5    Filed 01/12/09    Page 39 of 90    Page ID
#:132784
Case 2:04-cv-09049-SGL-RNB    Document 4145    Filed 07/10/2008    Page 26 of 37

1      6.      That the conduct of MGA and/or Mr. Larian was a substantial factor

2  in causing Mattel's harm.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-25-                    Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT    3
PAGE    110

Case 2:04-cv-09049-DOC-RNB  Document 4683-5  Filed 02/04/09  Page 40 of 90  Page ID
#:133785
Case 2:04-cv-09049-SGL-RNB  Document 4115  Filed 07/10/2008  Page 27 of 37

1

2    ## JURY INSTRUCTION NO. 23

3

4        As a matter of law, there was a valid contract between Mattel and Mr.

5

6    Bryant, namely the Inventions Agreement.

7

8        As a matter of law, Mr. Bryant directly competed with Mattel by entering

9

10   into a contract with MGA, Mattel's competitor, to produce a competing product

11   while he was still employed by Mattel.  Whether the remaining requirements of

12   Mattel's claim for intentional interference with contractual relations have been

13

14   satisfied or not is for you to decide.

15

16        It is also a matter of law that MGA and/or Isaac Larian's mere offering of

17

18   employment to Carter Bryant would not be sufficient, by itself, to establish an

19   intentional interference with the contract between Mattel and Mr. Bryant.

20

21

22

23

24

25

26

27

28

EXHIBIT ___3___
PAGE ___111___

1

## JURY INSTRUCTION NO. 24

2

3          In deciding whether MGA or Isaac Larian acted intentionally, you may

4

consider whether they knew that a disruption in the performance of a contract or

5

contracts was substantially certain to result from their conduct.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. Case No. CV 04-9049 SGL (RNBx)
                                                            JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT ___3___
PAGE ___112___

## JURY INSTRUCTION NO. 25

1
2
3       In its third and fourth claims, Mattel contends that MGA and Isaac Larian
4
5   aided and abetted Carter Bryant's breaches of (1) his fiduciary duty to Mattel and
6   (2) his duty of loyalty to Mattel.  To establish that MGA and/or Mr. Larian are
7   liable for aiding and abetting breaches of fiduciary duty or breach of the duty of
8
9   loyalty, Mattel must prove the following by a preponderance of the evidence:
10
11       1.    Mr. Bryant's conduct constituted a breach of such duty or duties;
12
13
14       2.    MGA and/or Mr. Larian knew that Mr. Bryant's conduct constituted a
15   breach of duty or duties; and
16
17
18       3.    MGA and/or Mr. Larian gave substantial assistance or encouragement
19   to Mr. Bryant to breach his duty or duties.
20
21
22
23
24
25
26
27
28

-28-       Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT ___3___
PAGE ___113___

Case 2:04-cv-09049-DOC-RNB   Document 4683-5   Filed 0/12/09   Page 43 of 90   Page ID
#:133788
Case 2:04-cv-09049-SGL-RNB   Document 4115   Filed 07/10/2008   Page 30 of 37

## JURY INSTRUCTION NO. 26

To establish that Mr. Bryant breached his fiduciary duty to Mattel, Mattel must prove the following by a preponderance of the evidence:

    1.    That Mr. Bryant owed a fiduciary duty to Mattel;

    2.    That Mr. Bryant breached his fiduciary duty to Mattel;

    3.    That Mattel did not give informed consent to Mr. Bryant's conduct;

    4.    That Mattel was harmed in some way; and

    5.    That Mr. Bryant's conduct was a substantial factor in causing Mattel's harm.

Once a party assumes a fiduciary duty to another, that party is obligated to act on behalf of the other party, to hold the interest of the other paramount over his own interests, and to take no action that would further his interests over the other person's interest.

EXHIBIT __3__
PAGE __114__

Case 2:04-cv-09049-DOC-RNB   Document 4683-5   Filed 01/12/09   Page 44 of 90   Page ID
#:133789
Case 2:04-cv-09049-SGL-RNB    Document 4115    Filed 07/10/2008    Page 31 of 37

## JURY INSTRUCTION NO. 27

To establish that Mr. Bryant breached his duty of loyalty to Mattel, Mattel must prove the following by a preponderance of the evidence:

1.    That Mr. Bryant was Mattel's employee;

2.    That Mr. Bryant knowingly acted against Mattel's interests while he was employed by Mattel;

3.    That Mattel did not give informed consent to Mr. Bryant's conduct;

4.    That Mattel was harmed in some way; and

5.    That Mr. Bryant's conduct was a substantial factor in causing Mattel's harm.

An employee owes his or her employer a duty of loyalty.  The scope of the employee's duty varies with the nature of the employee's relationship with his employer.

-30-        Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT  3
PAGE  115

Case 2:04-cv-09049-SGL-RNB   Document 4115   Filed 07/10/2008   Page 32 of 37

## JURY INSTRUCTION NO. 28

As a matter of law, Carter Bryant owed both a fiduciary duty and duty of loyalty to Mattel.

Mr. Bryant's fiduciary duty to Mattel is predicated upon paragraph 1(a) of the Inventions Agreement and is related to Mr. Bryant's obligation to keep Proprietary Information confidential.

Section 1(a) of the Inventions Agreement provides:

"I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust."

The Inventions Agreement defines the term "Proprietary Information" as follows:

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT 3
PAGE 116

Case 2:04-cv-09049-DOC-RNB   Document 4683-5   Filed 04/12/09   Page 46 of 90   Page ID
#:133791
Case 2:04-cv-09049-SGL-RNB   Document 4115   Filed 07/10/2008   Page 33 of 37

1    "'Proprietary Information' means any information (including formula,

2    pattern, compilation, device, method, technique or process) that derives

3    independent economic value, actual or potential, from not being generally known

4

5    to the public or to other persons who can obtain economic value from its disclosure

6    or use, and includes information on the Company, its customers, suppliers, joint

7    ventures, licensors, licensees, distributors, and other persons and entities with

8

9    whom the Company does business."

10

11   As a matter of law, Mr. Bryant breached his duty of loyalty to Mattel when

12

13   he entered into a contract with MGA, Mattel's competitor, while still employed by

14   Mattel, to produce a line of fashion dolls to be marketed in direct competition with

15   Mattel's products.

16

17

18   At the same time, merely seeking employment from a competitor, and a

19   failure to notify an employer of a decision to seek new employment until a

20   decision is final, does not constitute a breach of duty of loyalty.

21

22

23

24

25

26

27

28

-32-        Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT _3_

PAGE _117_

Case 2:04-cv-09049-DOC-RNB   Document 4683-5   Filed 07/11/09   Page 47 of 90   Page ID
#:133782
Case 2:04-cv-09049-SGL-RNB   Document 4115   Filed 07/10/2008   Page 34 of 37

# JURY INSTRUCTION NO. 29

1
2
3       In its final claim, Mattel contends that MGA, MGA Entertainment (HK)
4 Limited, and Isaac Larian wrongfully exercised control over Mattel's property,
5
6 including tangible Bratz-related works such as Mr. Bryant's drawings. To establish
7 this claim for conversion, Mattel must prove the following by a preponderance of
8 the evidence:
9
10
11      1.      That tangible property was "conceived or reduced to practice" --- that
12 is, created --- by Carter Bryant, alone or jointly with others, during the period in
13
14 which he was employed by Mattel (January 4, 1999, to October 19, 2000);
15
16      2.      That any of the defendants intentionally took possession of such
17
18 property for a significant period of time;
19
20      3.      That Mattel did not consent;
21
22
23      4.      That Mattel was harmed; and
24
25
26      5.      That any one of the defendant's conduct was a substantial factor in
27 causing Mattel's harm..
28

EXHIBIT ___3___
PAGE ___118___

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURY INSTRUCTION NO. 30

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

EXHIBIT _3_
PAGE _119_

## JURY INSTRUCTION NO. 31

        If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT   3
PAGE   120

Case 2:04-cv-09049-DOC-RNB  Document 4683-5  Filed 01/14/09  Page 50 of 90  Page ID
#:139785
Case 2:04-cv-09049-SGL-RNB  Document 49785  Filed 07/10/2008  Page 37 of 37

## JURY INSTRUCTION NO. 32

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT 3
PAGE 121

# EXHIBIT 4

## EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when I end my employment with the Company I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

### 1. Provisions Related to Trade Secrets

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

### 2. Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully as practicable all inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

### 3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

### 4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will insure to the benefit of and be binding upon the successors and assigns of the the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company; or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

Employee Signature _____

Employee Name (print)  CARTER H. BRYANT

Date  01/04/99

MATTEL, INC.
By _____
Signature

Name of Witness (print)  TERESA NEWCOMB

M 0001596

DEPOSITION EXHIBIT
25
11-8-04          SH

EXHIBIT  4
PAGE  122

EX 25-0001

# EXHIBIT 5

Final

**MGA ENTERTAINMENT**
**16730 Schoenborn Street**
**North Hills, California 91343**

Dated as of September 18, 2000

Mr. Carter Bryant
1319 West 160th Street
Gardena, California 90247

Dear Mr. Bryant:

Set forth below are the terms and conditions upon which we (hereinafter "MGA") are retaining you ("Bryant") to consult and advise MGA in the design and development of certain products which MGA wishes to manufacture and distribute (hereinafter our agreement is sometimes referred to as the "MGA Consulting Agreement"). The parties' agreement is as follows:

1.    Retention as Consultant/Services: MGA retains Bryant to provide his services to consult with MGA and advise MGA on the design and development by MGA of a line of dolls presently known as "Bratz" (the "MGA Products"). Bryant will render his services at such locations and times as may be reasonably be designated by MGA. It is understood and agreed that Bryant shall provide his services on a "top priority" basis as his services pertain to other clients of Bryant. In addition, Bryant and all other Bryant staff will take direction from and be under the supervision of such person(s) as may be reasonably designated by MGA from time to time upon notice to Bryant. It is understood and agreed that, subject to MGA's prior written consent, Bryant may retain third party contractors ("Contractors") to assist at his direction in the services to be rendered hereunder.  Such third parties shall be compensated in a manner ("Contractor Fees") to be determined between Bryant and such third parties and shall be subject to the terms of this Agreement, including without limitation, paragraphs 3, 4, and 7, below. Bryant shall enter into agreements with all Contractors on a form approved by MGA as conforming to the terms of this Agreement and confirming MGA's ownership of all results and proceeds of the services provided by any such Contractors; such form is attached a Exhibit "A" to this Agreement, and is incorporated herein by reference.

2.    Term/Exclusivity:  The Term shall commence on the date of this Agreement.  MGA shall have the right to terminate this Agreement on not less than forty-five (45) days prior written notice to Bryant. During the Term of this Agreement, Bryant will not provide consulting services to any person, firm or corporation engaged in the design, development and manufacture and sale of dolls or similar products.

3.    Ownership:

(a)    All results and proceeds of the services provided by Bryant hereunder and any Contractor, including without limitation, any inventions, and any documentation related thereto, and any other material, whether written or oral (collectively, the "Bryant Work Product") shall be considered "work made for hire" and shall be owned exclusively, throughout the world, and in perpetuity by MGA (including all copyrights and patents therein and thereto, and all renewals and extensions thereof). MGA shall have the sole and exclusive right to use the Bryant Work Product, in whole or in part, in whatever manner MGA may desire, including without limitation, the right to cut, edit, revise, alter and/or otherwise modify the Bryant Work Product and the results of Bryant's services hereunder and the Contractors' services, and to freely use, perform, distribute, exhibit and exploit such materials and license others to do so in any and all media now known or hereafter devised.  MGA shall have the sole and exclusive right to copyright or patent the Bryant Work Product in MGA's name, as the owner and author thereof, and to secure any and all registrations, renewals and extensions of such copyrights and

{00006662.DOC/2 / 10/04/2000  03:05 PM}

1

ATTORNEY'S EYES
ONLY

BRYANT 00794

DEPOSITION
EXHIBIT
15
11-5-04        SH

EXHIBIT   5
PAGE   123

EX 15-0001

patents in MGA's name or Bryant's name or the Contractors' names, as permitted pursuant to applicable statute. Bryant expressly waives, and shall cause all Contractors to waive, any "moral rights" (as such term is commonly understood around the world) in and to the Bryant Work Product prepared by Bryant and/or the Contractors pursuant to the Agreement. Bryant shall, upon request, execute, acknowledge and deliver, and shall cause each Contractor to execute, acknowledge and deliver, to MGA such additional documents as MGA may deem necessary to evidence and effectuate MGA's rights hereunder, and Bryant hereby grants to MGA the right as Bryant's attorney-in-fact to execute, acknowledge, deliver and record in the U.S. Copyright Office, the U.S. Patent Office or elsewhere any and all such documents. If, whether by statutory amendment to the U.S. Copyright and/or Patent Laws, or a decision by a court of competent jurisdiction interpreting such laws, MGA shall not be deemed to be the author or owner of the Bryant Work Product, this Agreement and each agreement with a Contractor shall, nevertheless, constitute an irrevocable assignment by Bryant and each Contractor, as applicable, to MGA of any and all of Bryant's and each Contractors' right, title and interest, including copyright and patent (and all renewals and extensions thereof), in and to the Bryant Work Product. Bryant acknowledges and agrees, and shall cause each Contractor to acknowledge and agree, that he and they have no interest in and shall not, by virtue of this Agreement or any services rendered by Bryant and/or each Contractor to MGA acquire any interest in the MGA Products and that MGA may exploit the MGA Products and any derivative works thereto, without obligation to Bryant and/or the Contractors, except as provided in Paragraph 4, below.

(b)     Without limiting the generality of the provisions of Paragraph 3(a), above, with respect only to any inventions, and any documentation related thereto, and any other material, whether written or oral, created by or for Bryant relating to the MGA Products prior to the commencement of the term of this Agreement, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Bryant, Bryant hereby irrevocably grants, conveys, transfers, sets over and assigns to MGA in perpetuity all of Bryant's right, title and interest, in an to the such material, including, without limiting the generality of the foregoing, all rights under copyright and patent (and all renewals and extensions thereof) including the right to produce and authorize the production of any and all derivative works, and all proprietary rights of any kind therein, now known or hereafter created throughout the world. MGA shall have the sole and exclusive right to use such material, in whole or in part, in whatever manner MGA may desire, including without limitation, the right to cut, edit, revise, alter and/or otherwise modify such materials and to freely use, perform, distribute, exhibit and exploit such materials and license others to do so in any and all media now known or hereafter devised or refrain from doing so as MGA may determine. Bryant expressly waives any "moral rights" (as such term is commonly understood around the world) in and to such materials.

4.     <u>Compensation/Costs</u>:

(a)     For the first six (6) months of the Term of this Agreement, MGA shall pay Bryant for his services at the rate of five thousand five hundred dollars ($5,500.00) per month; for the next three (3) months of the Term, MGA shall pay Bryant for his services at the rate of five thousand dollars ($5,000.00) per month. All sums paid to Bryant as monthly fees shall be deemed to be non-refundable, fully-recoupable advances against any royalties that may be payable to Bryant pursuant to paragraph 4(b), below.

(b)     MGA shall pay to Bryant a royalty of three percent (3%) of the Net Sales Receipts from the sales by MGA of any of the MGA Products developed by MGA on which Bryant provided his consulting services. As used herein, the term "Net Sales Receipts" means all monies actually received by MGA from its customers on sales of MGA Products less (i) any and all excise, sales, value added or comparable or similar taxes; (ii) freight and similar third party handling charges paid or payable by MGA; and (iii) returns, discounts, allowances or credits (inclusive of co-op and trade discounts and allowances). MGA shall account to Bryant on a calendar quarterly basis within thirty (30) days after the end of each quarter. All statements of royalties rendered by MGA hereunder shall be conclusive, final,

{00006662.DOC/2 7 10/04/2000  03:05 PM}

2

ATTORNEY'S EYES ONLY

BRYANT 00795

EXHIBIT   5
PAGE   124

EX 15-0002

and binding on Bryant, shall constitute an account stated, and shall not be subject to any question for any reason whatsoever unless specific written objection, stating the basis thereof, is given by Bryant to MGA within two (2) years after the date rendered. No action, suit, or proceeding of any nature in respect of any royalty statement or other accounting rendered by MGA hereunder may be maintained against MGA unless such action, suit, or proceeding is commenced against MGA in a court of competent jurisdiction within one (1) year after the date of MGA's notice rejecting such objection. Bryant or his representatives shall have the right, not more than once per year and not more than once per statement of royalties, to examine MGA's books and records relating to the sales of such MGA Products, such examination to be conducted during MGA's normal business hours and upon reasonable prior written notice.

(c)      All costs and expenses incurred by Bryant in connection with the performance of his obligations hereunder shall be borne solely by Bryant, except as otherwise agreed and incurred with MGA's prior written consent. In the event MGA requests Bryant to travel to the Orient on MGA's behalf in connection with his services hereunder, MGA will reimburse Bryant for all travel expenses incurred in connection therewith, such as parking, airfare (economy class), auto rental, meals and hotel accommodations. Reimbursement shall be at the actual cost of such item without any mark-up.

(d)      Bryant shall submit invoices to MGA for his monthly fees (and reimbursable expenses, if and as agreed) on a monthly basis. Each invoice shall provide sufficient detail to support the monthly fee charges and hours rendered (and shall include satisfactory copies of bills and/or payments for reimbursable expenses, as applicable). MGA shall pay each such invoice within fifteen (15) days after receipt of such invoice, provided, however, MGA reserves the right to request further explanation or documentation before paying any invoice submitted by Bryant.

(e)      MGA shall use its reasonable business efforts, consistent with its business judgment, to market, promote, distribute, sell and/or exploit the MGA Products and to collect on all monies due from sales. MGA has not made and does not hereby make any representation or warranty with respect to the quantity of sales (if any) of MGA Products embodying the Property which MGA may sell. Bryant recognizes and acknowledges that the sale of MGA Products is speculative and agrees that MGA's judgment and the judgment of its subsidiaries and affiliated companies with regard to the sales of any of its MGA Products and with regard to the marketing, promotion, advertising and exploitation of the MGA Products shall be binding and conclusive upon Bryant. Bryant warrants and agrees that Bryant will not make any claim, nor shall any liability be imposed upon MGA based upon any claim, that more sales could have been made or that better business could have been done than what was actually made or done by MGA or any of MGA's subsidiaries or its affiliated companies, or that better prices or terms could have been obtained.

5.      **Warranties and Indemnity:** Bryant represents, warrants and agrees that:

(a)      he has the right and is free to execute this Agreement, to grant the rights granted by him to MGA hereunder, and to perform each and every term and provision hereof;

(b)      neither the execution and delivery of this Agreement nor the performance by Bryant of any of his obligations hereunder will constitute a violation, breach or default under any agreement, arrangement or understanding, or any other restriction of any kind, to which Bryant is a party or by which Bryant is bound;

(c)      the Bryant Work Product shall be free of all liens and encumbrances and there will be no claims, demands or actions pending or threatened with respect thereto; and that the Bryant Work Product is original and no part thereof infringes or shall infringe upon any common law or statutory rights or intellectual property rights of any third party including, without limitation, contractual rights,

{00006662.DOC/2 / 10/04/2000  03:05 PM}

3

ATTORNEY'S EYES ONLY                    BRYANT 00796

EXHIBIT   5
PAGE   125

EX 15-0003

patents, copyrights, mask-work rights, trade secrets, rights of privacy and other intellectual property rights;

(d)       he shall comply with all applicable laws and regulations in force during the Term of this Agreement with respect to the services to be rendered hereunder; and

(e)       he shall indemnify and hold MGA harmless from and against any and all claims, losses, costs, judgments, settlements, damages and expenses (including reasonable counsel fees) arising from any breach by him of any of the warranties, representations and agreements made by him hereunder.

6.       **Default/Termination:**

(a)       In the event either Party fails to perform any of its material obligations hereunder, or breaches any representation, warranty or agreement contained herein, the other Party may terminate this Agreement on thirty (30) days prior written notice, provided the breaching Party shall not have remedied such failure within such thirty (30) day period.

(b)       Upon the termination of this Agreement Bryant shall turn over to MGA all materials relating to the MGA Products furnished by MGA to Bryant or shall give MGA satisfactory evidence of their destruction.

7.       **Confidentiality:**

(a)       Bryant shall keep in confidence and not disclose to any third party, without the written permission of MGA, the Confidential Information made known to him under this Agreement.  As used herein, the term "Confidential Information" means information relating to MGA's products (whether current or projected), product titles, customers, employees, tools and techniques, designs, drawings, schematics and other documentation relating thereto and other confidential and proprietary business information of MGA and which is expressly labeled or identified to Bryant in writing as "confidential" or which, under the circumstances of such disclosure, Bryant knows, or reasonably should know, are treated by MGA as confidential.  This requirement of confidentiality shall not apply to any information that is (i) in the public domain through no wrongful act of Bryant; (ii) rightfully received by the Bryant from a third party who is not bound by a restriction of nondisclosure; (iii) already in the Bryant's possession without restriction as to disclosure; or (iv) required to be disclosed by operation of law or by order of a court or administrative body of competent jurisdiction, (provided that prior to such disclosure, MGA shall first receive notice thereof from Bryant and have the opportunity to contest such order or requirement of disclosure or seek appropriate protective order).

(b)       Bryant agrees and acknowledges that all Confidential Information disclosed to him shall be and remain the sole property of MGA. Nothing contained in this Agreement shall be construed as granting to Bryant any right, title or interest of any kind, by license or otherwise, to the Confidential Information disclosed by MGA, the intellectual property therein or any part or copy thereof. Bryant further acknowledges and agrees that nothing contained herein shall be construed as granting Bryant any right to develop, manufacture, produce and/or distribute any product(s) derived from or which otherwise uses any of the Confidential Information disclosed by MGA, or authorize or in any way assist others to do so.  Bryant may not make, sell, license or distribute copies of the Confidential Information disclosed by MGA and may not sublicense, transfer or assign in any manner whatsoever this Agreement or any of Bryant's rights or obligations under this Agreement.

(c)       Bryant acknowledges that his failure to perform any of the terms or conditions of this Agreement shall result in immediate and irreparable damage to MGA. Bryant also acknowledges that there may be no adequate remedy at law for such failures and that in the event thereof MGA shall be

{00006662.DOC/2 / 10/04/2000  03:05 PM}

4

ATTORNEY'S EYES ONLY

BRYANT 00797

EXHIBIT ___5___

PAGE ___126___

EX 15-0004

entitled to equitable relief in the nature of injunction and to all other available relief, at law and/or in equity.

8.　Notices: All notices, statements and/or payments to be given to the parties hereunder shall be addressed to the parties at the addresses set forth on the first page hereof or at such other address as the parties shall designate in writing from time to time. All notices shall be in writing and shall either be served by personal delivery, mail, or facsimile (if confirmed by mail or personal delivery of the hard copy), all charges prepaid. Except as otherwise provided herein, such notices shall be deemed given when personally delivered, all charges prepaid, or on the date five (5) days following the date of mailing, except that notices of change of address shall be effective only after the actual receipt thereof. Copies of all notices to MGA shall be sent to Fischbach, Perlstein & Lieberman LLP, 1875 Century Park East, Suite 850, Los Angeles, California 90067, Attention: David S. Rosenbaum, Esq. Copies of all notices to Bryant shall be sent to Carter Bryant 1319 West 160th Street, Gardena, California 90247.

9.　Independent Contractor/No Partnership/Third Party Beneficiary: Bryant's relationship with MGA is that of an independent contractor. Bryant does not have, and will not represent that he has, any power, right or authority to bind MGA, or to assume or create any obligation or responsibility, express or implied, on behalf of MGA in MGA's name. Nothing stated in the Agreement shall be construed as constituting a partnership or as creating the relationships of employer/employee or principal/agent between the parties. In all matters relating to the Agreement, Bryant shall not act as MGA's employee within the meaning or application of any federal or state unemployment insurance laws, or any other laws or regulations which may impute any obligations or liabilities to MGA by reason of an employment relationship. Bryant will be solely responsible for all taxes, including without limitation, employee and employer, and that he carries all of his own insurance. Neither of the parties hereto shall hold itself out contrary to the terms of this provision by advertising or otherwise. This Agreement shall not be construed to be for the benefit of any third party.

10.　Services Rendered Deemed Special, etc.: Bryant acknowledges that the services to be rendered by him hereunder are of a special, unique, extraordinary and intellectual character which gives them peculiar value, the loss of which cannot be adequately compensated for in an action at law and that a breach of any term, condition or covenant hereof will cause irreparable harm and injury to MGA and in addition to any other available relief MGA will be entitled to seek injunctive relief.

11.　General Provisions:

(a)　This Agreement may not be assigned by either Party hereto either voluntarily or by operation of law. Any such assignment shall not relieve such Party of its obligations hereunder.

(b)　The titles of the paragraphs of this Agreement are for convenience only and shall not in any way affect the interpretation of any paragraph of this Agreement or the Agreement itself.

(c)　A waiver by either Party of the terms or conditions of this Agreement in any instance shall not be deemed or construed to be a waiver of such terms or conditions for the future or of any subsequent breach thereof. All remedies, rights, undertakings, obligations and agreements contained herein shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either Party.

(d)　Neither Party hereto shall be liable to the other for any incidental, consequential, special or punitive damages of any nature or kind, arising out of in connection with a breach by such Party of this Agreement, whether such liability is asserted on the basis of contract, tort (including negligence or strict liability), or otherwise, even if such Party has been warned of the possibility of any such loss or damage.

[00006662.DOC/2 / 10/04/2000  03:05 PM]

5

ATTORNEY'S EYES ONLY

BRYANT 00798



EXHIBIT 5
PAGE 127

EX 15-0005

IO.30Aq        4908494881B                                    IS:9I 00, 40 IJO

(e)     This Agreement shall be construed and interpreted pursuant to the laws of the State of California, applicable to agreements made and to be performed entirely therein, and the parties hereto submit and consent to the jurisdiction of the courts of the State of California, including Federal Courts located therein, should Federal jurisdiction requirements exist, in any action brought to enforce (or otherwise relating to) this contract.

(f)     This Agreement constitutes the entire Agreement between the parties hereto and supersedes all prior agreements, whether written or oral, with respect to the subject matter herein contained. No provision of this Agreement shall be deemed waived, amended or modified by either Party unless such waiver, amendment or modification shall be in writing and signed by a duly authorized officer of the Party against whom the waiver, amendment or modification is to be enforced.

(g)     Nothing contained in this Agreement shall be construed so as to require the commission of any act contrary to law, and wherever there is any conflict between any provision of this Agreement and any material statute, law, ordinance, order or regulation contrary to which the parties hereto have no legal right to contract, the latter shall prevail, but in such event any provision of this Agreement so affected shall be curtailed and limited only to the extent necessary to bring it within the legal requirements.

Kindly indicate your agreement with the foregoing by signing in the space provided below.

Very truly yours,

MGA ENTERTAINMENT

By: _____

Its: _____

AGREED TO AND ACCEPTED:

_____
CARTER BRYANT

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
Social Security Number

[00008662.DOC/2 / 10/04/2000  03:05 PM]

6

BRYANT 00799

ATTORNEY'S EYES ONLY        4908494881B          juewujejnejue e2w        d8E:40 00 40 JJO

EXHIBIT  5
PAGE  128

EX 15-0006

# EXHIBIT 6



**Corporate Office:**
16730 Schoenborn Street
North Hills, CA 91343-6122 USA
Tel 818.894.2525
Fax 818.894.8094

April 4, 2000

Ms. Paula Treantafelles
5622 Sunnyview Drive
Torrance, CA. 90505

Dear Paula:

We are pleased to extend to you an offer of employment for the position of **Associate Product Manager** at MGA Entertainment.

Your compensation package will be as follows:

1. **Base Salary:**   $50,000 per year, paid biweekly

2. **Bonus:**   Management Bonus Program: Up to **a maximum of 15%** of your base of $50,000. Your 2000 bonus is described in the attachment.

3. **Annual Review:**   You will be reviewed in January 2001.

4. **401(k) Plan:**   Will be eligible for enrollment in 401(k) Plan in January 2001. Company match to your contribution is 25% up to 5%.

5. **Business Travel:**   The Company will pay for coach class tickets for both international and domestic travel.

6. **Health Benefits:**   Health Insurance: There is no charge for you under HMO and a monthly fee for you and your dependents under the indemnity plan (see attachment).

Exhibit 117
Garcia
10 10 07 8 pages
J'ana Siegers, CSR 10845

**Hong Kong Office:**
Unit 707-8 Multifield Plaza
3-7A Prat Ave., TST,
Kowloon, Hong Kong
**Hong Kong Showroom:**
11 Canton Road, Suite 1015
TST, Kowloon
Tel 852.2926.8008

Confidential - Attorney's Eyes Only

EXHIBIT 6
PAGE 129

MGA 0876578

EX 1117-0001

<u>Dental Plan:</u>  There is no charge for you under DMO and a monthly fee for you and your dependents under the Indemnity plan (see attachment).

<u>Life Insurance:</u>  1 x annual income, premium paid by Company.

<u>Accidental Death & Dismemberment:</u>  Up to 1x annual income, premium paid by Company.

7. **Vacation:**          Two weeks paid vacation per year

8. **Employee Handbook:**          MGA requires all employees to sign an Employee Handbook, which includes a Confidentiality Agreement, an "At Will Clause/Statement", and a Mutual Agreement to Arbitrate and Mediate.  These will be presented to you for your signature upon the commencement of your employment.

This agreement is binding upon Paula Treantafelles and ABC International Traders, Inc. and their respective heirs, successors, assignees, fiduciaries or other legal representatives.

I trust this offer letter addresses all open issues and look forward to an ongoing, productive relationship.

Sincerely,

Mary Claire Tiffany

Mary Claire Tiffany
Human Resources Manager

Enclosures

Confidential - Attorney's Eyes Only

EXHIBIT 6
PAGE 130

MGA 0876579

EX 1117-0002

## CONFIDE___ IALITY AND INVENTIONS ASC_ JNMENT AGREEMENT

This Confidentiality and Inventions Agreement is executed by and between ABC Int' Traders, Inc. ("Company") and _PAMUATIVAANUTCIC-_ ("Employee").

During the course of his/her employment at the Company, Employee will have access to, will acquire, and will become acquainted with trade secrets, confidential information and property related to the Company and its customers' and vendors' businesses. The Company's trade secrets include, but are not limited to, such information as customer names, addresses phone numbers, names, specific characteristics of suppliers and customers and their respective employees with whom the Company has dealings (whether or not such information is contained on a Rolodex, computer printout, customer list, or is orally communicated to any Company employee in the course of their duties) and the history of purchases, along with terms and conditions of credit offered to each customer; names, addresses, telephone numbers and specific characteristics of prospective customers and contacts; information regarding particular customer product peculiarities, manners of doing business, needs and requirements; product specifications and performance needs for each customer; and the prices charged to each customer; customer information reports, pricing information (such as price lists, quotation guides, previous or outstanding quotations, equipment prices or billing information), mailing labels, mailing plans and programs, sales report forms, pending projects or proposals, techniques used in approaches or results of any market research, advertising sources, employee salaries, contracts and wage information, names and addresses of the vendors, manufacturers, and other suppliers of Company products, the products they supply the applicable prices and discounts, and the applicable product specifications; new products or inventions developed or under development by the Company; formulas, patterns compilations, programs, devises, methods, techniques, processes, pictures, contracts, files methods or production (including quality control and packaging), proposals, business plans and projections, budgets, financial information, software, hardware, any patent application o the contents thereof; and all other material relating in any manner whatsoever to the customers products, vendors, and suppliers of Company, including matters which should reasonably be considered trade secrets even if not expressly described herein.

All information obtained in the course of Employee's employment is to be used only fo the purpose of conducting the Company's business. Employee agrees to never discuss o disclose such trade secrets, confidential information or property, either directly or indirectly with or in the presence of persons outside the Company, either during employment, or at any time thereafter, except as required by Employee's supervisor. Employee further agrees tha information in any form, including but not limited to documents, tapes, lists, computer printouts, studies, reports, drafts, pictures, charts, maps, drawings, programs, equipment scrap, blueprints, vendor lists, customer lists, client billing information, all financial reports payroll information, records, files and other materials pertaining to the Company, its customers and vendors, may not be removed from the facilities without the advance written permission of Employee's supervisor.

Employee acknowledges that all such trade secrets or confidential information, or any copies of summaries thereof, whether prepared by Employee, by the Company, or provided to Employee by the Company, is the exclusive property of the Company. On demand or termination of employment for any reason, Employee agrees to return to the Company al

Confidential - Attorney's Eyes Only

EXHIBIT ___ 6

PAGE ___ 131

MGA 0876580

EX 1117-0003

papers, records, electronic copies, and documents in employee's possession or obtained during the course of Employee's employment with the Company and Employee further agrees that he/she will not retain any copies, nor permit anyone to retain any copies thereof, except that those who have successfully completed their 90 day introductory period may keep their Franklin Planner.

Employee acknowledges and agrees that the trade secrets described herein have independent economic value in that they are not generally known within the trade they represent many years of research and development and give the Company substantial competitive advantages.

As a condition of employment, Employee agrees that he/she (1) will regard and preserve the confidential information as highly confidential and as the trade secrets of the Company; (2) will not, at any time during or within twelve months after the termination of his/her employment with the Company, reveal, disclose, permit to be disclosed, or make known to any person, firm or corporation, any confidential information which was disclosed to Employee or of which he/she became aware during his/her employment, regardless of whether developed, prepared or created in whole or in part by Employee's efforts, except to the extent that such disclosure is necessary and is authorized in writing by the Company to carry out Employee's duties of employment; (3) will retain all confidential information in trust for the sole benefit of the Company and will not disclose to or use any confidential information in an independent business related to the scope of the Company's business (designer manufacturer and distributor of toy); (4) will not photocopy or duplicate, and will not permit any person to photocopy or duplicate, any of the confidential information without the Company's written consent and approval; (5) will not make any use of confidential information for his/her own benefit or the benefit of any person or entity other than the Company; (6) will return all confidential information (including but not limited to customer lists, books maintained by Employee, and source lists) to the Company immediately upon request for same. Employee agrees that if he/she has any questions about whether a matter is a trade secret, to seek a determination by the Company before he/she uses any such information.

Employee agrees to maintain the same level of confidentiality regarding co workers, employee relation matters, and Company operations. Employee agrees, by accepting employment or continued employment with the Company, to comply with these rules and to maintain confidentiality of the Company's trade secrets.

Employee understands and acknowledges that the trade secrets and confidential information of the Company are not known to the general public and are the subject of reasonable efforts to maintain its secrecy. They are of a special, unique and extraordinary character, which gives them a particular value, the loss of which cannot be reasonably compensated in damages in an action at law. Employee further understands and agrees that in addition to any other rights or remedies which the Company may have, the Company shall be entitled to immediate injunctive and other equitable relief to prevent a breach of this Confidentiality and Inventions Agreement. If any legal proceeding arises under this Confidentiality and Inventions Agreement, the prevailing party shall be entitled to recover all costs and expenses, including reasonable attorney's fees and costs. California law shall apply to this agreement as to contracts wholly performed within the state.

Confidential - Attorney's Eyes Only

EXHIBIT __6__
PAGE __132__

MGA 0876581

EX 1117-0004

Employee and  .e Company agree that this Con...Jentiality and Inventions Agreemer shall not apply to information that Employee was aware of prior to his/her employment wit the Company, or that is otherwise publicly known.

Employee further agrees that during his/her employment and for a period of twelv months after termination. Employee will not solicit the purchase of any products or service from any supplier or vendor who supplies products or services to the Company.

INVENTIONS ASSIGNMENT:

1. ASSIGNMENT OF INTEREST: Employee agrees to assign, and does hereby assign, t Company all interest which employee may have in all patentable and/or not-patentable idea and/or inventions made or conceived by Employee solely or jointly with others durin Employee's employment with Company. This assignment shall not apply to any idea o invention developed by Employee entirely on Employee's own time without equipment supplies, facilities, or trade secret information of Company, unless such invention or idea: (1 relates to the business of company or to Company's actual or anticipated research o development, or (2) results from any work performed by Employee for Company. THIS AGREEMENT DOES NOT APPLY TO ANY INVENTION WHICH QUALIFIES FULLY UNDEF THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 2870.

2. DISCLOSURE OF IDEAS OR INVENTIONS: Employee agrees to promptly disclose ir writing to Fred Larian all inventions developed solely or jointly with others during Employee's employment with Employer, whether such inventions are patentable, not-patentable o assignable under this Agreement. Employer agrees to maintain such disclosure in confidence

3. WRITTEN DISCLOSURE OF PRIOR INVENTIONS: Employee agrees to provide a complete list of all patented or not-patented ideas and inventions conceived by Employee o anyone else jointly with Employee, prior to the date Employee has signed this Agreement. The failure of Employee to provide Company with a written disclosure of ideas or inventions shall be deemed to constitute an affirmative acknowledgment by Employee that no such ideas or inventions exist.

If any provision of this Confidentiality and Inventions Agreement is held to be invalid or unenforceable, in whole or in part, the remaining portions of this Agreement shall continue to be valid and will be performed, construed and enforced to the fullest extent permitted by law. The invalid or unenforceable provision shall be deemed amended and limited in accordance with the intent of the parties, as determined from the face of this Agreement, to the extent necessary to permit the maximum enforceability or validation of the provision.

| 04.17.00 | _Paula Treantafelles_ | _Paula Treantafelles_ |
|---|---|---|
| Date | Employee Signature | Employee Name (printed) |
| _____ | _Employer Signature_ | _Eve Johnson-Frick_ |
| Date | Employer Signature | Name (printed) |

Confidential - Attorney's Eyes Only

EXHIBIT  6
PAGE  133

MGA 0876582

EX 1117-0005

## MUTUAL AGREEMENT TO MEDIATE AND/OR ARBITRATE

We recognize that differences may arise between us. Through this mutual agreement to mediate and/or arbitrate("Agreement"), _____ ("Employee"), and ABC Int'l Traders Inc. ("Company") expect to gain the benefits of a speedy, economical, impartial dispute resolution procedure. This Agreement provides as follows:

This Agreement shall apply to all disputes or controversies, whether or not arising out of Employee's employment (or termination of that employment), that the Company may have against Employee, or that employee may have against the Company or against its officers, directors, employees, or agents("Claims"). The Claims include, but are not limited to, controversies relating to: compensation or benefits, breach of any contract, torts, discrimination under state, federal or local law, and violation of any federal, state or other governmental law, statute, regulation or ordinance. However, this Agreement shall not apply to any claim: (a) by the employee for workers' compensation or unemployment benefits; or (b) by the Company for injunctive and/or other equitable relief; including, but not limited to, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information. With respect to matters referred to in sub-paragraph (b) above, the company may seek and obtain injunctive relief in court, and then proceed with arbitration under the Agreement.

**EACH PARTY WAIVES THE RIGHT TO A JURY TRIAL OR COURT TRIAL. THE SOLE AND EXCLUSIVE METHOD TO RESOLVE ANY CLAIM IS MEDIATION AND/OR ARBITRATION AS PROVIDED IN THIS AGREEMENT.** The parties each waive their right to commence an action in any court to resolve a Claim. Neither party shall initiate or prosecute any lawsuit in any way related to any claim covered by this Agreement.

Any Claim by employee or the company must be processed in the manner set forth below. Otherwise, the Claim shall be void and deemed waived even if there is a federal or state statute of limitations which would allow more time to pursue the Claim.

An Employee Claim must initially be raised verbally by Employee to the person(s) involved. If the issue cannot be resolved, the matter must be presented to the Employee's immediate supervisor within one year after you initially knew or should have known of the facts that gave rise to the Claim. The supervisor will answer the Claim within fifteen (15) days from the date the Claim was presented. If the supervisor fails to respond, then it will be considered a denial of your Claim.

If Employee is not satisfied with the supervisor's answer, or the nature of the Claim is such that Employee does not wish to present it to his supervisor, the Employee may obtain the assistance of the President, who will discuss the Claim with Employee and assist, if Employee desires assistance, in presenting the Claim in written form to the Company. Employee must present the Claim in writing to the President within fifteen (15) working days after Employee receives the supervisor's answer. However, if Employee decides not to present the Claim to his or her supervisor, Employee must present the Claim to the President, in writing, within one year after Employee initially knew or should have known of the facts that gave rise to the Claim. If Employee does not present the Claim in writing to the President within 15 days or one year, whichever is applicable, then Employee will be deemed to have accepted the Company's last stated position on the Claim and waived the right to further contest the Claim.

The President will consider Employee's written presentation, and any other information that Employee deems relevant. The President will render a written decision within fifteen (15) working

Confidential - Attorney's Eyes Only

EXHIBIT ___ 6
PAGE ___ 134

MGA 0876583

EX 1117-0006

days. This decision will be mailed to Employee's address, as it appears in the Company's records. If the Company fails to respond, it will be deemed a denial of your Claim.

If Employee is not satisfied with the President's decision, Employee may request a voluntary, non-binding mediation. If mediation is selected, Employee and the Company agree to utilize mediation in good faith with the goal of resolving the Claim. If the parties cannot mutually agree on the mediator, they will utilize the American Arbitration Association ("AAA") mediation dispute resolution procedures. The mediation shall take place in or near the city in which Employee resided when last employed by the Company. If mediation does not result in a settlement of the Claim, either party may serve written notice to the other party of its intention to proceed to arbitrate within fifteen (15) days from the termination of the mediation.

If Employee does not desire to mediate the Claim, then he or she may present the Claim for resolution by final and binding arbitration. Employee must serve written notice on the Company of his or her intention to arbitrate within ninety (90) days from the mailing of the President's final decision.

If the Company desires to initiate arbitration to resolve a Claim against Employee, it must serve written notice on Employee within one year after it initially knew or should have known of the facts that gave rise to its Claim.

The written notice of desire to arbitrate shall describe the factual basis of all Claims asserted, and shall be served on the other party by certified mail, return receipt requested. Written notice to Employee will be mailed to his or her address as it appears in the Company's records. Written notice to the Company, or its officers, directors, employees or agents, shall be sent to the President at the Company's principal place of business. If written notice of desire to arbitrate is not served within the applicable time period, the party who failed to timely serve notice will be deemed to have waived the right to further contest the Claim and will be deemed to have accepted the other party's last stated position on the Claim.

The arbitration shall be conducted in accordance with the then-current Model Employment Arbitration Procedures of the AAA before a single arbitrator. The Arbitrator shall be selected in the following manner. The AAA shall give each party a list of 11 arbitrators drawn from its panel of labor of employment arbitrators. Each side may strike all names on the list it deems unacceptable. If only one common name remains on the list of all parties, that individual shall be the Arbitrator. If more than one common name remains on the list of all parties, the parties shall strike names alternately, in a telephone conference no more than five days after the parties receive notice that more than one acceptable arbitrator remains, until only one remains. If no common name remains on the list of all parties, the AAA shall furnish one additional list, and the above procedures will be utilized. If no arbitrator is designated from the second list, the procedures of the AAA rules will be used to select the Arbitrator.

Either party may be represented by an attorney or other representative selected by the party. The parties waive the provision of California Code of Civil Procedure Section 1283.05. Each party shall have the right to take the deposition of one individual from, any expert witness designated by, and the other party. Each party also shall have the right to make requests for production of documents to any party. Additional discovery may be had only where the arbitrator so orders, upon a showing of substantial need. All issues related to discovery will be resolved by the Arbitrator.

Confidential - Attorney's Eyes Only

EXHIBIT __6__
PAGE __135__

MGA 0876584

EX 1117-0007

The Arbitrator will have no authority to: (i) adopt new Company policies or procedures, (ii) modify the Agreement or existing Company policies, procedures, wages or benefits, or (iii) hear or decide any matter that was not processed in accordance with this Agreement. The Arbitrator shall have exclusive authority to resolve any Claim, including, but not limited to, a dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, or any contention that all or any part of this Agreement is void or voidable. The Arbitrator will have the authority to award any form or remedy or damages that would be available in a court.

Employee and the Company each agree to pay one half of the reasonable and necessary fees of the AAA and the mediator and/or Arbitrator. The parties will pay their own attorneys' fees and expenses associated with the mediation and/or arbitration. Either party, in its sole discretion, may, in writing, waive, in whole or in part, the other's failure to follow any time limit or other requirement set forth in the Agreement.

To the extent permitted by law, Employee agrees not to initiate or prosecute against the Company any administrative action (including an administrative charge of discrimination to the extent permitted by law) in any way related to any Claim covered by this Agreement.

The mediation and/or arbitration will be conducted in private, and will not be open to the public or the media. The testimony and other evidence presented, and the results of the mediation and/or arbitration, unless otherwise agreed to by both parties, is confidential and may not be disclosed, made public or reported to any person or entity, including, but not limited to, any legal or news agency, publisher or service, except pursuant to a court order, provided that the Company or Employee gives sufficient prior written notice of any judicial proceeding at which a court order is being sought, to enable the other to seek a protective order before disclosure occurs.

The Arbitrator shall render a written decision and the award (the "Award" ) shall set forth the facts and reasons that support the Award. The Award shall be final and binding on both you and the Company. This Agreement shall survive the termination of your employment, and can only be revoked or modified by a writing signed by the parties which specifically states an intent to revoke or modify the Agreement. This is the complete agreement of the parties on the subject of dispute resolution, mediation or arbitration of disputes.

**NOTICE: BY SIGNING THE AGREEMENT, YOU ARE AGREEING THAT ALL CLAIMS WILL BE DECIDED BY NEUTRAL MEDIATION AND/OR ARBITRATION, AND YOU ARE GIVING UP YOUR RIGHT TO A JURY TRIAL OR COURT TRIAL.**

04·17·00
Date

Paula Treantafelles
Employee Signature

Paula Treantafelles
Employee Name (printed)

Date

Employer Signature

Eric Johnson-Find
Name (printed)

Confidential - Attorney's Eyes Only

EXHIBIT 6
PAGE 136

MGA 0876585

EX 1117-0008

# EXHIBIT 7



**Corporate Office:**
16730 Schoenborn Street
North Hills, CA 91343-6122 USA
Tel 818.894.2525
Fax 818.894.8094

# Memo

| | | | |
|---|---|---|---|
| **To:** | All MGA Employees | **From:** | Michele Thompson |
| **Re:** | Confidentiality Agreement and Proprietary Information Agreement | | |
| **Date:** | 8/10/00 | | |

Attached please find:

1. The newly revised MGA Entertainment Confidentiality Agreement. The revision states that upon separation from employment MGA will retain ownership of the company-supplied Franklin Planner (regardless of time worked).

2. The new Proprietary Information Agreement. Please read this document carefully and sign when finished.

Please return the signed forms to me no later than August 21, 2000. Thank you for your cooperation.

**Hong Kong Office:**
Unit 707-8 Multifield Plaza
3-7A Prat Ave., TST,
Kowloon, Hong Kong
**Hong Kong Showroom:**
11 Canton Road, Suite 1015
TST, Kowloon
Tel 852.2926.8008
Fax 852.2312.0101

**The ABC Group**



EXHIBIT __7__
PAGE __137__

MA 0001

EX 13532-0001

## CONFIDENTIALITY AND INVENTIONS ASSIGNMENT AGREEMENT

This Confidentiality and Inventions Agreement is executed by and between MGA Entertainment ("Company") and _____ ("Employee").

During the course of his/her employment at the Company, Employee will have access to, will acquire, and will become acquainted with trade secrets, confidential information and property related to the Company and its customers' and vendors' businesses. The Company's trade secrets include, but are not limited to, such information as customer names, addresses, phone numbers, names, specific characteristics of suppliers and customers and their respective employees with whom the Company has dealings (whether or not such information is contained on a Rolodex, computer printout, customer list, or is orally communicated to any Company employee in the course of their duties) and the history of purchases, along with terms and conditions of credit offered to each customer; names, addresses, telephone numbers and specific characteristics of prospective customers and contacts; information regarding particular customer product peculiarities, manners of doing business, needs and requirements; product specifications and performance needs for each customer; and the prices charged to each customer; customer information reports, pricing information (such as price lists, quotation guides, previous or outstanding quotations, equipment prices or billing information), mailing labels, mailing plans and programs, sales report forms, pending projects or proposals, techniques used in approaches or results of any market research, advertising sources, employee salaries, contracts and wage information, names and addresses of the vendors, manufacturers, and other suppliers of Company products, the products they supply, the applicable prices and discounts, and the applicable product specifications; new products or inventions developed or under development by the Company; formulas, patterns, compilations, programs, devises, methods, techniques, processes, pictures, contracts, files, methods or production (including quality control and packaging), proposals, business plans and projections, budgets, financial information, software, hardware, any patent application or the contents thereof; and all other material relating in any manner whatsoever to the customers products, vendors, and suppliers of Company, including matters which should reasonably be considered trade secrets even if not expressly described herein.

All information obtained in the course of Employee's employment is to be used only for the purpose of conducting the Company's business. Employee agrees to never discuss or disclose such trade secrets, confidential information or property, either directly or indirectly, with or in the presence of persons outside the Company, either during employment, or at any time thereafter, except as required by Employee's supervisor. Employee further agrees that information in any form, including but not limited to documents, tapes, lists, computer printouts, studies, reports, drafts, pictures, charts, maps, drawings, programs, equipment, scrap, blueprints, vendor lists, customer lists, client billing information, all financial reports, payroll information, records, files and other materials pertaining to the Company, its customers and vendors, may not be removed from the facilities without the advance written permission of Employee's supervisor.

Employee acknowledges that all such trade secrets or confidential information, or any copies of summaries thereof, whether prepared by Employee, by the Company, or provided to Employee by the Company, is the exclusive property of the Company. On demand or termination of employment for any reason, Employee agrees to return to the Company all papers, records, electronic copies, Franklin Planner and documents in Employee's possession or obtained during the course of Employee's employment with the Company and Employee further agrees that he/she will not retain any copies, nor permit anyone to retain any copies.

1

MA 0002

EXHIBIT 7
PAGE 138

EX 13532-0002

Employee acknowledges and agrees that the trade secrets described herein have independent economic value in that they are not generally known within the trade they represent many years of research and development and give the Company substantial competitive advantages.

As a condition of employment, Employee agrees that he/she (1) will regard and preserve the confidential information as highly confidential and as the trade secrets of the Company; (2) will not, at any time during or within twelve months after the termination of his/her employment with the Company, reveal, disclose, permit to be disclosed, or make known to any person, firm or corporation, any confidential information which was disclosed to Employee or of which he/she became aware during his/her employment, regardless of whether developed, prepared or created in whole or in part by Employee's efforts, except to the extent that such disclosure is necessary and is authorized in writing by the Company to carry out Employee's duties of employment; (3) will retain all confidential information in trust for the sole benefit of the Company and will not disclose to or use any confidential information in an independent business related to the scope of the Company's business (designer, manufacturer and distributor of toy); (4) will not photocopy or duplicate, and will not permit any person to photocopy or duplicate, any of the confidential information without the Company's written consent and approval; (5) will not make any use of confidential information for his/her own benefit or the benefit of any person or entity other than the Company; (6) will return all confidential information (including but not limited to customer lists, books maintained by Employee, and source lists) to the Company immediately upon request for same. Employee agrees that if he/she has any questions about whether a matter is a trade secret, to seek a determination by the Company before he/she uses any such information.

Employee agrees to maintain the same level of confidentiality regarding co workers, employee relation matters, and Company operations. Employee agrees, by accepting employment or continued employment with the Company, to comply with these rules and to maintain confidentiality of the Company's trade secrets.

Employee understands and acknowledges that the trade secrets and confidential information of the Company are not known to the general public and are the subject of reasonable efforts to maintain its secrecy. They are of a special, unique and extraordinary character, which gives them a particular value, the loss of which cannot be reasonably compensated in damages in an action at law. Employee further understands and agrees that in addition to any other rights or remedies which the Company may have, the Company shall be entitled to immediate injunctive and other equitable relief to prevent a breach of this Confidentiality and Inventions Agreement. If any legal proceeding arises under this Confidentiality and Inventions Agreement, the prevailing party shall be entitled to recover all costs and expenses, including reasonable attorney's fees and costs. California law shall apply to this agreement as to contracts wholly performed within the state.

Employee and the Company agree that this Confidentiality and Inventions Agreement shall not apply to information that Employee was aware of prior to his/her employment with the Company, or that is otherwise publicly known.

Employee further agrees that during his/her employment and for a period of twelve months after termination, Employee will not solicit the purchase of any products or services from any supplier or vendor who supplies products or services to the Company.

2

MA 0003

EXHIBIT 7
PAGE 139

EX 13532-0003

INVENTIONS ASSIGNMENT:

1. <u>ASSIGNMENT OF INTEREST:</u> Employee agrees to assign, and does hereby assign, to Company all interest which employee may have in all patentable and/or not-patentable ideas and/or inventions made or conceived by Employee solely or jointly with others during Employee's employment with Company. This assignment shall not apply to any idea or invention developed by Employee entirely on Employee's own time without equipment, supplies, facilities, or trade secret information of Company, unless such invention or idea: (1) relates to the business of company or to Company's actual or anticipated research or development, or (2) results from any work performed by Employee for Company. THIS AGREEMENT DOES NOT APPLY TO ANY INVENTION WHICH QUALIFIES FULLY UNDER THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 2870.

2. <u>DISCLOSURE OF IDEAS OR INVENTIONS:</u> Employee agrees to promptly disclose in writing to Fred Larian all inventions developed solely or jointly with others during Employee's employment with Employer, whether such inventions are patentable, not-patentable or assignable under this Agreement. Employer agrees to maintain such disclosure in confidence.

3. <u>WRITTEN DISCLOSURE OF PRIOR INVENTIONS:</u> Employee agrees to provide a complete list of all patented or not-patented ideas and inventions conceived by Employee or anyone else jointly with Employee, prior to the date Employee has signed this Agreement. The failure of Employee to provide Company with a written disclosure of ideas or inventions shall be deemed to constitute an affirmative acknowledgment by Employee that no such ideas or inventions exist.

If any provision of this Confidentiality and Inventions Agreement is held to be invalid or unenforceable, in whole or in part, the remaining portions of this Agreement shall continue to be valid and will be performed, construed and enforced to the fullest extent permitted by law. The invalid or unenforceable provision shall be deemed amended and limited in accordance with the intent of the parties, as determined from the face of this Agreement, to the extent necessary to permit the maximum enforceability or validation of the provision.

_____          _____          _____
Date                     Employee Signature             Employee Name (Printed)


_____          _____
Date                     Isaac Larian, President and CEO

3

**MA 0004**

EXHIBIT 7
PAGE 140

EX 13532-0004

## PROPRIETARY INFORMATION AGREEMENT

This Proprietary Information Agreement ("Agreement") is entered into by and between _____ ("Employee"), on the one hand, and MGA Entertainment (together with its affiliates, and their successors and assigns, the "Company"), on the other hand.

**WHEREAS**, the Company has offered to employ Employee on certain favorable terms and conditions, which offer is expressly conditioned upon, among other things, Employee's agreement to adhere to, among other things, the various covenants and agreements contained in this Agreement;

**WHEREAS**, Employee understands the terms and conditions of the Company's employment offer, including its condition that Employee agree to the various covenants and agreements set forth below. In consideration of the Company's employment of Employee and providing Employee with training, compensation and benefits, and business growth and development opportunities, and allowing Employee to have access to the Company's Proprietary Information (defined below), Employee has decided to enter into, and agrees to be bound by, this Agreement.

**NOW, THEREFORE**, in consideration of the mutual representations, warranties, covenants and agreements set forth below, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Employee and the Company agree as follows:

## AGREEMENT

1.   **CONFIDENTIALITY.**  Employee understands that, by virtue of Employee's employment with the Company, Employee will acquire and be exposed to Proprietary Information of the Company. "Proprietary Information" includes all ideas, information and materials, tangible or intangible, not generally known to the public, relating in any manner to the business of the Company (as defined above), its products and services (including all trade secrets), its personnel (including its officers, directors, employees, and contractors), its clients, vendors and suppliers and all others with whom it does business that Employee learns or acquires during Employee's employment with the Company.  Proprietary Information includes, but is not limited to, manuals, documents, computer programs and software used by the Company, users manuals, compilations of technical, financial, legal or other data, salary information, client or prospective client lists, names of suppliers or vendors, client, supplier or vendor contact information, business referral sources, specifications, designs, devices, inventions, processes, business or marketing plans or strategies, pricing information, media rate information, rate structures, information regarding the identity of the Company's directors, advertisers, or media experts, identity data, prototypes, forecasts, financial information, works in progress, and other technical or business information.  Proprietary Information does not include basic information that is generally known and used within the Toy industry.

Employee agrees to hold in trust and confidence all Proprietary Information during and after the period of Employee's employment with the Company.

LOS_ANGELES:102871.1 015567.1001

**MA 0005**


EXHIBIT 7
PAGE 141

EX 13532-0005

Employee shall not disclose any Proprietary Information to anyone outside the Company without the written approval of an authorized officer of the Company or use any Proprietary Information for any purpose other than for the benefit of the Company as required by Employee's authorized duties for the Company. At all times during Employee's employment with the Company, Employee shall comply with all of the Company's policies or regulations relating to the protection and confidentiality of Proprietary Information. Upon termination of Employee's employment with the Company, (a) Employee shall not use Proprietary Information, or disclose Proprietary Information to anyone, for any purpose, unless expressly requested to do so in writing by an authorized officer of the Company, (b) Employee shall not retain or take with Employee any Proprietary Information in a Tangible Form (defined below), and (c) Employee shall immediately deliver to the Company any Proprietary Information in a Tangible Form that Employee may then or thereafter hold or control, as well as all other property, equipment, documents or things that Employee was issued or otherwise received or obtained during Employee's employment with the Company. "Tangible Form" includes ideas, information or materials in written or graphic form, on a computer disc or other medium, or otherwise stored in or available through electronic, magnetic, videotape or other form.

## 2. PROTECTION OF PROPRIETARY INFORMATION.

Employee acknowledges that (a) the Company is engaged in the business of the invention, design, development and manufacture of toys, specifically high-tech toys and electronics throughout the United States and the World; (b) the market for the Business covers the entire United States and the World and (c) as part of Employee's employment, Employee will be exposed to Proprietary Information that relates directly to the Company's Business. Employee further acknowledges that because of the nature of Employee's work at the Company, Employee's engaging in similar work for another company that, directly or indirectly, engages in the Business in California will necessarily and inevitably involve or lead to Employee's unauthorized use or disclosure of Proprietary Information. Accordingly, for a period of one (1) year following the termination of Employee's employment with the Company for any reason, Employee shall not, directly or indirectly, become employed by or provide any services to or for any company or business that is engaged in the Business throughout the United States, unless Employee demonstrates to the Company's reasonable satisfaction that such employment or service will not result in the unauthorized use or disclosure of Proprietary Information.

## 3. NON-SOLICITATION OF CUSTOMERS, CLIENTS AND VENDORS.

Employee acknowledges that, because of the nature of Employee's work for the Company, Employee's solicitation or serving of certain customers, clients and vendors related to Employee's work for the Company would necessarily involve the unauthorized use or disclosure of Proprietary Information, and the proprietary relationships and goodwill of the Company. Accordingly, for one (1) year following the termination of Employee's employment with the Company for any reason, Employee shall not, directly or indirectly, solicit, induce, or attempt to solicit or induce, any person or entity then known to be a customer or client or vendor of the Company, for whom or, on whose behalf, Employee, during the three (3) year period immediately preceding the termination of Employee's employment, (a) performed any work or services, or (b) participated the preparation of any proposal to provide such work or services (a

2.

MA 0006


EXHIBIT 7
PAGE 142

EX 13532-0006

"Restricted Customer/Client/Vendor"), to terminate his, her or its relationship with the Company for any purpose, including the purpose of associating with or becoming a customer, client or vendor, whether or not exclusive, of Employee or any entity of which Employee is or becomes an officer, director, member, agent, employee or consultant, or otherwise solicit, induce, or attempt to solicit or induce, any Restricted Customer/Client/Vendor to terminate his, her or its relationship with the Company for any other purpose or no purpose.

4.     **NON-SOLICITATION OF PERSONNEL**.  During Employee's employment with the Company and for one (1) year thereafter, Employee shall not, directly or indirectly, solicit, induce, or attempt to solicit or induce, any person known to Employee to be an employee of the Company who, directly or indirectly, engages in the Business on behalf of the Company (each such person, a "Company Person"), to terminate his or her employment or other relationship with the Company for the purpose of associating with (a) any entity that engages in the Business of which Employee is or becomes an officer, director, member, partner, principal, agent, employee or consultant, or (b) any competitor of the Company in the Business, or otherwise encourage any Company Person to terminate his or her employment or other relationship with the Company for any other purpose or no purpose.

5.     **COMPETING ACTIVITIES**.  During Employee's employment with the Company, Employee shall not engage in any activity that is or may be competitive with the Company in the Business or otherwise in any state in the United States, where the Company engages in the Business, whether or not for compensation including, but not limited to, providing services or selling products similar to those provided or sold by the Company, offering, or soliciting or accepting an offer, to provide such services or to sell such products, or taking any action to form, or become employed by, a company or business to provide such services or to sell such products.

6.     **RETURN OF DOCUMENTS AND MATERIALS**.  Immediately upon the termination of Employee's employment or at any time prior thereto if requested by the Company, Employee shall return all records, documents, equipment, proposals, notes, lists, files, and any and all other materials, including but not limited to Proprietary Information in a Tangible Form, that refers, relates or otherwise pertains to the Company and its business, including its products and services, personnel, customers or clients (actual or potential), investors (actual or potential), and/or vendors and suppliers (actual or potential), or any of them, and any and all business dealings with said persons and entities (the "Returned Property and Equipment") to the Company at its offices in Los Angeles, California.  Employee is not authorized to retain any copies or duplicates of the Returned Property and Equipment that Employee obtained or received as a result of Employee's employment or other relationships with the Company.

**MA 0007**

EXHIBIT __7__
PAGE __143__

EX 13532-0007

7.   **PROPRIETARY INFORMATION OF OTHERS/COMPLIANCE WITH LAWS**. Employee shall not breach any agreement to keep in confidence, or to refrain from using, the nonpublic ideas, information or materials of a third party, including, but not limited to, a former employer or client. Employee shall not bring any such ideas, information or materials to the Company, or use any such ideas, information or materials in connection with Employee's employment by the Company. Employee shall comply with all national, state, local and other laws, regulations and ordinances.

8.   **RIGHTS AND REMEDIES UPON BREACH**. If Employee breaches, or threatens to commit a breach of, any of the provisions of this Agreement, Employee agrees that the Company shall have the right and remedy to have each and every one of the covenants in this Agreement specifically enforced and the right and remedy to obtain temporary and permanent injunctive relief, it being acknowledged and agreed by Employee that any breach or threatened breach of any of the restrictive covenants and agreements contained herein would cause irreparable injury to the Company and that money damages would not provide an adequate remedy at law to the Company. Moreover, if Employee breaches or threatens to commit a breach of this Agreement during Employee's employment with the Company, Employee may be subject to the immediate termination of Employee's employment. In any such action seeking to enforce this Agreement, the prevailing party shall be entitled to recover all reasonable attorneys' fees, costs and expenses, including any expert fees, that were incurred by that party in connection with any such action.

9.   **SEVERABILITY/BLUE-PENCIL**. Employee acknowledges and agrees that (a) the restrictive covenants and agreements contained herein are reasonable and valid in geographic, temporal and subject matter scope and in all other respects, and do not impose limitations greater than are necessary to protect the goodwill, Proprietary Information, and other business interests of the Company; (b) if any court subsequently determines that any of such covenants or agreements, or any part thereof, is invalid or unenforceable, the remainder of such covenants and agreements shall not thereby be affected and shall be given full effect without regard to the invalid portions; and (c) if any court determines that any of the restrictive covenants and agreements, or any part thereof, is invalid or unenforceable because of the duration or scope of such provision, such court shall have the power to reduce the duration or scope of such provision, as the case may be, and, in its reduced form, such provision shall then be enforceable to the maximum extent permitted by applicable law. Employee intends to and hereby confers jurisdiction to enforce each and every one of the covenants and agreements contained herein upon the courts of any jurisdiction within the geographic scope of such covenants and agreements, and if the courts or any one or more of such jurisdictions hold any such covenant or agreement unenforceable by reason of the breadth or scope or otherwise, it is the intention of Employee that such determination shall not bar or in any way affect the Company's right to the relief provided above in the courts of any other jurisdiction within the geographic scope of such covenants and agreements, as to breaches of such covenants and agreements in such other respective jurisdictions, such covenants and agreements as they relate to each jurisdiction being, for this purposes, severable into diverse and independent covenants and agreements.

**MA 0008**



EXHIBIT 7
PAGE 144

EX 13532-0008

10.    **CONFIRMATION OF AT-WILL EMPLOYMENT**.  Employee acknowledges and agrees that: (a) Employee's employment with the Company is and shall be at all times on an at-will basis, and the Company or Employee may terminate Employee's employment at any time, for any reason, with or without cause or advance notice; (b) nothing in this Agreement or in the Company's employee manuals, handbooks or other written materials create or are intended to create an express or implied contract for employment; (c) nothing in the Agreement obligates the Company to hire, retain or promote Employee; (d) all definitions, terms and conditions of this Agreement apply to Employee only for the purposes of this Agreement, and for no other purpose, and do not alter or otherwise effect the at-will status of Employee's employment with the Company; and (e) no representative of the Company has any authority to enter into any express or implied, oral or written agreements that are contrary to the terms and conditions of this Agreement or to enter into any express or implied contracts for employment (other than for at-will employment) except for the President of the Company and any agreement between Employee and the President must be in writing and signed by Employee and the President.

11.    **INFORMATION ON COMPANY PREMISES**.  Employee acknowledges that, by virtue or Employee's employment with the Company, Employee will have use of the premises and equipment of the Company.  Employee acknowledges and agrees that the Company has the right to review and inspect any such premises and equipment, even if they contain Employee's personal information or materials.

12.    **GOVERNING LAW**.  This Agreement shall be construed, interpreted, and governed in accordance with either (a) the laws of the State of California, regardless of applicable conflicts of law principles, or (b) in the event of a breach of any of the covenants contained in Section 1 through 8, the law of the State where such breach actually occurs, depending on whichever choice of law shall ensure to the maximum extent that the restrictive covenants shall be enforced in accordance with the intent of the parties.

13.    **ENTIRE AGREEMENT/MODIFICATION/NO WAIVER**.  This Agreement (and Employee's and the Company's agreements regarding arbitration and Employee's at will employment status that are set forth in the Company's offer letter, which are incorporated by this reference herein) (a) represent the entire agreement of the parties with respect to the subject matter hereof, (b) shall supersede any and all previous contracts, arrangements or understandings between the parties hereto with respect to the subject matter hereof, and (c) may not be modified or amended except by an instrument in writing signed by each of the parties hereto.  No waiver, delay, omission or forbearance in exercising any right, option, duty or power under this Agreement (or Employee's and the Company's agreements regarding arbitration and Employee's at will employment status that are set forth in the Company's offer letter) shall affect or impair any party's rights with respect to any past or present default or breach of any of provisions of this Agreement or Employee's and the Company's agreements regarding arbitration and Employee's at will employment status that are set forth in the Company's offer letter.

**MA 0009**


EXHIBIT ___7___
PAGE ___145___

EX 13532-0009

14.    **PARTIES IN INTEREST/ASSIGNMENT/SURVIVAL**.  Neither this Agreement nor any of the rights, interests or obligations under this Agreement shall be assigned, in whole or in part, by operation of law or otherwise, by Employee.  The Company may sell, assign, and transfer all of its right, title and interests in this Agreement without the prior consent of Employee, whether by operation of law or otherwise, in which case this Agreement shall remain in full force after such sale, assignment or other transfer and may be enforced by (a) any successor, assignee or transferee of all or any part of the Company's business as fully and completely as it could be enforced by the Company if no such sale, assignment or transfer had occurred, and (b) the Company in the case of any sale, assignment or other transfer of a part, but not all, of the business.  The benefits under this Agreement shall inure to and may be enforced by the Company and any of its subsidiaries, affiliates, successors, transferees and assigns.  Employee's duties and obligations under this Agreement shall survive the termination of Employee's employment by Employee or the Company.

15.    **VOLUNTARY AGREEMENT/NO INDUCEMENTS**.  The Company and Employee hereby acknowledge and represent that Employee and the Company each (a) has fully and carefully read this Agreement prior to signing it, (b) has been, or has had the opportunity to be, advised by independent legal counsel of Employee's and the Company's own choice as to the legal effect and meaning of each of the terms and conditions of this Agreement, and (c) is signing and entering into this Agreement as a free and voluntary act without duress or undue pressure or influence of any kind or nature whatsoever and has not relied on any promises, representations or warranties regarding the subject matter hereof other than as set forth in this Agreement.

**IN WITNESS WHEREOF**, the parties hereto have signed this Agreement on the day and year written below.

MGA Entertainment

By: _____

President and Chief Executive Officer

Date: _____7 - 2 5_____, 2000

EMPLOYEE

Name: _____
Address: _____
Date: _____, 2000

MA 0010


EXHIBIT 7
PAGE 140

EX 13532-0010

# EXHIBIT 8

## CONFIDENTIALITY AND INVENTIONS ASSIGNMENT AGREEMENT

This Confidentiality and Inventions Agreement is executed by and between ABC Int' Traders, Inc. ("Company") and _____ ("Employee").

During the course of his/her employment at the Company, Employee will have access to, will acquire, and will become acquainted with trade secrets, confidential information and property related to the Company and its customers' and vendors' businesses. The Company's trade secrets include, but are not limited to, such information as customer names, addresses, phone numbers names, specific characteristics of suppliers and customers and their respective employees with whom the Company has dealings (whether or not such information is contained on a Rolodex computer printout, customer list, or is orally communicated to any Company employee in the course of their duties) and the history of purchases, along with terms and conditions of credit offered to each customer; names, addresses, telephone numbers and specific characteristics of prospective customers and contacts; information regarding particular customer product peculiarities, manners of doing business, needs and requirements; product specifications and performance needs for each customer; and the prices charged to each customer; customer information reports, pricing information (such as price lists, quotation guides, previous or outstanding quotations, equipment prices or billing information), mailing labels, mailing plans and programs, sales report forms, pending projects or proposals, techniques used in approaches or results of any market research, advertising sources, employee salaries, contracts and wage information, names and addresses of the vendors, manufacturers, and other suppliers of Company products, the products they supply, the applicable prices and discounts, and the applicable product specifications; new products or inventions developed or under development by the Company; formulas, patterns, compilations, programs, devises, methods, techniques, processes, pictures, contracts, files, methods or production (including quality control and packaging), proposals, business plans and projections, budgets, financial information, software, hardware, any patent application or the contents thereof; and all other material relating in any manner whatsoever to the customers products, vendors, and suppliers of Company, including matters which should reasonably be considered trade secrets even if not expressly described herein.

All information obtained in the course of Employee's employment is to be used only for the purpose of conducting the Company's business. Employee agrees to never discuss or disclose such trade secrets, confidential information or property, either directly or indirectly, with or in the presence of persons outside the Company, either during employment, or at any time thereafter, except as required by Employee's supervisor. Employee further agrees that information in any form, including but not limited to documents, tapes, lists, computer printouts, studies, reports, drafts, pictures, charts, maps, drawings, programs, equipment, scrap, blueprints, vendor lists, customer lists, client billing information, all financial reports, payroll information, records, files and other materials pertaining to the Company, its customers and vendors, may not be removed from the facilities without the advance written permission of Employee's supervisor.

Employee acknowledges that all such trade secrets or confidential information, or any copies of summaries thereof, whether prepared by Employee, by the Company, or provided to Employee by the Company, is the exclusive property of the Company. On demand or termination of employment for any reason, Employee agrees to return to the Company all papers, records, electronic copies, and documents in Employee's possession or obtained during the course of Employee's employment with the Company and Employee further agrees that he/she will not retain

---

Confidential - Attorney's Eyes Only

EXHIBIT ___B___
PAGE ___147___

MGA 0875722
EX 13620-0001

any copies, nor permit anyone to retain any copies thereof, except that those who have successfully completed their 90 day introductory period may keep their Franklin Planner.

Employee acknowledges and agrees that the trade secrets described herein have independent economic value in that they are not generally known within the trade they represent many years of research and development and give the Company substantial competitive advantages.

As a condition of employment, Employee agrees that he/she (1) will regard and preserve the confidential information as highly confidential and as the trade secrets of the Company; (2) will not, at any time during or within twelve months after the termination of his/her employment with the Company, reveal, disclose, permit to be disclosed, or make known to any person, firm or corporation, any confidential information which was disclosed to Employee or of which he/she became aware during his/her employment, regardless of whether developed, prepared or created in whole or in part by Employee's efforts, except to the extent that such disclosure is necessary and is authorized in writing by the Company to carry out Employee's duties of employment; (3) will retain all confidential information in trust for the sole benefit of the Company and will not disclose to or use any confidential information in an independent business related to the scope of the Company's business (designer, manufacturer and distributor of toy); (4) will not photocopy or duplicate, and will not permit any person to photocopy or duplicate, any of the confidential information without the Company's written consent and approval; (5) will not make any use of confidential information for his/her own benefit or the benefit of any person or entity other than the Company; (6) will return all confidential information (including but not limited to customer lists, books maintained by Employee, and source lists) to the Company immediately upon request for same. Employee agrees that if he/she has any questions about whether a matter is a trade secret, to seek a determination by the Company before he/she uses any such information.

Employee agrees to maintain the same level of confidentiality regarding co workers, employee relations matters," and Company operations. Employee agrees, by accepting employment or continued employment with the Company, to comply with these rules and to maintain confidentiality of the Company's trade secrets.

Employee understands and acknowledges that the trade secrets and confidential information of the Company are not known to the general public and are the subject of reasonable efforts to maintain its secrecy. They are of a special, unique and extraordinary character, which gives them a particular value, the loss of which cannot be reasonably compensated in damages in an action at law. Employee further understands and agrees that in addition to any other rights or remedies which the Company may have, the Company shall be entitled to immediate injunctive and other equitable relief to prevent a breach of this Confidentiality and Inventions Agreement. If any legal proceeding arises under this Confidentiality and Inventions Agreement, the prevailing party shall be entitled to recover all costs and expenses, including reasonable attorney's fees and costs. California law shall apply to this agreement as to contracts wholly performed within the state.

Employee and the Company agree that this Confidentiality and Inventions Agreement shall not apply to information that Employee was aware of prior to his/her employment with the Company, or that is otherwise publicly known.

Confidential - Attorney's Eyes Only

MGA 0875723
**EX 13620-0002**


EXHIBIT 8
PAGE 148

Employee further agrees that during his/her employment and for a period of twelve months after termination, Employee will not solicit the purchase of any products or services from any supplier or vendor who supplies products or services to the Company.

INVENTIONS ASSIGNMENT:

1. <u>ASSIGNMENT OF INTEREST:</u> Employee agrees to assign, and does hereby assign, to Company all interest which employee may have in all patentable and/or not-patentable ideas and/or inventions made or conceived by Employee solely or jointly with others during Employee's employment with Company. This assignment shall not apply to any idea or invention developed by Employee entirely on Employee's own time without equipment, supplies, facilities, or trade secret information of Company, unless such invention or idea: (1) relates to the business of company or to Company's actual or anticipated research or development, or (2) results from any, work performed by Employee for Company. THIS AGREEMENT DOES NOT APPLY TO ANY INVENTION WHICH QUALIFIES FULLY UNDER THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 2870.

2. DISCLOSURE OF IDEAS OR INVENTIONS: Employee agrees to promptly disclose in writing to Fred Larian all inventions developed solely or jointly with others during Employee's employment with Employer, whether such inventions are patentable, not-patentable or assignable under this Agreement. Employer agrees to maintain such disclosure in confidence.

3. WRITTEN DISCLOSURE OF PRIOR INVENTIONS: Employee agrees to provide a complete list of all patented or not-patented ideas and inventions conceived by Employee or anyone else jointly with Employee, prior to the date Employee has signed this Agreement. The failure of Employee to provide Company with a written disclosure of ideas or inventions shall be deemed to constitute an affirmative acknowledgment by Employee that no such ideas or inventions exist.

If any provision of this Confidentiality and Inventions Agreement is held to be invalid or unenforceable, in whole or in part, the remaining portions of this Agreement shall continue to be valid and will be performed, construed and enforced to the fullest extent permitted by law. The invalid or unenforceable provision shall be deemed amended and limited in accordance with the intent of the parties, as determined from the face of this Agreement, to the extent necessary to permit the maximum enforceability or validation of the provision.

| 5/24/99 | _Kami Gillmour_ | _Kami Gillmour_ |
| Date | Employee Signature | Employee Name (printed) |

| 5/24/99 | | _F. Sarc Lorian_ |
| Date | Employer Signature | Name (printed) |

Confidential - Attorney's Eyes Only

MGA 0875724

EX 13620-0003

EXHIBIT   B
PAGE   149

# EXHIBIT 9

**Employee Confidential Information
and Inventions Agreement**

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that (i) I will maintain the confidentiality of the Company's trade secrets (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates, I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment by the Company and other good and valuable consideration, I agree that:

1.  *Provisions Related to Trade Secrets*

(a)  I acknowledge that the Company possess and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b)  As used in the Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information of the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c)  I will not disclose or use at any time, either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d)  Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

2.  *Ownership of Inventions*

(a)  I agree to communicate to the Company as promptly and fully as practicable all inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the company. I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b)  As used in this Agreement, the term "inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data, computer programs and formulae, whether patentable or unpatentable.

(c)  Any provision in this Agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provisions of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer. I understand that I bear the burden of proving that an invention qualifies under Section 2870.

(d)  I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

E  ibit 1116
Garcia
10/10/07   2  pages
J'ena Siegers, CSR 10846

**CONFIDENTIAL - ATTORNEYS' EYES ONLY**

EXHIBIT    9
PAGE    150

M 0079201

EX 1116-0001

### 3. *Conflicts with Other Activities*

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

### 4. *Miscellaneous*

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in a writing signed by a Vice-President of the Company. Any waiver by the Company or a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This Agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.

_Paula Treantafelles_
Employee Signature

MATTEL, INC.
By: _____

_Paula Treantafelles_
Employee Name (print)

_Faik Sicelick_
Name of Witness (print)

_07/04/97_
Date

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___9___
PAGE ___161___

M 0079202

EX 1116-0002

# EXHIBIT 10

*heq c -...*

# Carter H. Bryant

# INVOICE

REDACTED

**INVOICE NO.:** *001*

**DATE:** *8/31/00*

**Sold To:**

Paula Treantafeles
MGA Entertainment
16730 Schoenborn St.
North Hills, CA 91343

**Ship To:**        Same

*V 25/4*
*fm 0442*
*R.C TOS09*

| SALESPERSON | P.O. NUMBER | DATE SHIPPED | SHIPPED VIA | F.O.B. POINT | TERMS |
|---|---|---|---|---|---|
|  | 3367 |  |  |  | net |

| QUANTITY | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|
| 3 HRS | ANGEL FACE/HAIR DESIGNS + SKETCHES | 50.00 | 150.00 |

*Thanks Paula! ☺*

| | |
|---|---|
| SUBTOTAL | 150.00 |
| SALES TAX @ 8.25% | 12.38 |
| SHIPPING & HANDLING | -0- |
| **TOTAL DUE** | 162.38 |

_____
**Customer Signature**

### THANK YOU FOR YOUR BUSINESS!



Exhibit 593
Brode
8/15/07  Pgs. 3
J'ana Siegers, CSR 10846

CONFIDENTIAL
ATTORNEY'S EYES ONLY

MGA001294

EXHIBIT 10
PAGE 152

EX 593-0001

## PURCHASE ORDER

ABC International Traders, Inc
dba MGA Entertainment
16730 Schoenborn St.
North Hills
CA          91343-6122

PO Number:   PO03367
Date:        9/26/00
Page:        1

---

Order From:  CARTER H. BRYANT

Deliver to:  L.A. MAIN WAREHOUSE
             16730 SCHOENBORN ST

             NORTH HILLS
             CA                    91343

REDACTED

| Your Item Number Item Description | Our Reference | Qty Ordered Date Requested | Units | Unit Cost Date Promised | Extension |
|---|---|---|---|---|---|
| | PRAYER ANGELS | 3.00 | Each | 50.00 | $150.00 |
| ANGEL FACE/ HAIR DESIGNS AND SKETCH | | 9/22/00 | | | |
| 1 | PRAYER ANGELS | 1.00 | Each | 12.38 | $12.38 |
| SALES TAX @ 8.25% | | 9/22/00 | | | |

---

Please Quote Purchase Order Number on all correspondence.

Subtotal:    $162.38
Freight:     $0.00
Tax amount:  $0.00
Total Value: $162.38

CONFIDENTIAL
ATTORNEY'S EYES ONLY

MGA001295

EXHIBIT  10
PAGE  153

EX 593-0002

Requisition # REQ02618
Requestor   KLEGG

** REQUISITION **

Date

Page: 1

| Item Number | Quantity | Units | Cost | Due Date | Total |
|---|---|---|---|---|---|
| PRAYER ANGELS<br>ANGEL FACE/ HAIR DESIGNS AND SKETCHES<br>8322-400 - | 3.00 | Each<br>Site: 01 | $50.00 | 9/22/00<br>Creditor: BRYANT | $150.00 |
| PRAYER ANGELS -<br>SALES TAX @ 8.25%<br>8322-400 - | 1.00 | Each<br>Site: 01 | $12.38 | 9/22/00<br>Creditor: BRYANT | $12.38 |

*PO 3367*

*P - 6400*

*- 6400 ?*

*advance Ref. ?*

Requisition Total          $162.38

CONFIDENTIAL
ATTORNEY'S EYES ONLY

MGA001296

EXHIBIT   10
PAGE   154

EX 593-0003